# EXHIBIT D

BOIES, SCHILLER & FLEXNER LLP
Jonathan D. Schiller
Tricia J. Bloomer
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

Hamish P. M. Hume
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Tel: (202) 237-2727

Attorneys for Interpleader Defendant Barclays Capital Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
In re:                                                  :
                                                        :
LEHMAN BROTHERS INC.,                                   :      Case No. 08-01420 (JMP)
                                                        :
                                                        :
                        Debtor.                         :
------------------------------------------------------- x
------------------------------------------------------- x
THE OPTIONS CLEARING CORPORATION,:
                                                        :
          Interpleader Plaintiff,                       :
                                                        :
      v.                                                :      Adv. Proc. No. 08-01759 (JMP)
                                                        :
BARCLAYS CAPITAL INC., AUSTRALIA & :
NEW ZEALAND BANKING GROUP LTD.,   :
BANK OF TOKYO-MITSUBISHI UFJ, LTD.,:
LLOYDS TSB BANK plc, and JAMES W.  :
GIDDENS, in his capacity as Trustee for  :
Lehman Brothers Inc.,                                   :
                                                        :
          Interpleader Defendants.                      :
------------------------------------------------------- x

**BARCLAYS CAPITAL INC.'S ANSWER TO THE OCC'S INTERPLEADER
COMPLAINT AND CORRESPONDING STATEMENT OF CLAIM**

1

Interpleader Defendant Barclays Capital Inc. ("Barclays"), by its attorneys, Boies, Schiller & Flexner LLP, for its statement of claim and answer, pursuant to the Stipulation and Order entered by the Court on February 3, 2009, answers and alleges as below.

## ANSWER

Barclays answers the Interpleader Complaint of Plaintiff Options Clearing Corporation ("OCC") as follows:

1.   The allegations of paragraph 1 purport to state a legal conclusion as to which no response is required. To the degree a response to paragraph 1 is required, Barclays denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 1.

2.   Barclays denies the allegations in the first sentence of paragraph 2. Barclays denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of paragraph 2.

3.   Barclays admits the allegations in paragraph 3.

4.   Barclays admits the allegations in paragraph 4.

5.   Barclays admits the allegations in paragraph 5.

6.   Barclays admits the allegations in paragraph 6.

7.   On information and belief, Barclays admits the allegations in paragraph 7.

8.   Barclays admits the allegations in paragraph 8.

9.   On information and belief, Barclays admits the allegations in paragraph 9.

10.   On information and belief, Barclays admits the allegations in paragraph 10.

11.   On information and belief, Barclays admits the allegations in paragraph 11.

12.   On information and belief, Barclays admits the allegations in paragraph 12.

13. Barclays lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 13, but admits that Lehman Brothers Inc. ("LBI") maintained one or more options and futures accounts at the OCC (collectively, the "Account").

14. Barclays lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 14, other than to admit generally that, on information and belief, the OCC drew down on certain letters of credit on September 19, 2008, the day of but prior to the commencement of the liquidation proceeding of LBI, case captioned *In re Lehman Brothers Inc.*, Case 08-01420 (the "Liquidation Proceeding"), which is currently pending in this Court.

15. On information and belief, Barclays admits the allegations in paragraph 15.

16. Barclays admits the allegations of paragraph 16.

17. Barclays admits the allegations in the first sentence of paragraph 17, except that Barclays asserts that it was on September 20, 2008, not on September 19, 2008, that the Bankruptcy Court entered an Order [Docket No.3] approving, and incorporating by reference for purposes of the Liquidation Proceeding, the Order, entered in the bankruptcy case of Lehman Brothers Holdings, Inc., et al (Case No. 08- 13555), Authorizing and Approving (A) The Sale of Purchased Assets Free and Clear of Liens and Other Interests (the "Sale") and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 19, 2008 (the "Sale Order") [Case No. 08-13555, Docket No. 258].

Barclays admits that paragraph N of the Sale Order contains the language quoted in the second sentence of paragraph 17, but denies any inference that the OCC or any other party may draw from such language that is inconsistent with the rights asserted by Barclays in this pleading.

18. To the extent paragraph 18 states a legal conclusion, no responsive pleading is required. To the extent a response is required, Barclays respectfully refers the Court to the Transfer and Assumption Agreement between the OCC, Barclays, and James W. Giddens as the Securities

3

Investor Protection Act ("SIPA") Trustee for LBI for a complete and accurate statement of its contents.

19. In response to paragraph 19, Barclays admits that the OCC has made communications with the parties to this action and that, on information and belief, on or about October 14, 2008 the OCC sent a letter to the parties to this action, and respectfully refers the Court to those communications for a complete and accurate statement of their contents.

20. In response to paragraph 20, Barclays admits that on or about October 6, 2008, Lloyds Bank TLC plc ("Lloyds") sent a letter to the parties to this action, and respectfully refers the Court to that letter for a complete and accurate statement of its contents.

21. Barclays denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 21.

22. Barclays admits that on November 7, 2008, Barclays sent an email to the OCC that contains the language quoted in paragraph 22, and respectfully refers the Court to that email for a complete and accurate statement of its contents.

23. In response to paragraph 23, Barclays admits that on or about November 10, 2008, Bank of Tokyo-Mitsubishi UFJ Ltd. ("BTMU") sent an email to the parties to this action, and respectfully refers the Court to that email for a complete and accurate statement of its contents.

24. Barclays admits that on or about November 14, 2008, the Trustee in Bankruptcy of LBI ("LBI Trustee") sent an email to all parties to this action that contains the language quoted in paragraph 24, and respectfully refers the Court to that email for a complete and accurate statement of its contents.

25. In response to paragraph 25, Barclays admits that counsel for the OCC sent various emails to counsel for the parties in this action, and respectfully refers the Court to those emails for a complete and accurate statement of their contents.

26. Paragraph 26 purports to state a legal conclusion, and therefore no responsive pleading is required.

27. Barclays denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in paragraph 27 regarding the OCC's ability to determine which party is entitled to the proceeds of the letter of credit draw downs referenced in the OCC's Complaint (the "Funds"), and on this basis, and because Barclays alone is entitled to the Funds, Barclays denies the allegations in paragraph 27.

28. Barclays denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 28, and on that basis, and because Barclays alone is entitled to the Funds, Barclays denies the allegations of paragraph 28.

29. Barclays denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of paragraph 29, but admits that the parties agreed by stipulation that was entered as an Order by the Court on or around January 22, 2009 to allow the OCC to deposit the Funds into the Court Registry Investment System, which stipulation expressly provides, among other things: (a) that it was entered into without prejudice to any rights, claims or defenses, and (b) that by entering it the stipulation, the parties were in no way admitting anything regarding the proper characterization of the nature of the claims to be made by other parties to the action.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Under the plain terms of the operative agreements, Barclays is the sole party entitled to the Funds, and the other parties to this action have claims which cannot fairly be characterized as claims to the Funds, but which instead are attempts to impose a liability upon Barclays which this Court has ordered Barclays did not assume and to which Barclays is not subject.

5

## SECOND AFFIRMATIVE DEFENSE

The parties to this action were on notice of the terms of the acquisition agreements under which Barclays is entitled to the Funds, and that Barclays acquired those Funds free and clear of any liability or reimbursement obligation. The parties failed to object to these agreements, or their objections were overruled, and therefore they have waived or are estopped from asserting any claim inconsistent with those agreements.

## AFFIRMATIVE STATEMENT OF CLAIM TO THE FUNDS

Pursuant to the Stipulation and Order entered by the Court on or around February 3, 2009, Barclays alleges the following claim of entitlement to the Funds, free and clear of any liabilities or obligations to any other parties, including the parties to this action:

## NATURE OF THE CLAIM

1. On September 19, 2008, the OCC drew down the full amount available under certain letters of credit that had previously been arranged by LBI for the benefit of the OCC. The total amount of these draw downs was $80,797,001.00 (the "Funds").

2. The proper ownership of these Funds is the issue raised by the OCC's interpleader Complaint.

3. As explained below, the express terms of certain agreements entered into by LBI, Barclays, and the OCC, and the order of this Court approving those agreements, provide that Barclays is the only owner of the Funds, free and clear of any liabilities or reimbursement obligations.

4. The OCC's Rules dictate that once the Funds were drawn down by the OCC, they were to be held by the OCC as "margin deposit" in or for the benefit of LBI's Account at the OCC. The OCC's Rules also provide that after the Funds were drawn down by the OCC, they were the property of LBI, even though they were held by the OCC as margin deposit. Thus, as of September 19, 2008, the Funds were the property of LBI held by the OCC as margin deposit for LBI's Account at the OCC.

5. On September 20, 2008, Barclays, LBI, and the OCC executed a Transfer and Assumption Agreement. This agreement expressly provides that Barclays acquired all of LBI's rights "in respect of the Account," including in particular "all margin deposits held by the OCC

with respect to the Account." From September 19, 2008 onward, the Funds constituted "margin deposits held by the OCC with respect to the Account." Thus, under the express terms of the Transfer and Assumption Agreement, Barclays acquired full ownership over the Funds.

6. The OCC sought to enter into the Transfer and Assumption Agreement in order to implement certain aspects of the overall Asset Purchase Agreement ("APA"), as amended by mutual agreement of the parties thereto, between Barclays as Purchaser, and LBI and Lehman Brothers Holdings Inc. ("LBHI"), collectively, as Seller. Pursuant to both the APA, as amended, and the Transfer and Assumption Agreement, and this Court's Sale Order approving the acquisition described in those agreements, Barclays acquired the Funds free and clear of all claims, encumbrances, and liabilities, and therefore did not assume any obligation to reimburse any person for the Funds.

7. Accordingly, Barclays is entitled to a final judgment in this matter establishing its unfettered ownership of the Funds, free and clear of any liability or reimbursement obligation.

## BACKGROUND

8. Upon information and belief, at some time prior to September 15, 2008, LBI applied to several banks to establish letters of credit for the benefit of the OCC.

9. Upon information and belief, at some time prior to September 15, 2008, the following banks agreed to issue certain letters of credit for the benefit of the OCC ("Letters of Credit"): (a) Australia & New Zealand Banking Group Ltd NY Branch ("ANZ"); (b) Bank of Tokyo-Mitsubishi UFJ, Ltd NY Branch ("BTMU"); (c) Lloyds TSB Bank plc ("Lloyds"); and (d) Bayerische Hypo-und Vereinsbank AG ("Bayerische") (collectively, the "Banks" or the "LC Issuers").

10. Upon information and belief, each of the Banks issued one or more Letters of Credit

8

naming the OCC as beneficiary. The Letters of Credit were issued pursuant to separate, respective agreements that each Bank entered into with LBI ("Applicant Agreements"), with LBI as the applicant for each Letter of Credit. Upon information and belief, these Applicant Agreements obligated LBI to reimburse the Banks for the amount of any funds that the OCC drew down from their respective Letters of Credit. In addition, upon information and belief, the Banks were paid fees from LBI under these Applicant Agreements to extend credit to LBI by issuing Letters of Credits.

11. Upon information and belief, LBI was asked to post collateral with one or more of the Banks to secure LBI's obligation to reimburse such Bank for any draw down on the Bank's Letter of Credit.

12. Upon information and belief, LBI posted collateral with ANZ sufficient to secure LBI's reimbursement obligations to ANZ under the applicable Applicant Agreement.

13. Upon information and belief, each of the Letters of Credit was issued in the standard form promulgated by the Unified Clearing Group.

14. Upon information and belief, the terms of the Letters of Credit, and the terms of the OCC's Rules and By-laws, provide that the OCC was entitled to draw down on the Letters of Credit "if the [OCC] determine[d] that such draw is advisable to protect the [OCC], other Clearing Members or the general public."

15. Rule 604(c)(3) of the OCC's Rules further provides that if the OCC has drawn down on any letters of credit without suspending the clearing member who created that letter of credit, then the "funds received pursuant to the draw will be subject to the By-Laws and Rules applicable to deposits of cash margin."

16. Rule 604(d) of the OCC's Rules further provides that "Funds and securities held by or

9

subject to the instructions of the [OCC] as margin shall, subject to the rights of the [OCC] in respect thereof, remain the property of the respective Clearing Members for whose accounts such funds and securities are held."

17. Thus, the OCC's Rules made clear that if the OCC drew down on the Letters of Credit to protect the OCC, other Clearing Members or the general public, and if the OCC did not suspend LBI, then the funds from the draw downs would be treated as "the property" of LBI, which LBI was entitled to transfer, along with all other property held in its OCC Account, to a third party such as Barclays.

## THE DRAW DOWNS

18. On September 15, 2008, LBHI filed a voluntary petition for bankruptcy with this Court.

19. On September 19, 2008, the OCC drew down in full the amounts available under the Letters of Credit. Upon information and belief, the total amounts drawn down by the OCC were (a) $15,598,500.00 from one of two different ANZ Letters of Credit, (b) $5,098,500.00 from the other of the two ANZ Letters of Credit; (c) $35,100,000.00 from the BTMU Letter of Credit; (d) $25,000,000.00 from the Lloyds Letter of Credit; and (e) $1.00 from the Bayerische Letter of Credit.

20. Upon information and belief, the total amount drawn down by the OCC on September 19, 2008, was $80,797,001.00. This amount constitutes the Funds defined above. As of September 19, 2008, these Funds were the property of LBI and were held by the OCC as cash margin for LBI's OCC Account. These Funds remained the property of LBI until such time as LBI sold the property along with other assets to Barclays.

21. The OCC draw downs occurred prior to the commencement of the LBI Liquidation

Proceeding under the Securities Investor Protection Act ("SIPA"). The Liquidation Proceeding was commenced later in the day on September 19, 2008.

22. Thus, as of the time the Liquidation Proceeding commenced, LBI owned the Funds as one of the assets held in or for the benefit of its OCC Account.

## THE BARCLAYS ACQUISITION AGREEMENTS

23. On September 16, 2008, Barclays entered into the APA with LBI and LBHI. The APA was amended through the First Amendment To Asset Purchase Agreement dated as of September 19, 2008 (the "First Amendment"), and was then clarified and amended through a letter agreement dated September 20, 2008 (the "Clarification Letter"). (Together with its amendments, the APA is referred to as the "Purchase Agreement".) The Purchase Agreement provided for the sale of LBI's trading, brokerage, dealing and related businesses, and included the sale to Barclays of LBI's OCC Account. The acquisition described in the Purchase Agreement closed on September 22, 2008 (the "Closing").

24. At the OCC's request, and in order to implement certain aspects of the Purchase Agreement, on September 20, 2008, Barclays, the OCC, and LBI (through its SIPA Trustee) executed the Transfer and Assumption Agreement. The Transfer and Assumption Agreement specifically provided for the sale and assignment to Barclays of all of LBI's rights in its OCC Account.

25. On September 20, 2008, this Court issued the Sale Order, thereby approving Barclays' acquisition of assets from LBI and LBHI as described in the Purchase Agreement and the Transfer and Assumption Agreement. [Case No. 08-13555, Docket No. 258]. On the same day, this Court entered an Order in the LBI liquidation proceeding approving and incorporating the Sale Order for purposes of the LBI liquidation proceeding (the "SIPA Sale Order"). The

11

SIPA Sale Order states that the LBI SIPA Trustee, James Giddens, had determined that the terms of the Sale Order and the Purchase Agreement were in the best interests of LBI's customers, creditors, and the LBI estate, and that the Securities Investor Protection Corporation ("SIPC"), had agreed to and consented to entry of the SIPA Sale Order. [Case No. 08-1420, Docket No. 3].

## STATEMENT OF CLAIM

26. The Purchase Agreement and the Transfer and Assumption Agreement both provide that Barclays acquired all assets held in or for the benefit of LBI's OCC Account. The Funds were assets held in or for the benefit of LBI's OCC Account, and therefore were acquired by Barclays pursuant to both the Purchase Agreement and the Transfer and Assumption Agreement.

27. The Transfer and Assumption Agreement was entered into specifically in order to address the transfer of LBI's OCC Account to Barclays, and it explicitly provides that Barclays acquired the Funds.

28. The Transfer and Assumption Agreement expressly provides that Barclays was to acquire all of LBI's rights "in respect of the Account," including in particular "all margin deposits held by the OCC with respect to the Account." (Transfer and Assumption Agreement, § 1(a)).

29. As of September 19, 2008 onward, through and including the date of the Closing, the Funds constituted "margin deposits with respect to the Account." Accordingly, Barclays acquired the Funds pursuant to the express terms of the Transfer and Assumption Agreement.

30. In addition, the provisions of the Purchase Agreement confirm that Barclays acquired the Funds. The Purchase Agreement provides that Barclays acquired all "Purchased Assets," (APA at § 2.1) which in turn were defined to include "all of the assets of [LBI and LBHI] used primarily in the Business or necessary for the operation of the Business." (Clarification Letter at

§ 1(a)). The "Business" was defined to include LBI's "fixed income and equities cash trading, brokerage, dealing, trading and advisory businesses." (APA § 1.1 at 2). The Purchased Assets also include "exchange-traded derivatives (and any property that may be held to secure obligations under such derivatives)." (Clarification Letter § 1(a)).

31. The foregoing provisions of the Purchase Agreement make clear that the Purchased Assets include the LBI Account and related margin deposits (as "property held to secure obligations under [exchange-traded] derivatives") at the OCC, through which many of the referenced "trading," "brokerage," and "dealing" activities occur. This is confirmed in the Sale Order, which makes specific reference to the transfer to Barclays of the assets in LBI's OCC Account, which necessarily includes the margin deposits held with respect to that Account. (Sale Order, ¶ N). Thus, consistent with the Transfer and Assumption Agreement, the Purchase Agreement provides that Barclays acquired LBI's OCC Account and margin deposits, including the Funds.

32. Through the Sale Order, this Court has already approved the acquisition of the OCC Account and the Funds by Barclays, and held that acquisition to be part of the overall good and valid transfer of all assets covered by the Purchase Agreement. The Sale Order specifically finds that the acquisition was negotiated at arm's length, and constituted a good faith purchase by Barclays for reasonably equivalent value.

33. Upon information and belief, at some point after September 20, 2008 the OCC may have moved the Funds from the Account into a separate "suspense account" at the OCC. Irrespective of whether the OCC may have moved the Funds, the OCC was required to continue holding the Funds as cash margin with respect to the Account and was not authorized to move the Funds or to cease treating them as cash margin. At all material times, the OCC should be

13

deemed to have held the Funds as cash margin for the Account, and as the property of LBI which was then transferred from LBI to Barclays pursuant to the Purchase Agreement and the Transfer and Assumption Agreement.

## NO LIABILITIES ASSUMED

34. The provisions of the Purchase Agreement, the Transfer and Assumption Agreement, and the Sale Order make clear that Barclays acquired the assets in the OCC Account free and clear of any claim, encumbrance, or liability.

35. The Purchase Agreement provides that Barclays did not assume liabilities incurred prior to the Closing, except for certain "[a]ccounts payable incurred in the Ordinary Course of Business" which were incurred after the relevant entity commenced bankruptcy proceedings. (APA, §§ 2.3, 2.4). The reimbursement obligations to the Banks were incurred prior to the Closing. They are not "accounts payable incurred in the Ordinary Course of Business," and, even if they were, they were incurred prior to the date that the LBI bankruptcy proceeding commenced under SIPA. Thus, Barclays did not assume the reimbursement obligations under the Purchase Agreement.

36. The Transfer and Assumption Agreement likewise limited the obligations that Barclays assumed. It required Barclays to assume only those liabilities which were either (a) settlement obligations with regard to transactions in cleared contracts, (b) obligations in respect of exercises of options contracts and assignments of such exercises, or (c) otherwise obligations "with respect to the activity in the Account." LBI's reimbursement obligations to the Banks were based upon the Applicant Agreements between LBI and the Banks, and do not fall into any of the foregoing three categories. In addition, LBI's reimbursement obligations to the Banks were in any event incurred prior to the date the Transfer and Assumption Agreement took effect,

and were for that independent reason not assumed by Barclays.

37. The Purchase Agreement expressly provides that Barclays did not assume any "Excluded Liabilities," which are defined to include "Liabilities arising out of ... Contracts that are not Purchased Contracts." (APA, § 2.4(a)). Barclays did not designate any of the Applicant Agreements between LBI and the Banks to be "Purchased Contracts" under the Purchase Agreement, and therefore the reimbursement obligations arising out of those Applicant Agreements are, by definition, "Excluded Liabilities."

38. The provisions of the Sale Order unambiguously find that Barclays acquired all assets transferred pursuant to the Order "free and clear of all Liens, claims ..., encumbrances, liabilities, contractual commitments, rights of first refusal; or interests of any kind or nature whatsoever ...." Sale Order, ¶ N. While the Sale Order recognizes that Barclays shall be assigned "all obligations to [the OCC]," the reimbursement obligations to the Banks under the Applicant Agreements are clearly not obligations to the OCC.

39. The Sale Order unambiguously orders that LBI was "authorized and directed to transfer the Purchased Assets" to Barclays and that as of the Closing, Barclays "shall take title to and possession of the Purchased Assets ... free and clear of all Interests of any kind or nature whatsoever, including but not limited to the Liens and Excluded Liabilities, with all such Interests to attach to the proceeds ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Purchased Assets or their proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto." Sale Order, ¶ 4. Thus, this Court has ordered that the only recourse for the Banks to collect on their reimbursement obligations is through claims

filed against the Debtors in this Court.

## PRAYER FOR RELIEF

WHEREFORE, Barclays respectfully prays for the following relief:

a)  that the Court enter an Order declaring Barclays' rights to the full amount of the Funds, free and clear of any and all claims, encumbrances, liabilities, or reimbursement obligations to the Banks;

b)  that the Court award Barclays its costs and attorneys' fees in connection with this action; and

c)  that the Court award such other and further relief as the Court deems appropriate.

Respectfully submitted,

**BARCLAYS CAPITAL INC.**

February 6, 2009.

\_\_\_/s/ Tricia J. Bloomer_____
BOIES, SCHILLER & FLEXNER LLP

Jonathan D. Schiller
Tricia J. Bloomer
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

Hamish P. M. Hume
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Tel: (202) 237-2727

*Attorneys for Interpleader Defendant and Counterclaimant and Crossclaimant Barclays Capital Inc.*