**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS, INC., | : | Case No. 08-13555 (JMP) |
| et al., | : | |
| Debtors. | : | Jointly Administered |

—————————————————————————/

TO:    THE HONORABLE JAMES M. PECK,
         UNITED STATES BANKRUPTCY JUDGE:

**MOTION OF COSCAN CONSTRUCTION, LLC.
FOR RELIEF FROM AUTOMATIC STAY**

Coscan Construction, LLC seeks Relief from the Automatic Stay pursuant to 11 U.S.C. §§ 105 (a) and 362(d)(2)  and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure for cause.

**A.    INTRODUCTION.**

By this Motion, Coscan Construction, LLC. ("Coscan") seeks relief from the automatic stay to allow it to assert certain affirmative defenses and counterclaims against the interests of the Debtor/Plaintiff Lehman Brothers Holdings, Inc. ("Lehman") in the matter styled *Lehman Brothers Holdings Inc. v. Gables Marquis, L.L.C.,* a real property foreclosure proceeding initiated by Lehman and currently pending in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County Florida (Case No. 08-21804-CA-05) (the "State Court Action"). Coscan's affirmative defenses and counterclaims, when fully adjudicated, would establish the competing lien priorities with respect to non-debtor real property which is the subject of the State Court Action.

**B.    PROCEDURAL BACKGROUND.**

1.    On September 15, 2008 (the "Petition Date"), Lehman and numerous affiliated

entities (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' Chapter 11 cases (the "Bankruptcy Cases") were consolidated by this Court and are being jointly administered. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 16, 2008, the Court entered an Order Pursuant to §105 of the Bankruptcy Code Enforcing the Protections of §362 of the Bankruptcy Code enjoining "all persons from, among other things, commencing or continuing any judicial, administrative, or other action or proceeding against the Debtor…that was or could have been commenced before the Debtor's Chapter 11 case was commenced."

3.      This Court has jurisdiction over the Debtors' Chapter 11 cases and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for the relief sought by this Motion are §§ 105(a) and 362(d) of the Bankruptcy Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure. Venue of the Debtors' chapter 11 cases is proper pursuant to 28 U.S.C. §§ 1408.

4.      No trustee or examiner has been appointed in the Bankruptcy Cases.

## C.      FACTUAL BACKGROUND.

5.      On April 11, 2005, Coscan executed an agreement (the "Construction Contract") with Gables Marquis, LLC (the "Developer") to serve as the general contractor for the construction of a residential condominium development (the "Project") located on real property (the "Property") in Coral Gables, Miami-Dade County, Florida. A true and correct copy of the Construction Contract is attached as ***Exhibit "A"***.

6.      On or about November 14, 2005, Lehman, the Developer and Coscan entered into

2

an agreement entitled Consent and Agreement of General Contractor (the "Consent Agreement") which acknowledged the terms of the Construction Contract and, among other things, gave Lehman the right to enforce the terms of the Construction Contract by assuming the obligations of the Developer. A true and correct copy of the Consent Agreement is attached as ***Exhibit "B"***.

7.      On or about November 17, 2005, Lehman and the Developer entered into a Construction Loan Agreement evidenced by a Promissory Note and Mortgage[1], Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement (collectively, the "Loan Documents"), simultaneously executed and duly recorded in the Public Records of Miami-Dade County, Florida and filed with the Florida Secured Transaction Registry.

8.      On or about December 9, 2007, the Developer defaulted on the terms of the Loan Documents by failing to make payments when due to Lehman.

9.      In or about December 2007, the Developer breached the terms of the Construction Contract by failing to pay Coscan amounts due and owing pursuant to work performed in accordance with the Construction Contract.

10.      On February 1, 2008, Lehman assumed the obligations of the Developer pursuant to the Construction Contract and the Consent Agreement by directing Coscan, via email, to complete the construction of the Project. A true and correct copy of that email is attached as ***Exhibit "C"***.

11.      In or about March 2008, as a result of the Developer's default and the Project's financial difficulties and as an inducement and assurance of payment for Coscan's fulfillment of its obligations under the Construction Contract, Lehman deposited in an escrow account the sum of $1,000,000.00, which Lehman agreed would be used exclusively to pay Coscan for its

---

[1] The Promissory Note and Mortgage was in the original principal amount of $46,842,839.49.

continued services.

12.     Coscan performed work on the Project up through and including July 12, 2008 and otherwise fulfilled all of its obligations pursuant to the Construction Contract and the Consent Agreement.

13.     Lehman failed to pay Coscan for the work which Lehman directed Coscan to perform on the Project pursuant to the Construction Contract and the Consent Agreement.

14.     Lehman wrongfully induced Coscan to continue to perform work on the Project by directing Coscan to honor its obligations without any intention of paying Coscan for its work.

15.     Coscan perfected its lien rights against the Property by complying in all respects with the Florida Lien Statutes, including fulfilling all conditions precedent thereto.

16.     On April 16, 2008, Lehman initiated the State Court Action to foreclose on its first mortgage lien on the Property.  Among the named defendants was the Developer, as owner, and Coscan, as a perfected construction lien holder of the Project. A true and correct copy of Lehman's complaint is attached as ***Exhibit "D"***.

17.     On May 16, 2008, Coscan filed its Answer and Counterclaim to the State Court Action. In its answer and counterclaim, Coscan alleges a perfected statutory lien against the Property superior to Lehman's mortgage lien in accordance with Florida law as well as seeking other remedies in law and equity.   A true and correct copy of Coscan's Answer and Counterclaim is attached as ***Exhibit "E"***.

18.     On  July 23, 2009, Lehman filed is Motion for Summary Judgment seeking to foreclose upon its mortgage lien on the Property and seeking to foreclose out the purported subordinated construction lien held by Coscan.   A true and correct copy of the Motion for Summary Judgment is attached as ***Exhibit "F"***.

4

## D.    RELIEF REQUESTED.

19.    Coscan seeks relief from stay so that it 1) may properly defend its perfected lien interest against the non-Debtor Property; 2) may establish its superior lien position on the Property; 3) may foreclose its perfected lien rights against the Property by establishing priority over Lehman's mortgage lien; and 3) otherwise establish the relative priorities of lien interests between Lehman and Coscan with respect to the Property. Relief from stay should be granted because Lehman is the aggressor/plaintiff in the State Court Action and Coscan's rights as asserted in its counterclaims may be more efficiently and economically resolved by the Florida state court. Furthermore, no harm or prejudice will befall the Lehman's bankruptcy estate and/or its creditors and Lehman will only benefit by expediting the judicial resolution of its own foreclosure complaint.

## LEGAL ARGUMENT AND CITATION TO AUTHORITY

### Relief from the Automatic Stay

20.    Relief from stay may be granted "for cause" as set forth in 11 U.S.C. § 362(d)(1), which provides:

> (d)    On request of a party in interest, and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay---
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest. 11 U.S.C. 362(d)(1)

21.    Neither the legislature nor the courts have enunciated a clear standard with regard to granting relief from stay "for cause."  The decision of whether to lift the stay is committed to the sound discretion of the bankruptcy judge based upon the totality of the circumstances on a

case-by-case basis. *In re Sonnax Industries, Inc.,* 907 F.2d 1280, 1285 (2d Cir.1990); *In re MacDonald,* 755 F.2d 715 (9th Cir.1985). In the Second Circuit, movants seeking relief from stay have the initial burden of proof to establish cause, and the decision of whether to lift the stay is committed to the discretion of the bankruptcy judge. *Id.* at 1285-86.

22.    When parties seek relief from the stay to permit litigation to proceed in another forum, the Second Circuit has adopted the following twelve factors, originally established in *In re Curtis,* 40 B.R. 795 (Bankr.D.Utah 1984), that a court should weigh in exercising its discretion:

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding;

(12) impact of the stay on the parties and the balance of harms.

6

*Sonnex* at 1286 (2d Cir.1990) (*citing In re Curtis* at 799-800).

23.     Under Second Circuit case law, the foregoing factors are not required in their entirety; rather, each is considered and given weight in view of the totality of the circumstances. See *In re Burger Boys,* 183 B.R. 682, 688 (S.D.N.Y 1994) and *In re Helen Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) (only factors relevant to a particular case need be considered).

24.     The *Curtis/Sonnax* factors relevant to this case include: (i) whether the relief Coscan seeks would result in a complete resolution of the issues; (ii) the State Court Action's lack of any connection or interference with the bankruptcy case; (iii) whether the 11th Circuit Court is a specialized tribunal with the necessary expertise to hear the relevant claims; (iv) whether the State Court Action primarily involves third parties (v) whether litigation in the State Court Action  would prejudice the interest of other creditors; (vi) whether Coscan's success in the State Court Action would result in a judicial lien avoidable by the debtor; (vii) the interests of judicial economy; and (vii) the impact of the stay on the parties and the balance of harms.

25.     Each of these factors weighs in favor of this Court's lifting the automatic stay for the following reasons:

(1)     Relief from the automatic stay would allow the state court to resolve and liquidate Lehman's foreclosure claims and Coscan's counterclaims, either by summary judgment or trial of the issues.

(2)     The State Court Action and the state court 's determination will not interfere with the Bankruptcy Cases, as Coscan's successful prosecution of its litigation will be substantially satisfied by the proceeds from the sale of the Property and shall not be a claim in the Bankruptcy Cases.

(3)     The state court has the necessary expertise to hear the State Court Action as it is a proceeding for the foreclosure of real property located in the county where the State Court Action has been brought and pursuant to which Florida law applies.[2]

---

[2] This factor turns on the finding of whether the claims constitute "core proceedings" within the meaning of 28 U.S.C. §157.  See *McCrory Corp. v. 99 Cent Only Stores,* 160 B.R. 502, 506 (S.D.N.Y.1993) and *Silverman v. General Ry. Signal Co.,* 144 B.R. 244, 249 (Bankr.S.D.N.Y.1992) ("[a] proceeding is

7

(4)      The State Court Action involves third parties particular to that case.

(5)      Pursuit of State Court Action will not prejudice Lehman's other creditors because, as mentioned above, Coscan shall not have claims in the Bankruptcy Cases.

(6)      Coscan's successful prosecution of claims against Lehman will not result in an avoidable judicial lien, as the outcome of the litigation will be the determination of lien priority which would be satisfied by the sale of the Property, which is a non-debtor asset.

(7)      Lifting the stay would promote the interests of judicial economy as discovery in State Court Action is well underway.

(8)      Lifting the stay will not result in undue hardship for Lehman. Lehman is attempting to foreclose on the security for its Loan Documents, the resolution of which properly belongs in the state court as demonstrated by Lehman's initiation of same and which in no way affects Lehman's efforts to reorganize.  Moreover, refusal to allow Coscan to proceed in the state court would impermissibly prejudice Coscan by allowing Lehman to foreclose Coscan's interest in the Property without allowing the assertion of defenses and countervailing legal and equitable claims.

26.    The Second Circuit directly addressed in a precode case the prosecution of a counterclaim asserted against the debtor in an action brought by the debtor in a non bankruptcy forum. In *In re Bohack Corporation,* 599 F.2d 1160 (2d Cir.1979), the debtor had sued a creditor in the district court for antitrust violations. The creditor, who had filed a proof of claim, sought to interpose its claims as a counterclaim. The debtor then acted to enjoin prosecution of the counterclaim as a violation of the automatic stay.  In noting that "the policy of the Bankruptcy Act is to allow setoffs and **counterclaims''** [emphasis added] in the bankruptcy context "based upon long-recognized rights of mutual debtors," the Court stated:

> Rule 11-44(d) [stay order] was designed in part to protect debtors from legal harassment and in general contemplates a situation where a creditor institutes a suit against the debtor. The purpose of the rule is the protection of the debtor, but **when the debtor is in the position of assailant rather**

---

encompassed within the bankruptcy court's core ... if it invokes a substantive  right provided by title 11 or if it is a proceeding that, by nature, could arise only in the context of a bankruptcy case.")

**than victim, the potential for abuse of that purpose is manifest**. Where a debtor institutes a lawsuit and then invokes the protection of [the automatic stay] on a counterclaim, the situation warrants a very thoughtful scrutiny.... [t]he court has an equitable duty to grant a setoff when a debtor moves outside the confines of the bankruptcy court in an attempt to reap the benefits but circumvent the burdens in another forum.

*Id.* at 1165. [3] [emphasis added]

27.     Other Second Circuit bankruptcy courts have declared the necessity of permitting counterclaims to proceed against debtors outside of the bankruptcy forum.  In *In re Countryside Manor, Inc.*, 188 B.R. 489 (Bankr.D.Conn. 1995), the court considered the *Sonnax* principles in lifting the stay to permit the assertion of a counterclaim in a state court proceeding initiated prepetition by the debtor/plaintiff.  There the court found the issues to be decided were based exclusively on state, not bankruptcy, law, that considerations of judicial economy and convenience mandated the referral to the state court, and that "[r]efusal to lift the stay prejudices the Defendants and is inequitable because they will be unable to assert their claim in state court." *Id.* at 491.

28.     Similarly, the court in *In re Jandous Electric Construction Corp.,* 106 B.R. 48 (Bankr. S.D.N.Y. 1989) offered a concrete view of the purpose of the Code's automatic stay provisions in denying the debtor's attempt to remove its prepetition lawsuit to the bankruptcy court, stating that:

[I]t is clear that the debtor's initiation, as plaintiff, of a civil suit against…[the] defendant, does not implicate any automatic stay under 11 U.S.C. §362.  A debtor may not use the automatic stay as a sword when the debtor is the plaintiff in a pending non-bankruptcy suit.  The purpose

---

[3]  Although the issue in *Bohack* specifically dealt with the right of set off as set forth in the Code, the considerations are the same in the instant case.   Lehman, like the petitioner in *Bohack*, has instituted a lawsuit and has simultaneously attempted to invoke the protection of the automatic stay on a counterclaim.  Coscan's counterclaim against Lehman is not technically a set off to Lehman's claims; however, its status as defendant in the State Court Action by virtue of Lehman's attempt to extinguish its property interest in the same collateral puts it in an identical position to the creditor in *Bohack*.

9

> of the stay is the protection of the debtor, but when the debtor is in the
> position of the assailant, rather than the defendant, it would be inequitable
> to invoke the stay against the defendant's counterclaim...

*Id.* at 49.

29.    Coscan's counterclaims in the State Court Action fall squarely within the parameters of the case law of the Second Circuit allowing for the stay to be lifted pursuant to 11 U.S.C. § 362(d)(1).    In keeping with the principles cited in *Bohack, supra*, Coscan asks the Court to exercise its "equitable duty" to allow the pursuit of Coscan's defenses and counterclaims, as Lehman has moved "outside the confines of the bankruptcy court in an attempt to reap the benefits but circumvent the burdens in another forum."

## Memorandum of Law

30.    This Motion includes citations to the applicable authorities and a discussion of their application to the Motion.  Accordingly, Coscan respectfully submits that such citations and discussion satisfy the requirement that Coscan provide a separate memorandum of law in support of the Motion pursuant to Local Bankruptcy Rule 9013-1(b).

## Reservation of Rights

31.    Coscan expressly reserves its right to amend or supplement this Motion, to introduce evidence supporting this Motion at the hearing on the Motion, and to file additional and supplemental pleadings.

10

**WHEREFORE**, Coscan respectfully requests that this Court enter an order: (i) granting Coscan relief from the automatic stay provided in 11 U.S.C. §362 to pursue claims against Lehman in the State Court Action; and (ii) granting Coscan any other relief the Court deems appropriate.

Respectfully Submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**
Attorneys for Coscan Construction, LLC
National City Building
200 East Broward Blvd., Suite 1110
Ft. Lauderdale, Florida 33301
Telephone: (954) 453-8000
Facsimile : (954) 453-8010
E-mail: bhouston@gjb-law.com

By:  /s/ Robert F. Elgidely
      Robert F. Elgidely, Esq.
      Florida Bar No. 111856
      New York Bar No. 2954618
      Bart A. Houston, Esq.
      Florida Bar No.  623636