**Hearing Date and Time:  March 17, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  March 10, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------------x

## NOTICE OF LEHMAN BROTHERS SPECIAL FINANCING INC.'S MOTION, PURSUANT TO SECTIONS 105(A) AND 363 OF THE BANKRUPTCY CODE AND RULE 6004 OF THE BANKRUPTCY RULES, FOR AUTHORIZATION TO PAY ADMINISTRATIVE AND LEGAL FEES AND EXPENSES OF CERTAIN SPECIAL PURPOSE VEHICLES

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman Brothers Special Financing Inc. ("LBSF") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") for authorization to pay administrative and legal fees and expenses of certain special purpose vehicles, all as more fully set forth in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **March 17, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United

States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases, so as to be so filed and received by no later than **March 10, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: February 23, 2010
      New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

-------------------------------------------------------------------x

**LEHMAN BROTHERS SPECIAL FINANCING INC.'S**
**MOTION, PURSUANT TO SECTIONS 105(A) AND 363 OF**
**THE BANKRUPTCY CODE AND RULE 6004 OF THE BANKRUPTCY**
**RULES, FOR AUTHORIZATION TO PAY ADMINISTRATIVE AND**
**LEGAL FEES AND EXPENSES OF CERTAIN SPECIAL PURPOSE VEHICLES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Special Financing Inc ("LBSF") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"

and, collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully

represent:

<u>**Preliminary Statement**</u>

        1.    LBSF has a significant interest – approximately $900 million – in

numerous transactions (the "Transactions") with certain special purpose vehicles incorporated in

the Cayman Islands (the "Cayman SPVs") pursuant to swap agreements (the "Swap

Agreements") entered into by and between LBSF and each of the Cayman SPVs.  As more fully

described below, Lehman Brothers Inc. ("LBI") was obligated to pay all fees and expenses of the

Cayman SPVs pursuant to certain expense agreements entered into by and between LBI and each

of the Cayman SPVs.  LBI has not paid such fees since prior to September, 2008.  As a result,

the Cayman SPVs are in imminent danger of being dissolved by the Registrar of Companies in

the Cayman Islands (the "Registrar") for failing to pay *de minimis* annual fees due to the

Registrar, as well as other outstanding fees and penalties.  If the Cayman SPVs are dissolved,

LBSF's ability to realize a return on the Transactions will be put in serious jeopardy.  In order to

preserve LBSF's significant interest in the Transactions, the outstanding fees of the Cayman

SPVs must be paid to ensure that the Cayman SPVs are returned to "good standing."

   2.    Accordingly, LBSF seeks authority to pay certain outstanding

administrative and legal fees and expenses on behalf of the Cayman SPVs in the aggregate

amount of $690,162.  A detailed schedule of the Transactions and the outstanding amounts of

fees and expenses with respect thereto are set forth in Exhibit A.  In addition, LBSF seeks

authorization to make any additional payments on behalf of the Cayman SPVs that LBSF deems

necessary to maintain a Cayman SPV in good standing, without further order of this Court, in

accordance with the procedures described herein.  Doing so will enable LBSF to continue its

efforts to settle the Transaction(s) with the respective Cayman SPVs without having to seek

numerous orders of this Court.

   3.    LBSF believes that the cost of maintaining the Cayman SPVs is dwarfed

by the potential return on the Transactions.  Thus, as explained below, the relief requested by this

Motion is appropriate and necessary to facilitate the realization of the value of the Transactions

for the benefit of LSBF's estate and creditors.

**Background**

4.        Commencing on September 15, 2008 and periodically thereafter, Lehman

Brothers Holdings Inc. and certain of its subsidiaries commenced with this Court voluntary cases

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  LBSF

commenced its case under chapter 11 of the Bankruptcy Code on October 3, 2008  (the

"Commencement Date").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

5.        On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.        On September 19, 2008 (the "SIPA Commencement Date"), a proceeding

was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to

LBI.  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

7.        On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

**Jurisdiction**

8.        This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Lehman's Business

9.      Prior to the events leading up to these chapter 11 cases, Lehman was the
fourth largest investment bank in the United States.  For more than 150 years, Lehman had been
a leader in the global financial markets by serving the financial needs of corporations,
governmental units, institutional clients and individuals worldwide.

10.      Additional information regarding the Debtors' businesses, capital
structures, and the circumstances leading to the commencement of these chapter 11 cases is
contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy
Rules for the Southern District of New York in Support of First-Day Motions and Applications,
filed on September 15, 2008 [Docket No. 2].

### Relief Requested

11.      By this Motion, LBSF seeks authorization, but not direction, pursuant to
sections 105(a) and 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004(h), to (i) pay
(a) $586,920[1] (the "MFL Fees") to Maples Finance Limited ("MFL") for services it provides as
administrator of the Cayman SPVs and (b) $103,242[2] (the "M&C Fees") to the Cayman Islands
law firm, Maples and Calder ("M&C"), for legal services it provides to the Cayman SPVs with
respect to the Transactions and (ii) pay, after providing notice to the Creditors' Committee in the
manner set forth herein, any fees and expenses of the Cayman SPVs in excess of the MFL Fees
and the M&C Fees (the "Future Fees" and together with the MFL Fees and the M&C Fees, the
"Cayman Fees") as deemed necessary by LBSF in its sound business judgment without further
order of this Court.  Given the exigency of the circumstances, LBSF requests that the Court

---

[1] Of the MFL Fees, $3,248 is for services performed by MFL prepetition.

[2] Of the M&C Fees, $101,150 is for services performed by M&C prepetition.

waive the requirements of Bankruptcy Rule 6004(h) and direct that the order granting the relief

requested herein be effective immediately.  LBSF's decision to pay the Cayman Fees represents

a reasonable exercise of its business judgment and should be approved.

### The MFL Fees and the M&C Fees

12.    Each Cayman SPV appointed MFL as its administrator pursuant to an

administration agreement.  As administrator, MFL, among other things, acts as a registered

office for the Cayman SPVs, provides directors and other local administrative services to the

Cayman SPVs, and pays the annual registration fee (the "<u>Government Fee</u>") due to the Registrar

on behalf of each Cayman SPV.  A company registered in the Cayman Islands must pay the

Government Fee in order to remain on the register of companies.  If a company defaults in

paying the Government Fee, the Registrar assesses quarterly penalties for the duration of the

default.  The Registrar may strike a defaulting company from the register of companies at any

time while a company is in default for non-payment of the Government Fee (although it does not

typically do so until at least twelve months have elapsed from the initial default).  Upon being

struck from the register of companies, the company would cease to exist.

13.    Prior to the SIPA Commencement Date, each Cayman SPV entered into

an expense agreement with LBI, pursuant to which LBI agreed to settle on behalf of each

Cayman SPV, any and all fees and expenses incurred in connection with the maintenance of the

Cayman SPV, including, but not limited to, registered office fees, the Government Fee, legal

fees, and fees for the provision of directors and other such officers.  In other words, LBI was

contractually obligated to pay, on behalf of each Cayman SPV, all fees owed to MFL and M&C

with respect to the Transactions.

14.    LBI has not paid fees to MFL and M&C since prior to the commencement

of the SIPA Proceeding.  As a result, MFL has not paid the Government Fee on behalf of the

Cayman SPVs for well over twelve months. As quarterly penalties continue to accrue, the Cayman SPVs are in imminent danger of being dissolved by the Registrar. All outstanding penalties and fees owed to the Registrar must be settled before March 31, 2010 in order to avoid additional penalties.

15.    Furthermore, MFL has advised LBSF that it cannot continue to provide its services unless the MFL Fees (which include the Government Fees and related penalties) are settled by March 29, 2010. If the MFL Fees are settled, the Cayman SPVs will be returned to good standing and MFL will continue to serve as administrator. If the MFL Fees remain outstanding, MFL will cease to act as a registered office provider and withdraw the directors it provides to the Cayman SPVs. Unless another administrator is appointed, which would require additional time and expense (which no one other than LBSF is willing to pay), and the Government Fees and penalties settled, the Cayman SPVs are at serious risk of being stricken from the register of companies in the Cayman Islands. In order to maintain the existence of the Cayman SPVs for the benefit of LBSF's estate and creditors, LBSF seeks authority to pay the MFL Outstanding Fees.

16.    Likewise, M&C has informed LBSF that if the M&C Fees are not paid by March 29, 2010, M&C will not only refuse to continue to provide legal services to the Cayman SPVs, but will cause MFL to resign. LBSF believes M&C provides valuable and necessary legal services to the Cayman SPVs in respect of the Transactions and, therefore, seeks authority to pay the M&C Fees.

### LBSF's Interest in the Transactions and the Need to Pay the Cayman Fees

17.    The Cayman SPVs, which routinely submitted to the jurisdiction of United States courts under the operative documents, were created to issue notes ("Notes") from time to time in one or more series (each a "Series"). The Series were issued pursuant to the Standard

Terms for Series Indenture and the Series Indenture or the Principal Trust Deed and the

Supplemental Trust Deed (collectively, the "Indenture" and together with the Swap Agreements

and any and all other documents related to the Series, the "Transaction Documents").  Each

Series was secured by collateral (the "Collateral") that consisted of, among other things, the

Swap Agreement between LBSF and the respective issuing Cayman SPV.  The Collateral for the

Notes was held in trust by the a trustee (the "Trustee") for the benefit of the holders of the Notes

(the "Noteholders") and LBSF, as a secured party under the Swap Agreement.

18.    Pursuant to each Indenture, LBSF's rights in the Collateral ordinarily take

priority over those of the Noteholders, and LBSF is entitled to payment in full under the

Transactions Documents before any Noteholder is paid.  However, if an "Event of Default"

occurs under the Swap Agreement, the terms of the Indenture subordinate LBSF's position as to

priority of payment and the Noteholders' rights in the Collateral take priority over those of

LBSF.  The Swap Agreements expressly include the filing of a bankruptcy petition as an "Event

of Default."  Accordingly, following the commencement of the Debtors' chapter 11 cases, each

Cayman SPV terminated its Swap Agreement with LBSF.  Furthermore, the majority of the

Trustees redeemed the Notes, sold the Collateral, subordinated LBSF's payment priority

pursuant to the terms of the Indenture, and distributed the proceeds to the Noteholders.  In those

instances, LBSF typically did not receive any payments as the amounts due to the Noteholders

exceeded the available funds; if LBSF did receive a payment, it was substantially less than what

LBSF would have received had its rights in the Collateral not been subordinated.  In the few

instances in which the Trustee has not liquidated the Collateral, LBSF is attempting to settle the

amounts owed to it with respect to those Transactions.

19.     The provisions of the Indenture modifying LBSF's priority of payment

solely because of the commencement of its bankruptcy case are unenforceable *ipso facto* clauses

that violate Bankruptcy Code §§ 365(e)(1) and 541(c)(1)(B).  Furthermore, LBSF's rights to

payment under the Transaction Documents are assets of the estate, and, therefore, any action by a

party to exercise control over those assets is subject to the automatic stay.  *See* 11 U.S.C. §

362(a).   Property of a debtor becomes property of the estate, "notwithstanding any provision in

an agreement . . . (B) that is conditioned . . . on the commencement of a case under this title . . .

and that effects or gives an option to effect a forfeiture, modification, or termination of the

debtor's interest in property."  11 U.S.C. § 541(c)(1).  Accordingly, any action taken by the

Trustees to enforce the *ipso facto* clauses of the Indenture violates the automatic stay under

Bankruptcy Code § 362(a).  *See Lehman Brothers Special Financing Inc. v. BNY Corporate*

*Trustee Services Limited*, 2010 WL 271161, at *11 (Bankr. S.D.N.Y. Jan. 25, 2010) (holding that

the provisions of an agreement "purporting to modify LBSF's right to a priority distribution

solely as a result of a chapter 11 filing constitute unenforceable *ipso facto* clauses" and that "any

attempt to enforce such provisions would violate the automatic stay").

20.     For the benefit of its estate and creditors, LBSF intends to enforce its

rights to payment under the Transactions, including pursuing claims against parties that violate

or have already violated the automatic stay by modifying LBSF's right to priority payment.

LBSF's ability to recover payment under the Transactions, however, is severally impaired if the

Cayman SPVs, which according to the underlying documents are subject to jurisdiction in the

United States, are dissolved.  For example, in situations in which a Trustee has already liquidated

the Collateral and distributed proceeds to Noteholders, if the respective Cayman SPV is

dissolved, LBSF could be limited in its ability to seek redress for the wrongful distribution

because it would be forced to seek payment directly from only the individual Noteholders. This raises additional complications such as whether the Noteholders can be located, whether they are amenable to jurisdiction in the United States, and whether and to what extent the Noteholders are willing to settle with LBSF or choose to fight back (potentially resulting in various sub-disputes with countless Noteholders). If the Cayman SPVs were allowed to dissolve, LBSF would be subjected to certain and costly harm, and in other circumstances, where similar risk of jurisdictional impairment arises, courts have taken steps to prevent such threatened harm. *Cf. Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.),* 168 B.R. 285, 292 (Bankr. S.D.N.Y. 1994) ("A debtor seeking injunctive relief need not demonstrate irreparable injury. Instead, the Court can enjoin activities that threaten the reorganization process or impair jurisdiction."). This Court has jurisdiction over the Cayman SPVs; however, should they dissolve, there is a risk that the Court would no longer possess the requisite jurisdiction to remedy LBSF's loss. Accordingly, LBSF believes that limiting its pursuit of payment only to Noteholders would result in a significantly lower net recovery, if any, than pursuing payment from the Cayman SPVs.

21.    In the situations in which the Collateral has not been liquidated, it is not entirely clear what will happen to the Collateral or LBSF's right to payment priority if the Cayman SPVs are dissolved, but there is a risk that LBSF's ability to obtain recovery of the Collateral, either through litigation or settlement, could be limited. Moreover, if the Cayman SPVs are not dissolved, prior to any distribution of the liquidated Collateral, LBSF has the ability to engage the Cayman SPVs in dispute resolution (whether legal or alternative dispute resolution) in order to obtain a declaration or consensual resolution of the parties' rights to the liquidated Collateral. Thus, given the *de minimis* amount of fees in the context of these cases, LBSF believes that it is in the best interest of its estate and creditors to pay the Cayman Fees to

maintain the existence of the Cayman SPVs rather than take the risk of letting the Cayman SPVs dissolve.

22.    To be clear,  LBSF is not asking the Court to find the provisions modifying LBSF's payment priority to be unenforceable *ipso facto* clauses or to find that there has been a violation of the automatic stay; rather, LBSF is seeking relief that preserves the opportunity to recover as much of the approximately $900 million as possible for the benefit of LBSF's estate and creditors.[3]

### The Future Fees and Notice Procedures

23.    LBSF hopes to consensually settle its position with respect to the Transactions as quickly and economically as possible.  That being said, LBSF will, as appropriate, pursue its rights to payment under the Transactions and its claims against each and every Trustee that has violated (or will violate) the automatic stay by subordinating LBSF's right to payment priority on the basis of the unenforceable *ipso facto* provisions.  LBSF recognizes that its efforts may result in the Cayman SPVs incurring annual fees and expenses in excess of the MFL Fees and the M&C Fees.  Thus, LBSF seeks authority to pay the Future Fees without further order of this Court.

24.    Instead, LBSF proposes to provide notice to the Creditors' Committee of its intention to pay Future Fees prior to paying such fees in accordance with the following notice procedures (the "Notice Procedures"):

- Prior to paying any Future Fees, LBSF will provide written notice ("Notice") to the Creditors' Committee describing the nature and the amount of the proposed Future Fees.

---

[3] LBSF reserves all rights including, without limitation, the right to challenge the modification of LBSF's rights to priority payment in connection with the Transactions, under the Indenture, Swap Agreement, or other such agreement related to the Transactions.

- The Creditors' Committee will have five (5) business days from the date on which the Notice is sent to the Creditors' Committee to object to the proposed payment of such fees. Any objection must be in writing and delivered to the attorneys for LBSF so as to be received on or before the fifth business day after the Notice is received.

- If no written objection is received by LBSF's counsel in accordance with the procedures herein, LBSF is authorized to pay the proposed Future Fees and payment shall be deemed fully authorized by the Court under the terms of the Order approving this Motion and no further notice or Court approval will be required or necessary.

- If the Creditors' Committee delivers a timely written objection to the proposed payment of the Future Fees, LBSF and the Creditors' Committee will use good faith efforts to resolve the objection. If LBSF and the Creditors' Committee are unable to achieve consensual resolution, LBSF will not proceed with the proposed payment of the Future Fees pursuant to these procedures, but may seek Court approval of the proposed payment upon an expedited notice and hearing, subject to the Court's availability.

- Nothing in the foregoing procedures will prevent LBSF, in its sole discretion, from seeking, upon notice and hearing, the Court's approval of any proposed payment of Future Fees, including on an expedited basis.

LBSF respectfully submits that the proposed Notice Procedures represent the exercise of sound business judgment and are fair and appropriate.

25.    LBSF does not intend to pay fees on behalf of the Cayman SPVs indefinitely; rather, LBSF intends to pay the Future Fees only to the point necessary to allow LBSF to realize what it is owed under the Transactions. Thus, as LBSF settles Transactions with Cayman SPVs, LBSF is likely to cease paying the fees of such Cayman SPVs.

**Sound Business Reasons Support
LBSF's Decision to Pay the Cayman Fees**

26.    Pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, LBSF requests authorization to pay (i) the MFL Fees and the M&C Fees and (ii) after providing notice to the Creditors' Committee in accordance with the Notice Procedures, any Future Fees, as

deemed necessary by LBSF in its sound business judgment, without further order of this Court.

Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "the trustee, after notice and

a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1). When considering a transaction outside the ordinary course of

business, courts in the Second Circuit, and others, require that such transaction be based upon the

sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re

Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d

141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank

v. Schipper* (*In Re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of

Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th

Cir. 1986).

        27.    It is generally understood that "[w]here the debtor articulates a reasonable

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville

Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is

a strong presumption that "the directors of a corporation acted on an informed basis, in good

faith and in the honest belief that the action taken was in the best interests of the company." *In

re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488

A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting

this presumption falls to parties opposing the proposed exercise of a debtor's business judgment.

*Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

        28.    As reflected in the Declaration of Robert Hershan, dated February 23,

2010, in support of the Motion, filed concurrently herewith, there are ample business

justifications in support of the Motion.  By paying the MFL Fees and the M&C Fees, approximately $690,162 in total, the Cayman SPVs will return to good standing in the Cayman Islands and MFL and M&C will continue to provide their services, which  are necessary to the operation of the Cayman SPVs.  As a result, LBSF will be able to enforce its rights to payment with respect to the Transactions in the most efficient manner possible in an effort to realize a substantial return for the benefit of LBSF's estate and creditors.  If the Cayman SPVs dissolve, LBSF believes its ability to recover the value of its interests from the Noteholders or otherwise is limited and will most certainly result in a significantly reduced recovery and could potentially eliminate any recovery.  Moreover, by being able to pay the Future Fees without returning to Court for approval each time the payment of such fees is necessary, LBSF will be able to maintain momentum on its efforts to recover under the Transactions without the need to incur the cost and expense of preparing an independent motion in each instance.

29.     Additionally, the costs of maintaining the existence of the Cayman SPVs pales in comparison to what LBSF believes it will be able to recover if the Cayman SPVs return to good standing.  Even if LBSF only recovers a small percentage of the approximately $900 million, paying the Cayman Fees is still justified.  Thus, LBSF believes that it would be a gross waste of LBSF's property and unreasonable as a matter of business judgment to stand idly by and watch the Cayman SPVs dissolve.

30.     For these reasons, LBSF's decision to pay the Cayman Fees is in the best interest of its estate and creditors and represents a reasonable exercise of its business judgment. Accordingly, the relief requested by the Motion should be granted.

## **Notice**

31.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended

order entered on February 13, 2009 governing case management and administrative procedures

for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;

(v) the United States Attorney for the Southern District of New York; and (vi) all parties who

have requested notice in these chapter 11 cases.  The Debtors submit that no other or further

notice need be provided.

       32.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

       WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: February 23, 2010
     New York, New York

               /s/ Jacqueline Marcus
               Jacqueline Marcus

               WEIL, GOTSHAL & MANGES LLP
               767 Fifth Avenue
               New York, New York 10153
               Telephone: (212) 310-8000
               Facsimile: (212) 310-8007

               Attorneys for Debtors
               and Debtors in Possession

## **Exhibit A**

| Issuer name | MFL Fees | M&C Fees | Terminated | Liquidated |
|---|---|---|---|---|
| 801 Grand CDO SPC | $ 26,717.55 | $ 17,083.73 | | |
| 801 GRAND CDO SPC SERIES 2006-1 | | | Y | Y |
| 801 GRAND CDO SPC SERIES 2006-2 | | | Y | Y |
| Penn's Landing CDO SPC | $ 27,126.82 | $ 480.09 | Y | Y |
| Securitized Product of Restructured Collateral Limited SPC | $ 27,947.36 | $ 38,770.20 | | |
| SEGREGATED PORTFOLIO SPRC D-FORCE LLC SERIES 2007-1 | | | Y | N |
| SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LTD SPC - SERIES 2007-1 FEDERATION A1 | | | Y | Y |
| SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LTD SPC - SERIES 2007-1 FEDERATION A2 | | | Y | Y |
| THE SERIES 2007-1 TABXSPOKE SEGREGATED PORTFOLIO - | | | Y | N |
| Copper Creek CDO SPC | $ 26,107.08 | $ 2,577.71 | Y | Y |
| Lakeview CDO SPC | $ 26,435.33 | $ 10,107.49 | | |
| LAKEVIEW CDO 2007-2 | | | Y | Y |
| LAKEVIEW CDO SPC 2007-1 | | | Y | Y |
| LAKEVIEW CDO SPC 2007-3 | | | Y | Y |
| LAKEVIEW CDO SPC SERIES 2007-4 SEGREGATED PORTFOLIO | | | Y | |
| Alta CDO SPC | $ 28,957.08 | $ 8,699.83 | | |
| ALTA CDO 2007-1 LTD | | | Y | N |
| ALTA CDO SPC SERIES 2007-2 SEGREGATED PORTFOLIO | | | Y | Y |
| Greystone CDO SPC | $ 26,253.86 | $ 6,113.49 | | |
| GREYSTONE CDO LIMITED SPC SERIES 2006-1 | | | Y | Y |
| GREYSTONE CDO LIMITED SPC SERIES 2006-2 | | | Y | Y |
| GREYSTONE CDO LIMITED SPC SERIES 2006-3 | | | Y | N |
| GREYSTONE CDO SPC SERIES 2008-4 SEGREGATED PORTFOLIO | | | Y | N |
| Cherry Hill CDO SPC | $ 26,551.82 | $ - | | |
| CHERRY HILL CDO SPC 2007-1 | | | Y | Y |
| CHERRY HILL CDO SPC 2007-2 | | | Y | Y |
| Pantera Vive CDO SPC | $ 22,665.86 | $ - | Y | Y |
| Stowe CDO SPC | $ 28,149.32 | $ 15,981.55 | | |
| STOWE CDO LIMITED SPC SERIES 2006-1 | | | Y | Y |
| STOWE CDO SPC SERIES 2008-1 SEGREGATED PORTFOLIO | | | Y | N |
| STOWE CDO SPC SERIES 2008-2A SEGREGATED PORTFOLIO | | | Y | Y |
| Solar V CDO SPC | $ 26,104.27 | $ - | Y | Y |
| Barton Springs CDO SPC | $ 23,615.23 | $ - | | |
| BARTON SPRINGS CDO LIMITED SPC SERIES 2005-1 | | | Y | Y |
| BARTON SPRINGS CDO LIMITED SPC SERIES 2005-2 | | | Y | Y |
| Fullerton Drive CDO Limited | $ 19,610.21 | $ - | Y | Y |
| Stony Hill CDO SPC | $ 22,936.43 | $ - | N | N |
| Jefferson Valley CDO SPC | $ 22,616.77 | $ - | Y | Y |
| Tavares Square CDO Limited | $ 19,358.32 | $ - | Y | Y |
| Tradewinds II CDO SPC | $ 22,179.27 | $ - | Y | N |
| Vox Place CDO Limited | $ 19,357.67 | $ - | Y | Y |
| Blue Point CDO SPC | $ 23,617.29 | $ 2,399.09 | | |
| BLUE POINT CDO LIMITED SPC SERIES 2005-1 | | | Y | Y |
| BLUE POINT CDO LIMITED SPC SERIES 2005-2 | | | Y | Y |
| Freedom Park CDO Series 2005-1 Limited | $ 12,481.38 | $ - | Y | Y |
| Sunset Park CDO Limited SPC | $ 27,947.17 | $ - | | |
| Sunset Park CDO-M Limited SPC | $ 23,223.01 | $ - | | |
| SUNSET PARK CDO LIMITED SPC SERIES 2004-1 | | | Y | Y |
| SUNSET PARK CDO LIMITED SPC SERIES 2004-2 | | | Y | Y |
| SUNSET PARK CDO LIMITED SPC SERIES 2004-4 | | | Y | Y |
| SUNSET PARK CDO LIMITED SPC SERIES 2005-3 | | | Y | Y |
| SUNSET PARK CDO LIMITED SPC SERIES 2005-5 | | | Y | Y |
| Sunset Park CDO Series 2005-6 Limited | $ 13,118.77 | $ - | Y | Y |
| Kings River Limited | $ 19,244.14 | $ - | N | N |
| Robania CDO Limited | $ 8,561.43 | $ - | Y | Y |
| Taylor Creek Limited | $ 16,036.88 | $ 1,028.52 | Y | Y |
| **Total** | $ 586,920 | $ 103,242 | | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
In re                                              :        **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*       :        **08-13555 (JMP)**
                                                   :
                        **Debtors.**               :        **(Jointly Administered)**
---------------------------------------------------------------------x

### ORDER GRANTING LBSF'S MOTION, PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND RULE 6004 OF THE BANKRUPTCY RULES, FOR AUTHORIZATION TO PAY ADMINISTRATIVE AND LEGAL FEES AND EXPENSES OF CERTAIN SPECIAL PURPOSE VEHICLES

Upon the motion, dated February 23, 2010 (the "Motion"), of Lehman Brothers

Special Financing Inc. ("LBSF") and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections

105(a) and 363(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rule

6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for

authorization to pay administrative and legal fees and expenses of certain special purpose

vehicles incorporated in the Cayman Islands (the "Cayman SPVs"), all as more fully described in

the Motion; and upon the declaration of Robert Hershan, dated February 23, 2010, in support of

the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the amended

order entered February 13, 2009 governing case management and administrative procedures

[Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of LBSF, its estate and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is GRANTED; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, LBSF is authorized, but not required, to pay $586,920 to Maples Finance Limited (the "MFL Fees") and $103,242 to Maples and Calder (the "M&C Fees"); and it is further

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, LBSF is authorized, but not required, to make any additional payments on behalf of the Cayman SPVs with respect to the transactions set forth in Exhibit A hereto (the "Future Fees") in accordance with the following Notice Procedures:

- Prior to paying any Future Fees, LBSF will provide written notice ("Notice") to the Creditors' Committee describing the nature and the amount of the proposed Future Fees.

- The Creditors' Committee will have five (5) business days from the date on which the Notice is sent to the Creditors' Committee to object to the proposed payment of such fees. Any objection must be in writing and delivered to the attorneys for LBSF so as to be received on or before the fifth business day after the Notice is received.

- If no written objection is received by LBSF's counsel in accordance with the procedures herein, LBSF is authorized to pay the proposed Future Fees and payment shall be deemed fully authorized by the Court

under the terms of the Order approving this Motion and no further notice or Court approval will be required or necessary.

- If the Creditors' Committee delivers a timely written objection to the proposed payment of the Future Fees, LBSF and the Creditors' Committee will use good faith efforts to resolve the objection.  If LBSF and the Creditors' Committee are unable to achieve consensual resolution, LBSF will not proceed with the proposed payment of the Future Fees pursuant to these procedures, but may seek Court approval of the proposed payment upon an expedited notice and hearing, subject to the Court's availability.

- Nothing in the foregoing procedures will prevent LBSF, in its sole discretion, from seeking, upon notice and hearing, the Court's approval of any proposed payment of Future Fees, including on an expedited basis; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(h) are waived and this Order shall be effective immediately upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: March __, 2010
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

| Issuer name | MFL Fees | M&C Fees | Terminated | Liquidated |
|---|---|---|---|---|
| 801 Grand CDO SPC | $ 26,717.55 | $ 17,083.73 | | |
| 801 GRAND CDO SPC SERIES 2006-1 | | | Y | Y |
| 801 GRAND CDO SPC SERIES 2006-2 | | | Y | Y |
| Penn's Landing CDO SPC | $ 27,126.82 | $ 480.09 | Y | Y |
| Securitized Product of Restructured Collateral Limited SPC | $ 27,947.36 | $ 38,770.20 | | |
| SEGREGATED PORTFOLIO SPRC D-FORCE LLC SERIES 2007-1 | | | Y | N |
| SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LTD SPC - SERIES 2007-1 FEDERATION A1 | | | Y | Y |
| SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LTD SPC - SERIES 2007-1 FEDERATION A2 | | | Y | Y |
| THE SERIES 2007-1 TABXSPOKE SEGREGATED PORTFOLIO - | | | Y | N |
| Copper Creek CDO SPC | $ 26,107.08 | $ 2,577.71 | Y | Y |
| Lakeview CDO SPC | $ 26,435.33 | $ 10,107.49 | | |
| LAKEVIEW CDO 2007-2 | | | Y | Y |
| LAKEVIEW CDO SPC 2007-1 | | | Y | Y |
| LAKEVIEW CDO SPC 2007-3 | | | Y | Y |
| LAKEVIEW CDO SPC SERIES 2007-4 SEGREGATED PORTFOLIO | | | Y | |
| Alta CDO SPC | $ 28,957.08 | $ 8,699.83 | | |
| ALTA CDO 2007-1 LTD | | | Y | N |
| ALTA CDO SPC SERIES 2007-2 SEGREGATED PORTFOLIO | | | Y | Y |
| Greystone CDO SPC | $ 26,253.86 | $ 6,113.49 | | |
| GREYSTONE CDO LIMITED SPC SERIES 2006-1 | | | Y | Y |
| GREYSTONE CDO LIMITED SPC SERIES 2006-2 | | | Y | Y |
| GREYSTONE CDO LIMITED SPC SERIES 2006-3 | | | Y | N |
| GREYSTONE CDO SPC SERIES 2008-4 SEGREGATED PORTFOLIO | | | Y | N |
| Cherry Hill CDO SPC | $ 26,551.82 | $ - | | |
| CHERRY HILL CDO SPC 2007-1 | | | Y | Y |
| CHERRY HILL CDO SPC 2007-2 | | | Y | Y |
| Pantera Vive CDO SPC | $ 22,665.86 | $ - | Y | Y |
| Stowe CDO SPC | $ 28,149.32 | $ 15,981.55 | | |
| STOWE CDO LIMITED SPC SERIES 2006-1 | | | Y | Y |
| STOWE CDO SPC SERIES 2008-1 SEGREGATED PORTFOLIO | | | Y | N |
| STOWE CDO SPC SERIES 2008-2A SEGREGATED PORTFOLIO | | | Y | Y |
| Solar V CDO SPC | $ 26,104.27 | $ - | Y | Y |
| Barton Springs CDO SPC | $ 23,615.23 | $ - | | |
| BARTON SPRINGS CDO LIMITED SPC SERIES 2005-1 | | | Y | Y |
| BARTON SPRINGS CDO LIMITED SPC SERIES 2005-2 | | | Y | Y |
| Fullerton Drive CDO Limited | $ 19,610.21 | $ - | Y | Y |
| Stony Hill CDO SPC | $ 22,936.43 | $ - | N | N |
| Jefferson Valley CDO SPC | $ 22,616.77 | $ - | Y | Y |
| Tavares Square CDO Limited | $ 19,358.32 | $ - | Y | Y |
| Tradewinds II CDO SPC | $ 22,179.27 | $ - | Y | N |
| Vox Place CDO Limited | $ 19,357.67 | $ - | Y | Y |
| Blue Point CDO SPC | $ 23,617.29 | $ 2,399.09 | | |
| BLUE POINT CDO LIMITED SPC SERIES 2005-1 | | | Y | Y |
| BLUE POINT CDO LIMITED SPC SERIES 2005-2 | | | Y | Y |
| Freedom Park CDO Series 2005-1 Limited | $ 12,481.38 | $ - | Y | Y |
| Sunset Park CDO Limited SPC | $ 27,947.17 | $ - | | |
| Sunset Park CDO-M Limited SPC | $ 23,223.01 | $ - | | |
| SUNSET PARK CDO LIMITED SPC SERIES 2004-1 | | | Y | Y |
| SUNSET PARK CDO LIMITED SPC SERIES 2004-2 | | | Y | Y |
| SUNSET PARK CDO LIMITED SPC SERIES 2004-4 | | | Y | Y |
| SUNSET PARK CDO LIMITED SPC SERIES 2005-3 | | | Y | Y |
| SUNSET PARK CDO LIMITED SPC SERIES 2005-5 | | | Y | Y |
| Sunset Park CDO Series 2005-6 Limited | $ 13,118.77 | $ - | Y | Y |
| Kings River Limited | $ 19,244.14 | $ - | N | N |
| Robania CDO Limited | $ 8,561.43 | $ - | Y | Y |
| Taylor Creek Limited | $ 16,036.88 | $ 1,028.52 | Y | Y |
| **Total** | **$ 586,920** | **$ 103,242** | | |