WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re                                            :        **Chapter 11 Case No.**
                                                 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,     :        **08-13555 (JMP)**
                                                 :
                      Debtors.                   :        **(Jointly Administered)**
----------------------------------------------------------------x

**DECLARATION OF ROBERT HERSHAN IN
SUPPORT OF LEHMAN BROTHERS SPECIAL FINANCING
INC.'S MOTION, PURSUANT TO SECTIONS 105(A) AND 363 OF
THE BANKRUPTCY CODE AND RULE 6004 OF THE BANKRUPTCY
RULES, FOR AUTHORIZATION TO PAY ADMINISTRATIVE AND
LEGAL FEES AND EXPENSES OF CERTAIN SPECIAL PURPOSE VEHICLES**

Robert Hershan, hereby declares:

1. I am over 18 years of age and I can testify to the following facts based on my personal knowledge, my review of the business records of Lehman Brothers Special Financing Inc. ("LBSF"), and/or my consultation with employees of Alvarez & Marsal North America, LLC and its wholly-owned subsidiaries, agents, affiliates (all of which are owned by Alvarez & Marsal North America, LLC's parent company and employees), and independent contractors (collectively, "A&M").

2. I am a Managing Director of A&M. A&M has been providing restructuring and general operational and managerial services to Lehman Brothers Holdings Inc.

and its affiliated debtors (together, the "Debtors") in connection with the above-referenced chapter 11 cases.

3. In that role, I have become familiar with the status of LBSF's derivatives portfolio.

4. I submit this Declaration in support of LBSF's *Motion, Pursuant to Section 105(A) and 363 of the Bankruptcy Code and Rule 6004 of the Bankruptcy Rules, for Authorization to Pay Administrative and Legal Fees and Expenses of Certain Special Purpose Vehicles*, filed concurrently herewith.[1]

5. LBSF has a significant interest – approximately $900 million – in numerous transactions with the Cayman SPVs pursuant to the Swap Agreements entered into by and between LBSF and each of the Cayman SPVs.

## The MFL Fees and the M&C Fees

6. Prior to the commencement of the Debtors' chapter 11 cases, each Cayman SPV appointed Maples Finance Limited ("MFL") as its administrator pursuant to an administration agreement.

7. As administrator, MFL, among other things, acts as a registered office for the Cayman SPVs, provides directors and other local administrative services to the Cayman SPVs, and pays the annual registration fee (the "Government Fee") due to the Registrar of Companies in the Cayman Islands (the "Registrar") on behalf of each Cayman SPV. MFL's services are necessary to the operation of the Cayman SPVs.

---

[1] Capital terms used but not defined herein shall have the meaning ascribed to them in the Motion.

8. Each Cayman SPV also utilized the legal services of the Cayman Islands law firm, Maples and Calder ("M&C"). M&C provides valuable and necessary legal services to the Cayman SPVs in respect of the Transactions.

9. Lehman Brothers Inc. ("LBI") was obligated to pay all fees and expenses of the Cayman SPVs pursuant to certain expense agreements entered into by and between LBI and each of the Cayman SPVs.

10. LBI has not paid fees to MFL and M&C since prior to September 19, 2008, the date on which a proceeding was commenced under the Securities Investor Protection Act of 1970 with respect to LBI.

11. LBSF has been informed that MFL has not paid the Government Fee on behalf of the Cayman SPVs in over twelve months and, as a result, the Cayman SPVs are in imminent danger of being dissolved by the Registrar unless and until all outstanding Government Fees and related penalties are settled.

12. MFL is owed outstanding fees in the amount of $586,920 (the "MFL Fees") for services it provided as administrator of the Cayman SPVs. MFL has advised LBSF that if the MFL Fees are not settled by March 29, 2010, MFL will cease to act as a registered office provider and withdraw the directors it provides to the Cayman SPVs. Unless another administrator is appointed and the Government Fees and penalties settled, the Cayman SPVs are at serious risk of being stricken from the register of companies in the Cayman Islands.

13. If the MFL Fees are settled, MFL will continue to serve as administrator and the Cayman SPVs will be returned to good standing.

14. M&C is owed outstanding fees in the amount of $103,242 (the "M&C Fees") for legal services it provided to the Cayman SPVs. M&C has informed LBSF that if the

M&C Fees are not paid by March 29, 2010, M&C will not only refuse to continue to provide legal services to the Cayman SPVs, but will cause MFL to resign as administrator.

**LBSF's Interest in the Transactions and the Need to Pay the Cayman Fees**

15. Pursuant to each Indenture, LBSF's rights in the Collateral securing the Notes issued by the Cayman SPVs ordinarily take priority over those of the Noteholders, and LBSF is entitled to payment in full under the Transactions Documents before any Noteholder is paid.

16. If an "Event of Default" occurs under the Swap Agreement, the terms of the Indenture subordinate LBSF's position as to priority of payment and the Noteholders' rights in the Collateral take priority over those of LBSF. The Swap Agreements expressly include the filing of a bankruptcy petition as an "Event of Default."

17. Following the commencement of the Debtors' chapter 11 cases, each Cayman SPV terminated its Swap Agreement with LBSF and the majority of the Trustees redeemed the Notes, sold the Collateral, subordinated LBSF's payment priority pursuant to the terms of the Indenture, and distributed the proceeds to the Noteholders. In those instances, LBSF typically did not receive any payments as the amounts due to the Noteholders exceeded the available funds; if LBSF did receive a payment, it was substantially less than what LBSF would have received had its rights in the Collateral not been subordinated.

18. LBSF intends to enforce its rights to payment under the Transactions, including pursuing claims against parties that have modified, or attempt to modify, LBSF's right to priority payment. LBSF's ability to recover payment under the Transactions, however, is severally impaired if the Cayman SPVs are dissolved.

19. In situations in which a Trustee has already liquidated the Collateral and distributed proceeds to Noteholders, if the respective Cayman SPV is dissolved, LBSF would be forced to seek payment directly from only the individual Noteholders, which raises additional complications and obstacles. Limiting pursuit of payment only to Noteholders would result in a significantly lower net recovery, if any, than pursuing payment from the Cayman SPVs.

20. In the situations in which the Collateral has not been liquidated, it is not entirely clear what will happen to the Collateral or LBSF's right to payment priority if the Cayman SPVs are dissolved, but there is a risk that LBSF's ability to obtain recovery of the Collateral could be limited.

21. LBSF hopes to consensually settle its position with respect to the Transactions as quickly and economically as possible. That being said, LBSF intends to, as appropriate, pursue its rights to payment under the Transactions and its claims related thereto, which may result in the Cayman SPVs incurring annual fees and expenses in excess of the MFL Fees and the M&C Fees. Therefore, it may become necessary to pay fees and expenses of the Cayman SPVs in excess of the outstanding MFL Fees and the M&C Fees.

22. It is in the best interests of LBSF's estate and its creditors to pay the Cayman Fees to maintain the existence of the Cayman SPVs rather than take the risk of letting the Cayman SPVs dissolve.

23. The costs of maintaining the existence of the Cayman SPVs pales in comparison to what LBSF will be able to recover if the Cayman SPVs return to good standing.

24. Even if LBSF only recovers a small percentage of the approximately $900 million, paying the Cayman Fees is still justified.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of February, 2010

/s/ Robert Hershan
Robert Hershan