Hearing Date and Time: March 17, 2010 at 10:00 a.m. (prevailing Eastern Time)
Objection Date and Time: March 10, 2010 at 4:00 p.m. (prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Perez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
: 
In re : Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., et al., : Case No. 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
:
-------------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363
OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019 FOR AN ORDER AUTHORIZING (I) LEHMAN BROTHERS
HOLDINGS INC. TO ENTER INTO RESTRUCTURING OF CERTAIN LOANS MADE
TO SUBSIDIARIES OF HILTON WORLDWIDE, INC. AND (II) LEHMAN
COMMERCIAL PAPER INC. TO PROVIDE CONSENTS RELATED THERETO**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper Inc. ("LCPI"), and their

affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession

(together, the "Debtors") for an order pursuant to sections 105 and 363 of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") authorizing (I) LBHI to enter into a restructuring of certain

loans made to subsidiaries of Hilton Worldwide, Inc. (f/k/a Hilton Hotels Corporation)

("Hilton") and (II) LCPI to provide consents to affiliates of GEM Realty Capital, Inc. ("GEM")

and Northwood Investors LLC ("Northwood") in connection with the restructuring of such loans,

will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **March 17, 2010 at 10:00 a.m. (prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Alfredo R. Perez, Esq., counsel to the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq., (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., counsel to the official committee of unsecured creditors appointed in these cases, (v) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn: Kenneth S. Ziman, Esq., counsel to The Blackstone Group, Hilton, and Hilton's

subsidiaries, (vi) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Brian E. Davis, Esq., counsel to GEM and Northwood, and (v) all parties who have requested notice in these chapter 11 cases, so as to be so filed and received by no later than March 10, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: February 23, 2010
     New York, New York

                                /s/ Alfredo R. Pérez
                                Alfredo R. Perez
                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, New York 10153
                                Telephone: (212) 310-8000
                                Facsimile: (212) 310-8007

                                Attorneys for Debtors
                                and Debtors in Possession

Hearing Date and Time: March 17, 2010 at 10:00 a.m. (prevailing Eastern Time)
Objection Date and Time: March 10, 2010 at 4:00 p.m. (prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Perez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                      :    Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., et al.,     :    Case No. 08-13555 (JMP)
:
Debtors.                      :    (Jointly Administered)
:
------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR AN ORDER AUTHORIZING (I) LEHMAN BROTHERS HOLDINGS INC. TO ENTER INTO RESTRUCTURING OF CERTAIN LOANS MADE TO SUBSIDIARIES OF HILTON WORLDWIDE, INC. AND (II) LEHMAN COMMERCIAL PAPER INC. TO PROVIDE CONSENTS RELATED THERETO**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper Inc. ("LCPI"), and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and collectively with their non-debtor affiliates, "Lehman"), file this motion (the "Motion") and respectfully represent:

**Preliminary Statement**

1. In October 2007, in connection with the acquisition of the common stock of Hilton Worldwide, Inc. (f/k/a Hilton Hotels Corporation) ("Hilton") by affiliates of The Blackstone Group ("Blackstone"), LBHI and together with the successors and assigns of the

original syndicate members, together with a syndicate of other banks (including LBHI, the "Lender Syndicate"), provided affiliates of Blackstone with approximately $21 billion of senior secured and mezzanine acquisition financing (the "Acquisition Financing"). While there is currently no default in connection with the Acquisition Financing, in light of the general economic conditions, the state of the lodging industry, and the related challenges facing Hilton, LBHI is supportive of a restructuring of the loans comprising the Acquisition Financing (the "Loans") for the reasons set forth herein.

2. While certain elements of the Restructuring (as defined below) are complicated, its essence is (a) the contribution by the parent of Hilton ("Sponsor") of $800 million to repay a portion of the Loans, (b) to provide for additional extensions of the Mortgage Loan (as defined below) and the Senior Mezzanine Loans (as defined below) for an additional two (2) years, bringing the final fully-extended maturity date to November 2015, and (c) the conversion to preferred equity (with a potential debt structure) of approximately $2 billion of the junior-most Loans. In return, the Lender Syndicate will earn improved economics, including interest rate steps and extension fees.

3. LBHI holds only a small fraction of the total debt proposed to be restructured and the other members of the Lender Syndicate have indicated support for the Restructuring. The Debtors believe that the modifications proposed for the Mortgage Loan and the Senior Mezzanine Loans only require consent of lenders representing 85% or 90% of the ownership in each tranche of debt and, as such, these proposed modifications could be implemented without LBHI's vote. In contrast, the Debtors understand that the administrative agent of the Lender Syndicate may require the consent of all lenders of the Junior Mezzanine Loans (as defined below) to the modifications proposed for the Junior Mezzanine Loans and,

accordingly, the Restructuring of the Junior Mezzanine Loans, as currently contemplated, may require LBHI's consent.  Regardless of whether LBHI's vote is required to implement the Restructuring, the Debtors are filing this Motion seeking authorization to participate in the Restructuring in accordance with this Court's *Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a) Establishing Procedures to (I) Restructure, (II) Make New or Additional Debt or Equity Investments In, And/Or (III) Enter into Settlements and Compromises in Connection with Existing Real Estate Investments* (the "Real Estate Investment Protocol").  Moreover, the Debtors believe that the Restructuring will maximize the value of the Loans and the collateral securing the Seller-Financed Loans (as defined below) and is thus in the best interest of the Debtors, their estates, and their creditors.

**Background**

4.  Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.  On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

7. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner.

### Jurisdiction

8. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Lehman's Business

9. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

10. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### Financing of Blackstone's Acquisition of Hilton

11. As stated above, in October 2007, affiliates of Blackstone, a global and prominent private equity investor and hotel owner, consummated a taking-private acquisition

transaction of Hilton.  The Lender Syndicate provided affiliates of Blackstone with $20.6 billion of Acquisition Financing consisting of the following Loans:  (i) a mortgage loan (the "Mortgage Loan") made to various Hilton affiliates (collectively, the "Mortgage Borrowers") and (ii) eleven (11) tranches of mezzanine loans designated "A" through "K" (together, the "Mezzanine Loans")[1] made to the direct and indirect owners of the Mortgage Borrowers (collectively, the "Mezzanine Borrowers").  The Mortgage Loan is secured by substantially all of the Mortgage Borrowers' assets, including, but not limited to, approximately 39 owned/ground leased hotels, 81 operating leased hotels, the pro rata interest in 37 joint venture hotels, management and franchise operations at over 3,000 hotels around the world, various timeshare assets, 2 office properties, and the "Hilton" brand names.  The Mezzanine Loans are secured by pledges of the direct or indirect ownership interests in the Mortgage Borrowers or, to the extent such pledges could not be provided, pledges or covenants relating to the cash flow derived from such direct or indirect ownership interests.

### Lehman's Interests in the Acquisition Financing

12.     As of February 2010, LBHI legally or beneficially holds $460,007,413 in the Mortgage Loan, $7,484,338 in Mezzanine Loan I, and $11,178,938 in Mezzanine Loan J.  Previously, LBHI also held interests in Mezzanine Loan A through Mezzanine Loan H but, in August 2008, LBHI sold its interests in these Senior Mezzanine Loans to affiliates of GEM Realty Capital, Inc. ("GEM") and affiliates of Northwood Investors LLC ("Northwood").  In connection therewith, LCPI provided seller financing for the purchase by GEM and Northwood of LBHI's interests in Mezzanine Loan E through Mezzanine Loan H and also now holds the

---

[1] Mezzanine Loan A through Mezzanine Loan I shall be referred to herein as the "Senior Mezzanine Loans" and Mezzanine Loan J and Mezzanine Loan K shall be referred to herein as the "Junior Mezzanine Loans."

economic interest in the seller financing provided for the purchase by Gem and Northwood of LBHI's interests in Mezzanine Loan D[2] (collectively, the "Seller-Financed Loans"). The Seller-Financed Loans are secured by a pledge of the interest held by the GEM and Northwood borrowers in the underlying Mezzanine Loan D through Mezzanine Loan H. The terms of the Seller-Financed Loans require that the GEM and Northwood borrowers seek LCPI's[3] consent in order for the GEM and Northwood borrowers to consent to or vote in favor of the proposed modifications of Mezzanine Loan D through Mezzanine Loan H.

### Relief Requested

13. By this Motion, the Debtors request entry of an order, pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, authorizing (a) LBHI to enter into a restructuring of the Mortgage Loan, the Senior Mezzanine Loans, and the Junior Mezzanine Loans and (b) LCPI to provide consents to GEM and Northwood under the documentation governing the Seller-Financed Loans to facilitate the participation by GEM and Northwood in the restructuring of the Senior Mezzanine Loans.

### Major Terms of the Transaction

14. The parties to the Acquisition Financing have indicated support for a restructuring of the obligations under the Mortgage Loan, the Senior Mezzanine Loans, and the

---

[2] The loan agreement governing the Seller-Financed Loan that financed the purchase by GEM and Northwood of LBHI's interest in Mezzanine Loan D identifies Woodlands Commercial Bank (f/k/a Lehman Brothers Commercial Bank) ("Woodlands Bank") as the lender of record with respect to such loan. Woodlands Bank and LCPI have agreed in principle, however, that LCPI is the holder of 100% of the economic interests in such loan and was intended to be the holder of all voting rights in respect of such loan. Accordingly, it is the Debtors' expectation that Woodlands Bank and LCPI will enter into an assignment agreement to reflect LCPI as both the lender of record and the holder of all economic interests with respect to such Seller-Financed Loan.

[3] With respect to Mezzanine D Loan, this Motion assumes that Woodlands Bank and LCPI enter into an assignment agreement to reflect LCPI as both the lender of record and the holder of all economic interests with respect to such Seller-Financed Loan.

08-13555-mg    Doc 7232    Filed 02/23/10    Entered 02/23/10 18:25:11    Main Document
Pg 10 of 20

Junior Mezzanine Loans (the "<u>Restructuring</u>").  The salient terms of the Restructuring are as follows:

| | |
|---|---|
| *New Sponsor Investment and Partial Senior Mezzanine Loan Retirement* | Sponsor will contribute $800 million to Hilton to repurchase and retire approximately $1.79 billion of certain Senior Mezzanine Loans. Sponsor's new investment will earn a 15% annual return and have an $800 million liquidation preference. |
| *Term Extension of Mortgage Loan and Senior Mezzanine Loans* | The maturity date of the Mortgage Loan and the Senior Mezzanine Loans may be extended for up to 2 additional years upon payment by the Mortgage Borrowers and the applicable Mezzanine Borrowers of an extension fee equal to 0.50% of the then outstanding principal balance of the Mortgage Loan and the Senior Mezzanine Loans.  The final, fully-extended maturity date will be November 2015. |
| *Interest Rate Increases on Mortgage Loan and Senior Mezzanine Loans* | The Mortgage Loan will bear interest with increased spreads ranging from 1.75% to 2.30% through November 2013.  Also, interest rate spreads on the Mortgage Loan and the Senior Mezzanine Loans will increase by an incremental 1% during the extension term expiring in November 2014 and an incremental 0.50% during the extension term expiring in November 2015. |
| *Amortization of Mortgage Loan* | The Mortgage Loan will maintain scheduled amortization payments based on the pre-Restructuring balance of the Mortgage Loan and the Senior Mezzanine Loans during the extension terms in accordance with the pre-Restructuring terms. |
| *Prepayment Premium on Mortgage Loan* | A prepayment premium ranging from 1% to 3% of the then outstanding principal balance of the Mortgage Loan will be due upon certain prepayments of the Mortgage Loan for the period after the Restructuring through October 2013. |
| *Conversion of Junior Mezzanine Loans* | The Junior Mezzanine Loans will be converted to preferred equity (with a potential debt structure) with an 8% annual return and, when combined with Sponsor's new investment, an approximately $2.8 billion aggregate liquidation preference.  In addition, the holders of the Junior Mezzanine Loans and Sponsor, as it relates to its new investment, will receive a profits interest entitled to an aggregate of 10% of all distributions after the preferred equity's liquidation preference and a distribution of $5.66 billion to Sponsor. |

**The Settlement Meets the Legal Standard Established Under
<u>Bankruptcy Rule 9019 and Is in the Bests Interests of the Debtors' Estates</u>**

15.     The Debtors submit that the transactions contemplated by the Restructuring (the "<u>Settlement</u>") are in the Debtors' best interests and should be approved under Bankruptcy Rule 9019.  Rule 9019 of the Bankruptcy Rules governs the procedural requirements to be followed before a compromise or settlement may be approved.  Bankruptcy Rule 9019

provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Fisher v. Pereira (In re 47-49 Charles St., Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994). A decision to accept or reject a compromise or settlement is within the sound discretion of the Court. Drexel Burnham Lambert Group, 134 B.R. at 505; see also 9 Collier on Bankruptcy ¶ 9019.02 (15th ed. rev. 2001). The settlement need not result in the best possible outcome for the debtor, but must not "fall below the lowest point in the range of reasonableness." Drexel Burnham Lambert Group, 134 B.R. at 505 (internal citations omitted); see also Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re Spielfogel, 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997). Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." TMT Trailer Ferry, 390 U.S. at 424 (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939).

16. The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). However, the analysis must focus on the question of whether a particular compromise is "fair

and equitable, . . . and [ ] in the best interest of the estate." In re Best Products Co., 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

17. While a court must evaluate "all . . . factors relevant to a full and fair assessment of the wisdom of the proposed compromise," TMT Trailer Ferry, 390 U.S. at 424, a court need not conduct a "mini-trial" of the merits of the claims being settled, or conduct a full independent investigation. Drexel Burnham Lambert Group, 134 B.R. at 505. "The bankruptcy judge does not have to decide the numerous questions of law and fact. . . . The court need only canvass the settlement to determine whether it is within the acceptable range of reasonableness." Nellis, 165 B.R. at 123 (internal citations omitted).

18. The court may give weight to the "informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." Drexel Burnham Lambert Group, 134 B.R. at 505 (internal citations omitted); see also In re Purofied Down Prods. Corp., 150 B.R. 519, 522-23 (S.D.N.Y. 1993); accord In re Ashford Hotels, Ltd., 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness. . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.") (internal citations omitted).

19. Significantly, there is no requirement that "the value of the compromise . . . be dollar-for-dollar the equivalent of the claim." Ionosphere Clubs, Inc., 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." Id. at 427-28 (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 n.2 (2nd Cir. 1974)).

20. After analyzing various alternatives, Lehman has determined that the Settlement provides the best framework for protecting and maximizing the value of the Mortgage Loan, the Senior Mezzanine Loans, the Junior Mezzanine Loans and, indirectly, the Seller-Financed Loans. Most notably, the Restructuring would (i) in effect, deleverage the capital structure of Hilton by up to approximately $3.8 billion, (ii) provide LBHI with the benefit of enhanced economic terms governing the Mortgage Loan and Senior Mezzanine Loans, (iii) through such deleveraging and enhanced economics, maximize the value of the Mortgage Loan and the Senior Mezzanine Loans held by LBHI and the collateral supporting the Seller-Financed Loans, (iv) through such deleveraging as well as the accelerated amortization of the Mortgage Loan, improve LBHI's Mezzanine Loan J position in Hilton's capital structure, and (v) through the maturity date extension, increase the probability that Hilton will be able to refinance the Mortgage Loan and the Senior Mezzanine Loans at maturity, thus affording LBHI the ability to maximize its recovery. In addition to the above-stated benefits of the Restructuring, the Debtors believe that, absent a near-term restructuring of the Loans, the Mortgage Borrowers and the Mezzanine Borrowers may be unable to satisfy their financial obligations under the Loans. Accordingly, the Restructuring represents a rational and targeted plan to address legitimate business concerns, and the Debtors are confident that the Restructuring will achieve the intended result.

21. The potential benefits of the Settlement substantially outweigh what LBHI is giving up in connection therewith – the contractual ability to collect on the original amount of the Loans, which is prone to uncertainty if concerns about Hilton's liquidity are not addressed in short order and, in any event, is not a remedy that may be pursued by LBHI at this time because there currently is no default.

22. Additionally, the terms of the Restructuring are the product of a good-faith, arms'-length negotiation process between the Lender Syndicate (which includes over 20 other holders in addition to Lehman), Hilton, and Blackstone since August 2009. The members of the Lender Syndicate (including Lehman), Blackstone, and Hilton, each represented by competent counsel, have participated in numerous meetings. After approximately seven (7) months of intense negotiations, and as a result of this successful negotiation process, the parties have arrived at the agreed set of terms described herein that provide mutually acceptable benefits and burdens to all concerned.

23. It is the Debtors' belief that, even without LBHI's vote, the other members of the Lender Syndicate have the authority to modify the Senior Mezzanine Loans and to take other actions related thereto. In accordance with the Real Estate Investment Protocol, however, the Debtors seek an order of the Court authorizing (a) LBHI to enter into a restructuring of the Mortgage Loan, the Senior Mezzanine Loans, and the Junior Mezzanine Loans and (b) LCPI to provide consents to GEM and Northwood under the documentation governing the Seller-Financed Loans to facilitate the participation by GEM and Northwood in the restructuring of the Senior Mezzanine Loans.

24. For all of these reasons, the Debtors submit that the Motion should be granted.

### The Settlement is an Appropriate Exercise of Lehman's Business Judgment

25. Ample authority exists for approval of the proposed Settlement. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). While section 363 of the Bankruptcy Code does not set forth a

standard for determining when it is appropriate for a court to authorize the sale, disposition, or other use of a debtor's assets, courts in the Second Circuit, in applying this section, have required that it be based upon the sound business judgment of the debtor.  See In re Chateaugay Corp., 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (same).  Section 105 of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]."  11 U.S.C. § 105(a).

26.    It is generally understood that "[when] the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985), appeal dismissed, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment.  Id. (citing Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).

27.    For the reasons set forth above, approval of the Settlement is in the best interests of the Debtors' estates.  The Settlement is necessary, in the Debtors' judgment, to allow LBHI to maximize return on its investment in the Mortgage Loan and the Mezzanine Loans and to allow LCPI to maximize return on its investment in the Seller-Financed Loans.  In light of the

direct and indirect benefits inuring to the Debtors and their estates pursuant to the Restructuring, LBHI's entry into the Restructuring represents an exercise of reasonable business judgment and, as such, should be approved.

**Notice**

28. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to Blackstone, Hilton, and Hilton's subsidiaries; (vii) counsel to GEM and Northwood; and (viii) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

29. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: February 23, 2010
     New York, New York

                                               /s/ Alfredo R. Pérez
                                               Alfredo R. Perez
                                               WEIL, GOTSHAL & MANGES LLP
                                               767 Fifth Avenue
                                               New York, New York 10153
                                               Telephone: (212) 310-8000
                                               Facsimile: (212) 310-8007

                                               Attorneys for Debtors
                                               and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
: 
In re                                                                   :    Chapter 11
                                                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :    Case No. 08-13555 (JMP)
                                                                            :
                    Debtors.                                        :    (Jointly Administered)
                                                                            :
------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AUTHORIZING (I) LEHMAN BROTHERS HOLDINGS INC. TO ENTER INTO RESTRUCTURING OF CERTAIN LOANS MADE TO SUBSIDIARIES OF HILTON WORLDWIDE, INC. AND (II) LEHMAN COMMERCIAL PAPER INC. TO PROVIDE CONSENTS RELATED THERETO

Upon the motion, dated February 23, 2010 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper Inc. ("LCPI"), and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and collectively with their non-debtor affiliates, "Lehman"), for an order, pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing (a) LBHI to enter into a restructuring of the Mortgage Loan, the Senior Mezzanine Loans, and the Junior Mezzanine Loans and (b) LCPI to provide consents to the GEM and Northwood borrowers under the documentation governing the Seller-Financed Loans to facilitate the participation by the GEM and Northwood borrowers in the restructuring of the Senior Mezzanine Loans, as further described in the Motion or on such other terms materially consistent with those described in the Motion; and the Court having jurisdiction to consider the Motion and the relief

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to Blackstone, Hilton, and Hilton's subsidiaries; (vii) counsel to GEM and Northwood; and (viii) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Motion is granted; and it is further

ORDERED that all objections, if any, to the Motion and the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are denied and overruled on the merits with prejudice; and it is further

ORDERED that, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Settlement is hereby approved, in all respects; and it is further

ORDERED that LBHI is hereby authorized to enter into the Restructuring, as described in the Motion, and to consummate all of the transactions contemplated thereby, without the necessity or requirement of further court proceedings or approval; and it is further

ORDERED that LCPI is hereby authorized to provide consents to affiliates of GEM and Northwood under the documentation governing the Seller-Financed Loans to facilitate the participation by affiliates of GEM and Northwood in the Settlement; and it is further

ORDERED that the Debtors are hereby authorized to perform each and every term of the Settlement in accordance with its terms and this Order; and it is further

ORDERED that the Debtors and their applicable affiliates, without the necessity or requirement of further court proceedings or approval or any other consents, (a) are duly authorized and empowered to execute, deliver, implement, and fully perform any and all obligations, instruments, assignments, conveyances, other instruments of transfer, and other documents that may be necessary or appropriate to consummate the Restructuring; (b) are duly authorized and empowered to take all other and further actions as may be necessary to implement the transactions contemplated by the Restructuring; and (c) shall have the right both in connection with and following consummation of the transactions contemplated by the Restructuring (i) to consent to any amendment, restatement, waiver, supplement, or other modification of any of the documents governing the Loans or the Seller-Financed Loans and (ii) to otherwise vote and make all determinations and take all other actions under such documents; and it is further

ORDERED that the obligations of the Debtors with respect to the Settlement, including without limitation, all transaction documents executed in furtherance thereof, shall survive confirmation of any plan in the Debtors' bankruptcy cases and shall not be discharged

under section 1141 of the Bankruptcy Code, and no plan shall be confirmed in the Debtors' bankruptcy cases that is inconsistent with this Order; and it is further

ORDERED that this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed pursuant to any applicable Bankruptcy Rule(s); and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order and any disputes that may arise in the future with respect to the Settlement.

Dated: March __, 2010
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE