Christopher R. Belmonte, Esq.                          Hearing Date:  March 17, 2010
Abigail Snow, Esq.                                          Hearing Time:  10:00 a.m.
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, Suite 1130
New York, New York 10169
(212) 818-9200

*Counsel for Latshaw Drilling Company, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) )<br>) Chapter 11<br>) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.,* | )<br>) Case No. 08-13555 (JMP)<br>) |
| Debtors, | )<br>) Jointly Administered<br>) |

**RESPONSE OF LATSHAW DRILLING COMPANY, LLC**
**TO DEBTORS' OBJECTION TO PROOF OF CLAIM NO. 18346**

Latshaw Drilling Company, LLC ("Latshaw"), by and through its duly authorized

attorneys, hereby submits this Response to "Debtor's Objection  to Proof of Claim Filed by

Latshaw Drilling Company, LLC (Claim No. 18346)," dated January 22, 2010, (Docket No.

6729) (the "Objection"), filed by Lehman Commercial Paper Inc. ("LCPI"), and in support

thereof, respectfully represents as follows:

**INTRODUCTION**

At the outset, Latshaw wishes to make clear that it is not seeking a cash

distribution from the Lehman bankruptcy estates on account of its filed claim.  Latshaw filed its

proof of claim (the "Latshaw Claim") as a protective measure, to preserve its rights against LCPI

based on LCPI's breach of the Credit Agreement, and prior to commencement of its own

bankruptcy case (the "Latshaw Bankruptcy Case") in the Bankruptcy Court for the Northern

District of Oklahoma.  As described more fully herein, and in the "Affidavit of Trent B. Latshaw

794592_4

in Support of Petition and First Day Motions," filed in Latshaw's bankruptcy cases in Oklahoma and attached hereto with exhibits as Exhibit A (the "Latshaw Aff."), Latshaw, LCPI and Ableco Finance LCC ("Ableco") were parties to a Credit Agreement, pursuant to which LCPI and Ableco were to lend funds to Latshaw upon receipt of a borrowing notice. LCPI, without explanation or notice, breached its contract with Latshaw when it admittedly "did not respond to Latshaw's request." Objection at ¶ 13. As a result of LCPI's breach of contract, Latshaw suffered approximately $18 million in actual damages which are not prohibited by the Credit Agreement and which it will seek to recoup against amounts due to LCPI.[1]

Given that the Latshaw Claim is, in essence, a claim for damages caused by LCPI's breach of the Credit Agreement to be recouped against the claim of LCPI (the "LCPI Claim") which has been filed in the Latshaw Bankruptcy Case, Latshaw respectfully submits that the proper forum for adjudication of its recoupment claim is the Bankruptcy Court in Oklahoma, where its own case is pending, where the LCPI Claim has been filed, and where Latshaw's objection to the LCPI Claim is pending. Accordingly, Latshaw does not object to dismissal of its protective claim without prejudice to its rights to recoup any damages which may be proven against the LCPI Claim in it's the Latshaw Bankruptcy Case. In the alternative, if this Court declines to permit withdrawal or dismiss without prejudice, Latshaw seeks to have its amended claim allowed, to have its damages claim resolved by evidentiary hearing in the Oklahoma Court, and to recoup the amount of its damages against the LCPI Claim in the Latshaw Bankruptcy Case.

---

[1] In addition, Latshaw suffered approximately $43 million in consequential damages as a result of lost profits – damages which Latshaw acknowledges are not recoverable under the Credit Agreement and which do not form any part of its claim in this case.

794592_4

## BACKGROUND

### A.   The Credit Agreement

1.     On June 10, 2005, Latshaw and its parent company Latshaw Drilling & Exploration Company ("Latshaw D&E") entered into a Credit Agreement (the "2005 Credit Agreement"), as Borrower, with LCPI as Syndication Agent and Administrative Agent, Lehman Brothers Inc. ("LBI") as Arranger, and several banks and financial institutions as Lenders (collectively, Latshaw, LCPI, LBI, the Lenders, and Latshaw D&E, the "Parties"). The 2005 Credit Agreement was originally for $45 million for five new oil and gas drilling rigs which Latshaw was building.  Within a few weeks after entering into the 2005 Credit Agreement, the credit line was increased to $60 million after Latshaw obtained contracts for two more rigs.  In January 2006 the credit line was increased to $80 million based upon contracts for another two rigs.  It was at this time that LCPI brought Ableco in as a loan participant for $20 million, or twenty-five percent (25%) of the total credit line.  Latshaw's maximum borrowings under the 2005 Credit Agreement were $78.5 million on the $80 million loan.  In the six months between November 2007 and May 2008, Latshaw paid down $18.5 million on the 2005 Credit Agreement, reducing the loan to $60 million.  Latshaw Aff., ¶ 15.

2.     In July 2008, due to continued demand in the energy industry, Latshaw decided to build an additional six new rigs, for a cost of $80 to $90 million.  LCPI, with the concurrence of Ableco, agreed to increase the credit line to $100 million, or an additional $40 million above the $60 million then owed under the 2005 Credit Agreement.  Accordingly, on July 11, 2008, the Parties entered into that certain "$100,000,000 Amended and Restated Credit Agreement among Latshaw Drilling Company, LLC, as Borrower, Latshaw Drilling & Exploration Company, The Several Lenders from Time to Time Parties Hereto, Lehman Brothers Inc., as Arranger, Lehman Commercial Paper Inc., as Syndication Agent, and Lehman

Commercial Paper Inc., as Administrative Agent Dated as of July 11, 2008" (the "Credit

Agreement"). Latshaw Aff., ¶ 16-17. A copy of the Credit Agreement is attached hereto as

Exhibit B.

3. Contrary to LCPI's brazen assertion of an "unambiguous prohibition of

. . . recoupment in the Credit Agreement" (Objection, ¶ 11), nowhere does that agreement

mention, much less prohibit, recoupment. LCPI further mischaracterizes the Credit Agreement

by selective quotation implying that Latshaw has waived the right to setoff or counterclaim –

including recoupment – as a remedy for breach of the Credit Agreement by LCPI. Objection,

¶ 15. However, reading the selective excerpt from which LCPI quotes in context of the section

in which it appears ("Application of Payments") shows that the prohibition on setoff or

counterclaim applies merely to regularly-scheduled payments:

> All payments (including prepayments) to be made by Borrower
> hereunder, whether on account of principal, interest, fees or
> otherwise, shall be made without setoff or counterclaim and shall
> be made prior to 12:00 Noon, New York City time, on the due date
> thereof to the Administrative Agent, for the account of the relevant
> Lenders, at the Payment Office, . . .

Credit Agreement, § 2.9(d).

4. Indeed, it is clear that the parties contemplated that counterclaims – which

necessarily include setoff and recoupment – were to be allowed, as demonstrated by paragraph

9.18 of the Credit Agreement:

> WAIVER OF JURY TRIAL. BORROWER, PARENT, THE
> AGENTS AND THE LENDERS HEREBY KNOWINGLY,
> VOLUNTARILY AND INTENTIONALLY, IRREVOCABLY
> AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY
> LEGAL ACTION OR PROCEEDING RELATING TO THIS
> AGREEMENT OR ANY OTHER LOAN DOCUMENT AND
> **FOR ANY COUNTERCLAIM THEREIN** (IN EACH CASE,
> WHETHER FOR CLAIMS SOUNDING IN CONTRACT OR IN
> TORT).

Credit Agreement, § 9.18 (emphasis added). If counterclaims were to be prohibited, there would be no need to require the parties to waive trial by jury on such prohibited counterclaims.

5.      Section 9.11 of the Credit Agreement provides for New York choice of law, and section 9.12 for non-exclusive New York jurisdiction.

**B.      The LCPI Default and Subsequent Bankruptcy**

6.      Pursuant to Section 2.2 of the Credit Agreement, upon Latshaw's delivery of a Borrowing Notice to LCPI as Administrative Agent one to three days before the Borrowing Date specified therein, LCPI was required to promptly notify the Lenders who were to provide their proportionate share of funds to LCPI in order to fund the Loan or Loans to Latshaw on the Borrowing Date.

7.      On September 15, 2008, Lehman Brothers Holdings Inc. and a number of its subsidiaries commenced voluntary cases under chapter 11 of the Bankruptcy Code in the Southern District of New York, which cases are being jointly administered under Case No. 08-13555 (JMP). LCPI was not among the subsidiaries which commenced a case on September 15, 2008.

8.      On September 17, 2008, in accordance with the parties' prior practice, Latshaw faxed a Borrowing Notice to Lehman requesting a draw of the remaining undrawn balance of $37,000,000 on September 18, 2008.[2] Latshaw Aff., ¶ 20, Ex. B.

9.      LCPI admits that it failed to fund its 75% of the Borrowing Notice and that Ableco did fund its 25%. Objection, ¶ 13. Ableco did so, provided that Latshaw remit all payments due to Ableco under the Credit Agreement directly to Ableco, rather than to the

---

    2      On August 26, 2008, Latshaw had made borrowing request for $3 million in funding which was honored by Lehman Paper, although Lehman Paper deducted the $600,000 commitment fee for the credit line from the funding, effectively providing $2.4 million to Latshaw.

794592_4

Administrative Agent. Latshaw agreed to this arrangement, as did LCPI and LBI, and Latshaw received $9,250,000 from Ableco. Latshaw Aff., ¶ 21, Ex. C.

10.     Upon LCPI's material breach and for at least one and one-half months thereafter, Latshaw attempted unsuccessfully to obtain replacement funding, including retaining an investment banker, Midland Capital Partners. All attempts to obtain financing were unsuccessful, given the prevailing market conditions.

11.     On October 5, 2008, LCPI commenced its voluntary chapter 11 case in the Bankruptcy Court for the Southern District of New York, Case No. 08-13900 (administered under Case No. 08-13555 (JMP)).

12.     Latshaw heard nothing from LBI or LCPI, but continued to make payments when due while reserving its rights, with the pro rata share of payment going to Ableco based on the funding provided by Ableco, and the balance to LCPI, until February 13, 2009, when LCPI – without ever having cured its default under the Credit Agreement – began to declare a series of manufactured defaults against Latshaw, culminating in LCPI's seizure of Latshaw's bank accounts and acceleration of repayment of the existing funding. Latshaw Aff., ¶¶ 27 - 32, Ex. G - O.

13.     Pursuant to order of this Court, the Bar Date in these cases was September 22, 2009. In an abundance of caution and to protect its rights to recoup any damages to which it is entitled, Latshaw filed its proof of claim in the LCPI bankruptcy on September 22, 2009, prior to commencing the Latshaw Bankruptcy Case.

14.     On February 1, 2010, at the request of counsel for LCPI, counsel for Latshaw provided copies of documents supporting Latshaw's damages, and on February 24, 2010, Latshaw sent its amended proof of claim, attaching supporting documents, to Epiq

794592_4

Bankruptcy Solutions, LLC, the Debtors' claims agent, by overnight mail service to the address provided on the proof of claim form.

## C.   The Latshaw Bankruptcy

15.   On November 11, 2009, Latshaw and its parent company Latshaw D&E filed voluntary petitions for relief under the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Oklahoma (the "Oklahoma Court"), which are being jointly administered under case number 09-13572-R.  Latshaw continues to operate its business as a debtor and debtor-in-possession.

16.   Pursuant to stipulations approved by the Oklahoma Court, Latshaw has the use of LCPI's cash collateral through April 30, 2010.

17.   Latshaw scheduled the claim of LCPI as a disputed claim in the amount of $69,185,668.33, subject to recoupment for damages and counter-claim, and secured by property with a value of $191,534,786.00, in its schedules in the Latshaw Bankruptcy Case.[3]  See, Latshaw Docket No.1, p. 18.

18.   Pursuant to order of the Oklahoma Court, the Bar Date in the Latshaw Bankruptcy Case was February 16, 2010.

19.   On February 16, 2010, LCPI filed the LCPI Claim in the Latshaw Bankruptcy Case for not less than $45,847,390.21, comprising principal in the amount of $45,245,990.71, accrued interest of $101,399.50, and an estimated $500,000.00 for "additional costs, fees, expenses or other amounts due and owing to LCPI under the Loan Documents." LCPI Claim, ¶ 7.  A copy of the LCPI Claim, without exhibits, is attached hereto as Exhibit C.[4]

---

3   This disputed scheduled claim includes amounts due to LCPI and to Ableco pursuant to the Credit Agreement.

4   Also on February 16, 2010, Ableco filed its proof of claim in the Latshaw Bankruptcy Case for not less than $24,014,671.62.

794592_4

20.    On February 24, 2010, Latshaw filed its objection to the LCPI Claim in the Oklahoma Court.

## RESPONSE TO OBJECTION

### I.

### LATSHAW SHOULD BE PERMITTED TO WITHDRAW ITS CLAIM WITHOUT PREJUDICE TO ITS RIGHT TO SEEK TO RECOUP ITS DAMAGES AGAINST THE CLAIM OF LCPI IN THE LATSHAW BANKRUPTCY CASE

**A.    Withdrawal of Latshaw's Claim Is Appropriate under the Circumstances, Causes no Legal Prejudice to LCPI, and Should Be Allowed by this Court**

21.    Federal Rule of Bankruptcy Procedure 3006 provides that a creditor may withdraw its claim, after an objection to the claim has been filed, only by order of the court, on notice to the debtor and any statutorily-appointed creditors committee.  The considerations which govern a decision under Rule 3006 are the same as those which govern decisions under Federal Rule of Civil Procedure 41(a).  In re 20/20 Sport, Inc., 200 B.R. 972, 979 (Bankr. S.D.N.Y. 1996), citing Advisory Committee Note to Rule 3006.  Dismissal should be granted, absent legal harm or prejudice to the debtor.  Id.; In re Ogden New York Services, Inc., 312 B.R. 729, 732-733 (S.D.N.Y. 2004)("In general, withdrawal should be granted unless the party opposing the motion can demonstrate that it would be legally prejudiced by the withdrawal").

22.    Courts consider the following factors in determining whether a proof of claim should be withdrawn without prejudice:  "the plaintiff's diligence in bringing the motion; any 'undue vexatiousness' on plaintiff's part; the extent to which suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss."  Ogden New York, 312 B.R. at 732 (quoting Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990).  Each of these factors is met here.  There has been no delay in requesting leave to withdraw the Latshaw Claim:  the

claim was filed as a protective measure on September 22, 2009, before the Latshaw Bankruptcy

Case was commenced. LCPI filed its objection to the Latshaw Claim on January 22, 2010, and

Latshaw's response –which incorporates the request to withdraw the Latshaw Claim – is being

timely filed on the February 24, 2010 due date for response to the Objection.[5]   There is no

"undue vexatiousness" on Latshaw's part; it merely seeks to assert a defensive right to recoup its

damages against the claim of LCPI in the Latshaw Bankruptcy Case where the LCPI Claim is

under dispute. Further, there has been, at most, minimal effort and expense to prepare for trial

on LCPI's part as the LCPI objection to the Latshaw Claim has just been filed, as has the LCPI

Claim in the Latshaw Bankruptcy Case. Nor would there be any need for relitigation:  as set

forth herein the proper forum for a decision on the amount of the LCPI Claim against Latshaw

and the amount of Latshaw's damages caused by LCPI's breach – to be asserted as a defense to

the LCPI Claim – are properly before the Oklahoma Court. Once a decision is rendered in the

Oklahoma Court, there is no need to further litigate the issue as Latshaw does not seek to

affirmatively recover from LCPI in its bankruptcy case before this Court, but merely to recoup

damages which it may prove against the LCPI Claim in the Latshaw Bankruptcy Case.

        23.     Finally, adjudication of the amount of the LCPI Claim and Latshaw's right

to recoup damages is properly before the Oklahoma Court where LCPI's claim for payment of its

debt is lodged. A refusal to permit withdrawal or dismissal of the Latshaw Claim without

prejudice to prove and recoup its damages against the LCPI Claim would put this Court in the

position of acting as a collection agency for LCPI's debt which is properly asserted and resolved

in the Latshaw Bankruptcy Case. "The bankruptcy court is not a collection agency." In re

Mountain Dairies, Inc., 372 B.R. 623, 635 (Bankr. S.D.N.Y. 2007)(abstention proper in

---

     5     On February 12, 2010, counsel for Latshaw requested of counsel for LCPI that LCPI stipulate to
withdrawal of the Latshaw Claim without prejudice. To date, no response has been received.

794592_4

involuntary bankruptcy where dispute between petitioning creditor and debtor was more properly heard in state court); In re Century Tile and Marble, Inc., 152 B.R. 688 (Bankr. S.D. Fla. 1993)(utilization of bankruptcy court as collection agency by petitioning creditor in involuntary case was improper); see, e.g., In re Glover, Inc., 43 B.R. 322 (Bankr. D. N.M. 1984); Franklin Union Furniture, Inc. v. Hobson (In re Hobson), 424 F.Supp. 375 (E.D. Mo. 1976).

**B.    The Oklahoma Bankruptcy Court Is the Proper Forum to
Determine the Amount of the LCPI Claim against Latshaw**

24.    A determination of the amount of the LCPI Claim in the Latshaw Bankruptcy Case, and the amount of damages which Latshaw may recoup against the LCPI Claim, is properly a decision for the Oklahoma Court.  In re Metiom, Inc., 301 B.R. 634, 638 (Bankr. S.D.N.Y. 2003).  Nor should the automatic stay in these cases apply to the claims objection proceedings in the Latshaw Bankruptcy Case.  Id.; Justus v. Financial News Network Inc. (In re Financial News Network Inc.), 158 B.R. 570, 573 (S.D.N.Y. 1993)(objection to proof of claim which does not seek affirmative relief not a violation of automatic stay).  See, e.g., Logan v. Credit General Ins. Co. (In re PRS Ins. Group, Inc.), 331 B.R. 580, 586 (Bankr. D. Del. 2005)(jurisdiction over proof of claim includes jurisdiction over all defenses to proof of claim). LCPI admits as much.  Objection, fn. 2.

25.    Latshaw does not assert an affirmative claim against LCPI, seeking distribution of assets of the LCPI estate.  Rather, the Latshaw Claim, which was filed as a protective measure in this case, is a defensive claim as against the LCPI Claim, seeking to recoup damages against the amount of the LCPI Claim in the Latshaw Bankruptcy Case where the LCPI Claim is under dispute.  It is not an attempt to exercise control over LCPI's property, but is a defense to the LCPI Claim filed in the Latshaw Bankruptcy Case.  See, Metiom, Inc., 301 B.R. at 638.

26.     When looking at the equities of the two proofs of claim – one filed by Latshaw in these cases which does not seek a recovery from LCPI's estate, and the other filed by LCPI  in the Latshaw Bankruptcy Case seeking recovery of not less than $45,847,390.21 – it is apparent that the true contest revolves around LCPI's claim against Latshaw, and therefore the amount of the LCPI Claim and the ability of Latshaw to recoup its damages against that claim should be determined by the Oklahoma Court.

27.     Accordingly, Latshaw respectfully requests that this Court permit withdrawal of the Latshaw Claim without prejudice to Latshaw's ability to assert and prove its recoupment claim against LCPI in the Latshaw Bankruptcy Case before the Oklahoma Court.

## II.

### IN THE ALTERNATIVE, LATSHAW SHOULD BE PERMITTED TO RECOUP AGAINST THE CLAIM OF LCPI IN THE LATSHAW BANKRUPTCY CASE

28.     In the alternative, if this Court declines to permit withdrawal of the Latshaw Claim without prejudice, Latshaw submits that the amendment of its claim – particularly in light of the fact that documentation supporting the claim was requested by LCPI and voluntarily agreed to and provided by Latshaw – is sufficient to support the Latshaw Claim and that Latshaw should be permitted to prove its damages in the Oklahoma Court and recoup its damages against the LCPI Claim in the Latshaw Bankruptcy Case.

**A.      Contrary to LCPI's Assertions, the Credit Agreement
Does Not Prohibit the Remedy of Recoupment of Damages**

29.     As previously stated, Latshaw does not seek a distribution on the amount of its claim against LCPI, but rather seeks to reserve its rights to recoup its damages against the LCPI Claim in its own bankruptcy case.  As set forth above, and contrary to LCPI's repeated assertions in the Objection, the Credit Agreement does not prohibit counterclaims in any legal action or proceeding, and therefore does not prohibit recoupment.  Indeed, as set forth above at

-11-

¶ 3, the Credit Agreement contains no reference to or prohibition of recoupment whatsoever. Accordingly, the Latshaw Claim is not prohibited by the Credit Agreement and should not be disallowed.

30.     LCPI asserts in the Objection that Latshaw "voluntarily waived any rights it may have had to recoupment" because it agreed to make regularly scheduled payments "without setoff or counterclaim." Objection, ¶ 27. However, it was clearly in the contemplation of the parties that counterclaims would be permitted in legal actions or proceedings, such as this dispute arising from LCPI's material breach of the Credit Agreement, as counterclaims are specifically referenced in the Credit Agreement with the parties waiving only their right to jury trial on counterclaims but not the right to assert counterclaims. Credit Agreement, § 9.18.

31.     While it is true that for pleading purposes the distinctions between setoff and recoupment  retain little significance, the distinction between the two remains important in bankruptcy. In re B & L Oil Co., 782 F.2d 155, 157 (10th Cir. 1986); In re Davidovich, 901 F.2d 1533, 1537 (10th Cir. 1990)("recoupment, while frequently merged with the doctrine of setoff in other contexts, is a distinct doctrine in bankrupty cases."). See, e.g., Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 145 N.2 (2d Cir. 2002)(plaintiff was on notice of  assertion of recoupment and setoff defenses although defendant only pled setoff).

32.     "Recoupment  allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the *same transaction* to arrive at a just and proper liability on the plaintiff's claim." In re Clowards, 42 B.R. 627 (Bankr. D. Idaho 1984)(allowing recoupment of claim for damages in breach of contract action to reduce balance due on contract)(emphasis in original). A recoupment claim is "essentially a defense" to a claim, rather than a mutual obligation. In re Davidovich, 901 F.2d at 1537 (quoting Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir. 1984).

-12-

33. Permitting Latshaw to prove and recoup its damages against the LCPI Claim in the Latshaw Bankruptcy Case also does not implicate the automatic stay in this case. Although some courts have held otherwise, "the better view" is that the automatic stay does not apply to bar or restrain a legitimate right of recoupment. 5 Collier on Bankruptcy (15th ed. rev.) § 553.10. Also see, In re University Medical Center, 973 F.2d 1065, 1080 (3rd Cir. 1992); In re Malinowski, 156 F.3d 131, 133 (2d Cir. 1998)("[r]ecoupment . . . is not subject to the limitations of section 553 or the automatic stay"); In re Powell, 284 B.R. 573, 576 (Bankr. D.Md. 2002)(recoupment "is treated as a non-statutory exception to the automatic stay in many courts"). See, also, Justus, *supra*, 158 B.R. at 573; Logan, *supra*, 331 B.R. at 586.

34. Accordingly, because Latshaw's damages are the direct result of LCPI's breach of the Credit Agreement, and thus arise from the same transaction, Latshaw should be permitted to recoup the amount of damages which it proves in the Oklahoma Court against the LCPI Claim in the Latshaw Bankruptcy Case.

**B.** **Latshaw's Claim Is for Direct Damages Flowing from LCPI's Material Breach, Accordingly, Its Claim Should Be Allowed and Recouped against the LCPI Claim After the Amount of Its Damages Has Been Determined by the Oklahoma Court**

35. The nature and amount of Latshaw's damages can only be determined after evidence has been presented and the parties have been given an opportunity to provide appropriate legal argument. Latshaw seeks only to recoup its damages against the LCPI Claim, which LCPI must make out in the Oklahoma Court, subject to Latshaw's objection in its own bankruptcy. Latshaw's amended proof of claim is filed in this case solely to preserve its right to recoup its damages against the LCPI Claim and not to participate in any distribution of LCPI's estate. Latshaw submits that the damages for which it seeks recoupment against LCPI's claim in the Latshaw Bankruptcy Case are not "special, exemplary, punitive or consequential," damages (which Latshaw properly concedes are waived by ¶ 9.12(e) of the Credit Agreement) but are

-13-

damages which flow directly and naturally from LCPI's admitted breach, were properly within

the contemplation of the parties at the time of entry into the Credit Agreement, and that both the

amount of its damages and its right to recoup such damages against the LCPI Claim in the

Latshaw Bankruptcy Case will be proved in the Oklahoma Court.

36.　　General damages are those damages "which are the natural and probable

consequence of the breach." American List Corp. v. U.S. News and World Report, Inc., 75

N.Y.2d 38, 42-43, 459 N.E.2d 1161, 1164, 550 N.Y.S.2d 590, 593 (N.Y. 1989); W.C. Loftus &

Co. v. Bennett, 68 A.D. 128, 74 N.Y.S. 290 (1st Dep't 1902)(general damages are natural result

of, and presumed by law to have accrued from, wrongful act).

37.　　While the accepted rule is that on the breach of a contract to lend money

general damages are limited to the cost of obtaining replacement financing, Bond Street Knitters,

Inc. v. Peninsula Nat'l Bank, 266 A.D. 503, 504 (N.Y. App. Div. 1943), this measure of damages

presumes that replacement financing is or would have been available. However, where

replacement financing is unavailable and the lender had reason to foresee the unavailability of

replacement funding, the borrower's damages – such as costs incurred in partial construction

which cannot be completed or lost opportunity costs – are damages which flow directly from the

breach. American List Corp., 75 N.Y.2d at 42-43. See, Restatement (Second) of Contracts §

351 cmt. e (1981)("[I]n the less common situation in which the lender has reason to foresee that

the borrower will be unable to borrow elsewhere or will be delayed in borrowing elsewhere, the

lender may be liable for much heavier damages based on the borrower's inability to take

advantage of a specific opportunity"); Lester v. Resolution Trust Corp., 125 B.R. 528, 532 (N.D.

Ill. 1991)("If it is foreseeable that substitute financing will not be available, the lender is liable

for foreseeable actual damages resulting from the breach."); Stacy v. Merchants Bank, 482 A.2d

61, 64 (Vt. 1984)(if borrower is unable to obtain replacement financing at time of breach, lender

is liable for actual damages incurred which were reasonably foreseeable at time contract was made); N.W.I. Intern., Inc. v. Edgewood Bank, 684 N.E.2d 401, 402, 409 (Ill. App. 1st 1997)(lender liable for foreseeable actual damages resulting from breach where alternative financing is unavailable).

38.     The approximately $18 million in damages which Latshaw seeks to recoup against the LCPI Claim are those which flow directly from LCPI's breach of the Credit Agreement and Latshaw's inability to obtain replacement funding at a time when LCPI knew or should have known that replacement financing would be unavailable, given the shock caused to the financial system by the collapse of its parent, Lehman Brothers Holdings Inc.  (As previously stated, Latshaw does not seek to recoup its consequential damages, which consist of approximately $43 million in lost profits.)

39.     Accordingly, because Latshaw's damages are the natural and probable consequence of LCPI's material breach at a time when LCPI knew or should have known that alternative funding would not be available, such damages are not prohibited by the Credit Agreement and the Latshaw Claim should not be disallowed, but should be allowed as a protective measure to protect Latshaw's right to recoup the amount of damages which it is able to prove in the Oklahoma Court against the LCPI Claim filed in the Latshaw Bankruptcy Case.

### III.

### THE LATSHAW CLAIM SHOULD NOT BE DISALLOWED FOR FAILURE TO ATTACH DOCUMENTS EVIDENCING DAMAGES

40.     The Objection further seeks to disallow the Latshaw Claim on the grounds that Latshaw did not submit documentation at the time of its filing.  At the outset, Latshaw submits that such objection is rendered moot by Latshaw's amendment of its claim and by its prior voluntary production of documents to LCPI in response to LCPI's request for documents to

support the Latshaw Claim.  Nevertheless, even if Latshaw had not already provided documents and amended its claim, disallowance on grounds of failure to attach documents is not warranted.

41.      The allowance of claims is governed by 11 U.S.C. § 502.  Section 502 of the Bankruptcy Code provides, in pertinent part, that "[a] claim . . . , proof of which is filed . . . is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Once an objection to a proof of claim is made, the court, after "notice and a hearing" shall determine the amount of the claim, and the claim shall be allowed except to the extent that:

> (1)      such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;
>
> (2)      such claim is for unmatured interest;
>
> (3)      if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;
>
> (4)      if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;
>
> (5)      such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;
>
> (6)      if such claim is the claim of a lessor for damages resulting from termination of a lease of real property . . .
>
> (7)      if such claim is the claim of an employee for damages resulting from the termination of an employment contract . . .
>
> (8)      such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or
>
> (9)      proof of such claim is not timely filed . . .

11 U.S.C. § 502(b).

794592_4

42.     Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides "[a]

proof of claim executed and filed in accordance with these rules shall constitute prima facie

evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f).

> To be legally sufficient and prima facie valid under the bankruptcy
> rules, a proof of claim must (1) be in writing; (2) make a demand
> on the debtor's estate; (3) express an intent to hold the debtor liable
> for the debt; (4) be properly filed; (5) be based upon facts which
> would allow, as a matter of equity, the document to be accepted as
> a proof of claim; and (6) be accompanied by evidence that any
> security interest has been perfected

Notinger v. Auto Shine Car Wash Systems, Inc. (In re Campano), 2002 WL 31115655 at *4
(Bankr. D.N.H. 2002).

43.     In the instant case, while Latshaw did not annex copies of the Credit

Agreement and the correspondence demonstrating LCPI's breach, Latshaw met its initial burden

by duly executing and filing its proof of claim prior to the bar date, which claim was in writing,

made a demand on the  Debtors' estate (albeit as a protective measure), expressed an intent to

hold LCPI liable for the unfunded commitment damages arising from LCPI's breach of contract,

and was properly and timely filed.  Counsel for LCPI requested copies of documents, including

invoices for materials which had been ordered for use in building the rigs and which could not be

cancelled after LCPI's material breach, and Latshaw provided the requested documents.

44.     The response of courts to objections for failure to file documentation (as

required by Rule 3001, by the official form, and by the Bar Date Order here), is to find that the

claim is not prima facie evidence of the proof of claim and to allow creditors to amend their

claims.  Disallowance for failure to attach documentation is a disproportionate sanction.  Matter

of Stoecker, 5 F.3d 1022, 1027 -1028 (7th Cir. 1993)("Nothing in the principles or practicalities

of bankruptcy or in the language of any rule or statute justifies so disproportionate a sanction for

a harmless error. Forfeitures of valuable claims, and other heavy sanctions, should be reserved

794592_4

for consequential or easily concealed wrongs."); <u>In re Guidry</u>, 321 B.R. 712, 714-15 (Bankr. N.D. Ill. 2005)("[A] claim cannot be disallowed solely on the basis that its proof was not accompanied by a Rule 3001(c) attachment"); <u>Cluff v. eCast Settlement</u>, 2006 WL 282005, at *3 (D.Utah Sept. 29, 2006)(objection to claim based solely on failure to attach documentation insufficient to disallow or reduce claim).

45.     Indeed, even if a proof of claim does not substantially comply with Rule 3001, the claim would still be allowed under Section 502 of the Bankruptcy Code "unless the Debtor establishes an exception under Section 502( b)." <u>Dove-Nation v. eCast Settlement Corp. ( In re Dove-Nation)</u>, 318 B.R. 147, 150-53 (B.A.P. 8th Cir. 2004) ("Neither procedural rules nor instructional language on official forms overrides clear statutory language"). *See*, *also*, <u>In re Habiballa</u>, 337 B.R. 911, 914-18 (Bankr. E.D.Wis. 2006)(Bankruptcy Rule 3001 cannot supersede substantive provisions of Bankruptcy Code § 502 which provides that claim is to be allowed unless objector shows that one of its exceptions applies); <u>In re Burkett</u>, 329 B.R. 820, 825-232 (Bankr.S.D.Ohio 2005)("If there is no underlying factual dispute as to the validity, ownership or amount of a claim, a debtor or trustee has no basis for filing an objection for lack of documentation unless the debtor or trustee alleges a basis that would require reduction or disallowance under § 502.")

46.     Just as the Bankruptcy Rules and the language found on the official forms cannot override the "clear statutory language" of section 502 (<u>Dove-Nation</u>, 318 B.R. at 153), neither can the Bar Date Order in and of itself provide for disallowance of a claim on grounds which are inconsistent with section 502. <u>Raleigh v. Illinois Dept. of Revenue</u>, 530 U.S. 15, 24-25, 120 S.Ct. 1951, 1957 (2000)("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides."); <u>In re Morristown & Erie R.R.</u>

794592_4

Co., 885 F.2d 98 (3d Cir. 1989)(court's power to fashion orders to further substantive provisions of Bankruptcy Code must be applied in manner consistent with the Code); In re One Times Square Assoc. Ltd. Partnership, 159 B.R. 695 (Bankr.S.D.N.Y. 1993), *aff'd* 165 B.R. 773, *aff'd* 41 F.3d 1502, *cert. denied*, 513 U.S. 1153 (authority to issue orders should be used sparingly to supplement and not supplant Code provisions).

47.     In the instant case, Latshaw did duly execute and file its proof of claim prior to the bar date, setting forth the amount and sufficient information on which the claim was based for LCPI to identify the claim.  Accordingly, Latshaw's proof of claim constitutes prima facie evidence of the validity and amount of its claim.  See Juniper Development Group v. Kahn (In re Hemingway Transport, Inc.), 993 F.2d 915, 925 (1st Cir. 1993) ("[a] proof of claim which comports with the requirements of Bankruptcy Rule 3001(f) constitutes *prima facie* evidence of the validity and amount of the claim").  If this Court does not grant Latshaw's request to withdraw its protective claim, Latshaw submits that the voluntary production of documents supporting its claim and the filing of its amended proof of claim satisfies all legal requirements.

48.     Given the foregoing, "[t]he burden of going forward shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim."  Allegheny, supra, 954 F.2d at 173.  See also In re Segre's Iron Works, Inc., 258 B.R. 547, 550 (Bankr. D.Conn. 2001) ("[d]ebtor bears the burden of proof in this claim allowance matter since [claimant's] Proof of Claim 'constitute[s] *prima facie* evidence of the validity and amount of the claim'").

49.     Not only does LCPI not submit any evidence to refute its breach of contract, LCPI actually admits that it breached the Credit Agreement by failing to respond to a borrowing notice and failing to fund, thus directly causing Latshaw's damages.  Objection at ¶ 13.  Given LCPI's admission of its breach of the Credit Agreement and Latshaw's production

-19-

of supporting evidence and filing of its amended claim with supporting documentation, Latshaw has met its evidentiary burden and there is no cause to disallow its claim.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, Latshaw respectfully requests that this Court permit Latshaw to withdraw the Latshaw Claim without prejudice to Latshaw's rights to prove the amount of damages caused by LCPI's material breach of the Credit Agreement and to recoup such damages against the LCPI Claim in the Latshaw Bankruptcy Case; or in the alternative, to permit Latshaw to amend its proof of claim, to have its damages claim be resolved by evidentiary hearing in the Oklahoma Court, and to recoup the amount of its proved damages against the LCPI Claim in the Latshaw Bankruptcy Case; and that this Court grant such other and further relief as its deems appropriate.

Dated: New York, New York
      February 24, 2010

                         SATTERLEE STEPHENS BURKE & BURKE LLP
                         *Counsel for Latshaw Drilling Company, LLC*

                         By:   /s/ Christopher R. Belmonte
                               Christopher R. Belmonte, Esq.
                               Abigail Snow, Esq.
                         230 Park Avenue, Suite 1130
                         New York, New York 10169
                         (212) 818-9200

794592_4