WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,        :    08-13555 (JMP)
                                              :
                          Debtors.            :    (Jointly Administered)
                                              :
-------------------------------------------------------------------x
```

**NOTICE OF DEBTORS' MOTION PURSUANT**
**TO SECTION 363 OF THE BANKRUPTCY CODE AND**
**BANKRUPTCY RULE 6004 FOR APPROVAL OF COLLATERAL**
**DISPOSITION AGREEMENT WITH JPMORGAN CHASE BANK, N.A., ET AL.**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") for approval of a collateral disposition agreement with JPMorgan

Chase Bank, N.A. and certain of its affiliates, subsidiaries or related entities (collectively,

"JPMorgan"), all as more fully described in the Motion, will be held before the Honorable James

M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander

Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004

(the "Bankruptcy Court"), on **March 17, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the

"Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties-in-interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, United States Bankruptcy Judge, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Att: Harvey R. Miller, Shai Y. Waisman and Brennan Hackett, attorneys for the Debtors; (iii) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019, Att: Harold S. Novikoff and Amy R. Wolf, attorneys for JPMorgan; (iv) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004, Att: Andy Velez-Rivera, Esq. and (v) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Att: Dennis F. Dunne, Dennis O'Donnell and Evan Fleck, attorneys for the Official Committee of Unsecured Creditors, on or before **March 10, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties, if any, are required

to attend the Hearing, and failure to appear may result in relief being granted or denied upon

default.

Dated: February 24, 2010
New York, New York

/s/ Shai Y. Waisman
Harvey R. Miller
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004 FOR APPROVAL OF COLLATERAL DISPOSITION AGREEMENT WITH JPMORGAN CHASE BANK, N.A., ET AL.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), move for approval of the Agreement (as defined below) with JPMorgan Chase Bank, N.A. ("JPMorgan Bank") and certain of its affiliates, subsidiaries, and related entities (collectively with JPMorgan Bank, "JPMorgan") and respectfully represent:

**Preliminary Statement**

1.      In an effort to transfer management of certain illiquid securities held as collateral by JPMorgan back to certain of the Debtors, the Debtors and JPMorgan have reached agreement upon a Collateral Disposition Agreement (the "Agreement") in the form annexed hereto as Exhibit A.[1]  The purpose of this agreement is twofold.  First, it provides the Debtors with the means of recovering and administering, in a manner most conducive to enhancing their value, illiquid securities with an aggregate face value in the billions of dollars.  Second, it allows JPMorgan to apply cash and cash equivalents it is currently holding to provisionally satisfy its claims against the Debtors, while reserving the rights of all parties with respect to the propriety of such claims.  Upon a further cash payment to JPMorgan by the Debtors in the amount of the unpaid claims balance remaining after application of the cash and cash equivalents, JPMorgan will transfer the illiquid securities to certain of the Debtors, with all parties reserving their respective rights.

2.      Prior to the commencement of these chapter 11 cases, JPMorgan Bank served as Lehman's primary bank, depository institution, clearing bank and intermediary for third-party intraday loans and tripartite repurchase transactions.  JPMorgan Bank provided such services to LBHI's primary broker/dealer subsidiary, Lehman Brothers Inc. ("LBI"), a regulated broker/dealer under the Securities and Exchange Act of 1934.[2]  During the course of that

---

[1] The amounts of the Unpaid Designated Claims Balance and the Designated Claims Balance (each as used and defined in the Agreement) currently set forth in the Agreement are based upon JPMorgan's current calculations, which have yet to be verified by the Debtors.  The Debtors and JPMorgan expect to reconcile such figures in the near term and, thereafter, execute the Agreement.  The Debtors will file the executed Agreement on the docket of these cases prior to the hearing on this Motion.  As set forth in the Agreement, the Unpaid Designated Claims Balance, the Designated Claims Balance and the Annexes will be subject to adjustments agreed by the Debtors and JPMorgan to reflect corrections, reconciliations and transactions through the effective date of the Agreement.

[2] On September 19, 2008, a proceeding was commenced against LBI in the United States District Court for the Southern District of New York under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa et seq. ("SIPA").  James L. Giddens, Esq. was appointed as the trustee under SIPA (the "SIPA Trustee") and is administering LBI's estate.

relationship, JPMorgan Bank required LBI to deposit collateral security for clearing and settlement services performed by JPMorgan Bank.  During the summer of 2008, JPMorgan Bank required LBHI to execute a guaranty dated as of August 26, 2008, covering certain of LBI's obligations to JPMorgan Bank and post collateral securing such guaranty.  Although the collateral posted by LBHI had a face value in the billions of dollars, it consisted of illiquid securities whose actual value was difficult to ascertain.

3.       In September 2008, LBHI executed (i) a guaranty in favor of JPMorgan Bank, its subsidiaries and its affiliates covering the obligations of all Lehman entities to such JPMorgan entities and (ii) a security agreement securing such guaranty with the collateral previously deposited by the Lehman entities, as well as additional collateral.  Between September 9, 2008 and September 12, 2008, LBHI posted an estimated $8.57 billion in cash and money market funds as additional collateral security.

4.       JPMorgan has filed proofs of claim against LBHI, the other Debtors and LBI in their respective cases asserting claims exceeding $29 billion in the aggregate as of October 2008 (the "Claims").  JPMorgan has asserted that the Claims are secured by the collateral deposited by LBI and LBHI, including the collateral described above (the "Collateral").  JPMorgan has advised the Debtors that it setoff against the Claims certain Collateral deposited by certain of the Debtors after September 15, 2008.  In addition, from time to time, JPMorgan applied portions of the Collateral to reduce the amount of the outstanding Claims, although it has not applied any illiquid Collateral.

5.       The parties have engaged in extensive and arms'-length negotiations to come to an agreement under which JPMorgan, without prejudicing the claims or defenses that the Debtors, LBI and JPMorgan may have against one another, could provisionally apply the

cash Collateral and transfer control of the illiquid Collateral to LBHI to permit it to administer the illiquid Collateral as a subrogee of JPMorgan's Claims against LBI and other parties. As a result of these negotiations, JPMorgan, LBHI and the other Debtors executed the Agreement.

6.     After giving effect to the application of Collateral to date (including from the receipt of proceeds received from the disposition of Collateral), the current outstanding amount of the Claims asserted by JPMorgan (including estimated accruals of interest and fees through March 31, 2010) is approximately $7.68 billion. After the application of the remaining liquid Collateral (the "Cash Collateral") pursuant to the Agreement, the balance of the asserted Claims will be approximately $557 million. After such application, the remaining Collateral will consist of assets that are largely illiquid in the current economic environment or whose disposition at this time would result in substantially diminished returns. Such assets would benefit from long-term, active and effective management. The Debtors believe that the Agreement will provide the Debtors with a means of administering such remaining illiquid Collateral in the manner most conducive to enhancing recoveries. Specifically, pursuant to the Agreement:

- JPMorgan will reduce its remaining aggregate Claim balance from approximately $7.68 billion to approximately $557 million through application of the Cash Collateral consisting of certain cash, cash proceeds of securities and money market funds all posted by the Debtors and LBI.

- JPMorgan will transfer the remaining illiquid Collateral to LBHI.

- LBHI will make a one time cash payment to JPMorgan in an amount of approximately $557 million, equal to the aggregate unpaid balance of JPMorgan's Claims.

- LBHI will step into the shoes of JPMorgan as a secured creditor of LBI and the guaranteed Debtors as a subrogee of JPMorgan without any prejudice or impairment of any and all rights of LBI or the other Debtors as to the validity or enforceability of such claims and without any waiver of any further rights of any parties-in-interest.

- Each Lehman entity reserves any and all rights and remedies it may have under applicable law, contract or otherwise, including, without limitation, the right to

contest the validity and enforceability of any such provisionally allowed secured or other Claim and/or to avoid or contest such Claims, any alleged guarantee thereof and any alleged security therefor.

7.      By providing LBHI with the ability to directly manage the remaining Collateral, LBHI believes the Agreement will result in substantially greater recoveries to more than offset the cash payment under the Agreement. The Debtors' decision to enter into the Agreement represents a reasonable exercise of business judgment and is in the best interests of their respective estates and creditors and all economic stakeholders.

## Relief Requested

8.      By this Motion, pursuant to section 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Debtors seek approval of the Agreement and authorization to consummate the transactions contemplated thereby.

## Jurisdiction

9.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

10.     Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

11.     Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Background

12. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

14. On September 19, 2008, a proceeding was commenced against LBI in the United States District Court for the Southern District of New York under SIPA.  James L. Giddens, Esq. was appointed as the SIPA Trustee.  The case commenced against LBI under SIPA was subsequently referred to this Court and is being administered as a companion proceeding with the Debtors' chapter 11 cases.

15. Prior to the commencement of its SIPA proceeding, LBI was LBHI's primary registered broker-dealer, derivatives dealer and investment adviser subsidiary.  As such, LBI was charged with the trading of securities for Lehman's own account and on behalf of its customers and served as a crucial component of LBHI's financial services business.

## A.     The Asserted Bases for JPMorgan's Claimed Liens and Security Interests

16.     As of 2008, JPMorgan Bank was Lehman's primary bank, depository institution, clearing bank and intermediary for third-party intraday loans and tripartite repurchase transactions.  As such, JPMorgan Bank was clearing agent for LBI.  Pursuant to a Clearance Agreement, dated June 7, 2000 (the "Initial Clearance Agreement"), JPMorgan Bank acted as LBI's primary clearing bank, facilitating LBI's settlement of securities transactions, including by extending credit to LBI to facilitate the clearance of such transactions.

17.     The parties operated under the Initial Clearance Agreement through at least the beginning of 2008.  Prior to 2008, JPMorgan Bank was secured by the collateral held in LBI's accounts.  Beginning in 2008, JPMorgan Bank advised LBI that it would require a more substantial haircut on the assets it was financing.  LBHI determined that LBI was unable to provide the additional collateral sought by JPMorgan Bank and that it would be posted by LBHI or other Lehman entities.  Between June and August 2008, Lehman Commercial Paper Inc. ("LCPI") and LBHI deposited various securities to serve as supplemental collateral in connection with the Initial Clearance Agreement.  As of early September 2008, the face amount of the collateral posted by LBHI was approximately $6.2 billion.

18.     During the Summer of 2008, JPMorgan Bank required that the Initial Clearance Agreement be amended (the "August 2008 Amendment") to include all Lehman entities that engaged in clearing activies as counterparties.  JPMorgan Bank also required a guaranty of LBI's obligations under the Initial Clearance Agreement and a security agreement to grant JPMorgan Bank a security interest in cash and securities accounts of LBHI maintained with JPMorgan Bank.

19.     On September 9, 2008, LBHI entered into a further amendment of the Initial Clearance Agreement (the "September 2008 Amendment" and, together with the Initial Clearance Agreement and the August 2008 Amendment, the "Clearance Agreement").  In connection with the execution of the September 2008 Amendment, LBHI also entered into an additional security agreement and guaranty agreement in favor of JPMorgan Bank, its subsidiaries and its affiliates covering the obligations of all Lehman entities to such JPMorgan entities.  Between September 9, 2008 and September 12, 2008, LBHI posted approximately $8.57 billion in cash and money market funds as additional collateral security.

## B.     JPMorgan's Asserted Secured Claims

20.     JPMorgan has filed Claims against LBHI, the other Debtors and LBI asserting that the aggregate debts and liabilities to JPMorgan exceed $29 billion prior to application of the proceeds of Collateral and setoffs.  The Claims relate to, among other things:

- the clearance and settlement of securities transactions, and the extension of credit with respect thereto, by JPMorgan to LBI under the Clearance Agreement;
- derivatives transactions between various LBHI subsidiaries (Debtors and non-Debtors) and JPMorgan entities;
- securities lending transactions, including transactions under which JPMorgan acted as principal and transactions under which JPMorgan acted as agent;
- securities options;
- repurchase and reverse repurchase agreements;
- distributions agreements;
- account overdrafts;
- a loan to a Japanese subsidiary of LBHI;
- alleged defaults by LCPI under a participation agreement;
- unremitted underwriting and placement fees;
- claims in favor of mutual funds, commingled funds and other investment vehicles allegedly affiliated with JPMorgan, including customer claims, derivative claims, securities lending claims and claims arising from securities issued or guaranteed by LBHI or subsidiaries;

- service contract, account charges and other fees; and
- LBHI guaranties of the foregoing.

**C.    The Current Status and Composition of the Collateral**

21.    As of the Commencement Date, JPMorgan Bank held Collateral consisting of illiquid securities with an aggregate face value in the billions of dollars, but of unknown actual value, and approximately $9 billion in cash and cash equivalents. The largely illiquid Collateral that remains in JPMorgan Bank's possession consists of securities posted by the Debtors and LBI (the "Securities Collateral"). These in turn consist of, among other things, credit derivatives and convertible bonds, preferred stock, structured debt and securitizations, including collateralized debt obligations secured by mortgage loans and corporate loans.[3] The Securities Collateral requires long-term, active and effective management. LBHI believes that in the current poor economic environment, a forced liquidation of the illiquid Collateral would result in highly diminished recoveries to the detriment of all parties. Conversely, if the Securities Collateral is effectively managed, the potential recovery value will materially increase.

22.    The Collateral also includes the Cash Collateral, which consists of certain unapplied cash Collateral, cash proceeds of securities Collateral and money market fund Collateral largely deposited by LBHI as set forth on Annex A of the Agreement. JPMorgan has advised the Debtors that it currently holds Cash Collateral in the aggregate amount of approximately $7.12 billion. JPMorgan has advised the Debtors that, after application of Collateral proceeds to the Claims through the date of the Agreement and prior to the proposed

---

[3] The Securities Collateral is comprised of the assets listed on Annex B of the Agreement. Annex B of the Agreement has been redacted to protect the commercially sensitive nature of information regarding such assets, disclosure of which could significantly impair the ability of LBHI's estate to maximize the value of such assets in the open market, or JPMorgan's ability to maximize the value of such assets if this motion is denied. Annex B of the Agreement, as has and will be revised, has been and will be provided to the Creditors' Committee. The final version of Annex B of the Agreement will be made available for *in camera* review by the Court.

application of Cash Collateral pursuant to the Agreement ("Prior Payments"), the balance of the Claims asserted by JPMorgan is approximately $7.68 billion.

## The Agreement

23.     Following months of extensive arms'-length negotiations among LBHI, the Debtors and JPMorgan, an Agreement has been reached as to the disposition of the remaining Collateral and the satisfaction of the Claims on a provisional basis without prejudice to the rights, claims or defenses of any economic stakeholders, including the SIPA Trustee, or any other party, including JPMorgan.[4]  The Agreement provides that:

- the Claims of JPMorgan, to the extent of the Collateral applied and the Cash Payment paid by LBHI pursuant to the Agreement, are provisionally allowed;

- JPMorgan will promptly apply the Cash Collateral of approximately $7.12 billion to the Claims to reduce the Designated Claims Balance from approximately $7.68 billion to approximately $557 million;[5]

- JPMorgan will transfer the Securities Collateral to LBHI, and thereafter, LBHI will administer and manage the disposition of such Collateral;

- in consideration of the application of the Collateral deposited by LBHI (including amounts heretofore applied) and the payment of the cash payment of approximately $557 million, LBHI shall be subrogated to the Claims of JPMorgan as a secured creditor of LBI and other Lehman entities, without any waiver of any rights of or prejudice to any parties-in-interest, including JPMorgan and LBI; and

- each Lehman entity reserves any and all rights and remedies it may have under applicable law, contract or otherwise, including, without limitation, the right to contest the validity and enforceability of any such provisionally allowed secured or other Claim and/or to avoid or contest such Claims, any alleged guarantee thereof and any alleged security therefore.

---

[4] The Collateral includes assets that were allegedly pledged as security to JPMorgan by LBI.  While the SIPA Trustee is not party to the Agreement, as stated in the Agreement and in this motion, nothing in the Agreement is intended to prejudice or waive any claims, counterclaims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes of action of whatever nature, whether asserted or unasserted, known or unknown, in contract or tort, unsecured, secured priority administrative or otherwise of LBI, the Debtors or JPMorgan with respect to the Collateral and the Claims.

[5] The Agreement contemplates that the Designated Claims Balance shall be adjusted prior to the effective date of the Agreement.

24.     The salient terms of the Agreement are as follows:[6]

**Application of Cash Collateral**     The parties agree that, within five business days after the effective date of the Agreement (the "Effective Date"), JPMorgan Bank or its affiliates or subsidiaries or related entities which are signatories to the Agreement (JPMorgan Bank and each such entity, a "JPMC Entity") will apply the Cash Collateral to payment of the Designated Claims Balance on a dollar-for-dollar basis (the "Cash Collateral Application").

**Cash Payment**     Simultaneously with the Cash Collateral Application, LBHI agrees to pay JPMorgan Bank, on behalf of itself and any other relevant JPMC Entities, an amount equal to the Designated Claims Balance remaining unpaid after the Cash Collateral Application (the "Cash Payment"), currently estimated to be approximately $557,000,000. The amount of the Cash Payment is subject to adjustment by the parties prior to the Effective Date.

Within ten business days after the Effective Date, JPMorgan Bank shall deliver to LBHI a report specifying in reasonable detail the Claims against which any portions of the Cash Collateral or the Cash Payment are applied and the entity applying such amounts.

**Subrogation and Assignment**     The agreement provides that LBHI will become a subrogee of JPMorgan's Claims against LBI and others.  Specifically:

(a)  Simultaneously with the payment of the Cash Payment, LBHI shall be fully subrogated to the Claims of the relevant JPMC Entities against LBI and such other subsidiaries to the full extent of the payments made by LBHI or applied from its property (the "Subrogated Claims") to such Claims; and

(b)  Simultaneously with the payment of the Cash Payment, LBHI shall succeed to any and all alleged liens of the relevant JPMC Entities against all of the Securities Collateral (in the same priorities as held by the relevant JPMC Entities), which liens shall be assigned and transferred to LBHI by the relevant JPMC Entities and which Securities Collateral shall be assigned and

---

[6]  This summary of the Agreement (this "Summary") is qualified in its entirety by the provisions of the Agreement. This Summary is intended to be used for information purposes only and shall not, in any way, affect the meaning or interpretation of the Agreement.  Capitalized terms used, but not otherwise defined herein, have the meanings ascribed to such terms in the Agreement.  Nothing contained in the Summary or this motion shall constitute an admission or a waiver of any of rights to assert claims or defenses of the Debtors, JPMorgan or the SIPA Trustee. Furthermore, this Summary and this motion contain statements of legal positions taken or which may be taken by the Debtors and nothing contained in this Summary or this motion shall be deemed an admission by JPMorgan or the SIPA Trustee or signify JPMorgan's or the SIPA Trustee's agreement with such positions.

transferred to LBHI by the relevant JPMC Entities.

The Agreement provides that the Subrogated Claims do not include any claims (the "Excluded Claims") held by JPMC Entities against LBI and other subsidiaries of LBHI that have not been paid by LBHI or applied from LBHI's property, as further specified in the Agreement.

Each relevant JPMC Entity agrees to unconditionally and irrevocably transfer and assign to LBHI all of its right, title, interest in, or to, the Subrogated Claims simultaneously with the payment of the Cash Payment.

The parties agree that, as between the Debtors and JPMorgan, each JPMC Entity shall be entitled to retain each Excluded Claim (including any Claim which becomes an Excluded Claim) and all distributions and recoveries received thereon.

***Future Distributions***     The Agreement provides that all principal, interest, distributions on and other proceeds of the Collateral that have been received by any relevant Debtor or non-Debtor entity controlled by a Debtor prior to the payment of the Cash Payment shall be retained by such entity free and clear of all liens. In addition, if any principal, interest or other distributions on the Securities Collateral is received by any JPMC Entity after the payment of the Cash Payment, such JPMC Entity shall promptly remit such amount to the relevant Debtor or non-Debtor entity controlled by a Debtor.

In the event that, notwithstanding any of the other provisions of the Agreement, any Debtor receives any payment, distribution or other property which, in accordance with the Agreement, should have been paid or transferred to a JPMC Entity, such Debtor shall hold such payment, distribution or other property in trust for such JPMC Entity and promptly pay or transfer such payment, distribution or other property to such JPMC Entity. Similarly, in the event that, notwithstanding any of the other provisions of the Agreement, any JPMC Entity receives any payment, distribution or other property which, in accordance with the Agreement, should have been paid or transferred to a Debtor, such JPMC Entity shall hold such payment, distribution or other property in trust for such Debtor and promptly pay or transfer such payment, distribution or other property to such Debtor.

***LBI Prime Brokerage Collateral***     The Agreement provides that the Securities Collateral and the Cash Collateral do not include the cash and securities (and the principal, interest and other distributions on such cash and securities) held in

the accounts asserted by the SIPA Trustee to be prime brokerage accounts nor the cash provided by the SIPA Trustee to JPMorgan Bank in substitution for certain of such securities (the "LBI Prime Brokerage Collateral"), and the Agreement generally transfers no interest in or to the LBI Prime Brokerage Collateral to the Debtors unless it is determined by a binding judicial determination or settlement that any of the LBI Prime Brokerage Collateral consists of Collateral and such Collateral has not been applied to Claims. As between the Debtors and JPMorgan Bank, JPMorgan Bank shall be entitled to continue to litigate or enter into any settlement with respect to its disputed security interest without the Debtors' consent.

*Provisional Allowance of Claims; Reallocation of Payments*

The parties agree that the Claims shall, to the extent of the amounts to be applied and paid in accordance with the Cash Collateral Application and the Cash Payment, be deemed to be provisionally allowed secured Claims of the relevant JPMC Entities against each of the Debtors against which such Claims have been asserted so as to facilitate the application of the Cash Collateral and the Cash Payment to such Claims, subject to the reservations of rights set forth in the Agreement.

Any Collateral, Prior Payment, Cash Payment or any exercise of alleged setoff rights, account activity, account adjustments or other payments and reductions of the Claims on or after the date of the Agreement (collectively, "Applied Property") (i) that has been applied to a Claim which is thereafter disallowed, avoided, invalidated or deemed unsecured pursuant to a binding judicial determination or settlement, (ii) the application of which to a Claim has been avoided or invalidated pursuant to a binding judicial determination or settlement or (iii) that, in lieu of being applied to the particular Claim to which it has been applied, JPMorgan Bank determines should be applied instead to another unpaid Claim, may be reallocated and applied by a JPMC Entity to an unpaid Claim (including, without limitation, an Excluded Claim) that has not been disallowed, avoided or invalidated; provided, however, that such Applied Property may be reallocated and applied only to an unpaid Claim that would have been secured by such Applied Property, as further specified in the Agreement. Upon any such reallocation and application JPMorgan shall promptly provide LBHI with written notice describing such reallocation and application in reasonable detail.

*Reservation of Rights*

The Agreement provides for the clear reservation of rights among the parties. In addition, the parties agree to request that the Court provide in any order approving the Agreement specified language reserving and preserving the rights of all parties, specifically

including the Debtors, LBI and JPMorgan.

**_Post-Effective Date Adjustments_**

The Agreement provides for certain post-Effective Date adjustments to true up the amount of all allowed unpaid secured Claims (as further defined in the Agreement, "<u>Allowed Unpaid Secured Claims</u>") and amounts otherwise to be paid, repaid or disgorged to the Debtors (as further defined in the agreement, "<u>Disgorgement Amounts</u>"). As further specified in the Agreement, within five business days after all binding judicial determinations or settlements necessary to determine the amount of all Allowed Unpaid Secured Claims and Disgorgement Amounts with respect to any Debtor:

(a) JPMorgan Bank shall pay to such Debtor (or its successor) the amount (the "<u>JPMC Adjustment Amount</u>"), if any, by which the Disgorgement Amounts with respect to such Debtor exceed the Allowed Unpaid Secured Claims with respect to such Debtor; and

(b) such Debtor shall pay to JPMorgan Bank the amount (the "<u>Debtor Adjustment Amount</u>") by which the Allowed Unpaid Secured Claims with respect to such Debtor exceed the Disgorgement Amounts with respect to such Debtor.

If, at any time before JPMorgan Bank pays the JPMC Adjustment Amount on behalf of a JPMC Entity, such JPMC Entity has been determined to owe a Disgorgement Amount to such Debtor, then such JPMC Entity shall deposit such Disgorgement Amount in a segregated interest-earning cash collateral account with JPMorgan Bank or certain other qualified banks to secure its obligations to pay the JPMC Adjustment Amount, all as further specified in the Agreement.

If, at any time before a Debtor pays its Debtor Adjustment Amount to one or more JPMC Entities, such Debtor is to make a general distribution of its assets under a chapter 11 plan or otherwise, then before it makes such distribution such Debtor shall deposit in a segregated interest-earning cash collateral account with a qualified bank to secure its obligations to pay such amount, an amount agreed to in good faith by JPMorgan Bank and such Debtor (or in the absence of such agreement, a judicial determination of the maximum amount that such Debtor could be required to pay to the relevant JPMC Entity), all as further specified in the Agreement.

**_Recovered Payments, Debtor Paid Claim Disallowed Amounts and Debtor Paid Claim_**

The Debtors agree to condition their requests for relief with respect to any Recovered Payment, Debtor Paid Claim Disallowed Amount or Debtor Paid Claim Unsecured Amount (each as defined below) to provide that:

**_Unsecured Amounts_**

(a) no JPMC Entity shall be required to pay, repay or otherwise disgorge such Recovered Payment, Debtor Paid Claim Disallowed Amount or Debtor Paid Claim Unsecured Amount to the Debtors, except as specified in the Agreement, and

(b) sections 502(d), 541 and 542 of the Bankruptcy Code (and any other provisions that would otherwise require the turnover of such amounts or impose adverse consequences for failing to turnover such amounts) shall not apply with respect to any failure on the part of any JPMC Entity to pay, repay or otherwise disgorge a Recovered Payment, Debtor Paid Claim Disallowed Amount or Debtor Paid Claim Unsecured Amount to the Debtors before the date, if any, that JPMorgan Bank is required to do so pursuant to the Agreement.

The Agreement provides that Recovered Payments, Debtor Paid Claim Disallowed Amounts, Debtor Paid Claim Unsecured Amounts, and certain other amounts, as further specified in the Agreement, will be calculated and applied separately with respect to each Debtor, without aggregation in any way as among the Debtors unless otherwise provided by a binding judicial determination or settlement.

"Recovered Payment" means any Prior Payment or any other payment of a Claim that has been avoided, rescinded, invalidated or recovered pursuant to a binding judicial determination or settlement, except to the extent that such determination or settlement gave rise to a Debtor Paid Claim Disallowed Amount or Debtor Paid Claim Unsecured Amount with respect to the same underlying Claim (or any portion thereof).

"Debtor Paid Claim" means any Claim that has been paid through application of Cash Collateral posted by a Debtor, application of the Cash Payment, a Prior Payment from a Debtor or from its property or any other payment by a Debtor or from its property.

"Debtor Paid Claim Disallowed Amount" means the amount of any Debtor Paid Claim that is determined by a binding judicial determination or settlement to have been invalid at the time of its payment because such Claim was then subject to avoidance, disallowance, release, dismissal or reduction, as further specified in the Agreement.

"Debtor Paid Claim Unsecured Amount" means the amount of any Debtor Paid Claim that is determined by a binding judicial

determination or settlement to have been an unsecured claim at the time of its payment because a lien securing such Claim was then subject to avoidance, disallowance, release, dismissal, reduction or limitation, as further specified in the Agreement.

| | |
|---|---|
| ***Actions with Respect to Subrogated Claims*** | The parties have agreed to provide each other with prompt notice of certain actions that may implicate their respective obligations under the Agreement, including the commencement of an objection, counterclaim, crossclaim or other action against LBHI in a court or other tribunal with respect to any Subrogated Claim, lien securing a Claim, or Collateral, as further specified in the Agreement. Subject to the terms of the Agreement, under certain circumstances JPMorgan may, at its election and at its own expense participate in or assume the defense of any such action. |
| ***Value of Collateral*** | The parties shall agree upon the means, effective date and methodology to determine the value of the Collateral or any relevant part thereof. If the parties are unable to agree upon such valuation issues, then the Bankruptcy Court will determine such issues.<br><br>The Agreement further sets forth certain ongoing disclosure obligations of the Debtors to JPMorgan regarding the Securities Collateral to enable JPMorgan to value such Collateral. |
| ***Automatic Stay*** | To the extent that the automatic stay and any other stays entered in these chapter 11 cases are applicable to any actions expressly contemplated to be taken by JPMorgan pursuant to the Agreement, the entry of the order by the Court approving the Agreement shall modify such stays to the extent necessary to permit JPMorgan to take such actions. |

**The Agreement is An Appropriate Exercise of the Debtors'**
**Business Judgment is in the Best Interests of All Economic Stakeholders**

25.      Ample authority exists for approval of the Agreement. Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The Debtors are seeking approval of the Agreement under section 363 of the Bankruptcy Code insofar as the Agreement contemplates the use of the Collateral and the Cash Payment.

26.    While section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale, disposition or other use of a debtor's assets, courts in the Second Circuit and others, in applying this section, have required that it be based upon the sound business judgment of the debtor. *See in re Global Crossing, Ltd.*, 295 B.R. 726, 744 (Bankr. S.D.N.Y. 2003) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under section 363(b), courts consider a variety of factors, which essentially represents the 'business judgment test'.") (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *see*, *e.g. In re Delphi Corp.*, 2009 WL 637315, at * 9 (Bankr. S.D.N.Y. Mar. 10, 2009) (applying the business judgment rule). The business judgment rule is "a strong presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (internal citations and quotations omitted). Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest or gross negligence. *Id.* Further, parties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity. *Id.* (quotation omitted).

27.    LBHI has determined, in the sound exercise of its business judgment, that the Agreement provides the best framework for maximizing the realizable value of the Collateral. The Securities Collateral is illiquid and requires long-term management to enhance recoveries. LBHI and the Debtors are best equipped to fulfill this objective. The Debtors expect the value to increase over an extended period. The Agreement provides the Debtors with the requisite time to recover values.

28.     The Agreement and contemplated transactions are necessary for a more efficient and beneficial management of the Securities Collateral that will yield higher returns than a fire sale of illiquid assets into a depressed market.  The Agreement also will minimize any negative spread as to JPMorgan's Claims by providing for the immediate application of the liquid Cash Collateral and the Cash Payment against such Claims.  While JPMorgan's Claims will be provisionally allowed and satisfied, all rights of all parties are reserved.  The Agreement provides a mechanism for dealing with the dispute of any Claims as well as preserves JPMorgan's rights to defend its Claims.

29.     The Agreement results in the combined benefits of (i) reducing the incurrence of interest on the Claims, (ii) enhancing the potential value of the Securities Collateral, and (iii) subrogating LBHI to JPMorgan's Claims against LBI and other Lehman entities.  Importantly, the transactions contemplated by the Agreement will not prejudice any rights of the SIPA Trustee or any other party to assert claims vis-à-vis the Collateral and LBHI's right to retain such assets.

30.     Approval will not affect the rights of any party-in-interest.  The Agreement is in the best interests of LBHI, the other Debtors and all economic stakeholders and should be approved.

### Relief Under Bankruptcy Rule 6004(h)

31.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  FED. R. BANKR. P. 6004(h).  The Debtors wish to consummate the transactions contemplated under the Agreement as promptly as possible to quickly realize the benefits of exercising control over the management of the Securities Collateral.  Accordingly, the

Debtors respectfully request that any order be effective immediately by providing that the 14-day stay is inapplicable.

## **Notice**

32.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for JPMorgan; (vii) the attorneys for the SIPA Trustee; and (viii) all parties who have requested notice in these chapter 11 cases.  No other or further notice need be provided.


*[the remainder of this page is intentionally left blank]*

33.     No previous request for the relief sought herein has been made by LBHI or the other Debtors to this or any other court.

WHEREFORE LBHI and the other Debtors respectfully request that the Court approve the Agreement and grant the relief requested herein and such other and further relief as is just.

Dated: February 24, 2010
       New York, New York

/s/ Shai Y. Waisman
Harvey R. Miller
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

LEHMAN BROTHERS HOLDINGS INC.
1271 Avenue of the Americas
New York, New York 10020

February [__], 2010

JPMorgan Chase Bank, N.A.
270 Park Avenue
New York, New York  10017

      Re:     Lehman Brothers Holdings Inc., et al. – JPMorgan Chase Bank, N.A., et al.
                Collateral Disposition Agreement

Ladies and Gentlemen:

        This is to confirm our Agreement as to the disposition of certain collateral security that is currently claimed and held by JPMorgan Chase Bank, N.A. ("JPMCB") or its affiliates or subsidiaries or related entities which are signatories hereto (JPMCB and each such entity, a "JPMC Entity" and, collectively, "JPMC") in connection with the claims that JPMC has asserted against Lehman Brothers Holdings Inc. ("LBHI") and its subsidiaries (LBHI, together with all of its subsidiaries, "Lehman"), including Lehman Brothers Inc. ("LBI").  LBHI and certain of its subsidiaries (LBHI, together with such subsidiaries, expressly excluding LBI, the "Debtors") have commenced cases under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  JPMCB has provided LBHI with copies of all proofs of claim filed by JPMC Entities against the Debtors and LBI, and has provided LBHI with certain additional information about the claims previously asserted by JPMC Entities against Lehman.  All of the claims of JPMC against Lehman, including, without limitation, any and all liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, known, unknown, pre-petition and post-petition rights to payment, are hereinafter referred to collectively as the "Claims."  JPMC asserts that LBHI is a guarantor of all of the Claims.  JPMC asserts that the payment and satisfaction of the Claims (including the Excluded Claims, as defined herein) was and is secured by a pledge, mortgage, security interest or other lien (collectively, a "Lien") in, to or against certain property of Lehman (including the proceeds thereof, the "Collateral").  The defined term "Lien" shall include any interest of a JPMC Entity in any securities purported to have been purchased by it in a repurchase agreement, and such securities shall constitute "Collateral" for purposes of this Agreement; provided, however, that all parties reserve their rights as to the proper characterization of such interest and securities.

        JPMC has advised the Debtors that, after giving effect to the application of Collateral (including from the receipt of proceeds received from the disposition of Collateral),

exercise of alleged setoff rights, account activity, account adjustments and other payments and reductions of the Claims before the date hereof (the "Prior Payments"), the current outstanding amount of the Claims is no less than $[7,679,488,724] (as the same shall be adjusted by agreement of JPMCB and LBHI on or before the Effective Date referred to below to reflect agreed corrections, reconciliations and transactions after the date hereof, the "Designated Claims Balance"). Such amount does not include, among others, certain asserted contingent Claims, post-petition Claims and unliquidated Claims. Examples of such Claims include contingent Claims relating to letters of credit issued by a JPMC Entity and post-petition claims for interest to the extent not reflected in the Designated Claims Balance set forth above. JPMC has further advised the Debtors that it is currently holding (a) the cash Collateral, cash proceeds of securities Collateral and money market fund Collateral posted by the Debtors and LBI set forth on Annex A (including any cash proceeds of securities Collateral not reflected in Annex A but received by JPMC before the Effective Date referred to below and not applied, the "Cash Collateral"), and (b) the securities posted by the Debtors and LBI as Collateral, including such securities set forth on Annex B (including the principal, interest and other distributions received by JPMCB set forth on Annex B, but excluding any such securities sold before the Effective Date, the sale proceeds of which are included in the Cash Collateral, the "Securities Collateral"), which include securities that are largely illiquid. For the avoidance of doubt, the principal, interest and other distributions described in clause (b) of the immediately preceding sentence are Securities Collateral and not Cash Collateral. Annex A and Annex B shall be revised by agreement of JPMCB and LBHI on or before the Effective Date to reflect agreed corrections, reconciliations and transactions after the date hereof.

JPMC and the Debtors desire to enter into this Agreement (a) to reduce the incurrence of interest on the secured Claims (with respect to which Lehman expressly reserves all rights concerning the allowability, accuracy or enforceability of such interest calculation as provided by JPMC) by providing for the prompt application of the Cash Collateral to reduce the Designated Claims Balance and (b) to avoid the loss of potential value with respect to the Securities Collateral by providing for the Cash Payment (as defined below) without the need for JPMC to liquidate the Securities Collateral, all subject to and in accordance with the terms and conditions set forth below:

1.    Application of Cash Collateral. Within five business days after the Effective Date (as defined below), each of the relevant JPMC Entities shall apply the Cash Collateral to payment of the Designated Claims Balance on a dollar-for-dollar basis. The amount of the Designated Claims Balance remaining unpaid after such application is $[557,062,474] (as the same shall be adjusted by agreement of JPMCB and LBHI on or before the Effective Date referred to below to reflect agreed corrections, reconciliations and transactions after the date hereof, the "Unpaid Designated Claims Balance"). To the extent that the automatic stay and any other stays entered in the Debtors' chapter 11 cases are applicable to any actions expressly contemplated to be taken by JPMC pursuant to this Agreement, the entry of the Approval Order (as defined below) shall modify such stays to the extent necessary to permit JPMC to take such actions.

2.    Cash Payment. Simultaneously with the application of the Cash Collateral as provided in Paragraph 1, LBHI shall pay JPMCB, on behalf of itself and any other relevant JPMC Entities, the amount of the Unpaid Designated Claims Balance in

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

2

immediately available funds (the "Cash Payment").  JPMCB and such JPMC Entities shall apply the Cash Payment to the Unpaid Designated Claims Balance.  Within 10 business days after the Effective Date, JPMCB shall deliver to LBHI a report specifying in reasonable detail the Claims against which any portions of the Cash Collateral and/or the Cash Payment are applied and the JPMC Entity applying such amounts.

3.     Subrogation and Assignment.  (a) In consideration of (i) the Cash Payment made by LBHI with respect to Claims against LBI and other subsidiaries of LBHI, (ii) the application pursuant to Paragraph 1 of Cash Collateral posted by LBHI to the payment of Claims against LBI and other subsidiaries of LBHI, and (iii) Prior Payments of Collateral posted by LBHI to the payment of Claims against LBI and other subsidiaries of LBHI, simultaneously with the payment of the Cash Payment and as described in more detail in this Agreement:

(1)     LBHI shall be subrogated to the claims of the relevant JPMC Entities against LBI and such other subsidiaries to the full extent of the payments made by LBHI or applied from its property (the "Subrogated Claims") to such Claims; and

(2)     LBHI shall succeed to any and all alleged Liens of the relevant JPMC Entities against all of the Securities Collateral (in the same priorities as held by the relevant JPMC Entities), which Liens shall be assigned and transferred to LBHI by the relevant JPMC Entities and which Securities Collateral shall be assigned and transferred to LBHI by the relevant JPMC Entities.

(b)   The parties agree that the Subrogated Claims shall not include any Claims (the "Excluded Claims") held by JPMC Entities against LBI and other subsidiaries of LBHI that have not been paid by LBHI or applied from LBHI's property, including, without limitation, contingent claims, unliquidated claims and any Claims arising after the date of this Agreement as a result of Recovered Payments (as defined below), post-petition accruals or otherwise. For the avoidance of doubt, the parties further agree that (x) Claims paid pursuant to Paragraph 5(b) shall constitute Subrogated Claims and not Excluded Claims, and (y) Subrogated Claims that are or become unsecured as a result of a Binding Determination shall thereafter constitute Excluded Claims and not Subrogated Claims to the extent of the Debtor Paid Claim Unsecured Amount (as defined below), if any, with respect to such Claims.  For the avoidance of doubt, the Securities Collateral and the Cash Collateral shall not include the cash and securities (and the principal, interest and other distributions on such cash and securities) held in prime brokerage accounts nor the cash provided by the LBI trustee to JPMCB in substitution for certain of such securities (the "LBI Prime Brokerage Collateral"), and this Agreement transfers no interest in or to the LBI Prime Brokerage Collateral to the Debtors.  As between the Debtors and JPMCB, JPMCB shall be entitled to continue to (i) hold the LBI Prime Brokerage Collateral to secure the Excluded Claims and (ii) litigate or enter into any settlement with respect to its disputed security interest (including, without limitation, a settlement that compromises or releases all or a portion of such security interest) without any involvement or consent by or from any of the Debtors (it being understood that Paragraph 6(c) is inapplicable to any such settlement or compromise).  If (A) it is determined by a Binding Determination or any settlement or compromise between

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

3

JPMCB and LBI of the kind described in clause (ii) of the immediately preceding sentence that any of the LBI Prime Brokerage Collateral constitutes Collateral, (B) after such Binding Determination or the performance of such settlement or compromise, as the case may be, any of the LBI Prime Brokerage Collateral which has been so determined to constitute Collateral remains in the possession of JPMCB and has not been applied against the Claims, and (C) the Excluded Claims shall have been paid in full, then JPMCB shall transfer the Lien on such LBI Prime Brokerage Collateral to LBHI and, in connection therewith, transfer such LBI Prime Brokerage Collateral to LBHI.

(c)  Simultaneously with the payment of the Cash Payment, each relevant JPMC Entity shall unconditionally and irrevocably transfer and assign to LBHI all of its right, title, interest in, or to, the Subrogated Claims, including, without limitation, the proofs of claim filed with respect to the Subrogated Claims in the proceeding commenced under the Securities Investor Protection Act of 1970 ("SIPA") as to LBI, Case #08-01420(JMP) SIPA, which proceeding is now pending in the Bankruptcy Court.  The Claims transferred pursuant to this Paragraph 3 shall include all rights to receive all interest, penalties and fees, if any, which may be paid with respect to such Claims, together with voting and all other rights and benefits arising from, under or relating to any of the foregoing, and all cash, securities, instruments and other property which may be paid or issued by LBI or such other subsidiary in satisfaction of such Claims.  The transfer of Claims, Liens and Collateral by each JPMC Entity to LBHI under this Agreement is on an "as is, where is" basis, without recourse, representations or warranties of any kind whatsoever, except that each JPMC Entity represents and warrants that (x) it has the full corporate or other entity power and authority to assign such Claims, Liens and Collateral to LBHI and has not assigned such Claims, Liens and Collateral to any other entity and (y) it has provided to LBHI complete and accurate information as of January 31, 2010 with respect to any principal, interest and other distributions on the Securities Collateral that were received by such JPMC Entity (it being understood that the sole remedy of LBHI and such JPMC Entity in the event that such information is incorrect shall be to promptly adjust the payments and remittances hereunder in accordance with the corrected information).  Notwithstanding the subrogation and assignment of the Subrogated Claims and the transfer of the Securities Collateral and Liens to LBHI as provided in this Agreement, the JPMC Entities shall have rights as if they continued to be secured (or oversecured) creditors as set forth in this Agreement, including, without limitation, Paragraphs 3(b), 5(b) and 6 hereof; provided, that (i) such rights are subject to Lehman's reservation of its right to contest such claims and/or security as provided in this Agreement, and (ii) each JPMC Entity hereby waives, effective on the Effective Date, any right of consent that it may have, pursuant to any agreement by which it acquired any Lien or other interest in the Securities Collateral, with respect to any sale, disposition, disaggregation, modification or like transaction by LBHI, any other Debtor or any entity controlled by a Debtor with respect to the Securities Collateral, any assets underlying the Securities Collateral or any issuer of the Securities Collateral.

(d)  As between the Debtors and JPMC, each JPMC Entity shall be entitled to retain each Excluded Claim (including any Claim which becomes an Excluded Claim) and all distributions and recoveries received thereon, including any recoveries on

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

4

the Excluded Claims derived from the LBI Prime Brokerage Collateral. With respect to any unsecured Excluded Claims held by a JPMC Entity against a Lehman entity that have not been disallowed by a Binding Determination and are guaranteed by LBHI, such JPMC Entity shall be entitled to receive payment in full of such unsecured Excluded Claims against such Lehman entity prior to any receipt or retention by LBHI of any recovery on (i) any unsecured Subrogated Claims against such Lehman entity acquired from such JPMC Entity or (ii) any unsecured reimbursement right or similar claim against such Lehman entity arising in favor of LBHI as a result of LBHI's payment to such JPMC Entity of any Subrogated Claims against such Lehman entity.

(e)  For the avoidance of doubt, the parties agree that all principal, interest, distributions on and other proceeds of the Collateral that have been received by any Debtor or non-Debtor entity controlled by a Debtor prior to the payment of the Cash Payment as provided in Paragraph 2 shall be retained by such Debtor or non-Debtor entity controlled by a Debtor free and clear of all Liens in favor of JPMC. In addition, if any principal, interest or other distributions on the Securities Collateral is received by any JPMC Entity after the payment of the Cash Payment as provided in Paragraph 2, such JPMC Entity shall promptly remit such amount to the relevant Debtor or non-Debtor entity controlled by a Debtor.

(f)  In the event that, notwithstanding any of the other provisions of this Agreement, any Debtor receives any payment, distribution or other property which, in accordance with the provisions of this Agreement, should have been paid or transferred to a JPMC Entity, such Debtor shall hold such payment, distribution or other property in trust for such JPMC Entity and promptly pay or transfer such payment, distribution or other property to such JPMC Entity. In the event that, notwithstanding any of the other provisions of this Agreement, any JPMC Entity receives any payment, distribution or other property which, in accordance with the provisions of this Agreement, should have been paid or transferred to a Debtor, such JPMC Entity shall hold such payment, distribution or other property in trust for such Debtor and promptly pay or transfer such payment, distribution or other property to such Debtor.

(g)  LBHI agrees to comply with the Uniform Commercial Code and other similar commercial laws, to the extent applicable, in disposing of the Securities Collateral.

4.  <u>Further Assurances</u>.  To the extent that any Securities Collateral, Lien, Subrogated Claims or other interest related thereto intended to be transferred is not validly transferred to LBHI simultaneously with the payment of the Cash Payment as described in Paragraph 3(a), each relevant JPMC Entity shall cooperate with LBHI, at LBHI's expense, to take all reasonable acts requested by LBHI to effectuate the transfer of the interest of such JPMC Entity in the Securities Collateral, the delivery of any certificated securities constituting Securities Collateral, and the assignment of the interest of such JPMC Entity in the Subrogated Claims, the Liens against the Securities Collateral and any other rights transferred pursuant to Paragraph 3 in accordance with applicable law, including, without limitation, the execution and delivery of all appropriate stock and bond powers and other evidences of transfer. Each relevant JPMC Entity also agrees to

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

5

deliver to LBHI immediately after the Effective Date, at LBHI's expense, appropriate notifications to the trustees of the Securities Collateral known as Fenway, Spruce, Verano, Kingfisher, RACERS, Pine and SASCO informing such trustees of the transfer effected pursuant to this Agreement, and LBHI is hereby authorized to deliver such notifications to such trustees.

        5.      <u>Provisional Allowance of Claims; Reallocation of Payments</u>.  (a) The Claims shall, to the extent of the amounts to be applied and paid in accordance with Paragraphs 1 and 2, be deemed to be provisionally allowed secured Claims of the relevant JPMC Entities against each of the Debtors against which such claims have been asserted so as to facilitate the application of the Cash Collateral and the Cash Payment to such Claims; provided, however, that nothing in this Agreement shall constitute or be deemed any waiver of any rights, remedies, claims or causes of action on the part of any Lehman entity with respect to, and each Lehman entity expressly reserves, any and all rights and remedies it may have under applicable law, contract or otherwise, including, without limitation, rights and remedies in connection with any such provisionally allowed secured or other Claim (including, without limitation, Excluded Claims) of each such JPMC Entity and any alleged guarantee thereof or security therefor, including, without limitation, the right to contest the validity and enforceability of any such provisionally allowed secured or other Claim and/or to avoid or contest such Claims, any alleged guarantee thereof and any alleged security therefor, including, without limitation, any property alleged by JPMC to constitute Collateral or a Lien on or ownership of any Lehman assets.  For the avoidance of doubt, the parties agree that the rights and remedies reserved by each Lehman entity include, without limitation, claims or potential claims that the Collateral suffered a diminution in value as a result of conduct of any JPMC Entity (other than any diminution in value arising from the entry into this Agreement and the performance of the terms hereof).  The parties hereto further agree that it is the intent of such parties that the provisions of this Agreement shall not expand or reduce the rights and entitlements of any such party with respect to the Collateral and Liens beyond those rights and entitlements which such party would have if this Agreement had not been entered into.

        (b)  Any Collateral, Prior Payment or Cash Payment, or any exercise of alleged setoff rights, account activity, account adjustments or other payments and reductions of the Claims on or after the date hereof (any of the foregoing including, without limitation, a Debtor Recovered Payment, "<u>Applied Property</u>") (i) that has been applied to a Claim which is thereafter disallowed, avoided, invalidated or deemed unsecured pursuant to a Binding Determination, (ii) the application of which to a Claim has been avoided or invalidated pursuant to a Binding Determination, or (iii) that, in lieu of being applied to the particular Claim to which it has been applied, JPMCB determines should be applied instead to another unpaid Claim, may be reallocated and applied by a JPMC Entity to an unpaid Claim (including, without limitation, an Excluded Claim) that has not been disallowed, avoided or invalidated; provided, however, that such Applied Property may be reallocated and applied only to an unpaid Claim that would have been secured by such Applied Property (or, in the case of a Debtor Recovered Payment, would have been secured by or eligible to be validly paid from the Collateral, setoff right, account activity, account adjustment or other payment or reduction of Claims giving rise

to such Debtor Recovered Payment) had it not been used to pay such disallowed, avoided, invalidated or unsecured Claim. It is understood and agreed that upon any such reallocation and application JPMC shall promptly provide LBHI with written notice describing such reallocation and application in reasonable detail. Each JPMC Entity expressly reserves any and all rights and remedies it may have under applicable law, agreements or otherwise to defend or otherwise resist any claims asserted and/or proceedings initiated by or on behalf of Lehman to disallow, avoid or otherwise invalidate any Claims or Liens or to seek any other relief against JPMC.

       6.    <u>Post-Effective Date Adjustments</u>. (a) The parties agree that amounts under each definition referred to below shall be calculated and applied separately with respect to each Debtor, without aggregation in any way as among the Debtors unless otherwise provided by a Binding Determination (it being understood that, in so calculating and applying such definitions, a Claim for which more than one Debtor is liable is to be treated as a Claim against each such Debtor in the full amount thereof without estimation or reduction on account of any payment not theretofore received); provided, however, that a Binding Determination with respect to a Claim against a particular Debtor shall not affect the rights of a JPMC Entity to reallocate and apply any Collateral or Cash Payment to a Claim against another Debtor in accordance with Paragraph 5(b):

       "<u>Allowed Unpaid Secured Claims</u>" means all unpaid Claims (including, without limitation, any Excluded Claims) asserted by each JPMC Entity that are determined by a Binding Determination to be allowed secured claims against any Debtor. The amount of any Allowed Unpaid Secured Claims shall be determined after giving effect to any payment of such Claims received by such JPMC Entity from all sources permitted to be so applied by a Binding Determination (including any reallocation and application pursuant to Paragraph 5(b) above, but excluding any payment pursuant to Paragraph 6(b) below) and any reversal or rescission of any payments or recoveries on such Claims (including, without limitation, any such reversal or rescission resulting from a JPMC Entity's payment, repayment or other disgorgement, or requirement to pay, repay or otherwise disgorge, any Debtor Recovered Payments or Other Recovered Payment). Such Claim's secured status for each JPMC Entity shall be determined as if such JPMC Entity had (i) retained its Lien, if any, against all of the Transferred Collateral (rather than transferring or releasing such Lien pursuant to this Agreement), and (ii) realized at the time of the Cash Payment proceeds from the sale of the Securities Collateral equal in amount to the portion of the Cash Payment received by such JPMC Entity, it being understood that the transfer of the Cash Payment does not increase the value of the Collateral for purposes of determining which claims are allowed secured claims.

       "<u>Binding Determination</u>" means (i) a final and non-appealable order of a court of competent jurisdiction, (ii) a written settlement agreement that has become effective to which (x) each of the JPMC Entities holding a Claim

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

7

purported to be affected thereby is a party and (y) in the case of such a Claim asserted against one or more Debtors, each such Debtor is a party or (iii) in the case of allowance of a Claim with respect to which an objection has not been filed, the expiration of time to object to the proof of claim (or equivalent) in which such Claim is asserted.

"<u>Debtor Paid Claim</u>" means any Claim that has been paid through application of Cash Collateral posted by a Debtor, application of the Cash Payment, a Prior Payment from a Debtor or from its property or any other payment by a Debtor or from its property.

"<u>Debtor Paid Claim Disallowed Amount</u>" means the amount of any Debtor Paid Claim that is determined by a Binding Determination to have been invalid at the time of its payment because such Claim was then subject to avoidance, disallowance, release, dismissal or reduction. For the avoidance of doubt, a Debtor Paid Claim shall be deemed to have been subject to such a reduction to any extent that a Binding Determination determines that the reduction in the amount of such Claim as a result of the realization against Collateral held in respect thereof should have been greater than the reduction that resulted from the application of the actual proceeds of the realization against such Collateral.

"<u>Debtor Paid Claim Unsecured Amount</u>" means the amount of any Debtor Paid Claim that is determined by a Binding Determination to have been an unsecured claim at the time of its payment because a Lien securing such Claim was then subject to avoidance, disallowance, release, dismissal, reduction or limitation (but only to the extent that there did not then exist other Collateral of sufficient value subject to a valid Lien in favor of the relevant JPMC Entity securing such Claim).

"<u>Disgorgement Amount</u>" means the aggregate amount of (i) any Debtor Paid Claim Disallowed Amounts and any Debtor Paid Claim Unsecured Amounts, less any portions thereof that have been reallocated and applied pursuant to Paragraph 5(b), and (ii) any Debtor Recovered Payments not theretofore paid, repaid or otherwise disgorged to a Debtor and not reallocated and applied pursuant to Paragraph 5(b) above.

"<u>Recovered Payment</u>" means any Prior Payment or any other payment of a Claim (including, without limitation, any payment pursuant to the provisions of this Agreement) that, in any case, has been avoided, rescinded, invalidated or recovered pursuant to a Binding Determination, except to the extent that such Binding Determination gave rise to a Debtor Paid Claim Disallowed Amount or Debtor Paid Claim Unsecured Amount with respect to the same underlying Claim (or portion thereof). A "<u>Debtor Recovered Payment</u>" is a Recovered Payment payable or repayable by JPMC to a Debtor; an "<u>Other Recovered Payment</u>" is a Recovered Payment paid, repaid or otherwise disgorged (or required to be paid,

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

8

repaid or otherwise disgorged) by JPMC to an entity (including LBI) that is not a Debtor.

"Transferred Collateral" means (i) the Securities Collateral, (ii) all distributions on and other proceeds of the Collateral that have been or may be received by Lehman entities or a servicer, trustee, agent or other person acting in a similar capacity with respect to a security or instrument constituting Collateral and not remitted to any JPMC Entity, or (iii) all distributions and other proceeds of the Collateral received by a JPMC Entity and remitted to a Lehman entity, including, without limitation, any amounts remitted by JPMC Entities pursuant to Paragraph 3(e) and (f) above.

(b)  The Debtors shall condition their requests for relief with respect to any and all matters that may give rise to a Recovered Payment, Debtor Paid Claim Disallowed Amount or Debtor Paid Claim Unsecured Amount to provide that (i) no JPMC Entity shall be required to pay, repay or otherwise disgorge such Recovered Payment, Debtor Paid Claim Disallowed Amount or Debtor Paid Claim Unsecured Amount to the Debtors, except at such time and to such extent as may be required by the following provisions of this Paragraph 6(b), and (ii) Bankruptcy Code §§ 502(d), 541 and 542 (and any other provisions that would otherwise require the turnover of such amounts or impose adverse consequences for failing to turnover such amounts) shall not apply with respect to any failure on the part of any JPMC Entity to pay, repay or otherwise disgorge a Recovered Payment, Debtor Paid Claim Disallowed Amount or Debtor Paid Claim Unsecured Amount to the Debtors before the date, if any, that JPMC is required to do so pursuant to the following provisions of this Paragraph 6(b).  In the event that any court order or judgment is inconsistent with the foregoing, the Debtors shall not enforce it to the extent of such inconsistency, and will cooperate with any efforts by the affected JPMC Entities to obtain a modification or correction to remove the inconsistency. Notwithstanding anything to the contrary in the foregoing, the parties hereto agree that neither a JPMC Entity nor a Lehman entity is waiving any right to receive pre-judgment interest that may be available under applicable law. Within five business days after all Binding Determinations necessary to make a final determination of the amount of all Allowed Unpaid Secured Claims and Disgorgement Amounts with respect to any Debtor have occurred, which shall occur only after resolution by Binding Determination of all asserted and potential actions, proceedings and challenges with respect to the Claims, the Collateral and payments on the Claims (or, if earlier with respect to any such potential actions, proceedings and challenges, the expiration of all statutes of limitation with respect thereto) with respect to such Debtor:

(1)  JPMCB, on behalf of the relevant JPMC Entities, shall pay to such Debtor (or its successor) the amount (the "JPMC Adjustment Amount"), if any, by which the Disgorgement Amounts with respect to such Debtor exceed the Allowed Unpaid Secured Claims with respect to such Debtor; and

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

9

(2) such Debtor shall pay to JPMCB, on behalf of the relevant JPMC Entities, the amount (the "Debtor Adjustment Amount"), if any, by which the Allowed Unpaid Secured Claims with respect to such Debtor exceed the Disgorgement Amounts with respect to such Debtor.

(x) Simultaneously with the effectiveness of any Binding Determination that results in a Disgorgement Amount, LBHI shall transfer to the relevant JPMC Entity the Subrogated Claim (or portion thereof) that gave rise to such Disgorgement Amount, except to the extent that such Subrogated Claim (or portion thereof) has been disallowed by a Binding Determination, and (y) upon the payment of any JPMC Adjustment Amount or Debtor Adjustment Amount pursuant to this Paragraph 6(b), LBHI shall pay (in the case of non-cash property, in kind) to the relevant JPMC Entity any distribution received by LBHI with respect to such Subrogated Claim (or portion thereof). LBHI shall not, prior to the transfer to the relevant JPMC Entity of a Subrogated Claim pursuant to the immediately preceding sentence, act or fail to act with respect to such Subrogated Claim in a manner less favorable (from the perspective of a holder of such Subrogated Claim) than LBHI would act or fail to act with respect to similar claims in which LBHI has a continuing economic interest.

If, at any time before JPMCB pays the JPMC Adjustment Amount on behalf of a JPMC Entity to a Debtor, such JPMC Entity has been determined to owe a Disgorgement Amount to such Debtor, then such JPMC Entity shall deposit (a "JPMC Deposit") such Disgorgement Amount in a segregated interest-earning cash collateral account with JPMCB (or if JPMCB is not then a Qualified Bank (as defined below), another Qualified Bank) to secure its obligations to pay the JPMC Adjustment Amount (and, if such JPMC Entity is not JPMCB, such JPMC Entity's obligations to JPMCB to reimburse JPMCB for any JPMC Adjustment Amount paid under this Paragraph 6(b) on its behalf). All amounts in such account shall remain available for reallocation and application pursuant to Paragraph 5(b) above. Any portion of such deposit remaining after JPMCB has paid such JPMC Adjustment Amount shall be promptly remitted by JPMCB to such JPMC Entity. The applicable Debtor and JPMC Entity shall be entitled to the interest earned in such account proportionally to the principal amount payable to each of them.

If, at any time before a Debtor pays its Debtor Adjustment Amount to one or more JPMC Entities, such Debtor is to make a general distribution of its assets under a chapter 11 plan or otherwise, then before it makes such distribution such Debtor (or its successor) shall deposit (a "Debtor Deposit") for each such JPMC Entity in a segregated interest-earning cash collateral account with a Qualified Bank (as defined below), to secure its obligations to pay such Debtor Adjustment Amount to such JPMC Entity, an amount agreed to in good faith by JPMCB and such Debtor as representing the maximum Debtor Adjustment Amount potentially payable by such Debtor to such JPMC Entity based on the then known facts. If JPMCB and such Debtor fail to reach agreement on the amount of such Debtor Deposit, the amount of the Debtor Deposit shall be established by a Binding Determination, which shall calculate the maximum amount that such Debtor could be required to pay to such JPMC Entity. Any portion of the Debtor Deposit and interest thereon remaining after the obligations of the relevant Debtor have been satisfied

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

10

shall be promptly remitted to such Debtor (or its successor), to an account or accounts as directed by such Debtor. The relevant Debtor and JPMC Entity shall be entitled to the interest earned in such account proportionally to the principal amount payable to each of them. A "Qualified Bank" is a nationally chartered bank unaffiliated with Lehman whose capital and surplus exceed $10 billion and whose rating with respect to its long term unsecured unsubordinated indebtedness is at least A by Standard & Poor's Ratings Group (or its successor) and A2 by Moody's Investors Service, Inc. (or its successor) or any other bank that the parties mutually agree upon.

To the extent that the amount of a JPMC Deposit or Debtor Deposit is materially in excess of the maximum potential amount of the obligations secured thereby (in the case of a JPMC Deposit, after taking into consideration the maximum amount of such JPMC Deposit as may be required for reallocation and application in accordance with Paragraph 5(b) above) based on the then known facts, then JPMCB or the relevant Debtor, as the case may be, may seek the return of the excess amount of the deposit by agreement with the other or by obtaining a Binding Determination as to such amount.

(c) If any entity (including a Debtor) commences any objection, counterclaim, crossclaim or other action against LBHI in a court or other tribunal with respect to any Subrogated Claim, Lien or Collateral (including, without limitation, the valuation thereof) that could result in a Debtor Paid Claim Disallowed Amount, a Debtor Paid Claim Unsecured Amount, a Recovered Payment or a reduction in the amount of an Allowed Unpaid Secured Claim (any such objection, counterclaim, crossclaim or action, an "Action") and serves notice of such Action on LBHI, LBHI shall promptly notify JPMCB of such Action in writing (the "Action Notice"), and in any event provide the Action Notice within 10 days of being served with notice of such Action. JPMCB or any JPMC Entity which would be liable for any JPMC Adjustment Amount payable under Paragraph 6(b) that could increase as a result of the Action, or would be the payee of a Debtor Adjustment Amount payable under Paragraph 6(b) that could be reduced as a result of the Action (the "Relevant JPMC Entity" and, if it elects to assume the defense of such Action, the "Defending Entity") may, at its election and at its own expense and without limiting its rights or obligations under Paragraph 6(b), participate in or assume the defense of such Action with counsel selected by it, by providing LBHI with written notice of such decision within 30 days of JPMCB's receipt of the Action Notice. Notwithstanding anything to the contrary in this Agreement, if LBHI fails to provide JPMCB with the Action Notice within 10 days of being served with notice of such Action and as a result of such failure the Relevant JMPC Entity has fewer than 14 days to file an answer or response in such Action and LBHI has not filed an answer or response, which adequately protects the interests of such Relevant JPMC Entity to the extent reasonably possible through such a pleading, then the JPMC Adjustment Amount payable under Paragraph 6(b) shall not be increased, and the Debtor Adjustment Amount payable under Paragraph 6(b) shall not be reduced, with respect to the results of such Action (and the calculation pursuant to Paragraph 6(b) of the Debtor Adjustment Amount and/or the JPMC Adjustment Amount, as the case may be, shall be adjusted accordingly). Notwithstanding anything to the contrary in this Paragraph 6(c), prior to any assumption of an Action by the Relevant JMPC Entity, LBHI maintains the right to file an answer or

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

11

response in such Action if a prompt answer or response is necessary to preserve any right of LBHI and/or the Relevant JMPC Entity in such Action.

If the Defending Entity assumes the defense of the Action and if the Action has not been commenced by a Debtor or an entity whose economic interests with respect to the Action are aligned with LBHI, (i) subject to the execution and the terms of a mutually satisfactory joint defense and confidentiality agreement, the Defending Entity shall consult with LBHI, at LBHI's request, regarding the Action on an ongoing basis; provided that the Defending Entity shall have the right to determine all aspects of the defense of the Action (except as contemplated in clause (v) of this sentence), (ii) LBHI may participate in such defense at its own expense (but not in any way that conflicts with or otherwise adversely affects the defense by the Defending Entity (except as contemplated in clause (v) of this sentence)) and, in any event, except as contemplated in clause (v) of this sentence, LBHI shall cooperate, at the request and expense of the Defending Entity, with the Defending Entity in all respects reasonably required or desirable (including, without limitation, the execution and filing of pleadings) to enable the Defending Entity to assume and prosecute the defense of the Action, (iii) subject to the execution and the terms of a mutually satisfactory joint defense and confidentiality agreement, the Defending Entity shall provide LBHI on a confidential basis with drafts of all notices, pleadings, and other papers to be filed or served in such Action by JPMC (and allow LBHI a reasonable opportunity to comment on such drafts before filing or serving such drafts), (iv) the Defending Entity shall promptly provide copies to LBHI of all notices, pleadings, and other papers filed or served in such Action, and (v) LBHI shall maintain the right to conduct the defense of any aspect of such Action that could have an adverse effect on LBHI, other than an adverse effect that gives rise to a corresponding increase in the JPMC Adjustment Amount payable under Paragraph 6(b) or corresponding reduction in the Debtor Adjustment Amount payable under Paragraph 6(b). In the event that clause (v) of the immediately preceding sentence is applicable with respect to any Action, the Defending Entity and LBHI shall cooperate in good faith and coordinate their actions to preserve and protect each other's interests to the full extent reasonably possible except to the extent inconsistent with their respective interests.

If the Relevant JPMC Entity does not elect to assume the defense of the Action as described above, (i) subject to the execution and the terms of a mutually satisfactory joint defense and confidentiality agreement, LBHI shall consult with the Relevant JPMC Entity, at the Relevant JPMC Entity's request, regarding the Action on an ongoing basis; provided that LBHI shall have the right to determine all aspects of the defense of the Action, (ii) the Relevant JPMC Entity may participate in such defense at its own expense (but not in any way that conflicts with or otherwise adversely affects the defense by LBHI) and, in any event, the Relevant JPMC Entity shall cooperate, at the request and expense of LBHI, with LBHI in all respects reasonably required or desirable (including, without limitation, the execution and filing of pleadings) to enable LBHI to assume and prosecute the defense of the Action, (iii) subject to the execution and the terms of a mutually satisfactory joint defense and confidentiality agreement, LBHI shall provide the Relevant JPMC Entity on a confidential basis with drafts of all notices, pleadings, and other papers to be filed or served in such Action by LBHI (and allow the Relevant JPMC Entity a reasonable opportunity to comment on such drafts before filing

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

12

or serving such drafts), and (iv) LBHI shall promptly provide copies to the Relevant JPMC Entity of all notices, pleadings, and other papers filed or served in such Action.

Nothwithstanding anything to the contrary in this Agreement:

(i)   LBHI shall not settle or adjust, or enter into any other agreement, stipulation or other arrangement with respect to the disposition of any Action, any issues therein, any matter that would constitute an Action upon the commencement of an objection, counterclaim, crossclaim or action with respect thereto, or any other matter that could affect the amount of a JPMC Adjustment Amount or Debtor Adjustment Amount (any of the foregoing, a "Settlement") without the consent of the Relevant JPMC Entity (which may be withheld in the sole discretion of the Relevant JPMC Entity) if such Settlement could result in an increase in a JPMC Adjustment Amount payable under Paragraph 6(b) or a reduction in a Debtor Adjustment Amount payable under Paragraph 6(b);

(ii)  the JPMC Adjustment Amount payable under Paragraph 6(b) shall not be increased, and the Debtor Adjustment Amount payable under Paragraph 6(b) shall not be reduced, as a result of any Settlement in violation of immediately preceding clause (i) (and the calculation pursuant to Paragraph 6(b) of the Debtor Adjustment Amount and/or the JPMC Adjustment Amount, as the case may be, shall be adjusted accordingly);

(iii) the Relevant JPMC Entity shall not enter into any Settlement without the consent of LBHI (which may be withheld in the sole discretion of LBHI) if such Settlement could result in a reduction in a JPMC Adjustment Amount payable under Paragraph 6(b) or an increase in a Debtor Adjustment Amount payable under Paragraph 6(b); and

(iv)  the JPMC Adjustment Amount payable under Paragraph 6(b) shall not be reduced, and the Debtor Adjustment Amount payable under Paragraph 6(b) shall not be increased, as a result of any Settlement in violation of the immediately preceding clause (iii) (and the calculation pursuant to Paragraph 6(b) of the Debtor Adjustment Amount and/or the JPMC Adjustment Amount, as the case may be, shall be adjusted accordingly).

If the Relevant JPMC Entity elects to assume the defense of an Action in accordance with Paragraph 6(c) above, the Relevant JPMC Entity may enter into a Settlement of such Action without the consent of LBHI unless such Settlement could have an adverse effect on LBHI (other than an adverse effect that gives rise to a corresponding increase in the JPMC Adjustment Amount payable under Paragraph 6(b) or corresponding reduction in the Debtor Adjustment Amount payable under Paragraph 6(b)), in which case LBHI's consent is required and may be withheld in LBHI's sole discretion; provided that, if requested by the Relevant JPMC Entity, LBHI shall consent to any such Settlement (which consent shall not be unreasonably withheld or delayed) if such Settlement does not have an adverse effect on LBHI (other than an adverse effect that gives rise to a corresponding increase in the JPMC Adjustment Amount payable

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

13

under Paragraph 6(b) or corresponding reduction in the Debtor Adjustment Amount payable under Paragraph 6(b)). Any Settlement that could give rise to an increase in the Debtor Adjustment Amount payable under Paragraph 6(b) or a reduction in the JPMC Adjustment Amount payable under Paragraph 6(b) is deemed to have an adverse effect on LBHI.

If the Relevant JPMC Entity does not elect to assume the defense of an Action in accordance with Paragraph 6(c) above, LBHI may enter into a Settlement of such Action without the consent of the Relevant JPMC Entity unless such Settlement could have an adverse effect on the Relevant JPMC Entity (other than an adverse effect that gives rise to a corresponding increase in the Debtor Adjustment Amount payable under Paragraph 6(b) or corresponding reduction in JPMC Adjustment Amount payable under Paragraph 6(b)), in which case the Relevant JPMC Entity's consent is required and may be withheld in the Relevant JPMC Entity's sole discretion; provided that, if requested by LBHI, the Relevant JPMC Entity shall consent to any such Settlement (which consent shall not be unreasonably withheld or delayed) if such Settlement has no adverse effect on the Relevant JPMC Entity (other than an adverse effect that gives rise to a corresponding increase in the Debtor Adjustment Amount payable under Paragraph 6(b) or corresponding reduction in the JPMC Adjustment Amount payable under Paragraph 6(b)). Any Settlement that could give rise to a reduction in the Debtor Adjustment Amount payable under Paragraph 6(b) or increase in the JPMC Adjustment Amount payable under Paragraph 6(b) is deemed to have an adverse effect on the Relevant JPMC Entity.

7. <u>Value of Collateral; Information as to Securities Collateral</u>. (a) At such time as it may become appropriate in the enforcement and performance of the terms and provisions of this Agreement (including, without limitation, Paragraph 6 above), the parties shall agree upon the means, effective date and methodology to determine the value of the Collateral or any relevant part thereof. If the parties are unable to agree upon such means, effective date and methodology, then the Bankruptcy Court shall determine any such valuation issues.

(b) JPMCB may request from the Debtors on a quarterly basis (or on a more frequent, reasonable basis with respect to Securities Collateral that is the subject of an active dispute), and the Debtors shall promptly provide to JPMCB the following with respect to the loans, participations and other property (the "<u>Underlying Assets</u>") which backed securities and instruments constituting Securities Collateral as of the Effective Date (the "<u>Transferred Securities</u>"): (1) with respect to the Transferred Securities known as Fenway, Spruce and Verano and the real estate assets in RACERS, (i) the principal, interest and other distributions received with respect to such Transferred Securities and Underlying Assets, (ii) a schedule of sales or other dispositions of such Transferred Securities and the Underlying Assets, including any amount by which the proceeds realized differed from the notional balance of the asset disposed of, and (iii) a summary of any material actions taken by the Debtors with respect to such Transferred Securities and Underlying Assets (including, without limitation, any settlements, restructurings, disaggregations or recapitalizations of such Transferred Securities and Underlying Assets), which summary shall include relevant legal documents, identification of other

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

14

interests of Lehman entities (or their successors) in the entities or financial structures related to such Transferred Securities and Underlying Assets, and, in the case of a disaggregation of any of such Transferred Security, an identification of the Underlying Assets which backed such Transferred Security prior to its disaggregation, and (2) with respect to the other Transferred Securities and Underlying Assets, JPMCB and the Debtors agree to work together in good faith to develop and refine reporting forms and procedures to enable the information described in clauses (i)-(iii) of this Paragraph 7(b) to be provided to JPMCB, to the full extent such information is available to the Debtors and applicable to such other Transferred Securities and Underlying Assets, while imposing as small a burden on the Debtors as reasonably possible. The parties agree that, from and after the Effective Date, satisfaction by the Debtors of the reporting obligations set forth in this Paragraph 7(b) with respect to the Transferred Securities known as Kingfisher shall satisfy any reporting obligation owed to any JPMC Entity by any Debtor under any other agreement with any JPMC Entity with respect to such Transferred Securities or the Underlying Assets thereof.

(c) Each JPMC Entity agrees to use the information (the "Information") furnished to it pursuant to Paragraph 7(b) solely for purposes related to valuation of the Securities Collateral and to maintain the confidentiality of the Information, except that the Information may be disclosed by such JPMC Entity (i) on a need-to-know basis, to another JPMC Entity and to its and their directors, officers, investment advisors, employees and agents (including accountants, attorneys and other advisors); provided, that, any Information concerning the Transferred Securities known as Kingfisher and/or the Underlying Assets thereof may be disclosed only to U.S.-based, U.K.-based or Hong Kong-based directors, officers, investment advisors, employees and agents (including accountants, attorneys and other advisors) of a U.S.-based, U.K.-based or Hong Kong-based JMPC Entity (it being understood that the persons to whom such disclosure is made under this clause (i) will be informed of the confidential nature of such Information and instructed to keep such Information confidential and that JPMC shall be liable for any breach of this Paragraph 7(c) (and any unauthorized disclosure of Information) by such persons), (ii) to the extent requested by any regulatory authority with responsibility for the activities of any JPMC Entity or its subsidiaries, parents and affiliates, (iii) to the extent required by applicable laws or regulations or by a subpoena or similar legal process (provided, however, that in the case of this clause (iii), any JPMC Entity that is subject to such requirement or subpoena shall provide LBHI with prompt written notice of such requirement or subpoena so that LBHI may seek a protective order or other appropriate remedy and JPMC shall fully cooperate with LBHI's efforts to obtain the same, at LBHI's sole expense), (iv) in connection with the exercise or enforcement of any rights or remedies under this Agreement, the defense of any Action, or any matter contemplated by Paragraph 7(a) above relating to this Agreement or the Claims, whether involving a JPMC Entity or its directors, officers, investment advisors, employees and agents, including accountants, attorneys and other advisors (provided, however, that (A) in the case of pleadings, petitions, motions, objections, responses, or similar filings in a legal proceeding or arbitration or oral argument in connection therewith, the relevant JPMC Entity shall provide LBHI with prompt written notice of the filing thereof or the calendaring of such oral argument so that LBHI may seek a protective order or other appropriate remedy and JPMC shall fully cooperate with LBHI's efforts to obtain the

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

15

same, at LBHI's sole expense and (B) such disclosure other than in filings shall be limited to JPMC's directors, officers, investment advisors, employees and agents (including accountants, attorneys and other advisors) who, if the Information is related to the Transferred Securities known as Kingfisher and/or the Underlying Assets thereof, shall be U.S.-based, U.K.-based or Hong Kong-based directors, officers, investment advisors, employees and agents of a U.S.-based, U.K.-based or Hong Kong-based JMPC Entity), (v) to the extent such Information (x) becomes publicly available other than as a result of a breach of this Paragraph 7(c) or (y) becomes available to such JPMC Entity on a nonconfidential basis from a source other than the Debtors that was not known by JPMC to be prohibited from disclosing such Information to JPMC by a contractual, legal or fiduciary obligation, or (vi) with LBHI's consent (which may be withheld in LBHI's sole discretion).

8.    Effective Date; Payments.  (a)  This Agreement shall become effective at such time (the "Effective Date") as it has been executed and delivered by all of the parties hereto and it has been approved by an order of the Bankruptcy Court (the "Approval Order"), in form and substance satisfactory to JPMC and the Debtors, which order shall have become final and non-appealable. JPMCB and LBHI may, in their sole discretion, mutually agree that an earlier date (but, in any event, not before the entry of the Approval Order or during the pendency of a stay of the Approval Order) shall be the Effective Date.  The Debtors shall promptly request approval of the Agreement by the Bankruptcy Court, and shall reasonably endeavor to obtain such approval.  Each JPMC Entity shall cooperate with the Debtors in seeking such approval. All payments under this Agreement shall be made by wire transfer of immediately available funds to an account designated by the relevant Debtor, in the case of a payment to any of the Debtors, or by JPMCB or the relevant JPMC Entity, in the case of a payment to any JPMC Entity.

(b)  The parties agree that they shall request that the Approval Order contain the following language (the defined terms used in such language shall have the same meaning ascribed to such terms in this Agreement):

"Nothing in the Agreement is intended, and the Agreement shall not be construed, to impair any right, remedy or obligation of LBI; and the rights and remedies of LBI against the JPMC Entities and the Debtors and the rights and remedies of the JPMC Entities and the Debtors against LBI shall be not be prejudiced or otherwise impaired in any way by the Agreement.  Without limiting the generality of the foregoing, and notwithstanding any other provisions of the Agreement, LBI shall not be bound (absent further court order) by (i) any determination among the JPMC Entities and the Debtors of the value of any Collateral or any methodology for valuing Collateral established pursuant to the Agreement, or (ii) any determination among the JPMC Entities and the Debtors of the secured status of any Claim pursuant to the Agreement.  LBI retains any and all rights it may have in the Collateral transferred pursuant to the Agreement, and retains any and all rights it may have under any agreement pursuant to which any JPMC Entity acquired any Lien or other interest in any Collateral.  In addition, the provisions of the Agreement shall not expand or reduce any rights and entitlements that LBI may otherwise have against any Debtor or any JPMC Entity with respect to the

Collateral or any rights and entitlements that any Debtor or any JPMC Entity may otherwise have against LBI with respect to the Collateral. The Agreement and the entry by the Debtors and the JPMC Entities into the Agreement shall not create any liabilities or causes of action in favor of LBI against any Debtor or any JPMC Entity or in favor of any Debtor or JPMC Entity against LBI."

9.     <u>Full Power and Authority</u>.  Each of the undersigned parties represents that it has full power and authority to enter into this Agreement.

10.     <u>Entire Agreement; No Effect if Not Approved</u>.  This Agreement constitutes the entire Agreement of the undersigned parties and supersedes any and all prior agreements or understandings among such parties with respect to the subject matter of this Agreement.  If this Agreement is not approved by the Bankruptcy Court or the Effective Date does not occur as contemplated by Paragraph 8, this Agreement shall be deemed null and void and of no force and effect and shall not be referenced by any party for any purpose whatsoever in any proceeding or otherwise, except for this Paragraph 10.

11.     <u>Counterparts; Governing Law; Headings</u>.  This Agreement may be executed in counterparts and shall be governed by the laws of the State of New York.  Paragraph and other headings are for purposes of convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

12.     <u>Jurisdiction</u>.  Each of the undersigned parties submits to the exclusive jurisdiction of the Bankruptcy Court as to any dispute arising out of or under this Agreement.  The Bankruptcy Court shall have and retain exclusive jurisdiction to enforce the terms of this Agreement and to determine any claims or disputes which may arise or result from, or be connected with, this Agreement, including, without limitation, any claim of breach or default hereunder.

13.     <u>Amendments</u>.  Prior to the issuance of the Approval Order and after confirmation of the LBHI chapter 11 plan, this Agreement may be changed, amended, modified, or altered only in a writing executed by each of the parties hereto.  After the issuance of the Approval Order and prior to the confirmation of the LBHI chapter 11 plan, this Agreement may be changed, amended, modified, or altered only in a writing executed by each of the parties hereto and approved by the Bankruptcy Court (other than immaterial modifications or amendments, which shall not require Bankruptcy Court approval).

14.     <u>Binding Effect; Successors.</u>  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns (including any successors to the Debtors under a chapter 11 plan and any successors or assignees of the Subrogated Claims).  Nothing in this Agreement, express or implied, shall be construed to confer upon any person (other than the parties hereto and their respective successors and assigns) any legal or equitable right, remedy or claim under or by reason of this Agreement.

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

17

15.    Notices.  All notices and other communications hereunder shall be in writing and shall be deemed given and received (i) if delivered in person, on the date delivered, (ii) if transmitted by telecopy or electronic mail (provided, in each case, that receipt is confirmed by telephone), on the date sent or (iii) if delivered by an express courier, on the second business day after mailing, to the parties hereto at the following addresses (or at such other address for a party as shall be specified by like notice):

If to any JPMC Entity to:

JPMorgan Chase Bank, N.A.
245 Park Avenue
12th Floor, NY 1-Q653
New York, NY 10017
Telecopy:  (646) 534-6399
Email:  kevin.c.kelley@chase.com
Attention:   Kevin C. Kelley

and

JPMorgan Chase Bank, N.A.
383 Madison Avenue, 23rd Floor
New York, NY 10179
Telecopy:  (212) 622-4556
Email:  ann.kurinskas@jpmorgan.com
Attention:  Ann C. Kurinskas

with a copy (which shall not constitute notice) to:

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY  10019
Telecopy:  (212) 735-2000
Email:  hsnovikoff@wlrk.com and arwolf@wlrk.com
Attention:  Harold S. Novikoff and Amy R. Wolf

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

18

If to any Debtor:

c/o Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY  10020
Email:  william.olshan@lehmanholdings.com
Attention:  William Olshan

with a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Telecopy:  (212) 310-8007
Email:  harvey.miller@weil.com and michael.lubowitz@weil.com
Attention: Harvey Miller and Michael Lubowitz

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

19

Please evidence your acceptance of, and agreement to, the terms and conditions of this letter agreement by executing and returning an executed copy of this letter agreement to the address first written above, with a copy to Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Harvey R. Miller, as soon as practicable.

Very truly yours,

LEHMAN BROTHERS HOLDINGS INC.


By: _____
Name:
Title:


LB 745 LLC


By: _____
Name:
Title:


PAMI STATLER ARMS LLC


By: _____
Name:
Title:


LEHMAN BROTHERS COMMODITY
SERVICES INC.


By: _____
Name:
Title:


LEHMAN BROTHERS SPECIAL FINANCING
INC.


By: _____
Name:
Title:


[Signature Page to Collateral Disposition Agreement]

LEHMAN BROTHERS OTC DERIVATIVES INC.


By: _____
Name:
Title:


LEHMAN BROTHERS DERIVATIVE PRODUCTS INC.


By: _____
Name:
Title:


LEHMAN COMMERCIAL PAPER INC.


By: _____
Name:
Title:


LEHMAN BROTHERS COMMERCIAL CORPORATION


By: _____
Name:
Title:


LEHMAN BROTHERS FINANCIAL PRODUCTS INC.


By: _____
Name:
Title:

LEHMAN SCOTTISH FINANCE L.P.

By: _____
Name:
Title:


CES AVIATION LLC

By: _____
Name:
Title:


CES AVIATION V LLC

By: _____
Name:
Title:


CES AVIATION IX LLC

By: _____
Name:
Title:


EAST DOVER LIMITED

By: _____
Name:
Title:


LUXEMBOURG RESIDENTIAL PROPERTIES
LOAN FINANCE S.A.R.L.

By: _____
Name:
Title:


[Signature Page to Collateral Disposition Agreement]

BNC MORTGAGE LLC

By: _____
Name:
Title:


STRUCTURED ASSET SECURITIES
CORPORATION

By: _____
Name:
Title:


LB ROSE RANCH LLC

By: _____
Name:
Title:


LB 2080 KALAKAUA OWNERS LLC

By: _____
Name:
Title:


MERIT LLC

By: _____
Name:
Title:


LB SOMERSET LLC

By: _____
Name:
Title:

LB PREFERRED SOMERSET LLC

By: _____
Name:
Title:


*ACCEPTED AND AGREED AS OF THE DATE OF THIS AGREEMENT:*

JPMORGAN CHASE BANK, N.A.


By: _____
Name:
Title:


J.P. MORGAN BANK DUBLIN PLC


By: _____
Name:
Title:


JPMORGAN CHASE FUNDING INC.


By: _____
Name:
Title:


J.P. MORGAN CLEARING CORP.


By: _____
Name:
Title:

**J.P. MORGAN INTERNATIONAL BANK LIMITED**

By: _____
Name:
Title:


**J.P. MORGAN MARKETS LIMITED**

By: _____
Name:
Title:


**J.P. MORGAN SECURITIES INC.**

By: _____
Name:
Title:


**JPMORGAN SECURITIES JAPAN CO., LTD.**

By: _____
Name:
Title:


**J.P. MORGAN SECURITIES LTD.**

By: _____
Name:
Title:

J.P. MORGAN (SUISSE) SA


By: _____
Name:
Title:


J.P. MORGAN VENTURES ENERGY CORPORATION


By: _____
Name:
Title:


JPMORGAN CHASE BANK, N.A.


_____
Abigail J. Feder
Managing Director, JPMorgan Chase Bank, N.A.
In its capacity as investment manager and agent for each of the Commingled Pension Trust Funds listed in Part A of the attached Schedule I


JPMORGAN MUTUAL FUNDS


_____
Patricia A. Maleski
Vice President, Chief Administrative Officer & Treasurer
On behalf of each of the JPMorgan Mutual Funds listed in Part B of the attached Schedule I


J.P. MORGAN INVESTMENT MANAGEMENT INC.


_____
Abigail J. Feder
Managing Director, J.P. Morgan Investment Management Inc.


[Signature Page to Collateral Disposition Agreement]

In its capacity as investment manager and agent for each of the investment funds listed in Part C of the attached Schedule I


JF ASSET MANAGEMENT LIMITED


_____
Robert Hepper
Managing Director & Chief Operating Officer, JF Asset Management Limited
In its capacity as investment manager and agent for each of the investment funds listed in Part D of the attached Schedule I


JPMORGAN ASSET MANAGEMENT (JAPAN) LIMITED


_____
David Tse
Client Business Chief Operating Officer, JPMorgan Asset Management (Japan) Limited
In its capacity as investment manager for each of the investment funds listed in Part E of the attached Schedule I


JPMORGAN ASSET MANAGEMENT (UK) LIMITED


_____
Campbell David Fleming
Managing Director, JPMorgan Asset Management (UK) Limited
In its capacity as investment manager and agent for each of the investment funds listed in Part F of the attached Schedule I


HIGHBRIDGE ASIA OPPORTUNITIES MASTER FUND, L.P.

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:

COBRA LLC

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:


CONTRARIAN VALUE, L.P.

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:


HIGHBRIDGE CONVERTIBLE ARBITRAGE MASTER FUND, L.P.

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:


HIGHBRIDGE INTERNATIONAL LLC

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:


SMITHFIELD FIDUCIARY LLC

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:

HIGHBRIDGE STATISTICALLY ENHANCED EQUITY MASTER FUND - EUROPE, L.P.

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:


HB QUANTITATIVE EQUITY STRATEGIES LIMITED

By: Highbridge Capital Management, LLC, as Investment Adviser

By: _____
Name:
Title:

**Part A – JPMorgan Chase Bank, N.A.**

Commingled Pension Trust Fund (Core Bond) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Corporate High Yield) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Emerging Markets-Fixed Income) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Emerging Markets Opportunity-Fixed Income) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Enhanced Cash) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Extended Duration) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Fixed Income Relative Value 4% VAR) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Intermediate Bond) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Intermediate Credit) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Intermediate Public Bond) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Long Credit) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Long Duration Investment Grade) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Long Duration Plus) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Market Plus Bond) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Mortgage Private Placement) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Public Bond) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Subadvised Fixed Income - W) of JPMorgan Chase Bank, N.A.

**Part B – JPMorgan Mutual Funds**

JPMorgan Core Bond Fund, a series of JPMorgan Trust II
JPMorgan Core Bond Trust, a series of JPMorgan Institutional Trust
JPMorgan Core Plus Bond Fund, a series of JPMorgan Trust II
JPMorgan Diversified Fund, a series of JPMorgan Trust I
JPMorgan Emerging Markets Debt Fund, a series of JPMorgan Trust I
JPMorgan Insurance Trust Balanced Portfolio, a series of JPMorgan Insurance Trust
JPMorgan Insurance Trust Core Bond Portfolio, a series of JPMorgan Insurance Trust
JPMorgan Intermediate Bond Trust, a series of JPMorgan Institutional Trust
JPMorgan Limited Duration Bond Fund (formerly known as JPMorgan Ultra Short Duration Bond Fund), a series of JPMorgan Trust II
JPMorgan Real Return Fund, a series of JPMorgan Trust I
JPMorgan Short Duration Bond Fund, a series of JPMorgan Trust II
JPMorgan Short Term Bond Fund II, a series of J.P. Morgan Mutual Fund Group
JPMorgan Total Return Fund, a series of JPMorgan Trust I

## Part C – J.P. Morgan Investment Management Inc.

JPMorgan Absolute Return Credit Master Fund Ltd.
JPMorgan Distressed Debt Master Fund, Ltd.
JPMorgan Fixed Income Opportunity Institutional Fund, Ltd.
JPMorgan Fixed Income Opportunity Master Fund, L.P.
JPMorgan Mortgage-Backed Securities Fund Trust
JPMorgan Funds - Emerging Markets Debt Fund
JPMorgan Funds - US Aggregate Bond Fund
JPMorgan Investment Funds - Highbridge Statistical Market Neutral Fund
JPMorgan Investment Funds - US Bond Fund
J.P. Morgan Tokyo Fund - JPM Japan GTA Fund
JPMorgan Investment Funds - Income Opportunity Fund
JPM Emerging Sovereign Open Mother Fund

## Part D – JF Asset Management Limited (Hong Kong)

JPMorgan Fund ICVC - JPM Institutional Japan Fund
JF Japan Technology Fund
JF SAR Japan Fund
JPMorgan Fleming Japanese Smaller Companies Investment Trust Plc
JPMorgan Funds - JF Japan Equity Fund
JPMorgan Funds - JF Japan Small Cap Fund

## Part E – JP Morgan Asset Management (Japan) Limited

JF E - Frontier Open Fund
JF Japan Discovery Fund
JF Japan Open
JF Japan Small Stock Open
JF Japan Tactical Investment Mother Fund
JPM Japan Active Bond Mother Fund
JF Pension Fund - Japanese Bond Portfolio
JF Pension Mother Fund - Japanese Equity Portfolio
JF Smaller Co. Equity Open
JF The Japan

## Part F – JPMorgan Asset Management (UK) Limited

JPMorgan Investment Funds - Europe Short Duration Fund
JPMorgan Funds - Global Convertibles Fund (EUR)
JPMorgan Investment Funds - Global Capital Preservation Fund (EUR)
JP Morgan Europe Aggregate Plus Bond Fund
JPMorgan Funds - Global Aggregate Bond Fund
JPMorgan Investment Funds - Global Bond Fund (EUR)
JPMorgan Investment Funds - Global Bond Fund (USD)
JPMorgan Investment Funds - Global Enhanced Bond Fund

C:\DOCUMENTS AND SETTINGS\HACKETTB\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\8GCO3QG6\US_ACTIVE_COLLATERAL DISPOSITION AGMT_43303102_12 (3).DOC

31

**<u>Annex A</u>**

**Cash Collateral**

(See Attached)

LBHI and LBI Cash Collateral as of January 31, 2010

| | Account Name | Acct # | | Balances 1/31/10 | |
|---|---|---|---|---|---|
| | ANNEX A | | | | |
| | Cash Collateral as of 1/31/2010 | | | | |
| | | | | | |
| | LBHI Cash Collateral | NA | | $5,071,950,665.49 | |
| | | | | | |
| DDAs | | | | | |
| | LBI Proceeds Account | 806001657 | $ | 34,262,392.47 | Excludes Prime Brokerage cash |
| | LBHI P&I - Cash Collateral | 8440 00158 | $ | 183,943,759.38 | |
| | Pre-petition Cash Collateral | 7864 17360 | $ | 142,476,437.00 | Excludes mis-directed wires |
| | | | | | |
| Money Markets | | | | | |
| | Waterferry | 5015137 | | 753,560,547.21 | Includes Interest thru 2/1/10 |
| | LBHI UK Branch | ILF0001952 | | 876,100,634.84 | Includes Interest thru 2/1/10 |
| | | | | 1,629,661,182.05 | |
| | | | | | |
| LBHI Cash Collateral for LBHJ Facility | | 2900113594 | | 60,131,813.83 | |
| | | | | | |
| | | | | | |
| **Cash and Money Market Total** | | | | **$ 7,122,426,250.22** | |

Cash Collateral - Certain

**<u>Annex B</u>**

**Securities Collateral**

(See Attached)

(Redacted)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x
:
In re                                        :       **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :       **08-13555 (JMP)**
:
                   **Debtors.**        :       **(Jointly Administered)**
:
--------------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 363 OF THE
### BANKRUPTCY CODE AND BANKRUPTCY RULE 6004
### APPROVING COLLATERAL DISPOSITION AGREEMENT
### AMONG THE DEBTORS AND JPMORGAN CHASE BANK, N.A., ET AL.

Upon the motion, dated February 24, 2010 (the "<u>Motion</u>"), of Lehman Brothers

Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "<u>Debtors</u>" and, together with their non-

debtor affiliates, "<u>Lehman</u>"), pursuant to section 363 of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>") and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>") for approval of that certain Collateral Disposition Agreement among the

Debtors and JPMorgan Chase Bank N.A. and certain of its affiliates, subsidiaries or related

entities (collectively "<u>JPMorgan</u>"), annexed to the Motion as Exhibit A (the "<u>Agreement</u>"),[1] all

as more fully described in the Motion; and the Court having jurisdiction to consider the Motion

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

---

[1] Capitalized terms not otherwise defined herein should have the meaning ascribed to them in the Agreement.

proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for JPMorgan; (vii) the attorneys for James W. Giddens, as Trustee (the "SIPA Trustee") for Lehman Brothers Inc. ("LBI"); and (viii) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of LBHI and the other Debtors and all economic stakeholders; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED AND ADJUDGED:

1.      The Motion is GRANTED.

2.      Objections to the Motion, if any, that have not otherwise been withdrawn or resolved are overruled.

3.      The proposed transactions set forth in the Agreement are in the best interests of LBHI and the other Debtors and all economic stakeholders.

4.      Pursuant to section 363(b) of the Bankruptcy Code, the Agreement is approved and LBHI and the other Debtors are authorized to implement and consummate the Agreement and any actions taken by LBHI and the Debtors or their affiliates may be taken without the necessity of any further Court proceedings or approval and shall be conclusive and binding in all respects on all parties-in-interest in these cases.

5.      The Claims as contemplated by the Agreement are provisionally allowed against the respective Debtors without prejudice to any and all rights of all parties-in-interest and subject to the reservations of rights set forth in the Agreement, concurrently with the application of the Cash Collateral and the Cash Payment.

6.      As and to the full extent provided in the Agreement, LBHI is fully subrogated to the Claims of the relevant JPMC Entities against LBI and such other Lehman subsidiaries to the full extent of the payments made by LBHI, and LBHI shall succeed to any and all Liens asserted by the relevant JPMC Entities in or against all of the Securities Collateral (in the same priorities as held by such relevant JPMC Entities), which Liens shall be assigned and transferred to LBHI by such relevant JPMC Entities and which Securities Collateral shall be assigned and transferred by such relevant JPMC Entities to LBHI or as otherwise directed by LBHI.

7.      The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, *provided* that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

8.      Except for the effect on the rights of the parties to the Agreement as expressly provided therein, nothing in the Agreement or the failure to raise any objection with respect to the Motion seeking the entry of this Order approving such Agreement is intended to or shall in any manner prejudice or affect the rights, remedies, actions, defenses, and claims of any kind whatsoever under applicable law or principles of equity of JPMorgan Chase Bank, N.A. or its affiliates or subsidiaries or related entities or the SIPA Trustee.

9.      The Agreement is without prejudice to any rights, remedies, claims or causes of action on the part of any Lehman entity with respect to, and each Lehman entity expressly reserves, any and all rights and remedies it may have under applicable law, contract or otherwise, including, without limitation, rights and remedies in connection with any such provisionally allowed secured or other Claim of each such JPMC Entity and any alleged guarantee thereof or security therefor, including, without limitation, the right to contest the validity and enforceability of any such provisionally allowed secured or other Claim and/or to avoid or contest such Claims, any alleged guarantee thereof and any alleged security therefor, including, without limitation, any property alleged by JPMorgan to constitute Collateral or a Lien on or ownership of any Lehman assets, such rights and remedies reserved by each Lehman entity to include, without limitation, claims or potential claims that the Collateral suffered a diminution in value as a result of conduct of any JPMC Entity (other than any diminution in value arising from the entry into the Agreement and the performance of the terms thereof).

10.     The Agreement does not expand or reduce the rights and entitlements of any party with respect to the Collateral and Liens beyond those rights and entitlements that such party would have if the Agreement had not been entered into by the parties thereto.

11.     Nothing in the Agreement is intended, and the Agreement shall not be construed, to impair any right, remedy or obligation of LBI; and the rights and remedies of LBI against the JPMC Entities and the Debtors and the rights and remedies of the JPMC Entities and the Debtors against LBI shall be not be prejudiced or otherwise impaired in any way by the Agreement.  Without limiting the generality of the foregoing, and notwithstanding any other provisions of the Agreement, LBI shall not be bound (absent further court order) by (i) any determination among the JPMC Entities and the Debtors of the value of any Collateral or any

methodology for valuing Collateral established pursuant to the Agreement, or (ii) any determination among the JPMC Entities and the Debtors of the secured status of any Claim pursuant to the Agreement. LBI retains any and all rights it may have in the Collateral transferred pursuant to the Agreement, and retains any and all rights it may have under any agreement pursuant to which any JPMC Entity acquired any Lien or other interest in any Collateral. In addition, the provisions of the Agreement shall not expand or reduce any rights and entitlements that LBI may otherwise have against any Debtor or any JPMC Entity with respect to the Collateral or any rights and entitlements that any Debtor or any JPMC Entity may otherwise have against LBI with respect to the Collateral. The Agreement and the entry by the Debtors and the JPMC Entities into the Agreement shall not create any liabilities or causes of action in favor of LBI against any Debtor or any JPMC Entity or in favor of any Debtor or JPMC Entity against LBI.

12. To the extent that the automatic stay or any other stay entered in the Debtors' chapter 11 cases are applicable to any actions expressly contemplated to be taken by any JPMC Entity pursuant to the Agreement, such stay is hereby modified to the extent necessary to permit such JPMC Entity to take such actions.

13. The requirements of Bankruptcy Rule 6004(h) are waived and the terms of this Order shall be immediately effective and enforceable upon its entry.

14.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order and consummation of the Agreement.

Dated: March __, 2010
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE