FAEGRE & BENSON LLP
Michael M. Krauss (MK-9699)
Abby E. Wilkinson
Irina Palchuk
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

Attorneys for CVI GVF (Lux) Master S.a.r.l.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                             :

In re                                                            :         Chapter 11

**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,  :         Case No. 08-13555 (JMP)

                       Debtors.                     :         **(Jointly Administered)**

-------------------------------------------------------------------x

**CVI GVF (LUX) MASTER S.A.R.L.'S MOTION TO TREAT CLAIM FILED BY BLACK RIVER ASIA FUND LTD. AS TIMELY FILED AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

CVI GVF (Lux) Master S.a.r.l. ("CVI"), by and through its attorneys, Faegre & Benson LLP, submits this consolidated motion and memorandum in support of its motion – pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1) – to treat the claim filed by Black River Asia Fund Ltd. ("Black River") against Lehman Brothers Holdings, Inc. ("LBHI"), which claim Black River subsequently assigned to CVI, as timely filed, and in support of its motion, respectfully represents and states as follows:

1

# I.
# INTRODUCTION

CVI, as assignee of Black River's claim against LBHI, files this motion seeking an order treating Black River's proof of claim as timely filed. Black River failed to timely file its proof of claim against LBHI because it was not aware that it had a claim against LBHI until early in October, 2009 – approximately two weeks after September 22, 2009 (the "Claims Bar Date"). After discovering its claim, Black River promptly filed a proof of claim and completed Supplemental Questionnaires (as defined below) before 5:00 p.m. on October 22, 2009 (the "Questionnaire Bar Date"). Treating Black River's claim as timely filed will not prejudice LBHI. The bifurcated bar dates in this case ensured that, even if Black River had filed its proof of claim before the Claims Bar Date, LBHI would not have had sufficient information to review the claim until the Questionnaire Bar Date. Black River's delay was not the result of carelessness, or even within Black River's control. Black River simply did not know that its claim existed before the Claims Bar Date. In addition, Black River's delay in this case is quite small, and Black River has acted in good faith at all relevant times.

These circumstances warrant a finding of excusable neglect, and Black River is entitled to have its proof of claim treated as timely filed.

# II.
# JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief sought in this motion is Fed. R. Bankr. P. 9006(b)(1) and 11 U.S.C. § 105(a).

# III.
# FACTUAL BACKGROUND

Black River's proof of claim should be treated as timely filed because Black River was not aware that it had a claim against LBHI until the Claims Bar Date had passed and then raced to submit all required information. Black River's claim arises from LBHI's guarantee of the obligations of Lehman Brothers International (Europe) ("LB Europe"), a subsidiary of LBHI. Ultimately, Black River assigned its claim to CVI.

Black River and LB Europe are parties to a Global Master Repurchase Agreement dated as of September 19, 2006 (the "Repurchase Contract"). (Affidavit of Mark G. Rabogliatti dated February 25, 2010 ("Rabogliatti Aff."), at ¶ 2.) On September 15, 2008, LB Europe entered an administration proceeding in the United Kingdom. On September 29, 2008, Black River notified LB Europe that the appointment of an administrator constituted an event of default under the Repurchase Contract, and designated September 29, 2008 (the "Termination Date") as the termination date for the Repurchase Contract. (*Id*. at ¶ 3.) As of the Termination Date, LB Europe owed Black River $6,709,388 (together with any interest or additional out-of-pocket expenses, the "Termination Payment") under the Repurchase Contract. (*Id*. at ¶ 4.)

On June 9, 2005, the executive committee of LBHI's board executed a resolution (the "Resolution") pursuant to which LBHI guaranteed the payment of all liabilities, obligations and commitments of certain subsidiaries, including LB Europe. In addition, on January 4, 2008, LBHI executed a separate guarantee (the "Guarantee" and together with the Resolution, the "Guarantees") pursuant to which LBHI unconditionally guaranteed all of LB Europe's liabilities, obligations and commitments, including the Termination Payment. True and correct copies of the Guarantees are attached as Exhibit A and incorporated by reference.

On September 18, 2008 (the "Petition Date"), LBHI filed a petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court.

On July 2, 2009, this Court entered (D.I. 4271) (the "Bar Date Order"), an order that, among other things, established the Claims Bar Date. The Bar Date Order also required creditors with claims based on derivatives contracts or guarantees to complete various supplemental questionnaires (such questionnaires, "Supplemental Questionnaires") before the Questionnaire Bar Date. LBHI required the information in the Supplemental Questionnaires to "reconcil[e] claims filed against multiple [d]ebtors based on one [d]ebtor's guarantee of an obligation of another." (Motion Of The Debtors, Pursuant To Section 502(b)(9) Of The Bankruptcy Code And Bankruptcy Rule 3003(c)(3), For Establishment Of The Deadline For Filing Proofs Of Claim, Approval Of The Form And Manner Of Notice Thereof And Approval Of The Proof Of Claim Form (the "Bar Date Motion"), ¶ 23 (D.I. 3654).)

A third party notified Black River of the existence of the Guarantees and in early October 2009, Black River learned, for the first time, that it had a claim against LBHI. (Rabogliatti Aff. at ¶ 5.) Before this time, Black River had no knowledge of the Guarantees, or of any claims that Black River had against LBHI. (*Id.* at ¶ 6.)

Before the Questionnaire Bar Date, Black River completed Supplemental Questionnaires in support of its proof of claim against LBHI. Copies of the confirmations evidencing submission of Black River's Supplemental Questionnaires are attached as <u>Exhibit B</u> and incorporated by reference. On October 29, 2009, approximately two weeks after learning of its claim, and one week after the Questionnaire Bar Date, Black River filed a proof of claim against LBHI. A copy of the proof of claim Black River filed is attached as <u>Exhibit C</u> and incorporated by reference.

On December 29, 2009, Black River assigned its claim against LBHI to CVI. Documentation evidencing the assignment of Black River's claim to CVI is attached hereto as Exhibit D and incorporated by reference.

## IV.
## DISCUSSION AND MEMORANDUM OF LAW

Under these circumstances, and pursuant to the "excusable neglect" standard of Bankruptcy Rule 9006(b)(1), Black River is entitled to have its proof of claim treated as timely filed because it was not, and could not reasonably have been, aware that it had a claim against LBHI until early October 2009, by which time the Claims Bar Date had already passed, and then immediately submitted all required information. Bankruptcy Rule 9006(b)(1) authorizes this Court to permit Black River's proof of claim to be treated as timely filed "where the failure to act was the result of excusable neglect." In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), the Supreme Court explained that the determination of whether neglect is "excusable" under Bankruptcy Rule 9006(b)(1) "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395.

The Supreme Court identified four factors to examine in deciding whether a party has committed excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the moving party is acting in good faith. *Id*. at 395; *see also*: *Midland Cogeneration Venture Ltd. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 122 (2d Cir. 2005) (citing *Pioneer*, 507 U.S. at 395). However, the *Pioneer* factors are not exhaustive. The ultimate determination of whether neglect is "excusable" is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. (quoting *Pioneer*, 507 U.S. at 395).

5

In *Pioneer*, the Supreme Court held that it was an abuse of discretion *not* to find excusable neglect where an experienced bankruptcy attorney failed to file a timely proof of claim after receiving an ambiguous notice of the claims bar date. *Pioneer*, 507 U.S. at 398-99. Similarly, after applying the *Pioneer* factors, the Ninth Circuit found excusable neglect where a "sophisticated law firm, with . . . a sophisticated system to determine and calendar filing deadlines" failed to file a notice of appeal within the 30-day time period under the Federal Rules of Appellate Procedure. *Pincay v. Andrews*, 389 F.3d 853, 854, 860 (9th Cir. 2004).

Black River is not an experienced bankruptcy practitioner who failed to heed a notice establishing a claims bar date, nor did Black River deliberately ignore any known claim or consciously flout any deadlines. Black River is an innocent creditor who had no knowledge of its claim against LBHI before the Claims Bar Date. Black River also provided LBHI with all of the information necessary to evaluate its claim before the Questionnaire Bar Date. Furthermore, the Guarantees are not typical forms of guarantees. Though both are valid, neither was executed directly in connection with the Repurchase Contract or provided to Black River by LB Europe or LBHI. The Resolution was apparently adopted as an internal document in the form of a resolution by LBHI for the benefit of LB Europe. Accordingly, it was reasonable for Black River not to know of the existence of the Guarantees.

Each of the four *Pioneer* factors tips sharply in favor of finding that Black River's failure to file its proof of claim by the Claims Bar Date is the result of excusable neglect.

**A.      Treating Black River's Proof of Claim as Timely Filed Will Not Prejudice LBHI.**

The bifurcation of the claims deadline means that Black River's delay in filing its proof of claim has no impact on LBHI's bankruptcy case. At the debtors' request, the Bar Date Order contained two deadlines relating to proofs of claim: the Claims Bar Date and the Questionnaire

6

Bar Date. The debtors requested the bifurcated bar dates to streamline the process of reviewing claims by ensuring that they had all necessary information before reviewing the claims. Because Black River completed Supplemental Questionnaires before the Questionnaire Bar Date, Black River's failure to file its proof of claim before the Claims Bar Date does not affect the administration of LBHI's bankruptcy case, as LBHI requires the information provided in the Supplemental Questionnaires in order to streamline the process of reviewing and reconciling the derivative and guarantee claims against it. (Bar Date Motion at ¶ 23). Because LBHI did not require creditors to complete Supplemental Questionnaires until the Questionnaire Bar Date, LBHI would not have had the information necessary to evaluate Black River's claim until the Questionnaire Bar Date, even if Black River had filed its proof of claim before the Claims Bar Date. In addition, on receipt of the Supplemental Questionnaires, LBHI had more than sufficient information to properly evaluate Black River's claim, as the Supplemental Questionnaires contain all of the information that appears in Black River's proof of claim plus a good deal more.

Additionally, the claims reconciliation process was barely in its initial stages when Black River filed its proof of claim, and the debtors in these cases have only recently begun a comprehensive review and reconciliation of the more than 65,000 claims filed against them. (*See* Debtors' Motion Pursuant To Section 105(a) Of The Bankruptcy Code And Bankruptcy Rules 3007 And 9019(b) For Approval Of (I) Claim Objection Procedures and (II) Settlement Procedures (D.I. 6374).) Because LBHI would not have had sufficient information to review Black River's claim before the Questionnaire Bar Date, and because the claims reconciliation process was barely in its initial stages when Black River filed its claim, Black River's delay does not affect the administration of LBHI's bankruptcy case.

Furthermore, treating Black River's claim as timely filed will not disturb any plan of reorganization, as LBHI has not yet proposed a plan.

Treating Black River's claim as timely filed is also unlikely to "precipitate a flood of similar [late-filed] claims." *Midland*, 419 F.3d at 130. This is simply not a case in which the Court, having allowed Black River's claims, "would be hard pressed to distinguish [Black River's] situation from any other similar creditors." *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995). The fact that Black River completed and submitted Supplemental Questionnaires before the Questionnaire Bar Date offers a natural point of distinction between Black River and other late-filing creditors. The Court can easily distinguish between Black River (whose delay was slight, and which provided all information necessary to review its claim before the Questionnaire Bar Date), from creditors who failed to provide notice of their claims, or the information necessary to evaluate their claims, before the Questionnaire Bar Date.

Finally, a finding of excusable neglect will merely restore LBHI to its financial position on the Petition Date. In contrast, if Black River's proof of claim is not treated as timely filed, Black River will be prejudiced, and LBHI (and its creditors) may receive a windfall at Black River's expense.

**B.  Black River's Short Delay in Filing Its Proof of Claim is Reasonable, and Will Not Adversely Affect LBHI's Bankruptcy Case.**

For much the same reasons, Black River's short delay in filing its proof of claim should have no impact on the proceedings. Black River was not aware of the Guarantees or of its claim against LBHI until early October 2009, approximately two to three weeks after the Claims Bar Date. (Rabogliatti Aff., at ¶ 5.)

After learning of the existence of the Guarantees, Black River quickly asserted its claim against LBHI. Black River filed its proof of claim against LBHI approximately two weeks after

8

discovering its claims, and approximately five weeks after the Claims Bar Date. *See In re PT-1 Communications*, 292 B.R. 482 (Bankr. E.D.N.Y. 2003) (allowing late-filed claim of state agency where state agency was not aware of the claim's existence on the claims bar date and filed its proof of claim within three and a half months of learning of the claim's existence) (citing *In re Sitzberger*, 65 B.R. 256, 260 (Bankr. S.D. Cal. 1986) (finding the IRS's expediency in filing its late proof of claim within two months of becoming aware of debtor's tax liability to be "compelling" and permitting the IRS to file a late proof of claim)).

Black River also submitted Supplemental Questionnaires before the Questionnaire Bar Date. Because LBHI needed this information to review and reconcile Black River's claim, because Black River provided the information contained in the Supplemental Questionnaires before the Questionnaire Bar Date, and because the Supplemental Questionnaires contained virtually all of the information that appears in Black River's proof of claim, Black River's slight delay in filing its proof of claim should have no impact on these proceedings. Finally, a decision to treat Black River's proof of claim as timely filed will not unfairly prejudice other creditors, as doing so will not upset any creditor's reliance on any distribution pursuant to a plan of reorganization, as LBHI has not yet proposed any such plan.

**C.     Black River's Failure to File Its Proof of Claim Was Not Within Its Control.**

In following *Pioneer*, the Second Circuit has "focused on the third-factor: the reason for the delay, including whether it was in the reasonable control of the movant." *Midland,* 419 F.3d at 122 (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d. Cir. 2003)).

The reason for Black River's delay in filing its proof of claim is simple: Black River had no knowledge of its claim against LBHI. Black River was not aware of the existence of the Guarantees until early October 2009, approximately two to three weeks after the Claims Bar

9

Date. (Rabogliatti Aff., at ¶ 5.) As a result, Black River did not know that it possessed any claims against LBHI. (*Id.* at ¶ 6.) Furthermore, this lack of knowledge was entirely outside Black River's control. In addition, approximately one week after discovering the Guarantees, and one month after the Claims Bar Date, Black River completed Supplemental Questionnaires and filed its proof of claim one week later.

This is not a case in which a creditor missed the claims bar date by six months or more, or offered no reason for its inability to comply with the claims bar date. *Compare: Midland,* 419 F.3d at 127, 134 (affirming denial of motion to file a late proof of claim where the creditor, despite having adequate notice of the bar date, waited for six months to file the late claims, and alleged only that its delay resulted from inadvertence); *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 102-03 (Bankr. S.D.N.Y. 2007) (denying motion to file a late proof of claim where the creditor filed the claim more than fifteen months after the claims bar date, and made no attempt to explain the inadvertent mistake that caused its delay); *In re Keene Corp.*, 188 B.R. at 912-13 (same where creditor waited nine months to file the motion, during which time the debtors had negotiated a consensual plan of restructuring, and where the creditor offered no circumstance beyond its control for why the claim was not timely filed).

Here, in contrast, the creditor had no knowledge of its claim against the debtor until after the bar date, and immediately filed its claim after discovering it. *See PT-1 Commc'ns*, 292 B.R. at 489-90 (allowing late-filed proof of claim where the creditor had no reasonable basis to know before the bar date that it had a claim against the debtor, and where the creditor filed a proof of claim within three months of discovery); *In re Sage-Dey, Inc.*, 170 B.R. 46, 53 (Bankr. N.D.N.Y. 1994) (extending the claims bar date where the creditor did not learn of its claim until

approximately two weeks after the claims bar date, and where the creditor filed its proof of claim within six months of the bar date and before confirmation of the plan of reorganization).

In this case, Black River did not know of its claim before the Claims Bar Date, acted promptly on discovery of its claim and submitted Supplemental Questionnaires before the Questionnaire Bar Date, which provided all of the facts LBHI required to evaluate Black River's claims.

**D.    Black River Is Acting in Good Faith in Seeking to Have Its Proof of Claim Treated as Timely Filed.**

Black River has acted in good faith at all relevant times. Black River asserts a claim against LBHI that it held as of the Petition Date. Black River, through no fault of its own, had no knowledge of the Guarantees, and thus no knowledge of its need to file a proof of claim against LBHI, until after the Claims Bar Date. (Rabogliatti Aff., at ¶ 6.) Black River does not seek to delay LBHI's bankruptcy case, Black River does not seek to assert claims of dubious legitimacy, and Black River did not delay exercising its rights in order to gain a strategic advantage in the restructuring process. Had Black River been aware of the Guarantees before the Claims Bar Date, it would have filed a timely proof of claim.

## V.
## CONCLUSION

In *PT-1 Commc'ns*, the court found excusable neglect, where (1) there was no reason on the basis of the facts known to the creditor before the claims bar date that it had a claim, (2) the danger of prejudice to the debtor was outweighed by the reasons for the creditor's delay, (3) the length of the delay was small, and (4) the creditor acted in good faith. *PT-1 Commc'ns.*, 292 B.R. at 489-90. A finding of excusable neglect is even more justifiable here, as such a finding will not prejudice LBHI, the length of delay is very small, and any effect on LBHI or any other

creditors is further mitigated (if not eliminated) by the fact that Black River submitted Supplemental Questionnaires before the Questionnaire Bar Date. For all of the foregoing reasons, Black River's failure to file a proof of claim before the Claims Bar Date constitutes "excusable neglect." Accordingly, pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1), this Court should grant CVI's motion.

**WHEREFORE,** for all of the reasons set forth in this consolidated application and memorandum, as well as those set forth in the Affidavit of Mark G. Rabogliatti, CVI respectfully requests that the Court enter an order substantially in the form attached hereto (A) requiring LBHI to treat Black River's proof of claim as timely filed and (B) granting such further relief as the Court deems just.

February 26, 2010

/s/ Michael M. Krauss
Michael M. Krauss (MK-9699)
Abby E. Wilkinson
Irina Palchuk
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

Attorneys for CVI GVF (Lux) Master S.a.r.l.

fb.us.4568230.15