# SARA DISCEPOLO, ESQ.*
## ATTORNEY AT LAW

1050 Winter Street
Suite 1000
Waltham, MA 02451

\* Admitted in
Massachusetts,
Pennsylvania &
Connecticut

Tel. (617) 549-4537
Fax (978) 478-4589

Email Address: Sara_Discepolo@verizon.net

January 7, 2010

VIA CERTIFIED RETURN RECEIPT MAIL No. 7003 2260 0004 6133 0494
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions
FDR Station, PO Box 5286
New York, NY 10150-5076

RE:     _In re Lehman Brothers Holdings, Inc._,
        U.S. Bankruptcy Court for the Southern District of New York
        Case No. 08-13555(JMP)
        PROOF OF CLAIM FILED BY SIMEON MORENO

To Whom It May Concern:

Enclosed please find a Proof of Claim on behalf of Simeon Moreno in the above
referenced matter. Please file and docket same.

Very truly yours,

Sara Discepolo

Encl.
cc:     Harvey Miller, Esq.
        Weil, Gotshal & Manges LLP
        767 Fifth Avenue
        New York, NY 10153
        (via Certified Return Receipt Mail No. 7003 2260 0004 6133 0500)

1

# PROOF OF CLAIM

**United States Bankruptcy Court/Southern District of New York**

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held Lehman Brothers Holdings Inc. | Case No of Debtor 08-13555 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

## THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Simeon Moreno
c/o Sara Discepolo, Esq.
1050 Winter Street, Suite 1000
Waltham MA 02451

Telephone number: 617-549-4537   Email Address: *Sara_Discepolo @ verizon.net*

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number: _____   Email Address: _____

**1.   Amount of Claim as of Date Case Filed:** $ 2500 plus rescission and atty fees

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.   Basis for Claim:** Federal and State Truth in Lending violations and MGL ch 93A unfair trade practices
(See instruction #2 on reverse side.) *See attached.*

**3.   Last four digits of any number by which creditor identifies debtor:** _____
   **3a. Debtor may have scheduled account as:** _____
   (See instruction #3a on reverse side.)

**4.   Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other

Describe: _____
Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

**6.   Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

**7.   Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.   Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain: _____

**5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

**FOR COURT USE ONLY**

| Date: 1-6-10 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. *(Sara Discepolo, Esq. on behalf of Simeon Moreno)* |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

## SUMMARY

Simeon Moreno's claim is in the nature of a counterclaim or claim in recoupment as a result of foreclosure proceedings instituted against Moreno in the Massachusetts Land Court in Property Asset Management, Inc. v Simeon Moreno, Docket No. 08 MISC 379437. It is also in the nature of a counterclaim or claim in recoupment as a result of a Proof of Claim filed by Litton Loan Servicing LP in In re Simeon Moreno, Massachusetts Bankruptcy Case (Ch. 13) No. 08-17715. Litton purportedly filed said Claim in Moreno's Ch. 13 Bankruptcy Case on behalf of Lehman Brothers Holdings Inc. (Claim 2-1 attached). Besides said Proof of Claim, Property Asset Management, Inc. has filed a Motion for Relief from Stay in order to conduct a foreclosure of Moreno's property based upon said Proof of Claim.

Moreno has rescinded the transaction referenced in Proof of Claim 2-1 and intends to file claims against Lehman Brothers Holdings, Inc., including but not limited to claims under federal and state Truth in Lending laws as well as chapter 93A of the Massachusetts General Laws. See Letter dated Dec. 28, 2009 (attached hereto).

# LITTON LOAN CLAIM 2-1

## FILED AGAINST SIMEON MORENO

## AND ON BEHALF OF LEHMAN BROTHERS HOLDINGS INC.

| UNITED STATES BANKRUPTCY COURT   DISTRICT OF MASSACHUSETTS BOSTON DIVISION | PROOF OF CLAIM |
|---|---|

| Name of Debtor:  Simeon Moreno | Case Number:08-17715-WCH |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Litton

Name and address where notices should be sent:
Litton Loan Servicing, LP
P. O. Box 829009
Dallas, Texas  75382-9009

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
*(If known)*

Filed on:

Name and address where payment should be sent (if different from above):
Litton Loan Servicing, LP
P.O. BOX 4387
Houston, Texas 77210-4387

Telephone Number:  (800) 247-9727

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**  $530,168.04

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Money Loaned
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** xxxx2858

**3a.** Debtor may have scheduled account as: __ _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate ☐ Motor Vehicle ☐ Other: _____
**Describe:**

**Value of Property:** not available   **Annual Interest Rate:**

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $39,442.49 **Basis for perfection:** Recordation of Lien

**Amount of Secured Claim:** $530,168.04   Amount Unsecured $0.00

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary.
(*See definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**
$_____

**Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>November 12, 2008 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>/s/ Joe M. Lozano, Jr.  as Creditor's Authorized Agent | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
5151-N-2835

IN THE UNITED STATES, BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

IN RE:                                              §
                                                    §         CASE NO. 08-17715-WCH
                                                    §
SIMEON MORENO                                       §
                                                    §         CHAPTER 13
                                                    §
                                                    §         JUDGE WILLIAM C. HILLMAN
                                                    §

### EXHIBIT A

ITEMIZATION OF CLAIM AND SUMMARY OF SUPPORTING
DOCUMENTS FOR CLAIM OF LITTON LOAN SERVICING, LP, AS SERVICING AGENT FOR LEHMAN
BROTHERS HOLDINGS INC

### SECTION 1. ITEMIZATION OF CLAIM

A.   Total Debt as of October 13, 2008
     - Principal Balance                                            $490,440.51
     - Interest from Last Paid Installment                           $33,574.74
     - Late Charges                                                     $599.22
     - Escrow Advance                                                    ($0.00)
     - Pre-petition Attorney Fees and Costs                          $5,539.29
     - Other amounts, Inspection Fees, Appraisal Fees,
       NSF Check Charges, and Other Charges                            $264.00
     - Suspense Account Balance                                       ($249.72)

            TOTAL                                                   $530,168.04

B.   Total Arrearage as of October 13, 2008
     - Regular Monthly Installments
       January 1, 2007 through October 13, 2008                     $33,289.70
     - Late Charges                                                     $599.22
     - Pre-petition Attorney Fees and Costs                          $5,539.29
     - Other pre-petition fees, expenses and charges
       as reflected above                                             $264.00
     - Less Suspense Account Balance                                  ($249.72)
     - Interest accrued at the contract rate of
       7.75% on pre-petition arrearage if allowed by
       11 USC §13.                                                      ($0.00)

            TOTAL ARREARAGES                                         $39,442.49

Name of Creditor: Litton Loan Servicing, LP, as servicing agent for Lehman Brothers Holdings Inc
File Number 5151-N-2835 / po

EXHIBIT A – ITEMIZATION OF CLAIM AND SUMMARY OF SUPPORTING DOCUMENTS                    1

## PROOF OF SERVICE

The undersigned attes . . . ler the penalties of perjury that a true copy of this Proof of Claim with

attachments (unless the attachm . . . re voluminous and in that case a statement to such effect is attached hereto)

was served on the Debtor's . . . sel (or on the Debtor if the Debtor is unrepresented by counsel) on

November 14 , 200 8 , by:

☐    Deli . . . person
☐    First . . . nail properly addressed bearing adequate postage
☒    Via e. . . nic notification

/s/ Joe M. Lozano, Jr.
Joe M. Lozano, Jr.

Litton
Loan No.:xxxx2858
File No.5151-N-2835

PROOF OF SERVICE

1

MERS® Service Identification System Claim Result Part 2    Filed 8/13/08    Desc Exhibit Loan Docs    Pg 8 of 88
of 24



**Process Loans, Not Paperwork™**

www.mers-servicerid.org

---

**1 record matched your search:**

MIN: 1001363-0011766492-9    Note Date: 01/23/2007        MIN Status: Active

Servicer:  Litton Loan Servicing LP                Phone: (713) 218-3489
           Houston, TX

---

Return to Search

---

For more information about MERS please go to www.mersinc.org

Copyright© 2006 by MERSCORP, Inc.

**After Recording Return To:**
WMC MORTGAGE CORP. - POST
CLOSING

1 RAMLAND RD

ORANGEBURG, NY 10962

Attn:   (Equity Services)

**Prepared By:**
KENNETH MANZANO

GE Money Bank, a federal
savings bank

3100 THORNTON AVENUE

BURBANK, CA 91504



---

[Space Above This Line For Recording Data]

## MORTGAGE

MORENO
Loan #: ▮▮▮▮▮▮
MIN: 100136300117664929
PIN: 20-06284

Serv #: ▮▮▮▮▮▮

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **January 23, 2007**, together with all Riders to this document.

(B) "Borrower" is **SIMEON MORENO**

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is **GE Money Bank, a federal savings bank**

Lender is a **federal savings bank** organized and existing under the laws of **United States of America**. Lender's address is **3100 Thornton Ave., Burbank, CA 91504**

(E) "Note" means the promissory note signed by Borrower and dated **January 23, 2007**. The Note states that Borrower owes Lender **Four Hundred Ninety-Two Thousand And 00/100** Dollars (U.S. $ **492,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **February 1, 2037**.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

MASSACHUSSETTS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3022 1/01         (page 1 of 16 pages)
DOCUKMA1
DOCUKMA1.VTX 08/27/2005

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider       ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☒ 1-4 Family Rider            ☒ Other(s) [specify] Balloon Rider

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY                              of     SUFFOLK
[Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AND KNOWN AS
EXHIBIT 'A'.

Sut

which currently has the address of    5 MAPLE STREET
                                      [Street]
WEST ROXBURY                        , Massachusetts   02132        ("Property Address"):
[City]                                                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

       Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3022 1/01    *(page 3 of 14 pages)*
DOCUKMA3
DOCUKMA3.VTX   02/27/2003

*S M*

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by

MASSACHUSSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3022 1/01    *(page 4 of 14 pages)*
DOCUMAM
DOCMEM.VTX  08/27/2002

_Su_

RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing,

MASSACHUSETTS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022 1/01          (page 5 of 14 pages)
DOCUKMA1
DOCUKMA1.VTX    02/22/2002

S-4

any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security

MASSACHUSETTS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022 1/01          (page 6 of 14 pages)
DOCUK044
DOCUKMA.VTX    08/27/2005

Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

MASSACHUSSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3022 1/01      (page 7 of 14 pages)
DOCUKMA7
DOCKMA7.VTX  08/27/2008

S'M

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

MASSACHUSSETTS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3022 1/01    *(page 8 of 14 pages)*
DOCUKMA8
DOCUKMA8 .VTX  04/27/2003

S-11

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent

MASSACHUSSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3022 1/01        (page 9 of 14 pages)
DOCUKMA9
DOCUKMA9.VTX    08/17/2005

S-11

by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall co ntinue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or

S-M

(d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MASSACHUSSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022 1/01          (page 11 of 14 pages)
DOCUKMA11
DOCUKMA.VTX   06/27/2002

$\mathcal{S} \sim 1$

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

_____ _____ _1 - 23 - 09_
- Borrower - SIMEON MORENO - Date -

[Space Below This Line For Acknowledgment]

STATE OF  Massachusetts                §
COUNTY OF  Essex                       §

On this  23rd  day of  January  2007  , before me, the undersigned notary public personally appeared

    Simeon Moreno

proved to me through satisfactory evidence of identification, which were ___his license___ , to
be the person(s) whose name(s) _____ signed on the preceding or attached document, and acknowledged to me
that   he   signed it voluntarily and for its stated purpose.

_____
Notary Public
    Paul D. McCarthy

My Commission Expires:  1/24/2014

## ADJUSTABLE RATE RIDER
### (6-Month LIBOR Index - Rate Caps)
### (First Business Day of Preceding Month Lookback)

Serv #: ███████                                              MORENO
                                                            Loan #: ███████
                                                            MIN: 100126300117664929

THIS ADJUSTABLE RATE RIDER is made this **23rd**     day of **January, 2007**     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the
Borrower's Adjustable Rate Note (the "Note") to **GE Money Bank, a federal savings bank**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
**5 MAPLE STREET, WEST ROXBURY, MA 02132**

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
      The Note provides for an initial interest rate of    **7.750**    %. The Note provides for
changes in the interest rate and the monthly payments, as follows:

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
      **(A)    Change Dates**
      The interest rate I will pay may change on the first day of **February, 2009**     ,
and may change on that day every   **6th**    month thereafter. Each date on which my interest rate
could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--
DOCU3N1                                   Page 1 of 3
DOCU3N1.VTX  01/27/2006

█████████████████████

**(B)    The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)    Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six and One-Eighth** percentage point(s) ( **6.125** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on a date that is **10** years after the Maturity Date (such date being referred to herein as the "Amortization Date") at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. I understand that as a result of the Amortization Date being after the Maturity Date, I will have a balloon payment on the Maturity Date.

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.750** % or less than **7.750** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **14.250** %, or less than **7.750** %.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

**MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--**

Page 2 of 3

DOCUD42
DOCKFLEX.WTF   05/24/2005

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Simeon Moreno_  1-22-07
- Borrower - SIMEON MORENO - Date -

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--
Page 3 of 3
DOC#:xxx
DOC#:xxx.VTX  01/27/2006

[Space Above This Line For Recording Data]

# BALLOON RIDER

MORENO
Loan #: ████████
MIN: 10013630011766492█

Serv #: ████████

THIS BALLOON RIDER is made this 23rd    day of **January, 2007**    , and is incorporated into
and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security
Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to
**GE Money Bank, a federal savings bank**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
**5 MAPLE STREET WEST ROXBURY, MA 02132**

[Property Address]

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date".
I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who
takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under
the Note is called the "Note Holder".

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument,
Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the
Security Instrument or the Note):

NOTWITHSTANDING THE   40   -YEAR AMORTIZATION PERIOD, THIS LOAN IS PAYABLE IN
FULL ON THE MATURITY DATE.  YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF
THE LOAN AND UNPAID INTEREST THEN DUE.  THE LENDER IS UNDER NO OBLIGATION TO
REFINANCE THE LOAN AT THAT TIME.  YOU WILL, THEREFORE, BE REQUIRED TO MAKE
PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A
LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND
YOU THE MONEY.  IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY
SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN

**BALLOON RIDER MULTISTATE (01/97)**
DOCUKAM
DOCUKAM .vtx  05/24/2006

Page 1 of 2

████████████████████████████

*S M*

IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. ACCORDINGLY, IF THIS LOAN
HAS NOT BEEN SATISFIED, YOU WILL HAVE A BALLOON PAYMENT ON THE MATURITY
DATE.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ 1-23-07
- Borrower - SIMEON MORENO - Date -

BALLOON RIDER MULTISTATE (01/97)                        Page 2 of 2
DOC#343
000343.VTX  05/24/2006

# 1-4 FAMILY RIDER

### (Assignment of Rents)

Servicing #: [redacted]

MORENO
Loan #:
MIN#: 10013630017566929

THIS 1-4 FAMILY RIDER is made this **23rd** day of **January, 2007**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **GE Money Bank, a federal savings bank**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **5 MAPLE STREET, WEST ROXBURY, MA 02132**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3170 1/01
DOCUMA1    (Page 1 of 3)
MORU6A1.VTX 12/27/2006

*Su*

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3170 1/01
DOCU6043.VTX  05/25/2005                          (Page 2 of 3)



S-4

when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

    **I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

- Borrower - SIMEON MORENO - Date -

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3170 1/01
(Page 2 of 3)

# EXHIBIT A

File No. S.Moreno

The land with the buildings thereon situated in that part of Boston, called West Roxbury, County of Suffolk, Massachusetts, being No. 5 Maple Street, West Roxbury, being Lot A on a plan of land in West Roxbury, dated August 9, 1926, Bates & Geliman, Engineers, recorded with the Suffolk Registry of Deeds, Book 4854, end and bounded and described as follows:

SOUTHWESTERLY      by Maple Street, 44.17 feet;

SOUTHEASTERLY      by Lot B on said Plan by three lines, 47.02 feet, .50 feet and 39.44 feet, respectively;

NORTHEASTERLY      by Lot C on said Plan, 22.22 feet; and

NORTHWESTERLY      by Lot 3 on said Plan by Walter C. Bates, C.E. dated June 30, 1923, recorded with the Suffolk Deeds, Book 4487, Page 67, 81.78 feet.

Containing 3095 square feet.

For our title reference see deed recorded in Book 30238, Page 163.

*S.M*

# RESCISSION BY SIMEON MORENO AND

# NOTICE OF RELATED CLAIMS

# SARA DISCEPOLO, ESQ.*
ATTORNEY AT LAW

1050 Winter Street
Suite 1000
Waltham, MA 02451

*Admitted in
Massachusetts,
Pennsylvania &
Connecticut

Tel. (617) 549-4537
Fax (978) 478-4589

Email Address:  Sara_Discepolo@verizon.net

December 28, 2009

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
Property Asset Management, Inc.
745 7th Avenue
New York, NY 10019

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
Richard Briansky, Esq.
Prince Lobel Glovsky & Tye LLP
100 Cambridge Street
Suite 2200
Boston MA 02114
(also via email:
rbriansky@princelobel.com)

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
Lehman Brothers Holdings, Inc.
745 7th Avenue
New York, NY 10019

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
Lehman Brothers Holdings, Inc.
1271 Ave of the Americas
New York, NY 10020

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
Litton Loan Servicing LP
PO Box 829009
Dallas TX 75382-9009

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
Barclays Capital, Inc.
200 Park Avenue
New York, NY 10166

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
GE Money Bank
3100 Thornton Avenue (Call Center)
Burbank CA 91504

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
GE Money Bank
4828 Loop Central Drive
Houston TX 77081-2226

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
Rian K Vernon, Esq.
Harmon Law Office
PO Box 610345
Newton Highlands, MA 02461-0345
(also via email: mabk@harmonlaw.com)

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
Resurgent Capital Services LP as
Servicer for Anson Street LLC
PO Box 10675
Greenville, SC 29603

1

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
GE Money Bank
170 West Election Road, Suite 125
Draper UT 84020

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
GE Money Bank
4246 Riverboat Road # 200
Salt Lake City, UT 84123

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
Mortgage Electronic Registration Systems, Inc.
1818 Library Street, Suite 300
Reston, VA 20190

VIA CERTIFIED RETURN RECEIPT MAIL
AND VIA FIRST CLASS MAIL
Anson Street LLC
200 Meeting Street, Suite 206
Charleston SC 29401

RE:    *Simeon Moreno v Property Asset Management, Inc.*, Massachusetts Bankruptcy Court (Adversary) Case No. 09-01378-FJB
*In re Simeon Moreno*, Massachusetts Bankruptcy Court (Ch 13) Case No. 08-17715-FJB

(A)    Litton Loan Servicing LP Proof of Claim
Property Address: 5 Maple Street, West Roxbury, Massachusetts
Borrower: Moreno, Simeon
RE: **GE Money Bank Loan No. 11766492**

(B)    Resurgent Capital Services, LP Proof of Claim
Property Address: 5 Maple Street, West Roxbury, Massachusetts
Borrower: Moreno, Simeon
RE: **GE Money Bank Loan No. 11811597**

(C)    Property Asset Management Motion for Relief From Stay
Property Address: 5 Maple Street, West Roxbury, Massachusetts
Borrower: Moreno, Simeon
RE: **GE Money Bank Loan No. 11766492**

[TO LITTON LOAN SERVICING LP & RESURGENT CAPITAL SERVICES LP:  YOU ARE DIRECTED TO IMMEDIATELY GIVE NOTICE OF THIS COMMUNICATION AND FORWARD A COPY OF SAME TO THE CURRENT HOLDERS OF THE ABOVE REFERENCED LOANS, RESPECTIVELY. SEE YOUR PROOFS OF CLAIM REFERENCED ABOVE (copies attached).]

[TO PROPERTY ASSET MANAGEMENT, INC.: THIS SUPPLEMENTS A NOTICE OF RESCISSION DATED DECEMBER 7, 2009 DELIVERED TO YOU THROUGH YOUR AGENT AND LEGAL COUNSEL, RICHARD BRIANSKY, ESQ., AT A COURT HEARING ON DECEMBER 7, 2009. A COPY OF SAID ORIGINAL NOTICE OF RESCISSION IS ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE. SAID NOTICE ATTACHED IS A TRUE AND ACCURATE COPY OF SAID DOCUMENT PROVIDED TO HIM WITH THE EXCEPTION THAT THE ADDRESSEE ON SAID DOCUMENT WAS LISTED AS RICHARD BRIANSKY OF PRINCE LOBEL GLOVSKY & TYE LLP.]

[TO LEHMAN BROTHERS HOLDINGS INC.:  LITTON LOAN'S PROOF OF CLAIM REFERENCED ABOVE PURPORTS TO BE FILED ON YOUR BEHALF.  TO THE EXTENT YOU ARE OR CLAIM TO BE A CREDITOR, MR. MORENO HEREBY RESCINDS THE

LOAN/MORTGAGE CLAIMED BY YOU. THE FOLLOWING DEMAND UNDER CHAPTER 93A IS NOT MADE AGAINST YOU AT THIS TIME]

[TO ALL ADDRESSEES: THE FACT THAT THIS NOTICE INCLUDES A DEMAND UNDER CHAPTER 93A OF THE MASSACHUSETTS GENERAL LAWS DOES NOT AMOUNT TO AN ADMISSION BY MR. MORENO THAT A 93A DEMAND LETTER IS REQUIRED IN ORDER TO OBTAIN RELIEF THEREUNDER FROM YOU]

[TO RICHARD BRIANSKY/PRINCE LOBEL GLOVSKY & TYE: THIS IS SENT TO YOU AS THE AGENT OF PROPERTY ASSET MANAGEMENT, INC.]

[TO RIAN VERNON/HARMON LAW OFFICE: THIS IS SENT TO YOU BOTH IN YOUR CAPACITY AS AGENT FOR PROPERTY ASSET MANAGEMENT, INC. AS WELL AS AGAINST HARMON LAW OFFICE FOR SEPARATELY STATED CHAPTER 93A CLAIMS AGAINST HARMON LAW OFFICE]

**NOTICE OF RESCISION
AND DEMAND UNDER CHAPTER 93A OF THE
MASSACHUSETTS GENERAL LAWS**

Ladies and Gentlemen:

Please be advised that I represent Simeon Moreno in connection with the above referenced matter.

I.    **RESCISSION OF TRANSACTION and DEMAND UNDER MASSACHUSETTS GENERAL LAWS, CHAPTER 93A FOR TREBLE DAMAGES AND ATTORNEYS' FEES**

This is to notify you that Simeon Moreno does hereby rescind the above referenced Loans and associated mortgages, as well as the entire closing transaction related to same which took place on or about January 23, 2007.

Mr. Moreno rescinds under the federal Truth-in-Lending Act, see 15 U.S.C. §§ 1601 et seq (hereinafter "TILA") and all of its amendments including the Home Ownership and Equity Protection Act, see, e.g., 15 U.S.C. § 1639 ("HOEPA"), as well as under parallel state laws, including but not limited to the Massachusetts Predatory Home Loan Practices Act, see Mass.Gen.Laws ch. 183C, § 18, the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), see Mass.Gen.Laws ch. 140D, §§ 10, 33(c), the Massachusetts Unfair Trade Practices Act, see, Mass.Gen.Laws ch. 93A, §§ 1, et seq, as well as under all federal and state regulations promulgated in accordance with said statutes. All of the conduct complained as described below constitutes unfair and deceptive trade practices under Chapter 93A of the Massachusetts General Laws for which you may be liable for treble damages and attorneys' fees.

The basis for the rescission and Mr. Moreno's demand for relief under Chapter 93A of the Massachusetts General Laws includes but is not limited to the following:[1]

1. <u>LOAN SPLITTING</u> - Mr. Moreno requested one loan but on the day of the closing/transaction was presented with two separate loans (two separate Notes and Mortgages) payable to the same lender, GE Money Bank, (GE Money Bank Loan # 11811597 and Loan # 11766492). Along with same he received two separate sets of inaccurate and incomplete disclosures. This splitting of one loan transaction into two with two sets of disclosures had the effect of: (1) violating the requirement that Mr. Moreno be provided with clear and conspicuous disclosures that should have been grouped together, and the requirement that they be understandable and meaningful and properly segregated; (2) circumventing federal and state high cost home mortgage statutes and regulations for Loan # 11811597, <u>see</u> Mass.Gen.Laws ch. 183C, §§ 1, et seq and/or 15 U.S.C. § 1639, and concomitant increased statutory protections and disclosure requirements thereunder, including but not limited to required 3 day advanced look disclosures; and (3) providing inaccurate disclosures concerning finance charges by failing to include in computation of finance charges the amounts for title insurance fees and recording fees in Loan # 11811597 that were wholly unnecessary and a duplication of those in Loan # 11766492, which resulted in inaccurate disclosures concerning finance charges, APR, and amount financed for both sets of Loans. The disclosures provided were confusing, misleading, inconsistent, contradictory, and inaccurate as a result of this loan splitting.

2. <u>MISREPRESENTATIONS BY BROKER/CLOSING AGENT</u>: The broker/closing agent was an agent of the original lender, GE Money Bank. The broker/closing agent gave inaccurate statements concerning the transaction, including but not limited to telling Mr. Moreno that Mr. Moreno's Right to Cancel existed only for 24 hours (said misrepresentation was made on day of transaction), that Mr. Moreno only had one loan and/or one payment resulting from the documents signed on January 23, 2007, that the total rate/payments would be lower than Mr. Moreno's then current mortgage for the property, that the APR/rate would be fixed. He also never disclosed to Mr. Moreno that he would have a balloon payment of over $340,000, despite the fact that Mr. Moreno's loan application reflects an application for a fixed rate loan, without a balloon payment with a requested amount of only $123,000. Mr. Moreno was told that he was required to payoff unsecured creditors in order to obtain a loan and had to obtain different and/or higher priced homeowners insurance with a particular company in order to obtain the loan. All of these statements and/or omissions were confusing, deceptive, unfair, contradictory, and/or inaccurate both in themselves and when compared to the two sets of Notes, Mortgages, and sets of disclosures.

3. <u>ITEMIZATION OF AMOUNT FINANCED</u> – an accurate and/or complete Itemization of Amount Financed was never provided to Mr. Moreno as required under TILA and Mass.Gen. Laws, ch. 140D § 12(a)(2)(B)(ii).

---

[1] Unless otherwise indicated, the following violations pertain to both Loans.

4. <u>RESPA</u> – The transaction violated RESPA, including but not limited to failing to provide Mr. Moreno with a final HUD statement(s) and fully disclosed Itemization of Amount Financed.

5. <u>FURNISHED INCORRECT/INACCURATE RIGHT TO CANCEL FORMS</u>– The Right to Cancel forms provided to Mr. Moreno do not comply with requirements under TILA and MCCCDA in one or more of the following ways: they were unclear or ambiguous in that they indicate cancellation may be effected by sending written notice to an address yet indicating the address is a Call Center. This was confusing, indicates cancellation may be effected by a telephone call, and negates information that cancellation is only effective by written notice to a specific address.

6. <u>HIGH COST HOME MORTGAGE LOANS</u> – Loan # 11766492 is a high rate home equity loan subject to federal and state statutes, <u>see</u> Mass.Gen.Laws ch. 183C, §§ 1, et seq and/or 15 U.S.C. § 1639 ("HOEPA"), and concomitant increased statutory protections and disclosure requirements thereunder. Loan # 11766492 violates those statutory and regulatory requirements in various ways, including but not limited to the following: (1) the Loan was made despite the fact that the lender did not have a reasonable belief that Mr. Moreno would be able to repay the loan (chapter 183C) or it was based upon the collateral without regard to Mr. Moreno's repayment ability (HOEPA); (2) the Loan required financing of points and fees greater than 5% of the total loan amount (chapter 183C); (3) Mr. Moreno was not provided with additional disclosures and warnings required for high cost home mortgage loans including but not limited to the 3 day advanced look disclosures under HOEPA.  Due to improper loan splitting, Loan # 11811597 is also a high cost home mortgage subject to the same requirements and also in violation of the law.

7. <u>FAILURE TO ACCURATELY DISCLOSE FINANCE CHARGES, AMOUNT FINANCED, AND APR (Loan # 11766492)</u> – The disclosures undervalue Finance Charges by more than $35 and this undervaluation resulted in the failure to provide material disclosures to Mr. Moreno for Finance Charges, Amount Financed, and APR. The charges which were improperly excluded from computation of Finance Charges and/or improperly included in the Amount Financed include but are not limited to the following: (1) the Appraisal Fee of $500.00, which was unreasonable in whole or in part because excessive and/or an appraisal did not take place; (2) Broker Fees in the amount of $1,263.40 were disclosed as paid directly from Lender to Broker when in fact they were paid by Mr. Moreno; (3) $1,230 title insurance fees, which were excessive at least by 50 % because Mr. Moreno was entitled to receive a discounted re-issue rate for a refinancing which took place less than 6 months after a prior closing for the same property; (4) $13,172 payoff amount for debt to other unsecured creditors, because Mr. Moreno was required to make the payoffs in order to obtain a loan; (5) $20-$115 of recording fees, which were excessive and/or were charged without corresponding fees incurred for the closing; (6) $430 on balance of homeowners policy; (7) $617 of 4 advance monthly payments on new and/or excessive homeowners policy.

8. **FAILURE TO ACCURATELY DISCLOSE FINANCE CHARGES, AMOUNT FINANCED, AND APR (Loan # 11811597)** – The disclosures undervalue Finance Charges by more than $35 and this undervaluation resulted in the failure to provide material disclosures to Mr. Moreno for Finance Charges, Amount Financed, and APR. The charges which were improperly excluded from computation of Finance Charges and/or improperly included in the Amount Financed include but are not limited to the following: (1) $195 recording fees; and (2) $307.50 in title insurance fees, both of which were unnecessary and/or excessive. Because of the loan splitting that took place where one loan was split in two, and because Mr. Moreno paid title insurance fees and recording fees in Loan # 11766492, these fees were pure duplication and unnecessary. Alternatively some or all were excessive as a result of the loan splitting.

9. **FAILURE TO PROVIDE MATERIAL AND OTHER DISCLOSURES** – Proper disclosures were not otherwise provided to Mr. Moreno under the Massachusetts Consumer Credit Cost Disclosure Act and TILA.

10. **TIMING OF DISCLOSURES** – General Closed End Transaction Disclosures were not provided to Mr. Moreno prior to consummation, see, e.g., Reg Z 226.17(b), additional disclosures required for variable rate transactions were not provided to Mr. Moreno at the time of his application, see, e.g., Reg Z 226.19(b), additional disclosures were not provided to Mr. Moreno at or before the time of variable rate adjustments after the closing of the Loan, see, e.g., Reg Z 226.20(c). Upon information and belief, Mr. Moreno received incomplete and inaccurate disclosures only after he was presented for signature with the loans/mortgages for which they were given.

11. **BALLOON PAYMENT** – Mr. Moreno did not ask for a loan with a balloon payment but was presented with a balloon payment in Loan # 11766492 on the day of the transaction. Due to loan splitting both Loans must be considered to contain the same balloon payment.

12. **VARIABLE RATE DISCLOSURE-** Mr. Moreno was never provided with a Variable Rate Disclosure. See, e.g., Reg. Z, § 226.18(f)(2).

13. **PAYMENT SCHEDULE ("Initial Amortization Schedule" for Loan No. 11766492)-** This payment schedule given to Mr. Moreno is not accurate, clear and conspicuous, or consistent with other disclosures or contract documents. The changes in payment amount over the 360 months do not show changes that would reflect a variable rate change every 6 months after the first 2 years nor do they reflect that said payment amounts could get as high as might be required with an interest rate of 14.25 %, as is the case under the contract. In addition, the headings indicate alternatively that the term is 480 months and 360 months. The statement that the term is 480 months is inaccurate and is confusing in that the other documents show the total term to be 360 months.

As a result of your receipt of this Notice, the mortgages for both Loans are now void by operation of law. Please immediately provide me with written confirmation of the discharge of Mr. Moreno's mortgages for these two Loans and the termination of foreclosure proceedings. Furthermore, please note that all of the above constitute

6

unfair and deceptive trade practices according to Massachusetts General Laws ch. 93A, §§ 1, et seq.

## II.   OTHER BASES FOR DEMAND UNDER CHAPTER 93A OF THE MASSACHUSETTS GENERAL LAWS

1.  At all relevant times the Broker was an agent or affiliate of the Creditor/original Lender. The Broker/Creditor solicited Mr. Moreno at church. Mr. Moreno requested one loan at a fixed rate at a lower interest rate and amount than his then current mortgage. Said Broker/Creditor then promised one fixed rate loan that would be at a lower interest rate and amount than his then current mortgage. Broker/Creditor ended up presenting Mr. Moreno TWO loans on the day of the closing for more money than he currently owed on his then existing mortgage and the highest amount possible according to an appraisal of the property in the amount of $615,000.00. Said appraisal either did not take place, but was rather an extrapolation by the Broker/Creditor, or it did take place. In either case, it was grossly inflated in order to have Mr. Moreno borrow as much as possible so that the Broker and Creditor fees and income derived would be financed and increased as much as possible. Whether or not the Broker was Creditor's agent, Creditor knew of this inflated value of the property. The Loans actually presented on the day of the closing also required Mr. Moreno to pay off unsecured debts and obtain certain property insurance that was more expensive than his then current insurance policy. They also required that Mr. Moreno take "cash out" from the refinancing of approximately $15,000 despite the fact that he did not request this. The purpose of all of these requirements was to increase the total amount loaned so the total amount financed would reach the inflated appraisal price of $615,000.00 with the result that the Broker and the Creditor would increase their fees/finance charges/total payments. Additional manipulation of information concerning Mr. Moreno's assets, debt, and income also took place at the time of his credit application. Broker/Creditor had filled out Mr. Moreno's credit application. For example, either Mr. Moreno asked for a loan amounting to no more than $123,000 or the credit application contained a loan request of only that amount in order to get Mr. Moreno to qualify for refinancing. In addition, Mr. Moreno was not required to provide proof of income/assets (a no documentation loan). Alternatively, the income/debt/assets listed on the credit application by the Broker/Creditor was false, manipulated, or a misrepresentation of the true state of Mr. Moreno's financial affairs. Any Assignee(s) that may exist for said Loan(s) either knew or had reason to believe all of these facts at the time it/they purchased the Loan(s).

2.  The Loan(s) contain a balloon payment and are purely based upon the purported amount of collateral rather than any ability of Mr. Moreno to be able to make all payments under the Loan(s) including the balloon payment.  Proper disclosures concerning said balloon payment were not provided to Mr. Moreno prior to the transaction. The balloon payment for such a low income client, whose only main asset was the property itself was an unfair and deceptive trade practice.

3.  Due to loan splitting, the Loan(s) duplicated finance charges and/or points and fees, and/or amounts that would have been properly included in Amount Financed. Said charges would not have existed or been duplicated had one

7

loan/transaction taken place. This loan splitting increased the cost to Mr. Moreno of the total refinancing, total finance charges, and the separate disclosures were violations of chapter 93A because they prevented the comparison of loans for the similar loan and/or were confusing, ambiguous or too complicated for a layperson to comprehend what was occurring.

4. To the extent the original Lender did not include certain notices concerning assignee liability to Assignees, said failure constitutes a violation of chapter 93A.

5. To the extent the Broker was an independent contractor and not an agent of the original Lender, the original Lender's communications with and prior contact with said Broker or others like him through the Lender's various departments, such as underwriting department, as well as the review of any other sources of information by said original Lender, resulted in the original Lender having knowledge or reason to know of the Broker's conduct in originating the Loan(s) and all other unfair or deceptive conduct and facets of the Loan(s) in question, including but not limited to the direct solicitation of Mr. Moreno and goal of having him refinance his mortgage only 6 months after a prior refinancing at a higher rate for a greater total loan amount.

6. The Loan(s) either separately or together constitute an unfair or deceptive and predatory loan pursuant to Commonwealth v Fremont, Investment & Loan, 452 Mass. 733, 739 (2008), because they doomed Mr. Moreno to foreclosure unless real estate prices kept rising and including but not limited the following the following additional ways: (1) the Loan(s) started out with an introductory rate and provided for increased rates every 6 months after two years; (2) the introductory rate was at least 3 percent below the fully indexed rate; (3) Mr. Moreno's debt to income ratio was more than 50%, alternatively, the debt to income ratio was more than 50% once the introductory rate expired; (4) the Loan(s) to value ratio was 100%; (5) it contained a balloon payment of over $340,000 after 30 years of payments. Although Loan # 11811597 was not an ARM loan, it was inextricably linked and a part of Loan # 11766492, because both were made by the same lender, on the same day, to the same borrower, and the two loans were specifically split, where Loan # 11766492 was 80% of the total loan amount and Loan # 11811597 was 20% of the total loan amount so as to be able to lend to Mr. Moreno at a 100% loan to value ratio without any down payment by him. Again, the loan splitting in this fashion was so that all parties could increase their fees with a larger financed amount. As a result, Mr. Moreno was doomed to default under the Loan(s) and also to foreclosure unless real estate prices kept rising. Furthermore, the Broker/Creditor and any Assignees also knew or had reason to believe that at the time of the transaction real estate prices had peaked.

7. The disclosures required under HOEPA and Reg. Z 226.32(c) were never provided to Mr. Moreno.

8. After Mr. Moreno's default under the Loan(s), a foreclosure action was commenced on or about April 18, 2008 by Harmon Law Office (hereinafter "Harmon") on behalf of Property Asset Management, Inc. (hereinafter "PAM") as a result of Mr. Moreno's

8

default under Loan # 11766492. This foreclosure action and all acts/omissions of both Harmon and PAM associated with it were unfair and deceptive in one or more of the following ways: (1) PAM had no standing to conduct a foreclosure of the property; (2) PAM and Harmon knew or had reason to believe same; (3) neither PAM nor Harmon obtained any underlying documents showing that PAM had standing to conduct the foreclosure, including but not limited to any endorsed Notes, assignments or any other documents reflecting standing; (4) PAM/Harmon knew or had reason to believe the Loan was unfair, deceptive, and otherwise unlawful as described above; and (5) filing false or misleading documents in court in order to have the court/opposing parties assume PAM was a proper party in interest to foreclose.

9. PAM/Harmon also acted unfairly or deceptively *prior to* instituting said foreclosure action in one or more of the following ways: (1) dunning Mr. Moreno for payment to PAM when PAM had no right to the debt; (2) recording notices to foreclose or other associated documents at the Registry of Deeds; (3) refusing to consider a request for modification of the Loan; and (4) seeking and obtaining relief from stay in Mr. Moreno's underlying Chapter 13 bankruptcy in order to file the foreclosure action and conduct the foreclosure.

10. PAM/Harmon also acted unfairly or deceptively *after* instituting said foreclosure action in one or more of the following ways: (1) seeking to obtain relief from the automatic stay after Mr. Moreno was successful in having the stay reinstated on or about December 7, 2009; and (2) filing false or misleading documents in court in order to have the court/opposing parties assume PAM was a proper party in interest to foreclose.

11. Litton Loan Servicing LP (hereinafter "Litton") acted unfairly or deceptively in one or more of the following ways: (1) refusing to consider a request for modification from Mr. Moreno; and (2) filing a Proof of Claim in the above referenced underlying Chapter 13 bankruptcy case.

12. Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS") acted unfairly or deceptively in one or more of the following ways: (1) recording at the Suffolk County Registry of Deeds a purported "Assignment" falsely indicating it had the authority to assign the Note for Loan # 11766492 to PAM and that it did assign said Note to PAM; and (2) recording at the Suffolk county of Registry of Deeds a purported "Assignment" falsely indicating it had the authority to assign the mortgage for Loan # 11766492 to PAM and that it did assign said mortgage to PAM.

All of the above acts/omissions described throughout this entire document discretely and in their totality amount to violations under Chapter 93A of the Massachusetts General Laws for which Mr. Moreno is entitled to treble damages and attorneys' fees. Furthermore, even if one party's acts/omissions do not technically violate Chapter 93A, said party's acts/omissions constitute violations as aiders and abetters of others' conduct. They also do so to the extent they, in

conjunction with those of one or more other parties, in totality amount to said violations as a result of direct or indirect collusion with others.

Mr. Moreno is not required to make a Demand under Chapter 93A prior to instituting a lawsuit against you to the extent his claims are in the nature of counterclaims or recoupment as a result of a foreclosure action instituted on or about April 18, 2008 in the Massachusetts Land Court by Harmon Law Office on behalf of Property Asset Management, Inc. or as a result of Proofs of Claim filed by you or on your behalf in the Massachusetts Bankruptcy Court Cases referenced above. A chapter 93A Demand is also not necessary if you do not maintain a place of business or keep assets in the Commonwealth.

You have the opportunity to make a reasonable written settlement offer within thirty days of your receipt of this letter. If litigation ensues you will be liable for treble damages and attorneys' fees pursuant to chapter 93A of the Massachusetts General Laws.

 _Mr. Moreno does not waive his right to further supplement this Notice and Demand for Relief at any time._

Very truly yours,

Sara Discepolo

Encl.

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT District of Massachusettes, Boston Division | PROOF OF CLAIM |
|---|---|

| | |
|---|---|
| **Name of Debtor**<br>Simeon Moreno -- SS No. XXX-XX-5201 | **Case Number**<br>0817715 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| **Name of Creditor** (The person or other entity to whom the debtor owes money or property):<br>Resurgent Capital Services, LP as Svcr for Anson Street, LLC<br><br>**Name and address where notices should be sent:**<br>Resurgent Capital Services, LP as Svcr for Anson Street, LLC<br>P.O. Box 10675<br>Greenville, SC 29603-<br><br>Telephone number: (800)365-7107 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |

THIS SPACE IS FOR COURT USE ONLY

| | |
|---|---|
| Account or other number by which creditor identifies debtor:<br>0267758499 | Check here ☐ replaces ☐ amends   a previously filed claim, dated: _____ if this claim |

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☒ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS # _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)              (date)

| **2. Date debt was incurred:**<br>01/29/2007 | **3. If court judgment, date obtained:** |
|---|---|

**4. Total Amount of Claim at Time Case Filed: $** _____0_____ ___133,870.24___ ___0___ ___133,870.24___
  (Unsecured)        (Secured)       (Priority)       (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff). MERS Number:

Brief Description of Collateral: 100136300118115970
- ☒ Real Estate    ☐ Motor Vehicle
- ☐ Other _____

Value of Collateral: $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ ___11,272.77___

**6. Unsecured Nonpriority Claim $** _____
- ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority  $ _____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507 (a) (3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507 (a) (4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507 (a) (6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507 (a) (7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507 (a) (8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4-1-07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.
Interim adjustment pursuant to Public Law No. 109-8, enacted 4-20-2005

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| **Date**<br>11/13/2008 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>/s/ Cqutrika Sloan |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Exhibit 'A'

Case No.: 0817715

Debtors:  Simeon Moreno -- SS No. XXX-XX-5201

Address:  5 Maple Street
West Roxbur, MA  02132

Loan No.: 0267758499

On filing petition 10/13/08 debtor(s) owed claimant $133,870.24 plus  interest on arrearages at 11.37500% per annum from 01/01/08.

ARREARAGES owed as of 10/13/08, the date of filing of the petition.

| From | To | Type of Charge | # | Unit Charge | Total |
|------|----|----|---|---|---|
| 02/01/2008 | 10/01/2008 | Payment | 9 | 1,206.34 | 10,857.06 |
| 02/01/2008 | 10/01/2008 | Late Charge | 9 | 36.19 | 325.71 |
| | | Appraisal | - | 55.00 | 55.00 |
| | | Foreclosure Fees | - | 35.00 | 35.00 |
| | | | - | | - |
| | | | | Subtotal: | 11,272.77 |
| | | | | **TOTAL:** | **11,272.77** |

The above figures represent the delinquency at the time of filing and do not reflect payments received after the date of the filing of the bankruptcy.

Late charges accrue to the account when payments are received 15 days past the payment due date.

# Exhibit 'A-1'

Case No.: 0817715

Date:        11/13/2008

Debtors:    Simeon Moreno -- SS No. XXX-XX-5201

Address:    5 Maple Street
            West Roxbur, MA  02132

Loan No.:    0267758499

On filing petition 10/13/08 debtor(s) owed claimant $122,536.05.

The Total Debt owed at petition:

| | |
|---|---:|
| Principal Balance | 122,536.05 |
| Interest | 10,918.48 |
| Appraisal | 55.00 |
| Foreclosure Fees | 35.00 |
| Late Charge | 325.71 |
| **Total Debt:** | **133,870.24** |

The above figures represent the amount owed at the time of filing and do not reflect payments received after the date of the filing of the Bankruptcy.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE District of Massachusettes, Boston Division**

In reference to:
DEBTORS NAME:         Simeon Moreno;


In Proceedings under:
CHAPTER:              13
BANKRUPTCY CASE#:     0817715


Exhibit(s): SUMMARY AND CERTIFICATE OF SERVICE

The following exhibits(s) in reference to the
    __ Transfer of claim
    _x_ Proof of claim

filed by Resurgent Capital Services, LP are available upon request.  Resurgent Capital Services, LP will
bring exhibit(s) to any scheduled Court hearing on this matter.

    _x_ MORTGAGE OR DEED OF TRUST
    __ ASSIGNMENT
    _x_ NOTE OR SECURITY AGREEMENT
    __ ASSIGNMENTS OF NOTE
    __ LEGAL DESCRIPTION
    __ AFFIDAVIT OF LOST INSTRUMENT
    __ UNSECURED CLAIM DETAIL SHEET
    __ TITLE
    __ UCC FINANCING STATEMENT


Legal Services Coordinator:      Cqutrika Sloan

Telephone Number:                (800) 365-7107

Address:                         Resurgent Capital Services, LP as
                                 servicer for Anson Street, LLC
                                 P.O. Box 10675  (15 S. Main Street, Suite 401)
                                 Greenville, SC 29603

Form B10 (Official Form 10) (7/05)   Case 08-17715   Claim 2-1   Filed 11/13/08   Desc Main Document   Page 1 of 3

| UNITED STATES BANKRUPTCY COURT   DISTRICT OF MASSACHUSETTS BOSTON DIVISION | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Simeon Moreno | Case Number: 08-17715-WCH |
|---|---|

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Litton

□ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
Litton Loan Servicing, LP
P. O. Box 829009
Dallas, Texas 75382-9009

Court Claim Number: _____
(if known)

Filed on:

Name and address where payment should be sent (if different from above):
Litton Loan Servicing, LP
P.O. BOX 4387
Houston, Texas 77210-4387

Telephone Number: (800) 247-9727

□ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

□ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $530,168.04

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Money Loaned
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** xxxx2858

**3a.** Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate □ Motor Vehicle □ Other: _____
Describe:

**Value of Property:** not available   **Annual Interest Rate:**

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $39,442.49 **Basis for perfection:** Recordation of Lien

**Amount of Secured Claim:** $530,168.04   **Amount Unsecured** $0.00

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

□ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

□ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

□ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

□ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

□ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

□ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**
$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

| Date:
November 12, 2008 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
/s/ Joe M. Lozano, Jr.  as Creditor's Authorized Agent | FOR COURT USE ONLY |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
5151-N-2835

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 08-17715-WCH |
| SIMEON MORENO | § | |
| | § | CHAPTER 13 |
| | § | |
| | § | JUDGE WILLIAM C. HILLMAN |

**EXHIBIT A**

ITEMIZATION OF CLAIM AND SUMMARY OF SUPPORTING
DOCUMENTS FOR CLAIM OF LITTON LOAN SERVICING, LP, AS SERVICING AGENT FOR LEHMAN
BROTHERS HOLDINGS INC

**SECTION 1. ITEMIZATION OF CLAIM**

A.  Total Debt as of October 13, 2008
- Principal Balance                                           $490,440.51
- Interest from Last Paid Installment                         $33,574.74
- Late Charges                                                $599.22
- Escrow Advance                                              ($0.00)
- Pre-petition Attorney Fees and Costs                        $5,539.29
- Other amounts for Inspection Fees, Appraisal Fees,
  NSF Check Charges, and Other Charges                        $264.00
- Suspense Account Balance                                    ($249.72)

    TOTAL DEBT                                            $530,168.04

B.  Total Arrearage as of October 13, 2008
- Regular Monthly Installments
  January 1, 2008, through October 13, 2008                   $33,289.70
- Late Charges                                                $599.22
- Pre-petition Attorney Fees and Costs                        $5,539.29
- Other pre-petition fees, expenses and charges
  as reflected in 1A above                                    $264.00
- Less Suspense Account Balance                               ($249.72)
- Interest accruing at the contract rate of
  7.75% on pre-petition arrearage if allowed by
  11 USC §1322(e)                                             ($0.00)

    TOTAL ARREARAGES                                      $39,442.49

Name of Creditor: Litton Loan Servicing, LP, as servicing agent for Lehman Brothers Holdings Inc
File Number 5151-N-2835 / poc

## PROOF OF SERVICE

The undersigned attests under the penalties of perjury that a true copy of this Proof of Claim with attachments (unless the attachments are voluminous and in that case a statement to such effect is attached hereto) was served on the Debtor's counsel (or on the Debtor if the Debtor is unrepresented by counsel) on

| November 14 |, 200| 8 |, by:

- ☐ Delivery in person
- ☐ First class mail properly addressed bearing adequate postage
- ☒ Via electronic notification

/s/ Joe M. Lozano, Jr.
Joe M. Lozano, Jr.

Litton
Loan No.:xxxx2858
File No.5151-N-2835

# SARA DISCEPOLO, ESQ.*
## ATTORNEY AT LAW

1050 Winter Street
Suite 1000
Waltham, MA 02451

*Admitted in
Massachusetts,
Pennsylvania &
Connecticut

Tel. (617) 549-4537
Fax (978) 478-4589

Email Address: Sara_Discepolo@verizon.net

December 7, 2009

HAND DELIVERY

Property Asset Management, Inc.
c/o Harmon Law Office
Attorney for Property Asset Management, Inc.

RE:   Simeon Moreno v Property Asset Management, Inc.
      Massachusetts Bankruptcy Court Case No. 09-01378-FJB
      Property Address 5 Maple Street, West Roxbury, MA
      Loan No. 11766492

To Whom It May Concern:

Please be advised that I represent Simeon Moreno in connection with the above
referenced matter. My understanding is that you have scheduled a foreclosure sale
of the above referenced property for December 7, 2009 at 3:00 pm.

This is to notify you prior to said scheduled foreclosure sale that Simeon Moreno
does hereby rescind the above referenced Loan. Specifically he rescinds the
Adjustable Rate Note in the amount of $492,000 dated January 23, 2007 and
Mortgage securing said Note.

Mr. Moreno rescinds the Loan under the federal Truth in Lending Act, see 15
U.S.C. §§ 1601 et seq, and related state statutes, see Mass.Gen.Laws ch. 183C,
§ 18; Mass.Gen.Laws ch. 140D, §§ 10, 33(c), on the basis of the following:

1. Mr. Moreno requested one loan but on the day of the closing/transaction was
   presented with and executed two separate loans (two separate Notes and
   Mortgages) and received two separate disclosures. One for the above
   referenced Loan in the amount of $492,000 and another for a separate loan in
   the amount of $123,000. Mr. Moreno should only have received one disclosure.
2. On the day of the closing/transaction Mr. Moreno was told that his right to
   cancel only existed for 24 hours after said closing/transaction.
3. There is a discrepancy of more than $35 in the disclosures concerning finance
   charges, points and fees, and amount financed. For example, the amount for

Page 2 of 2
December 7, 2009
RE: Notice of Rescission/Simeon Moreno

the Appraisal Fee of $500.00 provided to the mortgage broker, Family Mortgage Company, was not included in the total finance charges disclosed to Mr. Moreno. As a result, all other computations are incorrect. Additional discrepancies are: failure to include amounts for homeowners insurance in finance charges (Mr. Moreno was required to use a certain insurer/certain policy as a condition of the Loan); failure to include payoffs to unsecured creditors in finance charges where said payoffs were required as a condition of the Loan..

4. The Loan also required Mr. Moreno to payoff various unsecured creditors as a condition for the Loan. As a result, Mr. Moreno's Loan was a high cost home mortgage loan under the Massachusetts Predatory Home Loan Practices Act, see Mass.Gen.Laws ch. 183C, §§ 1, et seq. In addition, the Loan had a balloon payment after 30 years of over $370,000. This Loan was predatory in that Mr. Moreno's ability to repay was not considered. His ability to repay considering his income and assets was not considered. Mr. Moreno was doomed to foreclosure.

5. Disclosures were not provided to Mr. Moreno within 3 days of his credit application. Rather, he only received them on the day of the transaction.

You must stop all actions to foreclose against Mr. Moreno's property as a result of receiving this Notice. See 15 U.S.C. §§ 1601 et seq.; Mass.Gen.Laws ch. 183C, § 18; Mass.Gen.Laws ch. 140D, §§ 10, 33(c). As a result of your receipt of this Notice, the mortgage that you base the foreclosure on is now void by operation of law. Please immediately provide me with written confirmation of the discharge of Mr. Moreno's mortgage and the termination of foreclosure proceedings. In addition, you have 20 days from your receipt of this notice to return to Mr. Moreno all monies paid in connection with the terms of the Loan which is the subject of this letter. Your failure to return all monies due and your failure to cease all foreclosure action will subject you to actual and statutory damages, pursuant to federal and state law. See 15 U.S.C. § 1640; Mass.Gen.Laws ch. 140D, § 32. You will also be liable for multiple damages for corresponding violations of Chapter 93A. See Mass.Gen.Laws ch. 140D, § 34.

Please note that Mr. Moreno continues to review the Loan and reserves the right to supplement this Notice of Rescission.

Very truly yours,

Sara Discepolo

Received by:

_____