UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>　　Simeon Moreno,<br><br>　　　　　　　　　　　Debtor | Chapter 13<br><br>Case No. 08-17715-FJB |
| Simeon Moreno,<br>　　　　　　　　Plaintiff,<br><br>　　　　　v.<br><br>Property Asset Management, Inc., GE Money Bank, Harmon Law Offices, PC, Mortgage Electronic Registration Systems, Inc., Anson Street LLC, Litton Loan Servicing Limited Partnership, Barclays Capital, Inc.,<br>　　　　　　　　　Defendants. | Adv. Proc. No. 09-01378-FJB<br><br><br><br>FIRST AMENDED COMPLAINT |

　　　　The Defendants engaged in a scheme to defraud the Plaintiff out of the Plaintiff's largest asset and the one that meant the most to him -- his own home. They intended to accomplish this fraud with predatory loans and an illegal foreclosure. The Plaintiff now seeks his damages and an order rescinding those loans and declaring them discharcheable in bankruptcy. Both the law and equity require nothing less.


THE PARTIES

1.　　　　The Plaintiff is a natural person residing at 5 Maple Street, West Roxbury, Massachusetts.

2.　　　　Upon information and belief, the Defendant, Property Asset Management, Inc. (hereinafter the "PAM"), is a foreign corporation with a principal place of business located at

1271 Avenue of the Americas, New York, New York 10020 and a place of business at 745 7th

Avenue, New York, New York 10019.

3.     The Defendant, GE Money Bank, is a federally chartered savings association with a

principal place of business at 170 West Election Road, Suite 125, Draper UT 84020.

4.     GE Money Bank also has places of business at: 4828 Loop Central Drive, Houston Texas

77081-2226 and 4246 Riverboat Road # 200, Salt Lake City Utah 84123.

5.     The Defendant, Harmon Law Offices, P.C. (hereinafter "Harmon"), is a domestic

professional corporation with a principal place of business at 150 California Street, Newton,

Massachusetts 02458.

6.     At all relevant times, Harmon has acted as the agent of PAM.

7.     The Defendant, Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS"), is

a foreign corporation with a principal place of business at 1818 Library Street, Suite 300, Reston,

Virginia 20190.

8.     At all relevant times, MERS has acted as the agent of PAM.

9.     The Defendant, Anson Street LLC (hereinafter "Anson"), is a foreign corporation with a

principal place of business at 200 Meeting Street, Suite 206, Charleston, South Carolina 29401.

10.     The Defendant, Litton Loan Servicing Limited Partnership (hereinafter "Litton"), is a

foreign limited partnership with a principal place of business at 4828 Loop Central Drive, Suite

600, Houston, Texas 77081.

11.     The Defendant, Barclays Capital, Inc. (hereinafter "Barclays"), is foreign corporation

with a principal place of business at 200 Park Avenue, New York, NY 10166.

## JURISDICTION AND VENUE

12.   This is an adversary proceeding brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

13.   This Court has jurisdiction over this proceeding pursuant to Section 1334 of Title 28 of the United States Code.

14.   This adversary proceeding constitutes a core proceeding pursuant to Section 157 of Title 28 of the United States Code as amended with supplemental jurisdiction of any state law claims concerning the same transaction and events pursuant to Section 1367(a) of Title 28 of the United States Code.

15.   This Court has jurisdiction over this proceeding pursuant to the Fair Debt Collection Practices Act. See 15 U.S.C. §§ 1692, et seq.

16.   This Court has jurisdiction over this proceeding pursuant to the Racketeer Influenced and Corrupt Organizations Act. See 18 U.S.C. §§ 1961 et seq.

17.   This Court has jurisdiction over this proceeding pursuant to Section 2201 of Title 28 of the United States Code.

18.   Venue in this District is proper pursuant to pursuant to Section 1409 of Title 28 of the United States Code, because the Debtor resides in Massachusetts, the subject real estate is located in Massachusetts, and the transaction that is the basis for this action took place in Massachusetts.

## STATEMENT OF FACTS

19.   On or about June 3, 1997, the Plaintiff first acquired residential real property located at 5 Maple Street, West Roxbury, Massachusetts (hereinafter the "property").

20.     The real property is a two-family dwelling. The Plaintiff resides in one of the units.

21.     The Plaintiff also is the owner of a barber shop in his local community and speaks only Spanish.

22.     Sometime in or around December of 2006, a mortgage broker that spoke Spanish approached the Plaintiff at his church for the purpose of inducing the Plaintiff to refinance his then-existing mortgage on the property. That mortgage had been placed on the property as a result of a refinancing that took place only six months before.

23.     At all relevant times, the mortgage broker spoke Spanish with the Plaintiff and the Plaintiff relied on the mortgage broker for information concerning the refinancing he was proposing.

24.     As a result of being persuaded by the mortgage broker, the Plaintiff agreed to apply for the loan for the purpose of refinancing his then-existing mortgage debt.

25.     Said mortgage broker inflated the Plaintiff's income on a credit application for said refinancing and otherwise manipulated the data therein in order to qualify the Plaintiff for the highest amount for a loan to refinance the then-existing mortgage on his property. This was done to maximize charges, fees, and compensation to both the mortgage broker and original creditor. The original creditor knew this and either acquiesced or encouraged such actions.

26.     The Plaintiff thereafter attended a purported closing for the refinancing of the prior mortgage on or about January 23, 2007. At said purported closing and prior thereto, the mortgage broker lied to the Plaintiff concerning the terms of the loan, including but not limited to telling the Plaintiff that he would have only one loan with one payment and that his payment would be less than the payment that was due under his then-existing mortgage.

27.    At said purported closing, the mortgage broker also told the Plaintiff that his right to cancel the transaction would expire in 24 hours.

28.    GE Money Bank,  the original creditor, and all its assignees, knew or had reason to know of all conduct by the mortgage broker and that the alleged appraisal conducted for the property in connection with the loan(s) was inflated.

29.    At the time of said purported closing, the real estate bubble had peaked and the original creditor, mortgage broker, and all assignees of the loans knew or had reason to know this.

30.    According to documents recorded at the Suffolk County Registry of Deeds that purport to reflect the refinancing,

- On or about January 23, 2007, the Plaintiff purportedly gave a mortgage (hereinafter "First Mortgage") to MERS as "nominee" of GE Money Bank. Said mortgage supposedly secures a Note given by the Plaintiff to GE Money Bank in the amount of $492,000 (hereinafter "First Note"). A true and accurate copy of the document purporting to be the First Mortgage is attached hereto as Exhibit "A."

- On or about January 23, 2007, the Plaintiff purportedly gave a mortgage (hereinafter "Second Mortgage") to MERS as "nominee" of GE Money Bank. Said mortgage supposedly secures a Note given by the Debtor to GE Money Bank in the amount of $123,000 (hereinafter "Second Note"). A true and accurate copy of the document purporting to be the Second Mortgage is attached hereto as Exhibit "B."

31.    In or around February of  2007, the Plaintiff received demands for payment for two separate loans. This was the first time the Plaintiff became aware that the January 23, 2007

transaction contained not one, but two, separate loans and that the total payments for them

would exceed the payment that was due under his prior mortgage.

32.     On or about April 18, 2008, PAM, through its counsel, Harmon, filed a complaint to

foreclose the First Mortgage in the Massachusetts Land Court (hereinafter "Land Court action")

and recorded a notice of foreclosure for said action at the Suffolk County Registry of Deeds.

33.     Upon information and belief, PAM/Harmon at all times therein represented that PAM

was a creditor of the Plaintiff, the mortgagee under the First Mortgage, and a proper party to

conduct a foreclosure of the property.

34.     On or about June 9, 2008, PAM/Harmon recorded at the Suffolk County Registry of

Deeds a document signed by MERS purporting to be an assignment of the First Mortgage and

First Note from MERS to PAM. A true and accurate copy of said document is attached hereto as

Exhibit "C."

35.     The date MERS purportedly signed said document was April 30, 2008, twelve (12) days

*after* PAM filed the complaint to foreclose in the Land Court action.

36.     At no time did MERS ever have the power or right to assign the First Note to PAM.

37.     At no time did MERS ever have the power or right to assign the First Mortgage to PAM.

38.     PAM/Harmon recorded said document for the purpose of conducting a foreclosure of the

property.

39.     PAM/Harmon in fact scheduled a foreclosure sale of the property to take place on or

about October 17, 2008.

40.     On or about October 13, 2008 the Debtor filed for protection under chapter 13 of the

Bankruptcy Code in Case No. 08-17715 (hereinafter the "Bankruptcy Case").

41.    On or about March 31, 2009, PAM/Harmon moved in the Bankruptcy Case for relief from the automatic stay (hereinafter "Motion for Relief from Stay") so that PAM could continue the proceedings in the Land Court action, receive a judgment therein, and conduct a foreclosure of the property.

42.    In that filing, PAM, once again through its counsel, Harmon, represented that it was the holder of the First Mortgage and also a secured *creditor* of the Plaintiff.

43.    Thereafter, the Court granted PAM's Motion and PAM then rescheduled the foreclosure to take place on or about November 2, 2009 and/or December 7, 2009.

44.    On or about September 29, 2009 the Land Court entered judgment in PAM's favor.

45.    On or about December 2, 2009, the Plaintiff filed this adversary proceeding and sought to enjoin PAM's foreclosure or reinstate the automatic stay.

46.    On December 7, 2009, the Court heard the Plaintiff and PAM at oral argument, and for the first time, PAM apprised the Court and the Plaintiff that it was Lehman Brothers Holdings, Inc. (hereinafter "Lehman") that owned a beneficial interest in the First Note, not PAM. PAM still claimed to be entitled to foreclose as a mere assignee of MERS.

47.    At no time prior to December 7, 2009 had PAM or Harmon ever informed the Plaintiff that Lehman had purchased the beneficial ownership rights to the First Note.

48.    At no time prior to December 7, 2009 had any person, servicer, creditor or former creditor, ever notified the Plaintiff that Lehman had purchased the beneficial ownership rights to the First Note.

49.    Upon information and belief, at the time Lehman purchased the First Note and/or First Mortgage or otherwise received a transfer of same, any alleged debt due thereunder was already in default.

50.     Lehman has been a debtor under Chapter 11 of the Bankruptcy Code ever since it filed

for bankruptcy protection on or about September 15, 2008 in the United States Bankruptcy

Court, Southern District of New York, captioned *In re Lehman Brothers Holdings, Inc.*, Case

No. 08-13555 (JMP) (hereinafter the "Lehman Bankruptcy Case").

51.     The Court in the Lehman Bankruptcy Case set a claims bar date for September 22, 2009,

which is almost three (3) months *prior* to the December 7, 2009 hearing at which the Plaintiff

first became aware that Lehman could be the owner of the First Note and/or the First Mortgage.

52.     As a result of the misrepresentations by both PAM and Harmon and their conduct in

disguising PAM as the creditor for the First Note/First Mortgage, the Plaintiff may be forever

barred from asserting claims against Lehman related to the First Note and/or the First Mortgage.

53.     After hearing the Plaintiff and PAM at oral argument on December 7, 2009, this Court

reinstated the automatic stay and scheduled an evidentiary hearing on PAM's Motion for Relief

from Stay for January 7, 2010.

54.     On or about December 11, 2009, PAM filed a motion requesting that the Court reconsider

its decision again lift the automatic stay pursuant to PAM's Motion for Relief from Stay. It did

this despite the fact that said Motion fraudulently asserts PAM is a *creditor*.

55.     Despite knowing that it would be unable to produce documents showing its authority to

foreclose the First Mortgage at the January 7, 2010 evidentiary hearing, PAM and Harmon

rescheduled the foreclosure sale of the property for January 18, 2010.

56.     PAM was in fact unable to produce said documentary evidence by the January 7, 2010

hearing date, and on or about January 4, 2010, requested that this Court continue the evidentiary

hearing.

57.    Upon information and belief, PAM has no intention of appearing at or presenting evidence at the evidentiary hearing rescheduled by the Court.

58.    It also, by that time, had 59.   On or about January 4, 2010, PAM filed in this case a document purporting to be the First Note endorsed in blank by GE Money Bank.  Upon information and belief, said endorsement, if it in fact occurred, did not take place until sometime after December 7, 2009.

59.    Upon information and belief, none of the Defendants can produce an original copy of the First Note as purportedly endorsed by GE Money Bank.

60.    At no time has PAM ever filed a Proof of Claim in the Bankruptcy Case concerning any purported rights as creditor under the First Note and/or First Mortgage.

61.    The only Proof of Claim filed in the Bankruptcy Case that references either the First Note or the First Mortgage is a Proof of Claim filed by Litton. In said Proof of Claim, Litton claims that it is the "creditor" of the Plaintiff as "servicer" for Lehman for a "secured" claim of over $530,000 and it attaches a purported copy of the First Mortgage to said Claim.

62.    The only Proof of Claim filed in the Bankruptcy Case that references either the Second Note or the Second Mortgage is a Proof of Claim filed by Resurgent Capital Services, LP (hereinafter "Resurgent") as creditor for the Second Note and Second Mortgage. It also states therein that it is "servicer" for Anson Street LLC.

63.    As  mere "servicers" for others, neither Litton nor Resurgent have any right to file a Proof of Claim in the Bankruptcy Case, because they are not "creditors." Said Proofs of Claim should therefore be stricken from the Bankruptcy Case docket.

64.    Upon information and belief, on or about September 22, 2008, Barclays purchased certain assets owned by Lehman. To the extent said assets include the First Note and/or First Mortgage, the Plaintiff asserts claims in these proceedings against Barclays as well.

65.    Pursuant to <u>Commonwealth v Fremont Investment & Loan</u>, 452 Mass. 733 (2008), the First Note/First Mortgage and Second Note/Second Mortgage are unfair and deceptive both separately and taken together, and otherwise predatory, as follows:

a.  The First Note is an ARM loan with an introductory rate period of two years;

b.  Said introductory rate was at least three percent below the fully indexed rate;

c.  The Debtor was a borrower for whom the debt-to-income ratio would have exceeded fifty percent had the Debtor's debt been measured by the monthly payments that would be due at the fully indexed rate under the First Note

d.  The Debtor was a borrower for whom the debt-to-income ratio would have exceeded fifty percent had the Debtor's debt been measured by the monthly payments that would be due at the fully indexed rate under the First Note in combination with the payments that were also due at the time under the Second Note.

e.  The loan-to-value ratio for the First Note was 100%.

f.  The loan-to-value ratio for the First Note and Second Note was 100%.

g.  Additionally, the First Note requires a balloon payment after 30 years in the amount of approximately $341,717.19.

h.  Not only was Debtor's income less than 50% of total debt payments at the fully indexed rate under the First and Second Notes, his income was also less than 50% of total debt payments at their inception.

i.   The First Note/First Mortgage and Second Note/Second Mortgage constitute one loan

and the separation was improper loan splitting. They were both presented to the Plaintiff at

the same closing transaction on January 23, 2007 and (1) the amount of the First Note is 80%

of the total loan amount; and (2) the amount of the Second Note is 20% of the total loan

amount. The loan was structured this way in order to lend 100% of the value to the Plaintiff

without requiring a down payment from him in order to increase fees and charges to the

Plaintiff.

66.    On December 28, 2009, the Plaintiff sent the Defendants notice that he was exercising his

right to rescind the transaction and making demand under chapter 93A of the Massachusetts

General Laws. A true and accurate copy of the notice sent to all of the Defendants is attached

hereto as Exhibit "D."

67.    All allegations contained in the document attached hereto as Exhibit "D" are hereby

incorporated by reference.


## CLAIMS FOR RELIEF

### JOINT VENTURE, CONCERTED ACTION, AIDING AND ABETTING, AGENCY
### (PAM AND LEHMAN)

68.    PAM is not a co-debtor in the Lehman Bankruptcy Case or a debtor under the

Bankruptcy Code in any other case.

69.    At all relevant times, PAM and Lehman have shared the same principal place of business

address.

70.    Prior to all conduct described in this Complaint, PAM and Lehman entered into an

agreement whereby PAM would take all action to pursue defaulted mortgage debt owned by

Lehman, including but not limited to conducting foreclosures of property securing the debt.

71.    The purpose of the agreement was to shield Lehman from liability for potential claims asserted by residential mortgage debtors, such as potential claims related to the manner of loan transactions, terms of loans, or the manner of proceeding to collect on defaulted mortgage debt, while Lehman continued to enjoy the automatic stay protection of the bankruptcy court in the Lehman Bankruptcy Case.

72.    They agreed that PAM would conduct said foreclosures, and if PAM was the high or only bidder at such a sale, PAM would then purchase and develop the property, sell it at a profit, or otherwise act for the purpose of obtaining a profit as a result of its purchase of distressed real estate.

73.    They also agreed that if PAM was not the high or only bidder, that all or a portion of sale proceeds would be "upstreamed" to Lehman.

74.    The agreement envisioned that, regardless of outcome, both Lehman and PAM would share in the losses and profits from such foreclosure activity on defaulted residential mortgage debt owned by Lehman, and that PAM's profits may result from purchasing property at greatly undervalued distress-sale prices or as a result of its sharing in foreclosure fees charged to the defaulted mortgagor. The agreement envisioned that Lehman would share in the profits by receiving proceeds from foreclosure sales forwarded from PAM while protecting itself from liability associated with said debt collection and sales.

75.    In this case, PAM is liable as a joint venturer with Lehman as a result of the fact that it, in pursuing foreclosure of the property, agreed to associate itself with Lehman in a business activity, share in the profits and losses of the venture, jointly controlled the objectives of the undertaking and of the means of achieving the objectives, and made a contribution to the assets of the venture.

76.    In this case, PAM is liable for concert of action with Lehman as a result of its agreement with Lehman to perform the foreclosure and achieve certain financial results as a result of same and because its own conduct is tortious.

77.    In this case, PAM is liable as aiding and abetting Lehman's unlawful aim of shielding itself from liability while partaking of profits related to improper foreclosure as a result of providing substantial assistance or encouragement to Lehman and as a result of PAM's unlawful intent to share in profits that result from improper foreclosure activities.

78.    Alternatively, at all relevant times, PAM has acted as the agent of Lehman.

### JOINT VENTURE, CONCERTED ACTION, AIDING AND ABETTING (PAM, MERS, HARMON, LITTON)

79.    MERS signed a document requested by PAM and/or Harmon and/or Litton that falsely stated it had assigned the First Note and First Mortgage. It knew the Defendant(s) would record said document at the Suffolk County Registry of Deeds for the purpose of conducting an illegal foreclosure of the property.

80.    At all relevant times, Harmon has taken action as the legal representative of PAM for the purpose of conducting the foreclosure of the property.

81.    Litton has filed a false Proof of Claim in the Bankruptcy Case in which it claims to be the creditor and has otherwise asserted claims against the Plaintiff, in said Proof of Claim and otherwise, for fees and charges related to illegal foreclosure actions taken against the Plaintiff by PAM and Harmon.

82.    MERS, Harmon and Litton are joint venturers with PAM and/or Lehman because they agreed to associate themselves in a business activity, they shared in the profits and losses of the venture via fees collected by them in assisting PAM, they jointly controlled the objectives and

the means of achieving the objectives of foreclosure, and they made a contribution to the assets of the venture.

83.    MERS, Harmon and Litton are liable for their concerted action with PAM and/or Lehman as a result of their agreement to perform acts or achieve the results described, i.e., foreclosure, and their own conduct was tortious.

84.    MERS, Harmon and Litton are liable for aiding and abetting PAM and/or Lehman because they provided substantial assistance or encouragement to them and had an unlawful intent, i.e., sharing in the collection of improper fees associated with an illegal foreclosure.


<u>AGENCY</u>
<u>(MERS, HARMON, LITTON)</u>

85.    Alternatively, at all relevant times, MERS, Harmon, and/or Litton were acting as the agents of PAM and/or Lehman.


<u>CLAIMS RE: DEBT COLLECTION/FORECLOSURE</u>

<u>Count I – Abuse of Process</u>
<u>Against: PAM, MERS, Harmon and Litton</u>


86.    The Plaintiff hereby reiterates and repeats as if fully set forth herein the allegations contained in paragraphs 1-85.

87.    The Defendants used legal process in the Massachusetts Land Court to obtain a Judgment to foreclose against the real property.

88.    The Defendants used legal process in this Court in order to continue PAM's foreclosure of the property.

89.    The Defendants knew or had reason to know that the claim against the Plaintiff and the foreclosure of the property were groundless.

90.    Their conduct in using legal process or assisting each other in doing so was for an ulterior or illegitimate purpose.

91.    Said use of legal process has resulted in damage to the Plaintiff.


Count II – Fair Debt Collection Practices Act (15 U.S.C. §§ 1692, et seq.)
Against PAM, MERS, Harmon, Litton

92.    The Plaintiff hereby reiterates and repeats as if fully set forth herein the allegations contained in paragraphs 1-91.

93.    The Defendants regularly collect or attempt to collect, directly or indirectly, consumer debts asserted to be owned by other persons.

94.    The Defendants individually, together, or as agents of others, took actions to foreclose on the First Mortgage for the purpose of conducting a foreclosure sale of the Plaintiff's property, including but not limited to sending correspondence to the Plaintiff threatening foreclosure as well as utilizing legal process for the ultimate purpose of conducting a foreclosure.

95.    In taking said actions, the Defendants made misrepresentations concerning their status as creditors or that of others on whose behalf they purported to be acting, their authority to foreclose the First Mortgage, and the charges and fees due from the Plaintiff.

96.    The Defendants sought to assess fees and charges against the Plaintiff for legal actions to collect on debt, including actions in furtherance of foreclosure, when none of them or those on whose behalf they purported to act had any beneficial rights of ownership in the debt.

97.    The Defendants' actions caused harm to the Plaintiff.

Count III – Fraud and/or Fraudulent Concealment
Against PAM, MERS, Harmon, and Litton

98.     The Plaintiff hereby reiterates and repeats as if fully set forth herein the allegations

contained in paragraphs 1-97.

99.     PAM and Harmon made false representations of material fact both to the Plaintiff in

making demand for payment and also in two separate legal proceedings.

100.    PAM and Harmon concealed from the Land Court and this Court that PAM was not the

owner of the debt or a creditor of the Plaintiff.

101.    Litton made false representations of material fact when it made demand on Plaintiff for

payment on behalf of those who had no rights to debt and also when it asserted fees and charges

on the Defendant's account for the First Note and/or First Mortgage related to the improper

actions to foreclose.

102.    MERS made false representations of material fact when it signed a document purporting

to be its assignment to PAM of the First Note and the First Mortgage. MERS knew or had reason

to believe at the time of signing said document that it would be recorded at the registry of deeds

and used in support of a foreclosure action by PAM.

103.    All of the misrepresentations made by the Defendants were intentional for the purpose of

profiting from the foreclosure of the property, including but not limited to purchasing the

property at distress-sale price at foreclosure and charging fees related to same.

104.    PAM had no right to the underlying debt and no authority to foreclose, contrary to

representations made by it, Harmon and Litton.

105.    At the time the Defendants made false representations of fact, they knew them to be false.

106.    They made such false representations to induce the Plaintiff to act on them, such as to induce the Plaintiff to give up the property through deed in lieu of foreclosure and/or making payment.

107.    The Plaintiff reasonably relied on these misrepresentations to his detriment, including but not limited to making  payment to one or more of them when they had no right to payment, and paying fees related to the filing of the Bankruptcy Case.

108.    The Plaintiff's actions in reliance on said misrepresentations caused him damage

Count IV – Chapter 93A
Against PAM, MERS, Harmon and Litton

109.    The Plaintiff hereby reiterates and repeats as if fully set forth herein the allegations contained in paragraphs 1-108.

110.    The acts and/or omissions of the Defendants, individually or taken together constitute unfair and deceptive practices, including but not limited to being unfair/deceptive in one or more of the following ways:

- They misrepresented the ownership rights to the First Note/First Mortgage;

- They misrepresented PAM's rights to foreclose;

- They misrepresented that PAM was a creditor of the Plaintiff;

- They misrepresented that the Plaintiff owed fees and charges associated with their attempts to collect debt or otherwise foreclose on the property;

- They signed and/or recorded false documents at the Suffolk County Registry of Deeds in furtherance of their illegal debt collection actions and attempts to foreclose;

- PAM/Harmon filed and pursued the Land Court action, when PAM had no right to foreclose.

- All other actions/omissions as described in Exhibit "D";

- They aided and abetted the others in taking one or more of these actions; and

- They profited from these actions.

111.    These actions/omissions either separately or together constitute violations of Chapter 93A of the Massachusetts General Laws.

112.    The Defendants took these actions willfully and knowingly.

113.    The Defendants' actions caused damage to the Plaintiff.


Count V – Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1961, et seq) Against PAM, MERS, Harmon and Litton

114.    The Plaintiff hereby reiterates and repeats as if fully set forth herein the allegations contained in paragraphs 1-113.

115.    The Defendants were employed by or associated with a qualifying enterprise.

116.    The Defendants employed the mail to execute or attempt to execute a scheme to defraud, including but not limited to making false allegations that they or those they represented owned the beneficial rights to the First Note and/or the First Mortgage or otherwise had the authority to foreclose the First Mortgage.

117.    Their use of the mail, included but is not limited to: dunning the Plaintiff to make payment to persons that did not have a right to debt owed by him, sending him notices of intent to foreclose, and filing and litigating the Land Court action, and seeking relief from stay in these proceedings.

118.    Such actions constitute conduct of such enterprise's affairs through a pattern of racketeering activity.

119.    As a result of the Defendants' activities, the Plaintiff was injured in his business or property, including but not limited to being charged fees for illegal foreclosure proceedings, incurring charges related to his bankruptcy filing, and making payment to persons who did not own the debt claimed by the Defendants.

## CLAIMS RE: PREDATORY LOAN

### Count VI – Chapter 93A/ Chapter 183C of the Massachusetts General Laws
### Against GE Money Bank, PAM, Barclays, and Anson

120.    The Plaintiff hereby reiterates and repeats as if fully set forth herein the allegations contained in paragraphs 1-119.

121.    The Defendants are businesses that regularly engage in trade or commerce.

122.    The Defendants' dealings with the Plaintiff constitute actions undertaken in trade or commerce.

123.    The First Note/First Mortgage and Second Note/Second Mortgage constitute  consumer loans that are unfair and deceptive, either separately or taken together.

124.    GE Money Bank knew the terms of said loans were unfair and deceptive at their inception and its conduct was otherwise willful.

125.    GE Money Bank profited from the unfair and deceptive terms of said loans by, *inter alia*, receiving fees and charges associated with the closing transaction for said loans, as well as by receiving payments thereunder from the Plaintiff after the closing.

126.    At the time Lehman, Barclays and Anson purchased interests in the First Note/First Mortgage and Second Note/Second Mortgage, and became assignees, they either knew the terms of said loans were unfair and deceptive or deliberately chose to avoid any due diligence

evaluation that would have resulted in such a determination and its conduct was otherwise willful.

127.    It was obvious to both GE Money Bank, and all assignees, such as Lehman and Anson, that the Plaintiff, as a borrower under the First Note/First Mortgage and Second Note/Second Mortgage would not be able to repay the debts created by the loans and was doomed to foreclosure if the property did not continue to appreciate in value.

128.    It was further obvious to them that the property would not appreciate in value because they knew that at the time of the loan transaction, the real estate market had peaked.

129.    Further, under chapter 183C, the loan(s) were high cost home mortgage loans and GE Money Bank and its assignees could not reasonably believe at the time of the transaction  that the Plaintiff as borrower would be able to make the scheduled payments to repay the home loan based upon a consideration of his current and expected income, current and expected obligations, employment status, and other financial resources other than the borrower's equity in the dwelling which secures the repayment of the loan.

130.    Further, they knew or had reason to know that the loan application and other documents in support thereof submitted by the mortgage broker in this case had manipulated data concerning the Plaintiff's income, expenses and assets for the purpose of qualifying him for the highest loan amount possible.

131.    The terms of the loan(s) also are unfair and deceptive pursuant to Commonwealth v Fremont Investment & Loan, 452 Mass. 733 (2008).

132.    As a result of all of the above, the terms of the loan(s) and the actions of the Defendant(s) violate Chapter 93A of the Massachusetts General laws.

133.    The terms of the loan(s) and the Defendants' conduct caused injury to the Plaintiff.

134.    PAM is liable to the same extent as Lehman would be for said unfair and deceptive terms pursuant to its joint venture, concerted action, or aiding or abetting of Lehman, and pursuant to its actions to profit from the terms of the First Note/First Mortgage by conducting a foreclosure of the First Mortgage.

Count VII – Unconscionable Contract
Against GE Money Bank, PAM, Barclays, and Anson

135.    The Plaintiff hereby reiterates and repeats as if fully set forth herein the allegations contained in paragraphs 1-134.

136.    The First Note/First Mortgage and Second Note/Second Mortgage contain terms that are unconscionable, including but not limited to terms requiring a balloon payment of over $370,000 due in thirty years and requiring excessive or unnecessary fees associated with the transaction.

137.    The manner of inducing the Plaintiff to execute documents purporting to be the First Note/First Mortgage and Second Note/Second Mortgage and the conduct of the mortgage broker at the purported closing were unconscionable, including but not limited to: the mortgage broker's misrepresentations to the Plaintiff concerning lower mortgage payments that would result from the transaction, that only one loan would result from the transaction, and that the Plaintiff would have only 24 hours to exercise his right to rescind the transaction.

138.    The profits resulting to the Defendants, as original creditor and assignees, were grossly in excess of customary standards.

139.    Said actions and the terms of the loans resulted in unfair surprise and oppressive loan terms.

140.    Said  actions leading up to the purported closing and the terms of the loans caused harm to the Plaintiff.

Count VIII – Rescission and Damages under Federal and State Truth in Lending Act Laws
(15 U.S.C. §§ 1601 et seq.)
(Mass Gen.Laws ch. 140D, §§ 1 et seq)
Against GE Money Bank, PAM, Barclays, and Anson

141.    The Plaintiff hereby reiterates and repeats as if fully set forth herein the allegations contained in paragraphs 1-140.

142.    On or about January 23, 2007, the Plaintiff entered into a consumer credit transaction with GE Money Bank, in which the extended consumer credit was subject to a finance charge and which was initially payable to GE Money Bank.

143.    Said transaction resulted in the First Note/First Mortgage and Second Note/Second Mortgage. Both sets of documents were presented to the Plaintiff at the same closing transaction on the same day.

144.    The Plaintiff did not receive any disclosures concerning the transaction until *after* he was presented with said documents.

145.    Said transaction constituted improper loan splitting and the Plaintiff was provided with two rather than one disclosure statement, in violation of law.

146.    As part of this transaction, the Plaintiff purportedly gave a security interest in his home in the form of the First Mortgage and the Second Mortgage. Both purportedly secure the obligations embodied in the First Note and Second Note respectively.

147.    Subsequently, GE Money Bank assigned any beneficial ownership rights it had in the First Note/First Mortgage to Lehman. Upon information and belief, Barclays may have thereafter purchased said rights from Lehman on or about September 22, 2008.

148.    Subsequently, GE Money Bank assigned any beneficial ownership rights it had in the Second Note/Second Mortgage and Anson now holds same.

149.   The consumer credit transaction was subject to the Plaintiff's right of rescission as described by 15 U.S.C. §§ 1635 and Regulation Z § 226.23 (12 C.F.R. § 226.23), as well as pursuant to Mass.Gen.Laws ch. 183C, § 18, and Mass.Gen.Laws ch. 140D, §§ 10, 33.

150.   In the course of this consumer credit transaction, GE Money Bank violated 15 U.S.C. § 1635(a), Regulation Z § 226.23(b), and Mass.Gen.Laws ch. 140D, § 10 by providing a defective notice of right to rescind to the Plaintiff. A true and accurate copy of said notice is attached hereto as Exhibit "E."

151.   Said notice was defective in one or more of the following ways: the written notice indicates that the Plaintiff may exercise his right to rescind by calling a "Call Center"; the notice is ambiguous in that it indicates written notice must be sent but also indicates the address is a "Call Center" and that calling might also be effective; and the address given for sending notice of rescission is incorrect.

152.   Moreover, the notice was also rendered defective when the mortgage broker told the Plaintiff that his right to rescind expired in 24 hours.

153.   On December 28, 2009, the Plaintiff sent the Defendants notice that he was exercising his right to rescind the transaction. A true and accurate copy of the notice sent to all of the Defendants is attached hereto as Exhibit "D."

154.   The alleged violations contained in said notice are not exclusive and the Plaintiff reserves the right to assert any other violations of law supporting rescission that he becomes aware of during the discovery phase and throughout this litigation.

155.   GE Money Bank violated disclosure requirements under federal and state Truth in Lending because the disclosures provided in conjunction with the transaction were not provided

to the Plaintiff until after he was presented with the First Note/First Mortgage and Second Note/Second Mortgage for execution.

156.    The disclosure statements issued to the Plaintiff in conjunction with this consumer credit transaction also violated federal and state Truth in Lending laws as well as Regulation Z by failing to include in the finance charge certain charges imposed by GE Money Bank payable by the Plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605, Regulation Z, § 226.4, and Mass.Gen.Laws ch. 140D, § 4 thus improperly disclosing the finance charge in violation of 15 U.S.C. § 1638, Regulation Z, § 226.18, and Mass.Gen.Laws ch. 140D, § 12, as described in the document attached hereto as Exhibit "D."

157.    Said disclosure statements otherwise violated state and federal Truth in Lending laws as described in the document attached hereto as Exhibit "D."

158.    The disclosures improperly made are material disclosures.

159.    The finance charge and APR were underdisclosed by more than $35.00, the tolerance levels set forth in 15 U.S.C. § 1635(i) and Mass.Gen.Laws ch. 140D, § 10(i)(2).

160.    By reason of those material violations, the Plaintiff has a right of rescission for three years from the date of consummation of the loan pursuant to 15 U.S.C. § 1635(f) and four years from the date of consummation of the loan pursuant to Mass.Gen.Laws ch. 140D, § 10(f).

161.    By sending notice of rescission on December 28, 2009 to the Defendants, the Plaintiff rescinded the transaction.

162.    GE Money Bank received notice of rescission on or about January 4, 2010 and again on or about January 5, 2010.

163.    When the Plaintiff sent the notice to GE Money Bank at the address listed on the defective notice of right to rescind, GE Money Bank either refused to accept said notice  or said

address is incorrect. A true and accurate copy of the front of the certified mail package returned to the Plaintiff by the U.S. Postal Service is attached hereto as Exhibit "F." A true and accurate copy of the United States Postal Service Track and Confirm Search Results for said certified mailing is attached hereto as Exhibit "G."

164.    Lehman received said notice on or about December 31, 2009 and then again on or about January 4, 2010.

165.    PAM received said notice on December 28, 2009.

166.    Barclays received said notice on or about December 31, 2009.

167.    Anson received said notice on or about January 4, 2010.

168.    More than 20 days have passed since the Defendants have received copies of the Plaintiff's notice of rescission.

169.    The Defendants have failed to take any action necessary or appropriate to reflect the termination of the First Mortgage and Second Mortgage, as required by 15 U.S.C. § 1635(b), Regulation Z, § 226.23(d)(2) and Mass.Gen.Laws ch. 140D, § 10(b).

170.    The Defendants have failed to return to the Plaintiff any money or property given by the Plaintiff to anyone, including the Defendants, as required by 15 U.S.C. § 1635(b), Regulation Z, § 226.23(d)(2) and Mass.Gen.Laws ch. 140D, § 10(b).

171.    As a result of the aforesaid violations, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641, as well as Mass.Gen.Laws ch. 140D, §§ 10(a), 32, and 33, the Defendants are liable to the Plaintiff for:

        (a)    Rescission of the entire transaction, including a declaration that the Plaintiff is not liable for any finance charges or other charges imposed by the Defendants;

(b)     Termination of any security interest in Plaintiff's property created under the

transaction;

(c)     A declaration that the security interest(s) in Plaintiff's property are void and an

order requiring the Defendants to release such security interest(s);

(d)     Return of any money or property given by the Plaintiff to anyone, including the

Defendants, in connection with this transaction;

(e)     Statutory damages for disclosure violations;

(f)     Statutory damages for the Defendants' failure to respond to Plaintiff's rescission

notice;

(g)     Forfeiture or return of loan proceeds;

(h)     Actual damages in an amount to be determined at trial;

(i)     An order declaring the First Note and Second Note constitute unsecured debt;

(j)     An order determining that said debt is dischargeable in bankruptcy; and

(k)     Attorneys' fees.


Count IX – Rescission and Damages under Federal and State Home Ownership and Equity
Protection Act Laws
(15 U.S.C. §§ 1601 et seq.)
(Mass.Gen.Laws ch. 183C, §§ 1 et seq)
(Mass.Gen.Laws ch. 93A, §§ 1, et seq)
Against GE Money Bank, PAM, Barclays, and Anson


172.    The Plaintiff hereby reiterates and repeats as if fully set forth herein the allegations

contained in paragraphs 1-171.

173.   The consumer credit transaction that took place on or about January 23, 2007 resulted in mortgage debt on the Plaintiff's property that was approximately $100,000 more than had resulted from a prior refinancing that had taken place approximately 6 months before.

174.   The Plaintiff is 70+ years of age, speaks only Spanish, and continues to work as a self-employed barber to meet the everyday living expenses of both him and his family.

175.   The consumer credit transaction was a high rate mortgage loan(s) within the meaning of HOEPA, 15 U.S.C. § 1602(aa)(1)(B) and Mass.Gen.Laws ch. 183C, § 2 in that the total "points and fees" charged to the Plaintiff exceeded 5 percent of the total loan amount.

176.   Upon information and belief, GE Money Bank has engaged in a pattern and practice of extending credit to consumers under high rate mortgage loans based upon the consumer's collateral without regard to the consumers' repayment ability, including their current and expected income, current obligations and employment, in violation of 15 U.S.C. § 1639(h) and Mass.Gen.Laws ch. 183C, § 4.

177.   GE Money Bank knew or had reason to know of the inaccurate or manipulated data submitted to it by the mortgage broker and/or that any appraisal report concerning the value of the property was grossly inflated.

178.   GE Money Bank required or induced the Plaintiff to borrow substantially more money than he was seeking, and in an amount beyond the Plaintiff's ability to repay, based primarily on GE Money Bank's evaluation of the amount of the Plaintiff's equity in the property.

179.   Because the transaction met the definition of a high rate mortgage loan, the transaction was subject to additional disclosure requirements that must be provided three days in advance of the consummation of the transaction pursuant to 15 U.S.C. § 1639(b).

180.   No such advance disclosures were ever provided to the Plaintiff.

181.   In addition, GE Money Bank did not first obtain certification from a counselor that the

Plaintiff had received counseling concerning the advisability of the high cost mortgage loan

transaction, in violation of Mass.Gen.Laws ch. 183C, § 3.

182.   As a result, the transaction is void and unenforceable.

183.   GE Money Bank's lending to the Plaintiff based upon his collateral, without regard to

ability to repay, was part of a pattern or practice of such lending and violates 15 U.S.C. §

1639(h), entitling the Plaintiff to actual and statutory damages under 15 U.S.C. § 1640(a).

184.   GE Money Bank's failure to give the Plaintiff the advance disclosures required for high

cost home mortgage loans was a violation of 15 U.S.C. § 1639(a) and (b), entitling the Plaintiff

to actual and statutory damages under 15 U.S.C. § 1640(a) and extending the Plaintiff's right to

rescind to three years after the consummation of the transaction under federal law.

185.   GE Money Bank's extension of credit to the Plaintiff based upon the collateral without

regard to ability to repay was a violation of Mass.Gen.Laws ch. 183C, §§ 1, et seq. for which the

Plaintiff is entitled to the following remedies under Massachusetts law: damages, injunctive

relief, rescission, an order barring the Defendants from collecting on the First Note/First

Mortgage and Second Note/Second Mortgage, an order barring all foreclosure action based upon

the First Note/First Mortgage and Second Note/Second Mortgage or other action under said

documents to enforce the mortgages as security, order reformation of the loans to comply with

Chapter 183C, an order declaring the loans violative of Chapter 93A, and attorneys fees, all

pursuant to Mass.Gen.Laws. ch. 183C, § 18.

186.   As a result of the aforesaid violations, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), 1639(j)

and 1641, as well as Mass.Gen.Laws ch. 183C, §§ 15 and 18 , and chapter 93A of the

Massachusetts General Laws the Defendants are liable to the Plaintiff for:

(a)    Rescission of the entire transaction, including a declaration that the Plaintiff is not liable for any finance charges or other charges imposed by the Defendants;

(b)    Termination of any security interest in Plaintiff's property created under the transaction;

(c)    A declaration that the security interest(s) in Plaintiff's property are void and an order requiring the Defendants to release such security interest(s);

(d)    An order barring the Defendants from foreclosing and collecting any amounts for the First Note and Second Note;

(e)    Return of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with this transaction;

(f)    Statutory damages in the amount of $6,000 ($2000 for disclosure violation, $2000 for failure to rescind, and $2000 for lending without regard to repayment ability);

(g)    Additional damages pursuant to 15 U.S.C. § 1640(a)(4) in the amount of all finance charges and fees paid by the Plaintiff;

(h)    Forfeiture or return of loan proceeds;

(i)    Actual damages in an amount to be determined at trial;

(j)    An order declaring the First Note and Second Note constitute unsecured debt;

(k)    An order determining that said debt is dischargeable in bankruptcy; and

(l)    Attorneys' fees.


## CLAIMS RE: OTHER EQUITABLE REMEDIES

### Count X – Declaratory Relief (28 U.S.C. § 2201)

187.    The Plaintiff hereby reiterates and repeats as if fully set forth herein the allegations

contained in paragraphs 1-186.

188.    The Plaintiff seeks an order from this Court declaring that PAM has no right to conduct a

foreclosure sale of his real property.

189.    The Plaintiff seeks an order from this Court that the First Note/First Mortgage and

Second Note/Second Mortgage have been rescinded by the Plaintiff.

190.    The Plaintiff seeks an order from this Court that the January 23, 2007 loan transaction in

its entirety has been rescinded by the Plaintiff.

191.    The Plaintiff seeks an order from this Court that the First Note constitutes debt that is

unsecured.

192.    The Plaintiff seeks an order from this Court that the Second Note constitutes debt that is

unsecured.

193.    The Plaintiff seeks an order from this Court that the First Mortgage is void.

194.    The Plaintiff seeks an order from this Court that the Second Mortgage is void.

195.    The Plaintiff seeks an order from this Court that the First Note and the Second Note are

dischargeable in bankruptcy.


Count XI – Preliminary Injunction

196.    The Debtor hereby reiterates and repeats as if fully set forth herein the allegations

contained in paragraphs 1-195.

197.    The Debtor is seeking a preliminary injunction barring PAM from any further action to

enforce an interest against the Debtor or his real property.

WHEREFORE, the Debtor seeks the following relief:

1. a preliminary and permanent injunction enjoining PAM from taking any action against the real property or the Defendant to enforce any claim based upon the First Note and/or First Mortgage;

2. the declarations of law prayed for in Count X;

3. all requested relief in Count IX;

4. all requested relief in Count VIII;

5. an award of actual, treble, and punitive damages;

6. an order striking the Proofs of Claim filed by Litton and Resurgent;

7. an award of his costs and attorneys' fees; and

8. a grant of any other relief the Court deems just, reasonable, necessary and/or appropriate.

## JURY TRIAL

The Plaintiff claims a trial by jury.

Respectfully submitted,
THE PLAINTIFF,

By:    /s/ Sara Discepolo
Sara Discepolo, Esq.
1050 Winter Street
Suite 1000
Waltham MA 02451
Tel 617-549-4537
BBO # 628721
His Attorney

February 21, 2010