# Lehman Brothers International (Europe) (In Administration)

Update meetings with MFA / AIMA
New York – 8 Oct 2009
London – 9 Oct 2009

# Agenda

- Introduction
- Scheme of Arrangement
- Contractual Solution
- Indicative timeline
- Other issues
- Update on status of LBIE Administration
- Q&A
- Final remarks

# Introduction

## Objectives

- Outline the Administrators' revised strategy to return Client Assets
- Explain the Jurisdiction and the Scheme
- Outline the Contractual Solution
- Set out claimants Actions
- Update on progress of the LBIE Administration
- Provide opportunity for Q & A

# Introduction

**Key Messages**

- Scheme for Client Assets remains the preferred route

- Scheme provides most certainty

- The Contractual Solution provides a framework:

    - To return assets while appeal process concludes

    - Backstops the impact of a failed appeal

- Express support for the Contractual Solution is essential

- Client Money proceedings commenced. 15-20 court days imminent

- Activities on the unsecured estate progressing very well

    - Some $11bn in House recoveries to date

    - $3.5bn collected in cash relating to client assets

    - 6,500 counterparties to resolve

- C.$156bn in claims filed against affiliates

## Scheme of Arrangement

# Scheme of Arrangement

**Background references**

- Scheme is subject to provisions of UK Companies Act 2006

- Documents available on [www.pwc.co.uk/lehman](www.pwc.co.uk/lehman)

    - Summary of Principal Terms of Scheme- "Mini Explan"

    - 5 & 7 August 2009 presentation to MFA / AIMA members

    - Q & A for MFA / AIMA for August presentation

    - Q & A jurisdiction judgement

# Scheme of Arrangement

**The jurisdiction issue**

- Companies Act 2006 Part 26 Procedure
- Binds all creditors
- Normally compromises only contractual rights
- Scheme also affects proprietary rights
- Judgement adapted narrow and conservative approach
- Optimum Solution – so have appealed

# Scheme of Arrangement

**Basis of appeal**

- CA 2006 Part 26 applies:

  - Where compromise or arrangement is proposed

  - Between company and its creditors

- Nature of compromise is not limited to rights in capacity as creditor only

- Statute does not require connection between status of those bound and the rights compromised

- Nature and Extent of variation of rights goes to classes and sanction discretion <u>not</u> jurisdiction

- Main purpose of Scheme is irrelevant to question of jurisdiction

- It was wrong to distinguish the proprietary rights of a secured creditor

# Scheme of Arrangement

## The appeal procedure

- Expedited hearing in UK Court of Appeal – 26 Oct 2009
- High Court recognised importance and interest of third parties
- Judgement likely mid / late November 2009
- Prospects inevitably uncertain
- Possibility of Appeal to UK Supreme Court

# Scheme of Arrangement

**Scheme is the optimum solution**

- Benefits

  - Bar date

  - Composite solution

  - Binding on all parties

  - Mutual releases

  - Uniform approach for all

  - Relatively quick

- No alternatives provide the equivalent comprehensive answer

- Can be revived if Appeal is successful

- Progress on client position reconciliation has continued unabated

# Scheme of Arrangement

Alternative proposals influenced by

- Attraction of a composite solution
- Desire to reduce Court involvement
- Recognition of level of market support for Scheme principles
- Desire to mitigate further delay

# Scheme of Arrangement

**Alternatives to Scheme**

1. Bilateral return framework
   - One-to-one negotiation
   - Client indemnity
   - Credit wrap
   - Position improved post bar-date
   ➡ **Slow, expensive process without finality / certainty**

2. Series of Trust / Directions Applications to Court
   - Stand-alone
   - In combination with Modified Scheme
   ➡ **Cumbersome process / residual risk for clients**

3. Contractual Solution

# Contractual Solution

# Contractual solution

| What is it? |

- A mechanism for regulating the return of Client Assets

- Contractually binding agreement incorporating substantially all terms of proposed Scheme, including:-

  - Bar Date to crystallise claimant population

  - Deal with proprietary rights and allocate stock shortfall

  - Determine financial position payable between LBIE and Clients

  - Costs of managing and returning client assets

  - Dispute Resolution

  - Distribution of LBI recovery

  - Provision of releases to signatory clients and LBIE

# Contractual Solution

**What else will it do?**

- Invitation to all clients to 'sign up'

- Binding and effective to all who sign

- Intended to provide mutual releases to all signatories

- Relatively expeditious and cost effective

- Can utilise Court Directions Applications as necessary

  - Stock shortfalls

  - Affiliate liens

- Can include a wider population than just Client Assets claimants if desirable

# Contractual Solution

**Why is it in best interests of clients?**

- No class issues

- No jurisdiction issues

- No restrictions on terms, but must be fair to unsecured creditors

- Distribution commences after Bar Dates have passed

- *Phase One:*

    - stock lines with no shortfalls  ($9.0bn)

    - May include stock lines with shortfalls if no non-signatories

- *Phase Two:*

    - stock lines with shortfall and non signatories ($0.3bn)

- May seek Court directions to prioritise signatory claimants

- Non signatories only get distribution after Court Directions re: shortfalls, costs, appropriations etc.

# Contractual Solution

**Issues of non-signatories**

- Not binding on non-signatories:

  1. Assets transferred / returned subject to claims of non-signatories

  2. Non-signatories not subject to terms of the contract

     - bi-lateral negotiation still required

- Probably requires a Directions Application to deal with non-signatory claimants:

  - where there is a shortfall in any stock line

  - to deal with costs for non-signatories

- May update prioritisation criteria

# Contractual Solution

**Implementation**

- Based on Terms of Draft Scheme

- Target finalisation / distribution in w/c 23 Nov 09

- Documentation

    - Explanatory Document

    - Contract Document

    - Form of Accession

- Offer open for acceptance to all

- Closing date (target 4 weeks) can be extended

- Minimum acceptance threshold will be high ~ 90%  by value

- Claim valuation now based on Settlement Date data

- Expectation to hold full client meeting – early Dec 09

- Becomes effective if / when sufficient Clients have signed

# Contractual Solution

**Court Directions Applications**

- Bar Date
    - Proceed as soon as practical
    - Applicable to Contractual Solution (or Scheme)
    - Will be 'ex-parte' under notice
    - Targeting 31 January 2010
- Bar Date for Affiliate Retention Claims
    - Target 28 February 2010

# Timeline

Oct 2009
Nov 2009
Dec 2009
Jan 2010
Feb 2010
Mar 2010
Apr 2010
Negative
Supreme Court or abandon
Pursue Appeal for Scheme
Positive
Proceed with revised Scheme
Potential Scheme Effective Date
Work up Contractual Solution
Issue Contractual Document
Contractual Solution becomes binding
Commence distribution of securities
Scheme merges Contractual Solution
Claim Bar Date
Affiliate Bar Date
Shortfall allocation Directions
Progress Court Directions Application
Bar Dates Application
Cost and shortfall allocation Application



# Other Issues

**LBI**

- Regular dialogue with LBI Trustee

- $5.9bn held by LBI at 15 Sept 08

  - 90% of client positions had stock record movements

  - Significant settlements in 15/9 – 19/9. Reconciliation ongoing.

- Allocation motion

  - filed 6 Oct 09

  - Hearing 18 Nov 09

- Dividends & Coupons

  - Subject to judicial determination

  - Trustee view – not part of general estate

# Other Issues

## LBI

- LBIE expects to distribute receipts from LBI Trustee to clients
- Timing of LBI distribution:
    - Allocation motion
    - Barclays dispute
    - Affiliate Claims
    - Other matters
- Progressing protocol
- Constructive cooperation

# Other Issues

## Other Business

- Further market promotion

- Use LBIE or LBIE Creditors' Committee for reference

- Material benefits to general unsecured creditors

- MFA / AIMA membership support vital

  - If insufficient positive votes "for", then will fail

  - Cannot be supported by inaction or abstention

A vote in favour is essential for this to be viable

# Update on LBIE Administration

# Update on LBIE Administration

| Reminder of Administration objectives | • Realise House assets |
|---|---|
| | • Return Trust Property |
| | • Identify unsecured claims |
| | • 6 Month update report to creditors to be issued on 15 Oct 09 |

# Update on LBIE Administration

**Gross recoveries**

- Realised cash of $13.8bn (gross) to 14 Sept 2009 comprising
    - $10.2bn House asset recoveries
    - $0.9bn pre-Administration Client Money
    - $2.6bn post-Administration possible client related receipts

| **Cash recoveries** | Mar 2009 | Sept 2009 |
|---|---|---|
| House | $5.7bn | $10.2bn |
| Client | $3.0bn | $3.5bn |
| **Total** | **$8.7bn** | **$13.8bn** |

- $11.7bn (net) in hand at 14 September 2009
- Further $800m realised (House) since 14 Sept.

# Update on LBIE Administration

**Counterparties**

- Over 6,500 institutional counterparty relationships to resolve

- Each counterparty had many open transactions

- Material progress in reconciling and settling positions with over 1,400 counterparties

- Realised $6.9bn from receivable counterparties to 14 Sept 2009

- Sophisticated recovery framework co-led with senior Lehman team

- 2.700 counterparties have submitted claims

    - c.$21.4bn claimed vs. SoA c.$7bn

    - Claims > SoA values by c.300% on average

- Now commencing review of claims

- No "bar date" for unsecured claims yet

# Update on LBIE Administration

**Intercompany**

- Claims totalling c$156bn (gross) by LBIE against affiliates

    - Claiming c.$38bn from LBHI when final claims submitted

    - LBSF / LBF combined balance of c.$30bn under "side-letters"

    - No visibility as to level of recoveries from any estate

    - Claims not yet admitted by debtor entities

    - Includes significant guarantee claims against LBHI

    - We anticipate extensive review process

- Ongoing working relationship with key affiliates

- Initiated proceedings in UK High Court to establish ownership of c.$6.0bn securities

# Update on LBIE Administration

Trust Property
Client Assets

- $35.2bn held in client inventory at 15 Sept 2008 for 553 clients

- $13.3bn has been returned to 51 clients

- Market value $5.4bn lower than at 15 Sept 2008

- LBIE controlled depots have a shortfall of ~$0.3bn

- $8.9bn of client assets and $0.4bn redemption proceeds are held at LBIE controlled depots.

- Claims for $6.9bn of assets have been asserted against LBI & LBJ.  No visibility on returns

# Update on LBIE Administration

Trust Property
Client depot
securities

|  | $bn |
|---|---|
| **Segregated assets at 15/9/08** | **35.2** |
| Returned | (13.3) |
| Redemptions now held as cash | (0.4) |
| Assets held by Affiliates | (6.9) |
| Assets frozen by custodian | (0.3) |
| MTM movement | (5.4) |
| **Held at 14/09/09** | **8.9** |

# Update on LBIE Administration

**Trust Property Directions Application IPBA Clause 5.2**

- Clause in LBIE IPBA (charge version)

  - cash received by LBIE for client is held on title transfer basis

  - Similar provision under other agreements (eg MLA)

- Question whether cash is trust or unsecured estate property

- Proceedings commenced

- Hearing in UK High Court this week

- Administrators advised could be "Administration expense"

  - Payable to owner of asset

- Outcome will clarify treatment of such proceeds

# Update on LBIE Administration

**Trust Property
Client Money**

- Client Money $0.9bn recovered to date

- Bankhaus

  - $1bn

  - Discussions with German administrator

  - Request to German Deposit Protection Fund

  - Determination of claim status in coming weeks

- Client Monies hearing from 9 Nov 2009

  - 15 to 20 Court days

  - Judgement and guidance expected by early 2010

  - Entitlement can not yet be determined

  - Substantial Affiliate claims asserted

# Update on LBIE Administration

**Future actions**

- 12 months of significant progress
- Continued focus on:
  - Realisation of assets / closing out CP positions
- Increased emphasis on unsecured CP claims
- Pursue mechanism for the for the return of Client Assets
- Ongoing support to affiliates where benefits LBIE
- Evolution of Operating Model and Management Structure

# Q & A