# EXHIBIT B

**EXHIBIT B**

**FACTS WHICH THIS COURT SHOULD DEEM ADMITTED**

| Fact Number | Fact | Basis for Deeming Fact Admitted | Citation | Court Ruling |
|---|---|---|---|---|
| 1 | Mr. Azerad testified that as Global Head of Asset and Liability Management for Lehman, he had a large number of people reporting to him from three groups, only one of which was liquidity management. | Reformulated by Barclays.[1] Barclays' Response ¶ 1. | BCI Ex. 54 [Azerad Dep. Tr.] at 13:16-17:25. | |
| 2 | At the time of the Sale Transaction, Azerad reported to Paolo Tonucci. | Not disputed.[2] Barclays' Response ¶ 2. | A. 1 [Azerad] 13:4-7; A. 19 [Lowitt] 262:15-17. | |
| 3 | Azerad was employed by Lehman from January 2000 through September 2008. | Not disputed. Barclays' Response ¶ 3. | A. 1 [Azerad] 12:17-14:15. | |
| 4 | Steven Berkenfeld ("Berkenfeld") worked at Lehman from January 1987 to September 2008. | Not disputed. Barclays' Response ¶ 4. | A. 2 [Berkenfeld] 6:20-7:21. | |
| 5 | In September 2008, Berkenfeld was Managing Director and Chief Investment Officer of Lehman's Private Equity Division, and Head of the Legal, Compliance and Audit Division. | Not disputed. Barclays' Response ¶ 5. | A. 2 [Berkenfeld] 6:20-7:21. | |
| 6 | Mr. Berkenfeld testified that he also was Chairman of the "Transaction Approval Committees." | Reformulated by Barclays. Barclays' Response ¶ 5. | BCI Ex. 55 [Berkenfeld Dep. Tr.] at 7:13-15. | |

---

[1] Facts described as "Reformulated By Barclays" are Category (iii): facts which Barclays purports to dispute, but only reformulates the fact in Barclays' own words, sometimes with an additional detail or embellishment. Movants accept Barclays reformulations and request that the Court deem these facts admitted.

[2] Facts described as "Not disputed" are Category (i): facts which Barclays does not dispute. Movants request that the Court deem these facts admitted.

| 7 | Mr. Berkenfeld was involved "in some of the legal negotiations." | Reformulated by Barclays. Barclays' Response ¶ 6. | BCI Ex. 97 [Shapiro Dep. Tr.] at 49:23-50:6. | |
| 8 | Mr. Berkenfeld "was not ... in the meetings that took place between [Shapiro], Mark Shafir, Archie and Michael Klein." | Reformulated by Barclays. Barclays' Response ¶ 6. | BCI Ex. 97 [Shapiro Dep. Tr.] at 49:23-50:6. | |
| 9 | Berkenfeld testified that he was not involved in negotiating the "business deal" embodied in the Sale Transaction. | Not Disputed. Barclays' Response ¶ 7. | A. 2 [Berkenfeld] 26:24-27:17. | |
| 10 | Mr. Berkenfeld testified he was involved in the "lawyering" of the Asset Purchase Agreement. | Reformulated by Barclays. Barclays Response ¶ 8 | BCI Ex. 55 [Berkenfeld Dep. Tr.] at 27:13-15. | |
| 11 | Mr. Berkenfeld testified that he was "involved" in preparing and drafting the original APA. | Reformulated by Barclays. Barclays' Response ¶¶ 8, 9. | BCI Ex. 55 [Berkenfeld Dep. Tr.] at 27:5-6, 41: 15. | |
| 12 | Berkenfeld testified that when he joined an existing drafting session between Lehman's and Barclays' attorneys on Tuesday, he was "playing catch-up in trying to understand what the business terms were." | Reformulated by Barclays. Barclays' Response ¶ 9. | BCI Ex. 55 [Berkenfeld Dep. Tr.] at 29:12-30:5 and 31:14-18. | |
| 13 | Berkenfeld signed the Asset Purchase Agreement, dated September 16, 2008, for LBHI and LBI. | Not Disputed. Barclays' Response ¶ 9. | A. 30 at 43; A. 2 [Berkenfeld] 44:4-45:7. | |
| 14 | Mr. Berkenfeld initialed Exhibit A. 31. | Reformulated by Barclays. Barclays' Response ¶ 11. | | |
| 15 | Mr. Berkenfeld's title at Barclays is Managing Director and his area of responsibility is "in the Investment Banking Division." | Reformulated by Barclays. Barclays' Response ¶ 12. | BCI Ex. 55 [Berkenfeld Dep. Tr.] at 20:7-12. | |

NYI-4257215

| 16 | Berkenfeld's employment agreement with Barclays is dated September 22, 2008. | Not disputed. Barclays' Response ¶ 13. ("Barclays does not dispute that Exhibit A. 143 is Mr. Berkenfeld's original employment agreement with Barclays, or that the front page of that agreement is dated September 22, 2008"). | A. 143. | |
| 17 | In February or March 2009, Berkenfeld received from Barclays a cash **Redacted** | No factual dispute – argumentation only.[3] Barclays' Response ¶ 14. | A. 2 [Berkenfeld] 22:7-24; A. 143. | |
| 18 | Mr. Berkenfeld's **Redacted** | Reformulated by Barclays. Barclays' Response ¶ 14. | BCI Ex. 372. | |
| 19 | Under his employment agreement with Barclays, Berkenfeld has received, or is entitled to receive, from Barclays a **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 15. | A. 2 [Berkenfeld] 57:21-58:4; A.143. | |
| 20 | Alastair Blackwell ("Blackwell") worked for Lehman from November 27, 2000 to September 22, 2008. | Not Disputed. Barclays' Response ¶ 16. | A. 3 [Blackwell] 14:23-15:4. | |
| 21 | Blackwell's last position at Lehman was Global Head of Operations for both Capital Markets and Investment Management. | Not disputed. Barclays' Response ¶ 17. | A. 3 [Blackwell] 15:5-15. | |

---

[3] Facts described as "No factual dispute – argumentation only" are Category (ii): facts which Barclays does not dispute the fact, but rather disputes the fact's implications or interpretation, disputes the witness' personal knowledge or credibility, or otherwise provides a non-responsive answer. Movants request that these facts be deemed admitted.



| 22 | At the time of the Sale Transaction, Blackwell reported to Ian Lowitt. | Not disputed. Barclays' Response ¶ 18. | A. 3 [Blackwell] 15:16-18; A. 19 [Lowitt] 14:4-19. | |
|---|---|---|---|---|
| 23 | Mr. Blackwell testified that his title at Barclays is Managing Director and that he is "responsible for" the Americas Operations Department for Capital Markets. | Reformulated by Barclays. Barclays' Response ¶ 19. | Not provided. | |
| 24 | Blackwell received a **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 20. | Dep. Ex. 55B (Blackwell employment letter); A. 3 [Blackwell] 25:14-19.) | |
| 25 | Mr. Blackwell received a **Redacted** | Reformulated by Barclays. Barclays' Response ¶ 20. | BCI Ex. 128 [October 2, 2008 Alastair Blackwell Employment Agreement]; *see also* BCI Ex. 148 [Spreadsheet of LBI and Barclays Titles]. | |
| 26 | At the time of the Sale Transaction, Gerald Donini ("Donini") was Head of Equities at Lehman. | Not disputed. Barclays' Response ¶ 21. | A. 3 [Blackwell] 223:14-16. | |
| 27 | Mr. Kelly testified that Mr. Donini and Mr. McDade were "involved" in discussions surrounding asset classes. | Reformulated by Barclays. Barclays' Response ¶ 22. | BCI Ex. 75 [August 18, 2009 Kelly Dep. Tr.] at 49:11-51:16. | |
| 28 | Barclays initially insisted as a condition of the Sale that eight specifically named top executives must remain with the firm. | Reformulated by Barclays. Barclays' Response ¶¶ 23, 31, 39, 61, 90. | *See* BCI Ex. 11 at ¶ 19. | |

NYI-4257215



REDACTED

| 29 | Mr. Donini was one of nine Lehman employees whose transfer to Barclays was deemed by Barclays to be important to the Business going forward. | Reformulated by Barclays. Barclays' Response ¶¶ 23, 31, 39. | *See* BCI Ex. 295 [Sept. 23, 2008 9:15 am email from M. Evans B. Diamond, *et al.*, with attachment]; BCI Ex. 355 [Cox Decl.] at ¶ 4. | |
| --- | --- | --- | --- | --- |
| 30 | Several other Lehman employees were deemed by Barclays to be important to the Business, including: Messrs. McDade, McGee, Felder, Lee, Lowitt, Nagpal, Gelband, and Humphrey. | Reformulated by Barclays. Barclays' Response ¶¶ 23, 31, 39. | *See* BCI Ex. 295 [Sept. 23, 2008 9:15 am email from M. Evans B. Diamond, *et al.*, with attachment]; BCI Ex. 355 [Cox Decl.] at ¶ 4. | |
| 31 | After the Sale Transaction, Donini became Managing Director and Head of Equities at Barclays. | Not Disputed. Barclays' Response ¶ 24. | A. 3 [Blackwell] 223:14-19; A. 142. | |
| 32 | Mr. Donini's employment agreement with Barclays is dated September 24, 2008. | Not Disputed. Barclays' Response ¶ 25. ("Barclays does not dispute that Exhibit A. 142 is Mr. Donini's original employment agreement with Barclays, or that the front page of that agreement is dated September 24, 2008"). | A. 142. | |
| 33 | Mr. Donini's employment agreement clearly was signed and "accepted" by Mr. Donini on September 25, 2008. | Reformulated by Barclays. Barclays' Response ¶ 25. | BCI Ex. 126 [September 24, 2008 Gerald Donini Employment Agreement]. | |

NYI-4257215

| 34 | Under his employment agreement with Barclays, Mr. Donini has received, or is entitled to receive, from Barclays a<br><br>**Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 26. | A. 142. | |
| 35 | Mr. Donini received a **Redacted** | Reformulated by Barclays. Barclays' Response ¶ 26. | *see* BCI Ex. 356 [Exall Dec1.] at ¶ 4. | |
| 36 | At the time of the Sale Transaction, Eric Felder ("Felder") was Co-Head of Fixed Income at Lehman. | No factual dispute – argumentation only. Barclays' Response ¶ 27. | A. 10 [Felder] 10:24-11:6. | |
| 37 | Mr. Felder was appointed to Co-Head of Fixed Income of Lehman on September 8, 2008. | Reformulated by Barclays. Barclays' Response ¶ 27. | Not provided. | |
| 38 | Mr. Felder testified that prior to becoming Co-Head of Fixed Income at Lehman, he was Global Head of "global credit products." | Reformulated by Barclays. Barclays' Response ¶ 28. | Not provided. | |
| 39 | Mr. Kelly testified that Mr. Felder attended a meeting the night of September 15th regarding credit assets and "discussing the contents of the portfolio and negotiating an appropriate value for the assets to be sold." | Reformulated by Barclays. Barclays' Response ¶ 29. | BCI Ex. 79 [Kelly Dep. Tr.] 48:3-49:5. | |
| 40 | Mr. Lowitt testified that Mr. Felder was one of the people who met with Lehman to understand the inventory and assets in the firm. | Reformulated by Barclays. Barclays' Response ¶ 30. | BCI Ex. 83 [Lowitt Dep. Tr.] at 35:19-36:17. | |



REDACTED

NYI-4257215

| 41 | Mr. Felder was one of nine Lehman employees whose transfer to Barclays was deemed by Barclays to be important to the business going forward. | Reformulated by Barclays. Barclays' Response ¶ 31. | *See* BCI Ex. 295 [Sept. 23, 2008 9: 15 email from M. Evans to B. Diamond, *et al.* with attachment]; BCI Ex. 355 [Cox Decl.] at ¶ 4. | |
| 42 | On the morning of September 16, 2008, Mr. Felder met with Robert Diamond and Jerry del Missier, both of Barclays, to discuss Felder's future role and compensation at Barclays. | Not Disputed. Barclays' Response ¶ 32. | A. 10 [Felder] 38:15-39:20. | |
| 43 | On September 21, 2008, Mr. Felder signed an employment agreement with Barclays. | Not Disputed. Barclays' Response ¶ 33. | A. 140. | |
| 44 | Mr. Felder is a Managing Director and Head of Global Credit Trading at Barclays. | Reformulated by Barclays. Barclays' Response ¶ 34. | BCI Ex. 148 [Spreadsheet of LBI and Barclays Titles]. | |
| 45 | Mr. Felder received a **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 35. | A. 10 [Felder] 39:21-40:13,42:3-43:11; A. 140. | |
| 46 | Mr. Felder received a **Redacted** | Reformulated by Barclays. Barclays' Response ¶ 35. | BCI Ex. 65 [Felder Dep. Tr.] at 10:24-11:12. | |
| 47 | Under his employment agreement with Barclays, Felder has received, or is entitled to receive, from Barclays a **Redacted** | No factual dispute – argumentation only. Reformulated by Barclays. Barclays' Response ¶ 36. | A. 140. | |



REDACTED

NYI-4257215

| 48 | Prior to the closing of the Sale Transaction, Michael Gelband ("Gelband") was Head of Capital Markets at Lehman. | Not Disputed. Barclays' Response ¶ 37. | A. 5 [Coghlan] 36:12-36:20. | |
| 49 | Gelband participated in the negotiations regarding the Sale Transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 38. | A. 25 [Shapiro] 46:13-53:9; A. 14 [Kelly] 52:13-53:14; A. 21 [McGee] 11:25-13:13. | |
| 50 | Mr. McGee testified that Mr. Gelband "was there" during the negotiations and described Mr. Gelband as part of a "working group that determined the balance sheet items." | Reformulated by Barclays. Barclays' Response ¶ 38. | BCI Ex. 86 [McGee Dep. Tr.] at 68:19-24. | |
| 51 | After the Sale Transaction, Mr. Gelband joined Barclays. He then left Barclays in October 2008. | Reformulated by Barclays. Barclays' Response ¶ 40. | BCI Ex. 356 [Exall Decl.] at ¶ 7. | |
| 52 | Gelband was offered a **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 41. | A.139. | |
| 53 | Mr. Kelly testified that he was employed by Lehman from "approximately" August 2000 through May 2005 and from January 2006 through September 2008. | Reformulated by Barclays. Barclays' Response ¶ 42. | BCI Ex. 75 [Aug. 18, 2009 Kelly Dep. Tr.] at 9:20-22. | |
| 54 | At the time of the Sale Transaction, Kelly's position at Lehman was Global Financial Controller. | Not Disputed. Barclays' Response ¶ 43. | A. 14 [Kelly] 9:18-22; 11:5-9. | |
| 55 | At the time of the Sale Transaction, Kelly reported to Ian Lowitt. | Not Disputed. Barclays' Response ¶ 44. | A. 14 [Kelly] 12:3-5. | |
| 56 | Prior to Lehman's bankruptcy filing on September 15, 2008, Kelly was involved in due diligence and discussions with Barclays concerning a possible transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 45. | A. 14 [Kelly] 29:14-30:23. | |



REDACTED

NYI-4257215

| 57 | Kelly participated in the negotiations regarding the Sale Transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 46. | A. 25 [Shapiro] 50:7-53:4; A. 14 [Kelly] 52:13-53:14; A. 21 [McGee] 11:25-13:19. | |
|----|----|----|----|----|
| 58 | Mr. Kelly testified that he had a role in assembling information used for the negotiations. | Reformulated by Barclays. Barclays' Response ¶ 46. | BCI Ex. 75 [Aug. 18, 2009 Kelly Dep. Tr.] at 28:23-25 and 36:22-37:2; *see also id.* at 40:8-41:3; 50:19-51:6; 59:22-60:3; 60:1522; 65:5-12; 113:7-12; 142:12-143:9; 152:7-15; 153:3-6. | |
| 59 | Mr. Kelly testified that he participated in a meeting in the early morning of September 16, 2008 to the extent of "assembling information that had been used as part of the negotiations." | Reformulated by Barclays. Barclays' Response ¶ 47. | BCI Ex. 75 [Aug. 18, 2009 Kelly Dep. Tr.] at 34:23-25. | |
| 60 | Mr. Kelly testified that he was assembling information around asset classes and values of those assets that had been "discussed between" Barclays and Lehman through Tuesday morning, September 16. | Reformulated by Barclays. Barclays' Response ¶ 48. | BCI Ex. 75 [Aug. 18, 2009 Kelly Dep. Tr.] at 36:22-37:2. | |
| 61 | In connection with Lehman's discussions with Barclays during the week of September 15, 2008, Kelly was involved in calculating the liabilities for compensation and contract cures that Barclays would assume as part of the Sale Transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 49. | A. 19 [Lowitt] 96:2-13. | |
| 62 | Mr. Kelly testified that he became a Managing Director and Chief Financial Officer of Barclays, Americas. | Reformulated by Barclays. Barclays' Response ¶ 50. | BCI Ex. 75 [Aug. 18, 2009 Kelly Dep. Tr.] at 8:8-9; *see also* BCI Ex. 148 [Spreadsheet of LBI and Barclays Titles]. | |

9

| 63 | Kelly received from Barclays **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 51. | A. 147. | |
|----|----|----|----|----|
| 64 | Under his employment agreement with Barclays, dated October 10, 2008, Kelly has received, or is entitled to receive, from Barclays a **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 52. | A. 147. | |
| 65 | Alex Kirk ("Kirk") was Global Head of Principal Businesses at Lehman from July 2008 until September 2008. | Not Disputed. Barclays' Response ¶ 53. | A. 16 [Kirk] 7:3-20. | |
| 66 | Kirk participated in the negotiations regarding the Sale Transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 54. | A. 25 [Shapiro] 50:7-53:4; A. 21 [McGee] 12:15-12:21. | |
| 67 | Mr. Shapiro testified that Mr. Kirk was part of a group asked to "pull information" requested by Bart McDade regarding securities. | Reformulated by Barclays. Barclays' Response ¶ 54. | BCI Ex. 97 [Shapiro Dep. Tr.] at 99:11-17, 229:24-232:5. | |
| 68 | Mr. Kirk testified that he began to participate in discussions related to the Sale Transaction late on September 18 or early on September 19. | Reformulated by Barclays. Reformulated by Barclays. Barclays Response ¶ 54. | BCI Ex. 78 [Kirk Dep. Tr.] at 23:22-24:14; 31:24-32:18. | |
| 69 | Mr. McDade testified that Mr. Kirk was one of two executives who supervised a search for additional value starting on the 19th, and that Mr. Kirk was "directing traffic" in trying to ascertain the value of assets. | Reformulated by Barclays. Barclays' Response ¶ 54. | BCI Ex. 85 [McDade Dep. Tr.] at 164:25-166:8, 169:24-170:6, 173:6-11. | |
| 70 | Kirk worked for Barclays from after the closing in September 2008 until November 2008. | Not Disputed. Barclays' Response ¶ 55. | A. 16 [Kirk] 8:15-9:22. | |



| 71 | Upon his departure from Barclays, Barclays gave Kirk a<br><br>**Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 56. | A. 16 [Kirk] 11:4-21, 18:12-19:20. | |
|---|---|---|---|---|
| 72 | In addition to being the Chief Financial Officer at LBHI at the time of the Sale Transaction, Mr. Lowitt was the Chief Financial Officer, Controller, and Executive Vice President of LBHI. | Reformulated by Barclays. Barclays' Response ¶ 57. | BCI Ex. 365 [First Day Affidavit of Ian Lowitt]; BCI Ex. 365 [Lowitt Decl.] at ¶ 4. | |
| 73 | Lehman officers involved in the negotiations have testified that Mr. Lowitt participated in the negotiations regarding the Sale Transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 59. | A. 25 [Shapiro] 46:13-53:9; A. 14 [Kelly] 52:13-53:14; A. 21 [McGee] 11:25-13:19. | |
| 74 | Mr. Kelly testified that Mr. Lowitt was "responsible overall" for preparing "a closing balance sheet which reflected the transaction." | Reformulated by Barclays. Barclays' Response ¶ 59. | BCI Ex. 75 [Aug. 18, 2009 Kelly Dep. Tr.] at 54:6-18. | |
| 75 | Mr. McGee testified that Mr. Lowitt was "involved around some of the balance sheet type items." | Reformulated by Barclays. Barclays' Response ¶ 59. | BCI Ex. 86 [McGee Dep. Tr.] at 13:17-24. | |
| 76 | Mr. Lowitt testified that he "didn't have a role in negotiating the transaction" but that he "played a role in providing information to those folks who were doing the negotiation." | Reformulated by Barclays. Barclays' Response ¶ 60. | BCI Ex. 83 [Lowitt Dep. Tr.] at 22:2-11. | |
| 77 | Mr. Lowitt testified that he was not kept informed of the "state of the negotiations" "in any formal way." | Reformulated by Barclays. Barclays' Response ¶ 61. | BCI Ex. 83 [Lowitt Dep. Tr.] at 22:12-19. | |
| 78 | Mr. Lowitt testified that there "may have been elements" of the transaction that Bart McDade shared with him. | No factual dispute – argumentation only. Barclays' Response ¶ 61. | A. 19 [Lowitt] 22:12-19. | |

11


REDACTED

| 79 | Prior to the closing of the Sale Transaction, Lowitt never saw the Asset Purchase Agreement. | No factual dispute – argumentation only. Barclays' Response ¶ 62. | A. 19 [Lowitt] 52:12-23. | |
| 80 | Prior to the closing of the Sale Transaction, Lowitt never saw the Clarification Letter. | No factual dispute – argumentation only. Barclays' Response ¶ 63. | A. 19 [Lowitt] 54:17-55:7. | |
| 81 | Lowitt testified he first "heard" of the Clarification Letter a few weeks after the Sale Transaction had closed. | No factual dispute – argumentation only. Barclays' Response ¶ 64. | A. 19 [Lowitt] 55:2-23. | |
| 82 | On the morning of September 16, 2008, Lowitt spoke to Richard Ricci at Barclays about the specific terms of Lowitt's potential employment at Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 66. | A. 19 [Lowitt] 17:12-18:10. | |
| 83 | Mr. Lowitt testified that he and Ricci discussed 2008 compensation and a retention payment. | Reformulated by Barclays. Barclays' Response ¶ 66. | BCI Ex. 83 [Lowitt Dep. Tr.] at 18:3-13. | |
| 84 | The specific terms of Mr. Lowitt's agreement came two days later, on September 18, when Mr. Lowitt received his offer letter. | Reformulated by Barclays. Barclays' Response ¶ 66. | BCI Ex. 22. | |
| 85 | The terms Lowitt discussed with Barclays on September 16, 2008 included **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 67. | A. 19 [Lowitt] 17:12-18:13, 19:14-20. | |
| 86 | Mr. Lowitt received **Redacted** | Reformulated by Barclays ¶¶ 67, 72. | BCI Ex. 122. | |
| 87 | On September 18, 2008, Lowitt signed an employment agreement with Barclays. | Not Disputed. Barclays' Response ¶ 68. | A. 19 [Lowitt] 19:21-20:10,30:25-32:8; A. 138. | |

NYI-4257215



| 88 | Mr. Lowitt joined Barclays in 2008 as Managing Director, Infrastructure Management. | Reformulated by Barclays. Barclays' Response ¶ 69. | BCI Ex. 148 [Spreadsheet of LBI and Barclays Titles]. | |
|----|------|------|------|--|
| 89 | In April 2009, Lowitt was made Chief Operating Officer of Barclays Wealth, Americas. | Not Disputed. Barclays' Response ¶ 70. | A. 19 [Lowitt] 8:15-20. | |
| 90 | Under his employment agreement with Barclays, Lowitt has received, or is entitled to receive, from Barclays a **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 72. | A. 138. | |
| 91 | Mr. McDade was President and Chief Operating Officer of both LBI and LBHI at the time of the Sale Transaction. | Reformulated by Barclays. Barclays' Response ¶ 73. | BCI Ex. 148 [Spreadsheet of LBI and Barclays Titles]; BCI Ex. 102 [June 12, 2008 SEC Form 3 of Herbert McDade III]. | |
| 92 | McDade was one of Lehman's primary negotiators in connection with the Sale Transaction. | Not Disputed. Barclays' Response ¶ 74. | A. 20 [McDade] 18:22-19:6, 33:3-7. | |
| 93 | McDade's letter from Barclays offering employment is dated September 18, 2008. | No factual dispute – argumentation only. Barclays' Response ¶ 75. | A.56. | |
| 94 | The offer of employment to McDade proposed by Barclays was worth approximately **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 76. | A. 56. | |



REDACTED

NYI-4257215

| 95 | The offer of employment to McDade proposed by Barclays would have entitled McDade to a **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 77. | A. 56. | |
| 96 | Mr. McDade testified that he worked at Barclays from "the end of the week of September 22, 2008 through December 31, 2008. | Reformulated by Barclays. Barclays' Response ¶ 79. | BCI Ex. 85 [McDade Dep. Tr.] at 6:24-25. | |
| 97 | During the time period in which McDade was employed by Barclays, he received from **Redacted** | Not Disputed. Barclays' Response ¶ 80. | A. 20 [McDade] 62:15-63:8, 197:10-18. | |
| 98 | McDade received **Redacted** | Not Disputed. Barclays' Response ¶ 81. | A. 20 [McDade] 259:21 -260:14. | |
| 99 | From 2002 until September 2008, Hugh (Skip) McGee ("McGee") was Global Head of Investment Banking at Lehman. | Not Disputed. Barclays' Response ¶ 82. | A. 21 [McGee] 7:15-9:3. | |
| 100 | McGee participated in the negotiations regarding the Sale Transaction. | Not Disputed. Barclays' Response ¶ 84. | A. 21 [McGee] 10:25-11:24,34:19-35:22, 61:7-16; A. 20 [McDade] 18:22-19:6, 33:3-34-6; A.2 [Berkenfeld] 27:18-22. | |
| 101 | Mr. McDade testified that Mr. McGee was "one of three" primary Lehman negotiators in connection with the Sale Transaction and McGee was "absolutely" dealing with all aspects of the Sale Transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 85. | A. 20 [McDade] 18:22-19:6, 33:3-346. | |



REDACTED

NYI-4257215

| 102 | Mr. McGee testified that he "was focused on trying to facilitate the transaction with the particular focus on trying to make sure that [Lehman] delivered the human capital side of the equation to that franchise that [Lehman] preserved it, able to then deliver it as part of the [transaction]." | Reformulated by Barclays. Barclays' Response ¶ 85. | BCI Ex. 86 [McGee Dep. Tr.] at 11: 17-24. | |
| 103 | Mr. McGee testified that he was "focused on preserving the franchise. That involved keeping the people and making sure they were treated fairly. So the place where I was most directly involved was the provisions of the agreement dealing with comp and severance." | Reformulated by Barclays. Barclays' Response ¶ 86. | BCI Ex. 86 [McGee Dep. Tr.] at 22:13-23:6. | |
| 104 | McGee was involved in negotiations with Barclays over the "compensation issue" and drafting Section 9.1 of the Asset Purchase Agreement. | No factual dispute – argumentation only. Barclays' Response ¶ 88. | A. 21 [McGee] 72:15-19; A. 25 [Shapiro] 69:13-70:8. | |
| 105 | Mr. McGee testified that he had no knowledge of the Clarification Letter. | No factual dispute – argumentation only. Barclays' Response ¶ 89. | A. 21 [McGee] 133:22-134:22. | |
| 106 | On or about October 7, 2008, McGee signed an employment agreement with Barclays. | Not Disputed. Barclays' Response ¶ 91. | A. 146; A. 21 [McGee] 55:5-56:7. | |
| 107 | Mr. McGee's 2008 title at Barclays was Managing Director, Head of Investment Banking. | Reformulated by Barclays. Barclays' Response ¶ 92. | BCI Ex. 148 [Spreadsheet of LBI and Barclays Titles]. | |
| 108 | Barclays paid McGee a **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 93. | A. 146. | |



REDACTED

| 109 | Mr. McGee received a<br><br>**Redacted** | Reformulated by Barclays. Barclays' Response ¶ 93. | BCI Ex. 148 [Spreadsheet of LBI and Barclays Titles]; BCI Ex. 129 [October 6, 2008 Hugh McGee III Employment Agreement]. | |
| 110 | Under his employment agreement with Barclays, McGee has received, or is entitled to receive, from Barclays a<br><br>**Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 94. | A.146. | |
| 111 | At the time of the Sale Transaction, Mr. Reilly was the Capital Markets and Investment Banking Chief Financial Officer of Lehman. | Reformulated by Barclays. Barclays' Response ¶ 95. | BCI Ex. 370 [Sept. 17, 2008 5:57 pm email from M. Kelly to J. Walker, with attachments]. | |
| 112 | Mr. Reilly reported to Lowitt. | Not Disputed. Barclays' Response ¶ 96. | A. 19 [Lowitt] 14:7-10. | |
| 113 | Mr. Reilly participated in negotiations regarding the Sale Transaction. | No factual dispute – argumentation only. Barclays Response ¶ 97. | A. 19 [Lowitt] 37:11-22, 38:23039:6. | |
| 114 | Mr. Reilly died in December 2008. | Not Disputed. Barclays' Response ¶ 98. | A. 14 [Kelly] 148:10-148:14. | |

# REDACTED

| 115 | At the time of the Sale Transaction, Mr. Shafir was Managing Director, Global Co-Head of Mergers and Acquisitions at Lehman. | Reformulated by Barclays. Barclays' Response ¶ 99. | BCI Ex. 148 [Spreadsheet of LBI and Barclays Titles]; BCI Ex. 85 [McDade Dep. Tr.] at 83:23-84:13. | |
| 116 | Through September 17, 2008, Shafir was one of Lehman's primary negotiators in connection with the Sale Transaction. | Reformulated by Barclays. Barclays' Response ¶ 100. | A. 2 [Berkenfeld] 27:18-25; A. 16 [Kirk] 28:14-20; A. 21 [McGee] 10:25-12:11; A. 20 [McDade] 18:22-19:6,33:3-34:22. | |
| 117 | On September 17, 2008, Mr. Shafir left Lehman to join Citigroup. | Reformulated by Barclays. Barclays' Response ¶ 100. | BCI Ex. 85 [McDade Dep. Tr.] at 121:16-123:7; BCI Ex. 78 [Kirk Dep. Tr.] at 9-22. | |
| 118 | Mr. Shapiro was a Managing Director in addition to being the Head of Restructuring within Lehman's Investment Banking Division. | Reformulated by Barclays. Barclays' Response ¶ 101. | BCI Ex. 148 [Spreadsheet of LBI and Barclays Titles]. | |
| 119 | At the time of the Sale Transaction, Mr. Shapiro reported to Mark Shafir and Paul Parker (Co-Heads of Mergers & Acquisitions). | Not Disputed. Barclays' Response ¶ 102. | A. 25 [Shapiro] 10:9-15. | |
| 120 | On the evening before Lehman filed for bankruptcy, September 14, 2008, Mr. Shapiro suggested to Mr. McDade that Lehman could sell itself to Barclays in a Section 363 sale under the Bankruptcy Code, and Shapiro was present in McDade's office when McDade called Robert Diamond at Barclays to discuss such a sale. | Not Disputed. Barclays' Response ¶ 103. | A. 25 [Shapiro] 16:15-18:23, 20:2-4. | |

17

| 121 | Mr. Shapiro participated in the negotiations regarding the Sale Transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 104. | A. 25 [Shapiro] 46:13-49:19; A. 14 [Kelly] 34:14-35:11; A. 21 [McGee] 11:25-12:11; A. 2 [Berkenfeld] 27:18-28:6; *see also* A. 124 (Shapiro describing himself as "lead[ing] the bankruptcy filing and sale to Barclays"); A. 48 (Shapiro writing that he "had to quarterback the rescue"). | |
| --- | --- | --- | --- | --- |
| 122 | Mr. Shapiro testified, that he, along with Mr. Shafir, Mr. McGee, and attorneys from Weil Gotshal were "in the trenches dealing with some specific issues as we negotiated this deal." | Reformulated by Barclays. Barclays' Response ¶ 105. | BCI Ex. 97 [Shapiro Dep. Tr.] at 48:4-48:9. | |
| 123 | Mr. Shapiro testified that "our lead negotiator, the lead overall negotiator was Bart McDade." | Reformulated by Barclays. Barclays' Response ¶ 105. | BCI Ex. 55 [Shapiro Dep. Tr.] at 46:16-17. | |
| 124 | Mr. Shapiro testified that during the negotiations of the Sale Transaction he looked at "key provisions" of the Asset Purchase Agreement and "made sure that what was in the contract was what had been agreed to." | No factual dispute – argumentation only. Barclays' Response ¶ 107. | A. 25 [Shapiro] 89:5-14. | |
| 125 | During the negotiations of the Sale Transaction, Mr. Shapiro focused on the section of the Asset Purchase Agreement describing "Purchased Assets." | No factual dispute – argumentation only. Barclays' Response ¶ 108. | A. 25 [Shapiro] 96:4-10. | |

NYI-4257215

| | | | |
|---|---|---|---|
| 126 | Shapiro testified that lawyers from Weil Gotshal and Cleary Gottlieb were "drafting, having things typed, and then reviewing them basically side-by-side together, and I at one point sat down next to them and started reading the provisions with them to make sure that I understood it, that I could report back to make sure that it was accurately reflecting what I was being told the basic business deal was." | Reformulated by Barclays. Barclays' Response ¶ 109. | BCI Ex. 97 [Shapiro Dep. Tr.] at 71:9-16. | |
| 127 | Mr. Shapiro testified that he had "a little bit of input into drafting of [Section 9 of the Asset Purchase Agreement]." | Reformulated by Barclays. Barclays' Response ¶ 109. | BCI Ex. 97 [Shapiro Dep. Tr.] at 69:24-70:8. | |
| 128 | Mr. Shapiro testified that he stayed through the entire Sale Hearing, which began on Friday, September 19, 2008 and lasted until "about 1:00 am" on Saturday, September 20, 2008. | Reformulated by Barclays. Barclays' Response ¶ 110. | BCI Ex. 97 [Shapiro Dep. Tr.] at 164:8-17. | |
| 129 | Shapiro was not involved in drafting the Clarification Letter, and prior to this litigation he never saw a copy of it. | No factual dispute – argumentation only. Barclays' Response ¶ 111. | A. 25 [Shapiro] 118:3-119:5. | |
| 130 | Mr. Shapiro signed an employment agreement with Barclays on October 14, 2008. | Reformulated by Barclays. Barclays' Response ¶ 112. | BCI Ex. 127 [September 25, 2008 Mark Shapiro Employment Agreement]. | |
| 131 | Mr. Shapiro is a Managing Director at Barclays in addition to being the Head of Restructuring and Finance. | Reformulated by Barclays. Barclays' Response ¶ 113. | BCI Ex. 148 [Spreadsheet of LBI and Barclays Titles]. | |
| 132 | Mr. Shapiro received a  **Redacted** | Reformulated by Barclays. Barclays' Response ¶ 114. | BCI Ex. 356 [Exall Dec1.] at ¶ 16; BCI Ex. 127 [September 25, 2008 Mark Shapiro Employment Agreement]. | |

NYI-4257215


REDACTED

| 133 | Under his employment agreement with Barclays, Mr. Shapiro has received, or is entitled to receive, from Barclays a <br><br> **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 115. | A. 25 [Shapiro] 79:16-80:22; A.145. | |
|---|---|---|---|---|
| 134 | At the time of the Sale Transaction, Mr. Tonucci was the Global Treasurer at Lehman. | Not Disputed. Barclays' Response ¶ 117. | A. 26 [Tonucci] 7:23-8:12. | |
| 135 | At the time of the Sale Transaction, Mr. Tonucci reported to Mr. Lowitt. | Not Disputed. Barclays' Response ¶ 118. | A. 19 [Lowitt] 14:4-19. | |
| 136 | Mr. Tonucci was involved in due diligence discussions with Bank of America and Barclays on Friday, September 12, 2008. | Reformulated by Barclays. Barclays' Response ¶ 119. | BCI Ex. 98 [Tonucci Dep. Tr.] at 16:3-13. | |
| 137 | Lehman officers involved in the negotiations have testified that Mr. Tonucci participated in the negotiations regarding the Sale Transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 120. | A. 14 [Kelly] 43:23-44:23; A. 21 [McGee] 13:14-24. | |
| 138 | Mr. Kelly testified that Mr. Tonucci "was very involved in the transaction." | Reformulated by Barclays. Barclays' Response ¶ 120. | BCI Ex. 75 [Aug. 18, 2009 Kelly Dep. Tr.] at 44:2-3. | |
| 139 | Mr. McGee testified that Mr. Tonucci was "involved around some of the balance sheet type items." | Reformulated by Barclays. Barclays' Response ¶ 120. | BCI Ex. 86 [McGee Dep. Tr.] at 13: 17-19. | |
| 140 | Mr. Tonucci testified that he was not involved in the negotiation of the Sale Transaction. | Not Disputed. Barclays' Response ¶ 121. | A. 26 [Tonucci] 26:11-16; 26:25-27:5. | |
| 141 | Mr. Tonucci testified that he did not understand the economics of the Sale Transaction when it was being negotiated on September 15 and 16, 2008. | No factual dispute – argumentation only. Barclays' Response ¶ 122. | A. 26 [Tonucci] 27:18-28:5. | |

20



REDACTED

| 142 | Mr. Tonucci did not see a copy of the Asset Purchase Agreement "until a long time after the transaction closed." | No factual dispute – argumentation only. Barclays' Response ¶ 123. | A. 26 [Tonucci] 41:15-19. | |
| 143 | Mr. Tonucci did not see a copy of the Clarification Letter until "long after the close [of the Sale Transaction.]" | No factual dispute – argumentation only. Barclays' Response ¶ 124. | A. 26 [Tonucci] 41:24-42:2. | |
| 144 | Mr. Tonucci knew on September 19, 2008 that he would receive an offer of employment from Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 125. | A. 26 [Tonucci] 65:19-23,66:4-15. | |
| 145 | Mr. Tonucci testified that he "believe[s] that the offers went out over the weekend [of September 20-21, 2008]." | Reformulated by Barclays. Barclays' Response ¶ 126. | BCI Ex. 98 [Tonucci Dep. Tr.] at 65:8-11. | |
| 146 | On or about September 26, 2008, Mr. Tonucci signed an employment agreement with Barclays. | Not Disputed. Barclays' Response ¶ 127. | A. 141. | |
| 147 | Under his employment agreement with Barclays, Tonucci has received, or is entitled to receive, from Barclays a **Redacted** | No factual dispute – argumentation only. Barclays' Response ¶ 128. | A. 26 [Tonucci] 68:24-69:4, 70:16-23,71:7-21; A. 141. | |
| 148 | Mr. Tonucci received a **Redacted** | Reformulated by Barclays. Barclays' Response ¶ 128. | Not provided. | |
| 149 | After the Sale Transaction, Mr. Tonucci first joined Barclays with the title of US. Treasurer. | Reformulated by Barclays. Barclays' Response ¶ 129. | BCI Ex. 98 [Tonucci Dep. Tr.] at 6:22. | |
| 150 | In February 2009, Mr. Tonucci assumed the position of Head of Group Balance Sheet at Barclays. | Reformulated by Barclays. Barclays' Response ¶ 129. | BCI Ex. 98 [Tonucci Dep. Tr.] at 6:22. | |



REDACTED

NYI-4257215

| 151 | Mr. McDade testified that Mr. Diamond was "[i]n and out" of negotiations and "very much involved." | Reformulated by Barclays. Barclays' Response ¶ 130. | BCI Ex. 85 [McDade Dep. Tr.] at 19: 12-18. | |
|-----|---|---|---|---|
| 152 | Mr. Shapiro testified that Archibald Cox "was, of anybody at Barclays, he was the face of Barclays that we saw the most of. He appeared to be the person who was, at least on its face, making the decisions. He might have been consulting with others, including Bob Diamond, for all I know, or Rich Ricci or other people." | Reformulated by Barclays. Barclays' Response ¶ 130. | BCI Ex. 97 [Shapiro Dep. Tr.] at 47:21-48:3. | |
| 153 | Mr. Ricci described himself as "the senior person to lead discussions from our side," and described Mr. Diamond as on the team of Barclays' negotiators - a large group, which included Messrs. del Missier, Keegan, King, Evans, Cox, Klein, Varley and the Barclays Board. | Reformulated by Barclays. Barclays' Response ¶ 130. | BCI Ex. 91 [Ricci Dep. Tr.] at 10:20-11:12. | |
| 154 | Mr. Diamond is President of Barclays PLC and CEO of Corporate and Investment Banking and Wealth Management. Mr. Diamond is also an Executive Director of the Boards of Barclays PLC and Barclays Bank PLC. | Reformulated by Barclays. Barclays' Response ¶ 131. | BCI Ex. 150 [Robert Diamond Bio from Barclays Capital Inc. Website]. | |
| 155 | Richard Ricci ("Ricci") was one of the primary negotiators of the Sale Transaction for Barclays. | Not Disputed. Barclays' Response ¶ 132. | A. 20 [McDade] 19:7-11; A. 21 [McGee] 24:21-25:6; A. 25 [Shapiro] 47:17-48:3; A. 23 [Ricci] 14:20-15:11, 22:13-25. | |
| 156 | Mr. Ricci was formerly Barclays' Chief Operating Officer of the Investment Banking and Investment Management Division. | Reformulated by Barclays. Barclays' Response ¶ 133. | BCI Ex. 91 [Ricci Dep. Tr.] at 6:15-22; *See* BCI Ex. 153 [Rich Ricci Bio from Barclays Capital Inc.]. | |

NYI-4257215

| 157 | Mr. Ricci is currently Co-Chief Executive of Corporate and Investment Banking. | Reformulated by Barclays. Barclays' Response ¶ 133. | BCI Ex. 91 [Ricci Dep. Tr.] at 6:15-22; *See* BCI Ex. 153 [Rich Ricci Bio from Barclays Capital Inc.]. | |
|---|---|---|---|---|
| 158 | Mr. Ricci is also a member of the Barclays Group Executive Committee and the individual Executive Committees of Barclays Capital and Barclays Wealth. | Reformulated by Barclays. Barclays' Response ¶ 133. | BCI Ex. 91 [Ricci Dep. Tr.] at 6:15-22; *See* BCI Ex. 153 [Rich Ricci Bio from Barclays Capital Inc.]. | |
| 159 | Michael Klein ("Klein") was one of the primary negotiators of the Sale Transaction for Barclays. | Not Disputed. Barclays' Response ¶ 134. | A. 20 [McDade] 19:7-11; A. 21 [McGee] 24:21-25:14; A. 25 [Shapiro] 47:17-48:9; A. 23 [Ricci] 12:1116, 23:12-20. | |
| 160 | At his deposition, Mr. Diamond denied he had any detailed role in the Sale Transaction negotiations and he identified Mr. Ricci as Barclays' principal negotiator. | No factual dispute – argumentation only. Barclays' Response ¶ 137. | A. 8 [Diamond] 45:11-50:24,68:11-71:8, 97:11-98:3, 130:23-131:16. | |
| 161 | Mr. Diamond testified that "Rich [Ricci] ran the deal. I didn't run it," and that he "asked Rich [Ricci] to take full responsibility for negotiating the agreement within the authority that we were given from the board." Mr. Diamond further testified that his involvement during the week of the transaction involved "very many discussions with the Barclays group, our CEO, the executive committee and the board to keep them abreast. And there were many internal meetings to review the results of different valuations." | Reformulated by Barclays. Barclays' Response ¶ 137. | BCI Ex. 63 [Diamond Dep. Tr.] at 68: 11-71:8. | |

23

| 162 | Gerard LaRocca is a Managing Director and Chief Administrative Officer, Americas, at Barclays. He is also the Chief Executive Officer of Barclays U.S. broker-dealer and the New York Branch Manager for Barclays Bank PLC; he also sits on the Board of its Mexican affiliate and is an officer of several of its companies. | Reformulated by Barclays. Barclays' Response ¶ 138. | BCI Ex. 82 at 8:2-9:25; *see also* BCI Ex. 151 [LaRocca Dep. Tr.] [Gerard LaRocca Bio from DTCC Website]. | |
| --- | --- | --- | --- | --- |
| 163 | In addition to being the Chief Executive Officer of Barclays U.S. broker-dealer and the New York Branch Manager for Barclays Bank PLC, Mr. Larocca also sits on the Board of Barclays Bank PLC's Mexican affiliate and is an officer of several of its companies, as well as being a Managing Director and Chief Administrative Officer, Americas, at Barclays. | Reformulated by Barclays. Barclays' Response ¶ 139. | BCI Ex. 82 [LaRocca Dep. Tr.] at 9:19-25. | |
| 164 | Mr. LaRocca reports to Ricci. | Not Disputed. Barclays' Response ¶ 140. | A. 18 [LaRocca] 10:5-13. | |
| 165 | Mr. LaRocca signed the Asset Purchase Agreement for Barclays. | Not Disputed. Barclays' Response ¶ 142. | A. 30; A. 18 [LaRocca] 116:10-117:12. | |
| 166 | Mr. LaRocca signed the Transfer and Assumption Agreement for Barclays. | Not Disputed. Barclays' Response ¶ 143. | A. 18 [LaRocca] 116:10 -117:12. | |
| 167 | Mr. LaRocca signed the Clarification Letter for Barclays. | Not Disputed. Barclays' Response ¶ 144. | A. 32; A. 18 [LaRocca] 113:319. | |
| 168 | Chris Lucas is the Group Finance Director of Barclays. | Reformulated by Barclays. Barclays' Response ¶ 145. | *See* BCI Ex. 152 [Chris Lucas Bio from Barclays PLC Website]. | |

NYI-4257215

| 169 | Gary Romain is the Head of Technical Accounting and Private Equity Finance for Barclays Capital. | Reformulated by Barclays. Barclays' Response ¶ 146. | BCI Ex. 94 [Sept. 10, 2009 Romain Dep. Tr.] at 12:12-18. | |
|-----|---|---|---|---|
| 170 | John Varley is Group Chief Executive of Barclays. | Reformulated by Barclays. Barclays' Response ¶ 147. | *See* BCI Ex. 154 [John Varley Bio from Barclays PLC Website]. | |
| 171 | Mr. Varley testified that he "had the responsibility for taking the strategy of the acquisition of the Lehman North American business to the [Barclays] board, receiving their authority to implement, and I then delegated, subject to the strategic framework that we had set for the transaction." | Reformulated by Barclays. Barclays' Response ¶ 148. | BCI Ex. 99 [Sept. 3, 2009 Varley Dep. Tr.] at 7: 17-25. | |
| 172 | At the time of the Sale Transaction, Diamond reported to Varley. | Not Disputed. Barclays' Response ¶ 149. | A. 27 [Varley] 6:6-17. | |
| 173 | Michael Klein was an outside consultant to Barclays at the time of the Sale Transaction. | Not Disputed. Barclays' Response ¶ 150. | A. 17 [Klein] 8:14-10:17, 12:21-13:8.) | |
| 174 | Klein participated in the negotiations of the Sale Transaction on behalf of Barclays. | Not Disputed. Barclays' Response ¶ 151. | A. 17 [Klein] 8:14-20,48:22-49:3; A. 23 [Ricci] 10:25-11:12, 221:5-7; A. 8 [Diamond] 37:9-38:24.) | |

25

| 175 | Mr. Klein testified that he "was involved in the discussions on the elements of the building and elements of the cash paid for the rights to operate the business." He further testified that, although he was not involved in "pricing of specific assets," he was brought into "the concept of how the transaction changed in the later part of the week and, in addition to those changes, the then resulting shifts of assets and the, what I'll call the weekend of the JPMorgan-related issues. . . ." | Reformulated by Barclays. Barclays' Response ¶ 152. | BCI Ex. 79 [Klein Dep. Tr.] at 48:22-49:3; 50:22-51:23. | |
| 176 | Klein testified that he had not seen the Asset Purchase Agreement at the time it was signed. | No factual dispute – argumentation only. Barclays' Response ¶ 153. | A.17 [Klein] 57:20-58:13. | |
| 177 | Mr. Klein testified in response to a question regarding whether Mr. Klein was responsible for "the document itself," that he "didn't view the [APA] as being my document or in my, if you will, portfolio." | Reformulated by Barclays. Barclays' Response ¶ 153. | BCI Ex. 79 [Klein Dep. Tr.] at 57:8-10. | |
| 178 | Klein testified that he had not reviewed the Clarification Letter at the time it was signed. | No factual dispute – argumentation only. Barclays' Response ¶ 154. | A.17 [Klein] 122:24-123:18. | |
| 179 | In the weekend leading up to LBHI's bankruptcy filing, Barclays and Lehman discussed a possible acquisition. | Reformulated by Barclays. Barclays' Response ¶ 155. | A. 2 [Berkenfeld] 51:9-52:10; A. 19 [Lowitt] 15:6-11; A. 25 [Shapiro] 15:17-16:9; A. 14 [Kelly] 29:14-24; A. 21 [McGee] 18:6-21; A. 23 [Ricci] 13:10-14:2. | |

NYI-4257215

| 180 | Discussions between Barclays and Lehman prior to LBHI's bankruptcy filing did not yield an agreement. | Reformulated by Barclays. Barclays' Response ¶ 156. | A. 2 [Berkenfeld] 51:9-52:10; A. 19 [Lowitt] 15:6-11; 25 [Shapiro] 15:17-16:9; A. 14 [Kelly] 29:14-24; A. 21 [McGee] 18:6-21; A. 23 [Ricci] 13:10-14:2. | |
| 181 | Mr. McDade testified that on the evening of September 14, 2008, Mr. McDade "made a call to Bob Diamond to express interest in continuing a dialogue, despite the bankruptcy." | Reformulated by Barclays. Barclays' Response ¶ 157. | BCI Ex. 85 [McDade Dep. Tr.] at 16: 13-18. | |
| 182 | Mr. McDade testified that discussions between representatives from Barclays and Lehman did not actually begin until 7:00 am on Monday, September 15, 2008. | Reformulated by Barclays. Barclays' Response ¶ 157. | BCI Ex. 85 [McDade Dep. Tr.] at 16: 13-18. | |
| 183 | On September 15, 2008, LBHI filed a voluntary petition under chapter 11 of the Bankruptcy Code. | Not disputed. Barclays' Response ¶ 158. | Case No. 08-13555 (Bankr. S.D.N.Y.) ("LBHI Docket") No.1. | |
| 184 | Negotiations between Barclays and Lehman concerning Barclays purchasing Lehman's North American broker-dealer business took place throughout the day of September 15, 2008 and into the early morning hours of September 16, 2008. | No factual dispute – argumentation only. Barclays' Response ¶ 159. | A. 25 [Shapiro] 46:2-12; A. 14 [Kelly] 38:12-39:20. | |
| 185 | On September 16, 2008, LBHI, LBI and LB 745 LLC agreed to sell to Barclays certain assets. | No factual dispute – argumentation only. Barclays' Response ¶ 160. | A. 20 [McDade] 32:17-33:2,36:19-38:25. | |

27

| 186 | The terms of Barclays, LBHI, LBI and LB 745 LLC's agreement with respect to the Sale Transaction were set forth in the Asset Purchase Agreement. | No factual dispute – argumentation only. Barclays' Response ¶ 161. | A. 2. | |
|-----|---|---|---|---|
| 187 | Mr. Berkenfeld testified that he signed the APA "on or around the Tuesday," September 16, 2008. | Reformulated by Barclays. Barclays' Response ¶ 163. | BCI Ex. 55 [Berkenfeld Dep. Tr.] at 46:7-9. | |
| 188 | The Trustee was not directly involved in the drafting and negotiations of the APA that occurred on September 15 and 16, 2008. | Reformulated by Barclays. Barclays' Response ¶ 164. | BCI Ex. 80 [Kobak Dep. Tr.] at 7:17-8:4. | |
| 189 | The APA was attached to the Lehman Sale Motion filed September 17, 2008, seeking approval for the Sale and seeking an expedited hearing to obtain approval for the Sale. | Reformulated by Barclays. Barclays' Response ¶ 165. | A. 148(A)-(B) (Sale Motion [Docket No. 60]. | |
| 190 | On September 17, 2008, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). | Not Disputed. Barclays' Response ¶ 166. | LBHI Docket No. 62. | |
| 191 | The Committee was not formed until the day after the Asset Purchase Agreement was signed. | No factual dispute – argumentation only. Barclays' Response ¶ 167. | A. 2. | |
| 192 | The Asset Purchase Agreement stated that securities included within the "Purchased Assets" were being transferred at "book value as of" the date of the Asset Purchase Agreement, September 16, 2008. | No factual dispute – argumentation only. Barclays' Response ¶ 168. | A. 30 at 6. | |
| 193 | Lowitt, as Lehman's CFO, was responsible for the accuracy of Lehman's books. | No factual dispute – argumentation only. Barclays' Response ¶ 170. | A. 19 [Lowitt] 11:20-12:13 | |
| 194 | Lehman's books fairly reflected the value of Lehman's assets on September 15 and 16, 2008. | No factual dispute – argumentation only. Barclays' Response ¶ 171. | A. 19 [Lowitt] 41:8-42:5; A. 14 [Kelly] 65:19-22. | |

NYI-4257215

| 195 | Lowitt testified as follows:<br>Q: ... [W]hen you learned on the Tuesday morning that there was a deal, what is your memory of the terms that you learned?<br>A: I didn't know all of the - I wasn't party to all of the terms. You know, I was aware that the - that Barclays was going to purchase a substantial block of assets for less than the amount that we had on our books to reflect a sort of bid offer that reflected both the size of the purchase, as well as the inherent volatility in the market, which was significant that week. | No factual dispute-argumentation only. Barclays' Response ¶ 172. | A. 19 [Lowitt] 42:6-16. | |
| 196 | Lowitt described the difference between the purchase price and the price Lehman had on its books as follows: "The shorthand for it could be discount." | No factual dispute – argumentation only. Barclays' Response ¶ 173. | A. 19 [Lowitt] 43:12-22. | |
| 197 | Regarding the difference between the purchase price and the price Lehman had on its books, Lowitt testified that "It was an amount that was less than the amount that we had it on our books for which reflected a bid offer that was consistent with the size of the purchase, as well as the volatility in the marketplace." | Reformulated by Barclays. Barclays' Response ¶ 173. | BCI Ex. 83 [Lowitt Dep. Tr.] at 43:3-15. | |
| 198 | Kelly described the terms of the Sale Transaction in an email to Lowitt and Lehman Treasurer Tonucci at 5:10 a.m. on September 16, 2008: "Well it took all night and lots of back and forth but the deal is done and ready for the Board. Final price did not change meaningfully approx a $5b all in economic loss versus our marks and $3.6b of resi assets left behind. Assume we can fund this after everything else winds down but Paolo [Tonucci] you need to review this. Also, an extra $1b of comp beyond our accrual and assumption of all trade payables in LBI and LBHI. Took 745 [real estate asset] for $1b and several data centers for $400mm. Bart [McDade] reviewed all of it before final agreement...." | No factual dispute – argumentation only. Barclays' Response ¶ 174. | A. 37. | |

NYI-4257215

| 199 | McDade agreed that Kelly's September 16, 2008 5:10 a.m. email was an accurate description of the Sale Transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 175. | A. 20 [McDade] 41:6-42:2. | |
|-----|-----|-----|-----|-----|
| 200 | Kelly understood that Lehman and Barclays had agreed that Lehman would sell its assets to Barclays for $5 billion less than the amount Lehman had on its books for such assets at the time. | No factual dispute – argumentation only. Barclays' Response ¶ 176. | A. 14 [Kelly] 66:7-16; see also A. 14 [Kelly] at 46:11-16 | |
| 201 | Kelly testified that he "recall[ed] the $5 billion represents the difference between the negotiated price and the value of those assets on Lehman's books." | No factual dispute – argumentation only. Barclays' Response ¶ 177. | A. 14 [Kelly] 46:11-16; see also A. 14 [Kelly] at 143:14-144:2 (same), 156:3-18 (same), 158:21-159:12 (same). | |
| 202 | Kelly testified as follows:<br>Q: ... Did you have an understanding, sir, that the agreement, the pricing of the agreement was that Barclays would pay Lehman $5 billion less than Lehman had thought the assets were worth?<br>A: My understanding was that the negotiated sales price across all those asset portfolios resulted in a $5 billion, approximately $5 billion less to Lehman relative to its marks at that time. | No factual dispute – argumentation only. Barclays' Response ¶ 178. | A. 14 [Kelly] 66:7-16. | |
| 203 | Tonucci testified as follows:<br>Q: ... You understood the 5 billion dollars all in economic loss versus our marks to be a reference to a discount off the marks, correct?<br>A: Yes. | No factual dispute – argumentation only. Barclays' Response ¶ 182. | A. 26 [Tonucci] 29:22-30:2. | |
| 204 | Mr. McDade testified that Mr. Gelband, Mr. Felder and Mr. Donini were involved in "discussions" relating to "asset values." | Reformulated by Barclays. Barclays' Response ¶ 186. | BCI Ex. 85 [McDade Dep. Tr.] at 75:4-76:7. | |

| 205 | In connection with the Sale Transaction, Barclays had no intention of buying Lehman's assets at book value. | No factual dispute – argumentation only. Barclays' Response ¶ 187. | A. 8 [Diamond] 11:24-14:5; 17:16-18:19; *see also* A. 8 [Diamond] 32:15-23; A. 27 [Varley] 36:8-37:2. | |
| 206 | Mr. Varley testified that the deal needed to have a "delta between asset valuation and liability valuation." | Reformulated by Barclays. Barclays' Response ¶ 187. | BCI Ex. 99 [Sept. 3, 2009 Varley Dep. Tr.] at 35: 12-37:2; *see also* BCI Ex. 109 [Sept. 17, 2008 Barclays Press Release] at p. 4; BCI Ex. 110 [Sept. 17, 2008 Investor Teleconference Tr.] | |
| 207 | In connection with the Sale Transaction, Diamond testified that "it was always a given" that if Barclays was going to do a deal with any investment bank it would be at "a distressed price as opposed to a premium or book value price." | No factual dispute – argumentation only. Barclays' Response ¶ 188. | A. 8 [Diamond] 11:24-14:5; 17:16-18:19. | |
| 208 | Diamond testified that he told Lehman representatives Barclays would only pay a "very, very distressed price" for Lehman assets. | No factual dispute – argumentation only. Barclays' Response ¶ 189. | A. 8 [Diamond] 32:15-23. | |
| 209 | Varley testified that, in its negotiations and Sale Transaction with Lehman, Barclays was "certainly very fixated on the need to have a substantial discount." | No factual dispute – argumentation only. Barclays' Response ¶ 190. | A. 27 [Varley] 36:8-37:2. | |
| 210 | One document Varley kept in his personal file concerning the Sale Transaction refers to a "negotiated discount - 5 [billion]." | No factual dispute – argumentation only. Barclays' Response ¶ 191. | A. 42 at BCI-EX-00I66340. | |

31

| 211 | With regard to the Sale Transaction, Ricci testified that he "would think there would have been a discount [] of Lehman assets - the Lehman marks on their assets []." | No factual dispute – argumentation only. Barclays' Response ¶ 193. | A. 23 [Ricci] 44:25-45:19. | |
|-----|---|---|---|---|
| 212 | Ricci testified that Barclays created a "cushion" in the Sale Transaction through, among other things, a "liquidity premium." | No factual dispute – argumentation only. Barclays' Response ¶ 198. | A. 23 [Ricci] 125:4-20. | |
| 213 | Varley prepared a set of talking points for a September 17, 2008 analyst call in which he noted the "capital accretive" nature of the Sale Transaction as well as the "negative goodwill." | Not disputed. Barclays' Response ¶ 200. | A. 42 at BCI-EX-166333-339. | |
| 214 | In Varley's talking points for the September 17, 2008 analyst call, he noted:<br>• The transaction is capital ratio accretive without additional equity issuance.<br>• The source of that accretion is the negative goodwill from the transaction, which amounts to some US \$2 billion, post tax.<br><br>* * *<br><br>• The transaction meets our financial tests with significant margin for error.<br>• We expect it to be immediately economic profit positive. | Not disputed. Barclays' Response ¶ 201. | A. 42 at BCI-EX-166337-38. | |
| 215 | With respect to the Sale Transaction, according to Diamond, a "condition to the deal from the beginning was capital accretion" for Barclays. | No factual dispute – argumentation. Barclays' Response ¶ 202. | A. 8 [Diamond] 66: 13-19; *see also* A. 8 [Diamond] 61:13-62:5; 62:19-63:09; 82:7-84:4, 87:23-92:9, 98:15-101:15, 104:5-105:15, 128:7-129:5. | |

32

| 216 | On September 16, 2008, the Barclays board of directors was informed that the estimated value for the Sale Transaction was $75 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 203. | A. 8 [Diamond] 147:24-150:5; see A. 35; A. 36; A. 27 [Varley] 48:5-49:9, 50:15-53:7. | |
| --- | --- | --- | --- | --- |
| 217 | Exhibits A. 35 and A. 36 are both a PowerPoint presentation prepared for the Barclays Board of Directors. | Reformulated by Barclays. Barclays' Response ¶¶ 203, 204. | | |
| 218 | On September 16, 2008, the Barclays board of directors was informed that the Sale Transaction included "negative goodwill" valued at $3 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 204. | A. 35; A. 36; A. 27 [Varley] 48:5 - 49:9,50:15-53:7. | |
| 219 | With respect to the Sale Transaction, negative goodwill meant that "the assets would have exceeded the liabilities [Barclays] assumed." | No factual dispute – argumentation only. Barclays' Response ¶ 205. | A. 23 [Ricci] 97:3-98:9. | |
| 220 | With respect to the Sale Transaction, Clackson described negative goodwill as profit. | No factual dispute – argumentation only. Barclays' Response ¶ 206. | A. 4 [Clackson] 41:12-42:12. | |
| 221 | Mr. Varley testified: "If on the other hand you acquire assets of 10 for a valuation of five, then there would be negative goodwill of five because of the discount at which you are buying the assets. So negative goodwill is a term of science describing in a scientific way what most people would refer to as a discount." | Reformulated by Barclays. Barclays' Response ¶ 208. | BCI Ex. 99 [Sept. 3, 2009 Varley Dep. Tr.] at 43:2-8. | |
| 222 | Barclays understood that, upon the closing of the Sale Transaction, it would have an immediate gain on acquisition. | No factual dispute – argumentation only. Barclays' Response ¶ 210. | A. 27 [Varley] 48:5-49:9,50:15-53:7, A. 35, A. 36; A.42. | |

33

| 223 | In an email from Beatrice Montondy [sic], a Barclays employee, in which she discussed how the Sale Transaction should be considered for U.S. tax purposes, Ms. Montondy [sic] wrote:<br><br>The context to this question was that, during the asset purchase price negotiations, it was essential to the valuation calculation that the "discount" between the value of the assets acquired and the purchase price NOT be subject to the 46% marginal U.S. tax rate applicable to BCI. | Not disputed. Barclays' Response ¶ 211. ("Barclays does not dispute that Exhibit A. 61 contains the quoted language"). | A. 61 at BCI-EX-(S)-00047721. | |
| --- | --- | --- | --- | --- |
| 224 | According to Ms. Montondy, the immediate gain for Barclays on the Sale Transaction (as to at least a portion of the acquired portfolios) was in the range of $2.5 billion. | Not disputed. Barclays' Response ¶ 212. ("Barclays does not dispute that Exhibit A. 61 contains the quoted language"). | A. 61. | |
| 225 | Ms. Montondy [sic] wrote an email stating:<br>U.S. Tax recognized immediately Wednesday am that U.S. Equities acquired to be used as part of BAU EDG would need to be booked in BSCL and gains subject to 46% tax as a result of current transf[e]r pricing. The gain on the equities is day one $2.5 billion USD. | Not disputed. Barclays' Response ¶ 213. ("Barclays does not dispute that Exhibit A. 61 contains the quoted language"). | A. 61. at BCI-EX-(S)-00047721. | |
| 226 | In an email from Barclays' James Trevelyan, he attributed at least part of the gain from the Sale Transaction, estimated at $2.7 billion, to the fact that the $4.25 billion in assumed liabilities for compensation and cure would be $1.3 billion, leaving $2.7 billion for "negative goodwill." | No factual dispute – argumentation only. Barclays' Response ¶ 214. | A. 71. | |
| 227 | The acquisition balance sheet sent to Barclays' auditors showed a gain on the transaction of approximately $4.7 billion pre-tax. | Not disputed. Barclays' Response ¶ 215. | A. 134 at BCI-EX-00109160; see A. 131, A. 135 at BCI-EX-00115843. | |

| 228 | Kelly testified that Barclays valued the securities (and related short positions) it ultimately received in the Sale Transaction at approximately $50 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 217. | A. 14 [Kelly] 214:8-23, 221:2-229:13 (referring to A. 44 (Kelly's notes)). | |
|-----|------|------|------|---|
| 229 | Kelly's comparison of Lehman's book value to Barclays "proceeds" from the Sale Transaction indicated that the loss to Lehman on the Sale Transaction was approximately $5.25 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 218. | A. 14 Kelly] 214:8-23, 221:2-229:13 (referring to A. 44 (Kelly's notes)). | |
| 230 | On or about September 21, 2008, Azerad circulated to Barclays and Lehman personnel an "Opening Balance Sheet" regarding the Sale Transaction showing that Barclays would have $3.38 billion in "Equity" following the Sale Transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 219. | A. 104. | |
| 231 | The Opening Balance Sheet Azerad circulated on or about September 21, 2008 reflected $52.88 billion in "Total Assets" to be transferred to Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 220. | A. 104. | |
| 232 | According to McDade, a Barclays gain of equity in the Sale Transaction is not consistent with the deal Lehman made with Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 221. | A. 20 [McDade] 216:23-217:23; see also A. 20 [McDade] 107:3-11. | |

35

| 233 | McDade testified as follows:<br>Q: If there were an equity component in the deal on the opening day, sir, of $3.38 billion, that deal would not be in balance is that right?<br>* * *<br>A: That's correct.<br>Q: And the deal you made was one to be in balance; is that right:<br>* * *<br>A: That's correct.<br>Q: So if the opening day balance sheet for the deal reflected that Barclays had $3.38 billion in equity, that's not the deal you made, is it?<br>A: That's correct. | No factual dispute – argumentation only. Barclays' Response ¶ 222. | A. 20 [McDade] 216:23-217:23 (objections omitted); *see also* A. 20 [McDade] at 107:3-11. | |
| 234 | McDade testified that, given the description of the Sale Transaction to the Court, an immediate gain to Barclays should have been disclosed. | No factual dispute – argumentation only. Barclays' Response ¶ 223. | A. 20 [McDade] 185:20-186:5. | |
| 235 | McDade testified as follows:<br>Q: And given what you heard in the bankruptcy hearing on the 19th of September, where you heard the deal described to the judge as essentially a balance -<br>A: Right.<br>Q: -- it would have been important in your view, sir, to tell the judge if it was not in balance because that's a different deal, is it not?<br>A: Most definitely, yes, sir. | No factual dispute – argumentation only. Barclays' Response ¶ 224. | A. 20 [McDade] 185:20-186:5. | |
| 236 | Diamond testified:<br>"The regulators that we are responsible to, the Financial Services Authority in the UK, holds us to specific capital standards, so for example, core equity, tier 1 equity, and it was becoming increasingly clear during this time that they were focusing more on core equity than tier 1 equity, and they were thinking the banks would potentially have to hold higher core equity. So when I say capital accretive, accretive to the capital ratios, which means that the asset liability mismatch had to have a mismatch in favor of a positive capital accretion or we weren't authorized to do a deal." | Reformulated by Barclays. Barclays' Response ¶ 225. | BCI Ex. 63 [Diamond Dep. Tr.] at 86: 17-87:5. | |

| 237 | Diamond testified with regard to the Sale Transaction that he did not know whether the "capital accretion" to Barclays caused by the imbalance between assets transferred to and liabilities assumed by Barclays had been disclosed to the Court, saying, "I have never had a discussion with Judge Peck." | No factual dispute – argumentation only. Barclays' Response ¶ 226. | A. 8 [Diamond] 66:13-24. | |
| --- | --- | --- | --- | --- |
| 238 | By February 2009, Barclays had calculated its gain on acquisition pursuant to the Sale Transaction at £2.62 billion (approximately $4.2 billion at the exchange rates prevailing in September 2008). | No factual dispute – argumentation only. Barclays' Response ¶ 227. | A. 130. | |
| 239 | In February of 2009, Barclays announced: The excess of the fair value of net assets acquired [from Lehman] over consideration paid [to Lehman] resulted in £2,262 m[illion] of gains on acquisition. | Not disputed. Barclays' Response ¶ 228. | A. 130 at 95. | |
| 240 | Barclays Bank PLC's Form 6-K for the period ending August 3, 2009 states that as of June 30, 2009 Barclays had not received approximately £2.2 billion of assets allegedly acquired under the Sale Transaction and "[t]his amount is largely comprised of margin and collateral attributable to the acquired businesses and cash and securities receivable under the terms of the acquisitions." | Not disputed. Barclays' Response ¶ 229. | Maguire Decl. Ex. 7 n.15. | |
| 241 | Barclays Bank PLC's Form 6-K for the period ending August 3, 2009 states that "£1.8 billion of these assets were recognized as part of the initial accounting for the [Lehman] acquisition and are included in the balance sheet as at 30th June 2009." | Not disputed. Barclays' Response ¶ 230. | Maguire Decl. Ex. 7 n.15. | |
| 242 | The "final version" of Barclays' acquisition balance sheet for the Sale Transaction shows a $4.17 billion gain on the transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 232. | A. 135; A. 24 Romain] 18:13-19:8. | |
| 243 | Shown the Barclays PLC Results Announcement at his deposition and asked if the type of gain on acquisition concerning the Sale Transaction was contemplated by the deal he made with Barclays or described to the Court, McDade testified: "No, absolutely not." | No factual dispute – argumentation only. Barclays' Response ¶ 235. | A. 20 [McDade] 157:16-158:20. | |

NYI-4257215

| 244 | McDade did not believe the Sale Transaction contemplated a gain on acquisition for Barclays on the transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 236. | A. 20 [McDade] 158:21-159:3. | |
|---|---|---|---|---|
| 245 | McDade testified as follows:<br>Q: ... Was it contemplated there would be a gain on acquisition?<br>A: No, it was not. | No factual dispute – argumentation only. Barclays' Response ¶ 237. | A. 20 [McDade] 158:21-159:3. | |
| 246 | McDade did not believe the Sale Transaction contemplated Barclays paying a price less than the fair value of the net assets acquired. | No factual dispute – argumentation only. Barclays' Response ¶ 238. | A. 20 [McDade] 158:25-159:7. | |
| 247 | McDade testified at the Sale Hearing on September 19, 2008. | Not disputed. Barclays' Response ¶ 240. | A. 20 [McDade] 113:10-11. | |
| 248 | McDade testified at his deposition that the Sale Transaction "was described [to the Court] as a transaction where the assets and the liabilities matched." | No factual dispute – argumentation only. Barclays' Response ¶ 241. | A. 20 [McDade] 160:14-20. | |
| 249 | McDade testified that an imbalance in Barclays' favor in the Sale Transaction would "most definitely" have been important to disclose to the Court. | No factual dispute – argumentation only. Barclays' Response ¶ 243. | A. 20 [McDade] 185:20-186:5. | |
| 250 | Mr. Berkenfeld testified that, to his knowledge, none of the lawyers involved in the drafting were aware of any loss on assets. | Reformulated by Barclays. Barclays' Response ¶ 245. | A. 2 [Berkenfeld] 70:20-71:2. | |
| 251 | Mr. Berkenfeld testified that, to his knowledge, none of the lawyers were told of a "bulk discount of some kind given to Barclays." | Reformulated by Barclays. Barclays' Response ¶ 246. | A. 2 [Berkenfeld] 72: 15-73:3. | |
| 252 | An agreement to sell Lehman's assets for less than book value in connection with the Sale Transaction was not disclosed to the Court. | No factual dispute – argumentation only. Barclays' Response ¶ 249. | A. 2 [Berkenfeld] 133:25-134:13.; and hearing transcripts. | |

38

| 253 | An immediate gain for Barclays upon the closing of the Sale Transaction was not disclosed to the Court. | No factual dispute – argumentation only. Barclays' Response ¶ 250. | A. 148 [Docket No. 60]; A. 149 [Docket No. 352]; A. 150 [Docket No. 318; and hearing transcripts. | |
|---|---|---|---|---|
| 254 | Mr. Kelly testified that he could not recall with whom he generally discussed the "$5 billion loss against Lehman's marks at that time," testifying, "I can't give you specific names with absolute clarity. ... My recollection is that I discussed this with Gerry Reilly, Ian Lowitt, Paolo Tonucci, and likely others." | Reformulated by Barclays. Barclays' Response ¶ 251. | BCI Ex. 75 [Aug. 18, 2009 Kelly Dep. Tr.] at 69:22-76:19. | |
| 255 | Mr. Felder testified that he did not recall specific conversations "about a discount being provided to Barclays on its purchase of Lehman's assets." | Reformulated by Barclays. Barclays' Response ¶ 254. | A. 10 [Felder] 95:18-96:16. | |
| 256 | Mr. Kirk testified that he never understood that the "agreement involved a discount of any kind given to Barclays against the amount shown on Lehman's books." | Reformulated by Barclays. Barclays' Response ¶ 255. | A. 16 [Kirk] 38:24-39:5. | |
| 257 | Mr. Blackwell testified that he never heard "anyone talk about a discount that was being awarded to Barclays with respect to Lehman assets." | Reformulated by Barclays. Barclays' Response ¶ 256. | A. 3 [Blackwell] 44:14-45:16, 71:5-9. | |
| 258 | Mr. Hraska testified that he had never heard the phrase "block discount" in connection with the Sale, and had no understanding that "Barclays was going to be paying less than the full value for the assets it was buying from Lehman." | Reformulated by Barclays. Barclays' Response ¶ 257. | A. 12 [Hraska] 66:5-23. | |
| 259 | Ms. Denig testified that she had never heard "about a discount being granted to Barclays as to the assets they were going to buy." | Reformulated by Barclays. Barclays' Response ¶ 258. | A. 7 [Denig] 72:5-9. | |
| 260 | Mr. Azerad testified that he was unaware of any "discussion with anyone about whether there was a discount in the transaction." | Reformulated by Barclays. Barclays' Response ¶ 259. | A. 1 [Azerad] 57:16-20. | |
| 261 | Berkenfeld testified that he had no knowledge of "a discount given to Barclays off the value of the assets transferred" in connection with the Sale Transaction. | Not disputed. Barclays' Response ¶ 260. ("Barclays does not dispute that Mr. Berkenfeld testified as quoted."). | A. 2 [Berkenfeld] 64:9-15; 63:12-18. | |

39

| 262 | Mr. Berkenfeld testified that "[t]he purchase agreement says that what's being transferred over is approximately 70 billion of book value." | Reformulated by Barclays. Barclays' Response ¶ 261 and 262. | A. 2 [Berkenfeld] 88:25-89:10. | |
|-----|-----|-----|-----|---|
| 263 | Berkenfeld testified that "the understanding was that there would be purchased assets, transferred assets that had a book value as of the date of approximately 70 million [sic]." | Reformulated by Barclays. Barclays' Response ¶ 261. | A. 2 [Berkenfeld] 281:13-282:5. | |
| 264 | Berkenfeld was not aware of any part of the structure of the Sale Transaction that contemplated "a bulk discount to Barclays from the value of the assets transferred." | Not disputed. Barclays' Response ¶ 263. ("Barclays does not dispute that Mr. Berkenfeld testified as quoted."). | A. 2 [Berkenfeld] 72:9-14; 70:10-19. | |
| 265 | Berkenfeld testified as follows: Q: Was it your understanding that the economics of the transaction involved a $5 billion overall loss to Lehman versus its marks? A: I have never been informed of that. Q: Have you ever seen any document that says that? A: Not that I recall. Q: So when you were involved in the drafting of the agreement ... you did not have an understanding there was to be a discount given to Barclays off the value of the assets transferred; is that right? A: I did not have that knowledge. | Not disputed. Barclays' Response ¶ 264. ("Barclays does not dispute that Mr. Berkenfeld testified as quoted."). | A. 2 [Berkenfeld] 64:2-15. | |
| 266 | Berkenfeld testified that there was nothing in the Asset Purchase Agreement that addressed a discount on assets. | Not disputed. Barclays' Response ¶ 265. ("Barclays does not dispute that Mr. Berkenfeld testified as quoted."). | A. 2 [Berkenfeld] 70:10-19, *see also* A. 2 [Berkenfeld] at 133:25-134: 13. | |

| 267 | Berkenfeld testified as follows:<br>Q: And nobody looking at that agreement, at least from the point of view of the man who signed it, would read that to say there was a discount being given to Barclays for what it was buying?<br>***<br>A: I didn't believe at the time when I signed this agreement that the intent of the agreement was to deliver assets with a material embedded gain to them, to Barclays. | Not disputed. Barclays' Response ¶ 267. ("Barclays does not dispute that Mr. Berkenfeld testified as quoted."). | A. 2 [Berkenfeld] 122:17-123:2; *see also* 110:23-112:25. | |
| --- | --- | --- | --- | --- |
| 268 | Berkenfeld testified that, if "getting a discount off of the valuation at the time under the current market" was "part of the business deal agreed to by the parties, then [he] would have expected that to be disclosed to the lawyers who were preparing the document and the lawyers who were presenting to the bankruptcy court." | Not disputed. Barclays' Response ¶ 268. ("Barclays does not dispute that Mr. Berkenfeld testified as quoted."). | A. 2 [Berkenfeld] 75:22-77:2. | |
| 269 | No one disclosed to Berkenfeld a "discount off the value of the long position transferred." | Reformulated by Barclays. Barclays' Response ¶ 269. | A. 2 [Berkenfeld] 75:22-77:11. | |
| 270 | At approximately 6:00 a.m. on September 16, 2008, a proposed agreement between Lehman and Barclays was presented for approval at a meeting of the combined boards of directors of LBHI and LBI (the "Lehman Boards"). | Not disputed. Barclays' Response ¶ 270. | A. 39 at 1. | |
| 271 | Exhibit A. 39 is the minutes of the meeting of the Lehman Boards held on September 16, 2008. | Not disputed. Barclays' Response ¶ 271. ("Barclays does not dispute that Exhibit A. 39 is the minutes of the meeting of the Lehman Boards held on September 16, 2008."). | A. 39. | |

41

| 272 | The minutes of the meeting of the Lehman Boards held on September 16, 2008 describe the agreement "[for LBI ... a wash - with Barclays assuming liabilities, including employee liabilities and contract cure amounts, basically equivalent to the assets." | Not disputed. Barclays' Response ¶ 271. ("Barclays does not dispute that . . . those minutes contain the language quoted."). | A. 39 at 4. | |
|---|---|---|---|---|
| 273 | At their September 16, 2008 meeting, the Lehman Boards approved the deal between Lehman and Barclays as described to them and authorized the preparation of the documents necessary to effect the Sale Transaction. | Not disputed. Barclays' Response ¶ 272. | A. 39 at 6-7. | |
| 274 | The minutes of the September 16 meeting of the Lehman Boards reflect that Mr. Lowitt was in attendance. | Reformulated by Barclays. Barclays' Response ¶ 273. | A. 39 at 1. | |
| 275 | The minutes of the September 16 meeting of the Lehman Boards reflect that Mr. Lowitt told the Lehman Boards that, if the Sale Transaction were not approved that day, LBI would not be able to fund itself through the day and would have to file bankruptcy immediately. | Reformulated by Barclays. Barclays' Response ¶ 274. | A. 39 at 4. | |
| 276 | McDade testified he does not know what the boards of Lehman Brothers Holdings and Lehman Brothers Inc. were told concerning the Sale Transaction. | Not disputed. Barclays' Response ¶ 276. ("Barclays does not dispute that Mr. McDade testified as set forth in paragraph 276."). | A. 20 [McDade] 34:23-36:18. | |
| 277 | The 9/16/08 Financial Schedule was "guidance for what was meant in the Asset Purchase Agreement when there was a reference to purchased assets." | No factual dispute – argumentation only. Barclays' Response ¶ 278. | A. 2 [Berkenfeld] 50:15-24; *see also* A. 20 [McDade] 54:3-20. | |
| 278 | Kelly worked on the preparation of the 9/16/08 Financial Schedule. | No factual dispute – argumentation only. Barclays' Response ¶ 281. | A. 14 [Kelly] 97:15-98:16. | |
| 279 | Kelly and Tonucci provided the 9/16/08 Financial Schedule to Berkenfeld. | No factual dispute – argumentation only. Barclays' Response ¶ 282. | A. 2 [Berkenfeld] 34:2-14,46:24-47:9; 63:3-5. | |

42

| 280 | Kelly and Tonucci gave the "sign-off" that the 9/16/08 Financial Schedule was the final schedule. | No factual dispute – argumentation only. Barclays' Response ¶ 283. | A. 2 [Berkenfeld] 48:2-22. | |
|-----|---|---|---|---|
| 281 | Berkenfeld initialed the 9/16/08 Financial Schedule. | No factual dispute – argumentation only. Barclays' Response ¶ 284. | A. 31, A. 2 [Berkenfeld] 47:12-48:12. | |
| 282 | Lowitt was "involved in the iterative work product" that led to the 9/16/08 Financial Schedule. | No factual dispute – argumentation only. Barclays' Response ¶ 285. | A. 19 [Lowitt] 80:19-24. | |
| 283 | The 9/16/08 Financial Schedule served as guidance for the $70 billion "Long Position" described in the Asset Purchase Agreement as "book value as of" September 16. | No factual dispute – argumentation only. Barclays' Response ¶ 286. | A. 2 [Berkenfeld] 78:10-79:3; A. 30 at 6; A. 31. | |
| 284 | Berkenfeld understood that the 9/16/08 Financial Schedule reflected asset values based on Lehman's marks. | No factual dispute – argumentation only. Barclays' Response ¶ 287. | A. 2 [Berkenfeld] 62:20-63:11. | |
| 285 | Lehman lawyers involved in documenting the Sale Transaction "were relying on [Kelly and Tonucci] to put together the list of assets that were estimated at the time would be transferred over to Barclays." | No factual dispute – argumentation only. Barclays' Response ¶ 288. | A. 2 [Berkenfeld] 36:3-37:12. | |
| 286 | The 9/16/08 Financial Schedule listed asset-side cash and securities, including governments and agencies, commercial paper, mortgages, corporate debt, corporate equity, and derivatives, totaling $62.7 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 289. | A. 31. | |
| 287 | The 9/16/08 Financial Schedule listed an asset-side line item for "Collateralized ST Agr" in the amount of $10 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 290. | A. 31. | |

43

| 288 | The 9/16/08 Financial Schedule listed "Adj. Total Assets" as $72.65 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 291. | A. 31. | |
|-----|---|---|---|---|
| 289 | In connection with the Sale Transaction, the reduction in price from Lehman's book values for assets being transferred to Barclays was agreed to in terms of a raw number, not a percentage. | No factual dispute – argumentation only. Barclays' Response ¶ 296. | A. 19 [Lowitt] 45:8-17. | |
| 290 | Lowitt testified that there was a "difference between the value shown on Lehman's books and the price Barclays was willing to pay for those securities." | Reformulated by Barclays. Barclays' Response ¶ 297. | A. 19 [Lowitt] 44:9-46:3. | |
| 291 | In a document discussing the $75 billion valuation in the September 16, 2008 Presentation about the Sale Transaction to the Barclays Boards, a Barclays employee identified a $1.5 billion markdown that was described as an "[u]nallocated deduction not assigned to a specific asset class." | No factual dispute – argumentation only. Barclays' Response ¶ 299. | A. 40 at BCI-EX-00023814; *see also* A. 24 [Romain] 44:5-9. | |
| 292 | Kelly testified that: "As part of the process to reflect the [Sale Transaction] in Lehman's books and records, the assets would have been marked to the negotiated sale price." | No factual dispute – argumentation only. Barclays' Response ¶ 300. | A. 14 [Kelly] 52:13-24. | |
| 293 | In connection with the Sale Transaction, on September 17, 2008, Lowitt wrote an email to Reilly asking if things were "set up" for "barcap to mark the positions further." | No factual dispute – argumentation only. Barclays' Response ¶ 301. | A. 55. | |
| 294 | Reilly responded to Lowitt's September 17, 2008 email: "[w]e are going to send last nights assets and marks over [to Barclays] so they can see [the] mix and marks." | No factual dispute – argumentation only. Barclays' Response ¶ 302. | A. 55. | |
| 295 | In connection with the Sale Transaction, on September 17, 2008, Lowitt believed it would be necessary to mark down the positions on Lehman's books to a level that was consistent with the lower price at which Barclays was willing to purchase them. | No factual dispute – argumentation only. Barclays' Response ¶ 303. | A. 19 [Lowitt] 129:17-23; 131:11-135:13. | |

44

| 296 | The 9/16/08 Financial Schedule listed "Total" liabilities as $72.65 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 304. | A. 31. | |
|-----|------|------|------|--|
| 297 | The 9/16/08 Financial Schedule listed liability-side line items for short inventory, including government and agencies, corporate debt, corporate equities, and derivatives, totaling $33.9 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 305. | A. 31. | |
| 298 | The 9/16/08 Financial Schedule listed a liability-side line item for "Collateralized ST Fund" in the amount of $34.5 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 306. | A. 31. | |
| 299 | The 9/16/08 Financial Schedule listed a liability-side line item for "Comp" at $2 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 307. | A. 31; A. 2 [Berkenfeld] 60:3-11. | |
| 300 | The $2 billion accrual for compensation reflected on the 9/16/08 Financial Schedule was not Lehman's accrual for compensation as reflected on its books on September 16, 2008. | No factual dispute – argumentation only. Barclays' Response ¶ 308. | A. 20 [McDade] 44:4-45:5,73:14-18, 100:5-22, 105:3-8.) | |
| 301 | In connection with the Sale Transaction, McDade testified that he never saw any calculations concerning compensation from Barclays' "model." | No factual dispute – argumentation only. Barclays' Response ¶ 312. | A. 20 [McDade] 46:2-15, 100:10-101:20. | |
| 302 | In connection with the Sale Transaction, Kelly testified that McDade told him that the $2 billion accrual for compensation on the 9/16/08 Financial Schedule was a "negotiated" amount. | No factual dispute – argumentation only. Barclays' Response ¶ 313. | A. 14 [Kelly] 81:15-23. | |
| 303 | In connection with the Sale Transaction, Kelly did not ask McDade why the compensation accrual on the 9/16/08 Financial Schedule was not as shown on Lehman's books but rather was negotiated. | No factual dispute – argumentation only. Barclays' Response ¶ 314. | A. 14 [Kelly] 82:18-84:3. | |

| 304 | In connection with the Sale Transaction, Ricci testified that Barclays' assuming more liability than it would potentially payout was one way to achieve Barclays' desired "cushion" in the deal. | No factual dispute – argumentation only. Barclays' Response ¶ 315. | A. 14 [Kelly] 82:18-84:3. | |
|-----|-----|-----|-----|-----|
| 305 | Prior to the closing of the Sale Transaction, Barclays never intended to pay the full "assumed" $2 billion liability for compensation. | No factual dispute – argumentation only. Barclays' Response ¶ 317. | *See* A. 23 [Ricci] 35:6-38:13 ("What [w]e had agreed was that we would assume a liability related to compensation.... but we didn't agree that we would pay the whole thing out"). | |
| 306 | In connection with the Sale Transaction, regarding compensation liability, Ricci testified: "We were hoping ... we wouldn't have to pay all of it." | No factual dispute – argumentation only. Barclays' Response ¶ 318. | A. 23 [Ricci] 52:25-54:18. | |
| 307 | The 9/16/08 Financial Schedule listed a liability-side line item for "Cure pmt" in the amount of $2.25 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 323. | A. 31. | |
| 308 | Notes made by Mr. Cox on the 9/16/08 Financial Schedule refer to "200 [million]" as an estimate from Lehman for contracts that would be "mission critical" | Reformulated by Barclays. Barclays' Response ¶ 327. | BCI Ex. 61 [Cox Dep. Tr.] at 52:19-53:3. | |
| 309 | As of July 14, 2009, Barclays had paid approximately $238 million in contract cure liabilities. | Not disputed. Barclays' Response ¶ 329. | A. 136. | |
| 310 | In connection with the Sale Transaction, Kelly testified that he brought the overstatement of the estimate for contract cure liabilities reflected in the 9/16/08 Financial Schedule to McDade's attention during the week of September 16, 2008. | No factual dispute – argumentation only. Barclays' Response ¶ 332. | A. 14 [Kelly] 133:10-136:14. | |

| 311 | Kelly testified that, when he told McDade the estimate for contract cure liabilities reflected in the 9/16/08 Financial Schedule was overstated, McDade replied "[w]e just left a billion dollars on the table." | No factual dispute – argumentation only. Barclays' Response ¶ 333. | A. 14 [Kelly] 136:2-14. | |
| 312 | McDade testified that through the week, in his dealings with Kelly and others, he learned the contract cure number reflected in the 9/16/08 Financial Schedule was overstated and "kept moving down." | No factual dispute – argumentation only. Barclays' Response ¶ 334. | A. 20 [McDade] 96:9-20. | |
| 313 | In connection with the Sale Transaction, Kelly created, or had created for him, documents that show the increase of both the compensation and contract cure liabilities as "transaction adjustments." | No factual dispute – argumentation only. Barclays' Response ¶ 335. | A. [Kelly] 247:25-251:24; *see, e.g.,* A. 62,A. 64, A. 69. | |
| 314 | In connection with the Sale Transaction, Kelly created, or had created for him, documents that show the increase of both the compensation and contract cure liabilities as "transaction adjustments." | No factual dispute – argumentation only. Barclays' Response ¶ 335. | A. [Kelly] 247:25-251:24; *see, e.g.,* A. 62, A. 64, A. 69. | |
| 315 | In connection with the Sale Transaction, a balance sheet dated September 17, 2008 containing Kelly's handwritten notes shows a "transaction adjustment" changing the estimate for "bonus payable" from $1.5 billion to $2 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 336. | A. 47 at BCI-EX-00115130. | |
| 316 | In connection with the Sale Transaction, on September 18, 2008, Brian Young sent an email to Kelly transmitting a balance sheet showing a $1 billion "transaction adjustment" for "compensation payable" and $383 million inflation of "trade liabilities." | No factual dispute – argumentation only. Barclays' Response ¶ 337. | *See* A. 62 at 3. | |
| 317 | In connection with the Sale Transaction, on September 18, 2008, Rose Hanzenberg sent an email to Kelly transmitting a balance sheet showing a $1.5 billion "transaction adjustment" for "bonus payable" and $304 million increase for "trade liabilities." | No factual dispute – argumentation only. Barclays' Response ¶ 338. | A. 63 at 4. | |

47

| 318 | In connection with the Sale Transaction, on September 18, 2008, Rose Hanzenberg sent an email to Kelly transmitting a balance sheet showing a \$1.5 billion "transaction adjustment" for "bonus payable" and \$286 million for "trade liabilities." | No factual dispute – argumentation only. Barclays' Response ¶ 339. | A. 64. | |
| --- | --- | --- | --- | --- |
| 319 | In connection with the Sale Transaction, on September 19, 2008, Chris O'Meara sent an email to Kelly showing a \$2 billion "transaction adjustment" for "bonus payable" and a \$1.645 billion "transaction adjustment" for "Cure payments/accounts payable." | No factual dispute – argumentation only. Barclays' Response ¶ 340. | A. 69. | |
| 320 | McDade testified that if the liability for contract cures had been inflated it would be inconsistent with the Sale Transaction as documented and disclosed. | No factual dispute – argumentation only. Barclays' Response ¶ 341. | A. 20 [McDade] 155:23-156:14. | |
| 321 | McDade testified that if the assumed liabilities were inflated, Barclays should have had to pay more to Lehman in other consideration in the Sale Transaction, including greater cash consideration. | No factual dispute – argumentation only. Barclays' Response ¶ 342. | A. 20 [McDade] 144:15-145:21. | |
| 322 | Mr. Berkenfeld testified that, to his knowledge, none of the lawyers involved in the drafting were aware of any loss on assets. | Reformulated by Barclays. Barclays' Response ¶ 343 | A. 2 [Berkenfeld] 63: 12-64:25, 69:18-23,70:1071:2,78:10-83:24. | |
| 323 | Berkenfeld believed that the Asset Purchase Agreement indicated there was an essentially equal exchange of value, with Long Positions having a book value of \$70 billion being conveyed to Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 347. | A. 2 [Berkenfeld] 107:21-112:25,121:12-123:2, 242:12-21, 281:13-282:5. | |
| 324 | Shapiro believed the \$70 billion "Long Position" described in the Asset Purchase Agreement was a rough approximation of the value of the securities being transferred to Barclays based on Lehman's marks. | No factual dispute – argumentation only. Barclays' Response ¶ 348. | A. 25 [Shapiro] 105:16-107:11. | |

48

NYI-4257215

| 325 | Paragraph 9.1(c) of the Asset Purchase Agreement provides that the Purchaser "shall" pay to each Transferred Employee an annual bonus for the 2008 Fiscal Year that, in the aggregate, was equal to the amount reflected on the 9/16/08 Financial Schedule. | No factual dispute – argumentation only. Barclays' Response ¶ 350. | A. 30 at 35. | |
|---|---|---|---|---|
| 326 | Though the Asset Purchase Agreement was attached to the Sale Motion, it was represented to the Court that the "Long Positions" Barclays was purchasing, including "government securities, commercial paper, corporate debt, corporate equity, exchange traded derivatives and collateralized short-term agreements" had a "book value as of the date hereof of approximately $70 billion." | No factual dispute – argumentation only. Barclays' Response ¶ 356. | *See* Sale Motion and attached copy of Asset Purchase Agreement at 7 (Docket No. 60). | |
| 327 | Through the Asset Purchase Agreement attached to the Sale Motion and at the September 17, 2008 hearing, it was represented to the Court that Barclays would pay $250 million in cash and assume certain liabilities in exchange for the Purchased Assets. | No factual dispute – argumentation only. Barclays' Response ¶ 357. | *See* Sale Motion and attached copy of Asset Purchase Agreement at ¶ 3.1 (Docket No. 60); A.149 [Docket No. 352] 9/17/08 Tr. at 24:6-7 ). | |
| 328 | Through the Asset Purchase Agreement attached to the Sale Motion, it was represented to the Court that Barclays also would assume liability for $69 billion in "Short Positions" in consideration for the "Purchased Assets." | No factual dispute – argumentation only. Barclays' Response ¶ 358. | *See* Sale Motion and attached copy of Asset Purchase Agreement at ¶ 2.3(i) (Docket No. 60). | |
| 329 | Through Paragraph 3.3 of the Asset Purchase Agreement attached to the Sale Motion, it was represented to the Court that there would be a potential "Adjustment to Cash Amount" of up to $750 million to be determined by reference to the amount of gross profit, if any, Barclays realized relative to "LBI's mark (book value)" from the sale of any of the "Purchased Assets" within a year of the Closing Date. | No factual dispute – argumentation only. Barclays' Response ¶ 359. | *See* Sale Motion and attached copy of Asset Purchase Agreement at ¶ 3.3 (Docket No. 60). | |

| 330 | At the September 17, 2008 hearing, the purported value of the proposed Sale Transaction was described to the Court when the Court was asked to approve a break up fee based on the full value of the deal. | No factual dispute – argumentation only. Barclays' Response ¶ 364. | A. 148 [Docket No. 60] ¶¶15-18; A. 149 [Docket No. 352] 9/17/08 Tr. at 22:4-7. | |
|-----|-----|-----|-----|-----|
| 331 | At the September 17, 2008 hearing, Lehman's counsel informed the Court that "looking at it from the net of this transaction, there will be approximately 1,700,000,000 dollars yielded out of this transaction." | No factual dispute – argumentation only. Barclays' Response ¶ 365. | A. 149 [Docket No. 352] 9/17/08 Tr. at 22. | |
| 332 | On September 17, 2008, the Court entered an order approving bid procedures, including a break-up fee, in connection with the Sale Transaction. | Not disputed. Barclays' Response ¶ 367. | [Docket No. 88] | |
| 333 | On September 19, 2008, there was a hearing concerning the approval of the Sale Transaction (the "Sale Hearing"). | Not disputed. Barclays' Response ¶ 368. | Not provided. | |
| 334 | At the Sale Hearing, LBHI's counsel informed the Court that the proposed Sale Transaction had changed since the execution of the Asset Purchase Agreement. | No factual dispute – argumentation only. Barclays' Response ¶ 369. | See A. 150 [Docket No. 318] 9/19/08 Tr. at 46:19-25, 63:25-64:19. | |
| 335 | At the Sale Hearing, LBHI's counsel stated: [O]riginally, we were selling assets that had a value of seventy – approximately seventy billion dollars. And today, Your Honor, we're only selling assets that have a value of 47.4 billion dollars. Barclays is assuming liabilities, however, of 45.5 billion dollars in connection with those assets. So that has not changed from the original transaction ... . Barclays is still agreeing to pay the cure amounts on any leases that it assumes or that we assume and assign to it. Barclays is also agreeing to the same employee compensation agreements. And it is also agreeing to pay the 250 million dollars of goodwill to LBI. With respect to the real estate assets, Your Honor .... the purchaser [will] purchase the building[s] at the appraised amount[s] .... which [] were lower than we had anticipated. | No factual dispute – argumentation only. Barclays' Response ¶ 370. | A. 150 [Docket No. 318] 9/19/08 Tr. at 47:1-48:1 | |

50

| 336 | At the Sale Hearing, LBHI's counsel stated that, while the assets being sold originally had a value of $70 billion, because "the markets dropped" the Sellers were now seeking to sell assets having a value of "$47.4 billion." | No factual dispute – argumentation only. Barclays' Response ¶ 371. | A. 150 [Docket No. 318] 9/19/08 Tr. at 46:19-47:4. | |
|-----|---|---|---|---|
| 337 | By September 19, 2008, the notional value of the proposed Sale Transaction had shrunk because a question of "title and/or possession" as to some of the assets precluded Lehman from being able to transfer them. | No factual dispute – argumentation only. Barclays' Response ¶ 373. | A. 14 [Kelly] 126:2-128:15. | |
| 338 | At the Sale Hearing, LBHI's counsel stated that Barclays would be assuming $45.5 billion in liabilities in connection with the assets it was purchasing. | No factual dispute – argumentation only. Barclays' Response ¶ 374. | A. 150 [Docket No. 318] 9/19/08 Tr. at 47:5-7. | |
| 339 | At the Sale Hearing, the composition of the $47.4 billion in assets Barclays was to be acquiring and the $45.5 billion in liabilities Barclays was to be assuming was not explained to the Court. | No factual dispute – argumentation only. Barclays' Response ¶ 375. | *See generally* A. 150 [Docket No. 318] 9/19/08 Tr. at 47:5-7 | |
| 340 | At the Sale Hearing, it was represented to the Court that Barclays would assume a potential exposure of $1.5 billion in contract cure amounts. | No factual dispute – argumentation only. Barclays' Response ¶ 378. | A. 150 [Docket No. 318] 9/19/08 Tr. at 100:1-4. | |
| 341 | At the Sale Hearing, it was represented to the Court that Barclays would assume liability for employee compensation estimated to be $2 billion. | No factual dispute – argumentation only. Barclays' Response ¶ 380. | A. 150 [Docket No. 318] 9/19/09 Tr. at 99:22-25. | |
| 342 | At the Sale Hearing, it was represented to the Court that Barclays would still pay $250 million in cash. | Not disputed. Barclays' Response ¶ 381. | A. 150 [Docket No. 318] 9/19/08 Tr. at 47:14-15. | |

51

| 343 | At the Sale Hearing, neither Barclays or any other party made representations or disclosures to the Court regarding the Sale Transaction as being capital accretive to Barclays or Barclays' need to "preserve the buffer" as Barclays had stated on the September 17, 2008 analyst call. | No factual dispute – argumentation only. Barclays' Response ¶ 382. | *See generally* A. 150 [Docket No. 318] 9/19/08 Tr. | |
|---|---|---|---|---|
| 344 | At the Sale Hearing, LBHI's counsel described to the Court, a "Clarification Letter" that the parties were working on, as follows:<br><br>MS. FIFE: Some other changes that were made to the contracts affect what are called purchase assets and what are excluded assets. There was some confusion as to which subsidiaries, if any, were being sold. And we've clarified in a clarification letter which we're hoping to finalize and actually present to Your Honor whenever it comes down here. But in that letter, we're going to clarify that the only subsidiaries that are being purchased by Barclays are Lehman Brothers Canada Inc., Lehman Brothers Sudamerica SA and Lehman Brothers Uruguay SA. The latter two subsidiaries that I just referred to relate to a business that is called PIM, or Private Investment Management Business, which is a business that was not part of the original deal but is now being purchased by Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 384. | A. 150 [Docket No. 318] 9/19/08 Tr. at 48:5-17. | |
| 345 | The Clarification Letter was not finalized before the Sale Hearing concluded. | No factual dispute – argumentation only. Barclays' Response ¶ 385. | Not provided. | |
| 346 | The Clarification Letter was not presented to the Court at the Sale Hearing on September 19, 2008. | No factual dispute – argumentation only. Barclays' Response ¶ 386. | A. 150 [Docket No. 318] 9/19/08 Tr. at 133:21-137:14 (Debtor counsel offers the Asset Purchase Agreement and First Amendment into evidence). | |

52

| 347 | At the Sale Hearing, Ms. Fife informed the Court that the "major changes to the transaction," the changes that were "material," had been disclosed. | No factual dispute – argumentation only. Barclays' Response ¶ 387. | A. 150 [Docket No. 318]9/19/08 Tr. at 55:18-20. | |
|-----|---|---|---|---|
| 348 | At the Sale Hearing, the Court stated that even a $500 million change in the proposed Sale Transaction would be "material." | Not disputed. Barclays' Response ¶ 388. | A. 150 [Docket No. 318] 9/19/08 Tr. at 54:18-23. | |
| 349 | At the Sale Hearing, Ms. Fife informed the Court: "And just one other thing I wanted to point out to Your Honor we are keeping approximately twenty million dollars, twenty billion dollars of assets in LBI that are not being transferred. So those assets will have value and will inure to the benefit [of] the SIPC estate." | No factual dispute – argumentation only. Barclays' Response ¶ 389. | A. 150 [Docket No. 318] 9/19/08 Tr. at 55:23-56:3. | |
| 350 | At the Sale Hearing, Ms. Fife advised the Court that: "There was a provision in [the] deal originally which required the debtors to transfer 700 million dollars in cash to Barclays. And that is no longer the case. There's no cash that's being transferred to Barclays." | No factual dispute – argumentation only. Barclays' Response ¶ 390. | A. 150 [Docket No. 318] 9/19/08 Tr. at 54:21-25. | |
| 351 | At the Sale Hearing, counsel for LBHI, Harvey Miller, stated that "we're not transferring any cash to Barclays, that's out of the agreement." | No factual dispute – argumentation only. Barclays' Response ¶ 391. | A. 150 [Docket No. 318] 9/19/08 Tr. at 242:11-16. | |
| 352 | At the Sale Hearing, counsel for Barclays, Lindsee Granfield, stated, "Barclays is making this transaction possible to claims by subsidiary creditors ... [by] los[ing] the 700 million dollars in cash." | No factual dispute – argumentation only. Barclays' Response ¶ 392. | A. 150 [Docket No. 318] 9/19/08 Tr. at 200:7-12. | |
| 353 | At the Sale Hearing, the Committee advised it lacked sufficient time to complete its due diligence and reach an informed decision whether to support the Sale Transaction, stating that "[W]e're not affirmatively supporting the transaction, Your Honor, because there has been insufficient time for us to really do all the due diligence that we would feel should be done to take the next step of saying yes, this is the best deal and we're supportive actively." | No factual dispute – argumentation only. Barclays' Response ¶ 396. | A. 150 [Docket No. 318] 9/19/08 Tr. at 67:16-21. | |

53

| 354 | On Saturday, September 20, 2008, the Court entered an Order Under 11 U.S.C. §§ 105(a), 363 and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases (the "LBHI Sale Order"). | Not disputed. Barclays' Response ¶ 401. | Docket No. 258. | |
|---|---|---|---|---|
| 355 | The LBHI Sale Order approved the Sale Transaction based on the record presentedto the Court prior to and at the Sale Hearing. | No factual dispute – argumentation only. Barclays' Response ¶ 402. | LBHI Sale Order at 2. | |
| 356 | Among other provisions, the LBHI Sale Order provided that "[t]he Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by the parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have material adverse effect on the Debtors' estates and has been agreed to between the Committee, the Debtors and the Purchaser." | Reformulated by Barclays. Barclays' Response ¶ 404. | LBHI Sale Order at ¶ 25. | |
| 357 | While the Asset Purchase Agreement was being negotiated, signed and first presented to the Court for approval, the New York Fed provided temporary financial support to LBI. | Not disputed. Barclays' Response ¶ 412. | *See* A.151 [Leventhal Decl.] ¶ 6-7. | |
| 358 | As part of the Fed Repo, LBI had to post collateral to the New York Fed. | Not disputed. Barclays' Response ¶ 414. | A. 3 [Blackwell] 55:11-17; A. 12 [Hraska] 27:11-28:24. | |
| 359 | As in repo transactions generally, New York Fed required LBI to post as collateral securities valued in excess of the principal amount of the cash the New York Fed advanced. | Reformulated by Barclays. Barclays' Response ¶ 415. | BCI Ex. 30 [Leventhal Dec1.] | |

54

| 360 | The amount by which the value of securities transferred under a repurchase agreement exceeds the amount paid for those securities is often referred to as a "haircut." | Reformulated by Barclays. Barclays' Response ¶ 416. | BCI Ex. 96 [Seery Dep. Tr.] at 39: 12-40:21; BCI Ex. 85 [McDade Dep. Tr.] at 134:5-11; BCI Ex. 83 [Lowitt Dep. Tr.] at 27:17-29:6. | |
| --- | --- | --- | --- | --- |
| 361 | According to Shari Leventhal of the New York Fed, by Wednesday night, September 17, 2008, the New York Fed had required LBI to post as collateral securities valued at approximately $50.62 billion in exchange for which the New York Fed advanced to LBI approximately $46.22 billion in cash. | No factual dispute – non-responsive. Barclays' Response ¶ 417. | A. 151 [Leventhal Decl.] ¶ 9; see also A. 34 (Fed haircuts on 9/15/08). | |
| 362 | When the New York Fed learned that Barclays was to buy Lehman's broker-dealer operations, the New York Fed insisted that it be relieved of its short-term financing role for LBI and that Barclays instead provide such financing to LBI. | Not disputed. Barclays' Response ¶ 418. | A. 151 [Leventhal Decl.] , 7; see also A. 52; A. 53; A. 57. | |
| 363 | Relieving the New York Fed of the short-term financing role it had been providing for LBI was accomplished through a Repurchase Agreement, dated September 17, 2008, between Lehman and Barclays (the "Repurchase Agreement"). | No factual dispute – non-responsive. Barclays' Response ¶ 419. | A. 151 [Leventhal Decl.] ¶¶ 10-12. | |
| 364 | On September 18, 2008, pursuant to the Repurchase Agreement, Barclays forwarded to LBI approximately $45 billion in cash. | No factual dispute – argumentation only. Barclays' Response ¶ 422. | See A. 18 [LaRocca] 40:2-41:17; A. 12 [Hraska] 58:14-22, 60:15-25; A. 19 [Lowitt] 138:18-139:3,186:12-187:7; A. 22 [Petrie] 77:12-19; see also A. 79; A. 75 (haircut summary). | |

| 365 | In connection with the Repurchase Agreement, a Barclays email, dated September 19, 2008 (11:57 a.m.), from Marty Malloy to Gerard LaRocca described the "Repo Cash amount" as "45.00" billion, and the total "Securities/Cash" Barclays received as collateral as "52.19" billion. | No factual dispute – argumentation only. Barclays' Response ¶ 422. | A. 77. | |
|---|---|---|---|---|
| 366 | Lehman placed a value of $42.9 billion on the collateral that was successfully transferred to Barclays under the Repurchase Agreement on September 18, 2008. | No factual dispute – argumentation only. Barclays' Response ¶ 428. | A. 89; A. 88; A. 101; A. 12 [Hraska] 116:25-117:7. | |
| 367 | On the night of the 18th, Lehman Brothers placed $7 billion on deposit for the benefit of Barclays. | Reformulated by Barclays. Barclays' Response ¶ 430. | BCI Ex. 68 [Aug. 14, 2008 Hraska Dep. Tr.] at 50:8-11. | |
| 368 | In connection with the Repurchase Agreement, Barclays excluded from the collateral used to secure the Repurchase Agreement $5 billion in so-called RACER securities. | No factual dispute – argumentation only. Barclays' Response ¶ 436. | A. 12 [Hraska] 188:5-19; A. 7 [Denig] 139:11-140:8. | |
| 369 | Lehman executives charged with transferring collateral to secure the Repurchase Agreement understood and applied Barclays' "excluded assets" list to exclude select groups of assets from the Repurchase Agreement. | No factual dispute – argumentation only. Barclays' Response ¶ 440. | A. 12 [Hraska] 191:2-193:5; A. 7 [Denig] 52:5-15, 123:9-124:5. | |
| 370 | At the September 17, 2008 hearing on the Sale Transaction, the Repurchase Agreement was described to the Court as a means to continue short-term financing during the week of September 15, 2008 to enable an orderly liquidation of LBI. | No factual dispute – non-responsive. Barclays' Response ¶ 441. | A. 149 [Docket No. 352] 9/17/08 Tr. at 23-24. | |
| 371 | By the middle of the week of September 15, 2008, certain executives at Lehman and Barclays agreed that LBI would default on the Repurchase Agreement and Barclays would keep the $50 billion in collateral, including the $5 billion "haircut," it held against the $45 billion in cash it had given LBI under the Repurchase Agreement. | No factual dispute – argumentation only. Barclays' Response ¶ 444. | A. 19 [Lowitt] 135:14-139:3. | |
| 372 | Stephen King testified that he understood even before the Repurchase Agreement was executed that there was going to be a Lehman default under that agreement. | No factual dispute – non-responsive. Barclays' Response ¶ 445. | A. 15 [King] 80:11-81:18. | |

56

| 373 | King testified that before the Repurchase Agreement was executed he was planning for Barclays' receipt of the collateral posted under the Repurchase Agreement and how to manage the risk associated with these securities once Barclays received them. | No factual dispute – argumentation only. Barclays' Response ¶ 446. | A. 15 [King] 78:22-92:3. | |
|-----|------|------|------|---|
| 374 | On September 18, 2008 at 6:03 a.m., Reilly wrote to Lowitt, Gelband, Tonucci and Kelly, suggesting that the Repurchase Agreement presented a mechanism to deliver the "block discount" to Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 447 ("Barclays does not dispute that the cited document was sent and contains the words quoted in paragraph 447."). | A. 58. | |
| 375 | On September 18, 2008, Reilly wrote: I need some help resolving these issues today .... 3) Not clear on the amount of block discount or how we make it happen. Defaulting on repo could be the best as discount could be taken from haircut. If not that then we need to give business an allocation of block discount so they can mark down the books tonight. Does this create a problem as it could tip the broker early? Would we rather have that be in the sale price tomorrow? | No factual dispute – argumentation only. Barclays' Response ¶ 448 ("Barclays does not dispute that the cited document was sent and contains the words quoted in paragraph 448."). | A. 58. | |
| 376 | On September 19, 2008, LBI was placed in liquidation. | Not disputed. Barclays' Response ¶ 449. | Case No. 08-CIV-8119 (GEL) (S.D.N.Y.) [Docket No.3]. | |
| 377 | LBI's liquidation constituted an event of default under the Repurchase Agreement. | Not disputed. Barclays' Response ¶ 450. | A. 33 (Master Repurchase Agreement) at ¶¶ 2(a), 11; A. 68 (Notice of Termination). | |
| 378 | In connection with the Repurchase Agreement, Barclays issued a Notice of Default to LBI on September 19, 2008. | Not disputed. Barclays' Response ¶ 451. | A. 68. | |

| 379 | In September, 2008, Barclays estimated the excess collateral it received under the Repurchase Agreement to be "$7.19 billion." | No factual dispute – argumentation only. Barclays' Response ¶ 453. | A. 77; *see also* A. 75 (Barclays' "haircut summary" indicating excess collateral of $7.17 billion); A. 90 (opening balance sheet spreadsheet circulated to Barclays executives, valuing Repurchase Agreement assets at $44.8 billion (securities) plus $7 billion (cash), A. 93 (same); A. 102 (same). | |
|---|---|---|---|---|
| 380 | On September 21, 2008, King sent Ricci a document that said "[c]urrent best estimate is the portfolio inc 7 bn cash is 48.5 to 49bn." | Reformulated by Barclays. Barclays' Response ¶ 454. | A. 108; A. 23 [Ricci] 172:16-173:25. | |
| 381 | Reilly wrote in a September 17, 2008 email to Lowitt that the Asset Purchase Agreement did not provide for a discount from book value: I went thru all docs and did not see reference to the price haircut. If we want conservative marks to reflect block nature we need to know how much and then can allocate to most logical assets. | No factual dispute – argumentation only. Barclays' Response ¶ 455 ("Barclays does not dispute that the cited document was sent."). | A. 55. | |
| 382 | Lowitt responded to Reilly's September 17, 2008 email: "Since not in contract [it is] hard to see what to d[o]." | No factual dispute – argumentation only. Barclays' Response ¶ 456 ("Barclays does not dispute that the cited email was sent."). | A. 55. | |

58

NYI-4257215

| 383 | On the morning of September 18, 2008, Reilly suggested that "[d]efaulting on [the] repo could be the best as [the] discount could be taken from haircut." | No factual dispute – argumentation only. Barclays' Response ¶ 457 ("Barclays does not dispute that the cited email was sent."). | A. 59. | |
|-----|-----|-----|-----|---|
| 384 | Lowitt testified as follows: I think what was clear on the Friday, in part because of the difficulties that we have talked about, but also because the repo was now in place, that the repo represented - was part of what any new transaction was going to be and that what you had in the repo addressed many of the operational questions that we were not sure how to address, which was which of the assets Barclays was going to acquire, because clearly the ones in the repo became the basis of what they were going to acquire, as well as what was the financing haircut associated with that. | No factual dispute – non-responsive and argumentation only. Barclays' Response ¶ 460. | A. 19 [Lowitt] 135:17-136:10. | |
| 385 | Testifying about Reilly's proposal in his September 18, 2008 6:04 a.m. email that "[d]efaulting on [the] repo could be the best as [the] discount could be taken from haircut" (A. 58), Lowitt stated: Again, I don't have a recollection of this on the Thursday, but in reading the email here, you know, what Jerry is suggesting is that the repo transaction is a way in which we could deliver collateral to Barclays and that as a basic concept, the financing haircut is a similar concept to the item that we were talking about earlier, which is Barclays buying collateral for less than the marks to reflect the size of their purchase and the volatility of the underlying assets. | No factual dispute – argumentation only. Barclays' Response ¶ 461. | A. 19 [Lowitt] 137:14-138:4; see also A. 19 [Lowitt] 138:18-139:3. | |
| 386 | Tonucci testified that the Repurchase Agreement was employed to give Barclays the $5 billion discount agreed on September 16, 2008. | No factual dispute – argumentation only and evidence cited does not support fact. Barclays' Response ¶ 462. | A. 26 [Tonucci] 32:4-34:18. | |

59

| 387 | Tonucci testified as follows:<br>Q: Would it also be fair to say, therefore, that the discount was embedded in the haircut on the repo transaction?<br>A: In a repo transaction there is a haircut, a difference between the market value and the cash value received. You could view that as a discount. I think in this case it is fair to say that was the settlement mechanics and therefore the way that the differences between market value and cash paid was accomplished. There was in that sense a discount. | No factual dispute – argumentation only. Barclays' Response ¶ 463 ("Barclays does not dispute that Mr. Tonucci gave the testimony excerpted in paragraph 463."). | A. 26 [Tonucci] 33:10-34:2. | |
| --- | --- | --- | --- | --- |
| 388 | At the Sale Hearing, the Court was not informed of LBI's default on the Repurchase Agreement. | No factual dispute – non-responsive and argumentation only. Barclays' Response ¶ 464. | *See* A. 150 [Docket No. 318] 9/19/08 Tr. | |
| 389 | At the Sale Hearing, the Court was not told of an agreement that would allow Barclays to keep the "haircut." | No factual dispute – argumentation only. Barclays' Response ¶ 465. | *See* A. 150 [Docket No. 318] 9/19/08 Tr. | |
| 390 | In connection with the Repurchase Agreement, LBI agreed to provide Barclays $7 billion in cash to substitute for collateral it could not deliver, which cash Lehman obtained through this $7 billion loan from J.P. Morgan Chase ("Chase"). | No factual dispute – argumentation only. Barclays' Response ¶ 468. | A. 12 [Hraska] 50:8-22, 53:13-54:10, 57:2-4. | |
| 391 | On September 19, 2008, Hraska transferred or pledged $1.035 billion in securities for the benefit of Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 469. | A. 12 [Hraska] 49:19-51:18, 102:7-03:24, 242:7-11, 252:7-260:15. | |
| 392 | Hraska expected that by pledging or transferring the $1.035 billion in securities on September 19, 2008 he would be able to secure the return of $1.035 billion in cash from Barclays to pay off part of the $7 billion loan. | No factual dispute – argumentation only. Barclays' Response ¶ 470 ("Barclays does not dispute that this was Mr. Hraska's intent at the time."). | A. 12 [Hraska] 49:19-51:18, 102:7-103:24, 252:7-260:15. | |

| 393 | LBI did not receive $1.035 billion in cash from Barclays as a result of Hraska pledging or transferring the $1.035 billion in securities on September 19, 2008. | No factual dispute – argumentation only. Barclays' Response ¶ 471. | A. 12 [Hraska] 50:23-53:16, 102:7-103:24. | |
|---|---|---|---|---|
| 394 | LBI was unable to repay any part of the $7 billion loan from Chase using cash received from Barclays for the $1.035 billion in securities. | No factual dispute – argumentation only. Barclays' Response ¶ 472. | A. 12 [Hraska] 50:23-53:16, 102:7-103:24. | |
| 395 | The securities marked by Lehman at $1.035 billion that were pledged to Barclays on Friday, September 19, 2009 were listed on Schedule B of the executed Clarification Letter. | Reformulated by Barclays. Barclays' Response ¶ 473. | BCI Ex. 252 [September 21, 2008 8:12 am email from R. Miller to A. Keller, *et al* ]; BCI Ex. 311 [Sept. 25, 2008 5:10 pm email from D. Murgio to T. Moore, *et al.,* with attachments]; BCI Ex. 316 [Sept. 26, 2008 1:42 pm email from C. Bell to S. Burian, *et al.,* with attachment]; BCI Ex. 324 [September 29, 2008 10:47 am email from H. Miller to D. Murgio]. | |
| 396 | Ricci testified that as of the morning of September 19, 2008 he believed Barclays did not have a sufficient "cushion" in the Sale Transaction. | No factual dispute – argumentation only. Barclays' Response ¶ 475. | A. 23 [Ricci] 156:9-157:22. | |
| 397 | In connection with the Sale Transaction, Klein testified that he was instructed by Barclays to ask Lehman for more assets, "to go in and express that we needed more assets." | No factual dispute – argumentation only. Barclays' Response ¶ 476. | A. 17 [Klein] 94:3-18. | |

| 398 | Barclays informed Lehman on September 19, 2008 that there was a "shortfall" in the amount of assets it would receive through the Repurchase Agreement, but Barclays did not say how much difference had to be made up, only that, without more, the Sale Transaction would not close. | No factual dispute – argumentation only. Barclays' Response ¶ 477. | A. 16 [Kirk] 100:10-102:24; A. 23 [Ricci] 121:8-123:5; *see* A. 17 [Klein] 95:2-97:20. | |
|---|---|---|---|---|
| 399 | In connection with the Sale Transaction, on the morning of September 19, 2008, McDade instructed Lowitt to identify "additional sources of value" to "include in a new transaction" with Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 479. | A. 19 [Lowitt] 62:8-15. | |
| 400 | In connection with the Sale Transaction, McDade testified that Barclays demanded additional assets on September 19, 2008 because it was "uncomfortable with the new aspect of what they now had ... agreed upon.") | No factual dispute – argumentation only. Barclays' Response ¶ 480. | A. 20 [McDade] 164:23-165:13. | |
| 401 | Barclays negotiators informed the Lehman negotiators that Barclays would not be willing close the transaction unless "additional" value could be identified. | Reformulated by Barclays. Barclays' Response ¶ 480. | BCI Ex. 59 [Clackson Dep. Tr.] at 62: 12-63:20; BCI Ex. 91 [Ricci Dep. Tr.] at 121:8-15, 121:8-15, 140: 17-141: 10, 155: 15-158:3; BCI Ex. 79 [Klein Dep. Tr.] at 94:5-97:3. | |
| 402 | In connection with the Sale Transaction, on the morning of September 19, 2008, Ricci instructed Lowitt "to identify where there were different sources of value" to transfer to Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 481. | A. 19 [Lowitt] 60:10-24. | |
| 403 | Mr. Lowitt testified that he was asked by both Mr. McDade and Mr. Ricci to identify different sources of value. | Reformulated by Barclays. Barclays' Response ¶ 481. | Not provided. | |
| 404 | In connection with the Sale Transaction, Lowitt testified these "additional sources of value" that potentially could be transferred to Barclays would be "elements" of a different deal than the one that had been reached on "Monday and Tuesday." | No factual dispute – argumentation only. Barclays' Response ¶ 482. | A. 19 [Lowitt] 59:7-16. | |

| 405 | In connection with the Sale Transaction, the assets that Lowitt was instructed to identify beginning on September 19, 2008 were assets in addition to those included in the Repurchase Agreement. | No factual dispute – argumentation only. Barclays' Response ¶ 483. | A. 20 [McDade] 138:18-140:27; A. 26 [Tonucci] 118:4-22; A. 23 [Ricci] 172:16-173:25. | |
|---|---|---|---|---|
| 406 | In connection with the Sale Transaction, Lowitt knew that finding additional assets was "important." | No factual dispute – argumentation only. Barclays' Response ¶ 484. | A. 19 [Lowitt] 63:24-64:8,64:17-65:2, 148:8-16 ("The whole exercise of identifying additional collateral, which as we talked about was a result of a conversation with Bart as well as with Rich Ricci, was a very important exercise for us on the Friday, which is why I think I would have talked about it in this way."). | |
| 407 | In connection with the Sale Transaction, Kirk worked with Lowitt, Tonucci and Kelly to satisfy Barclays' request for additional assets. | No factual dispute – argumentation only. Barclays' Response ¶ 487. | A. 20 [McDade] 164:23-165:21; *see also* A. 19 [Lowitt] 60:10-63:14; A. 26 [Tonucci] 54:24-56:20; A. 14 [Kelly] 129:6-130:2. | |
| 408 | In connection with the Sale Transaction, Kirk's understanding of the "project" to find additional assets that potentially could be transferred to Barclays was to continue to locate additional assets until Barclays said "that's enough." | No factual dispute – argumentation only. Barclays' Response ¶ 488. | A. 16 [Kirk] 112:10-24. | |

63

| 409 | In connection with the Sale Transaction, McDade testified that "[i]t was very clear that Barclays still wanted more value in terms of assets." | No factual dispute – argumentation only. Barclays' Response ¶ 489. | A. 20 [McDade] 172:2-22. | |
|-----|-----|-----|-----|---|
| 410 | In connection with the Sale Transaction, Lowitt was given a "target" by McDade of $3 to $4 billion of additional assets to identify. | No factual dispute – argumentation only. Barclays' Response ¶ 490. | A. 19 [Lowitt] 62:16-20; *see also* A. 78 ("The 15c3 lockup looks ok at 1.3 bn ... so we are short 1.7 bn"); A. 19 [Lowitt] 151:2-9 ("[m]y recollection is between 3 and 4, and the math here in [A. 78] suggests that what we were targeting was $4 billion."); A. 26 [Tonucci] 203:23-204:10 (expectation after Friday's court hearing was $3 billion in unencumbered and 15c3-3 assets). | |
| 411 | In connection with the Sale Transaction, Kirk wrote an email, dated September 19, 2008, to McDade stating that Ricci "just told me he won't blow up the deal by being a pig." | No factual dispute – argumentation only. Barclays' Response ¶ 491. | A. 81; *see* A. 16 [Kirk] 185:24-189:14. | |
| 412 | In connection with the Sale Transaction, when Kirk informed Ricci there were no more available assets to give, Ricci told Kirk "we're not going to be pigs and go after every last nickel." | No factual dispute – argumentation only. Barclays' Response ¶ 492. | A. 23 [Ricci] 158:4-159:8. | |
| 413 | In connection with the Sale Transaction, Lowitt and others at Lehman "look[ed] in a number of places to determine - to find extra value." | No factual dispute – argumentation only. Barclays' Response ¶ 493. | A. 19 [Lowitt] 151:2-5; A. 26 [Tonucci] 54:24-56:20; A. 14 [Kelly] 128:16-130:15. | |

| 414 | In connection with the Sale Transaction, Lowitt and others searched for additional assets located in a so-called "15c3 lock up." | No factual dispute – argumentation only. Barclays' Response ¶ 494. | A. 19 [Lowitt] 59: 17-60:2. | |
|-----|-----|-----|-----|-----|
| 415 | Lowitt identified 15c3 lock-up excess and unencumbered LBI collateral as sources of value that were identified on the Friday. | Reformulated by Barclays. Barclays' Response ¶ 494. | Not provided. | |
| 416 | In connection with the Sale Transaction, Lehman personnel under the direction of Lowitt, Tonucci and Kelly searched the so-called "clearance boxes" maintained for its benefit by JP Morgan Chase and other entities, such as the Depository Trust & Clearing Corporation ("DTCC"), and performed detailed "depot analysis" and database reviews to try to locate assets that potentially could be sent to Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 496. | A. 98 (Lehman's 9/21/08 "depot analysis"); A. 99; A. 12 [Hraska] 48:9-12, 107:18-108:5, 212:5-215:23; 7 [Denig] 64:17-65:18, 105:10-108:14. | |
| 417 | In connection with the Sale Transaction, Lowitt and others searched on Friday, September 19, 2008, and over the weekend after the Sale Hearing, for additional "unencumbered assets," to potentially convey to Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 497. | A. 19 [Lowitt] 59: 17-*60:2; see also* A.115; A.116; A. 100; A. 117; A. 87; A.12 [Hraska] 50:23-51:18, 296:11-21. | |
| 418 | In connection with the Sale Transaction, the term "unencumbered assets" refers to assets that had not been pledged for other purposes and therefore potentially could be given to Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 497. | *See* A.12 [Hraska] 34:14-19; A.116; A.117; *see also* A. 12 [Hraska] 50:23-51:18. | |
| 419 | In connection with the Sale Transaction, the term "unencumbered assets" was sometimes used to designate assets identified as available to be transferred to Barclays as Purchased Assets. | Reformulated by Barclays. Barclays' Response ¶ 498. | Not provided. | |

65

| 420 | On Friday September 19, Lehman executives reported to Barclays that they had identified additional value in: (1) unencumbered collateral located in LBI's "clearance boxes" that was marked by Lehman at approximately $1.9 billion and (2) an excess amount of value held in LBI's customer reserve account, which was estimated by Lehman to be over $1 billion. | Reformulated by Barclays. Barclays' Response ¶ 499. | BCI Ex. 83 [Lowitt Dep. Tr.] at 59: 17-60:9; BCI Ex. 98 [Tonucci Dep. Tr.] at 88:19-89:24; BCI Ex. 78 [Kirk Dep. Tr.] at 105:4-15. | |
|-----|-----|-----|-----|-----|
| 421 | On September 20, 2008, Klein wrote in an email to Diamond that stayed, in part:<br>Great day.<br>We clawed back 3B more of value in the transaction and cut the building prices by 160 mm. | No factual dispute – argumentation only. Barclays' Response ¶ 500 ("Barclays does not dispute that Mr. Klein wrote those words in an email to Mr. Diamond."). | A. 82. | |
| 422 | Lowitt testified as follows:<br>Q: And what, as best you recall, is the value of those additional elements, dollar value?<br>A: The dollar value of the unencumbered collateral was in and around $2 billion, and, you know, the 15c3 excess, my understanding of the deal that was reached vis-a-vis the 15c3 excess was round $750 million to 800 million dollars. | No factual dispute – argumentation only. Barclays' Response ¶ 501 ("Barclays does not dispute that Mr. Lowitt testified as indicated in paragraph 501."). | A. 19 [Lowitt] 60:3-9; *see* A. 97 (September 20 update on search of assets); A. 100 (identifying $2.3 billion in potentially transferable assets). | |
| 423 | Mr. Lowitt and his team identified "unencumbered assets" marked by Lehman as being worth approximately $1.9 billion. | Reformulated by Barclays. Barclays' Response ¶ 502. | BCI Ex. 83 [Lowitt Dep. Tr.] at 59: 17-60:24, 63:9-14; BCI Ex. 98 [Tonucci Dep. Tr.] at 55:4-10, 88:19-89:24. | |

| 424 | Some listings of the unencumbered "clearance box" assets identified over the weekend of September 19, 2008 through September 21, 2008 showed Lehman marks as high as $2.3 billion. | Reformulated by Barclays. Barclays' Response ¶ 503. | BCI Ex. 341 [Pfleiderer Report] at ¶ 48 n.48; BCI Ex. 78 [Kirk Dep. Tr.] at 106:14-17; *see* BCI Ex. 251 [Email chain including Sept. 21, 2008 6:11 am email from P. Tonucci to R. Miller, *et al.,* and Sept. 21, 2008 5:17 am email from M. Forrest to I. Lowitt, *et al.,* with attachment]; BCI Ex. 252 [Sept. 21, 2008 8:12 am email from R. Miller to A. Keller, *et al.,* with portion of attachment omitted]. | |
| --- | --- | --- | --- | --- |
| 425 | Kirk testified at his deposition with respect to the Sale Transaction, "[t]his transaction was very different than what had been previewed [to the Court] two days before, and it would have to be explained why it came up." | No factual dispute – argumentation only. Barclays' Response ¶ 507 ("Barclays does not dispute that Mr. Kirk testified as indicated in paragraph 507."). | A. 16 [Kirk] *82:18-25; see also* A. 19 [Lowitt] 59:7-60:16. | |
| 426 | The Clarification Letter, dated as of September 20, 2008, was finalized and executed on September 22, 2008. | Not disputed. Barclays' Response ¶ 510. | *See* A.2 [Berkenfeld] 260:22-261:17; 298:4-299:9; A. 18 [LaRocca] 126:25-128:3. | |

| 427 | The Clarification Letter was not put before the Court for approval at the Sale Hearing on September 19, 2008. | No factual dispute – argumentation only. Barclays' Response ¶ 513. | Not provided. | |
|---|---|---|---|---|
| 428 | The Court did not review the Clarification Letter prior to or at the Sale Hearing on September 19, 2008. | No factual dispute – non-responsive and argumentation only. Barclays' Response ¶ 514. | Not provided. | |
| 429 | The Clarification Letter was filed along with the Asset Purchase Agreement and a First Amendment on September 22, 2009. | Reformulated by Barclays. Barclays' Response ¶ 515. | Not provided. | |
| 430 | The Clarification Letter was never presented to the Court in a motion for approval and has never been the subject of a court order approving it. | No factual dispute – argumentation only. Barclays' Response ¶ 516. | Maguire Decl. Ex. 19 (August 11, 2009 Hearing Tr.) at 106:17-107:3. | |
| 431 | The Clarification Letter on its face amends the definition of "Purchased Assets" contained in the original APA. | Reformulated by Barclays. Barclays' Response ¶ 518. | Not provided. | |
| 432 | The Clarification Letter defined "Purchased Assets" to include "the securities owned by LBI and transferred to [Barclays] or its Affiliates under the Barclays Repurchase Agreement ... as specified on Schedule A previously delivered by Seller and accepted by [Barclays]. | Not disputed. Barclays' Response ¶ 519. | A. 32 ¶ l(a)(ii). | |
| 433 | The draft Clarification Letter circulated at 2:29 pm on September 20, 2008 shows the change in the definition of "Purchased Assets" to include all assets transferred to Barclays under the Repurchase Agreement. | Reformulated by Barclays. Barclays' Response ¶ 520. | Not provided. | |
| 434 | In a draft of the Clarification Letter at approximately 7:30 p.m. on September 19, 2008, the definition of "Purchased Assets" still included the "Long Positions," but stated it was "understood that the Long Positions referred to in clause (d) of Purchased Assets do not have a book value of approximately $70 billion." | Not disputed. Barclays' Response ¶ 521. | A. 74 ¶ l(a). | |

| 435 | The draft Clarification Letter circulated at 2:29 pm on September 20, 2008 was the first such draft circulated that showed the change in the definition of "Purchased Assets" to include the clearance box assets. | Reformulated by Barclays. Barclays' Response ¶ 522. | Not provided. | |
|-----|---|---|---|---|
| 436 | Included within the definition of Purchased Assets in the Clarification Letter were the securities to be listed on Schedule A and the securities held in LBI's clearance boxes, which at the close of business on September 21, 2008 were as specified on Schedule B to the Clarification Letter. | No factual dispute – argumentation only. Barclays' Response ¶ 523. | A. 32 ¶ l(a)(ii). | |
| 437 | The final versions of Schedule A and Schedule B to the Clarification Letter were filed with the Court under seal on December 18, 2008. Neither Schedule ascribed market value to any security or a total market value for all the securities. | No factual dispute – argumentation only. Barclays' Response ¶ 524. | Schedule A and Schedule B [Docket No. 2303). | |
| 438 | Schedule A was described in the Clarification Letter as "the securities owned by LBI and transferred to Purchaser or its Affiliates under the Barclays Repurchase Agreement," which was defined as "the September 18, 2008 repurchase arrangement among Purchaser and/or Affiliates and Bank of New York [("BONY")] as collateral agent." | Not disputed. Barclays' Response ¶ 525. | A. 32 ¶¶ l(a) (ii), 13. | |
| 439 | BONY marked the securities on Schedule A at $45,037,075,446. | Reformulated by Barclays. Barclays' Response ¶ 526. | Not provided. | |
| 440 | Lehman ascribed a total market value of $42,902,924,897 to the securities on Schedule A. | No factual dispute – argumentation only. Barclays' Response ¶ 527. | *See* A. 89 (Lehman's valuation of Schedule A subtracting $7 billion in "TPCASH," which represents the $7 billion cash placeholder for the collateral shortfall on September 18 under the repo); *see also* A. 132 ("PCG Value" of $42,578,981,368 in Barclays spreadsheet to its auditors); A. 131. | |

| | | | | |
|---|---|---|---|---|
| 441 | Barclays claims that section l(a)(ii)(B) of the Clarification Letter entitles it to approximately $1.035 billion that was transferred or pledged to Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 533. | *See* Letter from Jonathan Hughes, Barclays, to James W. Giddens, dated May 13, 2009, at 5. | |
| 442 | The draft Clarification Letter that existed at the time of the Sale Hearing made no reference to the clearance box assets. | No factual dispute – argumentation only. Barclays' Response ¶ 538. | *See* Maguire Decl. Ex. 11. | |
| 443 | The DTCC is a privately-owned company that, through various subsidiaries, provides clearing, settlement and information services to the domestic and global securities industry. | Not disputed. Barclays' Response ¶ 540. | Not provided. | |
| 444 | In the week before the Sale Hearing, the DTCC had concerns about LBI's ability to satisfy its liabilities to the DTCC in connection with its open trading positions. | Not disputed. Barclays' Response ¶ 541. | LBHI Sale Order' E [Docket No. 258]; A. 150 [Docket No. 318] 9/19/08 Tr. at 49:8-17, 50:6-14, 51:24-53:8). | |
| 445 | Barclays refused to assume LBI's liabilities to DTCC beyond a limited $250 million amount. | No factual dispute – argumentation only. Barclays' Response ¶ 542. | *See* First Amendment To Asset Purchase Agreement ¶ 4 [Docket No. 280]; A. 20 [McDade] 278:12-280:16. | |
| 446 | Over the course of the weekend of September 20 and 21, 2008, it appeared that DTCC's concerns might derail the entire transaction. Tonucci wrote in an email that the DTCC's concerns were "[p]ossibly fatal" (Maguire Decl. Ex. 25), and Bart McDade testified that the DTCC issue could "stop the deal." | No factual dispute – argumentation only. Barclays' Response ¶ 545. | A. 20 [McDade] 278:9- 280:16. | |
| 447 | Archibald Cox testified that he had been concerned that the deal might "not go through" because of the DTCC's concerns. | Not disputed. Barclays' Response ¶ 546. | A. 6 [Cox] 92:23-93:8. | |

| 448 | Barclays had previously questioned the value of Lehman's DTCC assets, which were "the most illiquid and hardest to value securities that Lehman Brothers owned on its balance sheet." | No factual dispute – argumentation only. Barclays' Response ¶ 548. | A. 16 [Kirk] 106:4-108:24. | |
|---|---|---|---|---|
| 449 | On early Monday morning, September 22, 2008, the DTCC, Barclays, and the Trustee executed the DTCC Letter. | Not disputed. Barclays' Response ¶ 550. | Maguire Decl. Ex. 23. | |
| 450 | The DTCC Letter provides: Winding Down of Accounts. Barclays has indicated, and hereby agrees, that all of the accounts maintained at the Clearing Agencies Subsidiaries (the "Accounts") constitute "Excluded Assets" within the meaning of the Asset Purchase Agreement. Accordingly, pursuant to the authority granted to the Trustee in the Orders, the Trustee hereby instructs the Clearing Agency Subsidiaries to close out the pending transactions in the Accounts of the Clearing Agency Subsidiaries and to use the proceeds in accordance with the Rules and Procedures of the Clearing Agency Subsidiaries. Such liquidation transactions shall be transferred to, and closed out by, the relevant Clearing Agency subsidiary, in the same manner as it closes out positions of Participants/Members for whom it has ceased to act. As Part of this closeout process, the Trustee hereby authorizes DTC to accept and act upon instructions from NSCC to deliver securities from the DTC LBI Accounts to NSCC's account, in order to reduce or eliminate LBI's outstanding delivery obligations to NSCC. | Not disputed. Barclays' Response ¶ 550. | Maguire Decl. Ex. 23. ¶ 1. | |
| 451 | On September 19, 2008, Lehman and Barclays executives agreed to include in the Sale Transaction excess cash or securities that might be released from LBI's Rule 15c3-3 accounts. | No factual dispute – argumentation only. Barclays' Response ¶ 556. | A. 20 [McDade] 162:8-164:5; A. 16 [Kirk] 105:4-106:19; A. 19 [Lowitt] 59:17-20; A. 23 [Ricci] 164:16-22, 165:18-25. | |

| 452 | The release of any excess cash or securities from LBI's Reserve Account required regulatory approval. | No factual dispute – argumentation only. Barclays' Response ¶ 562. | *See, e.g.,* A. 20 McDade] 282:22-283:4 (Lehman's promise to convey 15c3-3 assets "most definitely" required regulatory approval); A. 26 [Tonucci] 58:12-59:11 ("[i]t was always understood that there was a regulatory approval that would be required"); A. 1 [Azerad] 196:2-197:4 (the transfer of 15c3-3 assets and reduction in the amount segregated under Rule 15c3-3 required regulatory approval). | |
| --- | --- | --- | --- | --- |
| 453 | McDade was not aware that the transfer of LBI's Rule 15c3-3 Securities to Barclays under the Clarification Letter ever became unconditional. | No factual dispute – argumentation only. Barclays' Response ¶ 564. | A. 20 [McDade] 285:3-13. | |
| 454 | Barclays claims that it is entitled to $769 million of securities that LBI had maintained in a reserve account pursuant to SEC Rule 15c3-3 or securities of substantially the same nature and value. | Not disputed. Barclays' Response ¶ 567. | *See* Letter from Jonathan Hughes, Barclays, to James W. Giddens, dated May 13, 2009 at 6-7. | |

72

| 455 | The transfer to Barclays of assets from LBI's Rule 15c3-3 accounts was not disclosed to the Court or discussed at the September 17 hearing or at the Sale Hearing. | No factual dispute – argumentation only. Barclays' Response ¶ 569. | *See generally* 9/19/08 Tr. [Docket No. 318]; 9/17/08 Tr. [Docket No. 352]. | |
| --- | --- | --- | --- | --- |
| 456 | At 4:07 p.m. on September 21, 2008, Barclays' Tim Stack received an email from Francis Pearn stating that "[h]ere are the OCC statements for LBI as of 9/22 reflecting our cash and securities collateral held for LBI account 074." Pearn attached OCC account statements showing that LBI's accounts contained more than $2 billion in margin, including approximately $252 million in letters of credit, $1.08 billion in cash, and $814 million in government securities and that LBI's margin was in excess of the OCC's requirements. | No factual dispute – argumentation only. Barclays' Response ¶ 576. | Not provided. | |
| 457 | The draft margin transfer clause was deleted from the next draft of the Clarification Letter that the Trustee received at 4:36 a.m. on Monday, September 22, 2008, and it never reappeared in any subsequent draft or in the executed version of the Clarification Letter. | No factual dispute – argumentation only. Barclays' Response ¶ 579. | *See* Maguire Decl. Exs. 16-18; A. 32. | |
| 458 | The parenthetical expression "(and any property that may be held to secure obligations under such derivatives)" did not appear in any draft of the Clarification Letter provided to the Trustee; it was contained only in the execution copy of the Clarification Letter. | No factual dispute – argumentation only. Barclays' Response ¶ 580. | *See* A. 32 ¶ l(a)(ii)(C); Kobak Decl. ¶ 17. | |
| 459 | The parenthetical in paragraph l(a)(ii)(C) of the Clarification Letter does not mention any margin or clearing funds, and does not mention the approximately $2.5 billion in LBI's margin and funds that was at the OCC. | No factual dispute – argumentation only. Barclays' Response ¶ 584. | *See* A. 32 ¶ l(a)(ii)(C). | |

73

| 460 | During Rule 2004 discovery in this case, Barclays designated Ricci as its Rule 30(b)(6) witness on "[t]he negotiation and drafting of the Clarification Letter and of the TAA regarding the actual or proposed transfer to Barclays of ... any Exchange Deposit to which Barclays claims entitlement under the Clarification Letter, TAA or otherwise" and "[t]he timing and extent of disclosures to the Bankruptcy Court ... regarding the actual or proposed transfer to Barclays of ... any exchange deposit to which Barclays claims entitlement under the Clarification Letter, TAA or otherwise." | No factual dispute – argumentation only. Barclays' Response ¶ 590. | Maguire Decl. Ex. 32 [Debtors' Third Rule 30(b)(6) Deposition Notice to Barclays on Issues Pertaining to Exchange-Traded Derivatives and Exchange Deposits, Schedule A, dated Aug. 12, 2009]. | |
|---|---|---|---|---|
| 461 | According to Ricci, Barclays cannot recall "whether anyone at Barclays had any discussions with anyone at Lehman as to whether margin at OCC or any other exchange was included in the sale to Barclays." | No factual dispute – argumentation only. Barclays' Response ¶ 591. | A. 23 [Ricci] 249:21-250:4. | |
| 462 | Approximately $1.3 billion in cash assets held at the OCC has already been transferred to Barclays. | No factual dispute – argumentation only. Barclays' Response ¶ 600. | *See* Maguire Decl. ¶ 2, Ex. 12 at 2 (LBI's OCC margin as of September 23 included $1,375,422,113.24 in cash); Kobak Decl. ¶ 20. | |
| 463 | LBI included approximately $507 million of its deposits at the OCC as a debit item in computing its required reserve for the protection of customers under Rule 15c3-3. | No factual dispute – argumentation only. Barclays' Response ¶ 602. | *See* Maguire Decl. Ex. 35 at 5 (including ($507,418,000) for "OCC Proprietary Qualified Collateral" in 15c3-3 reserve analysis). | |

NYI-4257215

| 464 | By counting its customer-related margin at the OCC as property available for the protection of customers, LBI was permitted to maintain a commensurately lower amount in its Reserve Account. | No factual dispute – argumentation only. Barclays' Response ¶ 603. | Affidavit of Daniel McIsaac ¶ 45 [LBI Docket No. 1867], dated Oct. 5, 2009. |
|---|---|---|---|
| 465 | The Trustee signed the Transfer and Assumption Agreement ("TAA") late on September 19, 2008, or early on September 20, 2008. | Reformulated by Barclays. Barclays' Response ¶ 605. | Not provided. |
| 466 | The OCC and Barclays executed the TAA over the weekend of September 20-21, 2008 and/or on the morning of September 22, 2008. | Reformulated by Barclays. Barclays' Response ¶ 606. | Not provided. |
| 467 | Ricci had no role in negotiating or drafting the TAA and has no knowledge regarding discussions Barclays had with other parties to the TAA. | No factual dispute – argumentation only. Barclays' Response ¶ 607. | A. 23 [Ricci] 220:21-24, 221:12-24. |
| 468 | Ricci testified that Michael Klein negotiated the TAA, but Klein did not recall having seen the TAA. | No factual dispute – argumentation only. Barclays' Response ¶ 608. | A. 23 [Ricci] at 221:5-7; A. 17 [Klein] 193:9-23. |
| 469 | The TAA provides, among other things, that "Lehman hereby sells, assigns, transfers, and sets over to Barclays, without recourse or without representation or warranty (other than as expressly provided herein), all of Lehman's rights, title, interests, powers, privileges, remedies, obligations, and duties in, to, under, and in respect of the Account [defined in the agreement as all of LBI's accounts at the OCC, as of the Effective Date including with respect to: (i) the Clearing Fund deposit; (ii) all margin deposits held by OCC with respect to the Account; (iii) all settlement obligations with regard to transactions in cleared contracts; and (iv) all rights and obligations in respect of exercises of option contracts and assignments of such exercises." | Reformulated by Barclays. Barclays' Response ¶ 609. | BCI Ex. 3 [TAA] at § 1 (a) (emphasis added). |
| 470 | The TAA was never filed with the Court or presented to the Court for approval. | No factual dispute – argumentation only. Barclays' Response ¶ 613. | Not provided. |

| 471 | Barclays paid $250 million in cash to DTC as a guaranty on behalf of Lehman pursuant to a letter, dated September 22, 2008, between DTC, Barclays and the SIPA Trustee. | No factual dispute – unresponsive. Barclays' Response ¶ 616. | Maguire Decl. Ex. 23 at 2. | |
|-----|---|---|---|---|
| 472 | In connection with the Sale Transaction, Barclays paid $238,200,978 in contract cure liabilities through July 14, 2009. | Reformulated by Barclays. Barclays' Response ¶ 617 (Barclays states that A. 136 reflects only aggregate cure payments through July 14, 2009). | A. 136. | |
| 473 | In connection with the Sale Transaction, Barclays produced in discovery a spreadsheet showing that the aggregate amount of bonuses paid to transferred Lehman employees appears to be no higher than $1.55 billion, excluding payroll items, taxes, severance and other non-bonus items. | No factual dispute – argumentation only. Barclays' Response ¶ 618. | A. 137; A. 9 [Exall] 78:22-84:3, 108:11-109:9, 110:22-115:18, 124:22-125:6, 128:8-137:7, 141:5-144:12, 151:15-23. | |
| 474 | LBHI is not a party to the December 2008 Settlement. | No factual dispute – argumentation only. Barclays' Response ¶ 620. | Docket No. 2420] 12/22/08 Tr. at 32:6-34:21. | |
| 475 | On December 5, 2008, the Trustee filed his Motion Under 11 U.S.C. §§ 105 And 363 And Fed. R Bankr. P. 9019(a) For Entry Of An Order Approving Settlement Agreement in the SIPA proceeding ("Settlement Motion"). | Not disputed. Barclays' Response ¶ 621. | A. 151 [LBI Docket No. 387]. | |
| 476 | On December 19, 2008, the Committee filed its limited objection to the Settlement Motion (the "Committee's Limited Objection"). | Reformulated by Barclays. Barclays' Response ¶ 624. | LBI Docket No. 453. | |
| 477 | The Committee requested an adjournment of consideration of the Settlement Motion until a final reconciliation of the Sale Transaction had been provided and the Committee concluded its investigation into the Sale Transaction. | Not disputed. Barclays' Response ¶ 625. | LBI Docket No. 453. | |

76

| 478 | Counsel for Barclays made no statement at the December 22, 2008 hearing on the settlement motion regarding the total financial assets included in the Sale Transaction. | No factual dispute – unresponsive. Barclays' Response ¶ 626. | Docket No. 2420. | |
|---|---|---|---|---|
| 479 | Pursuant to the December 2008 Settlement, both securities and cash were transferred to Barclays. | Not disputed. Barclays' Response ¶ 628. | A. 151 [LBI Docket No. 387. | |
| 480 | The securities transferred to Barclays pursuant to the December 2008 Settlement were listed on a Annex A to the Settlement Agreement. | Reformulated by Barclays. Barclays' Response ¶ 629. | A. 151 [LBI Docket No. 387]. | |
| 481 | The version of Annex A to the December 2008 Settlement Agreement filed under seal on December 8, 2008 had no market values for the securities on it. | Not disputed. Barclays' Response ¶ 631. | LBI Docket No. 403. | |
| 482 | Pursuant to the December 2008 Settlement, Barclays also was to receive $1.25 billion in cash to "partially account for the undelivered Fed Portfolio Securities that will not be delivered to Barclays as part of the Settlement Securities (because they have been liquidated by JP Morgan) and the decline in value of the Settlement Securities since September 19, 2008 ...." | No factual dispute – unresponsive. Barclays' Response ¶ 634. | A. 151 [LBI Docket No. 387] at Settlement Motion ¶ 20(b); *see also id.* at Settlement Agreement § l(a). | |
| 483 | Pursuant to the December 2008 Settlement, Barclays also was to receive $14,942,678 "(representing principal and interest payments, and any other distribution, on the Delivered Securities attributable to the period on and after September 18, 2008 which were received in LBI and/or JPMorgan accounts and not heretofore paid to BarCap), plus interest accrued thereon ...." | No factual dispute – unresponsive. Barclays' Response ¶ 635. | A. 151 [LBI Docket No. 387] at Settlement Motion ¶ 20(c); *see also id.* at Settlement Agreement § l(b). | |
| 484 | At the hearing in connection with the Settlement Motion, while the Court overruled the Committee's Limited Objection, the Court itself observed that additional factual inquiry would be appropriate about assets transferred under the Sale Order. | No factual dispute – unresponsive. Barclays' Response ¶ 637. | A. 152 [Docket No. 2420] 12/22/08 Tr. at 50:8-52:7. | |

77

| 485 | At the hearing in connection with the Settlement Motion, the Court stated that: "I consider it to be important for us to get to what I'll call closure with respect to the basics of the transaction that was approved by order entered September 20. And this motion with respect to the settlement agreement is a reasonable platform on which to address some of these issues because while this is not fairly to be characterized as a cleanup item, it's a very significant matter. It does draw all of our attention back to what happened in September. And I think it important that there be reasonably prompt resolution of outstanding questions that the committee may have on the subject. I would hope that it's not necessary for the committee to have to file 2004 requests in order to get the information that it seeks which seems to be reasonable and consistent with its mandate." | No factual dispute – unresponsive. Barclays' Response ¶ 638. | A. 152 [Docket No. 2420] 12/22/08 Tr. at 50:18-51:6. | |
| 486 | Pursuant to the December 2008 Settlement, certain securities held by the Fed (listed in Annex A to the December 2008 Settlement Agreement), plus $1.25 billion in cash, were transferred to Barclays, along with an additional $7.1 million in cash representing proceeds of securities that were inadvertently liquidated by Chase. | No factual dispute – unresponsive. Barclays' Response ¶ 640. | A. 151 [LBI Docket No. 387; A. 151 [LBI Docket No. 387] at Leventhal Decl. ¶ 22; *see also* A. 133. (showing value of securities was $5.99 billion on 9/30/08). | |
| 487 | The Clarification Letter does not mention the parties' purported agreement to transfer $7 billion from Chase to Barclays. | No factual dispute – unresponsive. Barclays' Response ¶ 641. | A. 32. | |
| 488 | This cash and securities transferred to Barclays under the December 2008 Settlement came from LBI's account at Chase. | No factual dispute – unresponsive. Barclays' Response ¶ 642. | A. 151 [LBI Docket No. 387] Leventhal Decl. at ¶ 23. | |
| 489 | Chase agreed to release a lien it held on LBI's account to effect the December 2008 Settlement. | No factual dispute – unresponsive. Barclays' Response ¶ 643. | A. 151 [LBI Docket No. 387] Leventhal Decl. at ¶ 23. | |

78

| 490 | An October 11, 2008 letter from the CEO of Chase to John Varley, Barclays Group CEO, noted that the Court had not been apprised of the transfer of assets from Chase to Barclays in connection with the December 2008 Settlement. | No factual dispute – unresponsive. Barclays' Response ¶ 644. | A. 128. | |
|-----|---|---|---|---|
| 491 | The October 11, 2008 letter from the CEO of Chase to Varley stated, in part: <br><br> "On Friday night, for the first time as far as we know, the Bankruptcy Court was apprised of a different 'deal' between Barclays Capital and Lehman Brothers - and that Barclays Capital was no longer purchasing \$70 billion in assets and assuming \$69 billion in related debt. But the Court was *not* apprised of the purchase that Barclays Capital now says it agreed to make. Instead of the Court being told that Barclays Capital was purchasing approximately \$49.7 billion in securities for \$45 billion in cash, the Court was told that Barclays Capital was purchasing \$47.4 billion in securities for \$45.5 billion in cash. In addition, the Court was told that the reason for the change was a deterioration in market prices, an explanation that we now know to be incorrect .... [I]n as much as you ended up taking securities that had not been part of the 'Fed collateral' - again, some were part of the 'Barclays Capital tri-party collateral' and still others were not financed by JPMorgan at all - we believe that a full accounting should be done. It is altogether possible that the LBI estate and its creditors gave you more or less value than you were entitled to receive. Moreover, the Bankruptcy Court was told that Barclays Capital was to receive \$47.4 billion (not \$49.7 billion) in securities and to pay \$45.5 billion (not \$45 or \$45.2 billion) in cash. We are both duty-bound to ensure that LBI received the value it was supposed to receive in exchange for your \$45 billion. We have offered several times to do this accounting with you (and, as appropriate, the Fed), and it is entirely possible that the SIPA Trustee and the Bankruptcy Court would want such an accounting, but your personnel have declined, citing the amount of time and effort it would take. We should do this accounting and should do it now . . ." | Not disputed. Barclays' Response ¶ 645. ("Barclays does not dispute that the quoted language appears in the cited letter."). | A. 128 | |

79

| 492 | On December 29, 2008, Lindsee Granfield of Cleary Gottlieb Steen & Hamilton LLP ("Cleary") wrote to James B. Kobak of Hughes Hubbard & Reed LLP (Hughes Hubbard") regarding certain clearance box assets that Barclays believed it was entitled to under the Asset Purchase Agreement and Clarification Letter, and that Barclays believed the Trustee had not yet delivered. | Not disputed. Barclays' Response ¶ 646. | Letter from Lindsee P. Granfield, Cleary, to James Kobak, dated Dec. 29, 2008. | |
|---|---|---|---|---|
| 493 | Ms. Granfield sent the December 29, 2008 letter one week after the Court granted the Settlement Motion, permitting Barclays to receive cash and securities. | Not disputed. Barclays' Response ¶ 647. | LBI Docket No. 464 | |
| 494 | On January 20, 2009, Mr. Kobak responded to Ms. Granfield's letter, explaining that, pursuant to the DTCC Letter, the assets identified in her letter remained the property of the LBI estate. | Not disputed. Barclays' Response ¶ 648. | Letter from James Kobak to Lindsee P. Granfield, Cleary, dated Jan. 20, 2009. | |
| 495 | On January 27, 2009, Gerald LaRocca of Barclays wrote to the Trustee asserting a claim on behalf of Barclays and certain customers to certain undelivered customer property. | Not disputed. Barclays' Response ¶ 649. | Letter from Gerald S. LaRocca, Barclays, to James W. Giddens, dated Jan. 27, 2009. | |
| 496 | On March 6, 2009, Ms. Granfield wrote to Mr. Kobak, responding to his January 20, 2009 letter. Ms. Granfield noted that "the purpose of the [DTCC] letter was to address DTCC's exposures in relation to unsettled positions of LBI in its accounts maintained at DTCC." Ms. Granfield asserted that, although LBI's DTCC "*accounts*" were excluded assets under the Asset Purchase Agreement and DTCC Letter, the "*securities contained in those accounts*" were not, and that the DTCC Letter was not intended to modify the Clarification Letter. | Not disputed. Barclays' Response ¶ 650. | Letter from Lindsee P. Granfield, Cleary, to James Kobak, dated Mar. 6, 2009, at 1-2 (emphasis in original). | |
| 497 | On March 25, 2009, Jonathan Hughes of Barclays wrote to the Trustee and identified four categories of assets that Barclays believed it had purchased under the Asset Purchase Agreement and Clarification Letter, but that had not yet been delivered by the Trustee. | Not disputed. Barclays' Response ¶ 651. | Letter from Jonathan Hughes, Barclays, to James W. Giddens, dated Mar. 25, 2009. | |

80

| 498 | Mr. Hughes noted in his March 25, 2009 letter that "Barclays and the Trustee have worked cooperatively to resolve certain issues relating to the sale of assets from LBI to Barclays in the period since the Closing Date." (Letter from Jonathan Hughes, Barclays, to James W. Giddens, dated Mar. 25, 2009.) The four categories of assets were 1) clearance box assets; 2) \$769 million of securities held by or on behalf of LBI pursuant to Rule 15c3-3 of the Securities Exchange Act of 1934; 3) approximately \$900 million in margin held with the OCC; and 4) "certain cash balances and securities held to secure obligations of LBI and/or its customers in respect of exchange-traded derivatives" or proceeds of such exchange-traded derivatives." | Not disputed. Barclays' Response ¶ 652. | Letter from Jonathan Hughes, Barclays, to James W. Giddens, dated Mar. 25, 2009. |  |
| --- | --- | --- | --- | --- |
| 499 | On March 27, 2009, Mr. Kobak wrote to Ms. Granfield reiterating the Trustee's position with respect to the DTCC and clearance box assets. | Not disputed. Barclays' Response ¶ 653. | Letter from James Kobak to Lindsee P. Granfield, Cleary, dated Mar. 27, 2009. |  |
| 500 | On April 22, 2009, Mr. Kobak wrote to Mr. Hughes explaining the Trustee's position with respect to each of the four categories of assets detailed in Mr. Hughes' March 25 letter. | Not disputed. Barclays' Response ¶ 654. | Letter from James Kobak to Jonathan Hughes, Barclays, dated Apr. 22, 2009. |  |
| 501 | On May 13, 2009, Mr. Hughes wrote to the Trustee to address the Trustee's positions with respect to each of the four categories of assets and to request "a high level meeting to discuss our positions and determine whether an amicable resolution to these issues is possible." | Not disputed. Barclays' Response ¶ 655. | Letter from Jonathan Hughes, Barclays, to James W. Giddens, dated May 13, 2009, at 1. |  |
| 502 | Mr. Hughes also noted that four transfers of clearance box securities were made: one each on September 19 and 29, 2008 and two on September 30, 2008, totaling more than \$1.45 billion. | Not disputed. Barclays' Response ¶ 656. | Letter from Jonathan Hughes, Barclays, to James W. Giddens, dated May 13, 2009, at 5. |  |

81

| 503 | On May 28, 2009, Mr. Kobak sent an email message to Mr. Hughes requesting, among other things, that Barclays provide documentation to support the position that none of the items that Barclays was claiming could be considered customer property. | Not disputed. Barclays' Response ¶ 657. | E-mail from James Kobak to Jonathan Hughes, dated May 28, 2009. | |
|---|---|---|---|---|
| 504 | On June 8, 2009, Hamish Hume of Boies, Schiller & Flexner LLP wrote to Mr. Kobak providing spreadsheets showing the specific clearance box securities included in the four September 2008 transfers. | Not disputed. Barclays' Response ¶ 658. | Letter from Hamish Hume, Boies, Schiller & Flexner LLP, to James Kobak, dated June 8, 2009. | |
| 505 | On June 11, 2009, Mr. Kobak wrote to Mr. Hume reiterating the requests for information he had made in his March 27, 2009 letter and May 28, 2009 email. | Not disputed. Barclays' Response ¶ 659. | Letter from James Kobak to Hamish Hume, Boies, Schiller & Flexner LLP, dated June 11, 2009. | |
| 506 | On June 12, 2009, a meeting was held between the Trustee and Barclays to discuss Barclays' claims to the above referenced assets. | Not disputed. Barclays' Response ¶ 660. | Not provided. | |
| 507 | On December 12, 2008, in connection with Bay Harbour's appeal of the LBHI and LBI Sale Orders, Barclays noted that the Court was told during the Sale Hearing that "cash was no longer being transferred to Barclays as the Debtors no longer held such cash." | No factual dispute – argumentation only. Barclays' Response ¶ 661. | *Bay Harbour Mgmt, L.C v. Lehman Brothers Holdings, Inc.,* No. 08-cv- 08869, Appellee Barclays Capital Inc.'s Mem. of Law in Opp'n to Bay Harbour et al.'s Appeal, at 10 [Docket No. 10] (S.D.N.Y. 2008). | |

| 508 | Barclays argued that: "It is also undisputed that the Debtors made every possible effort to explain the terms of the proposed Sale to interested parties, demonstrated by the meeting held at the Debtors' counsel's office in New York the day before the Sale Hearing, by the one hour off-the-record explanation of terms during the Sale Hearing, and by the reading of the main terms of the proposed Sale on the record at the Sale Hearing itself. Thus, the Bankruptcy Court held that due process was satisfied because adequate notice was given of the essential terms." | Not disputed. Barclays' Response ¶ 662. | *Bay Harbour Mgmt., L.C v. Lehman Brothers Holdings, Inc.,* No. 08-cv-08869, Appellee Barclays Capital Inc.'s Mem. of Law in Opp'n to Bay Harbour et al.'s Appeal at 32 (citation omitted) [Docket No. 10] (S.D.N.Y. 2008). | |
| --- | --- | --- | --- | --- |
| 509 | In its response to the appeal, LBHI stated that "[b]y the time the Sale Hearing was conducted, the value of the securities to be transferred to Barclays declined from $72 billion at the beginning of that week to $47.4 billion and the liabilities to be assumed by Barclays declined from $68 billion to $45.5 billion." | Not disputed. Barclays' Response ¶ 663. | *Bay Harbour Mgmt., L.C. v. Lehman Brothers Holdings, Inc.,* No. 08-cv-08869, Answering Br. of Lehman Brothers Holdings, Inc., et al. in Opp'n to Bay Harbour Appeal, at 12 [Docket No.9] (S.D.N.Y. 2008). | |
| 510 | Following the Court's December 22, 2008 instruction at the hearing on the Settlement Motion that the Committee pursue information from Barclays regarding the Sale Transaction on a consensual basis, on December 26, 2008, the Committee sent an informal document request to Barclays and the DTC relating to the Sale Transaction. | Not disputed. Barclays' Response ¶ 664. | Letter from James C. Tecce, Quinn Emanuel Urquhart Oliver & Hedges LLP, to Lindsee P. Granfield, Cleary Gottlieb Steen & Hamilton LLP, Jonathan D. Schiller, Boies, Schiller & Flexner, LLP and Sheldon I. Hirshon, Proskauer Rose, dated December 26, 2008. | |

| 511 | Thereafter, Committee counsel and Houlihan Lokey, the Committee's financial advisor, had a teleconference with Barclays' attorneys on January 13, 2009 regarding the Committee's document request and its attempts to obtain a reconciliation of the Sale Transaction. | Not disputed.  Barclays' Response ¶ 665. | Not provided. | |
|-----|---|---|---|---|
| 512 | After the February 3, 2009 meeting, the Committee again provided to Barclays' attorneys an informal document request (on February 10, 2009) clarifying the Committee's initial request and adding some additional categories of documents. | Not disputed.  Barclays' Response ¶ 667. | Letter from James C. Tecce, Quinn Emanuel Urquhart Oliver & Hedges LLP, to Lindsee P. Granfield, Cleary Gottlieb Steen & Hamilton LLP, and Jonathan D. Schiller, Boies, Schiller & Flexner, LLP, dated February 10, 2009. | |
| 513 | On or about March 30, 2009, Barclays produced documents responsive to the December 26, 2008 and February 10, 2009 letter requests from the Committee. | Reformulated by Barclays.  Barclays' Response ¶ 668. | Not provided. | |
| 514 | Because the format in which Barclays produced the documents "were in an imaged rather than native format," "Barclays later produced the same material in native format based on an agreement that the native format material would not be altered," which Barclays did on or about May 28, 2009. | Reformulated by Barclays.  Barclays' Response ¶ 669. | Not provided. | |
| 515 | In connection with its investigation, the Committee also requested documents from the DTCC as initially set forth in the December 26, 2008 letter to, among others, counsel to the DTCC. | Not disputed.  Barclays' Response ¶ 670. | Committee Rule 2004 Joinder [Docket No. 3778]. | |
| 516 | Following communications between counsel to the Committee and counsel to the DTCC regarding the Committee document request, the DTCC ultimately agreed to produce documents to the Committee and did so on or about April 29, 2009. | Not disputed.  Barclays' Response ¶ 671. | Not provided. | |
| 517 | Thereafter, on May 19, 2009, counsel for the Committee attended an in person meeting with representatives form the DTCC and its counsel. | Not disputed.  Barclays' Response ¶ 672. | Committee Rule 2004 Joinder [Docket No. 3778]. | |

84

| 518 | On or about February 9, 2009, Barclays announced its financial results for the year ending December 31, 2008. | Not disputed. Barclays' Response ¶ 673. | A. 130. | |
|-----|---|---|---|---|
| 519 | In February 2009, Barclays announced that it had secured a £2.262 billion gain from its acquisition of Lehman's North American business. | Not disputed. Barclays' Response ¶ 674. | A. 130. | |
| 520 | On February 19, 2009, LBHI wrote Barclays a letter requesting information about the payment by Barclays of the accrued bonus amount as of August 31, 2008 to transferred employees and contract cure amounts under the Asset Purchase Agreement (the "February 19 Letter"). | Not disputed. Barclays' Response ¶ 675. | Rule 2004 Motion, Exhibit B. | |
| 521 | The February 19 Letter stated that LBHI had conducted "a preliminary review of the accrual for bonuses as of August 31, 2008, and it appears that the consolidated global accrual on the books of LBHI as of that date was only $1.3 billion." | Not disputed. Barclays' Response ¶ 676. | Rule 2004 Motion, Exhibit B. | |
| 522 | The February 19 Letter stated that to date LBHI understands that approximately $200 million had been paid by Barclays in contract cure costs. | Not disputed. Barclays' Response ¶ 677. | Rule 2004 Motion, Exhibit B. | |
| 523 | The February 19 Letter requested a meeting with Barclays, and requested supporting documentation or analysis that explain the bonus and contract cure amounts paid, or to be paid, by Barclays. | Not disputed. Barclays' Response ¶ 678. | Rule 2004 Motion, Exhibit B. | |
| 524 | On February 23, 2009, Barclays responded to the February 19 Letter with a letter stating that, among other things, "a number of other parties" were also undertaking a review of the Sale Transaction, and Barclays wanted to discuss how Barclays could avoid addressing queries related to the Asset Purchase Agreement on a piecemeal basis. | Not disputed. Barclays' Response ¶ 679. | Rule 2004 Motion, Exhibit B. | |
| 525 | In response to the February 19 Letter, Barclays did not provide LBHI with any supporting documentation or analysis concerning bonus or contract cure liabilities. | Not disputed. Barclays' Response ¶ 681. | Rule 2004 Motion, Exhibit B. | |
| 526 | In late March 2009, LBHI retained Jones Day as Special Counsel. | Not disputed. Barclays' Response ¶ 682. | Not provided. | |

85

| 527 | On April 13, 2009, LBHI (through its Special Counsel) wrote a letter to outside counsel for Barclays to, among other things, follow up on the requests made by LBHI in the February 19 Letter (the "April 13 Letter"). | Not disputed.  Barclays' Response ¶ 683. | Rule 2004 Motion, Exhibit C. | |
| --- | --- | --- | --- | --- |
| 528 | In the April 13 Letter Jones Day requested that Barclays voluntarily provide certain materials on a cooperative basis and attached a list of the requested materials. | Not disputed.  Barclays' Response ¶ 684. | Rule 2004 Motion, Exhibit C. | |
| 529 | In the April 13 Letter Jones Day requested that Barclays notify LBHI by April 20, 2009 regarding whether Barclays would agree to produce the requested materials. | Not disputed.  Barclays' Response ¶ 685. | Rule 2004 Motion, Exhibit C. | |
| 530 | In the April 13 Letter Jones Day stated that after reviewing the requested materials it was likely that LBHI would also want to interview or take testimony from several former Lehman employees, including Steve Berkenfeld, Ian Lowitt, Gerald Donini, and Eric Felder. | Not disputed.  Barclays' Response ¶ 686. | Rule 2004 Motion, Exhibit C. | |
| 531 | On April 20, 2009, Barclays' counsel responded to the April 13 Letter. | Not disputed.  Barclays' Response ¶ 687. | Rule 2004 Motion, Exhibit D. | |
| 532 | In its April 20, 2009 Letter, Barclays' counsel referred to LBHI's April 13 Letter as a "current demand for extensive discovery" and "an unnecessarily burdensome and confrontational approach in these circumstances." | No factual dispute – argumentation only. Barclays' Response ¶ 688. | Rule 2004 Motion, Exhibit D. | |
| 533 | In its April 20, 2009 Letter Barclays' counsel stated that the document requests in Jones Days' April 13 Letter addressed topics that the Examiner was already investigating, questioned whether LBHI had coordinated with the Examiner, and stated that a "simultaneous and duplicative investigation by LBHI would interfere with Barclays' ability to respond to the Examiner in a timely and complete manner." | No factual dispute – argumentation only. Barclays' Response ¶ 689. | Rule 2004 Motion, Exhibit D. | |
| 534 | In response to Jones Days' April 13 Letter, Barclays did not agree to make available any former Lehman employees for interviews or testimony. | Not disputed.  Barclays' Response ¶ 691. | Rule 2004 Motion, Exhibit D. | |
| 535 | On April 24, 2009, LBHI, through its Special Counsel, requested a copy set of any documents Barclays produced to the Examiner, and again requested that Barclays provide any additional documents responsive to LBHI's document requests set out in the April 13 Letter. | Not disputed.  Barclays' Response ¶ 692. | Rule 2004 Motion, Exhibit E. | |

| 536 | On May 13, 2009, Barclays represented that it would provide some of the requested discovery and some "aggregate" information in a voluntary manner, but it did not commit to any deadlines for doing so, and said that it could not be specific as to what it would produce. | No factual dispute – argumentation only. Barclays' Response ¶ 695. | Rule 2004 Motion ¶ 28. |
| --- | --- | --- | --- |
| 537 | On May 15, 2009, Barclays' counsel stated that Barclays would produce to LBHI copies of one of the categories of information LBHI requested - documents Barclays has already produced to the Creditors' Committee, but only upon a confidentiality agreement being reached. | Not disputed. Barclays' Response ¶ 696. | Not provided. |
| 538 | By May 18, 2009, Barclays had not provided LBHI with any of the information it requested in February or April 2009. | No factual dispute – argumentation only. Barclays' Response ¶ 698. | Rule 2004 Motion ¶ 28. |
| 539 | On May 18, 2009, LBHI moved for an order pursuant to Federal Rule of Bankruptcy Procedure 2004 authorizing discovery concerning transactions related to the Asset Purchase Agreement approved in the Sale Order and the SIPA Sale Order. | Not disputed. Barclays' Response ¶ 699. | Docket No. 3596. |
| 540 | On June 5, 2009, the Committee filed a response in support of and joined in the Rule 2004 Motion (the "Committee Rule 2004 Joinder"). | Not disputed. Barclays' Response ¶ 700. | Docket No. 3778 |
| 541 | On June 22, 2009, the Trustee filed a statement regarding the Rule 2004 Motion in which he requested that, to the extent the Bankruptcy Court granted the Rule 2004 Motion, the Bankruptcy Court also order that the Trustee be entitled to (i) receive and/or have access to all documentary discovery produced by Barclays; and (ii) participate in any interviews or depositions of Barclays personnel. | Not disputed. Barclays' Response ¶ 701. | Docket No. 4074. |
| 542 | Barclays opposed the Rule 2004 Motion and the Committee's Rule 2004 Joinder. | Not disputed. Barclays' Response ¶ 702. | Docket No. 3776 |
| 543 | On June 25, 2009, the Bankruptcy Court entered an order granting the Rule 2004 Motion, authorizing LBHI, the Trustee and the Committee to take certain discovery from Barclays. | Not disputed. Barclays' Response ¶ 703. | Docket No. 4164. |
| 544 | On July 14, 2009, Barclays made a first production of documents responsive to the Rule 2004 discovery requested by LBHI. | Not disputed. Barclays' Response ¶ 704. | July 14, 2009 letter from J. Stern to R. Gaffey. |

87

| 545 | Barclays continued to produce documents responsive to the Rule 2004 discovery throughout July, August and September 2008. | Not disputed. Barclays' Response ¶ 705. | Not provided. | |