**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (JMP) SIPA |
| Debtor. | |

**DECLARATION OF RAMSEY CHAMIE IN SUPPORT OF THE TRUSTEE'S MOTION FOR AN ORDER (1) CONFIRMING THE TRUSTEE'S DENIAL OF SIPA CUSTOMER STATUS TO CLAREN ROAD CREDIT MASTER FUND LTD. CUSTOMER CLAIM NO. 900005056, AND (2) SUBORDINATING THE CLAIM PURSUANT TO BANKRUPTCY CODE SECTION 510(b)**

Ramsey Chamie, under penalty of perjury, declares:

1.       I am an attorney admitted to practice in this Court and am associated with the firm of Hughes Hubbard & Reed LLP, attorneys for James W. Giddens (the "Trustee") as trustee for the liquidation of Lehman Brothers Inc. ("LBI").  I submit this declaration in support of the Trustee's Motion for an order (1) confirming the Trustee's denial of SIPA customer status to Customer Claim No. 900005056 (the "LBHI Bonds Claim") filed by Claren Road Credit Master Fund Ltd., and (2) subordinating the LBHI Bonds Claim to other general creditor claims pursuant to section 510(b) of the Bankruptcy Code (the "Motion").[1]

2.       Attached hereto as Exhibit A is a true and correct copy of the Objection of Claren Road Credit Master Fund, Ltd. To Trustee's Determination of Claim, filed with the Court in this case as Docket No. 3054.

3.       Attached hereto as Exhibit B is a true and correct copy of Claren Road's Customer Account Agreement Prime Brokerage as found in the books and records of LBI by the Trustee's professionals.

---

1.   Capitalized terms used herein but not defined shall have the meaning ascribed to them in the Motion.

4.      Attached hereto as <u>Exhibit C</u> is a true and correct copy of the LBHI Bonds Claim as received by the Trustee's professionals.

5.      Attached hereto as <u>Exhibit D</u> is a true and correct copy of the Notice of Trustee's Determination of Claim for the LBHI Bonds Claim.

6.      The Trustee is prepared to allow the LBHI Bond Claim as a subordinated claim.  My understanding is that Claren Road objects to such subordination.  Because of this disagreement between the Trustee and Claren Road, the Trustee asks the Court for an order confirming the Trustee's denial of SIPA customer status to the LBHI Bond Claim, and subordinating the claim pursuant to section 510(b) of the Bankruptcy Code.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  October 25, 2013
              New York, New York

<u>/s/ Ramsey Chamie</u>
Ramsey Chamie

# **EXHIBIT A**

**SEWARD & KISSEL LLP**
Ronald L. Cohen (RC 3897)
Justin L. Shearer (JS 1823)
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

Attorneys for Claren Road Credit Master Fund, Ltd.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | : |
| | : |
| **LEHMAN BROTHERS INC.,** | :     **Case No. 08-01420 (JMP) SIPA** |
| | : |
| Debtor. | : |
| | : |

# OBJECTION OF CLAREN ROAD CREDIT MASTER FUND, LTD. TO TRUSTEE'S DETERMINATION OF CLAIM

Claren Road Credit Master Fund, Ltd. (the "Claimant"), by its undersigned counsel, hereby objects (the "Objection") to the Notice of Trustee's Determination of Claim Numbers 900004590, 900005056 and 900006420 (the "Denial") by James W. Giddens as Trustee for Lehman Brothers Inc. (the "Trustee"), and respectfully represents as follows:

A.    Background

1.    LBI was a broker-dealer registered with the United States Securities and Exchange Commission (the "SEC") under the Securities and Exchange Act of 1934, as amended, 15 U.S.C. § 78o(6) (the "Exchange Act").  LBI also was a member of the Securities Investor Protection Corporation ("SIPC") and currently is being liquidated before this Court pursuant to the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.* ("SIPA").

2.      Claimant opened a prime brokerage account with LBI (the "PB Account") pursuant to a Customer Account Agreement Prime Brokerage, dated December 28, 2005 (the "PBA").   Claimant also entered into a Margin Lending Agreement with LBI and its affiliate Lehman Brothers International Europe ("LBIE") that was arranged by LBI, dated December 28, 2005 (the "MLA"), and a Global Master Securities Lending Agreement with LBIE arranged by LBI, dated December 28, 2005 (the "GMSLA").   Each of the PBA, MLA and the GMSLA (collectively, the "Agreements") is expressly governed by the laws of the State of New York.

3.      LBI designated the Claimant account with the numbers 948-01783 and 056-01785.   Claimant never opened a prime brokerage account or had a customer account agreement with LBIE.   To its knowledge, Claimant's communications and dealings regarding the PB Account were only with LBI representatives in New York.

4.      Upon information and belief, LBI improperly transferred to its affiliate, LBIE, or permitted LBIE to retain, Claimant's securities and cash balances, including cash proceeds from transferred securities, far in excess of the amounts necessary or permitted to collateralize any Claimant borrowing from LBIE.

5.      On January 26, 2009, Claimant filed a customer proof of claim with the Trustee for cash and securities in, or that should have been in, the PB Account (the "Claim").   By notice dated March 25, 2010, the Trustee denied the Claim, asserting that Claimant's prime brokerage account 056-01783 is with LBIE.   The Denial further stated that account 948-01783 was empty as of September 19, 2008.   Claimant objects to the Denial.

### B.    Claimant is a "Customer" under SIPA

6.    Claimant is a "customer" of LBI as defined under SIPA.  Under SIPA, a "customer" is defined as a:

> person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.  The term "customer" includes any person who has a claim against the debtor arising out of sales or *conversions* of such securities, and any person who has deposited cash with the debtor for purposes of purchasing securities . . . .

15 U.S.C. § 78*lll*(2) (emphasis added).

7.    Claimant asserts customer property claims against LBI for securities and cash balances that LBI, as Claimant's prime broker, was required by contract and law to maintain for Claimant's benefit.  Under SIPA, "customer property" is defined to include "cash and securities . . . at any time received, acquired or held by or for the account of a debtor from or for the securities account of a creditor, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."  *Id.* at § 78lll(4).

8.    Pursuant to the PBA, Claimant deposited and entrusted securities and/or cash to LBI for the purpose of trading in the securities markets.  The securities and cash balances at issue were "received, acquired, or held" for Claimant in the ordinary course of LBI's business as a broker/dealer, under the PBA for transactions in the PB Account.

9.    As of the close of business on September 19, 2008, Claimant had entrusted to LBI securities and cash balances that have not been returned to Claimant.  Accordingly, Claimant is a customer of LBI and has valid customer property claims against LBI in connection with securities and cash balances that were required to be in LBI's possession or

control and LBI's failure to return the securities or the net equity value of such securities and cash balances to Claimant.[1]

### C.    The Prime Brokerage Agreement

10.    Pursuant to the PBA, the PB Account is "subject to the applicable laws, rules and regulations of all U.S. . . . federal, state and self-regulatory authorities."  PBA, ¶ 2 at 1. Applicable laws, rules, regulations and regulatory authorities of the United States of America, include, among others, the Exchange Act, SIPA, the SEC, SIPC and the rules of the Board of Governors of the Federal Reserve System.

11.    Under the PBA's boilerplate provisions, LBI was authorized *within the limits of applicable law and regulations* to lend either to itself or to others, at its own risk, any securities held on behalf of Claimant for any amounts due from Claimant to Lehman Brothers. PBA, ¶ 19(a).  The PBA further provides that, in addition to the limits set by securities laws and regulations, LBI may only transfer securities from the PB Account to other accounts maintained by Lehman Brothers entities "in order to satisfy any of [Claimant]'s obligations to Lehman Brothers."  *Id.*, ¶ 27.

### D.    The Margin Lending Agreement

12.    In connection with the PBA, LBI had Claimant enter into the MLA with LBIE and LBI, pursuant to which LBIE would make loans to Claimant in connection with Claimant's transactions in the PB Account and LBI would be agent for LBIE and LBI to facilitate transfers of securities in connection with such loans.

---

[1]    To the extent Claimant were determined to be a "customer" of LBIE, it would still have a "customer" claim against LBI if LBIE transferred Claimant's customer assets to LBI or they were otherwise held by LBI for the benefit of LBIE, because these assets would have been transferred in LBIE's capacity as broker or dealer in connection with transactions for Claimant as its customer.  Because Claimant is not a broker or dealer or bank, Claimant would be a separate customer of LBI with respect to the customer assets held by LBI.  *See* 15 U.S.C. § 78fff-3(a)(5).

13.     The MLA makes clear that the lending was to be made "in connection with transactions entered into by Borrower [i.e., Claimant] in the Lehman Brothers Inc. Customer Account Agreement – Prime Brokerage [i.e., the PBA]."  MLA, Intro.

14.     Under the MLA, Claimant authorized LBIE -- "*within the limits of applicable law and regulations* [including the Exchange Act]" --  to lend either to itself or to others "any or all Collateral," which could then be "pledged, repledged, hypothecated or rehypothecated . . . for any amounts due to [LBIE] thereon or for a greater sum."  MLA, ¶ 5(c) at 3 (emphasis added).  The MLA did not, nor did it purport to, override the PBA.

E.     The Global Master Securities Lending Agreement

15.     In connection with the PBA and the MLA, LBI required Claimant to enter into the GMSLA with LBIE, which provided for LBIE's lending of securities to Claimant against Claimant's transfer of collateral to LBIE.

16.     Under the GMSLA, margin and collateral requirements were, expressly, to be governed by the MLA.  GMSLA, Schedule ¶¶ 1 and 8.

## DISCUSSION OF THE AGREEMENTS

17.     The Agreements[2] established a prime broker relationship between LBI and Claimant and a lending relationship between Claimant, LBIE and LBI within the scope of the prime brokerage relationship.   LBI was appointed by each of Claimant and Claimant's borrowings, if any, from LBIE in connection with transactions in the PB Account.  LBI was not authorized to transfer collateral or securities, and LBIE was not authorized to retain securities or cash balances, in excess of amounts necessary and legally permissible to collateralize borrowings.

---

[2]     Copies of the Agreements may be obtained by contacting undersigned counsel.

18.    As noted above, since the commencement of the Lehman Brothers insolvency proceedings, it has come to light that LBI in fact failed to maintain possession or control of securities and cash balances in excess of any securities and cash balances properly transferred to LBIE to meet Claimant's borrowing obligations.

19.    Rule 15c3-3(b)(1) of the Exchange Act provides that a broker dealer, such as LBI, "shall promptly obtain and shall thereafter *maintain the physical possession or control of* all fully-paid securities and excess margin securities carried by a broker or dealer for the account of customers."    17 C.F.R. 240.15c3-3(b)(1) (emphasis added).    The term "excess margin securities" is defined thereunder as securities carried for the account of a customer in a general account "having a market value in excess of 140 percent of the total of the debit balances in the customer's account or accounts . . . which the broker or dealer identifies as not constituting margin securities."    17 C.F.R. 240.15c3-3(a)(5); *see also* 17 C.F.R. 240.15c3-3(a)(4).    Thus, LBI was permitted only to transfer, pledge, repledge, hypothecate or rehypothecate Claimant's securities the total value of which did not exceed 140% of Claimant's outstanding debit balance. LBI was required to maintain possession or control of any fully paid or excess margin securities so that they could be withdrawn from the PB Account by Claimant and without any payment to any person.

20.    In documents and communications with Claimant, including, but not limited to, the Lehman Brothers Client Asset Protection Overview Statement, Version 3.08 (the "Client Protection Statement"), furnished by LBI to Claimant, LBI specifically acknowledged the integration of Rule 15c3-3, and the attendant control requirement and rehypothecation limitation placed on a broker/dealer such as LBI, within the PBA.    In the Client Protection Statement, LBI (and Lehman Brothers) affirmatively represents and affirms that the rehypothecation rules only permit LBI to rehypothecate customer securities in "an amount up to

6

140% of the customer's debit balance."  Client Protection Statement at 2.  Moreover, the Client

Protection Statement underscores that the purpose of Rule 15c3-3 is "to ensure that the broker-

dealer [LBI] *always* has enough protected assets to make all customers whole with respect to

their net equity claims against the broker-dealer [LBI]."  *Id.* (emphasis added).

21.    The Client Protection Statement further confirms that the PB Account is a

protected customer account under SIPA.  *Id.* at 2, 3.

22.    Claimant did not authorize LBI (or LBIE) to transfer, lend, re-lend,

pledge, repledge, hypothecate or rehypothecate Claimant's securities and cash balances in

amounts exceeding the legally permissible limit under Rule 15c3-3 for conveyance of securities

or cash balances.  LBI failed to act in accordance with the PBA and Claimant's understanding of

and reasonable expectations in connection with the PBA and the securities laws and regulations

incorporated therein.

## LBI CONVERTED CLAIMANT'S SECURITIES AND CASH

23.    LBI, apparently, did not and does not have possession or control of

Claimant's excess securities and cash balances because LBI improperly engaged in the

unauthorized transfer of Claimant's customer property.

24.    Accordingly, Claimant asserts a customer property claim for conversion as

against LBI for all cash balances and securities required to be in LBI's possession or control.

## BREACH OF CONTRACT

25.    In addition to a conversion of Claimant's customer property, LBI's

conduct in improperly engaging in the unauthorized excessive transferring, loaning, re-loaning,

pledging, repledging, hypothecating or rehypothecating of Claimant's customer property

constitutes a breach of the PBA.  LBI breached the PBA by violating Rule 15c3-3, which is

incorporated therein.  LBI also breached the PBA by not adhering to the non-Rule 15c3-3

limitations contained therein.

26.    By reason of the foregoing, Claimant is entitled to recover the excess securities and cash balances as customer property that should have been in its PB Account that were improperly transferred to and permitted to remain at LBIE.

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

27.    It was neither understood nor reasonably anticipated -- as LBI did not disclose to Claimant -- that vast quantities of Claimant's securities, far in excess of the permissible limits necessary to satisfy its margin obligation under the securities laws and regulations, would be transferred and not available for return to Claimant, along with cash balances.  LBI engaged in bad faith conduct by exploiting its position as the broker/dealer under the PBA, with control over the implementation of the terms thereof.  By abusing its discretion and engaging in the improper and excessive transfer of Claimant's securities, LBI placed Claimant -- to its detriment -- in an impossible position that frustrated the purpose and protections of the PBA.

28.    By reason of the foregoing, LBI has acted arbitrarily, unreasonably and in violation of the covenant of good faith and fair dealing implied in every contract under New York law, and Claimant is entitled to recover as customer property all excess securities and cash balances that should have been in LBI's possession or control save for LBI's violations of the PBA and applicable law.

## BREACH OF FIDUCIARY DUTY

29.    As Claimant's agent under the PBA and MLA, LBI owed not just contractual duties to Claimant, but also fiduciary duties.  By improperly transferring securities and cash to LBIE, LBI breached its fiduciary duties to Claimant and is liable for the damages of such breach.

## **RESERVATION OF RIGHTS**

30.    Claimant expressly reserves its right to replace, amend and/or supplement this Objection to include any claim at law or in equity and to seek discovery with respect thereto. The filing of this Objection shall not be deemed a waiver of any claim in law or equity that the Claimant may have against LBI.  Furthermore, nothing contained herein shall be construed as a waiver of any rights or remedies of Claimant with respect to any claims against any of LBI's affiliates or the right to assert claims that are otherwise warranted in any related or unrelated action.

Dated: New York, New York
           April 9, 2010

SEWARD & KISSEL LLP

By:  _/s/ Ronald L. Cohen___
Ronald L. Cohen (RC 3897)
Justin L. Shearer (JS 1823)
One Battery Park Plaza
New York, New York  10004
Tel.: (212) 574-1200
Fax: (212) 480-8421
Email: cohen@sewkis.com
             shearer@sewkis.com

Attorneys for Claren Road Credit
Master Fund, Ltd.

SK 25208 0005 1086032

# EXHIBIT B

# Customer Account Agreement Prime Brokerage

**LEHMAN BROTHERS INC.**

Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019
(212) 526-7000

| Title: CLAREN ROAD CREDIT MASTER FUND LTD. | Account (and Group) No. |
|---|---|
| | |

### Please Read Carefully, Sign and Return

This agreement ("Agreement") sets forth the terms and conditions under which Lehman Brothers (as defined below) will open and maintain prime brokerage account(s) in your name and otherwise transact business with you as our customer. Throughout this Agreement references to "you" and "your" refer to you as our customer.

In consideration of Lehman Brothers opening a prime brokerage account for you, you agree to the following:

1. **PARTIES.** A prime brokerage account opened pursuant to this Agreement will be opened at Lehman Brothers Inc. ("LBI"). All transactions, agreements and contracts between you and Lehman Brothers have been entered into in consideration of each other. You hereby agree that the parties to this Agreement shall consist of you and Lehman Brothers Inc., Lehman Brothers International (Europe), Lehman Brothers Finance S.A., Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc. and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and employees now existing or hereafter created, including successors and assigns (each such entity or person being referred to hereinafter as Lehman Brothers or a "Lehman Brothers Entity," unless otherwise specified, and all such entities or persons being collectively referred to hereinafter as "Lehman Brothers"). Unless you advise Lehman Brothers in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under the U.S. Securities Act of 1933 as may be amended, modified or supplemented) of the issuer of any security held in any account opened hereby. You represent that you are not currently (i) an employee benefit plan (an "ERISA Plan") as defined in Section 3(3) of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or (ii) subject to ERISA or Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), or materially similar provisions of any other law ("Similar Law") You further represent that you are not a person acting on behalf of an ERISA Plan and that your assets do not constitute assets of an ERISA Plan. If you become subject to ERISA, the Code or Similar Law or otherwise become unable to make the representations set forth above, you agree to notify Lehman Brothers promptly in writing and to take such action as Lehman Brothers, in its sole and absolute discretion, deems necessary to comply with ERISA, the Code or Similar Law.

2. **APPLICABLE LAWS, RULES AND REGULATIONS; SEVERABILITY.** All transactions under this Agreement shall be subject to the applicable laws, rules and regulations of all U.S and, if applicable, non-U.S federal, state and self-regulatory authorities, including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System of the United States and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed or settled. In the event of any conflict between any such present or future laws, regulations and rules and the terms of this Agreement, the provision(s) of this Agreement so affected shall be deemed modified or superseded to conform to such laws, regulations and rules, but the remaining provisions of this Agreement shall remain in full force and effect.

3. **SECURITY INTEREST AND LIEN; REGISTRATION OF SECURITIES.** As security for the payment and performance of all of your obligations and liabilities from time to time outstanding to any Lehman Brothers Entity, whether under this Agreement or otherwise, each Lehman Brothers Entity shall have a continuing lien and first priority security interest in all your Assets, defined as (i) all property in which you now have or hereafter acquire an interest which is now or hereafter held by or through any Lehman Brothers Entity, including, but not limited to, any and all securities, accounts, instruments, documents, contract rights, contracts (including, but not limited to, open transactions, securities purchase or sale contracts, agreements to lend cash or securities, commodity contracts, futures contracts, forward contracts, repurchase agreements, swap agreements, contracts for

differences or any other agreement, without regard to the form of such agreement which may include oral agreements or agreements confirmed or signed by only one party to the agreement and agreements entered into or signed by a Lehman Brothers Entity on your behalf) (hereinafter "Contracts"), commercial paper and other securities, monies, deposit accounts and general intangibles (including all security entitlements in respect thereof, all income and profits thereon, all dividends, interest and other payments and distributions with respect thereto and all proceeds from any of the foregoing), and (ii) any and all rights, claims or causes of action you may now or hereafter have against any Lehman Brothers Entity. The continuing lien and first priority security interest shall apply to all such Assets, which from time to time may be deposited or credited to any account you may have with a Lehman Brothers Entity, be held or carried by a Lehman Brothers Entity for you, be due from a Lehman Brothers Entity to you, or be delivered to or in a Lehman Brothers Entity's possession or control for any purpose, including safekeeping. Such continuing lien and first priority security interest shall apply irrespective of whether or not Lehman Brothers has made advances in connection with such Assets, the number of accounts you have with Lehman Brothers or which particular Lehman Brothers Entity holds such Assets. You hereby acknowledge and agree that all such Assets held by or through any Lehman Brothers Entity are held as collateral by such Lehman Brothers Entity as agent and bailee for itself and all other Lehman Brothers Entities and, as such, each Lehman Brothers Entity shall comply with any orders or instructions originated by any other Lehman Brothers Entity with respect to or in connection with such collateral without your further consent. You and Lehman Brothers agree that all such Assets held in or credited to any account will be treated as financial assets under Article 8 of the Uniform Commercial Code as in effect in the State of New York (the "UCC") and that any account maintained by you with any Lehman Brothers Entity shall be a securities account under Article 8 of the UCC. In the event of a breach or default by you, a Lehman Brothers Entity shall have, in addition to the rights and remedies provided in this Agreement, all rights and remedies available to a secured creditor under the UCC and any other applicable law. You represent that all of the above-described Assets shall at all times be free and clear of all liens, claims and encumbrances of any nature other than the security interest created hereby. Assets consisting of securities shall be delivered in good deliverable form (or Lehman Brothers shall have the unrestricted power to place such securities in good deliverable form) in accordance with the requirements of the primary market for these securities. In addition, in order to satisfy any of your outstanding liabilities or obligations to any Lehman Brothers Entity, each Lehman Brothers Entity may, to the fullest extent permitted by law, at any time in its discretion and without prior notice to you, use, apply or transfer any and all securities or other property or Assets (including, without limitation, fully-paid securities and cash). You hereby agree that, except as otherwise specifically agreed in writing, each Lehman Brothers Entity may register and hold the securities and other property or Assets in your accounts in its name or the name of its designee. You shall execute such documents and take such other action as such Lehman Brothers Entity shall reasonably request in order to perfect its rights with respect to any of the Assets. In addition, you appoint Lehman Brothers as your attorney-in-fact to act on your behalf to sign, seal, execute and deliver all documents and do all such acts as may be required to realize upon any of Lehman Brothers' rights in the Assets.

### 4. BREACH, BANKRUPTCY OR DEFAULT. If you shall:

(i) breach, repudiate or default under this Agreement or any Contract with any Lehman Brothers Entity, whether heretofore or hereafter entered into;

(ii) make or repeat any misrepresentations in connection with this Agreement or any Contract with any Lehman Brothers Entity;

(iii) state that you will not perform any obligation to any Lehman Brothers Entity;

(iv) apply for, consent to or be the subject of an application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar persons of yourself or of all of or a substantial part of your property;

(v) admit in writing your inability, or become generally unable, to pay your debts as such debts become due or give Lehman Brothers other grounds for insecurity, as determined by Lehman Brothers in its sole and absolute discretion (including, without limitation, death, mental incompetence; dissolution; the appointment of a receiver by or against you, any guarantor, co-signer or other party liable on or providing security for your obligations to any Lehman Brothers Entity or the attachment against your or such other party's account(s) with any Lehman Brothers Entity; or any indication of your refusal or inability to satisfy promptly any Margin Call (as defined below) or other obligation);

2

(vi) make a general assignment for the benefit of your creditors, or

(vii) file or be subject of the filing or entry of a petition or order for relief or be subject of the commencement of a proceeding regarding reorganization, bankruptcy, liquidation, dissolution or insolvency;

then, any such event shall constitute, at Lehman Brothers' election, a default by you under this Agreement and any or all Contracts you may then have with any Lehman Brothers Entity, whether heretofore or hereafter entered into. In the event of any such default, each Lehman Brothers Entity shall have all of the rights of a secured party upon default under the UCC and other applicable laws, rules and regulations, including, without limitation, the right, without prior notice to you, to sell any and all Assets in which you have an interest (including without limitation this Agreement and any Contract) held by or through any Lehman Brothers Entity (either individually or jointly with others), to buy any or all property which may have been sold short, to exercise any and all options and other rights, to accelerate, cancel, terminate, liquidate, close out and net the settlement payments and/or delivery obligations under any or all outstanding transactions and/or to purchase or sell any other securities or property to offset market risk, and to set off or offset any obligation owing by any Lehman Brothers Entity to you against any obligations owing by you to any Lehman Brothers Entity, after which you shall be liable to Lehman Brothers for any remaining deficiency, loss, costs or expenses incurred or sustained by Lehman Brothers in connection therewith. Such purchases and/or sales may be effected publicly or privately without notice or advertisement in such manner as Lehman Brothers may in its sole discretion determine. At any such sale or purchase, any Lehman Brothers Entity may purchase or sell the property to or from itself or third parties free of any right of redemption and you shall remain liable to Lehman Brothers for any deficiency; it being understood that a prior tender, demand or call of any kind from Lehman Brothers, or prior notice from Lehman Brothers, of the time and place of such sale or purchase shall not be considered a waiver of Lehman Brothers' right to buy or sell any securities, commodities or other property or Asset held by Lehman Brothers, or which you may owe to Lehman Brothers. In addition, each Lehman Brothers Entity shall have the right, at any time and from time to time, to set off and otherwise apply any and all amounts owing by such Lehman Brothers Entity to you or for your account against any and all amounts now or hereafter owing by you to any Lehman Brothers Entity (including, without limitation, any indebtedness in your accounts), whether matured or unmatured, fixed, contingent or otherwise and irrespective of whether any Lehman Brothers Entity shall have made any demand therefor. Lehman Brothers agrees to notify you of any such set-off and application, provided, however, that the failure to give such notice shall not affect the validity of any set-off and application. You agree that any obligation of a Lehman Brothers Entity to you shall be subject to there being no breach, repudiation, misrepresentation or default (however characterized) by you which is continuing under any Contract with a Lehman Brothers Entity. You and Lehman Brothers intend this Agreement to be a master netting agreement.

**5. ADEQUATE ASSURANCES.** Subject to, and not as a limitation of, the rights of Lehman Brothers under this Agreement, if at any time Lehman Brothers has reasonable grounds for insecurity with respect to your performance of any of your obligations, Lehman Brothers may demand, and you shall give, adequate assurance of due performance within 24 hours, or within any shorter period of time Lehman Brothers demands that is reasonable under the circumstances. The adequate assurance of performance that may be demanded by Lehman Brothers may include, but shall not be limited to, the delivery by you of additional property as collateral.

**6. EXECUTION FEES AND SERVICE CHARGES.** You understand that your account(s) will be charged brokerage commissions or mark-ups/mark-downs in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for custody and other services furnished to you ("Service Fees"). You further understand that Execution Fees may be charged from time to time upon prior written notice to you and that Service Fees may be changed from time to time upon prior written notice to you and, in each case, you agree to be bound thereby

**7. AMOUNTS OWED; TRUTH-IN-LENDING.** You hereby acknowledge receipt of Lehman Brothers' Truth-in-Lending disclosure statement. You understand that interest will be charged on any amount you owe in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any amount due which is not paid at the close of an interest period will be added to the opening balance for the next interest period

**8. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, liabilities and damages incurred by Lehman Brothers (including, without limitation, costs of

3

collection, attorneys' fees, court costs and other expenses) in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account or any property therein (including, without limitation, claims to such property by third parties), (iii) your use of or access to any Lehman Brothers or third-party system or (iv) Lehman Brothers' acting in reliance upon instructions, including, but not limited to, instructions transmitted via electronic means, including facsimile or electronic mail, from you or your authorized agents (including investment managers or advisers) In each case and whether or not demand has been made therefor, you hereby authorize Lehman Brothers to charge your account(s) for any and all such costs, liabilities and damages, including, without limitation, those incurred in connection with the liquidation of any of your Assets.

9. **IMPARTIAL LOTTERY ALLOCATION.** You agree that, in the event Lehman Brothers holds on your behalf securities in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of The New York Stock Exchange, Inc or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account in which, to the knowledge of Lehman Brothers, any officer, director or employee of Lehman Brothers has any financial interest until all other customers have been satisfied on an impartial lottery basis

10. **SECURITIES EVENTS.** Lehman Brothers shall inform you if Lehman Brothers becomes aware of the occurrence or prospective occurrence of any of the following with respect to any securities in your account(s) conversions, subdivision or consolidation; redemption, a takeover offer; calls, including calls on partly-paid securities and published calls; a capitalization issue; rights issue, distribution of income in the form of securities, or a certificate which may at a future date be exchanged for securities or an entitlement to acquire securities. Subject to Section 19 herein, if Lehman Brothers receives notice from you that you wish to act on any of the events referenced in this section and such notice is received by Lehman Brothers within a reasonable time for Lehman Brothers to act on such event, Lehman Brothers will act in accordance with your wishes    You represent that you review all prospectuses and offering statements that you may receive and understand the risks inherent with your securities transactions, including any risks associated with the above-described securities events.

11. **VOTING RIGHTS**  If any right to vote arises with respect to securities in your account, you may inform Lehman Brothers that you wish to exercise such right as you specify. Subject to Section 19 hereof, if Lehman Brothers receives this notice within a reasonable time to act, it will act in accordance with your wishes  If Lehman Brothers does not receive such timely notice from you, it will use its discretion to decide whether and how to vote such securities

12. **WAIVER, ASSIGNMENT AND NOTICES.** Neither Lehman Brothers' failure to insist at any time upon strict compliance with this Agreement or with any of the terms hereof nor any continued course of such conduct on its part shall constitute or be considered a waiver by Lehman Brothers of any of its rights or privileges hereunder  Any purported assignment of your rights and/or obligations hereunder  without obtaining the prior written consent of an authorized representative of Lehman Brothers shall be null and void  Each Lehman Brothers Entity reserves the right to assign any of its rights or obligations hereunder or under any Contract to any other Lehman Brothers Entity without prior notice to you. Notices and other communications to you (including, without limitation, Margin Calls) that are sent by electronic means, including facsimile or electronic mail, sent by express delivery service or mailed, in each case to the address or number provided by you, shall, until the respective Lehman Brothers Entity has received notice in writing of a different address or number, be deemed to have been personally delivered to you. Margin Calls may also be communicated orally, without subsequent written confirmation.

13. **FREE CREDIT BALANCES.** You hereby authorize Lehman Brothers to use any free credit balance awaiting investment or reinvestment in your account(s) in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Lehman Brothers for such account(s) and for the amounts of cash so used

14. **RESTRICTIONS ON ACCOUNT**  You understand that Lehman Brothers, in its sole and absolute discretion, may restrict or prohibit trading of securities or other property in your account(s) and may terminate your account(s), and you shall nevertheless remain liable for all of your obligations to the Lehman Brothers Entities under this Agreement or any Contract. In the event that Lehman Brothers, in its sole and absolute discretion, determines to

4

impose such restrictions on your account(s) due to credit, margin, legal, regulatory, money laundering or other concerns, Lehman Brothers shall be under no obligation to provide you with prior notice of such restriction.

**15. CREDIT INFORMATION AND INVESTIGATION.** You authorize Lehman Brothers, in its discretion, at any time and from time to time, to make or obtain reports concerning your credit standing and business conduct (including, but not limited to, obtaining audited account statements, if such are available). You may make a written request for a description of the nature and scope of the reports made or obtained by Lehman Brothers and the same will be provided to you within a reasonable period of time

**16. SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "short" You are required to and will comply with all applicable rules and regulations relating to short sale transactions. In placing any sell order for a long account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "long". The designation of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the order has been placed, that such security is not restricted under Rules 144 and/or 145 under the U.S. Securities Act of 1933 (as may be amended, modified or supplemented) or any other applicable law, rule or regulation and, as such, may be sold without restriction in the open market and that, if Lehman Brothers does not have the security in its possession at the time you place the order, you shall deliver the security by settlement date in good deliverable form or pay to Lehman Brothers any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis

**17. MARGIN ACCOUNTS.** You hereby agree to deposit and maintain such cash or collateral as margin in your margin accounts, if any, as Lehman Brothers may in its sole discretion require, and you agree to pay forthwith on demand any amount owing with respect to any of your margin accounts to satisfy Lehman Brothers' demand for such payment (a "Margin Call") In addition, you further agree to deposit promptly and maintain such other collateral with Lehman Brothers as is required by any Contract you may have with any Lehman Brothers Entity Upon your failure to make any such payment or deposit, or if at any time Lehman Brothers, in its sole discretion, deems it necessary for its protection, whether with or without prior demand, call or notice, Lehman Brothers shall be entitled to exercise all rights and remedies provided herein. No demands, calls, tenders or notices that Lehman Brothers may have made or given in the past in any one or more instances shall invalidate your waiver of the requirement to make or give the same in the future

**18 SECURITIES CONTRACTS.** You acknowledge and agree that any positions in your account(s) shall be deemed "securities contracts" within the meaning of Sections 555 and 741(7) (as may be amended, modified or supplemented) of the U.S Bankruptcy Code

**19. CONSENT TO LOAN OR PLEDGE OF SECURITIES IN MARGIN ACCOUNTS**

(a) Except as noted in subparagraph (b) below, within the limits of applicable law and regulations, you hereby authorize Lehman Brothers to lend either to itself or to others any securities held by Lehman Brothers in any of your accounts, to convey therewith all attendant rights of ownership (including voting rights and the right to transfer the securities to others), and to use all such property as collateral for its general loans. Any such property, together with all attendant rights of ownership, may be pledged, repledged, hypothecated or rehypothecated either separately or in common with other property for any amounts due to Lehman Brothers thereon or for a greater sum, and Lehman Brothers shall have no obligation to retain a like amount of similar property in its possession and control You hereby acknowledge that, as a result of such activities, Lehman Brothers may receive and retain certain benefits to which you will not be entitled In certain circumstances, such loans, pledges, repledges, hypothecations or rehypothecations may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities You agree to waive the right to vote, or to provide any consent or to take any similar action with respect to these securities in the event that the record date or deadline for such vote, consent or other action falls during the period of any such loan, pledge, repledge, hypothecation or rehypothecation.

(b) Unless otherwise agreed by Lehman Brothers and you, you will be entitled to receive all distributions, including, but not limited to, cash, stock dividends and interest payments, made on or in respect of any loaned, pledged, repledged, hypothecated or rehypothecated securities which are not otherwise received by you, to the full

5

extent you would be entitled if the securities had not been loaned, pledged, repledged, hypothecated or rehypothecated

20. **OPTIONS POSITIONS.** You represent and warrant not to enter into any purchase or sale of equity, debt, foreign currency or index put or call options without having read and fully understood the terms, conditions and risks as set out in the Characteristics and Risks of Standardized Options booklet and applicable supplements. You understand that short options positions are assigned on an automated random basis and may be assigned on the day written. You will notify Lehman Brothers of your intention to exercise listed options no later than two hours before the expiration time of the option (one hour in the case of an over-the-counter option). Failure to give such notice will constitute an abandonment of the option, in which case Lehman Brothers may, but shall be under no obligation to, exercise the option.

21. **PRIME BROKERAGE SERVICES.** Under the terms and conditions of this Agreement, LBI will act as a prime broker for you in accordance with the no-action letter of the Securities and Exchange Commission dated January 25, 1994, as such letter may be amended, modified or supplemented from time to time (the "SEC Letter") and the provisions set forth below:

(a)    LBI will, subject to the terms and conditions of this Agreement, accept for clearance and settlement trades executed on your behalf by such executing brokers as you may designate from time to time and who have received LBI's prior approval and who have previously executed an agreement with LBI setting forth the terms and conditions under which such executing brokers will be authorized to accept orders from you for settlement by LBI (the "Executing Brokerage Agreement")

(b)    LBI shall be responsible for settling trades executed on your behalf by your executing broker(s) and reported to LBI by you and your executing broker(s) provided that you have reported to LBI on trade date, by the time designated to you by LBI, all the details of such trades including, but not limited to, the contract amount, the security involved, the number of shares or the number of units and whether the transaction was a long or short sale or a purchase, and further provided that LBI has either affirmed or not "DK'd" ("indicated it does not know") and has not subsequently disaffirmed such trades. In the event that LBI determines not to settle a trade, LBI shall not have settlement responsibility for such trade and shall, instead, send you a cancellation notification to offset the notification sent to you under sub-paragraph (c) of this paragraph. You shall be solely responsible and liable to your executing broker(s) for settling such trade. In addition, LBI may be required to cease providing prime brokerage services to you in accordance with the Executing Brokerage Agreement

(c)    On the day following each transaction, LBI shall send you a confirmation of each trade placed with an executing broker in accordance within the SEC Letter based upon the information you provided to LBI. Any confirmations issued by LBI as prime broker shall identify the executing broker and provide you with the information required by the SEC Letter. Confirmations of the execution of orders and other activity in your account(s) which have been provided or made available to you by 10·00 a.m. (New York time) on the business day immediately following the trade date shall be conclusive if not objected to by 2·00 p.m. (New York time) on such business day or, if such reports are provided or made available to you after 10:00 a.m. (New York time) on such business day, then such confirmations shall be conclusive if not objected to within four (4) hours after such confirmations have been provided or made available to you. Monthly statements shall be sent to you in accordance with the SEC Letter. Information contained in monthly statements of account, to the extent not included in an activity report, shall be conclusive if not objected to within ten (10) days after such statements have been provided or made available to you. LBI may send communications to your address of record or another address provided to LBI in writing. All communications sent to such address, whether by mail, facsimile, telegraph, messenger, electronic means or otherwise, shall be deemed to have been given to you personally as of the date and time sent, whether actually received or not.

(d)    In the event of (i) the filing of a petition or other proceeding in bankruptcy, insolvency or for the appointment of a receiver by or against your executing broker, (ii) the termination of your executing broker's registration and the cessation of business by it as a broker-dealer, or (iii) your executing broker's failure, inability or refusal, for any reason whatsoever or for no reason at all, to settle a trade, and if LBI agrees to settle any trades executed on your behalf by such executing broker, regardless of whether LBI either affirmed or did not DK and did

6

not disaffirm such trades, you shall be solely responsible, and liable to LBI, for any losses arising out of or incurred in connection with LBI's agreement to settle such trades

(e)    You shall maintain in your account with LBI such minimum net equity in cash or securities at LBI, in its sole discretion, may require from time to time (the "Lehman Brothers Net Equity Requirements"), which shall in no event be less than the minimum net equity required by the SEC Letter (the "SEC Net Equity Requirements")    In the event your account falls below the SEC Net Equity Requirements, you hereby authorize LBI to notify promptly all executing brokers with whom it has an Executing Brokerage Agreement on your behalf of such event.  Moreover, if you fail to restore your account to compliance with the SEC Net Equity Requirements within the time specified in the SEC Letter, LBI shall, without notice to you: (i) notify all such executing brokers that LBI is no longer acting as your prime broker and (ii) either not affirm or "DK" ("indicate that it does not know") all prime brokerage transactions on your behalf with a trade date after the business day on which such notification was sent. In the event (i) your account falls below the Lehman Brothers Net Equity Requirements, (ii) LBI determines in its sole discretion that there would not be enough cash in your account to settle such transactions or that a maintenance Margin Call may be required as a result of settling such transactions, or (iii) LBI determines in its sole discretion that the continuation of prime brokerage services to you presents an unacceptable risk to Lehman Brothers taking into consideration all the facts and circumstances, then LBI may disaffirm all your prime brokerage transactions and/or cease to act as your prime broker. In any such case, LBI shall send a cancellation notification to you, and you understand that you must settle outstanding trades directly with the relevant executing broker and that you authorize LBI to provide the executing broker with any information useful to settle such trades.  You further agree that LBI will not be bound to make any investigation into the facts surrounding any transaction to which you are a party and that immediately upon notice to you and, if required, to the executing brokers, LBI may cease acting as your prime broker

(f)    If you have instructed your executing broker(s) to send confirmations to you in care of LBI, as your prime broker, the confirmation sent by such executing broker is available to you promptly from LBI (once received), at no additional charge.

(g)    If your account is managed on a discretionary basis, you hereby acknowledge that your prime brokerage transactions may be aggregated with those of other accounts of your adviser, according to your adviser's instructions, for execution by your executing broker(s) in a single bulk trade and for settlement in bulk by LBI. You understand that no part of any transaction may be allocated to your account where such other account's net equity is below the minimum levels established in the SEC Letter and that, should such a net equity deficiency occur in any such other account, LBI must disaffirm the entire transaction.  In the event any trade is disaffirmed, as soon as practicable thereafter, LBI shall supply your executing broker(s) with the allocation of the bulk trade, based upon information provided by your adviser

(h)    You hereby authorize LBI to disclose your name, address and tax I.D  number to your executing broker(s) to enable such executing broker to establish on its books an account for you to be used in the event transactions are disaffirmed by LBI

(i)    Lehman Brothers will not be responsible or liable for any acts or omissions of any executing broker or its employees  You understand that Lehman Brothers does not act as investment adviser or solicit orders, that Lehman Brothers does not advise prime brokerage customers, perform any analysis, or make any judgment on any matters pertaining to the suitability of any order, or offer any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular investment.

(j)    You agree to indemnify and hold Lehman Brothers harmless from any loss, claim or expense, including attorneys' fees, incurred by Lehman Brothers in connection with Lehman Brothers acting or declining to act as prime broker for you and to fully reimburse Lehman Brothers for any legal or other expenses (including the cost of any investigation and preparation) which Lehman Brothers may incur in connection with any claim, action, proceeding or investigation arising out of or in connection with this Agreement or any transactions hereunder

(k)    You represent and warrant that you are currently in compliance, and during the term of this Agreement will remain in compliance, with all applicable requirements of the SEC Letter, including, but not limited to, the requirement that you execute an agreement with each executing broker

(l)   The prime brokerage services hereunder shall be provided in a manner consistent with the SEC Letter

**22.  LEGALLY BINDING.**  You hereby agree that this Agreement and all of the terms hereof shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions  You hereby waive any and all defenses that any oral instruction was not in writing as may be required by any applicable law, rule or regulation.  With respect to any of your accounts maintained in connection with this Agreement, you hereby authorize Lehman Brothers to act and rely on any instructions (including, without limitation, instructions to transfer cash or securities, purchase or sell securities, enter into derivative or other transactions or borrow money or securities) received by Lehman Brothers from any of the persons listed on Exhibit A, as such list may be amended by you from time to time.  In addition, you hereby authorize Lehman Brothers to act and rely on any such instructions received by Lehman Brothers from any of your employees or agents (including any investment manager or adviser) that Lehman Brothers reasonably believes is authorized to so act on your behalf

**23.  AMENDMENT.**  You agree that Lehman Brothers may modify the terms of this Agreement at any time upon prior written notice to you.  By continuing to accept services from Lehman Brothers thereafter, you will have indicated your acceptance of any such modification.  If you do not accept such modification, you must notify Lehman Brothers in writing, your account may then be terminated by Lehman Brothers, after which you will remain liable to Lehman Brothers for all outstanding liabilities and obligations  Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Lehman Brothers

**24.  GOVERNING LAW.** THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND SHALL BE CONSTRUED, AND THE CONTRACTUAL AND ALL OTHER RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF

**25.  JURISDICTION; WAIVER OF JURY TRIAL.**  The parties shall attempt in good faith to promptly resolve any dispute arising out of, relating to or in connection with this Agreement or any transactions hereunder by negotiations by executives of the parties who have the authority to settle the controversy.  With respect to any suit, action or proceedings relating to this Agreement ("Proceedings"), each party irrevocably submits to the exclusive jurisdiction of the courts of the State of New York and the United States District Court located in the Borough of Manhattan in New York City and waives any objection which it may have at any time to the laying of venue of any Proceedings brought in any such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have any jurisdiction over such party  ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION IS HEREBY WAIVED BY ALL THE PARTIES TO THIS AGREEMENT

**26.  WAIVER OF IMMUNITIES.**  Each party irrevocably waives, to the fullest extent permitted by applicable law, with respect to itself and its revenues and assets, all immunity on the grounds of sovereignty or other similar grounds from (i) suit, (ii) jurisdiction of any court, (iii) arbitration, (iv) relief by way of arbitration award, injunction, order for specific performance or recovery of property, (v) attachment of its assets (whether before or after judgment) and (vi) execution or enforcement of any judgment or arbitration award and irrevocably agrees, to the fullest extent permitted by applicable law, that it will not claim any such immunity

**27.  TRANSFERS.**  Lehman Brothers shall have the right to transfer Assets between any account in order to satisfy any of your obligations to Lehman Brothers  When giving instructions to transfer Assets from your accounts to any bank or other entity, you agree that all such requests will have been approved by an authorized signatory and you agree to provide Lehman Brothers with an accurate account number designating the account to receive such Assets  You agree to indemnify and hold Lehman Brothers harmless from and against all liabilities arising from the provision of an inaccurate account number or any other liabilities arising as a result of the transfer at your request.

**28.  EXTRAORDINARY EVENTS.**  You agree that Lehman Brothers will not be liable for any loss caused, directly or indirectly, by government restrictions, exchange or market rulings, suspension of trading, war (whether declared or undeclared), terrorist acts, insurrection, riots, fires, flooding, strikes, failure of utility services, accidents, adverse weather or other events of nature, including but not limited to earthquakes, hurricanes and tornadoes, or

8

other conditions beyond Lehman Brothers' control. In the event that any communications network, data processing system, or computer system Lehman Brothers uses is rendered inoperable, Lehman Brothers will not be liable to you for any loss, liability, claim, damage or expense resulting, either directly or indirectly, therefrom.

**29. LIMITATION OF LIABILITY.** Lehman Brothers shall not be liable in connection with the execution, clearing, handling, purchasing or selling of securities, commodities or other property, or other action, except for gross negligence or willful misconduct on Lehman Brothers' part. You understand that certain securities may be held outside the United States by unaffiliated, foreign agent banks and depositories. Lehman Brothers will not be liable to you for any loss, liability or expense incurred by you in connection with these arrangements except to the extent that any such loss, liability or expense results from Lehman Brothers' gross negligence or willful misconduct. In no event will Lehman Brothers be liable for any special, indirect, incidental or consequential damages arising out of this Agreement.

**30. HEADINGS; COUNTERPARTS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights provided for hereunder. This Agreement may be executed in counterparts, each of which shall be deemed an original.

**31. TELEPHONE CONVERSATIONS.** For the protection of both you and Lehman Brothers, and as a tool to correct misunderstandings, you hereby authorize Lehman Brothers, at Lehman Brothers' discretion and without prior notice to you, to monitor and/or record any or all telephone conversations or electronic communications between you and Lehman Brothers or any of Lehman Brothers' employees or agents. You acknowledge that Lehman Brothers may determine not to make or keep any of such recordings and that such determination shall not in any way affect any party's rights.

**32. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights, remedies, benefits and protections afforded to each Lehman Brothers Entity under this Agreement and under any Contract you may have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are cumulative and in addition to any other rights, remedies, benefits and protections that any Lehman Brothers Entity may have. To the extent that the provisions of any Contracts you have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are inconsistent (whether the inconsistency be between the Contracts or within a single Contract), the conflict shall be resolved in favor of the provision which affords Lehman Brothers with the maximum rights, remedies, benefits or protections. You hereby appoint Lehman Brothers as your agent and attorney-in-fact to take any action (including, but not limited to, the filing of financing statements) necessary or desirable to perfect and protect the security interest granted herein or to otherwise accomplish the purposes of this Agreement. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Lehman Brothers concerning the subject matter hereof.

**33. CAPACITY TO CONTRACT; ANTI-MONEY LAUNDERING; AFFILIATIONS.** You represent that you have the capacity and authority to enter into this Agreement. You represent to the best of your knowledge that you do not maintain or transact business for or with nor will you introduce individuals or entities to Lehman Brothers that the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") has listed as "Specially Designated Nationals and Blocked Persons" nor with any client in an embargoed country as determined by OFAC. Furthermore, you represent that you have conducted thorough due diligence with respect to all of your clients, and you do not know or have any reason to suspect that the monies used to fund the account have been or will be derived from or related to any illegal activities, including but not limited to, money laundering activities. You agree to provide Lehman Brothers with any information that it may require in relation to compliance with any applicable money laundering regulations. Each representation or warranty made by you in this Agreement will be deemed to be repeated by you on each date on which a transaction occurs hereunder.

You represent that you are of legal age and that, unless you have notified Lehman Brothers to the contrary, neither you nor any member of your immediate family is (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc. or any of its affiliates, (iii) an individual or an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities, options or futures or (iv) an employee of any bank, trust company or insurance company. If you are signing on behalf of others, you hereby represent that the person(s) or entity(ies) on whose behalf you are signing is/are authorized to

enter into this Agreement and that you are duly authorized to sign this Agreement and make the representations contained herein in the name and on behalf of such other person(s) or entity(ies) and you agree to indemnify and hold Lehman Brothers harmless from any claim or claims arising from your unauthorized execution of this Agreement on the behalf of such other person(s) or entity(ies).  You hereby authorize Lehman Brothers to accept faxed copies of this or any other document or instruction as if it were the original and further to accept signatures on said faxes as if they were original.

10

*PLEASE COMPLETE THIS INFORMATION AND SIGN THE APPROPRIATE SPACE BELOW:*

**THIS AGREEMENT IS DATED AS OF** _____, 2005

| | CLAREN ROAD CREDIT MASTER FUND LTD. |
|---|---|
| | *Name of Customer* |

| | |
|---|---|
| *Address* | *Country* |

| | |
|---|---|
| *City, State* | *Zip Code + 4* |

**BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:**

**YOU HAVE RECEIVED A COPY OF THIS AGREEMENT AND AGREE TO ITS TERMS AND CONDITIONS.**

*CUSTOMER NAME*
: *Individual or Printed Name of Company*

*SIGNATURE*
: *Signature of Authorized Person*

*PRINT NAME.*
: *Printed Name and Title of Signatory or Name of General Partner if Signer is a Partnership*

*BY.*
: *Authorized Signatory and Title of General Partner if Above Signer is a Partnership Otherwise Blank*

**ACCEPTED AND AGREED TO:**

Lehman Brothers Inc., as signatory for itself and as agent for the affiliates named herein

11

**EXHIBIT A**
**AUTHORIZED PERSONS**

<u>Name</u>                                                                    <u>Specimen Signature</u>

Brian Riano, Portfolio Manager
and Chief Investment Officer

John Eckerson, Portfolio Manager

Sean Fahey, Portfolio Manager

Albert Marino, Head of Research

Kenneth J. Weiller, Chief Operating Officer

Christopher T. Pullen, Chief Financial Officer

12

## **EXHIBIT C**

**Filed: USBC - Southern District of New York**
**SIPC v. Lehman Brothers Inc.**
**08-01420 (JMP)**

SIPC Claim #                                    **900005056**

**RECEIVED**

JAN **3 0** 2009

**LEGAL SERVICES**

1



**CUSTOMER CLAIM FORM**
**LEHMAN BROTHERS INC.**

SECURITIES INVESTOR PROTECTION CORPORATION

Claren Road Credit Master Fund, Ltd.

Account Name: _____  Daytime Phone: 212-310-5830   212-310-5802

Account Number: See Attachment No. 1  Email: pullen@clarenroad.com; marino@clarenroad.com

Address: Claren Road Asset Management, LLC
900 Third Avenue, 29th Floor, New York,NY
10022

Chris Pullen  Taxpayer I.D. Number

Contact Person: Al Marino  (Social Security No.): **REDACTED**

# PLEASE NOTE

- A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT.

- TO BE ELIGIBLE FOR THE MAXIMUM PROTECTION AFFORDED UNDER
  THE SECURITIES INVESTOR PROTECTION ACT ("SIPA"), ALL CUSTOMER
  CLAIMS SHOULD BE RECEIVED BY THE TRUSTEE ON OR BEFORE
  JANUARY 30, 2009; THE TRUSTEE WILL DETERMINE WHETHER CLAIMS
  MEET THE STATUTORY REQUIREMENTS FOR "CUSTOMER" CLAIMS
  UNDER SIPA; INCLUSION OF A CLAIM OR CLAIM TYPE ON THIS CLAIM
  FORM IS NOT DETERMINATIVE OF CUSTOMER STATUS UNDER SIPA.

- THE DEADLINE FOR FILING ALL CLAIMS IS JUNE 1, 2009. NO CLAIM
  WILL BE ALLOWED IF IT IS RECEIVED AFTER THAT DATE.

- ALL CLAIMS ARE DATED AS OF THE DATE RECEIVED BY THE TRUSTEE.

- YOU MAY FILE YOUR CLAIM ELECTRONICALLY ONLINE AT
  WWW.LEHMANTRUSTEE.COM OR SEND YOUR COMPLETED AND
  SIGNED CLAIM FORM TO THE TRUSTEE VIA CERTIFIED MAIL,
  RETURN RECEIPT REQUESTED.

- IF YOUR ACCOUNT HAS BEEN TRANSFERRED TO ANOTHER
  BROKERAGE FIRM, BUT YOU BELIEVE YOU HAVE A CLAIM FOR
  PROPERTY OWED TO YOU BY LEHMAN BROTHERS INC., YOU MUST
  FILE A CLAIM TO PROTECT YOUR RIGHTS.

- LEHMAN BROTHERS INC. IS THE ONLY LEHMAN ENTITY THAT IS A
  DEBTOR IN THIS SIPA LIQUIDATION PROCEEDING. THIS CUSTOMER
  CLAIM FORM APPLIES ONLY TO LEHMAN BROTHERS INC. AND DOES
  NOT APPLY TO ANY OTHER LEHMAN ENTITY, INCLUDING ANY ENTITY
  IN A PROCEEDING UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED
  STATES CODE.

This claim form must be completed electronically online at www.lehmantrustee.com
or mailed promptly, together with supporting documentation, to the following:

If by first class mail:                      If by overnight mail:

Lehman Brothers Inc. Claims Processing       Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC           c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 6389                                10300 SW Allen Blvd
Portland, OR 97228-6389                      Beaverton, OR 97005

2

1. **CLAIM FOR MONEY BALANCES OR CASH AS OF SEPTEMBER 19, 2008:**

   a.  LBI owes me a credit or cash in the amount of:          $ *8,522,201.09

   b.  I owe LBI a debit or cash in the amount of:             $ 0

   c.  If you wish to repay the debit balance listed in point b. above please insert the amount you wish to repay and attach a check payable to "James W. Giddens, Trustee for the SIPA Liquidation of Lehman Brothers Inc." If you wish to make a payment, **it must be enclosed with this claim form.**

                                                               $ _____

2. **CLAIM FOR SECURITIES AS OF SEPTEMBER 19, 2008:**

   <u>Please Do Not Claim Any Securities You Have In Your Possession</u>

|  |  | YES | NO |  |
|---|---|---|---|---|
|  |  | (Circle Y or N) |  |  |
| a. | LBI owes me securities: | Y | N | ✓ |
| b. | I owe LBI securities: | Y | N | ✓ |

   c.  If yes to either, please list below (or in additional pages as necessary):

| Trade Date of Transaction (mm/dd/yyyy) | Name of Security | CUSIP | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|---|
|  |  |  | LBI Owes Me (Long) | I Owe LBI (Short) |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |

   If additional space is needed, attach additional pages providing the information in the exact format above.

2

_____

*See Attachment No. 1

3

### 3.   COMMODITY FUTURES CLAIMS

|                                                      | YES | NO |
|---|---|---|
|                                                      | (Circle Y or N) | |
| Do you have a claim based on a commodity futures account? | Y | N ✓ |

If the answer to the above question is "yes," please state the amount, and explain the basis for your claim below, attaching additional pages and supporting documents as necessary:

Amount of Claim: _____

Basis for Claim: _____

_____

_____

_____

_____

**WHEN COMPLETING SECTIONS 1 THROUGH 3 PLEASE KEEP IN MIND:** See Attachment No. 4

- If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate that your claim is an estimated claim.
- Proper documentation can speed the review, allowance, and satisfaction of your claim.
- Please enclose: copies of your last LBI account statement; purchase or sale confirmation slips; copies of checks that relate to the securities or cash you claim; and any other documentation or correspondence you believe will be of assistance in processing your claim.
- Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement.
- If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CIRCLE THE APPROPRIATE ANSWER FOR ITEMS 4 THROUGH 11.**

NOTE:    IF "Y" IS CIRCLED FOR ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
|  |  | (Circle Y or N) | |
| 4. | Does your claim in any way relate to an entity other than Lehman Brothers Inc. (for example, Lehman Brothers Holdings Inc., or another Lehman subsidiary)? | Y | N ✓ |
| 5. | Has there been any change in your account since September 19, 2008? | Y | N ✓ |

3

4

6.  Are you or were you a party to a repurchase or reverse repurchase agreement, director, officer, partner, shareholder, lender to, or capital contributor of LBI?   Y    N ✓

7.  Are you related to, or do you have any business venture with, any of the persons specified in "6" above, or any employee or other person associated in any way with LBI? If so, give name(s).   Y    N ✓

8.  Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of LBI?   Y    N ✓

9.  Is this claim being filed on behalf of a customer of a broker or dealer or bank? If so, provide documentation with respect to each customer on whose behalf you are claiming.   Y    N ✓

10. Have you ever given any discretionary authority to any person to execute securities transactions with or through LBI on your behalf? Give names, addresses and phone numbers.   Y    N ✓

11. Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? If so, give name of that broker.   Y    N ✓

Please list the full name, address, phone number, and email address of anyone assisting you in the preparation of this claim form:

Full name: Seward & Kissel LLP    Attn: John R. Ashmead

Address: One Battery Park Plaza

New York, NY 10004

Phone number: 212-574-1200

Email address: ashmead @sewkis.com

If more than one person is assisting you, attach additional pages providing the information in the exact format above.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF UP TO $50,000 OR IMPRISONMENT OF UP TO FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date 1/26/2009    Signature _____

Date 1/26/2009    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

4

**Attachment No. 1 to**
**Customer Claim of**
<u>**Claren Road Credit Master Fund Ltd.**</u>

## CLAREN ROAD CREDIT MASTER FUND LTD.
## ADDENDUM TO CUSTOMER CLAIM FORM
## LEHMAN BROTHERS INC.

Claren Road Credit Master Fund Ltd. ("Claren Road") submits this addendum to the annexed Customer Claim Form to supplement and support its claim.

The claim of Claren Road for $8,522,201.09 represents the amount owed by Lehman Brothers Inc. ("LBI") in connection with two failed bond trades between Claren Road and LBI (the "Bond Trades").

Claren Road and, upon information and belief, LBI entered into an arrangement whereby LBI would purchase two sets of European Lehman Brothers bonds from Claren Road on September 12, 2008. LBI was to purchase from Claren Road 4,506,000 European Lehman Brothers bonds with a maturity date of October, 2011, ISIN Number XS0257022714, at an individual bond price of €75 (the "2011 Bonds"). LBI was also to purchase from Claren Road 4,800,000 European Lehman Brothers bonds with a maturity date of June, 2013, ISIN Number XS0272543900, at an individual price of €77 (the "2013 Bonds"). LBI failed to settle the Bond Trades, and the transactions failed on September 17, 2008.

As of September 19, 2008, the date of the commencement of the SIPA proceeding, the individual value of both the 2011 Bonds and the 2013 Bonds had diminished to €11. The diminution in value with respect to the 2011 Bonds from September 12, 2008, the intended date of the transaction, to September 19, 2008 represents a loss to Claren Road of $4,061,023.49 in U.S. dollars. The diminution in value with respect to the 2013 Bonds for the same time period represents a loss to Claren Road of $4,461,177.60 in U.S. dollars. The value of Claren Road's claim arising from LBI's failure to complete the Bond Trade, consequently, is the combined loss in value of the 2011 Bonds and the 2013 Bonds, totaling $8,522,201.09.

SK 25208 0005 960114

7

## EXHIBIT D

**James W. Giddens**
**Trustee for the SIPA Liquidation of Lehman Brothers Inc.**
**c/o Epiq Bankruptcy Solutions, LLC**
**757 Third Avenue, 3rd Floor**
**New York, NY  10017**

*In re Lehman Brothers Inc.*

Case No. 08-01420 (JMP) SIPA

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

March 25, 2010

**VIA UPS OVERNIGHT**

CLAREN ROAD CREDIT MASTER FUND LTD
C/O SEWARD & KISSEL LLP
JOHN R ASHMEAD
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004

Re:  Claim Number(s): 

Account Number(s)

Dear Claimant:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of Lehman Brothers Inc. ("LBI") is being conducted by James W. Giddens, Trustee (the "Trustee") under the Securities Investor Protection Act of 1970, as amended ("SIPA") pursuant to an order entered on September 19, 2008 by the United States District Court for the Southern District of New York.  You have submitted the above-referenced claim(s) (the "Claim") as a customer claim in this proceeding.  This Notice is applicable only to the claim(s) and/or accounts identified above.  If you filed other claims, additional notices will be issued.

The Trustee has made the following determination regarding your Claim:

Your Claim for account REDACTED is DENIED.  This account is with Lehman Brothers International (Europe) ("LBIE").  LBIE has filed claims with the Trustee for funds or property held or believed to be held by LBI for the benefit of LBIE's customers.

Your claim to account REDACTED is DENIED.  LBI records indicate that this account was empty as of September 19, 2008.  Accordingly, you have no claim against the estate.

60978511_1

**PLEASE TAKE NOTICE:**  If you disagree with this determination and desire a hearing before Bankruptcy Judge James M. Peck, you MUST file your written opposition, setting forth (i) the claim number; (ii) a detailed statement of the reasons for your objection to the Trustee's determination; (iii) copies of any document or other writing upon which you rely; and (iv) mailing, phone, and email contact information, with the United States Bankruptcy Court and the Trustee within THIRTY DAYS of the date of this notice.

**PLEASE TAKE FURTHER NOTICE:**  If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:**  If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date.  Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:**  You must file your opposition in accordance with the above procedure electronically with the Court on the docket of *In re* Lehman Brothers Inc., Case No. 08-01420 (JMP) SIPA in accordance with General Order M-242 (available at www.nysb.uscourts.gov/orders/orders2.html) by registered users of the Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), Microsoft Word or any other Windows-based word processing format.

If you do not have means to file your opposition electronically, you may mail your opposition to:

> Clerk of the United States Bankruptcy Court
> Southern District of New York
> One Bowling Green
> New York, New York 10004

**PLEASE TAKE FURTHER NOTICE:**  You must serve your opposition upon the Trustee's counsel by mailing a copy to:

> Hughes Hubbard & Reed LLP
> One Battery Park Plaza
> New York, NY 10004
> Attn:  LBI Hearing Request
>
> Attorneys for James W. Giddens, Trustee for
> the SIPA Liquidation of Lehman Brothers Inc.

> Very Truly Yours,

> James W. Giddens
> Trustee for the SIPA Liquidation of
> Lehman Brothers Inc.