FAEGRE & BENSON LLP
Michael M. Krauss (MK-9699)
Abby E. Wilkinson
Michael F. Doty
Christopher J. Harayda
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

Attorneys for Santa Fe Partners, LLC;
Santa Fe Partners, LLC for and on behalf of
Anasazi Systematic Long Short LP and
Anasazi Market Neutral LP; and Santa Fe
Master Fund SPC for and on behalf of
Anasazi Market Neutral 2x, Segregated
Portfolio, Anasazi Market Neutral 3x,
Segregated Portfolio, Anasazi Systematic
Long Short B, Segregated Portfolio, Anasazi
Systematic European Long Short C,
Segregated Portfolio, Anasazi Japanese
Systematic Long Short D, Segregated
Portfolio, Anasazi Systematic European
Long Short E, Segregated Portfolio and
Anasazi Systematic Japanese Long Short F,
Segregated Portfolio

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |

---------------------------------------------------------------------x

**SANTA FE ENTITIES' REPLY TO THE OMNIBUS OBJECTION TO SANTA FE ENTITIES' MOTION TO TREAT THEIR CLAIMS AS TIMELY FILED PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)**

Santa Fe Partners, LLC ("Santa Fe") and certain related funds[1] (collectively, the "Funds" and together with Santa Fe, the "Santa Fe Entities"), respectfully submit this reply to the Omnibus Objection to Santa Fe Entities' Motion to Treat Their Claims as Timely Filed Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1) (the "Objection") filed by Lehman Brothers Holdings International ("LBHI") and its affiliated debtors (collectively, the "Debtors") and to the Joinder of Official Unsecured Creditors Committee (the "Committee") to the Objection (the "Joinder").

## PRELIMINARY STATEMENT

The Santa Fe Entities learned of the Guarantees after the Claims Bar Date, and acted promptly to file proofs of claim and complete Guarantee Questionnaires by the October 22, 2009, questionnaire deadline.[2] The Debtors acknowledge the delay as minimal and do not question the Santa Fe Entities' good faith. The Santa Fe Entities' claims should be treated as timely because the delay was beyond the Santa Fe Entities' reasonable control: the Santa Fe Entities diligently reviewed their own records before the Claims Bar Date, found no evidence of the Guarantees, and learned of the Guarantees from a third party only after the Claims Bar Date. Any potential prejudice to the Debtors was eliminated by the Santa Fe Entities' swift action in submitting timely Guarantee Questionnaires concurrently with their proofs of claim. The Santa Fe Entities' compliance with the questionnaire deadline creates an easily identifiable barrier to any "flood" of late-filed claims. And, as a practical matter, the Debtors do not dispute that they have had sufficient information to review the Santa Fe Entities' claims since the questionnaire deadline that they themselves requested. Because a finding of excusable neglect is warranted

---

[1] Each of: Anasazi Systematic Long Short LP; Anasazi Market Neutral LP; and Santa Fe Master Fund SPC for and on behalf of Anasazi Market Neutral 2x, Segregated Portfolio, Anasazi Market Neutral 3x, Segregated Portfolio, Anasazi Systematic Long Short B, Segregated Portfolio, Anasazi Systematic European Long Short C, Segregated Portfolio, Anasazi Japanese Systematic Long Short D, Segregated Portfolio, Anasazi Systematic European Long Short E, Segregated Portfolio and Anasazi Systematic Japanese Long Short F, Segregated Portfolio.

[2] Capitalized terms used but not otherwise defined shall have the respective meanings ascribed to such terms in the Santa Fe Entities' Motion to Treat Their Claims as Timely Filed and Memorandum of Points and Authorities in Support Thereof (the "Motion").

under these undisputed facts, the Santa Fe Entities are entitled to have their proofs of claim treated as timely filed.

**THE SANTA FE ENTITIES' FAILURE TO FILE A TIMELY PROOF OF CLAIM WAS NOT WITHIN THEIR REASONABLE CONTROL.**

The Santa Fe Entities did not file their proofs of claim by the Claims Bar Date for the simple reason that they did not know of the basis for their claims by that date. Indeed, the Debtors do not allege that the Santa Fe Entities were in possession of, or had any knowledge of, the underlying Guarantees before the Claims Bar Date. The Debtors do not even allege that the Santa Fe Entities had any reason to go looking for the Guarantees before the Claims Bar Date. Rather, the Debtors allege that the Santa Fe Entities had sufficient time to locate the Guarantees and file their proofs of claim, and that the Santa Fe Entities had a duty to review claims filed by third parties in these proceedings, and read every webpage relating to the Debtors' cases–even though the Santa Fe Entities had no idea that they might have claims against the Debtors. (Objection ¶ 65.)

The standard advocated by the Debtors would require a potential creditor to search every website, filing, proof of claim, and other document related to a bankruptcy case in which it *might* have a claim. This proposed standard is absurd on its face. Creditors have filed more than 65,000 claims against the Debtors. (D.I. 6374.) The Santa Fe Entities had no reason to spend time and resources reviewing thousands of claims when they were unaware of any potential claims they might have against LBHI.

Contrary to the Debtors' allegation that the Santa Fe Entities failed "to conduct sufficient diligence to identify potential claims," the Santa Fe Entities diligently reviewed their transaction documents, and all documents within their control. Unlike the cases on which the Debtors rely, this is not a case in which the creditor did not discover a claim because they failed to adequately

3

review their own records.  (*Compare* Objection ¶ 26 and cases cited therein.)  The Santa Fe Entities diligently reviewed their records, found no evidence of any claims, and learned of their claims only when a third party notified them of the existence of the Guarantees.

To advance their contention, the Debtors misstate both the law and the Santa Fe Entities' position.  (*See* Objection ¶¶ 15, 20, 59, 64, 66.)  The Debtors' proposed "strict scrutiny" standard bears little relationship to the actual standard adopted by the Supreme Court, which permits the court "to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993).  The Debtors' cases were decided *before* the Supreme Court's instruction in *Pioneer* that excusable neglect is an "elastic concept" requiring consideration of "all the relevant circumstances."  *Compare Florida Dept. of Ins. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 148 B.R. 1002, 1005 (S.D.N.Y. 1993) (decided in January 1993, whereas *Pioneer* was decided in March), *and Hooker Inv., Inc.*, 122 B.R. 659, 664 (S.D.N.Y. 1991), *with Pioneer*, 507 U.S. at 392.

Contrary to the Debtors' assertion, the Santa Fe Entities do not contend that the failure to discover a claim until after the Claims Bar Date "must" or "must always" lead to a finding of excusable neglect.  (Objection ¶¶ 15, 59.)  Rather, the Santa Fe Entities argue that *their delay* in filing proofs of claim constitutes excusable neglect under the four *Pioneer* factors because they (i) reviewed all documents related to the transactions giving rise to their claims, (ii) were unaware of the Guarantees prior to the Claims Bar Date, (iii) acted quickly to file proofs of claim on discovering their claims, (iv) filed Guarantee Questionnaires prior to the questionnaire deadline, and (v) acted in good faith.

The Debtors wrongly cite *In re New York Trap Rock Corp.*, 153 B.R. 648 (Bankr. S.D.N.Y. 1993), for the proposition that because the Santa Fe Entities' delay in filing their proofs of claim was within their control, it is not "excusable." (Objection ¶ 66.) As detailed above, the delay was not in the Santa Fe Entities' control because the Santa Fe Entities' records did not contain evidence of the Guarantees. Beyond that, the creditor in *Trap Rock* did not attempt to file its proof of claim until approximately one year after it acquired actual knowledge of its claim. *Id.* at 652. The Santa Fe Entities, in contrast, filed their proofs of claim less than two weeks after learning of the Guarantees. (Leatherberry Aff. ¶¶ 6-8.) Furthermore, in *Trap Rock*, the court found that *all four Pioneer* factors tipped against the creditor, which the Debtors concede is not the case here. 153 B.R. at 654.

The Debtors also misinterpret the cases relied on by the Santa Fe Entities. These cases demonstrate that excusable neglect may be found even though the claims at issue theoretically *could have been* known to the creditor prior to the bar date, but where the creditors lack *actual* knowledge of the claims until after the bar date. *In re PT-1 Commc'ns*, 292 B.R. 482, 489-90 (Bankr. E.D.N.Y. 2003) (state taxing authority "had no reason on the basis of the facts *known to it* before the bar date to conclude it had a claim against [the debtor]" despite the information being available in an annual report filed with the state) (emphasis added); *In re Sage-Dey*, 170 B.R. 46, 48, 52 (Bankr. N.D.N.Y. 1994) (one department of IRS knew of tax discrepancy giving rise to its claim before the bar date, but due to a failure of the IRS' "own internal procedures" the information was not timely relayed to the department in charge of filing claims).

Finally, the Debtors distort the statements of this Court at a prior hearing to support their claims. (Objection ¶ 64.) The Debtors correctly present the Court's statement that the failure to file a proof of claim was an "important omission," but misrepresent the Court's statement that "it

5

might defeat your ability to get paid" as also referring to the proof of claim. The second quote actually refers to a creditor's failure to file a Guarantee Questionnaire. (Hearing Tr. Nov. 18, 2009 at 71, 74). Here, of course, the Santa Fe Entities filed timely Guarantee Questionnaires.

**THE DEBTORS HAVE FAILED TO DEMONSTRATE HOW THEY WOULD BE PREJUDICED IF THE COURT ALLOWS THE SANTA FE ENTITIES' CLAIMS.**

The Debtors again invoke the "floodgates" argument in asserting that they will be prejudiced by an "avalanche" of new claims if the Santa Fe Entities' claims are treated as timely filed. (Objection ¶ 68.) The Debtors' figurative "avalanche" is belied by the facts and should not be confused with actual prejudice. *See In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999) ("prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence"). As the Debtors concede, even though more than 65,000 claims have been filed, only thirteen motions to permit late-filed claims are before this Court. (Objection ¶ 29.)

More to the point, this Court has already addressed, and largely dismissed, the Debtors' "floodgates" argument. The Court stated: "In a situation where there has been compliance, at least with the deadline for providing detail [by filing a Guarantee Questionnaires], but noncompliance with the deadline for filing a proof of claim, I can't imagine a whole lot of parties falling into that category. It's a drip. It's not a flood." (Hearing Tr. Nov. 18, 2009 at 78).

That is precisely the case here. The Santa Fe Entities moved swiftly on learning of the Guarantees in early October 2009. The Santa Fe Entities are among those creditors that submitted their Guarantee Questionnaires by the questionnaire deadline, and concurrently filed their proofs of claim. (Motion Ex. C; Leatherberry Aff. ¶ 8.) These facts establish a clear delineation between the Santa Fe Entities' claims and those of other creditors who failed to provide notice of their claims by failing to file a timely Guarantee Questionnaires. As a result,

6

this Court would not "be hard-pressed to distinguish [the Santa Fe Entities'] situation from any other similar creditors." *In re Keene Corp.*, 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995).

These facts also upend the Debtors' effort to show actual prejudice with respect to the Santa Fe Entities' claims. The Debtors acknowledge the Santa Fe Entities' delay as minimal, and they do not dispute that they have been aware of the Santa Fe Entities' claims during the entire claims review process. (Objection ¶ 70.) Indeed, the Debtors are still in the process of reviewing claims. (*Id.* ¶ 28.) Additionally, they admit that they "have not had a full opportunity to consummate negotiations with key creditor constituencies as to the provisions of [their forthcoming plan]." (D.I. 7355). Nor have the Debtors filed a disclosure statement, and in fact have requested and received an extension to file one. (D.I. 7355, 7357.) Even if the Debtors had already proposed a plan, reviewed all proofs of claim, and filed a disclosure statement, they would have done so with full knowledge of the existence of the Santa Fe Entities' claims.

Moreover, the Debtors' rhetoric that they "could never be comfortable proposing a plan of reorganization" and that "any party that has yet to file a claim against LBHI based on the purported guarantees . . . would move this court to have its claim deemed timely on similar grounds" ignores not only the facts specific to the Santa Fe Entities' claims, but also the relevant legal standard. (Objection ¶¶ 60, 68.) *Pioneer*'s four-factor test, and the requirement that the Court "take account of all relevant circumstances," ensure that the Debtors' parade of horribles will not occur. 507 U.S. at 395. A creditor who files a proof of claim after a debtor proposes a plan of reorganization will have difficulty demonstrating that the reason for its delay outweighs the extraordinary length of its delay and the significant prejudice its delay caused to non-moving parties.

In *Pioneer*, the Supreme Court stated that "the lack of any prejudice to the debtor or to the interests of efficient judicial administration, combined with good faith of the [creditors] and their counsel, weigh strongly in favor of permitting the tardy claim." 507 U.S. at 381. A decision to treat the Santa Fe Entities' claims as timely filed will not prejudice any non-moving parties or hinder the efficient administration of the Debtors' cases.

**THE JOINDER RAISES ISSUES IMMATERIAL TO THE SANTA FE ENTITIES' MOTION.**

The Committee seems to assert that the Motion should be denied because the Santa Fe Entities lack a colorable claim against the Debtors. (Joinder ¶ 2.) The Committee alleges that the Santa Fe Entities did not rely on the Guarantees when entering into their underlying contracts with the Debtors' affiliates. This assertion is both irrelevant and unfounded. First, the question before this Court is not whether the Santa Fe Entities' claims are valid, but whether the Santa Fe Entities' failure to timely file proofs of claim is the result of excusable neglect. Second, the Committee has not demonstrated that the Santa Fe Entities needed to have relied on the Guarantees to have valid claims. Indeed, LBHI was aware of the existence of the Guarantees and its obligations with respect to amounts owed by LB Europe, regardless of the Santa Fe Entities' reliance on the Guarantees.

**CONCLUSION**

The Santa Fe Entities, through no fault of their own, had no knowledge of their claims prior to the Claims Bar Date. Less than a month after the Claims Bar Date, the Santa Fe Entities complied with the questionnaire deadline and filed their proofs of claim. The Debtors concede that the length of delay is minimal, and that the Santa Fe Entities acted in good faith. The Debtors' attempt to show that permitting the Santa Fe Entities' claims would "open the

8

floodgates" does not withstand even minimal scrutiny. Accordingly, this Court should grant the

Santa Fe Entities' motion and treat their claims as timely filed.

March 15, 2010

/s/ Michael M. Krauss
Michael M. Krauss (MK-9699)
Abby E. Wilkinson
Michael F. Doty
Christopher J. Harayda
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

Attorneys for Santa Fe Partners, LLC;
Santa Fe Partners, LLC for and on behalf of
Anasazi Systematic Long Short LP and
Anasazi Market Neutral LP; and Santa Fe
Master Fund SPC for and on behalf of
Anasazi Market Neutral 2x, Segregated
Portfolio, Anasazi Market Neutral 3x,
Segregated Portfolio, Anasazi Systematic
Long Short B, Segregated Portfolio, Anasazi
Systematic European Long Short C,
Segregated Portfolio, Anasazi Japanese
Systematic Long Short D, Segregated
Portfolio, Anasazi Systematic European
Long Short E, Segregated Portfolio and
Anasazi Systematic Japanese Long Short F,
Segregated Portfolio

fb.us.4967285.07