FAEGRE & BENSON LLP
Michael M. Krauss (MK-9699)
Abby E. Wilkinson
Irina Palchuk
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

Attorneys for CVI GVF (Lux) Master S.a.r.l.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
: 
**In re** : Chapter 11
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : Case No. 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
-------------------------------------------------------------------x

**CVI GVF (LUX) MASTER S.A.R.L.'S REPLY TO THE OMNIBUS OBJECTION TO CVI GVF (LUX) MASTER S.A.R.L.'S MOTION TO TREAT THE CLAIMS OF BLACK RIVER ASIA FUND LTD. AS TIMELY FILED PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)**

CVI GVF (Lux) Master S.a.r.l. ("CVI"), respectfully submits this reply in response to the Omnibus Objection to CVI's Motion to Treat the Claim Filed by Black River Asia Fund Ltd. ("Black River") as Timely Filed Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1) (the "Objection") filed by Lehman Brothers Holdings International ("LBHI") and its affiliated debtors (collectively, the "Debtors") and to the Joinder of Official Unsecured Creditors Committee (the "Committee") to the Objection (the "Joinder").

1

**PRELIMINARY STATEMENT**

Black River learned of the Guarantees after the Claims Bar Date, and acted promptly to file Supplemental Questionnaires by the applicable deadline, and its proof of claim just one week later.[1] The Debtors acknowledge the delay as minimal and do not question Black River's good faith. Black River's claim should be treated as timely because the delay in filing was beyond Black River's reasonable control: Black River diligently reviewed its own records before the Claims Bar Date, found no evidence of the Guarantees, and learned of the Guarantees from a third party only after the Claims Bar Date. Any potential prejudice to the Debtors was eliminated by Black River's swift action in then submitting timely Supplemental Questionnaires before the October 22, 2009 questionnaire deadline followed closely by its proof of claim. Black River's compliance with the questionnaire deadline creates an easily identifiable barrier to any "flood" of late-filed claims. And, as a practical matter, the Debtors do not dispute that they have had sufficient information to review Black River's claim since the questionnaire deadline that they themselves requested. Because a finding of excusable neglect is warranted under these undisputed facts, Black River is entitled to have its proof of claim treated as timely filed.

**BLACK RIVER'S FAILURE TO FILE A TIMELY PROOF OF CLAIM WAS NOT WITHIN ITS REASONABLE CONTROL.**

Black River did not file its proof of claim by the Claims Bar Date for the simple reason that it did not know of the basis for its claim by that date. Indeed, the Debtors do not allege that Black River was in possession of, or had any knowledge of, the underlying Guarantees before the Claims Bar Date. The Debtors do not even allege that Black River had any reason to go looking for the Guarantees before the Claims Bar Date. Rather, the Debtors allege that Black River had sufficient time to locate the Guarantees and file its proof of claim, and that Black

---

[1] Capitalized terms used but not otherwise defined shall have the respective meanings ascribed to such terms in CVI's Motion to Treat Claim Filed By Black River Asia Fund Ltd. as Timely Filed and Memorandum of Points and Authorities in Support Thereof (the "Motion").

River had a duty to review claims filed by third parties in these proceedings, and read every webpage relating to the Debtors' cases–even though Black River had no idea that it might have a claim against the Debtors. (Objection ¶ 65.)

The standard advocated by the Debtors would require a potential creditor to search every website, filing, proof of claim, and other document related to a bankruptcy case in which it *might* have a claim. This proposed standard is absurd on its face. Creditors have filed more than 65,000 claims against the Debtors. (D.I. 6374). Black River had no reason to spend time and resources reviewing thousands of claims when it was unaware of any potential claim it might have against LBHI arising out of the Repurchase Contract.

Contrary to the Debtors' allegation that Black River failed "to conduct sufficient diligence to identify potential claims," Black River diligently reviewed its transaction documents, and all documents within its control. Unlike the cases on which the Debtors rely, this is not a case in which the creditor did not discover a claim because it failed to adequately review its own records. (*Compare* Objection ¶ 26 and cases cited therein.) Black River diligently reviewed its records, found no evidence of any claims, and learned of its claim only when a third party notified it of the existence of the Guarantees.

To advance their contention, the Debtors misstate both the law and CVI's position. (*See* Objection ¶¶ 15, 20, 59, 64, 66.) The Debtors' proposed "strict scrutiny" standard bears little relationship to the actual standard adopted by the Supreme Court, which permits the Court "to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). The Debtors' cases were decided *before* the Supreme Court's instruction in *Pioneer* that excusable neglect is an "elastic concept" requiring consideration of

"all the relevant circumstances." *Compare Florida Dept. of Ins. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 148 B.R. 1002, 1005 (S.D.N.Y. 1993) (decided in January 1993, whereas *Pioneer* was decided in March), *and Hooker Inv., Inc.*, 122 B.R. 659, 664 (S.D.N.Y. 1991), *with Pioneer*, 507 U.S. at 392.

Contrary to the Debtors' assertion, CVI does not contend that the failure to discover a claim until after the Claims Bar Date "must" or "must always" lead to a finding of excusable neglect. (Objection ¶¶ 15, 59.) Rather, CVI argues that *Black River's delay* in filing a proof of claim constitutes excusable neglect under the four *Pioneer* factors because it (i) reviewed all documents related to the transactions giving rise to its claim, (ii) was unaware of the Guarantees prior to the Claims Bar Date, (iii) acted quickly to file a proof of claim on discovering its claim, (iv) filed Supplemental Questionnaires prior to the questionnaire deadline, and (v) acted in good faith.

The Debtors wrongly cite *In re New York Trap Rock Corp.*, 153 B.R. 648 (Bankr. S.D.N.Y. 1993), for the proposition that because Black River's delay in filing its proof of claim was within its control, it is not "excusable." (Objection ¶ 66.) As detailed above, the delay was not in Black River's control because Black River's records did not contain evidence of the Guarantees. Beyond that, the creditor in *Trap Rock* did not file its proof of claim until approximately one year after it acquired actual knowledge of its claim. *Id.* at 652. Black River, in contrast, filed its proof of claim within weeks of learning of the Guarantees. (Rabogliatti Aff. ¶¶5-7.) Furthermore, in *Trap Rock*, the court found that *all four Pioneer* factors tipped against the creditor, which the Debtors concede is not the case here. 153 B.R. at 654.

The Debtors also misinterpret the cases relied on by CVI. These cases demonstrate that excusable neglect may be found even though the claims at issue theoretically *could have been*

known to the creditor prior to the bar date, but where the creditors lack *actual* knowledge of the claims until after the bar date. *In re PT-1 Commc'ns*, 292 B.R. 482, 489-90 (Bankr. E.D.N.Y. 2003) (state taxing authority "had no reason on the basis of the facts *known to it* before the bar date to conclude it had a claim against [the debtor]" despite the information being available in an annual report filed with the state) (emphasis added); *In re Sage-Dey*, 170 B.R. 46, 48, 52 (Bankr. N.D.N.Y. 1994) (one department of IRS knew of tax discrepancy giving rise to its claim before the bar date, but due to a failure of the IRS' "own internal procedures" the information was not timely relayed to the department in charge of filing claims).

Finally, the Debtors distort the statements of this Court at a prior hearing to support their claims. (Objection ¶ 64.) The Debtors correctly present the Court's statement that the failure to file a proof of claim was an "important omission," but misrepresent the Court's statement that "it might defeat your ability to get paid" as also referring to the proof of claim. The second quote actually refers to a creditor's failure to file a Supplemental Questionnaire. (Hearing Tr. Nov. 18, 2009 at 71, 74). Here, of course, Black River filed timely Supplemental Questionnaires.

## THE DEBTORS HAVE FAILED TO DEMONSTRATE HOW THEY WOULD BE PREJUDICED IF THE COURT ALLOWS BLACK RIVER'S CLAIM.

The Debtors again invoke the "floodgates" argument in asserting that they will be prejudiced by an "avalanche" of new claims if Black River's claim is treated as timely filed. (Objection ¶ 68.) The Debtors' figurative "avalanche" is belied by the facts and should not be confused with actual prejudice. *See In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999) ("prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence"). As the Debtors concede, even though more than 65,000 claims have been filed, only thirteen motions to permit late-filed claims are before this Court. (Objection ¶ 29.)

5

More to the point, this Court has already addressed, and largely dismissed, the Debtors' "floodgates" argument. The Court stated: "In a situation where there has been compliance, at least with the deadline for providing detail [by filing a Supplemental Questionnaire], but noncompliance with the deadline for filing a proof of claim, I can't imagine a whole lot of parties falling into that category. It's a drip. It's not a flood." (Hearing Tr. Nov. 18, 2009 at 78).

That is precisely the case here. Black River moved swiftly on learning of the Guarantees in early October 2009. Black River is among those creditors that submitted its Supplemental Questionnaires by the October 22 deadline, and filed its proof of claim one week later. (Motion Ex. B; Rabogliatti Aff. ¶¶ 7-8.) These facts establish a clear delineation between Black River's claim and those of other creditors who failed to provide notice of their claims by failing to file a timely Supplemental Questionnaires. As a result, this Court would not "be hard-pressed to distinguish [Black River's] situation from any other similar creditors." *In re Keene Corp.*, 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995).

These facts also upend the Debtors' effort to show actual prejudice with respect to Black River's claim. The Debtors acknowledge Black River's delay as minimal, and they do not dispute that they have been aware of Black River's claim during the entire claims review process. (Objection ¶ 70.) Indeed, the Debtors are still in the process of reviewing claims. (*Id.* ¶ 28.) Additionally, they admit that they "have not had a full opportunity to consummate negotiations with key creditor constituencies as to the provisions of [their forthcoming plan]." (D.I. 7355). Nor have the Debtors filed a disclosure statement, and in fact have requested and received an extension to file one. (D.I. 7355, 7357). Even if the Debtors had already proposed a plan, reviewed all proofs of claim, and filed a disclosure statement, they would have done so with full knowledge of the existence of Black River's claim.

Moreover, the Debtors' rhetoric that they "could never be comfortable proposing a plan of reorganization" and that "any party that has yet to file a claim against LBHI based on the purported guarantees . . . would move this court to have its claim deemed timely on similar grounds" ignores not only the facts specific to Black River's claim, but also the relevant legal standard. (Objection ¶¶ 60, 68.) *Pioneer*'s four-factor test, and the requirement that the Court "take account of all relevant circumstances," ensure that the Debtors' parade of horribles will not occur. 507 U.S. at 395. A creditor who files a proof of claim after a debtor proposes a plan of reorganization will have difficulty demonstrating that the reason for its delay outweighs the extraordinary length of its delay and the significant prejudice its delay caused to non-moving parties.

In *Pioneer*, the Supreme Court stated that "the lack of any prejudice to the debtor or to the interests of efficient judicial administration, combined with good faith of the [creditors] and their counsel, weigh strongly in favor of permitting the tardy claim." 507 U.S. at 381. A decision to treat Black River's claim as timely filed will not prejudice any non-moving parties or hinder the efficient administration of the Debtors' cases.

**THE JOINDER RAISES ISSUES IMMATERIAL TO CVI'S MOTION.**

The Committee seems to assert that the Motion should be denied because Black River lacks a colorable claim against the Debtors. (Joinder ¶ 2.) The Committee alleges that Black River did not rely on the Guarantees when entering into its underlying contracts with the Debtors' affiliates. This assertion is both irrelevant and unfounded. First, the question before this Court is not whether Black River's claim is valid, but whether Black River's failure to timely file a proof of claim is the result of excusable neglect. Second, the Committee has not demonstrated that Black River needed to have relied on the Guarantees to have a valid claim.

7

Indeed, LBHI was aware of the existence of the Guarantees and its obligations with respect to amounts owed by LB Europe, regardless of Black River's reliance on the Guarantees.

## CONCLUSION

Black River, through no fault of its own, had no knowledge of its claim prior to the Claims Bar Date. Less than a month after the Claims Bar Date, Black River complied with the questionnaire deadline and then filed its claim. The Debtors concede that the length of delay is minimal, and that Black River acted in good faith. The Debtors' attempt to show that permitting Black River's claim would "open the floodgates" does not withstand even minimal scrutiny. Accordingly, this Court should grant CVI's motion and treat Black River's claim as timely filed.

March 15, 2010

/s/ Michael M. Krauss
Michael M. Krauss (MK-9699)
Abby E. Wilkinson
Irina Palchuk
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

Attorneys for CVI GVF (Lux) Master S.a.r.l.

fb.us.4992324.05