UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**Hearing Date & Time:**
**May 12, 2010 at 10:00am**

-------------------------------------------------------------x

IN RE: LEHMAN BROTHERS HOLDINGS,
INC., *et al.,*

**Chapter 11 Case No.**
**08-13555 (JMP)**

**(Jointly Administered)**

Debtors.

-------------------------------------------------------------x

## MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 362(d)(1) & (2) WITH RESPECT TO REAL PROPERTY KNOWN AS 60 SOUTH 31st STREET, WYANDANCH, NEW YORK

U.S. Bank National Association, Trustee for Lehman Brothers Securitization Name Structured Asset Investment Loan Trust (hereinafter, "Movant"), by its undersigned counsel, respectfully moves this honorable Court for an Order terminating the automatic stay, pursuant to 11 U.S.C. §§ 362(d)(1) & (2), as to a parcel of real property commonly known as 60 South 31st Street, Wyandanch, New York, and identified on the Suffolk County Tax Map as Lot Nos. 0100-054.00-02.00-016.000 and 0100-054.00-02.00-017.000, so that Movant may exercise its rights against the said Property.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1409(a). The statutory basis for the relief requested in this motion is 11 U.S.C. §§ 362(d)(1) & (2).

## PROCEDURAL HISTORY

2. On or about September 15, 2008, Lehman Brothers Holdings, Inc. filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

3. On or about January 9, 2009, BNC Mortgage, LLC filed a Voluntary Petition pursuant to Chapter 11 in this Court, which case bore Chapter 11 Case No. 09-10137 (JMP).

4. Thereafter, on or about January 14, 2009, this Court (Peck. J.) issued an Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing Joint Administration of Chapter 11 Cases, including Case No. 09-10137, with the within Chapter 11 case filed by Lehman Brothers Holdings, Inc.

## FACTUAL BACKGROUND

5. The property that is the subject of this foreclosure action is known as 60 South 31st Street, Wyandanch, New York, and is identified on the Suffolk County Tax Map as Lot nos. 0100-054.00-02.00-016.000 and 0100-054.00-02.00-017.000 (hereinafter, the "Property").

6. On or about August 26, 2005, Juan Silva ("Borrower") executed and delivered to BNC Mortgage, LLC (hereinafter, "BNC" or "Debtor") a promissory note (the "Note") a copy of which is annexed hereto as Exhibit A, in the amount of One Hundred Ninety-Six Thousand Dollars ($196,000.00).

7. To secure repayment of the sums due under the Note, Borrower executed and delivered to Debtor a mortgage dated August 26, 2005 (the "Mortgage"), a copy of which his annexed hereto as Exhibit B.

8.    The Mortgage was subsequently assigned from Debtor to the Movant by Assignment of Mortgage, a copy of which is annexed as Exhibit C.

9.    On or about October 1, 2006, the Borrower fell into default on the Note.

10.    A review of the title report for the Property shows that the Debtor may have acquired a lien or interest in the Property that at all times was junior and subordinate to the Mortgage. The portion of the title report showing the subordinate mortgage by Borrower to the Debtor is annexed as Exhibit D.

11.    On or about January 18, 2007, the Movant commenced a foreclosure action in Supreme Court, Suffolk County in which, among other forms of relief, Movant sought to enforce its security interest in the Property. A copy of the foreclosure complaint with proof of service thereof upon the Debtor is annexed as Exhibit E.

12.    Upon information and belief, the Debtor never answered or appeared in the foreclosure action, although it was duly served with all pleadings and other notices required by law to be served upon it.

13.    On or about June 20, 2007, the Supreme Court, Suffolk County issued an Order Appointing Referee to Compute, a copy of which is annexed as Exhibit F.

14.    On or about March 12, 2008, a Judgment of Foreclosure and Sale was entered in the foreclosure action, a copy of which is annexed as Exhibit G, in which the Movant was awarded judgment in the approximate amount of $208,908.34, plus interest and costs.

15.    Thereafter, A Notice of Sale was issued which noticed all parties to the foreclosure action that the Property would be sold at public auction on August 5, 2008 at Babylon Town Hall in Lindenhurst, New York. A copy of the Notice of Sale with proof of service upon the Debtor is annexed as Exhibit H.

16.    Upon information and belief, the Movant was the sole bidder at the foreclosure sale that took place on or about August 5, 2008, and the Property was transferred to the Movant via a Referee's Deed in Foreclosure, a copy of which is annexed as Exhibit I.

## RELIEF REQUESTED AND BASIS FOR RELIEF

17.    Because the Debtor's mortgage as described in ¶ 10 was subordinate to the Mortgage being foreclosed – and further, because title to the Property has been transferred to the Movant after a duly noticed foreclosure sale – the Debtor, BNC Mortgage, LLC, has no equity interest in the Property.

18.    In addition, upon information and belief, the Movant's claims against the Property far exceed the value of the Property, as evidenced by the appraisal annexed hereto as Exhibit J, which estimates that the Property is presently worth approximately One Hundred Thirty Thousand Dollars ($130,000.00).

19.    Because the Debtor's junior mortgage adds no value to the bankruptcy estate, the Property is not necessary for Debtor's reorganization.

20.    Because the Debtor has no equity interest in the Property and the Property is not necessary for an effective reorganization, relief from the automatic stay is appropriate under 11 U.S.C. §§ 362(d)(2).

21.    Moreover, upon information and belief, the value of the Property is substantially less than the amount of the Borrower's indebtedness and the purchase price paid by Movant to acquire title to the Property at the foreclosure sale, and is still decreasing, or not increasing.

22.    Additionally, Movant does not know whether the Borrower is properly maintaining the Property.

23.     The automatic stay is presently preventing Movant from enforcing its security interest and/or realizing any return on its investment in the Property by re-selling the Property into private ownership.

24.     Moreover, after title to the Property was transferred to the Movant at the foreclosure sale, an individual claiming to be an owner and/or a tenant-in-possession of the Property filed a motion to intervene in the foreclosure action, in which he seeks an Order vacating and setting aside the judgment of foreclosure.  Although that motion was fully briefed and submitted in Supreme Court, Suffolk County in or about January 2009, the assigned Justice, Hon. Denise Molia, has stated that, in light of the automatic stay, the court is unable to render a decision on the proposed intervenor's motion.

25.     While the Movant and the proposed intervenor have differing interests with respect to the outcome of the state foreclosure action, they have the same interest in lifting of the automatic stay, which is presently preventing the state court from issuing a decision on the motion to intervene.

26.     Regardless of the whether the motion to intervene in the foreclosure action is ultimately granted or denied, it will not change the fact that that the Debtor has no equity interest in the Property, and that the Movant has invested substantially more money to acquire title to the Property than the Property is presently worth.

27.     For all of the foregoing reasons, Movant's interest in the Property is not adequately protected, and a continued stay of Movant's foreclosure action against the Borrower and the Property is causing and will continue to cause significant prejudice to the Movant.

28.     Therefore, cause also exists to terminate the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

## BANKRUPTCY RULE 4001(a)(3)

29.     Movant believes that this motion will be unopposed or entered upon consensual terms.  A stay of any order granting this motion would, in such instance, be inappropriate.  Therefore, Movant is seeking relief from the stay provisions of Fed. R. Bankr. P. 4001(a)(3).

## NOTICE

30.     Copies of this motion and notice of motion have been served upon (1) the Debtor; (2) counsel for the Debtor; (3) Official Committee of Unsecured Creditors; (4) counsel for Trustees James W. Giddens, Citibank, N.A., and Aron Oliner; (5) the Office of the U.S. Trustee; (6) Claims and Noticing Agent Epiq Bankruptcy Solutions, LLC f/k/a Bankruptcy Services, LLC; and (7) counsel for the proposed intervenor in the state foreclosure action.  In light of the likelihood of a high volume of similar motions being filed in this case and the fact that the parties most likely to seek a position with respect to this motion are receiving notice, Movant believes that limiting notice to these parties is appropriate and requests that the Court consider the merits of this motion accordingly.

31.     A copy of the proposed Order for Relief from the Automatic Stay is annexed as Exhibit K.

**WHEREFORE,** for all of the foregoing reasons, Movant respectfully requests that this honorable Court enter an Order terminating the automatic stay as to the Property, which will allow Movant to exercise its non-bankruptcy rights and remedies against the Property, including but not limited to allowing the Supreme Court, Suffolk County to decide the pending motion to intervene and, ultimately, to bring the foreclosure action to a final conclusion.

Dated: March 12, 2010
     Huntington, New York

                         CAHN & CAHN, LLP
                         *Attorneys for Movant*

                         By: _____
                               Daniel K. Cahn, Esq. (DC9791)
                         22 High Street, Suite 3
                         Huntington, New York 11743
                         (631) 752-1600

# Exhibit A



Loan No: MEL009590

# ADJUSTABLE RATE NOTE
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

August 26, 2005                    Irvine                    California
      [Date]                        [City]                     [State]

        60 S 31ST ST, WYANDANCH, NY  11798
                [Property Address]

## 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $196,000.00               (this amount is called "Principal"), plus interest, to the order of Lender. Lender is BNC MORTGAGE, INC., A DELAWARE CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       7.750 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on October 1, 2005 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at OOMC, Attn: Payment Processing, P.O. Box 44042, Jacksonville, FL. 32231-4042
or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $1,265.84                . This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

NEW YORK ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT

-838N (0210)                    Form 3520 1/01
          VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 4                      Initials: T.S.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **September, 2007**                , and on that day every **6th**        month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month US dollar-denominated deposits in the London market ("LIBOR") based on quotations of major banks, as published in the "Money Rates" section of *The Wall Street Journal*. The most recent index figure available as of the date 45 days before each Change Date occurs is called the"Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six And 200/1000**        percentage points (                **6.200 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than            **10.750 %** or less than    **7.750 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **one**            percentage point(s) (            **1.00 %**) from the rate of interest I have been paying for the preceding **6**        months. My interest rate will never be greater than        **14.750 %**, or less than    **7.750**        %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Form 3520 1/01

⑭MP®-838N (0210)                        Page 2 of 4                        Initials: *J.S.*

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

    **(A) Late Charges for Overdue Payments**

    If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**

    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C) Notice of Default**

    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D) No Waiver By Note Holder**

    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**

    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

-838N (0210)
®

Page 3 of 4

Form 3520 1/01

Initials: _JS_

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Juan Silva_____ (Seal)        _____ (Seal)
JUAN SILVA                    -Borrower                                  -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                  -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                  -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                  -Borrower

[Sign Original Only]

VMP-838N (0210)                    Page 4 of 4                    Form 3520 1/01

ADDENDUM TO NOTE                                      Loan No.: MEL009590
FOR INTEREST ONLY PAYMENT PERIOD
THIS ADDENDUM TO NOTE PROVIDES FOR AN INITIAL PERIOD OF
MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT
MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST.

This Addendum to Note for Interest Only Payment Period is made this    26th  day of
August, 2005 ,         and is incorporated into and shall be deemed to amend and supplement the
Adjustable Rate Note of the same date (the "Note") and any Addenda to the Note given by the undersigned (the
"Borrower") to evidence Borrower's indebtedness to
**BNC MORTGAGE, INC., A DELAWARE CORPORATION**

(the "Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security
Instrument"), of the same date and covering the property described in the Security Instrument and located at:

60 S 31ST ST, WYANDANCH, NY 11798

[Property Address]

**ADDITIONAL COVENANTS:** Unless specifically defined in this Addendum, any capitalized terms shall
have the same meaning as in the Note. Notwithstanding anything to the contrary set forth in the Note, Addenda to
the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

I.        Sections 3 and 4 of the Note are modified to provide for sixty (60) payments of interest only ("Interest Only
Period") at the interest rates determined in accordance with Sections 2 and 4 of the Note.  Sections 3 and 4 of the
Note are modified as follows:

**1. PAYMENTS**
**(A) Time and Place of Payments.**

I will pay interest during the Interest Only Period, and principal and interest thereafter, by making a payment
every month.

I will make my monthly payments on the first day of each month beginning on October 1, 2005.  I will make
these payments every month until I have paid all of the principal and interest and any other charges described below
that I may own under this Note.  Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before principal.  If on September 1, 2035 , I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at OOMC, Attn:Payment Processing, P.O. Box 44042, Jacksonville, FL.
32231-4042, or at a different place if required by the Note Holder.

**(B) Amount of My Interest Only Payments.**

The first twenty-four  ( 24  ) monthly payments will be in the amount of U.S. $ 1,265.84 , which equals one
twelfth 1/12) of the amount of yearly interest due on the principal at the initial rate. These payments are called
"Interest Only Payments."

No payments of principal are due during the Interest Only Period. The Interest Only Payments will not reduce
the principal amount of this Note. Additional payments of principal may be made in accordance with Section 5
of this Note.

**(C) Monthly Payment Changes.**

After the Interest Only Period, changes in my monthly payment will reflect changes in the unpaid principal of
my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the
changed amount of my monthly payment in accordance with Section 4 of this Note.

**2. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A)  Change Dates.**

The interest rate I will pay may change on the first day of  September, 2007 , and on that day every 6th  month
thereafter.  Each date on which my interest rate could change is called a "Change Date."

**(B) The Index.**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of
interbank offered rates for 6-month U.S. Dollar-Denominated deposits in the London market based on quotations of
major banks, as published in the "Money Rates" section of The Wall Street Journal. The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable
information. The Note Holder will give me notice of this choice

**(C) Calculation of Changes.**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Six And 200/1000                                              percentage points ( 6.200      %)
to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the
unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in

Interest Only  Adj. Rate Note Addendum                  Page 1 of 2                              Rev. 102703

substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes.**

The Interest rate I am required to pay at the first Change Date will not be greater than    10.750   % or less than   7.750.     %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 00/100   percentage point(s) ( 1.00  %) from the rate of interest I have been paying for the preceding 6 months.  My interest rate will never be greater than  14.750 % or less than  7.750 % .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**II.**     All other provisions of the Note and any Addenda are unchanged by this Addendum to Note for Interest Only Payments and remain in full force and effect.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider.

_Juan Silva_                           (Seal)          _____          (Seal)
JUAN SILVA

_____          (Seal)          _____          (Seal)

_____          (Seal)          _____          (Seal)

_____          (Seal)          _____          (Seal)

**I understand that for the interest only period I will not be reducing the principal balance (unless I make additional payments of principal, which may be made in accordance with Section 5 of this Note).**

**After sixty (60) payments if I only made my minimum payment, my principal balance will not be reduced.**

_Juan Silva_                           (Seal)          _____          (Seal)
JUAN SILVA

_____          (Seal)          _____          (Seal)

_____          (Seal)          _____          (Seal)

_____          (Seal)          _____          (Seal)

Interest Only Adj. Rate Note Addendum          Page 2  of 2          Rev. 102703

# Exhibit B







## SUFFOLK COUNTY CLERK
### RECORDS OFFICE
### RECORDING PAGE

Type of Instrument: MORTGAGE/MMM      Recorded:      09/26/2005
Number of Pages: 22                   At:            02:35:57 PM
Receipt Number : 05-0100885
MORTGAGE NUMBER: CW071471             LIBER:         M00021137
                                      PAGE:          015

District:          Section:           Block:            Lot:
0100               054.00             02.00             016.000

EXAMINED AND CHARGED AS FOLLOWS

Mortgage Amount:      $196,000.00

Received the Following Fees For Above Instrument

|              |          | Exempt |              |            | Exempt |
|--------------|----------|--------|--------------|------------|--------|
| Page/Filing  | $66.00   | NO     | Handling     | $5.00      | NO     |
| COE          | $5.00    | NO     | NYS SRCHG    | $15.00     | NO     |
| Affidavit    | $0.00    | NO     | Cert.Copies  | $0.00      | NO     |
| RPT          | $50.00   | NO     | SCTM         | $0.00      | NO     |
| Mort.Basic   | $980.00  | NO     | Mort.Addl    | $558.00    | NO     |
| Mort.SplAddl | $0.00    | NO     | Mort.SplAsst | $490.00    | NO     |
|              |          |        | Fees Paid    | $2,169.00  |        |

MORTGAGE NUMBER: CW071471

THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

Edward P.Romaine
County Clerk, Suffolk County

| 1 | 2 |

Number of pages _22_

TORRENS

Serial # _____

Certificate # _____

Prior Ctf. # _____

RECORDED
2005 Sep 26 02:35:57 PM
Edward P. Romaine
CLERK OF
SUFFOLK COUNTY
L M00021137
P 015
CW071471

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

| 3 | | FEES |
|---|---|---|

Page / Filing Fee _66_

Handling _5. 00_

TP-584 _____

Notation _____

EA-52 17 (County) _____    Sub Total _____

EA-5217 (State) _____

R.P.T.S.A. _50_

Comm. of Ed. _5. 00_

Affidavit _____

Certified Copy _____

NYS Surcharge _15. 00_    Sub Total _____

Other _____    Grand Total _141_

Mortgage Amt. _196,000  00_

1. Basic Tax _____
2. Additional Tax _____
Sub Total _____
Spec./Assit. _____
   or
Spec. /Add. _____
TOT. MTG. TAX _2028_

Dual Town ____ Dual County ____
Held for Appointment _____
Transfer Tax _____
Mansion Tax _____

The property covered by this mortgage is or will be improved by a one or two family dwelling only.

YES _✓_ or NO _____

If NO, see appropriate tax clause on page # ____ of this instrument.

| 4 | Dist. | Section | Block | Lot |
|---|---|---|---|---|

Real Property Tax Service Agency Verification

_0100_

0100  05400  0200  016000
0100  05400  0200  017000

P T S
R DTY A
26-SEP-05

| 5 | Community Preservation Fund |
|---|---|

Consideration Amount $ _____

CPF Tax Due    $ _____

Improved _✓_

Vacant Land _____

TD _____

TD _____

TD _____

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address |
|---|---|

RECORD & RETURN TO:

BNC Mortgage, Inc.
1901 Main St.
Irvine, CA 92614

| 7 | Title Company Information |
|---|---|

Co. Name _Speedy Abstract_

Title # _SP1091S_

| 8 | **Suffolk County Recording & Endorsement Page** |
|---|---|

This page forms part of the attached _Mortgage_ made by:
(SPECIFY TYPE OF INSTRUMENT)

_Juan Silva_

The premises herein is situated in SUFFOLK COUNTY, NEW YORK.

_BNC Mortgage, Inc._  TO

In the Township of _Babylon_
In the VILLAGE
or HAMLET of _Wyandauch_

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

# IMPORTANT NOTICE

If the document you've just recorded is your **SATISFACTION OF MORTGAGE**, please be aware of the following:

If a portion of your monthly mortgage payment included your property taxes, *you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax statements.*

Local property taxes are payable twice a year: on or before January 10th and on or before May 31st. Failure to make payments in a timely fashion could result in a penalty.

**Please contact your local Town Tax Receiver with any questions regarding property tax payment.**

Babylon Town Receiver of Taxes
200 East Sunrise Highway
North Lindenhurst, N.Y. 11757
(631) 957-3004

Brookhaven Town Receiver of Taxes
250 East Main Street
Port Jefferson, N.Y. 11777
(631) 473-0236

East Hampton Town Receiver of Taxes
300 Pantigo Place
East Hampton, N.Y. 11937
(631) 324-2770

Huntington Town Receiver of Taxes
100 Main Street
Huntington, N.Y. 11743
(631) 351-3217

Islip Town Receiver of Taxes
40 Nassau Avenue
Islip, N.Y. 11751
(631) 224-5580

Riverhead Town Receiver of Taxes
200 Howell Avenue
Riverhead, N.Y. 11901
(631) 727-3200

Shelter Island Town Receiver of Taxes
Shelter Island Town Hall
Shelter Island, N.Y. 11964
(631) 749-3338

Smithtown Town Receiver of Taxes
99 West Main Street
Smithtown, N.Y. 11787
(631) 360-7610

Southampton Town Receiver of Taxes
116 Hampton Road
Southampton, N.Y. 11968
(631) 283-6514

Southold Town Receiver of Taxes
53095 Main Street
Southold, N.Y. 11971
(631) 765-1803

Sincerely,

Edward P. Romaine
Edward P. Romaine
Suffolk County Clerk

dw
2/99

12-0104:: 07/02cg

Return To: BNC MORTGAGE,
INC.
1901 MAIN ST
IRVINE, CA 92614

Prepared By:

—————————|Space Above This Line For Recording Data]—————————

# MORTGAGE MIN 100122200001970117



Loan No.: MEL009590

**WORDS USED OFTEN IN THIS DOCUMENT**
**(A) "Security Instrument."** This document, which is dated August 26, 2005
together with all Riders to this document, will be called the "Security Instrument."
**(B) "Borrower."** JUAN  SILVA

whose address is 30 HAMILTON PLACE, HEMPSTEAD, NY 11550

sometimes will be called "Borrower" and sometimes simply "I" or "me."
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.    G4318 mille Rd
**(D) "Lender."** BNC MORTGAGE, INC., A DELAWARE CORPORATION

will be called "Lender." Lender is a corporation or association which exists under the laws of
Delaware                                        . Lender's address is 1901 MAIN ST, IRVINE, CA
92614

**NEW YORK** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3033 1/01

-6A(NY) (0005) 06
Page 1 of 17                    Initials J.S.
VMP MORTGAGE FORMS - (800)521-7291

(E) "Note." The note signed by Borrower and dated **August 26, 2005**                    . will be called the "Note." The Note shows that I owe Lender **one hundred ninety-six thousand and 00/100**

Dollars (U.S. **$196,000.00**                    )

plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by **September 1, 2035**.

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider      [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider              [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider                   [ ] Biweekly Payment Rider         [ ] Other(s) [specify]

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Initials *J.S.*

-6A(NY) (0005) 06                    Page 2 of 17                    Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 60  S  31ST  ST

[Street]

WYANDANCH                         [City, Town or Village], New York 11798        [Zip Code].
This Property is in SUFFOLK                                County. It has the following legal description: LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HERETO AS EXHIBIT A.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

-6A(NY) (0005) 06                    Page 4 of 17                Initials: *J.S.*                Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

Initials: _J.S._

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

-6A(NY) (0005) 06                                 Page 8 of 17                  Initials _J.S._              Form 3033 1/01

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information). Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance



coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance. I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

Initials _J. S._

SA(NY) (0005) 06                    Page 10 of 17                    Form 3033 1/01

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another**

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages I through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _Juan Silva_____ (Seal)
                                          JUAN SILVA                -Borrower

_____          _____ (Seal)
                                                                   -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                  -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                  -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                  -Borrower

STATE OF NEW YORK,                                    County ss: Suffolk

On the **26th** day of **August, 2005**         before me, the undersigned, a notary
public in and for said state, personally appeared JUAN SILVA

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

JACQUELINE FOX
Notary Public, State of New York
No. 01FO4764360
Qualified in Nassau County
Tax Map Information:                          Commission Expires July 31, 20 06

5A(NY) (0005) 08            Page 17 of 17            Initials _Z.S._        Form 3033 1/01

Loan No.: MEL009590

### ADJUSTABLE RATE RIDER
### WITH INTEREST ONLY PAYMENT PERIOD

This Adjustable Rate Rider with Interest Only Payment Period is made this
26th day of August, 2005 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument"), of the same date given by the undersigned (the "Borrower") to secure Adjustable
Rate Note ("Note") to
BNC MORTGAGE, INC., A DELAWARE CORPORATION
, (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

60 S 31ST ST, WYANDANCH, NY 11798

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND
THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST
RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST
PAY.

THE NOTE AND ITS ADDENDA CONTAIN PROVISIONS ALLOWING FOR AN INITIAL PERIOD OF
MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT MONTHLY PAYMENTS OF
BOTH PRINCIPAL AND INTEREST.

INTEREST ONLY PERIOD.

The Note and its Addenda provide for an initial period of monthly payments of interest only, in the amount
of $ 1,265.84 , as follows:

INTEREST RATE AND MONTHLY PAYMENT CHANGES.

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

1. Sections 3 and 4 of the Note as modified by its Addenda provide for sixty (60) payments of interest only
("Interest Only Period") at the interest rates determined in accordance with Sections 2 and 4 of the Note.

1. PAYMENTS
(A) Time and Place of Payments.

I will pay interest during the Interest Only Period, and principal and interest thereafter, by making a
payment every month.

I will make my monthly payments on the first day of each month beginning on October 1, 2005
. I will make these payments every month until I have paid all of the principal and interest and any other charges
described below that I may own under this Note. Each monthly payment will be applied as of its scheduled due
date and will be applied to interest before principal. If on      September 1, 2035     , I still owe amounts
under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at   OOMC, Attn: Payment Processing, P.O. Box 44042,
Jacksonville, FL. 32231-4042                      , or at a different place if required by the Note Holder.

Interest Only Adj. Rate Note Rider                                          Rev. 102703
Page 1 of 3

Borrower Initials J.S.____ ____ ____ ____ ____

**(B) Amount of My Interest Only Payments.**

The first twenty-four ( 24 ) monthly payments will be in the amount of U.S. $ 1,265.84 , which equals one twelfth 1/12) of the amount of yearly interest due on the principal at the initial rate. These payments are called "Interest Only Payments."

No payments of principal are due during the Interest Only Period. The Interest Only Payments will not reduce the principal amount of this Note. Additional payments of principal may be made in accordance with Section 5 of the Note.

**(C) Monthly Payment Changes.**

After the Interest Only Period, changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**2. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates.**

The interest rate I will pay may change on the first day of    September, 2007        , and on that day every  6th  month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index.**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6-month U.S. Dollar-Denominated deposits in the London market based on quotations of major banks, as published in the "Money Rates" section of The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes.**

Before each Change Date, the Note Holder will calculate my new interest rate by adding    percentage points
**Six And 200/1000**
( 6.200    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes.**

The interest rate I am required to pay at the first Change Date will not be greater than  10.750     % or less than   7.750   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  ONE AND 00/100   percentage point(s) ( 1.00  %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than  14.750 %  or less than  7.750 % .

**(E) Effective Date of Changes.**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

---

Interest  Only  Adj.  Rate  Note  Rider                                    Rev.  102703

Page 2 of 3

Borrower Initials *T.S.* ____  ____  ____  ____  ____

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

All other provisions of the Note and any Addenda are unchanged by this Addendum to Note for Interest Only Payments and remain in full force and effect.

II.      By signing below, Borrower accepts and agrees to the terms and conditions contained in the Interest Only Payment Period Addendum.

_Juan Silva_____ (Seal)          _____ (Seal)
JUAN SILVA

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)

I understand that for the interest only period I will not be reducing the principal balance (unless I make additional payments of principal, which may be made in accordance with Section 5 of this Note).

After sixty (60) payments if I only made my minimum payment, my principal balance will not be reduced.

_Juan Silva_____ (Seal)          _____ (Seal)
JUAN SILVA

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)

Interest Only Adj. Rate Note Rider                                     Rev. 102703
                                Page 3 of 3

Borrower Initials  _J.S.___ ___ ___ ___ ___

**Schedule A**

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon, situate, lying and being in the Town of Babylon, County of Suffolk and State of New York, known and designated as Lots 21, 22, 23, 24 and 25 in Block 48 on a certain map entitled "Map of Wyandanch Springs Park" filed in the Suffolk County Clerk's Office on June 22, 1892 as Map No. 44, said lots when taken together being more particularly bounded and described according to said map as follows:

BEGINNING at a point on the westerly side of 31st Street, distant 275 feet northerly from the corner formed by the intersection of the westerly side of 31st Street and the northerly side of Brooklyn Avenue, said point of beginning being that point where the westerly side of 31st Street is intersected by the division line between Lots 25 and 26;

THENCE along said division line south 81 degrees 16 minutes west 100 feet to a stake at the southwest corner of Lot 25;

THENCE along the westerly side of Lots 25, 24, 23, 22 and 21 north 8 degrees 44 minutes West 125 feet to a stake at the northwesterly corner of Lot 21:

THENCE along division line between Lots 20 and 21 north 81 degrees 16 minutes East 100 feet tot eh westerly side of 31st Street;

THENCE along the westerly side of 31st Street south 8 degrees 44 minutes East 125 feet to the point or place of BEGINNING.

The premises herein are improved by a one or two family residence only

# Exhibit C







## SUFFOLK COUNTY CLERK
## RECORDS OFFICE
## RECORDING PAGE

Type of Instrument: ASSIGNMENT OF MORTGAGE/MOP     Recorded:    03/26/2007
Number of Pages: 4                                At:          09:40:45 AM
Receipt Number : 07-0028867

LIBER:    M00021502
PAGE:     035

District:        Section:        Block:          Lot:
0100             054.00          02.00           016.000

EXAMINED AND CHARGED AS FOLLOWS

Received the Following Fees For Above Instrument

|              |         | Exempt |              |         | Exempt |
|--------------|---------|--------|--------------|---------|--------|
| Page/Filing  | $12.00  | NO     | Handling     | $5.00   | NO     |
| COE          | $5.00   | NO     | NYS SRCHG    | $15.00  | NO     |
| Notation     | $0.50   | NO     | Cert.Copies  | $0.00   | NO     |
| RPT          | $50.00  | NO     | SCTM         | $0.00   | NO     |
|              |         |        | Fees Paid    | $87.50  |        |

THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

Judith A. Pascale
County Clerk, Suffolk County

| 1 | 2 |

**Number of pages** _____

TORRENS

Serial # _____

Certificate # _____

Prior Ctf. # _____

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |

RECORDED
2007 Mar 26 09:40:45 AM
Judith A. Pascale
CLERK OF
SUFFOLK COUNTY
L M00021502
P 035

| 3 | FEES |

| Page / Filing Fee | 10 |
| Handling | 5. 00 |
| TP-584 | |
| Notation | |
| EA-52 17 (County) | |
| EA-5217 (State) | |
| R.P.T.S.A. | 50 00 |
| Comm. of Ed. | 5. 00 |
| Affidavit | |
| Certified Copy | |
| NYS Surcharge | 15. 00 |
| Other | |

**This document will be public record. Please remove all Social Security Numbers prior to recording.**

Sub Total _____

Sub Total _____

Grand Total  8750 00

| Mortgage Amt. | _____ |
| 1. Basic Tax | _____ |
| 2. Additional Tax | _____ |
| Sub Total | _____ |
| Spec./Assit. | |
| or | |
| Spec. /Add. | |
| TOT. MTG. TAX | _____ |
| Dual Town ___ Dual County ___ |
| Held for Appointment _____ |
| Transfer Tax | _____ |
| Mansion Tax | _____ |

The property covered by this mortgage is or will be improved by a one or two family dwelling only.

YES _____ or NO _____

IF NO. see appropriate tax clause on page # _____ of this instrument.

| 4 | Dist 0100 | Section 054.00 | Block 02.00 | Lot 016.000 017.000 | 5 | **Community Preservation Fund** |

Real Property Tax Service Agency Verification   3-26-07  OP

Consideration Amount $ _____

CPF Tax Due    $ _____

| Improved | _____ |
| Vacant Land | _____ |
| TD | _____ |
| TD | _____ |
| TD | _____ |

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address |

**RECORD & RETURN TO:**

Threshold Land Inc
584 Main Street
Islip NY 11751

| 7 | Title Company Information |
| Co. Name | Threshold Land Inc |
| Title # | 07-001 07Y |

| 8 | **Suffolk County Recording & Endorsement Page** |

This page forms part of the attached  Assignment  made by:
(SPECIFY TYPE OF INSTRUMENT)

Mortgage Electronic Registration Systems Inc As Nominee for DNC Mortgage, Inc

U.S. BANK National Association   TO

The premises herein is situated in SUFFOLK COUNTY, NEW YORK.

In the Township of  Babylon

In the VILLAGE _____

or HAMLET of  Wyandanch

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

ORIGINAL

| | |
|---|---|
| **RR&A #** | 07-000978 |
| **COUNTY:** | SUFFOLK |
| **DISTRICT:** | 0100 |
| **SECTION:** | 054.00 |
| **BLOCK:** | 02.00 |
| **LOT:** | 016.000 and 017.000 |
| **LOAN:** | 21606637 |

Form 8021*-Assignment of Mortgage without Covenant-
Individual or Corporation (Single Sheet)

### CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-
### THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

KNOW THAT

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BNC MORTGAGE, INC.** a corporation organized and existing under the laws of the United States of America whose principal place of business is **1901 Main Street Irvine, CA 92614**
assignor,

in consideration of TEN AND 00/100 DOLLARS ($10.00) and other good and valuable consideration, paid by

**U.S. BANK NATIONAL ASSOCIATION, TRUSTEE FOR LEHMAN BROTHERS SECURITIZATION NAME STRUCTURED ASSET INVESTMENT LOAN TRUST** a corporation whose principal place of business is c/o **10790 Rancho Bernardo Road San Diego, CA 92127**
assignee,

hereby assigns unto the assignee, a certain Mortgage dated August 26, 2005, made by JUAN SILVA to Mortgage Electronic Registration Systems, Inc as Nominee for ~~WMC~~ BNC Mortgage, Inc. in the principal sum of $196,000.00 and recorded on September 26, 2005 in Liber/Reel 21137 of Mortgages, Page 15 in the Office of the Clerk of the County of Suffolk covering premises known as 60 South 31st Street, Wyandanch, NY 11798.

This assignment is effective on or before December 18, 2007.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

DATED:  JAN 2 6 2007

MORTGAGE               ELECTRONIC
REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR BNC MORTGAGE, INC.

By: _____
    **Kim Blanc**          **Vice President**

STATE OF    CALIFORNIA    )
                          ) SS.
COUNTY OF    SAN DIEGO    )

On the 21 day of Jan, in the year 2007 before me, the undersigned, personally appeared Kim Blanc    Vice President    personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(arc) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his\her\their\ capacity(ies), that by his\her\their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made    such    appearance    before    the    undersigned    in    the    City    of _____ SAN DIEGO _____ State of _____ CALIFORNIA _____

Notary Public

EDILIZA B. LOZANO
COMM. #1648681
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires Mar. 2, 2010

**Assignment of Mortgage**
**Without Covenant**

TITLE NO.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR BNC MORTGAGE, INC.

TO

U.S. BANK NATIONAL ASSOCIATION,
TRUSTEE FOR LEHMAN BROTHERS
SECURITIZATION NAME STRUCTURED
ASSET INVESTMENT LOAN TRUST

DISTRICT: 0100

SECTION: 054.00

BLOCK: 02.00

LOT: 016.000 and 017.000

COUNTY OR TOWN: SUFFOLK
PROPERTY ADDRESS:
60 South 31st Street,
Wyandanch, NY 11798

RECORD AND RETURN TO:

Chase Home Finance., LLC
10790 Rancho Bernardo Road
San Diego, California 92127

## Schedule A

Title Number: 07-001078

ALL THAT CERTAIN PLOT, PIECE, OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being in the Town of Babylon, County of Suffolk and State of New York, known and designated as Lots 21, 22, 23, 24 and 25 in Block 48 on a certain map entitled, "Map of Wyandanch Springs Park" filed in the Suffolk County Clerk's Office on June 22, 1892 as Map Number 44, said lots when taken together being more particularly bounded and described, according to said map as follows:

BEGINNING at a point on the westerly side of 31st Street, distant 275 feet northerly from the corner formed by the intersection of the westerly side of 31st Street and the northerly side of Brooklyn Avenue, said point of beginning being the point where the westerly side of 31st Street is intersected by the division line between Lots 25 and 26;

THENCE along said division line South 81 degrees 16 minutes West, 100 feet to a stake at the southwest corner of Lot 25;

THENCE along the westerly side of Lots 25, 24, 23, 22 and 21 North 8 degrees 44 minutes West, 125 feet to a stake at the northwesterly corner of Lot 21;

THENCE along division line between Lots 20 and 21, North 81 degrees 16 minutes East, 100 feet to the westerly side of 31st Street;

THENCE along the westerly side of 31st Street, South 8 degrees 44 minutes East, 125 feet to the point or place of BEGINNING.

District:    0100    Section:    054.00    Block:    02.00    Lot:    016.000 and
017.000

# Exhibit D

# SCHEDULE B
# MORTGAGE SCHEDULE

RRA Number: 07-000978                                Title Number: 07-001078

Mortgage Number **1 of 2**

Mortgagor: Juan Silva

Mortgagee: MERS, as nominee for BNC Mortgage, Inc.

Amount:          $ 196,000.00
Dated:            08/26/2005
Recorded:         09/26/2005
Liber/Reel:       21137
Page:             15


Mortgage to be foreclosed

**SCHEDULE B**
**MORTGAGE SCHEDULE**

RRA Number: 07-000978                        Title Number: 07-001078

Mortgage Number **2** of **2**

Mortgagor: Juan Silva

Mortgagee: BNC Mortgage, Inc.

Amount:        $ 49,000.00
Dated:         08/26/2005
Recorded:      09/26/2005
Liber/Reel:    21137
Page:          16

Subordinate Mortgage

## SCHEDULE C
## PARTIES DEFENDANT

RRA Number: 07-000978                    Title Number: 07-001078

This certification is made on the assumption that all parties are to be personally served in the proposed action. If any of the persons hereinafter named be dead, their legal representatives and successors in interest should be made parties defendant after the search has been amended. If investigation by application discloses that there are other persons having an interest in the property whose rights are subordinate to the mortgage to be foreclosed, such persons should also be made parties defendant after search has been amended. If any leases, mortgages or other liens recorded prior to the period covered by this search, but which, by reason or subordination clauses contained thereon or otherwise, are in fact subordinate to the lien of the mortgage to be foreclosed, all persons interested in said leases, mortgages or other liens should also be made parties defendant after search has been amended.

If the United States of America, State of New York or City of New York, or any of its agencies, are made parties, that complaint must set forth the reason therefore in detail. (See R.P.A. and P.L. Sec. 202A and 28 U.S.C.A. 2410).

The addresses of the parties herein given, were obtained from the record and are not represented to be the present addresses of the parties.

Consideration should be given to the desirability of naming as defendants the obligor named in the bond or in any extension, assumption or guaranty agreement.

All occupants of the premises herein described should be made parties defendant.

The Company should be requested to continue searches to the date of filing lis pendens

| PARTIES | INTERESTS IN PREMISES |
|---|---|
| John Doe | Possible Tenant in Possession |
| Jane Doe | Possible Tenant in Possession |
| Juan Silva<br>60 South 31st Street<br>Wyandanch, New York 11798 | Fee Owner |
| BNC Mortgage, Inc.<br>1901 Main Street<br>Irvine, California 92614 | Subordinate Mortgagee |