# Exhibit E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
----------------------------------------------------------------------x
U.S. BANK NATIONAL ASSOCIATION, TRUSTEE FOR     Index No.: 07 2490
LEHMAN BROTHERS SECURITIZATION NAME
STRUCTURED ASSET INVESTMENT LOAN TRUST,     D/O/F:

                 Plaintiff,                 **SUMMONS**

         -against-            THE BASIS OF VENUE IS
                                           THAT THE PROPERTY IS
JUAN SILVA; MORTGAGE ELECTRONIC      SITUATED IN SAID
REGISTRATION SYSTEMS, INC. AS NOMINEE AND           COUNTY
MORTGAGEE OF RECORD; BNC MORTGAGE, INC.;
"JOHN DOES" and "JANE DOES", said names being
fictitious, parties intended being possible tenants or occupants
of premises, and corporations, other entities or persons who
claim, or may claim, a lien against the premises,

                 Defendants.
----------------------------------------------------------------------x
TO THE ABOVE NAMED DEFENDANTS:

       YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve
a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice
of Appearance on the Plaintiff's Attorneys within twenty (20) days after the service of this
Summons, exclusive of the day of service, where service is made by delivery upon you
personally within the State, or within thirty (30) days after completion of service where service is
made in any other manner, and in case of your failure to appear or answer, judgment will be
taken against you by default for the relief demanded in the complaint.

       The following notice is intended only for those defendants who are owners of the
premises sought to be foreclosed or who are liable upon the debt for which the mortgage stands
as security.

**YOU ARE HEREBY PUT ON NOTICE THAT WE ARE ATTEMPTING TO COLLECT
A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.**

       The present amount of the debt as of the date of this summons: $209,834.66 consisting of
principal balance of $195,997.96 plus interest of $5,443.03, escrow/impound shortages or credits
of $6,480.00, late charges of $493.67; Broker's Price Opinion, inspection and miscellaneous
charges of $-0-; attorney fee $925.00 and title search $495.00. Because of interest and other
charges that may vary from day to day, the amount due on the day you pay may be greater.
Hence, if you pay the amount shown above, an adjustment may be necessary after we receive the
check, in which event we will inform you.

The name of the creditor to whom the debt is owed: U.S. BANK NATIONAL ASSOCIATION, TRUSTEE FOR LEHMAN BROTHERS SECURITIZATION NAME STRUCTURED ASSET INVESTMENT LOAN TRUST.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt hereof, the debt will be assumed to be valid by the herein debt collector.

If you notify the herein debt collector in writing within thirty (30) days after your receipt hereof that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of any judgment against you representing the debt and a copy of such verification or judgment will be mailed to you by the herein debt collector.

Upon your written request within said thirty day period, the herein debt collector will provide you with the name and address of the original creditor if different from the current creditor

Note: Your time to respond to the summons and complaint differs from your time to dispute the validity of the debt or to request the name and address of the original creditor. Although you have as few as 20 days to respond to the summons and complaint, depending on the manner of service, you still have 30 days from receipt of this summons to dispute the validity of the debt and to request the name and address of the original creditor.

TO THE DEFENDANTS, except JUAN SILVA: The Plaintiff makes no personal claim against you in this action.

TO THE DEFENDANTS: JUAN SILVA:  If you have obtained an order of discharge from the Bankruptcy court, which includes this debt, and you have not reaffirmed your liability for this debt, this law firm is not alleging that you have any personal liability for this debt and does not seek a money judgment against you. Even if a discharge has been obtained, this lawsuit to foreclose the mortgage will continue and we will seek a judgment authorizing the sale of the mortgaged premises.

Dated: January 18, 2007
      Fishkill, New York

                                        Daniel Wade, Esq.
                                        **ROSICKI, ROSICKI & ASSOCIATES, P.C.**
                                        Attorneys for Plaintiff
                                        2 Summit Court, Suite 301
                                        Fishkill, NY 12524
                                        Phone: (845) 897-1600

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
--------------------------------------------------------------------------------X

U.S. BANK NATIONAL ASSOCIATION, TRUSTEE FOR
LEHMAN BROTHERS SECURITIZATION NAME
STRUCTURED ASSET INVESTMENT LOAN TRUST,

Index No.:

D/O/F:

                                        Plaintiff,                    **VERIFIED COMPLAINT**

                        -against-

JUAN      SILVA;      MORTGAGE      ELECTRONIC
REGISTRATION SYSTEMS, INC. AS NOMINEE AND
MORTGAGEE OF RECORD; BNC MORTGAGE, INC.;
"JOHN DOES" and "JANE DOES", said names being
fictitious, parties intended being possible tenants or occupants
of premises, and corporations, other entities or persons who
claim, or may claim, a lien against the premises,

                                        Defendants.
--------------------------------------------------------------------------------X

        Plaintiff, by its attorney, ROSICKI, ROSICKI & ASSOCIATES, P.C., complaining of
the Defendant(s) alleges, upon information and belief as follows:

        1.      At all times hereinafter mentioned, plaintiff U.S. BANK NATIONAL
ASSOCIATION, TRUSTEE FOR LEHMAN BROTHERS SECURITIZATION NAME
STRUCTURED ASSET INVESTMENT LOAN TRUST was and still is duly organized and
existing under the laws of the State of California.

        2.      At all times hereinafter mentioned, the defendants were, and still are, residents,
corporations and/or bodies politics, duly authorized to reside and/or exist in and under the laws
of New York State.

        3.      On or about August 26, 2005, JUAN SILVA executed and delivered to BNC
Mortgage, Inc., a certain note bearing date that day, whereby JUAN SILVA covenanted and
agreed to pay the sum of $196,000.00, which sum, with interest on the unpaid balance thereof, to
be computed from the date of said note, at a rate variable in accordance with the aforesaid
instrument, with the initial rate being 7.750 percent per annum, or such other adjusted rate as
provided for in said agreement, by interest only payments of $1,265.84 on October 1, 2005 and
thereafter in payments of $1,265.84 on the like date of each subsequent month subject to change
in accordance with changes in interest rate, until said note is fully paid, except that the final
payment of principal and interest remaining due, if not sooner paid, shall become due and
payable on September 1, 2035.

        4.      As collateral security for the payment of said indebtedness, the aforesaid
defendant(s) JUAN SILVA, also executed, acknowledged and delivered to BNC Mortgage,

Inc., a mortgage dated August 26, 2005 and recorded in the County of Suffolk on September 26, 2005 in Liber/Reel 21137 of Mortgages, at page 15. The mortgage tax was duly paid. The aforesaid instruments were assigned to Plaintiff by assignments(s). Plaintiff is still the owner and holder of the aforementioned instrument(s).

Said mortgaged premises being known as and by street address:

60 South 31st Street, Wyandanch, NY 11798, bearing tax map designation:

Dist:  0100  Section:  054.00 Block:  02.00 Lot(s):  016.000 and 017.000

which premises are more fully described in Schedule "A," annexed hereto and made a part hereof.

5.    Said premises are subject to covenants, restrictions, easements of record, prior mortgages and liens, and amendments thereto, if any; to any state of facts an accurate survey may show; railroad consents and sewer agreements, and to utility agreements, municipal and governmental zoning, rules, regulations and ordinances, if any.

6.    The total monthly payment due as of default date to plaintiff is $1,757.49.

7.    That the Mortgagors, their successors, assigns and/or transferees, have failed to comply with the terms and conditions of said above named instrument[s] by failing or omitting to pay the installment which became due and payable as of October 1, 2006 and also by failing or omitting to pay the installment which became due and payable each and every month thereafter, to the date hereof, although duly demanded.

8.    That the terms of the above described instruments provide: (1) that the whole of said principal sum and interest shall become due at the option of the Mortgagee after default in the payment of any installment of principal or of interest; (2) that upon any default the Mortgagor will pay to the Mortgagee any sums paid for taxes, charges, assessments, and insurance premiums upon said mortgaged premises; (3) that in case of sale under foreclosure, the premises may be sold in one parcel.

9.    Pursuant to the terms of said instrument[s] notice of default has been duly given to the defendants if required, and the period to cure, if any, has elapsed and by reason thereof, Plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal.

10.    That the balance of principal due upon said note and mortgage as of the date of said default and as of the time of this Complaint is $195,997.96 plus interest from September 1, 2006.

11.    That in order to protect its security, plaintiff may be compelled during the pendency of this action to make repairs to, board, secure, protect and maintain the premises, to pay taxes, assessments, water rates, sewer rentals, insurance premiums, mortgage insurance

premiums, if there be any, and other charges affecting the premises, and the plaintiff requests that any sum so paid be added to the sum otherwise due, with interest as provided in the aforesaid instruments, and be deemed secured by said instrument[s] and adjudged a valid lien on the premises hereinabove described.

12.    That the plaintiff requests that in the event this action proceeds to Judgment of Foreclosure and Sale, said premises be sold subject to covenants, restrictions and easements, prior mortgages and liens, and amendments, if any, of record; any state of facts an accurate survey may show; restrictions, regulations, ordinances and zoning ordinances of any municipal or governmental authority having jurisdiction thereof; and municipal, departmental and other governmental violations, if any, affecting the premises; and real estate taxes, sewer rents, water charges, if any, open of record.

13.    That no other action has been commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument[s].

14.    That the defendants all have or claim to have some interest in or lien[s] upon the said mortgaged premises, or some part thereof, which interest or lien[s], if any, has [have] accrued subsequently to the lien[s] of the said mortgage[s] or was in express terms or by law made subject thereto, or has [have] been duly subordinated thereunto.

15.    That the defendants "JOHN DOES" and "JANE DOES" may be tenants or may be in possession of the aforementioned premises, or may be corporations, other entities or persons who claim, or may claim, a lien against the premises.

16.    That the basis for naming any political subdivision, governmental agency or similar body, or the holder of a security interest in personal property, if any, is set forth as Exhibit "B".

WHEREFORE, plaintiff demands judgment that the defendants and all persons claiming under them subsequent to the filing of the Notice of Pendency of this action in the County of Suffolk may be forever barred and foreclosed from all right, title, claim, lien and equity of redemption in said mortgaged premises, and each and every part thereof; except the right of the United States of America and its political subdivision, if it or they be a party to this action, to redeem as provided for in the applicable laws; that the said premises may be decreed to be sold according to law; that the amount of principal due the plaintiff on said note and mortgage may be adjudged in the sum of $195,997.96 plus interest from September 1, 2006, and that from the money arising from the sale, plaintiff be paid the amount of $195,997.96 principal due it on said note and mortgage with interest and late charges that may be due and owing to the time of such payment plus the expenses of sale and the costs and expenses of this action, together with any sum which may be paid by the plaintiff for repairs to, boarding, securing, protecting and maintaining the premises, taxes, charges, assessments and insurance premiums upon said mortgaged premises, with appropriate interest thereon so far as such moneys properly applicable

thereto will pay the same; that the defendants JUAN SILVA be adjudged to pay any deficiency which may remain; that a Receiver, upon plaintiff's application therefore, be forthwith appointed for said mortgaged premises for the benefit of the plaintiff, with all powers of receivers in such actions, and that the plaintiff have such other and further relief as may be just and proper in the premises, together with attorney's fees, costs and disbursements of this action.

Dated: January 18, 2007
       Fishkill, New York

Daniel Wade, Esq.
**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
2 Summit Court, Suite 301
Fishkill, NY 12524
(845) 897-1600

## Schedule A

Title Number: 07-001078

_____

ALL THAT CERTAIN PLOT, PIECE, OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being in the Town of Babylon, County of Suffolk and State of New York, known and designated as Lots 21, 22, 23, 24 and 25 in Block 48 on a certain map entitled, "Map of Wyandanch Springs Park" filed in the Suffolk County Clerk's Office on June 22, 1892 as Map Number 44, said lots when taken together being more particularly bounded and described, according to said map as follows:

BEGINNING at a point on the westerly side of 31st Street, distant 275 feet northerly from the corner formed by the intersection of the westerly side of 31st Street and the northerly side of Brooklyn Avenue, said point of beginning being the point where the westerly side of 31st Street is intersected by the division line between Lots 25 and 26;

THENCE along said division line South 81 degrees 16 minutes West, 100 feet to a stake at the southwest corner of Lot 25;

THENCE along the westerly side of Lots 25, 24, 23, 22 and 21 North 8 degrees 44 minutes West, 125 feet to a stake at the northwesterly corner of Lot 21;

THENCE along division line between Lots 20 and 21, North 81 degrees 16 minutes East, 100 feet to the westerly side of 31st Street;

THENCE along the westerly side of 31st Street, South 8 degrees 44 minutes East, 125 feet to the point or place of BEGINNING.

District:    0100    Section:    054.00    Block:    02.00    Lot:    016.000 and
                                                                         017.000

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF DUTCHESS       )

     Daniel Wade, Esq., the undersigned, an attorney duly admitted to practice law before the Courts of the State of New York, affirms under the penalty of perjury;

     That (s)he is an associate of ROSICKI, ROSICKI & ASSOCIATES, P.C., attorney of record for plaintiff in the above entitled action; that (s)he has read the foregoing Summons and Complaint and knows the contents thereof; that the same is true to affiant's knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters (s)he believes it to be true.

     The reason that this verification is made by the undersigned and not by plaintiff is because plaintiff maintains its principal place of business outside Dutchess County; that being the County in which your affiant maintains an office for the practice of law.

     The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are based upon the records of plaintiff in deponent's possession.

Dated: January 18, 2007
Fishkill, New York

                             Daniel Wade, Esq.

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-----------------------------------------------------------------------
U.S. BANK NATIONAL ASSOCIATION, TRUSTEE FOR
LEHMAN BROTHERS SECURITIZATION NAME
STRUCTURED ASSET INVESTMENT LOAN TRUST,

                                        Plaintiff,

        -against-


JUAN SILVA, et al.,

                                        Defendants.
-----------------------------------------------------------------------


**SUMMONS AND VERIFIED COMPLAINT**


**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
2 Summit Court, Suite 301
Fishkill, NY 12524
(845) 897-1600
(845) 897-2648
RR&A #: 07-000978

ENTERPRISE PROCESS SERVICE
584 MAIN STREET
ISLIP, NY 11751
631-224-1334

07 JAN 22 PH12:01

584 Main Street, Islip  NY 11751                    Rosicki, Rosicki & Associates, PC - Chase San Diego

SUPREME Court Of The State of New York

County of SUFFOLK                                        Index No. 2490/07

| U.S. BANK NATIONAL, ET AL | | Affidavit |
| | PLAINTIFF(S) | of |
| AGAINST | | Service |
| JUAN SILVA, ET AL | | |
| | DEFENDANT(S) | |

STATE OF NEW YORK, COUNTY OF SUFFOLK            SS.:

Richard Schultz being duly sworn, deposes and says: that deponent is not a party to this action, is over 18 years of age and resides in the STATE OF NEW YORK.

That on 01/26/2007 at 2:35PM at 510 BROADHOLLOW ROAD, SUITE 101, MELVILLE, NY 11747 deponent served the within Summons and Verified Complaint bearing INDEX# 2490/07 and a date of filing of 01/22/2007 upon **BNC MORTGAGE, INC.** defendant therein named

**CORPORATION**        a Domestic Corp, by delivering thereat a true copy of each to JENNIFER SCOTTO
[X]            personally; deponent knew said Domestic Corp so served to be the Domestic Corp
            described as the name defendant and knew said individual to be the ACCOUNT
            MANAGER thereof an authorized person to accept service of process

**DESCRIPTION**        Deponent describes the individual served to the best of deponent's ability at the time and circumstances of
            service as follows:

| Sex M|F | Skin Color | Hair Color | Age (Approx) | Height (Approx) | Weight(Approx) |
|---|---|---|---|---|---|
| FEMALE | WHITE | BROWN | 26 | 5'7 | 115 |

Other Identifying features:

SWORN TO BEFORE ME ON 1/30/07.

Richard Schultz,
PROCESS SERVER LIC #
Our Reference Number: 07-000978

FILED

JAN 31 2007

Judith A. Pascale
CLERK OF SUFFOLK COUNTY

# Exhibit F

2q. 001

#1683

Ex-Parte

ORIGINAL

At an IAS Term, Part    , of the
Supreme Court of the State of
New York, held in and for the
County of Suffolk, at the
Courthouse located at 235
Griffing Avenue, Riverhead, New
York 11901 on the 20th day of
, 2007.

PRESENT:

Hon.        DENISE F. MOLIA
      Justice

----------------------------------------------------------x
U.S. BANK NATIONAL ASSOCIATION,
TRUSTEE FOR LEHMAN BROTHERS
SECURITIZATION NAME STRUCTURED
ASSET INVESTMENT LOAN TRUST,
                              Plaintiff,

                  -against-

JUAN SILVA; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS
NOMINEE AND MORTGAGEE OF RECORD;
BNC MORTGAGE, INC.; 'JOHN DOES' and
'JANE DOES,' said names being fictitious,
parties intended being possible tenants or
occupants of premises, and corporations, other
entities or persons who claim, or may claim, a
lien against the premises,

                              Defendants.
----------------------------------------------------------x

Index No.: 2490/07

ORDER APPOINTING
REFEREE TO COMPUTE

MOTION/CROSS/OSC
FEE PAID
Judith A. Pascale
Suffolk County Clerk

MA -        .. 6/17

      Upon reading and filing of the Affirmation of Thomas Frost, Esq., dated March 20,

2007, the affidavit of Joe Lanning, sworn to on January 31, 2007,  setting forth the proceedings

had herein and the facts which entitle the plaintiff to the relief requested and upon the Summons

and Verified Complaint, and Notice of Pendency, filed in the Office of the Clerk of the County

of Suffolk, on January 22, 2007; and it appearing to the satisfaction of this Court from the

aforesaid documents that this action was brought to foreclose a mortgage on real property situate

in the County in which this Court is located; that the entire unpaid balance secured thereby is due

and owing; and proof that all defendants have been duly served; their time to answer having

expired, and all defendants have defaulted or appeared and waived notice of this application; and

it appearing that none of the defendants is an infant, incompetent or absentee; and after due

deliberation,

NOW, on motion of **ROSICKI, ROSICKI & ASSOCIATES, P.C.**, attorney for

Plaintiff, it is

ORDERED, that the motion is hereby granted; and it is further

ORDERED, that this action is referred to *Theresa Ann Mari*

Esq., having an ~~office at~~ *address of: P.o. Box 463, Huntington NY 1174*  to

compute the amount due to Plaintiff, except attorney's fees shall be determined by the Court, and

to report whether the mortgaged premises should be sold in one parcel; and it is further

ORDERED, that the caption be amended by substituting DANA CILLEY in place of the

defendant(s) 'JOHN DOES' and 'JANE DOES,' and by striking therefrom the names of the

remaining 'JOHN DOES' and 'JANE DOES,' such names being fictitious; and all papers and

proceedings heretofore filed herein shall be deemed amended accordingly; and it is further

JSC

**ORDERED**, that the caption as amended shall read as follows:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
------------------------------------------------------------------x
U.S. BANK NATIONAL ASSOCIATION, TRUSTEE
FOR LEHMAN BROTHERS SECURITIZATION
NAME STRUCTURED ASSET INVESTMENT LOAN
TRUST,

                                        Plaintiff,

                    -against-

JUAN    SILVA;   MORTGAGE    ELECTRONIC
REGISTRATION SYSTEMS, INC. AS NOMINEE
AND    MORTGAGEE    OF    RECORD;   BNC
MORTGAGE, INC.; DANA CILLEY,

                                        Defendants.
------------------------------------------------------------------x

        and it is further

**ORDERED** that by accepting this appointment, the referee certifies that she/he is in

compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36) including, but not

limited to Section 36.2(c) ("Disqualification from Appointment") and Section 36.2(d)

("Limitations on Appointments Based on Compensation"); and it is further

**ORDERED**, that on the filing of the Referee's Report and Oath, and the confirmation

thereof, without further notice, Plaintiff have final judgment of foreclosure and sale.

                                        **E N T E R**

**GRANTED**

JUN 2 0 2007
Judith A. Pascale
CLERK OF SUFFOLK COUNTY

                                        J.S.C.

## Schedule A

Title Number: 07-001078

ALL THAT CERTAIN PLOT, PIECE, OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being in the Town of Babylon, County of Suffolk and State of New York, known and designated as Lots 21, 22, 23, 24 and 25 in Block 48 on a certain map entitled, "Map of Wyandanch Springs Park" filed in the Suffolk County Clerk's Office on June 22, 1892 as Map Number 44, said lots when taken together being more particularly bounded and described, according to said map as follows:

BEGINNING at a point on the westerly side of 31st Street, distant 275 feet northerly from the corner formed by the intersection of the westerly side of 31st Street and the northerly side of Brooklyn Avenue, said point of beginning being the point where the westerly side of 31st Street is intersected by the division line between Lots 25 and 26;

THENCE along said division line South 81 degrees 16 minutes West, 100 feet to a stake at the southwest corner of Lot 25;

THENCE along the westerly side of Lots 25, 24, 23, 22 and 21 North 8 degrees 44 minutes West, 125 feet to a stake at the northwesterly corner of Lot 21;

THENCE along division line between Lots 20 and 21, North 81 degrees 16 minutes East, 100 feet to the westerly side of 31st Street;

THENCE along the westerly side of 31st Street, South 8 degrees 44 minutes East, 125 feet to the point or place of BEGINNING.

District:    0100    Section:    054.00    Block:    02.00    Lot:    016.000 and 017.000

# Exhibit G







### SUFFOLK COUNTY CLERK
### RECORDS OFFICE
### RECORDING PAGE

Type of Instrument: JUDGMENT OF FORECLOSUR Recorded: 12-Mar-2008
Index Number: 07 02490                      Sequence Number: 533
Plaintiff(s):
     U.S. BANK NATIONAL ASSOCIATION

Defendant(s):
     SILVA, JUAN; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; ET AL

Tax Map ID(s):

Liber Page(s):
     M00021137      S

### THIS PAGE IS A PART OF THE INSTRUMENT
### THIS IS NOT A BILL

                              Judith A. Pascale
                              County Clerk, Suffolk County

ORIGINAL

Ex-parte

At an ~~IAS~~ Term _____, Part _____ of the
Supreme Court of the State of New
York, held in and for the County of
Suffolk, at the Courthouse thereof
located at One Court Street,
Riverhead, New York 1901, on the
28th day of February, 2008.

Hon. Denise F. Molia
Justice

ENTERED: MAR 12 2008
AT: 1134AM

-------------------------------------------------------------x

U.S. BANK NATIONAL ASSOCIATION, TRUSTEE
FOR LEHMAN BROTHERS SECURITIZATION
NAME STRUCTURED ASSET INVESTMENT
LOAN TRUST,

Index No.:2490/07

                                        Plaintiff,

**JUDGMENT OF
FORECLOSURE AND SALE**

            -against-

Babylon

JUAN SILVA; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS NOMINEE
AND MORTGAGEE OF RECORD; BNC
MORTGAGE, INC.; DANA CILLEY,

                                        Defendants.

Premises Address:
60 South 31st Street
Wyandanch, NY 11798

MOTION/CROSS/OSC
FEE PAID
Judith A. Pascale
Suffolk County Clerk

OCT 16 2007

-------------------------------------------------------------x

Upon the reading of the Affirmation of Daniel B. Wade, Esq., signed on

October 12, 2007, the Summons, Verified Complaint and Notice of Pendency of Action filed

on January 22, 2007, and proof that all defendants have been duly served and the affidavits of

service were duly filed with the Clerk of the Court, and more particularly referred to in the

Affirmation of Regularity of Thomas Frost, signed on March 20, 2007, from which Affirmation

it appears that this is an action to foreclose a mortgage upon real property situate within the

territorial jurisdiction of this Court; that the whole amount thereon, as alleged in the Verified

Complaint, is presently due and owing, with interest thereon, as therein alleged; and upon the

prior Order of this Court appointing a Referee to ascertain and compute the amount due the

plaintiff, and to examine and report whether the mortgaged premises can be sold in one parcel,

by which report, filed simultaneously herewith, the Referee has reported that the sum of

ENTERPRISE PROCESS SERVICE, INC.
152 Islip Avenue, Suite 18
Islip, New York 11751
(631) 224-1334

$208,908.34 is due and owing to plaintiff as of January 31, 2007; and that the mortgaged premises should be sold in one parcel; that the time for each defendant to answer or move with respect to the Complaint has expired; that none of the defendants is an infant, incompetent or absentee, and that all defendants are in default; and the same having regularly come on to be heard before this Court, and after due deliberation;

NOW, on motion of **ROSICKI, ROSICKI & ASSOCIATES, P.C.,** attorneys for plaintiff, it is

**ORDERED, ADJUDGED AND DECREED,** that the motion is granted and the report of the Referee is hereby confirmed; and it is further

**ORDERED, ADJUDGED AND DECREED,** that the mortgaged premises described in the Verified Complaint, as hereinafter described, be sold in one parcel, subject to any real estate taxes, assessments, water rents and sewer rents, unless same are due and payable on the date of sale, or any adjourned date thereof, irrespective of the date upon which same have become or may be a lien upon the said premises; prior mortgages, liens and judgments of record, if any, zoning restrictions and any amendments thereto, according to law, and now in force; subject to the state of facts an accurate survey may show; covenants, restrictions, agreements, reservations and easements of record, if any, and to any and all violations thereof; any and all building and zoning regulations, restrictions and ordinances of the municipality in which said premises are located, and violations, and/or liens of same, including, but not limited to, reapportionment of lot lines, and vault charges, if any; any and all orders or requirements issued by any governmental body having jurisdiction against or affecting said premises and violations of the same; the physical condition of any buildings or structure on the premises as the date of sale hereunder; rights of tenants or occupants in possession, if any; the rights of any defendants pursuant to

CPLR §317, 2003 and 5015, if any; and other conditions as set forth in the terms of sale; any sale

to be held hereunder will be subject to the rights of the United States of America to redeem, if

any; at public auction at _____ Babylon Town Hall
200 E. Sunrise Highway
No. Lindenhurst, NY 11757 _____, by and under the

direction of Theresa A. Mari; that said Referee give public notice of the time and place of said

sale according to law and the practice of this Court in the _____

AMITYVILLE RECORD _____, that the plaintiff or any other party to this action may

become the purchaser at such sale; that in the event the plaintiff shall become the purchaser at

said sale, it shall not be required to make any deposit thereon; that said Referee execute to the

purchaser or purchaser(s) on such sale a deed or deeds of the premises sold; that all deed stamps,

transfer taxes and recording fees, if any, shall be paid by the purchaser; that the Referee on

receiving the proceeds of sale shall forthwith pay therefrom the taxes, assessments, water rates

and sewer rents or environmental liens which are liens on the premises and are due and payable,

as of the date of sale with such interest or penalties which may lawfully have accrued thereon to

the day of payment; that the Referee then deposit the balance of the proceeds of this sale in his

own name as Referee in CHASE BANK, any branch and shall thereafter make the following

payments and his checks drawn for that purpose shall be paid by the said depository, to wit:

**FIRST:**  The Referee shall pay a sum not exceeding $500.00, the amount allowed by

CPLR §8003, to the said Referee as his fee herein;

**SECOND:** The Referee shall pay the expenses of the sale and advertising expenses as

shown on bills presented and certified by the said Referee to be correct.

**THIRD:** The Referee shall pay to plaintiff or his attorney the sum of $208,908.34, being

the amount due as aforesaid, together with interest to the date of the sale directed herein

or to the date of the delivery of the Referee's Deed, whichever is later, or so much thereof as the purchase money will pay of the same.

**FOURTH:** The Referee shall pay the sum of $ 2039 as taxed by the Clerk of the Court and hereby adjudged to the plaintiff for costs and disbursements in this action, with interest thereon from the date hereof, together with such advances as the plaintiff shall have made for mortgage insurance premiums, fire and other casualty insurance, and such other expenses incurred, including but not limited to repairs, maintenance, boarding and securing the premises, and payments on account of prior mortgages, if any, with interest at the contract rate thereon, for the protection of the said premises, or so much thereof as the purchase money of the mortgaged premises will pay the same; together with an additional allowance of $300.00, hereby awarded to plaintiff in addition to the costs and disbursements, with interest thereon from the date hereof; together with the sum of $1,800.00 for Plaintiff's attorney's fees and expenses which sum shall be added to and made a part of the judgment herein; and it is further

**ORDERED, ADJUDGED AND DECREED,** that the Referee at the time of sale shall accept a written bid from the plaintiff or the plaintiff's attorney, just as though plaintiff were physically present to submit said bid, and it is further

**ORDERED, ADJUDGED AND DECREED,** that the referee shall conduct the foreclosure sale only if plaintiff, its successors and/or assigns, or its representative is present at the sale or the referee has received a written bid and Terms of Sale from plaintiff, its successors and/or assigns, or its representative; and it is further

**ORDERED, ADJUDGED AND DECREED,** that in case the plaintiff be the purchaser of said mortgaged premises at said sale, or in the event that the rights of the purchaser, or its

assignee, shall be assigned to and be acquired by the plaintiff, and a valid assignment thereof filed with said Referee, said Referee shall not require the plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the plaintiff a deed or deeds of the premises sold upon the payment to said Referee of the amounts specified above in items marked "FIRST" and "SECOND" and the amounts of the aforesaid taxes, assessments, water rents and sewer rents, and interest or penalties thereon, or in lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts of the proper municipal authorities showing the payment thereof; or an affidavit by plaintiff setting forth that payment has been made; provided however plaintiff shall not be required to pay said taxes, assessments, water rents and sewer rents, unless same are due and payable on the date of sale, or any adjourned date thereof, irrespective of the date upon which same have become or may be a lien upon the said premises; that the balance of the amount bid, after deduction therefrom of the aforesaid amounts paid by the plaintiff for Referee's fees, advertising expenses and taxes, assessments, water rates and sewer rents, shall be allowed to the plaintiff and applied by the Referee upon the amounts due to the plaintiff as specified above in items marked "THIRD" and "FOURTH;" that if, after so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the plaintiff, the plaintiff shall pay to the Referee upon delivery to it of the said Referee's deed, the amount of such surplus; that the Referee on receiving said amounts from the plaintiff shall forthwith pay therefrom said taxes, assessments, water rates, sewer rents, and interest or penalties thereon, unless the same shall have already been paid, the Referee shall then deposit the balance in said depository as hereinabove directed; and it is further

**ORDERED, ADJUDGED AND DECREED,** that the Referee herein designated to sell the premises under foreclosure be and he is hereby directed to ascertain the sums due and owing

to defendant BNC MORTGAGE, INC. as provided for in its mortgage and mortgage note both

dated August 26, 2005 and if there be any surplus monies arising from the foreclosure sale, to

pay the same over to said defendant BNC MORTGAGE, INC. or so much thereof as will pay the

indebtedness due and owing to said defendant BNC MORTGAGE, INC. and in the event there

be any deficiency thereafter said defendant subordinate mortgagee have judgment therefore upon

making appropriate application therefore to this court; and it is further

**ORDERED,** that by accepting this appointment, the referee certifies that she/he is in

compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36) including, but not

limited to Section 36.2(c) ("Disqualification from Appointment") and Section 36.2(d)

("Limitations on Appointments Based on Compensation"); and it is further

**ORDERED, ADJUDGED AND DECREED,** that said Referee take the receipts for the

money so paid out by him, and file it with the Report of Sale; that he deposit the surplus monies,

if any, with the *Suffolk County Treasurer* within five days after the same shall be

received and be ascertainable, to the credit of this action, to be withdrawn only on the Order of

this Court; that the Referee shall make a report of such sale and file it with the Clerk of the
*within 30 days of such sale, pursuant to RPAPL 1355(1)*
County in which this action is pending, ~~with all convenient speed~~; and it is further

JSC

**ORDERED, ADJUDGED AND DECREED,** that if the proceeds of such sale be

insufficient to pay the amount so reported due to the plaintiff with the expenses of the sale,

advances, attorney's fees, interest, costs and allowances, as aforesaid, the Referee shall specify

the amount of such deficiency in his Report of Sale and that the plaintiff recover of the

defendant(s) JUAN SILVA the whole deficiency or so much thereof as the Court may determine

to be just and equitable of the residue of the mortgage debt remaining unsatisfied, after a sale of

the mortgaged premises and the application of the proceeds thereof, provided a motion for a

deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions and Proceedings Law, and the amount thereof determined and awarded by an Order of this Court as provided for in said section; and it is further

**ORDERED, ADJUDGED AND DECREED,** that the purchaser(s) at said sale be let into possession on production of the Referee's deed or deeds; and it is further

**ORDERED, ADJUDGED AND DECREED**, that each and all of the defendants, in this action and all persons by, through or claiming under them or any or either of them, after the filing of the Notice of Pendency of this action, be and they hereby are forever barred and foreclosed of all right, claim, lien, title interest and equity of redemption in said mortgaged premises, and each and every part thereof.

A description of the real property under foreclosure is annexed as Schedule "A."

Said premises being known as and by street address: 60 South 31st Street, Wyandanch, New York and bearing tax map designation: District: 0100 Section: 054.00 Block: 02.00 Lot: 016.000 and 017.000.

~~Dated:~~

GRANTED
FEB 2 8 2008
JUDITH A. PASCALE
Clerk of SUffolk County

E N T E R

_Denise Molia_
J.S.C.

_Judith A. Pascale_

## Schedule A

Title Number: 07-001078    

ALL THAT CERTAIN PLOT, PIECE, OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being in the Town of Babylon, County of Suffolk and State of New York, known and designated as Lots 21, 22, 23, 24 and 25 in Block 48 on a certain map entitled, "Map of Wyandanch Springs Park" filed in the Suffolk County Clerk's Office on June 22, 1892 as Map Number 44, said lots when taken together being more particularly bounded and described, according to said map as follows:

BEGINNING at a point on the westerly side of 31st Street, distant 275 feet northerly from the corner formed by the intersection of the westerly side of 31st Street and the northerly side of Brooklyn Avenue, said point of beginning being the point where the westerly side of 31st Street is intersected by the division line between Lots 25 and 26;

THENCE along said division line South 81 degrees 16 minutes West, 100 feet to a stake at the southwest corner of Lot 25;

THENCE along the westerly side of Lots 25, 24, 23, 22 and 21 North 8 degrees 44 minutes West, 125 feet to a stake at the northwesterly corner of Lot 21;

THENCE along division line between Lots 20 and 21, North 81 degrees 16 minutes East, 100 feet to the westerly side of 31st Street;

THENCE along the westerly side of 31st Street, South 8 degrees 44 minutes East, 125 feet to the point or place of BEGINNING.

District:    0100    Section:    054.00    Block:    02.00    Lot:    016.000 *and*
017.000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
--------------------------------------------------------------x
U.S. BANK NATIONAL ASSOCIATION, TRUSTEE
FOR LEHMAN BROTHERS SECURITIZATION
NAME STRUCTURED ASSET INVESTMENT LOAN
TRUST,

                                        Plaintiff,              Index No.: 2490/07

        -against-
                                                        **COSTS OF PLAINTIFF**

JUAN SILVA, et al.,
                                        Defendants.
--------------------------------------------------------------x

Costs before Note of Issue filed,
CPLR §8201(1)...............................................................$200.00

Additional Allowance by Statute - CPLR §8302(a)(b):

addl.(not exceeding $200)  $200 at 10%...$20.00
addl.(not exceeding $800)  $800 at  5%...$40.00
"  (not exceeding $2000) $2000 at 2%...$40.00
"  (not exceeding $5000) $5000 at 1%...$50.00.............$150.00

Additional Allowance by Statute - CPLR §8302(d)........$50.00

### FEES AND DISBURSEMENTS

Fee for Index Number and Filing Lis Pendens
CPLR 8018(a), 8021(a)(12)............................................$280.00
Paid for searches...........................................................$620.00
Serving copy of summons and complaint
CPLR 80ll(c), 8301(d)....................................................$500.00
Request for Judicial Intervention....................................$95.00
Referee's fee (CPLR 8301(a)(1), 8003(a))......................$50.00
Certified copy of judgment............................................$4.00
Motion fees..................................................................$90.00

                                                --------------
                                                $2,039.00

Taxed at $ _2039—_ this _12_ day of _March_ _,~~2007~~.2008_

                        _____
                        Clerk

Index No. 2490/07



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------x
U.S. BANK NATIONAL ASSOCIATION, TRUSTEE
FOR LEHMAN BROTHERS SECURITIZATION
NAME STRUCTURED ASSET INVESTMENT
LOAN TRUST,

                                        Plaintiff,

        -against-

JUAN SILVA, et al.,

                                        Defendants.
-------------------------------------------------------------------x

---

## JUDGMENT OF FORECLOSURE AND SALE
## WITH AFFIRMATION AND BILL OF COSTS

---

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**

BY: _____

    *Daniel B. Wade* , Esq.
    Attorneys for Plaintiff
    2 Summit Court, Suite 301
    Fishkill, New York 12524
    (845) 897-1600
    (845) 897-2648
    RR&A #: 07-00097

2007 OCT 16  P 3: 56

SUPREME COURT
SUFFOLK COUNTY

2008 MAR 12 AM 11:34
JUDITH A. PASCALE
SUFFOLK COUNTY CLERK
FILED

SUFFOLK COUNTY CLERK
JUDITH A. PASCALE

2008 MAR 12  AM 11:34

FILED

# Exhibit H

# NOTICE OF SALE
## SUPREME COURT: SUFFOLK COUNTY

U.S. Bank National Association, et al., Plaintiff(s)

vs. Juan Silva, et al., Defendant(s)

Attorney (s) for Plaintiff (s): ROSICKI, ROSICKI & ASSOCIATES, P.C., 2 Summit Court, Suite 301, Fishkill New York 12524 (845) 897-1600

Pursuant to judgment of foreclosure and sale entered herein on or about March 12, 2008, I will sell at Public Auction to the highest bidder at Babylon Town Hall, 200 E. Sunrise Highway. No. Lindenhurst, NY 11757.

On August 5, 2008 at 9:30 AM

Premises known as 60 South 31st Street, Wyandanch, NY 11798
ALL THAT CERTAIN PLOT, PIECE, OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being in the Town of Babylon, County of Suffolk and State of New York, known and designated as Lots 23, 24, and 25 in Block 48 on a certain map entitled, "Map of Wyandanch Springs Park" filed in the Suffolk County Clerk's Office on June 22, 1892 as Map Number 44.

District: 0100  Section: 054.00 Block: 02.00 Lot: 016.000

As more particularly described in the judgment of foreclosure and sale.

Sold subject to all of the terms and conditions contained in said judgment and terms of sale.

Approximate amount of judgment $208,908.34 plus interest and costs.

INDEX NO. 2490/07

Theresa A. Mari, Esq., REFEREE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
------------------------------------------------------------------x
U.S. BANK NATIONAL ASSOCIATION, TRUSTEE
FOR LEHMAN BROTHERS SECURITIZATION
NAME STRUCTURED ASSET INVESTMENT LOAN
TRUST,

Index No.: 2490/07

Plaintiffs,

-against-                                    **AFFIDAVIT OF SERVICE**

JUAN SILVA, et al.,

Defendants.
------------------------------------------------------------------x
STATE OF NEW YORK      )
                       ) ss:
COUNTY OF DUTCHESS     )

Alison Durr, being duly sworn, deposes and says:

That I am not a party to the action, am over the age of 18 years and reside in Dutchess
County, New York.

That on July 3, 2008, deponent served the within Notice of Foreclosure Sale, by
depositing a true copy thereof in a post-paid wrapper, in an official depository under the
exclusive care and custody of the United States Postal Service within the State of New York,
addressed to each of the following persons at the last known address set forth after each name:

JUAN SILVA
60 South 31st Street
Wyandanch, NY 11798

Theresa A. Mari, Esq.
P.O. Box 463
Huntington, NY 11743-0463

Occupants
60 South 31st Street
Wyandanch, NY 11798

Dana Cilley
60 South 31st Street
Wyandanch, NY 11798

Juan Silva
30 Hamilton Place
Hempstead, NY 11550

Mortgage Electronic Registration Systems, Inc
as Nominee and Mortgagee of Record
3300 SW 34th Avenue, Ste 101
Ocala, FL 34474

BNC Mortgage, Inc
510 Broadhollow Road, Ste 101
Melville, NY 11747

BNC Mortgage, Inc
1901 Main Street
Irvine, CA 92614

Alison Durr

Sworn to before me on this
3rd day of July 2008

NOTARY PUBLIC
Gina M. Banyai
Notary Public State of New York
Qualified in Dutchess County
Reg. No. 01BA6184427
Commission Expires 04/07/2012

# Exhibit I

**THIS DEED**, made the 5th day of August, 2008



**BETWEEN** Theresa A. Mari Esq., P.O. Box 463, Huntington, NY 11743-0463 Referee duly appointed in the action hereinafter mentioned, Grantor, and

U.S. Bank National Association, As Trustee, 10790 Rancho Bernardo Road, San Diego, CA 92127 Grantee,

**WITNESSETH** that the grantor, the referee appointed in an action between U.S. BANK NATIONAL ASSOCIATION, TRUSTEE FOR LEHMAN BROTHERS SECURITIZATION NAME STRUCTURED ASSET INVESTMENT LOAN TRUST, Plaintiff and JUAN SILVA, et al; Defendants under Index No. 2490/07, Suffolk County Supreme Court, 235 Griffing Avenue, Riverhead, New York 11901, foreclosing a mortgage recorded on September 26, 2005, in the Office of the Clerk of the County of Suffolk, in Liber 21137 of Mortgages, at Page 15, in pursuance of a judgment entered at a IAS Term, of the Supreme Court, on March 12, 2008, and in consideration of _____
(153,734.35) Dollars paid by the grantee, being the highest sum bid at the sale under said judgment, does hereby grant and convey unto the grantee

Said premises known as and by the street address: 60 South 31st Street, Wyandanch, NY 11798.

**SEE SCHEDULE "A" ANNEXED HERETO AND MADE A PART HEREOF.**

Said premises being and intended to be the same premises conveyed by Deed dated August 26, 2005, from Michelle Gilley to Juan Silva, recorded September 26, 2005, in Liber 12411 at page 422.

**TO HAVE AND TO HOLD** the premises granted unto the grantee U.S. Bank National Association, As Trustee, and its assigns forever. Whenever the text requires, the singular number herein shall include the plural and all genders.

**IN WITNESS WHEREOF**, the grantor has set his hand and seal, the date first above written.

_____
Theresa A. Mari, Esq., Referee

STATE OF NEW YORK

COUNTY OF SUFFOLK

On the 9 day of August in the year 2008, before me, the undersigned, a notary public in and for said state, personally appeared Theresa A. Mari, Esq., personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity that by his/her their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s), acted executed the instrument.

_____
NOTARY PUBLIC

SHERYL L RANDAZZO
Notary Public, State of New York
No. 02RA5050332
Qualified in Suffolk County
Commission Expires October 10, 2009

 

## Schedule A

### Amended June 10, 2008

**Title Number: 07-001078**

---

**ALL THAT CERTAIN PLOT, PIECE, OR PARCEL OF LAND,** with the buildings and improvements thereon erected, situate, lying and being in the Town of Babylon, County of Suffolk and State of New York, known and designated as Lots 23, 24 and 25 in Block 48, on a certain map entitled, "Map of Wyandanch Springs Park" filed in the Suffolk County Clerk's Office on June 22, 1892 as Map Number 44.


**District:    0100    Section:    054.00    Block:    02.00    Lot:    016.000**





Index No. 2490/07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
----------------------------------------------------------------X
THERESA A. MARI, ESQ., Referee,

                   Grantor,

     TO

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE,
                  Grantee.
----------------------------------------------------------------X

---

## REFEREE'S DEED IN FORECLOSURE

---

SECTION: 054.00
BLOCK: 02.00
LOT: 016.000 and 017.000

RECORD AND RETURN TO:
U.S. Bank National Association, As Trustee
10790 Rancho Bernardo Road
San Diego, CA 92127

# Exhibit J

# APPRAISAL REPORTS, INC.

File No. E001008

APPRAISAL OF



A SINGLE FAMILY RESIDENTIAL PROPERTY

LOCATED AT:

60 South 31st Street
Wyandanch, NY  11798-2725

FOR:

Cahn & Cahn, LLP
22 High Street Suite #3
Huntington, NY 11743

AS OF:

January 20, 2010

APPRAISED VALUE:

$130,000

BY:

Kevin W. Matheson, SRA, CSA-R
#45-1526 NYS Certified Resid RE Appraiser

21 Third Avenue, Suite #2, Bay Shore, NY  11706  631 321.5962

## APPRAISAL REPORTS, INC.

File No. E001008

January 20, 2010

Daniel K. Cahn, Esq.
Cahn & Cahn, LLP
22 High Street Suite #3
Huntington, NY 11743

File Number:  E001008

Attention Mr.Daniel K. Cahn, Esq.

In accordance with your request, I have appraised the real property at:

60 South 31st Street
Wyandanch, NY  11798-2725

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of   January 20, 2010                     is:

$130,000
One Hundred Thirty Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.

Respectfully Submitted,

Kevin W. Matheson, SRA, CSA-R
#45-1526 NYS Certified Resid RE Appraiser
Field Appraiser

21 Third Avenue, Suite #2, Bay Shore, NY  11706  631 321.5962

# Exterior-Only Inspection Residential Appraisal Report    File No. E001008

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 60 South 31st Street | City Wyandanch   State NY   Zip Code 11798-2725 |
| Borrower N/A   Owner of Public Record Silva, Jaun | County Suffolk |

Legal Description District 100   Section 54   Block 2   Lot 16

| | |
|---|---|
| Assessor's Parcel # Same As Above | Tax Year 2009   R.E. Taxes $ 6,034 est |
| Neighborhood Name Wyandanch Springs Park | Map Reference 3 4/L   Census Tract 1224.06 |

Occupant [X] Owner [ ] Tenant [ ] Vacant   Special Assessments $   [ ] PUD   HOA $ N/A   [ ] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Loan Default

Lender/Client Cahn & Cahn, LLP   Address 22 High Street Suite #3, Huntington, NY 11743

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s).   Not known to the appraiser as per Multiple Listing Service, Comps Inc.

[ ] did [X] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.
The appraiser did not analyze the contract for sale. The property is not for sale at this time.

Contract Price N/A   Date of Contract N/A   Is the property seller the owner of public record? [ ] Yes [ ] No   Data Source(s) N/A

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | | Property Values [ ] Increasing [ ] Stable [X] Declining | | | PRICE | AGE | One-Unit | 96 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | Demand/Supply [ ] Shortage [ ] In Balance [X] Over Supply | | | $(000) | (yrs) | 2-4 Unit | 1 % |
| Growth [ ] Rapid [ ] Stable [X] Slow | | Marketing Time [ ] Under 3 mths [ ] 3-6 mths [X] Over 6 mths | | | 60 Low | 2 | Multi-Family | % |
| Neighborhood Boundaries The neighborhood boundaries are: the LIRR to the north, Deer | | | | | 331 High | 65 | Commercial | 3 % |
| Park to the east , North Babylon to the south and the Cemetery to the west. | | | | | 200 Pred. | 45 | Other | % |

Neighborhood Description   The subject is located in a residential neighborhood consisting of diverse styles of homes, with access to
support facilities such as places of worship, shopping, employment, recreation and public transportation.

Market Conditions (including support for the above conclusions)   See Attached Addendum

| | | | |
|---|---|---|---|
| Dimensions 75 x 100 | Area 75,00 Sq.Ft. | Shape Rectangular | View Typical |

Specific Zoning Classification Residence "C"   Zoning Description Min 7,500 SF

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No   If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | [X] | |
| Gas | | None Noted | Sanitary Sewer | [X] | | Alley | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No   FEMA Flood Zone X   FEMA Map # 36103C0855G   FEMA Map Date 5/4/1998

Are the utilities and off-site improvements typical for the market area? [ ] Yes [ ] No   If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No   If Yes, describe.   There were
no apparent adverse conditions noted at the time of this exterior viewing.

Source(s) Used for Physical Characteristics of Property [ ] Appraisal Files [ ] MLS [ ] Assessment and Tax Records [ ] Prior Inspection [ ] Property Owner
[X] Other (describe) Street View   Data Source(s) for Gross Living Area

| GENERAL DESCRIPTION | | GENERAL DESCRIPTION | | Heating / Cooling | Amenities | Car Storage | |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [ ] Concrete Slab | [ ] Crawl Space | [X] FWA [ ] HWBB | Fireplace(s) # | [ ] None | | |
| # of Stories 1.5 | [X] Full Basement | [ ] Finished | [ ] Radiant | WoodStove(s) # | [X] Driveway # of Cars 1 | | |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | [ ] Partial Basement | [ ] Finished | [ ] Other | [X] Patio/Deck Wood | Driveway Surface | | |
| [X] Existing [ ] Proposed [ ] Under Const. | Exterior Walls Vinyl | | Fuel Oil | [ ] Porch | [ ] Garage # of Cars | | |
| Design (Style) Cape | Roof Surface Asphalt Shingle | | [ ] Central Air Conditioning | [ ] Pool | [ ] Carport # of Cars | | |
| Year Built 1957 | Gutters & Downspouts Aluminum | | [ ] Individual | [X] Fence | [ ] Attached [ ] Detached | | |
| Effective Age (Yrs) 53 Yrs | Window Type Double Hung | | [ ] Other | [ ] Patio | [ ] Built-In | | |
| Appliances [ ] Refrigerator [ ] Range/Oven [ ] Dishwasher [ ] Disposal [ ] Microwave [ ] Washer/Dryer [ ] Other (describe) See Attached Addendum | | | | | | | |

Finished area above grade contains:   Rooms   Bedrooms   Bath(s)   Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)   Additional features would include a side wood deck and insulated windows. Your
appraiser was not inside the property and could only see the property from the street. An extra lot 50 x 100 on north side.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.).   From an exterior viewing of the
property there was some vinyl siding missing on the north side, also the fence was falling down at the front of the property.
There were insulated windows on both sides and the front of the subject.  The roof appears to be in good condition.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [ ] No   If Yes, describe.
Your appraiser did not view the interior and most of the exterior, only what could be seen from the street, nothing was
apparent from this viewing, with the exception of the missing siding and broken fencing.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No   If No, describe.   The subject
generally conforms in functional utility, style, condition and construction, as best as one could tell from an exterior street
viewing.

## Exterior-Only Inspection Residential Appraisal Report      File No. E001008

There are **11** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **115,000** to $ **219,000** .
There are **6** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **80,000** to $ **190,000** .

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 60 South 31st Street Wyandanch | 93 S 26th Street Wyandanch, NY 11798 | | 97 New Avenue Wyandanch | | 10 S 24th Street Wyandanch | |
| Proximity to Subject | | 0.28 miles NE | | 0.71 miles ESE | | 0.39 miles E | |
| Sale Price | $ N/A | $ | 80,000 | $ | 155,000 | $ | 190,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 61.54 sq. ft. | | $ 112.16 sq. ft. | | $ 150.44 sq. ft. | |
| Data Source(s) | | MLS #2242448 | | MLS #2201216 | | MLS #2020875 | |
| Verification Source(s) | | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | Cash | | FHA | | FHA | |
| Date of Sale/Time | N/A | 12/11/2009 | | 1/7/2010 | | 1/23/29 -12% | -22,800 |
| Location | Suburban | Suburban | | Suburban | | Suburban | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 12,500 SQ.Ft. | 10,000 SQ.Ft. | +5,000 | 6,000 SQ.Ft. | +13,000 | 6,000 SQ.Ft. | +13,000 |
| View | Typical | Typical | | Commercial | +5,000 | Typical | |
| Design (Style) | Cape | Cape | | Cape | | Cape | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 53+/- Years | 55+-/ | | 45+/- | | 75+/- | |
| Condition | Average | Poor | +40,000 | Good | -30,000 | Average | |
| Above Grade | Total 6 Bdrms 3 Baths 1 | Total 6 Bdrms 4 Baths 1 | | Total 7 Bdrms 4 Baths 2 | -10,000 | Total 7 Bdrms 3 Baths 2 | -10,000 |
| Gross Living Area | 1300+/-* sq. ft. | 1300+/-* sq. ft. | | 1382+/- sq. ft. | | 1,263 sq. ft. | |
| Basement & Finished Rooms Below Grade | Full Basement Unknown | Full Basement Unfinished | No Adj | Crawl | +10,000 | Full Basement Finished/wBath | -12,000 |
| Functional Utility | Single Family | Single Family | | Single Family | | Mtr/Dtr | -20,000 |
| Heating/Cooling | HWBB | Central/None | | Central/None | | Central/None | |
| Energy Efficient Items | Insulated Winds | Inferior | +7,000 | Insulated Wind | | Insulated Wind | |
| Garage/Carport | Driveway | 1 Car Garage | -10,000 | Driveway | | Dway/Carport | -3,000 |
| Porch/Patio/Deck | Deck | None | +2,000 | None | +2,000 | Patio | |
| School Dist | SD #9 | SD #9 | | SD #9 | | SD #9 | |
| Net Adjustment (Total) | | [X] + [ ] - $ | 44,000 | [ ] + [X] - $ | 10,000 | [ ] + [X] - $ | 54,800 |
| Adjusted Sale Price of Comparables | | Net Adj. 55.0% Gross Adj. 80.0% $ | 124,000 | Net Adj. -6.5% Gross Adj. 45.2% $ | 145,000 | Net Adj. -28.8% Gross Adj. 42.5% $ | 135,200 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain  Results are listed below.

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  Comps Inc., MLS
My research [X] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  Comps Inc., MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 8/26/2005 | 7/22/2009 | 1/7/2008 | See Above |
| Price of Prior Sale/Transfer | $245,000 | $292,210 | $170,000 | |
| Data Source(s) | Comps Inc. | Comps Inc. | Comps Inc., MLS | Comps Inc., MLS |
| Effective Date of Data Source(s) | 1/20/2010 | 1/20/2010 | 1/20/2010 | 1/20/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales  Sale #1 transferred title on 11/8/2008 for $330,000.  Sale #2 also transferred titled on 5/30/2007 for $198,915 and on 12/5/2007 for $170,000.

Summary of Sales Comparison Approach.  The comparables used in this appraisal report are the best available sales at the time of this report to support a market value estimate.  The Real Estate Market in general has been declining.  The subject property has an abundant amount of foreclosed properties making it more difficult to sell.  Due to this the bank owned properties are a big part of the market and must be considered as comparable sales at this time.  Due to this your appraiser reconciles toward the lower end of the market.

Indicated Value by Sales Comparison Approach $ 130,000

Indicated Value by: Sales Comparison Approach $ 130,000    Cost Approach (if developed) $    Income Approach (if developed) $
Based on the preceding data, bearing in mind that the appraiser did not view the interior and that the sales comparison analysis approach is the best indicator of value due to it being reflective of both buyers and sellers, it is this appraiser's opinion that the estimated MARKET VALUE would be $130,000.
This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [X] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  This appraisal is based on an exterior viewing from the street and assumptions have been used.  A full viewing is the only way to confirm certain information.
Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $  130,000
as of  1/20/2010 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 2055  March 2005                    Produced using ACI software, 800.234.8727 www.aciweb.com                    Fannie Mae Form 2055  March 2005
Page 2 of 6                                                                                                                                 2055_05 062906

Exterior-Only Inspection Residential Appraisal Report    File No. E001008

Clarification of Intended Use and Intended User:

The Intended User of this appraisal report is the Client. The Intended Use is to evaluate the property that is the subject of this appraisal for litigation of a previous transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

**COST APPROACH**

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE .............................................. = $ |
|---|---|
| Source of cost data | Dwelling          Sq. Ft. @ $ ............... = $ |
| Quality rating from cost service          Effective date of cost data | Sq. Ft. @ $ ............... = $ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Garage/Carport   Sq. Ft. @ $ ............... = $ |
| The cost approach was not considered, due to this being an exterior street viewing only. | Total Estimate of Cost-New ............... = $ |
| | Less    Physical | Functional | External |
| | Depreciation                                = $ (          ) |
| | Depreciated Cost of Improvements .............................. = $ |
| | "As-is" Value of Site Improvements .............................. = $ |
| Estimated Remaining Economic Life (HUD and VA only)          -3 Years | INDICATED VALUE BY COST APPROACH ..................... = $ |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

**INCOME**

Estimated Monthly Market Rent $          X Gross Rent Multiplier          = $          Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

**PROJECT INFORMATION FOR PUDs (if applicable)**

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

Total number of phases          Total number of units          Total number of units sold

Total number of units rented          Total number of units for sale          Data source(s)

Was the project created by the conversion of an existing building(s) into a PUD? ☐ Yes ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No   Data source(s)

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 2055 March 2005          Produced using ACI software, 800.234.8727 www.aciweb.com
Page 3 of 6          Fannie Mae Form 2055 March 2005
2055_05 062906

Exterior-Only Inspection Residential Appraisal Report     File No. E001008

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD).  This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications.  Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted.  The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment.  Modifications or deletions to the certifications are also not permitted.  However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:**  The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications.  The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal.  The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

**INTENDED USE:**  The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:**  The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:**  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.  Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions.  No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions.  Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.  Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:**  The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal.  The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area.  Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4.  The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal.  Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied.  The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Exterior-Only Inspection Residential Appraisal Report     File No. E001008

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Exterior-Only Inspection Residential Appraisal Report          File No. E001008

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

APPRAISER

Signature _Kevin W. Matheson_
Name Kevin W. Matheson, SRA, CSA-R
Company Name Appraisal Reports, Inc.
Company Address 21 Third Avenue, Suite #27
Bay Shore, NY  11706
Telephone Number 631-321-5962
Email Address Appraisals@Appraiseny.com
Date of Signature and Report 01/21/2010
Effective Date of Appraisal 1/20/2010
State Certification # 45-1526
or State License # _____
or Other (describe) _____ State # _____
State NY
Expiration Date of Certification or License 12/30/11

ADDRESS OF PROPERTY APPRAISED
60 South 31st Street
Wyandanch, NY  11798-2725

APPRAISED VALUE OF SUBJECT PROPERTY $ 130,000

LENDER/CLIENT
Name Daniel K. Cahn, Esq.
Company Name Cahn & Cahn, LLP
Company Address 22 High Street Suite #3
Huntington, NY 11743
Email Address _____

SUPERVISORY APPRAISER (ONLY IF REQUIRED)

Signature _____
Name _____
Company Name _____
Company Address _____
Telephone Number _____
Email Address _____
Date of Signature _____
State Certification # _____
or State License # _____
State _____
Expiration Date of Certification or License _____

SUBJECT PROPERTY
☐ Did not inspect exterior subject property
☐ Did inspect exterior of subject property from street
Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection _____

ADDENDUM

| Borrower: N/A | | File No.: E001008 |
|---|---|---|
| Property Address: 60 South 31st Street | | Case No.: |
| City: Wyandanch | State: NY | Zip: 11798-2725 |
| Lender: Cahn & Cahn, LLP | | |

Property Rights Appraised:
Fee Simple

General Comments

The purpose of this appraisal is to estimate the market value of the subject property as of the effective date of the appraisal. The report will function as a guide for the Law Firm of Cahn & Cahn, LLP which is client mentioned in this report.

In preparing this appraisal, the appraiser has been requested to perform an exterior viewing only and not to disturb the occupants by entering the building. The physical characteristics used to develop this appraisal are based on the assessment records and on the multiple listing service if available. The subject was observed from the public street as of the effective date of the appraisal. Based on the observed conditions, the assessment records and multiple listing service information appear to be accurate. For the purposes of this appraisal, it is assumed that the interior condition of the subject property is consistent with the exterior conditions as observed, and that the information concerning the interior condition as provided by the assessor's records and the multiple listing service is accurate.

Per prior agreement with the client, the appraiser did not value the site and did not use the cost approach to value, although this approach would generally be considered meaningful in appraising a property of this type.

Data was collected from a variety of sources including, but not limited to, public land records, a multiple listing service, tax records, brokers, buyers, sellers, comps inc. And in-office files.

The form summarizes the process and conclusion of the value for the sales comparison approach and a final value conclusion. Additional supporting data can be found in our appraisal file.

The highest and best use is considered to be as is.

The subject is not a manufactured home and is permanently affixed to the foundation. Manufactured homes are not common to this area.

It should be noted that a review of all transfers of residential property known to have taken place in the subject area was undertaken before comparable sale selection was finalized.

Due to the subject only being viewed from the street and the appraiser not being able to measure the subject, the gross living area information was obtained from the assessor's office (if possible) or was estimated by the appraiser.

The tax information in this report has been given to the appraiser by the respective town and/or village and is assumed to be correct.

This appraiser assumes a certificate of occupancy exists for the subject as described herein.

The client ordered this appraisal as an exterior only report. No interior viewing was completed. The occupancy is marked on the first page based on the norm for the neighborhood, unless otherwise noted.

The appraiser reserves the right to revise this report upon a full viewing of the subject property.

For the purpose of this appraisal report, the word inspect should be view or viewed. This would mean that the appraiser has viewed, not inspected, the property and it's characteristics. The appraiser is not an expert in the field of engineering, home inspections or environmental issues. The appraiser views the property where possible and reports what is seen. No tests of any sort were prepared to draw any conclusions.

This appraiser is not and engineer or home inspector, therefor the reader of this report should not rely on this appraisal as a substitute for a home inspection.

The electronic signatures in this report are secured with security protected access codes. This has been approved and accepted by uspap, the appraisal institute as well as major banks and lending institutions including fannie mae.

Note that the photographs submitted with this appraisal report are original digital images. These digital images have not been altered or modified in any shape or form as to mislead the reader of this report. If there were any people in the pictures, they have been removed.

The map in this report is generated by the computer. The accuracy may not be to the exact location but is very close and is not intended to mislead the reader.

This report was ordered as an exterior report only. Due to this fact, the appraiser does not know if the utilities are on or off , if repairs are needed, and what a cost to cure would be.

Unless otherwise stated in this report, the existence of hazardous materials, which may or may not be present on the property, was not observed by the appraiser. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation, and other potentially hazardous materials may affect the value of the property. The value estimated is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for such conditions or for any expertise or engineering knowledge required to discover them. The intended user is urged to retain an expert in this field if desired.

The intended User of this appraisal report is Cahn & Cahn, LLP. The intended Use is to evaluate the property that is the subject of this appraisal for an estimated market value, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

The appraisal of this subject property includes a separate piece of vacant land adjacent to the north side of the property. This lot is 50 x 100 which is not a buildable lot. A premium was given in the sales comparison analysis for this extra land, due to no one individual would want it with out an adjacent property.

**Neighborhood Market Conditions**
A search of public records including Comps Inc, Multiple Listings and information derived from conversations with local real estate professionals and local news, indicate a decline in prices. These same brokers also indicate that the typical house takes at least 4 months to sell provided it is priced property, and that the resale market is very slow with an over supply of available properties. The direction of values in the future appear to be declining according to most reports to date.

SUBJECT PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| Borrower: N/A | | File No.: E001008 |
| Property Address: 60 South 31st Street | | Case No.: |
| City: Wyandanch | State: NY | Zip: 11798-2725 |
| Lender: Cahn & Cahn, LLP | | |



FRONT VIEW OF
SUBJECT PROPERTY

Appraised Date: January 20, 2010
Appraised Value: $ 130,000



REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE



COMPARABLE PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: N/A | File No.: E001008 |
| Property Address: 60 South 31st Street | Case No.: |
| City: Wyandanch | State: NY | Zip: 11798-2725 |
| Lender: Cahn & Cahn, LLP | |



**COMPARABLE SALE #1**

93 S 26th Street
Wyandanch, NY  11798
Sale Date: 12/11/2009
Sale Price: $ 80,000



**COMPARABLE SALE #2**

97 New Avenue
Wyandanch
Sale Date: 1/7/2010
Sale Price: $ 155,000



**COMPARABLE SALE #3**

10 S 24th Street
Wyandanch
Sale Date: 1/23/29 -12%
Sale Price: $ 190,000



PLAT MAP

| Borrower: N/A | | File No.: E001008 | |
| Property Address: 60 South 31st Street | | Case No.: | |
| City: Wyandanch | State: NY | | Zip: 11798-2725 |
| Lender: Cahn & Cahn, LLP | | | |





21 Third Avenue, Suite #2, Bay Shore, NY  11706  631 321.5962

LOCATION MAP

| Borrower: N/A | | File No.: E001008 | |
|---|---|---|---|
| Property Address: 60 South 31st Street | | Case No.: | |
| City: Wyandanch | | State: NY | Zip: 11798-2725 |
| Lender: Cahn & Cahn, LLP | | | |



| Borrower: N/A | | File No.: E001008 | |
| Property Address: 60 South 31st Street | | Case No.: | |
| City: Wyandanch | State: NY | | Zip: 11798-2725 |
| Lender: Cahn & Cahn, LLP | | | |



File No. E001008

********* QUALIFICATIONS *********

APPROVED CERTIFICATION

I, Kevin W. Matheson, do hereby certify to the best of my knowledge and belief the following to be true and correct.

The reported analysis, opinions and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, unbiased professional analysis, opinions and conclusions.

I have no personal or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.

I have made a personal viewing of the property that is the subject of this report.

I certify that this report has been prepared in conformity with the requirements of the code of professional ethics and standards of professional practice of the Columbia Society of Real Estate Appraisers and the Appraisal Institute.

I further certify that the use of this report is subject to the requirements of the Appraisal Institute and the Columbia Society of Real Estate Appraisers relating to review by their duly authorized representatives.

I do not authorize the out-of-context quoting from or partial reprinting of this appraisal report. Further, neither all nor any part of this appraisal report shall be disseminated to the general public communication without prior written consent of the appraiser(s) signing this appraisal report.

As of the date of this appraisal report, Kevin W. Matheson has completed the requirements of the continuing education program of the Appraisal Institute and the Columbia Society of Real Estate Appraisers.


Kevin W. Matheson, SRA, CSA-R
Chief Appraiser
NYS Certified Residential
Real Estate Appraiser
#45-1526  Expires 12/30/09

File No. E001008

********* QUALIFICATIONS *********

Kevin W. Matheson, SRA, CSA-R
New York State Certified Residential Real Estate Appraiser
State of New York Unique ID #45-000001526

Mr. Matheson began appraising in 1985.  He has specialized in the down state New York area.  He is been very active serving the appraisal profession.  Kevin is a State Certified Residential Real Estate Appraiser, receiving his SRA and IFA designations in 1993 and his CSA designation in 2001.

Mr. Matheson is the President of Appraisal Reports, Inc., located in Suffolk County New York.

Mr. Matheson has held several positions with the Long Island Chapter of the Appraisal Institute over past years, which would include the Chairman of the Residential Education Committee, Board Member, Chairman of the Associate Guidance Committee and was the LDAC Representative in Washington DC for the years 2002 and 2003.  Presently he is the President of the Long Island Chapter.

In addition to those positions, Mr. Matheson has also been very involved with the National Association of Independent Fee Appraisers; positions include Past President of the Long Island Chapter, Past New York State Director and a member of the Board of Directors for the NAIFA Long Island Chapter.

Mr. Matheson has worked with the Federal Reserve Bank of New York and the Long Island Home Purchase Process Initiative Committee.  He is an advisor for the New York Department of State License Bureau, doing review work when claims of fraud are brought against an appraiser.  He has testified before State hearings on such cases.

Association Memberships

Past Chairman New York State Appraisers Coalition
Past Treasure New York State Appraisers Political Action Committee
United States Power Squadron, Great South Bay Squadron, Grade: Advanced Pilot
Past Board Member of the Lions Club of Bay Shore
Past Board Member West Islip Soccer Club

File No. E001008

********* QUALIFICATIONS *********

COURSES

Standards of Professional Practice SSP - given by The Appraisal Institute

American Disabilities Act - given by The NAIFA

Appraisal Course 8/1 - given by AIREA.

Residential Appraising for Fannie Mae - given by Fannie Mae.

Narrative Writing - given by AIREA.

Appraising the Residential Home - given by Henry Harrison.

Appraisal Course 8/2 given by AIREA.

Residential Real Estate Report Writing  R3 given - by The NAIFA

Understanding Limited Appraisals - given by The Appraisal Institute

Basic Construction Terminology - given by The NAIFA

Home Inspections - Common Defects in Homes - given by The NAIFA

Basic Residential HUD Appraisal Requirements - given by The NAIFA
Is The Comparable a Comparable - given by The NAIFA

Instructors Conference - given by The NAIFA

Appraisal Litigation - given by The NAIFA

Mock Trial - given by The NAIFA

FNMA Update - Fannie Mae

Fair Lending Requirements - given by The NAIFA

Litigation Skills for the Appraiser - given by The Appraisal Institute

Income Valuation of Small, Mixed Use Properties - given by The Appraisal Institute

Residential Property Construction & Inspection- given by The Appraisal Institute


AIREA is the American Institute of Real Estate Appraisers, now known as, The Appraisal Institute.

NAIFA is the National Association of Independent Fee Appraisers.

File No. E001008

********* QUALIFICATIONS *********

Income Property Utilizing the 71B Form- given by The NAIFA

Desktop Underwriting and The Homestyle Program- given by Famine Mae

American National Standard for Measuring- given by The NAIFA

The Future of Residential Appraising given by The Appraisal Institute

Regression Analysis, given by The Appraisal Institute

The Internet and The Real Estate Appraiser, given by The NAIFA

ANSI Standards of Measurement, given by The NAIFA

AQI Fair Housing & Environmental Concerns of Appraisers, Given by The
Appraisal Institute

FHA/HUD 4.7 Residential HUD Appraisal Requirements- given by The NAIFA

Eminent Domain and Condemnation Appraising- given by The Appraisal Institute

The Federal Trade Commission's Final Privacy Regulations- given by The Columbia Society of Real Estate
Appraisers

Real Estate Market Trends in The Long Island and Metropolitan New York Markets- given by The Appraisal Institute

The appraiser as an Expert Witness: Preparation and Testimony- given by The Appraisal Institute

Observing Detrimental Property Conditions- given by The Appraisal Institute

Environmental Site Assessments- given by The Appraisal Institute

Real Estate Fraud: The Appraisers Responsibilities and Liabilities- given by The Appraisal Institute

Appraising Environmentally Contaminated Properties: Understanding and Evaluating Stigma-given by The Appraisal
Institute


AIREA is the American Institute of Real Estate Appraisers, now known as, The Appraisal Institute.

NAIFA is the National Association of Independent Fee Appraisers.

# Exhibit K

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

IN RE: LEHMAN BROTHERS HOLDINGS,
INC., *et al.,*

**Hearing Date & Time:**
**May 12, 2010 at 10:00am**

**Chapter 11 Case No.**
**08-13555 (JMP)**

**(Jointly Administered)**

Debtors.

-----------------------------------------------------------x

## ORDER TERMINATING AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE WITH RESPECT TO REAL PROPERTY

Upon consideration of the Motion for Relief From Automatic Stay Pursuant to 11

U.S.C. §§ 362(d)(1) & (2) With Respect to Real Property known as 60 South 31st Street,

Wyandanch, New York (the "Motion") filed by U.S. Bank National Association, Trustee for

Lehman Brothers Securitization Name Structured Asset Investment Loan Trust ("Movant"), and

any response thereto; the Court having determined that (1) the Court has jurisdiction over the

Motion pursuant to 28 U.S.C. §§ 157 and 1334; (2) this is a core proceeding pursuant to 28

U.S.C. § 157(b)(2); (3) venue is proper pursuant to 28 U.S.C. § 1409(a); and (4) service upon the

parties stated on the Certificate of Service is adequate under the circumstances; and the Court

having further determined that the Debtor, BNC Mortgage, LLC, does not have an equity interest

in the real property located at 60 South 31st Street, Wyandanch, New York, SCTM #0100-

054.00-02.00-016.000 and 0100-054.00-02.00-017.000 (the "Property"); and that the Debtor's

interest in the Property, if any, is not necessary to an effective reorganization; and the Court

having further determined that cause exists to grant Movant relief from the automatic stay with

respect to the Property because Movant's interest in the Property is not adequately protected; it is

**ORDERED** that the Motion be and the same is hereby **GRANTED;** and it is

further

**ORDERED** that pursuant to 11 U.S.C. § 362(d), to the extent the automatic stay

is otherwise applicable, Movant is hereby granted relief from the automatic stay, and the

automatic stay is terminated with respect to Movant's interest in the Property.   Movant is hereby

permitted to exercise its non-bankruptcy rights under applicable law against the Property,

including but not limited to foreclosure of the Mortgage; and it is further

**ORDERED** that this Order is effective immediately and is not stayed by

operation of law, notwithstanding the temporary stay provisions of Fed. R. Bankr. P. 4001(a)(3).

Dated: New York, NY
     April ___, 2010

 

 

_____
Hon. James M. Peck
U.S. Bankruptcy Judge