WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Perez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                              :
In re                                         :   Chapter 11
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,        :   Case No. 08-13555 (JMP)
                                              :
                    Debtors.                  :   (Jointly Administered)
                                              :
------------------------------------------------------------------x
```

**DECLARATION OF JEFFREY FITTS IN SUPPORT OF
DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363
OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019 FOR AN ORDER AUTHORIZING (I) LEHMAN BROTHERS
HOLDINGS INC. TO ENTER INTO RESTRUCTURING OF CERTAIN LOANS MADE
TO SUBSIDIARIES OF HILTON WORLDWIDE, INC. AND (II) LEHMAN
<u>COMMERCIAL PAPER INC. TO PROVIDE CONSENTS RELATED THERETO</u>**

Pursuant to 28 U.S.C. § 1746, I, Jeffrey Fitts, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this declaration (the "<u>Declaration</u>") in support of the *Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for an Order Authorizing (I) Lehman Brothers Holdings Inc. to Enter Into Restructuring of Certain Loans Made to Subsidiaries of Hilton Worldwide, Inc. and (II) Lehman Commercial Paper Inc. to Provide Consents Related Thereto* [Docket No. 7232] (the "<u>Motion</u>"), filed in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc.

("LBHI"), Lehman Commercial Paper Inc. ("LCPI"), and their affiliated debtors, as debtors in possession (together, the "Debtors" and collectively with their non-debtor affiliates, "Lehman").[1]

3. I am a Managing Director with Alvarez & Marsal Real Estate Advisory Services ("A&M"). I have more than 19 years of experience in assisting insolvent and troubled companies, with a focus on operational and financial restructuring efforts. Prior to joining A&M, I was a Managing Director with GE Commercial Finance ("GE"), where I led GE's Distressed Debt and Alternative Investment Group and managed complex distressed credits. Before joining GE, I was with the Corporate Workout Division (IRM) of Citicorp, where I spent three years managing investment grade and middle market corporate workouts. I began my career in 1990 as a workout officer and, later, an asset manager with Citicorp Real Estate, where I managed more than $1 billion of office, retail, and industrial projects. I received a bachelor's degree from the University of Delaware in 1988.

4. I was assigned to the representation of Lehman in September 2008. I currently serve as the Chief Operating Officer ("COO") of Lehman's real estate group (the "RE Group"). My primary responsibility as COO of the RE Group is day-to-day management and oversight of Lehman's real estate portfolio, including investments in, among others, the hospitality sectors. As COO of the RE Group, I oversee a number of Lehman employees, including Michael Lascher and Susanne Frey, both of whom report to me through Jon Schneidman, who oversees the hospitality arm of the RE Group. Schneidman and I are members of the RE Group's Investment Committee, which is charged with approving certain of the RE Group's investment decisions.

---

[1] Defined terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

5.      In late August 2009, the RE Group first commenced active internal discussions regarding its interests in (a) a mortgage loan (the "Mortgage Loan") made by Lehman and other lenders (collectively, the "Lender Syndicate") to various Hilton Worldwide, Inc. (f/k/a Hilton Hotels Corporation) ("Hilton") affiliates (collectively, the "Mortgage Borrowers") and (b) mezzanine loans (the "Mezzanine Loans" and together with the Mortgage Loan, the "Loans") made by the Lender Syndicate to the direct and indirect owners of the Mortgage Borrowers.  At the same time, representatives of certain funds managed by affiliates of The Blackstone Group, L.P. ("Blackstone" and collectively with the Lender Syndicate, the "Parties"), the ultimate majority owner of Hilton, approached the Lender Syndicate with a request to restructure the Mortgage Loans and the Mezzanine Loans (the "Proposed Restructuring").  In connection therewith, Lehman also analyzed its economic interest in the seller financing (the "Seller-Financed Loans") provided for the purchase by affiliates of GEM Realty Capital, Inc. ("GEM") and affiliates of Northwood Investors LLC ("Northwood") of LBHI's interests in certain of the Mezzanine Loans because the terms of the Seller-Financed Loans require that the GEM and Northwood borrowers seek LCPI's consent in order for those borrowers to consent to or vote in favor of the Proposed Restructuring.  Lascher and Frey, assisted by certain of their colleagues, were charged by me to evaluate the Proposed Restructuring.  From late August 2009 through the filing of this Declaration, Lascher and Frey, along with Schneidman, have reported developments to me in connection with the evaluation of the Proposed Restructuring.

6.      Immediately upon receiving the initial term sheet for a Proposed Restructuring, the RE Group began an in-depth evaluation of the proposal, including a extensive diligence of the Hilton credit as well as an extensive financial and legal analysis of the proposed

deal terms, and the members of the Lender Syndicate commenced discussions regarding the Proposed Restructuring, in certain instances through their administrative agent, Bank of America. Simultaneously therewith, the Parties negotiated pre-negotiation agreements (each, a "PNA"), which would enable the Parties to discuss the Proposed Restructuring on a non-binding and confidential basis without any waiver by the Lender Syndicate of its rights and remedies under the operative loan documents. Following intense negotiations, a PNA for each of the eleven (11) tranches of Mezzanine Loans (consisting of nine (9) tranches comprising the "Senior Mezzanine Loans" and two (2) tranches comprising the "Junior Mezzanine Loans") and a PNA for the Mortgage Loan were signed by the agent for the Lender Syndicate on October 26, 2009 and November 13, 2009, respectively.

       7.      As soon as the PNAs were executed, the Parties commenced substantive discussions on the terms of the Proposed Restructuring. From November 2009 through the filing of this Declaration, certain of the Parties participated in more than twenty (20) calls and at least six (6) in-person meetings to discuss and, ultimately, negotiate the Proposed Restructuring. These negotiations were extensive. Certain of those calls and meetings amongst the Parties on the Proposed Restructuring included only those with an interest in the Junior Mezzanine Loans, while others included those with an interest in the Mortgage Loan and/or the Senior Mezzanine Loans. Blackstone participated in certain of the calls and meetings; other calls and meetings were limited to members of the Lender Syndicate and their respective professionals. In February 2010, leading up to the filing of the Motion on February 23, 2010 seeking approval of the key terms substantially agreed upon by the Parties, Lascher and Frey participated in multiple calls per week with all or subsets of the Parties and reported to me the general substance of such discussions. Following the filing of the Motion, the Parties have engaged in continued

negotiations, almost daily, on the final, minor points. I have been kept informed regarding the substance of the negotiations on a real-time basis.

8. The terms of the Proposed Restructuring are the product of good-faith, arms'-length negotiations among the Parties. I believe that the terms of the Proposed Restructuring for which the Debtors seek approval in the Motion are overall more favorable to Lehman than the terms initially proposed to the Lender Syndicate. After analyzing various alternatives, I, with the guidance of my team, determined that the Proposed Restructuring provides the best framework for protecting and maximizing the value of the Mortgage Loan and the Mezzanine Loans and, indirectly, the Seller-Financed Loans. Most notably, I believe that the Proposed Restructuring, if consummated, would (i) in effect, deleverage the capital structure of Hilton by up to approximately $3.8 billion, (ii) provide LBHI with the benefit of enhanced economic terms governing the Mortgage Loan and Senior Mezzanine Loans, (iii) through such deleveraging and enhanced economics, maximize the value of the Mortgage Loan and the Senior Mezzanine Loans held by LBHI and the collateral supporting the Seller-Financed Loans, (iv) through such deleveraging as well as the accelerated amortization of the Mortgage Loan, improve LBHI's Mezzanine Loan J position in Hilton's capital structure, and (v) through the maturity date extension, increase the probability that Hilton will be able to refinance the Mortgage Loan and the Senior Mezzanine Loans at maturity, thus affording LBHI the ability to maximize its recovery.

9. To facilitate obtaining the necessary approval of the Creditors' Committee in connection with the Proposed Restructuring, in February 2010, Lascher and Frey participated in two (2) in-person meetings (December 3, 2009 and February 5, 2010) with Houlihan Lokey and FTI Consulting, the investment banker and financial advisor to the Creditors' Committee,

respectively, to discuss the deal terms and answer any questions regarding the Proposed Restructuring.  It is my understanding that the Creditors' Committee is in support of Lehman's participation in the Proposed Restructuring.

          10.     In connection with obtaining the requisite internal approvals at Lehman, as is customary, Lascher and Frey prepared an extensive memorandum outlining the Proposed Restructuring and the RE Group's recommendation for approval of same.  The memorandum was submitted to the RE Group's Investment Committee on February 11, 2010.  Following an extensive review and comment period, the Investment Committee approved the Proposed Restructuring on February 17, 2010.  On February 19, 2010, I sought and obtained a required secondary approval by John Suckow, an A&M Managing Director currently serving as LBHI's Chief Operating Officer.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

        Executed on this 15th day of March, 2010.

                                     /s/ Jeffrey Fitts
                                     Jeffrey Fitts