WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                          :    Chapter 11 Case No.
                                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :    08-13555 (JMP)
                                                               :
                              Debtors.                    :    (Jointly Administered)
------------------------------------------------------------------x

**REPLY OF WEIL, GOTSHAL & MANGES LLP TO FEE COMMITTEE
REPORT PERTAINING TO THIRD INTERIM FEE APPLICATIONS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Weil, Gotshal & Manges LLP ("WGM"), attorneys for Lehman Brothers Holdings Inc. and its affiliated debtors, file this reply to the Fee Committee Report Pertaining to the Third Interim Fee Applications of All Retained Professionals (the "Fee Committee Report"), dated March 11, 2009 [Docket No. 7498], and respectfully state:

1. WGM filed its third application for interim allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred from June 1, 2009 through September 30, 2009 (the "WGM Application") on December 14, 2009 [Docket No. 6205]. No party in interest in these cases interposed a response or an objection to the WGM Application prior to the January 6, 2010 objection deadline. At the request of the Fee Committee, the hearings to consider the third interim applications of all professionals were adjourned from time to time.

2.  By email, dated February 9, 2010, the Fee Committee provided WGM with an Individual Summary Sheet detailing the Fee Committee's review of the WGM Application. After reviewing the Individual Summary Sheet, WGM responded timely to the Fee Committee by email, dated February 22, 2010, and voluntarily reduced its request for compensation by $120,129.32 and its request for reimbursement of expenses by $20,594.83, for a total reduction of $140,724.15. These reductions were in addition to the voluntary reduction of $763,850.10 reflected in the WGM Application. Thus, prior to the filing of the Fee Committee Report, WGM had already reduced its request by $904,574.25 for the third interim application period. The presentation in the Fee Committee Report makes no mention of the multitude of significant voluntary reductions made by WGM and suggests the scope of disagreement between WGM and the Fee Committee is broader than it is.

## COMPENSATION FOR PROFESSIONAL SERVICES RENDERED

3.  WGM already agreed to reduce its request for the fees that the Fee Report describes as duplicative, containing insufficient detail, for preparation of fee applications,[1] and containing combined descriptions. There is, in fact, only one dispute outstanding with respect to the fees charged in the WGM Application. The fees in dispute total $201,296.50 and relate to services that the Fee Committee described as "administrative."

4.  Approximately 98.5% (1,071 of the 1,088 hours) of services identified by the Fee Committee as "administrative" were performed by WGM paraprofessionals at reduced billing rates.[2] The remaining 17 hours of services, approximately 1.5% of those identified, were

---

[1] Based on its review of the Individual Summary Sheet and internal calculations, WGM had agreed to reduce its charges by $4,447.20 less than the Fee Report includes for preparation of fee applications. WGM now agrees to a further reduction of its charges in this amount.

[2] As required, the WGM Application contains a listing of each timekeeper, broken down according to job title: (i) partner and counsel, (ii) associate, and (iii) paraprofessional.

performed by WGM associates; none were provided by WGM partners or counsel.  WGM does not charge for overhead, secretarial services, nighttime or weekend secretarial or clerical support.  In addition, only for these cases, WGM regularly voluntarily writes off its monthly invoices and interim fee applications relating to all charges for word processing and other similar services.

        5.      The services identified by the Fee Committee required the respective skill sets of paraprofessionals and attorneys and were not appropriate for secretaries or other WGM staff.  As one example, the Fee Committee challenged multiple entries relating to providing updates to WGM and Debtor teams relating to new pleadings filed in these chapter 11 cases.  This critical update involves being familiar with and monitoring the Court's Electronic Case Filing system for the main bankruptcy case, 3 chapter 15 cases, 58 adversary proceedings, numerous appellant cases, and several bankruptcy and other court cases in which the Debtors are involved as parties or have interests.  Other services identified relate to document productions for the Examiner and other federal investigations and preparation for Court hearings and closing corporate transactions.  The services performed were actual and necessary and the compensation requested therefore was reasonable.  Accordingly, the Court should not adopt the Fee Committee's recommendation, but rather should approve the WGM Application, as amended hereby.

## REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED

        6.      WGM already agreed to reduce its request for reimbursement of the expenses that the Fee Report categorizes as relating to photocopies, overtime meals and travel meals.[3]  In addition, WGM agreed to reduce its request for reimbursement of a substantial portion of the expenses that the Fee Report categorizes as relating to ground transportation and insufficient

---

[3] Based on its review of the Individual Summary Sheet and internal calculations, WGM had agreed to reduce its charges by $39.01 less than the Fee Report included for these expenses. WGM now agree to a further reduction of its expenses in this amount.

breakdown of expense detail. The Fee Report recommends further reductions of $2,757.23 for the later categories. WGM disputes the Fee Committee's analysis and recommendation, but in the interests of an efficient and economical administration of the Debtors' cases, agrees to further reduce its request for expenses by such amount. Thus, WGM and the Fee Committee have not reached agreement as to only $106,628.20 of the reimbursement requested, which result from the implementation of the Fee Committee's guidelines on computerized research expenses and airfare.

        7.        The relevant airfare expenses relate to two roundtrip international tickets to London for WGM attorneys who attended meetings with foreign administrators and negotiated the global protocol among the Debtors' affiliates worldwide. With respect to airfare expenses, generally, WGM charges clients coach fares for domestic travel shorter than 5 hours and permits business class tickets for international flights and domestic flights exceeding 5 hours in length. Expenses should be reimbursable at such rates. Attorneys are often required to conduct business and require the accommodations for laptops and room to work on sensitive documents with additional privacy. Moreover, attorneys traveling great distances, often overnight, are required to arrive at their destinations and attend to the business of these cases on the same day and board return flights in short order to return their ongoing efforts relating to the administration of these cases.

        8.        Approximately 80% of the disputed expenses result from the enforcement of the Fee Committee's guideline that requires an "sufficient description" of online research charges greater than $1,000 per session. WGM previously objected to this guideline when it was proposed by the Fee Committee because, among other things, it is impractical to implement retroactively, due to the number of research-related assignments and professionals involved. It is also impractical to implement going forward, because costs of searches are not known by the attorneys at the time

they are performing research. Nonetheless, even if costs could be determined, the guideline could be easily circumvented by breaking up research sessions. WGM professionals are encouraged to perform efficient research searches. Utilizing on-line research results in costs to the estates that are a fraction of what they would otherwise be if attorneys were required to perform manual research. The expenses incurred should be reimbursed in full.

## CONCLUSION

9.  WGM hereby amends the WGM Application to reduce its request for compensation from $45,282,797.75 to $45,158,221.23, a reduction of $124,576.52, and to reduce its request for reimbursement of expenses from $1,332,433.67 to $1,309,042.60, a reduction of $23,391.07.

10. To date, WGM has voluntarily reduced its request for compensation and reimbursement in the third interim compensation period by $911,817.70. As set forth above, further reductions are not warranted.

11. WGM reserves for future applications, including any final fee application, all of its rights with respect to amounts that have been voluntary reduced and to all aspects of any arbitrary caps on the allowance of reasonable expenses for actual and necessary services performed in these chapter 11 cases.

Dated: March 16, 2010
    New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession