Hearing Date:  March 17, 2010 at 10:00 a.m.

Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                        :
In re:                                  :    Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :    08-13555 (JMP)
                                        :
              Debtors.                  :    (Jointly Administered)
                                        :
------------------------------------------------------------------x

**RESERVATION OF RIGHTS OF MILBANK, TWEED, HADLEY & McCLOY LLP
WITH RESPECT TO CERTAIN FEE COMMITTEE REPORTS PERTAINING
TO FEE APPLICATIONS OF RETAINED PROFESSIONALS**

Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), counsel to the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors"), hereby files this reservation of rights (the "Reservation of Rights") with respect to the (a) Fee Committee Report Pertaining to the Third Interim Fee Applications of All Retained Professionals, dated March 10, 2010 [Docket No. 7498] (the "Third Interim Report") and (b) Corrected Fee Committee Report Pertaining to the Final Recommended Deductions from the Second Interim Fee Applications of All Retained Professionals, dated December 14, 2009 [Docket No. 6165] (the "Second Interim Report" and, together with the Third Report, the "Reports"), as follows:

## **RESERVATION OF RIGHTS**

1.      In the ten months since its approval by this Court, much has been accomplished under the Fee Protocol.[1] The Fee Committee has been established and populated with representatives of the key constituencies and a neutral third party, and procedures have been put in place to enable the Fee Committee to review the fees incurred in these, the largest chapter 11 cases in history, efficiently and impartially.  The fee review process appears now to be established on a firm foundation that should permit the Fee Committee and the retained professionals to work cooperatively toward the Court's goal – the close and careful scrutiny of the substantial fees and expenses already incurred and to be incurred in these Chapter 11 Cases.

2.      The foregoing progress notwithstanding, a number of issues remain, the most significant of which is the 1% cap that the Fee Committee seeks to impose on the fees of retained professionals in connection with the preparation and review of fee statements and applications, including the fees incurred by such professionals in communicating with the Fee Committee and seeking to comply with its evolving mandates (collectively, the "Fee Preparation Fees").  A 1% cap on such fees, imposed on a compensation period-by-compensation period basis, does not reflect the Bankruptcy Code's standard for payment of fees of this type, and is unsupported by applicable precedent.

3.      Accordingly, while Milbank is prepared, for purposes of the Third Interim Fee Application, to accept the Fee Committee's recommended reduction of $148,426.60[2] in the

---

[1]     Attached as Exhibit A to the Order Appointing Fee Committee and Approving Fee Protocol, dated May 26, 2009 [Docket No. 3651].

[2]     These fees relate to three categories of tasks: (i) the preparation and review of monthly fee statements; (ii) the preparation and review of quarterly fee applications; and (iii) compliance with the Fee Committee's requirements, requests, and inquiries.  It is important to note that, of this total, $55,265.10 relates to the actual review and preparation of fee statements and fee applications for the relevant period, and $93,419.00 relates to Fee Committee issues, including the preparation of budgets, responding to prior Fee Committee reports, and meetings, telephone calls, and correspondence with the Fee Committee.  In this connection,

2

Fee Preparation Fees that Milbank incurred during the period from June 1, 2009 through September 30, 2009 (the "Third Interim Compensation Period"), it hereby reserves the right to argue, at the time of the final fee hearing, with respect to both the Third Interim Compensation Period and all prior and subsequent interim and final compensation periods, that (i) the propriety of Fee Compensation Fees should be measured, not on a compensation period-by-compensation period basis, but rather over the life of the Chapter 11 Cases; and (ii) if a cap is to be imposed, it should be set, as it has been in most other reported cases, at a materially higher level (in the range of 3% to at 5%) of all incurred fees.[3]

### A.   Aggregate Fee Preparation Fees Should Be Measured Over Life Of Chapter 11 Cases

4.   The propriety of the aggregate Fee Preparation Fees incurred by the retained professionals should be measured over the course of the Chapter 11 Cases because there is a natural ebb and flow of such fees during the life cycle of any chapter 11 case. Such fees are generally higher at the outset of a case, as the professionals put in place the mechanics required to accurately track and report their fees.

5.   In cases, such as this one, where fee committees or auditors have been appointed, the first few months after the appointment of a fee committee or auditor have also typically resulted in higher Fee Preparation Fees as the newly-appointed fee committee or auditor formulates its procedures and the professionals gradually become accustomed to such

---

Milbank reserves, in particular, the right to argue that the $93,419.00 should be exempt from any fee cap ultimately imposed.

[3] In addition to reserving its rights with respect to the 1% cap on Fee Preparation Fees, Milbank also reserves its rights to challenge, at the time of the final fee application hearing, the Fee Committee's recommended deductions with respect to (i) administrative task fees ($35,152.00); (ii) fees relating to insufficiently detailed services ($8,302.50); and (iii) travel-related expenses ($6,653.91) in the "Insufficient Breakdown of Expense" category. (Third Report ¶ 13 (Fees (a), (c)); (Expenses (a)). Separately, Milbank has reached agreement with the Fee Committee with respect to voluntary reductions relating to the remaining $86,234.58 in fees and expenses enumerated among the Third Interim Report's Final Recommended Deductions. (Id. ¶ 13 (Fees (b)); (Expenses (a) –(f)).

3

procedures. This is a particularly relevant factor here because it appears that a substantial percentage of Fee Preparation Fees incurred by the retained professionals to date can be attributed to their efforts to comply with, dispute or refine the procedures proposed by the Fee Committee. Assuming general agreement on these procedures going forward, fees related to such matters can also be expected to diminish materially.

6. For all the foregoing reasons, the Court should defer a determination with respect to the Fee Preparation Fees until the end of the Chapter 11 Cases because doing so will permit it to better gauge the "normalized" run rate of such fees and avoid the premature disallowance of such fees based upon aberrational spikes in their levels early in the Chapter 11 Cases.

**B.   Applicable Precedent Authorizes Allowance
      Of Fee Preparation Fees At Levels Higher
      Than Those Proposed By Fee Committee**

7. A 1% cap on Fee Preparation Fees does not reflect the Bankruptcy Code's standard for payment of fees of this type, and is not supported by applicable precedent. In fact, most courts and fee committees that have considered the issue have deemed appropriate and fully compensable Fee Preparation Fees in the range of 3% to 5% of total fees incurred.

**1.   Section 330(a)(6) Standard**

8. Section 330(a)(6) of the Bankruptcy Code, which was added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994, provides that: "[a]ny compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application." 11 U.S.C. § 330(a)(6). Thus, a two-part standard applies to the allowance of fees in connection with the preparation of fee applications: they must (a) be reasonable; and (b) reflect the level of skill necessary to prepare such applications. See In re

4

Amherst Orthopedic Assocs. P.C., 355 B.R. 420, 426 ("[A]ll work in support of the fee application must . . . satisfy the requirement of reasonableness."); In re Fibermark, Inc., 349 B.R. 385, 397 (Bankr. D.Vt. 2009)("In addition to an analysis of the time spent by each professional who assisted in preparing a fee application, the total time spent on a fee application must be reasonable.").

9. Bankruptcy courts in the Second Circuit have consistently held that section 330(a)(6) permits retained professionals to be compensated for the time they spend preparing their fee applications. See Fibermark, 349 B.R. at 397 ("Reasonable time spent preparing a fee application is compensable."); In re St. Rita's Assocs. Private Placement, L.P., 260 B.R. 650, 651 (Bankr. W.D.N.Y. 2001) ("Implicitly recognized [by § 330(a)(6)] is the appropriateness of compensation for the preparation of a fee application."); In re Bennett Funding Group, Inc., 213 B.R. 234, 249 (Bankr. N.D.N.Y. 1997) ("It is generally accepted that reasonable compensation is appropriate for time spent preparing a fee application.").

10. Bankruptcy courts in the Second Circuit have also held that fees incurred in connection with the preparation of fee applications are permitted as "necessary" services under section 330(a)(1) of the Bankruptcy Code, which provides that courts may award "reasonable compensation for actual, necessary services rendered [by professionals]." 11 U.S.C. § 330(a)(1); see, e.g., In re Granite Partners, L.P., 213 B.R. 440, 455 (Bankr. S.D.N.Y. 1997) ("[C]ounsel [retained pursuant to a court order] must prepare detailed, time consuming applications. Unless they do, they cannot get paid. Accordingly, the preparation of the fee application is a reasonable and necessary expense under section 330.") (citations omitted).

11. In allowing fees in connection with the preparation of fee applications, bankruptcy courts in the Second Circuit have been sympathetic to the burdens of time and

5

expense required to comply with the extensive rules and guidelines applicable to fee applications. See Amherst Orthopedic, 355 B.R. at 426-27 ("Because a fee application would normally not be required outside the bankruptcy context, [a party] may request reimbursement for the cost of preparing the fee application itself."); Bennett Funding, 213 B.R. at 249 ("[S]ince preparation of detailed fee applications for the bankruptcy court's review is a prerequisite to payment, which no doubt can consume valuable and substantial time depending on the magnitude of the fee application, it seems that it would be unduly burdensome and unfair to require that professionals go completely uncompensated for such a task.").

### 2. Other Courts Have Applied Section 330(a)(6) Standard To Impose Higher Fee Preparation Fee Caps

12. In addition to the standard outlined above, many courts have held that the reasonableness of Fee Preparation Fees must be examined in light of the total amount of fees sought by a professional. See, e.g., Bennett Funding, 213 B.R. at 249 ("It is proper . . . for the bankruptcy court to examine the amount and value of time spent preparing the [fee] application, and reasonable limits may be placed on compensation for such work.") (citations omitted). Based on this reasoning, a number of courts, fee committees and auditors have imposed caps on and/or recommended capping Fee Preparation Fees at a fixed percentage of the total amount of fees sought by retained professionals for services rendered.

13. The courts that have imposed caps on Fee Preparation Fees have generally set such caps in the range of 3% to 5% of the total amount of fees sought by a retained professional for services rendered. See, e.g., In re Noeth Corp., No. 06-62251, 2008 WL 1882040, at *1 (Bankr. N.D.N.Y., April 24, 2008) ("limiting fees for the preparation of fee applications to not more than 3% of the total fee requested."); In re New Boston Coke Corp., 299 B.R. 432, 446 (Bankr. E.D. Mich. 2003) ("The Court will reduce the number of hours allowed

6

for production of the Fee Application(s) to the maximum 5% of all allowable hours."); In re Bass, 227 B.R. 103, 111 (Bankr. E.D. Mich. 1998) ("The fees for the preparation of the fee applications are limited to 5% of the allowed fees."); In re Spanjer Bros., 203 B.R. 85, 93 (Bankr. N.D. Ill. 1996) ("applicants may be awarded 5% of the total fees allowed for the preparation of the application"); In re Atwell, 148 B.R. 483, 492 (Bankr. W.D. Ky. 1993) (imposing 5% cap on fees in connection with preparation of fee applications, absent a showing of "exceptional circumstances"); In re Heck's, Inc., 112 B.R. 775 (Bankr. S.D. W. Va. 1990), aff'd in part, rev'd in part on other grounds, 151 B.R. 739, 754 (S.D. W. Va. 1992) (imposing 3% cap on fees in connection with preparation of fee applications; noting that "The use of a percentage figure serves the utilitarian purpose of eliminating fee application preparation requests to the extent they relate to activities found non-compensable."); In re Churchfield Management & Inv. Corp., 98 B.R. 838, 887 (Bankr. N.D. Ill. 1989) (imposing 3% cap on fees in connection with preparation of fee applications absent "unusual circumstances"); In re Wildman, 72 B.R. 700, 711 (Bankr. N.D. Ill. 1987) (holding hours allowed for preparation and litigation of fee applications should not exceed 3% in the "absence of unusual circumstances"); In re Pettibone Corp., 74 B.R. 293, 304 (Bankr. N.D. Ill. 1987) (imposing a 3% cap on fees in connection with preparation of fee applications).

### 3. Fee Committees In Other Cases Have Uniformly Imposed Higher Caps

14. Fee committees and auditors appointed in other chapter 11 cases in the Second and Third Circuits that have advocated caps on Fee Preparation Fees have recommended caps ranging from 2.5% to 5% of the total amount of fees sought by a professional.[4] See, e.g., In

---

[4] In In re Adelphia Communications Corp., the fee committee recommended that fees for preparing fee applications should not exceed 1.5% of total fees and expenses for an applicable period, unless an applicant demonstrated that higher fees were "reasonable under the circumstances." Case No. 02-41729 (Bankr.

re Calpine Corp., Case No. 05-60200 (Bankr. S.D.N.Y., Aug. 15, 2007), Statement of the Joint Fee Review Committee Regarding Fifth Interim Applications for Allowance of Compensation and Reimbursement of Expenses [Docket No. 5638] (recommending a 5% limitation on fees in connection with preparation of fee applications); In re Armstrong World Indus., Inc., Case No. 00-4471 (Bankr. D. Del., Mar. 20, 2002), Order Appointing Fee Auditor and Establishing Related Procedures Concerning the Allowance and Payment of Compensation and Reimbursement of Expenses of Professionals, Members of Official Committees, and Legal Representative of Future Claimants and Consideration of Fee Applications [Docket No. 2168] (recommending a 5% limitation on fees in connection with preparation of fee applications); In re Sea Containers Ltd., Case No. 06-11156 (Bankr. D. Del., July 5, 2007), Fee Auditor's Final Report Regarding Interim Fee Application of Reed Smith Richards Butler LLP for the Second Interim Period [Docket No. 790] ("Normally, 5% of the total fee application is considered an acceptable benchmark for preparation of fee applications.") (emphasis added); In re Global Crossing Ltd., Case No. 02-40241 (Bankr. S.D.N.Y., Apr. 16, 2003), Statement of the Fee Committee in Regards to the Applications for Second Interim Compensation and Reimbursement of Expenses [Docket No. 3009] (recommending a 2.5% limitation on fees in connection with preparation of fee applications).

### 4. Fee Cap Proposed by Fee Committee Is Unreasonable and Unprecedented

15.     As noted above, the Bankruptcy Code permits the payment of Fee Preparation Fees, and courts typically view favorably requests for allowance of such fees,

---

S.D.N.Y., Dec. 8, 2003), Fee Committee Report and Statement in Regard to (I) the Applications Seeking a Second Interim Award of Compensation and Reimbursement of Expenses and (II) Certain Applications Seeking a Third Interim Award of Compensation and Reimbursement of Expenses [Docket No. 3137]. That recommendation, however, appears to be an aberration; among other things, the cases the Adelphia fee committee cited in support of its recommendation predated the 1994 Bankruptcy Reform Act under which section 330(a)(6) was added to the Bankruptcy Code.

8

because fee statements and applications are mandatory for retained professionals in chapter 11 cases and the applicable rules and guidelines are burdensome and time consuming. While Milbank recognizes the potential benefits of a benchmark for assessing the reasonableness of Fee Preparation Fees, the 1% cap recommended by the Fee Committee is unreasonable.

16. As a threshold matter, the Fee Committee has failed to establish that its proposed cap reasonably reflects the amount of work required to prepare fee statements and applications in accordance with the applicable rules and guidelines, especially where, as is the case here, a substantial percentage of the fees incurred to date have been directly attributable to, and generated by, interactions with the Fee Committee itself. Moreover, the Fee Committee's recommended fee cap is substantially below the 3% to 5% cap imposed by those courts that have previously imposed comparable caps, <u>and</u> below the 2.5% to 5% cap recommended by fee committees in other Second and Third Circuits chapter 11 cases.

17. To the extent that the Court determines that a cap on Fee Preparation Fees is warranted, Milbank respectfully submits that that cap should be (i) assessed at the end of the Chapter 11 Cases; and (ii) fixed at 4%, a level at a midpoint of the fee caps imposed in other reported cases. Under this formulation, Fee Preparation Fees in excess of the 4% cap could be disallowed on a compensation period-by-compensation period basis, but any amounts disallowed would remain subject to ultimate allowance if, at the time of the final fee hearing, the applicant's aggregate Fee Preparation Fees do not exceed 4% of its total fees.

WHEREFORE, Milbank respectfully requests that the Court: (i) grant Milbank's Third Interim Fee Application, as modified by the Fee Committee's Final Recommended Deduction of $292,555.40, subject to Milbank's reservation of rights set forth herein until the

9

time of the final fee application hearing; and (ii) grant Milbank such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        March 16, 2010

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: /s/ Dennis F. Dunne
    Dennis F. Dunne
    Dennis C. O'Donnell
    Evan R. Fleck
    1 Chase Manhattan Plaza
    New York, NY 10005
    Telephone: (212) 530-5000

    Counsel for Official Committee of Unsecured
    Creditors of Lehman Brothers Holdings Inc., et al.