# A. 165

David S. Rosner (DR-4214)
Andrew K. Glenn (AG-9934)
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile:  (212) 506-1800

Attorneys for Bay Harbour Management L.C., Bay Harbour Master Ltd.,
Trophy Hunter Investments, Ltd., BHCO Master, Ltd.,
MSS Distressed & Opportunities 2 and Institutional Benchmarks

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————
In re:                                              :
                                                    :        Chapter 11
LEHMAN BROTHERS HOLDINGS, INC, et al.               :
                                                    :        Case No. 08-13555 (JMP)
                          Debtor.                   :
                                                    :        (Jointly Administered)
————————————————————————:
SECURITIES INVESTOR PROTECTION                      :
CORPORATION                                         :
                          Plaintiff                 :
                                                    :        Adversary Proceeding Nos.
v.                                                  :
                                                    :        08-01419 (JMP)
LEHMAN BROTHERS INC.,                               :        08-01420 (JMP)
                                                    :
                          Debtor.                   :
————————————————————————:

**DESIGNATION OF RECORD AND STATEMENT OF ISSUES PRESENTED ON
APPEAL OF BAY HARBOUR MANAGEMENT L.C., BAY HARBOUR MASTER
LTD., TROPHY HUNTER INVESTMENTS, LTD., BHCO MASTER, LTD., MSS
DISTRESSED & OPPORTUNITIES 2 AND INSTITUTIONAL BENCHMARKS FROM
ORDERS OF THE BANKRUPTCY COURT ENTERED SEPTEMBER 20, 2008**

Bay Harbour Management L.C., Bay Harbour Master Ltd., Trophy Hunter Investments,

Ltd., BHCO Master, Ltd., MSS Distressed & Opportunities 2 and Institutional Benchmarks

(collectively, "Bay Harbour"), pursuant to Federal Rule of Bankruptcy Procedure 8006, hereby

designate the record and issues presented on appeal to the United States District Court for the

Southern District of New York from the following orders (the "Orders") entered by the United

1666336

States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the

above-referenced chapter 11 cases on September 20, 2008:

(i)        *Order Under 11 §§ U.S.C. 105(a), 363, and 365 and Federal Rules of Bankruptcy*

*Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets*

*Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory*

*Contracts and Unexpired Leases* in Case No. 08-13555 (JMP);

(ii)       *Order Approving, and Incorporating by Reference for the Purposes of this*

*Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman*

*Brothers Holdings, Inc. Chapter 11 Proceeding* in each of Case Nos. 08-01419 and 08-01420

(JMP).

### **Statement of Issues Presented on Appeal**

1.        Whether the Bankruptcy Court erred in its conclusion in the Orders that Barclays

Capital, Inc. ("Barclays") was a purchaser in good faith pursuant to section 363 of title 11,

United States Code (the "Bankruptcy Code").

2.        Whether the Bankruptcy Court erred in its conclusion in the Orders that the sale

pursuant to the Orders complied with the Due Process clause of the Fifth Amendment of the

United States Constitution where there was no ability for the Court and for parties in interest,

including Appellants, to determine whether Barclays was a purchaser in good faith pursuant to

section 363 of the Bankruptcy Code.

3.        Whether the Bankruptcy Court erred in approving a sale free and clear of

liabilities to Barclays, an entity that the Bankruptcy Court could not have concluded to be a

purchaser in good faith under section 363 of the Bankruptcy Code.

## Designation of Items to Be Included in the Record on Appeal

Documents Filed in Case No. 08-13555 (JMP)

1. Debtors' Motion To (A) Schedule a Sale Hearing, (B) Establish Sale Procedures, (C) Approve a Break-Up Fee; And (D) Approve The Sale Of The Purchased Assets And The Assumption And Assignment Of Contracts Relating To The Purchased Assets, filed September 17, 2008 [Docket No. 60]

2. Objection of Bay Harbour Management L.C., Bay Harbour Master Ltd., Trophy Hunter Investments Ltd., BHCO Master, Ltd., MSS Distressed & Opportunities 2 and Institutional Benchmarks to the Debtors' Motion to (A) Schedule a Sale Hearing, (B) Establish Sale Procedures, (C) Approve a Break-up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 175]

3. Limited Objection of SuccessFactors, Inc. to Debtors' Motion Seeking, Among Other Things, an Order Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, filed September 19, 2008 [Docket No. 254]

4. Limited Objection of Cisco Systems, Inc. and Cisco Systems Capital Corporation to Debtors' Motion Seeking, Among Other Things, an Order Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, filed September 19, 2008 [Docket No. 251]

5. Objection by Murex North America Inc. to Debtors' Cure Notice, filed September 19, 2008 [Docket No. 250]

6. Limited Objection of Sun Microsystems, Inc. to Debtors' Motion Seeking, Among Other Things, an Order Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, filed September 19, 2008 [Docket No. 246]

7. Reservation of Rights and Limited Objection of Chevron Natural Gas to Debtors' Motion to Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 245]

8. Objection of Chicago Board Options Exchange, Incorporated, Objection to Debtors' Cure Amount, filed September 19, 2008 [Docket No. 235]

9. LiquidPoint, LLC's Reservation of Rights and Limited Objection to Assumption and Assignment of Contracts and Proposed Cure Amounts, filed September 19, 2008 [Docket No. 228]

10.   Response of the Joint Administrators of the Lehman European Group
Administration Companies to Debtors' Motion to (A) Schedule A Sale Hearing;
(B) Establish Sales Procedures; (C) Approve A Break-Up Fee; and (D) Approve
the Sale of the Purchased Assets and the Assumption and Assignment of Contracts
Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 219]

11.   Declaration of Dan Yoram Schwarzmann on behalf of The Joint Administrators of
the Lehman European Group Administration Companies, filed September 19,
2008 [Docket No. 223]

12.   International Business Machines Corporation's Statement and Limited Objection
to Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales
Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the
Purchased Assets and the Assumption and Assignment of Contracts Relating to the
Purchased Assets, filed September 19, 2008 [Docket No. 221]

13.   Objection to Assumption and Assignment of, and Amounts Necessary to Cure
Defaults Under Contracts and Leases to be Assumed and Assigned to Successful
Purchaser, filed September 19, 2008 [Docket No. 218]

14.   Moody's Corporation's Statement and Limited Objection to Debtors' Motion to
(A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a
Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the
Assumption and Assignment of Contracts Relating to Purchased Assets, filed
September 19, 2008 [Docket No. 217]

15.   Limited Objection of Keane, Inc. to Debtors' Cure Notice, filed September 19,
2008 [Docket No. 213]

16.   Reservation of Rights and Limited Objection of NPD Group, Inc. to Debtors'
Motion to Approve the Sale of the Purchased Assets and the Assumption and
Assignment of Contracts Relating to the Purchased Assets, filed September 19,
2008 [Docket No. 211]

17.   Community Trust Bancorp Inc.'s Objection to Debtors' Motion to Approve the
Sale of the Purchased Assets and the Assumption and Assignment of Contracts
Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 210]

18.   Objection to Sale Motion, filed September 19, 2008 [Docket No. 209]

19.   Limited Objection and Reservation of Rights of Dresdner Kleinwort Group
Holdings LLC to Debtors' Motion to Approve the Sale of Purchased Assets and
Assumption and Assignment of Contracts Relating to the Purchased Assets, filed
September 19, 2008 [Docket No. 208]

20.   Objection of IKON Office Solutions, Inc. to Debtors' Motion to (A) Schedule A
Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-up Fee; and
(D) Approve the Sale of the Purchased Assets and the Assumption and
Assignment of Contracts Relating to the Purchased Assets, filed September 19,
2008 [Docket No. 207]

21.     Limited Objection and Reservations of Rights of ICAP to Debtors' Motion to (A)
Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up
Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and
Assignment of Contracts relating to Purchased Assets, filed September 19, 2008
[Docket No. 206]

22.     Limited Objection of FMR LLC to Proposed Cure Amounts and Assumption and
Assignment of Executory Contracts, filed September 19, 2008 [Docket No. 204]

23.     Reservation of Rights and Objection of EMC Corporation, its Subsidiaries and
Affiliates to Debtors' Motion to Approve the Sale of the Purchased Assets and the
Assumption and Assignment of Contracts Relating to the Purchased Assets, filed
September 19, 2008 [Docket No. 202]

24.     Limited Objection of Misys IQ LLC and Summit Systems, Inc. to Debtors' Cure
Notice, filed September 19, 2008 [Docket No. 199]

25.     Objection of GE Capital Information Technology Solutions, Inc. d/b/a IKON
Financial Services to Debtors' Motion to (A) Schedule a Sale Hearing; (B)
Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the
Sale of the Purchased Assets and the Assumption and Assignment of Contracts
Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 198]

26.     Limited Objection of JPMorgan Chase Bank, N.A. to Debtor's Motion to Approve
the Sale of the Purchased Assets and the Assumption and Assignment of the
Contracts Relating to the Purchased Assets, filed September 19, 2008  [Docket No.
197]

27.     Limited Objection of Capgemini Financial Services USA, Inc. to Debtors' (I)
Notice of Assumption and Assignment of, and Amounts Necessary to Cure
Defaults under Contracts and Leases to be Assumed and Assigned to Successful
Purchaser and (II) Cure Notice, filed September 19, 2008 [Docket No.195]

28.     Objection of Lewtan Technologies, Inc. to Proposed Cure Amounts, filed
September 19, 2008 [Docket No. 194]

29.     Limited Objection to Proposed Cure Amount Under Notice of Assumption and
Assignment of, and Amounts Necessary to Cure Defaults Under Contracts and
Leases to be Assumed and Assigned to Successful Purchaser, filed September 19,
2008 [Docket No.193]

30.     Objection of ThruPoint, Inc. to Debtors' Proposed Cure Amount for Assumption
and assignment of Contracts and Leases, filed September 19, 2008 [Docket No.
192]

31.     Cure Amount Objection and Reservation of Rights of Thomson Reuters PLC and
Thomson Reuters Corporation With Respect to Debtors' Motion to (A) Schedule a
Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and
(D) Approve the Sale of the Purchased Assets and the Assumption and

Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 191]

32.    Reservation of Rights and Objection of Dun & Bradstreet to Debtors' Motion to Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008  [Docket No. 189]

33.    Limited Objection and Reservation of Rights of Main Street Natural Gas, Inc. to Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee and (D) Approve the Sale of the Purchase Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 188]

34.    Limited Objection and Reservation of Rights to Debtors' Motion to Approve the Sale of Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 187]

35.    Objection to Assumption and Assignment of, and Amounts Necessary to Cure Defaults Under Contracts and Leases to be Assumed and Assigned to Successful Purchaser, filed September 19, 2008 [Docket No. 186]

36.    Reservation of Rights and Limited Objection of the Chicago Mercantile Exchange to Debtors' Motion to Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets,  filed September 19, 2008 [Docket No. 185]

37.    Protective Objection to, and Reservation of Rights Regarding, (I) Sale Motion (Docket No. 60), (II) Proposed Assumption and Assignment of contracts, and (III) Proposed Cure Amounts in connection Therewith, filed September 19, 2008 [Docket No. 184]

38.    Conditional Objection and Reservation of Rights by Microsoft re Assumption, Assignment and Cure, filed September 19, 2008 [Docket No.182]

39.    Objection of Reliance Globalcom Services, Inc. (f/k/a Yipes Enterprise Services, Inc.) to the Notice of Assumption and Assignment of, and Amounts Necessary to Cure Defaults Under Contracts to be Assumed and Assigned to Successful Purchaser, filed September 19, 2008 [Docket No. 181]

40.    Objection of GLG Partners LP to the Debtors' Motion to Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 179]

41.    Meridian Comp of New York, Inc. D/B/A CHD Meridian Healthcare's Limited Objection and Reservation of Rights to Cure Cost, filed September 19, 2008 [Docket No. 178]

42.    Objection of the Informal LBHI Bondholder Group to the Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up

Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 177]

43.     Limited Objection of Wells Fargo Bank, N.A. and Wells Fargo & Co. to the Motion of the Debtors for an Order Approving the Sale of Certain Assets to Barclays Capital Inc., filed September 19, 2008 [Docket No. 176]

44.     Limited Objection of NetApp, Inc. and Network Appliance Limited to Debtors' Motion Seeking, Among Other Things, an Order Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, filed September 19, 2008 [Docket No. 257]

45.     Limited Objection of HWA 555 Owners, LLC to Proposed Cure Amounts and Assumption and Assignment of Lease, filed September 19, 2008 [Docket No. 173]

46.     Reservation of Rights and Limited Objection of Training The Street, Inc. to Debtors' Motion to Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 172]

47.     Limited Objection and Reservation of Rights of 1301 Properties Owner, LP to Debtor's Motion to Sell Assets and Notice of Assumption and Assignment of, and Amounts Necessary to Cure Defaults Under, Contracts and Leases to Be Assumed and Assigned to Successful Purchaser, filed September 19, 2008 [Docket No. 171]

48.     Objection of FX Alliance, LLC and its Affiliates and Subsidiaries to Debtors' Cure Notice, filed September 19, 2008 [Docket No. 170]

49.     Reservation of Rights and Limited Objection of Hilliard Farber & Co., Inc. to Debtors' Motion to Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 168]

50.     Limited Objection of Bloomberg L.P. and Bloomberg Finance L.P. to the Debtors' Motion to: (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 164]

51.     Objection of Avaya Inc. to Debtors' Notice Of Assumption and Assignment of, and Amounts Necessary to Cure Defaults Under Contracts and Leases to be Assumed and Assigned To Successful Purchaser, filed September 19, 2008 [Docket No.163]

52.     Fannie Mae's Limited Objection to Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets [D.I. # 60], filed September 19, 2008 [Docket No. 162]

53. Limited Objection and Reservation of Rights of Ad Hoc Committee of Bondholders to the Debtors' Motion to: (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 161]

54. Limited Objection and Reservation of Rights of IntraLinks, Inc. to the Debtors' Motion to: (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 160]

55. Limited Objection of Diversified Credit Investments LLC as Agent for the Government of Singapore Investment Corporation PTE, Ltd., to Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 159]

56. AT&T Companies' Limited Objection to Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 158]

57. Limited Objection of DCI Umbrella Fund PLC, an Umbrella Fund with Segregated Liability Sub-Funds, on Behalf of Diversified Credit Investment Fund One to Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008  [Docket No. 157]

58. Iron Mountain Information Management, Inc.'s Reservation of Rights and Limited Objection to Assumption and Assignment of Contracts and Proposed Cure Amounts, filed September 19, 2008 [Docket No. 122]

59. Objection by ABM Industries, Inc., Requesting Segregation of Sales Proceeds Pending an Allocation Hearing, filed September 19, 2008 [Docket No. 151]

60. Objection by Northgate Minerals Corporation Requesting Segregation of Sales Proceeds Pending an Allocation Hearing, filed September 19, 2008 [Docket No. 146]

61. Limited Objection to Proposed Cure Amount and Response of Structure Tone Inc. to Debtors' Motion Seeking, Among Other Things, an Order Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, filed September 19, 2008 [Docket No. 145]

62.     Objection by 4Kids Entertainment Inc. Requesting Segregation of Sales Proceeds Pending an Allocation Hearing, filed September 19, 2008 [Docket No. 140]

63.     Objection by Essex Equity Holdings USA, LLC. M. Brian Maher & Basil Maher Requesting Segregation of Sales Proceeds Pending an Allocation Hearing, filed September 19, 2008 [Docket No. 136]

64.     Objection Of Amber Capital Investment Management to the Debtors' Motion To Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 132]

65.     Limited Objection of Elliott Entities to Motion to Approve Sale, filed September 19, 2008 [Docket No. 130]

66.     Reservation of Rights and Limited Objection of Henegan Construction Co., Inc. to Debtors' Motion to Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No.126]

67.     Limited Objection of BATS Holdings, Inc. to Motion to (A) Schedule a Sale Hearing; (B) Establish Sale Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Related to the Purchased Assets, filed September 19, 2008 [Docket No. 124]

68.     Supplement to Limited Objection of BATS Holdings, Inc. to Motion to (A) Schedule a Sale Hearing; (B) Establish Sale Procedures; (C) Approve a Break-Up-Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Related to the Purchased Assets, filed September 19, 2008 [Docket No. 154]

69.     Objection of the Wholly-Owned Subsidiaries of Verizon Communications Inc. to Debtors Cure Notice, filed September 19, 2008 [Docket No. 118]

70.     TransCanada Pipelines Limited's and Certain Affiliates' Limited Objection to Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 18, 2008 [Docket No. 116]

71.     Objection of Overstock.com, Inc., and Certain Current or Former Shareholders Thereof, and Certain Current or Former Shareholders of Novastar Financial, Inc., to Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sale Procedures; (C) Approve a Break-Up Fee; and (D) Approve The Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 18, 2008 [Docket No. 114]

72.     Limited Objection and Reservation of Rights of SP4 190 S. LaSalle, L.P. to Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures;

(C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 19, 2008 [Docket No. 103]

73. Occidental Energy Marketing, Inc.'s Objection to Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets, filed September 18, 2008 [Docket No. 98]

74. Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, entered September 20, 2008 [Docket No. 258]

75. Notice of Appeal, filed September 21, 2008 [Docket No. 261]

76. Notice of Appeal, as corrected, filed September 22, 208 [Docket No. 262]

77. Asset Purchase Agreement Among Lehman Brothers Holdings, Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc., dated as of September 16, 2008 [Docket No. 280]

78. First Amendment to Asset Purchase Agreement, dated as of September 19, 2008 [Docket No. 280]


Documents Filed in Case No. 08-01419 (JMP)

79. Trustee's Application for Entry of an Order Approving, and Incorporating by Reference for the Purposes of this Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings, Inc. Chapter 11 Proceeding, filed September 19, 2008 [Docket No. 4]

80. Order Approving, and Incorporating by Reference for the Purposes of this Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings, Inc. Chapter 11 Proceeding, entered September 20, 2008 [Docket No. 2]

81. Notice of Appeal, filed September 21, 2008 [Docket No. 3]


Documents Filed in Case No. 08-01420 (JMP)

82. Trustee's Application for Entry of an Order Approving, and Incorporating by Reference for the Purposes of this Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings, Inc. Chapter 11 Proceeding, filed September 19, 2008 [Docket No. 2]

83.    Order Approving, and Incorporating by Reference for the Purposes of this Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings, Inc. Chapter 11 Proceeding, entered September 20, 2008 [Docket No. 3]

84.    Notice of Appeal, filed September 21, 2008 [Docket No. 5]

Transcript

85.    Transcript of Proceeding before the Bankruptcy Court on September 19-20, 2008. [Docket No. 352]

86.    Transcript of Proceeding before the Bankruptcy Court on September 17, 2008. [Docket No. 318]

Date:    October 1, 2008
         New York, New York

By:    /s/  David S. Rosner
       David S. Rosner (DR-4214)
       Andrew K. Glenn (AG-9934)
       KASOWITZ, BENSON, TORRES
        & FRIEDMAN LLP
       1633 Broadway
       New York, New York 10019
       Telephone: (212) 506-1700
       Facsimile:  (212) 506-1800

       Attorneys for Bay Harbour Management L.C., Bay Harbour Master Ltd., Trophy Hunter Investments, Ltd., BHCO Master, Ltd., MSS Distressed & Opportunities 2 and Institutional Benchmarks

# A. 166

**Hearing Date and Time: June 3, 2009 at 10:00 a.m.**
**Objection Deadline: May 29, 2009 at 4:00 p.m.**

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Robert W. Gaffey
William J. Hine
Jayant W. Tambe
Benjamin Rosenblum

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                    :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.,* | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------------x

**MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR AN ORDER,**
**PURSUANT TO FED. R. BANKR. P. 2004, AUTHORIZING**
**DISCOVERY FROM BARCLAYS CAPITAL, INC.**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI" or the "Debtor" and, collectively with its debtor and non-debtor affiliates, "Lehman"), by and through its undersigned counsel, hereby moves for entry of an order pursuant to Federal Rule of Bankruptcy Procedure 2004, authorizing it to conduct certain discovery against Barclays Capital, Inc. ("Barclays").

**PRELIMINARY STATEMENT**

        1.     The Debtor hereby seeks authority to conduct focused discovery against Barclays concerning matters of importance to the estate and its creditors. As explained below,

Barclays was the purchaser of substantially all of Lehman's North American broker-dealer assets

in a sale transaction negotiated, approved and executed within the span of a few days

immediately following LBHI's filing for bankruptcy (the "Sale Transaction"). The requested

discovery relates to that highly expedited transaction, and related matters, and is specifically

focused on whether the estate received appropriate value.

2.      Since the completion of this expedited negotiation and sale of one of the

largest investment banks in the world, the Debtor has become aware of apparent material

discrepancies relating to the liabilities Barclays was to assume and the benefits LBHI (or related

entities) was to receive under this and related transactions. As noted below, these apparent

discrepancies concern, *inter alia*, Barclays' obligation to pay employee bonuses and certain

contract cure amounts (both of which materially impacted the value of the sale) as well as to

certain asset transfers related to repurchase transactions conducted during the week the Sale

Transaction was negotiated. In the aggregate, these apparent discrepancies may have resulted in

a windfall to Barclays at the expense of the estate, its creditors and other parties in interest, in an

amount that could reach into the billions of dollars. As a result, the Debtor now seeks discovery

from Barclays to enable the estate to properly review these issues and determine Debtor's rights

and obligations (and to assess whether it may have claims) under these transactions.

## FACTUAL BACKGROUND

**A.      The Bankruptcy Proceeding(s)**

3.      Starting on September 15, 2008 and periodically thereafter, LBHI and

certain of its subsidiaries (collectively, the "Debtors") commenced in this Court voluntary cases

under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"). The Debtors'

chapter 11 cases have been consolidated for procedural purposes and are being jointly

administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

4.      On September 17, 2008, the U.S. Trustee appointed the statutory

committee of unsecured creditors pursuant to Section 1102 of the Bankruptcy Code (the

"Creditors' Committee").  The Debtor understands that the Creditors' Committee may also be

looking into some of the concerns that have prompted this motion.

5.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

6.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.      The LBHI-Barclays Sale Transaction**

7.      Before LBHI's bankruptcy filing, Barclays had discussed with Lehman a

possible acquisition of all its assets, but no transaction was consummated.  Just a few hours after

LBHI filed for bankruptcy, however, Barclays approached representatives of Lehman seeking to

purchase its North American broker-dealer operations.  Barclays, LBHI and LB 745 LLC (the

Lehman entity that owned the real estate assets being sold) then negotiated this post-bankruptcy

sale very quickly as the market value of the LBHI assets in question was declining by many

millions of dollars every day.  Within one day, LBHI, LB 745 LLC and Barclays came to an

agreement on the terms of the contemplated sale and their agreement was embodied in an Asset

Purchase Agreement, dated September 16, 2009 (the "APA")).

8.      The next morning, September 17, 2008, LBHI and LB 745 LLC filed a motion seeking Court approval for the sale (the "Sale Motion").  On the afternoon of September 17, 2009, the Court heard argument on preliminary motions filed by the Debtors, at which hearing the purported value of the proposed Sale Transaction was first presented to the Court in connection with its approval of Barclays' break-up fee.  Two days later, on September 19, 2009, the Court held a hearing on the Sale Motion, during which the terms of the proposed transaction and the need for expedited approval of same were further described to the Court and to creditors of the estate.

9.      Among other things, the Court was told at these hearings that, as part of the value given by Barclays in the transaction, Barclays would assume in the aggregate $2 billion in liabilities to pay bonus compensation to Lehman employees who transferred to Barclays and would also assume approximately $1.5 billion in contract cure costs.  (*See, e.g.,* 9/19/08 Hearing Tr. at 100:22-25 (employee compensation); *id.* at 101:1-4 (cure costs); 9/17/08 Hearing Tr. at 23:5-24:8 (cure costs))  In the hearings related to the Sale Transaction, the Court took these assumed liabilities, in full, into account in assessing the value of the transaction to the estate.  (9/17/08 Hearing Tr. at 23:5-24:8)  Ultimately, based on the record before it, the Court found that these assumptions of liabilities by Barclays were integral to the Purchase Agreement.  (Sale Order at 10)

10.     Barclays' assumption of billions of dollars in liabilities for bonus compensation and contract cures was a critical component of the consideration Barclays was to give in the Sale Transaction in return for the Debtors' assets, but it appears that these assumed liabilities were significantly overstated or inaccurate and, further, that Barclays may not have actually paid these obligations.  This raises serious questions regarding whether Barclays'

purported assumption of up to $4.25 billion in liabilities, an integral component of the Sale

Transaction, was genuine, adequate and fair consideration for the asset purchase as approved by

the Court.  Moreover, it appears that Barclays' assumption of these liabilities may have been

illusory, in that billions of dollars of Lehman assets were transferred to Barclays in connection

with certain repurchase agreements not addressed in the Purchase Agreement, which effectively

nullified the liabilities Barclays purported to assume under the Purchase Agreement.

11.     In the Sale Motion and at the September 19 hearing, the Debtor explained

the unusual circumstances surrounding the proposed Sale Transaction – in particular, the fact that

time was "of the essence" because its assets were losing many millions of dollars in value on a

daily basis.  (Sale Motion ¶¶ 6-13; 9/19/08 Hearing Tr. at 244:17-24)  In light of these "exigent

circumstances" and the "wasting nature" of the assets, this Court approved the Sale Transaction

on a highly expedited basis with little chance for creditors or anyone else to thoroughly review

the deal.  (*See* Sale Order ¶¶ C and D)

12.     Accordingly, on September 20, 2008, the Court entered an order (the "Sale

Order") approving the Sale Transaction, including the assumed liabilities.  The APA

subsequently was modified by a First Amendment Clarifying Asset Purchase Agreement, dated

as of September 19, 2008 ("First Amendment"), and a letter agreement dated as of September 20,

2008 (the "Clarifying Letter," collectively with the APA and First Amendment, the "Purchase

Agreement").

**C.     Newly Uncovered Apparent Discrepancies**

13.     The Sale Transaction closed on Monday, September 22, 2008.  Since then,

the Debtor has become aware of certain apparent discrepancies involving the terms of the Sale

Transaction.

14.    In short, this Bankruptcy Rule 2004 motion seeks information concerning three key aspects of the parties' dealings in connection with this unprecedented sale.

15.    First, the Purchase Agreement provided that Barclays would pay employee bonuses (accrued as of August 31, 2008) for Lehman employees who transferred to Barclays. Section 9.1(c) of the Purchase Agreement referenced, but did not attach, a certain "financial schedule delivered to" Barclays on September 16, 2008.  A copy of such schedule appears to show the accrual amount for employee compensation to have been $2.0 billion.  (Copy annexed as Exhibit A)  Barclays' assumption of this liability was presented to and relied upon by the Court as an integral component in the value of the transaction and portrayed as such by the Court in connection with its approval of the Barclays' proposed break-up fee (in comparison to the notional value of the transaction) as well as its issuance of the Sale Order.  (*See, e.g.,* 9/17/08 Hearing Tr. at 23:5-24:8; 9/19/08 Hearing Tr. at 100:22-25).  Under Section 9.1(c) of the Purchase Agreement, Barclays obligation to pay these bonuses, in the stated accrued amount, was mandatory.  The Debtor has attempted to conduct a preliminary review of this issue but has no information as to the bonuses Barclays has actually paid to former Lehman employees. Moreover, it appears that the expenses on Lehman's books for up to August 2008 for the transferred employees (reflecting the cash, not the equity, component of bonuses) was in the range of $600-700 million, which is substantially less than the $2-2.5 billion amounts considered by the Court for 2008 bonuses.  (*See id.*)

16.    If there is, in fact, a large discrepancy between what Barclays paid and what the Court considered, understanding and reconciling such discrepancy is of critical importance to the Debtor and its stakeholders as it goes directly to the value the estate received in the Sale Transaction.  In the Sale Transaction, as part of the overall consideration Barclays

was to have given, Barclays was given credit for the assumption of a $2 billion obligation to transferred Lehman employees.  Exclusive of amounts paid for real estate, and the alleged "credits" for compensation and cure amounts, Barclays paid only $250 million in cash for virtually all of Lehman's North American broker/dealer businesses.  If, in fact, the accrual for bonuses was overstated, or Barclays has paid less than its full obligation, it is possible there may be claims the estate should assert to recover the difference and further investigation is warranted to determine if that is so.

17.    Second, this Court's approval of the Sale Transaction was premised on Barclays' undertaking an obligation to pay certain contract "cure" amounts described as being in the range of $1.5-$2.25 billion.  The above-referenced financial statement listed the accrual for such "cures" at $2.25 billion (*see* Exhibit A hereto), although for some reason (not yet clear to the Debtor) a $1.5 billion figure was presented to the Court during the Sale Motion.  (*See* 9/19/08 Hearing Tr. at 101:1-4; *see also* 9/17/09 Hearing Tr. at 23:5-24:8)  Either way, there appears to be a large discrepancy between these stated amounts and the actual "cure" costs ultimately paid by Barclays.  Indeed, the closing date contract cure amounts publicly posted on September 19th and October 1st were in the range of only $100-$200 million.  And based on Debtor's preliminary analysis it appears that Barclays has paid slightly more than $200 million (as of 2/24/09) in contract cure costs.  The requested discovery seeks information relating to this apparent material discrepancy concerning the consideration Barclays was to have given in the Sale Transaction.

18.    Third, there appear to be several issues arising from certain repurchase agreements entered into between LBI and Barclays and related matters.  The Debtor is now conducting a preliminary review of the assets and liabilities transferred to Barclays under these

agreements or related arrangements, including (i) billions of dollars worth of collateral transferred pursuant to a certain repurchase transaction between Barclays and LBI on September 18, 2008, (ii) assets transferred upon the closing of the Purchase Agreement, and (iii) assets transferred pursuant to the December 5, 2008 Settlement Agreement between JPMorgan Chase Bank N.A., Barclays, and LBI's Trustee in the SIPA liquidation.  This review seeks to determine what assets were transferred, whether the Debtor received fair consideration for the assets, and whether the assets transferred in connection with the repurchase agreements were, in fact, improperly transferred to offset the liabilities Barclays assumed as part of the consideration it gave in the Sale Transaction.  Reconciling potential discrepancies related to these transfers is important to the Debtor and its stakeholders, and the requested discovery is needed to allow for a complete review of these complex transactions.

19.     The apparent large size of these discrepancies appears more troubling to the Debtor when considered in connection with Barclays' recent announcement of its financial results for the year ending December 31, 2008.  In that regard, Barclays announced that it had secured a £2.262 billion gain from its acquisition of Lehman's North American business, just over two months after closing the Sale Transaction (and during a period when the global economy was essentially frozen), suggesting that excess assets may have been given to Barclays.

20.     In addition to documents concerning the matters described above, the Debtor also will have a need to take testimony from certain former Lehman executives who are now employed by Barclays and thus unavailable to the Debtor.  These executives include, but are not limited to, persons who were involved in the negotiations of the Sale Transaction and/or persons the Debtor understands may have negotiated lucrative bonus agreements with Barclays before the transaction closed.

**D.      Barclays Will Not Voluntarily Provide This Information**

21.      The Debtor has tried to get Barclays to provide voluntarily the information

sought in this motion but without success.

22.      On February 19, 2009, the Debtor sent to Barclays a letter requesting

information about these employee bonus and contract cure issues.  (Copy annexed as Exhibit B)

23.      Initially, Barclays responded with a letter that, among other things,

suggested the Debtor should wait until other, possibly similar, inquiries were conducted.  (*See*

Exhibit B)

24.      The Debtor retained (subject to Court approval) special counsel to look

into these issues, but its attempts to obtain documents have also been rebuffed.

25.      On April 13, 2009, Debtor's special counsel wrote to Barclays counsel

requesting specific documents.  (Copy annexed as Exhibit C)

26.      Through its attorneys, *inter alia*, Barclays demanded that the Debtors'

inquiries must "not duplicate the Examiner's work."  (Copy annexed as Exhibit D)

27.      In subsequent correspondence on April 24, and at a meeting on May 7,

2009, Debtor's special counsel offered cooperation in trying to avoid excess burden and

duplication of efforts, but explained that the Debtor, with its responsibility to investigate whether

claims should be made to maximize recovery for the benefit of creditors, had both the right and

the obligation to conduct its own inquiries.  (Copy of correspondence annexed as Exhibit E)

28.      Debtor's special counsel spoke with Barclays' counsel again on May 13,

2009, but no satisfactory progress was made toward resolving this issue.  Although Barclays

professed a general desire to provide some of the requested discovery and some "aggregate"

information in a voluntary manner, it refused to commit to any deadlines for doing so, and over a

month after specific categories of documents were requested, said it cannot be specific as to what

it will produce.  On May 15, Barclays finally said it would produce to the Debtor copies of the

documents Barclays has already produced to the Creditors' Committee, which is only one of the

categories Debtor requested, but also with the proviso that a confidentiality agreement must first

be reached.[1]

29.    Thus, over three months have passed since the Debtor first requested

information from Barclays about these matters and Barclays has produced nothing to date**.**

Accordingly, the Debtor files this motion as this is the most efficient means for moving this

discovery ahead.

## ARGUMENT

### A.    The Applicable Legal Standards

30.    Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in

interest, the court may order the examination of any entity."  FED. R. BANKR. P. 2004(a).  Under

this rule, the "attendance of an entity for examination and the production of documentary

evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses

at a hearing or trial."  FED. R. BANKR. P. 2004(c).  In turn, Bankruptcy Rule 9016 makes Rule 45

of the Federal Rules of Civil Procedure (governing subpoenas) applicable in cases under the

Bankruptcy Code.  FED. R. BANKR. P. 9016.

31.    A debtor is a "party in interest" entitled to seek discovery under

Bankruptcy Rule 2004.  *See, e.g.*, *In re Pub. Serv. Co. of New Hampshire*, 91 B.R. 198, 199

(Bankr. D. N.H. 1988) (granting debtor's motion for discovery under Bankruptcy Rule 2004); *In*

*re Sun Med. Mgmt., Inc.*, 104 B.R. 522, 524-25 (Bankr. M.D. Ga. 1989) (same); *see also* 9

---

[1]    Debtors' counsel had asked at the May 7 meeting for a confidentiality proposal, and offered to work from
Barclays form of agreement, to avoid having that be a reason for further delay.  To date, Barclays has not sent a
draft, although it already has a confidentiality agreement finalized with the Creditors Committee.

*Collier on Bankruptcy* ¶ 2004.02[6] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.

2006) ("Parties in interest in a bankruptcy case generally include . . . the debtor . . . ."). The

debtor is entitled to seek such discovery even before the start of an adversary proceeding or

contested matter. *E.g.*, 9 *Collier on Bankruptcy* ¶ 2004.01[1] (Alan N. Resnick & Henry J.

Sommer eds., 15th ed. rev. 2006) ("No contested matter or adversary proceeding need be

instituted as a prerequisite" to discovery under Bankruptcy Rule 2004). Indeed, Bankruptcy

Rule 2004 is specifically designed for discovery in advance of contested matters and adversary

proceedings. *See, e.g.*, *In re Bakalis*, 199 B.R. 443, 448 (Bankr. E.D.N.Y. 1996).

   32. An examination under Bankruptcy Rule 2004 may relate "to the acts,

conduct or property or to the liabilities and financial condition of the debtor, or to any matter

which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."

FED. R. BANKR. P. 2004(b). And while some courts require a showing of good cause if the target

of the requested discovery objects, *see, e.g., In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y.

2004); *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992), the express language of

Bankruptcy Rule 2004 does not impose a "good cause" standard or other burden on the movant.

   33. In the end, the decision whether to authorize the requested discovery is

within the sound discretion of this Court. *See, e.g.*, *In re Hammond*, 140 B.R. at 200.

**B. The Debtor Is Entitled to Discovery of the Requested Information**

   34. The Debtor is, of course, working to preserve and maximize the value of

its estate for the benefit of all stakeholders. To that end, the identification of any assets that are

potentially property of the estate and the evaluation and, if appropriate, prosecution of potential

claims relating to such assets are important to ensuring that all available sources of significant

value are identified and pursued. The Debtor's ability to investigate the circumstances

surrounding the Sale Transaction and repurchase agreements is therefore critical to determining

whether it has any potential claims, causes of action, or remedies with respect to these extraordinary transactions.

35.     Prompt discovery of information relating to the Sale Transaction and related dealings (the "Requested Information") is important to permit the Debtor and its advisors fully to understand the complex and expedited Sale Transaction, so they can try to identify and possibly pursue property of the estate or raise potentially valuable claims and causes of action for the benefit of the estate and its stakeholders.  Discovery of the Requested Information would allow the Debtor to (a) evaluate its rights and obligations with respect to Barclays and the Sale Transaction and repurchase agreements; (b) investigate the facts, circumstances and events that led to these transactions; (c) identify property potentially in the possession of non-debtor parties that may constitute property of the estate; and (d) determine whether the Debtor has any legal or other claims arising under these transactions.

36.     As noted in the enclosed proposed order, discovery of the Requested Information should include both document production and deposition testimony.  The Debtor's document requests to Barclays are attached hereto as Exhibit F and are incorporated herein by reference (the "Discovery Requests").  The Debtor expects that it will also need to conduct interviews or depositions of certain Barclays employees (many of whom are former Lehman employees).

37.     To allow for this discovery to proceed efficiently, the Debtor has narrowly tailored its requests to focus on the apparent discrepancies noted above.  Document Requests 1-7 and 20 (*see* Exhibit F at 1-2, 4) are designed to elicit general background information concerning the Sale Transaction, the parties' negotiations, disclosures made to the Court, and the difficult financial situation in which Lehman found itself immediately before the bankruptcy filings.  In

the current circumstances, the Debtor is at a severe disadvantage in trying to reconstruct the

discussions between LBHI and Barclays because virtually all the individuals that represented

LBHI in those discussions have now left the company and are employed (or were employed for a

time) by Barclays.  And, of course, the individuals that negotiated the deal for Barclays are or

were Barclays employees as well.  These general requests are necessary to provide the requisite

background information to allow the Debtor to fully understand what happened during these

critical two weeks in September 2009.

> 38.    Document Requests 8-11 (*see* Exhibit F at 2) relate to the employee bonus

accrual issue.  These requests are designed to elicit information about the parties' expectations as

to the amounts owed by LBHI in employee bonuses, their understanding as to the purported

value that Barclays' assumption of this liability added to the deal, the amounts Barclays has now

actually paid in employee bonuses, and any separate bonus agreements Barclays may have made

with individuals.

> 39.    Similarly, Document Requests 13-15 (*see* Exhibit F at 2-3) relate to

apparent discrepancies associated with the cure amount accruals that formed an integral part of

the deal and the amounts Barclays ultimately paid in contract cures.  These requests are

straightforward and relate directly to the parties' pre-contractual expectations, how the accrual

amounts were calculated and agreed upon, and Barclays' payment of cure amounts after the

closing.

> 40.    Document Requests 16-19 (*see* Exhibit F at 3) relate to the so-called

repurchase transactions entered into by Barclays, Lehman entities, and the Federal Reserve and

addressed in the Clarifying Letter and related documents.  These requests seek information about

the assets transferred to Barclays under these and related transactions and whether the Debtor, in

fact, received fair value under these complex transactions.

41.    Request 20 is proposed in the interest of efficiency.  It requests documents

Barclays may have produced to the Creditors' Committee about these issues.  Hence, it is

designed to reduce Barclays' burden in responding to possibly duplicative requests.

42.    In the end, the Requested Information is well within the scope of

Bankruptcy Rule 2004.  It clearly relates to "property or to the liabilities and financial condition

of the debtor, [and] . . . matter[s] which may affect the administration of the debtor's estate."

FED. R. BANKR. P. 2004(b).  The Debtor's examination of its rights and obligations under the

Purchase Agreement and related repurchase agreements, and the identification of estate property

and potential claims arising under these expedited and unusual deals clearly fall within the scope

of this definition.  In addition, without question, Barclays is subject to Rule 2004 discovery, *see*

FED. R. BANKR. P. 2004(a) (allowing examination of "any entity"), particularly since it was

intimately involved in these transactions and was the ultimate beneficiary of these asset transfers.

43.    Further, given the size and strategic importance to the estate of the Sale

Transaction and related repurchase and other agreements, any valid claim or defense arising from

these complex deals could be substantial.  At the time of the Sale Transaction, Lehman was the

fourth largest investment bank in the United States.  These extraordinary transactions involved

the sale of substantially all of Lehman's U.S. and Canadian investment banking and capital

markets business.  This discovery is critical to the Debtor's efforts to maximize values for all its

stakeholders as the discrepancies noted above appear to involve very large dollar amounts.  The

fact that a deal of this size was done in less than a week, under most extraordinary

circumstances, only serves to underscore the need to examine the transaction closely and to address apparent discrepancies that might provide a recovery for the estate.

44.    Finally, the information the Debtor seeks is not readily available without the requested discovery.  Most of the former Lehman employees with relevant knowledge (including those who negotiated the deal on behalf of LBHI) became employees of Barclays. Many of these Barclays employees are the only individuals with knowledge of critical facts relating to the Sale Transaction and the repurchase and related agreements.  Similarly, many critical documents concerning the liabilities incurred by Barclays and the benefits conferred on LBHI are solely within Barclays' control.   And, as noted, Barclays will not voluntarily provide this information to the Debtor.

45.    For these reasons, the Debtor is entitled to take the discovery it seeks in this motion.

## NOTICE

46.    No trustee has been appointed in these chapter 11 cases. The Debtor has served notice of this motion in accordance with the procedures set forth in the order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) counsel for the Creditor's Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel for Barclays; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtor submits that no other or further notice need be provided.

WHEREFORE, the Debtor respectfully requests that the Court (a) enter an order substantially in the form attached hereto as Exhibit G, granting the relief requested herein; and (b) grant such other and further relief to the Debtor as the Court may deem proper.

Dated:  May 18, 2009
       New York, New York

Respectfully submitted,


 /s/ Robert W. Gaffey
Robert W. Gaffey
William J. Hine
Jayant W. Tambe
Benjamin Rosenblum
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

ATTORNEYS FOR DEBTOR AND DEBTOR
IN POSSESSION

# EXHIBIT A

## ASSETS

| | |
|---|---|
| Gov & Ag | $40.0 |
| Commercial Paper | 1.1 |
| Mortgages | 2.7 |
| Total Corp Debt | 4.9 |
| Corp Equity | 8.8 |
| Derivatives | 4.5 |
| Cash | 0.7 |
| **Total** | **$62.7** |
| Collateralized ST Agr | 10.0 |
| Receivables | 0.0 |
| Other Assets | 0.0 |
| Inv In Con Subs | 0.0 |
| Due From Subs | 0.0 |
| **Total** | **10.0** |
| **Adj. Total Assets** | **$72.65** |

## LIABILITIES

| | |
|---|---|
| ST Borrowings | $0.0 |
| Gov & Ag | 21.0 |
| Commercial Paper | 0.0 |
| Mortgages | 0.0 |
| Corp Debt | 2.1 |
| Corp Equities | 6.3 |
| Derivatives | 4.5 |
| **Total** | **$33.9** |
| Collateralized ST Fund | 34.5 |
| Payables | 0.0 |
| Deposits | 0.0 |
| Due To Subs | 0.0 |
| Sub Notes | 0.0 |
| **Total** | **34.5** |
| Cure prk | 2.25 |
| Comp | 2.0 |
| **Total** | **68.4** |
| **Total** | **$72.65** |

9/16/08 – FZ∨AL

# EXHIBIT B

# LEHMAN BROTHERS HOLDINGS INC.

BRYAN MARSAL
CHIEF EXECUTIVE OFFICER

February 19, 2009

Rich Ricci
Jonathan Hughes
Barclays Capital Inc.
200 Park Avenue
New York, NY 10166

Dear Rich and Jonathan:

I am writing with respect two matters relating to the sale of Lehman Brothers's U.S. and Canadian investment banking and capital markets business to Barclays Capital as to which we need additional information as soon as possible. I'll outline them briefly below.

## I. Bonus Accrual

The contract provides, in essence, that Barclays Capital would be responsible for the payment of the accrued bonus amount as of August 31, 2008 for the U.S./Canadian investment banking/capital markets business, and the agreement referenced a balance sheet provided to Barclays Capital indicating that this amount was $2.0 billion. We have now had a chance to conduct a preliminary review of the accrual for bonuses as of August 31, 2008, and it appears that the consolidated global accrual on the books of LBHI as of that date was only $1.3 billion. Although we are continuing our review, it appears that only approximately 55% of the global accrual relates to employees transferred to Barclays Capital. Accordingly, it appears that the liability assumed by Barclays Capital may be closer to $0.7 billion than the $2.0 billion provided for in the transaction.

Given the scale of the discrepancy between what was referenced in the agreement and the actual accrual on the consolidated books of Holdings for the personnel assumed, reconciliation of this discrepancy is critical prior to the payment by Barclays Capital of any bonuses in excess of $0.7 billion. While Barclays Capital should be essentially indifferent from a financial point of view as to whether it pays this amount as bonus or a reduction in the purchase price for the business, this discrepancy is significant for the LBHI estate.

## II. Cure Amounts

The September 16th balance sheet initialed by the parties indicated that $2.25 billion was accrued for potential cure costs in relation to contracts to be assumed and assigned post closing. While uncertainties about this number plainly existed prior to closing, to date we understand that approximately only $0.2 billion has been spent on such cures and that the latest estimate of the amount to be ultimately paid is dramatically less than was expected.

Again, given the size of the discrepancy between the September 16th number and the actual projected cure liability, it's important to us that we reconcile and understand the differential.

The above two items are clearly material to the debtor estates and we welcome your assistance in ensuring that our understanding of the books and records of the various referenced estates, and of the sales contract, is correct. You may also have supporting documentation or analyses that explain these discrepancies. If that is not possible, however, we reserve our rights to seek judicial relief based on the material differences between the projected and actual liabilities for these categories of expenses.

We are available to meet at your earliest convenience and would hope that you are available to discuss both of these issues within the next several days.

Best regards,

Bryan Marsal

cc:     Viktor I. Lewkow (Cleary Gottlieb Steen & Hamilton LLP)
        David Leinwand (Cleary Gottlieb Steen & Hamilton LLP)
        Duane McLaughlin (Cleary Gottlieb Steen & Hamilton LLP)
        Mitchell S. Eitel (Sullivan & Cromwell LLP)
        Jay Clayton (Sullivan & Cromwell LLP)

# BARCLAYS CAPITAL

200 Park Avenue
New York, NY 10166
USA

Tel    +1 (212) 412 4000

February 23, 2009

**VIA FACSIMILE**
Bryan Marsal
Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY 10020
Fax: (212) 526-2230

Dear Bryan:

I write in response to your February 19, 2009 letter addressed to Rich Ricci and me.

As we have been throughout the course of the transaction, we remain willing to discuss factual issues that may be helpful to you in administering the estate. We note, however, that a number of other parties, including the examiner and the Creditor's Committee, are also undertaking a review of the sale transaction, and we would therefore want our discussions with you to include the topic of how Barclays can avoid addressing queries relating to the APA and the sale on a piecemeal basis.

While we look forward to discussing these factual issues with you, we reject any suggestion that there is a basis for any adjustment to the APA, or additional payments from Barclays to Seller, or that Barclays' interests should otherwise be adversely affected in any way by any supposed "discrepancy" relating to the September 16 schedule. We view your reservation of a supposed right to seek judicial relief as reflecting a serious misunderstanding of the facts and the APA.

Finally, as a housekeeping matter, we note that your letter was directed to the Barclays notice parties set forth in Section 13.7 of the APA. Accordingly, in this response, we have copied the Seller notice parties, with the exception of Steven Berkenfeld, who is now employed by Barclays. We assume it is your intention that you will replace Mr. Berkenfeld as the Seller notice party, but would ask that Seller consider giving Barclays a formal notice so specifying.

Very truly yours,

Jonathan Hughes

cc (via fax):    Rich Ricci, Barclays Capital
          Thomas Roberts, Michael Lubowitz and Harvey Miller,
               Weil Gotshal & Manges LLP (Fax: 212-310-8007)
          John Finley and Andrew Keller,
               Simpson Thatcher & Bartlett LLP (Fax: 212-455-2502)

# EXHIBIT C

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number: (212) 326-7838
rwgaffey@jonesday.com

JP636767                                    April 13, 2009
125426-600002

Lindsee P. Granfield, Esq.
Cleary, Gottlieb, Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006

Jonathan D. Schiller, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave., NW
Washington, DC 20015

     Re:    *In re Lehman Brothers Holding Inc., et al.*, Case No. 08-13555 (JMP)

Dear Ms. Granfield and Mr. Schiller:

We are Special Counsel to Lehman Brothers Holdings, Inc. (the "Estate") in the above-captioned chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors and debtors in possession.

We are working on obtaining clarity and understanding of the sale transaction among LBHI, Lehman Brothers Inc. ("LBI") and LB 745 LLC (collectively with LBHI and LBI, "Lehman"), on the one hand, and Barclays Capital Inc. ("Barclays"), on the other hand (the "Lehman-Barclays Transaction"), and to follow-up on requests made by the Estate to Barclays in its letter dated February 19, 2009 to Mr. Hughes. In this regard, the Estate asks that Barclays provide documents responsive to the requests in the attached Schedule A.

It is our hope that we can have expeditious production of the requested materials on a cooperative basis, rather than having to burden Judge Peck with motions. Please let us know by April 20, 2009 whether Barclays will agree to produce on that basis and, if so, when it will be in a position to supply the documents.

It is also likely that, after reviewing the documents, we will want to interview or take testimony from several former Lehman employees we understand are now employed by Barclays, including Steven Berkenfeld, Ian Lowitt, Gerald Donini, Eric Felder, Paul Parker, Ros Stephenson, Jeffrey Weiss, Larry Wieseneck, Steven Hash and Joseph Gatto. We may add others to this list as matters progress but, in the first instance, please let us know whether each of these people is still in the employ, or under contract with, Barclays.

JONES DAY

Lindsee P. Granfield, Esq.
Jonathan D. Schiller, Esq.
April 13, 2009
Page 2

We appreciate your consideration of this matter.

Very truly yours,

Robert W. Gaffey

Attachment

SCHEDULE A

The Estate makes the following requests for the production of documents:

REQUEST NO. 1

All documents concerning any discussions, meetings or communications between Barclays, any other potential acquirers, the Federal Reserve, SEC, Treasury Department or any other government entity concerning the financial difficulties or problems at Lehman during the three month period prior to LBHI's bankruptcy filing on September 15, 2008 through September 30, 2008.

REQUEST NO. 2

All documents concerning any discussions or negotiations between Barclays and Lehman (or their respective agents and counsel) regarding any proposed purchase, sale, merger, transfer or similar transaction in which some or all of the assets, liabilities or business of Lehman or any Lehman entity was to be sold, acquired, transferred or assumed to or by Barclays or any Barclays entity, including but not limited to any negotiations or discussions during the month preceding LBHI's bankruptcy filing on September 15, 2008 and through September 30, 2008.

REQUEST NO. 3

All documents concerning any due diligence performed by or on behalf of Barclays, any Barclays entity, or any of their agents in connection with the September 2008 Lehman-Barclays Transaction or any proposed or contemplated transaction described in Request No. 2 above, including any investigation, document review, employee interviews, research, discussion or analysis conducted by Barclays with respect to the assets, liabilities, valuation, projections, budgets or expected viability of Lehman or any Lehman entity.

REQUEST NO. 4

All documents concerning the negotiation, drafting, execution and implementation of the Lehman-Barclays Transaction documents, including (i) the Asset Purchase Agreement, dated September 16, 2009, including any amendments, schedules or annexes thereto and the one-page schedule, dated September 16, 2008, initialed by Steven Berkenfeld, and referenced in section 9.1(c) (collectively, the "Original APA"); (ii) the First Amendment to the Original APA, dated September 19, 2008 ("First Amendment"); (iii) the clarification letter, dated as of September 20, 2008 ("Clarification Letter"); (iv) the Transition Services Agreement, dated September 22, 2009 ("TSA"); and (v) any related contracts, agreements or arrangements.

REQUEST NO. 5

All documents concerning the schedule dated September 16, 2008 referenced in section 9.1(c) of the Original APA, including but not limited to all documents concerning

the data upon which that schedule was based, the manner in which it was prepared, all drafts of the schedule, all correspondence concerning the schedule, and all signed versions of the schedule.

REQUEST NO. 6

All documents concerning Assumed Liabilities (as defined in the Original APA), including documents reflecting the specific liabilities assumed by Barclays or extinguished in the Lehman-Barclays Transaction, the value attributed to such Assumed Liabilities as of the date of the Original APA, the value attributed to such Assumed Liabilities as of the date of the Clarification Letter and the value Barclays assigned to the Assumed Liabilities on or after the date the Lehman-Barclays Transaction closed.

REQUEST NO. 7

All documents concerning any press release or other public statements issued by Barclays, investor conference call held by Barclays (including that held on September 17, 2008), or other public filing or communication to investors issued by Barclays concerning: (i) the Lehman-Barclays Transaction, (ii) the amounts, types and value of assets and liabilities to be acquired or assumed by Barclays as a result of the Lehman-Barclays Transaction, or (iii) the profits or other benefits Barclays received or expects to receive as a result of the Lehman-Barclays Transaction.

REQUEST NO. 8

All documents concerning Barclays' payment, deferral, alteration, renegotiation, revision, or non-payment of bonuses (cash or otherwise), severance or other forms of compensation to former LBI or Lehman executives or other employees who obtained or sought to obtain employment at Barclays following the Lehman-Barclays Transaction, including (i) any agreements, contracts or other arrangements (actual or proposed) between Barclays and any former Lehman employees, and (ii) documents sufficient to show the recipients and amounts of bonuses or other forms of compensation actually paid or committed to be paid to each former LBI or Lehman executive or employee that transferred to or was employed by Barclays after the Lehman-Barclays transaction. This request includes, but is not limited to, bonuses and severance paid under section 9 of the Original APA.

REQUEST NO. 9

All documents concerning any negotiations, promises, assurances, enticements, commitments or discussions at any time prior to September 22, 2008 concerning bonuses, severance or other forms of compensation, or other things of value to be paid by Barclays to former LBI or Lehman executives or employees who obtained or sought to obtain employment at Barclays following the Lehman-Barclays Transaction or the bankruptcy filing of any Lehman entity.

REQUEST NO. 10

All documents reflecting communications during the period from September 1, 2008 to September 30, 2008 concerning (a) the Lehman-Barclays transaction or (b) employment by Barclays after the Lehman-Barclays transaction between Barclays and (1) Steven Berkenfeld, (2) Gerald Donini, (3) Eric Felder, (4) Joseph Gatto, (5) Steven Hash, (6) Ian Lowitt, (7) Herbert McDade, (8) Paul Parker, (9) Ros Stephenson, (10) Jeff Weiss, or (11) Larry Wieseneck.

REQUEST NO. 11

All documents concerning any employment agreements, compensation agreements, bonus agreements, severance agreements, consulting agreements or other agreements concerning compensation between Barclays and (1) Steven Berkenfeld, (2) Gerald Donini, (3) Eric Felder, (4) Joseph Gatto, (5) Steven Hash, (6) Ian Lowitt, (7) Herbert McDade, (8) Paul Parker, (9) Ros Stephenson, (10) Jeff Weiss, or (11) Larry Wieseneck.

REQUEST NO. 12

All documents concerning Barclays' accounting, valuation, expensing or accruing for any bonuses (cash or otherwise), severance or other forms of compensation that Barclays paid or is obligated or expects to pay to former LBI or Lehman executives or employees who obtained or sought to obtain employment at Barclays following the Lehman-Barclays Transaction or the bankruptcy filing of any Lehman entity.

REQUEST NO. 13

All documents concerning Barclays' payment, deferral, alteration, renegotiation, revision, or non-payment of cure amounts owed or claimed to be owed to third party vendors or other non-Lehman entities under any contracts originally entered into by Lehman entities and transferred to or assumed by Barclays pursuant to the Original APA, the First Amendment, the Clarification Letter or the TSA ("Contract Cure Amounts"). This request includes any agreements, contracts or other arrangements (actual or proposed) between Barclays and any third party vendors or non-Lehman entities concerning Contract Cure Amounts.

REQUEST NO. 14

All documents concerning Barclays' decision to categorize, designate or otherwise treat any contracts. commitments or agreements as "Closing Date Contracts" or "Designated Contracts" or "Rejected Contracts" (as defined under the Original APA or as referred to in the orders of the Bankruptcy Court). This request includes documents sufficient to identify the contracts and the third-party vendors and amounts in issue under them.

REQUEST NO. 15

All documents concerning Barclays' accounting, valuing, expensing and accruing for Contract Cure Amounts (actual or proposed), including documents sufficient to show the Contract Cure Amounts Barclays actually paid or is obligated or expects to pay to all third party vendors or other non-Lehman entities.

REQUEST NO. 16

All documents concerning "Purchased Assets" (as defined in the Original APA and Clarification Letter), including schedules reflecting the specific assets purchased or transferred to Barclays, the value attributed to such Purchased Assets as of the date of the Original APA, and the value attributed to such Purchased Assets as of the date of the Clarification Letter or thereafter.

REQUEST NO. 17

All documents concerning the negotiating, booking, executing, funding, pledging of collateral, or repurchasing of collateral in connection with any transaction between LBI and Barclays transacted on or after September 15, 2008 pursuant to any repurchase agreement ("Repo Transactions"). This request includes any agreements, correspondence, confirmations setting forth the terms of the Repo Transactions, blotters, spreadsheets, valuations, documents relating to settlement issues, or other related documents.

REQUEST NO. 18

All documents concerning the negotiation, drafting, execution and implementation of the Settlement Agreement dated December 5, 2008 (the "Settlement Agreement").

REQUEST NO. 19

All documents concerning any Lehman securities transferred to Barclays in connection with the Repo Transactions, the Lehman-Barclays Transaction, or the Settlement Agreement ("Transferred Securities") or any Lehman securities not transferred to Barclays despite the contemplation of their transfer pursuant to either the Repo Transactions, the Lehman-Barclays Transaction, or the Settlement Agreement ("Other Securities").

This request includes (i) any documents reflecting negotiations resulting in a Lehman security becoming part of the group of Transferred Securities or Other Securities; (ii) mark-to-market valuations on a security-by-security basis for the Transferred Securities or Other Securities for any relevant period of the time between September 15, 2008 and December 2008, (iii) bank account statements reflecting the Transferred Securities or Other Securities and any flow of funds related to either, (iv) any instructions or correspondence regarding the delivery of the Transferred Securities or Other Securities, including any documents concerning delivery failures with respect to

any of the Transferred Securities or Other Securities; and (v) any documents concerning the delivery of cash in lieu of any of the Transferred Securities or Other Securities.

REQUEST NO. 20

All documents provided to the Official Committee of Unsecured Creditors (the "Committee") appointed in *In re Lehman Brothers Holding Inc., et al.*, Case No. 08-13555 (JMP), pursuant to the Committee's letter requests dated December 26, 2008 and February 10, 2009, and any additional documents provided to the Committee in connection with any subsequent requests.

# EXHIBIT D

# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

April 20, 2009

<u>BY HAND</u>

Robert W. Gaffey
Jones Day
222 East 41st Street
New York, NY 10017-6702

<u>*In re Lehman Brothers Holding Inc., et al.*, Case No. 08-13555 (JMP)</u>

Dear Mr. Gaffey:

I am writing in response to your April 13, 2009 letter.

Schedule 2 to the Declaration of Simon Powell submitted in support of the Debtors' application to retain Jones Day as Special Counsel, at page 8, represents that Barclays Capital Inc. ("Barclays") and certain of its affiliates are current clients of Jones Day. Your firm thus acknowledged that it has a conflict in being adverse to Barclays. *See* New York Rules of Professional Conduct (effective April 1, 2009) Rules 1.7 – 1.10. While disclosing that conflict, the retention application never suggested that Jones Day would become adverse to Barclays. The Order approving the retention of Jones Day as Special Counsel to the Estate never authorized Jones Day to undertake a representation adverse to Barclays. In fact, the Order contemplates that Jones Day would represent the Estate only in certain foreign proceedings and in unrelated litigation in California, not an investigation of the type your letter outlines. The investigation you propose to undertake is therefore barred by the conflict your firm disclosed and is outside the scope of the retention that the Court approved. In light of these circumstances, please advise us promptly as to how your firm intends to proceed.

In addition to disregarding the disqualification of your firm, your letter ignores a number of significant factors bearing on the Debtors' proposed investigation.

First, while your letter references a February 19, 2009 letter from Mr. Marsal to Mr. Hughes, it disregards the response that Mr. Hughes sent on February 23, 2009. In that response, Mr. Hughes stressed Barclays' view that the Debtors should coordinate their inquiries with the Examiner's investigation, as the Bankruptcy Court has directed, and not duplicate the Examiner's work. He offered to discuss with Mr. Marsal how

BOIES, SCHILLER & FLEXNER LLP

Robert W. Gaffey
April 20, 2009
Page 2

Barclays could avoid addressing inquiries concerning the court-approved sale on a piecemeal basis. Mr. Hughes also offered to discuss with Mr. Marsal factual matters relevant to administration of the Estate or other issues of concern to Mr. Marsal. Mr. Marsal never responded to that offer. Accordingly, this current demand for extensive discovery is an unnecessarily burdensome and confrontational approach in these circumstances.

Second, the Debtors' document demands address topics that the Examiner is already investigating and, we expect, will continue to investigate. We question whether, before sending these demands, the Debtors made any effort to coordinate with the Examiner on these issues. A simultaneous and duplicative investigation by the Debtors will interfere with our ability to respond to the Examiner in a timely and complete manner.

Please inform the Debtors that Barclays remains willing to discuss these matters at a mutually convenient time.

Very truly yours,

Jonathan D. Schiller

# EXHIBIT E

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number:  (212) 326-7838
rwgaffey@jonesday.com

JP636767

April 24, 2009

Jonathan D. Schiller
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th floor
New York, NY  10022

Re:    In re Lehman Brothers Holding Inc., Case No. 08-13555 (JMP)

Dear Mr. Schiller:

I am writing in further response to your April 20, 2009 letter concerning our request that Barclays Capital Inc. provide us with certain documents concerning its acquisition of the assets of Lehman Brothers Holding Inc. ("LBHI") and related matters.

First, you contend that Jones Day is disqualified from serving as Special Counsel to the Estate adverse to Barclays Capital Inc. based on an asserted conflict of interest. The premise of your contention is incorrect. Jones Day has never represented Barclays Capital Inc., a Connecticut corporation with its principal place of business in New York. Rather, Jones Day previously represented the London-based investment banking division of Barclays Bank Plc in certain financings unrelated to the subject of our investigation on behalf of LBHI. Those representations ended prior to our retention by LBHI as special counsel to investigate the transaction between and among LBHI, Lehman Brothers Inc., LB 745 LLC and Barclays Capital Inc. Earlier this year, Jones Day sent letters confirming the conclusion of the relationship with Barclays Bank Plc.

You refer to Mr. Powell's February 3, 2009 Declaration, which stated on a lengthy Schedule 2 referencing approximately 275 so-called "Interested Persons" that "Barclays Bank Plc" and "Barclays Capital, Inc." were current clients of Jones Day. That declaration incorrectly reported "Barclays Capital, Inc." as a client and did not reflect that the work for Barclays Bank Plc had ended prior to the date of the signing of Mr. Powell's declaration. As Mr. Powell explained in paragraph 8 of his Declaration, the Schedule to which you refer (Schedule 2) was designed only to list Interested Persons (as defined in the Declaration) that Jones Day either was then representing or had represented in the past two years. To correct these errors, we expect to file with the bankruptcy court an updated Schedule 2 reflecting the former relationship with Barclays Bank Plc.

JONES DAY

Jonathan D. Schiller
April 24, 2009
Page 2

That amended schedule will also correct a typographical error relating to the reference to "Barclays Bank, S.A." Jones Day does not represent, and to the best of our knowledge never has represented, any entity named Barclays Bank, S.A. Rather, Schedule 2 should have stated that Jones Day represented Barclays Bank S.A.E., an entity organized under the laws of Spain. Specifically, Jones Day represented Barclays Bank S.A.E. on two local financings in Spain at the request of a Jones Day borrower-client and pursuant to an engagement letter defining the client as Barclays Bank S.A.E. Those representations had nothing to do with the subject of our investigation on behalf of LBHI. One of those financings has concluded and the other one has not proceeded since July 2008.

Accordingly, Jones Day has no conflict with respect to Barclays Capital Inc. and is not precluded from representing the Estate in this matter adverse to Barclays Capital Inc. The Estate will be filing an amended retention application, seeking the Court's authorization *nunc pro tunc* to retain Jones Day as Special Counsel to the Estate to undertake a representation that would include, among other things, an investigation of the above-described transaction involving Barclays Capital Inc.

As for the remainder of your letter, we have not, contrary to your assertion, ignored "significant factors bearing on the Debtors' investigation." In sending our request for documents, we were mindful of Mr. Hughes' February 23, 2009 response to Alvarez & Marsal's earlier requests. In that regard, we will attempt to coordinate our efforts with those of the Examiner as best we can, so as to avoid duplication and waste. Toward that end, we welcome the opportunity to discuss these discovery requests and our other investigative needs so we can obtain information the Debtor needs in the most efficient way possible. We do not seek to impose undue burdens on your client. Rather, we proffered these document requests in an attempt to compile in one letter discovery we expect we will need to examine the issues we, along with Alvarez & Marsal, have identified as potentially relevant to our investigation. We share your desire to streamline this process and our letter was sent in that spirit and in the hope of avoiding recourse to the Court.

Your assertion that our document requests will, in some way, "interfere with [y]our ability to respond to the Examiner in a timely and complete manner" is without basis. To the extent Barclays Capital Inc. is already producing documents to the Examiner that are also responsive to our requests, it should require little time and effort to forward to us an additional copy set (or to enable the Examiner to release copies to us, if you prefer that mechanism). As for our other requests (*i.e.*, those covering issues beyond the documents you are already producing to the Examiner), we have narrowly tailored our requests to a discrete set of transactions and topics covering a very short time period (for the most part, the month of September 2008 and, as for some requests, limited periods following consummation of the transactions in question). These focused requests are not unduly burdensome.

JONES DAY

Jonathan D. Schiller
April 24, 2009
Page 3


     Please let us know when we can expect Barclays Capital Inc. to produce documents responsive to our document requests.  Otherwise, please advise us if Barclays Capital Inc. is unable or unwilling to comply with our requests, so we can promptly take this issue to the Court. We are, of course, available to discuss these issues with you at your convenience.

     Very truly yours,

     Robert W. Gaffey

# EXHIBIT F

## <u>EXHIBIT F</u>

The Estate makes the following requests for the production of documents:

1.      All documents concerning any discussions, meetings or communications between Barclays, any other potential acquirers, the Federal Reserve, SEC, Treasury Department or any other government entity concerning the financial difficulties or problems at Lehman during the three month period prior to LBHI's bankruptcy filing on September 15, 2008 through September 30, 2008.

2.      All documents concerning any discussions or negotiations between Barclays and Lehman (or their respective agents and counsel) regarding any proposed purchase, sale, merger, transfer or similar transaction in which some or all of the assets, liabilities or business of Lehman or any Lehman entity was to be sold, acquired, transferred or assumed to or by Barclays or any Barclays entity, including but not limited to any negotiations or discussions during the month preceding LBHI's bankruptcy filing on September 15, 2008 and through September 30, 2008.

3.      All documents concerning any due diligence performed by or on behalf of Barclays, any Barclays entity, or any of their agents in connection with the September 2008 Lehman-Barclays Transaction or any proposed or contemplated transaction described in Request No. 2 above, including any investigation, document review, employee interviews, research, discussion or analysis conducted by Barclays with respect to the assets, liabilities, valuation, projections, budgets or expected viability of Lehman or any Lehman entity.

4.      All documents concerning the negotiation, drafting, execution and implementation of the Lehman-Barclays Transaction documents, including (i) the Asset Purchase Agreement, dated September 16, 2009, including any amendments, schedules or annexes thereto and the one-page schedule, dated September 16, 2008, initialed by Steven Berkenfeld, and referenced in section 9.1(c) (collectively, the "Original APA"); (ii) the First Amendment to the Original APA, dated September 19, 2008 ("First Amendment"); (iii) the clarification letter, dated as of September 20, 2008 ("Clarification Letter"); (iv) the Transition Services Agreement, dated September 22, 2009 ("TSA"); and (v) any related contracts, agreements or arrangements.

5.      All documents concerning the schedule dated September 16, 2008 referenced in section 9.1(c) of the Original APA, including but not limited to all documents concerning the data upon which that schedule was based, the manner in which it was prepared, all drafts of the schedule, all correspondence concerning the schedule, and all signed versions of the schedule.

6.      All documents concerning Assumed Liabilities (as defined in the Original APA), including documents reflecting the specific liabilities assumed by Barclays or extinguished in the Lehman-Barclays Transaction, the value attributed to such Assumed Liabilities as of the date of the Original APA, the value attributed to such Assumed Liabilities as of the date of the Clarification Letter and the value Barclays assigned to the Assumed Liabilities on or after the date the Lehman-Barclays Transaction closed.

7.      All documents concerning any press release or other public statements issued by Barclays, investor conference call held by Barclays (including that held on September 17, 2008), or other public filing or communication to investors issued by Barclays concerning: (i) the

Lehman-Barclays Transaction, (ii) the amounts, types and value of assets and liabilities to be acquired or assumed by Barclays as a result of the Lehman-Barclays Transaction, or (iii) the profits or other benefits Barclays received or expects to receive as a result of the Lehman-Barclays Transaction.

8.      All documents concerning Barclays' payment, deferral, alteration, renegotiation, revision, or non-payment of bonuses (cash or otherwise), severance or other forms of compensation to former LBI or Lehman executives or other employees who obtained or sought to obtain employment at Barclays following the Lehman-Barclays Transaction, including (i) any agreements, contracts or other arrangements (actual or proposed) between Barclays and any former Lehman employees, and (ii) documents sufficient to show the recipients and amounts of bonuses or other forms of compensation actually paid or committed to be paid to each former LBI or Lehman executive or employee that transferred to or was employed by Barclays after the Lehman-Barclays transaction.  This request includes, but is not limited to, bonuses and severance paid under section 9 of the Original APA.

9.      All documents concerning any negotiations, promises, assurances, enticements, commitments or discussions at any time prior to September 22, 2008 concerning bonuses, severance or other forms of compensation, or other things of value to be paid by Barclays to former LBI or Lehman executives or employees who obtained or sought to obtain employment at Barclays following the Lehman-Barclays Transaction or the bankruptcy filing of any Lehman entity.

10.     All documents reflecting communications during the period from September 1, 2008 to September 30, 2008 concerning (a) the Lehman-Barclays transaction or (b) employment by Barclays after the Lehman-Barclays transaction between Barclays and (1) Steven Berkenfeld, (2) Gerald Donini, (3) Eric Felder, (4) Joseph Gatto, (5) Steven Hash, (6) Ian Lowitt, (7) Herbert McDade, (8) Paul Parker, (9) Ros Stephenson, (10) Jeff Weiss, (11) Larry Wieseneck, (12) Michael Gelband, (13) Thomas Humphrey, (14) Hyung Lee, (15) Hugh E. ("Skip") McGee, III, or (16) Ajay Nagpal.

11.     All documents concerning any employment agreements, compensation agreements, bonus agreements, severance agreements, consulting agreements or other agreements concerning compensation between Barclays and (1) Steven Berkenfeld, (2) Gerald Donini, (3) Eric Felder, (4) Joseph Gatto, (5) Steven Hash, (6) Ian Lowitt, (7) Herbert McDade, (8) Paul Parker, (9) Ros Stephenson, (10) Jeff Weiss, (11) Larry Wieseneck, (12) Michael Gelband, (13) Thomas Humphrey, (14) Hyung Lee, (15) Hugh E. ("Skip") McGee, III, or (16) Ajay Nagpal.

12.     All documents concerning Barclays' accounting, valuation, expensing or accruing for any bonuses (cash or otherwise), severance or other forms of compensation that Barclays paid or is obligated or expects to pay to former LBI or Lehman executives or employees who obtained or sought to obtain employment at Barclays following the Lehman-Barclays Transaction or the bankruptcy filing of any Lehman entity.

13.     All documents concerning Barclays' payment, deferral, alteration, renegotiation, revision, or non-payment of cure amounts owed or claimed to be owed to third party vendors or other non-Lehman entities under any contracts originally entered into by Lehman entities and transferred to

or assumed by Barclays pursuant to the Original APA, the First Amendment, the Clarification Letter or the TSA ("Contract Cure Amounts").  This request includes any agreements, contracts or other arrangements (actual or proposed) between Barclays and any third party vendors or non-Lehman entities concerning Contract Cure Amounts.

14.    All documents concerning Barclays' decision to categorize, designate or otherwise treat any contracts. commitments or agreements as "Closing Date Contracts" or "Designated Contracts" or "Rejected Contracts" (as defined under the Original APA or as referred to in the orders of the Bankruptcy Court).  This request includes documents sufficient to identify the contracts and the third-party vendors and amounts in issue under them.

15.    All documents concerning Barclays' accounting, valuing, expensing and accruing for Contract Cure Amounts (actual or proposed), including documents sufficient to show the Contract Cure Amounts Barclays actually paid or is obligated or expects to pay to all third party vendors or other non-Lehman entities.

16.    All documents concerning "Purchased Assets" (as defined in the Original APA and Clarification Letter), including schedules reflecting the specific assets purchased or transferred to Barclays, the value attributed to such Purchased Assets as of the date of the Original APA, and the value attributed to such Purchased Assets as of the date of the Clarification Letter or thereafter.

17.    All documents concerning the negotiating, booking, executing, funding, pledging of collateral, or repurchasing of collateral in connection with any transaction between LBI and Barclays transacted on or after September 15, 2008 pursuant to any repurchase agreement ("Repo Transactions").  This request includes any agreements, correspondence, confirmations setting forth the terms of the Repo Transactions, blotters, spreadsheets, valuations, documents relating to settlement issues, or other related documents.

18.    All documents concerning the negotiation, drafting, execution and implementation of the Settlement Agreement dated December 5, 2008 (the "Settlement Agreement").

19.    All documents concerning any Lehman securities transferred to Barclays in connection with the Repo Transactions, the Lehman-Barclays Transaction, or the Settlement Agreement ("Transferred Securities") or any Lehman securities not transferred to Barclays despite the contemplation of their transfer pursuant to either the Repo Transactions, the Lehman-Barclays Transaction, or the Settlement Agreement ("Other Securities").

This request includes (i) any documents reflecting negotiations resulting in a Lehman security becoming part of the group of Transferred Securities or Other Securities; (ii) mark-to-market valuations on a security-by-security basis for the Transferred Securities or Other Securities for any relevant period of the time between September 15, 2008 and December 2008, (iii) bank account statements reflecting the Transferred Securities or Other Securities and any flow of funds related to either, (iv) any instructions or correspondence regarding the delivery of the Transferred Securities or Other Securities, including any documents concerning delivery failures with respect to any of the Transferred Securities or Other Securities; and (v) any

documents concerning the delivery of cash in lieu of any of the Transferred Securities or Other Securities.

20.     All documents provided to the Official Committee of Unsecured Creditors (the "Committee") appointed in *In re Lehman Brothers Holding Inc., et al.*, Case No. 08-13555 (JMP), pursuant to the Committee's letter requests dated December 26, 2008 and February 10, 2009, and any additional documents provided to the Committee in connection with any subsequent requests.

# EXHIBIT G

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                          :
In re:                                    :   Chapter 11
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :   Case No. 08-13555 (JMP)
                                          :
                   Debtors.               :   (Jointly Administered)
                                          :
-------------------------------------------------------------x
```

### ORDER, PURSUANT TO FED. R. BANKR. P. 2004, AUTHORIZING DISCOVERY FROM BARCLAYS CAPITAL, INC.

This matter coming before the Court on the Motion of Debtor and Debtor In

Possession for an Order, Pursuant to Fed. R. Bankr. P. 2004, Authorizing Discovery From

Barclays Capital, Inc. (the "Motion"),[1] filed by Lehman Brothers Holdings Inc., as debtor and

debtor in possession in the above-captioned case (the "Debtor"); the Court having reviewed the

Motion and having considered the statements of counsel before the Court (the "Hearing"); and

the Court having found that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (c) notice of

the Motion and the Hearing was sufficient under the circumstances; and the Court having

determined that the legal and factual bases set forth in the Motion and at the Hearing establish

just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED.

2.     The Debtor may, in its discretion, and is authorized to, conduct written

discovery and depositions against Barclays concerning the Requested Information.

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3.      Barclays is hereby ordered to produce documents and otherwise respond to the written discovery requests in Exhibit F to the Motion within 20 days of the date hereof.

4.      Barclays is hereby further ordered to produce witnesses to appear for oral depositions under oath on such date and time and at such location as may be designated in writing by the Debtor on not less than 14 days notice.

5.      The Debtor may issue discovery requests and subpoenas as may be necessary to accomplish the discovery authorized by this Order.

6.      Nothing contained herein shall prejudice the Debtor's rights under Bankruptcy Rule 2004 and other applicable law to seek further document production and written and oral examinations in connection with these chapter 11 cases.

7.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: New York, New York
         _____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

# A. 167

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re:                                                                  :    Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., *et al.,*    :    Case No. 08-13555 (JMP)
:
Debtors.    :    (Jointly Administered)
:
---------------------------------------------------------------x

### ORDER, PURSUANT TO FED. R. BANKR. P. 2004, AUTHORIZING DISCOVERY FROM BARCLAYS CAPITAL, INC.

This matter coming before the Court on the Motion of Debtor and Debtor In

Possession for an Order, Pursuant to Fed. R. Bankr. P. 2004, Authorizing Discovery From

Barclays Capital, Inc. (the "Motion"),[1] filed by Lehman Brothers Holdings Inc., as debtor and

debtor in possession in the above-captioned case (the "Debtor"); the Court having reviewed the

Motion and having considered the statements of counsel before the Court (the "Hearing"); and

the Court having found that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (c) notice of

the Motion and the Hearing was sufficient under the circumstances; and the Court having

determined that the legal and factual bases set forth in the Motion and at the Hearing establish

just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED.

2.    The relief requested in the Committee's joinder to the Motion is granted.  The

Committee shall be entitled to receive copies of all documents produced to the Debtor pursuant to

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

this Order and representatives of the Committee shall be entitled to appear and propound questions

at any deposition noticed in accordance with this Order.

3.      The Debtor may, in its discretion, and is authorized to, conduct written

discovery and depositions against Barclays concerning the Requested Information.

4.      Barclays is hereby ordered to produce documents and otherwise respond to

the written discovery requests in Exhibit F to the Motion within 20 days of the date hereof.

5.      Barclays is hereby further ordered to produce witnesses to appear for oral

depositions under oath on such date and time and at such location as may be designated in writing by

the Debtor on not less than 14 days notice.

6.      The Debtor may issue discovery requests and subpoenas as may be necessary

to accomplish the discovery authorized by this Order.

7.      Nothing contained herein shall prejudice the Debtor's rights under Bankruptcy

Rule 2004 and other applicable law to seek further document production and written and oral

examinations in connection with these chapter 11 cases.

8.      The Debtor shall meet and confer with (a) Anton R. Valukas, U.S. Trustee-

appointed Examiner in Debtor's chapter 11 case (the "Examiner"), (b) the Official Committee of

Unsecured Creditors (the "Committee") of Debtor, and (c) James W. Giddens, Trustee for the

liquidation of Lehman Brothers Inc. under the Securities Investor Protection Act of 1970 (the "SIPA

Trustee"), to develop a protocol for the coordination of the discovery they seek from Barclays in

accordance with this Order and in accordance with the Court's directions on the record at the hearing

held June 24, 2009.  The Debtor, The Examiner, the Committee and the SIPA Trustee shall also

meet and confer with Barclays about the discovery ordered herein and shall report to the Court no

later than the date of the  next omnibus hearing, scheduled for July 15, 2009 ,with respect to any

issues that arise and they are not able to resolve.

9.    Existing confidentiality agreements shall be modified to, and any

confidentiality agreement between the Debtor and Barclays shall, allow for the coordinated

discovery noted above, including a provision that will allow for the sharing between Debtor, the

Examiner, the Committee, and the SIPA Trustee of information received from Barclays.

10.    The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation of this Order.


Dated: New York, New York
        June 25, 2009

_____*s/ James M. Peck*_____
UNITED STATES BANKRUPTCY JUDGE

# A. 168

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555(JMP); 08-01420(JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC., et al.



            Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS INC.



            Debtor.

- - - - - - - - - - - - - - - - - - - -x

            United States Bankruptcy Court

            One Bowling Green

            New York, New York


            June 24, 2009

            10:15 AM

B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1

2      HEARING re Debtors' Motion for Authorization to (i) Assume

3      Unexpired Lease of Nonresidential Real Property; and (ii)

4      Assume and Assign Unexpired Leases of Real Property

5

6      HEARING re Debtors' Motion to Restructure Certain Loans with

7      Broadway Partners Fund Manager, LLC, et. al.

8

9      HEARING re Motion of Unclaimed Property Recovery Service, Inc.

10     for Compelling Payment of Unclaimed Funds by the New York State

11     Comptroller

12

13     HEARING re Motion Authorizing Discovery from Barclays Capital,

14     Inc.

15

16     HEARING re Motion of Kalaimoku-Kuhio Development Corp for (i)an

17     Order Compelling Payment of Post-Petition Rent and Charges and

18     (ii)Granting Relief from the Automatic Stay

19

20     HEARING re Debtors Motion for Establishment of the Deadline for

21     Filing Proofs of Claim, Approval of the Form and Manner of

22     Notice Thereof, and Approval of the Proof of Claim Form

23

24

25

3

1

2      ADVERSARY PROCEEDING:

3

4      HEARING re Deutsche Bank AG v. Lehman Brothers Holdings Inc.

5      Motion for Summary Judgment

6

7      SECURITIES INVESTOR PROTECTION CORPORATION PROCEEDINGS:

8

9      HEARING re Trustee's Application for an Order Pursuant to

10     Section 365(d)(1) of the Bankruptcy Code Further Extending the

11     Time Within Which the Trustee may Assume or Reject Executory

12     Contracts and Certain Unexpired Leases

13

14

15

16

17

18

19

20

21

22

23

24

25     Transcribed by:  Lisa Bar-Leib

4

1

2      A P P E A R A N C E S :

3      WEIL, GOTSHAL & MANGES LLP

4            Attorneys for Debtors

5            767 Fifth Avenue

6            New York, NY 10153

7

8      BY:  RICHARD W. SLACK, ESQ.

9            LORI R. FIFE, ESQ.

10           SHAI Y. WAISMAN, ESQ.

11

12     HUGHES HUBBARD & REED LLP

13           Attorneys for James W. Giddens, SIPC Trustee

14           One Battery Park Plaza

15           New York, NY 10004

16

17     BY:  JEFFREY S. MARGOLIN, ESQ.

18           DAVID WILTENBURG, ESQ.

19           JAMES B. KOBAK, JR.

20

21

22

23

24

25

5

1

2    MILBANK, TWEED, HADLEY & MCCLOY LLP

3        Attorneys for Official Committee of Unsecured Creditors

4        One Chase Manhattan Plaza

5        New York, NY 10005

6

7    BY:  DENNIS C. O'DONELL, ESQ.

8        EVAN R. FLECK, ESQ.

9        DENNIS F. DUNNE, ESQ.

10

11    UNITED STATES DEPARTMENT OF JUSTICE

12        Office of the United States Trustee

13        33 Whitehall Street

14        21st Floor

15        New York, NY 10004

16

17    BY:  ANDREW D. VELEZ-RIVERA, ESQ.

18

19

20

21

22

23

24

25

6

1

2    ALLEN & OVERY LLP

3         Attorneys for ISDA

4         1221 Avenue of the Americas

5         New York, NY 10020

6

7    BY:   JOSHUA D. COHN, ESQ.

8

9         JOHN KIBLER, ESQ.

10

11   ALSTON & BIRD LLP

12        Attorneys for Bank of America, N.A. in its Capacity as

13        Trustee of Certain Trust Agreements

14        90 Park Avenue

15        New York, NY 10016

16

17   BY:   JOHN SPEARS, ESQ.

18

19

20

21

22

23

24

25

7

1

2    ALSTON & BIRD LLP

3         Attorneys for Bank of America, N.A. in its Capacity as

4         Trustee of Certain Trust Agreements

5         One Atlantic Center

6         1201 West Peachtree Street

7         Atlanta, GA 30309

8

9    BY:  WILLIAM S. SUGDEN, ESQ.

10        (TELEPHONICALLY)

11

12   BINGHAM MCCUTCHEN LLP

13        Attorneys for Deutsche Bank; Harbinger Funds; Putman

14        Investments; State Street Bank; and UBS

15        399 Park Avenue

16        New York, NY 10022

17

18   BY:  JOSHUA DORCHAK, ESQ.

19

20

21

22

23

24

25

8

1

2   BLANK ROME LLP

3        Attorneys for 600 Partners Co, LP;

4        The Chrysler Building

5        405 Lexington Avenue

6        New York, NY 10174

7

8   BY:   ANDREW B. ECKSTEIN, ESQ.

9

10   BOIES, SCHILLER & FLEXNER LLP

11        Attorneys for Barclays

12        5301 Wisconsin Avenue, N.W.

13        Washington, DC 20015

14

15   BY:   HAMISH P.M. HUME, ESQ.

16

17   CADWALADER, WICKERSHAM & TAFT LLP

18        Attorneys for Morgan Stanley

19        1201 F. Street, N.W.

20        Washington, DC 20004

21

22   BY:   MARK C. ELLENBERG, ESQ.

23        HOWARD HAWKINS, ESQ.

24

25

9

1

2    CHAPMAN & CUTLER LLP

3        Attorneys for US Bank, N.A.

4        111 West Monroe Street

5        Chicago, IL 60603

6

7    BY:  FRANKLIN H. TOP, III, ESQ.

8        JAMES HEISER, ESQ.

9        (TELEPHONICALLY)

10

11   CLEARY GOTTLIEB STEEN & HAMILTON LLP

12       Attorneys for Barclays Capital Inc.

13       One Liberty Plaza

14       New York, NY 10006

15

16   BY:  LINDSEE P. GRANFIELD, ESQ.

17       CARMINE D. BOCCUZZI, ESQ.

18

19   CLEARY GOTTLIEB STEEN & HAMILTON LLP

20       Attorneys for Goldman Sachs & Co.

21       One Liberty Plaza

22       New York, NY 10006

23

24   BY:  CARMINE D. BOCCUZZI, ESQ.

25

10

1

2   CLIFFORD CHANCE US LLP

3        Attorneys for Calyon

4        31 West 52nd Street

5        New York, NY 10019

6

7   BY:  ANDREW BROZMAN, ESQ.

8

9   COVINGTON & BURLING LLP

10        Attorneys for Wilmington Trust Company

11        The New York Times Building

12        620 Eighth Avenue

13        New York, NY 10019

14

15   BY:  AMANDA R. RABOY, ESQ.

16        SUSAN JOHNSTON, ESQ.

17

18   CRAVATH, SWAINE & MOORE LLP

19        Attorneys for Credit Suisse

20        Worldwide Plaza

21        625 Eight Avenue

22        New York, NY 10019

23

24   BY:  RICHARD LEVIN, ESQ.

25

11

1

2    DLA PIPER US LLP

3        Attorneys for Banco Bank, et al.

4        1251 Avenue of the Americas

5        New York, NY 10020

6

7    BY:  WILLIAM M. GOLDMAN, ESQ.

8

9    DEBEVOISE & PLIMPTON LLP

10       Attorneys for Juice Energy, Inc.

11       919 Third Avenue

12       New York, NY 10022

13

14   BY:  JESSICA R. SIMONOFF, ESQ.

15

16   DEWEY & LEBOEUF LLP

17       Attorneys for Royal Bank of Scotland and Affiliates

18       1301 Avenue of the Americas

19       New York, NY 10019

20

21   BY:  IRENA M. GOLDSTEIN, ESQ.

22

23

24

25

```
                                                                    12

 1

 2    ENTWISTLE & CAPPUCCI

 3         Attorneys for New York State Comptroller Thomas DiNapoli

 4         280 Park Avenue

 5         26th Floor West

 6         New York, NY 10017

 7

 8    BY:  JOSHUA K. PORTER, ESQ.

 9

10    FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

11         Attorneys for HWA 555 Owners, LLC

12         One New York Plaza

13         New York, NY 10004

14

15    BY:  JANICE MAC AVOY, ESQ.

16

17    GOODWIN PROCTER LLP

18         Attorneys for Evergreen Solar, Inc.

19         The New York Times Building

20         620 Eighth Avenue

21         New York, NY 10018

22

23    BY:  STEPHEN M. WOLPERT, ESQ.

24

25
```

13

```
 1
 2    HAYNES AND BOONE, LLP
 3         Attorneys for Steve G. Holder Trust, et al.
 4         1221 Avenue of the Americas
 5         26th Floor
 6         New York, NY 10020
 7
 8    BY:  JASON A. NAGI, ESQ.
 9
10    HOGAN & HARTSON LLP
11         Attorneys for Westernbank Puerto Rico
12         875 Third Avenue
13         New York, NY 10022
14
15    BY:  DAVID DUNN, ESQ.
16
17    HOLLAND & KNIGHT LLP
18         Attorneys for Kantats Co. Ltd.; Teachers' Retirement
19         System of Illinois; Singapore Airlines Ltd.
20         195 Broadway
21         24th Floor
22         New York, NY 10007
23
24    BY:  BARBRA R. PARLIN, ESQ.
25
```

14

1

2   JENNER & BLOCK, LLC

3        Attorneys for the Examiner

4        One IBM Plaza

5        Chicago, IL 60611

6

7   BY:  ROBERT BYMAN, ESQ.

8

9   JONES DAY

10        Special counsel to LBHI

11        222 East 41st Street

12        New York, NY 10017

13

14   BY:  WILLIAM J. HINE, ESQ.

15        ROBERT W. GAFFEY, ESQ.

16

17   KATTEN MUCHIN ROSENMAN LLP

18        Attorneys for Federal Home Loan Bank, et al.

19        575 Madison Avenue

20        New York, NY 10022

21

22   BY:  MERRITT A. PARDINI, ESQ.

23        JEFF J. FRIEDMAN, ESQ.

24

25

15

1

2   KAYE SCHOLER LLP

3       Attorneys for Wells Fargo Bank N.A. and Affiliates

4       425 Park Avenue

5       New York, NY 10022

6

7   BY:  MADLYN G. PRIMOFF, ESQ.

8       LAUREN ATTARD, ESQ.

9

10  KRAMER LEVIN NAFTALIS & FRANKEL LLP

11      Attorneys for Bank of New York Mellon as Indenture Trustee

12      1177 Avenue of the Americas

13      New York, NY 10036

14

15  BY:  SARAH SCHINDLER-WILLIAMS, ESQ.

16

17  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.

18      Attorneys for Kalaikoku-Kuhio Dev., Movant

19      10250 Constellation Boulevard

20      Suite 1700

21      Los Angeles, CA 90067

22

23  BY:  DAVID L. NEALE, ESQ.

24

25

16

1

2   LINLATERS LLP

3        Attorneys for the Joint Administrators of LBIE

4        1345 Avenue of the Americas

5        New York, NY 10105

6

7   BY:  MARTIN N. FLICS, ESQ.

8        MARY K. WARREN, ESQ.

9

10  LOEB & LOEB LLP

11       Attorneys for Thomas Cook AG

12       345 Park Avenue

13       New York, NY 10154

14

15  BY:  DANIEL B. BESIKOF, ESQ.

16

17  MCCARTER & ENGLISH, LLP

18       Attorneys for Occidental

19       Renaissance Centre

20       405 N. King Street

21       8th Floor

22       Wilmington, DE 19801

23

24  BY:  DAVID M. SILVER, ESQ.

25

17

1

2   MCGUIREWOODS LLP

3        Attorneys for Toronto Dominion Bank

4        1345 Avenue of the Americas

5        Seventh Floor

6        New York, NY 10105

7

8   BY:  SHAWN R. FOX, ESQ.

9

10   MCGUIREWOODS LLP

11        Attorneys for Toronto Dominion Bank

12        One James Center

13        901 East Cary Street

14        Richmond, VA 23219

15

16   BY:  DION W. HAYES, ESQ.

17        (TELEPHONICALLY)

18

19   NIXON PEABODY LLP

20        Attorneys for Deutsche Bank Net Trust Co. as Indenture

21        Trustee

22        437 Madison Avenue

23        New York, NY 10022

24

25   BY:  ROBERT N.H. CHRISTMAS, ESQ.

18

1

2      PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3           Attorneys for Citigroup, et al.

4           1205 Avenue of the Americas

5           New York, NY 10019

6

7      BY:  CLAUDIA L. HAMMERMAN, ESQ.

8           STEPHEN J. SHIMSHAK, ESQ.

9

10

11     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

12          Special Counsel to the Creditors' Committee

13          51 Madison Avenue

14          22nd Floor

15          New York, NY 10010

16

17     BY:  JAMES C. TECCE, ESQ.

18

19     REED SMITH LLP

20          Attorneys for Bank of New York Corporate Trustee Services

21          and Bank of New York Mellon

22          599 Lexington Avenue

23          New York, NY 10022

24

25     BY:  MICHAEL J. VENDITTO, ESQ.

19

1

2    SALANS

3         Attorneys for Svenska HandelsBanken AB

4         Rockefeller Center

5         620 Fifth Avenue

6         New York, NY 10020

7

8    BY:  CLAUDE D. MONTGOMERY, ESQ.

9

10   SEWARD & KISSEL LLP

11        Attorneys for Global Thematic Opportunities Fund LP

12        One Battery Park Plaza

13        New York, NY 10004

14

15   BY:  JUSTIN L. SHEARER, ESQ.

16

17   SHEARMAN & STERLING LLP

18        Attorneys for Bank of America and its Affiliates

19        599 Lexington Avenue

20        New York, NY 10022

21

22   BY:  NED S. SCHEDEK, ESQ.

23

24

25

```
                                                                    20
 1

 2     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

 3          Attorneys for Black Rock Financial Management, Inc.

 4          Four Times Square

 5          New York, NY 10036

 6

 7     BY:  ANDREW M. THAU, ESQ.

 8

 9     STROOCK & STROOCK & LAVAN LLP

10          Attorneys for Mizvhu Investors Securities, Derivative

11          Claimants

12          180 Maiden Lane

13          New York, NY 10038

14

15     BY:  LAWRENCE M. HANDELSMAN, ESQ.

16          CLAUDE G. SZYFER, ESQ.

17

18     TROUTMAN SANDERS LLP

19          Attorneys for RWG Supply & Trading; New South Federal

20          Savings Bank; Electrabel A.V./S.A.

21          The Chrysler Building

22          405 Lexington Avenue

23          New York, NY 10174

24

25     BY:  PAUL H. DEUTCH, ESQ.
```

21

1

2     WACHTELL, LIPTON, ROSEN & KATZ

3         Attorneys for JPMorgan Chase Bank

4         51 West 52nd Street

5         New York, NY 10019

6

7     BY:  HAROLD S. NOVIKOFF, ESQ.

8

9     WHITE & CASE LLP

10        Attorneys for Deutsche Sparkessen und Giroverband

11        1155 Avenue of the Americas

12        New York, NY 10036

13

14    BY:  RICHARD GRAHAM, ESQ.

15

16    BAKER & HOSTETLER LLP

17        Linn Energy, LLC; Deer Park Road Corporation

18        1050 Connecticut Avenue, N.W.

19        Washington, DC 20036

20

21    BY:  DONALD WORKMAN, ESQ.

22        (TELEPHONICALLY)

23

24

25

22

 1

 2    GALLAGHER & KENNEDY, P.A.

 3        Attorneys for Venture Associates, LLC

 4        2572 Camelback Road

 5        Suite 1100

 6        Phoenix, AZ  85016

 7

 8    BY:  LINDSI M. WEBER, ESQ.

 9        (TELEPHONICALLY)

10

11    STEPTOE & JOHNSON LLP

12        Attorneys for Korea Investment & Securities Co. and the

13        Friend Ferth Specialty Co.

14        2121 Avenue of the Stars

15        Suite 2800

16        Los Angeles, CA 90067

17

18    BY:  KATHERINE C. PIPER, ESQ.

19        (TELEPHONICALLY)

20

21

22

23

24

25

23

1

2      STUTMAN, TREISTER & GLATT PC

3          Attorneys for the TPG-Austin Portfolio Holdings LLC

4          1901 Avenue of the Stars

5          12th Floor

6          Los Angeles, CA 90067

7

8   BY:  JEFFREY H. DAVIDSON, ESQ.

9        MARINA FINERMAN, ESQ.

10       ISAAC PACHULSKI, ESQ.

11       (TELEPHONICALLY)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

38

1    requests made by the creditors' committee.

2          THE COURT:  Okay.  And I have, I guess, a more

3    fundamental question which is where can this lead.  Let's just

4    assume for the sake of discussion that you conduct court-

5    authorized 2004 discovery obtained information and discover a

6    smoking gun or some other piece of information that gives you

7    reason to think that Barclays ended up with too good a deal

8    during that week we all remember.  Those of us who participated

9    remember it well.  But the order approving that transaction was

10   affirmed at the district court level by Judge Cote and was

11   ultimately final by virtue of the disposition of the Second

12   Circuit of the appeal.  The appeal is now dismissed.  And so, I

13   have a final sale order and so do you.  So let's just assume

14   you find something that gives you reason to question whether or

15   not Barclays got too good a deal.  Then what?

16         MR. GAFFEY:  I think the answer to that, Your Honor,

17   is with respect to the sale order itself, I think I still have

18   an opportunity although it may not be the mechanism that's

19   required here to come back under Rule 60, Rule 9024 on grounds

20   of either mistake -- for example, if the smoking gun Your Honor

21   refers to shows, as some of our documents appear to indicate,

22   that the two billion dollars was actually the firm wide accrual

23   for comp, not the North American operations.  Let's take that

24   as purely a hypothetical.  I think I have an opportunity to

25   come back under Rule 60 and revisit the sale order at that

39

1    point on the grounds of mistake.

2         Should a smoking gun indicate grounds of

3    misrepresentation or fraud, I also have that opportunity.  And

4    Rule 60 also allows the Court to give relief from the order for

5    any other reason that justifies relief.

6         Now, with respect to the first two components there,

7    the debtor has a year to do it.  That doesn't apply to the

8    third.  But it does apply to the first two which goes to the

9    need for expedition and efficiency on the discovery we seek.

10   But I think I can come back, I could come back conceivably and

11   ask the Court to revisit the sale order under Rule 60 as

12   Barclays, by the way, has done twice.

13        I think we're not restricted to Rule 60 relief,

14   however.  There could be claims.  There could be claims to be

15   asserted against Barclays.  For example, and this is just by

16   way of example, and, again, Your Honor, I emphasize subject to

17   what discovery we get and what facts we see.  There could be

18   the imposition of a constructive trust over assets that were

19   given to Barclays that were meant for a particular purpose and

20   not used for such.  There could be a claim for conversion on

21   the same grounds.  If a tangible fund was given to Barclays in

22   the transaction, again, for an annotated earmarked purpose and

23   it's not used for that purpose, I think, under New York State

24   law, a conversion claim could lie.

25        There could be breach of fiduciary duty claims.  One

40

1    of the things we've raised in our papers is that some of the

2    discovery we seek goes to compensation offers made to and

3    compensation subsequently paid to former Lehman executives who

4    were near or in the negotiations to determine whether or not

5    they abided by their duties to the corporation or whether they

6    gave away points they shouldn't have given away concerned more

7    about their own financial wherewithal.

8           Again, Your Honor, I emphasize we are just looking at

9    what the possibilities could be and what the early indications

10    are.  But I think if I have a breach of fiduciary duty claim, I

11    could look to Barclays for an aiding and abetting claim.  I

12    think -- in other words, Your Honor, I don't think the sale

13    order, with respect to independent claims that could be

14    assertive in a complaint is the be all and the end all of that.

15    I think there may a breach of contract claim under the asset

16    purchase agreement.

17           Now, Barclays have said in their opposition that they

18    have no obligation to pay two billion dollars.  That's just not

19    what the contract says.  The contract is mandatory.  The

20    contract says they shall pay it.

21           So it's a fair question, Your Honor, most absolutely,

22    and it's one that I gave a lot of thought to as we proceeded

23    down the Rule 2004 path.  Again, at the risk of repetitive, I

24    don't want what I'm saying today to be an announcement that we

25    have such claims.  I want it to be an announcement that we need

41

1    to take discovery to make a responsible determination as to

2    whether (a) the estate has them and (b) should proceed with

3    those claims.

4              THE COURT:  All right.  Thank you.

5              MR. GAFFEY:  Thank you, Your Honor.

6              THE COURT:  I see people coming from two sides.  Are

7    you -- do you represent different parties?

8              MR. HUME:  Yes, Your Honor.

9              MR. DUNN:  Yes.

10             THE COURT:  And who do you represent?

11             MR. DUNN:  Westernbank.

12             THE COURT:  And you represent Barclays?

13             MR. HUME:  Correct, Your Honor.

14             THE COURT:  I think Barclays might be the key person

15   to hear from right now.

16             MR. HUME:  Thank you, Your Honor.  Hamish Hume from

17   Boies, Schiller & Flexner.  I'm here with our managing partner,

18   Jonathan Schiller.  I'll be handling the argument today, Your

19   Honor.

20             Your Honor, in paragraph 1 of their reply, LBHI

21   disclaims that they are undertaking a wholesale attack on the

22   sale order or trying to retrade the deal.  I think in the

23   answer you were just given, Your Honor, respectfully, you see

24   that that isn't, in fact, what this discovery is intended to

25   do.  This Court found that the sale was undertaken in the best

47

1    didn't get back.  They got collateral in the form of securities

2    that were plummeting in value.  And then it didn't even get all

3    those.  And as Your Honor knows, had to come to this Court for

4    a settlement in which it didn't receive the full amount that it

5    was supposed to.  And the Federal Reserve, through Shari

6    Leventhal's affidavit, told the Court that she had evaluated

7    the whole thing and thought it was a fair settlement.

8           None of this is news to the Court.  None of this is

9    confusing or should be a source of confusion or allegations

10   that there is --

11          THE COURT:  It's not news but it is confusing.  And I

12   think that one of the problems -- I'm just giving you a very

13   candid appraisal.  In talking about something that's this

14   massive from the perspective of looking back at it nine months

15   later is that I know from having sat here during that week that

16   it was an extraordinary time in the history of global finance.

17   And things were happening very, very quickly.  Very skillful

18   lawyers and businesspeople put together an extraordinary

19   transaction in virtually no time.  And it's conceivable that

20   mistakes were made.  As has been pointed out by special counsel

21   for the debtors and as you know, Barclays itself sought 60(b)

22   relief on two separate occasions having to do with contracts

23   listed on the list for assumption and the Amex Barclays

24   litigation continues, although I believe it to be close to

25   resolution.

# A. 169

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555, 08-01420 (SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS INC., ET AL.,

                   Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

                   Debtor.

- - - - - - - - - - - - - - - - - - - -x

                   U.S. Bankruptcy Court

                   One Bowling Green

                   New York, New York

                   August 11, 2009

                   10:02 a.m.

B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1   MOTION of Bank of New York to Dismiss Complaint in Case No. 09-

2   01242

3

4   SCHEDULING Conference on Defendant's Motion for Summary

5   Judgment and Debtors' Cross-Motion for Summary Judgment

6

7   MOTION of Trustee to Dismiss Complaint in Case No. 09-01160

8

9   MOTION of Unclaimed Property Recovery Service's Motion for

10  Orders (A) Compelling Payment of Unclaimed Funds by the New

11  York State Comptroller, (B) Lifting the Automatic Stay, or,

12  Alternatively, Providing Relief From the Automatic Stay, (C)

13  Allowing Payment for Services Provided Post-Petition and (D)

14  Other Relief

15

16

17

18

19

20

21

22

23

24  Transcribed By:  Esther Accardi

25

3

1    A P P E A R A N C E S :

2    WEIL GOTSHAL & MANGES, LLP

3        Attorneys for Debtors

4        767 Fifth Avenue

5        New York, New York 10153

6

7    BY:  HARVEY R. MILLER, ESQ.

8        PETER GRUENBERGER, ESQ.

9

10

11   WEIL GOTSHAL & MANGES, LLP

12       Attorneys for Debtors

13       1300 Eye Street, N.W.

14       Washington, D.C. 20005

15

16

17   BY:  RALPH I. MILLER, ESQ.

18

19

20   WEIL GOTSHAL & MANGES, LLP

21       Attorneys for Debtors

22       8911 Capital of Texas Highway

23       Austin, Texas 78759

24

25   BY:  MEREDITH B. PARENTI, ESQ.

4

1    A P P E A R A N C E S : (continued)

2    HUGHES HUBBARD & REED, LLP

3         Attorneys for SIPA Trustee

4         One Battery Park Plaza

5         New York, New York 10004

6

7    BY:   JEFFREY S. MARGOLIN, ESQ.

8          DANIEL S. LUBELL, ESQ.

9

10

11   REED SMITH, LLP

12        Attorneys for Bank of New York

13        599 Lexington Avenue

14        New York, New York 10022

15

16   BY:   ERIC A. SCHAFFER, ESQ.

17

18

19   FRIED FRANK HARRIS SHRIVER & JACOBSON, LLP

20        Attorneys for HWA 555 Owners LLC

21        One New York Plaza

22        New York, New York 10004

23

24   BY:   STEPHANIE J. GOLDSTEIN, ESQ.

25        BRIAN D. PFEIFFER, ESQ.

5

1    A P P E A R A N C E S : (continued)

2    MILBANK TWEED HADLEY & MCCLOY, LLP

3         Attorneys for Creditors' Committee

4         1850 K Street, NW

5         Washington, D.C. 20006

6

7    BY:   DAVID S. COHEN, ESQ.

8

9

10   SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

11        Attorneys for American Family Life Assurance

12        One Rodney Square

13        Wilmington, Delaware 19899

14

15   BY:   ROBERT A. WEBER, ESQ.

16

17

18   SULLIVAN & CROMWELL, LLP

19        Attorneys for Barclays

20        125 Broad Street

21        New York, New York 10004

22

23   BY:   PENNY SHANE, ESQ.

24

25

6

1    A P P E A R A N C E S : (continued)

2    APPEARING TELEPHONICALLY:

3    JEFFREY H. DAVIDSON, ESQ., STUTMAN TREISTER & GLATT

4    MARINA FINEMAN, ESQ., STUTMAN TREISTER & GLATT

5    WHITMAN L. HOLT, ESQ., STUTMAN TREISTER & GLATT

6    NATALIE FOY, BANK OF AMERICA

7    STEPHEN GRISANTI, TRICADIA CAPITAL

8    SCOTT HARTMAN, PRO SE

9    JAMES HEISER, CHAPMAN & CUTLER

10   FRANKLIN TOP, CHAPMAN & CUTLER

11   GERARD UZZI, ESQ., WHITE & CASE

12   STEPHANIE TUDWAY, ESQ., MILBANK TWEED HADLEY & MCCLOY

13

14

15

16

17

18

19

20

21

22

23

24

25

107

1    better recollection or have checked out what the docket

2    reflects, I'll be happy to hear what you have to say, but my

3    recollection is that I never approved it.

4         MS. GOLDSTEIN:  Your Honor, I wasn't here so I can't

5    comment.  I do know that in the order that approves the sale

6    transaction it does refer to and it defines the purchase

7    agreement as including the asset purchase agreement.  There was

8    a first amendment and then the clarification letter.  My

9    understanding from some of my colleagues is that some of the

10   terms of the clarification letter were discussed in court over

11   that Friday, that marathon --

12        THE COURT:  We've had a lot of hearings that have

13   touched on the sale to Barclays, both contemporaneously and

14   after the fact, and the clarification letter obviously will

15   speak for itself and it's not in evidence other than through

16   judicial notice at this point, but it is my recollection that

17   it was entered into after the closing, during the business days

18   that followed, and that it was never the subject of a separate

19   motion for court approval.  To the extent that it was somehow

20   obliquely referenced in transaction documents doesn't

21   necessarily mean that it's the subject of a formal court order.

22   And that's one of the problems that I'm having with your legal

23   position, which is, as argued by the trustee, there really is

24   no freestanding motion to assume the lease at 555 California

25   Street, nor is there an omnibus motion to assume leases.  It's

# A. 170

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re:                              :    Chapter 11
                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :  Case No. 08-13555 (JMP)
                                    :
              Debtors.              :    (Jointly Administered)
                                    :
------------------------------------------------------------x
------------------------------------------------------------x
                                    :
In re:                              :    SIPA Proceeding
                                    :
LEHMAN BROTHERS INC.,               :    Case No. 08-01420 (JMP)
                                    :
              Debtor.               :
                                    :
------------------------------------------------------------x
```

**SCHEDULING ORDER CONCERNING CERTAIN MOTIONS FILED BY LBHI, SIPA TRUSTEE AND CREDITORS COMMITTEE**

WHEREAS, the following motions have been filed with the Court seeking, *inter alia*, modifications of (i) the Court's Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 20, 2008, or (ii) the Court's Order Approving, and Incorporating by Reference for Purposes of this Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings Inc. Chapter 11 Proceeding; or both such Orders (individually or collectively, the "Sale Order"):

(1) Debtor's Motion for An Order, Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. 9024, Modifying the September 20, 2008 Sale Order and Granting Other Relief, dated September 15, 2009 ("LBHI's Motion");

(2)  The Trustee's Motion for Relief Pursuant to the Sale Order or, Alternatively, for Certain Limited Relief Under Rule 60(b), dated September 15, 2009 ("Trustee's Motion"); and

(3)  Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al., Pursuant to 11 U.S.C. §§ 105(a), Fed. R. Civ. P. 60(b), and Fed. R. Bankr. P. 9024, For Relief From Order Under 11 U.S.C. §§ 105(a), 363 and 365 and Federal Rule of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 20, 2008 (and Related SIPA Sale Order) and Joinder In Debtor's and SIPA Trustee's Motions for an Order Under Rule 60(b) to Modify Sale Order ("Committee's Motion");

(4)  Motion of Lehman Brothers Holdings Inc., Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, Modifying The SIPA Sale Order and Joinder in Official Committee of Unsecured Creditors' Motion for Relief From SIPA Sale Order ("LBHI's Joinder"); and

(5)  The Trustee's Motion to Join in Debtors' Motion for an Order Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. 9024, Modifying the September 20, 2009 Sale Order and Granting Other Relief ("LBI's Joinder," and collectively with the above-referenced motions, the "Rule 60 Motions").

WHEREAS, Barclays Capital Inc. ("Barclays") has issued discovery requests and third party subpoenas and plans to take certain depositions in connection with its intention to file an opposition to the Rule 60 Motions;

WHEREAS, Lehman Brothers Holdings Inc. ("LBHI"), James W. Giddens (the "Trustee"), as Trustee for the SIPA liquidation of Lehman Brothers Inc., and the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. ("Creditors Committee") require additional discovery in connection with their Rule 60 Motions; and

WHEREAS, counsel for LBHI, the Trustee, the Creditors Committee, and Barclays have agreed upon the following schedule for the conduct of discovery and the preparation and filing of their respective submissions with respect to the Rule 60 Motions.

IT IS HEREBY ORDERED THAT:

1.  To the extent LBHI, the Trustee or the Creditors Committee intend to file adversary complaints in connection with subjects related to the Rule 60 Motions, all such

adversary complaints shall be served and filed on or before November 16, 2009.  To the extent

the complaints contain claims that are already made as part of the Rule 60 Motions, those claims

shall be resolved pursuant to the schedule set forth in this order for resolving the Rule 60

Motions.  Within ten days of such filing, the parties shall meet and confer to agree upon which

claims in such complaints shall be resolved through the resolution of the Rule 60 Motions and

which claims shall be stayed pending such resolution.

2.    Barclays shall be entitled to conduct discovery prior to filing its response to

the Rule 60 Motions, including interrogatories, requests for admission and third party subpoenas,

in accordance with the normal rules governing discovery under a contested matter, except as

otherwise provided in this Order.  LBHI, the Trustee and the Creditors Committee shall respond

to the document requests served by Barclays on September 22 and 23, 2009 in accordance with

Paragraph 4 below and shall produce responsive documents on a rolling basis with such

production to be completed no later than November 16, 2009.  LBHI, the Trustee and the

Creditors Committee shall respond to the supplemental document requests served by Barclays on

October 9, 2009 in accordance with Paragraph 4 below and shall produce responsive documents,

if any, on a rolling basis with such production to be completed no later than December 8, 2009.

3.    On or before November 16, 2009, Barclays shall make a supplemental

production pursuant to Movants' Rule 2004 requests consisting of:

> (a)    GFS Reports for each day between September 12, 2008 and September
> 30, 2008 for which a report has not already been produced; and

> (b)    Additional documentation to explain and support the acquisition
> balance sheet reported by Barclays in February 2009.

No additional discovery pursuant to Rule 2004 shall be required except as provided above and as

previously agreed with regard to the documents of Gerard Reilly and the resumed deposition of

Martin Kelly.  LBHI, the Trustee and the Creditors Committee may serve Barclays with requests

for any additional documents they seek or other discovery requests, including interrogatories, requests for admission, and third party subpoenas in accordance with the normal rules governing discovery under a contested matter, except as otherwise provided in this Order.

4.   In response to any document request served in this contested matter, the responding party will serve written responses and objections within twenty days of service of the document request (or, with respect to Barclays discovery requests served in September 2009, the written responses and objections shall be served by October 23, 2009), which responses and objections will make clear the scope of the responding party's anticipated document production in response to the request.  In response to such responses and objections, the requesting party may conduct a meet and confer and pre-motion conference, and may file a motion to compel production, without prejudice to the responding party's right to argue that decision on such motion to compel should be deferred.

5.   On or before December 15, 2009, LBHI, the Trustee and the Creditors Committee shall serve statements (presented in separate, short and concise, numbered paragraphs, with citations to the record) of the facts relevant to their Rule 60 Motions as to which they contend there is no genuine issue that requires an evidentiary hearing.

6.   By January 8, 2010, Barclays shall identify any witnesses it may use to present expert testimony in support of its opposition to the Rule 60 Motions or any motion it may file as described in paragraph 8 and shall serve upon LBHI, the Trustee and the Creditors Committee expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B).  Thereafter, Barclays shall make its experts available for deposition.

7.   Barclays shall have the right to take up to 20 depositions without seeking leave of the Court.  Absent good cause to proceed otherwise, witnesses who are employed by or

are agents of, LBHI, the Trustee or the Creditors Committee, including but not limited to

representatives of LBHI, LBI, the Creditors Committee, Weil, Gotshal & Manges LLP, Hughes,

Hubbard & Reed, LLP, Houlihan Lokey, Deloitte & Touche LLP and Lazard Ltd., shall appear

for depositions within 14 calendar days of any notice of deposition or third party subpoena

served by Barclays, or within a reasonable period of time thereafter as agreed by the parties.

These depositions shall be completed by January 22, 2010, unless Barclays chooses to conduct

any such deposition at a later date, in which case the deposition shall be completed by no later

than February 15, 2010.  In the event that LBHI, the Trustee, or the Creditors Committee

attaches an affidavit or declaration to any of their reply briefs from one or more individuals who

has not yet been deposed, then Barclays shall have the right to depose such persons,

notwithstanding any of the limitations in this paragraph.

> 8.  By January 29, 2010, Barclays shall serve two oppositions: (i) a single

consolidated opposition to the Rule 60 Motions other than the Trustee's arguments regarding

interpretation of the Sale Order and the Purchase Agreement relating to the Undelivered Assets;

and (b) an opposition to all arguments made by the Trustee regarding interpretation of the Sale

Order and the Purchase Agreement relating to the Undelivered Assets.  At the same time,

Barclays shall file a motion to enforce the Sale Order and secure delivery of any Undelivered

Assets thereunder, and the arguments in such motion shall consist of an incorporation by

reference of all arguments set forth in Barclays' opposition brief referenced in subparagraph (b)

of this paragraph.

> 9.  By January 29, 2010, Barclays shall serve statements (presented in separate,

short and concise numbered paragraphs, with citations to the record) responding to the

statements submitted by LBHI, the Trustee and the Creditors Committee pursuant to

Paragraph 5.

10. Without duplicating discovery previously taken, LBHI, the Trustee and the

Creditors Committee may take at any time additional discovery, including but not limited to the

deposition of any witness who submits an affidavit or declaration on Barclays' opposition to the

Rule 60 Motions and any motion Barclays may file as described in Paragraph 8 above or

depositions under Rule 30(b)(6).  Such depositions shall be completed on or before February 15,

2010, and Barclays shall make all such witnesses available for deposition before that deadline.

Without leave of Court, the number of such depositions collectively taken by LBHI, the Trustee

and the Creditors Committee shall not exceed ten.  This limitation does not include expert

witnesses.  Absent good cause to proceed otherwise, witnesses employed by or agents of

Barclays, including but not limited to Cleary, Gottlieb, Steen & Hamilton LLP and Sullivan &

Cromwell LLP, shall appear within 14 calendar days of any notice of deposition or third party

subpoena served by LBHI, the Trustee or the Creditors Committee, or within a reasonable time

thereafter as agreed by the parties.  In the event that Barclays attaches an affidavit or declaration

to any of its motion papers from one or more individuals who have not yet been deposed, then

LBHI, the Trustee or the Creditors Committee shall have the right to depose such persons,

notwithstanding any of the limitations in this paragraph.

11.  By March 1, 2010, LBHI, the Trustee and the Creditors Committee shall

identify any experts and serve any expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B).

12. By March 4, 2010, LBHI, the Trustee and the Creditors Committee shall serve

their respective (i) reply papers in further support of the Rule 60 Motions; and (ii) opposition to

any motion Barclays may file, as described in Paragraph 8.

13. By March 18, 2010, Barclays shall serve and file its reply brief in further support of its motion to enforce the delivery of the Undelivered Assets.  Barclays shall be entitled to cite to its earlier expert report in support of its reply brief, but shall not be entitled to rely upon any supplemental expert report in support of its reply brief without making arrangements for a reasonable opportunity for deposition and supplemental response by the LBHI, the Trustee and the Creditors Committee.

14. The parties shall appear before the Court at 10 a.m. on March 25, 2010 for oral argument on the Rule 60 Motions.  The Court has scheduled ten days for any potential evidentiary hearing on the Rule 60 Motions beginning at 10 a.m. on April 26, 2010, and continuing as needed for the week of April 26, 2010 and the week of May 3, 2010.  If the Court determines that an evidentiary hearing is required, the parties shall agree upon and submit to the Court for its approval a schedule for the conduct of such hearing as well as for the exchange of witness lists, exhibit lists, and deposition designations applicable to such hearing.

15. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.


Dated: New York, New York
          October 27, 2009

                                    _s/ James M. Peck_____
                                    UNITED STATES BANKRUPTCY JUDGE

# A. 171

Intentionally left blank

# A. 172

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
                                              :

In re                                      :     Chapter 11 Case No.
                                              :

LEHMAN BROTHERS HOLDINGS INC.,    :     08-13555 (JMP)
*et al.*,                                         :
                                              :     (Jointly Administered)
                          Debtors.         :
--------------------------------------------------------- x

# REPORT OF
# ANTON R. VALUKAS, EXAMINER

Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
312-222-9350

919 Third Avenue
37th Floor
New York, NY  10022-3908
212-891-1600

March 11, 2010                               *Counsel to the Examiner*

## VOLUME 5 OF 9

**Section III.B: Avoidance Actions**

**Section III.C: Barclays Transaction**

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Gov & Ag | $40.0 | ST Borrowings | $0.0 |
| Commercial Paper | 1.1 | Gov & Ag | 21.0 |
| Mortgages | 2.7 | Commercial Paper | 0.0 |
| Total Corp Debt | 4.9 | Mortgages | 0.0 |
| Corp Equity | 8.8 | Corp Debt | 2.1 |
| Derivatives | 4.5 | Corp Equities | 6.3 |
| Cash | 0.7 | Derivatives | 4.5 |
| **Total** | **$62.7** | **Total** | **$33.9** |
| Collateralized ST Agr | 10.0 | Collateralized ST Fund | 34.5 |
| Receivables | 0.0 | Payables | 0.0 |
| Other Assets | 0.0 | Deposits | 0.0 |
| Inv In Con Subs | 0.0 | Due to Subs | 0.0 |
| Due From Subs | 0.0 | Sub Notes | 0.0 |
| **Total** | **10.0** | **Total** | **34.5** |
| | | **Total** | **68.4** |
| | | Cure pmt | 2.25 |
| | | Comp | 2.0 |
| **Adj. Total Assets** | **$72.65** | **Total** | **$72.65** |

Witnesses interviewed by the Examiner have different impressions of whether the sale transaction was supposed to be a "wash" (other than $250 million for the goodwill).    For example, Thomas Roberts of Weil described the sale transaction, as closed, as very similar to the transaction contemplated in the APA.[7870]   Roberts indicated that both deals entailed (1) Barclays' acquisition of assets and liabilities at a "wash"; (2) the purchase of the 745 Seventh Ave. headquarters and other real estate assets at appraised values; (3) the payment of $250 million for goodwill; and (4) job protection

---

55 (testifying that the schedule represented a summation of the liabilities that Barclays would assume and the assets it would acquire).

[7870] Examiner's Interview of Thomas A. Roberts, Apr. 28, 2009.

for roughly 10,000 employees for 90 days.[7871]  Roberts stated that Barclays eventually

bought the assets and liabilities generally at a wash, albeit in a smaller amount than

originally contemplated.    The "final schedule" of assets and liabilities dated

September 16 circulated in connection with the transaction showed an equal amount of

financial assets and liabilities being transferred to Barclays,[7872] as did the manila folder

used by Michael Klein during the closing weekend to sketch out the terms of the

transaction for the Creditors Committee.[7873]

James Seery indicated, however, that the sale transaction was intended to

maintain the broker/dealer enterprise value.[7874]  In Seery's mind, the transaction did not

involve the concept of a "wash" sale or transfer of a balanced book of assets and

liabilities; rather, he viewed the transaction to simply involve the purchase of all

securities positions (no matter the value) relating to the broker/dealer business.[7875]  Seery

indicated that when the Debtors and Barclays reached an agreement on Tuesday,

September 16, all of the parties understood that the population of long and short

positions would change before the transaction closed because, among other things,

counterparties were closing out their trades with LBI.[7876]  Seery indicated that he did not

know, however, whether there was an agreement concerning what would happen if the

---

[7871] Id.

[7872] Lehman, Final Balance Sheet (Sept. 16, 2008) [BCI-CG00033742].

[7873] Michael Klein, consultant retained by Barclays, Notes on Folder [Deposition Exhibit 338B].

[7874] Examiner's Interview of James P. Seery, Jr., Nov. 12, 2009, at p. 2.

[7875] Id.

[7876] Id.

# A. 173

**From:**    King, Samantha J: M&A Tax (LDN)
**Sent:**    Tue, 16 Sep 2008 05:25:49 GMT
**To:**    Grbic, Susan: Finance (NYK); Montaudy, Beatrice: Finance (NYK)
**CC:**    Walker, James: Finance (NYK)
**Subject:** FW: Long Island 2 Structure v2.ppt

---

Susan/ Beatrice

Updated set of slides for your files.

Cheers
sam
Samantha King
Director
M&A Tax
Barclays Bank plc, 1 Churchill Place, London E14 5HP
Direct: +44 (0)207 773 3968
Mob: +44 (0)776 964 3345
E-mail: samantha.king@barclayscapital.com


<<...>>

HIGHLY CONFIDENTIAL

# Long Island

# DRAFT
## Proforma structure & steps

Version 2; 16 9 08

Group Tax/Barcap Tax

1

# Step Plan

- Baltimore to acquire broker/ dealer business assets of Long Island being:
  - Assets subject to repo obligations
  - [8,000] staff on US contracts working in US fixed income, equities and investment banking businesses (including M&A but excluding OTC derivatives, energy and real estate)
  - IT systems and know-how
  - [Real estate leasehold]
- Baltimore may assume liabilities with lower fair value than the assets acquired generating negative goodwill
- Capital of £[1.8]bn will be raised from external sources via a straight subscription and a cash box to support future WRAs
- Timing of deal and details of target assets, assumed liabilities and personnel tbc

2



## Long Island 2 – Structure
### Step 1 – Raise capital

1a. Cashbox Bank subscribes for ordinary and redeemable preference shares in JCO.

1b. Selected shareholders agree to subscribe for BPLC shares at a discount of X to market value. Some shares are issued directly in consideration for [$0.5]bn cash and some in consideration for the transfer by Cashbox Bank to BPLC of ordinary and redeemable preference shares in JCO. The obligation for the latter is settled by the selected shareholders paying £[1.3]bn in cash to the Cashbox Bank which then pays up the redeemable preference shares, prior to the transfer.

Selected shareholders

1c. BPLC redeems redeemable preference shares in JCO receiving redemption proceeds of £[1.3]bn.

1d. BPLC contributes £[1.8]bn in cash to BBPLC.

BPLC – Baltimore PLC; BBPLC – Baltimore Bank PLC; JCO – a new Jersey incorporated, UK resident company;

BGUS – Baltimore Group US Corp; BCI – Baltimore Capital Inc

3



**Long Island 2 – Structure**
Step 2 – Acquire selected Long Island Inc assets

Transfer of assets for assumption of liabilities but no cash consideration

Negative goodwill, plus tax charge thereon at 46%.[1]

LBHI – Long Island Holdings Inc (in Chapter 11); LBI – Long Island Inc (will be in Chapter 7)

[1] Negative goodwill for US GAAP may be lower than for IFRS by amount of value ascribed to non-financial instruments. This may impact amount of capital required in BCI at step 3.



## Long Island 2 – Structure
Step 3 – Inject into BCI as capital required increases to run rate

Selected shareholders

3a. Over time BBPLC subscribes cash of $[3.5]bn for an issue of subordinated debt and between $[0.9]bn and $[2.0]bn for an issue of shares.

3b. Over time BGUS subscribes cash of $[3.5]bn for an issue of subordinated debt and contributes capital of between $[0.9]bn and $[2.0]bn.[1]

BPLC – Baltimore PLC; BBPLC – Baltimore Bank PLC; JCO – a new Jersey incorporated, UK resident company; BGUS – Baltimore Group US Corp; BCI – Baltimore Capital Inc;

[1] Negative goodwill for US GAAP may be lower than for IFRS by amount of value ascribed to non-financial instruments. This may impact amount of capital required in BCI at step 3.



Long Island
Computation of capital contribution & tax on day 1
Assuming negative goodwill

| Contract | $m's |
| --- | --- |
| Treasury Assets | 10,000 |
| Repo | (8,000) |
| Assumed contingent liability | (2,000) |
| | 0 |

|  | Day 1 Accounting |  |
| --- | --- | --- |
|  | $m's |  |
| Treasury Assets | 10,000 |  |
| Repo | (8,000) |  |
| Negative goodwill | 2,000 |  |
| PBT | 2,000 |  |
| Tax of 46% | (920) | 46% |
| PAT | 1,080 |  |

| Balance Sheet end of Day 1 |  |
| --- | --- |
| Treasury Assets | 10,000 |
| Repo | (8,000) |
| Tax | (920) |
| Net Assets | 1,080 |
| Ignoring capital for run rate |  |

| Run Rate Balance Sheet |  | RWA element |
| --- | --- | --- |
| Assets | 50,000 | 16,000 |
| Repo & liabilities | 46,500 |  |
| Tax liability | (920) |  |
| Sub debt | (3,500) |  |
| Net equity | 2,000 | 12.50% |
| Capital contribution say | 920 |  |

6

**Long Island**
Computation of capital contribution & tax on day 1
Assuming no goodwill positive or negative
(Query need to take Treasury and Repo)

|                  | Day 1 Accounting |        |
|------------------|------------------|--------|
|                  | $m's             |        |

| Contract         | $m's    |
|------------------|---------|
| Treasury Assets  | 10,000  |
| Repo             | (8,000) |
| Other liabilities| (2,000) |
|                  | 0       |

| | Day 1 Accounting | |
|---|---|---|
| | $m's | |
| Treasury Assets | 10,000 | |
| Repo | (8,000) | |
| Other liabilities | (2,000) | |
| Negative goodwill | 0 | |
| PBT | | |
| Tax at 46% | | 46% |
| PAT | 0 | |

| Balance Sheet end of Day 1 | |
|---|---|
| Treasury Assets | 10,000 |
| Repo | (8,000) |
| Other liabilities | (2,000) |
| Tax | 0 |
| Net Assets | 0 |
| Ignoring capital for run rate | |

| Run Rate Balance Sheet | | RWA element |
|---|---|---|
| Assets | 50,000 | 16,000 |
| Repo & liabilities | 48,500 | |
| Sub debt | (3,500) | |
| Net equity | 2,000 | 12.50% |
| Capital contribution say | (2,000) | |

# A. 174

**From:**    Syal, Vivek: Finance (LDN)
**Sent:**    Tue, 16 Sep 2008 14:50:46 GMT
**To:**    Syal, Vivek: Finance (LDN); Romain, Gary: Finance (LDN)
**CC:**    Drexler, Michael: Planning (LDN); Haworth, Richard: Barclays Capital (LDN); Clackson, Patrick: Finance (LDN); Walker, James: Finance (NYK)
**Subject:** RE: Long Island Balance Sheet

---

Gary - further to my voicemail (left a msg on your mobile) BCD have a specific question that I hope you can help with.

"There was also a question that came up on the bringdown DD around the HQ property – one of the CS guys had heard it was mortgaged – do you know how I could find out if that is correct?  Also, we need to understand if there are any leasing costs in the P&L relating to property."

Can you get back to me urgently on this or point me in the right direction as this requires clarification prior to any transaction proceeding.

Regards

Viv
07966 262 939

---

**From:**   Syal, Vivek: Finance (LDN)
**Sent:**   16 September 2008 15:14
**To:**   Romain, Gary: Finance (LDN)
**Cc:**   Drexler, Michael: Planning (LDN); Haworth, Richard: Barclays Capital (LDN); Clackson, Patrick: Finance (LDN); Walker, James: Finance (NYK)

**Subject:**   FW: Long Island Balance Sheet

Gary - I believe you are the man in the know......further to Bill's note below, do we have a final agreed set of assets, liabilities, consideration and goodwill numbers yet? Also pls confirm final treatment of real estate properties, per Bill's final paragraph.

I understand you will be feeding any changes though to Bill, when you have done so please let me/Richard Haworth know so we can incorporate into relevant downstream deliverables.

I am not at my desk and my mobile is probably the best way to get in touch with me (+44 7966 262 939).

Regards,

Viv

---

**From:**   Castell, Bill:

**HIGHLY CONFIDENTIAL**

**Sent:**    16 September 2008 14:46
**To:**    Stone, Jonathan: Barclays Treasury (LDN); Haworth, Richard: Barclays Capital (LDN); Fowden, Rupert: Barclays Treasury (LDN); Syal, Vivek: Finance (LDN); Jones, Stephen: IBD (LDN); Kohler, Reto: Planning (NYK)

**Cc:**    Clackson, Patrick: Finance (LDN); Walker, James: Finance (NYK); Romain, Gary: Finance (LDN); Baker, Joanna: ; Meredith-Jones, Daniel: ; Ball, Warwick: ; McKay, Darren: ; Trevelyan, James: ; Thorburn, Harry: ; Sieh, Tim: ; Dennis, John:

**Subject:**    Long Island Balance Sheet

Following the numerous emails on people trying to reconcile the £75.3bn in the board deck and in particular wanting to understand the £19.9bn in the board deck I thought it best to outline what I understand to be the latest position. Having spoken to Gary I understand that as a result of current negotiations on the legal documentation there is a possibility that the numbers below may change but I understand these were the basis for the $3bn negative goodwill.

All figures in $bn

**FV INVENTORY**

|  | Gross | Net |  |
|---|---|---|---|
| Mortgage | 3.25 | (0.50) | 2.75 |
| Corporate Debt | 20.00 | (1.50) | 18.50 |
| Government | 35.00 | (0.10) | 34.90 |
| Agencies | 4.00 | (0.10) | 3.90 |
| SUBTOTAL | 62.25 | (2.20) | 60.05 |
| Minus | (1.50) | (0.00) | (1.50)* |
| TOTAL | 60.75 | (0.00) | **58.55** |

*Unallocated deduction – not assigned to a specific asset class

| Cash | 1.30 |
|---|---|
| Match Book | 10.00 |
| 7 Avenue Office | 1.00 |
| Other | 1.20 |
| (Fixed Assets, F&F etc) | |

**TOTAL ASSETS**    **72.05**

| Short Positions | (56.00) |
|---|---|
| Match Book | (10.00) |
| Bonus Accrual | (1.30) |
| External funding | (0.20) |

**TOTAL LIABILITIES**    **(67.5)**

**NET ASSETS**    **4.55**

**CONSIDERATION**    **1.55**

HIGHLY CONFIDENTIAL

**NEGATIVE GOODWILL      3.00 (Pre-tax)**

Please note that when the board deck refers to $3.00bn negative equity it refers to a consideration of $250m. However this consideration as I understand it did not cover the real estate properties which when included increases the consideration to $1.55bn for a NAV of $4.55bn.

Kind regards,

Bill

_____

**Bill Castell**
Assistant Director
Barclays Corporate Development
29th Floor, One Churchill Place, London, E14 5HP
Tel:  +44 (0) 20 7116 9902
Fax:  +44 (0) 20 7116 7706
Mob: +44 (0) 781 000 0598
e-mail: bill.castell@barclays.com

**HIGHLY CONFIDENTIAL**