# A. 176



 "Duane MCLAUGHLIN"
<dmclaughlin@cgsh.com>
09/16/2008 11:44 PM

To   lori.fife@weil.com

cc   "Joel Moss" <jmoss@cgsh.com>

bcc

Subject   Fw: Corporate eFax message from 2125261741 - 47
page(s)

| History: | 🔁 This message has been replied to and forwarded. |
|---|---|

Lori - attached is the current but not final APA.

Duane McLaughlin | CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza | New York, New York 10006
T: +1.212.225.2106 | F: +1.212.225.3999, +1.212.693.9716 | M: +1.917.697.8734
dmclaughlin@cgsh.com

----- Original Message -----
From: "eFax Corporate" [message@inbound.efax.com]
Sent: 09/17/2008 03:34 AM GMT
To: Duane MCLAUGHLIN; Janis Signorino
Subject: Corporate eFax message from 2125261741 - 47 page(s)

You have received a 47 page fax at 2008-09-16 23:34:52 EDT.

* The reference number for this fax is minl_did13-1221621370-2126939716-6.

Please visit https://www.efaxcorporate.com/corp/twa/page/customerSupport if
you have any questions regarding this message or your service.  You may also
e-mail our corporate support department at corporatesupport@mail.efax.com.

Thank you for using the eFax Corporate service!

(c) 2008 j2 Global Communications, Inc. All rights reserved.
eFax Corporate(r) is a registered trademark of j2 Global Communications, Inc.

This account is subject to the terms listed in the eFax Corporate Customer
Agreement:
http://home.efax.com/customerAgreements/corp/customerAgreement.html

This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.


d07ada6.pdf

WGM-LEHMAN-E 00000356

09/16/2008    23:15    LEHMAN → 912126939716    NO.577    P01

EXECUTION COPY

~~DRAFT – September 16, 2008~~

~~CONFIDENTIAL~~

ASSET PURCHASE AGREEMENT

AMONG

LEHMAN BROTHERS HOLDINGS INC.

LEHMAN BROTHERS INC.

LB 745 LLC

AND

BARCLAYS CAPITAL INC.

———————————

Dated as of September 16, 2008

[New York #1948695 v2]

1

WGM-LEHMAN-E 00000357

09/16/2008    23:15    LEHMAN → 912126939716                                    NO.577    P02

# TABLE OF CONTENTS

**Page**

[New York #1948695 v2]

i

WGM-LEHMAN-E 00000358

09/16/2008    23:15    LEHMAN → 912126939716    NO.577    003


*"745"*

## ASSET PURCHASE AGREEMENT    *Delaware*

ASSET PURCHASE AGREEMENT, dated as of September 16, 2008 (this "Agreement"), among **LEHMAN BROTHERS HOLDINGS INC.**, a Delaware corporation ("LBHI"), **LEHMAN BROTHERS INC.**, a Delaware corporation ("LBI" and, together with LBHI, the "Seller"), **LB 745 LLC**, a ⌐     ¬ limited liability company (~~collectively, "Seller"~~), and **BARCLAYS CAPITAL INC.**, a Connecticut corporation ("Purchaser").

### W I T N E S S E T H :

*LBHI*    WHEREAS, ⌐——┤ is a debtor-in-possession under title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on September 15, 2008 in the United States Bankruptcy Court for the Southern District of New York (Manhattan) (the "Bankruptcy Court") (Case No. [08-13555]) (the "Bankruptcy Case");

WHEREAS, the Seller and its Subsidiaries presently conduct the Business;

*and 745*        *and 745*

WHEREAS, Seller desires to sell, transfer and assign to Purchaser, and Purchaser desires to purchase, acquire and assume from Seller pursuant to Sections 363 and 365 of the Bankruptcy Code, all of the Purchased Assets and Assumed Liabilities, all as ~~more specifically provided~~ herein; and

*an Affiliate of*        WHEREAS, Purchaser has agreed to provide to LBHI a debtor-in-possession facility (the "DIP Facility") and has agreed to provide to LBI certain other financing;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter contained, the parties hereby agree as follows:

### ARTICLE I

### DEFINITIONS

1.1    Certain Definitions.

For purposes of this Agreement, the following terms shall have the meanings specified in this Section 1.1:

"Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "control" (including the terms

ERROR! UNKNOWN DOCUMENT PROPERTY NAME.

1

[New York #1948695 v2]

09/16/2008    23:15    LEHMAN → 912126939716    NO.577    □04

"controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract or otherwise.

"Ancillary Agreements" means [

"Breakup Fee and Competing Bid Order" means an order of the Bankruptcy Court in the form attached as Exhibit D hereto. "Business" means the U.S. and Canadian investment banking and capital markets businesses of Seller including the fixed income and equities cash trading, brokerage, dealing, trading and advisory businesses, investment banking operations and LBI's business as a futures commission merchant.

"Business Day" means any day of the year on which national banking institutions in New York are open to the public for conducting business and are not required or authorized to close.

"Code" means the Internal Revenue Code of 1986, as amended.

"Contract" means any contract, indenture, note, bond, lease or other agreement.

"Documents" means all files, documents, instruments, papers, books, reports, records, tapes, microfilms, photographs, letters, budgets, forecasts, ledgers, journals, title policies, customer lists, regulatory filings, operating data and plans, technical documentation (design specifications, functional requirements, operating instructions, logic manuals, flow charts, etc.), user documentation (installation guides, user manuals, training materials, release notes, working papers, etc.), marketing documentation (sales brochures, flyers, pamphlets, web pages, etc.), and other similar materials related to or necessary for the conduct of the Business and the Purchased Assets in each case whether or not in electronic form.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"Excluded Assets" shall mean the following assets, properties, interests and rights of Seller and its Subsidiaries:

(a)    the shares of capital stock, limited liability company membership, general and limited partnership, and other equity interests, of Seller and its Subsidiaries (other than (i) the capital stock of Townsend Analytics and (ii) the capital stock or other equity interest of any other Subsidiary that Seller and Purchaser may agree shall be a Purchased Asset prior to the entry of the Sale Order);



2

[New York #1948695 v2]

WGM-LEHMAN-E 00000360

09/16/2008   23:15   LEHMAN → 912126939716                          NO.577   P05

*[handwritten: Securities (Reserved)]*

*[handwritten: (the]* *[handwritten: than]*

(b)   all cash, cash equivalents, bank deposits or similar cash items of
LBI and its Subsidiaries other h~~an the~~ $1.3 billion in cash, cash equivalents, bank
deposits or similar cash items held on the date hereof ~~(and any securities, property or
assets of any type purchased or otherwise acquired directly or indirectly therewith) (the~~
"Retained Cash");

*[handwritten: (Reserved)]*   *[handwritten: all intercompany receivables]*

(c)   ~~securities not listed on Exhibit A and any securities, property or
assets of any type purchased or otherwise acquired directly or indirectly therewith;~~

(d)   the Excluded Contracts, including any accounts receivable to the
extent arising out of any Excluded Contract;

(e)   any ~~Excluded~~ Intellectual Property~~[PLEASE DESCRIBE]~~;

*[handwritten: Rights that do not constitute Purchased Intellectual Property]*

(f)   any (i) confidential personnel and medical records pertaining to
any Excluded Employee; (ii) other books and records that LBI is required by Law to
retain, including, but not limited to, books and records required to be retained by Rules
17a-3 and 17a-4 of the Exchange Act with respect to the Purchased Assets or that LBHI
reasonably determines are necessary to retain including, without limitation, Tax Returns,
financial statements, and corporate or other entity filings; provided, however, that
Purchaser shall have the right to make copies of any portions of such retained books and
records that relate to the Business or any of the Purchased Assets; and (iv) minute books,
stock ledgers and stock certificates of Subsidiaries..

(g)   any claim, right or interest of LBHI or any of its Subsidiaries in or
to any refund, rebate, abatement or other recovery for Taxes, together with any interest
due thereon or penalty rebate arising therefrom, for any Tax period (or portion thereof)
ending on or before the Closing Date;

(h)   all insurance policies or rights to proceeds thereof relating to the
assets, properties, business or operations of Seller or any of its Subsidiaries other than
customer account insurance supplemental to SIPC coverage included in the Business;

*[handwritten: those]*

(i)   any rights, claims or causes of action of Seller or any of its
Subsidiaries against third parties relating to assets, properties, business or operations of
Seller or any of its Subsidiaries other than primarily related to Purchased Assets arising
out of events occurring on or prior to the Closing Date; *[handwritten: ?]*

(j)   commercial real estate investments (including commercial loans,
equity investments in such commercial real estate and other commercial real estate
assets), private equity investments and hedge fund investments;

(k)   50% of each position in residential real estate mortgage securities;

*[handwritten: and all Archstone debt and equity positions]*

3

WGM-LEHMAN-E 00000361

*[handwritten: primarily]*

(l)      assets related to the soliciting, placing, clearing and executing of buy and sell orders for ~~futures and~~ derivatives contracts by Lehman Brothers Derivative Products Inc. and all activities related or ancillary thereto;

(m)      all artwork owned by Seller and its Subsidiaries;

(n)      all assets related to the IMD Business and derivatives contracts;

(o)      any assets set aside, segregated, or otherwise specifically identified as being held for the purpose of satisfying Excluded Liabilities referred to in Section 2.4(e); ~~and~~

*[handwritten: 1.1(a)]*

(p)      all real property leases of Seller and its Subsidiaries, and all rights and obligations appurtenant thereto, as set forth on Schedule [•], other than the Transferred Real Property Leases; *[handwritten: ; and]*

(q)      the assets set forth on Schedule [  ].

*[handwritten: (q) Lehman Commercial Paper Inc. and any assets thereof.]*

"Excluded Contracts" means all of the Contracts of Seller and its Subsidiaries, other than the Purchased Contracts.

"Furniture and Equipment" means all furniture, fixtures, furnishings, equipment, vehicles, leasehold improvements, and other tangible personal property owned or used by Seller and its Subsidiaries in the conduct of the Business, including all desks, chairs, tables, Hardware, copiers, telephone lines and numbers, telecopy machines and other telecommunication equipment, cubicles and miscellaneous office furnishings and supplies.

"GAAP" means generally accepted accounting principles in the United States as of the date hereof.

"Governmental Body" means any government or governmental or regulatory, judicial or administrative, body thereof, or political subdivision thereof, whether foreign, federal, state, national, supranational or local, or any agency, instrumentality or authority thereof, or any court or arbitrator (public or private) or any self-regulatory organization, including, but not limited to, the Financial Industry Regulatory Authority.

"Hardware" means any and all computer and computer-related hardware, networks and peripherals, including, but not limited to, information and communication systems, computers, file servers, facsimile servers, scanners, color printers, laser printers and networks.

"HSR Act" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended.

4

WGM-LEHMAN-E 00000362

09/16/2008    23:15    LEHMAN → 912126939716                    NO.577    P07

"IMD Business" means [the investment management business of Seller and its Subsidiaries.]

"Intellectual Property Rights" means, collectively, all intellectual property and other similar proprietary rights in any jurisdiction, whether owned or held for use under license, whether registered or unregistered, including without limitation such rights in and to: (i) patents and applications therefor, including continuations, divisionals, continuations-in-part, reissues, continuing patent applications, reexaminations, and extensions thereof, any counterparts claiming priority therefrom and patents issuing thereon (collectively, "Patents") and inventions, invention disclosures, discoveries and improvements, whether or not patentable, (ii) all trademarks, service marks, trade names, service names, brand names, all trade dress rights, logos, slogans, Internet domain names and corporate names and general intangibles of a like nature, together with the goodwill associated with any of the foregoing, and all applications, registrations and renewals thereof and all common law rights thereto (collectively, "Marks"), (iii) copyrights and registrations and applications therefor and renewals and extensions thereof, and works of authorship, databases and mask work rights, and all moral rights (collectively, "Copyrights"), (iv) all Software, Technology and market and other data, and rights to limit the use or disclosure of any of the foregoing by any Person, and (v) all claims, causes of action and defenses relating to the enforcement of any of the foregoing.

"Intellectual Property Licenses" means (i) any grant to a third Person of any license, immunity, a covenant not to sue or otherwise any right to use or exploit, any of the Purchased Intellectual Property owned by Seller or any of its Subsidiaries, and (ii) any grant to Seller or its Subsidiaries of a license, immunity, a covenant not to sue or otherwise any right to use or exploit any Purchased Intellectual Property which is not owned by Seller or any of the Subsidiaries.

"Knowledge of Seller" means the knowledge after due inquiry, as of the date of this Agreement, of the senior officers and directors of Seller and its Subsidiaries.

"Law" means any federal, state, local or foreign law, statute, code, ordinance, rule or regulation (including rules of any self-regulatory organization).

"Legal Proceeding" means any judicial, administrative or arbitral actions, suits, proceedings (public or private) or claims or any proceedings or investigations by or before a Governmental Body.

"Liability" means any debt, liability or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), and including all costs and expenses relating thereto.

"Lien" means any lien, encumbrance, pledge, mortgage, deed of trust, security interest, claim, lease, charge, option, right of first refusal, easement, servitude,

[New York #1948695 v2]

5

WGM-LEHMAN-E 00000363

proxy, voting trust or agreement, transfer restriction under any shareholder or similar agreement or encumbrance.

"Order" means any order, injunction, judgment, decree, ruling, writ, assessment or arbitration award of a Governmental Body.

"Ordinary Course of Business" means the ordinary and usual course of normal day-to-day operations of the Business through September 14, 2008 consistent with past practice.

"Permits" means any approvals, authorizations, consents, licenses, permits, registrations or certificates of a Governmental Body.

"Permitted Exceptions" means all (i) defects, exceptions, restrictions, easements, rights of way and encumbrances of record, (ii) statutory liens for current Taxes, assessments or other governmental charges not yet delinquent or the amount or validity of which is being contested in good faith by appropriate proceedings provided an appropriate reserve is established therefor; (iii) mechanics', carriers', workers', repairers' and similar Liens arising or incurred in the Ordinary Course of Business; (iv) zoning, entitlement and other land use and environmental regulations by any Governmental Body provided that such regulations have not been violated; (v) title of a lessor under a capital or operating lease; (vi) Liens arising under the DIP Facility; and (vii) the terms and provisions of the ground lease and related documents affecting the property located at 745 Seventh Avenue, New York, NY (the "745 Seventh Ground Lease").

"Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust, unincorporated organization, Governmental Body or other entity.

"Purchased Assets" means all of the assets of Seller ~~and its Subsidiaries~~ used in connection with the Business (excluding the Excluded Assets), ~~including~~:  *stet*

    (a)    the Retained Cash;

    (b)    all deposits (including customer deposits, security deposits for rent, electricity, telephone or otherwise and required capital deposits) and prepaid charges and expenses of Seller and its Subsidiaries associated with the Business, other than any deposits or prepaid charges and expenses paid in connection with or relating to any Excluded Assets;

    (c)    ~~all rights of Seller and its Subsidiaries under [real property / real property leases]~~, together with all improvements, fixtures and other appurtenances thereto and rights in respect thereof;

*the Transferred Real Property Leases*

[New York #1948695 v2]

WGM-LEHMAN-E 00000364



(collectively, "Long Positions")

*with a book value as of the date hereof of approximately $70 billion*

(d)   government securities, commercial paper, ~~mortgage loans~~, corporate debt, corporate equity, exchange traded derivatives and collateralized short-term agreements;

(e)   50% of each position in the residential real estate mortgage ~~securities~~;

(f)   the Furniture and Equipment;

(g)   the Purchased Intellectual Property and all income, royalties, damages and payments due or payable at the Closing or thereafter relating to the Purchased Intellectual Property (including damages and payments for past or future infringements or misappropriations thereof), the right to sue and recover damages for past or future infringements or misappropriations thereof and the right to fully and entirely stand in the place of Seller in all matters related thereto;

(h)   the Purchased Contracts;

(i)   all Documents that are used in, held for use in or intended to be used in, or that arise in connection with, or are necessary to carry on or are related to the operation of the Business, including Documents relating to products, services, marketing, advertising, promotional materials, Purchased Intellectual Property, personnel files for Transferred Employees and all files, customer files and documents (including credit information), account agreements, books and records required to be maintained in connection with the Business under applicable Law, compliance manuals, supervisory policies and procedures, customer lists, supplier lists, records, literature and correspondence, whether or not physically located on any of the premises referred to in clause (d) above, but excluding (i) personnel files for Excluded Employees of Seller or its Subsidiaries who are not Transferred Employees, (ii) such files as may be required under applicable Law regarding privacy, (iii) Documents which Seller is not permitted to transfer pursuant to any contractual confidentiality obligation owed to any third party, and (iv) any Documents primarily related to any Excluded Assets;

(j)   all Permits used by Seller in the Business to the extent assignable under applicable Law;

(k)   all supplies owned by Seller and used in connection with the Business;

(l)   all rights of Seller under non-disclosure or confidentiality, non-compete, or non-solicitation agreements with employees, contractors and agents of Seller or its Subsidiaries or with third parties to the extent relating to the Business or the Purchased Assets (or any portion thereof);

~~(m)   to the extent specifically provided in Article IX, the assets, if any, that constitute a part of the Qualified Plans, the VEBA and the Business Plans;~~

7

WGM-LEHMAN-E 00000365

# A. 177

**From:**    CATHYT on behalf of Turner, Cathy : Human Resources
**Sent:**    Wed, 17 Sep 2008 00:35:44 GMT
**To:**    Varley, John : Group Exec
**CC:**    Lucas, Chris : Group Exec
**Subject:** Confirmation

John

The release went out subject to the assets and liabilities numbers being finally confirmed at US$72bn / US$68bn and including a sentence, well down the text, for the total consideration of US$1.75bn.

A copy is attached.

Congratulations.

Cathy

Cathy Turner
Barclays HR Director
T: 020 7116 2933
PA: Jo Barry



EXHIBIT
3 44A
9.3.09    AW

**HIGHLY CONFIDENTIAL**

BCI-EX-(S)-00053482



This announcement shall not constitute an offer to sell or the solicitation of an offer to buy any securities, nor shall there be any sale or purchase of securities in any jurisdiction in which such offer, solicitation or sale would be unlawful prior to registration or qualification under the securities laws of any such jurisdiction.

**For immediate release**                                                                 17 September 2008

### Barclays announces agreement to acquire Lehman Brothers
### North American investment banking and capital markets businesses

The Board of Barclays announces that Barclays has agreed, subject to US Court and relevant regulatory approvals, to acquire Lehman Brothers North American investment banking and capital markets operations and supporting infrastructure. The transaction will create a premier integrated global bulge bracket investment banking company with a leading presence in all major markets and across all major lines of business including: equity capital markets, debt capital markets, mergers and acquisitions, commodities trading and foreign exchange.

Barclays will acquire trading assets with a current estimated value of £40bn (US$72bn) and trading liabilities with a current estimated value of £38bn (US$68bn) for a cash consideration of £0.14bn (US$0.25bn). Barclays will also acquire the New York headquarters of Lehman Brothers as well as its two data centres at close to their current market value.

In response to this opportunity, certain Barclays shareholders have expressed support for the transaction and interest in increasing their shareholdings in Barclays. The Board of Barclays expects these discussions to lead to a subscription of at least £0.6bn (US$1bn) of additional equity. The proposed transaction with Lehman Brothers and the additional equity would result in an enhancement of Barclays earnings and capital ratios.

Commenting on this announcement, John Varley, Barclays Group Chief Executive, said:

"The proposed acquisition of Lehman Brothers North American investment banking and capital market operations accelerates the execution of our strategy of diversification by geography and business in pursuit of profitable growth on behalf of our shareholders, in particular increasing the percentage of Barclays earnings sourced in North America. This transaction delivers the strategic benefits of a combination with Lehman Brothers core franchise, whilst meeting Barclays strict financial criteria, and strengthening our capital ratios."

Robert E Diamond Jr, Barclays President, said:

"This is a once in a lifetime opportunity for Barclays. We will now have the best team and most productive culture across the world's major financial markets, backed by the resources of an integrated universal bank. We welcome the opportunity to add Lehman's people and capabilities to the Barclays team."

Herbert H McDade III, Lehman Brothers Chief Operating Officer, said:

"Lehman Brothers strength has always been our client franchise. With this transaction, we have the opportunity to continue the growth and development of our US investment banking and capital market franchises with one of the leading financial institutions in the world. Together with

1

HIGHLY CONFIDENTIAL

Barclays, these businesses will be a part of a global financial services powerhouse delivering a comprehensive suite of products and services to our clients."

2

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00053484

1. Transaction Structure

The Lehman Brothers operations to be acquired in the transaction (the 'Acquisition') have approximately 10,000 employees, trading assets currently estimated to have a value of £40bn (US$72bn), and liabilities currently estimated to have a value of £38bn (US$68bn). The Lehman Brothers operations include Lehman Brothers North American fixed income and equities sales, trading and research and investment banking businesses (the 'Lehman Brothers businesses'). Lehman Brothers will receive £0.14bn (US$0.25bn) in cash as consideration for the Lehman Brothers businesses.

Barclays has also agreed to acquire Lehman Brothers New York Head Office at 745 Seventh Avenue and two data centres in New Jersey for close to their current market value, estimated at £0.8bn (US$1.5bn). The combined consideration totals some £1.0bn (US$1.75bn).

The Acquisition is subject to a number of conditions including the approval of the United States Bankruptcy Court for the Southern District of New York. Lehman Brothers is filing an emergency motion with the Bankruptcy Court to seek a hearing to obtain approval for the Acquisition. The Acquisition is also subject to certain usual conditions including receipt of necessary regulatory approvals and US antitrust clearances. The agreement for the Acquisition may be terminated if it is not completed by 24 September 2008.

2. Transaction Benefits

The Acquisition will combine two strong client franchises and product offerings, with the potential to create significant value for Barclays shareholders. The Lehman Brothers businesses are a highly complementary fit for Barclays investment banking business, Barclays Capital. The combined business will be a premier global investment bank with an increased presence in the US and an enhanced product offering. Among other benefits, the combination of the two businesses will:

- confirm Barclays Capital as a leading debt capital markets house globally;
- have a top 3 position in the US capital markets, the largest in the world;
- extend Barclays Capital's range of investment banking products, with the addition of Lehman Brothers strong US M&A and equity capital markets franchises; and
- strengthen Barclays Capital's hedge fund franchise through the addition of prime brokerage and cash equity capabilities.

The Acquisition will result in the proportion of Barclays revenues derived from the US rising significantly. Given the strong cultural fit, Barclays intends to achieve a rapid integration so as to minimise disruption to employees, clients and counterparties.

3. Barclays Current Trading

Barclays has traded satisfactorily in July and August. The monthly run rate for the Group's profit before tax in these months was slightly lower than the average for the first half of the year, reflecting usual seasonality. All businesses were profitable.

4. Employees and Management

Barclays believes the Lehman Brothers businesses have an excellent team of people whose skills, capabilities and culture provide a good fit with Barclays and its clients. Barclays looks forward to welcoming them to our team and working together to deliver the combination's full potential.

3

HIGHLY CONFIDENTIAL

The acquired businesses will be merged into Barclays Capital, which forms part of Barclays Investment Banking and Investment Management of which Robert E Diamond Jr, is Chief Executive.

**5. Share Issue**

Further details of the expected issue of new shares in connection with the Acquisition will be published in due course.

**6. Advisers**

Barclays Capital, Credit Suisse Securities (Europe) Limited, Deutsche Bank AG, London Branch and JPMorgan Cazenove Limited are acting as financial advisers to Barclays. Credit Suisse Securities (Europe) Limited and JPMorgan Cazenove Limited are joint corporate brokers to Barclays. Clifford Chance LLP and Cleary Gottlieb Steen & Hamilton LLP are acting as legal advisers to Barclays.

**7. Analyst and Investor conference call**

A conference call for analysts and institutional investors will be hosted by John Varley, Barclays Group Chief Executive and Robert E Diamond Jr, Barclays President. The call will commence at 12.00pm (BST) 17 September 2008.

To access the live conference call please dial 0845 401 9092 (UK callers) or +44 20 3023 4419 (all other locations). Access code: "Barclays Announcement". A live webcast of the conference call will also be available at www.barclays.com/investorrelations.

A replay of the conference call and webcast will be available after the event. Access will be available via the Barclays investor relations website at the above address.


For further information please contact:

| | |
|---|---|
| Investor Relations | Media Relations |
| Mark Merson | Leigh Bruce |
| +44 (0) 20 7116 5752 | +44 (0) 7826 910292 / +44 (0) 20 7773 7371 |
| | |
| John McIvor | Simon Eaton |
| +44 (0) 20 7116 2929 | +44 (0) 7917 068479 / +44 (0)20 3134 2111 |
| | |
| | Peter Truell |
| | +1 212 412 7576 / +1 917 826 8636 |


Barclays Capital, which is authorised and regulated in the United Kingdom by the Financial Services Authority, is acting for Barclays PLC and Barclays Bank PLC and for no one else as joint financial adviser in connection with the Acquisition and will not be responsible to any other person for providing the protections afforded to clients of Barclays Capital nor for advice in connection with the Acquisition or the contents of this announcement or any other matters referred to in this announcement.

Credit Suisse Securities (Europe) Limited ("Credit Suisse"), which is authorised and regulated in the United Kingdom by the Financial Services Authority, is acting as joint financial adviser and joint corporate broker to Barclays Bank PLC and Barclays PLC and is acting for no-one else in connection with the Acquisition, and will not be responsible to anyone other than Barclays Bank PLC and Barclays PLC for providing the

4

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00053486

protections afforded to customers of Credit Suisse nor for providing advice to any other person in relation to the Acquisition or any other matter referred to herein.

Deutsche Bank AG, London branch, is authorised under German Banking Law (competent authority: BaFin – Federal Financial Supervising Authority) and regulated by the Financial Services Authority for the conduct of UK business. Deutsche Bank AG, London branch, is acting as joint financial advisor for Barclays Bank PLC and Barclays PLC and no one else in connection with the Acquisition and will not be responsible to anyone other than Barclays Bank PLC and Barclays PLC for providing the protections afforded to the clients of Deutsche Bank AG, London branch, or for providing advice in connection with the Acquisition or any other matter referred to herein.

JPMorgan Cazenove Limited ("JPMC"), which is authorised and regulated in the United Kingdom by the Financial Services Authority, is acting as joint financial advisor and joint corporate broker to Barclays Bank PLC and Barclays PLC and no-one else in connection with the Acquisition, and will not be responsible to anyone other than Barclays Bank PLC and Barclays PLC for providing the protections afforded to customers of JPMC nor for providing advice to any other person in relation to the Acquisition or any other matter herein.


**Information on Barclays**

Barclays is a major global financial services provider engaged in retail and commercial banking, credit cards, investment banking, wealth management and investment management services with an extensive international presence in Europe, the United States, Africa and Asia. With over 300 years of history and expertise in banking, Barclays operates in over 50 countries and employs approximately 147,000 people. Barclays moves, lends, invests and protects money for over 42 million customers and clients worldwide. For further information about Barclays, please visit our website www.barclays.com.


**Other information**

The exchange rate used in this announcement is US$1.7935:£1.00 as published in the Financial Times on 16 September 2008. Nothing in this announcement is intended, or is to be construed, as a profit forecast or to be interpreted to mean that earnings per Barclays share for the current or future financial years, or those of the enlarged group, will necessarily match or exceed the historical published earnings per Barclays share.

This announcement shall not constitute an offer to sell or the solicitation of an offer to buy any securities, nor shall there be any sale or purchase of securities in any jurisdiction in which such offer, solicitation or sale would be unlawful prior to registration or qualification under the securities laws of any such jurisdiction.

**Forward-looking statements**

This announcement contains certain forward-looking statements with respect to certain of Barclays plans and its current goals and expectations relating to its future financial condition and performance and which involve a number of risks and uncertainties. Barclays cautions readers that no forward-looking statement is a guarantee of future performance and that actual results could differ materially from those contained in the forward-looking statements. These forward-looking statements can be identified by the fact that they do not relate only to historical or current facts. Forward-looking statements sometimes use words such as 'aim', 'anticipate', 'target', 'expect', 'estimate', 'intend', 'plan', 'goal', 'believe', or other words of similar meaning. Examples of forward-looking statements include, among others, statements regarding consummation of the proposed acquisition of the Lehman Brothers businesses by Barclays within the expected timeframe and on the expected terms (if at all), the benefits of the proposed acquisition of certain of the Lehman Brothers businesses by Barclays, including the achievement of synergy targets, Barclays future financial position, income growth, impairment charges, business strategy, projected costs, estimates of capital expenditure and revenue benefits, projected levels of growth in the banking and financial markets, the enlarged group's future financial and operating results, future financial position, projected costs, estimates of capital expenditure, and plans and objectives for future operations of Barclays and the enlarged group and other statements that are not historical fact.

5

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00053487

By their nature, forward-looking statements involve risk and uncertainty because they relate to future events and circumstances, including, but not limited to, UK domestic and global economic and business conditions, the effects of continued volatility in credit markets, market-related risks such as changes in interest rates and exchange rates, the policies and actions of governmental and regulatory authorities, changes in legislation, the further development of standards and interpretations under International Financial Reporting Standards ("IFRS") applicable to past, current and future periods, evolving practices with regard to the interpretation and application of standards under IFRS, the outcome of pending and future litigation, the success of future acquisitions and other strategic transactions and the impact of competition — a number of which factors are beyond Barclays control. As a result, Barclays actual future results may differ materially from the plans, goals, and expectations set forth in Barclays forward-looking statements. Any forward-looking statements made herein by or on behalf of Barclays speak only as of the date they are made. Except as required by the FSA, the London Stock Exchange or applicable law, Barclays expressly disclaims any obligation or undertaking to release publicly any updates or revisions to any forward-looking statements contained in this announcement to reflect any changes in Barclays expectations with regard thereto or any changes in events, conditions or circumstances on which any such statement is based. The reader should, however, consult any additional disclosures that Barclays has made or may make in documents it has filed or may file with the SEC.

## Important information

The distribution of this announcement to persons not resident in the United States and the United Kingdom may be affected by the laws of the relevant jurisdictions. Such persons should inform themselves about and observe any applicable requirements.

Neither the content of Barclays website nor any website hyperlinks on such website are incorporated in, or form part of, this announcement.

6

HIGHLY CONFIDENTIAL

BCI-EX-(S)-00053488

# A. 178

**From:**    Walker, James: Finance (NYK)
**Sent:**    Wed, 17 Sep 2008 00:41:11 GMT
**To:**    Wang, Betty: Finance (NYK)
**Subject:** FW: Scanned document from Wang, Betty: Finance (NYK)

---

**From:**    Walker, James: Finance (NYK)
**Sent:**    Tuesday, September 16, 2008 8:36 PM
**To:**    Ricci, Rich: Barclays Capital
**Subject:**    FW: Scanned document from Wang, Betty: Finance (NYK)

Patrick's final working spreadsheet that I referred to

**From:**    Wang, Betty: Finance (NYK)
**Sent:**    Tuesday, September 16, 2008 8:28 PM
**To:**    Walker, James: Finance (NYK)
**Subject:**    FW: Scanned document from Wang, Betty: Finance (NYK)

**From:**    Wang, Betty: Finance (NYK)
**Sent:**    Tuesday, September 16, 2008 8:27 PM
**To:**    Wang, Betty: Finance (NYK)
**Subject:**    Scanned document from Wang, Betty: Finance (NYK)

<<...>>

**HIGHLY CONFIDENTIAL**

**Acquisition summary**                          new

| | |
|---|---:|
| Inventory  - carrying amount | 62.5 |
| Inventory - retention mark | -0.5 |
| Inventory - valuation adjustment | |
| Inventory - total | 62.00 |
| Cash | 0.7 |
| Collateralised finance | 10 |
| 7th Avenue | 0.95 |
| Non-financial assets | 1 |
| Total assets | 74.65 |
| | |
| Short positions | -47.9 |
| Collateralised finance | -21 |
| Bonus accrual | -1.3 |
| External sub notes | |
| Total liabilities | -70.20 |
| | |
| Net assets | 4.45 |
| | |
| Consideration | 1.70 |
| | |
| Negative goodwill | 2.75 |
| | |
| Tax [NB: should assist in utilising existing DT asse | 0.77 |
| | |
| Post-tax | 1.98 |

NB: Net customer balances are not acquired/assumed

HIGHLY CONFIDENTIAL

# A. 179

**From:**   Romain, Gary: Finance (LDN)
**Sent:**   Wed, 17 Sep 2008 20:48:14 GMT
**To:**   Clackson, Patrick: Finance (LDN)
**CC:**   Walker, James: Finance (NYK); Weidler, Chris: Finance (LDN), Utley, Charles: Finance (NYK)
**Subject:** RE: Scanned document from Douglas, Julia: Finance (NYK)

---

Patrick,

I'm struggling with the negative goodwill calc from the mail below. The attached spreadsheet picks up the numbers in the completion balance sheet - is there any way you could have a quick look and let me know what differs between this and your calc?

Potential candidates = bonus accrual, retention mark adjustment, fixed assets other than data centres, further valuation adjustments to assets, ...

[Please ignore the S King column]

Many thanks,

Gary


-----Original Message-----
From: Clackson, Patrick: Finance (LDN)
Sent: Tuesday, September 16, 2008 2:59 PM
To: Castell, Bill:
Cc: Romain, Gary: Finance (LDN); Weidler, Chris: Finance (LDN); Walker, James: Finance (NYK)
Subject: RE: Scanned document from Douglas, Julia: Finance (NYK)

Also shd add building at c$1bn and datacentres at c$500m both at 6% discount

-----Original Message-----
From: Castell, Bill:
Sent: Tuesday, September 16, 2008 2:57 PM
To: Clackson, Patrick: Finance (LDN)
Cc: Romain, Gary: Finance (LDN); Weidler, Chris: Finance (LDN); Walker, James: Finance (NYK)
Subject: Re: Scanned document from Douglas, Julia: Finance (NYK)

Great thanks

-----Original Message-----
From: Clackson, Patrick : Barclays Capital
To: Castell, Bill : Barclays Corporate Development

HIGHLY CONFIDENTIAL

CC: Romain, Gary ; Barclays Capital; Weidler, Chris : ; Walker, James :
Sent: Tue Sep 16 19:52:59 2008
Subject: FW: Scanned document from Douglas, Julia: Finance (NYK)

Bill this is completion balance sheet from draft docks, LI side not Barcap, gives the final asset split - neg
good will from this method is sum of 2.25+2 = 4.25 - 1.35 (a/cing liab) = 2.9

---

From:   Douglas, Julia: Finance (NYK)
Sent:   Tuesday, September 16, 2008 2:46 PM
To:     Clackson, Patrick: Finance (LDN)
Subject:      Scanned document from Douglas, Julia: Finance (NYK)

<<Doc..pdf>>

HIGHLY CONFIDENTIAL

| | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|
| 2 | Long Island - Acquisition Summary | | | | | | | | |
| 3 | | Clackson Schedule | | | | S King Schedule | | Difference | |
| 4 | | $bn | $bn | | | $bn | | $bn | |
| 5 | | | | | | | | | |
| 6 | Govt & Agency | 40.00 | | | | 39.20 | | 0.80 | |
| 7 | Commercial Paper | 1.10 | | | | 1.00 | | 0.10 | |
| 8 | Mortgage-backed | 2.70 | | | | 3.30 | | -0.60 | |
| 9 | Corp Debt | 4.90 | | | | 5.10 | | -0.20 | |
| 10 | Corp Equity | 8.80 | | | | 8.40 | | 0.40 | |
| 11 | Derivatives | 4.50 | | | | 4.80 | | -0.30 | |
| 12 | Collateralised Finance | 10.00 | | | | | | | |
| 13 | Cash | 0.70 | | | | | | | |
| 14 | Financial Assets | | | 72.70 | | | | | |
| 15 | | | | | | | | | |
| 16 | 7th Avenue | 1.00 | | | | | | | |
| 17 | Data Centres | 0.50 | | | | | | | |
| 18 | Non-Financial assets | | | 1.50 | | | | | |
| 19 | | | | | | | | | |
| 20 | Total Assets | | | 74.20 | | | | | |
| 21 | | | | | | | | | |
| 22 | Govt & Agency | 21.00 | | | | 35.00 | | -14.00 | (Collateralised finance increased correspondingly) |
| 23 | Corporate Debt | 2.10 | | | | 2.00 | | 0.10 | |
| 24 | Corporate Equities | 6.30 | | | | 7.00 | | -0.70 | |
| 25 | Derivatives | 4.50 | | | | 4.50 | | 0.00 | |
| 26 | Collateralised Finance | 34.50 | | | | | | | |
| 27 | Financial Liabilities | | | 68.40 | | | | | |
| 28 | | | | | | | | | |
| 29 | Bonus accrual | | | 1.30 | | | | | |
| 30 | | | | | | | | | |
| 31 | Total Liabilities | | | 69.70 | | | | | |
| 32 | | | | | | | | | |
| 33 | Net assets | | | 4.50 | | | | | |
| 34 | | | | | | | | | |
| 35 | Consideration | | | 1.75 | | | | | |
| 36 | | | | | | | | | |
| 37 | Negative goodwill | | | 2.75 | | | | | |

# A. 180

From:   Edward J ROSEN
Sent:   Wed, 17 Sep 2008 21:16:43 GMT
To:     Josephine Wang; sharbeck@sipc.org; macchiarolim@sec.gov
CC:     Sandra Rocks; patrick.m.parkinson@frb.gov
Subject:

---

Mike; Steve; Josephine

Below is the language that we believe to be necessary to ensure that the Order is sufficiently broad to cover the relevant Barclays Capital Inc. transactions:

*ORDERED that the stays set forth above shall not apply to:*

*       *       *

*the exercise of any rights specified in Sections 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560 and/or 561 of the Bankruptcy Code by Barclays Capital Inc. or any affiliate thereof (or any agent of Barclays Capital Inc. or any affiliate thereof), including without limitation rights of foreclosure and disposition referred to in 15 U.S.C. Section 78eee(b)(2)(C)(ii), with respect to any transaction (or any extension, assignment, novation or rollover of such transaction) entered into on or prior to the earlier of (i) consummation of the transactions contemplated by the Asset Purchase Agreement dated September 16, 2008 among Barclays Capital Inc., Lehman Brothers Inc., Lehman Brothers Holdings Inc. and LB 745 LLC and (ii) September 24, 2008.*

Separately,  Steve, could you confirm to us today that, "in connection with any proceeding involving the liquidation of Lehman Brothers Inc., SIPC would not seek to stay the exercise of any rights specified in Sections 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560 and/or 561 of the Bankruptcy Code by Barclays Capital Inc. or any affiliate thereof (or any agent of Barclays Capital Inc. or any affiliate thereof), including without limitation rights of foreclosure and disposition referred to in 15 U.S.C. Section 78eee(b)(2)(C)(ii), with respect to any transaction (or any extension, assignment, novation or rollover of such transaction) entered into on or prior to the earlier of (i) closing of the transactions contemplated by the Asset Purchase Agreement dated September 16, 2008 among Barclays Capital Inc., Lehman Brothers Inc., Lehman Brothers Holdings Inc. and LB 745 LLC and (ii) September 24, 2008."

Mike, could you also separately confirm to us tonight that, "in connection with any proceeding involving the liquidation of Lehman Brothers Inc., the Securities and Exchange Commission would not seek to stay the exercise of

CONFIDENTIAL



BCI-EX-(S)-00201894

any rights specified in Sections 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560 and/or 561 of the Bankruptcy Code by Barclays Capital Inc. or any affiliate thereof (or any agent of Barclays Capital Inc. or any affiliate thereof), including without limitation rights of foreclosure and disposition referred to in 15 U.S.C. Section 78eee(b)(2)(C)(ii), with respect to any transaction (or any extension, assignment, novation or rollover of such transaction) entered into on or prior to the earlier of (i) closing of the transactions contemplated by the Asset Purchase Agreement dated September 16, 2008 among Barclays Capital Inc., Lehman Brothers Inc., Lehman Brothers Holdings Inc. and LB 745 LLC and (ii) September 24, 2008."

Please do not hesitate to contact me with any questions.

Regards,

Ed Rosen

Edward J. Rosen
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t +1 212 225 2820 | f: +1 212 225 3999

www.clearygottlieb.com | erosen@cgsh.com

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

CONFIDENTIAL