Contains Confidential Portions

Page 1

1          IN THE UNITED STATES BANKRUPTCY COURT

2          FOR THE SOUTHERN DISTRICT OF NEW YORK

3

4

    In re:                    )

5                             ) Chapter 11

    LEHMAN BROTHERS           ) Case No. 08-13555(JMP)

6   HOLDINGS, INC., et al, )   (Jointly Administered)

                              )

7              Debtors.    )

    ----------------------)

8

9

10      CONTAINS HIGHLY CONFIDENTIAL PORTIONS

11                 [Pgs 63-64]

12

13

14        DEPOSITION OF ALAN M. JOHNSON

15             New York, New York

16          Friday, February 12, 2010

17

18

19

20

21

22

23  Reported by:

24  MAYLEEN CINTRON, RMR, CRR

25  JOB NO. 28245

Contains Confidential Portions

Page 2

1

2

3                          February 12, 2010

4                          9:40   a.m.

5

6

7           DEPOSITION OF ALAN M. JOHNSON, an

8    expert witness, held at the offices of Jones

9    Day LLP, 222 East 41st Street, New York, New

10   York, pursuant to Notice, before MayLeen

11   Cintron, a Registered Merit Reporter,

12   Certified Realtime Reporter, and Notary

13   Public of the State of New York.

14

15

16

17

18

19

20

21

22

23

24

25

Contains Confidential Portions

Page 129

1                    -A. Johnson -

2        A.    There are separate paragraphs

3   discussing severance.   There is a "bonus"

4   definition.   It would be my opinion that the

5   definition of "bonus" would have included the

6   amounts for severance.   The paragraph before

7   talked about -- if I recall correctly, the --

8   the amounts of severance that people would

9   receive.   I think they get at least as much as

10  they had under Lehman Brothers.

11       Q.    And you're not offering a legal

12  opinion as to the meaning or relative meaning

13  of those two provisions of the Asset Purchase

14  Agreement, right?

15       A.    I'm not offering a legal opinion.

16       Q.    Do you take into account one way or

17  the other that that schedule, Tab 30 in your

18  reliance materials, is referred to in only one

19  of those two sections of the Asset Purchase

20  Agreement?

21            MS. NEUHARDT:   Objection.

22       Foundation.

23       A.    I'm sorry.   Can you repeat the

24  question?

25       Q.    Do you recall that that schedule,

Contains Confidential Portions

Page 130

1                    -A. Johnson -

2    Tab 30 of your reliance materials, is referred

3    to in only one of the two provisions that we

4    are talking about in the Asset Purchase

5    Agreement?

6              MS. NEUHARDT:  Same objection.

7        Q.    It is only in 9.1(c).  Do you

8    recall that?

9              MS. NEUHARDT:  Same objection.

10       A.    I'm missing --

11       Q.    Let's just get the Asset Purchase

12   Agreement now.  It is Tab 29.  Within Tab 29,

13   sir, I ask you to turn to page 34.  Take the

14   time you need, sir, to scan through subsection

15   (b) and subsection (c) of Article 9.

16             The question I have for you, sir,

17   is:  Do you agree with me that the

18   September 16, 2008 schedule is referred to in

19   only one of those sections?

20             MS. NEUHARDT:  Again, I object to

21        the characterization that it is

22        necessarily referred to in any section.

23       Q.    Take a look at Paragraph 9.1(c).

24             Do you see a reference in there to

25   "Financial schedule delivered to Purchaser on

Contains Confidential Portions

Page 131

1              -A. Johnson -

2    September 16, 2008 and initialled by an

3    officer of each of Holdings and Purchaser"?

4         A.   Yes.

5         Q.   Do you understand that to be a

6    reference to the schedule that's behind Tab 30

7    of your reliance materials?

8         A.   I think almost assuredly those are

9    different.  At least as you read exactly what

10   (c) purports to be, that that -- it is almost

11   inconceivable that that's 30, in terms of the

12   2.0 billion.

13              Because it says here specifically,

14   "The accrued '08 liability on the books."  And

15   I think there has been -- at least as I read

16   the depositions, there was no testimony that

17   the fiscal year '08 financial liability was

18   $2.0 billion.

19              There is testimony that a billion

20   had been accrued.  There is some -- I think

21   you had an expert put an affidavit that put a

22   number that was like 700 million and so forth.

23   So there was -- but I don't recall anyone

24   saying that the accrued '08 financial year

25   liability was $2 billion.

Contains Confidential Portions

Page 132

1                    -A. Johnson -

2          Q.    You've seen materials that indicate

3    that the accrued bonus liability was different

4    from $2 billion?

5          A.    The testimony I recall, I recall a

6    number of a billion, I recall a figure of

7    700 million.  I think there is an affidavit

8    somewhere here that had that.  But I don't --

9    I've seen no testimony that anything

10   approaching that magnitude was $2 billion.

11         Q.    So if it was $2 billion just for

12   bonus, that number is too high, is that your

13   view?

14         A.    Well, bonus, in this term, and

15   there is some language here, such proportions,

16   you consider it -- the liability would not

17   have included the equity that would have been

18   granted as part of the bonus.

19             So if -- if the number -- if the

20   cash bonus number was $2 billion, then the

21   number would have needed to have been 3- or $4

22   billion in total.

23         Q.    Take a look -- this is one of those

24   keep-your-thumb-on-this-document-and-

25   go-to-the-other-ones.  But go to Tab 30 again.

Contains Confidential Portions

Page 133

1                         -A. Johnson -

2        This is the one just after this.  Take a look

3        at the financial schedule.

4        My question to you, sir, is:  Do you think the

5        financial schedule behind Tab 30 is the

6        schedule referred to in Paragraph 9.1(c) of

7        the Asset Purchase Agreement?

8              A.    Well, it -- it almost -- it can't

9        be the financial year liability.  So literally

10       it can't be.

11             Q.    I want to be clear about this

12       because I think I'm understanding you to say

13       one of two things, and I want to figure out

14       which one it is.  Either the 2.0 billion is

15       not the right number on the schedule or -- and

16       this is my question.

17                   Is the schedule you're looking at,

18       which is marked as Deposition Exhibit 19, in

19       your view, the schedule that's referenced in

20       Paragraph 9.1(c)?

21                   MS. NEUHARDT:  Objection to the

22             extent you're asking for a legal

23             conclusion.

24             A.    Well, I don't literally, taken

25       literally as I read the common English

Contains Confidential Portions

Page 140

1               -A. Johnson -

2          Q.    So when the Court reads your report

3     with regard to Section 4, "Aggregate

4     Compensation Spend," it should take no account

5     one way or the other of the contents of the

6     Berkenfeld schedule that is Tab 30 in your

7     reliance materials?

8               MS. NEUHARDT:   Objection.   That

9          mischaracterizes the testimony --

10              MR. GAFFEY:   I am asking the

11         question.   I am not characterizing any

12         earlier testimony.

13         Q.    I am asking how the Court should

14    use your report.

15         A. .  I think the Court should look at --

16    I say it in several ways.   The Court should

17    look at the aggregate spend of Barclays, the

18    amount that they spend was -- we have a table

19    later where we break that out, was the spend

20    consistent with market practice, was it

21    consistent with what other firms would have

22    done.   I think they should look at the

23    Berkenfeld, is it consistent with that figure.

24    I think they can come to their own

25    conclusions, the Court, I'm sure will, of what

Contains Confidential Portions

Page 141

1                    -A. Johnson -

2     the legal interpretation of what (c) is.

3          Q.   When Judge Peck reads your report

4     and reads Section 4 of your report, should he

5     or should he not refer to the Berkenfeld

6     schedule?

7          A.   I think Judge Peck -- I don't want

8     to say what Judge Peck should or should not

9     do.  But I think Judge Peck should certainly

10    be aware of the Berkenfeld schedule.  I think

11    that's a relevant document, at least I think

12    that's a relevant document in this case.

13         Q.   But you don't think it is the

14    document that's referred to in 9.1(c)?

15         A.   Well, I've said that several times

16    now.  That the word "comp" is different than

17    "bonus."  The word "bonus", you know, is a

18    different word.  Mr. Berkenfeld chose the word

19    "comp."  Those are different.  It is a broader

20    term.

21         Q.   You are giving me, sir, the

22    reasoning for your answer, what I want is your

23    answer.  It's the yes or no question.

24         A.   I said they're different.  I said

25    that, I think, several times now.

Contains Confidential Portions

Page 142

1              -A. Johnson -

2        Q.    You referred to Mr. Berkenfeld.

3   You didn't mean to suggest Mr. Berkenfeld is

4   the author of Exhibit 19.  I just don't want

5   any unclear testimony.

6        A.    No.  No.

7        Q.    Because you don't know --

8        A.    I think he initialled it, that's

9   all.

10       Q.    Because you don't know who the

11  author of Exhibit 19, Tab 30 in your reliance

12  materials is, correct?

13       A.    Yes, that's right.

14       Q.    And you don't know the calculation

15  that went into the $2.0 billion "comp" item

16  listed on that schedule, correct?

17       A.    No.

18       Q.    And you don't know the reasoning

19  behind the calculation that went behind that

20  2.0 billion item on the schedule, correct?

21       A.    In the depositions that I have

22  read, there is different testimonies reached

23  in different ways.

24       Q.    Is that a yes, you don't know?

25       A.    I reviewed what people said, and to

Contains Confidential Portions

Page 143

1            -A. Johnson -

2    me it is unclear what went into the 2.0.

3        Q.   At the beginning of your report

4    where you say -- I'm back on page 4 of your

5    report, first full paragraph -- "there is

6    nothing about the oral or written offers that

7    suggest bad faith."  That sentence.

8        A.   Yes.

9        Q.   What is your definition of the term

10   "bad faith" as used in your report?

11       A.   Not fulfilling their either legal

12   or moral obligations to Lehman Brothers.

13       Q.   And you're not an expert in how

14   people fulfill either their legal or their

15   moral obligations, are you, sir?

16       A.   An expert?  No.

17            MR. GAFFEY:  I have nothing

18       further.  Thanks.

19            MR. DAKIS:  Can we just take five

20       minutes?

21            (Whereupon, a recess was taken

22       from 12:26 p.m. to 12:30 p.m.)

23

24    (Continued on next page to include jurat.)

25

Contains Confidential Portions

Page 144

1          -A. Johnson -

2          MR. DAKIS:  The Committee has no

3     questions.  I think we are finished

4     today.

5          MS. NEUHARDT:  As I mentioned, we

6     will be designating specific portions

7     as highly confidential that address

8     individual compensation figures.

9          MR. GAFFEY:  We agree to that.

10         MR. DAKIS:  We agree to that as

11    well.

12         (Time noted:  12:30 p.m.)

13

14

15

16

17

18              _____

                ALAN M. JOHNSON

19

20

21    Subscribed and sworn to before me,

22    this ____ day _____ of 2010.

23

24    _____

25         Notary Public

Contains Confidential Portions

Page 145

```
1      ------------------I N D E X------------------
2      WITNESS              EXAMINATION BY          PAGE
3      A. JOHNSON           MR. GAFFEY                 5
4
5      ----------------EXHIBITS--------------------
6      EXHIBIT                            FOR I.D.
7        Exhibit 617B                        5
8      Alan M. Johnson Expert Report on
9      Compensation Issues
10
11       Exhibit 618B                        5
12     Materials Relied Upon by Alan M.
13     Johnson
14
15
16     ----------------EXHIBITS--------------------
17           [previously marked]
18     EXHIBIT                            FOR I.D.
19       Exhibit 25                         73
20       Exhibit 117                        74
21       Exhibit 489                        74
22       Exhibit 19                        112
23
24
25              - - -
```