Page 1

1

2                UNITED STATES BANKRUPTCY COURT

3                SOUTHERN DISTRICT OF NEW YORK

4

5    In re:                        )
                                   ) Chapter 11
6    LEHMAN BROTHERS               ) Case No. 08-13555(JMP)
                                   )
7    HOLDINGS, INC., et al.,       )
                                   )
8                    Debtors.      )
     --------------------------)

9

10

11

12

13

14           HIGHLY CONFIDENTIAL DEPOSITION OF

15                  ALASTAIR BLACKWELL

16                 New York, New York

17               Friday, August 7, 2009

18

19

20

21

22

23   Reported by:

24   KRISTIN KOCH, RPR, RMR, CRR, CLR

25   JOB NO. 24037

1

2

3

4                           August 7, 2009

5                             9:21 a.m.

6

7

8            Deposition of ALASTAIR BLACKWELL,

9        held at the offices of JONES DAY, LLP, 222

10      East 41st Street, New York, New York,

11       before Kristin Koch, a Registered

12       Professional Reporter, Registered Merit

13       Reporter, Certified Realtime Reporter,

14       Certified Livenote Reporter and Notary

15       Public of the State of New York.

16

17

18

19

20

21

22

23

24

25

1          Blackwell - Highly Confidential

2          A.    Understood.

3          Q.    As we go, I am going to be asking

4    you a series of questions.  You are under oath,

5    so you will answer the questions.  At some

6    points in time you will hear your counsel state

7    an objection.  That doesn't mean you don't have

8    to answer the question.  That just means he is

9    either preserving the record or he wants to ask

10   me to clarify the question.  If he instructs

11   you not to answer, that's up to you as well,

12   but the mere fact that he makes an objection

13   doesn't mean you don't have to answer the

14   question.

15          In that vein, I'd like to ask you

16   just please ask me to clarify any question

17   where I might misuse an acronym or a word.  I

18   feel like I am learning a new language here

19   reading all you folks' e-mail, so I know there

20   is technical financial words that you guys use

21   and you understand readily, but if you need me

22   to clarify one, I want to have a clear question

23   so you can answer it.

24          I think your counsel has probably

25   told you, but you have been designated as a

Page 8

1                Blackwell - Highly Confidential

2      30(b)(6) witness for a select set of issues in

3      this case and those issues relate to Schedules

4      A and B of the Clarification Letter.  We will

5      get to that later, but I just want to let you

6      know that, and that I will alert you to that

7      fact when we get to that portion of the

8      deposition, so in that portion you will be

9      speaking on behalf of Barclays.

10               So I am ready to proceed if you are.

11     Are we ready to do this?

12          A.    Absolutely, yes.  Thank you.

13          Q.    Can we start off with a little

14     background information about you.

15               You are currently employed by

16     Barclays Capital; correct?

17          A.    I am, yes.

18          Q.    And what is your present position?

19          A.    I am responsible for the Americas

20     operations department for capital markets.

21          Q.    Okay.  And do you have a title?

22          A.    I am a managing director.

23          Q.    When did you start your employment

24     at Barclays?

25          A.    I received a contract after

Page 9

1           Blackwell - Highly Confidential
2    bankruptcy, I don't know exactly when I signed
3    that, but it would have been, I think, two
4    weeks after bankruptcy that I signed a contract
5    to join Barclays.  I wasn't one of those people
6    that received an e-mail and clicked off on it,
7    for instance.
8           Q.    Okay.  When did you -- that's the
9    contract, we will get to that in a second, but
10   when did you consider yourself a Barclays
11   employee?
12          A.    Post bankruptcy.
13          Q.    Was it upon the closing of the sale
14   transaction?
15          A.    I would think so, yes.
16          Q.    And just as we go forward, if I
17   refer to the sale transaction, can we agree
18   that that will be the transaction that closed
19   on the 22nd of September 2008 whereby certain
20   assets were transferred to Barclays?  Can we
21   agree on that?
22          A.    What time is that?
23          Q.    I don't know the time.
24          A.    Midnight from that day.
25          Q.    Okay.  So is it fair to say after

Page 167

1           Blackwell - Highly Confidential

2               MR. HINE:  Let's mark this as an

3           exhibit.

4               (Exhibit 81 B, Debtors' Second Rule

5           30(b)(6) Deposition Notice to Barclays on

6           Issues Relating to the Transfer of Assets,

7           marked for identification.)

8       Q.    Mr. Blackwell, I am handing you a

9   copy of Exhibit 81 B, which is a copy of the

10  Debtors' Second Rule 30(b)(6) Deposition Notice

11  to Barclays on Issues Relating to the Transfer

12  of Assets.

13          My first question is have you ever

14  seen this document before?

15      A.    In my discussions with Jonathan I

16  think I may have seen some portion --

17              MR. SHAW:  We are not going to get

18          into the substance of those discussions.

19      Q.    I don't want to ask you about a

20  privileged communication you might have had,

21  but can you please turn to Schedule A of that

22  document.

23          As I understand from Barclays, you

24  have been designated as a witness as to the

25  first two topics listed on that schedule, so

1              Blackwell - Highly Confidential

2      could you just take a minute and just take a

3      look at those topics.

4              (Document review.)

5      A.      Understood.

6      Q.      Okay.  You will see those topics

7      relate to Schedules A and B that we have talked

8      about previously in the deposition, so I just

9      want to spend a little time talking about those

10     two schedules.

11             Let's look at topic number 1.  Were

12     you involved in the selection of the securities

13     that made their way into Schedule A?

14             MR. SHAW:  Objection to form.

15     Q.      Let me rephrase it.

16             Were you involved in the selection

17     of the securities that are listed in Schedule A

18     to the Clarification Letter?

19     A.      I was involved in the transfer of

20     the Fed assets over to Barclays, so in terms of

21     selecting the assets, the selection was done as

22     I -- was done as I described, which was under

23     the terms of the repo agreement that was in

24     place between Lehman and Barclays at that time,

25     so eligible collateral is a component of that

1             Blackwell - Highly Confidential

2       agreement and had been in place for some time.

3       So selection is done -- was done -- the assets

4       were put into the Fed repo.  We know that there

5       were operational issues that I described in

6       terms of the assets changing because of the

7       settlement that took place at Chase, and then

8       there is also a subset of securities that

9       weren't eligible under the legal terms -- under

10      the commercial terms of the repo agreement

11      Barclays had in place with Lehman, which was

12      standard practice, that's why the Fed had

13      stepped in and provided liquidity to the whole

14      market with the PDCF, so poorer quality

15      collateral was funded by the Fed.

16             So it was clear based on the

17      schedules which securities fell outside of that

18      in terms of their quality.  So yes, my team

19      worked with finance with the treasury team to

20      refine that list based on that requirement, and

21      in addition to that there were obviously some

22      substitutions that had to take place to make up

23      value, so my team worked again with finance and

24      the clearance teams to drive that -- to

25      finalize that list, but the list is a

1    Blackwell - Highly Confidential

2 reflection of what moved.

3    MR. HINE:  Okay.  Let me go at it a

4   different way here.  I have, unfortunately,

5   some hefty exhibits to pass to you.

6    (Exhibit 82 B, e-mail dated

7   September 20, 2008, Bates stamped BCI-CG

8   00035134, marked for identification.)

9   Q. Mr. Blackwell, I am handing you a

10 lengthy exhibit marked as 82 B, which is a

11 list -- it's a document Bates stamped BCI-CG

12 00035134 through 35954.  I am not going to ask

13 you about the contents of this entire document,

14 but I would like to direct your attention, if

15 you could take a minute and look at the page --

16 first page after the e-mail cover, the covering

17 e-mail, which is marked with the Bates number

18 35138.  Do you see that page?

19   A. Yes.

20   Q. Can you tell me whether -- you will

21 see in this page a little summary of different

22 classes of collateral and their market value.

23 Do you see that?

24   A. I do.

25   Q. Could you tell me whether this is

Page 171

1          Blackwell - Highly Confidential

2    the collateral that made its way into

3    Schedule A?

4          A.    I would assume that it is, based on

5    the fact I provided the data to Paolo, but it's

6    Paolo's team that would have put this together,

7    so would have interpreted the valuations and

8    the content based on that.

9          Q.    Do you know if the value of the

10   securities listed on Schedule A is what's

11   listed here under the column Market Value?

12         A.    I don't know.  It would be dependent

13   on how -- again, how -- I don't know how Paolo

14   ultimately put this together.

15         Q.    And when you say "Paolo," you are

16   talking about Mr. Tonucci?

17         A.    Yes.

18         Q.    So it's his team that would do the

19   valuation of this schedule?

20         A.    It's his team that created the

21   summary.  Jim Hraska and my team, Monty

22   Forrest, helped create the data and pushed it

23   up to the treasury team for them to package.

24         Q.    Now, did the list of securities that

25   ultimately were listed on Schedule A change