Hearing Date: April 14, 2010 at 10:00 a.m.

Edward H. Tillinghast, III (ET 5566)
Susan G. Rosenthal (SR 8246)
Malani J. Cademartori (MS 3882)
Blanka K. Wolfe (BW 0925)
**SHEPPARD MULLIN RICHTER & HAMPTON, LLP**
30 Rockefeller Plaza, 24th Floor
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701

*Attorneys for Norton Gold Fields Limited*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., et al.,<br><br>Debtors. | Case No.   08-13555 (JMP)<br><br>Chapter 11<br><br>(Jointly Administered) |

**SUR-REPLY OF NORTON GOLD FIELDS LIMITED TO
DEBTORS' REPLY IN SUPPORT OF MOTION TO COMPEL PERFORMANCE
BY NORTON GOLD FIELDS LIMITED OF ITS OBLIGATIONS UNDER AN
EXECUTORY CONTRACT AND TO ENFORCE THE AUTOMATIC STAY**

Norton Gold Fields Limited ("**Norton Gold**"), by and through its counsel Sheppard Mullin Richter & Hampton, LLP, files this sur-reply (the "**Sur-Reply**") in response to the *Debtors' Reply in Support of Motion to Compel Performance by Norton Gold Fields Limited of its Obligations under an Executory Contract and to Enforce the Automatic Stay* [Docket No. 7012] (the "**Reply**") and in further support of the *Objection of Norton Gold Fields Limited to Motion of the Debtors and Debtors in Possession pursuant to Section 105(a), 362, and 365 of the Bankruptcy Code to Compel Performance by Norton Gold Fields Limited of its Obligations under an Executory Contract and to Enforce the Automatic Stay* [Docket No. 6062] (the "**Objection**").  In support of this Sur-Reply, Norton Gold respectfully states as follows:

W02-EAST:7BXL1\200298143.3                              -1-

**PRELIMINARY STATEMENT**

In the Reply, Lehman Brothers Commercial Corporation ("**LBCC**"), as debtor and debtor-in-possession (together with Lehman Brothers Holdings Inc. ("**LBHI**") and its affiliated debtors, the "**Debtors**") asserts several purported counter-arguments that are based on a basic misinterpretation of and attempt to distort the basis for Norton Gold's claim that LBCC is in breach of the 2002 ISDA Master Agreement and the Schedule thereto (collectively, the "**ISDA Agreement**") based on its repudiation thereof and its arguments under the English doctrine of promissory estoppel. Specifically, the Reply attempts to counter Norton Gold's claim that LBCC's repudiation allows it to exercise its right to withhold payment under the ISDA Agreement by raising, for the first time, the completely irrelevant issue of Norton Gold's alleged failure to "accept" LBCC's repudiation and its alleged "affirmation" of the ISDA Agreement. However, as described below, these issues are relevant, if at all, to a claim based on common law repudiation under English law, which, as described below, is not the basis of Norton Gold's claim. Where the operative documents are silent on the remedies available to a contract party upon the counterparty's repudiation (unlike the ISDA Agreement), that party must rely on common law repudiation. However, the ISDA Agreement is not silent on the consequences of a party's repudiation. Thus, while Norton Gold looks to English common law to demonstrate that LBCC's actions amount to repudiation, it does not need to go beyond the terms of the ISDA Agreement to demonstrate the consequences of such repudiation.

Additionally, LBCC makes the new, and overly simplistic, argument that it can withdraw its promise not to enforce its right to payment under the ISDA Agreement at this time in an attempt to defeat Norton Gold's argument under the English doctrine of promissory estoppel. However, LBCC fails to recognize the limitations imposed by English law on its

ability to withdraw such a promise where Norton Gold cannot be returned to the position in which it was in prior to LBCC's promise.

## ARGUMENT

### I. Norton Gold's Alleged Failure to Accept LBCC's Repudiation and its Alleged Affirmation of the ISDA Agreement Are Irrelevant Under English Law

1. For the first time in the Reply, LBCC argues that Norton Gold must perform its alleged obligations under the ISDA Agreement, notwithstanding LBCC's repudiation thereof, because Norton Gold never "accepted" LBCC's repudiation and, instead, "affirmed" the ISDA Agreement. In support of its argument, LBCC argues that "[u]nder English law, the non-repudiating party has only two options in the face of a repudiation. It may either (i) 'accept' the repudiation, terminate the contract, and seek its remedy, or (ii) 'affirm' the contract and treat it as continuing." Reply at ¶ 34. However, LBCC's argument is fundamentally flawed because it is based on the faulty assumption that Norton Gold is seeking to rely on the common law right of repudiation to discharge itself from liability under the ISDA Agreement.

2. The basis for Norton Gold's right to suspend performance under the ISDA Agreement, however, is the terms of the ISDA Agreement itself. Specifically, Section 5(a)(ii)(2) of the ISDA Agreement provides that an Event of Default shall occur with respect to a party where such "party disaffirms, disclaims, repudiates or rejects, in whole or in part, or challenges the validity of, [the ISDA Agreement], any Confirmation executed and delivered by that party or any Transaction evidenced by such a Confirmation (or such action is taken by any person or entity appointed or empowered to operate it or act on its behalf)." ISDA Agreement at § 5(a)(ii)(2). Section 2 of the ISDA Agreement then provides, in part, that "[e]ach party will make each payment or delivery specified in each Confirmation to be made by it," provided, however, that the obligation to make payment is subject to "the condition precedent that **no**

**Event of Default** or Potential Event of Default **with respect to the other party has occurred** and is continuing."  ISDA Agreement at § 2(a)(i) and (iii) (emphasis added).  In addition to the foregoing right to withhold payment upon an Event of Default, the ISDA Agreement also provides a non-defaulting party with the right to terminate the ISDA Agreement upon an Event of Default.  *See* ISDA Agreement at § 6.

3.  Because Norton Gold is relying upon a contractual provision of the ISDA Agreement for its right to suspend performance upon LBCC's repudiation, and not the general English common law right that excuses performance under a contract upon a counterparty's repudiation thereof, the requirements of the general common law are inapplicable.[1]  Instead, the only requirements are those found in the ISDA Agreement, which provides solely that an Event of Default is triggered by a party's repudiation, in whole or in part, of the agreement.  Acceptance of such repudiation is not necessary.  Thus, even if Norton Gold were required to accept LBCC's repudiation under English common law before it could suspend its performance under the ISDA Agreement, Section 5(a)(ii)(2) of the ISDA Agreement, the basis for Norton Gold's contractual right to rely upon LBCC's repudiation, contains no such requirement.

4.  To the extent that Norton Gold relies upon English law in its Objection, it does so only to supplement the terms of the ISDA Agreement.  Thus, where the ISDA Agreement is silent on what constitutes repudiation, Norton Gold relies on English common law to provide the appropriate standard.  That standard, as explained in the Objection and which LBCC does not challenge, is that repudiation occurs when one party renounces a contract by words or conduct, and thereby demonstrates an intention not to perform its obligations under the contract.  *See*

---

[1] Since the case law upon which LBCC relies exclusively addresses the common law right of repudiation, it is inapplicable to this case.  *See Howard v. Pickford Tool Co. Ltd.* [1951] 1 K.B. 417 (common law repudiation claim); *Suisse Atlantique Société d'Armement Maritime S.A. v. N.V. Rotterdamsche Kolen Centrale* [1967] 1 A.C. 361 (same).

Objection at ¶ 99 (*citing Woodar Ltd. v. Wimpey Ltd.* [1980] 1 W.L.R. 277, 282–283 HL). However, once that standard is met, as it is in this case, the terms of the ISDA Agreement govern.

5. As Norton Gold is able to rely upon its contractual right to suspend performance upon LBCC's repudiation, the remedies available to it are also governed by the ISDA Agreement. Even if Norton Gold were required, under the common law of repudiation, to either "(i) "accept" the repudiation, terminate the contract, and seek its remedy, or (ii) "affirm" the contract and treat it as continuing," Reply at ¶ 34, it is not limited to such remedies under its contractual rights. Instead, the ISDA Agreement clearly and unambiguously contemplates circumstances where an Event of Default, including one based upon a party's repudiation, has arisen, but the non-defaulting party elects not to exercise its right to early termination. *See* ISDA Agreement at §§ 6(a) and 2(a)(iii). In such circumstances, the ISDA Agreement continues in force, but permits the non-defaulting party to withhold payment. *See id.* at §§ 2(a)(i), (iii).

6. Moreover, LBCC's assertion that "[u]nder English law, when a non-repudiating party affirms the contract, the contract remains in full force and effect as to both parties, and the non-repudiating party must perform all its contractual obligations," is inaccurate. *See* Reply at ¶ 36. In *Suisse Atlantique Société d'Armement Maritime S.A. v N.V. Rotterdamsche Kolen Centrale* [1967] 1 A.C. 361, which LBCC cites for this statement of English law, the English Court actually stated:

> Where the contract has been affirmed by the innocent party, at first sight the position is simple. You must either affirm the whole contract or rescind the whole contract: you cannot approbate and reprobate by affirming part of it and disaffirming the rest - that would be making a new contract. So the clause excluding liability must continue to apply. <u>But that is too simple and there is authority for two quite different ways of holding that, in spite of affirmation of the contract as a whole by the innocent party, the</u>

<u>guilty party may not be entitled to rely on a clause in it. One way depends on construction of the clause.</u> The other way depends on the existence of a rule of substantive law.

[1967] 1 A.C. 361, 398 (emphasis added); *see* Reply at ¶ 36. The text omitted from the quotation cited in the Reply, which is underlined above, expressly recognizes that the terms of the operative contract can provide for a different remedy than those available under common law and that those contractual rights may be relied upon by the innocent party. Specifically, in the present case, the repudiation is therefore simply a trigger for the application of Section 5(a)(ii)(2) of the ISDA Agreement and not necessarily a precursor to the ISDA Agreement's termination. Thus, just as Norton Gold's acceptance of LBCC's repudiation is not necessary under the ISDA Agreement, Norton Gold's alleged affirmation of the ISDA Agreement does not deprive it of the remedies available under the terms of the ISDA Agreement.

7. As neither Norton Gold's acceptance of LBCC's repudiation nor its alleged affirmation of the ISDA Agreement is relevant, the only issue is whether the totality of LBCC's conduct, and not each act individually, indicates an intent to refuse performance of the contract. *See Woodar Investment Development Ltd. v. Wimpey Construction UK Ltd.* [1980] 1 W.L.R. 277, 280G. As argued in the Objection, the Debtors' conduct repudiated the ISDA Agreement prior to the filing of LBCC's bankruptcy, which triggered an Event of Default that is not prohibited by any provision of the Bankruptcy Code and entitles Norton Gold to withhold payments.

## II. Norton Gold's Alleged Affirmation of the ISDA Agreement Does Not Preclude It From Exercising Its Right to Withhold Performance

8. Even if Norton Gold's alleged affirmation of the ISDA Agreement were relevant, which it is not, LBCC has failed to demonstrate that Norton Gold made such an affirmation. The events described in the Reply as evidencing Norton Gold's "affirmation", are not, contrary to

LBCC's assertion, inconsistent with Norton Gold's repudiation claim. *See* Reply at ¶ 35. Again, as described above, the ISDA Agreement, which is the basis for Norton Gold's contractual right to rely upon LBCC's repudiation, does not require the non-defaulting party to suspend all performance under the ISDA Agreement in order to rely upon the defaulting party's repudiation. Thus, Norton Gold's performance of certain of its obligations under the ISDA Agreement does not affirm the ISDA Agreement such that LBCC's repudiation is nullified.

9.      Additionally, LBCC's failure to take any further action under the ISDA Agreement or the February Confirmation (as defined in the Objection) constitutes a continuing and repeated repudiation which occurred after the date of any alleged affirmation. A repudiation giving rise to a Section 5(a)(ii)(2) Event of Default therefore arose notwithstanding any earlier alleged affirmation. *See Safehaven Investments Inc. v. Springbok Ltd.* [1996] 71 P&CR 59, 68 ("If . . . the repudiating party persists in his refusal to perform, the innocent party may later treat the contract as being at an end. The correct analysis in this case is not that the innocent party is terminating on account of the original repudiation and going back on his election to affirm. It is that he is treating the contract as being at an end on account of the continuing repudiation reflected in the other party's behaviour after the affirmation."); *see also Chitty on Contracts* at 24-004 (30th ed., 2008) ("[I]n the case of a breach which is persisted in by the other party, the fact that the innocent party has continued to press for performance will not normally preclude him at a later stage from treating himself as discharged.").

### III.    English Law Does Not Permit LBCC to Withdraw its Promise to not Enforce its Right to Payment under the ISDA Agreement

10.     In the Reply, LBCC argues that its representations to Norton Gold that it would not enforce its right to payment were not clear and unequivocal. Reply at ¶ 42. However, as a matter of English law, what constitutes a clear and unequivocal representation, which can be

implied from conduct, is to be determined objectively from the promisee's perspective. Thus, if the promisee reasonably interpreted the promisor's actions as a promise not to exercise a certain right, those actions are to be treated as such even if that was not the promisor's intent. *See Bremer Handelsgesellschaft v. Vanden Avenne-Izegem* [1978] 2 Lloyd's Rep 109, 126. Norton Gold reasonably interpreted LBCC's actions and words as a promise to not exercise its right to payment. Even if LBCC did not intend to make such a representation, which claim Norton Gold does not accept, its intent is irrelevant.

11.    Moreover, LBCC argues in the Reply that Norton Gold must perform its alleged obligations under the ISDA Agreement, notwithstanding LBCC's promise to not enforce its right to payment, because "English law permits LBCC to withdraw that promise and insist on its rights in certain circumstances, including a subsequent bankruptcy." Reply at ¶ 40. However, English law places limits on a promisor's ability to withdraw its promise, and LBCC has lost any right it may have had to withdraw its promise to not enforce its right to payment.

12.    As a matter of English law, estoppel suspends the estopped party's rights for so long as the estoppel is operative. Generally, these rights can be restored after a reasonable time and on reasonable notice, but events can also lead to the estoppel extinguishing a promisor's right to withdraw its promise. Specifically, a promisor cannot withdraw its promise and demand performance of the original obligation where it has become impossible for the promisee to perform that original obligation, or where it has become highly inequitable to require such performance by the promisee. *See e.g.*, *Maharaj v. Chand* [1986] A.C. 898, 908 (finding plaintiff could not withdraw promise to allow defendant to live in home where defendant's eviction would be inequitable).

13. Here, it would be highly inequitable to require Norton Gold's performance of its payment obligations because it can no longer be restored to the position in which it was prior to LBCC's representation. Prior to LBCC's representation that it would not enforce its right to payment, Norton Gold had a trading partner able to perform its own obligations under the ISDA Agreement, i.e., Lehman Brothers Australia Limited, including being able to meet its payment obligations under the hedge and providing investment banking services. Upon LBCC's representation that it would not enforce its right to payment, it failed to enter into further Weekly Variations Pairs, *see* Objection at ¶ 23, and Norton Gold lost the contract counterparty for which it bargained. It would be inequitable to now permit LBCC to demand payment while it fails to comply with the terms of and course of conduct under the ISDA Agreement.

14. While LBCC does not dispute that Norton Gold acted in reliance on its representation, it questions whether such reliance was detrimental to Norton Gold. *See* Reply at ¶ 46. However, detriment has been interpreted broadly by the English courts, and includes cases where the promisee has not suffered any actual loss from his reliance. *See W. J. Alan & Co. Ltd. v. El Nasr Export & Import Co.* [1972] 2 Q.B. 189, 213. Rather, English courts have held that it is sufficient that the promisee has altered his position in reliance on the promise in such a way that it would be inequitable to allow the promisor to act inconsistently with it. *See The Superhulls Cover Case* (No.2) [1990] 2 Lloyd's Rep. 431, 454 ("To establish such inequity, it is not necessary to show detriment; indeed, the representee may have benefited from the representation, and yet it may be inequitable, at least without reasonable notice, for the representor to enforce his legal rights."). As explained above, it would be inequitable to now permit LBCC to enforce its right to payment without it being required to comply with the established terms and course of dealing under the ISDA Agreement, including the Weekly

Variation Pairs, and without providing Norton Gold with an effective trading partner and investment bank, as was the situation prior to LBCC's representation..

## CONCLUSION

WHEREFORE, Norton Gold respectfully requests that the Court deny the relief requested in the Motion to Compel for the reasons set forth herein and in the Objection, and grant such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        March 19, 2010

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

By:  /s/ Edward H. Tillinghast, III
Edward H. Tillinghast, III (ET 5566)
Susan G. Rosenthal (SR 8246)
Malani J. Cademartori (MS 3882)
Blanka K. Wolfe (BW 0925)
30 Rockefeller Plaza, 24th Floor
New York, New York 10112
Tel: (212) 653-8700
Fax: (212) 653-8701

*Attorneys for Norton Gold Fields Limited*