Hearing Date: April 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: March 19, 2010 at 5:00 p.m. (Prevailing Eastern Time)

JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
Patrick J. Trostle
Heather D. McArn

*Attorneys for Anton R. Valukas, Esq., Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
                                                :
In re                                           :    Chapter 11
                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,        :    Case No. 08-13555 (JMP)
                                                :
                Debtors.                        :    (Jointly Administered)
-----------------------------------------------------------------------x

**EXAMINER'S RESPONSE TO THE OBJECTION
OF THE CME GROUP INC. TO THE
UNSEALING OF THE EXAMINER'S REPORT**

The sole remaining obstacle to full publication of the Examiner's Report is the

position of the CME Group Inc. ("CME") that three documents that disclose the identity of

six bidders – who participated in a private auction that resulted in a $1.2 billion loss to Lehman – are entitled to confidentiality. The Examiner has concluded that no colorable claims result from the CME auction, but – as with all of the issues he has evaluated – the Examiner believes that the public should be fully informed of the facts.

There is a "strong presumption of public access to judicial records." Relevant documents "should not remain under seal absent the most compelling reasons." *In re Fibermark*, 330 B.R. 480, 503, 505 (Bankr. D. Vt. 2005) (rejecting motion to keep an Examiner's report under seal). 11 U.S.C. § 107(a) contains a "policy of open inspection" evidencing "Congress's strong desire to preserve the public's right of access to judicial records in bankrupcy proceedings." *Id*.

CME concedes that it is its burden to establish a need to depart from the default of full public disclosure. CME does not meet that burden. And, remarkably, CME fails to *mention*, much less explain how it can bring this objection in good faith, given that CME has already disclosed the names of the bidders, independent of the subject documents and without any claim of confidentiality. CME's objection should be overruled.

*The Issue*

The Report describes the circumstances surrounding the transfers by CME of more than $2 billion in Lehman collateral and clearing deposits to three entities by means of a private auction to which six entities were invited to bid. (Report, p. 1841 *et seq*.) The Examiner concludes that an argument can be made that the transfers are avoidable

pursuant to Section 548 of the Bankruptcy Code and Sections 273-275 of the New York Debtor and Creditor law, because Lehman received less than reasonably equivalent value or fair consideration. However, the Examiner concludes that the evidence does not support the existence of colorable claims because the Commodity Exchange Act ("CEA") likely would preempt the actions and the transfers likely were protected by the Bankruptcy Code safe-harbor provisions.

But the Examiner's conclusions do not bind the parties or the Court. The amount at issue is substantial. The public has a right to have, and the Examiner has a duty to provide, the full factual detail. The only information that CME seeks to redact from the subject documents and keep from public disclosure is the identity of the persons who were permitted to participate in a private auction that apparently resulted in a highly favorable gain to the successful bidders. Those identities are important facts. Should any of the parties wish to bring claims, despite the Examiner's conclusions, they need to know who received the transfers. To test the adequacy and fairness of the auction process, the parties need to know who was invited to bid.

*CME Has Waived This Objection*

CME pins its right to shield the identity of the bidders on the fact that the three documents that the Examiner has cited for that information were produced subject to a Confidentiality Stipulation and Protective Order (the "Confidentiality Agreement") that was executed on December 22, 2009 and was entered by the Court on January 13, 2010.

3

But inexplicitly – inexplicable given that we expressly raised this point with CME – CME does not inform the Court that it had, months prior to the negotiation of the Confidentiality Agreement, already disclosed the identity of those bidders, with no reservations at all.

On October 16, 2009, the Examiner interviewed Tim Doar, a CME employee. CME counsel, both internal and outside, were present. Counsel for the Debtors was also present. In response to questions, Mr. Doar freely and openly divulged the names of the six bidders to the Examiner and to the Debtors. No claim of confidentiality was asserted for any information disclosed by Mr. Doar, not then, not ever. No protection was sought, much less incorporated into the Confidentiality Agreement for previous disclosures.

CME's voluntary disclosure, both to the Examiner and to a third party, waives any argument that the same information should be redacted from otherwise non-confidential documents.[1] *See Three Subpoenas Duces Tecum and Ad Testificandum*, Case No. 95-CV-1069, 1996 WL 673854, at *1 (S.D.N.Y. Nov. 20, 1996) ("movants do not have a reasonable expectation of confidentiality in information that they themselves have already disclosed to a third party"). Similarly, in *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004), the Second Circuit explained the futility of trying to protect information that has already been disclosed to third parties:

---

[1] Not only was the information disclosed to a third party, one of the documents CME seeks now to redact was likewise disclosed – actually, it was expressly addressed to – a third party (Lehman). See CME 4750, attached as Exhibit A to CME's Objection.

> [H]owever confidential it may have been beforehand, subsequent to publication it was confidential no longer . . . . We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again. The genie is out of the bottle . . . . We have not the means to put the genie back.

(Internal citations omitted.)

It is especially strange that CME makes no attempt to address its waiver – since CME was well aware that the Examiner would raise the issue. On the morning of March 11, 2010 (prior to the parties' appearance before the Court on the Examiner's Motion to unseal the Report), the Examiner spoke with CME counsel and expressly asked that CME reconsider its position in light of the disclosures at the Doar interview. Counsel responded that she needed time to consult with the lawyers who were present at the interview. (*See* Declaration of Robert L. Byman). CME has had its time, but it still has not offered any response, perhaps because there is none that is satisfactory, why its present position is not precluded by Mr. Doar's previous disclosures.

### *The Bidder's Identities Are Not Entitled to Confidentiality*

But waiver or not, the simple truth is that the identity of these bidders is not the sort of confidential commercial information that trumps the public's right to information. CME correctly observes that protection can only be granted to information which "if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." (CME Objection, p. 8). But CME utterly fails to posit, must less establish, any such harm.

5

The Examiner has no quibble with the notion that it might have been harmful had the bidders or the terms of their bids been publicized at the time when the bids were in play. If that were the issue there would be no disagreement. Indeed, the Examiner has agreed with other parties to redact information that would disclose current trading positions or other commercial information. But no current information is at issue here. CME articulates no possible harm to the bidders or to the CME if, 18 months after the fact, the facts become known. CME is left to arguing that publicizing the facts now "could have a chilling effect on potential bidders' willingness to participate in any similar auctions CME may have to conduct in the future." (CME Objection, p. 11.)

This is the first and only time the CME has ever used its emergency powers to conduct an auction of a clearing member's assets. It is pure speculation that there will ever be another Lehman, that there will be another need for the CME to do what it has now done once in its entire existence.[2] But even more speculative – no, rather, counter-intuitive – is CME's unsupported argument that potential bidders in some future auction will shy away if they fear their identities might become known after the fact. The Court can safely take notice of the undeniable fact that where there are billions to be made, traders will step up, publicity or not.

---

[2] The CME Group Inc. was formed in 2007 after the merger of the Chicago Mercantile Exchange and Chicago Board of Trade; the constituent exchanges of the CME have histories spanning over 150 years.

CME cites a provision of the CEA and one of its own internal rules for the proposition that the identity of traders is meant to be kept confidential. Neither provision is apt. CEA §8(a) prohibits the publication by the Commodity Futures Trading Commission of sensitive customer information obtained as part of its internal, regulatory investigations; CME Rule 532 prohibits pre-arranged trading by outlawing the disclosure of *pending* orders. Neither provison permits, much less obligates CME to withhold the names of these bidders. The whole point of public markets such as the four exchanges that comprise the CME is openness – where orders are entered and executed in public by open outcry. Nothing in either CEA or CME Rules prohibits the after the fact disclosure of the identity of traders or bidders.

**WHEREFORE,** the Examiner respectfully requests that this Court enter an Order overruling CME's objection, ordering the unsealing of the Examiner's Report, and granting the Examiner such other and further relief as is just and proper.

Dated: March 23, 2010
New York, New York

Respectfully submitted,

By: /s/ *Robert L. Byman*

JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
Patrick J. Trostle
Heather D. McArn

*Attorneys for Anton R. Valukas, Esq., Examiner*