**Hearing Date and Time: April 14, 2010 at 10:00 p.m. (Prevailing Eastern Time)**
**Objection Date and Time:  April 7, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------x
In re                                          :       Chapter 11 Case No.
                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,         :       08-13555 (JMP)
                                               :
                     Debtors.                  :       (Jointly Administered)
-------------------------------------------------------------------x
```

### NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR AUTHORIZATION AND APPROVAL OF CERTAIN SETTLEMENTS WITH THE INTERNAL REVENUE SERVICE

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") for an order authorizing and approving of certain settlements with the Internal Revenue Service, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **April 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Shai Y. Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases, so as to be so filed and received by no later than **April 7, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: March 23, 2010
      New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.* | : | **08-13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |
|  | : |  |

--------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY**
**PROCEDURE 9019 FOR AUTHORIZATION AND APPROVAL**
**OF CERTAIN SETTLEMENTS WITH THE INTERNAL REVENUE SERVICE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

   Lehman Brothers Holdings Inc. ("LBHI") as debtor and as debtor in possession

(together with its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), submits this motion (the "Motion") and

respectfully represents:

**Preliminary Statement**

   1.  LBHI, as parent of an affiliated group with which it filed consolidated

federal income tax returns, has tax disputes with the Internal Revenue Service ("IRS") regarding

its 1997 through 2008 tax years.  LBHI has authority to settle disputes with the IRS on its own

behalf and on behalf of all members of the affiliated group with which it filed consolidated federal income tax returns.  Treas. Reg. § 1.1502-77(a)(1), (2).

2.        In this capacity, LBHI claimed a refund from the IRS for taxes, penalties, and deficiency interest it paid related to eight disputed tax issues reported on its 1997 through 2000 consolidated income tax returns (the "1997-2000 Refund Claims"), seven of which are also disputed in certain tax years from 2001 through 2008.  In connection with these eight issues, LBHI has previously paid $374,094,530 in disputed taxes and penalties and $227,485,447 in deficiency interest.

3.        The settled tax disputes are both factually and legally complex.  They cover a period of time when Lehman was the fourth largest investment bank in the United States. As this Court has observed, "the Debtors are perhaps the most complex and multi-faceted business ventures ever to seek the protection of chapter 11."  *Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Servs. Ltd. (In re Lehman Brothers Holdings Inc.)*, 422 B.R. 407, 420 (Bankr. S.D.N.Y. 2010).  The facts involved in the settled tax disputes are themselves highly complex and voluminous, and depend, for their resolution, on areas of tax law that are either underdeveloped or whose application to Lehman's complex organization is uncertain and open to question.  If LBHI were forced to litigate every one these issues, the outcome of its litigation with the IRS would be highly uncertain and, in all cases, such litigation would be protracted and expensive.

4.        LBHI and the IRS have, therefore, engaged in a good faith effort to resolve as many disputes between them as possible and without recourse to litigation.  After six months of focused negotiations, LBHI and the IRS have settled, subject to the approval of this Court and review by the U.S. Congress Joint Committee on Taxation (the "Joint Committee"),

2

six of the issues in the 1997-2000 Refund Claims, including the resolution of these issues that are also disputed in certain tax years from 2001 through 2008 (the "Settlements")

5.      Of the $374,094,530 refund for taxes and penalties claimed by LBHI, $198,674,074 are attributable to the settled issues.[1]  As a result of the Settlements, LBHI will recover $125,669,643, or 63 percent, of the total $198,674,074 refund for taxes and penalties claimed with respect to the settled issues.[2]  The impact of the Settlements on the issues that are also disputed in certain tax years from 2001 through 2008—for which LBHI has not claimed a refund—is described in Part II, below.

6.      Given the uncertain legal questions and the factual complexity surrounding many of the settled issues, and the risks and expense attendant to litigating each of these settled issues, LBHI believes that the Settlements are fair and reasonable, and in the best interests of its estate and creditors.  Accordingly, LBHI requests authorization pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to enter into the Settlements.

## Background

7.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The

---

[1]  This $198,674,074 excludes the $56,135,098 attributable to the Mark-to-Market issue for the reasons explained in paragraphs 53-57.  Of the total $374,094,530 claim for refund of taxes and penalties, the two issues that have not been settled represent $119,285,357.

[2]  Refunds for deficiency interest are not included in these figures because LBHI cannot definitively compute the amount of deficiency interest that will be refunded until all of the 1997-2000 Refund Claims are resolved by litigation or otherwise.

Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

9.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

10.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

11.      This Court has subject matter jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. § 1334.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

12.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

13.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

4

Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### LBHI's Disputes with the Internal Revenue Service

14.     LBHI's tax disputes with the IRS involve a range of issues spanning from 1997 through 2008.  These disputes can generally be categorized as the 1997-2000 Refund Claims, the 2001-2007 Tax Disputes, and the Other Audits, as defined below.

15.     After auditing LBHI's 1997 through 2000 consolidated income tax returns, the IRS proposed various adjustments that LBHI disputed.  During the audit, LBHI also identified and claimed additional tax positions that were not included on its originally filed returns for 1997 through 2000, and the IRS disputed LBHI's entitlement to certain of those positions.  LBHI and the IRS attempted to administratively resolve their disputes, and while they settled many issues, eight issues remained in dispute and resulted in the 1997-2000 Refund Claims.  Three of these remaining issues, which are also disputed in certain tax years from 2001 through 2008, each involve more than $100 million in disputed taxes, penalties, and interest for the 1997 through 2000 tax years (the "Primary Issues").  The five other remaining issues, four of which are also disputed in certain tax years from 2001 through 2005, each involve less than $20 million in disputed taxes and interest for the 1997 through 2000 tax years (the "Secondary Issues").[3]

16.     In June 2008, in order to procedurally position LBHI to litigate the unsettled issues, LBHI accepted the IRS's adjustments for the eight unsettled issues, paid the

---

[3]  While LBHI's refund claim for the Mark-to-Market Issue was greater than $20 million, the Mark-to-Market Issue is categorized as a Secondary Issue because LBHI only filed a protective claim for refund with respect to that issue, as further explained in paragraphs 53-57.

resulting tax, penalties, and interest, and reserved its right to seek a refund for the taxes,

penalties, and interest paid.

17.     The 1997-2000 Refund Claims arise from the IRS's 1997-2000 audit

cycle.  In a separate audit cycle for LBHI's 2001 through 2007 consolidated income tax returns,

the IRS made several adjustments resulting in tax disputes (the "2001-2007 Tax Disputes").  The

IRS has two other ongoing audits that involve a review of non-income tax issues independent

from the audit of LBHI's consolidated income tax returns (the "Other Audits").  In contrast to

the 1997-2000 Refund Claims for which LBHI is seeking refunds, the IRS will have a claim

against LBHI for any unpaid taxes, penalties, and interest arising from the 2001-2007 Tax

Disputes and potentially from the Other Audits.

18.     Since the Commencement Date, LBHI and the IRS have developed a

process for attempting to resolve the disputes related to the 1997-2000 Refund Claims, the 2001-

2007 Tax Disputes, and the Other Audits.  This process involves a detailed administrative review

of each of the disputed issues.  The review process has three phases:  (i) the collection of

additional documents and facts from LBHI by the IRS; (ii) the exchange of written submissions

by LBHI and the IRS setting forth their factual and legal arguments, and (iii) settlement

negotiations that, when necessary, are mediated by the Appeals Division of the IRS over multiple

days during which LBHI and IRS Counsel (representing the IRS Exam team) formally present

their positions.  The U.S. Attorney's Office for the Southern District of New York has been

involved in the dispute resolution process.

I.     **Overview of Settlements with the Internal Revenue Service**

19.     From June through December 2009, LBHI and the IRS engaged in this

administrative process to attempt to resolve the 1997-2000 Refund Claims.  Specifically, during

this period, LBHI provided factual information pertaining to certain disputed items, and LBHI

and the IRS exchanged written submissions with respect to the issues involved in the 1997-2000 Refund Claims.  The Appeals Division of the IRS mediated negotiations for the three Primary Issues during three separate sessions spanning two days each.  As a result of these negotiations, LBHI and the IRS have settled, subject to the review of this Court and the Joint Committee, two of the Primary Issues (i.e., the Interest Deduction Issue and the LBIE Foreign Tax Credit Issue, which are described below at paragraphs 30 and 36, respectively).

20.    LBHI and the IRS have also settled, subject to the review of this Court and the Joint Committee, four of the Secondary Issues, which are described more fully below.  LBHI and the IRS agreed to consider the remaining Secondary Issue, which is also disputed in the 2001 through 2005 tax years, during the consideration of the 2001-2007 Tax Disputes.[4]

21.    Thus, of the eight disputed issues in the 1997-2000 Refund Claims, LBHI has resolved six issues, intends to litigate one Primary Issue, and will continue settlement discussions for the one remaining Secondary Issue.

22.    LBHI's management and its in-house tax department have assessed the Settlements and have concluded that the Settlements are fair, equitable, and in the best interest of LBHI.  *See* Decl. of Jeffry Ciongoli in Supp. of Mot. of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 for Authorization & Approval of Certain Settlements with the Internal Revenue Service ("Ciongoli Declaration") ¶¶ 18-19, March 23, 2010 (Ex. A).

23.    Throughout this process, LBHI has been advised and represented by lawyers from Bingham McCutchen LLP ("Bingham")[5] who have expertise in handling

---

[4] LBHI and the IRS have already begun the same process to address the issues arising in the 2001-2007 Tax Disputes and the Other Audits.  LBHI and the IRS expect to complete settlement negotiations for all remaining issues by August 31, 2010.

[5] From March 2005 through August 1, 2009, McKee Nelson LLP advised and represented Lehman as its primary tax controversy counsel.  McKee Nelson combined with Bingham effective August 1, 2009, and all of the McKee

significant tax controversy matters for large institutions.  Lawyers from Bingham have served as

LBHI's primary tax controversy counsel since 2005 with respect to the tax disputes involved in

the 1997-2000 Refund Claims, 2001-2007 Tax Disputes, and the Other Audits.  Since the

Debtors' bankruptcy filing, lawyers from Bingham have assisted and advised LBHI in all phases

of the administrative review process.

24.      Sutherland Asbill & Brennan LLP ("Sutherland"), which also has

significant experience with tax controversy matters, has served as LBHI's advisory tax

controversy counsel.  Sutherland assisted LBHI in assessing the hazards of litigation for each of

the Primary Issues and has provided LBHI with its own judgment regarding appropriate

settlement levels for those issues.

25.      LBHI and Bingham have kept the Creditors' Committee apprised of the

nature of LBHI's disputes with the IRS and the progress of LBHI's settlement negotiations.

Based on LBHI and Bingham's briefings and its counsel's review of LBHI's and the IRS's

written submissions, the Creditors' Committee concurred that the Settlements for the two

Primary Issues are fair, equitable, and in the best interest of LBHI.

26.      While LBHI and the IRS have agreed to terms for the Settlements, LBHI

will not execute the settlement agreements for each of the Settlements until this Court approves

the settlement terms.

27.      In accordance with its internal procedures, the IRS will not execute the

settlement agreements for each of the Settlements until it receives a response from the Joint

Committee.  The IRS has already submitted the terms for each of the Settlements to the Joint

---

Nelson lawyers who previously represented Lehman have continued to represent Lehman as partners or employees
of Bingham.

Committee.  The IRS expects that it will receive responses from the Joint Committee with respect to all Settlements no later than June 30, 2010.

28.     Although the Settlements entitle LBHI to a net refund for the 1997 through 2000 tax years, the IRS intends to offset, to the extent it is legally entitled to do so, the refunds due to LBHI against any claims the IRS has against LBHI arising from the 2001-2007 Tax Disputes.[6]  Consequently, the IRS will not pay this refund until the final resolution, by settlement, litigation, or otherwise, of all disputed issues related to LBHI's 1997 through 2007 consolidated income tax returns.  LBHI understands that the United States may also take the position that no refund will be paid to LBHI until all claims of the United States or any of its departments or agencies in the Debtors' bankruptcy proceedings are resolved.[7]

## II.     Description of Settlement Terms

29.     As a result of their negotiations, LBHI, acting on behalf of all members of the affiliated group with which it filed consolidated federal income tax returns, and the IRS agreed to the following Settlements.

### A.     The Interest Deduction Issue (a Primary Issue)

30.     During the 1997 through 2008 tax years, LBHI's subsidiary Lehman Brothers Inc. ("LBI") paid interest expense on loans associated with certain corporate owned life insurance policies covering Lehman employees, and LBHI claimed deductions for this interest expense pursuant to 26 U.S.C. § 163(a) on its consolidated income tax returns for the years at issue (the "Interest Deduction Issue").

---

[6]  It is uncertain from LBHI's perspective whether the IRS will seek to offset refunds due to LBHI against any claim the IRS may have resulting from the Other Audits.

[7]  The United States and the Debtors reserve all of their rights with respect to this issue.

31. The IRS challenged LBHI's entitlement to the interest expense deductions based on LBHI's alleged failure to comply with applicable statutes and common law doctrine.

32. In dispute are $261,551,624 in deductions claimed in connection with the Interest Deduction Issue on LBHI's 1997 through 2000 consolidated income tax returns. Also in dispute are $1,150,347,982 in deductions claimed in connection with the Interest Deduction Issue on LBHI's 2001 through 2008 consolidated income tax returns.

33. To resolve the Interest Deduction Issue, LBHI and the IRS have agreed to the following settlement terms:

    a. LBHI shall be allowed 80 percent of the claimed deductions in the 1997 through 2007 tax years and none of the claimed deduction in the 2008 tax year. Specifically, LBHI shall be allowed $209,241,299 of the $261,551,624 in interest expense deductions claimed in the 1997 through 2000 tax years, $803,334,686 of the $1,004,168,359 in interest expense deductions claimed in the 2001 through 2007 tax years, and none of the $146,179,623 in interest expense accrual through September 19, 2008.

    b. No penalties shall be imposed against LBHI with respect to the Interest Deduction Issue.

    c. LBHI will report gain on its 2009 consolidated income tax return resulting from the lapse of the insurance policies in 2009.

34. To resolve the Interest Deduction Issue, LBHI and LBI have further agreed to the following settlement terms:

    a. No additional deductions for interest paid on loans associated with these corporate owned life insurance policies will be allowed to LBHI, LBI, their successors or assigns for the 2008 tax year or for any year thereafter.

    b. The lapsed corporate owned life insurance policies will not be reinstated, nor will the policies or any rights thereunder be transferred or assigned to any other entity.

35. The settlement of the Interest Deduction Issue reflects LBHI's assessment of the hazards and costs of litigation. One of the positions taken by the IRS was that its

adjustment was supported by four cases involving similar issues that were decided adversely to other taxpayers by federal courts of appeal.  LBHI's position was that the Interest Deduction Issue was factually distinguishable from these four cases and that applicable common law supported LBHI's tax treatment of the Interest Deduction Issue.  In addition, the factual issues are particularly complex because there are three separate group life insurance policies involved in the Interest Deduction Issue, all of which were implemented twenty-five years ago.  Given the risks associated with application of adverse legal precedent to LBHI's case and the costs associated with litigating complex and historic facts, the settlement of the Interest Deduction Issue is in the best interest of LBHI.

**B.    The LBIE Foreign Tax Credit Issue (a Primary Issue)**

36.    During the years at issue, LBHI's indirectly held United Kingdom subsidiary Lehman Brothers International (Europe) ("LBIE") incurred withholding taxes on dividends received from companies resident in third countries (i.e., neither the United Kingdom nor the United States).  LBHI claimed these foreign withholding taxes as foreign tax credits on its consolidated income tax returns for the 1997 through 2000 tax years and the 2007 tax year (the "LBIE Foreign Tax Credit Issue").

37.    The IRS challenged LBHI's entitlement to the foreign tax credits based on LBHI's alleged failure to comply with applicable statutes and regulations.

38.    In dispute are $132,945,521 of the foreign tax credits claimed in connection with the LBIE Foreign Tax Credit Issue on LBHI's 1997 through 2000 consolidated income tax returns.  In addition, penalties pursuant to 26 U.S.C. § 6662 in the amount of $15,983,794 are in dispute for the 1997 through 2000 tax years.

39.    Also in dispute are $50,086,934 of the foreign tax credits claimed in connection with the LBIE Foreign Tax Credit Issue on LBHI's 2007 consolidated income tax

return.  In addition, penalties pursuant to 26 U.S.C. § 6662 in the amount of $6,511,301 are in dispute for the 2007 tax year.

40.     To resolve the LBIE Foreign Tax Credit Issue, LBHI and the IRS have agreed to the following settlement terms:

a.     LBHI shall be allowed 40 percent of the disputed foreign tax credits for the 1997 through 2000 tax years and none of the disputed foreign tax credits for the 2007 tax year.  Specifically, LBHI shall be allowed $53,178,208 of the $132,945,521 of foreign tax credits claimed in the 1997 through 2000 tax years and $0 of the $50,086,934 of foreign tax credits claimed in the 2007 tax year.

b.     LBHI's taxable income for each of the tax years at issue shall be reduced by the amount of disallowed foreign tax credits.

c.     LBHI will not be liable for any penalties with respect to the LBIE Foreign Tax Credit Issue, and any such penalties that were previously assessed shall be abated.

41.     The settlement of the LBIE Foreign Tax Credit Issue reflects LBHI's assessment of the hazards and costs of litigation.  Litigating the LBIE Foreign Tax Credit Issue would require analysis of a unique fact pattern involving hundreds of overseas securities transactions and the development of an obscure area of foreign tax law.  In addition, the domestic law supporting LBHI's position is not well-developed in the context of LBHI's unique fact pattern.  Given the risks associated with applying an area of undeveloped law to LBHI's unique facts and the costs associated with litigating a case involving a complex factual record, the settlement of the LBIE Foreign Tax Credit Issue is in the best interest of LBHI.

**C.     The Sweet River Foreign Tax Credit Issue (a Secondary Issue)**

42.     During the years at issue, Sweet River Investments Ltd., a foreign entity indirectly owned by LBHI, incurred withholding taxes in Brazil with respect to dividend distributions received from Brazilian companies.  LBHI claimed these Brazilian withholding

taxes as foreign tax credits on its consolidated income tax returns for the 1998 through 2002 tax years (the "Sweet River Foreign Tax Credit Issue").

43.    The IRS challenged LBHI's entitlement to the foreign tax credits based on LBHI's alleged failure to substantiate the foreign tax credits and to comply with applicable statutes and regulations.

44.    In dispute are $3,538,431 of the foreign tax credits claimed in connection with the Sweet River Foreign Tax Credit Issue on LBHI's 1998 through 2000 amended consolidated income tax returns.  Also in dispute are $4,166,452 of the foreign tax credits claimed in connection with the Sweet River Foreign Tax Credit Issue on LBHI's 2001 through 2002 consolidated income tax returns.

45.    To resolve the Sweet River Foreign Tax Credit Issue, LBHI and the IRS have agreed to the following settlement terms:

      a.    LBHI shall be allowed approximately 20 percent of the disputed foreign tax credits for the 1998 through 2000 tax years and none of the disputed foreign tax credits for the 2001 through 2002 tax years.  Specifically, LBHI shall be allowed $707,685 of the $3,538,431 of foreign tax credits claimed in the 1998 through 2000 tax years and $0 of the $4,166,452 of foreign tax credits claimed in the 2001 through 2002 tax years.

      b.    LBHI's taxable income for each of the tax years at issue shall be reduced by the amount of disallowed foreign tax credits.

      c.    No penalties shall be imposed against LBHI with respect to the Sweet River Foreign Tax Credit Issue.

**D.    The Brazil Foreign Tax Credit Issue (a Secondary Issue)**

46.    During the years at issue, LBHI directly and indirectly held various investments in Brazil and incurred withholding taxes with respect to income received from these investments.  LBHI claimed these Brazilian withholding taxes as foreign tax credits on its

amended consolidated income tax return for the 2000 tax year (the "Brazil Foreign Tax Credit
Issue").

47.     The IRS challenged LBHI's entitlement to the foreign tax credits based on
LBHI's alleged failure to substantiate the foreign tax credits and to comply with applicable
statutes and regulations.

48.     In dispute are $160,859 of the foreign tax credits claimed in connection
with the Brazil Foreign Tax Credit Issue on LBHI's 2000 consolidated income tax return.

49.     To resolve the Brazil Foreign Tax Credit Issue, LBHI and the IRS have
agreed to the following settlement terms:

    a.    LBHI shall be allowed 100 percent of the disputed foreign tax credits for
the 2000 tax year.  Specifically, LBHI shall be allowed $160,859 of the
$160,859 of foreign tax credits claimed in the 2000 tax year.

    b.    No penalties shall be imposed against LBHI with respect to the Brazil
Foreign Tax Credit Issue.

**E.     The Lease Buy-Out Issue (a Secondary Issue)**

50.     LBHI determined during the audit of its consolidated income tax return for
the 1997 tax year that it was entitled to an additional deduction in the amount of $7,548,598
arising from lease buy-out payments made with respect to its interest in 31 West 52nd Street,
New York, New York (the "Lease Buy-Out Issue").

51.     The IRS did not permit LBHI to claim this additional deduction during its
audit of LBHI's 1997 tax year because LBHI allegedly did not substantiate its entitlement to this
deduction.

52.     To resolve the Lease Buy-Out Issue, LBHI and the IRS have agreed that
LBHI shall be allowed 50 percent of the disputed deduction.  Specifically, LBHI shall be
allowed $3,774,299 of the $7,548,598 deduction claimed in the 1997 tax year.

### F.    The Mark-to-Market Issue (a Secondary Issue)

53.    In the 1997 through 2005 tax years, LBHI's subsidiary Lehman Brothers Special Financing Inc. ("LBSF") marked-to-market its Fixed Income Notional Principal Contracts ("FINPCs") for tax purposes pursuant to 26 U.S.C. § 475(a) (the "Mark-to-Market Issue").

54.    In dispute is the timing of a $581,663,236 deduction claimed by LBHI in the 2004 tax year as section 475 mark-to-market losses attributable to LBSF's FINPC portfolio.

55.    The IRS challenged LBHI's entitlement to the cumulative section 475 mark-to-market loss claimed in the 2004 tax year, and stated that it was considering whether to require LBHI to have recognized this loss on an annual, rather than cumulative, basis.  If so required, LBHI would have recognized a loss in multiple tax years, including the 1997 and 1999 tax years.

56.    LBHI filed a protective claim for refund for the 1997 and 1999 tax years for the portion of the $581,663,236 cumulative loss attributable to the 1997 and 1999 tax years. This protective claim for refund allowed LBHI to preserve its claim in the event the IRS later determined that LBHI was required to recognize a portion of the cumulative loss in 1997 and 1999.

57.    To resolve the Mark-to-Market Issue, LBHI and the IRS have agreed that LBHI shall be allowed to spread the recognition of the $581,663,236 cumulative loss across the 2001 through 2005 tax years.  As a result, the protective claims for refund for 1997 and 1999 were not needed, and LBHI and the IRS have agreed that the protective claims for refund for 1997 and 1999 will be denied.

15

**Relief Requested**

58.    By this Motion, LBHI seeks authorization pursuant to Bankruptcy Rule

9019 to enter into and consummate the Settlements.

**Argument**

59.    The Settlements are in the Debtors' best interests and should be approved

under Bankruptcy Rule 9019.  Bankruptcy Rule 9019(a) provides that, "[o]n motion by the

[debtor in possession] and after notice and a hearing, the court may approve a compromise or

settlement."  FED. R. BANKR. P. 9019(a).  In granting a motion pursuant to Rule 9019(a), a court

must find that the proposed settlement is fair and equitable and is in the best interest of the estate.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414,

424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997);

*In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17F.3d 600 (2d Cir.

1994).

60.    The decision to approve a particular settlement lies within the sound

discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  It is

the responsibility of a court to examine a settlement and determine whether it "falls below the

lowest point in the range of reasonableness."  *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d

599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

Additionally, a court may exercise its discretion "in light of the general public policy favoring

settlements."  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

61.    While a court must "evaluate . . . all . . . factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699

16

F.2d at 608, or conduct a full independent investigation. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact . . . . The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

62.    The court may give weight to the informed judgment of the debtor that a compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness . . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

63.    LBHI and the IRS have spent six months engaging in a carefully structured process designed to facilitate settlement of the disputed 1997-2000 Refund Claims. Because the Primary Issues were not resolved the first time the Appeals Division of the IRS addressed them, LBHI has now been through the IRS's administrative settlement process twice for these issues. By exchanging extensive written submissions setting forth the parties' factual and legal positions and participating in multi-day mediation sessions, both LBHI and the IRS have subjected their positions to rigorous examination and review. The Settlements, therefore, were achieved after each party's thorough review and analysis of their substantive positions and exposure to the hazards of litigation.

64.    Based on an assessment of the hazards of litigation, LBHI's management and its tax department have concluded that the Settlements are fair, equitable, and in the best

interests of LBHI, its estate, and its creditors.  *See* Ciongoli Declaration ¶¶ 18-19.  In particular, with respect to the Interest Deduction Issue, LBHI took into account the risk that unfavorable legal precedent could potentially apply to LBHI's facts.  And with respect to the LBIE Foreign Tax Credit Issue, LBHI took into account the challenge of predicting the outcome in a case involving relatively undeveloped law applied to a unique set of facts.  Litigation of these Primary Issues would also require development of a complex evidentiary record, requiring the estate to incur significant costs.  Similarly, LBHI resolved the Secondary Issues after considering all the relevant factors, including applicable legal precedent, the favorable and unfavorable aspects of the factual record, and the costs of litigation.  The risks and costs associated with potentially litigating the Settlements, therefore, do not outweigh the benefits gained by resolving these issues with finality through the Settlements.

65.     In analyzing the risks of potential litigation and the benefits of the Settlements, LBHI has consulted with its primary tax controversy counsel (Bingham) and its advisory tax controversy counsel (Sutherland).  After review with such counsel, LBHI has concluded that the Settlements are fair, equitable, and in the best interests of LBHI, its estate, and its creditors. Based on LBHI and Bingham's briefings and its counsel's review of LBHI's and the IRS's written submissions, the Creditors' Committee concurred that the Settlements for the two Primary Issues are fair, equitable, and in the best interest of LBHI.

### Notice

66.     No trustee has been appointed in these chapter 11 cases.  LBHI has served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases Docket No. 2837 on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the

Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States

Attorney for the Southern District of New York; and (vi) all parties who have requested notice in

these chapter 11 cases.  LBHI submits that no other or further notice need be provided.

       67.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

      WHEREFORE, LBHI respectfully requests that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  March 23, 2010
      New York, New York

      /s/ Shai Y. Waisman
      Shai Y. Waisman

      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York 10153
      Telephone: (212) 310-8000
      Facsimile: (212) 310-8007

      Attorneys for Debtors
      and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                                  :
In re                                        :        Chapter 11 Case No.
                                                                  :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,     :        08-13555 (JMP)
                                                                  :
                              Debtors.       :        (Jointly Administered)
                                                                  :
                                                                  :
------------------------------------------------------------------x

### ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY
### PROCEDURE 9019 AUTHORIZING AND APPROVING
### OF CERTAIN SETTLEMENTS WITH THE INTERNAL REVENUE SERVICE

Upon the motion, dated March 23, 2010 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI"), as debtor and debtor-in-possession, pursuant to Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization and approval

of certain settlements with the Internal Revenue Service, all as more fully described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the amended

order entered February 13, 2009 governing case management and administrative procedures

[Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; and (vi) all parties who have requested notice in these chapter 11 cases,

and it appearing that no other or further notice need be provided; and a hearing (the "Hearing")

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of LBHI, its estates and

creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to Bankruptcy Rule 9019, the compromises and

settlements described in the Motion are approved; and it is further

ORDERED that pursuant to Bankruptcy Rule 9019, the Settlements[1] are approved

and LBHI is duly authorized to execute, deliver, implement and fully perform any and all

obligations, instruments, documents and papers and to take any and all actions reasonably

necessary or appropriate to consummate the Settlements and perform any and all obligations

contemplated therein; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(h) are waived and the

terms of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

---

[1]     Capitalized terms not otherwise defined herein should have the meaning ascribed to them in the Motion.

2

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order and the Agreement.

Dated: _____, 2010
      New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

3