Form 210A (10/06)

# United States Bankruptcy Court
## Southern District Of New York

In re Lehman Brothers Holdings Inc., et al.,

Case No. 08-13555 (JMP)
(**Jointly Administered**)

### TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a).  Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

Name of Transferee

Deutsche Bank AG, London Branch

Name of Transferor

Nomura International plc

Name and Address where notices to transferee should be sent:

Deutsche Bank AG, London Branch
Winchester House, 1 Great Winchester Street
London EC2N 2DB
Tel: +44 20 7547 2400
Fax: +44 113 336 2010
Attention: Michael Sutton / Philipp Roever
E-mail:  michael.sutton@db.com /
philipp.roever@db.com

Court Claim # (if known):  62770
Amount of Claim: $17,793,993
Date Claim Filed: 2 November 2009

Tel: N/A

Last Four Digits of Acct. #:  N/A

Last Four Digits of Acct. #:  N/A

Name and Address where transferee payments should be sent (if different from above):

Tel: +44 20 7547 2400
Last Four Digits of Acct #: N/A

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____

Date:  18 March 2010

Transferee/Transferee's Agent
Gavin Colquhoun
Managing Director

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

DB Ref: 4465

Anil Das
Director

## EVIDENCE OF TRANSFER OF CLAIM

TO:    THE DEBTOR AND THE BANKRUPTCY COURT

For value received, the adequacy and sufficiency of which are hereby acknowledged, Nomura International plc ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to Deutsche Bank AG, London ("Purchaser") 100% of its right, title, interest, claims and causes of action in and to, or arising under or in connection with, its claim (as such term is defined in Section 101(5) of the U.S. Bankruptcy Code) against Lehman Brothers Holdings Inc. ("LBHI") (the "Debtor"), the debtor in Case No. 08-13555 (JMP) pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and the relevant portion of any and all proofs of claim (No. 62770) filed by Seller with the Bankruptcy Court in respect of the foregoing claim.

Seller hereby waives any objection to the transfer of the claim to Purchaser on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law.  Seller acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Seller transferring to Purchaser the foregoing claim, recognizing Purchaser as the sole owner and holder of the claim, and directing that all further notices relating to the claim, and all payments or distributions of money or property in respect of the claim be delivered or made to Purchaser.

IN WITNESS WHEREOF, this EVIDENCE OF TRANSFER OF CLAIM is executed this 15 day of March         2010.

NOMURA INTERNATIONAL PLC

By: _____
Name:
Title:

DEUTSCHE BANK AG, LONDON

By: _____
Name:
Title:        Anil Das
                    Director
          Gavin Colquhoun
          Managing Director

## EVIDENCE OF TRANSFER OF CLAIM

TO:    THE DEBTOR AND THE BANKRUPTCY COURT

For value received, the adequacy and sufficiency of which are hereby acknowledged, Nomura International plc ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to Deutsche Bank AG, London ("Purchaser") 100% of its right, title, interest, claims and causes of action in and to, or arising under or in connection with, its claim (as such term is defined in Section 101(5) of the U.S. Bankruptcy Code) against Lehman Brothers Holdings Inc. ("LBHI") (the "Debtor"), the debtor in Case No. 08-13555 (JMP) pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and the relevant portion of any and all proofs of claim (No. 62770) filed by Seller with the Bankruptcy Court in respect of the foregoing claim.

Seller hereby waives any objection to the transfer of the claim to Purchaser on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Seller acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Seller transferring to Purchaser the foregoing claim, recognizing Purchaser as the sole owner and holder of the claim, and directing that all further notices relating to the claim, and all payments or distributions of money or property in respect of the claim be delivered or made to Purchaser.

IN WITNESS WHEREOF, this EVIDENCE OF TRANSFER OF CLAIM is executed this 11 day of March 2010.

NOMURA INTERNATIONAL PLC

By: _____
Name:  PETER DJEMJ BRCKOVICH
Title:

DEUTSCHE BANK AG, LONDON

By: _____
Name:
Title:

## ASSIGNMENT OF CLAIM AGREEMENT

ASSIGNMENT OF CLAIM AGREEMENT (this "Agreement") dated as of
.......18.......March................ 2010 by and between Nomura International plc ("Seller")
and Deutsche Bank AG, London ("Purchaser"); Seller and Purchaser are referred to herein
collectively as the "Parties" and individually as a "Party").

### RECITALS

A.      Seller is the beneficial owner of EUR 12,080,000 in face amount of notes, due 4
May, 2011 issued by Lehman Brothers Holdings Inc. ("LBHI") with ISIN no. XS0252835110
(the "Bonds") under the USD 60,000,000,000 Euro Medium Term Note Program of LBHI
identified as Lehman Programme Securities on http://www.lehman-docket.com.

B.      On September 15, 2008, LBHI filed a voluntary petition under chapter 11 of Title
11 of the United States Code, as amended (the "Bankruptcy Code"), and is currently in
proceedings for reorganization in the United States Bankruptcy Court for the Southern District of
New York (the "Bankruptcy Court"), administered under Chapter 11 Case No. 08-13555 et seq.
(the "LBHI Proceedings").

C.      Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser,
the Transferred Rights (as such term is defined herein) on the terms and conditions set forth
herein.

### AGREEMENT

In consideration of the mutual covenants and agreements contained herein, and for other
good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,
the Parties agree as follows:

1.      The Claims.  Seller hereby represents and warrants to Purchaser as of the Effective Date
that:

(a)      a proof of claim, date stamped 2 November 2009 and with assigned claim number
62770 (the "LBHI Proof of Claim"), was filed by Seller's predecessor-in-title on 2 November
2009 against LBHI in the amount of $17,793,993 (the "LBHI Proof of Claim Amount") on the
applicable form provided by LBHI in accordance with the applicable procedures set forth in that
certain Order pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule
3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and
Manner of Notice Thereof and Approving the Proof of Claim Form (Dkt. No. 4271) (the "Bar
Date Order"), and a true and complete copy of the LBHI Proof of Claim is attached to this
Agreement as Exhibit A (such claim is hereinafter referred to as the "LBHI Claim); and

2.      Assignment of Seller's Claim.

(a)      In consideration of the mutual covenants and agreements in, and subject to the
terms and conditions of, this Agreement:

Document #: 646268  Version:v2

(i)     subject to the satisfaction or waiver of the conditions in Section 4(b), Seller irrevocably sells, transfers, assigns, grants and conveys the Transferred Rights and the Bonds to Purchaser with effect on and after the Effective Date; and

(ii)    subject to the satisfaction or waiver of the conditions in Section 4(a), Purchaser irrevocably acquires the Transferred Rights with effect on and after the Effective Date.

(b)     As used herein, the following terms shall have the meanings set forth below:

"Transferred Rights" means all of Seller's right, title and interest in, to and under:

(i)     the LBHI Claim, including, without limitation, "claims" as defined in Section 101(5) of the Bankruptcy Code, any and all right to receive principal, interest, fees, damages, penalties and other amounts in respect of the LBHI Claim (in each case whether accruing prior to, on or after the Effective Date), and, to the extent relating to the LBHI Claim, accounts, accounts receivable and other rights and interest of Seller against LBHI, including, without limitation, all of Seller's right, title and interest in, to and under (A) the LBHI Proof of Claim; and (B) all rights to receive any cash, interest, penalties, fees, damages and/or other amounts received in respect of or in connection with the LBHI Claim;

(ii)    any actions, claims, rights, lawsuits and/or causes of action, whether against LBHI or any other person, and/or voting rights and other rights and benefits of any nature whatsoever arising out of or in connection with the LBHI Claim;

(iii)   all rights in, to and under any collateral or guarantees related to the LBHI Claim;

(iv)    all cash, securities, instruments and other property which may be paid or distributed by LBHI in satisfaction of LBHI Claim under or pursuant to any plan of reorganization or liquidation in the LBHI Proceedings, any redemption, restructuring or other liquidation or otherwise; and

(v)     all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account of, or exchanged in return for, any of the foregoing.

(c)     Notwithstanding any other term of this Agreement, the sale and assignment of the Transferred Rights shall be deemed an absolute and unconditional assignment of the Transferred Rights for the purpose of collection and satisfaction, and not an assignment or transfer to, or assumption by, Purchaser of any obligation or liability of Seller under or in connection with the Transferred Rights, any and all of which obligations and liabilities are and shall remain Seller's obligations and liabilities.

3.      Purchase Price. The consideration paid by Purchaser to Seller is the product of (i) the LBHI Purchase Rate (as specified in the purchase price letter dated the date hereof between Purchaser and Seller (the "Purchase Price Letter")) and (ii) the LBHI Proof of Claim Amount

Document #: 646268  Version:v2

(the "Purchase Price"). Upon the satisfaction of the conditions set forth in Section 4(a), Purchaser shall pay to Seller the Purchase Price by wire transfer of immediately available funds to Seller's account specified in the Purchase Price Letter. The date the Purchase Price is paid shall be hereinafter referred to as the "Effective Date". For the avoidance of doubt, Purchaser shall be entitled to retain, but shall not be under any obligation to pay Seller further consideration with respect to any amounts allowed in excess of the LBHI Proof of Claim Amount that are allowed pursuant to a Final LBHI Order.

As used herein, a "Final LBHI Order" shall mean an order of the Bankruptcy Court which fully and finally determines the amount and the priority of the LBHI Claim and which does not preserve for any person the right to seek to re-determine the amount or priority of the LBHI Claim and which has not been reversed, stayed, modified, or amended and as to which (i) any appeal taken, petition for certiorari or motion for rehearing or reconsideration that has been filed has been finally determined or dismissed in a manner that does not affect the Bankruptcy Court's determination of the allowed amount or treatment of the LBHI Claim or (ii) the time to appeal, seek certiorari or move for reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reconsideration or rehearing has been timely filed.

4.   Conditions Precedent and Bond Delivery

(a)   Purchaser's obligations to pay the Purchase Price to Seller and to acquire the Transferred Rights on the Effective Date shall be subject to the conditions that:

(i)   Seller's representations and warranties in this Agreement shall be true and correct on the Effective Date;

(ii)   Seller shall have complied in all material respects with all covenants required by this Agreement to be complied with by it on or before the Effective Date; and

(iii)   Purchaser shall have received (A) this Agreement duly executed on behalf of Seller, (B) a true and complete copy of the LBHI Proof of Claim, (C) the Purchase Price Letter duly executed on behalf of Seller, (D) a true and complete copy of the Evidence of Transfer of Claim, as filed by Seller's predecessor-in-title in respect of the transfer of the LBHI Claim to Seller, as attached to this Agreement as Exhibit B and (E) a true and complete original of the Evidence of Transfer of Claim, duly executed on behalf of Seller and to be filed by Seller, within 10 business days following the Effective Date, with the Bankruptcy Court under Bankruptcy Rule 3001(e), in the form attached to this Agreement as Exhibit C (the documents referenced in clauses (A), (B), (D) and (E) collectively, the "Assignment Documents").

(b)   Seller's obligation to sell, transfer, assign, grant, and convey the Transferred Rights and the Bonds to Purchaser on the Effective Date shall be subject to the conditions that:

(i)   Purchaser's representations and warranties in this Agreement shall be true and correct on the Effective Date;

(ii)   Purchaser shall have complied in all material respects with all covenants required by this Agreement to be complied with by it on or before the Effective Date;

Document #: 646268  Version:v2

(iii)    Seller shall have received (A) this Agreement duly executed on behalf of Purchaser, and (B) the Purchase Price Letter duly executed on behalf of Purchaser and (C) payment of the Purchase Price from Purchaser; and

(iv)    Seller agrees to transfer the Bonds to Purchaser on the Effective Date, such Bonds to be delivered via Euroclear or Clearstream to such account as Purchaser may designate.

5.    Mutual Representations of Seller and Purchaser. Each of Seller and Purchaser hereby represents and warrants to the other Party as of the Effective Date that:

(a)    it is duly organized and validly existing under the laws of its jurisdiction of organization, in good standing under such laws, and has full power and authority and has taken all action necessary to execute and deliver each Assignment Document and to perform its obligations under each Assignment Document and to consummate the transactions contemplated by each Assignment Document;

(b)    the making and performance by it of each Assignment Document does not and will not violate any law or regulation of the jurisdiction under which it exists, any other law applicable to it or any other agreement to which it is a party or by which it is bound;

(c)    each Assignment Document has been duly and validly authorized, executed and delivered by it and is legal, valid, binding and enforceable against it in accordance with its terms except that the enforceability may be limited by bankruptcy, insolvency or laws governing creditors rights;

(d)    except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with its execution, delivery and performance of this Agreement and the transactions contemplated herein;

(e)    it is an "accredited investor" as such term is defined in Regulation D under the Securities Act of 1933, as amended;

(f)    it acknowledges that (i) the other Party currently may have, and later may come into possession of, information relating to the Transferred Rights, the Debtors, or the Debtors' affiliates or the status of the Proceedings that is not known to it and that may be material to a decision to buy or sell the Transferred Rights and all related rights (as appropriate) (the "Excluded Information"), (ii) it has not requested the Excluded Information, and has agreed to proceed with the purchase or sale of the Transferred Rights and all related rights (as appropriate) hereunder without receiving the Excluded Information, and (iii) the other Party shall have no liability to it, and each Party waives and releases any claims that it might have against the other Party or the other Party's officers, directors, employees, agents and controlling persons and their respective successors and assigns whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Excluded Information; provided, however, that each Party's Excluded Information shall not and does not affect the truth or accuracy of such Party's representations or warranties in this Agreement;

Document #: 646268  Version:v2

(g)    it is aware that the Purchase Price may differ both in kind and amount from any distributions or dividends ultimately made pursuant to any plan of reorganization confirmed by the Bankruptcy Court in the LBHI Proceedings; and

(h)    it has adequate information concerning the business and financial condition of the Debtors, the Transferred Rights and the status of the Proceedings in order to make an informed decision regarding the purchase or sale, as applicable, of the Transferred Rights, and it has independently and without reliance on the other Party and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement and the transactions contemplated hereby, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities in this Agreement.

6.    Additional Representations, Warranties and Covenants of Seller.  Seller hereby represents and warrants to Purchaser as of the Effective Date that:

(a)    no objection has been made or exists in respect of Seller's predecessor-in-title's rights and interest in the LBHI Claim or the other Transferred Rights and there are no offsets or defenses that have been or may be asserted by or on behalf of any Debtor or any other party to reduce the amount of the Transferred Rights or to reduce the value of the LBHI Claim as compared to other general unsecured claims;

(b)    the aggregate principal amount of the LBHI Claim is not less than $17,793,993, and no payment or other distribution has been received by or on behalf of Seller in full or partial satisfaction of the Transferred LBHI Rights;

(c)    within 10 business days following execution of this Agreement, Purchaser will file with the Bankruptcy Court under Bankruptcy Rule 3001(e), a copy of the documents referred to at (D) and (E), respectively, of Clause 4(a)(iii) above in respect of the transfer of the LBHI Claim to Seller.

(d)    Seller is the sole beneficial (and, subject to the filings referred to in paragraph (d) above and the consequential updating of the official records, legal) owner of and has good and marketable title to the Transferred Rights, free and clear of any and all liens, claims, security interests, participations, or encumbrances of any kind or nature whatsoever and will transfer to Purchaser such good and marketable title, free and clear of liens and encumbrances of any kind;

(e)    Seller has not previously sold, conveyed, transferred, assigned, participated, pledged or otherwise encumbered the Transferred Rights, in whole or in part, to any party (or agreed to do any of the foregoing);

(f)    there are no preference actions against Seller or the Transferred Rights, and no legal or equitable defenses, counterclaims or offsets, reductions, recoupments, impairments, avoidances, disallowances or subordinations have been or may be asserted by or on behalf of any Debtor to reduce the amount of the Transferred Rights or affect their validity or enforceability;

(g)    Seller has not engaged, and shall not engage, in any acts, conduct or omissions, and Seller has not had (and shall not have) any relationship with any Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Rights proportionately less in

Document #: 646268  Version:v2

payments or distributions or less favorable treatment than other unsecured creditors of such Debtor;

(h)     Seller does not, and did not on the date of the commencement of the Proceedings against any Debtor, hold any funds or property of such Debtor of any affiliate of such Debtor;

(i)     Seller has not received any notice that the Transferred Rights are void or voidable or subject to any disallowance, reduction, impairment or objection of any kind;

(j)     Seller is not an "affiliate" or "insider" within the meaning of 11 U.S.C. Sections 101 (2) and 101(31), respectively, and is not, and has not been, a member of any official or unofficial creditors' committee appointed in the Proceedings;

(k)     Seller is not, and never has been, "insolvent" within the meaning of Section 1-201(23) of the Uniform Commercial Code or within the meaning of Section 101(32) of the Bankruptcy Code;

(l)     Seller has no obligation or liability related to or in connection with the LBHI Claim or the Proceedings;

(m)     The LBHI Claim has not been made by the Seller in violation of any law to which Seller or the Proceedings are subject;

(n)     the amount payable by the Debtors in respect of the Bonds has been calculated in accordance with the terms of the Bonds and is accurately reflected in the Proofs of Claim; and

(o)     No interest in the Transferred Rights is being sold by or on behalf of one or more Benefit Plans (as defined below). "Benefit Plan" means an "employee benefit plan" (as defined in ERISA) that is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated under it ("ERISA"), a "plan" as defined in Section 4975 of the Code or any Entity whose assets include (for purposes of ERISA Section 3(42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan."

7.     Additional Representations and Warranties of Purchaser. Purchaser hereby represents and warrants to Seller and to Seller's successors and assigns as of the Effective Date that no interest in the Transferred Rights is being acquired by or on behalf of an entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans.

8.     Acknowledgments.

(a)     Purchaser acknowledges that (i) Seller makes only the representations and warranties set forth above, (ii) the transfer of the Transferred Rights by Seller to Purchaser is irrevocable and is without representation or warranty, whether express or implied, of any kind or character by Seller except as expressly provided in this Agreement, (iii) Seller makes no representation or warranty and assumes no responsibility with respect to any statements, warranties, or representations made by any person other than Seller in or in connection with the LBHI Proof of Claim or the execution, legality, validity, or enforceability (with respect to any

Document #: 646268  Version:v2

person other than Seller) of the LBHI Proof of Claim; (iv) Seller makes no representation or warranty and assumes no responsibility with respect to the financial condition, creditworthiness, properties, affairs, status or nature of the Debtors or the performance or observance by the Debtors of any of their respective obligations under the LBHI Proof of Claim or any other instrument or document and (v) Purchaser shall have no recourse to Seller, except for (x) Seller's breaches of its representations, warranties, covenants or obligations under this Agreement and (y) Seller's indemnities, in each case as expressly stated in this Agreement.

(b)     Seller acknowledges that (i) its sale of the Transferred Rights to Purchaser is irrevocable and (ii) Seller shall have no recourse to Purchaser, except for (x) Purchaser's breaches of its representations, warranties, covenants or obligations under this Agreement and (y) Purchaser's indemnities, in each case as expressly stated in this Agreement.

9.    Indemnification.

(a)     Seller agrees to indemnify, defend and hold Purchaser and Purchaser's respective officers, directors, employees, agents and controlling persons and their respective successors and assigns (collectively, the "Purchaser Indemnitees") harmless from and against any and all expenses, losses, claims, damages, suits, proceedings, objections and liabilities which are incurred by or threatened against the Purchaser Indemnitees or any of them, including, but not limited to, attorneys' fees and expenses, caused by, or in any way resulting from or relating to: (i) the breach by Seller of any of its representations, warranties, agreements or covenants set forth in this Agreement or (ii) any obligation to disgorge to or to reimburse or pay any person for any payments, property or collateral actually received or applied by Seller under or in connection with the Transferred Rights.

(b)     Purchaser agrees to indemnify, defend and hold Seller and Seller's officers, directors, employees, agents and controlling persons and their respective successors and assigns (collectively, the "Seller Indemnitees") harmless from and against any and all expenses, losses, claims, damages, suits, proceedings and liabilities which are incurred by or threatened against the Seller Indemnitees or any of them, including, but not limited to, attorneys' fees and expenses caused by, or in any way resulting from or relating to, the breach by Purchaser of any of its representations, warranties, agreements or covenants set forth in this Agreement.

10.    Attorney-In-Fact; Settlement of Seller's Claim; Further Actions.

(a)     Seller hereby irrevocably appoints Purchaser, from and including the Effective Date, as its true and lawful attorney-in-fact solely with respect to the Transferred Rights, and authorizes Purchaser to act in Seller's name, place and stead, to demand, sue for, compromise and recover all such amounts which are, or may hereafter become, due and payable for or on account of the Transferred Rights herein assigned. Seller hereby grants unto Purchaser full authority to do all things necessary to enforce the Transferred Rights and Seller's rights thereunder. Seller agrees that the powers granted in this paragraph are discretionary in nature and exercisable at the sole option of Purchaser. Purchaser shall have no obligation to prove, defend, or take any affirmative action with respect to proving the validity or amount of the Transferred Rights. In the event an objection to the LBHI Claim is received by Seller, Seller shall immediately notify Purchaser in writing and shall take such further action, at its own

Document #: 646268  Version:v2

expense, as may be necessary or desirable to uphold and defend the LBHI Claim and effect this
Agreement and any payments or distributions on account of the Transferred Rights to Purchaser
including, without limitation, the execution of appropriate transfer powers, corporate resolutions,
consents and powers of attorney.

(b)     Seller shall not compromise or settle the Transferred Rights or the LBHI Proof of
Claim Amount without the prior written consent of Purchaser. In performing any of its
obligations under this Section 10 and in otherwise complying with its obligations under this
Agreement, each of Seller and Purchaser hereby covenants and agrees to act reasonably at all
times and to maximize the value of the Transferred Rights and to minimize the time before the
Transferred Rights are quantified and paid.

(c)     Seller agrees to forward to Purchaser all notices received by Seller from any
Debtor, the Bankruptcy Court or any third party with respect to the Transferred Rights assigned
herein, to vote the Transferred Rights assigned herein in a timely manner and in accordance with
Purchaser's instructions, and to take such further action with respect to the Transferred Rights in
the Proceedings as Purchaser may from time to time request.

(d)     Seller agrees that, to the extent that it continues to hold any Transferred Rights,
those Transferred Rights shall, from the Effective Date, constitute property of Purchaser to
which Purchaser has an absolute right and accordingly, from the Effective Date, the Seller will
hold such Transferred Rights in trust for the Purchaser and will take such further action with
respect to such Transferred Rights as Purchaser may from time to time request.

(e)     Seller further agrees that if Seller receives any distributions on account of the
Transferred Rights, whether in the form of cash, securities, instruments or any other property, the
aforementioned shall constitute property of Purchaser to which Purchaser has an absolute right.
Seller shall hold such property in trust and will, at its own expense, deliver to Purchaser any such
property in the same form received, together with any endorsements or documents necessary to
transfer such property to Purchaser within two business days of receipt in the case of cash and
five business days in the case of securities. Should all or any portion of the distributions on
account of the Transferred Rights not be assignable by Seller to Purchaser, then Seller grants to
Purchaser a participation interest in the Transferred Rights or such distributions, in accordance
with applicable law.

11.     Miscellaneous.

(a)     Further Assurances. Each of the Parties agrees to execute and deliver, or cause to
be executed and delivered, all such instruments and documents (including, without limitation, the
Bonds and any supporting documents evidencing the Transferred Rights), and to take all such
action as the other Party may reasonably request, promptly upon the request of such other Party,
in order to give effect to the intent and purpose of, and to carry out the terms of, this Agreement
and to cause Purchaser to become the legal and beneficial owner and holder of the Transferred
Rights and, to the extent that the Bonds are unblocked within the Euroclear or Clearstream
Banking clearance systems, the holder of the Bonds.

Document #: 646268  Version:v2

(b)     Further Transfers. Seller hereby acknowledges that Purchaser may at any time further assign any or all of the Transferred Rights, together with all right, title and interest of Purchaser in and to this Agreement.

(c)     Survival. All representations, warranties, covenants and agreements contained herein shall survive the Effective Date and the execution, delivery and performance of this Agreement and any sale, assignment, participation or transfer by Purchaser of any or all of the Transferred Rights, and shall inure to the benefit of Seller, Purchaser and their respective successors and assigns; provided, however, that the obligations of Seller and Purchaser contained herein shall continue and remain in full force and effect until fully paid, performed and satisfied.

(d)     Interest. If either Party fails to make a payment or distribution to the other Party within the time period specified in this Agreement, the Party failing to make full payment of any amount when due shall, upon demand by the other Party, pay such amount due together with interest on it for each day from (and including) the date when due to (but excluding) the date when actually paid at a rate per annum equal to Average EURIBOR (in respect of EUR amounts) or Average LIBOR (in respect of USD amounts), in each case plus 1%. "Average LIBOR" and "Average EURIBOR" means (i) the sum of all the individual LIBOR or EURIBOR rates (as applicable) for each day in the applicable period, divided by (ii) the total number of days in such period. "LIBOR" means, for any day, the one-month London Interbank Offered Rate for deposits in U.S. Dollars as set by the British Bankers Association ("BBA") and published by the BBA at approximately 11:00 a.m. London time on such day. For any day that is not a business day, LIBOR shall be the rate published by the BBA on the immediately preceding business day. "EURIBOR" means, for any day, the rate for deposits in Euros for a period of one month which appears on the Reuters Screen EURIBOR01 Page as of 11:00 a.m., Brussels time, on such day. For any day that is not a business day, EURIBOR shall be the rate for the immediately preceding business day.

(e)     No Set-Off. Each payment to be made by either Party shall be made without set-off, counterclaim or deduction of any kind.

(f)     Governing Law; Jurisdiction; Service of Process. The laws of the State of New York shall govern this Agreement, without regard to any conflict of laws provisions thereof. Each Party submits to the jurisdiction of the federal or state courts located in the County of New York, State of New York and agrees that any litigation relating to this Agreement shall be brought only in such courts. Each Party consents to service of process by certified mail at its address listed in the Schedule hereto.

(g)     Counterpart Execution. This Agreement may be executed in any number of counterparts, each of which, when so executed and delivered, shall be an original, but all of which, together, constitute one and the same instrument. Transmission by facsimile or electronic mail of an executed counterpart of this Agreement shall be deemed to constitute due and sufficient delivery of such counterpart.

(h)     WAIVER OF JURY TRIAL. THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT THEY MAY HAVE TO TRIAL BY JURY OF

ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(i)     3001(e) Transfer.  Seller hereby acknowledges and consents to all terms set forth in this Agreement and hereby waives its right to raise any objection thereto and its right to receive notice pursuant to Bankruptcy Rule 3001(e), and consents to the substitution of Seller by Purchaser for all purposes in the LBHI Proceedings, including, without limitation, for voting and distribution purposes with respect to the Transferred Rights.  Purchaser agrees to file a Notice of Transfer with the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e).

(j)     Notices; Payments by Wire Transfer.  All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth in the Schedule hereto, or such other address as may be furnished hereafter by notice in writing.  All payments by Seller to Purchaser and Purchaser to Seller under this Agreement shall be made in the lawful currency of the United States (in the case of USD) and in the lawful currency of the participating states of the European Union (in the case of EUR) by wire transfer of immediately available funds to Seller or Purchaser, as applicable, in accordance with the wire instructions specified in the Purchase Price Letter.

(k)     Integration.  This Agreement, together with any schedules and exhibits hereto, constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior agreements, understandings or representations pertaining to the subject matter hereof, whether oral or written.  There are no warranties, representations or other agreements between the Parties in connection with the subject matter hereof except as specifically and expressly set forth herein.

(l)     Captions and Headings.  The captions and headings in this Agreement are for convenience only and are not intended to be full or accurate descriptions of the contents thereof.  Such captions and headings shall not be deemed to be part of this Agreement and in no way define, limit, extend or describe the scope or intent of any provisions hereof.

(m)     Severability.  If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were

omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

(n)     Confidentiality. Each Party agrees that except (i) as may be compelled by legal process, by an order, judgment or decree of a court of other governmental authority of competent jurisdiction or (ii) disclosures to its own employees, professionals or representatives, it shall not disclose to any person the existence of, or terms and conditions of, this Agreement or any document executed or delivered in connection herewith, except that Purchaser may disclose this Agreement (but not the Purchase Price) to any prospective purchaser or transferee of all or any portion of the Transferred Rights; provided, that such prospective purchaser or transferee shall be advised of, and agree to be bound by, either the provisions of this Section 11(n) or other provisions at least as restrictive as this Section 11(n).

(o)     Amendments; Waivers.

(i)     No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent to any departure by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(ii)     No failure on the part of either Party to exercise, and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, nor shall any single or partial exercise of any right hereunder or under any other related document preclude any other or further exercise thereof or the exercise of any other right. The rights and remedies of each Party provided herein and in other related documents (A) are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law and (B) are not conditional or contingent on any attempt by such Party to exercise any of its rights under any other related documents against the other Party or any other entity.

(p)     Successors and Assigns. The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

[Remainder of page intentionally left blank; signatures follow on next page]

IN WITNESS WHEREOF, the undersigned have executed and delivered this document as a deed on the date first stated above.

Executed as a deed by
**NOMURA INTERNATIONAL PLC**

By:_____

    Name:    GEORGES ASAT

    Title:    MANAGING DIRECTOR

And witnessed by

By:_____

    Name:    LUKE NOLAN

    Title:    VICE PRESIDENT

Executed as a deed by
**DEUTSCHE BANK AG, LONDON**
by two duly authorized signatories:

By:_____

    Name:

    Title:

By:_____

    Name:

    Title:

IN WITNESS WHEREOF, the undersigned have executed and delivered this document as a deed on the date first stated above.

Executed as a deed by
**NOMURA INTERNATIONAL PLC**
by two duly authorized signatories

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

Executed as a deed by
**DEUTSCHE BANK AG, LONDON**
by two duly authorized signatories

Gavin Colquhou
Managing D᠃

By:_____
    Name:
    Title:

By:_____
    Name: Anil Das
    Title: Director

Document #: 646268  Version:v2

**EXHIBIT A**
**LBHI Proof of Claim**

Document #: 646268   Version:v2

**EXHIBIT B**
**Evidence of Transfer of Claim**

**EXHIBIT C**
**Form of Evidence of Transfer of Claim**

**SCHEDULE**
**Notice Addresses**

**Address for Purchaser:**

London Loan Operations
Deutsche Bank AG, London
21st Floor
99 Bishopsgate
London
EC2M 3XD
Tel: + 44 (0)20 7545 7163
Fax: + 44 (0)20 7547 5843
Team email: LS2.DisTrading@list.db.com
Personal email: conor.mcgovern@db.com

**Address for Seller:**

| | |
|---|---|
| Address: | Nomura House |
| | 1 St. Martin's-le-Grand |
| | LONDON EC1A 4NP |
| Attention: | Transaction Legal Department |
| Telephone No: | +44-0207-521-2000 |
| Facsimile No: | +44-0207-521-3655 |

Document #: 646268   Version:v2

**EXHIBIT A**
**LBHI Proof of Claim**

Execution version

**EXHIBIT B**
**Evidence of Transfer of Claim**

Execution version

**EXHIBIT C**
**Form of Evidence of Transfer of Claim**

Execution version

**SCHEDULE**
**Notice Addresses**

**Address for Purchaser:**

London Loan Operations
Deutsche Bank AG, London
21st Floor
99 Bishopsgate
London
EC2M 3XD
Tel: + 44 (0)20 7545 7163
Fax: + 44 (0)20 7547 5843
Team email: LS2.DisTrading@list.db.com
Personal email: conor.mcgovern@db.com

**Address for Seller:**

| | |
|---|---|
| Address: | Nomura House |
| | 1 St. Martin's-le-Grand |
| | LONDON EC1A 4NP |
| Attention: | Transaction Legal Department |
| Telephone No: | +44-0207-521-2000 |
| Facsimile No: | +44-0207-521-3655 |

Execution version