WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
**In re** : **Chapter 11 Case No.**
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : **08-13555 (JMP)**
: 
Debtors. : **(Jointly Administered)**
: 
: 
---------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION FOR APPROVAL OF
A SETTLEMENT AGREEMENT WITH METAVANTE CORPORATION**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings Inc. ("LBHI"), as debtors and debtors in possession (together, the "Debtors"), for approval of a settlement agreement among the Debtors and Metavante Corporation, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **April 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard W. Slack, Esq. and Robert J. Lemons, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111, Attn: Richard J. Bernard, Esq., attorneys for Metavante Corporation, so as to be so filed and received by no later than **April 7, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: March 24, 2010
      New York, New York

/s/ Richard W. Slack
Richard W. Slack
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re : **Chapter 11 Case No.**
: 
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, : **08-13555 (JMP)**
: 
Debtors. : **(Jointly Administered)**
: 
: 
------------------------------------------------------------------x

**DEBTORS' MOTION FOR APPROVAL OF**
**A SETTLEMENT AGREEMENT WITH METAVANTE CORPORATION**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers

Holdings Inc. ("LBHI"), as debtors and debtor in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully

represent:

**Background**

1. Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

**Jurisdiction**

3. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Relief Requested**

4. By this Motion, the Debtors seek approval, pursuant to Bankruptcy Rule 9019, of a settlement agreement (the "Settlement Agreement") with Metavante Corporation ("Metavante") and its parent Fidelity National Information Services, Inc. ("FIS"). As set forth more fully below, the Debtors' decision to enter into the Settlement Agreement is a reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors, their estates and creditors. As such, the Settlement Agreement should be approved.

**Background of the Dispute**

The Swap Agreement

5. On December 5, 2007, LBSF and Metavante entered into an interest rate swap agreement (the "Swap Agreement"). The Swap Agreement requires Metavante to make quarterly payments to LBSF based on a fixed interest rate (3.865%) on a notional amount of $600 million (which notional amount declines over the life of the swap), and requires LBSF to make quarterly payments to Metavante based on a floating rate of interest (the floating three-

month USD-LIBOR-BBA rate) on the same declining notional amount of $600 million. Payments are made on the same date quarterly on a net basis, with only the party owing the larger amount making a payment. LBHI acts as a credit support provider for payment obligations of LBSF under the Swap Agreement. By its terms, the Swap Agreement expires on February 1, 2012.

The Litigation

6. On May 29, 2009, LBSF filed a motion [Docket No. 3691] (the "Motion to Compel"), pursuant to sections 105(a), 362 and 365 of the Bankruptcy Code, to compel performance of Metavante's obligations under the Swap Agreement and to enforce the automatic stay. Metavante objected to the Motion to Compel and asserted that it had a legal right to withhold performance of its obligations under the Swap Agreement because, among other reasons, the plain language of section 2(a)(iii) of the Swap Agreement provided that right. On September 17, 2009, the Court entered an order [Docket No. 5209] granting the relief requested in LBSF's Motion to Compel. Metavante appealed that order to the United States District Court for the Southern District of New York (the "District Court"), Case No. 09-CIV. 09839 (JSR) (the "Appeal").

7. After the Court's decision granting the Motion to Compel, the Debtors have successfully obtained performance and/or consensual termination payments from many other counterparties which entered into transactions with the Debtors that are similar to the Swap Agreement. Indeed, many of these now-settling counterparties had previously asserted legal positions similar to Metavante to avoid performing under their agreements or settling with the Debtors.

Metavante's Proofs of Claim

8.  Metavante filed proofs of claim against LBSF and LBHI related to the Swap Agreement (proofs of claim nos. 24183 and 24624) (the "Proofs of Claim"). Metavante has asserted a claim for $5.4 million plus any additional damages Metavante might incur (1) against LBSF for alleged costs incurred in entering into a replacement swap transaction and (2) against LBHI, as LBSF's guarantor, for such amounts. In response to the Motion to Compel, Metavante asserted that any amounts it would otherwise owe under the Swap Agreement must be reduced by at least $9 million for alleged costs incurred in entering into a replacement swap.

## The Settlement Agreement

9.  The parties have reached a settlement of all disputes between them, including the matters on Appeal and the Proofs of Claim. On March 5, 2010, the parties reported to the District Court that they resolved the Appeal. On March 16, 2010, the District Court entered an order remanding the Appeal to permit this Court to consider the Settlement Agreement pursuant to Bankruptcy Rule 9019 and ordered LBSF to take necessary steps to have this motion heard at the April 14, 2010 omnibus hearing date.

10. The settlement is designed to allow the Swap Agreement to mature (which will occur in less than two years on February 1, 2012) and the parties have agreed to accrue all payments falling due between the date of LBSF's bankruptcy filing and the final maturity date, and to have all payments netted at the final maturity date. Thus, in a very short period, the Debtors will be able to achieve nearly the full benefits of the Swap Agreement without the counterparty asserting rights under Section 2(a)(iii) or any other provisions of the Swap Agreement to undermine that payment. In addition, the counterparty is withdrawing with prejudice its claim for the nearly $9 million of alleged rehedging costs incurred against the

Debtors and is agreeing to forego any setoff claims with respect to payments owed under the Swap Agreement. Specifically, the Settlement Agreement provides:[1]

- Maturity Date Payment. On February 1, 2012 (the "Maturity Date"), the date that the transaction matures under the terms of the Swap Agreement, one final net payment (the "Maturity Date Payment") will be made representing all net payments accrued under the Swap Agreement from the date of LBSF's bankruptcy filing through the Maturity Date. Payments will accrue through February 1, 2012 on a net basis and no payments will be made by either party in the interim.

- No Defenses to Payment. Metavante agrees that its obligations to make either the Maturity Date Payment or the Early Maturity Payment (defined below) shall not be subject to any defenses, set-off, waivers or satisfaction of conditions precedent (including, without limitation, under section 2(a)(iii) of the Swap Agreement).

- Early Maturity Payment. Metavante will have the right to terminate the Swap Agreement upon not less than five business days' prior notice to LBSF. In the event Metavante terminates the Swap Agreement, one final net payment (the "Early Maturity Payment") will be calculated on the basis of an agreed-upon formula.

- Withdrawal of all Litigation. The parties will cease and withdraw all existing litigation and legal actions between them. Upon approval of the Settlement Agreement, Metavante agrees immediately to withdraw the Appeal and all Proofs of Claim against the Debtors with prejudice.

- No Interest. No interest will accrue or be payable by either party on the Maturity Date Payment or the Early Maturity Payment in respect of any period of time prior to such date.

- Interest Rate Cap. LBSF will purchase an interest rate cap that will match the notional amortization and reset rates of the Swap Agreement to be held in escrow for the benefit of Metavante until Metavante terminates, if ever, the Swap Agreement.

- Other. Metavante agrees to withdraw its Proofs of Claim seeking at least $5.4 million with prejudice, forgo any right to other hedging costs that have allegedly accrued subsequent to the filing of the Proofs of Claim, and forgo reimbursement for its costs and expenses under the Swap Agreement. LBSF agrees to make a payment to reimburse

---

[1] This is simply a summary of terms. The actual governing terms are contained in the Settlement Agreement.

> Metavante for certain expenses and allow a modest deduction on the Maturity Date Payment by Metavante.

11. The Creditors' Committee participated in the litigation, reviewed and commented on the Settlement Agreement and does not object to the Debtors' entry into the Settlement Agreement.

## The Controlling Legal Standard

12. Courts have long considered compromises to be "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939). The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). The settlement need not result in the best possible outcome for the debtor, but must not "fall below the lowest point in the range of reasonableness." *Vaughn v. Drexel Burnham Lambert Group, Inc. (Drexel Burnham Lambert Group)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). The analysis must focus on the question of whether a particular compromise is "fair and equitable, and in the best interest of the estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

13. Bankruptcy courts have applied the following factors in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; (iii) the proportion of creditors

who do not object to, or who affirmatively support, the proposed settlement; and (iv) the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424; *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); *In re Best Prods. Co.*, 168 B.R. at 50.

14. While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact…. The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

15. The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

16. Significantly, there is no requirement that "the value of the compromise … be dollar-for-dollar the equivalent of the claim." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427

(S.D.N.Y. 1993). While certainly not the situation here, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id*. at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).

### The Settlement Agreement Meets the Legal Standard Established Under Rule 9019 and Is in the Bests Interests of the Debtors' Estates

17. The Settlement Agreement will benefit the Debtors and their creditors. The Debtors, through their financial advisors, have conducted a comprehensive assessment of the financial terms of the Settlement Agreement, and believe that it is in the best interests of their estates and creditors. Since the filing of the Motion to Compel, LBSF has been "in the money" on the Swap Agreement and believes, based upon its review of current and projected interest rates, that it is likely it will remain in such position through the Maturity Date.

18. As a result, the Settlement Agreement will ultimately entitle LBSF to payment of all amounts that will become due it under the Swap Agreement at maturity with a very modest deduction. For example, if 3-month Libor does not change from today's .282%, then at maturity, Metavante will make a payment to LBSF of approximately $40.9 million in February 2012 (comprised of $20.90 million in accrued payments and the prospect of $19.97 million in payments to be earned by LBSF), and after consideration of certain costs and deductions to Metavante, this amount would be approximately 97% of the amounts otherwise owed to LBSF.

19. Although the payments have been deferred to the Maturity Date, LBSF believes that this situation presents a rather unique situation where there is nominal credit risk in its ability to collect a final payment from Metavante, especially given Metavante's recently consummated merger with FIS in October 2009 that has improved Metavante's financial

resources (as evidenced by the merged company's ratings increase to "Ba1" by Moody's and "BB+" by Standard & Poor's in October 2009) and, unlike in most other circumstances, the Swap Agreement is set to mature in less than two years.  Additionally, LBSF is a "Secured Party" and the Swap Agreement is a "Specified Swap Agreement" under a credit agreement of Metavante, which further limits the risk of loss of value of the Swap Agreement.  Given these unusual circumstances which favor the type of settlement reached here, LBSF believes that the Settlement Agreement provides significant value to the estate.  Moreover, even if Metavante elects to terminate the Swap Agreement, the agreed-upon formula for calculation of the Early Maturity Payment – an issue that was also the subject of dispute – is consistent with the manner in which LBSF has consensually settled many of its swap agreements with other counterparties and protects the Debtors from Metavante using aggressive valuation techniques that have been employed by other counterparties with which the Debtors have taken significant issue.

20. The Settlement Agreement also enables the Debtors to avoid the risks and costs of litigation, including the risks of the Appeal.  Although the Debtors believe that the Court's decision granting the Motion to Compel is grounded in sound bankruptcy law and should be affirmed, the results of litigation are never certain and further litigation (including the potential for further appeals) necessarily will be time consuming and costly to the Debtors' estates.  Additionally, if Metavante were to be successful in the Appeal (in whole or in part), there could be a negative impact on the Debtors' efforts to recover value from other similarly-situated counterparties.  Multiple counterparties have informed LBSF that they prefer to await the outcome of the Appeal before negotiating further.  Moreover, under the Settlement Agreement, Metavante will withdraw its Proofs of Claims against the Debtors for more than $5.4 million of alleged costs incurred in entering into a replacement swap (as well as forgo other

alleged re-hedging costs and expenses). Thus, the Settlement Agreement also allows the Debtors to avoid the costs of litigating the Proofs of Claim.

21. In sum, the Settlement Agreement will allow LBSF to capture nearly the full value of the Swap Agreement for its estate with little discount, while avoiding the risks and costs associated with continuation of litigation with Metavante. The benefits of the Settlement Agreement outweigh its limited costs. The Debtors have negotiated the Settlement Agreement at arm's-length to come to a fair resolution regarding their disputes with Metavante. The Creditors' Committee reviewed and commented on the Settlement Agreement and does not object to the Debtors' entry into the Settlement Agreement. Accordingly, the Debtors submit that the Settlement Agreement falls well within the range of reasonableness, and, therefore, the Court should approve the Settlement Agreement.

## Notice

22. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all parties who have requested notice in these chapter 11 cases; and (vii) Metavante. The Debtors submit that no other or further notice need be provided.

23. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: March 24, 2010
      New York, New York

/s/ Richard W. Slack
Richard W. Slack
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
         Debtors.                         :    (Jointly Administered)
                                          :
                                          :
------------------------------------------------------------------x
```

## ORDER GRANTING DEBTORS' MOTION FOR APPROVAL OF A SETTLEMENT AGREEMENT WITH METAVANTE CORPORATION

Upon the motion, dated March 24, 2010 (the "Motion"), of Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings Inc. ("LBHI," together the "Debtors"), as debtors and debtors-in-possession pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of a settlement agreement among the Debtors and Metavante Corporation (the "Settlement Agreement"), all as more fully described in the Motion; and upon the Declaration of Daniel Ehrmann, dated March 24, 2010, in support of the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all parties who have requested notice in these chapter 11 cases; and (vii) Metavante, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Debtors' entry into the Settlement Agreement is approved; and it is further

ORDERED that LBSF and LBHI are authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Settlement Agreement and perform any and all obligations contemplated therein; and it is further

ORDERED that the terms of this Order shall be immediately effective and enforceable upon its entry; it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2010
          New York, New York

                                                    _____
                                                    UNITED STATES BANKRUPTCY JUDGE