WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
**In re**                                                   :   Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                :   08-13555 (JMP)
:
Debtors.                                :   (Jointly Administered)
:
:
------------------------------------------------------------x

### DECLARATION OF DANIEL EHRMANN IN SUPPORT OF DEBTORS' MOTION FOR APPROVAL OF A SETTLEMENT AGREEMENT WITH METAVANTE CORPORATION

Pursuant to 28 U.S.C. § 1746, I, Daniel Ehrmann, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge, my review of the business records of Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings Inc. ("LBHI") and/or my consultation with employees of LBSF and LBHI. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this Declaration in support of the *Debtors' Motion for Approval of a Settlement Agreement with Metavante Corporation* (the "Motion").[1]

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

3. I am a Managing Director with Alvarez & Marsal North America, LLC. I was assigned to the Lehman matter in September 2008. I am a co-head of the derivatives group for the above-captioned chapter 11 debtors (collectively, the "Debtors"). In that capacity, I am responsible for and manage all derivatives-related matters of the Debtors.

4. I am familiar with LBSF's Swap Agreement with Metavante Corporation ("Metavante") and the litigation between the Debtors and Metavante, including the Appeal. I am also familiar with the Proofs of Claim asserted by Metavante in the Lehman bankruptcy. Since the decision granting the Motion to Compel, the Debtors have successfully obtained performance and/or consensual termination payments from many other counterparties which entered into transactions similar to the Swap Agreement with Metavante. Many of the now-settling counterparties had previously asserted legal positions similar to the positions asserted by Metavante to avoid either performing under their agreements or settling with the Debtors.

5. I have reviewed the Settlement Agreement and the Motion. The Motion accurately reflects the general terms of the Settlement Agreement. After consultation with various employees of the Debtors and counsel, I believe that the Settlement Agreement is in the best interests of the Debtors, their estates and creditors. Indeed, it is the collective view of the most senior employees of the Debtors that this proposed settlement is in the best interests of the Debtors, their estates and creditors.

6. Based upon the financial terms of the Swap Agreement and current and projected interest rates, LBSF expects that under the proposed settlement the Swap Agreement will ultimately entitle LBSF to a substantial payment less only a modest deduction. For example, if 3-month Libor does not change from today's .282%, then at maturity, Metavante will make a payment to LBSF of approximately $40.9 million in February 2012 (comprised of $20.90 million

in accrued payments and the prospect of $19.97 million in payments to be earned by LBSF), and after consideration of certain costs and deductions to Metavante, this amount would be approximately 97% of the amounts otherwise owed to LBSF.

7.  Deferral of the payments due under the Swap Agreement to the February 1, 2012 Maturity Date does not expose LBSF's estate to significant or unacceptable risk in this unique circumstance because: (a) given Metavante's recent merger with FIS that has improved Metavante's financial resources (as evidenced by the merged company's ratings increase to "Ba1" by Moody's and "BB+" by Standard & Poor's in October 2009), LBSF has assessed the credit risk in its ability to collect a final payment from Metavante and believes it to be nominal; (b) LBSF is a "Secured Party" and the Swap Agreement is a "Specified Swap Agreement" under a credit agreement of Metavante; and (c) unlike in most other circumstances, there is a short term remaining under the Swap Agreement.  Similarly, if Metavante terminates the Swap Agreement, the agreed-upon formula for calculation of the Early Maturity Payment is consistent with the manner in which LBSF has consensually settled many of its swap agreements with other counterparties and protects the Debtors from Metavante using aggressive valuation techniques that have been employed by other counterparties with which the Debtors have taken significant issue.

8.  The Settlement Agreement will enable the Debtors to avoid the risks and costs of litigation, including the Appeal.  I am familiar with and have been advised by counsel of the risks to the Debtors of the Appeal.  Although the Debtors are confident that the Court's decision granting the Motion to Compel should be affirmed, the results of litigation are never certain and further litigation (including the potential for further appeals) will be costly to the Debtors.  If Metavante were to be successful in the Appeal (in whole or in part), there could be a negative

impact on the Debtors' ability to recover value from similarly situated counterparties. Multiple counterparties have informed LBSF that they prefer to await the outcome of the Appeal before negotiating further. As an additional benefit of the Settlement Agreement, Metavante will withdraw with prejudice its Proofs of Claim against the Debtors for more than $5.4 million of alleged costs incurred by Metavante to enter into a replacement swap (as well as forgo other alleged re-hedging costs and expenses).

9. The Settlement Agreement was negotiated at arm's-length and achieves a very favorable result for the Debtors that will provide significant value to LBSF's estate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 24th day of March 2010.

/s/ Daniel Ehrmann
Daniel Ehrmann