# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE
NEW YORK, NY 10153

(212) 310-8000
FAX: (212) 310-8007

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

RICHARD J. DAVIS
DIRECT LINE (212) 310-8860
E-MAIL: richard.davis@weil.com

March 24, 2010

Robert L. Byman
Partner
Jenner & Block LLP
330 North Wabash
Chicago, IL 60611-7603

Dear Bob:

I am writing about the presentation in the Examiner's Report of a portion of your interview of Thomas Roberts. While we have some other questions about the report, Page 2136 raises particular concerns.

That page of the Report states that "Roberts indicated that both deals entailed (1) Barclay's acquisition of assets and liabilities as a 'wash'...." This statement, however, leaves out significant qualifiers Mr. Roberts provided and, as a result, is misleading. What Mr. Roberts said during his interview is that:

1.  "In theory" assets and liabilities were a wash;

2.  The "devil" was in how the securities positions were marked, asset values were declining during this period, and there were arguments about the marks which continued through the closing;

3.  The limited post-closing true up in the original agreement was removed and while he could not recall the precise reason, doing so was not controversial;

4.  In response to your question as to why there wasn't protection of the balance between assets and liabilities, Mr. Roberts repeated that the assets were going down, and stated that while in some deals there might be a post closing true-up, no such provision was in this agreement.

WEIL, GOTSHAL & MANGES LLP

Robert L. Byman
March 24, 2010
Page 2

      Consistent with the deposition testimony of Harvey Miller in the Barclays-Lehman litigation, a copy of which you have, it remains the position of Mr. Roberts that while maintaining a balance between assets and liabilities might have been desirable, everyone understood that the agreement did not require there to be such a balance. In addition, one of the rationales for there being no true-up was the belief that it was more likely that there would be continued significant asset value deterioration than value increase, and an understanding that Lehman's marks had been subject to challenge by others.

      In order to avoid any confusion about Mr. Roberts' position I am sending a copy of this letter to counsel for both Lehman and Barclays.

                                Sincerely,

                                Richard J. Davis

cc:    Robert Gaffey
        Jonathan Schiller
        Jonathan Polkes