**WEIL, GOTSHAL & MANGES LLP**
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                                  :
**In re**                                                         :   **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                      :   **08-13555 (JMP)**
                                                                  :
                    Debtors.   :   **(Jointly Administered)**
                                                                  :
------------------------------------------------------------------x

### DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR AUTHORITY TO COMPROMISE CONTROVERSY IN CONNECTION WITH A REPURCHASE TRANSACTION WITH FENWAY CAPITAL, LLC AND A COMMERCIAL PAPER PROGRAM WITH FENWAY FUNDING, LLC

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Commercial Paper Inc. ("LCPI"), as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), move (the "Motion") for approval of a compromise with Fenway Capital, LLC ("Fenway Capital"), Fenway Funding, LLC ("Fenway Funding" and together with Fenway Capital, "Fenway"), Hudson Castle Group Inc. ("Hudson") and Deutsche Bank Trust Company Americas, in its capacity as master administrator and indenture trustee ("DBTCA"), and respectfully represent:

**Preliminary Statement**

1. Pursuant to this Motion the Debtors seek to enter into a compromise which will result in a repurchase of certain assets under a repurchase agreement with Fenway Capital and a subsequent termination of such repurchase agreement and the cancellation of a commercial paper program with Fenway Funding. The Debtors believe that the termination of the repurchase agreement and the cancellation of the commercial paper program will (i) eliminate the expense and time delay associated with maintaining these programs, (ii) allow LCPI to end the litigation regarding the repurchase agreement in the SunCal Cases (as defined below), and (iii) enable Fenway Capital to seek dismissal of certain claims against it in the SunCal Adversary Proceeding (as defined below) and circumvent the expense of additional litigation regarding the Fenway Repo (as defined below). While this Motion resolves all disputes, claims and causes of action between Lehman, on the one hand, and Fenway Capital, Fenway Funding, Hudson Castle and DBTCA on the other, LCPI and LBHI are reserving all rights, claims and interests against each other in connection with the repurchase agreement and the commercial paper program, including all of LCPI's and LBHI's rights, claims and interests with respect to the assets. For all these reasons, the Debtors believe that approval of this Motion is in the best interests of the Debtors and their Estates.

**Relief Requested**

2. LBHI and LCPI request, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authority to enter into the Transaction consistent with the terms described in the Transaction Summary (as defined below).

**Jurisdiction**

3. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

4. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

5. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Background**

6. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries (including LCPI) commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

8. On September 19, 2008, a proceeding was commenced against LBI in the United States District Court for the Southern District of New York under SIPA. James L. Giddens, Esq. was appointed as the SIPA Trustee. The case commenced against LBI under SIPA was subsequently referred to this Court and is being administered as a companion proceeding with the Debtors' chapter 11 cases.

9. Prior to the commencement of its SIPA proceeding, LBI was LBHI's primary registered broker-dealer, derivatives dealer and investment adviser subsidiary. As such, LBI was charged with the trading of securities for Lehman's own account and on behalf of its customers and served as a crucial component of LBHI's financial services business.

**The Fenway Repo and CP Program**

10. In September 2008, immediately prior to the commencement of the Debtors' chapter 11 cases, Fenway Funding issued commercial paper notes (the "CP Notes"). The three CP Notes were issued in the following amounts:

| CUSIP Number | Face Amount | Term |
|---|---|---|
| 31465DJR6 | $1,001,300,000 | 9/10 – 9/25/08 |
| 31465DJQ8 | $1,001,200,000 | 9/10 – 9/24/08 |
| 31465DJP0 | $1,001,100,000 | 9/10 – 9/23/08 |

All three of the CP Notes were issued to Lehman Brothers, Inc. ("LBI") in its capacity as placement agent and LBI in turn transferred those CP Notes to LBHI.[1] Fenway Funding holds

---

[1] LBHI pledged the CP Notes to JPMorgan Chase, N.A. ("JPM"). On March 17, 2010, the Court approved an agreement among various JPM entities and various Lehman entities, pursuant to which, among other things, JPM agreed to assign its pledge with respect to the CP Notes to LBHI (the "JPM Pledge") and to assign, transfer and deliver the CP Notes to LBHI (the "JPM Assignment"). The JPM

the Series 2008-2 Variable Funding Notes (the "VFN Note"), which were (i) issued to Fenway Funding by Fenway Capital pursuant to the Series 2008-2 Supplement (the "Supplement") between Fenway Capital, DBTCA, as Master Administrator and Indenture Trustee to a Base Indenture (the "Base Indenture") between Fenway Capital and Bankers Trust Company (as predecessor in title to DBTCA), dated as of November 29, 2001; and (ii) pledged by Fenway Funding to secure its obligations under the CP Notes. Hudson is the program manager and sub-administrator for the commercial paper program under which the CP Notes were issued (the "CP Program"). LBHI is the sole holder of the CP Notes.

11. Fenway Capital entered into a repurchase transaction (the "Fenway Repo") embodied in a Master Repurchase Agreement dated August 22, 2008 with LCPI (the "MRA"), pursuant to which LCPI transferred its interests in certain real property loans and other assets to Fenway Capital (the "Repo Assets"). The assets transferred to Fenway Capital under the MRA secure the VFN Note. LBHI guaranteed the obligations of LCPI under the MRA. The MRA, the Supplement, the Base Indenture and other documents relating to the VFN Note, the CP Notes, the CP Program and the Fenway Repo are collectively referred to as the "Fenway Documents".

12. One of Lehman's objectives in entering into the Fenway Repo was to permit LCPI to repackage real estate loans and other illiquid assets it had originated in a form that made them marketable for corporate financing purposes. Since LBHI owns the CP Notes and LCPI is obligated to repurchase the Repo Assets, the Fenway Repo was effectively between

---

Assignment is expected to be consummated prior to the hearing on this Motion and in any event, the relief requested in this Motion is conditioned upon the consummation of the JPM Assignment. Thus, we refer herein to LBHI as the sole holder of the CP Notes.

Lehman entities, with Fenway Funding and Fenway Capital serving as mere conduits with no economic interest in any outcome.[2]

13. However, due to the existence of the Fenway Repo and the CP Program, Lehman may have to continue to seek consent from Fenway Capital, Fenway Funding and DBTCA prior to taking certain actions in respect of the Repo Assets and may have to contend with or even litigate ownership issues with respect to the Repo Assets as it has had to do in connection with the SunCal Loans (as defined below) which comprise a significant portion of the Repo Assets. The monetary expense and time delay inherent in seeking and obtaining such consents and/or dealing with any potential claims regarding ownership issues that may arise on a case-by-case basis undermines Lehman's ability to effectively manage the Repo Assets as it deems necessary and thus maximize the value of the Repo Assets for Lehman's creditors and, as evident from the litigation involving the SunCal Loans, may even force it to expend significant sums in connection with any potential claims regarding ownership issues that may arise.

14. In order to (a) eliminate the expense and time delay inherent in maintaining the Fenway Repo and CP Program as described above, (b) enable LCPI to circumvent further needless litigation over the Fenway Repo in the SunCal Cases (as defined below), and (c) enable Fenway Capital to seek dismissal of certain claims against Fenway Capital in the SunCal Adversary Proceeding (as defined below), and, as previously noted, circumvent the expense of additional litigation regarding the Fenway Repo, LCPI and LBHI seek approval to enter into this compromise (the "<u>Transaction</u>") pursuant to which LCPI would repurchase the Repo Assets from Fenway Capital pursuant to the terms of the MRA by LBHI returning the CP Notes to Fenway Funding in satisfaction of the repurchase price payable under

---

[2] Consistent with its rights under the Fenway Repo, Fenway Capital filed proofs of claim numbers 27994 (LBHI) and 27995 (LCPI) alleging damages against LCPI and LBHI in excess of $3 billion.

the MRA (following which the CP Program related Fenway Documents would be terminated), all consistent with the terms described in the summary below under the heading "The Transaction" (the "Transaction Summary").

**The SunCal Loans**

15. Among the Repo Assets are various term loans with an aggregate face amount in excess of $1 billion (the "SunCal Loans") that were made to affiliates (the "SunCal Debtors") of SCC Acquisitions, Inc. ("SunCal") and secured by deeds of trust on real property and pledges of equity interests. The SunCal Debtors either filed voluntary petitions or had involuntary petitions filed against them under chapter 11 of the Bankruptcy Code (as defined below). These chapter 11 cases (the "SunCal Cases") are pending in the United States Bankruptcy Court in and for the Central District of California Santa Ana Division (the "SunCal Court"). An adversary proceeding was commenced in January, 2009 by the SunCal Debtors against various affiliates of LCPI in connection with the SunCal Loans; LCPI and Fenway Capital were subsequently named as defendants (the "SunCal Adversary Proceeding"). In addition, SunCal sought to strike the proofs of claim that were filed by LCPI, Lehman ALI, Inc. ("ALI") and certain other Lehman affiliates holding certain of the SunCal Loans (collectively, the "Lehman Entities") in the SunCal Cases with respect to the SunCal Loans, arguing that the Lehman Entities did not have the authority to file the proofs of claim because (i) they were not Fenway Capital's agent for purposes of filing the proofs of claim, and (ii) the SunCal Loans for which the proofs of claims were filed had previously been "sold" pursuant to the MRA. These issues became the subject of lengthy and expensive litigation among the parties.

16. Ultimately, (x) the United States Bankruptcy Appellate Panel of the Ninth Circuit ruled that the plaintiffs in the SunCal Adversary Proceeding needed this Court's approval

to lift the stay prior to filing claims against LCPI in the SunCal Court and (y) the SunCal Court upheld the proofs of claims and ruled that the Lehman Entities did have authority to file the proofs of claim with respect to the SunCal Loans as agent for Fenway Capital. Both of these rulings are being appealed by the plaintiffs.

17. Fenway Capital has repeatedly stated that it has no economic interest in the SunCal Loans since they, along with other of the Repo Assets, serve as the ultimate security for the CP Notes issued to LBHI. If the CP Notes had not been pledged to JPM such that JPM's consent was required to return the pledged CP Notes to Fenway Funding as part of a repurchase of the SunCal Loans, LCPI could have repurchased the SunCal Loans from Fenway Capital long ago and likely avoided much of the Fenway-related litigation in the SunCal Cases. Since the commencement of the SunCal Cases and SunCal Adversary Proceeding, millions of dollars have been spent by Lehman and Fenway Capital litigating and defending the SunCal Adversary Proceeding and in litigating the Fenway-related issues described above. There are indemnities under the Fenway Documents in favor of Fenway and Hudson which require that qualified fees being incurred by Fenway Capital in connection with the SunCal Adversary Proceeding and the SunCal Cases be paid by LCPI (or LBHI under its guarantee) and secured by the Repo Assets. Thus, Fenway Capital's continued involvement in the SunCal Adversary Proceeding and the SunCal Cases as well as the ongoing litigation relating to the Fenway Repo in the SunCal Cases will likely result in significant expenses being incurred by LCPI. The JPM Assignment puts LCPI in a position of being able to repurchase the SunCal Loans under the MRA as has always been intended and circumvent further needless litigation over the Fenway Repo in the SunCal Cases.

### Additional Benefits to Terminating the Repo

18. Finally, there are administrative fees payable to DBTCA, Hudson and other third parties (such as the Depository Trust Company) as long as the Fenway Repo and CP Program continue to exist.

19. In light of the JPM Assignment and the consummation of such assignment in short order, there is no longer any need to continue to maintain the Fenway Repo or the CP Program given the cost and time delays inherent in doing so.

20. Currently, Fenway Capital is in possession of approximately $1.2 million of funds (the "Available Funds") in which LBHI has an interest and which Available Funds relate, in part, to the CP Notes and, in part, to an unrelated total return swap between Fenway Capital and LBHI. [3]

### The Transaction

21. To facilitate the repurchase of the Repo Assets by LCPI from Fenway Capital, the return of the CP Notes by LBHI, as guarantor, to Fenway Funding and the termination of the Fenway Repo, the CP Program and the Fenway Documents, the parties have agreed upon the following terms of the Transaction:

| | |
|---|---|
| ***Repurchase of Repo Assets and Termination of the Fenway Repo and CP Program*** | Upon the assignment of the JPM Pledge and CP Notes to LBHI and the delivery of the CP Notes to LBHI, LBHI, as guarantor, will return the CP Notes to Fenway Funding and Fenway Funding will return the VFN Note to Fenway Capital. The CP Notes and VFN Note will be cancelled and the Supplement, Base Indenture and other documents relating to the VFN Note will be terminated. Each of Fenway Funding and Fenway Capital will have no further liabilities under the CP Notes or VFN Note. |
| | LCPI will repurchase the Repo Assets from Fenway Capital (by payment of the repurchase price in accordance with the following sentence) and, in connection therewith, Fenway Capital will assign to |

---
[3] None of the Available Finds are proceeds of the Repo Assets, including the SunCal Loans.

LCPI all of the Repo Assets and the parties will terminate the MRA and the guaranty provided by LBHI with respect thereto. The parties will agree that notwithstanding anything to the contrary in the Fenway Documents or otherwise, the return of the CP Notes to Fenway Funding and the subsequent termination of the VFN Note will constitute full payment of the repurchase price under the MRA and full and fair consideration for the repurchase transaction.

*Mutual Releases*     Fenway, Hudson and DBTCA, on the one hand, and LCPI and LBHI, on the other hand, will exchange mutual releases; *provided*, *however*, LCPI and LBHI will not be released from their indemnification obligations, if any, to Hudson and Fenway under the Fenway Documents, and provided further, that any such obligations of LCPI will be treated as secured for purposes of any plan of reorganization of LCPI to the same extent as if LCPI had not repurchased the Repo Assets from Fenway Capital.

*Withdrawal of Proofs of Claim*     Fenway will withdraw proofs of claim numbers 27994 (LBHI) and 27995 (LCPI) and DBTCA will withdraw proofs of claim numbers 33520/37326 (LBHI) and 33519 (LCPI).

*Indemnification*     LBHI will agree to indemnify, defend and hold Fenway and Hudson and each of their respective officers, directors, employees, agents and controlling persons, representatives, managers, administrators, trustees and attorneys and their respective successors and assigns (collectively, the "Indemnitees") harmless from and against any liabilities incurred by any of the Indemnitees as a result of any claims, proceedings, hearings, demands which require response under any law, regulation, order or by governmental authority, or subpoenas (each, an "Action") asserted against any of the Indemnitees by any borrowers, guarantors, pledgors and/or any other obligors under any loan documents evidencing or governing any loan that is a Repo Asset (collectively, the "Borrower Parties"), creditors or other third parties and for any costs and expenses which are actually incurred by the Indemnitees (including, but not limited to, reasonable attorneys' fees and expenses) in defending against or responding to any such asserted Action in accordance with procedures to be agreed upon by the parties (collectively, "Covered Amounts"), in all cases, to the extent caused by, or in any way resulting from or relating to the Repo Assets or the MRA and regardless of whether such Indemnitee is a named party to any such Action; *provided, however,* that the foregoing indemnity (and thus, Covered Amounts) shall not include or cover any claims made by JPM other than (x) claims arising with respect to the Repo Assets, and (y) any other claims which arise solely from the acts of LBHI or LCPI occurring during the period commencing on September 15, 2008 and ending on the date on which the MRA is terminated; the foregoing indemnity shall also be subject

| | |
|---|---|
| | to various other carve-outs as may be agreed upon by the parties. |
| *Assignment of Interest in the SunCal Litigation* | Fenway Capital will transfer and assign to LCPI all of Fenway Capital's right, title and interest in and to any and all claims of Fenway Capital in or with respect to the litigation pending in the bankruptcy proceedings of SunCal and related debtors (the "SunCal Litigation") including, without limitation, all rights of Fenway Capital to vote such claims, respond to any objection made to such claims, and to otherwise control, direct or exercise any other rights of the owner of such claims, and Fenway Capital and LCPI will reasonably cooperate with each other to attempt to cause Fenway Capital to be released as a defendant in the SunCal Litigation as expeditiously as possible. If Fenway Capital cannot be so released, LCPI will undertake the defense of Fenway Capital through LCPI's counsel; *provided*, that if any party determines that a conflict exists that prevents such representation, Fenway Capital may undertake its own defense and LCPI will reimburse Fenway Capital for Fenway Capital's reasonable costs of such defense; *provided, further*, that, if Fenway Capital retains its own counsel due to the existence of a conflict, Fenway Capital will waive any conflicts and agree that LCPI's counsel may continue to represent LCPI in the SunCal Litigation and Fenway Capital will not object to such continued representation on the basis that such counsel previously represented Fenway Capital or on any other basis. In all events LCPI and Fenway Capital will reasonably cooperate with each other in the SunCal Litigation. |
| *Reimbursable Fees* | LBHI and LCPI will reimburse Hudson for the fees and expenses it has incurred through February 28, 2010 in an aggregate amount equal to $1,624,045.81 and will further reimburse Hudson for any reasonable out-of-pocket fees and expenses incurred by Hudson from March 1, 2010 through the consummation of the Transaction (which fees and expenses shall be subject to approval by LBHI and LCPI) (the foregoing being referred to as the "Reimbursable Fees"). Such reimbursement shall be paid first from the Available Funds and, to the extent the Available Funds are insufficient, by LBHI and LCPI directly. Any remaining sums held by Fenway after application to the Reimbursable Fees as described above will be remitted back to LBHI. |

## **The Transaction is An Appropriate Exercise of the Debtors' Business Judgment**

22. Ample authority exists for approval of the Transaction under Bankruptcy Rule 9019. Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement."

Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)* 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). A decision to accept or reject a compromise or settlement is within the sound discretion of the Court. *Drexel Burnham Lambert Group*, 134 B.R. at 505; *see also* 9 *Collier on Bankruptcy* ¶ 9019.02 (15th ed. rev. 2001). The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505. *See also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." *TMT Trailer Ferry,* 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).

    23.  The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, and in the best interest of the estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

24. While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact…. The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

25. The court may give weight to the "informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness . . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

26. There is no requirement that "the value of the compromise . . . be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id*. at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974).

27. LBHI and LCPI have determined, in the sound exercise of their business judgment, that entry into the Transaction is in the best interests of their respective estates and

creditors. The Transaction will alleviate the expense and time delay associated with maintaining the Fenway Repo and CP Program. Further, the repurchase of the SunCal Loans by LCPI under the MRA, as has always been intended, should enable LCPI to circumvent further needless litigation over the Fenway Repo in the SunCal Cases. Moreover, the repurchase of the SunCal Loans by LCPI will enable Fenway Capital to seek dismissal of certain claims against Fenway Capital in the Suncal Adversary Proceeding, and, as previously noted, circumvent the expense of additional litigation regarding the Fenway Repo.

28. LBHI and LCPI believe that the terms of the Transaction as described in the Transaction Summary are fair and reasonable under the circumstances. The terms described in the Transaction Summary are the product of protracted, arm's-length negotiations between LBHI, LCPI, Fenway and Hudson. LBHI and LCPI agree to pay the Reimbursable Fees and permit Fenway Capital to first offset the amount of such Reimbursable Fees from the Available Funds currently in the possession of Fenway Capital. The Transaction further contemplates that LBHI will indemnify the Indemnitees with respect to certain third party claims asserted against them that are related to the Repo Assets or the MRA. Such concessions made by LBHI and LCPI are far outweighed by the benefit to LBHI and LCPI and their affiliates as described above. Accordingly, in light of the benefits of the Transaction to LBHI's and LCPI's respective estates and their reorganization, LBHI and LCPI clearly have exercised sound business judgment, and the Court should enter an order authorizing LBHI and LCPI to enter into the Transaction pursuant to documents consistent with the terms described in the Transaction Summary.

**Reservation of Rights and Further Assurances**

29. The purpose of this Motion is to compromise a controversy between LBHI and LCPI, on the one hand, and Fenway Capital, Fenway Funding, Hudson and DBTCA, on the

other hand.  Nothing contained herein shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies of LCPI or LBHI or, except as otherwise expressly provided in this Motion, that any of the Debtors may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties.  Furthermore, the parties may execute such further documents necessary to reflect this reservation of rights between LBHI and LCPI.

**Notice**

30. No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for Fenway and Hudson; (vii) the attorneys for DBTCA; (viii) the attorneys for the SIPA Trustee; and (ix) all parties who have requested notice in these chapter 11 cases.  No other or further notice need be provided.

31. No previous request for the relief sought herein has been made by LBHI or the other Debtors to this or any other court.

WHEREFORE LBHI, LCPI and the other Debtors respectfully request that the Court approve the Transaction and grant the relief requested herein and such other and further relief as is just.

Dated: March 25, 2010
       Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone: (713) 546-5000
Facsimile: (713) 224-9511


Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                                          :

In re                                                      :         Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :         08-13555 (JMP)

                    Debtors.                      :         (Jointly Administered)

------------------------------------------------------------x

**ORDER APPROVING DEBTORS' MOTION PURSUANT TO BANKRUPTCY
RULE 9019 FOR AUTHORITY TO COMPROMISE CONTROVERSY IN
CONNECTION WITH A REPURCHASE TRANSACTION WITH FENWAY CAPITAL,
LLC AND A COMMERCIAL PAPER PROGRAM WITH FENWAY FUNDING, LLC**

Upon the motion, dated March 25, 2010 (the "Motion")[1], of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, including Lehman Commercial Paper Inc. ("LCPI"), in the above-referenced chapter 11 cases (together, the "Debtors") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing LBHI and LCPI to compromise controversy in connection with a repurchase transaction with Fenway Capital, LLC and a commercial paper program with Fenway Funding, LLC, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures

---

[1] Capitalized terms not otherwise defined herein should have the meaning ascribed to them in the Motion.

[Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for JPMorgan; (vii) the attorneys for James W. Giddens, as Trustee (the "SIPA Trustee") for Lehman Brothers Inc. ("LBI"); (viii) the attorneys for Fenway and Hudson; (ix) the attorneys for DBTCA; and (x) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of LBHI, LCPI and the other Debtors and all economic stakeholders; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, LBHI and LCPI are duly authorized to enter into the Transaction consistent with the terms described in the Transaction Summary; and it is further

ORDERED that the LBHI and LCPI (a) are duly authorized and empowered to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers that may be necessary or appropriate to consummate the Transaction substantially in accordance with the terms described in the Transaction Summary; (b) are duly authorized and empowered to take all other and further actions as may be necessary to implement the Transaction in accordance with the terms described in the Transaction Summary; and (c) shall have the right both in connection with and following consummation of the Transaction to consent to any amendment, restatement, waiver, supplement or other modification of the Transaction. Any actions described in clauses (a), (b) or (c) taken by LBHI or LCPI or their

affiliates may be taken without the necessity (x) of further court proceedings or approval or (y) of any consent of any party other than LBHI and LCPI, and shall be conclusive and binding in all respects on all parties in interest in these cases other than LBHI and LCPI; and it is further

ORDERED that nothing contained herein shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies of LCPI or LBHI or, except as otherwise expressly provided in this Motion, that the Debtors may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties and the Debtors are hereby authorized and directed to execute such further documents to evidence these reservations; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: April __, 2010
      New York, New York

                                                     _____
                                                     UNITED STATES BANKRUPTCY JUDGE