REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
Eric A. Schaffer (ES-6415)
Michael J. Venditto (MV-6715)

*Counsel to The Bank of New York Mellon,*
*The Bank of New York Mellon Trust Company,*
*N.A., and BNY Corporate Trustee Services*
*Limited, in their representative capacities*

**Objections: March 31, 2010 at 4:00 p.m. (Eastern)**
**Hearing:     April 14, 2010 at 10:00 a.m. (Eastern)**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re

LEHMAN BROTHERS HOLDINGS INC., *et al.*,

                                    Debtors.

**Chapter 11**

**Case No. 08-13555 (JMP)**
**(Jointly Administered)**

Refers to Dkt. No. 7581

### OBJECTION OF THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AND BNY CORPORATE TRUSTEE SERVICES LIMITED TO DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 9014, AND GENERAL ORDER M-390 AUTHORIZING THE DEBTORS TO IMPLEMENT CLAIMS HEARING PROCEDURES AND ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR CLAIMS AGAINST DEBTORS

The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A.,

and any affiliate thereof, through its Corporate Trust Department, and BNY Corporate Trustee

Services Limited, each as trustee, indenture trustee, agent, or in its other representative capacity

(collectively, the "Trustee") for the holders (the "Holders") of certain notes, certificates, bonds,

or other interests (collectively, the "Notes") issued by certain issuers pursuant to structures

created by the Debtors or their affiliates, objects to the Debtors' Motion Pursuant to Section 105

103460509_1.DOC

of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the

Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution

Procedures for Claims Against Debtors (the "Motion") [D.I. 7581].[1]

## I.    PRELIMINARY STATEMENT

1.    In the Motion, the Debtors propose to implement alternative dispute resolution

procedures for claims ("Claims ADR Procedures").  The Motion parallels the Debtors' July 2009

Derivatives ADR Procedures Motion in which the Debtors proposed to implement similar

procedures for litigation involving certain derivatives transactions.[2]

2.    As set forth in the Trustee's Opposition[3] to the Derivatives ADR Motion, the

Trustee acts in a limited representative capacity.  As a result, the Order granting the Derivatives

ADR Procedures Motion expressly recognized the Trustee's limited capacity to bind the parties

on whose behalf the Trustee acts.[4]

3.    The Claims ADR Procedures now proposed should be modified similarly, to

account for the Trustee's limited authority and the process imposed upon the Trustee by the

---

[1]    Capitalized terms not defined in this Objection have the meanings assigned to such terms in the Motion.

[2]    "***Derivatives ADR Procedures Motion***" refers to the Debtors Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivative Contracts, filed on July 20, 2009 [D.I. 4453].

[3]    "***Trustee's Opposition***" refers to the Objection of The Bank Of New York Mellon, The Bank of New York Mellon Trust Company, N.A. and BNY Corporate Trustee Services Limited to the Debtors Motion Pursuant To Section 105(a) of the Bankruptcy Code and General Order M-143 For Authorization To Implement Alternative Dispute Resolution Procedures For Affirmative Claims Of Debtors Under Derivative Contracts, filed on July 31, 2009 [D.I. 4589].

[4]    *See*, Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts, entered on September 17, 2009 [D.I. 5207] (the "***Derivatives ADR Procedures Order***").  For ease of reference, a copy of the Derivatives ADR Procedures Order is attached hereto as Exhibit A.

US_ACTIVE-103460509.1-600318-60036

structures of the various transactions in which it is acting.

4.    The Debtors cannot look to the Trustee generally as the legal representative of the Holders for purposes of any ADR procedures.  It is the Holders who have the economic interests in the claims that are the intended target of this Motion.  Because the Trustee has no authority to compromise claims of Holders absent their consent and direction, the Trustee lacks any authority to participate in any mediation with the Debtors.  Accordingly, compelling the Trustee to participate in the ADR process is of no benefit to the Debtors.

5.    For these reasons, the Claims ADR Procedures should be modified to include provisions substantially similar to those approved in the Derivatives ADR Procedures Order.

## II.    SUMMARY OF OBJECTION

6.    The proposed Claims ADR Procedures do not account for the complexity of the synthetic structures created by the Debtors and the limited role and authority given to the Trustee in those structures.  Consistent with the absence of authority to bind Holders during any mediation, the Trustee objects to entry of an order approving the Motion on the following grounds:

- The Trustee should not be forced to attend or participate in mediation (let alone be subject to sanctions for not participating) absent direction from the relevant Holders of Notes or other relevant parties in accordance with the governing documents;

- The Claims ADR Procedures should be modified to ensure that the beneficial Holders (many of which are located overseas) receive notice sufficiently in advance of any mediation, to permit telephonic participation, and to avoid imposition of unreasonable or impractical deadlines and other requirements on Holders.

US_ACTIVE-103460509.1-600318-60036

III.    **BACKGROUND**

A.    **The Trustee Transactions**

7.    The Trustee acts in a representative capacity for Holders and other parties in interest in hundreds of transactions that were structured by the Debtors and their affiliates (collectively, the "Trustee Transactions").[5]  Holders who would be affected by the Claims ADR Procedures are located in Europe, Asia, North America, and Australia.

8.    Because the obligations of the issuers ("Issuers") of the Notes are generally limited to the trust assets, the beneficial parties in interest are the Holders.  In some instances, the Holders filed proofs of claim for obligations that one of the Debtors owed to the Issuer.  In other instances, the Trustee filed such claims on behalf of the Holders.  In either circumstance, the Holders, not the Trustee, is the party in interest.

9.    As a general rule, the Trustee is required by the transaction documents to serve relevant notices on Holders and to solicit Holders' direction in connection with the exercise of their rights.  In most instances, however, neither the Debtors nor the Trustee maintain a register identifying the beneficial Holders because the Notes are traded in the financial markets and the Holders typically hold through "street names."

10.    The Trustee communicates with the Holders through clearing systems in the United States and Europe including the Depository Trust Clearing Corporation, Euroclear System, and Clearstream Banking S.A. (collectively, the "Clearing Systems"), which Clearing Systems are the registered owners of the Notes and are responsible for holding, clearing, and settling transactions.

---

[5]    A detailed description of the hundreds of Trustee Transactions at issue is much too voluminous for this Objection; therefore, the Trustee provides a general description of the Trustee Transactions.

US_ACTIVE-103460509.1-600318-60036

11.     The notice periods and required form of notice vary among Trustee Transactions. In certain cases, a Holders' meeting must be called within a particular timeframe before action may be voted upon, and then an additional notice and solicitation must occur. The percentage of Holders required to direct the Trustee's actions varies among transactions. As a general rule, the Trustee is entitled to indemnification from the directing Holders before taking any action.

12.     The timing of this Motion and hearing are such that Trustee has been unable to seek or receive direction from Holders with regard to the Motion.[6]

### B.      The Derivatives ADR Procedures

13.     On July 20, 2009, the Debtors filed the Derivatives ADR Procedures Motion, seeking authorization to implement the Derivatives ADR Procedures. The Trustee objected, arguing that as a trustee it could not settle Holders' claims without direction from a majority of the Holders.[7] Moreover, in those instances in which the Issuers are debtors, any settlement might require 100% Holder approval.

14.     The Bankruptcy Code provides no authority to rewrite the Trustee Transactions documents to grant authority that the Trustee lacks under those documents.[8] The documents

---

[6]     As the Debtors apparently have not taken steps to serve the Motion on Holders, the lack of objection from any Holder should not be viewed as consent to the relief requested. The Trustee reserves any and all objections, rights, claims, and defenses of the Holders of Notes to the proposed Claim ADR Procedures. Further, the Trustee reserves the rights of Holders and the Issuers to object to or challenge any action taken by the Debtors in purported reliance upon the proposed Claim ADR procedures.

[7]     *See In re Delta Air Lines, Inc.*, 370 B.R. 537, 548 (Bankr. S.D.N.Y. 2007), *aff'd*, 374 B.R. 516, 528 (S.D.N.Y. 2007 (trustee can only settle "at the behest of a majority of the Bondholders"), *aff'd*, *Ad Hoc Comm. of Kenton County Bondholders v. Delta Air Lines, Inc.*, 309 Fed.Appx. 455 (2d Cir. Feb 9, 2009), *cert. denied*, 130 S.Ct. 539 (Nov. 21, 2009).

[8]     *See In re Continental Airlines Corp.*, 907 F.2d 1500, 1509 (5th Cir. 1990) (precluding substantive modifications of labor agreement); *Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1311 (1st Cir. 1993) ("[S]ection 105(a) [does not] authorize courts to create substantive rights that are otherwise unavailable under the Code, or to expand the contractual obligations of parties."); *In re DeMert & Dougherty, Inc.*, 227 B.R. 508, 517 (Bankr. N.D.Ill. 1998) (Court may not rewrite the terms of an asset purchase agreement."). *See also In re Metromedia Fiber Network, Inc.*, 416

Continued on following page

US_ACTIVE-103460509.1-600318-60036

governing the Trustee Transactions documents must be enforced as a matter of basic contract law.[9]  For that reason, the Trustee contended that to the extent the Debtors sought to compel the Trustee to participate in mediation, the Derivatives ADR Motion had to be denied.

**B.    Resolution of the Trustee's Objection to the Derivatives ADR Motion**

15.    The procedures proposed in the Derivatives ADR Motions were modified in response to various objections, including the Trustee's Objection.  *See*, Derivatives ADR Procedures Order at 4-5, 8-9, 10 and 12.

16.    In response to the particular concerns raised in the Trustee's Objection, the Court's ADR Derivatives Procedures Order provided that the Derivatives ADR Procedures were binding only upon a trustee, indenture trustee, or party acting in a fiduciary capacity (defined therein as an "Indenture Trustee") that was acting with authority.[10]

## IV.    THE CLAIMS ADR PROCEDURES SHOULD BE MODIFIED

17.    The Claims ADR Procedures suffer from the same defects as did the Derivative ADR Procedures when they were initially proposed.  In their current form, the Claims ADR

---

Continued from previous page
F.3d 136, 142 (2d Cir. 2005) (quoting *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003)).

[9]    *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 618 F.Supp.2d 280, 291 (S.D.N.Y. 2009) ("It is a well-established rule in this Circuit that the 'interpretation of Indenture provisions is a matter of basic contract law.'") (quoting *Jamie Sec. Co. v. The Limited, Inc.*, 880 F.2d 1572, 1576 (2d Cir. 1989)); *see generally McMahan & Co. v. Warehouse Entertain., Inc.*, 65 F.3d 1044, 1051 (2d Cir. 1995) (enforcing obligation to indemnify indenture trustee under no-action clause); *Friedman v. Chesapeake & Ohio Ry. Co.*, 261 F.Supp. 728, 731 (S.D.N.Y. 1966) (describing indemnification requirement in no-action clause as "plainly reasonable"), *aff'd, Friedman v. Chesapeake & O. Ry. Co.*, 395 F.2d 663 (2d Cir. 1968), *cert. denied*, 393 U.S. 1016 (1969).

[10]    The Derivatives ADR Procedures Order requires, *inter alia*, that the Debtors and each Indenture Trustee "review the governing documents to determine whether the Indenture Trustee has authority to participate and to settle the Derivatives ADR Dispute covered by the Derivatives ADR Notice on behalf of holders ('Authority')." ADR Derivatives Procedures Order ¶5(b) at 5.

US_ACTIVE-103460509.1-600318-60036

Procedures are inappropriate, ineffective, and unworkable for all the reasons set forth in the Trustee's Objection.

18.    Unless the Claims ADR Procedures are modified to incorporate the procedures that were adopted by the Court in the Derivatives ADR Procedures, the Motion should be denied.

WHEREFORE, the Trustee objects to the Motion and respectfully requests that this Court (i) deny the Motion to the extent that the Debtors seek to compel the Trustee to participate in a mediation or ADR procedures that exceeds the scope of its authority, (ii) deny the Motion to the extent that it fails to provide adequate notice to Holders, (iii) deny the Motion because it proposes unfair, unreasonable, and impractical procedures, and (iv) grant such further relief to the Trustee as is appropriate.

Dated: March 31, 2010
      New York, New York               Respectfully Submitted,

                                   REED SMITH LLP
                     By:     */s/  Eric A. Schaffer*
                                   Eric A. Schaffer (ES-6415)
                                   Michael J. Venditto (MV-6715)
                                   599 Lexington Avenue
                                   New York, NY 10022
                                   Tel:  (212) 521-5400
                                   Fax:  (212) 521-5450

                                   *Counsel to The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A. and BNY Corporate Trustee Services Limited,*
                                   *in their representative capacities*

TO:

Chambers of Honorable James J. Peck
One Bowling Green, Courtroom 601
New York, New York 10004

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
  Attention:   Shai Y. Waisman

Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004

Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, New York 10005
  Attention:   Dennis F. Dunne
                Dennis O'Donnell
                Evan Fleck, Esq

# Exhibit A

*Alternative Dispute Resolution Procedures Order for Affirmative Claims of
Debtors Under Derivatives Contracts, entered on September 17, 2009 [D.I. 5207]*

103460509_1.DOC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                    :
In re                                               :     **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :     **08-13555 (JMP)**
                                                    :
            **Debtors.**                            :     **(Jointly Administered)**
                                                    :
                                                    :
------------------------------------------------------------------x

**ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR**
**AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS**

   The following alternative dispute resolution procedures (the "Derivatives ADR

Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc.

and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various

chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors").

**FINDINGS**

   On motion of Debtors, the Court FINDS that numerous open and terminated

derivatives contracts, including any derivative contract that is a "swap agreement" or "forward

contract", in each case, as such term is defined in section 101 of the Bankruptcy Code, exist as to

which one or more Debtors assert that monetary recovery is due to a Debtor from a counterparty,

its affiliates, or related parties (the "Derivatives Contracts with Recovery Potential").  The Court

further FINDS that certain common issues exist regarding these contracts, including questions

involving appropriateness of setoff, termination, valuation and computation of termination

payments, and notice.  The Court further FINDS that substantial value may be recovered for the

estates of Debtors, and judicial efficiency can be promoted, if expedient resolution of disputes

and recoveries under such contracts can be achieved without the need for trial of adversary

proceedings or other litigation.  The Court further FINDS that similar proceedings ordered in

other complex chapter 11 cases have contributed to effective administration of the proceedings and have reduced costs for all parties.

The procedures described below are ORDERED to promote consensual recovery with respect to the Derivatives Contracts with Recovery Potential, and to encourage effective communication between the affected parties, consultation, negotiation, and, when necessary, mediation procedures.

1.   Standing Mediation Order.  All provisions of the General Order #M-143, adopted January 17, 1995, providing for Procedures Governing Mediation of Matters in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York and all existing and further amendments thereto (the "Standing Order") shall apply to the mediations to be conducted under this Order.

2.   Derivatives ADR Counterparties.  To date, the Debtors have identified approximately two hundred fifty (250) counterparties (which number will surely increase) to Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists over the amounts that may be owed to Debtors under such contracts (whether or not an actual lawsuit or adversary proceeding has been commenced), whether from a counterparty to a Derivatives Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a contract (collectively, the "Derivatives Counterparties"); provided, however, that the term Derivatives Contract with Recovery Potential shall not include any cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction or repurchase agreement in respect of securities or loans.

3.  <u>Derivatives ADR Disputes</u>.  Any Debtor may designate any dispute regarding a Derivatives Contract with Recovery Potential to the Derivatives ADR Procedures by serving on a Derivatives Counterparty a copy of this Order and a Derivatives ADR Notice (as defined below) (collectively, the "<u>Derivatives ADR Package</u>").

a.  Debtors shall not implement Derivatives ADR Procedures with respect to a Derivatives Contract with Recovery Potential that (i) has not been purportedly terminated and (ii) with respect to which a Derivatives Counterparty has not failed to make a payment, or perform any other obligation, due, if any, to the Debtor(s) (without regard to any provision in a Derivatives Contract with Recovery Potential that purports to permit a Derivatives Counterparty to withhold performance by reason of a default by a Debtor or its affiliates).

b.  Debtors shall make commercially reasonable efforts to minimize the frequency of service of Derivatives ADR Notices on any one Derivatives Counterparty.

c.  Any trustee, indenture trustee or party acting in a fiduciary capacity in connection with a trust or other financing arrangement that relates to the applicable Derivatives Contract with any of the Debtors (such persons or entities collectively referred to as "<u>Indenture Trustees</u>," and each singly as an "<u>Indenture Trustee</u>") shall be subject to this Order.

d.  For purposes of the Derivatives ADR Procedures, service on or notice to a Derivatives Counterparty or Indenture Trustee, as the case may be, shall be deemed adequate if such service or notice is provided to such Derivatives Counterparty, such Indenture Trustee, a legal guardian, estate representative, or other representative and such party's counsel who have appeared in these cases by (i) email and (ii) at the option of the Debtors either (x) hand delivery, or (y) first class mail, or (z) overnight mail.

4.   <u>Settlement of Disputes During the Derivatives ADR Procedures</u>.  Nothing contained herein shall prevent the parties from settling, and the parties are encouraged to settle, a Derivatives ADR Dispute at any time before, during, or following the designation of a Derivatives ADR Dispute to the Derivatives ADR Procedures by the mutual consent of the parties, provided that such settlement

a.   complies with (i) the Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket 2257]; (ii) the Order, dated January 29, 2009, authorizing the consensual assumption and assignment of prepetition derivative contracts [Docket No. 2667], or (iii) other orders in these bankruptcy cases permitting such settlement, or

b.   is approved by specific order of the Court.

Any settlement discussions between any of the parties and the Official Unsecured Creditors' Committee (the "<u>Creditors' Committee</u>"), the contents of any papers submitted during the mediation stage described below, and all discussions in mediation shall remain confidential and privileged and shall not be discoverable or admissible as evidence in any subsequent litigation of the Derivatives ADR Dispute or elsewhere, except as provided by further order of this Court.

5.   <u>Participation Mandatory</u>.

a.   Unless otherwise provided in a specific order applicable to a particular Derivatives ADR Dispute or a particular Derivatives Counterparty or Indenture Trustee with Authority (as defined below), after service of a Derivatives ADR Package on a Derivatives Counterparty or Indenture Trustee with Authority (i) compliance with the Derivatives ADR Procedures in this Order is mandatory in the specified Derivatives ADR Disputes for the

applicable Debtor or Debtors, Derivatives Counterparty and Indenture Trustee with Authority; and (ii) no party is required to settle or compromise any dispute or enter into a particular settlement or compromise, but each Debtor serving a Derivatives ADR Package, each Derivatives Counterparty, and each Indenture Trustee with Authority must serve the required responses, engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow directions of the mediator, and otherwise comply with the Derivatives ADR Procedures specified below for all Derivatives ADR Disputes covered by such Derivatives ADR Package.

      b.     With respect to any Derivatives ADR Package served on an Indenture Trustee, within the period provided in paragraph 8(b) for service of a response thereto by an Indenture Trustee, Debtors and such Indenture Trustee shall review the governing documents to determine whether the Indenture Trustee has authority to participate and to settle the Derivatives ADR Dispute covered by the Derivatives ADR Notice on behalf of holders ("Authority").

              i.     If the Indenture Trustee has Authority, it shall participate in the Derivatives ADR Procedures on behalf of holders to the extent authorized by such documents.

              ii.     If the Indenture Trustee lacks Authority via the governing documents, it shall contact the holders for which it acts as Indenture Trustee through the clearing systems or when possible by a direct written communication that: (v) advises such holders that the Debtors dispute holders' claims; (w) transmits to them the applicable Derivatives ADR Notice; (x) invites them to participate in the Derivatives ADR Procedures as an alternative to litigation;

(y) encourages them to communicate directly with the Debtors;

and (z) offers to take holders' direction in accordance with the

governing documents to participate in the Derivatives ADR

Procedures on behalf of such directing holders.

iii.    In taking the steps outlined in this paragraph 5(b), Indenture

Trustees shall make commercially reasonable efforts to act as

promptly as possible under the prevailing circumstances.

c.    Nothing contained in this paragraph 5 with respect to Indenture Trustees

shall relieve or be construed to relieve any Derivatives Counterparty from compliance with this

Order.

d.    All rights, remedies, claims and defenses of any Derivatives Counterparty,

Indenture Trustees, holders and Debtor in good faith compliance with the Derivatives ADR

Procedures shall not be impaired, waived or compromised in any further proceedings in these

cases should no settlement or compromise result from participation in these Derivatives ADR

Procedures.  Participation in the Derivatives ADR Procedures by a Derivatives Counterparty,

Indenture Trustee, or holder shall not waive the defense of lack of in personam jurisdiction, if

any, which defense shall be preserved.

6.    No Substitute For Claims Procedures.  The Derivatives ADR Procedures are

not intended and shall not be utilized as a substitute for chapter 11 claims procedures.  Nothing

contained herein, however, shall (a) prevent a Derivatives Counterparty from asserting in any

respect to a Derivatives ADR Notice and elsewhere during the course of a Derivatives ADR

Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a

Derivatives Contract with Recovery Potential or any other valid defense to a Debtor's demand

thereunder or (b) be construed to abridge, enlarge, or otherwise modify the rights and obligations of Debtors or Derivatives Counterparties under a Derivatives Contract with Recovery Potential or applicable law or to provide a right or remedy under a Derivatives Contract with Recovery Potential to Debtors or Derivatives Counterparties that is not provided thereby or by applicable law.

7.    Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Derivatives Counterparties.  If a Derivatives Counterparty previously has commenced, any action or proceeding in any other court or forum, or any action or proceeding in any other court or forum following service upon it of a Derivatives ADR Package, the Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed under the Derivatives ADR Procedures.

**NOTICE/RESPONSE STAGE**

8.    Notice/Response.  The initial stage of the Derivatives ADR Procedures will be a notice/response stage, providing the parties with an opportunity to exchange settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve a Derivatives ADR Dispute on a consensual basis (the "Notice/Response Stage").  The Notice/Response Stage shall include:

a.    Derivatives ADR Notice.  Debtors shall serve upon a Derivatives Counterparty or Indenture Trustee (and its attorneys who have appeared in these cases) a notice containing sufficient information regarding the Derivatives ADR Dispute to make the Derivatives Counterparty or Indenture Trustee aware of the nature of Debtor's affirmative claim, a

brief explanation setting forth the basis for the demand and the amount, and of its demand for settlement (which demand shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee), including an amount of monetary recovery Debtor(s) would accept in full settlement and compromise (a "<u>Derivatives ADR Notice</u>").  Service of a completed Derivatives ADR Notice in the form annexed to this Order as Exhibit "A" shall presumptively be deemed to comply with this Order.

b.      <u>Derivatives Counterparty's Response to Notice</u>.  A Derivatives Counterparty must respond to the Derivatives ADR Notice in writing within thirty (30) calendar days from the date of the Derivatives Counterparty's receipt of the Notice.  An Indenture Trustee with Authority contained in the governing documents must respond to the Derivatives ADR Notice in writing within forty-five (45) calendar days from the date of such Indenture Trustee's receipt of the Derivatives ADR Notice, and an Indenture Trustee with Authority obtained by way of direction from holders pursuant to paragraph 5(b) above, must respond to the Derivatives ADR Notice within thirty (30) days from the date of receipt of such direction from holders.  The response options available to a Derivatives Counterparty or an Indenture Trustee with Authority are as follows (the "<u>Responses</u>"):

i.      <u>Agreeing to Settle the Demand</u>.  If a Derivatives Counterparty or an Indenture Trustee with Authority agrees

8

to settle the demand in the Derivatives ADR Notice, the
Counterparty shall state in writing that the offer of
settlement in the Derivatives ADR Notice is accepted.  The
parties will then execute a settlement and general release
(including a confidentiality provision) and, if the matter is
in litigation, the Debtor shall dismiss any applicable claims
in a lawsuit or adversary proceeding with prejudice upon
execution of the release; or

    ii.    <u>Denying the Demand</u>.  A Derivatives Counterparty or
Indenture Trustee with Authority may decline to settle for
the amount stated in the demand in the Derivatives ADR
Notice, in which case the Derivatives Counterparty or
Indenture Trustee with Authority must include a brief
explanation in the Response to the Derivatives ADR Notice
setting forth the reason(s) for such denial.  In addition, the
Derivatives Counterparty or Indenture Trustee with
Authority may provide a counteroffer to the demand in the
Derivatives ADR Notice.  Service of a completed Response
to a Derivatives ADR Notice in the form annexed to this
Order as Exhibit "B" shall presumptively be deemed to
comply with this Order.

    c.    <u>Failure to Respond</u>.  Failure to provide a timely Response to the
Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may

9

result, at the option of Debtors, either in an application to the Court (with

notice to any applicable Derivatives Counterparty or Indenture Trustee)

for Sanctions (as defined below) as set forth below, including an order or

judgment for recovery of amounts demanded by Debtors in the

Derivatives ADR Notice, or immediate entry into the mediation stage.

d.    Reply to Response.  The Debtor shall have fifteen (15) days from the date

of the receipt of the Response to serve a Reply to the Response to the

Derivatives ADR Notice (which Response shall have been determined

with the benefit of consultation between Debtors and the Creditors'

Committee), in which the Debtor shall (i) modify its Demand, (ii) respond

to any counteroffer, (iii) provide additional information in support of its

demands in the Derivatives ADR Dispute, or (iv) reject any counteroffer

in which case the Derivatives ADR Dispute will automatically proceed to

the Mediation Stage.

9.    Request for Initial Settlement Conference.  At any time in the

Notice/Response Stage, either a Debtor, Derivatives Counterparty or Indenture Trustee with

Authority may request an initial telephonic settlement conference by written request, to be held

within ten (10) calendar days, and, in the case of Indenture Trustees with Authority, to be held

within fifteen (15) business days.  Within four (4) business days of a receipt of such a request,

the other parties must respond by acceptance of one of the proposed dates and times or by a

proposal for an initial settlement call no later than five (5) calendar days from the earliest date set

forth in the written request.  In the case of Indenture Trustees with Authority, within ten (10)

business days of a receipt of such a request, the other parties must respond by acceptance of one

of the proposed dates and times or by a proposal for an initial settlement call no later than fifteen

(15) business days from the earliest date set forth in the written request.  If an acceptable date

cannot be achieved through this process, the parties shall immediately proceed to the Mediation

Stage.  At least one hour shall be reserved for the initial conference to discuss settlement.  No

mediator or representative of the Court will participate in this discussion, but the initial

conference call specified in this paragraph, together with any continuations or rescheduled

settlement calls or meetings arising from that initial settlement conference, will be covered by

Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, the

confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator

were present.  Settlement conferences during the Notice/Response Stage may be held in person if

both parties agree in writing.

## **MEDIATION STAGE**

10. <u>Mediation</u>.  Derivatives ADR Disputes that are not resolved through the

Notice/Response Stage will proceed to mediation (the "<u>Mediation Stage</u>").  The Debtors shall

transmit on a rolling basis as promptly as possible to the mediators appointed pursuant to

paragraph 10(a) hereof sets of Derivatives ADR Notices and any applicable Response(s) and

Replies thereto for purposes of allocating specific mediations pursuant to paragraph 10(b)(i)

hereof.

a.    <u>Choice of Mediator</u>.  James Freund, David Geronemus and Ralph Mabey

are APPOINTED as the mediators for Derivatives ADR Disputes reaching

the Mediation Stage.  If any named mediator is not available to serve as

mediator, an alternate mediator shall be selected by the Court upon notice

to the Debtors, the Creditors' Committee, all Derivatives Counterparties

and Indenture Trustees.

b.    Powers of Mediator.  The mediators shall have the broadest possible discretion consistent with the Standing Order, including (i) the manner of allocating among themselves specific mediations on a fair and equitable basis; and (ii) the ability to consolidate mediations involving the same Derivatives Counterparty upon application by such Derivatives Counterparty and consultation with the Debtors.

c.    Once a specific mediator has been selected and notice of such selection has been conveyed to the parties, the Debtor and the Derivatives Counterparty or Indenture Trustee with Authority together shall contact the mediator to schedule the initial mediation date.

d.    Mediation Sites.  All mediation proceedings will take place in New York, New York, unless agreed to by the parties and the mediator.

e.    Mediation Briefs.  Any party to a Mediation may submit a Mediation Brief, with service upon the other parties to the Mediation and upon the Creditors' Committee; provided, however, the Mediator may order that the parties to serve upon each other, the Mediator, and the Creditors' Committee a Mediation Brief.  If a party to the Mediation opts to serve a Mediation Brief upon another party to the Mediation hereunder, such Mediation Brief shall also be filed with the Mediator and the Creditors' Committee.  Any such Mediation Brief shall be served and filed so as to be received no later than five (5) calendar days prior to the scheduled initial Mediation Date.  No Mediation Brief shall be filed with the Court.

      f.     <u>Appearance at Mediations</u>.  Unless otherwise ordered by the mediator all participants in the mediation for the applicable Derivatives ADR Dispute, must appear in person with a business principal who has settlement authority; *provided, however*, that, to the extent acceptable to the mediator, the business principal with settlement authority on behalf of a Derivatives Counterparty may attend the mediation by video conference at the sole expense of the Derivatives Counterparty.  The Creditors' Committee may attend and participate in all mediations hereunder. Counsel may also be present and participate.

      g.     <u>End of Mediation</u>.  The mediation shall end upon request of a party and concurrence by the mediator.

## **<u>OTHER PROVISIONS</u>**

11. <u>Deadlines</u>.  Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by:  (i) the mutual consent of the Debtors and the Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

12. <u>Sanctions for Parties</u>.  Each Debtor, Derivatives Counterparty and Indenture Trustee must participate in good faith with these Derivatives ADR Procedures with regard to the ADR Disputes specified in the applicable Derivatives ADR Notice.  If, after notice and a hearing, the Court determines that a party has not complied with the Derivatives ADR Procedures in good faith in connection with any Derivatives ADR Dispute, the Debtors, Derivatives Counterparty or Indenture Trustee, as the case may be, may be subject to such sanctions as the Court deems appropriate (the "<u>Sanctions</u>").  If a mediator reports to the Court that any party subject to this Order is not cooperating in good faith with the Derivatives ADR Procedures, the Court may, without the need for further motion by any party, schedule a hearing

and order Sanctions.  Litigation with respect to the issuance of Sanctions shall not delay the commencement of the Mediation Stage of these procedures upon completion of the Notice/Response Stage.  Sanctions may include, but are not limited to:

a.    Against Debtors:  (i) attorneys' fees incurred by a Derivatives Counterparty (including an Indenture Trustee with Authority) with respect to the Derivatives ADR Procedures after the receipt of an ADR Package; (ii) fees and costs of the Mediator; (iii) termination of the Derivatives ADR Procedures as to one or more Derivatives Contracts with Potential Recovery; and/or (iii) rejection of some or all claims asserted by Debtors in the applicable Derivatives ADR Dispute.

b.    Against Derivatives Counterparties (including Indenture Trustees with Authority):  (i) attorneys' fees incurred by the Debtors with respect to the Derivatives ADR Procedures after the sending of an ADR Package; (ii) fees and costs of the Mediator; (iii)  an award of the Derivatives ADR Dispute up to the amount specified in the Derivatives ADR Notice.

13. Confidentiality.  The confidentiality provisions of section 5.0 of the Standing Order are hereby incorporated by reference into this Order.  No statements or arguments made or positions taken by the mediator, the applicable Debtors, Derivatives Counterparties, Indenture Trustee or the Creditors' Committee during any part of the alternative dispute resolution process, including Settlement Conferences and the Mediation Stage may be disclosed by the mediator or any such parties or their attorneys and advisors to the Court or any third party; *provided, however*, that Indenture Trustees may disclose such statements, arguments and positions as may become necessary with their respective noteholders and advisors subject to these same

confidentiality provisions.  Similarly, all briefs, records, reports, and other documents received

or made by the mediator while serving is such capacity shall remain confidential and not be

provided to the Court, unless they would be otherwise admissible.  In addition, the mediator shall

not be compelled to disclose such records, reports, and other documents in connection with any

hearing held by the Court; *provided*, *however*, the mediator shall on a monthly basis beginning

60 days following entry of this Order report to the Court the status of the mediation efforts but

shall not disclose the content thereof, which report shall include the number of ADR Notices

served on Derivatives Counterparties, the number of settlements reached after mediation, the

number of mediations still pending, the number of mediations that have terminated without

settlement, and the cumulative dollar amount of settlements reached with Derivatives

Counterparties following service of ADR Notices.  Rule 408 of the Federal Rules of Evidence

shall apply to all aspects of the Derivatives ADR Procedures including Settlement Conferences

and Mediation Stage.

14. Jury Trial, Arbitration and Exclusive Foreign Forum Selection Rights

Unaffected.  Unless a Derivatives Counterparty, Indenture Trustee or a Debtor affirmatively

waives its right to a jury trial, arbitration or exclusive foreign forum selection that otherwise may

exist, participation in the Derivatives ADR Procedures shall not waive or otherwise modify such

rights.  All parties' rights and defenses to contest the assertion of a jury trial or arbitration or

exclusive foreign forum selection right by any other party are fully preserved.

15. Fees.  Except as otherwise provided herein, each party to the Mediation shall

bear its own counsel fees and other costs of the Derivatives ADR Procedures, including

Mediation; *provided, however,* that (i) the Debtors shall pay the reasonable fees and costs

charged by the Mediator unless otherwise ordered by the Court pursuant to the terms of this

Order and (ii) nothing contained herein shall be deemed to vary the terms of any Derivative

Contract with Recovery Potential in respect of the reimbursement of fees and expenses.


**SO ORDERED:**

Dated: New York, New York
        September 17, 2009

_____*s/ James M. Peck*_____
UNITED STATES BANKRUPTCY JUDGE

<u>Exhibit A</u>

**<u>Form of Derivatives ADR Notice</u>**

Derivatives ADR Notice No.: _____

<u>Debtor(s)</u>: _____          <u>Derivatives Counterparty</u>: _____
                  Name(s)                                                              Name(s)

                          or

                   <u>Indenture Trustee</u>: _____
                                      Name

<u>Derivatives Contract</u>: _____

_____

_____

<u>Settlement Demand</u>: <u>$</u> _____

<u>Explanation of Basis for Settlement Demand</u>: _____

_____

_____

_____

_____

_____

_____

<u>Date of Derivatives ADR Notice</u>: _____

<u>Date of Service</u>:                    _____

<u>Response Due Date</u>:                _____

<u>Debtor Contact</u>:    [Name]
                  [Address]
                  Telephone Number: _____
                  Email: _____

<u>Exhibit B</u>

**Form of Response to Derivatives ADR Notice**

<u>Derivatives Counterparty</u>: _____
                                             Name

    or

<u>Indenture Trustee with Authority</u>: _____
                                                        Name

<u>Response to Derivatives ADR Notice No.</u>: _____

☐ Agree to Settlement Demand

☐ Denial of Settlement Demand          ☐ Counteroffer

                                                     <u>Counteroffer Amount</u>: $_____

<u>Explanation of Basis for Counteroffer/Denial of Settlement Demand</u>: _____
_____
_____
_____
_____
_____
_____
_____

<u>Counterparty Contact</u>:  [Name]
                                     Telephone Number: _____
                                     Email: _____