**Hearing Date and Time: April 14, 2010 at 10:00 a.m. (Eastern Standard Time)**
**Objection Deadline: April 7, 2010 at 4:00 p.m. (Eastern Standard Time)**

Sara Discepolo, Esq.
1050 Winter Street, Suite 1000
Waltham, MA 02451
Telephone: 617-549-4537
Facsimile: 978-478-4589

*Attorney for Simeon Moreno*

***Attorney Discepolo requests permission to attend the Omnibus Hearing on April 14, 2010 via telephone conference call.***

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Lehman Brothers Holdings, Inc., *et al.*,<br><br><br><br>Debtors | Chapter 11<br>Case No.: 08-13555 (JMP)<br><br>(Jointly Administered) |

**SIMEON MORENO'S MOTION FOR DECLARATION THAT THE AUTOMATIC STAY DOES NOT APPLY AND THAT HIS CLAIMS CONSTITUTE ADMINISTRATIVE EXPENSES OF THE ESTATE**

Simeon Moreno (hereinafter the "Movant") hereby moves, pursuant to 28 U.S.C. § 959, 11 U.S.C. § 503(b), and federal common law, for the Court to declare that his claims against the Debtor, Lehman Brothers Holdings Inc. (hereinafter "LBHI"), are not subject to the automatic stay and constitute priority administrative expenses. He also seeks permission to appear on his Motion via telephone conference and to limit service of this Motion to the Standard Parties.

In support hereof, the Movant states as follows:

1.      The Movant is a senior citizen homeowner residing in West Roxbury, Massachusetts. His

attorney, the undersigned, is located in Waltham, Massachusetts.

2.      The Movant has previously filed a Motion for relief from stay in these proceedings

concerning his Proof of Claim and also sought a declaration that his Proof of Claim was timely

filed. See Simeon Moreno's Mot. (1) to Deem his Proof of Claim as Timely Filed, *Nunc Pro*

*Tunc*; (2) for Relief from the Aut. Stay; (3) for Permission to Attend Hrg. via Tel. Conf.; and (4)

for Exemption from Service Requirements as to Certain Parties in the Master Serv. List dated

Mar. 3, 2010 [Doc. No. 7366] (hereinafter "Movant's Motion for Relief from Stay").

3.      The Debtor, LBHI, filed for chapter 11 bankruptcy protection in this Court in September

of 2008 and is a debtor in possession that continues to operate its business for the benefit of the

creditors of the estate.

4.      The Movant filed for bankruptcy protection under Chapter 13 in Massachusetts on or

about October 13, 2008. See  *In re Simeon Moreno*, U.S. Bankruptcy Court, District of

Massachusetts, Case No. 08-17715-FJB.

5.      Approximately one month after the Movant filed his bankruptcy petition and

approximately two months after LBHI filed its own Chapter 11 bankruptcy petition, LBHI filed a

Proof of Claim (hereinafter "LBHI's Proof of Claim") in the Movant's Massachusetts

bankruptcy case alleging that the Movant owed LBHI certain residential mortgage debt. The

Proof of Claim was not filed directly by LBHI but indirectly by Litton Loan Servicing Limited

Partnership (hereinafter "Litton"), LBHI's authorized agent. A copy of LBHI's Proof of Claim

filed in the Massachusetts bankruptcy case is attached to Moreno's Proof of Claim in these

proceedings. See Moreno's Proof of Claim No. 66084.[1]

---

[1] The Proof of Claim was actually filed by Litton as "creditor" and states in fine print that it is on behalf of LBHI.

6.      On or about December 28, 2009 the Movant sent to LBHI his notice of rescission of the

residential loan transaction that is the basis of LBHI's Proof of Claim and LBHI received notice

of said rescission on or about December 31, 2009. See Aff. of Counsel (attached hereto as

Exhibit "A"), ¶ 3.

7.      In the Movant's Massachusetts bankruptcy case, a wholly owned non-debtor subsidiary

of LBHI, Property Asset Management, Inc. (hereinafter "PAM"), seeks to foreclose the

Movant's property pursuant to the same mortgage that is the subject matter of LBHI's Proof of

Claim. See Movant's Motion for Relief From Stay [Doc. 7366], Exh. "C" (PAM's Emerg. Mot.

to Cont. Hearing filed in Massachusetts bankruptcy litigation). To that end, PAM seeks relief

from the automatic stay in the Movant's bankruptcy case, see id. [Doc. 7366], Exh. "B" (PAM's

Motion for Relief From Stay), and an evidentiary hearing concerning same is scheduled for April

8, 2010, see Aff. of Counsel dated Mar. 30, 2010 (hereinafter "Affidavit of Counsel"), ¶ 4

(attached hereto as Exhibit "A").

8.      On or about December 2, 2009, the Movant filed an Adversary Proceeding challenging

the attempts by PAM to foreclose as well as asserting claims against PAM concerning the

predatory nature of the loan at issue. Up to that time, PAM had represented that it was the

creditor. On March 29, 2010 the Massachusetts Bankruptcy Court permitted the Movant to

amend his Complaint to assert additional claims and sue additional parties, including claims for

rescission of the loan. See First Amended Compl. (attached as Exhibit "D" to Movant's Motion

for Relief from Stay); Aff. of Counsel (attached hereto as Exhibit "A"), ¶ 5.

9.      LBHI not only filed a Proof of Claim in the Movant's bankruptcy case, but also has

provided and continues to provide substantial assistance to its proxy, PAM, for the purpose of

foreclosing the mortgage purportedly owned by LBHI. Its assistance thus far includes providing

PAM with documents and an affidavit by a LBHI Vice President. See Movant's Mot. for Relief

from Stay, Exh. "F" (Affidavit by LBHI); Aff. of Counsel (attached hereto as Exhibit "A"), ¶¶ 7-

8.

10.    PAM has also stated its intention to call said LBHI Vice President as a witness at the

evidentiary hearing on PAM's stay relief motion. See id., ¶ 9.

11.    LBHI uses its subsidiaries, such as PAM, to handle the pursuit of defaulted mortgage

debt, including the pursuit of foreclosure of real property, in a scheme to shield LBHI from

liability related to foreclosures while receiving monetary benefits of those foreclosures. See, e.g.,

Mot. of the Debtors Pur. to Sections 105(a) and 363(b) of the Bankruptcy Code and Rule 9019 of

the Fed.R.Bankr.P. for the Establishment of Proc. for the Debtors to Transfer Their Interests in

Respect of Res. and Comm. Loans Subject to Foreclosure to Wholly-Owned Non-Debtor

Subsidiaries dated Aug. 26, 2009 [Doc. # 4966]. This use by LBHI of its subsidiaries to foreclose

defaulted mortgage debt while prejudicing homeowners by thwarting efforts by them to assert

claims against LBHI, such as rescission claims, is evident in the Movant's Adversary Proceeding

in Massachusetts.

12.    The Movant is seeking an order from this Court that his claims against LBHI are exempt

from the automatic stay.

13.    He is also seeking an order that his claims and any awards resulting from said claims are

administrative expenses to be accorded priority status.

14.    Because the Movant's counsel is located in the Boston area, the Movant respectfully

requests permission for his counsel to attend the hearing on this Motion via telephone

conference.

15.     To the extent service of this Motion and associated documents may technically be

required on all persons in the Master Service List, the Movant requests that he be exempt from

such service and that he be permitted to serve only all registered ECF users via electronic case

filing and the Standard Parties.  Service on all persons in the so called 2002 List or Master

Service List, other than registered ECF filers and Standard Parties, is not necessary because said

persons do not have any direct interest in the Motion or their interest could only be nominal.

Because of this, it is highly unlikely that they would seek to be heard on this matter. The burden

on the Movant's counsel, a sole practitioner, outweighs the nominal need to effect service on

those that have virtually no interest in this matter.


**Memorandum of Law**


**THE AUTOMATIC STAY DOES NOT APPLY**

**I.      The automatic stay does not apply to any of the Movant's claims against LBHI
because they are objections or counterclaims to LBHI's Proof of Claim, which was
filed post-petition by LBHI in the ordinary course of its business**

**A.      Pursuant to 28 U.S.C. § 959, the automatic stay does not apply to claims
arising from the operation of a business by a debtor in possession.**

According to Section 959(a) of Title 28 of the United States Code, debtors in possession,

such as LBHI are subject to suit for claims arising from their operation of their businesses in the

ordinary course. Claimants are not even required to first seek permission from a receivership

court prior to filing their claims. As stated in Section 959(a),

> Trustees, receivers or managers of any property, including <u>debtors in
> possession, may be sued, without leave of the court appointing them, with
> respect to any of their acts or transactions in carrying on business
> connected with such property</u>. . . .

28 U.S.C. § 959(a)(emphasis added). This rule is well established. See, e.g., In re CITX Corp.,

302 B.R. 144, 150 (Bankr.E.D. Penn. 2003)(discussing 28 U.S.C. § 959 and its antecedents in

the common law). Moreover, suits or claims that come within the purview of Section 959 are

exempt from the application of the automatic stay. See, e.g., Haberern v Lehigh & N.E. Ry. Co.,

554 F.2d 581 (3rd Cir. 1977).

The purpose of Section 959 is to insure that debtors are not constrained from continuing

to operate their businesses in reorganizations. See Fidelity Mortgage Investors v Camelia

Builders, Inc., 550 F.2d 47, 56 (2nd Cir.), cert. denied, 429 U.S. 1093 (1977). If this exception to

the automatic stay did not exist as to debtors that remain in business after a bankruptcy filing,

such debtors would find it difficult to continue operations because suppliers, banks and

employees would be unwilling to continue working with the debtor.  See id.  In having the

benefit of continuing its operations, a debtor in possession, does not have "carte blanche" to

ignore nonbankruptcy law and is subject to suits for unlawful acts in furtherance of its

operations. See In re Continental Airlines, Inc., 61 B.R. 758 (S.D. Tex. 1986).  Moreover, a

reorganization court may not by blanket prohibition enjoin all Section 959 actions in reliance on

the automatic stay and must give effect to the plain language of the statute and the legislative

history behind Section 959. See id.

> **B.     Section 959 requires that debtors in possession comply with all State**
> **laws in the continued management of business operations.**

While given the luxury of operating its own business, a debtor in possession may not

violate regulations or laws applicable to continued operations of the business. According to

Section 959(b) of Title 28 of the United States Code:

> a debtor in possession . . . shall manage and operate the property in his
> possession . . . according to the requirements of the valid laws of the State

6

> in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b); see also, e.g., Clancy v Goldberg, 183 B.R. 672 (N.D.N.Y. 1995)(funds deposited with home improvement debtor held in escrow and not part of bankruptcy estate). State consumer protection laws, including unfair trade practice laws, must be complied with. See, e.g., In re White Crane Trading, Co., Inc., 170 B.R. 694, 702 (Banrk.E.D.Cal. 1994). "Bankruptcy does not grant the debtor a license to eliminate the marginal cost generated by compliance with valid state laws that constrain nonbankrupt competitors. The Congress has thus required that every debtor in possession and bankruptcy trustee manage and operate the debtor's property and business in compliance with state laws — good, bad, and indifferent — that apply outside of bankruptcy." In re White Crane Trading at 702.

**C.     After filing for bankruptcy protection under chapter 11 of the Bankruptcy Code in September of 2008, LBHI continued to operate its business as a debtor in possession.**

It cannot seriously be disputed that LBHI continues to operate its business as a debtor in possession. It filings in this case describing itself as such are too numerous to mention.

**D      LBHI's Proof of Claim in the Movant's bankruptcy and other actions in that case constitute the continued operation of the Debtor's business.**

As described above, LBHI, through its authorized agent, Litton, filed a Proof of Claim in the Movant's Massachusetts bankruptcy case after it had filed its own Chapter 11 bankruptcy case. Besides filing said Proof of Claim, it has provided an affidavit to PAM, its subsidiary for the purpose of assisting PAM's foreclosure of the mortgage LBHI purportedly holds.  It has provided this affidavit to PAM (1) in support of a Motion for Summary Judgment filed by PAM; and (2) in support of PAM at an evidentiary hearing on PAM's motion for stay relief.  It also,

apparently, intends to appear as a witness at said evidentiary hearing on behalf of PAM for the purpose of giving evidence. See Aff. of Counsel, ¶¶ 7-9 (attached hereto as Exhibit "A").

All of these actions by LBHI constitute actions under Section 959 taken in the ordinary course of its business to preserve and benefit the estate. That business includes the pursuit and recovery of defaulted residential mortgage debt. As LBHI admits in its prior filings, "[i]n the ordinary course of . . . business prior to the Commencement Date and as is common in [the] . . . industry, the Debtors, from time to time, determine to foreclose . . . on Real Estate Loans on which borrowers have defaulted . . . ." Mot. of the Debtors Pur. to Sections 105(a) and 363(b) of the Bankruptcy Code and Rule 9019 of the Fed.R.Bankr.P. for the Establishment of Proc. for the Debtors to Transfer Their Interests in Respect of Res. and Comm. Loans Subject to Foreclosure to Wholly-Owned Non-Debtor Subsidiaries dated Aug. 26, 2009 [Doc. # 4966].

Thus, it cannot be disputed that LBHI's Proof of Claim and its assistance to its subsidiary for the purpose of foreclosing a mortgage purportedly owned by LBHI were undertaken in the ordinary course of its business in order to preserve the estate. As a result, the Movant's claims are not subject to the automatic stay under 28 U.S.C. § 959 and the Movant requests that this Court declare the stay inapplicable to his claims.

II.    **Second, the automatic stay does not apply to any of the Movant's claims because LBHI has waived any immunity to suit as a result of its filing of a Proof of Claim and other actions it has taken in the Movant's bankruptcy case.**

It is well established that the filing of a proof of claim in a bankruptcy court subjects the filer to the claims review process and all that goes along with that. See In re CITX Corp. at 158; Langenkamp v Culp, 498 U.S. 42 (1990)(party that files proof of claim in bankruptcy is subject to all equitable powers of the court and is not entitled to a jury trial); Granfinanciera, S.A. v Nordberg, 492 U.S. 33, 58-59 n.14 (1989)(by filing proof of claim, creditor triggers allowance

and disallowance process subjecting creditor to equitable powers of the bankruptcy court). It is

therefore axiomatic that the filing of LBHI's proof of claim constituted a waiver by it of any

claim to protection by the automatic stay. See, e.g., In re CITX Corp. at 158-59 (even though

receiver was not subject to suit under Section 959, he waived his claim to be immune from suit

under common law because his actions in the bankruptcy case, including the filing of a proof of

claim, constituted a waiver of immunity from suit).

Because LBHI has not only filed a Proof of Claim but also provided substantial

assistance to its proxy subsidiary to foreclose, it has waived any immunity from suit that might

be available under the automatic stay and subjected itself to the claims process in Massachusetts.

Thus, due to LBHI's waiver as well, the Movant requests that the Court declare the automatic

stay inapplicable to his claims against LBHI.

## III.   Third, because the Movant's claims did not arise against LBHI until after LBHI's chapter 11 filing, they are post-petition claims which are not subject to the automatic stay

The automatic stay does not apply to claims against a bankrupt debtor that arise after the

debtor files for bankruptcy. See 11 U.S.C. § 362(a)(stay applicable to the commencement of a

judicial proceeding against the debtor "that was or could have been commenced" before the

debtor's bankruptcy filing or "to recover a claim against the debtor that arose before" the

debtor's bankruptcy filing); see also In the Matter of M. Frenville Co., Inc., 744 F.2d 332, 335

(3rd Cir. 1984)("Proceedings or claims arising post-petition are not subject to the automatic

stay")(citations omitted), cert. denied, 469 U.S. 1160 (1985).

The Movant's claims are all post-petition. All of its claims against LBHI constitute an

objection to LBHI's Proof of Claim, which was filed post-petition. The Movant has additional

potential claims against LBHI for PAM's post-petition attempts to foreclose. Because the

Movant has alleged LBHI and PAM are joint venturers, LBHI will be subject to liability for said post-petition actions. In addition, the Movant has separate claims against LBHI as a result of his rescission of the loan purportedly owned by LBHI.  He exercised his right to rescind in December of 2009. He now seeks to file suit based upon LBHI's failure to take actions required by federal and state Truth in Lending laws to terminate the mortgage and refund monies. These particular rescission claims against LBHI could not have been asserted until after the Movant sent his notice of rescission and LBHI failed or refused to take action in response thereto. See, e.g., Bellini v Washington Mut. Bank, 412 F.3d 17 (1st Cir. 2005)(litigant has only one year to sue for a court declaration under Truth in Lending laws that the loan transaction was rescinded after mortgage holder's failure to respond to notice of cancellation). As a result, all of the Movant's rescission claims are also post-petition and not subject to the automatic stay.  The Court should for this reason as well declare the automatic stay inapplicable to the Movant.

### THE MOVANT'S CLAIMS ARE ADMINISTRATIVE EXPENSES

**IV.**    **The Movant's claims against LBHI must be accorded priority status as administrative expenses of the estate.**

According to Section 503(b)(1)(A) of Title 11 of the United States Code, "there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). By using the term "including," administrative expenses are not limited to the types of expenses limited in Section 503(b). See, e.g., In re Ridgewood Sacramento, Inc., 20 B.R. 443, 446 (Bankr.E.D. Cal. 1982). They also pertain only to post-petition actions to preserve the estate. Because actions taken by a debtor in possession to preserve the estate are for the benefit of all the debtor's creditors, they are

necessary expenses under Section 503(b)(1)(A) and receive priority status under Section

507(a)(2).

   In general, a claimant that claims to be entitled to administrative expense priority status

must show that the expense arises out of a transaction between the creditor and debtor and the

expense benefits the estate. See, e.g., Trustees of the Amalgamated Ins. Fund v McFarlin's, Inc.,

789 F2d 98, 101 (2nd Cir. 1986).  Where there is negligence or wrongdoing on the part of a

trustee (or debtor in possession) post-petition, however, an exception exists to this requirement

that a benefit must be conferred on the estate. See Reading Co. v Brown, 391 U.S. 471 (1968); In

re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976); N.P. Mining Co., Inc., 963 F.2d 1449

(11th Cir. 1992); In re Met-L-Wood Corp., 115 B.R. 133 (N.D.Ill. 1990).

**Statutory violations arising post-petition**

   In this case, as in the Reading line of cases, LBHI as debtor in possession has committed

a violation of law post-petition: it has failed to terminate the residential mortgage and return

monies to the Movant after he exercised his right to rescind in December of 2009. See Aff. of

Counsel, ¶ 3.[2] This failure on the part of LBHI gives rise to a new statutory claim held by the

Movant and is comparable to a tort arising post-petition under Reading that injures innocent

parties. See, e.g., In re Old Carco, LLC, (Slip Op. No. 09-50002 January 5, 2010) ___ B.R. ___

(Bankr. S.D.N.Y. 2010). See, e.g., In re Chateaugay, Corp., 154 B.R. 416 (S.D.N.Y.

1993)(statutory claims arising post-petition give rise to administrative expense claims), aff'd, 53

F.3d 478 (2nd Cir.), cert. denied, 516 U.S. 913 (1995). This is because his statutory claim to

rescind the loan could not have happened until he first exercised his right to rescind. See, e.g.,

Bellini v Washington Mut. Bank, 412 F.3d 17 (1st Cir. 2005)(litigant has only one year to sue for

_____

[2] To the extent LBHI has committed post-petition violations of law as a result of its subsidiary's improper actions to
foreclose, claims arising from them also will constitute administrative expenses.

a court declaration that the loan and mortgage were rescinded after mortgage holder's failure to
respond to his notice of cancellation); see also In re Penn Cent. Transport Co., 944 F.2d 164 (3rd
Cir. 1991), cert. denied, 503 U.S. 906 (1992)(where no statutory basis exists for statutory
liability to be asserted against debtor at time of discharge, such claims were not discharged).

The rationale for conferring administrative expense priority status on Reading type
claims is "that if a party were injured by negligence in the operation of an 'insolvent business
thrust upon it by operation of law,' it was 'fairer' to compensate the injured party upon whom the
arrangement had been imposed before compensating those for whose benefit the arrangement
was being effected." Carco at * 11 (citations omitted); see, e.g., In re Charlesbank Laundry, Inc.,
755 F.2d 200 (1st Cir. 1985)(continued operation of Laundromat in violation of zoning ordinance
and subsequent injunction gave rise to civil fines accorded administrative priority expense
status)(cited by Carco at * 11). Fairness requires the estate to bear the burden of an increased
expense for a debtor's intentional acts in violation of law. See Carco at *11 (discussing
Charlesbank).

In this case, LBHI continues to operate its business and in doing so has committed
statutory violations of law by failing or refusing to undertake its statutory obligations to
terminate the residential mortgage it purportedly holds as required under federal and state Truth
in Lending laws.  Not only has it failed to comply with its statutory duties, it has also continued
to assist its proxy subsidiary for the purpose of foreclosing on a mortgage that it is required to
invalidate.  These actions by LBHI as a debtor in possession must have consequences to LBHI. It
would be unfair to have the Movant, an innocent party, bear the burden of the cost of LBHI's
actions by rendering his claims merely unsecured and pro-rata.  This is especially the case where
the violation of law – failure to comply with truth in lending laws requiring termination of

mortgage and return of monies – benefits the estate and is ongoing. As such, the damages that

may be awarded to the Movant in the Massachusetts litigation for his anticipated claims against

LBHI must be accorded priority status as an administrative expense.

**Damages and costs arising from frivolous litigation**

Secondly, LBHI's continued pursuit of recovery of its residential mortgage debt is

meritless and frivolous in light of the rescission of the mortgage. As a result, all damages that

may be awarded to the Movant must be accorded administrative expense status for this reason as

well.

It is proper and necessary to accord administrative expense status to damages resulting

from a trustee's frivolous litigation. "Several courts have applied *Reading* to award attorney's

fees and costs resulting from the trustee's frivolous litigation." In re Met-L-Wood Corp., 115

B.R. 133, 136 (N.D. Ill., 1990)(citing In re Airwest International, No. 86-00145, 1988 WL

113101 (Dist. Hawaii Oct. 12, 1988) and In re E.A.Nord Co., Inc., 78 B.R. 289

(Bankr.W.D.Wash. 1987); In re Charlesbank Laundry, Inc., 755 F.2d 200 (1st Cir. 1985); In re

Chicago Pacific Corp., 773 F.2d 909 (7th Cir. 1985). Even if a trustee's litigation is not frivolous,

but merely meritless, it will give rise to administrative expenses caused by such litigation. See,

e.g., Met-L-Wood at 136.

In the Massachusetts bankruptcy litigation, even if LBHI's Proof of Claim does not in

itself trigger administrative expense priority for potential damages, its continued litigation of its

Proof of Claim, by, among other things, submitting affidavits and appearing as a witness at a

foreclosure related hearing for its proxy subsidiary so that that subsidiary can foreclose LBHI's

mortgage, is certainly meritless and frivolous. There is no basis to proceed given the rescission,

yet LBHI continues to take action to enforce a claim that is no longer secured.

For all the above reasons, the Movant requests that this Court declare all damages that may be awarded to the Movant in Massachusetts and paid out by this forum as administrative expenses due priority treatment.

**V.    Justice requires under the particular facts of this case a declaration that the automatic stay is inapplicable and the Movant's claims are administrative expenses.**

LBHI's pursuit of the underlying residential mortgage debt in the Movant's bankruptcy is particularly troublesome under the facts of this case. The fact that it, through its subsidiary, has continued to purse enforcement of a mortgage that is no longer valid is contrary to state and federal Truth in Lending laws. Pursuant to Section 959(b) of Title 28 of the United States Code, LBHI as a debtor in possession must comply with all state laws. At the very least, its continued pursuit of a foreclosure that is meritless is a violation of state Truth in Lending laws in contravention to Section 959(b). If the Court refuses to exempt the Movant from the automatic stay and accord his damages, including any attorneys' fees awarded, as priority payments from the estate, the Court would be sanctioning and assisting LBHI in its continued unlawful conduct.

Although not fully described above, the Movant has additional claims against LBHI related to the predatory nature of the loan and mortgage purportedly owned by LBHI and that LBHI seeks to enforce in Massachusetts. The Movant has claims against LBHI and its subsidiary for improper attempts to foreclose as well. Finally, in his allegations in the Massachusetts bankruptcy litigation, the Movant asserts a joint venture and concerted action between LBHI and its subsidiary PAM for the purpose of improperly shielding LBHI from liability and preventing claims related to rescission of residential mortgage debt.  Those allegations and prejudicial conduct of LBHI and its subsidiary should be considered by this Court when making its decision as to whether fairness dictates conferring administrative expense status on the Movant's claims in the Massachusetts litigation.

14

SIMEON MORENO

By:    */s/ Sara Discepolo*
        Sara Discepolo, Esq.
        1050 Winter Street
        Suite 1000
        Waltham, MA 02451
        Tel. 617-549-4537
        Fax 978-478-4589
        Sara_Discepolo@verizon.net
        His Attorney

Dated:  March 30, 2010
       Waltham, Massachusetts