Hearing Date and Time: April 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: March 31, 2010 at 4:00 p.m. (Prevailing Eastern Time)

STROOCK & STROOCK & LAVAN LLP
Claude G. Szyfer
Francis C. Healy
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Attorneys for Derivative Counterparties*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
In re                                              :    **Chapter 11**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :    Case No. 08-13555 (JMP)
                                                   :
　　　　　　　　　　　　　　　　　Debtors.     :    (Jointly Administered)
                                                   :
------------------------------------------------------------- x

**OMNIBUS LIMITED OBJECTION OF DERIVATIVE COUNTERPARTIES TO DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 9014, AND GENERAL ORDER M-390 AUTHORIZING THE DEBTORS TO IMPLEMENT CLAIMS HEARING PROCEDURES AND ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR <u>CLAIMS AGAINST DEBTORS</u>**

　　　　Hess Corporation, Hess Energy Trading Company, LLC, Mizuho Capital Markets Corp., Mizuho Corporate Bank, Ltd., as Holder of Derivative Claims, Mizuho Alternative Investments LLC and Louis Dreyfus Energy Services, L.P. (collectively, the "Derivative Counterparties"), as parties to terminated derivative contracts entered into pre-petition with certain of the Debtors, by their undersigned attorneys, hereby file this limited objection (the "Objection") to the motion (the "Motion")[1] of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the

---

[1]　Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

above captioned chapter 11 cases (collectively, the "Debtors") seeking an order implementing claims hearing procedures and alternative dispute resolution procedures for claims against the Debtors. While Derivative Counterparties do not object to the implementation of alternative dispute resolution procedures that are fair and reasonable to each participant, the ADR Procedures currently set forth in the Motion place the Derivative Counterparties, as well as other creditors, at a severe informational and procedural disadvantage. The success of any alternative dispute resolution process, the purpose of which is to fairly and meaningfully resolve claims without resorting to costly and time-consuming litigation, is predicated on the existence of a level playing field between the parties in terms of information exchanged, the selection of qualified mediators, and the ability to conclude the mediation process if a mutually agreeable resolution cannot be reached within a reasonable time period. However, the procedures proposed in the Motion are heavily skewed in Debtors' favor, lacking any requirement or procedure by which Debtors would have to provide the same type of information relating to market quotations, or other factual allegations, already provided by the Derivative Counterparties, and creating loopholes through which the Debtors can continue the mediation process ad infinitum, thereby impeding the ability of Derivative Counterparties to avail themselves of the chapter 11 claim procedures -- mediation on these terms is doomed from the outset. Accordingly, the proposed ADR Procedures should be modified in accordance with this Objection.

       In support of this Objection, the Derivative Counterparties respectfully represent as follows:

**I.**       **The ADR Procedures Confer Upon the Debtors An Unfair Information Advantage**

       1.       The ADR Procedures create critical, asymmetrical information advantages in favor of the Debtors in the mediation. The Debtors will have nearly all the relevant information

as to how a Derivatives Counterparty valued the terminated transactions at issue (by virtue of the Derivative and Guarantee Questionnaires and documents submitted by Derivative Counterparties pursuant to the Bar Date Order), while the Derivative Counterparty will have no right to request or receive information supporting the factual contentions set forth in Debtor's objections. This Court should not countenance such an unbalanced result.

2. Each Derivative Counterparty has already provided the Debtors a mountain of information relating to its claim and calculations of the amounts owed, including a spreadsheet for terminated transactions (which may contain some or most of the following information: the electronic trade reference i.d., trade type, product, trade date, reference obligation or entity, original contract notional amount, quantity/unit of measure, currency, price or strike price, buy/sell, call/put, cap/floor, effective date, and maturity date), a description of the methodology utilized by that Derivative Counterparty to calculate the amounts owed, documents and other information relating to any market quotations that Derivative Counterparty may have obtained as part of the termination process and the other information required under the Derivatives Questionnaire.

3. The Debtors, however, may simply plead factual allegations, of indeterminate specificity, in objecting to claims, and nothing in the ADR Procedures requires the Debtor to provide any other specific transaction or valuation information to the Derivative Counterparty. To the contrary, the Claims Procedures contain a Temporary Litigation Injunction, which upon the filing of a claim objection, would enjoin Derivative Counterparties or other creditors from conducting "any discovery, in any manner or place, including this Court, seeking to establish, liquidate, collect on, or otherwise enforce any and all Contested Claims" except as provided in the Claims Hearing Procedures and ADR Procedures, or pursuant to a plan of reorganization.

3

Claims Procedures, ¶ 8.  Notably, nothing in the Claims Procedures or ADR Procedures contemplates that Derivative Counterparties or other creditors will have any opportunity to obtain information or conduct discovery prior to mediation.  The Temporary Litigation Injunction in this context continues until the "Contested Claim has been resolved by virtue of a settlement . . . reached through these ADR Procedures or otherwise."  Id.

4. Therefore, while the Debtors will have all of the information relating to market quotations, loss calculations and other information obtained by the Derivative Counterparty, the proposed procedures fail to direct the Debtors to provide Derivative Counterparty the same type of information relating to market quotations, loss calculations or other factual allegations of the Debtors.  Absent the information underlying the Debtors' factual allegations set forth in their objections, Claimants are precluded from meaningfully responding to such allegations, and the Derivative Counterparty is at an immediate informational disadvantages before any meaningful mediation sessions can even begin.

5. Further, requiring the Debtors to provide information equivalent to the information provided by Derivative Counterparties pursuant to the Derivatives Questionnaire should not be difficult or burdensome.  As made clear by the proposed Claims Hearing Procedures and ADR Procedures, the Debtors will be submitting Offers of Settlement, which constitute their calculations of the amounts owed pursuant to the terminated transactions.  Accordingly, the Debtors must have in their own records similar transaction information readily available, and in a form that can be produced with minimal effort.  Indeed, in the Declaration of Gary H. Mandelblatt, dated June 23, 2009 and submitted in support of the Debtors' Bar Date Motion, Mr. Mandelblatt made clear that the Debtors could produce similar transaction by transaction information for each counterparty.  (Exhibit A, Declaration of Gary H. Mandelblatt,

4

dated June 23, 2009, ¶ 28) ("Counterparties are supposed to deliver this information upon termination of the Derivative Contracts. If requested, we would be able to pull this information for a defaulting party in a matter of hours."). Thus, any purported burden to the Debtors should not be an issue.

6. Accordingly, the ADR Procedures and Temporary Litigation Injunction must be modified to require the Debtors in the first instance, and upon request of a Derivative Counterparty, to provide to the Derivative Counterparty, within ten (10) days of when the Debtors serve a claim objection containing detailed factual allegations, transaction information equivalent to that provided by a Derivative Counterparty pursuant to the Derivative and Guarantee Questionnaires. If a Derivative Counterparty requires additional information, there also must be a procedure by which the Derivative Counterparty may request such information, with recourse to the mediator and ultimately the Court if there is an unresolved dispute regarding such discovery.

## II. The ADR Procedures Contain No Time Limit Or Procedures By Which To Terminate the Mediation

7. Also absent from the ADR Procedures is any provision permitting a Derivative Counterparty to terminate a mediation, or even to seek Court intervention, should the parties fail to reach a settlement within a reasonable time. A provision allowing for the termination of a failed mediation after a reasonable period of time is in the best interests of all creditors, not just those parties to each particular mediation.

8. However, the ADR Procedures provide no mechanism by which a Derivative Counterparty can terminate the mediation after the parties have had numerous sessions with a mediator, and reached an unbridgeable impasse. Instead, termination of the mediation is solely at the mediator's discretion. ADR Procedures, ¶4(f). The result is a procedural limbo for any

5

Derivative Counterparty who seeks to avail themselves of the chapter 11 claims resolution procedures set forth in the Code, but cannot because Debtors may seek to continue the mediation indefinitely.

9. Thus, it is respectfully requested that the ADR Procedures be modified to permit Derivative Counterparties and other creditors to terminate, as of right, the mediation if no settlement has been reached within four (4) months of the date of the first mediation session. Four months should provide the Debtors and a Derivative Counterparty with sufficient time to schedule and appear at numerous mediation sessions and engage in meaningful good faith discussions in order to resolve any dispute, but not unduly delay proceedings for the estate, Debtors and Derivative Counterparties. Of course, should the parties to the mediation reach an unbridgeable impasse prior to the end of the four month period, either party should have the right to request to the Mediator that the mediation should be terminated.

### III.    The Process of Mediator Election Should be Modified

10. The ADR Procedures provide that the Debtors may designate a list of "no less than" four proposed mediators, from which the Claimant may strike three. ADR Procedures, ¶4(a). There are 48 proposed mediators included on the List of Mediators, so, as currently drafted, the Debtors have the ability to potentially propose up to all 48, rendering the Claimant's ability to strike three virtually meaningless. Given that the mediators proposed by the Debtors are by definition all acceptable to the Debtors, the words "no less than" should be removed from paragraph 4(a)—the Debtors should be required to propose a list of four mediators, from which the Claimant may strike three.

### IV.    Other Requested Modifications

11. In several places, the Claims Procedures and ADR Procedures provide for serving notices on Claimants. See, e.g., Claims Procedures, ¶¶ 4(a-c), 5, 6, 7. These procedures should

6

be modified to make clear that any notices served on a Claimant also must be simultaneously served upon counsel to such Claimant.

12. Paragraph 5 of the ADR Procedures states that the Court will consider appropriate sanctions for failure of a party to follow the Claims Hearing Procedures and/or ADR Procedures or conduct Negotiation or Mediation in good faith.  This provision is insufficiently precise on what constitutes "good faith" in each of these contexts, and should be clarified to explain that "good faith" shall mean compliance with the standards set forth in Fed. R. Bankr. P. 9011(b), to the extent applicable.

13. In paragraph 4(b)(ii) of the ADR Procedures, either the Debtors or Claimants should be able to make an application to conduct mediations involving multiple Claimants with common issues of law or fact.

## CONCLUSION

14. For all of the reasons set forth above, Derivative Counterparties respectfully request that this Court enter an order modifying the ADR Procedures in accordance with this Objection, and granting such other and further relief as may be just and proper.

Dated: New York, New York
       March 31, 2010

**STROOCK & STROOCK & LAVAN LLP**

By: /s/ Claude G. Szyfer
    Claude G. Szyfer
    Francis C. Healy
180 Maiden Lane
New York, New York 10038-4982
Tel: (212) 806-5400
Fax: (212) 806-6006

*Attorneys for Derivative Counterparties*