Hearing Date and Time: April 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: March 31, 2010 at 4:00 p.m. (Prevailing Eastern Time)

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq.
S. Jason Teele, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10022

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Counsel to Optim Energy Marketing and Trading, LLC,*
*f/k/a EnergyCo Marketing and Trading, LLC*

**IN THE UNITED STATES BANKRUPTCY**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtor. | Jointly Administered |

**OPTIM ENERGY MARKETING AND TRADING, LLC'S, F/K/A ENERGYCO MARKETING AND TRADING, LLC, OBJECTION TO DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 9014, AND GENERAL ORDER M-390 AUTHORIZING THE DEBTORS TO IMPLEMENT CLAIMS HEARING PROCEDURES FOR ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR CLAIMS AGAINST DEBTORS**

Optim Energy Marketing and Trading, LLC, f/k/a EnergyCo Marketing and Trading, LLC, ("Optim"), by and through its undersigned counsel, submits this objection to the motion of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for an order pursuant to 11 U.S.C. § 105(a), Bankruptcy Rule 9014, and General Order M-309 authorizing certain claims hearing procedures for alternative dispute resolution procedures for claims against the Debtors (Docket No. 7581) (the "Motion"). In support of this objection, Optim respectfully states:

22199/2
03/31/2010 14067511.4

## RELEVANT BACKGROUND

A.   **Relevant Procedural Background.**

1.   On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings, Inc. ("LBHI") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On and after the Petition Date, the other Debtors in these cases filed voluntary petitions for relief. The Debtors' chapter 11 cases are being jointly administered in this Court.

2.   The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to section 1107 and 1108(a) of the Bankruptcy Code.

3.   On September 17, 2008, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

4.   On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner"), and by order dated January 20, 2009 (Docket No. 2583), the Court approved the U.S. Trustee's appointment of the Examiner. On February 8, 2010, the Examiner filed under seal the report of his investigation and appendices thereto (collectively, the "Report"), and on March 11, 2010, the Examiner filed a final Report available to the public, which was altered only by redacting certain information in underlying documents to address confidentiality concerns.

B.   **Optim's Relationship with the Debtors.**

5.   Optim and Lehman Brothers Commodity Services Inc. ("LBCS") were parties to that certain International Swap Dealers Association, Inc. ("ISDA") Master Agreement (the "Master Agreement") and Credit Support Annex (the "Credit Support Annex") both dated as of October 16, 2007 (collectively the "ISDA Agreement"). Lehman Brothers Holdings Inc. ("LBHI") was the credit support provider as guarantor of LBCS' obligations under the ISDA Agreement.

6.   By letter dated September 25, 2008, Optim, as the non-defaulting party

under the ISDA Agreement, informed LBCS that an Event of Default had occurred under the Master Agreement and that as a result, Optim was designating September 25, 2008 as the Early Termination Date in respect of all outstanding Transactions (as defined in the Master Agreement).

**C.   Preceding Orders of the Court.**

7.   On December 16, 2008, the Court entered an order establishing procedures for, *inter alia*, the termination and settlement of claims of terminated derivatives contracts. *See* Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (Docket No. 2257) (the "December 16 Order"). At the request of several parties-in-interest, including Optim, for the inclusion of language in the December 16 Order protecting the legal and contractual rights of counterparties notwithstanding the procedures established therein, the Court ruled that:

> Nothing in these Termination and Settlement Procedures shall supersede, suspend, or otherwise modify (i) the legal and contractual rights of any Counterparties to the extent such legal and contractual rights are enforceable in the Debtors' cases under the Bankruptcy Code or other applicable law; and (ii) the commencement or continuation of any civil proceeding by any party to a terminated Derivative Contract including, without limitation, any such adversary proceeding commenced or pending in this Court. In addition, nothing in these Termination and Settlement Procedures shall require a Counterparty to enter into any termination agreement.

December 16 Order at ¶¶ 8-9.

**D.   The Motion.**

8.   Through the Motion, the Debtors seek to establish certain claims hearing procedures (the "Claim Hearing Procedures") and alternative dispute resolution procedures (the "ADR Procedures") in order to expedite the process of reconciling the claims filed against the Debtors and the claims scheduled by the Debtors in their Schedules of Assets and Liabilities. The proposed procedures are intentionally designed to provide maximum flexibility and leverage

to the Debtors without regard to the rights of the claimants.  Specifically, the procedures ignore several rights of the counterparty under the ISDA Agreement, as defined below.  In addition, the procedures leave certain decisions, which should be agreed to by both parties, to the Debtors' sole discretion.  For instance, under the Claims Hearing Procedures, the Debtors determine whether the claimant must: (i) first prove the legal sufficiency of the claim; and (ii) proceed to a hearing on the merits of its claim or submit to the court-ordered mediation (each, a "Mediation") if the Debtors objects to the claim(s) on the merits.  Also, the Debtors, in their sole discretion, may adjourn a scheduled hearing at any time.  As a result, the procedures are unnecessarily onerous to the claimants and inconsistent with the contractual rights established previously by the parties and the December 16 Order.

## OBJECTION

9.    The Debtors do not provide the Court with any meaningful justification for their request to ignore the termination procedures set forth in the ISDA Agreement in favor of entirely new procedures drafted solely to benefit the Debtors in resolving claims filed against them.  The plain fact is that the ISDA Agreement contains specific provisions for calculating termination damages, exchanging information and resolving any resulting disputes.  These procedures should not be cast aside merely for the convenience of the Debtors.  While Optim does not object to *reasonable* procedures for the efficient resolution of claims, the procedures proposed by the Debtors are contrary to the express terms of the ISDA Agreement and deprive Optim of certain rights thereunder.  As discussed below, these rights include, but are not limited to, the exchange of information and the methodology to be used in calculating termination damages.  The proposed procedures should be modified so that Optim's rights under the ISDA Agreement are not impacted, or revised to comply with the ISDA Agreement.  Furthermore, the procedures should be modified to give weight to the rights of the holders of claims (each, a "Claimant") during the resolution process.

**A.     Provisions Inconsistent With the ISDA Agreement Must Be Modified**

10.     In particular, Optim is concerned with five elements of the proposed procedures, each of which is inconsistent with specific provisions in the ISDA Agreement or is otherwise duplicative and unnecessary.

11.     <u>First</u>, the occurrence of an Event of Default and declaration of the Early Termination Date results in the termination of all open transactions under the ISDA Agreement, not a termination of the ISDA Agreement itself.  The termination procedures set forth in the ISDA Agreement are unaffected by the filing of the Debtors' chapter 11 cases and the parties remain bound by such terms.  *See*, *e.g.*, 11 U.S.C. § 556.  Moreover, the termination procedures survive the termination of any transactions under the ISDA Agreement.  *See* ISDA Agreement at ¶ 9(c).  By establishing dispute resolution procedures that are at odds with the procedures contained in the ISDA Agreement, the Debtors imply that the ISDA Agreement has no force or effect following an Event of Default and designation of an Early Termination Date.  That is simply not the case under the ISDA Agreement and applicable provisions of the Bankruptcy Code.

12.     <u>Second</u>, the proposed procedures provide that the Debtors, in their discretion, may require Optim to prove the sufficiency of its claim.  However, the Debtors would not provide counterparties with information regarding their estimate of the claims until the parties have entered into Mediation.  This is contrary to the provisions of the ISDA Agreement, which requires the mutual exchange of information setting forth their respective calculations of all amounts due as a result of the termination of transactions thereunder.  In particular, the ISDA Agreement provides:

> On or as soon as reasonably practicable following the occurrence of an Early Termination Date, each party will make the calculations on its part, if any, contemplated by Section 6(e) and will provide to the other party a statement (1) showing, in reasonable detail, such calculations (including all relevant quotations and specifying any amount payable under Section 6(e)) and (2) giving details of the relevant account to which any amount

> payable to it is to be paid. In the absence of written confirmation from the source of a quotation obtained in determining a Market Quotation, the records of the party obtaining such quotation will be conclusive evidence of the existence and accuracy of such quotation.

*See* ISDA Agreement at ¶ 6(d)(i).

13. There is no dispute as to Optim's claim and the magnitude of any disagreement under the ISDA Agreement is unknown until LBCS provides the statement required under paragraph 6 of the ISDA Agreement. Optim submits that the quantum of information set forth in paragraph 6 of the ISDA Agreement (and other relevant paragraphs, such as paragraph 4) should be the minimum amount of information provided by both parties to each other at the outset of resolution process and the proposed procedures should be modified to reflect the existence of such an obligation on the part of the Debtors.

14. <u>Third</u>, the Motion does not specify the methodology that the Debtors will use to calculate the claims, leaving that critical decision entirely up to the Debtors regardless of the contractual requirements under the ISDA Agreement. However, LBCS and Optim have already agreed on the methodology. The ISDA Agreement provides:

> (i) **Events of Default**. If the Early Termination Date results from an Event of Default: -
>
> (1) **First Method and Market Quotation**. If the First Method and Market Quotation apply, the Defaulting Party will pay to the Non-defaulting Party the excess, if a positive number, of (A) the sum of the Settlement Amount (determined by the Non-defaulting Party) in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party over (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party.
>
> (2) **First Method and Loss**. If the First Method and Loss apply, the Defaulting Party will pay to the Non-defaulting Party, if a positive number, the Non-defaulting Party's Loss in respect of this Agreement.
>
> (3) **Second Method and Market Quotation**. If the Second Method and Market Quotation apply, an amount will be payable equal to (A) the sum of the Settlement Amount (determined by the

-6-

08-13555-mg    Doc 7939    Filed 03/31/10    Entered 03/31/10 15:08:29    Main Document
Pg 7 of 11

      Non-defaulting Party) in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party less (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party. If that amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting Party will pay the absolute value of that amount to the Defaulting Party.

      (4) **Second Method and Loss**. If the Second Method and Loss apply, an amount will be payable equal to the Non-defaulting Party's Loss in respect of this Agreement. If that amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting Party will pay the absolute value of that amount to the Defaulting Party.

ISDA Agreement at ¶ 6(e)(i).

    15. Because the parties already have agreed on the method of calculating amounts due under the ISDA Agreement, it would be inappropriate to discard that agreement in favor of an unspecified methodology entirely within the Debtors' discretion. Rather, the procedures proposed in the Motion should expressly incorporate the requirements of paragraph 6(e)(i) (and other relevant paragraphs) of the ISDA Agreement.

    16. <u>Fourth</u>, the parties irrevocably agreed that any dispute arising under the ISDA Agreement will be brought in the United States District Court for the Southern District of New York, and irrevocably waived any objection to such venue on grounds of *forum non conveniens* or jurisdiction. *See* ISDA Agreement, at ¶ 13. The Southern District of New York has well-defined alternate dispute resolution procedures. *See*, *e.g.*, S.D.N.Y. L. Civ. R. 83.12. Under the Local Civil Rules, "[a]ll civil cases other than social security, tax, prisoner civil rights and *pro se* matters are eligible for mediation, whether assigned to Foley Square or White Plains." L. Civ. R. 82.12(e). Moreover, as the Debtors recognize in the Motion, General Order M-390 in effect in this Court governs the mediation of disputes and establishes appropriate mediation procedures. To the extent a dispute arises between a counterparty and the Debtors under the ISDA Agreement, that dispute will necessarily be brought in this Court by way of claim

objection and/or adversary proceeding and the Court may refer the matter to mediation under General Order M-390.

17. Accordingly, the procedures proposed in the Motion are not only duplicative and burdensome, but entirely unnecessary and inappropriate in light of the provisions of the ISDA Agreement and the alternative dispute resolution procedures in effect in the Southern District of New York and this Court. The Court should not countenance the Debtors' attempt to simply cast off their obligations under the ISDA Agreement, especially where, as here, that would deprive Optim of its legal and contractual rights, simply because the Debtors believe that the proposed procedures are more favorable to them in the context of these cases.

18. <u>Fifth</u>, despite seeking procedures to resolve any disputes relating to termination damages under ISDA agreements in which the Debtors believe they have an affirmative claim against the counterparty, the Motion unfairly reserves the Debtors' rights to object to contested claims on other grounds. Motion at ¶ 18. To the extent the Court approves the Motion and the Debtors and any counterparty agree, as a result of mediation, on the claims of the respective parties, that agreement should be final (upon approval by this Court). The Debtors should not later be allowed to object to such claims, essentially upsetting the very efficiency they tout the proposed procedures will create.

19. If the Court is inclined to approve the Motion, Optim submits that any order should be limited to referring any dispute over termination damages to Mediation. The provisions of the ISDA Agreement relating to the calculation of termination damages set forth in paragraph 6 of the ISDA Agreement and provisions relating to providing information should not be disturbed.

20. Finally, to the extent the Motion is at odds with the December 16 Order, the Claims Hearing Procedures and the ADR Procedures should not supplant the procedures established therein.

**B.    Objections to the Proposed Procedures**

21.    In addition to the foregoing objections, Optim has concerns with the five provisions in the proposed procedures.[1] Optim submits that the Claims Hearing Procedures and ADR Procedures be amended as follows to provide a more balanced approach to resolving claims.

22.    The provision stating that Claims Hearings shall be scheduled by Debtors in their sole discretion should be modified. Claims Hearing Procedures at ¶ 3. If the aim of the Claims Hearing Procedures is to create a process to resolve claims more efficiently, the Claimant must be present and ready at the Claims Hearing. Therefore, the Debtors should schedule each contested hearing on a date mutually agreed upon by the Claimant and the Debtors.

23.    Presently, under the Claims Hearing Procedures, subject to the Debtors rights to proceed to a Merits Hearing, the Debtors may, in their sole discretion, proceed to Mediation by serving a Notice of ADR Procedures. Claims Hearing Procedures at ¶ 4(b). As proposed, the provision ignores the rights of the Claimants to seek a hearing on the merits of their claims rather than submit to non-binding mediation, which may not be appropriate for the particular claim and/or dispute. Accordingly, the provision should allow the Claimants to assert their rights to proceed to a Merits Hearing instead of mandatory non-binding Mediation.

24.    In connection with the concern expressed in the preceding paragraph, in the event a Claimant is permitted to opt out of any mediation, the Temporary Litigation Injunction should be dissolved to enable such Claimant to enforce its rights. Claims Hearing Procedures at ¶ 8.

25.    Claims Hearing Procedures at paragraph 6 provides that the Debtors, in their sole discretion, are authorized to adjourn a hearing scheduled in accordance with the Claims Hearing Procedures by providing notice to the Court and the Claimant. However, to avoid unfair leverage being exercised by the Debtors, the provision should be changed to require the mutual

---

[1]    All capitalized terms not defined herein shall have the meaning ascribed to them in the Claims Hearing Procedures and ADR Procedures.

-9-

agreement of both Claimant and the Debtors or an order of this Court to adjourn any scheduled hearing.

26. In paragraph 4(a) of the ADR Procedures, the process for selecting a Mediator allows the Debtors to provide no less than four (4) Mediators from the List of Mediators and then select the Mediator from those not stricken by the Claimant, who can only eliminate a maximum of three (3) Mediators. Given that the Debtors are selecting the List of Mediators, the ADR Procedures should permit the Claimant to at least have input in the choice of the Mediator and not be compelled to accept a choice imposed by the Debtors.

27. The ADR Procedures provide that the Mediation shall be held at a location in New York selected by the Debtors. ADR Procedures at ¶ 4(c). If the Claimants are submitting to non-binding Mediation, the Mediation should be held in New York or such other location agreed to by the Claimant and the Debtors.

28. Optim reserves all of its rights under any contract with the Debtors to which it is a counterparty and under any prior order of this Court and nothing contained herein is an admission or a wavier of any rights or claims that Optim may be entitled to assert in these cases.

**WHEREFORE**, Optim respectfully requests that the Court deny the Motion.

Dated: March 31, 2010
New York, New York

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: /s/ *Michael S. Etkin*
Michael S. Etkin, Esq.
S. Jason Teele, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10022

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Counsel to Optim Energy Marketing and Trading, LLC, f/k/a Optim Marketing and Trading, LLC*