UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                          :
In re                                                     :     Chapter 11 Case No.
                                                          :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :     08-13555 (JMP)
                                                          :
                              Debtors.                    :     (Jointly Administered)
                                                          :
-----------------------------------------------------------------x

### AMENDED ORDER GRANTING DEBTORS' MOTION PURSUANT TO SECTIONS 105, 363, AND 554(a) OF THE BANKRUPTCY CODE FOR AUTHORITY TO ESTABLISH PROCEDURES TO SELL OR ABANDON *DE MINIMIS* ASSETS

Upon the motion, dated January 20, 2010 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), to amend the order, entered on June 17, 2009 [Docket No. 4021], pursuant to sections 105, 363, and 554(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to establish procedures to sell or abandon *de minimis* assets; all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures

---

[1] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

[Docket No. 2837]; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED THAT:

1. The relief requested in the Motion is GRANTED.

2. The De Minimis Sale Procedures are approved as follows:

   i. The *De Minimis* Sale Procedures shall apply only to the sale of assets involving, in each case, assets whose book value, as recorded in the Debtors' books and records ("Book Value"), or sale price, as measured by the amount of cash and other consideration to be received by the Debtors on account of the assets to be sold ("Sale Price"), is $2,000,000.00 or less. The Debtors shall be permitted to sell assets that are encumbered by liens and / or encumbrances only if those liens and / or encumbrances are capable of monetary satisfaction or the holders of those liens and / or encumbrances consent to the sale. Further, the Debtors shall be permitted to sell assets co-owned by a Debtor and a third-party pursuant to the *De Minimis* Sale Procedures only to the extent that the sale does not violate section 363(h) of the Bankruptcy Code.

   ii. If the Debtors propose to sell an asset for an amount that is less than or equal to $300,000.00 as measured by the lesser of Book Value or Sale Price, the Debtors may consummate such a Non-Noticed *De Minimis* Sale without further Court approval, and without providing notice of the Non-Noticed *De Minimis* Sale to any party. The Debtors may take any actions that are reasonable and necessary to close a sale and obtain the sale proceeds, including paying reasonable fees to third-party sale agents in connection with the Non-Noticed *De Minimis* Sale.

   iii. If the Debtors propose to sell a REO Property for an amount that is less than or equal to $850,000.00 as measured by the lesser of Book Value or Sale Price, such a sale will be deemed to be a Non-Noticed *De Minimis* Sale and may be consummated according to the Non-Noticed *De Minimis* Sales procedures described above. Where a REO Property is sold for an amount that is greater than $300,000.00, but less than or equal to $850,000.00 (as measured by the lesser of Book Value or Sale Price) the Debtors shall

include such property in the relevant Monthly Report (as defined below).

iv. Except as provided above, if the Debtors propose to sell an asset for an amount that is greater than $300,000.00 but less than or equal to $2,000,000.00, as measured by the lesser of Book Value or Sale Price, the Debtors shall file a Sale Notice and serve a copy of such Sale Notice by facsimile, overnight delivery or hand delivery on the following parties: (i) the Office of the United States Trustee for the Southern District of New York (the "UST"); (ii) counsel to the Official Committee of Unsecured Creditors (the "Creditors' Committee"); (iii) counsel to the trustee administering the LBI estate (the "LBI Trustee"); (iv) Barclays Capital Inc. ("Barclays") and (v) all known parties holding or asserting liens or encumbrances on the assets that are the subject of the Noticed *De Minimis* Sale and their respective counsel, if known (collectively, the "Interested Parties").

v. Irrespective of monetary threshold, if the Debtors propose to sell ownership of, or grant any exclusive rights under, any copyright, patent or trademark (in each case, whether registered or unregistered), the Debtors shall file a Sale Notice and serve a copy of such Sale Notice by facsimile, overnight delivery or hand delivery on the Creditors' Committee and Barclays. Such transfers shall constitute Noticed De *Minimis Sales* solely as to Barclays and the Creditors' Committee for the purposes of this Order.

vi. The Sale Notice shall include the following information with respect to the Noticed *De Minimis* Sale:

- A description of the asset that is the subject of the Noticed *De Minimis* Sale and its location;

- The identity of the purchaser under the Noticed *De Minimis* Sale and any relationship such party has with the Debtors;

- The identities of any parties known to the Debtors as holding liens or encumbrances on the asset subject to the Noticed *De Minimis* Sale and a statement indicating whether all such liens or encumbrances are capable of monetary satisfaction;

3

- The major economic terms and conditions of the Noticed *De Minimis* Sale;[2] and

- Instructions consistent with the terms described below regarding the procedures to assert objections to the Noticed *De Minimis* Sale ("Objections").

vii. Interested Parties will have ten (10) calendar days (the "Notice Period") to object to a Noticed *De Minimis* Sale. Any Objections to a Noticed *De Minimis* Sale shall be in writing, filed with this Court, and served on the Interested Parties and counsel to the Debtors so as to be received by all parties prior to expiration of the Notice Period. Each Objection shall state with specificity the grounds for the Objection. If an Objection to a Noticed *De Minimis* Sale is properly filed and served: (a) the Objection will be deemed a request for a hearing on the Objection and Noticed *De Minimis* Sale at the next scheduled hearing that is at least ten (10) calendar days after service of the Objection; and (b) the Noticed *De Minimis* Sale may not proceed absent (i) written withdrawal of the Objection; or (ii) entry of an order by the Court specifically approving the Noticed *De Minimis* Sale. If no Objections are filed and served in accordance with the Noticed *De Minimis* Sale Procedures prior to expiration of the Notice Period, the Noticed *De Minimis* Sale will be deemed final and fully authorized, without any further or final approval from this Court.

viii. The Debtors may consummate a Noticed *De Minimis* Sale prior to expiration of the applicable Notice Period if the Debtors obtain each Interested Party's written consent to the Noticed *De Minimis* Sale.

ix. If any significant economic terms of a Noticed *De Minimis* Sale are amended after transmittal of the Sale Notice, but prior to the expiration of the Notice Period, the Debtors shall send a revised Sale Notice to all Interested Parties describing the Noticed *De Minimis* Sale, as amended. If a revised Sale Notice is required, the Notice Period shall be extended for five (5) additional days.

x. On or before the 15th day of every calendar month, the Debtors shall file with the Court, and serve on all parties entitled to notice in these cases, a report (a "Monthly Report") summarizing any Noticed *De Minimis* Sales that were consummated pursuant to the *De Minimis* Sale Procedures during the immediately preceding

---

[2] This information may be provided by attaching the applicable contract or contracts to the Sale Notice.

4

calendar month. With respect to each applicable sale, each Monthly Report will include:

- A description of the asset that was the subject of the Noticed *De Minimis* Sale and its location;

- The identity of the purchaser under the Noticed *De Minimis* Sale and any relationship such party has with the Debtors;

- The identities of any parties known to the Debtors as holding liens or encumbrances on the asset subject to the Noticed *De Minimis* Sale;

- The major economic terms and conditions of the Noticed *De Minimis* Sale; and

- With respect to sales of REO Properties where the lesser of Sale Price or Book Value exceeds $300,000.00, the estimated amount, if any, of cash or other consideration due to any professional retained by the Debtors or any of the Servicers out of the proceeds of such sale.

3. The Sale Notice, in substantially the form annexed to the Initial Motion as Exhibit A, is approved.

4. All buyers shall take assets sold pursuant to the *De Minimis* Sale Procedures "as is" and "where is," without any representations or warranties from the Debtors as to quality or fitness of such assets for either their intended or any particular purpose.

5. Except as expressly provided in paragraph 8, all buyers shall take assets sold by the Debtors, including, but not limited to, real property of LB Rose Ranch, LLC located in Ironbridge Planned Unit Development, Phase II, Garfield County, Colorado ("Rose Ranch Real Property"), pursuant to the procedures approved by this Order free and clear of liens, claims and encumbrances, pursuant to section 363(f) of the Bankruptcy Code. All such liens, claims and encumbrances, including, but not limited to, any liens, claims or encumbrances related to Rose Ranch Real Property, shall attach to the proceeds of the sale.

5

6. To the extent applicable, the ten-day stay of Federal Rule of Bankruptcy Procedure 6004(g) is hereby waived, and this Order shall be effective immediately. Furthermore, Non-Noticed and Noticed *De Minimis* Sales shall be deemed authorized pursuant to the terms of this Order and no further or additional waivers of the ten-day stay of Federal Rule of Bankruptcy Procedure 6004(g) shall be required for the Debtors to consummate a Non-Noticed and / or Noticed *De Minimis* Sale, subject to compliance with the notice and other procedures set forth in the *De Minimis* Sale Procedures.

7. With respect to all Noticed or Non-Noticed *De Minimis* Asset Sales consummated pursuant to this Order, including, but not limited to, sales of Rose Ranch Real Property, this Order shall be sole and sufficient evidence of the transfer of title to any particular purchaser, and a Noticed or Non-Noticed *De Minimis* Asset Sale consummated pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby.

8. With respect to any sale of real property by Debtor LB Rose Ranch LLC ("Rose Ranch") pursuant to the procedures described herein ("Rose Ranch Sales") Rose Ranch is authorized to pay any property taxes that are then due and payable in relation to the real property

6

being sold, out of the proceeds of such sales, and without further motion or notice. For the avoidance of doubt, nothing in this Order limits or otherwise affects Rose Ranch's right to contest such taxes in any manner or for any reason. The provisions of paragraph 5 of the Order regarding the transfer of title free and clear of liens claims and encumbrances shall not apply to (i) the deed restrictions described in that certain Declaration of Deed Restrictions And Agreement Concerning The Sale, Occupancy And Resale Of Property Described As Lots 297 Through 316, Ironbridge Planned Unit Development, [Phase] II, Garfield County, Colorado, dated December 19, 2008, between Rose Ranch, the Garfield County Housing Authority, and the Board of Commissioners of Garfield County, Colorado; or (ii) any lien that may have arisen for real property taxes due to the Treasurer of Garfield County, Colorado.

        9.      In addition, Rose Ranch shall provide written notice, which may be by email, to Ironbridge Homes, LLC, Ironbridge Mountain Cottages, LLC, and Ironbridge Aspen Collection, LLC (collectively, the "Ironbridge Entities"), of the proposed sale of any of the parcels of real property that were the subject of the notices of lien filed with this Court on March 17, 2009 [Docket Nos. 3138 and 3139], at least ten (10) calendar days in advance of the closing of such sales. Alternatively, if Rose Ranch obtains approval from Ironbridge of any such sale, Rose Ranch may close promptly. Further, Rose Ranch shall deposit funds into an escrow account (the "Escrow"), from the proceeds of such sales, after the satisfaction of any property taxes, commissions and other usual or customary closing costs, up to an aggregate of $509,817. Rose Ranch will provide the Ironbridge Entities with quarterly account statements for the Escrow and any funds in the Escrow shall not be disbursed without further order of this Court or upon the consent of Rose Ranch and the applicable Ironbridge Entity. For the avoidance of doubt, nothing in this Order or the establishment or funding of the Escrow shall affect or alter the

7

priority of any claim the Ironbridge Entities may have against Rose Ranch or its property or limit or otherwise affect Rose Ranch's right to contest any of the Ironbridge Entities' purported liens, including those referenced in this paragraph, for any reason.

10. The Debtors are also authorized to lease any of the REO Properties to a third party for a period of 1 year or less without further approval of the court and without providing notice to any party.

11. The Debtors are also authorized to abandon assets that, in their business judgment, are not necessary to their winding down, are of inconsequential value to their estates, or for which the costs associated with a sale exceed the proceeds that would be generated from such sale.

12. The following procedures for the abandonment of assets by the Debtors are hereby authorized and established in these chapter 11 cases: The Debtors shall give notice via facsimile, hand delivery, or overnight delivery service of each proposed abandonment to (i) the UST; (ii) the Creditors' Committee; (iii) the LBI Trustee; (iv) Barclays; and (v) any party known to the Debtors as having an interest in the asset to be abandoned (collectively, the "Abandonment Notice Parties"). Such notice shall describe the asset to be abandoned, the reason for the abandonment, the parties known to the Debtors as having an interest in the asset proposed to be abandoned, and the entity to which the asset is to be abandoned, if any (the "Abandonment Notice").

> i. The Abandonment Notice Parties shall have five (5) business days from the date on which the Abandonment Notice is sent to object to the proposed abandonment. Any such objection shall be in writing and delivered to the Debtors' attorneys prior to the expiration of such period. If no written objection is received by Debtors' attorneys prior to the expiration of such five-day period, the Debtors are authorized to abandon the asset. The Debtors may, at any time, obtain approval to abandon an asset from the

8

       Abandonment Notice Parties. If no written objection is received by Debtors' counsel in accordance with the procedures herein, or if the Debtors obtain such approval from the Abandonment Notice Parties, the Debtors may abandon an asset promptly.

   ii. If any Abandonment Notice Party delivers an objection to the proposed abandonment so that it is received by Debtors' counsel on or before the fifth business day after the Abandonment Notice is sent, the Debtors and the objecting Abandonment Notice Party shall use good faith efforts to resolve the objection. If the Debtors and the objecting Abandonment Notice Party are unable to achieve a consensual resolution, the Debtors shall not proceed with the proposed abandonment pursuant to these procedures, but may seek Court approval of the proposed abandonment upon expedited notice and an opportunity for a hearing, subject to the Court's availability.

   iii. On or before the 15th day of every calendar month, the Debtors shall file with the Court an addendum to the Monthly Report setting forth all abandonments by the Debtors during such month pursuant to the authority granted hereby. The reports shall set forth a description of the asset, the reason for the abandonment, and the party to which the property was abandoned, if any.

13. The Abandonment Notice, in substantially the form annexed to the Initial Motion as <u>Exhibit B</u>, is approved.

14. Nothing in this Order shall be construed to prevent the Debtors, in their sole discretion, from seeking this Court's approval at any time of any proposed sale or abandonment after notice and an opportunity for a hearing.

15. The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

16. For the avoidance of doubt, nothing in this Order shall (i) authorize the Debtors to sell, license or otherwise encumber any assets transferred by any of the Debtors or Lehman Brothers Inc. to Barclays; or (ii) impair or otherwise modify the rights of Barclays or the

9

Debtors pursuant to the Stipulation and Order Between the Debtors and Barclays Capital Inc. Concerning Certain Gift Merchandise.  [Docket No. 3321].

17. This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

Dated: March 31, 2010
      New York, New York

                                      *s/ James M. Peck*
                                  UNITED STATES BANKRUPTCY JUDGE