Hearing Date and Time: April 9, 2010 at 10:00 a.m.
Objection Deadline: April 1, 2010 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11 Case No.<br>08-13555 (JMP)<br>(Jointly Administered) |
| In re<br><br>LEHMAN BROTHERS INC.,<br><br>Debtor. | Case No. 08-01420 (JMP) |

**MEMORANDUM OF BARCLAYS CAPITAL INC. IN OPPOSITION TO
MOTION IN LIMINE SEEKING TO COMPEL ADMISSION OF DISPUTED FACTS**

Barclays Capital Inc. ("Barclays") objects as follows to the Rule 60 Movants' motion in limine seeking to compel binding admissions to certain statements of purported facts (Doc. No. 7502), including numerous statements that are contradicted by the discovery record or are based on inadmissible testimony.

**PRELIMINARY STATEMENT**

1.     On December 15, 2009, the Rule 60 Movants served Barclays with a 739-paragraph "Statement of Undisputed Material Facts" ("Movants' Statement"). On January 29, 2010, Barclays served responses to each of the 739 paragraphs.[1] A substantial number of Movants' "statements of undisputed material fact" are directly contradicted by the record

---

[1] On March 5, 2010, Barclays served a corrected version of its Response to Movants' Statement of Undisputed Material Facts ("Barclays' Response"), correcting certain typographical errors. A copy of Barclays' Response is attached as Exhibit A.

evidence. Many are based on inadmissible evidence, including speculation and hearsay testimony of witnesses who stated clearly that they had no personal knowledge of the matters cited by Movants. Still others are completely unsupported by the record. There is no basis for imposing on Barclays alternative responses that Movants would have preferred, particularly given the specific record of admissible evidence that Barclays cites.

2. Movants are improperly asking this Court to resolve controverted material facts not through an evidentiary hearing, which this Court may decide to order, but through a motion in limine. That is improper and would result in grave legal error. The purpose of a motion in limine is "to enable a court to rule on the admissibility of disputed evidence in advance of trial," not "to narrow, limit, or fix the issues for trial." *Securitron Magnalock Corp. v. Schnabolk*, No. 89 Civ. 6731, 1994 WL 320708, at *1 (S.D.N.Y. July 1, 1994). A motion in limine may not be used to pre-decide or remove from consideration one party's positions, particularly where, as here, Barclays has cited extensively to admissible evidence in support of its positions.

3. Although hundreds of Barclays' detailed responses either did not dispute a statement by Movants or merely rephrased a point to make it accurate, Movants declined to raise with Barclays whatever concerns they had. They made no effort to determine whether the parties could properly agree on certain statements. Indeed, they made no good faith effort whatsoever to narrow the issues.

## ARGUMENT

### A. The Evidence Contradicts Many Of Movants' "Fact Statements."

4. At least 55 of the statements that Movants ask the Court to deem admitted are contradicted by record evidence. Attached as Exhibit B is an annotated version of Movants' Exhibit B, identifying those statements that Barclays has properly disputed based on citation to

2

admissible record evidence.[2] The following examples of statements that the Movants now ask the Court to deem admitted illustrate precisely why Barclays properly disputed them.

5. Movants seek to compel an admission that: "*Lehman's books fairly reflected the value of Lehman's assets on September 15 and 16, 2008.*" (Movants' Statement, ¶ 171; Motion Ex. B ¶ 194.) (emphasis added). There is no basis for Movants to ask the Court to compel an admission to this and other points that are so clearly controverted. As the Examiner's Report found and as former Treasury Secretary Paulson has written, many financial executives had serious doubts about the validity of Lehman's marks. Secretary Paulson has recently described his concerns as follows: ". . . I shared my concerns about Lehman with Josh Bolten at the White House. 'This is one of the most difficult situations I could have imagined,' I said. 'There's a big difference between what Lehman assets were marked at and what the buyers are willing to pay.'" Henry Paulson, *On The Brink* at page 205. The Examiner's Report found that Bank of America senior executives had the same concerns, specifically that "Lehman's marks were 'out of line with B of A's'" (Examiner's Report at page 209). The Examiner also found that the Barclays team "determined that assets were materially mismarked on Lehman's books" (Examiner's Report at page 2143). More generally, the Examiner found that "there is evidence indicating that Lehman's valuations were inaccurate or did not properly allow for firm-wide illiquidity and/or the appropriate levels of current distress" (Examiner's Report at page 1574).

6. The record evidence shows that, as of September 15 and 16, 2008, the marks on Lehman's books for many securities were overstated and outdated (particularly in light of the

---

[2] Barclays' Exhibit B places each of the statements on Movants' Exhibit B into one of seven categories: (1) 360 statements that Barclays did not dispute or for which reformulations should not be in dispute; (2) 55 statements that are contradicted by the record evidence; (3) 32 statements that are unsupported by any admissible evidence; (4) 11 statements that are unsupported by the evidence Movants cite; (5) five statements that are misleading; (6) 24 statements that are immaterial; and (7) 65 additional statements that Barclays continues to dispute for the reasons indicated in Barclays' Response.

3

illiquid nature of many of those securities and the volatile state of the markets), and did not take into account the effect of Lehman's bankruptcy. *See* Barclays' Response ¶ 171. Lehman's president Bart McDade testified that, "the Lehman books hadn't been marked since Friday evening, the 12th, if that's what you're describing as the book value of the securities. What we marked to market is the market value of those securities. The markets changed dramatically between the 12th, the last process for marking, and when this was done in the middle of the evening that early morning of the 16th." BCI Ex. 85 [McDade Dep. Tr.] at 56:8-24.[3] Current Lehman CEO Bryan Marsal agreed: "The marks were out of date." BCI Ex. 84 [Marsal Dep. Tr.] at 169:15. And according to one of Barclays' senior trading executives, Michael Keegan, "we did have problems with the valuations with a number of the assets that Lehman had on the books. And overall our conclusion from the weekend was that Lehman was aggressive with the rest of the valuations. And …we went back to them on Monday and told them that … we didn't agree with certain prices." BCI Ex. 73 [Keegan Dep. Tr.] at 25:4-12. Testimony from other witnesses, including former Lehman executives Paolo Tonucci and Alex Kirk and Lehman's lead lawyer Harvey Miller, also controverts or undercuts Movants "fact statement." *See* BCI Ex. 98 [Tonucci Dep. Tr.] at 140:6-142:2; BCI Ex. 87 [Miller Dep. Tr.] at 25:21-26:3, 112:17-114:2; BCI Ex. 78 [Kirk Dep. Tr.] at 95:20-96:21; BCI Ex. 13 [October 8, 2008 Report by Alvarez & Marsal to Creditors' Committee].

7. Movants also seek to compel admissions to the following statements suggesting that Barclays made an improper offer of employment to Lehman's key negotiator, Bart McDade: "*McDade's letter from Barclays offering employment* is dated September 18, 2008." and "The

---

[3] Citations in this memorandum to "BCI Ex. __" refer to specific numbered Exhibits contained within the Appendix To Memorandum Of Barclays Capital Inc. In Opposition To The Rule 60 Motions And In Support Of Motion Of Barclays Capital Inc. To Enforce The Sale Order And Secure Delivery Of All Undelivered Assets (Doc. Nos. 6816 - 6823).

4

*offer of employment to McDade proposed by Barclays* was worth approximately ▉▉▉" and "The *offer of employment to McDade proposed by Barclays* would have entitled McDade to a 2008 Guaranteed Cash Bonus of ▉▉▉; a 2008 Share Award of ▉▉▉; and a 2009 Special Cash Award of ▉▉▉, half payable on the first anniversary of his employment with Barclays and half payable on the second anniversary of his employment with Barclays." (Movants' Statement ¶¶ 75-77; Motion Ex. B ¶¶ 93-95.) (emphasis added).

8. Those statements concerning an offer to Mr. McDade are inaccurate and highly misleading, because the record evidence is clear that Barclays never actually proposed an offer to Mr. McDade. *See* Barclays' Response ¶¶ 75-77. During the September 16, 2008 meeting of Lehman's Board of Directors, Weil Gotshal and Simpson Thacher instructed that no such discussions between McDade and Barclays should occur, see BCI Ex. 104 [Minutes of the September 16, 2008 LBHI/LBI Board Meeting] at p. 3, and none did. Although Barclays' personnel had prepared a draft employment contract, the evidence is unrebutted that the contract was never actually presented or proposed to Mr. McDade. Mr. McDade confirmed as much: "No offer was made. I just continued the Lehman salary that I had." BCI Ex. 85 [McDade Dep. Tr.] at 197:14-15. He also testified that he had never even seen the draft contract prior to preparing with his attorney for his deposition. *Id.* at 196:5-8.

9. As yet another example, Movants also seek to compel an admission that: "*The Clarification Letter* was never presented to the Court in a motion for approval and *has never been the subject of a court order approving it.*" (Movants' Statement ¶ 516; Motion Ex. B ¶ 430.) (emphasis added). This statement asks Barclays to disregard the plain text of the Sale Order, which defines the final, approved Purchase Agreement to include the Clarification Letter. *See* Barclays' Response ¶ 516 (citing BCI Ex. 16 [Sale Order] at pp. 1, 2, 12, 21). Movants'

5

Statement ¶ 516 also asks Barclays to disregard numerous admissions by Movants that, in September 2008, they did not believe, and never asserted, that further approval of the Clarification Letter was necessary. *See* Barclays' Memorandum in Opposition to Rule 60 Motions at pp. 105-119. Further, Weil Gotshal stated at the Sale Hearing that the Clarification Letter was being drafted and that there would be further negotiation and drafting after the hearing. BCI Ex 49 [Sept. 19, 2008 Hearing Tr.] at 48:5-17, 54:18-20, 172:20-173:9. The Court approved the sale over strong objections that the sale documents were "not final" and had not been made available for review during the Sale Hearing. *Id.* at 172:20-175:9. The Sale Order explicitly approved the sale and authorized the transaction to close without further order of the Court. BCI Ex. 16 [Sale Order] at § 25. Barclays should not be compelled to admit to a statement that disregards these fundamental facts.

### B. Many Of Movants' Statements Are Based On Hearsay Or Speculation.

10. At least 32 of the statements disputed by Barclays that Movants ask the Court to deem admitted are based on inadmissible evidence, including speculation and hearsay testimony of witnesses who stated clearly that they had no personal knowledge or involvement in the matters about which they were questioned. The following examples illustrate why Barclays properly disputed those statements.

11. Movants seek to compel admissions to testimony by former Lehman Chief Financial Officer Ian Lowitt concerning negotiations between Barclays and Lehman. (Movants' Statement ¶ 172; Motion Ex. B ¶ 195.) Mr. Lowitt testified, however, that he "didn't have a role in negotiating the transaction." BCI Ex. 83 [Lowitt Dep. Tr.] at 22:7-8. Barclays should not be compelled to admit to testimony by Mr. Lowitt that is inadmissible hearsay and speculation about negotiations in which he did not participate. (Barclays' Response ¶ 172.)

12. Similarly, Movants seek to compel admissions to hearsay testimony by former Lehman Global Treasurer Paolo Tonucci concerning negotiations between Barclays and Lehman. (Movants' Statement ¶ 182; Motion Ex. B ¶ 203.) Mr. Tonucci testified that he was not "involved in any negotiations with Barclays about the purchase by Barclays of Lehman's North American assets." BCI Ex. 98 [Tonucci Dep. Tr.] at 26:25-27:8; *see also id.* at 126:6-11, 137:2-8, 217:13-19. Barclays should not be required to admit to testimony by Mr. Tonucci that is inadmissible hearsay and speculation concerning negotiations in which he did not participate. Barclays' Response ¶ 182.

13. Movants also seek to compel admissions to testimony concerning negotiations between Barclays and Lehman by former Lehman attorney Steven Berkenfeld. (Movants' Statement ¶¶ 260, 263, 268; Motion Ex. B ¶¶ 261, 264, 268.) Mr. Berkenfeld testified that he "was not involved in the negotiation of the business deal" and was involved only in the "lawyering of the Asset Purchase Agreement." BCI Ex. 55 [Berkenfeld Dep. Tr.] at 27:13-15. Here again, Barclays should not be required to admit to testimony by Mr. Berkenfeld that is inadmissible speculation about business negotiations in which he did not participate. Barclays' Responses ¶¶ 261-262, 264, 268.

14. The motion in limine is an improper attempt to compel admissions to many statements that were elicited at deposition by Movants' counsel based on implicit or overt invitations to speculate.

C. **Movants Cannot Establish That Barclays' Responses Are Inappropriate.**

15. Movants acknowledge that Barclays properly disputed over 200 of their original 739 statements, as they do not challenge any of those 200 responses in their extensive chart. *Compare* Barclays' Response *with* Motion Ex. B. Movants also must acknowledge that Barclays

7

either did not dispute or properly reformulated more than 315 statements, which they do list on their chart. *See generally* Motion Ex. B. Nevertheless, in an attempt to create the inaccurate impression that Barclays unreasonably disputed certain facts, Movants assert that Barclays responded only by "offering argument" about 260 additional statements that, according to Movants, "cannot legitimately be disputed." (Motion at 2.) As the examples described above illustrate, Barclays disputed those 260 statements in good faith based on careful citation to the record.

### D. A Motion In Limine May Not Be Used To Foreclose Presentation Of Admissible Evidence On Controverted Issues.

16. In support of their request that the Court mandate certain facts to be admitted, Movants rely heavily on language from *Gianullo v. City of New York*, 322 F.3d 139, 140 (2d. Cir 2003). Movants neglect to mention *Gianullo*'s holding that "where the movant 'fail[s] to fulfill its initial burden' of providing *admissible evidence* of the *material facts* entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." *Id.* at 140-41 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (quoting Fed.R.Civ.P. 56(e) Advisory Committee note (1963)) (emphasis added).

17. In *Gianullo*, the Second Circuit held, as it had previously in *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir.2001), that "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." Here, as in *Gianullo* and *Holtz*, the record does not support certain of Movants' statements. Accordingly, even if Barclays had not specifically controverted those assertions, *the unsupported assertions must nonetheless be disregarded and*

8

*the record independently reviewed.*"  *Id.* at 140 (emphasis added); *see also Holtz,* 258 F.3d at 74 ("Where the record does not support the assertions in a statement made pursuant to the local rule requiring statements of undisputed and disputed facts at the summary judgment stage, those assertions should be disregarded and the record reviewed independently.").

18. As the examples above illustrate, many of Movants' statements are either contradicted by admissible evidence or are based on unreliable and inadmissible evidence. (*See also* Motion Ex. B ¶¶ 78, 82, 121, 205, 207, 208, 244, 368, 369, 417, 440.) Many other statements are immaterial. (*See, e.g.*, Motion Ex. B ¶¶ 79-81, 105, 129, 141-143, 176, 178, 261-269, 526, 532-533, 536, 538.) There is no basis under *Gianullo* to deem unsupported facts admitted or to compel admissions to statements that are not material or are not based on admissible evidence.

### E. Movants Should Have Engaged In A Meet-And-Confer Before Bringing Their Motion.

19. Before bringing their motion, Movants should have engaged in a good faith effort to narrow (or at least confirm) the issues in dispute through a meet-and-confer process. The meet and confer process is designed to "embod[y] a policy of encouraging voluntary resolution of pre-trial disputes, in the interest of judicial and client economy and efficient processing of cases." *Care Envtl. Corp. v. M2 Techs., Inc.,* No. 05-CV-1600, 2006 WL 1517742, at *3 (E.D.N.Y. May 30, 2006) *citing Avent v. Solfaro*, 210 F.R.D. 91, 95 (S.D.N.Y. 2002); *Matsushita Elec. Corp. of America v. 212 Copiers Corp.*, No. 93 Civ. 3243, 1996 WL 87245, at *1 (S.D.N.Y., Feb. 29, 1996).

20. Had Movants first engaged in a meet-and-confer process, numerous errors in their submission could have been corrected. For example, Exhibit B fails to list 31 facts Barclays

9

does not dispute.[4] Also, a number of the Barclays' "reformulations" which Movants' agree to "accept" in Exhibit B are only partial quotations or paraphrases of Barclays' response to Movants' original statements and do not accurately convey Barclays' position. (*See, e.g.,* Motion Ex. B, ¶¶ 16, 27, 116, 256, 276, 290, 367, 431, 435, 509). And Barclays has expressly denied at least one of the key "facts" that Movants' Exhibit B represents is "Not Disputed." (Motion Ex. B, ¶ 272).

## CONCLUSION

For the reasons set forth above, Barclays respectfully requests that the Court deny the motion in limine and not compel admissions to statements that Barclays had a good faith basis to dispute.

Dated: New York, New York
April 1, 2010

BOIES, SCHILLER & FLEXNER LLP

By:_____
Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Barclays Capital Inc.*

---

[4] Movants' Exhibit B fails to list the following paragraphs from Movants' Statement of Undisputed Material Facts that Barclays' Response did not dispute: ¶¶ 116, 352, 355, 398, 399, 405-410, 423, 427, 467, 509, 553, 630, 690, 707-708, 724, 728-729, 731-733, 735-739.