**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                              :
**In re:**                                                    :
                                                              :    **Chapter 11**
                                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :    **Case No. 08-13555 (JMP)**
                                                              :
                                                              :    **(Jointly Administered)**
                                          **Debtors.**    :
                                                              :
-------------------------------------------------------------------x

### LIMITED OBJECTION TO DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 9014, AND GENERAL ORDER M-390 AUTHORIZING THE DEBTORS TO IMPLEMENT CLAIMS HEARING PROCEDURES AND ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR CLAIMS AGAINST DEBTORS

D. Geoffrey Hunter, as the duly authorized foreign representative of Lehman Re, Ltd. ("Lehman Re"), and Pulsar Re, Ltd., ("Pulsar"), submit this limited objection (the "Objection") to the *Debtors' Motion Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 901, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims against Debtors* [Docket No. 7581] (the "Motion").[1]

### Background

1.      Pulsar is a Class 3 Bermuda reinsurance company that engaged in reinsurance transactions with non-debtor affiliate Lehman Re.

2.      Pulsar's and Lehman Re's business relationship was governed in part by a Quota Share Retrocessional Agreement ("QSRA") between Pulsar and Lehman Re and a Collateral

---

[1]    Mr. Hunter and Pulsar were provided with an extension of time within which to file an objection to the Motion until April 2, 2010 in an effort to resolve the parties' issues, and the parties hope to engage in a constructive dialogue to resolve their objections prior to a hearing on the Motion.

Security and Control Agreement among Pulsar, Lehman Re, and Lehman Brothers, Inc. ("LBI"), as custodian (the "CSCA"). Under the CSCA, Pulsar was required to post, and did post, collateral for security of its reinsurance obligations. Prior to September 15, 2008, Pulsar posted approximately $450,000,000 in cash as collateral. The CSCA provided that these funds were to be held by LBI, as custodian.

3.    Pulsar's cash collateral, along with approximately $29,000,000 in net premiums due to Pulsar, was used in certain repurchase (or "repo") transactions between Lehman Re and Lehman Commercial Paper Inc. ("LCPI"), pursuant to a Master Repurchase Agreement ("MRA") among LCPI and LBI, on the one hand, and Lehman Re on the other. The use of Pulsar's cash collateral and net premiums in this manner was not permitted under the express terms of the CSCA.

4.    Prior to October 5, 2008, through one or more repo transactions conducted under the MRA, Lehman Re purchased from LCPI -- using cash collateral and other funds posted by Pulsar and others -- 23 commercial mortgage loans and 850 residential mortgage loans for an aggregate purchase price of approximately $718,956,000. Pulsar believes that this cash may have flowed directly or indirectly to LBHI.

5.    On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI") and several of its subsidiaries commenced voluntary proceedings under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York. On October 5, 2008, Lehman Commercial Paper Inc. ("LCPI") commenced a voluntary proceeding in the Bankruptcy Court under chapter 11 of title 11 of the United States Code.

6.    On September 23, 2008, a winding-up proceeding (the "Bermuda Proceeding") was commenced on behalf of Lehman Re in the Supreme Court of Bermuda (the "Bermuda Court").

16656739.2                                                    2

(On September 24, 2009, this Court recognized Mr. Hunter, a provisional liquidator appointed by the Bermuda Court, as a foreign representative, and further recognized the Bermuda Proceeding as a foreign main proceeding.)

7.      It ultimately was determined that the mortgage pool sold to Lehman Re was in fact worth a fraction of the approximately $719 million paid for it.

8.      Pulsar believes that LBHI conspired with LCPI, LBI, and/or other Lehman entities, including Lehman Re, to exchange Lehman Re's cash, including Pulsar's cash collateral and net premiums, for assets worth a fraction of that cash.  On September 22, 2009, Pulsar timely filed claims against LCPI and LBHI [Docket Nos. 27453 and 29770] (the "Claims"), including without limitation claims for constructive trust, conversion, unjust enrichment, tortious interference, fraud, and/or conspiracy.  Separately, on behalf of Mr.Hunter, Lehman Re has filed claims against the various Lehman U.S. Debtors for, among other things, breach of the MRA, and on account of certain intercompany claims.

## The Claims Hearing and ADR Procedures

9.      The Debtors seek approval of certain claims and alternative dispute resolution procedures (the "ADR Procedures") to, among other things, require the Debtors and claimants in certain instances to mediate their claims.

10.      As set forth in the Motion, the claims reconciliation process is triggered by the Debtors' objection to a claim (each, a "Contested Claim").  If the Debtors object on the basis that a Contested Claim fails to properly state a claim, the court will schedule a sufficiency hearing (the "Sufficiency Hearing").[2]  If the Debtors' objection is based on the merits of a Contested Claim,

---

[2]    The Debtors may, at their own discretion, elect to bypass the Sufficiency Hearing by sending a claimant a notice of ADR Procedures or a notice of Merits Hearing (as defined herein).

then at the Debtors' discretion, a claimant must participate in compulsory, non-binding mediation

governed by the ADR Procedures.  If the Debtors mark a claim for mediation, they must provide a

claimant with a notice of ADR Procedures 45 days prior to a hearing on the objection to such

claim.  Mediation must occur within 60 calendar days of service of the notice of ADR Procedures.

If the Debtors and the claimant are unable to settle a claim through mediation, or if the Debtors, in

their sole discretion, elect to bypass mediation, the parties will advance to an evidentiary hearing

before the Court on the merits of a claim (the "Merits Hearing").[3]  The ADR Procedures do not

establish a deadline by which the mediation must conclude, stating only that the mediation shall

conclude at the mediator's discretion.

11.    Further, the Debtors have proposed a temporary litigation injunction that will take

effect immediately upon the service of an objection to a claim.  The injunction is extremely broad

in scope, enjoining a claimant from "commencing or continuing any action or proceeding, or

engaging in any discovery, in any manner in any place . . . seeking to establish, liquidate, collect

on, or otherwise enforce any and all Contested Claims."  The injunction only expires upon either

settlement of a claim or, if the ADR Procedures do not yield a settlement, upon entry of a

scheduling order setting forth the rules and procedures applicable to a Merits Hearing.

Additionally, the injunction imposes a stay against *all* claims filed by a claimant, even if certain

claims are not the subject of a claims objection (i.e., do not become Contested Claims).

---

[3]    The Debtors make reference to a Merits Hearing and a claims objection hearing (the "Claims Objection Hearing").  See Claims Hearing Procedures and Alternative Dispute Resolution Procedures at ¶¶ 4(b), 4(c) and 8. However, the Merits Hearing and the Claims Objection Hearing appear to be defined identically and thus it is not readily apparent the difference between the two.  For the purposes of this Objection, they are assumed to be identical.

**Objection**

12.     While Lehman Re and Pulsar do not object to the concept of mediation in principle,

they believe that the ADR Procedures must be modified to protect the rights of claimants and

avoid an improper imbalance of the claim resolution playing field in favor of the Debtors.

### A.     The Mediation Cannot Continue Indefinitely.

13.     Given that the ADR Procedures impose a temporary litigation injunction while the

parties are mediating, it becomes essential to ensure that there is an appropriate end date to the

mediation process so that the mediation process itself never becomes a litigation tactic. Pursuant

to ¶4 of the ADR Procedures, the Mediation must commence within 60 days of service of a notice

of ADR Procedures, but the Mediator has the discretion to continue the mediation indefinitely.

There must be a mechanism in place to terminate the mediation. Pulsar proposes that mediation

should conclude automatically following the first mediation session, unless both parties agree that

it would be beneficial to conduct additional mediation sessions.

14.     Moreover, it should be made clear that the temporary litigation injunction is lifted

automatically upon the conclusion of the mediation.[4]  Parties can then always have the option to

agree to continue settlement discussions (with or without the mediator) even though the temporary

litigation injunction has been lifted.

### B.     The Court May Intervene If the Debtors Cause Undue Delay.

15.     The proposed ADR Procedures give the Debtors unfettered discretion to schedule a

Sufficiency Hearing or a Claims Objection Hearing. See Claims Hearing Procedures at ¶¶3 and 4.

---

[4]     Pulsar also questions the ability of the Debtors to complete the mediation process during the 60 day window after service of a mediation notice, given the number of claims and the number of proposed mediators. Pulsar suggests that the ADR Procedures make clear that a mediation notice may not be served unless the Debtors in good faith believe that the mediation (taking into account the mediators' workload and other scheduling issues) can be completed within 60 days.

The Debtors also have sole discretion to adjourn any Claims Objection Hearing. See ADR Procedures at ¶1. In addition to the Debtors' total control of scheduling matters, mediation also gives the Debtors the potential opportunity to delay the reconciliation and resolution of a claim without regard for the expenditure of resources on the part of a claimant. The Procedures should be modified to include a "safety valve" provision that always gives parties the right to request from this Court relief from the ADR Procedures if they believe in good faith that there is undue delay or abuse of the ADR Procedures (perhaps by a letter to the Court requesting a scheduling conference rather than through a more formal motion practice).

**C.      The Mediation and Injunction Must Be Claim Specific.**

16.      As currently drafted, when the Debtors serve a notice of mediation to a claimant, there is a temporary litigation injunction put into place with respect to all of the claimant's claims. The ADR Procedures should be modified to make clear that the temporary litigation injunction should only apply to the claims that are the subject of mediation.

**D.      More Detail Is Needed Regarding the Evidentiary Hearing.**

17.      In the event that mediation does not yield a settlement of all or a portion of a Contested Claim, the ADR Procedures direct that the Parties will proceed to resolve a Contested Claim via an evidentiary hearing before the Court. See ADR Procedures at ¶1. First, the Debtors must distinguish between a Merits Hearing and a Claims Objection Hearing, as both terms appear in the Procedures without any distinguishing characteristics. Second, the Debtors have not provided sufficient detail as to how such hearings will be structured and administered. The only detail offered with respect to the Merits Hearing is that following Mediation, the rules and procedures governing the Merits Hearing will be set forth in any scheduling order issued by the Court in connection with the Merits Hearing. See ADR Procedures at ¶1. The Debtors have provided no detail on the mechanics of how the Parties will go about getting such an order agreed

or approved.   The ADR Procedures should be modified to require that a mandatory topic of

mediation is the form of scheduling order with respect to the Merits Hearing in the event that the

parties do not agree to resolve the Claim through Mediation.   The ADR Procedures should also be

modified to require that within (5) days of termination of mediation, the Parties must negotiate a

form of scheduling order and related Merits Hearing procedures, and present such order and

procedures to the Court.   In the event that the Parties are unable to agree on a scheduling order and

related procedures within that period of time, the parties must promptly schedule a scheduling

conference to finalize such a scheduling order.

<u>Conclusion</u>

18.     Based on the foregoing, Mr. Hunter and Pulsar request that the Court only approve

the Motion based on the proposed modifications contained herein.

Dated:  April 2, 2010
       New York, New York

/s/ James H. M. Sprayregen
**KIRKLAND & ELLIS LLP**
James H.M. Sprayregen
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

**KIRKLAND & ELLIS LLP**
Andrew R. McGaan
David R. Seligman
Jeffrey W. Gettleman
Amy Crawford
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel for Lehman Re, Ltd. and Pulsar Re, Ltd.*

- and -

**CADWALADER, WICKERSHAM & TAFT
LLP**
Gregory M. Petrick
One World Financial Center
New York, New York 10281
Telephone:      (212) 504-6000
Facsimile:      (212) 504-6666

*Counsel for Lehman Re, Ltd.*