UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| Lehman Brothers Holdings Inc., et al. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF CERTAIN LBSF DERIVATIVE CREDITORS TO DEBTORS'
MOTION PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE
AND RULE 6004(h) OF THE BANKRUPTCY RULES FOR AUTHORIZATION TO
ENTER INTO CERTAIN ASSET MANAGEMENT AND RELATED AGREEMENTS**

Bank of America, N.A., Credit Suisse International, D. E. Shaw Composite Portfolios, L.L.C., D. E. Shaw Oculus Portfolios, L.L.C., Deutsche Bank AG, Goldman Sachs Bank USA (successor by merger to Goldman Sachs Capital Markets, L.P.), Goldman Sachs International, Merrill Lynch International, Morgan Stanley Capital Services Inc., Morgan Stanley & Co. International plc., certain funds advised by Oaktree Capital Management, L.P. or their respective subsidiaries, and The Royal Bank of Scotland plc. (collectively, the "Objectors"), who are significant derivatives creditors of Lehman Brothers Special Financing Inc. ("LBSF"), each by and through its undersigned counsel, hereby object to Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Rule 6004(h) of the Bankruptcy Rules for Authorization to Enter Into Certain Asset Management and Related Agreements, dated as of March 15, 2010 (Docket No. 7579) (the "Motion").

In support of this Objection, the Objectors respectfully state as follows:

## OVERVIEW OF OBJECTION

1.  Debtors filed the Motion on the same day as the proposed Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, dated as of March 15, 2010 (Docket No. 7572) (the "Plan"), and indeed, the relief sought in the Motion is inseparable from the proposed Plan. Through the Motion, Debtors attempt to effect the reorganization of their asset management operations, creating a group of new entities (together, "LAMCO"), that will "undertak[e] the administration of the Debtors' assets" under the Plan. See Plan at preamble. The Objectors do not object in concept to the creation of LAMCO. Conceptually, LAMCO could be an innovative approach to retaining valuable personnel and creating additional value for the benefit of creditors. However, neither the timing nor the procedural vehicle chosen by Debtors for launching LAMCO is appropriate and the Motion should be denied without prejudice or continued to some future date.

2.  This proposed transaction is not an arms-length sale to a third party. Rather, it is an insider transaction that involves the potential diversion of corporate opportunity by the estate of Lehman Brothers Holdings Inc. ("LBHI") to the detriment of the estates of the other Debtors in these cases (the "Debtor Affiliates"). Although LAMCO was created and developed based on funding received from all of the Debtors, including principally LBSF, the Motion proposes to give the LBHI estate sole ownership and control over LAMCO. Additionally, only the Official Committee of Unsecured Creditors for LBHI has to date been given an opportunity to diligence the proposal. Disclosure is the "key" to chapter 11, In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983), and other creditors must be given access to such information. Here, the need for transparency is particularly acute because Debtors did not file a disclosure statement with the Plan. The upcoming plan process will allow all of the

creditor constituencies to learn more about the proposal and will provide an opportunity for careful negotiation of issues relating to LAMCO's ownership and governance and how LAMCO will interface with the other Debtor entities post-confirmation. Debtors have provided no reasonable justification to short-cut that collaborative process by implementing a proposal that, on its face, appears to be unfair to LBSF creditors as well as to other Debtor Affiliate creditor constituencies.

## ARGUMENT

**I.      The Relief Sought by Debtors in the Motion is Premature and Should Be Part of the Plan Negotiation Process**

3. The timing and procedural vehicle by which Debtors propose LAMCO begin its operations are inappropriate and the relief sought in the Motion is premature. Although Debtors purport to justify the Motion as an asset sale under section 363 of the Bankruptcy Code (the "<u>Code</u>") and under section 105's catch-all provision, they cite no precedent for the application of these provisions to an insider transaction like the one here. In effect, what is being proposed is a reorganization plan for Debtors' employees and management separate, apart, and ahead of the reorganization plan for creditors. This turns the purpose of chapter 11, which is to foster negotiation and compromise between the debtor's management, its creditors, and its stockholders, on its head. <u>See</u> Report of the Committee on the Judiciary, House of Representatives, to accompany H.R. 8200, H.R. Rep. No. 95-595, 95th Cong. 1st Sess. (1977), <u>reprinted in</u> Collier on Bankruptcy (appendix), 221 (16th ed. 2009). These procedural defects are compounded by the potential conflict between the LBHI estate, which is the only creditor constituency directly benefiting from this proposal, and the estates of the Debtor Affiliates.

4. The issues presented here are those that appropriately should be considered as part of Debtors' plan process. <u>First</u>, the Motion calls for the creation of the

LAMCO entities and asks this Court to approve a complex limited liability company agreement (the "LLC Agreement") for one of these entities – an agreement which supposedly binds LAMCO to adhere to certain restrictions to ensure compliance with the protections afforded to creditors by chapter 11. Motion ¶ 3, 5, Ex. E. The LLC Agreement also provides that LAMCO will be managed by a board comprised of LBHI and LAMCO personnel, with LBHI personnel being a majority of the board. Motion ¶ 25. The only input in LAMCO's governance that Debtors propose to grant to any creditor is that the Official Committee of Unsecured Creditors (which was formed prior to the commencement of any of the Debtor Affiliates' cases and which, upon information and belief, remains comprised of creditors whose claims are overwhelmingly direct LBHI claims), will have a right to require an independent director, and even that "independent director" must be approved by LHBI. Id. This structure leaves none of the Debtor Affiliates or their creditors with any stake, or any input whatsoever, in the governance of LAMCO.

5.  Second, Debtors ask the Court to authorize the transfer to LAMCO of (1) Debtors' asset management resources, including employees whose training the Debtor Affiliates helped fund and infrastructure (mainly intellectual property and technology) that the Debtor Affiliates' funding helped to develop, and (2) an initial equity contribution of $20 million. Motion ¶ 4. In return for these transfers, LBHI is granted an ownership interest in LAMCO. Id. ¶ 3. However, none of the Debtor Affiliates receive an ownership interest, or any other form of direct consideration, from the sale.

6.  Third, after these transfers have occurred, the Motion would require LBHI, together with the Debtor Affiliates, to retain LAMCO's asset management services for the duration of these chapter 11 proceedings and to split LAMCO's fees. Id. ¶ 4, 18; Ex. C (Asset

Management Agreement) ¶ 2.  In connection with that retention, Debtors ask the Court to authorize them to enter into several complex agreements with LAMCO that will govern LAMCO's stewardship over the administration of the estates, including the estates of the Debtor Affiliates.  Id.; Exs. C (Asset Management Agreement), D (Shared Services Agreement), F (Intercompany Agreement).

7. The complex restructuring proposed by Debtors in the Motion will directly affect all Debtors and all creditors involved in the plan process, and accordingly should be included as part of the Plan so that it may benefit from disclosure and negotiation during the plan process.  See In re Lionel, 722 F.2d at 1070-72 (purpose of chapter 11 disclosure is to ensure that all stakeholders can negotiate a fair resolution and debtor may not circumvent that purpose through a section 363 sale motion without sufficient justification).  There are several specific aspects of the Motion that would benefit from negotiation in conjunction with the plan approval process.  For instance, the failure to provide any governance or ownership interest in LAMCO to the Debtor Affiliates or their creditors, despite their financial support for LAMCO and the requirement that they contract with LAMCO, raises serious doubts as to whether the establishment of LAMCO is in the business interest of each Debtor Affiliate.  LBHI must provide proper disclosure so that the proposal may be evaluated by each Debtor and its creditors, and each can then determine if participation in the arrangement is in its business interest.

8. All interested parties should be permitted to participate in setting the terms of the proposed arrangement during the plan process.  Yet Debtors attempt to short-circuit the collaborative plan process.  Indeed, the Motion gives parties in interest, other than the LBHI-dominated Official Committee of Unsecured Creditors, only two weeks to object to (but not really to participate in negotiations on) a complicated restructuring and complex documents that

5

have clearly been in the works for months. Debtors do not offer any material justification or demonstrate any urgency for the procedure they have selected. Debtors suggest that the assets they seek to transfer to LAMCO will decrease in value with any delay, Motion ¶ 30, yet they present no evidence of any imminent or material decline in value. Debtors do not contend, nor could they, that the intellectual property and infrastructure that Debtors seek to transfer is declining in value. While Debtors allege that their asset management division is suffering "employee attrition," there is no claim that this is an irremediable crisis, and Debtors make no real showing of how the partial launch of LAMCO, which will still remain subject to the same restrictions as if it were still a part of LBHI, provides employees with materially greater comfort than simply incorporating the LAMCO concept into Debtors' proposed Plan.

9. Debtors also contend that this reorganization will bring new value to the estates, but given the enormous task of completing the administration of these estates, diversion of the people who are tasked with winding this case up to seek new opportunities is highly problematic. In any event, the supposed new business opportunities that are touted, see Motion ¶ 32, Ex. A (Affidavit of Bryan P. Marsal, dated March 12, 2010) ¶ 19, are entirely speculative and do not justify ignoring fundamental creditor rights. Debtors also suggest that this reorganization will allow LBHI to seek strategic partners interested in purchasing or investing in LAMCO, but this statement is entirely speculative and Debtors do not state that any interested parties have come forward. Motion ¶ 33, Ex. A (Affidavit of Bryan P. Marsal, dated March 12, 2010) ¶ 20. Given the uncertain nature of these business opportunities, Debtors' assertion that the establishment of LAMCO would reduce employee attrition is likewise entirely speculative. Even if one accepts that there may be substantial commercial opportunities for LAMCO, Debtors present no particular reason to think these opportunities are so fleeting as to justify a process that

6

prevents any meaningful negotiation opportunity for, or disclosure to, the parties directly affected by, and intended to benefit from, this proposal. In re Public Service Co. of N.H., 90 B.R. 575, 583 (D.N.H. 1988) (denying proposed transaction that was tantamount to reorganization, noting that transaction could not be justified by reference to "undefined, unquantified cost[]" savings that might occur before plan confirmation).

## II. The Requirements of Bankruptcy Rule 6004(h) Should Not Be Waived

10. This Court should deny Debtors' request to waive the requirements of Bankruptcy Rule 6004(h) and direct that any order granting the requested relief be effective immediately. See Motion ¶ 16. Just as Debtors demonstrate no urgency to support the underlying relief sought in the Motion, they cannot justify departure from the stay requirement of Rule 6004(h). Debtors suggest that immediate relief is required to ensure that LAMCO can begin operations by May 1, 2010, id., but this date is arbitrary and its selection unexplained. Indeed, given the lack of urgency for the underlying relief sought, no reasonable justification exists for this arbitrary deadline, particularly given that, by Debtors' admission, LBHI's asset management operations have been functioning successfully for the past 18 months. Id. ¶ 18. It is difficult to see any legitimate rationale for this request, and it appears that it is being sought solely for the tactical purpose of mooting any appeal.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Objectors respectfully request that this Court deny the Motion and grant the Objectors such other and further relief as this Court may deem just or proper.

Dated: New York, New York
April 5, 2010

Respectfully submitted,

BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, New York 10019
Telephone: (212) 705-7000
Facsimile: (212) 702-3667
Joshua Dorchak

By:  /s/ Joseph Dorchak
 Joshua Dorchak
 A Member of the Firm

(*Attorneys for Deutsche Bank AG*)

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Howard R. Hawkins, Jr.

- and -

700 Sixth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400
Mark C. Ellenberg
Peter Friedman

By:  /s/ Mark C. Ellenberg
     Mark C. Ellenberg
     A Member of the Firm

(*Attorneys for Morgan Stanley Capital Services Inc. and Morgan Stanley & Co. International plc*)


CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Thomas J. Moloney
Seth Grosshandler

By:  /s/ Thomas J. Moloney
     Thomas J. Moloney
     A Member of the Firm

(*Attorneys for Goldman Sachs Bank USA (successor by merger to Goldman Sachs Capital Markets, L.P), Goldman Sachs International, D. E. Shaw Composite Portfolios L.L.C. and D. E. Shaw Oculus Portfolios, L.L.C.*)

CRAVATH SWAINE & MOORE
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
Richard Levin

By: /s/ Richard Levin
    Richard Levin
    A Member of the Firm

    (*Attorneys for Credit Suisse International*)


DEWEY LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
Irena M. Goldstein

By: /s/ Irena M. Goldstein
    Irena M. Goldstein
    A Member of the Firm

    (*Attorneys for The Royal Bank of Scotland plc*)


PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Alan W. Kornberg
Jeffrey D. Saferstein

By: /s/ Alan W. Kornberg
    Alan W. Kornberg
    A Member of the Firm

    (*Attorneys for Oaktree Capital Management, L.P., solely in its capacity as agent on behalf of certain funds advised by it or their respective subsidiaries*)

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-8571
Facsimile: (646) 848-8571
Fredric Sosnick

By: /s/ Frederick Sosnick
　　Frederick Sosnick
　　A Member of the Firm

　　(*Attorneys for Bank of America, N.A. and Merrill Lynch International*)