Martin Flics (#MF 9718)
Paul S. Hessler (#PH 4461)
LINKLATERS LLP
1345 Avenue of the Americas
New York, NY 10105
(+1) 212 903 9000 (Tel)
(+1) 212 903 9100 (Fax)

Attorneys for the Joint Administrators of the
UK Administration Companies

Hearing Date: April 14, 2010 at 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re

In re LEHMAN BROTHERS HOLDING INC., et al.,

                Debtors.

---------------------------------------------------------------x

Chapter 11

08-13555 (JMP)

(Jointly Administered)

## OBJECTION OF THE UK ADMINISTRATION COMPANIES TO DEBTORS' MOTION, PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND RULE 6004(h) OF THE BANKRUPTCY RULES, FOR AUTHORIZATION TO ENTER INTO CERTAIN ASSET MANAGEMENT AND RELATED AGREEMENTS

Lehman Brothers International (Europe) (in administration) ("LBIE"), Lehman Brothers Limited, Lehman Brothers Holdings PLC, LB UK Re Holdings Limited, Storm Funding Limited, Mable Commercial Funding Limited, Lehman Brothers Europe Limited, Lehman Brothers UK Holdings Ltd, LB UK Financing Ltd, LB SF No. 1, Cherry Tree Mortgages Limited, Lehman Brothers Lease and Financing (No 1) Limited, Zestdew Limited, Monaco NPL (No. 1) Limited, Lehman Commercial Mortgage Conduit Limited, LB RE Financing No. 3 Limited, Lehman Brothers (PTG) Limited, Eldon Street Holdings Limited, and

LB Holdings Intermediate 2 Limited (each in administration and together with LBIE, the "UK Administration Companies"), acting by and through their Joint Administrators,[1] hereby object to the Debtors' Motion, Pursuant To Sections 105(a) and 363 of the Bankruptcy Code and Rule 6004(h) of the Bankruptcy Rules, for Authorization To Enter into Certain Asset Management and Related Agreements (Docket No. 7579) (the "LAMCO Motion"), and in support thereof state as follows:[2]

**OBJECTION**

1.  The UK Administration Companies do not dispute that the relief Debtors seek in the LAMCO Motion could eventually prove to be commercially reasonable and could eventually result in an overall benefit to creditors. The UK Administration Companies object to the LAMCO Motion at this time, however, because there is insufficient information available to assess the merits of LAMCO in the context of Debtors' Plan, and because there is insufficient transparency regarding several aspects of LAMCO's implementation, including the governance of LAMCO in connection with the business it will conduct with New Clients. Although Debtors' stated goals of employee retention and maximizing distributions to creditors are sound, there is not enough information available to allow the UK Administration Companies to determine at this time whether the relief requested by Debtors inures to the benefit of creditors of Debtors' estates, including the UK Administration Companies.

2.  On March 15, 2010, Debtors filed the Plan. On March 22, 2010, this Court entered an order extending Debtors' deadline to file a disclosure statement in support of

---

[1] At various dates between September 15, 2008 and January 14, 2009, the UK Administration Companies entered English administration proceedings pursuant to the English Insolvency Act 1986. By orders of the English High Court of Justice, Anthony Victor Lomas, Steven Anthony Pearson, Dan Yoram Schwarzmann, Michael John Andrew Jervis, and Derek Anthony Howell were appointed as the Joint Administrators of the UK Administration Companies.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the LAMCO Motion.

the Plan (the "Disclosure Statement") to April 14, 2010, without prejudice to Debtors' right to request further extensions of time. (Order Signed on 3/22/2010 Extending Lehman Brothers Holding Inc. and Certain Affiliated Debtors Time to File a Disclosure Statement in Support of a Chapter 11 Plan (Docket No. 7696).)

3. Among other things, the LAMCO Motion, which, together with its corresponding Exhibits, totals 176 pages, contemplates that a majority of LBHI's existing employees, whose experience renders them uniquely situated to effectively manage the esoteric, illiquid assets comprising a substantial portion of Debtors' estates, will be transferred to a non-debtor entity so that they can be better positioned to maximize value for the estates. (LAMCO Motion, ¶ 30.)

4. It is no coincidence that Debtors filed the Plan and the LAMCO Motion on the same day: LAMCO is the innovative centerpiece of the Plan, created to both manage the wind down of Debtors' estates and to continue as a viable going concern in its own right, attracting New Clients and new business to manage side-by-side with Debtors' legacy assets. (*See* Plan, Preamble, § 6.2.) However, unlike the Plan, with respect to which Debtors have deferred filing a Disclosure Statement in the interest of transparency and consensus-building while they continue to meet with significant creditor constituencies (*see* Motion of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for an Order Extending the Time to File a Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code (Docket No. 7355) (the "Disclosure Statement Motion"), ¶ 13), Debtors seek here the immediate approval of the LAMCO Motion. The Plan and the creation of LAMCO are inextricably intertwined; creditors should at least have the benefit of the Disclosure Statement before being asked to take a position on the propriety of the LAMCO Motion and the substantial relief sought by Debtors therein.

5. Notwithstanding its length and considerable complexity, the LAMCO Motion contains only the most broad and cursory language regarding the costs and benefits of establishing LAMCO, stating simply that the "potential benefits and upside to all of Debtors' stakeholders are substantial, whereas the potential downsides are minimal, if any." (LAMCO Motion at ¶ 8; Exhibit A at ¶ 22.) The LAMCO Motion is missing precisely the type of specific information that would enable creditors to come to a reasoned view regarding the LAMCO Motion, including (i) the value of assets of Debtors' estates to be managed by LAMCO; (ii) the projected increase over liquidation value that LAMCO's management will generate; (iii) the projected volume and value of new business that LAMCO will conduct; and (iv) the manner in which the value created by LAMCO's new business will be captured by, and allocated to the benefit of, Debtors' estates. This is the type of information Debtors have stated will be included in the Disclosure Statement.[3] Oddly, however, rather than affording creditors the opportunity to consider the LAMCO Motion together with the Disclosure Statement and in the context of the Plan, Debtors are seeking approval of the LAMCO Motion on the date that also serves as their extended deadline *to file* the Disclosure Statement.[4]

---

[3] *See* Disclosure Statement Motion at ¶ 3 ("the Debtors' ongoing pursuit to thoroughly assess the values of their assets and liabilities that will be subject to the Plan must be completed and included in their Disclosure Statement."); ¶ 14 ("The Debtors must continue the ongoing efforts to assess and maximizing [sic] the value of their assets available to satisfy allowed claims in order to project potential revenues. The Disclosure Statement should provide information as what [sic] revenues might be expected by allowed claimants so that they may exercise an informed judgment to accept the Plan.").

[4] On April 2, 2010, the Creditors' Committee filed a statement in support of the LAMCO Motion that directly addressed the timing issue. Although the Committee deemed "the challenging employment retention issues" as "difficult to quantify," it indicated that "the potential value from a strategic partnership and management of third-party assets presents a sufficient justification for advancing the LAMCO opportunity at this time." (Statement of Official Committee of Unsecured Creditors In Support of Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Rule 6004(h) of the Bankruptcy Rules, for Authorization to Enter into Certain Agreements with Lamco Holdings LLC and Lamco LLC (Docket No. 8017), n.3.) While this may be true, the UK Administration Companies are interested to hear more regarding potential value that can be realized in the near term through LAMCO's strategic relationships with one or more third parties and the timing within which LBHI and the Creditors' Committee envision that LAMCO's management of third-party assets may begin. The UK Administration Companies reserve all rights with respect to any such additional information.

6. Although Debtors assess the possible downsides of the LAMCO Motion as "minimal, if any," it is clear from the face of the LAMCO Motion that the establishment of LAMCO will not be without additional cost. For example, the LAMCO Motion contemplates actions that allow for (i) an equity contribution of $20 million (*see, e.g.*, *id.* at ¶ 4); (ii) up to $3.5 million in annual expenses associated with client development (*id.* at ¶26(l)); (iii) the potential for larger salaries and bonuses for employees on a going forward basis (a reasonable likelihood given the opportunities relating to LAMCO's for-profit business); (iv) additional costs stemming from the need to coordinate shared services (*see generally id.* at Exhibit D); and (v) the potential costs associated with the diversion of LAMCO employees' time and attention away from the management of Debtors' assets to new business. Incurring these costs in exchange for the potential upside created by these new arrangements eventually may prove to be in the best interest of creditors, but creditors should not have to decide now, on the eve of Debtors' filing of the Disclosure Statement, whether to support the LAMCO Motion based on Debtors' characterization of the costs being "minimal" and the benefits "substantial."

7. Moreover, it appears clear on the face of the Plan that LAMCO will have an impact on Debtors' Available Cash (as defined in the Plan), which includes all of a Debtor's cash earned from any source less such Debtor's reserves, including for amounts required to be paid to manage and/or liquidate such Debtor's assets. (*See* Plan, Definitions, Available Cash.) However, in the absence of the Disclosure Statement, neither the UK Administration Companies nor any other creditor has any visibility or understanding of what Available Cash will be allocated to each Debtor and the magnitude of expenses associated with LAMCO in relation therewith. As noted above, without this information, creditors cannot effectively and properly

analyze the Plan or whether additional costs should be incurred in the pursuit of the relief sought in the LAMCO Motion.

8. Because Debtors have chosen to file the LAMCO Motion now, and imposed an objection deadline of today, the UK Administration Companies are filing this objection to protect their rights, including their right to make an informed decision regarding whether or not to support the relief Debtors seek here. Although the UK Administration Companies may ultimately support the outsourcing of Debtors' asset management to LAMCO, and although the UK Administration Companies understand that there are challenges posed by employee retention, those considerations cannot outweigh the fact that there has not yet been adequate information disclosed to assess the LAMCO Motion in the context of the Plan. Approval of the LAMCO Motion is premature at this time.

9. Moreover, once creditors have had an opportunity to further assess the LAMCO Motion with the benefit of additional and necessary information, there may still remain concerns about certain provisions of what Debtors propose here. For example, the LAMCO Motion does not provide full transparency with respect to the new business that LAMCO will be conducting; such activities will not be subject to this Court's oversight and certain of those activities will not even be subject to Creditors' Committee review, notwithstanding that LAMCO will be simultaneously managing Debtors' assets.[5] LAMCO's undertaking of third-party, for-profit business, to be performed alongside its management of Debtors' assets "at-cost," raises delicate issues regarding the discharge of LAMCO's fiduciary duties and the appropriate allocation of the upside among LAMCO's employees and each of Debtors' estates. The UK Administration Companies reserve their right to object to the LAMCO Motion on a provision-

---

[5] The LAMCO Motion provides that the Creditors' Committee will not be required to approve New Clients whose business would constitute less than $475 million in assets under management. (*See* LAMCO Motion at ¶ 27.)

by-provision basis, but do not do so here because their concerns may change or dissipate upon Debtors' provision of more fulsome information regarding the LAMCO Motion, and the relative merits of establishing LAMCO prior to confirmation of the Plan. Accordingly, the UK Administration Companies reserve all rights with respect to the relief Debtors seek here.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the UK Administration Companies object to the LAMCO Motion and respectfully request that this Court grant such other or further relief as is just and proper.

Dated: April 5, 2010
New York, New York

       /s/ Martin Flics
Martin Flics (# MF 9718)
Paul S. Hessler (#PH 4461)
Linklaters LLP
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9000 – Telephone
(212) 903-9100 – Fascimile
Martin.Flics@linklaters.com

Attorneys for the Joint Administrators of the UK Administration Companies