# BCI Exhibit 475

From: Michael A MAZZUCHI [mmazzuchi@cgsh.com]
Sent: Sunday, September 21, 2008 11:39 PM
To: Hirshon, Sheldon
Cc: Edward J ROSEN
Subject: DTC docs

Shelly:

I am wondering if I could send you a few comments on the DTC docs understanding that the DTC team is tied up on bigger business issues at the moment and the guarantee in particular will likely need to be changed once we know the outcome:

1. In each of the documents where we refer to the guarantee, after "subject to and modified by the terms of" I would like to insert "(including the limitation of recourse set forth in)". I would also like to clarify the limitation of recourse paragraph as set out in the attached blackline (the other comments on the definition of purchased assets may not still be relevant).

2. On the Addendum to the Member's Agreement for NSCC (in Ex. A), it seems to me we need a paragraph cross referring to the guarantee as we have in the other documents, because paragraph 3 of the Addendum says the member is principally liable for transactions in 0074, which is not quite the case with respect to transactions prior to Monday.

3. Same comment on the Addendum to Member's Agreement for FICC, based on paragraph 3.

4. Wherever in the documents we refer to a date it should be clear that this is "as of" or "effective as of" -- some of the documents still say they are accepted on September 19, which isn't quite right.

Please let me know if you would like to discuss.

Best regards,

Michael A. Mazzuchi
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
t +1 202 974 1572 | f: +1 202 974 1999

www.clearygottlieb.com | mmazzuchi@cgsh.com

This message is being sent from a law firm and may contain
confidential or privileged information. If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.

Exhibit No. 604
Date 2/9/10
Jomanna DeRosa, CSR

DTCC 00120

CONFIDENTIAL

September 20, 2008
Page 2

1. **Assumption of Accounts.** Barclays will acquire and assume the accounts of LBI maintained at the Clearing Agency Subsidiaries in accordance with the transfer and assumption documentation attached to this letter as Exhibits A, B and C, respectively (the "Accounts"), so as to enable Barclays to continue to conduct the LBI business related to such accounts as of the open of business on Monday, September 22, 2008.

2. **Excluded Assets and Liabilities.** Barclays has indicated that certain of the positions and pending transactions credited to one or more of the Accounts may ~~constitute "Excluded~~ be excluded from the "Purchased Assets" within the meaning of the Agreement. In order that DTC inventory positions and other mutually agreed upon transactions may be effectively identified and transferred, with the minimum of market disruption and potential loss to DTCC as possible, Barclays ~~shall identify in writing to DTCC and the Trustee, by no later than~~, DTCC and the Trustee agree that any items that either (i) have been expressly identified by Barclays in writing to DTCC as excluded from Purchased Assets or (ii) have not been identified by Barclays in writing to DTCC and the Trustee as Purchased Assets by the close of business on Monday, September 22, 2008, ~~all such items that constitute Excluded Assets. Any items not so identified, shall thereafter be, and remain, part of the Accounts, and Barclays shall have all the rights and responsibilities with respect thereto as a Member and/or Participant under the respective Rules and Procedures of DTC, NSCC and FICC 2008~~ ("Non-Purchased Assets"), may be treated by the Trustee as excluded from Non-Purchased Assets.

~~Any Excluded Assets shall be transferred to the Trustee, via an account maintained for the Trustee at DTC for this purpose, only upon his consent. Other mutually agreed upon transactions shall~~ Unless otherwise agreed between the Trustee and DTCC, any Non-Purchased Assets may be transferred to, and closed out by, the relevant Clearing Agency Subsidiary, in the same manner as it closes out positions of Participants/Members for whom it has ceased to act.

3. **Guaranty.** In order to induce DTCC to take the foregoing actions, Barclays hereby agrees to guaranty, indemnify and hold harmless DTCC, on behalf and for the benefit of the Clearing Agency Subsidiaries, against any and all losses or liabilities that any of them may incur as a result of closing out ~~the items~~ Non-Purchased Assets referred to in Paragraph 2 above. This guaranty and indemnity shall be satisfied from, and DTCC's recourse to Barclays in respect of such guaranty shall be limited solely to, the following amounts and assets, in the order and priority indicated:

(a) Any and all such liabilities and losses shall first be satisfied by debiting and applying amounts deposited as Clearing Fund or Participants Fund deposits, as applicable.
(b) If the applicable Clearing Fund/Participants Fund deposit is not sufficient to eliminate the loss or liability, any remaining loss shall be paid by Barclays to DTCC up to an amount equal, in the aggregate, to $250,000,000 (the "Cash Holdback").

DTCC 00122

CONFIDENTIAL

September 20, 2008
Page 3

(c) If payment to DTCC of the Cash Holdback is insufficient to eliminate the loss or liability, then Barclays shall pay DTCC an amount (up to 3 billion dollars) equal to the liquidated value of 50 % of the residential mortgage securities portfolio transferred to Barclay as part of the Purchased Assets.

4. **Lien.** In order to secure the obligations of Barclays under the guaranty provided for in Paragraph 3 above, Barclays hereby grants to DTCC, for the benefit of DTC, FICC and NSCC, a continuing first priority perfected security interest in and lien on the residential real estate mortgage securities listed on Schedule A hereto, all of which are contained in Barclays DTC Account No. ____ (the "Securities"), including: (i) all right, title and interest of Barclays in such Securities, (ii) all replacements, substitutions, additions and reinvestments of such Securities, (iii) all interest, dividends, discounts and other cash and non-cash payments and distributions associated with such Securities, and (iv) all present and futures rights, privileges and options relating to or paid, payable, declared or granted at any time and from time to time in respect of or in connection with the Securities.

Barclays shall transfer and pledge the Securities to a Pledgee account at DTC in the name of and for the benefit of DTCC by no later than Monday, September 22, 2008.

Should Barclays decide to liquidate the Securities, DTCC and Barclays will establish an "Honest Broker" arrangement through the services of DTC.

5. **Miscellaneous.**

(a) Barclays hereby expressly agrees that the Guaranty referred to in Paragraph 3 above shall be a continuing Guaranty and that the validity of this Guaranty and the obligations and liabilities of Barclays hereunder shall in no way be terminated or diminished by reason of (i) the assertion by DTCC, DTC, FICC and/or NSCC of, or any failure by DTCC, DTC, FICC and/or NSCC to assert against Barclays, or any release of, any of the rights or remedies reserved to DTCC, DTC, FICC and/or NSCC hereunder , (ii) any renewal or extension of the provisions contained herein or any modification or amendment thereof, (iii) any extension of time that may be granted by DTCC, DTC, FICC and/or NSCC to Barclays, (iv) any consent or other action, inaction or omission, (v) any change in the corporate existence, structure or ownership of Barclays or any bankruptcy, insolvency, reorganization, arrangement, assignment for the benefit of creditors, receivership or trusteeship affecting Barclays or Barclays' successors or assigns, (vi) any exchange, release, nonperfection or invalidity of any direct or indirect security or collateral for the obligations of Barclays hereunder, except to the extent that DTCC, DTC, FICC and/or NSCC receives value from realization on such security or collateral, (vii) any change in the laws, rules or regulations of any jurisdiction, (viii) any present or future action of any governmental authority or court amending, varying, reducing or otherwise affecting, or purporting to amend, vary, reduce, or otherwise affect, any of the obligations of Barclays, (ix) any claim as to the validity, regularity or enforceability of the provisions contained herein or (x) any other

DTCC 00123

CONFIDENTIAL

September 20, 2008
Page 4

act or omission to act or delay of any kind by DTCC, DTC, FICC and/or NSCC, or by Barclays or any other person or any other circumstance whatsoever which would otherwise constitute a legal or equitable discharge or defense of Barclays.

(b) No authorizations, approvals, consents or waivers by, or notifications to, a governmental authority or other third party (including but not limited to licenses, notifications, registrations or declarations) (collectively, "Authorizations") are required for the execution, delivery or satisfaction by Barclays of this Letter Agreement or the satisfaction of any of the obligations of Barclays contemplated thereby, or, if required, all such Authorizations have been obtained.

(c) This Letter Agreement and the provisions herein shall be governed by and construed and interpreted in accordance with the law of the State of New York.

(d) This Letter Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Please indicate your agreement to the above by signing and returning the enclosed receipt copy of this letter

Very truly yours,

The Depository Trust & Clearing Corporation

By: _____
Larry E. Thompson
Managing Director and General Counsel

Enclosures

Accepted and agreed:

James W. Giddens as Trustee for the Liquidation of Lehman Brothers, Inc. under the Securities Investor Protection Act

By:   <u>Hughes Hubbard, Counsel for the Trustee</u> 

By: _____
James B. Kobak Jr.

Barclays Capital, Inc.

DTCC 00124


CONFIDENTIAL

September 20, 2008
Page 5

By: _____

Title: _____


CONFIDENTIAL

DTCC 00125