# BCI Exhibit 632

Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

In re:                              )
                                    ) Chapter 11
LEHMAN BROTHERS                     ) Case No. 08-13555(JMP)
                                    ) (Jointly Administered)
HOLDINGS, INC., et al.,             )
                                    )
              Debtors.              )
----------------------------)

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF

ROBERT MESSINEO

New York, New York

Thursday, April 1, 2010

Reported by:

KRISTIN KOCH, RPR, RMR, CRR, CLR

JOB NO. 29427

```
                                    Page 2
 1
 2
 3              April 1, 2010
 4              2:10 p.m.
 5
 6
 7         Highly Confidential Videotaped
 8  Deposition of ROBERT MESSINEO, held at the
 9  offices of Weil, Gotshal & Manges LLP, 767
10  Fifth Avenue, New York, New York, before
11  Kristin Koch, a Registered Professional
12  Reporter, Registered Merit Reporter,
13  Certified Realtime Reporter, Certified
14  Livenote Reporter and Notary Public of the
15  State of New York.
16
17
18
19
20
21
22
23
24
25
        TSG Reporting - Worldwide    877-702-9580
```

```
                                    Page 3
 1
 2  A P P E A R A N C E S:
 3
 4
 5    JONES DAY, LLP
 6    Attorneys for Lehman Brothers, Inc.
 7       222 East 41st Street
 8       New York, New York 10017-6702
 9    BY:  WILLIAM J. HINE, ESQ.
10
11
12
13    BOIES, SCHILLER & FLEXNER, LLP
14    Attorneys for Barclays and Alastair
15    Blackwell
16       5301 Wisconsin Avenue, N.W.
17       Washington, D.C. 20015
18    BY:  AMY L. NEUHARDT, ESQ.
19       - and -
20       575 Lexington Avenue - 7th floor
21       New York, New York 10022
22    BY:  MICHELLE M. SEKOWSKI, ESQ.
23
24
25
        TSG Reporting - Worldwide    877-702-9580
```

```
                                    Page 4
 1
 2  A P P E A R A N C E S: (Continued)
 3
 4
 5    QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
 6    Attorneys for Creditors Committee
 7       51 Madison Avenue
 8       New York, New York 10010
 9    BY:  ERIC M. KAY, ESQ.
10
11
12    HUGHES HUBBARD & REED LLP
13    Attorneys for SIPA Trustee
14       1775 I Street, N.W.
15       Washington, D.C. 20006-2410
16    BY:  JOHN F. WOOD, ESQ.
17       - and -
18       One Battery Park Plaza
19       New York, New York 10004-1482
20    BY:  MARY ELIZABETH PIERCE, ESQ.
21
22
23
24
25
        TSG Reporting - Worldwide    877-702-9580
```

```
                                    Page 5
 1
 2  A P P E A R A N C E S: (Continued)
 3
 4
 5    WEIL GOTSHAL & MANGES LLP
 6    Attorneys for Robert Messineo
 7       767 Fifth Avenue
 8       New York, New York 10153
 9    BY:  JONATHAN POLKES, ESQ.
10         CAROLINE ZALKA, ESQ.
11
12
13  ALSO PRESENT:
14
15    JOSH LIPSON, Legal Video Specialist
16
17
18
19
20
21
22
23
24
25
        TSG Reporting - Worldwide    877-702-9580
```

2 (Pages 2 to 5)

Page 6

2    IT IS HEREBY STIPULATED AND AGREED
3  by and between the attorneys for the
4  respective parties herein, that filing and
5  sealing be and the same are hereby waived.
6    IT IS FURTHER STIPULATED AND AGREED
7  that all objections, except as to the form
8  of the question, shall be reserved to the
9  time of the trial.
10    IT IS FURTHER STIPULATED AND AGREED
11  that the within deposition may be sworn to
12  and signed before any officer authorized
13  to administer an oath, with the same
14  force and effect as if signed and sworn
15  to before the Court.

20       - oOo -

TSG Reporting - Worldwide    877-702-9580

Page 7

2       (Deposition Exhibit 682, Declaration
3  of Robert L. Messineo, marked for
4  identification.)
5           *  *  *
6    THE VIDEOGRAPHER: This is the start
7  of tape number 1 of the videotaped
8  deposition of Robert Messineo in the matter
9  in re Lehman.
10    Today's date is April 1st, 2010 at
11  approximately 2:10 p.m.
12    Will the court reporter please swear
13  in the witness.
14  R O B E R T  M E S S I N E O,
15    called as a witness, having been duly sworn
16    by a Notary Public, was examined and
17    testified as follows:
18  EXAMINATION BY
19  MS. NEUHARDT:
20    Q. Good afternoon, Mr. Messineo. My
21  name is Amy Neuhardt. I am with Boies,
22  Schiller & Flexner and I am representing
23  Barclays in this matter.
24    A. Good afternoon.
25    Q. Could you tell me where you are

TSG Reporting - Worldwide    877-702-9580

Page 8

1       **Messineo - Highly Confidential**
2  employed?
3    A. The law firm of Weil, Gotshal &
4  Manges.
5    Q. And you are a partner there?
6    A. Yes, I am.
7    Q. And is that the same place you were
8  employed in September of 2008?
9    A. Yes.
10    Q. Okay. And you were a partner at
11  that time as well?
12    A. That's correct.
13    Q. Have you ever been deposed before?
14    A. Yes, I have.
15    Q. Okay. So you know then that if you
16  don't understand one of my questions, you can
17  ask me to clarify, or if you need a break, you
18  can let me know.
19    A. I understand.
20    Q. Okay. In connection with your work
21  as a Weil partner in September of 2008, were
22  you involved in a transaction between Barclays
23  and Lehman Brothers?
24    A. Yes, I was.
25    Q. Okay. And what was your role in

TSG Reporting - Worldwide    877-702-9580

Page 9

1       **Messineo - Highly Confidential**
2  that transaction?
3    A. I was involved in the negotiation
4  and the preparation of the documents that
5  were the Asset Purchase Agreement with regard
6  to the sale of the Lehman capital markets and
7  investment banking business.
8    Q. Okay. Which party were you
9  representing?
10    A. I was representing Lehman.
11    Q. Okay. I am going to hand you or the
12  court reporter will hand you what's been marked
13  as Deposition Exhibit 682. After you have had
14  a chance to look at it my question will be do
15  you recognize it?
16    A. Yes, I do.
17    Q. And on the last -- what is this
18  document?
19    A. This is my declaration from a few
20  months ago.
21    Q. Okay. And on the last page is that
22  your signature?
23    A. Yes, it is.
24    Q. Okay. You can take a moment to look
25  it over if you would like, but my question --

TSG Reporting - Worldwide    877-702-9580

Page 10

1      **Messineo - Highly Confidential**
2  my first question will be is there anything in
3  this declaration that you now consider
4  inaccurate?
5      A.  No.
6      Q.  Okay. All right. Paragraph 3 of
7  your declaration refers to an Exhibit A. It's
8  a Clarification Letter. I can tell you that
9  the version of this that was served to us did
10 not have an Exhibit A, so I am going to give
11 you what was previously marked as Deposition
12 Exhibit 25 (handing) and ask you whether or not
13 this document is the same as what you had
14 intended to attach to your declaration.
15     A.  This appears to be the final
16 Clarification Letter, yes.
17     Q.  Okay. So let's look at paragraph 2
18 of your declaration. The third sentence
19 begins: "I was one of the Weil attorneys
20 responsible for drafting the letter agreement
21 dated September 20, 2008, which was executed on
22 September 22, 2008 by Barclays, LBHI, James W.
23 Giddens as the trustee for the SIPA liquidation
24 of LBI, and LB 745 LLC (the Clarification
25 Letter)." Is that correct?
          TSG Reporting - Worldwide    877-702-9580

Page 11

1      **Messineo - Highly Confidential**
2      A.  That's correct.
3      Q.  Okay. Did you have responsibilities
4  in connection with the Clarification Letter
5  other than participating in the drafting?
6      A.  I don't -- I am not sure I
7  understand what you are asking.
8      Q.  Sure. Were you one of the Weil
9  attorneys who would have been directly
10 interacting in negotiations with
11 representatives of Barclays?
12     A.  Yes.
13     Q.  Okay. So you would have been
14 speaking to people from Barclays or Barclays'
15 attorneys in connection with the Clarification
16 Letter?
17     A.  Correct.
18     Q.  When I refer to representative of
19 Barclays throughout the deposition, actually I
20 will be intending to mean Barclays as well as
21 its agents, which would be Cleary Gottlieb,
22 Michael Klein, who is an independent financial
23 advisor. So will you understand that to be the
24 meaning as I refer to representatives of
25 Barclays?
          TSG Reporting - Worldwide    877-702-9580

Page 12

1      **Messineo - Highly Confidential**
2      A.  Yes.
3      Q.  Okay, great.
4          Now, paragraph 4 of your
5  declaration, page 2, reads: "I understood at
6  all times while the Clarification Letter was
7  being drafted that both securities and cash
8  were being held in accounts maintained by LBI
9  for the purpose of complying with Rule 15c3-3
10 for the benefit of and in order to protect the
11 interests of customers of LBI. The accounts so
12 holding securities or cash pursuant to Rule
13 15c3-3 are herein after referred to as the
14 customer reserve accounts."
15         Is that an accurate statement?
16     A.  Yes, it is.
17     Q.  Okay. Do you consider yourself an
18 expert in SEC Rule 15c3-3?
19     A.  No.
20     Q.  Okay. Had you had any prior
21 dealings with that rule prior to the
22 Lehman/Barclays transaction?
23     A.  Only a very small degree.
24     Q.  Okay. And do you consider yourself
25 to be an expert in the Securities Investment
          TSG Reporting - Worldwide    877-702-9580

Page 13

1      **Messineo - Highly Confidential**
2  Protection Act known as SIPA?
3      A.  I do not.
4      Q.  Okay. And had you had any prior
5  matters that involved interpretation of SIPA
6  prior to the Lehman/Barclays matter?
7      A.  Again, only in a small degree.
8          MS. NEUHARDT:  I am going to hand
9      you what will be marked as Deposition
10     Exhibit 683.
11         (Deposition Exhibit 683, Declaration
12     of Victor I. Lewkow, marked for
13     identification.)
14     Q.  Have you ever seen this document
15 before?
16     A.  Yes.
17     Q.  In what context have you seen it
18 before?
19     A.  I saw it recently in connection with
20 preparation for this deposition.
21     Q.  Okay. Did you review any other
22 documents in connection with this deposition?
23     A.  I also looked at one of the
24 memoranda that had been submitted.
25     Q.  Oh, that was publicly filed in
          TSG Reporting - Worldwide    877-702-9580

4 (Pages 10 to 13)

Page 14

1    **Messineo - Highly Confidential**
2  this --
3    A.  Yes.
4    Q.  Okay.  Okay.  Do you know
5  Mr. Lewkow?
6    A.  Yes, I do.
7    Q.  Okay.  Who is he?
8    A.  He is a partner at Cleary Gottlieb
9  and he was the lead partner in the negotiation
10 of the acquisition of the Barclays agreement.
11   Q.  Okay.  Do you have any reason to
12 doubt Mr. Lewkow's honesty or integrity?
13   A.  No.
14   Q.  Okay.  Would you take a moment and
15 read paragraphs 18 to 20 of his declaration.
16       (Document review.)
17   A.  18 and 20, yes.
18   Q.  18 through 20.  Sorry.
19       (Document review.)
20   A.  Okay.
21   Q.  So those paragraphs recount
22 Mr. Lewkow's recollection of a conversation
23 that occurred in the hallway of Weil Gotshal on
24 either the late night of September 21st, 2008
25 or early morning of September 22nd, 2008;
    TSG Reporting - Worldwide    877-702-9580

Page 15

1    **Messineo - Highly Confidential**
2  correct?
3    A.  That's what they describe.
4    Q.  Okay.  Do you recall participating
5  in a conversation in the hallway such as
6  described by Mr. Lewkow?
7    A.  I don't recollect this specific
8  conversation that he is describing.
9    Q.  Okay.  Do you have any reason to
10 believe that that conversation did not occur as
11 described by Mr. Lewkow?
12       MR. WOOD:  Objection to form.
13   A.  Well, I can only say that in
14 conversations that I had with people and in the
15 course of the drafting that I was involved
16 with, there was never any question raised to
17 this effect that if securities could not come
18 out of the custodial accounts, that they would
19 be made available otherwise by Lehman.
20   Q.  But do you have any reason to doubt
21 that Mr. Lewkow is telling the truth about his
22 version of that hallway conversation in his
23 declaration?
24       MR. WOOD:  Objection to the form.
25   A.  It's not something that I can
    TSG Reporting - Worldwide    877-702-9580

Page 16

1    Messineo - Highly Confidential
2  correspond with.
3    Q.  So you have no personal knowledge of
4  it one way or the other?
5    A.  I did not have this conversation
6  with Mr. Lewkow.
7    Q.  Okay.  All right.  Let's look back
8  at your declaration, paragraph 8.
9        Paragraph 8:  "I understood the
10 phrase "or securities of substantially the same
11 nature and value" was included at the end of
12 the second sentence of paragraph 8 of the
13 Clarification Letter to take account of the
14 potential for there to be a change in the
15 specific securities held in the customer
16 reserve accounts between September 22nd and the
17 date when it became permissible to withdraw
18 securities from the customer reserve accounts."
19 Is that correct?
20   A.  Correct.
21   Q.  Okay.  Did you personally draft that
22 clause, "or securities of substantially the
23 same nature and value"?
24   A.  I can't recollect whether I
25 specifically drafted it.  It's possible that I
    TSG Reporting - Worldwide    877-702-9580

Page 17

1    Messineo - Highly Confidential
2  did.
3    Q.  Okay.
4    A.  I think the clause was originally
5  somewhat different, but I just can't say for
6  sure whether I drafted it.  I might have.
7    Q.  Okay.  Did you get your
8  understanding of the meaning of that phrase as
9  set forth in paragraph 8 of your declaration
10 from any representative of Barclays?
11   A.  I can't recollect specific
12 conversation with specific persons, but my
13 understanding of that phrase grew out of my
14 participation in the discussions and in the
15 negotiations that were going on that night.
16   Q.  So you can't recall discussing this
17 with anybody from Barclays?
18   A.  I don't have specific recollection
19 of discussing this phrase.
20   Q.  Okay.  After you drafted the phrase
21 did you communicate your understanding of that
22 phrase to any representative of Barclays?
23   A.  I don't recollect a specific
24 conversation.
25   Q.  Do you recollect generally having
    TSG Reporting - Worldwide    877-702-9580

5 (Pages 14 to 17)

Page 18

1    **Messineo - Highly Confidential**
2    **had a conversation to that effect?**
3        A.   I recollect generally this phrase
4    coming into the agreement and this being in the
5    context of the fact that there were securities
6    in this account and that the way the phrase --
7    the way the related phrase had been drafted is
8    it referred to the specific securities on that
9    date and so it was necessary to have this
10   phrase in order to properly present the thing.
11          THE COURT REPORTER: I'm sorry?
12       A.   Properly present the matter.
13       **Q.   Can you look at the Clarification**
14   **Letter, Exhibit 25, and show me where you are**
15   **referring to securities as of a specific date?**
16       A.   Did you say it was paragraph 25?
17       **Q.   Sorry, it's Deposition Exhibit 25.**
18   **It is paragraph 8, which is on page 4.**
19       A.   Okay. Yes, because it says
20   securities -- 769 million of securities is held
21   by or on behalf of LBI on the date hereof
22   pursuant to Rule 15c3-3.
23       **Q.   Okay. And was it your understanding**
24   **that there was only 769 million of securities**
25   **in that account?**
         TSG Reporting - Worldwide   877-702-9580

Page 19

1    **Messineo - Highly Confidential**
2        A.   That was the current amount or value
3    that we were told was in the account.
4        **Q.   Who told you that?**
5        A.   Again, I can't recollect who
6    specifically. The information would have come
7    from someone at Lehman.
8        **Q.   And it was your understanding that**
9    **that was the total amount of securities in the**
10   **account or the total amount that was in excess**
11   **in the account or that was believed to be in**
12   **excess in the account?**
13          MR. WOOD: Objection to form.
14       A.   I'm sorry, was in excess of what?
15       **Q.   Let me back up.**
16       **What did you understand the 769**
17   **million to represent?**
18       A.   To be securities, I believe mostly
19   government securities or primarily government
20   securities, that were held in this account, or
21   may have been more than one actual account, for
22   customer protection purposes.
23       **Q.   Did you understand there to be an**
24   **excess in that account that could be**
25   **transferred?**
         TSG Reporting - Worldwide   877-702-9580

Page 20

1    **Messineo - Highly Confidential**
2        A.   I understood there to be cash as
3    well as securities in the account, and so the
4    total value of the account -- and, again, this
5    may have been more than one account. The total
6    value of them I understood to be substantially
7    more than 769 million, but the portion of it
8    that was represented by securities I understood
9    to be 769 million, or at least that's what had
10   been reported by the Lazard people for purposes
11   of negotiation of this issue which had come up
12   that evening.
13       **Q.   And you did not understand that to**
14   **only be 769 million in the excess as opposed to**
15   **the entirety of the account?**
16       A.   No, I don't -- I'm not sure what you
17   mean, excess of what.
18       **Q.   Excess of the amount required by SEC**
19   **Rule 15c3-3.**
20       A.   Oh, oh, oh. Okay. I see what you
21   are saying. I'm not sure that people knew at
22   this point how much in this account was what
23   was required to be in the account. My
24   understanding is that this is something that
25   requires approval of the SEC and the
         TSG Reporting - Worldwide   877-702-9580

Page 21

1    Messineo - Highly Confidential
2    calculations are fairly complicated and there
3    might be excess funds as of that date or there
4    might not be excess funds as of that date and
5    as of some future date it would be different
6    depending on what happened with customers and
7    customer positions, and so there might be funds
8    that were excess, but whether all or part of
9    these were excess on that day I don't know.
10       **Q.   Okay. Well, do you understand now,**
11   **though, what I am asking whether or not it was**
12   **believed that the 769 was in the excess or if**
13   **it was 769 in the entirety of the account?**
14       A.   I believe the general understanding
15   is that this was the entire account, the cash
16   and the securities, and that some part of it
17   would ultimately turn out to be excess or might
18   ultimately turn out to be excess.
19       **Q.   Okay. All right.**
20       **Let's go back to -- we were talking**
21   **about paragraph 8 of your declaration and your**
22   **understanding of the meaning of the clause "or**
23   **securities of substantially the same nature and**
24   **value," and I believe you had testified that**
25   **you did not have a specific recollection of**
         TSG Reporting - Worldwide   877-702-9580

6 (Pages 18 to 21)

Page 22

Messineo - Highly Confidential
communicating your understanding of that phrase to any representative of Barclays; is that correct?
A. Correct.
Q. And then I asked if you had any general recollection and I do not believe your answer was quite answering the question.
So I will ask you again, do you recall generally meeting -- representing your understanding of that phrase to anybody who was a representative of Barclays?
MR. WOOD: Objection to form.
MR. HINE: Objection to form.
MR. POLKES: You can answer.
A. I don't recollect a specific conversation regarding this phrase with anyone at Barclays.
Q. Okay. Who is Harvey Miller?
A. Harvey Miller is a senior partner here.
Q. Okay. And did you communicate your understanding of that phrase to Mr. Miller?
A. At the time that this was written or ever?

TSG Reporting - Worldwide    877-702-9580

Page 23

Messineo - Highly Confidential
Q. Well, prior to the closing of the transaction.
A. I don't know that I had a specific conversation with Mr. Miller about this phrase.
Q. To your knowledge, was a provision regarding maturing securities required in any way by a statute or regulation?
A. Was a provision regarding maturing securities required?
Q. That's how I am characterizing what you described the meaning of the phrase to be, but was -- is there any statute or regulation that requires provision to be made for maturing securities such as in this situation?
A. I don't know of a regulation that requires a provision to be made. My understanding is that the securities in the account would mature and would need to be reinvested.
Q. Okay. Was there any list by CUSIP or otherwise of the 769 million that were to be transferred over to Barclays?
A. There was not one that I was aware existed at that time.

TSG Reporting - Worldwide    877-702-9580

Page 24

Messineo - Highly Confidential
Q. So do I understand your testimony to believe that -- to be that you believed that the provision was necessary because there may have only been $769 million in securities in that customer reserve account on the date of the agreement?
MR. WOOD: Objection to the form.
A. I wouldn't say it that way. There -- what was described was that Barclays was to get 769 million of particular securities that existed in particular accounts on a particular day and then it went on, as it needed to in order to make sense, to say that it could get substantially the same securities since those particular securities that were there on that day may not be there on the day when it talked about the account being accessed, which is going to be at some time in the future when regulatory conditions were satisfied.
Q. If there were more than 769 million of securities in that account, would there have been any particular 769 that had to be used to pay this out in the absence of the provision

TSG Reporting - Worldwide    877-702-9580

Page 25

Messineo - Highly Confidential
that you added?
MR. HINE: Objection to form.
A. I think the understanding was that the 769 million was all the securities that were in the account.
Q. Okay. So if that were not correct, then it would not have been necessary to have this phrase?
MR. WOOD: Objection to form.
A. No, it would still have been necessary to have the phrase.
Q. Okay. That's what I am trying to understand.
Why would it have been necessary to have that phrase if Barclays was not being given a claim to a particular 769 million, but just 769 million in securities in that account of which there may have been significantly more than 769 million?
MR. HINE: Object to form.
MR. WOOD: Object to the form.
A. I'm not quite sure I am capturing the point that you are trying to make here. There were particular securities in the

TSG Reporting - Worldwide    877-702-9580

7 (Pages 22 to 25)

Page 26

1      Messineo - Highly Confidential
2  account.  There were believed to be particular
3  securities in the account.  There wasn't a list
4  of them, but whatever they were they were, and
5  they were in the account -- they were believed
6  to be worth 769 million.  I guess if there was
7  a lot more, then they would only receive 769
8  million.
9      Q.   Right, well, that's my point.  If it
10 was not correct that there was only 769 million
11 in the account, if that was actually only in
12 excess but there was actually substantially
13 more in the account as a whole, would it have
14 been necessary to have this clause?
15         MR. HINE:  Objection to form.
16         MR. WOOD:  Objection to form.
17     A.   It would have still been necessary
18 to have the clause because the securities could
19 change.  Whether there were 769 or 770, the
20 securities could still have changed over the
21 time that was going to go by before it was
22 possible for them to be withdrawn.
23     Q.   Do you know if anybody from Lehman
24 discussed that interpretation of the clause
25 with anybody from Barclays?
         TSG Reporting - Worldwide    877-702-9580

Page 27

1      **Messineo - Highly Confidential**
2         MR. WOOD:  Objection to form.
3         MR. POLKES:  I'm sorry, what
4  interpretation?
5         MS. NEUHARDT:  Excuse me?
6         MR. POLKES:  What interpretation?
7         MS. NEUHARDT:  The interpretation
8  that is set forth in paragraph 8 of your
9  declaration.
10     A.   I do not know if anyone discussed
11 it.
12     **Q.   I am going to hand you what has been**
13 **marked as Deposition Exhibit 1 in prior**
14 **depositions.  My first question will be do you**
15 **recognize this document?**
16     A.   Yes.  This appears to be the Asset
17 Purchase Agreement.
18     **Q.   Okay.  And did you participate in**
19 **the drafting or negotiation of this document?**
20     A.   I did.
21     **Q.   Okay.  If you could turn to page 6,**
22 **please, and look at the definition of purchased**
23 **assets.  I am not going to force you to read**
24 **all the subdivisions, but the intro to that**
25 **definition says:  "Purchased assets means all**
         TSG Reporting - Worldwide    877-702-9580

Page 28

1      **Messineo - Highly Confidential**
2  **of the assets of seller and its subsidiaries**
3  **used in connection with the business (excluding**
4  **the excluded assets) including," and then it**
5  **lists out A through S of specified assets.  Is**
6  **that correct?**
7      A.   That's correct.
8      **Q.   Okay.  Did you understand the list**
9  **of A through S to be an exclusive list?**
10     A.   No, I wouldn't say exclusive.
11 Primary, but not exclusive.
12     **Q.   Okay.  And what did you, in general,**
13 **understand the meaning of the phrase "all of**
14 **the assets of seller and its subsidiaries used**
15 **in connection with the business" to mean?**
16     A.   Well, there was -- what was being
17 sold was an operating business and it was being
18 done through the form of an asset transfer.
19     **Q.   Okay.**
20     A.   So basically it was the assets that
21 were used in the business other than things
22 that were being excluded.
23     **Q.   Okay.  And if you look at page 2 at**
24 **the definition of business, it says:  "The**
25 **business means the U.S. and Canadian investment**
         TSG Reporting - Worldwide    877-702-9580

Page 29

1      **Messineo - Highly Confidential**
2  **banking and capital markets businesses of**
3  **seller, including the fixed income and equities**
4  **cash trading, brokerage, dealing, trading and**
5  **advisory businesses, investment banking**
6  **operations and LBI's business as a futures**
7  **commission merchant."**
8          **In your role in negotiating and**
9  **drafting that -- this agreement, what was your**
10 **understanding of this definition to mean?**
11         MR. HINE:  Objection to form.
12     A.   Again, without simply repeating the
13 words, the business as a whole was being sold.
14 Basically the capital markets and investment
15 banking business of Lehman as an operating unit
16 were being sold as a whole.
17     **Q.   Okay.  Now, when -- now, the**
18 **Clarification Letter was drafted after this**
19 **document; correct?**
20     A.   That's correct.
21     **Q.   Okay.  When you were drafting the**
22 **Clarification Letter and based on your**
23 **understanding of the definitions of purchased**
24 **assets and business and the APA as a whole, did**
25 **you understand the securities to be contained**
         TSG Reporting - Worldwide    877-702-9580

8 (Pages 26 to 29)

Page 30

**Messineo - Highly Confidential**
1  **in LBI's customer reserve account to be part of**
2  **the assets primarily used in the business?**
3      MR. WOOD: Objection to the form.
4      MR. POLKES: I'm sorry, if you could
5  just clarify whether you are asking him to
6  sort of give an opinion about that now or
7  if he had thought about it back when he was
8  drafting the Clarification Letter, I would
9  appreciate that.
10     MS. NEUHARDT: It's the time of the
11 Clarification Letter that matters, so...
12     MR. POLKES: Had you thought about
13 it then one way or the other?
14     A.  Well, at the time of the
15 Clarification Letter as opposed to the time of
16 the Asset Purchase Agreement are different
17 things. Yes, at the time of the Clarification
18 Letter, yes.
19     **Q.  Okay. So you considered it at that**
20 **time to be part of the purchased assets, "at**
21 **that time" being the time of the Clarification**
22 **Letter?**
23     A.  Well, the Clarification Letter, I
24 think, makes it clear that they are part of the
          TSG Reporting - Worldwide   877-702-9580

Page 31

1      Messineo - Highly Confidential
2  purchased assets.
3      Q.  **Okay. And that's because it was --**
4  **they were part of the assets used in the**
5  **business that was being acquired by Barclays?**
6      MR. HINE: Objection to form.
7      MR. KAY: Objection to form.
8      A.  Well, it's because it's specifically
9  referred to. I am not quite sure what you are
10 asking. We just read the -- we just looked at
11 the sentence that specifically says that those
12 assets come along.
13     Q.  **I understand, but I am asking**
14 **whether or not you believed that regardless of**
15 **whether they was specified in the clarification**
16 **letter, they nonetheless were assets that were**
17 **used in the business?**
18     A.  Oh, I don't think it would have been
19 clear one way or another without the
20 specification in the clarification letter how
21 you would have treated those assets.
22     Q.  **So you don't -- you wouldn't have**
23 **had an opinion one way or the other whether**
24 **they would have been an asset under the Asset**
25 **Purchase Agreement that was being transferred?**
          TSG Reporting - Worldwide   877-702-9580

Page 32

1      **Messineo - Highly Confidential**
2      A.  Oh --
3      MR. WOOD: Objection to the form.
4      A.  Opinion one way or another, I would
5  say probably the better reading of things
6  absent the Clarification Letter would be that
7  they would not have been included, because my
8  understanding is that they were basically cash
9  and government securities and those weren't
10 within the category of things that was intended
11 generally to transfer.
12     Q.  **It's your understanding that an**
13 **account that was used particularly for the**
14 **business of maintaining a reserve for customers**
15 **would not have been used in the business, would**
16 **not have been an asset used in the business?**
17     MR. HINE: Objection to form.
18     MR. WOOD: Objection to form.
19     A.  It's not a question being used in
20 the business or not being used in the business.
21 The question is was it intended to go as part
22 of what was being transferred or not, and in
23 general the terms of the agreement as, you
24 know, I think was understandable for this type
25 of situation, did not involve transfer of cash
          TSG Reporting - Worldwide   877-702-9580

Page 33

1      Messineo - Highly Confidential
2  or highly liquid securities. That was just --
3  the buyer would have to pay for something that
4  would just be round-tripped. It wouldn't make
5  any sense particularly. So those assets would
6  generally be excused even though they would
7  otherwise might be considered part of the
8  assets used in the business. Obviously there
9  is always some cash used in the conduct of any
10 business.
11     Q.  **Okay. And is your view of that any**
12 **different today?**
13     A.  No.
14     MS. NEUHARDT: If we can take a
15 short break, I am probably through, but I
16 just want to --
17     MR. POLKES: Okay. That's fine.
18     THE VIDEOGRAPHER: The time is 2:37.
19 We are going off the record.
20     (Recess was taken from 2:37 to
21 2:45.)
22     THE VIDEOGRAPHER: The time is 2:45.
23 We are back on the record.
24 BY MS. NEUHARDT:
25     Q.  **Mr. Messineo, I just want to go back**
          TSG Reporting - Worldwide   877-702-9580

Page 34

1 **Messineo - Highly Confidential**
2 **to the last discussion we were having.**
3 **In the APA do I correctly understand**
4 **you to say that you believe the APA was**
5 **essentially ambiguous on whether or not the**
6 **customer reserve account would have been a**
7 **purchased asset?**
8     MR. WOOD: Objection to the form.
9  A.  Yes, before the Clarification Letter
10 the APA, I think it was an issue that people
11 could have debated.
12     (Continued on next page to include
13   jurat.)

TSG Reporting - Worldwide    877-702-9580

Page 35

1    Messineo - Highly Confidential
2  Q.  Okay. And the Clarification Letter
3 then would have been resolving any ambiguity?
4  A.  It did.
5     MS. NEUHARDT: Okay. I have no
6 further questions.
7     MR. WOOD: I have nothing.
8     MR. HINE: No questions.
9     MR. KAY: No questions.
10     THE VIDEOGRAPHER: The time is 2:46.
11 We are going off the record.
12     (Time noted: 2:46 p.m.)

15    ---------------------
16    ROBERT MESSINEO

18 Subscribed and sworn to before me
19 this     day of       2010.

21 ---------------------------------------

TSG Reporting - Worldwide    877-702-9580

Page 36

2    C E R T I F I C A T E

4 STATE OF NEW YORK  )
5           ) ss.:
6 COUNTY OF NASSAU  )

8    I, KRISTIN KOCH, a Notary Public
9 within and for the State of New York, do
10 hereby certify:
11    That ROBERT MESSINEO, the witness
12 whose deposition is hereinbefore set
13 forth, was duly sworn by me and that such
14 deposition is a true record of the
15 testimony given by such witness.
16    I further certify that I am not
17 related to any of the parties to this
18 action by blood or marriage; and that I am
19 in no way interested in the outcome of
20 this matter.
21    IN WITNESS WHEREOF, I have hereunto
22 set my hand this 1st day of April, 2010.
23    -------------------------
24    KRISTIN KOCH, RPR, RMR, CRR, CLR

TSG Reporting - Worldwide    877-702-9580

Page 37

2 -------------------I N D E X-----------------

3 WITNESS         EXAMINATION BY      PAGE

5 ROBERT MESSINEO    MS. NEUHARDT         7

6 -------------------EXHIBITS------------------

8 DEPOSITION              PAGE LINE

Exhibit 682
Declaration of Robert L. Messineo.... 7   2
Exhibit 683
Declaration of Victor I. Lewkow...... 13  11

TSG Reporting - Worldwide    877-702-9580

10 (Pages 34 to 37)

Page 38

```
 1
 2        ERRATA SHEET FOR THE TRANSCRIPT OF:
 3   Case Name:      In re: Lehman Brothers
     Dep. Date:      April 1, 2010
 4   Deponent:       Robert Messineo
 5           CORRECTIONS:
 6   Pg. Ln. Now Reads     Should Read     Reason
 7   ___ ___ _____ _____ _____
 8   ___ ___ _____ _____ _____
 9   ___ ___ _____ _____ _____
10   ___ ___ _____ _____ _____
11   ___ ___ _____ _____ _____
12   ___ ___ _____ _____ _____
13   ___ ___ _____ _____ _____
14   ___ ___ _____ _____ _____
15   ___ ___ _____ _____ _____
16   ___ ___ _____ _____ _____
17   ___ ___ _____ _____ _____
18
19              _____
20              Signature of Deponent
21   SUBSCRIBED AND SWORN BEFORE ME
22   THIS____DAY OF_____, 2010.
23
24   _____
25   (Notary Public)  MY COMMISSION EXPIRES:_____
         TSG Reporting - Worldwide     877-702-9580
```