# BCI Exhibit 637

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
**In re**                         :      **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :      **08-13555 (JMP)**
:
             **Debtors.**      :      **(Jointly Administered)**
:
:
-------------------------------------------------------------------x

**DEBTORS' RESPONSE TO THE MOTION OF FEDERAL HOME**
**LOAN BANK OF PITTSBURGH FOR CLARIFICATION AND RELIEF,**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b) AND**
**SECTION 105(A) OF THE BANKRUPTCY CODE, FROM THE COURT'S**
**ORDER APPROVING THE SALE OF ASSETS TO BARCLAYS CAPITAL INC.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

         Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors in possession (together, the "Debtors" and,

collectively with their non-Debtor affiliates, "Lehman"), respectfully submit this

response to the motion (the "Motion") of Federal Home Loan Bank of Pittsburgh

("FHLBP") for clarification of the Court's order (the "Sale Order") approving the

Purchase Agreement (as defined below) by and between LBHI, Lehman Brothers Inc. ("LBI"), and LB 745 LLC, as sellers, and Barclays Capital Inc. ("Barclays"), as purchaser.

**Preliminary Statement**

1.      Notwithstanding the fact that no cash was sold to Barclays, FHLBP has filed and continues to prosecute a motion for relief from the Sale Order for a determination that certain cash it posted as collateral with Lehman Brothers Special Financing Inc. ("LBSF") was not sold to Barclays.  Despite the clear terms of the Sale Order that no cash was sold to Barclays and the fact that FHLBP's cash was swept in a setoff exercised by J.P. Morgan Chase Bank N.A. ("Chase") on October 3, 2008 – approximately two weeks *after* the sale to Barclays closed – FHLBP continues to pursue the Motion.

2.      No modification of the Sale Order is necessary as this cash was not sold to Barclays.  The Purchase Agreement is absolutely clear that no cash was sold to Barclays.  This fact was further confirmed in the Clarification Letter, which again set forth that property securing "over-the-counter" derivatives transactions with Lehman, such as cash, were "Excluded Assets."[1]  FHLBP's Motion should be denied.

**Background**

3.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United

---

[1] Capitalized terms not defined herein shall have the meanings ascribed in the Purchase Agreement.

States Code (the "Bankruptcy Code").

4.     On September 16, 2008, LBHI, LB 745 LLC, LBHI's wholly-owned subsidiary LBI, and Barclays entered into an asset purchase agreement (the "Asset Purchase Agreement").  On September 17, 2008, the Debtors filed a motion (the "Sale Motion") seeking, among other things, approval of the Asset Purchase Agreement.

5.     The Court entered the Sale Order on September 20, 2008 approving the Purchase Agreement, as modified by the First Amendment To Asset Purchase Agreement, dated September 19, 2008 (the "Amendment"), and a letter agreement, dated September 20, 2008, clarifying and supplementing the Asset Purchase Agreement (the "Clarification Letter," collectively, with the Asset Purchase Agreement and Amendment, the "Purchase Agreement").[2]

## Transaction Between FHLBP and LBSF

6.     FHLBP was a counterparty to certain derivative transactions (the "Transactions") with LBSF.  The Transactions were governed by the International Swap Dealers Association, Inc. Master Agreement, dated June 26, 1997, and amended on April 21, 2003, together with certain schedules and annexes, including a credit support annex (the "CSA") and amendments thereto.

7.     Pursuant to the terms of the CSA, FHLBP posted cash (the "Posted Cash Collateral") to secure its obligations under the Transactions with LBSF.  While the CSA provided that the Posted Cash Collateral would remain in a segregated account, the Debtors have learned that the Posted Cash Collateral was commingled in LBSF's

---

[2]     Docket No. 258.

operating account maintained at Chase.  As of the commencement of LBSF's chapter 11

case on October 3, 2008, LBSF's bank records reflect a substantial debit of

approximately $415 million in LBSF's account at Chase.  The Debtors believe that the

Posted Cash Collateral was swept in a purported setoff exercised by Chase on or about

October 3, 2008.

### FHLBP's Motion

8.       Notwithstanding the wide notice and unprecedented media

coverage surrounding the Sale Hearing, FHLBP contends that it did not have adequate

notice of the Sale Motion to preserve its rights with respect to the Sale Order and,

therefore, requests that the Court modify the Sale Order to provide that the Posted Cash

Collateral was not sold to Barclays.  *See* Motion ¶ 8.  Specifically, FHLBP seeks a

determination that the Posted Cash Collateral: (i) was not property of LBHI; (ii) could not

be sold by LBHI to Barclays; (iii) did not constitute Purchased Assets; and (iv) was not

authorized to be transferred pursuant to the Sale Order.  *See* Motion ¶ 24.

9.       On October 7, 2008, in addition to filing this Motion, FHLBP

commenced an adversary proceeding (the "Adversary Proceeding") in this Court against

Chase and LBSF seeking, among other things, recovery of $41 million of its Posted Cash

Collateral.  Attached at Exhibit "A" hereto is a copy of FHLBP's complaint filed under

adversary proceeding number 08-1610 (JMP).

### The Debtors' Response

10.      No modification of the Sale Order is necessary.  The Sale Order

and Purchase Agreement, in particular, the Clarification Letter, clearly provide that under

no circumstance was the Posted Cash Collateral sold to Barclays.

11.    As the movant, FHLBP bears the heavy burden of proof on its motion for reconsideration of the Sale Order. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994) ("since 60(b) allows extraordinary relief, it is invoked only if the moving party meets its burden of demonstrating 'exceptional circumstances'").  Other than a self-serving request for comfort, FHLBP has identified no reason why the Sale Order requires modification.  Accordingly, the Debtors submit that FHLBP has failed to meet its burden.

**NO CASH WAS SOLD UNDER THE PURCHASE AGREEMENT**

12.    The Clarification Letter could not be clearer in declaring that *cash*, such as the Posted Cash Collateral, whether owned by LBHI or not, was not sold to Barclays.  Specifically, paragraph 1(c) of the Clarification Letter provides:

> "Excluded Assets" shall include any *cash*, *cash equivalents*, *bank deposits*, or similar items of Seller and its Subsidiaries; provided that 'Excluded Assets' shall not include any and all property of any customer, or maintained by or on behalf of LBI to secure the obligations of any customer whose account(s) are being transferred to Purchaser as part of the Business.

Clarification Letter ¶ 1(c) (emphasis added).

13.    Even if, as FHLBP suggests, the Posted Cash Collateral was somehow transferred from LBSF to LBHI prior to the sale, no cash or bank deposits were sold to Barclays.  The limited exception of cash transferred to Barclays was cash securing obligations of LBI's customers.  FHLBP was not a customer of and did not post collateral with LBI.  FHLBP posted its collateral with LBSF.  Consequently, a modification of the Sale Order is unnecessary.

**COLLATERAL SECURING OVER-THE-COUNTER DERIVATIVES
TRANSACTIONS WAS NOT SOLD**

14.     In addition to the clear language of the Sale Order, the

Clarification Letter declares that investments collateralizing "over-the-counter"

derivatives transactions, such as this Transaction, are "Excluded Assets."

15.     Generally, derivatives transactions take one of two forms.  Private

derivatives transactions, known as "over-the-counter" transactions, are contracts that are

traded (and privately negotiated) directly between two parties without going through a

formal exchange or regulated intermediary.  *See Borden Chem. & Plastics Operating Ltd.

P'ship v. Bridgeline Gas Mktg., LLC*, 336 B.R. 214, 222 n.7 (Bankr. D. Del. 2006) (*citing*

NYME definition of "over-the-counter").[3]  Exchange-traded derivatives, on the other

hand, are those derivative products that are traded via specialized derivative or other

formal exchanges.

16.     The Clarification Letter makes a purposeful distinction between

exchange-traded derivatives and "over-the-counter" derivatives.  Exchange-traded

derivatives and property securing such transactions were sold to Barclays.  *See

Clarification Letter* ¶ 1(a)(ii)(C).  Investments securing "over-the-counter" derivative

transactions, on the other hand, were not sold.  *See id.* ¶ 1(c) ("The following shall also

be Excluded Assets:  "All of the investments held by Seller or their Subsidiaries in

collateralized…*over-the-counter derivatives*") (emphasis added).

17.     It cannot be disputed that the Master Agreement at issue governs

---

[3] The New York Mercantile Exchange defines "over the counter" as a "term referring to derivative
transactions that are conducted outside the realm of regulated exchanges.  Transactions are conducted
directly through banks or brokerage houses, or by principal-to-principal in the over-the-counter market."
*See id.*

an "over-the-counter" transaction.  The Transactions were privately negotiated between

two sophisticated parties.  Moreover, the Transactions were not conducted through a

formal exchange, but, rather, were governed by the International Swap Dealer

Association Master Agreement – an organization of participants in the market for "over-

the-counter" derivatives.   Accordingly, the Posted Cash Collateral secured an "over-the-

counter" transaction and was specifically defined as an "Excluded Asset."

18.     Therefore, whether the Posted Cash Collateral remained with

LBSF or was somehow transferred to LBHI, under no circumstance was FHLBP's Posted

Cash Collateral sold to Barclays.

**THE SALE ORDER DOES NOT DETERMINE PROPERTY RIGHTS**

19.     The Sale Order does not determine property rights of any party vis-à-vis the estates with respect to Excluded Assets, such as the Posted Cash Collateral. Any such determination is premature and must be made in the context of the Adversary Proceeding – which FHLBP already has commenced in the Court.  In all events, it appears that the Posted Cash Collateral was deposited into LBSF's general operating account and, subsequently, setoff by Chase.

WHEREFORE the Debtors respectfully request that the Court deny the Motion with prejudice and grant the Debtors such other relief as is just.

Dated:  October 31, 2008
     New York, New York

                              /s/ Shai Y. Waisman
                              Harvey R. Miller
                              Richard P. Krasnow
                              Lori R. Fife
                              Shai Y. Waisman
                              Jacqueline Marcus

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007

                              Attorneys for Debtors
                              and Debtors in Possession

# EXHIBIT "A"

**TUCKER ARENSBERG, P.C.**
Beverly Weiss Manne, Esq (PA 34545)
Gary P. Hunt,  Esq. (PA 23556)
Bradley S. Tupi, Esq. (BST1202)
Michael Shiner (PA 78088)
1500 One PPG Place
Pittsburgh, Pennsylvania 15222
Phone: 412-566-1212
Fax: 412-594-5619
Email: bmanne@tuckerlaw.com
         btupi@tuckerlaw.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | |
|---|---|
| In re: | ) Chapter 11 Case |
| | ) |
| LEHMAN BROTHERS SPECIAL FINANCING, INC., | ) Case No. 08-13888 (JMP) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |
| | ) |

------------------------------------------------------------x

| | |
|---|---|
| FEDERAL HOME LOAN BANK OF PITTSBURGH, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Adversary Proceeding No. _____ |
| | ) |
| J.P. MORGAN CHASE BANK, N.A.  and LEHMAN BROTHERS SPECIAL FINANCING, INC., | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

## <u>COMPLAINT</u>

Plaintiff Federal Home Loan Bank of Pittsburgh ("FHLB") for its complaint against

Defendants J.P. Morgan Chase Bank, N.A. ("JP Morgan") and Lehman Brothers Special

Financing, Inc. ("LBSF"), alleges through its undersigned counsel as follows:

## NATURE OF THE ACTION

1.      This is an action to recover more than $41 Million belonging to Plaintiff FHLB and deposited with LBSF to serve as collateral for certain derivative transactions and that is believed to be held by JP Morgan in an account established by LBSF.  In establishing that account, LBSF was acting as a fiduciary for the benefit of FHLB.  These funds are the property of FHLB, are not subject to the stay arising from the bankruptcy filing by LBSF, and are not a part of the bankruptcy estate.  FHLB has repeatedly demanded that LBSF return the $41 Million to FHLB, but LBSF has failed to return any portion of the amount due.  It is believed that JP Morgan is aware that the funds held in the account in question represent assets to which FHLB has an immediate right to possession.  Neither LBSF nor JP Morgan has a right to any portion of the $41 Million.  JP Morgan or LBSF are therefore holding the money in question without right.  To the extent that either JP Morgan or LBSF have disbursed the funds in question, they have converted the funds.

## PARTIES

2.      Plaintiff FHLB is a federal banking institution created by Congress to provide low-cost funding and opportunities for affordable housing and community development. FHLB serves 333 member financial institutions in Delaware, Pennsylvania and West Virginia, ensuring the availability of funds for housing.  The FHLB fills a critical role in providing liquidity for small businesses, community development, rural and agricultural loans, as well as home mortgage financing.

3.      JP Morgan is a national banking association with offices at 270 Park Avenue, New York, New York.  JP Morgan is the largest banking institution in the United States, measured by bank deposits, and is a leading global financial services firm with assets of $2.0

trillion and operations throughout the world.  JP Morgan, a sophisticated financial institution, is a leader in investment banking, commercial banking, financial transaction processing, and asset management.  Upon information and belief, JP Morgan has longstanding relationships with LBSF.

4.      Defendant LBSF is a corporation organized and incorporated under the laws of Delaware.  It is registered to do business in the state of New York and has its principal place of business at 745 Seventh Ave., New York, New York 10019.  LBSF is a subsidiary of Lehman Brothers, Inc.

## JURISDICTION AND VENUE

5.      This action is a civil proceeding arising in a case under the United States Bankruptcy Code, 11 U.S.C. §101 *et seq*. (the "Code"), within the meaning of 28 U.S.C. §1334(b).  It is properly brought as an adversary proceeding pursuant to Bankruptcy Rule 7001(2).

6.      This Court has jurisdiction of this adversary proceeding under 28 U.S.C. §§157 and 1334.

7.      This is a core proceeding as it relates to the Debtor, and a related-to proceeding as it relates to J.P. Morgan, pursuant to 28 U.S.C. §157(b)(2)(A), (O) and 157(b)(3).

8.      Venue of this adversary proceeding is proper in this District under 28 U.S.C. §1409(a), since Debtor's bankruptcy case is pending in this judicial district.

9.      The statutory bases for the relief requested in this Complaint in favor of FHLB include 11 U.S.C. §362 and 541, and FRBP Rule 3007.

## BACKGROUND FACTS

### The Relationship between LBSF and FHLB

10.    On or about June 26, 1997, LBSF and FHLB entered into an International Swap Dealers Association Master Agreement as well as an International Swap Dealers Association Credit Support Annex governing derivative transactions (collectively the "Agreement"). On or about April 21, 2003, FHLB and LBSF entered into an amendment to the Agreement.  Hereafter, the Agreement and the Amendment will be referred to collectively as the "Master Agreement."

11.    The Master Agreement is based upon the 1992 edition of the International Swap Dealers Association, Inc. ("ISDA") Master Agreement and the 1994 ISDA Credit Support Annex form which are the industry standards for such agreements.  Accordingly, the terms of the Master Agreement are well known within the financial industry and are and widely adopted by all parties to such agreements.  It is believed that JP Morgan was familiar with the terms of the Master Agreement.

12.    Since 1997, LBSF and FHLB have engaged in a series of derivative transactions ("the Transactions") under the terms of the Master Agreement.

### The FHLB Collateral

13.    Under and pursuant to the Master Agreement, both FHLB and LBSF had obligations to provide collateral securing their respective obligations to each other.  Hereafter, the transfers made by FHLB to LBSF to secure obligations arising under the Transactions will be referred to as the "FHLB Posted Collateral."

14.     Under and pursuant to the Master Agreement, the FHLB Posted Collateral was to be maintained by LBSF in a segregated account, apart from any account holding LBSF's own cash or securities.

15.     At all times relevant to this Adversary Proceeding, whenever required to do so under the terms of the Master Agreement, FHLB transmitted all FHLB Posted Collateral by wire transfer to an account maintained by LBSF at JP Morgan, bearing Account No. 066143543 (the "Collateral Account").

16.     Pursuant to the Master Agreement and in connection with the Transactions executed with LBSF under the Master Agreement, as of September 19, 2008, the amount of FHLB Posted Collateral held in the Account was in excess of $316,000,000.

17.     On October 2, 2008, FHLB sent a final settlement notice to LBSF pursuant to the Master Agreement netting FHLB obligations against the FHLB Posted Collateral. Pursuant to the final settlement, FHLB authorized the transfer of approximately $275 million to LBSF from the FHLB Posted Collateral, and demanded return of the balance of the FHLB Posted Collateral, approximately $41 million, plus default interest.

18.     After taking into account the transfer of $275 million that was authorized by the FHLB, the portion of FHLB Posted Collateral in the Account which is the property of FHLB is $41,545,541.68.  Hereafter, the $41 million of collateral that is to be transferred to FHLB will be referred to as the "FHLB Collateral Balance."

**Events of Default and Right to Return of the Collateral**

19.     The Master Agreement provided that in the event FHLB designates an Early Termination Date, all FHLB Posted Collateral plus interest calculated in accordance with the

Master Agreement, net of transfers to cover outstanding obligations, is to be transferred

immediately to FHLB.

20.     Under the Master Agreement, an Early Termination Date may be declared by

the non-defaulting party upon the occurrence of an Event of Default.

21.     Under the Master Agreement, an Event of Default occurs, <u>inter alia,</u> under any

of the following circumstances:

(a)     one of the parties or any "Credit Support Provider" of a party "becomes
        insolvent or is unable to pay its debts or fails or admits in writing its inability
        generally to pay its debts as they become due"; or

(b)     a party "institutes or has instituted against it a proceeding seeking a judgment
        of insolvency or bankruptcy or any other relief under any bankruptcy or
        insolvency law.".

22.     Lehman Brothers Holdings Inc. is designated as a Credit Support Provider

under the Master Agreement.

23.     On or about September 15, 2008, Lehman Brothers Holdings Inc. filed a

Petition in the U.S. Bankruptcy Court for the Southern District of New York seeking relief

under Chapter 11 of the United States Bankruptcy Code.

24.     Because Lehman Brothers Holdings Inc is a Credit Support Provider under the

Master Agreement, the filing of the Petition in Bankruptcy by Lehman Brothers Holdings Inc.

was an Event of Default under the Master Agreement.

25.     In accordance with the Master Agreement, and due to the occurrence of the

Event of Default, by letter dated and delivered September 19, 2008, FHLB as the non-

defaulting party designated September 19, 2008 as the Early Termination Date in respect of

all outstanding Transactions under the Master Agreement.

26.     Under the Master Agreement, LBSF was required immediately to return to FHLB the FHLB Collateral Balance.  However, despite demands duly made, LBSF has failed and refused to return all or any part of the FHLB Collateral Balance.

**Actions of LBSF and its Affiliates**

27.     On information and belief, it is averred that as the bankruptcy filing of Lehman Brothers Holdings Inc. became imminent, assets belonging to various subsidiaries and affiliates of Lehman Brothers Holdings Inc. were transferred out of the accounts maintained by LBSF and other Lehman subsidiaries and affiliates into accounts of Lehman Brothers Holdings Inc.

28.     On information and belief, Lehman Brothers Holdings Inc. sold to Barclays Capital, Inc. a large part of its assets, including cash accounts.

29.     On or about October 3, 2008, Lehman Brothers Holdings Inc. filed a Motion to Continue Using Existing Centralized Cash Management System.

30.     In its Motion, Lehman Brothers Holdings Inc. acknowledges that it engaged in the practice of sweeping cash from the accounts maintained by subsidiaries into a central operating account.

31.     In that Motion, Lehman Brothers Holdings Inc. admitted that the transactions involving LBSF did rely upon the cash management system to some degree.

32.     Lehman Brothers Holdings Inc. also admitted that "excess cash" from the LBSF Transactions were transferred to either the main operating account of Lehman Brothers Holdings Inc. or to an account referred to as the United Kingdom Operating Account, depending upon whether the cash was generated through U.S. transactions or European transactions.

33.     Additionally, at or about the time of the filing of the LBSF Chapter 11 Petition, certain allegations as to transfers of monies by LBSF came to the attention of FHLB, including allegations that LBSF may have transferred cash maintained in its accounts to Lehman Brothers Holdings Inc. accounts at or about the time of Lehman Brothers Holdings Inc. bankruptcy filing.  LBSF did not return phone calls in response to inquiries by FHLB concerning the location and return of the FHLB Collateral.

34.     These facts, particularly in light of LBSF's refusal to return to the FHLB Collateral to FHLB in accordance with its contractual obligations, raise the genuine danger that the FHLB Collateral Balance will disappear before the FHLB Collateral Balance is transferred to FHLB or its rights to recover the FHLB Collateral Balance can be adjudicated.

**Role of JP Morgan**

35.     JP Morgan is a sophisticated financial institution and upon information and belief is intimately familiar with the terms and conditions of the ISDA Master Agreement and Credit Support Annex.

36.     Upon information and belief JP Morgan was aware that the transfers to the Account by FHLB were transfers of FHLB Posted Collateral under the terms of the ISDA Master Agreement.

37.     Upon information and belief JP Morgan was aware that the transfers from FHLB to the Account include assets belonging to FHLB that are held by LBSF as a fiduciary for the benefit of FHLB.

## FIRST CAUSE OF ACTION

**Federal Home Loan Bank of Pittsburgh v. JP Morgan Chase Bank, N.A.**
**Constructive Trust**

38.     The averments in Paragraphs 1 through 37 are incorporated herein by reference.

39.     The FHLB Collateral Balance held in the Account is the property of FHLB.

40.     At all relevant times, JP Morgan, through its knowledge of the FHLB Master Agreement, was aware of the nature of the relationship between LBSF and FHLB.

41.     At all relevant times, JP Morgan was aware that the funds transferred to the Account by FHLB represented FHLB Posted Collateral.

42.     In holding the FHLB Posted Collateral, JP Morgan was acting as the agent and representative of LBSF.

43.     Upon information and belief, JP Morgan was aware of the bankruptcy filings of Lehman Brothers Holdings Inc. and almost as soon as they occurred.

44.     JP Morgan's knowledge of the source and purpose of the funds deposited to the Account by JP Morgan places JP Morgan in the position of trustee with respect to those funds.

45.     JP Morgan has a fiduciary obligation to transfer the FHLB Collateral Balance to FHLB.

46.     FHLB is entitled to the imposition of a constructive trust on the FHLB Collateral Balance held by JP Morgan.

WHEREFORE, Federal Home Loan Bank of Pittsburgh respectfully requests that this Court impose a constructive trust on the funds in the Account for the benefit of the Federal Home Loan Bank of Pittsburgh.

## SECOND CAUSE OF ACTION

**Federal Home Loan Bank of Pittsburgh v. JP Morgan Chase Bank, N.A.
Conversion (In the Alternative)**

47.     The averments in Paragraphs 1 through 46 are incorporated herein by reference.

48.     To the extent that JP Morgan has transferred from the Account all or any portion of the FHLB Collateral Balance, it has wrongfully exercised control over property of FHLB without the authority or consent of FHLB.

49.     To the extent that JP Morgan has transferred from the Account all or any portion of the FHLB Collateral Balance it has converted the property of FHLB.

WHEREFORE, Federal Home Loan Bank of Pittsburgh respectfully requests that to the extent JP Morgan Chase Bank, N.A. has transferred from the Account all or any portion of the FHLB Collateral Balance, judgment be entered in favor of the Federal Home Loan Bank of Pittsburgh and against JP Morgan Chase Bank, N.A. in the amount of all such transfers, up to the amount of $41,545,541.68.

## THIRD CAUSE OF ACTION

**Federal Home Loan Bank of Pittsburgh v. JP Morgan Chase Bank, N.A. and Lehman
Brothers Special Financing, Inc.
Injunction**

50.     The averments in Paragraphs 1 through 49 are incorporated herein by reference.

51.     FHLB has a contractual right to the immediate return of the FHLB Collateral Balance.

52.    An Order of Court directing LBSF and JP Morgan to immediately transfer the FHLB Collateral Balance to FHLB will enforce these contractual rights of FHLB, as permitted under 11 U.S.C. 362(b)(17).

53.    The refusal of either LBSF or JP Morgan to transfer to FHLB the FHLB Collateral Balance creates an imminent risk of irreparable harm to FHLB in that once the cash is transferred to other parties, to the Lehman Brothers Holdings Inc. main operating account or diverted to other operating accounts, it may be transferred to creditors of Lehman Brothers Holdings Inc. or to subsidiaries or affiliates of Lehman Brothers Holdings Inc. through the operation of the cash management system operated by Lehman Brothers Holdings Inc.

54.    Once transferred by LBSF or Lehman Brothers Holdings Inc. the FHLB Collateral Balance may be untraceable or unrecoverable.

55.    Because both LBSF and Lehman Brothers Holdings Inc. and several of the subsidiaries and affiliates of both LBSF and Lehman Brothers Holdings Inc. are insolvent and are seeking the protection of the bankruptcy laws, FHLB faces a genuine risk that FHLB will be unable to recover its property, namely the FHLB Collateral Balance.

56.    Because FHLB's entitlement to the FHLB Collateral Balance is clear, FHLB is likely to succeed on the merits, and the equities favor FHLB.

57.    FHLB will have no adequate remedy at law if the funds constituting the FHLB Collateral Balance are dispersed among Lehman creditors, subsidiaries, and affiliates.

WHEREFORE, the Federal Home Loan Bank of Pittsburgh respectfully requests an Order of Court directing JP Morgan immediately to transfer to the Federal Home Loan Bank the amount of $41,545,541.68, or in the alternative, barring Lehman Brothers Special

Financing, Inc. or JP Morgan Chase Bank, N.A. from transferring any of the FHLB Collateral

Balance from the Account, pending further Order of Court.

## FOURTH CAUSE OF ACTION

**Federal Home Loan Bank of Pittsburgh v. Lehman Brothers Special Financing, Inc.
Breach of Contract**

58.     The averments in Paragraphs 1 through 57 are incorporated herein by

reference.

59.     In accordance with the Master Agreement, immediately upon designation of an

early termination date, LBSF was contractually obligated to transfer to FHLB the FHLB

Collateral Balance and interest calculated in accordance with the agreements.

69.     Despite demands duly made, LBSF has failed and refused to transfer to FHLB

all or any part of the FHLB Collateral Balance.

61.     The refusal of LBSF to transfer to FHLB the FHLB Collateral Balance

constitutes a default and breach of the terms of the Master Agreement.

62.     FHLB is also entitled to recover from LBSF all costs, expenses and attorney

fees incurred in connection with efforts to of enforce its rights under the Master Agreement.

63.     FHLB has suffered damages in the amount of at least $41, 545,541.68 plus

interest, costs, expenses and attorney fees.

WHEREFORE, the Federal Home Loan Bank demands judgment against Lehman

Brothers Special Financing, Inc. in the amount of $41,545,541.68, plus interest and costs,

expenses and attorney fees.

## FIFTH CAUSE OF ACTION

**Federal Home Loan Bank of Pittsburgh v. Lehman Brothers Special Financing, Inc.
Constructive Trust**

64.     The averments in Paragraphs 1 through 63 are incorporated herein by
reference.

65.     LBSF is improperly in possession of the FHLB Collateral Balance and accrued
interest belonging to FHLB.

66.     At all relevant times, LBSF has been a fiduciary with respect to the FHLB
Collateral Balance, and has held the FHLB Collateral Balance in trust for and for the benefit
of FHLB.

67.     LBSF has violated its fiduciary duties to FHLB by failing to transfer the FHLB
Collateral Balance to FHLB.

68.     FHLB is entitled to the imposition of a constructive trust on the FHLB
Collateral Balance, wherever and however held by LBSF or any transferee of LBSF.

WHEREFORE, Federal Home Loan Bank of Pittsburgh respectfully requests that this
Court impose a constructive trust on the funds in the Account for the benefit of the Federal
Home Loan Bank of Pittsburgh.


## SIXTH CAUSE OF ACTION

**Federal Home Loan Bank of Pittsburgh v. Lehman Brothers Special Financing, Inc.
Conversion**

69.     The averments in Paragraphs 1 through 68 are incorporated herein by
reference.

70.    In failing to transfer the FHLB Collateral Balance to FHLB upon designation of an Early Termination Date and demand for such transfer, LBSF wrongfully exercised control over property of FHLB without the authority or consent of FHLB.

71.    LBSF's failure to transfer the FHLB Collateral Balance to FHLB constitutes conversion of the property of FHLB.

WHEREFORE, the Federal Home Loan Bank demands judgment against Lehman Brothers Special Financing, Inc. in the amount of $41,545,541.68, plus interest and costs, expenses and attorney fees.

## SEVENTH CAUSE OF ACTION

**Federal Home Loan Bank of Pittsburgh v. Lehman Brothers Special Financing, Inc.
Unjust Enrichment**

72.    The averments in Paragraphs 1 through 71 are incorporated herein by reference.

73.    In failing to transfer the FHLB Collateral Balance to FHLB upon designation of an Early Termination Date and demand, LBSF has been unjustly enriched at the expense of FHLB.

74.    It is unjust for LBSF to retain the FHLB Collateral Balance and it should be compelled to transfer the FHLB Collateral Balance to FHLB, its rightful owner.

WHEREFORE, the Federal Home Loan Bank demands judgment against Lehman Brothers Special Financing, Inc. in the amount of $41,545,541.68, plus interest and costs, expenses and attorney fees.

Dated: October 7, 2008            Respectfully submitted,

TUCKER ARENSBERG, P.C.

*/s/ Bradley S. Tupi*
Beverly Weiss Manne, Esq. (PA ID 34545)
Gary P. Hunt, Esq. (PA ID 23556)
Bradley S. Tupi, Esq. (BST1202)
Michael A. Shiner, Esq. (PA ID 78088)
Michael J. Stauber, Esq. (PA ID 201022)
1500 One PPG Place
Pittsburgh, PA 15222
(412) 566-1212
bmanne@tuckerlaw.com
ghunt@tuckerlaw.com
btupi@tuckerlaw.com
mshiner@tuckerlaw.com
mstauber@tuckerlaw.com

Counsel for Federal Home Loan Bank of
Pittsburgh

LIT:448393-11 020260-138012