# BCI Exhibit 645

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                       :
                                                            :
LEHMAN BROTHERS INC.,                                       :    08-01420 (JMP) SIPA
                                                            :
                       Debtor.                              :
                                                            :
------------------------------------------------------------x

## DECLARATION OF ROBERT L. MESSINEO

Robert Messineo declares under penalty of perjury as follows:

1. I am a partner in the law firm of Weil, Gotshal & Manges LLP ("Weil" or "the Firm"). I state the facts contained herein on my personal knowledge.

2. In September 2008, Lehman Brothers Holdings Inc. ("LBHI") engaged Weil's attorneys in connection with the commencement of a case under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"). I was a member of the team of attorneys at Weil that was engaged on matters related to the sale of certain assets of LBHI or certain of its subsidiaries (the "Asset Sale"), including assets of LBHI's broker-dealer subsidiary Lehman Brothers Inc. ("LBI"), to Barclays Capital Inc. ("Barclays"). I was one of the Weil attorneys responsible for drafting the letter agreement dated September 20, 2008, which was executed on September 22, 2008 by Barclays, LBHI, James W. Giddens as the Trustee for the SIPA liquidation of LBI, and LB 745 LLC (the "Clarification Letter"). Barclays' lawyers, including its in-house counsel and Cleary Gottlieb Steen & Hamilton LLP, were also involved in drafting the Clarification Letter.

3. The executed Clarification Letter is attached hereto as Exhibit A. Paragraph 8 of the executed Clarification Letter bears the heading "Transfer of Customer

Accounts" and the first sentence states: "All customer accounts of LBI (other than customer who are Affiliates of LBHI) shall be transferred to Purchaser." Clause (ii) of the second sentence of Paragraph 8 of the executed Clarification Letter, together with the lead-in phrase to such clause ("Paragrpah 8(ii)") provides as follows: "In connection therewith, Purchaser shall receive ... (ii) to the extent permitted by applicable law, and as soon as practicable after the Closing, $769 million of securities, as held by or on behalf of LBI on the date hereof pursuant to Rule 15c3-3 of the Securities Exchange Act of 1934, as amended, or securities of substantially the same nature and value."

    4.    I understood at all times while the Clarification Letter was being drafted that both securities and cash were being held in accounts maintained by LBI for the purpose of complying with Rule 15c3-3 for the benefit of and in order to protect the interests of customers of LBI. The accounts so holding securities or cash pursuant to Rule 15c3-3 are hereinafter referred to as the "Customer Reserve Accounts."

    5.    I understood at the time when the Clarification Letter was being drafted that the eventual disposition in connection with the Asset Transfer of the securities and the cash held in the Customer Reserve Accounts was one of the matters of discussion among the parties to the Clarification Letter. I understood at the time that this matter was one of the last matters under discussion to be resolved by the principals, occurring only late in the night of September 21, 2008 or in the early hours of September 22, 2008. I likewise understood that the disposition of the Customer Reserve Accounts as part of the Asset Transfer was directly connected with Barclays taking over responsibility for the non-affiliate customer accounts at LBI, which was the subject of discussion among the parties during this time period.

6.      By at the latest September 20, 2008, when the Clarification Letter was being developed, I understood that the cash and securities held in the Customer Reserve Accounts represented assets of LBI that had been put into the Customer Reserve Accounts for the benefit of its customers in order to comply with Rule 15c3-3 and could be withdrawn from the Customer Reserve Accounts only in accordance with the terms and conditions of Rule 15c3-3 and that, in effect, the approval of the U.S. Securities and Exchange Commission ("SEC") would be required for such action. I further understood (i) that specific securities were held in the Customer Reserve Accounts as of the close of business on September 19, 2008 and that the same securities would be in the Customer Reserve Accounts when Barclays took over the LBI non-affiliate customer accounts as provided by the Clarification Letter on Monday September 22, 2008, and (ii) that maintenance of Customer Reserve Accounts with respect to such customer accounts would be required after Barclays took over the LBI non-affiliate customer accounts. Accordingly, I understood at such time that, in order for LBI to transfer any of the contents of the Customer Reserve Accounts to Barclays, if such a transfer was agreed upon by the parties, the contents would have first to be withdrawn from the Customer Reserve Accounts in accordance with the terms of Rule 15c3-3. In addition, I understood at such time that the specific securities that would be maintained in the Customer Reserve Accounts from and after Monday, September 22, 2008, when Barclays was to take over the LBI non-affiliate customer accounts as provided by the Clarification Letter, could change after September 22, 2008 in compliance with the requirements of Rule 15c3-3 from what was in the accounts as of the start of business on September 22, 2008, as, for example, by reason of a debt security maturing during this time and the proceeds (or other contents) of the Customer Reserve Accounts being invested in other securities of the nature permitted to be held in the Customer Reserve Accounts.

7. When the principals agreed during the night of September 21, 2008 or the early hours of September 22, 2008 that the Asset Transfer was to include the securities in the Customer Reserve Accounts, I participated with others in the preparation of the provisions of Paragraph 8(ii). I understand these provisions to confirm, first, that the transfer of the securities in the Customer Reserve Accounts was to be done in connection with the transfer to Barclays of the non-affiliate customer accounts of LBI (but not necessarily at the same time as the transfer of such accounts to Barclays). I understood that the phrase, "to the extent permitted by applicable law," was included in Paragraph 8(ii) to reflect that the securities in the Customer Reserve Accounts were to be received by Barclays only where it was permitted for the securities to be withdrawn from the Customer Reserve Accounts in accordance with the terms and conditions of Rule 15c3-3 and, accordingly, that Barclays' right to receive the securities was conditional. Moreover, the provisions of Paragraph 8(ii) contemplate that this transfer would not necessarily occur immediately upon the consummation of the transfer of the other assets involved in the Asset Transfer. In providing that Barclays is to receive these securities "as soon as practicable after the Closing," I understood that this would be at the time when the terms and conditions of Rule 15c3-3 permitted securities to be withdrawn from the Customer Reserve Accounts, with the approval of the SEC.

8. I understood that the phrase "or securities of substantially the same nature and value" was included at the end of the second sentence of paragraph 8 of the Clarification Letter to take account of the potential for there to be a change in the specific securities held in the Customer Reserve Accounts between September 22 and the date when it became permissible to withdraw securities from the Customer Reserve Accounts.

9.  I did not understand, nor was I told by anyone, that the phrase "or securities of substantially the same nature and value" would entitle Barclays absolutely to $769 million in securities under Paragraph 8(ii), regardless of whether the conditions for withdrawal of securities from the Customer Reserve Accounts discussed above were fulfilled. My understanding at all times was that Paragraph 8(ii) only entitled Barclays to receive $769 million of securities in the Customer Reserve Accounts on the date of the Clarification Letter, or "securities of substantially the same nature and value" as would be in the Customer Reserve Accounts in replacement thereof, when the conditions for withdrawal of securities from the Customer Reserve Accounts were satisfied.

Dated: February 2, 2010
New York, New York

_____
Robert L. Messineo