# BCI Exhibit 648

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555(JMP); 08-01420(JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS INC., et al.


          Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS INC.


          Debtor.

- - - - - - - - - - - - - - - - - - - -x

          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          December 10, 2009

          2:03 PM

B E F O R E :

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1

2  SECURITIES INVESTOR PROTECTION CORPORATION PROCEEDING:

3  I. CONTESTED MATTERS:

4  HEARING re Trustee's Motion Pursuant to SIPA § 78fff-2(f),

5  Bankruptcy Code §§ 105(a) and 363(b), and Fed. R. Bankr. P.

6  9019(a) for Entry of an Order Approving the Trustee's

7  Implementation of the LBI Liquidation Order to Complete the

8  Account Transfers for the Benefit of Customers, Including the

9  Related Limited Settlement Agreement for the Benefit of Private

10  Investment Management Customers, and Terminating the Account

11  Transfer Process

12

13  II. ADVERSARY PROCEEDINGS:

14  Bank of America v. Lehman Brothers Special Finance, Inc.

15  [Adversary Case No. 08-01753]

16  HEARING re Motions for Summary Judgment

17

18  Veyance Technologies, Inc. v. Lehman Brothers Special Finance

19  Inc. [Case No. 09-01535]

20  HEARING re Motion to Deposit Funds into Court Registry

21

22

23

24

25

3

1

2    III. RULE 60(b) MATTERS:

3    HEARING re Motion to Compel Production of Documents from the

4    Trustee and the Committee Based on Privilege Waiver filed by

5    Hamish Hume on behalf of Barclays Capital, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

4

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4        Attorneys for Debtors

5        767 Fifth Avenue

6        New York, NY 10153

7

8    BY:  HARVEY R. MILLER, ESQ.

9         RICHARD W. SLACK, ESQ.

10        RICHARD A. ROTHMAN, ESQ.

11        RICHARD P. KRASNOW, ESQ.

12

13    HUGHES HUBBARD & REED LLP

14        Attorneys for James W. Giddens, Trustee for SIPA

15         Liquidation of Lehman Brothers Inc.

16        One Battery Park Plaza

17        New York, NY 10004

18

19    BY:  JAMES B. KOBAK JR., ESQ.

20         JEFFREY S. MARGOLIN, ESQ.

21         WILLIAM R. MAGUIRE, ESQ.

22

23

24

25

5

1

2   SECURITIES INVESTOR PROTECTION CORPORATION

3       805 15th Street, N.W.

4       Suite 800

5       Washington, DC 20005

6

7   BY:  KENNETH J. CAPUTO, ESQ.

8

9   UNITED STATES SECURITIES AND EXCHANGE COMMISSION

10       3 World Financial Center

11       New York, NY 10281

12

13   BY:  NEAL JACOBSON, ESQ.

14

15   UNITED STATES DEPARTMENT OF JUSTICE

16       Office of the United States Trustee

17       33 Whitehall Street

18       Suite 2100

19       New York, NY 10004

20

21   BY:  DIANA G. ADAMS, TRUSTEE

22       TRACY HOPE DAVIS, ESQ.

23

24

25

6

1

2    FEDERAL RESERVE BANK OF NEW YORK

3        33 Liberty Street

4        New York, NY 10045

5

6    BY:  SHARI D. LEVENTHAL, ESQ.

7

8    BROWN RUDNICK LLP

9        Attorneys for Newport Global Opportunities Fund LP,

10        Newport Global Credit Fund (Master) L.P., PEP Credit

11        Investor L.P., Providence Equity Partners VI L.P.,

12        Providence Equity Partners VI-A L.P., and Providence TMT

13        Special Situations Fund L.P.

14        Seven Times Square

15        New York, NY 10036

16

17    BY:  DAVID J. MOLTON, ESQ.

18        ANDREW S. DASH, ESQ.

19        HOWARD S. STEEL, ESQ.

20

21

22

23

24

25

7

1

2   BROWN RUDNICK LLP

3        Attorneys for Ad Hoc Group of Creditors

4        One Financial Center

5        Boston, MA 02111

6

7   BY:  ANGELO THALASSINOS, ESQ.

8        (TELEPHONICALLY)

9

10  CLEARY GOTTLIEB STEEN & HAMILTON LLP

11       Attorneys for Barclays Capital Inc.

12       One Liberty Plaza

13       New York, NY 10006

14

15  BY:  LINDSEE P. GRANFIELD, ESQ.

16

17  HOGAN & HARTSON L.L.P.

18       Attorneys for Westernbank Puerto Rico

19       875 Third Avenue

20       New York, NY 10022

21

22  BY:  DAVID DUNN, ESQ.

23       KATIE M. LACHTER, ESQ.

24

25

8

1

2    LAW OFFICES OF DAVID J. HOFFMAN

3         Attorney for Hipotecas De America, S.A.

4         One Whitehall Street

5         Suite 1825

6         New York, NY 10004

7

8    BY:  DAVID J. HOFFMAN, ESQ.

9

10   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

11        Attorneys for Official Committee of Unsecured Creditors

12        51 Madison Avenue

13        22nd Floor

14        New York, NY 10010

15

16   BY:  ERIC M. KAY, ESQ.

17

18   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

19        Attorneys for Official Committee of Unsecured Creditors

20        865 South Figueroa Street

21        10th Floor

22        Los Angeles, CA 90017

23

24   BY:  ERICA P. TAGGART, ESQ.

25        (TELEPHONICALLY)

9

1

2    SHEARMAN & STERLING LLP

3         Attorneys for Bank of America, N.A.

4         599 Lexington Avenue

5         New York, NY 10022

6

7    BY:   WILLIAM J.F. ROLL, III, ESQ.

8         DANIEL H.R. LAGUARDIA, ESQ.

9         KRISTEN M. FITZMAURICE, ESQ.

10        CHRISTINE MEIERS, ESQ.

11        COLIN H. CASSEDY, ESQ.

12

13   SONNENSCHEIN NATH & ROSENTHAL LLP

14        Attorneys for Hudson City Savings Bank

15        1221 Avenue of the Americas

16        New York, NY 10020

17

18   BY:   HUGH M. MCDONALD, ESQ.

19

20

21

22

23

24

25

```
                                                             10

 1

 2      STUTMAN, TREISTER & GLATT

 3           Attorneys for Perry Capital; Baupost Group; Stutman

 4            Treister & Glatt; and Elliott Company

 5           1901 Avenue of the Stars

 6           12th Floor

 7           Los Angeles, CA 90067

 8

 9      BY:  MARINA FINEMAN, ESQ.

10           GABRIEL GLAZER, ESQ.

11           ISAAC PACHULSKI, ESQ.

12           WHITMAN L. HOLT, ESQ.

13           (TELEPHONICALLY)

14

15      CHAPMAN & CUTLER LLP

16           Attorneys for US Bank

17           111 West Monroe Street

18           Chicago, IL 60603

19

20      BY:  JAMES HEISER, ESQ.

21           FRANKLIN H. TOP, III, ESQ.

22           (TELEPHONICALLY)

23

24

25
```

11

1               P R O C E E D I N G S

2          THE COURT:  Be seated, please.  I just want to be

3    clear that everybody knows that I have split the calendar and

4    that part of what was to have been heard this afternoon is

5    going to be heard tomorrow morning at 10:00.  I would just like

6    debtors' counsel to state publicly for the record what's on for

7    this afternoon so that if there's anybody here who can go home

8    and do other things, they can leave.  If everybody's properly

9    here, they're welcome to stay.

10          Did I ask the first really tough question?

11          MR. SLACK:  You might have.  I may need a minute to

12    get the matters down, Your Honor.

13          THE COURT:  I believe it is the LBI motion, Veyance

14    summary judgment and Bank of America and 60(b) for today.

15          MR. SLACK:  That sounds right, Your Honor.

16          THE COURT:  And if anybody is here on motions to

17    dismiss, any adversary proceedings, you're welcome to stay but

18    I'm going to be hearing those tomorrow morning at 10.  Okay.

19    Let's proceed.

20          MR. SLACK:  Your Honor, with respect to the four

21    matters that you just mentioned -- by the way, it's Richard

22    Slack from Weil Gotshal for the debtors.  Does Your Honor have

23    a suggestion or a preference as to how you'd like to order the

24    matters?

25          THE COURT:  Yes.  I'd like to start with LBI, then

12

1    Vance, because we're here this afternoon because of Vance's

2    original order to show cause.  And that's why we have a semi

3    omnibus day today.  I also understand that there is a timing

4    issue in respect of that matter.  Then the Bank of America

5    summary judgment argument and we'll close with the 60(b)

6    arguments on privileged waiver.

7            MR. SLACK:  All right.  Very good, Your Honor.  Thank

8    you.

9            MR. KOBAK:  Good afternoon, Your Honor.  James Kobak

10   on behalf of the SIPA trustee.  We appreciate your taking our

11   matter first.  I'm here today on a motion to approve completion

12   of all the transfers of customer accounts in this proceeding

13   including the final steps of the transfer of assets for the

14   benefits of customers having PIM accounts which are the

15   accounts that were transferred to Barclays.  I think in some

16   ways this is a historic occasion.  We're really talking about

17   the largest account transfer in the history of SIPA.  And

18   perhaps one of the largest, if not the largest, account

19   transfer of any kind ever.

20           I think it all was contemplated from the inception of

21   these proceedings and even before.  And it was described by

22   ourselves, Mr. Caputo, Mr. Miller and others at the sale

23   hearing that what was going to be involved in this proceeding

24   was the transfer of the great bulk of customer accounts but not

25   all of them.  It was always understood there were going to be a

13

1    few that would probably remain behind but that the great

2    majority would be transferred.

3            In all, over 110,000 accounts involving something

4    close to 92.5 billion in property for the benefit of customers

5    has been or will be transferred if Your Honor approves our

6    motion today.  This took place in three tranches:  first, the

7    so-called PAM accounts which went to Ridge Clearing on behalf

8    of Neuberger Berman; several hundred prime broker accounts who

9    participated in the trustee's protocol and were transferred to

10   other SIPC members; and finally, the PIM accounts which were

11   transferred to Barclays.

12           Even though it's been difficult and time consuming

13   and has taken a long time to be able to transfer every last bit

14   of property, every last dollar, and that's what we're about

15   here today, customers have had access to these accounts as if

16   all the property was in the account in virtually every case in

17   virtually the beginning of this liquidation.  And again, that

18   was a fundamental expectation and purpose of this liquidation

19   that not only would these customers be fully protected but

20   there wouldn't have to be a disruption in trading.

21           It also means that we do not have a customer claims

22   process which I estimate would be at least fifteen times larger

23   than the one we're dealing with today with attendant cost

24   delays and thousands and thousands of potential objections to

25   claims.

14

1    We're here today because we want to transfer the last

2    bit of property to complete the PIM conversion which is the

3    last step in the entire account transfer process.  This

4    involves some substitutions or payments for securities that

5    haven't been available for a variety of reasons.  This is

6    really the only part of this motion that anyone objects to and

7    that's on very general grounds, not because of any particular

8    terms of the proposed agreements or any factual issues.  The

9    debtor and the creditors' committee have looked at this.  They

10   also looked at the earlier Neuberger and some of the other

11   transfers and they don't oppose this motion.  And the SEC, New

12   York Fed and SIPC all specifically support it.

13   The reason that we have these problems that we're

14   trying to rectify today is that there's property that's held by

15   foreign custodians or affiliates who won't release it

16   voluntarily or are involved in their own insolvency

17   proceedings.  There are problems with transfers agents that we

18   have to deal with to transfer property.  In some cases, there's

19   excess margin that may have been involved in repos or became

20   collateral that was seized by banks or others, some amounts

21   that are owed by brokers that has not been delivered.  And some

22   of these same issues were involved in the PAM transfer to

23   Neuberger which, as I said, the holding company and the

24   creditors' committee have also looked at.  We're pursuing these

25   items but it's clear that we're not going to be able to recover

15

1    it any time soon and it's time to get this part of the transfer

2    done.

3            We also wanted to file this motion and come before

4    you and the rest of the interested parties to make this whole

5    thing as transparent as possible.

6            I want to say at the outset that this last step,

7    although it involves Barclays, isn't intended to benefit

8    Barclays.  It's for the benefit of customers.  And most of what

9    we're talking about will go into the customers' accounts, not

10   to Barclays.  It avoids claim disputes and confusion between

11   us, SIPC, Barclays and thousands of customers.  There's no love

12   loss between the trustee and Barclays at this point.  In our

13   other proceedings, which Your Honor is aware of, we're fighting

14   tooth and nail to protect customers in the estate by trying not

15   to allow Barclays to claim a dime that we don't think they're

16   entitled to under the proper interpretation of the sale

17   agreement or as part of the transaction that was explained to

18   and approved by this Court.

19           But these transfers aren't for the benefit of

20   Barclays; they're for the benefit of customers.  To the extent

21   there's some cash or property going to Barclays, it is only

22   because for a long period of time, Barclays funded these

23   accounts even when the property wasn't there.  The trustee is a

24   fiduciary and just as when it's necessary to proceed against

25   Barclays, he's prepared to do that aggressively.  He also

16

1    thinks in this case that Barclays is clearly entitled to that

2    property.

3            We've been careful to do the reconciliation and we've

4    negotiated hard, along with SIPC, to make sure that Barclays

5    isn't getting anything more than what they could be entitled

6    to.  Indeed, there will even be some property coming back to us

7    depending on what happens in the markets and in the case of a

8    few CUSIPS that may have been misdelivered to Barclays early on

9    in the proceeding.

10           And, as I say, the debtor and the committee in the

11   Chapter 11 have looked into this as well as the earlier

12   transfer to Neuberger's.  There are a few changes that have

13   been made to the order as a result of their review.  We

14   circulated those last night.  I think we've handed out copies,

15   a blacklined copy to everyone that's here.  And I have copies

16   with me today.  And if Your Honor approves this order, we'll

17   submit a copy of the final order to your clerks.

18           As I've said, SIPC, the SEC, the New York Fed support

19   this motion.  There are only four parties who object:

20   basically, Westernbank whose objection has been joined by three

21   other parties, Hipotecas, if I'm pronouncing that correctly,

22   the Hudson Bank and Newport.  They object only to the part of

23   the settlement agreement involving this final step in the PIM

24   transfers to Barclays and they do not -- they object solely on

25   legal or policy grounds but not because of any specific terms

1    of the agreement or any disputed factual issues.

2         Three of these parties, Westernbank, Hudson and

3    Hipotecas, have had their claims denied so far in our

4    proceeding because they're repo claims.  It's obviously an

5    issue that will come before Your Honor somewhere down the line.

6    Those accounts were not transferred as part of the PIM transfer

7    because repos were never -- accounts with repos in them were

8    never in the PIM account range at LBI.  I'm not even sure they

9    were really coded in a customer account range.

10         Hipotecas, as it turns out, had four other accounts

11   that were PIM accounts so those have been transferred.  But,

12   like other repo customers, when it comes to the repo account,

13   that's just not something that was included in the transfer.

14   It's not an account that Barclays agreed to take.

15         And just to complete the record, we've objected to

16   Newport's claim because we thing that was an account that was

17   really with LBIE and not with LBI.

18         The objectors make four basic points which I'll cover

19   just very briefly.  First, they say there's an inconsistency

20   between this motion and the motion we're making under 60(b) and

21   the adversary proceeding against Barclays.  I think I've

22   already addressed that.  But in addition to what I said

23   earlier, the settlement agreement and the order very carefully

24   and specifically carve out any res judicata or other effect on

25   the parties' positions in those other litigations.  So I don't

18

1   think that's really a serious issue.

2       They argue this motion is somehow inconsistent with

3   the allocation motion.  But the allocation motion only deals

4   with customer property for the net equity claims phase of the

5   liquidation.  And basically, what we're talking about is what's

6   left to be divided among customers on a net equity basis in

7   that process, which is a separate statutory process and phase

8   of the liquidation.

9       Third, they argue that in some sense, this transfer

10  is discriminatory as to those customers who aren't part of the

11  transfer.  And it is discriminatory in the sense that there are

12  customers in any situation like this who might have their

13  accounts satisfied more completely.  We'll certainly get return

14  of their property much sooner if they're included in an account

15  transfer than if they go through a claims process.

16  Unfortunately, that's just a bi-product of two things.  One is

17  that the statute specifically says that a trustee, with the

18  consent of SIPC, can transfer some, but not necessarily all,

19  accounts if that seems to be the efficient and prudent thing to

20  do that will maximize protection and eliminate expense.  And

21  that was done in this case.

22      And the second thing that causes it is just the fact

23  that there was no broker willing to take these miscellaneous

24  other accounts including the repo accounts.  Wherever the

25  trustee could find someone, as in the case of the prime brokers

19

1    who agree to the protocol, wherever we could find a broker who

2    would take the accounts, we tried to do that.  But

3    unfortunately, that couldn't be done in these cases.  We think

4    there's ample statutory authority for what the trustee did with

5    SIPC's consent.  And as I've said, the SEC, the New York Fed

6    and SIPC all support this motion.

7             The final point they make is that somehow doing this

8    transfer will slow down the claims process.  And, with all due

9    respect, that makes no sense to me.  We've proceeded in

10   parallel.  We've already decided -- we've already determined

11   more than eighty-seven percent of the public customer claims

12   even while we're doing the transfers.  If we didn't do the

13   transfers as I said before, it would have multiplied the number

14   of claims by a factor of at least fifteen and would have

15   increased the expense, the delay, the objections and so forth

16   in the claims process inordinately.  And in fact, that's

17   clearly one reason why we made the decision -- why the decision

18   was made early in this case that there should be a transfer of

19   accounts and certainly one reason why SIPA consented to it.

20            So we feel that all the statutory prerequisites have

21   complied with.  We feel that the transfers in general and this

22   final piece of it are clearly in the best interest of the

23   estate.  We think they serve the purpose that this proceeding

24   was all was intended to have.  And we'd ask Your Honor to

25   approve this last stage -- the whole process including the last

20

1    stage involving the final transfers of property through

2    Barclays to the customers who are transferred to Barclays.

3              THE COURT:  You say final.  Is there anything more

4    that you expect will be required in order to complete the

5    process of transferring all customer accounts?

6              MR. KOBAK:  There are a few little reconciliations

7    that will be made at the end.  But it doesn't really affect the

8    agreement or what we're asking Your Honor to do.  There may be

9    some calculations that have to be made.  The creditors'

10   committee and the debtor have asked to, not really for consent

11   in that process but to be advised of it.  And we willingly

12   agreed to do that.

13             THE COURT:  In the reply papers that you filed which

14   I reviewed in connection with the various objections that

15   you've just referred to, you make it clear that the accounts

16   being transferred are for the benefit of customers and not for

17   the benefit of Barclays.  However, in your oral presentation,

18   you also made clear that some value is going to Barclays

19   presumably to cover various advances made over the last more

20   than a year by Barclays --

21             MR. KOBAK:  That's correct.

22             THE COURT:  -- for managing these accounts.  So my

23   question is how much is actually going to Barclays in this

24   transaction to the benefit of their accounts.

25             MR. KOBAK:  I need to consult with someone, Your