SEAN A. O'KEEFE – NY Bar No. 1980853, CA State Bar No. 122417
sokeefe@winthropcouchot.com
PAUL J. COUCHOT – CA State Bar No. 131934
pcouchot@winthropcouchot.com
PETER W. LIANIDES – CA State Bar No. 160517
plianides@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
General Insolvency Counsel for Administratively
Consolidated Debtors-in-Possession and Counsel
to SCC Acquisitions, Inc.

LOUIS R. MILLER - State Bar No. 54141
smiller@millerbarondess.com
MARTIN H. PRITIKIN - State Bar No. 210845
mpritikin@millerbarondess.com
BRIAN A. PROCEL - State Bar No. 218657
bprocel@millerbarondess.com
**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
LOS ANGELES, CA 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400
Special Litigation Counsel for Administratively
Consolidated Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
In re

LEHMAN BROTHERS HOLDINGS INC., et al.,:

      Debtors.
---------------------------------------------------------x

**Chapter 11 Case No.**

**08-13555 (JMP)**

**(Jointly Administered)**

**SUNCAL DEBTORS' JOINT OPPOSITION TO MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR AUTHORITY TO COMPROMISE CONTROVERSY IN CONNECTION WITH A REPURCHASE TRANSACTION WITH FENWAY CAPITAL, LLC AND A COMMERCIAL PAPER PROGRAM WITH FENWAY FUNDING, LLC.**

**I.**
**INTRODUCTION**

The Compromise Motion seeks an order authorizing Lehman Commercial Paper,

Inc. ("LCPI") to purchase certain loans currently owned by Fenway Capital, LLC

62791.6

("Fenway"). The SunCal Debtors[1] have no desire to oppose this transaction (the "Transaction") or to otherwise participate in LCPI's bankruptcy case. The burdens associated with reorganizing their own affairs in the Central District of California are more than enough. However, the SunCal Debtors are concerned that LCPI may be implementing the Transaction to achieve an undisclosed objective that could materially impair their Chapter 11 cases pending in California since late 2008.

Specifically, they fear that LCPI intends to use this acquisition as a means to reassert the automatic stay to thwart the equitable subordination litigation that has been pending in the SunCal Debtors' case for over a year. If this is indeed LCPI's objective, then this should be disclosed to, and considered by, this Court, for two compelling reasons: (1) Just one month ago, the Honorable Erithe Smith, the Bankruptcy Court in California ("Judge Smith"), dismissed LCPI as a defendant from the above-mentioned litigation, *at LCPI's request*, in order to eliminate any conflict with the stay in this proceeding. To the extent that LCPI intends to re-insert itself into that litigation ***and to resurrect the very problem that Judge Smith just resolved***, this raises the issue of good faith. (2) If this is LCPI's objective, and this purported "benefit" factors into the consideration exchanged in the underlying transaction, then this Court's perspective on the merits of this intended course of action, both from a legal and equitable perspective, bears upon the merits of the Transaction itself.

---

[1] The "SunCal Debtors" includes Palmdale Hills Property, LLC ("Palmdale Hills"), SunCal Beaumont Heights LLC, SCC/Palmdale, LLC, SunCal Johannson Ranch, LLC, SunCal Summit Valley, LLC, SunCal Emerald Meadows, LLC ("SunCal Emerald"), SunCal Bickford Ranch, LLC ("SunCal Bickford"), Acton Estates, LLC ("SunCal Acton"), Seven Brothers, LLC, SJD Partners, Ltd., SJD Development Corp., Kirby Estates, LLC, SunCal Communities I, LLC ("SunCal I"), SunCal Communities III ("SunCal III"), LLC, SCC Communities LLC, North Orange Del Rio Land, LLC, and Tesoro SF, LLC (the "Voluntary Debtors"), and Steven M. Speier, the duly appointed trustee ("Trustee") for the Chapter 11 estates of LB/L-SunCal Oak Valley, LLC ("SunCal Oak Valley"), LB/L SunCal Northlake ("SunCal Northlake"), LLC, SunCal PSV, LLC ("SunCal PSV"), Delta Coves Venture, LLC ("SunCal Delta Coves"), SunCal Torrance LLC, SunCal Oak Knoll, LLC, SunCal Marblehead, LLC ("SunCal Marblehead"), and SunCal Heartland, LLC ("SunCal Heartland") (the "Trustee Debtors"). The Voluntary Debtors are moving parties herein; the Trustee Debtors will be filing a separate joinder.

1

To the extent the SunCal Debtors' concerns are misplaced, they are non-issues. As indicated above, their sole objective is to proceed with their own reorganization in California and not in any way to interfere with the instant cases pending in New York.

## II.
## SUMMARY OF MATERIAL FACTS

The Chapter 11 bankruptcy cases of the SunCal Debtors have been administratively consolidated and are pending before Judge Smith in California.

Between about 2005 and 2007, LCPI and its affiliate, non-debtor Lehman ALI, Inc. ("Lehman ALI") made loans and/or equity contributions to the SunCal Debtors totaling approximately $2 billion. The SunCal Debtors contend that Lehman ALI, LCPI and certain affiliates engaged in inequitable conduct vis-à-vis the SunCal Debtors and their other creditors. Accordingly, on January 6, 2009, the SunCal Debtors filed an adversary proceeding against various non-bankrupt Lehman-affiliates, including Lehman ALI and its successors on certain loans, Northlake Holdings, LLC ("Northlake Holdings") and OVC Holdings, LLC ("OVC") (collectively, the "Lehman Entities"), for equitable subordination and related claims (the "Adversary Proceeding"). LCPI, which opposed a relief from stay motion filed in this Court by the SunCal Debtors in November 2008, was not named as a defendant in the original Adversary Proceeding complaint.

In January 2009, LCPI moved for relief from stay in certain of the SunCal Debtors' proceedings to foreclose on properties securing its loans. Judge Smith ruled that the SunCal Debtors could defend against this motion by asserting claims for equitable subordination against LCPI. (LCPI appealed this ruling to the Bankruptcy Appellate Panel for the Ninth Circuit (BAP).) As a result of this ruling, the Adversary Proceeding complaint was amended in March 2009 to add LCPI as a defendant.

Through discovery, the SunCal Debtors learned in or about April 2009 that seven of the loans at issue in the Adversary Proceeding (the "Sold Loans") had been transferred to Fenway pursuant to an August 22, 2008 repurchase agreement ("Repo"). The Sold

2

62791.6

62791_6.DOC

Loans, and the Lehman Entity that filed claims in the SunCal Debtors' bankruptcy proceedings in connection therewith, were as follows:

| Loan | Claimant | Alleged Balance |
|---|---|---|
| SunCal Communities I Loan | LCPI | $343,221,391 |
| Ritter Ranch Loan | LCPI | $287,252,096 |
| SunCal PSV Loan | Lehman ALI | $88,257,340 |
| SunCal Delta Coves Loan | Lehman ALI | $206,023,142 |
| SunCal Marblehead/ Heartland Loan | Lehman ALI | $354,325,126 |
| Sun Cal Oak Valley Loan | OVC | $141,630,092 |
| SunCal Northlake Loan | Northlake Holdings | $123,654,777 |
| | **TOTAL** | **$1,544,363,964** |

Thus, nearly 80% of the loan values at issue were the subject of the Fenway Repo.

In May 2009, the SunCal Debtors filed a motion (the "Motion to Strike") to strike thirteen POCs (the "Disputed Claims") that had been filed by the Lehman Entities with respect to the Sold Loans. In June 2009, Judge Smith held that the Repo was a true sale in which title to the Sold Loans passed to Fenway. (Judge Smith later denied the Motion to Strike based on a finding that the Lehman Entities were authorized to file the Disputed Claims as agents of Fenway, which the SunCal Debtors have appealed.)

In July 2009, the SunCal Debtors filed a Third Amended Complaint naming Fenway as a defendant on the equitable subordination and related claims with regard to the Sold Loans. The Lehman Entities and Fenway each filed motions to dismiss the amended complaint. On March 5, 2010, Judge Smith denied the motions to dismiss the equitable subordination claims in their entirety, and denied those motions as to all but a few of the remaining preference claims. On March 26, 2010, the SunCal Debtors filed a Fourth Amended Complaint reflecting Judge Smith's March 5 ruling. The Lehman Entities and Fenway are expected to answer by April 15, 2010.

Significant discovery has been underway in the Adversary Proceeding. To date, the Lehman Entities, the SunCal Debtors, and other parties to the litigation have collectively produced several million pages of documents in response to requests for production. As a result of motions to compel the production of documents previously

62791 6.DOC

withheld, numerous additional documents are expected to be produced later this month. Depositions are set to commence on April 30, 2010.

On December 15, 2009, a divided BAP partially reversed Judge Smith, and ruled that the SunCal Debtors would need to seek relief from stay from this Court prior to pursuing claims for equitable subordination against LCPI. Since LCPI did not own the Sold Loans, and the equitable subordination judgment would only have a material effect upon the owner – Fenway – this ruling did not impair the pending action. However, to eliminate any risk in this regard, Judge Smith dismissed LCPI as a defendant in the Third Amended Complaint. *All (or nearly all)[2] of the claims that the SunCal Debtors seek to subordinate are owned by the non-bankrupt Lehman Entities, such as Lehman ALI, or by Fenway.* Thus, LCPI's automatic stay currently impacts, at most, only a fraction of the $2 billion in loans at issue in the SunCal Debtors' litigation.

By the Compromise Motion, the Lehman Entities are seeking to have debtor LCPI acquire from non-debtor Fenway *all seven* of the Sold Loans—not merely the two loans (SunCal Communities I and Ritter Ranch) for which the originator/claimant was LCPI all along, but also the five Lehman ALI-originated loans (Delta Coves, PSV, Marblehead/Heartland, Oak Valley and Northlake) for which the claimant was a *non-bankrupt* Lehman Entity, *i.e.*, Lehman ALI, OVC or Northlake Holdings.[3]

## III.
## ARGUMENT

The proposed transfer of the Sold Loans from Fenway to LCPI is not necessarily objectionable on its face. However, if LCPI intends to use the Transaction as a means to acquire property heretofore owned by a non-debtor, and then invoke its automatic stay to

---

[2] LCPI made a $95 million loan to SunCal Debtor SCC/Palmdale LLC—the only LCPI-originated loan that was *not* sold to Fenway pursuant to the Repo. However, LCPI has conceded that this loan was not supported by any value and that LCPI's automatic stay does not apply to it. LCPI has also contended that it retained a small portion of one of the Sold Loans, even after the Repo with Fenway.

[3] Prior to the Repo, Lehman ALI transferred the SunCal Oak Valley Loan and the SunCal Northlake Loan to OVC and Northlake Holdings, respectively.

block pending litigation regarding that same property, relief should be denied, or conditioned upon a stipulation modifying the stay to avoid this result.

A bankruptcy settlement sought in bad faith should not be approved. "[T]he legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the 'best interests of the estate.'" *In re Adelphia Communications Corp.*, 364 B.R. 518, 524 (Bankr.S.D.N.Y. 2007). "The 'best interests' standard under Bankruptcy Rule 9019 contemplates a determination by the bankruptcy court as to whether the proposed settlement was negotiated in good faith." *In re Healthco Intern., Inc.*, 136 F.3d 45, 53 (1st Cir 1998); *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr.N.D.Cal. 2004) (court must find "that the settlement was negotiated in good faith and is reasonable, fair and equitable."); *In re Kuhns*, 101 B.R. 243, 246-47 (Bankr.D.Mont. 1989) (rejecting approval of proposed settlement under Rule 9019 where settlement was "a sham and filed as a bad faith scheme to thwart legitimate, on-going efforts" by a third-party; settlement was sought for "an improper purpose" and therefore was proposed or negotiated in bad faith).

A debtor's acquisition of an asset subject to foreclosure or litigation, for the purposes of invoking its automatic stay, *is an abuse of process, and therefore is not in good faith*. In *In re Brannan*, 40 B.R. 20 (Bankr.N.D.Ga. 1984), approximately 14 months prior to the petition date, the debtor transferred certain real property to a third party. Subsequently, the real property was subject to a foreclosure proceeding. The debtor filed for bankruptcy relief, and less than two months after the petition date, the third party transferred the real property to the debtor. The debtor contended that the pending foreclosure was stayed, since the real property had become property of the estate. The court disagreed, and observed that an attempt to "shield a property interest under the automatic stay by conveying the property interest to" the debtor's estate during the pendency of the bankruptcy "*would be an abuse of the bankruptcy process.*" *Brannan*, 40 B.R. at 24-25 (emphasis added).

At the time of the SunCal Debtors' petition dates in November 2008, non-debtor Fenway had been the owner of the Sold Loans for months and continues to hold this ownership today. The SunCal Debtors' Adversary Proceeding is well into the discovery stage, and Fenway has been an active participant/defendant in that the litigation for almost a year. If LCPI—which recently persuaded the Bankruptcy Court in California to dismiss it from the Adversary Proceeding—acquires the Sold Loans and then invokes its stay with regard to these assets, so as to impede the Adversary Proceeding,[4] this would be "an abuse of the bankruptcy process." *Brannan*, 40 B.R. at 24-25.

It is also important for the Court to realize that five of the seven loans that LCPI is acquiring from Fenway through the Transaction were originated by Lehman ALI, a non-debtor Lehman entity, and held by Lehman ALI or other non-debtor affiliates, prepetition. Accordingly, if LCPI asserts its stay after the closing of the Transaction, this assertion would seek the extension of LCPI's stay to the five Lehman ALI-originated Sold Loans—over a *billion dollars* worth of debt. The automatic stay has *never previously been an issue* during the nearly year and half that the Adversary Proceeding has been pending insofar as these loans are concerned.

If LCPI is attempting to implement the above stratagem through the Transaction, and if this effort were to succeed, over $1.5 billion out of $2 billion in claims and liens at issue in the SunCal Debtors' proceedings could potentially be shielded from subordination. Obviously, this would seriously impair the SunCal Debtors' reorganization efforts and provoke another wholly unnecessary round of litigation.[5] *See*

---

[4] LCPI characterizes the proposed Transaction as a mere "repurchase [of] the Repo Assets from Fenway Capital pursuant to the terms of the MRA [Master Repurchase Agreement]." Motion at 6 ¶ 14. However, this transfer is not being effectuated through the original underlying Repo contract. Rather, it is being effectuated through an entirely new post-petition contract.

[5] Although the Compromise Motion asserts that the Transaction will "enable LCPI to circumvent further needless litigation over the Fenway Repo in the SunCal Cases," (Mot. at 6 ¶ 14), the SunCal Debtors believe that the Motion will fail to achieve that objective. Even if the Transaction is approved, it will not resolve various claims and issues to be litigated against Fenway, or concerning the Fenway Repo, before Judge Smith and/or the Ninth Circuit BAP. The SunCal Debtors expressly reserve all rights regarding the pursuit of such claims and interests (a copy of this Opposition will be attached to a status report being filed

6

*Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) ("property" of estate under 11 U.S.C. § 541(a)(1) includes the debtor's "causes of action").

## IV.
## CONCLUSION

The SunCal Debtors reiterate that they have no opposition to the Transaction if it will not impair their ability to proceed with necessary litigation that has been pending in their cases for over a year. If, in contrast, LCPI is seeking to achieve this objective through the Transaction, then the Motion should be denied, or relief should be conditioned upon relief from any prospective application of the stay.

DATED: April 7, 2010      **WINTHROP COUCHOT**
                                      **PROFESSIONAL CORPORATION**

By:   /s/ *Sean A. Okeefe*
       Paul J. Couchot, Esq.
       Sean A. Okeefe, Esq.
       Peter W. Lianides, Esq.
General Insolvency Counsel for Administratively Consolidated Debtors-in-Possession and Counsel to SCC Acquisitions, Inc.

DATED: April 7, 2010      **MILLER BARONDESS, LLP**

By:   /s/ *Louis Skip Miller*
       Louis Skip Miller, Esq.
       Martin H. Pritikin, Esq.
       Brian A. Procel, Esq.
Special Litigation Counsel for Administratively Consolidated Debtors-in-Possession

---

with Judge Smith), and reserve the right to seek additional relief from this Court should the Motion be granted.