Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc., et al.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                                                   :
In re:                                                             :   Chapter 11 Case No.
                                                                   :
LEHMAN BROTHERS HOLDINGS INC., et al.,                             :   08-13555 (JMP)
                                                                   :
                                    Debtors.                       :   (Jointly Administered)
                                                                   :
------------------------------------------------------------------ x

**STATEMENT OF OFFICIAL COMMITTEE
OF UNSECURED CREDITORS WITH RESPECT TO PROPOSED COMPROMISE IN
CONNECTION WITH REPURCHASE TRANSACTION WITH FENWAY CAPITAL,
LLC AND A COMMERCIAL PAPER PROGRAM WITH FENWAY FUNDING, LLC**

The Official Committee of Unsecured Creditors (the "Committee") of Lehman

Brothers Holdings Inc. ("LBHI") and each of its affiliated debtors in possession (collectively, the

"Debtors") hereby makes the following statement (the "Statement") with respect to the Debtors'

Motion Pursuant To Bankruptcy Rule 9019 For Authority To Compromise Controversy In

Connection With A Repurchase Transaction With Fenway Capital, LLC And A Commercial

Paper Program With Fenway Funding, LLC (the "Motion") [Docket No. 7831]:

## BACKGROUND

**A.      CP Program and Fenway Repo**

        1.      On September 10, 2008, Fenway Funding, LLC ("Fenway Funding") –

apparently as part of a commercial paper program (the "CP Program") initiated earlier that year

by the Debtors with the assistance of Hudson Castle Group, Inc. ("Hudson") – issued three commercial paper notes (the "CP Notes"), each with an initial face amount of approximately $1 billion and each having a term ending in late September 2008. The CP Notes were issued to Lehman Brothers Inc. ("LBI"), as placement agent, and LBI immediately thereafter transferred them to LBHI, as sole holder.

2. In order to secure its obligations under the CP Notes, Fenway Funding pledged certain variable funding notes (the "VFN Notes") issued by Fenway Capital, LLC ("Fenway Capital," and, together with Fenway Funding, the "Fenway Entities") under an indenture, with Deutsche Bank Trust Company Americas ("DBTCA"), as administrator and indenture trustee.

3. As part of the CP Program, Fenway Capital also entered into a repurchase agreement (the "Fenway Repo") with Lehman Commercial Paper, Inc. ("LCPI"), pursuant to which LCPI transferred to Fenway Capital its interests in certain real property loans and other assets (the "Repo Assets"). Fenway Capital, in turn, used the Repo Assets to secure its obligations under the VFN Notes. Although Fenway Capital was assumed to have used the proceeds received from LBHI for the CP Notes to purchase the Repo Assets, all currently available evidence suggests that no cash ever flowed from LBHI to either Fenway Entity or LCPI.

4. Based on the foregoing understanding of the transaction, the Repo Assets, which at all times remained in LCPI's custody, served as the ultimate security for the CP Notes issued to LBHI, with the result that, since LBHI owned the CP Notes and LCPI was obligated to repurchase the Repo Assets, the Fenway Repo was effectively a transaction between LBHI and LCPI, with Fenway serving as a mere conduit.

5. Immediately upon issuance, the CP Notes were pledged by LBHI to JPMorgan Chase Bank, N.A. ("JPM"), in partial satisfaction of JPM's request for additional collateral in the days leading up to LBHI's chapter 11 filing.

**B.     SunCal Litigation**

6. Among the Repo Assets were certain term loans (the "SunCal Loans") to various affiliates of SCC Acquisitions, Inc. (collectively, the "SunCal Debtors") with an aggregate face value of over $1 billion. In a motion filed in their own chapter 11 cases (the "SunCal Cases"), the SunCal Debtors sought to strike the proofs of claim filed in the SunCal Cases by LCPI and other Lehman entities on account of the SunCal Loans. The SunCal Debtors alleged that the SunCal Loans had previously been "sold" under the Fenway Repo, and, consequently, that the Debtors had no authority to file proofs of claim on account thereof.

7. The bankruptcy court in which the SunCal Cases are pending (the "SunCal Court") initially sided with the SunCal Debtors on this argument, but then reversed itself to conclude that, even if LCPI did not own the SunCal Loans, it had authority to file the proofs of claim at issue as agent for itself and the other SunCal Loan lenders. Both rulings of the SunCal Court are currently on appeal to the Ninth Circuit Bankruptcy Appellate Panel.

8. Since LBHI had pledged the CP Notes to JPM, JPM's consent was required to return them to Fenway Funding as part of any repurchase of the SunCal Loans. Had that not been the case, LCPI could have repurchased the SunCal Loans from Fenway Capital early in these chapter 11 cases and potentially avoided a substantial portion of the litigation in the SunCal Cases. However, now that JPM's agreement to assign the CP Notes back to LBHI has been approved by the Court as part of a larger settlement with JPM, LCPI is in a position to repurchase the SunCal Loans and avoid further litigation regarding the Fenway Repo in the

3

SunCal Cases.

C. **<u>Fenway Settlement</u>**

9. Accordingly, LBHI and LCPI (the "<u>Applicable Debtors</u>") have proposed to enter into a settlement agreement with the Fenway Entities (the "<u>Fenway Settlement</u>") that would provide for the unwinding of both the CP Program and the Fenway Repo by: (i) LCPI repurchasing the Repo Assets from Fenway Capital; (ii) LBHI returning the CP Notes to Fenway Funding and Fenway Funding returning the VFN Notes to Fenway Capital; (iii) the parties agreeing that the return of the CP Notes to Fenway Funding and the termination of the VFN Notes (with no cash changing hands) will constitute payment in full for the Repo Assets; (iv) Fenway Capital assigning to LCPI all of Fenway Capital's claims and interests with respect to the SunCal Cases; (v) all parties exchanging mutual releases; (vi) Fenway and DBTCA withdrawing their respective proofs of claim filed against LBHI and LCPI; (vii) LBHI indemnifying the Fenway Entities and Hudson with respect to certain claims related to the Repo Assets; and (viii) LBHI and LCPI reimbursing Hudson for approximately $1.62 million in fees and expenses.

10. The Applicable Debtors submit that the Fenway Settlement is beneficial to their estates because, unless the SunCal Loans are repurchased, LBHI and LCPI may be required to (i) seek consent from the Fenway Entities and DBTCA prior to taking certain actions with respect to the Repo Assets, with adverse consequences for their ability to maximize the value thereof; and (ii) continue to litigate in the SunCal Cases the ownership of the SunCal Loans. The expenses that will be required in connection with the foregoing may be significant and would include indemnities owed to Fenway Capital in connection with the litigation in the SunCal Cases, as well as administrative fees payable to DBTCA, Hudson, and other parties so long as

the Fenway Repo and the CP Program exist.

**STATEMENT**

11. The Committee concurs in the Applicable Debtors' view that the unwinding of the CP Program and the Fenway Repo, and the attendant benefits for the Debtors' position in the SunCal Cases, are in the best interests of the Debtors' estates. The burden of continued litigation and the danger of an ultimately adverse ruling in the SunCal Cases are real. The SunCal Court appears to have turned the corner in the Applicable Debtors' favor on this issue, but its favorable ruling as to the SunCal Loans remains subject to a pending appeal. A reversal could once again call into question (without good reason) the ownership of the Sun Cal Loans, and subject the Applicable Debtors, the Fenway Entities, and Hudson to renewed litigation. Moreover, the relief actually requested by the Motion is narrow: it seeks to adjudicate solely the respective rights of the Applicable Debtors, the Fenway Entities, Hudson and DBTCA, expressly reserving all rights as to intra-Debtor and other related issues.

12. On the other hand, the Committee initially had significant concerns about the scope of the proposed releases and indemnities that the Fenway Settlement proposed to grant to the Fenway Entities and Hudson. These concerns arose, in large part, out of the observation in the Examiner's Report[1] that the CP Notes were "actually asset backed commercial paper credit enhanced by Lehman (that is, it was Lehman, rather than a third party, that effectively guaranteed principal and interest payments) . . . [which] JPMorgan concluded . . . was worth practically nothing as collateral."[2] While the Examiner reached no conclusions about the Fenway Repo, his remarks on the subject raised more questions than they answered about,

---

[1] Report of Anton R. Valukas, Examiner dated March 11, 2010.
[2] Examiner's Report at 1071-72.

among other issues, the relevant flow of funds, the origin of the Repo Assets, and the overall purpose of the transaction.

13. The Committee's investigation as to these issues is ongoing, but, at this juncture, remains incomplete. Given this circumstance, the Committee initially informed the Applicable Debtors that, while it was comfortable with the proposed unwinding of the CP Program and the Fenway Repo, it would be compelled to object to the broad releases and indemnities granted to the Fenway Entities and Hudson by the Fenway Settlement until more was known about the transaction generally, and the role of these entities with respect thereto in particular.

14. However, subsequent discussions among the Committee, the Applicable Debtors, and counsel for the Fenway Entities and Hudson have resulted in an agreement in principle to limit the scope of these releases and indemnities to preserve certain claims that the Applicable Debtors might have against the Fenway Entities and Hudson with respect to the CP Program and the Fenway Repo. Subject to documentation of this agreement in principle, the Committee supports the relief requested in the Motion.

**WHEREFORE**, the Committee respectfully requests that the Court (i) grant the Motion to the extent modified to limit the scope of the releases and indemnities granted to the Fenway Entities and Hudson; and (ii) grant the Committee such other relief as is just and proper.

**Dated:** New York, New York
April 9, 2010

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: /s/ Dennis F. Dunne
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.