WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                  :

**In re**                               :       **Chapter 11 Case No.**
                                  :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :       **08-13555 (JMP)**
                                  :

                **Debtors.**       :       **(Jointly Administered)**
                                  :

-------------------------------------------------------------------x

**REPLY IN SUPPORT OF DEBTOR'S OBJECTION TO PROOF OF**
**CLAIM FILED BY LATSHAW DRILLING COMPANY, LLC (CLAIM NO. 18346)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Commercial Paper Inc. ("LCPI"), as and for its reply to the response (the

"Response") of Latshaw Drilling Company, LLC ("Latshaw") to LCPI's objection (the

"Objection")[1] to Latshaw's proof of claim (the "Claim") and in further support of the Objection,

respectfully represents:

        1.      The Response contains no fact or law sufficient to compel this Court to

overrule the Objection.  Instead, the Response requests that the Court permit Latshaw to

withdraw its Claim, without prejudice, so that Latshaw may seek to determine the value of the

Claim in the Oklahoma Court and attempt to recoup any value from amounts that Latshaw owes

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the
Objection.

to LCPI under the Credit Agreement.  This Court should deny Latshaw's affirmative request for

relief and disallow Latshaw's Claim, as it may be amended, for the reasons set forth in the

Objection and herein.

## I.
### The Court Should Deny Latshaw's Affirmative
### <u>Request to Withdraw Its Claims Without Prejudice</u>

2.     Latshaw requests that the Court ignore the merits of the Objection and

permit Latshaw to withdraw the Claim without prejudice.  (Resp. ¶ 22.)  Under applicable law,

however, the Court should deny Latshaw's request and rule on the Objection.

3.     Bankruptcy Rule 3006 "vests discretion in the court to grant, deny, or

condition the request of a creditor to withdraw" a disputed claim.  *Adkinson v. LTV Corp.* (*In re*

*Chateaugay Corp.*), 165 B.R. 130, 132 (S.D.N.Y. 1994) (citing Advisory Committee Note).

Factors pertinent to bankruptcy courts' analyses include (i) the adequacy of claimant's

explanation for the need to withdraw, (ii) the extent to which the claim has progressed, including

the debtor's effort and expense in preparation for litigation, (iii) the duplicative expense of

relitigation, and (iv) any "undue vexatiousness" on the claimant's part.  *Id.*  The Southern

District of New York has recognized that "[o]nce a claim is objected to, the claim should be

heard by the bankruptcy court.  Withdrawal of the claim will not necessarily eliminate its impact

on the debtor."  *Id.* at 133 (citing 8 Collier on Bankruptcy, § 3006.01 (15th ed. 1987)).

### A.     <u>No Adequate Explanation for the Need to Withdraw the Claim</u>

4.     In support of its request to withdraw the Claim, Latshaw offers essentially

one argument, albeit repeated throughout the Response:  Latshaw filed the Claim only as a

"protective measure" to reserve and preserve a purported right to recoup amounts it asserts LCPI

owes it from amounts that it owes LCPI.  (Resp. at 1, 2, ¶¶ 22, 25, 26, 29, 35.)  Latshaw's

argument is inadequate to support the requested relief.  The Credit Agreement, quoted by

Latshaw (*see* Resp. ¶ 3), clearly states that Latshaw voluntarily waived any rights it may have

had to recoupment.  (*See* Objection ¶¶ 26-27.)  In denying Latshaw's request for relief, the Court

may and should determine, as a matter of law, that any damage claim that Latshaw may have

against LCPI is a prepetition, general unsecured claim, which may not be setoff or recouped

against amounts owed to LCPI pursuant to the Credit Agreement.[2]  As set forth in this reply,

there can be no doubt that this Court, and not the Oklahoma Court, has core jurisdiction to make

determinations regarding the allowance of general unsecured claims against LCPI, including the

Claim.

### i.    Latshaw waived its right to recoupment

5.    New York law provides that where the language of a contract is

unambiguous, no extrinsic evidence is necessary to prove the intent of the parties.  *State v. Home

Indem. Co.*, 486 N.E.2d 827, 829 (N.Y. 1985).  If the contract's language is unambiguous and

the words are plain and clear, conveying a distinct idea, there is no need for the court to resort to

other means of interpretation.  *Western Union Tel. Co. v. Am. Commc'ns Ass'n, C.I.O.*, 86

N.E.2d 162, 166 (N.Y. 1949).

6.    As set forth in the Objection, the Credit Agreement, which is governed by

New York law, includes numerous provisions which clearly and unambiguously obligate

Latshaw to repay LCPI the full amount borrowed from LCPI.  (*See* Objection ¶ 15.)  Pursuant to

section 2.4(a), Latshaw "unconditionally promise[d] to pay to [LCPI] . . . the entire unpaid

principal amount of each Loan of such Lender on such date on which the Loans become due and

---

[2] Such a determination would not be a violation of the automatic stay extant in Latshaw's chapter 11 case, because Latshaw submitted to this Court's jurisdiction and sought affirmative relief from this Court.  (*See* Objection ¶ 8, n.2.)

payable."  Credit Agreement § 2.4(a).  Pursuant to section 2.9(d), Latshaw agreed that "[a]ll

payments (including prepayments) to be made by [Latshaw] . . . , whether on account of

principal, interest, fees or otherwise, shall be made without setoff or counterclaim."  *Id.* § 2.9(d).

No contract language could be clearer.

7.      Nothing in the Credit Agreement or the Response supports Latshaw's

argument that the Credit Agreement permits Latshaw to recoup any value from amounts that

Latshaw owes to LCPI under the Credit Agreement.  Latshaw offers three arguments, each of

which fails.

8.      First, Latshaw observes that the Credit Agreement uses the terms "setoff"

and "counterclaim," rather than "recoupment," and Latshaw suggests the terms are distinct.

(Resp. ¶¶ 3, 29.)  LCPI does not dispute that there is a distinction between setoff and recoupment

for bankruptcy purposes.  But even assuming, *arguendo*, that Latshaw's claim against LCPI is a

claim for recoupment, Latshaw waived its claim under the Credit Agreement.  Notably, Latshaw

fails to cite any authority whatsoever to dispute the case law from the United States Courts of

Appeals for the Second and Tenth Circuits and courts in the Northern District of Oklahoma and

Southern District of New York which consider  "recoupment" to be a "counterclaim."  (*See*

Objection ¶ 27, n.4.)  Even Latshaw subsequently concedes, in complete contradiction to its

argument, that counterclaims "necessarily include setoff and recoupment."  (Resp. ¶ 4.)

9.      Latshaw's second argument, that counterclaims are permitted pursuant to

section 9.18 of the Credit Agreement, is another red herring.  (Resp. ¶¶ 4, 29.)  Notably, LCPI

never argued that Latshaw waived all rights to assert counterclaims against LCPI.  The Credit

Agreement is clear, however, that Latshaw waived such rights in connection with repayments of

amounts owed to LCPI under the Credit Agreement.  Credit Agreement §§ 2.4(a), 2.9(d).  Thus,

Latshaw was required to repay LCPI in full, and if Latshaw had a counterclaim against LCPI, it may have been entitled to recover as a general unsecured creditor of LCPI on account of its prepetition claim.[3]  Latshaw's misguided theory would violate "a fundamental rule of contract interpretation:  i.e., when interpreting a contract, the entire contract must be considered so as to give each part meaning."[4]

10.    Third, Latshaw argues that "the prohibition [in the Credit Agreement] on setoff or counterclaim applies merely to regularly-scheduled payments."  (Resp. ¶¶ 3, 30.)  However, the very language quoted by Latshaw refers to "All payments" to be made by Latshaw.  (*Id.* ¶ 3 (quoting Credit Agreement § 2.9(d)).)  Again, the Credit Agreement is clear and unambiguous.

11.    Beyond simply preserving a claim "as a protective measure," Latshaw has in reality sought affirmative relief in this Court.  In doing so, it relies on its purported right of recoupment.  Latshaw has raised the recoupment issue and, therefore, presented the Court with an opportunity to preserve an asset of LCPI's estate in the context of ruling on Latshaw's request for affirmative relief.  Based on the foregoing, the Court should determine, as a matter of law, that Latshaw waived its right to recoup any claim that Latshaw may have against LCPI against amounts owed to LCPI pursuant to the Credit Agreement.

---

[3] Here, Latshaw may only recover as a general unsecured creditor if the Claim, as amended, is not disallowed in its entirety.

[4] *Brooke Group v. JCH Syndicate*, 663 N.E.2d 635, 637 (N.Y. 1996); *Laba v. Carey*, 277 N.E.2d 641, 644 (N.Y. 1971) ("[A] court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect."); *Cruden v Bank of N. Y.*, 957 F.2d 961, 976 (2d Cir. 1992).  Under Latshaw's theory, sections 2.4(a) and 2.9(d) would be meaningless.

### ii.    This Court is the proper forum to
### determine the status of claims against LCPI

12.    The foregoing analysis demonstrates that the Court should disregard Latshaw's repeated assertions that Latshaw is not seeking a cash distribution from LCPI's estate on account of its Claim.  (*See* Resp. at 1, ¶¶ 23, 25, 26, 35.)  Because recoupment and setoff are not available under the terms of the Credit Agreement, Latshaw's only recourse would be to assert an unsecured claim for direct damages.  Such a claim would result in a cash distribution and, therefore, the bulk of the Response is irrelevant.

13.    This Court undoubtedly has jurisdiction and is the appropriate forum to determine the allowability of general unsecured claims against LCPI's estate.  The determination of the "allowance or disallowance of claims against [LCPI's] estate" and "other proceedings affecting . . . the adjustment of the debtor-creditor . . . relationship" are core proceedings over which this Court has jurisdiction.  28 U.S.C. § 157(b)(2)(B), (O).  The United States Supreme Court and the United States Court of Appeals for the Second Circuit have consistently recognized that the bankruptcy court in which a claim is filed has core jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B) to determine that claim.  *See Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable jurisdiction."); *Katchen v. Landy*, 382 U.S. 323, 333 n.9 (1966) ("[H]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide by the consequences of that procedure."); *S.G. Phillips Constructors, Inc. v. City of Burlington* (*In re S.G. Phillips Constructors, Inc.*), 45 F.3d 702, 707 (2d Cir. 1995) ("[W]hen a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim . . . ."); *Gulf States Exploration Co. v. Manville Forest Prods. Corp.* (*In re Manville Forest Prods. Corp.*),

896 F.2d 1384, 1389 (2d Cir. 1990) ("[B]y filing a proof of claim, [claimant] submitted itself to

the equitable power of the bankruptcy court to disallow its claim.").  By filing its Claim against

LCPI's estate for damages resulting from LCPI's alleged breach of the Credit Agreement,

Latshaw has submitted itself to the jurisdiction and equitable power of this Court to determine its

Claim.

　　　　　14.　　　The issue here is not whether the Oklahoma Court has jurisdiction to

determine the allowability of LCPI's claim against Latshaw.  (*See* Resp. ¶¶ 24-27.)  The

Southern District of New York has acknowledged that the issue of recoupment pertains to the

allowance or disallowance of a claim filed against a debtor, *i.e.*, LCPI, and affects the adjustment

of the debtor-creditor relationship, making the issue a "core proceeding" under 28 U.S.C.

§ 157(b)(2)(B) and (O) that can be determined by the bankruptcy court in which the claim is

filed.  *E.g.*, *Statutory Comm. of Unsecured Creditors v. Motorola* (*In re Iridium Operating LLC*

*v. Motorola, Inc.*), 285 B.R. 822, 831-32 (S.D.N.Y. 2002) ("[C]reditor's assertion of a set-

off/recoupment claim likewise affects the allowance or disallowance of claims against the estate

and are core under § 157(b)(2)(B).") (citation omitted).[5]  The Court's determination of the Claim

---

[5] *See also N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc.* (*In re N. Am. Energy Conservation, Inc.*), 2000 WL 1514614, at *2, No. 00-40563 (PCB) (S.D.N.Y. Oct. 12, 2000) ("[R]egardless of whether a setoff is labeled an 'affirmative defense' or a 'counterclaim', a setoff is a claim against the bankruptcy estate . . . . [B]y pleading setoffs in the form of 'affirmative defenses,' [creditor] has in fact asserted a claim against [debtor's] bankruptcy estate" determination of which is a core proceeding); *Interconnect Tel. Servs., Inc. v. Farren*, 59 B.R. 397, 400-01 (S.D.N.Y. 1986) ("[W]here the estate brings an action against a creditor and the creditor counterclaims asserting a setoff, it is entirely appropriate for the action to be classified as a core proceeding.").  In *Commercial Fin. Servs., Inc. v. Jones* (*In re Commercial Fin. Servs. Inc.*)*, 251 B.R. 397, 404-08 (Bankr. N.D. Okla. 2000) (DLR), , a creditor asserted defense of setoff and/or recoupment against the debtor for the  debtor's breach of contract.  .  In that case, the Oklahoma Court judge before whom Latshaw's case is pending rejected the creditor's argument that he had not asserted a claim against the debtor because he was not seeking affirmative recovery from the debtor's estate.  The Oklahoma Court ruled that because (i) pleading setoff as an affirmative defense is in fact the assertion of an affirmative claim against

and Latshaw's purported right of recoupment is a proper exercise of the Court's jurisdiction and not the act of a "collection agency," as asserted by Latshaw. (*See* Resp. ¶ 23.) If this Court determines Latshaw has no right to recoupment, Latshaw will lack any cognizable grounds on which to object to or reduce LCPI's claim in the Oklahoma Court.

**B.  Extent to Which the Objection Has Progressed**

15.    The relief requested by LCPI in the Objection and by Latshaw in the Response have been fully briefed, a hearing has been scheduled for April 14, 2010, and the issues are ready for determination as a matter of law by this Court. In contrast, Latshaw's objection to LCPI's claim in the Oklahoma Court was filed on February 24, 2010, contemporaneously with the Response.[6] LCPI's deadline to respond to that objection is not until April 26, 2010. No hearing date has even been sought by Latshaw for consideration of its objection, and the hearing will not be scheduled before April 30, 2010.

**C.  Expenses of Relitigation in the Oklahoma Court**

16.    Latshaw dismisses the significant time and expense that LCPI and its professionals have devoted to the preparation and prosecution of the Objection and this reply and the judicial resources that the Court has expended in consideration of the foregoing and the Response. Latshaw proposes that the parties ignore the work done in this Court, start over in Oklahoma, and litigate the same issues that are currently before this Court. Moreover, in

---

the estate's right to recover from creditor, which itself is property of the estate, (ii) the creditor would be elevating his claim to a secured claim if allowed, (iii) assertion of setoff, whether as a defense or as a counterclaim, invokes the claim allowance process, and (iv) assertion of a claim against the debtor's right to recover from creditor is integral to the restructuring of the debtor-creditor relationship, by asserting defense of setoff, the creditor had asserted a claim against the debtor and invoked the bankruptcy court's jurisdiction to determine his claim and his right to setoff pursuant to 28 U.S.C. § 157(b)(2)(B) and (O).

[6] A copy of Latshaw's objection to LCPI's claim is attached hereto as Exhibit A.

connection with such efforts, LCPI would bear not only its own expenses, but would also be funding Latshaw's expenses, because Latshaw currently is using LCPI's cash collateral to fund its operations and its chapter 11 case. Such a result is not in the best interest of LCPI, its creditors or parties in interest. All parties would benefit from this Court's decision of the issues before it.

### D.    Vexatiousness of Latshaw's Request

17.    Latshaw waited more than five months since filing the Claim and more than three months since filing its chapter 11 case to seek to withdraw the Claim. Given all of the foregoing facts and legal arguments, Latshaw's request to have the Claim determined by the Oklahoma Court can only be interpreted as an attempt to forum shop for a perceived home-town advantage. The delay in adjudication, duplication of judicial resources and additional expense that would result from Latshaw's request can only be viewed as a vexatious attempt to gain leverage in the negotiations regarding the terms of a restructuring of LCPI's secured loan to Latshaw.

18.    Moreover, it is disingenuous for Latshaw to claim that there is no undue vexatiousness on its part because "it merely seeks to assert a defensive right to recoup its damages against the claim of LCPI in the Latshaw Bankruptcy Case." (Resp. ¶ 22.) Latshaw seeks to disallow LCPI's proof of claim in its entirety and has requested that the Oklahoma Court excuse Latshaw's entire obligation to repay the more than $45.4 million owed to LCPI under the Credit Agreement. (*See* Latshaw objection to LCPI claim ¶ 1.)

### E.    Negative Impact on LCPI

19.    As the Response indicates and as described above, withdrawal of the Claim on the terms proposed by Latshaw will not eliminate its impact on LCPI. On the contrary,

Latshaw will continue attempts to recoup the value of the Claim from amounts that it owes to

LCPI under the Credit Agreement.  In such circumstances, on the other hand, LCPI risks being

subject to conflicting judicial decisions regarding standard provisions in LCPI's loan agreements,

an important component of LCPI's estate.

## II.
## The Court Should Disallow the Claim

20.    Latshaw requests that the Court permit it to amend the Claim with a proof

of claim mailed contemporaneously with its Response.  A copy of the amended claim, which was

assigned Claim No. 66324 by the Debtors' Court-approved claims and noticing agent, is attached

hereto as Exhibit B (the "Amended Claim").  Assuming, *arguendo*, that the Court permits

Latshaw to amend the Claim, the Amended Claim should nonetheless be disallowed.

21.    Latshaw concedes that it waived special, exemplary, punitive and

consequential damages under the section 9.12 of the Credit Agreement.  (Resp. ¶ 35.)  Thus, the

threshold issue for the Court is whether the damages alleged in the Amended Claim fall into

those categories.[7]  Latshaw alleges they do not.  (*Id.* ¶¶ 35-39.)  The law is clear, however, that

they do.

22.    According to the Amended Claim:

Latshaw's damages comprise primarily the costs of equipment and supplies to
build drilling rigs for which funds were to be loaned pursuant to the Credit
Agreement.  Upon the breach of the Credit Agreement by LCPI, Latshaw could
not complete the rigs, but remained obligated to pay for certain goods and
supplies which had been ordered and which could not be cancelled.  Additional

---

[7] LCPI reserves all of its rights to dispute the amount of any claim that may be found to be
general damages, including its rights to conduct discovery related thereto.  Latshaw provided
electronic copies of 129 invoices to support a portion of its $18,090,000 Claim amount.  An
initial review reveals approximately 40% may be duplicates and a substantial portion thereof
may have been incurred well after LCPI's failure to fund advances to Latshaw.  Thus, there may
be issues about whether and to what extent Latshaw mitigated its losses.

costs consist of the loan commitment fee, legal fees accrued by Latshaw, interests costs, and potential liability to vendors where Latshaw was unable to perform.

(Amended Claim at 2.)  Latshaw offers self-serving characterizations, but cites no law, to support its theory that its damages are "general" as opposed to "special," "exemplary," "punitive" or "consequential."  It labels the Amended Claim as "direct damages" (*id.* at 13) and contends they "flow directly and naturally" from LCPI's breach and "were properly within the contemplation of the parties at the time of entry into the Credit Agreement."  (*Id.* at 14.)  None of the cases cited in the Response stand for the proposition that damages of the type asserted are "general."  Moreover, none of the cases cited in the Response refute the cases cited by LCPI in the Objection.  (*See* Objection ¶ 24.)

23.    Latshaw correctly cites the "accepted rule . . . that on the breach of a contract to lend money general damages are limited to the cost of replacement financing." (Resp. ¶ 37.)  But Latshaw makes a faulty, unsupported leap of logic when it suggests that "heavier damages" awarded to borrowers, in circumstances where replacement financing was not available, are "general" damages.  (*Id.*)  The law is clear that, in such a case, "[a]n inability to obtain the money elsewhere may have caused the corporation *special* damage."  *Eaton v. Reich*, 179 N.E. 385, 387 (N.Y. 1932) (emphasis added).[8]

_____

[8] *See generally* 3 Dan B. Dobbs, *Law of Remedies* § 12.4(7) (2d ed. 1993), which provides:

> It is usually said that for breach of a contract to lend money, the plaintiff is entitled to general damages based on the difference between the interest rate contracted for and the market rate available after the breach, so that a claim for lost profits because the loan money was not available may be denied as not within the contemplation of the parties.  However, in a good many cases courts have approved the idea of special damages based on the borrower's loss of profits or loss of ownership of property which would have been salvaged by the promised loan, or reliance damages incurred when, after the breach of the lender's contract a substitute loan is not available elsewhere.

24.     "Special" or "consequential" damages seek to compensate a plaintiff for *additional* losses, other than the value of the promised performance, that are incurred as a result of the defendant's breach. *Rensselaer Polytechnic Inst. v. Varian, Inc.*, 340 Fed. Appx. 747, 750 (2d Cir. 2009). Damages not arising within the scope of plaintiffs' transactions with defendants that result in a foreseeable way from the losses incurred by plaintiffs because of defendants' breaches are "special" or "consequential," not "general." *E.g.*, *R.B. Matthews, Inc. v. Transamerica Transp. Serv., Inc.*, 945 F.2d 269, 274 (9th Cir. 1991) (quoted in *Enron Wind Energy Sys., LLC v. Marathon Elec. Mfg. Corp.* (*In re Enron Corp.*), 367 B.R. 384, 408 (Bankr. S.D.N.Y. 2007)); *Am. List Corp. v. U.S. News and World Report, Inc.*, 549 N.E.2d 1161, 1164 (N.Y. 1989).

25.     Here, Latshaw failed to even allege that it attempted to find alternate financing following LCPI's purported breach of the Credit Agreement. The Amended Claim does not seek the difference between the interest rate in the Credit Agreement and the market rate, *i.e.*, general damages arising within the scope of an agreement to lend money. Instead, the Amended Claim seeks damages that are special and consequential.[9] As Latshaw concedes, it waived the right to claim such damages. Therefore, the Claim and the Amended Claim should be disallowed.

---

[9] LCPI reserves all of its right to argue that any losses Latshaw suffered were neither foreseeable nor contemplated by the parties, particularly in light of the unprecedented upheaval in credit markets that occurred in September 2008.

26.     In the event that the Court were to find any portion of the Amended Claim to be a claim for "general" damages, as set forth above, the Court must find that such claim is a general unsecured claim against LCPI, not a claim secured by the right of recoupment, for the reasons set forth in the Objection and above.

WHEREFORE LCPI respectfully requests that the Court grant the relief requested in the Objection and herein, enter an order substantially in the form attached hereto as Exhibit C, and grant such other and further relief as it deems just and proper.

Dated: April 12, 2010
     New York, New York

    /s/ Jacqueline Marcus
    Jacqueline Marcus

    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

    Attorneys for Debtors
    and Debtors in Possession

## EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **Latshaw Drilling, LLC** | ) | **Case No.  09-13572-R** |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| ———————————————— | ) | |
| In Re: | ) | **Case No. 09-13574-R** |
| | ) | **Chapter 11** |
| **Latshaw Drilling & Exploration Company, Inc.** | ) | |
| | ) | **Administratively Consolidated** |
| | ) | **Under Case No. 09-13572-R** |
| Debtor. | ) | |

## OBJECTION TO LEHMAN COMMERCIAL PAPER INC.'S
## PROOF OF CLAIM, (CLAIM NO. 20), NOTICE TO
## FILE RESPONSE, AND NOTICE OF OPPORTUNITY FOR HEARING

Latshaw Drilling Company, LLC, a Texas Limited Liability Company, the Debtor and
Debtor-In-Possession herein (the "*Debtor*" or "*Latshaw*"), pursuant to Fed. R. Bankr. P. 3007
objects to the secured proof of claim [#20] filed February 16, 2010, by Lehman Commercial Paper
Inc. ("*LCPI*") in the amount of $45,847,390.21 (the "*LCPI Claim*") as follows:

### Relief Requested

1.      Latshaw seeks to have the LCPI Claim disallowed and expunged in its entirety on the
grounds that LCPI's material breach of the Credit Agreement (as defined herein) excuses Latshaw's
further performance, including the obligation of repayment.  In the alternative, Latshaw seeks to
prove and to recoup its direct and actual damages of $18,090,000.00 against the LCPI Claim,
reducing and allowing the LCPI Claim as a secured claim in the amount of not more than
$27,757,390.21.

<u>**Jurisdiction**</u>

2.      The Court has jurisdiction to consider and determine this matter pursuant to 28

U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

<u>**Background**</u>

**A.  The Latshaw Bankruptcy**

3.      On November 11, 2009, Latshaw and its' parent company, Latshaw Drilling &

Exploration Company (*"Latshaw D&E"*), filed voluntary petitions for relief under the Bankruptcy

Code, which are being jointly administered under case number 09-13572-R.  Latshaw continues to

operate its' business as a Debtor and Debtor-in-Possession.

4.      Pursuant to stipulations approved by the Oklahoma Court, Latshaw has the use of

LCPI's cash collateral through April 30, 2010.

5.      Latshaw scheduled the claim of LCPI as a disputed claim in the amount of

$69,185,668.33, subject to recoupment for damages and counter-claim, and secured by property with

a value of $191,534,786.00, in its' schedules.[1]  See, Docket No.1, p. 18.

6.      Pursuant to Order of this Court, the Bar Date in the Latshaw bankruptcy case was

February 16, 2010.

7.      On February 16, 2010, LCPI filed the LCPI claim in the Latshaw bankruptcy case for

not less than $45,847,390.21, comprising principal in the amount of $45,245,990.71, accrued interest

of $101,399.50, and an estimated $500,000.00 for "additional costs, fees, expenses or other amounts

due and owing to LCPI under the Loan Documents".  LCPI Claim, ¶ 7.  A copy of the LCPI Claim,

without exhibits, is attached hereto as Exhibit "A".

---

[1]      This disputed scheduled claim includes amounts due to LCPI and to Ableco Finance LCC ("<u>Ableco</u>")
pursuant to the Credit Agreement.  On February 16, 2010, Ableco filed its proof of claim for not less than
$24,014,671.62.  The Ableco claim is not the subject of this objection.

## B.    The Credit Agreement[2]

8.        On June 10, 2005, Latshaw and its' parent company, Latshaw D&E, entered into a Credit Agreement (the "*2005 Credit Agreement*"), as Borrower, with LCPI as Syndication Agent and Administrative Agent, Lehman Brothers Inc. ("*LBI*") as Arranger, and several banks and financial institutions as Lenders (collectively, Latshaw, LCPI, LBI, the Lenders, and Latshaw D&E, the "*Parties*"). The 2005 Credit Agreement was originally for $45 million for five new oil and gas drilling rigs which Latshaw was building.  Within a few weeks after entering into the 2005 Credit Agreement, the credit line was increased to $60 million after Latshaw obtained contracts for two more rigs.  In January, 2006, the credit line was increased to $80 million based upon contracts for another two rigs.  It was at this time that LCPI brought Ableco in as a loan participant for $20 million, or twenty-five percent (25%) of the total credit line.   Latshaw's maximum borrowings under the 2005 Credit Agreement were $78.5 million on the $80 million loan.  In the six months between November, 2007, and May, 2008, Latshaw paid down $18.5 million on the 2005 Credit Agreement, reducing the loan to $60 million.  Latshaw Aff., ¶ 15.

9.        In July, 2008, due to continued demand in the energy industry, Latshaw decided to build an additional six new rigs, for a cost of $80 to $90 million.  LCPI, with the concurrence of Ableco, agreed to increase the credit line to $100 million, or an additional $40 million above the $60 million, then owed under the 2005 Credit Agreement.  Accordingly, on July 11, 2008, the Parties entered into that certain "$100,000,000 Amended and Restated Credit Agreement among Latshaw Drilling Co, LLC, as Borrower, Latshaw Drilling & Exploration Company, The Several Lenders from Time to Time Parties Hereto, Lehman Brothers Inc., as Arranger, Lehman Commercial Paper

---

2        Additional information concerning the Credit Agreement and Latshaw's damages are set forth in the "Affidavit of Trent B. Latshaw in Support of Petition and First Day Motions," Docket No. 14 (the "*Latshaw Aff.*") and its exhibits.

08-13555-smg  Doc 8823  Filed 04/12/10  Entered 04/13/10 11:36:57  Main Document
Case 09-13572-R  Document 148  Filed in USBC ND/OK on 02/24/10  Page 4 of 17

Pg 18 of 35

Inc., as Syndication Agent, and Lehman Commercial Paper Inc., as Administrative Agent Dated as
of July 11, 2008" (the "*Credit Agreement*").  Latshaw Aff., ¶ 16-17.  A copy of the Credit
Agreement is attached hereto as Exhibit "B".

10.    Section 9.11 of the Credit Agreement provides for New York choice of law, and
section 9.12 for non-exclusive New York jurisdiction.

### C.  LCPI's Material Breach and Subsequent Bankruptcy

11.    Pursuant to Section 2.2 of the Credit Agreement, upon delivery of a Borrowing
Notice to LCPI as Administrative Agent one to three days before the Borrowing Date specified
therein, LCPI was required to promptly notify the Lenders who were to provide their proportionate
share of funds to LCPI in order to fund the loan or loans to Latshaw on the Borrowing Date.

12.    On September 15, 2008, Lehman Brothers Holdings Inc. and a number of its
subsidiaries commenced voluntary cases under chapter 11 of the Bankruptcy Code in the Southern
District of New York (the "*New York Court*"), which cases are being jointly administered under
Case No. 08-13555 (JMP) (the "*Lehman Bankruptcy Cases*").  LCPI was not among the subsidiaries
which commenced a case on September 15, 2008.

13.    On September 17, 2008, in accordance with the party's prior practice, Latshaw faxed
a Borrowing Notice to Lehman requesting a draw for the remaining undrawn balance of $37,000,000
on September 18, 2008.[3]  Latshaw Aff., ¶ 20, Ex. B.

14.    Latshaw received no response to the Borrowing Notice from LCPI or LBI.  Ableco
did agree to fund its 25% portion of the loan, provided that Latshaw remit all payments due to
Ableco under the Credit Agreement directly to Ableco, rather than to the Administrative Agent.

---

[3]    On August 26, 2008, Latshaw had made borrowing request for $3 million in funding which was
honored by LCPI and Ableco, although LCPI deducted the $600,000 commitment fee for the credit line from the funding,
effectively providing $2.4 million to Latshaw.

Latshaw agreed to this arrangement, as did LCPI and LBI, and Latshaw received $9,250,000 from Ableco.  Latshaw Aff., ¶ 21, Ex. C.

15.     On October 5, 2008, LCPI commenced its voluntary chapter 11 case in the New York Court, Case No. 08-13900, which is being administered jointly with the Lehman Bankruptcy Cases under Case No. 08-13555 (JMP).

16.     Pursuant to Order of the New York Court, the Bar Date in the Lehman Bankruptcy Cases was September 22, 2009.  In an abundance of caution and to protect its rights to recoup any damages to which it is entitled, Latshaw filed its' proof of claim in the Lehman Bankruptcy Cases on September 22, 2009 (the "*Latshaw Claim*"), prior to commencing this case.

17.     On January 22, 2010, LCPI filed its' objection to the Latshaw Claim in the New York Court, Docket No. 6729, (the "*LCPI Objection*").  A copy of the LCPI Objection, without exhibits, is attached as Exhibit "C".  The LCPI Objection is scheduled for a hearing on March 17, 2010, and Latshaw's Response to the LCPI Objection (the "*Latshaw Response*") is due on February 24, 2010.[3]

18.     In the LCPI Objection, LCPI admits that it failed to fund its 75% of the Borrowing Notice and that Ableco did fund its 25%.  LCPI Objection, ¶ 13.

### D.  Latshaw's Damages

19.     Latshaw's damages comprise primarily the costs of equipment and supplies to build drilling rigs for which funds were to be loaned pursuant to the Credit Agreement.  Upon the breach of the Credit Agreement by LCPI, Latshaw could not complete the rigs, but remained obligated to pay for certain goods and supplies which had been ordered and which could not be cancelled.

---

3       The Latshaw Response seeks to have the Latshaw Claim withdrawn or dismissed without prejudice to its right to prove its damages in this Court and to recoup such damages against the LCPI Claim.  In the alternative, the Latshaw Response seeks to have the Latshaw Claim allowed and to recoup its damages – to be determined by this Court – against the LCPI Claim in this case.

Additional costs consist of the loan commitment fee, legal fees accrued by Latshaw, interest costs, and potential liability to vendors where Latshaw was unable to perform.

### Objection to LCPI Claim

### A.  This Court Is the Proper Forum To Determine The Amount Of The LCPI Claim Against Latshaw

20.      A determination of the amount of the LCPI Claim and the amount of damages which Latshaw may recoup against the LCPI Claim, is properly a decision for this Court.[4]  In re Metiom, Inc., 301 B.R. 634, 638 (Bankr. S.D.N.Y. 2003).  Nor should the automatic stay in the Lehman Bankruptcy Cases apply to the claims objection proceedings in this case.  Id.; Justus v. Financial News Network Inc. (In re Financial News Network Inc.), 158 B.R. 570, 573 (S.D.N.Y. 1993)(objection to proof of claim which does not seek affirmative relief not a violation of automatic stay).  See, e.g., Logan v. Credit General Ins. Co. (In re PRS Ins. Group, Inc.), 331 B.R. 580, 586 (Bankr. D. Del. 2005)(jurisdiction over proof of claim includes jurisdiction over all defenses to proof of claim).  LCPI admits as much.  Objection, fn. 2.

21.      Latshaw does not assert an affirmative claim against LCPI, seeking distribution of assets of the LCPI estate.  Rather, the Latshaw Claim, which was filed as a protective measure in Lehman Bankruptcy Cases, is a defensive claim against the LCPI Claim, seeking to recoup damages against the amount of the LCPI Claim in the Latshaw bankruptcy case where the LCPI claim is under dispute.  It is not an attempt to exercise control over LCPI's property, but is a defense to the LCPI claim filed in the Latshaw bankruptcy case.  See, Metiom, Inc., 301 B.R. at 638.

---

4        LCPI asserts that its proof of claim is not subject to any setoff and counterclaim by Latshaw.  LCPI Claim at ¶ 9.  However, nowhere in the Credit Agreement is recoupment prohibited, and Latshaw disputes that the Credit Agreement prohibits counterclaims, except in the context of the mechanics of making regularly scheduled payments.  Credit Agreement, § 2.9(d).  Counterclaims in legal proceedings were within the contemplation of the parties, as demonstrated by the waiver of jury trial with respect thereto.  Id., § 9.18.

22.     When looking at the equities of the two proofs of claim – one filed by Latshaw in the Lehman bankruptcy cases in the New York Court which does not seek a recovery from LCPI's estate, and the other filed by LCPI in this case seeking recovery of not less than $45,847,390.21 – it is apparent that the true contest revolves around LCPI's claim against Latshaw, and therefore the amount of the LCPI Claim and the ability of Latshaw to recoup its damages against that claim should be determined by this Court.

23.     Accordingly, Latshaw respectfully submits that this Court is the appropriate forum in which to determine the amount of Latshaw's damages which may then be recouped against the LCPI Claim in this case.

## B. Recoupment Of Latshaw's Damages Against The LCPI Claim Is Appropriate And Does Not Implicate the Automatic Stay in the Lehman Bankruptcy Cases

24.     "Recoupment allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the *same transaction* to arrive at a just and proper liability on the plaintiff's claim."   In re Clowards, 42 B.R. 627 (Bankr. D. Idaho 1984)(allowing recoupment of claim for damages in breach of contract action to reduce balance due on contract)(emphasis in original).  A recoupment claim is "essentially a defense" to a claim, rather than a mutual obligation.  In re Davidovich, 901 F.2d at 1537 (quoting Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir. 1984).

25.     While it is true that for pleading purposes the distinctions between setoff and recoupment retain little significance, the distinction between the two remains important in bankruptcy.  In re B & L Oil Co., 782 F.2d 155, 157 (10th Cir. 1986); In re Davidovich, 901 F.2d 1533, 1537 (10th Cir. 1990)("recoupment, while frequently merged with the doctrine of setoff in other contexts, is a distinct doctrine in bankruptcy cases.").  See, e.g., Westinghouse Credit Corp. v.

D'Urso, 278 F.3d 138, 145 N.2 (2d Cir. 2002)(plaintiff was on notice of assertion of recoupment and setoff defenses although defendant only pled setoff).

26.     Further, permitting Latshaw to prove and recoup its damages against the LCPI Claim in this case does not implicate the automatic stay in the Lehman bankruptcy cases. Although some courts have held otherwise, "the better view" is that the automatic stay does not apply to bar or restrain a legitimate right of recoupment. 5 Collier on Bankruptcy (15th ed. rev.) § 553.10. Also see In re University Medical Center, 973 F.2d 1065, 1080 (3rd Cir. 1992); In re Malinowski, 156 F.3d 131, 133 (2d Cir. 1998)("[r]ecoupment . . . is not subject to the limitations of section 553 or the automatic stay"); In re Powell, 284 B.R. 573, 576 (Bankr. D.Md. 2002)(recoupment "is treated as a non-statutory exception to the automatic stay in many courts"). See, also, Justus, supra, 158 B.R. at 573; Logan, supra, 331 B.R. at 586.

27.     Accordingly, because Latshaw's damages are the direct result of LCPI's breach of the Credit Agreement, and thus arise from the same transaction, Latshaw should be permitted to recoup the amount of damages which it proves in this court against the LCPI Claim.

### C.  Latshaw Should Be Excused from Further Performance Under the Credit Agreement Because of LCPI's Material Breach

28.     LCPI's material breach excuses Latshaw from performance. A breach is material if it "defeats the object of the parties in making the contract" and the injured party is deprived of its expected benefit. ESPN, Inc. v. Office of the Comm'r of Baseball, 76 F.Supp.2d 416, 421 (S.D.N.Y. 1999); Frank Felix Associates, Ltd. v. Austin Drugs, Inc., 111 F.3d 284, 289 (2d Cir. 1997)("Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties."). It cannot be controverted that LCPI's failure to fund when required to do so was a material breach of the Credit Agreement, going to the very root and purpose of the contract between the parties.

29.     A material breach by one party can suspend or discharge the other party's duty of performance if failure is material.  <u>Valley National Bank v. Abdnor</u>, 918 F.2d 128 (10th Cir. 1990)(SBA excused from obligation to purchase loan by bank's material breaches of loan agreement); <u>Bear, Sterns Funding, Inc. v. Interface Group-Nevada, Inc.</u>, 361 F.Supp.2d 283, 291 (S.D.N.Y. 2005)("A fundamental principle of contract law provides that the material breach of a contract by one party discharges the contractual obligations of the non-breaching party.")

30.     Such a remedy for material breach can extend even to excusing the obligation of repayment.  A New York case directly on point is <u>Binghamton Masonic Temple, Inc. v. City of Binghamton</u>, 158 Misc.2d 916, 602 N.Y.S.2d 310 (Sup. N.Y. 1993), where a lender's breach in failing to fund under a loan agreement excused the borrower's obligations of future performance, including that to repay loan proceeds previously advanced.

31.     Accordingly, LCPI's claim should be disallowed in its entirety because of its material breach of the Credit Agreement.

### D.  Alternatively, Latshaw Should Be Permitted to Recoup against the LCPI Claim After the Amount of Its Damages Has Been Determined by this Court

32.     The nature and amount of Latshaw's damages which it seeks to recoup against the LCPI Claim, can only be determined after evidence has been presented and the parties have been given an opportunity to provide appropriate legal argument.  Latshaw submits that the damages for which it seeks recoupment are not "special, exemplary, punitive or consequential" damages (which Latshaw properly concedes are waived by ¶ 9.12(e) of the Credit Agreement) but are damages which flow directly and naturally from LCPI's admitted breach, were properly within the contemplation of the parties at the time of entry into the Credit Agreement, and that both the amount of its damages and its right to recoup such damages against the LCPI Claim in this case will be proved in this Court.

33.     General damages are those damages "which are the natural and probable consequence of the breach". American List Corp. v. U.S. News and World Report, Inc., 75 N.Y.2d 38, 42-43, 459 N.E.2d 1161, 1164, 550 N.Y.S.2d 590, 593 (N.Y. 1989); W.C. Loftus & Co. v. Bennett, 68 A.D. 128, 74 N.Y.S. 290 (1st Dep't 1902)(general damages are natural result of, and presumed by law to have accrued from, wrongful act).

34.     While the accepted rule is that in an action for breach of a contract to lend money general damages are limited to the cost of obtaining replacement financing, Bond Street Knitters, Inc. v. Peninsula Nat'l Bank, 266 A.D. 503, 504 (N.Y. App. Div. 1943).  However, this measure of damages presumes that replacement financing is, or would have been, available.  However, where replacement financing is unavailable and the lender had reason to foresee the unavailability of replacement funding, the borrower's damages – such as costs incurred in partial construction which cannot be completed or lost opportunity – are damages which flow directly from the breach. American List Corp., 75 N.Y.2d at 42-43.  See, Restatement (Second) of Contracts § 351 cmt. e (1981)("[I]n the less common situation in which the lender has reason to foresee that the borrower will be unable to borrow elsewhere or will be delayed in borrowing elsewhere, the lender may be liable for much heavier damages based on the borrower's inability to take advantage of a specific opportunity"); Lester v. Resolution Trust Corp., 125 B.R. 528, 532 (N.D. Ill. 1991)("If it is foreseeable that substitute financing will not be available, the lender is liable for foreseeable actual damages resulting from the breach"); Stacy v. Merchants Bank, 482 A.2d 61, 64 (Vt. 1984)(if borrower is unable to obtain replacement financing at time of breach, lender is liable for actual damages incurred which were reasonably foreseeable at the time contract was made); N.W.I. Intern., Inc. v. Edgewood Bank, 684 N.E.2d 401, 402, 409 (Ill. App. 1st 1997)(lender liable for foreseeable actual damages resulting from breach where alternative financing is unavailable).

35.     The approximately $18 million in damages which Latshaw seeks to recoup against the LCPI Claim are those which flow directly from LCPI's breach of the Credit Agreement and Latshaw's inability to obtain replacement funding at a time when LCPI knew or should have known that replacement financing would be unavailable, given the shock caused to the financial system by the collapse of its parent, Lehman Brothers Holdings Inc. (As previously stated, Latshaw does not seek to recoup its consequential damages, which consist of approximately $43 million in lost profits.)

36.     Accordingly, because Latshaw's damages are the natural and probable consequence of LCPI's material breach at a time when LCPI knew or should have known that alternative funding would not be available, such damages are not prohibited by the Credit Agreement and the Latshaw claim should not be disallowed, but should be allowed as a protective measure to protect Latshaw's right to recoup the amount of damages which it is able to prove in the Oklahoma Court against the LCPI Claim filed in the Latshaw bankruptcy case.

### E.  At Minimum, LCPI's Claim Should Be
### Disallowed As to Attorneys' Fees and the Commitment Fee

37.     LCPI states that a portion of its claim consists of "an estimate of $500,000.00 for additional costs, fees, expenses or other amounts due and owing to LCPI under the Loan Documents".  Pursuant to the Credit Agreement, Latshaw agreed to payment of certain costs, fees, expenses or other amounts due (which includes reasonable fees and disbursements of counsel to each Lender and counsel to the Agent).  Credit Agreement, § 9.5.  Latshaw objects to any portion of that estimate which consists of attorneys' fees, on the basis that claims for attorneys fees should be disallowed unless and until an application with supporting documentation, consisting of detailed time sheets, is filed with this Court.  Before such fees can be allowed, they must be reviewed by this Court for their reasonableness.  Matter of Nicfur-Cruz Realty Corp., 50 B.R. 162, 167 (Bankr.

S.D.N.Y. 1985)("New York cases hold that contractual attorneys' fees are subject to review by the courts on a quantum meruit basis relying on the court's power to supervise the practice of law")(citing Federal Land Bank v. Ambrosano, 89 A.D.2d 730, 453 N.Y.S.2d 857 (1982); Avco Financial Services Trust v. Bentley, 116 Misc.2d 34, 455 N.Y.S.2d 62, 63 (1982)).

38.    Further, it would be manifestly unjust for LCPI to be permitted to recover its attorneys' fees in a situation such as this, where LCPI would not have incurred attorneys' fees were it not for LCPI's material breach of the Credit Agreement: a breach which was the direct precipitating factor in Latshaw's commencement of this case.

39.    In addition, Latshaw paid a $600,000.00 commitment fee for the additional lending to be provided under the Credit Agreement.  As noted above, LCPI deducted the entire commitment fee from the first draw request of $3,000,000.00 which was made on August 26, 2008.  See, footnote 3, *supra*.  After LCPI's failure to fund, Latshaw demanded that LCPI return 92.5% of the commitment fee in light of LCPI's funding of only 7.5% of the total commitment and its continual default under the Credit Agreement.  Latshaw Aff., ¶ 23, Ex. E, F.  Because Latshaw has not been provided with the benefit of its bargain and the funding for which the commitment fee was paid, the LCPI claim should be reduced, at a minimum, by 92.5% of the commitment fee, or $550,000.00.

## Notice Of Opportunity For Hearing

**Your rights may be affected.   You should read this document carefully and consult your attorney about your rights and the effect of this document.**  If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 33 days from the date of filing of this request for relief.  You should also mail a file stamped copy of your

response or objection to the undersigned Movant's attorney and file a certificate of service with the

Court.  If no response or objection is timely filed, the Court may grant the requested relief without a

hearing or further notice.   **The 33 day period includes the 3 days allowed for mailing provided**

**for in Rule 9006(f) Fed.R.Bankr. Proc.**

Respectfully Submitted,

**MorrelSaffaCraige, P.C.**

__/s/Mark A. Craige_____
**Mark A. Craige**, OBA No. 1992
3501 South Yale Avenue
Tulsa, Oklahoma 74135-8014
918.664.0800 Telephone Number
918.663.1383 Facsimile Number
Email address: mark@law-office.com

### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies on the date signified by the Notice of Electronic Filing herein, and only to the extent the same reflects the following persons will not receive electronic notification hereof, he served the following person by causing a true and correct copy of the above and foregoing pleading with the Notice of Electronic Filing accompanying same, to be placed in the United States Mail, first class mail with postage duly prepaid thereon, as follows:

Lehman Brothers Holdings, Inc.
Attn: David Walsh, Vice President
1271 Avenue of the Americas, 40th Floor
New York, New York 10020

__/s/Mark A. Craige_____
**Mark A. Craige**

H:\MAC\aa\Latshaw\pleadings\2010-02-24 obj to LCPI Claim.doc

**EXHIBIT B**

US_ACTIVE:\43321642\06\43321642_6.DOC\73683.4010

| United States Bankruptcy Court/Southern District of New York | **PROOF OF CLAIM** |
|---|---|

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) | Filed: USBC - Southern District of New York Lehman Brothers Holdings Inc., Et Al. 08-13555 (JMP)    0000066324 |
|---|---|---|

Name of Debtor Against Which Claim is Held
**Lehman Commercial Paper, Inc.**    Case No. of Debtor    **08-13900 (JMP)**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Latshaw Drilling Company, LLC
c/o Satterlee Stephens Burke & Burke LLP
230 Park Avenue, Suite 1130
New York, New York 10169

Attn: Christopher R. Belmonte, Esq.

Telephone number: 212-818-9200    Email Address: cbelmonte@ssbb.com

☑ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** 18346
_(If known)_

Filed on: 9/22/2009

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:    Email Address:

1. **Amount of Claim as of Date Case Filed:** $ 18,090,000; see attached proviso

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Damages for Breach of Contract (see attached proviso, incorporated herein)
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $ _____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____ Basis for perfection: _____
Amount of Secured Claim: $ _____ Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$ _____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ _____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

**FILED / RECEIVED**
FEB 2 5 2010
**EPIQ BANKRUPTCY SOLUTIONS, LLC**

| Date: 2/23/10 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

Trent B. Latshaw
President

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

| | | |
|---|---|---|
| **In re:** | | **Chapter 11** |
| **Lehman Brothers Holdings Inc., et al.** | | **Case No. 08-13555 (JMP)** |
| | **Debtors** | **Jointly Administered** |

*Name of Debtor Against Which Claim Is Held:*

| | |
|---|---|
| **Lehman Commercial Paper, Inc.** | **Case No. 08-13900 (JMP)** |

## PROVISO TO AMENDED PROOF OF CLAIM
## OF LATSHAW DRILLING COMPANY, LLC

Latshaw Drilling Company, LLC ("Latshaw") hereby files its amended proof of claim (the "Latshaw Claim") for damages arising from the breach by Lehman Commercial Paper, Inc. ("LCPI") of that certain "$100,000,000 Amended and Restated Credit Agreement among Latshaw Drilling Company, LLC, as Borrower, Latshaw Drilling & Exploration Company, The Several Lenders from Time to Time Parties Hereto, Lehman Brothers Inc., as Arranger, Lehman Commercial Paper Inc., as Syndication Agent, and Lehman Commercial Paper Inc., as Administrative Agent Dated as of July 11, 2008" (the "Credit Agreement").

Latshaw filed its original proof of claim, number 18346, on September 22, 2009, as a protective measure under compulsion of the bar date which had been set in this jointly administered case, and prior to Latshaw's filing of its own bankruptcy petition in the United States Bankruptcy Court for the Northern District of Oklahoma, Case No. 09-13572-R (the "Latshaw Bankruptcy Case").

Latshaw does not seek a distribution of assets of the LCPI estate. Rather, the Latshaw Claim is filed as a protective measure, and seeks to reserve Latshaw's rights to recoup the amount of Latshaw's damages against the claim of LCPI which has been filed in the Latshaw Bankruptcy Case, after proving such damages in the Latshaw Bankruptcy Case.

Latshaw's damages comprise primarily the costs of equipment and supplies to build drilling rigs for which funds were to be loaned pursuant to the Credit Agreement. Upon the breach of the Credit Agreement by LCPI, Latshaw could not complete the rigs, but remained obligated to pay for certain goods and supplies which had been ordered and which could not be cancelled. Additional costs consist of the loan commitment fee, legal fees accrued by Latshaw, interests costs, and potential liability to vendors where Latshaw was unable to perform. Documents supporting the Latshaw Claim, comprising approximately 150 pages, have already been provided to counsel for LCPI, and will be produced in the context of proof of Latshaw's damages in the Latshaw Bankruptcy Case.

Latshaw expressly reserves all rights accruing to it under the Credit Agreement, and the filing of the Latshaw Claim is not intended to be and shall not be construed as: (a) an election of remedy; (b) a waiver of claim, right, defense or cause of action; (c) a waiver of limitation of any rights of Latshaw; or (d) an admission of any fact in any proceeding. The Latshaw Claim shall not be deemed to be a waiver of Latshaw's right (i) to have final orders in noncore matters entered only after de novo review by a District Court Judge, (ii) to trial by jury in any proceeding so triable in this case or any case, controversy, or proceeding relating to this case, (iii) to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, and (iv) to any other rights, claims, actions, setoffs, or recoupments to which Latshaw is or may be entitled.

795876_1

## SATTERLEE STEPHENS BURKE & BURKE LLP
### 230 PARK AVENUE
### NEW YORK, NY 10169-0079
### (212) 818-9200

METROPARK
33 WOOD AVENUE SOUTH
ISELIN, NJ 08830
(732) 603-4966

FAX (212) 818-9606, 9607
www.ssbb.com

E-Mail: cbelmonte@ssbb.com
Direct Dial: (212) 404-8725

February 24, 2010

**By Federal Express**

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, NY 10017

Re:    In re: Lehman Brothers Holdings, Inc., et al.
       Case No. 08-13555 (JMP) Jointly Administered
       <u>Amended Proof of Claim of Latshaw Drilling Company, LLC</u>

Dear Sir or Madam:

Enclosed please find an original amended proof of claim to be filed on behalf of Latshaw Drilling Company, LLC, against Lehman Commercial Paper, Inc. (08-13900) in the above-referenced jointly administered bankruptcy cases. The amended claim relates to claim no. 18346, originally filed on September 22, 2009. Please file the proof of claim accordingly.

In addition, we enclose two copies of the amended proof of claim. Please mark the copies as filed and return the same to me in the enclosed self-addressed, postage-paid envelope.

Thank you for your attention to this matter.

Very truly yours,

Christopher R. Belmonte

cc:    John Strasburger, Esq. *(by mail)*
       Jacqueline Marcus, Esq.
       Weil, Gotshal & Manges LLP
       *Attorneys for the Debtors*

       Dennis F. Dunne, Esq. *(by mail)*
       Dennis O'Donnell, Esq.
       Evan Fleck, Esq.
       Milbank, Tweed,Hadley & McCloy LLP
       *Attorneys for the Official Committee of Unsecured Creditors*

796124_1

**<u>EXHIBIT C</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
:
In re                                                   :        Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :        08-13555 (JMP)
:
Debtors.                              :        (Jointly Administered)
:
-------------------------------------------------------------------x

### ORDER (i) DENYING REQUEST TO WITHDRAW CLAIM AND (ii) DISALLOWING AND EXPUNGING PROOFS OF CLAIM FILED BY LATSHAW DRILLING COMPANY, LLC (CLAIM NOS. 18346 AND 66324)

Upon consideration of the Debtor's Objection to Proof of Claim Filed by Latshaw

Drilling Company, LLC (Claim No. 18346), dated January 22, 2010 (the "Objection"), filed by

Lehman Commercial Paper Inc. ("LCPI" and together with its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors") [Docket No.

6729], and the response, dated February 24, 2010, interposed by Latshaw Drilling Company,

LLC ("Latshaw") thereto (the "Response") [Docket No. 7253], and the reply to the Response,

dated April 12, 2010, filed by LCPI (the "Reply")[1] [Docket No. ___], and the Court having

jurisdiction to consider the Objection, the Response and the Reply and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Objection, the Response,

the Reply and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice having been provided in accordance with the procedures set forth in the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection and the Reply.

amended order entered February 13, 2009 governing case management and administrative

procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New

York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities

and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for

the Southern District of New York; and (vi) all parties who have requested notice in these

chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court

having found and determined that the relief sought in the Objection and the Reply is in the best

interests of LCPI, its estate and creditors, and all parties in interest and that the legal and factual

bases set forth in the Objection and the Reply establish just cause for the relief granted herein;

and after due deliberation and sufficient cause appearing therefore,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS[2]:

A.    Pursuant to the Credit Agreement, Latshaw waived any right it may have

had to recoup from amounts owed to LCPI under the Credit Agreement any amount that LCPI

may owe to Latshaw.

B.    Pursuant to the Credit Agreement, Latshaw waived any right it may have

had to claim or recover from LCPI any special, exemplary, punitive or consequential damages.

C.    The damages sought by Latshaw in the Amended Claim constitute special

or consequential damages.

NOW, THEREFORE, IT IS ORDERED THAT:

1.    Latshaw's affirmative request to withdraw the Claim is denied.

2.    Latshaw's affirmative request to amend the Claim is granted.

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  See FED. R. BANKR. P. 7052.

3.    The Claim and the Amended Claim are hereby disallowed and expunged in their entirety.

4.    Epiq Systems, the Debtors' claims and noticing agent, is authorized and directed to delete the Claim and the Amended Claim from the Debtors' official claims registry.

5.    In accordance with the terms of the Bar Date Order, LCPI is forever discharged from any and all indebtedness or liability with respect to Latshaw, the Claim and the Amended Claim.

6.    Nothing contained herein affects LCPI's rights against Latshaw under the Credit Agreement.

7.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated:  April __, 2010
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE