Wells Fargo Home Mortgage
3476 Stateview Blvd., MAC X7801-013
Fort Mill  SC  29715

May 12, 2009

Michael J Ilnicki
855  Donald Street
Sonoma CA 95476

RE: Loan Number        0171935752                    Region 708
    Primary Number

THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY.  THIS IS NOT A DEMAND
FOR PAYMENT.

The above loan file has been referred to our attorney with instructions
to begin foreclosure proceedings.

You are hereby notified that, due to the default under the terms of
the mortgage or deed of trust, the entire balance is due and payable.

If you have any questions, please contact our attorney listed below.
            First American Loanstar
            Trustee Services Llc
            1 First American Way
            Westlake              TX, 76262
            (866)798-0213

In the event you are experiencing an involuntary inability to
pay and wish to explore an opportunity to reinstate, or need
assistance in selling your property, please contact our offices
at (800) 848-9862 and request to speak to one of our Borrower
Counseling Representatives.

If you received a discharge in bankruptcy from personal liability for
this mortgage loan, you should be aware that the mortgage or deed of
trust remains as a valid lien against the property and will be fore-
closed.  Please be advised that in the event of foreclosure, you would
not be personally liable for any part of the debt, but you will lose
your interest in and rights to the property.

Sincerely,

Foreclosure Department
                                        XF004/RD1
Note:  The Fair Debt Collection Practices Act requires us to notify you
that in the event your loan is in default, Wells Fargo Bank, N A
will attempt to collect the debt and any information obtained will
be used for that purpose.  However, if you have received a discharge,
and the loan was not reaffirmed in the bankruptcy case,
Wells Fargo Bank, N A will only exercise its rights
as against the property and is not attempting any act to collect
the discharge debt from you personally.

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL TO:**
Michael J. Ilnicki
855 Donald Street
Sonoma, CA 95476





**2007090157**

OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON
FIRST AMERICAN TITLE CO.
08/14/2007 08:00 DEED
RECORDING FEE: 13.00        **3**    PGS
PAID



A.P.N.: 127-093-059

Space Above This Line for Recorder's Use Only

File No.: 4906-2846522 (DM)

# INTERSPOUSAL TRANSFER GRANT DEED
### (Excluded from Reappraisal under California Constitution Article 13A □ 1 et seq.)

The Undersigned Grantor(s) declare(s):  DOCUMENTARY TRANSFER TAX $n/a; CITY TRANSFER TAX $n/a;
SURVEY MONUMENT FEE $n/a
This conveyance is solely between spouses and establishes the sole and separate property of a spouse and is
EXEMPT from the imposition of the Documentary Transfer Tax pursuant to Section 11930 and/or 11911 et seq. of
the Revenue and Taxation Code.

This is an Interspousal Transfer and not a change in ownership under Section 63 of the Revenue and Taxation
Code, and transfer by Grantor(s) is excluded from reappraisal as a creation, transfer, solely between the spouses
of any co-owner's interest.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Donna Marie Morosi-Ilnicki,
wife of the herein grantee**

hereby GRANTS to **Michael J. Ilnicki, a married man as his sole and separate property**

the following described property in the Unincorporated Area of **Sonoma**, County of **Sonoma**, State
of **California**:

**Attached hereto as Exhibit A.**

It is the express intent of the Grantor, being the spouse of the Grantee, to convey all right, title and
interest of the Grantor, community or otherwise, in and to the herein described property to the
Grantee as his/her sole and separate property.

Dated:   __08/01/2007__

*Donna Marie Morosi-Ilnicki*
Donna Marie Morosi-Ilnicki

Mail Tax Statements To:  **SAME AS ABOVE**

**FIRST AMERICAN LOANSTAR TRUSTEE SERVICES**
P.O. BOX 961253
FORT WORTH, TX 76161
Telephone:   877-276-1894
Telecopier:   817-699-1484

**May 21, 2009**

FILE NUMBER:     20099070810854
**MICHAEL J ILNICKI**
**855   DONALD STREET**
**SONOMA, CA 95476**

Re:   Loan No.:        **0171935752**
      TS #:            **20099070810854**

The current creditor to whom the debt is owed is:  **HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Asset-Backed Pass-Through Certificates Series 2007-AR8.** The loan is serviced by **WELLS FARGO HOME MORTGAGE.** FIRST AMERICAN LOANSTAR TRUSTEE SERVICES has been authorized by the Servicer/Creditor to initiate foreclosure proceedings in connection with the foreclosure of a Deed of Trust associated with your real estate loan.

The amount of the debt as of the date of this Notice according to the records of our client is **$483,991.09.**   The amount necessary to bring the loan into good standing and reinstate your mortgage is set forth in the enclosed Notice of Default and Election to Sell Under Deed of Trust.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above or in the enclosed Notice of Default and Election to Sel Under Deed of Trust, an adjustment may be necessary after we receive your check, in which case we will inform you before depositing the check for collection.  For further information, write the undersigned or call 877-276-1894.

Please be advised that FIRST AMERICAN LOANSTAR TRUSTEE SERVICES may be considered a debt collector attempting to collect the above referenced debt.  Any information obtained from you may be used for that purpose. Federal law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it.  If you don't dispute it within that period, FIRST AMERICAN LOANSTAR TRUSTEE SERVICES will assume that it's valid.  If you do dispute it - - by notifying FIRST AMERICAN LOANSTAR TRUSTEE SERVICES in writing to that effect - - FIRST AMERICAN LOANSTAR TRUSTEE SERVICES will, as required by the law, obtain and mail to you proof of the debt.   And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor, FIRST AMERICAN LOANSTAR TRUSTEE SERVICES will furnish you with that information too.

The law does not require FIRST AMERICAN LOANSTAR TRUSTEE SERVICES to wait until the end of thirty-day period before taking action to collect this debt.  If, however, you request proof of the debt or the name and address of the original creditor within thirty days of receipt of this letter, the law requires LoanStar to suspend its efforts (through litigation or otherwise) to collect the debt until FIRST AMERICAN LOANSTAR TRUSTEE SERVICES mails the requested information to you.

The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m.  They may not harass you by using threats of violence or arrest or by using obscene language.  Collectors may not use false or misleading statements or call you at work if they know that you may not receive personal calls at work.  For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt.  Collectors may contact another person to confirm your location or enforce a judgment.  For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftd.gov.

Sincerely,

FIRST AMERICAN LOANSTAR TRUSTEE SERVICES

TS No.:        20099070810854
VA/FHA/PMI No.:

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:  That FIRST AMERICAN LOANSTAR TRUSTEE SERVICES As Agent for the current beneficiary under a Deed of Trust dated **7/31/2007**, executed by:

**MICHAEL J ILNICKI,**

as Trustor to secure certain obligations in favor of WELLS FARGO BANK, N.A. as Beneficiary, recorded **8/14/2007**, (as Instrument No.) **2007090158**, (in Book) , (Page)  of Official Records in the Office of the Recorder of SONOMA County, CALIFORNIA describing land therein as:

**AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST**

said obligations including ONE NOTE FOR THE ORIGINAL sum of **$471,200.00**.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 02/01/2009 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES.**

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: **May 14, 2009**

                                     FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
                                     AS AGENT FOR THE CURRENT BENEFICIARY
                                     By:  FIRST AMERICAN TITLE INSURANCE COMPANY
                                          as Attorney-In-Fact

                                     By:  _____*ORIGINAL DOCUMENT SIGNED BY AUTHORIZED AGENT*_____
                                                                    (signature)

                                     Name: _____

                                     Title: _____

**FIRST AMERICAN LOANSTAR TRUSTEE SERVICES MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.   ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

See Attached Declaration

Wells Fargo Home Mortgage
3476 Stateview Blvd., MAC X7801-013
Fort Mill  SC  29715

May 12, 2009

Michael J Ilnicki
855   Donald Street
Sonoma CA 95476

RE: Loan Number       0171935752                    Region 708
    Primary Number

THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY.  THIS IS NOT A DEMAND
FOR PAYMENT.

The above loan file has been referred to our attorney with instructions
to begin foreclosure proceedings.

You are hereby notified that, due to the default under the terms of
the mortgage or deed of trust, the entire balance is due and payable.

If you have any questions, please contact our attorney listed below.
          First American Loanstar
          Trustee Services Llc
          1 First American Way
          Westlake          TX, 76262
          (866)798-0213

In the event you are experiencing an involuntary inability to
pay and wish to explore an opportunity to reinstate, or need
assistance in selling your property, please contact our offices
at (800) 848-9862 and request to speak to one of our Borrower
Counseling Representatives.

If you received a discharge in bankruptcy from personal liability for
this mortgage loan, you should be aware that the mortgage or deed of
trust remains as a valid lien against the property and will be fore-
closed.  Please be advised that in the event of foreclosure, you would
not be personally liable for any part of the debt, but you will lose
your interest in and rights to the property.

Sincerely,

Foreclosure Department

                                                  XF004/RD1
Note:  The Fair Debt Collection Practices Act requires us to notify you
that in the event your loan is in default, Wells Fargo Bank, N A
will attempt to collect the debt and any information obtained will
be used for that purpose.  However, if you have received a discharge,
and the loan was not reaffirmed in the bankruptcy case,
Wells Fargo Bank, N A will only exercise its rights
as against the property and is not attempting any act to collect
the discharge debt from you personally.

7113 8257 1473 3433 0350

Recording Requested By:
**FIRST AMERICAN TITLE INSURANCE COMPANY**

When Recorded Mail To:
**FIRST AMERICAN LOANSTAR TRUSTEE
SERVICES
P.O. BOX 961253
FORT WORTH, TX 76161**

*THIS COPY OF "NOTICE", THE ORIGINAL OF
WHICH WAS FILED FOR RECORD ON 05/18/2009 IN
THE OFFICE OF THE RECORDED OF SONOMA,
CALIFORNIA IS SENT TO YOU IN AS MUCH AS AN
EXAMINATION OF THE TITLE TO SAID TRUST
PROPERTY SHOWS YOU MAY HAVE AN INTEREST
IN THE TRUSTEE'S SALES PROCEEDINGS.*

TS No.:      20099070810854
VA/FHA/PMI No.:
TSG No.:      4135739

Space above this line for Recorder's use only

Pursuant to California Code Section 2924c(b)(1) please be advised of the following:

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR
PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring
your account into good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted
by law for reinstatement of your account, which is normally five days business days prior to the date set for the sale of your property.
No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears
on this notice).

This amount is **$15,890.73** as of **5/14/2009**, and will increase until your account becomes current.   While your property is in
foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.   If
you fail to make future payments on the loan, pay taxes on the property. provide insurance on the property, or pay other obligations
as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your
account in good standing.   In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide
reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.
You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all
amounts in default at the time payment is made.   However, you and your beneficiary or mortgagee may mutually agree in writing prior
to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1)
provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments
in order to cure your default; or both (1) and (2);

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed
upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the
sale of your property by paying the entire amount demanded by you creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for
any other reason, contact:

**WELLS FARGO HOME MORTGAGE**
*c/o* **FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
P.O. BOX 961253
FORT WORTH, TX 76161
877-276-1894**



# NOTICE OF DEFAULT DECLARATION

TS #:    20099070810854

### PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

WELLS FARGO HOME MORTGAGE
3476 STATEVIEW BLVD
FORT MILL, SC 29715

Borrower:    MICHAEL J ILNICKI
Property Address:    855   DONALD STREET
SONOMA, CA 95476

The undersigned mortgagee, beneficiary, or authorized agent (collectively, the "Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been met. This Declaration is required for any residential owner occupied property in which the loan was originated between January 1, 2003 and December 31, 2007. Non-owner occupied and vacant properties are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

*    The Beneficiary has made contact with the borrower pursuant to CA Civil Code 2923(a)(2). Contact with the borrower was made in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

*    Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the Beneficiary.

*    The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or authorized agent pursuant to CA Civil Code 2923.5(h)(1).

*    The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil Code 2923.5(h)(2)

*    The borrower has filed for bankruptcy and the proceedings have not been finalized pursuant to CA Civil Code 2923.5(h)(3).

Dated: _____

*Original document executed by authorized agent*



Wells Fargo Servicing Center
Home Equity Payment Processing
MAC B6955-01B
PO BOX 31557
Billings, MT 59107-9900



06/22/09

 MICHAEL J ILNICKI
855 DONALD ST
SONOMA, CA  95476-4608

RE:  Account Number: 65065066837751998
      Amount Past Due: $417.37
      Payoff Balance: $60,041.84 plus accrued daily interest
      Insurance Balance: $0.00

Dear Michael J Ilnicki:

We want to remind you that your Wells Fargo home equity payment is past due. To avoid collection actions, you should make a payment of $417.37 today.

**We understand** that unexpected events or challenging times may make paying your bills difficult. When you have difficulty making payments - now or in the future - our team of Home Equity Specialists is ready to listen.
Call us now at 1-800-524-5786, Monday through Thursday 5 a.m. to 7 p.m., Friday 5 a.m. to 5 p.m. and Saturday 5 a.m. to 2 p.m. or Sunday 10 a.m. to 7 p.m. Pacific Standard Time. For TDD Assistance, call 1-800-353-5565.

**You can make a payment now, quickly and easily, by phone** at 1-800-524-5786. Or you can make your payment in person by visiting a Wells Fargo location. For a convenient location, call us or visit www.wellsfargo.com/locator.

**If you're unable to make your payment, please call us today.** We may be able to help. The sooner you call, the sooner we can try to help you find a solution. We'll explain your alternatives, so you can consider which option may be best for you.

Thank you for being a Wells Fargo Bank customer. We appreciate your business and your immediate response to this letter. We look forward to speaking with you soon.

Sincerely,

Home Equity Collections Servicing

The following notifications are being provided to you as required by the United States Department of Housing and Urban Development.

Homeownership counseling provided by nonprofit organizations experienced in the provision of homeownership counseling and approved by the Secretary of the Department of Housing and Urban Development (HUD) is available. You may obtain a list of HUD approved counseling agencies by calling toll-free 1-800-569-4287 (TDD: 1-800-877-8339).

The laws of some states require us to inform you that this communication is an attempt to collect a debt and that information obtained will be used for that purpose.

Wells Fargo Servicing Center
Home Equity Payment Processing
MAC B6955-01B
PO BOX 31557
Billings, MT 59107-9900



July 8, 2009

MICHAEL J ILNICKI
855 DONALD ST
SONOMA, CA 954764608

Re: Your Wells Fargo Home Equity Line of Credit Account Number 65066837XXXXXX

Dear Michael J Ilnicki:

Your Home Equity Line of Credit (the "Line") has recently been reviewed. According to your Home Equity Line of Credit Agreement (the "Agreement"), if you are in default of any material obligation under the terms of the Agreement, Wells Fargo may restrict the Line.

Based upon our review, we are restricting your use of the Line to obtain additional extensions of credit because you have not met the repayment terms of your Agreement.

The restriction of the Line is effective immediately and will continue until the reason for the restriction no longer exists. **You must request reinstatement of your credit privileges if you believe the reason provided above no longer exists.** You may make a request to reinstate your credit privileges by calling Wells Fargo at 800-944-4601 or writing to us at the address shown above.

Please be advised that all of the terms and conditions of your Agreement remain in full force and effect. For example, while we may have accepted late monthly payments from you in the past, we reserve the right to exercise all of our contract rights if you are in default. These rights include, but are not limited to, the right to demand timely payments and to demand payment of the outstanding balance of the Line.

Sincerely,

Home Equity Collection Servicing

The laws of some stated require us to inform you that this communication is an attempt to collect a debt and that information obtained will be used for that purpose.

Recording Requested By:

WELLS FARGO BANK, N.A.
1401 WILLOW PASS RD  #300
CONCORD, CA  94520-

Return To:
WELLS FARGO BANK, N.A.
FINAL DOCUMENTS X9999-01M
1000 BLUE GENTIAN ROAD
EAGAN, MN  55121-1663
Prepared By:
PROCESSING WHOLESALE
WELLS FARGO BANK, N.A.
1401 WILLOW PASS RD  #300
CONCORD, CA  94520-

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

0171935752

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **JULY 31, 2007** together with all Riders to this document.
**(B) "Borrower"** is
MICHAEL J. ILNICKI, A MARRIED MAN

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is  WELLS FARGO BANK, N.A.

Lender is a **National Association**
organized and existing under the laws of  **THE UNITED STATES OF AMERICA**

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 1 of 18        Initials: _____

FORM 3005    1/01

SCA01    Rev 11/09/00

Lender's address is
P. O. BOX 5137, DES MOINES, IA  50306-5137
Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is  FIDELITY NATIONAL TITLE INSURANCE COMPANY

(E) "Note " means the promissory note signed by Borrower and dated JULY 31, 2007
The Note states that Borrower owes Lender FOUR HUNDRED SEVENTY-ONE THOUSAND
TWO HUNDRED AND NO/100
                                                                                                    Dollars
(U.S. $ ....471,200.00.............) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  SEPTEMBER 1, 2037
(F) "Property" means the property that is described below under the heading "Transfer of
Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an
electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers
initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be
amended from time to time, or any additional or successor legislation or regulation that

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | SONOMA |
|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

**LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.**

**THIS IS A PURCHASE MONEY MORTGAGE.**

Parcel ID Number:                                    which currently has the address of
**855 DONALD STREET**                                                              [Street]
**SONOMA**                          [City] , California        95476        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination

or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In

either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or

(c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by

this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly

requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or

before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           MICHAEL J. ILNICKI                      Borrower

_____

**State of California**,                                              **SS:**

**County of**

**On**                          **before me,**

                                                                     **personally appeared**

**MICHAEL J. ILNICKI, A MARRIED MAN**

                                                    , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal.


――――――――――――――――――――――― (Seal)

0171935752

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)
MICHAEL J. ILNICKI                              -Borrower

0171935752

# INITIAL INTEREST<sup>SH</sup> ADJUSTABLE RATE RIDER

### (1-Year LIBOR Index-Rate Caps)
### (Assumable after Initial Period)

This Initial Interest Adjustable Rate Rider is made this 31st day of JULY, 2007 ........................., and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Initial Interest Adjustable Rate Note (the "Note") to ........................................ WELLS FARGO BANK, N.A. .......................................................................................... (the "Lender") of the same date and covering the property described in the Security Instrument and located at: 855 DONALD STREET, SONOMA, CA  95476 ...................................................................
(Property Address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an Initial Interest Rate of ...6.875.... %. The Note provides for interest only payments until the first fully amortizing principal and interest payment due date (the "First P&I Payment Due Date"), which is the first day of .OCTOBER 1, 2014 ...............

The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Interest Change Dates

The interest rate   I will pay may change on the first day of SEPTEMBER, 2014 ........................, and may change on that day every 12 th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in "The Wall Street Journal." The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

INITIAL INTEREST ADJUSTABLE RATE RIDER-1-Year LIBOR Index

(Assumable after Initial Period)--Freddie Mac UNIFORM INSTRUMENT
*page 1*

IO036A Rev. 07/13/06

0171935752

### (C)  Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my interest rate by adding
**two and one-quarter percentage point(s) (  2.250%)**
to the Current Index. The Note Holde will then round the result of this addition to the nearest
one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below,
this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment
adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the
amount sufficient to repay all accrued interest each month on the unpaid principal balance at the
new interest rate. For payment adjustments occurring on or after the First P&I Payment Due
Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am
expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate
in substantially equal payments. The result of this calculation will be the new amount of my
monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than
_11.875_ % or less than _2.250_ %. Thereafter, my interest rate will never be increased or
decreased on any single Interest Change Date by more than **two percentage point(s) (  2.000%)**
from the rate of interest I have been paying for the preceding _12_ months. My interest rate will
never be greater than _11.875_ %

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of
my new monthly payment beginning on the first monthly payment date after the Interest Change
Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the
amount of my monthly payment before the effective date of any change. The notice will include
information required by law to be given to me and also the title and telephone number of a
person who will answer any question I may have regarding the notice.

IO036C Rev. 06/06/06

0171935752

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

### 1. UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.**
As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### 2. AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.**

As used in this section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



405 SW 5th street
Des Moines, IA 50328
515-697-5601
Gerri.L.Lawerence-Dunn@wellsfargo.com

12/17/2009

Mr. Michael J Ilnicki
855 Donald Street
Sonoma, CA 95476

Dear Mr. Ilnicki:

This is in response to our conversation regarding the status of your loan and your
eligibility for a loan modification.  Enclosed please find a certified copy of your original
mortgage note.


Sincerely,

Gerri Lawrence-Dunn

## CERTIFICATION

I, Gerri Lawrence-Dunn, Vice President of Wells Fargo Bank, N.A., a national banking association, do hereby certify that the attached Note is a full, true and correct copy of the original Note for Michael J. Ilnicki.

WITNESS MY HAND, this 17th day of December, 2009.

Gerri Lawrence-Dunn

# INITIAL INTEREST℠ ADJUSTABLE RATE NOTE

0171935752

(1-Year LIBOR Index-Rate Caps)
(Assumable after Initial Period)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| JULY 31, 2007 | SONOMA | CALIFORNIA |
|---|---|---|
| Date | City | State |

855 DONALD STREET, SONOMA, CA  95476
_____
(Property Address)

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  471,200.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is _____ WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of  6.875%.

The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS
### (A) Time and Place of Payments

I will make a payment every month on the first day of each month beginning on OCTOBER 1, 2007
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.
Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on SEPTEMBER 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  WELLS FARGO BANK, N.A.
P.O. BOX 11701, NEWARK, NJ  07101-4701
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $  2,699.58 . This amount may change in accordance with subsection (C) below.

### (C) Monthly Payment Changes

The First P&I Payment Due Date is OCTOBER 1, 2014  .

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Before the effective date of any change in my monthly payment, the Note Holder

will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.
Beginning with the First P&I Payment Due Date, my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Interest Change Dates

The interest rate I will pay may change on the first day of SEPTEMBER, 2014 ,
and may change on that day every 12 th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

INITIAL INTEREST ADJUSTABLE RATE NOTE-1-Year LIBOR Index
(Assumable after Initial Period)--Freddie Mac UNIFORM INSTRUMENT

Initials _____

IO009A                         REV. 05/24/06

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in "The Wall Street Journal." The most recent figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding two and one-quarter percentage point(s) ( 2.250%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than 11.875% or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than two percentage point(s) ( 2.000%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.875 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then:  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000% or $ 5.00 whichever is greater of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

Initials

3 of 5

IO009E  REV. 03/02/06

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000%  or $  5.00 whichever is greater of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Initial

3 of 5

IO009E  REV. 03/02/06

**(A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

### Transfer of the Property or a Beneficial Interest in Borrower.

As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

### Transfer of the Property or a Beneficial Interest in Borrower.

As used in this section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MICHAEL J. ILNICKI                    Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.
BY _____
JOAN M. MILLS, VICE PRESIDENT

IO0091  REV. 06/23/06

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>□ Debtor     □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor   □ Other<br>□ Trustee | **PARTY** (Check One Box Only)<br>□ Debtor     □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor   □ Other<br>□ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property – §542 turnover of property
□ 12-Recovery of money/property – §547 preference
□ 13-Recovery of money/property – §548 fraudulent transfer
□ 14-Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability – §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability – §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability – §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability – §523(a)(5), domestic support
□ 68-Dischargeability – §523(a)(6), willful and malicious injury
□ 63-Dischargeability – §523(a)(8), student loan
□ 64-Dischargeability – §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B104 (FORM 104)(08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

APN: 22-318-8-6

## NOTICE OF INTENT TO PRESERVE AN INTEREST

This notice is intended to preserve an interest in real property from extinguishment pursuant to Section 880.320 et seq of the Civil Code of the State of California.

I, Grantor, Lonnie Ratliff, as claimant, claim the following described interest in real property located at 2304 – 9th Ave., Oakland, California 94606, referencing Grant Deed document of Lonnie Ratliff, Sr. 1999 Trust, recorded January 22, 1999 as No. 99026161, legal description see exhibit "A" attached. APN: 22-318-8-6.

The above described interest is claimed based on that certain Grant Deed recorded on June 28, 2005 in the Office of the County Recorder of Alameda County, State of California as Recorder's No: 2005265387.

The real property upon which the above described interest is claimed is described as follows:

The Grantee, Keith Tinsley, KADA Marketing Inc., was negligent with misrepresentation coupled with theft by deception has caused irreparable harm to Grantor in violating Civil Code Section 1710 (2); Civil Code Section 1408 and 1409. Therefore, Title to property must revert to Grantor Lonnie Ratliff, Jr., as required by law.

I assert under penalty of perjury that this notice is not recorded for the purpose of slandering title to real property and I am informed and believe that the information contained in this notice is true.

_____SPACE ABOVE THIS LINE FOR RECORDER USE_____

## NOTICE OF INTENT TO PRESERVE AN INTEREST

This notice is intended to preserve an interest in real property from extinguishment pursuant to Section 880.320 et seq of the Civil Code of the State of California.

I, Grantor, Lonnie Ratliff, as claimant, claim the following described interest in real property located at 2304 – 9th Ave., Oakland, California 94606, referencing Grant Deed document of Lonnie Ratliff, Sr. 1999 Trust, recorded January 22, 1999 as No. 99026161, legal description see exhibit "A" attached. APN: 22-318-8-6.

The above described interest is claimed based on that certain Grant Deed recorded on June 28, 2005 in the Office of the County Recorder of Alameda County, State of California as Recorder's No: 2005265387.

The real property upon which the above described interest is claimed is described as follows:

The Grantee, Keith Tinsley, KADA Marketing Inc., was negligent with misrepresentation coupled with theft by deception has caused irreparable harm to Grantor in violating Civil Code Section 1710 (2): Civil Code Section 1408 and 1409. Therefore, Title to property must revert to Grantor Lonnie Ratliff, Jr., as required by law.

I assert under penalty of perjury that this notice is not recorded for the purpose of slandering title to real property and I am informed and believe that the information contained in this notice is true.

Dated: _