1

Michael Ilnicki
In-Care-Of
855 Donald Street
Sonoma, California

415-902-3698

## In the ___ Court of the United States
## for the Northern District of California

Michael Ilnicki
           Plaintiff


           vs.

                                           VERIFIED
                                           COMPLAINT
                                           FOR
                                           QUIET TITLE AVOID TRUSTEE
                                           SALES ET SEQ
                                           AND AN ORDER OF
                                           CEASE AND DESIST
WELLS FARGO BANK, NA,                      TRIAL BY JURY
WELLS FARGO ASSET SECURITIES               DEMANDED
CORPORATION, MORTGAGE ASSET
BACKED PASS-THROUGH
CERTIFICATES SERIES 2007-AR8
DOES 1 through 10, inclusive Does 1-5276    US Constitution,
                                           Fifth,
           Defendants                       and Fourteenth Amend.

           _____ /

## Jurisdiction and Venue

1. Federal courts have jurisdiction over cases arising where there is a controversy arising

under the Constitution, laws and treaties of the United States. This case involves the

Constitution and laws of the United States, since there are multiple violations of federal

law involved in this case and multiple violations of The US Constitution, particularly the

Due Process clause of the Fifth and Fourteenth Amendment. Please also see Mookini v.

1  U.S., 303 U.S. 201; Old Colony Trust Co. v. C.I.R., 279 U.S. 716, 724;  and O'Donoghue

2  v. U.S., 289 U.S. 516 for validation that only District Courts of the United States are

3  Article Three Courts. The District Court of the United States for the District of California

4  has jurisdiction over this action pursuant to, and jurisdiction is hereby invoked under, The

5  Constitution For The United States of America, Article Three, which provides for

6  common law jurisdiction and venue and makes said jurisdiction and venue mandatory,

7  see Callan v. Wilson, 127 US 540 (1888), which states that Article Three of the

8  Constitution mandates common law jurisdiction. Additionally, under a ruling by the US

9  Supreme Court in 443 Cans of Frozen Egg Product v. United States of America, 226 US

10  172, (1912) common law is mandatory. See also Commentaries on the Constitution, by

11  Joseph Story (1833) Volume III, at pages 506-507, which states that Article Three,

12  Section Two, requires that the jurisdiction in courts in the United States must be common

13  law. I am reminded that the Seventh Amendment to the US Constitution mandates

14  common law jurisdiction and venue whenever there is a controversy over twenty dollars.

15  *The Plaintiff cannot be left without a remedy under common law, as guaranteed under*

16  *Article Three of the United States Constitution and Article Three of the Constitution*

17  *for the United States of America.* Therefore this court has jurisdiction.

18

19  2. This is an action for quiet title and an order to cease and desist to redress the past

20  deprivations and to prevent the further deprivation by Defendants and their agents, acting

21  under the color (pretense) of state law, of Plaintiffs private property rights, privileges, and

22  immunities secured by the Constitution of the United States, specifically by the due

23  process clause of the Fifth and Fourteenth Amendment thereto, which invokes the due

24  process clauses of the Seventh, Fifth and Fourteenth Amendments to said constitution

upon the States and guarantees to all private citizens the freedom of private property and

the separate and, distinct common law jurisdiction of this Court in accord with the rules

of common law related to fiduciary duties.

3. The Complaint is filed pursuant to the rules of the common law. I further declare as

follows:

|                                      |   |                          |
|--------------------------------------|---|--------------------------|
|                                      | ) | Trial by the Jury Demanded |
| Sonoma-county                        | ) |                          |
| The California State                 | ) | Verified Declaration     |
| The united States of America AD 1791 | ) |                          |

I, the Declarant, Michael J. Ilnicki, do hereby declare that I am competent to be a

witness, that the facts contained herein are true, correct, complete and not misleading,

to the best of my first hand knowledge and belief under penalty of perjury pursuant to

the organic laws of the State of California (republic).

## Holder in Due Course

4. There shall be two originals of the above captioned process. The District Court of the United

States for the Northern District of California shall be the holder in due course of one original,

and Michael J. Ilnicki shall be the holder in due course on the second original. Both parties shall

have equal standing as the holder in due course of an original.

## Opening Statement

5. This is an action to quiet title to land and buildings situated at, 855 Donald Street, Sonoma, in Sonoma County, California. This action is brought by me, Michael J. Ilnicki, acting in my private capacity in this matter, as a property owner in California, and I have allodial title, see **Exhibit A**. On or about August, 2007, I entered into an agreement with WELLS FARGO BANK, NA, A California based banking corporation, who arranged a loan of $ 471,000.00 US Dollars for a first note and second note for $ 50,000.00 on property located at 855 Donald Street, Sonoma, in Sonoma County, California.

6. The original lender, WELLS FARGO BANK, NA, advertised and represented that they had lawful money of the United States of America to lend when they negotiated and contracted with me. The First note was transferred and assigned to a Mortgage Backed Security, according to the "Assignment of Deed of Trust" documents on file at the Sonoma County Courthouse, and filed June 30, 2009. I have received a series of notices and documents in the mail regarding the planned foreclosure on the loan for my house. I have also seen a document filed in the Sonoma County Recorders Office called "Assignment of Deed of Trust" which identifies as the beneficiary of the Deed of Trust, HSBC Bank USA, NA as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Asset-Backed Pass Through Certificates Series 2007-AR8, see **Exhibit B**. I also received a Notice of Default, which was filed by FIRST AMERICAN LOANSTAR TRUSTEE SERVICES. The default notice stated that my only option was to pay the unpaid payments to reinstate my loan, and that it may be sold without court action, which is untrue. According to California Civil Code 2924, it is mandatory for the lender to obtain a court order from a court of record, a procedure that they chose to ignore most of the time, as is the case here. The two notes may have been sold to a series of other banks

but were apparently sold to a mortgage backed security called WELLS FARGO ASSET

SECURITIES CORPORATION, MORTGAGE ASSET BACKED PASS-THROUGH

CERTIFICATES SERIES 2007-AR8 and may be held currently by an undisclosed third

party note buyer. It appears that the sale occurred soon after the signed notes and deeds of

trust were received by the original lender.  It appears that WELLS FARGO BANK, NA

claims to be the current holder-in-due-course of the note, even though there is good direct

evidence that they have assigned the note to another financial institution, the Mortgage

backed Security mentioned above. It is also possible that the note was sold to another

bank like The BANK OF NEW YORK. The bank involved, WELLS FARGO BANK,

NA and governmental entities named in this complaint, and others not named in this

complaint, have exceeded their authority, or soon will be asked to exceed their authority,

have acted outside the scope of their authority, violated my rights and violated the law,

by claiming to have standing to foreclose on the notes and deeds of trust, which were

probably sold to a mortgage backed security who purchased by them from a previous

alleged creditor, WELLS FARGO BANK, NA, with whom I signed the promissory note

and deed of trust. WELLS FARGO BANK, NA apparently sold the notes and the

servicing rights to this loan to a Mortgage backed security WELLS FARGO ASSET

SECURITIES CORPORATION, MORTGAGE ASSET BACKED PASS-THROUGH

CERTIFICATES SERIES 2007-AR8. By this act of selling the note and deed of trust, the

original lender is no longer the holder-in-due course of the note. It is also uncertain, at

this time, who is the current holder-in-due-course of the original note.


7. Neither WELLS FARGO BANK, NA, nor anyone else have supplied any material

evidence that they are, at this time, the holder in due course of the note and deed of trust.

1    This is an established requirement and has been a factor in determining whether or not a

2    particular creditor has standing to sue for recovery of damages in a foreclosure. To

3    recover on a promissory note, the Defendant must prove: (1) the existence of the note in

4    question; (2) that the party sued signed the note; (3) that the Defendant is the owner or

5    holder of the note; and (4) that a certain balance is due and owing on the note.  See In Re:

6    SMS Financial LLC. v. Abco Homes, Inc. . No. 98-50117 February 18, 1999 (5th Circuit

7    Court of Appeals.) In Carnegie Bank v Shalleck ; 256 N.J. Super 23 (App. Div  1992),

8    the Appellate Division held, "When the underlying mortgage is evidenced by an

9    instrument meeting the criteria for negotiability set forth in N.J.S. 12A:3-104, the holder

10    of the instrument shall be afforded all the rights and protections provided a holder in due

11    course pursuant to N.J.S. 12A:3-302. Since no one is able to produce the "instrument"

12    there is no competent evidence before the Court  that any party is the holder of the

13    alleged note or the true holder in due course. New Jersey common law dictates that the

14    plaintiff prove the existence of the alleged note in question, prove that the party sued

15    signed the alleged note, prove that the plaintiff is the owner and holder of the alleged

16    note, and prove that certain balance is due and owing on any alleged note."  Federal

17    Circuit Courts have ruled that the only way to prove the perfection of any security is by

18    actual possession of the security. See also Matter of Staff Mortg. & Inv. Corp.,  550 F.2d

19    1228 (9th  Cir 1977),  "Under the Uniform Commercial Code, the only notice sufficient

20    to inform all interested parties that a security interest in instruments has been perfected is

21    actual possession by the secured party, his agent or bailee."  Bankruptcy Courts have

22    followed the Uniform Commercial Code. In Re Investors & Lenders, Ltd. 165 B.R. 389.

23    The assignment of the Deed of Trust, which I accidentally stumbled upon at the County

24    Recorders Office, proves that WELLS FARGO BANK, NA is not the holder-in-course of

the note and deed of trust, since they sold the Deed of Trust and note presumably the to a Mortgage Backed Security.

8. The servicing agent may have standing if acting as an agent for the holder, assuming that the agent can both show agency status and that the principle is the holder.  In re Vargas, 396 B.R. 511 (Bankr. C.D. Cal. 2008) at 520.

…"Only the Holder of the Note is the "Real Party in Interest.".…The right to enforce the mortgage on behalf of the note holder does not, however, render the note holder's agent into the real party in interest. "As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name." Wright & Miller, 6A Federal Practice & Procedure Civ. 2d § 1553.

9. "Consequently, even if a court finds that a proper agency relationship exists between the holder of a note and the party seeking to enforce its security, this does not excuse the agent from the requirement that an action be prosecuted in the name of the note holder, who is the real party in interest. Fed.R.Civ.P. 17(a) (1)".  In re Hwang, 396 B.R. 757 (Bankr. C.D. Cal. Sept. 2008). The alleged note holder has not met the requirements under the Federal Rules of Civil Procedure Rule 17(a) to establish that they are the real party-in-interest, and therefore, has no standing.

10. Given that "the debt is the principal thing and the mortgage an accessory," the Supreme Court reasoned long ago that as a corollary, "the mortgage can have no separate existence." Carpenter, 83 U.S. at 274.

11. Wells Fargo Bank v. Jordan, Case No. 91675 (Ohio App. March 12, 2009) (reversing grant of summary judgment and remanding to trial court to dismiss foreclosure suit because Wells Fargo Bank was not the real party in interest on date of foreclosure complaint and thus lacked standing).

12. It appears, based upon various demands for payment and other documents, and the foreclosure practices engaged in by the Defendants that no one is claiming to be the current holder-in-due-course of the note. The banks and financial services companies involved, including WELLS FARGO BANK, NA, are named in this complaint, and others not named in this complaint, have exceeded their authority, acted outside the scope of their authority, violated my rights and violated the law, by claiming to have standing to foreclose on two notes and deeds of trust, a first and a second, which appears to have been purchased by them from WELLS FARGO BANK, NA, with whom I signed these two promissory notes and Deeds of Trust. The notes from WELLS FARGO BANK, NA were apparently acquired by WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE ASSET BACKED PASS-THROUGH CERTIFICATES SERIES 2007-AR8, since the public records reflect a transfer of the Deed Of Trust, filed at the Sonoma County Recorders Office on June 30, 2009. PLEASE NOTE THAT IT IS IMPOSSIBLE TO DISCOVER WHO HAS POSSESSION OF THE ORIGINAL NOTE OR WHAT HAS HAPPENED TO THE ORIGINAL NOTE BECAUSE OF THE REFUSAL BY THE BANKS TO PROVIDE FULL DISCLOSURE AND THE WILLINGNESS OF THE STATE COURTS TO GO RIGHT ALONG WITH THE COVER UP IN FLAGRANT VIOLATION OF UCC 3-309 and California Commercial Code Section 3309. WELLS FARGO BANK, NA has failed to produce the original promissory note

when asked, which proves that they are not the holder-in-due-course of the note, and that they have sold the original note to an undisclosed third party. By this act of selling the note and deed of trust to a mortgage backed security or to an Undisclosed Third Party Note Buyer, they are no longer the holder-in-due course of the note.

13. That pursuant to UCC 3-309 and California Commercial Code Section 3309 in the event the original of the Promissory Note signed by the Plaintiff mortgage loan borrower has been lost, only (1) the person in possession of the instrument and entitled to enforce it when loss of possession occurred; (2) where the loss of possession was not the result of a transfer by the person or a lawful seizure, and (3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process is entitled to enforce the instrument. None of the above facts are present herein so none of these parties can enforce the instrument. THE CONTINUED FAILURE AND REFUSAL BY THE PARTIES NAMED HERE, WELLS FARGO BANK, NA, TO BRING FORWARD THE ORIGINAL NOTES VIOLATES THE HEARSAY RULE UNDER THE FEDERAL RULES OF EVIDENCE. WE ARE ASKED TO TAKE THEIR WORD FOR IT… "TRUST US WE ARE THE HOLDERS IN DUE COURSE OF THE NOTE." WITHOUT FULL DISCLOSURE BY THE DEFENDANTS REGARDING THE WHEREABOUTS OF THE NOTES AND WITHOUT ONE OF THEM PRODUCING THE ORIGINAL NOTES, THEY ARE ADMITTING AND CONFESSING THAT THE ORIGINAL NOTES ARE LOST OR DESTROYED.

14. That because there is no evidence before the court of who is the holder-in-due-course of the original note, WELLS FARGO BANK, NA has assigned the note, since the original note states that the note will be assigned, but there is no solid and definitive evidence of who has lawfully been assigned either the beneficial interest in the two Deeds of Trust or the two original Promissory Notes and therefore the Mortgage Backed Security or an undisclosed note buyer lacks authority to enforce the instrument under UCC and California Commercial Code Section 3309(a) and because the undisclosed note buyer has failed to prove its right to enforce the instrument under that statute, they are not the Real Party in Interest under Rule 17(a), of the Federal Rules of Civil Procedure because they failed to ratify the commencement of the foreclosure, with standing to conduct the Trustee's Sale.

15. That, in the alternative, without first producing the original of the Promissory Note signed by the Plaintiff /borrower or explaining the loss or destruction of the Note via the testimony of a person with knowledge of the facts and circumstances surrounding the loss or destruction of that instrument, the original lender WELLS FARGO BANK, NA, the purported assignee of the original lender whose name is unknown at this time to the Plaintiff, the Defendant loan servicer, on information and belief the Defendant WELLS FARGO BANK, NA, could not lawfully non-judicially foreclose the Plaintiff/Borrower's interest in the subject property or sell his property at the planned Trustee's sale.

16. **On eight different occasions the Ninth Circuit Court of Appeals has ruled that the only way to perfect a security interest in a debt obligation is by possession of the note,** please see In re Matter of Staff Mortg. & Inv. Co., 550 F. 2d 1228, (Ninth Cir.

1977); <u>Bear v. Coben</u>, (In re Golden Plan of Ca., Inc) 829 F. 2d 705(Ninth Cir. 1986);

and <u>In re Bruce Farley Corp.</u>, 612 F. 1197 (Ninth Cir. 1980). Similar rulings were handed

down by the Sixth Circuit Court of appeals, see <u>Motobecane America, Ltd v. Patrick</u>

<u>Petroleum, Co.</u>, 791 F. 2d 1248, (Sixth Cir., 1986); <u>In re Maryville Sav. & Loan, Corp.</u>,

743 F 2d 413 (Sixth Cir. 1984). The Eighth Circuit Court of Appeals issued a similar

ruling, see <u>In re Holiday Intervals, Inc.</u>, 931 F. 2d 500, (Eighth Cir. 1991).

17. **A growing number of federal judges in California, Ohio and elsewhere have**
**recently compelled the banks to produce the note and produce evidence that they**
**are the holder-in-due-course of the note as a condition to a foreclosure.** With respect

to the rules of evidence, the creditor must show that they are the holder with evidence

that does not violate the hearsay rule, *as discussed in a bankruptcy case in California*,

which involved a note and deed of trust, see In re Vargas, 396 B.R. 511, at 517-519

(Bankr. C.D. Cal 2008). Furthermore, it was also ruled in another bankruptcy case, that

the servicing agent does not have standing to enforce the note, see <u>In re Hwang</u>, 396 B.R.

757, (Bankr. C.D. Cal. 2008). See <u>Deutsche Bank Nat'l Trust Co. v. Steele</u>, 2008 WL

111227 (S.D. Ohio, January 8, 2008, in which the federal judge ordered Deutsche Bank

to produce evidence that they are the holder of the note. See also <u>In re Foreclosure Cases</u>,

521 F Supp. 2d 653, (S.D. Ohio, 2007), in which the federal judge stated that the creditor

must show standing as follows: "[I]n a foreclosure action, the Plaintiff must show that it

is the holder of the note and the mortgage at the time that the complaint was filed."  For

similar decisions in bankruptcy cases see also <u>In re Hayes</u>, 393 B.R. 259 (Bankr. Mass.

2008), <u>Nosek v. Ameriquest (In re Nosek)</u>, 286 Br. 374 (Bankr D. Mass. 2008) in which

it was revealed that Ameriquest was not the holder of the note and mortgage, but only the

servicer. The law firm representing Ameriquest was fined $ 100,000.00 by the judge for

making material misrepresentations to the court about their clients status. In re Schwartz,

366 B.R. 265 (Bankr. D. Mass. 2007) in which there was no evidence presented

identifying the actual holder of the note.

18. Neither WELLS FARGO BANK, NA nor anyone else have supplied any material

evidence that they are the holder in due course of the two notes and deeds of trust (a first

and second note was signed with the original lender). This is an established requirement

and has been a factor in determining whether or not a particular creditor has standing to

sue for recovery of damages in a foreclosure. To recover on a promissory note, the

Defendant must prove: (1) the existence of the note in question; (2) that the party sued

signed the note; (3) that the Defendant is the owner or holder of the note; and (4) that a

certain balance is due and owing on the note.  See In Re: SMS Financial LLC. v. Abco

Homes, Inc. . No.98-50117  February 18, 1999 (5th Circuit Court of Appeals.) In

Carnegie Bank v Shalleck ; 256 N.J. Super 23 (App. Div  1992), the Appellate Division

held, "When the underlying mortgage is evidenced by an instrument meeting the criteria

for negotiability set forth in N.J.S. 12A:3-104, the holder of the instrument shall be

afforded all the rights and protections provided a holder in due course pursuant to N.J.S.

12A:3-302. Since no one is able to produce the "instrument" there is no competent

evidence before the Court that any party is the holder of the alleged note or the true

holder-in-due-course. New Jersey common law dictates that the plaintiff prove the

existence of the alleged note in question, prove that the party sued signed the alleged

note, prove that the plaintiff is the owner and holder of the alleged note, and prove that a

certain balance is due and owing on any alleged note.  Federal Circuit Courts have ruled

1    that the only way to prove the perfection of any security is by actual possession of the

2    security." See also <u>Matter of Staff Mortg. & Inv. Corp.</u>, 550 F.2d 1228 (9th Cir 1977),

3    "Under the Uniform Commercial Code, the only notice sufficient to inform all interested

4    parties that a security interest in instruments has been perfected is actual possession by

5    the secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform

6    Commercial Code. <u>In Re Investors & Lenders, Ltd.</u> 165 B.R. 389.

7

8

9    19. Additionally, a more important issue is the question of whether or not the Mortgage

10    backed Security or an undisclosed Third Party Note Buyer, or any one else who may have

11    acquired the note recently, and who does not have the right of subrogation as a stranger to

12    the transaction, see 73 AM JUR Second, Section 90, has the power to enforce the notes

13    and deeds of trust. WELLS FARGO BANK, NA is a bank, which claims to have

14    foreclosure powers, whereby that bank claims to own the Notes and Deed of Trust

15    associated with the bank loans for my property. However most of the time a residential

16    mortgage, including the Note and Deed Of Trust, has been sold at least once in the first

17    six months, meaning that WELLS FARGO BANK, NA is only a trustee or loan servicer

18    at this stage and has refused and failed to produce the note, which means that they do not

19    have possession of the original note and that means that they have sold the original note.

20    Thus they cannot produce the original note because they do not have custody of it. The

21    fact that the note was sold means that whoever bought the note does not have the right of

22    subrogation as a stranger to the transaction. This question was explored in great depth in

23    <u>Aetna L. Ins. Co. v. Middleport</u>, 124 U.S. 534, which stated that only a cosigner, or

24    someone who is acting to protect their own junior lien or an insurance company has the

25    right of subrogation. "<u>Subrogation in equity is confined to the relation of principal and</u>

surety and guarantors, to cases where a person to protect his own junior lien is compelled

to remove one which is superior, and to cases of insurance....Anyone who is under no

legal obligation or liability to pay the debt is a stranger, and, if he pays the debt, a mere

volunteer.". (emphasis mine) Aetna Life v. Middleport, 124 US 534, quoting Suppiger v.

Garrels, 20 Bradwell App Ill. 625.


20. Both WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE

ASSET BACKED PASS-THROUGH CERTIFICATES SERIES 2007-AR8, with

multiple investors claiming ownership and any undisclosed Third Party Note Buyer who

may be involved were clearly never a cosigner or a surety on the original Promissory

note. Attorneys, have an auxiliary role to play in this matter, assisting WELLS FARGO

BANK, NA in their unlawful activities, by aggressively pursuing a foreclosure of the

subject property, even though their Undisclosed Third Party Note Buyer does not have

the right of subrogation as a stranger to the transaction. The Defendants, including

WELLS FARGO BANK, NA, clearly never had the power to foreclose on the note and

deed of trust, since the note was sold to an undisclosed Third Party Note Buyer. As a

result of the foregoing, the Defendants, including WELLS FARGO BANK, NA, and all

of them, never had the power or standing to foreclose on my home and have exercised

this power under color of authority by using the organs and instrumentalities of

California government, including the Sonoma County Recorders Office, and, in the near

future, the Superior Court and the Sheriff to attempt to take my private property without

due process of law and without standing.

21. Due process of law violations occurred when those without standing to sue are allowed to pursue a foreclosure or other type of legal action. Courts and court clerks have a gatekeeper role to play in this matter, designed to prevent a Party, <u>without standing,</u> from filing a civil action to enforce a foreclosure and a security agreement that they cannot lawfully enforce. All Defendants, acting together have engaged in fraudulent concealment, and fraudulent inducement. The term subrogation has a well-established meaning in the law, and the above US Supreme Court ruling has clear and unmistakable language, which does not lend itself to ambiguity or a multiplicity of interpretations. If WELLS FARGO BANK, NA sold the original note to WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE ASSET BACKED PASS-THROUGH CERTIFICATES SERIES 2007-AR8, hereinafter The Mortgage Backed Security, which is owned by multiple investors, therefore, The Mortgage Backed Security, with multiple investors, does not have the right of subrogation, as a stranger to the transaction. The multiple investors have never acted as a cosigner or surety to the debt, so they lack the right of subrogation. As a result, The Mortgage Backed Security has no right of subrogation.

22. It is well understood, in the mortgage banking industry that banks buy notes and deeds of trust for pennies on the dollar, and do not incur a financial loss or damages as a result of a borrower failing to repay a bank loan. This is true because the actual cost of creating money is negligible, and "the raw materials the banks use cost them nothing", see **Exhibit C**, page 23, The House Banking and Currency Committee Report, issued in September 1964. In addition, the Defendants, including WELLS FARGO BANK, NA,

Defendants, including WELLS FARGO BANK, NA, to attempt loan foreclosure on the subject property is a violation of my property rights in pursuance of the foreclosure of the subject property. It appears that the Defendant, WELLS FARGO BANK, NA has failed to produce the original notes and does not have the right of subrogation as a stranger to the transaction, and therefore has no right, title or interest to the subject property.

## Parties/ Plaintiff

26. I, Michael J. Ilnicki, am the Plaintiff, a private citizen living in California.

## The Defendants

27. WELLS FARGO BANK, NA is named as a defendant because they exercised powers that they do not have and have taken actions in conjunction with local attorneys to deprive me of my private property without due process of law. Due process of law deprivations occurred, in this context, when WELLS FARGO BANK, NA, acted in league with DOE Defendants to foreclose on my property, even though they had no standing to do so, since the notes were sold to the Mortgage Backed Security, and probably sold later to an undisclosed Third Party Note Buyer, and under the subrogation doctrine established by the US Supreme Court, neither the Mortgage Backed Security nor an Undisclosed Third Party Note Buyer cannot foreclose. It appears that the notes are alleged to be held by WELLS FARGO BANK, NA's Mortgage Backed Security or some other financial institution, although it is impossible to determine who is the actual holder of the note. Please review the following for affirmation that the right of subrogation does

not exist for the Defendants; Henningsen v. United States Fidelity & G. Co.; 208 US

404; 52 L. Ed 547, 28 S. Ct. 389; Prairie State National Bank v. United States; 164 US

227; 41 L. Ed. 412; 17 S. Ct. 142; Aetna L. Ins. Co. v. Middleport; 124 US 534; 31 L.

Ed. 537; 8 S. Ct. 625; McBride v. McBride; 148 Or 478 36 P 2d 175. *AS A RESULT,*

*THE DEFENDANT,* WELLS FARGO BANK, NA, *HAS NO RIGHT, TITLE OR*

*INTEREST IN THE LAND AND HOME, WHICH IS THE SUBJECT OF THIS CIVIL*

*ACTION, SINCE THE NOTES HAVE BEEN SOLD, AND THE UNDISCLOSED THIRD*

*PARTY NOTE BUYER DOES NOT HAVE THE RIGHT OF SUBROGATION TO THE*

*ORIGINAL NOTES THAT THEY ALLEGEDLY PURCHASED AND THAT WAS*

*ALLEGEDLY ASSIGNED TO THEM. THEY HAVE NO STANDING TO FORECLOSE*

*ON MY PROPERTY.* See also 73 Am Jur Second, Section 90 which states that a right of

subrogation does not exist for a mere volunteer, or some one who has not paid the entire

mortgage debt in full.


*28. The SONOMA COUNTY RECORDER has permitted WELLS FARGO BANK, NA to*

*record documents that are unlawful for them to record, such as the notice of Default,*

*which is unlawful, because WELLS FARGO BANK, NA does not have possession of the*

*notes, (The First note and deed of trust and the second note and deed of trust, both*

*entered into with WELLS FARGO BANK, NA) see Matter of Staff Mortg. & Inv. Co., 550*

*F 2d 1228, (1977), affirmed three times by the Ninth Circuit. The Defendants used the*

*Sonoma County Recorder, a government agency as their means of violating my right to*

*due process of law under the Fifth and Fourteenth Amendments to the US Constitution.*

WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE ASSET

1  BACKED PASS-THROUGH CERTIFICATES SERIES 2007-AR8 is named, since they

2  are claiming to be the holder-in-due-course of the note and deed of trust.

3

4  29. The fact that The Mortgage Backed Security did not pay the entire mortgage debt in

5  full and is not secondarily liable is unrebutted and is therefore a fact undisputed and

6  agreed to by the Defendants. These Defendants are attempting to deprive me of my rights

7  to use and ownership of my land and home, without due process of law.

8

9

10  <u>Facts</u>

11  **STATEMENT OF THE FACTS OF THE CASE**

12

13  30. The Defendants and their agents have acted with gross negligence in their duty to me

14  and all involved have failed to act to ensure that the Defendants adhere to the law in

15  California providing for the recovery of real property in a foreclosure. The Seventh

16  Amendment, requires the mortgage lender to file a civil action against me for recovery of

17  the subject property, when they have standing to sue for such recovery and obtain a court

18  order prior to holding a sale of the subject property on the court house steps in a public

19  auction. Any sale of the property on the courthouse steps has to occur ___after___ a final court

20  order flowing from a civil case for recovery of real property, because, that is the only

21  proper event by which the mortgage lender takes ownership and control of the subject

22  property, under which they claim to own the property. The very clear and unambiguous

23  language of the Seventh Amendment, mandates that a trial by jury must occur, where the

24  matter in controversy exceeds twenty dollars. California Civil Code Section 2924

25  implements the due process clause found in the Fifth and Fourteenth Amendment of the

26

27

28

US Constitution and makes it mandatory that a lender must first obtain a court order prior

to holding a public auction for the foreclosed property on the courthouse steps. There is

no latitude for interpretation or debate in this regard. The plain language of California

Civil Code Section 2924 makes it mandatory to obtain a court order as a prerequisite to

holding a foreclosure sale. Any other methods amount to theft of private property.

31. **First;** As a property owner in Sonoma -county, I, Michael J. Ilnicki, purchased the

subject property in Sonoma county, California. **This land is now my private property**

**to which I have allodial title, which means absolute ownership.** I own the property in

allodium and in ***"Dominium Directum Et Utile",*** please see <u>Fairfax v. Hunter</u>; 7 Cranch

603, 3 L. Ed. 453. I have complete and absolute dominion in my property; which is the

union of the title and the exclusive use of it. I became aware after careful study and

analysis that the original deed of trust claims a security interest in the subject property

based upon the transfer of Federal Reserve notes, which is commercial paper, as

described in <u>Clearfield Trust Company v. US</u>; 318 US 363; which states; "the United

States as a drawee of commercial paper [federal reserve notes] stands in no different light

than any other drawee" (bracketed portion added).

32. I realized that the Federal Reserve System never provides anything of substance or

intrinsic value when they create the credit, which is only a bookkeeping entry for the

loan, which is created by completing a ledger entry in the records of the bankers who

wrote the original note and deed of trust, Please See **Exhibit C and Exhibit E**. It is,

furthermore, interesting that **Exhibit E**, a pamphlet published by the Federal Reserve

Bank of Chicago, which states on page 3, and page 6, right column, second paragraph,

that when a bank loan transaction is entered into, the bank deposits the promissory note,

which is placed in a transaction account in the name of the borrower in exchange for the

promissory note, proving that the loan is a mutual loan between the lender and the

borrower and that the borrower funds his own loan with the promissory note.   **Exhibit F**,

at the last page, the moving papers and copy of a note filed by a bank in a civil case in

California proves that the statements in **Exhibit E**, above are true. The lender in **Exhibit**

**F** endorsed the note with an endorsement stamp that proves that they converted the note

into a bank deposit as a source of funding for the loan, making the entire transaction a

mutual loan between the lender and the borrower. SEE ALSO **Exhibit D**, for a copy of a

Note endorsed by COUNTRYWIDE, FSB, demonstrating conclusively that banks use

endorsement stamps routinely or an allonge to deposit the note in a transaction account to

create a mutual loan between the lender and the borrower and to fund the loan, as

described in the report by the FEDERAL RESERVE BANK OF CHICAGO, see **Exhibit**

**E**. The Defendants, in this matter have not incurred a financial cost or damages by my

failure to pay the alleged balance due on the note in this matter. When the Defendant

WELLS FARGO BANK, NA creates money it does not cost them anything to create said

money. The note that was signed for this loan was also endorsed, see **Exhibit G**.


33. I base my statement of fact upon pages 9,10, 11, 22, 23, and 24 of the House Banking

and Currency Committee Report called "Money Facts" published in 1964, see **Exhibit C**,

which states on page 23 the following; "The business of banks is to lend money. The

profit comes from the difference between the cost of creating money and the price they

charge borrowers for that money. *Now the cost of creating money is negligible*. Congress

has delegated the power to create money to the banking system without a charge. The

banks do not pay a license fee or a payment charge for their reserves. *Thus the raw materials the banks use cost them nothing.*" (Emphasis added), see Page 23 of **Exhibit C.** My statement is derived from the technical descriptions of banking practices found in Money Facts, published in 1964 by the house banking committee, which is hereby incorporated by reference in this civil action as **Exhibit C.** The organic laws of this nation requires that "no state shall... make anything but gold and silver coin a tender in payment of debts", Constitution for the united states of America, Article One, Section Ten. The Federal Reserve Banking Scheme is based upon the deliberate and planned raising of interest rates by the Federal Reserve Bank of New York in October of 1929, and the subsequent deliberate crash of the stock market by them in 1929, called black Monday in order to get greater control over American government.

34. The Bankers, stockholders in the Federal Reserve Bank, then with their proxies and agents in the government, the criminal element in government, hereinafter CEG, forced the UNITED STATES into a permanent state of declared national emergency on March 9, 1933, in the Emergency Banking Bill, 48 Stat.1, Public Law 89-719; declared by President Roosevelt, being bankrupt and insolvent in Several Executive Orders No. 6073, 6102, No. 6101, No. 6260 and was later seconded by Congress on June 5, 1933 with the passage of HJR 192, making all Americans the 'enemy' in paragraph 5(b) of the Trading with Enemies Act. Please see Senate Report 93- 549, dated 1973, for confirmation of the above. Said Bankers then placed the UNITED STATES into receivership based upon the Bankruptcy filed by an Act of Congress, HJR 192, dated June 5, 1933.

35. The real party in interest for the bankruptcy was never stated, but is clearly the British Royal Family, based upon the Treaty of Peace of 1783, and Jays Treaty 1791. These two documents created a fraudulent reversal of the State of Independence won by a long and bloody battle with the British during the Revolutionary War, by stating that King George is the Prince of the United States of America in the Treaty of Peace of 1783, and the subsequent paying of reparations in Jay's treaty. These provisions in the Treaty of Peace of 1783 appears to specifically contravene direct orders by Congress to the treaty negotiators, John Jay, John Adams and Benjamin Franklin.

36. Through the above described actions by the bankers and American government officials who committed acts of treason against the American people, the bankers, through their manipulation of Congress and President Roosevelt in 1933, and earlier, in the eighteenth Century, the treaty negotiators, the Bankers obtained control over our currency system, forced us into bankruptcy and created a new government under the bankruptcy, with new emergency powers of the reconstituted government, see Senate Report 93-549.

37. The new currency, after the bankruptcy in 1933, became a debt instrument, which the American people have to pay with no backing by gold and silver, as required under Article One, Section Ten of our Federal Constitution. All bank loans in the continental United States are fraudulent in their very nature because the Federal Reserve Notes they are based on are only based upon book keeping entries by the bankers and represent no value, and no valuable consideration and no pledging of the banks assets. The original mortgage is therefore chattel paper with no valuable consideration and therefore the

whole mortgage contract is based upon fraud and a lack of valuable consideration since Federal Reserve Notes have no intrinsic value whatsoever, and are just bookkeeping entries under the 1933 bankruptcy. The original loan documents designated US dollars or lawful money of the United States and not Federal Reserve notes or commercial paper as the legal tender loaned.

38. If said currency, Federal Reserve Notes, were backed by something of intrinsic value, then the currency could be considered to be valuable consideration, because the currency, could be exchanged for something of recognized value, and the lender of the Federal Reserve Notes, would then be pledging their own assets in the transaction.  I, Michael J. Ilnicki, the Plaintiff, am not a surety for this fraudulent national debt. I am not a subject of the British Royal Family, I am not a US Citizen under the jurisdiction of Washington, D.C., and I am not a co-bankrupt debtor for this fraudulent debt, and I am not part of the fraudulent Federal Reserve Banking Scheme.

39. The banks involved in this matter, are committing fraud and fraudulent conversion by attempting to transform the mortgage, backed by no valuable consideration, into a security device which can be used to obtain a lien and subsequent ownership of my property, all without lawful money which is mandated by Article One, Section Ten as stated above and without due process of law; a trial by the jury of my peers, as required by the Fifth and Seventh Amendments respectively.

40. The Defendant's predecessor-in-interest did not loan anything of substance or intrinsic value, but they loaned their own credit in the transaction. Federal Reserve notes

are bank credit and as such are not backed by gold or silver coin as required under Article One, Section ten of the US Constitution. This is an absolute requirement pursuant to the ruling by the US Supreme Court in Woodruff v. Mississippi, see Woodruff v. Mississippi; 162 US 291;16 S. Ct. 820; 40 L. Ed. 973. I quote Woodruff v. Mississippi, supra, as follows; "**the power to borrow money, simply, meant the power to borrow whatever was money according to the Constitution of the United States and the laws passed in pursuance thereof,** and the power to issue negotiable bonds included the power to make that payable in such money. This the law presumed, and to proceed on an implication to the contrary was to deny the holders of these bonds, subsequent to their purchase, a right arising from the Constitution and laws of the United States." (Emphasis added.) The original lender contracted with this Plaintiff to loan Plaintiff Legal Tender "Dollars" of U.S. currency. The contracting parties contracted that the loan would be repaid in Legal Tender "Dollars". The contracting parties did not enter into a contract to loan or borrow and repay either credit or Negotiable Instruments. Mortgage Defendants failed to lend this Plaintiff any real asset or any Legal Tender "Dollars" as lawfully defined by the US Congress, and Article One, Section Ten of the United States Constitution in the form of US Silver Coin. The U.S. Congress, in deciding what was to be Legal Tender for this country, by act on April 2nd, of 1792, defined the term "Dollar" to mean specifically a coin issued by the U.S. Government containing 371 4/16 grains of pure silver. As Mortgage Defendants have failed to lend Legal Tender within the Lawful definition of the term, the contractual agreement between these parties was breached by the original lender and anyone attempting to collect a debt pursuant to said note and deed of trust, including the Defendants.

41. Furthermore, the common law does not recognize a contract to be valid where there is no valuable consideration, such as this case, where nothing of substance or value was loaned in the transaction. The "money" loaned was bank credit, created by a series of bookkeeping entries by the original lender and subsequently by the Defendant.

42. This fraudulent mortgage can, under this fraudulent banking scheme, thus be converted into a fraudulent lien based upon no valuable consideration, obtained by establishing a banking system of bookkeeping entries for commercial Federal Reserve 'credit' with no backing by gold or silver, as required by Article One, Section Ten of our Federal Constitution, or anything of substance or intrinsic value and then placing a fraudulent lien or security device on my property and using this fraudulent devise, while claiming to be the holder in due course on the deed to my land. The bankruptcy of the UNITED STATES under HJR 192 removed gold backing from the currency as of June 5, 1933, under said Act of Congress, and set up the fraudulent and pernicious Federal Reserve bankruptcy system. The defendants, as a result, operate under a presumptive claim of ownership, which is ultimately based upon no valuable consideration and upon the Bankruptcy of the UNITED STATES declared by Congress on June 5, 1933, under House Joint Resolution 192, dated June 5, 1933 and the State of Declared National Emergency declared by Congress on March 9, 1933.

43. Both of these events forever altered the structure and fabric of American government as it was established by the founding fathers during and after the period of the revolutionary war from 1775 until about 1792 and gave, through sedition, a financial stronghold to the international bankers who hold a stockholders position in the Federal

Reserve Bank/System, and who, are belligerent foreign principals in a dramatically

altered American Government/ Federal Reserve Banking scheme that is operating

without the authority of the American people.

44. Full disclosure was never given to the American people of the names of the creditors

or the nature of the obligation the American people have been forced to take on under the

Federal Reserve Banking Scheme and the bankruptcy of the United States and state

governments as accommodation parties. See also Senate report 93-549, published in

1973. Nowhere in the blueprint for the federal and state governments, our American

Constitution, is there a provision for foreign or domestic financiers and industrialists to

take over the reins of government through a perpetual state of bankruptcy, with no named

creditors, no financial reorganization plan and no accountability by elected officials for

having paid the Federal Reserve billions of dollars and billions of dollars worth of gold,

for their service of "loaning money into circulation" and thereby bankrupting the federal

and state governments.

45. Please see **Exhibit C**, Money Facts, a report by the House Banking Committee,

published in 1964, page 9 for a discussion of how banks get money and how their

Reserves are created. The British Royal Family appears to be the real party in interest in

the Federal Reserve System based upon the Treaty of Peace of 1783 and Jays Treaty,

events, which appear to give The British Royal Family a fraudulent dominion over the

United States of America, as The 'Prince of the United States of America' in the First

paragraph of the Treaty of Peace of 1783. This was contrary to the explicit instructions

given to the Treaty delegation of John Adams, Benjamin Franklin and John Jay by the
Congress of the United States prior to their trip to Paris to negotiate the Treaty.

46. The Defendants used this Federal Reserve Banking scheme to create money out of the
promissory notes and a series of bookkeeping entries, rather than loaning something of
substance or value, as described above at paragraph 22. As a result, the original mortgage
is void, unenforceable and without force and effect, because of a lack of valuable
consideration, and breach of contract. The best sources of information on the origins and
use of credit as money are in Alfred Marshall, MONEY, CREDIT & COMMERCE 249-
251 (1929) and Charles P. Kindleberger, A FINANCIAL HISTORY OF WESTERN
EUROPE 50-53 (1984). A synthesis of these sources, as applied to the facts of the
present case, is as follows: As commercial banks and discount houses (private bankers)
became established in parts of Europe (especially Great Britain) and North America, by
the mid-nineteenth century they commonly made loans to borrowers by extending their
own credit to the borrowers or, at the borrowers' direction, to third parties. The typical
form of such extensions of credit was drafts or bills of exchange drawn upon themselves
(claims on the credit of the drawees) instead of disbursements of bullion, coin, or other
forms of money. In transactions with third parties, these drafts and bills came to serve
most of the ordinary functions of money. The third parties had to determine for
themselves whether such "credit money" had value and, if so, how much. The Federal
Reserve Act of 1913 was drafted with this model of the commercial economy in mind
and provided at least two mechanisms (the discount window and the open-market trading
desk) by which certain types of bankers' credits could be exchanged for Federal Reserve
credits, which in turn could be withdrawn in lawful money. Credit at the Federal Reserve

eventually became the principal form of monetary reserves of the commercial banking system, especially after the suspension of domestic transactions in gold in 1933. Thus, credit money is not alien to the current official monetary system.

47. The bookkeeping entries required by application of GAAP and the Federal Reserve's own writings should trigger close scrutiny of the Defendant's apparent assertions that it lent its funds, credit, or money to or on behalf of the Plaintiff, thereby causing them to owe the Defendant money. According to the standard bookkeeping entries used by banks and application of GAAP, the Plaintiff allegedly was to tender some form of *money*, securities or other capital equivalent to money, funds, credit, or something else of value in exchange (money of exchange, loosely defined), collectively referred to herein as "money," to repay what the Defendant claims was the *money* lent to the Plaintiff. Therefore, the bank's original bookkeeping entry should show an increase in the amount of the asset credited on the asset side of its books and a corresponding increase equal to the value of the asset on the liability side of its books. **This would show that the bank received the customer's signed promise to repay as an *asset*, thus *monetizing* the customer's signature and creating on its books a liability in the form of a demand deposit or other demand liability of the bank, see Exhibit D, MODERN MONEY MECHANICS, page 6, right column, second paragraph, and page 7, second diagraam.** The bank then usually would hold this demand deposit in a transaction account on behalf of the customer. Instead of the bank lending its *money* or other assets to the customer, as the customer reasonably might believe from the face of the Note, the bank *created* funds for the customer's transaction account without the customer's permission, authorization, or knowledge and delivered the *credit* on its own books

representing those funds to the customer, meanwhile alleging that the bank lent the

customer *money*. If Defendant's response to this line of argument is to the effect that it

acknowledges that it lent credit or issued credit instead of money, one might refer to

Thomas P. Fitch, BARRON'S BUSINESS GUIDE DICTIONARY OF BANKING

TERMS, "Credit banking," 3. "Bookkeeping entry representing a deposit of funds into

an account." But Defendant's loan agreement apparently avoids claiming that the bank

actually lent the Plaintiff *money*.

48. **Second;** On information and belief, the assign, the Mortgage backed Security or an

undisclosed third party note buyer, allegedly purchased the notes and mortgages for the

house, which is the subject of this dispute from WELLS FARGO BANK, NA. While

acting on behalf of WELLS FARGO BANK, NA, their agents attempted to collect

payment on the two notes even though WELLS FARGO BANK, NA's principal, The

Mortgage Backed Security, or an undisclosed third party note buyer if the note was sold a

second or third time, does not have the right of subrogation, as a stranger to the

transaction. As the assign, an undisclosed third party note buyer, now acting through an

agent, WELLS FARGO BANK, NA, made a demand for payment and then moved for

foreclosure on the notes even though they do not have the right of subrogation as a party

who is not a cosigner to the original notes. This action by the original lender selling the

notes to a stranger to the transaction and is, therefore, an unlawful act, and a breach of

trust, see Aetna L. Ins. Co. v. Middleport, 124 US 534.

49. I sent the Defendants a written request to validate the debt, see **Exhibit H**. They did not respond to my request.  The lender is currently in default on my request that they provide a validation of the debt and prove that they have the right of subrogation.

50. The Uniform Commercial Code also reflects these principals of common law that once a debtor makes a good faith offer of performance and it is not accepted, the obligation is extinguished, pursuant to UCC 3-603. The defendants cannot produce a verified claim for which relief can be granted.

51. The Defendants steadfastly refused to respond to my constructive notice, See **Exhibit H.**

52. **Third;** The mortgage notes and mortgages cannot form the basis of any kind of lien or security against my private allodial property because I am the assign to the original land patent which was applied for and obtained by my predecessor -in -interest, who filed the original petition for the land patent and received the original land patent, without the defendants in this matter ever having filed a claim against the original land patent. Furthermore, the US Supreme Court has ruled that when land which has been patented by a land owner, or a predecessor -in -interest, the state, or any other entity, person, natural or artificial or party such as a bank or corporation, is barred from making any claim against the land. **Adverse claims cannot attach to patented land pursuant to the acts of the Federal Government or the British government in the earlier days of settlement of the original 13 states authorizing said patents.**

53. The private property in question, which is defined in **Exhibit A**, is also a parcel of land that was once a part of a larger tract of land patented by my predecessor -in -interest in a land patent procedure. Thus, the issuance of a Federal Land Patent barred any future claims against the land. Please see <u>Summa Corp. v California Ex Rel</u>; 104 US 1751 (1984), which states; "We hold that California cannot at this late date, assert it's public trust easement over petitioner's property, when petitioner's predecessors -in -interest had their interest confirmed without any mention of such an easement in proceedings taken pursuant to the act of 1851." Claims by government agencies or states or counties are no different than claims by private corporations and banks, such as the defendants are. Neither the defendants nor the original mortgage company filed any sort of competing claim in the patent proceeding for this land. Therefore, under the above-cited US Supreme Court ruling and many others, neither the defendants nor the original mortgage holder has any legitimate or lawful claim to the land. I, Michael J. Ilnicki, the Plaintiff in this matter, have allodial title, which is the highest title anyone can have on their land. No one has superior title.

54. As the Plaintiff, I, Michael J. Ilnicki, seek to quiet title against all claims by defendants to any security interest, lien, estate, right, title or interest, in my property. The Defendants adverse fraudulent claims are without any rights whatsoever, without any foundation in law, and cannot in any way extinguish my lawful common law exclusive claim to my own private allodial property. It was further stated by the US Supreme Court, in <u>Fairfax v. Hunter</u>; 7 Cranch 603, 3 L. Ed. 453. that land owners have full use and dominion of their property, ***dominium directum et utile***, which means allodial title. My land patent was originally derived from the land grant issued and confirmed by The

Board of Land Commissioners, the predecessor to the Bureau of Land Management, said land patent was confirmed and issued by the Board of Land Commissioners under the authority of Congress. Said land was then transferred under a series of secondary transfers until I purchased the subject property in August of 2007 XXXXXXXX. It has also been stated many times by the US Supreme Court that patented land cannot be collaterally attacked. I have the exclusive patent to my land, which has been brought forward in my name.

55. **Fourth;** I believe that the organic laws of the united States of America, including all founding documents and charters give me <u>**sovereignty and thereby a right to private**</u> <u>**citizenship, property rights that are independent and free of any undisclosed**</u> <u>**security interest claimed by government and a right to access to courts, which are**</u> <u>**derived from the people of the body politic, which created the government and all**</u> <u>**the rights and freedoms which are associated with the organic laws created by the**</u> <u>**body politic.**</u>

<u>Claims Upon Which Relief Can Be Granted</u>

56. **Fifth and Fourteenth Amendment/ Due Process Violations**. The Defendant has violated my right to be free from deprivation of my property without due process under the Fifth Amendment, an established right. When it comes to being stripped of rightful ownership of my land by someone who has no standing to sue and no right of subrogation, the Defendants have committed a due process violation. There is no evidence regarding who is the actual holder of the note or that WELLS FARGO BANK, NA is the holder of the notes or one of their agents or principals is the holder of the notes, therefore the

Defendants do not have standing to foreclose. "An unconstitutional act is not law; it confers no rights; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never been passed." -- Norton vs. Shelby County; 118, US 425 p. 442.

57. The Defendant has violated my right to exercise my rights to ownership and enjoyment of my land granted property. I have a right to be free to full use and dominion of my property without being deprived of my rights under the land grant which has the force and effect of a treaty. I also have a right to ownership of patented land without having my land patent be collaterally attacked by the Defendants.

## FIRST CAUSE OF ACTION

### (Quiet Title)

58. I, Michael J. Ilnicki, the Plaintiff allege and re-allege the foregoing Paragraphs as Paragraphs of this Cause of Action with the same force and effect as if fully set forth herein.

59. **First.** *The defendants do not have a security interest in my property because of the lack of the right of subrogation. They claim that The Mortgage Backed Security or an undisclosed Third Party Note Buyer's purchase of the notes from the original lender forms the foundation of their authority to take my property by a foreclosure action. There*

is no right of subrogation for the Mortgage Backed Security or any other party, because, on information and belief, they have purchased the original notes as a stranger to the transaction and as someone who is a mere volunteer and not secondarily liable. If all Defendants deny that they are the holder of the notes, without revealing who the note holder is, or they fail to bring forward the original promissory notes then they still are representing a party who does not have the right of subrogation. Additionally, there is no valuable consideration, since only Federal Reserve Notes were received, which <u>are not</u> backed by any hard asset of the bank or anything which has any redemption value. I do not remember ever signing over a security interest, <u>based upon valuable consideration</u> to the defendants or anyone else.

60.  The Mortgage backed Security or an undisclosed third party note buyer is acting through an agent, the Defendant, WELLS FARGO BANK, NA, since they purchased the original notes for an undisclosed amount, even though they were not a cosigner on the original notes, meaning they did not have the right of subrogation. As a result of their having sold the original notes and thereby, the note buyer not having the right of subrogation, the Mortgage Backed Security or an undisclosed Note Buyer, is a stranger to the transaction and has no right, title, estate or interest to my land and home.

61. ANY FORECLOSURE ACTION BY THE DEFENDANTS is unenforceable and void ab intio, from the beginning. The Defendants, have a duty, as an alleged creditor to prove that they have a right of subrogation if they are a co-signer, and prove that they are a co-signer, if in fact they are, and additionally prove that they have paid the entire debt in full, prior to taking steps to foreclose on my property, the land and home, which

*is the subject of this civil action.* The Defendant, WELLS FARGO BANK, NA, did not

do this, and by their failure to prove that their undisclosed Third Party Note Buyer is a

co-signer on the original notes and by their failure to prove that said undisclosed Third

Party Note Buyer has paid the entire mortgage debt in full, they have failed to perform a

duty, which they are required to perform under California law.


62. "Subrogation in equity is confined to the relation of principal and surety and

guarantors, to cases where a person to protect his own junior lien is compelled to remove

one which is superior, and to cases of insurance....Anyone who is under no legal

obligation or liability to pay the debt is a stranger, and, if he pays the debt, a mere

volunteer.". (emphasis mine) Aetna Life v. Middleport, 124 US 534, quoting Suppiger v.

Garrels, 20 Bradwell App Ill. 625. The defendants, and all of them, including WELLS

FARGO BANK, NA's principal, the Mortgage Backed Security (or some other

undisclosed Third Party Note Buyer, if the notes were resold), were clearly never

cosigners or sureties on the original Promissory note. Attorneys have an auxiliary role to

play in this matter, assisting WELLS FARGO BANK, NA in their unlawful activities, by

sending out demands for payment and preparing to file an eviction lawsuit in California

courts knowing that they do not have the right of subrogation as a stranger to the

transaction. The undisclosed Third Party Note Buyer has never had any right, title or

interest in the subject property as a stranger to the transaction.


63. The Defendants and their agents and principals violated my right to due process of

law, as guaranteed under the Fifth and Fourteenth Amendments to the US Constitution by

presenting themselves as a party who has a right to enforce the original note, although

their Undisclosed Third Party Note Buyer clearly is not now, nor have they ever been a co-signer on the original notes. Because the undisclosed Third Party Note Buyer has no right of subrogation, they have no right to enforce the note, and thereby no right to foreclose or to claim any right, title or interest in the subject property. I have a right to expect that anyone who is attempting to foreclose on the property has the right to do so as someone who has standing. Based upon information and belief, the Defendant clearly has never had standing to foreclose, based upon the above analysis and facts. Please note that the Defendants and all of them, including, WELLS FARGO BANK, NA, has never claimed that The Mortgage Backed Security (or their undisclosed Third Party Note Buyer) has the right of subrogation. They have never brought forward evidence that refutes, rebuts, challenges or denies my statement of fact in my constructive notice, that the Defendant, WELLS FARGO BANK, NA's principal, The Mortgage Backed Security (or an undisclosed third party note buyer), does not have the right of subrogation and the evidence is that they are not a co-signer. California Courts and federal courts are bound by the US Constitution and laws passed in pursuance thereof, including the FIFTH AND FOURTEENTH AMENDMENTS TO THE US CONSTITUTION.

64. When there is fraud involved, then any action that flows from that fraud is null and void and without force or effect in law, *Ex Dolo Malo Non Oritur Actio,* **out of fraud no action arises.** Additionally, if this is true the Defendants are liable for fraud, fraudulent conversion and attempted theft of private property. This claim of ownership of my home and land without a judicial trial by the jury, and without due process of law, access to an appeals process, a final judgment by a court, represents a taking of property without due process of the law in violation of the Fifth and Fourteenth Amendments to

our Federal constitution and similar provisions in the Northwest Ordinance of 1787. The

fraud has occurred numerous times by way of correspondence and phone calls from the

Defendants and their agents over the last one year, during the year 2009, where they

attempted to mislead me into believing that I owed them money and they had a lawful

claim to enforce the notes, even though they did not because the Mortgage Backed

Security does not have the right of subrogation as a stranger to the transaction. Please see

**Exhibit B**, attached, and incorporated by reference, a copy of a Notice of Default, which

states on page one at Paragraph one, that the Defendants and the agents and principals

have the power to foreclose and that I have to pay the past due amounts, even though they

have not complied with all of the requirements under the Seventh Amendment to litigate

title, whenever the value in controversy exceeds twenty dollars, requiring that the lender

obtain a court order from a court of record prior to selling or transferring the subject

property in a foreclosure sale, and even though they do not have possession of the notes,

and their principal, the undisclosed third party note buyer, does not have standing to sue

for foreclosure as a stranger to the transaction. Also the Notice of Default is fraudulent

because it asks for a payment, even though the full amount of the debt was paid when the

original lender rubber stamped the words "pay to the order of" and deposited the

promissory notes into a checking account in my name without full disclosure, see **Exhibit

E**, page Six, right hand column, paragraph #2, Modern Money Mechanics, a publication

issued by the Federal Reserve Bank of Chicago.

65. The most intense and deliberate acts of fraud occurred in the months of November of

2009 by way of written and telephonic communications, threatening to foreclose, even

though the Defendants and all of them lack standing as strangers to the transaction. One

of the notices that was sent, a Notice of Default, in mid November 2009, attached as

**Exhibit B**, which states, in the first and second paragraph on page 1 that my property is

in foreclosure and the subject property may be sold without any court action. The entire

document is filled with false and misleading statements but the first paragraph is

designed to mislead me into believing that I owe money to the beneficiary or trustee and

that my only option is to pay the debt and that the beneficiary is empowered and has the

standing to foreclose. The Defendants and their agents, through the above described

document, are engaged in a willful and deliberate act of making false and misleading

statements designed to mislead me and make me rely on their statements to my detriment,

so I will be influenced by their written communications to take actions that are

detrimental to me, whereby I either pay money for alleged past due payments of the note

and deed of trust to someone who does not have the right of subrogation as a stranger to

the transaction and someone who does not have the original notes in their possession, and

thereby lacks standing, or else I abandon the subject property to a party who has no right

of subrogation and has no standing. These are false choices. The other statement made by

the Defendants agent in paragraphs 1 and 2 is that they have the right to foreclose without

a judicial process. This statement is false and misleading and designed to induce and

mislead me and make me take actions to my detriment, such as abandoning the subject

property, because the alleged creditor is required to obtain a judgment from a court of

record prior to selling the subject property pursuant to the Seventh Amendment to the US

Constitution as previously discussed.


66. To understand fraud we must take into account the case of <u>McNally v. U.S.</u>, 483 U.S.

350, 371-372, Quoting U.S. v Holzer, 816 F.2d. 304, at 307. Fraud in its elementary

common law sense of deceit includes the deliberate concealment of material information in a setting of fiduciary obligation. A public official is a fiduciary toward the public, and if he deliberately conceals material information from them he is guilty of fraud. "Silence activates estoppel" Carmine v. Bowen, 64 A. 932.

67. "Silence can only be equated with fraud where there is a legal or moral duty to speak, or where an inquiry left unanswered would be intentionally misleading." U.S. v. Tweel, 550 F.2d 297. "Fraud vitiates even the most solemn promise to pay", see U.S. vs. Throckmorton, 98 U.S. 61, 65.

68. The Fifth Amendment to our Federal Constitution of 1787, The Northwest Ordinance of 1787, Article Two and similar provisions of the California Constitution, guarantees that no person shall be deprived of life, liberty or property without due process of law. I, Michael J. Ilnicki, The Plaintiff, do not recall ever having been given a summons or subpoena or other lawful notice requiring my presence in court in a Quiet Title Action. I do not recall ever having been to court over this matter in a Quiet Title Action. I do not recall a trial by the jury, final judgment, access to the appeals process or having seen a court order regarding a determination of Title in an action to Quiet Title. Article Three of the Constitution for the United States of America and Constitution of the United States provides for jurisdiction under the rules of the common law, see Callan v. Wilson, 127 US 540. The Seventh Amendment to our federal constitution and Article Two of the Northwest Ordinance of 1787 guarantees jurisdiction under the course of the common law. The defendants actions are not the result of a common law ruling and due process in a court of law, "The 7th Amendment to the Constitution preserves the right of trial by

jury in suits at common law involving more than $20, and provides that no fact tried by a

jury, shall be reviewed otherwise than according to the rules of the common law.", see

443 Cans of Frozen Egg Product v. United States of America; 226 US 172.


69. The defendants have failed to prove or show a court order authorizing private

property to be liened, levied or seized based upon a determination of title in an Action to

Quiet Title as required under the rules of the common law, and the due process clauses in

the Fifth and Fourteenth Amendments, and pursuant to the Seventh Amendment to the

US Constitution, as discussed previously, mandating a court order be obtained prior to a

foreclosure sale. The Defendants have used the organs and institutions of government,

especially the Sonoma County Recorders Office to seek to obtain fraudulent title to the

subject property and are poised to hold a foreclosure sale without due process of law, and

without a trial by the jury under the rules of the common law. The common law right of

due process is found in the Fifth, Seventh and Fourteenth Amendments to our Federal

Constitution.


70. The actions taken by the defendants, attempt to deprive me of my liberty and property

without due process of law. Article Three of the original constitution for the united States

of America calls for either law courts, see Callan v. Wilson, 127 U.S. 540, (1888) "And

as the guaranty of a trial by jury, in the third article, implied a trial in that mode, and

according to the settled rules of common law". See also Commentaries on the

Constitution by Joseph Story, Volume III, Pages 506-507. Actions by the Defendants to

claim to have a security interest in my private land and home and personal property and

claim authority to hold a foreclosure sale is an action beyond the scope of their authority

as strangers to the transaction, and as parties who have not brought a suit against me

under common law to litigate title. This is described by the United States Supreme Court

as tyranny in; United States v. Lee; 106 US 196, 1S. Ct. 240 (1882) where the United

States claimed ownership of property via a tax sale some years earlier, the court made the

statements found below.

71. "No man in this country is so high that he is above the law. No officer of the law may

set that law at defiance with impunity. All the officers of the government, from the

highest to the lowest are creatures of the law and are bound to obey it. It is the only

supreme power of our system of government, and every man who by accepting office

participates in its functions is only the more strongly bound to submit to that supremacy,

and to observe the limitations which it imposes upon the exercise of the authority which

it gives...... Shall it be said ... that the courts cannot give remedy when the citizen has

been deprived of his liberty by force, his estate seized and converted to the use of the

government without any lawful authority, without any process of law, and without any

compensation, because the president has ordered it and his officers are in possession? If

such be the law of this country, it sanctions a tyranny which has no existence in the

monarchies of Europe, nor in any other government which has a just claim to well-

regulated liberty and the protection of personal rights." In US v. Lee, supra, the

government can be considered as similar and applying in like manner as the defendants in

the above captioned case. If government agencies cannot take private property without

due process of law, how can a bank or mortgage company do so?

72. The Supreme Court also reaffirmed the right to enjoy private property and not be deprived of it without due process of law in Lynch v. Household Finance Corp.; 405 US 538 (1972);

"Such difficulties indicate that the dichotomy between personal liberties and property rights is a false one. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a "personal" right whether the "property" in question be a welfare check, a home, or a savings account. In fact a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil rights has long been recognized. J. Locke Of Civil Government 82-85(1924); J. Adams A Defense of the Constitutions of Government of the United States of America, in F. Coker Democracy, Liberty and Property 121-132 (1942); 1 W. Blackstone, Commentaries 138-140."

73. The taking of private property without due process is clearly a violation of civil liberties as well as personal rights. One of the settled principles of our Constitution is that these Amendments are to protect only against invasion of civil liberties by the government whose conduct they alone limit. Burdeau v. McDowell ; 256 US 465, 41 S. Ct. 574, 65 L Ed. 104813 ALR 1159 (1921); Weeks v. United States; 232 US 383, 34 S. Ct. 341, 58 L. Ed. 652, (1914);Hall v. United States; 41, F 2d 54(9th Cir. 1930); Brown v. United States; 12 F 2d. 926 (9th Cir. 1926). Therefore the organs of government cannot be used to participate and assist in the unlawful plunder of my private allodial property.

74. **Second.** In the United States of America, after of the Revolutionary War of 1775, feudal titles came to an end and were replaced by allodial titles. This structural change in the nature of titles, which came with self government, is aptly described by The Pennsylvania Supreme Court in <u>Wallace v Harmstad</u> 44 PA 492 (1863) which states the following;

"I see no way of solving this question except by determining whether our Pennsylvania titles are allodial or feudal. It seems strange that so fundamental a question as this should be in doubt at this day.....

"He defines a feud as a tract of land held by a voluntary and gratuitous donation, on   condition of fidelity and certain services, and allodial lands as those whereof the owner had   the dominium directum et verum the complete and absolute property, free from all services  from any particular lord...........

"... the Revolution would have operated very inefficiently towards complete emancipation if the feudal relation had been suffered to remain. It was therefore necessary to extinguish all foreign interest in the soil, as well as foreign jurisdiction in the manner of government.

"we are then to regard the Revolution and these Acts of the Assembly  as emancipating every acre of the soil (of Pennsylvania) from the grand characteristic of the feudal system."

Page 45

75. From this I conclude that titles in all of the several states of the united States of America are purely allodial. My allodial title means that I am not a vassal, serf or indentured servant. The Defendants, and all of them, do not have a lawful claim to my home and land. The Defendants, and all of them, do not have a higher title than I do, or any right, title or interest in the subject property except perhaps by fraud, which is void ab initio, since fraud vitiates everything. Similarly, WELLS FARGO BANK, NA, does not have any right, title or interest in my land and home.

76. **Third. Patented Land cannot be collaterally attacked.** The private property in question, which is defined in **Exhibit A**, is also a parcel of land that was once a part of a much larger tract of land patented by my predecessor -in -interest in a land patent procedure. Please see Summa Corp. v California Ex Rel; Supra (1984), which states; "We hold that California cannot at this late date, assert it's public trust easement over petitioner's property, when petitioner's predecessors -in -interest had their interest confirmed without any mention of such an easement in proceedings taken pursuant to the act of 1851." Claims by government agencies are no different than claims by private corporations and banks, such as the defendants are.

77. Neither the defendants nor the original mortgage holder filed any sort of competing claim, or any other sort of claim in the patent proceeding for this land. See also Gibson v. Chouteau; 13 Wall 92; 20 L. Ed. 534, which states "In an action of ejectment in state courts, when the question presented is whether the plaintiff or the defendant has the superior legal title from the United States, the Patent must prevail." See also Field v. Seabury; 19 How 323; 15 L. Ed. 650; "A court of law in a state where strict common law

prevail will not look behind or beyond the grant, to the rights upon which it is founded,

nor examine the progressive stages of the title antecedent to the grant." Ross v.Doe; ex

dem. Barland 1 Pet 655; 7 L. Ed 302. " A patent for lands is conclusive in an action at

law as to the legal title, and cannot be collaterally impeached unless absolutely void on

it's face, or issued without authority." St Louis Smelting and Refining Co. v. Kemp; 104

US 636; 26 L. Ed 875. "Only one having a prior right can attack a patent collaterally."

Doolan v. Carr; 125 US 618; 8 S. Ct. 1228. "A patent is the highest evidence of title and

is conclusive against the government and all claiming under junior patents and titles."

United States v. Maxwell Land Grant Co.; 121 US 325; 7 S. Ct. 1015. Stone v. US; 2

Wall 525; 17 L. Ed 765. I am the exclusive holder of the patent to the land and home,

which is the subject of this complaint, see **Exhibit I**, and thereby have exclusive

ownership, right, title, estate and interest in the land and home, which is the subject of

this complaint. The Defendants cannot collaterally attack patented land. My land is

derived from the Land Patent that was issued by The United States, to my predecessor-in-

interest.

78. Therefore, pursuant to these US Supreme Court rulings neither the defendants nor the

original mortgage holder have any claim to or right, title, estate or interest in my private

land and home. I, Michael J. Ilnicki, the Plaintiff in this matter have allodial title, which

is the highest title anyone can have to their land. No one has superior title. As the

Plaintiff, I, Michael J. Ilnicki, seek to quiet title against all claims by the defendants to

any security interest, lien, right, title or interest, or power to take control of the subject

land and home, the subject property. The Defendants adverse fraudulent claims are

without any rights whatsoever, without any foundation in law, and cannot in any way

extinguish my lawful common law exclusive claim to my own private allodial land and house. I, Michael J. Ilnicki, the Plaintiff in this matter, seek to quiet title as of the date of the notice of default and demand for payment from WELLS FARGO BANK, NA.

79. **Fourth. The Defendants have no right of subrogation as a stranger to the transaction, a mere volunteer and as a Party who has not tendered the full amount of the mortgage debt.** The right of Subrogation does not exist for the Defendants or their assigns, agents, or principals. Upon information and belief, it appears that the Mortgage Backed Security (or an undisclosed third party note buyer) *purchased the notes and mortgages, and they have no right of subrogation as a stranger to the transaction.* The assignment of the notes and mortgages for my property is unlawful since the assign, The Mortgage Backed Security (or an undisclosed third party note buyer), was a stranger to the transaction and has not provided evidence that they paid off the entire mortgage debt in full. The Defendants have failed to provide any evidence in this matter of payment of the entire Mortgage debt in full, therefore under the doctrine of latches, the presumption that the Defendant, WELLS FARGO BANK, NA, and the Mortgage Backed Security (or the undisclosed third party note buyer), all of the other Defendants (and Doe Defendants) did not pay the entire mortgage debt in full is unrebutted and is therefore a fact undisputed and agreed to by the Defendants.

80. Therefore, under the doctrine of latches, the presumption that the Defendant, the Mortgage Backed Security is acting in the shadows as an undisclosed third party note buyer, did not pay the entire mortgage debt in full is unrebutted and is therefore a fact undisputed and agreed to by the Plaintiff, see, 73 Am Jur Second, Section 90, which

states that a right of subrogation does not exist for a mere volunteer, or some one who has

not paid the entire mortgage debt in full. Please review the following for affirmation that

the right of subrogation does not exist for the Defendants; Henningsen v. United States

Fidelity & G. Co.; 208 US 404; 52 L. Ed 547, 28 S. Ct. 389; Prairie State National Bank

v. United States; 164 US 227; 41 L. Ed. 412; 17 S. Ct. 142; Aetna L. Ins. Co. v.

Middleport; 124 US 534; 31 L. Ed. 537; 8 S. Ct. 625; McBride v. McBride; 148 Or 478

36 P 2d 175. *AS A RESULT, THE DEFENDANT,* WELLS FARGO BANK, NA's

PRINCIPAL, A MORTGAGE BACKED SECURITY, *DOES NOT HAVE ANY RIGHT,*

*TITLE OR INTEREST IN THE PROPERTY, WHICH IS THE SUBJECT OF THIS*

*ACTION TO QUIET TITLE, AS THEY ARE ACTING ON BEHALF OF AN*

*UNDISCLOSED THIRD PARTY NOTE BUYER, ONE WHO DOES NOT HAVE THE*

*RIGHT OF SUBROGATION TO THE ORIGINAL NOTES THAT THEY APPARENTLY*

*PURCHASED AND THAT WERE ALLEGEDLY ASSIGNED TO THEM. THEY HAVE*

*NEVER HAD STANDING TO FORECLOSE ON MY PROPERTY.*

**Fifth. The Defendants cannot foreclose without a Judicial Determination of
The Status of The Defendants as The Owner in a Court of Common Law and by
Way of A Quiet Title Action.**

81. The Defendants, by their action are attempting to force me out of the subject property

without due process of law. Pursuant to the rules of the common law, the Defendants do

not have the right to foreclose. The Defendants clearly violated California law when they

threatened foreclosure proceedings, since California is bound by the US Constitution.

Pursuant to the Fifth Article of Amendment to our Federal Constitution, the Defendants

cannot seek to obtain non-judicial remedies to obtain title, thereby claiming to have a

'perfected title', and thereby circumventing the due process requirements as guaranteed

under the Fifth Amendment, by way of the Fourteenth Amendment. A quiet title action

must be adjudicated prior to any foreclosure action taken or being tried in court, pursuant

to the Seventh Amendment to the US Constitution.

82. The unlawful action taken by the Defendants was not preceded by a final judgment in

an Action to Quiet Title, and is therefore violative of my due process rights, see the

Seventh Amendment to the US Constitution. The US Supreme Court also reaffirmed the

right to enjoy private property and not be deprived of it without due process of law in

Lynch v. Household Finance Corp.; 405 US 538 (1972). This case is similar and

analogous to the Lynch case, referenced above, because property is going to be seized

without judicial due process. **The Defendant is proceeding as if rights were waived. I**

**have never waived any rights in this matter, knowingly, intelligently or voluntarily,**

**including my right to judicial due process.** Please see Brady v US; 397 US 742 at 748

for confirmation that rights must be waived knowingly, intelligently and voluntarily.

83. The outcome of this case will determine the ownership of the subject property and the

validity of the claims of the parties. The foreclosure action taken by the Defendants lacks

personal and subject matter jurisdiction because of; 1.) the misrepresentation of material

facts by the Defendants *that they have the right to foreclose* 2.) the failure and refusal by

the Defendant, WELLS FARGO BANK, NA to produce the original notes, 3.) the fact

that the seizure of the private property in question is not lawful because it violates the

doctrine of due process established by California Common Law and by the US Supreme

Court in <u>Lynch v Household Finance</u>, supra, by skipping and circumventing the

requirement to file an Action to Quiet Title under common law to determine with

certainty who has title to the property, as required under the Seventh Amendment to the

US Constitution and 4.) it violates my due process rights as Plaintiff in the Quiet Title

Action.

84. The Defendants are preparing to file an eviction/ unlawful detainer complaint against

me. If they do they may obtain a void judgment against me, since they did not meet all of

the requirements for foreclosure under the Seventh Amendment to the US Constitution.

When a state court proceeds in an action such as an unlawful detainer, in this context

where there is no case for anything other than dismissal, under these circumstances, all of

its judgments are void. "The jurisdiction of the court depends on the correctness of the

allegation." <u>US  v Percheman</u> (1833) 32 US 518 L.Ed.  604 at 617; "Where a court has

jurisdiction it has a right to decide every question which occurs in the cause, and whether

its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in

every other court. But if it act without authority, its judgments and orders are regarded as

nullities. They are not voidable, but simply void. ". <u>Wilcox v Jackson</u>; 13 Peters 264

(1839); quoting <u>Elliot et al v Piersol</u>; 1 Peters 340.

**Sixth. The Mortgages and Notes are not valid because of Inherent Fraud in the Note
and Deed of Trust.**

85. BANK OF AMERICA, N.A., at one point advertised that they have lawful money in

their possession, available to loan to me. As the Plaintiff, I was contacted by WELLS

FARGO BANK, NA, and said party offered to make such a loan of lawful money, which

they reported to have in their possession. I, Michael J. Ilnicki, the Plaintiff, relied upon

said advertised offer and statements of *WELLS FARGO BANK, NA* and accepted their

offer of lawful money. Thereafter, *WELLS FARGO BANK, NA,* with full knowledge and

intent, and knowing that their offers were false and misleading, drew up two notes and

two mortgages, which the Plaintiff relied upon to be true and correct. Soon after that,

without full disclosure and without the Plaintiff's consent and agreement, *WELLS*

*FARGO BANK, NA* stamped the words "Pay to the Order Of" on the promissory notes in

the same manner as one would endorse a check, and opened a demand deposit account in

the name of the Plaintiff.

86. One of the Defendants then deposited the said loan amount in that account as an asset

to fund the loan, without full disclosure.  This act violated generally Accepted

Accounting Principles (GAAP), since that system of bookkeeping is used by all of the

banks, and requires that every asset be balanced and offset by a liability. Title 12 US

Code, Section 248 and 347, require the 2046 balance sheet as it relates to the ledgering of

the original loan account and will show extinguishment of the loan, and this must be filed

pursuant to Title 12 USC, Sections 248 and 347. Form S 3, is a registration statement

filed with the SEC and must be filed whenever the original note is sold. The SEC also

requires the filing of a Form 424 B-5 Prospectus, and 425 B, which also shows the

bundling of notes for delivery into a REMIC (Real Estate Mortgage Investment Conduit).

See also IRS Publication 938. The Financial Accounting Standards Board has established

standards for accounting regarding notes, including FAS 125, 133, 140, 5 and 95, which

will show the liability side of the bank's books and will create a trail of exactly where the

money came from and where it went and will confirm, in discovery, the legal theory advanced in this action to quiet title. Title 12, USC Section 1813 (L)(1) states that when the bank deposits a promissory note it becomes a cash item to the bank and is ledgered as an asset on their books, and the bank was supposed to provide a receipt for it, which was not done. The banks bundle, securitize and sell the notes to a REMIC, often without disclosure to the borrower.

87. When the original lender processed the original notes they countersigned the notes with a stamp that says "pay to the order of" and 'without recourse', Please see **Exhibit D**. This act of countersigning the notes with an endorsement changed the terms of the loan, without full disclosure, and altered the notes, with an endorsement, which is a violation of Federal Law; the National Banking Act of 1864, Section 27, which states as follows:

> "And be it further enacted, that it shall be unlawful for any officer acting under the provisions of this act to countersign or deliver to any Association, or to any other company or person, any circulating notes contemplated by this act, except as hereinbefore provided, and in accordance with the intent and meaning of this act. And any officer who shall violate the provisions of this section, shall be deemed guilty of a high misdemeanor, and on conviction thereof shall be punished by fine not exceeding double the amount so countersigned and delivered, and imprisonment not less than one year and not greater than fifteen years, at the discretion of the court at which he shall be tried."

88. The Defendant listed the promissory notes as an asset of the lender, without also listing them as a liability of the lender, as is customary when a paycheck or cash is deposited. This act of endorsement of the promissory notes without full disclosure was a defect in the bookkeeping records. The Defendants based their claim upon a mortgage contract (Deed of Trust), which is in its very nature fraudulent. There is no valuable consideration in the existing mortgage contract, because there was nothing of intrinsic value loaned in the agreement. The original lender loaned Federal Reserve notes, which are commercial paper pursuant to a decision by the United States Supreme Court, see Clearfield Trust Company v US; 318 US 363. The notes and mortgage indentures, violates Article One, Section Ten of the US Constitution and the Constitution for the united States of America. The notes and mortgage indentures, violates The Coinage Act of 1792. In the united States of America, no state can make anything but gold and silver coin a tender in payment of debt, see Federal Const. Art. 1 Sec.10. Gold and silver coin has intrinsic value, and is exclusively lawful money in the united States of America. The Mortgage contract (note and mortgage) did not provide for the loaning of gold and silver coin, and did not provide for the repayment of the debt in gold and silver coin, as required under our Federal Constitution, Art. 1, Sec. 10, and is, therefore, not a lawful contract, because something other than gold and silver coin was made a tender in payment of debt. The mortgage contract, note and deed of trust is unconstitutional, see Woodruff v. Mississippi; 162 US 291;16 S. Ct. 820; 40 L. Ed. 973; Julliard v Greenman; 110 US 421, at 447, 4 S Ct. 122, 28 L. Ed. 204, See also Knox v Lee; 79 US (12 Wall 457, 20 L. Ed 287. *See also the definition of* Lawful Money, *Webster's New International Dictionary* (2d ed. 1950).

89. The collection of this alleged debt is unconstitutional, see <u>Julliard v Greenman</u>; 110

US 421, at 447, 4 S Ct. 122, 28 L. Ed. 204, See also <u>Knox v Lee</u>; 79 US (12 Wall 457),

20 L. Ed 287; <u>Woodruff v. Mississippi</u>, 162 US 291, which states; "*For the power to*

*borrow money, simply meant the power to borrow whatever was money according to*

*the Constitution of the United States and the laws passed in pursuance thereof*, and the

power to issue negotiable bonds therefore included the power to make them payable in

such money. This the law presumed, **and to proceed on an implication to the contrary**

**was to deny to the holders of these bonds, subsequent to their purchase, a right**

**arising under the Constitution and laws of the United States.**" (Emphasis added.) In

two of the above cases, the US Supreme Court stated that the use of paper money was

acceptable under the above-cited sections of the US Constitution, because the currency at

the time of these rulings was backed by silver and gold coins. <u>Woodruff v. Mississippi</u>,

and Article One, Section Ten of the US Constitution must be held as valid in this matter

as the supreme law of the land, <u>since the court is required to be faithful to the law and</u>

<u>cannot engage in judicial nullification.</u>


**Seventh. The Defendants Cannot Validate the Debt, Therefore the obligation is**

**extinguished, and any claim to the land is void.**


90. The Defendants agents and debt collectors failed to validate and verify the debt in

accordance with the Fair Debt Collection Practices Act Title 15 USC, § 1692(g) and

numerous sections of the Uniform Commercial Code, all of which are a reflection of the

rules of the common law. In my constructive notice I offered to pay the Defendants

agents if they would validate the debt and demonstrate that they have the right of

**Page 55**

1  subrogation. They have failed to respond to my constructive notice and are, therefore in

2  default on my offer. As a result of the foregoing the obligation is extinguished, see

3  <u>Walker v. Houston</u>; 215 Cal 742; 12 P2d 953 at 953, 87 A.L.R. 937.

4

5  91. **Eighth.** The Defendants in this matter have not responded to my request to validate

6  the debt as required in the Offer of Performance, therefore the obligation is extinguished,

7  **See Exhibit E.** Please note the Defendants claim that they have the right to foreclose,

8  however, the right of subrogation does not exist for the Defendants, and all of them, as a

9

10  stranger to the transaction, pursuant to the case law below; see 73 Am Jur Second,

11  Section 90 which states that a right of subrogation does not exist for a mere volunteer, or

12  some one who has not paid the entire mortgage debt in full. Please review the following

13  for affirmation that the right of subrogation does not exist for the Defendants;

14  <u>Henningsen  v. United States Fidelity & G. Co</u>; Supra; <u>Prairie State National Bank v.</u>

15  <u>United States</u>; Supra ; <u>Aetna L. Ins. Co. v. v. Middleport</u>; Supra; <u>McBride v. McBride</u>;

16  Supra. *AS A RESULT OF THE FOREGOING US SUPREME COURT RULINGS, THE*

17  *DEFENDANTS DO NOT HAVE THE AUTHORITY TO FORECLOSE BECAUSE THEIR*

18  *UNDISCLOSED THIRD PARTY NOTE BUYER DOES NOT HAVE THE RIGHT OF*

19  *SUBROGATION. AS A RESULT, THEY CANNOT VALIDATE THE DEBT BECAUSE*

20  *THEY ARE NOT THE HOLDER OF THE NOTE AND CANNOT ENFORCE THE NOTE*

21  *THAT THEY CLAIM TO HAVE PURCHASED FROM THE ORIGINAL LENDER.*

22

23

24  92. In addition, the Defendants never proved that the full amount of the mortgage was

25  paid further amplifying the fact that a right of subrogation does not exist. In most cases

26  the mortgage companies and banks sell the notes to each other for pennies on the dollar,

27

28

meaning that they do not pay the entire mortgage debt in full, thereby providing another

reason why they do not have the right of subrogation.

**93. Ninth. I have a Common law Lien against the property** which must be satisfied

before any equity liens are satisfied, **See Exhibit I**. Common law liens in law supersede

mortgages and equity liens, <u>Drummond Carriage Co.v. Mills</u>; 74 NW 966 (1898); <u>Hewitt</u>

<u>v. William</u>; 47 La. Ann. 742;  17 So. 269; <u>Carr v. Dail</u>; 19 SE 235; <u>MacMahon v. Lundin</u>;

58 NW, 827; and may be satisfied only when a Court of Common Law pursuant to order

of the elected Sheriff under of Article Seven of the Bill of Rights.

**Tenth. The Uniform Commercial Code also reflects these principals of common**

**law that once a debtor makes a good faith offer of performance and it is not**

**accepted, the obligation is extinguished, pursuant to UCC 3-603.**

94. *The Offer of Performance is* the necessary instrument to cause the discharge of the

alleged debt in this matter. Please note under the tender laws, if the payment is made and

refused, the debt is discharged, please see UCC 3 - 603 and UCC 2-511. Also under The

Truth in Lending Act, Title 15, Section 1601, Under Regulation Z the Defendant has to

object to the tender of payment within three days or be barred from objecting later. See

<u>Nygaard v. Continental Resources, Inc</u>; 598 N.W. 2d 851, 39 UCC 2d 851. As the

Plaintiff I have no other recourse or remedy. *I offered to pay the entire debt in full if the*

*Defendants agent would validate the debt, and if they can prove that they have a right of*

*subrogation, SEE **EXHIBIT G**. The Defendants agents did not accept my offer. The*

*Defendant Thereby violated my right to due process of law, by failing to either accept my*

*conditional offer to pay the debt by validating the debt and proving that they have the*

*right of subrogation or disclaiming any right title or interest in the property.*

95. "A tender is an offer of performance, made with the intent to extinguish the obligation when properly made, has the effect of putting the other party in default if he refuses to accept it ," Wiesenberg v. Hirshorn, 97 Cal App. 532, 275, P 997; Lovetro V. Steers 234 Cal. App. 2d 461, 44 Cal. Rptr. 604; Holland v. Paddock, 142 Cal App. 2d 534, 298 P 2d 587. "...The imposition of such conditions is waived by the offeree if he does not specifically point out the alleged defects in the tender. "  Civil Code Sec. 1501; Code of Civil Procedure Sec. 2076; Hohener v. Gauss (1963) 221 Cal. App. 2d 797, 34 Cal. Rptr. 656. "The rationale of the requirement of specific objection is that the offeror should be permitted to remedy any defects in his tender; the offeree is therefore not allowed to remain silent at the time of the tender and later surprise the offeror with hidden objections, " Thomassen v. Carr, (1967) 250 Cal. App. 2d 341, 350, 58 Cal Rptr. 297; . Riverside Fence Co. v. Novak, (1969) 78 Cal. Rptr. 536; See Walker v. Houston; 215 Cal 742; 12 P2d 953 at 953, 87 A.L.R. 937. *The Defendant never accepted my offer to pay the debt by failing to comply with my conditions precedent. They did this by failing to validate the debt. THE MATTER IS SETTLED UNDER THE DOCTRINE OF NIHIL DECIT.*

96. The Uniform Commercial Code also reflects these principals of common law that once a debtor makes a good faith offer of performance and it is not accepted, the obligation is extinguished, pursuant to UCC 3-603. The conditional offer to pay is the necessary instrument to cause the discharge of the Defendant's Demand for Payment in

this matter. Please note under the tender laws, if the payment is made and refused, the

debt is discharged, please see UCC 3 - 603 and UCC 2-511. See <u>Nygaard v. Continental</u>

<u>Resources, Inc</u>; 598 N.W. 2d 851, 39 UCC 2d 851. As the Plaintiff I have no other

recourse or remedy.

97. The lender never produced a verified claim demonstrating that something of value or

substance was loaned in the transaction. Therefore, the Defendants have no right to

pursue this matter in court under Title 15 USC, Sections 1692 (g) and(e).

98. Therefore, the Defendant has no right to demand payment. Also, my good faith offer

of performance was not accepted and therefore the obligation is extinguished. Although

the defendants are poised to force me out of the property, See **Exhibit B**, they never

produced evidence that they are the holder-in-due-course of the two notes.

99. **Eleventh. The rule of decision in California courts is common law.**  <u>Under the</u>

<u>Seventh Amendment to the Constitution for the united States of America, I am entitled to</u>

<u>a common law trial by the jury, 443 Cans of Frozen Egg Product v. United States of</u>

<u>America</u> 226 US 172, 50 at 52 <u>Morris v United States</u> 8 Wall. 507, 19 L. ed. 481 <u>The</u>

<u>Sarah</u> 8 Wheat. 391, 5 L. Ed. 644 50 at 51 <u>United States v. La Vengeance</u> (reported in 3

Dall. 297, 1 L. Ed. 610) <u>United States v The Sally</u> (in 2 Cranch 406, 2 L. Ed 320 and

<u>United States v The Betsy</u> (in 4 Cranch 443, 2 Led. 673). "An unconstitutional act is not

law; it confers no rights; it imposes no duties; affords no protection; it creates no office; it

is in legal contemplation, as inoperative as though it had never been passed." -- <u>Norton</u>

<u>vs. Shelby County</u>; 118, US 425 p. 442. See also, <u>Miranda v. California</u>; 384 U.S. 436

(1966) **"Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them"** emphasis mine.

100. On dry land, any action must be adjudicated under common law pursuant to the Seventh Amendment. According to the US Supreme Court, in <u>443 Cans of Frozen Egg Product v. United States of America;</u> Supra, the US Supreme Court stated as follows; "The 7th Amendment to the Constitution preserves the right of trial by jury in suits at common law involving more than $20, and provides that no fact tried by a jury, shall be reviewed otherwise than according to the rules of the common law." The Northwest Ordinance of 1787 also requires a common law court pursuant to Article Two, since the State of California is bound by compact, via their act of admission under the equal footing doctrine as a state on an equal footing with the states such as Illinois or Wisconsin formed from the Northwest Territories, see <u>Wilcox v Jackson</u>; 13 Peters 264 (1839).

**Twelfth. The Fair Debt Collection Practices Act must be adhered to in California, as in all other jurisdictions in the United States and the United States of America.**

101. If a debt cannot be validated by the creditor, it is unenforceable and the creditor must cease and desist all collection activities pursuant to Title 15, § 1692(g). A notice by the debtor that the debt is being disputed is all that is needed to compel the creditor to stop collecting the debt until debt validation has been completed. See <u>Clarks Jeweler's v. Humble</u>, 823 P 2d 818, 16 Kan App 2d 366 (1991). Furthermore, all collection agencies

and debt collectors include a clause in their collection notices, which is a notice to the
debtor that the debt collector is attempting to collect a debt. This provides tacit
acknowledgment that the debt collectors must comply with Title 15, § 1692 et seq. The
debt collectors cannot identify anything of substance or value loaned in the transaction
and therefore cannot validate the debt. Be advised that "verification" is defined (in
Black's Law Dictionary, Sixth Edition) as follows: *"Confirmation of correctness, truth,
or authenticity by affidavit, oath, or deposition. Affidavit of truth of matter stated and
object of verification is to assure good faith in averments or statements of party."*

**Thirteenth. The Defendant, WELLS FARGO BANK, NA, has no right to lend
credit as this is a violation of their corporate charter and violates Federal law, and is
prohibited under the doctrine of ultra vires.**

102. The United States Supreme Court and the lower courts have long recognized that the
banks cannot loan credit.

"In the federal courts, it is well established that a national bank has not
power to lend its credit to another by becoming surety, indorser, or guarantor for
him." Farmers and Miners Bank v. Bluefield Nat'l Bank, 11 F 2d 83, 271 U.S. 669.

103. "A national bank has no power to lend its credit to any person or corporation."
. . . Bowen v. Needles Nat. Bank, 94 F 925 36 CCA 553, certiorari denied in 20 S. Ct
1024, 176 US 682, 44 LED 637.

104. "The doctrine of ultra vires is a most powerful weapon to keep private corporations within their legitimate spheres and to punish them for violations of their corporate charters, and it probably is not invoked too often .. ." Zinc Carbonate Co. v. First National Bank, 103 Wis 125, 79 NW 229. American Express Co. v. Citizens State Bank, 194 NW 430.

105. "A bank may not lend its credit to another even though such a transaction turns out to have been of benefit to the bank, **and in support of this a list of cases might be cited, which would look like a catalog of ships.**" [Emphasis added] Norton Grocery Co. v. Peoples Nat. Bank, 144 SE 505. 151 Va 195.

106. "It has been settled beyond controversy that a national bank, under federal Law being limited in its powers and capacity, cannot lend its credit by guaranteeing the debts of another. All such contracts entered into by its officers are ultra vires . . ." Howard & Foster Co. v. Citizens Nat'l Bank of Union, 133 SC 202, 130 SE 759(1926).

107. "Neither, as included in its powers not incidental to them, is it a part of a bank's business to lend its credit. If a bank could lend its credit as well as its money, it might, if it received compensation and was careful to put its name only to solid paper, make a great deal more than any lawful interest on its money would amount to. If not careful, the power would be the mother of panics, . . . Indeed, lending credit is the exact opposite of lending money, which is the real business of a bank, for while the latter creates a liability in favor of the bank,

the former gives rise to a liability of the bank to another. I Morse. Banks and

Banking 5th Ed. Sec 65; Magee, Banks and Banking, 3rd Ed. Sec 248." American

Express Co. v. Citizens State Bank, 194 NW 429.

108. "It is not within those statutory powers for a national bank, even though solvent,

to lend its credit to another in any of the various ways in which that might be

done." Federal Intermediate Credit Bank v. L 'Herrison, 33 F 2d 841, 842 (1929).

109. "There is no doubt but what the law is that a national bank cannot lend its credit or

become an accommodation endorser." National Bank of Commerce v. Atkinson, 55 E

471.

110. "A bank can lend its money, but not its credit." First Nat'l Bank of Tallapoosa

v. Monroe. 135 Ga 614, 69 SE 1124, 32 LRA (NS) 550.

111. "... the bank is allowed to hold money upon personal security; but it must

be money that it loans, not its credit." Seligman v. Charlottesville Nat. Bank,

3 Hughes 647, Fed Case No.12, 642, 1039.

112. "A loan may be defined as the delivery by one party to, and the receipt by

another party of, a sum of money upon an agreement, express or implied, to repay

the sum with or without interest." Parsons v. Fox; 179 Ga 605, 176 SE 644. Also see

Kirkland v. Bailey, 155 SE 2d 701 and United States v. Neifert White Co., 247

Fed Supp 878, 879.

**Fourteenth. A party alleging to be creditor must prove standing.**

113. **The Defendants have failed or refused to produce the actual notes, which the**

**Defendants alleges that I owe.** Where the foreclosing party cannot prove the existence

of the notes, then there are no notes. As a result, the Defendants, and each of them, lack

standing to enforce the bank loan, which were entered into by me with WELLS FARGO

BANK, NA, for the purchase of the subject land and buildings, the subject property. To

recover on a promissory note, the Defendant must prove: (1) the existence of the note in

question; (2) that the party sued signed the note; (3) that the Defendant is the owner or

holder of the note; and (4) that a certain balance is due and owing on the note. See In

Re: SMS Financial LLC. v. Abco Homes, Inc. . No.98-50117 February 18, 1999 (5th

Circuit Court of Appeals.) Volume 29 of the New Jersey Practice Series, Chapter 10

Section 123, page 566, emphatically states, " ...; and no part payments should be made on

the bond or note unless the person to whom payment is made is able to produce the bond

or note and the part payments are endorsed thereon.

115. It would seem that the mortgagor would normally have a Common law right to

demand production or surrender of the bond or note and mortgage, as the case may be.

See Restatement, Contracts S 170(3), (4) (1932); C.J.S. Mortgages S 469. In Carnegie

Bank v Shalleck ; 256 N.J. Super 23 (App. Div 1992), the Appellate Division held,

"When the underlying mortgage is evidenced by an instrument meeting the criteria for

negotiability set forth in N.J.S. 12A:3-104, the holder of the instrument shall be afforded

all the rights and protections provided a holder in due course pursuant to N.J.S. 12A:3-

302 "Since no one is able to produce the "instrument" there is no competent evidence

1  before the Court that any party is the holder of the alleged note or the true holder in due

2  course. New Jersey common law dictates that the plaintiff prove the existence of the

3  alleged note in question, prove that the party sued signed the alleged note, prove that the

4  plaintiff is the owner and holder of the alleged note, and prove that a certain balance is

5  due and owing on any alleged note." Federal Circuit Courts have ruled that the only way

6  to prove the perfection of any security is by actual possession of the security.

7

8

9  116. See Matter of Staff Mortg. & Inv. Corp., 550 F.2d 1228 (9th Cir. 1977),

10  "Under the Uniform Commercial Code, the only notice sufficient to inform all interested

11  parties that a security interest in instruments has been perfected is actual possession by

12  the secured party, his agent or bailee." The above Ninth Circuit ruling was affirmed six

13  times by the Ninth Circuit Court of Appeals and similar rulings were handed down in the

14  Eighth and Sixth Circuits. Bankruptcy Courts have followed the Uniform Commercial

15  Code. In Re Investors & Lenders, Ltd. 165 B.R. 389 (Bkrtcy.D.N.J.1994), "Under the

16  New Jersey Uniform Commercial Code (NJUCC), promissory note is "instrument,"

17

18  security interest in which must be perfected by possession."

19

20  **Fifteenth. In order to prove damages in foreclosure of a debt, a party must enter the**

21  **account and general ledger statement into the record through a competent fact**

22  **witness.**

23

24

25  117. To prove up a claim of damages, the foreclosing party must enter evidence

26  incorporating records such as a general ledger and accounting of an alleged unpaid

27  promissory note, the person responsible for preparing and maintaining the account

28

1  general ledger must provide a complete accounting which must be sworn to and dated by

2  the person who maintained the ledger.  See  Pacific Concrete F.C.U. V. Kauanoe,  62

3  Haw.334, 614 P.2d 936 (1980),  GE Capital Hawaii, Inc. v. Yonenaka  25 P.3d 807,96

4  Hawaii 32, (Hawaii App 2001), Fooks v. Norwich Housing Authority; 28 Conn.L. Rptr.

5  371, (Conn. Super.2000), and Town of Brookfield v. Candlewood Shores Estates, Inc.;

6  513 A.2d 1218, 201  (1986). See also Solon v. Godbole;163 Ill. App. 3d 845, 114 Il.

7

8

9  **Sixteenth. The Defendant, WELLS FARGO BANK, NA, has not incurred a**

10  **financial loss in the lending of Federal Reserve Notes.**

11

12  118. **Exhibit C** proves the factual lack of any financial loss or any assets of the alleged

13  creditor pledged in the transaction. As anyone reviewing this exhibit can see, the banks in

14  the United States of America create money at no cost to themselves. Please see page 23

15  Question number 125. The statement by the House Banking Committee is as follows;

16  "The business of banks is to lend money. The profit comes from the difference between

17  the cost of creating money and the price they charge borrowers for that money. *Now the*

18  *cost of creating money is negligible*. Congress has delegated the power to create money

19  to the banking system without a charge. The banks do not pay a license fee or a payment

20  charge for their reserves. *Thus the raw materials the banks use cost them nothing*."

21  (Emphasis added.) Thus the Defendant, WELLS FARGO BANK, NA, cannot allege that

22  they incurred a financial loss, and they have no standing to assert a financial loss or

23  foundation to allege that they incurred a financial loss, based upon the above statement

24  issued by the House Banking Committee.

25

26

27

28

Page 66

119. I, the Plaintiff am aware and allege that the Defendants believe that they have an exclusive right, title and interest in the subject property, which is adverse to my interest, as Plaintiff, and that they do not have said right, title and interest, based upon the elements of fraud and failure of consideration, lack of the right of subrogation, and the unlawful collateral attack on patented land. The claims of the Defendants and each of them are without any rights whatsoever, and the Defendants have absolutely no legal or equitable estate, right, title or interest in the subject land and buildings that is the subject of this complaint. I, the Plaintiff, hereby seek a declaration that the exclusive title to the subject land and buildings, the subject property be and is vested in the Plaintiff and that the Defendants herein, and each of them be declared to have no estate, right, title or interest, whatsoever, in the subject land and buildings that is the subject of this complaint. I further seek a court order that the Defendants herein, and each of them cease and desist any and all actions to assert any right, title or interest or possession in the subject land and buildings, and disclaim any right, title and interest in the subject land and buildings.

### SECOND CAUSE OF ACTION

( Slander of Title, fraudulent inducement)

120. **First.** *I, Michael J. Ilnicki, hereby allege and re-allege all of the foregoing Paragraphs as part of this Cause of Action with the same force and effect as if fully set forth herein.* Based upon the foregoing the Defendants are slandering title to the subject property, and are attempting an act of theft of private property. The Defendants have a duty to refrain from attempting to foreclose when they lack the right of subrogation. I ask

the court to provide declaratory relief to order the defendants to cease and desist and declare null and void the foreclosure notices, abate, curtail, cease and desist any collection activities by the defendants for lack of due process lack of a claim filed against the original land patent, and breach of contract. *The Defendants, and each of them, including WELLS FARGO BANK, NA's principal, The Mortgage backed Security (or their undisclosed third party note holder), have not produced any evidence whatsoever that they are holding the original notes and have not produced evidence that they are a co-signer on the original promissory notes. The Defendants, and each of them, including WELLS FARGO BANK, NA's principal, have, therefore, no right of subrogation and no right to foreclose on the subject property.*

121. *The Defendants and each of them, have never produced any evidence that the Undisclosed Third Party Note Buyer has paid the entire mortgage debt in full, thereby failing to prove a second element that is required of someone who is claiming to have a right of subrogation, as discussed above. The Defendants and each of them, therefore, have no right of subrogation as a stranger to the original transaction and as someone who has not paid the entire mortgage debt in full.* See <u>Aetna L. Ins. Co. v. Middleport</u>, 124 US 534. In an action to annul a promissory note and deed of trust which were then in the hands of an assignee, evidence supported findings that foreclosure during litigation would produce great or irreparable injury to the plaintiffs and therefore issuance of an order of cease and desist restraining assignees from disposing of a note and deed or from foreclosing was not an abuse of discretion, see; <u>Daniels v. Williams</u>; 270 P. 2d 556, 125 C.A. 2d 310. In this case I am asking for an order to cease and desist. I will suffer irreparable harm, the loss of

my home, if the court does not restrain the Defendants from their unlawful actions by way

of an order of cease and desist.


122. **Second.** The Defendants have never produced the following; A.) evidence of a lien,

a security interest or some kind of right, title or interest in the property or any sort of

claim that is superior to my own, based upon a right of subrogation and upon valuable

consideration and a judgment by a common law court, WHICH IS REQUIRED UNDER

CALIFORNIA LAW PURSUANT TO THE FIFTH, SEVENTH AND FOURTEENTH

AMENDMENTS TO THE US CONSTITUTION  PRIOR TO ANY ATTEMPT TO

SELL THE PROPERTY; This is also required by the rules of the common law, pursuant

to the Seventh Amendment, see  443 Cans of Frozen Egg Product v United States of

America; supra and the Northwest Ordinance of 1787; and B.) to identify the valuable

consideration or lawful money that gives them power to enforce the original mortgage

contract.


123. Therefore, under the doctrine of laches the Defendants are barred from now

claiming to have *a right of subrogation and thereby any* right, title or interest in the

property or a lien or a security interest over me, Michael J. Ilnicki, the Plaintiff, or my

private property described in **Exhibit A**. Under the principal of estoppel by silence, the

Defendants remain silent and still do not respond to the constructive notice or issues of

law raised in the constructive notice.


## THIRD CAUSE OF ACTION

(Fraudulent Concealment)

124. Plaintiff re-alleges each and every allegation contained in the General Allegations and in the First and Second Cause of Action of this Complaint as if set forth fully herein.

125. As indicated in the General Allegations in the First and Second Cause of Action of Plaintiff's Complaint, the Defendant original mortgage lender, its Assignee whose name is unknown to the Plaintiff, the loan servicer, negligently or intentionally and fraudulently concealed material facts from the Plaintiff/Borrower concerning the Plaintiff's mortgage loan transaction which said Defendants had a duty to disclose to the Plaintiff mortgage loan borrower and which, in equity and good conscience, should have been timely disclosed to the Plaintiff by said Defendants.

126. That on information and belief, the Defendants acting in its capacity as the Servicer of the Plaintiff's home mortgage loan, has also concealed from the Plaintiff material facts described in the General Allegations and in the First and Second Cause of Action of Plaintiff's Complaint. That Plaintiff home mortgage loan borrower from whom the facts were concealed was ignorant of the facts concealed.

127. That the Defendants above named intended that the facts concealed be acted upon by the Plaintiff home mortgage loan borrower.

128. That the Plaintiffs acted on the concealment resulting in damages to the Plaintiff. On information and belief, the Defendants named above have negligently and/or fraudulently concealed from and have failed and refused to disclose to the Plaintiff/Borrower material facts regarding that loan including but not limited to: the

consideration, if any, paid by the assignee of Plaintiff's home mortgage loan to WELLS FARGO BANK, NA, the name of the person or entity who currently has custody of the original of the Promissory Notes signed by the Plaintiff mortgage loan borrower at the inception of the Plaintiff's residential mortgage loan when, on information and belief, said Defendants knew, or in the exercise or reasonable care, should have known that information; That said Defendants have failed to reveal to the Plaintiff the name and address of the person or entity in possession of the original of those Promissory Notes if the original of those Notes still exists; That said Defendants have failed to advise the Plaintiff whether those Notes has been lost, stolen or destroyed, whether by shredding or otherwise, or to disclose to the Plaintiff/Borrower the current whereabouts of the original of those Promissory Notes or produce an individual with personal knowledge of the facts and circumstances surrounding the loss or destruction of those Notes to testify under oath regarding those facts; That said Defendants have failed to reveal to the Plaintiff/Borrower whether their loan has been securitized and, if so, any details regarding that securitization including the name or names of the investor or investor who purchased the loan, details regarding whether the purchaser of the Plaintiff's mortgage loan have ever purchased one or more Credit Default Swaps insuring their investment in that loan and, if so, the date one or more Credit Default Swaps were purchased, the premium or other consideration paid to the issuer of those Credit Default Swaps and whether the Defendant purchaser of the Plaintiff's home loan or anyone else has made a claim under those Credit Default Swaps and collected any money from the issuer of those Credit Default Swaps.

The Defendants above named have also negligently or intentionally concealed from and refused to disclose to the Plaintiff mortgage loan borrower the true name and address of the assignee of the Deed of Trust and the assignee by endorsement or transfer of the Promissory Notes signed by the Plaintiff mortgage loan borrower.

129. That despite a request therefore by the Plaintiff/Borrower, the Defendants have
negligently or intentionally concealed from and failed and refused to provide the
Plaintiff/Borrower with a copy of the Loan Servicing Agreement relating to the Plaintiff's
home loan so that, among other things, the Plaintiff can review that Loan Servicing
Agreement and attempt to determine from it, among other things, whether that Loan
Servicing Agreement purports to authorize any of the above named Defendants to modify
the Plaintiff's home loan or to sell or to commission some other person or entity to sell
the Plaintiff's residence/property at the upcoming Trustee's Sale and to determine
whether the Plaintiff's loan servicer has the power to delegate the task of conducting that
Trustee's Sale to the Defendant's agents.

130. That, on information and belief, the Defendants including WELLS FARGO BANK,
NA, the assignee of the Plaintiff's home mortgage loan whose name is unknown to the
Plaintiff, and DOE Defendants in the course of their businesses, professions or
employment, or in the above referenced real estate transaction in which they have a
pecuniary interest, have supplied false information for the guidance of others including
the Plaintiff in their business transactions and are subject to liability for pecuniary loss
caused to the Plaintiff/Borrower by the Plaintiff's justifiable reliance upon the
information provided, concealed and withheld from this Plaintiff, since the Defendants
and each of them failed to exercise reasonable care or competence in obtaining or in
communicating that information.

131. That the Plaintiff home loan borrower was the foreseeable user of the above
information.

132. That the Plaintiff/Borrower reasonably relied upon the accuracy of the information

provided and reasonably believed that WELLS FARGO BANK, NA, acting in its

capacity as the Servicer of Plaintiff's loan was the authorized representative of the

Plaintiff/Borrower's actual lender who he believed was WELLS FARGO BANK, NA to

his detriment.

133. That any Trustee's Deed to be issued by the trustee following a non-judicial

foreclosure sale of the subject property to a purchaser at that sale will be outside the

recorded chain of title to the Plaintiff's property and will therefore not convey marketable

title to any purchaser at that Trustee's Sale. That despite the Plaintiff's good faith reliance

upon the representations made to him by the Defendant, the Plaintiff/Borrower is

presently faced with the repercussions of the non-judicial foreclosure of his mortgage

loan as his property is about to be sold at the Trustee's Sale to be conducted by an alleged

"trustee" who was not authorized by the Plaintiff, by his lender of record, or by the

assignee of the Plaintiff's original mortgage lender of record to conduct a Trustee's Sale

of the Plaintiff's property and will soon be threatened with eviction from his residence

through a Writ of Possession wrongfully awarded to the defendants at a subsequent

eviction action brought by the purchaser at that Trustee's Sale. *The Notes cannot be*

*transferred or sold when the note is a non-negotiable instrument. The adjustable rate*

*rider, makes the notes a conditional promise to pay, rather than an unconditional*

*promise to pay pursuant to Uniform Commercial Code 3-106 and the equivalent under*

*California law, making it a non-negotiable instrument. The notes were transferred in*

*violation of California Commercial Code Section 3106, the California version of the*

*UCC section cited above, and in violation of the subrogation doctrine, see* Aetna L. Ins.

_Co. v. Middleport_, 124 US 534 (1888). As a result of the foregoing, the note was transferred in violation of California law, and said transfer is null and void. Because the lender, WELLS FARGO BANK, NA, steadfastly refused to produce the original notes therefore we know that the notes were sold to someone, in violation of the above-cite law. The adjustable rate rider attached to my note states as follows: "This Initial Interest Adjustable Rate Rider is made this 31st day of July, 2007 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Initial Interest Adjustable Rate Note (the "Note") to Wells Fargo Bank, N.A. The lender of the same date and covering the property described in the Security Instrument located at 855 Donald Street, Sonoma, Ca 95476."

134. The track record for real justice in California State Courts during the course of an unlawful detainer lawsuit is very poor will undoubtedly not permit the Plaintiff mortgage loan borrower to challenge the Defendant original lender or its assignee, whoever that might be, with compliance with all of the requirements contained in California law including California Civil Code 2924 et. seq.

135. That the Loan Servicer WELLS FARGO BANK, NA has negligently or intentionally concealed from and misrepresented to the Plaintiff the nature and extent of the Trustees involvement in the Plaintiff's home loan; Has negligently concealed from and misrepresented to the Plaintiff the extent to which an assignee of the Plaintiff's lender can lawfully authorize the trustee to non-judicially foreclose on the Deed of Trust. The Plaintiff is ready to conduct a Trustee's Sale of the subject property, without

compliance with the "power of sale" clause found in California Civil Code Section 2924, and will thereafter be able to thereafter pass marketable title to a purchaser at said Trustee's Sale.

136. That as a direct and proximate result of the Defendants' intentional or negligent concealment from the Plaintiff of material facts relating to his mortgage loan, the Plaintiff has been damaged in an amount to be proven at time of trial but, in any event, in an amount above the maximum arbitration limits of this court.

137. That the Defendants' concealment of material facts regarding Plaintiff's mortgage loan from him was done with an "evil mind" entitling the Plaintiff to an award of punitive damages in an amount to be proven at time of trial.

138. I became aware after careful study and analysis that the original deed of trust claims a security interest in the subject property based upon the transfer of Federal Reserve notes, which is commercial paper, as described in <u>Clearfield Trust Company v US;</u> 318 US 363; which states; "the United States as a drawee of commercial paper [federal reserve notes] stands in no different light than any other drawee" (bracketed portion added).

139. I realized that the Federal Reserve System never provides anything of substance or intrinsic value when they create the credit, which is only a bookkeeping entry for the loan, which is created by completing a ledger entry in the records of the bankers who wrote the original note and deed of trust, Please See **Exhibit C** for factual evidence that

the banks do not incur a financial loss or damages when a loan is not repaid. The Defendants, in this matter have not incurred a financial cost or damages by my failure to pay the alleged balance due on the note in this matter. When the Defendant creates money it does not cost them anything to create said money.

140. I base my statement of fact upon **Exhibit C**, pages 9,10, 11, 22, 23, and 24 of the House Banking and Currency Committee Report called "Money Facts" published in 1964, which states on page 23 the following; "The business of banks is to lend money. The profit comes from the difference between the cost of creating money and the price they charge borrowers for that money. _Now the cost of creating money is negligible_. Congress has delegated the power to create money to the banking system without a charge. The banks do not pay a license fee or a payment charge for their reserves. _Thus the raw materials the banks use cost them nothing_." (Emphasis added). My statement is derived from the technical descriptions of banking practices found in Money Facts, published in 1964 by the House Banking Committee, which is hereby incorporated by reference in this civil action as **Exhibit C**. The organic laws of this nation requires that "no state shall... make anything but gold and silver coin a tender in payment of debts", Constitution for the united states of America, Article One, Section Ten. The Federal Reserve Banking Scheme is based upon the deliberate and planned raising of interest rates by the Federal Reserve Bank of New York in October of 1929, and the subsequent deliberate crash of the stock market in 1929, called black Monday.

141. The original lender offered to loan me Lawful money of the United States of America, claiming that they had money to loan. I accepted their offer not knowing, at the time, that they were going to loan me commercial bank credit. The Defendants predecessor-interest used this Federal Reserve Banking scheme to create money out of the promissory note and a series of bookkeeping entries, rather than loaning something of substance or value. <u>As a result, the original mortgage is void, unenforceable and without force and effect, because of a lack of valuable consideration, and breach of contract</u>. The best sources of information on the origins and use of <u>credit as money</u> are in Alfred Marshall, MONEY, CREDIT & COMMERCE 249-251 (1929) and Charles P. Kindleberger, A FINANCIAL HISTORY OF WESTERN EUROPE 50-53 (1984). A synthesis of these sources, as applied to the facts of the present case, is as follows: As commercial banks and discount houses (private bankers) became established in parts of Europe (especially Great Britain) and North America, by the mid-nineteenth century they commonly made loans to borrowers by extending their own credit to the borrowers or, at the borrowers' direction, to third parties. The typical form of such extensions of credit was drafts or bills of exchange drawn upon themselves (claims on the credit of the drawees) instead of disbursements of bullion, coin, or other forms of money. In transactions with third parties, these <u>drafts and bills came to serve most of the ordinary functions of money</u>. The third parties had to determine for themselves whether such "credit money" had value and, if so, how much. The Federal Reserve Act of 1913 was drafted with this model of the commercial economy in mind and provided at least two mechanisms (the discount window and the open-market trading desk) by which certain types of bankers' credits could be exchanged for Federal Reserve credits, which in turn could be withdrawn in lawful money. Credit at the Federal Reserve eventually became

the principal form of monetary reserves of the commercial banking system, especially

after the suspension of domestic transactions in gold in 1933. Thus, credit money is not

alien to the current official monetary system.

142. The bookkeeping entries required by application of GAAP and the Federal

Reserve's own writings should trigger close scrutiny of the Defendant's apparent

assertions that it lent its funds, credit, or money to or on behalf of the Plaintiff, thereby

causing them to owe the Defendant money. According to the standard bookkeeping

entries used by banks and application of GAAP, the Plaintiff allegedly was to tender

some form of *money*, securities or other capital equivalent to money, funds, credit, or

something else of value in exchange (money of exchange, loosely defined), collectively

referred to herein as "money," to repay what the Defendant claims was the *money* lent to

the Plaintiff. Therefore, the bank's original bookkeeping entry should show an increase in

the amount of the asset credited on the asset side of its books and a corresponding

increase equal to the value of the asset on the liability side of its books. **This would

show that the bank received the customer's signed promise to repay as an *asset*, thus

*monetizing* the customer's signature and creating on its books a liability in the form

of a demand deposit or other demand liability of the bank, see Exhibit D, MODERN

MONEY MECHANICS, page 6, right column, second paragraph, and page 7,

WHICH DISPLAYS at diagram 3, the fact that the banks loans are an asset of the

bank and are offset by the credits to the borrowers transaction account, which are a

liability of the bank.** The amount of that liability is equal to the amount of the loan. As a

result of the foregoing, the typical bank loan is a mutual loan between the lender and the

borrower. The bank then usually would hold this demand deposit in a transaction account

on behalf of the customer. Instead of the bank lending its *money* or other assets to the customer, as the customer reasonably might believe from the face of the Note, the bank *created* funds for the customer's transaction account without the customer's permission, authorization, or knowledge and delivered the *credit* on its own books representing those funds to the customer, meanwhile alleging that the bank lent the customer *money*. If Defendant's response to this line of argument is to the effect that it acknowledges that it lent credit or issued credit instead of money, one might refer to Thomas P. Fitch, BARRON'S BUSINESS GUIDE DICTIONARY OF BANKING TERMS, "Credit banking," 3. "Bookkeeping entry representing a deposit of funds into an account." But Defendant's loan agreement apparently avoids claiming that the bank actually lent the Plaintiff *money*.

**Third;** The mortgage note and deed of trust cannot form the basis of any kind of lien or security against my private allodial property.

143. Wherefore, I, Michael J. Ilnicki, the Plaintiff, pray for a judgment against the Defendants including punitive damages, the amounts to be proven at the time of trial.

FOURTH CAUSE OF ACTION

(Negligent Misrepresentation)

144. I, Michael Ilnicki, the Plaintiff, allege and re-allege each and every allegation set forth in the General Allegations and in the First, Second and Third Cause of Action of his Complaint as if set forth fully herein.

145. A covenant of good faith and fair dealing is implicit in the contracts between the Plaintiff loan borrower and his original lender WELLS FARGO BANK, NA, its lawful successors and assigns and in any purported contract between the Plaintiff/Borrower and the Servicer of the Plaintiff's home mortgage loan.

146. That 'but for' the Defendants misrepresentation, non-disclosure and their concealment from the Plaintiff/Borrower of material information regarding the broad scope of authority supposedly granted to the Trustee at the inception of the Plaintiff's home loan prior to the execution of the Deed of Trust in question, the Plaintiff would never have executed the Deed of Trust, signed the Promissory Notes, or agreed to appoint the Trustee to act on behalf of the Defendant lender to act in any other capacity.

147. Respondents made material alterations to the, promissory notes by endorsing "Without Recourse" on them after closing as noted in their prospectuses. Pursuant to § 3407 of the California Commercial Code these unauthorized signatures/ alterations to the Promissory Notes under California Commercial Code Section 3403, endorsements, conveyances, conversions and sales without disclosure, or notice to or permission from the Petitioners is illegal and voids the transaction in its entirety. (b) Respondents made representations to the Petitioners that they were loaning money, when the Pooling and Servicing Agreements and the S-3 Registration Statements, Rule 424B5 Prospectuses, RC-S Call Schedules, evidences that they did not.

1

2

3    148. Defendants and each of them further misrepresented to and concealed from the

4    Plaintiff mortgage loan borrower other material facts including but not limited to all of

5    the following: (a) that assignments of the Deed of Trust signed by the Plaintiff's original

6    lender WELLS FARGO BANK, NA, (b) that assignments of the Promissory Notes

7    signed by the Plaintiff home loan borrower, (c) that reassignments of that Deed of Trust

8    and Promissory Note, (d) that transfers of the lender's interest in the Promissory Note

9    signed by the Plaintiff/Borrower by endorsement or otherwise, (d) that Satisfactions of

10    Mortgage, (e) that notices advising the Plaintiff/Borrower that his mortgage loan had

11    been securitized and sold to one or more investors whose names would never be revealed

12    to the Plaintiff/Borrower until such time as an entity to whom his original mortgage loan

13    had been assigned appointed a person or entity such as a trustee to conduct a non-judicial

14    Trustee's Sale of my property, (f) that notice or notices that the Plaintiff's new alleged

15    lender by assignment or "investors" who may have purchased Credit Default Swaps

16    which provided insurance guarantying that the issuer of the Credit Default Swap would

17    pay the new lender the full amount of or the remaining amount due on the Plaintiff's

18    mortgage loan in the event that the Loan Servicer determined that Plaintiff/Borrower was

19    delinquent  in making monthly mortgage payments on his loan and in the event that

20    happened  that the new lender could submit a claim to the insurer issuing those credit

21    default swaps which claim once paid would satisfy the Plaintiff's mortgage loan in full

22    requiring the insurer or the new lender/investor to record a Satisfaction of the Plaintiff's

23    mortgage loan but that none of such documents would be recorded in the Office of the

24    Sonoma County Recorder with all of the above documents and information made

25    unavailable to the Plaintiff mortgage loan borrower.

26

27

28

149. Respondents used Fraudulent and Unlawful Financing and accounting techniques called Securitization or Off Balance Sheet Financing to change and alter the Debt to Equity ratio. Respondents did this by transferring and conveying ownership of the loan documents to third party individuals, entities, companies and / or trusts, which are referred to in the S-3 Registration Statements, 424B5 Prospectuses as SPV [Special Purpose Vehicle], SPE [Special Purpose Entities], REMIC [Real Estate Mortgage Invest Conduits], FASIT [Financial Asset Securities Investment Trusts], BRE [Bankruptcy Remote Entities], REIT's [Real Estate Investment Trusts], thereby altering, increasing, and accelerating the interest and principal on the original loan documents the Deeds of Trusts, Security Instruments and Promissory Notes, which directly attributed to the default of the loan.    In this type of financing technique the Assets and Liabilities or Receivables and Payables are never matched or balanced on the Respondents 2046 Balance Sheet. This allows Respondents to disguise investment contracts as mortgage loans. This is exactly what JP MORGAN CHASE and Enron were doing in the "Enron Scandal", only in reverse as they were disguising mortgage loans as investment contracts [See Civil Action H-01-3624, ENRON v MARK NEWBY U.S. DISTRICT COURT, SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION].

150. As established previously the Promissory Notes once made subject to the Deeds of Trust, etc., became non-negotiable.    Therefore the "Notes" were not Notes-in-fact, but rather Investment contracts.

"In contrast, the Eighth and District of Columbia Circuits apply the test we created in SEC v. W. J. Howey Co., 328 U.S. 293 (1946), to determine whether an instrument is an "investment contract" to the

determination whether an instrument is a "note." Under this test, a
note is a security only if it evidences "(1) an investment; (2) in a
common enterprise; (3) with a reasonable expectation of profits; (4)
to be derived from the entrepreneurial or managerial efforts of
others." 856 F.2d, at 54 (case below). Accord, Baurer v. Planning
Group, Inc., 215 U.S. App. D.C. 384, 391-393, 669 F.2d 770, 777-
779 (1981). See also Underhill v. Royal, 769 F.2d 1426, 1431 (CA9
1985) (setting forth what it terms a "risk capital" approach that is
virtually identical to the Howey test)."

151. An investment contract thus came to mean a contract or scheme for the 'placing of
capital or laying out of money in a way intended to secure income or profit  from its
employment." State v. Gopher Tire & Rubber Co., 146 Minn. 52, 56, 177 N.W. 937,
938. " this definition was uniformly adopted by state courts to a variety of situations
where individuals were led to invest money in a common enterprise with the expectation
that they would earn a profit solely through the efforts of the promoter or of some one
other themselves."  SECURITIES and EXCHANGE COMMISSION v. W.J. HOWEY
CO,. 328 U.S. 293 (1946).


152. The Uniform Residential Loan Application, The Deeds of Trust, Security
Agreements and Promissory Notes contain all four elements of an invest contract.
Petitioners did not knowingly or willingly sign an investment contract and neither did
Respondents disclose that Petitioners were entering into an investment contract or
agreement with the Respondents to make cash flow payments through a paying agent to
the beneficial interest holders or investors (Purchasers of Mortgage Backed Securities) as

outlined in the Pooling and Servicing Agreement(s), S-3 Registration Statements, 424B5

Prospectuses and RC-S Call Reports.


153. As a part of the common law duty of good faith and fair dealing, the Defendants and

each of them had a duty to disclose but negligently failed to disclose to the

Plaintiff/Borrower, facts material to the present residential mortgage loan transaction in

which the Plaintiff/Borrower was involved at all stages of that mortgage loan transaction.


154. That the Defendants all breached the covenant of good faith and fair dealing,

breached the terms and conditions of their contract with the Plaintiff home loan borrower

represented by the Deed of Trust signed by the Plaintiff home loan borrower, breached

the terms and conditions of the Loan Servicing Agreement a copy of which has never

been provided to the Plaintiff home loan borrower, and negligently or intentionally failed

to disclose to and concealed from the Plaintiff/Borrower material facts regarding my

home loan which said Defendants had an obligation to disclose.


155. In addition to the allegations of fraud and misrepresentation set forth above, on

information and belief, the Defendants' acts of misrepresentation, negligent

misrepresentation, fraudulent concealment, tortuous non-disclosure and fraud included

but were not limited to all of the following: (a) Defendants negligently or fraudulently

concealed from the Plaintiff/Borrower the fact that his home loan had been securitized,

(b) Defendants failed to notify the Plaintiff/Borrower of the material consequences the

securitization of the Plaintiff's home loan would have on the Plaintiff/Borrower, among

other things, in the event, at a later date, he attempted to seek a modification of the terms

1    and conditions of his home loan which loan modification request, once submitted, could

2    not be granted by the loan servicer without the express written consent of the assignee of

3    the Plaintiff's home loan via securitization whose name has never been revealed to the

4    Plaintiff/Borrower, (c) when the above named Defendants negligently or intentionally

5    failed to provide the Plaintiff homeowner/ borrower with an explanation in terms he

6    could be reasonably be expected to understand as a lay-person of the convolute

7    relationships between the various trustees, beneficiaries, trustors, loan servicers,

8    nominees, investors, lenders, assignees of lenders, assignees of beneficial interests in the

9    Plaintiff's mortgage loan, loan originators, mortgage brokers, and others, involved in the

10    arcane and abstruse process of the securitizing the Plaintiff's home mortgage loan, (d)

11    when the Defendants negligently or intentionally failed and refused to provide the

12    Plaintiff/Borrower with an explanation in terms she could reasonably be expected to

13    understand of the multiple material impacts that securitization of her home loan would

14    have upon the rights and obligations of the parties under the Deed of Trust signed by

15    Plaintiff/Borrower, (e) when the Defendants negligently or intentionally failed to disclose

16    to and concealed from the Plaintiff information regarding  (1) the name and address of

17    the "holder" or the successor holder of the Promissory Note signed by the

18    Plaintiff/Borrower at the time the Plaintiff allegedly  became delinquent in the payment

19    of amounts due under that Note, and at the time when the loan servicer purported to

20    appoint the Trustee to enforce the instrument pursuant to UCC and Uniform Commercial

21    Code Section 3-309(A), (2) the name and address of a non-holder in possession of the

22    Promissory Note with purported authority to enforce the instrument under UCC and

23    California Commercial Code Section 3-309(A), (3) the name and address of a person not

24    in possession of the instrument with purported authority to enforce the instrument under

25    UCC and Uniform Commercial Code Section 3-309(A), (f) when the Defendants named

26

27

28

above negligently or intentionally failed and refused to provide the Plaintiff/Borrower

with a copy of the Loan Servicing Agreement and the Master Loan Servicing Agreement

between the Defendant loan servicer and the Plaintiff's original lender or between the

loan servicer and the assignee of record of the Plaintiff's original lender, (g) when the

Defendants negligently or intentionally failed and refused to disclose to the

Plaintiff/Borrower that the Mortgages he signed naming the Plaintiff as "borrower" and

naming WELLS FARGO BANK, N.A. as my original lender had been assigned to a third

party whose name and address the Defendants had a duty to disclose to the

Plaintiff/Borrower but negligently or intentionally failed and refused to disclose to the

Plaintiff/Borrower along with the date of that purported assignment of the lender's

interest in those mortgages, (h) when the Defendants negligently or intentionally failed

and refused to notify the Plaintiff/Borrower that the assignment of the Mortgages signed

by the Plaintiff/Borrower to a new lender whose name was never disclosed to the

Plaintiff/Borrower would NOT be disclosed to the Plaintiff/borrower (i) when the

Defendants negligently or intentionally failed and refused to disclose to the

Plaintiff/Borrower the existence of or any information about or concerning the Pooling &

Servicing Agreement dictating the rights and obligations of the parties to that Pooling and

Servicing Agreement including, among other things, the types of loans in the pool of

which the Plaintiff's home mortgage loan forms a part, and the relationships among and

between the various parties involved in the pool; (j) when the Defendants  negligently or

intentionally failed to disclose to the Plaintiff loan borrower how the Pooling and

Servicing Agreement to which the Plaintiff's loan servicer was a party might affect the

servicing of Plaintiff's home  mortgage loan and the Plaintiff's right to apply for and

obtain a modification of my home loan, (k) when the Defendants negligently or

intentionally failed and refused to disclose to the Plaintiff details concerning the

relationship among and between the Plaintiff/Borrower, his original lender, the purported

assignee of the Plaintiff's mortgage loan whose name has never been disclosed to the

Plaintiff, and the Loan Servicer, (l) when Defendants negligently or intentionally failed

and refused to disclose to the Plaintiff the name and address of the investor or investors

who purchased a bond or certificate in which the Plaintiff's mortgage loan is apparently

included, and details regarding how the existence of that Pooling & Servicing Agreement

might affect the Plaintiff's ability to negotiate with a person or entity authorized to grant

a modification of the Plaintiff's home loan, in the event that the Plaintiff sought such a

modification.

156. On information and belief, the Defendants also engaged in the following additional

acts of negligent misrepresentation and fraudulent concealment when they negligently or

intentionally failed to disclose to the Plaintiff/Borrower (a) material facts regarding the

relationship among and between the Plaintiff's original mortgage lender and the

purported assignee of his home loan whose name has never been disclosed to the Plaintiff

including, among other things, what consideration, compensation or payment, if any,

WELLS FARGO BANK, NA  received from the transferee/assignee of the Plaintiff's

home loan in consideration for the transfer or the assignment of WELLS FARGO BANK,

NA 's interest in the Mortgages signed by the Plaintiff/Borrower, (b) the name and

address of the loan servicer, if any, during the time period when the Plaintiff/Borrower

was still making monthly mortgage payments to WELLS FARGO BANK, NA, prior to

any assignment of the Mortgages and Promissory Notes he signed to a third-party , (c)

details regarding the authority, if any, the loan servicer had to modify Plaintiff's home

loan without the prior express written consent of the assignee of Plaintiff's home loan,

(d) the name and address of the current "custodian" of the original of the Promissory

Note signed by the Plaintiff/Borrower with the alleged right to enforce the instrument at the time the Trustee's Sale takes place, (e) the name and address of the "holder" of the Promissory Notes identified in the Mortgage with the right to enforce the instrument on the date the Trustee's Sale will take place, (6) the name and address of the person or persons who have endorsed or negotiated the Promissory Notes along with the date the Promissory Note was endorsed or negotiated and entered into the stream of commerce, (f) whether that Promissory Note has ever been allegedly lost, stolen, misplaced, destroyed, or shredded and, if so whether a substitute note has ever been created which the Defendants or any of them now seek to enforce, and (g) whether the Promissory Note has been paid in whole or in part or otherwise satisfied, and, if so, the date when that Note was paid or satisfied and the name of the person or entity who paid or satisfied the Note, along with the date any Satisfaction or Release of the Promissory Note or the Deed of Trust on the property was recorded.

157. That pursuant to UCC and Uniform Commercial Code Section 3-301, UCC and Uniform Commercial Code Section 3-304 and UCC and Uniform Commercial Code Section 3-309, unless Defendant seeking to enforce the Note is the holder of the instrument, or if a non-holder in possession of the instrument has the rights of a holder, or if a person not in possession of the instrument who is a person entitled to enforce the instrument, none of said Defendants were entitled to enforce the instrument or to conduct or to authorize the trustee to conduct the Trustee's Sale of the Plaintiff's property.

158. That, the Plaintiff/Borrower has never knowingly authorized his original mortgage lender or its assignee to securitize the note.

159. That the Mortgage backed Security is not a signatory on the Deed of Trust or note and had no right, title or interest in the subject property and therefore had no right or entitlement to commission any person or entity, including the trustee, to conduct a non-judicial foreclosure sale/Trustee's Sale of the Plaintiff's property.

160. That to the extent that the Trustee for the Mortgage Backed Security claims to be acting solely as a nominee for the Defendant Lender or for that Lender's successors and assigns or as the beneficiary under the Deed of Trust signed by the Plaintiff/Borrower, any such claims are unenforceable, void and of no force and effect since any contract pursuant to which the Mortgage Backed Security purports to be acting in any of those capacities violates public policy, lacks mutuality of obligation, is both procedurally and substantively unconscionable and constitutes an unenforceable contract of adhesion for all of the reasons set forth above.

161. That Plaintiff has been damaged in an amount to be proven at time of trial by reason of the fact that the Plaintiff's original lender, its assignee whose name is unknown to the Plaintiff, the Loan Servicer, and the Defendants are about to conduct a Trustee's Sale of the Plaintiff's property without authority to do so, without a showing that any of the above named Defendants were in fact the holder of the Promissory Note with the right to enforce the Note, without a showing that any of the Defendants although not the holder in possession of the instrument had the rights of a holder and without a showing that a person not in possession of the instrument was entitled to enforce the instrument, and without first producing the original of the Promissory Note signed by Plaintiff/Borrower or otherwise explaining its absence with admissible evidence.

162. *As a result, the Defendants engaged in fraudulent concealment and misrepresentation, by concealing the identity of the new beneficiary in violation of the above-cited law.*

163. That the Plaintiff/Borrower has also been damaged in an amount to be proven at trial as a result of the above named Defendants' negligent or intentional failure to disclose to the Plaintiff/Borrower the fact that the Loan Servicer has no authority from the Lender or from the assignee of that Lender to consent to any modification of the Plaintiff's home loan despite the fact that the Plaintiff home loan borrower negotiated unsuccessfully with the Loan Servicer in an effort to obtain a modification of my home loan.

164. That the failure of the above named Defendants to produce the original of that Promissory Note raises the possibility that another person, entity or financial institution may have already purchased that Note giving that purchaser a continuing right to collect on the same debt despite the sale of the subject property at a non-judicial Trustee's Sale thereby clouding title to the Plaintiff's property and potentially exposing the Plaintiff home loan borrower to additional financial risk.

165. That the above named Defendants' failure to produce the original of that Promissory Note also raises the specter that if that Note has been lost, is missing, has been stolen, or has been destroyed or shredded, the Defendants cannot lawfully enforce the security provided by that Note and are not the Real Parties in Interest under Rule 17, Ca. R. Civ. Proc. with power to enforce the Note or the Deed of Trust securing payment of said Note. *Furthermore, the Defendants are poised to hold a foreclosure auction in violation of the Seventh Amendment to the US Constitution and the Due Process Clause of the Fifth and*

1    *Fourteenth Amendment, and California Civil Code Section 2924, requiring that the sale*

2    *or transfer must be preceded by a court order from a court of record, thereby*

3    *misrepresenting themselves as lawfully exercising the power of sale.*

4

5    166. That since the name of the assignee of the Defendant original lender's interest in that

6    home loan has not been disclosed to the Plaintiff/Borrower, that unnamed assignee, the

7    Defendant Loan Servicer, and the trustee have no authority to enforce the security at any

8    non-judicial Trustee's Sale of the Deed of Trust signed by the Plaintiff/Borrower.

9

10

11    167. That the Plaintiff has been damaged by the numerous acts of negligent or intentional

12    misrepresentation, concealment of material facts from the Plaintiff regarding my home

13    loan which the Defendants had a duty to disclose and reveal to the Plaintiff/Borrower

14    entitling me to an award of consequential damages in an amount to be proven at time of

15    trial, but in any event, in an amount above the maximum arbitration limits of the court.

16

17    168. That, on information and belief, the Defendants' acts of negligent misrepresentation,

18    fraudulent concealment and fraud was done with an "evil mind" entitling the Plaintiff to

19    an award of punitive damages in an amount to be proven at time of trial.

20

21

22    WHEREFORE Plaintiff prays for Judgment in his favor and against the

23    Defendants and each of them as follows:

24    For an award of compensatory damages in an amount to be proven at time of trial

25    in favor of the Plaintiff and against the Defendants WELLS FARGO BANK, NA,

26    its Assignee whose name is unknown to the Plaintiff, the loan servicer of the

27

28

1    Plaintiff's home loan, the trustee in an amount to be proven at time of trial, but in

2    any event in an amount above the arbitration limits of the court;

3    For punitive damages in an amount to be proven at time of trial;

4    For the Declaratory relief and an order of cease and desist prayed for in the

5    General Allegations of Plaintiff's Complaint;

6    For Plaintiff's costs of suit incurred herein;

7
     For an award of Plaintiff's reasonable attorney's fees pursuant to UCC and
8
     For a trial by jury; and
9
     For prejudgment and post-judgment interest on any damage award at the
10
     maximum rate allowed by law; and
11
12    For such other and further relief as the Court may deem just and proper in the

13    premises.

14

15                              ADDITIONAL RELIEF REQUESTED

16

17
     169. **One.** For abatement of any all past, current and future claims of any right, title or
18
     interest in the property, abatement of demands for mortgage payments, current past and
19
     future, discharge of any current or past demands for payment and I ask that the
20
     Defendants be ordered to remove the property described in **Exhibit A** from any list of
21
     assets on their books, and remove any records of this fraudulent debt with credit reporting
22
     agencies. I further ask that the ACTIONS taken by the defendants to place the property
23
     for sale to the public in an unlawful foreclosure proceeding or trustee sale, in violation of
24
     the due process provisions of the Fifth and Fourteenth Amendments to the US
25
26    Constitution, and California common law be abated and reversed and that they cease and

27

28

                              Page 92

desist their actions and activities in pursuance thereof. I also ask for a court order compelling the Defendants to give up any current attempt to take possession and occupancy of the subject property and that the Defendant WELLS FARGO BANK, NA be compelled to reconvey title and issue a document stating that the debt is satisfied.

170. **Two.** For a declaratory judgment that because the above described property is held in alloidum by me, Michael J. Ilnicki, and WELLS FARGO BANK, NA's principal, the undisclosed third party note buyer, has never had the right of subrogation, that Declaratory judgment be issued that no superior title exists by anyone, including the Defendants, and each of them, and that the Defendants have no security interest, right, title or interest or lien in said private allodial property, the Defendants and each of them must be found to be without any lawful claim against my private allodial property, and be compelled to disclaim any right, title or interest in the subject property.

171. **Three.** For an order of Cease and Desist, ordering the Defendants and their agents, including any unregistered foreign agents, to cease and desist any further actions to sell the property subsequent to the fraudulent foreclose on this alleged debt, because of the failure of consideration and because of the lack of the right of subrogation, and therefore, the lack of any standing to sue for foreclosure or for unlawful detainer by the Defendants.

172. In addition, I ask for a court order of Cease and Desist ordering the Sheriff in Sonoma County to refrain from enforcing any and all actions for eviction or foreclosure, taken by these Defendants, or their agents and assigns, because The Mortgage backed Security (or the Undisclosed Third Party Note Buyer) does not have the right of

subrogation as a stranger to the transaction. I ask that the order of cease and desist,

command THE SONOMA COUNTY SUPERIOR COURT to refrain from taking any

actions whatsoever to order an eviction of me from the subject property, until the time

that this matter is settled and that all appeals have run their course.

173. I, Michael J. Ilnicki, the Plaintiff in this matter, demand punitive damages from the

defendant WELLS FARGO BANK, NA in the amount of $ 80,000.00, SILVER SPECIE

sum certain payable in silver one ounce coins minted by the United States Treasury. I ask

for no monetary damages from The SONOMA COUNTY RECORDER.

174. I, Michael J. Ilnicki, the Plaintiff in this matter, and the aggrieved, injured party

demand cost for this suit.

175. Leave to amend the complaint pursuant to Federal Rules of Civil Procedure § 15(a)

once discovery is completed and the defendants have raised the usual FRCP 12(b)(6)

objections and the usual avalanche of procedural gimmicks.

176. An order from the court explaining where the complaint is deficient and how to correct it.

177. Such other relief as the court deems just, proper and equitable.

Dated: The _____ day of the _____ month

in the year of our Lord two -thousand and ten.

Page 94

Pro Hac Vice

_____

Michael J. Ilnicki

## Verification

  I have read the *VERIFIED COMPLAINT FOR QUIET TITLE AND AN*

*ORDER OF CEASE AND DESIST* and know the contents thereof to be true; and the same is

true of my own knowledge, except to the matters which are therein stated on my information

and belief, and as to those matters I believe them to be true. The foregoing is true, correct,

complete and not misleading.

Sealed by the voluntary act of My own hand on this_____day of

the _____ month, in the Year of our Lord, two thousand and ten, in the

fourth century of the Independence of America.


_____

Michael J. Ilnicki

1

2                         **LIST OF EXHIBITS**

3

4      1. EXHIBITS A          DEED TO THE PROPERTY

5      2. EXHIBIT B           COPIES OF NOTICES SENT BY DEFENDANTS

6
       3. EXHIBIT C           CERTIFIED COPY OF MONEY FACTS, 1964.
7
                              (Published by The House Banking and Currency
8
                              Committee)
9
       4. EXHIBIT D           A COPY OF A NOTE ENDORSED BY COUNTRYWIDE
10
       4. EXHIBIT E           CERTIFIED COPY OF MODERN MONEY
11
                              MECHANICS (SELECTED PAGES)
12
                              (Published by the Federal Reserve Bank of Chicago)
13
       5. EXHIBIT F           COPY OF A PROMISSORY NOTE WITH AN
14
                              ENDORSEMENT STAMP (Last Page)
15
       6. EXHIBIT G           CERTIFIED COPY OF THE NOTE FOR THE SUBJECT
16
                              PROPERTY FROM WELLS FARGO BANK, NA
17
       7. EXHIBIT H           REQUEST FOR DEBT VALIDATION
18
       7. EXHIBIT I           DECLARATION OF LAND GRANT
19
       8. EXHIBIT J           COMMON LAW LIEN
20

21

22

23

24

25

26

27

28

WELLS FARGO BANK, NA,
WELLS FARGO ASSET SECURITIES
CORPORATION, MORTGAGE ASSET
BACKED PASS-THROUGH
CERTIFICATES SERIES 2007-AR8