UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,      :    08-13555 (JMP)
                                              :
                    Debtors.                  :    (Jointly Administered)
                                              :
                                              :
-------------------------------------------------------------x

## AFFIDAVIT AND DISCLOSURE STATEMENT OF ROLF LINDSAY,

## ON BEHALF OF WALKERS

GRAND CAYMAN                    )
                                ) ss:
COUNTY OF THE CAYMAN ISLANDS    )

Rolf Lindsay, being duly sworn, upon his oath, deposes and says:

1. I am a Partner of Walkers, located at Walker House, 87 Mary Street, George Town, Grand Cayman KY1-9001, Cayman Islands (the "Firm").

2. Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), have requested that the Firm provide legal services to the Debtors as described in question 4 of the retention questionnaire attached hereto, and the Firm has consented to provide such services.

3. The Firm may have performed services in the past and may perform services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties in interest in the Debtors' chapter 11 cases. As part of its customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be claimants or employees of the Debtors, or other parties in interest in these

chapter 11 cases. The Firm does not perform services for any such person in connection with these chapter 11 cases with respect to those matters that come within the scope of the Firm's representation to the Debtors. The Firm currently represents creditors of the Debtors on matters which may involve structuring of those creditors' businesses due to the Debtors Chapter 11 cases and the firm represents a party which is on the Lehman Brothers International Europe UK creditors' committee. However, none of the above mentioned representations are adverse to the estate with respect to the matters for which the Firm is to be employed.

4. Neither I, nor any principal of, or professional employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals and regular employees of the Firm.

5. Neither I, nor any principal of, or professional employed by the Firm, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates.

6. The Debtors owe the Firm $453,392.33 for prepetition services.

7. The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Affidavit.

By: _____

Subscribed and sworn to before me
this 26 day of March 2010

_____
Notary Public

NY2:\1926908\02\15@T802!.DOC\58399.0003
2783498.3  L0632.90216

2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                                          :
In re                                                     :   Chapter 11 Case No.
                                                          :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                  :   08-13555 (JMP)
                                                          :
                      Debtors.                            :   (Jointly Administered)
                                                          :
                                                          :
-----------------------------------------------------------x

## RETENTION QUESTIONNAIRE

TO BE COMPLETED BY PROFESSIONALS EMPLOYED BY LEHMAN BROTHERS HOLDINGS INC. OR ANY OF ITS DEBTOR AFFILIATES (collectively, the "Debtors")

DO NOT FILE THIS QUESTIONNAIRE WITH THE COURT.
RETURN IT FOR FILING BY THE DEBTORS, TO:

    Weil, Gotshal & Manges LLP
    767 Fifth Avenue
    New York, New York 10153
    Attn:   Jennifer Sapp
             Christopher Stauble

All questions **must** be answered. Please use "none," "not applicable," or "N/A," as appropriate. If more space is needed, please complete on a separate page and attach.

1. Name and address of firm:

   **Walkers**
   **87 Mary Street, George Town**
   **Grand Cayman KY1-9001**
   **Cayman Islands**

2. Date of retention:   **15 September 2008 in respect of matters following**

   **the bankruptcy of Lehman Brothers Holdings Inc. Walkers have**

   **been retained as Cayman Islands legal counsel to the Debtors in**

respect of numerous matters prior to the bankruptcy. Walkers have acted in such capacity for more than ten years.

3. Type of services provided (accounting, legal, etc.):

Legal

4. Brief description of services to be provided:

Advice to the Debtors with regard to (i) ongoing general matters pertaining to the management and operation of investment funds formed prior to the bankruptcy of Lehman Brothers and (ii) specific advice relating to the reorganization of certain investment funds formed prior to the sale of the Global Infrastructure Fund and Global Mezzanine Fund businesses to a consortium led by Neuberger and Berman, (iii) the establishment of Lehman Brothers G+ Commodities Fund, Ltd; (iv) the registration of Lehman Brothers Co-Investment Associates Cayman L.P. as a Cayman Islands exempted limited partnership; (v) the dissolution of Lehman Brothers Merchant Banking Partners Cayman Holdings IV L.P.; (vi) Cayman Islands advice in relation to the formation and launch of the Lehman Brothers Global Mezzanine Fund; (vii) the compilation of corporate entities believed to be controlled by Lehman Brothers Holdings Inc. or its affiliated debtors; (viii) a claim made in the Grand Court of the Cayman Islands by Lehman Brothers Commercial Paper Inc in respect of the repayment by Anthracite Balanced Company (36) Limited of amounts owing under a Class B Credit Facility dated 21

April 2005; (ix) assisting Lehman Brothers Holdings Inc. and its affiliated debtors with corporate and litigation matters involving the application of Cayman Islands law and (x) specific advice with regard to the actual disposal of such businesses to the consortium.

5. Arrangements for compensation (hourly, contingent, etc.)

On a fair and reasonable basis in accordance with the firm's terms of engagement, a copy of which is attached as Appendix 1, by reference to such matters as the hours worked, the complexity, value and importance and urgency of the matter. Notwithstanding anything contained in Appendix 1 to the contrary, Walkers agrees to (i) submit to the exclusive jurisdiction of the United States Bankruptcy Court for the Southern District of New York (the "Court") with respect to any proceeding or litigation arising out of or connected with the engagement and (ii) submit all invoices or other payment requests, and to be paid, in accordance with the requirements of chapter 11 of title 11 of the United States Code and any relevant order(s) entered by the Court in these cases.

(a)  Average hourly rate (if applicable):

**Partner: US$750**

**Associate: US$575**

(b)  Estimated average monthly compensation based on prepetition retention (if firm was employed prepetition):

**US$15,000 per month**

5

       (i) **2007 Annual Billings for ordinary course transactions of the Debtor were $111,760.16**

       (ii) **2008 Annual Billings for ordinary course transactions of the Debtor were $113,588.82**

6. Prepetition claims against the Debtors held by the firm:

    Amount of claim:    **US$90,655.40**

    Date claim arose:    **26 September 2005 to 15 September 2008**

    Source of Claim:    **Legal work undertaken for Lehman Brothers Holdings Inc.**

7. Prepetition claims against the Debtors held individually by any member, associate, or professional employee of the firm:

    Name: **None**

    Status: **N/A**

    Amount of Claim: **N/A**

    Date claim arose: **N/A**

    Source of claim: **N/A**

8. Stock of the Debtors currently held by the firm:

    Kind of shares: **None**

    No. of shares: **N/A**

9. Stock of the Debtors currently held individually by any member, associate, or professional employee of the firm:

    Name: **None**

    Status: **N/A**

    Kind of shares: **N/A**

    No. of shares: **N/A**

10. Disclose the nature and provide a brief description of any interest adverse to the Debtors or to their estates with respect to the matters on which the above-named firm is to be employed.

    **Walkers represents creditors of the Debtors on which may involve restructuring those creditors' business due to the Debtors' Chapter 11 cases and the firm represents a party that is a member of the Lehman Brothers International Europe UK creditors committee.**

11. Name of individual completing this form:

    **Rolf Lindsay**

# Appendix 1

## Walkers Terms and Conditions



**TERMS OF ENGAGEMENT**

Walkers (the "**Firm**") provides all necessary advice and other professional services as Cayman Islands, British Virgin Islands, Jersey and Dubai International Financial Centre lawyers. We are not able to advise on any other relevant laws or provide services other than as Cayman Islands, British Virgin Islands, Jersey or Dubai International Financial Centre lawyers.

This document sets out the terms and conditions upon which the Firm will act for you (the "**Terms**") unless otherwise agreed and varied in writing by a partner of the Firm. If there is any conflict between any engagement letter and these Terms, the engagement letter will prevail.

**Our Responsibilities**

1.  We will provide our legal services with reasonable skill and care and in accordance with the professional standards expected of us and in a timely manner.

2.  The nature, extent and content of any legal services we provide will be determined by the specific nature, scope and limitations of our engagement with you ("the **Engagement**") and your instructions, as well as the amount and accuracy of information provided to us and the timescale within which you require our services to be provided.

3.  If at your request, we provide our advice or other legal services in an abbreviated format or timescale, you acknowledge that you will not receive all the information you would have done had we provided a full written report or had more time in which to carry out the work.

4.  If general advice is provided, the applicability of this will depend on the particular circumstances in which it is to be used by you (of which we might not be aware) and should be viewed accordingly. In relation to any particular transaction, specific advice on that transaction should always be sought and all material information provided to us.

5.  We rely upon the accuracy of information provided to us by you, or by others on your behalf. We will not normally seek to verify or check any information provided to us by you and you acknowledge that we shall be entitled to rely on such information when carrying out your instructions.

6.  The advice or other legal service provided by the Firm is to be used for the purposes of the matter for which we were engaged and we are not responsible for its use for a different purpose or in a different context.

7.  Unless you inform us to the contrary in writing, we may correspond by means of the Internet or other electronic media. Although we will take reasonable steps to safeguard the security and confidentiality of the information transmitted, you acknowledge that we cannot guarantee its security and confidentiality. It is our policy to check all correspondence with anti-virus software; however, we cannot guarantee that email transmissions will be free from viruses.

**Your Responsibilities**

8. It is your responsibility in relation to the Engagement to promptly provide us with complete and accurate instructions and all necessary information and to carry out any other reasonable requests made to you or others under your control. We will not be responsible for any direct or indirect consequences which may arise from any delay or failure by you to do so and these may also result in additional fees for which we may raise invoices.

9. You remain responsible for any commercial decisions that you make, and due regard must be given to the restrictions on the scope of our work and other factors, commercial and otherwise, of which you and your other advisers are, or should be, aware by means other than our work.

**Responsibility for the work**

10. A partner will have overall responsibility for the Engagement and may be contacted at any time in relation to it or any aspect of our services.

11. We will try to avoid changing the legal team that handles your work but if this cannot be avoided, we will under normal circumstances inform you promptly who will be handling the matter and why the change was necessary. Similarly we will under normal circumstances inform you promptly if one or more additional lawyers are to be utilised to deal with your matter.

12. It is our desire to provide you with a high quality service to meet your needs. If at any time you believe that our service to you could be improved, or if you are dissatisfied with any aspect of our services, please raise the matter immediately with the relevant partner. If, for any reason, you would prefer to discuss the matter with someone else, please contact the Managing Partner in our Cayman Islands office at: Walkers House, George Town, Grand Cayman, KY1-9001, Cayman Islands. In this way we are able to ensure that your concerns are dealt with carefully and promptly.

**Professional charges**

13. We will calculate our professional charges based on what we regard as being fair and reasonable having regard to all the circumstances of the Engagement and, in particular, to the complexity of the matter, the difficultly or novelty of the questions raised, the skill, labour, specialised knowledge and responsibility involved, the time spent on the matter, the number and importance of the documents prepared or perused, without regard to length, the place where and the circumstances in which the matter or any part thereof is transacted, the amount or value of any money or property involved, the urgency of the matter and its importance to you.

14. It is not our policy to provide a breakdown of the time spent by each attorney on the Engagement and we reserve the right to decline a request for a breakdown, unless required by local law, where the matter has been billed on a fair and reasonable basis.

15. The Firm does not provide any services on a contingency basis. We appreciate that from time to time, and for a variety of reasons, clients elect to discontinue a particular transaction or matter. In these circumstances, unless expressly agreed otherwise, our fees remain payable in full for all the work that has been provided up to that date and no discount will be offered on the basis of the premature closing of a transaction or other matter.

**Progressive billing**

16. The Firm reserves the right to remit invoices progressively or on an interim basis. These progressive or interim invoices may not include some disbursements falling within the period of the invoice but which were notified to us late. In these circumstances, such costs will be held over to later invoices. Payment of each invoice is due within 30 days of the date appearing on the face of the invoice.

17. We reserve the right to ask you to provide us with funds in advance on account of our professional fees and disbursements from time to time. Any retainer will be applied in whole or in part to our first invoice (and, to the extent that there is a surplus, to future invoices). We may request further payments on account for fees and disbursements to be incurred as the matter progresses. We will account to you fully for the initial payment and any future payments on account. If such funds are not provided promptly, we reserve the right not to carry out further work in the matter until funds are received. In the event that our fees and disbursements in any matter are less than the initial retainer, we will reimburse you with any balance held by us. It is important however that you understand that the total fees may be greater than any advance payments.

18. Interest is not payable by us to you on payments made by you on account of fees and disbursements, unless required by local law.

19. If a payment to the Firm made in connection with the Engagement will be or has been subject to tax, you shall pay the Firm on demand the amount (after taking into account any tax payable in respect of the amount and treating for these purposes as payable any tax that would be payable but for a relief, clearance, deduction or credit) that will ensure that the Firm receives and retains a net sum equal to the sum it would have received had the payment not been subject to tax.

20. It is understood between us that any failure by you to observe these terms of payment is a serious breach and will entitle the Firm to terminate the Engagement and discharge the Firm from any obligation to continue working for you either permanently or until payment had been effected.

**External disbursements**

21. We will bill you for external disbursements such as court fees, incorporation fees, fees for reports, barristers' fees, filing fees, courier fees, travel costs and other expenses incurred by us on your behalf, as soon as they are incurred and irrespective of whether at that time they had actually been paid by us. Business class airfares will be charged for all international travel, unless otherwise agreed prior to the commencement of the travel. Interest is not payable to you by us in respect of any such disbursements incurred but not actually paid by us from time to time.

**Office disbursements**

22. You will be charged office disbursements generated by the Firm, either on a provision basis or as a fixed percentage of the total fees up to a maximum of 3%. These expenses include telephone and facsimile charges, photocopying and printing charges, stationery, compliance charges and other miscellaneous costs. These charges and costs may include overhead charges. We also reserve the right to charge for secretarial overtime costs where necessary to deal with your matter timeously.

**Interest**

23. In the event that for any reason any invoice remains unpaid for a period of 60 days after the date appearing on its face, we will be entitled to charge you, in the discretion of the Firm, interest at a specified rate on any amount outstanding until payment in full is received. If no rate is specified, interest will be charged at 5% per annum.

**File lien**

24. If any payment is not made within 30 days after the due date, in addition to any other rights or remedies, we reserve the right to exercise a lien over your files and documents. This means that no files or documents will be released until all amounts owing are paid.

### The opposing party's fees and disbursements in litigation

25. In litigation, the general principle is that the losing party will be required to pay the successful party's legal fees and disbursements (known in this context as costs). This is not inevitable and the court has a wide discretion to take various factors into account when deciding the issue of costs and the extent of any award. The precise amount of costs payable is subject to assessment by a court officer based on the relevant rules of court. Where the court does make such an award it will only cover a proportion of actual costs (usually about 60%).

26. The consequence of this is that if you are involved in litigation and are unsuccessful you may be ordered to pay the successful party's costs in which case you will not only be responsible in any event for the payment of all of our fees and disbursements but also a proportion of the successful party's costs. If you are successful in the litigation you will, of course, still be responsible for payment in full of all of our fees and disbursements but if the court makes an award of costs in your favour you may subsequently be able to recover a proportion of what you have paid to us by way of fees and disbursements from the unsuccessful party.

### Commissions

27. In certain circumstances, commission or other benefits may be payable to us as a result of the Engagement. You consent to such commission or other benefit being retained by us without our being liable to account to you for such amounts. We will not be liable to pay to you any such commission paid to us but we may take it into account in determining our fee.

### Termination

28. You may terminate our services at any time by notice in writing. The Firm reserves the right to cease acting for you at any time including, but not limited to, when:

    (a) you have not complied with these Terms or any other terms agreed in writing; or

    (b) we have not received adequate instructions from you within a reasonable time of request, or we perceive in our discretion that the necessary relationship of mutual trust and confidence required for a workable lawyer/client relationship no longer exists; or

    (c) we are unable to complete our standard due diligence process which we follow as part of our compliance procedures; or

    (d) it becomes required by law or by our professional rules or ethics for us to cease to act for you; or

    (e) any invoice has not been paid within 90 days of being rendered or we consider that payment of our fees and disbursements may be at risk.

29. If you or we decide that we will stop acting for you, you will remain liable to pay us our professional fees for services rendered and disbursements incurred by us up to the date of termination of our retainer.

### Destruction, archival and retrieval of files

30. Upon completion of instructions the Firm agrees to store all files either in physical form or electronically (save for superfluous copies of papers and drafts which may be destroyed) in accordance with local laws.

31. We will not destroy documents you ask us to deposit in safe custody. There will be a charge for such special storage.

32. We do not normally make a charge for retrieving stored papers or deeds in response to continuing or new instructions to act for you. However, we reserve the right to make a charge relative to the time that we spend on reading or copying papers, correspondence or other work necessary to comply with the instructions.

**Documents**

33. We retain all copyright and other intellectual property rights in everything developed by us both before and during the Engagement including all documents, all information held on disk or in any information retrieval system, systems, methodologies, software and know-how save for share certificates and original documents given to us by you and expressly held on your behalf.

**Exclusion of Liability**

34. We will provide our legal services to you with reasonable skill and care and acknowledge that we will be liable to you for losses, damages, costs or expenses ("**losses**") which are determined to have been caused by our negligence, breach of contract or wilful default, subject to the following provisions:

    (a) we will not be liable if such losses are due to the provision of false, misleading or incomplete information or documents or due to the acts or omissions of any person other than the Firm; or

    (b) where you suffer any losses for which we are jointly and severally liable with any third party or third parties, the extent to which such losses shall be recoverable by you from us, as opposed to the third party, shall be limited so as to be in proportion to our contribution to the overall fault for such losses, as agreed between all of the parties, or in the absence of agreement as finally determined by the court.

35. You agree not to bring a claim against any of our employees personally. This clause shall not exclude or limit the liability of the Firm or its partners for the acts or omissions of its employees performed under the Firm's supervision or within the scope of the employee's contract of employment with the Firm. The Firm enters into this clause for itself and as agent and trustee for each employee and the Firm has an absolute discretion as to the enforcement of this clause on behalf of its employees.

**Confidentiality**

36. We confirm that, except as may be required by law, a court of competent jurisdiction, or other governmental or regulatory authorities, we shall at all times keep confidential any confidential information you give to us and you agree that it will be sufficient compliance with our duty of confidence for us to take such steps as we in good faith think fit to preserve confidential information from misuse both during and after termination of the Engagement.

37. Any advice we provide to you during the Engagement is given in confidence solely for you to rely upon and solely for the purpose for which we were retained by you. We are not responsible to any third party who seeks to rely upon any such advice without our prior written consent having been given to such third party.

**Publicity**

38. Following the completion of a successful engagement or transaction, and subject to our obligation to you as set out in clauses 36 and 37 above, you agree that we may publicise or advertise our involvement, using such media as we deem appropriate. We shall use our reasonable endeavours to inform you of any publicity or advertisement in advance of its release.

### Conflicts of Interest

39. We provide a wide range of services for a large number of clients and may be in a position where we are providing services to companies and organisations which you might regard as giving rise to a conflict of interest. Whilst we have established procedures to identify such situations, we cannot be certain that we shall identify all of those which exist or may develop, in part because it is difficult for us to anticipate what you might perceive to be a conflict. We request that you notify us of any potential conflict affecting the Engagement of which you are, or become, aware. Where the above circumstances are identified and we believe that your interests and the interests of any other client with conflicting interests can be properly safeguarded by the implementation of appropriate procedures, we propose to discuss and agree with you the arrangements that we shall put in place to preserve the confidentiality and to ensure the advice and opinions which you receive from us are independent. Just as we shall not use confidential information relating to you for the advantage of a third party, we shall not use confidential information obtained from any other party for your advantage.

    Before taking on a new client or a new matter for an existing client it will often be appropriate and desirable for us to carry out a conflicts search to ensure that we are not already acting for a client in the same or a related matter who has or may have an interest in the matter which conflicts or may conflict with the interests of the potential new client. The information which may be provided by us internally concerning such potential new client or new matter in carrying out such a conflicts search is confidential to the potential new client and we are required to treat it as such. If such information should happen to relate to you or your matter you accept and agree that we have no duty in such a situation to disclose such information to you and that any duty of disclosure of material information to you which we may otherwise have does not arise in the context of such a conflicts search.

### Trigger dates

40. Following completion of the Engagement, the Firm is not obliged to inform you of any trigger date (being a date by which you are required to do or refrain from doing an act to protect an interest or legal right). Our practice of archiving or storing files and documents in accordance with local law does not impose any continuing obligation on the Firm in respect of these files or documents, other than in relation to their archival or storage.

### Notices

41. Any notice required to be given shall be in writing and shall be served by being posted by pre-paid mail or delivered by commercial courier service or forwarded by fax transmission to the last known address or fax number of the relevant party.

### Agreement

42. Your continuing instructions will amount to your acceptance of these Terms, and the appointment of this Firm as your agents in respect of the matter for which we are retained by you.

### Anti-Money Laundering Regulations

43. In order that we can comply with anti-money laundering regulations, where applicable, you may be asked to provide certain identification and other documentation as soon as reasonably practicable, together with all requested documentation. We can accept faxed copies of the documents initially but the hard copy originals must be delivered to us.

### Governing Law

44. These Terms are governed by and construed in accordance with the laws of the Cayman Islands and each of us irrevocably submits to the exclusive jurisdiction of the courts of the Cayman Islands' to hear

and decide any suit, action or proceedings, and to settle any dispute which may arise out of or in connection with these Terms.

**General**

45. A variation of these Terms is valid only if it is in writing.

46. The failure to exercise or delay in exercising a right or remedy provided by these Terms or by law does not constitute a waiver of the right or remedy or a waiver of other rights and remedies. No single or partial exercise of a right or remedy provided in these Terms or by law prevents further exercise of the right or remedy or the exercise of another right or remedy.

47. Nothing in these Terms shall be construed as creating a partnership or joint venture of any kind between us or as constituting one of us as the agent of the other for any purpose whatsoever. Neither of us shall have the authority to bind the other or to contract in the name of or create a liability against the other in any way or for any purpose.

48. Each of the provisions contained in these Terms shall be construed as independent of every other such provision, so that if any provision of these Terms shall be determined by any court or competent authority to be illegal, invalid and/or unenforceable then such determination shall not affect any other provision of these Terms, all of which other provisions shall remain in full force and effect.