WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
In re                                                       :   Chapter 11 Case No.
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                    :   08-13555 (JMP)
                                                            :
                       Debtors.                             :   (Jointly Administered)
                                                            :
------------------------------------------------------------x

### DEBTORS' RESPONSE TO THE SUNCAL DEBTORS' JOINT OPPOSITION TO MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR AUTHORITY TO COMPROMISE CONTROVERSY IN CONNECTION WITH A REPURCHASE TRANSACTION WITH FENWAY CAPITAL, LLC AND A COMMERCIAL PAPER PROGRAM WITH FENWAY FUNDING, LLC

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Commercial Paper Inc. ("LCPI"), as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), hereby submit their response ("Response") to the *SunCal Debtors' Joint Opposition to Motion Pursuant to Bankruptcy Rule 9019 for Authority to Compromise Controversy in Connection with a Repurchase Transaction with Fenway Capital, LLC and a Commercial Paper Program with Fenway Funding, LLC* and the *Limited Joinder of Steven M. Speier, Chapter 11 Trustee in the Opposition of SunCal Debtors to Motion Pursuant to Bankruptcy Rule 9019 for*

*Authority to Compromise Controversy in Connection With a Repurchase Transaction With Fenway Capital, LLC and a Commercial Paper Program with Fenway Funding, LLC* (collectively, the "Opposition") and respectfully represent:

## INTRODUCTION

1.  The Debtors' Motion[1] simply seeks to enter into a compromise (the "Transaction") whereby LCPI will repurchase the Repo Assets (including the SunCal Loans) pursuant to the terms of the MRA, and LBHI, as the current holder of the CP Notes and the guarantor of LCPI's obligations under the MRA, will surrender the CP Notes for cancellation as payment of the repurchase price under the MRA and in satisfaction of LBHI's obligations under its guarantee. As a result, LBHI will become subrogated to the claims and other rights of Fenway under the Fenway Documents including Fenway's security interest in the Repo Assets.

2.  Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). The settlement need not result in the best possible outcome for the debtor, but must not "fall below the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505. *See also Cosoff v. Rodman (In re W.T. Grant Co.)*, 99 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). The court may also give weight to the informed judgment of the debtor that a compromise is fair and equitable. *In re Purofied Down*

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the *Motion Pursuant to Bankruptcy Rule 9019 for Authority to Compromise Controversy in Connection with a Repurchase Transaction with Fenway Capital, LLC and a Commercial Paper Program with Fenway Funding, LLC* (the "Motion").

*Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998).

3. In the Opposition, the SunCal Debtors[2] do not even address the central question in deciding the Debtors' Motion: whether the transaction is fair and equitable and falls above the lowest point in the range of reasonableness. *Drexel Burnham Lambert Group*, 134 B.R. at 505. Instead, lacking any substantive basis to challenge the Transaction, they direct a series of unsupportable allegations of bad faith at Lehman and Fenway when, in fact, it is the SunCal Debtors' own actions that reveal an ulterior motive. Specifically, the SunCal Debtors claim they have no desire to "participate in LCPI's bankruptcy case." Opposition at 1. That is a telling admission. While they may have no desire to participate directly in LCPI's bankruptcy case, they have been repeatedly ordered to do so to the extent they seek to affect the assets of LCPI's estate. It is unclear how the SunCal Debtors have failed to recognize this Court's jurisdiction over, and the applicability of the automatic stay to, the Debtors' assets, especially in light of an appellate court ruling that the automatic stay does apply to the Debtors' assets and that the SunCal Debtors must come before this Court to modify the stay. Regardless, the SunCal Debtors are currently prosecuting an appeal to the United States Court of Appeals for the Ninth Circuit in which they argue: (i) that LCPI's automatic stay does not apply to an adversary proceeding in the Central District of California to subordinate LCPI's claims against the SunCal Debtors, and (ii) that LCPI's automatic stay does not apply to an adversary proceeding in the Central District of

---

[2] As used herein, the SunCal Debtors refers to Palmdale Hills Property, LLC, SunCal Beaumont Heights, LLC, SCC/Palmdale, LLC, SunCal Johannson Ranch, LLC, SunCal Summit Valley, LLC, SunCal Emerald Meadows, LLC, SunCal Bickford Ranch, LLC, Acton Estates, LLC, Seven Brothers, LLC, SJD Partners, Ltd., SJD Development Corp., Kirby Estates, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Communities, LLC, North Orange Del Rio Land, LLC and Tesoro SF, LLC and Steven M. Speier, the duly appointed trustee for the chapter 11 estates of LB/L-SunCal Oak Valley, LLC, LB/L-SunCal Northlake, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance LLC, SunCal Oak Knoll, LLC, SunCal Marblehead, LLC, and SunCal Heartland, LLC.

California to transfer LCPI's property—namely, liens securing the debts owed to LCPI—to the SunCal Debtors' estates. Additionally, the SunCal Debtors' proposed joint chapter 11 plan of reorganization is based, in part, on the success of their attempt to equitably subordinate the claims of LCPI.

4.      In November 2008, the SunCal Debtors sought blanket relief from the automatic stay in LCPI's bankruptcy case to allow them to generally administer their chapter 11 cases. This Court denied such broad relief, but did so without prejudice so that the SunCal Debtors could refile specific stay relief requests as needed. Rather than seek relief from stay as needed, and as this Court directed them to do, the SunCal Debtors filed a series of motions and proceedings attacking the property of LCPI's estate.[3]

5.      In response, LCPI filed a motion to enforce the stay against the SunCal Debtors in this Court. At the hearing on that motion, this Court warned the SunCal Debtors that they were "in the zone of a willful violation" of LCPI's automatic stay and that if they did not "come here and seek consensual relief from stay or relief from stay with appropriate motion practice, you are at full risk as is your client. Act accordingly . . .."[4] The SunCal Debtors did not heed that

---

[3]     The SunCal Debtors filed a number of motions and claims in their own chapter 11 proceedings pending in the United States Bankruptcy Court in and for the Central District of California Santa Ana Division (the "SunCal Court") attacking property of LCPI's estate, including: (i) filing a motion for use of cash collateral, *see In re Palmdale Hills*, Case No. 08-bk-17206 [D.E. 50]; (ii) filing a motion seeking approval to sell properties securing loans made by LCPI and disallowing LCPI's credit bid rights, *see id.* [D.E. 125]; (iii) filing an adversary proceeding complaint against LCPI asserting claims for equitable subordination, recovery of fraudulent and preferential transfers, disallowance of liens and disallowance of claims, *see In re Palmdale Hills*, Case No. 09-01005 [D.E. 44] (Third Amended Complaint).

[4]     *See* January 30, 2009 Tr. at 17:1-7; 19:6-22, a copy of which is attached to the declaration of R. Roesch as Exhibit "1." Both the Ninth Circuit Bankruptcy Appellate Panel (the "Ninth Circuit BAP") and the SunCal Court (Judge Smith) have since matched this Court's clear admonition: (1) On December 15, 2009, the Ninth Circuit BAP held that the SunCal Debtors could not "prosecute an adversary proceeding, or propose a reorganization plan, seeking to equitably subordinate Lehman Commercial's claim and transfer its liens to the estate in the California bankruptcy case without first obtaining relief from the automatic stay in the New York bankruptcy case." and (2) On March 8, 2010, the SunCal Court issued an oral ruling on several motions to dismiss the SunCal Debtors' adversary proceeding complaint. The SunCal Court held that "after reviewing once again the *Palmdale* decision that the maintenance of a claim for equitable subordination or any other claims that are asserted offensively against LCPI would be in violation of the stay – of the automatic stay of LCPI as determined by the BAP in the Palmdale

warning. Instead, they have willfully violated LCPI's automatic stay by asserting and litigating equitable subordination and other claims against LCPI assuming that LCPI's automatic stay did not apply, notwithstanding this Court's prior admonitions. Forced to react to the SunCal Debtors' continuing violation and rulings the SunCal Debtors obtained as an end-run of this Court, the Ninth Circuit Bankruptcy Appellate Panel recently held that the SunCal Debtors' actions violated the automatic stay and that the stay could only be modified by this Court.

6. Now, the SunCal Debtors ask this Court to condition its approval of the Transaction on a lifting of the automatic stay. The Opposition, however, misstates the facts and mischaracterizes prior court rulings in an effort to attack the legitimacy of a Transaction that will result in substantial savings for the Debtors' Estates. The Opposition fails to challenge any of the recognized bases for a settlement pursuant to Bankruptcy Rule 9019 in the Second Circuit. Instead, the Opposition focuses on a theme that the Transaction somehow was undisclosed. While not relevant to a Bankruptcy Rule 9019 compromise, nothing could be further from the truth.

7. The SunCal Debtors have always known that, under the MRA, LCPI was required to repurchase the Repo Assets, including the SunCal Loans. Similarly, they have always known that the CP Notes, which are ultimately secured by, among other things, a pledge of Fenway Capital's interest in the SunCal Loans, are held by LBHI. Through the Transaction, the parties are performing their obligations under the MRA and restoring the property rights of LCPI and LBHI as originally contemplated by the MRA and the other Fenway Documents. For the past year, the SunCal Debtors have ignored, and in their current Opposition continue to ignore,

---

decision." March 8, 2010 Hearing Tr. at 6:13-19, a copy of which is attached to the declaration of a R. Roesch as Exhibit 12. The *Palmdale* decision is the Ninth Circuit BAP's ruling that the SunCal Debtors must seek relief from stay before this Court.

LBHI's and LCPI's substantial property rights, which are at the heart of their claims against Lehman.[5]

8.  These actions, including the filing of the instant Opposition, have forced Lehman to expend vast resources opposing the SunCal Debtors' claims and have caused the Debtors' respective Estates to incur significant (and unnecessary) costs. The SunCal Debtors have willfully, repeatedly and knowingly violated the automatic stay – and in the process, ignored two rulings issued by United States Bankruptcy Court Judges, a ruling issued by the Ninth Circuit BAP, and various letters sent by Lehman.[6] The Opposition is another attempt to obfuscate issues and facts in an effort to get a "leg up" on the Debtors and avoid repaying the billions of dollars that the SunCal Debtors borrowed and have not repaid. Ultimately, however, the issue before this Court is only whether the Transaction is fair and equitable and exceeds the lowest point in the range of reasonableness. The Debtors submit that it is, and the SunCal Debtors' Opposition does nothing to alter that conclusion. Accordingly, the Transaction should be approved by this Court.

## RESPONSE TO SUMMARY OF MATERIAL FACTS

9.  The SunCal Debtors' summary of material facts mischaracterizes certain facts and omits many others, the most significant of which is the failure to acknowledge LCPI's and LBHI's respective property rights in the Repo Assets. Compounding these omissions, the

---

[5]  The Lehman Letters (as defined below) highlight both LBHI's and LCPI's respective property interests affected by the SunCal Debtors' actions.

[6]  In the time that has passed since the Ninth Circuit BAP rendered its ruling, Lehman has sent the SunCal Debtors three letters informing them that if they want to pursue claims against LCPI, they could do so only by first coming before this Court and seeking relief from the automatic stay. *See* January 11, 2010 Letter from D. Ziehl to L. Miller, P. Couchot and W. Lobel, a copy of which is attached to the Declaration of R. Roesch as Exhibit "2"; January 27, 2010 Letter from D. Ziehl to L. Miller, P. Couchot and W. Lobel, a copy of which is attached to the Declaration of R. Roesch as Exhibit "3" at 8-9; February 24, 2010 Letter from D. Ziehl to L. Miller, P. Couchot and W. Lobel, a copy of which is attached to the Declaration of R. Roesch as Exhibit "4" at 6 (these three letters are referred to collectively as the "Lehman Letters").

SunCal Debtors mischaracterize the nature of the Transaction, raising the specter of "bad faith" without a single piece of evidence to support that allegation.

10. The most significant defect of the Opposition's "Summary of Material Facts" is its failure to acknowledge the property rights of both LCPI and LBHI that are at issue here. The SunCal Loans at issue include over $1.5 billion in outstanding principal and interest, which pursuant to the Transaction and the Bankruptcy Code, become property of LCPI's Estate immediately upon the repurchase of the Repo Assets as contemplated by the Transaction. Further, LBHI currently holds the CP Notes, which it has held since prior to the commencement of LBHI's chapter 11 case and are property of its Estate. The CP Notes are ultimately secured by a pledge of Fenway's interests in the Repo Assets, and upon consummation of the Transaction and as described further below, LBHI will become subrogated to the claims and rights of Fenway under the Fenway Documents, including Fenway's security interests in the Repo Assets. Therefore, LBHI is entitled to the full economic interest in the Repo Assets for two independent reasons – through its ownership of the CP Notes and through its security interest in the Repo Assets as subrogee of Fenway Capital. The Transaction not only makes these property interests crystal clear – resolving any doubt as to who actually "owns" the loans – but is also entirely consistent with the terms of the MRA and with LCPI's characterization and treatment of these assets from inception. Consistent with LCPI's arguments before the SunCal Court, the Lehman Examiner found that transactions like the Fenway Repo are transfers for security, and that the transfers of the Repo Assets pursuant to the Fenway Repo were recorded in Lehman's books as loan transactions.

11. Thus, the SunCal Debtors' "Summary of Material Facts" not only incorrectly identifies who "owns" the SunCal Loans (including the amounts of the loans that are property of

LCPI and/or LBHI), but also ignores the fact that the very Transaction they are objecting to is contemplated by the MRA and the other Fenway Documents. In the process, the Transaction also achieves an additional benefit: it effectively moots the ownership issue that the SunCal Debtors impermissibly litigated, and through the Opposition continue to litigate, for the past year in violation of LCPI's and LBHI's automatic stay.

12.     The SunCal Debtors' convenient and self-serving recitation of the facts, like many of their prior actions, are misleading if not wrong, and are a continuing waste of the resources of these Estates and this Court.

I.      **The Opposition Is Premised On The False Assumption That LCPI Does Not Have Any Interest In The So-Called "Sold Loans"**

13.     In the Opposition, the SunCal Debtors provide the Court with what purports to be a summary of material facts, yet they omit the most important fact – LCPI did not sell the entirety of the so-called "Sold Loans" to Fenway. Specifically, the SunCal Debtors represented to this Court that:

> Seven of the loans at issue in the Adversary Proceeding (the "Sold Loans") had been transferred to Fenway pursuant to an August 22, 2008 repurchase agreement ("Repo"). The Sold Loans, and the Lehman Entity that filed claims in the SunCal Debtors Bankruptcy proceedings in connection therewith, were as follows:
>
> | Loan | Claimant | Alleged Balance |
> |---|---|---|
> | SunCal Communities I Loan | LCPI | $343,221,391 |
> | Ritter Ranch Loan | LCPI | $287,252,096 |
> | SunCal PSV Loan | Lehman ALI | $88,257,340 |
> | SunCal Delta Coves Loan | Lehman ALI | $206,023,142 |
> | SunCal Marblehead/Heartland Loan | Lehman ALI | $354,325,126 |
> | Sun Cal Oak Valley Loan | OVC | $141,630,092 |
> | SunCal Northlake Loan | Northlake Holdings | $123,654,777 |
> | | **TOTAL** | **$1,544,363,964** |

*See* Opposition at 3. This summary of the SunCal Loans that were transferred to Fenway is incorrect.[7]

14. With respect to five of the seven loans listed above, two separate loans were made to the SunCal Debtors – a term loan and a revolver loan, each of which was represented by a separate promissory note or otherwise separately identified under the applicable loan documents.[8] In connection with the Fenway Repo and as contemplated under the MRA, LCPI generated written confirmations describing the loans and other assets that were transferred to Fenway Capital under the MRA (the "Repo Confirms"). The Repo Confirms clearly demonstrate that only the term components of the SunCal Loans at issue were transferred to Fenway Capital. Those very same Repo Confirms were filed by the SunCal Debtors with the SunCal Court in May 2009.[9] Finally, although the SunCal Court found that the transfers under the MRA were sales as opposed to transfers for security, on February 11, 2010, the SunCal Court stated that it "always understood that there were sold and there were unsold loans."[10] As a result, the SunCal Debtors knew that their summary of the "Sold Loans" was misleading, yet they still filed it with this Court. While they purport to be concerned about "an undisclosed objective" on

---

[7] The SunCal Debtors claim that LCPI has conceded that its automatic stay does not apply to a $95 million loan made by LCPI to SCC/Palmdale LLC. *See* Opposition at 4 n.2. The SunCal Debtors did not and cannot include a citation in support of that statement. The stipulation they refer to was not signed by LCPI, nor was it filed with the SunCal Court. Moreover, even in draft form the stipulation did not contain the concession suggested by the SunCal Debtors. Instead it provided that LCPI *would not assert its automatic stay* since the property securing that loan had no value.

[8] Those loans are the Ritter Ranch Loan, SunCal Marblehead/Heartland Loan, SunCal PSV Loan, SunCal Oak Valley Loan and SunCal Northlake Loan. *See* Declaration of R. Roesch at Exhibits "5"-"9."

[9] *See* Declaration of R. Roesch at Exhibit "10." The Repo Confirms also demonstrate that the SunCal Debtors' summary, and specifically the column labeled "Alleged Balance," is incorrect.

[10] February 11, 2010 Hearing Tr. at 187:14-15, a copy of which is attached as Exhibit "11" to the Declaration of R. Roesch.

Lehman's part, it is the SunCal Debtors who have intentionally misstated "material facts" to this Court.

15.   As the Examiner's Report confirmed, a repurchase agreement is a short-term financing transaction. Under the specific repurchase agreement at issue here, it was always the intention of the parties that LCPI would repurchase the Repo Assets (including the SunCal Loans). The MRA was executed in August 2008, long before any SunCal Debtor filed for bankruptcy. Despite the SunCal Debtors' insinuations to the contrary, the fact that LCPI is now repurchasing the loans and other assets it temporarily transferred to Fenway Capital pursuant to the MRA in no way shows any bad faith intent to interfere with the SunCal Debtors' bankruptcies. Through the Transaction, the parties are simply doing what they had always intended back in August 2008, before either the SunCal Debtors or the Debtors filed for bankruptcy.

16.   Finally, the Opposition ignores the fact that LBHI currently holds the CP Notes and that the CP Notes are ultimately secured by, among other assets, a pledge of Fenway's interests in the SunCal Loans. The CP Notes are property of LBHI's Estate and, because they are secured (albeit through a pledge of Fenway's interests therein), in part, by the SunCal Loans, the SunCal Debtors' claims relating to the SunCal Loans directly impact property of LBHI's Estate. Upon this Court's approval and the subsequent consummation of the Transaction (and, in particular, the surrender of the CP Notes by LBHI as payment of the repurchase price under the MRA and in satisfaction of LBHI's guarantee of the obligations of LCPI), LBHI will become subrogated to the claims and rights of Fenway and will acquire the security interests held by Fenway in the Repo Assets.[11]

---

[11]   *See* June 18, 2009 Declaration of I. Goldstein, a copy of which is attached as Exhibit 14 to the declaration of R. Roesch.

**II.    The Opposition Mischaracterizes the SunCal Court's Ruling Regarding the Automatic Stay**

17.    In addition to mischaracterizing the nature of the transfers to Fenway, the SunCal Debtors also mischaracterize the SunCal Court's ruling on the motion to dismiss the SunCal Debtors' adversary complaint. The SunCal Debtors represent that the SunCal Court ordered them not to assert any claims against LCPI "in order to eliminate any conflict with the stay in this proceeding." Opposition at 1. That is not correct. The SunCal Court dismissed the claims against LCPI *without prejudice* so that the SunCal Debtors could seek relief from the automatic stay in this case.[12] Yet the SunCal Debtors have consistently violated the automatic stay by refusing to comply with the SunCal Court's March 8, 2010 ruling.

18.    In its ruling, the SunCal Court reiterated the Ninth Circuit BAP's ruling – the SunCal Debtors must seek leave from the automatic stay from this Court before proceeding against the property of a Lehman debtor. It is the SunCal Debtors that still have not come before this Court to seek relief from the automatic stay, even after the Ninth Circuit BAP and the SunCal Court ruled that the law required them to do so. Instead, they have tried to circumvent the stay by filing an amended complaint that purports to drop their direct claim against LCPI on loans they previously argued LCPI did not own.[13] However, as set forth more fully below, even that act does not rectify the SunCal Debtors' violation of the stay as to the many other Lehman property rights at issue.

---

[12]    March 8, 2010 Hearing Tr., a copy of which is attached as Exhibit "12" to the R. Roesch Declaration at 6:20-24 ("[T]he motion is being granted without prejudice meaning that again in accordance with Palmdale the Plaintiffs may seek relief from the automatic stay in LCPI's bankruptcy case in order to proceed in the adversary.").

[13]    In reality, the SunCal Debtors' Fourth Amended Adversary Proceeding Complaint (the "FAC"), continues to attack the assets of the Debtors' Estates. *See* FAC at 2 n.4 ("Plaintiffs reserve the right to further amend their complaint to re-name LCPI as a defendant. LCPI was involved in much of the underlying conduct forming the basis for the causes of action in this complaint, and may well be named as a defendant in the future, as explained above."). A copy of the FAC is attached as Exhibit "13" to the R. Roesch Declaration.

19. Finally, the SunCal Debtors incorrectly argue that the automatic stay has never been an issue with respect to the loans owned by the non-debtor Lehman entities, such as Lehman ALI. This is simply not true. In a letter dated January 27, 2010, counsel for Lehman informed the SunCal Debtors that LBHI's interest in the CP Notes, which are ultimately secured by the SunCal Loans and other assets transferred to Fenway, implicated LBHI's automatic stay.[14] The letter further informed the SunCal Debtors that, consistent with the Ninth Circuit BAP's ruling, this Court was the proper venue to determine whether LBHI's interest in the CP Notes was property of LBHI's Estate and therefore protected by the automatic stay.

20. In summary, the SunCal Debtors were told to seek relief from stay by this Court in January 2009, by the Ninth Circuit BAP in December 2009, by Lehman in January and February of 2010 and by the SunCal Court in March 2010 if they wanted to pursue claims against the Debtors' Estates. Nevertheless, the SunCal Debtors have continuously and improperly asserted claims against property of the Debtors' Estates while refusing to seek relief from stay.

**ARGUMENT**

21. In light of their continuing and willful violation of the Debtors' automatic stay, it is ironic that the SunCal Debtors would accuse Lehman of entering into the Transaction in bad faith. Yet the SunCal Debtors have launched that exact attack.

22. For the reasons set forth in the Motion, the Transaction is clearly fair and equitable and does not fall below the lowest point in the range of reasonableness, which is all the Court must determine to approve the Transaction. The Transaction will (i) eliminate the expense and time delay associated with the Lehman's maintenance of the Fenway Repo and the

---

[14] A copy of the January 27, 2010 letter is attached as Exhibit 3 to the R. Roesch Declaration.

commercial paper program with Fenway Funding, (ii) allow LCPI to end the litigation regarding the MRA in the SunCal Cases, and (iii) enable Fenway Capital to seek dismissal of certain claims against it in the SunCal Adversary Proceeding and circumvent the expense of additional litigation regarding the Fenway Repo, including LBHI's obligation to indemnify Fenway for its litigation expense in such proceedings.

23. The SunCal Debtors do not dispute these facts. Instead, they argue that, to the extent LCPI intends to "invoke its automatic stay to block pending litigation . . . relief should be denied." Opposition at 5.[15] But this argument ignores a key fact – LCPI's automatic stay will attach to the property it receives as part of the Transaction as a matter of law, regardless of LCPI's intent.[16]

24. The assets which comprise the Debtors' Estates are predetermined by the Bankruptcy Code, which provides that "any interest in property that the estate acquires after the commencement of the case" is property of the estate. 11 U.S.C. § 541(a)(7). Upon consummation of the Transaction, LCPI will acquire the Repo Assets and LBHI, as subrogee to the claims and rights of Fenway, will acquire a direct security interest in the Repo Assets. As a

---

[15] The SunCal Debtors claim that LCPI will use the Transaction to "thwart the equitable subordination litigation" and that the transferred claims and liens "could potentially be shielded from subordination." Opposition at 1 & 6. But the Transaction does no such thing. Even after the Transaction, the SunCal Debtors may pursue equitable subordination claims against LCPI if they obtain leave from this Court. As the Ninth Circuit BAP noted in determining that the SunCal Debtors must seek relief from stay in this Court, "Debtors are not hamstrung by this decision; Debtors may either seek relief from stay or initiate the equitable subordination action against Lehman Commercial in the New York bankruptcy case. *See Lehman Commercial Paper, Inc. v. Palmdale Hills Prop., LLC (In re Palmdale Hills Prop., LLC),* 423 B.R. 655, 667 (B.A.P. 9th Cir. 2009).

[16] Although Lehman and Fenway clearly are not entering into the Transaction in bad faith, the SunCal Debtors' reliance on *In re Brannan*, 40 B.R. 20 (Bankr. ND. Ga. 1984) is wholly misplaced. *In re Brannan* was a chapter 7 case, where the court in such case relied on that specific procedural posture to reach its conclusion that the property in question was transferred to the debtor, not to the estate. *See In re Brannan* at 21 ("This court concludes that the property in question was conveyed to *the debtor* and *not to the Chapter 7 estate*."). Because the property was not transferred to the estate, the automatic stay was clearly inapplicable. *See id.* ("Therefore, the statutory language of § 541(a)(7) ... is not triggered, and the relief generally afforded by the automatic stay to property of the estate in a Chapter 7 case is not available."). Indeed, the *In re Brannan* court expressly noted that its rationale is inapplicable to cases filed under Chapter 11. *See id.* at 23 n.2. Unlike *In re Brannan*, this is a chapter 11 case and the Transaction will clearly result in the transfer of property to LCPI's Estate.

matter of law, LCPI's and LBHI's automatic stay will cover this property. *See* 11 U.S.C. § 362. Thus, the applicability of the automatic stay to the loans and other assets acquired by LCPI and the direct security interest acquired by LBHI is a function of the Bankruptcy Code, not of any insidious motive on the part of Lehman or Fenway. *In re GGSI Liquidation Inc.*, 351 B.R. 529, 572 (Bankr. N.D. Ill. 2006) (rights of a debtor gained through subrogation are property of the estate and subject to protection by automatic stay).

25. The SunCal Debtors also argue that "five of the seven loans that LCPI is acquiring from Fenway through the Transaction were originated by Lehman ALI, a non-debtor Lehman entity, and held by Lehman ALI or other non-debtor affiliates pre-petition. Accordingly, if LCPI asserts its stay after the closing of the Transaction, this assertion would seek the extension of LCPI's stay to the five Lehman ALI-originated Sold Loans." Opposition at 6.[17] This argument exposes the SunCal Debtors' failure to comprehend the actual Transaction proposed by Lehman and Fenway.

26. At its core, the Transaction is a repurchase of the Repo Assets that were transferred to Fenway Capital pursuant to the terms of the MRA.[18] The parties to the Fenway Repo are LCPI and Fenway Capital. Therefore, the only entity with the contractual right and status to repurchase the Repo Assets, and thus the SunCal Loans, from Fenway Capital is LCPI, not Lehman ALI.

27. Although LCPI is the only party that can repurchase the Repo Assets, once the Transaction is effectuated LCPI will seek leave to transfer the five loans at issue back to non-

---

[17] Those loans are the SunCal Marblehead/Heartland Loan, SunCal PSV Loan, SunCal Oak Valley Loan, SunCal Delta Coves Loan and SunCal Northlake Loan.

[18] The SunCal Debtors argue that the Transaction is "not being effectuated through the original underlying Repo contract. Rather it is being effectuated through an entirely new post-petition contract." Opposition at 6 n.4. That statement is simply not true. *See* Motion at 9 ("LCPI will repurchase the Repo Assets from Fenway Capital (by payment of the repurchase price…").

debtor entities that held such loans prior to the Fenway Repo. That transfer will not, however, eliminate the security interest that LBHI will acquire in the Repo Assets as a result of the Transaction and LBHI's becoming subrogated to Fenway's rights under the Fenway Documents. Thus, despite the fact that the five loans at issue may be transferred to non-debtor entities that held such loans prior to the Fenway Repo, the automatic stay in favor of LBHI will continue to apply to LBHI's security interest in all the Repo Assets.

28.  The SunCal Debtors have known that Lehman and Fenway were contemplating the repurchase of the Repo Assets for nearly one year.[19] In May 2009, Fenway's counsel informed the SunCal Debtors that "Fenway has been working hard (and still negotiating) to extricate itself from the middle of the transaction . . . [and] has no skin in the game."[20] More recently, Fenway announced to the SunCal Debtors and the SunCal Court that Lehman and Fenway intended to enter into the Transaction.[21] Finally, the SunCal Debtors have been aware of LBHI's interest in the CP Notes and its guarantee of LCPI's obligations under the MRA for the same period of time. As a result, the SunCal Debtors cannot claim to be surprised in the least by the Transaction.

29.  Nor are the SunCal Debtors' actions in filing the Opposition surprising, since their conduct over the past year has consistently demonstrated a willingness to do anything

---

[19] The SunCal Debtors also argue that their "Adversary Proceeding is well into the discovery stage, and Fenway has been an active participant/defendant in that the [sic] litigation for almost a year." While this has no bearing on whether the Transaction is fair and equitable or falls above the lowest point in the range of reasonableness, it is also inaccurate. Fenway was not named as a defendant until the SunCal Debtors filed their Third Amended Complaint in July of 2009 (the operative complaint is the Fourth Amended Complaint which is also subject to a motion to dismiss).

[20] *See* June 18, 2009 Declaration of I. Goldstein, a copy of which is attached as Exhibit "14" to the declaration of R. Roesch, at 4; *see also* Declaration of I. Goldstein at Exhibit B.

[21] *See* Exhibit 11 to the Declaration of R. Roesch at 130:12-17 (February 11, 2010 Hearing Tr.) ("Fenway has been trying for some time to extricate itself from this mess and is in the process of negotiating a way out of it pursuant to a transaction by which Lehman will repurchase Fenway's interests in all of the loans, including the SunCal term loans that were the subject of the repo agreement.")

possible to continue litigating the issues of who owns the Repo Assets. These tactics continue to drain the assets of the Debtors' Estates, and must finally be put to rest. By approving the Transaction, this Court can do just that.

## CONCLUSION

30. In sum, the SunCal Debtors have refused to come before this Court to seek relief from the automatic stay even though LCPI's and LBHI's property interests have been implicated by the actions of the SunCal Debtors as supported by the rulings described above. They now seek to circumvent the rulings directing them to do just that, by interfering with the Debtors' bankruptcy proceedings via the instant Opposition, despite purporting that they "have no desire to . . . participate in LCPI's bankruptcy case." Opposition at 1. But in fact, the only reason the Opposition was filed is that the SunCal Debtors recognize that they can no longer ignore the fact that LCPI's and LBHI's property rights are at issue in the SunCal Adversary Proceeding and they can no longer ignore the impact of the Debtors' automatic stay.

31. While the SunCal Debtors irresponsibly allege that Lehman has entered into the Transaction in "bad faith," it is the SunCal Debtors, not Lehman, that possess ulterior motives. They framed the Opposition as an innocuous challenge to the Transaction (which they have known about for many months), while in fact it is really a continuation of their efforts to litigate claims which violate both LCPI's and LBHI's automatic stay and prior court rulings without ever seeking leave to do so. The SunCal Debtors' professed lack of desire to participate in LCPI's bankruptcy case is further contradicted by the fact that they have *already* been involved in LCPI's bankruptcy case for over one year, asserting claims against LCPI and its Estate in a willful violation of LCPI's automatic stay. This Court should not ignore the SunCal Debtors

actions and should address their attempt to continue on its current course in violation of the automatic stay.

For the foregoing reasons LBHI, LCPI and the other Debtors respectfully request that the Court overrule the SunCal Debtors' Opposition, approve the Transaction and grant the relief requested herein and such other and further relief as is just.

Dated: April 12, 2010
       Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

Attorneys for Debtors
and Debtors in Possession