# EXHIBIT "13"

1   Richard M. Pachulski (CA Bar No. 90073)
    Dean A. Ziehl (CA Bar No. 84529)
2   Shirley S. Cho (CA Bar No 192616)
    PACHULSKI STANG ZIEHL & JONES LLP
3   10100 Santa Monica Blvd., 11th Floor
    Los Angeles, California  90067-4100
4   Telephone: 310/277-6910; Facsimile:  310/201-0760

5   -and-

6   Edward Soto (admitted *pro hac vice*)
    Shai Waisman (admitted *pro hac vice*)
7   WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
8   New York, NY  10153-0119
    Telephone:  (212) 310-8000; Facsimile:  (212) 310-8007

9   Attorneys for Lehman ALI, Inc., Lehman Commercial Paper
    Inc., Northlake Holdings LLC and OVC Holdings LLC

10

11

12              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
13                    **SANTA ANA DIVISION**

14

15   In re:                                    Case No.: 8:08-bk-17206-ES

16   Palmdale Hills Property, LLC, and its Related    Chapter 11
     Debtors,                                   Jointly Administered Case Nos.
17
                  Jointly Administered Debtors    8:08-bk-17209-ES; 8:08-bk-17224-ES;
18            and Debtors-In-Possession         8:08-bk-17225-ES; 8:08-bk-17227-ES
                                                8:08-bk-17230-ES; 8:08-bk-17231-ES
19   ─────────────────────────────             8:08-bk-17236-ES; 8:08-bk-17240-ES
                                                8:08-bk-17242-ES; 8:08-bk-17245-ES
20   Affects:                                   8:08-bk-17246-ES; 8:08-bk-17548-ES
                                                8:08-bk-17549-ES; 8:08-bk-17404-ES
21   ☒ All Debtors                              8:08-bk-17407-ES; 8:08-bk-17408-ES;
     ☐ Palmdale Hills Property, LLC             8:08-bk-17409-ES; 8:08-bk-17458-ES;
22   ☐ SunCal Beaumont Heights, LLC             8:08-bk-17465-ES; 8:08-bk-17470-ES;
     ☐ SCC/Palmdale, LLC                        8:08-bk-17472-ES; 8:08-bk-17573-ES;
23   ☐ SunCal Johannson Ranch, LLC              8:08-bk-17574-ES; 8:08-bk-17575-ES;
     ☐ SunCal Summit Valley, LLC                8:08-bk-17588-ES
24   ☐ SunCal Emerald  Meadows, LLC
     ☐ SunCal Bickford Ranch, LLC
25   ☐ Acton Estates, LLC
     ☐ Seven Brothers, LLC
26   ☐ SJD Partners, Ltd.

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | |
|---|---|
| 1 | ☐ SJD Development Corp. <br> ☐ Kirby Estates, LLC |
| 2 | ☐ SunCal Communities I, LLC |
| 3 | ☐ SunCal Communities III, LLC <br> ☐ SCC Communities LLC |
| 4 | ☐ North Orange Del Rio Land, LLC <br> ☐ Tesoro SF, LLC |
| 5 | ☐ LB-L-SunCal Oak Valley, LLC <br> ☐ SunCal Heartland, LLC |
| 6 | ☐ LB-L-SunCal Northlake, LLC <br> ☐ SunCal Marblehead, LLC |
| 7 | ☐ SunCal Century City, LLC <br> ☐ SunCal PSV, LLC |
| 8 | ☐ Delta Coves Venture, LLC <br> ☐ SunCal Torrance, LLC |
| 9 | ☐ SunCal Oak Knoll, LLC |

**DECLARATION OF IRENA GOLDSTEIN IN SUPPORT OF CONSOLIDATED OPPOSITION OF LEHMAN COMMERCIAL PAPER, INC., LEHMAN ALI, INC., NORTHLAKE HOLDINGS, LLC AND OVC HOLDINGS, LLC TO: (1) DEBTORS' OBJECTION TO AND MOTION FOR ORDER STRIKING CLAIMS FILED BY THE LEHMAN ENTITIES; AND (2) MOTION FOR ORDER STRIKING PLEADINGS FILED BY THE LEHMAN ENTITIES**

Date:    June 30, 2009-06-15
Time:    2:00 p.m.
Place:   Courtroom 5A

10

11

<u>DECLARATION OF IRENA GOLDSTEIN</u>

12

I, Irena Goldstein, hereby declare and state as follows:

13

1.    I am admitted to practice before the highest courts of the States of New

14   York and New Jersey and am a member of the law firm Dewey & LeBoeuf LLP.  I

15

16   submit this declaration, in my capacity as counsel to Fenway Capital LLC ("Fenway

17   Capital") and Fenway Funding LLC ("Fenway Funding," and together with Fenway

18   Capital, "Fenway") to clarify the record in the above captioned matter and in support of

19   the Consolidated Opposition of Lehman Commercial Paper, Inc., Lehman ALI, Inc.,

20   Northlake Holdings, LLC and OVC Holdings, LLC to:  (1) Debtors' Objection to and

21   Motion for Order Striking Claims Filed by the Lehman Entities; and (2) Motion for Order

22   Striking Pleadings Filed by the Lehman Entities (the "Pleading Objection").

23

24   2.    On May 1, 2009, I received an email from Sean A. O'Keefe, counsel to

25   Palmdale Hills, LLC and its affiliated debtors (collectively, the "Debtors") regarding

26   certain commercial papers notes ("CP Notes") issued by Fenway Funding to Lehman

27   Brothers Holdings Inc. ("LBHI") which were later pledged by LBHI to JPMorgan Chase,

28

N.A. ("JPM").  See May 1, 2009 email attached hereto as Exhibit "A."  In such email,
counsel stated that "Rather than expend Fenway's time and SunCal's money [taking a
deposition of Fenway], we would like to simply address these matters with you in a
telephone conference on Monday."

3.      As a courtesy to counsel and to avoid Fenway personnel from being
distracted by discovery in a litigation in which they have no economic interest, as further
described below, I spoke with Mr. O'Keefe on Monday, May 4, 2009.

4.      On May 12, 2009, counsel for LBHI and other Lehman entities
(collectively, "Lehman"), provided to me a copy of the unilateral status report filed by the
Debtors in these cases, purporting to describe my conversation with Debtors' counsel.  In
response, I sent the email attached hereto as Exhibit "B" to Debtors' counsel alerting him
to my disagreement with his characterization of my statements.  Days later, Fenway was
served with subpoenas.

5.      Notwithstanding my May 12 email, Debtors' counsel continues to omit
important facts communicated to him regarding Fenway's interest in the subject loans.
For example, while it is correct that Fenway purchased interests in the loans pursuant to a
repurchase agreement, it is not true that "the Lehman Entities relinquished all right, title
and interest" in the loans.  Pleading Obj., 3, 5, 12-15.  As set forth in my May 12 email,
the loans serve as the ultimate collateral for the CP Notes issued by Fenway Funding to
LBHI.  LBHI pledged the CP Notes to JPM.  As acknowledged by Mr. O'Keefe in his
email to Amy Wolf, Esq., counsel for JPM, dated May 1, 2009, which he had forwarded
to me with his email request to speak to me (see Exhibit A), JPM did not foreclose on the
commercial paper notes, and they are accordingly, the property of LBHI, subject to

1    JPM's lien.  While Fenway Capital may have legal title to interests in the loans in

2    question, LBHI has the beneficial interest.

3          6.      It is this very important fact which underlies my statement in an email to

4    Debtors' counsel that "Fenway has been working hard (and still negotiating) to extricate

5    itself from the middle of the transaction since September of 2008," a fact which Debtors'

6
7    counsel fails to mention.  Pleading Obj., 5, 11.  As I stated to Debtors' counsel, in both

8    writing and during our conversation, if loan proceeds are paid to Fenway Capital, those

9    same proceeds will be transferred ultimately to LBHI.  Conversely, neither Fenway

10   Capital nor Fenway Funding is liable for amounts under the CP Notes under the

11   governing agreements in the event there are insufficient proceeds from the loans to repay

12   in full the CP Notes.  The holder of the CP Notes ultimate recourse is only to the

13   underlying collateral.  Simply put, Fenway has no "skin" in the game.

14
15         7.      Most importantly, however, Fenway purchased loans governed by loan

16   agreements under which a Lehman entity serves as agent.  Fenway has not terminated

17   such entity's role as agent and fully supports Lehman's efforts in the Debtors' cases in

18   connection with the loans.

19         I declare under penalty of perjury that the foregoing is true and correct.

20   Executed this 18th day of June 2009, in New York, New York.

21

22

23

24                                            Irena Goldstein

25

26   NY3 3030794.2 100562 000001 6/18/2009 01:53pm

27

28

                                           4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

## Goldstein, Irena

| | |
|---|---|
| **From:** | Sean O'Keefe [sokeefe@winthropcouchot.com] |
| **Sent:** | Friday, May 01, 2009 6:04 PM |
| **To:** | Goldstein, Irena |
| **Cc:** | 'bprocel@millerbarondess.com'; 'mpritkin@millerbarondess.com' |
| **Subject:** | FW: SunCal/Lehman |

Dear Ms. Goldstein:

As you are aware, this firm represents certain SunCal entities in an ongoing litigation matter against certain Lehman Brothers entities here in the United States Bankruptcy Court Central District of California. Certain Commercial Paper Notes issued by Fenway Funding, LLC were pledged by one or more Lehman Brothers entities to JP Morgan Chase. This pledge was further collateralized by the a series of loans that Lehman Brothers entities made to the SunCal entities (the "SunCal Loans").

We have received discovery from JP Morgan Chase relating to the above transactions. This discovery confirms that the SunCal Loans were sold to Fenway Capital, Inc. pursuant to a repurchase transaction governed by that certain *Master Repurchase Contract* dated August 22, 2008. Although Lehman Brothers retains possession of the SunCal Loans in its capacity as the Hold-In-Custody Agent for Fenway Capital, counsel for JP Morgan Chase has confirmed that Fenway Capital is obligated to turnover to JP Morgan Chase, as the pledgee of the Commercial Paper Notes, any collections paid to Fenway Capital as title holder.

There are certain facts regarding these transactions that we need to clarify and counsel for JP Morgan Chase has indicated that Fenway would be the right party to address these issues. Since the pending litigation is moving rapidly, we need to clarify these points of information with you as soon as possible, or alternatively arrange a PMK deposition for Fenway Funding and Fenway Capital. Rather than expend Fenway's time and SunCal's money in this regard, we would like to simply address these matters with you in a telephone conference on Monday.

Please let me know when you would be available.


Sean A. OKeefe
Winthrop Couchot, P.C.
Co-counsel to certain SunCal entities

**From:** Sean O'Keefe
**Sent:** Friday, May 01, 2009 12:34 PM
**To:** 'arwolf@wlrk.com'
**Cc:** 'mpritkin@millerbarondess.com'
**Subject:** SunCal/Lehman

Dear Ms. Wolf:


6/18/2009

It was a pleasure speaking with you this morning. During our conversation you confirmed that JPMorgan Chase did not foreclose on the commercial paper notes as referenced in the letter of September 25, 2008 from Ms. Sharf to Deutsche Bank Trust Company Americas (the "Sharf Letter"). The pledge of the notes from Lehman remains effective. You also confirmed that the two guarantees and the security agreement referenced the Sharf Letter do not convey upon JPMorgan Chase a lien against the mortgage loans that Lehman made to the various SunCal entities (the "SunCal Loans"), which are the subject of the Master Repurchase Agreement dated August 22, 2008 (the "MRA"). The SunCal Loans remain subject to the repo under the MRA, and your recourse with respect to these loans is only against Fenway, when the same collects whatever is payable on these repo'd obligations.

Based on your representations, it appears that the information we are seeking is apparently in the possession of Fenway. Accordingly, we will contact them regarding this matter.

Again, we appreciate your time and consideration

Sincerely,
Sean A. OKeefe,
Co-counsel to the Palmdale Hills, LLC, et. al.

6/18/2009

1
2
3
4
5
6
7
8
9
10
11
12
13
14          **EXHIBIT B**
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Goldstein, Irena

| | |
|---|---|
| **From:** | Goldstein, Irena |
| **Sent:** | Tuesday, May 12, 2009 6:05 PM |
| **To:** | 'Sean O'Keefe'; 'bprocel@millerbarondess.com'; 'mpritikin@millerbarondess.com' |
| **Cc:** | 'daniel.mette@weil.com'; 'edward.soto@weil.com' |
| **Subject:** | RE: SunCal/Lehman |

All,

Weil Gotshal forwarded to me the "supplemental unilateral status report" you filed in the adversary proceeding pending between your clients and Lehman ALI, Inc. and other Lehman debtors.

Your statement concerning our conversation is misleading. More importantly, your conclusion that Lehman has no "legal interest" in the sold loans as a result of the Fenway transaction does not comport at all with our discussions.

To start from the beginning, Fenway Funding issued CP Notes to LBHI. We have been advised that LBHI pledged its interest in the CP Notes to JPM. The collateral for the CP Notes are the proceeds of the Series 2008-2 Note issued by Fenway Capital. The Series 2008-2 Note is secured by Fenway Capital's rights under a master repurchase agreement between LCPI and Fenway Capital. Under the master repurchase agreement, LCPI sold its interests in certain loans and securities to Fenway Capital.

You contend in your report to the court that by selling such loans under the repurchase agreement, LCPI and LBHI have no rights in the loans. What you gloss over, among other things, is that it is our understanding that LBHI is the *owner* of the CP Notes and the collateral for the CP Notes is ultimately the sold loans. To the best of my knowledge, JPM has not foreclosed on the CP Notes. Accordingly, LBHI as the owner of the CP Notes, is the beneficiary of the collateral ultimately securing such CP Notes, which includes the sold loans.

In this regard, and as I stated to you, Fenway has been working hard (and is still negotiating) to extricate itself from the middle of the transaction since September 2008. Prior to LBHI's bankruptcy proceeding, LCPI and Fenway entered into a termination agreement, the intent of which was to terminate the repurchase agreement, leave LCPI with the sold loans and return the cancelled CP Notes to Fenway. LBHI filed for bankruptcy protection prior to returning the CP Notes. If the repurchase agreement was terminated, LCPI is the owner of the sold loans. If the repurchase agreement was not terminated and the CP Notes not cancelled, then as owner of the CP Notes, LBHI ultimately has the right to the sold loans. The fact that LBHI may, at the end of the day, have to turn over some or all of the proceeds of the CP Notes to JPM does not change the fact that LBHI is the owner of the CP Notes

It is apparent that the purpose of your "unilateral status report" is to create a question around whether LCPI or LBHI have the authority to pursue remedies against SunCal under the sold loans. (Interestingly, you do not even mention Lehman's status as agent bank.) Make no mistake about it, without waiving any rights that Fenway may have against LBHI, LCPI any Lehman entity, JPM or the SunCal debtors, Fenway does not object to LBHI's and LCPI's enforcement of the rights of the "lenders" under the sold loans.

Regards,

6/18/2009

Irena

Irena Goldstein
Partner, Business Solutions and Governance
Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019
Direct: +1 212 259 7035
General: +1 212 259 8000
Fax: +1 212 259 6333
igoldstein@dl.com
www.dl.com

6/18/2009

| In re:<br>PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS.<br><br>                                                Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 08-17206-ES |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

The foregoing document described **DECLARATION OF IRENA GOLDSTEIN IN SUPPORT CONSOLIDATED OPPOSITION OF LEHMAN ALI, INC., LEHMAN COMMERCIAL PAPER INC. NORTHLAKE HOLDINGS LLC AND OVC HOLDINGS LLC TO: (1) DEBTORS' OBJECTIONS TO AND MOTION FOR ORDER STRIKING CLAIMS FILED BY THE LEHMAN ENTITIES; AND (2) DEBTORS' MOTION FOR ORDER STRIKING PLEADINGS FILED BY THE LEHMAN ENTITIES** will be served or was served **(a)** on the **judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ___June 18, 2009___ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On ___June 18, 2009___ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

JUDGE'S COPY [Overnight Mail satisfies *all* service conditions]

The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
Ronald Reagan Federal Building and
United States Courthouse
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ___June 18, 2009___ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method,) by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 18, 2009 | Melisa DesJardien | /s/ Melisa DesJardien |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                 F 9013-3.1

| In re:<br>PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,<br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 08-17206-ES |
| --- | --- |

## I. SERVED BY NEF

### 8:08-bk-17206-ES Notice will be electronically mailed to:

- Joseph M Adams for Defendant The City of San Juan Capistrano
  jadams@sycr.com
- Raymond H Aver for Interested Party Dou Family Trust Dated November 12, 1992
  ray@averlaw.com
- James C Bastian for Creditor ARB, Inc.
  jbastian@shbllp.com
- John A Boyd for Interested Party Oliphant Golf Inc
  fednotice@tclaw.net
- Dan E Chambers for Creditor EMR Residential Properties LLC
  dchambers@jmbm.com
- Shirley Cho for Creditor Lehman ALI, Inc.
  scho@pszjlaw.com
- Vonn Christenson for Interested Party Courtesy NEF
  vrc@paynefears.com
- Vincent M Coscino for Petitioning Creditor CST Environmental Inc
  emurdoch@allenmatkins.com
- Paul J Couchot for Debtor ACTON ESTATES, LLC
  pcouchot@winthropcouchot.com, pj@winthropcouchot.com
- Jonathan S Dabbieri for Interested Party Courtesy NEF
  dabbieri@shlaw.com
- Ana Damonte for Creditor Top Grade Construction, Inc.
  ana.damonte@pillsburylaw.com
- Melissa Davis for Creditor City of Orange
  mdavis@shbllp.com
- Daniel Denny for Interested Party Courtesy NEF
  ddenny@gibsondunn.com
- Caroline Djang for Creditor Lehman ALI, Inc.
  crd@jmbm.com
- Donald T Dunning for Creditor Hertz Equipment Rental Corporation
  ddunning@dunningLaw.com
- Joseph A Eisenberg for Creditor Lehman ALI, Inc.
  jae@jmbm.com
- Lei Lei Wang Ekvall for Creditor Committee Joint Committee of Creditors Holding Unsecured Claims
  lekvall@wgllp.com
- Richard W Esterkin for Debtor Palmdale Hills Property, LLC
  resterkin@morganlewis.com
- Marc C Forsythe for Attorney Robert Goe
  kmurphy@goeforlaw.com
- Alan J Friedman for Attorney Irell & Manella LLP
  afriedman@irell.com
- Robert P Goe for Attorney Robert Goe
  kmurphy@goeforlaw.com
- Eric D Goldberg for Interested Party Courtesy NEF
  egoldberg@stutman.com
- Kelly C Griffith for Interested Party Courtesy NEF
  bkemail@harrisbeach.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009    F 9013-3.1

| In re:<br>PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,<br><div align="right">Debtor(s).</div> | CHAPTER 11<br><br>CASE NUMBER 08-17206-ES |
|---|---|

- Asa S Hami for Debtor Palmdale Hills Property, LLC
  ahami@morganlewis.com
- Michael J Hauser for U.S. Trustee United States Trustee (SA)
  michael.hauser@usdoj.gov
- D Edward Hays for Creditor Philip Dowse
  ehays@marshackhays.com
- Michelle Hribar for Plaintiff EMR Residential Properties LLC
  mhribar@rutan.com
- Lawrence A Jacobson for Creditor BKF Engineers
  laj@cohenandjacobson.com
- Stephen M Judson for Petitioning Creditor The Professional Tree Care Co
  sjudson@fablaw.com
- David I Katzen for Interested Party Bethel Island Municipal Improvement District
  katzen@ksfirm.com
- Christopher W Keegan for Creditor SC Master Holdings II LLC
  ckeegan@kirkland.com, emilee@kirkland.com;alevin@kirkland.com
- Irene L Kiet for Creditor BNB Engineering, Inc.
  ikiet@hkclaw.com
- Mark J Krone for Creditor Bond Safeguard Insurance Co
  mk@amclaw.com
- Leib M Lerner for Creditor Steiny and Company, Inc.
  leib.lerner@alston.com
- Peter W Lianides for Debtor Palmdale Hills Property, LLC
  pj@winthropcouchot.com
- Charles Liu for Debtor Palmdale Hills Property, LLC
  cliu@winthropcouchot.com
- Kerri A Lyman for Attorney Irell & Manella LLP
  klyman@irell.com
- Mariam S Marshall for Creditor RGA Environmental, Inc.
  mmarshall@marshallramoslaw.com
- Robert C Martinez for Creditor TC Construction Company, Inc
  rmartinez@mclex.com
- Hutchison B Meltzer for Creditor Committee Joint Committee of Creditors Holding Unsecured Claims
  hmeltzer@wgllp.com
- Joel S. Miliband for Creditor RBF CONSULTING
  jmiliband@rusmiliband.com
- James M Miller for Debtor Palmdale Hills Property, LLC
  jmiller@millerbarondess.com
- Louis R Miller for Plaintiff Palmdale Hills Property, LLC
  smiller@millerbarondess.com
- Douglas M Neistat for Defendant Desert Pipeline, Inc.
  twilliams@greenbass.com
- Mike D Neue for Trustee Steven Speier
  mneue@thelobelfirm.com
- Robert Nida for Creditor Kirk Negrete, Inc
  Rnida@castlelawoffice.com
- Penelope Parmes for Creditor Rubidoux 60 LLC
  pparmes@rutan.com
- Ronald B Pierce for Creditor Griffith Company
  ronald.pierce@sdma.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                          F 9013-3.1

| In re: | | CHAPTER 11 |
| PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS, | | |
| | Debtor(s). | CASE NUMBER 08-17206-ES |

- Raymond A Policar for Creditor Williams+Paddon Architects+Planners, Inc.
  hausermouzes@sbcglobal.net
- Cassandra J Richey for Creditor Patricia I Volkerts, as Trustee, et al
  cmartin@pprlaw.net
- Debra Riley for Interested Party City of Palmdale
  driley@allenmatkins.com
- Martha E Romero for Creditor San Bernardino County Tax Collector
  Romero@mromerolawfirm.com
- William D Schuster for Creditor HD Supply Construction Supply LTD
  bills@allieschuster.org
- Michael St James for Creditor MBH Architects, Inc.
  ecf@stjames-law.com
- Todd L Turoci for Creditor Philip Dowse
  tturoci@aol.com
- United States Trustee (SA)
  ustpregion16.sa.ecf@usdoj.gov
- Jason Wallach for Interested Party Courtesy NEF
  jwallach@bergerkahn.com
- Christopher T Williams for Creditor Danske Bank A/S London Branch
  ctwilliams@venable.com
- David M Wiseblood for Creditor Bethel Island Municipal Improvement District
  dwiseblood@seyfarth.com
- Arnold H Wuhrman for Creditor Wayne Lee
  Wuhrman@serenitylls.com
- Dean A Ziehl for Creditor Lehman ALI, Inc.
  dziehl@pszjlaw.com, dziehl@pszjlaw.com

## II. SERVED BY U.S. MAIL

### 8:08-bk-17206-ES Notice will not be electronically mailed to:

Tab L K Artis
301 N Lake Ave 7th Fl
Pasadena, CA 91101

Sharon A Bangs
Crawford & Bangs
1290 E Center Ct Dr
Covina, CA 91724

William G Bissell
110 Newport Ctr Dr Ste 200
Newport Beach, CA 92660

John W Busby
251 Lafayette Circle Ste 350
Lafayette, CA 94549

Brent S Clemmer
Slovak Baron & Empey LLP
1800 E Tahquitz Cyn Wy
Palm Springs, CA 92262

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                     F 9013-3.1

| In re: | CHAPTER 11 |
| PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS, | |
| Debtor(s). | CASE NUMBER 08-17206-ES |

Wayne W Call
Call, Jensen & Ferrell
610 Newport Ctr Dr Ste 700
Newport Beach, CA 92660

Adrianna Corrado
Lanak & Hanna
400 N Tustin Ave Ste 120
Santa Ana, CA 92705-3815

Donald B Devirian
Devirian & Shinmoto
11400 W Olympic Blvd Ste 200
Los Angeles, CA 90064

Steven M Garber
1901 Ave Of The Stars #1100
Los Angeles, CA 90067

Stanley Haren
Gill & Baldwin
130 N Baldwin Blvd #405
Glendale, CA 91203

William R Hart
Hart King & Coldren
200 Sandpointe Fourth Fl
Santa Ana, CA 92707

Andrew C Kienle
200 Sandpointe, 4th Fl
Santa Ana, CA 92707

Vivian Le
Gary R King & Associates
30950 Rancho Viejo Rd Ste 155
San Juan Capistrano, CA 92675

Michael D. May
250 W First St, Ste 256
Claremont, CA 91711

Mark E McKane
Kirkland & Ellis LLP
555 California St
San Francisco, CA 94104

Raymond D Scott
1835 W Orangewood Ave Ste 255
Orange, CA 92868

Kimberly A Soyer
251 Lafayette Cir, Ste 350
Lafayette, CA 94549

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                    F 9013-3.1

| In re:<br>PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,<br><div align="right">Debtor(s).</div> | CHAPTER 11<br><br>CASE NUMBER 08-17206-ES |
| --- | --- |

Joseph L Strohman
Ferguson Case Orr Paterson LLP
1050 S Kimball Rd
Ventura, CA 93004

Theresa Crawford Tate
Crawford & Bangs LLP
1290 E Center Crt Dr
Covina, CA 91724

Weiland Golden Smiley Wang Ekvall & Strok, LLP
650 Town Center Dr Ste 950
Costa Mesa, CA 92626

Douglas F Welebir
Welebir Tierney & Weck
2068 Orange Tree Ln Ste 215
Redlands, CA 92374

## III. SERVED BY E-MAIL

Paul Couchot - pcouchot@winthropcouchot.com

William Lobel - wlobel@thelobelfirm.com

Louis Miller - smiller@millerbarondess.com

Steven N. Speier - sspeier@squarmilner.com (Chapter 11 Trustee, c/o Squar Nilner)

Edward Soto - Edward.soto@weil.com

Carrolynn H. G. Callari - ccallari@venable.com

Timothy J. Gorry - tgorry@venable.com

Palmdale Hills Property, LLC and its related entities - bcook@suncal.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                              **F 9013-3.1**

1   LOUIS R. MILLER, State Bar No. 54141
    smiller@millerbarondess.com
2   MARTIN PRITIKIN, State Bar. No. 210845
    mpritikin@millerbarondess.com
3   JAMES MILLER, State Bar No. 234267
    jmiller@millerbarondess.com
4   **MILLER BARONDESS, LLP**
    1999 Avenue of the Stars, Suite 1000
5   Los Angeles, California 90067
    Telephone:    (310) 552-4400
6   Facsimile:    (310) 552-8400
    Special Litigation Counsel for the Jointly
7   Administered Debtors in Possession and Steven
    M. Speier, the Chapter 11 Trustee

8

9           **UNITED STATES BANKRUPTCY COURT**
        **CENTRAL DISTRICT OF CALIFORNIA — SANTA ANA DIVISION**

10  In re                                    **CASE NO. 8:08-bk-17206-ES**
                                             Jointly Administered With Case Nos.
11                                               8:08-bk-17209-ES; 8:08-bk-17224-ES;
    PALMDALE HILLS PROPERTY, LLC, AND ITS        8:08-bk-17225-ES; 8:08-bk-17227-ES;
12  RELATED DEBTORS,                             8:08-bk-17230-ES; 8:08-bk-17231-ES;
              Jointly Administered Debtors and   8:08-bk-17236-ES; 8:08-bk-17240-ES;
13            Debtors-in-Possession             8:08-bk-17242-ES; 8:08-bk-17245-ES;
                                                8:08-bk-17246-ES; 8:08-bk-17248-ES;
14  _____    8:08-bk-17249-ES; 8:08-bk-17404-ES;
    Affects:                                    8:08-bk-17407-ES; 8:08-bk-17408-ES;
15  ☐  All Debtors                              8:08-bk-17409-ES; 8:08-bk-17458-ES;
    ☒  Palmdale Hills Property, LLC,            8:08-bk-17465-ES; 8:08-bk-17470-ES;
16  ☐  SunCal Beaumont Heights, LLC             8:08-bk-17472-ES; 8:08-bk-17573-ES;
    ☐  SCC/Palmdale, LLC                        8:08-bk-17574-ES; 8:08-bk-17575-ES;
17  ☐  SunCal Johannson Ranch, LLC              8:08-bk-17588-ES
    ☒  SunCal Summit Valley, LLC
18  ☒  SunCal Emerald Meadows, LLC              **Adversary No. 8:09-ap-01005-ES**
    ☒  SunCal Bickford Ranch, LLC
19  ☒  Acton Estates, LLC                       **FOURTH AMENDED ADVERSARY**
20  ☐  Seven Brothers LLC                       **PROCEEDING COMPLAINT FOR:**
    ☒  SJD Partners, Ltd.
21  ☒  SJD Development Corp.                     1) **EQUITABLE SUBORDINATION,**
    ☐  Kirby Estates, LLC                          **11 U.S.C. §510(c);**
22  ☒  SunCal Communities I, LLC
23  ☒  SunCal Communities III, LLC              2) **FRAUDULENT INDUCEMENT;**
    ☒  SCC Communities LLC
24  ☒  North Orange Del Rio Land, LLC           3) **AVOIDANCE AND RECOVERY OF**
    ☒  Tesoro SF, LLC                              **PREFERENTIAL TRANSFERS,**
25  ☒  LB-L-SunCal Oak Valley, LLC                 **11 U.S.C §§ 547, 550;**
    ☒  SunCal Heartland, LLC
26  ☒  LB-L-SunCal Northlake, LLC               4) **AVOIDANCE AND RECOVERY OF**
    ☒  SunCal Marblehead, LLC                      **FRAUDULENT TRANSFERS,**
27  ☒  SunCal Century City, LLC                    **11 U.S.C. §§ 544(b), 548; CAL. CIVIL**
28  ☒  SunCal PSV, LLC                             **CODE §§ 3439.04, 3439.05;**

_____
             **FOURTH AMENDED ADVERSARY PROCEEDING COMPLAINT**
617767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

1    ☒ Delta Coves Venture, LLC

      ☒ SunCal Torrance, LLC

2    ☒ SunCal Oak Knoll, LLC

5) **VOIDING LIENS, 11 U.S.C. § 506(d);**

3   **ADVERSARY PROCEEDING**

6) **DISALLOWANCE OF CLAIMS AND LIENS, 11 U.S.C. § 502(d); AND**

4

**Debtor-In-Possession Plaintiffs**

7) **PRESERVATION OF CLAIMS AND LIENS FOR DEBTORS' ESTATES, 11 U.S.C. §551**

5   PALMDALE HILLS PROPERTY, LLC, a Delaware limited liability company; SUNCAL SUMMIT

6   VALLEY, LLC, a Delaware limited liability company; SUNCAL EMERALD MEADOWS, LLC,

7   a Delaware limited liability company; SUNCAL BICKFORD RANCH, LLC, a Delaware limited

8   liability company; ACTON ESTATES, LLC, a Delaware limited liability company; SJD

9   PARTNERS, LTD., a California limited partnership; SJD DEVELOPMENT CORP., a California

10   corporation; NORTH ORANGE DEL RIO LAND, LCC, a Delaware limited liability company;

11   TESORO SF, LLC, a Delaware limited liability company; SCC COMMUNITIES, LLC, a Delaware

12   limited liability company; SUNCAL COMMUNITIES I, LLC, a Delaware limited liability

13   company; SUNCAL COMMUNITIES III, a Delaware limited liability company;

14

**Trustee Plaintiff:**

15   STEVEN SPEIER, Chapter 11 Trustee, on behalf of LB-L-SUNCAL OAK VALLEY, LLC, a Delaware

16   limited liability company; SUNCAL HEARTLAND, LLC, a Delaware limited liability company; LB-L-

17   SUNCAL NORTHLAKE, LLC, a Delaware limited liability company; SUNCAL MARBLEHEAD, LLC,

18   a Delaware limited liability company; SUNCAL CENTURY CITY, LLC, a Delaware limited liability

19   company; SUNCAL PSV, LLC, a Delaware limited liability company; DELTA COVES VENTURE,

20   LLC, a Delaware limited liability company; SUNCAL TORRANCE, LLC, a Delaware limited

21   liability company; and SUNCAL OAK KNOLL, LLC, a Delaware limited liability company,

22

23             Plaintiffs,

24   v.

25   LEHMAN ALI, INC., a Delaware corporation; OVC HOLDINGS, LLC, a Delaware limited company;

26   NORTHLAKE HOLDINGS, LLC, a Delaware limited company; LV PACIFIC POINT,

27   LLC, a Delaware limited liability company; LEHMAN RE, LTD., a Bermuda corporation;

28   FENWAY CAPITAL. LLC, a Delaware limited

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

---

        **FOURTH AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1 | liability company;

2 |          Defendants.

3 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**FOURTH AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

# TABLE OF CONTENTS

**Page**

I.   SUMMARY OF ACTION ........................................................................................ 1

II.  STATEMENT OF JURISDICTION AND VENUE ............................................. 4

III. PARTIES ............................................................................................................... 4

   A.   Plaintiffs ....................................................................................................... 4

      1.   Voluntary Debtor Plaintiffs ............................................................. 4

      2.   The Trustee, on behalf of the Trustee Debtors .............................. 5

   B.   Defendants .................................................................................................... 7

IV.  FACTUAL ALLEGATIONS ............................................................................... 8

   A.   The SunCal-Lehman Venture ..................................................................... 8

   B.   The Debtors and Projects at Issue ........................................................... 11

   C.   The Disputed Lehman Loans at Issue ..................................................... 12

   D.   Lehman ALI and LCPI Saddle the Projects with Unnecessary Excessive Debt ........ 14

   E.   Lehman ALI's and LCPI's Promises to Fund the Plaintiff Debtors' Projects ............ 16

   F.   Lehman ALI and LCPI's Imposition of Control Over the Debtors and the Projects .. 18

   G.   The Parties' Restructuring Agreement ................................................... 19

   H.   The Projects Subject to the Restructuring Agreement ......................... 22

   I.   Lehman ALI's Obligations to Fund Under the Restructuring Agreement ............ 24

   J.   Lehman ALI and LCPI Fail to Fund the Projects as Promised ........... 24

   K.   Lehman ALI, LCPI, OVC and Northlake Holdings Secretly Shuffle Their Interests in the Plaintiff Debtors' Loans ............ 26

   L.   Lehman ALI, LCPI, OVC and Northlake Holdings' Failure to Close and Continued Refusal to Fund ............ 27

   M.   Lehman ALI's Withdrawal of Badly Needed Cash from the Projects ............ 28

   N.   The Lehman Lenders' Refusal to Fund Necessitates Debtors' Bankruptcies ............ 29

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

**O.** Lehman ALI, LCPI, OVC and Northlake Holdings' Attempts to Block the Debtors' Bankruptcies ........................................................................................................29

**P.** Lehman ALI, OVC and Northlake Holdings' Manipulation of the Lehman Equity Members ........................................................................................................30

**Q.** Lehman ALI, LCPI, OVC and Northlake Holdings' Attempts to Thwart Debtors' Reorganization in Bankruptcy ........................................................................................................33

**R.** Lehman ALI, LCPI, OVC and Northlake Holdings' Concealment of their Sale of the Loans at Issue ........................................................................................................35

**S.** Lehman ALI, LCPI, OVC and Northlake Holdings' Repeated Assertion of Their "Ownership" of the Sold Loans ........................................................................................................39

    **1.** Disputed Proofs of Secured Claims Filed by Lehman ALI, LCPI, OVC and Northlake Holdings Based on the Sold Loans ........................................................................................................39

    **2.** Key Pleadings Filed By Lehman ALI, LCPI, OVC and Northlake Holdings Based On the Sold Loans ........................................................................................................40

        **a.** Stay Relief Motions ........................................................................................................40

        **b.** Opposition to Sales Procedure Motion ........................................................................................................41

**T.** LCPI's Improper Invocation of the Automatic Stay ........................................................................................................41

    **1.** New York Opposition to Priming Loan ........................................................................................................42

    **2.** Objection to Cash Collateral Motion ........................................................................................................42

    **3.** "Emergency" Motion to Enforce Stay In New York ........................................................................................................43

    **4.** Lehman ALI's Super-Priority Loan Resulting from LCPI's False Invocation of Its Stay ........................................................................................................43

    **5.** Intervention in Sales Procedures Motion ........................................................................................................44

    **6.** Stay Relief Motions ........................................................................................................45

    **7.** LCPI's Appeal from the Denial of its Stay Relief Motions ........................................................................................................45

    **8.** LCPI's Second Appeal ........................................................................................................46

**U.** Summary of Lehman ALI, LCPI, OVC and Northlake Holdings' Post-Petition Inequitable Conduct ........................................................................................................46

**V.** Lehman ALI and LV Pacific Point's Fraudulent Acquisition of the Pacific Point Project ........................................................................................................47

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400 FAX (310) 552-8400

ii

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    W.    Summary of the Disputed Claims to Be Equitably Subordinated, and the
           Associated Liens to Be Preserved for the Benefit of the Plaintiff Debtors' Estates....49

2
3    CAUSES OF ACTION ................................................................................................54

4    V.    FIRST CLAIM FOR RELIEF (Equitable Subordination, 11 U.S.C. §510(c))........................54

5    VI.   SECOND CLAIM FOR RELIEF (Fraudulent Inducement – By SJD Partners against
           LV Pacific Point) ................................................................................................61

6
7    VII.  THIRD CLAIM FOR RELIEF (To Avoid and Recover Fraudulent Transfers – 11
           U.S.C. §§ 544(b), 548, Cal. Civil Code §§ 3439.04 and 3439.05 – By SunCal Acton,
8          SunCal Bickford, SunCal Emerald, SunCal Summit, SunCal I, and SunCal III against
           Fenway; by SunCal Del Rio, SunCal Tesoro and SCC Communities, and by the
9          Trustee on behalf of SunCal Oak Knoll and SunCal Torrance, against Lehman ALI;
           and by the Trustee on behalf of SunCal Marblehead and SunCal Heartland against
10         Lehman ALI and Fenway) ................................................................................63

11   VIII. FOURTH CLAIM FOR RELIEF (To Avoid and Recover Preferential Transfers – 11
           U.S.C. § 547 – By the Trustee on behalf of SunCal Delta Coves against Lehman ALI
12         and Fenway, and on behalf of SunCal Century City against Lehman ALI) ....................69

13   IX.   FIFTH CLAIM FOR RELIEF (To Void Liens – 11 U.S.C. § 506(d) – By SunCal I
           and SunCal III against Fenway; and by SunCal Bickford against Lehman ALI)...................71
14

15   X.    SIXTH CLAIM FOR RELIEF (To Disallow Claims and Liens – 11 U.S.C. § 502(d)
           —By by SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, SunCal
16         I, and SunCal III against Fenway; by SunCal Del Rio, SunCal Tesoro and SCC
           Communities, and by the Trustee on behalf of SunCal Oak Knoll and SunCal
17         Torrance, against Lehman ALI; by the Trustee on behalf of SunCal Delta Coves,
           SunCal Marblehead and SunCal Heartland against Lehman ALI and Fenway; and by
18         the Trustee on behalf of SunCal Century City against Lehman ALI) ............................72

19   XI.   SEVENTH CLAIM FOR RELIEF (To Preserve Claims and Liens for the Respective
20         Debtors' Estates -- 11 U.S.C. §§ 551 and 541(a)(4) – Against All Defendants)..................73

21   XII.  PRAYER FOR RELIEF ..........................................................................................73

22
23
24
25
26
27
28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

61767.3

# I.

## SUMMARY OF ACTION

1.    This case is about a major Wall Street financial institution, Lehman Brothers, which—through its wholly-owned and controlled subsidiaries, defendants herein—induced the plaintiffs' creditors to render services, perform work and issue surety bonds, and then stiffed them for hundreds of millions of dollars. With this action, the plaintiffs seek relief for the benefit of those creditors.

2.    The plaintiffs herein (collectively, the "Plaintiffs" or "Plaintiff Debtors")[1] are twenty-one of twenty-six debtors ("Debtors")[2] whose bankruptcy cases have been administratively consolidated before this Court. The Debtors are all direct or indirect subsidiaries of SCC Acquisitions, Inc. ("SCC"), which is the "parent" of a group of affiliated entities known collectively as the SunCal Companies, or "SunCal." SunCal is a California-based real estate developer.

3.    The causes of action alleged herein relate to SunCal's dealings with various affiliated entities which are all wholly owned and/or controlled by the Global Real Estate Group within Lehman Brothers Holdings, Inc. ("LBHI") (collectively, "Lehman"). These affiliates include

---

[1] They are: (i) Acton Estates LLC ("SunCal Acton"), SunCal Bickford Ranch LLC ("SunCal Bickford"), SunCal Emerald Meadows LLC ("SunCal Emerald"), Palmdale Hills Property LLC ("Palmdale Hills"), SJD Partners, Ltd. ("SJD Partners"), SJD Development Corp. ("SJD Development"), SunCal Summit Valley LLC ("SunCal Summit"), SCC Communities LLC ("SCC Communities"), SunCal Communities I LLC ("SunCal I"), SunCal Communities III LLC ("SunCal III"), North Orange Del Rio Land LLC ("SunCal Del Rio"), and Tesoro SF LLC ("SunCal Tesoro") (collectively, the "Voluntary Debtor Plaintiffs or "Voluntary Plaintiffs"); and (ii) LB/L-SunCal Oak Valley LLC ("SunCal Oak Valley"), LB/L-SunCal Northlake LLC ("SunCal Northlake"), SunCal Heartland LLC ("SunCal Heartland"), SunCal Marblehead LLC ("SunCal Marblehead"), SunCal PSV LLC ("SunCal PSV"), Delta Coves Venture LLC ("SunCal Delta Coves"), SunCal Torrance LLC ("SunCal Torrance"), and SunCal Oak Knoll LLC ("SunCal Oak Knoll") (collectively, the "Trustee Debtors").

To be precise, plaintiff Steven M. Speier, the Chapter 11 trustee ("Trustee") for the nine Trustee Debtors, is authorized to bring, and does bring, the claims herein on their behalf. References to the Trustee Debtors as "Plaintiffs" are made for readability, and should be understood, where applicable, to refer to the Trustee himself.

[2] There are five administratively consolidated Voluntary Debtors that are not currently named as Plaintiffs herein, for reasons explained below. They are: SunCal Beaumont Heights LLC ("SunCal Beaumont"), SunCal Johannson Ranch LLC ("SunCal Johannson"), Seven Brothers LLC ("Seven Brothers"), Kirby Estates LLC ("Kirby"), and SCC Palmdale LLC ("SCC Palmdale").

---

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

1   defendants Lehman ALI, Inc. ("Lehman ALI"), OVC Holdings, Inc. ("OVC"), Northlake Holdings

2   LLC ("Northlake Holdings"), LV Pacific Point LLC ("LV Pacific Point"), and Lehman Re, Ltd.

3   ("Lehman Re") (collectively, the "Lehman Defendants").[3] They also include non-defendant affiliate

4   Lehman Commercial Paper, Inc. ("LCPI") (itself wholly owned by Lehman ALI).[4]

5        4.    Plaintiffs are also naming as a defendant herein Fenway Capital LLC ("Fenway"), as

6   successor to certain of the Lehman Defendants and to LCPI regarding certain loans at issue herein.

7   (Fenway is referred to collectively with the Lehman Defendants as "Defendants.").

8        5.    The Plaintiff Debtors are owners of, and/or have equity interests in other Debtors who

9   are owners of, nineteen real estate development projects located throughout California (the

10  "Projects"). As discussed in more detail below, after gaining control over the Debtors, certain of the

11  Lehman Defendants exercised that control to their own advantage, and to the detriment of the

12  Plaintiff Debtors and their creditors. They induced the Project-owning Plaintiff Debtors to incur

13  hundreds of millions dollars in debt through promises of payment—promises which they failed and

14  refused to fulfill.

15

16

---

17   [3] These affiliates also include, but are not limited to, non-defendants LBREP II/SunCal Land
18  Fund Member LLC ("LBREP II/SCLFM"), LB/L-DUC III Master LLC ("LB/L-Duc Master"),
    SCLV Northlake LLC ("SCLV Northlake"), SCLV Oak Valley LLC ("SCLV Oak Valley"), and SC
19  Master Holdings II LLC ("SC Master Holdings") (collectively, the "Lehman Equity Members").

20   [4] The claims against LCPI in the Third Amended Complaint were dismissed without
    prejudice by this Court pursuant to the Ninth Circuit Bankruptcy Appellate Panel's ruling in *Lehman
21  Commercial Paper, Inc. v. Palmdale Hills Property LLC*, BAP No. CC-09-1100-HPaMk (Dec. 15,
    2009) (the "BAP Ruling"). The BAP Ruling held that, because LCPI *may have* some interest in the
22  loans and liens at issue here, relief from stay would need to be obtained before suing LCPI.

        Plaintiffs are of the belief that the BAP ruling is irrelevant because LCPI has either sold all of
23  the loans and liens at issue, or has stipulated that its stay does not apply to them. In any event, the
    Debtors have appealed the BAP Ruling to the Ninth Circuit. If the BAP Ruling is reversed, and/or
24  relief from stay is obtained to pursue claims against LCPI, Plaintiffs reserve the right to further
    amend their complaint to re-name LCPI as a defendant.

25       LCPI was involved in much of the underlying conduct forming the basis for the causes of
    action in this complaint, and may well be named as a defendant in the future, as explained above.
26  Moreover, defendant Fenway is sued herein based on the conduct of LCPI (as well as that of
    Lehman ALI, OVC and Northlake Holdings). Accordingly, factual allegations regarding conduct by
27  LCPI remain in the complaint. However, no inference is intended to be drawn or should be drawn
    therefrom that LCPI is being or will be treated by Plaintiffs as a defendant in this action unless and
28  until the BAP Ruling is reversed and/or stay relief is obtained.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

6.    As to one Project in particular known as "Pacific Point," located in San Juan Capistrano, Defendants Lehman ALI and LV Pacific Point fraudulently induced the Project-owning Plaintiff Debtor, SJD Partners, to consent to a foreclosure and sale of the Project through their false promises of funding.

7.    Defendants' inequitable conduct has continued post-petition—including making repeated material misrepresentations to the Court and Debtors, and wasting vast amounts of the Plaintiff Debtors' time and money—to the detriment of all of the Plaintiff Debtors' creditors.

8.    Because of the Defendants' wrongdoing, not only have the Plaintiff Debtors' creditors' bills gone unpaid, the Projects themselves fell into a state of serious disarray. They have encountered erosion, problems with dust, fire control, friable asbestos, unmonitored levees and partially constructed bridges, potential flooding and other serious health and safety hazards. Defendants have refused even to pay property taxes on the Projects, resulting in significant penalties and interest which have decreased the value of the Debtors' estates. The Projects are further threatened with the loss of their governmental entitlements, which are critical to avoid disruptions in the development process and to maintain value.

9.    This lawsuit is to obtain redress for the Plaintiff Debtors' creditors by way of:

(a) equitably subordinating the Defendants' claims in the Projects;

(b) setting aside the foreclosure of the Pacific Point property and returning it to its rightful owner, SJD Partners;

(c) avoiding and recovering fraudulent and preferential transfers made to Defendants;

(d) declaring void Defendants' liens that are not supported by value; and

(e) disallowing Defendants' claims and liens, and preserving those claims and liens for the benefit of the Plaintiff Debtors' estates.

10.    This adversary proceeding is filed against defendants who are not in the bankruptcy proceedings involving LBHI in New York.

11.    Plaintiffs reserve the right to seek relief from stay to name any and all other Lehman-

3

.61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1   related entities, agents and/or individuals as defendants as necessary, and/or to name other

2   defendants as necessary, to obtain and effectuate full and complete relief for the creditors.

## II.

## STATEMENT OF JURISDICTION AND VENUE

12.    The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E), (F), (H), (K), and (O), and 1334.

13.    Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409, in that this civil proceeding arises under title 11 of the United States Code, and arises in and relates to a bankruptcy case pending in the district, and the claims alleged herein arose in this district.

14.    The causes of action alleged herein are all "core" proceedings to be heard and determined by the Bankruptcy Court pursuant to 28 U.S.C. §§ 157 and 1334(b).   To the extent that any claim is determined to be a non-core proceeding that is related to a case under title 11 under this Court's jurisdiction pursuant to 28 U.S.C. § 157(c)(1), Plaintiffs consent to an entry of final order or judgment on the non-core matters by this Court pursuant to 28 U.S.C. § 157(c)(2).

## III.

## PARTIES

*A.*    ***Plaintiffs***

   *1.*    ***Voluntary Debtor Plaintiffs***

15.    Plaintiff SunCal Acton is the owner of the "Acton Estates" Project.

16.    Plaintiff SunCal Bickford is the owner of the "Bickford Ranch" Project.

17.    Plaintiff SunCal Del Rio owns CFD bonds proceeds on the "Del Rio" Project.

18.    Plaintiff SunCal Emerald is the owner of the "Emerald Meadows" Project.

19.    Plaintiff SCC Communities is the owner of the "Joshua Ridge" Project.

20.    Plaintiff SJD Partners is the former owner of the Pacific Point Project.

21.    Plaintiff SJD Development is the holder of an interest in SJD Partners, the owner of the Pacific Point Project.

22.    Plaintiff Palmdale Hills is the owner of the "Ritter Ranch" Project.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

4

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

23.     Plaintiff SunCal Summit is the owner of certain parcels of the "Summit Valley" Project, and is the holder of interests in Debtors Seven Brothers and Kirby, the owners of certain other parcels of the Summit Valley Project.

24.     Plaintiff SunCal Tesoro is the owner of the "Tesoro Burnham" Project.

25.     Plaintiff SunCal I is the holder of interests in SunCal Acton, SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal Johannson, and SunCal Summit.

26.     Plaintiff SunCal III is associated with the Acton, "Beaumont Heights," Bickford Ranch, Emerald Meadows, "Johannson Ranch," and Summit Valley Projects.

### 2.   *The Trustee, on behalf of the Trustee Debtors*

27.     The Trustee is authorized to bring, and hereby does bring, claims on behalf of the following Trustee Debtors:

(a)     SunCal Century City, former owner of the "Century City" Project;

(b)     SunCal Torrance, owner of the "Del Amo" Project;

(c)     SunCal Delta Coves, owner of the "Delta Coves" Project;

(d)     SunCal Heartland, owner of the "Heartland" Project;

(e)     SunCal Marblehead, owner of the "Marblehead" Project;

(f)     SunCal Northlake, owner of the "Northlake" Project;

(g)     SunCal Oak Knoll, owner of the "Oak Knoll" Project;

(h)     SunCal Oak Valley, owner of the "Oak Valley" Project; and

(i)     SunCal PSV, owner of the "Palm Springs Village" Project.

28.     All of the Plaintiff Debtors are Delaware limited liability companies, except for SJD Partners, a California limited partnership, and SJD Development, a California corporation.

29.     Five of the twenty-six administratively-consolidated Debtors are not currently named as plaintiffs in this action. As to four of the Debtors, this is because none of the Defendants herein has filed proofs of claim against these Debtors, since the Defendants' loans are allegedly secured by other Debtors' interests in these Debtors, but not in property of these Debtors directly. These four Debtors are:

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

5

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    (a)    SunCal Johannson, owner of the Johannson Ranch Project;

2    (b)    SunCal Beaumont, owner of the Beaumont Heights Project;

3    (c)    Seven Brothers, owner of certain parcels of the Summit Valley Project; and

4    (d)    Kirby, owner of certain other parcels of the Summit Valley Project.

5    Plaintiffs reserve the right to amend their complaint to add these Debtors as plaintiffs in this

6    adversary proceeding, including, but not limited to, in the event that substantive consolidation is

7    granted

8        30.    The fifth non-plaintiff Debtor, SCC Palmdale, is the holder of an interest in Plaintiff

9    Debtor Palmdale Hills (itself the owner of the Ritter Ranch Project). LCPI made the $95 million

10   "SCC Palmdale Loan" to Debtor SCC Palmdale. The SCC Palmdale Loan is not currently "at issue"

11   because, unlike the other two loans made by LCPI—the SunCal Communities I Loan and the Ritter

12   Ranch Loan (described below)—it is undisputed that LCPI did not sell this loan to defendant

13   Fenway. Fenway is sued herein based on (among other things) LCPI's conduct with regard to the

14   other two LCPI Loans, but only LCPI itself could be sued with regard to the SCC Palmdale Loan.

15       31.    Plaintiffs are of the belief that suing LCPI with regard to the SCC Palmdale Loan

16   would not violate LCPI's automatic stay, because LCPI has already stipulated that its stay does not

17   apply to that Loan, as reflected in the Lehman Entities' First Amended Disclosure Statement in the

18   underlying bankruptcy proceedings [D.E. 710, at p.71].[5] However, in order to avoid any suggestion

19   that Plaintiffs are contravening this Court's ruling that LCPI cannot be named as a defendant herein

20   without obtaining relief from stay, SCC Palmdale has been removed as a named plaintiff herein.

21   Should the BAP Ruling on which the Court relied is reversed, stay relief be granted, and/or

22   substantive consolidation be granted, Plaintiffs reserve the right to amend their complaint to add

23   SCC Palmdale as a plaintiff.

24

25

26

27

---

28   [5] The Lehman Entities also represented to counsel for the Debtors that they would file the
     stipulation, but apparently have not yet done so.

6

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

**B.    *Defendants***

32.    On information and belief, Defendant Lehman ALI is a Delaware corporation with its principal place of business in New York, New York, is a wholly-owned subsidiary of the parent Lehman entity, LBHI.  Lehman ALI is not in bankruptcy.

33.    On information and belief, Defendant OVC is a Delaware limited liability company, and is a wholly-owned subsidiary of LBHI.  OVC has purported to be the assignee of Lehman ALI's loan to Plaintiff SunCal OakValley and of the associated lien on the Oak Valley Project.  It is not in bankruptcy.

34.    On information and belief, Defendant Northlake Holdings is a Delaware limited liability company, and is a wholly-owned subsidiary of LBHI.  Northlake has purported to be the assignee of Lehman ALI's loan to Plaintiff SunCal Northlake and of the associated lien on the Northlake Project. It is not in bankruptcy.

35.    OVC and Northlake are being sued both in their capacity as successors to Lehman ALI, and for their own wrongdoing.

36.    On information and belief, Defendant LV Pacific Point is a Delaware limited liability company with its principal place of business in Orange County, California, and is a wholly-owned subsidiary of LBHI.  LV Pacific Point has purported to be the assignee of Lehman ALI's interest in the second priority deed of trust on the Pacific Point Project formerly owned by Plaintiff SJD Partners and of the associated lien.  LV Pacific Point foreclosed on, and was the purchaser upon foreclosure of, the Pacific Point Project. LV Pacific Point is being sued both in its capacity as a successor to Lehman ALI, and for its own wrongdoing.

37.    On information and belief, defendant Lehman Re is a Bermuda corporation with its principal place of business in New York, New York, and is a wholly-owned subsidiary of LBHI.  On information and belief, Lehman Re is the transferee of some or all of Lehman ALI and/or LV Pacific Point's interests in the Pacific Point First and/or Pacific Point Second Loan (described below) to SJD Development and SJD Partners, and of the associated liens on the Pacific Point Project.

38.    On information and belief, Defendant Fenway is a Delaware limited liability

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

7

61767.3

1   company. Fenway is the transferee of loans to Plaintiffs SunCal Acton, SunCal Bickford, SunCal

2   Delta Coves, SunCal Emerald, SunCal Heartland, SunCal Marblehead, SunCal Northlake, SunCal

3   Oak Valley, SunCal PSV, Palmdale Hills, SunCal Summit, SunCal I and SunCal III, and of the

4   associated liens on the Acton Estates, Bickford Ranch, Delta Coves, Emerald Meadows, Heartland,

5   Marblehead, Northlake, Oak Valley, Palm Springs Village, Ritter Ranch and Summit Valley

6   Projects, and/or other assets of these Plaintiff Debtors, including SunCal I's interests in SunCal

7   Beaumont and SunCal Johannson, and SunCal Summit's interests in Seven Brothers and Kirby.

8                                   **IV.**

9                        **FACTUAL ALLEGATIONS**

10   **A.    _The SunCal-Lehman Venture_**

11          39.    SunCal is a family-owned and -operated California real estate business, and is the

12   direct or indirect parent of each of the Debtors.  SunCal is a highly-experienced and successful

13   developer in business for over 70 years.  It manages virtually all aspects of real estate development,

14   from acquiring properties and obtaining governmental entitlements to construction and build-out,

15   culminating in the sale of lots to merchant builders.  SunCal has gained an expertise in these matters,

16   and has formed relationships with many governmental entities and businesses throughout California.

17          40.    The land development process is inherently capital intensive due to the size and costs

18   of the assets being acquired, the front-loaded capital requirements, and the length of time between

19   the initial acquisition and the ultimate realization of profits.

20          41.    The acquisition and development of SunCal projects are typically financed through

21   some combination of debt, mezzanine or "mezz" debt (secured by an equity ownership interest in the

22   entity that owns the property), and/or equity contributions.

23          42.    SunCal historically financed its projects with loans and/or equity from a number of

24   different sources.  However, beginning over a decade ago, an increasing number of SunCal's

25   projects were financed by Lehman, as Mark Walsh ("Walsh"), the head of Lehman's Global Real

26   Estate Group, began cultivating a business relationship with Bruce Elieff, CEO and owner of the

27   SunCal parent entity, SCC.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

43.    In 1997, Lehman made its first investment with SunCal via a $20 million mezzanine loan to Plaintiff Debtor SJD Partners on the Pacific Point Project. As Lehman worked with SunCal on additional projects, a pattern emerged: Lehman's investments were structured with some type of participation by Lehman in the profitability of the projects, either as an equity partner, pursuant to a contingent interest loan that contains a profit participation component, or through a mezz loan with significant return.

44.    Lehman also provided debt financing on a number of SunCal projects, but typically only when Lehman was also a participant in the profitability of the project.

45.    When Lehman participated as a lender on SunCal projects, it was, with rare exceptions, always through Defendants Lehman ALI and/or LCPI.

46.    Soon after its initial investment, Lehman invested in several more projects with SunCal. Each of these early SunCal-Lehman projects proved to be highly profitable for Lehman, with some projects yielding a return on investment of over a hundred percent.

47.    Based on these results, Lehman accelerated its debt and equity participation in SunCal projects. By 2003, Lehman had partnered with SunCal on approximately fifteen projects. By 2007, that number had grown to over forty.

48.    By 2006, Lehman's distributions on its mezzanine and equity investments with SunCal exceeded its contributions by over a hundred million dollars.

49.    Lehman generated quarterly projections regarding the profitability of its investments with SunCal extending out through the year 2015. Lehman anticipated earning at least $2 billion in profits on $4 billion in debt and equity investments over the course of its relationship with SunCal. Lehman thus accelerated its debt participation further. Between 2005 and 2007, Lehman ALI and/or LCPI lent or contributed over $2 billion to the Debtors.

50.    Given Lehman's past and projected profitability, Lehman continued to seek an even closer and more exclusive relationship with SunCal. And SunCal acquiesced, allowing Lehman to take an increasing role in its Projects and finance an increased share of SunCal's business.

51.    For example, in or about 2005, SunCal allowed Lehman—at Lehman's urging—to

9

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

1    participate in $50 million in gains realized from sales in connection with the "Heritage Fields"

2    project.  This generated in excess of $22 million to Lehman, without Lehman having to make any

3    capital investment.  SunCal did so without any kind of agreement with Lehman, purely for

4    relationship purposes.

5         52.    There were other instances, such as the College Park and Summerwind projects,

6    where SunCal allowed Lehman to participate—even though others were offering more favorable

7    terms—for the sake of maintaining and building its relationship with Lehman.  (LCPI financed the

8    Summerwind project.)  Lehman pressured SunCal not to go with DE Shaw on the Century City

9    Project, even though Shaw was offering better terms.  Similarly, Lehman pressed SunCal not to use

10   Goldman Sachs on the Marblehead Project.  (Both the Century City and Marblehead Projects were

11   financed by Lehman ALI, and both are at issue in this action.)

12        53.    It was not just SunCal that brought Lehman in on projects; the partnership went both

13   ways.  Lehman brought SunCal in to develop and manage (and effectively rescue) two large projects

14   that Lehman was already involved in: Terra Lago and Delta Coves (the latter of which is at issue in

15   this suit, and was financed by debt from Lehman ALI.).

16        54.    So close was the SunCal-Lehman relationship that in 2007, Lehman even financed an

17   approximately $40 million unsecured option purchase in connection with the Delta Shores Project—

18   something that would be unheard of from a mere arm's length "lender."

19        55.    In furtherance of Lehman's desire for greater exclusivity, in August 2006, SunCal,

20   through its subsidiary SunCal Communities II, LLC ("SunCal II"), and Lehman, through its wholly-

21   owned and controlled subsidiary, LBREP II/SCLFM, entered into the Operating Agreement of the

22   Lehman SunCal Real Estate Fund LLC (the "Lehman SunCal Fund").  Lehman SunCal Fund is the

23   parent of Plaintiff Debtors SunCal Century City, SunCal Oak Knoll, SunCal Del Amo and SunCal

24   PSV, which own, respectively, the Century City, Oak Knoll, Del Amo and Palm Springs Village

25   Projects at issue in this suit.

26        56.    The purpose of the Lehman SunCal Fund agreement was to make Lehman, with

27   limited exceptions, the exclusive provider of financing for SunCal projects.  Under that agreement,

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

61767.3

1  "SunCal and its Affiliates shall make available for purchase by the Company (i.e., the Lehman

2  SunCal Fund), and the Company shall have the right of first refusal to purchase . . . all Proposed

3  Properties . . . which are sourced by or brought to SunCal . . . ."   Thus, with limited exceptions,

4  SunCal and its affiliates were prohibited from making any investments in real property not in

5  compliance with the provisions of the Fund.

6         57.    By 2007, Lehman was by far SunCal's biggest source of funding.  Sixty percent of

7  SunCal's total financing came from Lehman.  Two out of every three SunCal projects were financed

8  by Lehman.  Seventy percent of SunCal's debt financing came from loans from Lehman ALI or

9  LCPI.

10  **B.    _The Debtors and Projects at Issue_**

11         58.    Whenever Lehman ALI or LCPI provided financing for SunCal projects, the

12  respective lending entities obtained liens on each property as security for their loans, and/or obtained

13  pledges of equity interests in the SunCal-affiliated entities owning such properties.

14         59.    This lawsuit involves disputes regarding eleven Projects associated with twelve

15  Voluntary Debtor Plaintiffs ("Voluntary Projects"), and nine Projects associated with nine Trustee

16  Debtor Plaintiffs ("Trustee Projects," and collectively with the Voluntary Projects, the "Projects").[6]

17         60.    The Plaintiff Debtors, the Projects they are associated with, and the Defendants who

18  originally made the loan to each Plaintiff Debtor are as follows:

19

20

21

22

23

24

25

26

27  [6] The Voluntary Debtor Plaintiffs were able to file voluntary bankruptcies in the first
    instance, because they did not have Lehman Equity Members whose consents were required for

28  filing.  By contrast, involuntary petitions were initially filed against the Trustee Debtors, and only
    later were orders for relief entered and the Trustee appointed.

11

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400    FAX (310) 552-8400

61767.3

| VOLUNTARY DEBTOR PLAINTIFFS | | |
|---|---|---|
| **Plaintiff Debtor** | **Associated Project** | **Original Lender(s)** |
| SunCal Acton | Acton Estates | LCPI |
| SunCal Bickford | Bickford Ranch | LCPI<br>Lehman ALI |
| SunCal Del Rio | Del Rio | Lehman ALI |
| SunCal Emerald | Emerald Meadows | LCPI |
| SCC Communities | Joshua Ridge | Lehman ALI |
| SJD Partners | Pacific Point | Lehman ALI |
| SJD Development | Pacific Point | Lehman ALI |
| Palmdale Hills | Ritter Ranch | LCPI |
| SunCal Summit | Summit Valley (including parcels owned by Seven Brothers and Kirby) | LCPI |
| SunCal Tesoro | Tesoro Burnham | Lehman ALI |
| SunCal I | Acton Estates, Beaumont Heights, Bickford Ranch, Emerald Meadows, Johannson Ranch, Summit Valley | LCPI |
| SunCal III | Acton Estates, Beaumont Heights, Bickford Ranch, Emerald Meadows, Johannson Ranch, Summit Valley | LCPI |

| TRUSTEE DEBTOR PLAINTIFFS | | |
|---|---|---|
| **Plaintiff Debtor** | **Associated Project** | **Original Lender(s)** |
| SunCal Century City | Century City (10000 Santa Monica) | Lehman ALI |
| SunCal Delta Coves | Delta Coves | Lehman ALI |
| SunCal Heartland | Heartland | Lehman ALI |
| SunCal Marblehead | Marblehead | Lehman ALI |
| SunCal Northlake | Northlake | Lehman ALI |
| SunCal Oak Knoll | Oak Knoll | Lehman ALI |
| SunCal Oak Valley | Oak Valley | Lehman ALI |
| Sun Cal PSV | Palm Springs Village | Lehman ALI |
| SunCal Torrance | Del Amo | Lehman ALI |

### C.    *The Disputed Lehman Loans at Issue*

61.    The loans at issue in this lawsuit (the "Loans")[7] are as follows:

---

[7] Many of the Loans were amended one or more times in regard to the amount loaned and/or the Projects providing security for the Loans, among other things. Also, proceeds from some of the later Loans were used to pay down outstanding amounts owing on earlier Loans. Thus, the table does not necessarily reflect the total funds provided on the Projects.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL:(310) 552-4400   FAX:(310) 552-8400

61767.3

| LEHMAN LOAN | ORIGINAL LENDER | PLAINTIFF DEBTOR(S) | LOAN DATE | LOAN AMOUNT |
|---|---|---|---|---|
| Pacific Point Second Loan | Lehman ALI | SJD Partners | May 1997 | $20,000,000 |
| Bickford Second Loan | Lehman ALI | SunCal Bickford | May 25, 2005 | 30,000,000 |
| Northlake Loan | Lehman ALI | SunCal Northlake | September 9, 2005 | 100,000,000 |
| SunCal Communities I Loan | LCPI | SunCal Acton SunCal Bickford SunCal Emerald SunCal Summit SunCal I SunCal III | November 17, 2005 | 395,313,713.37 |
| Pacific Point First Loan | Lehman ALI | SJD Partners SJD Development | February 16, 2006 | 125,000,000 |
| Oak Valley Loan | Lehman ALI | SunCal Oak Valley | May 23, 2006 | 120,000,000 |
| Century City Loan | Lehman ALI | SunCal Century City | August 11, 2006 | 120,000,000 |
| Oak Knoll / Torrance Loan | Lehman ALI | SunCal Oak Knoll SunCal Torrance | November 30, 2006 | 167,700,000 |
| Ritter Ranch Loan | LCPI | Palmdale Hills | February 8, 2007 | 264,000,000 |
| PSV Loan | Lehman ALI | SunCal PSV | February 12, 2007 | 90,000,000 |
| Delta Coves Loan | Lehman ALI | SunCal Delta Coves | April 20, 2007 | 236,000,000 |
| Marblehead / Heartland Loan | Lehman ALI | SunCal Marblehead SunCal Heartland | October 6, 2007 | 316,061,300 |
| Interim Loan | Lehman ALI | SCC Communities SunCal Tesoro SunCal Del Rio | October 31, 2007 | 20,000,000 |
| TOTAL | | | | $2,004,075,013.37 |

62.   Each of the above loans is secured by an alleged first-priority deed of trust in real property owned by the respective Debtors, with the following exceptions:

(a)   The Pacific Point Second Loan is secured by an alleged second-priority deed of trust on the Pacific Point Project previously owned by Plaintiff SJD Partners.

(b)   The Bickford Second Loan is secured by an alleged second priority deed of trust on the Bickford Project owned by Plaintiff SunCal Bickford.

(c)   The SunCal Communities I Loan is secured by (1) alleged first-priority deeds of trust on the Acton Estates, Bickford Ranch, and Emerald Meadows Projects owned by Plaintiffs SunCal Acton, SunCal Bickford, and SunCal Emerald, respectively, (2) alleged pledges of Plaintiff SunCal I's interests in SunCal Acton, SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal Johannson, and SunCal Summit; and (3) alleged pledges of Plaintiff SunCal Summit's interests in Seven Brothers and Kirby.

(d)   The Pacific Point First Loan is secured by an alleged first-priority deed of trust on the Pacific Point Project previously owned by Plaintiff SJD Partners, as well as an

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

13

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

61767.3

1    alleged pledge of SJD Development's interest in Plaintiff SJD Partners.

2         (e)   The Ritter Ranch Loan is secured by an alleged first-priority deed of trust on

3    all real property and an alleged first priority lien on all personal property owned by Plaintiff

4    Palmdale Hills.

5         (f)   The Interim Loan is secured by alleged first-priority deeds of trust on the

6    Joshua Ridge and the Tesoro Burnham Projects owned by Plaintiffs SCC Communities and

7    SunCal Tesoro, respectively, and an alleged first-priority lien on the net proceeds of the Del

8    Rio CFD Bonds owned by Plaintiff SunCal Del Rio.

9    ### D.  *Lehman ALI and LCPI Saddle the Projects with Unnecessary Excessive Debt*

10      63.   In late 2005, around the same time that Lehman was negotiating to become SunCal's

11   exclusive financing partner, LCPI made the "SunCal Communities I Loan" to Plaintiffs SunCal I,

12   SunCal III, SunCal Acton, SunCal Bickford, SunCal Emerald, and SunCal Summit, the claimed

13   outstanding amount of which is $343,221,391.

14      64.   Based on the SunCal Communities I Loan, LCPI has filed identical proofs of claim

15   for $343,221,391 against the estates of Plaintiffs SunCal I, SunCal III, SunCal Acton, SunCal

16   Bickford, SunCal Emerald, and SunCal Summit.[8]

17      65.   The proceeds from the SunCal Communities I Loan Agreement were used in part to

18   fund the Acton Estates, Beaumont Heights, Bickford Ranch, Emerald Meadows, Johannson Ranch,

19

20   [8] Although Debtors SunCal Beaumont or SunCal Johannson received some of the funds from
     this Loan, LCPI did not file claims against these Debtors as it has no alleged lien on their property,
21   but rather has an alleged lien on SunCal I's interest in these Debtors. Similarly, LCPI did not file
     claims against Debtors Seven Brothers or Kirby, as it has no alleged lien on their property, but rather
22   has an alleged lien on SunCal Summit's equity interest in these Debtors. Accordingly, these four
     Debtors are not currently named as plaintiffs herein. Should the Debtors' estates be substantively
23   consolidated, Plaintiffs reserve the right to amend their complaint to add these Debtors as plaintiffs.

24      LCPI also filed a $120 million proof of secured claim against Debtor SCC Palmdale based on
     the SCC Palmdale Loan. Although this Loan was made to SCC Palmdale, and although it was
25   secured by SCC Palmdale's interest in Plaintiff Palmdale Hills, the entire Loan proceeds were used
     by LCPI to make a paydown on the SunCal Communities I Loan Agreement that did not involve
26   either SCC Palmdale or Palmdale Hills. LCPI thus burdened SCC Palmdale with $120 million in
     debt for which it got no benefit. Should the BAP Ruling on which the Court relied for dismissal of
27   LCPI be reversed, stay relief be granted, and/or substantive consolidation be granted, Plaintiffs
     reserve the right to amend their complaint to add SCC Palmdale as a plaintiff.

28

14

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    and Summit Valley Projects. However, the funds advanced under this Loan were distributed such

2    that some Debtors received a large portion of the funds, while others received little or none at all.

3        66.    Specifically, the following Plaintiffs received the following amounts: SunCal Acton

4    ($380,069); SunCal Bickford ($174,570,287); SunCal Emerald ($44,763,858); SunCal Summit

5    ($9,925,373).[9] Plaintiffs SunCal I and SunCal III each received *nothing* for their $343 million in

6    indebtedness.

7        67.    Each of these Plaintiffs was saddled with a $343 million loan obligation, even though

8    each received only a fraction of that amount, if anything. By structuring the collateral for this Loan

9    in this matter, LCPI ensured that it would enjoy a security interest in the full value of the entire pool

10   of the properties—even in a good market in which Project values may have increased. At the same

11   time, LCPI effectively shifted its credit risk to other creditors, even though neither these Plaintiffs

12   nor their other creditors obtained any benefit in exchange for bearing this additional risk.

13       68.    Lehman ALI similarly cross-collateralized several Loans among multiple Plaintiffs

14   and Projects so as to shift its credit risk to other creditors and increase its control over the Plaintiffs:

15       (a)    The Oak Knoll/Torrance Loan was cross-collateralized by the Oak Knoll

16   Project and the Del Amo Project. Lehman ALI filed identical proofs of claim arising from

17   this Loan against Plaintiffs SunCal Oak Knoll and SunCal Torrance in the amount of

18   $158,141,365. However, the loan proceeds received by SunCal Oak Knoll was only

19   $103,575,426, and by SunCal Torrance only $45,185,350.

20       (b)    The Marblehead/Heartland Loan was cross-collateralized by the Marblehead

21   Project and the Heartland Project. Lehman ALI has filed identical proofs of claim arising

22   from this Loan against Plaintiffs SunCal Heartland and SunCal Marblehead in the amount of

23   $354,325,126. However, the loan proceeds received by SunCal Marblehead was only

24   $258,843,352, and by SunCal Heartland only $49,594,848.

25       (c)    The Interim Loan was secured by alleged first-priority deeds of trust on the

26   Joshua Ridge and Tesoro Projects, and an alleged first-priority lien on the proceeds of the Del

27    

28   [9] Non-plaintiff Debtors SunCal Beaumont and SunCal Johannson received $42,030,925 and
$14,636,674, respectively.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

15

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    Rio CFD Bonds owned by SunCal Del Rio. Lehman ALI has filed identical proofs of claim

2    arising from this Loan against Plaintiffs SCC Communities, SunCal Tesoro, and SunCal Del

3    Rio in the amount of $23,795,013. However, none of the proceeds from the Interim Loan

4    were used to fund any of these Plaintiffs' Projects.

5    **E.    _Lehman ALI's and LCPI's Promises to Fund the Plaintiff Debtors' Projects_**

6        69.    For years prior to 2007, the SunCal-Lehman partnership thrived, and the parties

7    prospered in their venture together. As of the start of 2007, Lehman projected making billions in

8    profits over the ensuing years from its relationship with SunCal. However, in or about 2007, the real

9    estate market experienced a downturn, and many of the Projects declined significantly in value.

10       70.    Beginning in or about the summer of 2007, SunCal's CEO, Bruce Elieff, and its

11   President, Stephan Elieff, who were also authorized agents of each of the Plaintiff Debtors, had high-

12   level discussions with Lehman representatives—including Walsh, as well as Paul Hughson

13   ("Hughson") and Frank Gilhool ("Gilhool"), Managing Directors of Global Real Estate—to address

14   these developments.

15       71.    Each of these individuals at Lehman had both apparent and actual authority to act and

16   make representations on behalf of both Lehman ALI, in its capacity as lender to the nine Trustee

17   Debtors and Plaintiffs SunCal Bickford, SJD Partners, SJD Development, SunCal Del Rio, SCC

18   Communities, and SunCal Tesoro; and LCPI, in its capacity as the lender to SunCal Bickford and the

19   remaining Voluntary Debtor Plaintiffs. (Gilhool would later sign key agreements with SunCal and

20   the Debtors as the authorized signatory on behalf of not only LBHI, but also Lehman ALI, LCPI,

21   and other Lehman Defendants.)

22       72.    In their dealings with SunCal, Walsh and the other Lehman executives generally

23   made no distinction between the debt and equity interests, or between Projects financed by Lehman

24   ALI debt and Projects financed by LCPI debt. As the financing partner in the parties' venture,

25   Lehman would determine which Lehman entity would provide funding on which Projects, and

26   would dictate the form that the funding would take, according to whatever suited Lehman's needs.

27       73.    The SunCal principals, on behalf of the Debtors, expressed to the Lehman executives,

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   in their capacity as agents of Lehman ALI and LCPI, that Loans on the Projects were out of balance,

2   and that SunCal would not be able to finance its operations or manage the Projects without

3   assistance. SunCal suggested shutting down or at least slowing development of the Projects.

4      74.    On information and belief, it was not in Lehman ALI or LCPI's interest for SunCal to

5   discontinue development activities, even though SunCal would not be able to move forward without

6   additional funds. On information and belief, Projects with out-of-balance loans and/or slowed or

7   halted construction would be harder for Lehman ALI or LCPI to market or syndicate, and these

8   lenders' parent, LBHI, would likely be forced to report lower Project values on its books. On

9   information and belief, Lehman ALI and LCPI wanted to create the appearance that they would

10  recoup all, or a substantial portion, of their multi-billion dollar investment in the SunCal Projects, at

11  least in part to prop up LBHI's weakening stock price for the benefit of the securities markets and to

12  entice potential investors that LBHI was pursuing to fortify its own faltering finances.

13     75.    Walsh, on behalf of Lehman ALI and LCPI, instructed SunCal's Bruce Eileff not to

14  slow down or stop work. He assured SunCal and the Debtors that Lehman ALI and LCPI would

15  provide the necessary funding to pay vendors and keep development of their Projects moving

16  forward, and that they would restructure the Debtors' Loans.

17     76.    Similarly, in numerous telephone conversations between Gilhool and SunCal

18  personnel, including SCC's COO, Frank Faye ("Faye"), and its General Counsel, Bruce Cook

19  ("Cook") (who were also officers of each of the Debtors), in 2007 and 2008, Gilhool assured SunCal

20  that Lehman ALI and LCPI were committed to funding the debts and obligations of the Projects and

21  the work they directed to be performed; that funding would be forthcoming; and that SunCal and the

22  Debtors should continue to have contractors undertake work to develop and preserve the value in the

23  Projects.

24     77.    In reliance on these representations, SunCal and the Debtors continued to move

25  forward with the Projects and incurred substantial expenses in hiring contractors to maintain and/or

26  develop them and to deal with public health and safety issues.

27     78.    Substantially all of the unsecured creditor claims and mechanic's lien claims that

28

<div align="center">17</div>

<div align="center">THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT</div>

1    have been filed against each of the Plaintiff Debtors' estates are obligations that Lehman ALI or

2    LCPI authorized the Plaintiff Debtors to incur and promised to provide funding for and/or promised

3    to assume.[10] A list of the unsecured creditors that have filed proofs of claims against each of the

4    Plaintiff Debtors, and the amounts of their claims, is included in Appendix A hereto. A list of

5    mechanic lien claims filed against each of the Plaintiff Debtors, and the amounts of their claims, is

6    included in Appendix B hereto.

7    **F.    _Lehman ALI and LCPI's Imposition of Control Over the Debtors and the Projects_**

8        79.    Prior to the market downturn, Lehman afforded its partner SunCal substantial

9    discretion to use its expertise to manage development of the Projects. SunCal, primarily via the

10   Debtors, would contract with third-party vendors to perform grading, health and safety compliance,

11   construction, landscaping, and other necessary services on the Project sites, and would coordinate

12   with municipalities for easements, entitlements and other requirements to proceed with development.

13   SunCal and the Debtors would conduct periodic budget meetings with Lehman ALI and LCPI to

14   discuss anticipated expenses over the next quarter; SunCal and the Debtors would submit to Lehman

15   ALI or LCPI documentation of expenses incurred on a monthly basis; and the applicable Lehman

16   lender, Lehman ALI and/or LCPI, in the regular course would remit payment to SunCal and the

17   Debtors so that the third-party vendors could be paid.

18       80.    However, beginning in or about 2007, Lehman ALI and LCPI became much more

19   "hands on" in scrutinizing—and approving—budgets and expenses. On periodic conference calls,

20   SunCal would explain what Project payables had to be paid and what work had to be performed on

21   the Projects, and Lehman ALI or LCPI would have to give pre-authorization before any work could

22   occur or expenses be incurred. Lehman ALI and LCPI would unilaterally dictate what future work

23   would proceed, and also decided what payables were "urgent" and what other payables could be

24

25

26       [10] Pursuant to a settlement between the Trustee, on behalf of SunCal Century City, and
     former defendant Danske Bank A/S, London Branch ("Danske"), whereby Danske took ownership
27   of the Century City property and paid $5.3 million in full satisfaction of the Century City Loan and
     all claims based thereon, the Trustee is no longer pursuing a claim for equitable subordination on
28   behalf of SunCal Century City, or any other claims against Danske.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    deferred. Lehman ALI and LCPI thereby effectively took over not only financial control of the

2    respective Debtors' Projects, but ultimate management control as well.

3         81.    Lehman ALI and LCPI had not only input on, but importantly, veto power over any

4    expenditure undertaken on the Projects. Lehman ALI and LCPI thus made SunCal, the Debtors and

5    their creditors dependent on their willingness to continue financing the Projects, and so Lehman ALI

6    and LCPI were in full control of the Projects.

7         82.    Lehman ALI and LCPI also used their control to impose onerous financing terms that

8    did not benefit the Debtors.

9         83.    For example, when SunCal initially approached Lehman ALI and LCPI about the

10   Projects' financial difficulties, they assured SunCal of immediate financing to cover operating

11   expenses, starting out at the $20 to $25 million range per month, and increasing from there.

12   However, only one such loan of $20 million (the October 2007 Interim Loan from Lehman ALI) was

13   made, as what was supposed to be "quick" financing got bogged down in Lehman ALI's extensive

14   documentation.

15        84.    Moreover, Lehman ALI insisted that SunCal put up security, previously

16   unencumbered, to secure that financing, although that was not originally contemplated. In that

17   connection, SunCal put up the interests of SunCal Del Rio, SCC Communities, and SunCal Tesoro

18   in the Del Rio, Joshua Ridge and Tesoro Projects, respectively, as security for the Loan.

19        85.    In addition, at the last minute, Lehman ALI decided to specify exactly what the $20

20   million could be used for, whereas all the way through the discussions, the money was simply to

21   assist SunCal in meeting its operating expenses, as SunCal determined. Ultimately, Lehman ALI

22   kept the funds and only disbursed them after it had approved the disbursements, most of which went

23   to pay expenses of the Ritter Ranch Project, not any of SunCal Del Rio's, SCC Communities', or

24   SunCal Tesoro's encumbered Projects.

25   **G.    *The Parties' Restructuring Agreement***

26        86.    SunCal and the Debtors continued to work with the contractors and develop the

27   Projects in reliance on a promised overall "work out" or restructuring of the Projects and of the

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    Loans and/or liens held by Lehman ALI and LCPI, as well as an assumption of SCC's and Elieff's

2    indemnity liability on surety bonds covering work that had been done and was being done on the

3    Projects. (SCC and Elieff had agreed to be indemnitors on the bonds in reliance on the relationship

4    with Lehman and on the parties' mutual understanding that, although the Debtors were technically

5    the primary obligors on the bonds, Lehman ALI and LCPI were, in effect, the primary financial

6    obligors, were well aware of the work that was required by the Projects' respective municipalities to

7    be performed and bonded in order for development to proceed, and agreed to be responsible for

8    payment of that work.)

9         87.    It was contemplated as of the October 2007 Interim Loan that a restructuring

10    agreement would be entered into shortly, by no later than January or February of 2008. However,

11    implementation was again dragged out due in large part to Lehman's extensive documentation.

12         88.    In the meantime, until a restructuring agreement was entered into, Lehman ALI and

13    LCPI stopped paying vendor payables, nor would they pay any management fees of SunCal

14    Management LLC, which was managing each of the Debtors' Projects.

15         89.    As the restructuring was pushed further and further out and Lehman ALI and LCPI

16    continued to refuse to provide funding—despite their prior assurances—SunCal was effectively

17    drained of liquidity, and so the Debtors became even more desperate and more dependent on

18    Lehman ALI and LCPI financing.

19         90.    Lehman ALI and LCPI used the Debtors' vulnerability to their advantage in

20    negotiating a restructuring agreement that was tipped heavily in Lehman's favor. (They also

21    specifically exploited the fact that SCC and Bruce Elieff were indemnitors on millions of dollars

22    worth of surety bonds that covered work being done on the Debtors' Projects, including work that

23    Lehman ALI and LCPI had specifically authorized and agreed to pay for. If Lehman ALI and LCPI

24    did not pay for this work as promised, SCC, and Elieff personally, would be exposed to massive

25    bond liability. Hughson, in his capacity as an agent of, among others, Lehman ALI and LCPI,

26    directly threatened Bruce Elieff that if SunCal did not agree to what the Lehman parties wanted, they

27    would leave Elieff "hung out on the bonds.")

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

61767.3

91.    For example, Lehman had indicated that it was open to suggestions from SunCal regarding the terms of a restructuring agreement. SunCal proposed that, particularly given the long and profitable history of the parties' venture together, the restructuring should take into account a reasonable view of the values of the properties, so that Lehman ALI and LCPI would at least in part share the burden of the market downturn.

92.    In response, Lehman became irate and countered with what was essentially a take-it-or-leave-it offer. Under the counter-proposal, (1) Lehman ALI and LCPI would be paid in full for every dollar that they had invested with SunCal that had not been returned, including interest on those amounts, default interest, and penalty fees; (2) Lehman would recoup all money that it had put in as equity in certain projects; and (3) Lehman would receive a 15% return on all funds contributed (both debt and equity) until they were returned—all without regard to the value of the properties. For the most part, this is how the restructuring agreement was ultimately structured.

93.    Similarly, when the restructuring agreement was finally entered into in late May 2008, SunCal sought to have its management fees reimbursed as of February 1, 2008, the date by which the restructuring agreement should have and would have been entered into but for Lehman's delays. Lehman ALI and LCPI refused, and in fact insisted upon a waiver of all past management fees, with only management fees from May 15, 2008 onward being payable, at reduced rates.

94.    Lehman ALI and LCPI also required that SunCal pledge $33 million of its equity interest in the four Lehman SunCal Fund projects (Century City, Del Amo, Oak Knoll and Palm Springs Village) as partial consideration for Lehman ALI and LCPI's satisfaction of existing debt on the other Projects subject to the restructuring agreement. SunCal did not believe these Projects (and Palm Springs Village in particular) should have to be included as collateral to secure the restructuring of the other Projects. Instead, SunCal felt that LBREP II/SCLFM, the Lehman equity member in the Lehman SunCal Fund, should cover the Fund Projects' expenses, as there was plenty of capital yet to be called to fund the existing debts and other needs of these Projects, per the terms of the Fund's Operating Agreement. (Lehman had committed to contributing up to $600 million in equity through the Fund, but had contributed only a fraction of that amount.) But Lehman ALI and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

21

61767.3

1    LCPI insisted, and SunCal had no choice but to acquiesce.

2        95.    Finally, on May 23, 2008, SunCal and certain of the Debtors entered into an omnibus

3    "Restructuring Agreement" with LBHI, Lehman ALI and other Lehman-controlled entities. (LCPI,

4    for reasons known to Lehman ALI and LCPI, was not a signatory to the Restructuring Agreement,

5    although it was a signatory to the subsequent "Settlement Agreement" signed in August 2008.)

6    Lehman's Gilhool signed the Restructuring Agreement on behalf of each of these entities.

7        96.    The Restructuring Agreement was designed to culminate in a closing ("Closing")

8    with the parties entering into a Settlement Agreement, the form of which was attached to the

9    Restructuring Agreement. Under the Settlement Agreement, new Lehman-controlled entities (each

10    with "SCLV" in its name, for "SunCal-Lehman Venture") would take title to the properties, assume

11    Debtors' debt obligations to Lehman ALI and LCPI and assume bond obligations previously owed

12    by SunCal, Elieff and the Debtors. These SCLV entities—along with what was purported by

13    Lehman ALI and LCPI to be a substantial-net-worth Lehman-related entity—were also to provide

14    indemnifications to SunCal and the Debtors. The Settlement Agreement was signed by the SunCal

15    and Lehman parties on August 25, 2008. But as explained below, the Lehman parties did not close.

16    **H.    _The Projects Subject to the Restructuring Agreement_**

17        97.    As originally executed in May 2008, the Restructuring Agreement applied to twelve

18    of the twenty Projects (as well as several other projects not at issue in this lawsuit): (1) Acton

19    Estates; (2) Beaumont Heights; (3) Bickford Ranch; (4) Emerald Meadows; (5) Heartland; (6)

20    Johannson Ranch; (7) Marblehead; (8) Northlake; (9) Oak Valley; (10) Pacific Point; (11) Ritter

21    Ranch; and (12) Summit Valley. The Plaintiff Debtors that owned and/or held equity interests in the

22    owners of these Projects were signatories to the May 2008 agreement.[11]

23

24    _____

        [11] Specifically, the Restructuring Agreement was entered into by, among others, the
25    "Borrowers," "Grantors" and "Pledgors," as defined in Annex 1 thereto. The "Borrowers" included
      Plaintiffs SunCal Marblehead, SunCal Heartland, SunCal Northlake, SunCal Oak Valley, SJD
26    Partners, Palmdale Hills, SunCal I, SunCal III, and SunCal Bickford.
        The "Grantors" included Plaintiffs SunCal Marblehead, SunCal Heartland, SunCal
27    Northlake, SunCal Oak Valley, SJD Partners, Palmdale Hills, SunCal Bickford, SunCal Acton,
      SunCal Summit and SunCal Emerald, and Debtors SunCal Beaumont and SunCal Johannson.
28        The "Pledgors" included Plaintiffs SunCal I, SunCal Summit and SJD Development.

22

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

61767.3

98.    Between May and August 2008, four additional projects were added to the Restructuring Agreement by agreement of the parties: (1) Del Rio; (2) Joshua Ridge; (3) Palm Springs Village; and (4) Tesoro Burnham. Accordingly, the Plaintiffs associated with these Projects—SunCal Del Rio, SCC Communities, SunCal PSV, and SunCal Tesoro—became parties to the Restructuring Agreement as amended. These Plaintiff Debtors were signatories to the August 25, 2008 Settlement Agreement, along with the Debtors associated with the original twelve Projects, as "Borrowers" and/or "Grantors."

99.    Lehman ALI at first held the Delta Coves Project out from the Restructuring Agreement, apparently because of the problems it was having with a separate participant in that Project. But later in the summer, Lehman ALI indicated that it wanted that Project added as well. SunCal and SunCal Delta Coves provided Lehman ALI information as to management fees, budgets, and the like with respect to that Project being part of the restructuring. But Delta Coves was not formally added to the Restructuring or Settlement Agreement by the time that the parent Lehman entity, LBHI, filed for bankruptcy and Lehman ALI, LCPI and the other Lehman entities stopped moving forward with Closing.

100.    Thus, four Projects were not formally added to the Restructuring Agreement— Century City, Delta Coves, Oak Knoll and Del Amo; and the four Debtors associated with these Projects—SunCal Century City, SunCal Delta Coves, Suncal Oak Knoll and SunCal Torrance— were not signatories to the Settlement Agreement. Lehman ALI was the lender on each of these Projects, three of which were part of the Lehman SunCal Fund.

101.    However, even as to these four Projects, Lehman ALI engaged in the same course of conduct that it had regarding the other Projects regarding representations of funding. Lehman ALI encouraged SunCal and these four Plaintiff Debtors to continue developing these Projects, and made assurances of payment. Later, Lehman ALI approved all expenses, told these Plaintiffs what work to move forward with, and promised it would pay for such work. These Plaintiffs performed substantial work and incurred millions in third-party debt in reliance on Lehman ALI's promises of payment.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

23

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

I.    *Lehman ALI's Obligations to Fund Under the Restructuring Agreement*

102.    Pursuant to the Restructuring Agreement, Lehman ALI, "as the Lender with respect to each Loan," committed, among other things, to: (1) make advances under existing loans to fund the continuing costs necessary to preserve the value of the Projects; (2) move forward to resolve the accrued outstanding subcontractor payables, i.e., to make sure that the Projects' creditors were paid for their work; and (3) to Close the transaction, whereby related Lehman entities would assume the debt and obligations of the Projects.

103.    SunCal and the Plaintiff Debtors signed the Restructuring Agreement with Lehman ALI with the understanding that Lehman ALI was by that point the entity that held the various first trust deeds and/or pledged interests on all of the Projects subject to the Restructuring Agreement, and that this was the reason why Lehman ALI, and not LCPI, was the signatory as "Lender."

104.    In any event, even after the Restructuring Agreement was signed, Lehman continued to make no distinction between LCPI-financed Projects and Lehman ALI-financed projects, and continued promises of financing emanated from the same Lehman representatives.

105.    SunCal and the Debtors believed and relied on Lehman ALI's and LCPI's promises to maintain the long-term value of the Projects and that Lehman ALI and LCPI intended to act in good faith to continue with those Projects.

106.    And it appeared—at least for a short while—that might be the case. Lehman ALI arranged for a third party, Radco, to settle outstanding contractor payables. On information and belief, Radco was provided some limited funding and authority to negotiate settlements, and did in fact do so with some creditors. (Funding for settlements on Lehman ALI- and LCPI-funded Projects came from the same source—loan proceeds from Lehman.) Lehman ALI and LCPI also provided approval for new work on the Projects, and Lehman ALI provided payment for some of it. But this funding was minimal and soon stopped.

J.    *Lehman ALI and LCPI Fail to Fund the Projects as Promised*

107.    In the summer of 2008, SunCal and the Debtors were unaware that Lehman was facing a looming financial crisis or that an LBHI bankruptcy was impending. However, Lehman's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    concealed liquidity problems were impacting Lehman ALI's and LCPI's conduct.

2        108.    About a month prior to LBHI filing for bankruptcy in September 2008, Lehman ALI

3    withdrew funding and settlement authority from Radco, and so halted the process of resolving

4    millions of dollars of outstanding contractor payables on the Projects subject to the Restructuring

5    Agreement. This was work that Lehman ALI and/or LCPI had previously authorized and directed

6    SunCal to undertake, but that Lehman ALI later refused to pay for. The contractors would not

7    perform new work unless they received payment for work already done. The halting of Radco's

8    efforts further impeded development of the Projects and also impeded Plaintiffs' ability to deal with

9    public health and safety issues. Radco ultimately ended up resolving only a fraction of the total

10    outstanding payables.

11        109.    On information and belief, Lehman ALI arranged for these negotiations to occur at

12    least in part so it could maintain the appearance that the Projects would be funded and their value

13    maintained, so that LBHI would not have to write-down the Projects' values on its balance sheet.

14        110.    Even as Lehman ALI was pulling back Radco's authority to fund, Lehman ALI's and

15    LCPI's Gilhool continued to assure SunCal personnel, including Faye and Cook, that Lehman ALI

16    and LCPI were committed to funding the Project obligations and paying for lender-authorized work,

17    that the funds were coming, and that SunCal and the Debtors should continue work on the Projects.

18        111.    Lehman ALI also failed to provide the funding promised on the four Projects that

19    were not made part of the Restructuring Agreement.

20        112.    At an August 25, 2008 meeting to sign closing documents for the Restructuring

21    Agreement held in Los Angeles—just days after most of the Loans and associated liens had secretly

22    been sold to Fenway—the Lehman parties announced that they wanted to push the Closing date out

23    another month to September 30, 2008, ostensibly in order to obtain a few additional (and easily

24    obtainable) third party consents. SunCal, still believing that the Lehman parties owned the Loans

25    and were acting in good faith, agreed to the extension to September 30, 2008.

26        113.    Cook, among others, on behalf of SunCal and the Debtors, and Gilhool, on behalf of

27    Lehman ALI, LCPI, and the other Lehman parties, signed hundreds of pages of settlement

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

25

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1   documents at the August 25 meeting, including the Settlement Agreement itself. Specifically,

2   Gilhool signed the settlement documents on behalf of, among others, OVC and Northlake

3   Holdings—Lehman affiliates that had apparently been assigned the Oak Valley and Northlake Loans

4   and associated liens at some point after the Restructuring Agreement was entered into. OVC and

5   Northlake Holdings were controlled and represented by the same individuals within Lehman that

6   represented and controlled Lehman ALI. These Lehman entities succeeded to Lehman ALI's

7   respective obligations to Plaintiffs SunCal Oak Valley and SunCal Northlake.

8        114.   Weil, Gotshal & Manges, the attorneys for Lehman ALI, LCPI, OVC and Northlake

9   Holdings (and who are also their bankruptcy counsel), took all of the original signed settlement

10   documents with them, claiming that they would provide copies to SunCal and the Debtors and that

11   the Closing would occur shortly thereafter. (Despite months of requests, Lehman ALI, LCPI, OVC

12   and Northlake Holdings only recently produced these signature pages in response to formal

13   discovery requests.)

**K.**     _Lehman ALI, LCPI, OVC and Northlake Holdings Secretly Shuffle Their Interests in the_
      _Plaintiff Debtors' Loans_

16        115.   As discussed in more detail below, unbeknownst to SunCal or the Debtors at the time,

17   on or just prior to August 22, 2008—days before Lehman ALI, LCPI, OVC and Northlake Holdings

18   signed the Settlement Agreement and related documents that were to culminate in Closing—Lehman

19   ALI transferred a number of its Loans and liens on the Projects to LCPI. OVC and Northlake

20   apparently likewise transferred the Oak Valley and Northlake Loans and associated liens,

21   respectively, to LCPI.

22        116.   LCPI immediately turned around and sold all of its interest in those Loans and liens

23   to a third party, Fenway, pursuant to an August 22, 2008 repurchase agreement, or "Repo."[12]

24   Lehman ALI, LCPI, OVC and Northlake Holdings did not disclose to SunCal or the Debtors that

---

[12] A standard Repo consists of a two-part transaction. The first part consists of the transfer of specified property by one party, the seller, to another party, the buyer, in exchange for cash. The second part consists of the contemporaneous agreement by the seller to repurchase the property at the original price, plus an agreed upon amount of interest, on a specified future date.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-4400

26

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    they were selling to third parties the very obligations they were supposedly about to assume and

2    restructure.  On information and belief, LCPI and Fenway entered into this transaction as part of a

3    larger series of transactions designed to inject badly needed liquidity into the Lehman corporate

4    structure, while making it appear that this liquidity was secured by something other than the Loans

5    themselves.

6    **L.    _Lehman ALI, LCPI, OVC and Northlake Holdings' Failure to Close and Continued_**

7    **_Refusal to Fund_**

8        117.    On information and belief, the additional third-party consents required for Closing of

9    the Restructuring Agreement and Settlement Agreement had been obtained (or could have been but

10   for the Lehman parties' refusal to pursue them in good faith) by about the first week of September

11   2008, and thus all conditions precedent to closing had been met.  Yet Lehman ALI, LCPI, OVC and

12   Northlake Holdings and the other Lehman entities took no steps to proceed with Closing.

13       118.    On September 15, 2008, LBHI filed a voluntary petition in bankruptcy court in the

14   Southern District of New York.  Notwithstanding the bankruptcy, Gilhool was still assuring SunCal

15   and the Debtors that Lehman ALI, LCPI, OVC and Northlake Holdings would continue to fund the

16   Plaintiff Debtors' respective Projects so as to avoid harm and damage to them and to ensure that

17   Plaintiffs' creditors were paid.

18       119.    As the end of September approached, SunCal and the Debtors became greatly

19   concerned that Lehman ALI, LCPI, OVC, Northlake Holdings and the other Lehman parties were

20   still not doing anything to facilitate closing.  On September 29, 2008, counsel for SunCal and the

21   Debtors sent Weil Gotshal a notice indicating that they were prepared to close, and that all

22   conditions precedent to Closing had been satisfied.  Lehman ALI, LCPI, OVC and Northlake

23   Holdings did not provide a definitive response for weeks.

24       120.    In the meantime, the Projects required work.  Even if no new construction or

25   development was to be undertaken, significant sums had to be spent on site security, erosion

26   prevention, property taxes and other measures in order to prevent the Projects from becoming a

27   public safety hazard, and in order to prevent losing valuable entitlements, accruing penalties and

28

1    fines, and other losses to the Projects.

2        121.    SunCal and the Debtors repeatedly requested that Lehman ALI, LCPI, OVC and

3    Northlake Holdings provide funding to pay for critical health and safety and value preservation

4    measures on the Projects. Between October 9 and November 4, 2008, SunCal's general counsel

5    Cook sent Robert Brusco, an authorized agent of Lehman ALI, LCPI, OVC and Northlake Holdings,

6    nearly two dozen letters practically begging them to provide promised funding to address critical

7    needs on the Projects as promised.

8        122.    These letters raised issues such as potential and/or actual public exposure to asbestos,

9    flooding, wind damage, looters and vandals, soil erosion and wildfires, in addition to demands from

10    third-party vendors for payment for services and threats to discontinue service. Cook's letters

11    attached reports from governmental inspectors, and photographs documenting site conditions that

12    posed a threat to public safety or that could subject the Projects to fines and penalties. Cook's letters

13    were in addition to the myriad of correspondence, from employees of SunCal and the Debtors who

14    were working on the Projects to Lehman ALI, LCPI, OVC and Northlake Holdings employees,

15    requesting payment for previously approved payables or funding for other particular urgent needs.

16        123.    Despite Lehman ALI, LCPI, OVC and Northlake Holdings' assurances of their intent

17    to proceed with funding the Projects, the Debtors' request that Lehman ALI, LCPI, OVC and

18    Northlake Holdings address their critical financial needs fell on deaf ears. Lehman ALI, LCPI, OVC

19    and Northlake Holdings repeatedly requested detailed budgets regarding the needs of the Projects,

20    reinforcing the impression that they were willing and able to fund—budgets which SunCal and the

21    Debtors repeatedly and promptly provided. Lehman ALI, LCPI, OVC and Northlake Holdings

22    repeatedly promised the funding would be forthcoming. But the funds never materialized. In

23    November 2008, Brusco, on behalf of Lehman ALI, LCPI, OVC and Northlake Holdings, delivered

24    a message that these Lehman lenders were unwilling to fund the Projects and that they intended to

25    foreclose on all of the Projects.

26    **M.    _Lehman ALI's Withdrawal of Badly Needed Cash from the Projects_**

27        124.    At the same time that Lehman ALI, LCPI, OVC and Northlake Holdings were

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
Tel: (310) 552-4400   Fax: (310) 552-8400

28

61767.3

1  stringing SunCal along, promising that funding would be forthcoming but refusing to provide it,

2  Lehman ALI was also secretly stripping the Projects of cash.

3      125.    SunCal Marblehead Heartland LLC, the parent of Debtors SunCal Marblehead and

4  SunCal Heartland, held approximately $3.4 million in two restricted accounts that were to be used

5  for the needs of the Marblehead and Heartland Projects. Unbeknownst to Debtors, in or about late

6  October or early November 2008—precisely when the Debtors were begging that Lehman ALI

7  provide promised funding—Lehman ALI withdrew the money in those accounts, and then closed the

8  accounts. SunCal Marblehead and Heartland did not learn about the withdrawal or account closures

9  until they requested updated bank statements from the financial institution holding the accounts.

10  **N.**    *The Lehman Lenders' Refusal to Fund Necessitates Debtors' Bankruptcies*

11      126.    In late October 2008, SunCal indicated to Lehman ALI, LCPI, OVC and Northlake

12  Holdings that if they continued to refuse to provide critical funding, the Debtors associated with the

13  Projects would have no choice but to file for bankruptcy.

14      127.    Finally, with creditor demands, fines and penalties and other expenses mounting, and

15  no financial assistance forthcoming from Lehman ALI, LCPI, OVC or Northlake Holdings, the

16  Voluntary Debtors filed for bankruptcy on November 6, 7, and 19, 2008. When the Lehman Equity

17  Members in the Trustee Debtors refused to provide consents to the Trustee Debtors' voluntary

18  Chapter 11 filings, certain creditors filed involuntary petitions against them beginning on

19  November 12, 2008.

20      128.    There are now over 230 vendors and bonding companies claiming over $365 million

21  in work and improvements that they provided on the Projects or are required to have performed. (A

22  list of the unsecured creditors can be found at Appendix A, and mechanic lien claimants at Appendix

23  B.) Substantially all of these sums are due to work done or bonded at Lehman ALI, LCPI, OVC

24  and/or Northlake Holdings' behest, which they subsequently failed to pay for as promised.

25  **O.**    *Lehman ALI, LCPI, OVC and Northlake Holdings' Attempts to Block the Debtors'*

26      *Bankruptcies*

27      129.    Lehman ALI, LCPI, OVC and Northlake Holdings responded to the initial SunCal

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

29

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    bankruptcies with a flurry of activity to try to foreclose on the Projects and avoid their obligations to

2    Debtors' creditors.

3        130.    On November 12, the same day as the first of the SunCal involuntary bankruptcy

4    filings, Lehman ALI rushed to improperly record notices of default against five Projects—Century

5    City, Torrance, Palm Springs Village, Oak Knoll and Delta Coves—that were not yet in bankruptcy.

6    Even aside from disputing the merits of the claimed defaults, these recordings were improper

7    because no prior notice of default had been sent out, the contents of the notices were inadequate, and

8    no opportunity was given to the equity members in these Projects to make contributions to avoid any

9    default.

10        131.    On November 13, 2008, Lehman ALI, LCPI, OVC and Northlake sent SunCal and

11    the Debtors a letter repudiating the Restructuring and Settlement Agreement and their prior promises

12    of continued funding.

13    **P.**    ***Lehman ALI, OVC and Northlake Holdings' Manipulation of the Lehman Equity***

14        ***Members***

15        132.    On information and belief, Lehman ALI, and OVC and Northlake Holdings as

16    successors to Lehman ALI's role as lender to SunCal Oak Valley and SunCal Northlake, also used

17    their control over the Lehman Equity Members in the nine Trustee Debtors to promote the lenders'

18    interests at the expense of the Trustee Debtors or their creditors.

19        133.    For each of the nine Trustee Projects, Lehman held an equity interest through a

20    (nominally) separate Lehman Equity Member in addition to extending a loan through Lehman ALI.

21    A SunCal equity member and Lehman Equity Member were either members in the Trustee Debtor

22    directly, or in the parent entity that wholly owned the Trustee Debtor, as follows[13]:

23    

24        [13] For Marblehead and Heartland, the SunCal and Lehman Equity Members were members in

25    the "grandparent" (which wholly owned the parent entity that wholly owned the Debtors):

| Project | Debtor | Parent Entity | Grandparent Entity | SunCal Equity Member in Grandparent | Lehman Equity Member in Grandparent |
|---------|--------|---------------|--------------------|--------------------------------------|--------------------------------------|
| Heartland | SunCal Heartland | SunCal Marblehead Heartland LLC | SunCal Master JV LLC | SCC JV Ventures LLC | SC Master Holdings |
| Marblehead | SunCal Marblehead | SunCal Marblehead Heartland LLC | SunCal Master JV LLC | SCC JV Ventures LLC | SC Master Holdings |

<div align="center">30</div>

<div align="center">THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT</div>

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

| Project | Debtor | Parent Entity | SunCal Equity Member In Debtor (or Parent) | Lehman Equity Member In Debtor (or Parent) |
|---------|--------|---------------|---------------------------------------------|---------------------------------------------|
| Century City | SunCal Century City | Lehman SunCal Fund | SunCal II | LBREP II/SCLFM |
| Delta Coves | Suncal Delta Coves | Delta Coves Master JV LLC | SunCal Delta Coves LLC | LB/L-DUC Master |
| Northlake | SunCal Northlake | N/A | SCC/Northlake, LLC | SCLV Northlake |
| Oak Knoll | SunCal Oak Knoll | Lehman SunCal Fund | SunCal II | LBREP II/SCLFM |
| Oak Valley | SunCal Oak Valley | N/A | SCC/Oak Valley, LLC | SCLV Oak Valley |
| Palm Springs Village | SunCal PSV | Lehman SunCal Fund | SunCal II | LBREP II/SCLFM |
| Torrance (Del Amo) | SunCal Torrance | Lehman SunCal Fund | SunCal II | LBREP II/SCLFM |

134.    For Oak Valley and Northlake, the applicable Lehman Equity Members ostensibly had management and control over the Debtors, SunCal Oak Valley and SunCal Northlake, including control over whether to file for bankruptcy. For the other Trustee Projects, the Debtors could not file for bankruptcy without the consent of the respective Lehman Equity Members, which refused to provide such consent. Accordingly, all of the Trustee Projects were initiated as involuntary bankruptcies (on November 12, 14, and 19, 2008).

135.    While Lehman ALI, OVC and Northlake Holdings left the Trustee Debtors no viable alternative to bankruptcy with their refusals to fund, the Lehman Equity Members, for their part, sat by silently and did nothing to try to prevent the Lehman lenders from foreclosing. They did not contribute penny one. This is particularly galling as it relates to the Lehman SunCal Fund Projects, because under the parties' operating agreement, the Lehman Equity Member on these Projects, LBREP II/SCLFM, had a capital commitment obligation for $600 million, which it never came close to satisfying.

136.    On November 18, 2008, after creditors of some of the Trustee Projects filed involuntary petitions in order to stay foreclosure proceedings on the Projects, the Lehman Equity Members sent the Trustee Debtors (or their parents)[14] virtually identical letters stating that the

SC Master Holdings transferred its equity interest in SunCal Master JV LLC to SCC JV Ventures LLC in May 2009. The allegations of insider status against Lehman ALI via its affiliation with and/or control of the Lehman Equity Members extend to SC Master Holdings as well, but the other allegations regarding the Lehman Equity Members' breaches of their fiduciary duties do not.

[14] Specifically, SCLV/Northlake sent its letter to Plaintiff Debtor SunCal Northlake regarding the Northlake Project; SCLV/Oak Valley LLC sent its letter to Plaintiff Debtor SunCal Oak Valley

31

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
Tel: (310) 552-4400    Fax: (310) 552-8400

1    SunCal equity members had no authority to consent to an order for relief from stay, nor make any

2    decision on behalf of the Trustee Debtors.

3        137.    The same parties within Lehman that controlled Lehman ALI, OVC and Northlake

4    Holdings—Walsh and his associates within the Global Real Estate Group—had and exercised

5    complete control over the Lehman Equity Members as well. The Lehman lenders' control of the

6    Lehman Equity Members did not cease when the parent Lehman entity, LBHI, filed for bankruptcy

7    in September 2008; the only thing that changed was the identity of the individuals running the show.

8        138.    After declaring bankruptcy, LBHI's leadership was taken over by its "restructuring

9    consultants," Alvarez & Marsal ("A & M"). A & M is in control not only of bankrupt Lehman

10    entities such as LBHI and LCPI, but also the non-bankrupt Lehman lenders (Lehman ALI, OVC, and

11    Northlake Holdings), as well as the non-bankrupt Lehman Equity Members.

12        139.    Thus, when Lehman repudiated the Restructuring Agreement on November 12, 2008,

13    it did so on behalf of LCPI and non-bankrupt Lehman ALI, OVC and Northlake Holdings in a letter

14    by Gerald Pietroforte, one of two "Key A & M Contacts" in charge of Lehman's Real Estate "Asset

15    Recovery Plan, Dispositions, and Pledged Collateral Issues."

16        140.    Similarly, on November 18, 2008, A & M's Jeff Fitts—the other "Key A & M

17    Contact"—sent the letters on behalf of each of the Lehman Equity Members refusing to consent to

18    voluntary bankruptcy filings by the Trustee Debtors.

19        141.    On information and belief, A & M and its asset recovery professionals involved in the

20    Lehman-SunCal projects, Messrs. Fitts and Pietroforte, do not have in-depth hands-on experience or

21    expertise in developing large-scale master-planned residential communities, as are involved here.

22    On the other hand, SunCal and its cadre of experienced land development professionals have a very

23    high level of expertise and experience based on many years and literally thousands of hours—

24    including on the Projects at issue in this case.

25

26

27    regarding the Oak Valley Project; LBREP II/SCLFM sent its letter to SunCal II regarding the
       Century City, Del Amo, and Palm Springs Village Projects; and LB/L-DUC Master sent its letter to
28    SunCal Delta Coves LLC regarding the Delta Coves Project.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

61767.3

142.    Common sense and fiduciary duties require the Lehman Equity Members and their asset recovery professionals to pursue the course of action best suited to enhancing the value of the Projects and maximizing the recovery to creditors. Instead, on information and belief, A & M is seeking to oust the Debtors and take over ongoing Projects—without paying for the millions in work that the Lehman ALI, LCPI, OVC and Northlake Holdings induced—and then trying to "re-invent the wheel," not only to churn fees for itself, but also to retain any upside in the Projects for itself at the expense of creditors.

143.    The Lehman Equity Members are using their control of the joint SunCal/Lehman Trustee Debtors not to benefit those entities or the Projects they represent, or to meet fiduciary duties to creditors, but solely to facilitate the interests of Lehman ALI, OVC and Northlake Holdings to effectuate foreclosures and avoid their obligations to creditors, and the interests of A & M itself.

## Q.    *Lehman ALI, LCPI, OVC and Northlake Holdings' Attempts to Thwart Debtors' Reorganization in Bankruptcy*

144.    Once their efforts to prevent the Debtors from filing for bankruptcy failed, Lehman ALI, LCPI, OVC and Northlake Holdings tried everything in their power to delay and hinder the maintenance of value in the Projects or the successful reorganization of the respective Debtors. The goal of these actions was to ensure that there would be no option other than a foreclosure by Lehman ALI, LCPI, OVC and Northlake Holdings, leaving nothing for the unsecured creditors who were induced to provide goods and services for the Projects, or to guarantee such goods and services, by these Lehman lenders.

145.    As for LCPI, the only one of these four entities that is in bankruptcy, it has fraudulently and deceitfully invoked its own automatic stay to try to impede the bankruptcies of Plaintiff Debtors Palmdale Hills, SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, SunCal I and SunCal III (as well as Debtors SunCal Beaumont, SunCal Johannson and SCC Palmdale).

146.    These defendants' actions have delayed recovery to the Debtors' respective creditors, increased the claims against the Debtors' estates, increased the cost of administering their

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

33

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    bankruptcies, and jeopardized the value of the Debtors' principal assets—the Projects themselves.

2       147.    The following is a summary of some of the more significant actions Lehman ALI,

3    LCPI, OVC and Northlake Holdings have taken to impede the Debtors' bankruptcies:

4       148.    LCPI filed for bankruptcy in the Southern District of New York on October 5, 2008.

5    In November 2008, LCPI refused to consent to (and subsequently opposed a motion seeking) relief

6    from its automatic stay to allow the Debtors to, among other things, obtain a priming loan to pay

7    creditors or preserve value in the Projects (even though it did not own the relevant loans).

8       149.    In January 2009, Debtors Palmdale Hills, SunCal Acton, SunCal Beaumont, SunCal

9    Bickford, SunCal Emerald, SunCal Johannson, and SunCal Summit filed a motion to use cash

10   collateral for their Projects' critical needs (the "Cash Collateral Motion"). Lehman ALI and LCPI

11   objected to the Cash Collateral Motion, and LCPI again (falsely) invoked its automatic stay. In

12   response, these Debtors took the motion off calendar.

13      150.    Around the same time, LCPI moved for relief from stay in the bankruptcy

14   proceedings of Plaintiff Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit,

15   Palmdale Hills, SCC Palmdale and SunCal I (and non-plaintiff Debtor SCC Palmdale) to foreclose

16   on the SunCal Communities I Loan, Ritter Ranch Loan and SCC Palmdale Loan; and Lehman ALI

17   moved for relief from stay in the bankruptcy of SunCal Bickford to foreclose on the Bickford

18   Second Loan (collectively, the "Stay Relief Motions"). Ironically, LCPI and Lehman ALI argued

19   that they should be permitted to foreclose because of, among other things, Debtors' inability to

20   preserve value in the Projects. LCPI also argued that these Debtors could not defend against its Stay

21   Relief Motions, because its own purported automatic stay prevented them from seeking to equitably

22   subordinate LCPI's claims.

23      151.    In February 2009, Lehman ALI, OVC and Northlake Holdings opposed the "Sales

24   Procedures Motion" brought by SCC Communities, SunCal Del Rio, SunCal Tesoro, and the

25   Trustee, which sought an order approving overbid procedures relating to the proposed sale of the

26   Joshua Ridge, Del Rio, Tesoro Burnham, and nine Trustee Projects to D.E. Shaw. (That motion was

27   since amended to include only the sale of the Trustee Debtors' nine properties.)

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400    FAX (310) 552-8400

34
**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

152.   In March 2009, LCPI asserted—both before this Court and in New York—that the Sales Procedures Motion violated its automatic stay.  LCPI also appealed the orders denying its Stay Relief Motions and holding that the Sales Procedures Motion did not violate LCPI's automatic stay, thus forcing the Debtors to incur the time and cost of defending those rulings before the Ninth Circuit Bankruptcy Appellate Panel.

153.   The irony is, many of the actions that Lehman ALI, LCPI, OVC and Northlake Holdings took to hinder or delay the progress of the Debtors' bankruptcy proceedings were based on lies: their continued ownership of each of the Loans at issue and the applicability of LCPI's stay.

**R.     _Lehman ALI, LCPI, OVC and Northlake Holdings' Concealment of their Sale of the Loans at Issue_**

154.   Lehman ALI, LCPI, OVC and Northlake Holdings filed proofs of claims in the Debtors' bankruptcy proceedings, and have continuously represented that they owned the obligations set forth in the Loans and, consequently, that they are "creditors" of the Debtors. The Debtors did not question the veracity of this representation—until Danske appeared before the Court on March 25, 2009 and disclosed that it held all right, title and interest in the $120 million Century City Loan to SunCal Century City and the associated lien, pursuant to an assignment from Lehman ALI. Prior to this appearance, Lehman ALI, LCPI, OVC and Northlake Holdings had been contending that they, collectively, were the holders of all of the Loans, including the Century City Loan.

155.   Based upon this disclosure, the Debtors requested, by letter of March 26, 2009, that Lehman ALI, LCPI, OVC and Northlake Holdings disclose whether any of the remaining Loans had been transferred to third parties. Lehman ALI, LCPI, OVC and Northlake Holdings ignored this request for several weeks, and only responded after the Debtors had propounded a third-party subpoena on J.P. Morgan (who they believed may have been the transferee of various Loans) noticed for April 17, 2009.

156.   In a letter dated April 15, 2009, Lehman ALI, LCPI, OVC and Northlake Holdings finally admitted that the Loans secured by liens against no less than fifteen out of the twenty

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

35

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

Projects[15] were subject to Repos; they further admitted that the "various counterparties" to these agreements (primarily Fenway and/or J.P. Morgan) "may claim some interest" in these Loans. However, Lehman ALI, LCPI, OVC and Northlake Holdings did not disclose what "interest" these counterparties "may claim," and they did not provide the Debtors any of the documentation relating to these claimed interests.

157.    It was not until J.P. Morgan produced documents in response to the subpoena on April 28, 2009 that the Debtors obtained confirmation of what was only hinted at in Lehman ALI, LCPI, OVC and Northlake Holdings' April 15 letter—that these Lehman lenders relinquished all right, title and interest in the seven "Sold Loans" (defined below) prior to the Debtors' petition dates.[16]

158.    The documents produced in discovery revealed that on August 22, 2008, Fenway, as "Buyer," and LCPI, as "Seller," entered into a *Master Repurchase Agreement* (the "MRA"). On the same date, the parties entered into a repurchase transaction pursuant to which Fenway purchased all of LCPI's right, title and interest in the following loans (together, the "Sold Loans"):

| Loan | Purported Lender | Alleged Balance |
|---|---|---|
| SunCal Communities I Loan | LCPI | $343,221,391 |
| Ritter Ranch Loan | LCPI | $287,252,096 |
| SunCal PSV Loan | Lehman ALI | $88,257,340 |
| Delta Coves Loan | Lehman ALI | $206,023,142 |
| Marblehead/ Heartland Loan | Lehman ALI | $354,325,126 |
| Oak Valley Loan | OVC | $141,630,092 |
| Northlake Loan | Northlake Holdings | $123,654,777 |
| **TOTAL** | | **$1,544,363,964** |

159.    This repurchase transaction was governed by the terms of the MRA, which states: "All of Seller's interest in the Purchased Securities shall pass to Buyer on the Purchase Date." As

---

[15] They are: Acton Estates, Beaumont Heights, Bickford Ranch, Delta Coves, Emerald Meadows, Heartland, Johannson Ranch, Marblehead, Northlake, Oak Valley, Pacific Point, Palm Springs Village, Ritter Ranch, Summit Valley, and 10000 Santa Monica (aka Century City).

[16] On or about May 27, 2009, the Lehman lenders produced documents in response to Debtors' first set of requests for production. This production was substantially similar to, although in key respects less inclusive than, what J.P. Morgan produced. Thus, the Lehman lenders, A & M, and their attorneys continue their course of deception and concealment.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    this Court ruled on June 30, 2009, this was a sale in which title passed to Fenway. After this

2    transaction, LCPI served solely as the "hold-in-custody-agent" of the Sold Loans for Fenway.

3        160.    Under the MRA documents, LCPI, as hold-in-custody agent, "shall not take any

4    action (aside from actions in accordance with instructions from Buyer) in respect of the Purchased

5    Securities or Additional Purchased Securities," save for certain limited exceptions that either never

6    applied or ceased to apply once LCPI filed for bankruptcy and defaulted in fall 2008.

7        161.    Moreover, the MRA states that LCPI's custodial duties cannot be assigned or

8    transferred without the consent of Fenway. LCPI's limited custodial rights were never transferred to

9    Lehman ALI, Northlake Holdings or OVC.

10        162.    In summary, under the MRA, LCPI has no interest in the Sold Loans and is barred

11    from taking any action with respect thereto. Lehman ALI, OVC and Northlake have no rights in the

12    Sold Loans whatsoever.

13        163.    The Sold Loans serve as collateral for a "Series 2008-2 Note" issued by Fenway to its

14    affiliate, Fenway Funding, LLC ("Fenway Funding"), on August 22, 2008. The proceeds of the

15    Series 2008-2 Note serve as collateral for certain commercial paper notes ("CP Notes") that were

16    issued by Fenway Funding on August 22, 2008 and acquired by LBHI. Around the same time,

17    LBHI pledged the CP Notes to secure certain obligations owed to JP Morgan.

18        164.    The LCPI-Fenway Repo was not a good faith, arm's length transaction. According to

19    the deposition testimony of Irena Goldstein, Fenway's attorney and its designated person most

20    knowledgeable, "it was basically at the end of the day one Lehman entity owing money to another

21    Lehman entity through Fenway as a conduit." Ms. Goldstein also testified that Lehman had an

22    ownership interest in Fenway's "program manager," Hudson Castle Group, Inc. ("Hudson"), at the

23    time of the Repo. Moreover, Hudson principals had been longstanding Lehman employees prior to

24    Hudson's formation.

25        165.    Notably, LCPI "repo'd" the Sold Loans to Fenway on August 22, 2008—just days

26    before the August 25, 2008 meeting at which Lehman ALI, LCPI, OVC and Northlake signed the

27    Settlement Agreement with SunCal in their capacity as "Lenders." Thus, while these Lehman

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

37

1    lenders were apparently scrambling to obtain badly needed liquidity from J.P. Morgan (which, on

2    information and belief, needed to appear to be secured by something other than the Sold Loans

3    themselves—a maneuver Fenway was more than happy to facilitate), they were indicating to SunCal

4    and the Debtors that they fully intended to perform and expected that they would perform their

5    obligations under the Restructuring and Settlement Agreement. Moreover, they were still

6    encouraging SunCal and the Debtors to move forward with development of the Projects, and

7    assuring them that payment would be forthcoming.

8        166.    The 2,300-page report recently released by the court-appointed examiner in LBHI's

9    bankruptcy proceeding in New York confirms that the convoluted transactions of which the Fenway

10    Repo was a part were designed to, among other things, help Lehman obtain badly needed liquidity

11    while concealing the true nature of the collateral. According to that report, Lehman "created"

12    Fenway, "by securitizing ... or funding ... its own illiquid corporate and commercial real estate

13    loans." When J.P. Morgan realized, in mid-September 2008, what the Fenway security that had been

14    pledged to it by LCPI really was, "JPMorgan concluded that Fenway was worth practically nothing

15    as collateral," and immediately demanded an additional $5 billion dollars in cash collateral—the last

16    business day before Lehman collapsed.

17        167.    On Sunday, September 14, 2008, just hours before Lehman filed for bankruptcy,

18    Fenway got Lehman's global treasurer, Paolo Tonucci, to sign an agreement purporting to

19    "terminate" the Repo agreement and returning ownership of the Sold Loans to LCPI. (Mr. Tonucci

20    had signed the Repo agreement on behalf of LCPI.) Apparently, Lehman wanted to undo this

21    manipulation but was unable to do so because it had already pledged the CP Notes to JPMorgan.

22    Fenway's attorney and PMK, Ms. Goldstein, testified in deposition that she found it "amazing that

23    [Tonucci] had signed anything on September 14th given what was going on at Lehman Brothers at

24    the time," and that "no one has explained to me, nor will they and probably should they, what was

25    the state of the [T]reasurer's mind when he signed this termination agreement."

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

617673

**S.**   *Lehman ALI, LCPI, OVC and Northlake Holdings' Repeated Assertion of Their*

*"Ownership" of the Sold Loans*

168.   Despite the fact that Fenway owned the Sold Loans for months prior to Debtors'

bankruptcy filings, Lehman ALI, LCPI, OVC and Northlake Holdings filed numerous proofs of

claim and pleadings in the Debtors' bankruptcy cases—virtually all of which were designed to

thwart Debtors' reorganization—in which they purported to own the Sold Loans.

**1.**   *Disputed Proofs of Secured Claims Filed by Lehman ALI, LCPI, OVC and*

*Northlake Holdings Based on the Sold Loans*

169.   On March 27, 2009—*after* Debtors had asked Lehman ALI, LCPI, OVC and

Northlake Holdings to come clean about the current ownership of the Loans— Lehman ALI, LCPI,

OVC and Northlake Holdings filed thirteen proofs of secured claims based on the Sold Loans.  They

include the following (some claims are duplicative as they are based on cross-collateralized loans):

| DISPUTED PROOFS OF CLAIM FILED BY LEHMAN CLAIMANTS BASED ON SOLD LOANS | | | | |
|---|---|---|---|---|
| Claimant | Sold Loan | POC No. | Debtor | Claim Amount |
| LCPI | SunCal Communities I Loan | 6 | SunCal Acton | $343,221,391 |
| LCPI | SunCal Communities I Loan | 16 | SunCal Bickford | $343,221,391 |
| LCPI | SunCal Communities I Loan | 7 | SunCal Emerald | $343,221,391 |
| LCPI | SunCal Communities I Loan | 12 | SunCal Summit | $343,221,391 |
| LCPI | SunCal Communities I Loan | 1 | SunCal I | $343,221,391 |
| LCPI | SunCal Communities I Loan | 2 | SunCal III | $343,221,391 |
| LCPI | Ritter Ranch Loan | 65 | Palmdale Hills | $287,252,096 |
| Lehman ALI | Delta Coves Loan | 21 | SunCal Delta Coves | $206,023,142 |
| Lehman ALI | Marblehead/Heartland Loan | 9 | SunCal Heartland | $354,325,126 |
| Lehman ALI | Marblehead/Heartland Loan | 21 | SunCal Marblehead | $354,325,126 |
| Lehman ALI | SunCal PSV Loan | 12 | SunCal PSV | $88,257,340 |
| Northlake Holdings | Northlake Loan | 6 | SunCal Northlake | $123,654,777 |
| OVC | Oak Valley Loan | 16 | SunCal Oak Valley | $141,630,092 |

170.   On the Official Form for each of these proofs of claims, under "Name of Creditor (the

person or other entity to whom the debtor owes money or property)," Lehman ALI, LCPI, OVC or

Northlake Holdings, as applicable, listed itself, and did not note that it was acting in an agency

capacity for Fenway or anyone else.  However, as this Court held, Lehman ALI, LCPI, OVC and

Northlake Holdings were not the "creditors" who could file proofs of claims.  While the attachments

to each proof of claim stated that the Lehman claimant was "agent for the lenders" under the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

39

1    applicable Loan agreement (which in every case was originally Lehman ALI or LCPI), they did not

2    state who the current "lenders" were, and never made reference to Fenway, the MRA, or any transfer

3    of any interest in the Sold Loans. Each of these proofs of claim—along with the attachments—was

4    prepared by A & M's Gerald Pietroforte (as "Managing Director" of each Lehman lender) and/or by

5    Weil Gotshal, and each was signed by Pietroforte.

6        171.    Given the transfer of the seven Sold Loans to Fenway, the transfer of the Century

7    City Loan to Danske, and the transfer of the Pacific Point First Loan to Lehman Re (discussed

8    below), the only proofs of claim filed by the Lehman claimants that are based on Loans that may not

9    have been transferred are the following (most are duplicative based on cross-collateralized Loans):

| PROOFS OF CLAIM FILED BY LEHMAN CLAIMANTS NOT BASED ON SOLD LOANS | | | | |
|---|---|---|---|---|
| Claimant | Loan | POC No. | Debtor | Claim Amount |
| LCPI | SCC Palmdale Loan | 1 | SCC Palmdale | $119,664,305 |
| Lehman ALI | Bickford Second Loan | 17 | SunCal Bickford | $56,494,059 |
| Lehman ALI | Oak Knoll/Torrance Loan | 12 | SunCal Oak Knoll | $158,141,365 |
| Lehman ALI | Oak Knoll/Torrance Loan | 4 | SunCal Torrance | $158,141,365 |
| Lehman ALI | Interim Loan | 9 | SCC Communities | $23,795,013 |
| Lehman ALI | Interim Loan | 14 | SunCal Del Rio | $23,795,013 |
| Lehman ALI | Interim Loan | 7 | SunCal Tesoro | $23,795,013 |

16        172.    As Lehman ALI and LCPI have acknowledged in pleadings filed with this Court, the

17    Bickford Second Loan has no value because it is subordinate to the SunCal Communities I Loan,

18    and the SCC Palmdale Loan has no value because it is secured by a pledge of SCC Palmdale's

19    equity interest in Palmdale Hills. Only Lehman ALI's Oak Knoll/Torrance Loan and the Interim

20    Loan are supported by any value.

21        173.    Thus, LCPI has no security interest in any of the proofs of claim it filed with this

22    Court. Lehman ALI has a security interest only in the Oak Knoll/Torrance Loan and the Interim

23    Loan. OVC and Northlake Holdings have no interest in any of the Loans whatsoever.

24        **2.**    ***Key Pleadings Filed By Lehman ALI, LCPI, OVC and Northlake Holdings Based***

25        ***On the Sold Loans***

26        **a.**    **Stay Relief Motions**

27        174.    In the brief filed by Lehman ALI and LCPI in support of their Stay Relief Motions,

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000
LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

40

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

1    Lehman ALI and LCPI alleged that they were entitled to foreclose because, among other things,

2    *their* interests in Plaintiff Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal

3    Summit, Palmdale Hills, and SunCal I's properties were not adequately protected.

4         175.    The loans that formed the primary basis of LCPI's Stay Relief Motions—totaling

5    $619 million of the $649 million at issue—were the Ritter Ranch Loan and the SunCal Communities

6    I Loan, ostensibly still owned by LCPI. In fact, these Sold Loans were transferred to Fenway five

7    months before the Stay Relief Motions were filed. Accordingly, the factual assertion of ownership

8    underlying LCPI's Stay Relief Motions was and is false.

9         176.    In fact, the only Loans on which the Stay Relief Motions were premised that were not

10   Sold Loans were Lehman ALI's Bickford Second Loan and LCPI's SCC Palmdale Loan. But as

11   noted above, these Loans were not secured by any value. Thus, the only Loans with regard to which

12   Lehman ALI and LCPI were the real parties in interest who could seek a foreclosure were Loans

13   with no value, making their Stay Relief Motions moot in their entirety.

14              **b.    Opposition to Sales Procedure Motion**

15        177.    The Sale Procedures Motion includes a provision disallowing Lehman ALI's, OVC's,

16   and Northlake Holdings' credit bid rights. On February 25, 2009, Lehman ALI, OVC and Northlake

17   Holdings filed an objection to the Sale Procedures Motion that referred to the "Lehman Lenders'

18   collateral," the "Lehman Lenders rights to credit bid," and the "liens held by the Lehman Lenders."

19        178.    However, due to the August 22, 2008 MRA, OVC and Northlake Holdings have no

20   legal or beneficial interest in the Oak Valley or Northlake Projects, respectively. Likewise, Lehman

21   ALI has no interest in the following Trustee Debtors' Projects: Palm Springs Village, Delta Coves,

22   Marblehead, Heartland or Century City (the last of which was separately assigned to Danske).

23   Accordingly, except with respect to Lehman ALI's interest in the Oak Knoll / Torrance Loan,

24   Lehman ALI, OVC and Northlake Holdings have no basis to oppose the Sale Procedure Motion.

25   **T.    *LCPI's Improper Invocation of the Automatic Stay***

26        179.    Because property that a debtor holds as a mere custodian for another, without any

27   beneficial interest, is not deemed "property" of the debtor's estate, efforts by Debtors SunCal Acton,

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal Johannson, SunCal Summit,

2    Palmdale Hills, and SunCal I to use cash or otherwise deal with personal or real property securing

3    the Sold Loans does not implicate LCPI's automatic stay—and never has since the inception of these

4    Debtors' bankruptcy proceedings.

5        180.    Nevertheless, LCPI has filed numerous pleadings (or even procedurally improper

6    "letter briefs") with this Court—as well as with the bankruptcy court in its own bankruptcy in New

7    York, and even with the Ninth Circuit Bankruptcy Appellate Panel—in which it asserted that the

8    automatic stay in its bankruptcy precluded these Debtors from taking certain actions in their

9    proceedings.  LCPI's assertions were based on its purported ownership of the Sold Loans.  These

10   pleadings include the following:

11       **_1._**    **_New York Opposition to Priming Loan_**

12       181.    In November 2008, LCPI opposed Debtors' motion filed in New York seeking relief

13   from LCPI's stay so that Debtors could administer their estates and, among other things, obtain a

14   priming loan to address the Projects' critical needs.  In (successfully) opposing that motion, LCPI

15   asserted that its automatic stay applied to the Debtors' efforts to deal with all of the Projects—even

16   those encumbered by Sold Loans.

17       **_2._**    **_Objection to Cash Collateral Motion_**

18       182.    Given that Debtors could not obtain a priming loan due to LCPI's opposition, Debtors

19   Palmdale Hills, SunCal Acton, SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal

20   Johannson, and SunCal Summit sought funding to preserve their Projects' value via the Cash

21   Collateral Motion.  LCPI had not raised the issue of its stay in opposing a cash collateral motion in

22   related proceedings before this Court, nor in repeated discussions with the Court and Debtors'

23   counsel.

24       183.    Nevertheless, LCPI filed an objection to the Cash Collateral Motion in which it

25   asserted that Debtors' attempt to use cash collateral to preserve value in the Projects constituted a

26   "flagrant disregard of [its] automatic stay."

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

42

**3.** _"Emergency" Motion to Enforce Stay In New York_

184.    Not content with opposing the Cash Collateral Motion before this Court, LCPI, two business days before the Cash Collateral Motion was to be heard, filed a motion in its own proceedings in New York wherein it contended that it held a lien on the subject cash, and that the use of the funds proposed in the Cash Collateral Motion would violate its automatic stay. Counsel for the moving Debtors was even threatened with sanctions for bringing the Cash Collateral Motion. In response, the Cash Collateral Motion was taken off calendar.

185.    In fact, the only Loan potentially secured by a lien against the cash that the Debtors were seeking to use was the Ritter Ranch Loan, one of the Sold Loans. Accordingly, all right, title and interest in this Loan and the associated lien is held by Fenway, which was not (and is not) in a bankruptcy proceeding. As such, LCPI's stay was not applicable. LCPI and its counsel falsely asserted LCPI's ownership to the Court and the Debtors.

**4.** _Lehman ALI's Super-Priority Loan Resulting from LCPI's False Invocation of Its Stay_

186.    Because LCPI first opposed Debtors' effort to obtain approval from the New York Court for a priming loan, and then opposed the Cash Collateral Motion, in April 2009, four Voluntary Debtor Plaintiffs (SunCal Acton, SunCal Bickford, SunCal Emerald and Palmdale Hills) and the Trustee on behalf of eight of the Trustee Debtors (all except SunCal Torrance) were ultimately forced to stipulate to loans from Lehman ALI totaling $1.7 million to address the Projects' critical needs. Pursuant to the parties' stipulation and the Court's order, Lehman ALI's loan was granted super-priority status.

187.    The source of the money that Lehman ALI "loaned" to these Debtors was cash in Plaintiff Debtor Palmdale Hills' account. This was the very same money that was sought to be used via the Cash Collateral Motion—money which was subject to disputed liens. Had LCPI not falsely invoked its stay and had the Cash Collateral Motion been granted, Debtors could have avoided repayment of those sums in the event that equitable subordination was granted. However, because of LCPI's false invocation of its stay and the resulting withdrawal of the Cash Collateral Motion,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX:(310) 552-8400

43

61767.3

1   Lehman ALI managed, just a few months later, to endow the loan of these same funds with super-

2   priority status, and thus ostensibly not subject to Plaintiffs' equitable subordination action.

3      188.   Thus, Lehman ALI effectively turned a $1.7 million loan subject to defenses into a

4   super-priority loan as a result of LCPI's lie regarding the applicability of its stay.

5      *5.*   ***Intervention in Sales Procedures Motion***

6      189.   The Sales Procedures Motion was originally filed February 18, 2009, and was

7   originally set to be heard on Tuesday, March 10, 2009. Although Lehman ALI, OVC, and Northlake

8   Holdings filed an opposition, LCPI did not. This was not surprising, given that the Debtors—

9   although they had contemplated a sale of all of the Projects since November—specifically tailored

10  the Sales Procedures Motion to apply to a proposed sale of Projects on which LCPI did not purport

11  to be the lender, in order to avoid any accusation that the Debtors were violating LCPI's purported

12  automatic stay.

13     190.   However, on the afternoon of Sunday, March 8, 2009, counsel for LCPI emailed

14  Debtors' counsel, threatening that LCPI would seek sanctions in New York for Debtors' purported

15  "flagrant violation" of its automatic stay, unless the moving Debtors withdrew the Sales Procedures

16  Motion by 10:00 a.m. the next morning, March 9.

17     191.   On March 9, 2009, LCPI also e-mailed to this Court and the bankruptcy court in New

18  York a "letter brief" which asserted that the Sales Procedures Motion, among other things,

19  "threaten[s] LCPI's property interests." This letter brief attached the motion for sanctions that LCPI

20  intended to file in New York.

21     192.   In response to LCPI's threat, on March 9, 2009, the Trustee, SCC Communities,

22  SunCal Del Rio, and SunCal Tesoro filed emergency motions seeking an order finding that the

23  automatic stay in LCPI's bankruptcy case did not apply to the Sale Procedures Motion. (LCPI

24  responded with another e-mail directly to the New York bankruptcy court.)

25     193.   On March 10, 2009, the Court granted the moving Debtors' emergency motions,

26  holding that the automatic stay in the LCPI bankruptcy case did not apply to the Sales Procedures

27  Motion.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    194.    Had LCPI admitted all along that its automatic stay did not apply, Plaintiff Debtors

2    SunCal Acton, SunCal Bickford, SunCal Emerald, Palmdale Hills and SunCal Summit, and Debtors

3    SunCal Beaumont, SunCal Johannson, Seven Brothers and Kirby could have joined in the Sales

4    Procedures Motion when it was originally filed.  Thus, LCPI's false invocation of its stay delayed by

5    months a proposal by these Debtors to sell the Acton Estates, Bickford Ranch, Beaumont Heights,

6    Emerald Meadows, Johannson Ranch, Ritter Ranch, and Summit Valley Projects.  This has delayed

7    or diminished the prospect of recovery by the creditors of these Debtors who provided goods or

8    services or guaranteed the work to be performed on these Projects.

9    **6.**    ***Stay Relief Motions***

10    195.    As noted above, LCPI's Stay Relief Motions were premised entirely on Sold Loans

11    (with the exception of the SCC Palmdale Loan admittedly supported by no value).  LCPI argued in

12    those Motions that the subject Debtors could not submit a feasible plan because their plan was

13    premised on equitable subordination, and they could not seek to equitably subordinate LCPI's claims

14    without violating LCPI's purported automatic stay.  This contention was false.[17]

15    **7.**    ***LCPI's Appeal from the Denial of its Stay Relief Motions***

16    196.    The Court denied the Stay Relief Motions, ruling that LCPI's purported stay did not

17    apply to Debtors' efforts to equitably subordinate LCPI's claims (because Debtors were defending

18    against affirmative conduct by LCPI, not because the Loans were not LCPI's property).  LCPI

19    appealed the Court's ruling, and so has continued to falsely assert its stay, this time in the Ninth

20    Circuit BAP.  The moving Debtors have already had to file a lengthy opposition to LCPI's appeal,

21    and have now been forced to appeal the BAP Ruling to the Ninth Circuit.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

[17] Although the BAP Ruling held that Plaintiffs could not pursue a claim for equitable subordination against LCPI without seeking relief from stay, the BAP Ruling did *not* find that any of the Loans at issue *were* property of LCPI's bankruptcy estate.  Rather, the BAP Ruling noted that *to the extent* that any of the Loans constitute property of LCPI's bankruptcy estate, obtaining stay relief would be required.  No court—including this one—has ever found that LCPI retained any ownership interest in any, let alone all, of the Sold Loans.

45

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

**8.    _LCPI's Second Appeal_**

197.    The Court also granted an order allowing the Plaintiffs to file a second amended complaint in this adversary proceeding naming LCPI as a defendant. LCPI baselessly appealed that ruling to the BAP as well. The BAP clerk determined—only after briefing from both sides—that the ruling was interlocutory and not immediately appealable.

**U.    _Summary of Lehman ALI, LCPI, OVC and Northlake Holdings' Post-Petition Inequitable Conduct_**

198.    On information and belief, Lehman ALI, LCPI, OVC and Northlake Holdings were intentionally vague in their proofs of claim about the identity of the current owners of the Sold Loans, both in order to conceal the existence of the Fenway Repo itself, and so as to "justify" LCPI having repeatedly invoked its inapplicable stay. Lehman ALI also took advantage of this ambiguity in securing super-priority status for its $1.7 million "loan." But for Danske's appearance and the Debtors' subsequent pursuit of discovery, the truth regarding the owners of the Sold Loans might never have been revealed.

199.    Lehman ALI, LCPI, OVC and Northlake Holdings' conduct of making repeated misrepresentations to this Court regarding their ownership of the Loans and the applicability of LCPI's automatic stay has wasted many hundreds, if not thousands, of hours of the Plaintiff Debtors' and the counsel's time (not to mention the Court's), delaying the progress of the bankruptcy proceedings and wasting estate assets, to the detriment of all of the Debtors' creditors.

200.    Lehman ALI, LCPI, OVC and Northlake Holdings' stubborn refusal to allow the Debtors to use funds to pay for the Projects' critical needs have increased the claims against the Debtors' estates. For example, Lehman ALI, LCPI, OVC and Northlake Holdings refused even to pay property taxes on the Projects. As a result, tax penalties have mounted and continue to increase. Because these tax claims have priority over unsecured and mechanic liens claims, the Lehman defendants' conduct in letting these claims mount has made it even less likely that there will be funds available to pay for the less prioritized claims.

201.    The delays Lehman ALI, LCPI and OVC have caused in work being performed on

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1   the Projects post-petition (as well as pre-petition) have also increased the claims against the Debtors'

2   bonding companies, which have in turn increased the bond companies' claims against the Debtors.

3       202.   The delays the Lehman lenders have caused in the administration of the Debtors'

4   bankruptcies has also jeopardized the value of the Projects—the primary source of recovery for all

5   creditors—through mounting fines, penalties, erosion, deterioration of work already performed, the

6   failure to pay property taxes, and potential loss of entitlements, among other things.

7       203.   Because of this extensive post-petition inequitable conduct, Defendants' alleged

8   secured claims should be equitably subordinated not only to the general unsecured claims and

9   mechanics' lien claims against the respective Plaintiff Debtors (substantially all of which are based

10  on work induced by Defendants), but to the priority and administrative claims of the respective

11  Plaintiff Debtor's estate as well.

12  **V.   *Lehman ALI and LV Pacific Point's Fraudulent Acquisition of the Pacific Point Project***

13      204.   Defendants' inequitable conduct regarding the Pacific Point Project was particularly

14  egregious.

15      205.   Pacific Point is a 200 plus acre development in a prime location overlooking the

16  Pacific Ocean in San Juan Capistrano, California. At the time of the Restructuring and Settlement

17  Agreement, the Pacific Point property was owned by Plaintiff SJD Partners.

18      206.   Pacific Point was among the Projects included in the Restructuring and Settlement

19  Agreement. SJD Partners was identified in Annex I to the Restructuring Agreement as both a

20  "Borrower" and "Grantor," and SJD Development was identified as a "Pledgor."

21      207.   Although the Restructuring and Settlement Agreements contemplated that at Closing,

22  the Debtors would transfer title to the Projects to new Lehman entities, the parties' agreement was

23  structured somewhat differently with regard to the Pacific Point Project.

24      208.   Specifically, pursuant to the Restructuring Agreement, and as detailed in the

25  Settlement Agreement incorporated thereto, SunCal, SJD Partners and SJD Development agreed not

26  to interfere with Lehman ALI's (or its designee's) foreclosure on the Pacific Point property, and the

27  new Lehman entity, LV Pacific Point, would acquire the property upon foreclosure. In consideration

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL:(310) 552-4400   FAX:(310) 552-8400

47

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

1    for this, Lehman ALI and LV Pacific Point agreed to (a) assume SJD Partners' and SJD

2    Development's outstanding accounts payable for Pacific Point third-party vendors, (b) assume SJD

3    Partners', SJD Developments' and others' bond liability in connection with the Pacific Point Project,

4    and (c) pay for millions of dollars worth of work that Lehman ALI had authorized.

5        209.    On or about August 25, 2008, the Settlement Agreement was signed by the SunCal

6    parties, including SJD Partners and SJD Development. It was signed by Frank Gilhool as authorized

7    signatory on behalf of both Lehman ALI and LV Pacific Point.

8        210.    All conditions for Closing had been met by the date for which Closing was scheduled.

9        211.    As a signatory to the Settlement Agreement, LV Pacific Point was supposed to and

10    agreed to acquire the property subject to the above obligations.

11        212.    On August 28, 2008, LV Pacific Point foreclosed on Pacific Point, and title was

12    transferred to LV Pacific Point at the foreclosure sale.

13        213.    However, neither Lehman ALI nor LV Pacific Point assumed the liabilities and

14    obligations as promised, to the detriment of the creditors of the estates of SJD Partners and SJD

15    Development and the bond indemnitors.

16        214.    The City of San Juan Capistrano even executed an estoppel certificate for the benefit

17    of SJD Partners and Lehman ALI—at Lehman ALI's request—on August 26, 2008, two days before

18    the foreclosure. That certificate stated, among other things, that the "Acquiring Entity [LV Pacific

19    Point] shall by operation of law become the legal successor-in-interest to Developer [SJD Partners]"

20    under SJD Partners' agreements with the City. That certificate further provided that there existed no

21    breaches, defaults, or claims under SJD Partners' agreements with the City.

22        215.    Despite this estoppel certificate, demands have been made by the City and/or other

23    creditors—even after the estoppel was signed—against SunCal, Elieff, SJD Partners and SJD

24    Development. Neither Lehman ALI nor LV Pacific Point has undertaken to assume any of those

25    obligations.

26        216.    In fact, on information and belief, in early September 2008—just days after the

27    foreclosure, and just days before LBHI filed for bankruptcy—Lehman ALI secretly transferred much

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

61767.3

1   or all of its interest in the Pacific Point First Loan and the first-priority deed of trust on the property

2   to a separate Lehman-affiliated entity, Lehman Re. Lehman ALI and/or LV Pacific Point may have

3   transferred some or all of their interests in the Pacific Point Second Loan and associated lien to

4   Lehman Re as well.

5        217.   The timing of these maneuvers by these Lehman entities confirms that Lehman ALI

6   and LV Pacific Point never intended to fulfill their promises to assume the millions in Pacific Point

7   obligations even at the time they made such promises. LBHI filed for bankruptcy on September 15,

8   2008. On information and belief, Lehman ALI and LV Pacific Point knew as of the August 28, 2008

9   Pacific Point foreclosure that they would not be in a position to fulfill, and would not be fulfilling,

10   their funding obligations to SunCal, SJD Partners and SJD Development.

11        218.   As a result of LV Pacific Point's foreclosure and Lehman ALI's and LV Pacific

12   Point's failure to fulfill their payment obligations, SJD Partners no longer owns any real property,

13   but has unsecured claims of approximately $50 million, including bond claims of approximately $34

14   million. Moreover, due to the deterioration of construction projects, unpaid taxes, fines, and

15   penalties resulting from Lehman ALI and LV Pacific Point's conduct, this exposure continues to

16   grow.

17        219.   Had SunCal, SJD Partners and SJD Development known that Lehman ALI and LV

18   Pacific Point had no intent to honor their promised obligations, they never would have agreed to

19   cooperate with a foreclosure. Instead, SJD Partners could have filed for bankruptcy earlier,

20   precluded a foreclosure and successfully reorganized the Project.

21        220.   Accordingly, the parties' agreement should be rescinded, the foreclosure should be

22   set aside and/or a constructive trust should be imposed upon LV Pacific Point, and the property

23   should be returned to its rightful owner, SJD Partners.

24   **W.   *Summary of the Disputed Claims to Be Equitably Subordinated, and the Associated Liens***

25        ***to Be Preserved for the Benefit of the Plaintiff Debtors' Estates***

26        221.   As to each Plaintiff, the following is a summary of the Defendants' disputed secured

27   claims which Plaintiffs seek to equitably subordinate, as well as the mechanics liens, priority and

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

administrative claims, and general unsecured claims to which Plaintiffs seek to subordinate them:

| DEBTOR | DEFENDANTS' DISPUTED SECURED CLAIMS | MECHANIC LIEN CLAIMS | PRIORITY AND ADMIN. CLAIMS | GENERAL UNSECURED CLAIMS |
|---|---|---|---|---|
| Palmdale Hills | $287,252,096 | $1,006,435 | $499,970 | $33,027,677 |
| SunCal Bickford | $343,221,391 (Bickford 1st) | $3,477,120 | $345,221 | $10,146,825 |
| | $56,494,059 (Bickford 2nd) | | | |
| SunCal Acton | (Same as Bickford 1st) | $0 | $59,242 | $1,428,250 |
| SunCal Emerald | (Same as Bickford 1st) | $1,293,935 | $188,695 | $7,878,901 |
| SunCal Summit | (Same as Bickford 1st) | $16,827 | $48,018 | $1,076,053 |
| SunCal I | (Same as Bickford 1st) | $0 | $0 | $0 |
| SunCal III | (Same as Bickford 1st) | $0 | $0 | $459 |
| SCC Communities | $23,795,013 | $0 | $27,072 | $32,813 |
| SunCal Del Rio | (Same as SCC Communities) | $0 | $261,542 | $8,242,033 |
| SunCal Tesoro | (Same as SCC Communities) | $0 | $119,563 | $170,969 |
| SunCal Oak Knoll | $158,141,365 | $4,794,529 | $874,609 | $1,041,373 |
| SunCal Torrance | (Same as SunCal Oak Knoll) | $0 | $160,914 | $203,838 |
| SunCal Delta Coves | $206,023,142 | $372,535 | $448,061 | $35,192,631 |
| SunCal Heartland | $354,325,126 | $1,552,794 | $231,873 | $30,774,591 |
| SunCal Marblehead | (Same as SunCal Heartland) | $1,406,209 | $740,382 | $109,697,964 |
| SunCal Northlake | $123,654,777 | $0 | $421,783 | $911,296 |
| SunCal Oak Valley | $141,630,092 | $1,662,309 | $138,443 | $29,605,482 |
| SunCal PSV | $88,257,340 | $2,316,430 | $315,213 | $21,892,343 |
| SJD Development | $120,110,237 | $0 | $0 | $368,362 |
| SJD Partners | (Same as SJD Development) | $0 | $244,090 | $51,265,349 |
| Total | $1,902,904,608 | $17,898,123 | $5,124,691 | $342,405,373 |

222.   The following should be noted regarding the above chart:

(a)   Plaintiffs have not completed their investigation as to which claims are allowed.

(b)   Administrative claims are ongoing.

(c)   Certain proofs of claims filed against Palmdale Hills, among other Debtors, appear to be misfiled and relate to other Debtors.

(d)   Certain disputed claims, such as duplicative claims, have been deducted from the figures above. For example, the Debtors have assumed surety bond claims according to the bond claims arising from the particular Debtors' Projects. The bond issuers (Arch Insurance Co. and Bond Safeguard Insurance Co.) have asserted various bond obligor claims against the Debtors in the approximate amount of $230 million ($155 million by Arch and $75 million by Bond Safeguard). The bond issuers assert that their claims are joint and several against all of the Debtors, which the Debtors dispute as lacking consideration and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 Avenue of the Stars, Suite 1000   Los Angeles, California 90067
Tel (310) 552-4400   Fax (310) 552-8400

50

1   fraudulent conveyances to the extent that such Bond Claims do not arise from or exceed the

2   amount of Bond Claims attributed to the Project of each Debtor. Thus, the $0 in unsecured

3   claims listed against SunCal I do not reflect the contingent bond claims.

4         (f)    Plaintiffs believe that $368,362 in unsecured claims filed against Plaintiff SJD

5   Development should have been filed against Plaintiff SJD Partners. However, even if those

6   claims are correctly characterized, SJD Development would still be a plaintiff on the cause of

7   action for equitable subordination, because of the contingent bond claims asserted against it.

8         (g)    LV Pacific Point foreclosed upon and obtained the Pacific Point Project prior

9   to Plaintiff SJD Partner's bankruptcy filing. Lehman ALI has filed an unliquidated claim

10  against SJD Partners that is contingent upon the unwinding or invalidation of the foreclosure

11  sale. If the Court grants the requested relief and restores title in the Pacific Point Project to

12  SJD Partners, then to the extent that any of these Defendants assert claims against SJD

13  Partners or SJD Development, and/or attempt to enforce their liens, those claims should be

14  subordinated and those liens preserved for the benefit of and transferred to SJD Partners' or

15  SJD Development's estates, as applicable.

16       (h)    Real property tax claims against the Plaintiff Debtors of $19,165,086 and

17  other secured claims against certain Debtors have not been listed, as they are not subject to

18  the disputed secured claims, and would not be affected by subordination under this action.

19  However, Plaintiffs contend that Defendants' claims should be equitably subordinated to the

20  other claims identified herein to the extent that Defendants have caused these tax claims to be

21  filed and/or to increase through their wrongful conduct.

22    223.   As to each Plaintiff on the equitable subordination claim, the following summarizes

23  the original and apparent current lender on each disputed Loan, the outstanding amount claimed by

24  Defendants with regard to the Loan, and the total amount of the claims to which Debtors seek to

25  subordinate the Defendants' claims pursuant to 11 U.S.C. § 510(c)(1):

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

| PLAINTIFF DEBTOR | LOAN | ORIGINAL LENDER | CURRENT OWNER OF CLAIM[18] | DISPUTED SECURED CLAIMS THAT PLAINTIFFS SEEK TO SUBORDINATE | TOTAL CLAIMS TO BE GIVEN PRIORITY |
|---|---|---|---|---|---|
| Palmdale Hills | Ritter Ranch | LCPI | Fenway | $287,252,096 | $34,534,082 |
| SunCal Bickford | SunCal Communities I | LCPI | Fenway | $343,221,391 (Bickford 1st) | $13,969,166 |
| | Bickford Second | Lehman ALI | Lehman ALI | $56,494,059 | |
| SunCal Acton | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $1,487,492 |
| SunCal Emerald | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $9,360,531 |
| SunCal Summit | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $1,140,898 |
| SunCal I | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $0 |
| SunCal III | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $459 |
| SCC Communities | Interim | Lehman ALI | Lehman ALI | $23,795,013 | $59,885 |
| SunCal Del Río | Interim | Lehman ALI | Lehman ALI | (see SCC Communities) | $7,951,739 |
| SunCal Tesoro | Interim | Lehman ALI | Lehman ALI | (see SCC Communities) | $289,860 |
| SunCal Oak Knoll | Oak Knoll/ Torrance | Lehman ALI | Lehman ALI | $158,141,365 | $6,711,183 |
| SunCal Torrance | Oak Knoll/ Torrance | Lehman ALI | Lehman ALI | (see SunCal Oak Knoll) | $364,751 |
| SunCal Delta Coves | Delta Coves | Lehman ALI | Fenway | $206,023,142 | $36,013,227 |
| SunCal Heartland | Marblehead/ Heartland | Lehman ALI | Fenway | $354,325,126 | $32,559,258 |
| SunCal Marblehead | Marblehead/ Heartland | Lehman ALI | Fenway | (see SunCal Heartland) | $111,852,555 |
| SunCal Northlake | Northlake | Lehman ALI | Fenway | $123,654,777 | $1,333,679 |
| SunCal Oak Valley | Oak Valley | Lehman ALI | Fenway | $141,630,092 | $31,406,234 |
| SunCal PSV | PSV | Lehman ALI | Fenway | $88,257,340 | $24,523,986 |
| SJD Partners | Pacific Point First | Lehman ALI | Lehman Re | $120,110,237 (Pac Pt 1st) | $51,265,349 |
| | Pacific Point Second | Lehman ALI | LV Pacific Point and/or Lehman Re | (contingent claim) | |
| SJD Development | Pacific Point First | Lehman ALI | Lehman Re | (see Pac Pt 1st) | |
| Total | | | | $1,902,904,608 | $365,428,187 |

224.    As to each Plaintiff on the equitable subordination claim, the following summarizes the disputed Loans and associated lien that Plaintiffs seek to transfer to and preserve for the benefit of their respective estates pursuant to 11 U.S.C. § 510(c)(2). The alleged holder, alleged security and the alleged amounts outstanding are taken from the disputed proofs of secured claims ("POCs") that have been filed; as noted in the above table, many of these liens now belong to the claimants' successors:

---

[18] In the event that the Court determines that Lehman ALI, OVC and Northlake, and not Fenway, still have claims to be subordinated with regard to the applicable Sold Loans, they are named herein as defendants as to those Sold Loans, and nothing about this table should be construed as a waiver of Debtors' right to equitably subordinate those Defendants' claims.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400
ATTORNEYS AT LAW

| LOAN(S) | ALLEGED HOLDER | PLAINTIFF DEBTOR(S) | ALLEGED SECURITY | ALLEGED OUTSTANDING AMOUNT |
|---|---|---|---|---|
| SunCal Communities I Loan | Fenway (as successor to LCPI) | SunCal I SunCal III SunCal Acton SunCal Emerald SunCal Bickford SunCal Summit | (a) Alleged first-priority deeds of trust on the Bickford, Acton Estates and Emerald Meadows Projects; (b) alleged pledges of SunCal I's interests in SunCal Acton, SunCal Summit, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal Bickford; and (c) alleged pledges of SunCal Summit's interests in Seven Brothers and Kirby. | Identical $343,221,391 POC No. 1 asserted against SunCal I; No. 2 against SunCal III; No. 6 against SunCal Acton; No. 7 against SunCal Emerald; No. 16 against SunCal Bickford; and No. 12 against SunCal Summit |
| Ritter Ranch Loan | Fenway (as successor to LCPI) | Palmdale Hills | Alleged first-priority deed of trust on all real and an alleged first priority lien on all personal property owned by Palmdale Hills. | $287,252,096 POC No. 65 asserted against Palmdale Hills |
| Bickford Second Loan | Lehman ALI | SunCal Bickford | Alleged second priority deed of trust on the Bickford Ranch Project. | $56,494,059 POC No. 17 asserted against SunCal Bickford |
| Interim Loan | Lehman ALI | SCC Communities, SunCal Tesoro and SunCal Del Rio | Alleged first-priority deeds of trust on the Joshua Ridge and the Tesoro Projects, and an alleged first-priority lien on the net proceeds of the Del Rio CFD Bonds. | Identical $23,795,013 POC No. 9 asserted against SCC Communities; No. 14 against SunCal Del Rio; No. 7 against SunCal Tesoro |
| Pacific Point First Loan | Lehman ALI | SJD Partners SJD Dev'pment. | Alleged first priority deed of trust on the Pacific Point Project, and alleged pledge of SJD Development's interest in SJD Partners. | Identical $120,110,237 POC No. 2 asserted against SJD Dev'pment; No. 23 against SJD Partners |
| Pacific Point Second Loan | Lehman ALI | SJD Partners | Alleged second priority deed of trust on the Pacific Point Project | Unliquidated contingent POC No. 24 asserted against SJD Partners |
| Oak Knoll/ Torrance Loan | Lehman ALI | SunCal Oak Knoll and SunCal Torrance | Alleged first-priority deeds of trust on the Oak Knoll Project and the Del Amo Project. | Identical $158,141,365 POC No. 12 asserted against SunCal Oak Knoll; No. 4 against SunCal Torrance |
| PSV Loan | Lehman ALI | SunCal PSV | Alleged first-priority deed of trust on the Palm Springs Village Project. | $88,257,340 POC No. 12 asserted against SunCal PSV |
| Delta Coves Loan | Lehman ALI | Delta Coves | Alleged first-priority deed of trust on the Delta Coves Project. | $206,023,142 POC No. 21 asserted against SunCal Delta Coves |
| Marblehead/ Heartland Loan | Lehman ALI | SunCal Marblehead; SunCal Heartland | Alleged first-priority deeds of trust on the Marblehead and the Heartland Projects. | Identical $354,325,126 POC No. 9 asserted against SunCal Heartland; No. 21 against SunCal Marblehead |
| Oak Valley Loan | OVC | SunCal Oak Valley | Alleged first-priority deed of trust on the Oak Valley Project. | $141,630,092 POC No. 16 asserted against SunCal Oak Valley |
| Northlake Loan | Northlake Holdings | SunCal Northlake | Alleged first-priority deed of trust on the Northlake Project. | $123,654,777 POC No. 6 asserted against SunCal Northlake |
| TOTAL | | | | $1,902,904,638 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

53

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400    FAX (310) 552-8400

## CAUSES OF ACTION

### V.

### FIRST CLAIM FOR RELIEF

**(Equitable Subordination, 11 U.S.C. §510(c))**

| By | Against |
|---|---|
| SunCal Acton | Fenway |
| SunCal Bickford | Lehman ALI, Fenway |
| SunCal Del Rio | Lehman ALI |
| SunCal Emerald | Fenway |
| SunCal I | Fenway |
| SunCal III | Fenway |
| SCC Communities | Lehman ALI |
| SJD Partners | Lehman ALI, LV Pacific Point, Lehman Re |
| SJD Development | Lehman ALI, Lehman Re |
| Palmdale Hills | Fenway |
| SunCal Summit | Fenway |
| SunCal Tesoro | Lehman ALI |
| Trustee o/b/o SunCal Delta Coves | Lehman ALI, Fenway |
| Trustee o/b/o SunCal Heartland | Lehman ALI, Fenway |
| Trustee o/b/o SunCal Marblehead | Lehman ALI, Fenway |
| Trustee o/b/o SunCal Northlake | Northlake Holdings, Fenway |
| Trustee o/b/o SunCal Oak Knoll | Lehman ALI |
| Trustee o/b/o SunCal Oak Valley | OVC, Fenway |
| Trustee o/b/o Sun Cal PSV | Lehman ALI, Fenway |
| Trustee o/b/o SunCal Torrance | Lehman ALI |

225.    Plaintiffs repeat and reallege each and every foregoing and subsequent allegation

contained in the Complaint, and further allege as follows:

**_Lehman ALI and LCPI_**[19]

226.    LCPI has or purports to have disputed claims against Plaintiffs SunCal Acton, SunCal

Bickford, SunCal Emerald, Palmdale Hills, SunCal Summit, SunCal I and SunCal III.

227.    Lehman ALI has or purports to have disputed claims against Plaintiffs SunCal

Bickford, SunCal Del Rio, SCC Communities, SJD Partners, SJD Development, SunCal Tesoro, and

---

[19] Allegations regarding LCPI are applicable to defendant Fenway, and should not be
regarded as an indication that LCPI is currently being treated as a Plaintiff herein.

54

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

Trustee Debtors SunCal Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal Oak Knoll,

SunCal PSV, and SunCal Torrance.

228.    Plaintiffs are informed and believe, and on that basis allege, that Lehman ALI is an

affiliate of an insider of each of the Trustee Debtors, and thus is a statutory insider under 11 U.S.C.

§101(31). On information and belief, LBHI has had a 100% ownership interest in both Lehman ALI

and LCPI, until recently, when Lehman ALI itself acquired a 100% interest in LCPI. (Thus, LBHI

still indirectly has a 100% ownership interest in LCPI.) At the same time, LBHI wholly owns the

Lehman Equity Members, which themselves have at least a 50% ownership interest in the Trustee

Debtors and are therefore insiders of the Trustee Debtors. Accordingly, under 11 U.S.C. §101(2),

Lehman ALI is an insider of the Trustee Debtors.

229.    Even aside from Lehman ALI's status as a statutory insider, Lehman ALI and LCPI

exerted actual control over all of the Debtors, and so are also non-statutory insiders under the law.

230.    Lehman ALI and/or LCPI have partnered with SunCal and the Debtors for over a

decade. Lehman ALI and LCPI have been Debtors' primary source of credit for years. SunCal

granted Lehman a first right of refusal on most of SunCal's projects going forward. Thus, over the

past several years, SunCal and the Debtors have been almost entirely dependent on Lehman ALI and

LCPI for financing. SunCal and the Debtors effectively became the management and development

arm of the Lehman real estate lenders, rather than independent developers that received outside

funding.

231.    Beginning in or about 2005, if not earlier, Lehman ALI and LCPI exercised their

control over SunCal and the Debtors by insisting that many of their loans be cross-collateralized

among multiple Projects, many of which received little or none of the loan proceeds. This made

SunCal and the Debtors even more dependent on Lehman ALI and LCPI and to the terms that they

dictated. They also exercised their control by withholding promised funding in order to induce

SunCal and the Debtors to concede to onerous terms.

232.    At least after 2007, Lehman ALI and LCPI asserted management control as well.

Debtors' management had to vet expenses with Lehman ALI and LCPI and get their approval before

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

55
**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

1   they could expend any funds to develop the Projects, and had conference calls or meetings with

2   Lehman ALI and LCPI personnel on as much as a weekly basis or more for this purpose.

3       233.    In some instances, such as on the Delta Coves Project owned by Plaintiff SunCal

4   Delta Coves, Lehman ALI bypassed SunCal as the ostensible Project manager and dealt with third-

5   party contractors directly; Lehman ALI also tried to exercise control over SunCal staff directly,

6   bypassing SunCal's management structure.

7       234.    Lehman ALI and/or LCPI also controlled decisions regarding which creditors would

8   get paid, and Lehman ALI engaged Radco to negotiate such payments for the sixteen Projects

9   subject to the Restructuring Agreement.

10      235.    Lehman ALI and/or LCPI have engaged in a variety of pre- and post-petition

11  inequitable conduct, including the following:

12          •    LCPI cross-collateralized loans among multiple Debtors, including Plaintiffs
         SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, SunCal I and SunCal III,
13       some of whom received little or no benefit, so as to shift its lending risks to unsecured
         creditors and make SunCal and the Debtors even more unlikely to be able to elude its
14       domination and control. SCC Palmdale likewise got nothing for its indebtedness.

15          •    Lehman ALI similarly cross-collateralized loans, for the same purpose and to
         the same effect, on the Marblehead and Heartland Projects owned by Plaintiffs SunCal
16       Marblehead and SunCal Heartland, respectively; the Del Amo and Oak Knoll Projects owned
         by Plaintiffs SunCal Torrance and SunCal Oak Knoll, respectively; and the Del Rio, Joshua
17       Ridge, and Tesoro Burnham Projects owned by Plaintiffs SunCal Del Rio, SunCal Tesoro
         and SCC Communities, respectively.

18
            •    Lehman ALI and LCPI induced SunCal and each of the Plaintiff Debtors to
19       incur massive additional indebtedness on each of the Projects, through representations that
         they would cover vendor payables and pay for third-party work they authorized, including
20       work that was required by municipalities to be performed and bonded, and through promises
         of an overall restructuring of all of the Projects.
21
            •    Lehman ALI made similar promises of funding and inducements with regard
22       to the three Projects—Delta Coves, Del Amo and Oak Knoll—that were not formally made
         part of the parties' Restructuring Agreement.
23
            •    Lehman ALI dragged out the effectuation of the Restructuring Agreement, so
24       as to make SunCal and the subject Debtors even more cash-strapped and more desperate for
         funds to pay creditors, in order to induce them to accept onerous terms.
25
            •    After pressuring and threatening Debtors to enter into the onerous
26       Restructuring Agreement, Lehman ALI then failed to provide required funding under the
         Restructuring Agreement, thereby preventing Debtors' ability to pay creditors and develop
27       and maintain the Projects, including addressing central health and safety issues, and exposing
         the bond companies and the bond indemnitors to liability for work performed and being
28       performed. Lehman ALI also failed to provide promised funding as to the four Projects not

56

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    subject to the Restructuring Agreement.

2    • Lehman ALI and LCPI surreptitiously transferred their liens and loans on at least fifteen of the Projects to Lehman affiliates or third parties in order to stave off a

3    Lehman liquidity crisis, at the same time that they were signing restructuring settlement documents with the Debtors and purporting to be willing and able to proceed to Closing of

4    the Settlement Agreement.

5    • Lehman ALI (along with LV Pacific Point) fraudulently induced SJD Partners and SJD Development to consent to LV Pacific Point's foreclosure of the Pacific Point

6    Project by promising to cover bond and vendor obligations and pay for lender-authorized work, when it knew that an LBHI bankruptcy was looming and that payment would not be

7    forthcoming.

8    • Lehman ALI and LCPI refused and failed to proceed to Closing of the Settlement Agreement when they were contractually required to do so.

9

10    • Lehman ALI and LCPI repudiated the Restructuring Agreement without cause. Lehman ALI also repudiated its funding obligations regarding the four non-covered Projects.

11

12    • Lehman ALI improperly filed notices of default on properties—Del Amo, Delta Coves, Oak Knoll, and Palm Springs Village—that were not yet in bankruptcy.

13    • Lehman ALI induced the Lehman Equity Members in Trustee Debtors SunCal Delta Coves, SunCal Oak Knoll, SunCal PSV, and SunCal Torrance to breach their fiduciary

14    duties to these Trustee Debtors and their creditors in favor of their lender-affiliate, by refusing to fund the Projects, refusing to consent to bankruptcy filings, or take any other

15    steps to avoid a lender foreclosure.

16    • LCPI and Lehman ALI filed their respective proofs of claim against the estates of Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit,

17    Palmdale Hills, SunCal I, SunCal III, SunCal Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal PSV, and SunCal Oak Valley, in which they purported to own Sold

18    Loans which LCPI had actually sold to Fenway pre-petition. They at least in part did so for the purpose of "justifying" LCPI's repeated false invocation of its automatic stay.

19

20    • LCPI brought its Stay Relief Motions against Plaintiffs SunCal Acton, SunCal Bickford, SunCal Emerald Meadows, SunCal Summit, Palmdale Hills, and SunCal I to

21    foreclose on their Projects; Lehman ALI filed the Stay Relief Motion in the SunCal Bickford proceeding to foreclose on the Bickford Ranch Project; and both Lehman Lenders objected to

22    virtually every action the Debtors have taken in their efforts to reorganize the Projects—all without disclosing the true owner of the Loans at issue.

23    • LCPI repeatedly invoked its automatic stay to prevent the Debtors from obtaining a priming loan, using cash collateral, or otherwise obtaining funds to address the

24    Projects' critical needs and preserve the value of the Projects (which are LCPI's own purported collateral), and to justify its Stay Relief Motions. In fact, as LCPI well knew,

25    LCPI's automatic stay was not and has never been applicable.

26    • LCPI's conduct also forced Plaintiffs SunCal Acton, SunCal Bickford, SunCal Emerald and Palmdale Hills, and all of the Trustee Debtors all except SunCal Torrance, to

27    accede to a $1.7 million super-priority "loan" from Lehman ALI that was really a release of the same funds sought to be accessed via the Cash Collateral Motion.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    • LCPI even invoked its stay to oppose the Sales Procedures Motion, which has
only involved Lehman ALI-financed Projects. LCPI's false assertion of its automatic stay is
2    what induced Debtors to leave LCPI-financed Projects out of the proposed sale in the first
place, even though they had intended to include them.

3

236.    Lehman ALI and LCPI's inequitable conduct has caused and continues to cause

4    damage not only to the Plaintiff Debtors but to all of their creditors as well. Lehman ALI and

5    LCPI's course of conduct of making repeated assurances of funding, drawing out the process, and

6    ultimately refusing to provide needed funding caused them to take on additional third-party debt that

7    they could not pay, increased the fees, penalties and interest assessed against the Debtors, and

8    deepened the Debtors' insolvency, including their exposure to bond claims. Their actions forced the

9    Debtors into bankruptcy, but they have done everything in their power to prevent bankruptcy filings,

10    and to thwart or delay Debtors' reorganization efforts once their bankruptcies began, so as to avoid

11    any outcome other than a foreclosure that leaves nothing for unsecured creditors. They have

12    impeded steps by the Debtors to preserve value in the Projects. They have made and continue to

13    make the Debtors' bankruptcies more time-consuming, expensive and burdensome through their lack

14    of candor and obstructionist tactics. All this has worked to the detriment of the Debtors' respective

15    creditors, diminishing their prospects for recovery.

16

### LV Pacific Point

17

237.    LV Pacific Point, along with Lehman ALI, represented in the Settlement Agreement

18    that it would assume Pacific Point accounts payable and bond obligations, and pay for work

19    authorized by Lehman ALI, in exchange for SunCal, SJD Partners and SJD Development's consent

20    to a foreclosure. On information and belief, Lehman ALI and LV Pacific Point knew as of the

21    August 2008 Settlement Agreement and foreclosure that, due to LBHI's own financial crisis, they

22    would not be assuming these obligations upon foreclosure as promised. But for these defendants'

23    fraud, LV Pacific Point would not have obtained Plaintiffs' consent to the foreclosure, and SJD

24    Partners would continue to own the property. This inequitable conduct has harmed all of the other

25    creditors of SJD Partners (as well as SJD Development), not only because SJD Partners was induced

26    to incur third-party debt it could not pay, but because it no longer has the Pacific Point property to

27    satisfy these creditors' claims. As noted below, this Court should invalidate the foreclosure and

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1   restore the Pacific Point property to SJD Partners. To the extent that Lehman ALI and/or LV Pacific

2   Point have claims and liens against SJD Partners or SJD Development, their claims should be

3   equitably subordinated to the claims of the other creditors of these Debtors, and those liens should be

4   preserved for the benefit of and transferred to these Debtors' estates.

5       238.   Even aside from its own inequitable conduct, to the extent that LV Pacific Point is or

6   purports to be a successor to Lehman ALI's loans and liens on the Pacific Point Project, it holds

7   claims that are equally subject to equitable subordination, and its liens equally subject to transfer to

8   SJD Partners' estate, as if it were Lehman ALI.

9   ***OVC and Northlake***

10       239.   To the extent that OVC Holdings and Northlake Holdings are or purport to be

11   transferees of Lehman ALI's loans to Plaintiffs SunCal Oak Valley and SunCal Northlake and the

12   liens on the Oak Valley and Northlake Projects, respectively, and to the extent that their claims have

13   not been transferred to Fenway, they hold claims that are equally subject to equitable subordination,

14   and their liens equally subject to transfer to the estates.

15       240.   Not only does a transferee take a claim subject to all defenses that could be raised

16   against the transferor, but OVC and Northlake Holdings' claims, if any, are also subject to equitable

17   subordination based on their own insider status and own inequitable conduct.

18       241.   Like Lehman ALI, OVC Holdings and Northlake Holdings are statutory insiders. On

19   information and belief, LBHI has had a 100% ownership interest in both OVC and Northlake

20   Holdings. At the same time, LBHI wholly owns the Lehman Equity Members in SunCal Oak Valley

21   and SunCal Northlake, which themselves have at least a 50% ownership interest in SunCal Oak

22   Valley and SunCal Northlake, respectively.

23       242.   OVC and Northlake Holdings' inequitable conduct includes the following:

24          •   As evidenced by, among other things, recent joint correspondence on behalf
of Lehman ALI, LCPI, OVC and Northlake Holdings, these four entities are controlled by

25   the same people within Lehman. OVC Holdings and Northlake Holdings became successors
to Lehman ALI's liens and loans with knowledge of the former's inequitable conduct, and as

26   part of a scheme to usurp the Oak Valley and Northlake Projects without assuming the
previously promised obligations.

27

28          •   OVC and Northlake Holdings have purported to step into Lehman ALI's
shoes as the lenders on the Oak Valley and Northlake Projects, but they did nothing to fulfill

Lehman ALI's obligation as the "Lender" under the Restructuring Agreement.

•   They apparently surreptitiously transferred the Oak Valley and Northlake Loans to LCPI so that LCPI could sell them to Fenway under a Repo, in order to stave off a Lehman liquidity crisis, at the same time that they were signing restructuring settlement documents with SunCal Oak Valley and SunCal Northlake and purporting to be willing and able to proceed to Closing.

•   They signed but refused to proceed toward Closing of the Settlement Agreement.

•   They induced the Lehman Equity Members in SunCal Oak Valley and SunCal Northlake to refuse to fund their Projects, and to refuse to put these Debtors in bankruptcy, in order to avoid any outcome other than a foreclosure to benefit the lenders, in violation of the Lehman Equity Members' fiduciary duties, and to the detriment of the interests of SunCal Oak Valley and SunCal Northlake and their respective creditors.

•   They filed pleadings and proofs of claim with this Court in the estates of SunCal Oak Valley and SunCal Northlake based on their purported ownership of Sold Loans, without disclosing that LCPI had sold those Loans to a third party pre-petition, at least in part in order to "justify" LCPI's repeated false invocation of its automatic stay.

243.   This inequitable conduct has harmed the other creditors of SunCal Oak Valley and SunCal Northlake, respectively, as described above.

### *The Other Successor Lenders*

244.   To the extent that Fenway is the transferee of Lehman ALI, LCPI, OVC or Northlake Holdings' loans and associated liens on any of the Projects based on any of the Sold Loans, Fenway holds claims that are subject to equitable subordination, and its liens subject to transfer to the Plaintiff Debtors' respective estates. Not only does a transferee take a claim subject to all defenses that could be raised against the transferor, but, on information and belief, Fenway purchased the Sold Loans with knowledge that its transaction was part of an effort by LCPI to obtain liquidity for LBHI from JP Morgan that appeared to be collateralized by something other than the Sold Loans. Fenway is liable as an insider for claims relating to loans held by insiders Lehman ALI, LCPI, OVC or Northlake Holdings, and/or for acts of inequitable conduct undertaken by these entities on Fenway's behalf.

245.   To the extent that Lehman Re is the transferee of Lehman ALI's and/or LV Pacific Point's loans and liens on the Pacific Point Project formerly owned by Plaintiff SJD Partners, and to the extent that Lehman Re has purported claims against SJD Partners or SJD Development, Lehman

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1 Re holds claims that are equally subject to equitable subordination, and its liens equally subject to

2 transfer to these Debtors' estates. Not only does a transferee take a claim subject to all defenses that

3 could be raised against the transferor, but, on information and belief, Lehman Re accepted the

4 transfer with knowledge that it was part of an effort by Lehman ALI and LV Pacific Point to avoid

5 their obligations to SJD Partners, SJD Development and their creditors. Lehman Re is liable as an

6 insider for claims relating to loans held by insider Lehman ALI.

7      246.   By reason of the foregoing, Plaintiffs are entitled to equitably subordinate the

8 respective Defendants' secured claims against the respective Plaintiff Debtors to the general

9 unsecured claims, mechanic's lien claims, and priority and administrative claims against the

10 respective Debtors, and to preserve the Defendants' liens for the benefit of the respective Debtors'

11 estates. The total value of the claims to be equitably subordinated will be proven at trial, but is at

12 least $365 million. Equitable subordination under the circumstances will achieve a result that is

13 consistent with the purposes of the Bankruptcy Code.

14 <div align="center">VI.</div>

15 <div align="center">**SECOND CLAIM FOR RELIEF**</div>

16 <div align="center">**(Fraudulent Inducement –**</div>

17 <div align="center">**By SJD Partners against LV Pacific Point)**</div>

18      247.   Plaintiffs repeat and reallege each and every foregoing and subsequent allegation

19 contained in the Complaint, and further allege as follows:

20      248.   Lehman ALI and LV Pacific Point represented under the terms of the May 23, 2008

21 Restructuring Agreement, and under the August 25, 2008 Settlement Agreement, that Lehman ALI

22 and/or LV Pacific Point would assume the millions of dollars in outstanding accounts payable for

23 Pacific Point third-party vendors and millions in bond obligations, as well as pay for work

24 authorized by Lehman ALI to be performed.

25      249.   Frank Gilhool signed the Settlement Agreement as an authorized signatory of both

26 Lehman ALI and LV Pacific Point.

27      250.   Lehman ALI and LV Pacific Point made these representations for the purpose of

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

<div align="center">61</div>

61767.3

1    inducing SunCal, SJD Development and SJD Partners, then the owner of the Pacific Point property,

2    to consent to LV Pacific Point foreclosing upon the property. These representations in fact induced

3    Plaintiffs' consent.

4        251.    These representations were false. LV Pacific Point foreclosed upon and took

5    ownership of the Pacific Point property; but LV Pacific Point and Lehman ALI have left millions in

6    outstanding payables and bond liabilities on which Plaintiffs remain exposed.

7        252.    Indeed, despite obtaining—at Lehman ALI's request—an estoppel certificate from

8    the City of San Juan Capistrano days before the foreclosure, which stated that there had been no

9    breaches of any agreements with the City by SJD Partners, it is SunCal, SJD Partners and SJD

10    Development, and not Lehman ALI or LV Pacific Point, that have been facing millions of dollars of

11    vendor and bond claims, even for amounts arising after the estoppel certificate was signed.

12        253.    On information and belief, just days after the August 28, 2008 foreclosure, Lehman

13    ALI and/or LV Pacific Point transferred their liens on the property to Lehman Re. The parent

14    Lehman entity, LBHI, filed for bankruptcy just days later, on September 15, 2008.

15        254.    On information and belief, Lehman ALI and LV Pacific Point did not intend to honor

16    their promises to cover the payables and bond obligations when they executed the Settlement

17    Agreement, obtained the estoppel certificate, and effectuated the foreclosure in late August 2008.

18    Gilhool's superiors within Lehman who were in charge of Lehman ALI and LV Pacific Point,

19    including Walsh, knew of and authorized or directed the representations being made by him, and the

20    transactions being entered into through him. Yet at the time, they knew that Lehman's liquidity

21    crisis was acute, and knew that neither Lehman ALI nor LV Pacific Point would provide the

22    promised payment.

23        255.    But for Lehman ALI and LV Pacific Point's wrongdoing, LV Pacific Point would not

24    have obtained Plaintiffs' consent to the foreclosure, and would not have obtained title to the

25    property. Rather, SJD Partners would continue to own the property, and the Pacific Point property

26    would still be part of its bankruptcy estate. .

27        256.    Because SJD Partners' consent was fraudulently induced by Lehman ALI and LV

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

61767.3

1   Pacific Point, this Court should rescind the parties' agreement to the extent that SJD Partners

2   consented to the foreclosure and sale of the Pacific Point property; invalidate the foreclosure sale

3   and/or impose a constructive trust upon the Pacific Point property; and direct LV Pacific Point to

4   transfer title back to its rightful owner, SJD Partners.

5       257.   As noted above, once the Pacific Point property is restored to its rightful owner,

6   claims based on the Pacific Point Second Loan, and any associated liens held by the Defendants,

7   should be equitably subordinated pursuant to 11 U.S.C. §510(c) to the claims of the other creditors

8   of SJD Partners and/or SJD Development, and those liens should be preserved for the benefit of and

9   transferred to those Debtors' estate.

## VII.

## THIRD CLAIM FOR RELIEF

**(To Avoid and Recover Fraudulent Transfers – 11 U.S.C. §§ 544(b), 548, Cal. Civil Code §§
3439.04 and 3439.05 – By SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit,
SunCal I, and SunCal III against Fenway; by SunCal Del Rio, SunCal Tesoro and SCC
Communities, and by the Trustee on behalf of SunCal Oak Knoll and SunCal Torrance,
against Lehman ALI; and by the Trustee on behalf of SunCal Marblehead and SunCal
Heartland against Lehman ALI and Fenway)**

18       258.   Plaintiffs repeat and reallege each and every foregoing and subsequent allegation

19   contained in the Complaint, and further allege as follows:

***SunCal Communities I Loan***

21       259.   LCPI filed identical proofs of secured claims against SunCal I (No. 1), SunCal III (No.

22   2), SunCal Acton (No. 6), SunCal Emerald (No. 7), SunCal Bickford (No. 16), and SunCal Summit

23   (No. 12) arising from the SunCal Communities I Loan Agreement in the amount of $343,221,391.

24       260.   A UCC Financing Statement was recorded by LCPI against SunCal I's interest in

25   SunCal Acton, SunCal Summit, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal

26   Bickford on November 22, 2005.  A UCC Financing Statement was recorded by LCPI against

27   SunCal Summit's interest in Seven Brothers and Kirby on December 12, 2006.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

261.  A deed of trust was recorded by LCPI against the property owned by SunCal Bickford on August 25, 2006.  A deed of trust was recorded by LCPI against the property owned by Acton Estates on January 6, 2007.  A deed of trust was recorded by LCPI against the property owned by SunCal Emerald on July 19, 2007.

262.  The incurrence of the foregoing obligations and the transfers of interests are referred to herein as the "SunCal Communities I Transfers."

263.  The funds advanced under the SunCal Communities I Loan Agreement were such that some of these Debtors received more and others received less funds:  SunCal Acton ($380,069), SunCal Emerald ($44,763,858), SunCal Beaumont ($42,030,925), SunCal Johannson ($14,636,674), SunCal Bickford ($174,570,287) and SunCal Summit ($9,925,373).  SunCal I and SunCal III never received any of these funds or any other consideration for the $343,221,391 proofs of secured claim filed against them.

264.  LCPI's documentation under the SunCal Communities I Loan Agreement reduces the amounts owing by the Debtors by any portion that constitutes a fraudulent conveyance.

265.  LCPI's $343,221,391 proof of secured claim gives rise to a fraudulent conveyance claim in favor of SunCal Acton's estate against LCPI in the amount of $342,841,322; in favor of SunCal Emerald's estate against LCPI in the amount of $298,457,533; in favor of SunCal Bickford's estate against LCPI in the amount of $168,651,104; in favor of SunCal Summit's estate against LCPI in the amount of $333,296,018; in favor of SunCal I's estate against LCPI in the amount of $343,221,391; and in favor of SunCal III's estate against LCPI in the amount of $343,221,391.

266.  The SunCal I Loan Agreement Transfers are transfers as that term is defined in 11 U.S.C. § 101(54).

267.  The SunCal I Loan Agreement Transfers were made for the benefit of LCPI.

268.  These Debtors became insolvent as a result of the SunCal Communities I Loan Transfers.

269.  These Debtors were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with such Debtors were an unreasonably

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

64

61767.3

1   small capital in relation to the business or transaction.

2       270.   These Debtors received less than the reasonably equivalent value in exchange for such

3   transfer.

4       271.   The SunCal Communities I Loan Transfers were made at a time when there existed at

5   least one creditor of each of these Debtors who holds an unsecured claim that is allowable under 11

6   U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

7       272.   To the extent that Fenway was a transferee of the SunCal Communities I Loan

8   Transfers, it was not a good faith transferee.

9       273.   Plaintiff Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit,

10   SunCal I, and SunCal III are therefore entitled to set aside the SunCal Communities I Loan

11   Transfers, including the liens, pursuant to 11 U.S.C. §§ 544(b), 548 and Cal. Civil Code §§ 3439.04

12   and 3439.05.

13   *Oak Knoll/Torrance Loan*

14       274.   Lehman ALI filed identical proof of secured claim No. 12 against SunCal Oak Knoll

15   and proof of secured claim No. 4 against SunCal Torrance arising from the Oak Knoll/Torrance

16   Loan Agreement in the amount of $158,141,365.

17       275.   Deeds of trust were recorded by Lehman ALI against the properties owned by SunCal

18   Torrance and SunCal Oak Knoll on December 30, 2005 and March 30, 2006, respectively.

19       276.   The incurrence of the foregoing obligations and the transfers of interests are referred to

20   herein as the "SunCal Oak Knoll/SunCal Torrance Transfers."

21       277.   The Oak Knoll/Torrance Loan Agreement was cross-collateralized by the Oak Knoll

22   Project and the Del Amo Project.  The loan proceeds received by SunCal Oak Knoll was

23   $103,575,426 and the loan proceeds received by SunCal Torrance was $45,185,350.

24       278.   This lending arrangement, as structured, creates a fraudulent conveyance claim in

25   favor of SunCal Oak Knoll against Lehman ALI in the amount of $54,565,939, and in favor of

26   SunCal Torrance against Lehman ALI in the amount of $112,956,015.

27       279.   The SunCal Oak Knoll/SunCal Torrance Transfers are transfers as that term is defined

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1   in 11 U.S.C. § 101(54).

2   280. These Transfers were made for the benefit of Lehman ALI.

3   281. SunCal Oak Knoll and SunCal Torrance received less than a reasonably equivalent

4   value in exchange for the SunCal Oak Knoll/SunCal Torrance Transfers.

5   282. These Debtors became insolvent as a result of the SunCal Oak Knoll/SunCal Torrance

6   Transfers.

7   283. These Debtors were engaged in business or a transaction, or were about to engage in

8   business or a transaction, for which any property remaining with such Debtors were an unreasonably

9   small capital in relation to the business or transaction.

10   284. The SunCal Oak Knoll/SunCal Torrance Transfers were made at a time when there

11   existed at least one creditor of each of these Debtors who holds an unsecured claim that is allowable

12   under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

13   285. The Trustee, on behalf of SunCal Torrance and SunCal Oak Knoll, is therefore entitled

14   to set aside the SunCal Oak Knoll/SunCal Torrance Transfers, including the liens, pursuant to 11

15   U.S.C. §§ 544(b), 548 and Cal. Civil Code §§ 3439.04 and 3439.05.

16   _**Interim Loan**_

17   286. Lehman ALI has filed identical proof of secured claim No. 9 against SCC

18   Communities, proof of secured claim No. 7 against SunCal Tesoro, and proof of secured claim

19   No. 14 against SunCal Del Rio arising from the Interim Loan Agreement in the amount of

20   $23,795,013.

21   287. Deeds of trust were recorded against the properties owned by SunCal Tesoro and SCC

22   Communities on November 2, 2007. The Interim Loan Agreement is also allegedly secured by an

23   alleged first-priority lien on the proceeds of the SunCal Del Rio CFD Bonds.

24   288. The incurrence of the foregoing obligations and the transfers of interests are referred to

25   herein as the "Interim Loan Transfers."

26   289. None of the proceeds from the Interim Loan Agreement were used to fund SCC

27   Communities, SunCal Tesoro or SunCal Del Rio. Consequently, SunCal Del Rio, SunCal Tesoro

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

66

61767.3

1  and SCC Communities each have fraudulent conveyance claims against Lehman ALI arising from

2  the identical proofs of secured claims filed against them arising from the Interim Loan Agreement in

3  the amount of 23,795,013.

4       290.  The Interim Loan Agreement Transfers are transfers as that term is defined in 11

5  U.S.C. § 101(54).

6       291.  The Interim Loan Agreement Transfers were made for the benefit of Lehman ALI.

7       292.  SCC Communities, SunCal Tesoro and SunCal Del Rio received less than a reasonably

8  equivalent value in exchange for the Interim Loan Agreement Transfers.

9       293.  These Debtors became insolvent as a result of the Interim Loan Agreement Transfers.

10       294.  These Debtors were engaged in business or a transaction, or were about to engage in

11  business or a transaction, for which any property remaining with such Debtors were an unreasonably

12  small capital in relation to the business or transaction.

13       295.  These Transfers were made at a time when there existed at least one creditor of each of

14  these Debtors who holds an unsecured claim that is allowable under 11 U.S.C. § 502 or that is not

15  allowable only under 11 U.S.C. § 502(e).

16       296.  Plaintiffs SCC Communities, SunCal Tesoro and SunCal Del Rio are therefore entitled

17  to set aside the Interim Loan Agreement Transfers, including the liens, pursuant to 11 U.S.C. §§

18  544(b), 548 and Cal. Civil Code §§ 3439.04 and 3439.05.

19  ***Marblehead / Heartland Loan***

20       297.  Lehman ALI filed identical proof of secured claim No. 9 against SunCal Heartland and

21  No. 21 against SunCal Marblehead in the amount of $354,325,126 based on the Marblehead/

22  Heartland Loan Agreement.

23       298.  Deeds of trust were recorded by Lehman ALI against the properties owned by SunCal

24  Marblehead and SunCal Heartland on October 4, 2007.

25       299.  The incurrence of the foregoing obligations and the transfers of interests are referred to

26  herein as the "SunCal Marblehead/SunCal Heartland Transfers."

27       300.  The Marblehead/Heartland Loan Agreement was cross-collateralized by the

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL:(310) 552-4400  FAX:(310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    Marblehead Project and the Heartland Project. The loan proceeds received by SunCal Marblehead
2    was $258,843,352 and the loan proceeds received by SunCal Heartland was $49,594,848.

3        301.    This lending arrangement, as structured, creates a fraudulent claim in favor of SunCal
4    Marblehead against Lehman ALI in the amount of $95,481,774, and in favor of SunCal Heartland
5    against Lehman ALI in the amount of $304,730,278.

6        302.    The SunCal Marblehead/SunCal Heartland Transfers are transfers as that term is
7    defined in 11 U.S.C. § 101(54).

8        303.    The SunCal Marblehead/SunCal Heartland Transfers were made for the benefit of
9    Lehman ALI.

10        304.    These Debtors became insolvent as a result of the SunCal Marblehead/SunCal
11    Heartland Transfers.

12        305.    These Debtors were engaged in business or a transaction, or were about to engage in
13    business or a transaction, for which any property remaining with such Debtors were an unreasonably
14    small capital in relation to the business or transaction.

15        306.    These Debtors received less than the reasonably equivalent value in exchange for the
16    SunCal Marblehead/SunCal Heartland Transfers.

17        307.    The SunCal Marblehead/SunCal Heartland Transfers were made at a time when there
18    existed at least one creditor of each of these Debtors who holds an unsecured claim that is allowable
19    under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

20        308.    To the extent that Fenway was a transferee of the SunCal Marblehead/SunCal
21    Heartland Transfers, it was not a good faith transferee.

22        309.    The Trustee, on behalf of SunCal Marblehead and SunCal Heartland, is therefore
23    entitled to set aside the SunCal Marblehead/SunCal Heartland Transfers, including the liens,
24    pursuant to 11 U.S.C. §§ 544(b), 548 and Cal. Civil Code §§ 3439.04 and 3439.05.

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

61767.3

# VIII.

## FOURTH CLAIM FOR RELIEF

(To Avoid and Recover Preferential Transfers – 11 U.S.C. § 547 –

By the Trustee on behalf of SunCal Delta Coves against Lehman ALI and Fenway, and on

behalf of SunCal Century City against Lehman ALI)

310.   Plaintiffs repeat and reallege each and every foregoing and subsequent allegation contained in the Complaint, and further allege as follows:

***Delta Coves***

311.   SunCal Delta Coves made pre-petition payments in the amount of $6,195,440.46 to Lehman ALI (the "Delta Coves Preferential Transfers"). The Delta Coves Preferential Transfers were to or for the benefit of Lehman ALI within the meaning of 11 U.S.C. § 547.

312.   The Delta Coves Preferential Transfers were made for, or on account of, an antecedent debt owed by Delta Coves to Lehman ALI before the Delta Coves Preferential Transfers were made.

313.   Delta Coves was insolvent throughout such period.

314.   Lehman ALI was a creditor of Delta Coves at the time of the Delta Coves Preferential Transfers within the meaning of 11 U.S.C. § 101(10).

315.   Lehman ALI was an insider of Delta Coves within the meaning of 11 U.S.C. § 101(31).

316.   The Delta Coves Preferential Transfers were made within the year preceding Delta Cove's involuntary proceeding.

317.   The Delta Coves Preferential Transfers were made at a time that the Delta Cove Loan Agreement was undersecured.

318.   Lehman ALI asserts that the Delta Coves Project has a fair market value of $25,200,000.

319.   Lehman ALI submitted an alleged proof of a secured claim against SunCal Delta Coves of $206,023,142 (proof of secured claim No. 21).

320.   To the extent that Fenway was a transferee of the Delta Coves Preferential Transfers, it

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL:(310) 552-4400   FAX:(310) 552-8400

69

61767.3

1    was not a good faith transferee.

2        321.    As a result of the Delta Coves Preferential Transfers, Lehman ALI received more than

3    it would have received if: (i) this case was a case under chapter 7 of the Bankruptcy Code; (ii) the

4    Delta Coves Preferential Transfers had not been made; and (iii) Lehman ALI received payment of

5    such antecedent debt under the provisions of the Bankruptcy Code.

6        322.    The Trustee, on behalf of SunCal Delta Coves, is entitled to avoid the Delta Coves

7    Preferential Transfers, pursuant to 11 U.S.C. § 547(b).

8    ***Century City***

9        323.    SunCal Century City made pre-petition transfers in the amount of $10,628,948.64 to

10    Lehman ALI (the "Century City Preferential Transfers"). The Century City Preferential Transfers

11    were to or for the benefit of Lehman ALI within the meaning of 11 U.S.C. § 547.

12        324.    The Century City Preferential Transfers were made for, or on account of, an antecedent

13    debt owed by SunCal Century City to Lehman ALI before such Transfers were made.

14        325.    SunCal Century City was insolvent throughout such period.

15        326.    Lehman ALI was a creditor of SunCal Century City at the time of the Century

16    City Preferential Transfers within the meaning of 11 U.S.C. § 101(10).

17        327.    Lehman ALI was an insider of SunCal Century City within the meaning of 11

18    U.S.C. § Section 101(31).

19        328.    The Century City Preferential Transfers were made within the year preceding SunCal

20    Century City's involuntary proceeding.

21        329.    The Century City Preferential Transfers were made at a time that the SunCal Century

22    City Loan Agreement was undersecured.

23        330.    Lehman ALI asserts that the 10,000 Santa Monica Project has a fair market value of

24    $50,900,000.

25        331.    As a result of the Century City Preferential Transfers, Lehman ALI received more than

26    it would have received if: (i) this case was a case under chapter 7 of the Bankruptcy Code; (ii) the

27    Century City Preferential Transfers had not been made; and (iii) Lehman ALI received payment of

28

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1   such antecedent debt under the provisions of the Bankruptcy Code.

2       332.   The Trustee, on behalf of SunCal Century City, is entitled to avoid the Century City

3   Preferential Transfers pursuant to 11 U.S.C. § Section 547(b).

4   <div align="center">IX.</div>

5   <div align="center">**FIFTH CLAIM FOR RELIEF**</div>

6   <div align="center">**(To Void Liens – 11 U.S.C. § 506(d) – By SunCal I and SunCal III against Fenway; and by**</div>

7   <div align="center">**SunCal Bickford against Lehman ALI)**</div>

8       333.   Plaintiffs repeat and reallege each and every foregoing and subsequent allegation

9   contained in the Complaint, and further allege as follows:

10   ***SunCal Communities I Loan***

11       334.   The value of LCPI's interest in SunCal I's equity interests in SunCal Acton, SunCal

12   Summit, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal Bickford is zero.

13       335.   The value of LCPI's interest in SunCal III's non-existent interests is zero.

14       336.   Therefore, LCPI's liens (1) against SunCal I's equity interests in SunCal Acton,

15   SunCal Summit, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal Bickford; and

16   (2) against the SunCal III estate are void pursuant to 11 U.S.C. § 506(d).

17       337.   To the extent that Fenway is the transferee of these liens, they are equally as void,

18   pursuant to 11 U.S.C. § 506(d), as if they were still in the hands of LCPI.  Fenway is not in

19   bankruptcy and has no applicable automatic stay.

20   ***Bickford Second Loan***

21       338.   The value of Lehman ALI's interest in the second priority deed of trust on the

22   Bickford Ranch Project is zero.

23       339.   Therefore, Lehman ALI's second priority lien against the Bickford Ranch Project

24   owned by SunCal Bickford is void pursuant to 11 U.S.C. § 506(d).

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 · LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

<div align="center">71</div>

X.

## SIXTH CLAIM FOR RELIEF

(To Disallow Claims and Liens – 11 U.S.C. § 502(d) —

By by SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, SunCal I, and

SunCal III against Fenway; by SunCal Del Rio, SunCal Tesoro and SCC Communities, and by

the Trustee on behalf of SunCal Oak Knoll and SunCal Torrance, against Lehman ALI; by the

Trustee on behalf of SunCal Delta Coves, SunCal Marblehead and SunCal Heartland against

Lehman ALI and Fenway; and by the Trustee on behalf of SunCal Century City against

Lehman ALI)

340.    Plaintiffs repeat and reallege each and every foregoing and subsequent allegation

contained in the Complaint, and further allege as follows:

341.    Defendants are entities from which property is recoverable under 11 U.S.C. §§ 542,

543, 550 or 553, or are transferees of one or more avoidable transfers under 11 U.S.C. §§ 522(f),

522(h), 544, 545, 547, 548, 549, or 724(a).

342.    Defendants have not paid the amount, or turned over any such property for which

Defendants are liable under 11 U.S.C. §§ 522(i), 542, 543, 550, or 553.

343.    Pursuant to Section 502(d) of the Bankruptcy Code, the Defendants' claims are

disallowable and the liens associated with such claims are avoidable.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

61767.3

XI.

## SEVENTH CLAIM FOR RELIEF

### (To Preserve Claims and Liens for the Respective Debtors' Estates -- 11 U.S.C. §§ 551 and 541(a)(4) – Against All Defendants)[20]

344.    Plaintiffs repeat and reallege each and every foregoing and subsequent allegation contained in the Complaint, and further allege as follows:

345.    Pursuant to 11 U.S.C. § 551 and 541(a)(4), any fraudulent transfer or preferential transfer that is avoided pursuant to 11 U.S.C. §§ 544(b), 547 or 548, any lien found to be void under 11 U.S.C. § 506(d), and any claim or lien subject to subordination under 11 U.S.C. § 510(c) should be preserved for the benefit of and/or transferred to the respective Debtor's estate.

XII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter a judgment against Defendants as follows:

1.    For equitable subordination of the Defendants' claims against the Plaintiff Debtors to the unsecured creditors claims, mechanic lien claims, and priority and administrative claims against the respective Plaintiff Debtors' estates; and for the preservation of any liens held by the Defendants for the benefit of, and transfer to, the respective Plaintiff Debtors' estates;

2.    for: (a) an order rescinding the agreement among SJD Partners, Lehman ALI and LV Pacific Point regarding the foreclosure and sale of the Pacific Point property, invalidating the

---

[20] In the March 8, 2010 oral ruling on the Lehman Entities' and Fenway's respective motions to dismiss the Third Amended Complaint, the Court held that the Ninth Claim for Relief (currently the Seventh Claim) to preserve claims and liens was dismissed "for the reasons stated in the motion." The Lehman Entities' motion to dismiss contained a single line of argument regarding the Ninth Claim (at 52:27-28): "As discussed, the Plaintiffs have failed to state claims for which relief can be granted. Thus, Claim Nine must be dismissed." Their reply brief did not mention the Ninth Claim, and Fenway's moving papers merely incorporated by reference the Lehman Entities' briefing.

As Defendants acknowledged, the viability of the cause of action to preserve claims and liens is entirely derivative of the other causes of action. In this Fourth Amended Complaint, the Plaintiffs have removed any causes of action which were dismissed from the Third Amended Complaint, and retained the others. Accordingly, Plaintiffs are asserting the cause of action to preserve claims and liens only as to other causes of action that have already been ruled viable.

73

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

61767.3

1  foreclosure sale of the Pacific Point property to LV Pacific Point, and/or imposing a constructive

2  trust on LV Pacific Point directing it to transfer title of the Pacific Point property back to SJD

3  Partners; and (b) equitable subordination of any claims Lehman ALI, LV Pacific Points and/or

4  Lehman Re may have against SJD Partners and/or SJD Development to the unsecured creditors

5  claims, mechanic lien claims, and priority and administrative claims against these Debtors' estates;

6  and for the preservation of any liens held by these Defendants for the benefit of, and transfer to,

7  these Debtors' estates;

8      3.    for avoidance and recovery of the above-alleged preferential transfers pursuant to

9  Sections 547 and 550(a) of the Bankruptcy Code;

10     4.    for avoidance and recovery of the above-alleged fraudulent transfers pursuant to

11  Sections 544(b) and 548 of the Bankruptcy Code, and Sections 3439.04 and 3439.05 of the

12  California Civil Code;

13     5.    for a finding that the above-specified liens are void pursuant to 11 U.S.C. § 506(d);

14     6.    for the disallowance of Defendants' claims and avoidance of the Defendants' liens

15  pursuant to 11 U.S.C. § 502(d);

16     7.    for the preservation of Defendants' claims and liens for the respective Debtor's estate

17  pursuant to 11 U.S.C. § 551 and 541(a); and

18     8.    For such other and further relief as this Court may, in its discretion, deem just and

19  proper, including, without limitation, attorneys' fees, costs and interest, as appropriate.

20

21  Dated: March 26, 2010                    MILLER BARONDESS LLP

22

23                                          By: _____

24                                          Louis R. Miller
                                            Martin Pritikin
25                                          Brian Procel
                                            Special Litigation Counsel for the Jointly
26                                          Administered Debtors in Possession and
                                            Steven M. Speier, the Chapter 11 Trustee

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## APPENDIX A

| Debtor | Creditor | Proof of Claim # | Claim Amount |
|---|---|---|---|
| **Acton Estates, LLC** | | | |
| | SunCal Management, LLC | POC #2 | $ 44,173.26 |
| | SCC Acquisitions, Inc. | POC #3 | $ 3,000.00 |
| | SunCal Management, LLC | POC #4 | $ 59,241.68 |
| | Bond Safeguard Insurance Company and Lexon Insurance Company | POC #7 | $ 1,290,000.00 |
| | SCC Acquisitions, Inc. | POC #8 | $ 1,290,000.00 |
| | Bruce Elieff | POC #9 | $ 1,290,000.00 |
| | Arch Insurance Company | POC #10 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Rohm Insurance Agency | POC #11 | $ 14,150.00 |
| **SunCal Bickford Ranch, LLC** | | | |
| | Cook's Portable Toilets & Septic | POC #1 | $ 2,743.21 |
| | Hertz Equipment Rental Corp. | POC #2 | $ 25.51 |
| | Ecorp Consulting, Inc. | POC #3 | $ 23,211.60 |
| | MHM Engineers & Surveyors | POC #5 | $ 8,916.67 |
| | Land Architecture, Inc. | POC #6 | $ 100,245.39 |
| | Fehr & Peers Associates, Inc.Associates, Inc | POC #7 | $ 1,123.22 |
| | Far West Construction, Inc. | POC #8 | $ 72,502.47 |
| | BIA Riverside Sign Program | POC #9 | $ 5,175.00 |
| | Kiewit Pacific Co. | POC #10 | $ 1,869,357.50 |
| | SunCal Management, LLC | POC #11 | $ 321,103.03 |
| | SCC Acquisitions, Inc. | POC #12 | $ 3,000.00 |
| | SunCal Management, LLC | POC #13 | $ 324,769.28 |
| | ARB, Inc. | POC #15 | $ 1,052,272.62 |
| | SunCal Master Venture Member, LLC | POC #18 | $ 20,451.40 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #19 | $ 2,500,000.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #20 | $ 327,168.00 |
| | Pierce's Security | POC #21 | $ 53,919.09 |
| | Arch Insurance Company | POC #22 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Rohm Insurance Agency | POC #23 | $ 4,095.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #24 | $ 2,827,548.00 |
| | SCC Acquisitions, Inc. | POC #25 | $ 2,827,548.00 |
| | Bruce Elieff | POC #26 | $ 2,827,548.00 |
| | Murray Smith & Associates Engineering | POC #27; POC #31 | $ 77,107.11 |
| | Independent Construction Co. | POC #28 | $ 117,209.80 |
| | Marques Pipeline, Inc. | POC #29; POC #30 | $ 330,118.00 |
| | MacKay & Somps Civil Eng | POC #32 | $ 14,851.80 |
| **SunCal Torrance Properties, LLC** | | | |
| | SunCal Management, LLC | POC #1 | $ 148,578.54 |
| | SunCal Management, LLC | POC #2 | $ 160,914.00 |
| | MWW Group Inc | POC #5 | $ 42,016.25 |
| | Arch Insurance Company | POC #6 | $155,423,657(contingent) $131,588.73 (liquidated) |
| **North Orange Del Rio Land, LLC** | | | |
| | Trench Shoring Company | POC #1 | $ 1,072.50 |
| | Debby Cobb Consulting | POC #2 | $ 415.00 |
| | Carmen A. Morinello | POC #3 | $ 110,000.00 |
| | Elfend & Associates, Inc. | POC #4 | $ 225,000.00 |
| | Matthew Cunningham dba Pacific Strategies | POC #5 | $ 30,000.00 |
| | Econolite Control Products | POC #6 | $ 21,932.51 |
| | SunCal Management, LLC | POC #7 | $ 2,242,240.45 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #8 | $ 3,060,045.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #9 | $ 250,100.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #10 | $ 2,809,945.00 |
| | Bova Contracting Corporation | POC #11 | $ 275,918.33 |
| | SunCal Management, LLC | POC #12 | $ 213,688.78 |
| | SCC Acquisitions, Inc. | POC #15 | $ 3,159,945.00 |
| | Bruce Elieff | POC #16 | $ 3,159,945.00 |
| | Fuscoe Engineering, Inc. | POC #17 | $ 279,974.18 |
| | Hillcrest Contracting, Inc. | POC #18; POC #24 | $ 285,165.93 |
| | Arch Insurance Company | POC #19 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Summers Murphy & Partners, Inc. | POC #20 | $ 59,350.00 |
| | All American Asphalt | POC #21 | $ 124,037.20 |
| | Rohm Insurance Agency | POC #22 | $ 32,075.00 |
| | City of Orange | POC #23 | $ 47,618.75 |

1 of 7

| Debtor | Creditor | Proof of Claim | Claim Amount |
|---|---|---|---|
| **Delta Coves Venture, LLC** | | | |
| | BKF Engineers | POC #1; POC #15 | $ 121,285.84 |
| | Hertz Equipment Rental Corporation | POC #2 | $ 25,444.15 |
| | Top Grade Construction, Inc. | POC #3; POC #17 | $ 250,000.00 |
| | Pacific Gas and Electric Company | POC #4 | $ 4,208.49 |
| | Howard Construction | POC #5 | $ 2,855.00 |
| | Bellingham Marine Industries, Inc. | POC #6 | $ 2,822,157.15 |
| | SunCal Management, LLC | POC #7 | $ 1,084,858.63 |
| | MBH Architects, Inc. | POC #8 | $ 97,091.24 |
| | Environmental Foresight, Inc. | POC #9 | $ 34,903.70 |
| | Weston/Mason Marketing, Tom Weston, President | POC #11 | $ 32,525.76 |
| | Gibson & Skordal, LLC | POC #12 | $ 566.50 |
| | vanderTooten Associates | POC #13; POC #24 | $ 15,028.09 |
| | Development Planning & Financing Group, Inc. | POC #14 | $ 6,428.00 |
| | Contra Costa County | POC #16 | $ 509,221.68 |
| | Rose Associates Landscape Architects, Inc. | POC #18 | $ 64,817.14 |
| | SunCal Management, LLC | POC #19 | $ 448,081.00 |
| | SCC Acquisitions, Inc. | POC#22 | $ 27,555,865.00 |
| | Bruce Elieff | POC #23 | $ 27,555,865.00 |
| | Arch Insurance Company | POC #25 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Luce Forward Hamilton & Scripps LLP | POC #26; POC #27 | $ 20,069.07 |
| | Rohm Insurance Agency | POC #28 | $ 270,225.00 |
| | Jackson DeMarco Tidus & Peckenpaugh | POC #29 | $ 1,890.00 |
| | Fanelli Development Co | POC #30 | $ 48,380.23 |
| | | | |
| **SunCal Emerald Meadows Ranch, LLC** | | | |
| | Zeiser Kling Consultants | POC #1 | $ 8,984.27 |
| | Hillwig - Goodrow, LLC | POC #2 | $ 3,860.00 |
| | O'Reilly Public Relations | POC #3 | $ 987.90 |
| | SCC Acquisitions, Inc. | POC #4 | $ 15,777.78 |
| | SunCal Management, LLC | POC #5 | $ 174,624.56 |
| | SunCal Master Venture Member, LLC | POC #6 | $ 14,071.10 |
| | Arch Insurance Company | POC #10 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | David Sandoval | POC #11 | $ 500,000.00 |
| | Moses Green | POC #12 | $ 500,000.00 |
| | Hall & Foreman, Inc. | POC #13 | $ 288,691.72 |
| | Life Church of God in Christ | POC #14 | $ 5,055,000.00 |
| | Proactive Engineering Consultants, Inc. | POC #15; POC #16 | $ 991,315.27 |
| | Rubidoux 60, LLC and EMR Residential Properties, LLC | POC #17 | Unknown |
| | | | |
| **SunCal Heartland, LLC** | | | |
| | Stantec Consulting, Inc. | POC #1; POC #22 | $ 971,341.56 |
| | HD Supply Construction Supply, LTD., dba HD Supply White Cap Construction Supply | POC #2 | $ 44,310.80 |
| | SunCal Management, LLC | POC #3 | $ 397,455.41 |
| | SCC Acquisitions, Inc. | POC #4 | $ 24,065.05 |
| | SunCal Management, LLC | POC #6 | $ 227,208.85 |
| | Pinnick, Inc. | POC #8 | $ 583,159.02 |
| | SunCal Master Venture Member, LLC | POC #10; POC #12 | $ 1,512.80 |
| | SCC JV Ventures, LLC | POC #11 | $ 3,093.28 |
| | Utility Specialists SW, Inc. | POC #13; POC #14 | $ 3,787.50 |
| | Skyview Imaging | POC #15 | $ 525.00 |
| | Arch Insurance Company | POC #16 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Stantec Consulting, Inc. | POC #17 | $ 39,459.53 |
| | Dennis M. McCoy & Sons | POC #18 | $ 941,960.00 |
| | SCC Acquisitions, Inc. | POC #19 | $ 28,947,440.00 |
| | Bruce Elieff | POC #20 | $ 28,947,440.00 |
| | Hall & Foreman, Inc. | POC #21; POC #23 | $ 1,175.80 |
| | Waterforce, Inc. | POC #24 | $ 113,750.00 |
| | Jackson DeMarco Tidus & Peckenpaugh | POC #25 | $ 3,445.50 |
| | | | |
| **SunCal Johannson Ranch, LLC** | | | |
| | | | $ 76.45 |
| | SCC Acquisitions, Inc. | POC #1 | $ 9,417.65 |
| | SunCal Management, LLC | POC #2 | $ 26,598.23 |
| | SunCal Management, LLC | POC #3 | $ 34,101.28 |
| | Arch Insurance Company | POC #5 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | | | |
| **SCC Communities, LLC** | | | |
| | Southern Cal. Geotechnical | POC #1 | $ 7,550.49 |
| | SunCal Management, LLC | POC #2 | $ 21,804.39 |
| | SCC Acquisitions, Inc. | POC #3 | $ 1,000.00 |

| Debtor | Creditor | POC Number | Claim Amount |
|---|---|---|---|
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #4 | $ 25,000.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #5 | $ 12,500.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #6 | $ 12,500.00 |
| | SunCal Management, LLC | POC #7 | $ 27,072.52 |
| | SCC Acquisitions, Inc. | POC #8 | |
| | Arch Insurance Company | POC #10 | $155,423,657 (contingent) $131,588.73 (liquidated) |
| **SunCal Marblehead, LLC** | | | |
| | Outdoor Dimensions | POC #1 | $ 57,247.88 |
| | Stantec Consulting, Inc. | POC #2; POC #25 | $ 39,459.53 |
| | TriMax Systems, Inc. | POC #3 | $ 75,286.70 |
| | Bulsko Utility Design, Inc. | POC #4 | $ 6,250.00 |
| | Creekside Development, Inc. | POC #5 | $ 780,000.00 |
| | Glenn Lukos Associates, Inc. | POC #6; POC #24 | $ 1,733.34 |
| | California Barricade Rentals, Inc. | POC #7 | $ 5,982.00 |
| | Debby Cobb Consulting, Inc. | POC #8 | $ 2,618.64 |
| | BR South Coast Private Security | POC #9 | $ 38,446.80 |
| | BNB Engineering, Inc. | POC #10; POC #37 | $ 1,608,722.64 |
| | SunCal Management, LLC | POC #11 | $ 1,799,805.75 |
| | SCC Acquisitions, Inc. | POC #12 | $ 4,000.00 |
| | Coastal Living | POC #13 | $ 11,288.00 |
| | Brion Jeannette Architecture | POC #14 | $ 106,481.00 |
| | Security Signal Devices | POC #15 | $ 42,089.00 |
| | Design Alliance | POC #16 | $ 27,943.18 |
| | Steiny and Company, Inc. | POC #17 | $ 259,775.28 |
| | SunCal Management, LLC | POC #18 | $ 591,873.05 |
| | Golden State Fence Co | POC #19 | $ 74,337.00 |
| | SCC JV Ventures, LLC | POC #22 | $ 27,307.61 |
| | SunCal Master Venture Member, LLC | POC #23 | $ 110,151.48 |
| | Bee Busters, Inc. | POC #26 | $ 300.00 |
| | Villa San Clemente, LLC | POC #27 | $ 13,233,103.00 |
| | RMF Contracting, Inc. dba R&M Electrical Contracting | POC #28 | $ 315,591.63 |
| | The Jasper Companies, Inc. | POC #29 | $ 165,260.29 |
| | MediaMax Network LLC | POC #30 | $ 55,155.48 |
| | S & S Seeds, Inc. | POC #31 | $ 15,493.56 |
| | Horticultural Specialists, Inc. | POC #32 | $ 13,000.00 |
| | Horticultural Specialists, Inc. | POC #33 | $ 54,480.20 |
| | Arch Insurance Company | POC #34 | $155,423,657 (contingent) $131,588.73 (liquidated) |
| | Roddan Paolucci Roddan Advertising | POC #35; POC #38 | $ 427,489.63 |
| | Kirk Negrete, Inc., dba United Steel Placers | POC #36 | $ 270,056.42 |
| | RBF Consulting | POC #39 | $ 132,108.70 |
| | SCC Acquisitions, Inc. | POC #40 | $ 58,510,018.00 |
| | Bruce Elieff | POC #41 | $ 58,510,018.00 |
| | R.J. Noble | POC #42; POC #50; POC #58 | $ 175,030.81 |
| | City of San Clemente | POC #43, POC #51; POC #59 | $ 39,971,734.00 |
| | Jag Construction | POC #44; POC #52 | $ 178,047.66 |
| | Lucast Consulting | POC #45; POC #53 | $ 22,808.28 |
| | Orange County Striping Service, Inc. | POC #46; POC #54 | $ 11,752.27 |
| | RH Masonry, Inc. | POC #47; POC #55 | $ 189,592.00 |
| | Savala Equipment Company, Inc. | POC #48; POC #56 | $ 34,440.00 |
| | Rockey Murata Landscaping, Inc. | POC #60 | $ 285,643.04 |
| **LB/L - SunCal Northlake, LLC** | | | |
| | SunCal Management, LLC | POC #1 | $ 896,008.95 |
| | SCC Acquisitions, Inc. | POC #2 | $ 8,617.65 |
| | Southern California Edison Company | POC #3 | $ 34.46 |
| | SunCal Management, LLC | POC #4 | $ 421,783.35 |
| | Northlake Holdings, LLC | POC #5 | $ 123,654,776.86 |
| **SunCal Oak Knoll, LLC** | | | |
| | RGA Environmental, Inc. | POC #1 | $ 75,817.45 |
| | BKF Engineers | POC #2,#9 & #19 | $308,817.34 |
| | Aboricultural Specialties, Inc. dba The Professional Tree Care Co. | POC #3 | $ 93,925.01 |
| | CST Environmental, Inc. | POC #4 | $ 4,316,169.56 |
| | A-1 Enterprises | POC #5 | $ 1,250.00 |
| | Lamphier Gregory | POC #6 | $ 13,543.08 |
| | SunCal Management, LLC | POC #7 | $ 462,392.86 |
| | Pacific Gas & Electric Company | POC #8 | $ 1,148.52 |
| | SunCal Management, LLC | POC #10 | $ 874,609.00 |
| | Fehr & Peers | POC #13 | $ 3,660.00 |
| | Ralph Osterling Consultants, Inc. | POC #14 | $ 11,888.00 |
| | Tasini & Associates | POC #15 | $ 20,000.00 |
| | WRA, Inc. | POC #16 | $ 27,450.19 |

| Debtor | Creditor | Proof of Claim | Claim Amount |
|--------|----------|----------------|--------------|
| | Philip Williams & Associates, Ltd. | POC #17, #18, #27 | $ 42,728.00 |
| | ENGEO, Incorporated | POC #20 | $ 55,826.91 |
| | SWA Group | POC #21 & #22 | $ 32,584.54 |
| | Environmental Science Associates | POC #25 | $ 24,234.39 |
| | Pacific Gas & Electric Company | POC #26 | $ 235.96 |
| | Rohm Insurance Agency | POC #28 | $ 8,560.00 |
| | East Bay Municipal Utility District | POC #29 | $ 21,948.36 |
| **LB/L - SunCal - Oak Valley, LLC** | | | |
| | Outdoor Dimensions | POC #1 | $ 170,819.50 |
| | Stantec Consulting, Inc. | POC #2 | $ 174,572.17 |
| | HD Supply Construction Supply, LTD., dba HD Supply White Cap Construction Supply | POC #3 | $ 52,806.70 |
| | Kevin L. Crook Architect, Inc. | POC #4 | $ 65,340.00 |
| | Glenn Lukos Associates, Inc. | POC #5 & #18 | $ 15,469.81 |
| | SunCal Management, LLC | POC #6 | $ 1,153,688.91 |
| | SCC Acquisitions, Inc. | POC #7 | $ 5,300.00 |
| | Weston Mason Marketing | POC #8 | $ 7,721.41 |
| | Pacific Soils Engineering, Inc. | POC #10 & #21 | $ 97,569.13 |
| | SunCal Management, LLC | POC #11 | $ 132,568.22 |
| | Pinnick, Inc. | POC #12 | $ 30,752.71 |
| | Pinnick, Inc. | POC #14 | $ 988,967.04 |
| | SCC Acquisitions, Inc. | POC #15 | $ 4,476.99 |
| | OVC Holdings, LLC | POC #16 | $ 141,630,091.63 |
| | SunCal Master Venture Member, LLC | POC #17 | $ 1,398.23 |
| | Utility Consultants of Orange County | POC #19 | $ 5,650.00 |
| | Cal West Underground, Inc. | POC #20 | $ 4,374.60 |
| | Skyview Imaging | POC #22 | $ 1,025.00 |
| | Hillcrest Contracting, Inc | POC #23 | $ 138,567.43 |
| | Arch Insurance Company | POC #24 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | MacKenzie Landscape | POC #25 | $ 121,297.00 |
| | All American Asphalt | POC #26 | $ 60,355.48 |
| | Rohm Insurance Agency | POC #27 | $ 162,774.00 |
| | Pacific Soils Engineering Inc. | POC #28 | $ 153,910.10 |
| | SCC Acquisitions, Inc. Inc | POC #29 | $ 26,167,563.15 |
| | Bruce Elieff | POC #30 | $ 26,167,563.16 |
| | Los Angeles Times | POC #31 & #33 | $ 39,295.00 |
| | Los Angeles Times | POC #32 & #34 | $ 4,315.00 |
| | Proactive Engineering Consultants, Inc. | POC #35 & #36 | $ 280,685.20 |
| | Nisaho of California, Inc. | POC #37 | $ 42,570.00 |
| | Waterforce Inc. | POC #38 | $ 20,883.30 |
| | Jackson DeMarco Tidus & Peckenpaugh | POC #39 | $ 19,383.02 |
| | Corporation Service Company | POC # 40 | $ 56.49 |
| **SJD Development Corp.** | | | |
| | SCC Acquisitions | POC #3 | $ |
| | MWW Group Inc. | POC #5 | $ 42,019.25 |
| | Arch Insurance Company | POC #6 | $155,423,657(contingent) $131,588.73 (liquidated) |
| **SJD Partners, Ltd.** | | | |
| | Hunsaker & Associates - Irvine | POC #1 | $ 373,205.33 |
| | Palmieri, Tyler, Wiender, Wilhelm & Waldron LLP | POC #2; POC #6; POC #45; POC #46 | $ 7,060.17 |
| | KTGY Group, Inc. | POC #3 | $ 8,295.36 |
| | Utility Consultants of Orange | POC #4; POC #9 | $ 15,560.00 |
| | Contracting Engineers, Inc | POC #6 | $ 12,227.50 |
| | C.I. Printing Inc., dba Color Image Printing, Inc. | POC #7 | $ 22,127.70 |
| | Culbertson, Adams & Associates | POC #8 | $ 19,751.66 |
| | Gary L. Vogt & Associates | POC #10 | $ 2,250.00 |
| | Scoop Reprint Source | POC #11 | $ 5,215.38 |
| | Daren Saunders Photography | POC #12 | $ 1,131.21 |
| | GCI Associates, Inc. | POC #13 | $ 641.42 |
| | Dexter Wilson Engineering, Inc | POC #14 | $ 10,418.37 |
| | HomeBuyers Guide Real Estate Inc. | POC #15 | $ 69,900.00 |
| | Creekside Development, Inc. | POC #16 | $ 3,663,332.72 |
| | Centex Homes | POC #17 | $ 3,771,678.07 |
| | SunCal Management, LLC | POC #18 | $ 1,986,189.57 |
| | SCC Acquisitions, Inc. | POC #19 | $ 27,166.61 |
| | Boudreau Pipeline Corporation | POC #20 | $ 699,840.47 |
| | SunCal Management, LLC | POC #22 | $ 198,926.00 |
| | SunCal Master Venture Member, LLC | POC #26 | $ 45,164.31 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #26 | $ 319,287.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #27 | $ 343,468.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #28 | $ 378,797.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #29 | $ 114,291.00 |

| Debtor | Creditor | POC Number | Claim Amount |
|---|---|---|---|
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #30 | $ 710,192.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #31 | $ 476,943.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #32 | $ 364,876.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #33 | $ 262,073.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #34 | $ 1,639,486.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #35 | $ 1,537,973.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #36 | $ 434,156.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #37 | $ 763,871.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #38 | $ 219,070.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #39 | $ 70,005.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #40 | $ 83,952.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #41 | $ 78,031.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #42 | $ 7,712,119.00 |
| | SCC Acquisitions, Inc. | POC #43 | $ 37,472,869.00 |
| | Bruce Elieff | POC #44 | $ 37,472,869.00 |
| | Arch Insurance Company | POC #47 | $155,423,657 (contingent) $131,588.73 (liquidated) |
| | Summers Murphy & Partners, Inc | POC #48 | $ 8,350.00 |
| | 5th Gear, LLC | POC #49 | $ 97,531.77 |
| | All American Asphalt | POC #50 | $ 245,870.91 |
| | Halladay & Mim Mack, Inc. | POC #51 | $ 44,611.21 |
| | Voss, Cook & Thel, LLP | POC #52 | $ 205,322.98 |
| | Chino Grading, Inc. | POC #53 | $ 282,044.14 |
| | Ron Martin & Associates, Inc. | POC #54 | $ 35,217.09 |
| | Rohm Insurance Agency | POC #55 | $ 109,185.00 |
| **SunCal PSV, LLC** | | | |
| | Desert Publications | POC #1 | $ 10,385.00 |
| | SunCal Management, LLC | POC #2 | $ 520,753.13 |
| | SCC Acquisitions, Inc. | POC #3 | $ 22,977.13 |
| | Brudvik, Inc. | POC #4 | $ 49,984.54 |
| | Larry Jacinto Construction, Inc. | POC #5; POC #24 | $ 212,883.76 |
| | MOM Publications, Inc. dba New Homes Magazine | POC #6 | $ 10,383.83 |
| | SunCal Management, LLC | POC #7 | $ 206,328.30 |
| | SCC Acquisitions, Inc. | POC #8 | $ 16,512.37 |
| | Williams + Paddon Architects + Planners, Inc | POC #9 | $ 64,084.38 |
| | Williams + Paddon Architects + Planners, Inc | POC #10 | $ 9,713.64 |
| | SCC Acquisitions, Inc. | POC #11 | $ 17,993.01 |
| | SunCal Master Venture Member, LLC | POC #13 | $ 72,278.35 |
| | SCC Acquisitions, Inc. | POC #14 | $ 18,405,548.00 |
| | Bruce Elieff | POC #15 | $ 18,405,548.00 |
| | Desert Water Agency | POC #16 | $ 53,443.92 |
| | AP Medallion Gold LLC dba Golf Ventures West, LLC | POC #17 | $4,072.97 |
| | Martin Excavation, Inc. | POC #18 | $ 1,762.50 |
| | West Coast Turf | POC #19 | $ 263,262.04 |
| | High Tech Irrigation, Inc. | POC #20 | $ 50,526.39 |
| | Griffin Structures, Inc. | POC #21; POC #22 | $ 80,001.60 |
| | The Collaborative West, Inc. | POC #23 | $ 79,547.50 |
| | Southern California Edison Company | POC #25 | $ 243.89 |
| | Southern California Edison Company | POC #26 | $ 23,681.82 |
| | HSA Design Group | POC #27 | $ 8,767.92 |
| | Arch Insurance Company | POC #28 | $155,423,657 (contingent) $131,588.73 (liquidated) |
| | 5th Gear, LLC | POC #29 | $ 135,356.73 |
| | Rohm Insurance Agency | POC #30 | $ 183,683.00 |
| | Stormwater Compliance Specialists, Inc. | POC #31; POC #37 | $ 21,840.00 |
| | Swanillon Inc., dba The Land Stewards | POC #32; POC #38 | $ 23,024.04 |
| | Pacific Masonry Walls Inc | POC #33; POC #39 | $ 314,061.23 |
| | Simplot Partners (J.R. Simplot Company) | POC #34; POC #40 | $ 3,467.86 |
| | Palm Springs Pump, Inc | POC #35; POC #41 | $ 18,156.59 |
| | Desert Pipeline Inc | POC #36; POC #42; POC #47 | $ 469,784.09 |
| | MSA Consulting, Inc. | POC #43 | $ 666,697.27 |
| | Nissho of California, Inc. | POC #44 | $ 1,856,428.00 |
| | Jackson, DeMarco, Tidus & Peckenpaugh | POC #45 | $ 52,234.50 |
| | Oliphant Golf, Inc. | POC #46 | $ 456,476.47 |
| | Protection One | POC #48 | $ 2,194.19 |
| **Palmdale Hills Property, LLC** | | | |
| | Asphalt Professionals | POC #1; POC #46 | $ 35,528.13 |
| | Pinnacle Land Surveying, Inc | POC #2 | $ 86,051.00 |
| | Inland Blueprint Inc. dba IB Reprographics | POC #3; POC #21 | $ 2,320.77 |
| | Greg Norman Golf Course Design | POC #4 | $ 211,490.01 |
| | A.G.I. Geotechnical, Inc. | POC #5 | $ 20,045.81 |
| | The Corporation Int Rate Mgmt | POC #6 | $ 112,500.00 |
| | Geo Consultants, Inc. | POC #7 | $ 10,080.00 |
| | Glumac | POC #8 | $ 2,662.40 |
| | KTGY Group, Inc. | POC #9 | $ 49,986.82 |

| Debtor | Creditor | POC Number | Claim Amount |
|---|---|---|---|
| | Lim & Nascimento Engineering | POC #10; POC #45 | $ 1,830.00 |
| | Patricia I. Volkerts Trust dated August 7, 2000 | POC #11 | $ 871,703.19 |
| | SJD Partners, Ltd. | POC #13 | $ 12,584.00 |
| | Stantec Consulting | POC #14; POC #58 | $ 134,297.23 |
| | HD Supply Construction Supply, LTD., dba HD Supply White Cap Construction Supply | POC #15 | $ 14,893.18 |
| | Charles Skaggs | POC #16 | $ 6,099.25 |
| | Glenn Lukos Associates, Inc. | POC #17; POC #18;POC #36 | $ 1,210.78 |
| | Glenn Lukos Associates, Inc. | POC #19 | $ 11,326.13 |
| | Scott E. McDaniel | POC #20 | $ 595,000.00 |
| | So. & Associates Engineers | POC #22 | $ 15,485.00 |
| | SunCal Management, LLC | POC #23 | $ 1,379,367.84 |
| | SCC Acquisitions, Inc. | POC #24 | $ 3,000.00 |
| | Warmington Homes California | POC #25 | $ 1,771,232.88 |
| | Palmieri, Tyler, Wiender, Wilhelm & Waldron LLP | POC #26 | $ 91,034.50 |
| | Western Oilfields Supply Co. Inc. dba Rain for Rent | POC #27 | $ 2,160.11 |
| | Linscott, Law & Greenspan Engnrs | POC #28 | $ 606.50 |
| | Arleen Logan | POC #29 | $ 669,250.00 |
| | Amec Earth and Environmental | POC #30 | $ 17,908.39 |
| | Klassen Corporation | POC #31 | $ 306,350.99 |
| | Hewitt & O'Neil LLP | POC #32; POC #92 | $ 12,584.00 |
| | Sierra Cascade Construction | POC #33 | $ 550,677.29 |
| | Greg Norman Golf Course Design | POC #34 | $ 218,259.31 |
| | Dou Family Trust; Hsu Chih Chang Trust | POC #35 | $ 3,173,499.50 |
| | Glenn Lukos Associates, Inc. | POC #37 | $ 7,924.19 |
| | Ugalde Trucking Co., Inc. | POC #38 | $ 6,520.00 |
| | GCI Associates, Inc. | POC #39 | $ 641.42 |
| | Andy Gump | POC #40 | $ 11,183.08 |
| | Wood Rogers, Inc. | POC #41 | $ 34,119.11 |
| | GeoTeck, Inc. | POC #42 | $ 17,749.00 |
| | Cooks Portable Toilets & Septic, LLC | POC #43 | $ 2,743.21 |
| | HMK Engineers | POC #44 | $ 26,688.85 |
| | Zeiser KLing Consultants, Inc | POC #47 | $ 8,984.27 |
| | Asphalt Professionals | POC #48 | $ 75,188.52 |
| | Bova Contracting Group | POC #49; POC #58 | $ 1,155,533.39 |
| | Cal-State Rent A Fence | POC #50; POC #100 | $ 1,678.72 |
| | Staats Construction, Inc. | POC #51 | $ 166,105.82 |
| | Pierce's Security | POC #52 | $ 53,919.00 |
| | Roddan Paolucci Roddan Advertising | POC #53 | $ 76,083.50 |
| | Arch Insurance Company | POC #54 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Southland Framers, Inc. | POC #55; POC #67; POC #68 | $ 177,801.98 |
| | Jeanette C. Justus Associate | POC #57 | $ 28,428.59 |
| | SunCal Management, LLC | POC #59 | $ 409,020.27 |
| | Bethel Island Municipal Improvement District | POC #61 | $ 2,000,000.00 |
| | Pinnick, Inc. | POC #62 | $ 30,752.71 |
| | Pinnick, Inc. | POC #63 | $ 936,234.33 |
| | Pinnick, Inc. | POC #64 | $ 563,159.02 |
| | Summers/Murphy & Partners, I | POC #66 | $ 54,375.00 |
| | Urban CrossRoads, Inc. | POC #69 | $ 14,320.00 |
| | Outdoor Sales, Inc. | POC #70 | $ 765,282.57 |
| | Rohm Insurance Agency | POC #71 | $ 97,521.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #72 | $ 1,784,700.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #73 | $ 8,353,850.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #74 | $ 150,700.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #75 | $ 3,414,300.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #76 | $ 240,750.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #77 | $ 649,500.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #78 | $ 3,160,650.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #79 | $ 4,122,000.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #80 | $ 764,050.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #81 | $ 37,950.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #82 | $ 18,500.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #83 | $ 5,900.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #84 | $ 13,000.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #85 | $ 3,549,700.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #86 | $ 573,400.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #87; POC #103 | $ 24,859,950.00 |
| | Lennar Centex Del Rio Partners LLC | POC #88 | $ 3,063,489.30 |
| | The City of Palmdale | POC #89 | Unknown |
| | SCC Acquisitions, Inc. | POC #90 | $ 27,991,847.00 |
| | Bruce Elieff | POC #91 | $ 27,991,847.00 |
| | Chameleon Design, Inc. | POC #93; POC #99 | $ 48,240.00 |
| | Jag Construction | POC #96 | $ 163,018.12 |
| | County of San Bernardino | POC #97 | $ 504,245.23 |
| | AMEC Earth & Environmental, Inc. | POC #98 | $ 195,576.53 |
| | Cheryl R. Mims | POC #101 | $ 135,229.12 |
| | Wallace Kuhl & Associates, Inc. | POC #102 | $ 11,379.39 |

| Debtor | Creditor | POC Number/Claim # | Claim Amount |
|---|---|---|---|
| | Southern California Edison Company | POC #104 | $ 43.88 |
| | Franchise Tax Board | POC #105 | $ 7,517.99 |
| **SunCal Communities I, LLC** | | | |
| | Arch Insurance Company | POC #1 | $155,423,657(contingent) $131,588.73 (liquidated) |
| **SunCal Communities III, LLC** | | | |
| | Verizon California Inc. | POC #1 | $ 459.40 |
| | Arch Insurance Company | POC #3 | $155,423,657(contingent) $131,588.73 (liquidated) |
| **SunCal Summit Valley, LLC** | | | |
| | Hunsaker & Associates - Irvine | POC #1 | $ 126,940.25 |
| | Development Planning Solutions | POC #2 | $ 12,420.54 |
| | LSA Associates, Inc. | POC #3 | $ 6,985.67 |
| | Arthur Riggs | POC #4 | $ 801,900.00 |
| | Arleen Logan | POC #5 | $ 666,250.00 |
| | Charles E. Skaggs | POC #6 & #14 | $ 8,098.26 |
| | SunCal Management, LLC | POC #7 | $ 7,436.33 |
| | SCC Acquisitions, Inc. | POC #8 | $ 2,500.00 |
| | Pacific Soils Engineering, Inc. | POC #9 | $ 18,827.00 |
| | SunCal Management, LLC | POC #10 | $ 42,027.08 |
| | SunCal Master Venture Member LLC | POC #13 | $ 5,991.40 |
| | Arch Insurance Company | POC #15 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Summers/Murphy & Partners | POC #16 | $ 7,800.00 |
| | Cheltimalie Enterprises, a California Partnership | POC #17 | $ 1,389,156.25 |
| **Tesoro SF, LLC** | | | |
| | Glenn Lukos Associates, Inc. | POC #1 | $ 11,328.13 |
| | SCC Acquisitions, Inc. | POC #3 | $ 4,886.89 |
| | SunCal Management, LLC | POC #4 | $ 104,510.08 |
| | SunCal Management, LLC | POC #5 | $ 118,891.12 |
| | Arch Insurance Company | POC #8 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Rohm Insurance Company | POC #9 | $ 8,560.00 |

*Note:  The above list does not include certain contingent claims filed by SCC Acquisitions, Inc.  Some claims listed may have been filed*

### APPENDIX B

**Mechanic Lien Claims to Which Debtors Seek to Equitably Subordinate Defendants' Alleged Secured Claims (from Debtors' Second Amended Disclosure Statement)**

| Claimant | Claim Nos. |
|---|---|
| The Holder of the asserted Mechanic Lien Claim held by Asphalt Professionals against the Ritter Ranch Project owned by Palmdale Hills in the amount of $38,249. | Palmdale Hills 1 and 46 |
| The Holder of the asserted Mechanic Lien Claim held by Sierra Cascade Construction against the Ritter Ranch Project owned by Palmdale Hills in the amount of $550,677. | Palmdale Hills 33 |
| The Holder of the asserted Mechanic Lien Claim held by Staats Construction. Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $166,105. | Palmdale Hills 51 |
| The Holder of the asserted Mechanic Lien Claim held by Southland Farmers, Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $177,801. | Palmdale Hills 55, 67 and 68 |
| The Holder of the asserted Mechanic Lien Claim held by Pinnick, Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $1,530,146. | Palmdale Hills 62, 63 and 64 |
| The Holder of the asserted Mechanic Lien Claim held by Chamelon Design Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $73,600. | Palmdale Hills 93, 99 |
| The Holder of the asserted Mechanic Lien Claim held by Hall & Foreman, Inc. against the Emerald Meadows Project in the amount of $287,727. | SunCal Emerald 13 |
| The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Emerald Meadows Project in the amount of $991,315. | SunCal Emerald 15 and 16 |
| The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Ritter Ranch Project owned by Palmdale Hills in the amount of $14,893. | Palmdale Hills 15. |
| The Holder of the asserted Mechanic Lien Claim held by MHM Engineers against the Bickford Ranch Project in the amount of $8,916. | SunCal Bickford 5 |
| The Holder of the asserted Mechanic Lien Claim held by Land Architecture against the Bickford Ranch Project in the amount of $100,245. | SunCal Bickford 6 |

61901.1

1

| Claimant | Claim Nos. |
|---|---|
| The Holder of the asserted Mechanic Lien Claim held by Kiewit Pacific Co. against the Bickford Ranch Project in the amount of $1,868,357. | SunCal Bickford 10 |
| The Holder of the asserted Mechanic Lien Claim held by ARB, Inc. against the Bickford Ranch Project in the amount of $1,052,272. | SunCal Bickford 15 |
| The Holder of the asserted Mechanic Lien Claim held by Independent Construction against the Bickford Ranch Project in the amount of $117,209. | SunCal Bickford 28 |
| The Holder of the asserted Mechanic Lien Claim held by Marques Pipeline, Inc. against the Bickford Ranch Project in the amount of $330,118. | SunCal Bickford 29 and 30 |
| The Holder of the asserted Mechanic Lien Claim held by Pacific Soils Engineering against the portion of the Summit Valley Project owned by Summit Valley in the amount of $16,827. | SunCal Summit 9 |
| The Holder of the disputed asserted Mechanic Lien Claim held by Hertz Equipment Rental Corporation against the Delta Coves Project in the amount of $25,444. | SunCal Delta Coves 2 |
| The Holder of the asserted Mechanic Lien Claim held by MBH Architects against the Delta Coves Project in the amount of $97,091. | SunCal Delta Coves 8 |
| The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Heartland Project in the amount of $47,675. | SunCal Heartland 2 |
| The Holder of the asserted Mechanic Lien Claim held by Pinnik, Inc. against the Heartland Project in the amount of $563,159. | SunCal Heartland 8 |
| The Holder of the asserted Mechanic Lien Claim held by Dennis M. McCoy & Sons against the Heartland Project in the amount of $941,960. | SunCal Heartland 16 |
| The Holder of the asserted Mechanic Lien Claim held by Trimax Systems, Inc. against the Marblehead Project in the amount of $75,286. | SunCal Marblehead 3 |
| The Holder of the asserted Mechanic Lien Claim held by Butsko Utility Design, Inc. against the Marblehead Project in the amount of $6,250. | SunCal Marblehead 4 |
| The Holder of the asserted Mechanic Lien Claim held by Dennis RMF Contracting, Inc. against the Marblehead Project in the amount of $264,749. | SunCal Marblehead 28 |
| The Holder of the asserted Mechanic Lien Claim held by The Jasper Companies against the Marblehead Project in the amount of $165,260. | SunCal Marblehead 29 |
| The Holder of the asserted Mechanic Lien Claim held by Kirk Negrete, Inc. dba United Steel Placers against the Marblehead Project in the amount of $270,056. | SunCal Marblehead 38 |

61901.1

| Claimant | Claim Nos. |
|---|---|
| The Holder of the asserted Mechanic Lien Claim held by RBF Consulting against the Marblehead Project in the amount of $125,093. | SunCal Marblehead 39 |
| The Holder of the asserted Mechanic Lien Claim held by RJ Noble Co. against the Marblehead Project in the amount of $175,030. | SunCal Marblehead 42, 50 and 58 |
| The Holder of the asserted Mechanic Lien Claim held by Orange County Stripping Services against the Marblehead Project in the amount of $4,400. | SunCal Marblehead 46 and 54 |
| The Holder of the asserted Mechanic Lien Claim held by Savala Equipment Co. Inc. against the Marblehead Project in the amount of $34,440. | SunCal Marblehead 48 and 56 |
| The Holder of the asserted Mechanic Lien Claim held by Rockey Murata Landscaping against the Marblehead Project in the amount of $285,643. | SunCal Marblehead 60 |
| The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Oak Valley Project in the amount of $52,806. | SunCal Oak Valley 3 |
| The Holder of the asserted Mechanic Lien Claim held by Pinnik Inc. against the Oak Valley Project in the amount of $966,987. | SunCal Oak Valley 12 and 14 |
| The Holder of the asserted Mechanic Lien Claim held by Hillcrest Contracting Inc. against the Oak Valley Project in the amount of $136,567. | SunCal Oak Valley 23 |
| The Holder of the asserted Mechanic Lien Claim held by MacKenzie Landscape against the Oak Valley Project in the amount of $121,297. | SunCal Oak Valley 25 |
| The Holder of the asserted Mechanic Lien Claim held by All American Asphalt against the Oak Valley Project in the amount of $60,355. | SunCal Oak Valley 26 |
| The Holder of the asserted Mechanic Lien Claim held by Los Angeles Times against the Oak Valley Project in the amount of $43,610. | SunCal Oak Valley 31 and 32 |
| The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Oak Valley Project in the amount of $280,685. | SunCal Oak Valley 35 and 36 |
| The Holder of the asserted Mechanic Lien Claim held by Brudvik Inc. against the Palm Springs Village Project in the amount of $43,365. | SunCal PSV 4 |
| The Holder of the asserted Mechanic Lien Claim held by Larry Jacinto Construction Inc. against the Palm Springs Village Project in the amount of $212,663. | SunCal PSV 5 and 24 |
| The Holder of the asserted Mechanic Lien Claim held by William + Paddon Architects + Planners Inc. against the Palm Springs Village Project in the amount of $73,798. | SunCal PSV 9 and 10 |

61901.1

| Claimant | Claim Nos. |
|---|---|
| The Holder of the asserted Mechanic Lien Claim held by Southern California Edison against the Palm Springs Village Project in the amount of $23,861. | SunCal PSV 26 |
| The Holder of the asserted Mechanic Lien Claim held by Pacific Masonry Walls, Inc. against the Palm Springs Village Project in the amount of $314,061. | SunCal PSV 33 and 39 |
| The Holder of the asserted Mechanic Lien Claim held by J.R. Simplot Company against the Palm Springs Village Project in the amount of $3,467. | SunCal PSV 34 and 40 |
| The Holder of the asserted Mechanic Lien Claim held by Desert Pipeline Inc. against the Palm Springs Village Project in the amount of $469,784. | SunCal PSV 36, 42 and 47 |
| The Holder of the asserted Mechanic Lien Claim held by MSA Consulting against the Palm Springs Village Project in the amount of $666,897. | SunCal PSV 43 |
| The Holder of the asserted Mechanic Lien Claim held by Jackson DeMarco against the Palm Springs Village Project in the amount of $52,234. | SunCal PSV 45 |
| The Holder of the asserted Mechanic Lien Claim held by Oliphant Gold, Inc. against the Oak Knoll Project in the amount of $456,476. | SunCal Oak Knoll 46 |
| The Holder of the asserted Mechanic Lien Claim held by RGA Environmental, Inc. against the Oak Knoll Project in the amount of $75,617. | SunCal Oak Knoll 1 |
| The Holder of the asserted Mechanic Lien Claim held by BKF Engineers against the Oak Knoll Project in the amount of $308,817. | SunCal Oak Knoll 2 and 19 |
| The Holder of the asserted Mechanic Lien Claim held by CST Environmental Inc. against the Oak Knoll Project in the amount of $4,316,169. | SunCal Oak Knoll 4 and 9 |

61901.1

| In re:<br><br>PALMDALE HILLS PROPERTY, LLC;<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER 8:08-BK-17206-ES<br><br>ADVERSARY CASE NUMBER 8:09-AP-01005-ES |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1999 Avenue of the Stars, Suite 1000, Los Angeles CA 90067

A true and correct copy of the foregoing document(s) described **FOURTH AMENDED ADVERSARY PROCEEDING COMPLAINT FOR: 1) EQUITABLE SUBORDINATION, 11 U.S.C. §510(c); 2) FRAUDULENT INDUCEMENT; 3) AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS, 11 U.S.C §§ 547, 550; 4) AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS, 11 U.S.C. §§ 544(b), 548; CAL. CIVIL CODE §§ 3439.04, 3439.05; 5)  VOIDING LIENS, 11 U.S.C. § 506(d); 6)  DISALLOWANCE OF CLAIMS AND LIENS, 11 U.S.C. § 502(d); AND 7) PRESERVATION OF CLAIMS AND LIENS FOR DEBTORS' ESTATES, 11 U.S.C. §551**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 26, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On **March 26, 2010** I caused the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding to be served by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 26, 2010** I caused the following person(s) and/or entity(ies) to be served by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 26, 2010 | Selia Acevedo | s/Selia Acevedo |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | | CHAPTER 11 |
|---|---|---|
| PALMDALE HILLS PROPERTY, LLC; | | CASE NUMBER 8:08-BK-17206-ES |
| | Debtor(s). | ADVERSARY CASE NUMBER 8:09-AP-01005-ES |

## SERVICE LISTS

### I.    Served by NEF

- Selia M Acevedo
  sacevedo@millerbarondess.com,
  mpritikin@millerbarondess.com;bprocel
  @millerbarondess.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall
  lekvall@wgllp.com
- Alan J Friedman    afriedman@irell.com
- Christian J Gascou
  cgascou@gascouhopkins.com
- Kelly C Griffith
  bkemail@harrisbeach.com
- Jonathan M Hoff
  jonathan.hoff@cwt.com
- Christopher W Keegan
  ckeegan@kirkland.com,
  emilee@kirkland.com;alevin@kirkland.
  com;tshafroth@kirkland.com
- Kerri A Lyman    klyman@irell.com

- Hutchison B Meltzer
  hmeltzer@wgllp.com
- James M Miller
  jmiller@millerbarondess.com
- Henry H Oh    henry.oh@dlapiper.com,
  bambi.clark@dlapiper.com
- Sean A Okeefe
  sokeefe@okeefelc.com
- John E Schreiber    jschreiber@dl.com
- Steven M Speier
  Sspeier@Squarmilner.com,
  ca85@ecfcbis.com
- United States Trustee (SA)
  ustpregion16.sa.ecf@usdoj.gov
- Christopher T Williams
  ctwilliams@venable.com,
  jcontreras@venable.com
- Dean A Ziehl    dziehl@pszjlaw.com,
  dziehl@pszjlaw.com

### II.    Served By U.S. Mail

n/a

### III.    Served by Personal Delivery, Facsimile Transmission or Email

BY PERSONAL DELIVERY (ATTORNEY SERVICE)

Courtesy Copy
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

BY EMAIL

Lehman Ali, Inc., Lehman Commercial Paper, Inc.,
OVC Holdings, Northlake Holdings, LV Pacific
Point
Weil Gostshal & Manges LLP
    edward.soto@weil.com

elisa.lemmer@weil.com
shai.waisman@weil.com
allen.blaustein@weil.com
lauren.zerbinopoulos@weil.com

Pachulski Stang Ziehl & Jones LLP

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | | CHAPTER 11 |
|---|---|---|
| PALMDALE HILLS PROPERTY, LLC; | | CASE NUMBER 8:08-BK-17206-ES |
| | Debtor(s). | ADVERSARY CASE NUMBER 8:09-AP-01005-ES |

rpachulski@pszjlaw.com
dziehl@pszjlaw.com

Fenway Capital LLC
Dewey & LeBoeuf LLP
    rreinthaler@DeweyLeBoeuf.com
    clevy@DeweyLeBoeuf.com
    jschreiber@dl.com

Lehman Re Ltd
Cadwalader, Wickersham & Taft LLP
    jonathan.hoff@cwt.com
    liz.butler@cwt.com

DLA Piper
    betty.shumener@dlapiper.com

Counsel for Chapter 11 Trustee Steven M. Speier
The Lobel Firm, LLP
    wlobel@thelobelfirm.com

General Insolvency Counsel for
Jointly Administered Debtors in Possession
Winthrop Couchot, P.C.
    pcouchot@winthropcouchot.com

plianides@winthropcouchot.com
sokeefe@winthropcouchot.com

Counsel for the Voluntary Debtors' Committee
Irell & Manella, LLP
    afriedman@irell.com
    klyman@irell.com

Counsel for the Trustee Debtors' Committee
Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
    lekvall@wgllp.com
    hmeltzer@wgllp.com

Office of the United States Trustee
Michael Hauser
    michael.hauser@usdoj.gov

John Sieger - john.sieger@kattenlaw.com

Atty for Bond Safeguard & Lexon - mea@amclaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.
January 2009

F 9013-3.1