WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Gerard Uzzi (GU – 2297)
Eric K. Stodola (ES – 1111)

Attorneys for the Ad Hoc Group
of Lehman Brothers Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x
In re                                             :    Chapter 11 Case No.
                                                  :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**         :    08-13555 (JMP)
                                                  :
                                       Debtors.   :    (Jointly Administered)
----------------------------------------------------------------------x

# STATEMENT OF AD HOC GROUP OF LEHMAN BROTHERS CREDITORS REGARDING DEBTORS' MOTION FOR AUTHORIZATION TO ENTER INTO CERTAIN ASSET MANAGEMENT AND RELATED AGREEMENTS

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

The Ad Hoc Group of Lehman Brothers Creditors (the "Group"),[1] by and through its undersigned counsel, hereby files this statement (the "Statement") regarding the Debtors' Motion, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Rule 6004(h) of the Bankruptcy Rules, for Authorization to Enter into Certain Asset Management and Related Agreements (the "Motion") [Docket No. 7579] filed by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together with LBHI, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman").  The Group respectfully states as follows:

---

[1]    As a consequence of Elliott Management Corporation becoming a member of the Creditors' Committee, the Group is currently comprised of King Street Capital Management, L.P., and Paulson & Co. Inc.

## STATEMENT

1.   The Debtors seek the extraordinary relief of creating a going concern business within a liquidating estate.  To accomplish this goal, the Debtors intend to transfer the bulk of their management structure now focused singly on the wind-down and liquidation of the Debtors' assets for the benefit of stakeholders to a new company, LAMCO, formed for the purpose of exploring future strategic opportunities.[2]  The Debtors believe that the creation of this new going concern may result in increased value to stakeholders and improve employee retention.  While the Group hopes that LAMCO is successful, the Group possesses a number of concerns regarding LAMCO.

2.   If LAMCO were being established pursuant to a plan of reorganization, as one would expect, the governance of LAMCO would be controlled by the Debtors' stakeholders through the exercise of direct interests in LAMCO or indirectly through the votes on the plan. Thus, the employees of LAMCO would answer to the economic beneficiaries who would have the power to direct the ultimate decisions.  As originally proposed, however, LAMCO lacked accountability to the stakeholders by limiting their ability to effectively review LAMCO's performance. The Creditors Committee was only provided with veto rights over the activities at LAMCO; and these rights were only exercisable after an affirmative action was proposed. Moreover, stakeholders had no ability to seek a different course of action for LAMCO in the event the experiment was not successful.

3.   Similarly, because confirmation of a plan of reorganization will occur in the future, and perhaps in the distant future, the creation of LAMCO today runs the risk that certain parties will assert that LAMCO's mere creation is prejudicial to future potential relief, such as

---

[2]   Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

the substantive consolidation of these estates, which the Group understands that the Debtors are considering.

4. The Group has discussed these concerns with both the Debtors and the Creditors' Committee. The Debtors and the Creditors' Committee each indicated that the relief sought by the Debtors was not intended in any way to cement or otherwise fix prior to confirmation issues that would typically be dealt with in a plan, including post-effective date corporate governance. The Creditors' Committee noted in particular that the agreements referenced by the Debtors in the Motion contain unwind provisions. (See, e.g., Asset Management Agreement § 17.) These unwind provisions, however, may only be exercised by the applicable Debtor party. Given that today the same individuals who control the Debtors will also control the management of LAMCO, the unwind provisions offer practical protection, if at all, only after different individuals control the Debtors. The Creditors' Committee also has the right to require the appointment of an independent director to LAMCO, but, as proposed, such director must be selected by mutual agreement between LBHI and the Creditors' Committee. Furthermore, the proposed order submitted in connection with the Motion failed to contain any savings clause. To the contrary, the proposed order provided that the LAMCO agreements may be modified without further motion or notice.

5. Accordingly, the Group shared a draft objection with the Debtors raising the foregoing and explored whether the Group's concerns could be resolved without the need for Court intervention. The Group did not wish to stifle real opportunities for the Debtors to enhance recoveries if the appropriate checks and balances could be implemented.

6. As a result of subsequent discussions, the Debtors have agreed to modify the original order and applicable LAMCO Agreements to alleviate the Group's objections.

Specifically, to provide an appropriate balance on corporate governance, the Group understands that the LAMCO Agreements will be modified to provide the Creditors' Committee with the unilateral right to select an independent Board member, subject only to the reasonable consent right of the Debtors, and the proposed order will be modified to provide that parties in interest may seek future relief with respect to LAMCO without having to overcome the significant hurdles typically associated with amending, modifying or otherwise revisiting a final order of the Court. The proposed order will also be modified to provide that (a) no material modifications, amendments or supplements may be made to the LAMCO Agreements or any related agreements, documents or instruments without Court approval and (b) entry of the proposed order shall not prejudice the rights of any party in interest in respect of confirmation of any chapter 11 plan in these chapter 11 cases.

7. With the foregoing modifications, the Group does not object to the Motion. However, the decision not to object is predicated principally on the understanding that parties in interest may in fact come before this Court and seek future relief with respect to LAMCO in the event that, among other things, LAMCO is not successful. Simply, while on paper, the creation of LAMCO is not supposed to alter the administration of these bankruptcy cases, one cannot easily paper over the natural emotional and human factors of fundamentally changing the mindset of the employees of LAMCO from managing a liquidation to managing a going concern and the attendant personal conflicts of interest that ensue.

8. Given Lehman's own massive asset positions, the potential harms of a change in mindset should not be glossed over. Although there may be opportunities to build the equity value of LAMCO by attracting third-party asset management assignments, there could also be substantial harm to the Debtors from employees losing focus on the very important role of

managing and liquidating the Debtors' very significant current assets. The cost of a limited number of "wrong" or ill-advised decisions relating to when to sell, for instance, a loan position, may dwarf any upside that may be derived from the creation of LAMCO. And, while LAMCO may enhance critical employee retention, there are more traditional methods to address employee retention, methods which the Group has supported in the past and has also indicated its support to further enhance.[3]

9. Accordingly, although the Group does not object to the relief requested by the Motion in light of the foregoing modifications, the Group does reserve the right to seek future relief consistent with such proposed modifications.

WHEREFORE, for the foregoing reasons, the Group requests that the Court grant the relief sought by the Motion only as conditioned as set forth above.

Dated: April 13, 2010
New York, New York

Respectfully submitted,

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Gerard Uzzi (GU - 2297)
Eric K. Stodola (ES – 1111)

By: */s/ Gerard Uzzi*
Gerard Uzzi

ATTORNEYS FOR THE AD HOC GROUP
OF LEHMAN BROTHERS CREDITORS

---

[3] (See Statement of Ad Hoc Group of Lehman Brothers Creditors in Support of Debtors' Motion for Authorization to Implement the Derivatives Employee Incentive Program [Docket No. 6208] (stating that "[t]he Group believes that an appropriate plan to motivate the relevant employees of the Debtors to maximize recoveries for all creditors . . . is warranted and appropriate" and that the Group would "fully support making enhancements to the program to further incent and reward the employees for work well done on behalf of creditors").)