BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern

*Attorneys for Barclays Capital Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., et al.,<br><br>               Debtors. | Chapter 11 Case No.<br><br>08-13555 (JMP)<br><br>(Jointly Administered) |
| In re<br><br>LEHMAN BROTHERS, INC.,<br><br>               Debtor. | SIPA Proceeding Case No.<br><br>08-01420 (JMP) |

**MOTION BY BARCLAYS CAPITAL INC. FOR AN
ORDER COMPELLING DOCUMENTS FROM LBHI, THE TRUSTEE, THE
CREDITORS' COMMITTEE AND THEIR FINANCIAL ADVISORS
<u>DELOITTE, FTI, ALVAREZ & MARSAL, AND HOULIHAN LOKEY</u>**

Hearing date: April 26, 2010
Objections date: April 23, 2010

## Table of Contents

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 4

ARGUMENT ......................................................................................................................... 6

    A.   The Documents and Testimony Being Withheld Are Not Work Product Because They Were Not Created In Anticipation of Litigation. ................................................. 6

    B.   Movants Have Waived Work Product For Economic Analyses of the Sale by Placing Their Economic Understanding of the Sale At Issue in Their Motions. ......... 9

    C.   Barclays Has A Substantial Need for Work Product Analyzing the Economics of the Sale. ................................................................................................................ 13

CONCLUSION ................................................................................................................... 16

# Table of Authorities

**Cases**

*Allied Irish Banks, P.L.C. v. Bank of America, N.A.*,
 252 F.R.D. 163 (S.D.N.Y. 2008) .................................................................................. 9

*Bernheim v. Jacobs*,
 144 F. App'x 218 (3d Cir. June 28, 2005) .................................................................. 14

*Fine v. Bellefonte Underwriters Ins. Co.*,
 758 F.2d 50 (2d Cir. 1985) .......................................................................................... 14

*Granite Partners v. Bear, Stearns & Co., Inc.*,
 184 F.R.D. 49 (S.D.N.Y. 1999) .................................................................................. 12

*In re Celotex*,
 196 B.R. 596, 600 (Bankr. M.D. Fla. 1996) .............................................................. 12

*In re Erie County*,
 546 F.3d 222 (2d Cir. 2008) ....................................................................................... 12

*In re Grand Jury Proceedings*,
 219 F.3d 175 (2d Cir. 2000) ....................................................................................... 17

*In re Grand Jury Subpoena Dated July 6, 2005*,
 510 F.3d 180 (2d Cir. 2007) ................................................................................ 9, 17

*In re Grand Jury Subpoena Dated Oct. 22, 2001*,
 208 F.3d 156 (2d Cir. 2002) ....................................................................................... 11

*In re Hardwood P-G, Inc.*,
 403 B.R. 445 (Bank. W.D. Tex. 2009) ...................................................................... 12

*In re Tri-Cran*,
 98 B.R. 609 (Bankr. D. Mass. 1989) ..................................................................... 6, 14

*In re Tri-State Outdoor Media Group, Inc.*,
 283 B.R. 358 (Bankr. M.D. Ga. 2002) ...................................................................... 12

*John Doe Co. v. United States*,
 350 F.3d 299 (2d Cir. 2003) ....................................................................................... 12

*Oneida Indian Nation of New York v. Oneida County*,
 214 F.R.D. 83, (N.D.N.Y. 2003) ................................................................................ 14

*State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
 374 F.3d 158, (2d Cir. 2004) ...................................................................................... 13

*Stern v. O'Quinn*,
   253 F.R.D. 663 (S.D. Fla. 2008) ........................................................................................ 15

*United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995) ...................................................... 9, 10

*United States v. Neagele*,
   468 F. Supp. 2d 165 (D.D.C. 2007) ..................................................................................... 11

**<u>Rules</u>**

Fed. R. Civ. P. 26 .............................................................................................................................. 17

Barclays Capital, Inc. ("Barclays"), by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 37, made applicable by Federal Rules of Bankruptcy Procedure 7037 and 9014(c), hereby moves for an order compelling Lehman Brothers Holding, Inc. ("LBHI"), the SIPC Trustee for LBI (the "Trustee"), the Official Committee of Unsecured Creditors of Lehman Brothers Holdings, Inc. (the "Creditors' Committee" or the "Committee") (collectively, "Movants") and each of their respective financial advisors – Deloitte, Houlihan Lokey ("Houlihan"), FTI, and Alvarez & Marsal – to produce any economic analysis of the Sale Transaction they performed prior to March 13, 2009 and which they are withholding on grounds of work product privilege. The parties have met and conferred with respect to this issue and have failed to resolve it.

## PRELIMINARY STATEMENT

1. In their reply briefs and in their oral arguments to this Court on April 9, 2010, the Movants argued that they were "justifiably ignorant" of the economics of the Sale Transaction that closed on September 22, 2008.[1] They *must* argue this in order to justify the relief they are asking this Court to impose. It is an element of their Rule 60(b)(2) "new evidence" claims, and it is also a necessary element of their argument that their claims are not barred by the mandate rule and the doctrines of judicial estoppel, equitable estoppel, and waiver.

2. But while they argue that they did not understand the economics of the Sale Transaction – and were kept in the dark regarding the estimated values of the assets and liabilities in that transaction – the Movants *refuse* to produce to Barclays the *economic analyses* that their financial advisers performed at the time showing their understanding. Collectively, the

---

[1] Creditors' Committee Reply Brief at ¶ 209 ("Committee Was <u>Justifiably Ignorant</u> Of New Evidence") (emphasis added); LBHI Reply Brief at ¶ 166 ("LBHI was '<u>justifiably ignorant</u>' of this new evidence until recently") (emphasis added); Trustee Reply Brief at ¶ 91 ("the Trustee adopts the arguments set forth in the briefs filed by LBHI and the Committee").

Movants were advised by Deloitte, FTI, Houlihan, and Alvarez & Marsal. Each entity was actively engaged in analyzing the values of the assets and liabilities in the Sale Transaction. Deloitte, in particular, was tasked with producing an opening day balance sheet for LBI – which would necessarily show Deloitte's views of the values of the assets and liabilities acquired by Barclays. Likewise, Houlihan, FTI, and Alvarez & Marsal were engaged in meetings at the time of the Sale to assess the economics of the Sale Transaction, and to value the assets and liabilities in the deal. Barclays has requested all of these economic analyses – and all documents showing what Movants and their advisers believed the values of the assets and liabilities in the deal to be.[2] The Movants have refused to produce such documents, withholding them on grounds of "attorney work product" privilege.[3] It is prejudicial to Barclays for Movants to claim ignorance and "new evidence," while refusing to produce the documents showing what they understood at the time.

3. The Court should order production of such analyses. First, the work product claim is itself dubious because the materials were produced as part of a normal attempt to reconcile and finalize the understanding of the economics of the Sale Transaction – the Movants were not planning to sue Barclays from day one, or if they were, they should be required to say so plainly, and to explain why they did not object at the time and seek relief more promptly. Second, the Movants have directly placed at issue their understanding of the economics of the Sale Transaction and their understanding of the relative values of the assets and liabilities in the

---

[2] *See* Exhibit 1 (March 22, 2010 Letter from Barclays counsel to Movants' counsel (citing to Barclays' October 2009 document requests and Movant's work product objections, and renewing request for financial analyses of the Sale Transaction)); *see also* Exhibits 2-13 (Document Requests and Subpoenas).

[3] *See* Exhibit 14 (March 25, 2010 Letter from Counsel for Creditors' Committee (confirming earlier refusal to permit production of financial analyses on grounds of work product privilege)); Exhibit 15 (March 25, 2010 Letter from Special Counsel for LBHI (confirming earlier refusal to permit production of financial analyses on work product and other grounds); Exhibit 16 (March 26, 2010 Letter from Counsel for the Trustee (confirming earlier refusal to permit production of financial analyses on grounds work product privilege)).

transaction. Third, Barclays has a "*substantial need*" for these materials because it is manifestly unfair for Movants to claim that they were "*justifiably ignorant*" of the economics of the transaction, including the estimated (and uncertain) values of the assets and liabilities in the transaction, while *refusing to produce* the work their financial advisers did in analyzing the economics of the transaction, including the estimated (and uncertain) values of the assets and liabilities in the transaction.

4. Barclays has produced thousands of pages of backup showing its valuation work and accounting work that led to the finalization of its acquisition balance sheet – which took months of work, given the imperfect information available and the uncertain values of the illiquid securities that were acquired.

5. Barclays therefore asks this Court to order the Movants and their financial advisers to produce all of their financial analyses of the Sale Transaction, including all documents reflecting any effort to understand the estimated or actual values of the assets and liabilities in the transaction, that were prepared between September 15, 2008 and March 13, 2009 (the date of the District Court's affirmance of the Sale Orders).[4]

6. While this Court previously denied a motion by Barclays arguing that the Movants had waived attorney-client privilege by putting their attorneys' understanding of the deal at issue, that denial should not preclude the relief requested in this motion. First, this motion seeks narrower relief: Barclays hereby asks only for production of financial analyses withheld as work product, not for all attorney-client communications. Second, the Court's

---

[4] LBHI's agreement to produce otherwise privileged documents because privilege had been waived applied only to documents showing pre-October 2008 state of mind. As indicated in the briefs of all parties, Movants' state of mind with respect to what it understood about the economics of the deal is clearly at issue through at least March 13, 2009, when the District Court's order affirming the appeal was issued and up to which point in time Movants could have sought a remand of the appeal to this Court in order to address any issues the Movants had. *See, e.g., In re Tri-Cran*, 98 B.R. 609 (Bankr. D. Mass. 1989).

3

earlier denial was based upon the absence of waiver, but did not expressly address the "substantial need" exception to the work product doctrine (which was also argued in Barclays' motion). Third, the Court's earlier denial was based upon the assertion that Movants' claims were based on purely "objective" facts, and that the Movants' subjective understanding of the Sale Transaction was irrelevant.[5] The arguments made by Movants in their reply briefs and at the April 9 argument – which are arguments the Movants *must* make in order to advance their claims – demonstrates that their *actual, subjective understanding* of the Sale Transaction is just as relevant as the objective information which put them on notice: as a matter of law under the plain terms of Rule 60(b)(2), Movants must show <u>*both* that they did not actually know</u>, <u>*and*</u> that *they reasonably could not have known*, the information they now claim they discovered in the Rule 2004 discovery, and which they say support their claims for relief. Finally, the Court denied Barclays' earlier motion "without prejudice to bringing a later motion should it become clear at some future date that the committee or trustee is relying on privileged communications to support 60(b) relief." *See* Exhibit 17 [Dec. 16, 2009 Hearing Tr.] at 119:21-24.

## BACKGROUND

7.  At the April 9, 2010 hearing, the Committee emphasized that: "The committee needs the Court to see what we saw before we obtained the Rule 2004 discovery. Although Barclays would have this Court believe that the committee had the complete picture, the facts belie that assertion." Exhibit 18 [April 9, 2010 Hearing Tr.] at 100:7-11. But the Committee *refuses* to produce the documents showing what its financial advisers at Houlihan really did *understand* about the Sale Transaction at the time.

---

[5] *See* Exhibit 17 [Dec. 16, 2009 Hearing Tr.] at 116:24-117:14 ("In other words, the claims asserted by the trustee and the committee in the 60(b) motions constitute what I'll call objective claims, asking the Court to compare in-court disclosures concerning the sale transaction with the provisions of the sale transaction as actually consummated. Neither the trustee nor the committee asserts claims based on their subjective state of mind at the time of the sale hearing.").

4

8. And in their recently filed reply briefs, all the Movants attempt to satisfy elements of their claims by asserting that they did not understand the economics of the sale transaction – even while they *refuse* to produce the documents of their financial advisers showing what they really did know:

- "A&M struggled for months to get a handle on the assets and liabilities left in the estate, its computer and accounting systems, and eventually to try to understand what had happened in the Sale Transaction." LBHI Reply Brief at ¶ 73.

- "Given this struggle to collect data and understand what had happened in this extraordinary bankruptcy, a comprehensive investigation of the Sale Transaction was not possible." *Id.* at ¶ 117.

- "No one at A&M had a complete understanding of the Sale Transaction at the time [the Oct. 8, 2008 presentation], and none of them could have interpreted this reference on Fogarty's slide as indicating a built in profit for Barclays." *Id.* at ¶ 119.

- "At this time, LBHI still did not know that Barclays had not actually assumed the full $3.5-4.0 billion in liabilities for compensation and cure, as had been represented to the Court. So at this time, the Leventhal Declaration was not a red flag for the estate indicating something was wrong with the Sale Transaction. Rather, these figures just became part of the confusing mix of limited information available to LBHI in late 2008." *Id.* at ¶ 122, n.58.

- "And, given all the other problems A&M was forced immediately to address to protect creditors and the estate, there simply was not enough time for LBHI to assemble and analyze the limited information it did have." *Id.* at ¶ 167.

- "But, as Fogarty explained in his deposition, he noted to those at the October meeting that he did not understand the Sale Transaction sufficiently to understand this reference to a reduction." *Id.* at ¶ 215.

- "…it took months to figure out that the transaction that closed differed materially from that presented to the Court and the Lehman Boards." *Id.* at ¶ 216.

- "The Committee did not develop a meaningful understanding of the Sale Transaction until after receiving the Rule 2004 discovery, at which point it filed the Committee Rule 60 Motion." *Id.* at ¶ 208.

- "First, neither waiver nor equitable estoppel apply when the Committee was not aware of the material facts Barclays failed to disclose in connection with the Sale Transaction until after Rule 2004 discovery commenced." *Id.* at ¶ 270.

5

- "The Trustee was not aware at the Sale Hearing or during the Bay Harbour appeal that Barclays would lay claim to billions of dollars of additional assets that were not disclosed in the deal as presented to the Court." Trustee Reply Brief at ¶ 197.

- "The Trustee does wish to emphasize, however, that the Trustee expeditiously conducted an investigation regarding the matters covered by his Rule 60(b) motion." *Id.* at ¶ 202.

- "Here, the Trustee is bringing to the Court's attention evidence that was never disclosed to … the Trustee …, including evidence showing that the value of the assets that Barclays received in the Sale significantly exceeded $47.4 billion." *Id.* at ¶ 194.

9. Thus, each Movant now claims that they were "justifiably ignorant" of the economics of the deal. *See, e.g.*, Creditors' Committee Reply Brief at ¶ 209 ("Committee Was Justifiably Ignorant of New Evidence"); LBHI Reply Brief at ¶ 166 ("LBHI was 'justifiably ignorant' of this new evidence until recently"). If they are going to make that argument, which they legally must in order to advance their claims, basic fairness requires that they produce the financial analyses showing what they really did understand about the values and economics of the Sale Transaction.

## ARGUMENT

### A. The Documents and Testimony Being Withheld Are Not Work Product Because They Were Not Created In Anticipation of Litigation.

10. Now codified in Federal Rule of Civil Procedure 26(b)(3), the work product doctrine "shields from disclosure material prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need." *United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995).[6] As the parties invoking the privilege, Movants "bear[] the heavy burden of establishing its applicability." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007).

11. Movants are unable to meet that burden with respect to the majority of the

---

[6] Federal law always governs the applicability of work product. *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008).

6

withheld documents, however, because those documents were not created "in anticipation of litigation." The Second Circuit has elaborated that documents are created in anticipation of litigation only if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1994, 1202 (2d Cir. 1998) (emphasis in original). Under this test, documents are not protected if they were prepared in the ordinary course of business or if they would have been prepared irrespective of litigation concerns, even if they prove helpful in preparing for litigation. *Id.*

12. Many of the documents requested by Barclays are not work product in the first instance because they were not prepared because of the prospect of litigation.[7] This was a complex transaction, and most of the documents sought by Barclays were created because each Movant needed to properly understand the economics of the Sale, which would have been necessary regardless of whether they intended to sue Barclays.

13. Most obviously, Deloitte's effort to evaluate the economics of the Sale in late 2008 was done to determine what assets remained in the Trustee's control, not because of potential litigation over the Sale. Exhibit 19 [Karp Dep. Tr.] at 18:5-19:4; Exhibit 20 [Fogarty Dep. Tr.] at 14:25-15:9. Similarly, Houlihan's work during this time period involved the typical due diligence that surrounds any business transaction: "It was more review for the purposes of follow-up, not for – no one at that point in time, at least I did not at that point in time have, you know, an 'I got you' mentality." Exhibit 21 [Burian Dep. Tr.] at 79:24-80:3; Exhibit 22 [Fazio Dep. Tr.] at 74:6-23 (testifying that Houlihan's work "may have" been done for the Creditors' Committee regardless of potential litigation). Likewise, Alvarez & Marsal's attempt to evaluate

---

[7] In its prior motion, Barclays did not challenge whether the documents at issue were prepared in anticipation of litigation, and it specifically reserved the right to do so in the future. Barclays' Motion to Compel Production of Documents From the Trustee and the Committee Based on Privilege Waiver at p. 22, n.9.

7

the economics of the Sale prior to early 2009 was done for the purpose of administering the estate, not because of potential litigation over the Sale. Exhibit 23 [Kruse Dep. Tr.] at 103:11-104:8 (testifying that Alvarez & Marsal's evaluation of the Sale "was really from the perspective of capturing the data that we thought was going to be necessary for us to administer the estate"). Thus, Movants are withholding as work product numerous documents prepared by their financial advisors that were not created because of the prospect of litigation over the Sale. Rather, they were created to keep Movants informed about a complex business transaction and to aid Movants in fulfilling their responsibilities with respect to administering the estate.

14. Movants contend that bankruptcy proceedings are litigation, and that "but for" LBHI's bankruptcy, the Sale to Barclays would not have occurred and, therefore, everything done by any party in connection with any aspect of the Sale was done in anticipation of litigation. This Court should reject such a bright-line expansive rule that would hereafter shroud within the confines of work product *all work* done by *any party* having *any connection* whatsoever to a bankruptcy proceeding.

15. As the Second Circuit has stated, "Broad categorical statements about the scope of the work product privilege are risky, as individual applications are highly fact specific. In our view, analysis should proceed cautiously, case by case." *See In re Grand Jury Subpoena Dated Oct. 22, 2001*, 208 F.3d 156, 161 (2d Cir. 2002).

16. The District of Columbia district court recently stated that "[the] bankruptcy filing [is] not itself 'litigation' in anticipation of which protected attorney work product can be created." *United States v. Neagele*, 468 F. Supp. 2d 165, 173 (D.D.C. 2007).[8]

---

[8] Those courts that have applied work product protection to materials prepared in connection with bankruptcy proceedings only did so for scenarios where materials were prepared in connection with an investigation into potential causes of action for preferential and fraudulent transfers, or materials were prepared to oppose the relief being sought in an upcoming contested bankruptcy proceeding. *See In re Hardwood P-G, Inc.*, 403 B.R. 445, 451,

B.  **Movants Have Waived Work Product For Economic Analyses of the Sale by Placing Their Economic Understanding of the Sale At Issue in Their Motions.**

17. Movants have waived work product for all the economic analyses performed by their financial advisors, regardless of whether those analyses were created in anticipation of litigation with Barclays. Like the attorney-client privilege, a party impliedly waives work product by placing it "at issue." *See John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) (applying implied waiver to work product); *Granite Partners v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999) ("courts have recognized that the work product privilege is waived when a party places otherwise protected work product 'at issue'"). The doctrine is designed to eliminate "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *In re Erie County*, 546 F.3d 222, 229 (2d Cir. 2008) (quoting *John Doe Co.*, 350 F.3d at 306). The question is whether Movants rely on the work product "as a claim or defense or as an element of a claim or defense." *Id.* at 228.

18. Although this "at issue" doctrine was raised in Barclays' prior motion (principally focusing on attorney-client communications), Movants' reply papers now contain numerous assertions concerning their subjective knowledge – and their inability to understand the information they did possess – that were not made in Movants' opening briefs. Those assertions are excerpted above, and justify reconsideration of this Court's earlier ruling on "at issue"

---

464-65 (Bank. W.D. Tex. 2009); *In re Celotex*, 196 B.R. 596, 599-600 (Bankr. M.D. Fla. 1996) (applying work product to documents prepared in connection with an upcoming confirmation hearing opposed by the Creditors' Committee). Although *In re Tri-State Outdoor Media Group, Inc.*, 283 B.R. 358, 364 (Bankr. M.D. Ga. 2002), supports a broader interpretation, the *Tri-State* court did not provide any support for its position. Thus, Movants must demonstrate the documents were created "because of" an identified bankruptcy proceeding bearing the hallmarks of traditional litigation, not just that the documents were preceded by LBHI's bankruptcy filing.

waiver, as the Court expressly reserved the right to do based on subsequent filings by the Movants.

19. Movants claim that certain economic aspects of the Sale constitute "new evidence," such as the value of Purchased Assets and Assumed Liabilities.[9] However, if Movants were subjectively aware of this "new evidence" in time to move for reconsideration of the Sale Order, their Rule 60(b)(2) claims are barred, for "[t]o prevail on a motion for relief pursuant to Rule 60(b)(2), a movant must demonstrate that *he* was justifiably ignorant of the newly discovered evidence despite due diligence" *See State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d Cir. 2004) (emphasis added).[10]

20. Similarly Movants' claim of "mistake" under Rule 60(b)(1) in terms of their support for the deal and their description of the deal to the Court are necessarily "mistakes" supposedly made *by Movants* (although they are careful to work their description of mistakes in the passive tense to avoid this point). Recognizing that any claim of judicial mistake is clearly untimely, Movants now rest their claims on supposed mistakes in the presentation of the deal to the Court. S*ee, e.g.,* LBHI Reply Br. at 114 n.89 ("LBHI's motion is not based on an alleged judicial mistake of law or fact, such that they should have been brought at the same time as an appeal…. LBHI alleges mistakes in disclosures made to the Court and in changing the deal after

---

[9] *See e.g.* Creditors' Committee Reply Brief at ¶ 197 (new evidence consists of "Inflated Cure and Compensation Liabilities" and evidence that "additional assets … would be transferred to Barclays"); LBHI Reply Brief at ¶¶ 164 (new evidence consists of Barclays paying less in liabilities than disclosed to the court); 174 (new evidence concerns the "value" of assets transferred to Barclays); Trustee Reply Brief at ¶ 194 (new evidence shows the assets Barclays received "significantly exceeded $47.4 billion").

[10] It is for this reason the Creditors' Committee "needs the Court to see what we saw before we obtained the Rule 2004 discovery. Although Barclays would have this Court believe that the committee had the complete picture, the facts belie that assertion." Exhibit 18 [April 9 Hearing Tr.] at 100:7-11; *see also* 108:12-20 ("Mr. Burian submitted a declaration making clear that 'at no time during the sale process did any representative of Barclays or the Lehman sellers advise Houlihan that either party was valuing the assets being transferred to Barclays on a liquidation basis. ***Up until recently it was Houlihan's understanding that the assets would be valued using only book value or mark to market value.***'"). Barclays believes the Court needs to see *everything* the Committee had informing its understanding of the deal's economics, not just those items the Committee selectively chooses to present to the Court for its own benefit.

the Court approved it.") However, Movants simply cannot be mistaken about information supposedly withheld from the court if they *knew* that at the time (or within the time for modifying the order); further, such a motion would not be timely if they knew the information was supposedly withheld several months before their motion was actually filed.

21. Moreover, because the district court affirmed the Sale Order, Movants have to demonstrate an ability to overcome the mandate rule, for which they bear the burden, before establishing that this Court has jurisdiction to alter the Sale Order. *See Fine v. Bellefonte Underwriters Ins. Co.*, 758 F.2d 50, 52 (2d Cir. 1985) (mandate rule is a jurisdictional limitation on a lower court's ability to alter an affirmed order); *Oneida Indian Nation of New York v. Oneida County*, 214 F.R.D. 83, 96 (N.D.N.Y. 2003) (placing the burden to establish an exception to the mandate rule on the party seeking to modify the order). In an effort to meet their burden and overcome the mandate rule, Movants claim the economics of the deal are newly discovered evidence. While Barclays does not believe that any such exception to the mandate rule exists in the Second Circuit, obviously, if Movants knew of the alleged "new evidence" in time to present that evidence to the district court or seek a stay of the district court's ruling, these differences do not constitute "newly discovered evidence" for purposes of a mandate rule exception. *See State Street Bank*, 374 F.3d at 178 (new evidence must have been unknown to the movant); *Bernheim v. Jacobs*, 144 F. App'x 218, 222 (3d Cir. June 28, 2005) (holding that a lower court only has jurisdiction to alter an affirmed order "based on matters that come to light *after* the appellate court has issued its decision") (emphasis added); *In re Tri-Cran*, 98 B.R. at 613 (district court stayed its appellate decision and remanded to the bankruptcy court after the Chapter 11 Trustee – who was not a party to the appeal – requested it do so in light of information uncovered in its post-closing investigation).

22.     It is fundamentally unfair to Barclays to have to rebut Movants' alleged ignorance (prior to the appellate mandate) of the economics of the Sale, while being denied access to the work Movants were performing during this time period to understand the economics of the Sale. Movants concede they were investigating the economics of the Sale during the pending appeal, but, as a necessary part of their claim, they assert that their investigation did not reveal anything useful prior to Rule 2004 discovery.  This places at issue *all* work product relevant to their investigation, for that is the only method by which Barclays can rebut Movants' assertion that their economic analyses prior to March 13, 2009 did not reveal anything useful with respect to their claims.  *See Stern v. O'Quinn*, 253 F.R.D. 663, 677 (S.D. Fla. 2008) ("Defendants in the instant matter intend to rely upon the investigation in their defense.  As the *Volpe* Court concluded, a plaintiff must be permitted access to all investigation materials for the purposes of testing the genuineness of such an investigation.")

23.     Among other examples, Movants' statements concerning the October 8 Alvarez & Marsal presentation demonstrate the unfairness of having to defend against Movants' assertions without access to their post-Closing attempts to evaluate the Sale.  In its opposition brief, Barclays identified the October 8 Alvarez & Marsal presentation – which contained references to a $5 billion reduction and a negotiation from Lehman's stale marks – as proof that many of the items Movants now complain of were in fact known by Movants in time to appeal the Sale Order.  In response, Movants concede that they were aware of this information, but assert that they did not sufficiently understand the information they did possess.[11]  Movants likewise assert

---

[11] For example, LBHI states, "No one at A&M had a complete understanding of the Sale Transaction at the time, and none of them could have interpreted this reference on Fogarty's slide as indicating a built in profit for Barclays." LBHI Reply Brief at ¶ 119.  The Creditors' Committee makes similar assertions, contending that at the time of the presentation, "A&M had not developed a view as to whether the marks had declined because of market factors or whether the parties negotiated a $5 billion dollar discount." Creditors' Committee Reply Brief at ¶ 106.

12

that they did not understand other information – such as the Leventhal Declaration submitted in connection with the December Settlement or the publicly available contract cure amounts – that they had in their possession prior to the appellate mandate.[12] *Thus, Movants are asking this Court to believe that they did not understand the information they did have in their possession, while at the same time withholding as work product their attempts to evaluate or analyze that information or similar information.*

24. Movants cannot have it both ways. This is precisely "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion" that justifies a finding of implied waiver. *Erie County*, 546 F.3d at 229.

### C. Barclays Has A Substantial Need for Work Product Analyzing the Economics of the Sale.

25. Regardless of whether Movants have waived work product by placing it "at issue," Barclays is entitled to these analyses because it has the requisite level of need for such work product and cannot obtain their substantial equivalent by other means.[13] In determining whether a party has sufficient need for work product, courts distinguish between fact work product and work product that shows "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P.

---

[12] LBHI Reply Brief at ¶¶ 118 ("Discrete pieces of information began to dribble out of Barclays during late 2008, but estate administrators and creditors were not yet in a position to understand the import of this information, and did not have a complete picture."); 167 ("there simply was not enough time for LBHI to assemble and analyze the limited information it did have."); Creditors' Committee Reply Brief at ¶ 205 ("Even A&M, presumably in a better position than the Committee to assess the Cure and Compensation Liabilities, did not begin to realize the fallacy of the $4.25 billion figure under the 9-16-08 Balance Sheet until February 2009 because Barclays had impeded its access to the Lehman Sellers' accounting systems with which it would conduct that analysis.").

[13] This argument was raised at the end of Barclays' prior privilege motion, but the Court did not address this issue in its ruling. As such, and in light of Movants' reply papers further demonstrating the importance of their understanding of the Sale, Barclays renews its argument in this motion.

26(b)(3)(B). For the former, a party must show that "it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). The latter "is to be protected unless a highly persuasive showing of need is made." *In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000). The line between opinion and fact work product is not always clear, but to be entitled to the heightened protection of opinion work product, a party must show "a real, rather than speculative, concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007).

26. Most, if not all, of the financial analyses of the Sale performed by Movants' financial advisors is *fact work product*, for those analyses by themselves would not reveal Movants' "thought processes" in relation to anticipated litigation against Barclays. Barclays only seeks the conclusions and analyses of Movants' financial advisors concerning the economics of the Sale Transaction (including the value of categories of Purchased Assets and Assumed Liabilities). It does not seek Movants' opinion of how those values would or would not affect litigation against Barclays.

27. Regardless of whether those analyses are classified as fact or opinion work product, Barclays has demonstrated sufficient need for those materials. For many of the same reasons that Movants have impliedly waived work product, their understanding of the economics of the Sale (as embodied in analyses withheld as work product) is a necessary element of their Rule 60 claims (though such claims are legally insufficient for other reasons as well). Further, Movants need not rely on the work product as part of their claim in order for Barclays to demonstrate a substantial need for the work product. Thus, in addition to the elements of

Movants' claims discussed above, such as "newly discovered evidence" under Rule 60(b)(2), Barclays' defenses of judicial estoppel, equitable estoppel, and waiver (which Movants have sought to evade in their reply briefs with claims of not understanding the economics of the deal until recently) are further justification for requiring the production of Movants' economic analyses.

28. Although Barclays contends that the information Movants did possess is sufficient as a matter of law to prove their understanding of the Sale, Barclays is entitled to discover whether Movants did in fact have an actual understanding of the aspects of the Sale about which they now complain. This is particularly true given Movants' repeated assertions that they did not understand, or properly analyze, the relevant information about the Sale that they did possess. Barclays therefore has a "substantial" and "highly persuasive" need for such materials and cannot obtain the equivalent by any other means.

## **CONCLUSION**

29. For the foregoing reasons, Barclays respectfully asks this Court to enter an order compelling production of all documents prepared by Movants or their financial advisors analyzing the economics of the Sale Transaction, including all documents analyzing the actual or estimated values of the assets and liabilities acquired by Barclays in the transaction.


Dated: April 14, 2010
      New York, New York

                                 Respectfully submitted,

                                 BOIES, SCHILLER & FLEXNER LLP

                                 By:   /s/ Jonathan D. Schiller
                                        Jonathan D. Schiller
                                        Hamish P.M. Hume
                                        Jack G. Stern
                                        575 Lexington Avenue, 7th Floor
                                        New York, New York 10022
                                        Telephone: (212) 446-2300
                                        Facsimile: (212) 446-2350
                                        Attorneys for Barclays Capital Inc.