# Exhibit 1

BOIES,    SCHILLER    &    FLEXNER    LLP

401 EAST LAS OLAS BOULEVARD • SUITE 1200 • FORT LAUDERDALE, FL 33301-2211 • PH. 954.356.0011 • FAX 954.356.0022

March 22, 2010

<u>BY EMAIL</u>

Robert W. Gaffey
JONES DAY
222 East 41st Street
New York, New York 10017

William R. Maguire
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004

James Tecce
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

<em>In re Lehman Brothers Holdings Inc., et al.,</em><br>
<em>Case No. 08-13555 (JMP) Bankr. S.D.N.Y. (Jointly Administered);</em><br>
<em>In re Lehman Brothers Inc., Case No. 08-1420 (JMP)</em>

Dear Counsel:

      This letter is written to you in your capacities as lawyers for Movants and as lawyers for Movants' financial advisers Deloitte, Houlihan, Alvarez & Marsal, and FTI.

      In their reply briefs, each Movant asserts that they did not until recently understand the economics of the Barclays' sale transaction. Movants' assertion that they only recently understood the economics of the transaction is essential to their claims that their motions were timely, and that the mandate rule and their prior inconsistent positions can be avoided, and that the evidence they rely on is "new" and that they were "justifiably ignorant" (Comm. Reply ¶112) of such new evidence. Because each Movant admittedly knew the written terms of the transaction, the crux of Movants' case (on which Movants bear the burden of proof) is that they did not understand the economics of the transaction. For instance, Movants claim that they did not understand that the agreement they agreed to would or might transfer more than $47.4 billion in assets. *See, e.g.,* Trustee Reply ¶194 (Trustee did not know "value of the assets Barclays received in the Sale significantly exceeded $47.4 billion"); LBHI Reply ¶216 ("it took months to figure out that the transaction that closed differed materially from that presented to the Court and the Lehman Boards"); Committee Reply ¶¶ 205, 208 ("Committee did not develop a meaningful understanding of the Sale Transaction until after receiving the Rule

B O I E S,    S C H I L L E R   &   F L E X N E R    L L P

Robert W. Gaffey
William R. Maguire
James Tecce
March 22, 2010
Page 2

2004 discovery" and "did not begin to realize the fallacy of the $4.25 billion figure under the 9-16-08 Balance Sheet until February 2009").

Movants claim that they did not understand the economics of the deal until recently, but they have refused to produce their economic analyses of the deal on the grounds that they are privileged work product. They have also refused to answer deposition questions on the subject. However, these documents and the information they contain are not protected by the work product privilege for at least three independent reasons – any one of which is sufficient to require their production.

First, such economic analyses are not protected work product because they were done before any litigation with Barclays was anticipated and, in any event, would have been prepared even absent any anticipated litigation with Barclays and therefore were not created "because of" litigation. *See United Sates v. Adlman*, 134 F.3d 1994, 1202 (2d Cir. 1998). For instance, Deloitte's work on an opening balance sheet (which necessarily involves economic analysis of the sale transaction) would have been performed even absent Movants' claims. This letter therefore demands production of any financial analyses of the Sale Transaction conducted by Deloitte, Houlihan, Alvarez & Marsal, or FTI between September 15, 2008 and March 13, 2009. As you know, we requested these documents through our specific document requests.[1]

Second, even if the documents were protected by the work product doctrine, any such privilege has been waived by Movants' placing their understanding of the economics of the Sale at issue in these proceedings. At the time of Barclays' initial at-issue waiver motion, the Committee's and the Trustee's briefs – because they failed to address certain legal elements of their claim such as timeliness and whether they were justifiably ignorant of alleged new evidence – did not contain explicit assertions as to their subjective understanding of the deal. Now they do. *See, e.g.* LBHI Reply Brief ¶¶

---

[1] *See* First Request for Production of Documents to Lehman Brothers Holdings Inc., Request No. 1; Second Request for Production of Documents to Lehman Brothers Holdings Inc., Request No. 1; First Request for Production of Documents to the Trustee in the Securities Investor Protection Act Liquidation of Lehman Brothers Inc., Request No. 1; Second Request for Production of Documents to the Trustee in the Securities Investor Protection Act Liquidation of Lehman Brothers Inc., Request No. 1; First Request for Production of Documents to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession, Request No. 1; Second Request for Production of Documents to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession, Request No. 1; Subpoena on Deloitte, dated September 22, 2009, Request No. 1; Subpoena on Deloitte, dated October 9, 2009, Request No. 1; Subpoena on Houlihan, dated September 22, 2009, Request No. 1; Subpoena on Houlihan, dated October 9, 2009, Request No. 1; Subpoena on Alvarez & Marsal, dated September 22, 2009, Request No. 1; Subpoena on Alvarez & Marsal, dated October 9, 2009, Request No. 1; and Subpoena on FTI Consulting, Inc., dated November 20, 2009, Request No. 1.

B O I E S ,    S C H I L L E R   &   F L E X N E R    L L P

Robert W. Gaffey
William R. Maguire
James Tecce
March 22, 2010
Page 3

73, 115, 117-119, 129, 166-167, 212-213, 215, 216, 248; Committee Reply Brief ¶¶ 11, 14, 106, 114, 205, 208, 224-225, 250, 261, 270, 272; Trustee Reply Brief ¶¶ 194, 197, 202. [2] Movants are now asserting that the economic analyses they and their financial advisors performed prior to March 2008 did not reflect the actual terms of the sale transaction that closed on September 22, 2008. Consequently, those analyses and Movants' understanding of the economics of the transaction are now squarely at issue and any privilege concerning same is therefore waived. *See Granite Partners v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 54-56 (S.D.N.Y. 1999) (applying "at issue" waiver to work product and, in the alternative, concluding there was a "substantial need" for the work product).

Third, even if such economic analyses were work product and were not placed at issue, they would still have to be produced because Barclays has a "substantial need" for such documents and information given Movants claims, and it would be manifestly unjust to prevent Barclays from discovering them. This fact is made abundantly clear in your recently-filed reply papers which repeatedly assert a supposed lack of understanding of the economic terms of the deal. Movants cannot continue to assert that they did not understand the economics of the deal while withholding their economic analyses of the deal.

We therefore ask that before April 9, 2010, the Movants produce – and direct their professional advisers to produce – any documents created from September 15, 2008 through March 13, 2009, relating to or reflecting analyses performed by Movants or their professionals concerning the economics of the Sale, which includes any assessment of the value of the Purchased Assets, the amounts or values of the Assumed Liabilities, or the overall economics of the Sale. Also, given the short time-frame involved, please let us have a response to our request as soon as possible.

Very truly yours,

Todd Thomas

---

[2] With respect to LBHI, whereas the opening brief made assertions about what their attorneys knew in September 2008, their reply brief now clearly also puts at issue what they knew post-September 2008. *See, e.g.,* LBHI Reply ¶216 ("it took months to figure out that the transaction that closed differed materially from that presented to the Court and the Lehman Boards").

# Exhibit 2

**BOIES, SCHILLER & FLEXNER LLP**
575 Lexington Avenue, 7th Floor
New York, NY 10022
Telephone:  (212) 446-2300
Facsimile:  (212) 446-2350
Jonathan D. Schiller, Esq.
Hamish P.M. Hume, Esq.
Jack G. Stern, Esq.

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:           ) | |
|           ) | |
| Lehman Brothers Inc.,   ) | Case No. 08-01420 (JMP) |
|           ) | SIPA |
| Debtor.   ) | |
|           ) | |
|           ) | |
|           ) | |
| In re:           ) | Chapter 11 |
|           ) | |
| Lehman Brothers Holdings Inc., et al.   ) | Case No. 08-13555 (JMP) |
|           ) | (Jointly Administered) |
| Debtors.   ) | |
|           ) | |

## BARCLAYS CAPITAL INC.'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO LEHMAN BROTHERS HOLDINGS INC.

Barclays Capital Inc. ("Barclays"), through its attorneys and pursuant to Rule

7034 of the Federal Rules of Bankruptcy Procedure and Rule 34 of the Federal Rules of

Civil Procedure, serves this Second Request for Production and Inspection of Documents

on Lehman Brothers Holdings Inc. ("LBHI").

LBHI is to produce, at the offices of Boies, Schiller & Flexner, LLP, 575

Lexington Avenue, 7th Floor, New York, New York 10022, within thirty (30) days after

service of this Document Request, the documents identified herein:

## DEFINITIONS AND INSTRUCTIONS

1.      The term "document" has the broadest meaning accorded it under the Federal

Rules of Civil Procedure, and includes but is not limited to all written, printed, typed,

reported, recorded, pictorial or graphic matter, however produced or reproduced, now or

at the time of possession, custody or control, including, but not limited to, all court

submissions, drafts, letters, telegrams, telexes, e-mail transmissions, cables,

professionals' time records, telephone records and notations, invoices, ledgers, journals,

and other formal and informal books of record and account, logs, studies, summaries,

minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs,

instructions, financial statements, photographs, videotapes, microfilm, other film or

tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts,

worksheets, contracts, agreements, proposed contracts or agreements (whether or not

actually consummated), computer data, computer printouts, graphics, statistics,

interoffice memos, computer programs, computer software, tape recordings,

transcriptions, drafts of the foregoing items, articles of newspapers, magazines and other

publications, purchase orders, lists, proposals, plans, specifications, addenda, statements,

receipts, confirmations slips, evidence of payments, bills, diaries, calendars, Day

Timers, time records, bills of lading, canceled checks (both sides), audiotapes and copies

or reproductions of the foregoing upon which notations in writing have been made

which do not appear on the originals.

2.      As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to make the request intelligible and to bring within the scope of these requests any document that might be deemed outside its scope by another construction.

3.      As used herein, the "December 2008 JPMC Settlement Approval Motion" means the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

4.      As used herein, "Asset Purchase Agreement" means the Asset Purchase Agreement, dated as of September 16, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

5.      As used herein, "Barclays" means Barclays Capital Inc. and all subsidiaries and affiliates thereof.

6.      As used herein, the "Clarification Letter" means the letter, dated as of September 20, 2008, from Barclays Capital Inc. to Lehman Brothers Holdings Inc., Lehman Brothers Inc., and LB 745 LLC, Attn. Steven Berkenfeld, Esq.

7.      As used herein, "First Amendment to the Asset Purchase Agreement" means the First Amendment to Asset Purchase Agreement dated as of September 19, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

8.      As used herein, "You" refers to the entity or individual upon whom this document request is served, and any agent, servant, employee or representative of that entity or individual.

9.      The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, as required by the context to make the requests intelligible and to bring within the scope of the requests any information or documents which might otherwise be considered to be beyond their scope.

10.     Each document requested herein shall be produced as it is kept in the usual and regular course of business.

11.     These requests are continuing, so as to require supplemental responses in the event that LBHI, or any person or entity acting on its behalf, obtains additional information or documents called for by these requests between the time of the original response and the time of trial.

12.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

13.     These requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian.  If any responsive documents are believed to be in the custody of other persons, such as current or former attorneys or accountants for the responding party (or any entity controlled or operated by the responding party) but are not being produced by the responding party, please identify the person(s) in whose custody such potentially responsive documents are believed to be located, and state the reasons why the documents are not being produced in response to these requests.

14.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

15.     If any document called for by these requests is withheld on the ground of privilege or any other ground, identify the specific ground upon which the objection is based and the particular request objected to.  Identify the information withheld or objected to by furnishing sufficient information to describe the document in a subpoena and in all events by furnishing the following information: (a) identify the document, specifying its author, addressee(s), date, subject matter and person(s) to whom copies were furnished; (b) describe the document in a manner sufficient to identify it and its location; and (c) as to each such document, set forth each and every fact which constitutes the basis on which privilege is claimed.

16.     All requested documents must be produced pursuant to the specifications set forth below:

A.     <u>Production of Electronically Stored Information</u>

i.     <u>Form of Production.</u>  Please provide all documents as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii.     <u>Image Load File.</u>  Provide an image load file (Opticon file) that contains document boundaries.

iii.    <u>Document Text.</u>  For documents that were originally stored as native electronic files and which do not have redactions, the extracted (not OCRed), full text from the body of each document will be produced in separate .txt files named for the bates number of the associated image, in the same directory as the image.

For documents that were originally stored as native electronic files and which have redactions, the OCR text will be produced from the redacted image(s) associated with each document, in separate .txt files named for the bates number of the associated image, in the same directory as the image.  Any redacted, privileged material should be clearly labeled to show the redactions on the tiff image.

iv.    <u>Special File Types.</u>  For files created by Excel or other spreadsheet programs, PowerPoint or other presentation programs, database files, and any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the file in native format. The produced file should be named with the bates number of the first page of the corresponding tiff production of the document (e.g., "ABC00001.xls").

v.    <u>De-Duplication.</u>  Please produce a single unique copy of a given e-mail message and its attachments or standalone file, with a field of semicolon-delimited references to each custodian/location in which a copy originally appeared.  For e-mail messages, please consolidate duplicates based on an MD5 hash generated from BCC, Body, CC, From, IntMsgID, To, and Attach (semicolon delimited string of first level attachments in the e-mail) properties.

For e-mail attachments or standalone electronic files, please consolidate

duplicates based on an MD5 hash of the entire file.

      vi.    <u>Document Metadata.</u>  Produce extracted metadata for each

document in the form of a .dat file, and include the following fields where

applicable.

| | |
|---|---|
| Bates Range Begin | The bates label of the first page of the document |
| Bates Range End | The bates label of the last page of the document |
| Bates Family Range Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Bates Family Range End (optional) | The bates label of the last page of a family of documents |
| Subject (Email Metadata) | The subject line of an e-mail |
| File Name (Metadata) | The filename of an e-mail attachment or stand-alone e-file |
| Sent Date (Email Metadata) | For email, the sent date/time stamp of the message in the custodian's time zone |
| Send Date (Email Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Created Date (Blended Metadata) | For efiles or attachments, the MS Office creation date/time, or PDF creation date/time, or operating system creation date/time, in the custodian's time zone |
| Created Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Last Modified Date (Blended Metadata) | For efiles or attachments, the MS Office last modified date/time, or PDF last modified date/time, or operating system last modified date/time, in the custodian's time zone |
| Last Modified Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Author (MS Metadata) | The author of a stand-alone efile or attachment |
| From (Email Metadata) | The sender of an email message |
| To (Email Metadata) | The recipients of an email message |
| CC (Email Metadata) | The copyee(s) of an email message |
| BCC (Email Metadata) | The blind copyee(s) of an email message |
| Custodian | The custodian in whose file the document was found |
| Source | Path to e-mail archive or original path to standalone files |

| | |
|---|---|
| Source Folder | Folder within e-mail archive or original path to standalone files |
| MD5 | The calculated MD5 hash value of the document |
| NativeFile | The file path to the location of the native file if produced |
| Confidential Stamp | The confidentiality designation, if any, for the document pursuant to any protective order in the case, as it appears on the image. |

B. <u>Production of Paper Documents</u>

i. <u>Form of Production.</u>  Produce all documents originally maintained in paper files as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii. <u>Image Load File.</u>  Provide an image load file (Opticon file) that contains document boundaries.

iii. <u>Document Text.</u>  The OCR text will be produced from the image(s) associated with each document, with the text from each document stored in a separate .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document.

iv. <u>Document Metadata.</u>  Produce data for each document in the form of a .dat file including the following fields where applicable:

| | |
|---|---|
| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents |

8

| | (e.g., email and attachment) |
|---|---|
| Attach_End (Optional) | The bates label of the last page of a family of documents |
| Custodian | The custodian in whose file the document was found |

v.    <u>Unitization of Documents.</u>  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties should re-unitize improperly unitized documents.

vi.    <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document) should be preserved.

## REQUESTED DOCUMENTS

1.       All documents sent, received, created, reviewed or revised by You after
September 30, 2008, and before March 13, 2009, concerning any assets transferred or
liabilities assumed by Barclays under the Asset Purchase Agreement, as originally drafted
and executed, or as subsequently amended by the First Amendment to the Asset Purchase
Agreement or by the Clarification Letter.  This request includes but is not limited to any
analyses, reconciliations or communications concerning the Barclays transaction or the
assets or liabilities involved in that transaction, whether the assets or liabilities were
actually transferred or not, and whether the assets or liabilities were subject to transfer
under the original Asset Purchase Agreement or under a subsequent amendment.  This
request includes documents relating to assets that You understand Barclays believes were
required to be transferred under the Asset Purchase Agreement, as subsequently amended
by the First Amendment to the Asset Purchase Agreement or by the Clarification Letter.

Dated: New York, New York
October 9, 2009

BOIES, SCHILLER & FLEXNER LLP

By: _____
Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern
BOIES, SCHILLER & FLEXNER
LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Barclays Capital Inc.*

# Exhibit 3

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
Telephone:  (212) 446-2300
Facsimile:  (212) 446-2350
Jonathan D. Schiller, Esq.
Hamish P.M. Hume, Esq.
Jack G. Stern, Esq.

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Lehman Brothers Inc., | ) | Case No. 08-01420 (JMP) |
| | ) | SIPA |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Lehman Brothers Holdings Inc., et al. | ) | Case No. 08-13555 (JMP) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**BARCLAYS CAPITAL INC.'S FIRST REQUEST FOR PRODUCTION OF**
**DOCUMENTS TO THE TRUSTEE IN THE SECURITIES INVESTOR**
**PROTECTION ACT LIQUIDATION OF LEHMAN BROTHERS INC.**

Barclays Capital Inc. ("Barclays"), through its attorneys and pursuant to Rule

7034 of the Federal Rules of Bankruptcy Procedure and Rule 34 of the Federal Rules of

Civil Procedure, serves this First Request for Production and Inspection of Documents on

James W. Giddens, as Trustee in the Securities Investor Protection Act Liquidation of

Lehman Brothers Inc. (the "Trustee").

The Trustee is to produce, at the offices of Boies, Schiller & Flexner, LLP, 575

Lexington Avenue, 7th Floor, New York, New York 10022, within fourteen (14) calendar

days after service of this Document Request, the documents identified herein:

### <u>DEFINITIONS AND INSTRUCTIONS</u>

1.      The term "document" has the broadest meaning accorded it under the Federal

Rules of Civil Procedure, and includes but is not limited to all written, printed, typed,

reported, recorded, pictorial or graphic matter, however produced or reproduced, now or

at the time of possession, custody or control, including, but not limited to, all court

submissions, drafts, letters, telegrams, telexes, e-mail transmissions, cables,

professionals' time records, telephone records and notations, invoices, ledgers, journals,

and other formal and informal books of record and account, logs, studies, summaries,

minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs,

instructions, financial statements, photographs, videotapes, microfilm, other film or

tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts,

worksheets, contracts, agreements, proposed contracts or agreements (whether or not

actually consummated), computer data, computer printouts, graphics, statistics,

interoffice memos, computer programs, computer software, tape recordings,

transcriptions, drafts of the foregoing items, articles of newspapers, magazines and other

publications, purchase orders, lists, proposals, plans, specifications, addenda, statements,

receipts, confirmations slips, evidence of payments, bills, diaries, calendars, Day

Timers, time records, bills of lading, canceled checks (both sides), audiotapes and copies

or reproductions of the foregoing upon which notations in writing have been made

which do not appear on the originals.

2.      As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to make the request intelligible and to bring within the scope of these requests any document that might be deemed outside its scope by another construction.

3.      As used herein, the "December 2008 JPMC Settlement Approval Motion" means the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

4.      As used herein, "You" refers to the entity or individual upon whom this document request is served, and any agent, servant, employee or representative of that entity or individual.

5.      The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, as required by the context to make the requests intelligible and to bring within the scope of the requests any information or documents which might otherwise be considered to be beyond their scope.

6.      Each document requested herein shall be produced as it is kept in the usual and regular course of business.

7.      These requests are continuing, so as to require supplemental responses in the event that the Trustee, or any person or entity acting on his behalf, obtains additional information or documents called for by these requests between the time of the original response and the time of trial.

8.      If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections

is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

9.      These requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian.  If any responsive documents are believed to be in the custody of other persons, such as current or former attorneys or accountants for the responding party (or any entity controlled or operated by the responding party) but are not being produced by the responding party, please identify the person(s) in whose custody such potentially responsive documents are believed to be located, and state the reasons why the documents are not being produced in response to these requests.

10.      If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

11.      If any document called for by these requests is withheld on the ground of privilege or any other ground, identify the specific ground upon which the objection is based and the particular request objected to.  Identify the information withheld or objected to by furnishing sufficient information to describe the document in a subpoena and in all events by furnishing the following information: (a) identify the document, specifying its author, addressee(s), date, subject matter and person(s) to whom copies were furnished; (b) describe the document in a manner sufficient to identify it and its location; and (c) as to each such document, set forth each and every fact which constitutes the basis on which privilege is claimed.

12.     All requested documents must be produced pursuant to the specifications set

forth below:

A.     <u>Production of Electronically Stored Information</u>

i.     <u>Form of Production.</u>  Please provide all documents as Group IV

single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique

name matching the Bates number labeled on the corresponding page.  Group

every 1000 tiffs into a new folder; do not create a separate folder for each

document.

ii.     <u>Image Load File.</u>  Provide an image load file (Opticon file) that

contains document boundaries.

iii.     <u>Document Text.</u>  For documents that were originally stored as

native electronic files and which do not have redactions, the extracted (not

OCRed), full text from the body of each document will be produced in separate

.txt files named for the bates number of the associated image, in the same

directory as the image.

For documents that were originally stored as native electronic files and

which have redactions, the OCR text will be produced from the redacted image(s)

associated with each document, in separate .txt files named for the bates number

of the associated image, in the same directory as the image.  Any redacted,

privileged material should be clearly labeled to show the redactions on the tiff

image.

iv.     <u>Special File Types.</u>  For files created by Excel or other spreadsheet

programs, PowerPoint or other presentation programs, database files, and any

other file types that reasonably require viewing in their native format for a full

understanding of their content and meaning, produce the file in native format.

The produced file should be named with the bates number of the first page of the

corresponding tiff production of the document (e.g., "ABC00001.xls").

      v.    <u>De-Duplication.</u>  Please produce a single unique copy of a given e-

mail message and its attachments or standalone file, with a field of semicolon-

delimited references to each custodian/location in which a copy originally

appeared.  For e-mail messages, please consolidate duplicates based on an MD5

hash generated from BCC, Body, CC, From, IntMsgID, To, and Attach

(semicolon delimited string of first level attachments in the e-mail) properties.

For e-mail attachments or standalone electronic files, please consolidate

duplicates based on an MD5 hash of the entire file.

      vi.    <u>Document Metadata.</u>  Produce extracted metadata for each

document in the form of a .dat file, and include the following fields where

applicable.

| | |
|---|---|
| Bates Range Begin | The bates label of the first page of the document |
| Bates Range End | The bates label of the last page of the document |
| Bates Family Range Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Bates Family Range End (optional) | The bates label of the last page of a family of documents |
| Subject (Email Metadata) | The subject line of an e-mail |
| File Name (Metadata) | The filename of an e-mail attachment or stand-alone e-file |
| Sent Date (Email Metadata) | For email, the sent date/time stamp of the message in the custodian's time zone |
| Send Date (Email Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |

| | |
|---|---|
| Created Date (Blended Metadata) | For efiles or attachments, the MS Office creation date/time, or PDF creation date/time, or operating system creation date/time, in the custodian's time zone |
| Created Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Last Modified Date (Blended Metadata) | For efiles or attachments, the MS Office last modified date/time, or PDF last modified date/time, or operating system last modified date/time, in the custodian's time zone |
| Last Modified Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Author (MS Metadata) | The author of a stand-alone efile or attachment |
| From (Email Metadata) | The sender of an email message |
| To (Email Metadata) | The recipients of an email message |
| CC (Email Metadata) | The copyee(s) of an email message |
| BCC (Email Metadata) | The blind copyee(s) of an email message |
| Custodian | The custodian in whose file the document was found |
| Source | Path to e-mail archive or original path to standalone files |
| Source Folder | Folder within e-mail archive or original path to standalone files |
| MD5 | The calculated MD5 hash value of the document |
| NativeFile | The file path to the location of the native file if produced |
| Confidential Stamp | The confidentiality designation, if any, for the document pursuant to any protective order in the case, as it appears on the image. |

B.    Production of Paper Documents

i.    Form of Production.  Produce all documents originally maintained in paper files as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii.    Image Load File.  Provide an image load file (Opticon file) that contains document boundaries.

iii.    <u>Document Text.</u>  The OCR text will be produced from the image(s) associated with each document, with the text from each document stored in a separate .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document.

iv.    <u>Document Metadata.</u>  Produce data for each document in the form of a .dat file including the following fields where applicable:

| | |
|---|---|
| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Attach_End (Optional) | The bates label of the last page of a family of documents |
| Custodian | The custodian in whose file the document was found |

v.    <u>Unitization of Documents.</u>  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties should re-unitize improperly unitized documents.

vi.    <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document) should be preserved.

8

## REQUESTED DOCUMENTS

1.      All documents sent, received, or created between September 12, 2008 and September 30, 2008 by You concerning the negotiation, terms, or approval (by any person or entity) of any proposed or actual purchase, sale, merger, transfer or similar transaction in which some or all of the assets, liabilities or business of LBHI or any LBHI entity or affiliate (including LBI) were to be or actually were sold to, acquired by, transferred to, or assumed by Barclays or any Barclays' entity or affiliate.

2.      All documents sent, received, or created by You relating to the December 2008 JPMC Settlement Approval Motion, including without limitation documents relating to any of the facts presented to the Court in connection with the December 2008 JPMC Settlement Approval Motion.

Dated: New York, New York
      September 22, 2009

BOIES, SCHILLER & FLEXNER LLP

By: _____

Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern
BOIES, SCHILLER & FLEXNER
LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Barclays Capital Inc.*

# Exhibit 4

BOIES, SCHILLER & FLEXNER LLP

575 Lexington Avenue, 7th Floor
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Jonathan D. Schiller, Esq.
Hamish P.M. Hume, Esq.
Jack G. Stern, Esq.

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | |
| Lehman Brothers Inc., ) | Case No. 08-01420 (JMP) |
| ) | SIPA |
| Debtor. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| In re: ) | Chapter 11 |
| ) | |
| Lehman Brothers Holdings Inc., et al. ) | Case No. 08-13555 (JMP) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | |

### BARCLAYS CAPITAL INC.'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO THE TRUSTEE IN THE SECURITIES INVESTOR PROTECTION ACT LIQUIDATION OF LEHMAN BROTHERS INC.

Barclays Capital Inc. ("Barclays"), through its attorneys and pursuant to Rule

7034 of the Federal Rules of Bankruptcy Procedure and Rule 34 of the Federal Rules of

Civil Procedure, serves this Second Request for Production and Inspection of Documents

on James W. Giddens, as Trustee in the Securities Investor Protection Act Liquidation of

Lehman Brothers Inc. (the "Trustee").

The Trustee is to produce, at the offices of Boies, Schiller & Flexner, LLP, 575

Lexington Avenue, 7th Floor, New York, New York 10022, within thirty (30) days after

service of this Document Request, the documents identified herein:

## DEFINITIONS AND INSTRUCTIONS

1.    The term "document" has the broadest meaning accorded it under the Federal

Rules of Civil Procedure, and includes but is not limited to all written, printed, typed,

reported, recorded, pictorial or graphic matter, however produced or reproduced, now or

at the time of possession, custody or control, including, but not limited to, all court

submissions, drafts, letters, telegrams, telexes, e-mail transmissions, cables,

professionals' time records, telephone records and notations, invoices, ledgers, journals,

and other formal and informal books of record and account, logs, studies, summaries,

minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs,

instructions, financial statements, photographs, videotapes, microfilm, other film or

tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts,

worksheets, contracts, agreements, proposed contracts or agreements (whether or not

actually consummated), computer data, computer printouts, graphics, statistics,

interoffice memos, computer programs, computer software, tape recordings,

transcriptions, drafts of the foregoing items, articles of newspapers, magazines and other

publications, purchase orders, lists, proposals, plans, specifications, addenda, statements,

receipts, confirmations slips, evidence of payments, bills, diaries, calendars, Day

Timers, time records, bills of lading, canceled checks (both sides), audiotapes and copies

or reproductions of the foregoing upon which notations in writing have been made

which do not appear on the originals.

2.      As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to make the request intelligible and to bring within the scope of these requests any document that might be deemed outside its scope by another construction.

3.      As used herein, the "December 2008 JPMC Settlement Approval Motion" means the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

4.      As used herein, "Asset Purchase Agreement" means the Asset Purchase Agreement, dated as of September 16, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

5.      As used herein, "Barclays" means Barclays Capital Inc. and all subsidiaries and affiliates thereof.

6.      As used herein, the "Clarification Letter" means the letter, dated as of September 20, 2008, from Barclays Capital Inc. to Lehman Brothers Holdings Inc., Lehman Brothers Inc., and LB 745 LLC, Attn. Steven Berkenfeld, Esq.

7.      As used herein, "First Amendment to the Asset Purchase Agreement" means the First Amendment to Asset Purchase Agreement dated as of September 19, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

8.      As used herein, "You" refers to the entity or individual upon whom this document request is served, and any agent, servant, employee or representative of that entity or individual.

9.      The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, as required by the context to make the requests intelligible and to bring within the scope of the requests any information or documents which might otherwise be considered to be beyond their scope.

10.     Each document requested herein shall be produced as it is kept in the usual and regular course of business.

11.     These requests are continuing, so as to require supplemental responses in the event that the Trustee, or any person or entity acting on his behalf, obtains additional information or documents called for by these requests between the time of the original response and the time of trial.

12.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

13.     These requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian.  If any responsive documents are believed to be in the custody of other persons, such as current or former attorneys or accountants for the responding party (or any entity controlled or operated by the responding party) but are not being produced by the responding party, please identify the person(s) in whose custody such potentially responsive documents are believed to be located, and state the reasons why the documents are not being produced in response to these requests.

14.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

15.     If any document called for by these requests is withheld on the ground of privilege or any other ground, identify the specific ground upon which the objection is based and the particular request objected to.  Identify the information withheld or objected to by furnishing sufficient information to describe the document in a subpoena and in all events by furnishing the following information: (a) identify the document, specifying its author, addressee(s), date, subject matter and person(s) to whom copies were furnished; (b) describe the document in a manner sufficient to identify it and its location; and (c) as to each such document, set forth each and every fact which constitutes the basis on which privilege is claimed.

16.     All requested documents must be produced pursuant to the specifications set forth below:

A.     <u>Production of Electronically Stored Information</u>

i.     <u>Form of Production.</u>  Please provide all documents as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii.     <u>Image Load File.</u>  Provide an image load file (Opticon file) that contains document boundaries.

iii.    <u>Document Text.</u>  For documents that were originally stored as native electronic files and which do not have redactions, the extracted (not OCRed), full text from the body of each document will be produced in separate .txt files named for the bates number of the associated image, in the same directory as the image.

For documents that were originally stored as native electronic files and which have redactions, the OCR text will be produced from the redacted image(s) associated with each document, in separate .txt files named for the bates number of the associated image, in the same directory as the image.  Any redacted, privileged material should be clearly labeled to show the redactions on the tiff image.

iv.    <u>Special File Types.</u>  For files created by Excel or other spreadsheet programs, PowerPoint or other presentation programs, database files, and any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the file in native format. The produced file should be named with the bates number of the first page of the corresponding tiff production of the document (e.g., "ABC00001.xls").

v.    <u>De-Duplication.</u>  Please produce a single unique copy of a given e-mail message and its attachments or standalone file, with a field of semicolon-delimited references to each custodian/location in which a copy originally appeared.  For e-mail messages, please consolidate duplicates based on an MD5 hash generated from BCC, Body, CC, From, IntMsgID, To, and Attach (semicolon delimited string of first level attachments in the e-mail) properties.

For e-mail attachments or standalone electronic files, please consolidate duplicates based on an MD5 hash of the entire file.

      vi.   <u>Document Metadata.</u>  Produce extracted metadata for each document in the form of a .dat file, and include the following fields where applicable.

| | |
|---|---|
| Bates Range Begin | The bates label of the first page of the document |
| Bates Range End | The bates label of the last page of the document |
| Bates Family Range Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Bates Family Range End (optional) | The bates label of the last page of a family of documents |
| Subject (Email Metadata) | The subject line of an e-mail |
| File Name (Metadata) | The filename of an e-mail attachment or stand-alone e-file |
| Sent Date (Email Metadata) | For email, the sent date/time stamp of the message in the custodian's time zone |
| Send Date (Email Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Created Date (Blended Metadata) | For efiles or attachments, the MS Office creation date/time, or PDF creation date/time, or operating system creation date/time, in the custodian's time zone |
| Created Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Last Modified Date (Blended Metadata) | For efiles or attachments, the MS Office last modified date/time, or PDF last modified date/time, or operating system last modified date/time, in the custodian's time zone |
| Last Modified Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Author (MS Metadata) | The author of a stand-alone efile or attachment |
| From (Email Metadata) | The sender of an email message |
| To (Email Metadata) | The recipients of an email message |
| CC (Email Metadata) | The copyee(s) of an email message |
| BCC (Email Metadata) | The blind copyee(s) of an email message |
| Custodian | The custodian in whose file the document was found |
| Source | Path to e-mail archive or original path to standalone files |

| | |
|---|---|
| Source Folder | Folder within e-mail archive or original path to standalone files |
| MD5 | The calculated MD5 hash value of the document |
| NativeFile | The file path to the location of the native file if produced |
| Confidential Stamp | The confidentiality designation, if any, for the document pursuant to any protective order in the case, as it appears on the image. |

B.    <u>Production of Paper Documents</u>

i.    <u>Form of Production.</u>  Produce all documents originally maintained in paper files as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii.    <u>Image Load File.</u>  Provide an image load file (Opticon file) that contains document boundaries.

iii.    <u>Document Text.</u>  The OCR text will be produced from the image(s) associated with each document, with the text from each document stored in a separate .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document.

iv.    <u>Document Metadata.</u>  Produce data for each document in the form of a .dat file including the following fields where applicable:

| | |
|---|---|
| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Attach_End (Optional) | The bates label of the last page of a family of documents |

| Custodian | The custodian in whose file the document was found |

v.      <u>Unitization of Documents.</u>  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties should re-unitize improperly unitized documents.

vi.      <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document) should be preserved.

## REQUESTED DOCUMENTS

1.          All documents sent, received, created, reviewed or revised by You after
September 30, 2008, and before March 13, 2009, concerning any assets transferred or
liabilities assumed by Barclays under the Asset Purchase Agreement, as originally drafted
and executed, or as subsequently amended by the First Amendment to the Asset Purchase
Agreement or by the Clarification Letter.  This request includes but is not limited to any
analyses, reconciliations or communications concerning the Barclays transaction or the
assets or liabilities involved in that transaction, whether the assets or liabilities were
actually transferred or not, and whether the assets or liabilities were subject to transfer
under the original Asset Purchase Agreement or under a subsequent amendment.  This
request includes documents relating to assets that You understand Barclays believes were
required to be transferred under the Asset Purchase Agreement, as subsequently amended
by the First Amendment to the Asset Purchase Agreement or by the Clarification Letter.

Dated: New York, New York
      October 9, 2009

                    BOIES, SCHILLER & FLEXNER LLP

             By: _____

                    Jonathan D. Schiller
                    Hamish P.M. Hume
                    Jack G. Stern
                    BOIES, SCHILLER & FLEXNER
                    LLP
                    575 Lexington Avenue
                    New York, NY 10022
                    Telephone: (212) 446-2300
                    Facsimile: (212) 446-2350

                    *Attorneys for Barclays Capital Inc.*

11

# Exhibit 5

BOIES, SCHILLER & FLEXNER LLP

575 Lexington Avenue, 7th Floor

New York, NY 10022

Telephone:  (212) 446-2300

Facsimile:  (212) 446-2350

Jonathan D. Schiller, Esq.

Hamish P.M. Hume, Esq.

Jack G. Stern, Esq.

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Lehman Brothers Inc., | ) | Case No. 08-01420 (JMP) |
| | ) | SIPA |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Lehman Brothers Holdings Inc., <u>et al</u>. | ) | Case No. 08-13555 (JMP) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**BARCLAYS CAPITAL INC.'S FIRST REQUEST FOR PRODUCTION OF**
**DOCUMENTS TO THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF LEHMAN BROTHERS HOLDINGS, INC. AND ITS**
**<u>AFFILIATED DEBTORS AND DEBTORS IN POSSESSION</u>**

Barclays Capital Inc. ("Barclays"), through its attorneys and pursuant to Rule

7034 of the Federal Rules of Bankruptcy Procedure and Rule 34 of the Federal Rules of

Civil Procedure, serves this First Request for Production and Inspection of Documents on

the Official Committee of Unsecured Creditors of Lehman Brothers Holdings, Inc. and its

affiliated debtors and debtors in possession (the "Committee").

The Committee is to produce, at the offices of Boies, Schiller & Flexner, LLP,

575 Lexington Avenue, 7th Floor, New York, New York 10022, within fourteen (14)

calendar days after service of this Document Request, the documents identified herein:

## DEFINITIONS AND INSTRUCTIONS

1.      The term "document" has the broadest meaning accorded it under the Federal

Rules of Civil Procedure, and includes but is not limited to all written, printed, typed,

reported, recorded, pictorial or graphic matter, however produced or reproduced, now or

at the time of possession, custody or control, including, but not limited to, all court

submissions, drafts, letters, telegrams, telexes, e-mail transmissions, cables,

professionals' time records, telephone records and notations, invoices, ledgers, journals,

and other formal and informal books of record and account, logs, studies, summaries,

minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs,

instructions, financial statements, photographs, videotapes, microfilm, other film or

tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts,

worksheets, contracts, agreements, proposed contracts or agreements (whether or not

actually consummated), computer data, computer printouts, graphics, statistics,

interoffice memos, computer programs, computer software, tape recordings,

transcriptions, drafts of the foregoing items, articles of newspapers, magazines and other

publications, purchase orders, lists, proposals, plans, specifications, addenda, statements,

receipts, confirmations slips, evidence of payments, bills, diaries, calendars, Day

Timers, time records, bills of lading, canceled checks (both sides), audiotapes and copies

or reproductions of the foregoing upon which notations in writing have been made

which do not appear on the originals.

2.      As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to make the request intelligible and to bring within the scope of these requests any document that might be deemed outside its scope by another construction.

3.      As used herein, the "December 2008 JPMC Settlement Approval Motion" means the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

4.      As used herein, "You" refers to the entity or individual upon whom this document request is served, and any agent, servant, employee or representative of that entity or individual.

5.      The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, as required by the context to make the requests intelligible and to bring within the scope of the requests any information or documents which might otherwise be considered to be beyond their scope.

6.      Each document requested herein shall be produced as it is kept in the usual and regular course of business.

7.      These requests are continuing, so as to require supplemental responses in the event that the Committee, or any person or entity acting on its behalf, obtains additional information or documents called for by these requests between the time of the original response and the time of trial.

8.      If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections

is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

9.      These requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian.  If any responsive documents are believed to be in the custody of other persons, such as current or former attorneys or accountants for the responding party (or any entity controlled or operated by the responding party) but are not being produced by the responding party, please identify the person(s) in whose custody such potentially responsive documents are believed to be located, and state the reasons why the documents are not being produced in response to these requests.

10.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

11.     If any document called for by these requests is withheld on the ground of privilege or any other ground, identify the specific ground upon which the objection is based and the particular request objected to.  Identify the information withheld or objected to by furnishing sufficient information to describe the document in a subpoena and in all events by furnishing the following information: (a) identify the document, specifying its author, addressee(s), date, subject matter and person(s) to whom copies were furnished; (b) describe the document in a manner sufficient to identify it and its location; and (c) as to each such document, set forth each and every fact which constitutes the basis on which privilege is claimed.

12.     All requested documents must be produced pursuant to the specifications set

forth below:

    A.     <u>Production of Electronically Stored Information</u>

        i.     <u>Form of Production.</u>  Please provide all documents as Group IV

single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique

name matching the Bates number labeled on the corresponding page.  Group

every 1000 tiffs into a new folder; do not create a separate folder for each

document.

        ii.     <u>Image Load File.</u>  Provide an image load file (Opticon file) that

contains document boundaries.

        iii.     <u>Document Text.</u>  For documents that were originally stored as

native electronic files and which do not have redactions, the extracted (not

OCRed), full text from the body of each document will be produced in separate

.txt files named for the bates number of the associated image, in the same

directory as the image.

        For documents that were originally stored as native electronic files and

which have redactions, the OCR text will be produced from the redacted image(s)

associated with each document, in separate .txt files named for the bates number

of the associated image, in the same directory as the image.  Any redacted,

privileged material should be clearly labeled to show the redactions on the tiff

image.

        iv.     <u>Special File Types.</u>  For files created by Excel or other spreadsheet

programs, PowerPoint or other presentation programs, database files, and any

other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the file in native format. The produced file should be named with the bates number of the first page of the corresponding tiff production of the document (e.g., "ABC00001.xls").

     v.   <u>De-Duplication.</u>  Please produce a single unique copy of a given e-mail message and its attachments or standalone file, with a field of semicolon-delimited references to each custodian/location in which a copy originally appeared.  For e-mail messages, please consolidate duplicates based on an MD5 hash generated from BCC, Body, CC, From, IntMsgID, To, and Attach (semicolon delimited string of first level attachments in the e-mail) properties. For e-mail attachments or standalone electronic files, please consolidate duplicates based on an MD5 hash of the entire file.

     vi.   <u>Document Metadata.</u>  Produce extracted metadata for each document in the form of a .dat file, and include the following fields where applicable.

| | |
|---|---|
| Bates Range Begin | The bates label of the first page of the document |
| Bates Range End | The bates label of the last page of the document |
| Bates Family Range Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Bates Family Range End (optional) | The bates label of the last page of a family of documents |
| Subject (Email Metadata) | The subject line of an e-mail |
| File Name (Metadata) | The filename of an e-mail attachment or stand-alone e-file |
| Sent Date (Email Metadata) | For email, the sent date/time stamp of the message in the custodian's time zone |
| Send Date (Email Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |

| | |
|---|---|
| Created Date (Blended Metadata) | For efiles or attachments, the MS Office creation date/time, or PDF creation date/time, or operating system creation date/time, in the custodian's time zone |
| Created Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Last Modified Date (Blended Metadata) | For efiles or attachments, the MS Office last modified date/time, or PDF last modified date/time, or operating system last modified date/time, in the custodian's time zone |
| Last Modified Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Author (MS Metadata) | The author of a stand-alone efile or attachment |
| From (Email Metadata) | The sender of an email message |
| To (Email Metadata) | The recipients of an email message |
| CC (Email Metadata) | The copyee(s) of an email message |
| BCC (Email Metadata) | The blind copyee(s) of an email message |
| Custodian | The custodian in whose file the document was found |
| Source | Path to e-mail archive or original path to standalone files |
| Source Folder | Folder within e-mail archive or original path to standalone files |
| MD5 | The calculated MD5 hash value of the document |
| NativeFile | The file path to the location of the native file if produced |
| Confidential Stamp | The confidentiality designation, if any, for the document pursuant to any protective order in the case, as it appears on the image. |

B.    Production of Paper Documents

i.    Form of Production.  Produce all documents originally maintained in paper files as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii.    Image Load File.  Provide an image load file (Opticon file) that contains document boundaries.

7

iii.    <u>Document Text.</u>  The OCR text will be produced from the image(s) associated with each document, with the text from each document stored in a separate .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document.

iv.    <u>Document Metadata.</u>  Produce data for each document in the form of a .dat file including the following fields where applicable:

| | |
|---|---|
| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Attach_End (Optional) | The bates label of the last page of a family of documents |
| Custodian | The custodian in whose file the document was found |

v.    <u>Unitization of Documents.</u>  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties should re-unitize improperly unitized documents.

vi.    <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document) should be preserved.

## REQUESTED DOCUMENTS

1.      All documents sent, received, or created between September 12, 2008 and

September 30, 2008 by You concerning the negotiation, terms, or approval (by any

person or entity) of any proposed or actual purchase, sale, merger, transfer or similar

transaction in which some or all of the assets, liabilities or business of LBHI or any LBHI

entity or affiliate (including LBI) were to be or actually were sold to, acquired by,

transferred to, or assumed by Barclays or any Barclays' entity or affiliate.

2.      All documents sent, received, or created by You relating to the December

2008 JPMC Settlement Approval Motion, including without limitation documents

relating to any of the facts presented to the Court in connection with the December 2008

JPMC Settlement Approval Motion.

Dated: New York, New York
      September 22, 2009

BOIES, SCHILLER & FLEXNER LLP

By:_____

     Jonathan D. Schiller
     Hamish P.M. Hume
     Jack G. Stern
     BOIES, SCHILLER & FLEXNER
     LLP
     575 Lexington Avenue
     New York, NY 10022
     Telephone: (212) 446-2300
     Facsimile: (212) 446-2350

     *Attorneys for Barclays Capital Inc.*

# Exhibit 6

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
Telephone:  (212) 446-2300
Facsimile:  (212) 446-2350
Jonathan D. Schiller, Esq.
Hamish P.M. Hume, Esq.
Jack G. Stern, Esq.

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Lehman Brothers Inc., | ) | Case No. 08-01420 (JMP) |
| | ) | SIPA |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Lehman Brothers Holdings Inc., <u>et al</u>. | ) | Case No. 08-13555 (JMP) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**BARCLAYS CAPITAL INC.'S SECOND REQUEST FOR PRODUCTION OF**
**DOCUMENTS TO THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF LEHMAN BROTHERS HOLDINGS, INC. AND ITS**
**<u>AFFILIATED DEBTORS AND DEBTORS IN POSSESSION</u>**

Barclays Capital Inc. ("Barclays"), through its attorneys and pursuant to Rule

7034 of the Federal Rules of Bankruptcy Procedure and Rule 34 of the Federal Rules of

Civil Procedure, serves this Second Request for Production and Inspection of Documents

on the Official Committee of Unsecured Creditors of Lehman Brothers Holdings, Inc.

and its affiliated debtors and debtors in possession (the "Committee").

The Committee is to produce, at the offices of Boies, Schiller & Flexner, LLP,

575 Lexington Avenue, 7th Floor, New York, New York 10022, within thirty (30) days

after service of this Document Request, the documents identified herein:

### DEFINITIONS AND INSTRUCTIONS

1.      The term "document" has the broadest meaning accorded it under the Federal

Rules of Civil Procedure, and includes but is not limited to all written, printed, typed,

reported, recorded, pictorial or graphic matter, however produced or reproduced, now or

at the time of possession, custody or control, including, but not limited to, all court

submissions, drafts, letters, telegrams, telexes, e-mail transmissions, cables,

professionals' time records, telephone records and notations, invoices, ledgers, journals,

and other formal and informal books of record and account, logs, studies, summaries,

minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs,

instructions, financial statements, photographs, videotapes, microfilm, other film or

tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts,

worksheets, contracts, agreements, proposed contracts or agreements (whether or not

actually consummated), computer data, computer printouts, graphics, statistics,

interoffice memos, computer programs, computer software, tape recordings,

transcriptions, drafts of the foregoing items, articles of newspapers, magazines and other

publications, purchase orders, lists, proposals, plans, specifications, addenda, statements,

receipts, confirmations slips, evidence of payments, bills, diaries, calendars, Day

Timers, time records, bills of lading, canceled checks (both sides), audiotapes and copies

or reproductions of the foregoing upon which notations in writing have been made

which do not appear on the originals.

2.      As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to make the request intelligible and to bring within the scope of these requests any document that might be deemed outside its scope by another construction.

3.      As used herein, the "December 2008 JPMC Settlement Approval Motion" means the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

4.      As used herein, "Asset Purchase Agreement" means the Asset Purchase Agreement, dated as of September 16, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

5.      As used herein, "Barclays" means Barclays Capital Inc. and all subsidiaries and affiliates thereof.

6.      As used herein, the "Clarification Letter" means the letter, dated as of September 20, 2008, from Barclays Capital Inc. to Lehman Brothers Holdings Inc., Lehman Brothers Inc., and LB 745 LLC, Attn. Steven Berkenfeld, Esq.

7.      As used herein, "First Amendment to the Asset Purchase Agreement" means the First Amendment to Asset Purchase Agreement dated as of September 19, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

8.      As used herein, "You" refers to the entity or individual upon whom this document request is served, and any agent, servant, employee or representative of that entity or individual.

3

9.     The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, as required by the context to make the requests intelligible and to bring within the scope of the requests any information or documents which might otherwise be considered to be beyond their scope.

10.     Each document requested herein shall be produced as it is kept in the usual and regular course of business.

11.     These requests are continuing, so as to require supplemental responses in the event that the Committee, or any person or entity acting on its behalf, obtains additional information or documents called for by these requests between the time of the original response and the time of trial.

12.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

13.     These requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian.  If any responsive documents are believed to be in the custody of other persons, such as current or former attorneys or accountants for the responding party (or any entity controlled or operated by the responding party) but are not being produced by the responding party, please identify the person(s) in whose custody such potentially responsive documents are believed to be located, and state the reasons why the documents are not being produced in response to these requests.

14.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

15.     If any document called for by these requests is withheld on the ground of privilege or any other ground, identify the specific ground upon which the objection is based and the particular request objected to.  Identify the information withheld or objected to by furnishing sufficient information to describe the document in a subpoena and in all events by furnishing the following information: (a) identify the document, specifying its author, addressee(s), date, subject matter and person(s) to whom copies were furnished; (b) describe the document in a manner sufficient to identify it and its location; and (c) as to each such document, set forth each and every fact which constitutes the basis on which privilege is claimed.

16.     All requested documents must be produced pursuant to the specifications set forth below:

    A.      Production of Electronically Stored Information

        i.      Form of Production.  Please provide all documents as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

        ii.     Image Load File.  Provide an image load file (Opticon file) that contains document boundaries.

iii.    <u>Document Text.</u>  For documents that were originally stored as native electronic files and which do not have redactions, the extracted (not OCRed), full text from the body of each document will be produced in separate .txt files named for the bates number of the associated image, in the same directory as the image.

For documents that were originally stored as native electronic files and which have redactions, the OCR text will be produced from the redacted image(s) associated with each document, in separate .txt files named for the bates number of the associated image, in the same directory as the image.  Any redacted, privileged material should be clearly labeled to show the redactions on the tiff image.

iv.    <u>Special File Types.</u>  For files created by Excel or other spreadsheet programs, PowerPoint or other presentation programs, database files, and any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the file in native format. The produced file should be named with the bates number of the first page of the corresponding tiff production of the document (e.g., "ABC00001.xls").

v.    <u>De-Duplication.</u>  Please produce a single unique copy of a given e-mail message and its attachments or standalone file, with a field of semicolon-delimited references to each custodian/location in which a copy originally appeared.  For e-mail messages, please consolidate duplicates based on an MD5 hash generated from BCC, Body, CC, From, IntMsgID, To, and Attach (semicolon delimited string of first level attachments in the e-mail) properties.

For e-mail attachments or standalone electronic files, please consolidate

duplicates based on an MD5 hash of the entire file.

      vi.   <u>Document Metadata.</u>  Produce extracted metadata for each

document in the form of a .dat file, and include the following fields where

applicable.

| | |
|---|---|
| Bates Range Begin | The bates label of the first page of the document |
| Bates Range End | The bates label of the last page of the document |
| Bates Family Range Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Bates Family Range End (optional) | The bates label of the last page of a family of documents |
| Subject (Email Metadata) | The subject line of an e-mail |
| File Name (Metadata) | The filename of an e-mail attachment or stand-alone e-file |
| Sent Date (Email Metadata) | For email, the sent date/time stamp of the message in the custodian's time zone |
| Send Date (Email Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Created Date (Blended Metadata) | For efiles or attachments, the MS Office creation date/time, or PDF creation date/time, or operating system creation date/time, in the custodian's time zone |
| Created Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Last Modified Date (Blended Metadata) | For efiles or attachments, the MS Office last modified date/time, or PDF last modified date/time, or operating system last modified date/time, in the custodian's time zone |
| Last Modified Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Author (MS Metadata) | The author of a stand-alone efile or attachment |
| From (Email Metadata) | The sender of an email message |
| To (Email Metadata) | The recipients of an email message |
| CC (Email Metadata) | The copyee(s) of an email message |
| BCC (Email Metadata) | The blind copyee(s) of an email message |
| Custodian | The custodian in whose file the document was found |
| Source | Path to e-mail archive or original path to standalone files |

| | |
|---|---|
| Source Folder | Folder within e-mail archive or original path to standalone files |
| MD5 | The calculated MD5 hash value of the document |
| NativeFile | The file path to the location of the native file if produced |
| Confidential Stamp | The confidentiality designation, if any, for the document pursuant to any protective order in the case, as it appears on the image. |

B.   Production of Paper Documents

i.   Form of Production.  Produce all documents originally maintained in paper files as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii.   Image Load File.  Provide an image load file (Opticon file) that contains document boundaries.

iii.   Document Text.  The OCR text will be produced from the image(s) associated with each document, with the text from each document stored in a separate .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document.

iv.   Document Metadata.  Produce data for each document in the form of a .dat file including the following fields where applicable:

| | |
|---|---|
| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Attach_End (Optional) | The bates label of the last page of a family of documents |

| Custodian | The custodian in whose file the document was found |

        v.      <u>Unitization of Documents.</u>  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties should re-unitize improperly unitized documents.

        vi.    <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document) should be preserved.

## REQUESTED DOCUMENTS

1.        All documents sent, received, created, reviewed or revised by You after September 30, 2008, and before March 13, 2009, concerning any assets transferred or liabilities assumed by Barclays under the Asset Purchase Agreement, as originally drafted and executed, or as subsequently amended by the First Amendment to the Asset Purchase Agreement or by the Clarification Letter.  This request includes but is not limited to any analyses, reconciliations or communications concerning the Barclays transaction or the assets or liabilities involved in that transaction, whether the assets or liabilities were actually transferred or not, and whether the assets or liabilities were subject to transfer under the original Asset Purchase Agreement or under a subsequent amendment.  This request includes documents relating to assets that You understand Barclays believes were required to be transferred under the Asset Purchase Agreement, as subsequently amended by the First Amendment to the Asset Purchase Agreement or by the Clarification Letter.

Dated: New York, New York
   October 9, 2009

        BOIES, SCHILLER & FLEXNER LLP

By:

        Jonathan D. Schiller
        Hamish P.M. Hume
        Jack G. Stern
        BOIES, SCHILLER & FLEXNER
        LLP
        575 Lexington Avenue
        New York, NY 10022
        Telephone: (212) 446-2300
        Facsimile: (212) 446-2350

        *Attorneys for Barclays Capital Inc.*

# Exhibit 7

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# UNITED STATES BANKRUPTCY COURT

__Southern__ District of __New York__

In re  Lehman Brothers Inc.,
            Debtor
        Case No. 08-01420 (JMP), SIPA

### SUBPOENA IN A CASE UNDER
### THE BANKRUPTCY CODE

XXXXX. *  (Jointly Administered)

In re Lehman Brothers Holdings, Inc., et. al.,
Xx                    Debtors.
        Case No. 08-13555 (JMP), Chapter 11

XXXXX_____

To:    Deloitte
        2 World Financial Center, New York, NY 10281-1414

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

## See Schedule A

| PLACE | DATE AND TIME |
| --- | --- |
| Boies, Schiller & Flexner, LLP<br>575 Lexington Avenue, 7th Floor<br>New York, NY 10022 | Fourteen (14) calendar days from service of this subpoena |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

    Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
| --- | --- |
| _Christopher M. Green_ , Attorney | 9/22/09 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Christopher M. Green, Boies, Schiller & Flexner, LLP, 333 Main Street, Armonk, NY 10504, (914) 749-8200, Attorneys for Barclays Capital Inc.

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE                                    SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
    (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
    (2) Command to Produce Materials or Permit Inspection.
        (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
        (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
            (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
            (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
    (3) Quashing or Modifying a Subpoena.
        (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
            (i) fails to allow a reasonable time to comply;
            (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
            (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
            (iv) subjects a person to undue burden.
        (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
            (i) disclosing a trade secret or other confidential research, development, or commercial information;
            (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
            (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
        (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
            (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
            (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
    (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
        (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
        (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
        (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
        (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) Claiming Privilege or Protection.
        (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
            (i) expressly make the claim; and
            (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
        (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

### GENERAL DEFINITIONS AND INSTRUCTIONS

1.      The term "document" has the broadest meaning accorded it under the Federal

Rules of Civil Procedure, and includes but is not limited to all written, printed, typed,

reported, recorded, pictorial or graphic matter, however produced or reproduced, now or

at the time of possession, custody or control, including, but not limited to, all court

submissions, drafts, letters, telegrams, telexes, e-mail transmissions, cables,

professionals' time records, telephone records and notations, invoices, ledgers, journals,

and other formal and informal books of record and account, logs, studies, summaries,

minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs,

instructions, financial statements, photographs, videotapes, microfilm, other film or

tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts,

worksheets, contracts, agreements, proposed contracts or agreements (whether or not

actually consummated), computer data, computer printouts, graphics, statistics,

interoffice memos, computer programs, computer software, tape recordings,

transcriptions, drafts of the foregoing items, articles of newspapers, magazines and other

publications, purchase orders, lists, proposals, plans, specifications, addenda, statements,

receipts, confirmations slips, evidence of payments, bills, diaries, calendars, Day

Timers, time records, bills of lading, canceled checks (both sides), audiotapes and copies

or reproductions of the foregoing upon which notations in writing have been made

which do not appear on the originals.

2.      As used herein, the words "and" and "or" shall be construed either conjunctively

or disjunctively as required by the context to make the request intelligible and to bring

1

within the scope of these requests any document that might be deemed outside its scope
by another construction.

3.      As used herein, "Asset Purchase Agreement" means the Asset Purchase
Agreement, dated as of September 16, 2008, among Lehman Brothers Holdings Inc.,
Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

4.      As used herein, "Barclays" means Barclays Capital Inc. and all subsidiaries and
affiliates thereof.

5.      As used herein, the "Clarification Letter" means the letter, dated as of September
20, 2008, from Barclays Capital Inc. to Lehman Brothers Holdings Inc., Lehman
Brothers Inc., and LB 745 LLC, Attn. Steven Berkenfeld, Esq.

6.      As used herein, the "December 2008 JPMC Settlement Approval Motion" means
the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an
Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in
Case No. 08-1420 (JMP).

7.      As used herein, "First Amendment to the Asset Purchase Agreement" means the
First Amendment to Asset Purchase Agreement dated as of September 19, 2008, among
Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays
Capital Inc.

8.      As used herein "LBHI" means Lehman Brothers Holdings Inc. and all
subsidiaries and affiliates thereof, including Lehman Brothers Inc.

9.      As used herein, "You" refers to the entity or individual upon whom this Schedule
A is served, and any agent, servant, employee or representative of that entity or
individual.

10.     The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, as required by the context to make the requests intelligible and to bring within the scope of the requests any information or documents which might otherwise be considered to be beyond their scope.

11.     Each document requested herein shall be produced as it is kept in the usual and regular course of business.

12.     These requests are continuing, so as to require supplemental responses in the event that the responding party or any person or entity acting on its behalf, obtains additional information or documents called for by these requests between the time of the original response and the time of trial.

13.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

14.     These requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian.  If any responsive documents are believed to be in the custody of other persons, such as current or former attorneys or accountants for the responding party (or any entity controlled or operated by the responding party) but are not being produced by the responding party, please identify the person(s) in whose custody such potentially responsive documents are believed to be located, and state the reasons why the documents are not being produced in response to these requests.

15.    If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

16.    If any document called for by these requests is withheld on the ground of privilege or any other ground, identify the specific ground upon which the objection is based and the particular request objected to.  Identify the information withheld or objected to by furnishing sufficient information to describe the document in a subpoena and in all events by furnishing the following information: (a) identify the document, specifying its author, addressee(s), date, subject matter and person(s) to whom copies were furnished; (b) describe the document in a manner sufficient to identify it and its location; and (c) as to each such document, set forth each and every fact which constitutes the basis on which privilege is claimed.

17.    All requested documents must be produced pursuant to the specifications set forth below:

> A.    <u>Production of Electronically Stored Information</u>
>
> i.    <u>Form of Production.</u>  Please provide all documents as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.
>
> ii.    <u>Image Load File.</u>  Provide an image load file (Opticon file) that contains document boundaries.

iii.    <u>Document Text.</u>  For documents that were originally stored as native electronic files and which do not have redactions, the extracted (not OCRed), full text from the body of each document will be produced in separate .txt files named for the bates number of the associated image, in the same directory as the image.

For documents that were originally stored as native electronic files and which have redactions, the OCR text will be produced from the redacted image(s) associated with each document, in separate .txt files named for the bates number of the associated image, in the same directory as the image.  Any redacted, privileged material should be clearly labeled to show the redactions on the tiff image.

iv.    <u>Special File Types.</u>  For files created by Excel or other spreadsheet programs, PowerPoint or other presentation programs, database files, and any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the file in native format. The produced file should be named with the bates number of the first page of the corresponding tiff production of the document (e.g., "ABC00001.xls").

v.    <u>De-Duplication.</u>  Please produce a single unique copy of a given e-mail message and its attachments or standalone file, with a field of semicolon-delimited references to each custodian/location in which a copy originally appeared.  For e-mail messages, please consolidate duplicates based on an MD5 hash generated from BCC, Body, CC, From, IntMsgID, To, and Attach (semicolon delimited string of first level attachments in the e-mail) properties.

For e-mail attachments or standalone electronic files, please consolidate duplicates based on an MD5 hash of the entire file.

     vi.   <u>Document Metadata.</u>  Produce extracted metadata for each document in the form of a .dat file, and include the following fields where applicable.

| | |
|---|---|
| Bates Range Begin | The bates label of the first page of the document |
| Bates Range End | The bates label of the last page of the document |
| Bates Family Range Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Bates Family Range End (optional) | The bates label of the last page of a family of documents |
| Subject (Email Metadata) | The subject line of an e-mail |
| File Name (Metadata) | The filename of an e-mail attachment or stand-alone e-file |
| Sent Date (Email Metadata) | For email, the sent date/time stamp of the message in the custodian's time zone |
| Send Date (Email Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Created Date (Blended Metadata) | For efiles or attachments, the MS Office creation date/time, or PDF creation date/time, or operating system creation date/time, in the custodian's time zone |
| Created Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Last Modified Date (Blended Metadata) | For efiles or attachments, the MS Office last modified date/time, or PDF last modified date/time, or operating system last modified date/time, in the custodian's time zone |
| Last Modified Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Author (MS Metadata) | The author of a stand-alone efile or attachment |
| From (Email Metadata) | The sender of an email message |
| To (Email Metadata) | The recipients of an email message |
| CC (Email Metadata) | The copyee(s) of an email message |
| BCC (Email Metadata) | The blind copyee(s) of an email message |
| Custodian | The custodian in whose file the document was found |
| Source | Path to e-mail archive or original path to standalone files |

| | |
|---|---|
| Source Folder | Folder within e-mail archive or original path to standalone files |
| MD5 | The calculated MD5 hash value of the document |
| NativeFile | The file path to the location of the native file if produced |
| Confidential Stamp | The confidentiality designation, if any, for the document pursuant to any protective order in the case, as it appears on the image. |

B.    Production of Paper Documents

i.    Form of Production.  Produce all documents originally maintained in paper files as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii.    Image Load File.  Provide an image load file (Opticon file) that contains document boundaries.

iii.    Document Text.  The OCR text will be produced from the image(s) associated with each document, with the text from each document stored in a separate .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document.

iv.    Document Metadata.  Produce data for each document in the form of a .dat file including the following fields where applicable:

| | |
|---|---|
| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |

| | |
|---|---|
| Attach_End (Optional) | The bates label of the last page of a family of documents |
| Custodian | The custodian in whose file the document was found |

v.    <u>Unitization of Documents.</u>  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties should re-unitize improperly unitized documents.

vi.    <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document) should be preserved.

## REQUESTED DOCUMENTS

1.      All documents sent, received, created, reviewed or revised between September 12, 2008 and September 30, 2008 by You concerning any valuation or value of any asset or liability acquired or assumed by Barclays or which LBHI considered or proposed that Barclays acquire or assume.

2.      All documents sent, received, created, reviewed or revised between September 12, 2008 and September 30, 2008 by You concerning the assets being transferred and the liabilities being assumed under the Asset Purchase Agreement, as originally drafted and executed, and as subsequently amended by the First Amendment to the Asset Purchase Agreement or by the Clarification Letter.

3.      All documents sent, received, created, reviewed or revised by You relating to the December 2008 JPMC Settlement Approval Motion, including without limitation documents relating to any of the facts presented to the Court in connection with the December 2008 JPMC Settlement Approval Motion.

# Exhibit 8

# UNITED STATES BANKRUPTCY COURT

__Southern__ District of __New York__

In re  Lehman Brothers Inc.,
Debtor
Case No. 08-01420 (JMP), SIPA

In re Lehman Brothers Holdings, Inc., et. al.,
Xx                  Debtors.
Case No. 08-13555 (JMP), Chapter 11

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE**

XXXXX. * (Jointly Administered)

XXXXX

To:   Deloitte
1633 Broadway, New York, NY 10020

☐  YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

## See Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Boies, Schiller & Flexner, LLP<br>575 Lexington Avenue, 7th Floor<br>New York, NY 10022 | Thirty (30) days from service of this subpoena |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| _(signature)_ , Attorney | 10/09/09 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Christopher M. Green, Boies, Schiller & Flexner, LLP, 333 Main Street, Armonk, NY 10504, (914) 749-8200, Attorneys for Barclays Capital Inc.

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

# DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
    (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
    (2) Command to Produce Materials or Permit Inspection.
        (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
        (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
            (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
            (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
    (3) Quashing or Modifying a Subpoena.
        (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
            (i) fails to allow a reasonable time to comply;
            (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
            (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
            (iv) subjects a person to undue burden.
        (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
            (i) disclosing a trade secret or other confidential research, development, or commercial information;
            (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
            (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
        (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
            (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
            (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
    (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
        (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
        (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
        (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
        (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) Claiming Privilege or Protection.
        (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
            (i) expressly make the claim; and
            (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
        (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

### GENERAL DEFINITIONS AND INSTRUCTIONS

1.      The term "document" has the broadest meaning accorded it under the Federal

Rules of Civil Procedure, and includes but is not limited to all written, printed, typed,

reported, recorded, pictorial or graphic matter, however produced or reproduced, now or

at the time of possession, custody or control, including, but not limited to, all court

submissions, drafts, letters, telegrams, telexes, e-mail transmissions, cables,

professionals' time records, telephone records and notations, invoices, ledgers, journals,

and other formal and informal books of record and account, logs, studies, summaries,

minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs,

instructions, financial statements, photographs, videotapes, microfilm, other film or

tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts,

worksheets, contracts, agreements, proposed contracts or agreements (whether or not

actually consummated), computer data, computer printouts, graphics, statistics,

interoffice memos, computer programs, computer software, tape recordings,

transcriptions, drafts of the foregoing items, articles of newspapers, magazines and other

publications, purchase orders, lists, proposals, plans, specifications, addenda, statements,

receipts, confirmations slips, evidence of payments, bills, diaries, calendars, Day

Timers, time records, bills of lading, canceled checks (both sides), audiotapes and copies

or reproductions of the foregoing upon which notations in writing have been made

which do not appear on the originals.

2.      As used herein, the words "and" and "or" shall be construed either conjunctively

or disjunctively as required by the context to make the request intelligible and to bring

within the scope of these requests any document that might be deemed outside its scope by another construction.

3.      As used herein, "Asset Purchase Agreement" means the Asset Purchase Agreement, dated as of September 16, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

4.      As used herein, "Barclays" means Barclays Capital Inc. and all subsidiaries and affiliates thereof.

5.      As used herein, the "Clarification Letter" means the letter, dated as of September 20, 2008, from Barclays Capital Inc. to Lehman Brothers Holdings Inc., Lehman Brothers Inc., and LB 745 LLC, Attn. Steven Berkenfeld, Esq.

6.      As used herein, the "December 2008 JPMC Settlement Approval Motion" means the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

7.      As used herein, "First Amendment to the Asset Purchase Agreement" means the First Amendment to Asset Purchase Agreement dated as of September 19, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

8.      As used herein "LBHI" means Lehman Brothers Holdings Inc. and all subsidiaries and affiliates thereof, including Lehman Brothers Inc.

9.      As used herein, "You" refers to the entity or individual upon whom this Schedule A is served, and any agent, servant, employee or representative of that entity or individual.

10.     The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, as required by the context to make the requests intelligible and to bring within the scope of the requests any information or documents which might otherwise be considered to be beyond their scope.

11.     Each document requested herein shall be produced as it is kept in the usual and regular course of business.

12.     These requests are continuing, so as to require supplemental responses in the event that the responding party or any person or entity acting on its behalf, obtains additional information or documents called for by these requests between the time of the original response and the time of trial.

13.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

14.     These requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian.  If any responsive documents are believed to be in the custody of other persons, such as current or former attorneys or accountants for the responding party (or any entity controlled or operated by the responding party) but are not being produced by the responding party, please identify the person(s) in whose custody such potentially responsive documents are believed to be located, and state the reasons why the documents are not being produced in response to these requests.

15.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

16.     If any document called for by these requests is withheld on the ground of privilege or any other ground, identify the specific ground upon which the objection is based and the particular request objected to.  Identify the information withheld or objected to by furnishing sufficient information to describe the document in a subpoena and in all events by furnishing the following information: (a) identify the document, specifying its author, addressee(s), date, subject matter and person(s) to whom copies were furnished; (b) describe the document in a manner sufficient to identify it and its location; and (c) as to each such document, set forth each and every fact which constitutes the basis on which privilege is claimed.

17.     All requested documents must be produced pursuant to the specifications set forth below:

      A.     <u>Production of Electronically Stored Information</u>

          i.     <u>Form of Production.</u>  Please provide all documents as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

          ii.     <u>Image Load File.</u>  Provide an image load file (Opticon file) that contains document boundaries.

4

    iii.    <u>Document Text.</u>  For documents that were originally stored as native electronic files and which do not have redactions, the extracted (not OCRed), full text from the body of each document will be produced in separate .txt files named for the bates number of the associated image, in the same directory as the image.

    For documents that were originally stored as native electronic files and which have redactions, the OCR text will be produced from the redacted image(s) associated with each document, in separate .txt files named for the bates number of the associated image, in the same directory as the image.  Any redacted, privileged material should be clearly labeled to show the redactions on the tiff image.

    iv.    <u>Special File Types.</u>  For files created by Excel or other spreadsheet programs, PowerPoint or other presentation programs, database files, and any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the file in native format. The produced file should be named with the bates number of the first page of the corresponding tiff production of the document (e.g., "ABC00001.xls").

    v.    <u>De-Duplication.</u>  Please produce a single unique copy of a given e-mail message and its attachments or standalone file, with a field of semicolon-delimited references to each custodian/location in which a copy originally appeared.  For e-mail messages, please consolidate duplicates based on an MD5 hash generated from BCC, Body, CC, From, IntMsgID, To, and Attach (semicolon delimited string of first level attachments in the e-mail) properties.

For e-mail attachments or standalone electronic files, please consolidate

duplicates based on an MD5 hash of the entire file.

      vi.   <u>Document Metadata.</u>  Produce extracted metadata for each

document in the form of a .dat file, and include the following fields where

applicable.

| | |
|---|---|
| Bates Range Begin | The bates label of the first page of the document |
| Bates Range End | The bates label of the last page of the document |
| Bates Family Range Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Bates Family Range End (optional) | The bates label of the last page of a family of documents |
| Subject (Email Metadata) | The subject line of an e-mail |
| File Name (Metadata) | The filename of an e-mail attachment or stand-alone e-file |
| Sent Date (Email Metadata) | For email, the sent date/time stamp of the message in the custodian's time zone |
| Send Date (Email Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Created Date (Blended Metadata) | For efiles or attachments, the MS Office creation date/time, or PDF creation date/time, or operating system creation date/time, in the custodian's time zone |
| Created Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Last Modified Date (Blended Metadata) | For efiles or attachments, the MS Office last modified date/time, or PDF last modified date/time, or operating system last modified date/time, in the custodian's time zone |
| Last Modified Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Author (MS Metadata) | The author of a stand-alone efile or attachment |
| From (Email Metadata) | The sender of an email message |
| To (Email Metadata) | The recipients of an email message |
| CC (Email Metadata) | The copyee(s) of an email message |
| BCC (Email Metadata) | The blind copyee(s) of an email message |
| Custodian | The custodian in whose file the document was found |
| Source | Path to e-mail archive or original path to standalone files |

| | |
|---|---|
| Source Folder | Folder within e-mail archive or original path to standalone files |
| MD5 | The calculated MD5 hash value of the document |
| NativeFile | The file path to the location of the native file if produced |
| Confidential Stamp | The confidentiality designation, if any, for the document pursuant to any protective order in the case, as it appears on the image. |

B. <u>Production of Paper Documents</u>

i. <u>Form of Production.</u>  Produce all documents originally maintained in paper files as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii. <u>Image Load File.</u>  Provide an image load file (Opticon file) that contains document boundaries.

iii. <u>Document Text.</u>  The OCR text will be produced from the image(s) associated with each document, with the text from each document stored in a separate .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document.

iv. <u>Document Metadata.</u>  Produce data for each document in the form of a .dat file including the following fields where applicable:

| | |
|---|---|
| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |

| | |
|---|---|
| Attach_End (Optional) | The bates label of the last page of a family of documents |
| Custodian | The custodian in whose file the document was found |

v.    <u>Unitization of Documents.</u>  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties should re-unitize improperly unitized documents.

vi.    <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document) should be preserved.

<u>REQUESTED DOCUMENTS</u>

1.      All documents sent, received, created, reviewed or revised by You after September 30, 2008, and before March 13, 2009, concerning any assets transferred or liabilities assumed by Barclays under the Asset Purchase Agreement, as originally drafted and executed, or as subsequently amended by the First Amendment to the Asset Purchase Agreement or by the Clarification Letter.  This request includes but is not limited to any analyses, reconciliations or communications concerning the Barclays transaction or the assets or liabilities involved in that transaction, whether the assets or liabilities were actually transferred or not, and whether the assets or liabilities were subject to transfer under the original Asset Purchase Agreement or under a subsequent amendment.  This request includes documents relating to assets that You understand Barclays believes were required to be transferred under the Asset Purchase Agreement, as subsequently amended by the First Amendment to the Asset Purchase Agreement or by the Clarification Letter.

# Exhibit 9

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# UNITED STATES BANKRUPTCY COURT

_____Southern_____    District of    New York

| | |
|---|---|
| In re  Lehman Brothers Inc.,<br>Debtor<br>Case No. 08-01420 (JMP), SIPA | **SUBPOENA IN A CASE UNDER<br>THE BANKRUPTCY CODE**<br>X̶X̶X̶X̶ .  (Jointly Administered) |
| In re Lehman Brothers Holdings, Inc., et. al.,<br>X̶X̶              Debtors.<br>Case No. 08-13555 (JMP), Chapter 11 | X̶X̶X̶X̶ |

To:  Houlihan Lokey
     245 Park Avenue, New York, NY 10167-0001

☐  YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

## See Schedule A

| PLACE<br>Boies, Schiller & Flexner, LLP<br>575 Lexington Avenue, 7th Floor<br>New York, NY 10022 | DATE AND TIME<br>Fourteen (14) calendar days from<br>service of this subpoena |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

    Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE<br><br>_Chris Green_                , Attorney | DATE<br><br>5/22/09 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Christopher M. Green, Boies, Schiller & Flexner, LLP, 333 Main Street, Armonk, NY 10504, (914) 749-8200, Attorneys for Barclays Capital Inc.

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE    SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
    (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
    (2) Command to Produce Materials or Permit Inspection.
        (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
        (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
            (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
            (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
    (3) Quashing or Modifying a Subpoena.
        (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
            (i) fails to allow a reasonable time to comply;
            (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
            (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
            (iv) subjects a person to undue burden.
        (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
            (i) disclosing a trade secret or other confidential research, development, or commercial information;
            (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
            (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
        (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
            (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
            (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
    (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
        (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
        (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
        (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
        (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) Claiming Privilege or Protection.
        (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
            (i) expressly make the claim; and
            (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
        (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## **SCHEDULE A**

### GENERAL DEFINITIONS AND INSTRUCTIONS

1.      The term "document" has the broadest meaning accorded it under the Federal

Rules of Civil Procedure, and includes but is not limited to all written, printed, typed,

reported, recorded, pictorial or graphic matter, however produced or reproduced, now or

at the time of possession, custody or control, including, but not limited to, all court

submissions, drafts, letters, telegrams, telexes, e-mail transmissions, cables,

professionals' time records, telephone records and notations, invoices, ledgers, journals,

and other formal and informal books of record and account, logs, studies, summaries,

minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs,

instructions, financial statements, photographs, videotapes, microfilm, other film or

tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts,

worksheets, contracts, agreements, proposed contracts or agreements (whether or not

actually consummated), computer data, computer printouts, graphics, statistics,

interoffice memos, computer programs, computer software, tape recordings,

transcriptions, drafts of the foregoing items, articles of newspapers, magazines and other

publications, purchase orders, lists, proposals, plans, specifications, addenda, statements,

receipts, confirmations slips, evidence of payments, bills, diaries, calendars, Day

Timers, time records, bills of lading, canceled checks (both sides), audiotapes and copies

or reproductions of the foregoing upon which notations in writing have been made

which do not appear on the originals.

2.      As used herein, the words "and" and "or" shall be construed either conjunctively

or disjunctively as required by the context to make the request intelligible and to bring

within the scope of these requests any document that might be deemed outside its scope by another construction.

3.      As used herein, "Asset Purchase Agreement" means the Asset Purchase Agreement, dated as of September 16, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

4.      As used herein, "Barclays" means Barclays Capital Inc. and all subsidiaries and affiliates thereof.

5.      As used herein, the "Clarification Letter" means the letter, dated as of September 20, 2008, from Barclays Capital Inc. to Lehman Brothers Holdings Inc., Lehman Brothers Inc., and LB 745 LLC, Attn. Steven Berkenfeld, Esq.

6.      As used herein, the "December 2008 JPMC Settlement Approval Motion" means the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

7.      As used herein, "First Amendment to the Asset Purchase Agreement" means the First Amendment to Asset Purchase Agreement dated as of September 19, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

8.      As used herein "LBHI" means Lehman Brothers Holdings Inc. and all subsidiaries and affiliates thereof, including Lehman Brothers Inc.

9.      As used herein, "You" refers to the entity or individual upon whom this Schedule A is served, and any agent, servant, employee or representative of that entity or individual.

10.    The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, as required by the context to make the requests intelligible and to bring within the scope of the requests any information or documents which might otherwise be considered to be beyond their scope.

11.    Each document requested herein shall be produced as it is kept in the usual and regular course of business.

12.    These requests are continuing, so as to require supplemental responses in the event that the responding party or any person or entity acting on its behalf, obtains additional information or documents called for by these requests between the time of the original response and the time of trial.

13.    If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

14.    These requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian.  If any responsive documents are believed to be in the custody of other persons, such as current or former attorneys or accountants for the responding party (or any entity controlled or operated by the responding party) but are not being produced by the responding party, please identify the person(s) in whose custody such potentially responsive documents are believed to be located, and state the reasons why the documents are not being produced in response to these requests.

15.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

16.     If any document called for by these requests is withheld on the ground of privilege or any other ground, identify the specific ground upon which the objection is based and the particular request objected to.  Identify the information withheld or objected to by furnishing sufficient information to describe the document in a subpoena and in all events by furnishing the following information: (a) identify the document, specifying its author, addressee(s), date, subject matter and person(s) to whom copies were furnished; (b) describe the document in a manner sufficient to identify it and its location; and (c) as to each such document, set forth each and every fact which constitutes the basis on which privilege is claimed.

17.     All requested documents must be produced pursuant to the specifications set forth below:

        A.      Production of Electronically Stored Information

                i.      Form of Production.  Please provide all documents as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

                ii.     Image Load File.  Provide an image load file (Opticon file) that contains document boundaries.

iii.    <u>Document Text.</u>  For documents that were originally stored as native electronic files and which do not have redactions, the extracted (not OCRed), full text from the body of each document will be produced in separate .txt files named for the bates number of the associated image, in the same directory as the image.

For documents that were originally stored as native electronic files and which have redactions, the OCR text will be produced from the redacted image(s) associated with each document, in separate .txt files named for the bates number of the associated image, in the same directory as the image.  Any redacted, privileged material should be clearly labeled to show the redactions on the tiff image.

iv.    <u>Special File Types.</u>  For files created by Excel or other spreadsheet programs, PowerPoint or other presentation programs, database files, and any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the file in native format. The produced file should be named with the bates number of the first page of the corresponding tiff production of the document (e.g., "ABC00001.xls").

v.    <u>De-Duplication.</u>  Please produce a single unique copy of a given e-mail message and its attachments or standalone file, with a field of semicolon-delimited references to each custodian/location in which a copy originally appeared.  For e-mail messages, please consolidate duplicates based on an MD5 hash generated from BCC, Body, CC, From, IntMsgID, To, and Attach (semicolon delimited string of first level attachments in the e-mail) properties.

For e-mail attachments or standalone electronic files, please consolidate

duplicates based on an MD5 hash of the entire file.

      vi.    <u>Document Metadata.</u>  Produce extracted metadata for each

document in the form of a .dat file, and include the following fields where

applicable.

| | |
|---|---|
| Bates Range Begin | The bates label of the first page of the document |
| Bates Range End | The bates label of the last page of the document |
| Bates Family Range Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Bates Family Range End (optional) | The bates label of the last page of a family of documents |
| Subject (Email Metadata) | The subject line of an e-mail |
| File Name (Metadata) | The filename of an e-mail attachment or stand-alone e-file |
| Sent Date (Email Metadata) | For email, the sent date/time stamp of the message in the custodian's time zone |
| Send Date (Email Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Created Date (Blended Metadata) | For efiles or attachments, the MS Office creation date/time, or PDF creation date/time, or operating system creation date/time, in the custodian's time zone |
| Created Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Last Modified Date (Blended Metadata) | For efiles or attachments, the MS Office last modified date/time, or PDF last modified date/time, or operating system last modified date/time, in the custodian's time zone |
| Last Modified Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Author (MS Metadata) | The author of a stand-alone efile or attachment |
| From (Email Metadata) | The sender of an email message |
| To (Email Metadata) | The recipients of an email message |
| CC (Email Metadata) | The copyee(s) of an email message |
| BCC (Email Metadata) | The blind copyee(s) of an email message |
| Custodian | The custodian in whose file the document was found |
| Source | Path to e-mail archive or original path to standalone files |

| | |
|---|---|
| Source Folder | Folder within e-mail archive or original path to standalone files |
| MD5 | The calculated MD5 hash value of the document |
| NativeFile | The file path to the location of the native file if produced |
| Confidential Stamp | The confidentiality designation, if any, for the document pursuant to any protective order in the case, as it appears on the image. |

B.    Production of Paper Documents

i.    Form of Production.  Produce all documents originally maintained in paper files as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii.    Image Load File.  Provide an image load file (Opticon file) that contains document boundaries.

iii.    Document Text.  The OCR text will be produced from the image(s) associated with each document, with the text from each document stored in a separate .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document.

iv.    Document Metadata.  Produce data for each document in the form of a .dat file including the following fields where applicable:

| | |
|---|---|
| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |

| | |
|---|---|
| Attach_End (Optional) | The bates label of the last page of a family of documents |
| Custodian | The custodian in whose file the document was found |

v.      <u>Unitization of Documents.</u>  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties should re-unitize improperly unitized documents.

vi.      <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document) should be preserved.

## REQUESTED DOCUMENTS

1.      All documents sent, received, created, reviewed or revised between September 12, 2008 and September 30, 2008 by You concerning any valuation or value of any asset or liability acquired or assumed by Barclays or which LBHI considered or proposed that Barclays acquire or assume.

2.      All documents sent, received, created, reviewed or revised between September 12, 2008 and September 30, 2008 by You concerning the assets being transferred and the liabilities being assumed under the Asset Purchase Agreement, as originally drafted and executed, and as subsequently amended by the First Amendment to the Asset Purchase Agreement or by the Clarification Letter.

3.      All documents sent, received, created, reviewed or revised by You relating to the December 2008 JPMC Settlement Approval Motion, including without limitation documents relating to any of the facts presented to the Court in connection with the December 2008 JPMC Settlement Approval Motion.

# Exhibit 10

# UNITED STATES BANKRUPTCY COURT

__Southern__ __District of__ __New York__

In re   Lehman Brothers Inc.,
|          Debtor
|    Case No. 08-01420 (JMP), SIPA

**SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE**

XXXXX. *  (Jointly Administered)

In re Lehman Brothers Holdings, Inc., et. al.,
Xx          Debtors.
|    Case No. 08-13555 (JMP), Chapter 11

XXXXX

To:   Houlihan Lokey
      245 Park Avenue, New York, NY 10167-0001

☐   YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### See Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Boies, Schiller & Flexner, LLP 575 Lexington Avenue, 7th Floor New York, NY 10022 | Thirty (30) days from service of this subpoena |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

   Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.   Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| *[signature]* , Attorney | 10/0 9/09 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Christopher M. Green, Boies, Schiller & Flexner, LLP, 333 Main Street, Armonk, NY 10504, (914) 749-8200, Attorneys for Barclays Capital Inc.

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
    (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
    (2) Command to Produce Materials or Permit Inspection.
        (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
        (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
            (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
            (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
    (3) Quashing or Modifying a Subpoena.
        (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
            (i) fails to allow a reasonable time to comply;
            (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
            (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
            (iv) subjects a person to undue burden.
        (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
            (i) disclosing a trade secret or other confidential research, development, or commercial information;
            (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
            (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
        (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
            (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
            (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
    (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
        (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
        (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
        (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
        (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) Claiming Privilege or Protection.
        (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
            (i) expressly make the claim; and
            (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
        (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

### GENERAL DEFINITIONS AND INSTRUCTIONS

1.      The term "document" has the broadest meaning accorded it under the Federal

Rules of Civil Procedure, and includes but is not limited to all written, printed, typed,

reported, recorded, pictorial or graphic matter, however produced or reproduced, now or

at the time of possession, custody or control, including, but not limited to, all court

submissions, drafts, letters, telegrams, telexes, e-mail transmissions, cables,

professionals' time records, telephone records and notations, invoices, ledgers, journals,

and other formal and informal books of record and account, logs, studies, summaries,

minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs,

instructions, financial statements, photographs, videotapes, microfilm, other film or

tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts,

worksheets, contracts, agreements, proposed contracts or agreements (whether or not

actually consummated), computer data, computer printouts, graphics, statistics,

interoffice memos, computer programs, computer software, tape recordings,

transcriptions, drafts of the foregoing items, articles of newspapers, magazines and other

publications, purchase orders, lists, proposals, plans, specifications, addenda, statements,

receipts, confirmations slips, evidence of payments, bills, diaries, calendars, Day

Timers, time records, bills of lading, canceled checks (both sides), audiotapes and copies

or reproductions of the foregoing upon which notations in writing have been made

which do not appear on the originals.

2.      As used herein, the words "and" and "or" shall be construed either conjunctively

or disjunctively as required by the context to make the request intelligible and to bring

within the scope of these requests any document that might be deemed outside its scope by another construction.

3.      As used herein, "Asset Purchase Agreement" means the Asset Purchase Agreement, dated as of September 16, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

4.      As used herein, "Barclays" means Barclays Capital Inc. and all subsidiaries and affiliates thereof.

5.      As used herein, the "Clarification Letter" means the letter, dated as of September 20, 2008, from Barclays Capital Inc. to Lehman Brothers Holdings Inc., Lehman Brothers Inc., and LB 745 LLC, Attn. Steven Berkenfeld, Esq.

6.      As used herein, the "December 2008 JPMC Settlement Approval Motion" means the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

7.      As used herein, "First Amendment to the Asset Purchase Agreement" means the First Amendment to Asset Purchase Agreement dated as of September 19, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

8.      As used herein "LBHI" means Lehman Brothers Holdings Inc. and all subsidiaries and affiliates thereof, including Lehman Brothers Inc.

9.      As used herein, "You" refers to the entity or individual upon whom this Schedule A is served, and any agent, servant, employee or representative of that entity or individual.

10.     The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, as required by the context to make the requests intelligible and to bring within the scope of the requests any information or documents which might otherwise be considered to be beyond their scope.

11.     Each document requested herein shall be produced as it is kept in the usual and regular course of business.

12.     These requests are continuing, so as to require supplemental responses in the event that the responding party or any person or entity acting on its behalf, obtains additional information or documents called for by these requests between the time of the original response and the time of trial.

13.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

14.     These requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian.  If any responsive documents are believed to be in the custody of other persons, such as current or former attorneys or accountants for the responding party (or any entity controlled or operated by the responding party) but are not being produced by the responding party, please identify the person(s) in whose custody such potentially responsive documents are believed to be located, and state the reasons why the documents are not being produced in response to these requests.

15.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

16.     If any document called for by these requests is withheld on the ground of privilege or any other ground, identify the specific ground upon which the objection is based and the particular request objected to.  Identify the information withheld or objected to by furnishing sufficient information to describe the document in a subpoena and in all events by furnishing the following information: (a) identify the document, specifying its author, addressee(s), date, subject matter and person(s) to whom copies were furnished; (b) describe the document in a manner sufficient to identify it and its location; and (c) as to each such document, set forth each and every fact which constitutes the basis on which privilege is claimed.

17.     All requested documents must be produced pursuant to the specifications set forth below:

      A.     <u>Production of Electronically Stored Information</u>

          i.     <u>Form of Production.</u>  Please provide all documents as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

          ii.     <u>Image Load File.</u>  Provide an image load file (Opticon file) that contains document boundaries.

iii.  <u>Document Text.</u>  For documents that were originally stored as native electronic files and which do not have redactions, the extracted (not OCRed), full text from the body of each document will be produced in separate .txt files named for the bates number of the associated image, in the same directory as the image.

For documents that were originally stored as native electronic files and which have redactions, the OCR text will be produced from the redacted image(s) associated with each document, in separate .txt files named for the bates number of the associated image, in the same directory as the image.  Any redacted, privileged material should be clearly labeled to show the redactions on the tiff image.

iv.  <u>Special File Types.</u>  For files created by Excel or other spreadsheet programs, PowerPoint or other presentation programs, database files, and any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the file in native format. The produced file should be named with the bates number of the first page of the corresponding tiff production of the document (e.g., "ABC00001.xls").

v.  <u>De-Duplication.</u>  Please produce a single unique copy of a given e-mail message and its attachments or standalone file, with a field of semicolon-delimited references to each custodian/location in which a copy originally appeared.  For e-mail messages, please consolidate duplicates based on an MD5 hash generated from BCC, Body, CC, From, IntMsgID, To, and Attach (semicolon delimited string of first level attachments in the e-mail) properties.

For e-mail attachments or standalone electronic files, please consolidate

duplicates based on an MD5 hash of the entire file.

      vi.   <u>Document Metadata.</u>  Produce extracted metadata for each

document in the form of a .dat file, and include the following fields where

applicable.

| | |
|---|---|
| Bates Range Begin | The bates label of the first page of the document |
| Bates Range End | The bates label of the last page of the document |
| Bates Family Range Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Bates Family Range End (optional) | The bates label of the last page of a family of documents |
| Subject (Email Metadata) | The subject line of an e-mail |
| File Name (Metadata) | The filename of an e-mail attachment or stand-alone e-file |
| Sent Date (Email Metadata) | For email, the sent date/time stamp of the message in the custodian's time zone |
| Send Date (Email Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Created Date (Blended Metadata) | For efiles or attachments, the MS Office creation date/time, or PDF creation date/time, or operating system creation date/time, in the custodian's time zone |
| Created Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Last Modified Date (Blended Metadata) | For efiles or attachments, the MS Office last modified date/time, or PDF last modified date/time, or operating system last modified date/time, in the custodian's time zone |
| Last Modified Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Author (MS Metadata) | The author of a stand-alone efile or attachment |
| From (Email Metadata) | The sender of an email message |
| To (Email Metadata) | The recipients of an email message |
| CC (Email Metadata) | The copyee(s) of an email message |
| BCC (Email Metadata) | The blind copyee(s) of an email message |
| Custodian | The custodian in whose file the document was found |
| Source | Path to e-mail archive or original path to standalone files |

| | |
|---|---|
| Source Folder | Folder within e-mail archive or original path to standalone files |
| MD5 | The calculated MD5 hash value of the document |
| NativeFile | The file path to the location of the native file if produced |
| Confidential Stamp | The confidentiality designation, if any, for the document pursuant to any protective order in the case, as it appears on the image. |

B.      Production of Paper Documents

i.      Form of Production.  Produce all documents originally maintained in paper files as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii.      Image Load File.  Provide an image load file (Opticon file) that contains document boundaries.

iii.      Document Text.  The OCR text will be produced from the image(s) associated with each document, with the text from each document stored in a separate .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document.

iv.      Document Metadata.  Produce data for each document in the form of a .dat file including the following fields where applicable:

| | |
|---|---|
| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |

| | |
|---|---|
| Attach_End (Optional) | The bates label of the last page of a family of documents |
| Custodian | The custodian in whose file the document was found |

v.     <u>Unitization of Documents.</u>  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties should re-unitize improperly unitized documents.

vi.     <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document) should be preserved.

## REQUESTED DOCUMENTS

1.      All documents sent, received, created, reviewed or revised by You after September 30, 2008, and before March 13, 2009, concerning any assets transferred or liabilities assumed by Barclays under the Asset Purchase Agreement, as originally drafted and executed, or as subsequently amended by the First Amendment to the Asset Purchase Agreement or by the Clarification Letter.  This request includes but is not limited to any analyses, reconciliations or communications concerning the Barclays transaction or the assets or liabilities involved in that transaction, whether the assets or liabilities were actually transferred or not, and whether the assets or liabilities were subject to transfer under the original Asset Purchase Agreement or under a subsequent amendment.  This request includes documents relating to assets that You understand Barclays believes were required to be transferred under the Asset Purchase Agreement, as subsequently amended by the First Amendment to the Asset Purchase Agreement or by the Clarification Letter.

# Exhibit 11

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# UNITED STATES BANKRUPTCY COURT

Southern _____ District of **New York**

| | |
|---|---|
| In re  **Lehman Brothers Inc.,** <br> Debtor <br> **Case No. 08-01420 (JMP), SIPA** | **SUBPOENA IN A CASE UNDER** <br> **THE BANKRUPTCY CODE** |

In re **Lehman Brothers Holdings, Inc., et. al.,**
~~Xx~~                    Debtors.
**Case No. 08-13555 (JMP), Chapter 11**

~~XXXX~~  •  **(Jointly Administered)**

~~XXXXX~~ _____

To:    Alvarez & Marsal
       600 Lexington Avenue, 6th Floor, New York, NY 10022

☐  YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### See Schedule A

| PLACE <br> Boies, Schiller & Flexner, LLP <br> 575 Lexington Avenue, 7th Floor <br> New York, NY 10022 | DATE AND TIME <br> Fourteen (14) calendar days from <br> service of this subpoena |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

   Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE <br> _(signature)_  , Attorney | DATE <br> 9/22/09 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Christopher M. Green, Boies, Schiller & Flexner, LLP, 333 Main Street, Armonk, NY 10504, (914) 749-8200, Attorneys for Barclays Capital Inc.

_____

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code)

# PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
    (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
    (2) Command to Produce Materials or Permit Inspection.
        (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
        (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
            (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
            (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
    (3) Quashing or Modifying a Subpoena.
        (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
            (i) fails to allow a reasonable time to comply;
            (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
            (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
            (iv) subjects a person to undue burden.
        (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
            (i) disclosing a trade secret or other confidential research, development, or commercial information;
            (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
            (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
        (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
            (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
            (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
    (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
        (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
        (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
        (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
        (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) Claiming Privilege or Protection.
        (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
            (i) expressly make the claim; and
            (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
        (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## <u>SCHEDULE A</u>

### <u>GENERAL DEFINITIONS AND INSTRUCTIONS</u>

1.      The term "document" has the broadest meaning accorded it under the Federal

Rules of Civil Procedure, and includes but is not limited to all written, printed, typed,

reported, recorded, pictorial or graphic matter, however produced or reproduced, now or

at the time of possession, custody or control, including, but not limited to, all court

submissions, drafts, letters, telegrams, telexes, e-mail transmissions, cables,

professionals' time records, telephone records and notations, invoices, ledgers, journals,

and other formal and informal books of record and account, logs, studies, summaries,

minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs,

instructions, financial statements, photographs, videotapes, microfilm, other film or

tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts,

worksheets, contracts, agreements, proposed contracts or agreements (whether or not

actually consummated), computer data, computer printouts, graphics, statistics,

interoffice memos, computer programs, computer software, tape recordings,

transcriptions, drafts of the foregoing items, articles of newspapers, magazines and other

publications, purchase orders, lists, proposals, plans, specifications, addenda, statements,

receipts, confirmations slips, evidence of payments, bills, diaries, calendars, Day

Timers, time records, bills of lading, canceled checks (both sides), audiotapes and copies

or reproductions of the foregoing upon which notations in writing have been made

which do not appear on the originals.

2.      As used herein, the words "and" and "or" shall be construed either conjunctively

or disjunctively as required by the context to make the request intelligible and to bring

within the scope of these requests any document that might be deemed outside its scope by another construction.

3.      As used herein, "Asset Purchase Agreement" means the Asset Purchase Agreement, dated as of September 16, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

4.      As used herein, "Barclays" means Barclays Capital Inc. and all subsidiaries and affiliates thereof.

5.      As used herein, the "Clarification Letter" means the letter, dated as of September 20, 2008, from Barclays Capital Inc. to Lehman Brothers Holdings Inc., Lehman Brothers Inc., and LB 745 LLC, Attn. Steven Berkenfeld, Esq.

6.      As used herein, the "December 2008 JPMC Settlement Approval Motion" means the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

7.      As used herein, "First Amendment to the Asset Purchase Agreement" means the First Amendment to Asset Purchase Agreement dated as of September 19, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

8.      As used herein "LBHI" means Lehman Brothers Holdings Inc. and all subsidiaries and affiliates thereof, including Lehman Brothers Inc.

9.      As used herein, "You" refers to the entity or individual upon whom this Schedule A is served, and any agent, servant, employee or representative of that entity or individual.

10.     The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, as required by the context to make the requests intelligible and to bring within the scope of the requests any information or documents which might otherwise be considered to be beyond their scope.

11.     Each document requested herein shall be produced as it is kept in the usual and regular course of business.

12.     These requests are continuing, so as to require supplemental responses in the event that the responding party or any person or entity acting on its behalf, obtains additional information or documents called for by these requests between the time of the original response and the time of trial.

13.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

14.     These requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian.  If any responsive documents are believed to be in the custody of other persons, such as current or former attorneys or accountants for the responding party (or any entity controlled or operated by the responding party) but are not being produced by the responding party, please identify the person(s) in whose custody such potentially responsive documents are believed to be located, and state the reasons why the documents are not being produced in response to these requests.

15.    If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

16.    If any document called for by these requests is withheld on the ground of privilege or any other ground, identify the specific ground upon which the objection is based and the particular request objected to.  Identify the information withheld or objected to by furnishing sufficient information to describe the document in a subpoena and in all events by furnishing the following information: (a) identify the document, specifying its author, addressee(s), date, subject matter and person(s) to whom copies were furnished; (b) describe the document in a manner sufficient to identify it and its location; and (c) as to each such document, set forth each and every fact which constitutes the basis on which privilege is claimed.

17.    All requested documents must be produced pursuant to the specifications set forth below:

    A.    Production of Electronically Stored Information

        i.    Form of Production.  Please provide all documents as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

        ii.    Image Load File.  Provide an image load file (Opticon file) that contains document boundaries.

iii.     <u>Document Text.</u>  For documents that were originally stored as native electronic files and which do not have redactions, the extracted (not OCRed), full text from the body of each document will be produced in separate .txt files named for the bates number of the associated image, in the same directory as the image.

For documents that were originally stored as native electronic files and which have redactions, the OCR text will be produced from the redacted image(s) associated with each document, in separate .txt files named for the bates number of the associated image, in the same directory as the image.  Any redacted, privileged material should be clearly labeled to show the redactions on the tiff image.

iv.     <u>Special File Types.</u>  For files created by Excel or other spreadsheet programs, PowerPoint or other presentation programs, database files, and any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the file in native format. The produced file should be named with the bates number of the first page of the corresponding tiff production of the document (e.g., "ABC00001.xls").

v.     <u>De-Duplication.</u>  Please produce a single unique copy of a given e-mail message and its attachments or standalone file, with a field of semicolon-delimited references to each custodian/location in which a copy originally appeared.  For e-mail messages, please consolidate duplicates based on an MD5 hash generated from BCC, Body, CC, From, IntMsgID, To, and Attach (semicolon delimited string of first level attachments in the e-mail) properties.

For e-mail attachments or standalone electronic files, please consolidate
duplicates based on an MD5 hash of the entire file.

      vi.   <u>Document Metadata.</u>  Produce extracted metadata for each
document in the form of a .dat file, and include the following fields where
applicable.

| | |
|---|---|
| Bates Range Begin | The bates label of the first page of the document |
| Bates Range End | The bates label of the last page of the document |
| Bates Family Range Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Bates Family Range End (optional) | The bates label of the last page of a family of documents |
| Subject (Email Metadata) | The subject line of an e-mail |
| File Name (Metadata) | The filename of an e-mail attachment or stand-alone e-file |
| Sent Date (Email Metadata) | For email, the sent date/time stamp of the message in the custodian's time zone |
| Send Date (Email Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Created Date (Blended Metadata) | For efiles or attachments, the MS Office creation date/time, or PDF creation date/time, or operating system creation date/time, in the custodian's time zone |
| Created Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Last Modified Date (Blended Metadata) | For efiles or attachments, the MS Office last modified date/time, or PDF last modified date/time, or operating system last modified date/time, in the custodian's time zone |
| Last Modified Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Author (MS Metadata) | The author of a stand-alone efile or attachment |
| From (Email Metadata) | The sender of an email message |
| To (Email Metadata) | The recipients of an email message |
| CC (Email Metadata) | The copyee(s) of an email message |
| BCC (Email Metadata) | The blind copyee(s) of an email message |
| Custodian | The custodian in whose file the document was found |
| Source | Path to e-mail archive or original path to standalone files |

| | |
|---|---|
| Source Folder | Folder within e-mail archive or original path to standalone files |
| MD5 | The calculated MD5 hash value of the document |
| NativeFile | The file path to the location of the native file if produced |
| Confidential Stamp | The confidentiality designation, if any, for the document pursuant to any protective order in the case, as it appears on the image. |

B.      Production of Paper Documents

i.      <u>Form of Production.</u>  Produce all documents originally maintained in paper files as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii.      <u>Image Load File.</u>  Provide an image load file (Opticon file) that contains document boundaries.

iii.      <u>Document Text.</u>  The OCR text will be produced from the image(s) associated with each document, with the text from each document stored in a separate .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document.

iv.      <u>Document Metadata.</u>  Produce data for each document in the form of a .dat file including the following fields where applicable:

| | |
|---|---|
| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |

| | |
|---|---|
| Attach_End (Optional) | The bates label of the last page of a family of documents |
| Custodian | The custodian in whose file the document was found |

     v.    <u>Unitization of Documents.</u>  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties should re-unitize improperly unitized documents.

     vi.    <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document) should be preserved.

## REQUESTED DOCUMENTS

1.      All documents sent, received, created, reviewed or revised between
September 12, 2008 and September 30, 2008 by You concerning any valuation or value
of any asset or liability acquired or assumed by Barclays or which LBHI considered or
proposed that Barclays acquire or assume.

2.      All documents sent, received, created, reviewed or revised between
September 12, 2008 and September 30, 2008 by You concerning the assets being
transferred and the liabilities being assumed under the Asset Purchase Agreement, as
originally drafted and executed, and as subsequently amended by the First Amendment to
the Asset Purchase Agreement or by the Clarification Letter.

3.      All documents sent, received, created, reviewed or revised by You relating
to the December 2008 JPMC Settlement Approval Motion, including without limitation
documents relating to any of the facts presented to the Court in connection with the
December 2008 JPMC Settlement Approval Motion.

# Exhibit 12

# UNITED STATES BANKRUPTCY COURT

_____Southern_____   District of   New York_____

| | |
|---|---|
| In re  Lehman Brothers Inc., <br> _____Debtor_____ <br> Case No. 08-01420 (JMP), SIPA | **SUBPOENA IN A CASE UNDER** <br> **THE BANKRUPTCY CODE** |
| | XXXXX No. *  (Jointly Administered) _____ |
| In re Lehman Brothers Holdings, Inc., et. al., <br> Xxx _____Debtors._____ <br> Case No. 08-13555 (JMP), Chapter 11 | XXXXXX_____ |

To:   Alvarez & Marsal
      600 Lexington Avenue, 6th Floor, New York, NY 10022

☐  YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

## See Schedule A

| PLACE <br> Boies, Schiller & Flexner, LLP <br> 575 Lexington Avenue, 7th Floor <br> New York, NY 10022 | DATE AND TIME <br> Thirty (30) days from service of this subpoena |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| _[signature]_            , Attorney | 10/9/09 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Christopher M. Green, Boies, Schiller & Flexner, LLP, 333 Main Street, Armonk, NY 10504, (914) 749-8200, Attorneys for Barclays Capital Inc.

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
    (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
    (2) Command to Produce Materials or Permit Inspection.
        (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
        (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
            (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
            (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
    (3) Quashing or Modifying a Subpoena.
        (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
            (i) fails to allow a reasonable time to comply;
            (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
            (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
            (iv) subjects a person to undue burden.
        (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
            (i) disclosing a trade secret or other confidential research, development, or commercial information;
            (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
            (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
        (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
            (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
            (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
    (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
        (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
        (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
        (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
        (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) Claiming Privilege or Protection.
        (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
            (i) expressly make the claim; and
            (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
        (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may  promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

## GENERAL DEFINITIONS AND INSTRUCTIONS

1.      The term "document" has the broadest meaning accorded it under the Federal
Rules of Civil Procedure, and includes but is not limited to all written, printed, typed,
reported, recorded, pictorial or graphic matter, however produced or reproduced, now or
at the time of possession, custody or control, including, but not limited to, all court
submissions, drafts, letters, telegrams, telexes, e-mail transmissions, cables,
professionals' time records, telephone records and notations, invoices, ledgers, journals,
and other formal and informal books of record and account, logs, studies, summaries,
minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs,
instructions, financial statements, photographs, videotapes, microfilm, other film or
tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts,
worksheets, contracts, agreements, proposed contracts or agreements (whether or not
actually consummated), computer data, computer printouts, graphics, statistics,
interoffice memos, computer programs, computer software, tape recordings,
transcriptions, drafts of the foregoing items, articles of newspapers, magazines and other
publications, purchase orders, lists, proposals, plans, specifications, addenda, statements,
receipts, confirmations slips, evidence of payments, bills, diaries, calendars, Day
Timers, time records, bills of lading, canceled checks (both sides), audiotapes and copies
or reproductions of the foregoing upon which notations in writing have been made
which do not appear on the originals.

2.      As used herein, the words "and" and "or" shall be construed either conjunctively
or disjunctively as required by the context to make the request intelligible and to bring

within the scope of these requests any document that might be deemed outside its scope by another construction.

3.      As used herein, "Asset Purchase Agreement" means the Asset Purchase Agreement, dated as of September 16, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

4.      As used herein, "Barclays" means Barclays Capital Inc. and all subsidiaries and affiliates thereof.

5.      As used herein, the "Clarification Letter" means the letter, dated as of September 20, 2008, from Barclays Capital Inc. to Lehman Brothers Holdings Inc., Lehman Brothers Inc., and LB 745 LLC, Attn. Steven Berkenfeld, Esq.

6.      As used herein, the "December 2008 JPMC Settlement Approval Motion" means the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

7.      As used herein, "First Amendment to the Asset Purchase Agreement" means the First Amendment to Asset Purchase Agreement dated as of September 19, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

8.      As used herein "LBHI" means Lehman Brothers Holdings Inc. and all subsidiaries and affiliates thereof, including Lehman Brothers Inc.

9.      As used herein, "You" refers to the entity or individual upon whom this Schedule A is served, and any agent, servant, employee or representative of that entity or individual.

10.     The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, as required by the context to make the requests intelligible and to bring within the scope of the requests any information or documents which might otherwise be considered to be beyond their scope.

11.     Each document requested herein shall be produced as it is kept in the usual and regular course of business.

12.     These requests are continuing, so as to require supplemental responses in the event that the responding party or any person or entity acting on its behalf, obtains additional information or documents called for by these requests between the time of the original response and the time of trial.

13.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

14.     These requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian.  If any responsive documents are believed to be in the custody of other persons, such as current or former attorneys or accountants for the responding party (or any entity controlled or operated by the responding party) but are not being produced by the responding party, please identify the person(s) in whose custody such potentially responsive documents are believed to be located, and state the reasons why the documents are not being produced in response to these requests.

15.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

16.     If any document called for by these requests is withheld on the ground of privilege or any other ground, identify the specific ground upon which the objection is based and the particular request objected to.  Identify the information withheld or objected to by furnishing sufficient information to describe the document in a subpoena and in all events by furnishing the following information: (a) identify the document, specifying its author, addressee(s), date, subject matter and person(s) to whom copies were furnished; (b) describe the document in a manner sufficient to identify it and its location; and (c) as to each such document, set forth each and every fact which constitutes the basis on which privilege is claimed.

17.     All requested documents must be produced pursuant to the specifications set forth below:

      A.     <u>Production of Electronically Stored Information</u>

           i.     <u>Form of Production.</u>  Please provide all documents as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

           ii.     <u>Image Load File.</u>  Provide an image load file (Opticon file) that contains document boundaries.

      iii.    <u>Document Text.</u>  For documents that were originally stored as native electronic files and which do not have redactions, the extracted (not OCRed), full text from the body of each document will be produced in separate .txt files named for the bates number of the associated image, in the same directory as the image.

      For documents that were originally stored as native electronic files and which have redactions, the OCR text will be produced from the redacted image(s) associated with each document, in separate .txt files named for the bates number of the associated image, in the same directory as the image.  Any redacted, privileged material should be clearly labeled to show the redactions on the tiff image.

      iv.    <u>Special File Types.</u>  For files created by Excel or other spreadsheet programs, PowerPoint or other presentation programs, database files, and any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the file in native format. The produced file should be named with the bates number of the first page of the corresponding tiff production of the document (e.g., "ABC00001.xls").

      v.    <u>De-Duplication.</u>  Please produce a single unique copy of a given e-mail message and its attachments or standalone file, with a field of semicolon-delimited references to each custodian/location in which a copy originally appeared.  For e-mail messages, please consolidate duplicates based on an MD5 hash generated from BCC, Body, CC, From, IntMsgID, To, and Attach (semicolon delimited string of first level attachments in the e-mail) properties.

For e-mail attachments or standalone electronic files, please consolidate
duplicates based on an MD5 hash of the entire file.

vi.    <u>Document Metadata.</u>  Produce extracted metadata for each
document in the form of a .dat file, and include the following fields where
applicable.

| | |
|---|---|
| Bates Range Begin | The bates label of the first page of the document |
| Bates Range End | The bates label of the last page of the document |
| Bates Family Range Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Bates Family Range End (optional) | The bates label of the last page of a family of documents |
| Subject (Email Metadata) | The subject line of an e-mail |
| File Name (Metadata) | The filename of an e-mail attachment or stand-alone e-file |
| Sent Date (Email Metadata) | For email, the sent date/time stamp of the message in the custodian's time zone |
| Send Date (Email Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Created Date (Blended Metadata) | For efiles or attachments, the MS Office creation date/time, or PDF creation date/time, or operating system creation date/time, in the custodian's time zone |
| Created Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Last Modified Date (Blended Metadata) | For efiles or attachments, the MS Office last modified date/time, or PDF last modified date/time, or operating system last modified date/time, in the custodian's time zone |
| Last Modified Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Author (MS Metadata) | The author of a stand-alone efile or attachment |
| From (Email Metadata) | The sender of an email message |
| To (Email Metadata) | The recipients of an email message |
| CC (Email Metadata) | The copyee(s) of an email message |
| BCC (Email Metadata) | The blind copyee(s) of an email message |
| Custodian | The custodian in whose file the document was found |
| Source | Path to e-mail archive or original path to standalone files |

6

| | |
|---|---|
| Source Folder | Folder within e-mail archive or original path to standalone files |
| MD5 | The calculated MD5 hash value of the document |
| NativeFile | The file path to the location of the native file if produced |
| Confidential Stamp | The confidentiality designation, if any, for the document pursuant to any protective order in the case, as it appears on the image. |

B.    Production of Paper Documents

i.    Form of Production.  Produce all documents originally maintained in paper files as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii.    Image Load File.  Provide an image load file (Opticon file) that contains document boundaries.

iii.    Document Text.  The OCR text will be produced from the image(s) associated with each document, with the text from each document stored in a separate .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document.

iv.    Document Metadata.  Produce data for each document in the form of a .dat file including the following fields where applicable:

| | |
|---|---|
| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |

7

| | |
|---|---|
| Attach_End (Optional) | The bates label of the last page of a family of documents |
| Custodian | The custodian in whose file the document was found |

v.  <u>Unitization of Documents.</u>  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties should re-unitize improperly unitized documents.

vi.  <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document) should be preserved.

## REQUESTED DOCUMENTS

1.      All documents sent, received, created, reviewed or revised by You after September 30, 2008, and before March 13, 2009, concerning any assets transferred or liabilities assumed by Barclays under the Asset Purchase Agreement, as originally drafted and executed, or as subsequently amended by the First Amendment to the Asset Purchase Agreement or by the Clarification Letter.  This request includes but is not limited to any analyses, reconciliations or communications concerning the Barclays transaction or the assets or liabilities involved in that transaction, whether the assets or liabilities were actually transferred or not, and whether the assets or liabilities were subject to transfer under the original Asset Purchase Agreement or under a subsequent amendment.  This request includes documents relating to assets that You understand Barclays believes were required to be transferred under the Asset Purchase Agreement, as subsequently amended by the First Amendment to the Asset Purchase Agreement or by the Clarification Letter.

# Exhibit 13

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# UNITED STATES BANKRUPTCY COURT

__Southern__ District of __New York__

In re  Lehman Brothers Inc.,
Debtor
Case No. 08-01420 (JMP), SIPA

In re Lehman Brothers Holdings, Inc., et. al.,
Debtors.
Case No. 08-13555 (JMP), Chapter 11

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE**

XXXXX. (Jointly Administered)

XXXXX

To: FTI Consulting, Inc.
3 Times Square, 11th Floor, New York, NY 10036

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

## See Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Boies, Schiller & Flexner, LLP<br>575 Lexington Avenue, 7th Floor<br>New York, NY 10022 | Fourteen (14) days from service of this subpoena |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| _[signature]_ , Attorney | 11/20/09 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Christopher M. Green, Boies, Schiller & Flexner, LLP, 333 Main Street, Armonk, NY 10504, (914) 749-8200, Attorneys for Barclays Capital Inc.

\* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
  (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
  (2) Command to Produce Materials or Permit Inspection.
    (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
  (3) Quashing or Modifying a Subpoena.
    (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
    (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information;
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
      (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
    (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
  (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
    (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
    (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) Claiming Privilege or Protection.
    (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

### GENERAL DEFINITIONS AND INSTRUCTIONS

1.    Pursuant to Rule 7026-1 of the Local Bankruptcy Rules of the Southern

District of New York, this Notice incorporates by reference the Uniform Definitions in

Discovery Requests set forth in Rule 26.3 of the Local Rules of the Southern District of

New York.

2.    "$7 Billion Cash Amount" shall mean the $7 billion in cash that was

understood by Barclays as of the time of the September 22, 2008 Closing to have been

posted to a Barclays account at JPMC because certain collateral had not been transferred

to Barclays as anticipated in the Fed Replacement Transaction.

3.    "15c3-3 Asset" shall mean any assets that LBHI and LBI agreed to

transfer to Barclays from LBI's 15c3-3 account, including those ultimately referenced in

paragraph 8(ii) of the Clarification Letter.

4.    "Acquired Financial Assets" shall mean the Repo Collateral, the Clearance

Box Assets, the 15c3-3 Asset, the Exchange-Traded Derivatives, and the Margin.

5.    "Asset Purchase Agreement" or "APA" means the Asset Purchase

Agreement, dated as of September 16, 2008, among Lehman Brothers Holdings Inc.,

Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

6.    "Barclays" means Barclays Capital Inc. and all subsidiaries and affiliates

thereof.

7.    "BNYM" means Bank of New York Mellon.

8.    The "Clarification Letter" means the letter agreement dated as of

September 20, 2008, addressed from Barclays Capital Inc. to Lehman Brothers Holdings

Inc., Lehman Brothers Inc., and LB 745 LLC, Attn. Steven Berkenfeld, Esq., executed on September 22, 2008.

9.     "Clearance Box Assets" shall mean the assets referenced in paragraph 1(a)(ii)(B) of the Clarification Letter.

10.     "Customer Collateral" shall mean any portion of Margin that constitutes customer property as opposed to LBI property.

11.     The "December 2008 JPMC Settlement Approval Motion" means the Motion under 11 U.S.C. §§ 105 & 365 and Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement, filed on December 5, 2008, Docket No. 387 in Case No. 08-1420 (JMP).

12.     "Exchange Traded Derivatives" means the exchange traded derivatives positions encompassed by section 1(a)(ii)(C) of the Clarification Letter, exclusive of any Margin posted in respect of those positions.

13.     "Fed Replacement Transaction" means the transaction by which Barclays stepped into the shoes of the New York Federal Reserve (the "Fed") in providing Lehman Brothers Inc. funding of $45 billion on September 18, 2008, as described in the Declaration of Shari D. Leventhal in Support of Trustee's Motion for Entry of an Order Approving a Settlement Agreement, which was submitted in support of the December 2008 JPMC Settlement Approval Motion.

14.     "First Amendment to the Asset Purchase Agreement" means the First Amendment to Asset Purchase Agreement dated as of September 19, 2008, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.

2

15.    "Interested Party" shall mean Weil, Gotshal & Manges LLP; Simpson

Thacher & Bartlett LLP; Milbank, Tweed, Hadley & McCloy LLP; the LBI Trustee; the

Official Committee of Unsecured Creditors of LBHI; LBHI; Alvarez & Marsal; Houlihan

Lokey Howard & Zukin Capital, Inc; and Lazard Freres & Co. LLC.

16.    "JPMC" means JP Morgan Chase Bank, N.A.

17.    "JPMC Settlement Assets" shall mean the assets and cash transferred to

Barclays as a result of the settlement agreement entered into by JPMC, the LBI Trustee,

and Barclays as of December 22, 2008.

18.    "LBI" means Lehman Brothers Inc.

19.    "LBI Trustee" means James W. Giddens, Trustee in the Securities Investor

Protection Act Liquidation of Lehman Brothers Inc.

20.    "LBHI" means Lehman Brothers Holdings Inc. and all subsidiaries and

affiliates thereof, including LBI.

21.    "Margin" means any property, whether in the form of securities, letters of

credit, cash, or any other form, posted by or on behalf of LBI, whether as margin,

guaranty or clearing fund deposits, or any other form, to secure obligations in respect of

the Exchange Traded Derivatives.

22.    The "Movants" refer to LBHI, the Official Committee of Unsecured

Creditors of LBHI and the LBI Trustee.

23.    "OCC" means The Options Clearing Corporation, all affiliates and

subsidiaries thereof, and any agent, servant, employee or representative of any of the

foregoing.

24.    "Purchase Agreement" shall be defined as that term is defined in the Sale

3

25.    "Repo Collateral" means the collateral actually transferred to Barclays as part of the Fed Replacement Transaction, which shall be defined for purposes of this Notice to include the $7 Billion Cash Amount.

26.    "Reserve Account" means Special Reserve Bank Account for the Exclusive Benefit of Customers pursuant to 17 C.F.R. § 240.15c3-3(e).

27.    "Rule 60 Motion" refers to each of the Motions filed by the Movants on September 15, 2009, including

(a) the Debtor's Motion for an Order, Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, Modifying the September 20, 2008 Sale Order and granting other relief,

(b) the Motion of Lehman Brothers Holdings Inc., pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, Modifying the SIPA Sale Order and Joinder in Official Committee of Unsecured Creditors' Motions for Relief from SIPA Sale Order,

(c) the Trustee's Motion for Relief Pursuant to the Sale Orders or, alternatively, for Certain Limited Relief Under Rule 60(b),

(d) the Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al., pursuant to 11 U.S.C. § 105(A), Fed. R. Civ. P. 60(B), and Fed. R. Bankr. P. 9024, for Relief from Order under 11 U.S.C. §§ 105(A), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, Dated September 20, 2008 (and Related SIPA Sale Order),  and Joinder in Debtors' and SIPA

4

Trustee's Motions for an Order Under Rule 60(B) to Modify Sale Order, and Joinders to
(a) – (d) above.

28.    "Sale Orders" means the Court's (i) Order Under 11 U.S.C. §§ 105(a),
363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006
Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and
Other Interests and (B) Assumption and Assignment of Executory Contracts and
Unexpired Leases, dated September 20, 2008, and (ii) Order Approving, and
Incorporating by Reference for the Purposes of this Proceeding, an Order Authorizing the
Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings Inc. Chapter
11 Proceeding.

29.    "Sale Transaction" means the transaction in which assets were transferred
to Barclays and liabilities were assumed by Barclays pursuant to the Purchase
Agreement.

30.    "September 22, 2008 Closing" or the "Closing" shall mean the closing of
the Sale Transaction that occurred on the morning of September 22, 2008.

31.    "TAA" means the Transfer and Assumption Agreement entered into as of
September 20, 2008 among LBI, Barclays and OCC.

32.    Each document requested herein shall be produced as it is kept in the usual
and regular course of business.

33.    These requests are continuing, so as to require supplemental responses in
the event that the responding party or any person or entity acting on its behalf, obtains
additional information or documents called for by these requests between the time of the
original response and the time of trial.

5

34.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

35.     These requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian.  If any responsive documents are believed to be in the custody of other persons, such as current or former attorneys or accountants for the responding party (or any entity controlled or operated by the responding party) but are not being produced by the responding party, please identify the person(s) in whose custody such potentially responsive documents are believed to be located, and state the reasons why the documents are not being produced in response to these requests.

36.     If any objection is made to all or part of a document request, produce documents (or parts of documents) responsive to those portions of the request to which no objections is made, and produce documents (or parts of documents) responsive to the request to the extent they are not covered by the objection(s).

37.     If any document called for by these requests is withheld on the ground of privilege or any other ground, identify the specific ground upon which the objection is based and the particular request objected to.  Identify the information withheld or objected to by furnishing sufficient information to describe the document in a subpoena and in all events by furnishing the following information: (a) identify the document, specifying its author, addressee(s), date, subject matter and person(s) to whom copies were furnished; (b) describe the document in a manner sufficient to identify it and its

6

38.    All requested documents must be produced pursuant to the specifications set forth below:

A.    Production of Electronically Stored Information

i.    Form of Production.  Please provide all documents as Group IV single page tiff format files imaged at 300 dpi.  Name each tiff file with a unique name matching the Bates number labeled on the corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

ii.    Image Load File.  Provide an image load file (Opticon file) that contains document boundaries.

iii.    Document Text.  For documents that were originally stored as native electronic files and which do not have redactions, the extracted (not OCRed), full text from the body of each document will be produced in separate .txt files named for the bates number of the associated image, in the same directory as the image.

For documents that were originally stored as native electronic files and which have redactions, the OCR text will be produced from the redacted image(s) associated with each document, in separate .txt files named for the bates number of the associated image, in the same directory as the image.  Any redacted, privileged material should be clearly labeled to show the redactions on the tiff image.

7

iv.    <u>Special File Types.</u> For files created by Excel or other spreadsheet

programs, PowerPoint or other presentation programs, database files, and any

other file types that reasonably require viewing in their native format for a full

understanding of their content and meaning, produce the file in native format.

The produced file should be named with the bates number of the first page of the

corresponding tiff production of the document (e.g., "ABC00001.xls").

v.    <u>De-Duplication.</u> Please produce a single unique copy of a given e-

mail message and its attachments or standalone file, with a field of semicolon-

delimited references to each custodian/location in which a copy originally

appeared.  For e-mail messages, please consolidate duplicates based on an MD5

hash generated from BCC, Body, CC, From, IntMsgID, To, and Attach

(semicolon delimited string of first level attachments in the e-mail) properties.

For e-mail attachments or standalone electronic files, please consolidate

duplicates based on an MD5 hash of the entire file.

vi.    <u>Document Metadata.</u> Produce extracted metadata for each

document in the form of a .dat file, and include the following fields where

applicable.

| | |
|---|---|
| Bates Range Begin | The bates label of the first page of the document |
| Bates Range End | The bates label of the last page of the document |
| Bates Family Range Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Bates Family Range End (optional) | The bates label of the last page of a family of documents |
| Subject (Email Metadata) | The subject line of an e-mail |
| File Name (Metadata) | The filename of an e-mail attachment or stand-alone e-file |
| Sent Date (Email Metadata) | For email, the sent date/time stamp of the message in the custodian's time zone |

| | |
|---|---|
| Send Date (Email Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Created Date (Blended Metadata) | For efiles or attachments, the MS Office creation date/time, or PDF creation date/time, or operating system creation date/time, in the custodian's time zone |
| Created Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Last Modified Date (Blended Metadata) | For efiles or attachments, the MS Office last modified date/time, or PDF last modified date/time, or operating system last modified date/time, in the custodian's time zone |
| Last Modified Date (Blended Metadata) Time | If you are unable to provide date and time in a single field above, provide the time portion separately |
| Author (MS Metadata) | The author of a stand-alone efile or attachment |
| From (Email Metadata) | The sender of an email message |
| To (Email Metadata) | The recipients of an email message |
| CC (Email Metadata) | The copyee(s) of an email message |
| BCC (Email Metadata) | The blind copyee(s) of an email message |
| Custodian | The custodian in whose file the document was found |
| Source | Path to e-mail archive or original path to standalone files |
| Source Folder | Folder within e-mail archive or original path to standalone files |
| MD5 | The calculated MD5 hash value of the document |
| NativeFile | The file path to the location of the native file if produced |
| Confidential Stamp | The confidentiality designation, if any, for the document pursuant to any protective order in the case, as it appears on the image. |

B.    Production of Paper Documents

i.    Form of Production. Produce all documents originally maintained in paper files as Group IV single page tiff format files imaged at 300 dpi. Name each tiff file with a unique name matching the Bates number labeled on the corresponding page. Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

9

ii.    <u>Image Load File.</u>  Provide an image load file (Opticon file) that contains document boundaries.

iii.    <u>Document Text.</u>  The OCR text will be produced from the image(s) associated with each document, with the text from each document stored in a separate .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document.

iv.    <u>Document Metadata.</u>  Produce data for each document in the form of a .dat file including the following fields where applicable:

| | |
|---|---|
| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (e.g., email and attachment) |
| Attach_End (Optional) | The bates label of the last page of a family of documents |
| Custodian | The custodian in whose file the document was found |

v.    <u>Unitization of Documents.</u>  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties should re-unitize improperly unitized documents.

vi.    <u>Parent-Child Relationships.</u>  Parent-child relationships (the association between an attachment and its parent document) should be preserved.

## REQUESTED DOCUMENTS

1.      All documents concerning the Sale Transaction.

# Exhibit 14

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL: (212) 849-7000 FAX: (212) 849-7100

March 25, 2010

VIA ELECTRONIC MAIL

Todd Thomas, Esq.
BOIES SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL  33301-2211

Re:  *Lehman Brothers Holdings Inc., et al.,* Case No. 08-13555
     **(JMP)(Bankr. S.D.N.Y.) (Jointly Administered)**

Dear Mr. Thomas:

This letter responds to Barclays' letter dated March 22, 2010 demanding the production of work-product materials prepared by Houlihan, FTI, and financial advisors for the LBHI and LBI estates. As set forth more fully below, the Committee disputes Barclays' assertion that the privileges and protections afforded materials prepared by Houlihan and FTI have been waived.  The Committee has not put them at issue in this litigation, and the other reasons Barclays proffers do not justify their production.

***First***, Barclays again mischaracterizes the Committee's claim in an attempt to manufacture waiver.  The Committee claims that Barclays failed to disclose the material aspects of the Sale Transaction, resulting in the consummated transaction differing materially from the one represented to, and approved by the Court.  That claim does not rely on, or put at issue materials Houlihan or FTI prepared that are protected from disclosure under, <u>inter</u> <u>alia</u>, the work-product doctrine.  To the contrary, it focuses on Barclays' disclosures (or lack thereof) to the Court.

The Committee does not claim it misunderstood the Sale Transaction.  It argues instead that through a series of mistakes and misrepresentations, the material terms of the Sale Transaction were neither presented to, reviewed by, nor approved by the Court.

Nor does the Committee claim it misunderstood the Clarification Letter. The Clarification Letter is incomplete. It fails to reveal, among other things, Barclays' insistence on a day-one gain, a negotiated, $5 billion discount from the assets' book value, and the attribution of liquidation values to the financial assets. Moreover, the Clarification Letter fails to reveal that the additional assets (e.g., the Clearance Box and 15c3 Assets), were added to the transaction as an 11th hour demand -- not, as the Committee was told, to compensate for a purported decline in the value of the Barclays Repo Collateral. Indeed, the evidence corroborating those assertions stems from, inter alia, the testimony of Barclays' and the Lehman Sellers' employees (e.g., Hughes, Tonucci, Lowitt, Klein, Seery) -- not Houlihan's or FTI's work product.

**Second**, Barclays continues to pursue privileged and protected information for the impermissible purpose of supporting its purported defenses. Courts do not sanction offensive use of the at issue doctrine.[1]

The Committee has demonstrated that mistakes and misrepresentations provide a basis for Rule 60 relief,[2] that the Committee's motion rests on newly discovered evidence,[3] that the Committee was justifiably ignorant of that evidence,[4] and that the Committee requested Rule 60 relief in a timely manner.[5] The Committee points to non-privileged, corroborating testimonial and documentary evidence to support those assertions -- not attorney work product prepared by Houlihan or FTI. Moreover, each of these elements was set forth in the Committee Rule 60 Motion,[6] and not first developed in the Committee Reply. Thus, nothing has changed from the time the Court previously declined Barclays' request to find an at issue waiver.

Barclays asserts the Committee's claims are barred under waiver and estoppel doctrines (and under the mandate rule) because the Committee knew all material terms of the transaction when the Court approved it. To that end, Barclays -- not the Committee -- raises the issue of Committee knowledge. Barclays does so in the context of

---

[1]  See, e.g., Resolution Trust Corp., 200 F.R.D. 183, 191 (W.D.N.Y. 2001) ("It cannot be possible for defendant to justify breaching privilege ... by reason of its own affirmative defense. That would give an adversary who is a skillful pleader the ability to render the privilege a nullity").

[2]  See Committee Reply ¶¶ 186-195.

[3]  See Committee Reply ¶¶ 196-208.

[4]  See Committee Reply ¶¶ 209-212.

[5]  See Committee Reply ¶¶ 221-233.

[6]  See Committee Rule 60 Mot. pp. 38-45.

attempting (albeit unsuccessfully) to show the absence of mistake,
that the evidence was not newly discovered, and that the Committee did
not move in a timely fashion.  Barclays cannot, however, obtain
protected materials in an effort to fortify its defenses to the prima
facie showing made by the Committee on these issues.

        **Third**, any analyses Houlihan prepared in connection with the Sale
Transaction enjoy work product protection.  That doctrine covers
materials that were prepared because of the prospect of litigation;
for this purposes, litigation includes a chapter 11 bankruptcy case.
See, e.g., In re Celotex Corp., 196 B.R. 596, 599-600 (M.D. Fla. 1996)
(work-product privilege protected disclosure of valuation analyses
prepared by the debtor's expert, Alex Brown & Sons, in chapter 11
cases in connection with plan confirmation in a fraudulent transfer
adversary proceeding commenced by the committee:  "[t]hese documents,
their transmittal and ultimate relevance, are found in the general
bankruptcy case.  Production of these documents in the adversary
proceeding cannot be divorced from the document origination in the
general bankruptcy case").[7]

        **Fourth**, Barclays cannot demonstrate substantial need.  The
Committee has afforded Barclays access to two Houlihan witnesses (one
of whom served as a Rule 30(b)(6) witness), one FTI witness, the
Committee Co-Chair and counsel to the Committee (also a Rule 30(b)(6)
witness).  Both the LBHI and LBI estates similarly afforded Barclays
access to documentary and testimonial evidence from their principals,
their attorneys (e.g., Weil, Simpson Thacher, Hughes Hubbard) and
their financial advisors (e.g., Lazard, Alvarez & Marsal, Deloitte).
Barclays has been given every opportunity to challenge the Committee's
assertions concerning knowledge (or lack thereof) of the Sale
Transaction's material terms by taking discovery from the parties
(including its principals and attorneys) that may have provided
information to the Committee's professionals.

---

[7]    See id. at 601 (noting existence of "the ongoing contested matter over
    confirmation in the general bankruptcy case").  See also In re Suprema
    Specialties, Inc., 2007 WL 1964852, at *3 (Bankr. S.D.N.Y. July 2, 2007)
    ("[A] document is privileged if in light of the nature of the document and
    the factual situation of the particular case, the document can be fairly
    said to have been prepared or obtained because of the prospect of
    litigation") (citing United States v. Adlman, 1134 F.3d 1194, 1202 (2d
    Cir. 1998)).

The Committee's Rule 60 Motion did not put at issue any attorney-client communication waiving the protections and privileges attendant to those communications. Nothing has changed with respect to the Committee's Reply. It does not place Houlihan's or FTI's work product at issue. Accordingly, the Committee will not produce all financial analyses as requested by Barclays.

We remain at your convenience to discuss this matter further.

Very truly yours,

/s/ James C. Tecce

James C. Tecce

cc:  Robert W. Gaffey, Esq.
     William J. Hine, Esq.
     William MaGuire, Esq.
     Susheel Kirpalani, Esq.
     Hamish Hume, Esq.
     Jack G. Stern, Esq.

# Exhibit 15

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number: (212) 326-3684
wjhine@jonesday.com

March 25, 2010

<u>VIA EMAIL</u>

Todd Thomas, Esq.
Boies, Schiller & Flexner LLP
401 E. Las Olas Blvd., 12th Floor
Ft. Lauderdale, FL 33301

*In re Lehman Brothers Holdings Inc., et al.*, No. 08-13555 (JMP)

Dear Todd:

        We write with regard to your March 22, 2010 letter concerning work product prepared by Alvarez & Marsal ("A&M") and your allegations that we are obliged to produce such privileged documents as part of discovery in this litigation. For several reasons, we disagree with your contentions.

        As a preliminary matter, this is not a renewal of any motion Barclays has ever made against LBHI or A&M. Barclays made no prior motion to compel the production of LBHI or A&M work product or to assert a waiver against either LBHI or A&M. Since your first mention of this issue as to A&M's documents comes well after the discovery cut-off date (notwithstanding the fact that you deposed key A&M personnel months ago), your request is untimely under the Court's Scheduling Order.

        Second, your analysis of the work product doctrine and waiver issues is fundamentally flawed. The underlying premise of your letter is based on mischaracterizations of LBHI's position and the facts, which we addressed at length in our reply papers and will not repeat here. Moreover, your assertion that the A&M documents withheld on work product grounds were not prepared "in anticipation of litigation" has no basis in fact. Indeed, you point to no entry on the A&M privilege log nor to any record evidence even suggesting as much. In the end, this argument is just speculation.

        In addition, your waiver argument stands on its head the well settled "at issue" waiver doctrine. In its Rule 60 papers, LBHI showed that its motion was filed within a "reasonable time" under the unusual circumstances at issue here. In particular, LBHI showed that A&M personnel brought in to administer the LBHI estate were faced with many difficulties, including lack of access to their former employees and records (all of which had been transferred to Barclays) as well as Barclays' own obstructionist behavior. This lack of access to information

NYI-4264261v1

JONES DAY

Todd Thomas, Esq.
March 25, 2010
Page 2

resulted in delays in the Estate's figuring out, among other things, that the Sale Transaction that actually closed on September 22 differed materially from that presented to the Court. While this may place in issue A&M's and LBHI's access to factual information (and Barclays has had discovery and can make its case on that score), it does not place in issue the contents of its own internal analyses or the mental impressions of its personnel or counsel. Rather, Barclays is seeking to place those in issue by raising as a defense its contention that LBHI and A&M "understood" more about the transaction than the information to which they had access shows. It is Barclays that is seeking to put A&M's "understanding" in issue. And it is well settled that Barclays cannot strategically force a privilege waiver upon an opposing party by purporting unilaterally to place that party's mental impressions or work product in issue.

Finally, you have made no showing under the narrow exception to the work product protections afforded by Rule 26 that could possibly justify piercing the privilege here. *See* Fed. R. Civ. P. 26(b)(3)(A)(i-ii). Other that to assert that Barclays would like to see them, you have made no effort to show either (i) that these materials are otherwise discoverable, (ii) your "substantial need" for the materials in preparing Barclays' case, or (ii) that, without undue hardship, you cannot obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A). Indeed, Barclays already has deposed A&M, Weil Gotshal, Simpson, Lazard and LBHI personnel (to the extent they are not Barclays' employees already and available for interview throughout this case) and reviewed documents produced by such entities (including those for which LBHI waived privilege). The timeliness arguments raised in LBHI's reply papers on which you premise your contentions are hardly new, as they are based directly in the testimony of Messrs. Marsal and Kruse, which you heard back in December 2009. Yet this is the first time (on the eve of trial) that Barclays has raised this professed "need" for these additional documents, without any explanation as to how they are even relevant to its defenses or claims. Nor have you made any showing how preserving this privilege would be "manifestly unjust" to Barclays, let alone a showing that allowing Barclays to rummage through these work product materials (without providing Movants the same access to Barclays' privileged documents) would not be unfair to LBHI and A&M.

In sum, we see no basis for your assertion of work product waiver here.

Sincerely,

William J. Hine

cc:    Counsel to the Creditors' Committee (via email)
        Counsel to the LBI Trustee (via email)

# Exhibit 16



Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

March 26, 2010

BY EMAIL

Todd Thomas, Esq.
Boies, Schiller & Flexner LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301

Re:    *In re Lehman Brothers Holdings Inc., et al.*, Case No. 08-
13555 (JMP) (Bankr. S.D.N.Y.) (Jointly Administered); *In
re Lehman Brothers Inc.*, Case No. 08-1420 (JMP) (Bankr.
S.D.N.Y.)

Dear Todd:

I write in response to your letter of March 22, 2010, which "demands production of any financial analyses of the Sale Transaction conducted by Deloitte between September 15, 2008 and March 13, 2009."  For the reasons discussed below, we reject your contention that the Trustee has waived the work product protection with respect to any such analyses.

The Court has already rejected your "at issue" waiver argument.  As the Court has recognized, the Trustee "does not rely on any legal advice," but "on allegedly misleading and incomplete public representations made to the Court at the sale hearing and on the alleged failure of Barclays and certain Lehman executives to say anything to contradict those representations." (*See* Dec. 16, 2009 Hearing Tr. 117:1-7.)

The Trustee's reply memorandum does nothing to change this result.  Consistent with his opening memorandum, the Trustee's reply memorandum relies on the representations made to the Court at the Sale Hearing and the evidence that was obtained through the Rule 2004 discovery process.  (*See, e.g.,* Trustee's Reply Mem. ¶¶ 4, 9, 176, 177, 202.)  It does not rely on, or even mention, any of Deloitte's financial analyses.

Your citation to paragraph 194 of the Trustee's reply memorandum is misguided. That paragraph notes only that the Trustee is bringing to the "Court's attention evidence that was never disclosed to the Court or to the Trustee during the Sale Hearing, including evidence showing that the value of the assets that Barclays received in the Sale significantly exceeded $47.4 billion."  This statement refers to the evidence, obtained through the Rule 2004 discovery

process, showing that, due to a $5 billion hidden discount, Barclays obtained Repo Collateral which by itself was worth more than $47.4 billion.  Your citations to paragraphs 197 and 202 of the Trustee's reply memorandum are similarly unavailing.

As you know from deposing Deloitte's Rule 30(b)(6) representative in this matter, Deloitte did not prepare any contemporaneous financial analyses of the deal, did not value any of the assets in dispute among the parties, and did not begin its work on an LBI balance sheet until late 2008.  Any financial analysis that Deloitte may have conducted in connection with preparing the balance sheet or thereafter, was done in connection with the SIPA liquidation and/or the dispute among the parties, and is therefore protected by the work product doctrine.

Barclays cannot show "substantial need" for Deloitte's work product for the simple reason that the Trustee is not relying on Deloitte's work product to support his position. Barclays has already had the opportunity to test the Trustee's understanding of the deal, and has heard from the Trustee's representatives that the Trustee did not rely on Deloitte's financial analysis, but on the disclosures to the Court at the Sale Hearing.

In sum, the Trustee sees no basis for your claim of waiver.  Please let me know if you would like to discuss these issues further.

Very truly yours,

*/s/ Seth D. Rothman*

cc.    Robert W. Gaffey, Jones Day
       James C. Tecce, Quinn Emanuel Urquart & Sullivan, LLP

# Exhibit 17

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555(JMP)

Adv. Case No. 08-01420(JMP)(SIPA)

Adv. Case No. 09-01480

- - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS INC., et al.,

                    Debtors.

- - - - - - - - - - - - - - - - - - -x

SECURITIES INVESTOR PROTECTION CORPORATION,

                    Plaintiff-Appellant,

          -against-

LEHMAN BROTHERS INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - -x

PT BANK NEGARA IndONESIA (PERSERO) TBK,

                    Plaintiff,

          -against-

LEHMAN BROTHERS SPECIAL FINANCING, INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - -x

                (continued on next page)

**VERITEXT REPORTING COMPANY**

116

1    "relied on the privileged communication as a claim or defense,

2    was an element of a claim or defense."  546 F.3d at 228.

3    County of Erie examined whether e-mails exchanged between a

4    county attorney's office and sheriff's office concerning strip

5    searches were admissible in a lawsuit challenging their

6    constitutionality.  The defendants in that case invoked an

7    objective, qualified immunity defense in that they believed

8    their conduct had been legal.  County of Erie, 546 F.3d at 229.

9    The Second Circuit held that the defendant's reliance on an

10   objective, rather than subjective legal defense did not

11   constitute at issue waiver.  As stated in that case,

12   "Petitioners do not claim a good faith or state of mind

13   defense.  They maintain only that their actions were lawful or

14   that any rights violated were not clearly established.  In view

15   of the litigation circumstances, any legal advice rendered is

16   irrelevant to any defense so far raised."

17        Moreover, the Second Circuit emphasized that a finding

18   of waiver requires actual reliance on privileged advice,

19   whereas the "mere indication" of privileged advice is

20   "insufficient to place legal advice at issue."  Under the test

21   as enunciated in Erie, then, the 60(b) motions filed by the

22   trustee and the committee did not implicitly waive the

23   attorney-client privilege with respect to their advisor's

24   knowledge and understanding of the sale transaction.  Despite

25   Barclays' arguments to the contrary, the claims asserted by the

1   trustee and the committee in the 60(b) motions do not rely on

2   any legal advice provided by their respective advisors, with

3   regard to the sale transaction.  Instead, these claims rely on

4   allegedly misleading and incomplete public representations made

5   to the Court at the sale hearing and on the alleged failure of

6   Barclays and certain Lehman executives to say anything to

7   contradict those representations.  In other words, the claims

8   asserted by the trustee and the committee in the 60(b) motions

9   constitute what I'll call objective claims, asking the Court to

10  compare in-court disclosures concerning the sale transaction

11  with the provisions of the sale transaction as actually

12  consummated.  Neither the trustee nor the committee asserts

13  claims based on their subjective state of mind at the time of

14  the sale hearing.

15      The Court is also not persuaded by Barclays insistence

16  that the context of the claims of the trustee and the committee

17  and the 60(b) motions means that they necessarily waive the

18  attorney-client privilege.  At bottom, Barclays seems to argue

19  that reliance that purported mistakes and newly discovered

20  evidence means that the claims for relief under Rule 60(b)

21  necessarily implicate the contemporaneous advice provided by

22  professionals for the trustee and the committee at the time of

23  the sale hearing.  Based on the Court's review of these

24  motions, the Court disagrees.  The committee argued at the

25  hearing and in its 60(b) motion that the newly discovered

1    See County of Erie 546 F.3d at 229.

2         Moreover, should it become apparent at a later date

3    that the claims of the trustee or the committee as actually

4    presented, do, in fact, rely on legal advice provided by their

5    respective professionals, then Barclays remains free to assert

6    an at issue waiver at that time and seek additional related

7    discovery.

8         Finally, the fact that LBHI has agreed to produce

9    otherwise privileged documents to Barclays is not relevant to

10   any purported privilege waiver by either the trustee or the

11   committee.  The trustee and the committee are not similarly

12   situated to LBHI with respect to the current dispute.

13        As mentioned by counsel for LBHI on the record at the

14   hearing, LBHI viewed itself as distinct from the trustee and

15   the committee because LBHI made representations to the Court

16   with respect to the sale transaction at the sale hearing and

17   LBHI initiated the Rule 2004 discovery from Barclays.  LBHI

18   also based its 60(b) motion in part on the contention that its

19   attorneys were kept in the dark with respect to changes in the

20   sale transaction.

21        The motion by Barclays is denied without prejudice to

22   bringing a later motion should it become clear at some future

23   date that the committee or trustee is relying on privileged

24   communications to support 60(b) relief.  That's the ruling of

25   the Court.

# Exhibit 18

1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
Case No. 08-13555(JMP)
Case No. 08-01420(JMP)(SIPA)
- - - - - - - - - - - - - - - - - - - - - -x
In the Matter of:
LEHMAN BROTHERS HOLDINGS INC., et al.,
                    Debtors.
- - - - - - - - - - - - - - - - - - - - - -x
In the Matter of:
LEHMAN BROTHERS INC.,
                    Debtor.
- - - - - - - - - - - - - - - - - - - - - -x

                  U.S. Bankruptcy Court
                  One Bowling Green
                  New York, New York

                  April 9, 2010
                  10:03 AM

B E F O R E:
HON. JAMES M. PECK
U.S. BANKRUPTCY JUDGE

1    Freight Systems case referred to by my partner where the
2    transaction, as represented, was materially different from the
3    transaction as consummated where seventy percent of the
4    appraised value was approved, but the consummated transaction
5    involved only fifty-five percent of the appraised value. Here,
6    Your Honor, the facts given --
7        THE COURT: I don't mean to break in, but is there
8    anything in this legal argument that's different from what I've
9    already seen in your papers?
10       MR. TECCE: There --
11       THE COURT: Is there something you want to highlight,
12   because --
13       MR. TECCE: There is, Your Honor. There is --
14       THE COURT: -- it's a --
15       MR. TECCE: -- there is one point that I --
16       THE COURT: -- not to --
17       MR. TECCE: -- think I would --
18       THE COURT: -- not to tell you that it's ponderous,
19   but it really is.
20       MR. TECCE: Fair enough, Your Honor. There is one
21   point that I think I would like to highlight, which is the
22   discussion about committee consent to the material
23   modifications to the transaction that were consummated
24   following the hearing. Barclays relies on the testimony of Mr.
25   Miller who states, quote, that he was told by Mr. Burian in the

98

1    final hours after the Klein conversation that if the
2    transaction is okay with you, then it's okay with us. I just
3    want to highlight for the Court the context in which that
4    statement was made. Mr. Burian told Mr. Miller the obvious,
5    which is that at this hour, I have no choice but to rely on the
6    representations that have been made to you. He even asked Mr.
7    Miller if Mr. Klein's representations were okay with Mr.
8    Miller. But he was very clear. He said that they insisted --
9    the committee would insist on receiving a reconciliation of the
10   transaction, and it then promptly proceeded to pursue that
11   reconciliation with vigor in the days and months following the
12   closing of the transaction. So while Barclays argues that the
13   committee consented to those modifications, it did not consent
14   to those modifications.
15       But the most important point about committee consent,
16   Your Honor, that I want to make is that in the end, it's really
17   not relevant because the committee's consent could not sanctify
18   or approve material modifications to the transaction. The
19   committee is not a judicial body. It did not have the ability
20   to cleanse Barclays of its failures to disclose to the Court
21   the material terms of the transaction and of its failures to
22   obtain Court approval of material modifications to the
23   transaction. The committee consent simply could not excuse
24   Barclays from having to do that, even if it was present, which
25   it was not. In the end, those modifications required Court

99

1    approval. And Barclays may be looking to section 3 and 25 of
2    the sale order which do contemplate that non-material
3    modifications that do not have negative impact on the estates
4    may be approved with committee consent, but those sections
5    aren't relevant because that's not what happened here. Here,
6    material modifications were made to the transaction, and the
7    committee, whether it consented to them or not, was powerless
8    to sanction them and to give them an imprimatur that only the
9    Court could give them.
10       That's really the only other point that I would want
11   to make.
12       THE COURT: Okay.
13       MR. TECCE: Thank you very much.
14       THE COURT: Thank you.
15       MR. MAGUIRE: Your Honor, may I provide you with a
16   binder? Some documents I may refer to.
17       THE COURT: Absolutely. Thank you very much. And
18   just as a housekeeping matter, I don't remember how much time
19   you had reserved. I thought it was forty-five minutes.
20       MR. MAGUIRE: It was one hour, Your Honor.
21       THE COURT: It was one hour?
22       MR. MAGUIRE: Yeah.
23       THE COURT: Okay.
24       MR. MAGUIRE: I'll do my best. Would it be better to
25   take a lunch break now?

100

1        THE COURT: I'm just thinking out loud whether or not
2    it might be better to take a lunch break rather than to have
3    stomachs growling during your argument. And I think the Boies-
4    Schiller time was two and a half hours?
5        MR. BOIES: Two hours and forty-five minutes.
6        THE COURT: Two hours and forty-five minutes. So we
7    can certainly do that in the afternoon. I thought that there
8    was a fifteen-minute reservation by LBHI. So that's three
9    hours. Four hours with your one hour, assuming that these time
10   estimates are close to right. Which means that if we come back
11   at, say, let's give ourselves fifteen minutes of buffer. Let's
12   say we come back from lunch at 1:45 with the hope that we can
13   start before 2, that'll allow us to finish this afternoon at
14   some reasonable hour. So why don't we take a lunch break now.
15   Mr. Boies, do you wish to say something?
16       MR. BOIES: Your Honor, we also have fifteen minutes.
17   I don't know if it makes any difference in your scheduling.
18       THE COURT: It doesn't make any difference to the
19   estimate or to my decision to break for lunch. So we're going
20   to break for lunch, and I'll see you at 1:45.
21       (Recess from 12:37 p.m. until 1:49 p.m.)
22       THE COURT: Be seated, please. You've had lunch and
23   we're ready to go.
24       MR. MAGUIRE: If it please the Court. William Maguire
25   for the SIPA trustee, James Giddens.

101

**VERITEXT REPORTING COMPANY**

212-267-6868                                        516-608-2400

1  sure that customers would be protected.  Barclays claims that
2  there really was no legal prohibition, no applicable
3  prohibition, that applied here.  Under Barclays'
4  interpretation, these words are mere surplusage.
5       Your Honor, the parties used the term "769 million",
6  and that was not coincidental; that was the total amount of
7  government securities in the account.  The parties believed
8  there was a substantial excess at the time; they were wrong,
9  but that's what they believed.  But they also believed that no
10 cash could go to Barclays, because the Court had been told
11 there was no cash being transferred to Barclays.  So the most
12 that could go to Barclays was the government securities, and
13 the government securities, they said, were 769 million; that's
14 how they came up with that number.  So that number is in there.
15      If -- as Barclays maintains, this didn't need to come
16 from the account at all.  Why?  In that case, it might just as
17 easily have been 770 million or 800 million.  The parties used
18 the specific words "as of the date hereof", and those words,
19 again, have significance, because a broker-dealer measures its
20 compliance with the customer protection rule on a weekly basis.
21 And Friday the 19th was a measurement date at Lehman.  And "as
22 of the date hereof" was the next day, Saturday.  So the same
23 calculation applied.  So all of this was keyed to compliance
24 with the rule.
25      Now, if there were an excess it would have to be

106

1  verified and, as a practical matter, the trustee would have to
2  advise the regulators before making a transfer.  And so the
3  parties used the words "as soon as practicable".  If, as
4  Barclays maintains, this was an absolute and unconditional
5  right, then this payment could have been due at closing or, if
6  Barclays wanted to give the estate some grace, in six months or
7  on the first anniversary.  That's not what the parties said.
8  They said "as soon as practicable."
9       And as times goes by, and it can take time to verify a
10 calculation and then make sure that regulators are fully
11 informed, that can take an uncertain amount of time.  That
12 creates another issue when we're talking about government
13 securities, because government securities have maturities.  As
14 time goes by, securities mature.
15      So if enough time went by, Lehman could find itself in
16 a situation where it was unable to actually deliver the exact
17 securities that existed in the account as of the date hereof.
18 And therefore there was a simple fix to make sure the Lehman
19 could substitute similar securities.  And that's where the
20 parties added the words "or securities substantially similar in
21 nature and value".
22      And that's how those words were put into the clause.
23 And we have submitted the testimony of the Weil Gotshal lawyer,
24 the draftsman, Robert Messineo -- and it's in tab 2 of your
25 binder, Your Honor -- describing that that's the purpose of

107

1  those words.  And all of this is entirely consistent with the
2  unequivocal testimony of all of the Lehman witnesses and all of
3  the Weil Gotshal witnesses, that this obligation to pay
4  Barclays was at all times conditional on their being an excess,
5  and at no time ever became unconditional.
6       As against all this, Barclays offers only the most
7  equivocal and ambiguous testimony of two of its legal
8  representatives.  And all that they offer is their recollection
9  of what happened in a hallway conversation in the conference
10 center of Weil Gotshal, in which they acknowledge a whole bunch
11 of things were discussed, and in which they admit there was no
12 discussion of what would happen if there was a deficiency, or
13 of what would happen if there was a shortfall in customer
14 property.
15      Barclays' claim that it had an unconditional right
16 here is also flatly contradicted by what it told its own audit
17 committee the month after this transaction closed.  In
18 reporting to its own audit committee, Barclays management
19 reported that the recovery of this asset was conditional, that
20 it was "subject to SEC approval."  And that, Your Honor, is in
21 an audit committee report in tab 3 of your binder.
22      So we respectfully submit that where the Court looks
23 at the nature of the asset, these proceeds, these securities,
24 in the customer lockup account, when it considers Barclays'
25 knowledge, when one looks at the words that the parties chose

108

1  to use here -- not some simple sentence with an unconditional
2  obligation, but very carefully worded language, and when one
3  sees the disclosure, and frankly the lack of disclosure to
4  Lehman's public customers or to anyone, of an unconditional
5  deal, all of these points confirm that Barclays does not have
6  an unconditional right.  And its right to the 769 was and
7  remains at all times conditional.
8       Your Honor, Barclays and the trustee are also
9  disputing some four billion dollars of Lehman margin assets.
10 Those assets are all cash or cash equivalents, like highly
11 liquid government securities.  Lehman had a total of about six
12 billion dollars that it was -- related to derivatives.  Some
13 two billion dollars of that was customer property.  And we have
14 already transferred that to Barclays in connection with the
15 transfer of customer accounts and the transfer of customer
16 property.  What remains is four billion dollars of cash or cash
17 equivalents that Lehman owned.  That includes about 1.4 billion
18 dollars in cash at the Options Clearing Corporation; another 1
19 billion dollars of highly liquid government securities at the
20 OCC; an additional more than 1 billion dollars deposited at the
21 Chase Bank and other locations; and additional cash and
22 securities at foreign firms around the world.
23      Of course, this transaction was not a purchase of
24 cash, it was an asset purchase agreement.  In such an
25 agreement, a party may, of course, decide to buy cash.  And if

109

# Exhibit 19

Page 1

1

2          UNITED STATES BANKRUPTCY COURT

3           SOUTHERN DISTRICT OF NEW YORK

4    ------------------------x

5    In Re:

6                          Chapter 11

7    LEHMAN BROTHERS          Case No. 08-13555(JMP)

8    HOLDINGS, INC., et al,   (Jointly Administered)

9              Debtors.

10   ------------------------x

11

12            DEPOSITION OF MARLO KARP

13             New York, New York

14              January 20, 2010

15

16   Reported by:

17   MARY F. BOWMAN, RPR, CRR

18   JOB NO. 27306

19

20

21

22

23

24

25

Page 14

KARP

1
2     Q.   And what was the -- why was Deloitte
3   sent a version of the final APA and the
4   clarification letter?
5          MR. ROTHMAN:  Let me just caution you
6      not to reveal any conversations or things
7      that you might have learned from counsel
8      concerning that question.
9     A.   We generally request documents for our
10  engagements for our file so we understand what's
11  going on.  These would be typical documents we
12  would have requested versions of to understand.
13    Q.   Was anyone from Deloitte at any of the
14  bankruptcy court hearings related to the
15  Lehman/Barclays transaction in September of
16  2008?
17    A.   No.
18    Q.   Was Deloitte following those hearings
19  in any way?
20    A.   Following, no.  I believe we received
21  a phone call at that weekend letting us know
22  that the hearing, that the hearing had gone
23  through, the sale was going to go through, but
24  we were asked not to do anything else at that
25  time.

Page 15

KARP

1
2     Q.   Is that a phone call you received
3   personally?
4     A.   No.
5     Q.   Was -- was Deloitte aware that the
6   clarification letter was being finalized over
7   that weekend of the 20th and 21st over at Weil
8   Gotshal?
9     A.   I don't know when we knew about the
10  clarification letter.
11    Q.   Was anyone from Deloitte ever over at
12  Weil or Lehman prior to September 22?
13    A.   No.
14    Q.   So you were, Deloitte was relying on
15  reports from others in terms of what was going
16  on with the negotiation of the deal, the
17  finalization of the deal?
18    A.   Yes.
19    Q.   And what was the -- what work did
20  Deloitte do in that month of September?
21    A.   We attended a meeting on the 22nd at
22  75 -- the 745 building, the building with the
23  trustee, his counsel, Weil Gotshal, a lot of
24  attorneys, a lot of former Lehman personnel
25  there as well, where we started getting some

Page 16

KARP

1
2   information about where we could sit, how we
3   would get documents, how we would get books and
4   records.
5          Basically sat there -- it was an
6   organizational meeting at that point, and that
7   is all we were asked to do for pretty much that
8   first week, was just try to get organized, start
9   getting teams organized, people, because we were
10  asked to not do anything while the customer
11  transfers were going on.
12    Q.   What was the goal of the getting
13  organized?  Getting organized to do what?
14    A.   To proceed with the SIPA liquidation
15  process, so how would we do claims, how would we
16  marshal the assets of the firm, just build on --
17  what teams would work on what with which
18  attorneys from Hughes Hubbard, and that was --
19  and where would we sit, because it would be a
20  large group of people.
21    Q.   When was the first time Deloitte had
22  conversations with someone other than Hughes
23  Hubbard or the trustee concerning the
24  transaction?
25    A.   We received a phone call from SIPC

Page 17

KARP

1
2   back on the 15th or 16th about the potential for
3   it, and John Manley had subsequent conversations
4   with SIPC once or twice during that week as it
5   became clear it might actually go into
6   liquidation, to find out if there were
7   conflicts.
8     Q.   Did Deloitte ever meet with Weil
9   Gotshal to discuss the deal?
10    A.   No.
11    Q.   Do you know if they met with Houlihan?
12    A.   No.
13    Q.   No, you don't know or --
14    A.   No, they did not.
15    Q.   Did it ever become important to
16  Deloitte's work to understand what assets and
17  liabilities had been transferred as part of the
18  Lehman Barclays sale transaction and what
19  hadn't?
20    A.   Not in that context.  It became
21  important to understand what assets were under
22  the trustee's control in order to begin the
23  customer claim process, which is where our focus
24  was.
25    Q.   To understand what assets were still

5  (Pages 14 to 17)

Page 18

KARP

1
2  under the trustee's control, was it important to
3  understand which of LBI's assets had been
4  transferred over to Barclays?
5      A.   It was part of the -- it was part of
6  the understanding, but our first priority was to
7  get a handle on what assets were -- what cash
8  securities and other assets were under the
9  trustee's control or we needed to get under the
10 trustee's control.  That was our primary
11 responsibility.
12     Q.   So you were -- the goal was more in
13 terms of establishing what the trustee still
14 controlled, but one part of achieving that goal
15 was understanding what had been transferred in
16 the purchase agreement and what had been
17 retained, correct?
18         MR. ROTHMAN:  Objection to the form.
19 You can answer the question.
20     A.   That became the next step of the
21 process, but we didn't have access to the books
22 and records to validate a lot of that
23 information, so it became more important for us
24 to make sure that we could get all the assets
25 that were -- that we thought belonged to LBI

Page 19

KARP

1
2  under the trustee's control first, and as we got
3  access we would then proceed to see what was
4  left, what was still owed to customers.
5      Q.   When Deloitte received the
6  clarification letter in early October, did it
7  review the clarification letter?
8      A.   I know I read through parts of it.  I
9  would -- I don't know about the others.
10     Q.   Let me ask you to look at 567 and ask
11 about a few sections that are -- on the first
12 page, see where it says "purchased assets,
13 excluded assets"?
14     A.   Yes.
15     Q.   And then subparagraph 2 there,
16 capital A, it says, "The securities owned by LBI
17 and transferred to purchaser or its affiliates
18 under the Barclays repurchase agreement as
19 defined below, as specified on Schedule A,
20 previously delivered by seller and accepted by
21 purchaser."  Do you see that?
22     A.   Yes.
23     Q.   And if you flip to page 5,
24 paragraph 13, where it's entitled "Barclays
25 Repurchase Agreement," it says, "Effective at

Page 20

KARP

1
2  closing, all securities and other assets held by
3  purchaser under the September 18, 2008
4  repurchase agreement, among purchaser and/or its
5  affiliates and LBI and/or its affiliates and the
6  Bank of New York as collateral agent (the
7  Barclays repurchase agreement), shall be deemed
8  to constitute part of the purchased assets in
9  accordance with paragraph 1A2 above."
10         Do you see that language?
11     A.   Yes.
12     Q.   Was it your understanding that as part
13 of the Barclays sale transaction, Barclays was
14 acquiring all of the collateral associated with
15 what was the Fed repo?
16         MR. ROTHMAN:  Objection to form.
17 I don't know if you laid enough of a
18 foundation here, but she has testified she
19 had nothing to do with the negotiation or
20 the drafting of this agreement, so if all
21 you're asking her -- I guess I am not clear
22 whether you are asking her independent of
23 the agreement or what she understood as she
24 read it in October.  I don't think you're
25 entitled to her interpretation of it in

Page 21

KARP

1
2  October.
3         MR. THOMAS:  The objection I guess is
4  to foundation.
5  I am asking based upon her receiving
6  it and having read it and the plain language
7  of it.  And if she had some different
8  understanding, that's fine.  But this
9  relates to what assets went over and what
10 assets didn't, what assets were under the
11 control of the LBI.  So that's the basis for
12 it.
13         MR. ROTHMAN:  I will give you a little
14 leeway on this, but she is not an expert,
15 and she had no personal involvement with
16 drafting or creating this document.  So it
17 is not really fair to ask her to just
18 interpret for you her view.
19         MR. THOMAS:  We are getting into kind
20 of a long speaking, coaching objection, and
21 I understand the objection is to foundation.
22 I think there is some foundation if you read
23 the plain language of the letter.
24     Q.   So again, the question is, did you
25 understand that as part of the sale transaction,

6 (Pages 18 to 21)

# Exhibit 20

Page 1

1

2          UNITED STATES BANKRUPTCY COURT

3          SOUTHERN DISTRICT OF NEW YORK

4

5   In re:                    )
                              ) Chapter 11
6   LEHMAN BROTHERS           ) Case No. 08-13555(JMP)
                              )
7   HOLDINGS, INC., et al.,   )
                              )
8              Debtors.       )
    --------------------------)

9

10

11

12

13

14

15   HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF

16              JAMES FOGARTY

17           New York, New York

18         Friday, January 15, 2010

19

20

21

22

23   Reported by:

24   KRISTIN KOCH, RPR, RMR, CRR, CLR

25   JOB NO. 27091

1        Fogarty - Highly Confidential
2   discussed the consolidated balance sheet and
3   the likely post Barcap sale BS.
4        Do you see that?
5        A.   I see that.
6        Q.   What do you understand the post
7   Barcap sale BS to refer to?
8        MR. TAMBE:  Objection to the form of
9   the question.
10       You can answer.
11       MR. THOMAS:  Some of these
12   objections he will state an objection just
13   to preserve something about the question
14   and but then you can go ahead and answer
15   unless he instructs you not to.
16       THE WITNESS:  Okay.
17       A.   Post Barcap sale BS presumably means
18   post Barcap -- post sale to Barclays capital
19   balance sheet.
20       Q.   Was that something you guys were
21   trying to work up, Alvarez & Marsal, at this
22   time?
23       A.   I was not spending time on it.
24   David was.
25       Q.   And do you know why Alvarez folks

1        Fogarty - Highly Confidential
2   were trying to work up this post Barcap sale
3   balance sheet?
4        A.   Well, we were trying to understand
5   what assets will be our responsibility, in
6   other words, what assets will be left behind,
7   and start to think about what we need to do to
8   manage that process of optimizing the answer
9   for our creditors.
10       Q.   Let me go ahead and show you a
11   document which has been previously marked as
12   Exhibit 485.
13       (Document review.)
14       Q.   Do you recognize this as an e-mail
15   from you to quite a few people at Alvarez --
16       A.   Yes.
17       Q.   -- dated September 20th, 2008
18   concerning the deal status?
19       A.   Yes.
20       Q.   And which deal is that referring to?
21       A.   Well, let me -- let me read it here.
22       (Document review.)
23       A.   Okay.  I read it.  Sorry.  I missed
24   the question.
25       Q.   Sure.  Is the deal being referred to

1        Fogarty - Highly Confidential
2   here the sale transaction between Lehman and
3   Barclays?
4        A.   Yes.
5        Q.   In the first line you write:  "Bill
6   Gordon is point on the TSA negotiation.  The
7   deal is not 'paper closed' and the TSA has not
8   been agreed to yet."
9        When you are referring to the deal
10   that is not paper closed, are you referring to
11   the Barclays sale transaction?
12       A.   Correct.
13       Q.   And what did you mean by it is not
14   paper closed?
15       A.   Not closed.  In other words, it's a
16   period of time between -- well, it hasn't
17   closed yet.  I can't remember exactly where
18   it's between.
19       Q.   By saying it hasn't paper closed --
20       A.   It's not closed.
21       Q.   Is it your understanding that
22   agreement has been reached, but they haven't
23   finalized the documents and executed them?
24       MR. TAMBE:  Object to the form of
25   the question.

1        Fogarty - Highly Confidential
2        A.   It's just not closed, so, you know,
3   when a deal is not yet closed, it's still --
4   it's still --
5        Q.   Right.  I am asking you, you use the
6   term "hasn't paper closed," which is it fair to
7   draw from that that there is an agreement, but
8   it just -- they haven't finalized the papers?
9        MR. TAMBE:  Object to the form of
10   the question.
11       A.   There was an evolving agreement,
12   because there were -- again, I was not -- my
13   job was not to understand what was going on.  I
14   wasn't part of that negotiating process.  My
15   job was to understand for the estate how we
16   were going to get services for the estate after
17   it closed.  So what I am referring to, the TSA
18   is the Transition Service Agreement where my
19   focus was.
20       Q.   I understand.  But when you refer to
21   paper closed, does that reflect your
22   understanding that by this point in time,
23   Saturday morning, September 20th, essentially
24   agreement had been reached, but it hadn't been
25   reduced to writing and the documents hadn't

# Exhibit 21

Page 1

1

2          UNITED STATES BANKRUPTCY COURT

3          SOUTHERN DISTRICT OF NEW YORK

4    ------------------------x

5    In Re:

6                              Chapter 11

7    LEHMAN BROTHERS          Case No. 08-13555(JMP)

8    HOLDINGS, INC., et al,   (Jointly Administered)

9              Debtors.

10   ------------------------x

11

12          DEPOSITION OF SAUL BURIAN

13             New York, New York

14             December 17, 2009

15

16   Reported by:

17   MARY F. BOWMAN, RPR, CRR

18   JOB NO. 26532

19

20

21

22

23

24

25

Page 78

BURIAN

1    through the end of September.
2    A.   Oh, we did not have detailed
3    conversations about that, during that period of
4    time.  Again, if it happened between 22nd or the
5    6th.  It may have been early October when the
6    Weil Gotshal lawyers finally got some sleep.  I
7    don't remember exactly what it was, but we would
8    have had more general conversations regarding
9    what exactly happened as opposed to, you know,
10   the more detailed conversations of whether this
11   was described in detail or not described in
12   detail.
13   Q.   How soon after the closing on
14   September 22 did you review the final
15   clarification letter that is Exhibit C to
16   Deposition Exhibit 26?
17   A.   I was pretty tired also.  I don't -- I
18   know I got it Monday, Tuesday or Wednesday.  I
19   can't recall exactly when I read it completely.
20   Q.   Do you think you read it the week of
21   September 22?
22   A.   I certainly read portions of it during
23   that week.
24   Q.   When you did that review of the

Page 79

BURIAN

1    clarification letter, were there any provisions
2    of the clarification letter that you thought
3    should be brought to Judge Peck's attention?
4    MS. TAGGART:  I am going to -- this is
5    after the closing?  I am going to object to
6    that answer and instruct not to answer on
7    privilege.
8    If you communicated something about
9    that to somebody, then -- that's outside the
10   committee or your financial advisors, you
11   can answer.
12   A.   It is the same answer in that I read
13   it and had questions.  We were specifically told
14   that our consent was not necessary and
15   therefore, that this clarification letter was
16   not a change.
17   To go and say to the estate that they
18   were wrong or there was a mistake, you know, at
19   that point in time didn't make sense.  It was a
20   question of, great, the transaction closed, tell
21   us what happened and confirm what we were
22   represented.
23   It was more review for the purposes of
24   follow-up, not for -- no one at that point in

Page 80

BURIAN

1    time, at least I did not at that point in time
2    have, you know, an "I got you" mentality, is
3    this consistent or inconsistent.  It was, a lot
4    happened.  A lot of people knew about what
5    happened and I don't.  You know, explain it to
6    me, so that I could determine whether it was,
7    you know, consistent or inconsistent.
8    Q.   Who told you that the clarification
9    letter was not a change?
10   MS. TAGGART:  Objection.  You can
11   answer if there is anybody at -- that's not
12   the Houlihan, the committee or your counsel.
13   A.   That Saturday night and Sunday
14   morning, when we got the clarification letter,
15   you know, we asked about it.  We were told that
16   this was a means of execution in order to avoid
17   a double transfer of the securities.
18   The idea was to change the APA from a
19   purchase of assets to a closeout of a repo in a
20   manner consistent with what Ms. Fife had told
21   the court, and that there were, you know, other
22   provisions obviously in order to clarify the
23   APA, and we specifically asked whether you
24   wanted, needed committee consent to anything and

Page 81

BURIAN

1    were told no.
2    Q.   OK.  You said you were told.  Who was
3    telling you those things?
4    A.   Well, I said a lot of things in that
5    answer.  So the part about the committee
6    consent, the most important conversation was
7    probably with me and Harvey from Weil Gotshal,
8    where we made it very clear as it got later and
9    later Sunday that we were going to be unable to
10   get a quorum of the committee, and there was a
11   limit to how late we could have calls, and
12   therefore, we were reaching the time where if
13   committee consent were needed, it just would not
14   be available.
15   And then later on, before I left for
16   the evening, we confirmed again, saying is there
17   any need for us to be here, do you need us to
18   sign off on anything, and we were told that the
19   transaction was moving forward and the committee
20   was not necessary.
21   Q.   Who told you that and what did they
22   say?
23   A.   Most of the conversations were in the
24   hallways at Weil, so I'm not sitting down in

# Exhibit 22

Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------X

In Re:

                           Chapter 11

LEHMAN BROTHERS            Case No. 08-13555(JMP)

HOLDINGS, INC., et al.,     (Jointly Administered)


                    Debtors.

--------------------------X

VIDEOTAPED DEPOSITION

OF

MICHAEL A. FAZIO

New York, New York

Friday, February 12, 2010


Reported by:

ANNETTE ARLEQUIN, CCR, RPR

JOB NO. 27497

Page 70

M. Fazio

1
2     Q.    So when you testified concerning the
3  line "Negotiated Mark Haircut," was that
4  testimony accurate?
5        MS. TAGGART:  Object to form.
6     A.    I have had discussions with Alvarez
7  and have seen documents that they have produced
8  for the committee which have used those terms,
9  and I have asked various questions of Alvarez
10  throughout this case and my understanding about
11  that $5 million is still the same; with respect
12  to what they know and the market value of the
13  securities that detail the transaction and the
14  transaction value of those securities as of the
15  19th has not been given to them or us as of this
16  date as far as I'm aware.
17     Q.    So you referred to $5 million.
18     You meant $5 billion?
19     A.    $5 billion, yes.
20     Q.    In your testimony concerning this
21  document and the line that reads "Assets
22  transferred under repo stale marks," was that
23  testimony accurate?
24        MS. TAGGART:  Object to form.
25     I think you're going to have to be

Page 71

M. Fazio

1
2  more specific about what testimony you want
3  him to discuss now.
4        MR. STERN:  I don't think so.
5  BY MR. STERN:
6     Q.    Was that testimony accurate?
7     A.    All my testimony --
8        MS. TAGGART:  Object to form.
9     A.    -- is accurate, yes.
10        And with respect to stale marks, they
11  have used that term before, Alvarez & Marsal.
12     Q.    Okay.  Let me show you a document
13  that we've previously marked as Exhibit 466.
14        I'll ask you to please review that
15  and tell me what it is.
16        (Document review.)
17     A.    It's an email from Brad Geer to
18  Crayton Bell and myself.
19     Q.    And what is the attachment to it?
20     A.    Well, there's a lot of redacted
21  things, but the attachment is, it looks like it
22  says "Footnote A, securities transferred under
23  Barclays repo agreement."
24     Q.    And do you see on that document
25  there's handwritten brackets next to certain of

Page 72

M. Fazio

1
2  the figures?
3     A.    Yup.
4     Q.    Do you know whose notation that is?
5     A.    No, I do not.
6     Q.    Aside from that one document that's
7  labeled HLHZ 0035874, do you recall whether
8  anything else was attached to this email?
9     A.    I do not recall.
10     Q.    You recall earlier we referred to an
11  email that Mr. Despins sent to Weil, Gotshal
12  which referred to a review by Houlihan of
13  certain securities.
14        Can you tell me who at Houlihan did
15  that review, which people?
16        MS. TAGGART:  You can answer, but
17     answer with names only.
18     A.    Staff persons; Michael Livanos,
19  Andrew McNamara, Angela Lorenzano and there's
20  probably several others.
21     Q.    Anyone else?
22     A.    There's probably several other staff
23  people that report to those people that would
24  have been working on it.
25     Q.    And were you involved in that review?

Page 73

M. Fazio

1
2     A.    Yes.
3     Q.    And aside from yourself, were there
4  any other senior people involved in that review?
5     A.    I would have shared results with some
6  of my partners.
7     Q.    Who?
8     A.    Brad Geer primarily.
9     Q.    Saul Burian?
10     A.    Saul might have gotten a copy from
11  Brad or somebody.  I don't know.
12     Q.    What was the purpose of that review?
13        MS. TAGGART:  Objection.
14        Objection, and I'm going to instruct
15     not to answer on attorney client and work
16     product privilege.
17  BY MR. STERN:
18     Q.    Is that a review that Houlihan did in
19  anticipation of litigation concerning the sale
20  transaction?
21        MS. TAGGART:  Objection.  Calls for
22     legal conclusion.
23        I'm going to object also not to
24     answer on attorney-client and work product
25     privileges.

Page 74

M. Fazio

1
2     MR. STERN:  So you're instructing him
3  not to answer.
4     MS. TAGGART:  Yes.
5  BY MR. STERN:
6     Q.   Is that a review that Houlihan would
7  have done for the benefit of the committee in
8  any event?
9     MS. TAGGART:  You can answer yes, no
10  or I don't know to that.
11    A.   We would have attempted to review the
12  security evaluation --
13    MS. TAGGART:  No, wait.  Stop.
14    THE WITNESS:  Go ahead.  What's your
15  question?
16    MS. TAGGART:  I want you to just
17  answer the question.
18    Read the question again.
19    (Question was read back as follows:
20    "QUESTION:  Is that a review that
21  Houlihan would have done for the benefit of
22  the committee in any event?")
23    A.   We may have.
24    Q.   Let me show you a document that we've
25  previously marked as Exhibit 464B.

Page 75

M. Fazio

1
2     These are excerpts from a
3  presentation that Alvarez gave on October 8,
4  2008, and my question is do you recall attending
5  a presentation that Alvarez gave to the
6  committee on October 8, 2008?
7     A.   I believe I was there, yes.
8     Q.   And turning to the fourth page of
9  this document, please, it's the page with the
10  Bates number ending 4447.
11    A.   Okay.
12    Q.   It's labeled Roman three "Significant
13  Transactions" at the top.
14    Do you see that?
15    A.   Yes, I do.
16    Q.   Do you recall being present for the
17  part of the presentation in which this slide was
18  reviewed?
19    And you can take a minute to review
20  it.
21    (Document review.)
22    A.   Yes.
23    Q.   And do you recall what was said by
24  the participants concerning information on this
25  slide when it was presented?

Page 76

M. Fazio

1
2     A.   To the best of my recollection,
3  Mr. Fogarty would have been giving a summary of
4  the transaction and detailing the information
5  that they had at the time, and would have gone
6  through these numbers with the committee.
7     Q.   And do you recall saying anything
8  during this part of the presentation?
9     A.   I would have said stuff during this
10  presentation as well as in privileged
11  conversations with counsel and our committee,
12  asking questions about the details and getting
13  details associated with the securities that were
14  actually transferred and their actual marks on
15  the 19th.
16    Q.   Do you recall what you actually said?
17    A.   I don't remember verbatim what I
18  said.
19    Q.   Do you recall generally?
20    A.   Generally I would have asked where
21  they stand on getting the detailed schedule of
22  assets associated with the transaction and the
23  marks on the 19th.
24    Q.   Do you recall commenting at all on
25  the line that states, "Negotiated a $5 billion

Page 77

M. Fazio

1
2  reduction"?
3     A.   We would have talked with Fogarty and
4  the estate about this many times; that these
5  were stale marks and the actual marks as
6  represented to us, the actual marks as
7  represented by Mr. Seery and Mr. Klein, the
8  actual marks had declined significantly between
9  the time of the last run and the Friday the
10  19th.
11    Q.   My question is a bit more specific
12  than that.
13    Going back in time to this meeting,
14  if you recall, did you say anything at this
15  meeting specifically concerning this line which
16  states, "Negotiated a $5 billion reduction"?
17    A.   I would have commented, like I said,
18  on the entire line and the fact that the stale
19  marks and the securities detail that we did not
20  have associated with the transaction or they
21  didn't have associated with coming up with a
22  detail mark-to-market of all the securities
23  transferred and their market values on the 19th.
24    Q.   Do you recall your specific words on
25  that subject at this meeting?

# Exhibit 23

Page 1

1

2          UNITED STATES BANKRUPTCY COURT

3          SOUTHERN DISTRICT OF NEW YORK

4     ------------------------------x

      In Re:                        Chapter 11

5     LEHMAN BROTHERS                Case No. 08-13555 (JMP)

      HOLDINGS, INC., et al.,       (Jointly Administered)

6     ------------------------------)

7

8          * * * HIGHLY CONFIDENTIAL * * *

9          DEPOSITION OF PHILIP E. KRUSE

10             New York, New York

11         Thursday, December 17, 2009

12

13

14

15

16

17

18

19

20    Reported by:

      FRANCIS X. FREDERICK, CSR, RPR, RMR

21    JOB NO. 26533

22

23

24

25

Page 102

1        P. KRUSE - HIGHLY CONFIDENTIAL
2    certainly within their understanding as
3    to values ascribed by others.  Okay.  Go
4    ahead.
5        MR. THOMAS:  I'm not trying to --
6    I know there's nominal marks that exist
7    that he might have read in a paper or
8    something else like that.  I'm asking if
9    Alvarez, prior to -- independent of what
10   is being claimed as work product made
11   any effort to value that collateral, the
12   fed repo collateral.
13   A.   No, we did not.
14   Q.   Okay.  What was Alvarez's
15   understanding as to the value of the fed
16   collateral prior to doing this work product
17   with counsel?
18   A.   Any understanding we had about
19   values ascribed to the collateral would have
20   been gained post closing and in connection
21   with the gathering of data so that we
22   understood the securities that were
23   transferred in connection with the
24   transaction.
25   Q.   And as you sit here today can you

Page 103

1        P. KRUSE - HIGHLY CONFIDENTIAL
2    tell me what that understanding was in terms
3    of the amount of the fed repo collateral?
4    A.   I think it would be more
5    appropriate or perhaps more safe, rather than
6    having me misstate a number, I'm thinking of
7    e-mails that I know some of the A&M people
8    were gathering the data and I think those
9    documents represent what our early
10   understanding was of the ascribed values.
11   Q.   Okay.  After the sale closed, what
12   was the purpose of your trying to get an
13   understanding of the value of the assets that
14   had been transferred?  Yours being Alvarez's.
15   A.   It was really from the perspective
16   of capturing the data that we thought was
17   going to be necessary for us to administer the
18   estate and understanding what was estate
19   assets, what was not estate assets.  I think
20   there was some thought early on that we would
21   try to do a reconciliation of the securities
22   that were transferred, ensure that nothing was
23   transferred that should not have been
24   transferred under the deal.
25        That effort was not really

Page 104

1        P. KRUSE - HIGHLY CONFIDENTIAL
2    feasible based on the information available to
3    us in that first quarter of the administration
4    of the estate.
5        But the context was ensuring we
6    had the data in hand while it was fresh in
7    everybody's mind as to what was transferred in
8    the deal.
9    Q.   Let me show you a document we'll
10   mark as 461A.
11       (Deposition Exhibit 461A, document
12       bearing production numbers AM 004503
13       through AM 004595, marked for
14       identification as of this date.)
15   BY MR. THOMAS:
16   Q.   Is this a document that you've
17   seen before?
18   A.   Yes.  I've seen this.
19   Q.   And when did you see it?
20   A.   When did I see it?
21   Q.   Yes.
22   A.   I would have first seen it pretty
23   much contemporaneous with the date of this,
24   October 8th, or the day or two before.
25   Q.   And can you describe what the

Page 105

1        P. KRUSE - HIGHLY CONFIDENTIAL
2    document is, please.
3    A.   It is a Powerpoint dec assembled
4    by Alvarez & Marsal to report to the Unsecured
5    Creditors Committee on this date of October
6    8th.  It was sort of a guide for communication
7    to the Unsecured Creditors at that point.
8    Q.   And why was Alvarez & Marsal
9    relaying this information to the Creditors
10   Committee?
11   A.   It was in the context of the
12   Creditors Committee is an important
13   constituent that we serve in the
14   administration of the estate and giving them
15   an early download as to our activities and how
16   we're getting ramped up and getting ready to
17   best serve our role as a chief restructuring
18   officer.
19   Q.   If I could ask you to turn to page
20   28, please.
21   A.   (Witness complies.)
22       MR. ROTHMAN:  The Bates number or
23   the page?
24       MR. THOMAS:  That's the page
25   number.  The Bates number is AM 4531.