JONES DAY
David L. Carden
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

-and-

JONES DAY
Simon D. Powell
29th Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: (852) 2526-6895
Facsimile: (852) 2868-5871

Special Counsel to Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------------x

**FOURTH INTERIM APPLICATION OF JONES DAY,**
**SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION,**
**SEEKING ALLOWANCE AND PAYMENT OF INTERIM COMPENSATION AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

| | |
|---|---|
| Name of Applicant: | Jones Day |
| Authorized to Provide Professional Services to: | Lehman Brothers Holdings Inc. and its affiliated debtors |
| Date of Retention Order: | February 25, 2009 (effective *nunc pro tunc* to the Engagement Dates, as defined in the Retention Application (as such term is defined below))[1] |

---

[1] Jones Day's retention was subsequently expanded by various supplemental retention orders entered by the Court.

Name of Applicant:                                              <u>Jones Day</u>

Period for Which Compensation and Reimbursement are            <u>October 1, 2009 to</u>
Sought                                                         <u>January 31, 2010</u>

Amount of Professional Fees Sought as Actual,                  <u>$9,143,140.60</u>
Reasonable, and Necessary:

Amount of Expense Reimbursement Sought as Actual,              <u>$274,531.38</u>
Reasonable, and Necessary:

Total Amount Sought:                                           <u>$9,417,671.98</u>

This is an/a:      <u>X</u> Interim      ___ Final Application.

Total Amount Received for this Application:                    <u>$7,548,884.48</u>
Total Amount Received for All Prior Applications:              <u>$12,904,449.78</u>
Aggregate Amount Paid to Date:                                 <u>$20,453,334.26</u>

**Total Compensation and Expenses**
**Previously Requested and Awarded:**

| Dated | Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|---|
| 04/09/09 | 04/09/09 | 09/18/08 – 01/31/09 | $1,258,056.00 | $10,425.76 | $1,258,056.00 | $10,425.76 |
| 08/14/09 | 08/14/09 | 02/01/09 – 05/31/09 | $4,119,794.00 | $130,667.42 | $3,707,814.60 | $130,667.42 |
| 12/15/09 | 12/15/09 | 06/01/09 – 09/30/09 | $8,787,718.20 | $413,222.52 | $8,613,937.88[2] | $305,416.91 |

---

[2] The "Approved Fees" do not include certain of those fees ("<u>Disputed Fees</u>") in respect of which the Fee Committee (as defined below) has raised certain objections, which objections are disputed by Jones Day. Jones Day and the Fee Committee have agreed to defer presenting the Disputed Fees to this Court for ruling until the hearing on Jones Day's final fee application in theses cases.

## COMPENSATION PERIOD

## OCTOBER 1, 2009 THROUGH JANUARY 31, 2010

| Name | Year | Rate | | Compensation Period Hours | Compensation Period Fees |
|------|------|------|------|------|------|
| | | 2009 | 2010[3] | | |
| **Partners** | | | | | |
| A P LEUNG | 1989 | 700 | N/A | 10.50 | 7,350.00 |
| A S WARTER SISITSKY | 1997 | 600 | 700 | 609.60 | 379,650.00 |
| B B ERENS | 1991 | 725 | N/A | 26.00 | 18,850.00 |
| B C STUECK | 2001 | 850 | 1075 | 8.20 | 8,095.00 |
| B P BARRAGATE | 1996 | 700 | N/A | 14.20 | 9,940.00 |
| C BALL | 1979 | 900 | N/A | 14.10 | 12,690.00 |
| C E BLACK | 1998 | 575 | 650 | 135.40 | 79,767.50 |
| C J AHERN | 1992 | 625 | 675 | 19.20 | 12,170.00 |
| C M KIM | 1989 | 850 | 925 | 438.50 | 382,677.50 |
| C P LIU | 1996 | 425 | 450 | 30.00 | 12,925.00 |
| D C CHIN | 1999 | 625 | N/A | 6.60 | 4,125.00 |
| D G HEIMAN | 1971 | 900 | 900 | 37.50 | 33,750.00 |
| D L CARDEN | 1976 | 900 | 925 | 284.20 | 258,310.00 |
| D LONGSTAFF | 1985 | 750 | N/A | 1.50 | 1,125.00 |
| E J NALBANTIAN | 1983 | 880 | 880 | 223.00 | 196,240.00 |
| E W SEDLAK | 1984 | 640 | 675 | 69.40 | 45,144.00 |
| G M GORDON | 1980 | 800 | N/A | 28.30 | 22,640.00 |
| G S ARDEN | 1986 | 775 | 775 | 44.80 | 34,720.00 |
| J K KANE | 1991 | 700 | N/A | 3.30 | 2,310.00 |
| J S TELPNER | 1984 | 825 | 825 | 220.70 | 182,077.50 |
| J W TAMBE | 1992 | 775 | 775 | 357.00 | 276,675.00 |
| L G LAUKITIS | 1999 | 685 | 725 | 39.80 | 27,491.00 |
| M K SISITSKY | 1971 | 800 | N/A | 37.60 | 30,080.00 |
| P J BENVENUTTI | 1974 | 775 | 800 | 351.90 | 274,290.00 |
| P J HOSER | 1982 | 600 | 675 | 101.10 | 63,375.00 |
| R C MICHELETTO | 1988 | 800 | 800 | 29.90 | 23,920.00 |
| R H ENGMAN | 1997 | 725 | N/A | 12.90 | 9,352.50 |
| R S GROSS | 1986 | 775 | 775 | 23.60 | 18,290.00 |
| R SATO | 1992 | 590 | 600 | 7.70 | 4,579.00 |
| R W GAFFEY | 1982 | 800 | 825 | 611.50 | 492,917.50 |
| S D POWELL | 1989 | 800 | 850 | 192.80 | 157,240.00 |

---

[3] As specifically disclosed and anticipated in Jones Day's Retention Application (as such term is defined below), the hourly rates of Jones Day's professionals and paraprofessionals were adjusted with effect from January 1, 2010 ("2010 Billing Rates") in accordance with Jones Day's established billing practices and procedures. The 2010 Billing Rates reflect the ordinary course annual billing rate adjustments for the calendar year commencing on January 1, 2010.

| Name | Year | Rate | | Compensation Period Hours | Compensation Period Fees |
| --- | --- | --- | --- | --- | --- |
| | | 2009 | 2010[3] | | |
| S J PEARSON | 1991 | 775 | 775 | 30.30 | 23,482.50 |
| S OGULLUK | 1999 | 575 | 650 | 321.90 | 195,622.50 |
| S RICHARDS | 1996 | 880 | N/A | 7.30 | 6,424.00 |
| T P FLOOD | 1998 | 880 | N/A | 0.10 | 88.00 |
| T R GEREMIA | 1999 | 650 | 700 | 18.90 | 12,765.00 |
| T V SCHAFFER | 2001 | 550 | 650 | 466.40 | 260,640.00 |
| VM TAM | 1998 | 650 | 650 | 5.10 | 3,315.00 |
| W E BRYSON | 1984 | 575 | 575 | 18.20 | 10,465.00 |
| W J HINE | 1996 | 675 | 700 | 490.80 | 335,850.00 |
| Y MORI | 1993 | 590 | 600 | 10.30 | 6,115.00 |
| **Partners Total:** | | | | | **3,937,533.50** |
| | | | | | |
| **Counsel** | | | | | |
| P. J. CROSBY IV | 1984 | 565 | 575 | 262.20 | 148,897.00 |
| M S BERGMAN | 1988 | 575 | N/A | 43.10 | 24,782.50 |
| **Counsel Total:** | | | | | **173,679.50** |
| | | | | | |
| **Of Counsel** | | | | | |
| S W FLEMING | 1994 | 550 | 550 | 141.80 | 77,990.00 |
| S C LAM | 1994 | 550 | 550 | 9.30 | 5,115.00 |
| F NG | 1997 | 600 | 600 | 143.30 | 85,980.00 |
| L BLOOMBERG | 1999 | 736 | N/A | 16.70 | 16,115.20 |
| N C HOW | 1999 | 736 | N/A | 13.50 | 9,936.00 |
| A T KHO | 2002 | 736 | 840 | 286.00 | 214,032.00 |
| E SAXTON | 1994 | 800 | N/A | 15.10 | 12,080.00 |
| E H TERRITT | 1998 | 800 | 840 | 24.50 | 19,844.00 |
| R W HAMILTON | 1984 | 700 | N/A | 9.50 | 6,650.00 |
| M J LAUB | 1991 | 625 | N/A | 1.30 | 812.50 |
| **Of Counsel Total:** | | | | | **448,554.70** |
| | | | | | |
| **Associates** | | | | | |
| A BAPNA | 2009 | N/A | 325 | 25.70 | 8,352.50 |
| A CHIU | 2002 | 400 | N/A | 3.70 | 1,480.00 |
| A CUTFIELD | 2008 | 392 | 480 | 117.10 | 46,061.60 |
| A J MARGULIES | 2004 | 475 | N/A | 120.30 | 57,142.50 |
| A P VAN VOORHEES | 2006 | 375 | 400 | 165.00 | 63,705.00 |
| B A CRAWFORD | 2009 | 315 | 350 | 670.90 | 217,857.50 |
| B ROSENBLUM | 2005 | 450 | 550 | 275.80 | 128,860.00 |
| C SEETOO | 2007 | 200 | N/A | 5.80 | 1,160.00 |
| D A HALL | 2003 | 475 | N/A | 52.00 | 24,700.00 |
| D ASHOK | 2000 | 300 | N/A | 1.50 | 450.00 |

| Name | Year | Rate | | Compensation | Compensation |
| | | 2009 | 2010[3] | Period Hours | Period Fees |
|---|---|---|---|---|---|
| D B PRIETO | 2000 | 500 | N/A | 35.70 | 17,850.00 |
| D B SHAFER | 2008 | 275 | N/A | 6.70 | 1,842.50 |
| D E GUZMAN | 2008 | 315 | N/A | 25.10 | 7,906.50 |
| D E SCANLON | 2002 | 525 | N/A | 83.80 | 43,995.00 |
| D J TRAVERS | 2007 | N/A | 400 | 8.60 | 3,440.00 |
| D K JOHNSTON | 2007 | 416 | 540 | 59.50 | 25,136.40 |
| D KAN | 2009 | N/A | 275 | 0.30 | 82.50 |
| D N CHI | 2007 | 350 | 400 | 113.00 | 40,805.00 |
| D R COURT | 2008 | 392 | N/A | 0.50 | 196.00 |
| E G GREENBERG | 2009 | 310 | 325 | 122.60 | 39,111.50 |
| E J MARSHBAUM | 2009 | 225 | 275 | 35.70 | 8,172.50 |
| E P STEPHENS | 2009 | 310 | 325 | 449.60 | 142,157.00 |
| E S ROMANINSKY | 2004 | N/A | 475 | 12.40 | 5,890.00 |
| G E SPENCER | 2008 | 350 | 375 | 197.50 | 71,772.50 |
| G R HOWARD | 2008 | 225 | N/A | 2.00 | 450.00 |
| G Z MASS | 2010 | 310 | 325 | 57.30 | 18,313.50 |
| H E MILLS | 2009 | 225 | N/A | 21.50 | 4,837.50 |
| H HOSONO | 1998 | 490 | 500 | 18.10 | 8,871.00 |
| H M BARNES | 2007 | 350 | 375 | 13.00 | 4,687.50 |
| J H CHASE | 2008 | 275 | N/A | 23.30 | 6,407.50 |
| J K GOLDFARB | 2001 | 525 | 550 | 399.00 | 213,602.50 |
| J L DEL MEDICO | 2007 | 425 | 450 | 477.80 | 206,170.00 |
| J L SEIDMAN | 2009 | 225 | N/A | 13.10 | 2,947.50 |
| J LIN | 2005 | 325 | N/A | 0.90 | 292.50 |
| J M TILLER | 2006 | 375 | N/A | 45.70 | 17,137.50 |
| J P VEVERKA | 2006 | 375 | 400 | 50.90 | 19760 |
| J R FELCE | 2006 | 625 | 650 | 47.50 | 30,120.00 |
| J S MCMAHON | 2008 | 315 | 350 | 523.70 | 169,827.00 |
| J T CHAN | 1996 | 525 | 525 | 196.10 | 102,952.50 |
| K A BLOOM | 2008 | 315 | 350 | 314.6 | 102,158.00 |
| K A CARRERO | 2004 | 475 | 500 | 625.00 | 302,537.50 |
| K J CHOI | 2008 | N/A | 350 | 25.00 | 8,750.00 |
| K MAMEDOVA | 2008 | 315 | 350 | 350.20 | 113,197.00 |
| K PHANG | 2006 | 325 | N/A | 3.10 | 1,007.50 |
| L B DUBECK | 2007 | N/A | 375 | 29.20 | 10,950.00 |
| L M POLLACK | 2006 | 375 | 400 | 44.60 | 16,925.00 |
| M F SKAPOF | 2000 | 550 | 550 | 108.30 | 59,565.00 |
| M FLUHR | 2006 | 375 | N/A | 10.00 | 3,750.00 |
| M H CORREA | 2001 | 525 | N/A | 23.00 | 12,075.00 |
| M ITO | 2006 | 300 | 325 | 44.90 | 13,495.00 |
| M NISHI | 1997 | 530 | 530 | 16.10 | 8,533.00 |

| Name | Year | Rate | | Compensation Period Hours | Compensation Period Fees |
|---|---|---|---|---|---|
| | | 2009 | 2010[3] | | |
| M ONOGI | 2001 | N/A | 425 | 9.10 | 3,867.50 |
| M PARLIKAD | 2008 | 315 | 350 | 145.00 | 47,239.50 |
| M REZNIK | 2009 | N/A | 350 | 39.00 | 13,650.00 |
| M VAN HIEN | 2007 | 325 | N/A | 10.80 | 3,510.00 |
| M W LO | 1997 | 350 | 375 | 45.20 | 15,962.50 |
| N C KAMPHAUS | 2008 | 315 | N/A | 17.20 | 5,418.00 |
| N DAVIES | 2007 | 416 | 540 | 199.70 | 86,001.60 |
| N YADAVA | 2008 | 315 | 350 | 207.60 | 68,057.50 |
| O W THOMAS | 2009 | 225 | 275 | 9.00 | 2,035.00 |
| P B GREEN | 2008 | 315 | 350 | 481.80 | 156,625.00 |
| P T BRABANT | 2004 | 325 | 375 | 250.60 | 85,695.00 |
| P WILKINSON | 2007 | 430 | 430 | 291.40 | 125,302.00 |
| R E KREBS JR | 2002 | 500 | N/A | 35.20 | 17,600.00 |
| R J JUD | 2003 | 425 | N/A | 20.40 | 8,670.00 |
| R KUMAR | 2007 | 175 | N/A | 15.00 | 2,625.00 |
| R MUTTREJA | 2005 | 315 | 350 | 107.30 | 35,696.50 |
| R S BARR | 2004 | 525 | 625 | 4.20 | 2,405.00 |
| R VRBASKI | 2005 | 408 | N/A | 0.60 | 244.80 |
| S A GRIFFIN | 2000 | 600 | 675 | 49.00 | 29,422.50 |
| S A TURK | 2008 | 315 | 350 | 732.80 | 239,739.50 |
| S E LIEBER | 2003 | 475 | 500 | 451.30 | 218,315.00 |
| S Y LAM | 1998 | 500 | 500 | 5.50 | 2,750.00 |
| S YAMABE | 2009 | N/A | 270 | 1.00 | 270.00 |
| T A WILSON | 2003 | 400 | N/A | 31.40 | 12,560.00 |
| T FUNO | 2008 | 270 | 285 | 73.00 | 20,067.00 |
| T HOFFMAN | 2003 | 475 | 525 | 143.10 | 69,562.50 |
| T J  MCBRIDE | 2007 | 350 | 375 | 189.70 | 68,577.50 |
| T J MCKAY | 2006 | 400 | N/A | 11.20 | 4,474.40 |
| V FERGUSON | 2004 | 640 | 680 | 30.90 | 20,328.00 |
| Y TAKATAMA | 2007 | 280 | N/A | 4.50 | 1,260.00 |
| **Associates Total** | | | | | **3,785,377.30** |
| | | | | | |
| **Senior Staff Attorneys** | | | | | |
| J LEE | 1985 | 550 | 550 | 22.50 | 12,375.00 |
| **Senior Staff Attorneys Total** | | | | | **12,375.00** |
| | | | | | |
| **Staff Attorneys** | | | | | |
| C CHIEN | 2009 | 170 | 200 | 14.90 | 2,899.00 |
| L C FISCHER | 1996 | 225 | N/A | 32.80 | 7,380.00 |
| A YANG | | 170 | N/A | 47.50 | 8,075.00 |

| Name | Year | Rate | | Compensation | Compensation |
|------|------|------|------|--------------|--------------|
| | | 2009 | 2010[3] | Period Hours | Period Fees |
| **Staff Attorneys Total** | | | | | **18,354.00** |
| | | | | | |
| **Paraprofessionals** | | | | | |
| A B PETRONE | N/A | 250 | N/A | 2.00 | 500.00 |
| A C FARRINGTON | N/A | 275 | N/A | 0.60 | 165.00 |
| A D SAMUELSON | N/A | 250 | 250 | 152.20 | 38,050.00 |
| A J LIPSCOMB | N/A | 80 | N/A | 2.60 | 208.00 |
| A J RAY | N/A | 250 | 250 | 5.50 | 1,375.00 |
| A J SALEMMO | N/A | 175 | N/A | 1.30 | 227.50 |
| A KAYE | N/A | 110 | 110 | 35.50 | 3,905.00 |
| A H HOLMES | N/A | 175 | N/A | 142.30 | 24,902.50 |
| A VANDE-KERCHOVE | N/A | 170 | 170 | 28.60 | 4,862.00 |
| B R HULET | N/A | 310 | 325 | 32.90 | 10,595.00 |
| C CHAN | N/A | 250 | N/A | 4.50 | 1,125.00 |
| C CHUNG | N/A | 250 | 250 | 13.00 | 3,250.00 |
| C HOHL | N/A | 224 | 224 | 50.40 | 11,289.60 |
| C T RATHBONE | N/A | N/A | 240 | 1.00 | 240.00 |
| D G MARKS | N/A | 310 | N/A | 39.70 | 12,307.00 |
| D H YI | N/A | 250 | 250 | 26.80 | 6,700.00 |
| D M CHERENCE | N/A | 250 | N/A | 1.50 | 375.00 |
| D R CULHANE | N/A | N/A | 325 | 11.20 | 3,640.00 |
| E D MASUHR | N/A | 250 | 250 | 281.10 | 70,275.00 |
| E G SHELSTON | N/A | 110 | N/A | 1.00 | 110.00 |
| E HO | N/A | 250 | 250 | 95.90 | 23,975.00 |
| F NG | N/A | 250 | 250 | 30.40 | 7,600.00 |
| H F HAWTHORNE | N/A | N/A | 110 | 3.00 | 330.00 |
| I M LAI | N/A | 250 | N/A | 0.40 | 100.00 |
| J B WITHERALL | N/A | N/A | 350 | 0.40 | 140.00 |
| J CHU | N/A | 320 | 330 | 9.70 | 3,147.00 |
| J E TREANOR | N/A | 275 | 275 | 116.00 | 31,900.00 |
| J KIM | N/A | 250 | 275 | 369.30 | 94,425.00 |
| J L SCHWARTZ | N/A | 310 | N/A | 52.80 | 16,368.00 |
| K HAHM | N/A | N/A | 150 | 103.50 | 15,525.00 |
| K P ENGLERT | N/A | N/A | 175 | 10.00 | 1,750.00 |
| L BURNS | N/A | 275 | 275 | 40.00 | 11,000.00 |
| L M BUONOME | N/A | 310 | 325 | 135.30 | 43,216.50 |
| M B STONE | N/A | 275 | 275 | 91.40 | 25,135.00 |
| M E HEMANN | N/A | 200 | N/A | 5.00 | 1,000.00 |
| M J DAILEY | N/A | 310 | 325 | 492.10 | 155,957.50 |
| M KATZ | N/A | N/A | 175 | 14.60 | 2,555.00 |

| Name | Year | Rate | | Compensation Period Hours | Compensation Period Fees |
| --- | --- | --- | --- | --- | --- |
| | | **2009** | **2010**[3] | | |
| M S CHOW | N/A | 310 | 325 | 18.40 | 5,866.00 |
| N AHUJA | N/A | N/A | 325 | 36.30 | 11,797.50 |
| N J CABRERA | N/A | 275 | N/A | 4.70 | 1,292.50 |
| N M CRAVER | N/A | 175 | N/A | 3.10 | 542.50 |
| R KIMURA | N/A | 230 | 230 | 13.00 | 2,990.00 |
| R LOK | N/A | 170 | 180 | 8.80 | 1,569.00 |
| S BRYAN | N/A | 275 | 275 | 106.30 | 29,232.50 |
| S L LAM | N/A | 225 | N/A | 3.00 | 675.00 |
| S S WONG | N/A | 250 | 275 | 53.00 | 14400 |
| S T JOHNSON | N/A | 250 | N/A | 2.50 | 625.00 |
| X S STROHBEHN | N/A | 310 | 325 | 195.10 | 63,121.00 |
| Y ISHIHARA | N/A | 210 | 210 | 33.00 | 6,930.00 |
| **Paraprofessionals Total** | | | | | **767,266.60** |
| **Grand Total** | | | | | **9,143,140.60** |

JONES DAY
David L. Carden
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

-and-

JONES DAY
Simon D. Powell
29th Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: (852) 2526-6895
Facsimile: (852) 2868-5871

Special Counsel to Debtors In Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
In re                                                      :        Chapter 11 Case No.
                                                           :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,              :        **08-13555 (JMP)**
                                                           :
                           **Debtors.**                    :        **(Jointly Administered)**
                                                           :
-------------------------------------------------------------------x

**FOURTH INTERIM APPLICATION OF JONES DAY,**
**SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION,**
**SEEKING ALLOWANCE AND PAYMENT OF INTERIM COMPENSATION AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Jones Day, special counsel for Lehman Brothers Holdings Inc. and its

affiliated debtors in the above-captioned chapter 11 cases (collectively, the "Debtors"),

submits this fourth interim application (the "Application") seeking (a) allowance of

compensation for professional services rendered by Jones Day to the Debtors in the amount

of $9,143,140.60, and (b) reimbursement of actual and necessary charges and disbursements

incurred by Jones Day in the rendition of required professional services on behalf of the Debtors in the amount of $274,531.38, in each case for the period from October 1, 2009 through January 31, 2010 (the "Compensation Period") pursuant to Section 330(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), General Order M-151, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Local Guidelines"), and the Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(b) Establishing Procedures for Interim Monthly Compensation of Professionals, entered in these cases on June 25, 2009  (the "Interim Compensation Order" and, collectively with the UST Guidelines and the Local Guidelines, the "Guidelines").  In support of this Application, Jones Day respectfully represents as follows.

### Background

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and the other Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.  On January 19, 2009, the U.S. Trustee appointed an examiner (the "Examiner") and on January 20, 2009, the Court approved the U.S. Trustee's appointment of the Examiner.

4.      On May 26, 2009, the Court appointed a fee committee (the "Fee Committee"), and approved a protocol to govern the review and payment of fees and reimbursement of expenses of professionals retained by the Debtors' estates (the "Fee Protocol").  The Fee Committee was authorized to perform the duties described in the Fee Protocol, including, among others, implementing procedures to effectively monitor the fees of the Retained Professionals (as defined in the Fee Protocol) and reducing inefficiency by establishing measures to avoid duplication of effort, overstaffing, the rendering of unnecessary services, and the incurrence of excessive or inappropriate expenses by Retained Professionals.

5.      On February 9, 2010, the Fee Committee emailed (the "Fee Committee Email") the Retained Professionals its initial report (the "Initial Third Interim Fee Report") with respect to the third interim fee applications (collectively, the "Third Interim Applications") and specific "individual summary sheets" for each firm (i.e., the Fee Committee's objections to each Retained Professional's fees and expenses sought under the Third Interim Applications).  The Fee Committee Email granted the Retained Professionals until February 22, 2010 to respond to the various objections of the Fee Committee to the third interim fees and expenses.

6.      On February 22, 2010, Jones Day submitted a timely response (the "Jones Day Response") to the Initial Third Interim Fee Report, which provided, among other things, supplemental detail sufficient to support a reduction in the deduction of

$412,568.86 initially recommended by the Fee Committee (the "Initial Recommended Jones Day Deduction") from Jones Day's third interim fees and expenses to $174,720.37 ("Jones Day's Proposed Deduction").[4]

7.      On March 10, 2010, the Office of United States Trustee filed the Fee Committee Report Pertaining to the Third Interim Fee Application of All Retained Professionals (Docket No. 7498) (the "Third Fee Committee Report") on behalf of the Fee Committee, which, among other things, purported to clarify the Fee Committee's review process and outlined the Fee Committee's final recommended deductions with respect to each Retained Professional's third interim fees and expenses (collectively, the "Final Recommended Deductions").  In particular, the Final Third Interim Fee Report proposed a Final Recommended Deduction of $293,127.97 from Jones Day's Third Interim Application (the "Final Recommended Jones Day Deduction") and recommended that the Final Recommended Jones Day Deduction be applied to the outstanding 20% fee holdback from the Third Interim Fee Application (the "Third Prior Holdback").

8.      On March 16, 2010, Jones Day filed its Statement and Joinder To The Reservation Of Rights of Milbank, Tweed, Hadley & McCloy LLP With Respect To The Fee Committee Report Pertaining To The Third Interim Fee Applications Of All Retained Professionals (Docket No. 7616) setting out, amongst other things, Jones Day's objections to the lack of explanation and transparency surrounding the Fee Committee's determination of the Final Recommended Deductions contained in the Third Fee Committee Report and the Fee Committee's imposition of arbitrary caps with respect to certain fees and expenses, most notably the 1% Fee-Related Cap.

---

[4]      Jones Day's Proposed Deduction included $121,828.32 in fees Jones Day incurred in reviewing and editing monthly statements, preparing monthly budgets required by the Fee Committee's guidelines and compiling and editing interim fee applications in excess of 1% of the total fees billed in Jones Day's Third Interim Application.  As it did in the Jones Day Response, Jones Day reserves its rights, at the hearing on its final fee application or otherwise, to argue that the 1% cap imposed by the Fee Committee (generally, the "1% Fee-Related Cap") is arbitrary and contrary to established Southern District of New York and Second Circuit precedent.

9.      Ultimately, the Fee Committee and Jones Day agreed to defer any ruling on the Disputed Fees (including the amounts over the 1% Fee-Related Cap and certain fees the Fee Committee argues should be disallowed because they are "administrative") until the hearing on Jones Day's final fee application.

**Jurisdiction and Venue**

10.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

11.      Pursuant to this Application, Jones Day seeks allowance of the following: (a) compensation for professional services rendered during the Compensation Period in the aggregate amount of $9,143,140.60; and (b) reimbursement of expenses incurred in connection with such services in the aggregate amount of $274,531.38.

12.      During the Compensation Period, Jones Day attorneys and paraprofessionals expended a total of 19,010.00 hours for which compensation is requested.

13.      Prefixed to this Application is the cover sheet required by the UST Guidelines, which includes a schedule setting forth the names of all Jones Day professionals and paraprofessionals who have performed services for which compensation is sought, the person's position in the firm, and the year in which each attorney was first admitted to practice law.  In addition, the schedule sets forth for each person (a) the hourly rate(s) during the Compensation Period, (b) the total hours billed for which compensation is sought, and (c) the total compensation for such hours.

14.      Annexed hereto as Exhibit "A" is a summary of the services rendered by Jones Day for which compensation is sought by project category.  Annexed hereto as Exhibit "B" is a listing of the detailed time entries of Jones Day professionals and

paraprofessionals, by project category, with respect to the compensation requested. Annexed hereto as Exhibit "C" is a summary of the types of expenses for which reimbursement is sought. Annexed hereto as Exhibit "D" is a detailed itemization of such expenses. Annexed hereto as Exhibit "E" is a proposed form of order granting the Application. Annexed hereto as Exhibit "F" is the certification of Simon D. Powell with respect to the Application pursuant to the Local Guidelines.

### Jones Day's Retention

15. On February 4, 2009, the Debtors filed their Application Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules for Authorization to Employ and Retain Jones Day as Special Counsel to the Debtor, *nunc pro tunc* to the Engagement Dates (Docket No. 2725) (the "Retention Application").

16. On February 25, 2009, the Court entered the Amended Order Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code Authorizing the Employment and Retention of Jones Day as Special Counsel to the Debtors, *nunc pro tunc* to the Engagement Dates (Docket No. 2925) (the "Retention Order").

17. On May 8, 2009, the Debtors filed their Supplement to the Application of the Debtors Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules for Authorization to Expand the Scope of Jones Day's Retention as Special Counsel, *nunc pro tunc* to the Engagement Dates (Docket No. 3525) (the "First Supplemental Retention Application").

18. On May 21, 2009, the Court entered an order granting the First Supplemental Retention Application (Docket No. 3630) (the "First Supplemental Retention Order"). Under the First Supplemental Retention Order, Jones Day's scope of retention was expanded to include representation of the Debtors in connection with (a) the examination of the negotiation and conclusion of that certain Asset Purchase Agreement, dated September 16,

2008, and certain related or potentially related transactions and events involving the Debtors

and Barclays Capital Inc. ("Barclays") that occurred in and after September 2008, and (b) the

examination of issues relating to derivatives trades between Debtor Lehman Brothers Special

Financing Inc. and certain of the other Debtors, on the one hand, and the counterparty to such

trades, AIG CDS, Inc. and/or its affiliates, on the other (collectively, the "First Additional

Matters").

19.     On July 9, 2009, the Debtors filed their Second Supplemental

Application of the Debtors Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code

and Rule 2014 of the Bankruptcy Rules for Authorization to Employ and Retain Jones Day as

Special Counsel to the Debtors, *nunc pro tunc* to the Engagement Dates (Docket No. 4299)

(the "Second Supplemental Retention Application").

20.     On July 23, 2009, the Court entered an Order granting the Second

Supplemental Retention Application (Docket No. 4476) (the "Second Supplemental

Retention Order").  Under the Second Supplemental Retention Order, Jones Day's scope of

retention was expanded to include representation of the Debtors in connection with various

derivatives trades between the Debtors and other entities, which the Debtors' primary

restructuring counsel is unable to assist with due to conflict or other reasons (collectively, the

"Second Additional Matters").

21.     On October 22, 2009, the Debtors filed their Third Supplemental

Application of the Debtors Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code

and Rule 2014 of the Bankruptcy Rules for Authorization to Employ and Retain Jones Day as

Special Counsel to the Debtors, *nunc pro tunc* to the Engagement Dates (Docket No. 5604)

(the "Third Supplemental Retention Application").

22.     On November 5, 2009, the Court entered an Order granting the Third

Supplemental Retention Application (Docket No.5728) (the "Third Supplemental Retention

Order"). Under the Third Supplemental Retention Order, Jones Day's scope of retention was expanded to include representation of the Debtors in connection with various additional structured products and derivatives trades between the Debtors and other entities in addition to those Second Additional Matters (including certain matters governed by English law), which the Debtors' primary restructuring counsel is unable to assist with due to conflict or other reasons (collectively, the "Third Additional Matters").

23.     On January 25, 2010, the Debtors filed their Fourth Supplemental Application of the Debtors Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules for Authorization to Employ and Retain Jones Day as Special Counsel to the Debtors, *nunc pro tunc* to the Engagement Date (Docket No. 6750) (the "Fourth Supplemental Retention Application").

24.     On February 18, 2010, the Court entered an Order granting the Fourth Supplemental Retention Application (Docket No. 7166) (the "Fourth Supplemental Retention Order"). Under the Fourth Supplemental Retention Order, Jones Day's scope of retention was expanded to include representation of the Debtors in connection with (a) the workout and/or restructuring of certain loans or investments in the Debtor's loan portfolio or investment portfolio involving Greenbrier Minerals LLC and (b) such other matters relating to the loan portfolio or investment portfolio as requested by the Debtors and agreed to by Jones Day (collectively, the "Fourth Additional Matters").

### Payments Received by Jones Day in Accordance with the Interim Compensation Order

25.     On June 25, 2009, the Court entered the Interim Compensation Order, which superseded the amended order dated March 13, 2009 in its entirety. Pursuant to the Interim Compensation Order, the Court established procedures for the Debtors' payment of

interim compensation and reimbursement of expenses of professionals retained in these chapter 11 cases.

26.     During the Compensation Period, Jones Day has served a notice of monthly fee and expense invoice for each monthly period from October 1, 2009 through January 31, 2010 (collectively, the "<u>Monthly Statements</u>").  Because no objections were filed to any of the Monthly Statements, the Debtors made the following payments to Jones Day in respect of certain of the Monthly Statements, pursuant to the Interim Compensation Order:

| **Periods** | **Fees Requested** | **Expenses Requested** | **Payment Dates** | **Payment Amount[5]** |
|---|---|---|---|---|
| October 2009[6] | $1,887,108.00 | $58,582.42[7] | December 22, 2009<br>December 29, 2009 | $1,568,268.82<br>$384,168.92[8] |
| | $300.00[9] | $0.00 | Unpaid | N/A |

---

[5] Payments were made on account of 80% fees requested and 100% of expenses.

[6] The October 2009 Monthly Statement included fees of $263,736.70 and expenses of $129.82 attributable to the Third Additional Matters for September 2009.  As the Third Supplemental Retention Application was not approved until November 5, 2009, Jones Day was not in a position to include such sums for services rendered for the Third Additional Matters before it served the October 2009 Monthly Statement on November 28, 2009.  As such, the above-mentioned fees and expenses, although contained in the October 2009 Monthly Statement served on November 28, 2009, were included in the Third Interim Fee Application and have already been approved in the Third Interim Compensation Order and as such are not subject to this Application. Fees and expenses submitted in the October 2009 Monthly Statement in the amounts of $1,623,371.30 and $53,330.26, respectively, are subject to this Application and were rendered in the Compensation Period except for $3,075.00 in fees of the Jones Day New Delhi office which were rendered in August 2009 which, due to various administrative and logistical complications, were invoiced in the October 2009 Monthly Statement and, due to administrative oversight, were not included in the Third Interim Fee Application and are hereby submitted for approval in this Application.

Of the payment amount of $1,568,268.82 made on December 22, 2009, only $1,357,149.64 is in satisfaction of 80% of the fees and 100% of the expenses rendered in the Compensation Period.

[7] (A) Of the expenses requested for October 2009, November 2009, December 2009 and January 2010, $14,453.56, $12,814.00, $8,564.05 and $18,694.63 ("<u>Original Duplication Costs</u>") were, respectively, the total black and white duplication costs submitted at a rate exceeding 10 cents per page.  In order to comply with the Fee Committee's guidelines, the Original Duplication Costs have since been readjusted so that the rate per page does not exceed 10 cents.  As a result, $3,416.07, $2,769.58, $3,860.86 and $4,227.59  have been written off from the Original Duplication Costs, resulting in an adjustment of the Original Duplication Costs to $11,037.49, $10,044.42, $4,703.19 and $14,467.04 for October 2009, November 2009, December 2009 and January 2010, respectively.

(B) Of the expenses requested for the Compensation Period, $3,462.80 ("<u>Secretarial Charges</u>") were the total secretarial overtime charges submitted in the Monthly Statements. In order to comply with the Fee Committee's guidelines, the Secretarial Charges have since been written off.

[8] On December 29, 2009, the Debtors paid $384,168.92 to Jones Day in satisfaction of the Second Prior Holdback minus the Final Recommended Deductions (as such term is defined in the Corrected Final Second Fee Committee Report) authorized under the Third Interim Compensation Order.

9

| November 2009 | $2,424,784.90 $27,283.50[9] | $69,938.51[7] $0.00 | January 21, 2010 Unpaid | $2,009,766.43 N/A |
|---|---|---|---|---|
| December 2009 | $2,198,444.20 $40,567.00[9] | $79,749.72[7] $3,188.27[9] | February 19, 2010 Unpaid | $1,838,505.08 N/A |
| January 2010 | $2,828,187.20 $202.50[9] | $80,913.57[7] $7.57[9] | March 17, 2010 Unpaid | $2,343,463.33 N/A |

## **Summary of Services Rendered by Jones Day**

27.     Below is a summary of the major activities performed during the Compensation Period by Jones Day professionals and paraprofessionals in assisting the Debtors with their chapter 11 cases and other restructuring-related activities, categorized by region.[10]  More detailed descriptions of the services rendered by Jones Day are included in the Monthly Statements and Exhibit B attached hereto.   In accordance with the UST Guidelines, a summary of the hours and amounts billed during the Compensation Period by each timekeeper, as well as each timekeeper's position, hourly rate and, if applicable, the year in which each timekeeper was first licensed to practice law, is set out in the cover sheet prefixed to this Application.

28.     During the Compensation Period, Jones Day professionals and paraprofessionals assisted LBHI in relation to issues arising principally in the Asia Pacific region, Australia, England, Hong Kong, India, Japan, the Philippines, Singapore, Taiwan, Thailand and the United States as a consequence of the Debtors' chapter 11 cases in the

---

(continued…)

[9] Of the fees and expenses requested for October 2009, November 2009, December 2009 and January 2010, $300.00, $27,283.50, $40,567.00 and $202.50 were, respectively, the fees attributed to the Fourth Additional Matters and $3,188.27 and $7.57 were for expenses requested for December 2009 and January 2010, respectively, attributed to the Fourth Additional Matters. As the Fourth Supplemental Retention Application was only approved on February 18, 2010, Jones Day was not in a position to include such sums for services rendered for the Fourth Additional Matters until it served its February 2010 Monthly Statement on March 30, 2010.

[10] Categorizing the various services provided to the Debtors by Jones Day by region was previously approved by both the Debtors and the Fee Committee.

United States, including anticipated litigation, securities, insolvency, commercial, real estate and any and all other related issues as more specifically set out below.

29.     In addition, Jones Day professionals represented LBHI in litigation to recover money damages which has been pending in the U.S. Bankruptcy Court in San Francisco since 2003, involving Chapter 11 debtors Central European Industrial Development Company ("CEIDCO") and The Kontrabecki Group LP ("TKG"), and their former principal, John Kontrabecki (the "San Francisco - Kontrabecki Matter").  Jones Day professionals also represented the Debtors in connection with issues arising out of various derivatives trades and structured products between the Debtors and other entities, as well as the First, Second, Third and Fourth Additional Matters in New York.

*Asia Pacific – 595 hours – $230,641.00*

30.     During the Compensation Period, Jones Day professionals and paraprofessionals attended to numerous case administration tasks and commercial issues arising from the restructuring of various LBHI entities across the Asia Pacific region and globally.  Such tasks included liasing and coordinating across a number of Jones Day's offices in various jurisdictions, compiling and filing of Monthly Statements, preparing Monthly Budgets and Fee Forecasts, preparing the Third Interim Fee Application filed with the Court, responding to the Fee Committee's questions and requests and dealing with conflict and similar issues arising from time to time.

*Hong Kong – 491.90 hours – $255,170.00*

31.     During the Compensation Period, the servies rendered by Jones Day professionals and paraprofessionals in Hong Kong were primarily attributed to LBHI, LBQ Hong Kong Services Limited ("LBQ"), Lehman Brothers Real Estate Private Equity Group ("REPE") and Lehman Brothers Offshore Partners Ltd. ("LBOP").

32.     Jones Day's services rendered in Hong Kong included real estate issues, company secretarial issues, employment and immigration issues, conducting relevant legal research in respect of issues arising in relation to the local Hong Kong based Lehman entities, arranging for employment visa applications and renewals for expatriate employees working with LBQ and providing *ad hoc* advice to LBHI in relation to insolvency issues arising in Hong Kong from time to time.

33.     In addition, in December 2009, Jones Day was retained to advise LBOP on the issuance of 7% exchangeable notes in the aggregate principal amount of USD9.75 million due 2011, exchangeable into shares held by LBOP in a Taiwanese company, which were to be issued together with a call option, right of first refusal and security for the notes (collectively, the "Transactions").   Jones Day professionals drafted, reviewed, negotiated and analyzed the various transactional documentation required for the Transactions as well as advising on, preparing and coordinating the logistics and other arrangements required to be undertaken by all relevant parties to the Transactions in various overseas jurisdictions such as Taiwan, Bermuda and the British Virgin Islands.   Jones Day also advised on the various filing requirements in relation to the Transactions with the British Virgin Islands Registrar of Corporate Affairs and Bermuda Registrar of Companies.

*India – 24.60 hours – $7,880.00*

34.     During the Compensation Period, Jones Day professionals reviewed an ISDA Master Agreement between LBHI Services Limited and Wockhardt USA Holding (Swiss) AG to consider and advise the Debtor in relation to the right of LBHI Services Limited to terminate the ISDA Master Agreement.   In the course of this work, Jones Day professionals had discussions with representatives from LBHI Services Limited.

*Korea – 246.00 hours – $182,592.50*

35.     During the Compensation Period, the services rendered by Jones Day professionals in Korea focused on the GKI Development Co., Ltd. ("GKID") project as Jones Day Professionals worked on workout issues and bankruptcy issues in relation to GKID's involuntary bankruptcy. Work included drafting petitions responding to creditor claims against GKID and advising on all bankruptcy related matters upon the declaration of bankruptcy against GKID in November 2009.

36.     Jones Day  professionals also advised the Debtors regarding Maehwa K-Star Co., Ltd. during the Compensation Period relating to borrower negotiations.

*London  - 1,049.00 hours – $658,419.60*

37.     In September 2009, Jones Day professionals in London were retained to advise the Debtors on derivatives documentation matters arising from the occurrence of credit events with respect to various "Reference Obligations" referenced in credit derivatives and synthetic CDO documentation to which the Debtors are party, including the exercise or performance of their respective rights and obligations under such documentation.

38.     During the Compensation Period, Jones Day professionals have continued to review and analyze credit derivatives and synthetic CDO documentations for 27 special purpose CDO entities and provided advice to the Debtors with respect to the contractual requirements and procedures for the content and delivery of credit event notices in order to enable the Debtors to maximize the value of these transactions to the Debtors' estates.  As part of this work and pursuant to the relevant documentation, Jones Day advised on, prepared and coordinated the delivery of Credit Event Notices and Notices of Publicly Available Information in respect of each of the special purpose CDO entities.  Jones Day also advised on the valuation process including the preparation of the forms of Notices of Final

Valuation/Calculation and Statements of Calculation with respect to various Reference Obligations referenced in the documentation for the special purpose CDO entities.

39.    Jones Day reviewed and analyzed the relevant transaction documents and provided advice to the Debtors with respect to the contractual requirements and procedures for affecting a transfer to a new counterparty. Jones Day also prepared and negotiated a Novation Agreement and related notices and a Jones Day legal opinion for purposes of effecting this transaction.

40.    Jones Day also advised the Debtors on various valuation issues under five separate credit derivative transactions.    Jones Day reviewed and analysed the documentation for these transactions and the subsequent service of Credit Event Notices, Notice of Termination and Statements of Calculation by counterparties on the Debtors. Jones Day further provided advice to the Debtors as well as draft correspondence to counterparties regarding the basis of valuation of sums due to Debtors under the transaction documentation.

41.    Jones Day reviewed and analyzed the documentation for certain CDO structures and the related swap transaction and provided advice to the Debtors regarding potential rights of termination and recovery arising from marked to market trigger events in the financing structure.  Jones Day developed a proposed strategy for effecting a termination in the context of the documentation and a potential judicial challenge.

*New York –14,095.80 hours – $6,540,760.00*

*Barclays*

42.    During the Compensation Period, Jones Day has continued its representation as special counsel to the Debtors to investigate whether potential claims or other remedies exist and should be asserted, arising from the Asset Purchase Agreement

between LBHI and Barclays executed September 16, 2008 and approved by the Court by order entered September 20, 2008.

43.    During the Compensation Period, Jones Day continued its discovery process from Barclays pursuant to a Bankruptcy Rule 2004 discovery order entered on June 24, 2009 ("Discovery Order") by continuing to review documents, preparing depositions and conducting further factual investigations and analyzing pertinent legal issues and claims arising from the discovery taken.  Immediately after the conclusion of the Bankruptcy Rule 2004 discovery, Jones Day filed an extensive motion in the United States Bankruptcy Court for the Southern District of New York under Federal Rule 60(b) seeking relief from certain aspects of the Sale Order issued on September 20, 2008 regarding the sale of LBHI's New York North American broker dealer business to Barclays on the grounds that material aspects of the sale transaction were not properly disclosed to the Court.

44.    Following the Bankruptcy Rule 2004 discovery taken by LBHI, the SIPA Trustee and the Creditors' Committee, and the filing of its Rule 60 motion, Movant's counsel refiled their unredacted briefs in support of the motion, prepared and filed their Adversary Complaints, responded to extensive requests for oral and written discovery filed by Barclays, and engaged in third party discovery and additional discovery of Barclays.

45.    Jones Day coordinated the Debtor's response to Barclays' discovery requests and affirmative discovery of third parties and Barclays with counsel for the Creditors' Committee and the SIPA Trustee, reviewed hundreds of thousands of pages of documents produced by Barclays and numerous third parties, appeared at and questioned witnesses at numerous depositions, and communicated frequently with counsel for Barclays, the SIPA Trustee and the Creditors' Committee.

46.     During the Compensation Period, expert discovery also began.  Jones Day reviewed the reports of Barclays' experts in early January 2010 and began to prepare for taking their depositions and also began working with LBHI's experts.

*Derivatives*

47.     During the Compensation Period, Jones Day continued to advise the Debtors concerning certain credit derivative transactions with AIG CDS, Inc. ("AIG") which was in litigation before the United States Bankruptcy Court for the Southern District of New York.   In October of 2009, Jones Day analyzed and replied to AIG's Objection to the Motion to Compel (Jones Day filed this Motion to Compel during the previous Compensation Period) and argued the Motion to Compel at a Hearing. Throughout November and December of 2009 and January of 2010, Jones Day engaged in negotiations with AIG to resolve the pending litigation.

48.     During the Compensation Period, Jones Day has continued to advise the Debtors with regard to certain derivative transactions with Prudential Global, Inc. ("Prudential").   This matter is currently in litigation before the United States Bankruptcy Court for the Southern District of New York.   In October of 2009, Jones Day drafted and filed an answer with counterclaims and cross-claims in response to Prudential's Adversary Complaint filed in August of 2009 against Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Finance, SA ("LBF"), a Swiss entity.  In November of 2009, LBF filed a Motion to Dismiss LBSF's Cross Claims.  In December of 2009, Prudential filed a Motion for Judgment on the Pleadings.   Jones Day reviewed and analyzed relevant transaction documents and researched caselaw to oppose both LBF's Motion to Dismiss and Prudential's Motion for Judgment on the Pleadings.

49.     During the Compensation Period, Jones Day has continued to advise the Debtors concerning a gold price hedge with Norton Gold Fields Ltd ("Norton").   This

matter is currently in litigation before the United States Bankruptcy Court for the Southern District of New York. Throughout October of 2009, Jones Day reviewed relevant transaction documentation and conducted research regarding various contract law and jurisdictional issues in order to formulate a strategy to seek Norton's performance under the hedge. In November of 2009, Jones Day drafted and filed a Motion to Compel Norton to perform its obligations under the hedge. After this filing, Jones Day formulated the Debtors' negotiation strategy and engaged in settlement discussions with Norton. In December of 2009, Norton filed its opposition to Debtors' Motion to Compel and during the Compensation Period, Jones Day drafted the reply brief while continuing to engage Norton in settlement negotiations.

50.    In addition to the foregoing litigation matters, during the Compensation Period, Jones Day continued to counsel the Debtors concerning various derivatives and other complex structured products entered into with multiple counterparties including interest rate swaps, credit default swaps, total return swaps, foreign currency swaps, multi-currency cross border swaps, accelerated share repurchase transactions and other financial products. With regard to these matters, Jones Day analyzed relevant transaction documents and communications and conducted a broad range of research relating to all aspects of relevant state and federal laws. Jones Day also continues to advise the Debtors on derivatives of issues pertaining to collateral and margin posting, valuation and reconciliation, as well as unique provisions specific to counter-party swaps.

51.    With regard to a number of these derivatives transactions, Jones Day has also crafted specific litigation strategy and drafted and served pre-litigation discovery on counter-parties as well as relevant third parties. Jones Day is preparing to review the forthcoming responses and document productions. Jones Day also continues to craft pre-litigation and litigation strategy with respect to certain counterparties of the Debtors.

*Greenbrier*

52.     During the Compensation Period, Jones Day advised the Debtors in connection with the workout and restructuring of certain loans and investments involving Greenbrier Minerals LLC ("Greenbrier").  Services rendered by Jones Day professionals included the review and analysis of Greenbrier organizational and loan documents, including the Greenbrier operating agreement, credit agreement, and amendments thereto, restructuring documents, supply agreements, and other documents in connection with the various transactions between LBHI and Greenbrier.  Jones Day further reviewed and analysed the joint sharing arrangement materials and restructuring proposals from Greenbrier's counsel in connection with the sale of Greenbrier, and considered restructuring alternatives and developed strategy in connection with potential Greenbrier litigation or settlement.

53.     As well as advising LBHI with respect to various matters, including LBHI's rights under the credit agreement and Greenbrier's organizational documents and joint sharing arrangement proposal in connection with the sale of Greenbrier, Jones Day professionals researched and analyzed various legal issues related to potential litigation, including recoupment, setoff, and equitable subordination under New York and Delaware bankruptcy law, the applicability of default provisions relating to an entity's membership interests in an LLC under Delaware law, and the enforceability of a contractual waiver of consequential damages.

*Quadrant*

54.     During the Compensation Period, Jones Day advised the Debtors with respect to their efforts to obtain the return of their capital investment in Quadrant Structured Products LLC ("Quadrant").  The Debtors are minority shareholders with certain super-majority voting rights in Quadrant, a credit derivatives products company.  Jones Day analyzed transaction documentation, researched relevant caselaw in the United States and

Cayman Islands, and counseled the Debtors concerning their discussions with Quadrant. Such discussions are ongoing.

*Philippines – 4.90 hours – $3,661.00*

55.     During the Compensation Period, Jones Day professionals reviewed and analyzed servicing agreements relating to Philippine Investment (SPV C AMC) One, Inc. and Philippine Investment (SPV C AMC) Two, Inc. Additional work was done assisting on transaction documents relating to a sale of a Non-Performing Loan Portfolio by Philippine Investment (SPV C AMC) One, Inc.

*San Francisco – 755.80 hours – $467,579.50*

56.     The history of the San Francisco – Kontrabecki Matter, which currently remains pending in the U.S. Bankruptcy Court in San Francisco as an action by LBHI to recover money damages from defendant John Kontrabecki for economic losses LBHI incurred as a result of Mr. Kontrabecki's impairment of LBHI's security rights in two property-owning entities in Poland, has been summarized in prior applications.

57.     Until October 2008, LBHI was represented in this litigation by Heller Ehrman LLP (and by co-counsel McKenna Long & Aldridge of Atlanta, which continues to represent LBHI).  Following the dissolution of Heller Ehrman in the fall of 2008, the Heller Ehrman attorneys who had been representing LBHI joined Jones Day, and LBHI's representation in the engagement has continued at Jones Day since October 2008.

58.     In early October 2009, Jones Day professionals represented LBHI in a hearing on various dispositive and pretrial motions, including a motion by defendant Kontrabecki for partial summary judgment to exclude the primary element of LBHI's economic damages.  Several days after the hearing, the Court granted that motion.  The trial date on LBHI's complaint, which had been set for early November 2009, was vacated as a result of that ruling and a subsequent scheduling conference.  Jones Day prepared, and on

November 17 filed, a motion for reconsideration of the partial summary judgment, which the Court ultimately heard on March 9, 2010, after the Compensation Period. The motion for reconsideration has been taken under advisement, and a decision is anticipated in the near future. The scope of further proceedings will depend in large measure on whether the motion for reconsideration is granted.

59.     In addition, during the Compensation Period, Jones Day prepared an opposition to and represented LBHI at the hearing on December 18, 2009 of a motion filed by defendant Kontrabecki to dismiss the adversary proceedings based on alleged discovery misconduct of counsel. In early January 2010, the Court denied Mr. Kontrabecki's motion.

60.     During the Compensation Period, Jones Day professionals also performed services relating to supplementation of document discovery involving documents in the possession of LBHI's Polish counsel, and with regard to LBHI's response to a settlement proposal made by Mr. Kontrabecki.

*Singapore – 8.30 hours – $4,927.50*

61.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals included assisting on matters arising out of employment issues, including the review of a draft employee handbook and the making of inquiries with the Central Provident Fund on the registration status of Lehman Brothers Sino Investment 1 Pte. Ltd., in Singapore.

*Sydney – 583.90 hours – $238,264.50*

62.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Sydney included assisting and advising LBHI with respect to insolvency proceedings in relation to Lehman Brothers Australia Limited ("LBA"). Such services included attending to matters relating to the Deed of Company Arrangement for LBA ("DOCA") which sought to release LBHI and other related Lehman entities from

claims by certain creditors of LBA; considering and preparing appeal pleadings to appeal the judgment of the Federal Court of Australia in which certain creditors of LBA applied to have the DOCA set aside to the High Court of Australia; preparing for and appearing at proceedings in the High Court of Australia; and briefing and instructing Counsel to advise and appear at these proceedings. Services were also provided to LBHI in relation to protecting LBHI's rights under a gold price swap agreement (and other associated transaction documents) entered into with an Australian company, including advising on LBHI's rights and obligations under those documents.

*Taipei – 182.50 hours – $57,520.00*

63.   During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Taiwan are attributed to TL I Asset Management Company Limited, TL II Asset Management Company Limited and TL III Asset Management Company Limited.  Such services included advising Lehman entities with respect to the disposal of assets and repayment of debts, drafting letters to banks, companies, and governmental authorities, attending to matters relating to mortgage auction ruling, loan and trust agreements, real estate sales and purchase agreement, and litigation, and translating various documents from English into Chinese and vice versa, as well as representing Lehman entities in negotiations with various third parties and in respect of changes to the corporate registrations as required.

64.   In addition, Jones Day assisted a number of Lehman entities to petition for bankruptcy in the Taipei District Court.

*Thailand – 671.20 hours – $373,363.50*

65.   The services rendered by Jones Day professionals in Thailand during the Compensation Period have been for LBHI and its subsidiaries, assisting them in managing LBHI's Thailand real estate assets. This has involved advising LBHI and its

subsidiaries on investment, financing issues and disposal strategies - a number of assets are currently in the process of being auctioned. With respect to disposition strategy and implementation of the sales process, Jones Day has drafted all key transaction documents and been an integral part of the team from inception of the sales process.

66.     Jones Day has researched the financing structures for a number of LBHI's assets in Thailand, in particular reviewing the extent to which security has been granted over LBHI assets as a result of its debt obligations.

67.     Jones Day has liaised with local counsel on Thai legal issues affecting the LBHI asset portfolio in Thailand with current issues including litigation proceedings being undertaken against LBHI subsidiaries by one of their joint-venture partners and advising on compliance issues with regard to Thai laws on financing and resulting security issues as well as providing general bankruptcy and insolvency advice.

*Tokyo – 301.10 hours – $122,361.50*

68.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Tokyo were attributed to LBHI, L.B.C., which represents entities named L.B.A. Y.K., L.B.B. Y.K. and L.B.C. Y.K. and other special purpose companies, many of them dormant, Marlin Y.K., LBSF and REPE.  Such services included conducting legal research on civil rehabilitation law, drafting memoranda in relation to reorganization and licensing matters, preparing and filing various documents with the local court, translating various documents from Japanese into English and vice-versa, assisting LBHI and other United States-based Lehman entities in Japan in asserting claims in the Japanese Civil Rehabilitation proceedings of Lehman Brothers Japan KK, Lehman Brothers Commercial Mortgage KK and Sunrise Finance KK, advising LBHI and other United States-based Lehman entities in Japan on the contents of the proposed rehabilitation plan of Lehman Brothers Commercial Mortgage KK and associated approval and voting procedures, advising

LBSF on the settlement of derivatives claims involving Lehman Brothers Japan and other counterparties, advising LBHI and L.B.C. on labor and employment issues, organizing the corporate housekeeping of various LBHI-owned special purpose companies, and advising LBHI and LBC on operational matters associated with the winding down of operations in Japan.

### Expenses Incurred by Jones Day

69.    Section 330 of the Bankruptcy Code authorizes "reimbursement for actual, necessary expenses" incurred by professionals employed under section 327 of the Bankruptcy Code.  Accordingly, Jones Day seeks reimbursement for expenses incurred in rendering services to the Debtors during the Compensation Period.  The total amount of the expenses is $274,531.38 for the Compensation Period, as detailed in the attached Exhibit "C".

70.    In accordance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines, the Fee Protocol and other Fee Committee guidelines, Jones Day maintains the following policies with respect to expenses for which reimbursement is sought herein:

(a)    No amortization of the cost of any investment, equipment, or capital outlay is included in the expenses.  In addition, for those items or services that Jones Day purchased or contracted from a third party (such as outside copy services), Jones Day seeks reimbursement only for the exact amount billed to Jones Day by the third party vendor and paid by Jones Day to the third party vendor.

(b)    Photocopying by Jones Day was charged at 10 cents per page.[11] To the extent practicable, Jones Day utilized less expensive outside copying services.

(c)    Telecopying by Jones Day was charged to the Debtors at the cost of the long

---

[11] Please see footnote 7 above.  As disclosed and agreed to by the Fee Committee, Jones Day charges the Debtors at cost for (i) color copies and (ii) duplication charges for obtaining court records at the Tokyo District Court.

23

distance call required to send the facsimile.   The firm did not impose any charge to the Debtors for local facsimiles, inbound facsimiles, interoffice facsimiles or facsimiles costing less than $1.00.

(d)      Meal charges incurred during travel charged to the Debtors for Jones Day personnel were limited to $40 per person.

(e)      Working meals and overtime meals for Jones Day personnel working past 8:00 p.m. were limited to $20 per person.

(f)      Airfares charged to the Debtors for Jones Day personnel were associated with out of town travel, meetings with the Debtors or other parties in these chapter 11 cases.

(g)      Taxi fares for overtime travel home after 8:00 p.m. were limited to $100.

(h)      Fees for hotel accommodation charged to the Debtors for Jones Day personnel were not in excess of $500 per night.

## The Requested Compensation Should Be Allowed

71.      Section 330 of the Bankruptcy Code provides that the Court may award a professional person employed under section 327 or 1103 of the Bankruptcy Code:

(A)      reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B)      reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).  Section 330(a)(3)(A) further provides the following standards for the Court's review of a fee application:

In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

(A)      the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)     whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A).

72.     Jones Day respectfully submits that it has satisfied the requirements for the allowance of the compensation and reimbursement of expenses sought herein.   The services described above, at the time they were provided, were necessary and beneficial to the administration of the Debtors' chapter 11 cases.   Jones Day's services were consistently performed in a timely manner, commensurate with the complexity of the issues facing the Debtors and the nature and importance of the problems, issues, and tasks.   Furthermore, the compensation sought by Jones Day is reasonable because it is based on the customary compensation charged by comparably skilled practitioners outside of bankruptcy. Accordingly, approval of the compensation sought herein is warranted.

**Statements of Jones Day Pursuant to Bankruptcy Rule 2016(a)**

73.     Pursuant to the Interim Compensation Order and the Fee Protocol, Jones Day has submitted the Monthly Statements to (a) the Debtors, (b) counsel to the Debtors, Weil, Gotshal & Manges, LLP, (c) counsel to Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, (d) the U.S. Trustee, (e) the Fee Committee, and (f) BrownGreer PLC (collectively the "Notice Parties"), during the Compensation Period with respect to the Debtors' chapter 11 cases, as follows: (a) from October 1, 2009 through October 31, 2009 – fees of $1,887,108.00 and expenses of $58,582.42, of which

$1,623,371.30 of fees and $53,330.26 of expenses are submitted for consideration under this Application; (b) from November 1, 2009 through November 30, 2009 – fees of $2,424,784.90 and expenses of $69,938.51, of which $2,424,784.90 of fees and $67,168.93 of expenses are due for consideration under this Application;  (c) from December 1, 2009 through December 31, 2009 – fees of $2,198,444.20 and expenses of $79,749.72, of which $2,198,444.20 of fees and $75,499.28 of expenses are submitted for consideration under this Application; and (d) from January 1, 2010 through January 31, 2010 – fees of $2,828,187.20 and expenses of $80,913.57, of which $2,828,187.20 of fees and $75,319.03 of expenses are submitted for consideration under this Application. [12]

74.    In addition, fees of $68,353.00 and expenses of $3,213.88 incurred from October 2009 through January 2010 attributed to the Fourth Additional Matters were submitted to the Notice Parties in the February 2010 Monthly Statement served on March 30, 2010.

75.    In total, therefore, Jones Day has submitted Monthly Statements for fees of $9,143,140.60 and expenses of $292,398.10 during the Compensation Period, of which $9,143,140.60 of fees and $274,531.38 are submitted for consideration under this Application.

76.    Jones Day has received such payment from the Debtors relating to fees and expenses in the Monthly Statements on account of services provided during the Compensation Period as described in paragraph 26 above.

77.    No agreement or understanding exists between Jones Day and any third person for the sharing of compensation, except as allowed by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016 with respect to the sharing of compensation between and among partners of Jones Day.  All of the services for which compensation is

---

[12] Please refer to paragraph 26 hereof for a further explanation of the fees included in each of the above described Monthly Statements.

sought in this Application were rendered at the request of, and solely on behalf of, the

Debtors, and not at the request of, or on behalf of, any other person or entity.

78.     Prior to the filing of this Application, Jones Day had received no

objections to any of the Monthly Statements provided under the Fee Protocol from the

Debtors, the Fee Committee or any one else under the Interim Compensation Order.

### Waiver of Memorandum of Law

79.     This Application does not raise any novel issues of law.  Accordingly,

Jones Day respectfully requests that the Court waive the requirement contained in Rule 9013-

1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate

memorandum of law be submitted.

### Notice

80.     Notice of this Application and its exhibits will be given to (a) the

Debtors; (b) counsel to the Debtors; (c) the U.S. Trustee; (d) counsel to the Committee;

(e) the Fee Committee; and (f) as requested by the Fee Committee, BrownGreer PLC.  Jones

Day respectfully submits that no other or further notice is required.

WHEREFORE, Jones Day respectfully requests that the Court (a) enter an

order allowing interim compensation of $9,143,140.60 to Jones Day for professional services

rendered as special counsel for the Debtor during the Compensation Period, plus

reimbursement of actual and necessary charges and disbursements incurred in the sum of

$274,531.38 in connection with Jones Day's services during the Compensation Period; (b)

authorize and direct the Debtors to pay to Jones Day any and all unpaid, invoiced amounts for

the Compensation Period; (c) authorize and direct the Debtors to release to Jones Day the

Third Prior Holdback, subject to the final recommended deductions (agreed to by Jones Day

and the Fee Committee), with respect to the Third Interim Fee Application; and (d) grant to

Jones Day such other and further relief as the Court may deem proper.

Dated:  April 16, 2010
        New York, New York

                                    /s/  Ross S. Barr
                                    David L. Carden
                                    Ross S. Barr
                                    JONES DAY
                                    222 East 41st Street
                                    New York, New York 10017-6702
                                    Telephone:  (222) 326 3939
                                    Facsimile:  (212) 755 7306

                                    Simon D. Powell
                                    JONES DAY
                                    29th Floor, Edinburgh Tower
                                    The Landmark
                                    15 Queen's Road Central
                                    Hong Kong
                                    Telephone: (852) 2526 6895
                                    Facsimile: (852) 2868 5871

                                    SPECIAL COUNSEL TO THE DEBTORS
                                    IN POSSESSION