Hearing Date: To Be Determined
Objection Deadline: To Be Determined

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
|  | : |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | Case No. 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------------x

**FOURTH INTERIM FEE APPLICATION OF THE EXAMINER AND**
**JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION**
**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES
FOR REVIEWING APPLICATIONS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

| | |
|---|---|
| Name of Applicant: | Anton R. Valukas (the "Examiner") and Jenner & Block LLP |
| Period for which Compensation and Reimbursement is Sought: | October 1, 2009 to January 31, 2010 |
| Authorized to Provide Professional Services to: | Anton R. Valukas, Examiner |
| Date of Notice of Appointment: | January 19, 2009 |
| Date of Retention (Jenner & Block): | February 11, 2009, *nunc pro tunc* January 19, 2009 |

| | | |
|---|---|---|
| Amount of Compensation and Expense Reimbursement Sought As Actual, Reasonable and Necessary: | Fees Requested: | $20,604,413.25[1] |
| | Expenses Requested: | $3,014,481.99[2] |
| Prior Amounts Requested: | Fees Previously Requested: | $27,638,716.95[3] |
| | Fees Previously Awarded: | $27,412,082.31 |
| | Expenses Previously Requested: | $4,572,034.81 |
| | Expenses Previously Awarded: | $4,507,931.21 |

_____

[1] This reflects a 10% reduction in standard hourly rates to which the Examiner and Jenner & Block have agreed because of the significant public interest associated with the Examiner's duties and responsibilities. This total also reflects the Examiner's and Jenner & Block's voluntary reduction of half their non-working travel time, as well as other time that they have voluntarily written off or not billed.

[2] Approximately 75% of these expenses relate to wages paid to contract attorneys whom the Examiner retained for specific document review tasks pursuant to Court authorization.

In addition, the amount of expense reimbursement requested herein represents a reduction of $656.24 in the amount of expense reimbursement sought by the Examiner and Jenner & Block in their previously submitted monthly statements for October 2009 to January 2010. This reduction represents adjustments made to certain expense items to implement the Fee Committee's guidelines on expenses.

[3] The Examiner and Jenner & Block submitted previous fee and expense reimbursement requests in their First Interim Fee Application, covering the period January 19, 2009 to January 31, 2009, their Second Interim Fee Application, covering the period February 1, 2009 to May 31, 2009, and their Third Interim Fee Application, covering the period June 1, 2009 to September 30, 2009. [Docket Nos. 3319, 4808, 6188].

Summary of Time Recorded in Connection With Rendering
Services to the Examiner for October 1, 2009 - January 31, 2010

ATTORNEYS

| Position | Name | Admitted to Practice | Fee Year | Rate[4] | Hours | Amount |
|---|---|---|---|---|---|---|
| Partner | Anton R. Valukas | 1968 | 2009 | 925 | 332.4 | $307,470.00 |
| Partner | Anton R. Valukas | 1968 | 2010 | 975 | 194.9 | $190,027.50 |
| Partner | Stephen L. Ascher | 1991 | 2009 | 750 | 439.2 | $329,400.00 |
| Partner | Stephen L. Ascher | 1991 | 2010 | 775 | 141.4 | $109,585.00 |
| Partner | Matt D. Basil | 1997 | 2009 | 575 | 577.0 | $331,775.00 |
| Partner | Matt D. Basil | 1997 | 2010 | 600 | 320.7 | $192,420.00 |
| Partner | Robert L. Byman | 1970 | 2009 | 800 | 580.1 | $464,080.00 |
| Partner | Robert L. Byman | 1970 | 2010 | 850 | 310.6 | $264,010.00 |
| Partner | Timothy J. Chorvat | 1986 | 2009 | 625 | 336.0 | $210,000.00 |
| Partner | Timothy J. Chorvat | 1986 | 2010 | 650 | 137.3 | $89,245.00 |
| Partner | David W. DeBruin | 1980 | 2009 | 750 | 115.1 | $86,325.00 |
| Partner | David W. DeBruin | 1980 | 2010 | 775 | 9.9 | $7,672.50 |
| Partner | Larry P. Ellsworth | 1973 | 2009 | 700 | 2.8 | $1,960.00 |
| Partner | Jerome L. Epstein | 1986 | 2009 | 700 | 312.1 | $218,470.00 |
| Partner | Jerome L. Epstein | 1986 | 2010 | 725 | 197.9 | $143,477.50 |
| Partner | Gabriel A. Fuentes | 1993 | 2009 | 575 | 197.5 | $113,562.50 |
| Partner | Gabriel A. Fuentes | 1993 | 2010 | 590 | 127.0 | $74,930.00 |
| Partner | Marc B. Hankin | 1992 | 2009 | 725 | 672.2 | $487,345.00 |
| Partner | Marc B. Hankin | 1992 | 2010 | 750 | 262.0 | $196,500.00 |
| Partner | William D. Heinz | 1973 | 2010 | 825 | 11.9 | $9,817.50 |
| Partner | Katya Jestin | 1996 | 2009 | 675 | 151.2 | $102,060.00 |
| Partner | Katya Jestin | 1996 | 2010 | 700 | 122.8 | $85,960.00 |
| Partner | Carter H. Klein | 1972 | 2010 | 675 | 9.0 | $6,075.00 |
| Partner | Tobias L. Knapp | 1998 | 2009 | 675 | 72.8 | $49,140.00 |
| Partner | C. John Koch | 1981 | 2010 | 775 | 3.3 | $2,557.50 |
| Partner | David C. Layden | 1993 | 2009 | 575 | 507.4 | $291,755.00 |
| Partner | David C. Layden | 1993 | 2010 | 600 | 323.7 | $194,220.00 |
| Partner | Vincent E. Lazar | 1990 | 2009 | 700 | 343.9 | $240,730.00 |
| Partner | Vincent E. Lazar | 1990 | 2010 | 750 | 277.2 | $207,900.00 |
| Partner | Michael K. Lowman | 1993 | 2009 | 600 | 0.9 | $540.00 |

---

[4] These rates do not reflect the 10% reduction in the standard hourly rates. The 10% reduction is applied to the Total Attorney Time amount.

| Position | Name | Admitted to Practice | Fee Year | Rate[4] | Hours | Amount |
|---|---|---|---|---|---|---|
| Partner | James T. Malysiak | 1973 | 2009 | 625 | 506.2 | $316,375.00 |
| Partner | James T. Malysiak | 1973 | 2010 | 650 | 207.1 | $134,615.00 |
| Partner | Ronald L. Marmer | 1977 | 2009 | 900 | 232.3 | $209,070.00 |
| Partner | Ronald L. Marmer | 1977 | 2010 | 925 | 48.5 | $44,862.50 |
| Partner | Heather D. McArn | 1992 | 2009 | 550 | 550.1 | $302,555.00 |
| Partner | Heather D. McArn | 1992 | 2010 | 575 | 293.2 | $168,590.00 |
| Partner | John J. Molenda | 1999 | 2009 | 550 | 564.8 | $310,640.00 |
| Partner | John J. Molenda | 1999 | 2010 | 580 | 211.0 | $122,380.00 |
| Partner | Daniel R. Murray | 1970 | 2009 | 800 | 270.1 | $216,180.00 |
| Partner | Daniel R. Murray | 1970 | 2010 | 850 | 272.3 | $231,455.00 |
| Partner | Thomas C. Newkirk | 1966 | 2009 | 850 | 146.5 | $124,525.00 |
| Partner | Thomas C. Newkirk | 1966 | 2010 | 875 | 85.4 | $74,725.00 |
| Partner | Robert S. Osborne | 1979 | 2010 | 950 | 9.0 | $8,550.00 |
| Partner | Adam Petravicius | 1995 | 2010 | 675 | 1.0 | $675.00 |
| Partner | Suzanne J. Prysak | 1997 | 2009 | 575 | 582.4 | $334,880.00 |
| Partner | Suzanne J. Prysak | 1997 | 2010 | 600 | 152.2 | $91,320.00 |
| Partner | Catherine L. Steege | 1982 | 2009 | 725 | 32.1 | $23,272.50 |
| Partner | Catherine L. Steege | 1982 | 2010 | 775 | 67.8 | $52,545.00 |
| Partner | Howard S. Suskin | 1983 | 2009 | 750 | 0.5 | $375.00 |
| Partner | Howard S. Suskin | 1983 | 2010 | 775 | 18.0 | $13,950.00 |
| Partner | William L. Tolbert | 1988 | 2009 | 900 | 48.5 | $43,650.00 |
| Partner | William L. Tolbert | 1988 | 2010 | 925 | 15.2 | $14,060.00 |
| Partner | Seth A. Travis | 1996 | 2009 | 575 | 48.3 | $27,772.50 |
| Partner | Seth A. Travis | 1996 | 2010 | 575 | 50.3 | $28,922.50 |
| Partner | Patrick J. Trostle | 1992 | 2009 | 725 | 598.1 | $433,622.50 |
| Partner | Patrick J. Trostle | 1992 | 2010 | 750 | 275.5 | $206,625.00 |
| Partner | Andrew Weissmann | 1985 | 2009 | 900 | 5.5 | $4,950.00 |
| Partner | Elaine Wolff | 1979 | 2009 | 700 | 29.9 | $20,930.00 |
| Partner | Richard F. Ziegler | 1976 | 2009 | 900 | 9.0 | $8,100.00 |
| Partner | Richard F. Ziegler | 1976 | 2010 | 950 | 6.4 | $6,080.00 |
| **Partner Total** | | | | | **12,427.4** | **$8,585,262.50** |
| Of Counsel | Ronald DeKoven | 1968 | 2009 | 925 | 31.9 | $29,507.50 |
| Of Counsel | Ronald DeKoven | 1968 | 2010 | 925 | 3.6 | $3,330.00 |
| Of Counsel | Brent E. Kidwell | 1993 | 2009 | 525 | 6.3 | $3,307.50 |
| Of Counsel | Brent E. Kidwell | 1993 | 2010 | 525 | 1.2 | $630.00 |
| Staff Attorney | Laura B. Duchesne | 2006 | 2010 | 235 | 17.0 | $3,995.00 |

| Position | Name | Admitted to Practice | Fee Year | Rate[4] | Hours | Amount |
|---|---|---|---|---|---|---|
| Staff Attorney | Edward P. McKenna | 2003 | 2009 | 280 | 619.4 | $173,432.00 |
| Staff Attorney | Edward P. McKenna | 2003 | 2010 | 315 | 345.9 | $108,958.50 |
| | **Of Counsel/Staff Attorney Total** | | | | **1,025.3** | **$323,160.50** |
| Associate | Anne M. Alexander | 2008 | 2009 | 325 | 81.7 | $26,552.50 |
| Associate | Anne M. Alexander | 2008 | 2010 | 370 | 92.3 | $34,151.00 |
| Associate | Angela M. Allen | 2008 | 2009 | 325 | 306.2 | $99,515.00 |
| Associate | Angela M. Allen | 2008 | 2010 | 370 | 193.6 | $71,632.00 |
| Associate | Sarah S. Ansari | 2009 | 2010 | 325 | 18.5 | $6,012.50 |
| Associate | Thomas G. Appleman | 2009 | 2010 | 325 | 39.1 | $12,707.50 |
| Associate | Anna L. Barreiro | 2009 | 2010 | 325 | 19.6 | $6,370.00 |
| Associate | Chad E. Bell | 2006 | 2009 | 400 | 130.7 | $52,280.00 |
| Associate | Chad E. Bell | 2006 | 2010 | 445 | 120.1 | $53,444.50 |
| Associate | Christine P. Benavente | 2009 | 2010 | 325 | 24.4 | $7,930.00 |
| Associate | Sofia E. Biller | 2008 | 2009 | 325 | 814.5 | $264,712.50 |
| Associate | Sofia E. Biller | 2008 | 2010 | 370 | 333.2 | $123,284.00 |
| Associate | Anthony B. Borich | 2009 | 2010 | 325 | 72.6 | $23,595.00 |
| Associate | Cori F. Brown | 2005 | 2009 | 400 | 51.7 | $20,680.00 |
| Associate | Eric P. Brown | 2009 | 2009 | 325 | 485.4 | $157,755.00 |
| Associate | Eric P. Brown | 2009 | 2010 | 370 | 250.5 | $92,685.00 |
| Associate | Stephen R. Brown | 2008 | 2010 | 370 | 21.8 | $8,066.00 |
| Associate | Jessica A. Burke | 2008 | 2009 | 325 | 48.2 | $15,665.00 |
| Associate | Adam M. Caldwell | 2009 | 2010 | 325 | 20.5 | $6,662.50 |
| Associate | Penelope P. Campbell | 2009 | 2010 | 325 | 20.0 | $6,500.00 |
| Associate | Erin K. Cannon | 2009 | 2010 | 370 | 10.8 | $3,996.00 |
| Associate | Walter H. Chen | 2010 | 2010 | 370 | 133.8 | $49,506.00 |
| Associate | Anjan Choudhury | 2004 | 2009 | 475 | 654.7 | $310,982.50 |
| Associate | Anjan Choudhury | 2004 | 2010 | 510 | 192.1 | $97,971.00 |
| Associate | Tiffany E. Clements | 2008 | 2009 | 325 | 474.6 | $154,245.00 |
| Associate | Tiffany E. Clements | 2008 | 2010 | 370 | 163.8 | $60,606.00 |
| Associate | Jonathan D. Conley | 2008 | 2009 | 325 | 494.6 | $160,745.00 |
| Associate | Jonathan D. Conley | 2008 | 2010 | 370 | 156.2 | $57,794.00 |
| Associate | Angela L. Davis | 2009 | 2009 | 325 | 12.6 | $4,095.00 |
| Associate | Angela L. Davis | 2009 | 2010 | 325 | 19.0 | $6,175.00 |
| Associate | Matthew R. Devine | 2004 | 2009 | 475 | 481.2 | $228,570.00 |
| Associate | Matthew R. Devine | 2004 | 2010 | 510 | 215.3 | $109,803.00 |
| Associate | Jennifer L. Dlugosz | 2006 | 2009 | 370 | 150.4 | $55,648.00 |
| Associate | Jennifer L. Dlugosz | 2006 | 2010 | 400 | 5.9 | $2,360.00 |
| Associate | Irina Y. Dmitrieva | 2003 | 2009 | 495 | 197.2 | $97,614.00 |

| Position | Name | Admitted to Practice | Fee Year | Rate[4] | Hours | Amount |
|---|---|---|---|---|---|---|
| Associate | Irina Y. Dmitrieva | 2003 | 2010 | 540 | 73.6 | $39,744.00 |
| Associate | Brandon J. Dodgen | 2008 | 2009 | 325 | 71.8 | $23,335.00 |
| Associate | Robert E. Downey | 2006 | 2009 | 400 | 33.4 | $13,360.00 |
| Associate | Joseph R. Dunn | 2009 | 2010 | 325 | 16.4 | $5,330.00 |
| Associate | Genevieve J. Essig | 2009 | 2010 | 325 | 18.3 | $5,947.50 |
| Associate | Daniel T. Fenske | 2008 | 2009 | 325 | 163.4 | $53,105.00 |
| Associate | Daniel T. Fenske | 2008 | 2010 | 370 | 212.3 | $78,551.00 |
| Associate | Kristina Filipovich | 2008 | 2009 | 370 | 409.1 | $151,367.00 |
| Associate | Kristina Filipovich | 2008 | 2010 | 400 | 258.7 | $103,480.00 |
| Associate | Grant R. Folland | 2008 | 2009 | 325 | 504.4 | $163,930.00 |
| Associate | Grant R. Folland | 2008 | 2010 | 370 | 220.8 | $81,696.00 |
| Associate | Ilya Fradkin | 2006 | 2009 | 425 | 703.3 | $298,902.50 |
| Associate | Ilya Fradkin | 2006 | 2010 | 445 | 275.6 | $122,642.00 |
| Associate | Anne M. Gardner | 2008 | 2009 | 325 | 208.6 | $67,795.00 |
| Associate | Michelle A. Groman | 2006 | 2009 | 435 | 445.0 | $193,575.00 |
| Associate | Michelle A. Groman | 2006 | 2010 | 490 | 96.1 | $47,089.00 |
| Associate | Gabriel A. Gutierrez | 2009 | 2010 | 325 | 12.8 | $4,160.00 |
| Associate | Drew R. Haase | 2009 | 2010 | 325 | 12.8 | $4,160.00 |
| Associate | Sarah E. Haddy | 2009 | 2010 | 325 | 4.3 | $1,397.50 |
| Associate | Sean C. Herring | 2005 | 2009 | 435 | 432.2 | $188,007.00 |
| Associate | Melissa M. Hinds | 2003 | 2009 | 495 | 60.5 | $29,947.50 |
| Associate | Hayley E. Horowitz | Not Yet Admitted | 2010 | 325 | 19.9 | $6,467.50 |
| Associate | Justin A. Houppert | 2007 | 2010 | 400 | 7.3 | $2,920.00 |
| Associate | Kaija K. Hupila | 2008 | 2009 | 325 | 375.9 | $122,167.50 |
| Associate | Kaija K. Hupila | 2008 | 2010 | 370 | 266.3 | $98,531.00 |
| Associate | David E. Hutchinson | 2009 | 2010 | 325 | 16.9 | $5,492.50 |
| Associate | Precious S. Jacobs | 2009 | 2009 | 325 | 21.1 | $6,857.50 |
| Associate | Precious S. Jacobs | 2009 | 2010 | 325 | 18.9 | $6,142.50 |
| Associate | Omar Jafri | 2008 | 2009 | 325 | 573.8 | $186,485.00 |
| Associate | Omar Jafri | 2008 | 2010 | 370 | 151.1 | $55,907.00 |
| Associate | Stacy S. Jakobe | 2003 | 2009 | 525 | 136.6 | $71,715.00 |
| Associate | Stacy S. Jakobe | 2003 | 2010 | 540 | 83.6 | $45,144.00 |
| Associate | Marc A. Katz | 2009 | 2010 | 325 | 12.6 | $4,095.00 |
| Associate | Michael J. Kelly | 2006 | 2010 | 445 | 77.3 | $34,398.50 |
| Associate | Andrew D. Kennedy | 2008 | 2009 | 325 | 404.2 | $131,365.00 |
| Associate | Andrew D. Kennedy | 2008 | 2010 | 370 | 197.7 | $73,149.00 |
| Associate | Travis A. Kennedy | 2009 | 2010 | 325 | 71.7 | $23,302.50 |

| Position | Name | Admitted to Practice | Fee Year | Rate[4] | Hours | Amount |
|---|---|---|---|---|---|---|
| Associate | Stephen Kang Kinslow | 2006 | 2009 | 400 | 409.4 | $163,760.00 |
| Associate | Gregory S. Knudsen | 2008 | 2009 | 325 | 252.9 | $82,192.50 |
| Associate | Gregory S. Knudsen | 2008 | 2010 | 370 | 76.1 | $28,157.00 |
| Associate | Andrew Kopelman | 2006 | 2009 | 425 | 702.3 | $298,477.50 |
| Associate | Andrew Kopelman | 2006 | 2010 | 445 | 246.0 | $109,470.00 |
| Associate | Matthew R. Kopp | 2008 | 2009 | 325 | 165.1 | $53,657.50 |
| Associate | Matthew R. Kopp | 2008 | 2010 | 370 | 8.5 | $3,145.00 |
| Associate | Rodney L. Lewis | 2005 | 2009 | 400 | 483.8 | $193,520.00 |
| Associate | Rodney L. Lewis | 2005 | 2010 | 445 | 309.2 | $137,594.00 |
| Associate | Elizabeth L. Liebschutz | 2008 | 2009 | 370 | 245.1 | $90,687.00 |
| Associate | Elizabeth L. Liebschutz | 2008 | 2010 | 400 | 79.6 | $31,840.00 |
| Associate | Mark A. Lightner | 2007 | 2009 | 370 | 543.6 | $201,132.00 |
| Associate | Mark A. Lightner | 2007 | 2010 | 400 | 262.3 | $104,920.00 |
| Associate | Matthew J. Mason | 2008 | 2009 | 325 | 437.4 | $142,155.00 |
| Associate | Matthew J. Mason | 2008 | 2010 | 370 | 118.7 | $43,919.00 |
| Associate | Asha V. Mathai | 2003 | 2009 | 400 | 50.9 | $20,360.00 |
| Associate | Alexander J. May | 2009 | 2010 | 325 | 19.2 | $6,240.00 |
| Associate | Douglas F. McMeyer | 2007 | 2010 | 370 | 10.4 | $3,848.00 |
| Associate | Sarah R. McNally | 2008 | 2009 | 325 | 548.3 | $178,197.50 |
| Associate | Sarah R. McNally | 2008 | 2010 | 370 | 247.1 | $91,427.00 |
| Associate | Christopher Meservy | 2008 | 2009 | 325 | 586.7 | $190,677.50 |
| Associate | Christopher Meservy | 2008 | 2010 | 370 | 182.8 | $67,636.00 |
| Associate | Deanne B. Millison | 2008 | 2009 | 325 | 353.7 | $114,952.50 |
| Associate | Deanne B. Millison | 2008 | 2010 | 370 | 160.3 | $59,311.00 |
| Associate | Andrew J. Olejnik | 2004 | 2009 | 475 | 325.3 | $154,517.50 |
| Associate | Andrew J. Olejnik | 2004 | 2010 | 510 | 198.8 | $101,388.00 |
| Associate | Andrea C. Otto-Classon | 2008 | 2009 | 325 | 437.5 | $142,187.50 |
| Associate | Andrea C. Otto-Classon | 2008 | 2010 | 370 | 198.6 | $73,482.00 |
| Associate | William E. Parker | 2007 | 2009 | 370 | 295.6 | $109,372.00 |
| Associate | William E. Parker | 2007 | 2010 | 400 | 38.2 | $15,280.00 |
| Associate | Brij B. Patnaik | 2009 | 2010 | 325 | 21.4 | $6,955.00 |
| Associate | Laura E. Pelanek | 2004 | 2009 | 475 | 493.6 | $234,460.00 |
| Associate | Laura E. Pelanek | 2004 | 2010 | 510 | 255.9 | $130,509.00 |
| Associate | Tarsha A. Phillibert | 2006 | 2009 | 400 | 685.9 | $274,360.00 |
| Associate | Tarsha A. Phillibert | 2006 | 2010 | 445 | 268.2 | $119,349.00 |
| Associate | Keith V. Porapaiboon | 2002 | 2009 | 525 | 472.8 | $248,220.00 |
| Associate | Keith V. Porapaiboon | 2002 | 2010 | 540 | 226.8 | $122,472.00 |
| Associate | John M. Power | 2008 | 2009 | 325 | 472.7 | $153,627.50 |

| Position | Name | Admitted to Practice | Fee Year | Rate[4] | Hours | Amount |
|---|---|---|---|---|---|---|
| Associate | John M. Power | 2008 | 2010 | 370 | 147.1 | $54,427.00 |
| Associate | Joshua Rafsky | 2005 | 2010 | 490 | 5.8 | $2,842.00 |
| Associate | Landon S. Raiford | 2008 | 2010 | 370 | 38.5 | $14,245.00 |
| Associate | Jonathan W. Riley | 2009 | 2010 | 325 | 18.7 | $6,077.50 |
| Associate | Adam C.G. Ringguth | 2008 | 2009 | 325 | 449.3 | $146,022.50 |
| Associate | Adam C.G. Ringguth | 2008 | 2010 | 370 | 98.5 | $36,445.00 |
| Associate | Aaron-Michael H. Sapp | 2008 | 2009 | 325 | 617.9 | $200,817.50 |
| Associate | Aaron-Michael H. Sapp | 2008 | 2010 | 370 | 263.7 | $97,569.00 |
| Associate | Shorge K. Sato | 2002 | 2009 | 495 | 559.2 | $276,804.00 |
| Associate | Shorge K. Sato | 2002 | 2010 | 540 | 170.3 | $91,962.00 |
| Associate | David P. Saunders | 2007 | 2010 | 400 | 9.7 | $3,880.00 |
| Associate | Trevor F. Schrage | 2008 | 2009 | 325 | 534.2 | $173,615.00 |
| Associate | Trevor F. Schrage | 2008 | 2010 | 370 | 186.6 | $69,042.00 |
| Associate | Eric J. Schwab | 2007 | 2009 | 370 | 450.9 | $166,833.00 |
| Associate | Eric J. Schwab | 2007 | 2010 | 400 | 143.1 | $57,240.00 |
| Associate | Anwar T. Shatat | 2006 | 2010 | 445 | 10.7 | $4,761.50 |
| Associate | Michele L. Slachetka | 2008 | 2009 | 325 | 156.3 | $50,797.50 |
| Associate | Michele L. Slachetka | 2008 | 2010 | 370 | 176.8 | $65,416.00 |
| Associate | Valery K. Slosman | 2008 | 2009 | 325 | 128.7 | $41,827.50 |
| Associate | Sarah F. Terman | 2008 | 2009 | 325 | 423.0 | $137,475.00 |
| Associate | Sarah F. Terman | 2008 | 2010 | 370 | 106.8 | $39,516.00 |
| Associate | Adam G. Unikowsky | 2008 | 2009 | 370 | 22.0 | $8,140.00 |
| Associate | Adam G. Unikowsky | 2008 | 2010 | 400 | 46.9 | $18,760.00 |
| Associate | Andrew W. Vail | 2003 | 2009 | 495 | 274.7 | $135,976.50 |
| Associate | Andrew W. Vail | 2003 | 2010 | 540 | 209.3 | $113,022.00 |
| Associate | Krishanti Vignarajah | 2009 | 2010 | 370 | 165.1 | $61,087.00 |
| Associate | Richard M. Wallace | 2008 | 2009 | 325 | 261.9 | $85,117.50 |
| Associate | Richard M. Wallace | 2008 | 2010 | 370 | 85.7 | $31,709.00 |
| Associate | William P. Wallenstein | 2006 | 2009 | 400 | 404.3 | $161,720.00 |
| Associate | William P. Wallenstein | 2006 | 2010 | 445 | 135.6 | $60,342.00 |
| Associate | Chelsea L. Warren | 2009 | 2010 | 325 | 68.3 | $22,197.50 |
| Associate | Erinn L. Wehrman | 2003 | 2009 | 495 | 88.0 | $43,560.00 |
| Associate | Daniel I. Weiner | 2006 | 2010 | 490 | 5.0 | $2,450.00 |
| Associate | Benjamin P. Wieck | 2006 | 2010 | 445 | 9.1 | $4,049.50 |
| Associate | Brian J. Wilson | 2007 | 2009 | 370 | 58.5 | $21,645.00 |
| Associate | Brian J. Wilson | 2007 | 2010 | 400 | 16.4 | $6,560.00 |
| Associate | Thomas M. Winegar | 2008 | 2009 | 325 | 596.8 | $193,960.00 |
| Associate | Thomas M. Winegar | 2008 | 2010 | 370 | 112.4 | $41,588.00 |

| Position | Name | Admitted to Practice | Fee Year | Rate[4] | Hours | Amount |
|---|---|---|---|---|---|---|
| Associate | Jacob P. Zipfel | 2008 | 2009 | 325 | 563.7 | $183,202.50 |
| Associate | Jacob P. Zipfel | 2008 | 2010 | 370 | 310.4 | $114,848.00 |
| **Associate Total** | | | | | **32,195.7** | **$12,392,976.00** |
| **Total Attorney Time** | | | | | **45,648.4** | **$21,301,399.00** |
| **Less 10% Reduction** | | | | | | **($2,130,139.90)** |
| **Total Attorney Time at Reduced Rate** | | | | | | **$19,171,259.10** |
| **Blended Hourly Rate for Attorneys** | | | | | | **$419.98** |

PARAPROFESSIONALS

| Position | Name | Fee Year | Rate[5] | Hours | Amount |
|---|---|---|---|---|---|
| Senior Paralegal | Michael H. Matlock | 2009 | 270 | 109.4 | $29,538.00 |
| Senior Paralegal | Michael H. Matlock | 2010 | 275 | 36.6 | $10,065.00 |
| Senior Paralegal | Shawn K. McGee | 2009 | 270 | 33.7 | $9,099.00 |
| Senior Paralegal | Shawn K. McGee | 2010 | 275 | 18.5 | $5,087.50 |
| Senior Paralegal | Cheryl L. Olson | 2009 | 270 | 1.9 | $513.00 |
| Senior Paralegal | Christopher R. Ward | 2009 | 255 | 607.6 | $154,938.00 |
| Senior Paralegal | Christopher R. Ward | 2010 | 255 | 301.1 | $76,780.50 |
| Technology Ass't | Daniel Biemer | 2009 | 275 | 44.5 | $12,237.50 |
| Technology Ass't | Kelly A. Laughran | 2009 | 275 | 13.6 | $3,740.00 |
| Technology Ass't | Kelly A. Laughran | 2010 | 275 | 11.5 | $3,162.50 |
| Technology Ass't | Lory I. Manheimer | 2009 | 275 | 462.0 | $127,050.00 |
| Technology Ass't | Lory I. Manheimer | 2010 | 275 | 196.9 | $54,147.50 |
| Technology Ass't | Zulaikha Master | 2009 | 275 | 276.9 | $76,147.50 |
| Technology Ass't | Zulaikha Master | 2010 | 275 | 132.9 | $36,547.50 |
| Technology Ass't | Robert R. Ohton, Jr. | 2009 | 275 | 14.0 | $3,850.00 |
| Paralegal | Lamia K. Azize | 2009 | 270 | 113.6 | $30,672.00 |
| Paralegal | Lamia K. Azize | 2010 | 270 | 115.5 | $31,185.00 |
| Paralegal | Wenette Belcher | 2009 | 255 | 266.4 | $67,932.00 |
| Paralegal | Wenette Belcher | 2010 | 255 | 190.4 | $48,552.00 |
| Paralegal | Jeanne C. Haske | 2009 | 255 | 13.4 | $3,417.00 |
| Paralegal | Jeanne C. Haske | 2010 | 255 | 49.6 | $12,648.00 |
| Paralegal | Micah B. Horan | 2009 | 270 | 152.2 | $41,094.00 |

---

[5] These rates do not reflect the 10% reduction in the standard hourly rates. The 10% reduction is applied to the Total Paraprofessional Time amount.

| Position | Name | Fee Year | Rate[5] | Hours | Amount |
|---|---|---|---|---|---|
| Paralegal | Micah B. Horan | 2010 | 270 | 41.6 | $11,232.00 |
| Paralegal | W. Michael Hughes | 2009 | 230 | 61.0 | $14,030.00 |
| Paralegal | W. Michael Hughes | 2010 | 230 | 61.6 | $14,168.00 |
| Paralegal | Cleopatra S. Murray | 2009 | 230 | 139.6 | $32,108.00 |
| Paralegal | Cleopatra S. Murray | 2010 | 230 | 52.1 | $11,983.00 |
| Paralegal | Jeffrey K. Phillips | 2009 | 230 | 122.0 | $28,060.00 |
| Paralegal | Jeffrey K. Phillips | 2010 | 230 | 190.9 | $43,907.00 |
| Paralegal | Aubrey L. Rettig | 2009 | 255 | 209.7 | $53,473.50 |
| Paralegal | Aubrey L. Rettig | 2010 | 255 | 165.6 | $42,228.00 |
| Paralegal | Shannon R. Roberts | 2009 | 220 | 121.8 | $26,796.00 |
| Paralegal | Shannon R. Roberts | 2010 | 220 | 83.1 | $18,282.00 |
| Paralegal | Mark R. Scholl | 2009 | 270 | 346.1 | $93,447.00 |
| Paralegal | Mark R. Scholl | 2010 | 270 | 168.9 | $45,603.00 |
| Paralegal | Julie H. Shaw | 2009 | 255 | 5.0 | $1,275.00 |
| Paralegal | Julie H. Shaw | 2010 | 255 | 124.1 | $31,645.50 |
| Project Assistant | Catherine L. Chu | 2010 | 160 | 49.6 | $7,936.00 |
| Project Assistant | Emily A. Flores | 2009 | 160 | 483.9 | $77,424.00 |
| Project Assistant | Emily A. Flores | 2010 | 160 | 240.0 | $38,400.00 |
| Project Assistant | Casey J. Gioielli | 2009 | 170 | 45.4 | $7,718.00 |
| Project Assistant | Casey J. Gioielli | 2010 | 170 | 19.9 | $3,383.00 |
| Project Assistant | Arjumand Hamid | 2009 | 160 | 4.0 | $640.00 |
| Project Assistant | Jonathan Hollis | 2009 | 160 | 19.9 | $3,184.00 |
| Project Assistant | Omar N. Khan | 2009 | 170 | 3.5 | $595.00 |
| Project Assistant | Yong Joon Lee | 2009 | 160 | 129.4 | $20,704.00 |
| Project Assistant | Yong Joon Lee | 2010 | 160 | 151.4 | $24,224.00 |
| Project Assistant | Alexander S. Malson | 2009 | 160 | 6.3 | $1,008.00 |
| Project Assistant | Alexander S. Malson | 2010 | 160 | 25.2 | $4,032.00 |
| Project Assistant | Marc A. Patterson | 2010 | 170 | 6.4 | $1,088.00 |
| Project Assistant | Gretchen J. Pinnick | 2009 | 160 | 195.6 | $31,296.00 |
| Project Assistant | Gretchen J. Pinnick | 2010 | 160 | 134.6 | $21,536.00 |
| Project Assistant | Panagiota Ramos | 2009 | 170 | 91.9 | $15,623.00 |
| Project Assistant | Panagiota Ramos | 2010 | 170 | 110.3 | $18,751.00 |
| Project Assistant | Alexander M. Righi | 2009 | 160 | 337.5 | $54,000.00 |
| Project Assistant | Alexander M. Righi | 2010 | 160 | 195.4 | $31,264.00 |
| Project Assistant | Jonathan W. Striegel | 2010 | 170 | 17.2 | $2,924.00 |
| Project Assistant | Adrienne P. Thacher | 2009 | 160 | 8.8 | $1,408.00 |
| Project Assistant | Adrienne P. Thacher | 2010 | 160 | 31.3 | $5,008.00 |
| Project Assistant | Kenneth S. Waldmann | 2009 | 170 | 298.8 | $50,796.00 |

| Position | Name | Fee Year | Rate[5] | Hours | Amount |
|---|---|---|---|---|---|
| Project Assistant | Kenneth S. Waldmann | 2010 | 170 | 122.0 | $20,740.00 |
| Project Assistant | Lauren E. Wang | 2009 | 160 | 129.5 | $20,720.00 |
| Project Assistant | Lauren E. Wang | 2010 | 160 | 40.4 | $6,464.00 |
| **Total Paraprofessional Time** | | | | **7,953.5** | **$1,777,507.50** |
| **Less 10% Reduction** | | | | | **$177,750.75** |
| **Total Paraprofessional Time at Reduced Rate** | | | | | **$1,599,756.75** |

| | |
|---|---|
| **Total Amount for Services Rendered (Attorneys and Paraprofessionals)** | **$23,078,906.50** |
| **Less 10% Reduction** | **($2,307,890.65)** |
| **Total Amount for Services Rendered, including 10% Reduction (Attorneys and Paraprofessionals)** | **$20,771,015.85** |
| **Less 50% Non-Working Travel Time** | **($166,602.60)** |
| **Total Amount of Fees Requested for Services Rendered (October 1, 2009 - January 31, 2010)** | **$20,604,413.25** |

x

**Hearing Date: To Be Determined**
**Objection Deadline: To Be Determined**

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                :

In re                             :        Chapter 11
                                :

LEHMAN BROTHERS HOLDINGS INC., et al.,  :        Case No. 08-13555 (JMP)
                                :

                      Debtors.      :        (Jointly Administered)
------------------------------------------------------------------------x

**FOURTH INTERIM FEE APPLICATION OF THE EXAMINER AND**
**JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION**
**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

**TO THE HONORABLE JAMES M PECK**
**UNITED STATES BANKRUPTCY JUDGE**

      Anton R. Valukas, the Examiner (the "Examiner") appointed for Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors") in the above-

captioned bankruptcy cases, and Jenner & Block LLP ("Jenner & Block"), counsel to the

Examiner, by this fourth interim fee application (the "Fourth Interim Application") pursuant to

sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seek (i) interim allowance and payment of reasonable compensation for actual and necessary professional services performed by the Examiner and Jenner & Block in the aggregate amount of $20,604,413.25 for the period from October 1, 2009 through and including January 31, 2010 (the "Compensation Period"); and (ii) reimbursement of actual, reasonable and necessary expenses in the aggregate amount of $3,014,481.99 incurred during the Compensation Period.

To aid this Court in analyzing the Fourth Interim Application, the Examiner and Jenner & Block have divided it into four parts. Part I provides a brief background of the Debtors' cases and the Examiner's appointment. Part II provides an overview of the Fourth Interim Application. Part III provides a description of the work performed by the Examiner and Jenner & Block during the Compensation Period, by category, as well as how the Examiner and Jenner & Block calculated this compensation request. Finally, Part IV explains why this compensation request should be allowed.

## I. Background

1.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its direct and indirect subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities

Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A

trustee appointed under SIPA (the "SIPA Trustee") is administering LBI's estate.

4.      On January 16, 2009, the Court entered an order (the "Examiner Order") directing

the appointment of an examiner, pursuant to 11 U.S.C. § 1104(c)(2), to investigate, *inter alia*,

various transfers and transactions by the Debtors and their affiliates, claims that certain Debtors

may have against LBHI, and the events that immediately preceded the commencement of the

LBHI chapter 11 case (collectively, the "Investigation").  Examiner Order at ¶ 2 [Docket No.

2569].  The Examiner Order also directed the examiner to "perform the duties specified in

sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court orders

otherwise."  Id. at ¶ 3.

5.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner

in the chapter 11 cases, subject to Court approval, and filed her notice of such appointment.

[Docket No. 2570].  On January 20, 2009, the U.S. Trustee filed her application for an Order of

this Court approving the appointment of Anton R. Valukas as examiner in the chapter 11 cases.

[Docket No. 2571].  On January 20, 2009, this Court entered an order approving the appointment

by the U.S. Trustee of Anton R. Valukas as Examiner (the "Examiner") in the chapter 11 cases.

[Docket No. 2583].  On January 23, 2009, the Examiner filed his Application to Employ Jenner

& Block LLP as Counsel to the Examiner.  [Docket No. 2627].  On February 11, 2009, this

Court entered the Order Authorizing the Examiner to Retain and Employ Jenner & Block LLP as his Counsel *nunc pro tunc* as of January 19, 2009.  [Docket No. 2803].[6]

6.      On February 13, 2009, the Examiner filed an application to retain Duff & Phelps, LLC as his financial advisor.  [Docket No. 2825].  The Court approved the application on February 25, 2009.  [Docket No. 2924].  On April 29, May 15, and June 30, the Examiner filed applications to retain contract attorneys to perform specific document review tasks.  [Docket Nos. 3457, 3582, 4239].[7]  The applications were approved by the Court on May 15, June 3, and July 16, respectively.  [Docket Nos. 3577, 2750, 4428].

7.      On June 25, 2009, the Court entered the Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals.  [Docket No. 4165].

8.      On February 8, 2010, the Examiner filed with the Court under seal the Report of Examiner Anton R. Valukas (the "Report"), pursuant to the Court's Order Authorizing the Examiner to File the Examiner's Report Under Seal.  [Docket No. 7024].  On March 11, 2010, the Examiner publicly filed a partially redacted version of the Report, [Docket No. 7531], and substituted an unredacted version of the Report with the Court under seal pursuant to the Bankruptcy Court's Order dated March 11, 2010.  [Docket No. 7530].  On April 14, 2010, the Examiner filed an unredacted version of Volume 5 of the Report.  [Docket No. 8307].

_____

[6] On May 28, 2009, November 6, 2009, and April 9, 2010, Jenner & Block filed supplemental declarations disclosing connections with certain creditors and other parties-in-interest.  [Docket Nos. 3676, 5752, 8198].

[7] On July 8, the Examiner filed 10 additional affidavits of disinterestedness in connection with his third application to retain contract attorneys.  [Docket No. 4296].

9.      On March 15, 2010, the Debtors filed the Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors.  [Docket No. 7572].  On April 14, 2010, the Debtors filed a revised Joint Chapter 11 Plan [Docket No. 8330] and a Disclosure Statement for Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code.  [Docket No. 8332].  The period during which the Debtors may solicit acceptances of the plan has been extended through May 17, 2010.  [Docket No. 4449].

## II.  Fourth Interim Application

10.     The Examiner and Jenner & Block have prepared this Fourth Interim Application in accordance with the Administrative Order Re: Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases dated June 20, 1991 (the "Original SDNY Guidelines"), the Administrative Order Re: Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases dated April 19, 1995 (the "Amended SDNY Guidelines," and together with the Original SDNY Guidelines, the "Local Guidelines"), and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 promulgated by the United States Department of Justice dated January 30, 1996 (the "UST Guidelines" and collectively with the Local Guidelines, the "Guidelines").  Pursuant to the Amended SDNY Guidelines, a certification regarding compliance with such guidelines is attached hereto as Exhibit A.

11.     The Examiner and Jenner & Block also have prepared their time and expense entries to comply with suggested guidelines proposed by the Fee Committee.[8] Jenner & Block is prepared to provide additional information to the Fee Committee with respect to any additional comments or questions the Fee Committee may have with respect to any disbursements or time entry descriptions for the period covered by this Fourth Interim Application.

12.     The Examiner and Jenner & Block seek interim allowance herein of reasonable compensation for actual and necessary professional services rendered by and to the Examiner during the Compensation Period, in the aggregate amount of $20,604,413.25 and for reimbursement of actual, reasonable and necessary expenses incurred during the Compensation Period in connection with the rendition of such services in the aggregate amount of $3,014,481.99.

13.     The fees sought by this Fourth Interim Application reflect an aggregate of 53,601.90 hours of attorney and paraprofessional time spent and recorded in performing services by and for the Examiner during the Compensation Period.  This aggregate amount does not include time that might be construed as duplicative or otherwise not beneficial to the Examiner's Investigation.  Of the aggregate time expended during the Compensation Period, 12,427.40 recorded hours were expended by partners, 32,195.70 recorded hours were expended by associates, 1,025.30 recorded hours were expended by of counsel or staff attorneys, and 7,953.50 recorded hours were expended by paraprofessionals.  During the Compensation Period, the Examiner's and Jenner & Block's hourly billing rates for attorneys working on these matters

---

[8] On May 26, 2009, the Court entered an Order Appointing a Fee Committee and Approving a Fee Application Protocol (the "Fee Committee Order") [Docket No. 3651].  On August 3, 2009, September 10, 2009, December 14, 2009, and March 10, 2010, the Fee Committee filed reports pertaining to the first, second, and third interim fee applications.  [Docket Nos. 4655, 5104, 6165, 7498].

ranged from $235.00 to $975.00 per hour before applying the agreed upon 10% rate reduction. Allowance of compensation in the amount requested would result in a blended hourly billing rate for attorneys of approximately $419.98.

14.     Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

15.     Pursuant to the Guidelines, annexed hereto as Exhibit B is a schedule setting forth all Jenner & Block professionals and paraprofessionals who have performed services for the Examiner during the Compensation Period for which the Examiner and Jenner & Block are seeking reimbursement, the position in which each such individual is employed by Jenner & Block, the hourly billing rate charged for services performed by such individual, the aggregate number of hours expended in this matter and fees billed therefore, and as to attorneys, the year in which the attorney was first licensed to practice law.

16.     Pursuant to the UST Guidelines, annexed hereto as Exhibit C is a summary by project matter of the fees generated by the services performed during the Compensation Period and, for each separate project matter, a list of each person providing services on the project, a statement of the number of hours spent, and the amount of compensation requested for each person on the project.

17.     Annexed hereto as Exhibit D is a schedule specifying the categories of expenses for which the Examiner and Jenner & Block are seeking reimbursement and the total amount for each such expense category; Exhibit D also includes a table that provides additional detail regarding each of the disbursement expenses for contract attorney wages during the Compensation Period.  Exhibit E contains a detailed list of all expenses for which the Examiner

and Jenner & Block seek reimbursement. This schedule has been adjusted for and does not

reflect certain expenses incurred by the Examiner and Jenner & Block for which it will not be

seeking reimbursement.[9]

18.     The Examiner and Jenner & Block maintain detailed records of the time spent by

all attorneys and paraprofessionals in connection with the representation of the Examiner.

Copies of redacted, detailed time records are annexed hereto as Exhibit F. Copies of unredacted

versions of these detailed time records have been submitted previously to the Chair of the Fee

Committee, under a confidentiality letter agreement, and to the Office of the United States

Trustee. During the course of the Investigation, the Examiner and Jenner & Block prepared and

submitted redacted versions of the detailed time entries in order to comply with the

confidentiality requirement of Paragraph 5 of the Examiner Order. Although the Examiner has

now filed his Report and the Report has become public in its totality, the Examiner has

cooperated and continues to cooperate with law enforcement authorities in their investigations.

Therefore, the scope of the Investigation continues to be confidential (except to the extent

---

[9] The total amount of expense reimbursement sought in this Fourth Interim Application is $656.24 less
than the amount of expense reimbursement sought by the Examiner and Jenner & Block in their
previously submitted monthly statements for October 2009 to January 2010. This difference represents
adjustments made to certain expense items to implement the Fee Committee's guidelines on expenses.

During the course of the Investigation, the Examiner and Jenner & Block redacted parts of some of the
expense entry descriptions in order to comply with Paragraph 5 of the Examiner Order, which states,
"Until the Examiner has filed his or her report, neither the Examiner nor the Examiner's representatives
or agents shall make any public disclosures concerning the performance of the Investigation or the
Examiner's duties...." Although the Examiner has now filed his Report and the Report has become public
in its totality, the Examiner has cooperated and continues to cooperate with law enforcement authorities in
their investigations. Therefore, the scope of the Investigation continues to be confidential (except to the
extent disclosures are made in the Report itself), which is why the Examiner and Jenner & Block are
submitting with this application a redacted version of the detailed expenses. Concurrently herewith, the
Examiner and Jenner & Block are providing the Chair of the Fee Committee and the U.S. Trustee with an
unredacted version of Exhibit E.

disclosures are made in the Report itself), which is why the Examiner and Jenner & Block are submitting with this application the redacted versions of the detailed time records.

19.    The fees charged by the Examiner and Jenner & Block in these cases reflect an agreed upon 10% reduction from standard hourly rates because of the significant public interest associated with the Examiner's duties and responsibilities.  The fees are otherwise billed in accordance with Jenner & Block's general existing billing rates and procedures in effect during the Compensation Period.  The rates the Examiner and Jenner & Block charge for the services rendered by its professionals and paraprofessionals to the Examiner are the rates charged by the Examiner and the firm for professional and paraprofessional services rendered in comparable matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in a competitive national legal market in cases other than cases under title 11.

20.    All of the services for which interim compensation is sought were rendered by or to the Examiner solely in furtherance of his duties and functions as Examiner and not on behalf of any individual creditor or other person.

21.    The Examiner and Jenner & Block have not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

22.    The Examiner and Jenner & Block have not shared, nor agreed to share (a) any compensation they have received or may receive with another party or person, other than with the members, counsel and associates of the firm, or (b) any compensation another person or party has received or may receive.  No promises have been received by the Examiner or Jenner &

Block as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

23.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Fourth Interim Application, the Examiner and Jenner & Block reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

### III.  Summary of Professional Compensation and Reimbursement of Expenses Requested

24.     As reported in the First Interim Fee Application, immediately following the Examiner's appointment, the Examiner[10] performed a wide variety of tasks in connection with the Investigation.  These included, among other things:  (a) assembling publicly available materials; (b) meeting and conferring with various parties to develop a work plan and to coordinate to avoid duplication of effort; (c) coordinating with agencies of the U.S. Government; (d) contacting examiners in other complex matters for assistance in developing an efficient work plan; (e) entering into stipulations with the Debtors and the Creditors' Committee to obtain access to documents and other materials; (f) filing a Rule 2004 motion that requested omnibus authority to issue subpoenas, including document requests, upon witnesses;[11] and (g) establishing a depository to collect documents, transcripts, and other materials.

25.     As reported in the Second Interim Fee Application, the Examiner continued the Investigation by:  (a) finalizing and transmitting the Examiner's Preliminary Work Plan to the

---

[10] Except as otherwise noted, references to steps taken by the Examiner include both the Examiner and Jenner & Block.

[11] The Court granted the 2004 Motion on February 11, 2009.  [Docket No. 2804].

Court and parties-in-interest; (b) meeting with the Examiner's financial advisor, Duff & Phelps,[12] to coordinate the Investigation; (c) conferring with the Debtors, the Creditors' Committee, and other parties involved in the case to eliminate duplication and to make the work product being generated useful to other parties in the future; (d) meeting with professionals at Alvarez & Marsal to ascertain what data and documents were available, how the data and documents could be accessed, and what analysis had already been performed; (e) entering into stipulations with various parties; and (f) communicating with the Office of the United States Trustee, the SIPA Trustee, and agencies of the U.S. Government.

26.    The Examiner also:  (a) collaborated with the Debtors and other parties involved in the Investigation to begin the process of collecting, managing, and reviewing documents; (b) obtained authority from the Court to retain contract attorneys to perform document review; (c) commenced witness interviews in early February;[13] (d) held a weekly meeting with team leaders to coordinate the investigation, maximize efficiency, avoid duplication, and draw on the expertise and experience of his professionals; and (e) prepared factual and legal memoranda as information was discovered during the course of the Investigation.

27.    As reported in the Third Interim Fee Application, many of these activities continued from June through September 2009 as the Examiner's Investigation advanced. Specifically, the Examiner:  (a) remained in communication with parties involved in the case, including the U.S. Government, to eliminate duplication of effort, to make the work product being generated useful to other parties in the future, and to obtain documents relevant to the

_____

[12] On February 13, 2009, the Examiner filed an application to retain Duff & Phelps, LLC as his financial advisor.  [Docket No. 2825].  The Court approved the application on February 25, 2009.  [Docket No. 2924].

[13] From February 2009 through May 2009, the Examiner conducted 69 interviews.

Investigation; (b) collected and reviewed millions of pages of documents; (c) entered into court-approved confidentiality stipulations regarding documents with several parties; and (d) managed "claw-back" requests and other privilege related issues arising in connection with the Examiner's document review.

28.    Also as reported in the Third Interim Fee Application, the Examiner: (a) conducted 123 witness interviews;[14] (b) prepared outlines and work plans for drafting sections of the Examiner's final Report; (c) began drafting sections of the final Report; (d) worked with Duff & Phelps to identify analyses necessary for the Report; (e) identified public domain materials that related to the Investigation; (f) tracked witness, interview, and document information so as to coordinate among team members; (g) conducted legal research on potential claims to be analyzed as required by the Examiner Order; and (h) continued to hold a weekly team leaders meeting to coordinate the Investigation.

29.    During the Compensation Period, many of these activities continued as the Examiner completed his Investigation and prepared his Report which was filed with the Court under seal on February 8, 2010.  On March 11, 2010, the Examiner publicly filed a partially redacted version of the Report [Docket No. 7531], and on April 14, 2010, the Examiner filed an unredacted version of Volume 5 of the Report [Docket No. 8307].

30.    Between October 2009 and January 2010, the Examiner and his professionals conducted 151 additional witness interviews for a total of 317 interviews during the course of the Investigation.  As a general matter, witnesses cooperated in making arrangements for their interviews, and the Examiner was able to schedule the interviews, in person or telephonically,

---

[14] These numbers include depositions taken by other parties which the Examiner participated in or attended.

without much delay.  In a limited number of circumstances, the Examiner was required to serve

parties with a subpoena before agreeing upon an interview date and time.  During this period, the

Examiner continued to track witness and interview information so as to coordinate interviews

conducted by team members.

31.    While preparing for, conducting, and summarizing these interviews, the Examiner

continued to pursue, collect, and review documents, including public domain materials that

related to the Investigation.  During the course of the Investigation, the Examiner collected over

five million documents from the Debtors and other entities, individuals, and agencies.[15]

Although time did not permit the review of every document, the Examiner reviewed and

analyzed approximately 93% of those documents, constituting more than 34 million pages.  The

Examiner continued to use contract attorneys to review the vast majority of these documents,

thereby saving the estate tens of millions of dollars over the fees that might have been incurred

using usual law firm rates.  Additional detail regarding the document collection and review

process can be found in Appendix 5 of Volume 7 of the Examiner's Report.  [Docket No. 7531].

32.    During the Compensation Period, the Examiner also entered into additional

confidentiality stipulations regarding documents with the following parties:  the Office of Thrift

Supervision,[16] the Board of Governors of the Federal Reserve System,[17] Goldman Sachs & Co.,[18]

---

[15] As noted in the Examiner's previous interim fee applications, these documents are stored and were
reviewed in two document management platforms:  Stratify and Case Logistix.  Stratify is a secure, web-
based, electronic discovery and document management system that was selected by the Debtors'
professionals for use in these cases.  Case Logistix is a document management and review platform used
by the Examiner to organize, search, analyze, and review documents received from various third-parties.

[16] The Examiner-Office of Thrift Supervision stipulation was filed October 5, 2009 [Docket No. 5338]
and approved by the Court on October 16, 2009 [Docket No. 5545].

[17] The Examiner-Federal Reserve System stipulation was filed October 6, 2009 [Docket No. 5354] and
approved by the Court on November 5, 2009 [Docket No. 5725].

Deutsche Bank Securities, Inc.,[19] the United States Department of the Treasury,[20] ABN AMRO Inc.,[21] the Bank of New York Mellon Corporation,[22] CME Group Inc.,[23] and Credit Suisse Securities (USA) LLC.[24]   In other instances, third parties agreed to produce documents to the Examiner without entering into a confidentiality stipulation.   During this Compensation Period, the Examiner continued to (a) respond to requests from parties, pursuant to the provision of the relevant stipulation, to "claw-back" previously produced documents on the basis of privilege, and (b) manage other privilege related issues arising in connection with the Examiner's document review.

33.     In addition to interviewing witnesses and analyzing documents, during the Compensation Period, the Examiner continued to analyze the evidence uncovered during the Investigation, to draft sections of the Report, to work with Duff & Phelps to identify analyses necessary for the Report, and to conduct legal research on potential claims to be analyzed as required by the Examiner Order.   In December and January, the Examiner began finalizing sections of the Report and integrating the analyses across the different parts of the Investigation. Given the breadth of the Investigation, the drafting process was complex and required extensive

---

[18] The Examiner-Goldman Sachs stipulation was filed October 7, 2009 [Docket No. 5393] and approved by the Court on October 16, 2009 [Docket No. 5541].

[19] The Examiner-Deutsche Bank stipulation was filed November 5, 2009 [Docket No. 5726] and approved by the Court on November 23, 2009 [Docket No. 5915].

[20] The Examiner-U.S. Treasury stipulation was filed November 5, 2009 [Docket No. 5727] and approved by the Court on November 23, 2009 [Docket No. 5909].

[21] The Examiner-ABN AMRO stipulation was filed November 10, 2009 [Docket No. 5727] and approved by the Court on November 23, 2009 [Docket No. 5905].

[22] The Examiner-BNYM stipulation was filed November 17, 2009 [Docket No. 5876] and approved by the Court on December 3, 2009 [Docket No. 6039].

[23] The Examiner-CME Group stipulation was filed December 28, 2009 [Docket No. 6385] and approved by the Court on January 13, 2010 [Docket No. 6641].

[24] The Examiner-Credit Suisse stipulation was filed January 6, 2010 [Docket No. 6527] and approved by the Court on January 15, 2010 [Docket No. 6691].

coordination among team members to prepare the final version of the Report.  In January, the

Examiner and his professionals finalized the substance of the Report and began a final review

and editing process which included cite-checking documents cited in the Report, proofreading

the Report's text, and implementing drafting protocols to ensure consistency throughout the

2,200 page Report.  As noted above, the Examiner filed the Report under seal with the Court on

February 8, 2010, publicly filed a partially redacted version of the Report on March 11, 2010,

and filed an unredacted version of Volume 5 of the Report on April 14, 2010.

34.    Throughout the entire Investigation and continuing during the Compensation

Period, the Examiner:  (a) participated in weekly calls with agencies of the U.S. Government to

exchange information that those agencies felt necessary to have exchanged; (b) met with the

Office of the United States Trustee to apprise that office of the status of the Investigation, further

resources to be utilized, and anticipated timetable for completion of the Investigation; and (c)

coordinated with the SIPA Trustee to avoid duplication and to share information regarding

interviews that had been completed and key documents that had been identified.  The Examiner

also held regular meetings with his team leaders to coordinate the Investigation and to maximize

efficiency.

## A.    Specific Project Matters

35.    As noted above, Exhibit C is a summary by project matter of the fees generated

during the Compensation Period.  The following are descriptions of the project matters and their

necessity and benefit to the estate.  The descriptions include a statement of the aggregate number

of hours spent and fees charged for each matter after applying the 10% reduction.  The persons

providing services on each project matter are listed on Exhibit C.

B.    **Case Administration**

36.    This matter relates to work performed in maintaining and updating an internal website (SharePoint) to serve as a depository of documents, correspondence, and information, including calendar, contact, and witness information, for all attorneys and paraprofessionals working on the case.  This matter also includes time spent (i) preparing a supplemental declaration in support of the Jenner & Block's retention as counsel to the Examiner, and (ii) in connection with a weekly paraprofessional coordination meeting.

37.    During the Compensation Period, Jenner & Block expended 140.3 hours, at an aggregate charge of $31,184.55, on matters relating to case administration.

C.    **Examiner**

38.    This matter includes all the Examiner's time spent performing his duties under the Examiner Order and Bankruptcy Code during the Compensation Period, including working on and finalizing various sections of the Report; communicating with various parties and agencies of the U.S. Government regarding the Investigation; conferring with members of his investigatory team regarding their progress, timelines, findings, and sections of the Examiner's Report; and reviewing and analyzing key documents, interview summaries, and information prepared and identified by his professionals.[25]  The Examiner also prepared for and interviewed key witnesses during the Compensation Period.

39.    During the Compensation Period, the Examiner expended 502.6 hours, at an aggregate charge of $426,609.00, on matters relating to performing his duties as Examiner and conducting the Investigation.

---

[25] The Examiner's non-working travel time is not included in this matter, but is billed under "Non-Working Travel Time" so that the 50% reduction could be applied to such time.

16

### D.    Court Hearings

40.    This matter includes all time spent by Jenner & Block attorneys in attending court hearings regarding matters related to the Investigation, including the process for finalizing and submitting the Examiner's Report, a presentation by the Debtors regarding the state of the estate, parties' motions regarding the Barclays sale, summary judgment hearings in the Bank of America adversary proceeding, SIPA proceedings on the claims process and account transfers, and the Examiner's and Jenner & Block's Third Interim Fee Application.

41.    During the Compensation Period, Jenner & Block expended 18.3 hours, at an aggregate charge of $9,299.25, attending Court hearings.

### E.    Report Drafting

42.    This matter includes all time spent by Jenner & Block attorneys and paraprofessionals drafting sections of the Examiner's Report and working on tasks related to finalizing the Report.  Tasks in this matter include (i) drafting specific sections of the Report that were not specific to one of the investigatory topics, for example, the introduction, chronology, table of key individuals, glossary, section on government involvement, bibliography, table of witnesses, and legal appendix; (ii) reviewing and commenting on proof outlines and sections of the Report to integrate analyses; (iii) meetings with team members to discuss Report integration, Report preparation logistics, and final analyses; (iv) establishing and implementing drafting protocols, formatting consistency, and naming conventions; (v) proofreading and cite-checking final versions of the Report; and (vi) indexing, logging, and bates labeling documents cited in the Report.

43.    During the Compensation Period, Jenner & Block expended 5,367.9 hours, at an aggregate charge of $2,313,253.35, on matters relating to Report drafting.

17

### F.  Governance and Fiduciary Duty Issues

44.    The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether there are colorable claims for breach of fiduciary duties and/or aiding or abetting any such breaches against the officers and directors of LBCC and/or other Debtors arising in connection with the financial distress of the Lehman enterprise prior to the commencement of the LBHI chapter 11 case on September 15, 2008; and

- The events that occurred from September 4, 2008 through September 15, 2008 or prior thereto that may have resulted in commencement of the LBHI chapter 11 case.

Examiner Order, ¶ 2 (fifth and tenth bullets).  The Examiner Order also required the Examiner to "perform the duties specified in sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court orders otherwise."  Examiner Order, ¶ 3.

45.    During the Compensation Period, attorneys who were assigned to these elements of the Investigation (i) revised and updated sub-topic work plans for investigating whether there are colorable claims for breaches of fiduciary duties and the events leading up to the commencement of the LBHI chapter 11 case, (ii) reviewed and analyzed extensive documents and materials regarding these issues, (iii) prepared for and conducted witness interviews, (iv) continued to identify potential witnesses with information regarding these elements of the Investigation, (v) worked with the Examiner's financial advisors to conduct necessary analyses and data review, (vi) researched relevant case law, and (vii) drafted sections of the Examiner's Report on these elements.  Sub-topics investigated by members of this investigatory team[26] included, *inter alia*:  risk management, valuation, residential mortgage origination and securitization, commercial real estate investment and financing, leveraged loans, hedging, liquidity and capital adequacy, survival strategies, and the use of an accounting device known

---

[26] In the detailed time entries attached hereto as Exhibit F, use of the term "Team 3" refers to the team assigned to these elements of the Investigation.

within Lehman as Repo 105.[27]  Inquiries into each of these sub-topics were focused on investigating whether there are colorable claims for breaches of fiduciary duties prior to the prior to the commencement of the LBHI chapter 11 case on September 15, 2008, and what were the events that may have resulted in the commencement of the LBHI chapter 11 case.

46.    Jenner & Block expended 17,216.5 hours, at an aggregate charge of $6,560,439.75, on investigating possible colorable claims with respect to the governance and fiduciary duty elements of the Investigation.

### G.    Intercompany Transfers

47.    The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether LBCC or any other entity that currently is an LBHI chapter 11 debtor subsidiary or affiliate ("LBHI Affiliate(s)") has any administrative claims against LBHI resulting from LBHI's cash sweeps of cash balances, if any, from September 15, 2008, the commencement date of LBHI's chapter 11 case, through the date that such applicable LBHI affiliate commenced its chapter 11 case;

- All voluntary and involuntary transfers to, and transactions with, affiliates, insiders and creditors of LBCC or its affiliates, in respect of foreign exchange transactions and other assets that were in the possession or control of LBHI Affiliates at any time commencing on September 15, 2008 the day that each LBHI Affiliate commenced its chapter 11 case;

- Whether any LBHI Affiliate has colorable claims against LBHI for potentially insider preferences arising under the Bankruptcy Code or state law;

- Whether any LBHI Affiliate has colorable claims against LBHI or any other entities for potentially voidable transfers or incurrences of debt, under the Bankruptcy Code or otherwise applicable law; and

- The inter-company accounts and transfers among LBHI and its direct and indirect subsidiaries, including but not limited to:  LBI, LBIE, Lehman Brothers Special Finance and LBCC, during the 30-day period preceding the commencement of the chapter 11 cases by each debtor on September 15, 2008 or thereafter or such longer period as the Examiner deems relevant to the Investigation.

---

[27] Time entries associated with the investigation of Lehman Brothers' use of Repo 105 are included in this matter as well as the matter relating to intercompany transfers.

Examiner Order, ¶ 2 (first, second, third, fourth, and seventh bullets).

48.     During the Compensation Period, attorneys who were assigned to these elements of the Investigation (i) revised and updated sub-topic work plans for investigating intercompany transfers, the Debtors' cash management system, and potentially avoidable transfers, (ii) reviewed and analyzed extensive documents and materials regarding these issues, (iii) prepared for and conducted witness interviews, (iv) continued to identify potential witnesses with information regarding these elements of the Investigation, (v) researched relevant case law, and (vi) drafted sections of the Examiner's Report on these elements.  Members of this investigatory team[28] worked closely with the Examiner's financial advisors to analyze the relevant transactions to be investigated, conferred on a regular basis with professionals at Alvarez & Marsal regarding the availability of data necessary to identify and analyze these transactions, developed an understanding of the cash management system and internal accounting procedures, reviewed key financial statements, investigated corporate information regarding the LBHI Affiliates, and analyzed Lehman's solvency and capital adequacy by reviewing Lehman's asset composition, liquidity and capitalization, and funding sources, among other things.

49.     Jenner & Block expended 12,124.0 hours, at an aggregate charge of $4,810,217.40, on matters relating to the investigation of intercompany transfers.

### H.     Barclays Transactions

50.     The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether assets of any LBHI Affiliates (other than Lehman Brothers, Inc.) were transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was approved by order of the Bankruptcy Court entered September 20, 2008, and whether consequences to any LBHI Affiliate as a result of the consummation of the

---

[28] In the detailed time entries attached hereto as Exhibit F, use of the term "Team 2" refers to the team assigned to these elements of the Investigation.

transaction created colorable causes of action that inure to the benefit of the creditors of such LBHI subsidiary or affiliate; and

- The transfer of the capital stock of certain subsidiaries of LBI on or about September 19, 2008 to Lehman ALI Inc.

Examiner Order, ¶ 2 (sixth and ninth bullets).

51.    During the Compensation Period, attorneys who were assigned to these elements of the Investigation (i) revised and updated a work plan for investigating the identified the questions set forth in the Examiner Order regarding the Barclays sale, (ii) reviewed and analyzed extensive documents and materials regarding these issues, (iii) prepared for and conducted witness interviews, (iv) continued to identify potential witnesses with information regarding these elements of the Investigation, (v) worked with the Examiner's financial advisors to conduct necessary analyses and data review, (vi) researched relevant case law, and (vii) began drafting sections of the Examiner's Report on these elements.  Members of this investigatory team[29] investigated the factual predicate of the Barclays sale to address whether any LBHI Affiliate has a colorable cause of action as a result of that transaction.  The Investigation included, *inter alia*, an analysis of the assets and liabilities transferred to Barclays, the circumstances of the sale, available alternatives to the sale, and the transfer of 25 LBI subsidiaries to Lehman ALI just before LBI filed bankruptcy.

52.    Jenner & Block expended 3,647.8 hours, at an aggregate charge of $1,527,375.15 on investigations of whether assets of any LBHI Affiliate were transferred to Barclays, whether the Barclays sale created colorable causes of action that inure to the benefit of the creditors of

_____

[29] In the detailed time entries attached hereto as <u>Exhibit F</u>, use of the term "Team 5" refers to the team assigned to these elements of the Investigation.

such LBHI subsidiary or affiliate, and the facts surrounding the transfer of the capital stock of

certain subsidiaries of LBI on or about September 19, 2008 to Lehman ALI Inc.

## I.    Bank and Other Third-Party Transactions

53.    The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether any LBHI Affiliate has colorable claims against LBHI or any other entities for potentially voidable transfers or incurrences of debt, under the Bankruptcy Code or otherwise applicable law; and

- The transactions and transfers, including but not limited to the pledging or granting of collateral security interest among the debtors and the prechapter 11 lenders and/or financial participants including but not limited to, JPMorgan Chase, Citigroup, Inc., Bank of America, the Federal Reserve Bank of New York and others.

Examiner Order, ¶ 2 (fourth and eighth bullets).

54.    During the Compensation Period, attorneys who were assigned to these elements

of the Investigation (i) revised and updated sub-topic work plans for investigating bank and third

party transactions, (ii) reviewed and analyzed extensive documents and materials regarding these

issues, (iii) prepared for and conducted witness interviews, (iv) identified potential witnesses

with information regarding these elements of the Investigation, (v) worked with the Examiner's

financial advisors to conduct necessary analyses and data review, (vi) researched relevant case

law, and (vii) began drafting sections of the Examiner's Report on these elements.  Members of

this investigatory team[30] worked closely with Alvarez & Marsal to identify the relevant

transactions and documents in the Debtors' possession, communicated with other parties'

professionals regarding potential claims, and worked with representatives of JPMorgan Chase,

Citigroup, the Federal Reserve Bank of New York, and HSBC to obtain relevant documents and

to schedule witness interviews.

---

[30] In the detailed time entries attached hereto as Exhibit F, use of the term "Team 4" refers to the team assigned to these elements of the Investigation.

55.    Jenner & Block expended 5,839.4 hours, at an aggregate charge of $2,419,869.15 on investigations of other third-party transactions.

## J.    General Bankruptcy Matters and Research

56.    This matter relates to general bankruptcy matters and research in support of the Examiner's Investigation.  Tasks in this matter included monitoring the LBHI bankruptcy docket for pleadings and documents relevant to the Investigation, tracking adversary proceedings filed in the LBHI bankruptcy cases, conducting various legal research related to potential claims being investigated by the Examiner, filing and serving various documents on behalf of the Examiner, and preparing to file the Examiner's Report with the Court.

57.    During the Compensation Period, Jenner & Block expended 418.7 hours, at an aggregate charge of $140,954.40, on such matters.

## K.    Communications and Meetings with Parties in Interest

58.    In the Examiner Order, the Court directed the Debtors, the Debtors' affiliates and subsidiaries, the Creditors' Committee, the SIPA Trustee, and their respective representatives "to cooperate with the Examiner in conjunction with the performance of any of the Examiner's duties and the Investigation" and "to coordinate with the Examiner to avoid unnecessary interference with, or duplication of, the Investigation."  Examiner Order, ¶ 4.  The Court also ordered the Examiner to "cooperate fully with any governmental agencies" and to "follow a protocol to be established with the governmental agencies for the sharing of information…."  Examiner Order, ¶ 8.

59.    During the Compensation Period, the Examiner conferred with various parties in interest and remained in close communication with the U.S. Government, the Office of the United States Trustee, and the SIPA Trustee and his professionals.  Time entries in this matter cover communications, meetings, and preparations for meetings with these and other parties.

60.    During the Compensation Period, Jenner & Block expended 334.7 hours, at an aggregate charge of $101,661.20 on matters described in this category.

### L.    Non-Working Travel Time

61.    This matter includes time entries related to non-working travel time spent by the Examiner and Jenner & Block attorneys to participate in more than 150 interviews with witnesses and professionals in these cases during the Compensation Period, to review certain documents, and to confer with various parties in interest.

62.    During the Compensation Period, the Examiner and Jenner & Block expended 759.6 hours, at an aggregate charge of $333,205.20 for non-working traveling time.  However, the Examiner and Jenner & Block are voluntarily reducing their bill for these fees and are seeking compensation only for one-half of these fees, or $166,602.60.

### M.    Document Management and Review

63.    A critical piece of the Examiner's Investigation related to the collection and processing of a vast volume of documents and information that was in the possession of various parties in interest.  Time entries in this matter relate to the management and review of these documents and information, including conferring with Alvarez & Marsal and the Debtors regarding the available data systems, entering into stipulations with various parties regarding the use of data and documents, technically processing documents for review by attorneys, tracking documents requested and received, and responding to privilege and claw back requests from parties.

64.    Jenner & Block utilized two document management systems, Stratify and Case Logistix, to review and analyze documents produced by the Debtors and by third-parties, respectively.  As the Investigation unfolded and the Examiner began receiving documents from various parties, it became clear that additional document reviewers would be necessary.  As

noted above, the Examiner obtained Court approval to retain up to 80 contract attorneys to perform specific document review. During the document review process, certain Jenner & Block attorneys and paraprofessionals interacted with the contract attorneys on a regular basis to answer questions and assign documents to be reviewed and periodically performed quality control of the document review and tagging process being conducted by the contract attorneys. Time associated with the management of the use of contract attorneys is reported in this matter.[31]

65.    Also included in this matter is time spent by Jenner & Block attorneys and paraprofessionals (i) reviewing case background materials prepared by the Examiner and team leaders to educate new team members on the scope and nature of the Investigation; (ii) preparing a case chronology to track the timeline of key events; (iii) researching relevant documents from the public domain, (iv) reviewing documents that relate to more than one of the categories of topics to be investigated by the Examiner; (v) pulling and logging documents cited in the Examiner's Report; and (vi) drafting sections of the Examiner's Report regarding the document review and management process.

66.    During the Compensation Period, Jenner & Block expended 4,583.4 hours, at an aggregate charge of $1,135,944.00, with respect to document and data management and review.

**N.    Billing and Fee Applications**

67.    This matter relates to the preparation of monthly fee statements and fee applications. During the Compensation Period, Jenner & Block reviewed and edited time entry descriptions and expense entries to comply with the Guidelines and the Fee Committee's reports.

---

[31] The actual expenses incurred by Jenner & Block for work performed by the contract attorneys are included in the list of disbursements.

Jenner & Block also redacted the time and expense entries to preserve the confidentiality of the Investigation.

68.     During the Compensation Period, Jenner & Block expended 546.9 hours, at an aggregate charge of $184,691.70, on billing and fee application matters.  This total amounts to 0.89% of the fees requested for the Compensation Period.

### O.     Consultation with Financial Advisors

69.     In order to carry out his duties and responsibilities under the Bankruptcy Code and the Examiner Order, shortly after his appointment, the Examiner determined that he would need the assistance of a financial advisor who had extensive experience and expertise in complex accounting and bankruptcy investigations.  After conducting several interviews with potential candidates, in early February 2009, the Examiner selected Duff & Phelps as his financial advisor, subject to Court approval.  This matter includes time spent by Jenner & Block conferring with Duff & Phelps professionals regarding work plans and draft sections of the Examiner's Report, documents to request from parties, witness interviews, and analyses of key financial issues in the Investigation which cut across multiple subject matters of the Investigation.

70.     During the Compensation Period, Jenner & Block expended 48.4 hours, at an aggregate charge of $29,034.00, on matters relating to consultation with Duff & Phelps.[32]

### P.     Witness Interviews

71.     Time entries in this matter relate to (i) tracking interviews conducted and information of potential witnesses in the Investigation; (ii) preparing for and conducting witness interviews, to the extent that such entries are not associated with a single investigatory subject

_____

[32] Where communications with Duff & Phelps professionals related substantially to one of the elements of the Investigation, the time entries were recorded in the project matter to which that element was assigned.

matter;[33] (iii) maintaining witness files based on documents identified by the Examiner's professionals; (iv) drafting and reviewing summary interview memoranda; and (v) researching and analyzing publicly available information regarding certain witnesses.

72.    During the Compensation Period, Jenner & Block expended 1,651.6 hours, at an aggregate charge of $580,615.65, on matters relating to witness interviews.[34]

Q.    **Investigation Planning and Coordination**

73.    In appointing the Examiner, the Court expressed a strong interest in ensuring that the Investigation avoided replication of efforts and duplication of services. To the extent that Jenner & Block communicated and met with external parties to achieve this goal, such time is tracked in the matter for communications and meetings with parties in interest or, if the communications or meetings relate to a specific element of the Investigation, then to the relevant matter. However, due to the breadth of the Investigation, the number of parties and entities involved, the volume of documents and data to be reviewed and analyzed, and the time frame for completing the Investigation, the Examiner and his team at Jenner & Block routinely communicated and coordinated internally regarding the scope of the Investigation, documents and data to request, witnesses to interview, research to be conducted which was relevant to multiple investigatory subject matters, and integration of the Examiner's Report. Accordingly, time entries for such planning and coordination to avoid the duplication of work and to conduct an expedient yet thorough investigation are included in this matter.

_____

[33] As noted above, during the Compensation Period, the Examiner and his professionals conducted 151 witness interviews.

[34] Again, where tasks relating to witness interviews related substantially to one of the elements of the Investigation, the time entries were recorded in the project matter to which that element was assigned.

74.     During the Compensation Period, Jenner & Block expended 366.3 hours, at an aggregate charge of $136,108.35, on matters relating to investigation planning and coordination.

### R.     U.K. Matters

75.     This matter relates to issues that arose during the course of the Examiner's Investigation which involved questions of U.K. law, specifically with respect to Repo 105 transactions engaged in by Lehman Brothers and transactions between Lehman Brothers and HSBC.  Tasks in this matter include communications, document review, and legal analysis by an attorney who is of counsel at Jenner & Block and who lives in the United Kingdom.

76.     During the Compensation Period, Jenner & Block expended 35.5 hours, at an aggregate charge of $29,553.75, on matters relating to U.K. law.

## IV.  The Requested Compensation Should Be Allowed

77.     The foregoing professional services performed by the Examiner and Jenner & Block were necessary and appropriate to the Examiner's administration of his duties in the above-referenced chapter 11 cases and were in the best interests of the Examiner, the Debtors' estates, and other parties in interest.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.  Jenner & Block has taken significant efforts to ensure that the professional services were performed expeditiously, in an efficient manner, and without duplication of effort.

78.     In preparing this Fourth Interim Application, the Examiner and Jenner & Block calculated the amount of time spent by each attorney and paraprofessional in performing actual and necessary legal services for the Examiner and the Investigation.  That data came directly from computerized records that are kept for each Jenner & Block client.  Individual time entries are maintained on written daily logs, personal computer hard drives or the firm's central computer network.  All time entries and expenses are uploaded into the billing system, which

then produces draft client billing memoranda and invoices.  Jenner & Block attorneys have

reviewed and edited the draft invoices and billing memoranda for errors prior to their

submission.

79.    The rates used in this Fourth Interim Application are the customary and usual

rates which the Examiner and Jenner & Block charge clients on matters of this type, subject to

the 10% reduction in standard hourly rates to which the Examiner and Jenner & Block have

agreed because of the significant public interest associated with the Examiner's duties and

responsibilities.  In addition, the disbursements for which the Examiner and Jenner & Block seek

reimbursement are the customary and usual expenses for which the Examiner and Jenner &

Block seek reimbursement from their clients.  In 2009, Jenner & Block charged 9 cents per page

for duplicating; in 2010, the cost per page for duplicating increased to 10 cents per page.[35]

Jenner & Block does not charge its clients for facsimiles, domestic and long distance telephone

(other than while traveling), and certain overtime expenses, and takes those expenses into

account in its overhead.  Jenner & Block does not include charges for postage, messenger

services, duplicating and computerized legal research in its overhead because it is fairer to clients

who use less of these services to have these expenses billed separately.  According to its outside

auditors these charges fairly approximate the firm's actual costs and do not result in undue

revenue for the firm.  The firm's hourly rates used for this Fourth Interim Application do not

compensate the firm for such expenses.

80.    Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Court's

_____

[35] In January 2010, due to a technological error, the increased cost was not applied to network printing
charges, which Jenner & Block continued to bill, to the benefit of the estate, at 9 cents per page.

29

award of such compensation. 11 U.S.C. § 331.  Section 330 provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11

U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation

and reimbursement:

> In determining the amount of reasonable compensation to be awarded to an
> Examiner, trustee under Chapter 11, or professional person, the court should
> consider the nature, the extent, and the value of such services, taking into account
> all relevant factors, including
>
> > (A)    the time spent on such services;
> >
> > (B)    the rates charged for such services;
> >
> > (C)    whether the services were necessary to the administration
> >        of, or beneficial at the time at which the service was
> >        rendered toward the completion of, a case under this title;
> >
> > (D)    whether the services were performed within a reasonable
> >        amount of time commensurate with the complexity,
> >        importance, and nature of the problem, issue, or task
> >        addressed;
> >
> > (E)    with respect to a professional person, whether the person is
> >        board certified or otherwise has demonstrated skill and
> >        experience in the bankruptcy field; and
> >
> > (F)    whether the compensation is reasonable based on the
> >        customary compensation charged by comparably skilled
> >        practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

81.    In the instant case, the Examiner and Jenner & Block respectfully submit that the

services for which they seek compensation in this Fourth Interim Application were, at the time

rendered, believed to be necessary for and beneficial to the Examiner and the Investigation.  The

Examiner and Jenner & Block further submit that the compensation requested herein is

reasonable in light of the nature, extent, and value of such services provided by and to the

Examiner; and, the Examiner has been given the opportunity to review this application and has approved the requested amount.

82.    The services rendered by the Examiner and Jenner & Block were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.  Accordingly, approval of the interim compensation sought herein for the Compensation Period is warranted.

83.    This Fourth Interim Application includes citations to the applicable authorities and does not raise any novel issues of law.  The Examiner and Jenner & Block reserve the right to file a brief in reply to any objection to this Fourth Interim Application.

84.    To the extent applicable, the Examiner and Jenner & Block further request that the Court waive for cause shown any Guideline requirement not met by this Fourth Interim Application.

85.    No previous motion for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE the Examiner and Jenner & Block respectfully request:  (i) allowance and payment of compensation for professional services rendered during the Compensation Period in the amount of $20,604,413.25; and (ii) reimbursement for actual and necessary expenses the Examiner and Jenner & Block incurred during the Compensation Period in the amount of $3,014,481.99; and (iii) that the Court grant the Examiner and Jenner & Block such other and further relief as is just.

Dated: April 16, 2010
New York, New York

Respectfully submitted,


By: /s/ *Patrick J. Trostle*
    Patrick J. Trostle

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner