|   |   |
|---|---|
| Hearing Date and Time: | May 12, 2010 at 10:00 a.m. |
| Objection Deadline: | May 7, 2010 at 4:00 p.m. |

FARRELL FRITZ, P.C.
1320 RXR Plaza
Uniondale, New York  11556-1320
Tel:    (516) 227-0700
Fax:    (516) 227-0777
Louis A. Scarcella
Darren A. Pascarella
Robert C. Yan

*Attorneys for Capital One, N.A.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
:
In re:                                                               :    Chapter 11
:
Lehman Brothers Holdings, Inc., *et al.*,                            :    Case No. 08-13555 (JMP)
:
Debtors.                                                             :
:    Jointly Administered
---------------------------------------------------------------------x

### MOTION OF CAPITAL ONE, N.A. FOR AN ORDER MODIFYING THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Capital One, N.A. ("Capital One"), by its attorneys, Farrell Fritz, P.C., hereby moves (the "Motion") this Court, pursuant to Section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure, for entry of an order modifying the automatic stay.  In support of the Motion, Capital One respectfully represents as follows:

#### I.    PRELIMINARY STATEMENT

1. By this Motion, Capital One seeks an order modifying the automatic stay to allow it to exercise its statutory and contractual rights to name Lehman Brothers Holdings, Inc. ("LBHI") as a defendant in an action to foreclose its mortgages against property owned by New Central Avenue, LLC ("Mortgagor") and in which LBHI holds a subordinate mortgage.  The Mortgagor is not a debtor in the LBHI bankruptcy case or in any other bankruptcy court.

Interwoven\1396639.1

2.   Relief from the automatic stay is proper because LBHI does not have any equity in the collateral that Capital One is seeking relief from the automatic stay for. Nor is the collateral necessary to an effective reorganization.

3.   In addition, ample cause exists to grant Capital One relief from the automatic stay because: (a) pursuant to New York law, (i) LBHI, as the holder of a mortgage that is subject and subordinate to Capital One's three senior mortgages, is a necessary party to Capital One's contemplated foreclosure action against the Mortgagor and must be made a party defendant and (ii) Capital One has the right to extinguish LBHI's subordinate mortgage in an action to foreclose its senior mortgages; (b) the terms of the Intercreditor Agreement, dated January 24, 2008, between Capital One and LBHI (the "<u>Intercreditor Agreement</u>"), afford Capital One's mortgages priority over LBHI's mortgage and preclude LBHI from interfering in any way with Capital One's enforcement of its rights and remedies under its mortgages; (c) absent stay relief, Capital One will continue to suffer severe prejudice as it will be unable to clear title in a foreclosure sale, thus barring Capital One from realizing on the value of its collateral securing defaulted multi-million mortgages; and (d) LBHI, by contrast, faces no undue prejudice as it has been and will be afforded all rights and remedies available to it as a junior mortgagee under New York law and the Intercreditor Agreement.

## II.   JURISDICTION AND VENUE

4.   The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

5.   Venue of the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.   The statutory predicates for the relief sought herein are Section 362(d) of the Bankruptcy Code and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure.

## III.   BACKGROUND

**1.   The Senior Loan Documents of Capital One**

7.   Capital One, as successor by merger to North Fork Bank, made the following loans to Mortgagor:

2

       (i)       $24,100,000 First Mortgage Loan (the "First Mortgage Loan");

       (ii)      $43,100,000 Building Loan (the "Building Loan"); and

       (iii)     $9,200,000 Project Loan (the "Project Loan", together with the First Mortgage Loan and the Building Loan, the "Senior Loans").

8. As of the date hereof, Capital One has funded $24,100,000 under the First Mortgage Loan and $900,000 under the Project Loan.

9. In connection with the Senior Loans, Mortgagor executed and delivered to Capital One the following:

       (i)       First Mortgage Note dated July 12, 2007 made by Mortgagor in favor of Capital One in the original principal amount of $24,100,000 (as amended, restated, supplemented or otherwise modified, the "First Mortgage Note");

       (ii)      First Mortgage dated July 12, 2007 made by Mortgagor in favor of Capital One (as amended, the "First Mortgage");

       (iii)     Building Loan Mortgage Note dated July 12, 2007 made by Mortgagor in favor of Capital One in the original principal amount of $43,100,000 (as amended, restated, supplemented or otherwise modified, the "Building Loan Note");

       (iv)     Building Loan Mortgage, dated July 12, 2007 made by Mortgagor in favor of Capital One (as amended, the "Building Loan Mortgage");

       (v)      Building Loan Agreement dated July 12, 2007 between Mortgagor and Capital One (as amended, the "Building Loan Agreement");

       (vi)     Project Loan Mortgage Note dated July 12, 2007 made by Mortgagor in favor of Capital One in the original principal amount of $24,100,000 (as amended, restated, supplemented or otherwise modified, the "Project Loan Note", together with the First Mortgage Note and the Building Loan Note, the "Senior Note");

       (vii)    Project Loan Mortgage dated July 12, 2007 made by Mortgagor in favor of Capital One (as amended, the "Project Loan Mortgage", together with the First Mortgage and the Building Loan Mortgage, the "Senior Mortgage"); and

       (viii)   Project Loan Agreement dated July 12, 2007 between Mortgagor and Capital One (as amended, the "Project Loan Agreement", together with the Building Loan Agreement, the "Senior Loan Agreements", and together with the Senior Note, the Senior Mortgage, and all other agreements, instruments and documents at any time executed and delivered in connection with the Senior Loans, each as amended, restated, supplemented or otherwise modified from time to time, the "Senior Loan Documents").

Interwoven\1396639.1

10. Copies of the Senior Loan Agreements are attached to the Declaration of Peter G. Mace in Support of Motion for an Order Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code and Bankruptcy Rule 4001 (the "Mace Declaration") as Exhibit A. Copies of the Senior Note and the Senior Mortgage are attached to the Mace Declaration as Exhibits B and C, respectively.

11. The Senior Mortgage encumbers certain real property located in the Village of Lawrence, New York known as 260 Central Avenue, Lawrence, New York and more particularly described on Exhibit D, attached to the Mace Declaration, and all improvements thereon and appurtenances thereto, and all other personal and other property, as more particularly described in the Senior Mortgage (collectively, the "Premises"). The Senior Mortgage was duly recorded in the Office of the Registrar of the County of Nassau as follows:

    (i)    First Mortgage on July 20, 2007, in Liber 32128, at Page 864 (as modified on September 26, 2008, in Liber 33262, at Page 969).

    (ii)    Building Loan Mortgage on July 20, 2007, in Liber 32128, at Page 886 (as modified on September 26, 2008, in Liber 33262, at Page 955, and on November 14, 2008, in Liber 33340, at Page 700).

    (iii)    Project Loan Mortgage on July 20, 2007, in Liber 32128, at Page 909 (as modified on September 26, 2008, in Liber 33262, at Page 983, and on November 14, 2008, in Liber 33340, at Page 700).

An excerpt portion of a foreclosure report on the Premises, dated as of June 1, 2009, evidencing Capital One's recorded mortgages is attached to the Mace Declaration as Exhibit F.

**2.  The Mezzanine Loan Documents of LBHI**

12. LBHI made a Mezzanine Loan to Mortgagor in an amount of up to $7,137,257 (the "Mezzanine Loan").

13. In connection with the Mezzanine Loan, Mortgagor executed and delivered to LBHI, among other things, the following:

    (i)    Mezzanine Construction Loan Agreement dated January 24, 2008 between Mortgagor and LBHI (the "Mezzanine Loan Agreement");

4

(ii) Secured Promissory Note dated January 24, 2008 made by Mortgagor in favor of LBHI in the original principal amount of up to $7,137,257 (the "Mezzanine Note"); and

(iii) Subordinate Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated January 24, 2008 made by Mortgagor in favor of LBHI (the "Subordinate Mortgage", together with the Mezzanine Loan Agreement and the Mezzanine Note, the "Mezzanine Loan Documents").

14. The Subordinate Mortgage is subordinate to the Senior Mortgage by operation of New York law and the Intercreditor Agreement and evidences a second-priority lien on the Premises.

15. The Mezzanine Loan matured on July 24, 2008.

**3.    The Intercreditor Agreement**

16. Pursuant to the terms of the Intercreditor Agreement, LBHI agreed, among other things, that the liens and security interests created by the Mezzanine Loan Documents were subordinate and junior to the liens and security interests created by the Senior Loan Documents, and that Capital One had the right to completely foreclose the Senior Mortgage upon default by the Mortgagor, subject only to certain rights of LBHI. A copy of the Intercreditor Agreement is attached to the Mace Declaration as Exhibit E.

17. Sections 11(a) and 13 of the Intercreditor Agreement set forth the rights of LBHI upon default by the Mortgagor ("LBHI's Rights Upon Mortgagor's Default").

18. Pursuant to Section 11(a) of the Intercreditor Agreement, prior to Capital One commencing any Enforcement Action (as defined therein) under the Senior Loan Documents, Capital One shall (i) provide written notice of Mortgagor's default to LBHI and (ii) permit LBHI an opportunity to cure Mortgagor's default. In the case of a monetary default, LBHI's opportunity to cure extends until ten (10) business days after Capital One's written notice to LBHI of Mortgagor's default. Mace Declaration, Ex. E § 11(a).

19. Pursuant to Section 13 of the Intercreditor Agreement, if the Senior Note has been accelerated, Capital One shall give LBHI written notice thereof and upon ten (10) business days prior written notice to Capital One, LBHI shall have the right to purchase, in whole but not in part, the Senior

5

Note. The right of LBHI to purchase the Senior Note automatically terminates upon (i)(a) a transfer by foreclosure sale or trustee's sale of the Premises or (b) five (5) business days after LBHI receives written notice of delivery of a deed in lieu of foreclosure covering the Premises (whichever occurs first) or (ii) if a Purchase Option Event (as defined in the Intercreditor Agreement), including acceleration of the Senior Note, ceases to exist. Mace Declaration, Ex. E § 13.

### 4. **LBHI Files for Bankruptcy**

20. On September 15, 2008 (the "Petition Date") and periodically thereafter, LBHI and certain of its subsidiaries (the "Debtors") filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

### 5. **Mortgagor's Default Under the Senior Loan Documents**

21. On or about April 1, 2009, Mortgagor defaulted under the Senior Loan Documents by, among other things, failing to make payments when and as due thereunder. Mace Declaration, at ¶ 7.

22. On or about May 5, 2009, Capital One provided written notice to Mortgagor of its default under the Senior Loan Documents ("Mortgagor Default Notice"). A copy of the Mortgagor Default Notice is attached to the Mace Declaration as Exhibit G.

23. On the same day, Capital One provided LBHI with written notice of the Mortgagor's default under the Senior Loan Documents (the "Senior Loan Default Notice") and further advised LBHI that it has the right, but not the obligation, to cure the Mortgagor's Default in accordance with, and subject to the terms of, Section 11(a) of the Intercreditor Agreement. A copy of the Senior Loan Default Notice is attached to the Mace Declaration as Exhibit H. Capital One's delivery of the Senior Loan Default Notice to LBHI does not constitute a violation of the automatic stay, as the Notice was not an act by Capital One to obtain possession or exercise control of property of the estate or to assert a claim against the estate.

6

24. LBHI did not exercise its right to cure the Mortgagor's default pursuant to Section 11(a) of the Intercreditor Agreement. Mace Declaration, at ¶ 9.

25. On or about June 10, 2009, Capital One provided written notice to Mortgagor of its election to accelerate Mortgagor's obligations under the Senior Loan Documents and declared the entire balance thereunder immediately due and payable ("Mortgagor Acceleration Notice"). A copy of the Mortgagor Acceleration Notice is attached to the Mace Declaration as Exhibit I.

26. Pursuant to the Intercreditor Agreement, on or about June 10, 2009, Capital One provided LBHI with written notice of its election to accelerate Mortgagor's obligations under the Senior Loan Documents and that all obligations of the Mortgagor thereunder were immediately due and payable (the "Senior Loan Acceleration Notice"). A copy of the Senior Loan Acceleration Notice is attached to the Mace Declaration as Exhibit J. Capital One's delivery of the Senior Loan Acceleration Notice to LBHI does not constitute a violation of the automatic stay, as the Notice was not an act by Capital One to obtain possession or exercise control of property of the estate or to assert a claim against the estate.

27. As of March 31, 2010, the total amount due and owing by Mortgagor to Capital One under the Senior Loan Documents is not less than $25,000,000 (which consists of the principal amount of $24,100,000 due and owing under the First Mortgage Note and the principal amount of $900,000 due and owing under the Project Loan Note), plus accrued and accruing interest, costs, expenses, attorneys' fees and other charges, all of which continue to accrue. Mace Declaration, at ¶ 12.

28. Pursuant to Section 13 of the Intercreditor Agreement, LBHI may still exercise its right to purchase the Senior Note.

29. As a result of Mortgagor's default under the Senior Loan Documents, Capital One seeks to exercise its non-bankruptcy rights and remedies with respect to the Senior Loan Documents, including but not limited to enforcement of its rights under the Senior Mortgage.

### IV.    RELIEF REQUESTED

30. Capital One moves for entry of an order modifying the automatic stay in effect in LHBI's bankruptcy case pursuant to Section 362(d) of the Bankruptcy Code to permit Capital One to name LBHI

7

as a defendant in an action to completely foreclose the Senior Mortgage against property owned by Mortgagor and in which LBHI holds the Subordinate Mortgage. No monetary relief will be sought from LBHI in Capital One's contemplated foreclosure action.

### V.    ARGUMENT

31.    The automatic stay should be modified on two equally availing grounds. One, under Section 362(d)(2), stay relief is proper because LBHI does not have any equity in the Premises, which is subject to Capital One's Senior Mortgage, and the Premises is not necessary to an effective reorganization. Two, under Section 362(d)(1), ample cause exists to modify the automatic stay. Because Sections 362(d)(1) and (d)(2) are in the disjunctive, "[t]his means that the Court must lift the stay if the movant prevails under either of the two grounds." *In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994).

**A.    RELIEF FROM THE AUTOMATIC STAY IS PROPER UNDER
11 U.S.C. § 362(d)(2) BECAUSE LBHI LACKS EQUITY IN THE
PREMISES AND THE PREMISES IS NOT NECESSARY TO AN
EFFECTIVE REORGANIZATION**

32.    Section 362(d)(2) of the Bankruptcy Code provides that relief from the automatic stay shall be granted by the court if "the debtor does not have an equity" in the Premises and the Premises "is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).

33.    "[T]he secured creditor who seeks relief from the automatic stay under § 362(d)(2) must demonstrate (1) the amount of its claim, (2) that its claim is secured by a valid, perfected lien in property of the estate, and (3) that the debtor lacks equity in the property." *In re Elmira Litho, Inc.*, 174 B.R. at 900.

34.    As of March 31, 2010, the total amount due and owing by Mortgagor to Capital One under the Senior Loan Documents is not less than $25,000,000, plus accrued and accruing interest, costs, expenses, attorneys' fees and other charges. Mace Declaration, Exhibit A; Exhibit B; Exhibit C.

8

35. To secure the Mortgagor's indebtedness under the Senior Loan Documents, the Mortgagor granted Capital One a lien in certain property owned by the Mortgagor—namely, the Premises. Mace Declaration, Exhibit F.

36. A valuation analysis of the Premises shows that the Premises has an appraised market value of $17,000,000 as of October 30, 2009 (the "Appraisal Report"). A copy of the Appraisal Report is attached to the Mace Declaration as Exhibit K. Because the Mortgagor's indebtedness due and owing to Capital One exceeds the appraised market value of the Premises, the Mortgagor lacks any equity in the property. Moreover, because LBHI's interest in the Premises is subordinate and junior to that of Capital One's interests pursuant to the Intercreditor Agreement, LBHI also lacks any "equity" in the property. *In re Elmira Litho, Inc.*, 174 B.R. at 901 ("Under § 362(d)(2), 'equity' means the difference between the value of the property and the total amount of claims that it secures."); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 322 (Bankr. S.D.N.Y. 2001) (same); *In re YL West 87th Holdings I LLC*, No. 09-15445, 2010 Bankr. LEXIS 43, at *17 (Bankr. S.D.N.Y. Jan. 13, 2010) (same).

37. Based on the foregoing, Capital One submits that a *prima facie* case has been established on the issue of equity in the Premises, see 11 U.S.C. § 362(g)(1), and therefore, the burden rests on LBHI, as a Debtor, to establish that the Premises is necessary for an effective reorganization. *In re Elmira Litho, Inc.*, 174 B.R. at 901 (holding that burden shifts to the debtor on the issue of property being necessary for an effective reorganization).

38. LBHI cannot establish that the Premises is necessary for an effective reorganization. This is far from the instance where the subject property, for which relief from the automatic stay is being sought for, is the debtor's sole asset in a chapter 11 case. To the contrary, as admitted in the Affidavit of Ian T. Lowitt, filed in support of the Debtors' first-day motions and applications, the Debtors have "significant assets around the globe" with consolidated assets as of May 31, 2008 totaling nearly $639 billion. Lead Case Docket Entry No. 2.

39. Accordingly, Capital One's motion to modify the automatic stay should be granted pursuant to Section 362(d)(2) of the Bankruptcy Code.

Interwoven\1396639.1

B.  **CAUSE EXISTS TO MODIFY THE STAY
    PURSUANT TO 11 U.S.C. § 362(d)(1)**

40. Not only is relief from the automatic stay appropriate under Section 362(d)(2) of the Bankruptcy Code, but relief is likewise appropriate for cause. Pursuant to Section 362(d)(1) of the Bankruptcy Code, a bankruptcy court, after notice and a hearing, may terminate, annul, modify or condition the Section 362(a) automatic stay "for cause, including the lack of adequate protection of an interest in property" of the party seeking relief. 11 U.S.C. § 362(d)(1). Except for the "lack of adequate protection" circumstance provided in Section 362(d)(1), the term "cause" is not defined in the Bankruptcy Code. *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002).

41. Whether cause exists for relief from the automatic stay must be determined on a case-by-case basis based on the totality of circumstances, *Id.*; *In re Enron Corp.*, 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004), and is committed to the sound discretion of the Bankruptcy Court. *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). The term "cause" "is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations." *In re A Partners LLC*, 344 B.R. 114, 127 (Bankr. E.D.Cal. 2006).

42. Section 362(d)(1) requires an initial showing of cause by the movant. *In re Balco Equities Ltd, Inc.*, 312 B.R. 734, 749 (Bankr. S.D.N.Y. 2004). Once the movant has satisfied its initial burden, the opposing party has the ultimate burden of disproving the existence of cause for relief from the automatic stay. *In re Sonnax Industries, Inc.*, 907 F.2d at 1285; *In re Henderson*, 245 B.R. 449, 455 (Bankr. S.D.N.Y. 2000); 11 U.S.C. § 362(g)(2).

43. The Second Circuit has developed a set of twelve factors that courts should examine when determining whether "cause" exists to lift the stay to allow litigation to proceed in another forum:

    (1)    whether relief would result in a partial or complete resolution of the issues;

    (2)    lack of any connection with or interference with the bankruptcy case;

    (3)    whether the other proceeding involves the debtor as a fiduciary;

    (4)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and balance of harms.

*In re Sonnax Industries, Inc.*, 907 F.2d at 1286.  Not every *Sonnax* factor will be relevant in every case. *In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999).  Nor does every *Sonnax* factor need to be given equal weight.  *In re New York Medical Group, P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

44. Here, cause exists to modify the automatic stay to allow Capital One to name LBHI as a defendant in Capital One's contemplated foreclosure action against Mortgagor because of the confluence of four facts.

1. **LBHI is a Necessary Party Under R.P.A.P.L § 1311**

45. Under New York law, LBHI must be named as a defendant in Capital One's contemplated action to completely foreclose the Senior Mortgage.  LBHI, as the holder of the Subordinate Mortgage that is subject and subordinate to Capital One's Senior Mortgage, is a necessary party to Capital One's contemplated foreclosure action and must be made a party defendant.  R.P.A.P.L. § 1311.  *See also Moulton v. Cornish*, 138 N.Y. 133, 138, 33 N.E. 842 (1893) (junior mortgagee is a necessary party in a foreclosure action); *Bd. Of Mgrs. of the Parkchester North Condo. v. Alaska Seaboard Partners Ltd. P'ship*, 37 A.D.3d 332, 332-33 (2d Dept. 2007).

11

46. R.P.A.P.L. § 1311 states, in pertinent part, as follows:

> Each of the following persons, whose interest is claimed to be subject and subordinate to the plaintiff's lien, ***shall be made a party defendant to the action***:
>
> ***
>
> (3) Every person having any lien or encumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff.

R.P.A.P.L. § 1311(3) (emphasis added).

47. In addition, pursuant to New York law, Capital One's Senior Mortgage holds priority over LBHI's Subordinate Mortgage, R.P.L. § 291, affording Capital One the right to extinguish LBHI's Subordinate Mortgage in an action to foreclose the Senior Mortgage. *See* R.P.A.P.L. Article 13.

48. Keeping the automatic stay in place in this instance would be tantamount to the bankruptcy court (i) granting the Mortgagor the benefit of the automatic stay and (ii) granting LBHI greater property rights with respect to the Subordinate Mortgage than it had at the commencement of its bankruptcy case. Such a result would contravene the well-settled law that a debtor can assert no greater property rights than the debtor had as of the commencement of the bankruptcy case. *In re A Partners LLC*, 344 B.R. at 122; 5 *Collier on Bankruptcy,* (15th Ed. Revised), ¶ 541.04, pg. 541-12, 13.

49. As the continuation of the automatic stay is at odds with Capital One's rights under New York law, the stay should be modified to allow Capital One to name LBHI as a defendant in its contemplated foreclosure action against the Mortgagor.

**2. The Intercreditor Agreement Bars LBHI from Interfering with Capital One's Foreclosure of its Senior Mortgage**

50. The continuation of the automatic stay is inconsistent with the terms, conditions and spirit of the Intercreditor Agreement. The Intercreditor Agreement is fully enforceable under New York law, *In re Kizzac Mgmt. Corp.*, 44 B.R. 496, 504 (Bankr. S.D.N.Y. 1994), *citing 220 West 42 Assoc. v. The Ronbet Newmark Co.*, 84 Misc.2d 259, 375 N.Y.S.2d 255 (Sup. Ct. N.Y. Cty. 1976), *aff'd as modified,* 53 A.D.2d 829, 385 N.Y.S.2d 304 (1st Dep't 1976), *aff'd*, 40 N.Y.2d 1000, 391 N.Y.S.2d 107, 359 N.E.2d

12

701 (1976), and, as such, in LBHI's bankruptcy case. *In the Matter of Village Rathskeller, Inc.*, 147 B.R. 665, 673 (Bankr. S.D.N.Y. 1992); 11 U.S.C. § 510(a).

51.    The terms of the Intercreditor Agreement afford Capital One's Senior Mortgage priority over LBHI's Subordinate Mortgage and preclude LBHI from interfering in any way with Capital One's enforcement of its rights and remedies under the Senior Mortgage, subject only to LBHI's Rights Upon Mortgagor's Default, as discussed *infra*, which rights LBHI has not exercised.

52.    For example, LBHI agreed, pursuant to Section 8 of the Intercreditor Agreement, that its mortgage would be subordinate and inferior in all respects to the Senior Mortgage of Capital One:

> [LBHI] hereby subordinates and makes junior the Mezzanine Loan, the Mezzanine Loan Documents and the liens and security interests created thereby, and all rights, remedies, terms and covenants contained therein to (i) the Senior Loan, (ii) the liens and security interests created by the Senior Loan Documents and (iii) all of the terms, covenants, conditions, rights and remedies contained in the Senior Loan Documents . . .

Mace Declaration, Exhibit E § 8(a) (emphasis added).

53.    Pursuant to Section 5 of the Intercreditor Agreement, LBHI agreed that it would not be entitled to exercise any rights it may have under the Subordinate Mortgage with respect to a foreclosure or other realization upon the Subordinate Mortgage without obtaining the prior written consent of Capital One. Mace Declaration, Exhibit E § 5(a). Indeed, LBHI agreed that its rights to payment of the obligations evidenced by the Mezzanine Loan Documents were subordinated to all of Capital One's rights to payment by Mortgagor of the obligations secured by the Senior Loan Documents, and that LBHI would not accept or receive payments from Mortgagor prior to the date that the obligations secured by the Senior Loan Documents "are indefeasibly paid in full". Mace Declaration, Exhibit E § 9(a).

54.    Pursuant to Section 11 of the Intercreditor Agreement, LBHI agreed that Capital One will have the unfettered right to completely foreclose the Senior Mortgage upon a default of the Mortgagor, subject only to LBHI's Rights Upon Mortgagor's Default. Mace Declaration, Exhibit E §§ 11(a), 13.

55.    Pursuant to Sections 11(a) of the Intercreditor Agreement, upon receipt of the Senior Loan Default Notice, LBHI had the right, on or before May 15, 2009, to cure the Mortgagor's default

13

under the Senior Loan Documents. LBHI did not exercise its right to cure the Mortgagor's default within the time provided under the Intercreditor Agreement.

56. Pursuant to Section 13 of the Intercreditor Agreement, LBHI has the right to purchase, in whole but not in part, the Senior Note. Thus far, LBHI has chosen not to purchase the Senior Note.

57. Keeping the automatic stay in place in this instance would be tantamount to the bankruptcy court rewriting the Intercreditor Agreement with respect to the rights of the parties by removing the provisions conferring upon Capital One the right to completely foreclose on the Senior Mortgage. Such a result would contravene the well-settled law that the filing of a bankruptcy case does not confer upon the debtor greater rights under a contract than exist outside of bankruptcy. *See*, *e.g.*, *In re Penn Traffic Co.*, 322 B.R. 63, 72 (Bankr. S.D.N.Y. 2003) (citing cases), *affd' in part and rev'd in part on other grounds*, 2005 WL 2276879 (S.D.N.Y. Sept. 16, 2005), *appeal dismissed*, 466 F.3d 75 (2d Cir. 2006); *In re M.J. & K. Co., Inc.*, 161 B.R. 586, 593 (Bankr. S.D.N.Y. 1993).

58. As the continuation of the automatic stay is at odds with LBHI's explicit agreements and concessions under the Intercreditor Agreement, the stay should be modified to allow Capital One to name LBHI as a defendant in its contemplated foreclosure action.

3. **Capital One's Rights and Interests Are Prejudiced and Harmed By the Continuation of the Automatic Stay**

59. Pursuant to New York law, the Senior Loan Documents and the Intercreditor Agreement, upon the Mortgagor's default, Capital One has the right to foreclose on the Senior Mortgage, subject only to LBHI's Rights Upon Mortgagor's Default.

60. Capital One is being harmed by the continuance of the automatic stay since the stay prevents Capital One from exercising its contractual and statutory right to prosecute a proper foreclosure action to completely foreclose on the Senior Mortgage.

61. If Capital One proceeds with the foreclosure action without naming LBHI as junior mortgagee, LBHI's Subordinate Mortgage will remain unaffected and valid following the foreclosure sale. *Bd. Of Mgrs. of the Parkchester North Condo.*, 37 A.D.3d at 333. Given this result, Capital One's

14

rights in and to the Senior Mortgage will be prejudiced, as it will be unable to clear title in a foreclosure sale and, thus, will be barred from realizing on the full value of the Senior Mortgage.

62. Accordingly, Capital One's right to foreclose its Senior Mortgage will, in effect, be forfeited if it is not permitted to name LBHI as a defendant in a foreclosure action on the Senior Mortgage.

63. To avoid severe prejudice to Capital One, the Court should modify the stay to allow Capital One to name LBHI in an action to completely foreclose the Senior Mortgage.

**4. Modifying the Stay Will Not Unduly Prejudice LBHI**

64. Lastly, granting the relief requested by Capital One will not unduly prejudice LHBI or its estate. Capital One merely seeks to exercise its contractual and statutory right to completely foreclose the Senior Mortgage, and LBHI has been and will be afforded all rights and remedies available to it as a junior mortgagee under New York law and the Intercreditor Agreement. Indeed, the relief Capital One seeks herein is what the parties bargained for in the Intercreditor Agreement.

65. Pursuant to the Intercreditor Agreement, LBHI recognized that its rights under the Subordinate Mortgage were subordinated to Capital One's rights under the Senior Mortgage, and gave Capital One the unfettered right to foreclose, subject only to LBHI's Rights Upon Mortgagor's Default – LBHI's right to (i) cure the Mortgagor's default and (2) purchase the Senior Note.

66. Upon Mortgagor's default under the Senior Loan Documents, LBHI could have staved off a foreclosure action by Capital One by paying to Capital One the amounts then in default. Although Capital One provided LBHI with the Senior Loan Default Notice, LBHI chose not to cure the Mortgagor's default pursuant to Section 11(a) of the Intercreditor Agreement. In addition, if LBHI desires, it may still purchase the Senior Note from Capital One pursuant to Section 13 of the Intercreditor Agreement.

67. To the extent that LBHI argues that there is equity in the Subordinate Mortgage, that equity is amply protected both under the Intercreditor Agreement and New York law. If LBHI believes that there is equity in the Subordinate Mortgage and would like to preserve that equity, it may, as

15

discussed above, purchase the Senior Note from Capital One pursuant to Section 13 of the Intercreditor Agreement. In addition, LBHI has the opportunity to purchase the Premises at the foreclosure sale. Finally, to the extent there is any surplus following a foreclosure sale after payment of all amounts due and owing Capital One under the Senior Loan Documents, LBHI will be entitled to such surplus to apply to the amounts due and owing by Mortgagor under the Mezzanine Loan Documents.

68.     As LBHI will not be prejudiced if the relief requested herein is granted, the Court should modify the automatic stay to allow Capital One to name LBHI as a defendant in its contemplated foreclosure action to completely foreclose upon the Senior Mortgage.

### VI.    NOTICE

69.     Capital One has served notice of this Motion in accordance with the procedures set forth in the Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, dated February 13, 2009 [Docket No. 2837] on: (i) the Debtors; (ii) the Office of the United States Trustee for the Southern District of New York; (iii) the Official Committee of Unsecured Creditors; (iv) counsel for Mortgagor; and (v) all other parties who have requested notice in these chapter 11 cases. Capital One submits that no other or further notice need be provided.

70.     No previous request for the relief sought herein has been made by Capital One to this or any other court.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

**WHEREFORE**, for all of the foregoing reasons, Capital One respectfully requests that this Court enter an Order, substantially in the form annexed hereto (i) granting Capital One relief from the automatic stay to permit Capital One to name LBHI as a defendant in an action to foreclose the Senior Mortgage and (ii) granting Capital One such other and further relief as is just and proper.

Dated: Uniondale, New York
April 16, 2010

**FARRELL FRITZ, P.C.**

By:    /s/ Louis A. Scarcella                           .
Louis A. Scarcella
Darren A. Pascarella
Robert C. Yan
1320 RXR Plaza
Uniondale, New York 11556-1320
Tel:    (516) 227-0700
Fax:    (516) 227-0777

*Attorneys for Capital One, N.A.*