*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 80*

### INCOME CAPITALIZATION APPROACH – LAND RESIDUAL TECHNIQUE

***Introduction***

As a cross reference and test of reasonableness to the valuation of the underlying land via the Sales Comparison Approach, we have also employed an Income Capitalization Approach via a Land Residual technique, as recent development site sales similar to the subject property and requiring little adjustment are virtually non-existent in the current market.    Accordingly, a land residual technique is considered to be alternative and instructive methodology in estimating the land value for this type of development parcel.

*Land Residual Technique*

As noted, the Land Residual Technique is a recognized approach to estimate land value when recent sales data on similar parcels of vacant land are not available.  In this instance, we have utilized this technique to test the reasonability of the estimated land value via the Sales Comparison Approach.

In deriving the residual value of the land, we have first estimated the capitalized value of a potential rental development on the site via direct capitalization. Subtracting the respective cost of the improvements from the indicated capitalized value results in the residual value to the land.

***Direct Capitalization***

As previously described, and for purposes of the Land Residual technique, we have assumed that a multi-family rental investment property is constructed on the site as of the date of the appraisal to a similar specification as originally planned for the site.

The basic steps in processing the Income Capitalization Approach by the Direct Capitalization method are as follows:

1.  *Potential Gross Income* from all sources that a competent owner could legally generate is calculated.

2.  *Vacancy and Credit Loss* factor is estimated and deducted to arrive at Effective Gross Income.

3.  *Operating Expenses and Real Estate Taxes* are estimated and deducted to arrive at the stabilized Net Operating Income.

4.  *Overall Capitalization Rate* is developed.

5.  *Stabilized Valuation* is processed by dividing the Net Operating Income by the Overall Capitalization Rate.



**METROPOLITAN VALUATION SERVICES**
REAL ESTATE CONSULTING AND APPRAISAL

260 Central Avenue
Lawrence, NY
November 12, 2009
Page 81

**Potential Gross Income**    The potential gross income (PGI) is the total potential income attributable to the subject property at full occupancy before operating expenses are deducted. Upon completion, the subject property will contain 144 rentable units and 208,415 rentable square feet. Additional sources of income include fees charged for parking spaces and storage units, which are not typically included with a rental apartment, and other miscellaneous income typically associated with the operation of a luxury rental community.

*Residential Income*    In order to determine the residential unit's potential gross income as a rental facility, we have conducted a survey of rental units in the influencing market. Included in our survey are rentals of units within the competitive housing stock in the Village of Lawrence, as well as rentals within luxury-type facilities in the larger Nassau county region.

## RESIDENTIAL RENTAL SURVEY

| Address/Location | Year Built/ Renovated | No. of Stories | No. of Units | Unit Type | Area (Sq.Ft.) Min - Max | | Monthly Rent Min - Max | | Annualized Rent/ Sq.Ft. Min - Max | |
|---|---|---|---|---|---|---|---|---|---|---|
| ***Luxury Rental Buildings*** | | | | | | | | | | |
| Avalon Towers | 2005/06 | 11 | 109 | 1-Bedroom | 837 - 1,069 | | $2,525 - $3,000 | | $33.68 - $36.20 | |
| 10 West Broadway | | | | 2-Bedroom | 1,227 - 1,446 | | $3,200 - $3,500 | | $29.05 - $31.30 | |
| Long Beach, NY | | | | 3-Bedroom | 1,906 - (avg.) | | $5,500 - (avg.) | | $34.63 - (avg.) | |
| | | | | | | | | | | |
| Avalon at Glen Cove | 2005 | 8 | 76 | 1-Bedroom | 866 - 1,055 | | $2,000 - $2,200 | | $25.02 - $27.71 | |
| 1100 Avalon Square | | | | 2-Bedroom | 1,065 - 1,672 | | $2,195 - $4,000 | | $24.73 - $28.71 | |
| Glen Cove, NY | | | | | | | | | | |
| | | | | | | | | | | |
| Avalon Glen Cove North | 2005 | 5 | 111 | Studio | 570 - 733 | | $1,660 - $1,875 | | $30.70 - $34.95 | |
| 100 Glen Street | | | | 1-Bedroom | 764 - 1,315 | | $1,740 - $2,900 | | $26.46 - $27.33 | |
| Glen Cove, NY | | | | 2-Bedroom | 1,387 - (avg.) | | $2,900 - (avg.) | | $25.09 - (avg.) | |
| | | | | | | | | | | |
| ***Five Towns Rentals*** | | | | | | | | | | |
| The Plaza | 1973 | 4 | 128 | 2-Bedroom | 1,365 - 1,420 | | $2,795 - $2,895 | | $24.57 - $24.46 | |
| 360 Central Avenue | | | | 3-Bedroom | 1,600 - (avg.) | | $3,450 - (avg.) | | $25.88 - (avg.) | |
| Lawrence, NY | | | | | | | | | | |
| | | | | | | | | | | |
| The Carlyle | 1983 | 4 | 71 | 1-Bedroom | 800 - (avg.) | | $2,200 - (avg.) | | $33.00 - (avg.) | |
| 376 Central Avenue | | | | 2-Bedroom | 950 - (avg.) | | $2,750 - (avg.) | | $34.74 - (avg.) | |
| Lawrence, NY | | | | | | | | | | |
| | | | | | | | | | | |
| Northgate Residences | 1947 | 2 | 48 | 2-Bedroom | 750 - (avg.) | | $1,850 - (avg.) | | $29.60 - (avg.) | |
| 250 Central Avenue | | | | | | | | | | |
| Lawrence, NY | | | | | | | | | | |
| | | | | | | | | | | |
| 272 Cedarhurst Avenue | 1970 | 2 | 60 | 1-Bedroom | 745 - (avg.) | | $1,950 - (avg.) | | $31.41 - (avg.) | |
| Cedarhurst, NY | | | | 2-Bedroom | 900 - (avg.) | | $2,200 - (avg.) | | $29.33 - (avg.) | |

*Source: Field Survey; Compiled by MVS*

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 82*

*Summary*

We have surveyed facilities which are considered to be competitive with the subject property's alternative operation as a rental facility. The first 3 facilities surveyed illustrate competitive rental rates for similar to slightly inferior sized units in luxury-type facilities in Nassau County. The rents within these facilities range from $24.73 to $36.20 per square foot per year. As noted, there is virtually no competitive, recently constructed luxury rental product in the Five Towns market segment which would be considered competitive with the subject property. Accordingly, we have surveyed recent rental activity within the surrounding cooperative buildings in the immediate and surrounding competitive areas of the subject property. Two such facilities, the Plaza and the Carlyle, are proximate the subject property in Lawrence, but are of an older vintage. Rents within these 2 facilities, which offer a moderate level of competitive amenities, but are of an older vintage and exhibit inferior layouts, range from $24.26 to $34.74 per square foot per year. Rental rates within 2 other competitive facilities range between $29.33 and $31.41 per square foot per year.

In consideration of the foregoing analysis, the subject property operating as a rental would be expected to command a market rent at or slightly above the higher end of the range exhibited by the market. Exhibited high rent levels within older buildings in the immediate community in comparison to recently constructed luxury facilities in less desirable areas of Nassau County provides further support for rental pricing for the subject property at the highest market levels.

Accordingly, we have concluded to a unit value of $34.00 per square foot (on average) for the subject property, as if operating as a rental property. Against a total rentable area of 208,415 square feet, the indicated stabilized rental revenue is calculated to be $7,086,110, as if available for rent as of the October 30, 2009 date of inspection. Based upon a total of 144 units, the average monthly rent is approximately $4,100 per unit per month. This rent is appropriately above the range as illustrated by the comparable rental properties given that the subject property units will be in new condition and are anticipated to have larger unit sizes, balconies, superior amenities including parking garage and storage spaces, pool, and community room space.

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 83*

**Ancillary Income**
*Parking and Storage*        As a rental property, both parking garage and storage space revenue is generally charged to the tenants as additional rent, and will be processed as such in our rental analysis. Within the immediate area where parking is a premium, similar buildings typically lease parking spaces between $65 and $85 per space per month. Discussions with management at the Carlyle and the Plaza cooperatives, both of which are also located along Central Avenue, indicate monthly garage parking of $75 per space as of the date of this appraisal report. In our analysis, we have processed a monthly parking garage rate of $75 per space against the 180 basement-level garage spaces as reasonable. This equates to $162,000 per year. The surface parking spaces are modeled as rent-free spaces for guests.

In addition to the parking revenue, the subject property will have 150 storage rooms available for lease as a rental property. Similar facilities in the immediate and larger market indicate storage unit rentals currently ranging between $75 and $150 per unit per month, depending on size. In our analysis, we have projected a monthly rent of $80 per unit per month, or $144,000 per year.

*Miscellaneous Income*        Generation of late fees, reimbursable legal expenses, and other incidental fee-based and interest income are typical to the operation of rental properties. Our survey of rental facility operations indicates that miscellaneous income ranges from $100 to $250 per unit, depending on the level of services offered and the degree of tenant-landlord actions. In our analysis, and in consideration of the services provided at the subject property, we have processed miscellaneous income of $150 per unit, or $21,600 per year.

*Stabilized Vacancy and
Credit Loss*        Stable residential properties typically experience a low vacancy and collection loss. A brief survey of the immediate community has indicated that there is a strong demand for quality, luxury-type housing with comparable buildings experiencing low overall vacancy rates. As such, a vacancy and credit loss factor rounded to 5.0% is considered warranted and has been processed for the subject property's residential component. No vacancy and credit loss factor has been applied to the parking garage, storage, and miscellaneous income categories.

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 84*

***Operating Expense
Analysis***

The subject property's Schedule B operating pro-forma for the first year of the previously proposed condominium provides the basis for the operating pro-forma for the hypothetical rental operation. However, as a rental property, the landlord will be responsible for additional costs associated with repairs and maintenance and reserves.

The table on the following page illustrates the original Schedule B and our anticipated stabilized operating pro forma for the subject property operating as a rental apartment complex, followed by a table illustrating the expense profiles of comparable multi-family condominium and rental buildings within the competitive market.

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 85*

### SCHEDULE B OPERATING EXPENSES AND MVS PRO-FORMA EXPENSES

| Expense | Projected Budget | MVS Pro-Forma |
|---|---|---|
| Payroll | $502,470 | $250,000 |
| Electricity | 53,241 | 53,200 |
| Fuel | 33,446 | 33,400 |
| Water and Sewer | 38,401 | 38,400 |
| Service Contracts | 119,220 | 119,220 |
| Repairs and Maintenance | 67,167 | 67,200 |
| Management | 96,000 | 96,000 |
| Legal and Professional | 15,000 | 15,000 |
| Administrative | 10,200 | 10,200 |
| Insurance | 90,000 | 90,000 |
| Recreation Areas | 49,400 | 49,400 |
| Miscellaneous | 53,147 | 50,000 |
| Total Operating Expenses | $1,127,692 | $872,020 |
| *Per Unit* | | |
| Payroll | $3,489 | $1,736 |
| Electricity | 370 | 369 |
| Fuel | 232 | 232 |
| Water and Sewer | 267 | 267 |
| Service Contracts | 828 | 828 |
| Repairs and Maintenance | 466 | 467 |
| Management | 667 | 667 |
| Legal and Professional | 104 | 104 |
| Administrative | 71 | 71 |
| Insurance | 625 | 625 |
| Recreation Areas | 343 | 343 |
| Miscellaneous | 369 | 347 |
| Total Operating Expenses | $7,831 | $6,056 |
| *Per Sq.Ft. of GBA* | | |
| Payroll | $2.03 | $1.01 |
| Electricity | 0.21 | 0.21 |
| Fuel | 0.13 | 0.13 |
| Water and Sewer | 0.15 | 0.15 |
| Service Contracts | 0.48 | 0.48 |
| Repairs and Maintenance | 0.27 | 0.27 |
| Management | 0.39 | 0.39 |
| Legal and Professional | 0.06 | 0.06 |
| Administrative | 0.04 | 0.04 |
| Insurance | 0.36 | 0.36 |
| Recreation Areas | 0.20 | 0.20 |
| Miscellaneous | 0.21 | 0.20 |
| Total Operating Expenses | $4.55 | $3.52 |

*Source: Developer-provided data*

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 86*

### COMPARABLE LUXURY OPERATING EXPENSE PROFILES

| Address | 26 W. Broadway | 10 W. Broadway | Northern Blvd. | Confidential |
|---|---|---|---|---|
| Municipality | Long Beach, NY | Long Beach, NY | Queens, NY | Great Neck, NY |
| Project Type | Condominium | Condominium | Rental | Rental |
| Year Built/ Altered | 2005 | 2005 | 2000 | 2002 |
| Units | 45 | 109 | 71 | 98 |
| GBA (Sq. Ft.) | 88,520 | 162,458 | 67,324 | 110,000 |
| GBA/Unit (Sq.Ft.) | 1,967 | 1,490 | 948 | 1,122 |
| Expense Year | 2008 | 2008 | 2006 | 2007 |
| Payroll | $143,931 | $465,825 | $51,390 | $178,000 |
| Electric | 61,524 | 125,986 | 47,919 | 55,000 |
| Fuel | 24,160 | 63,645 | 39,521 | 35,000 |
| Water and Sewer | 18,563 | 34,983 | 11,346 | 68,000 |
| Repairs and Maintenance | 46,760 | 184,772 | 27,240 | 55,000 |
| Management | 15,210 | 69,542 | 68,292 | 101,000 |
| Administrative | 19,852 | 5,471 | | |
| Insurance | 93,528 | 49,689 | 22,977 | 51,500 |
| Supplies | 5,150 | 0 | 0 | 12,500 |
| Miscellaneous | 6,972 | 81,419 | 11,642 | 10,000 |
| Total Operating Expenses | $435,650 | $1,081,332 | $280,327 | $566,000 |
| **Per Unit** | | | | |
| Payroll | $3,198 | $10,352 | $724 | $1,816 |
| Electric | 1,367 | 2,800 | 675 | 561 |
| Fuel | 537 | 1,414 | 557 | 357 |
| Water and Sewer | 413 | 777 | 160 | 694 |
| Repairs and Maintenance | 1,039 | 4,106 | 384 | 561 |
| Management | 338 | 1,545 | 962 | 1,031 |
| Administrative | 441 | 122 | 0 | 0 |
| Insurance | 2,078 | 1,104 | 324 | 526 |
| Supplies | 114 | 0 | 0 | 128 |
| Miscellaneous | 155 | 1,809 | 164 | 102 |
| Total Operating Expenses | $9,681 | $24,030 | $3,948 | $5,776 |
| **Per Sq.Ft.** | | | | |
| Payroll | $1.63 | $5.26 | $0.76 | $1.62 |
| Electric | 0.70 | 1.42 | 0.71 | 0.50 |
| Fuel | 0.27 | 0.72 | 0.59 | 0.32 |
| Water and Sewer | 0.21 | 0.40 | 0.17 | 0.62 |
| Repairs and Maintenance | 0.53 | 2.09 | 0.40 | 0.50 |
| Management | 0.17 | 0.79 | 1.01 | 0.92 |
| Administrative | 0.22 | 0.06 | 0.00 | 0.00 |
| Insurance | 1.06 | 0.56 | 0.34 | 0.47 |
| Supplies | 0.06 | 0.00 | 0.00 | 0.11 |
| Miscellaneous | 0.08 | 0.92 | 0.17 | 0.09 |
| Total Operating Expenses | $4.92 | $12.22 | $4.16 | $5.15 |

*Source: Developer-provided data*

*Summary of Expenses*    For the most part, the developer's budget appears market oriented
and we have processed a majority of the expense line-items as
projected.  The most significant modification has been made to the
payroll projection, which we have adjusted downward to reflect
that, as a rental property, the concierge and valet parking portion
of the payroll would be eliminated.  The adjusted operating

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 87*

expense profile indicates total Common Area Maintenance (CAM) charges equivalent to $3.52 per square foot of gross building area, and $6,056 per unit. In our analysis, we have processed a rounded CAM charge of $3.50 per square foot, or $867,000 per year. As noted, we have added an addition $350 per unit per year for repairs and maintenance as this expense would be borne by a landlord under a rental investment scenario. Similarly, a $300 per unit reserves for replacement line-item is added to the analysis under a hypothetical rental scenario. As discussed within the *Real Estate Tax Analysis*, we have processed a real estate tax liability of $5.00 per square foot, rounded $1,239,100 per year for the initial year of the analysis. This equates to 17.6% of the effective gross income, a typical ratio for properties of this type.

Total operating expenses for the first year of stabilized operations are $2,199,700 per year, equivalent to $8.88 per square foot, and $15,276 per unit. This equates to an operating expense ratio of 31.2% of effective gross income, which is well within market parameters for this type of facility. The resultant net operating income (NOI) is calculated at $4,859,704 for the first year of stabilized operations.

*Stabilized Pro Forma*　　　The table on the following page reflects the anticipated stabilized operating pro forma for the subject property operating as a rental apartment complex.

**M E T R O P O L I T A N   V A L U A T I O N   S E R V I C E S**
R E A L   E S T A T E   C O N S U L T I N G   A N D   A P P R A I S A L

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 88*

### STABILIZED OPERATING PROFROMA - AS A RENTAL INVESTMENT

| REVENUES | | | | Notes: |
|---|---|---|---|---|
| Rental Income | 208,415 | Sq.Ft. | $7,086,110 | $34.00 per Sq.Ft. |
| Vacancy and Credit Loss | | 5.0% | (354,306) | Market Vacancy |
| | | | | |
| Parking Garage Income | | | 162,000 | $75/space/mo. |
| Storage Units | | | 144,000 | $80/unit/mo. |
| Miscellaneous Income | | | 21,600 | $150/unit/yr. |
| Effective Gross Income | | | $7,059,404 | |
| | | | | |
| EXPENSES | Per Sq.Ft. | Per Unit | | as % of EGI |
| Common Charges (Adjusted) | $3.50 | $6,021 | $867,000 | 12.3% |
| | | | | |
| ***Incremental Expenses*** | | | | |
| Additional Repairs & Maintenance | 0.20 | 350 | 50,400 | 0.7% |
| Additional Reserve Expense | 0.17 | 300 | 43,200 | 0.6% |
| Real Estate Taxes | 5.00 | 8,605 | 1,239,100 | 17.6% |
| Total Operating Expenses | $8.88 | $15,276 | $2,199,700 | **31.2%** |
| | | | | |
| Net Operating Income | | | $4,859,704 | |

*Source: Calculations and assumptions by MVS*

**Value by Direct Capitalization**

Utilizing Direct Capitalization, the net operating income is converted into an estimate of value through the use of an Overall Rate (OAR).

*Investor Environment*

According to *Real Capital Analytics Capital Trends Monthly* for September 2009, combined sales of core properties have yet to show monthly growth in 2009, with three property types losing ground in July volume. Office sales, though, sustained a three-month rally through the end of July. However activity remains muted industry-wide, and sales of distressed properties, expected to be the catalyst to re-energize investment, have yet to materialize in earnest.

There is no shortage of distress, $108 billion in core properties are known to be in trouble, but lenders are moving slow to foreclose and the "pretend-and-extend" phenomenon has kept many assets in limbo and away from the circling vultures.

Of the $131 billion of properties that have fallen to default, foreclosure or bankruptcy this cycle, only about 10%, or $13.2 billion, have been resolved; even less, $11.0 billion in assets, has

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 89*

been reclaimed by lenders as REO.  The rest is either moving through the process or being extended or restructured.  With the final resolution for thousands of assets delayed, the anticipated wave of distressed property sales is not likely to break at once, but could fan out over an extended period of time.  Even if sales gain traction, a V-shaped rebound is unlikely.  The marketplace continues to be hampered by the same issues: more sellers than buyers, a pricing gap between the two, accumulating distress and constrained debt capital.

In every property type, owners have continued to flood the market with new offerings, and September, traditionally one of the heaviest months for new listings, is still to come.  Yet rumors abound that heavy bidding activity has returned in certain markets when assets are appropriately priced.

Sales of significant apartment properties, at $819 million, declined 18% for the second straight month after a bumper June when volume rose past $1 billion in the biggest jump of 2009.  New offerings declined to $1.5 billion and the ratio of offerings to closings fell below 2-to-1 after some portfolio offerings earlier in the year drew tepid interest from investors.  The proportion of apartment sales associated with distress reached 15% in August, but with new distress at 170% of closings, outstanding trouble is still rising.  New distress of $1.4 billion outpaced closed volume and pushed the total outstanding distress for apartments to over $21 billion.  Average prices for closed deals fell to $75,000 per unit and cap rates averaged 7.2%, both relatively unchanged from the prior month.

*Derivation of OAR*

Overall capitalization rates can be estimated with various techniques, depending upon the quality and quantity of data available. This appraisal considers the band of investment (a.k.a. the mortgage equity formula) and investor surveys.  Given the lack of recent comparable newly constructed, luxury apartment buildings, deriving a capitalization rate from comparable sales is not considered to be instructive.

*Band of Investment*

*The Dictionary of Real Estate Appraisal* defines the band of investment as "a technique in which the capitalization rates attributable to components of a capital investment are weighted and combined to derive a weighted-average rate attributable to the total investment."

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 90*

The band of investment analysis typically processes financing requirements on a long-term fixed basis.

According to *Master Money Matrix – Apartment Financing Edition*, published by Fantini & Gorga, a northeastern real estate financing firm based in Boston, MA, market rate mortgages are currently available with loan-to-value ratios from 60% to 80% for amortization periods from 25 to 30 years.  Interest rates range from 200 to 400 basis points over the 10-year Treasury.  As of the date of value, 10-year Treasuries were trading at 3.35%, indicating mortgage rates from approximately 5.35% to 7.35%.

Therefore, considering the location and that the subject property will represent a newly constructed rental investment property, a 70% loan-to-value ratio with a 25-year amortization schedule and an interest of 6.25%, is reasonable.  This indicates a mortgage constant of 7.92%

Applying an appropriate equity dividend rate to the mortgage equity technique is an integral part of the valuation process.  The equity rate of return is sensitive to the risk associated with the property, whether it be location, income flows, functional or physical obsolescence and most important of all, the economic climate.  For the subject property, an equity dividend of 5.0% appears appropriate.

Based on the preceding, the following tables summarize the band of investment, which indicates an OAR rounded to 8.4%

BAND OF INVESTMENT

|  | Factor | LTV | Weighted |
|---|---|---|---|
| Mortgage Constant | 0.0792 | 70.0% | 0.0554 |
| Equity Dividend | 0.0500 | 30.0% | 0.0150 |
| Weighted Average (Blended) Capitalization Rate |  |  | 0.0704 |

*Source: Calculations by MVS*

*Investor Surveys*

According to the *Korpacz Real Estate Investor Survey* for the third quarter of 2009, OARs for the national apartment market range from 5.8% to 10.0% and average 7.8%, a 35 basis point increase from the prior quarter and a 198 basis point increase from the prior year quarter.

The national investor survey considers high-quality rental investment properties similar to the subject property.  With consideration of the location and condition of the subject property,

**M E T R O P O L I T A N  V A L U A T I O N  S E R V I C E S**
R E A L  E S T A T E  C O N S U L T I N G  A N D  A P P R A I S A L

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 91*

it should trade within the range demonstrated by the investor surveys, or between 6.5% and 7.0%.

**Conclusions**

Inasmuch as a stabilized income pro forma is expressed in constant dollars, an equity dividend rate is utilized. The consensus of those actively engaged in the marketplace for office buildings is that equity rates of return (based upon forecasting techniques and assumptions similar to those utilized herein) fall within a broad range, depending on numerous risk factors, including, among others:

*Location:* The better the location the lower the rate of return. The subject property is situated in the highly affluent community of the Village of Lawrence, with excellent access to area residential amenities including shopping corridors, cultural activities, and houses of worship.

*Physical Characteristics of the Subject Property:* The newer the property, the higher the quality of construction and finishes, and the better the design and layout of the physical plant, the lower the rate of return. The subject property will be delivered in new condition, consistent with market expectations.

*Degree of Growth Forecasted for Income and Expenses:* The more aggressive and value enhancing the valuation assumptions, the higher the rate of return. The hypothetical contract rents are market oriented; as such there is limited upside potential.

*Amount of Equity Investment Required:* The greater the required equity investment (that portion of the total acquisition cost not typically funded by conventional financing), the higher the rate of return. The subject property is eligible for conventional market rate financing and requires no atypical equity investment.

*Type of Investment:* The riskier the perceived return on investment for a particular types of real estate, the higher the rate of return. Multifamily apartment properties are desirable investments with high investor interest.

**Summary**

The preceding analyses indicate OARs as follows:

| | |
|---|---:|
| Band of Investment | 7.0% |
| Investor Surveys | 6.5% to 7.0% |



**METROPOLITAN VALUATION SERVICES**
REAL ESTATE CONSULTING AND APPRAISAL

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 92*

| | |
|---|---|
| *Selection of OAR* | Based on the preceding, an overall capitalization rate within the range, or 6.75% is deemed appropriate for the subject property. Value is then calculated by dividing the stabilized net operating income by the concluded 6.75% overall capitalization rate. |

$$\$4,859,704 \text{ net operating income} \div 6.75\% = \$71,995,615$$

The indicated capitalized value equates to $290.53 per square foot, and $499,970 per unit, and appears to be market-oriented. The resulting capitalized value of $71,995,615 will be utilized in determining the residual value of the land, less the total development costs discussed in the following paragraphs.

| | |
|---|---|
| *Construction Costs* | We have been provided with a detailed construction budget from the developer for the construction of the original luxury condominium property. Despite numerous requests, a hypothetical construction budget for the construction of a rental property on the site has not been provided. Accordingly, and for purposes of this analysis, we have utilized costs from the *Marshall Valuation Service*, a nationally recognized cost service. The costs reflected include labor, materials, supervision, architects' fees, contractors' overhead and profit, sales taxes, permit fees and insurance during construction. Interest on interim construction financing is also included, but not financing costs, real estate taxes, and brokerage commissions. The cost does not include those expenses associated with buying and assembling the land or any improvement to the land. After adjusting for current and local cost multipliers, we have derived a construction cost estimate of $231.65 per square foot for the hypothetical construction as a rental property. Adding a market-oriented 5% entrepreneurial profit line-item to the budget equates to a total construction cost budget of $60,275,973 (inclusive of sunken costs). |

A model of the construction cost budget is presented on the table on the following page.

CALCULATOR COST METHOD

| | | |
|---|---|---|
| Occupancy (Section 11, Page 15, Class C, Good) | | Luxury-High Rise |
| Building Class | | "C" |
| Number of Stories | | 4 |
| Type | | Average |
| Base Square Foot Cost (Above-Grade) | $167.76 | |
| Section 11, Page 15 (Dated: November 2008) | 247,812 Sq.Ft. | $41,572,941 |
| Multistory Building Adjustment @ 0.5% per Story over 3rd Floor | 0.5% | $207,865 |
| Base Square Foot Cost (Sprinklers) | $2.00 | |
| Section 11, Page 28 (Dated: November 2008) | 247,812 Sq.Ft. | $495,624 |
| | | |
| Per Unit Appliance Package Cost | $2,500 | |
| Section 11, Page 35 (Dated: November 2008) | 144 Units | $360,000 |
| Subtotal | | $42,636,430 |
| | | |
| Current Cost Multiplier Section 99, Page 3 (Dated: November 2009) | | 0.990 |
| Local Multiplier - Section 99, Page 9 (Dated: November 2009) | | 1.360 |
| Total Costs via Calculator Cost Method | $231.65 | $57,405,689 |
| | | |
| Plus: Entrepreneurial Profit | 5% of Hard Costs | $2,870,284 |
| **Total Development Costs** | | **$60,275,973** |
| Per Square Foot of Gross Building Area Above-Grade | 247,812 Sq.Ft. | $243.23 |

*Source: Marshall Valuation Service; Calculations by MVS*

*Land Residual Value*    The derived total development costs are then debited from the previously derived capitalized value and investment value to estimate the residual value of the land.  As discussed within the Sales Comparison Approach, the sunken costs attributable to the site excavation and foundation, rounded to $5,300,000 are added to the indicated land residual value to reflect the "As Is" market value.  The following table illustrates the calculations discussed above.

LAND RESIDUAL TECHNIQUE CALCULATIONS

| | |
|---|---|
| Net Operating Income | $4,859,704 |
| Overall Capitalization Rate (OAR) | 6.75% |
| **Indicated Capitalized Value** | **$71,995,615** |
| Less: | |
| Estimated Construction Costs | ($60,275,973) |
| Residual Value to the Land | $11,719,641 |
| **(rounded)** | **$11,700,000** |
| Plus: Sunken Construction Costs | $5,300,000 |
| **"As Is" Market Value Estimate** | **$17,000,000** |

*Source: Calculations by MVS*

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 94*

**"As Is" Market Value**   Accordingly, it is our opinion that the Market Value of the Fee
Simple Interest in the subject property's land, and as if available to
be put to its Highest and Best Use, and inclusive of already-
sunken funds (hard and soft costs) expended by the developer, as
of October 30, 2009, via the Land Residual technique of the
Income Capitalization Approach, is:

**SEVENTEEN MILLION DOLLARS**
**($17,000,000)**

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 95*

### RECONCILIATION AND FINAL CONCLUSION TO VALUE

*Overview*

The purpose of this appraisal is to estimate the "As Is" Market Value of the Fee Simple Interest of the subject property as of October 30, 2009, the date the subject property site was most recently inspected by the staff of Metropolitan Valuation Services.

The indicated Market Value estimates are as follows:

| | |
|---|---|
| Sales Comparison Approach | $17,500,000 |
| Income Capitalization Approach | $17,000,000 |
| Cost Approach | Not Applicable |

We have placed primary emphasis on the value via the Land Residual technique given the lack of recent, truly comparable development site sales not requiring significant adjustment. Nonetheless, the value indication via the Sales Comparison Approach provides direct support to the Land Residual valuation.

*The Sales Comparison Approach*

This approach is applicable to all types of real property interests when there are sufficient recent, reliable transactions to indicate value patterns or trends in the market. When data is available, this is often the most reliable approach to value. When the market is weak and few transactions are available, the applicability of this approach is limited. The Sales Comparison Approach is also the primary indicator of value for properties that are not usually purchased for their income-producing characteristics.

Our market research has revealed several relevant sales and current listings of properties considered to be somewhat comparable to the subject property. Employing this data, a Sales Comparison Approach has been developed.

*The Income Capitalization Approach*

Any property that generates income can be valued using this approach. Often, when more than one approach to value is used to develop an opinion of value for an income-producing property, the value indication produced by the Income Capitalization Approach is given most consideration in the selection of the final value. This approach is favored by investors because it simulates investor motivations. The subject property is currently vacant land and not income-producing; therefore, the traditional Income Capitalization Approach is not appropriate. However, a hypothetical construction of a rental investment property is

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Page 96*

considered and a land residual technique is employed, which utilizes elements of the Income Capitalization Approach.

*The Cost Approach*  This approach to value is typically employed when the lack of market activity limits the usefulness of the Sales Comparison Approach and when the properties being appraised are not amenable to valuation by the Income Capitalization Approach. Additionally, this approach is often considered relevant in the valuation of newly-constructed buildings.  Since the site is currently vacant, the Cost Approach is not applicable.  However, elements of this approach are utilized in the land residual valuation scenario.

***"As Is" Value***  Based on the following analysis of all assembled data, we are of the opinion that the "As Is" Market Value of the Fee Simple Interest in the subject property, which includes developer expenditures for the site excavation and foundation (hard and soft costs), as of October 30, 2009, free and clear of financing, is:

**SEVENTEEN MILLION DOLLARS**
**($17,000,000)**

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

**ADDENDA**

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

**ENGAGEMENT LETTER**

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*



MVS #09-0632 DLy

Date: 10/15/2009

Appraisal Order #: 09-003638-02

Steven J Schleider
Metropolitan Valuation Service
444 PARK AVENUE SOUTH
New York, NY 10016

Dear Steven J Schleider,

This letter will serve as Capital One's engagement of your services with regard to the following property. The specifics of the engagement including the agreed upon fee and delivery date are listed below. The reports must be addressed to the Capital One Job Manager and an electronic copy of the report and invoice MUST be uploaded to the Award record on RIMSCentral http://www.rimscentral.com. Please reference on the invoice an invoice number, invoice date, your Tax ID #, the Capital One Order #, and a Property Reference. Any questions pertaining to this assignment should be addressed with the Capital One contact in RETECHS.

Fee: PER BID AWARD                              Due Date: 11/6/2009

| | |
|---|---|
| Property Location:<br>Property Type: | 260 Central Avenue, Lawrence, NY 11559<br>Multi-Family - Condominium/PUD Bldg(s) |
| Intended Use | Use - Foreclosure<br>Description: The intended use of this appraisal is to establish marketability and potential loan and asset recovery thresholds |
| Intended User | User - Capital One Bank<br>Description: The intended users of this report is Capital One Bank and-or affiliates |
| Approaches to Value | Approach - ALL<br>Description: All applicable approaches |
| Other Requirements | None |
| Report Type:<br>Format:<br>Appraisal Premise: | Self-Contained<br>Narrative<br>Market Value - As-Is - Fee Simple |
| Property Contact:<br>Phone: | Louis Scarcella<br>516-227-0767 |
| Capital One Job Manager:<br><br><br>Phone:<br>Email: | Sandro Collura<br>90 Park Avenue, 26th Floor - MC 90000<br>New York, NY 10016<br>212-834-1338<br>sandro.collura@capitalonebank.com |

An appraisal service must comply with the Comptroller of Currency appraisal standards as delineated by ruling 12 U.S.C. 93 a and Title XI of FIRREA dated 1989. Failure to comply with any of the above requirements may result in rejections of the appraisal. In addition, payment of the fee is subject to a review of the appraisal for compliance with the above mentioned requirements. Should you experience any delays in the performance of this appraisal, please notify us in writing via email no less than seven days prior to the due date.

As confirmation of your acceptance of this assignment under the terms specified in this letter, please return a signed copy of this engagement letter to us and include a copy in the addenda to the report. Signing of this engagement letter indicates that an appraisal report will comply with the most current USPAP and all guidelines specified. Evaluations must comply with the OCC's requirements for same. Also, by signing this letter you understand that Capital One is the client and that you are prohibited from appraising or performing an evaluation relative to this property for the next six months without the express

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*



written permission of the undersigned. Such permission will not be unreasonably withheld.

Capital One Bank will not accept limiting conditions which attempt to restrict potential damages to the fee collected for an assignment or suggest that the Bank should indemnify the vendor for a loss or claim stemming from their assignment. Any such ōlimiting conditionō must be removed from the vendors Contingent and Limiting Conditions.

If upon review, the appraisal report or evaluation is deemed unacceptable by Capital One for non-compliance issues, and requested changes and/or additions are not properly made, Capital One may elect to refuse payment of the appraiser's invoice.

## Capital One Appraisal Requirements

1)    If a direct sales comparison approach is utilized for land and improved valuation, the subject and comparables should be arranged on an adjustment grid. A matched paired analysis is the preferred method to estimate the amount of adjustments in the sales comparison approach. If a matched paired analysis is not applicable, provide explanation and support for all adjustments.
2)    For all significant multi-tenant income producing property appraisals, a discounted cash flow analysis should be prepared. Any elimination of this technique should be fully supported.
3)    If applicable, perform a direct capitalization analysis using a capitalization rate that is adequately supported by market evidence. If Ellwood or Akerson techniques are used, clear market support must be provided for the projected change in property value and for the applicability of the technique.

## Market Value Definition

**"Market Value" is defined by the United States Treasury Deparment, Comptroller of the Currency 12 CFR part 34, °
34.42 (f) as,**

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

(1)    Buyer and seller are typically motivated;
(2)    Both parties are well informed or well advised, and acting in what they consider their own best interests;
(3)    A reasonable time is allowed for exposure in the open market;
(4)    Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
(5)    The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

## FIRREA Appraisal Standards

**MINIMUM STANDARDS.** For federally related transactions, all appraisals shall, at a minimum:

(1)    Comply with the Uniform Standards of Professional Appraisal Practice ("USPAP");
(2)    Be sufficiently informative to support the institution's lending decision;
(3)    Analyze and report deductions and discounts, when appropriate;
(4)    State a Market Value estimate, as defined by this appraisal regulation;
(5)    Be performed by State licensed or certified appraiser.

The following items should be included in every report:
- Signed copy of engagement letter
- Copy of appropriate state certifications in addenda
- Properly completed invoice

Sincerely,

Sandro Collura

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*



Steven J.
Schleider,
MAI FRICS

Accepted:

Digitally signed by Steven J.
Schleider, MAI FRICS
DN: cn=Steven J. Schleider, MAI
FRICS, c=US, o=Metropolitan
Valuation Services,
email=sschleider@mvsappraisal.
com
Reason: I agree to the terms
defined by the placement of my
signature on this document
Date: 2009.10.15 11:06:21 -04'00'

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

**RIMS Customer:** Capital One
**Project #:** 09-003638-02-1

**— Award Information —**

| | | | |
|---|---|---|---|
| **Date Awarded:** | 10/15/2009 | | |
| **Canceled:** | No | **Directly Awarded:** | Yes |
| **Fee:** | $5,000.00 | **Delivery Date:** | 11/6/2009 |

**Property Contact Information:** Property contact information will be viewable upon acceptance of award.
**Award Comments:** Effective 03/02/2009, the process for shipping hard (final) copies of appraisal reports will change. After the review is completed, we will advise you where to send the hard copy reports.

**— Bid Information —**

**Proposed Fee:** Direct Award          **Proposed Delivery Date:**
**Signatory Information:**                    **Office Location:**
**Prior Services:** Have you ever appraised this property? If Yes, please provide details in the Comments field.
**Bid Comments:**

**— RFP Information —**

**Purpose Of Request:** Other
**Response Deadline:** 10/16/2009          **RFP Contact:** Sandro Collura
**Desired Delivery Date:** 11/06/2009          **Contact Phone:** 212-834-1338

**ADDRESSEES:** *Details available upon acceptance of Award*
*Total Addressees:* 1

**DISTRIBUTION:** *Details available upon acceptance of Award*
*Total # Hard Copies:* 2

**SCOPE OF SERVICES:**

| | |
|---|---|
| **Intended Use** | *The intended use of this appraisal is to establish marketability and potential loan and asset recovery thresholds* |
| **Intended User** | *The intended users of this report is Capital One Bank and-or affiliates* |
| **Approaches to Value** | *All applicable approaches* |
| **Other Requirements** | *None* |

**Report Type:** Self-Contained
**Report Format:** Narrative

**VALUATION SCENARIOS:**

| **Valuation Premise** | **Premise Qualifier** | **Property Interest** |
|---|---|---|
| Market Value | As-Is | Fee Simple |

**RFP Comments:**

Possible foreclosure. The intended use of this appraisal is to establish marketability and potential loan and asset recovery thresholds. Required to perform an inspection - Contact person from borrower is Eric Orlofsky at 516.565.9600 Previous appraisal performed by MVS on 11/11/2008 - MVS File # - 08-0594.

The property in this request consists of a 3.74 acre site. The property has a security fence around it. There is only a foundation in place and some fill removed from hole. It appears as if plans to construct property has been placed on hold. Purpose is to provide a Fee Simple Value of the property As Is. All three approaches are to be considered. Please include the approaches based on applicability to the property type being valued.

A New York State Certified General Appraiser must inspect the subject property and sign the report.

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

The addressee of the engagement letter must review and sign the appraisal report. If that is not the case, then when returning your bid, please indicate who the signatory of the report will be.

Capital One Bank requires that a final electronic copy of the appraisal report and invoice to be uploaded to RIMS project file no later than the due date. Once the report is reviewed and accepted, the Bank's appraisal reviewer will contact the appraiser to advise on where to ship the two (2) final hard copies of report. Please do not forward hard copies until permission to do so is granted.

The vendor is required to identify and ESTIMATE THE INSURABLE REPLACEMENT COST of every building on the appraised site. The FEMA definition of a building is a structure with two or more outside rigid walls and a fully secured roof that is permanently affixed: or a manufactured home (mobile home) that is affixed to a permanent foundation. It is permissible to conclude that a building has no contributory value but that structure still must be identified and a statement as to the non-contributory value made.

--- Property Information ---

| | |
|---|---|
| **Project Name:** | New Central Avenue, LLC |
| **Property Description / Construction Type:** | 3.74 acre site comprising 3 adjoining lots, prior building has been demolished and foundation poured for current project. |
| **Property Type:** | GA1 - Multi-Family - Condominium/PUD Bldg(s) - A multi-unit development in which ownership of the units is separately held in fee by the individual unit holders. Common areas are undivided and shared in common from the standpoint of ownership. |
| **Address:** | 260 Central Avenue, Lawrence, NY 11559 |
| **County:** | Nassau |
| **Improvement Size (Primary):** | 0 SF |
| **Land Size:** | 3.74 Acres |
| **Occupancy:** | 0% |
| **Parcel Numbers:** | Sec 40 Block B Lots 21-23 |
| **Current Use:** | Land w/foundation for structure in pkace |
| **Property Status:** | Under Construction |
| **Property Tenancy:** | Multi-Tenant |
| **Ground Lease?:** | No |
| **Listed for Sale?:** | No |
| **Pending/Recent Sale?:** | No |
| **Legal Description:** | 3.74 acre site comprising 3 adjoining lots located at 260 Central Ave, Lawrence, NY. Prior building has been demolished and foundation poured for prospective project. |

**Proposed Use:** residential condos

**Proposed Renovation?:** No

Copyright © 2009 ExactBid, Inc. All rights reserved.
RIMS™ and RIMSCentral™ are trademarks of ExactBid, Inc.

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

**ADDITIONAL SUBJECT PROPERTY PHOTOGRAPHS**

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*



*View facing northeast along Central Avenue*



*View facing southwest along Central Avenue*

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*



*View of site as date of inspection (ramp to garage)*



*View of site as date of inspection (site of pool)*

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*



*View of site as date of inspection*



*View of site as date of inspection*

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

**SUBMITTED DATA**

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

| Lienor/Claimant | Amount |
|---|---|
| Triton Construction Company | $3,457,317.47 |
| Breton Steel Corporation | $1,749,000.00 |
| Thorton Tomasetti, Inc. | $1,069,059.08 |
| Bay-End Contracting Corp. | $727,948.75 |
| L.J.B. Sewer & Dranage Corp. | $306,775.00 |
| Security USA, Inc. | $82,720.74 |
| Macro Enterprises, Ltd. | $25,759.41 |
| Blue Switch | $4,567.00 |
| **Total** | **$7,423,147.45** |

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

Page 1 of 2
BILL NUMBER
1504843002

# STATEMENT OF SCHOOL TAXES
## 2009 - 2010 LEVY



Make funds payable to
**DONALD X. CLAVIN, JR.**
RECEIVER OF TAXES
TOWN OF HEMPSTEAD
200 N.FRANKLIN STREET
HEMPSTEAD, NEW YORK 11550

OFFICE HOURS
MON. THRU FRI.
9 A.M TO 4:45 P.M.
TELEPHONE
(516) 538-1500

**FISCAL YEAR 7/01/09 THRU 6/30/10**

EST. STATE AID - SCHOOL DISTRICT          $8,353,474.00
ASSESSED VALUATION - SCHOOL DIST.         $29,778,145.00

**NEW CENTRAL AVE LLC**
**260 CENTRAL AVE**
**LAWRENCE, NY  11559**

**NEW CENTRAL AVE LLC**
**15 HOOVER ST**
**INWOOD, NY  11096**

OWNER'S NAME AND PROPERTY ADDRESS          BILLING ADDRESS

| PROPERTY DESCRIPTION | ** ARREARS ** | EXEMPTION DESCRIPTION | TAX RATE | TAXABLE VALUE |
|---|---|---|---|---|
| S.D.Code Section Block Lot | Building Unit | NON-EXEMPT | 0202.013 | 8,100 |
| ▶ 015  40  B  0021 | | | | |
| LOT GROUP 21-23 | | | | |

CLASS    33014     NEW YORK STATE DEPT. OF TAXATION
SWIS Code  282023    & FINANCE - SCHOOL DISTRICT CODE   337

| Tax Service Code | Taxpayer Code | Mortgage Account Number | Uniform % of Value | Full Value | Land Assessment | Total Assessment |
|---|---|---|---|---|---|---|
| | | | 1.000 | 810,000 | 8,100 | 8,100 |

| Levy Description | Total Tax Levied | % Change from Prior Year | Taxable Value | Tax Rate per $100 | Tax Amount |
|---|---|---|---|---|---|
| LAWRENCE PUBLIC SCHOOLS | $73,177,158.76 | + 1.54 | 8,100 | 195.473 | 15,833.313 |
| LOCAL LIBRARY | | | 8,100 | 6.540 | 529.740 |

** OUR RECORDS INDICATE THERE ARE ARREARS ON YOUR PROPERTY.
PLEASE SEE REVERSE SIDE.

Your tax savings this year resulting from the New York State
School Tax Relief (STAR) program are.....

**This is your school tax bill. Although school taxes are collected by the town's Receiver of Taxes, payments are forwarded to your local school district and, if applicable, a local library district. Hempstead Town plays no role in setting school tax rates and does not benefit from these payments.** Your local board of education, which is independently elected, and over which the town has no control, establishes your school budget. For more information about your school taxes, contact the
LAWRENCE PUBLIC SCHOOLS at 516-295-7052

**Here is how the payments you make to the Receiver of Taxes are distributed (does not include village taxes which are paid directly to the village in which you reside):**

| | $15,833.31 | | | | |
|---|---|---|---|---|---|
| $20,000.00 | | | $8,436.06 | | $3,215.46 |
| $10,000.00 | | $529.74 | | $309.25 | |
| 0 | SCHOOL | LIBRARY | COUNTY | TOWN | SPECIAL DISTRICTS |

| First Half Tax | $8,181.53 | Second Half Tax | $8,181.52 | PAY THIS AMOUNT IF TOTAL TAX IS PAID ON OR BEFORE 10/10/09 | $16,281.23 |
|---|---|---|---|---|---|
| Penalty Thru | | Penalty Thru | | | |
| | | Discount | | | |
| Total ▶ | | Total ▶ | | TOTAL TAX ▶ | $16,363.05 |

PLEASE BRING BOTH PAGES OF THIS BILL WHEN PAYING IN PERSON

p.4          5166926675          Shira          Oct 14 09 11:31a

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

Page 2 of 2
BILL NUMBER
1504843002

## A Message About Your School Tax Bill

**Payments you make in response to this bill are forwarded to your local school district and do not fund the operation of town government. Two factors determine the amount of this bill, both of which are beyond the control of Hempstead Town:**

- the assessment on your home, which is determined by Nassau County, and
- the budget adopted by your local board of education.

The assessed value of residential property is determined by taking the fair market value of the property and multiplying it by a uniform percent of value (fair market value X uniform percent of value = assessed value).

For purposes of comparison, data on comparable properties may be obtained from the Nassau County Dept. of Assessment, 240 Old Country Road - 4th Floor, Mineola, New York 11501. Phone (516) 571-1500.

The Nassau County Dept. of Assessment updates assessments on real estate in the county annually. Accordingly, the amount of this bill may have been affected by an adjustment in the county's evaluation of your property.

For purposes of comparison, below are Nassau County's fair market valuations for your parcel:
2009 assessment roll:    $810,000        2010 assessment roll:    $810,000



You may now pay your taxes by credit card or e-check on-line or by phone. To do so you will need either your School District, Section, Block and Lot numbers or your Bill Number, both of which can be found on page 1 of this bill. Please note that the company which processes these transactions imposes a convenience fee for the use of this service. To pay by credit card or e-check, or for more information, visit www.officialpayments.com or call 1-877-306-6056.

PLEASE BRING BOTH PAGES OF THIS BILL WHEN PAYING IN PERSON

**FIRST HALF RECEIPT INFORMATION**
SWIS CODE    S.D.    SEC    BLOCK    LOT    BLDG    UNIT
282023    015    40    B    0021
LOT GROUP 21-23

**SECOND HALF RECEIPT INFORMATION**
NEW CENTRAL AVE LLC

---

PAYOR (Other than Owner)                                    Tear along perforation

## 2009 - 2010 SCHOOL TAX - SECOND HALF

| SECOND HALF - 2009 - 2010 SCHOOL TAXES DUE APRIL 1, 2010 SECOND HALF TAX PAYABLE WITHOUT PENALTY TO MAY 10, 2010 |
|---|

2009 - 2010 SCHOOL TAXES - TOWN OF HEMPSTEAD
SWIS CODE    S.D.    SEC    BLOCK    LOT    BLDG    UNIT
282023    015    40    B    0021
LOT GROUP 21-23

**SECOND HALF TAX**              **$8,181.52**

When paying by mail you MUST return this stub with payment of the second half tax. If paying TOTAL tax bill, return BOTH first and second half stubs with payment.

When paying in person, bring in ENTIRE bill. Do not detach stubs.
☐ Check here if you desire a tax receipt

CASH ☐    CERT. CK. OR M.O. ☐    CK. SUB. TO COL. ☐    IN PERSON ☐

PAYOR (Other than Owner)

**IMPORTANT: Write Property Description on ALL Payments.**
Checks payable to DONALD X. CLAVIN, JR., Receiver of Taxes.

OWNER'S NAME    NEW CENTRAL AVE LLC

DO NOT WRITE BELOW THIS LINE        16,281.23

1 1504843002 1022000081815²

SEE REVERSE SIDE FOR PENALTY SCHEDULE - REVIEW TAX DATA ON REVERSE SIDE

---

Tear along perforation

## 2009 - 2010 SCHOOL TAX - FIRST HALF

| FIRST HALF - 2009 - 2010 SCHOOL TAXES DUE OCTOBER 1, 2009 FIRST HALF TAX PAYABLE WITHOUT PENALTY TO NOVEMBER 10, 2009 |
|---|

2009 - 2010 SCHOOL TAXES - TOWN OF HEMPSTEAD
SWIS CODE    S.D.    SEC    BLOCK    LOT    BLDG    UNIT
282023    015    40    B    0021
LOT GROUP 21-23

**FIRST HALF TAX**              **$8,181.53**

When paying by mail you MUST return this stub with payment of the first half tax. If paying TOTAL tax bill, return BOTH first and second half stubs with payment.

When paying in person, bring in ENTIRE bill. Do not detach stubs.
☐ Check here if you desire a tax receipt

CASH ☐    CERT. CK. OR M.O. ☐    CK. SUB. TO COL. ☐    IN PERSON ☐

PAYOR (Other than Owner)

**IMPORTANT: Write Property Description on ALL Payments.**
Checks payable to DONALD X. CLAVIN, JR., Receiver of Taxes.

OWNER'S NAME    NEW CENTRAL AVE LLC

DO NOT WRITE BELOW THIS LINE

1 1504843002 1021000081815³

SEE REVERSE SIDE FOR PENALTY SCHEDULE - REVIEW TAX DATA ON REVERSE SIDE

p.5        6169926675        Shira        Oct 14 09 11:31a

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

Jun 02 09 10:22a    Shira                         5165925675              p.2

**2009 TAX LEVY**

### INCORPORATED VILLAGE OF LAWRENCE
### 196 CENTRAL AVENUE • LAWRENCE, NY 11559

FISCAL YEAR
6/1/09 - 5/31/10

ACCOUNT NO.  200

| | |
|---|---|
| FULL VALUE | $810,000 |
| UNIFORM % OF VALUE: | 0.25 |
| TOTAL ASSESSED VALUE: | 2,025 |

SECTION:  40
BLOCK  :  00B
LOT(S)  :  021,022,023

PROPERTY ADDRESS:  260 CENTRAL AVE

| | |
|---|---|
| EXEMPTION: | 0 |
| FULL VALUE: | 0 |
| TAXABLE VALUE: | $2,025 |
| TAX RATE PER $100: | 71.600000 |

TAX
BILLING
ADDRESS

NEW CENTRAL AVE LLC
15 HOOVER STREET
INWOOD, NY 11096

| | |
|---|---|
| REAL ESTATE TAX: | $1,449.90 |
| SEWER RENT: | $0.00 |
| **TOTAL TAX** | **$1,449.90** |

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

Retain this section
for your records.

- - - - - - - - - ▲    DETACH HERE    ▲ - - - - - - - - - -

## 2009 - 2010 LAWRENCE VILLAGE TAX


**2ND HALF**

**DUE DECEMBER 1, 2009**

PENALTY AFTER DECEMBER 31, 2009

When paying by mail, detach and return this stub with
payment for second half tax.

When paying in person, bring entire bill with you. Do not
detach stubs.

**Make check payable to:  VILLAGE OF LAWRENCE**

☐ Check here if you wish to receive a receipt for this payment.

ACCOUNT NO.  200

SECTION:  40
BLOCK  :  00B
LOT(S)  :  021,022,023

OWNERS NAME:  NEW CENTRAL AVE LLC

PROPERTY ADDRESS:  260 CENTRAL AVE

| | |
|---|---|
| **SECOND HALF TAX** | **$724.95** |
| PENALTY | _____ |

- - - - - - - - - ▲    DETACH HERE    ▲ - - - - - - - - - -

## 2009 - 2010 LAWRENCE VILLAGE TAX

**1ST HALF**

**DUE JUNE 1, 2009**

PENALTY AFTER JULY 1, 2009

When paying by mail, detach and return this stub with
payment for first half tax. *If paying TOTAL TAX, return
both first and second half stubs with payment.*

When paying in person, bring entire bill with you. Do not
detach stubs.

**Make check payable to:  VILLAGE OF LAWRENCE**

☐ Check here if you wish to receive a receipt for this payment.

ACCOUNT NO.  200

SECTION:  40
BLOCK  :  00B
LOT(S)  :  021,022,023

OWNERS NAME:  NEW CENTRAL AVE LLC

PROPERTY ADDRESS:  260 CENTRAL AVE

| | |
|---|---|
| **FIRST HALF TAX** | **$724.95** |
| PENALTY | _____ |

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

*emailed /scan to*
*Aaron, Eric & Dave 11-9-9*

VILLAGE OF LAWRENCE
196 CENTRAL AVENUE
LAWRENCE, NY 11559
(516)239-4600 x14

TAX NOTICE REMINDER NOTICE

11/ 9/2009

NEW CENTRAL AVE LLC
15 HOOVER STREET
INWOOD NY 11096

Parcel ID....: 40--00B--021
Legal Address: 260 CENTRAL AVE
Bill Number..: 000200

Re: Village Tax Reminder

| | Amount | Penalty % | Penalty | Total |
|---|---|---|---|---|
| First Half............: | 724.95 | 9.00 | 65.25 | 790.20 |
| Second Half...........: | 724.95 | 0.00 | 0.00 | 724.95 |
| TOTAL---->>>>>>>>>....: | | | | 1515.15 |

Kindly note that your second half Village tax payment is due DECEMBER 1ST.

All payments received after December 31, 2009 are subject to penalties.

When remitting payment, kindly send the second half stub which is attached
to the bill you received in June.  If you are unable to locate your tax
bill, you may return this notice with your check or call for a duplicate
copy of the bill.

On the reverse of your tax bill, the law which establishes the penalties
for delinquent taxes is cited.  Please note that penalties for second half
tax payments must be added after December 31st.

If you have any questions, please feel free to contact me at (516) 239-4600.

Sincerely,

Lina Fusco
Tax Department

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

---

**STATEMENT OF TAXES**
**2009 GENERAL LEVY**
**TOWN OF HEMPSTEAD - COUNTY OF NASSAU**

Page 1 of 2
BILL NUMBER
1504840001

Make funds payable to
**DONALD X. CLAVIN, JR.**
RECEIVER OF TAXES
TOWN OF HEMPSTEAD
200 N.FRANKLIN STREET
HEMPSTEAD, NEW YORK 11550

OFFICE HOURS
MON. THRU FRI.
9 A.M TO 4:45 P.M.

TELEPHONE
(516) 538-1500

FISCAL YEAR 01/01/09 THRU 12/31/09
EST. STATE AID - COUNTY $230,340,743.00
EST. STATE AID - TOWN $4,050,000.00
COUNTY SALES TAX CREDIT $28,777,396.00

**NEW CENTRAL AVE LLC**
**260 CENTRAL AVE**
**LAWRENCE, NY 11559**

**NEW CENTRAL AVE LLC**
**15 HOOVER ST**
**INWOOD, NY 11096**

| PROPERTY DESCRIPTION | EXEMPTION DESCRIPTION | CONSOLIDATED TAX CODE | TAX RATE | TAXABLE VALUE |
|---|---|---|---|---|
| | NON-EXEMPT | 204 | 147.664 | 8,100 |

S.D Code 015  Section 40  Block B  Lot 0021  Building  Unit
Lot Group 21-23

Class 33014    SWIS Code 282023

| Tax Service Code | Taxpayer Code | Mortgage Account No. | Uniform % of Value | Full Value | Land Assessment | Total Assessment |
|---|---|---|---|---|---|---|
| | | | 1.000 | 810,000 | 8,100 | 8,100 |

| Levy Description | Total Taxes Levied | % Change from Prior Year | Exemption Code | Taxable Value | Tax Rate per $100 | Tax Amount |
|---|---|---|---|---|---|---|
| COUNTY-GENERAL PURPOSES* | $68,891,959.56 | +7.53 | | 8,100 | 13.731 | 1,112.211 |
| NASSAU COMMUNITY COLLEGE | $23,647,092.49 | +4.09 | | 8,100 | 4.992 | 404.352 |
| COUNTY POLICE | $161,119,742.66 | +3.63 | | 8,100 | 55.504 | 4,495.824 |
| COUNTY POLICE HEADQUARTER | $130,759,490.34 | +3.56 | | 8,100 | 27.924 | 2,261.844 |
| COUNTY FIRE PREVENTION | $6,989,675.99 | -0.41 | | 8,100 | 1.508 | 122.148 |
| COUNTY ENVIRONMENTAL BOND | $2,184,195.49 | -34.27 | | 8,100 | 0.490 | 39.690 |
| THE TOTAL OF YOUR NASSAU COUNTY TAXES IS | | | | | | $8,436.069 |
| TOWN-GENERAL PURPOSES | $17,169,047.84 | +3.49 | | 8,100 | 3.818 | 309.258 |
| THE TOTAL OF YOUR TOWN OF HEMPSTEAD TAXES IS | | | | | | $309.258 |
| SANITARY DIST 1 | $16,205,923.87 | +6.66 | | 8,100 | 39.697 | 3,215.457 |
| THE TOTAL OF YOUR SPECIAL DISTRICT TAXES IS | | | | | | $3,215.457 |
| PRO RATA 2007 GENERAL-EXE | | | | | | 105,824.790 |
| PRO RATA 2008 GENERAL-EXE | | | | | | 57,763.710 |
| THE TOTAL OF YOUR DIRECT ASSESSMENTS IS | | | | | | $163,588.50 |

| FIRST HALF TAX | $87,774.64 | SECOND HALF TAX | $87,774.64 | PAY THIS AMOUNT IF TOTAL TAX IS PAID ON OR BEFORE 01/10/09 | $174,671.53 |
|---|---|---|---|---|---|
| PENALTY THRU | | PENALTY THRU | | | |
| | | DISCOUNT | | | |
| TOTAL ▶ | | TOTAL ▶ | | TOTAL TAX ▶ | $175,549.28 |

PLEASE BRING BOTH PAGES OF THIS BILL WHEN PAYING IN PERSON

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*



Page 2 of 2
BILL NUMBER
1504840001

## A Message About Your General Tax Bill

Hempstead Town does NOT set your assessment, but we can help you lower your taxes. The town recently mailed you an assessment challenge guide. Your assessment is an important factor in determining the amount of taxes you pay. You should know:

- Assessment reductions are no longer carried forward from one year to the next. You may want to consider challenging your assessment annually.
- Your assessment cannot be raised as a result of an assessment challenge.

The assessed value of residential property is determined by taking the fair market value of the property and multiplying it by a uniform percent of value (fair market value X uniform percent of value = assessed value).

For purposes of comparison, data on comparable properties may be obtained from the Nassau County Dept. of Assessment, 240 Old Country Road - 4th Floor, Mineola, NY 11501. Phone (516) 571-1500.

The Nassau County Dept. of Assessment updates assessments on real estate in the county annually. Accordingly, the amount of this bill may have been affected by an adjustment in the county's evaluation of your property.

For purposes of comparison, below are Nassau County's fair market valuations for your parcel.
2008 assessment roll: $9,885,500       2009 assessment roll: $810,000

You may now pay your taxes by credit card or e-check on-line or by phone. To do so you will need either your School District, Section, Block and Lot numbers or your Bill Number, both of which can be found on page 1 of this bill. Please note that the company which processes these transactions imposes a convenience fee for the use of its services. To pay by credit card or e-check, or for more information, visit www.officialpayments.com or call 1-877-306-6066.

PLEASE BRING BOTH PAGES OF THIS BILL WHEN PAYING IN PERSON

**FIRST HALF RECEIPT INFORMATION**

| SSCOND | S.C. | SEC | BLOCK | LOT | BLDG | UNIT |
|---|---|---|---|---|---|---|
| 282023 | 015 | 40 | B | 0021 | | |

Lot Group 21-23

| FIRST HALF PAID | | PENALTY INCLUDED | |
|---|---|---|---|
| DATE | BATCH | TRANS | ITEM |

REMITTANCE
SUBJ. TO COLL. ☐

PAYOR (Other than Owner)

**SECOND HALF RECEIPT INFORMATION**

NEW CENTRAL AVE LLC

| SECOND HALF PAID | | DISCOUNT ALLOWED (-) |
|---|---|---|
| | | PENALTY INCLUDED (+) |
| DATE | BATCH | TRANS | ITEM |

REMITTANCE
SUBJ. TO COLL. ☐

PAYOR (Other than Owner)

*Tear along perforation*

## 2009 GENERAL TAX - SECOND HALF

**SECOND HALF - 2009 GENERAL TAXES**
**DUE JULY 1, 2009**
**SECOND HALF TAX PAYABLE**
**WITHOUT PENALTY TO AUGUST 10, 2009**

When paying by mail you MUST return this stub with payment of the second half tax. If paying TOTAL tax bill, return BOTH first and second half stubs with payment.
When paying in person, bring in ENTIRE bill. Do not detach stubs.
☐ Check here if you desire a tax receipt

**IMPORTANT: Write Property Description on ALL Payments.**
Checks payable to DONALD X. CLAVIN, JR., Receiver of Taxes.

2009 GENERAL TAXES - TOWN OF HEMPSTEAD

| SWIS CODE | S.D. | SEC | BLOCK | LOT | BLDG | UNIT |
|---|---|---|---|---|---|---|
| 282023 | 015 | 40 | B | 0021 | | |

Lot Group 21-23

**SECOND HALF TAX**            $87,774.64

| CASH ☐ | CERT. CK. ☐ | CK. SUBJ. ☐ | IN PERSON ☐ |
|---|---|---|---|
| | DR.M.O. | TO COLL. | |

PAYOR (Other than Owner)

OWNER'S NAME — NEW CENTRAL AVE LLC

174,671.53

1 1504840001 0912000877464

SEE REVERSE SIDE FOR PENALTY SCHEDULE - REVIEW TAX DATA ON REVERSE SIDE

*Tear along perforation*

## 2009 GENERAL TAX - FIRST HALF

**FIRST HALF - 2009 GENERAL TAXES**
**DUE JANUARY 1, 2009**
**FIRST HALF TAX PAYABLE**
**WITHOUT PENALTY TO FEBRUARY 10, 2009**

When paying by mail you MUST return this stub with payment of the first half tax. If paying TOTAL tax bill, return BOTH first and second half stubs with payment.
When paying in person, bring in ENTIRE bill. Do not detach stubs.
☐ Check here if you desire a tax receipt

**IMPORTANT: Write Property Description on ALL Payments.**
Checks payable to DONALD X. CLAVIN, JR., Receiver of Taxes.

2009 GENERAL TAXES - TOWN OF HEMPSTEAD

| SWIS CODE | S.D. | SEC | BLOCK | LOT | BLDG | UNIT |
|---|---|---|---|---|---|---|
| 282023 | 015 | 40 | B | 0021 | | |

Lot Group 21-23

**FIRST HALF TAX**            $87,774.64

| CASH ☐ | CERT. CK. ☐ | CK. SUBJ. ☐ | IN PERSON ☐ |
|---|---|---|---|
| | DR.M.O. | TO COLL. | |

PAYOR (Other than Owner)

OWNER'S NAME — NEW CENTRAL AVE LLC

1 1504840001 0911000877464

SEE REVERSE SIDE FOR PENALTY SCHEDULE - REVIEW TAX DATA ON REVERSE SIDE

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*



*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

***QUALIFICATIONS OF THE APPRAISERS***

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*

## STEVEN J. SCHLEIDER, MAI, FRICS, LEED AP
## PRESIDENT – METROPOLITAN VALUATION SERVICES

**STEVEN J. SCHLEIDER** Co-founded Metropolitan Valuation Services, Inc. to serve a broad-base of clients developed over his career in real estate.

As director for a national valuation and due diligence firm, the vast majority of appraisal assignments relating to the post-recession wave of major residential construction, development and re-adaptive use projects in the New York area were conducted under his supervision. Additionally, the significant large-scale multi-family complexes in the region for FannieMae and FreddieMac loan portfolios were appraised by his team.

Mr. Schleider's experience in real estate is broad and his assignments have included development strategies, valuation and/or feasibility studies for market-rate and subsidized rental facilities, nursing home, age-restricted and assisted-living residences, cooperative and condominium apartment buildings, development projects in various stages of approval; and, valuation modeling and consulting for various lower- and moderate-income housing programs involving LIHTCs and low floater rate tax exempt revenue bond financing. Mr. Schleider's experience with HUD-based programs includes numerous section 8 facilities, MAP, and rent comparability surveys. These activities have been conducted on behalf of investment firms, international and domestic pension funds, major industrial corporations, leading foreign and domestic financial institutions, individual investors and leading law firms. Additionally, Mr. Schleider has developed and conducted seminars relating to multi-family valuation issues for the New York City Housing Development Corporation and the New York State Housing Finance Agency.

Mr. Schleider is a designated member of the Appraisal Institute (MAI), a fellow of the Royal Institute of Chartered Surveyors (FRICS) and is certified by the State of New York and State of New Jersey as a real estate General Appraiser. Mr. Schleider is also a LEED Accredited Professional (Leadership in Energy and Environmental Design) of the United States Green Building Council (USGBC). Mr. Schleider received his Bachelor of Arts degree from Berklee College and has completed numerous graduate courses in finance and economics at the Bernard M. Baruch School of Business, City University of New York. He has served as President of the Associate and Affiliate Members Organization of the New York Metropolitan Chapter of the Appraisal Institute, and currently serves as an officer on the Chapter's Board of Directors and has chaired both the Admissions and Education Committees. In 2005 Mayor Michael Bloomberg re-appointed Mr. Schleider to the New York City Rent Guidelines Board. Mr. Schleider is a member of the Real Estate Board of New York and currently serves on its Housing Committee and its Appraisal Committee.

*260 Central Avenue*
*Lawrence, NY*
*November 12, 2009*
*Addenda*


### DAVID C. LYON

VICE PRESIDENT - METROPOLITAN VALUATION SERVICES


**David C. Lyon** is a Vice President with Metropolitan Valuation Services, Inc., with over 10 years of experience in the valuation industry.  Mr. Lyon's appraisal experience has included a variety of income-producing properties within the Metropolitan New York and Northeast regions, as well as assignments completed on a nationwide basis.  Areas of particular specialization and expertise include large-scale office buildings; regional and community retail shopping centers; and other retail and commercial facilities.  In addition to his expertise in office and retail industry, Mr. Lyon has extensive experience in the appraisal of major multi-family rental; cooperative, and condominium facilities; proposed sub-divisions; vacant residential and commercial land; scheduled development sites; and feasibility and market studies.

Mr. Lyon also implemented and directs the company's Litigation Support Division providing valuation and consulting services for tax certiorari purposes.  Clients include prominent law firms and property owners, as well as major municipalities including the City of New York Law Department.

Prior to joining Metropolitan Valuation Services, Inc., Mr. Lyon was employed as a Senior Appraiser for a Manhattan-based regional appraisal and real estate consulting firm where he specialized in the appraisal of investment-grade commercial real estate in the Metropolitan New York area.

Mr. Lyon earned his Bachelor of Arts degree with a major in Political Science and a minor in Philosophy from LeMoyne College, Syracuse, New York.  Mr. Lyon is certified by the State of New York as a Real Estate General Appraiser (NY Certification #46000043655), and is a General Associate member of the Appraisal Institute, actively pursuing the prestigious MAI designation.  Mr. Lyon has successfully completed all educational requirements for the MAI designation, and has also been awarded a Certificate in the Appraisal of Investment Properties from New York University (Fall 2001).  Mr. Lyon was also recently announced as one of the inaugural recipients of a merit-based scholarship awarded by the Scholarship Committee of the New York Metropolitan Chapter of the Appraisal Institute.

Mr. Lyon is also active in local and national charitable endeavors, and has been recognized as a top individual fundraiser in the State of New York for the March of Dimes WalkAmerica Campaign in 2006, 2007, and 2008.