QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------- x
In re:                                             :    Chapter 11 Case
                                                   :
LEHMAN BROTHERS HOLDINGS INC.,                     :    No. 08-13555 (JMP)
et al.                                             :
                                                   :    Jointly Administered
                           Debtors.                :
-------------------------------------------------- x
```

## SUMMARY SHEET

| | |
|---|---|
| **Name and Role of Applicant** | Quinn Emanuel Urquhart & Sullivan, LLP |
| **Authorized to Provide professional services to:** | The Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. |
| **Date of Retention** | October 21, 2008, (*Nunc pro tunc* to September 15, 2008) |
| **Compensation Period** | October 1, 2009 through January 31, 2010 |
| **Fees Incurred for Counsel** | $2,829,628.18 |
| **Expenses Incurred** | $191,748.74 |
| **Prior Interim Applications Filed** | This is the Fourth Interim Fee Application Filed by Quinn Emanuel Urquhart & Sullivan, LLP |
| **Blended Hourly Rate for Fees Incurred during Compensation Period** | $461.17 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period (Attorneys Only)** | $552.23 |

## Schedule 1

## Hours, Rate and Fees for Services Rendered during the Fourth Interim Fee Period[1].

| ATTORNEY/ PARAPROFESSIONAL | TITLE | RATE | HOURS | FEE |
|---|---|---|---|---|
| John B. Quinn | Partner | 950.00 | 49.30 | 46,835.00 |
| Kathleen Sullivan | Partner | 950.00 | 2.70 | 2,565.00 |
| Daniel P. Cunningham | Partner | 950.00 | 46.00 | 43,700.00 |
| Faith Gay | Partner | 950.00 | 14.20 | 13,490.00 |
| Michael B. Carlinsky | Partner | 950.00 | 1.80 | 1,710.00 |
| Sue Prevezer QC | Partner | 950.00 | 18.20 | 17,290.00 |
| Marc A. Becker | Partner | 950.00 | 12.70 | 12,065.00 |
| Richard East | Partner | 950.00 | 3.60 | 3,420.00 |
| Dominic Surprenant | Partner | 878.00 | 7.90 | 6,912.50 |
| Susheel Kirpalani | Partner | 820.00 | 16.70 | 13,694.00 |
| James C. Tecce | Partner | 775.00 | 741.10 | 574,352.50 |
| Eric D. Winston | Partner | 740.00 | 41.70 | 30,858.00 |
| Erica Taggart | Partner | 660.00 | 333.60 | 220,176.00 |
| Joseph G. Minias | Partner | 660.00 | 29.40 | 19,404.00 |
| Daniel Holzman | Counsel | 650.00 | 5.30 | 3,445.00 |
| Scott C. Shelley | Counsel | 650.00 | 22.00 | 14,300.00 |
| Eric M. Kay | Counsel | 650.00 | 371.80 | 241,670.00 |
| Matthew Bunting | Associate | 530.00 | 37.10 | 19,663.00 |
| Jake M. Shields | Associate | 445.00 | 0.70 | 311.50 |
| Robert K. Dakis | Associate | 430.00 | 322.10 | 138,503.00 |
| Maria Granovsky | Associate | 410.00 | 10.50 | 4,305.00 |
| Jeanine Zalduendo | Associate | 410.00 | 17.20 | 7,052.00 |
| Tyler G. Whitmer | Associate | 400.00 | 528.10 | 211,240.00 |
| Marc A. Palladino | Associate | 400.00 | 133.00 | 53,200.00 |
| Marisa B. Miller | Associate | 400.00 | 54.00 | 21,600.00 |
| Lance Yang | Associate | 380.00 | 153.60 | 58,368.00 |
| James Shaerf | Associate | 380.00 | 167.80 | 63,764.00 |
| Chenai Tucker | Associate | 380.00 | 1.40 | 532.00 |
| Muireann Dennehy | Associate | 380.00 | 0.40 | 152.00 |
| Olga M. Urbieta | Associate | 380.00 | 139.90 | 53,162.00 |
| Cash Rowden[2] | Attorney | 560.00 | 43.70 | 24,472.00 |
| | | 320.00 | 240.70 | 77,024.00 |
| Heather Nolan | Attorney | 485.00 | 3.00 | 1,455.00 |

[1]    The titles and hourly rates list above are reflective of the current status, and may have changed during the interim period.

[2]    Beginning with the November Fee Statement, Quinn Emanuel unified the hourly fee of staff attorneys.  As of November all staff attorneys are billed at $320.00 per hour.

| ATTORNEY/ PARAPROFESSIONAL | TITLE | RATE | HOURS | FEE |
|---|---|---|---|---|
| | | 320.00 | 4.80 | 1,536.00 |
| Malik Burroghs | Attorney | 430.00 | 69.30 | 29,799.00 |
| | | 320.00 | 169.10 | 54,112.00 |
| Stephanie McCarthy | Attorney | 430.00 | 6.40 | 2,752.00 |
| | | 320.00 | 36.50 | 11,680.00 |
| Stephen Chiu | Attorney | 410.00 | 66.50 | 27,265.00 |
| | | 320.00 | 319.80 | 102,336.00 |
| John Volpe | Associate | 320.00 | 620.50 | 198,560.00 |
| Christopher Clark | Attorney | 320.00 | 286.40 | 91,648.00 |
| SoYun Roe | Attorney | 390.00 | 89.80 | 35,022.00 |
| | | 320.00 | 462.40 | 147,968.00 |
| Diego DiGiovanni | Law Clerk | 410.00 | 55.80 | 22,878.00 |
| | | 320.00 | 283.80 | 90,816.00 |
| Roy Nelson | Managing Clerk | 280.00 | 5.00 | 1,400.00 |
| Jeffrey L. Benner | Law Clerk | 295.00 | 11.70 | 3,451.50 |
| Joan Collopy | Paralegal | 250.00 | 6.90 | 1,725.00 |
| Sonal Pandya | Paralegal | 250.00 | 3.00 | 750.00 |
| Shahreen Mehjabeen | Paralegal | 250.00 | 0.40 | 100.00 |
| Jonathan Land | Lit Support | 365.00 | 0.30 | 109.50 |
| Danny Rose | Lit Support | 150.00 | 22.80 | 3,420.00 |
| Joe Liao | Lit Support | 150.00 | 19.40 | 2,910.00 |
| Raul Vasquez | Lit Support | 150.00 | 60.10 | 9,015.00 |
| Linda Jovel | Lit Support | 150.00 | 2.60 | 390.00 |
| Jet Ma | Lit Support | 150.00 | 5.30 | 795.00 |
| Michael Lee | Lit Support | 150.00 | 9.20 | 1,380.00 |
| Matt Hester | Lit Support | 150.00 | 2.80 | 420.00 |
| Jacob Cisneros | Lit Support | 150.00 | 82.90 | 12,435.00 |
| Arthur Daye | Lit Support | 150.00 | 32.60 | 4,890.00 |
| Hilary Quatinetz | Lit Support | 150.00 | 34.10 | 5,115.00 |
| Reserved Fee Application Deduction Amount | | | | ($35,740.32)[3] |
| **TOTAL** | | | 6,341.40 | $2,829,628.18 |

---

[3]     Quinn Emanuel's actual fees incurred for the preparation of fee applications is $64,394.00.  Consistent with the Fee Committee Guidelines, Quinn Emanuel is only seeking 1% of the total fees charged for this period and not the actual fees associated for the preparation of fee applications.  Quinn Emanuel reserves the right to seek the remaining $35,740.32 at a later date.

## Schedule 2

## Hours and Fees for the Fourth Interim Compensation Period As Rendered By Category

| CODE | MATTER | HOURS | FEES |
|---|---|---|---|
| LEH01 | Case Management/Calendar Maintenance | 72.90 | $23,328.00 |
| LEH02 | Cash Collateral and DIP Financing | 0.10 | $77.50 |
| LEH03 | Claims Analysis/Objections | 116.6 | $61,336.00 |
| LEH05 | Court Hearing | 34.30 | $21,405.00 |
| LEH06 | Creditor Communication | 3.80 | $2,910.00 |
| LEH07 | Creditors' Committee Meetings | 57.00 | $39,344.00 |
| LEH09 | Lender and Counterparty Claims | 97.80 | $52,423.00 |
| LEH011 | Litigation/Potential Litigation | 45.0 | $26,336.00 |
| LEH012 | Non-Working Travel | 103.60 | $64,990.50 |
| LEH013 | Other Conflict Roles | 5.30 | $4,202.00 |
| LEH016 | Quinn Emanuel Fee Applications | 175.8 | $28,653.68[4] |
| LEH017 | Retention of Professionals | 4.10 | $1,881.50 |
| LEH018 | Rule 2004 Investigations | 9.9 | $2284.00 |
| LEH021 | Derivatives | 113.60 | $88,459.50 |
| LEH022 | Barclays' Transaction Investigation and Litigation | 4,027.30 | $1,691,893.00 |
| LEH023 | Special Litigation | 1474.3 | $720,104.50 |
| | **TOTAL** | 6,341.40 | $2,829,628.18 |

---

[4]    Quinn Emanuel's actual fees incurred for the preparation of fee applications is $64,394.00.  Consistent with the Fee Committee Guidelines, Quinn Emanuel is only seeking 1% of the total fees charged for this period and not the actual fees associated for the preparation of fee applications.  Quinn Emanuel reserves the right to seek the remaining $35,740.32 at a later date.

Hearing Date/Time:   TBD
Objections Due: TBD

## Schedule 3

## Summary Of Expenses

| DESCRIPTION | AMOUNT |
|---|---|
| Postage | $109.09 |
| Telephone | $538.74 |
| Attorney service | $1,906.54 |
| Deposition transcript | $24,722.50 |
| Video Deposition | $2,988.00 |
| Express mail | $2,195.65 |
| Filing Fee | $250.00 |
| Local travel | $611.15 |
| Messenger | $918.38 |
| Telecopier | $89.28 |
| Travel | $5.00 |
| Client meals | $346.96 |
| Document Review Meal | $56.71 |
| Meals during travel | $260.97 |
| Outside velobind | $32.00 |
| Professional services (Travel Agent) | $5,584.32 |
| Taxi | $685.86 |
| Telephone | $60.48 |
| Air travel | $26,754.16 |
| Outside Record Production | $40.00 |
| Off-site document services | $3,045.55 |
| Online Research | $21,768.76 |
| Scans @$0.10[1] | $58.00 |
| Color Photocopying @$0.57 | $627.00 |
| Photocopying @$0.10[2] | $5,433.31 |
| Printing @$0.10[3] | $4,862.19 |
| Color Printing @$0.57 | $509.58 |

---

[1]   Quinn Emanuel's cost for scanning was raised to $0.15 per page.  Beginning with the November fee statement, Quinn Emanuel voluntarily lowered its scanning fees to $0.10 per page, despite the cost to Quinn Emanuel.  Although not reflected in the October fee statement originally served to the parties, Quinn Emanuel adjusted the scanning fees for October to reflect a cost of $0.10 per page and incorporated such changes to this Fourth Interim Fee Application.

[2]   Quinn Emanuel's cost for photocopying was raised to $0.15 per page.  Beginning with the November fee statement, Quinn Emanuel voluntarily lowered its photocopying fees to $0.10 per page, despite the cost to Quinn Emanuel.  Although not reflected in the October fee statement originally served to the parties, Quinn Emanuel adjusted the photocopying fees for October to reflect a cost of $0.10 per page and incorporated such changes to this Fourth Interim Fee Application.

[3]   Quinn Emanuel's cost for printing was raised to $0.15 per page.  Beginning with the November fee statement, Quinn Emanuel voluntarily lowered its printing fees to $0.10 per page, despite the cost to Quinn Emanuel.  Although not reflected in the October fee statement originally served to the parties, Quinn Emanuel adjusted the printing fees for October to reflect a cost of $0.10 per page and incorporated such changes to this Fourth Interim Fee Application.

| DESCRIPTION | AMOUNT |
|---|---:|
| Parking | $270.00 |
| Hotel | $8,296.08 |
| Airfare Ticket Discount | ($2,068.40) |
| Vendor Charges For Document Management System | $21,128.65 |
| Digital Prints | $858.97 |
| Scanning | $8.85 |
| EDD (per GB) | $46,259.25 |
| Media Create/Dup (per unit) | $2,675.00 |
| Hosting @ $25/GB | $9,110.00 |
| OCR per page | $14.16 |
| Image Endorsement | $736.00 |
| **TOTAL** | $191,748.74 |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                              :    Chapter 11 Case
                                    :
LEHMAN BROTHERS HOLDINGS INC.,      :    No. 08-13555 (JMP)
et al.                              :
                                    :    Jointly Administered
                    Debtors.        :
-------------------------------------------------------- x

**FOURTH INTERIM APPLICATION OF QUINN EMANUEL URQUHART &
SULLIVAN, LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND EXPENSES INCURRED DURING THE
PERIOD OCTOBER 1, 2009 THROUGH JANUARY 31, 2010**

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), Special Counsel to

the Official Committee of Unsecured Creditors of Lehman Brothers Holding Inc., et al. (the

"Committee"), by this application (the "Application"), respectfully moves this Court, pursuant to

sections 330 and 331 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code"),

and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the

Amended Administrative Order, pursuant to sections 105(a) and 331 of the Bankruptcy Code

establishing procedures for interim compensation and reimbursement of expenses of

professionals, dated June 25, 2009, (as amended, the "Compensation Order"), for allowance of

interim compensation for professional services rendered in the amount of $2,829,628.18 and

reimbursement of actual, reasonable, and necessary out-of-pocket expenses incurred in the amount of $191,748.74, during the period beginning October 1, 2009 through and including January 31, 2010 (the "Fee Period"), and, in support thereof, respectfully represents as follows:

## I.    JURISDICTION AND VENUE

1.        This Court has jurisdiction to hear and determine the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code.  Pursuant to the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and amended April 21, 1995 (the "Local Guidelines"), a certification regarding compliance with the Local Guidelines is attached hereto as Exhibit A.

## II.    GENERAL BACKGROUND

2.        On September 15, 2008, and periodically thereafter (the "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI"), and certain of its subsidiaries and affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating their business and managing their properties as debtors in possession.

3.        On September 17, 2008, the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

4.          On January 16, 2009, the Court entered an Order directing the appointment of an Examiner pursuant to 11 U.S.C. §§ 1104(c)(1) and (c)(2) to investigate, *inter alia*, various transfers and transactions involving the Debtors and their affiliates as well as the events immediately preceding the commencement of the Chapter 11 Cases.

### III.    RETENTION OF QUINN EMANUEL

5.          On October 21, 2008, the Committee filed its Application Under 11 U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014 and 5002, for Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel, <u>Nunc Pro Tunc</u> to September 17, 2008 (the "<u>Retention Application</u>").

6.          On November 21, 2008, this Court entered the Final Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. <u>et al.</u>, <u>Nunc Pro Tunc</u> to September 17, 2008 (the "<u>Retention Order</u>").  A true and correct copy of the Retention Order is attached hereto as Exhibit B.

7.          On October 11, 2008, the Debtors filed a Motion Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) for Authorization to Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (the "<u>Compensation Motion</u>").  The Compensation Motion was granted pursuant to the Compensation Order.

8.          The Compensation Order established a procedure for, <u>inter alia</u>, the payment of interim fees and expenses to professionals employed by the Committee on a monthly basis.  Quinn Emanuel, on a monthly basis, has been preparing and serving monthly fee

statements in accordance with the Compensation Order.[1]  A copy of the Compensation Order is attached as Exhibit C.

### IV.    MONTHLY FEE STATEMENTS AND QUARTERLY APPLICATIONS

9.    Quinn Emanuel prepared and submitted its first quarterly fee application on April 10, 2009 requesting $2,129,413.50 in fees and $41,113.30 in expenses for the period commencing September 15, 2008 through January 31, 2009.

10.    Quinn Emanuel prepared and submitted its second quarterly fee application on August 14, 2009 requesting $820,579.50 in fees and $28,104.76 in expenses for the period commencing February 1, 2009 through May 31, 2009.

11.    Quinn Emanuel prepared and submitted its third quarterly fee application on December 14, 2009 requesting $2,248,453.00 in fees and $144,241.20 in expenses for the period commencing June 1, 2009 through September 30, 2009.  A chart summarizing the amounts requested and approved in Quinn Emanuel's prior fee applications in attached hereto as Exhibit F.

12.    This Application is Quinn Emanuel's fourth quarterly fee application and seeks payment of interim compensation and reimbursement of expenses for services rendered to the Committee in amounts that have been invoiced to the Debtors for the period from October 1, 2009 through January 31, 2010.

13.    This Application requests that the Court (a) approve interim fees in the total amount of $2,829,628.18 (including the 20% of such fees "held back"), and reasonable out-of-pocket expenses in the amount of $191,748.74 incurred by Quinn Emanuel for services

---

[1]    Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

rendered in the Chapter 11 Cases during the Fee Period and (b) award and order to be paid to

Quinn Emanuel the balance of any such fees, costs and expenses that remain unpaid, after

deducting interim payments already received by Quinn Emanuel pursuant to the Compensation

Order.

14.        For the period October 1, 2009 through and including January 31,

2010, Quinn Emanuel submitted four monthly fee statements (the "Monthly Fee Statements").

Through the Monthly Fee Statements, Quinn Emanuel has requested interim fee compensation in

the amount of $2,292,294.80 (representing 80% of the fees billed by Quinn Emanuel from

October 1, 2009 through January 31, 2010) and expenses incurred in the total amount of

$191,748.74 (100% of the expenses billed by Quinn Emanuel from October 1, 2009 through

January 31, 2010).  For the period commencing on October 1, 2009 through October 31, 2009,

Quinn Emanuel requested payment of $582,643.60 in fees (representing 80% of the $728,304.50

in fees for that period) and $35,117.88[2] in expenses.  For the period commencing on November 1,

2009 through November 30, 2009, Quinn Emanuel requested payment of $437,759.60 in fees

(representing 80% of the $547,199.50 fees for that period) and $60,824.91 in expenses.  For the

period commencing on December 1, 2009 through December 31, 2009, Quinn Emanuel requested

payment of $622,908.40 in fees (representing 80% of the $778,635.50 fees for that period) and

$61,732.79 in expenses.  For the period commencing on January 1, 2010 through January 31,

---

[2]        Quinn Emanuel's cost for photocopying, printing and scanning was raised to $0.15 per page.  Beginning with
the November fee statement, Quinn Emanuel voluntarily lowered its photocopying, printing and scanning
fees to $0.10 per page, despite the cost to Quinn Emanuel.  Although not reflected in the October fee
statement originally served to the parties, Quinn Emanuel adjusted the photocopying, printing and scanning
fees for October to reflect a cost of $0.10 per page and incorporated such changes to this Fourth Interim Fee
Application by reducing the requested expenses by $1,439.10.

2010, Quinn Emanuel requested payment of $648,983.20 in fees (representing 80% of the

$811,229.00 fees for that period) and $34,556.96 in expenses.[3]

15.        The fees and expenses requested are reasonable, and all amounts

requested were for actual and necessary services rendered on behalf of the Committee.

16.        Quinn Emanuel has not entered into any agreement, express or

implied, with any other party for the purpose of fixing or sharing fees or other compensation to be

paid for professional services rendered in these cases.  No promises have been received by Quinn

Emanuel or any member thereof as to compensation in connection with these cases other than in

accordance with the provisions of the Bankruptcy Code.

## V.        SUMMARY OF PROFESSIONAL SERVICES RENDERED

17.        Pursuant to the guidelines promulgated by the United States Trustee,

Quinn Emanuel classified all services performed for which compensation is sought into separate

categories.  Quinn Emanuel attempted to place the services performed in the category that best

relates to the services provided.  However, because certain services may relate to one or more

categories, services pertaining to one category may be included in another category.  Schedule 1,

attached hereto, lists each timekeeper, his or her respective billing rate, professional information,

and the total number of hours expended on this case.  Schedule 2, attached hereto, summarizes the

professional and paraprofessional time expended by project category.  Timekeeping entries and

Quinn Emanuel invoices provide detailed descriptions of all services rendered by each of these

categories.  Exhibit D, attached hereto, contains time entry records broken down in tenths of an

---

[3]        Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee
statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description
of services performed by each attorney and paraprofessional on behalf of the Committee.[4]

18.        The following summary is intended only to highlight key services
rendered by Quinn Emanuel in certain project billing categories where Quinn Emanuel has
expended a considerable number of hours on behalf of the Committee, and is not meant to be a
detailed description of all of the work performed.

**A.        Case Management/Calendar Maintenance  (Hours: 72.90, Fees: $23,328.00)**

19.        Time billed under this category relates to a variety of tasks that were
necessary to ensure competent representation of the Committee, including:

- Daily monitoring of dockets in the Chapter 11 Cases, SIPA proceeding and certain
  of the adversary proceedings when Quinn Emanuel has taken the lead role with
  respect to the Committee;

- Circulating relevant documents filed to the appropriate team attorneys; and

- Creating and updating reports tracking the status of various matters in the cases
  and certain of the adversary proceedings.

**B.        Claims Analysis/Objections  (Hours: 116.60, Fees: $61,336.00)**

20.        During this period, Quinn Emanuel attorneys, working with the
Committee's retained professionals continued reviewing and analyzing a wide variety of claims
asserted against the Debtors' estates.  Certain of the claims examined during this period are set
forth below.

21.        SIPA Trustee Settlement Motion.  On November 20, 2009, the trustee
(the "Trustee") appointed in the SIPA liquidation proceeding of Lehman Brothers Inc. ("LBI")
filed a motion seeking a limited settlement and compromise (the "Settlement Agreement") among

---

[4]        Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not
being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States
(footnote continued)

the Trustee and Barclays Capital Inc. ("Barclays") regarding the transfer of certain Private

Investment Management ("PIM") customer accounts to Barclays for the benefit of the PIM

customers (the "Motion").  The Settlement Agreement implemented certain transactions designed

to complete the transfer of the remaining PIM assets to Barclays.  In addition to authorizing the

prospective transfers with respect to the PIM accounts, the Settlement Agreement also sought to

ratify the actions that the Trustee had taken since the filing date with respect to its prior transfers

of customer accounts.  As set forth in the Motion, the Trustee had transferred approximately $92

billion in assets for the benefit of over 110,000 former LBI customers.

       22.       During this Fee Period, Quinn Emanuel attorneys dedicated

significant time to reviewing and analyzing the Motion and the modifications to determine its

effect on the estates and to ensure it did not have any negative implications for the unsecured

creditors, including in connection with the estates' Rule 60(b) litigation involving Barclays.  To

that end, Quinn Emanuel attorneys participated in numerous meetings (both telephonically and in-

person) with advisors to the SIPA Trustee and LBHI and with the Committee's financial advisors

to gain a better understanding of the Settlement Agreement and its potential impact on the

Debtors and their estates.  On December 14, 2009, an order was signed approving the Settlement

Agreement, completing the PIM conversion and terminating the account transfer process.

       23.       Sumitomo Memorandum.  On or about January 15, 2010, Sumitomo

Mitsui Banking Corporation ("Sumitomo"), Lehman Brothers Holdings Inc. ("LBHI") and

Lehman Commercial Paper Inc. ("LCPI") entered into a draft third amendment (the "Third

Amendment") to a settlement agreement resolving Sumitomo's motion for relief from the

automatic stay to foreclose on its collateral.  The Third Amendment permitted LBHI and LCPI to

---

Trustee; (iii) counsel for the Debtors; and (iv) the Fee Committee.

promptly liquidate some of Sumitomo's collateral.  Moreover, the Third Amendment permitted the parties to liquidate more collateral in the future, subject to the Committee's consent.  During this period, Quinn Emanuel attorneys dedicated time to reviewing the propriety and impact of the Third Amendment and consulting with the Committee's financial advisors regarding the economics of the proposed deal.

24.       Pacific Life Motion.  On October 22, 2009, Pacific Life sought authority to submit a late-filed claim (and related questionnaire) against LBHI totaling approximately $45.3 million on account of an alleged LBHI guaranty relating to its 1997 ISDA Master Agreement with Lehman Brothers International (Europe) ("LBIE") (the "Pacific Life Motion").  Pacific Life maintained it missed the filing deadline because two of its employees monitoring the Lehman cases became confused about which of the two would file the claim on Pacific Life's behalf.  The Debtors objected to the Pacific Life Motion, arguing it failed to satisfy "excusable neglect" standards because the mistakes that prevented it from complying with the deadline were entirely within its own control.  After carefully reviewing the Pacific Life Motion, Quinn Emanuel attorneys submitted a joinder on the Committee's behalf in the Debtors' objection on November 13, 2009.  On November 18, 2009, Quinn Emanuel attorneys argued in support of the Committee's joinder in the Debtors' objection.

25.       Citibank Motion.  On November 3, 2009, Lehman Brothers Holdings Inc. ("LBHI"), filed a motion pursuant to section 542(b) of the Bankruptcy Code, for entry of an order directing ZAO Citibank (Russia) ("ZAO") to turnover post-petition receipts (the "Citibank Motion").  Earlier in the cases, the estates agreed that Citibank, N.A. ("Citibank") would turn over to the estates the Debtors' various post-petition receipts deposited in the Debtors' bank accounts with Citibank throughout the world.  Although Citibank/ZAO is obligated to turn over post-

petition receipts pursuant to the turnover stipulation, Russian law may have prevented Citibank

from turning over the funds and thus reinstating the LBHI's (UK) account into overdraft.

Accordingly, to facilitate compliance with the requirements of Russian banking and other law,

ZAO requested that LBHI obtain an order of the Court directing it to turn over post-petition

receipts from ZAO.  The Court granted the ZAO motion on December 15, 2009.  During this

period, Quinn Emanuel attorneys analyzed the Citibank Motion to determine its effect on the

estates.

### C.    Court Hearings  (Hours: 34.30, Fees: $21,405.00)

26.    Throughout the Chapter 11 Cases, Quinn Emanuel attorneys, on

behalf of the Committee, have prepared for and attended certain regularly scheduled omnibus

hearings where matters being handled by Quinn Emanuel were being presented for consideration,

and special scheduled hearings with respect to adversary proceedings for which they are

responsible.  To prepare for these hearings, Quinn Emanuel attorneys often expended

considerable time reviewing and analyzing documents, including correspondence and pleadings,

and conducting independent legal and factual research.  Notably, on December 11, 2009, Quinn

Emanuel attorneys prepared for a hearing on Barclays' motion to compel privileged documents

from the Committee in the Rule 60 litigation.  Quinn Emanuel attorneys also presented a motion

requesting the issue of letters of request regarding discovery in the United Kingdom from the

Financial Services Authority (the "FSA") and PricewaterhouseCoopers LLP and

PricewaterhouseCoopers International Limited (together, "PwC") on December 16, 2009.

27.    Quinn Emanuel attorneys also prepared for and attended hearings in

the BofA adversary proceeding.  In particular, Quinn Emanuel attorneys appeared at a summary

judgment hearing on December 10, 2009 and an evidentiary hearing starting on January 29, 2010.

**D.**     **Lender And Counterparty Claims  (Hours: 97.80, Fees: $52,423.00)**

28.        Collateral Disposition Agreement.  Shortly before LBHI filed for

chapter 11 bankruptcy protection, JPMorgan Chase Bank, N.A. demanded that LBHI guarantee

all obligations between JPMorgan Chase Bank, N.A. and its affiliates (together, "JPMCB") and

LBHI and its affiliates, including Lehman Brothers Inc. ("LBI").  JPMCB further demanded that

LBHI post collateral to support its guaranty obligations.  LBHI consented to JPMCB's requests

and executed a guaranty (on September 9, 2008) (the "Guaranty") of the obligations of its

affiliates and posted cash (the "Cash Collateral") and securities (the "Posted Securities", and

together with the Cash Collateral, the "Collateral") to secure the Guaranty.  Shortly after LBHI's

chapter 11 filing, JPMCB allegedly began liquidating the Posted Securities and applying the

proceeds against LBI's clearance-related obligations, yet, JPMCB had not sold certain supposedly

illiquid securities (the "Remaining Securities") and had not, yet, applied the Cash Collateral to

LBI's obligations.

29.        On February 24, 2010, LBHI filed a motion seeking approval of an

agreement by which JPMCB would return the Remaining Securities to LBHI in exchange for

authorization to apply the Cash Collateral against the Secured Claims (the "Collateral Disposition

Agreement").  The Collateral Disposition Agreement also contained an express reservation of any

and all estate and Committee claims and causes of action, rights and defenses with respect to

JPMCB.

30.        During this Fee Period, Quinn Emanuel undertook, on the

Committee's behalf, an extensive review and analysis of the Collateral Disposition Agreement.

In addition to reviewing and commenting on multiple drafts of the agreements and attending

multiple conferences with the Debtors' professionals, Quinn Emanuel also dedicated considerable

11

time and effort to ensuring the "litigation neutrality" of the agreement with respect to JPMC.

Quinn Emanuel also worked closely with the Committee's financial advisors to ascertain the

economic benefits of the agreement and to ensure it had a positive economic impact on the

estates.  By order dated March 24, 2010, the Court approved the Collateral Disposition

Agreement.

          E.        **Litigation/Potential Litigation  (Hours: 45.0, Fees: $26,336.00)**

        31.        Time billed to this category generally relates to litigation that Quinn

Emanuel, as special counsel to the Committee, is pursuing or may pursue against certain entities

in furtherance of the Committee's obligations as a fiduciary for the Debtors' unsecured creditors.

Generally, time billed in this category falls into three categories:

        32.        <u>Monitor Pending Adversary Proceedings.</u>  As special litigation

counsel to the Committee, Quinn Emanuel attorneys are tasked with the review and consideration

of numerous adversary proceedings filed by or against the Debtors.  In performing this review,

Quinn Emanuel attorneys review each pleading as well as hearing transcripts in order to remain

abreast of the procedural and substantive issues pending in each proceeding.

        33.        <u>Libra Adversary Proceeding.</u>  On May 5, 2009, Lehman Brothers

Special Financing Inc. ("<u>LBSF</u>") and LBHI filed a complaint for declaratory and injunctive relief

against Libra CDO Limited ("<u>Libra</u>"), LaSalle Bank National Association ("<u>LaSalle</u>"), acting in

its capacity as trustee under an indenture (the "<u>Indenture</u>") pursuant to which Libra raised capital

through the issuance of certain notes, Bank of America (as successor in interest to LaSalle and

with LaSalle, the "<u>Trustee</u>"), and Société Générale, New York Branch ("<u>SGNY</u>" and together

with Libra and the Trustee, the "<u>Defendants</u>").  The Committee intervened in this action by

stipulation and order entered on July 16, 2009.  During this Fee Period, Quinn Emanuel attorneys

participated in multiple meetings and conferences with Libra counsel, Debtors' counsel and the

Committee's financial advisors regarding the status and implications of this adversary proceeding

with respect to other issues in the cases.  Moreover, Quinn Emanuel attorneys dedicated

significant time discussing issues implicated in this case with the derivatives sub-committee .

### F.    Nonworking Travel  (Hours: 103.60, Fees: $64,990.50)

34.    Time billed under this category was for the necessary time that Quinn

Emanuel attorneys spent traveling on behalf of the Creditors' Committee to Committee meetings,

depositions and court hearings.  Given the compressed time and magnitude of the Barclays

investigation, it was necessary to task attorneys outside of Quinn Emanuel's New York office with

handling depositions and discovery taking place in New York.  Thus, time billed during this Fee

Period, included cross-country air travel relating to this investigation.[5]

### G.    Quinn Emanuel Fee Applications (Hours: 175.80, Fees: $28,653.68[6])

35.    Pursuant to the Bankruptcy Code, Local Rules, and the Compensation

Order, Quinn Emanuel prepared and served four monthly fee statements (the "Fee Statements")

for approval and allowance of compensation for actual, reasonable and necessary professional

services rendered, and reimbursement of expenses for actual reasonable and necessary expenses

incurred during those fee periods.  Each Fee Statement contained extensive records of the work

performed by Quinn Emanuel.  Quinn Emanuel attorneys also prepared and served the Third

Interim Fee Application during this Fee Period.  Preparing the Third Interim Fee Application

involved consolidating Quinn Emanuel's fees and expenses for four monthly fee statements and

---

[5]    The airfare incurred was not billed at business class fares.

[6]    Quinn Emanuel's actual fees incurred for the preparation of fee applications is $64,394.00.  Consistent with
the Fee Committee Guidelines, Quinn Emanuel is only seeking 1% of the total fees charged for this period
and not the actual fees associated for the preparation of fee applications.  Quinn Emanuel reserves the right
to seek the remaining $35,740.32 at a later date.

preparing a detailed pleading describing these efforts.  Extensive time was also spent organizing

the time entries and preparing the charts and the summary descriptions of the work done

throughout the Third Interim Fee Application.  Additionally, during this Fee Period, time was

spent responding to the Fee Committee's questions and reports.  Lastly, Quinn Emanuel attorneys

spent time reviewing and revising the overall litigation budget and amending Quinn Emanuel's

budget accordingly.

**H.**　　**Derivatives  (Hours: 113.60, Fees: $88,459.50)**

36.　　　During the Fee Period, Quinn Emanuel attorneys devoted time to

reviewing numerous derivatives transactions to which the Debtors were, or are, parties.  The

Debtors are in the process of reconciling and winding down their considerable derivatives trading

activities.  As part of that function, the Debtors have been regularly informing the Committee of

the status of their efforts in connection with this process.  Quinn Emanuel attorneys devoted time

to diligence certain of these transactions to ensure that the value for unsecured creditors has been

maximized.

37.　　　The Debtors have challenged whether counterparties had the right to

unilaterally terminate various derivatives transactions as a result of the Debtors' chapter 11 filings.

Given the sheer volume of the Debtors' trading activity, the number of similarly situated

transactions, and the value of such transactions to the estates, the outcome of such challenges can

have substantial effect on the chapter 11 cases.  On behalf of the Committee, and working the

Committee's financial advisors, and from time to time, the Debtors' professionals, Quinn Emanuel

attorneys have devoted substantial time examining the issues concerning such challenges.  Among

others, Quinn Emanuel attorneys have provided services on such issues concerning the following

counterparties: Ballyrock, EAST, Kfw, Korea Development Bank, and Libra.

14

38.      In addition, Quinn Emanuel has provided services to the Committee in connection with the derivatives mediation protocols.  Quinn Emanuel's involvement entailed reviewing documents, engaging in discussions with the Debtors' professionals, making presentations to the Committee and derivatives sub-committee, conducting legal research, and developing memoranda regarding the various issues in the litigations.

### I.      Barclays' Transactional Investigation and Litigation  (Hours: 4,018.00, Fees: $1,687,933.00)

39.      The Rule 60(b) Motions.  On September 15, 2009 Quinn Emanuel filed the Rule 60(b) Motion ("Committee's Rule 60(b) Motion"), seeking relief from the Sales Order entered on September 20, 2008.  The Debtors and SIPA Trustee also filed similar motions on the same day.  During this Fee Period, Quinn Emanuel attorneys continued prosecuting the Rule 60(b) motions.  Because the parties negotiated a confidentiality agreement that required the filing of pleadings under seal, much of the Rule 60 Motion was sealed.  During this period, Quinn Emanuel prepared and filed, on the Committee's behalf, a motion to unseal the Rule 60 Motions. Quinn Emanuel filed the motion on September 24, 2009.  Barclays, however, ultimately agreed to de-designate the documents, enabling Quinn Emanuel to file, on the Committee's behalf, an unredacted version of the Rule 60 Motion on October 16, 2009.

40.      On January 29, 2010, Barclays filed a voluminous response to the 60(b) motions. Quinn Emanuel attorneys spent a significant amount of time reviewing Barclays' response and to beginning its reply to Barclays' opposition.  Additionally, Quinn Emanuel attorneys researched and outlined portions of the Committee's reply to Barclays' incoming response.

41.        Scheduling.  Given the volume of the Rule 60 Motions, Barclays and the movants entered into extensive negotiations during this period concerning the appropriate time frame for discovery (including expert discovery).  Ultimately, the parties negotiated a stipulation for document discovery, depositions, and the resolution of the companion adversary complaints that each of the Movants filed in connection with their Rule 60 motions.  Indeed, the Committee prepared and filed, in connection with the Rule 60 Motion, an adversary proceeding seeking certain forms of declaratory relief.  On October 15, 2009, the parties attended a court hearing seeking entry of the stipulation (and resolution of lingering scheduling disputes).  Ultimately, the parties agreed that discovery would continue in connection with the motions through March 2010, and Barclays would submit its objection to the motions on January 29, 2010.

42.        Document Discovery.  Barclays served three requests for the production of documents on each of the Committee, Houlihan, Milbank and FTI.  Quinn Emanuel represented Houlihan and FTI (in addition to the Committee) in connection with this process.  To that end, it prepared and served written responses and objections to these demands and coordinated the large-scale effort of retrieving, and reviewing, responsive documents in response to the subpoenas.  Ultimately, Quinn Emanuel produced, on behalf of the Committee, Houlihan and FTI, no less than 51,000 pages of documents to Barclays.  As with any document production, it was necessary for Quinn Emanuel's professionals to install storage and categorization methods to allow Quinn Emanuel attorneys to better access the material produced.  Quinn Emanuel attorneys also coordinated with the Committee's financial professionals in their review of Barclays' documents.

43.        Barclays also served document requests on all the professionals involved in the transactions, including the LBHI estates attorneys and financial advisors (e.g., Weil, Alvarez & Marsal, Lazard) and the LBI estates' advisors (e.g., Hughes Hubbard & Deloitte), as well as a host of third parties (e.g., the Depository Trust Corporation, Akin Gump). During this period, Quinn Emanuel attorneys also reviewed documents produced by these various parties.

44.        Privilege Dispute.  Barclays took the position that the Committee placed "attorney client" communications at issue in prosecuting the Rule 60 Motion.  To that end, it moved to compel the production of attorney-client communications among the Committee and its counsel and financial advisors.   The Committee disputed that assertion, maintaining instead that Barclays was not entitled to these documents.

45.        After meet and confers with Barclays, the parties failed to resolve issues regarding Barclays' document requests.  On December 2, 2009, Barclays filed a motion to compel production of documents by the Trustee and the Committee based on a waiver of privilege (the "Motion to Compel").  Quinn Emanuel researched and drafted a motion and brief in opposition to Barclays' Motion to Compel production.  Quinn Emanuel's response was filed on December 7, 2009.  On December 9, 2009, Barclays filed a reply to the responses by the Trustee and the Committee.  In connection with the Motion to Compel, the response and the reply, Quinn Emanuel attorneys spent time preparing to argue the opposition before the Court.  On December 11, 2009, the Court heard the parties' arguments on the Motion to Compel and ultimately ruled in favor of the Committee on December 16, 2009.

46.        Depositions.  In addition to propounding document requests, Barclays also served deposition notices on the Committee, Houlihan, Milbank and FTI.  They also noticed

17

a host of depositions for the estates and LBI's principals and professionals. Quinn Emanuel dedicated considerable time during this period, not only preparing the Committee's witnesses (and the witnesses of its financial advisors), but preparing to attend the depositions of the other movants witnesses. In addition, the movants served deposition notices on Barclays' principals. Quinn Emanuel attorneys also prepared for and attended those depositions on the Committee's behalf.

47.     Expert Reports. During this Fee Period, Quinn Emanuel attorneys spent a substantial amount of time reviewing the seven expert reports and the rebuttals. Moreover, Quinn Emanuel attorneys reviewed numerous documents containing financial information, including the expert reports, the exhibits and the additional documents produced by Barclays, in order to participate in meetings with the expert, as well as, in the depositions themselves.

48.     Foreign Document Request Motion. During this Fee Period, Quinn Emanuel attorneys spent time preparing a subpoena to the Financial Services Authority (the "FSA") and PricewaterhouseCoopers LLP and PricewaterhouseCoopers International Limited (collectively "PwC") for documents related to the Sale Transaction. Quinn Emanuel on behalf of the Creditor's Committee filed a motion under the terms of the Hague Convention seeking permission to ask a U.K. court to require that the FSA, Barclays' regulator, and PWC, the auditor for Barclays in its deal talks with Lehman, to compel the production of documents in these subpoenas.

49.     Pursuant to the letter request, the Committee sought documents from the FSA and PwC that are highly relevant to the prosecution of the Rule 60(b) Motions filed in these chapter 11 cases that could not otherwise be obtained, especially considering that the FSA

18

and PwC are beyond the reach of the U.S. Court's subpoena power.  On December 16, 2009, the Court held a hearing on and granted the FSA motion.

> **J.**    **Special Litigation  (Hours: 1,274.40, Fees: $595,897.50)**

50.    <u>Bank of America Litigation.</u>  Quinn Emanuel attorneys actively participated on the Committee's behalf in the Bank of America ("<u>BofA</u>") litigation.  Quinn Emanuel attorneys prepared, on the Committee's behalf, an opposition to BofA's motion for summary judgment, which was filed on October 19, 2009, and a memorandum of law in support of the Debtors' motion for summary judgment, which was filed on November 2, 2009.  On that same day, BofA filed an opposition motion to the Debtors' motion for summary judgment.  Quinn Emanuel attorneys spent considerable time reviewing BofA's reply and researching, drafting and revising a reply to BofA's opposition.  Quinn Emanuel filed a reply on the Committee's behalf on December 9, 2009.

51.    During this Fee Period, Quinn Emanuel attorneys prepared to argue the cross-motions for summary judgment and on the Committee's behalf at the subsequent evidentiary hearing.  In connection with the hearings, Quinn Emanuel attorneys spent time working collaboratively with the Debtors' counsel in connection with (i) designating deposition testimony; (ii) preparing and reviewing a joint statement of facts; (iii) reviewing relevant documents and conducting additional research; and (iv) preparing an outline and drafting arguments for the hearing.  The hearing on the summary judgment motions took place on December 10, 2009.

52.    At the conclusion of the summary judgment hearing, the Court encouraged the parties to explore settlement possibilities.  The parties agreed to attend a mediation session on January 19, 2010.  To that end, Quinn Emanuel attorneys spent time

preparing for and attending the mediation session.  Quinn Emanuel attorneys also continued to

prepare for an evidentiary hearing, which took place on January 29, 2010, February 1, 2010 and

February 2, 2010.

53.        Financial Institutions Litigation.  during this period, Quinn Emanuel

attorneys worked closely with the estates' professionals in the investigation of certain financial

institutions which entailed (i) in-depth research, (ii) multiple conferences, (iii) document review,

(iv) drafting memoranda of law regarding potential claims, (v) reviewing filed proofs of claim,

and (vi) the drafting of pleadings relating to these institutions.  Due to the confidential nature of

these investigations, this fee application only discusses this investigation in general terms.

## VI.    ALLOWANCE OF COMPENSATION

54.        The factors to be considered in awarding attorneys fees as enumerated

in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been

adopted by most courts, including the Bankruptcy Court for the Southern District of New York.

See, e.g., In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 22 n.5 (Bankr. S.D.N.Y.

1991).  Indeed, a majority of the First Colonial factors are now codified in section 330(a)(3). See,

e.g., 3 L. King, et al., Collier on Bankruptcy at ¶ 330.04[3][c] (15th ed. rev 2008).

55.        Section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent

part, that the Court may award to a professional person, "reasonable compensation for actual,

necessary services rendered." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded,
> the court shall consider the nature, the extent, and the value of such
> services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;

20

(C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. 11 U.S.C. § 330(a)(3)(A).

56.        The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citation and internal quotation marks omitted); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' objective on requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists.").  Quinn Emanuel respectfully submits that the consideration of these factors should result in this Court's allowance of the full compensation sought.

A.        **The Time and Labor Required**

57.        The professional services rendered by Quinn Emanuel have required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and holidays.  The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.  During the Compensation Period, approximately 6,341.40 recorded hours were expended by Quinn Emanuel' s partners,

21

associates, and legal assistants in providing the requested professional services.  Quinn Emanuel's

hourly billing rates, as set out in Schedule 1, are computed at the rates Quinn Emanuel regularly

charges its hourly clients.

**B.      The Necessity of The Services and Benefit to the Estate**

58.      These Chapter 11 Cases are generally regarded as among the most

complex and active bankruptcy cases ever filed.  Indeed, many of the complex issues regarding

the Debtors' financial contracts are issues of first impression, with far reaching ramifications.  As

detailed above, the services Quinn Emanuel provided to the Committee were necessary to

preserve and enhance the value of the Debtors' estates and conferred substantial benefit to the

Debtors' unsecured creditors.  Quinn Emanuel's services have furthered and will continue to

further the Committee's obligations as fiduciary for the Debtors' unsecured creditors and will

continue to maximize estate value.

**C.      The Novelty and Difficulty of Issues Presented in the Cases**

59.      Novel and complex issues have arisen in the course of the Chapter 11

Cases, and it can be anticipated that other such issues will be encountered. In these cases, as in

many others in which the firm is involved, Quinn Emanuel's effective advocacy and creative

approach to problem solving have helped clarify and resolve difficult issues and will continue to

prove beneficial.

**D.      The Experience, Reputation and Ability of the Attorneys**

60.      Quinn Emanuel has extensive experience in the areas of insolvency,

workouts and corporate reorganizations.  Quinn Emanuel's services on behalf of the Committee

have been rendered in a highly efficient manner by attorneys who have achieved a high degree of

expertise in these areas.  The skill and competency of the Quinn Emanuel attorneys who have

represented the Committee have ensured that these cases have been administered in the most

efficient and expeditious manner.

## VII.   **DISBURSEMENTS**

61.         Quinn Emanuel has incurred a total of $191,748.74 in expenses in

connection with representing the Committee during the Fourth Interim Compensation Period.

Quinn Emanuel records all expenses incurred in connection with the performance of professional

services.  A summary of these expenses and detailed descriptions of these expenses, is annexed

hereto as Exhibit E.

62.         In connection with the reimbursement of expenses, Quinn Emanuel's

policy is to charge its clients in all areas of practice for expenses, other than fixed and routine

overhead expenses, incurred in connection with representing its clients.  The expenses charged to

Quinn Emanuel's clients include, among other things, telephone and telecopy toll and other

charges, mail and express mail charges, special or hand delivery charges, photocopying charges,

out-of-town travel expenses, local transportation expenses, expenses for working meals,

computerized research and transcription costs.

63.         Quinn Emanuel charges the Committee for these expenses at rates

consistent with those charged to Quinn Emanuel's other bankruptcy clients, which rates are equal

to or less than the rates charged by Quinn Emanuel to its non-bankruptcy clients. Quinn Emanuel

seeks reimbursement from the Debtors at the following rates for the following expenses: (a) ten

cents ($0.10) per page for photocopying[7]; (b) no charge for incoming facsimiles; and (c) toll

charges only for outgoing facsimiles.  In accordance with section 330 of the Bankruptcy Code, the

---

[7]         Beginning with the November fee statement, Quinn Emanuel voluntarily lowered its printing, copying and scanning fees to $0.10 per page, despite the cost to Quinn Emanuel.

23

Local Guidelines and with the U.S. Trustee Guidelines, Quinn Emanuel seeks reimbursement only for the actual cost of such expenses to Quinn Emanuel.

64.    In providing or obtaining from third parties services which are reimbursable by clients, Quinn Emanuel does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

65.    Quinn Emanuel regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.  However, Quinn Emanuel is not requesting reimbursement of such expenses in this Application and will not seek reimbursement from the Debtors of such expenses in future applications. Nevertheless, Quinn Emanuel reserves its rights with respect to such expenses until such time as an order is entered regarding its final fee application.

66.    Attorneys at Quinn Emanuel have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of air travel expenses in excess of coach fares.  Throughout the Fourth Interim Compensation Period, Quinn Emanuel has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII.  <u>NOTICE</u>

67.    Notice of this Application, as set forth in the Interim Compensation Order, has been given to (a) the Debtors, (b) counsel for the Debtors, (c) the Office of the United States Trustee, (d) Counsel for the Official Committee of Unsecured Creditors and (e) the chairperson of the fee committee.

## IX.   CONCLUSION

WHEREFORE, Quinn Emanuel respectfully requests the Court to enter an order, conforming to the amounts set forth in Fee Schedule A (1) attached hereto as Exhibit G (a) allowing Quinn Emanuel (i) interim compensation for professional services rendered as counsel for the Committee during the Fourth Interim Compensation Period in the amount of $2,829,628.18 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $191,748.74, for a total award of $3,021,376.92; (b) authorizing and directing the Debtors to pay to Quinn Emanuel any and all such amounts less any amounts already received for services rendered and expenses incurred during the Fourth Interim Compensation Period; and (c) granting such further relief as is just.

Dated:  April 16, 2010
        New York, New York

                              QUINN EMANUEL URQUHART
                              & SULLIVAN, LLP

                              By:  /s/ James C. Tecce
                                     James C. Tecce

                              Susheel Kirpalani (SK8926)
                              James C. Tecce (JT5910)
                              Robert K. Dakis (RD0626)
                              51 Madison Avenue, 22nd Floor
                              New York, New York 10010
                              Telephone No.:  (212) 849-7000
                              Facsimile No.:  (212) 849-7100

                              *Special Counsel to Official Committee Of
                              Unsecured Creditors Of Lehman Brothers
                              Holdings Inc., et al.*

25