WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard L. Levine
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
**In re**                                             :   **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :   **08-13555 (JMP)**
:
    **Debtors.**                                  :   **(Jointly Administered)**
:
:
---------------------------------------------------------------x

### DEBTORS' REPLY TO OBJECTION OF U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE TO DEBTORS' MOTION FOR AUTHORIZATION TO PURCHASE AND SELL NOTES ISSUED BY CERTAIN SPECIAL PURPOSE VEHICLES THAT ARE PARTY TO TRANSACTIONS WITH CERTAIN DEBTORS

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors") file this reply to the objection (the "Objection") interposed by U.S. Bank National Association ("U.S. Bank") to the Debtors' motion, dated March 30, 2010, to establish procedures to purchase and sell Notes[1] issued by SPVs with which the Debtors are party to Transaction Agreements or

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

which hold equity or other interests in separate SPVs with which the Debtors are party to Transaction Agreements (the "Motion") and respectfully represent:

### Preliminary Statement

1. In the Motion, the Debtors seek authorization to establish procedures to (i) purchase Notes issued by SPVs with which one or more Debtors is a Lehman Counterparty or which wholly own separate SPVs with which one or more Debtors is a Lehman Counterparty, (ii) exercise whatever rights they may have as holders of Purchased Notes in accordance with contractual terms and applicable law, and/or (iii) sell Purchased Notes to third parties, all on a case-by-case basis in consultation with the official committee of unsecured creditors appointed in these cases (the "Committee") where the Debtors in their business judgment deem a proposed purchase or sale is in the best interest of their estates and economic stakeholders.

2. Specifically, the Debtors seek authority to enter into such SPV Note Transactions where they believe, in their business judgment, that the SPV Note Transaction will act as a hedge against the Debtors' risks of recovery on a given Transaction Agreement and allow the Debtors to maximize their recovery from an SPV and/or maximize their ability to resolve disputes with Transaction Parties while minimizing the time, effort, cost, and risk of litigation. The SPV Note Transaction Procedures set forth in the Motion will reduce the administrative cost and burden of filing and noticing motions and holding hearings for each SPV Note Transaction that the Debtors may enter into over the course of these chapter 11 cases and allow the Debtors to take advantage of market opportunities while providing the Committee and/or the Court with abundant oversight safeguards. Importantly, contrary to the theory of the Objection, the Motion does not seek relief impairing any rights that Transaction Parties may have under Governing Documents.

3. U.S. Bank objects to the Motion on three main grounds: (i) that SPV Note Transactions would be an inappropriate and imprudent use of the Debtors' assets, (ii) that the Debtors' exercise of rights as holders of Purchased Notes *may* be prohibited by applicable law to the extent those rights are exercised in a manner inconsistent with or adverse to the interests of other Noteholders, and (iii) that the Governing Documents provide Transaction Parties with certain rights that ought to be reserved. (See Objection at 2, 6, 7, 9, 13.) For the reasons described below, the objection are without any factual or legal basis, are largely speculative, and seek to address issues that are not presently before the Court.

4. The appropriateness of a particular SPV Note Transaction will be a matter of the Debtors' business judgment, which, pursuant to the SPV Note Transaction Procedures set forth in the Motion, the Debtors will exercise on a transaction-by-transaction basis in consultation with the Committee. The Debtors will evaluate the potential risks and benefits of a proposed SPV Note Transaction to determine whether it will maximize the likelihood of an attractive return from SPVs from which the Debtors otherwise risk non-collection on the applicable Transaction Agreement and therefore whether it is in the best interest of the Debtors' estates and creditors.

5. The Debtors do not seek a determination by the Court of the rights the Debtors, as holders of Purchased Notes, may have vis-à-vis Transaction Parties, nor do the Debtors seek to alter, in any way, any rights that Transaction Parties may have under Governing Documents. Thus, the concerns raised in the Objection as to the rights the Debtors may or may not have as Noteholders or how the Debtors may or may not exercise those rights in the future are entirely speculative and not properly before the Court. To the extent U.S. Bank or any Transaction Party believes that the exercise by the Debtors of their rights as holders of Purchased Notes at a future time is improper or violative of applicable law, such Transaction Party would

have the opportunity to exercise any rights it may have at that time, including seeking appropriate relief from a court of proper jurisdiction.

### SPV Note Transactions Conducted In Accordance With the Procedures Set Forth in the Motion Are Not Overly Speculative and Reflect an Appropriate Exercise of the Debtors' Business Judgment

6.  U.S. Bank argues that the possible SPV Note Transactions contemplated by the Motion are not prudent and safe investments of the Debtors' assets, which could result in losses to their estates. (See Objection at 5, 6.)

7.  Tellingly, the Objection was filed by U.S. Bank in its capacity as Indenture Trustee, not as a direct economic stakeholder in the Debtors' estates. In contrast, no party with an economic interest in the Debtors' estates interposed an objection to the Motion. Given that the relief requested in the Motion was proposed in consultation with, and is supported by, the Committee, which represents the true economic stakeholders in the Debtors' estates, it seems likely that the Objection was filed because U.S. Bank is seeking to protect itself from potentially having to make difficult decisions in the future, not because it has a real concern about the proposed purchases and sales of Notes from the perspective of the Debtors' estates. As stated in the Motion, the relief requested therein is in the best interest of the Debtors' estates and its creditors as it will allow the Debtors to exercise their business judgment to maximize recovery from the SPVs to which they are Lehman Counterparties and hopefully minimize the cost, time, and risk of related litigation.

8.  As opposed to being imprudently speculative, the SPV Note Transaction Procedures contemplate that the Debtors will evaluate the risks and benefits of each proposed SPV Note Transaction on a case-by-case basis in consultation with the Committee and will use their business judgment to determine whether the proposed transaction is in the best interests of the Debtors' estates and creditors. Among the things that the Debtors will take into

consideration and address in evaluating a proposed transaction are (i) the most effective method of maximizing return from the SPV, (ii) the various risks associated with the transaction, such as the potential inability to acquire sufficient Notes to achieve the purpose of the SPV Note Transaction, a possible decrease in value of the Purchased Notes, any limitations imposed on the Debtors by applicable law, as well as other risks enumerated in the Motion, and (iii) potential conflicts of interest among Debtors created by the SPV Note Transaction. By analyzing the risks and benefits of each proposed transaction, the Debtors will use their business judgment to make calculated investments in the Notes to maximize recovery for a given estate from a given SPV. In addition, some SPV Note Transactions contemplated by the Motion would serve the purpose of hedging against the risk that the Debtors are unable to liquidate their existing positions in the SPVs and, as such, would not implicate many of the risks that may be present in other SPV Note Transactions.

9.  As reflected in the Motion, the SPV Note Transactions are the types of transactions that the Debtors entered into in the ordinary course of business prior to the commencement of their chapter 11 cases, and the Debtors propose to continue to enter into such transactions through the exercise of their sound business judgment as authorized by section 363 of the Bankruptcy Code, in accordance with the procedures set forth in the Motion. Accordingly, the SPV Note Transactions do not fall within the purview of section 345 of the Bankruptcy Code as suggested by U.S. Bank. The relief requested in the Motion is similar to the relief requested by the Debtors and granted by the Court in other contexts, such as with respect to the Debtors' real estate investments and hedging transactions.[2] The Motion seeks the establishment of

---

[2] *See, e.g.*, Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a) Establishing Procedures to (i) Restructure, (ii) Make New or Additional Debt or Equity Investments In, and/or (iii) Enter into Settlements and Compromises in Connection With Existing Real Estate Investments [Docket No. 5912]; Order Pursuant to

procedures that will provide the Debtors a way to protect and maximize the value of their existing investments. In this case, the Debtors seek to protect and monetize their existing investments in SPVs by making additional investments in Notes issued by the SPVs, in accordance with their business judgment, to maximize recovery from the SPVs. As such, SPV Note Transactions entered into pursuant to the proposed procedures will be an appropriate use of the Debtors' assets under section 363 of the Bankruptcy Code.

### The Issues Raised By U.S. Bank With Respect to the Debtors' Exercise of Their Rights as Holders of Purchased Notes Are Speculative and Not Presently Before the Court

10. U.S. Bank asserts that once the Debtors have acquired Noteholder positions through SPV Note Transactions, the Debtors *may* exercise their rights in an irrational manner and in bad faith--to the detriment of other Noteholders and in violation of applicable law. (See Objection at 6-10.) Such assertions are entirely speculative and presume the Debtors will exercise their rights in bad faith. In the Motion, the Debtors do not seek any determination by the Court of what rights they may have as holders of Purchased Notes. The Debtors simply seek authority to purchase Notes in accordance with the SPV Note Transaction Procedures and exercise whatever rights they may acquire as holders of Purchased Notes in accordance with applicable law. As stated above, the Debtors, in conjunction with the Committee, will assess proposed SPV Note Transactions on a case-by-case basis, including analyzing the complex documents underlying the particular SPV to determine how any such transactions would impact the respective rights of the Debtors as holders of purchased Notes and those of other Transaction Parties. To the extent a Transaction Party at some time in the future believes that the Debtors'

---

Sections 105 and 364 of the Bankruptcy Code Authorizing the Debtors to Grant First Priority Liens in Cash Collateral Posted in Connection with the Hedging Transactions the Debtors Enter Into Through Certain Futures and Prime Brokerage Accounts [Docket No. 3047].

exercise of their rights as holders of Purchased Notes violates contractual terms or applicable law, the relief requested in the Motion in no way would prevent that party from exercising whatever rights they may have, including seeking redress from a court of appropriate jurisdiction. As the Debtors are not presently seeking a determination by the Court of their rights as holders of Purchased Notes, the issues raised by U.S. Bank in relation thereto are not properly before the Court and should be set aside.

11. Even assuming, however, that the issues raised by U.S. Bank were to be considered by the Court, U.S. Bank fails to establish that the Debtors' exercise of their rights as holders of Purchased Notes in whatever way the Debtors see fit would be in violation of law. It is axiomatic that outside of contractual obligations, debt-holders do not have fiduciary duties or other obligations to other debt-holders. *See, e.g.*, *Leverso v. Lieberman*, 18 F.3d 1527, 1531 (11th Cir. 1994) ("Bondholders' rights are a matter of contract, governed by the trust indenture and general principles of contract law."); *Simons v. Cogan*, 542 A.2d 785, 786-87 (Del. Ch. 1987) ("[I]t is elementary that rights of bondholders are ordinarily fixed by and determinable from the language of the documents that create and regulate the security.").

12. The cases cited by U.S. Bank to suggest that the Debtors' exercise of their rights as holders of Purchased Notes would be improper if done in bad faith or to the detriment of other Noteholders—which, as noted, is entirely speculative—are completely inapposite. U.S. Bank cites to cases arising in the context of the exercise by a creditor of its voting rights under a plan of reorganization in an attempt to impute the good faith voting requirement discussed in those cases to the context of the possible exercise by the Debtors of their rights as holders of Purchased Notes. (See Objection at 7, 8.) The good faith voting requirement discussed in such cases, however, is part of a statutory mandate governing voting on plans of reorganization set forth in section 1126(e) of the Bankruptcy Code. *See* 11 U.S.C. § 1126(e); *In re Dune Deck*

*Owners Corp.*, 175 B.R. 839, 843 (Bankr. S.D.N.Y. 1995); *In re Allegheny Int'l, Inc.*, 118 B.R. 282, 289-90 (Bankr. W.D.Pa. 1990). The Debtors' exercise of their rights as holders of Purchased Notes will not fall within the purview of section 1126(e), and U.S. Bank does not cite to (nor are the Debtors aware of) any statutory mandates that impose a good faith requirement in the context of the exercise of voting rights by Noteholders.

13. U.S. Bank's citation to the *Dune Deck* Court's reference to *Aladdin Hotel Corp. v. Bloom*, 200 F.2d 627 (8th Cir. 1953), to evidence a purported Congressional policy against allowing majority bondholders from exercising their rights against minority bondholders is equally unavailing. In *Aladdin Hotel*, a non-bankruptcy case, the majority bondholders, who were also shareholders of the company, were permitted by the court to vote their holdings to extend the maturity date of the company's obligation under the indenture and thereby squeeze out minority bondholders. This case was discussed in the legislative history behind section 1126(e) of the Bankruptcy Code not, as U.S. Bank suggests, to overrule the *Aladdin Hotel* case, but to support the House drafters' intent to eliminate from the plan voting context voting by a creditor in one class who holds conflicting claims in another class. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 411 (1977).

14. U.S. Bank also cites to cases discussing the implied covenant of good faith and fair dealing under New York contract law to suggest that exercise by the Debtors of their rights as holders of Purchased Notes may constitute a breach of such implied covenant. (See Objection at 9, 10.) That is not the law. The implied covenant cannot override the express provisions of a contract. *See Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp 1504, 1517 (S.D.N.Y. 1989) ("In contracts like bond indentures, an implied covenant . . . derives its substance directly from the language of the Indenture, and cannot give the holders of Debentures any rights inconsistent with those set out in the Indenture. Where plaintiffs' contractual rights

have not been violated, there can be no breach of an implied covenant.") (internal citations and quotations omitted); *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 679 (S.D.N.Y. 1991) ("[A]lthough the obligation of good faith is implied in every contract, it is the terms of the contract which govern the rights and obligations of the parties.  The parties' contractual rights and liabilities may not be varied, nor their terms eviscerated, by a claim that one party has exercised a contractual right but failed to do so in good faith.") (citing *Murphy v. Am. Home Prods Corp.*, 448 N.E.2d 86 (N.Y. 1983), *aff'd*, 962 F.2d 1 (2d Cir. 1992)); *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 991 (S.D.N.Y. 1989) ("The mere exercise of one's contractual rights, without more, cannot constitute . . . a breach [of the implied covenant of good faith and fair dealing].") (internal quotations omitted); *Assocs. Capital Servs. Corp. v. Fairway Private Cars, Inc.*, 590 F. Supp. 10, 16 (E.D.N.Y. 1982) ("[Defendant] does not breach its duty of good faith and fair dealing by exercising its rights under the contracts.").  The Debtors seek no more in the Motion than the right to exercise whatever rights they have as holders of Purchased Notes.  Accordingly, the implied covenant of good faith, if even applicable, is not implicated in the SPV Note Transactions.

15.     Indeed, U.S. Bank cites to no cases in which the implied covenant of good faith and fair dealing has been applied against a Noteholder in the context of the exercise by the Noteholder of its contractual rights.

16.     *Metropolitan Life*, cited by U.S. Bank, involved rights that bondholders had against an issuer (not other bondholders) arising from the issuer's (and again not other bondholders') breach of the implied covenant of good faith and fair dealing in the underlying documents.  Given that the Debtors' Transaction Agreements are with SPVs and not other Noteholders, it would be an illogical leap to hold that the Debtors could breach any express (or,

for that matter, implied) contractual obligations to other Noteholders under Transaction Agreements.

17.     *Hackettstown Nat'l Bank v. D.G. Yuengling Brewing Co.*, 74 F. 110 (2d Cir. 1896), an ancient case which U.S. Bank also cites, involved the acquisition of bond debt to alter the terms of an indenture by majority vote, thereby altering the rights of minority bondholders and the fundamental terms of the debtor-creditor relationship. Not only do the Debtors request no such relief in the Motion, but courts in the Southern District have distinguished *Hackettstown* and held that it does not apply as between debt-holders. *See, e.g.*, *CIBC Bank & Trust Co. v. Banco Cent. do Brasil*, 886 F. Supp. 1105, 1114-17, n.8 (S.D.N.Y. 1995) ("[T]he implied covenant sought by plaintiff would not merely complement the express provisions contained in the Agreement, it would alter the rights of the parties. I refuse to make such an extreme leap on the basis of the cited 'sources'—to do so would change the substantive rights of the parties and impair the ability of both debtors and creditors to order their relationships through contractual debt agreements.").

### The Relief Requested in the Motion Does Not Alter or Impair Any Rights the Transaction Parties May Have Under the Governing Documents

18.     Finally, U.S. Bank asserts that the rights of Transaction Parties pursuant to various Governing Documents should be reserved in any order of the Court approving the relief requested in the Motion. The Motion, however, does not purport to seek relief addressing the rights of Transaction Parties in any way and, in fact, the Motion seeks to expressly reserve such rights. (See Motion at 14.) Accordingly, there is no basis for U.S. Bank to object on this ground.

**Conclusion**

19.     The Motion sets forth procedures that provide the Debtors with an alternate mechanism for resolving disputes with Transaction Parties and maximizing their recovery from SPVs with which they are Lehman Counterparties without undergoing a cumbersome and expensive process of filing individual pleadings and sending notice with respect to each proposed SPV Note Transaction and holding individual hearings. This procedure benefits the Debtors' estates, creditors, and other parties-in-interest by streamlining the process of entering into such transactions.  U.S. Bank, which did not object in any capacity involving an economic stake in these cases, provides no legitimate basis or justification for denying the relief requested in the Motion.

For the foregoing reasons, the Debtors request that the Court overrule the Objection and grant the relief requested in the Motion.

DATED: April 19, 2010
       New York, New York

                                            /s/ Richard L. Levine
                                           Lori R. Fife
                                           Richard L. Levine
                                           Robert J. Lemons

                                           WEIL, GOTSHAL & MANGES LLP
                                           767 Fifth Avenue
                                           New York, New York 10153
                                           (212) 310-8000

                                           Attorneys for Debtors
                                           and Debtors in Possession