**Hearing Date and Time: May 12, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: May 5, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Dennis F. Dunne
Scott A. Edelman
Michael L. Hirschfeld
Andrew Tomback
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:  (212) 530-5000
Facsimile: (212) 530-5219

and

David S. Cohen
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 835-7586


Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————x

In re:                                                                    :

LEHMAN BROTHERS HOLDINGS INC., *et al.*          :

                                Debtors.                                 :

————————————————————————x

Chapter 11

Case No. 08-13555 (JMP)

(Jointly Administered)

## NOTICE OF MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER, UNDER 11 U.S.C. § 1103(c) AND FED. R. BANKR. P.  2004, AUTHORIZING DISCOVERY FROM ERNST & YOUNG LLP

PLEASE TAKE NOTICE that a hearing on the annexed Motion of the Official

Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. (the "Committee")

for entry of an order directing the oral examination of representative(s) of, and the production of

documents from, Ernst & Young LLP and its affiliates involved in performing auditing and other

services for the Debtors ("Ernst & Young"), all as more fully set forth in the Motion, will be held

before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States

Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green,

New York, New York 10004 (the "Bankruptcy Court") on **May 12, 2010 at 10:00 a.m.**

**(Prevailing Eastern Time)** (the "Hearing") or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and

Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee

for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New

York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian

Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; and (iv) Milbank, Tweed,

Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis

F. Dunne, Esq., Scott A. Edelman, Esq., Michael L. Hirschfeld, Esq., and Andrew Tomback,

Esq., attorneys for the Committee, so as to be so filed and received by no later than **May 5, 2010**

**at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York
       April 19, 2010

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: /s/ Dennis F. Dunne
      Dennis F. Dunne
      Scott A. Edelman
      Michael L. Hirschfeld
      Andrew Tomback
      MILBANK, TWEED, HADLEY & McCLOY LLP
      1 Chase Manhattan Plaza
      New York, NY 10005
      Telephone:  (212) 530-5000
      Facsimile: (212) 530-5219

      and

      David S. Cohen
      MILBANK, TWEED, HADLEY & McCLOY LLP
      1850 K Street N.W., Suite 1100
      Washington, DC 20006
      Telephone: (202) 835-7500
      Facsimile: (202) 835-7586

      Counsel for Official Committee of Unsecured
      Creditors of Lehman Brothers Holdings Inc., et al.

Dennis F. Dunne
Scott A. Edelman
Michael L. Hirschfeld
Andrew Tomback
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:  (212) 530-5000
Facsimile: (212) 530-5219

and

David S. Cohen
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 835-7586


Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————x

In re:                                                                    :

LEHMAN BROTHERS HOLDINGS INC., *et al.*     :

                            Debtors.                                  :

————————————————————————x

Chapter 11

Case No. 08-13555 (JMP)

(Jointly Administered)

**MOTION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR AN ORDER, UNDER 11 U.S.C. § 1103(c) AND FED.
R. BANKR. P.  2004, AUTHORIZING DISCOVERY FROM
ERNST & YOUNG LLP**

The Official Committee of Unsecured Creditors of Lehman Brothers Holdings

Inc. et al. (the "Committee") hereby moves this Court (the "Motion"), pursuant to section

1103(c) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the

"Bankruptcy Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy

Rule 2004") for entry of an order directing the oral examination of representative(s) of, and the

production of documents from, Ernst & Young LLP and its affiliates involved in performing

auditing and other services for the Debtors ("Ernst & Young") and, in support thereof, represents

as follows:

## BACKGROUND

### A.        The Bankruptcy Proceedings

1.        Bankruptcy Filing.  On September 15, 2008 (the "Petition Date"), Lehman

Brothers Holdings Inc. ("LBHI") filed a voluntary petition for relief under chapter 11 of the

Bankruptcy Code.

2.        Debtors in Possession.  LBHI and certain of its affiliates who have filed

voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the

"Debtors") continue to manage and operate their businesses and properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter

11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and this Court's

order dated October 16, 2008.

3.        Committee.  The Committee is a committee duly appointed and organized

under section 1102 of the Bankruptcy Code.  The United States Trustee appointed the Committee

on September 17, 2008.  The Committee represents the interests of all unsecured creditors of

each of the Debtors.  The Committee is expressly authorized by statute to investigate the assets

and liabilities of the Debtors, and is empowered to undertake such other matters as are in the

interests of the unsecured creditors generally.  See 11 U.S.C. § 1103(c).

4.        Appointment of Examiner.  On January 16, 2009, the Court entered an

Order which appointed Anton R. Valukas as examiner (the "Examiner") in these chapter 11

2

cases.  On March 11, 2010, the Examiner publicly released his report (the "Report").  In his

Report, the Examiner extensively discusses, among other things, aspects of LBHI's financial

accounting and reporting and opines that the estates may have colorable claims in connection

therewith against officers of LBHI and Ernst & Young.

       5.    Jurisdiction.  Pursuant to 28 U.S.C. § 1334, the Court has subject matter

jurisdiction over this Motion, which is a core proceeding within the meaning of 28 U.S.C. §

157(b)(2).  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.  The statutory

predicates for the relief sought herein are section 1103(c) of the Bankruptcy Code and

Bankruptcy Rule 2004.

**B.**    **Ernst & Young's Connection To The Debtors**

       6.    Ernst & Young has served as auditor to LBHI since the mid-1990s,

conducting audits of LBHI's annual financial statements and conducted reviews of LBHI's

quarterly financial statements.  Ernst & Young has also performed for LBHI and certain of its

subsidiaries other accounting and advisory services, including accounting and tax consultations

related to proposed or actual investment banking and capital markets transactions for LBHI's

clients.

       7.    Ernst & Young has also been retained by the Debtors to provide auditing

and tax services in these Chapter 11 cases.  See Order Granting Debtors' Application Pursuant to

Section 327(a) and 328(a) of the Bankruptcy Code to Retain and Employ Ernst & Young LLP as

Auditors and Tax Services Provider Nunc Pro Tunc to the Commencement Date [Docket No.

2547].  Pursuant to that order, the Debtors have continued to employ Ernst & Young on a post-

petition basis.

       8.    Between 2004 and 2008, Ernst & Young was paid more than $100 million

in fees for professional services rendered to LBHI and its affiliates.

9.      As a result of its prepetition audits, Ernst and Young expressed its opinion regarding the effectiveness of LBHI's internal controls over financial reporting, and concluded that LBHI's financial statements fairly presented LBHI's financial position in accordance with U.S. generally accepted accounting principles.

10.      According to the Examiner's Report, Ernst & Young was privy to information regarding LBHI's and its affiliates' use of a form of off-balance sheet financing, known within LBHI and affiliates as "Repo 105" transactions, which had the effect of temporarily removing securities inventory from LBHI's balance sheet.  According to the Examiner's Report, the use of this form of off-balance sheet financing allowed and contributed to a material misstatement of LBHI's consolidated net leverage levels in LBHI's public disclosures.  The Examiner's Report indicates that LBHI did not disclose in its consolidated financial statements its entry into Repo 105 transactions and further indicates that LBHI made public filings which misleadingly indicated that such transactions had not occurred.  The Examiner's report also indicates that neither LBHI's officers nor Ernst & Young disclosed the use of Repo 105 transactions to LBHI's board of directors, particularly during those portions of 2007 and 2008 when the total value of Repo 105 transactions increased substantially.

## RELIEF REQUESTED

11.      The Committee seeks entry of an order substantially in the form annexed hereto (the "Proposed Order"), authorizing it to obtain (i) production of documents from Ernst & Young, as more specifically set forth in Exhibit A hereto; (ii) an oral examination of Ernst & Young, as more specifically set forth in Exhibit B hereto; and (iii) oral examinations of partners and employees of Ernst & Young as reasonably necessary to enable the Committee to complete

an investigation into causes of action the estates may possess against various parties arising out

of LBHI's and its affiliates' Repo 105 practices and asset valuations.

## BASIS FOR RELIEF

12.     Bankruptcy Rule 2004 states, in relevant part:

(a)  Examination on Motion.  On motion of any party in interest, the
court may order the examination of any entity.

(b)  Scope of Examination.  The examination of an entity under this
rule or of the debtor under § 343 of the Code may relate only to the acts,
conduct, or property or to the liabilities and financial condition of the
debtor, or to any matter which may affect the administration of the
debtor's estate, or to the debtor's right to a discharge.

(c)  Compelling Attendance and Production of Documentary
Evidence.  The attendance of an entity for examination and for the
production of documents, whether the examination is to be conducted
within or without the district in which the case is pending, may be
compelled as provided in Rule 9016 for the attendance of a witness at a
hearing or trial.

13.     The Rule provides for very broad discovery that reaches, in a chapter 11

case, any matter relevant to the case or to the formulation of a plan.  "The purpose of a Rule

2004 examination is 'to show the condition of the estate and to enable the court to discover its

extent and whereabouts and to come into possession of it that the rights of creditors may be

preserved.'"  In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing

Cameron v. United States, 231 U.S. 710, 717 (1914)); see also In re Ionosphere Clubs, Inc., 156

B.R. 414, 432 (S.D.N.Y. 1993) ("Because the purpose of the Rule 2004 investigation is to aid in

the discovery of assets, any third party who can be shown to have a relationship with the debtor

can be made subject to a Rule 2004 investigation."), aff'd, 17 F.3d 600 (2d Cir. 1994).  Indeed,

the investigative power embodied in Rule 2004 is so broad that an examination thereunder can

"legitimately be in the nature of a fishing expedition."  In re Wilcher, 56 B.R. 428, 433 (Bankr.

N.D. Ill. 1985); see also In re Hilsen, No. 87-11261, 2008 Bankr. LEXIS 2123, at *1-*2 (2d Cir.

5

July 25, 2008) (same); In re Bakalis, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (same); In re

Johns-Manville Corp., 42 B.R. 362, 364 (S.D.N.Y. 1984) (same).  Here, of course, the predicate

for the examination sought by the Committee has been clearly established by the Examiner, and

the subject matter of the discovery lies well within the ambit of Rule 2004.

        14.     The Committee is a party in interest pursuant to section 1109(b) and is

expressly authorized pursuant to section 1103(c) of the Bankruptcy Code to, among other things,

"investigate the acts, conduct, assets, liabilities and financial condition of the debtor."  Therefore,

the Committee has standing to seek the relief sought by this Motion.

        15.     The oral examinations and documents sought by the Committee are well

within the allowable scope of a Bankruptcy Rule 2004 examination.  The information requested

by this Motion includes documentation regarding LBHI's use of the Repo 105 practice, valuation

of LBHI's assets, Ernst & Young's audits and reviews of LBHI's financial statements, and

communications between Ernst & Young and LBHI's officers and directors.

        16.     The Examiner conducted an extensive review of LBHI's Repo 105

practice, ultimately concluding, in his opinion, that colorable claims may exist against a number

of parties with respect to LBHI's Repo 105 practice, including Ernst & Young and various LBHI

officers.  The discovery sought herein will enable the Committee to further develop relevant

facts and to determine, *inter alia*, whether the Debtors' estates possess any additional causes of

action against any parties with respect to Repo 105 or asset valuation.  For example, the Debtors'

estates may possess claims against any number of parties who profited from or enabled the

Debtors' use of Repo 105.  The discovery also may have a bearing upon the treatment to be

given to Repo 105 transactions, and internal LBHI transactions facilitating Repo 105

transactions, that remained open at the time of LBHI's chapter 11 filing.  At this time,

notwithstanding the opinions expressed by the Examiner, the Committee has not concluded
whether or against whom causes of action exist and the extent of damage to the estates caused by
the use of Repo 105 or the mismarking of assets.

17.    The information sought by the Committee is solely within Ernst &
Young's control.  It is unlikely that Ernst & Young will voluntarily provide this information to
the Committee; for example, Ernst & Young has thus far declined to supply to the Committee
copies of its audit engagement letters with LBHI for the years 2005 through 2008, which the
Committee requested weeks ago.

18.    The Committee currently possesses a copy of one engagement letter, dated
October 2006, between LBHI and Ernst & Young (the "Engagement Letter").  The Engagement
Letter contains a clause mandating mediation and then arbitration for any disputes arising out of
the services provided by Ernst & Young pursuant to the Engagement Letter (the "ADR Clause").
Based upon Ernst & Young's conduct in other bankruptcy cases, the Committee believes that
Ernst & Young may attempt to use the existence of the ADR Clause as a basis to block discovery
under Rule 2004.  The Court should reject any such challenge.

19.    Rule 2004 discovery is entirely appropriate here, notwithstanding the
ADR Clause.  As noted, the Committee seeks to examine Ernst & Young for the purpose of
determining if claims exist against a range of parties, arising from various types of transactions.
The Committee has not yet determined whether claims exist, and if so, to whom the claims
belong.  Presented with a substantively similar arbitration clause in the prepetition engagement
letter between Ernst & Young and the debtor, the Bankruptcy Court for the Southern District of
Georgia rejected Ernst & Young's attempt to use the arbitration clause to limit Rule 2004
discovery.  See In re Friedman's, 356 B.R. 779 (Bankr. S.D. Ga. 2005).  Among other things, the

Friedman's court noted that where, as here, "the party seeking discovery does not yet know the full extent of any claims it may have," and "no 'controversy or claim' has been submitted to mediation or arbitration pursuant to any written notice from either E & Y or Friedman's," the discovery limitations contained in the arbitration clause have not been triggered.  Id. at 783.  In these circumstances, the Friedman's court allowed the debtor and the creditors' committee to conduct broad discovery under Rule 2004 that was "considered critical to Friedman's, the Creditors' Committee, and ultimately the bankruptcy estate in determining whether there are litigation claims that can be pursued for the benefit of unsecured creditors."  Id.  Significantly, in granting the Rule 2004 motion, the court noted that "[t]he fact that Friedman's or the Creditors' Committee might learn from this discovery process that there are potential [state law] claims against E & Y does not and cannot result in a finding by this Court that the arbitration clause may be used to prohibit reasonable discovery under Rule 2004 by litigants in a bankruptcy forum."  Id.[1]

20.    In so holding, the Friedman's court distinguished and declined to follow another decision involving an arbitration clause-based objection to discovery by Ernst & Young, Ernst &Young, LLP v. Pritchard (In re Daisytek, Inc.), 323 B.R. 180 (N.D. Tex. 2005).[2]  In Daisytek, the district court overruled the bankruptcy court, finding that where the claims to be

---

[1]    See also, e.g., In re New Century TRS Holdings, Inc., 407 B.R. 558, 571 (D. Del. 2009) ("The arbitration clause in the KPMG Engagement Letter is not implicated by the motions before me because, as of the time this relief was sought, no evidence was presented that any claim had been asserted or that any particular proceeding had been commenced against KPMG.…  The plain language of the Engagement Letter's dispute resolution procedures, as cited by KPMG, provides that it applies to discovery 'in connection with the arbitration.'  The relief sought here is not in connection with any arbitration proceeding."); Nisselson v. Wong (In re Best Craft Gen. Contractor and Design Cabinet, Inc.), 239 B.R. 462, 465 (Bankr. E.D.N.Y. 1999) ("Rule 2004 examinations, when initiated for a legitimate purpose, may proceed even in instances where there is the possibility that the resulting evidence could be used in collateral litigation.").

[2]    The Friedman's court concluded that "[t]o follow Daisytek in these circumstances would defeat a fundamental purpose of Rule 2004, which is to grant debtors like Friedman's a broad power to determine what causes of action they may possess.  In re Friedman's, 356 B.R. at 784 ("To prospectively shut down any meaningful investigation would fundamentally be at odds with bankruptcy policy and severely damages the interests of unsecured creditors").

8

prosecuted by a Trustee post confirmation[3] were state law claims, the arbitration clause and the

discovery limitation contained therein would apply prospectively to limit Rule 2004 discovery

*regarding those claims*.  323 B.R. at 188.

21.    Significantly, the <u>Daisytek</u> court recognized that where the Rule 2004

discovery was applicable *both* to state law claims *and* to claims, like preference claims, arising

from the provisions of the Bankruptcy Code, the bankruptcy court "may in its discretion refuse to

enforce the agreement if arbitration would conflict with the purposes of the Code," and

specifically noted that [i]f the examination is permissible under Rule 2004 but overlaps with

discovery that would be constricted by an arbitration clause, the bankruptcy court retains the

discretion to decide what limits, if any, should be placed on such dual-purpose discovery.  <u>Id.</u> at

188 and n.9.  Thus, even under <u>Daisytek</u>, the Committee's intention to use the Rule 2004

discovery to investigate potential claims arising from the Bankruptcy Code would permit the

discovery to proceed notwithstanding the ADR Clause.[4]

22.    There is temporal urgency to the Committee's Motion.  Upon the entry of

the order for relief in this case, all causes of action of the estates were tolled pursuant to

Bankruptcy Code section 108(a)(2).  That tolling is set to expire with respect to certain claims

the Debtors may hold in approximately five months.  To preserve claims that would otherwise be

time barred, the Committee may need to commence certain proceedings by September 2010.  In

---

[3]    Ernst & Young characterized the prosecution of claims against it by the Trustee as follows:  "the Rule 2004 examination was to be conducted after Plan confirmation and substantial consummation, and it was to be taken by a post-confirmation party (the Trustee) pursuing possible claims against a non-debtor, independent of bankruptcy court oversight and on behalf of private potential litigants (the Trust beneficiaries) who are no longer creditors of the Estate."  <u>See</u> 323 B.R. at 184.

[4]    <u>Daisytek</u> is also distinguishable from this case because the arbitration provision in <u>Daisytek</u> allowed discovery only if "authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery."  323 B.R at 186.  In contrast, the Engagement Letter allows for discovery in accordance with Rules for Non-Administered Arbitration of the CPR Institute for Dispute Resolution.  <u>See</u> Engagement Letter at Sch. I.  CPR Rule 11 allows for discovery to the extent it is "appropriate in the

the case of Ernst & Young, the ADR Clause (and perhaps similar clauses in other engagement

letters between Ernst & Young and Lehman) requires a 90-day mediation period to have elapsed

before an arbitration claim could be filed.  Therefore, for purposes of any potential claims

against Ernst & Young that would otherwise be in danger of expiring, any claimant on behalf of

the Debtors' estates will, as a practical matter, have to be in a position to request mediation in

June 2010.[5]

      23.     Pursuant to Bankruptcy Rule 2004(d), the Committee requests the right to

provide Ernst & Young with ten (10) days' notice of the proposed oral examinations.  In

addition, the Committee seeks to compel production of the documents requested within twenty

(20) days from the date of issuance of subpoenas as authorized by the Proposed Order (except for

those documents already produced to the Examiner in this matter, which should be produced

within five (5) business days).  Because the documents sought by the requests consist principally

of work papers and communications with the Debtors, most responsive documents will not need

to be reviewed for privilege and thus a timely production should not prove burdensome.

## NOTICE

      24.     No trustee has been appointed in these chapter 11 cases. The Committee

has served notice of this Motion in accordance with the procedures set forth in the amended

order entered on February 13, 2009 governing case management and administrative procedures

for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the Debtors; (iii) the Securities and

Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the

---

circumstances, taking into account the needs of the parties and the desirability of making discovery
expeditious and cost-effective."  See CPR Inst. 2005 Rules for Non-Administered Arbitration, Rule 11.

[5]     For the Committee to commence a mediation and an arbitration on behalf of the Debtors' estates, it must
first seek standing from the Court pursuant to Unsecured Creditors' Comm. v. Noyes (In re STN
Enterprises), 779 F.2d 901 (2d Cir. 1985).  The facts and circumstances known to the Committee suggest
that the Committee will not have difficulty satisfying this standard.

Southern District of New York; (vi) Ernst & Young; and (vii) all parties who have requested

notice in these chapter 11 cases. The Committee submits that no other or further notice need be

provided.

## NO PREVIOUS REQUEST

25.    No previous request for the relief sought in this Motion has been made by

the Committee to this or any other court of competent jurisdiction.

WHEREFORE, the Committee respectfully requests entry of the Proposed Order

(i) directing Ernst & Young to produce witnesses as requested by the Committee on not less than

10 days notice and to produce documents, described in Exhibit A hereto, on not less than 20 days

notice and (ii) granting the Committee such other and further relief as is just and proper.

Dated:   New York, New York
         April 19, 2010

                         **MILBANK, TWEED, HADLEY & McCLOY LLP**

                         By:    /s/ Dennis F. Dunne
                         Dennis F. Dunne
                         Scott A. Edelman
                         Michael L. Hirschfeld
                         Andrew Tomback
                         1 Chase Manhattan Plaza
                         New York, NY 10005
                         Telephone:  (212) 530-5000

                         David S. Cohen
                         1850 K Street N.W., Suite 1100
                         Washington, DC 20006
                         Telephone: (202) 835-7500

                         Counsel for Official Committee of Unsecured
                         Creditors of Lehman Brothers Holdings Inc., et al.

# EXHIBIT A

**Exhibit A**

## <u>SCHEDULE OF DOCUMENTS TO BE PRODUCED BY ERNST & YOUNG</u>

<u>DEFINITIONS</u>

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.      The term "document" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and includes both documents and electronically stored information stored in any medium from which information can be obtained either directly or after translation into a reasonably usable form including, without limitation, any writings, drawings, graphs, charts, photographs, phonorecords, electronic, recorded, digitally encoded, graphic, and/or other data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form, or other information, including originals, translations and drafts thereof and all copies bearing notations and marks not found on the original.  The term "document" also includes, without limitation, affidavits, analyses, appointment books, appraisals, articles from publications, audit and scope plans (whether in paper, database, electronic or other format(s)), audit workpapers (whether in paper, database, electronic or other format(s)), books, books of account, account statements, cables, calendars, charts, checks (cancelled or uncancelled), check stubs, confirmations, contracts, correspondence, credit card receipts, desk calendars, desk pads, diaries, diskettes, drafts, electronic mail, estimates, evaluations, filings, financial statements, forms, invoices, journals, ledgers, letters, lists, memoranda, minutes, notations, notes, opinions, orders, pamphlets, papers, partners' and employees' personnel files, partners' and employees' review check lists, permanent files, pictures, press releases, projections, prospectuses, publications,

receipts, recordings of conferences, conversations or meetings, reports, statements, statistical records, studies, summaries, tabulations, telegrams, telephone records, telex messages, transcripts, understandings, videotapes, vouchers, work papers, copies of Lehman records and documents, and sheets or things similar to any of the foregoing however denominated.  The term "document" further means any document now or at any time in the possession, custody, or control of the entity to whom this document request is directed (together with any predecessors, successors, affiliates, subsidiaries or divisions thereof, and their officers, directors, employees, agents and attorneys).  Without limiting the term "control" as used in the preceding sentence, a person is deemed to be in control of a document if the person has the right to secure the document or a copy thereof from another person having actual possession thereof, including, but not limited to, work product contracted by Ernst & Young from other professional firms.

2.      "Concerning" means relating to, referring to, describing, evidencing or constituting.

3.      "Lehman" means Lehman Brothers Holdings Inc. (and any predecessor thereof), and its affiliated debtors and debtors-in-possession (and any predecessors thereof) in the Chapter 11 case of Lehman Brothers Holdings Inc. *et al*, currently pending in the United States Bankruptcy Court for the Southern District of New York, and any of their directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf.

4.      "AICPA" means the American Institute of Certified Public Accountants.

5.      "Ernst & Young" means Ernst & Young LLP, a partnership, its predecessors, all parents (including, but not limited to Ernst & Young Global Limited),

subsidiaries, partners, principals, managers and employees, affiliates, representatives, agents, attorneys, and any successors in interest.

6.     "Examiner" shall refer to Anton R. Valukas, who was appointed as examiner in the above-captioned cases on or about January 16, 2009.

7.     "Examiner's Report" shall refer to the report of the Examiner that was issued on March 11, 2010.

8.     "Lehman Engagement" means all the work performed by Ernst & Young in relation to or on behalf of Lehman, including, without limitation, audits of its financial statements, agreed upon procedures, letters to underwriters, memoranda, letters and/or opinions as to accounting policies and issues, assistance in communicating with the Securities and Exchange Commission ("SEC") and other regulatory bodies, preparation of consolidating financial statements and any other examination, consultation, review or tax assistance, including Ernst & Young's role as internal auditors for Lehman, and any Management Advisory Services performed for or on behalf of Lehman.

9.     "MD&A" shall refer to Lehman's Management's Discussion and Analysis section in any document filed with the SEC.

10.     "Repo 105" shall have the meaning ascribed to it in the Examiner's Report.

11.     "Repo 108" shall have the meaning ascribed to it in the Examiner's Report.

12.     "SEC" means the United States Securities and Exchange Commission.

13.     "SFAS 140" means Financial Accounting Standard 140 as issued by the U.S. Financial Accounting Standards Board.

3

14.    "SFAS 157" means Financial Accounting Standard 157 as issued by the

U.S. Financial Accounting Standards Board.

<u>INSTRUCTIONS</u>

A.    The documents covered by this request include all documents in your

possession, custody or control.  Unless otherwise indicated, this request covers all documents

generated or received by you during the period from January 1, 2001 through and including the

date of production.

B.    Each request for the production of documents shall be deemed to be

continuing in nature.  If at any time additional documents come into your possession, custody or

control or are brought to your attention, prompt supplementation of your response to these

requests is required.

C.    You shall produce all documents in the manner in which they are

maintained in the usual course of your business and/or you shall organize and label the

documents to correspond with the categories in this request.  A request for a document shall be

deemed to include a request for any and all file folders within which the document was

contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document

in addition to the document itself.

D.    All electronically stored information must be produced in accordance with

the following specifications:

(i) <u>Form of Production</u>.  Electronically stored information shall be produced in

single-page tiff format with comma-delimited metadata, including all fields.

Name each tiff file with a unique name matching the Bates number labeled on the

corresponding page.  Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

(ii) Image Load  File.  Provide an image load file (Opticon file) that contains document boundaries.

(iii) Document Text.  For documents that were originally stored as native electronic files and which do not have redactions, the extracted (not OCRed), full text from the body of each document shall be produced in separate .txt files named for the Bates number of the associated image, in the same directory as the image.  For documents that were originally stored as native electronic files and which have redactions, the OCR text shall be produced from the redacted image(s) associated with each document, in separate .txt files named for the Bates number of the associated image, in the same directory as the image.  Any redacted material shall be clearly labeled to show the redactions on the tiff image.

(iv) Native Production For Certain File Types.  For files created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native format.  The produced file shall be named with the Bates number on the first page of the corresponding tiff production of the document.

(v) De-duplication.  Produce a single, unique copy of a given e-mail message and its attachments or stand-alone file, with a field of semi-colon delimited references to each custodian/location in which a copy originally appeared.  For e-mail messages, please consolidate duplicates based on MD5 hash generated from BCC,

5

Body, CC, From, IntMsgID, To, Attach (semicolon delimited string of first-level attachments to the e-mail) properties.  For e-mail attachments and stand-alone electronic files, please consolidate duplicates based on MD5 hash of the entire file.

(vi) <u>Metadata</u>.  Please produce extracted metadata for each document in the form of a .dat file, including the following fields (where applicable): bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject line, file name, e-mail sent date, e-mail sent time, created date, created date time, last modified date, last modified date time, author, from, to, CC, BCC, custodian, source, source folder, MD5 hash value, native file path location, and confidentiality designation.

E.    Documents shall be produced in such fashion as to identify the department, branch or office in which they were located and, where applicable, the natural person in whose possession it was found.

F.    Any document withheld from production based on a claim of privilege or any similar claim shall be identified by (1) the type of document, (2) the general subject matter of the document, (3) the date of the document, and (4) the author and recipient(s), where applicable, of the document, (5) the nature of each claim of privilege shall be set forth and (6) such other information as is sufficient to identify the document including,  where not apparent, the relationship of the author and the addressee to each other.

G.    Documents attached to each other should not be separated.

H.      Documents not otherwise responsive to these discovery requests shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request.

I.      The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical.

J.      In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators, or by your attorneys or their agents, employees, representatives or investigators.

K.      If you object to any part of any request, you shall state fully in writing the nature of the objection.  Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request not objected to.

L.      To the extent any document that is responsive to these discovery requests has been made publicly available as an attachment to the Examiner's Report, such document need not be produced in response to these requests.

M.      Each document request shall be construed independently and not with reference to any other document request for the purpose of limitation.

N.      The terms "all" and "each" shall be construed as "all and each."

O.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7

O.      The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

<u>REQUESTS FOR PRODUCTION</u>

<u>REQUEST NO. 1</u>:

All documents concerning the valuation of any Lehman assets, including real estate assets, derivatives or other securities, from January 1, 2005 to September 15, 2008.

<u>REQUEST NO. 2</u>:

All documents concerning the reasonableness of any valuation of any Lehman asset, including any real estate asset, derivatives or other securities from January 1, 2005 to September 15, 2008.

<u>REQUEST NO. 3</u>:

All documents provided to the Examiner by Ernst & Young.

<u>REQUEST NO. 4</u>:

All documents concerning the Examiner's investigation, the Examiner's Report, or any matter referenced therein.

<u>REQUEST NO. 5</u>:

All documents concerning Lehman's use of Repo 105 and/or Repo 108.

<u>REQUEST NO. 6</u>:

All documents concerning Lehman's internal Accounting Policy Manual, Repo 105 and Repo 108.

<u>REQUEST NO. 7</u>:

All documents concerning the "Global Balance Sheet Overview of Repo 105/108 PowerPoint" of July 2006 referenced at p. 16 of Appendix 17 to Examiner's Report.

8

REQUEST NO. 8:

All documents concerning the issuance and implementation of SFAS 140.

REQUEST NO. 9:

All documents concerning disclosure requirements under SFAS 140.

REQUEST NO. 10:

All communications between Ernst & Young and Lehman, or involving Ernst &

Young, Lehman and any other person, concerning SFAS 140, Repo 105 and/or Repo 108.

REQUEST NO. 11:

All documents concerning the Global Master Repurchase Agreement referred to

on p. 16 of Appendix 17 to the Examiner's Report.

REQUEST NO. 12:

All documents concerning the impact of Repo 105 and/or Repo 108 on Lehman's

net leverage.

REQUEST NO. 13:

All documents concerning any allegation of impropriety, misconduct or illegality

concerning, or otherwise questioning the validity of, Lehman's use of Repo 105 and/or Repo

108.

REQUEST NO. 14:

All documents concerning any statements (a) by Matthew Lee (Lehman's Senior

Vice President – Finance Division) in his letter dated May 16, 2008 or made thereafter by Lee to

Ernst & Young, or (b) by any other person, with respect to Lehman's accounting practices,

including, but not limited to, Lehman's Repo 105 and/or Repo 108 practice.

REQUEST NO. 15:

All documents concerning any investigation, review or inquiry by Ernst & Young of the "whistleblower" allegations raised by Matthew Lee in his letter dated May 16, 2008 or made thereafter by Lee.

REQUEST NO. 16:

All documents concerning any attempt by Lehman to obtain a True Sale Opinion Letter (as defined in the Examiner Report) with respect to repurchase transactions from any United States law firm.

REQUEST NO. 17:

Any communications between Lehman and Ernst & Young, or involving Lehman, Ernst & Young and any other person, regarding the need for a True Sale Opinion in connection with Lehman's Repo 105 and/or Repo 108 practice.

REQUEST NO. 18:

All documents concerning any opinion letters obtained by Lehman from the Linklaters law firm regarding whether repurchase transactions under a Global Master Repurchase Agreement constitute sales.

REQUEST NO. 19:

All documents concerning any Lehman Balance Sheet Netting Grid (as defined in the Examiner's Report).

REQUEST NO. 20:

All documents concerning any communications between Lehman and Linklaters, including, but not limited to communications concerning Repo 105, Repo 108 or SFAS 140

REQUEST NO. 21:

All documents concerning any planned, possible or potential restatement of Lehman's financial statements for the years ended November 30, 2006 and 2007 or any SEC investigation of financial statements for the years ended November 30, 2006 and 2007.

REQUEST NO. 22:

All financial statements of Lehman and reports prepared in connection with any Lehman Engagement, whether or not issued, including, without limitation, audit reports, agreed-upon procedures and other special reports, consulting reports, letters, and recommendations to the Lehman management or board of directors, management advisory letters, compliance reports, internal accounting control reports, material deficiency reports, program reports, cost reports, financial statement reports, reports of material weaknesses and reports of reportable conditions.

REQUEST NO. 23:

All documents concerning any internal reviews of Ernst & Young or any division, department, partner, manager, employee or agent of Ernst & Young of any services provided to Lehman by Ernst & Young at any time during the period January 1, 2001 to the present.

REQUEST NO. 24:

All internal manuals, statements of policies and procedures, audit procedure guides and industry audit and accounting guides of Ernst & Young in effect at any time during Ernst & Young's examinations of the financial statements of Lehman for the years ended November 30, 2006, November 30, 2007, and any financial statements of Lehman dated after November 30, 2007, including, but not limited to, reviews of the quarterly financial statements filed by Lehman with the SEC on February 29 and May 31, 2008.  If the manuals and guides in effect during Ernst & Young's audit examinations of Lehman are no longer available, then this

11

Request also calls for the production of the earliest versions of the manuals and guides that were prepared after Ernst & Young's audit examinations of Lehman and that are now available.

REQUEST NO. 25:

All documents concerning Ernst & Young's interpretations of SFAS 157, including but not limited to the measurement of fair value and disclosures regarding fair value.

REQUEST NO. 26:

All documents concerning communications with Lehman concerning  fair value measurements and fair value disclosures under SFAS 157.

REQUEST NO. 27:

All documents concerning communications with the Audit Committee of Lehman's Board of Directors concerning Lehman's use of or compliance with SFAS 157.

REQUEST NO. 28:

All documents concerning communications with the Audit Committee of Lehman's Board of Directors concerning Lehman's use of Repo 105 and/or Repo 108.

REQUEST NO. 29:

All documents concerning Ernst & Young's compliance with or adherence to any auditing and related professional practice standards in connection with Ernst & Young's audits or reviews of Lehman's financial statements, including but not limited to AU § 380.11, AU § 722 or AU § 550.

REQUEST NO. 30:

All documents referring to, describing, suggesting or alleging possible violations by Lehman or by Ernst & Young in the provision of  services to Lehman of any accounting standards including, but not limited to, possible violations of SFAS 140, SFAS 157, valuation

methods prescribed under generally accepted accounting principles, and/or Public Company

Accounting Oversight Board requirements.

REQUEST NO. 31:

        All engagement letters, consulting contracts or other documents constituting,

referring or concerning any agreements between Ernst & Young and Lehman concerning the

Lehman Engagement including any and all subcontracts or other arrangements with third parties

which Ernst & Young or Lehman commissioned in connection with the Lehman Engagement

including, but not limited to, valuations, forensic reports or opinions.

REQUEST NO. 32:

        All documents concerning Ernst & Young's examination of, review of, and report

and/or opinion on, the financial statements of Lehman as of and for the years ended November

30, 2006, and November 30, 2007, and the quarterly financial statements filed by Lehman with

the SEC as of and for the quarters ended February 29 and May 31, 2008.

REQUEST NO. 33:

        All billing files or their equivalent, and their constituent parts, concerning the

Lehman Engagement including, without limitation, records of time and out-of-pocket expenses

incurred, and documents concerning billings and collection of these items.

REQUEST NO. 34:

        All documents concerning the decision by Ernst & Young to accept, or continue

to represent, Lehman as an audit client, including, but not limited to, any new client form or

continuing client form or new client memoranda or continuing client memoranda concerning

Lehman.

REQUEST NO. 35:

All documents concerning any communications among the partners, managers or other employees of Ernst & Young as to whether Ernst & Young should cease serving as Lehman's independent auditor.

REQUEST NO. 36:

All documents provided or available to the persons assigned to the Lehman Engagement, or any part thereof, to prepare such persons for the Lehman Engagement or referred to during such engagement, including, without limitation, training or instruction manuals, audit guides, program materials and audit reports.

REQUEST NO. 37:

Documents sufficient to identify all former Ernst & Young personnel who worked for Lehman subsequent to working at or for Ernst & Young.

REQUEST NO. 38:

All audit planning and risk assessment memoranda related to any work performed by Ernst & Young on behalf of Lehman.

REQUEST NO. 39:

All documents (including but not limited to documents produced by Ernst & Young's national office on accounting policy) concerning Ernst & Young's interpretations of SFAS 140, accounting for repurchase transactions in general and accounting for repurchase transactions as sales, including but not limited to Repo 105 and Repo 108.

REQUEST NO. 40:

All documents concerning Lehman's use of monies received by Lehman in Repo 105 and Repo 108 transactions, including but not limited to use to pay down Lehman's liabilities.

REQUEST NO. 41:

Documents sufficient to identify the persons at Lehman involved in the use of, and the persons at Ernst & Young involved in auditing the use of, monies received by Lehman in Repo 105 and Repo 108 transactions.

REQUEST NO. 42:

All documents concerning the purposes for which Lehman undertook Repo 105 and Repo 108 transactions at any points from 2001 through 2008.

REQUEST NO. 43:

All documents concerning materiality in the context of an impact upon Lehman's net leverage.

REQUEST NO. 44:

All documents concerning Ernst & Young's knowledge or understanding of its professional obligations concerning Repo 105, Repo 108 or SFAS 140.

REQUEST NO. 45:

All documents concerning any communication between Ernst & Young and the Audit Committee of the Board of Directors of Lehman or any member thereof concerning SFAS 140.

REQUEST NO. 46:

All documents concerning whether Lehman's 2007 audited financial statements complied with GAAP.

REQUEST NO. 47:

All documents concerning any (a) communications concerning Lehman's MD&A disclosures or (b) Ernst & Young consideration of Lehman's MD&A disclosures.

REQUEST NO. 48:

All documents prepared or reviewed by Ernst & Young regarding Lehman in response to inquiries from the Securities and Exchange Commission.

REQUEST NO. 49:

All documents concerning any review by any Ernst & Young concurring partner/SEC second partner reviewer regarding Lehman's use of Repo 105, Repo 108 or Lehman's valuation of assets.

REQUEST NO. 50:

All documents concerning intercompany transactions that were implemented in connection with Repo 105 and/or Repo 108 transactions at Lehman, including but not limited to Lehman's use of Lehman Brothers International (Europe) to effectuate Repo 105 and/or Repo 108 transactions with assets originating with Lehman entities located in the United States.

REQUEST NO. 51:

All documents produced by Ernst & Young in response to Public Company Accounting Oversight Board requests concerning any review of Ernst & Young audits of clients in the financial services industry, including but not limited to, Lehman.

<u>REQUEST NO. 52</u>:

Documents sufficient to identify Ernst & Young's policies and procedures concerning file, document, or other information retention and/or destruction during the time of any Lehman Engagement.

<u>REQUEST NO. 53</u>:

All statements, transcripts of testimony, communications and documents provided to any regulatory or legislative authority or grand jury, including, but not limited to any committee of Congress, the SEC, or any other federal, state, U.K., E.U. or other regulatory authority (including Self-Regulated Organizations), regarding Lehman or the Lehman Engagement.

<u>REQUEST NO. 54</u>:

All statements, transcripts of testimony, communications and documents provided to the AICPA or any other professional association of certified public accountants, regarding Lehman or the Lehman Engagement.

<u>REQUEST NO. 55</u>:

All transcripts of testimony given or provided in connection with any lawsuit or administrative proceeding regarding Lehman or the Lehman Engagement.

<u>REQUEST NO. 56</u>:

Documents sufficient to identify any claim for fraud or professional malpractice asserted against Ernst & Young related to its performance of accounting or audit services during the period from January 1, 2006 to the present.

REQUEST NO. 57:

Documents sufficient to identify whether any partner, manager or employee of Ernst & Young who performed services in connection with the Lehman Engagement has been the subject of any disciplinary action, adverse performance review or claim for professional malpractice.

REQUEST NO. 58:

All documents describing or illustrating Lehman's organizational structure for each year from 2006 to present, and for each month during 2008.

REQUEST NO. 59:

All documents concerning changes in Lehman's credit ratings from 2006 through 2008.

REQUEST NO. 60:

Documents sufficient to identify the name and title of each Ernst & Young employee who worked on the Lehman Engagement at any time since January 1, 2001.

REQUEST NO. 61:

All contracts, policies or other documents which purport to obligate any person, party or entity, including but not limited to any affiliate of Ernst & Young, to insure or otherwise reimburse Ernst & Young for or against claims concerning professional malpractice.

REQUEST NO. 62:

All Ernst & Young press releases concerning the Lehman Engagement.

REQUEST NO. 63:

All documents which refer, reflect or relate to Ernst & Young's communications with any insurance carriers concerning the Lehman Engagement.

REQUEST NO. 64:

Documents sufficient to identify the nature and amount of all claims against Ernst & Young concerning the Lehman Engagement.

REQUEST NO. 65:

All documents concerning communications between Ernst & Young and outside legal counsel to Lehman or any special committee of Lehman's Board of Directors.

REQUEST NO. 66:

All documents concerning Ernst & Young's knowledge or understanding of whether other financial services industry entities accounted for repurchase transactions as sales pursuant to SFAS 140 and whether any such entities ceased engaging in such transactions at any point prior to issuance of the Examiner Report.

REQUEST NO. 67:

All documents concerning any business or professional relationship between Ernst & Young and Lehman other than the Lehman Engagement.

# **EXHIBIT B**

Dennis F. Dunne
Scott A. Edelman
Michael L. Hirschfeld
Andrew Tomback
MILBANK, TWEED, HADLEY & MᶜCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:  (212) 530-5000
Facsimile: (212) 530-5219

and

David S. Cohen
MILBANK, TWEED, HADLEY & MᶜCLOY LLP
1850 K Street N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 835-7586

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------- x
                                                                :
In re:                                                          :      Chapter 11 Case
                                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,                          :      No. 08-13555 (JMP)
                                                                :
                    Debtors.                                    :      (Jointly Administered)
                                                                :
--------------------------------------------------------------- x

<u>NOTICE OF RULE 30(B)(6) DEPOSITION OF ERNST & YOUNG LLP</u>

PLEASE TAKE NOTICE THAT pursuant to Rule 30(b)(6) of the Federal Rules

of Civil Procedure ("<u>Rule 30(b)(6)</u>"), made applicable by Rules 9014 and 7030 of the Federal

Rules of Bankruptcy Procedure, the Official Committee of Unsecured Creditors (the

"<u>Committee</u>") of Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and each of its affiliated debtors in

possession (collectively, the "<u>Debtors</u>"), in the above-captioned cases (the "<u>Chapter 11 Cases</u>")

under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), will take the deposition upon oral examination of Ernst & Young LLP of the person designated as most knowledgeable to testify on their behalf with respect to the topics set forth in Schedule A hereto (the "Deposition").  The Deposition will be held at the offices of Milbank, Tweed, Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New  York, New York, 10005, or as otherwise agreed to by the parties in writing.  The Deposition will continue from day to day thereafter until completed.  The Deposition will be taken by oral examination, before a notary public or other officer authorized by law to administer oaths, and recorded by stenographic means, digital recordation and videotaped.

As required by Rule 30(b)(6), Ernst & Young LLP shall designate one or more officers, directors, managing agents, or other persons to testify on its behalf about the matters set forth in Schedule A hereto.  Please identify the witness(es) at least three days in advance of the Deposition.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated:      New York, New York
            April 19, 2010

                        MILBANK, TWEED, HADLEY & McCLOY LLP

                        By: /s/ Dennis F. Dunne
                        Dennis F. Dunne
                        Scott A. Edelman
                        Michael L. Hirschfeld
                        Andrew Tomback
                        1 Chase Manhattan Plaza
                        New York, NY  10005
                        Telephone: (212) 530-5000
                        Facsimile: (212) 530-5219


                        David S. Cohen
                        1850 K Street N.W., Suite 1100
                        Washington, DC 20006
                        Telephone: (202) 835-7500
                        Facsimile: (202) 835-7586


                        Counsel for the Official Committee
                        of Unsecured Creditors of Lehman Brothers
                        Holdings Inc., et al.

## SCHEDULE A

### DEFINITIONS

1.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

3.      "Director" means any director sitting on any Lehman board of directors.

4.      "Ernst & Young" means Ernst & Young LLP, a partnership, its predecessors, all parents (including, but not limited to Ernst & Young Global Limited), subsidiaries, partners, principals, managers and employees, affiliates, representatives, agents, attorneys, and any successors in interest.

5.      "Examiner" shall refer to Anton R. Valukas, who was appointed as examiner in the above-captioned cases by order of the Court on January 20, 2009.

6.      "Examiner Report" shall refer to the report of the Examiner that was made public on March 11, 2010.

7.      "Lehman" means Lehman Brothers Holdings Inc. (and any predecessor thereof), and its affiliated debtors and debtors-in-possession (and any predecessors thereof) in the Chapter 11 case of Lehman Brothers Holdings Inc., et al., currently pending in the United States Bankruptcy Court for the Southern District of New York, and any of their directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf.

8.      "Lehman Engagement" means all the work performed by Ernst & Young in relation to or on behalf of Lehman, including, without limitation, audits of its financial

statements, agreed upon procedures, letters to underwriters, memoranda, letters and/or opinions

as to accounting policies and issues, assistance in communicating with the SEC and other

regulatory bodies, preparation of consolidating financial statements and any other examination,

consultation, review or tax assistance, including Ernst & Young's role as independent auditors

for Lehman, and any Management Advisory Services performed for or on behalf of Lehman.

9.    "MD&A" means the Management's Discussion and Analysis section in any

document filed with the SEC.

10.    "Officer" means any officer of Lehman.

11.    "Repo 105" shall have the meaning ascribed to it in the Examiner's Report.

12.    "Repo 108" shall have the meaning ascribed to it in the Examiner's Report.

13.    "SEC" means the United States Securities and Exchange Commission.

14.    "SFAS 140" means Financial Accounting Standard 140 as issued by the United

States Financial Accounting Standards Board.

15.    "SFAS 157" means Financial Accounting Standard 157 as issued by the United

States Financial Accounting Standards Board.

16.    The connectives "and" and "or" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of the discovery request all responses that

might otherwise be construed to be outside of its scope.

17.    The terms "all" and "each" shall be construed as all and each.

18.    The term "any" shall be construed to include the word "all," and the word "all" as

used herein includes the word "any."

## TOPICS

1.      The Examiner Report's discussion and findings with respect to Ernst & Young's role as Lehman's independent auditor.

2.      Any communications with or documents produced to the Examiner.

3.      Ernst & Young's document retention policies.

4.      All work performed by Ernst & Young as independent auditor to Lehman in the course of the Lehman Engagement.

5.      Any internal assessment of Ernst & Young's risk in undertaking the Lehman Engagement

6.      Ernst & Young's internal audit policies and procedures.

7.      Communications concerning Ernst & Young's audit and/or examination of, review of, and/or report and/or opinion on Lehman's financial statements as of and for the years ended November 30, 2006 and November 30, 2007, and the quarterly financial statements filed by Lehman with the SEC as of and for the quarters ended February 29 and May 31, 2008.

8.      Any study or evaluation by Ernst & Young of Lehman's system of internal accounting controls.

9.      The valuation of Lehman's assets, including, but not limited to, any real estate assets, derivatives or other securities from January 1, 2005 to September 15, 2008.

10.     Communications concerning the reasonableness of any valuation of any Lehman asset, including, but not limited to, any real estate asset, from January 1, 2005 to September 15, 2008.

11.     Ernst & Young's interpretations of SFAS 157, including but not limited to the measurement of fair value and disclosures regarding fair value.

12.    Communications with Lehman concerning either Lehman's or Ernst & Young's understanding of fair value measurements and fair value disclosures under SFAS 157.

13.    Communications with the Audit Committee of Lehman's Board of Directors concerning Lehman's use of or compliance with SFAS 157.

14.    Lehman's use of Repo 105 and Repo 108.

15.    Ernst & Young's interpretations of SFAS 140, accounting for repurchase transactions in general, and accounting for repurchase transactions as sales, including but not limited to Repo 105 and Repo 108.

16.    Ernst & Young's knowledge or understanding of its professional obligations concerning Repo 105, Repo 108 and SFAS 140.

17.    Communications with Lehman concerning either Lehman's or Ernst & Young's understanding of disclosure requirements under SFAS 140 and/or disclosure requirements with respect to Lehman's use of Repo 105 and Repo 108.

18.    Communications concerning Ernst & Young's knowledge of and/or familiarity with Lehman's Repo 105 and Repo 108 practices.

19.    Communications between Ernst & Young and any Lehman employee concerning SFAS 140, including, but not limited to, any communications concerning Ernst & Young's concurrence with Lehman's application of SFAS 140 to Lehman's use of Repo 105 and Repo 108.

20.    Communications with the Audit Committee of Lehman's Board of Directors concerning Lehman's use of or compliance with SFAS 140.

21.    Communications with the Audit Committee of Lehman's Board of Directors concerning Lehman's use of Repo 105 or Repo 108.

22.     Any review by Ernst & Young of any Lehman policy related to Repo 105 or Repo 108.

23.     Any review by Ernst & Young of any Lehman Balance Sheet Netting Grid (as defined in the Examiner's Report).

24.     Ernst & Young's understanding of the intercompany transactions necessary to effectuate a Repo 105 or Repo 108 transaction at Lehman, including but not limited to Lehman's use of Lehman Brothers International (Europe) to effectuate Repo 105 and Repo 108 transactions.

25.     Ernst & Young's understanding of the impact of Lehman's use of Repo 105 and Repo 108 on Lehman's financial statements.

26.     Ernst & Young's understanding of the impact of Lehman's use of Repo 105 and Repo 108 on Lehman's net leverage.

27.     Any review, analysis or study by Ernst & Young of Lehman's Repo 105 and/or Repo 108 transactions and/or Lehman's method of accounting for Repo 105 and/or Repo 108 transactions.

28.     Any advice or consultation provided by Ernst & Young's national office on accounting policy to the Ernst & Young team responsible for the Lehman audit concerning Repo 105 or Repo 108.

29.     Any review or comments by any Ernst & Young concurring partner/SEC second partner reviewer regarding Lehman's use of Repo 105, Repo 108 or Lehman's valuation of assets.

30.     Ernst & Young's knowledge of and review of the opinion letter, described in the Examiner's Report, that was obtained by Lehman from the Linklaters law firm.

31.    Communications with Linklaters regarding Lehman.

32.    Ernst & Young's knowledge or understanding of any attempt by Lehman to obtain a True Sale Opinion Letter (as defined in the Examiner Report) with respect to repurchase transactions from any United States law firm.

33.    Ernst & Young's knowledge or understanding of whether other financial services industry entities accounted for repurchase transactions as sales pursuant to SFAS 140 and whether any such entities ceased engaging in such transactions at any point prior to issuance of the Examiner Report.

34.    Ernst & Young's knowledge or understanding of Lehman's use of monies received by Lehman in Repo 105 or Repo 108 transactions, including, but not limited to, to pay down Lehman's liabilities.

35.    Ernst & Young's knowledge or understanding of Lehman's disclosure of its use of monies received by Lehman in Repo 105 or Repo 108 transactions.

36.    Ernst & Young's knowledge or understanding of the purposes for which Lehman undertook Repo 105 and/or Repo 108 transactions at any points from 2001 through 2008.

37.    Ernst & Young's knowledge or understanding of Lehman's standard for materiality in the context of an impact to Lehman's net leverage.

38.    Ernst & Young's standard for materiality in the context of an impact to Lehman's net leverage.

39.    Communications between Ernst & Young and any Officer or Director, including but not limited to Richard Fuld, Christopher O'Meara, Erin Callan or Ian Lowitt, concerning Repo 105 and/or Repo 108.

40.     Any review, analysis, study or audit by Ernst & Young of any disclosure made by Lehman in any document filed by Lehman with the SEC, including any review or audit of any disclosure in the MD&A section of any SEC filing, for the fiscal years ended November 30, 2006 and November 30, 2007, and the quarterly financial statements filed by Lehman with the SEC as of and for the quarters ended February 29 and May 31, 2008.

41.     Ernst & Young's knowledge or understanding of whether Lehman's 2006 and 2007 audited financial statements complied with GAAP.

42.     Ernst & Young's knowledge or understanding of whether Lehman's MD&A disclosures should have included a discussion of Repo 105, Repo 108 or the impact on Lehman's leverage ratios as a result of Lehman's use of Repo 105 and Repo 108.

43.     Communications concerning any allegation of impropriety, misconduct or illegality concerning Lehman's use of Repo 105 and Repo 108.

44.     Communications concerning any allegations made or concerns raised by Matthew Lee (Lehman's Senior Vice President – Finance Division) with respect to Lehman's accounting practices, including, but not limited to, Lehman's Repo 105 and Repo 108 practices.

45.     Any investigations undertaken by Ernst & Young concerning any allegations made or concerns raised by Matthew Lee (Lehman's Senior Vice President – Finance Division) with respect to Lehman's accounting practices, including, but not limited to, Lehman's Repo 105 or Repo 108 practice.

46.     All testimony given or provided in connection with any lawsuit or administrative proceeding concerning Lehman or the Lehman Engagement.

47.     Ernst & Young's compliance with or adherence to any auditing and related professional practice standards in connection with Ernst & Young's audits or reviews of

Lehman's financial statements, including but not limited to AU § 380.11, AU § 722 or AU § 550.

48.    Ernst & Young's provision of auditing services to entities other than Lehman that currently utilize, or have previously utilized, a repo accounting practice substantially similar to Lehman's Repo 105 or Repo 108 practice.

49.    All claims for fraud or professional malpractice asserted against Ernst & Young concerning the Lehman Engagement.

50.    Communications concerning any alleged violations of professional standards in the services provided by Ernst & Young to Lehman in the course of the Lehman engagement.

51.    Communications concerning whether Ernst & Young should cease serving as Lehman's independent auditor.

52.    Communications concerning any party or entity that will insure or otherwise reimburse Ernst & Young for or against any claim relating to professional malpractice.

53.    Ernst & Young's professional malpractice liability insurance policies.

# **Proposed Order**

Dennis F. Dunne
Scott A. Edelman
Michael L. Hirschfeld
Andrew Tomback
MILBANK, TWEED, HADLEY & MᶜCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:  (212) 530-5000
Facsimile: (212) 530-5219

and

David S. Cohen
MILBANK, TWEED, HADLEY & MᶜCLOY LLP
1850 K Street N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 835-7586


Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x

In re:                                                    :

LEHMAN BROTHERS HOLDINGS INC., *et al.*    :

                              Debtors.         :

———————————————————————x

Chapter 11

Case No. 08-13555 (JMP)

(Jointly Administered)

## ORDER GRANTING MOTION OF OFFICIAL
## COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER, UNDER
## 11 U.S.C. § 1103(c) AND FED. R. BANKR. P.  2004,
## AUTHORIZING DISCOVERY FROM ERNST & YOUNG LLP

Upon the motion, dated April 19, 2010 (the "Motion"),[1] of the Official Committee

of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. (the "Committee"), pursuant to

Rule 2004 of the Federal Rules of Bankruptcy Procedure, for an order directing Ernst & Young

to produce certain discovery, as more fully set forth in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District

Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided, and it appearing that no

other or further notice need be provided; and the Court having reviewed the Motion; and

approval of the relief requested in the Motion being within the sound discretion of the Court; and

the Court having determined that the relief sought in the Motion is in the best interests of the

Debtor, its creditors and all parties in interest; and the Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein, including

that the examination of Ernst & Young relates to the "property or to the liabilities and financial

condition" of the Debtors and may "affect the administration of the [Debtors'] estate"; and upon

all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefore, it is

ORDERED that the Motion is GRANTED; and it is further

ORDERED that Ernst & Young shall produce responsive, non-privileged

documents requested in Exhibit A to the Motion within 20 days of the date hereof; and it is

further

ORDERED that Ernst & Young shall designate an individual or individuals with

knowledge of the matters and documents described in Exhibit B to the Motion and produce that

individual(s) to be examined by the Committee under oath and in accordance with Bankruptcy

---

[1]    Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

2

Rule 2004 on such date and time and at such location as may be designated in writing by the Committee on not less than 10 days notice; and it is further

ORDERED that the Committee shall be entitled to take the oral examinations of partners and employees of Ernst & Young, on such date and time and at such location as may be designated in writing by the Committee on not less than 10 days notice, as reasonably necessary to enable the Committee to complete an investigation into causes of action the estates may possess against various parties arising out of LBHI's and its affiliates' Repo 105 practices and asset valuations; and it is further

ORDERED that, to the extent necessary, the Committee's rights are reserved to request additional documents and depositions under Bankruptcy Rule 2004 based on any information that may be revealed as a result of the documents and testimony provided pursuant to this Order; and it is further

ORDERED that this Court retains jurisdiction to resolve all matters arising under or related to this Order, including any disputes regarding discovery or any subpoena issued pursuant to this Order, that may arise between or among the parties, and to interpret, implement and enforce the provisions of this Order.

Dated: New York, New York
        May __, 2010

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE