BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Jonathan D. Schiller
Hamish P. M. Hume
Jack G. Stern

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11 Case No.<br>08-13555 (JMP)<br>(Jointly Administered) |
| In re<br><br>LEHMAN BROTHERS INC.,<br><br>Debtor. | Case No. 08-01420 (JMP) |

**MOTION *IN LIMINE* OF BARCLAYS CAPITAL INC. FOR AN ORDER EXCLUDING THE EXPERT TESTIMONY OF DANIEL MCISAAC REGARDING LBI'S OBLIGATIONS UNDER SEC RULES 15c3-1, 15c3-3 AND/OR THE SECURITIES INVESTOR PROTECTION ACT**

Barclays Capital Inc. ("Barclays"), by and through its undersigned counsel, hereby moves the Court for the entry of an order, pursuant to Federal Rule of Evidence 702, excluding the McIsaac Report[1] and any expert testimony by Mr. Daniel McIsaac concerning the following

---

[1] In connection with the Trustee's Motion for Order Approving Trustee's Allocation of Property of the Estate, the Trustee served the "Affidavit of Daniel McIsaac" dated October 5, 2009 ("McIsaac Affidavit") and the "Supplemental Affidavit of Daniel McIsaac" dated February 18, 2010 ("Supplemental McIsaac Affidavit"), both of which affidavits the Trustee designated as expert reports for purposes of the Rule 60 Motions. The Trustee later served in connection with the Rule 60 Motions a "Rebuttal Report of Daniel McIsaac" dated March 14, 2010

topics: (1) interpretation of SEC Rules 15c3-1 or 15c3-3; (2) interpretations of LBI's obligations under SIPA after filing for SIPA protection on September 19, 2008, including what constitutes "customer property" under SIPA; (3) LBI's ability on or around September 19, 2008 to accurately calculate the amount of cash and qualified securities required to be maintained pursuant to SEC Rule 15c3-3; (4) selected "errors" in LBI's calculations under SEC Rule 15c3-3 as of September 19, 2008; and (5) any purported understatement of LBI's overall calculation under SEC Rule 15c3-3 or any shortfall in LBI's overall reserve account of cash and qualified securities held pursuant to SEC Rule 15c3-3 on September 19, 2008.

## INTRODUCTION

1.  Daniel McIsaac, an expert designated by the Trustee in the Securities Investor Protection Act proceedings (the "Trustee"), purports to be an expert in "the SEC rules governing financial responsibility of SEC registered broker-dealers and the protection of customer property, and with industry practices regarding the handling of customer property and compliance with SEC customer protection rules." (McIsaac Rebuttal at ¶ 2; *see also* McIsaac Affidavit at ¶ 5.) Mr. McIsaac offers opinions on the following topics:

    a.  An explication of SEC Rules 15c3-1 and SEC Rule 15c3-3, including the requirement that broker-dealers maintain an account (the "Reserve Account") of cash and qualified securities in an amount determined by a regularly conducted calculation (the "Reserve Calculation") (McIsaac Affidavit at ¶¶ 6-22);

---

("McIsaac Rebuttal"). The McIsaac Affidavit, Supplemental McIsaac Affidavit, and McIsaac Rebuttal collectively are referred to herein as the "McIsaac Report".

1

    b. The state of LBI's systems for computing the amount required to be kept in the Reserve Account and purported facts regarding LBI's Reserve Calculations on an around September 19, 2008 (McIsaac Affidavit at ¶¶ 23-31);

    c. Identification of certain purported errors in LBI's Reserve Calculation as of September 19, 2008 (McIsaac Affidavit at ¶¶ 32-48; McIsaac Supplemental McIsaac Affidavit at ¶¶ 2-3; McIsaac Rebuttal at ¶¶ 8-25);

    d. Identification of additional matters "under investigation" for which Mr. McIsaac does not opine one way or the other that there was an error in LBI's Reserve Calculation of September 19, 2008 (McIsaac Affidavit at ¶¶ 50-62); and

    e. A conclusion that LBI's Reserve Calculation of September 19, 2008 was understated and caused a shortfall in LBI's Reserve Account as of that date.[2] (McIsaac Affidavit at ¶ 49).

    2. Mr. McIsaac's proposed testimony should be excluded pursuant to Fed. R. Evid. 702 because Mr. McIsaac did not conduct a reliable empirical analysis of either LBI's Reserve Calculation or the Amounts needed to fund LBI's Reserve Account as of September 19, 2008 (or any other date).

    3. In addition, Mr. McIsaac should be precluded from opining on what is or is not required of an operating broker-dealer under SEC Rules 15c3-1 and 15c3-3, as it improperly impinges on this Court's role by testifying on issues of law. *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001); *see also United States v. Duncan,* 42 F.3d 97,

---

[2] Although Mr. McIsaac originally opined in the McIsaac Affidavit that LBI's Reserve Calculation as of September 19 was understated by $4.9 billion, resulting in an alleged shortfall in LBI's Reserve Account of approximately $3.7 billion (McIsaac Affidavit at ¶ 49), the Trustee himself has reduced his assertions regarding the alleged shortfall in the LBI Reserve Account to the range of $900 million, or a mere quarter of what Mr. McIsaac originally opined. (*See* Trustee Reply Brief at ¶ 47 n.7).

101 (2d Cir. 1994), *citing United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.") (internal quotation marks omitted).

4. Moreover, Mr. McIsaac admits that he is not an expert on SIPA or the rights and obligations of a SIPA trustee and therefore lacks the credentials to provide testimony on LBI's obligations after filing for SIPA protection on September 19, 2008.

5. Finally, Mr. McIsaac's entire line of testimony should be excluded because it is based on a fundamental erroneous assumption – that LBI was required to conduct a Reserve Calculation after filing for SIPA protection on Friday, September 19, 2008.

6. Accordingly, Barclays requests that the Court exclude Mr. McIsaac's testimony from the record and the upcoming hearing pursuant to Fed. R. Evid. 702.

## ARGUMENT

### I. Mr. McIsaac Did Not Conduct A Rigorous Empirical Analysis Of LBI's Reserve Calculation Or The Amounts Needed To Fund LBI's Reserve Account

7. First and foremost, Mr. McIsaac should not be allowed to testify as to any of the following proposed testimony:

   a. The impact of selected "errors" he identifies on LBI's Reserve Calculation as of September 19, 2008.

   b. This principle holds with even more force with respect to the errors "under investigation" (not by Mr. McIsaac, notably, but by the Trustee), upon which Mr. McIsaac purports to further base his conclusion that LBI's Reserve Account was underfunded as of September 19, 2008.

3

      c.   The proper Reserve Calculation or Reserve Account value required by SIPA or SEC Rule 15c3-3 as of September 19, 2008 (or any other date).

    8.   This proposed testimony should be excluded because Mr. McIsaac's opinions on these matters are not based on empirical analysis but instead are mere superficial acceptance of the results of investigation and analysis provided to Mr. McIsaac by the Trustee and its financial advisor Deloitte & Touche – investigation and analysis that the Trustee has refused to disclose on the basis of privilege.[3] (*See generally* Motion by Barclays Capital Inc. for an Order Compelling Documents from LBHI, the Trustee, the Creditors' Committee and their Financial Advisors Deloitte, FTI, Alvarez & Marsal, and Houlihan Lokey, April 14, 2010, and Motion Exhibits 1 and 16).  Mere acceptance of another's analysis is not proper expert testimony under Fed. R. Evid. 702.  *See United States v. Visa USA, Inc.*, 163 F. Supp. 2d 322, 402 (S.D.N.Y. 2001) (rejecting expert testimony that "offers no empirical analysis to support his position and his opinion is based on a cursory examination of selected facts.").  Indeed, an expert opinion must be excluded as unreliable when the expert forms it "without even endeavoring to obtain and consider all the available and relevant information."  *Tianshu Li v. Aponte*, 2009 U.S. Dist. LEXIS 59741, at *23 (S.D.N.Y. May 5, 2009).

    9.   Here, Mr. McIsaac acknowledges that he did *no independent investigation* of the facts regarding the supposed "errors" he identified in his Report.  (*See, e.g.,* McIsaac Dep. Tr. at 262:5-19 (no investigation regarding amounts held in Reserve Account on relevant dates); *id*. at 275:6-25 (no investigation regarding accuracy of value of securities purportedly seized by

---

[3] The Trustee's invocation of privilege as to Deloitte of course prevents Barclays from examining McIsaac's superficial approval of Deloitte's and the Trustee's investigation.

4

Chase); *id*. at 279:6-17 (no investigation regarding whether accounts at issue were customer accounts)).

10. More tellingly, Mr. McIsaac further acknowledges that he made no effort to identify errors that would have resulted in downward adjustments to the SEC Rule 15c3-3 requirement, but *relied solely on the Trustee to identify matters he should examine:*

> Q. Were you asked by the Trustee to identify transactions or events that might have required adjustments on the debit side of the reserve calculation?
>
> A. **All issues brought to my attention by the Trustee would have been reviewed.** There was no indication of only reviewing the credit side. In fact, the coding errors did have an impact on both the debit and credit side.[4]
>
> Q. Okay. **Did you make any independent effort to look for transactions or events that would have required an adjustment to the reserve calculation other than what was identified by the Trustee for you?**
>
> A. **Nothing else was brought to my attention that would have required that.**
>
> Q. I understand. **Did you make any independent effort to look for additional transactions or events?**
>
> A. **I did not.**

(McIsaac Dep. Tr. at 293:2-21 (emphasis added).)

11. That Mr. McIsaac's investigation was not conducted with rigorous empirical analysis is further demonstrated by Mr. McIsaac's reversal of his own opinion regarding "Customer Cash Claimed by LBIE." Mr. McIsaac originally opined that a purported error regarding funds allegedly held by LBI for LBIE customers caused an alleged shortfall of $2.3

---

[4] This single instance of purported "downward adjustments" in Mr. McIsaac's analysis was the result of the happenstance that the single alleged "ADP Broadridge" coding problem required certain upwards and downwards adjustments – but the net effect was, according to Mr. McIsaac, an upwards adjustment in the Reserve Calculation. (McIsaac Affidavit at ¶ 38; McIsaac Rebuttal at ¶ 18)

5

billion in LBI's Reserve Account as of September 19, 2008. (*See* McIsaac Affidavit at ¶¶ 41-44). In his rebuttal report, Mr. McIsaac made no mention of this massive supposed error. When asked in his deposition about the omission, Mr. McIsaac responded: "I believe the Trustee's advisor – the Trustee has removed that and put that as under investigation until such time as it can be concluded whether or not it is a viable liability to the customers." (McIsaac Dep. Tr. at 332: 16-20.)

12.  When asked whether he continued to have an opinion on whether an adjustment was required, he again deferred to the Trustee's decision. (*Id.* at 332:21-333:9 ("Q. Okay. Do you continue to have an opinion on whether or not the adjustment is necessary? A. If it's determined [by the Trustee] that there is a liability to the omnibus customer account, yes[.]").

13.  Mr. McIsaac similarly deferred to the Trustee's analysis of facts in explaining why he originally opined that there should be an adjustment:

> Q.  Why did you put the 2.3 billion in your first category of items discussed in your original affidavit as opposed to the category of items under investigation?
>
> A.  Because at this point in time **we had shown -- been shown no documents that would prove that this credit should be -- should come out. Subsequent to that, I believe the Trustee has had some discussions with people and have decided to remove it until such time as I've seen those documents.** I'm just not putting it in my affidavit until I can see something that proves it or that the claim is -- the claim as I believe is still out there from LBIE and until such time as it can be proven incorrect.
>
> Q.  So in October when you did your initial affidavit, you assumed as true what the Trustee gave you?
>
> A.  I saw the -- the credit coming out of the formula, an adjustment to the formula for the $2.3 billion. There was no support for that credit coming out of the formula. **Subsequent to that, I believe the Trustee and his advisors may have additional information that they are investigating and they decided to take it out of their motion**.

…

> Q. Have you conducted any further analysis on this issue since the time of your October 5 affidavit?
>
> A. No.

(McIsaac Dep. Tr. at 334:9-336:21 (emphasis added).)

14.   Mr. McIsaac's testimony thus is inadmissible because it is not the subject of rigorous examination, but instead is "based on a cursory examination of selected facts." *Visa USA, Inc.*, 163 F. Supp. 2d at 402. It also is impermissible because opinions "based merely on [the expert's] examination of documents and correspondence, which were equally before the judge and jury" should be excluded because "[t]he admission of such testimony would give the appearance that the Court was shifting to the [experts] the responsibility to decide the case". *Marx & Co., Inc. v. Diners Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977); *see also Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*, 2003 U.S. Dist. LEXIS 7986, at *7 (S.D.N.Y. May 14, 2003) (excluding expert testimony because "[n]o data, testing methodology or empirical evidence [was] offered to support [the expert's] conclusions.").

15.   This principle holds with even more force with respect to the errors "under investigation" (not by Mr. McIsaac, notably, but by the Trustee), upon which Mr. McIsaac purports to further base his conclusion that LBI's Reserve Account was underfunded as of September 19, 2008. (*See* McIsaac Affidavit at ¶¶ 50-62; McIsaac Rebuttal at ¶ 33 ("Moreover, I understand that, since my October 5 Affidavit, the Trustee's financial professionals have made significant progress with respect to the reconciliation of LBI's books and records as of September 19, 2008 … [and] have not become aware of any information that would change the conclusions in my October 5 and February 18 Affidavits, nor have they identified any significant additional items that would decrease LBI's reserve requirement."); McIsaac Dep. Tr. at 338:13-25).

16.     Finally, Mr. McIsaac should not be permitted to testify regarding what the Reserve Calculation under 15c3-3 required on September 19, 2008 (or any other date), because he acknowledges that he did not attempt to do a complete recalculation for that date. McIsaac Affidavit at ¶ 31 ("…reconstructing and evaluating the accuracy of the various iterations of the Reserve Formula calculations carried out by LBI personnel would be difficult, and in any event would not be a useful exercise."). As discussed above, Mr. McIsaac analyzed only those adjustments identified for him by the Trustee and its advisors. Accordingly, any testimony regarding the proper SEC Rule 15c3-3 Reserve Calculation as of September 19 is inadmissible expert testimony because it is not grounded in empirical analysis.

## II.    Mr. McIsaac Improperly Opines On Interpretations Of Law.

17.     Next, Mr. McIsaac should be precluded from opining on what is or is not required of an operating broker-dealer under SEC Rules 15c3-1 and 15c3-3. Such testimony improperly "invade[s] the court's province by testifying on issues of law." *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001); *see also United States v. Duncan,* 42 F.3d 97, 101 (2d Cir. 1994) ("the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury or the role of the jury in applying that law to the facts before it.") (internal quotation marks omitted). Mr. McIsaac's proposed testimony further "supplant[s] the role of counsel in making argument at trial, and the role of the [trier of fact] interpreting the evidence." *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y. 2001). Mr. McIsaac's testimony interpreting the requirements of SEC Rule 15c3-3 as applied to an operating broker-dealer thus is improper expert testimony in this matter.

8

### III.     Mr. McIsaac Opines On Matters Outside the Scope Of His Expertise

18.     Mr. McIsaac also should be precluded from opining on what is or is not required of a broker-dealer that has filed for SIPA liquidation. (*See, e.g.,* McIsaac Affidavit at ¶¶ 49, 60 and McIsaac Rebuttal at ¶ 7 (opining on an alleged post-filing "shortfall" in SIPA customer property); McIsaac Rebuttal at ¶13 (conclusions regarding undifferentiated post-filing "customer property" and "applicable rules" without distinction between SEC Rule 15c3-3 and SIPA); McIsaac Affidavit at ¶ 45 and McIsaac Rebuttal at ¶¶ 24-25 (opining that a transfer of OCC margin as a result of post-liquidation events (i.e., the Closing of the Sale Transaction) requires an adjustment to prior Reserve Calculations)).

19.     Such testimony should be excluded both because it is testimony on issues of law (*see* Section II *above*), but also because Mr. McIsaac admits that he has **no experience** in the conduct of SIPA liquidations, and that he is not an expert on SIPA.   (McIsaac Dep. Tr. at 242:10-17, 273:23-274:2.)   As such, any opinion by Mr. McIsaac as to what property is required to be set aside as "customer property" under SIPA is beyond the scope of Mr. McIsaac's expertise and is inadmissible. *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,* 254 F.3d 706, 715 (8th Cir. 2001) (court must ensure "that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702… and related precedents."); *see also United States v. Roland-Zapata*, 916 F.2d 795, 805-806 (2d Cir. 1990) (a police officer who had retired eight years prior to trial was not qualified to testify about current recordkeeping methods of law enforcement officers.); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003) (an expert "who is relying 'solely…on experience…must explain how that experience leads to the conclusion reached, why

9

that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" (*quoting* Fed. R. Evid. 702 advisory committee's note (2000 Amend.))).

20.     Mr. McIsaac's proposed testimony regarding LBI's ability to conduct proper Reserve Calculations on or around September 19, 2008 also should be excluded because it is outside his area of expertise. Mr. McIsaac explains that LBI uses "highly specialized and complex information systems to track the location and status of customer securities for purposes of the Rule 15c3-3 segregation requirement, as well as the constant fluctuation" of "customer credits and debits," yet acknowledges lack of familiarity in the very systems used by LBI. *See* McIsaac Dep. Tr. at 244:25-245:3 ("When you say an expert in the systems, I am not a systems analyst. I am not a systems programmer."); *id.* at 245:12-21 (expressing familiarity with only two of the four systems used by LBI in calculating its Reserve Calculation). Mr. McIsaac further acknowledges that he did not speak to any former Lehman employees now working for the Trustee under a Transition Services Agreement regarding any aspect of his report (*id.* at 278:6-23.), much less with employees who would have had knowledge regarding the relevant systems or LBI's efforts to conduct a proper calculation on or around September 19.

**IV.    Mr. McIsaac's Proposed Testimony Is Based On A Fundamental Misapprehension of Law.**

21.     Finally, the entirety of the McIsaac Report and Mr. McIsaac's proposed testimony should be excluded from evidence because they are based on an incorrect legal assumption that LBI's Reserve Calculation of September 19, 2008 is relevant to whether or not the proper amount was set aside or held for the benefit of customers. Under SEC Rule 15c3-3, LBI, as a large broker-dealer, was required to conduct a Reserve Calculation only once a week, as of the close of business on its last business day, typically each Friday. *See* 17 CFR 240.15c3-3(e)(3)

Moreover, if a weekly Reserve Calculation reflected a shortfall in LBI's Reserve Account, LBI was not required to deposit funds to make up for that shortfall until one hour after the open of business on the second business day thereafter, usually 10:00 a.m. on the following Tuesday. *Id.*

22.     Under SIPA, "customer property"[5] includes "any other property of the debtor which, upon compliance with applicable laws, rules, and regulations, would have been set aside or held for the benefit of customers." 15 U.S.C. § 78*lll*(4)(D). LBI filed for SIPA protection prior to the close of business on Friday September 19, 2008. Accordingly, the property that "upon compliance with applicable laws, rules, and regulations, would have been set aside or held for the benefit of customers" in LBI's Reserve Account as of that date would not have been determined by a Reserve Calculation as of the close of business on September 19 (which would not have resulted in a requirement to make a deposit in the Reserve Account until September 23), but rather by LBI's Reserve Calculation as of September 12 or 17,[6] neither of which was addressed by Mr. McIsaac. Accordingly, Mr. McIsaac's proposed testimony and the McIsaac Report are irrelevant to the issues before this Court and should be excluded.

---

[5] There can be significant differences between the property a broker-dealer holds for its customers in compliance applicable laws, rules and regulations and the property necessary to satisfy the net equity claims of its customers in a SIPA liquidation. Principal reasons for this well-known gap include differences in the definition of "customer" under SIPA and SEC Rule 15c3-3, s*ee, e.g.,* SEC Release 34-55431 (Mar. 9, 2007), 72 Fed. Reg. 12862, 12863 (Mar. 19, 2007) (discussing the fact that broker-dealers are not customers under SEC Rule 15c3-3 but are customers under SIPA), the various time periods set out in SEC Rule 15c3-3(d) before a broker-dealer must take action to bring customer fully-paid or excess margin securities into possession or control, as well as the weekly reserve account calculation required by SEC Rule 15c3-3(e) and the two-day grace period SEC Rule 15c3-3(e) provides before a Reserve Account deposit requirement must be satisfied.

[6] September 12, 2008 was the date of LBI's last required weekly Reserve Calculation prior to the commencement of the liquidation, while the last withdrawals from LBI's Reserve Account prior to filing for liquidation were based on its calculation as of close-of-business on September 17, 2008. The analysis of those calculations, therefore, may be relevant to the determination of which accounts, under compliance with SEC Rule 15c3-3, would still have been maintained in the account on the liquidation filing date.

## CONCLUSION

For the foregoing reasons, Barclays respectfully requests that the Court enter an Order excluding the proffered expert testimony of Mr. McIsaac.

Dated:   New York, New York
         April 19, 2010

          Respectfully submitted,

          BOIES, SCHILLER & FLEXNER LLP


          By:  /s/ Jonathan D. Schiller

          Jonathan D. Schiller
          Hamish P.M. Hume
          Jack G. Stern
          575 Lexington Avenue
          New York, NY 10022
          Telephone:  (212) 446-2300
          Facsimile:  (212) 446-2350

          Attorneys for Barclays Capital Inc.