WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                  :
**In re**                                                          :         **Chapter 11**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**     :         **Case No. 08-13555 (JMP)**
                                                                  :
                                  **Debtors.**              :         **(Jointly Administered)**
                                                                  :
-------------------------------------------------------------------x

### NOTICE OF LEHMAN BROTHERS HOLDINGS INC.'S MOTION PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FOR AUTHORITY TO AMEND CONTINGENT PROMOTE AGREEMENT RELATED TO CULVER STUDIOS

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI"), and their affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (together, the "Debtors") for an order

pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code")

authorizing LBHI to amend the Contingent Promote Agreement (as defined in the Motion)

between LBHI and PCCP, LLC ("PCCP") related to the Culver Studios property, will be held

before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States

Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green,

New York, New York 10004 (the "Bankruptcy Court"), on **May 12, 2010 at 10:00 a.m.**

**(prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Alfredo R. Perez, Esq., counsel to the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq., (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., counsel to the official committee of unsecured creditors appointed in these cases, and (v) all parties who have requested notice in these chapter 11 cases, so as to be so filed and received by no later than May 5, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: April 20, 2010
      New York, New York

                        /s/ Alfredo R. Pérez
                        Alfredo R. Perez
                        WEIL, GOTSHAL & MANGES LLP
                        700 Louisiana Street, Suite 1600
                        Houston, Texas  77002
                        Telephone: (713) 546-5000
                        Facsimile: (713) 224-9511

                        Attorneys for Debtors
                        and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                                    :
**In re**                                           :          **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :          **08-13555 (JMP)**
                                                    :
                                **Debtors.**        :          **(Jointly Administered)**
                                                    :
----------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC. PURSUANT TO SECTION 363**
**OF THE BANKRUPTCY CODE FOR AUTHORITY TO AMEND**
**CONTINGENT PROMOTE AGREEMENT RELATED TO CULVER STUDIOS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc., as debtor and debtor in possession ("LBHI," and

together with its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), respectfully represents:

**Relief Requested**

1.      By this Motion, pursuant to section 363 of title 11 of the United States

Code (the "Bankruptcy Code"), LBHI seeks authority to amend the Contingent Promote

Agreement (defined below) between LBHI and PCCP, LLC ("PCCP")[1] related to the Culver Studios property ("Culver Studios").

## Jurisdiction

2.       This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## The Debtors' Chapter 11 Cases

3.       Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.       On September 17, 2008, the United States Trustee for the Southern of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5.       On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

6.       On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

---

[1] For disclosure, there are currently a number of former Lehman employees employed by PCCP.  The Debtors, however, are unaware of any such employees being actively involved in the negotiations discussed herein.

The Examiner issued a report at his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

7.      On March 15, 2010, the Debtors filed with this Court their proposed Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, and on April 14, 2010, the Debtors filed a revised version of their chapter 11 plan and their proposed related Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code.

## Lehman's Business

8.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

9.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Background

**A.    Culver Studios**

10.      Culver Studios is a full service movie studio situated on a 14.1 acre site in Culver City, California. Culver Studios is 89% owned by LBHI's wholly-owned, indirect subsidiary, Property Asset Management Inc. ("PAMI"), 1% by PCCP, and 10% by a third-party investor, Picbengro LLC ("Picbengro"). PAMI and PCCP own their interests as co-managing members of a joint venture, PCCP LB Studio City Los Angeles, LLC (the "Joint Venture").

11.     Pursuant to that certain Amended and Restated Asset Management and Loan Servicing Agreement dated as of May 21, 2004 (the "AMA") PCCP manages the Culver Studios property and the Mezzanine Loan (defined below).  The AMA contains an indemnification (the "AMA Indemnification") pursuant to which, generally, LBHI, PAMI, and their non-Debtor affiliate Lehman ALI Inc. agreed to defend, hold harmless, and fully indemnify PCCP and its affiliates from any claim, action, or proceeding, or judgment, loss or settlement in connection with, among other things, the AMA.  The provisions of the AMA Indemnification in paragraph 12 are set forth in footnote 1 below.[2]

12.     Culver Studios is currently encumbered with a senior secured loan from iStar Tara LLC ("iStar") in the amount of $61,522,567.83 (the "Senior Loan"), which matured on October 9, 2009.  Additionally, there is a $10,000,000 mezzanine loan (the "Mezzanine Loan") bearing a 15% interest rate from LBHI, in which PCCP has a promoted interest.

13.     Prior to the maturity of the Senior Loan, LBHI began negotiations with iStar to avoid iStar foreclosing on Culver Studios.  These negotiations culminated  in an agreement between iStar, LBHI, PCCP, and Picbengro pursuant to which the Senior Loan was extended for three years in exchange for an $11,283,633 principal paydown.  The $11.2 million paydown was funded by a new money advance through the Mezzanine Loan.  This transaction was consummated pursuant to the *Order Pursuant to Sections 105(a) and 363(b) of the*

---

[2] Except to the extent provided in the next sentence, each of LBHI, ALI, and PAMI agrees to defend promptly and diligently, at the sole expense of LBHI, ALI or PAMI, as the case may be, any claim, action or proceeding brought against PCCP or any of its Affiliates or PCCP, any such Affiliate and LBHI, ALI or PAMI, as the case may be, or any of their respective Affiliates, jointly or severally, arising out of or connected with PCCP's carrying out of the provisions of this Agreement or acting under the express or implied directions of LBHI, ALI or PAMI, as the case may be, with respect to a Mortgage Loan made by LBHI, ALI or PAMI, respectively, or in accordance wit the documentation governing such Mortgage Loan, and to hold harmless and fully indemnify PCCP and its Affiliates from any judgment, loss or settlement on account thereof.  Each of LBHI's, ALI's and PAMI's indemnity obligations under this Section 12 shall apply only with respect to Mortgage Loans made by it.  The foregoing sentence shall not apply to, and nothing contained in this indemnity shall relieve PCCP from responsibility to LBHI, ALI or PAMI, as the case may be, pursuant to Section 11 for PCCP's bad faith, gross negligence, willful misconduct or violation of law or breach of this Agreement.  This Section shall survive termination of this Agreement.

*Bankruptcy Code and Bankruptcy Rule 9019(a) Establishing Procedures to (I) Restructure, (II) Make New or Additional Debt or Equity Investments in, and/or (III) Enter into Settlements and Compromises in Connection with Existing Real Estate Investments*, entered November 23, 2009 (the "Restructuring Procedures Order").

**B.      The Contingent Promote Agreement**

14.      LBHI and PCCP are also parties to that certain Contingent Promote Agreement (the "Original CPA") whereby PCCP receives 24% of net distributions to LBHI after repayment of LBHI's principal on the Mezzanine Loan plus accrued interest at a rate of LIBOR plus 3.5% (rather than the contractual interest rate of 15%). Based on the LIBOR plus 3.5% rate, the accrued interest on the Mezzanine Loan is, as of March 31, 2010, approximately $4.9 million. To accomplish this repayment scheme, the Original CPA creates a "waterfall" payment structure whereby all amounts received by LBHI under the Mezzanine Loan are applied as follows:

a.      first, to LBHI's out-of-pocket costs and expenses incurred in connection with the administration of the Mezzanine Loan;

b.      second, to interest on the balance of the Mezzanine Loan at a rate of LIBOR plus 3.5%, until all interest at this reduced rate has been paid;

c.      third, toward the balance of the Mezzanine Loan until the balance has been paid in full;

d.      fourth, the remaining amounts received are divided 76% to LBHI and 24% to PCCP (PCCP's percentage, the "Contingent Promote").

As of March 31, 2010, PCCP's interest in the Original CPA is valued at approximately $2.8 million. PCCP has filed a proof of claim with respect to the contingent amounts under the Original CPA.[3]

15. In connection with the restructuring of Culver Studio's capital structure, LBHI seeks to amend the terms of the Original CPA. Generally, the amendment (the "Amendment") to the Original CPA (as amended, the "Amended CPA") will provide for a cap of $2.0 million on the funds being paid to PCCP as the Contingent Promote and will enable LBHI to receive repayment of all new money (the "Tranche A") funded under the Mezzanine Loan at a fixed contractual 15% interest rate (as opposed to the lower LIBOR plus 3.5% rate set forth in the Original CPA) prior to any Contingent Promote being paid to PCCP, plus $14,896,244.29 (sum of the original $10,000,000 Mezzanine Loan principal amount plus interest of LIBOR plus 3.5% through March 31, 2010). In exchange, LBHI will indemnify PCCP pursuant to the terms of the AMA Indemnification, but *only* to the extent of any amounts received by LBHI under the Mezzanine Loan. Specifically, the Amended CPA will provide for a revised waterfall under which all amounts received by LBHI under the Mezzanine Loan will be applied as follows:

a. first, to LBHI's out-of-pocket costs and expenses incurred in connection with the administration of the Mezzanine Loan;

b. second, to indemnification obligations to PCCP if the AMA Indemnification were triggered;

c. third, to interest on the Tranche A (at the LIBOR plus 3.5% rate) balance of the Mezzanine Loan at a rate of 15%, until all interest on Tranche A has been paid;

d. fourth, to the balance of the Tranche A portion of the Mezzanine Loan;

---

[3] As set forth in the Amendment, within five days of entry of the order approving this Motion, PCCP will file a withdrawal of claim notice as to their proof of claim with respect to the contingent amounts under the Original CPA (proof of claim number 24344), and PCCP will not attempt to refile any proof of claim with respect to the Original CPA or amounts reflected in proof of claim number 24344.

        e.        fifth, to the balance and accrued interest on the Mezzanine Loan, capped at the amount of the Mezzanine Loan as of March 31, 2010;

        f.        sixth, the remaining amounts received are divided 24% to PCCP and 76% to LBHI, until such time as PCCP has received, under this section of the waterfall, $2,000,000; and

        g.        seventh, all remaining amounts received paid to LBHI.

A copy of the Amendment is attached hereto as <u>Exhibit A</u>.

### The Court Should Approve the Entry into<br>The Amendment and the Provision of Funds Pursuant Thereto

16.      The Debtors believe that the Restructuring Procedures Order authorizes the Amendment of the Original CPA to provide for a revised payment allocation scheme without further Court approval. Nonetheless, the agreement to indemnify PCCP pursuant to the terms of the AMA Indemnification, albeit capped at the amount of funds received by LBHI under the Mezzanine Loan, is not expressly authorized by the Restructuring Procedures Order. The Amendment, however, with the inclusion of the indemnification, is in the best interests of the Debtors and their creditors, and should be approved.

17.      Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *Id.* § 363(b)(1). When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In Re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional*

*Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986).

18. It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

19. Entry into the Amendment is in the best interests of LBHI. The Debtors believe the entire balance of the Mezzanine Loan will be repaid. If so, the Amendment benefits LBHI and its estate because the Amendment caps the amount paid to PCCP at $2.0 million with all remaining amounts being paid to LBHI.

20. The current value of PCCP's interest in the Original CPA is $2.8 million, and the Debtors' estimate that this amount could grow to approximately $7.0 million with the three-year extension to the Mezzanine Loan. As such, based on anticipated recoveries to creditors with prepetition claims, there will likely be a small monetary difference between PCCP's uncapped prepetition claim and PCCP's capped postpetition claim.

21. Although the Debtors believe the Mezzanine Loan will be paid in full, even in the event it is not, the Amendment is beneficial to LBHI, its estates, and its creditors.

Under the Original CPA, the Tranche A amount of the Mezzanine Loan would only be paid to the extent of the balance of Tranche A plus accrued interest at a rate of LIBOR plus 3.5%, rather than the contractual rate of 15%. The Amendment enables LBHI to receive full payment of the Tranche A amount at the higher interest rate. Although LIBOR is not a fixed number, the Debtors predict that this could result in approximately $4,000,000 additional estate funds.

22.     In addition, as manager and servicer of Culver Studios, PCCP provides an important service that enhances the value of the property. Furthermore, PCCP is one of the main companies used by the Debtors to manage and service properties in their vast real estate portfolio; not only does the Amendment allow LBHI to preserve their investment in Culver Studios, but also protects many of the Debtors other real estate investments by preserving the Debtors' relationship with PCCP, at a minimal cost to the Debtors.

23.     Finally, the inclusion of the indemnification in the Amended CPA should not have any significant financial effect on the estates. The Debtors anticipate that any lawsuit or claim against PCCP that would trigger the indemnification would be filed against both PCCP and an affiliate of LBHI's; indeed, an affiliate of LBHI's is a party to all current material lawsuits against PCCP that would be subject to the indemnification. As such, LBHI and PCCP's interests in defending such lawsuits or claims are aligned, and the addition of the indemnification does not add any substantial cost to LBHI or its estate. There is a chance that, in such a lawsuit, all claims could be dropped against all defendants other than PCCP, in which case the indemnification would require LBHI to defend a suit to which it was not a party. Even in this scenario, the Debtors believe that the potential cost of the indemnification coupled with the risk of such indemnification being triggered is far outweighed by the benefit that PCCP's expertise

and experience in managing these assets provides and the cost that would result from having to switch asset managers.

24.     For these reasons, entry into the Amendment enables LBHI to preserve their valuable investment in Culver Studios at a small cost to their estates, and is thereby in the best interests of LBHI and its creditors.

**Notice**

25.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance wth the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the Office of the United States Trustee for the Southern District of New York; (ii) the attorneys for the Statutory Committee of Unsecured Creditors appointed in these cases; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  No other or further notice need be provided.

26.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated: April 20, 2009
Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (713) 546-5040
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

# Exhibit A

## (Amendment to CPA)

# FIRST AMENDMENT TO
## CONTINGENT PROMOTE AGREEMENT

**THIS FIRST AMENDMENT TO CONTINGENT PROMOTE AGREEMENT,** dated as of April 16, 2010 (this "**Amendment**"), between **LEHMAN BROTHERS HOLDINGS INC.**, a Delaware corporation ("**Lender**"), and **PCCP, LLC**, a Delaware limited liability company (formerly known as CGKL Ventures, LLC, "**PCCP**").

## W I T N E S S E T H:

**WHEREAS**, PCCP Studio City Los Angeles TCS Mezzanine, LLC ("**Mezzanine Borrower**") and Lender are each a party to that certain Mezzanine Loan Agreement, dated as of April 6, 2004 (the "**Original Loan Agreement**"), pursuant to which Lender made a loan to Mezzanine Borrower in the original principal amount of Ten Million and 00/100 Dollars ($10,000,000.00), as amended by that certain First Omnibus Amendment Agreement dated as of October 20, 2004 (the "**First Omnibus Amendment**") and that certain Second Omnibus Amendment Agreement dated as of November 28, 2005 (the "**Second Omnibus Amendment**"), and that certain Third Omnibus Amendment Agreement dated as of the date hereof (the "**Third Omnibus Amendment**", collectively with the Original Loan Agreement, the First Omnibus Amendment and the Second Omnibus Amendment, the "**Culver Studios Mezzanine Loan**");

**WHEREAS**, Lender and PCCP are parties to that certain Contingent Promote Agreement, dated as of June 1, 2005 (the "**Original Promote Agreement**") pursuant to which Lender and PCCP have agreed to share in certain proceeds arising out of certain Loans or Investments (as defined in the Original Promote Agreement), as modified by Exhibit A to the Original Promote Agreement, including the Culver Studios Mezzanine Loan;

**WHEREAS**, Lender and PCCP have agreed to amend the Original Promote Agreement only with respect to the Culver Studios Mezzanine Loan, as hereinafter set forth effective from and after the date hereof.

**NOW, THEREFORE**, in consideration of the sum of Ten ($10) Dollars and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, Lender and PCCP hereby covenant, agree, represent and warrant as follows:

1.      **Culver Studios Mezzanine Loan**.  The parties agree that this Amendment shall only amend the Original Promote Agreement with respect to the Culver Studios Mezzanine Loan.

2.      **Definitions Amended and/or Added**.  The following terms, to the extent that the same are set forth in the Original Promote Agreement, are amended in their entirety to read as follows and, to the extent that the same are not contained in the Original Promote Agreement, are deemed added to the Original Promote Agreement as follows:

"**AMA Indemnity**" shall mean any liability or obligation of Lender to PCCP or any Affiliate (all references to Affiliate in this definition shall be as defined in the Asset Management Agreement) thereof pursuant to Section 12 of the Asset Management Agreement only with respect to the Culver Studios Mezzanine Loan in its capacity as a Mortgage Loan (as defined in the Asset Management Agreement) thereunder, for the

payment of (i) actual out of pocket costs and expenses incurred by PCCP or an Affiliate thereof in connection with the defense by PCCP or an Affiliate thereof of any claim in which PCCP or an Affiliate thereof is entitled to an indemnification pursuant to Section 12 of the Asset Management Agreement (treating the Culver Studios Mezzanine Loan as a Mortgage Loan thereunder), (ii) a final, non-appealable judgment against PCCP or an Affiliate thereof in which PCCP or an Affiliate thereof is entitled to an indemnification pursuant to Section 12 of the Asset Management Agreement or (iii) a settlement by PCCP or an Affiliate thereof of any claim in which PCCP or an Affiliate thereof is entitled to an indemnification pursuant to Section 12 of the Asset Management Agreement, provided, however, that any such settlement shall be subject to Lender's prior written approval (which will not be unreasonably withheld) unless Lender shall be in default of its obligations under Section 12 of the Asset Management Agreement (treating the Culver Studios Mezzanine Loan as a Mortgage Loan thereunder) to pay the amounts described under clause (i) above.

"**Asset Management Agreement**" shall mean that certain Amended and Restated Asset Management and Loan Servicing Agreement dated as of May 21, 2004 among Lender, Lehman ALI Inc., PCCP and PCCP Asset Holding, LLC.

"**Tranche A Balance**" shall mean, at any time, the sum of the Tranche A Initial Balance plus the principal amount of any additional advances, less (a) the sum of all payments applied thereto pursuant to Section 4(d) hereof, plus (b) all accrued but unpaid Tranche A Interest (excluding any Tranche A Interest paid to Lender pursuant to Section 4(c) hereof).

"**Tranche A Initial Balance**" shall mean Twelve Million Seventy Two Thousand Nine Hundred and 55/100 dollars ($12,072,900.55).

"**Tranche A Interest**" shall mean, for any period, the amount of interest accrued on the Tranche A Balance for such period at the Tranche A Interest Rate.

"**Tranche A Interest Rate**" shall mean fifteen percent (15%) per annum, as calculated in the Culver Studios Mezzanine Loan documents.

"**Tranche B Balance**" shall mean Fourteen Million Eight Hundred Ninety Six Thousand Two Hundred Forty Four and 20/100 Dollars ($14,896,244.29).

3. **Section 4: Application of Payments**. Section 4 of the Original Promote Agreement is hereby deleted and replaced in its entirety with the following

**Application of Payments**. All amounts received by Lender (regardless of whether such amounts are characterized as indemnity payments, expense reimbursements, return of principal or interest; including without limitation, amounts in respect of Equity Rights, if any, but excluding any Finders Fee) shall be applied upon receipt as follows:

a. (i) To Lender for Lender's actual, third party, out of pocket costs and expenses (including without limitation any attorneys fees) incurred in connection with any default under, or exercise of remedies with respect to, the

Culver Studios Mezzanine Loan, or in connection with the ownership, holding or administration of the Culver Studios Mezzanine Loan or proceeds thereof, or paid or payable to any obligor with respect to the Culver Studios Mezzanine Loan as a result of any claim asserted by any Person against Lender, to the extent any of the foregoing are not otherwise included in the Funded Balance,; provided however, that Lender's costs of funds (including without limitation any funds raised through securitization) shall not be included under this Section 4(a); and (ii) to the extent not included in clause (i), to pay for, or reimburse Lender for, any attorneys fees, LIBOR breakage costs, administrative costs, taxes, regulatory costs or charges, reimbursement of expenses or costs, or other amounts, charges or costs incurred by Lender with respect to the Culver Studios Mezzanine Loan;

b. To PCCP to pay any AMA Indemnity;

c. To Lender for interest on the Tranche A Balance at the Tranche A Interest Rate, until all accrued Tranche A Interest has been paid;

d. To Lender for the Tranche A Balance until the Tranche A Balance has been reduced to zero;

e. To Lender for the Tranche B Balance until the Tranche B Balance has been reduced to zero;

f. The PCCP Percentage to PCCP and the Lender Percentage to Lender, until the total amount paid to PCCP pursuant to this Section 4(f) equals Two Million and 00/100 Dollars ($2,000,000.00); and

g. The remainder to Lender.

4. **Exhibit A**. Exhibit A of the Original Promote Agreement with respect to the Culver Studios Mezzanine Loan only is hereby deleted and replaced in its entirety with Exhibit A attached hereto.

5. **No Other Amendments**. Except as specifically modified and amended hereby, all other terms, conditions, and covenants contained in the Original Promote Agreement shall remain unmodified and in full force and effect.

6. **Proof of Claim**. PCCP shall, within five (5) days receipt of written notice from Lender of Bankruptcy Approval pursuant to Section 15 hereof, file with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), in Case No. 08-13555 (the "**Chapter 11 Case**") a Withdrawal of Claim notice, substantially in the form attached hereto as Exhibit B, withdrawing proof of claim number 24344, which was filed in the

Chapter 11 Case. PCCP will not attempt to refile any proof of claim with respect to the Original Promote Agreement relating to the Culver Studios Mezzanine Loan or amounts reflected in proof of claim number 24344.

7.    **Capitalized Terms**. All capitalized terms used herein but not defined herein shall have the meaning ascribed thereto in the Original Promote Agreement as modified by this Amendment.

8.    **Counterparts**. This Amendment may be executed in one or more counterparts with the same effect as if all parties hereto had signed the same document. All such counterparts shall be construed together and shall constitute one instrument, but in making proof hereof it shall only be necessary to produce one such counterpart.

9.    **Effective Date**. The terms and provisions of this Amendment shall only be deemed effective from and after the date hereof and accordingly, all the terms and provisions of the Original Promote Agreement (without regard to this Amendment), shall apply to any period prior to the date hereof.

10.    **Governing Law**. This Amendment shall be governed by New York law, without regard to conflicts of law principles.

11.    **Successors and Assigns**. This Amendment shall be binding upon and inure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns.

12.    **Representations**. Lender and PCCP each represent and warrant that it has obtained all applicable consents and approvals and has full power, authority and legal right to execute this Amendment and to keep and observe all of the terms of this Amendment on its part to be observed or performed.

13.    **Invalidity**. If any term, covenant or condition of this Amendment shall be held to be invalid, illegal or unenforceable in any respect, this Amendment shall be construed without such provision.

14.    **Conflicts**. If any term of this Amendment conflicts with any provision contained in the Original Promote Agreement, this Amendment shall be deemed to control.

15.    **Condition Subsequent**. Notwithstanding anything contained herein to the contrary, the effectiveness of this Amendment shall be conditioned upon the Bankruptcy Court entering a final, non-appealable order in the Chapter 11 Case, approving Lender's entry into this Amendment and the transactions contemplated hereby ("**Bankruptcy Approval**").

**[NO FURTHER TEXT ON THIS PAGE]**

**<u>Annex A</u>**

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------------------------x
                                      :
In re                                 :      Chapter 11 Case No.
                                      :
LEHMAN BROTHERS HOLDINGS INC., et al., :     08-13555 (JMP)
                                      :
                   Debtors.           :      (Jointly Administered)
                                      :
---------------------------------------------------------------------x
```

### ORDER PURSUANT TO SECTION 363 OF
### THE BANKRUPTCY CODE GRANTING AUTHORITY TO LBHI TO AMEND
### CONTINGENT PROMOTE AGREEMENT RELATED TO CULVER STUDIOS

Upon the motion, dated May 12, 2010 (the "Motion"), of Lehman Brothers

Holdings Inc., as debtor in possession ("LBHI," and together with its affiliated debtors in the

above-referenced chapter 11 cases, the "Debtors"), for an order pursuant to section 363 of title

11 of the United States Code (the "Bankruptcy Code") authorizing, LBHI, amend the Original

CPA,[1] all as more fully described in the Motion; and the Court having jurisdiction to consider the

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the

Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York

Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the amended order entered February 13, 2009 governing case

management and administrative procedures [Docket No. 2837]; and the Court having found and

determined that the relief sought in the Motion is in the best interests of LBHI, its estate and

---

[1] Capitalized terms used, but not defined herein, shall have the meaning ascribed to such term in the Motion.

creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that LBHI is authorized and empowered, but not directed, to

executed, deliver, implement, and perform any and all obligations, instruments, documents and

papers, and to take all corporate and other actions that may be necessary or appropriate to enter

into the Amendment and/or the Amended CPA, as applicable; and it is further

ORDERED that, within five days of receipt of written notice from LBHI of entry

of this Order, PCCP will file, with this Court, a Withdrawal of Claim notice, substantially in the

form attached to the Amendment as Exhibit B, withdrawing proof of claim number 24344; and it

is further

ORDERED that PCCP shall not refile any proof of claim with respect to the

Original CPA, the Mezzanine Loan, or amounts reflected in proof of claim number 24344; and it

is further

ORDERED that notice of the Motion as provided therein shall be deemed

good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: May __, 2010
      New York, New York

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE