**Hearing Date and Time:  May 12, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  May 7, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife, Esq.
David R. Fertig, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
                        Debtors.          :    (Jointly Administered)
                                          :
                                          :
------------------------------------------------------------------x
```

## NOTICE OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF A SETTLEMENT AGREEMENT BETWEEN LEHMAN BROTHERS SPECIAL FINANCING, INC., MILLENNIUM MANAGEMENT, L.L.C., MILLENNIUM PARTNERS, L.P., AND MILLENNIUM USA, L.P.

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman Brothers Special Financing, Inc. ("LBSF"), and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Brothers Holdings Inc. ("LBHI") (collectively, the "Debtors") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization of a Settlement Agreement (the "Settlement Agreement") between LBSF, Millennium Management, L.L.C. ("MMLLC"), Millennium Partners, L.P. ("MPLP"), and Millennium USA, L.P. ("MUSA"), all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling

Green, New York, New York 10004 (the "<u>Bankruptcy Court</u>"), on **May 12, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "<u>Hearing</u>").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori R. Fife, Esq. and David R. Fertig, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (v) Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004, Attn: Gregg L. Weiner, Esq., attorneys for MPLP and MUSA; and (vi) any person or entity with a particularized interest in the

Motion, so as to be so filed and received by no later than **May 7, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: April 21, 2010
       New York, New York

/s/ Lori R. Fife
Lori R. Fife, Esq.
David R. Fertig, Esq.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife, Esq.
David R. Fertig, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------------x
                                       :
In re                                  :     Chapter 11 Case No.
                                       :
LEHMAN BROTHERS HOLDINGS INC., et al., :     08-13555 (JMP)
                                       :
                Debtors.               :     (Jointly Administered)
                                       :
                                       :
---------------------------------------------------------------------x
```

### DEBTORS' MOTION FOR AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF A SETTLEMENT AGREEMENT BETWEEN LEHMAN BROTHERS SPECIAL FINANCING, INC., MILLENNIUM MANAGEMENT, L.L.C., MILLENNIUM PARTNERS, L.P., AND MILLENNIUM USA, L.P.

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing, Inc. ("LBSF") and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Brothers Holdings Inc. ("LBHI") as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and respectfully represent:

## Background

1.    Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.    On December 16, 2008, this Court issued an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (the "December Order").

## Jurisdiction

4.    This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Debtors' Business

5.    Prior to the events leading up to these chapter 11 cases, Lehman, as a whole, comprised the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

6.    Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

### Relief Requested

7.     By this Motion, the Debtors seek an order, pursuant to Bankruptcy Rule

9019, approving their entry into a settlement agreement (the "Settlement Agreement"), a copy of

which is attached hereto as "Exhibit A," among LBSF, Millennium Management, L.L.C.

("MMLLC"), Millennium Partners, L.P. ("MPLP"), and Millennium USA, L.P. ("MUSA")

(collectively, the "Parties"), in connection with those certain Swap Transactions, that certain

Partnership Agreement, and that certain Adversary Proceeding, all as defined below.    The

Debtors and their professionals have determined, in the exercise of their sound business

judgment, that the Settlement Agreement is in the best interests of the Debtors' estates and their

creditors.

### The Partnership Agreement

8.     MPLP is an exempted limited partnership registered under the laws of the

Cayman Islands.    MUSA is a limited partnership organized and existing under the laws of the

State of Delaware, and is a limited partner of MPLP.    MMLLC is the general partner of both

MPLP and MUSA.

9.     Under the terms of the Sixth Amended and Restated Limited Partnership

Agreement of Millennium U.S.A., L.P. (the "Partnership Agreement"), each Limited Partner (as

defined in the Partnership Agreement) contributes capital to MUSA through cash and/or

investments (a "Capital Contribution").    MUSA then establishes and maintains a capital account

(the "Capital Account") for, and in the amount of, each Limited Partner's Capital Contribution,

which Capital Contribution represents each such Limited Partner's limited partnership interest in MUSA.

10.    Pursuant to the Partnership Agreement, LBSF made a Capital Contribution and became a Limited Partner in MUSA on April 28, 2008.[1]  According to the terms of the Partnership Agreement, a Limited Partner may withdraw its Capital Account in full, and thereby withdraw as a Limited Partner in MUSA, upon 90 days written notice prior to the quarterly dates, December 31, March 31, June 30, and September 30.

11.    On December 30, 2008, LBSF submitted a written request to MUSA and MMLLC, pursuant to the terms of the Partnership Agreement, to withdraw the entirety of its Capital Account, and to withdraw as a Limited Partner in MUSA, as of the next available quarterly date, March 31, 2009.  MMLLC and MUSA recognized LBSF's withdrawal as a Limited Partner in MUSA.  They did not, however, fulfill LBSF's request, pursuant to the terms of the Partnership Agreement, for a return of LBSF's Capital Account.  Instead, MMLLC and MUSA advised LBSF that, although the balance in LBSF's Capital Account was over $95,000,000.00, MUSA would withhold this amount as an exercise of a setoff with respect to, among other things, sums allegedly owed by LBSF to MPLP (a partnership in which MUSA is one of four limited partners), in relation to the Swap Transactions more fully described below.

**The Swap Transactions**

12.    The swap transactions in respect of which MUSA and MMLLC purported to withhold and setoff the amounts credited to LBSF's Capital Account consisted of certain financial derivative transactions between LBSF on the one hand, and MPLP on the other hand, and included one or more transactions (each a "<u>Transaction</u>" and collectively, the "<u>Swap</u>

---

[1] LBSF made an additional capital contribution on June 23, 2008.

4

Transactions") between MPLP and LBSF, which were governed by a 1992 ISDA Master Agreement (Multicurrency-Cross Border), dated as of January 30, 1995 (the "ISDA Agreement"). The ISDA Agreement included, *inter alia*, certain schedules, documents, confirmations, and a guaranty of LBSF's obligations by LBHI (collectively, the "Swap Agreement Documents").

13. On September 16, 2008, MPLP delivered to LBSF a notice of default, which alleged the existence of certain events of default under the ISDA Agreement and designated September 16, 2008 as the Early Termination Date (as defined in the ISDA Agreement) in respect of the Swap Transactions. Thereafter, on November 4, 2008, MPLP delivered to LBSF a statement asserting that, under the Swap Agreement Documents, LBSF owed MPLP the sum of $15,887,640.00, together with interest, legal fees, and expenses in an amount not less than $238,000.00 (collectively, the "Early Termination Payment"), as a result of the early termination of the Swap Transactions.

14. Subsequently, on September 14, 2009, MPLP filed with the Bankruptcy Court Proof of Claim No. 24479 and Proof of Claim No. 24489 in the LBSF and LBHI Chapter 11 cases (collectively, the "Proofs of Claim"), pursuant to which MPLP sought recovery of the Early Termination Payment.

**The Adversary Proceeding**

15. On January 15, 2010, LBSF commenced Adversary Proceeding No. 10-02351 (JMP) (the "Adversary Proceeding") by filing with this Court a complaint against MUSA and MMLC, pursuant to which LBSF requested: (a) a declaration establishing the unlawfulness of Defendants' purported setoff of MUSA's debt to LBSF under the Partnership Agreement against the alleged debt of LBSF to MPLP under the Swap Agreement Documents pursuant to section 553(a) of the Bankruptcy Code and Delaware law; (b) a judgment finding Defendants in

breach of the Partnership Agreement and awarding LBSF the full amount and damages to which it is entitled thereunder; (c) a judgment finding that MMLLC violated its fiduciary duties to LBSF and awarding LBSF damages; (d) an order under section 542(b) of the Bankruptcy Code requiring MUSA to immediately turn over the amount owed to LBSF for redemption of LBSF's Capital Account, which is property of the LBSF estate under section 541(a)(1) of the Bankruptcy Code; and (e) an award of damages to LBSF, against Defendants, on account of each Defendants' knowing, willful, and contemptuous violation of the automatic stay.

16.    Subsequent to commencement of the Adversary Proceeding, MUSA and MPLP engaged LBSF in settlement discussions, which culminated in the Parties' agreement to enter into the Settlement Agreement.

### The Settlement Agreement

17.    The Settlement Agreement, which is subject to approval by this Court, includes, *inter alia*, the following material terms:

- payment by MUSA to LBSF in the amount of $99,000,000.00 (the "Settlement Amount") in respect of all claims asserted by LBSF in the Adversary Proceeding, including but not limited to LBSF's claim for the return of its Capital Account and partnership interest in MUSA;

- an agreement by LBSF and LBHI to allow in favor of MPLP unsecured claims against the estates of LBSF and LBHI (the "Allowed Claims") in the aggregate amount of $8,000,000.00 (the "Adjusted Proof of Claim Amount"), in full and complete satisfaction of all claims asserted in MPLP's Proofs of Claim and any other claims that MPLP might claim to have against LBSF, LBHI, or any other Debtor arising out of or relating to the Swap Transactions (provided, of course, that MPLP's total recovery on the Allowed Claims shall not exceed the Adjusted Proof Of Claim Amount);

- an agreement among the Parties to enter into a Termination and Release Agreement (the "Termination Agreement"), pursuant to the terms of the December Order, setting forth the terms of the Parties' agreement regarding the Allowed Claims;

- an exchange of mutual releases of all claims arising under or related to the Swap Transactions, the Partnership Agreement and the Adversary Proceeding; and

- payment of the Settlement Amount by MUSA to LBSF within five (5) business days of the Effective Date of the Settlement Agreement,[2] and dismissal of the Adversary Proceeding upon LBSF's receipt of such payment.

18.     The Creditors' Committee has been fully informed of and has consented to the terms of the Settlement Agreement.

## **The Controlling Legal Standard**

19.     Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve compromises "if they are in the best interest of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." *TMT Trailer Ferry*, 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

20.     The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The settlement need not result in the best possible outcome for the debtor, but must not fall beneath

---

[2] Pursuant to Section 8 of the Settlement Agreement, "[t]he Parties agree this Agreement is subject to the entry of an order ("Order") by the Court approving the terms of the Agreement under [Bankruptcy Rule 9019], which Order does not become final until ten (10) days after its entry (the "Effective Date")."

the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at

505; *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re*

*Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its

discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown &*

*Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). However, the analysis must focus on the

question of whether a particular compromise is "fair and equitable, and in the best interest of the

estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations

omitted).

21.     While a court must "evaluate . . . all . . . factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699

F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134

B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and

fact. . . .  The court need only canvass the settlement to determine whether it is within the

accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

22.     The court may give weight to the "informed judgments of the . . . debtor-

in-possession and their counsel that a compromise is fair and equitable, and consider the

competency and experience of counsel who support the compromise." *Drexel Burnham Lambert*

*Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*,

150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr.

S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for

the Trustee's, but only that I test his choice for reasonableness. . . .  If the Trustee chooses one of

two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

23.    Significantly, there is no requirement that "the value of the compromise . . . be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).

### The Settlement Agreement Meets The Legal Standard Established Under Rule 9019 And Is In The Bests Interests Of The Debtors' Estates

24.    The Settlement Agreement will undoubtedly benefit LBSF and its creditors because it achieves a near full recovery of the amount of LBSF's Capital Account with MUSA, while avoiding the inevitable and likely substantial costs, expenses, and drain on the Debtors' already limited resources that would otherwise be associated with litigation in the Adversary Proceeding.  Moreover, through execution of the Termination Agreement, which is an essential component of the Settlement Agreement and which serves as a substantial part of the consideration for the other highly beneficial aspects of the Settlement Agreement, the Debtors are able to fix the amount of MPLP's claims at approximately half of what MPLP demanded in its Proofs of Claim—in an amount that the Debtors submit is reasonable—without the need for burdensome, protracted, and expensive litigation over the Debtors' objections to MPLP's Proofs of Claim.[3]  The result is a "fair and equitable" resolution, upon the informed judgment of the Debtors and their professionals.  The Settlement Agreement is well within the "range of

---

[3]  Pursuant to the December Order, the Debtors are not required to seek this Court's approval of the terms of the Termination Agreement, but because the Termination Agreement is part of the consideration for the Settlement Agreement, the Debtors submit that entry into the Termination Agreement, as part of the consideration for the Settlement Agreement, is in the best interests of their estates.

reasonableness" and in the best interests of the LBSF estate and its creditors. Accordingly, the Debtors submit that the Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019.

## **Notice**

25.    No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009, governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

26.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: April 21, 2010
New York, New York

*/s/ Lori R. Fife*
Lori R. Fife, Esq.
David R. Fertig, Esq.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit A**

## SETTLEMENT AGREEMENT

        This Settlement Agreement (the "Agreement") is made and entered into as of the 20th day of April, 2010, by and between Millennium Partners, L.P. ("MPLP"), Millennium USA, LP ("MUSA"), Millennium Management LLC ("MM LLC") and Lehman Brothers Special Financing Inc. ("Lehman") (each of the foregoing a "Party" and collectively the "Parties").

RECITALS:

        WHEREAS, MPLP, Lehman, and Lehman Brothers Holdings Inc. ("Holdings") (collectively , the "Swap Counterparties") entered into one or more transactions (each a "Transaction") that were governed by a 1992 ISDA Master Agreement (Multicurrency –Cross Border), dated as of January 30, 1995, which included certain schedules, documents, confirmations and a guaranty of the obligations of Lehman by Holdings (collectively, the "Agreement Documents").

        WHEREAS, commencing on September 15, 2008 and thereafter, Holdings and certain of its affiliates, including Lehman (the "Debtors"), each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (collectively, the "Bankruptcy Cases").

        WHEREAS, the Swap Counterparties wish to terminate and/or acknowledge the termination of each Transaction under the Agreement Documents as of September 16, 2008.

        WHEREAS, on January 15, 2010, Lehman brought legal action against MUSA and MM LLC by filing a complaint (the "Complaint") commencing adversary proceeding number 10-02351 (the "Adversary Proceeding") in the United States Bankruptcy Court for the Southern District of New York (the "Court") seeking to recover approximately $99,234,937, plus interest and expenses (the "Demanded Amount") for Lehman's withdrawal and payment of its limited partnership interest in MUSA, alleging certain claims against MM LLC, and seeking a declaratory judgment that MUSA did not have a right to set off the Demanded Amount against sums allegedly owed by Lehman to MPLP with respect to the Transactions and Agreement Documents.

        WHEREAS, the Swap Counterparties have simultaneously entered into that certain termination agreement dated as of April 5, 2010 (the "Termination Agreement")that provides for an allowance of a general unsecured claim in favor of MPLP in the amount of the Settlement Amount (as defined in the Termination Agreement) in respect the claims arising under the Agreement Documents.

        WHEREAS, as of the date hereof, the Parties have agreed to a settlement amount in favor of Lehman in the amount of $99,000,000.00 (the "Complaint Amount") in respect of all claims asserted by Lehman in the Complaint.

        NOW, THEREFORE, in consideration of the recitals set forth above and promises made herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

Section 1.    Allowance of General Unsecured Claim.  In consideration of the termination of the Transactions under the Agreement Documents by MPLP, and payment of the Complaint Amount, Lehman and Holdings agree to enter into the Termination Agreement.

Section 2.    Dismissal of the Adversary Proceeding:  In consideration of the entering into the Termination Agreement and the payment of the Complaint Amount to Lehman by MUSA within five (5) business days of the Effective Date, as that term is defined below in Section 8 Lehman agrees that the Adversary Proceeding will be dismissed with prejudice (the "Dismissal") upon notice by Lehman to the Court of its receipt of the Complaint Amount, with each party to bear its own costs, expenses and attorney's fees incurred in connection with the Adversary Proceeding.

Section 3.    Release.  In consideration of each Party's execution of this Agreement, the Claim Allowance (as defined in the Termination Agreement), and payment of the Complaint Amount to Lehman without deduction, set-off or counterclaim, and the Dismissal, each Party on behalf of itself and any other party, person or entity claiming under or through it, hereby generally releases, discharges and acquits each other Party, and its respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "Released Party"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, other than the Allowed Claims (as defined in the Termination Agreement) and the rights and obligations of the Parties set forth under this Agreement, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Agreement Documents or the Transactions thereunder, including but not limited to their negotiation, execution, performance, any breaches thereof, or their termination, and the allegations contained in the Complaint.

Section 4.    Representations.  Each Party represents and warrants to each other Party that (i) the execution, delivery, and performance by such Party of this Agreement are within the powers of such Party and have been duly authorized by all necessary action on the part of such Party and (ii) this Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Agreement, (iv) it has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, which it enters voluntarily and of its own choice and not under coercion or duress, (v) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation that any of the other Parties will disclose facts material to the Agreement Documents or this Agreement, and (vii) it knowingly waives any and all claims that this Agreement was induced by any misrepresentation or non-disclosure and

2

knowingly waives any and all rights to rescind or avoid this Agreement based upon presently existing facts, known or unknown. The Parties agree and stipulate that each Party is relying upon the representations and warranties in this Section 4 in entering into the Agreement. Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this Agreement. These representations and warranties shall survive the execution of this Agreement indefinitely without regard to statutes of limitations.

Section 5.    Setoff. MPLP and MUSA agree that they will not, nor will MPLP or MUSA permit any affiliate or third party to, set-off, recoup, appropriate, or otherwise apply any deposits (general, special, time or demand, provisional or final) in any currency, or any other credits, indebtedness or claims, in any currency, whether direct or indirect, absolute or contingent, matured or unmatured, that are held or owing by MPLP, MUSA or any third party or affiliate, against the Allowed Claims or the Complaint Amount and MPLP and MUSA hereby irrevocably and unconditionally waive any and all rights to do so, whether such rights arise by virtue of contract or law or otherwise.

Section 6.    Other Claims. For the avoidance of doubt, nothing in this Agreement shall have any effect as to the rights of MPLP or any of its subsidiaries or affiliates against Lehman, Holdings, or any of its subsidiaries or affiliates (including without limitation Lehman Brothers Inc., Lehman Brothers International (Europe) and Lehman Brothers Finance SA) with respect to any other claims (including without limitation claims arising out of prime brokerage and derivatives relationships and the guaranteeing thereof) which are not specifically related to the Agreement Documents or the Transactions thereunder.

Section 7.    Execution in Counterparts. This Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 8.    Effectiveness. The Parties agree that this Agreement is subject to the entry of an order ("Order") by the Court approving the terms of the Agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), which Order does not become final until ten (10) days after its entry (the "Effective Date"). The Parties agree that each will make a good faith effort to obtain the approval of this Agreement by this Court under Bankruptcy Rule 9019.

Section 9.    Governing Law/Jurisdiction. This Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including Section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction. The Court having jurisdiction over the Bankruptcy Cases shall have exclusive jurisdiction over any action or proceeding with respect to this Agreement, and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

Section 10.    <u>Special Provision for Unknown Claims.</u>  All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 3.  Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Section 11.    <u>Successors and Assigns.</u>  The provisions of this Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

Section 12.    <u>Amendment.</u>  This Agreement may be amended, modified, superseded or canceled, and any of the terms, covenants, representations, warranties or conditions hereof may be waived only by an instrument in writing signed by each of the Parties.

Section 13.    <u>Construction.</u>  This Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Agreement or any of its provisions against the Party responsible for drafting this Agreement will not apply in any construction or interpretation of this Agreement.

*[Signature pages follow]*

4

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Agreement on the date first written above.

MILLENNIUM PARTNERS, L.P.
By: Millennium Management LLC, its General Partner

By: _____
Name: Terry Feeney
Title:    Co-President and Chief Operating Officer

MILLENNIUM USA LP
By: Millennium Management LLC, its General Partner

By: _____
Name: Terry Feeney
Title:   Co-President and Chief Operating Officer

MILLENNIUM MANAGEMENT LLC

By: _____
Name: Terry Feeney
Title:   Co-President and Chief Operating Officer


LEHMAN BROTHERS SPECIAL FINANCING INC.


By: _____
Name: Daniel Ehrmann
Title: Vice President

5

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Agreement on the date first written above.

MILLENNIUM PARTNERS, L.P.
By: Millennium Management LLC, its General Partner

By: _____
Name:
Title:

MILLENNIUM USA LP
By: Millennium Management LLC, its General Partner

By: _____
Name:
Title:

MILLENNIUM MANAGEMENT LLC

By: _____
Name:
Title:

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____
Name: Daniel Ehrmann
Title: Vice President

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                    :
In re                                               :       **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :       **08-13555 (JMP)**
                                                    :
                          **Debtors.**              :       **(Jointly Administered)**
                                                    :
                                                    :
-------------------------------------------------------------------x

### ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT AGREEMENT BETWEEN LEHMAN BROTHERS SPECIAL FINANCING, INC., MILLENNIUM MANAGEMENT, L.L.C., MILLENNIUM PARTNERS, L.P., AND MILLENNIUM USA, L.P.

Upon the motion, dated April 21, 2010 (the "Motion"), of Lehman Brothers

Special Financing, Inc. ("LBSF") and its affiliated debtors in the above-referenced chapter 11

cases, including Lehman Brothers Holdings Inc. ("LBSF"), as debtors and debtors-in-possession

(collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to

Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for

authorization of a Settlement Agreement among LBSF, Millennium Management, L.L.C.

("MMLLC"), Millennium Partners, L.P. ("MPLP"), and Millennium USA, L.P. ("MUSA") (the

"Settlement Agreement"), all as more fully described in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward,

Acting C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in

accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion and the Objection; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Debtors' execution of the Settlement Agreement is approved; and it is further

ORDERED that LBSF is authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Settlement Agreement and perform any and all obligations contemplated therein; and it is further

ORDERED that the terms of this Order shall be immediately effective and enforceable upon its entry; it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: _____, 2010
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE