**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
Sean A. O'Keefe – NY Bar No. 1980853, CA Bar No. 122417
Paul J. Couchot – CA Bar No. 131934
Counsel for the SunCal Voluntary Debtors[1]

Hearing Date: May 12, 2010 at 10:00 a.m. (EST)
Objections Due: May 7, 2010 at 4:00 p.m. (EST)

**THE LOBEL FIRM, LLP**
840 Newport Center Drive, Suite 750
Newport Beach, CA 92660
Telephone:     (949) 999-2860
Facsimile:      (949) 999-2870
William N. Lobel – CA Bar No. 93202
Counsel for the SunCal Trustee Debtors[2]

**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400
Louis R. Miller – CA Bar No. 54141
Special Litigation Counsel for SunCal Debtors

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

| In re | Chapter 11 |
|---|---|
| **LEHMAN BROTHERS HOLDINGS INC, et al.,** | **Case No. 08-13555 (JMP)** |
| | **Jointly Administered** |
| **Debtors.** | |

### DECLARATION OF SEAN A. O'KEEFE IN SUPPORT OF MOTION OF THE SUNCAL DEBTORS FOR AN ORDER DETERMINING THAT THE AUTOMATIC STAY DOES NOT APPLY; OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM STAY

---

[1] SunCal Communities I LLC, SunCal Communities III LLC, SCC/Palmdale LLC, Acton Estates LLC, SunCal Beaumont LLC, SunCal Emerald Meadows LLC, SunCal Johansson Ranch LLC, SunCal Bickford Ranch LLC, SunCal Summit Valley LLC, Seven Brothers LLC, Kirby Estates LLC, SJD Partners Ltd., SJD Development Corp., SCC Communities LLC, North Orange Del Rio Land LLC and Tesoro SF LLC, the debtors and debtors-in-possession (collectively, the "SunCal Voluntary Debtors")
[2] SunCal Marblehead, LLC, SunCal Heartland, LLC, LB/L-SunCal Northlake LLC, LB/L-SunCal Oak Valley LLC, SunCal PSV LLC, Delta Coves Venture LLC and SunCal Oak Knoll, LLC (collectively "SunCal Trustee Debtors"). The SunCal Voluntary Debtors and the SunCal Trustee Debtors are collectively referred to as the "SunCal Debtors".

I, Sean A. O'Keefe, hereby declare and state as follows:

1.      I am an attorney admitted to practice before this Court and I am associated in this matter with the firm of Winthrop Couchot, Professional Corporation, attorneys for the SunCal Voluntary Debtors, in the jointly administered bankruptcy proceeding *In re Palmdale Hills Property, LLC*, No. 8:08-bk-17206 and related adversary proceeding *SCC Acquisitions, Inc., et al. v. Lehman ALI, Inc., et al.*, No. 7:09-ap-01005, pending before the Honorable Judge Erithe Smith in the United States Bankruptcy Court of the Central District of California (the "Action"). This Declaration is submitted in support of the Motion of the SunCal Debtors for an Order Determining that the Automatic Stay Does Not Apply or, in the Alternative, Granting Relief from Stay filed concurrently with this Declaration. The facts stated herein are within my personal knowledge and if called upon to testify to the same I could and would testify competently thereto.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the Order on Objections to and Motion For Order Striking Claims Filed by the Lehman Entities *entered* October 2, 2009 [D.E. 653 (8:08-bk-17206)].

3.      Attached hereto as **Exhibit B** is a true and correct copy of the Findings of Fact and Conclusions of Law in Support of the Order on Objections to Claims *entered* October 2, 2009 [D.E. 652 (8:08-bk-17206)].

4.      Attached hereto as **Exhibit C** is a true and correct copy of the pertinent excerpts from the transcript of proceedings of the 10:00 a.m. hearing before the Honorable Judge James Peck in *In re Lehman Brothers Holdings, Inc.*, No. 08-13555 (JMP), *dated* October 14, 2009.

5.      Attached hereto as **Exhibit D** is a true and correct copy of the Order Denying Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Real Property: Ritter Ranch) *entered* March 10, 2009 [D.E. 149 (8:08-bk-17206)].

63138.1

6.      Attached hereto as **Exhibit E** is a true and correct copy of the Memorandum of Points and Authorities in Support of Motions of Lehman Commercial Paper, Inc. and Lehman ALI, Inc. for Relief from the Automatic Stay Under § 362 *filed* January, 23, 2009 [D.E. 69 (8:08-bk-17206)].

7.      Attached hereto as **Exhibit F** is a true and correct copy of the letter from special litigation counsel to the SunCal Debtors, Louis R. Miller, of Miller Barondess, LLP, to Michael Bond and Edward Soto of Weil, Gotschal & Manges, LLP, and Richard Pachulski of Pachulski, Stang, Ziehl & Jones, counsel for the Lehman Commercial Paper, Inc., Lehman ALI, Inc. and other Lehman entities, *dated* March 26, 2009.

8.      Attached hereto as **Exhibit G** is a true and correct copy of the proof of claim filed by Lehman entity Northlake Holdings, LLC against SunCal Trustee Debtor LB/L-SunCal Northlake, LLC on March 27, 2009 [Claim 6-1 (8:08-bk-17408)].

9.      Attached hereto as **Exhibit H** is a true and correct copy of the first page of the loan agreement between SunCal Debtor LB/L SunCal Northlake LLC, and Lehman ALI, Inc., *dated* September 9, 2005, and Bates stamped D0005033.

10.      Attached hereto as **Exhibit I** is a true and correct copy of the subpoena served on JPMorgan Chase & Co through its servicing agent CT Corporation System on April 6, 2009 for return on April 17, 2009.

11.      Attached hereto as **Exhibit J** is a true and correct copy of the letter from Edward Soto of Weil, Gotschal & Manges, LLP, counsel for the Lehman Commercial Paper, Inc., Lehman ALI, Inc. and other Lehman entities to Louis R. Miller of Miller Barondess, LLP, special litigation counsel to the SunCal Debtors, *dated* April 15, 2009.

12.      Attached hereto as **Exhibit K** is a true and correct copy of the Surreply to the SunCal Debtors' Sales Procedures Motion, *filed* July 24, 2009 [D.E. 501 (8:08-bk-17206)].

63138.1

13.     Attached hereto as **Exhibit L** is a true and correct copy of Lehman Commercial Paper Inc.'s, Lehman ALI, Inc.'s, OVC Holdings LLC's, and Northlake Holdings, LLC's Motion for Clarification of (1) October 2, Order on Objections to and Motion for Order Striking Claims Filed By the Lehman Entities; and (2) Findings of Fact and Conclusions of Law in Support of Order on Objections to Claims, *filed* October 8, 2009 [D.E. 694 (8:08-bk-17206)].

14.     Attached hereto as **Exhibit M** is a true and correct copy of the declaration of Paul Couchot, *dated* October 20, 2009.

15.     Attached hereto as **Exhibit N** is a true and correct copy of pertinent excerpts of the *First Amended* Joint Chapter 11 Plan Proposed By Lehman Lenders *filed* October 13, 2009 [D.E. 710 (8:08-bk-17206)].

16.     Attached hereto as **Exhibit O** is a true and correct copy of the Order re Lehman Entities Amended Motion to Dismiss the Third Amended Complaint [D.E. 244 8:09-ap-01005].

17.     To date the Lehman Entities, the SunCal Debtors, and other parties to the Action have collectively produced several million pages of documents in response to requests for production, including approximately one hundred thousand additional pages by the Lehman Entities, and Fenway, as a result of a March 23, 2010 Order granting the SunCal Debtors' motion to compel.

18.     Attached hereto as **Exhibit P** is a true and correct copy of the Scheduling Order Regarding Discovery Schedule in Connection with (1) Substantive Consolidation Motion, and (2) Adversary Proceeding *entered* December 30, 2009 [D.E. 150 (8:09-ap-01005)].

19.     Attached hereto as **Exhibit Q** is a true and correct copy of the Order Regarding Revised Discovery Schedule in Connection with (1) Substantive Consolidation Motion, and (2) Adversary Proceeding *entered* March 23, 2010 [D.E. 1039 (8:08-bk-17206)].

63138.1

20.      Attached hereto as **Exhibit R** is a true and correct copy of the Notice of Filing of Letter Requesting Joint Status Conference *filed* March 9, 2009 [D.E. 148 (8:08-bk-17206)].

21.      Attached hereto as **Exhibit S** is a true and correct copy of SunCal Debtors' Sales Procedures Motion *filed* February 18, 2009 [D.E. 125 (8:08-bk-17206)].

22.      Attached hereto as **Exhibit T** is a true and correct copy of the Master Repurchase Agreement with annexes, entered into between Fenway Capital, LLC and Lehman Commercial Paper, Inc., *dated* August 22, 2008, and Bates stamped JPM-PALMDALE00000388-421.

23.      Attached hereto as **Exhibit U** is a true and correct copy of a letter agreement between Fenway Capital, LLC and Fenway Funding, LLC, on the one hand, and Lehman Commercial Paper, Inc., and Lehman Brothers Holdings, Inc., on the other, *dated* September 14, 2008, and Bates stamped JPM-PALMDALE00000422-423

24.      Attached hereto as **Exhibit V** is a true and correct copy of the pertinent excerpts of the July 17, 2009 deposition of Irena Goldstein.

25.      Attached hereto as **Exhibit W** is a true and correct copy of an article from the N.Y. Times, *dated* April 13, 2010, entitled "Lehman Channeled Risks Through 'Alter Ego' Firm."

26.      Attached hereto as **Exhibit X** is a true and correct copy of the caption page of the Joint Chapter 11 Plan Proposed By Lehman Lenders *filed* September 9, 2009 [D.E. 567 (8:08-bk-17206)].

27.      Attached hereto as **Exhibit Y** is a true and correct copy of the SunCal Debtors' Third Amended Adversary Complaint *filed* July 10, 2009 [D.E. 44 (8:09-ap-01005)].

28.      Attached hereto as **Exhibit Z** is a true and correct copy of the relevant excerpts from Debtors' Fourth Amended Joint Disclosure Statement Describing Debtors' Fourth

63138.1

Amended Joint Chapter 11 Plan, *filed* October 8, 2009*, as an exhibit to docket entry 695* (8:08-bk-17206).

I hereby declare that the foregoing is true and correct under the penalty of perjury under the laws of the United States of America.

Executed this 21st day of April 2010 in Orange County, California.

/s/  Sean A. O'Keefe
Sean A. O'Keefe

63138.1

# EXHIBIT A

1  PAUL J. COUCHOT - State Bar No. 131934
   pcouchot@winthropcouchot.com
2  SEAN OKEEFE - State Bar No. 122417
   **WINTHROP COUCHOT, P.C.**
3  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
4  Telephone: (949) 720-4165
   Facsimile: (949) 720-4111
5  General Insolvency Counsel for
   Administratively Consolidated Debtors-in-Possession and
6  Counsel for SCC Acquisitions, Inc.

7  LOUIS R. MILLER, State Bar No. 54141
   smiller@millerbarondess.com
8  MARTIN PRITIKIN, State Bar. No. 210845
   **MILLER BARONDESS, LLP**
9  1999 Avenue of the Stars, Suite 1000
   Los Angeles, California 90067
10 Telephone: (310) 552-4400
   Facsimile: (310) 552-8400
11 Special Litigation Counsel

```
                         FILED & ENTERED

                         OCT 02 2009

                    CLERK U.S. BANKRUPTCY COURT
                    Central District of California
                    BY kent      DEPUTY CLERK
```

12              UNITED STATES BANKRUPTCY COURT
                CENTRAL DISTRICT OF CALIFORNIA
13                    SANTA ANA DIVISION

14 In re                               Case No. 8:08-bk-17206-ES
   Palmdale Hills Property, LLC, and its Related
   Debtors,                           Jointly Administered With Case Nos.
15                                     8:08-bk-17209-ES; 8:08-bk-17240-ES;
             Jointly Administered Debtors  8:08-bk-17224-ES; 8:08-bk-17242-ES;
             and Debtors-in-Possession 8:08-bk-17225-ES; 8:08-bk-17245-ES;
16                                     8:08-bk-17227-ES; 8:08-bk-17246-ES;
   Affects:                            8:08-bk-17230-ES; 8:08-bk-17231-ES;
17 ☒  All Debtors                      8:08-bk-17236-ES; 8:08-bk-17248-ES;
   ☐  Palmdale Hills Property, LLC,    8:08-bk-17249-ES; 8:08-bk-17573-ES;
18 ☐  SunCal Beaumont Heights, LLC     8:08-bk-17574 ES; 8:08-bk-17575-ES;
   ☐  SCC/Palmdale,                    8:08-bk-17404-ES; 8:08-bk-17407-ES;
19 ☐  SunCal Johansson Ranch, LLC      8:08-bk-17408 ES; 8:08-bk-17409-ES;
   ☐  SunCal Summit Valley, LLC        8:08-bk-17458-ES; 8:08-bk-17465-ES;
20 ☐  SunCal Emerald Meadows LLC       8:08-bk-17470-ES; 8:08-bk-17472-ES;
   ☐  SunCal Bickford Ranch, LLC       and 8:08-bk-17588-ES
21 ☐  Acton Estates, LLC
   ☐  Seven Brothers LLC               Chapter 11 cases
22 ☐  SJD Partners, Ltd.
   ☐  SJD Development Corp.            **ORDER ON OBJECTIONS TO AND**
23 ☐  Kirby Estates, LLC              **MOTION FOR ORDER STRIKING**
   ☐  SunCal Communities I, LLC        **CLAIMS FILED BY THE LEHMAN**
24 ☐  SunCal Communities III, LLC      **ENTITIES**
   ☐  SCC Communities LLC
25 ☐  North Orange Del Rio Land, LLC   DATE: June 30, 2009
   ☐  Tesoro SF, LLC                   TIME: 2:00 p.m.
26 ☐  LBL-SunCal Oak Valley, LLC       PLACE: Courtroom 5A
27 ☐  SunCal Heartland, LLC

28                                     Order#11204#5542c07d-0d29-4dcd-adcb-479b185025a0

1

*Caption Continued on Next Page*
*Continued from Previous Page*
☐  LBL-SunCal Northlake, LLC

2

☐  SunCal Marblehead, LLC
☐  SunCal Century City, LLC

3

☐  SunCal PSV, LLC

4

☐  Delta Coves Venture, LLC
☐  SunCal Torrance, LLC

5

☐  SunCal Oak Knoll, LLC

6

        The hearing on the *Debtors' Objections To And Motion For Order Striking Claims Filed*

7

*By The Lehman Entities* (the "Objection") filed by the debtors-in-possession listed above

8

("Voluntary Debtors") and by Mr. Steven M. Speier, as the duly-appointed Chapter 11 trustee

9

("Trustee") for LB-L-SunCal Oak Valley LLC, SunCal Heartland LLC, LB-L-SunCal Northlake

10

LLC, SunCal Marblehead LLC, SunCal Century City LLC, SunCal PSV LLC, Delta Coves

11

Venture LLC, SunCal Torrance LLC, and SunCal Oak Knoll LLC (the "Trustee Debtors") (the

12

Voluntary Debtors and Trustee Debtors are collectively referred to as the "Debtors") came on for

13

hearing before the undersigned United States Bankruptcy Judge on June 30, 2009, at 2:00 P.M., in

14

Courtroom 5A of the above-entitled Court. The Voluntary Debtors appeared by and through their

15

general insolvency counsel, Winthrop Couchot Professional Corporation, by Sean A. O'Keefe and

16

Paul J. Couchot, and their special litigation counsel, Miller Barondess LLP, by Louis Miller and

17

Martin Pritikin. The Chapter 11 Trustee appeared by and through his special litigation counsel,

18

Miller Barondess LLP, by Louis Miller and Martin Pritikin. Lehman Commercial Paper Inc.

19

("Lehman Commercial"), Lehman ALI, Inc., Northlake Holdings and OVC Holdings (collectively

20

the "Lehman Entities") appeared by and through their counsels, Pachulski Stang Ziehl & Jones

21

LLP, by Richard Pachulski, and Weil, Gotshal & Manges LLP, by Edward Soto. Other

22

appearances, if any, are as reflected in the Court's record of the hearing.

23

        Based upon the Objection and supporting evidence, Lehman's Consolidated Opposition,

24

the Debtors' Reply thereto, the arguments of counsel, and on the basis of the concurrently filed

25

*Findings of Fact And Conclusions of Law* (the "Findings"), it is hereby

26

///

27

///

28

-2-

1      **ORDERED** that:

2          A)    The Lehman Entities' contention that the transfer of the Sold Loans pursuant to the

3   MRA was a transfer "for security," and consequently they retained the right to file the Proofs of

4   Claim on the basis of their retained interest as owners, is rejected by the Court. As stated in the

5   Findings, the transfer of the Sold Loans pursuant to the MRA was a true purchase and sale

6   transaction, not a transfer for security. Accordingly, the Lehman Entities retained no right to file

7   claims on this basis, under Federal Rule of Bankruptcy Procedure 3001(e)(1); and

8          B)    The Lehman Entities' remaining contention that they were entitled to file the Proofs

9   of Claim as the "creditor's authorized agent" under Federal Rule of Bankruptcy Procedure 3001(b)

10  will be decided by the Court at a later hearing. A status conference on the setting of this hearing

11  will be held on July 17, 2009, at the hour of 2:00 p.m.

###

DATED: October 2, 2009

_Erithe A. Smith_
United States Bankruptcy Judge

-3-

# EXHIBIT B

<pre>
FILED & ENTERED

OCT 02 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY kent      DEPUTY CLERK
</pre>

1  PAUL J. COUCHOT - State Bar No. 131934
   pcouchot@winthropcouchot.com
2  SEAN OKEEFE - State Bar No. 122417
   **WINTHROP COUCHOT, P.C.**
3  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
   Telephone: (949) 720-4165
4  Facsimile: (949) 720-4111
5  General Insolvency Counsel for
   Administratively Consolidated Debtors-in-Possession and
6  Counsel for SCC Acquisitions, Inc.

**CHANGES MADE BY COURT**

7  LOUIS R. MILLER, State Bar No. 54141
   smiller@millerbarondess.com
8  MARTIN PRITIKIN, State Bar. No. 210845
   **MILLER BARONDESS, LLP**
9  1999 Avenue of the Stars, Suite 1000
   Los Angeles, California 90067
10 Telephone:  (310) 552-4400
   Facsimile:  (310) 552-8400
11 Special Litigation Counsel

12              UNITED STATES BANKRUPTCY COURT
                 CENTRAL DISTRICT OF CALIFORNIA
13                   SANTA ANA DIVISION

14 In re                                  Case No. 8:08-bk-17206-ES
   Palmdale Hills Property, LLC, and its Related
15 Debtors,                               Jointly Administered With Case Nos.
            Jointly Administered Debtors  8:08-bk-17209-ES; 8:08-bk-17240-ES;
16          and Debtors-in-Possession     8:08-bk-17224-ES; 8:08-bk-17242-ES;
                                          8:08-bk-17225-ES; 8:08-bk-17245-ES;
17 Affects:                               8:08-bk-17227-ES; 8:08-bk-17246-ES;
   ☒ All Debtors                          8:08-bk-17230-ES; 8:08-bk-17231-ES;
18 ☐ Palmdale Hills Property, LLC,        8:08-bk-17236-ES; 8:08-bk-17248-ES;
   ☐ SunCal Beaumont Heights, LLC         8:08-bk-17249-ES; 8:08-bk-17573-ES;
19 ☐ SCC/Palmdale,                        8:08-bk-17574-ES; 8:08-bk-17575-ES;
   ☐ SunCal Johannson Ranch, LLC          8:08-bk-17404-ES; 8:08-bk-17407-ES;
20 ☐ SunCal Summit Valley, LLC            8:08-bk-17408-ES; 8:08-bk-17409-ES;
   ☐ SunCal Emerald Meadows LLC           8:08-bk-17458-ES; 8:08-bk-17465-ES;
21 ☐ SunCal Bickford Ranch, LLC           8:08-bk-17470-ES; 8:08-bk-17472-ES;
   ☐ Acton Estates, LLC                   and 8:08-bk-17588-ES
22 ☐ Seven Brothers LLC
   ☐ SJD Partners, Ltd.                   Chapter 11 cases
23 ☐ SJD Development Corp.
   ☐ Kirby Estates, LLC                   **FINDINGS OF FACT AND CONCLUSIONS
24 ☐ SunCal Communities I, LLC            OF LAW IN SUPPORT OF ORDER ON
   ☐ SunCal Communities III, LLC          OBJECTIONS TO CLAIMS**
25 ☐ SCC Communities LLC
   ☐ North Orange Del Rio Land, LLC       DATE: June 30, 2009
26 ☐ Tesoro SF, LLC                       TIME: 2:00 p.m.
   ☐ LBL-SunCal Oak Valley, LLC           PLACE: Courtroom 5A
27 ☐ SunCal Heartland, LLC
28

Order#11205#434e9729-2475-4c26-86f4-952e6c52da53
</pre>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Caption Continued on Next Page*
*Continued from Previous Page*
☐ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

The hearing on the *Debtors' Objections To And Motion For Order Striking Claims Filed By The Lehman Entities* (the "Objection") filed by the debtors-in-possession listed above ("Voluntary Debtors") and by Mr. Steven M. Speier, as the duly-appointed Chapter 11 trustee ("Trustee") for LB-L-SunCal Oak Valley LLC, SunCal Heartland LLC, LB-L-SunCal Northlake LLC, SunCal Marblehead LLC, SunCal Century City LLC, SunCal PSV LLC, Delta Coves Venture LLC, SunCal Torrance LLC, and SunCal Oak Knoll LLC (the "Trustee Debtors") (the Voluntary Debtors and Trustee Debtors are collectively referred to as the "Debtors") came on for hearing before the undersigned United States Bankruptcy Judge on June 30, 2009, at 2:00 P.M., in Courtroom 5A of the above-entitled Court. The Voluntary Debtors appeared by and through their general insolvency counsel, Winthrop Couchot Professional Corporation, by Sean A. O'Keefe and Paul J. Couchot, and their special litigation counsel, Miller Barondess LLP, by Louis Miller and Martin Pritikin. The Chapter 11 Trustee appeared by and through his special litigation counsel, Miller Barondess LLP, by Louis Miller and Martin Pritikin. Lehman Commercial Paper Inc. ("Lehman Commercial"), Lehman ALI, Inc., Northlake Holdings and OVC Holdings (collectively the "Lehman Entities") appeared by and through their counsels, Pachulski Stang Ziehl & Jones LLP, by Richard Pachulski, and Weil, Gotshal & Manges LLP, by Edward Soto. Other appearances, if any, are as reflected in the Court's record of the hearing.

The Court having read and considered the Objection and supporting evidence, Lehman's Consolidated Opposition, and the Debtors' Reply thereto, and having heard and considered the arguments of counsel, hereby makes the following *Findings of Fact and Conclusions of Law* in support of the concurrently filed *Order*.

///

-2-

1   ///

2

I

**FINDINGS OF FACT**

4      1.1.   The following parties, *inter alia*, received notice of the *Objection*: The Lehman

5 Entities, Fenway Capital, LLC ("Fenway Capital") and JPMorgan Chase, N.A. ("JP Morgan").

6 (Notice of Hearing, Dkt. No. 352).

7      1.2.   Lehman Commercial and Fenway Capital entered into that certain *Master Repurchase*

8 *Agreement* ("MRA") as of August 22, 2008, a copy of which is attached to the *Amended Declaration*

9 *Of Sean A. OKeefe In Support Of Debtors' Objections To And Motion For Order Striking Claims*

10 *Filed By The Lehman Entities (Replacing Prior Declaration)* (the "OKeefe Decl.") as Exhibits "B,"

11 "C" and "D."

12      1.3.   The MRA states that it is the parties' intent to engage in the *purchase and sale* of the

13 "Purchased Securities," which includes the "Sold Loans" as defined herein. (Ex. "B," ¶ 6, P.

14 WC000013, OKeefe Decl.).

15      1.4.   The MRA states that the selling party therein, Lehman Commercial, is selling "All of

16 Seller's interest in the Purchased Securities" to Fenway Capital. (Ex. "B," ¶ 8, P. WC000014,

17 OKeefe Decl.).

18      1.5.   In the MRA, Lehman Commercial represents that it holds or is authorized sell "All of

19 Seller's interest in the Purchased Securities." (Ex. "B," ¶ 10, P. WC000013, OKeefe Decl.).

20      1.6.   The MRA is an industry form that is accompanied by "Guidance Notes" promulgated

21 by the Bond Market Association. (Ex. "CC," WC000242, OKeefe Decl.). These notes specifically

22 state that the agreement (the "MRA) continues to provide "explicit characterization of transactions

23 as purchases and sales" and describes this characterization as being "essential" for repo participants.

24 (Ex. "CC," WC000242, OKeefe Decl.).

25      1.7.   The MRA states that it is governed by the laws of the State of New York. (Ex. "B," ¶

26 16, P. WC000018, OKeefe Decl.).

27      1.8.   The Declaration of Irena Goldstein, counsel for Fenway Capital, submitted by the

28 Lehman Entities, states that ". . . while it is correct that Fenway purchases interests in the loans

-3-

pursuant to a repurchase agreement" and "[m]ost importantly, however, Fenway purchase loans."

Goldstein Decl., ¶ 5, ¶ 7.

1.9.   The following loans (the "Sold Loans") were sold to Fenway Capital pursuant to the MRA on August 22, 2008:

| Loan | Claimant | Proof of Claim No. (collectively, the "Claims") |
|---|---|---|
| SunCal Communities I Loan | Lehman Commercial | 1, 2, 6, 7, 12, 16 |
| Ritter Ranch Loan | Lehman Commercial | 65 |
| SunCal PSV Loan | Lehman ALI | 12 |
| SunCal Delta Coves Loan | Lehman ALI | 21 |
| SunCal Marblehead/ Heartland Loan | Lehman ALI | 9, 21 |
| Sun Cal Oak Valley Loan | OVC Holdings, LLC | 16 |
| SunCal Northlake Loan | Northlake Holdings, LLC | 6 |

(Ex. "B –I," OKeefe Decl.).

1.10.   The Lehman Entities filed the proofs of claims listed in the above table with respect to the Sold Loans (the "Proofs of Claim"). (Ex. "P" through "BB," OKeefe Declaration).

1.11.   In the section of the Proofs of Claim (the official form – first page) where a claimant is required to list the "Name Of The Creditor," each of the Lehman Entities filing the Proofs of Claim listed their own name, and each of the Lehman Entities listed their own address on the form as the location for notice and for payment. (Ex. "P" through "BB," OKeefe Declaration).

1.12.   No reference to the word "agent" appears in the Proofs of Claim, except in the Exhibit "1" thereto. In this exhibit, each Lehman Entities states that the claim is made on behalf of the identified Lehman Entity, "as agent for the lenders." However, the "lenders" are not identified anywhere in the Proofs of Claim or in the exhibit thereto. (Ex. "P" through "BB," OKeefe Declaration).

1.13.   None of the Lehman Entities have filed the statement required by Federal Rule of Bankruptcy Procedure 2019(a).

-4-

1

2

## II

## CONCLUSIONS OF LAW

3    2.1.    The filing of a claim in a bankruptcy case is governed, *inter alia*, by 11 U.S.C. § 501

4    and Federal Rule of Bankruptcy Procedure 3001.

5    2.2.    Fed.R.Bankr.P. 3001(e)(1) provides "If a claim has been transferred other than for

6    security before proof of claim has been filed, the proof of claim may be filed only by the transferee or

7    an indenture trustee."

8    2.3.    At the hearing on the Objection, the Lehman Entities contended that the transfer of the

9    Sold Loans pursuant to the MRA was "for security" within the meaning of Fed.R.Bankr.P. 3001(e)(1),

10    and that they continued to have the right to file the Proofs of Claim with respect to these loans as the

11    "owner." The Court rejects this position on the following grounds:

12    A)    The MRA is governed by New York law. In *Matter of Bevill, Bresler &*

13    *Schulman Asset Management Corp.*, 67 B.R. 557 (D.N.J.1986) the District Court succinctly addressed

14    the application of New York law on the issue of contract interpretation, on similar facts:

15

16

17

18

19

20

21

22

23

24

25

26

> Where the intention of the parties is clearly and unambiguously set forth in the
> agreement, effect must be given to the parties' intent as revealed in the language
> used without regard to extrinsic evidence. *See, e.g., Midland Carpet Corp. v.
> Franklin Associated Properties,* 90 N.J.Super. 42, 46, 216 A.2d 231 (A.D.1966);
> *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.,* 25 N.Y.2d 535, 307
> N.Y.S.2d 449, 451-52, 255 N.E.2d 709, 711-12 (1969). The objective intent of
> the parties expressed or apparent in the writing controls the interpretation of a
> contract. *Friedman v. Tappan Development Corp.,* 22 N.J. 523, 531, 126 A.2d
> 646 (1956); *Hartford Accident & Indemnity Co. v. Wesolowski,* 33 N.Y.2d 169,
> 171, 350 N.Y.S.2d 895, 305 N.E.2d 90 (1973). The undisclosed, subjective intent
> of the parties has no bearing on contract construction. *Krosnowski v. Krosnowski,*
> 22 N.J. 376, 386, 126 A.2d 182 (1956); *In re Smith's Will,* 254 N.Y. 283, 289,
> 172 N.E. 499 (1930).

27    67 B.R. at 586.

28

-5-

1        B)        The language in the MRA is clear with respect to the objective intent of the

2  parties thereto: The parties intended to enter into a *true purchase and sale transaction*, not a transfer

3  "for security." To the extent the parties had an undisclosed subjective intent to the contrary, it is not

4  relevant to this Court's analysis and no evidence has been submitted evidencing such an intent in any

5  event.

6        2.4        The Court hereby concludes that the transfer of the Sold Loans pursuant to the MRA

7  to Fenway Capital was intended to be, and was in fact, a true sale, not a transfer "for security."

8  Accordingly, the Lehman Entities were not authorized to file the Proofs of Claim pursuant to the

9  Fed.R.Bankr.P. 3001(e)(1) on the basis of the clause in this rule excepting instances where the claim

10  is transferred "for security."

11        2.5        The Lehman Entities could not properly file the Proofs of Claim as "creditors."

12  When they listed themselves as the "creditors" on the Proofs of Claim, this was a misrepresentation.

13        2.6        The Lehman Entities' status as "authorized agent" for a creditor for purposes of

14  Fed.R.Bank.P. 3001(b) will be determined by the Court at later hearing.

15

16                                        ###

17

18

19

20

21

22

23

24  DATED: October 2, 2009

                                              *Erithe A. Smith*
                                           United States Bankruptcy Judge

25

26

27

28

# EXHIBIT C

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555(JMP)

Case No. 08-01420(JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.,

                    Debtors.

- - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

                    Debtor.

- - - - - - - - - - - - - - - - - - -x

                U.S. Bankruptcy Court

                One Bowling Green

                New York, New York


                October 14, 2009

                10:04 AM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

15

1    But --

2              THE COURT:  Well, why don't I ask?

3         MR. SLACK:  What?

4              THE COURT:  Is there anyone here from First Data or on

5    behalf of First Data?

6              I guess they decided it wasn't worth the trip because

7    they reached an agreement with you.

8         MR. SLACK:  I think that's right, Your Honor.  That

9    was my understanding.  I just wanted to make sure.  So item

10   number 8 is now essentially an uncontested matter, and similar

11   to the 2004 motion with Dollar General there's a consented-to

12   order that we would ask Your Honor to approve.

13             THE COURT:  That's approved.

14        MS. MARCUS:  Turning to the contested matters, Your

15   Honor, number 5 is the debtor's motion for an order enforcing

16   the automatic stay and holding Shinsei Bank in contempt for

17   violating the automatic stay.  Richard Krasnow, my partner, is,

18   I believe, on the phone from Europe.

19             Richard, are you there?

20        MR. KRASNOW:  Good morning, Your Honor.  This is

21   Richard Krasnow, Weil, Gotshal & Manges, for the debtors with

22   respect to the Shinsei matter.

23             THE COURT:  And Richard Levine is here as well.

24        MR. LEVINE:  Good morning, Your Honor.

25             THE COURT:  Mr. Krasnow, just out of curiosity, where

16

1    are you?

2          MR. KRASNOW:  I am, Your Honor, in Amsterdam attending

3    the second global protocol meeting.

4          THE COURT:  I'd like to hear more about that another

5    time.

6          All right, I take it you're going to be representing

7    the interests of the debtors as movants in this matter?

8          MR. KRASNOW:  Yes, Your Honor, along with my partner

9    Richard Levine, who is in the courtroom.

10          THE COURT:  How are you going to coordinate?  Is Mr.

11    Levine going to stand up and do the talking, or is he going to

12    stand up and do the talking only if you lateral the ball to

13    him?

14          MR. LEVINE:  The latter, Your Honor.

15          MR. KRASNOW:  We'll --

16          MR. LEVINE:  I think it's really just in case we lose

17    the phone connection with Mr. Krasnow.  I'm here, but Mr.

18    Krasnow otherwise will be handling it.

19          THE COURT:  Okay.

20          Mr. Krasnow, why don't you proceed?  I mean, I've

21    looked at all --

22          MR. KRASNOW:  Well, Your Honor --

23          THE COURT:  -- I've look at all the papers that have

24    been filed, including the controversy surrounding the surreply,

25    and I'm actually in a position to make some fundamental

17

1   statements about how I see this, but I'd be happy to hear

2   whatever you want to present at this point.

3          MR. KRASNOW:  Your Honor, this has been scheduled as a

4   status conference, so we will defer to the Court.

5          THE COURT:  Succinctly put, I believe that Lehman

6   loses this motion.  Having reviewed the papers that have been

7   submitted since the last argument, and giving some thought to

8   the manner in which the proceeding in the Tokyo District Court

9   has proceeded to date and, based upon the affidavits, will

10  proceed in the future, I don't see this as a stay violation.  I

11  can provide a much more detailed ruling if you like and put

12  that on the record, but that is the bottom line.  And if you

13  want to say anything or if you'd like to have me provide my

14  reasoning, I can do that; it will take probably, since it's

15  written out, about fifteen minutes.

16         MR. KRASNOW:  Your Honor, it may be helpful to -- for

17  Your Honor to do that just so we have an understanding and

18  third parties have an understanding as to what may or may not

19  be permissible in connection with foreign proceedings or

20  proceedings outside of the bankruptcy court in New York.

21         THE COURT:  That's fine.

22         Mr. Trost is standing.

23         MR. TROST:  Good morning, Your Honor.  Ronald Trost.

24  I was waiting to identify myself.  We have no reason to ask you

25  to do any more than you've done.

18

1        THE COURT: All right, well, once again the parties

2    are in conflict and I get to decide what I'm going to do, which

3    is, I will provide a little bit more color on what I've said.

4        First of all, I'm going to deal with the question of

5    Shinsei's filing of a surreply. I'm satisfied that the

6    surreply was responding to newly raised allegations and, as a

7    result, was appropriate; also, I read it. So, having read it,

8    it didn't strike me as an inappropriate pleading. It also

9    helpfully summarized aspects of Mr. Suzuki's affidavit

10   concerning practice and procedure in the Tokyo District Court.

11       As an initial matter, it's appropriate to review the

12   relevant law governing this dispute. Section 541 of the

13   Bankruptcy Code enumerates the type of property interests that

14   are included in the bankruptcy estate. As provided in that

15   section, all legal or equitable interests of the debtor in

16   properties as of the commencement of the case constitutes

17   property for purposes of Section 541(a)(1).

18       Upon the filing of a bankruptcy petition, an automatic

19   stay protects property of the estate under Section 541 against

20   attack from creditors. Most relevant for this case are the

21   protections offered by Section 362(a)(1), which stays the

22   commencement or continuation of a judicial proceeding against

23   the debtor, and Section 362(a)(3), which stays acts to obtain

24   possession of property of the estate or to exercise control

25   over property of the estate.

19

1          In determining whether a creditor's conduct violates

2     the automatic stay, United States bankruptcy courts have

3     differentiated between permissible creditor conduct that is

4     defensive in nature and impermissible creditor conduct that is

5     offensive in nature and therefore sufficiently similar to the

6     prohibited commencement of litigation against the debtor.

7          There is significant case authority that deals with

8     this subject.  One of the cases that has been referenced by

9     both Lehman and Shinsei in this dispute is the decision of my

10    colleague Judge Gonzalez in the Enron matter, which made the

11    offensive/defensive distinction in the context of litigation

12    seeking equitable subordination.  The offensive/defensive

13    dichotomy used in Enron to identify conduct functionally

14    equivalent to the commencement of litigation is inappropriate,

15    in my view, in the context of the present dispute, given the

16    central role in this case of another jurisdiction's legal

17    procedures and substantive law.

18         The offensive/defensive distinction may be a helpful

19    tool to evaluate questionable creditor conduct while balancing

20    the competing policy concerns implicated by Section 362 for

21    United States bankruptcy law purposes, but I do not believe

22    that, given what I have been told in the affidavit submitted is

23    the practice in the Tokyo District Court, that this

24    offensive/defensive distinction should be respected for these

25    purposes.

20

1          One of the things that I noted was the eight-day

2    period which was applicable to the objection procedure in

3    Tokyo, a very, very abbreviated period which, according to one

4    of the affidavits that I read, frequently is not meaningful

5    because so much information is held by third parties.  The

6    distinction between being able to permissibly object to a claim

7    within that eight-day period but impermissibly file a competing

8    plan is not, in my view, a meaningful distinction, at least for

9    purposes of the Tokyo bankruptcy case.

10          I believe that a more appropriate inquiry in light of

11    the central role of Japanese law in this dispute is whether

12    under Japanese law the submission of the Shinsei plan

13    constituted conduct explicitly prohibited by the Bankruptcy

14    Code, specifically, whether the submission of the Shinsei plan

15    constituted the commencement of litigation against LBHI, which

16    would violate the stay under Section 362(a)(1), or the seizure

17    or exercise of control over LBHI property, which would violate

18    the stay under Section 362(a)(3).

19          Whether Shinsei's submission of the Shinsei plan

20    constituted the commencement of litigation forbidden under

21    362(a)(1) requires a brief examination of relevant Japanese

22    law, a subject as to which I have zero expertise.  To that end,

23    a careful review of the Japanese declarations reveals that

24    Shinsei's submission of the Shinsei plan is, under Japanese

25    law, not the commencement of litigation against LBHI forbidden

21

1    under Section 362(a)(1).

2              As explained in the Suzuki declaration, the

3    appropriate legislation in Japan delineates a procedure for

4    discrete litigation akin to adversary proceedings, as the term

5    is used in the United States.  The law there does not deem a

6    creditor's submission of rehabilitation plan to be such an

7    action.  Instead, the submission of competing rehabilitation

8    plans appears to be merely the first step in a somewhat drawn-

9    out and protracted procedure whereby the supervisor and, in

10   turn, the Tokyo District Court evaluate the fairness and

11   reasonableness of competing distribution schemes.  The

12   supervisor then opines as to whether there are grounds to

13   dismiss a proposed plan.  Based upon the supervisor's

14   discretion and judgment, the district court then decides

15   whether to refer a draft plan to creditors for a vote.

16             Shinsei's submission of the Shinsei plan also does not

17   appear to be a hidden attempt to disguise the commencement of

18   litigation against LBHI through the submission of an

19   alternative rehabilitation plan.  According to the Suzuki

20   declaration, it is not unusual for a creditor to contest the

21   classification of a determined claim by submitting a competing

22   rehabilitation plan.  This factor also influences the Court's

23   earlier stated reasoning that the distinction between offensive

24   and defensive action does not appear to be rational in the

25   context of the Japanese proceeding.  This holding honors the

VERITEXT REPORTING COMPANY
212-267-6868                                        516-608-2400

Exhibit C, Page 23

22

1    principles of comity underlying this dispute.  It is axiomatic

2    that United States courts have long recognized the need to

3    respect the sovereignty of proceedings in sister jurisdictions.

4    There are a variety of cases that I can cite to, but there's no

5    need.

6            In this ruling, the Court also affirms principles

7    underlying the cross-border protocol approved by this Court on

8    June 17, 2009.  And it's purely coincidental that Mr. Krasnow

9    is hearing me say this while in Amsterdam attending some

10   meetings that relate to that protocol.  As stated at Section

11   11.2, "Each tribunal shall have sole jurisdiction and power

12   over the conduct of the proceeding in that forum."

13           Nor is Shinsei's submission of the Shinsei plan a

14   seizure or exercise of control over estate property under

15   Section 362(a)(3).  Shinsei's submission of the Shinsei plan is

16   markedly different from the flagrant confiscation of debtor

17   property by creditors which characterizes the various cases

18   relied upon by LBHI.  I'm not going to mention those cases;

19   they're in the papers.

20           The debtors' characterization of Shinsei's submission

21   of the Shinsei plan as the functional equivalent of a seizure

22   or exercise of control over estate property similarly is

23   unpersuasive.  It is true that the Shinsei plan, if ultimately

24   deemed legal by the supervisor and the Tokyo District Court and

25   ratified by creditor vote, would have the effect of causing

23

1    LBHI to recover less on its claim against Sunrise.  It is also

2    true that Shinsei as well as other unsecured creditors would

3    consequently enjoy an enhanced recovery on claims against

4    Sunrise.  But the Shinsei plan's potentially negative impact on

5    LBHI's recovery does not render the equivalent of a seizure of

6    or exercise of control over estate property.  LBHI's right to

7    collect on its claim against Sunrise depends on that claim's

8    amount and priority and being valid under relevant Japanese

9    law.  Case law is replete with examples of permissible creditor

10   actions with actual or potential negative consequences for

11   debtor property.

12         Finally, I want to dispose of certain peripheral

13   arguments made by a variety of other parties.  First, today's

14   ruling is limited to holding that Shinsei's submission of the

15   Shinsei plan does not violate the automatic stay that arose as

16   a result of LBHI's Chapter 11 filing and consequently does not

17   reach the issue of whether the automatic stay extends in this

18   context to protect nondebtor affiliates such as LB Asia.  It

19   appears that it would not because LB Asia is not a debtor, but

20   I make no findings one way or the other as to whether what was

21   done in Tokyo was proper as to LB Asia.

22         Given my reliance on the pleadings and declarations

23   submitted by Shinsei, I similarly do not reach the issue of

24   whether the nonparty objectors have standing to be heard in

25   this dispute.

24

1          As a result of these rulings, there's no basis for

2    finding Shinsei in contempt.  And I will entertain an order

3    denying the motion.

4          MR. KRASNOW:  Thank you, Your Honor.  With the Court's

5    permission, may I be excused for the balance of the hearing?

6    This is Richard Krasnow.

7          THE COURT:  Yes.  You're excused.

8          And Shinsei's counsel is excused as well.

9          MR. KLEINER:  Thank you.

10          MR. TROST:  Thank you.

11          MS. MARCUS:  Your Honor, Jacqueline Marcus again for

12    LBHI.  The next item on the agenda is number 6, the motion of

13    Lehman Commercial Paper Inc. for authorization to purchase the

14    FairPoint participation.  Your Honor, this is a motion by LCPI

15    for authorization to purchase from the VFT (ph.) 2008 Trust a

16    participation in Term Loan A issued by FairPoint

17    Communications.

18          This motion arises out of a settlement with

19    Metropolitan Life Insurance Company which was approved by the

20    Court on May 13th.  Under the terms of the MetLife settlement,

21    if LCPI and MetLife cannot agree as to whether a particular

22    loan should be sold by the trust, and if the outlook of Moody's

23    and Standard & Poor's with respect to that debt is negative,

24    then MetLife can compel a sale of the loan at the prevailing

25    market rate.

VERITEXT REPORTING COMPANY

212-267-6868                                                    516-608-2400

# EXHIBIT D

Attorney or Party Name, Address, Telephone & Fax Numbers, and California State Bar Number

PAUL J. COUCHOT -- State Bar No. 131934
PETER W. LIANIDES – State Bar No. 160517
**WINTHROP COUCHOT P.C.**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
pcouchot@winthropcouchot.com
plianides@winthropcouchot.com

General Insolvency Counsel for
Jointly Administered Debtors in Possession

☒  *Attorney for Jointly Administered Debtors in Possession*

**FOR COURT USE ONLY**

**FILED & ENTERED**

**MAR 10 2009**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY daniels    DEPUTY CLERK

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

In re:
PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED DEBTORS,

Jointly Administered Debtors and Debtors-in-Possession

Affects:
- ☐ All Debtors
- ☒ Palmdale Hills Property, LLC,
- ☐ SunCal Beaumont Heights, LLC
- ☒ SCC/Palmdale, LLC
- ☐ SunCal Johannson Ranch, LLC
- ☒ SunCal Summit Valley, LLC
- ☒ SunCal Emerald Meadows LLC
- ☒ SunCal Bickford Ranch, LLC
- ☒ Acton Estates, LLC
- ☐ Seven Brothers LLC
- ☐ SJD Partners, Ltd.
- ☐ SJD Development Corp.
- ☐ Kirby Estates, LLC
- ☒ SunCal Communities I, LLC
- ☐ SunCal Communities III, LLC
- ☐ SCC Communities LLC
- ☐ North Orange Del Rio Land, LLC
- ☐ Tesoro SF, LLC

CHAPTER: 11

CASE NO.: 8:08-bk-17206-ES

DATE:    February 20, 2009
TIME:    10:00 a.m.
PLACE:   Courtroom 5A
FLOOR:   5

### ORDER DENYING MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362
### (MOVANT: <u>Lehman Commercial Paper, Inc.</u>)
### (Real Property: Ritter Ranch)

1.  The Motion was:    ☒ Contested    ☐ Uncontested    ☐ Not Prosecuted

2.  The description of the property (the "Property") to which this Order applies is as follows *(specify common description or street address)*: Elizabeth Lake Road & Highland Street, Palmdale, CA 93551, and Rider C attached to Motion

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 4001-10.DENY**

Order Denying Motion for Relief from Automatic Stay – Page 2 of 6    **F 4001-10.DENY**

| In re: PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED DEBTORS | CHAPTER 11 |
|---|---|
| Jointly Administered Debtors in Possession. | CASE NUMBER  8:08-bk-17206-ES |

3.  The Motion is denied:  ☒  without prejudice  ☐  with prejudice  ☒  on the following grounds:

☒  Based upon the findings and conclusions made on the record at the hearing
☐  Unexcused non-appearance by Movant
☐  Lack of proper service
☐  Lack of good cause shown for relief from stay
☐  The automatic stay is no longer in effect under:  ☐ 11 U.S.C. § 362(c)(2)(A)   ☐ 11 U.S.C. § 362(c)(2)(B)
☐ 11 U.S.C. § 362(c)(3)(A)   ☐ 11 U.S.C. § 362(c)(4)(A)
☐  Other (specify):

4.  ☐ Movant may not file another motion for relief from the stay in this case absent a court order authorizing re-filing.

5.  Based upon the findings and conclusions made on the record at the hearing, and having considered the Omnibus Objection to Form of Proposed Order Denying Motion for Relief from the Automatic Stay filed by Lehman Ali, Inc. and Lehman Commercial Paper, Inc. on or about February 27, 2009, the Court holds that:

(a)  The Motion sufficiently states an express demand referencing the nature and amount of the claim, and therefore Movant's Motion constitutes an informal proof of claim.

(b)  This Court has concurrent jurisdiction to determine the scope or applicability of the automatic stay under 11 U.S.C §362(a) and/or (b), arising from the Chapter 11 bankruptcy proceeding of Lehman Commercial Paper, Inc. ("Lehman Commercial") as it applies to matters before this Bankruptcy Court.

(c)  The automatic stay arising from the bankruptcy case of Lehman Commercial does not apply to any objection to the claim of Lehman Commercial, any proceeding to subordinate the claim of Lehman Commercial pursuant to 11 U.S.C. § 510(c)(1), and/or the transfer of a lien securing a subordinated claim to the estate pursuant to 11 U.S.C. § 510(c)(2), in this Chapter 11 proceeding.

(d)  The Debtors may object to the claim of Lehman Commercial, seek to subordinate the claim of Lehman Commercial pursuant to 11 U.S.C. § 510(c)(1), and/or seek to transfer a lien securing a subordinated claim to the estate pursuant to 11 U.S.C. § 510(c)(2), via an adversary proceeding or plan, without violating Lehman Commercial's automatic stay.

###

DATED: March 10, 2009

_Erithe A. Smith_
United States Bankruptcy Judge

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

January 2009    **F 4001-10.DENY**

# EXHIBIT E

1    Joseph A. Eisenberg P.C. (Bar No. 52346)
    E-Mail: jeisenberg@jmbm.com
2    JEFFER, MANGELS, BUTLER & MARMARO LLP
    1900 Avenue of the Stars, 7th Floor
3    Los Angeles, CA 90067
    Phone: (310) 203-8080
4    Fax: (310) 203-0567

5    -and-

6    Edward Soto, Esq. (*pro hac vice* admission pending)
    Shai Waisman, Esq. (*pro hac vice* admission pending)
7    Gregory Hull, Esq. (*pro hac vice* admission pending)
    Elisa R. Lemmer, Esq. (*pro hac vice* admission pending)
8    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
9    New York, NY 10153-0119
    Telephone: (212) 310-8000
10    Facsimile: (212) 310-8007

11    ATTORNEYS FOR LEHMAN ALI, INC.
    AND LEHMAN COMMERCIAL PAPER INC.

12

13        **UNITED STATES BANKRUPTCY COURT**
         **CENTRAL DISTRICT OF CALIFORNIA**
14            **SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No.: 8:08-bk-17206-ES |
| Palmdale Hills Property, LLC, and | Chapter 11 |
| its Related Debtors. | Jointly Administered with Case Nos. |
| | 8:08-bk-17209-ES; 8:08-bk-17240-ES; |
|     Jointly Administered Debtors and | 8:08-bk-17224-ES; 8:08-bk-17242-ES; |
|     Debtors-in-Possession | 8:08-bk-17225-ES; 8:08-bk-17245-ES; |
| | 8:08-bk-17227-ES; 8:08-bk-17246-ES; |
| | 8:08-bk-17230-ES; 8:08-bk-17231-ES; |
| Affects: | 8:08-bk-17236-ES; 8:08-bk-17248-ES; |
| ☐ All Debtors | 8:08-bk-17249-ES; 8:08-bk-17573-ES; |
| ☒ Palmdale Hills Property, LLC | 8:08-bk-17574 ES; 8:08-bk-17575-ES |
| ☐ SunCal Beaumont Heights, LLC | |
| ☒ SCC/Palmdale, LLC | **MEMORANDUM OF POINTS AND** |
| ☐ SunCal Johannson Ranch, LLC | **AUTHORITIES IN SUPPORT OF** |
| ☒ SunCal Summit Valley, LLC | **MOTIONS OF LEHMAN COMMERCIAL** |
| ☒ SunCal Emerald Meadows, LLC | **PAPER INC. AND LEHMAN ALI, INC.** |
| ☒ SunCal Bickford Ranch, LLC | **FOR RELIEF FROM THE AUTOMATIC** |
| ☒ Acton Estates, LLC | **STAY UNDER 11 U.S.C. § 362** |
| ☐ Seven Brothers, LLC | |
| ☐ SJD Partners, Ltd. | **Hearing** |
| ☐ SJD Development Corp. | Date:   February 20, 2009 |
| ☐ Kirby Estates, LLC | Time:   10:00 a.m. |
| ☒ SunCal Communities I, LLC | Place:    Courtroom 5A |
| ☐ SCC Communities LLC |        411 West Fourth Street |
| ☐ SunCal Communities III, LLC |        Santa Ana, CA 92701 |
| ☐ North Orange Del Rio Land, LLC | |
| ☐ Tesoro SF, LLC | |

**Motion for Relief From Stay**                              **Case No.: 8:08-17206-ES**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTIONS OF LEHMAN COMMERCIAL PAPER INC. AND LEHMAN ALI, INC.
FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**

Lehman Commercial Paper Inc. ("LCPI"), as debtor and debtor in possession in its

chapter 11 case in the United States Bankruptcy Court for the Southern District of New York (the

"LCPI Bankruptcy Case"), and Lehman ALI, Inc. ("ALI," and collectively, with LCPI,

"Lehman"), creditors and parties-in-interest in the above-captioned chapter 11 cases, by and

through their undersigned counsel, hereby file their motion (the "Motion") pursuant to section

362(d) of title 11 of the United States Code (the "Bankruptcy Code") for relief from stay and

respectfully represent as follows:

## I.    PRELIMINARY STATEMENT

The Debtors sought and borrowed hundreds of millions of dollars from Lehman since

2005 which they used as the sole financing source to develop the Properties[1] they now own.

Approximately $649 million of the principal amount of those Loans is currently outstanding.

Prior to the commencement of these chapter 11 cases, each of the Loans had already matured,

either on a scheduled maturity date or otherwise by acceleration of the Loan by the lender as a

result of existing defaults.  Not only were the Loans in default, but the Properties, which, directly

or through pledges of equity interests in entities which own certain of the Properties, constitute

Lehman's collateral for the $649 million of principal currently outstanding, have declined and

continue to decline in value at a precipitous rate.  In light of the continuing decline in the value of

the Collateral and the Debtors' apparent inability to preserve the Properties, Lehman seeks relief

from stay to exercise its right to foreclose.  Lehman should be granted relief from stay under

---

[1] Capitalized terms used in this Preliminary Statement, not previously defined, are defined subsequently in this Motion.

F:\Apps\BankRuptcy\Macbank\L folder\Lehman Brothers\Pldgs\Memorandum of Points and Authorities to RFS Motions.DOC

2

Case No.: 8:08-17206-ES

section 362(d) because: (i) Lehman's interests in the Collateral are not being adequately protected under section 362(d)(1); (ii) the Debtors do not have any equity in the Collateral and reorganization is not a reasonable prospect for the Debtors, mandating relief under section 362(d)(2); and (iii) Debtors do not have a feasible plan and there is no reasonable possibility that the Debtors will be able to confirm a plan within a reasonable time as required by section 362(d)(3).

The Debtors' inability to comply with the statutory requirements to adequately protect Lehman's interests warrants relief from the automatic stay under section 362(d)(1). The value of Lehman's Collateral continues to erode as a result of the Debtors' failure to address a myriad of critical issues on the Properties that have required attention for many months and have led to significant impairment of value. Actions must be taken and money must be spent to protect and preserve the value of these Properties. Yet, the Debtors lack an income stream and cannot service their debt or otherwise adequately protect Lehman's interests, and do not have any property on which they are able to grant Lehman a replacement lien. Since Lehman has not received adequate protection, it has become an unwilling financier of the Debtors' chapter 11 cases, a result that section 362(d) was specifically enacted to prevent.

The Debtors' lack of equity in the Collateral also warrants relief under section 362(d)(2). Since *just* the aggregate outstanding principal amount of the Loans is *more than five times the value of the Collateral*, the value of the Collateral is nowhere near the outstanding amount of the Loans (inclusive of, among other things, accrued and unpaid interest and fees and costs to which the lender is entitled). As the appraisals of the Properties annexed as exhibits to this Motion reflect:

- The SunCal Communities I Loan, which has an outstanding principal balance of approximately $277.7 million is secured, indirectly through a guarantee, by real

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman            3            **Case No.: 8:08-17206-ES**
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions.DOC

property that, in the aggregate, is currently only worth approximately $58.9 million (or 21% of the outstanding principal balance).

- The Ritter Ranch Mortgage Loan, which has an outstanding principal balance of approximately $246.5 million is secured by real property that is currently only worth approximately $42.9 million (or 17% of the outstanding principal balance).

- The Properties or other Collateral securing the Bickford Second Lien Loan (the outstanding principal balance of which is approximately $30 million) and the Ritter Ranch Mezz Loan (the outstanding principal balance of which is approximately $95 million) have no residual value because they also secure SunCal Communities I Loan and Ritter Ranch Mortgage Loan, respectively (which Loans are undersecured as described above).

Additionally, reorganization is not a viable option for the Debtors because, among the other reasons discussed below, they have no unencumbered assets of value, no income stream, and no prospects for raising financing. Cause therefore exists for relief from the stay.

Finally, the Debtors inability to submit a feasible plan and inability confirm a plan in a reasonable amount of time warrants relief under section 362(d)(3).

- The Debtors cannot submit a feasible plan because they made it clear at this Court's January 15, 2009 status conference that the feasibility of any plan they propose will be premised entirely on their success in a recently devised litigation scheme to equitably subordinate Lehman's claims against the Debtors. Even assuming that feasibility were the only requirement to confirm a plan over the dissent of objecting creditors — something that is obviously not the case — the Debtors' strategy requires them to succeed in subordinating the over $649 million they borrowed and used as the sole source of financing for their projects, something they clearly cannot do because: (i)

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    4
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions.DOC

Case No.: 8:08-17206-ES

there is no basis in law for subordinating these secured claims; and (ii) only approximately $30 million of that $649 million is even at issue in the Equitable Subordination Action. Of the $649 million in aggregate outstanding principal under the Loans at issue in this Motion, ALI holds only approximately $30 million of such outstanding principal. The other approximately $619 million of outstanding principal is held by LCPI which is *not* a defendant in the Equitable Subordination Action. LCPI is a debtor and debtor in possession in the LCPI Bankruptcy Case, and the Debtors would need to obtain relief from the automatic stay in the LCPI Bankruptcy Case in order to proceed against LCPI and join it as a defendant in the Equitable Subordination Action. The Debtors previously filed a blanket motion for relief from stay to administer their chapter 11 cases generally, and that motion was denied. They have not sought such relief from stay regarding the Equitable Subordination Action at this juncture, even though it is clearly required.

- Moreover, putting aside whether the Debtors have any prospects for succeeding in the Equitable Subordination Action, even as to the $30 million of outstanding principal of the Loans which is affected by the Equitable Subordination Action (which amounts to less than 5% of the aggregate outstanding principal of all of the Loans), there is no way a plan by the Debtors could be confirmed in a "reasonable amount of time" as is required by the Bankruptcy Code. Alternatively, the Debtors would have to commence making certain monthly payments – something that, for the reasons stated below, is also unlikely to happen. The Debtors' purported plan hinges on the Debtors prevailing in the Equitable Subordination Action – a case that will require many months of discovery and an equal amount of time to litigate, not to even begin to account for appeals – and therefore, cannot be resolved within a "reasonable amount

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman          5
Brothers\Pldgs\Memorandum   of   Points   and
Authorities to RFS Motions DOC

**Case No.: 8:08-17206-ES**

1    of time." This Court should not delay and forestall Lehman's ability to foreclose on

2    the Collateral, the value of which continues to depreciate.

3    Based on the foregoing and as discussed further in this Motion, it is clear that granting

4
relief from the automatic stay is appropriate and warranted under the Bankruptcy Code, and will
5
prevent the value of the Collateral from further diminishment while the Debtors pursue futile,
6
7    speculative and wasteful litigation.

8    ## II.    JURISDICTION

9    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and

10    1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before

11    this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12    ## III.    BACKGROUND

13
A.    General
14

15    On or about November 6, 2008 and November 7, 2008 (collectively, the "Initial Petition

16    Dates"), (i) Palmdale Hills Property, LLC ("Palmdale Hills"), (ii) SunCal Beaumont Heights,

17    LLC ("Beaumont"), (iii) SCC/Palmdale, LLC ("Palmdale"), (iv) SunCal Johannson Ranch, LLC

18    ("Johannson"), (v) SunCal Summit Valley, LLC ("Summit"), (vi) SunCal Emerald Meadows,

19    LLC ("Emerald"), (vii) SunCal Bickford Ranch, LLC ("Bickford"), (viii) Acton Estates, LLC

20    ("Acton"), (ix) Seven Brothers, LLC ("Seven Brothers"), (x) SJD Partners, Ltd. ("SJD Partners"),

21    (xi) SJD Development Corp. ("SJD Development"), (xii) Kirby Estates, LLC ("Kirby"),

22
(xiii) SunCal Communities I, LLC ("SunCal I"), and (xiv) SunCal Communities III, LLC
23
24    ("SunCal III") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

25    On or about November 19, 2008 (collectively, with the Initial Petition Dates, the "Petition

26    Dates"), North Orange Del Rio Land, LLC ("Del Rio"), SCC Communities LLC ("SCC

27    Communities"), and Tesoro SF, LLC ("Tesoro" and collectively, with Palmdale Hills, Beaumont,

28    F:\Apps\BankRuptcy\Macbank\L    folder\Lehman        6        **Case No.: 8:08-17206-ES**
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions.DOC

1    Palmdale, Johannson, Summit, Emerald, Bickford, Acton, Seven Brothers, SJD Partners, SJD

2    Development, Kirby, Del Rio, SCC Communities, SunCal I and SunCal III, the "Debtors")) each

3    filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4
        The Debtors' chapter 11 cases are currently being jointly administered.  The Debtors are

5    operating their businesses as debtors in possession.  The Debtors were formed to develop various

6    residential real estate projects located throughout the western United States.  With the exception

7    of Palmdale Hills, the nature of the remaining Debtors' businesses is described on their voluntary

8    petitions as "single asset real estate" as defined in section 101(51)(B) of the Bankruptcy Code.

9
**B.    The Loans**

10
    **(1)    The SunCal I Communities Loan**

11

12        LCPI is the administrative agent and the sole lender under that certain Credit Agreement,

13    dated as of November 17, 2005, by and among (i) SunCal I and SunCal III, as borrowers,

14    (ii) LCPI, as administrative agent and lender, and (iii) Lehman Brothers, Inc., as arranger,

15    pursuant to which LCPI made a loan in the maximum aggregate principal amount of

16    approximately $395,313,713.37 (as amended and/or supplemented from time to time, the "SunCal

17    Communities I Loan").  The SunCal Communities I Loan is secured, in part, by that certain

18    Guarantee and Collateral Agreement, dated as of November 17, 2005, made by SunCal I, SunCal

19    III, Acton, Emerald, Bickford and Summit (collectively, the "SunCal Communities I Guarantors")

20    in favor of LCPI (as amended, modified and/or supplemented, the "SunCal Communities I

21    Guaranty").  The obligations of the SunCal Communities I Guarantors under the SunCal

22    Communities I Guaranty are secured, in part, by (a) first lien deeds of trust on all real and

23    personal property owned by Bickford (the "Bickford Ranch Property"), all real and personal

24    property owned by Acton (the "Acton Property"), and all real and personal property owned by

25

26

27

28    F:\Apps\BankRuptcy\Macbank\L    folder\Lehman        7        **Case No.: 8:08-17206-ES**
        Brothers\Pldgs\Memorandum    of    Points    and
        Authorities to RFS Motions.DOC

Emerald (the "<u>Emerald Meadows Property</u>"), granted by Bickford, Acton and Emerald, respectively, for the benefit of LCPI, (b) a pledge of equity interests held by SunCal I in each of the following five Debtor subsidiaries of SunCal I: Summit, Beaumont, Johannson, Emerald, and Bickford (which own, respectively, certain real property referred to as the "Summit Valley Property"[2] (as described below), the "Beaumont Heights Property" (as described below), the "Johannson Ranch Property" (as described below), the Emerald Meadows Property, and the Bickford Ranch Property), and (c) a pledge of equity interests held by Summit in each of the following two Debtor subsidiaries of Summit:  Seven Brothers and Kirby (which own, respectively, portions of the Summit Valley Property).

### (2)    The Bickford Second Lien Loan

ALI is the owner and holder of that certain Promissory Note Secured by a Deed of Trust, dated as of May 25, 2005, in the maximum aggregate principal amount of approximately $30,000,000 executed by Bickford, as borrower, and payable to the order of ALI (as amended and/or supplemented from time to time, the "<u>Bickford Second Lien Loan</u>").  The Bickford Second Lien Loan is secured, in part, by a second lien deed of trust on the Bickford Ranch Property granted by Bickford for the benefit of ALI.

### (3)    The Ritter Ranch Mortgage Loan and the Ritter Ranch Mezz Loan

LCPI is the administrative agent and the sole lender under that certain Credit Agreement, dated as of February 8, 2007, by and among Palmdale Hills, as borrower, LCPI, as administrative agent and lender, and Lehman Brothers Inc., as arranger, pursuant to which LCPI made a loan in the maximum aggregate principal amount of approximately $264,000,000 (as amended and/or supplemented from time to time, the "<u>Ritter Ranch Mortgage Loan</u>").  The Ritter Ranch

---

[2] The Summit Valley Property is owned by three of the Debtors: Summit, Seven Brothers, and Kirby.

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions.DOC

8

**Case No.: 8:08-17206-ES**

Mortgage Loan is secured, in part, by a first lien deed of trust on all real and personal property owned by Palmdale Hills (the "Ritter Ranch Property") granted by Palmdale Hills for the benefit of LCPI.

LCPI is also the administrative agent and sole lender under that certain Mezzanine Credit Agreement, dated as of March 30, 2007, among Palmdale, as borrower, LCPI, as administrative agent and lender, and Lehman Brothers, Inc., as arranger, pursuant to which LCPI provided a revolving credit facility in the maximum aggregate principal amount of approximately $95,000,000 (as amended and/or supplemented from time to time, the "Ritter Ranch Mezz Loan"). The Ritter Ranch Mezz Loan is secured, in part, by a pledge of Palmdale's equity interest in Palmdale Hills.

Prior to the Petition Dates, the borrowers and guarantors under each of the SunCal Communities I Loan, the Bickford Second Lien Loan, the Ritter Ranch Mortgage Loan, and the Ritter Ranch Mezz Loan (collectively, the "Loans") defaulted on their obligations under such loans which defaults remain uncured. There is no equity in any of the real property that has been mortgaged to LCPI or ALI as security for the applicable Debtors' obligations under the Loans (collectively, the "Properties").

**C.   Value of the Collateral**

Although the Loans are secured by personal property and fixtures in addition to real property, the primary value of the collateral securing the Loans resides in the Properties and the equity interests referenced in this Motion (collectively, all of the collateral securing the Loans, the "Collateral"). As is set forth in the table below, LCPI and ALI are substantially undersecured with respect to their Loans.

F:\Apps\BankRuptcy\Macbank\L   folder\Lehman
Brothers\Pldgs\Memorandum   of   Points   and
Authorities to RFS Motions DOC

9

Case No.: 8:08-17206-ES

| Loan Facility/ Approximate Amount of Principal Indebtedness as of 1/12/2009 | Approximate Appraised Value of Collateral | Percentage of Value Compared to Outstanding Principal Balance |
|---|---|---|
| SunCal Communities I Loan/ $277,742,750 | $58,900,000 | 21% |
| Bickford Second Lien Loan/ $30,000,000 | $0[3] | 0% |
| Ritter Ranch Mortgage Loan/ $246,526,344 | $42,900,000 | 17% |
| Ritter Ranch Mezz Loan/ $95,000,000 | $0[4] | 0% |

It goes without saying that the value of Collateral securing each of the Loans cited above does not even begin to approach the outstanding *principal* amount of the debt – let alone the total amount of the Loans including interest and fees. The Debtors simply have no equity in the Collateral, and the value of the Collateral, particularly in this economic climate, continues to decline on a daily basis.

## IV.   RELIEF REQUESTED AND BASIS THEREFORE

By this Motion, Lehman requests that the Court enter an order, pursuant to sections 362(d)(1), (2), and (3) of the Bankruptcy Code, granting Lehman relief from the automatic stay to exercise its right to foreclose on the Collateral securing the Loans.

---

[3] The Bickford Second Lien Loan is subject to the lien of the first deed of trust securing the SunCal Communities I Guaranty which, in turn, secures the SunCal Communities I Loan. Given the value of the Bickford Ranch Property relative to the outstanding balance of the SunCal Communities I Loan, there is no collateral value securing the Bickford Ranch Second Lien Loan.

[4] The Ritter Ranch Mezz Loan is subject to the lien of the first deed of trust securing the Ritter Ranch Mortgage Loan. Given the value of the Ritter Ranch Property relative to the outstanding balance of the Ritter Ranch Mortgage Loan, there is no collateral value securing the Ritter Ranch Mezz Loan.

F:\Apps\BankRuptcy\Macbank\L   folder\Lehman   10
Brothers\Pldgs\Memorandum   of   Points   and
Authorities to RFS Motions.DOC

Case No.: 8:08-17206-ES

1    Specifically, Lehman requests an order modifying the automatic stay in the chapter 11

2    cases of the following Debtors so as to take the contemplated actions set forth in the table below:

| Debtor | Proposed Action |
|---|---|
| SunCal I | • Foreclosure of pledged equity interests in Emerald, Beaumont, Summit, Johannson, and Bickford |
| Emerald | • Foreclosure of Emerald Meadows Property (real and personal property) |
| Acton | • Foreclosure of Acton Property (real and personal property) |
| Bickford | • Foreclosure of Bickford Ranch Property (real and personal property) |
| Palmdale | • Foreclosure of pledged equity interests in Palmdale Hills |
| Palmdale Hills | • Foreclosure of Ritter Ranch Property (real and personal property) |
| Summit | • Foreclosure of pledged equity interests in Kirby and Seven Brothers. |

14    Although this Court must order relief from the automatic stay if it finds that the

15    requirements under *any* of sections 362(d)(1), (2), or (3) are met, Lehman respectfully submits

16    that cause exists under each of these sections of the Bankruptcy Code to grant the requested relief.

17    Section 362(d) of the Bankruptcy Code provides as follows:

On the request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . by terminating, annulling, modifying, or conditioning such stay—

(1)    for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]

(2)    with respect to a stay of an act against property under subsection (a) of this section, if

(A) the debtor does not have an equity interest in such property and

(B) such property is not necessary to an effective reorganization . . [or]

11

**Case No.: 8:08-17206-ES**

(3)    with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief . . . or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—

    (A)    the debtor has filed a plan of reorganization that has a *reasonable possibility of being confirmed within a reasonable time* . . .

11 U.S.C. § 362(d)(1) and (3) (emphasis added).[5]

Lehman submits that it is entitled to relief from the automatic stay in accordance with section 362(d) of the Bankruptcy Code because (a) Lehman's interests in the Collateral are not being adequately protected, (b) as noted in the table set forth above, the Debtors do not have any equity in the Properties, and (c) there is no reasonable possibility that the Debtors will be able to confirm a plan within a reasonable time.

**A.    <u>Lehman's Interests in the Collateral Are Not Being Adequately Protected.</u>**

As noted above, section 362(d)(1) requires a court to grant relief from stay if it finds "cause" exists including lack of adequate protection of a party in interest. *See GSB I, LLC v. A Partners, LLC (In re A Partners, LLC),* 344 B.R. 114, 126-27 (Bankr. E.D. Cal. 2006) ("The language of subsection 362(d)(1) is clear and unambiguous; the court *shall* grant relief for 'cause.'") (emphasis in original) (citations omitted). Although the term "cause" is not defined in the Bankruptcy Code, factors considered by a court in determining "cause" include the lack of adequate protection, interference with the debtor's bankruptcy, injury to the debtor if the stay is modified, and the balance of harms. *See In re A Partners, LLC,* 344 B.R. at 127; *see also Mazzeo v. Lenhart (In re Mazzeo),* 167 F.3d 139, 142 (2nd Cir. 1999) (citing *Sonnax Industries,*

---

[5] A creditor in a single asset real estate case is not prohibited from seeking relief under 362(d)(1) or (2) when appropriate because the provisions of section 362(d) are not mutually exclusive. *See, e.g., In re Valdez,* 324 B.R. 296, 301 (Bankr. S.D. Tex. 2005) ("While not exclusive, § 362(d) provides three ways under which a creditor can seek to lift the automatic stay.").

F:\Apps\BankRuptcy\Macbank\L.   folder\Lehman    12
Brothers\Pldgs\Memorandum  of  Points  and
Authorities to RFS Motions.DOC

**Case No.: 8:08-17206-ES**

1    *Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2nd. Cir.

2    1990), (quoting H.R. Rep. No. 95-595, at 343-44 (1977)). Cause can be "any reason cognizable

3    to the equity power and conscience of the court as constituting an abuse of the bankruptcy

4    process." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

5

6          It is important to note, that the law is clear – the burden is on the debtor to show that a

7    party seeking relief from the stay is adequately protected. *See* 11 U.S.C § 362(g). Section 361 of

8    the Bankruptcy Code enables a debtor to provide adequate protection by (i) making cash

9    payments or periodic payments to the party entitled to adequate protection, (ii) providing

10    replacement liens or additional liens to the extent of the decline in value of the party's interest or

11    (iii) providing other property (other than an administrative expense claim) that will entitle the

12    entity to realize the "indubitable equivalent" of its interests in the property. *See* 11 U.S.C. § 361.

13    Here, the Debtors have no ability to adequately protect Lehman's interest in any form

14    whatsoever. The Debtors have no income stream, so they cannot pay debt service. They have no

15    additional property to encumber, so they cannot give Lehman a replacement lien or give Lehman

16    property that will enable Lehman to realize the "indubitable equivalent" of its interest in the

17    Collateral.

18          In *In re A Partners*, a senior deed of trust holder moved for relief from the automatic stay

19    in a chapter 11 case filed by a junior lienholder. In concluding that relief was warranted, the

20    court examined the factors noted above and concluded that where the mortgagor's obligations to

21    the mortgagee were in default, the debt was increasing, and the debtor (the junior lienholder)

22    could not pay adequate protection, cause existed to modify the stay to allow foreclosure. *See id.*

23    Even though the debtor contended that the financial collapse of the mortgagor (a non-debtor)

24    would have a catastrophic effect on the debtor's bankruptcy, the court was not persuaded that this,

25

26

27

28    F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    13    **Case No.: 8:08-17206-ES**
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RES Motions.DOC

1    without more, was sufficient to maintain the stay. The court reasoned, "[n]ot every problem can

2    be fixed in the bankruptcy court, regardless of how catastrophic the possible result." *Id.*

3        Courts have lifted the automatic stay where, among other things, the debtor could not

4    provide debt service and there was no equity cushion in the property at issue to provide adequate

5    protection. *See, e.g., In re Henderson,* 395 B.R. 893 (Bankr. D.S.C. 2008) (finding that cause

6    existed to modify the stay under section 362(d)(1) where the debtor could not make adequate

7    protection payments and evidence indicated that debt had increased and property value had

8

9    declined); *Home Federal Savings & Loan Ass'n v. Grantsville Hotel Assocs. (In re Grantsville*

10   *Hotel Assocs.),* 103 B.R. 509, 510-11 (Bankr. D. Del. 1989) (finding that where the debtor could

11   not make debt service, cause existed to lift the automatic stay); *cf. In re Avila,* 311 B.R. 81, 84

12   (Bankr. N.D. Cal. 2004) ("Where a creditor is adequately protected by a large equity cushion, the

13   debtor would suffer a substantial loss in the event of foreclosure, and no economic harm to the

14   creditor would result, relief from stay should not automatically flow from a default in payment.").

15

16       Here, Lehman's interests in the Collateral are not being adequately protected, and the

17   Debtors' financial predicament makes them unable to provide any form of adequate protection

18   whatsoever. The Debtors are in default on their obligations under the Loans, approximately $649

19   million in aggregate principal is currently outstanding under the Loans, and additional interest

20   and charges continue to accrue each month. The Debtors, however, do not have any income

21   stream and thus, are wholly unable to provide any form of debt service to Lehman. Furthermore,

22   there is no equity cushion in the Collateral that would otherwise provide Lehman with adequate

23   protection. The estimated appraised values of the Properties noted above do not even begin to

24   approach the principal amount of the Loans secured by the Properties, and those Debtors whose

25   equity interests have been pledged to secure, directly or indirectly, certain of the Loans only own

26   the Properties noted in this Motion.

27

28   F:\Apps\BankRuptcy\Macbank\L    folder\Lehman        14
     Brothers\Pldgs\Memorandum    of    Points    and
     Authorities to RES Motions DOC

                                                                    Case No.: 8:08-17206-ES

1      Moreover, the Properties are diminishing in value.  As the appraisals of the Properties

2  annexed as exhibits to this Motion reflect, in the past 14 months, the residential real estate market

3  has cooled, land sale activity has diminished, and work on undeveloped land has stopped.

4  Moreover, as the Debtors concede, additional work must be performed on the Properties to

5  stabilize them physically (e.g., security issues need to be addressed, utilities must be paid,

6  entitlements need to be preserved, and other remedial acts must be taken, to name only a few).

7  These actions are essential to maintaining the value of these Properties and preventing further

8  significant deterioration in value.  Although, as direct or indirect owners of the Properties, the

9  Debtors are solely obligated to manage, maintain and preserve the Properties, the Debtors have no

10  funds with which to do so.  They have also failed to discharge their duties as owners to address

11  life-safety issues affecting the Properties.  Instead, they have demanded and continue to demand

12  that their lenders continue to finance their obligations as owners despite the fact that the Loans

13  have matured, remain unpaid and in default, and are abysmally undersecured.  Recognizing that

14  the Debtors have failed to address even the most critical and basic life-safety issues affecting the

15  Properties, Lehman offered to fund certain critical and necessary expenses but the Debtors

16  refused Lehman's offer, demanding, as a condition to accepting any such offer, that Lehman also

17  pay management fees to the Debtors in order for them to manage *their own* Properties, an

18  obligation that, as owners, they already have.  Thus, while the Debtors hold Lehman hostage,

19  critical actions and expenses necessary to preserve and protect the Properties are not being taken

20  or paid and, consequently, the value of the Properties is eroding.  The Debtors themselves

21  acknowledge in their motion for order authorizing surcharge and, in the alternative, use of cash

22  collateral filed in this Court on January 16, 2009 (the "Surcharge/Cash Collateral Motion") that

23  certain expenses are "necessary for the maintenance and preservation of the value of the

F:\Apps\BankRuptcy\Macbank\L      folder\Lehman     15
Brothers\Pldgs\Memorandum   of   Points   and
Authorities to RFS Motions.DOC

**Case No.: 8:08-17206-ES**

1    respective Projects [which includes each of the Properties]."  Surcharge/Cash Collateral Motion,

2    p.12, lines 23-24.

3          Without receiving some form of adequate protection, Lehman has become an unwilling

4    financier of the Debtors' chapter 11 cases – something that section 362(d) was designed to

5    prevent.  A secured creditor, such as Lehman, who does not receive adequate protection should

6    not be forced to shoulder the risks and costs of the debtor's bankruptcy, particularly where its

7

8    collateral is declining in value precipitously.  Accordingly, Lehman respectfully submits that

9    cause exists to modify the automatic stay under section 362(d)(1) of the Bankruptcy Code and

10   allow Lehman to foreclose on the Collateral, and thus prevent further diminution of Lehman's

11   interest.

12   **B.    <u>Cause Exists To Modify the Automatic Stay Under Section 362(d)(2)</u>**

13         Under section 362(d)(2) of the Bankruptcy Code, a court must grant relief from the

14   automatic stay with respect to real property if (A) the debtor does not have any equity interest in

15   the property and (B) the property is not necessary for an effective reorganization.  11 U.S.C. §

16   362(d)(2).  For property to be "necessary to an effective reorganization," reorganization must be a

17

18   reasonable prospect for the debtor.  *See In re Henderson,* 395 B.R. at 900 (citing *United Savings*

19   *Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365 (1988)).

20         First, as shown above, the Debtors have no equity in the Collateral.  The aggregate

21   appraised value of the Collateral is less than 20% of the debts secured thereby.  Consequently,

22

23   even if the actual values of the respective Properties were to exceed, by a significant percentage,

24   the values reflected in Lehman's appraisals, the values of the respective Properties would still not

25   even come close to just the principal amount of the Loans secured, directly or indirectly, by such

26   Properties.

27

28   F:\Apps\BankRuptcy\Macbank\L    folder\Lehman          16                **Case No.: 8:08-17206-ES**
     Brothers\Pldgs\Memorandum    of    Points    and
     Authorities to RFS Motions.DOC

Second, reorganization is not a reasonable prospect for the Debtors. The Debtors have no unencumbered assets of value, absolutely no income stream, and no prospects for raising any financing. Taken together, these factors alone call the feasibility of any prospective plan into question. Furthermore, to confirm a plan over the objection of secured creditors, the Debtors must be able to satisfy the requirements of, among others, section 1129(b)(2)(A) of the Bankruptcy Code.[6] Satisfying the "cramdown" provisions of section 1129(b) would include, *at a minimum*, being able to provide Lehman with deferred cash payments equal to at least the allowed amount of Lehman's claims. Given that the Debtors have no income stream and absolutely no prospect for financing – except for the proceeds of the Equitable Subordination Action which has not even been filed against LCPI and which, as discussed in more detail below, is speculative under the best of circumstances – and in light of the fact that the Debtors lack any equity interest in the Properties, it is clear that the Debtors cannot meet the cramdown provisions of section 1129(b)(2)(A). As such, there is no meaningful prospect for reorganization. Accordingly, relief from the automatic stay under section 362(d)(2) is warranted.

**C.    There is No Reasonable Possibility That a Plan Will Be Confirmed Within a Reasonable Time**

Section 362(d)(3) provides that, unless the debtor files a plan of reorganization within ninety (90) days after the order for relief that has a **"reasonable possibility of being confirmed within a reasonable time,"** a creditor secured by a single asset real estate shall be entitled to obtain relief from the automatic stay. 11 U.S.C. § 362(d)(3)(A) (emphasis added). This provision of the Bankruptcy Code addresses Congress's concern about the **"delay in the bankruptcy process and the resulting unfairness to secured lenders when single asset real estate projects are involved."** *Nationsbank, N.A. v. LDN Corp. (In re LDN Corp.)*, 191 B.R.

---

[6] This analysis assumes that the Debtors would have another class of creditors that would be an impaired accepting class. *See* 11 U.S.C. § 1129(a)(10).

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman        17            Case No.: 8:08-17206-ES
Brothers\Pldgs\Memorandum  of  Points  and
Authorities to RFS Motions DOC

1  320, 326 (Bankr. E.D. Va. 1996) (quoting the Senate Report: "'[t]his amendment will ensure that

2  the automatic stay provision is not abused, while giving the debtor the opportunity to create a

3  workable plan of reorganization.'") (emphasis added). Section 362(d)(3) is meant to afford relief

4  to secured creditors in single asset real estate cases where "(1) the owner of an encumbered

5  building is attempting to avoid the loss of the building to a grossly undersecured lender and (2)

6  there is no real hope that a viable and confirmable plan can be produced." *Id.* (citations omitted).

7

8      The Debtors admit in their voluntary petitions that (with the exception of Palmdale Hills)

9  each Debtor owning real property upon which Lehman seeks to foreclose is a single asset real

10  estate within the meaning of the Bankruptcy Code.[7] The Loans are secured directly or indirectly

11  by the Collateral. The Debtors are attempting to delay the inevitable—foreclosure of the

12  Collateral by Lehman—despite the fact that there is no possibility whatsoever that any plan they

13  propose will be confirmed. As such, under the Bankruptcy Code and consistent with Congress's

14  intent, the secured lenders are entitled to relief from the automatic stay.

15

16      A finding that a debtor's plan of reorganization has a reasonable possibility of being

17  confirmed under section 362(d)(3) requires that the debtor submit a plan that is feasible.

18  Notably, the Debtors have not yet proposed a plan, have provided no evidence that they can

19  obtain the funding necessary to consummate any proposed plan, and have not illustrated in any

20  way that they can generate sufficient cash to fund operations. Absent committed funding, any

21  plan the Debtors propose cannot be confirmed – a fact made even more ominous by the current

22  economic environment.[8]

23

24

25  [7] The Bankruptcy Code defines "single asset real estate" as real property constituting a single property or
project, other than residential real property with fewer than 4 residential units, that generates substantially
26  all of the gross income of a debtor who is not a family farmer and on which no substantial business is
being conducted by a debtor other than the business of operating the real property and activities incidental.
27  11 U.S.C. § 101(51)(B).

28  [8] This fact is doubly true to the extent the Debtors fashion a plan that requires them to obtain viable exit
F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    18    **Case No.: 8:08-17206-ES**
Brothers\Pldgs\Memorandum of Points and
Authorities to RFS Motions.DOC

1    To distract from their inability to propose a feasible plan and buy time, the Debtors have

2    advised this Court that the feasibility of *any* plan they propose will be premised on the Debtors'

3    ability to succeed in a litigation to equitably subordinate Lehman's claims against the Debtors and

4    
5    certain other affiliated debtors whose chapter 11 cases are also pending before this Court, which

6    litigation is currently pending as Adversary Proceeding No. 8:09-ap-01005 in the above-

7    captioned chapter 11 cases (the "Equitable Subordination Action"). However, the Lehman lender

8    defendants in the Equitable Subordination Action are ALI, Northlake Holdings LLC and OVC

9    Holdings LLC. LCPI is not a defendant in that action and the Debtors have not sought relief from

10   the automatic stay in the LCPI Bankruptcy Case to include LCPI as a defendant in the Equitable

11   
12   Subordination Action. As noted above, of the $649 million in aggregate outstanding principal

13   under the Loans at issue in this Motion, ALI holds approximately $30 million in outstanding

14   principal, and Northlake Holdings LLC and OVC Holdings LLC do not hold any of the Loans.

15   The other approximately $619 million of outstanding principal is held by LCPI which, as stated

16   above, is not a defendant in the Equitable Subordination Action.[9] Moreover, even assuming that

17   the Debtors ultimately succeeded in their unprecedented blunderbuss attempt to subordinate

18   ALI's secured claims and, if successful in obtaining relief from the automatic stay in the LCPI

19   
20   Bankruptcy Case, LCPI's secured claims, to those of unsecured creditors – a theory which has no

21   basis in law – under section 362(d)(3), the plan would still be required to have a "reasonable

22   financing.  Even the DIP financing the Debtors were previously negotiating with D.E. Shaw was
23   speculative at best.  To begin with, the purported DIP financing from D.E. Shaw previously disclosed to
     Lehman contained so many disclaimers and conditions, that it was clear that lender had not actually
24   committed to make the financing.  In fact, the proposal expressly stated it was not a commitment.  Further,
     the proposed DIP imposed onerous time limitations, interest rates, and break-up fees and required that the
25   DIP lender obtain a priming lien on all of the Debtors' projects and those projects owned by their affiliate-
     debtors whose cases are also currently pending before this Court and even required that the lender obtain a
26   lien on the Pacific Point project, which is no longer owned by any of the Debtors or their affiliates.

27   [9] Because the Debtors would need to obtain relief from the automatic stay in the LCPI Bankruptcy Case in
     order to add LCPI as a defendant in the Equitable Subordination Action, any resolution of the Equitable
     Subordination Action would be even further delayed.

28   F:\Apps\BankRuptcy\Macbank\L    folder\Lehman        19                    Case No.: 8:08-17206-ES
     Brothers\Pldgs\Memorandum    of    Points    and
     Authorities to RES Motions DOC

1    possibility of being confirmed within a reasonable time" (or the Debtors would have to have

2    commenced making certain monthly payments – something that, for the reasons stated above, is

3    also unlikely to happen).

4        The Equitable Subordination Action will require several months to over a year for

5    discovery and litigation, to only then begin the process of likely appeals, at the cost of several

6    hundreds of thousands if not millions of dollars that the Debtors do not have.[10]  There is simply

7    

8    no plausible scenario in which such litigation is concluded and a plan of reorganization is

9    confirmed within a "reasonable amount of time."  *See In re A Partners, LLC,* 344 B.R. at 126 ("A

10   chapter 11 plan cannot be based upon a visionary scheme... The Debtor's 'plan' for opposing this

11   motion for relief from stay is fraught with speculation and uncertainty regarding implementation

12   and feasibility, and it further appears to be unconfirmable as a matter of law.  The court cannot

13   find that an 'effective reorganization' is in prospect.") (citation omitted);  *In re Edwards,* 1996

14   

15   WL 407253 (Bankr. E.D. Pa. Jun. 17, 1996) ("Judging from the effort involved in settlement

16   negotiations, the early thrusts and parries of the high powered counsel retained by the various

17   

18   combatants, the parties take this litigation quite seriously...The litigation is in its infancy and [] is

19   complex, and will involve thousands of hours of legal time and many expert witnesses...Judging

20   

21   from the posture of the parties on the preliminary matters that have engaged this Court to date, it

22   promises to be a long and hotly contested battle.  On this basis alone we find 'no reasonable

23   possibility of a successful reorganization within a reasonable time.") (citation omitted)

---

24   [10] In fact, in the Declaration of Bruce V. Cook in Support of Debtor's [*sic*] Opposition to Motions for

25   Relief from the Automatic Stay Filed By:  (1) Staats Construction, Inc.; (2) Sierra Cascade Construction, Inc. (MC 019273); (3) Sierra Cascade Construction, Inc. (MC19382); and (4) Bova Contracting

26   Corporation, dated January 20, 2009 and filed in this Court (the "Cook Declaration"), it is acknowledged that SCC Acquisitions, Inc. ("SCC"), the indirect parent of, among others, Palmdale Hills, has been

27   funding most of the Debtors' chapter 11 fees and costs and the prosecution of the Equitable Subordination Action but that, "if the stay does not apply or an injunction is not granted, there may be no funding for the Equitable Subordination Action . . ." Cook Declaration, p. 6, lines 27-28.

28   F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    20    **Case No.: 8:08-17206-ES**
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions.DOC

Moreover, for the reasons stated above, it is doubtful that the Debtors would be able to satisfy the requirements of section 1129 of the Bankruptcy Code to confirm any proposed plan. Because it is highly unlikely that a plan can be confirmed within a reasonable time period, the automatic stay should be lifted so that Lehman may exercise its rights to foreclose on the Collateral. *See, e.g., In re Saddlebrook Subdivision, LLC,* 2008 WL 5146541, at *3-4 (Bankr. E.D.N.C. Dec. 8, 2008) (granting relief from stay where the debtor's plan required additional funding that it could not obtain and thus had no reasonable possibility of being confirmed within a reasonable time); *In re Lakewood Partners,* 1994 Bankr. LEXIS 1291, *17 (Bankr. E.D. Pa. Jul. 26, 1994) (concluding that where prospects of debtor's recovery on litigation was speculative and litigation proceeds were the debtor's only significant source of plan funding, confirmation of the plan would be unlikely).

Based on the foregoing, Lehman is entitled to relief from the automatic stay pursuant to section 362(d)(1), (2), and (3) of the Bankruptcy Code. Accordingly, the Court must modify the automatic stay to allow Lehman to exercise its right to foreclose on the Collateral.

## V.    WAIVER

Lehman respectfully requests that this Court waive the provisions of Bankruptcy Rule 4001(a)(3). The value of the Collateral is continuing to diminish with each passing day. Waiver of the Bankruptcy Rule 4001(a)(3) will ensure that Lehman is able to take action without further diminution in value and risk to its interests.

## VI. NOTICE

Notice of this Motion has been provided to (a) counsel for the Debtors and (b) the United States Trustee in this District. Lehman submits that no other or further notice need be provided.

No previous motion or application for the relief sought herein has been made to this or any other Court.

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    21
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions DOC

**Case No.: 8:08-17206-ES**

1    WHEREFORE, Lehman respectfully requests that this Court enter an order modifying the

2  automatic stay to the extent necessary to permit Lehman to foreclose on the Collateral, and grant

3  Lehman such other and further relief as is just.

4

5  Dated:  January 23, 2009

6                    /s/ Joseph A. Eisenberg P.C.
Joseph A. Eisenberg P.C. (Bar No. 52346)
7  E-Mail: jeisenberg@jmbm.com
JEFFER, MANGELS, BUTLER & MARMARO
8  LLP
1900 Avenue of the Stars, 7th Floor
9  Los Angeles, CA 90067
Phone: (310) 203-8080
10  Fax: (310) 203-0567

11  -and-

12  Edward Soto, Esq. (*pro hac vice* admission pending)
Shai Waisman, Esq. (*pro hac vice* admission
13  pending)
Gregory Hull, Esq. (*pro hac vice* admission pending)
14  Elisa R. Lemmer, Esq. (*pro hac vice* admission
pending)
15  WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
16  New York, NY  10153-0119
Telephone: (212) 310-8000
17  Facsimile: (212) 310-8007

18  **ATTORNEYS FOR LEHMAN ALI, INC. AND
LEHMAN COMMERCIAL PAPER INC.**
19

20

21

22

23

24

25

26

27

28
F:\Apps\BankRuptcy\Macbank\L    folder\Lehman        22        **Case No.: 8:08-17206-ES**
Brothers\Pldgs\Memorandum  of  Points  and
Authorities to RFS Motions.DOC

# EXHIBIT F

# MILLER BARONDESS, LLP

ATTORNEYS AT LAW
1999 AVENUE OF THE STARS
SUITE 1000
LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400
FAX: (310) 552-8400
www.millerbarondess.com

March 26, 2009

LOUIS R. MILLER
DIRECT DIAL: (310) 552-5251
EMAIL: SMILLER@MILLERBARONDESS.COM

*VIA U.S. MAIL & E-MAIL*

W. Michael Bond
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Edward Soto
Weil, Gotshal & Manges LLP
Espirito Santo Plaza, Suite 1200
1395 Brickell Avenue
Miami, Florida 33131

Richard Pachulski
Pachulski, Stang Ziehl & Jones
10100 Santa Monica Blvd., Suite 1100
Los Angeles, CA 90067

Re:   *Santa Ana Bankruptcy Cases*

Dear Counsel:

In the spirit of cooperation urged by the Courts in the proceedings in both California and New York, I am writing to request that you provide certain information critical to these proceedings. I note that while we and our clients repeatedly have asked for this information, going back to last year and including most recently in Court on March 24, 2009, it still has not been provided. It is time to be up front and forthcoming.

(1)   Information has come to light that your clients do not own or have pledged or otherwise committed interests in the liens in issue on the properties in our cases. One example is Danske Bank's interest in the Century City loan, pledged and subsequently transferred apparently pursuant to a "Repo Agreement"; when we asked about this, your clients denied its existence. Another example is that apparently your clients no longer own or have pledged or transferred or otherwise committed their interest in the lien on the Pacific Pointe Property. And we have heard – but do not know – that there are similar commitments and transactions with respect to other properties in issue in the bankruptcy cases pending in the Santa Ana court.

WC000267

33811.1

# MILLER BARONDESS, LLP

W. Michael Bond
Edward Soto
Richard Pachulski
March 26, 2009
Page 2

Please immediately make full disclosure of the extent of your clients' interests in the liens on each and every property involved in the cases pending in the Santa Ana bankruptcy court. We had to adjourn and continue the hearing on March 24 because of the uncertainty caused by your not disclosing to us – and the Court – this critical information regarding the Century City property. It is time for you to clear the air and tell us and the Court and the creditors the exact status, ownership, existence of Repo Agreements and anything else necessary to understand who has rights in the liens in issue. How can we pursue the 363 sale if we do not know who really owns or controls or has an interest in the liens?; and how can we equitably subordinate liens apparently pledged or committed to unknown third parties? This hide-the-ball gamesmanship must stop.

I hope you will comply with this request and provide the requested information forthwith and fully. I hope it will not be necessary to address the issue again with the Court.

(2)    Your predecessor counsel herein, Joe Eisenberg, committed to provide the signature copies of the various documents that were executed at the closing on August 25, 2008. I am informed that the Weil firm took the signed documents at that time and promised to provide copies, but never did. In that regard, I enclose Bruce Cook's letter of March 2, 2009 to Mr. Eisenberg. I am sure that Mike Bond knows exactly what Bruce is talking about in his letter. With everything that is going on and all the work and pressure, I assume this just fell into a crack and that Mike Bond will provide copies of the executed documents forthwith.

Please accept this letter in the spirit it is offered and understand that the lien information and signature copies requested herein, in our view, should have been provided long ago and that there is absolutely no basis for not providing them immediately. Thank you for your consideration, and I look forward to hearing back from you promptly.

Sincerely,

Louis R. Miller

LRM:ab
Enclosure
cc:    Paul J. Couchot
       Alan J. Friedman, Creditors Committee Counsel
       Lei Lei Wang Ekvall, Creditors Committee Counsel
       Steven N. Speier, Trustee
       Bruce V. Cook

WC000268

33811.1

# EXHIBIT G

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|

| Name of Debtor: LB-L SUNCAL NORTHLAKE, LLC | Case Number: 8:08-bk-17408 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Northlake Holdings LLC

Name and address where notices should be sent:

Northlake Holdings LLC, Attn: Gerald Pietroforte        Weil, Gotshal & Manges LLP, Attn: Shai Y. Waisman
1271 Sixth Avenue, 46th Floor    with a copy to:    767 Fifth Avenue
New York, New York 10020        New York, New York 10153

Telephone number:
(646) 333-4027

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where payment should be sent (if different from above):

Northlake Holdings LLC, Attn: Gerald Pietroforte
1271 Sixth Avenue, 46th Floor
New York, New York 10020

Telephone number:
(646) 333-4027

☒ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**   $ See Exhibit "1"

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** See Exhibit "1"
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 8A73

    3a. Debtor may have scheduled account as:
    (See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:   ☒ Real Estate   ☐ Motor Vehicle   ☒ Other
Describe:

Value of Property: $ Undetermined .  Annual Interest Rate: As specified in the Loan Documents, as defined in Exhibit "1"

Amount of arrearage and other charges as of time case filed included in secured claim,

If any: $ See Exhibit "1" Basis for perfection: See Exhibit "1"

Amount of Secured Claim: $ See Exhibit "1" Amount Unsecured: $ See Exhibit "1"

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**DATE:** 3? /  /2009    27

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
Print    Gerald Pietroforte, Managing Director

Signature: *(signature)*

FOR COURT USE ONLY

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

NY2:\1981326\04\16\GS56041.DOC\58399.0003

B10 (Official Form 10) (12/08) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

1. **Amount of Claim as of Date Case Filed:**
   State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

2. **Basis for Claim:**
   State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

3. **Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
   State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

   3a. **Debtor May Have Scheduled Account As:**
   Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

4. **Secured Claim:**
   Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

5. **Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
   If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

6. **Credits:**
   An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

7. **Documents:**
   Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. § 101(10).

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any Social Security, individual's tax-identification, or financial account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

---

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

NY2:\1900674\\\\BQK\$01\.DOC\99280.0001

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>Palmdale Hills Property, LLC, and its Related Debtors.<br><br>Jointly Administered Debtors and Debtors-in-Possession | Case No.: 8:08-bk-17206-ES<br><br>Jointly Administered with Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574-ES; 8:08-bk-17575-ES; 8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES; 8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES; 8:08-bk-17470-ES; 8:08-bk-17472-ES; and 8:08-bk-17588-ES. |
| Affects:<br>☐ All Debtors<br>☐ Palmdale Hills Property, LLC<br>☐ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☐ SunCal Johannson Ranch, LLC<br>☐ SunCal Summit Valley, LLC<br>☐ SunCal Emerald Meadows, LLC<br>☐ SunCal Bickford Ranch, LLC<br>☐ Acton Estates, LLC<br>☐ Seven Brothers, LLC<br>☐ SJD Partners, Ltd.<br>☐ SJD Development Corp.<br>☐ Kirby Estates, LLC<br>☐ SunCal Communities I, LLC<br>☐ SCC Communities LLC<br>☐ SunCal Communities III, LLC<br>☐ North Orange Del Rio Land, LLC<br>☐ Tesoro SF, LLC<br>☐ LB-L-SunCal Oak Valley, LLC<br>☐ SunCal Heartland, LLC<br>☒ LB-L-SunCal Northlake, LLC<br>☐ SunCal Marblehead, LLC<br>☐ SunCal Century City, LLC<br>☐ SunCal PSV, LLC<br>☐ Delta Coves Venture, LLC<br>☐ SunCal Torrance, LLC<br>☐ SunCal Oak Knoll, LLC | **EXHIBIT "1" TO PROOF OF SECURED CLAIM OF**<br>**NORTHLAKE HOLDINGS LLC** |

1

NY2:\1981368\02\18G9%002\13GC58397.0003

1          Pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules

2 3001 and 3003, this proof of claim (the "*Claim*") is made by and on behalf of Northlake

3 Holdings LLC as agent for the lenders (the "*Agent*") under that certain Term Loan and

4 Revolving Line of Credit Loan Agreement dated as of September 9, 2005 (as

5

6 supplemented and/or amended, the "*Loan Agreement*"), and the various related loan

7 documents as well as any other documents evidencing perfection (collectively, including

8 any amendments and/or supplements thereto, together with the Loan Agreement, the

9 "*Loan Documents*").[1] This Claim is made by the undersigned, Gerald Pietroforte, who is

10 a duly authorized signatory of the Agent, and is authorized to make and file this Claim on

11 behalf of the Agent.

12          The liability of LB-L-SunCal Northlake, LLC (the "*Debtor*") to the Agent

13 arises under the Loan Documents with respect to which the following amounts were, and

14

15 still are, due and owing under the Loan Documents. The liability against the Debtor arises

16 because the Debtor is the borrower under the Loan Agreement. Such amounts are

17 summarized as follows:[2]

18

19

20

21

22

23

24

25 [1] Any reference to the rights of the Agent described herein shall also incorporate and include the rights of

26 the lenders under the Loan Documents.

27 [2] Amounts noted are as of November 12, 2008, the petition date in the Debtor's chapter 11 case. The

28 Agent reserves the right to assert a claim for any postpetition amounts that may be due and owing.

2

NY2:\1981368\02\16G%002L.DOC\58399.0003

| Facility | Description | Amount |
|---|---|---|
| Term Loan | Principal | $68,500,000.00 |
| | Interest Owing | $14,482,827.44 |
| | Service Fee | $227,762.52 |
| | Late Charge | $291,108.23 |
| | Extension Fee | $500,000.00 |
| Revolver | Principal | $32,718,003.63 |
| | Interest Owing | $6,754,227.16 |
| | Service Fee | $106,739.24 |
| | Late Charge | $74,108.66 |
| TOTAL | | $123,654,776.88 |

The Agent is the holder of valid and perfected first priority security

interests in and liens on substantially all of the tangible and intangible assets of the

Debtor, including, but not limited to, the following (collectively, the "*Collateral*"):

(a) any real or personal property granted by the Debtor pursuant to a deed of trust

on the property commonly referred to as Northlake;

(b) accounts, chattel paper, deposit accounts, documents, equipment, general

intangibles, instruments, inventory, investment property, letter of credit rights and any supporting

obligations related to any of the foregoing;

(c) all books and records pertaining to the Collateral;

(d) goods and personal property (including fixtures);

(e) intellectual property;

(f) investment property;

(g) money, cash and any cash equivalents; and

(h) all proceeds, rents and products of any and all of the foregoing, in any form, as

more thoroughly set forth in the Loan Documents and the amendments and supplements thereto.

Because of their substantial volume, the Loan Documents are not annexed

as exhibits hereto but are incorporated herein by reference and are available for inspection

3

NY2A19813500002100840021.DOC\38199.0003

1  at the offices of the Agent's counsel, Weil, Gotshal & Manges LLP, 1395 Brickell

2  Avenue, Suite 1200, Miami, Florida 33131, attn: Nellie Camerik, Esq. and Elisa R.

3  Lemmer, Esq. The Loan Documents are on file with the Debtor and can be provided to

4  the Court upon request. Any party in interest who wishes to view or obtain copies of any

5  of the Loan Documents or other related documents referenced in this Claim may contact

6  the Agent's counsel at the address noted herein.

7

8          This Claim is not subject to any set-off or counterclaim by the Debtor.

9          This Claim is filed as a secured claim to the extent of the value of the

10  Collateral. If the value of such Collateral is insufficient to satisfy the amounts asserted in

11  this Claim, this Claim is filed as a general unsecured claim to the extent of any such

12  deficiency.

13          Nothing in this proof of secured claim constitutes an election under section

14

15  1111(b) of the Bankruptcy Code, as to which the Agent expressly reserves all of its rights

16  and elections.

17          The Agent reserves the right to amend and/or supplement this Claim,

18  including any exhibits filed concurrently herewith, and to assert any and all other claims

19  of whatever kind or nature that they or any of them have, or they or any of them may

20

21  have, against the Debtor that come to the Agent's attention or arise after the filing of this

22  Claim. The filing of this Claim shall not be deemed a waiver of any such claims.

23          A portion of the claims asserted in this Claim may be entitled to

24  administrative expense priority. This Claim is without prejudice to the Agent to assert an

25  administrative expense claim against the Debtor.

26          In filing the Claim, the Agent expressly reserves all rights and causes of

27  action, including without limitation, contingent or unliquidated rights that it may have

28

4.

NY2A19313680021I5G3%6024\DOC\58399.0003.

1  against the Debtor. The description of claims and the classification thereof herein is not a
2  concession or admission as to the correct characterization or treatment of any such claims
3  or a waiver of any rights of the Agent under the Loan Documents. Furthermore, the
4  Agent expressly reserves all rights to amend, modify and/or supplement the Claim in any
5  respect, including without limitation, with respect to filing an amended proof of claim to
6  fix and liquidate any contingent or unliquidated claim set forth herein, or to file additional
7  proofs of claim for additional claims, including without limitation, claims for interest, fees
8  and related expenses (including attorneys' fees) that are not ascertainable at this time. The
9  Claim is filed without prejudice to the filing by the Agent of additional proofs of claim or
10  requests for payment with respect to any other indebtedness, liability or obligation of the
11  Debtor.
12
13           The filing of the Claim is not and shall not be construed as an election of
14  remedies or limitation of rights or remedies. In filing this Claim, the Agent does not
15  waive or release: (i) its rights and remedies against any other person or entity who may be
16  liable for all or part of the claims set forth in this Claim, whether an affiliate or subsidiary
17  of the Debtor, a guarantor, an assignee or otherwise, (ii) any obligation owed to it, or any
18  right to any security that may be determined to be held by it for its benefit or (iii) any past,
19  present or future defaults or events of default by the Debtor or any other person or entity.
20
21           Nothing contained in the Claim is intended to be a waiver or release of any
22  rights, claims, actions, defenses, setoffs or recoupments to which the Agent is or may be
23  entitled under any agreements, instruments or documents, in law or equity, all of which
24  rights, claims, actions, defenses, setoffs and recoupments are expressly reserved. In filing
25  this Claim, the Agent does not submit itself to the jurisdiction of this Court for any
26  purpose other than with respect to the claims asserted in this Claim.
27
28

5

NY2:\1981368\02\16C%6021.DOC\58199.0003

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

All notices concerning this Claim should be sent to:

    Northlake Holdings LLC
    1271 Sixth Avenue, 46th Floor
    New York, New York 10020
    Attn: Gerald Pietroforte

     with copies to:

    Weil, Gotshal & Manges LLP
    767 Fifth Avenue
    New York, New York 10153
    Facsimile: (212) 310-8007
    Attn: Shai Y. Waisman, Esq.

     -and-

    Weil, Gotshal & Manges LLP
    1395 Brickell Avenue, Suite 1200
    Miami, Florida 33131
    Facsimile: (305) 374-7159
    Attn: Nellie Camerik, Esq. and Elisa R. Lemmer, Esq.

     *[The remainder of this page is intentionally blank]*

6

NY2:\1981368\02\16C\%2002\!.DOC\58509.0003

1

2

3    Dated: March 27, 2009

4                                    Northlake Holdings LLC

5                                    By: _____
6                                         Gerald Pietroforte

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NY2:\1981368\02\16C6002!.DOC\58399.0003

# EXHIBIT H

EXECUTION VERSION

---

$68,500,000 TERM LOAN

and

$31,500,000 REVOLVING LINE OF CREDIT

by

**LEHMAN ALI INC.,**
individually and as Agent,

and

**LEHMAN ALI INC.,**
as Lender and such other Lenders which may become
Lenders from time to time pursuant to this Agreement
(collectively, the "Lenders"),

to

**LB/L – SUNCAL NORTHLAKE LLC,**
a Delaware limited liability company
("Borrower")

September 9, 2005

---

D0005033

# EXHIBIT I

Form 255 – Subpoena in an Adversary Proceeding (12/06)                                    2006 USBC, Central District of California

| UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA | FOR COURT USE ONLY |
|---|---|
| In re: <br> PALMDALE HILLS PROPERTY, LLC, <br><br> Debtor <br> PALMDALE HILLS PROPERTY, LLC, et al., <br><br> Plaintiff <br><br> v. <br> LEHMAN ALI, INC., et al., <br><br> Defendant | |
| | **SUBPOENA IN AN ADVERSARY PROCEEDING** |
| | Case No.*: 8:08-bk-17206-ES <br><br> Chapter: 11 |
| To: JPMorgan Chase & Co. <br> c/o C T Corporation System | Adv. Proc. No.*: 8:09-ap-01005-ES |

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above adversary proceeding.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above adversary proceeding.  See Attachment A – Rule 30 (b) (6) Notice of Deposition

| PLACE OF TESTIMONY Miller Barondess, LLP <br> 1999 Avenue of the Stars, Suite 1000 <br> Los Angeles, CA 90067 | DATE AND TIME <br> April 17, 2009, 10:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment B

| PLACE Attn: Brian A. Procel <br> Miller Barondess, LLP <br> 1999 Avenue of the Stars, Suite 1000 <br> Los Angeles, CA 90067 | DATE AND TIME <br> April 17, 2009, 10:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this adversary proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in adversary proceedings by Rule 7030, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE <br> April 6, 2009 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER <br> Brian A. Procel, (310) 552-4400 <br> Miller Barondess, LLP, 1999 Avenue of the Stars, Suite 1000, Los Angeles, CA 90067 | |

* If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

Form 255 – Subpoena in an Adversary Proceeding (12/06)                                                2006 USBC, Central District of California

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
　　　　　　　　DATE                                                        SIGNATURE OF SERVER

　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　ADDRESS OF SERVER

　　　　　　　　　　　　　　　　　　　　　　　　　　_____

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016,Federal Rules of Bankruptcy Procedure:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
　　(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
　　(2)　(A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
　　　　(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises— or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
　　(3)　(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
　　　　(i) fails to allow reasonable time for compliance;
　　　　(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
　　　　(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
　　　　(iv) subjects a person to undue burden.
　　　　(B) If a subpoena
　　　　(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
　　　　(ii) requires disclosure of an un retained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
　　　　(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the

subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
　　(1)　(A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
　　　　(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
　　　　(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
　　　　(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
　　(2)　(A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
　　　　(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

1   LOUIS R. MILLER, State Bar No. 54141
    smiller@millerbarondess.com
2   MARTIN PRITIKIN, State Bar. No. 210845
    mpritikin@millerbarondess.com
3   BRIAN PROCEL, State Bar No. 218657
    bprocel@millerbarondess.com
4   **MILLER BARONDESS, LLP**
    1999 Avenue of the Stars, Suite 1000
5   Los Angeles, California 90067
    Telephone:     (310) 552-4400
6   Facsimile:     (310) 552-8400

7   [Proposed] Special Litigation Counsel for the Debtors in Possession and Steven M.
    Speier, the Chapter 11 Trustee
8
9   PAUL J. COUCHOT, State Bar No. 131934
    pcouchot@winthropcouchot.com
10  PETER W. LIANIDES, State Bar No. 160517
    plianides@winthropcouchot.com
11  **WINTHROP COUCHOT, P.C.**
    660 Newport Center Drive, Fourth Floor
12  Newport Beach, CA 92660
    Telephone:     (949) 720-4100
13  Facsimile:     (949) 720-4111

14  General Insolvency Counsel for the Debtors in Possession and
    [Proposed] General Insolvency Counsel for Steven M. Speier, the Chapter 11 Trustee
15
16  ### UNITED STATES BANKRUPTCY COURT
    ### CENTRAL DISTRICT OF CALIFORNIA -- SANTA ANA DIVISION

17  In re

18  PALMDALE HILLS PROPERTY, LLC, AND ITS
    RELATED DEBTORS,
19              Jointly Administered Debtors and
20              Debtors-in-Possession

21  **ADVERSARY PROCEEDING**

22  PALMDALE HILLS PROPERTY, LLC, et al.,

23              Plaintiffs,

24  v.

25  LEHMAN ALI, INC., et al.,

26              Defendants.

27
28

| **CASE NO. 8:08-bk-17206-ES** |
| Jointly Administered With Case Nos. |
| 8:08-bk-17209-ES; 8:08-bk-17224-ES; |
| 8:08-bk-17225-ES; 8:08-bk-17227-ES; |
| 8:08-bk-17230-ES; 8:08-bk-17231-ES; |
| 8:08-bk-17236-ES; 8:08-bk-17240-ES |
| 8:08-bk-17242-ES; 8:08-bk-17245-ES; |
| 8:08-bk-17246-ES; 8:08-bk-17248-ES |
| 8:08-bk-17249-ES; 8:08-bk-17404-ES; |
| 8:08-bk-17407-ES; 8:08-bk-17408-ES; |
| 8:08-bk-17409-ES; 8:08-bk-17458-ES; |
| 8:08-bk-17465-ES; 8:08-bk-17470-ES; |
| 8:08-bk-17472-ES; 8:08-bk-17573 ES |
| 8:08-bk-17574 ES; 8:08-bk-17575 ES; |
| 8:08-bk-17588-ES |

**Adversary No. 8:09-ap-01005-ES**

**Chapter 11 Proceeding**

**NOTICE OF DEPOSITION OF PERSON
MOST KNOWLEDGEABLE AT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

---

33857.1

**NOTICE OF DEPOSITION OF JPMORGAN CHASE & COMPANY**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JPMORGAN CHASE & COMPANY AND
SUBPOENA DUCES TECUM FOR
PRODUCTION OF DOCUMENTS**

Date:          April 17, 2009
Time:          10:00 a.m.
Location:    1999 Avenue of the Stars
                   10th Floor
                   Los Angeles, CA 90067

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

33857.1

1    **PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 30(b) and 45,

2    and Federal Rules of Bankruptcy Procedure 7026, 7030, 9014 and 9106, Plaintiffs Palmdale Hills

3    Property, LLC, SunCal Beaumont Heights, LLC, SCC/Palmdale, LLC, SunCal Johannson Ranch,

4    LLC, SunCal Summit Valley, LLC, SunCal Emerald Meadows LLC, SunCal Bickford Ranch, LLC,

5    Acton Estates, LLC, Seven Brothers LLC, SJD Partners, Ltd., SJD Development Corp., Kirby

6    Estates, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Communities LLC,

7    North Orange Del Rio Land, LLC, Tesoro SF, LLC (collectively, the "Debtors in Possession"); and

8    Steven M. Speier, the Chapter 11 Trustee on behalf of SunCal Oak Knoll, LLC, LB/L-SunCal Oak

9    Valley, LLC, SunCal Heartland, LLC, LB/L-SunCal Northlake, LLC, SunCal Marblehead, LLC,

10   SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, and SunCal Torrance,

11   LLC (collectively, the "Trustee Debtors"; and together with the Debtors in Possession, the

12   "Debtors") will take the oral deposition of the person or persons designated by JPMorgan Chase &

13   Company as competent to testify on its behalf about the matters described in Exhibit "A" attached

14   hereto. Pursuant to Rule 30(b)(6), JPM shall designate one or more agent(s), representative(s) or

15   other person(s) who consent to testify on its behalf and, for each person designated, shall specify the

16   matters on which the person will testify.

17        The deposition shall commence at 10:00 a.m. (PST) on April 17, 2009 at the offices of Miller

18   Barondess LLP, 1999 Avenue of the Stars, Suite 1000, Los Angeles, CA 90067. The deposition will

19   be taken upon oral examination before an official authorized by law to administer oaths. Pursuant to

20   Rule 30(b)(3), testimony will be recorded stenographically, including recording by instant visual

21   display of the testimony; and may be videotaped.

22   //

23   //

24   //

25   //

26   //

27   //

28   //

1

33857.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    **NOTICE IS FURTHER GIVEN** that the deponent(s) is/are requested to produce the

2    documents described in Exhibit "B" attached hereto at or prior to the deposition.

3

4    Dated: April 6, 2009                    Respectfully Submitted,

5                                            MILLER BARONDESS, LLP

6

7                                            By:_____

8                                            Brian A. Procel
                                             [Proposed] Special Litigation Counsel for
9                                            the Debtors in Possession and Steven M.
                                             Speier, the Chapter 11 Trustee

10

11

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400    FAX (310) 552-8400

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2
**NOTICE OF DEPOSITION OF JPMORGAN CHASE & COMPANY**

33857.1

# EXHIBIT A

## Exhibit "A"

## DEFINITIONS

1.    "You" or "Your," whether capitalized or not, shall mean JPMorgan Chase & Company and/or any of its current or former companies, affiliates, or subsidiaries, whether wholly or partly owned.

2.    "Debtors" shall mean Palmdale Hills Property, LLC, SunCal Beaumont Heights, LLC, SCC/Palmdale, LLC, SunCal Johannson Ranch, LLC, SunCal Summit Valley, LLC, SunCal Emerald Meadows LLC, SunCal Bickford Ranch, LLC, Acton Estates, LLC, Seven Brothers LLC, SJD Partners, Ltd., SJD Development Corp., Kirby Estates, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Communities LLC, North Orange Del Rio Land, LLC, Tesoro SF, LLC, SunCal Oak Knoll, LLC, LB/L-SunCal Oak Valley, LLC, SunCal Heartland, LLC, LB/L-SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, and/or SunCal Torrance, LLC.

3.    "Suncal" shall mean SCC Acquisitions, Inc ("SCC"), and any entity owned, managed, operated or otherwise affiliated with SCC or its president, Bruce Elieff ("Elieff") including (i) SCC Acquisitions, LLC; (ii) SunCal Management, LLC; (iii) the "Debtors"; and/or (iv) SunCal Communities II, LLC, SCC/Oak Valley, LLC, SCC/Northlake, LLC, SunCal Delta Coves LLC; SCC JV Ventures LLC (collectively, the "SunCal Equity Members").

4.    "Lehman" shall mean Lehman Brothers Holdings, Inc., Lehman Brothers, Inc., Lehman ALI, Inc., Lehman Commercial Paper, Inc., OVC Holdings, LLC, Northlake Holdings LLC, LV Pacific Point, LLC, Lehman Re, Ltd., and/or any of their past or present "Representatives" as defined herein, including any employees, attorneys, agents, representatives, affiliates, companies, subsidiaries, and all other persons acting or purporting to act on their behalf.

5.    "Projects" shall mean any of the land, any developments or improvements thereon, and any fixtures, easements, entitlements, rights, or appurtenances thereto, owned by any of the Debtors, or in which SunCal has an equity interest, and which are commonly known as, and are located in, respectively:

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1   (1)     Acton Estates, located in Acton, California;

2   (2)     Beaumont Heights, located in Beaumont, California;

3   (3)     Bickford Ranch, located in Placer County, California;

4   (4)     Del Amo, located in Torrance, California;

5   (5)     Delta Coves, located in Bethel Island, California;

6   (6)     Emerald Meadows, located in Riverside County, California;

7   (7)     Heartland, located in Beaumont, California;

8   (8)     Johannson Ranch, located in Modesto, California;

9   (9)     Joshua Ridge II, located in Victorville, California;

10  (10)    Marblehead, located in San Clemente, California;

11  (11)    Del Rio, located in Orange, California;

12  (12)    Northlake, located in Castaic, California;

13  (13)    Oak Knoll, located in Oakland, California;

14  (14)    Oak Valley, located in Beaumont, California;

15  (15)    Palm Springs Village, located in Palm Springs, California;

16  (16)    Ritter Ranch, located in Palmdale, California;

17  (17)    Summit Valley, located in Hesperia, California;

18  (18)    Tesoro Burnham, located in Los Angeles, California;

19  (19)    10000 Santa Monica Boulevard, located in Century City, California;

20  and shall also include the property known as "Pacific Point," or "San Juan Pacifica," located in San

21  Juan Capistrano, and formerly owned by Debtor SJD Partners, Inc.

22      6.      "Loans" shall mean any of the following loans made pursuant to any of the following

23  agreements (each, a "Loan Agreement" and collectively, the "Loan Agreements"):

24          (1) the $30,000,000 loan made pursuant to the May 25, 2005 Promissory Note

25      Secured by a Deed of Trust by and among SunCal Bickford Ranch, LLC, as borrower, and

26      Lehman ALI, Inc., as lender, relating to the Bickford Ranch Project;

27          (2) the $100,000,000 loan made pursuant to the September 9, 2005 Term Loan and

28      Revolving Line of Credit Loan Agreement between LB/L SunCal Northlake, LLC, as

4