MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

borrower, and Northlake Holdings, LLC, as agent and lender, relating to the Northlake Project;

(3) the $395,313,713.37 loan made pursuant to the November 17, 2005 Credit Agreement between SunCal Communities I, LLC and SunCal Communities III, LLC, as borrowers, and Lehman Commercial Paper, Inc., as agent and lender, secured by the Guarantee and Collateral Agreement dated November 17, 2005, made by SunCal Communities I, LLC, SunCal Communities III, LLC, SunCal Emerald Meadows, LLC, SunCal Bickford Ranch, LLC, Acton Estates, LLC and SunCal Summit Valley, LLC in favor of Lehman Commercial Paper, Inc. which references the Bickford Ranch Project, the Acton Project, and the Emerald Meadows Project, and is secured by a pledge of equity interests in the Summit Valley Project, the Beaumont Heights Project, the Johannson Ranch Project, the Emerald Meadows Project, and the Bickford Ranch Project;

(4) the $120,000,000 loan made pursuant to the May 23, 2006 Term Loan and Revolving Line of Credit Loan Agreement between LB/L – Suncal Oak Valley LLC, as borrower, and OVC Holdings, LLC, as agent and lender, relating to the Oak Valley Project;

(5) the $120,000,000 loan made pursuant to the August 11, 2006 Loan Agreement between SunCal Century City LLC, as borrower, and Lehman ALI, Inc., as agent and lender, relating to the 10000 Santa Monica Project;

(6) the $167,700,000 loan made pursuant to the November 30, 2006 Loan Agreement between Lehman SunCal Real Estate Holdings LLC, SunCal Torrance Properties LLC and SunCal Oak Knoll, LLC, as borrowers, and Lehman ALI, Inc., as agent and lender, in the relating to the Oak Knoll and Del Amo Projects;

(7) the $264,000,000 loan made pursuant to the February 8, 2007 Credit Agreement between SCC/Palmdale LLC, as borrower, and Lehman Commercial Paper, Inc., as agent and lender, relating to the Ritter Ranch Project;

(8) the $90,000,000 loan made pursuant to the February 12, 2007 Term Loan and Revolving Line of Credit Agreement between SunCal PSV LLC, as borrower, and Lehman ALI, Inc., as agent and lender, relating to the Palm Springs Village Project;

1        (9) the $95,000,000 loan made pursuant to the March 30, 2007 Mezzanine Credit

2 Agreement between Lehman Brothers, Inc., as arranger, SCC/Palmdale LLC, as lender, and

3 Lehman Commercial Paper, Inc., as agent and lender, relating to the Ritter Ranch Project.

4        (10) the $236,000,000 loan made pursuant to the April 20, 2007 Amended and

5 Restated Loan Agreement between Delta Coves Venture LLC, as borrower, and Lehman

6 ALI, Inc., as agent and lender, relating to the Delta Coves Project;

7        (11) the $316,061,300 loan made pursuant to the October 3, 2007 Second Amended

8 and Restated Term Loan and Revolving Line of Credit Loan Agreement between SunCal

9 Marblehead Heartland Master LLC, SunCal Marblehead LLC, and SunCal Heartland, LLC,

10 as borrowers, and Lehman ALI, Inc., as agent and lender, in the amount of $316,061,300

11 relating to the Marblehead and Heartland Projects; and

12        (12) the $20,000,000 loan made pursuant to the October 31, 2007 Loan Agreement

13 between SCC Acquisitions, LLC as borrower, and Lehman ALI, Inc., as lender, secured by a

14 Subsidiary Guaranty made by SCC Communities, LLC, Tesoro SF, LLC and North Orange

15 Del Rio Land, LLC in favor of Lehman ALI, Inc. which Subsidiary Guaranty references

16 deeds of trust for the Joshua Ridge Project and the Tesoro Burnham Project and an

17 assignment of CFD proceeds from North Orange Del Rio Land, LLC.

18

19 ### MATTERS UPON WHICH WITNESS IS TO BE EXAMINED

20     1.     Any secured or unsecured interest in the Projects pledged as collateral or otherwise

21 assigned or transferred by Lehman to You, pursuant to any "repo," loan, or other agreement between

22 Lehman and You.

23     2.     Any first priority deeds of trust in the Projects pledged as collateral or otherwise

24 assigned or transferred by Lehman to You, pursuant to any "repo," loan, or other agreement between

25 Lehman and You.

26     3.     Any interest in the Loans pledged as collateral or otherwise assigned or transferred by

27 Lehman to You, pursuant to any "repo," loan, or other agreement between Lehman and You.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

33857.1

4.    Any interest under the Loan Agreements pledged as collateral or otherwise assigned or transferred by Lehman to You, pursuant to any "repo," loan, or other agreement between Lehman and You.

5.    Any assets owned by the Debtors, or in which the Debtors have an equity interest, which Lehman pledged as collateral or otherwise assigned or transferred by Lehman to You, pursuant to any "repo," loan, or other agreement between Lehman and You.

6.    Any actions, attempts, or efforts by You to collect, claim, or demand from Lehman in any interests it has in the Loans, the Projects, under the Loan Agreements, or in any assets of the Debtors.

7.    Any "repo," pledge collateral, or any other agreements between You and Lehman that refer or relate to the Projects, the Debtors, the Loans, or the Loan Agreements.

8.    Any litigation or other disputes between You and Lehman over agreements regarding, rights to or interests in the Loans, Projects, Loan Agreements, or assets or interests of the Debtors.

9.    Any negotiations between You and Lehman concerning agreements regarding, rights to or interests in the Loans, Projects, Loan Agreements, or assets or interests of the Debtors.

33857.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

# EXHIBIT B

Exhibit "B"


## DEFINITIONS

1.    All definitions from Exhibit "A" above are incorporated herein.

2.    "Communication," whether capitalized or not, shall mean any and all contact or act by which any information or knowledge is transmitted or conveyed between two persons, whether oral, written, telephonic, electronic (including e-mail or voicemail), or implied in fact (i.e., nonverbal).

3.    A "Communication between You" and any other party refers to Communications involving any of Your past or present officers, directors, employees, agents, attorneys, financial advisors, investment bankers, or accountants or other authorized representatives, including but not limited to a representative acting or purporting to act on Your behalf or at Your request or instruction.

4.    "Concerning," whether capitalized or not, shall mean relating to, referring to, describing, evidencing, or constituting.

5.    "Document," whether capitalized or not, is intended to be read and understood no less broadly than the term is used in Federal Rule of Civil Procedure 34(a), and shall mean any recording of information in whatever form, including, but not limited to, memoranda, correspondence, e-mails, personal notes, spreadsheets, databases, work papers, telephone logs, calendars, plan books, diaries, journals and daily records of activity, drawings, graphs, charts, maps, photographs, video and/or audio recordings, and other data compilations from which information can be obtained or translated (with or without the use of detection devices), including electronic files, records, and archives.  For purposes of these requests, a document which is a copy of another document is intended to be separately requested if the copy differs in any way by virtue of any changes, additions, redactions, annotations or recipients.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1

33857.1

## INSTRUCTIONS

1.    If any information called for by any discovery request is withheld because you claim that such information is privileged, a written list is to be furnished identifying each such document for which the privilege is claimed together with the following information:  (a) the date of the document; (b) the name(s) of its author(s) or preparer(s) and an identification, by employment and title, of each such person; (c) the name of each person who was sent or furnished with the document, together with an identification of such person; (d) a brief description of the document; (e) a statement of the basis for the claim of privilege; and (f) the number or numbers of this request to which the document relates.  In the case of privileged documents relating to meetings or to other conversations, all participants in the meeting or conversation are to be identified.

2.    If you object to fully identifying a document or oral communication because of a privilege, you must nevertheless provide the following information, unless divulging the information would disclose the privileged information:  (a) the nature of the privilege claimed (including work product); (b) if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked; (c) the date of the document or oral communication; (d) if a document:  its type (correspondence, memorandum, facsimile, etc.), custodian, location and such other information sufficient to identify the document for a subpoena *duces tecum* or a document request, including where appropriate the author, the addressee and, if not apparent, the relationship between the author and addressee; (e) if an oral communication:  the place where it was made, the names of the persons present while it was made and, if not apparent, the relationship of the persons to the declarant; and (f) the general subject matter of the document or oral communication.

3.    The information sought in these requests includes materials in your possession, custody or control.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

33857.1

1

## DOCUMENTS TO BE PRODUCED

2

1.    All Documents Concerning the Projects, Loans, Loan Agreements, Debtors, or assets

of the Debtors.

2.    All Communications between You and Lehman Concerning the Projects, Loans, Loan

Agreements, the Debtors or the assets of the Debtors.

3.    All Documents that refer, relate to or evidence Communications between You and

Lehman Concerning the Projects, Loans, Loan Agreements, the Debtors or the assets of the Debtors.

4.    All Documents Concerning any secured or unsecured interest you have or purport to

have in the Projects, Loans, Loan Agreements, the Debtors or the assets of the Debtors.

5.    All Documents concerning "repos," pledges of collateral or other transfer or

assignment by Lehman to You of any of its rights or interests in the Projects, Loans, Loan

Agreements, or assets of the Debtors.

6.    All Documents Concerning demands or claims made by you against Lehman

regarding any of its rights or interests in the Projects, Loans, Loan Agreements, or assets of the

Debtors.

7.    All Documents Concerning litigation between You and Lehman regarding or relating

to the Projects, Loans, Loan Agreements, the Debtors, or assets of the Debtors.

8.    All Documents Concerning negotiations between You and Lehman regarding or

relating to the Projects, Loans, Loan Agreements, the Debtors, or assets of the Debtors.

9.    All "repo" agreement, collateral pledge agreements, or other agreements between

You and Lehman that refer or relate to the Projects, Loans, Loan Agreements, the Debtors, or assets

of the Debtors.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

33857.1

# PROOF OF SERVICE

STATE OF CALIFORNIA,       )
                                 )     SS.
COUNTY OF LOS ANGELES   )

      I am a citizen of the United States and employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and not a party to the within action. I am employed by MILLER BARONDESS, LLP and my business address is 1999 Avenue of the Stars, Suite 1000, Los Angeles, California 90067.

      On **April 6, 2009**, I served ☐ the original ☒ a true copy of the within document(s) described as **SUBPOENA IN AN ADVERSARY PROCEEDING** on all interested parties in this action:

☐    **PERSONAL DELIVERY:** I caused such envelope to be delivered by hand to the offices of the above named addressee(s).

☒    **BY MAIL:** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐    **BY OVERNIGHT DELIVERY SERVICE:** I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☐    **BY FACSIMILE:** I caused such envelope to be delivered via facsimile to the offices of the addressee(s) at the facsimile numbers listed below. I certify that said transmission was completed and that all pages were received and that a report was generated by the facsimile machine which confirms said transmission and receipt.

☐    **BY ELECTRONIC MAIL:** by transmitting via electronic mail a true copy of the above listed document(s) to the email addresses set forth below on this date before 5:00 p.m.:

☐    **(State)**   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒    **(Federal)**  I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made.

Executed on **April 6, 2009**, at Los Angeles, California.

Carole Conklin
Type or Print Name

_Carole Conklin_
Signature

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1        **<u>SERVICE LIST</u>**

2

3    Richard N. Pachulski, Esq.
     Dean A. Ziehl, Esq.
     Shirley S. Cho, Esq.

4    Pachulski Stang Ziehl & Jones LLP
     10100 Santa Monica Boulevard, 11th Floor

5    Los Angeles, CA 90067-4100
     Telephone:      (310) 277-6910

6    Facsimile:      (310) 201-0760

7    Edward Soto, Esq.
     Shai Waisman, Esq.

8    WEIL, GOTSHAL & MANGES LLP
     767 Fifth Avenue

9    New York, NY 10153-0119
     Telephone:      (212) 310-8000

10   Facsimile:      (212) 310-8007

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

PROOF OF SERVICE

34019.1

# EXHIBIT J

## WEIL, GOTSHAL & MANGES LLP

1395 BRICKELL AVENUE
SUITE 1200
MIAMI, FLORIDA 33131
(305) 577-3100
FAX: (305) 374-7159

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MUNICH
NEW YORK
PARIS
PRAGUE
SILICON VALLEY
SINGAPORE
WARSAW
WASHINGTON, D.C.

April 15, 2009

EDWARD SOTO
DIRECT LINE (305) 577-3177
E-MAIL: edward.soto@weil.com

**VIA E-MAIL AND U.S. MAIL**

Louis R. Miller, Esq.
Miller Barondess, LLP
1999 Avenue of the Stars
Suite 1000
Los Angeles, California 90067

    Re:   Santa Ana Bankruptcy Cases

Dear Mr. Miller:

We are in receipt of your letter dated March 26, 2009. We reject the various allegations and innuendo contained in your letter. However, rather than engage in an unproductive exchange of posturing letters, in the spirit of cooperation we are happy to provide you with the information set forth below in response to your letter.

As to your first request, please be advised that each of the following properties serve as collateral (either through deeds of trust directly encumbering such properties or otherwise through direct or indirect pledges of membership interests in the project-owning entities) for loans which are subject to a repurchase agreement with a counterparty (the "Repo Loans"):

    Acton Ranch
    Emerald Meadows
    Ritter Ranch
    Bickford Ranch
    Beaumont Heights
    Summit Valley
    Johannson Ranch
    Oak Valley Champions
    Northlake
    Palm Springs Village
    10000 Santa Monica

MII:\207164\11\4F56K11!.DOC\58399.0003

WC000272

WEIL, GOTSHAL & MANGES LLP

Louis R. Miller, Esq.
April 15, 2009
Page 2

> Delta Coves
> Marblehead
> Heartland
> Pacific Point

The various counterparties under the repurchase agreements, namely Lehman Re Ltd. (Pacific Point), Danske Bank, London Branch (10000 Santa Monica) and Fenway Capital Funding, LLC (all other Repo Loans), and JPMorgan Chase, which you subpoenaed, may claim some interest in certain of the Repo Loans. In fact, Danske Bank has taken an assignment of the Repo Loan secured by 10000 Santa Monica and has raised defenses to the credit bid motion in certain of the pending cases.

Your letter states that "[i]nformation has come to light" regarding the Repo Loans. As you informed us, you have already served a "Notice of Deposition of Person Most Knowledgeable at JPMorgan Chase & Company and Subpoena Duces Tecum for Production of Documents." We would appreciate the reciprocal favor of your providing us with the "information" in your possession.

As to your second request, the parties have had initial Rule 26(f) conferences and are in the process of addressing discovery issues, including the appropriate level of discovery and the information that will be produced in connection with those efforts. We look forward to working with you to address these issues in the context of that discovery process, as appropriate.

Sincerely,

*Ed Soto*

Edward Soto

cc:

> Paul J. Couchot, Esq.
> Alan J. Friedman, Esq.
> Lei Lei Wang Ekvall, Esq.
> Steven N. Speier
> Bruce V. Cook, Esq.
> W. Michael Bond, Esq.
> Richard Pachulski, Esq.
> Dean A. Ziehl, Esq.
> Nellie P. Camerik, Esq.
> Shai Y. Waisman, Esq.

MI1:\207164\11\4F%K111.DOC\58399.0003

WC000273

# EXHIBIT K

1  Richard M. Pachulski (CA Bar No. 90073)
   Dean A. Ziehl (CA Bar No. 84529)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 11th Floor
3  Los Angeles, California 90067-4100
   Telephone: (310) 277-6910
4  Facsimile: (310) 201-0760

5  WEIL, GOTSHAL & MANGES LLP
   Edward Soto (admitted *pro hac vice*)
6  Shai Waisman (admitted *pro hac vice*)
   767 Fifth Avenue
7  New York, New York 10153-0119
   Telephone: (212) 310-8000
8  Facsimile: (212) 310-8007

9  Attorneys for Lehman ALI, Inc., Lehman Commercial Paper
   Inc., Northlake Holdings LLC and OVC Holdings LLC
10

11            UNITED STATES BANKRUPTCY COURT
              CENTRAL DISTRICT OF CALIFORNIA
12                  SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No.: 8:08-bk-17206-ES |
| Palmdale Hills Property, LLC, and its Related Debtors. | Jointly Administered with Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574-ES; 8:08-bk-17575-ES |
| Jointly Administered Debtors and Debtors-in-Possession | |
| Affects: | |
| ☐ All Debtors | |
| ☐ Palmdale Hills Property, LLC | **SURREPLY TO DEBTORS' REPLY RE** |
| ☐ SunCal Beaumont Heights, LLC | **SUPPLEMENT TO DEBTORS' MOTION** |
| ☐ SCC/Palmdale, LLC | **FOR ORDER: (1) APPROVING OVERBID** |
| ☐ SunCal Johannson Ranch, LLC | **PROCEDURES IN CONNECTION WITH** |
| ☐ SunCal Summit Valley, LLC | **PROPOSED SALE OF SUBSTANTIALLY** |
| ☐ SunCal Emerald Meadows, LLC | **ALL ASSETS OF THE DEBTORS'** |
| ☐ SunCal Bickford Ranch, LLC | **ESTATES; (2) APPROVING BREAK-UP** |
| ☐ Acton Estates, LLC | **FEE; (3) DISALLOWING CREDIT BIDS** |
| ☐ Seven Brothers, LLC | **RIGHTS OF DISPUTED SECURED** |
| ☐ SJD Partners, Ltd. | **CREDITORS, LEHMAN ALI, INC.,** |
| ☐ SJD Development Corp. | **NORTHLAKE HOLDINGS AND OVC** |
| ☐ Kirby Estates, LLC | **HOLDINGS; AND (4) SETTING** |
| ☐ SunCal Communities I, LLC | **HEARING ON APPROVAL OF SALE OF** |
| ☐ SCC Communities LLC | **ASSETS** |
| ☐ SunCal Communities III, LLC | |
| ☐ North Orange Del Rio Land, LLC | Date: July 28, 2009 |
| ☐ Tesoro SF, LLC | Time: 10:00 a.m. |
| ☒ LBL-SunCal Oak Valley, LLC | Place: Courtroom 5A |
| ☒ SunCal Heartland, LLC | |
| ☒ LBL-SunCal Northlake, LLC | |

US_ACTIVE:\43113745\05\43113745_5.DOC\

| | |
|---|---|
| ☒ SunCal Marblehead, LLC<br>☒ SunCal Century City, LLC<br>☒ SunCal PSV, LLC<br>☒ Delta Coves Venture, LLC<br>☒ SunCal Torrance, LLC<br>☒ SunCal Oak Knoll, LLC | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

1

**TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES ................................................................................ ii

3    I.   PRELIMINARY STATEMENT ................................................................ 1

4    II.   ARGUMENT ........................................................................................ 3

5       A.   The Debtors' Equitable Subordination Arguments Fall Short ................................ 3

6         1. The Debtors' New Evidence and Argument Does Not Establish
7           A Bona Fide Dispute as to Equitable Subordination. ........................... 3

8         2. Section 510(c)(2) Does Not Create a Bona Fide Dispute as to the
          Validity of a Secured Creditors' Lien ................................................ 6

9       B.   The Lehman Lenders Filed the Proofs of Claim as Fenway's Authorized
10         Agents ................................................................................................ 7

11       C.   The Debtors' Fraudulent Transfer Arguments Do Not Create a Bona Fide
        Dispute ................................................................................ 13

12    CONCLUSION ................................................................................ 15

1

## TABLE OF AUTHORITIES

2

### CASES

3       *Ford v. Feldman (In re Florida Bay Trading Co.)*,
            177 B.R. 374 (Bankr. M.D. Fla. 1994) ...................................................................6
4

5       *Gilliam v. Nevada Power Co.*,
            488 F.3d 1189 (9th Cir. 2007) ............................................................................8

6       *Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortgage Co.)*,
            471 F.3d 977 (9th Cir. 2006) ...........................................................................5, 6
7

8       *In re County of Orange*,
            219 B.R. 543 (Bankr. C.D. Cal. 1997)...............................................................6

9       *In re Dewey Ranch Hockey, LLC*,
            2009 WL 1702767 (Bankr. D. Ariz. June 15, 2009) ..........................................5
10

11      *In re GWLS Holdings, Inc.*,
            2009 WL 453110 (Bankr. D. Del. Feb. 23, 2009) ...........................................11

12      *In re Octagon Roofing*,
            123 B.R. 583 (Bankr. N.D. Ill. 1991) ..............................................................13
13

14      *In re Pacific Exp., Inc.*,
            69 B.R. 112, (9th Cir. BAP 1986) .....................................................................6

15      *In re Vortex Fishing Systems, Inc.*,
            277 F.3d 1057 (9th Cir. 2002) ...................................................................3, 5, 14
16

17      *Liebowitz v. Columbia Packing Co.*,
            56 B.R. 222 (D.C. Mass. 1985) .........................................................................6

18      *McKnight v. Torres*,
            563 F.3d 890 (9th Cir. 2009) ............................................................................9
19

20      *North Fork Bank & Trust Co. v. Romet Corp.*,
            192 A.D. 2d 591 (N.Y. App. Div. 1993) ...........................................................8

21      *Slefco v. First Nat'l Bank of Stuttgart (In re Slefco)*,
            107 B.R. 628 (Bankr. E.D. Ark. 1989) ..............................................................6
22

23      *Stevens v. Stevens*,
            11 A.D.3d 791 (N.Y. App. Div. 2004) ...............................................................9

24

25                                              ### RULES

26      FED. R. BANK. P. 3001(b)..............................................................................................7, 8

27

28

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATUTES

11 U.S.C. § 502(d) ...........................................................................................................15

11 U.S.C. § 506(d) .............................................................................................................7

11 U.S.C. § 510(c)(2) ................................................................................................6, 7, 12

11 U.S.C. § 547 ................................................................................................................14

11 U.S.C. § 548 .........................................................................................................14, 15

11 U.S.C. § 551 .................................................................................................................7

## MISCELLANEOUS

11 Williston on Contracts § 31:5 (4th ed. 1999) ...............................................................8

*Development in Lender Liability: Four Causes of Action, a Theory of Damages,
   and a Defense*, SM014 ALI-ABA 231 (March 29-31, 2007).........................................6, 7

*Romeo and Juliet*, Shakespeare The Complete Works, Act II (G.B. Harrison, ed.,
   Harcourt Brace Jovanovich, Inc., 1968.............................................................................4

iii

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATE BANKRUPTCY JUDGE, ALL INTERESTED PARTIES AND THE UNITED STATES TRUSTEE:**

Lehman ALI, Inc. ("ALI"), Lehman Commercial Paper Inc. ("LCPI"),[1] Northlake Holdings LLC ("Northlake Holdings") and OVC Holdings LLC ("OVC Holdings" and, collectively with ALI, LCPI and Northlake Holdings, the "Lehman Lenders") hereby respectfully submit this Surreply to the Debtors' Reply Re Supplement to Debtors' Motion for Order (1) Approving Overbid Procedures In Connection with Proposed Sale of Substantially all Assets of the Debtors' Estates; (2) Approving Break-up Fee; (3) Disallowing Credit Bids Rights of Disputed Secured Creditors, Lehman ALI, Inc., Northlake Holdings and OVC Holdings; and (4) Setting Hearing on Approval of Sale of Assets (the "Credit Bid Reply") filed by Palmdale Hills Property, LLC and the related debtors identified therein (collectively, the "Debtors"[2]) in order to address numerous mischaracterizations of the facts and the law.

## I.

## PRELIMINARY STATEMENT

In their Credit Bid Reply, the Debtors continue to ignore two key facts which are fatal to their attempt to prohibit the Lehman Lenders from credit bidding. First, the Lehman Lenders did

---

[1]     Although Debtors' Motion for Order: (1) Approving Overbid Procedures in Connection with Proposed Sale of Substantially All Assets of the Debtors' Estates; (2) Approving Break-up Fee; (3) Disallowing Credit Bids Rights of Disputed Secured Creditors, Lehman ALI, Inc., Northlake Holdings and OVC Holdings; and (4) Setting Hearing on Approval of Sale of Assets [D.E. 125] (the "Motion") and the Supplement to Debtors' Motion for Order: (1) Approving Overbid Procedures in Connection with Proposed Sale of Substantially All Assets of the Debtors' Estates; (2) Approving Break-up Fee; (3) Disallowing Credit Bids Rights of Disputed Secured Creditors, Lehman ALI, Inc., Northlake Holdings and OVC Holdings; and (4) Setting Hearing on Approval of Sale of Assets [D.E. 364] (the "Supplement") do not seek to disallow LCPI's right to credit bid, the arguments set forth in therein apply with equal force to LCPI.  As a result, LCPI respectfully joins this Surreply to the Debtors' Reply Re Supplement to Debtors' Motion for Order (1) Approving Overbid Procedures In Connection with Proposed Sale of Substantially all Assets of the Debtors' Estates; (2) Approving Break-up Fee; (3) Disallowing Credit Bids Rights of Disputed Secured Creditors, Lehman ALI, Inc., Northlake Holdings and OVC Holdings; and (4) Setting Hearing on Approval of Sale of Assets (the "Surreply").

[2]     The "Debtors," for purposes of this Surreply, consist of LB/L – SunCal Oak Valley, LLC, SunCal Heartland, LLC, LB/L – SunCal Northlake LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC, SunCal Torrance, LLC, Delta Coves Venture, LLC, SunCal Oak Knoll, LLC (collectively, the "Trustee Debtors") and SCC Communities LLC, North Orange Del Rio Land, LLC and Tesoro SF, LLC (collectively, the "Voluntary Debtors").

US_ACTIVE:\43113745\05\43113745_5.DOC\.

1    not sell their entire interest in the loans at issue to Fenway. Instead, they sold the term loan

2    portion of those loans, and remained the lender for millions of dollars under the revolving lines of

3    credit. Second, the Debtors ignore the fact that the Loan Agreements authorize the Lehman

4    Lenders to act as agents and that the authorization included the right to file proofs of claim.

5

6        Throughout their Credit Bid Reply, the Debtors refer to the deposition testimony of Irena

7    Goldstein.[3]  Yet, when discussing Ms. Goldstein's testimony regarding the Lehman Lenders'

8    authorization to act as Fenway's agent, the Debtors do not quote a single passage from Ms.

9    Goldstein's deposition transcript. By omitting Ms. Goldstein's actual testimony from their Credit

10   Bid Reply, the Debtors apparently hope the Court will accept their mischaracterizations without

11   further question. For example, the Debtors would have this Court believe that "Ms. Goldstein

12   never testified to any express manifestation by Fenway that the Lehman Entities could file proofs

13   of claims on Fenway's behalf prior to their doing so." Credit Bid Reply at 22. In actuality, Ms.

14   Goldstein testified that Fenway authorized the Lehman Lenders to act as its agent and that

15   authorization included the authority to file proofs of claim. *See* July 17, 2009, Dep. of I.

16   Goldstein (the "Goldstein Dep.") at 88:5-88:10 ("Q. Is it Fenway's position that those loan

17   agreements, those documents, also, other than the one you're looking at there, also authorize

18   Lehman to act as agent on Fenway's behalf in connection with the SunCal bankruptcy? A.

19   Yes.").[4]

20

21

22   ---

[3] Ms. Goldstein's deposition was taken after the Lehman Lenders filed their Objection to Supplement to Debtors'
Motion for Order: (1) Approving Overbid Procedures in Connection with Proposed Sale of Substantially All Assets
of the Debtors' Estates; (2) Approving Break-up Fee; (3) Disallowing Credit Bids Rights of Disputed Secured
Creditors, Lehman ALI, Inc., Northlake Holdings and OVC Holdings; and (4) Setting Hearing on Approval of Sale
of Assets [D.E. 437] (the "Supplement Objection").

[4] *See* Goldstein Dep. at 86:11-86:16 ("Q. Did that express authorization include the authority to file proofs of claim,
more specifically, the proofs of claim that you have seen that were filed as of March 27th, 2009? A. Yes."). A copy
of the transcript is attached as Exhibit 2 to the Declaration of Martin Pritikin in Support of Reply re Supplement to
Debtors' Motion for Order: (1) Approving Overbid Procedures in Connection with Proposed Sale of Substantially all
Assets of the Debtors' Estates; (2) Approving Break-up Fee; (3) Disallowing Credit Bids Rights of Disputed Secured
Creditors, Lehman ALI, Inc., Northlake Holdings and OVC Holdings; and (4) Setting Hearing on Approval of Sale
of Assets.

2

US_ACTIVE:\43113745\05\43113745_5.DOC\

1      Aside from their purposefully inaccurate representation of the facts, the majority of the

2    Credit Bid Reply consists of new evidence and argument. For example, the Debtors submitted

3    nine declarations, totaling over 1400 pages. As such, the Debtors' Credit Bid Reply is a reply in

4    name only. In fact, it is an entirely new motion that, while seeking the same relief as the Motion

5    and Supplement, relies on new evidence and argument. Through this Surreply, the Lehman

6    Lenders have attempted to provide the Court with a summary rebuttal of the Debtors' new

7    arguments. Nevertheless, equity and fairness demand that the Lehman Lenders have a legitimate

8    opportunity to respond to the arguments and evidence raised for the first time the Credit Bid

9    Reply. For that reason, the Lehman Lenders have filed concurrently herewith a request that the

10    Court continue the hearing currently set for July 28, 2009, to provide the Lehman Lenders with an

11    opportunity to respond to the Credit Bid Reply in full.

## II
## ARGUMENT

### A.    The Debtors' Equitable Subordination Arguments Fall Short

#### 1.    The Debtors' New Evidence and Argument Does Not Establish A Bona Fide Dispute as to Equitable Subordination.

    In their Credit Bid Reply, the Debtors dismiss the precedential effect of the Ninth

Circuit's ruling in *In re Vortex Fishing Systems, Inc.,* by arguing that they submitted "evidence,"

in the form of Declarations that allegedly support their equitable subordination claim. But the

statements in the Declarations are identical to the allegations of the Second Amended Complaint.

In arguing that "the pages that the Lehman Entities spend in their Objection arguing why the

allegations in the now-superseded Second Amended Complaint ('SAC') are insufficient are a

complete waste," the Debtors missed the point. Since the allegations, which the Court assumed

were true in ruling on the Lehman Lenders' motion to dismiss, were insufficient to state a claim

for subordinating the Lehman Lenders' claims, they are clearly insufficient to strip the Lehman

3

US_ACTIVE:\43113745\05\43113745_5.DOC\

1    Lenders of their liens.[5]  Just as "a rose by any other name would smell as sweet,"[6] the Debtors'

2    allegations, now called "declarations," are still insufficient to create a bona fide dispute.

3        Additionally, the Debtors' Declarations mischaracterize certain key facts.  For example,

4    in his declaration, Mr. Couchot states, with respect to the Debtors' Cash Collateral Motion: "the

5    only loan purportedly secured by the cash the Debtors were seeking to use was the Ritter Ranch

6

7    Loan, a Sold Loan." Couchot Declaration at ¶ 16.[7]  Despite that sweeping statement, a review of

8    the Ritter Ranch Loan Agreement shows that there are two parts to the Ritter Ranch Loan, a term

9    loan and a revolving line of credit.[8]  As part of the transactions under the repurchase agreement,

10   LCPI provided Fenway with confirmations of the loans that were sold.  *See* Dedyo Declaration at

11   Exhibit 1.[9]  The Ritter Ranch confirmation, which along with the other confirmations were

12

13   produced to the Debtors on April 22, 2009, clearly states that only the Ritter Ranch term loan was

14   transferred to Fenway.[10]  As a result, LCPI remained the lender on the revolving line of credit,

15   which consisted of millions of dollars worth of loans secured by the cash collateral the Debtors

16

17   ---
18   [5] Likewise the purported inequitable conduct that the Debtors allege occurred post-petition would only be inequitable if the LCPI were not entitled to invoke the automatic stay.  As set forth below, however, Lehman did not, as the Debtors allege, sell its entire interest in the loans at issue to Fenway and therefore was entitled to invoke its automatic stay.

19   [6] William Shakespeare, *Romeo and Juliet*, Shakespeare The Complete Works, Act II, sc. ii, 43-44, p. 484, (G.B.
20   Harrison, ed., Harcourt Brace Jovanovich, Inc., 1968).

21   [7] The Ritter Ranch Loan Agreement is attached as Exhibit 13 to the Declaration of James Hill in Support of Lehman ALI, Inc.'s, Northlake Holdings LLC's and OVC Holdings LLC's Objection to Supplement to Debtors Motion for Order: (1) Approving Overbid Procedures in Connection with Proposed Sale of Substantially All Assets of the Debtors' Estates; (2) Approving Break-up Fee; (3) Disallowing Credit Bids Rights of Disputed Secured Creditors, Lehman ALI, Inc., Northlake Holdings and OVC Holdings; and (4) Setting Hearing on Approval of Sale of Assets [D.E. 442], which was submitted with the Lehman Lenders Supplement Objection.

24   [8] *Id.*, Exhibit 13, at p 27-28.

25   [9] Declaration of John Dedyo in Support of Surreply to Debtors' Reply Re Supplement to Debtors' Motion for Order (1) Approving Overbid Procedures In Connection with Proposed Sale of Substantially all Assets of the Debtors' Estates; (2) Approving Break-up Fee; (3) Disallowing Credit Bids Rights of Disputed Secured Creditors, Lehman ALI, Inc., Northlake Holdings and OVC Holdings; and (4) Setting Hearing on Approval of Sale of Assets.

28   [10] *See id.*, Exhibit 1 at 2.

4

US_ACTIVE:\43113745\05\43113745_5.DOC\.

1  sought to use.  The same holds true for all the other motions filed by the Lehman Lenders and

2  listed in Mr. Couchot's declaration.  The Lehman Lenders remained lenders for the revolver

3  portions for five of the seven loans at issue and were agents for the lenders under the other two.

4  Simply put, Mr. Couchot's statement "that the Lehman Lenders relinquished all right, title and

5  interest in the seven 'Sold Loans'" is false.

6

7          The inherently unreliable nature of allegations and self-serving statements, like

8  those contained in the Debtors' Declarations, is the reason the Ninth Circuit created an objective

9  standard to determine whether a bona fide dispute exists.  Under that standard, this Court is

10  required to "carefully analy[ze] the significant factual and legal history of those disputes."  *In re*

11  *Dewey Ranch Hockey, LLC*, 2009 WL 1702767 (Bankr. D. Ariz. June 15, 2009) (citing *In re*

12  *Vortex Fishing Sys., Inc.*, 277 F.3d 1057 (9th Cir. 2002)).  Careful analysis of the significant

13  factual and legal history of the allegations made by the Debtors requires the Court to explore the

14  merits of the Debtors allegations, even if they are submitted in the form of a Declaration, and not

15  to accept them wholly and blindly.  That exploration and analysis, in turn, requires that the

16  Lehman Entities be afforded an opportunity to defend the merits – in the appropriate

17  proceedings.[11]  Specifically, the nature of the Debtors' allegations, which have yet to state a

18  viable cause of action for equitable subordination and have only been minimally amended in the

19  Third Amended Complaint, as well as their allegations of inequitable post-petition conduct -- all

20  of which are based on the unsupportable presumption that Lehman's ownership interest in

21  outstanding revolver loans at issue in this bankruptcy do not exist – do not rise to the level of

24  gross and egregious conduct necessary to support a finding of equitable subordination.  *See Henry*

25

26  [11] The Debtors question why the Lehman Entities "have not submitted a single declaration from a percipient witness
27  to contradict the Debtors' evidence supporting subordination." Credit Bid Reply at 8.  The answer is
simple: to date, there has been no operative complaint pending against the Lehman Entities for equitable
subordination.  If the Debtors are ever able to state a valid prima facie claim for equitable subordination against the
28  Lehman Entities, the Lehman Entities will show that equitable subordination is not warranted.

5

US_ACTIVE:\43113745\05\43113745_5.DOC\

1  *v. Lehman Commercial Paper, Inc. (In re First Alliance Mortgage Co.)*, 471 F.3d 977, 1006-07

2  (9th Cir. 2006); *In re Pacific Exp., Inc.*, 69 B.R. 112, (9th Cir. BAP 1986).  For this reason, the

3  Debtors' equitable subordination claim does not raise a bona fide dispute.

　　　　　　　**2.　　　Section 510(c)(2) Does Not Create a Bona Fide Dispute as to the**
5  　　　　　　　　　　**Validity of a Secured Creditors' Lien**

6  　　　　　The Debtors argue, without support, that their equitable subordination claims

7  "challenge the validity of the liens pursuant to U.S.C. § 510(c)(2)."  Credit Bid Reply at 9.  But

8  section 510(c)(2) does no such thing.  It is well established that section 510(c) affects the priority
9
10  of a claim or lien and not its validity.  *See Ford v. Feldman (In re Florida Bay Trading Co.)*, 177

11  B.R. 374, 383 (Bankr. M.D. Fla. 1994) ("Subordination relates to the order in which claims have

12  been allowed or are to be paid when the Trustee is paying dividends but does not relate to the

13  validity of the technical legality of a claim.") (citing *Liebowitz v. Columbia Packing Co.*, 56 B.R.

14  222 (D.C. Mass. 1985), *aff'd w/o opp.*, 802 F.2d 439 (1st Cir. 1986)); *In re County of Orange*,
15
16  219 B.R. 543, 557 (Bankr. C.D. Cal. 1997) (citing *Slefco v. First Nat'l Bank of Stuttgart (In re*
17  *Slefco)*, 107 B.R. 628, 644 (Bankr. E.D. Ark. 1989)).  That premise is so well settled that it is

18  included in Collier on Bankruptcy.  *See* Collier on Bankruptcy – 15th Edition Rev. 510.02[1]

19  (2009) ("Subordination is an equitable remedy in which the order of payment rather than the

20  existence of the debt is in issue.").  Moreover, section 510(c)(2) was part of the bankruptcy code

21  when the courts in *Feldman, Liebowitz, County of Orange*, and *Slefco* held that equitable

22  subordination did not challenge the validity of a lien.

23
24  　　　　　Finally, section 510(c)(2) is regarded a remedial measure designed to address the

25  circumstance where all or part of a secured claimant's allowed claim has been subordinated.  In

26  that event, the lien securing that portion of the claim that has been subordinated is *transferred* to

27  the estate to effectuate the remedy afforded by section 510(c)(1), it is not invalidated.  *See*

28  Kenneth Klee, *Developments in Lender Liability: Four Causes of Action, a Theory of Damages,*

6

US_ACTIVE:\43113745\05\43113745_5.DOC\

1    *and a Defense*, SM014 ALI-ABA 231, 252 (March 29-31, 2007) ("In general, the equitable

2    subordination doctrine is limited to reordering distribution priorities and does not permit total

3    disallowance of a claim. In addition to altering the distribution priorities on account of a claim,

4
     where a subordinated claim is secured, Bankruptcy Code § 510(c)(2) permits courts to transfer
5
     any lien securing a subordinated claim to the estate to effectuate the intended remedy."). If the
6
7    lien were not transferred, then the creditor whose claim was subordinated would be able to

8    maintain a senior lien on the collateral thus potentially mooting the subordination of its claim. In

9    this context, transfer of the lien is clearly a remedial, equitable measure designed to avoid an

10   inconsistent result; it clearly does not address whether the lien is valid in the first instance.

11
     Ultimately, equitable subordination is simply not a "dispute" that can be utilized to attack the
12
     validity of a creditor's lien through 510(c)(2).[12]
13

14          For these reasons, the Debtors have not established a bona fide dispute as to

15   Equitable Subordination.

16       **B.    The Lehman Lenders Filed the Proofs of Claim as Fenway's Authorized
                 Agents.**
17
             Under Federal Rule of Bankruptcy Procedure ("FRBP") 3001(b), "the creditor or
18
19   the creditor's authorized agent" may file a proof of claim. The Debtors concede that to be an

20   "authorized agent" under FRBP 3001(b) requires only a manifestation by a principal that the

21   agent may act on his behalf.[13] They argue, however, that the Lehman Lenders are not "authorized

22   agents" because Fenway never manifested its intent for the Lehman Lenders to act on its behalf.[14]

23

24   [12] The Bankruptcy Code clearly distinguishes between lien avoidance and lien transfer. There are circumstances in
     which a lien is "avoided" and then preserved for the benefit of the estate. *See, e.g.*, 11 U.S.C. § 506(d) (providing for
25   voidance of a lien); 11 U.S.C § 551 (providing for preservation for the benefit of the estate of a voided lien).
     Consequently, if Congress intended section 510(c)(2) to void or invalidate a lien, the Bankruptcy Code would have
26   specifically stated as much.

27   [13] *See* Credit Bid Reply at 22 ("The Lehman Entities themselves acknowledge that express authorization requires 'a
     manifestation by a principal that the agent may act on his behalf.'").

28   [14] *Id.*

7

1    Despite their best efforts, the Debtors cannot evade the single determinative fact in this case: the

2    unambiguous terms of the Loan Agreements expressly authorize the Lehman Lenders to act as

3    Fenway's agent.[15]  No further manifestation of intent is necessary.  The law requires that courts

4    enforce contracts according to their terms.[16]  The terms of the Loan Agreements clearly state that

5    the Lehman Lenders are agents for all the lenders.[17]  Agency is a creature of contract, and the

6

7    express terms of the Loan Agreements manifest Fenway's intent to have the Lehman Lenders act

8    as its agent.

9        More specifically, after it purchased interests in the loans governed by the Loan

10   Agreements, Fenway became a lender under the terms of the Loan Agreements.[18]  The Debtors do

11   not dispute that Fenway is a lender under the Loan Agreements.  Because the Loan Agreements

12   create an agency relationship between Fenway and the Lehman Lenders, the Lehman Lenders had

13

14   the right to file the proofs of claim at issue here.  *See* FRBP 3001(b).  Fenway was not, as the

15   Debtors argue, required to sign a separate document agreeing to be bound by the terms of the

16   Loan Agreements.  *See* Credit Bid Reply at 21.

17        Likewise, whether anyone at Fenway reviewed the Loan Agreements before the proofs of

18

19   [15] *See* Supplement Opposition at n.19; *see also* Goldstein Dep. at 87:24-88:10 ("Q ... [Y]ou're aware that each of the
     seven agreements, they contain provisions that in essence authorize a Lehman entity to act as an agent for the lenders

20   under those loan agreements.  A.  Yes.  Q. Is it Fenway's position that those loan agreements, those documents, also,
     other than the one you're looking at there, also authorize Lehman to act as agent on Fenway's behalf in connection

21   with the SunCal bankruptcy?  A.  Yes.").

22   [16] *See, e.g., Gilliam v. Nevada Power Co.*, 488 F.3d 1189 (9th. Cir. 2007) ("[I]t is a familiar principle of contract law
     that unless a contract is voidable, we 'must enforce it as drafted by the parties, according to the terms employed, and

23   may not make a new contract for the parties or rewrite their contract while purporting to interpret or construe it.'")
     (citing 11 Williston on Contracts § 31:5, at 299 (4th ed. 1999)); *North Fork Bank & Trust Co. v. Romet Corp.*, 192

24   A.D. 2d 591, 592 (N.Y. App. Div. 1993) ("It is well settled that courts are to enforce, not rewrite, contracts and they
     may not "by construction add or excise terms, nor distort the meaning of those used.") (internal citations omitted).

25   [17] *See* Supplement Objection at n.14.

26   [18] *See* Supplement Objection at n.21; *see also* Goldstein Dep. at 53:1-7 ("I understand that they are -- that Fenway
     acquired an interest in the loans that the judge has ruled that Fenway is a lender, and I also understand that Lehman is

27   also a lender and from other documents filed in the case, I understand that there may be some other entities that
     acquired interests.").

28

8

1    claim were filed is immaterial. The Debtors spend two pages parsing Ms. Goldstein's testimony

2    only to suggest that she and others at Fenway did not understand that the Lehman Lenders were

3    Fenway's agents under Loans Agreements because they did not review those agreements prior to

4    the filing of the proofs of claim.[19] But Goldstein's and Fenway's subjective understanding cannot

5

6    trump the express terms of the Loan Agreements that create agency relationships between

7    Fenway and the Lehman Lenders. *See, e.g., McKnight v. Torres*, 563 F.3d 890, 893 (9th Cir.

8    2009) ("The unambiguous words of the agreement are the end of the story."; "Accordingly, the

9    parties' uncommunicated subjective intent is irrelevant."); *Stevens v. Stevens*, 11 A.D.3d 791, 792

10   (N.Y. App. Div. 2004) ("Defendant's interpretation of the stipulation, which consists of an

11   unexpressed subjective intent, is insufficient to override its plain language."). Ultimately, the

12   time at which Fenway reviewed the Loan Agreements does not change their terms, and Ms.

13   Goldstein's testimony affirms that simple fact.[20] The express language of the Loan Agreements

14   authorizing the Lehman Lenders to act on Fenway's behalf is not dependent on Fenway's review

15

16   of those documents, and to hold otherwise would impermissibly alter the clear and unambiguous

17   terms of the Loan Agreements.

18   Further, Ms. Goldstein's deposition testimony strengthens Fenway's position that it

19   received written and oral confirmation that Lehman was acting as its authorized agent under the

20   Loan Agreements. First, the Lehman Lenders confirmed their agency in a letter to Fenway dated

21   November 18, 2008.[21] Ms. Goldstein's testimony makes it clear that the November 18, 2008

22

23

---

[19] Credit Bid Reply at 21-22.

[20] Goldstein Dep. at 105:10-105:24 ("Q. So is it your position as Fenway's representative that those loan agreements expressly authorized Lehman to serve as the agent thereunder under their terms? A. Yes. Q. And is it your position as Fenway's representative that that fact is true whether you read those loans in June of 2009 or in June of 2007? A. Yes. Q. When you read it doesn't change that fact. Is that your point? A. Yes.").

[21] *See* July 9, 2009 Declaration at Exhibit B; *see also* Goldstein Dep. at Ex. 5. The November 18, 2008 letter was sent, and Fenway received it well before the proofs of claim were filed. *See* Goldstein Dep. at 31:8-31:20 ("Q. Do you have any knowledge if anyone from Fenway received any documents regarding the SunCal loans prior to the first

9

1  letter informed Fenway that the Lehman Lenders were acting as its agent.

2    Q. Asking you to turn to exhibit 5, the November 18th letter, do you see where it
3    mentions that Lehman is acting as agent?

4    A. Well, yeah. I mean you have to look at this whole letter, including the exhibit.
     If you look at the exhibit to the letter, it identifies the various loans and Lehman is
5    identified, various Lehman entities, as agent and sole lender. And the previous
     page talks about, "we will keep you advised as we proceed on behalf of the lenders
6    under the SunCal loans in this case and any other cases that may be filed." I
     believe you have to just look at it in total.

7  Goldstein Dep. at 60:18-61:9.[22] When pressed by counsel for the Debtors, Ms.

8  Goldstein's testimony remained consistent.

9    Q.   All right.  But the letter doesn't specifically refer to Lehman acting as the
10   authorized agent for Fenway, does it?

11   A.   ... I do disagree with you because I look at this letter as one whole document
     that identifies loans, and they identify themselves as the agent and they tell us that
12   they are going to be proceeding on behalf of the lenders, and there is no reason
     they would be proceeding on behalf of the lenders under the SunCal loans if they
13   weren't the agent.

14  Id. at 64:5-64:22.  In light of the authorization contained in the Loan Agreements, the additional

15  statements in the November 18, 2008 letter are unnecessary to establish the Lehman Lenders'

16  authority to file proofs of claim on Fenway's behalf.  Nevertheless, the November 18, 2008 letter

17  makes it clear that the Lehman Lenders were Fenway's authorized agents.

18    Second, Ms. Goldstein testified that she confirmed the Lehman Lenders' agency through

19  "conversations in February with partners at Weil, Gotshal that Lehman was taking all actions

20  necessary to recover on the loans."  Goldstein Dep. at 95:20-95:24.  Whether Ms. Goldstein

21  expressly stated that the Lehman Lenders were agents during those conversations is irrelevant.

22

23  week of June 2009? A. Yes. Q. And what are those documents? A. They received the letter on November 18th
24  from Lehman Brothers and others advising them that Lehman and these Lehman entities were the agent under the
    agreement, that they were taking actions necessary on behalf of the lenders and that SunCal had filed for
    bankruptcy.").

25  [22] See also, id. at 61:14-62:2 ("Q. ... Do you see anything about that letter that specifically references Lehman's
26  authority to act as agent for Fenway? A. Well, the letter is addressed to Fenway and it identifies loans in which
    Fenway acquired an interest, and they identify themselves as agent and they advise that they will continue to act on
27  behalf of the lenders. So, you know, when I read that, I say okay, Lehman is the agent under these loans that we
    acquired an interest in, that's why they're advising us, otherwise why tell us, and that they are going to be acting on
28  behalf of the lenders, which they would do as agent.").

10

1    The Lehman Lenders' agency already existed; it was created by the Loan Agreements. In her

2    conversations with the Lehman Lenders, Ms. Goldstein, as the principal's representative, was

3    directing the Lehman Lenders, as agents, to act on Fenway's behalf, thereby confirming the pre-

4    existing agency relationship.

5

6        Moreover, the Debtors do not deny that the Loan Agreements' sweeping grant of authority

7    includes the right to file proofs of claim relating to the Loan Agreements. Nor can they. In

8    *GWLS Holdings*, the court held that an agent had the right to enter a credit bid because the

9    contract creating the agency relationship entitled the agent to pursue "all rights and remedies of a

10   secured party under New York UCC or any applicable law."[23] The court concluded that "any

11   applicable law" included "the Bankruptcy Code in general."[24] Similarly, Fenway authorized

12   Lehman to file proofs of claim through the Loan Agreements.[25]

13

14       Finally the Debtors' other challenges to the agency relationship created by the Loan

15   Agreements are unavailing. First, the Debtors contend that, standing alone, a document does not

16   apply to third parties simply because it purports to do so.[26] But this argument ignores the fact that

17   when Fenway purchased interests in the Loan Agreements it became a lender under those

18   agreements and was in no sense a "third party" to those agreements.[27] Second, the Debtors argue

19

20   _____

[23] *In re GWLS Holdings, Inc.*, 2009 WL 453110, *5 (Bankr. D. Del. Feb. 23, 2009).

21   [24] *Id.*

22   [25] *See* Goldstein Dep. at 86:11-86:16 ("Q. Did that express authorization include the authority to file proofs of claim,
23   more specifically, the proofs of claim that you have seen that were filed as of March 27th, 2009? A. Yes.").

24   [26] Credit Bid Reply at 21 n.28.

25   [27] *See* n.18, *supra*. Once again showing their ability to turn on a dime, the Debtors cite to an article written by Martin
26   Bienstock and T. Karcher to support the argument that Fenway is not a bona fide purchaser. In essence, even though
     they argued vehemently a month ago that Lehman sold certain loans, and that Fenway purchased those loans, they
     now cite an article suggesting that the transaction should be treated as an assignment. That argument is one month
27   too late. While the Lehman Lenders continue to believe that the MRA was a transfer for security, and not a sale, the
     Debtors' current position, that the MRA should be treated like an assignment is irreconcilable with their prior
28   statements to the Court. Attached as an exhibit to the Lehman Lenders motion to strike, which is being filed
     concurrently herewith, is a legal article supporting Judge Scheindlin ruling in Enron that bona fide purchaser

11

1    that the Loan Agreements did not create an agency relationship because New York law requires

2    two separate parties to create an agency, and the same Lehman entity acted as the agent and

3    lender under the Loan Agreements.[28]  Putting aside the legal merits of this argument, it is entirely

4    beside the point.  When Fenway became a lender under the Loan Agreements there were

5    undoubtedly two parties, Fenway and the Lehman Lenders.

6

7        Finally, the Debtors argue that, under the Master Repurchase Agreement ("MRA"),

8    LCPI's insolvency terminated the agencies under the Loan Agreements.[29]  But this argument fails

9    because it cannot overcome the fact that the agency under the MRA is distinct from, and has no

10    bearing on, the agencies under the Loan Agreements.[30]  Because they are separate and distinct

11    agreements, a default under the MRA is not the same as a default under the Loan Agreement.

12    Moreover, the Loan Agreements contain specific provisions that detail the events that could have

13    terminated the Lehman Lenders' agency under those agreements, and the Lehman Lenders

14    insolvency was not such an event.  To adopt the Debtors' reading of the Loan Agreements and the

15    MRA would nullify crucial provisions of the Loan Agreements and lead to an absurd result where

16    a contract between two parties (LCPI and Fenway) could alter the contract between one of those

17    parties and a third party (Lehman Lenders and the Debtors).  As Ms. Goldstein testified, the

18    Lehman Lenders' agency continues to this very day.[31]

19

20

21 ─────────────────────────────────────────────

defenses apply to section 510(c) based on the equitable principals embedded in that provision.

22 [28] Credit Bid Reply at 24.

23 [29] Credit Bid Reply at 25-26.

24 [30] See Goldstein Dep. at 101:2-101:22 ("Q.  So that the agency created here under this master repurchase agreement,
25 you have described as a distinct and different agency than the one created under the seven repoed SunCal loans that
we discussed earlier?  A.  I would say it's different than the agency created under the loan agreement relating to those
26 lines [sic].  Q.  Separate from that.  A.  Yes, it's a separate agency. ... Q.  So it's a different agency, it's different
parties, it's a different agreement?  A.  Correct.").

27 [31] See Goldstein Dep. at 92:17-92:21 ("Q.  So to the best of your knowledge, Lehman's, one of Lehman's entities,
28 agency under all seven SunCal repoed loans continues uninterrupted to date?  A.  Yes.").

12

US_ACTIVE:\43113745\05\43113745_5.DOC\

**C.    The Debtors' Fraudulent Transfer Arguments Do Not Create a Bona Fide Dispute.**

The Debtors' wholesale attempts to block the Lehman Entities from credit bidding on all of the assets they seek to sell to D.E. Shaw by arguing that they have "evidence" in support of their fraudulent conveyance and preferential transfer claims is unavailing. First, only six of the nine Trustee Debtors whose assets the Debtors seek to sell are the subject of the Debtors' fraudulent conveyance and preferential transfer arguments. The Debtors do not allege that (a) LB/L – Oak Valley LLC, (b) LB/L – Northlake LLC or (c) SunCal PSV, LLC made any preferential payments or fraudulent transfers. Nevertheless, the Debtors attempt to entirely deprive the Lehman Lenders of their right to credit bid notwithstanding the fact that their asserted causes of action challenge only some of the Lehman Lenders' claims and liens. The Debtors cannot possibly prove that a bona fide dispute exists to deprive the Lehman Lenders of their rights to credit bid on properties owned by the Trustee Debtors that are not even alleged to have made any preferential payments or fraudulent transfers. Even in *Octagon Roofing*, a case which the Debtors cite, where the Court required that the bank to post an irrevocable letter of credit as a condition of permitting the bank to make a credit bid, the amount of the letter of credit was equal only to the amount of the lien that was the subject of the adversary proceeding commenced by the chapter 7 trustee. *In re Octagon Roofing*, 123 B.R. 583 (Bankr. N.D. Ill. 1991). In addition, in *Octagon*, the court tested the allegations in the pending adversary proceeding before it issued its order requiring the bank to post a letter of credit. In that case, the debtors' adversary complaint had survived a motion to dismiss. The same cannot be said of the Debtors in this case. Here, the allegations have been tested – and the Debtors lost. Now the Debtors have added nine claims – including the fraudulent transfer and preference claims – to their repled complaint. The Lehman Entities have not even had the opportunity to respond to such claims, let alone has the Court found that such claims are facially valid. Thus, the procedural posture of this case is not

13

US_ACTIVE:\43113745\05\43113745_5.DOC\

1    sufficient to establish a bona fide dispute.

2            Second, although the Debtors finally acknowledge the Ninth Circuit's precedential

3    decision in *In re Vortex Fishing Systems*, which clearly stated that mere litigation is insufficient to

4    establish a bona fide dispute, the Debtors argue that they have more than just mere litigation to

5    support their claims – they argue they have "evidence" that establishes a bona fide dispute. The

6    "evidence" is nothing more than allegations cloaked as declarations.    Given that the term

7    "litigation" necessarily assumes the introduction of "evidence," it is fair to conclude that the

8    Ninth Circuit intended for the term "litigation" to encompass any mere "evidence" presented in

9    connection therewith.    Thus, the "evidence" alleged by the Debtors cannot be sufficient to

10   overcome the stringent standard presented in *In re Vortex Fishing Systems*.

11           Notwithstanding the foregoing, the Debtors cannot show that they hold valid

12   fraudulent conveyance or preferential transfer claims at this juncture.    Specifically, the Debtors

13   cannot meet the statutory standards set forth in sections 547 and 548 of the Bankruptcy Code. In

14   addition, the Debtors still have not been able to allege insolvency.    The relevant values of the

15   respective Projects for the purpose of determining the Debtors' insolvency are those made at the

16   time of the loan transactions.[32]    Now, for the first time, the Debtors "have located" such

17   appraisals and submitted them with the Credit Bid Reply. See Rollins Reply Declaration Exhibits

18   2-9; Credit Bid Reply at 28.    The Heartland/Marblehead Loan was made in the amount of

19   $316,061,030.    The appraisals for the projects securing such claims at the time of the loan

20   transaction reflect a total $321,900,000.    The Oak Knoll Loan/Torrance Loan was made in the

21   amount of $148,760,786.    The appraisals for the projects securing such claims at the time of the

22   loan transaction reflect a total value of $217,100,000. Thus, contrary to the Debtors' assertions in

23   the Credit Bid Reply, the appraisals at the time of the loan transactions plainly show that on the

---

[32] *See* Supplement Opposition at 30-31.

14

1    dates the loans were made by the Lehman Entities the fair market value of the Projects at issue

2    exceeded the amounts of the loans.  On this evidence alone, the Debtors cannot show that the

3    Debtors were rendered insolvent as a result of such transactions.  Thus, the fraudulent conveyance

4    claims create no bona fide dispute whatsoever.

5
6    Finally, the Debtors argue that ALI has not established the validity of its

7    affirmative defenses.  Ultimately, the Debtors appear to suggest that all they must do to establish

8    a bona fide dispute is allege the existence of one, but ALI's equivalent refutation is insufficient.

9    Moreover, even if the Debtors were correct – and they could avoid certain transfers as fraudulent

10   conveyances or preferences – such avoidance would not wholly eradicate ALI's liens or claims.

11   Indeed, the Debtors have conceded that the Lehman Entities gave value with respect to the

12   transfers the Debtors have alleged to be fraudulent conveyances.  Further, the Debtors cannot

13   refute that section 548 of the Bankruptcy Code would entitle ALI to retain its liens to the extent

14   of the value provided.  The Debtors, instead, argue that under section 502(d) ALI would be

15   required to return any recoverable property or be subject to claim disallowance.  The Debtors'

16   section 502(d) argument is misplaced.  Saying that ALI's claims must be disallowed until it

17   relinquishes the allegedly recoverable property presupposes two conditions precedent:  (a) that

18   ALI is liable for a fraudulent conveyance or a preference and (b) that, in such event, the

19   recoverable property would not be returned.  The Debtors have not satisfied either of these

20   conditions precedent.

21
22
23   **FOR THE FOREGOING REASONS,** the Lehman Lenders respectfully request that the

24   Court Deny Debtors' Motion for Order:  (1) Approving Overbid Procedures in Connection with

25   Proposed Sale of Substantially All Assets of the Debtors' Estates; (2) Approving Break-up Fee;

26   (3) Disallowing Credit Bids Rights of Disputed Secured Creditors, Lehman ALI, Inc., Northlake

27   Holdings and OVC Holdings; and (4) Setting Hearing on Approval of Sale of Assets [D.E. 125]

28

15

US_ACTIVE:\43113745\05\43113745_5.DOC\.

1 | and grant any other relief the Court deems just, fair and equitable.

2

3

4

5 | DATED: July 24, 2009

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By

Pachulski Stang Ziehl & Jones LLP
Richard M. Pachulski (CA Bar No.
90073)
E-mail: rpachulski@pszjlaw.com
Dean A. Ziehl (CA Bar No. 84529)
E-mail: dziehl@pszjlaw.com
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100

-and-

WEIL, GOTSHAL & MANGES LLP
Edward Soto (admitted *pro hac vice*)
Shai Waisman (admitted *pro hac vice*)
767 Fifth Avenue
New York, NY  10153-0119

Attorneys for Lehman ALI Inc., Lehman
Commercial Paper Inc., Northlake Holdings
LLC and OVC Holdings LLC

16

# EXHIBIT L

1  PACHULSKI STANG ZIEHL & JONES LLP
   Richard M. Pachulski (CA Bar No. 90073)
2  Dean A. Ziehl (CA Bar No. 84529)
   10100 Santa Monica Blvd., 11th Floor
3  Los Angeles, California 90067-4100
   Telephone: (310) 277-6910
4  Facsimile: (310) 201-0760

5  WEIL, GOTSHAL & MANGES LLP
   Edward Soto (admitted *pro hac vice*)
6  Shai Waisman (admitted *pro hac vice*)
   767 Fifth Avenue
7  New York, New York 10153-0119
   Telephone: (212) 310-8000
8  Facsimile: (212) 310-8007

9  Attorneys for Lehman ALI, Inc., Lehman Commercial Paper
   Inc., Northlake Holdings LLC and OVC Holdings LLC

10

11          UNITED STATES BANKRUPTCY COURT
              CENTRAL DISTRICT OF CALIFORNIA
12                SANTA ANA DIVISION

13  In re                              CASE NO. 8:08-bk-17206-ES

    Palmdale Hills Property, LLC, and   Jointly Administered with Case Nos.
14  its Related Debtors.
                                        8:08-bk-17209-ES; 8:08-bk-17224-ES;
15      Jointly Administered Debtors and  8:08-bk-17225-ES; 8:08-bk-17227-ES
            Debtors-in-Possession        8:08-bk-17230-ES; 8:08-bk-17231-ES
16                                       8:08-bk-17236-ES; 8:08-bk-17240-ES
                                         8:08-bk-17242-ES; 8:08-bk-17245-ES
17                                       8:08-bk-17246-ES; 8:08-bk-17548-ES
                                         8:08-bk-17549-ES; 8:08-bk-17404-ES
18  Affects:                            8:08-bk-17407-ES; 8:08-bk-17408-ES;
                                        8:08-bk-17409-ES; 8:08-bk-17458-ES;
19  ☐ All Debtors                       8:08-bk-17465-ES; 8:08-bk-17470-ES;
    ☒ Palmdale Hills Property, LLC      8:08-bk-17472-ES; 8:08-bk-17573-ES;
20  ☐ SunCal Beaumont Heights, LLC      8:08-bk-17574-ES; 8:08-bk-17575-ES;
    ☐ SCC/Palmdale, LLC                 8:08-bk-17588-ES;
21  ☐ SunCal Johannson Ranch, LLC
    ☒ SunCal Summit Valley, LLC
22  ☐ SunCal Emerald Meadows, LLC
    ☒ SunCal Bickford Ranch, LLC       **LEHMAN COMMERCIAL PAPER INC.'S,**
23  ☒ Acton Estates, LLC               **LEHMAN ALI, INC.'S, OVC HOLDINGS**
    ☐ Seven Brothers, LLC              **LLC'S AND NORTHLAKE HOLDINGS**
24  ☐ SJD Partners, Ltd.               **LLC'S MOTION FOR CLARIFICATION**
    ☐ SJD Development Corp.            **OF (1) OCTOBER 2, 2009 ORDER ON**
25  ☐ Kirby Estates, LLC              **OBJECTIONS TO AND MOTION FOR**
    ☒ SunCal Communities I, LLC        **ORDER STRIKING CLAIMS FILED BY**
26  ☐ SCC Communities LLC             **THE LEHMAN ENTITIES; AND (2)**
    ☒ SunCal Communities III, LLC      **FINDINGS OF FACT AND CONCLUSIONS**
27  ☐ North Orange Del Rio Land, LLC   **OF LAW IN SUPPORT OF ORDER ON**
    ☐ Tesoro SF, LLC                   **OBJECTIONS TO CLAIMS**
28  ☒ LBL-SunCal Oak Valley, LLC
    ☒ SunCal Heartland, LLC

52063-001\DOCS_LA:209034.1

| | |
|---|---|
| ☒ | LBL-SunCal Northlake, LLC |
| ☒ | SunCal Marblehead, LLC |
| ☒ | SunCal Century City, LLC |
| ☒ | SunCal PSV, LLC |
| ☒ | Delta Coves Venture, LLC |
| ☒ | SunCal Torrance, LLC |
| ☐ | SunCal Oak Knoll, LLC |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lehman ALI, Inc. ("Lehman ALI"), Lehman Commercial Paper Inc. ("LCPI"), OVC Holdings, LLC ("OVC"), and Northlake Holdings, LLC ("Northlake"), (collectively, the "Lehman Lenders"), by and through their attorneys of record, hereby file this Motion for Clarification of the Court's October 2, 2009 Order (the "Order") [D.E. 653] and the corresponding Findings of Fact and Conclusions of Law ("Findings of Fact") [D.E. 652]. The Lehman Lenders have interpreted the Order as applying only to those loans transferred by a Lehman Lender to Fenway Capital LLC ("Fenway"), but Debtors' counsel has advised the Lehman Lenders that the Debtors read the Order as also applying to certain revolver loans always retained by a Lehman Lender and never transferred to Fenway. Because this distinction has the potential to impact both ongoing proceedings in this Court and an appeal pending before the Ninth Circuit Bankruptcy Appellate Panel, the Lehman Lenders ask the Court to revise the Order to state expressly that the revolver loans that were never transferred to Fenway are not part of the "Sold Loans" covered by the Order.

## ARGUMENT

Debtors moved to strike several of the Lehman Lenders' proofs of claim because they were based upon loans to Debtors that a Lehman Lender had transferred to Fenway pursuant to an August 22, 2008 Master Repurchase Agreement (the "MRA"), which was attached to the Amended Declaration of Sean O'Keefe in Support of Debtors' Objections to and Motion for Order Striking Claims Filed by the Lehman Entities [D.E. 357]. The O'Keefe Declaration also attached the written confirmations, required by section 3 of the MRA, describing which loans were transferred to Fenway (the "Repo Confirmations"). *See id.* at Ex. E-H. As reflected in the Repo Confirmations, the relevant loans that were transferred to Fenway were the term loans for PSV, Heartland/Marblehead, OVC, Northlake, Ritter Ranch, SunCal Communities I and Delta Coves. *See id.* at Exs. E-H. Five of these lending transactions (PSV, Heartland/Marblehead, OVC, Northlake and Ritter Ranch) also

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

52063-001\DOCS_LA:209034.1                    2

1  involved revolver loans, but those loans were not transferred to Fenway or covered by the Repo

2  Confirmations.[1]

3          The Court ruled in the Order that the loans transferred to Fenway were "Sold Loans."

4  The Lehman Lenders understand the Court's reference to the Sold Loans to encompass only those

5  loans "sold to Fenway Capital pursuant to the MRA," Findings of Fact at ¶ 1.9, as reflected in the

6  Repo Confirmations required by the MRA. *See also* Order at 2 ("the transfer of the Sold Loans

7  pursuant to the MRA was a true purchase and sale transaction"). Debtors' counsel, however, has

8  advised the Lehman Lenders that they interpret the Order to hold further that the revolver loans that

9  were not transferred to Fenway under the MRA or reflected in the Repo Confirmations were also,

10  counterfactually, "Sold Loans." Accordingly, the Lehman Lenders respectfully ask this Court to

11  clarify whether it intended its definition of "Sold Loans" in the Order to include the revolver loans.

          The Lehman Lenders also respectfully request that the Court clarify paragraph 1.13 of

12  the Findings of Fact, which states that "[n]one of the Lehman Entities have filed the statement

13  required by Federal Rule of Bankruptcy Procedure 2019(a)." The Lehman Lenders believe this

14  finding was intended to be only as of the hearing date on Debtors' motion to strike the Lehman

15  Lenders' proofs of claim, or some other nearby date, because on September 22, 2009, the Lehman

16  Lender filed Rule 2019 statements with respect to the proofs of claim at issue in Debtors' motion.

17  *See* Verified Statement of Lehman Commercial Paper Inc., Lehman ALI, Inc. Northlake Holdings

18  LLC, OVC Holdings LLC and LV Pacific Point, LLC Pursuant to Rule 2019 of the Federal Rules of

19  Bankruptcy Procedure [D.E. 611].

18  ///

19  ///

20  ///

21

22

23

24

25  _____

[1]      A more detailed discussion of these term and revolver loans, as well as how the Repo
26  Confirmations are tied to the term – but not the revolver – loans, is contained in the Lehman
Lenders' Memorandum Responding to the Court's Inquiry at July 28, 2009 Status Conference
27  Regarding Lehman Lenders' Retention of Certain Revolver Loans (the "Revolver Memo") [D.E.
517]. Copies of the Revolver Memo, the Debtors' Response [D.E. 519] and the Lehman Lenders'
28  Reply [D.E. 522] are attached for the Court's convenience as Composite Exhibit "A."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

52063-001\DOCS_LA:209034.1                    3

1    **WHEREFORE,** the Lehman Lenders respectfully request that the Court enter an

2    order clarifying that: (i) the phrase "Sold Loans" used in the Order and Findings of Fact excludes the

3    revolver loans not transferred to Fenway pursuant to the MRA, and (ii) the Lehman Lenders filed

4    Rule 2019 statements on September 22, 2009.

5    Dated:    October 8, 2009                        PACHULSKI STANG ZIEHL & JONES LLP

6

7                                                     /s/ Dean A. Ziehl
                                                     Richard M. Pachulski (CA Bar No. 90073)
8                                                     Dean A. Ziehl (CA Bar No. 84529)
                                                     10100 Santa Monica Blvd., Suite 1100
9                                                     Los Angeles, CA 90067-4100
                                                     Telephone: (310) 277-6910
10                                                    Facsimile: (310) 201-0760

11                                                    -and-

12                                                    WEIL, GOTSHAL & MANGES LLP

13                                                    Edward Soto (admitted *pro hac vice*)
                                                     Shai Waisman (admitted *pro hac vice*)
14                                                    767 Fifth Avenue
                                                     New York, NY 10153-0119
15                                                    Telephone: (212) 310-8000
                                                     Facsimile: (212) 310-8007
16                                                    Attorneys for Lehman Commercial Paper, Inc.,
                                                     Lehman ALI, Inc., Northlake Holdings, LLC
                                                     and OVC Holdings, LLC

17

18

19

20

21

22

23

24

25

26

27

28

52063-001\DOCS_LA:209034.1                        4

# EXHIBIT M

### DECLARATION OF PAUL J. COUCHOT

I, Paul Couchot hereby declare and state as follows:

1.     I am an attorney, duly admitted to practice law before all courts for the State of California and the United States District Court for the Central District of California. I am a member of the law firm of Winthrop Couchot Professional Corporation, general insolvency counsel for the seventeen administratively consolidated Debtors-in-Possession (the "Voluntary Debtors"), including the Appellees herein, and SCC Acquisitions, Inc. ("Acquisitions"), an indirect parent company of the Voluntary Debtors. I have been lead counsel for the Voluntary Debtors since before their Chapter 11 filings.

2.     On June 9, 2009, certain Voluntary Debtors (SunCal Communities I LLC, SunCal Communities III LLC, SCC Palmdale LLC, and SunCal Bickford Ranch LLC (collectively the "Moving Debtors") filed the *Motion for Order: (1) Valuing Collateral of Certain Disputed Creditors; (2) Avoiding Certain Disputed Liens Pursuant to 11 U.S.C. §506(d); and (3) Preserving Avoided Lien(s) for the Respective Estates Pursuant to 11 U.S.C. §551* (the "Motion") seeking an order: (a) valuing certain collateral of the Lehman Entities at zero dollars; (b) voiding the Liens; and (c) preserving such voided Liens for the benefit of the Moving Debtors.

3.     On July 6, 2009, the Lehman Entities filed the Opposition to Motion for Order: (1) Valuing Collateral of Certain Disputed Creditors; (2) Avoiding Certain Disputed Liens Pursuant to 11 U.S.C. §506(d); and (3) Preserving Avoided Lien(s) for the Respective Estates Pursuant to 11 U.S.C. §551;

4.     On July 24, 2009, the Moving Debtors filed the Reply to Opposition to Motion for Order: (1) Valuing Collateral of Certain Disputed Creditors; (2) Avoiding Certain Disputed Liens Pursuant to 11 U.S.C. §506(d); and (3) Preserving Avoided Lien(s) for the Respective Estates Pursuant to 11 U.S.C. §551;

5.     At the request of the Lehman Entities, the Moving Debtors and the Lehman Entities agreed to resolve the Motion via stipulation. Specifically, in August 2009, counsel for the Lehman Entities prepared a draft stipulation resolving the Motion. After several rounds of negotiations, on September 21, 2009, counsel for the Lehman Entities emailed a final execution form of the

-11-

1   Stipulation, a true and correct copy of which, including the Stipulation, is attached hereto as exhibit

2   "D" and incorporated herein by this reference. The Stipulation provided that Appellant's automatic

3   stay was not applicable to certain loans held by the Lehman Entities in which the underlying

4   collateral for such liens had zero value, including the Bickford Second Lien Loan and the Ritter

5   Ranch Mezz Loan, which the only loans that were part of the Relief from Stay Motions that were

6   retained by the Lehman Entities. Furthermore, according to the Motion for Relief from Stay itself,

7   and the filed proof of claim, the Bickford Second Lien Loan was held by Lehman ALI, a non-debtor

8   Lehman entity, as a result of which no automatic stay would even arguably apply. I executed the

9   Stipulation and provided my signature page to Lehman Entities' counsel at the hearing before the

10  Bankruptcy Court on September 22, 2009. I presumed Lehman Entities' counsel subsequently

11  followed through on his representation that he would cause the Stipulation to be filed with the Court.

12  Although to my knowledge, the Court has yet not entered an order approving the Stipulation.

13          I declare under penalty of perjury that the foregoing is true and correct.

14          Executed this 20 day of October 2009, at Newport Beach, California.

15

16                                              /s/ *Paul J. Couchot*
                                                Paul J. Couchot

17

18

19

20

21

22

23

24

25

26

27

28

-12-

MAINDOCS-#134701-v1-SCC_Motion_Dismiss_Appeal.DOC

# EXHIBIT "D"

**Paul Couchot**

| | |
|---|---|
| **From:** | Maria Bove [mbove@pszjlaw.com] |
| **Sent:** | Monday, September 21, 2009 3:18 PM |
| **To:** | Paul Couchot |
| **Cc:** | Richard Pachulski |
| **Subject:** | Lehman/SunCal - Cash Collateral and Valuation Stipulations |

**Attachments:**  Lehman - Valuation Stipulation_v6.DOC; Lehman - Cash Collateral Stipulation_v7.DOC

 

Lehman - Valuation   Lehman - Cash
Stipulation...   Collateral Stipu...

                     <<Lehman - Valuation Stipulation_v6.DOC>>    <<Lehman - Cash
Collateral
Stipulation_v7.DOC>>
Paul,

Attached please find final versions of the Bickford cash collateral stipulation and the
valuation stipulation.

Maria

1

1   PACHULSKI STANG ZIEHL & JONES LLP
    Richard M. Pachulski (CA Bar No. 90073)
2   Dean A. Ziehl (CA Bar No. 84529)
    Pachulski Stang Ziehl & Jones LLP
3   10100 Santa Monica Blvd., 11th Floor
    Los Angeles, California 90067-4100
4   Telephone: (310) 277-6910
    Facsimile: (310) 201-0760
5   WEIL, GOTSHAL & MANGES LLP
    Edward Soto (admitted *pro hac vice*)
6   Shai Waisman (admitted *pro hac vice*)
    767 Fifth Avenue
7   New York, NY 10153-0119
    Telephone: (212) 310-8000
8   Facsimile: (212) 310-8007
9   Attorneys for Lehman Commercial Paper Inc. and Lehman ALI, Inc.

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

11  | In re: | Case No.: 8:08-bk-17206-ES |

Palmdale Hills Property, LLC, and its Related Debtors,    Chapter 11
                Jointly Administered Debtors    Jointly Administered Case Nos.
                and Debtors-In-Possession

Affects:                                      8:08-bk-17209-ES; 8:08-bk-17240-ES;
☐ All Debtors                                 8:08-bk-17224-ES; 8:08-bk-17242-ES;
☐ Palmdale Hills Property, LLC                8:08-bk-17225-ES; 8:08-bk-17245-ES;
☐ SunCal Beaumont Heights, LLC                8:08-bk-17227-ES; 8:08-bk-17246-ES;
☒ SCC/Palmdale, LLC                           8:08-bk-17230-ES; 8:08-bk-17231-ES;
☐ SunCal Johannson Ranch, LLC                 8:08-bk-17236-ES; 8:08-bk-17248-ES;
☒ SunCal Summit Valley, LLC                   8:08-bk-17249-ES; 8:08-bk-17573-ES;
☐ SunCal Emerald Meadows LLC                  8:08-bk-17574-ES; 8:08-bk-17575-ES;
☒ SunCal Bickford Ranch, LLC                  8:08-bk-17404-ES; 8:08-bk-17407-ES;
☐ Acton Estates, LLC                          8:08-bk-17408-ES; 8:08-bk-17409-ES;
☐ Seven Brothers LLC                          8:08-bk-17458-ES; 8:08-bk-17465-ES;
☐ SJD Partners, Ltd.                          8:08-bk-17470-ES; 8:08-bk-17472-ES;
☐ SJD Development Corp.                        and 8:08-bk-17588-ES
☐ Kirby Estates, LLC
☒ SunCal Communities I, LLC                   **STIPULATION VALUING CERTAIN**
☒ SunCal Communities III, LLC                 **COLLATERAL AND PRESERVING**
☐ SCC Communities LLC                         **CERTAIN LIENS**
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF, LLC                                  Date:    September 22, 2009
☐ LB-L-SunCal Oak Valley, LLC                     Time:    10:00 a.m.
☐ SunCal Heartland, LLC                           Place:   Courtroom 5A
☐ LB-L-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Exhibit D, Page 62

This Stipulation is entered into by and between Lehman ALI, Inc. ("Lehman ALI") and Lehman Commercial Paper Inc. ("LCPI" and, together with Lehman ALI, the "Lehman Entities"), on the one hand, and SunCal Communities I, LLC ("SunCal I"), SunCal Communities III, LLC ("SunCal III"), SCC/Palmdale, LLC ("SCC Palmdale"), SunCal Summit Valley, LLC ("SunCal Summit") and SunCal Bickford Ranch, LLC ("SunCal Bickford Ranch" and, collectively with SunCal I, SunCal III, SCC Palmdale, and SunCal Summit, the "Moving Debtors"), on the other hand.  The Lehman Entities and the Moving Debtors (the "Parties") hereby enter into this Stipulation and agree as follows:

## RECITALS

WHEREAS, on March 30, 2009: (1) LCPI filed Proof of Claim No. 1 against SunCal I in Case No. 08-17248 (the "SunCal I Claim") asserting claims secured by pledges of SunCal I's equity membership interests in Acton Estates, LLC, SunCal Summit, SunCal Beaumont Heights, LLC, SunCal Johannson Ranch, LLC, SunCal Bickford Ranch, and SunCal Emerald Meadows LLC (such pledges being referred to collectively as the "SunCal I Lien"); (2) LCPI filed Proof of Claim No. 1 against SCC Palmdale in Case No. 08-17224 (the "SCC Palmdale Claim") asserting claims secured by a pledge of SCC Palmdale's interests in Palmdale Hills Property, LLC (the "SCC Palmdale Lien"); (3) LCPI filed Proof of Claim No. 2 against SunCal III in Case No. 08-17249 (the "SunCal III Claim") asserting claims secured by a pledge of SunCal III's ownership interests in certain investment property (the "SunCal III Lien"); and (4) Lehman ALI filed Proof of Claim No. 17 against SunCal Bickford Ranch in Case No. 08- 17231 (the "SunCal Bickford Ranch Claim" and, collectively with the SunCal I Claim, the SCC Palmdale Claim and the SunCal III Claim, the "Claims")[1] asserting claims secured by a second priority deed of trust on certain real and personal

[1] "Claims" as used herein shall mean any amendments filed thereto.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

property (the "Bickford Lien" and, collectively with the SunCal I Lien, SCC Palmdale Lien and

SunCal III Lien, the "Liens");

WHEREAS, the collateral subject to the Liens shall be referred to herein as the "Collateral."

WHEREAS, on June 30, 2009, the Moving Debtors filed the *Motion for Order: (1) Valuing Collateral of Certain Disputed Creditors; (2) Avoiding Certain Disputed Liens Pursuant to 11 U.S.C. §506(d); and (3) Preserving Avoided Lien(s) for the Respective Estates Pursuant to 11 U.S.C. §551* (the "Motion") seeking an order: (a) valuing the Collateral at zero dollars; (b) voiding the Liens; and (c) preserving such voided Liens for the benefit of the Moving Debtors;

WHEREAS, on July 6, 2009, the Lehman Entities filed the *Opposition to Motion for Order: (1) Valuing Collateral of Certain Disputed Creditors; (2) Avoiding Certain Disputed Liens Pursuant to 11 U.S.C. §506(d); and (3) Preserving Avoided Lien(s) for the Respective Estates Pursuant to 11 U.S.C. §551;*

WHEREAS, on July 24, 2009, the Moving Debtors filed the *Reply to Opposition to Motion for Order: (1) Valuing Collateral of Certain Disputed Creditors; (2) Avoiding Certain Disputed Liens Pursuant to 11 U.S.C. §506(d); and (3) Preserving Avoided Lien(s) for the Respective Estates Pursuant to 11 U.S.C. §551;*

WHEREAS, the Lehman Entities and Moving Debtors have agreed to resolve the Motion on the terms set forth below;

NOW THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged), it is hereby stipulated and agreed by and among the Parties as follows:

## STIPULATION

1.    The Collateral shall be valued at $0.00.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2.    Notwithstanding the valuation of the Collateral at $0.00, each of the Liens is hereby deemed valid and preserved for the benefit of the Lehman Entities and any other holder of an interest in any of the Liens for the sole purpose of allowing the Lehman Entities and any other holder of any interest in any of the Liens to enforce their rights to obtain any available distribution from the applicable Moving Debtor(s) prior to any distribution to holders of equity interests in such applicable Moving Debtor(s).  Except as otherwise allowed under the Bankruptcy Code taking into account that the Collateral is valued at $0.00, the Liens shall not be enforceable for any purpose other than that specifically set forth in the preceding sentence, including but not limited to, expressly not enforceable for the purpose of invoking and/or asserting the automatic stay of any holder of the Liens in its own bankruptcy proceeding based on the Liens, invoking and/or asserting any purported rights under section 1111(b) of the Bankruptcy Code in the applicable Moving Debtor's(s') bankruptcy proceedings based on the Liens, and attempting to assert a priority with respect to any of the allowed unsecured claims against an applicable Moving Debtor based on the Liens.

3.    This Stipulation shall have no effect upon the rights of the Lehman Entities or any other holder of any interest in any of the Liens (taking into account that the Collateral is valued at $0.00) or Claims to seek or obtain a distribution in connection with such Liens or Claims for any allowed deficiency claims in connection therewith.

4.    Each person signing this Stipulation, including but not limited to any person signing as counsel for a party, hereby represents and warrants that he or she has been duly authorized and has the requisite authority to enter into this Stipulation on behalf of and bind the party on whose behalf they so sign.

5.    The Bankruptcy Court shall retain exclusive jurisdiction over any issues arising from or relating to this Stipulation and its enforcement.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

6.    This Stipulation may be executed in identical counterparts, any of which may be transmitted by facsimile or email, and each of which shall constitute an original and all of which taken together shall constitute one and the same instrument.

Dated: September __, 2009

PACHULSKI STANG ZIEHL & JONES LLP          WINTHROP COUCHOT

By _____          By _____
    Richard M. Pachulski (CA Bar No. 90073)              Paul J. Couchot (CA Bar No. 131934)
    Dean A. Ziehl (CA Bar No. 84529)              660 Newport Center Drive, Fourth Floor
    10100 Santa Monica Blvd., Suite 1100              Newport Beach, CA 92660
    Los Angeles, CA 90067-4100              Telephone: (949) 720-4165
    Telephone: (310) 277-6910              Facsimile: (949) 720-4111
    Facsimile: (310) 201-0760

    Attorneys for the Jointly Administered
WEIL, GOTSHAL & MANGES LLP          Voluntary Debtors in Possession
Edward Soto (admitted *pro hac vice*)
Shai Waisman (admitted *pro hac vice*)
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman ALI, Inc. and
Lehman Commercial Paper Inc.


APPROVED AS TO FORM AND SUBSTANCE:

Dated:    September ___, 2009          IRELL & MANELLA LLP

                 By: _____
                     Alan J. Friedman
                     Kerri A. Lyman

                     Attorneys for Official Unsecured Creditors'
                     Committee of the Voluntary Debtors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT N

Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
Robert B. Orgel (CA Bar No. 101875)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760

Edward Soto (admitted *pro hac vice*)
Shai Y. Waisman (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Commercial Paper Inc., Lehman ALI,
Inc., Northlake Holdings LLC and OVC Holdings LLC

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

In re:
Palmdale Hills Property, LLC, and its Related Debtors,
Jointly Administered Debtors
and Debtors-In-Possession

Affects:
☐ All Debtors
☑ Palmdale Hills Property, LLC
☑ SunCal Beaumont Heights, LLC
☑ SCC/Palmdale, LLC
☑ SunCal Johannson Ranch, LLC
☑ SunCal Summit Valley, LLC
☑ SunCal Emerald Meadows, LLC
☑ SunCal Bickford Ranch, LLC
☑ Acton Estates, LLC
☑ Seven Brothers, LLC
☑ SJD Partners, Ltd.
☐ SJD Development Corp.
☑ Kirby Estates, LLC
☑ SunCal Communities I, LLC
☑ SCC Communities LLC
☐ SunCal Communities III, LLC
☑ North Orange Del Rio Land, LLC
☑ Tesoro SF, LLC
☑ LB/L-SunCal Oak Valley, LLC
☑ SunCal Heartland, LLC
☑ LB/L-SunCal Northlake, LLC
☑ SunCal Marblehead, LLC
☑ SunCal Century City, LLC
☑ SunCal PSV, LLC
☑ Delta Coves Venture, LLC
☑ SunCal Torrance Properties, LLC
☑ SunCal Oak Knoll, LLC

Case No.: 8:08-bk-17206-ES
Chapter 11

Jointly Administered Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574-ES; 8:08-bk-17575-ES
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-bk-17588-ES

*FIRST AMENDED* JOINT CHAPTER 11 PLAN PROPOSED BY LEHMAN LENDERS

**Hearing:**
Date: October 15, 2009
Time: 2:00 p.m.
Place: Courtroom 5A
411 West Fourth Street
Santa Ana, CA 92701

52063-001\DOCS_LA:205532.28

1   shall be adjusted to equal the sum of (x) any such Cash Collateral and (y) the amount bid by the

2   Successful Bidder for the non-Cash collateral; and (2) the applicable Allowed Class 7 Claim of the

3   applicable Lehman Creditor shall be adjusted accordingly;

4   (ii) as to all other Lehman Secured Claims (including the Contingent Lehman

5   ALI Secured Claim Against SJD Partners), upon disposition of all of the collateral therefor or upon

6   a valuation motion made by the Liquidating Trustee or the applicable Holder of any Lehman

7   Secured Claims after abandonment or surrender of the collateral therefor, the amount of the

8   applicable Lehman Secured Claim and any related deficiency shall be accordingly adjusted;

9   (iii) the Contingent Lehman ALI Secured Claim Against SJD Partners

10   initially shall be treated as a Disputed Claim for distribution purposes, but: (1) initially also shall be

11   Allowed for voting purposes as a Secured Claim in the amount of $25 million and as General

12   Unsecured Claims in the amounts of $95,110,237 and $28 million, and (2) contingent upon the

13   Pacific Point Foreclosure being set aside, shall be Allowed as a Secured Claim in the amount of

14   $25 million and as General Unsecured Claims in the amounts of $95,110,237 and $28 million for

15   distribution and all other purposes, subject to adjustment in accordance with clause (ii) of this

16   proviso; and

17   (iv) the following Liens, *inter alia*, are deemed valid and preserved, in

18   accordance with that *Stipulation Valuing Certain Collateral and Preserving Certain Liens* Filed in the

19   Cases, for the benefit of the Lehman Creditors and any other holder of an interest in any of the

20   Liens for the sole purpose of allowing the Lehman Creditors and any other holder of any interest in

21   any of the Liens to enforce their rights to obtain any available distribution from the applicable Plan

22   Debtor's Estate prior to any distribution to holders of Interests in such applicable Plan Debtor, and,

23   thus, permitting, *inter alia*, the Contingent Bids set forth in Section 7.9.1 below of the Plan:  (1)

24   Lehman Commercial's SunCal I Lien; (2) Lehman Commercial's SCC Palmdale Lien; and (3)

25   Lehman ALI's Bickford Second Lien.

26   **5.2.4   Disposition of Collateral**

27   On the Effective Date, all Cash Collateral for a Lehman Secured Claim not used on

28   the Effective Date as permitted or required by the Lehman Plan shall be deposited into the Plan

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT O

1  LOUIS R. MILLER, State Bar No. 54141
   smiller@millerbarondess.com
2  MARTIN PRITIKIN, State Bar. No. 210845
   mpritikin@millerbarondess.com
3  BRIAN PROCEL, State Bar No. 218657
   bprocel@millerbarondess.com
4  **MILLER BARONDESS, LLP**
   1999 Avenue of the Stars, Suite 1000
5  Los Angeles, California 90067
   Telephone:    (310) 552-4400
6  Facsimile:    (310) 552-8400

7  Special Litigation Counsel for
   Jointly Administered Debtors in Possession
   and Chapter 11 Trustee
8

FILED & ENTERED

APR 12 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK

9           **UNITED STATES BANKRUPTCY COURT**
      **CENTRAL DISTRICT OF CALIFORNIA -- SANTA ANA DIVISION**
10

11  In re

12  PALMDALE HILLS PROPERTY, LLC,
    AND ITS RELATED DEBTORS,
13            Jointly Administered Debtors
              and Debtors-in-Possession
14

15  **ADVERSARY PROCEEDING**

16  PALMDALE HILLS PROPERTY, LLC, et
    al.,
17
              Plaintiffs,
18
    v.
19
    LEHMAN ALI, INC., et al.,
20
              Defendants.
21

**CASE NO. 8:08-bk-17206-ES**
Jointly Administered With Case Nos.
    8:08-bk-17209-ES; 8:08-bk-17240-ES;
    8:08-bk-17224-ES; 8:08-bk-17242-ES;
    8:08-bk-17225-ES; 8:08-bk-17245-ES;
    8:08-bk-17227-ES; 8:08-bk-17246-ES;
    8:08-bk-17230-ES; 8:08-bk-17231-ES;
    8:08-bk-17236-ES; 8:08-bk-17248-ES;
    8:08-bk-17249-ES; 8:08-bk-17573 ES;
    8:08-bk-17574-ES; 8:08-bk-17575-ES;
    8:08-bk-17404-ES; 8:08-bk-17407-ES;
    8:08-bk-17408-ES; 8:08-bk-17409-ES;
    8:08-bk-17458-ES; 8:08-bk-17465-ES;
    8:08-bk-17470-ES; 8:08-bk-17472-ES;
    8:08-bk-17588-ES
**Adversary No. 8:09-ap-01005-ES**

**ORDER RE LEHMAN ENTITIES' AMENDED
MOTION TO DISMISS THE THIRD
AMENDED COMPLAINT**

Hearing: February 11, 2010
Time: 2:00 p.m.
Ctrm.: 5A

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400    FAX (310) 552-8400

61997.1    ORDER RE LEHMAN ENTITIES' MOTION TO DISMISS 3RD AM. CMPLT.

## ORDER

**IT IS HEREBY ORDERED** that the Lehman Lenders Amended Motion to Dismiss Plaintiffs' Third Amended Complaint ("Motion to Dismiss") is **GRANTED IN PART AND DENIED IN PART**.

1)  The decision in *Lehman Commercial Paper, Inc. v. Palmdale Hills Property, LLC* (*In re Palmdale Hills Property, LLC*), -- B.R. --, 2009 WL 5812119 (B.A.P. 9th Cir. 2009) is binding on this Court.

2)  Under *In re Palmdale Hills Property, LLC*, the claims for relief brought against Defendant Lehman Commercial Paper Inc. ("LCPI") – namely, claims 1, 5, 7, 8, and 9 – are affirmative relief and, therefore violate LCPI's automatic stay. Consequently, the first, fifth, seventh, eighth, and ninth claims for relief are dismissed without prejudice to the extent that they are brought against LCPI. Plaintiffs must seek relief from LCPI's automatic stay in the United States Bankruptcy Court for the Southern District of New York in order to bring any claims against LCPI in this adversary proceeding.

3)  As to the remaining Defendants,[1] the Motion to Dismiss:

    a.  the first claim for relief is DENIED;

    b.  the second claim for relief is DENIED;

    c.  the third claim for relief is GRANTED WITHOUT PREJUDICE;

    d.  the fourth claim for relief is GRANTED WITHOUT PREJUDICE;

    e.  the fifth claim for relief is DENIED;

    f.  the sixth claim for relief is GRANTED WITHOUT PREJUDICE to the extent that Plaintiffs seek to avoid and recover certain prepetition transfers from SunCal Marblehead Heartland Master LLC to Defendant Lehman ALI in the amount of $3,390,280.37 and is DENIED in all other respects;

    g.  the seventh claim for relief is DENIED;

---

[1] Def endants Lehman ALI, Inc. ("Lehman ALI"), OVC Holdings LLC, Northlake Holdings LLC, and LV Pacific Point, LLC.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

61997.1
ORDER RE LEHMAN ENTITIES' MOTION TO DISMISS 3RD AM. CMPLT.

Exhibit O, Page 120

1      h.  the eighth claim for relief is DENIED;

2      i.  the ninth claim for relief is GRANTED WITHOUT PREJUDICE.

3   4)  In sum, as to the remaining Defendants, the third, fourth, and ninth claims for relief are

4      dismissed in their entirety without prejudice, and the sixth claim for relief is dismissed in part

5      consistent with this Order.

6   5)  Plaintiffs may file an amended complaint by April 9, 2010.

8  **IT IS SO ORDERED.**

10                        ###

DATED: April 12, 2010

_Erithe A. Smith_
United States Bankruptcy Judge

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

ORDER RE LEHMAN ENTITIES' MOTION TO DISMISS 3RD AM. CMPLT

61997.1

# EXHIBIT P

```
┌─────────────────────────────────┐
│        FILED & ENTERED          │
│   ┌─────────────────────────┐   │
│   │     DEC 30 2009          │   │
│   └─────────────────────────┘   │
│   CLERK U.S. BANKRUPTCY COURT    │
│    Central District of California│
│   BY daniels    DEPUTY CLERK     │
└─────────────────────────────────┘
```

1   LOUIS R. MILLER, State Bar No. 54141
    smiller@millerbarondess.com
2   MARTIN PRITIKIN, State Bar. No. 210845
    mpritikin@millerbarondess.com
3   BRIAN PROCEL, State Bar No. 218657
    bprocel@millerbarondess.com
4   **MILLER BARONDESS, LLP**
    1999 Avenue of the Stars, Suite 1000
5   Los Angeles, California 90067
    Telephone: (310) 552-4400
6   Facsimile: (310) 552-8400

7

8   Special Litigation Counsel for the Jointly Administered
    Debtors in Possession and Steven M. Speier, the Chapter 11
9   Trustee

                **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
10                      **SANTA ANA DIVISION**

11  In re                                **CASE NO. 8:08-bk-17206-ES**

12  Palmdale Hills Property, LLC, and    Jointly Administered with Case Nos.
    its Related Debtors.
13          Jointly Administered Debtors and    8:08-bk-17209-ES; 8:08-bk-17224-ES;
            Debtors-in-Possession              8:08-bk-17225-ES; 8:08-bk-17227-ES
                                               8:08-bk-17230-ES; 8:08-bk-17231-ES
14  Affects:                                   8:08-bk-17236-ES; 8:08-bk-17240-ES
    ☑ All Debtors                              8:08-bk-17242-ES; 8:08-bk-17245-ES
15  ☐ Palmdale Hills Property, LLC             8:08-bk-17246-ES; 8:08-bk-17548-ES
    ☐ SunCal Beaumont Heights, LLC             8:08-bk-17549-ES; 8:08-bk-17404-ES
16  ☑ SCC/Palmdale, LLC                        8:08-bk-17407-ES; 8:08-bk-17408-ES;
    ☐ SunCal Johannson Ranch, LLC              8:08-bk-17409-ES; 8:08-bk-17458-ES;
17  ☑ SunCal Summit Valley, LLC                8:08-bk-17465-ES; 8:08-bk-17470-ES;
    ☑ SunCal Emerald Meadows LLC               8:08-bk-17472-ES; 8:08-bk-17573-ES;
18  ☑ SunCal Bickford Ranch, LLC               8:08-bk-17574-ES; 8:08-bk-17575-ES;
    ☐ Acton Estates, LLC                       8:08-bk-17588-ES
19  ☐ Seven Brothers LLC
    ☑ SJD Partners, Ltd.
20  ☑ SJD Development Corp.                     **Also Affects:**
    ☐ Kirby Estates, LLC
21  ☑ SunCal Communities I, LLC                Adversary Proceeding No. 8:09-ap-01005-ES
    ☑ SunCal Communities III, LLC
22  ☑ SCC Communities LLC                      **AMENDED SCHEDULING ORDER**
    ☑ North Orange Del Rio Land, LLC           **REGARDING DISCOVERY SCHEDULE IN**
23  ☑ Tesoro SF, LLC                           **CONNECTION WITH (1) SUBSTANTIVE**
    ☑ LB-L-SunCal Oak Valley, LLC              **CONSOLIDATION MOTION, AND**
24  ☑ SunCal Heartland, LLC                    **(2) ADVERSARY PROCEEDING**
    ☑ LB-L-SunCal Northlake, LLC
25  ☑ SunCal Marblehead, LLC                   **Date: November 12, 2009**
    ☑ SunCal Century City, LLC                 **Time: 9:30 a.m.**
26  ☑ SunCal PSV, LLC                          **Place: Courtroom 5A**
    ☑ Delta Coves Venture, LLC
27  ☑ SunCal Torrance, LLC                     **Honorable Erithe A. Smith**
    ☑ SunCal Oak Knoll, LLC
28
```

*Left margin (vertical):* MILLER BARONDESS, LLP · ATTORNEYS AT LAW · 1999 AVENUE OF THE STARS, SUITE 1000 · LOS ANGELES, CALIFORNIA 90067 · TEL (310) 552-4400 FAX (310) 552-8400

## ORDER

On November 12, 2009 at 9:30 a.m., a global status conference was held before this Court to set certain common discovery dates and other key dates for the forthcoming trial on the Voluntary Debtors' motion for substantive consolidation and the related adversary proceeding. The Court, having read and considered the Joint Stipulation Re Discovery Schedule for Substantive Consolidation and Adversary Proceeding, and all argument from the parties at the hearing on this matter, and the parties having reached agreements subsequent to the global status conference regarding certain issues related to discovery, and good and sufficient cause appearing,

**IT IS HEREBY ORDERED** as follows:

1.    **Document Production:**

    a.    Substantive Consolidation:

| | |
|---|---|
| November 18, 2009 | Parties exchange document requests |
| November 23, 2009 | Parties meet and confer to discuss objections to document requests document custodians, search terms, date parameters, and search topics for electronic discovery |
| January 12, 2010 | Parties produce documents |

    b.    Adversary Proceeding:  The Parties will propound document requests, meet and confer regarding search parameters, and produce documents according to the dates listed above.

2.    **Depositions:**

No party depositions shall take place in connection with the substantive consolidation motion or the adversary proceeding until the parties exchange documents.

    a.    Substantive Consolidation:

| | |
|---|---|
| January 5, 2010 | Non-party depositions may commence. |
| January 19, 2010 | Party depositions may commence. |
| February 28, 2010 | Last day for party depositions |

    b.    Adversary Proceeding:  The witnesses whose testimony relates to both the adversary proceeding and the substantive consolidation motion should be deposed only once where possible. Such overlapping witness depositions shall follow the same schedule as for the substantive

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1  consolidation motion. Depositions of witnesses whose testimony relates only to the adversary

2  proceeding shall be stayed pending the Court's ruling on the motion to dismiss that action.

3  **3.**    <u>**Interrogatories and Requests for Admission**</u>:

4      a.    <u>Substantive Consolidation</u>:  Interrogatories that are limited to identification of

5  witnesses and specific facts may be served.  Pursuant to the parties' agreement subsequent to the

6  global status conference, responses shall identify any witnesses who also have knowledge or

7  information relevant to the adversary proceeding.  No interrogatories seeking identification of

8  documents shall be served.  Requests for admissions may be served.

9      b.    <u>Adversary Proceeding</u>:  All written discovery in the adversary proceeding is stayed

10  pending the Court's ruling on the motions to dismiss, subject to identification of overlapping

11  witnesses as provided in 3 a above.

12  **4.**    <u>**Initial Disclosures**</u>:

13      a.    <u>Substantive Consolidation</u>:  Not Applicable.

14      b.    <u>Adversary Proceeding</u>:  Rule 26 Initial disclosures are stayed pending the Court's

15  ruling on the motions to dismiss.

16  **5.**    <u>**Discovery Deadlines**</u>:

17      a.    <u>Substantive Consolidation</u>:

18      February 19, 2010         Disclosure of expert-witnesses

19      February 28, 2010         Non-expert discovery cut-off

20      March 5, 2010             Parties exchange expert reports; no supplemental reports
21                                absent leave of the Court

22      March 12, 2010            Last day to conduct depositions of expert witnesses

23      b.    <u>Adversary Proceeding</u>:

24      June 30, 2010             Non-expert discovery cut-off

25      July 13, 2010             Disclosure of expert-witnesses

26      July 20, 2010             Parties exchange expert reports

27      August 13, 2010           Parties exchange rebuttal expert reports

28      September 30, 2010        Last day to conduct depositions of expert witnesses
                                  (Expert discovery conducted between July 13, 2010 and

September 30, 2010

6.    **Briefing Schedule**:

    a.    Substantive Consolidation:

| | |
|---|---|
| March 19, 2010 | Debtors' amended or supplemental brief incorporating evidence |
| April 2, 2010 | Oppositions briefs due |
| April 9, 2010 | Debtors' reply brief due |
| April 9, 2010 | Pre-trial motions, e.g., motions in limine, due |
| April 13, 2010 | Last day to file a request for leave to file a surreply; the proposed sur-reply shall be lodged therewith |
| April 14, 2010 | Oppositions to pre-trial motions due within five calendar days, but in no event later than April 14, 2010 (no replies) |

No pre-trial conference shall be held

7.    **Confidentiality**:

    a.    Substantive Consolidation:  A stipulated protective order governing confidentiality should be entered prior to the production of documents.  Counsel to the JPLs will circulate an initial draft to the Parties.  The Parties will work cooperatively to promptly enter into such a stipulation and present it to the Court for the Court's consideration.

    b.    Adversary Proceeding:  Same.

8.    **Motions to Compel and Motions for Protective Order**:

    a.    Substantive Consolidation:  Motions to compel discovery responses or to seek protective orders with respect to discovery requests shall proceed as follows:any meet and confer shall occur within **two (2) court days** after service of a party's request;

        (b)    the movant's papers or briefing in support of its motion shall be served on the respondent within **three (3) court days** after the meet and confer;

        (c)    the responding party shall insert its opposition to the motion and shall serve the moving party with its portion within **three (3) court days** after receiving the moving party's papers;

        (d)    the Parties agree to have any such motion heard on an expedited basis as soon

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    as the Court's schedule will allow; and

2           (e)   the Parties' counsel located outside of California shall be permitted to appear

3    telephonically at any hearings on such motions.

4        b.   <u>Adversary Proceeding</u>:  The above-described schedule shall apply to the parties for

5    motions to compel and motions for protective order to the extent that the disputed discovery is

6    pertinent to both matters.

7        To the extent not addressed in this Order, the Federal Rules of Bankruptcy Procedure, Local

8    Rules, and Federal Rules of Civil Procedure, where applicable, shall govern.

9        **IT IS SO ORDERED.**

10    ###

11

12    _____

13

14

15

16

17

18

19

20

21

22

23    

24    DATED: December 30, 2009              _____
                           United States Bankruptcy Judge

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

# EXHIBIT Q

1  LOUIS R. MILLER, State Bar No. 54141
   smiller@millerbarondess.com
2  MARTIN PRITIKIN, State Bar. No.
   210845
3  mpritikin@millerbarondess.com
   BRIAN PROCEL, State Bar No. 218657
4  bprocel@millerbarondess.com
   **MILLER BARONDESS, LLP**
5  1999 Avenue of the Stars, Suite 1000
   Los Angeles, California 90067
6  Telephone: (310) 552-4400
   Facsimile: (310) 552-8400
7
   Special Litigation Counsel for the Jointly
8  Administered Debtors in Possession and
   Steven M. Speier, the Chapter 11 Trustee
9  PAUL J. COUCHOT, State Bar No. 131934
   pcouchot@winthropcouchot.com
10 SEAN A. O'KEEFE, State Bar No. 122417
   sokeefe@ winthropcouchot.com
11 PETER W. LIANIDES, State Bar No. 16057
   plianides@ winthropcouchot.com
12 **WINTHROP COUCHOT**
   **PROFESSIONAL CORPORATION**
13 660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
14 Telephone: (949) 720-4165
   Facsimile: (949) 720-4111
15
   General Insolvency Counsel for
16 Administratively Consolidated Debtors-in-
   Possession and SCC Acquisitions, Inc.
17

```
+-----------------------------------+
|       FILED & ENTERED             |
|   +---------------------------+   |
|   |                           |   |
|   |       MAR 23 2010         |   |
|   |                           |   |
|   +---------------------------+   |
|   CLERK U.S. BANKRUPTCY COURT     |
|   Central District of California  |
|   BY mccall    DEPUTY CLERK       |
+-----------------------------------+
```

<center>

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA -- SANTA ANA DIVISION

</center>

| | |
|---|---|
| 19 | **CASE NO. 8:08-bk-17206-ES** |
| 20  In re | |
| | Jointly Administered With Case Nos. |
| 21  PALMDALE HILLS PROPERTY, | 8:08-bk-17209-ES; 8:08-bk-17224-ES; 8:08-bk-17225-ES; |
| LLC, AND ITS RELATED DEBTORS, | 8:08-bk-17227-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; |
| 22        Jointly Administered | 8:08-bk-17236-ES; 8:08-bk-17240-ES; 8:08-bk-17242-ES; |
| Debtors and Debtors-in- | 8:08-bk-17245-ES; 8:08-bk-17246-ES; 8:08-bk-17248-ES; |
| 23        Possession | 8:08-bk-17249-ES; 8:08-bk-17404-ES; 8:08-bk-17407-ES; |
| | 8:08-bk-17408-ES; 8:08-bk-17409-ES; 8:08-bk-17458-ES; |
| 24 | 8:08-bk-17465-ES; 8:08-bk-17470-ES; 8:08-bk-17472-ES; |
| Affects: | 8:08-bk-17573-ES; 8:08-bk-17574 ES; 8:08-bk-17575 ES; |
| 25 | and 8:08-bk-17588-ES |
| ☒ All Debtors | |
| 26 ☐ Palmdale Hills Property, LLC, | |
| ☐ SunCal Beaumont Heights, LLC | |
| 27 ☐ SCC/Palmdale, LLC | |
| ☐ SunCal Johannson Ranch, LLC | |
| 28 | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552 4400  FAX (310) 552 8400

---

<center>PROPOSED ORDER RE REVISED DISCOVERY SCHEDULE</center>

61768.1

| | |
|---|---|
| 1 | ☐ SunCal Summit Valley, LLC |
| | ☐ SunCal Emerald Meadows LLC |
| 2 | ☐ SunCal Bickford Ranch, LLC |
| 3 | ☐ Acton Estates, LLC |
| | ☐ Seven Brothers LLC |
| 4 | ☐ SJD Partners, Ltd. |
| | ☐ SJD Development Corp. |
| 5 | ☐ Kirby Estates, LLC |
| | ☐ SunCal Communities I, LLC |
| 6 | ☐ SunCal Communities III, LLC |
| 7 | ☐ SCC Communities LLC |
| | ☐ North Orange Del Rio Land, LLC |

*Caption Continued on Next Page*

*Continued from Previous Page*

☐ LBL-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

**Also Affects:**

ADVERSARY PROCEEDING NO. 8:09-ap-01005-ES

**DEBTORS' PROPOSED ORDER REGARDING REVISED DISCOVERY SCHEDULE IN CONNECTION WITH (1) SUBSTANTIVE CONSOLIDATION MOTION, AND (2) ADVERSARY PROCEEDING**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

PROPOSED ORDER RE REVISED DISCOVERY SCHEDULE

61768.1

<div align="center">

**ORDER**

</div>

The Court, having read and considered the *Declaration of Martin Pritikin In Support of Debtors' Proposed Order Regarding Revised Discovery Schedule In Connection With (1) Substantive Consolidation Motion, and (2) Adversary Proceeding*, and all argument from the parties at the February 11, 2010 hearing on the Debtors' and Lehman Entities' respective motions to compel, and good and sufficient cause appearing,

IT IS HEREBY ORDERED that the parties shall abide by the following with regard to: (1) document production in connection with the substantive consolidation motion ("Sub Con") and adversary proceeding ("Adversary"); (2) depositions in Sub Con; and (3) briefing and trial in Sub Con:

1.   **Scheduling**

| | |
|---|---|
| April 9 | Deadline for non-movants/defendants to complete document production |
| April 19 | Deadline for debtors/plaintiffs to complete document production |
| April 30 | Non-expert depositions commence |
| June 11 | Parties' disclosure of experts |
| June 18 | Parties exchange expert reports; no supplemental reports absent leave of the Court |
| June 25 | Non-expert depositions conclude |
| June 28 | Expert depositions commence |
| July 9 | Expert depositions conclude |
| July 13 | Debtors' amended or supplemental brief incorporating evidence |
| July 30 | Opposition briefs |
| August 6 | Debtors' reply brief |
| | Pre-trial motions, e.g., motions in limine, due |
| August 13 | Last day to request surreply; the proposed surreply shall be lodged therewith |
| August 16 | Opposition to pre-trial motions |
| | (No Pre-trial conference shall be held) |

August 23     Trial

2.   **Payment of Costs for Document Production**

Lehman ALI, OVC Holdings LLC, and Northlake Holdings LLC (collectively, the "Lehman Entities") shall pay one-half of the costs associated with Debtors' production of documents associated with the additional custodians requested in their motion to compel. Such costs shall include:

(a) one-half of the costs incurred as a result of charges by the Debtors' e-discovery vendor, e-Stet, for extraction, processing, batching, uploading, formatting, TIFFing, and other costs associated with the production of these custodian's documents; and

(b) one-half of the costs of review of the documents for responsiveness and privilege, including hourly wages of contract attorneys and paralegals hired specifically to review the documents requested by Lehman.

The Lehman Entities shall submit payment to Winthrop Couchot PC for their one-half of applicable discovery costs within ten (10) calendar days of receipt by the Lehman Entities of an invoice submitted by Winthrop Couchot or the Debtors for goods or services incurred in connection with the applicable discovery.

3.   **Other Matters**

a.   The witnesses whose testimony relates to both SubCon and the Adversary should be deposed only once where possible. The depositions shall proceed according to the dates listed above.

b.   The December 31, 2009 scheduling order applies to the extent not superseded herein.

PROPOSED ORDER RE REVISED DISCOVERY SCHEDULE

61768.1

1    To the extent not addressed in this Order, the Federal Rules of Bankruptcy Procedure, Local

2    Rules, and Federal Rules of Civil Procedure, where applicable, shall govern.

3

4    **IT IS SO ORDERED.**

5                                              ###

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DATED: March 23, 2010

United States Bankruptcy Judge

25

26

27

28

PROPOSED ORDER RE REVISED DISCOVERY SCHEDULE

61768.1

# EXHIBIT R

1  Richard N. Pachulski (CA Bar No. 90073)
   Dean A. Ziehl (CA Bar No. 84529)
2  Shirley S. Cho (CA Bar No. 192616)
3  Pachulski Stang Ziehl & Jones LLP
   10100 Santa Monica Blvd. 11th Floor
4  Los Angeles, California  90067-4100
   Telephone: (310) 277-6910
5  Facsimile:  (310) 201-0760

6  -and-

7
   Edward Soto, Esq. (admitted pro hac vice)
8  Shai Waisman, Esq. (admitted pro hac vice)
   WEIL, GOTSHAL & MANGES LLP
9  767 Fifth Avenue
   New York, NY  10153-0119
10 Telephone: (212) 310-8000
11 Facsimile: (212) 310-8007

12 Attorneys for Lehman ALI, Inc.

13          UNITED STATES BANKRUPTCY COURT
14       FOR THE CENTRAL DISTRICT OF CALIFORNIA
                  (SANTA ANA DIVISION)
15

| 16 | In re | Case No. 8:08-17206-ES |
|----|-------|------------------------|
| 17 | | Chapter 11 |
| 18 | PALMDALE HILLS PROPERTY, LLC, | |
| 19 | Debtor. | **NOTICE OF FILING OF LETTER REQUESTING JOINT STATUS CONFERENCE** |
| 20 | | |
| 21 | | |

22          Lehman ALI, Inc., by and through its undersigned counsel, files this letter attached as
23 Exhibit A hereto.
24 ///
25 ///
26 ///
27 ///
28 ///

DOCS_LA:198271.1

| | |
|---|---|
| 1 | Dated:    March 9, 2009 |

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Richard M. Pachulski*
Richard M. Pachulski
Dean A. Ziehl
Shirley S. Cho

-and-

Edward Soto, Esq. (*admitted pro hac vice*)
Shai Waisman, Esq. (*admitted pro hac vice*))
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys For Lehman ALI, Inc.

DOCS_LA:198271.1

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

DOCS_LA:198271.1

3

# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE
NEW YORK, NY 10153

(212) 310-8000
FAX: (212) 310-8007

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

March 9, 2009

SHAI Y. WAISMAN
DIRECT LINE (212) 310-8274
E-MAIL: shai.waisman@weil.com

**BY EMAIL**

Honorable James M. Peck
United States Bankruptcy Court – Southern District of New York
Courtroom 601
One Bowling Green
New York, NY 10004-1408

Honorable Erithe Smith
United States Bankruptcy Court - Central District of California
Ronald Reagan Federal Building and United States Courthouse
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

Re: *In re Lehman Brothers Holdings, Inc., et al.* Case No. 08-13555
*In re Palmdale Hills Property, LLC, et al.,* Case No. 08-17206
*In re SunCal Heartland, LLC,* Case No. 8:08-17407-ES
*In re LB-L-SunCal Northlake, LLC,* Case No. 8:08-17408-ES
*In re SunCal Marblehead, LLC,* Case No. 8:08-17409-ES
*In re SunCal Century City, LLC,* Case No. 8:08-17458-ES
*In re SunCal PSV, LLC,* Case No. 8:08-17465-ES
*In re Delta Coves Venture, LLC,* Case No. 8:08-17470-ES
*In re SunCal Torrance, LLC,* Case No. 8:08-17472-ES
*In re LB-L SunCal Oak Valley LLC,* Case No. 8:08-17404-ES
*In re SunCal Oak Knoll, LLC,* Case No. 8:08-17588-ES

To the Honorable Judges Peck and Smith:

We represent Lehman Brothers Holdings Inc. ("LBHI") and Lehman
Commercial Paper Inc. ("LCPI"), a debtors and debtors in possession in the Chapter 11
Case No. 08-13555 (JMP) pending in the United States Bankruptcy Court for the
Southern District of New York, as well as Lehman ALI, Inc. ("ALI"), Northlake
Holdings, LLC ("Northlake Holdings"), and OVC Holdings, LLC ("OVC Holdings" and
collectively, with ALI, Northlake Holdings, and LCPI, the "Lehman Lenders" together
with LBHI and their debtor affiliates, the "Lehman Debtors").

M11:\2065190314PCN031.DOC\58399.0003

WEIL, GOTSHAL & MANGES LLP

> Honorable James M. Peck
> Honorable Erithe Smith
> Page 2

As Your Honors are aware, the Lehman Lenders are lenders to various SunCal affiliated debtors (collectively, the "SunCal Debtors") whose chapter 11 cases (collectively, the "SunCal Bankruptcy Cases") are currently pending in the United States Bankruptcy Court for the Central District of California.

We are writing to express our concern for the continuing actions by the SunCal Debtors against the Lehman Lenders, which actions collectively threaten LCPI's property interests as well as that of the other Lehman Debtors.

The SunCal Debtors:

- are currently pursuing equitable subordination litigation against ALI, Northlake Holdings, and OVC Holdings that wholly is premised on the alleged "bad acts" of the Lehman Debtors and contains paragraph after paragraph (as set forth in pages 8-9 of the annexed Motion) (including as alleged in paragraph 72 of their proposed second amended complaint), that ALI and LCPI are alter egos of each other and their parent, LBHI, which, if true, would directly implicate the interests of all the Lehman Debtors, and the SunCal Debtors intend to amend their complaint to (i) include claims against LCPI on essentially the same bases and (ii) seek to transfer the liens of the Lehman Lenders (which constitute collateral for their loans to the SunCal Debtors) to the SunCal Debtors' estates;

- have filed a joint plan of reorganization that is premised on, among other things, equitably subordinating the Lehman Lenders' claims to those of all the SunCal Debtors' unsecured creditors and transferring the liens securing those claims to the SunCal Debtors' estates; and

- are pursuing a motion to eviscerate the statutorily mandated credit bid rights of ALI, Northlake Holdings, and OVC Holdings (i.e., prevent ALI, Northlake Holdings, and OVC Holdings from credit bidding over $1 billion in claims (comprised of outstanding principal alone) on the sale of properties that constitute these lenders' collateral, which motion, at its core, is also premised on the alleged "bad acts" of the Lehman Debtors.

WEIL, GOTSHAL & MANGES LLP

Honorable James M. Peck
Honorable Erithe Smith
Page 3

All of these actions, individually, and certainly together, threaten the Lehman Debtors' property interests.

In light of the foregoing, LCPI and LBHI are prepared to file a motion seeking, among other things, (a) to enforce the automatic stay as it relates to LCPI and any of its affiliated-debtor entities and (b) to enjoin the SunCal Debtors and/or their non-debtor affiliates from taking any actions that would implicate or impact the rights and property of the Lehman Debtors' estates. A copy of the proposed motion ("Motion") is enclosed herewith. Although we do not attach copies of the exhibits cited in the Motion or the accompanying complaint, these, too, can be made available to the Courts.

Notwithstanding the foregoing, the Lehman Debtors believe it would behoove all parties to resolve the issues between and among them consensually. To that end, the Lehman Lenders propose a joint conference involving the SunCal Debtors, the Lehman Lenders, and each of the Courts to discuss and determine a process that can protect the interests of *all* of the debtors in the above-referenced bankruptcy cases. Should the Courts be inclined to agree, they may want to consider staying any hearing on the proposed Motion noted above as well as any hearings in the SunCal Bankruptcy Cases that affect any of the Lehman Lenders' interests pending a joint status conference on the above-noted matters.

I am, as always, available to answer any questions the Courts may have.

Respectfully submitted,

Shai Y. Waisman

Encl.

cc:     Paul Couchot, Esq.
        Mr. Steven M. Speier
        Dennis O'Donnell, Esq.
        Evan Fleck, Esq.
        Alan Friedman, Esq.
        Richard Pachulski, Esq.
        Dean Ziehl, Esq.
        Michael Bond, Esq.
        Edward Soto, Esq.
        Christopher Pace, Esq.

MJ1:\2065191\0314FCN031.DOC\58399.0003

# EXHIBIT S

1 | PAUL J. COUCHOT - State Bar No. 131934
PETER W. LIANIDES - State Bar No. 160517
2 | PAYAM KHODADADI - State Bar No. 239906
**WINTHROP COUCHOT**
3 | **PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
4 | Newport Beach, CA 92660
pcouchot@winthropcouchot.com
5 | plianides@winthropcouchot.com
payam@winthropcouchot.com
6 | Telephone: (949) 720-4165
Facsimile: (949) 720-4111
7 |
8 | General Insolvency Counsel for the
Debtors and Debtors in Possession
9 |
**UNITED STATES BANKRUPTCY COURT**
10 | **CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**
11 |

12 | In re

Palmdale Hills Property, LLC, and its Related
13 | Debtors.

14 |     Jointly Administered Debtors
     and Debtors-in-Possession
15 |

16 | Affects:
☐ All Debtors
17 | ☐ Palmdale Hills Property, LLC,
☐ SunCal Beaumont Heights, LLC
18 | ☐ SCC/Palmdale,
19 | ☐ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
20 | ☐ SunCal Emerald Meadows LLC
21 | ☐ SunCal Bickford Ranch, LLC
22 | ☐ Acton Estates, LLC
☐ Seven Brothers LLC
23 | ☐ SJD Partners, Ltd.
24 | ☐ SJD Development Corp.
☐ Kirby Estates, LLC
25 | ☐ SunCal Communities I, LLC
26 | ☐ SunCal Communities III, LLC
☒ SCC Communities LLC
27 | ☒ North Orange Del Rio Land, LLC
28 | ☒ Tesoro SF, LLC

Case No. 8:08-bk-17206-ES
Jointly Administered With Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES
8:08-bk-17224-ES; 8:08-bk-17242-ES
8:08-bk-17225-ES; 8:08-bk-17245-ES
8:08-bk-17227-ES; 8:08-bk-17246-ES
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES
8:08-bk-17249-ES; 8:08-bk-17573 ES
8:08-bk-17574 ES; 8:08-bk-17575 ES
Chapter 11 cases

DEBTORS' MOTION FOR ORDER:
(1) APPROVING OVERBID PROCEDURES
IN CONNECTION WITH PROPOSED SALE
OF SUBSTANTIALLY ALL ASSETS OF
THE DEBTORS' ESTATES; (2)
APPROVING BREAK-UP FEE;
(3) DISALLOWING CREDIT BIDS RIGHTS
OF DISPUTED SECURED CREDITORS,
LEHMAN ALI, INC., NORTHLAKE
HOLDINGS AND OVC HOLDINGS; AND
(4) SETTING HEARING ON APPROVAL
OF SALE OF ASSETS

DATE:    March 10, 2009
TIME:    10:30 a.m.
PLACE:    Courtroom 5A

MAINDOCS-#127500-v1-PalmdaleHillsSaleProceduresMotion.DOC

**TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY**

**JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES-**

**IN-INTEREST:**

SCC Communities (Case No. 8:08-17573 ES), LLC; North Orange Rio, LLC (Case

No. 8:08-bk-17574 ES); and Tesoro SF, LLC (Case No. 8:08-17575 ES) Debtors and Debtors in

Possession in the above-captioned administratively consolidated cases (the "Related Debtors")

hereby move ("Motion") for an order providing the following relief:

    1.    Approving the proposed overbid procedures in connection with the proposed

sale ("Sale") of substantially all assets of the Related Debtors' estates, pursuant to Letter of

Intent between, among others as described herein below, the Related Debtors and D.E.

Shaw (the "D.E. Shaw Offer"), a true and complete copy of which is attached as

Exhibit "1" to the Declaration of Steven M. Speier (the "Speier Declaration") filed in

support of the Motion;

    2.    Approving the proposed marketing and advertising procedure intended to be

utilized and implemented by the Related Debtors;

    3.    Approving the break-up fee in the amount of $4 million payable from the

closing of a sale in the event of a sale to a party other than D.E. Shaw;

    4.    Disallowing any purported credit bid rights pursuant to Bankruptcy Code

Section 363(k) of the disputed secured creditors, Lehman ALI, Inc. ("Lehman ALI"), OVC

Holdings LLC, a California limited liability company ("OVC Holdings") and Northlake

Holdings LLC, a California limited liability company ("North Lake Holdings") in

connection with bidding on the proposed Sale;

    5.    Setting a hearing on the Sale approximately 60 days from the date of

approval of this Motion; and

    6.    Granting such other and further relief as the Court deems just and

appropriate.

This motion is made on the basis of the within points and authorities, the Declaration of

Steven Speier ("Speier Declaration"), the Declaration of Bruce Cook ("Cook Declaration"), and

-2-

MAINDOCS-#127500-v1-PalmdaleHillsSaleProceduresMotion.DOC

1  the Declaration of Frank Faye ("Faye Declaration"), filed concurrently herewith, and such other

2  evidence as the Court elects to consider prior to or at the hearing on this matter.

3  IF YOU DO NOT OPPOSE THE MOTION DESCRIBED ABOVE, YOU NEED TAKE NO

4  FURTHER ACTION. HOWEVER, IF YOU OPPOSE THE MOTION, OPPOSITIONS MUST

5  BE FILED WITH THE COURT NO LATER THAN THIRTEEN (13) DAYS PRIOR TO THE

6  HEARING ON THE MOTION. YOU MUST FILED YOUR OPPOSITION WITH THE CLERK

7  OF THE UNITED STATES BANKRUPTCY COURT LOCATED AT 411 WEST FOURTH

8  STREET, SUITE 2030, SANTA ANA, CALIFORNIA 92701. YOU MUST ALSO SERVE A

9  COPY OF YOUR OPPOSITION TO THE MOTION UPON COUNSEL FOR THE RELATED

10  DEBTORS AT THE MAILING ADDRESS INDICATED IN THE UPPER LEFT CORNER OF

11  THE FIRST PAGE OF THIS MOTION, UPON COUNSEL TO THE OFFICIAL COMMITTEE

12  OF CREDITORS HOLDING UNSECURED CLAIMS - IRELL & MANELLA, ATTN: ALAN J.

13  FRIEDMAN, ESQ., 840 NEWPORT CENTER DR., #400, NEWPORT BEACH, CA 92660-6324,

14  AND UPON THE OFFICE OF THE UNITED STATES TRUSTEE LOCATED AT 411 WEST

15  FOURTH STREET, SUITE 9041, SANTA ANA, CALIFORNIA 92701. THE RELATED

16  DEBTORS' COUNSEL WILL ACCEPT E-MAIL SERVE AT THE FOLLOWING

17  ADDRESSES: PCOUCHOT@WINTHROPCOUCHOT.COM, WITH A COPY TO

18  PJ@WINTHROPCOUCHOT.COM. ANY FAILURE TO TIMELY FILE AND SERVE AN

19  OPPOSITION MAY RESULT IN ANY SUCH OPPOSITION BEING WAIVED, AND THE

20  COURT MAY ENTER AN ORDER GRANTING THE MOTION WITHOUT FURTHER

21  NOTICE.

22
23
24
25
26
27
28

-3-

MAINDOCS-#127500-v1-PalmdaleHillsSaleProceduresMotion.DOC

1    WHEREFORE, the Related Debtors pray that the Court enter an order granting the relief

2  requested above, and such additional relief as the Court deems just and proper

3  DATED: February 18, 2009                **WINTHROP COUCHOT**
                                           **PROFESSIONAL CORPORATION**
4

5                                          By:  ____/s/_____
                                               Paul J. Couchot
6                                              Peter W. Lianides
                                               Payam Khodadadi
7                                          General Insolvency Counsel for the Related Debtors

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

MAINDOCS-#127500-v1-PalmdaleHillsSaleProceduresMotion.DOC