SALANS LLP
  Claude D. Montgomery
  Paul C. Gunther
  Michael Kauffman
Rockefeller Center
620 Fifth Avenue
New York, NY 10020-2457
Tel: (212) 632-5500
Fax: (212) 632-5555

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re                                                            :    Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*                          :    08-13555 (JMP)
                                               Debtors.          :
                                                                 :    (Jointly Administered)
                                                                 :
-----------------------------------------------------------------x

## DECLARATION OF JOHAN STENBERG IN SUPPORT OF SWEDBANK'S MOTION PURSUANT TO FED. R. BANKR. P. 8005 FOR STAY PENDING APPEAL OF THE ORDER GRANTING THE DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE ENFORCING THE AUTOMATIC STAY AGAINST AND COMPELLING PAYMENT OF POST-PETITION FUNDS BY SWEDBANK AB

I, Johan Stenberg, make this declaration under the provisions of 28 U.S.C. §1746(1) and state as follows:

1.    I am over eighteen years of age.

2.    I am competent to make this affidavit, which is based on my own personal knowledge and upon information and documents from business records that I believe to be true and accurate.

3.    I submit this affidavit in support of Swedbank AB (publ.) ("Swedbank")'s Motion Pursuant to Fed. R. Bankr. P. 8005 for Stay Pending Appeal of the Order Granting the Debtors' Motion Pursuant to Sections 105(A) and 362 of the Bankruptcy Code Enforcing the

NewYork 1345751.7

Automatic Stay Against and Compelling Payment of Post-Petition Funds by Swedbank AB ("Motion").

4. I hold the position of Senior Vice President at Swedbank. I have been employed by Swedbank at various positions since I was first hired in June of 1983. In my capacity as Senior Vice President, I am familiar with Swedbank's dealings with Lehman Brothers Holding, Inc. ("LBHI" or "Debtor") and its affiliates with whom Swedbank was doing business or acted as a counterparty prior to September 15, 2008. Since the commencement of the LBHI Chapter 11 reorganization case, I have coordinated Swedbank's investigation and response to the case and its proceedings.

5. This Declaration follows a declaration ("First Declaration") by me in support of Swedbank's objection to the motion by Debtors Pursuant to Sections 105(A) and 362 of the Bankruptcy Code Enforcing the Automatic Stay Against and Compelling Payment of Post-Petition Funds by Swedbank AB [Dkt. 6978]. A true and correct copy of the First Declaration, with exhibits, is attached hereto as Exhibit A.

6. Swedbank is a duly registered bank and financial institution organized under the laws of the Kingdom of Sweden.

7. As of December 31, 2009, the last year for which published figures are available, the total assets of the Swedbank Group were approximately SEK 1,795,000,000,000 or roughly US $249,904,000,000. The Swedbank Group's Tier 1 capital ratio as of that date was 13.5% according to Basel 2 standards and had total equity of approximately SEK 89,974,000,000. *See* Swedbank Annual Report 2009, at 60. A true and correct copy of the 2009 Swedbank Annual Report is attached hereto as Exhibit B.

2

8. Swedbank maintains a branch in New York State at One Penn Plaza, New York, New York 10119-0002, 15th Floor and is regulated by the New York State Banking Department as a foreign branch of a foreign bank.

### *LBHI Obligations to Swedbank*

9. As provided in additional detail in the First Declaration, Swedbank entered into an ISDA Master Agreement with each of the following Lehman entities: Lehman Brothers Commercial Corporation ("LBCC"), Lehman Brothers International (Europe), Inc. ("LBIE"), Lehman Brothers Finance, S.A. ("LBFSA"), Lehman Brothers Special Financing, Inc. ("LBSFI" and together with LBCC, LBIE and LBFSA, "Lehman Subsidiaries"), and LBHI, acting through its UK Branch. The ISDA Master Agreements for the Lehman Subsidiaries, and LBHI shall be referred to collectively as the "ISDA Master Agreements."

10. Additionally, LBHI has guaranteed the ISDA Master Agreement obligations of each of the Lehman Subsidiaries through guarantees under each ISDA Master Agreement ("LBHI Guarantees").

11. Under each of the Master Agreements an Event of Default,[1] whether subject to proper notice or automatic termination, triggers an Early Termination Date. Early termination gives rise to a payment obligation from one party or another irrespective of the identity of the defaulting party. A party entitled to receive the payment may credit "setoff" the obligation due to it against obligation it may owe to the other party. ISDA Master Agreements, §6(e). Under each ISDA Master Agreement, there is a "Set-off" definition. "Set-off" is defined as "set-off, offset, combination of accounts, right of retention or withholding or similar right or requirement to which the payer of an amount under Section 6 is entitled or subject (whether

---

[1] Each capitalized term that is not defined herein shall have the same definition as in the ISDA Master Agreements.

3

arising under this Agreement, another contract, applicable law or otherwise) that is exercised by, or imposed on, such payer." ISDA Master Agreements, §14.

12. The Schedule to the LBHI Master Agreement *inter alia* provides:

> "In addition to any rights of set-off a party may have as a matter of law or otherwise, upon the occurrence of an Event of Default or an Additional Termination Event and the designation of an Early Termination Date pursuant to Section 6 of the Agreement with respect to a party ("X"), the other party ("Y") will have the right (but not be obliged) without prior notice to X or any other person to set-off or apply any obligation of X owed to Y (and to any Affiliate of Y) (whether or not matured or contingent and whether or not arising under this Agreement, and regardless of the currency, place of payment or booking office of the obligation) against any obligation of Y (and of any Affiliate of Y) owed to X (whether or not matured or contingent and whether or not arising under this Agreement, and regardless of the currency, place of payment or booking office of the obligation)" ("ISDA Contractual Setoff Right").

Schedule to the LBHI Master Agreement, Part 5(b).

13. On September 15, 2008, LBHI filed a voluntary petition for reorganization under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court").

14. As more fully described in the First Declaration ¶¶ 12-14, during the pendency of the LBHI reorganization case, Swedbank has timely and properly preserved all its rights with respect to all amounts under the ISDA Master Agreements and LBHI Guarantees, including the timely filing of claims against LBHI related to (i) Swedbank's ISDA Master Agreement with LBHI in the amount of SEK 356,712, and (ii) LBHI's guarantees of the Lehman Subsidiaries in the total amount of SEK 119,231,860 which included SEK 1,219,792 due from LBCC; SEK 43,296,206 due from LBIE; SEK 62,586,227 due from LBSFA; and SEK 12,129,635 due from LBSFI, both exclusive of costs and interest provided for under the ISDA Master Agreements.

4

NewYork 1345751.7

15. Swedbank is not in default under any of the ISDA Master Agreements, including the LBHI ISDA Master Agreement, and has not engaged in any conduct resulting in an Event of Default. LBHI has not suggested to the contrary in any communication to Swedbank or its counsel.

***Swedbank Obligations to LBHI***

16. In January 2008, LBHI, through its UK Branch, opened a deposit account at Swedbank identified as No. 17608 ("Setoff Account"). The pre-petition balance in the Setoff Account was SEK 2,640,124.06, but rose due to a series of unsolicited post-position deposits in the amount of SEK 82,765,466.45. The Setoff Account balance reached its peak on November 12, 2008 with a balance of SEK 84,906,363.85.

17. Following a communication from LBHI, by letter dated November 27, 2008, Swedbank notified LBHI that it would, on December 1, 2008, setoff SEK 371,012 against the Setoff Account under the ISDA Master Agreement with LBHI the related LBHI Guarantees.

18. By letter dated January 30, 2009, Swedbank indicated that it had placed an administrative freeze on the Setoff Account arising from LBHI's obligations as guarantor of the ISDA Master Agreements with LBCC, LBFSA, LBIE and LBSFI (the "Administrative Freeze"). Such letter utilized the following additional language: "*Swedbank also reserve[s] and retain[s] the right to set off against the account any claims in relation to qualified financial transactions under the safe harbor provisions or otherwise.*" Exhibit D of the Declaration of Adrian Teng in Support of Debtors Motion Enforcing the Automatic Stay Against Swedbank AB [Dkt. 6736] ("Teng Declaration"). A true and correct copy of the Teng Declaration is attached hereto as Exhibit C.

19. Since the imposition of the Administrative Freeze, the amount in the Setoff Account has remained constant at SEK 82,765,466.45 ("Current Setoff Account

5

Balance"). The Current Setoff Account Balance is roughly USD $11,453,300 at current exchange rates.

***Underlying Motion***

20. On January 22, 2010, LBHI moved, pursuant to Sections 105(a) and 362 of the Bankruptcy Code for an Order Enforcing the Automatic Stay Against and Compelling Payment of Post-Petition Funds by Swedbank AB [Dkt. 6734] ("Underlying Motion").

21. On February 3, 2010, Swedbank filed its objection to the Underlying Motion [Dkt. 6976] ("Objection") which Objection attached the First Declaration.

22. On April 9, 2010, LBHI replied to the Objection [Dkt. 8196] ("Reply").

23. On April 14, 2010, the Bankruptcy Court granted LBHI's Motion after oral arguments reserving the right to submit a written opinion in the event Swedbank elected to appeal. I am advised that the Court denied Swedbank's oral request for a stay pending appeal requiring the submission of papers for consideration of such a request.

24. I am informed that on April 16, 2010, by email correspondence, Swedbank's counsel inquired of LBHI's counsel if it would consent to a stay pending appeal. LBHI rejected Swedbank's stay pending appeal request by email dated April 19, 2010.

25. On April 20, 2010, LBHI and Swedbank agreed to a proposed order ("Order") providing for, *inter alia*, the payment of the Current Setoff Account Balance within one business day of the entry into force of the Order.

***Irreparable Harm***

26. If the Order is not stayed pending appeal, Swedbank will suffer irreparable harm. If Swedbank is compelled to transfer the Current Setoff Account Balance to LBHI prior to exhaustion of its appeal rights, it will lose all setoff rights simply because the countervailing obligation due from Swedbank to LBHI will have been satisfied. Without such a contract

6

obligation (deposit account liability) there simply is nothing in Swedbank's possession against which to setoff against the payment amounts due from the Lehman Subsidiaries and LBHI Guarantees. With no capacity to setoff, any adjudication of the scope of the right to setoff is moot because it cannot be restored.

27. Swedbank also will suffer irreparable harm if the Order is not stayed and Swedbank prevails on appeal but cannot recover in full against LBHI on its prepetition guarantee claims. According the LBHI's Disclosure Statement, Swedbank (and all other guarantee creditors) will receive less than 100 cents as against LBHI. As a creditor of the Lehman Subsidiaries, Swedbank's recovery will also be substantially less than 50 cents. *See* Disclosure Statement [Dkt. 8332], pp 6, 7, 11 and 12.[2]

28. Further, Swedbank will suffer irreparable harm if the Order is not stayed and Swedbank prevails on appeal but the bankruptcy estate has already distributed all estate funds capable of being returned to the Setoff Account. Based on information available to me via press reports, I understand that it is possible that the Debtors may have distributed all estate funds prior to the conclusion of the appellate process.

*No Bond Required*

29. I understand that the Court has the discretion to require or not the posting of a bond. I do not believe a bond is necessary. Under the ISDA Master Agreement with LBHI, LBHI and the Lehman Subsidiaries are the contract default parties. I do not believe LBHI will suffer any incidental harm from Swedbank's continued possession of the Setoff Account Balance. As indicated in paragraph 7, Swedbank is well capitalized and is solvent, able to pay obligations as they come due.

---

[2] A true and correct copy of the relevant pages of the Disclosure Statement are attached hereto as Exhibit D.

7

NewYork 1345751.7

30. Swedbank is able and willing to pay the Current Setoff Account Balance if and when LBHI prevails after all appeals have been exhausted.

31. Additionally, and notwithstanding Swedbank's ability and willingness to transfer the Setoff Account Balance after all appeals have been exhausted, Swedbank proposed in writing, through Counsel, to post a bond in exchange for Debtors' consent to a stay. The Debtors have rejected this offer.

32. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 21, 2010

/s/ Johan Stenberg
Johan Stenberg
Senior Vice President
Swedbank AB (publ.)

NewYork 1345751.7