1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555(JMP)

Adv. Case No. 08-01420(JMP)(SIPA)

Adv. Case No. 09-01480

- - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS INC., et al.,

              Debtors.

- - - - - - - - - - - - - - - - - - -x

SECURITIES INVESTOR PROTECTION CORPORATION,

              Plaintiff-Appellant,

      -against-

LEHMAN BROTHERS INC.,

              Defendant.

- - - - - - - - - - - - - - - - - - -x

PT BANK NEGARA IndONESIA (PERSERO) TBK,

              Plaintiff,

      -against-

LEHMAN BROTHERS SPECIAL FINANCING, INC.,

              Defendant.

- - - - - - - - - - - - - - - - - - -x

(continued on next page)

```
                                                              2

 1
 2             U.S. Bankruptcy Court
 3             One Bowling Green
 4             New York, New York
 5
 6             December 16, 2009
 7             10:02 AM
 8
 9
10   B E F O R E:
11   HON. JAMES M. PECK
12   U.S. BANKRUPTCY JUDGE
13
14
15
16
17
18
19
20
21
22
23
24
25
```

114

1      THE COURT:  Okay, does this mean that the complaint
2  can be amended by stipulation without the need for motion
3  practice?
4      MR. STREMBA:  Yes, Your Honor.
5      THE COURT:  Fine.
6      MR. STREMBA:  Your Honor's permission is required, but
7  I believe --
8      THE COURT:  I hereby --
9      MR. STREMBA:  -- everybody's consenting --
10     THE COURT:  I hereby grant you permission.
11     MR. STREMBA:  Thank you, Your Honor.
12     THE COURT:  Okay.
13     MR. CHRISTENSEN:  I believe the next matter on the
14 agenda, Your Honor, are the Rule 60(b) motions.  With the
15 completion of the pre-trial, that concludes my business before
16 the Court, and I ask to be excused.
17     THE COURT:  So you may be excused.
18     MR. CHRISTENSEN:  Thank you, and I'll turn it over to
19 those who are here for the 60(b) motions.
20     THE COURT:  All right, I'm going to provide a bench
21 ruling with respect to the motion that was argued last week in
22 which Barclays Capital asserted that the filing of 60(b)
23 motions by each of the creditors' committee and the trustee and
24 the LBI SIPC case constituted an at issue waiver of the
25 attorney-client privilege.  Here's my ruling.

115

At the outset, the Court examines the relevant law governing the attorney-client privilege. This privilege exists to encourage full and frank communication between attorneys and their clients, and thereby promote broader public interest in the observance of law and the administration of justice. See Morande Auto Group v. Metropolitan Inc., 2009 WL 650444 at *2 (D. Conn., Mar. 12, 2009). Accordingly, courts in the Second Circuit have exercised great caution when construing rules resulting in the waiver of the privilege. Per re: the County of Erie, 546 F.3d 222 at 228 (2nd Cir. 2008). An excerpt from that case, "Rules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust should be formulated with caution."

Generally, courts have found that parties implicitly waive the attorney-client privilege in three factual scenarios. When a client testifies concerning portions of the attorney-client communication, when a client places the attorney-client relationship directly at issue, and when a client asserts reliance on an attorney's advice as an element of a claim or defense. County of Erie, 546 F.3d at 228. It is this third instance of at issue privilege waiver on which Barclays relies. County of Erie sets forth the applicable legal standard in the Second Circuit for determining implied at issue waiver of attorney-client privilege. That case defined the test as whether the moving party can prove that the opposing party

116

1  "relied on the privileged communication as a claim or defense,
2  was an element of a claim or defense." 546 F.3d at 228.
3  County of Erie examined whether e-mails exchanged between a
4  county attorney's office and sheriff's office concerning strip
5  searches were admissible in a lawsuit challenging their
6  constitutionality. The defendants in that case invoked an
7  objective, qualified immunity defense in that they believed
8  their conduct had been legal. County of Erie, 546 F.3d at 229.
9  The Second Circuit held that the defendant's reliance on an
10 objective, rather than subjective legal defense did not
11 constitute at issue waiver. As stated in that case,
12 "Petitioners do not claim a good faith or state of mind
13 defense. They maintain only that their actions were lawful or
14 that any rights violated were not clearly established. In view
15 of the litigation circumstances, any legal advice rendered is
16 irrelevant to any defense so far raised."
17       Moreover, the Second Circuit emphasized that a finding
18 of waiver requires actual reliance on privileged advice,
19 whereas the "mere indication" of privileged advice is
20 "insufficient to place legal advice at issue." Under the test
21 as enunciated in Erie, then, the 60(b) motions filed by the
22 trustee and the committee did not implicitly waive the
23 attorney-client privilege with respect to their advisor's
24 knowledge and understanding of the sale transaction. Despite
25 Barclays' arguments to the contrary, the claims asserted by the

117

1  trustee and the committee in the 60(b) motions do not rely on
2  any legal advice provided by their respective advisors, with
3  regard to the sale transaction.  Instead, these claims rely on
4  allegedly misleading and incomplete public representations made
5  to the Court at the sale hearing and on the alleged failure of
6  Barclays and certain Lehman executives to say anything to
7  contradict those representations.  In other words, the claims
8  asserted by the trustee and the committee in the 60(b) motions
9  constitute what I'll call objective claims, asking the Court to
10 compare in-court disclosures concerning the sale transaction
11 with the provisions of the sale transaction as actually
12 consummated.  Neither the trustee nor the committee asserts
13 claims based on their subjective state of mind at the time of
14 the sale hearing.
15       The Court is also not persuaded by Barclays insistence
16 that the context of the claims of the trustee and the committee
17 and the 60(b) motions means that they necessarily waive the
18 attorney-client privilege.  At bottom, Barclays seems to argue
19 that reliance that purported mistakes and newly discovered
20 evidence means that the claims for relief under Rule 60(b)
21 necessarily implicate the contemporaneous advice provided by
22 professionals for the trustee and the committee at the time of
23 the sale hearing.  Based on the Court's review of these
24 motions, the Court disagrees.  The committee argued at the
25 hearing and in its 60(b) motion that the newly discovered

118

1  evidence underlying its 60(b) motion consists of discovery
2  unearthed during the Rule 2004 investigation, purportedly
3  demonstrating misrepresentations and nondisclosures related to
4  the sale transaction.  The trustee's 60(b) motion makes clear
5  that his arguments, with respect to mistakes, are, in fact,
6  premised on insufficient disclosure to the Court.  Thus the
7  60(b) motions simply do not implicate and rely on the advice
8  given by attorneys.
9       This holding on at issue waiver comports with widely-
10 recognized principles of public policy.  The attorney-client
11 privilege is critically important to ensuring open and frank
12 communications between attorneys and their clients.  For this
13 reason, policy considerations weigh in favor of strictly
14 construing any implied waivers of the privilege such as urged
15 by Barclays.
16      Barclays is not unfairly prejudiced by this holding
17 because other means exist for it to obtain relevant information
18 in support of its defense to the 60(b) motions.  The agreement
19 by LBHI to share otherwise privileged information is certainly
20 one important source.
21      Additionally, Barclays remains free to pursue
22 discovery from third parties that provided information to the
23 committee and the trustee's advisors concerning the sale
24 transaction.  Accordingly, Barclays is not worse off in that it
25 has not been denied access to information vital to its claims.

                                                                119

1    See County of Erie 546 F.3d at 229.
2         Moreover, should it become apparent at a later date
3    that the claims of the trustee or the committee as actually
4    presented, do, in fact, rely on legal advice provided by their
5    respective professionals, then Barclays remains free to assert
6    an at issue waiver at that time and seek additional related
7    discovery.
8         Finally, the fact that LBHI has agreed to produce
9    otherwise privileged documents to Barclays is not relevant to
10   any purported privilege waiver by either the trustee or the
11   committee.  The trustee and the committee are not similarly
12   situated to LBHI with respect to the current dispute.
13        As mentioned by counsel for LBHI on the record at the
14   hearing, LBHI viewed itself as distinct from the trustee and
15   the committee because LBHI made representations to the Court
16   with respect to the sale transaction at the sale hearing and
17   LBHI initiated the Rule 2004 discovery from Barclays.  LBHI
18   also based its 60(b) motion in part on the contention that its
19   attorneys were kept in the dark with respect to changes in the
20   sale transaction.
21        The motion by Barclays is denied without prejudice to
22   bringing a later motion should it become clear at some future
23   date that the committee or trustee is relying on privileged
24   communications to support 60(b) relief.  That's the ruling of
25   the Court.

120

1   The next item is a motion by the committee. If people
2   wish to leave at this point or change their seat that's fine.
3       MR. TECCE: Good afternoon, Your Honor. James Tecce
4   of Quinn Emanuel on behalf of the creditors' committee. First,
5   let me state at the outset, Your Honor, I appreciate sincerely
6   your entertaining the motion at this hearing. I know that it
7   was not originally scheduled for this time. I understand the
8   Court is extremely busy and I am going to be brief in my
9   presentation this afternoon.
10      THE COURT: Before we get started, what happened here
11  just in terms of the schedule because I had been advised that
12  this was off calendar --
13      MR. TECCE: Correct.
14      THE COURT: -- and then I was advised this morning it
15  was back on?
16      MR. TECCE: Your Honor, we had two motions on calendar
17  for today on the 10 o'clock agenda; this motion and a Rule 2004
18  motion. We adjourned the Rule 2004 motion but we inadvertently
19  adjourned this one as well. We had no intention of doing that,
20  it was fully briefed and the parties were ready to go forward,
21  it was just a mistake.
22      THE COURT: Okay, well, happily I reviewed this before
23  it was adjourned so I'm as ready for it as I'm going to be.
24      MR. TECCE: Thank you very much, Your Honor.
25      Your Honor, the committee motion asks the Court to