Page 1

```
 1
 2              UNITED STATES BANKRUPTCY COURT
 3              SOUTHERN DISTRICT OF NEW YORK
 4     ------------------------x
 5     In Re:
 6                                Chapter 11
 7     LEHMAN BROTHERS            Case No. 08-13555(JMP)
 8     HOLDINGS, INC., et al,     (Jointly Administered)
 9                 Debtors.
10     ------------------------x
11
12     B E F O R E :    HON. JAMES M. PECK,
13                      U.S. BANKRUPTCY JUDGE
14
15                                U.S. Bankruptcy Court
16                                One Bowling Green
17                                New York, New York
18
19                                April 9, 2010
20                                10:05 a.m.
21
22     Reported by:
23     MARY F. BOWMAN, RPR, CRR
24     JOB NO. 29397
25
```

Page 225

1    BOIES - OPENING STATEMENT
2    talked about in that motion?" referring to
3    the 60(b) motion.
4        "A.  Yes."
5        "Q.  Is that the same discount that's
6    referred to on page 28 of the October 8,
7    2008 Alvarez & Marsal report, the 5 billion
8    reduction?
9        "A.  I believe it applies to the same
10   pool of securities.
11       "Q.  Is it different in any way?
12       "A.  Well, no."
13       So the same so-called 5 billion
14   dollar, so-called secret discount was
15   something that the creditors committee,
16   financial advisor, Weil Gotshal, everybody
17   knew about it the first week in October.
18   Not just the first week in October.  They
19   knew about it before then too and I am going
20   to come to those.
21       I want the Court to focus on this one
22   because this is where we have one of the
23   clearest statements that this 5 billion
24   dollar so-called discount, reduction,
25   however you want to characterize it, buffer,

Page 226

| | |
|---|---|
| 1 | BOIES - OPENING STATEMENT |
| 2 | however you want to characterize it, |
| 3 | different people have used different words, |
| 4 | was known about.  And after this, did |
| 5 | anybody come and say we are going to oppose |
| 6 | the affirmance of this order on the appeal. |
| 7 | Quite the contrary, they fought for it on |
| 8 | appeal. |
| 9 | Did anybody come in and say we now |
| 10 | want to reexamine it we want to reopen it? |
| 11 | Nobody did that.  And the reason because in |
| 12 | October, things were already still terrible. |
| 13 | The market was still down.  This was still |
| 14 | desperately needed.  Nothing had turned |
| 15 | around in October.  And everybody was not |
| 16 | only accepting but seriously desiring the |
| 17 | continuation of the Barclays transaction. |
| 18 | Now, I am going to go through a series |
| 19 | of documents that are designed to do what |
| 20 | counsel for creditors committee said that we |
| 21 | needed to do in court which is to show you |
| 22 | what they saw at the time.  They saw this. |
| 23 | What else did they see?  Well, let's |
| 24 | go to chart 23.  Now, this is the document |
| 25 | that I showed Mr. Miller and that Mr. Miller |

Page 233

1          BOIES - OPENING STATEMENT
2     next to chart 54.
3          Now, you heard the committee counsel
4     tell you that maybe they knew there was
5     something about a discount out there, but
6     they didn't have any idea what the magnitude
7     of it was or that it was a discount from
8     fair market value.
9          This is what the committee,
10    committee's counsel was told by Goldman
11    Sachs before the sale on September 19, "The
12    proposed sale goes way beyond this in that
13    it allows Barclays to cherry-pick owned
14    inventory, investment and other assets at a
15    windfall discount to fair market value, a
16    discount is at least several billion
17    dollars."
18         This is what the creditors committee
19    knew on September 19.  Now, did that cause
20    them to come into Court and say when people
21    objected that this was a fire sale and too
22    great a discount?  Yes, those objectors are
23    right, it is a windfall discount from fair
24    market value?
25         You didn't hear the creditors

Page 234

1           BOIES - OPENING STATEMENT
2      committee or any of the movants saying
3      anything like that to your Honor because
4      they realized that this was a great deal for
5      Lehman Brothers at the time.  And this was
6      the only deal for Lehman Brothers at the
7      time.  And so although they knew exactly
8      what was going on, they didn't say anything.
9      They didn't object, and not only did they
10     not object, but they continued to support
11     this transaction in this Court and on
12     appeal.
13           Let me go next to chart 31.  And this
14     is Mr. O'Donnell's deposition, when he is
15     asked, "When is the first point in time that
16     Milbank or Houlihan communicated to Weil this
17     concern about a 5 billion dollar miss match?
18           "On September 22 or at the end --
19     Sunday and Monday, the 21st and 22nd."
20           So this was not something that Weil
21     Gotshal didn't know about, Milbank didn't know
22     about, Houlihan didn't know about.  The
23     creditors committee knew about it.  The
24     trustee knew about it.  Counsel knew about it.
25     The independent financial advisors knew about

1        BOIES - OPENING STATEMENT
2    be hanged with that because they were scene of
3    the accident.
4           Now, the movants tried to do that by
5    saying to your Honor, well, Barclays was the
6    only person that knew this.  We didn't know
7    it.  Weil Gotshal didn't know it.  Lazard
8    didn't know it.  No one knew it except
9    Barclays and these supposedly rogue Lehman
10   employees.
11          Now, they knew all the facts about the
12   Lehman employees at the time that they were
13   telling the Federal District Court that
14   everybody operated in good faith and it was
15   arm's length.
16          So that argument, we think, is
17   actually foreclosed by a variety of grounds
18   including judicial estoppel and the mandate
19   rule.  Even if they could make that argument,
20   it is inconsistent with what they knew,
21   because if I have done anything today, I hope
22   I have shown you that the kinds of facts that
23   the movants knew at the time in the period
24   from September to December were the exactly
25   the facts that they now come into this court

```
                                                          Page 263
 1              BOIES - OPENING STATEMENT
 2     and say ought to be the basis for this relief
 3     and what I am saying is that under those
 4     circumstances, even if they had an ability to
 5     try to tag Barclays for things that they and
 6     other people were saying, they couldn't under
 7     those circumstances. That is all I am trying
 8     to say.
 9              THE COURT: You don't deal with what I
10     think I heard this morning which is they
11     didn't know anything different at the time of
12     the appeal. It was really as a result of the
13     2004 discovery that was taken last year that
14     detailed information concerning what Barclays
15     knew, what the Lehman employees knew, when
16     they knew it, who they told, what they really
17     meant by "discount," all that stuff which
18     presumably will be embellished as we get into
19     the evidentiary hearing came into full view.
20              So while I hear your argument, you're
21     not dealing with their argument.
22              MR. BOIES: Your Honor, with respect,
23     I have got to disagree with the Court. I am
24     trying -- at least I am trying to deal with
25     their argument. Maybe I am not doing a good
```

| | |
|---|---|
| 1 | BOIES - OPENING STATEMENT |
| 2 | fact that they knew on September 17, 18, 19, |
| 3 | and 20 about a gain that Barclays was going to |
| 4 | realize, I say in light of all of that, for |
| 5 | them to come in at this stage and say didn't |
| 6 | know anything about this, didn't have any |
| 7 | reason to act, couldn't have known what was |
| 8 | going on, totally didn't know anything more in |
| 9 | December than we knew in September, only found |
| 10 | out about this in 2004 is not credible.  I |
| 11 | mean, it is not even possible, I think, to |
| 12 | credit those kinds of statements in view of |
| 13 | the documentary evidence here. |
| 14 | And I would just ask the Court to look |
| 15 | at the documentary evidence.  Look not at |
| 16 | what people are saying now, not at what |
| 17 | people are trying to explain, but look at |
| 18 | the contemporaneous documents, look at what |
| 19 | was exchanged at the time, look at what was |
| 20 | said at the time, look at what these people |
| 21 | knew at the time, not what they now say in |
| 22 | which they say, well, yes, we knew about it |
| 23 | but we didn't really know about it. |
| 24 | They knew about it and the documents |
| 25 | show that and all I can do is -- and I will |