JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Robert W. Gaffey
Jayant W. Tambe
William J. Hine

Attorneys for Debtors
and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors.<br><br>-------------------------------------------------------------<br><br>In re:<br><br>LEHMAN BROTHERS INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 08-13555<br><br>(Jointly Administered)<br><br><br>SIPA Proceeding<br><br>Case No. 08-01420 (JMP) |

**DEBTOR'S BRIEF IN OPPOSITION TO THE MOTION BY BARCLAYS CAPITAL INC. FOR AN ORDER COMPELLING DOCUMENTS FROM LBHI, THE TRUSTEE, THE CREDITORS' COMMITTEE AND THEIR FINANCIAL ADVISORS DELOITTE, FTI, ALVAREZ & MARSAL, AND HOULIHAN LOKEY**

Lehman Brothers Holding Inc. ("LBHI") respectfully submits this opposition to the motion of Barclays Capital Inc. ("Barclays") for an order compelling production of documents from LBHI, The Trustee, The Creditors' Committee and Their Financial Advisors Deloitte, FTI, Alvarez & Marsal and Houlihan Lokey (the "Motion"). To avoid duplication, LBHI incorporates by reference the arguments presented in the Creditors' Committee's submission in opposition to the Motion (the "Committee's Brief"), and this brief supplements that filing with arguments applicable to LBHI.

## **FACTS RELEVANT TO LBHI**

As described in the Committee's Brief, this is merely a rehash of a motion Barclays has already made and lost, when Barclays previously moved to compel the Trustee and the Committee to produce privileged documents. In that motion, Barclays asserted the same "at issue" waiver theory it restates now. The Court properly denied that motion (the "First Waiver Motion") in December 2009, nothing has changed since then, and the Motion should be denied now.

Barclays did not assert the First Waiver Motion against LBHI, not only because there would have been no basis for it, but also because LBHI had agreed to produce to Barclays in discovery documents that might otherwise be considered privileged subject to an agreed upon limited waiver, which LBHI and Barclays embodied in a letter agreement. (*See* Exhibit A hereto.) LBHI and Barclays agreed that such limited waiver covered (i) the period surrounding the Sale Hearing (up to September 30 to ensure Barclays received appropriate post-closing documents) and (ii) communications concerning the December 2008 Settlement. LBHI disclosed otherwise privileged documents based on this agreement.

Since the denial of the First Waiver Motion, Barclays has enjoyed the fruits of that agreed waiver and taken considerable discovery from LBHI, its counsel and its financial advisor, Alvarez & Marsal ("A&M"). In response to Barclays' document requests, for example, A&M produced its documents to Barclays by December 7, 2009, and it made some small supplemental productions that were completed on February 1, 2009. LBHI produced documents (including otherwise privileged materials covered by the agreed upon limited waiver) to Barclays by November 12, 2009. And while most of LBHI's former employees involved in the Sale Transaction now work for Barclays (and therefore have been subject to private interview for the duration of this case), Barclays has also been able to depose others who are now employed elsewhere. Included within this extensive discovery, Barclays also has taken the depositions of five key A&M personnel involved in managing the LBHI estate: Bryan Marsal (the present CEO of LBHI and principal of A&M), Philip Kruse (the Rule 30(b)(6) witness for LBHI and A&M), James Fogarty, Mary Korycki, and David Coles. These depositions all took place well before the March 1, 2010 fact discovery cut-off date set by the Court as to the Rule 60 motions. The depositions of Messrs. Kruse and Marsal, the two principal Alvarez & Marsal witnesses, took place as long ago as December 17 and 22, 2009, and the depositions of Messrs. Fogarty, Korycki and Coles were completed on January 15, February 4 and February 4, 2010, respectively.

At no time before, during or shortly after these depositions did Barclays ever raise the purported work product waiver concerns it now proffers. Instead, Barclays waited to raise this theory against LBHI for the first time by filing this Motion well after the close of discovery under the Court's Scheduling Order and, strategically, on the eve of trial. There is no good reason for this. Barclays has had ample opportunity to explore the facts with no fewer than five A&M witnesses and was provided a privilege log from A&M, over three months ago, on January

13, 2010.  Throughout this period, Barclays raised no issues concerning any alleged waiver of work product privilege.

## ARGUMENT

Barclays' attempt to resurrect this old argument to now secure discovery of documents from LBHI and A&M that fall outside the limited waiver to which Barclays previously agreed should be denied for several reasons:

First, Barclays' Motion is dilatory and untimely.  Contrary to Barclays' suggestion (Barclays' Motion ¶¶ 6, 18; Ex. 1 at 2), this is not a renewal of any motion it ever made against LBHI or A&M.  Barclays made no such motion against either entity.  Rather, Barclays first mention of this issue with respect to LBHI and A&M came long after the Court-ordered cut-off date for fact discovery.  (*See id.* Ex. 1 (March 22, 2010 letter).)  Moreover, after raising its First Waiver Motion to compel privileged materials from the other two Movants, Barclays has deposed five A&M witnesses and numerous others and has been provided thousands of pages of documents and detailed privilege logs.  Throughout the discovery period, Barclays has not raised any work product waiver contentions.  Its decision to pursue this Motion at the eleventh hour is transparently strategic.  At the very least, Barclays offers no explanation for its timing.

Second, Barclays' Motion is overreaching and overbroad.  Barclays points to no entry in any privilege log about which it has specific complaints or questions, nor has it ever sought to raise any such questions with LBHI or A&M prior to filing this Motion.  Barclays' blunderbuss Motion apparently seeks a wholesale production of all privileged materials, irrespective of their content, just so long as they "concern" the Sale Transaction.  (*See* Barclays' Motion Exs. 2 at 10;

12 at 1.)[1]  Indeed, the only document request Barclays sent to A&M that actually targets the

valuation and financial analysis Barclays purportedly now seeks (Barclays Motion ¶¶ 5, 6) was

limited to the period from September 12, 2008 through September 30, 2008, the period of the

limited waiver noted above.  (*See* Barclays Motion Ex. 11 at 9 (item 1).)[2]

Third, Barclays' Motion seeks to turn the "at issue" waiver doctrine on its head.  In

essence, Barclays contends that by asserting its own affirmative defenses Barclays *itself* can

place LBHI's work product in issue and thereby force a waiver.  In its Rule 60 submission, LBHI

showed that its motion was brought within a "reasonable" time under the unusual circumstances

surrounding this case.  Not only was the Motion brought within the one year limitation period,

but LBHI demonstrated that A&M, the entity brought in to administer the LBHI estate (and

which, notably, played no role in negotiating, consummating, purportedly "clarifying" or closing

the Sale Transaction), faced great difficulties (some caused by Barclays itself) in securing access

to data, computer systems, and former Lehman employees with knowledge of the Sale

Transaction, the vast majority of which had transferred to Barclays.  (*See* LBHI Motion at 80-81;

LBHI Reply Br. at 63-79.)

This lack of access to information and personnel may have prevented an earlier filing of

the Rule 60 Motion, but that delay was not unreasonable under the circumstances.  (*Id.*)  The first,

---

[1]  It is unclear why Barclays has included Exhibits 5 and 11 since they contain requests for documents expressly falling under the LBHI limited waiver noted above, and Barclays does not even allege that such documents were not produced.  (*See* Barclays Motion Exs. 5 at 9, 11 at 9.)

[2]  Also for this reason, Barclays' contention that the documents it seeks were not created "in anticipation of" litigation (*see* Barclays Motion ¶¶ 10-16) should be rejected as ambiguous and unsupported.  Barclays has pointed to no specific document about which it presents this assertion, so it is impossible for LBHI or the other Movants to respond to this overbroad claim with specific examples.  Rather than restate the authorities presented by the Creditors Committee on this score, LBHI respectfully refers the Court to the Committee's Brief at pages 11-19 for a proper analysis of this question, which applies equally to the work product of A&M, all of which was created "because of" litigation.

second, fifth and seventh bullet points cited by Barclays on page 5 of their brief on this Motion reflect this very point – A&M's lack of access to information.  The fourth bullet point also relates to lack of access, this time to LBHI's lack of information about what Barclays actually paid in comp and cure payments after the closing.  (*See* LBHI Reply Br. at 70 n. 58.)

In response, Barclays argues in essence that A&M should have figured this all out and brought LBHI's Rule 60 motion sooner.  (*See* Barclays Opp. ¶¶ 445, 468, 481-489, 505-507, 511, 551, 555-557, 589-597.)  Thus, it is Barclays, not LBHI, that is seeking to put the post-September 30th "understanding" of Estate representatives "in issue."[3]  Barclays has presented no authority for the overreaching proposition it advances here – *i.e.*, that a litigant can offensively use the "at issue" waiver doctrine to force disclosure of an opponent's work product simply by asserting a defense that involves allegations about the opponent's "understanding" at some point in time.

This is demonstrated by the remaining two bullet points on page 5 of Barclays brief, which concern a presentation made by Mr. Fogarty (of A&M) in October 2008.  Barclays' bullets quote statements made in LBHI's Reply Brief that were clearly responding to Barclays' contention that somehow this presentation evidences A&M's "understanding" of the deal.  LBHI discusses that presentation, not as part of its affirmative case, but rather in response to Barclays' contention that A&M should have understood or figured everything out by October 2008.  (*See id.*)  Barclays concedes this in its Motion.  (*See* Barclays Motion ¶ 23 ("In its opposition brief, Barclays identified the October 8 Alvarez & Marsal presentation … In response, Movants …

---

[3]  Of course, Barclays' Motion cannot relate to LBHI's pre-September 30th "understanding" because that otherwise privileged information has already been disclosed under the limited waiver noted above.  For that reason, Barclays contention about what Movants knew at the time the deal was presented to the Court (Barclays Motion ¶ 20) cannot apply to LBHI since that information has been disclosed to Barclays.

assert that they did not sufficiently understand the information ....").)  This is a clear instance of Barclays seeking to place the Estate's mental state or "understanding" in issue through Barclays' asserting a defense to LBHI's affirmative case.  LBHI does not rely on this presentation in showing its Rule 60 Motion was timely, Barclays relies on it as a defense.  Barclays cannot thereby place A&M's work product in issue.

The fallacy of Barclays' Motion is further illustrated in the mischaracterization contained in the very first line of its preliminary statement.  There, Barclays asserts that "the Movants argued that they were 'justifiably ignorant' of the *economics* of the Sale Transaction" (Barclays Motion ¶ 1), but it cites in a footnote to the actual briefs of the Movants where they, in fact, argued that they were "justifiably ignorant" of the *new evidence* presented in the Rule 60 Motions.  (*Id.* at n. 1; *see id.* ¶ 9.)  While LBHI has argued justifiably ignorance of evidence – *i.e.*, lack of access to information, data and employees with knowledge – Barclays tries to reframe that as LBHI asserting lack of understanding about the economics of the deal.  That is, Barclays is improperly trying to proffer its own defense as if it first came out of Movants' affirmative case.  The fact is, Barclays tried mightily in discovery to uncover information to which A&M had access that might have provided notice of potential claims for the estate, and having uncovered virtually none it now hopes to invade privileged materials under a new theory that has no basis in law.

For similar reasons, Barclays' contention that LBHI's assertion of mistake under Rule 60(b)(1) somehow gives rise to an "at issue" waiver with respect to A&M's post-September 30th work product (*see* Barclays Motion ¶ 20) is illogical and wrong.  The mistakes alleged by LBHI in its Rule 60 motion all relate to mistakes that took place during the week of the Sale Hearing or over the weekend of the closing.  (*See* LBHI Reply Br. ¶ 151-155)  Thus, all these mistakes were

made during the period covered by LBHI's limited privilege waiver, and Barclays has received all responsive, otherwise privileged documents from that period. Barclays can point to no link between these mistakes and the post-September 30th work product of A&M, and LBHI certainly did not rely on any such work product in asserting the mistake claims at issue here. To the extent, Barclays now argues as part of its defense that LBHI or A&M should have uncovered these mistakes earlier, that presents the same problem as to Barclays' attempt to assert an "at issue" waiver here. Barclays cannot, as part of its defense, place its opponents work product in issue to force a privilege waiver.

Finally, Barclays has presented no basis for asserting that its professed "need" for this material should trump the protections afforded by the work product doctrine. The fact that Barclays has produced back-up materials showing its valuation and accounting work associated with the transaction (Barclays Motion ¶ 4) misses the point. Barclays has not waived its work product privileges associated with this or any other issues, nor has it offered to do so. And any such materials produced by Barclays could not be work product anyway, since it was prepared in the ordinary course of business and not because of possible litigation. Barclays has produced this material in the apparent hope of arguing as part of its defense that it did not get a windfall or that somehow it deserved a windfall. That does not mean that the Movants should have to waive privilege as to documents they do not rely on in presenting their claims.[4]

---

[4] And Barclays' assurance that it seeks only the "conclusions and analyses" of this work product, not A&M's mental impressions or thought processes (Barclays Motion ¶ 26) is illusory. The one cannot be separated from the other.

## CONCLUSION

For the reasons stated in the Creditors' Committee Brief, and supplemented herein, LBHI respectfully requests that the Court enter an order denying Barclays' Motion in its entirety with prejudice and granting such other relief as the Court deems just and proper.

Dated: April 22, 2010
      New York, New York

Respectfully submitted,

/s/ William J. Hine
Robert W. Gaffey
Jayant W. Tambe
William J. Hine
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-3939

ATTORNEYS FOR DEBTOR AND DEBTOR
IN POSSESSION

# EXHIBIT A

# BOIES, SCHILLER & FLEXNER LLP

333 MAIN STREET • ARMONK, NY 10504 • PH. 914.749.8200 • FAX 914.749.8300

October 14, 2009

**BY EMAIL**

Robert W. Gaffey, Esq.
Jones Day
222 East 41st Street
New York, New York 10017

William R. Maguire, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004

_In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555 (JMP)_

Dear Counsel:

This letter confirms our agreement concerning the assertion of privilege by Lehman Brothers Holdings, Inc. ("LBHI"), and James W. Giddens, as Trustee in the Securities Investor Protection Act Liquidation of Lehman Brothers Inc. (the "Trustee"), in the above-captioned matter.

LBHI agrees it will not assert its attorney-client privilege (or any other legal privilege LBHI might have) with regard to communications with or among Weil Gotshal & Manges ("Weil"), Simpson Thacher & Bartlett ("Simpson"), and/or LBHI or Lehman Brothers Inc. ("LBI") in-house counsel (1) on or prior to September 30, 2008, regarding the negotiation, economic terms (including the price paid for securities and the value of liabilities assumed by Barclays), documentation, disclosure to the Court, Court approval, closing or implementation of the Sale Transaction (including all negotiations and discussions between September 15, 2008 and September 22, 2008 concerning Barclays' acquisition of LBI assets) or (2) regarding the December Settlement discussed in LBHI's Rule 60(b) motion. Although LBHI reserves the right to contest discovery of information and events after September 30, 2008, LBHI agrees that if such discovery occurs, voluntarily or by court order, the above agreed waiver will be extended to communications occurring during that later period of discovery that relate to either (a) LBHI's, LBI's, Weil's, or Simpson's state of knowledge on or prior to September 30, with respect to topics in (1) above or (b) the December Settlement. The parties expressly reserve all rights with respect to waiver and privilege issues concerning all other post-September 30, 2008 communications.

The Trustee agrees not to assert privilege over any communications with or among Weil, Simpson and/or LBHI or LBI in-house counsel.

BOIES, SCHILLER & FLEXNER LLP

This agreement is without prejudice to Lehman's or Barclays' rights (such as to assert privilege or waiver) beyond the waivers identified above.

If you agree with the above, please countersign below.

Sincerely,

Christopher Green
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, New York 10022

*Attorneys for Barclays Capital Inc.*

Agreed to by:

Robert W. Gaffey, Esq.
Jones Day
222 East 41st Street
New York, New York  10017

*Counsel to Lehman Brothers Holdings Inc.*

William R. Maguire, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York  10004

*Counsel to James W. Giddens, as Trustee for the*
 *SIPA Liquidation of Lehman Brothers Inc.*