**Hearing Date: April 26, 2010**

William R. Maguire
Seth D. Rothman
Neil J. Oxford
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000 (telephone)
(212) 422-4726 (facsimile)
maguire@hugheshubbard.com

Attorneys for James W. Giddens, as
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| In re: | : | |
| | : | |
| LEHMAN BROTHERS INC., | : | Case No. 08-01420 (JMP) (SIPA) |
| | : | |
| Debtor. | : | |

**THE TRUSTEE'S OBJECTION TO BARCLAYS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM LBHI, THE TRUSTEE,
THE COMMITTEE AND THEIR FINANCIAL ADVISORS**

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................1

    Barclays' Motion Reargues A Position That The Court Has Already Rejected..................1

    The Trustee's Reply Memorandum, Like His Opening Memorandum, Relies On
    The Representations Made At The Sale Hearing..................................................................3

    Deloitte Did Not Conduct Any Contemporaneous Analysis Of The Sale
    Transaction..............................................................................................................................4

ARGUMENT....................................................................................................................................5

    I.    THE TRUSTEE HAS NOT WAIVED THE WORK PRODUCT
         PROTECTION WITH RESPECT TO DELOITTE'S ANALYSES .......................5

         A.    The Trustee Has Not Put Deloitte's Analyses At Issue ...............................5

         B.    Barclays Cannot Use The At Issue Waiver Doctrine to Support Its
             Own Defenses ................................................................................................8

         C.    There Is No Unfair Prejudice To Barclays ...................................................9

    II.    DELOITTE'S WORK FOR THE TRUSTEE'S COUNSEL IS
         PROTECTED BY THE WORK PRODUCT DOCTRINE..................................10

    III.    BARCLAYS HAS NOT ESTABLISHED A SUBSTANTIAL NEED
         FOR THE TRUSTEE'S WORK PRODUCT.........................................................12

CONCLUSION................................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

In re Adelphia Comm'n Corp. Sec. and Derivatives Litig., No. 03 MDL 1529(LMM),
   2009 WL 1922425 (S.D.N.Y. July 1, 2009) .................................................................6, 11

In re Celotex Corp., 196 B.R. 596 (M.D. Fla. 1996) .................................................................2

Chase Manhattan Bank N.A. v. Drysdale Sec. Corp., 587 F. Supp. 57 (S.D.N.Y. 1984) ...............9

John Doe Co. v. United States, 350 F.3d 299 (2d Cir. 2003) .......................................................10

Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08-CV-5023 (CBA)(RLM), 2009
   WL 3334365 (E.D.N.Y. Oct. 14, 2009) ......................................................................6

Pritchard v. County of Erie (In re County of Erie), 546 F.3d 222 (2d Cir. 2008) ....................5, 6, 9

Resolution Trust Corp. v. Mass. Mut. Life Ins. Co., 200 F.R.D. 183 (W.D.N.Y. 2001) .................9

In re Suprema Specialities, Inc., Bankr. No. 02-10823, 2007 WL 1964852 (Bankr.
   S.D.N.Y. July 2, 2007) ...............................................................................................11

Tri-State Outdoor Media Group, Inc., 283 B.R. 358 (Bankr. M.D. Ga. 2002) ............................12

United States v. Adlman, 134 F.3d 1194 (2d Cir. 1998) .......................................................10, 11

**STATUTES AND RULES**

15 U.S.C § 78fff-1 .................................................................................................................11

Fed. R. Bankr. P. 6004 ..........................................................................................................11

Fed. R. Bankr. P. 9014 ..........................................................................................................11

Fed. R. Civ. P. 26 ........................................................................................................10, 12, 13

James W. Giddens (the "Trustee"), as trustee for the SIPA liquidation of Lehman Brothers Inc. ("LBI" or "Debtor"), submits this objection to the Motion of Barclays Capital Inc. for an Order Compelling Documents from LBHI, the Trustee, the Creditors' Committee and their Financial Advisors Deloitte, FTI, Alvarez & Marsal, and Houlihan Lokey ("Barclays' Motion," LBI Docket No. 3094).

## PRELIMINARY STATEMENT

1.  The Court has already rejected Barclays' at issue waiver argument. Barclays is arguing the same thing here that it did on its prior motion to compel, except that this time Barclays seeks the protected work product of the Trustee's financial advisors, rather than the privileged communications of his attorneys. Both motions fail for the same reason. As the Court has already recognized, the Trustee's claims rely on the public representations that were made to the Court at the Sale Hearing, and not on his subjective state of mind.

2.  In fact, the Trustee could not have relied on any Deloitte analysis at the time of the Sale Hearing because Deloitte did not contemporaneously analyze the sale transaction or independently value the deal assets. Any analysis that Deloitte performed specifically with respect to the deal assets occurred later in time and in connection with the dispute between the parties. These materials are protected by the work product doctrine and there has been no waiver. Accordingly, Barclays' motion should be denied.

## BACKGROUND

**Barclays' Motion Reargues A Position That
The Court Has Already Rejected**

3.  In December 2009, Barclays filed a motion to compel the Trustee and the Committee to produce certain documents that had been withheld on the grounds of privilege or work product. (LBI Docket No. 2140.) At that time, Barclays sought privileged

communications between the Trustee and his lawyers concerning the sale transaction, as well as any documents relating to the Trustee, his lawyers and financial advisors' understanding of the sale transaction. (See id. at 9, 22.)

4. In support of its motion, Barclays argued that the Trustee had waived the protections of the attorney-client privilege and the work product doctrine by putting at issue what the Trustee and his attorneys and financial advisors understood about the sale terms. (See id. at 9, 12-16, 21-22.) Specifically with respect to work product, Barclays alleged that:

> [T]he trustee and the committee are relying on their attorneys' alleged lack of understanding and advice concerning the sale terms as a necessary (albeit far from sufficient) basis for the relief they seek, Barclays has demonstrated a substantial need for materials reflecting the movants' (including their attorneys and financial advisors) understanding of the terms of the sale. The substantial equivalent of such materials – i.e., that would show what the movants' attorneys and financial advisors understood and advised about the sale terms – cannot be obtained by other means.

(Id. at 21-22.)

5. On December 11, 2009, the Court heard oral argument on the motion. On December 16, 2009, the Court provided a bench ruling, rejecting Barclays' at issue waiver argument and denying its motion.[1] The Court found that the Trustee's arguments had not put at issue his attorneys' advice. The Court stated:

> [T]he trustee and the committee in the 60(b) motions do not rely on any legal advice provided by their respective advisors, with regard to the sale transaction. Instead, these claims rely on allegedly misleading and incomplete public representations made to the

---

1. The Court denied Barclays' motion without prejudice to bringing a later motion should it become clear at some future date that the Committee or Trustee is relying on privileged communications to support 60(b) relief. (Rothman Decl. Ex. 1 (Dec. 16, 2009 Hearing Tr.) at 119:2-7.) Barclays does not rely on this aspect of the Court's ruling to re-argue the privilege issue on this motion, but instead shifts its focus to financial analyses withheld under the work product doctrine.

> Court at the sale hearing and on the alleged failure of Barclays and certain Lehman executives to say anything to contradict those representations.

(Rothman Decl. Ex. 1 (Dec. 16, 2009 Hearing Tr.) at 116:25-117:7.)

6. The Court disagreed with Barclays' argument that reliance on purported mistakes and newly discovered evidence "necessarily implicate the contemporaneous advice provided by professionals for the trustee and the committee at the time of the sale hearing." (Id. at 117:21-23.) The Court noted that "[t]he Trustee's 60(b) motion makes clear that his arguments, with respect to mistakes, are, in fact, premised on insufficient disclosure to the Court." (Id. at 118:4-6.)

7. The Court further found that Barclays was not unfairly prejudiced by the Trustee's claim of privilege because "other means exist for it to obtain relevant information in support of its defense to the 60(b) motions." (Id. at 118:16-119:1.) In addition to materials that were being provided by LBHI, the Court noted that Barclays was free to take discovery from the third-parties who provided information to the Trustee's advisors concerning the sale transaction. (Id.)

**The Trustee's Reply Memorandum, Like His Opening Memorandum, Relies On The Representations Made At The Sale Hearing**

8. On March 18, 2010, the Trustee filed a reply memorandum in further support of his Rule 60(b) motion. (LBI Docket No. 2847.) Like the Trustee's opening memorandum, the Trustee's reply memorandum asserts that the Trustee relied on Lehman's and Barclays' representations at the Sale Hearing and the failure of either Lehman or Barclays to contradict those representations.

-3-

**Deloitte Did Not Conduct Any Contemporaneous Analysis Of The Sale Transaction**

9. Deloitte was first contacted during the week of September 15, 2008 about the possibility of working on a SIPA liquidation of LBI, and was not formally retained until after the Trustee was appointed on September 19, 2008. (See Rothman Decl. Ex. 2 (Jan. 20, 2010 Marlo Karp deposition transcript) at 8:17-24; Ex. 3 (Dec. 7, 2009 James B. Kobak Jr. deposition transcript) at 24:6-17.) Deloitte did not attend the Sale Hearing or the Closing. (Rothman Decl. Ex. 2 (Jan. 20, 2010 Marlo Karp deposition transcript) at 14:13-15:13.) In the week before the Closing, Deloitte did not conduct any financial analysis of the APA, the Clarification Letter or the Sale Transaction. (Id. at 11:8-11; 13:21-25, 145:10-146:10.)

10. Following the Closing, Deloitte was told to stand down until the customer transfers to Barclays were effected. (Id. at 15:21-16:20, 148:8-16 ("all we were asked to do for pretty much that first week, was just try to get organized, start getting teams organized, people, because we were asked to not do anything while the customer transfers were going on.")) Indeed, Deloitte did not begin any substantive work for the Trustee until September 26, 2008, and had no access to the books and records of LBI until weeks after the Closing. (See id. at 29:19-22, 148:14-16.)

11. In October 2008, Deloitte began work on an opening day balance sheet for the LBI estate reflecting the estate's assets and liabilities as of September 19, 2008. This work, which was undertaken at the direction of the Trustee's counsel, has not yet been completed. (Id. at 30:4-6, 107:9-11; 162:6-22.)

12. The opening balance sheet is not an analysis of the sale and is not intended to show the transfer of any assets as part of the sale. (Id. at 29:23-30:3.) As Ms. Karp testified:

> Q. What did Deloitte do to first establish what assets were still --
> still belonged to LBI after the Barclays transaction?

> …
> A. We prepared a balance sheet as of 9/19, <u>irrespective of any transaction</u>, and obtained bank statements and depository statements to reconcile to 9/19.

(<u>Id</u>. at 37:22-38:5 (emphasis added).)

13.   Deloitte obtained the values for the balance sheet from Barclays and from publicly available sources.  (<u>Id</u>. at 29:8-11, 31:5-9, 31:24-32:5, 107:22-108:6.)  Deloitte has not itself valued any of the sale assets, either in connection with its balance sheet work or at any other time.  (<u>Id</u>.)

14.   In response to requests from the Trustee's lawyers, Deloitte has also investigated certain claims and assertions made by Barclays with respect to the disputed assets.  This work was done well after the Sale Hearing and was performed at the direction of the lawyers representing the Trustee in the dispute with Barclays.

## ARGUMENT

### I.   THE TRUSTEE HAS NOT WAIVED THE WORK PRODUCT PROTECTION WITH RESPECT TO DELOITTE'S ANALYSES

#### A.   <u>The Trustee Has Not Put Deloitte's Analyses At Issue</u>

15.   In ruling on Barclays' prior motion to compel, the Court noted that <u>Pritchard v. County of Erie (In re County of Erie)</u>, 546 F.3d 222, 229 (2d Cir. 2008), "sets forth the applicable legal standard in the Second Circuit for determining implied at issue waiver of attorney-client privilege.  That case defined the test as whether the moving party can prove that the opposing party 'relied on the privileged communication as a claim or defense, or was an element of a claim or defense.'"  (Rothman Decl. Ex. 1 (Dec. 16, 2009 Hearing Tr.) at 115:22-116:2 (citing <u>In re County of Erie</u>, 546 F.3d at 228).)

16.   As the Court observed, in <u>County of Erie</u>, "[t]he Second Circuit held that the defendant's reliance on an objective, rather than subjective legal defense did not constitute at

-5-

issue waiver," and "that a finding of waiver requires actual reliance on privileged advice, whereas the 'mere indication' of privileged advice is 'insufficient to place legal advice at issue.'" (Id. at 116:9-20 (citing County of Erie).)

17.     The holding in County of Erie also applies to the work product doctrine. See In re Adelphia Comm'n Corp. Sec. and Derivatives Litig., No. 03 MDL 1529(LMM), 2009 WL 1922425, at *2 (S.D.N.Y. July 1, 2009) (applying County of Erie and finding no at issue waiver of work product); Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08-CV-5023 (CBA)(RLM), 2009 WL 3334365, at *1-3 (E.D.N.Y. Oct. 14, 2009) (same).

18.     Applying the County of Erie standard to Barclays' current motion leads to the same result as it did on Barclays' prior motion to compel. There is no at issue waiver here because, as the Court has already found, the Trustee's claims are based on the representations made to the Court at the Sale Hearing. (Supra ¶¶ 5, 6.) The Trustee's claims do not mention, much less rely on, Deloitte's financial analyses. The Trustee's claims are objective claims "asking the Court to compare in-court disclosures concerning the sale transaction with the provisions of the sale transaction as actually consummated." (Rothman Decl. Ex. 1 (Dec. 16, 2009 Hearing Tr.) at 117:9-12.)

19.     Barclays seeks to justify the eleventh-hour filing of its motion by claiming that the Trustee's reply memorandum puts Deloitte's financial analyses at issue. It does not. The Trustee's reply is consistent with his opening memorandum in arguing that the Trustee relied on the representations made to the Court at the Sale Hearing. (Supra ¶ 8.)

20.     Barclays fails to point to a single instance where the Trustee's reply papers either cite or mention a Deloitte analysis. Barclays quotes three passages from the Trustee's reply memorandum. The first of these proves the Trustee's point -- that based on the representations

-6-

made at the Sale Hearing, "he was not aware … that Barclays would lay claim to billions of dollars of additional assets that were not disclosed in the deal as presented to the Court;" the second states only that the Trustee "expeditiously conducted an investigation regarding the matters covered by his Rule 60(b) motion;" and the third refers to the evidence obtained through the Rule 2004 discovery process showing that, because of the $5 billion hidden discount, "the value of the assets that Barclays received in the Sale significantly exceeded $47.4 billion." (See Barclays' Motion ¶¶ 8, 19 n.9 (citing to the Trustee's Reply ¶¶ 194, 197, 202).)

21.  In none of these excerpts or elsewhere does Barclays show that the Trustee relied on Deloitte's financial analyses at the time of the sale transaction. On the contrary, Barclays has questioned Deloitte and found that Deloitte had not conducted any financial analyses at that time. (See supra ¶¶ 9, 10.) Deloitte was retained on the Friday of the Sale Hearing, did not attend the Sale Hearing, did not receive any information about the economics of the deal that was described to the Court, and did not have access to the books and records of LBI. (Id.)

22.  Nor did Deloitte attend the Closing at Weil Gotshal's offices, receive any financial information over the Closing weekend, or even see a copy of the Clarification Letter until sometime in October. (Id. ¶ 9; Rothman Decl. Ex. 2 (Jan. 20, 2010 Marlo Karp deposition transcript) at 13:21-25.) As Deloitte's Ms. Karp explained, after the sale closed, Deloitte was asked to stand down while the account transfers to Barclays took place. (Supra ¶ 10.) Once Deloitte began its substantive work, it was focused on understanding the cash position and other assets that were part of the LBI estate (Rothman Decl. Ex. 2 (Jan. 20, 2010 Marlo Karp deposition transcript) at 18:5-11, 18:23-19:4; 148:17-21), and not on an "effort to evaluate the economics of the Sale." (Barclays' Motion ¶ 13.)

-7-

23. Barclays notes that Deloitte was "tasked with producing an opening day balance sheet for LBI," (Barclays' Motion ¶ 2), but fails to mention that this task was undertaken at the direction of the Trustee's counsel and that it began in October, weeks after the Closing, and is not yet completed. (Supra ¶ 11.) Contrary to Barclays' assertion, this balance sheet work does not "show Deloitte's views of the values of the assets and liabilities acquired by Barclays." (Barclays' Motion ¶ 2.) The balance sheet is intended to provide a snapshot of the LBI estate at the time that the Trustee was appointed, prior to the Closing and, as Ms. Karp explained at her deposition, irrespective of any transaction with Barclays. (Supra ¶ 12.) Thus, as Ms. Karp explained, Deloitte has not undertaken an independent valuation of any of the deal assets. (Supra ¶ 13.)[2]

### B. Barclays Cannot Use The At Issue Waiver Doctrine to Support Its Own Defenses

24. Barclays cannot be seeking any financial analysis done by Deloitte to test the Trustee's understanding "at the time" of the sale transaction because, as Barclays knows, Deloitte did not conduct any contemporaneous analyses of the sale. (Supra ¶ 9.) Instead, Barclays is seeking Deloitte's financial analyses only to support its own timeliness argument and its "defenses of judicial estoppel, equitable estoppel, and waiver." (Barclays' Motion ¶¶ 19, 20, 27.)

25. This is an impermissible use of the at issue waiver doctrine. Courts do not permit defendants to justify breaching the privilege or the work product protections on the basis their

---

2. Deloitte has also been working on a balance sheet as of September 30, 2008. This balance sheet is not yet finished and, as with the opening balance sheet, will rely exclusively on values that Deloitte has obtained from Barclays and public sources. This balance sheet is not intended to be an acquisition balance sheet or an analysis of the sale transaction, but a balance sheet that reflects the position of the LBI estate as of September 30, 2008.

-8-

own defenses.  See, e.g., Chase Manhattan Bank N.A. v. Drysdale Sec. Corp., 587 F. Supp. 57, 59 (S.D.N.Y. 1984); Resolution Trust Corp. v. Mass. Mut. Life. Ins. Co., 200 F.R.D. 183, 191-93 (W.D.N.Y. 2001).  To do so "would give an adversary who is a skillful pleader the ability to render the privilege a nullity."  Chase Manhattan Bank N.A., 587 F. Supp. at 59.  Barclays cannot itself put the Trustee's understanding of the sale at issue and then argue that there is an at issue waiver.

### C. There Is No Unfair Prejudice To Barclays

26. "Underlying any determination that a privilege should be forfeited is the notion of unfairness."  In re County of Erie, 546 F.3d at 229.  This unfairness must be something more than the unavoidable unfairness generated by every assertion of privilege or work product.  See id. at 228-29.

27. There can be no unfair prejudice to Barclays here.  First, the Trustee is not relying on any of Deloitte's analyses for his Rule 60(b) claims, but on the representations made to the Court.  Second, Barclays already has the materials on which Deloitte's analyses are based.  As Ms. Karp explained, most of the information on which Deloitte has relied -- including the valuations of the assets -- came from Barclays, which took possession of the LBI computer systems and hired the legacy Lehman personnel who were familiar with LBI's assets and liabilities.  The rest of Deloitte's information has come from public sources and represents information to which Barclays has equal access.  (Supra ¶ 13.)

28. Moreover, as the Court found earlier, Barclays has had ample opportunity to obtain discovery into the Trustee's understanding of the sale transaction.  Barclays has, in fact, served documents requests on and taken the depositions of the Trustee, his counsel and Deloitte, as well as third-parties who provided the Trustee with information about the sale transaction.

29. The Trustee, his counsel, and Deloitte have, in the aggregate produced more than 4500 documents. Barclays has deposed three of the Trustee's lawyers and Deloitte, and asked each of these witnesses about what the Trustee knew about the sale. (See, e.g., Rothman Decl. Ex. 3 (Dec. 7, 2009 James B. Kobak, Jr. deposition transcript) at 14:21-25, 32:8-20, 46:16-47:12, 53:8-54:8; Ex. 4 (Mar. 4, 2010 Christopher Kiplok deposition transcript) at 30:9-32:4.) Barclays has also obtained documents from and deposed numerous representatives of various third-parties that provided information about the sale to the Trustee and his advisors, either prior to or subsequent to the sale transaction. Among others, Barclays has deposed Harvey Miller and Robert Messineo of Weil Gotshal (counsel for LBHI), James Fogarty, Bryan Marsal, Philip Kruse and David Coles of Alvarez & Marsal (advisor to LBHI), Saul Burian and Michael Fazio of Houlihan & Lokey (advisor to the Committee), and Shari Leventhal of the Federal Reserve Bank of New York.[3]

## II. DELOITTE'S WORK FOR THE TRUSTEE'S COUNSEL IS PROTECTED BY THE WORK PRODUCT DOCTRINE

30. The work product doctrine protects documents and tangible things that are prepared in anticipation of litigation or for trial by a party or its representative (including its attorney, consultant, surety, indemnitor, insurer or agent). Fed R. Civ. P. 26(b)(3)(A). The Second Circuit has held that "[w]here a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that

---

3. Barclays cites John Doe Co. v. United States, 350 F.3d 299 (2d Cir. 2003), in support of its fairness argument. (See Barclays' Motion ¶ 17.) The Second Circuit's opinion in fact favors the Trustee. The Second Circuit held that there had been no waiver of privilege. It noted that there was no unfairness where the non-asserting party did not run the risk of not having "adequate opportunity to rebut" the asserting party's representations. John Doe Co., 350 F.3d at 305.

-10-

litigation," it constitutes work product.  United States v. Adlman, 134 F.3d 1194, 1195 (2d Cir. 1998).

31.     In Adlman, the Second Circuit held that a document does not need to be created "primarily to assist in litigation" in order to be protected, as long as it is created "because of litigation."  Id. at 1198, 1202.  This "because of" standard means that documents are protected even if they analyze only the likely impact of litigation in order to assist in business decisions.  See In re Suprema Specialities, Inc., Bankr. No. 02-10823, 2007 WL 1964852, at *3-*4 (Bankr. S.D.N.Y. July 2, 2007).

32.     As noted above, Deloitte did not prepare any contemporaneous analyses of the sale transaction and has not valued any of the assets or liabilities involved in the sale.  (Supra ¶¶ 9-13.)  Deloitte's subsequent balance sheet work is protected both by the attorney-client privilege and the work product doctrine.  Deloitte undertook this work at the direction of the Trustee's counsel as part of the Trustee's responsibility to investigate "the acts, conduct, property, liabilities, and financial condition of the debtor," and as an aid to determining any "causes of action available to the estate."  15 U.S.C § 78fff-1(d)(1), (3).  Thus, Deloitte performed this work in the context of an investigation by the Trustee's counsel into the rights and claims of the estate.  See Adelphia Comm'n Corp. Sec. and Derivatives Litig., No. 03 MDL 1529(LMM), 2009 WL 1922425, at *2 (S.D.N.Y. July 1, 2009) (law firm's work product supporting an investigation was generated in contemplation of litigation and not for a business purpose).

33.     Deloitte's work was also performed in the midst of a contested bankruptcy proceeding.  From the outset of the SIPA liquidation, the Trustee has faced litigation in a number of contested matters and disputes.  The motion seeking approval of the sale transaction was a contested matter, see Fed. R. Bankr. P. 6004(b), 9014(a), to which various objections were

lodged, one of which had to be litigated all the way to the Second Circuit. Almost from the

beginning, a dispute arose about some $7 billion of estate property that Barclays claimed it was

supposed to have received from the estate's accounts at JPMorgan Chase. This dispute was not

resolved until December 2008, by which time Barclays was demanding substantial additional

assets from the estate. There were numerous other issues arising out of the transfers of property,

including the ACAT settlement that the Court approved in February 2009. (LBI Docket No.

690.)

34.    Courts have held that materials that are prepared in contested bankruptcy matters

may qualify for work product protection, even if they are not prepared for a related adversary

proceeding. See In re Celotex Corp., 196 B.R. 596, 599-600 (M.D. Fla. 1996) (finding that

documents "prepared in connection with the general bankruptcy case" were not discoverable in a

related adversary proceeding); Tri-State Outdoor Media Group, Inc., 283 B.R. 358 (Bankr. M.D.

Ga. 2002) (finding that analyses prepared for an ad hoc committee's review of a possible

restructuring were not discoverable in contested matters).

35.    Deloitte also performed analyses at other points in time, when the Trustee or his

counsel asked Deloitte to assess certain claims and demands that had been made by Barclays. To

the extent that this work constituted a financial analysis, it was done because of the parties'

present dispute. There can be no dispute that this work is clearly protected by the work product

doctrine.

### III.    BARCLAYS HAS NOT ESTABLISHED A SUBSTANTIAL NEED FOR THE TRUSTEE'S WORK PRODUCT

36.    Work product is discoverable only upon a showing that the requesting party has

"substantial need" of the materials to prepare his case and that the party "is unable without undue

hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P.

26(b)(3). For the reasons stated above in Section I.C., Barclays cannot establish substantial need here.

## CONCLUSION

For the forgoing reasons, the Trustee respectfully requests that the Court deny Barclays' motion to compel, sustain the Trustee's objection and grant the Trustee such further and different relief as may be just and proper.

Dated: New York, New York
April 23, 2010

>HUGHES HUBBARD & REED LLP
>
>By:   /s/ William R. Maguire
>          William R. Maguire
>
>Seth D. Rothman
>Neil J. Oxford
>One Battery Park Plaza
>New York, New York 10004
>(212) 837-6000 (telephone)
>(212) 422-4726 (facsimile)
>maguire@hugheshubbard.com
>
>*Attorneys for James W. Giddens, as Trustee for the SIPA Liquidation of Lehman Brothers Inc.*

60997409

-13-