1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555 (JMP)

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS INC., et al.,


                Debtors.

- - - - - - - - - - - - - - - - - - - - -x


            U.S. Bankruptcy Court

            One Bowling Green

            New York, New York


            April 15, 2010

            2:04 PM




B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

```
 1
 2        HEARING re Debtors' Motion for Authorization to Enter into
 3        Certain Asset Management and Related Agreements [Docket No.
 4        7579]
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24        Transcribed by:   Clara Rubin
25
```

```
                                                                    3
 1
 2     A P P E A R A N C E S:
 3     WEIL, GOTSHAL & MANGES, LLP
 4           Attorneys for the Debtors and Affiliated Debtors
 5           767 Fifth Avenue
 6           New York, NY 10153
 7
 8     BY:   GARRETT AVERY FAIL, ESQ.
 9
10     CLEARY GOTTLIEB STEEN & HAMILTON LLP
11           Attorneys for Creditors, Goldman Sachs Bank and D.E. Shaw
12           One Liberty Plaza
13           New York, NY 10006
14
15     BY:   THOMAS J. MOLONEY, ESQ.
16           LISA M. GOULDY, ESQ.
17
18     CLEARY GOTTLIEB STEEN & HAMILTON LLP
19           Attorneys for Creditors, Goldman Sachs Bank (USA) and
20            Goldman Sachs International
21           2000 Pennsylvania Avenue, NW
22           Washington, DC 20006
23
24     BY:   PAUL R. ST. LAWRENCE, ESQ. (TELEPHONICALLY)
25
```

4

1    MILBANK, TWEED, HADLEY & MCCLOY, LLP
2         Attorneys for the Official Committee of
3          Unsecured Creditors
4         One Chase Manhattan Plaza
5         New York, NY 10005
6
7    BY:  DENNIS C. O'DONNELL, ESQ.
8         DENNIS F. DUNNE, ESQ.
9
10   MILBANK, TWEED, HADLEY & MCCLOY, LLP
11        Attorneys for the Official Committee of
12         Unsecured Creditors
13        601 South Figueroa Street, 30th Floor
14        Los Angeles, CA 90017
15
16   BY:  BRETT GOLDBLATT, ESQ. (TELEPHONICALLY)
17
18   CHAPMAN AND CUTLER LLP
19        Attorneys for Creditor, U.S. Bank National Association,
20         as Trustee
21        111 West Monroe Street
22        Chicago, IL 60603
23
24   BY:  FRANKLIN H. TOP III, ESQ. (TELEPHONICALLY)
25        JAMES HEISER, ESQ. (TELEPHONICALLY)

```
 1
 2     STUTMAN TREISTER & GLATT
 3          Attorneys for Interested Party, Elliott Company
 4          1901 Avenue of the Stars
 5          12th Floor
 6          Los Angeles, CA 90067
 7
 8     BY:  JEFFREY H. DAVIDSON, ESQ. (TELEPHONICALLY)
 9          WHITMAN L. HOLT, ESQ. (TELEPHONICALLY)
10          ISAAC PACHULSKI, ESQ. (TELEPHONICALLY)
11
12
13     STUTMAN TREISTER & GLATT
14          Attorneys for Creditor, Perry Capital
15          1901 Avenue of the Stars
16          12th Floor
17          Los Angeles, CA 90067
18
19     BY:  MARINA FINEMAN, ESQ. (TELEPHONICALLY)
20
21
22     KING STREET CAPITAL MANAGEMENT, LLC
23          Creditor
24     BY:  MITCHELL SOCKETT (TELEPHONICALLY)
25
```

6

1              P R O C E E D I N G S

2         THE COURT:  Be seated, please.

3         MR. FAIL:  Good afternoon, Your Honor.  Garrett Fail,

4    Weil, Gotshal & Manges, for Lehman Brothers --

5         THE COURT:  Good afternoon.

6         MR. FAIL:  -- Holdings Inc. and its debtor affiliates.

7         There's one item on today's agenda.  Although the

8    debtors' motion to enter into certain asset management and

9    other related agreements was listed as contested, at present it

10   is essentially an uncontested motion.  As reflected in the

11   debtors' reply, which was filed with the Court yesterday

12   afternoon, the debtors were able to resolve the two formal

13   objections that were interposed, namely the objection filed by

14   certain derivative-related creditors of Lehman Brothers Special

15   Financing Inc., and the objection filed by the U.K.

16   administration companies.  The debtors were also able to

17   resolve concerns of the ad hoc group of Lehman Brothers'

18   creditors, obviating their need for them to file an objection.

19        As proposed, Lamco would allow for the debtors to

20   effectively manage and wind down the remaining assets and long-

21   term distressed and illiquid assets.  The relief requested

22   would authorize LBHI and the debtors to enter into four

23   principal agreements:  a contribution agreement, an asset

24   management agreement, a shared services agreement, and an

25   intercreditor agreement.

1         Pursuant to the contribution agreement, LBHI would
2    transfer the majority of its existing employees, contribute its
3    domestic asset management infrastructure, its equity interests
4    in its European asset management companies, and make an initial
5    equity contribution of twenty million dollars.
6         Pursuant to the asset management agreement, subject to
7    certain guidelines and protocols, the debtors' assets would be
8    managed by Lamco.
9         This shared services agreement would govern the use of
10   certain contracts, assets and the services of certain
11   employees.  The intercompany agreement would provide for the
12   allocation of management fees and other costs between LBHI and,
13   amongst others, the debtors.
14        Other than as set forth in the contribution agreement,
15   none of the assets of the debtors and their affiliates would be
16   transferred in connection with the creation of Lamco.  Subject
17   to the asset management agreement, each debtor will retain
18   ownership and ultimate decision-making authority with respect
19   to its assets.
20        The affidavit of Bryan Marsal submitted in support of
21   the motion is part of the record.  Mr. Marsal is here in the
22   courtroom today.  Together with this description in the motion,
23   his affidavit offers the underlying bases for entering into the
24   Lamco transactions at this time:
25        The primary benefit, in the debtors' judgment, would

8

1  be employee retention, retaining employees and their skills and
2  knowledge of the debtors' assets.  The debtors believe that
3  having a going-concern business is critical to employee
4  retention at this time as alternative opportunities for
5  employees are increasing.
6       One secondary benefit, in the debtors' business
7  judgment, would be the ability to realize a return on the
8  investments in infrastructure that have been made to date.
9  This can only be accomplished through an enterprise value, as
10 opposed to a liquidation value.  Critically, without employees
11 there can be no enterprise value.
12      The debtors have received expressions of interest from
13 potential strategic partners.  The debtors would of course
14 return to this Court to seek approval of any transactions with
15 such parties.
16      Another secondary benefit of Lamco would be a
17 reduction in the cost of administering the assets of the
18 debtors' estates.  Management of third-parties' assets could
19 reduce the cost of Lamco allocated to the debtors.  Again, a
20 going concern is required to obtain this benefit.
21      Lamco would assess the resources -- would assess
22 resource requirements and availability when developing a plan
23 for new business.  It will not take on new business if doing so
24 would negatively impact its existing business.  Lamco will
25 acquire additional resources as sound business practices may

1   warrant.  In the debtors' business judgment, these benefits
2   would be maximized by entering into the transactions with Lamco
3   now, and may be lost if delayed.
4         Your Honor, as reflected in the debtors' reply, the
5   debtors resolved objections to the motion by agreeing to
6   certain modifications to the proposed order and Lamco
7   agreements that provide additional transparency, enhance
8   governance rights afforded to the creditors' committee, on
9   behalf of all creditors, and protect the rights of all
10  creditors.
11        The proposed order and Lamco agreements all now
12  require that material -- that all material modifications,
13  amendments or supplements to the agreements and related
14  agreements, as opposed to only those with a material adverse
15  effect, would need to be approved by the creditors' committee
16  and this Court.
17        Lamco Holdings LLC agreement now provides that the
18  creditors' committee shall be entitled to select the
19  independent person to be appointed to the board of managers of
20  Lamco Holdings.  LBHI will have the right to consent, but such
21  consent will not be unreasonably withheld.
22        The proposed order also provides that the ownership of
23  equity interests in Lamco shall be subject to allocation
24  amongst the debtors, pursuant to a Chapter 11 plan, provided
25  that nothing in the order shall require a specific amount of

1    such equity to be allocated to any particular debtor.  It

2    provides that the order shall not prejudice any rights of any

3    party-in-interest in respect of confirmation of any Chapter 11

4    plan in these cases.  It provides that any finding or

5    determination by the Court now that the relief sought in the

6    motion is in the best interests of the debtors, their estates

7    or parties-in-interest, and that the legal and factual bases

8    set forth in the motion establish cause to grant relief, shall

9    not preclude or prejudice the right of any party-in-interest

10   from seeking or objecting to any request for relief from the

11   Court, relating to Lamco, at a future date.

12            Unless Your Honor has any questions, the debtors would

13   respectfully request that the Court grant the motion and enter

14   an order consistent with the form submitted in connection with

15   the debtors' reply.

16            THE COURT:  I just have a procedural question about

17   the record that you choose to rely on in support of the relief

18   you seek today.  Is it simply the submissions that accompany

19   the original motion, including the affidavit of Mr. Marsal?

20            MR. FAIL:  Yes, Your Honor, in addition to the

21   proposed order reflecting modifications to --

22            THE COURT:  All right.  Do you have no intention of

23   putting on any other evidence in support of the relief you

24   seek?

25            MR. FAIL:  Not at this time, Your Honor.

1      THE COURT:  Okay.

2      I would like to hear from the creditors' committee in

3 connection with its review of the transaction and the

4 modifications that have just been described.

5      MR. FLECK:  Good afternoon, Your Honor.  Evan Fleck of

6 Milbank, Tweed, Hadley & McCloy LLP, on behalf of the official

7 committee of unsecured creditors of all of the Chapter 11

8 debtors.

9      Your Honor, to be quite candid, we are -- ten months

10 ago, we -- looking ahead to this date, we would have told Your

11 Honor that we would not be here before the Court supporting the

12 Lamco motion, because on its face the proposal is unusual in

13 the context of a Chapter 11 case, to be clear, and --

14      THE COURT:  I believe that probably the right word is

15 "unprecedented"

16      MR. FLECK:  That's right, and that -- Your Honor, that

17 may have been the word we used in our statement in support.

18 And we -- the committee, perhaps more than any other

19 transaction that we've looked at, looked at the details and

20 worked with the debtors in this transaction in excruciating

21 detail.  It was the subject of many meetings with the debtors,

22 meetings with third parties, internal analysis.  And, really,

23 it was a struggle for the committee to come to grips with this

24 transaction.

25      And I mention all of that because we are certainly

1    cognizant of the fact that it is extraordinary, but we also
2    recognize the fact that these are extraordinary cases and that
3    there is an opportunity here that in the committee's view is an
4    opportunity to be realized now and that, notwithstanding the
5    fact that it is quite unusual, and there are many words to
6    describe that, the opportunity presents itself.
7             And the committee is comfortable that, based upon the
8    documentation and the revisions that Mr. Fail addressed and
9    that have been filed with the Court, we are quite comfortable
10   that an appropriate structure has been put in place that
11   maintains the significant controls and oversight that have been
12   developed over the course of these cases; that creditors will
13   have a significant degree of control and oversight and input in
14   the process between now and the time of the determination date,
15   or, essentially, the effective date, of the plan; that we are
16   quite comfortable moving forward with the transaction and
17   support it at this time.
18            The primary basis for the committee's support is a
19   belief that the opportunities for a strategic partnership and
20   capitalizing upon the infrastructure that's been developed,
21   including the employees, the very valuable employees of these
22   estates, is something that should be realized upon and should
23   be further explored, and this is a necessary step in the
24   process, the formation and the approval of the transaction at
25   this stage.  And we, as we set forth in our statement, expect

13

1  to continue to work hand in hand with the debtors and the Lamco
2  board in order to be sure that we're comfortable each step of
3  the way.
4       And as was set forth in the debtors' motion and our
5  statement in response, the combination of the observer rights
6  as well as the ability to appoint an independent (sic), which
7  has been further developed and become further independent in
8  the course of the revisions to the documentation, all
9  contribute to the combination of a structure with which we're
10 quite comfortable, Your Honor.
11      I'd be happy to respond to any questions.  Again, this
12 has been a -- literally a ten-month process for the committee
13 to become comfortable with the transaction.  Again, we
14 recognize, while it's part of the plan, it is being brought up
15 separately, but we believe that there is ample support and
16 basis for doing that, Your Honor.
17      THE COURT:  All right, thank you.
18      MR. FLECK:  You're welcome.
19      THE COURT:  Are there any of the former objectors who
20 wish to say anything?  There's no need to, but --
21      Mr. Flics, do you have anything you want to say?
22      He's shaking his head no.
23      The derivative parties who objected?  Can't even tell
24 if --
25      MR. UZZI:  Only if you have questions, Your Honor.

1  THE COURT: Oh, I thought you were the ad hoc
2  committee.
3  MR. UZZI: I'm the ad hoc --
4  THE COURT: Are you the derivative parties who
5  objected too?
6  MR. UZZI: No, I jumped the gun, Your Honor. I
7  apologize.
8  THE COURT: It's fine. It's -- no apology needed.
9  MR. UZZI: But our statement speaks for itself. If
10  you have questions, we're happy to --
11  THE COURT: No, I read it.
12  MR. MOLONEY: Your Honor, we're not an ad hoc
13  committee but we are representing the derivative creditors,
14  some of them; only --
15  Tom Moloney on behalf of D.E. Shaw and Goldman Sachs.
16  -- two of the derivative creditors. And the changes
17  that were made, we think, established a more level playing
18  field. There's still issues about information-sharing and
19  which we're going to work with them to try to reach
20  accommodation on, which is why there's a reservation in the
21  order. This is without prejudice, coming back to the Court for
22  further relief if necessary, but I'm confident that we'll make
23  progress, as we've made to get this far.
24  THE COURT: Okay.
25  Anyone else who wishes to say anything?

1        (No response)

2        THE COURT:  Mr. Marsal, would you like to say

3   anything?

4        MR. MARSAL:  No, Your Honor, not unless you want to

5   ask me some questions about it.

6        THE COURT:  No need.  We'll stand on your affidavit.

7   And I assume that you affirm that everything that you said in

8   your affidavit is still true?

9        MR. MARSAL:  Yes, Your Honor.

10       THE COURT:  Fine.

11       I approve the motion to enter into these transactions

12  with the newly formed Lamco.  This is, as described by

13  committee counsel, highly unusual to the point of being a

14  unique transaction, certainly in my experience.  I've never

15  seen anything quite like this.

16       Implicit in the support of the major parties-in-

17  interest is the apparent business judgment that there are in

18  fact significant upside opportunities to be realized from this

19  structure and putting the structure in place sooner rather than

20  later.  I accept that business judgment and will not probe, at

21  this point on the public record, into what strategic

22  partnerships may or may not ultimately be within the zone of

23  possible at this point, and expect that I'll hear about that in

24  due course if they ever ripen.

25       I also note that the disclosure statement in support

of the Lehman plan was filed late last evening.  There is a section within the disclosure statement that addresses the subject matter of today's motion.  No doubt, that section will be updated to reflect the fact that there have been some modifications made, including modifications to the form of order which resulted in the support of the former objectors.

To the extent that this represents an important step in the direction of bringing these cases to a satisfactory and consensual conclusion, the Court is extremely pleased and hopes that Lamco will turn out to be an engine for not only job preservation but value creation as well.

And with that, I will enter the order today, if you will hand it up to me.

MR. FAIL:  Thank you very much, Your Honor.  Appreciate that.

(Order signed)

THE COURT:  Okay, thank you very much, and we're adjourned.  And for those who are downtown, there is -- there's a big event here at 4 o'clock.  We're adjourned.

MS. GOULDY:  Thank you.

(Proceedings concluded at 2:19 PM)

17

# I N D E X

### R U L I N G S

| DESCRIPTION | PAGE | LINE |
|---|---|---|
| Debtors' Motion for Authorization to Enter into Certain Asset Management and Related Agreements, approved | 15 | 11 |

```
                                                                    18

 1
 2                        C E R T I F I C A T I O N
 3
 4   I, Clara Rubin, certify that the foregoing transcript is a true
 5   and accurate record of the proceedings.
 6
 7   _____
 8   Clara Rubin
 9   AAERT Certified Electronic Transcriber (CET**D-491)
10
11
12   Veritext
13   200 Old Country Road
14   Suite 580
15   Mineola, NY 11501
16
17   Date:   April 22, 2010
18
19
20
21
22
23
24
25
```