WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
**In re**                                       :       **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :       **08-13555 (JMP)**
:
**Debtors.**             :       **(Jointly Administered)**
:
:
-------------------------------------------------------------------x

**DEBTORS' OBJECTION TO SWEDBANK'S MOTION PURSUANT TO FED. R.
BANKR. P. 8005 FOR STAY PENDING APPEAL OF THE PROPOSED ORDER
GRANTING THE DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 362
OF THE BANKRUPTCY CODE ENFORCING THE AUTOMATIC STAY AGAINST
<u>AND COMPELLING PAYMENT OF POST-PETITION FUNDS BY SWEDBANK AB</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

              Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Objection to the Motion of

Swedbank AB (publ.) ("Swedbank") pursuant to Rule 8005 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") for a Stay Pending Appeal of the Proposed Order (the

"Proposed Order")[1] Granting the Debtors' Motion [Docket No. 8564] (the "Debtors' Motion")

pursuant to Sections 105(a) and 362 of the Bankruptcy Code Enforcing the Automatic Stay

Against and Compelling Payment of Post-Petition Funds by Swedbank AB [Docket No. 8564]

(the "Stay Motion"), and respectfully state:

**Preliminary Statement**

1.     Swedbank seeks a stay of the Proposed Order that has been submitted to

the Court in furtherance of the Court's bench decision issued at the April 14, 2010 Omnibus

Hearing at which the Court granted the Debtors' Motion and held that:  (i) Swedbank's

administrative freeze of funds deposited in the Swedbank Account post-petition violates the

automatic stay and must be released; and (ii) Swedbank must pay LBHI all amounts deposited in

the Swedbank Account after the Commencement Date.  As demonstrated below, Swedbank does

not, and cannot, satisfy the requisite criteria necessary to entitle it to such extraordinary relief.

2.     First, Swedbank cannot demonstrate that it will suffer actual and imminent

irreparable harm by the enforcement of the Proposed Order.  The Proposed Order simply

requires Swedbank to purge itself of its contumacious conduct by releasing the administrative

freeze that has violated the automatic stay for almost one and one-half (1 1/2) years by turning

over all post-petition deposits that are rightfully owed to LBHI.  Swedbank has demonstrated in

the Stay Motion that payment of approximately $11.4 to $11.7 million to LBHI will not put

Swedbank at financial risk.  Swedbank's right to appeal and seek a reversal of the Proposed

Order will not be waived or extinguished.  Moreover, Swedbank's reliance on rank speculation

regarding the possibility that LBHI might be unable to re-deposit approximately $11 million with

---

[1] Although the Stay Motion is premature because no order has been entered, the Debtors nonetheless
address the issues raised in the Stay Motion on the assumption that the Proposed Order submitted to the
Court on April 21, 2010 will be entered by May 6, 2010, the date of the hearing to consider the Stay
Motion.

Swedbank (representing approximately 0.4% of LBHI's current cash assets) in the unlikely event

that the Proposed Order is reversed by the district court does not equate to the kind of

demonstrable prejudice that must be shown to warrant a stay.

3.     Second, Swedbank cannot establish that there is a substantial probability

that it will be successful on appeal.  As this Court found, the plain reading of the Bankruptcy

Code does not support Swedbank's contention that mutuality is not required for the setoff of

LBHI's pre-petition obligations against the funds deposited post-petition in the Swedbank

Account.  As the Stay Motion itself reflects, since the hearing on April 14, Swedbank still has

not found any case law or legislative history supporting its opposition to the Debtors' Motion.

Without supporting language, case law or legislative history, a reversal of this Court's decision is

remote, at best.

4.     Finally, the stay sought by Swedbank is likely to cause substantial harm to

both the Debtors and the public interest.  The value of the Debtors' recovery of post-petition

funds is subject to the volatile nature of the Swedish Krona.  As further demonstrated below (*see*

*infra,* at ¶ 34), as the value of the Swedish Krona decreases, so does the value of the Debtors'

recovery.  Neither the Debtors, nor their creditors, should bear this risk.  Moreover, the Debtors

and their creditors will be substantially harmed by Swedbank's continued violation of the

automatic stay, thereby encouraging the arrogation of the assets of the Debtors' estates.  The

Court should not condone such conduct.  Accordingly, the Stay Motion should be denied.

## Background

5.     The material facts giving rise to the Stay Motion are not in dispute.[2]

6.     On September 15, 2008 (the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

7.     Prior to the Commencement Date, LBHI established and maintained a bank account, identified as No. 17608 (the "Swedbank Account") with Swedbank.  The Swedbank Account, which is denominated in Swedish Krona ("SEK"), is a general deposit account with no relationship whatsoever to a swap agreement or any other derivative contract. *See* Declaration of Adrian Teng in Support of Debtors' Motion [Docket No. 6736] ("Teng Decl" or "Teng Declaration") ¶ 9.

8.     Shortly after the Commencement Date, Swedbank unilaterally placed an administrative freeze on the Swedbank Account, preventing the Debtors from withdrawing any amounts from the Swedbank Account, but still allowing additional monies to be deposited and/or wired into the account.  Teng Decl. ¶ 6.

---

[2] For a complete recitation of the facts, see the Debtors' Motion ¶¶ 3-16.  In support of the Stay Motion, Swedbank has submitted the Declaration of Johan Stenberg [Docket No. 8564] (the "Stenberg Declaration" or "Stenberg Decl.").  To the extent that the Stenberg Declaration contains any facts not previously included in the Declaration of Johan Stenberg submitted in support of Swedbank's Objection to the Debtors' Motion [Docket No. 6978], such new facts should not be included in the record on appeal. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (Bankr. S.D.N.Y. 2008) (holding post-hearing evidence was inadmissible because "if an item was not considered by the court, it should be stricken from the record on appeal"); *In re Ames Dep't Stores, Inc.*, 320 B.R. 518, 522 (Bankr. S.D.N.Y. 2005) (finding documents not submitted to the bankruptcy court were not allowed in the record on appeal because "the touchstone for the designation of matter as part of the record is whether the matter was before the lower court (or at least considered by that court) in entering the order or judgment appealed from").

9.      Due to various deposits and/or wire transfers made after the Commencement Date, SEK 82,765,466.45 was credited to the Swedbank Account between September 16, 2008 and November 12, 2009.

10.     As of January 11, 2010, the SEK 82,765,466.45 deposited in the Swedbank Account after the Commencement Date amounted to approximately $11.7 million in U.S. dollars.  Debtors' Motion ¶ 16.  According to Swedbank, on or about April 21, 2010, when it filed the Stay Motion, the value of post-petition funds had decreased by about 3% to approximately $11.4 million.  *See* Stay Motion at 5.

11.     On January 22, 2010, the Debtors filed the Debtors' Motion, seeking entry of an Order enforcing the automatic stay and directing Swedbank to release the administrative freeze placed on funds deposited into the Swedbank Account after the Commencement Date and requiring Swedbank to pay such amounts to LBHI, arguing that the freeze and proposed setoff violate sections 362 and 553 of the Bankruptcy Code.  *See generally* Debtors' Motion.  On February 9, 2010, Swedbank filed an Objection to the Debtors' Motion [Docket No. 6976] (the "Objection"), arguing that the proposed setoff was permitted by the safe harbor provisions in sections 560 and 561, and thus, are exempt from the mutuality requirement of section 553.  *See generally* Objection.  On April 9, 2010, the Debtors filed a Reply Memorandum in Further Support of Debtors' Motion [Docket No. 8196] (the "Debtors' Reply Memorandum"), arguing that Swedbank's proposed setoff is not protected by the safe harbor provisions of sections 560 and 561, which in any event, do not trump the mutuality requirement of section 553.  *See generally* Debtors' Reply Memorandum.

12.     On April 14, 2010, the Court granted the Debtors' Motion in its entirety from the bench, holding that Swedbank's proposed setoff violates section 553 of the Bankruptcy

Code because LBHI's pre-petition obligations to Swedbank lack mutuality with the funds

deposited in the Swedbank Account post-petition. In its bench decision, the Court stated:

> This is money that is indisputably post-petition funds received after the petition date. And Swedbank somehow argues that the traditional distinction between pre- and post-petition funds for purposes of construing mutuality under Section 553 should be disregarded simply because they [sic] exist[s], a fourteen-year old ISDA agreement relating to swaps between Lehman and Swedbank. I do not read Section 560 and 561 as overriding so fundamental a precept of U.S. bankruptcy law as the requirement that there may be mutuality for purposes of setoff. I do not believe that Section 560 and 561 can be read to override such a fundamental part of our law. And if Congress actually intended to do what [Swedbank] is today arguing, Congress would have said in clear, understandable and plain language that Section 553, to the extent it relates to mutuality, does not apply in circumstances of netting permitted under Section 560 and 561.

Transcript of 4/16/10 Omnibus Hearing [Docket No. 8490] (the "<u>Swedbank Tr.</u>") at 59-60. It is

this ruling that Swedbank seeks to stay pending its appeal to the district court.[3]

### **Swedbank Has Not Established That It is Entitled to a Stay Pending Appeal**

13.     Swedbank cannot demonstrate that it is entitled to a stay of the Proposed

Order pending its appeal to the district court.

14.     Rule 8005 of the Bankruptcy Rules governs an application for a motion to

stay a bankruptcy court order pending its appeal to the district court. Rule 8005 states in

pertinent part:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance . . . the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during

---

[3] Because Swedbank seeks a stay pursuant to Rule 8005 of the Bankruptcy Rules, and not pursuant to Rule 8017 (governing stays pending appeal to the Court of Appeals), the stay sought by Swedbank would only be in place pending a district court appeal.

> the pendency of the appeal on such terms that will protect the
> rights of all parties in interest.

Fed. R. Bankr. P. 8005.  The decision of whether to grant a stay of an order pending appeal is

within the sound discretion of the bankruptcy court.  *In re General Motors Corp.*, 409 B.R. 24,

30 (Bankr. S.D.N.Y. 2009); *see also In re Overmyer,* 53 B.R. 952, 955 (Bankr. S.D.N.Y. 1985)

("A motion for stay pending appeal, as authorized under Rule 8005, is discretionary").

        15.      It is well-established in the Second Circuit that the party seeking such

extraordinary relief bears the burden to demonstrate that:

> (1) it would suffer irreparable injury if a stay were denied;  (2)
> there is a substantial possibility, although less than a likelihood, of
> success on the merits of the movant's appeal;  (3) other parties
> would suffer no substantial injury if the stay were granted;  and
> that (4) the public interest favors a stay.

*In re General Motors*, 409 B.R. at 30; *see also Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39

(2d Cir. 1993); *In re DJK Residential, LLC*, No. 08-10375 (JMP), 2008 WL 650389, at *2

(S.D.N.Y. Mar. 7, 2008); *In re Calpine Corp*., No. 05-60200, 2008 WL 207841, at *4 (Bankr.

S.D.N.Y. Jan. 24, 2008); *In re Tower Automotive, Inc*., No. 05-10578 (ALG), 2006 WL

2583624, at * 1 (Bankr. S.D.N.Y. June 28, 2006), *aff'd*, 241 F.R.D. 162 (S.D.N.Y. 2006).  The

movant's burden to establish these factors is a "heavy" one.  *In re General Motors*, 409 B.R. at

30; *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084

(2d Cir. 1995) ("A party seeking a stay of a lower court's order bears a difficult burden"); *In re

DJK Residential*, 2008 WL 650389, at *2 ("The burden on the movant is a 'heavy' one").  To be

successful, Swedbank must "show satisfactory evidence" demonstrating each of the four criteria.

*In re General Motors*, 409 B.R. at 30; *In re DJK Residential*, 2008 WL 650389, at *2.  "Failure

to satisfy one prong of this standard for granting a stay will doom the motion."  *In re Turner*, 207

B.R. 373, 375 (2d Cir. B.A.P. 1997); *see also Bijan-Sara Corp. v. Fed. Deposit Ins. Corp.*, 203

B.R. 358, 360 (2d Cir. B.A.P. 1996) ("Movant's failure to satisfy one prong of the standard for granting a stay pending appeal dooms his motion"); *In re DJK Residential*, 2008 WL 650389 at *2 ("Failure to satisfy one prong of this standard . . . will doom the motion"); *In re Tower Automotive*, 2006 WL 2583624, at *1 ("A court can grant a stay only if the moving party has satisfied each of the [four] requirements . . . .").

16.     Swedbank seeks to downplay its "heavy" burden by alluding to out-of-date and out of jurisdiction decisions.  For instance, while the Court in *In re Great Barrington Fair & Amusement, Inc.*, 53 B.R. 237 (Bankr. D. Mass. 1985) held that the four factors considered under Rule 8005 need not be accorded equal weight (*see* Stay Motion at 6), the Court also held that *each* of the four conditions must be satisfied.  *In re Great Barrington*, 53 B.R. at 239 ("Although each of these conditions *must* be satisfied . . . not all of the four conditions must be given equal weight.") (emphasis added).  Moreover, despite Swedbank's suggestion to the contrary (*see* Stay Motion at 6-7), maintaining the "status quo" is not one of the mandated stay considerations.  *See In re Friedberg*, No. 91-7490, 1991 WL 259038, at *2 (S.D.N.Y. Nov. 25, 1991) (rejecting argument that stay should be granted to maintain the status quo).  While granting the Stay Motion is in the Court's discretion, courts in the Second Circuit have repeatedly held that the Rule 8005 factors must be satisfied.  *See id; In re Albert*, No. 99-31520, 2002 WL 1432663, at *2-*3 (Bankr. S.D.N.Y. 2002); *In re Candor Diamond Corp.*, 26 B.R. 844, 847 (Bankr. S.D.N.Y. 1983).[4]

---

[4] While there is some disagreement among the courts in this Circuit with respect to whether all four factors must be satisfied or whether there should be a weighing of factors, the Stay Motion should be denied because it fails under either standard.  *See In re General Motors*, 409 B.R. at 30 (recognizing split in the Circuit and that some cases "have engaged in a balancing process with respect to the four factors" while other cases have held that "failure to satisfy any prong of the 4-part test 'will doom the motion'"); *In re Smith*, No. 09-508, 2009 WL 366577, at *2 (E.D.N.Y. Feb. 12, 2009) ("The Second Circuit has yet to expressly rule on whether all four elements must be satisfied, and Courts in this Circuit have ruled both ways").

17.    Perhaps recognizing that it cannot meet its burden, Swedbank erroneously contends that "[w]here a bond is posted, a stay is granted as a matter of course... even if there is no evidence of potential harm." Stay Motion at 7.  The sole case cited by Swedbank, *Liberty Mutual Ins. Co. v. Bankers Trust Co.*, 769 F. Supp. 130 (S.D.N.Y. 1991), relies on Rule 62(d) of the Federal Rules of Civil Procedure.  Rule 62(d), which is incorporated by Rule 7062 of the Bankruptcy Rules, however, is inapplicable to the instant matter because Rule 7062 only applies in adversary proceedings.  Fed. R. Bankr. P. 7001; *see also Mixon v. Twin Assets, LLC*, 289 Fed. Appx. 168, 169 (9th Cir. 2008) (finding that Rule 62 does not apply to contested matters); *Heghmann v. Hafiani*, 324 B.R. 415, 418 n.5 (1st Cir. B.A.P. 2005) (same).  Indeed, even though Rule 9014(c) previously provided that Rule 7062 applied to contested matters such as this one, the Bankruptcy Rules were amended in 1999 to delete Rule 7062 from the list of rules applicable to contested matters because:

> the provisions of Rule 62, including the ten-day automatic stay of the enforcement of a judgment provided by Rule 62(a) and *the stay as a matter of right by posting a supersedeas bond provided in Rule 62(d)*, are not appropriate for most orders granting or denying motions governed by Rule 9014.

Fed. R. Bankr. P. 9014 advisory committee's note (1999) (emphasis added).  Thus, the mere posting of a bond, which Swedbank also argues it should not be required to post (*see* Stay Motion at 21), does not grant Swedbank the automatic right to a stay.

### Swedbank Will Not Be Irreparably Injured Absent a Stay

18.    While Swedbank spends ten pages arguing the "merits" of its appeal, it is almost dismissive, spending only two pages, addressing the factor that should predominate the stay analysis – whether Swedbank will be irreparably injured absent a stay.  "A showing of irreparable harm is the '*principal prerequisite* for the issuance' of a stay under Bankruptcy Rule 8005." *In re Calpine*, 2008 WL 207841, at *4 (quoting *In re Adelphia Commc'n Corp.*, 361 B.R.

337, 347 (S.D.N.Y. 2007)) (emphasis added). Indeed, this Court has recognized that "the factor that most warrants consideration in whether to issue a stay is whether the party seeking the stay will suffer irreparable injury." *See* Transcript of 10/23/09 Omnibus Hearing regarding, inter alia, Metavante Corporation's motion for a stay (the "Metavante Dispute") [Docket No. 5631] (the "Metavante Tr.") at 40. The irreparable injury necessary to establish the right to a stay pending appeal cannot be "remote nor speculative." *In re Calpine*, 2008 WL 207841, at *4 (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). Rather, the alleged harm must be "actual and imminent." *Id.*

19.    Swedbank has not provided any evidence demonstrating an "actual and imminent" danger that it will be irreparably harmed absent a stay. To the contrary, as the Stenberg Declaration shows, Swedbank is "well capitalized" and "solvent" with approximately $2.5 billion in assets. Stenberg Decl. ¶¶ 7, 29. Thus, payment of the approximately $11.4 to $11.7 million owed to LBHI clearly will not have an adverse impact on Swedbank's business. Rather, the practical effect of the Proposed Order will be to compel Swedbank to: (1) purge itself of its own contumacious conduct by requiring compliance with the automatic stay; and (2) pay LBHI all of the amounts deposited in LBHI's Swedbank Account since the Commencement Date. As recognized by this Court in connection with the Metavante Dispute, where there "is pure and simply an ordinary business transaction between apparently liquid counterparties," "irreparable injury . . . is almost a laughable concept." Metavante Tr. at 42.

20.    Swedbank claims that it will be irreparably harmed because payment to LBHI will extinguish its setoff claim and right to appeal, citing inapplicable cases primarily outside of the Second Circuit. Stay Motion at 18-19. Swedbank argues that payment of the debt, although compelled by the Court, would somehow extinguish its setoff rights. *Id.* However, all

but one case relied upon by Swedbank for this proposition involve *voluntary* payments made by a creditor that did not take appropriate steps to safeguard its setoff rights.  *See In re Lifestyle Furnishings, LLC*, 418 B.R. 382, 388-89 (Bankr. D. Idaho 2009) (finding bank waived its setoff rights by voluntarily turning over funds to the trustee); *In re Matter of Litchfield Constr. Mgmt.*, 137 B.R. 98, 99 (Bankr. D. Conn. 1992) (finding bank waived its setoff rights by asserting such rights six months *after* making a voluntary payment).  Indeed, the *Lifestyle Furnishings* Court held that, "a creditor may lose or waive its right to setoff *by voluntarily turning over possession of funds* subject to that right" and distinguished the creditor in *Lifestyle Furnishings* from the creditor in *McCarty v. Nat'l Bank of Alaska*, 158 F.3d 997 (9th Cir. 1998), which had "clearly asserted its right of setoff." *In re Lifestyle Furnishings*, 418 B.R. at 387-88 (emphasis added).  It is self-evident that the payment Swedbank will be mandated to make pursuant to the Proposed Order will not be voluntary and thus, will not result in waiver.

21.    Swedbank's reliance on the singular case that does not deal with voluntary payment,  *In re Ealy*, 396 B.R. 20 (8th Cir. B.A.P. 2008), is misplaced.  While the Eighth Circuit's Bankruptcy Appellate Panel in *Ealy* held that failure to obtain a stay pending appeal may moot that creditor's setoff rights, the ruling is inconsistent with the mootness doctrine.  A bankruptcy appeal is moot only if it is "impossible for a court to grant 'any effectual relief whatever'" or if "the implementation of that relief would be inequitable." *In re Best Products Co.*, 68 F.3d 26, 30 (2d Cir. 1995) (quoting *Church of Scientology of Cal. v. U.S.*, 506 U.S. 9, (1992) and *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993)).  As recognized by the Ninth Circuit's Bankruptcy Appellate Panel in rejecting *Ealy*, meaningful relief does not require a complete reversal of subsequent events. *See In re Gould,* 401 B.R. 415 (9th Cir. B.A.P. 2009), *aff'd*, No. 09-60008, 2010 WL 153934 (9th Cir. Apr. 19, 2010).  Rather, "a reversal of the

bankruptcy court's order [would] simply require [LBHI] to pay [Swedbank] back." *Id.* at 423.[5] The Supreme Court and courts in the Second Circuit have consistently held that payment of money pursuant to a judgment does not moot an appeal. *See, e.g. Cahill v. New York, New Haven, and Hartford R.R. Co.*, 351 U.S. 183 (1956) (holding that where defendant intends to pursue his remedies notwithstanding payment of the judgment, payment does not render the case moot); *In re 183 Lorraine Street Assocs.*, 198 B.R. 16 (E.D.N.Y. 1996) (holding that an appeal is not moot where a sale had taken place and plan distributions were made if the reimbursement of all relevant parties is possible). If Swedbank were correct, then virtually all appeals would be rendered moot by compliance with a lower court order.[6] Furthermore, while the Proposed Order requires Swedbank to pay approximately $11.4 to $11.7 million to LBHI, it is not a money judgment. Rather, it is a judgment requiring Swedbank to purge itself of contumacious conduct and to comply with the automatic stay. Such compliance requires Swedbank to release the administrative freeze imposed on post-petition deposits in the Swedbank Account and pay LBHI all of the post-petition deposits accumulated to date. Payment of $11.4 to $11.7 million does not

---

[5] Swedbank's reliance on *Playa Marel, P.M., S.A. v. LKS Acquisitions, Inc*., No. C-3-06-366, 2007 WL 3342450 (S.D. Ohio Nov. 6, 2007) is also misplaced. There, the court held that the plaintiff's claim was moot *not* because it failed to obtain a stay pending appeal, but rather because the counterclaim against which the plaintiff intended to setoff the debt was dismissed on the merits and thus, no longer existed. *Id.* at *3.

[6] The cases cited by Swedbank for the proposition that mootness constitutes irreparable injury, (*see* Motion at 19), in fact demonstrate that payment of a judgment is not the type of harm that courts consider "irreparable" and thus support the denial of the Stay Motion. *See In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (2d Cir. B.A.P. 1996) (finding that permitting a foreclosure sale to proceed could render a challenge to the sale moot); *In re Suprema Specialties, Inc.*, 330 B.R. 93, 95 (S.D.N.Y. 2005) (finding the bankrupt estate's disbursement of settlement proceeds already paid to the debtor pursuant to a court order could possibly constitute irreparable injury); *In re St. Johnsbury Trucking Co*., 185 B.R. 687, 690 (S.D.N.Y. 1995) (finding that distributions made pursuant to a plan of reorganization could render an pending appeal of the confirmation order moot). Further, *In re Collated Products Corp.*, 121 B.R. 195, 201 (D. Del. 1990) did not involve a motion for a stay, and thus, the Court did not undertake an irreparable harm analysis.

extinguish or relieve Swedbank of its continuing obligation to make payments of future deposits and/or accrued interest.

22.      Swedbank also contends that "there is a substantial risk" that an appeal could be rendered moot because undisclosed press reports might suggest that the "bankruptcy estate will have distributed all estate funds pursuant to the Plan" by the conclusion of the appeal. Stay Motion at 19-20; Stenberg Decl. ¶ 28.  Presumably, Swedbank is referring to the chapter 11 plan filed by the Debtors on April 14, 2010, as to which no disclosure statement has been approved, no solicitation period has yet occurred, and no confirmation hearing or confirmation date has been scheduled.  Speculation and conjecture regarding that yet to be confirmed plan, the timing of the confirmation, and the distributions that may be made pursuant to that plan does not amount to the actual and imminent harm necessary to warrant a stay pending appeal to the district court.  Moreover, what is not speculation is that, as reflected in the latest monthly operating report, LBHI, alone, has over $2.7 billion in cash and investments.  *See* March 2010 Monthly Operating Report [Docket No. 8553].  Swedbank's failure to demonstrate any harm in complying with the Proposed Order mandates denial of the Stay Motion.

**There is No Substantial Possibility that Swedbank Will Be Successful on Appeal**

23.      Swedbank has failed to establish a substantial likelihood of success on appeal.  Neither the plain reading of the Bankruptcy Code, relevant case law, nor the relevant legislative history supports Swedbank's argument that there exists an applicable exception to section 553's mutuality requirement or that sections 560 or 561 "overrid[e] so fundamental a precept of U.S. bankruptcy law as the requirement that there be mutuality for purposes of setoff." Swedbank Tr. at 60.[7]  In fact, existing authority and precedent is to the contrary.

---

[7] The Debtors hereby incorporate all of the arguments set forth in the Debtors' Motion and the Debtors' Reply Memorandum.

## The Plain Reading of the Bankruptcy Code Does Not Exempt
## Safe-Harbored Setoffs from the Mutuality Requirement of Section 553

24.    As the Debtors previously demonstrated and the Court found, it is well-established that section 553 of the Bankruptcy Code protects *only* the right to set off mutual pre-petition claims.  Swedbank Tr. at 60; *see also In re Bennett Funding Group, Inc.*, 146 F.3d 136, 139 (2d Cir. 1998) (requiring mutuality for setoff); *Lehman Bros. Holdings Inc. (DnB Nor Bank)*, 404 B.R. 752, 757-58 (Bankr. S.D.N.Y. 2009) (denying setoff where there was no mutuality between LBHI's alleged pre-petition debts to DnB Nor Bank and the funds credited to LBHI's DnB account post-petition); *In re Orr*, 234 B.R. 249, 254-55 (Bankr. N.D.N.Y. 1999) (wages deposited in bank account post-petition were not subject to setoff); *In re Kleather*, 208 B.R. 406, 414 (Bankr. S.D. Ohio 1997) (denying bank's motion to offset amounts deposited in bank account post-petition against a pre-petition claim); *Matter of Springfield Casket Co.*, 21 B.R. 223, 228 (Bankr. S.D. Ohio 1982) ("[I]n the context of bankruptcy, postpetition debts may not provide the basis for setoff because mutuality ceases upon the filing of the bankruptcy estate").

25.    Specifically, section 553(a) expressly preserves a creditor's right to:

> offset a <u>mutual debt</u> owing by such creditor to the debtor that <u>arose before the commencement of the case</u> under this title against a claim of such creditor against the debtor that <u>arose before the commencement of the case.</u> . . .

11 U.S.C. § 553(a) (emphasis added).  This plain language of section 553 does not contain an exception for non-mutual setoffs that are safe-harbored under sections 560 and 561 of the Bankruptcy Code.

26.    The United States Supreme Court held in *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989) that "[t]he plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Id.* at 242.  The plain meaning of section 553 permits

only the setoff of mutual pre-petition claims. Swedbank does not dispute this point. *See* Stay Motion at 8 (stating that that section 553 "explicitly differentiates between pre- and post- petition obligations"). Thus, no such exception can be read into the statute.

27. Likewise, neither the plain reading of section 560 nor section 561 of the Bankruptcy Code provide an exception to the mutuality requirement of section 553. The exceptions for setoffs in sections 560 and 561 allow parties to exercise setoffs despite the automatic stay; they do not provide parties with *otherwise invalid non-mutual setoff rights*. Indeed, a Senate Report demonstrates that Congress intended to exempt *only* the setoff of "*mutual* debts and claims arising under or in connection with swap agreements from the automatic stay" in order to allow the netting or setoff process that occurs upon the termination, liquidation or acceleration of one or more swap agreements. S. Rep. No. 101-285, 1990 WL 259288, at *3 (May 14, 1990) (emphasis added). Congress did not create new or alter existing setoff rights with sections 560 and 561. *See Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Ass'n*, 322 F.3d 1039, 1051 n.13 (9th Cir. 2003) (stating that "the Swap Amendments exempt from the automatic stay the creditor's rights to terminate a swap, setoff *mutual* obligations and net out termination damages…") (emphasis added); *Nat'l Gas Distribs., LLC v. Smithfield Packing Co., Inc.*, 369 B.R. 884, 899 (Bankr. E.D.N.C. 2007) (recognizing that "setoffs by a swap participant of *mutual* debt and claims under a swap agreement, are excepted from the automatic stay") (emphasis added), *rev'd on other grounds,* 556 F.3d 247 (4th Cir. 2009).[8]

---

[8] Swedbank's additional contention that sections 560 and 561 apply to "any" contractual right, "whenever arising" ignores that (1) the exercise of "any contractual right" is expressly limited as set forth in those sections (*see* Debtors' Reply Memorandum ¶¶ 8-12); and (2) this Court has held that section 560 (and by extension 561) does not protect any contractual right. *See In re Enron Corp.*, 306 B.R. 465, 473 (Bankr. S.D.N.Y. 2004) (holding section 560 does not provide swap participants with "unqualified right[s]"); *see also Calpine Energy Servs. v. Reliant Energy Elec. Solutions*, No. 05-60200 (BRL), Adv. Proc. No. 08-

28.       Swedbank contends that the words "shall not be stayed, avoided, or

otherwise limited by operation of any provision of this title" found in sections 560 and 561 of the

Bankruptcy Code somehow override the express unqualified requirement in section 553(a)(1)

that setoff be of a "mutual debt" arising "before the commencement of the case" against a claim

that "arose before the commencement of the case." *See* Stay Motion at 10.  As demonstrated

below (*see infra,* at ¶ 32), however, section 553 already contains specific exceptions to mutuality

for certain pre-petition safe-harbored setoffs. *See* 11 U.S.C. §§ 553(a)(2)(B)(ii), 553(a)(3)(C),

and 553(b)(1).  It is a "longstanding principle[] of statutory construction" that "a general section

of a statute must give way to a specific one." *U.S. v. LaPorta*, 46 F.3d 152, 156 (2d Cir. 1994).

Thus, had Congress intended sections 560 and 561 to trump the well-settled requirement of

mutuality specifically set forth in section 553(a)(1), it would have done so with specific and clear

language as it did in sections 553(a)(2)(B)(ii), 553(a)(3)(C), and 553(b)(1), not with the general

language contained in sections 560 and 561.  *See Morales v. Trans World Airlines, Inc.*, 504 U.S.

374, 384 (1992) (finding that a general remedies saving clause did not preempt a specific

substantive provision); *In re Chateaugay Corp.,* 198 B.R. 848, 860 (S.D.N.Y. 1996) ("It is a

commonplace of statutory construction that the *specific* governs the *general*" (quoting *Morales,*

504 U.S. at 384)) (emphasis in original); *In re Cybridge Corp.*, 304 B.R. 681, 686 (Bankr. D.N.J.

2004) (citing *Morales,* 504 U.S. at 384) (finding that Congress intended secured lending to be

approved in accordance with section 364 of the Bankruptcy Code rather than section 363 because

post-petition secured lending was specifically addressed in section 364, but not section 363).

Any other interpretation would render the exceptions in section 553 superfluous.  It is well-

established that statutory interpretation that renders statutory provisions superfluous is to be

---

1251(BRL), 2009 WL 1578282, at *6 (Bankr. S.D.N.Y. May 7, 2009) (holding that analogous section
556 does not protect all contractual rights, but only those specified in the statute).

rejected. *See Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (finding that courts should not "adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law" (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988))); *In re Enron Corp.* 354 B.R. 652, 656 (S.D.N.Y. 2006) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)) (rejecting creditor's interpretation of the Bankruptcy Code where the interpretation would render certain language superfluous).

### There Is No Case Law Supporting Swedbank's
### Argument that Mutuality is Not Required for Safe-Harbored Setoffs

29.    Swedbank has not cited any case that supports its contention that mutuality is not required for safe-harbored setoffs. Indeed, the singular case cited by Swedbank for this proposition – *In re Weisberg*, 136 F.3d 655 (9th Cir. 1988) – is completely inapplicable, further demonstrating that there is no law supporting Swedbank's position. In *Weisberg,* the debtor alleged that his stockbroker, Shearson Lehman Brothers, Inc. ("Shearson"), had violated the automatic stay by liquidating shares of stock that he had placed in a pre-petition margin loan account to secure a loan issued by Shearson pre-petition. *Id.* at 656-57. Shearson argued that it liquidated the pre-petition shares after the debtor failed to respond to several post-petition margin calls, and thus, was a permissible setoff under section 362(b)(6) of the Bankruptcy Code. *Id.* The Ninth Circuit held that the setoff (which occurred post-petition) was permissible not, as Swedbank contends, because "it was irrelevant that a post-petition setoff was used to satisfy a pre-petition obligation. . . ." Stay Motion at 11-12, but rather because "mutual, pre-existing debts" existed, satisfying the mutuality requirement for setoff. *Weisberg*, 136 F.3d at 658. The *Weisberg* Court did not discard the mutuality requirement.

30.    Swedbank's reliance upon *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513 (1984), for the shocking proposition that the long-standing distinction between the pre- and post-

chapter 11 entity has been extinguished also fails. Stay Motion at 12-13. Swedbank

oversimplifies the holding in *Bildisco,* which the Court specifically stated was confined to the

Court's interpretation of the debtor's ability to reject an executory contract in the context of

collective bargaining agreements. *See Bildisco*, 465 U.S. at 527-528 (treating debtor-in-

possession as the same entity because "*for our purposes*, it is sensible to view the debtor-in-

possession as the same 'entity' which existed before the filing of the bankruptcy petition")

(emphasis added). Further, *Bildisco* concerned the rejection of certain pre-petition collective

bargaining agreements, not the setoff of a pre-petition debt against a post-petition obligation.

*See Fed. Ins. Co. v. Cont'l Cas. Co.*, 2006 WL 3386625, at *11 (W.D. Pa. Nov. 22, 2006)

(finding that the "new entity" language in *Bildisco* was limited to the facts of that case); *In re

Durrett*, 187 B.R. 413 (D.N.H. 1995) (same). Not only is Swedbank's contention that the

Supreme Court rejected the "new entity" incorrect, it is inconsistent with this Circuit's long-

standing bankruptcy jurisprudence. *See In re Worldcom, Inc.*, 401 B.R. 637, 649 (Bankr.

S.D.N.Y. 2009) ("[A] trustee in a straight bankruptcy proceeding is *not* the same entity as the

pre-bankruptcy company. A new entity is created with its own rights and duties, subject to the

supervision of the bankruptcy court." (quoting *Shopmen's Local Union 455 v. Kevin Steel Prods.

Inc.*, 519 F.2d 698, 704 (2d Cir. 1975))) (emphasis in original); *In re Genuity*, 323 B.R. 79, 82

(Bankr. S.D.N.Y. 2005) ("The debtor and the debtor-in-possession are two separate and distinct

entities which act in different capacities pre-and post-petition."); *In re Shoppers Paradise, Inc.*, 8

B.R. 271, 278 (Bankr. S.D.N.Y. 1980) (holding that a post-petition obligation for rent cannot be

offset against a pre-petition obligation of the debtor because the pre-petition debtor and the

debtor-in-possession are "separate and distinct entities"); *Park East Corp. v. Blue Cross & Blue

Shield of Greater N.Y.*, 470 F. Supp. 147, 150 (S.D.N.Y. 1979) (finding that because the post-

petition debtor-in-possession is "separate and distinct" from the pre-petition debtor, the debts owed to the claimant before the filing date "may not be set off against claimant's post-petition obligations").

### Legislative History Further Demonstrates that Mutuality is Required for Safe-Harbored Setoffs

31.     Without relying on any case law or legislative history, Swedbank argues for the first time that the amendments enacted by Congress in connection with the Financial Netting Improvement Act of 2006, Pub. L. No. 109-360 (2006) ("FNIA") removed the mutuality requirement from the automatic stay exceptions found in section 362(b) of the Bankruptcy Code. In doing so, Swedbank describes how the amendments replaced the phrase "mutual debt and claim" in sections 362(b)(6), (b)(17), and (b)(27) with "any contractual right" thereby concluding that Congress removed the mutuality requirement from the safe-harbored exceptions to the automatic stay.  Stay Motion at 17-18.  Aside from the issue that this after-the-fact argument is too late and of no moment in respect of a stay request, the legislative history does not support Swedbank's misconceived views of Congressional intent.  Rather, the legislative history reveals that when Congress amended section 362(b) as part of FNIA, Congress intended merely to make certain "technical changes to the netting and financial provisions" of the Bankruptcy Code in order "to update the language to reflect current market and regulatory practices," and "ensure that some of the newer forms of contractual arrangements are resolved in the same manner as other similar contracts."  H.R. Rep. No. 109-648, available at 2006 WL 6165926, at *1587 (2006).  Congress intended to "protect, free from the automatic stay, all rights previously protected by sections 362(b)(6), (7) and (17)."  *Id.* at 1592.  The legislative history does not contain any indication that Congress made any fundamental change to the operation of the statute, such as removing mutuality.  To the contrary, it demonstrates that Congress intended to

protect the setoff of "mutual debts and claims" arising under or in connection with the

termination, liquidation or acceleration of derivative contracts. S. Rep. No. 101-285, 1990 WL

259288, at *3 (May 14, 1990). Indeed, even in 2006 in connection with the FNIA amendments,

Congress described "financial netting" as "the settling of *mutual* obligations at their net value as

opposed to each obligation's gross dollar value." *Id.* (emphasis added). Thus, Congress' intent

further supports the Court's decision granting the Debtors' Motion.[9]

32.    Finally, Swedbank also argues that the creation of exceptions for certain

pre-petition setoffs in section 553(b) of the Bankruptcy Code somehow supports its argument

that safe-harbored transactions are exempt from the mutuality requirement. Stay Motion at 17-

18. In 2005, when Congress amended section 560 and enacted section 561, Congress also

amended section 553 of the Bankruptcy Code in order to provide certain narrow exceptions to

the general applicability of the setoff rules with respect to certain transactions covered by the

safe harbor provisions of sections 560 and 561. *See* Bankruptcy Abuse and Consumer Protection

Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, §§907(j), 907(k), 907(n) (2005). Specifically,

sections 553(a)(2)(B)(ii) and 553(a)(3)(C) carved out of the prohibition on setoffs, claims

acquired within the ninety day period preceding a filing when the debtor was insolvent, including

those setoffs covered by sections 560 and 561. *Id.*, §907(n). Congress also carved out certain

section 560 and 561 setoffs from the avoidance provisions in section 553(b)(1). *Id.* No

exception exists with respect to any other provision of section 553, inclusive of the requirement

---

[9] Swedbank's suggestion that non-mutual setoffs should be permitted because they are recognized "outside of bankruptcy" (Stay Motion at 15-17), ignores that the Bankruptcy Code intentionally imposes limitations on the ability of creditors to seek payment from debtors. Further, while the safe harbor provisions were intended "to promote certainty for swap transactions and thereby stabilize the domestic markets by allowing the terms of the swap agreement to apply notwithstanding the bankruptcy filing," H.R. Rep. 101-484, 3 (available at 1990 WL 92539 (1990)), the only "setoff process" that Congress intended to protect was the mutual netting of obligations following the termination, liquidation, or acceleration of certain derivative contracts. *See* Debtors' Reply Memorandum ¶¶ 8-14.

for mutuality.  These specific and clear exceptions, which are inapplicable to the type of setoff

that Swedbank is seeking to exercise, demonstrate that Congress thought it necessary to add

exceptions for certain safe-harbored setoffs to section 553 despite the safe harbor protections

provided by sections 560 and 561.  They also demonstrate that if Congress had actually intended

to trump the long-standing principle of mutuality by sections 560 and 561, it would have done so

with clear and conspicuous language providing for a safe harbor exception to the mutuality

requirement in section 553(a).  But, it did not.  *See Dewsnup v. Timm*, 502 U.S. 410, 419 (1992)

(holding that the Supreme Court "is reluctant to accept arguments that would interpret the Code

to effect a major change in pre-code practice that is not the subject of at least some discussion in

the legislative history."); *Emil v. Hanley*, 318 U.S. 515, 521 (1943) (finding that "if Congress

had set out to make such a major [legislative] change, some clear and unambiguous indication of

that purpose would appear."); *FDIC v. Hirsch*, 980 F.2d 125, 132-33 (2d Cir. 1992) (stating that

Congress will "expressly designate the provisions whose application it wishes to suspend, rather

than leave that consequence to the uncertainties of implication compounded by the vagaries of

judicial construction").

> 33.    As demonstrated above, neither the plain reading of the Bankruptcy Code,

legislative history, nor relevant case law supports Swedbank's contention that Congress disposed

of the mutuality requirement for safe-harbored transactions.  Without such support, it is highly

improbable that the district court will reverse this Court's decision that section 553 precludes the

setoff of pre-petition obligations against post-petition funds.[10]

---

[10] Swedbank is unlikely to be successful on the merits for the additional reason that Swedbank's proposed
setoff is not protected by the safe harbor provisions in sections 560 and 561 of the Bankruptcy Code.  *See*
Debtors' Reply Memorandum ¶¶ 8-14.

**The Debtors and the Public Interest Would Be**
**Substantially Harmed by a Stay of the Proposed Order**

34.     Swedbank has failed to establish that the Debtors and third parties would

not be substantially injured by a stay of the Proposed Order.  Swedbank contends that the

Debtors would not be injured by a stay because the Debtors would eventually recover the funds

if they were successful on appeal.  Stay Motion at 20.  Swedbank ignores that LBHI has been

entitled to these sums since they were deposited in the Account after the Commencement Date.

Because LBHI is entitled to the funds in Swedish Krona, the actual value of such funds to the

Debtors' estate is subject to the volatility of this currency.  In other words, distribution to the

LBHI's creditors will be undertaken in dollars, and thus, will be subject to any changes that

occur to the value of Swedish Krona.  For example, as of January 11, 2010, the post-petition

funds at issue amounted to approximately $11.7 million (*see* Debtors' Motion ¶ 16), but by April

21, 2010, due to a decrease in the value of the Swedish Krona, the post-petition funds were worth

only about $11.4 million.  *See* Stay Motion at 5.  The volatility of the Swedish Krona is

unpredictable and its value may continue to decrease.  Swedbank should not be permitted to

force the Debtors' estate, and thus, its creditors, to bear this risk of substantial harm.

35.     Furthermore, both LBHI and its creditors will be substantially harmed if

Swedbank is permitted to continue violating the automatic stay.  As the Court is aware, the

automatic stay is one of the most fundamental protections afforded to debtors under the

Bankruptcy Code.  *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986).

It protects both debtors and their creditors by promoting "the bankruptcy goal of equal

treatment" and "ensuring that no creditor receives more than an equitable share of the bankrupt's

estate."  *In re Drexel Burnham Lambert Group, Inc.*, No. 90B-10421, 1990 WL 302177, at *5

(Bankr. S.D.N.Y. Dec. 14, 1990) (quoting *Lincoln Sav. Bank, FSB v. Suffolk County Treasurer*,

880 F.2d 1540, 1545 (2d. Cir. 1989)).  Swedbank has violated the automatic stay for at least

seventeen months by placing an administrative freeze on the Swedbank Account and refusing to

turn over the post-petition deposits owed to LBHI.  By doing so, Swedbank unilaterally granted

itself preferential treatment over all other creditors, causing substantial harm to the Debtors and

their creditors.  *See In re Masterwear Corp.*, 229 B.R. 301, 311 (Bankr. S.D.N.Y. 1999)

("[Setoff] operates to prefer one creditor over every other."); *In re Garden Ridge Corp.*, 338 B.R.

627, 633 (Bankr. D. Del. 2006) (setoff "elevate[s] an unsecured claim to secured status"), *aff'd*,

399 B.R. 135 (D. Del. 2008).

36.     Despite the Court's ruling that Swedbank violated the automatic stay,

Swedbank now seeks leave to continue violating the stay.  Granting such relief may encourage

other creditors to withhold funds rightfully owed to the Debtors on the grounds that the safe

harbor provisions could somehow trump mutuality.  Such a result would defeat the purpose of

the automatic stay – to prevent creditors from arrogating property of the estate to themselves to

the detriment of other creditors.  *In re Drexel Burnham*, 1990 WL 302177, at *5 ("The automatic

stay 'also protects creditors'' interests by preserving their relative positions and preserving the

remains of the debtor's estate against unsupervised dissipation through a 'chaotic and

uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in

different courts'").  Accordingly, the Court should deny the Stay Motion.

### In the Event the Court Decides to Grant the Stay
### Motion, the Court Should Require Swedbank to Post a Bond

37.     In the event that the Court is inclined to grant the Stay Motion, the Court

should compel Swedbank to post a bond consistent with Rule 8005-1 of the Local Rules for the

United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy

Rules").  Rule 8005-1(a) states, "A supersedeas bond, where the judgment is for a sum of money

only, shall be in the amount of the judgment plus 11% to cover interest and such damages for

delay as may be awarded, plus $250 to cover costs." The purpose of the bond is to "cover the

enormous risk of loss" that the stay may cause "to the Debtors, their estates, creditors, and

interest holders." *In re Calpine*, 2008 WL 207841, at *7. While posting a bond, like granting a

motion for a stay, is discretionary under Bankruptcy Rule 8005, the party seeking to avoid

posting the bond "has the burden of providing specific reasons why the court should depart from

the standard requirement of granting a stay only after the posting of a supersedeas bond in [at

least] the full amount of the judgment." *Id.*; *see also In re DJK Residential*, 2008 WL 650389, at

*5 (holding that the movant "has not demonstrated why this Court 'should deviate from the

ordinary full security requirement'").

38.     Here, Swedbank has not articulated any valid reason why it should be

exempted from the basic requirement that a bond be posted as a condition of obtaining a stay.

Swedbank's sole argument is that it is "well capitalized and solvent," and thus, capable of paying

the judgment in the event that the Debtors are successful on appeal. Stay Motion at 21; Stenberg

Decl. ¶¶ 29-30. Swedbank's solvency, however, is not a sufficient ground for being excused

from the bond requirement. *See Maharan v. Berkshire Life Ins. Co.*, 948 F. Supp. 261, 262

(W.D.N.Y. 1996) (finding that "at least one case stands for the proposition that the

unquestionable solvency of the judgment debtor does not excuse that party from the bond

requirement") (citing *Liberty Mutual Ins. Co.*, 769 F. Supp. at 130). Accordingly, if the Court

grants the Stay Motion, the Court should require Swedbank to post a bond.

39.     The Proposed Order directs Swedbank to pay LBHI SEK 82,765,466.45

deposited through November 30, 2009, plus any additional post-petition deposits or transfers into

the Swedbank Account and all accrued interest. As of April 30, 2010, this amount converted to

approximately $11.4 million.  The Proposed Order also directs Swedbank to release the

administrative freeze for all amounts deposited and/or credited to the Swedbank Account after

the Commencement Date, including all amounts deposited in the future.  Thus, the amount owed

to LBHI pursuant to the Proposed Order may grow beyond $11.4 million as interest accrues

and/or additional deposits are made to the Swedbank Account.  The Court should therefore

require Swedbank to post a bond of at least $13 million ($11.4 million plus 11% interest plus

$250 plus $300,000 to cover changes in the value of the Swedish Krona).

WHEREFORE for the foregoing reasons, the Debtors request that the Court enter

an Order (i) denying the Stay Motion and (ii) granting such other and further relief that the Court

deems just and proper.


Dated:  April 30, 2010
        New York, New York


/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession