Hearing Date and Time:  May 12, 2010 at 10:00 a.m.
Response Deadline: May 3, 2010 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                    Chapter 11
                                                          Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS, INC.,

                          Debtor.

-----------------------------------------------------------------x

## CLAIMANT MAXIMILIAN CORETH'S RESPONSE AND OPPOSITION TO SO MUCH OF DEBTORS' SIXTH OMNIBUS OBJECTION TO CLAIMS AS SEEKS TO HAVE CLAIM NUMBER 22202 DISALLOWED AND EXPUNGED

1.      Maximilian Coreth ("Mr. Coreth" or "Claimant"), by his attorneys, Eaton &

Van Winkle LLP, submits this response and opposition to the request of Lehman

Brothers Holdings Inc. and certain of its affiliates (the "Debtors")[1] for an order

disallowing and expunging Claim Number 22202 in the amount of $22,620,000,

consisting of "four components," filed on September 21, 2009 using the Debtors'

general "Proof of Claim" form (the "General Component Claim").

2.      The Debtors' request to disallow Mr. Coreth's principal claim is based on

the erroneous contention (made generally with respect to 314 Claimants and with no

separate discussion of  Mr. Coreth) that Claim Number 22202 is somehow "superseded"

and rendered "redundant" by Claim Number  62747 in the amount of $3,000,000, filed

on November 2, 2009 using the Debtor's "Lehman Securities Programs Proof of Claim"

---

[1]      The Debtors' request is included in their Sixth Omnibus Objection to Claims,
filed on April 1, 2010.

from (the "Programs Securities Claim") , <u>which form states expressly that claims filed thereunder must relate exclusively to Lehman Programs Securities</u>.

3.    In fact, as shown below, the proofs of claim themselves, as well as the notices and claim forms supplied by the Debtors in respect of such filings, make plain that the Program Securities Claim filed on November 2, 2009 in the amount of $3 million could not possibly have "superseded" or rendered "redundant" the General Component Claim filed on September 21, 2009 in the amount of $22,620,000 -- and particularly, the components thereof that consist of:

(a) Mr. Coreth's "contingent claim for <u>unpaid severance</u> in the amount of $19.6 million";

(b) Mr. Coreth's "claim for <u>unreimbursed business expenses</u> in the amount of approximately <u>$20,000</u>"; and

(c) Mr. Coreth's "claim for the value of <u>securities held for Claimant</u> in an <u>unknown amount</u>" in "Account No. E1028393" and/or in such other accounts as "Lehman Brothers may have established" for Mr. Coreth.

3.    Most importantly, there is <u>no duplication whatsoever</u> between Mr. Coreth's contingent claim against the Debtors for unpaid severance in the amount of $19.6 million (the "Contingent Severance Claim") (included in Claim No. 22202)  and his Programs Securities Claim for $3 million (comprising Claim No. 62747).  (On a separate note, focusing on appropriate ways to reduce claims against the Estate, the Debtors should note that the Contingent Severance Claim would be eliminated in its entirety upon Mr. Coreth's obtaining a judgment in that amount against Barclays Capital, Inc. in

2

adversary proceeding entitled <u>Maximilian Coreth v. Barclays Capital Inc., Adversary</u> <u>Proceeding No. 09-01045</u> currently pending in these proceedings and in the Lehman Brothers, Inc. SIPC case [Index No. 08-01420].   Like the adversary proceeding of LBHI against Barclays that is currently being tried before this Court, Mr. Coreth's adversary proceeding concerns Barclays' assumption of obligations of Lehman Brothers and LBHI, and holds out the prospect of increasing the recoveries of all LBHI creditors if the obligation in question  [here a contractual obligation to pay severance] is found to be owed by Barclays and not by the Debtors).

### <u>The Facts Concerning Mr. Coreth's General Component Claim (No. 22202)</u>

5.      By their Notice of Deadlines for Filing Proofs of Claim, so-ordered by this Court on July 8, 2009, a copy of which is annexed hereto as Exhibit A, the Debtors established September 22, 2009 as the bar date for the filing of general Proofs of Claim and  November 2, 2009 as the separate bar date for filing Lehman Program Securities claims, <u>explaining that the later bar date pertained "solely"</u> to claims based on "Lehman Program Securities" (for which a "separate notice of proof of claim form [would] be provided"), and that all other claims must be filed by September 22, 2009.  (Exhibit A, pg. 3) By the terms of that Notice and Order, the first referenced bar date (as well as the Debtor's general Proof of Claim) pertained to "all claims against the Debtors (other than those…specifically excluded)" (Exhibit A, pg. 1), while the second referenced bar date (as well as the separate "Lehman Securities Programs Proof of Claim") pertained only to a distinct subset of claims, namely those based on "Lehman Programs Securities."

6.      In accordance with the Bar Date Notice and Order, Mr. Coreth duly filed a

Proof of Claim on September 21, 2009, utilizing the Debtors' general Proof of Claim

form for such purpose. A copy of that September 21, 2009 Proof of Claim, together with

the Schedule and Exhibits thereto, is annexed hereto as Exhibit B.

7.      The detailed schedule annexed to Mr. Coreth's September 22, 2009 Proof

of Claim clearly explains that "[t]he claim consists of four components, as follows: (a) a

contingent claim for <u>unpaid severance</u> in the amount of $19.6 million; (b) a claim for the

value of <u>securities held for Claimant</u> in an <u>unknown amount</u>; (c) a claim for

<u>unreimbursed business expenses</u> in the amount of approximately <u>$20,000</u>; and (d) a

<u>make whole stock award</u>, in the amount of approximately <u>$3 million</u>." (Exhibit B,

Schedule, pg. 2; emphasis in original)

8.      The September 21, 2009 Proof of Claim clearly explains the distinction

between the $19.6 million "unpaid severance" claim and the separate $3 million "make

whole stock award claim." Specifically, that Proof of Claim explains that the "claim for

unpaid severance" was based on a contractual obligation to pay Mr. Coreth $19.6

million upon the termination of his employment without cause; that the severance

obligation was assigned by Lehman to Barclays; that Mr. Coreth had a pending

adversary proceeding in the Bankruptcy Court to recover such monies from Barclays

(which is still pending); and that the severance claim is "contingent," with the Debtors

being liable therefor "only if and to the extent that Barclays does not pay" such monies

to Mr. Coreth. (Exhibit B, Schedule, ¶7) By contrast, the $3 million "make whole stock

award" is based on the breach of a separate obligation to provide Mr. Coreth with

4

"Special Restricted Stock Units" equivalent to the value of awards that he forfeited from his previous employer, Morgan Stanley, upon accepting a position with Lehman Brothers. (Exhibit B, Schedule ¶ 10) That obligation was not assigned to Barclays and the claim resulting from its breach is not contingent.

9.    Likewise separate from both of these claims are Mr. Coreth's "claim for the value of securities held for Claimant in an unknown amount," which pertains to such securities as Lehman may have been holding for Mr. Coreth in a specified account (Account No. E1028393) and/or in such other accounts as "Lehman Brothers may have established" for Mr. Coreth (Exhibit B, Schedule ¶¶ 6 and 8), and Mr. Coreth's claim for $20,000 in unreimbursed business expenses (Exhibit B, Schedule ¶9).

### The Facts Concerning Mr. Coreth's Programs Securities Claim

10.    After publishing the first Notice and Order respecting bar dates, dated July 8, 2009 (Exhibit A hereto), the Debtors published a separate Notice of Deadlines for Filing Proofs of Claim based on Lehman Programs Securities, so-ordered by the Court on July 27, 2009, a copy of which is annexed hereto as Exhibit C. That notice expressly contemplates claimants filing two separate proofs of claim (one on the general Proof of Claim form and another on the Lehman Securities Programs Proof of Claim form), stating "CLAIMS AGAINST LBHI OR ANY OF THE OTHER DEBTORS THAT ARE NOT BASED ON LEHMAN PROGRAMS SECURITIES ....MAY NOT BE COMBINED WITH ANY CLAIMS BASED ON LEHMAN PROGRAMS SCURITIES AND FILED ON THE SECURITIES PROGRAMS PROOF OF CLAIM FORM." (Exhibit C, pg. 3)

11.    Through counsel, Mr. Coreth made inquiries by telephone to the Debtors'

claims agent, EPIQ Systems, whether the Special Restricted Stock Units called for in

Mr. Coreth's employment agreement (pertaining to the $3 million component of his

September 22, 2009 Proof of Claim) had been issued and were among the securities

listed by the Debtors as "Lehman Programs Securities."  Receiving no definitive answer

to that question, Mr. Coreth filed a separate Lehman Securities Programs Proof of

Claim in respect of only that component of his claim in the amount of $3 million, on

November 2, 2009 (Claim No. 62747), a copy of which is annexed hereto as Exhibit D.

### Claim No. 22202 was Not Superseded or Rendered Redundant by Claim No. 62747, and Should Not Be Expunged

12.    As aforesaid, the Debtors' Sixth Omnibus Objection references claims of

314 creditors, and contains no specific discussion of Mr. Coreth's claims.  The

gravamen of the objection is that proofs of claim filed by each listed creditor "supersede"

and render "redundant" earlier filed proofs of claim, and that expunging the earlier filed

proofs of claim is required to prevent "multiple recoveries."   (Objection ¶¶ 2, 9 and 11-

13)  These contentions have no application to Claim No. 22202, filed by Mr. Coreth, and

no showing whatsoever is made by the Debtors to support them with respect to Claim

No. 22202.

13.    As already noted, Mr. Coreth's contingent $19.6 million "unpaid

severance" claim is wholly separate and distinct from his $3 million "make whole stock

award claim."  The same is equally true of Mr. Coreth's separate claims for

unreimbursed business expenses in the amount of $20,000 and any securities in

accounts established by Lehman in his name, including the one such account that he

6

knows of. None of those claims are referred to or included in Mr. Coreth's $3 million

Lehman Programs Securities Claim (No. 62747). <u>And there is thus no possible danger</u>

<u>of any double recovery with respect to any of them.</u>

14.    Precisely in accordance with the Debtors' instructions (Exhibit C, pg. 3),

Mr. Coreth refrained from "combin[ing]" any of his "claims... that [he believed were] not

based on Lehman Programs Securities" with the filing of his Lehman Programs

Securities Claim (Claim No. 62747) and, instead, filed them separately as identified

"components" of his general claim (Claim No. 22202). It is thus not possible for Claim

No. 22202 to have been superseded by or rendered redundant by Claim No. 62747.

Indeed, even if Mr. Coreth had deviated from the Debtors' instructions by including

components having nothing to do with Programs Securities in his later filed proof of

claim (No. 62747), the first proof of claim (No. 22202) still would be proper, and only the

later one would be subject to any criticism.

15.    For all of the foregoing reasons, Mr. Coreth requests an order denying the

Debtor's request to expunge or disallow Claim No. 22202 (consisting of four distinct

components aggregating $22,620,000). Any possible overlap concerns only Mr.

Coreth's $3 million component claim for the breach of an obligation to provide him with

a "make whole stock award." The final determination of whether that component is

properly characterized as a Programs Securities Claim (under Claim No. 62747) or a

general claim (under Claim No. 22202) depends upon information that is known only to

the Debtors. And any issue with respect to that that $3 million component portion of

7

Claim No. 22202 pertains solely to how it should be characterized and not to whether it should be allowed.

Dated: May 3, 2010

EATON & VAN WINKLE LLP
3 Park Avenue
16th Floor
New York, New York 10016
Telephone: 212-779-9910
Facsimile: 212-779-9928

By: _____
     Robert K. Gross (RG5635)
     George Birnbaum (GB-5375)

*Attorneys for Maximilian Coreth*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 3, 2010, I caused the within **CLAIMANT MAXIMILIAN CORETH'S RESPONSE AND OPPOSITION TO SO MUCH OF DEBTOR'S SIXTH OMNIBUS OBJECTION TO CLAIMS AS SEEKS TO HAVE CLAIM NUMBER 22202 DISALLOWED AND EXPUNGED** to be served upon the following persons by the methods indicated next to each such person:

1. Chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601(By Hand and By Mail);

2. Weil Gotschal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Shai Waisman, Esq.) (By Hand, By Facsimile [(212) 310-8007] and By Mail);

3. Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.) (By Hand, By Facsimile [(212) 668-2255] and By Mail); and

4. Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnel, Esq., and Evan Fleck, Esq.) (By Hand, By Facsimile [(212) 530-5219] and By Mail).


Steven J. Lapriore

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                    :
In re                                               :        Chapter 11 Case No.
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :        08-13555 (JMP)
                                                    :
                              Debtors.              :        (Jointly Administered)
                                                    :
                                                    :
-------------------------------------------------------------x

### NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM

TO ALL PERSONS AND ENTITIES WITH
CLAIMS AGAINST THE DEBTOR LISTED BELOW:

PLEASE TAKE NOTICE THAT, on July 2, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Court"), having jurisdiction over the chapter 11 cases of Lehman Brothers Holdings Inc. and certain of its affiliates, as debtors and debtors in possession in the above referenced chapter 11 cases (collectively, the "Debtors"), entered an order (the "Bar Date Order") establishing **September 22, 2009, at 5:00 p.m. (prevailing Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("Proof of Claim") based on prepetition claims against the Debtors (the "Bar Date"). The Bar Date Order, the Bar Date and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to the applicable Commencement Date (the "Commencement Date"), the date on which the Debtors commenced their case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), as set forth in Schedule A hereto.

**If you have any questions with respect to this Notice, please feel free to contact the Debtors' court-approved claims agent Epiq Bankruptcy Solutions, LLC ("Epiq") at (866) 879-0688.**

**A CLAIMANT SHOULD CONSULT AN ATTORNEY IF THE CLAIMANT HAS ANY QUESTIONS, INCLUDING WHETHER SUCH CLAIMANT SHOULD FILE A PROOF OF CLAIM. PLEASE NOTE THAT EPIQ IS NOT PERMITTED TO GIVE LEGAL ADVICE.**

**Some parties are required to file a Proof of Claim in order to preserve their claim against the Debtors. Other parties are not required to file a Proof of Claim in order to preserve their claim against the Debtors. The following is a summary explanation of each.**

1.    **WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to share in the Debtors' estates if you have a claim that arose prior to the applicable Commencement Date, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before the applicable Commencement Date, may give rise to claims against the Debtors that must be filed by the Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated prior to the applicable Commencement Date. Pursuant to section 101(5) of the Bankruptcy Code and as used herein, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.    **WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(1)    Your claim is listed on the Schedules and (i) is **not** described as "disputed," "contingent," or "unliquidated," and (ii) you do **not** dispute the amount, priority or nature of the claim set forth in the Schedules;

(2)    Your claim has been paid in full by the Debtors;

(3)    You hold an interest in the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided**, **however**, that interest holders who wish to assert claims (as opposed to ownership interests) against the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the Bar Date, unless another exception identified herein applies;

(4)    You hold a claim that has been allowed by an order of this Court entered on or before the Bar Date;

(5)    You hold a claim for which a separate deadline is fixed by this Court;

(6)    You hold a claim for which you have already properly filed a Proof of Claim with the Clerk of the Court or Debtors' court-approved claims agent, Epiq, against the Debtors utilizing a claim form which substantially conforms to the Proof of Claim Form; **provided**, **however**, any holder that has filed a Proof of Claim based on a Derivative Contract (as defined below) or a Guarantee (as defined below) on or prior to the Bar Date, is required to amend such Proof of Claim to conform to the procedures set forth in this Motion for the filing of Proofs of Claims based on Derivative Contracts and Guarantees;

(7)    You hold a claim solely against (i) Lehman Brothers Inc. or (ii) any other entity affiliated with the Debtors that is involved in a bankruptcy or insolvency proceeding or similar proceeding, in foreign jurisdiction; **provided**, **however**, if such claim is based on an obligation guaranteed by a Debtor, the holder of such claim must file a Proof of Claim on or before the Bar Date;

(8)    You hold a security listed on the Master List of Securities available on the Debtors' website http://www.lehman-docket.com (the "Master List of Securities") due to the fact that the indenture trustee for such securities will file a global proof of claim on behalf of all holders of securities issued thereunder; (Wilmington Trust Company, US Bank National Association, and the indenture trustee for each of the other securities included on the Master List of Securities, each will file a global proof(s) of claim on behalf of all holders of securities for which it is identified as Indenture Trustee on the Master List of Securities); **provided**, **however**, that security holders who wish to assert claims against the Debtors arising out of or relating to the sale, issuance, or distribution of a security, must file Proofs of Claim on or before the Bar Date, unless another exception identified herein applies; and

(9)    You are an entity included on the Exempt Entities List available on the Debtors' website http://www.lehman-docket.com (the "Exempt Entities List") or any subsidiary for which the entity on the Exempt Entities List owns at least a fifty percent equity interest in such subsidiary, **specifically** excluding any subsidiary that is in a bankruptcy, insolvency or similar proceeding in a foreign jurisdiction or Lehman Brothers Inc.

If your claim falls within any of the above categories, your rights as the holder of such claim will be preserved without you filing of a Proof of Claim. Any other person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, trust or governmental entity) that has a claim against a Debtor must file a Proof of Claim, as described herein, before the Bar Date.

2

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**THE FACT THAT YOU HAVE RECEIVED THIS NOTICE DOES NOT MEAN THAT YOU HAVE A CLAIM OR THAT THE DEBTORS OR THE COURT BELIEVE THAT YOU HAVE A CLAIM. MANY PARTIES ARE REQUIRED TO BE SERVED WITH THIS NOTICE AND IT IS REQUIRED TO REACH A BROAD AUDIENCE OF POTENTIAL CLAIMANTS.**

**SPECIAL NOTE TO HOLDERS OF LEHMAN SECURITIES**

Holders of securities are **NOT** required to file a proof of claim on account of their ownership if, and only if, such security is listed on the Debtors' Master List of Securities because such security was issued under an indenture pursuant to which an indenture trustee will file a global proof of claim on behalf of all holders of securities issued thereunder; (Wilmington Trust Company, US Bank National Association, and the indenture trustee for each of the other securities included on the Master List of Securities, each will each file a global proof(s) of claim on behalf of all holders of securities for which it is identified as Indenture Trustee on the Master List of Securities). The Master List of Securities is available for review at http://www.lehman-docket.com. The list is fully searchable by code (CUSIP or ISIN) or by security description.

If you do not see your security listed on the Master List of Securities and you have a question about the Master List of Securities, please download the form entitled "Inquiry Regarding Security Not on Master List of Securities," and complete and return it as directed on the form prior to August 5, 2009.

Inquiries will be investigated, and within 15 days of the Debtors receipt of such inquiry, either the security will either be added to the Master List of Securities (if appropriate), or, if you have provided contact information, you will be notified that the security is not being added to the Master List of Securities and given further information.

The Master List of Securities shall be finalized on August 20, 2009 and not subject to further change.

A Proof of Claim form is being included with the Bar Date Notices being served on holders of LBHI securities other than to holders of securities that are on the Master List of Securities.

**IF YOU BELIEVE YOU HAVE A CLAIM AGAINST THE DEBTORS OTHER THAN ON ACCOUNT OF YOUR LEHMAN SECURITIES OWNERSHIP, YOU MUST FILE A PROOF OF CLAIM FORM, AS DIRECTED IN THIS BAR DATE NOTICE. A COPY OF THE PROOF OF CLAIM FORM IS AVAILABLE AT HTTP://WWW.LEHMAN-DOCKET.COM.**

**SPECIAL NOTE REGARDING LEHMAN PROGRAM SECURITIES:**

A separate notice and proof of claim form will be provided in connection with certain securities issued by the Debtors or any of the Debtors' affiliates outside of the United States, solely to the extent a security is identified on http://www.lehman-docket.com under the heading "Lehman Program Securities" as of July 17, 2009 at 5:00 pm (prevailing Eastern Time). Such notice and proof of claim form will be available on or about July 27, 2009. The Bar Date in connection with the Lehman Program Securities is November 2, 2009 at 5:00 pm (prevailing Eastern Time). If your security is not identified on http://www.lehman-docket.com under the heading "Lehman Program Securities" as of July 17, 2009 at 5:00 pm (prevailing Eastern Time) you must file your claim by September 22, 2009 as per the instructions herein.

3.    **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Any person or entity that holds a claim arising from the rejection of an executory contract or unexpired lease must file a Proof of Claim based on such rejection by the later of (i) the Bar Date, and (ii) the date which is forty-five (45) days following the effective date of such rejection or be forever barred from doing so.

4.    **WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the Bar Date at the following address:

If by overnight mail, to:

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, New York 10017

If by hand delivery, to:

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, New York 10017

     or

Clerk of the United States Bankruptcy Court
Attn: Lehman Brothers Holdings Claims Processing
One Bowling Green
New York, New York 10004

If by first-class mail, to:

Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, New York  10150-5076

Proofs of Claim will be deemed timely filed only if **actually received** by Epiq or the Court on or before the Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

In the event the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated or undetermined, (b) change the amount of a claim reflected therein, or (c) add a claim that was not listed on the Schedules or remove a claim that was listed on the Schedules, then, and in such event, the Debtors will notify the affected claimant be notified of such amendment and be granted thirty (30) days from the date of such notification within which to file a claim or be forever barred from doing so.

5.    **WHAT TO FILE**

    . If you file a Proof of Claim, your filed Proof of Claim must: (i) be written the English language; (ii) be denominated in the lawful currency of the United States; (iii) conform substantially with the form attached to this notice (the "Proof of Claim Form"); (iv) state the name and case number of the specific Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why documentation is not available; and (vii) be signed by the claimant or by an authorized agent of the claimant.

If you are asserting a claim against more than one Debtor or have claims against different Debtors, a separate Proof of Claim must be filed with respect to each such Debtor.

**EXCEPT AS SET FORTH IN THE FOLLOWING EIGHT PARAGRAPHS, YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, ATTACH A SUMMARY.**

**CLAIMS BASED ON DERIVATIVE CONTRACTS**

**IF YOU FILE A PROOF OF CLAIM BASED ON AMOUNTS OWED PURSUANT TO A DERIVATIVE CONTRACT, YOU MUST: (A) ON OR BEFORE THE BAR DATE, FILL-OUT AND RETURN A PROOF OF CLAIM FORM IN THE SAME MANNER AS ALL OTHER CLAIMANTS INCLUDING CHECKING THE APPROPRIATE BOX ON THE PROOF OF CLAIM AND (B) ON OR BEFORE THE QUESTIONNAIRE DEADLINE, LOG ON TO http://www.lehman-claims.com, ENTER THE UNIQUE IDENTIFICATION NUMBER INCLUDED ON THE PROOF OF CLAIM FORM MAILED TO SUCH HOLDER BY THE DEBTORS AND COMPLETE THE ELECTRONIC DERIVATIVE QUESTIONNAIRE SUBSTANTIALLY IN THE FORM ATTACHED AS EXHIBIT C TO THE BAR DATE ORDER (THE "DERIVATIVE QUESTIONNAIRE") AND ELECTRONICALLY UPLOAD SUPPORTING DOCUMENTATION ON THE WEBSITE (AS REQUIRED IN THE DERIVATIVE QUESTIONNAIRE), RATHER THAN ATTACHING SUCH DOCUMENTS TO THE PROOF OF CLAIM FORM.**

A "DERIVATIVE CONTRACT" IS A CONTRACT THAT IS ANY OF (I) A "SWAP AGREEMENT" AS SUCH TERM IS DEFINED IN SECTION 101(53B) OF THE BANKRUPTCY CODE OR (II) A "FORWARD CONTRACT" AS SUCH TERM IS DEFINED IN SECTION 101(25) OF THE BANKRUPTCY CODE. A CASH-MARKET PURCHASE OR SALE OF A SECURITY OR LOAN (I.E. ANY PURCHASE OR SALE OF A SECURITY OR LOAN FOR SETTLEMENT WITHIN THE STANDARD SETTLEMENT CYCLE FOR THE RELEVANT MARKET), EXCHANGE-TRADED FUTURE OR OPTION, SECURITIES LOAN TRANSACTION, REPURCHASE AGREEMENT IN RESPECT OF SECURITIES OR LOANS, AND ANY GUARANTEE OR REIMBURSEMENT OBLIGATIONS WHICH WOULD OTHERWISE BE INCLUDED IN THE DEFINITION OF "SWAP AGREEMENT" OR "FORWARD CONTRACT" PURSUANT TO THE DEFINITION OF SUCH TERMS IN THE BANKRUPTCY CODE SHALL NOT BE CONSIDERED A DERIVATIVE CONTRACT FOR THE PURPOSES OF THIS DEFINITION NOR SHALL ANY NOTES, BONDS, OR OTHER SECURITIES ISSUED BY THE DEBTORS OR THEIR AFFILIATES (INCLUDING, BUT NOT LIMITED TO, LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS TREASURY CO. B.V., LEHMAN BROTHERS BANKHAUS AG, LEHMAN BROTHERS HOLDINGS PLC, LEHMAN BROTHERS SECURITIES N.V., AND LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A.).

THE "QUESTIONNAIRE DEADLINE" IS OCTOBER 22, 2009, AT 5:00 PM (PREVAILING EASTERN TIME).

CLAIMS BASED ON A DEBTOR'S GUARANTEE

IF YOU FILE A PROOF OF CLAIM BASED ON A GUARANTEE, YOU MUST: (A) ON OR BEFORE THE BAR DATE, FILL-OUT AND RETURN A PROOF OF CLAIM FORM IN THE SAME MANNER AS ALL OTHER CLAIMANTS INCLUDING CHECKING THE APPROPRIATE BOX ON THE PROOF OF CLAIM AND (B) ON OR BEFORE THE QUESTIONNAIRE DEADLINE, LOG ON TO http://www.lehman-claims.com, ENTER THE UNIQUE IDENTIFICATION NUMBER INCLUDED ON THE PROOF OF CLAIM FORM MAILED TO SUCH HOLDER BY THE DEBTORS AND COMPLETE THE ELECTRONIC GUARANTEE QUESTIONNAIRE SUBSTANTIALLY IN THE FORM ATTACHED AS EXHIBIT D TO THE BAR DATE ORDER (THE "GUARANTEE QUESTIONNAIRE") AND ELECTRONICALLY UPLOAD SUPPORTING DOCUMENTATION AND EVIDENCE OF THE UNDERLYING CLAIM AMOUNT ON THE WEBSITE (AS REQUIRED IN THE GUARANTEE QUESTIONNAIRE), RATHER THAN ATTACHING SUCH DOCUMENTS TO THE PROOF OF CLAIM FORM.

A "GUARANTEE" IS A PROMISE, REPRESENTATION OR AGREEMENT TO ANSWER FOR THE PAYMENT OF SOME DEBT OR THE PERFORMANCE OF SOME DUTY IN CASE OF THE FAILURE OF ANOTHER PERSON OR ENTITY WHO IS LIABLE IN THE FIRST INSTANCE.

THE "QUESTIONNAIRE DEADLINE" IS OCTOBER 22, 2009, AT 5:00 PM (PREVAILING EASTERN TIME).

CLAIMS BASED ON A DEBTOR'S GUARANTEE OF A DERIVATIVE CONTRACT WITH A NON-DEBTOR

IF YOU FILE A PROOF OF CLAIM BASED ON A DEBTOR'S GUARANTEE OF A DERIVATIVE CONTRACT ENTERED INTO WITH A NON-DEBTOR, YOU MUST: (A) ON OR BEFORE THE BAR DATE, FILL-OUT AND RETURN A PROOF OF CLAIM FORM IN THE SAME MANNER AS ALL OTHER CLAIMANTS INCLUDING CHECKING BOTH BOXES ON THE PROOF OF CLAIM THAT SUCH CLAIM IS BASED ON BOTH A DERIVATIVE CONTRACT AND BASED ON A GUARANTEE AND (B) ON OR BEFORE THE QUESTIONNAIRE DEADLINE, LOG ON TO http://www.lehman-claims.com, ENTER THE UNIQUE IDENTIFICATION NUMBER INCLUDED ON THE PROOF OF CLAIM FORM MAILED TO SUCH HOLDER BY THE DEBTORS AND COMPLETE THE ELECTRONIC GUARANTEE QUESTIONNAIRE AND ELECTRONICALLY UPLOAD SUPPORTING DOCUMENTATION ON THE WEBSITE (AS REQUIRED IN THE GUARANTEE QUESTIONNAIRE), RATHER THAN ATTACHING SUCH DOCUMENTS TO THE PROOF OF CLAIM FORM AND LOG ON TO http://www.lehman-claims.com, ENTER THE UNIQUE IDENTIFICATION NUMBER INCLUDED ON THE PROOF OF CLAIM FORM MAILED TO SUCH HOLDER BY THE DEBTORS AND COMPLETE THE ELECTRONIC DERIVATIVE QUESTIONNAIRE AND ELECTRONICALLY UPLOAD SUPPORTING DOCUMENTATION ON THE WEBSITE (AS REQUIRED IN THE DERIVATIVE QUESTIONNAIRE), RATHER THAN ATTACHING SUCH DOCUMENTS TO THE PROOF OF CLAIM FORM.

THE "QUESTIONNAIRE DEADLINE" IS OCTOBER 22, 2009, AT 5:00 PM (PREVAILING EASTERN TIME).

If a holder is required to complete the Derivative Questionnaire or Guarantee Questionnaire, such holder need only submit the documentation required by the applicable Questionnaire by the Questionnaire Deadline and need not submit the documentation required by the applicable Questionnaire with such holder's Proof of Claim by the Bar Date.

If any holder files a Proof of Claim based on a Derivative Contract or a Guarantee which for any reason does not have a Unique ID Number, such holder shall still be required to comply with the procedures set forth in the prior two paragraphs, except that

5

instead of entering a Unique ID Number on the website, such holder shall instead indicate on the website that they filed a Proof of Claim that did not have a Unique ID Number.

A holder (or any other party authorized under the Bankruptcy Code and the Bankruptcy Rules to submit a Proof of Claim on behalf of such holder) of a security that is guaranteed by a Debtor shall be required to file a Proof of Claim against such Debtor based on the Guarantee and complete the Guarantee Questionnaire.

Any security that is listed on the Master List of Securities is not a Derivative Contract and the holders of such security are not required to complete the Derivative Questionnaire on account of such security.

The information submitted on the website http://www.lehman-claims.com in respect of Derivative Contracts and Guarantees will not be accessible on the website other than by the party that submitted such information and the Debtors and the Creditors' Committee and their respective advisors and counsel.

The website http://www.lehman-claims.com and the information submitted thereon will remain accessible by the party that submitted such information following the Bar Date and the information submitted on the website will be subject to the same rules and standards as amendments and supplements to proofs of claim.

6.    **CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE BAR DATE OR COMPLETE THE DERIVATIVE QUESTIONNAIRE PRIOR TO THE QUESTIONNAIRE DEADLINE**

**Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim in accordance with the Bar Date Order on or before the Bar Date, specifically, including filling out the Derivative Questionnaire (if applicable) or the Guarantee Questionnaire (if applicable) and uploading required information to the website http://www.lehman-claims.com (which Derivative Questionnaire or Guarantee Questionnaire shall not be required to be completed until the Questionnaire Deadline), specifying the applicable Debtor and other requirements set forth in the Bar Date Order, for any claim such creditor holds or wishes to assert against the Debtors, will be forever barred, estopped, and enjoined from asserting such claim (and from filing a Proof of Claim with respect to such claim) against the Debtors and their estates, and their property will be forever discharged from any and all indebtedness or liability with respect to such claim, and the holder of such claim shall not be permitted to vote on any chapter 11 plan or participate in any distribution in the Debtors' chapter 11 cases on account of such claim or to receive further notices regarding such claim or with respect to the Debtors' chapter 11 cases.**

7.    **THE DEBTORS' SCHEDULES AND ACCESS THERETO**

You may be listed as the holder of a claim against the Debtors in the Schedules. Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at http://www.lehman-docket.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov.). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (prevailing Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004.

DATED:    July 8, 2009                                    BY ORDER OF THE COURT
          New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Lori R. Fife
Shai Y. Waisman

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

6

## Schedule A

| Debtor | Case Number | Commencement Date |
|---|---|---|
| Lehman Brothers Holdings Inc. | 08-13555 | September 15, 2008 |
| LB 745 LLC | 08-13600 | September 16, 2008 |
| PAMI Statler Arms LLC | 08-13664 | September 23, 2008 |
| Lehman Brothers Commodity Services Inc. | 08-13885 | October 3, 2008 |
| Lehman Brothers Special Financing Inc. | 08-13888 | October 3, 2008 |
| Lehman Brothers OTC Derivatives Inc. | 08-13893 | October 3, 2008 |
| Lehman Brothers Derivatives Products Inc. | 08-13899 | October 5, 2008 |
| Lehman Commercial Paper Inc | 08-13900 | October 5, 2008 |
| Lehman Brothers Commercial Corporation | 08-13901 | October 5, 2008 |
| Lehman Brothers Financial Products Inc. | 08-13902 | October 5, 2008 |
| Lehman Scottish Finance L.P. | 08-13904 | October 5, 2008; |
| CES Aviation LLC | 08-13905 | October 5, 2008 |
| CES Aviation V LLC | 08-13906 | October 5, 2008 |
| CES Aviation IX LLC | 08-13907 | October 5, 2008 |
| East Dover Limited | 08-13908 | October 5, 2008 |
| Luxembourg Residential Properties Loan Finance S.a.r.l. | 09-10108 | January 7, 2009 |
| BNC Mortgage LLC | 09-10137 | January 9, 2009 |
| Structured Asset Securities Corporation | 09-10558 | February 9, 2009 |
| LB Rose Ranch LLC | 09-10560 | February 9, 2009 |
| LB 2080 Kalakaua Owners LLC | 09-12516 | April 23, 2009 |

7

**EXHIBIT B**

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

## PROOF OF CLAIM

In Re:
Lehman Brothers Holdings Inc., et al.
("LBHI")                    Debtors.

Chapter 11
Case No. 08-13555 (JMP)
(Jointly Administered)

Name of Debtor Against Which Claim is Held
LBHI

Case No. of Debtor
08-13555  (JMP)

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Maximilian Coreth

(See Schedule, paragraphs 2 and 3)

Telephone number:              Email Address:

Name and address where payment should be sent (if different from above)

(See Schedule, paragraph 4)

Telephone number:              Email Address:

### THIS SPACE IS FOR COURT USE ONLY

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim
Number: _____
(If known)

Filed on: _____

☒ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 22,620,000 plus unknown amounts
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete Item 4.
If all or part of your claim is entitled to priority, complete Item 5.   (See Schedule, paragraph 6)
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☒ Check this box if all or part of your claim is based on a Guarantee.* (alternative and contingent)
*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee. (amounts unknown)

2. Basis for Claim: (See Schedule, paragraphs 6-11)
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:  N/A
3a. Debtor may have scheduled account as:  N/A
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☒ Other
Describe:  (See Schedule, paragraph 11)
Value of Property: $ unknown   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____ Basis for perfection: _____
Amount of Secured Claim: $ unknown   Amount Unsecured: $ 22,620,000

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).

Amount entitled to priority:

$ _____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ _____
(See instruction #6 on reverse side.)

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

### FOR COURT USE ONLY

FILED / RECEIVED

SEP 2 1 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

Date:
9/21/09

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Robert K. Gross, Esq.,
Authorized Agent
(See Schedule, paragraph 3)

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

___

## __DEFINITIONS__

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## ___INFORMATION___

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. §101 et seq.), and any applicable orders of the bankruptcy court.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC. | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtor | ) | |
| ——————————————— | ) | |

## SCHEDULE TO PROOF OF CLAIM OF
## MAXIMILIAN CORETH

1.      This Schedule to proof of claim of Maximilian Coreth ("Claimant"), together

with exhibits, shall be deemed a part of, and incorporated by reference in, the attached

proof of claim.

        Name and Address of Claimant
        (and names and addresses where
        notices should be sent)

2.      Claimant's name, address and contact information is as follows:

        Maximilian Coreth
        93 Mercer Street
        New York, New York 10012

3.      Notices should be sent to Claimant at the above address and to the

address of Claimant's Authorized Agent, whose name, address and contact information

are as follows:

        Robert K. Gross, Esq.
        Eaton & Van Winkle LLP
        3 Park Avenue, 16th Floor
        New York, New York 10016

        Telephone:  212-561-3636
        Email Address:  rgross@evw.com

4.      Payment should be sent to Claimant's address in paragraph 2 above.

### Related Proof of Claim

5.      Claimant filed a related proof of claim in the Lehman Brothers, Inc. SIPA
proceeding under claim No. 800002190.

### Amount and Basis of Claim

6.      The claim consists of four components, as follows: .

      (a)      a contingent claim for <u>unpaid severance</u> in the amount of
$19.6 million;

      (b)      a claim for the value of <u>securities held for Claimant</u> in an
<u>unknown amount</u>;

      (c)      a claim for <u>unreimbursed business expenses</u>, in the amount
of approximately <u>$20,000</u>; and

      (d)      a <u>make whole stock award</u>, in the amount of approximately
<u>$3 million.</u>

7.      Claimant's $19.6 million claim for unpaid severance is based upon an
employment agreement dated April 17, 2008 (Exhibit A hereto) pursuant to which
Lehman Brothers would owe Claimant severance in that amount upon the termination of
Claimant's employment before January, 2009. Lehman Brothers assigned that
obligation to Barclays Capital, Inc. ("Barclays") under a sale transaction approved by the
Bankruptcy Court on September 19, 2008 (Exhibit B hereto). Barclays breached that
obligation (<u>see</u> Exhibit C hereto), and Claimant has filed an adversary proceeding in the
LBHI Bankruptcy Case seeking such payment from Barclays (Adversary Proceeding
No. 09-0145). Claimant's claim against Lehman Brothers for this $19.6 million

2

severance obligation is a contingent claim. Lehman Brothers is liable to Claimant in respect of this portion of his claim only if and to the extent that Barclays does not pay the $19.6 million severance obligation that Lehman Brothers assigned to Barclays.

8.      Claimant's claim for the value of securities held by Lehman Brothers is based, inter alia, on (a) the fact that Lehman Brothers maintained at least one securities account for Claimant (Account No. E1028393), (b) the good faith belief that Lehman Brothers may have established or maintained other securities accounts for Claimant, and (c) the good faith belief that Lehman Brothers held securities for Claimant in such account or accounts. The amount of the value of such securities is unknown to Claimant. This portion of Claimant's claim is secured by such securities.

9.      Claimant's claim for unreimbursed business expenses in the amount of approximately $20,000 is based, inter alia, on the fact that Lehman Brothers sent checks to Claimant for such unreimbursed business expenses. However, the checks did not clear.

10.      Claimant's claim for a "make whole stock award" in the amount of approximately $3 million is based, inter alia, on the fact that Claimant's employment agreement (Exhibit A hereto) provided for Lehman Brothers to provide Claimant with Special Restricted Stock Units having a value equivalent to "forfeited awards" from Claimant's previous employer, Morgan Stanley. Claimant relinquished the forfeited awards by reason of his being induced by Lehman Brothers to leave his employment with Morgan Stanley. However, the value of the Restricted Stock Units promised or provided by Lehman Brothers is believed to be $3 million less than the value of the

3

forfeited awards they were intended to cover, such that Lehman Brothers is now liable to Claimant for that amount.

### Security

11.     Claimant's claim for the value of any securities held by Lehman Brothers for Claimant (see paragraph 8) would be secured by any such securities so held in Account No. E1028393 and/or any other securities accounts established or maintained by Lehman Brothers for Claimant. The value of any such securities and the amount of any interest due in respect of such securities is currently unknown to Claimant.

### Reservation of Rights

12.     By filing this claim, Claimant does not waive, or intend to waive, and expressly reserves all claims, rights, causes of action and remedies against any other person including, without limitation, Barclays Capital, Inc.

13.     Further, Claimant expressly reserves all rights, causes of action and remedies he may have against any of the debtors in these chapter 11 cases. The description of the claim and the classifications thereof herein by Claimant is not a concession or admission as to the correct characterization or treatment of any such claims or a waiver of any rights of Claimant. Further, Claimant expressly reserves all rights to amend, clarify, modify and/or supplement the Proof of Claim at any time and for any reason, in any respect, including, without limitation to: (a) correct, increase or amend the amounts referred to herein; (b) add or amend documents and other information, or to describe further, the claims asserted herein; (c) file proofs of claim that may be duplicative in respect of the relevant and applicable documents or any other indebtedness, obligations or liability of any of the Debtors to Claimant; (d) add or include

4

any other Debtor or any other entity, including but not limited to any entity which may

become a debtor or debtor in possession in the Debtor's jointly administered chapter 11

case(s) and add or amend categories of payments or liabilities; (e) assert a further

priority, security interest or similar right with respect to the claims asserted herein; (f) file

an amended proof of claim for the purpose of fixing and liquidating any contingent or

unliquidated claim set forth herein; (g) file additional proofs of claim for additional

claims, including, without limitation, claims for interest, fees and related expenses that

are not ascertainable at this time, or to file a request for payment of administrative

expenses in accordance with 11 U.S.C. §§ 503 and 507, including, without limitation, for

expenses included in this Proof of Claim; or (h) file additional proofs of claim or requests

for payment with respect to any other indebtedness, liability or obligations whatsoever of

the Debtor to Claimant.

14.    Nothing contained in the Proof of Claim nor subsequent appearance,

pleading, claim or suit is intended to be an election of remedies or limitation of rights or

remedies, or admission that any property received by Claimant under the relevant and

applicable documents or held by the Debtor or other entity constitutes property of any

Debtor's estate.

5

**Exhibit** A

# LEHMAN BROTHERS

CHRISTINE THOMSON
VICE PRESIDENT

April 2, 2008 *revised April 17, 2008*

Maximilian Coreth
*By Hand*

Dear Max:

Congratulations on receiving your offer to join Lehman Brothers Inc. (the "Firm") as a Head of North America Gas and Power Trading in the Fixed Income Division, reporting initially to Satu Parikh. Your title of Managing Director will be submitted for official approval by the Board of Directors as part of the next quarterly approval process. We expect your employment to begin as soon as your notice obligations to your current employer permit.

For the performance year 2008 (your start date through November 30, 2008), your compensation will be as follows:

- An annualized base salary of $200,000, payable in bi-weekly installments of $7,692.31.

- A bonus in the amount of $9,800,000, less applicable deductions, payable at the time the Firm pays its annual 2008 bonus distribution (in or about January 2009).

For the performance year 2009 (December 1, 2008 through November 30, 2009), your compensation will be as follows:

- An annualized base salary of $200,000, payable in bi-weekly installments of $7,692.31.

- A bonus in the amount of $9,800,000, less applicable deductions, payable at the time the Firm pays its annual 2009 bonus distribution (in or about January 2010).

The foregoing base salary will be paid for all periods of your active employment with the Firm in performance years 2008 and 2009. The bonus amounts set forth above will be paid at the times and in the amounts stated except that such bonuses will not be payable if you have failed to obtain and/or maintain in good standing all applicable licenses and registrations or if, before the date of scheduled payment, you have resigned or have been terminated from the Firm for Cause. For the purposes of this offer letter, "Cause" means a termination of your employment by the Firm because of any of the following: (i) willful misconduct material to your employment, (ii) material breach of Firm policies or rules that previously have been made available to you by the Firm, (iii) dishonesty materially related to your employment, (iv) violation of laws or regulations material to your employment, or (iv) gross negligence or repeated or persistent failure to follow the Firm's reasonable directives following 30 days' notice of such failure and your failure to cure within such 30 days. The bonus amounts set forth above may be reduced in the event of an

. Max Coreth
April 2, 2008, *Revised April 17, 2008*
Page 2 of 5

approved leave of absence during the applicable performance year. In the event of your death or Disability (as defined in the LBHI Equity Award Program) before the payment in full of the guaranteed minimum bonuses for performance years 2008 and 2009, you or your estate will be paid on the applicable bonus payment dates any unpaid guaranteed minimum bonus for such years.

At the Firm's discretion, a portion of your 2008 and future years' total compensation (combined base salary, bonus, and other compensation) will be payable in conditional equity awards (restricted stock units, options, and/or other equity-based awards) pursuant to the Firm's Equity Award Program or in such other non-cash form as may be provided pursuant to other Firm-sponsored programs that may be established by the Firm from time to time and generally in effect for employees at your level. The terms and conditions of the Equity Award Program, including terms and conditions relating to vesting, exercisability, and forfeiture, or any other Firm sponsored program will be established by the Firm from time to time in its discretion. With respect to your compensation guarantee for performance year 2008 only, the deferral and delivery schedule for the portion of your total compensation payable in conditional equity awards shall be as set forth in the attached Equity Award Schedule. Note that your equity award will be calculated based on your corporate title effective in the 2008 performance year. With respect to your 2009 bonus guarantee, the applicable deferral and delivery schedule will be provided to you no later than December 31, 2008. Except as outlined above with respect to the deferral and delivery schedules, all other terms and conditions of your 2008 and 2009 equity awards (for example, vesting, discount, and termination provisions) will be the same as those generally applicable to employees at your level who receive a 2008 and 2009 equity award. For the avoidance of doubt, in the event your employment is terminated by the Firm without Cause before the payment in full of the guaranteed minimum bonus for performance years 2008 and 2009, you will be paid on the applicable bonus payment dates any unpaid guaranteed minimum bonus for such years, payable part in cash and part in conditional equity awards, and the disposition of the equity portion of such award shall be determined in accordance with the Equity Award Program as then in effect. In addition, based on information that you have provided, you are eligible for a service credit for purposes of "Full Career" treatment under the applicable terms of equity awards you may receive during your employment with the Firm, provided you remain employed with the Firm through the third anniversary of your start date. You will be required to complete a certification upon commencing employment to verify your eligibility for such service credit and the actual amount of service credit will be determined by the Firm following its review of your completed paperwork.

You have advised us that you will forfeit certain Morgan Stanley restricted stock and options as a result of your separation from Morgan Stanley and subsequent employment by our Firm (the "Forfeited Awards"). The Forfeited Awards may be unvested and vested Awards. Provided you fully comply with the documentation obligation set forth below no later than 60 days after your start date, the Firm will grant you Special Cash Awards and Special Restricted Stock Units Awards ("Special RSU Awards"), with an aggregate value equivalent to the value of the Forfeited Awards. The breakdown of the Forfeited Awards between Special Cash Awards and Special RSU Awards shall be in accordance with the following schedule:

Max Coreth
April 2, 2008, *Revised April 17, 2008*
Page 3 of 5

| Forfeited Awards | Lehman Award |
|---|---|
| All outstanding MS Options | Special Cash Award |
| 95,998 MS Restricted Shares which would be deliverable on September 8, 2008 | Special Cash Award |
| All other MS Forfeited Awards | Special RSU Awards |

The valuation of the Forfeited Awards will be at LBHI's reasonable discretion, based on the average closing price of Morgan Stanley common stock for the five trading days immediately preceding your first day of employment. It is your obligation to provide the Firm with documentation reasonably deemed necessary by the Firm to verify and evaluate the Forfeited Awards and to structure the Special RSU and Special Cash awards. Notwithstanding any other provision of this paragraph, the award of Special RSU Awards is subject to final approval by the Compensation Committee of the Board of Directors of Lehman Brothers Holdings Inc. ("LBHI") or its appropriate designee. The Firm has discretion to replace the Special RSUs with additional Special Cash Awards (on substantially similar terms as described above), and will do so in the event the Special RSU Award is not approved by the Board or its designee.

The Special Cash Awards set forth above will be paid on or about September 8, 2008, in accordance with the Firm's customary payroll practices, and will be subject to applicable payroll and income tax withholding and other applicable deductions. In the event your employment with the Firm ends for any reason other than death, Disability (as defined in the LBHI Equity Award Program), or a termination by the Firm without Cause (as defined above) before the Special Cash Award payment date(s), you will not receive any Special Cash Awards, or any portion thereof, otherwise payable thereafter. If your employment is terminated by the Firm without Cause, any Special Cash Awards not paid at the time of separation will be paid on the regularly scheduled payment date, provided that you execute a Firm-standard release agreement, in accordance with then applicable Firm policy, and provided further that, through such payment date, you have not engaged in Detrimental Activity (as defined in the LBHI Equity Award Program). In the event of your death or Disability, any Special Cash Awards not paid as of the date of such death or Disability will continue to be paid to you or your estate no later than the regularly scheduled payment dates. The Special Cash Awards described in this paragraph will not be considered part of your total compensation for purposes of the Firm's Equity Award Program.

LBHI's Special RSU Award will be made as of your first day of employment with the Firm and will be based on the closing price of LBHI common stock on the New York Stock Exchange on that day. LBHI will make reasonable efforts to establish schedules for vesting and/or sales restrictions of your Special RSUs upon continued employment which are consistent with the corresponding schedules of the Forfeited Awards. Our current administrative practice is to set vesting (and/or share delivery) dates for the Special RSUs on the 15th of the month in which the related Forfeited Awards would have converted to freely tradable shares (or, in the case of options, become exercisable). In the event your employment with the Firm ends for any reason other than death, Disability (as defined in the LBHI Equity Award Program), or a termination by the Firm without Cause (as defined above), you will forfeit any Special RSUs that are not vested at the time of separation. If your employment is terminated by the Firm without Cause, any Special RSUs that are not vested at the time of separation will continue to vest and deliver on the regularly scheduled vesting dates, provided that you execute a Firm-standard release agreement,

Max Coreth
April 2, 2008, *Revised April 17, 2008*
Page 4 of 5

in accordance with then applicable Firm policy, and provided further that, through such vesting/delivery dates, you have not engaged in Detrimental Activity (as defined in the LBHI Equity Award Program). In the event of your death or Disability, your Special RSUs will vest in accordance with the terms of the LBHI Equity Award Program. Except as provided under this paragraph with respect to (x) pricing of the special RSUs, (y) schedules for vesting and/or sales restrictions of your Special RSUs upon continued employment and (z) forfeiture of your unvested Special RSUs upon separation from the Firm's employment, the terms of the LBHI Equity Award Program will govern your award of Special RSUs. For purposes of this letter, "LBHI Equity Award Program" refers to the award agreement for employees having your corporate title under LBHI's 2007 Equity Award Program.

All compensation payments described in this letter will be paid in accordance with our customary payroll practices, and will be subject to applicable payroll and income tax withholding and other applicable deductions. Your compensation for all periods after performance year 2009 will be determined at the Firm's discretion.

While the foregoing compensation commitments will be honored on the terms outlined above, this letter is not a contract of continuing employment. Your employment by the Firm is for no fixed term, and either you or the Firm may terminate the employment relationship at any time for any reason, subject to any applicable notice requirement. Currently, the Firm's notice policy requires officers of the Firm to provide 30 days' advance written notice of resignation, and provides for 30 days' advance notice by the Firm to its officers in the event of an involuntary termination under certain circumstances. In making this offer of employment, the Firm has relied on your representations (a) that you are not subject to any duty or obligation that would prevent you from becoming employed with us on your start date or that would in any way prevent you from performing the duties of your position, and (b) that you are not subject to any non-competition, non-solicitation or other restrictive covenant that might affect your employment by the Firm as contemplated by this letter. The Firm acknowledges that you have advised us of your obligation to provide a 90-day notice period to your current employer as well as certain restrictions with respect to proprietary information about Morgan Stanley and its customers and with respect to your solicitation of customers and employees of Morgan Stanley. The Firm has agreed that your compliance with these restrictions shall not prevent you from receiving any of the compensation promised to you herein.

Please understand that the terms and conditions of your employment by our Firm are governed by standard Firm policies. Among other things, this means that this offer of employment is conditional upon the successful completion of a background investigation, including reference, credit, criminal and other checks, as well as on your satisfactorily meeting all pre-employment requirements, including producing documentation to verify your identity and eligibility to work in the United States. This also means that you must have and maintain in good standing all applicable licenses and registrations. Shortly, you will receive a memo indicating how to schedule pre-employment and complete any necessary paperwork. During pre-employment you will receive information regarding the Firm's policies and benefits in which you are eligible to participate. If you have any questions, please contact Christine Thomson at 212-526-2714.

[PLEASE SEE SIGNATURES ON FOLLING PAGE]

Max Coreth
April 2, 2008, *Revised April 17, 2008*
Page 5 of 5

You understand that this letter represents the complete agreement between you and the Firm with respect to your compensation and other matters addressed in this letter, and that this letter replaces any prior written or oral agreements or understandings.

Max, we are enthusiastic and pleased that you are going to be a part of our organization. Please confirm your agreement to the above by signing a copy of this letter in the space provided below, and returning it to Kimmy Gardner in the enclosed envelope. An additional copy of this letter is enclosed for your files. Please contact me at 212-526-2714 if you have any additional questions or concerns.

Sincerely,

Christine Thomson
Vice President
Fixed Income Human Resources

I agree to and accept the terms described in this letter and further affirm that it is my intention to commence my employment on the start date described in this letter. I acknowledge that no representations were made to induce execution of this letter which are not expressly contained in this letter.

Maximilian Coreth

Date 04/18/08

# LEHMAN BROTHERS

## 2008 EQUITY AWARD SCHEDULE FOR MAXIMILIAN CORETH

| Total Compensation Range | AMOUNT OF TOTAL COMPENSATION ("TC") IN EQUITY-BASED AWARDS | | |
| --- | --- | --- | --- |
| | *Employees Through Vice President Level* | *Senior Vice Presidents* | *Managing Directors* |
| $0 - $74,999 | 1.15% of 2008 TC | 2.3% of 2008 TC | 2.3% of 2008 TC |
| $75,000 - $99,999 | 2.3% of 2008 TC | 2.3% of 2008 TC | 2.3% of 2008 TC |
| $100,000 - $199,999 | $2,300 plus 6.9% of 2008 TC over $100,000 | $2,300 plus 6.9% of 2008 TC over $100,000 | $2,300 plus 6.9% of 2008 TC over $100,000 |
| $200,000 - $299,999 | $9,200 plus 11.5% of 2008 TC over $200,000 | $9,200 plus 11.5% of 2008 TC over $200,000 | $9,200 plus 11.5% of 2008 TC over $200,000 |
| $300,000 - $499,999 | $20,700 plus 17.25% of 2008 TC over $300,000 | $34,500 plus 18.687% of 2008 TC over $300,000 | $34,500 plus 18.687% of 2008 TC over $300,000 |
| $500,000 - $749,999 | $55,200 plus 23% of 2008 TC over $500,000 | $71,875 plus 23% of 2008 TC over $500,000 | $71,875 plus 23% of 2008 TC over $500,000 |
| $750,000 - $999,999 | $112,700 plus 28.75% of 2008 TC over $750,000 | $129,375 plus 40.25% of 2008 TC over $750,000 | $129,375 plus 40.25% of 2008 TC over $750,000 |
| $1,000,000 - $1,499,999 | $192,600 plus 36% of 2008 TC over $1.0 million | $240,000 plus 42% of 2008 TC over $1.0 million | $240,000 plus 52.8% of 2008 TC over $1.0 million |
| $1,500,000 - $1,999,999 | $372,600 plus 42% of 2008 TC over $1.5 million | $450,000 plus 54% of 2008 TC over $1.5 million | $504,000 plus 67.2% of 2008 TC over $1.5 million |
| $2,000,000 - $2,499,999 | $582,600 plus 48% of 2008 TC over $2.0 million | $720,000 plus 66% of 2008 TC over $2.0 million | $840,000 plus 72% of 2008 TC over $2.0 million |
| $2,500,000 and up | $822,600 plus 54% of 2008 TC over $2.5 million up to a max of 36% of 2008 TC | 42% of 2008 TC | $1,200,000 plus 75% of 2008 TC over $2.5 million to a max of 50% of 2008 TC |

**Delivery Schedule:** The vested portion of your conditional equity-based awards will convert to shares of Lehman Brothers Holdings Inc. common stock and will be delivered to you on November 30, 2011, subject to the terms and conditions of the 2008 Equity Award Program.

**Other Terms:** Except as provided above with respect to the deferral and delivery schedules, the terms and conditions of the 2008 Equity Award Program, including terms relating to vesting, will be determined by the Firm at year-end, and set forth in an award agreement that will be finalized in the first quarter of fiscal year 2009.

2008 Equity Award

# Exhibit $\beta$

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                          :

In re                         :      Chapter 11 Case No.
                          :

LEHMAN BROTHERS HOLDINGS INC., *et al.*    :      08-13555 (JMP)
                          :

        Debtors.                :      (Jointly Administered)
                          :

------------------------------------------------x

## ORDER UNDER 11 U.S.C. §§ 105(a), 363, AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 6006 AUTHORIZING AND APPROVING (A) THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF LIENS AND OTHER INTERESTS AND (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion, dated September 17, 2008 (the "Motion"),[1] of Lehman Brothers

Holdings, Inc. ("LBHI") and LB 745 LLC ("LB 745"), as debtors and debtors-in-possession

(collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman") for orders

pursuant to 11 U.S.C. §§ 105, 363, 364(c)(1) and 365 and Fed. R. Bankr. P. (the "Bankruptcy

Rules") 2002, 6004, 6006 and 9014 (A) scheduling a final sale hearing (the "Sale Hearing") with

respect to that certain Asset Purchase Agreement, dated September 16, 2008, among the Debtors,

Lehman Brothers Inc. ("LBI" and, collectively with the Debtors, the "Seller") and Barclays

Capital, Inc. (the "Purchaser"), collectively with that First Amendment Clarifying Asset

Purchase Agreement dated September 19, 2008 and that letter agreement clarifying and

supplementing the Asset Purchase Agreement dated September 20, 2008 (as same may be

subsequently modified or amended or clarified, the "Purchase Agreement"); (B) establishing

sales procedures; (C) approving a break-up fee; and (D) authorizing and approving the sale of

---

[1] Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the
Agreement.

certain of the Seller's assets (the "Purchased Assets") free and clear of all liens, claims,

encumbrances and interests and the assumption and assignment of certain prepetition executory

contracts and unexpired leases (the "Contracts") relating to the Purchased Assets to the

Purchaser or the Successful Bidder(s); and upon the Court's consideration of the Motion and the

record of the Sale Hearing held on September 19, 2008 with respect to the Motion, including the

testimony and evidence admitted at the Hearing; and after due deliberation thereon, and

sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.    **Jurisdiction and Venue**.    This Court has jurisdiction to consider this

Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.    The statutory predicates for the relief sought in the

Motion are Bankruptcy Code sections 105(a), 363, and 365, Bankruptcy Rules 2002, 6004, 6006

and 9008 and the applicable Local Rules for the United States Bankruptcy Court for the Southern

District of New York (the "Local Rules").

C.    **Notice**.    As evidenced by the affidavits of service filed with this Court and

based upon the representations of counsel at the Sale Hearing and as approved under the Order

(I) Approving the Break-Up Fee and Expense Reimbursement, (II) Certain Matters Relating to

Competing Bids, If Any, (III) Approving the Form and Manner of Sale Notices and (IV) Setting

the Sale Hearing Date in Connection with the Sale of Certain of the Sellers' Assets (the "Break-

Up Fee and Competing Bids Order"): (i) in light of the exigent circumstances of these cases and

the wasting nature of the Sellers' assets, due, proper, timely, adequate and sufficient notice of the

Motion, the Sale Hearing and the transactions set forth in the Purchase Agreement (the "Sale"),

2

including the assumption and assignment of the Contracts and Cure Amounts with respect

thereto, has been provided in accordance with Bankruptcy Code sections 105(a), 363 and 365,

Bankruptcy Rules 2002, 6004, 6006 and 9008 and the Local Rules; (ii) it appearing that no other

or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate

under the circumstances of the Debtors' chapter 11 cases; (iv) good cause exists to shorten the

applicable notice periods in Bankruptcy Rules 2002, 6004, and 6006 and the applicable notice

periods in the Local Rules, and (iv) no other or further notice of the Motion, the Sale Hearing or

the Sale (including the assumption and assignment of the Contracts), is or shall be required.

        D.    **Irreparable Harm.**    The Debtors' estates will suffer immediate and

irreparable harm if the relief requested in the Motion is not granted on an expedited basis

consistent with the provisions set forth herein and the Purchase Agreement, particularly given the

wasting nature of the Purchased Assets.

        E.    **LBI.** LBI is the subject of a proceeding under the Securities Investors

Protection Act of 1970 ("SIPA") which was filed on September 19, 2008. The Purchase

Agreement provides for the sale of certain of LBI's assets to the Purchaser. The effectiveness of

this Order is conditioned upon the entry of an order in LBI's SIPA proceeding which, to the

extent applicable, has the same material terms as this Order and is otherwise in form and

substance reasonably satisfactory to the Purchaser. As part of that transfer, the Depository Trust

Clearing Corporation ("DTCC") informed the Purchaser and LBI on Wednesday, September 17,

2008, that the Purchaser would be required to assume the liabilities associated with the accounts

maintained by LBI at the DTCC and its subsidiaries -- The Depository Trust Company ("DTC"),

the National Securities Clearing Corporation ("NSCC"), and the Fixed Income Clearing

Corporation ("FICC") – in their entirety and irrespective of whether the assets or liabilities in a

particular account were the subject of the Purchase Agreement or were owned by LBI or an

affiliate of LBI. The Purchaser agreed to do so upon the terms and conditions specified in the

Purchase Agreement, as amended.

   F.  **Opportunity to Object**. A reasonable opportunity to object and to be

heard with respect to the proposed Sale, the Motion and the relief requested therein has been

given, in light of the exigent circumstances in these cases, to all interested persons and entities,

including the following: (i) the Office of the United States Trustee, (ii) counsel for the

Purchaser, (iii) counsel for the Official Committee of Unsecured Creditors (the "Committee"),

(iv) the Company's thirty largest creditors, (iv) Rock-Forty-Ninth LLC, (v) all entities known to

have asserted any lien, claim, interest or encumbrance in or upon the Purchased Assets, (vi) all

non-Debtor parties to Contracts that will be assumed on the Closing Date (the "Closing Date

Contracts"), (vii) the United States Attorney's office, (viii) the United States Department of

Justice, the Securities and Exchange Commission, (ix) the Securities Investor Protection

Corporation, (x) the Internal Revenue Service, (xi) all persons, if any, who have filed objections

to the Sale Motion; and (xiii) all persons who have filed a notice of appearance in the chapter 11

cases.

   G.  **Corporate Authority**. The Debtors (i) have full corporate power and

authority to execute the Purchase Agreement and all other documents contemplated thereby and

the Debtors' sale of the   Assets has been duly and validly authorized by all necessary corporate

action, (ii) have all of the corporate power and authority necessary to consummate the

transactions contemplated by the Purchase Agreement, (iii) have taken all corporate action

necessary to authorize and approve the Purchase Agreement and the consummation of the

transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly

provided for in the Purchase Agreement, are required for the Debtors to consummate such transactions.

H.    **Sale in Best Interests**.  Good and sufficient reasons for approval of the Purchase Agreement and the Sale have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

I.    **Business Justification**.  The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business under Bankruptcy Code section 363(b) before, and outside of, a plan of reorganization in that, among other things, the immediate consummation of the Sale with the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates, particularly given the wasting nature of the Purchased Assets.  Entry of an order approving the Purchase Agreement and all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the transactions set forth in the Purchase Agreement.

J.    **Arm's-Length Sale**.  The Purchase Agreement was negotiated, proposed and entered into by the Sellers and the Purchaser without collusion, in good faith and from arm's-length bargaining positions.  The Purchaser is not an "insider" of the Debtors, as that term is defined in Bankruptcy Code section 101(31).  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n).  Specifically, the Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

K.    **Good Faith Purchaser**.  The Purchaser is a good faith Purchaser of the Purchased Assets within the meaning of Bankruptcy Code section 363(m) and is, therefore,

5

entitled to all of the protections afforded thereby. The Purchaser has proceeded in good faith in all respects in connection with this proceeding.

L.   **Highest and Best Offer**. The Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

M.   **Consideration**. The consideration constitutes reasonably equivalent value or fair consideration, as the case may be (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities, other than the Purchaser, has offered to purchase the Purchased Assets for an amount that would give greater economic value to the Debtors' estates. Approval of the Motion and the Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors and all other parties in interest.

N.   **Free and Clear**. Except to the extent that certain intellectual property rights may be owned by entities other than the Seller, the Debtors and LBI are the sole and lawful owners of the Purchased Assets. The transfer of the Purchased Assets to the Purchaser under the Purchase Agreement will be a legal, valid, and effective transfer of the Purchased Assets, and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the

6

Purchased Assets free and clear of all Liens, claims (as defined in section 101(5) of the Bankruptcy Code) (including, without limitation, successor liability claims), encumbrances, obligations, liabilities, contractual commitments, rights of first refusal or interests of any kind or nature whatsoever (collectively, the "Interests"), including, but not limited to, (i) those that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Debtors' interests in the Purchased Assets, or any similar rights or (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date. For avoidance of doubt, all Interests shall attach to the proceeds ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Purchased Assets or their proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto. Further, the assumption and assignment of any Closing Date Contracts is likewise free and clear of all Interests. Notwithstanding the foregoing, as of the Closing Date, all obligations to The Options Clearing Corporation ("OCC") with respect to Purchased Assets that are within the possession or control of OCC shall have been assigned to the Purchaser, and the Purchaser shall have assumed all of such obligations including, without limitation, all obligations with respect to short option positions, futures contracts, and stock loan or borrow positions that are transferred to the accounts of Purchaser at OCC as of the Closing Date in accordance with the Purchase Agreement. From and after the Closing Date, all securities, cash, collateral and other property transferred to accounts of the Purchaser at OCC shall be subject to all rights of OCC therein in accordance with the By-Laws and Rules of OCC including, without limitation, the security interests and setoff rights of OCC with respect thereto.

O.    **Free and Clear Findings Needed by Purchaser**. The Purchaser asserts

that it would not have entered into the Purchase Agreement and would not consummate the

transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their

creditors, if the sale of the Purchased Assets (except to the extent that certain intellectual

property rights may be owned by entities other than the Seller) to the Purchaser and the

assumption and assignment of the Contracts to the Purchaser was not free and clear of all

Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be

liable for any of the Interests.

P.    **No Liability Findings Needed by Purchaser**. Purchaser asserts that it

will not consummate the transactions contemplated by the Purchase Agreement unless the

Purchase Agreement specifically provides, and the Bankruptcy Court specifically orders, that

none of Purchaser or its affiliates, members or shareholders or the Purchased Assets will have

any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or

in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or

Excluded Liability.

Q.    **Satisfaction of 363(f) Standards**. The Sellers may sell the Purchased

Assets (except to the extent that certain intellectual property rights may be owned by entities

other than the Seller) free and clear of any Interests of any kind or nature whatsoever because in

each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code

has been satisfied. The person or entity with any Interest in the Purchased Assets (except to the

extent that certain intellectual property rights may be owned by entities other than the Seller): (i)

has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have

consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money

8

satisfaction of such Interest; or (iii) otherwise falls within the provisions of section 363(f) of the

Bankruptcy Code. Those holders of Interests who did not object to the Motion are deemed,

subject to the terms of this Order, to have consented pursuant to Bankruptcy Code section

363(f)(2). All holders of Interests are adequately protected by having their Interests attach to the

proceeds ultimately attributable to the Purchased Assets (except to the extent that certain

intellectual property rights may be owned by entities other than the Seller) against or in which

such Interests are asserted, subject to the terms of such Interests, with the same validity, force

and effect, and in the same order of priority, which such Interests now have against the

Purchased Assets or their proceeds, subject to any rights, claims and defenses the Debtors or

their estates, as applicable, may possess with respect thereto.

> R.    **No Fraudulent Transfer.** The Purchase Agreement was not entered into

for the purpose of hindering, delaying or defrauding creditors of Seller under the Bankruptcy

Code and under the laws of the United States, any state, territory, possession, or the District of

Columbia. Neither Debtors nor Purchaser is entering into the transactions contemplated by the

Purchase Agreement fraudulently for the purpose of such statutory and common law fraudulent

conveyance and fraudulent transfer claims.

> S.    **No Successor Liability.** Except for the Assumed Liabilities, the transfer

of the Purchased Assets (except to the extent that certain intellectual property rights may be

owned by entities other than the Seller) to the Purchaser under the Purchase Agreement shall not

result in (i) the Purchaser having any liability or responsibility for any claim against the Debtors

or against an insider of the Debtors, or (ii) the Purchaser having any liability or responsibility to

the Debtors except as is expressly set forth in the Purchase Agreement. Without limiting the

effect or scope of the foregoing, to the fullest extent permitted by law, the transfer of the

Purchased Assets(except to the extent that certain intellectual property rights may be owned by entities other than the Seller) from the Debtors to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Purchased Assets) to any liability for claims (as that term is defined in section 101(5) of the Bankruptcy Code) against the Debtors or the Debtors' interests in such Purchased Assets by reason of such transfer under the laws of the United States or any state, territory or possession thereof applicable to such transactions, including, without limitation, any successor liability.

      T.    **Cure/Adequate Assurance**.  The assumption and assignment of the Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  The Debtors have:  (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing prior to the date hereof with respect to the Closing Date Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Closing Date Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A).  The Purchaser's promise to pay the Cure Amounts (as defined below) and to perform the obligations under the Closing Date Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).  Any objections to the assumption and assignment of any of the Closing Date Contracts to the Purchaser are hereby overruled.  Any objections to the Cure Amounts (as defined below) are resolved as set forth herein.  All counterparties to Closing Date Contracts shall have until

10

October 3, 2008 (the "Cure Amount Objection Deadline") to file an objection to the cure

amounts of their respective Closing Date Contracts (including as to the identity of such

contracts) identified on http: //chapter11.epiqsystems.com/Lehman (the "Website") (the "Cure

Amounts"). To the extent that any counterparty does not object to its Cure Amount by the Cure

Amount Objection Deadline, such counterparty is deemed to have consented to such Cure

Amounts and the assignments of their respective Closing Date Contracts to the Purchaser. To

the extent any objections to Cure Amounts are timely filed, the Debtors, Purchaser and the

counterparty shall meet and confer in good faith to attempt resolve any such objection without

Court intervention. If the objecting party and the Purchaser determine that the objection cannot

be resolved without judicial intervention, then such dispute will be determined by the Court upon

written application by either party on 20 (twenty) days notice, with any response due to such an

application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure

Amount as soon as reasonably practicable after (i) the date on which the contracting counterparty

consents in writing to the Cure Amount, (ii) the date on which the counterparty is deemed to

have consented, or (iii) the date on which the Court enters an order determining the Cure

Amount after the notice and hearing procedure set forth above. The procedures with respect to

assumption, assignment and cure of the Contracts that are the subject of the Purchaser's

designation rights (the "Designated Contracts") will be set forth in one or more separate orders

of the Court which will be entered at a later date or dates.

        U.    **Prompt Consummation.** The Sale must be approved and consummated

promptly in order to preserve the viability of the businesses subject to the sale as going concerns,

to maximize the value of the estates. Time is of the essence in consummating the Sale.

V. **Personally Identifiable Information**. The Sale may include the transfer of Personally Identifiable Information, as defined in Bankruptcy Code section 101(41A). No Consumer Privacy Ombudsman need be appointed under Code section 363(b)(1) because Purchaser has agreed to adhere to any such privacy policies applicable to the Debtors.

NOW, THEREFORE, IT IS ORDERED THAT:

1. **Motion is Granted**. The Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein.

2. **Objections Overruled**. Any objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

3. **Approval**. The Purchase Agreement and all of the terms and conditions thereto are hereby approved. The Debtors are hereby authorized and directed to (1) execute the Purchase Agreement, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Purchase Agreement, provided that such additional documents do not materially change its terms; (2) consummate the Sale in accordance with the terms and conditions of the Purchase Agreement and the other agreements contemplated thereby; and (3) take all other and further actions as may be reasonably necessary to implement the transactions contemplated by the Purchase Agreement.

4. **Free and Clear**. Except as expressly provided for in the Purchase Agreement or this Order, pursuant to Bankruptcy Code sections 105(a) and 363(f), the Debtors are authorized and directed to transfer the Purchased Assets (except to the extent that certain intellectual property rights may be owned by entities other than the Seller) to the Purchaser and,

12

as of the Closing Date, the Purchaser shall take title to and possession of the Purchased Assets

(except to the extent that certain intellectual property rights may be owned by entities other than

the Seller) free and clear of all Interests of any kind or nature whatsoever, including but not

limited to the Liens and Excluded Liabilities, with all such Interests to attach to the proceeds

ultimately attributable to the property against or in which such Interests are asserted, subject to

the terms of such Interests, with the same validity, force and effect, and in the same order of

priority, which such Interests now have against the Purchased Assets or their proceeds, subject to

any rights, claims and defenses the Debtors or their estates, as applicable, may possess with

respect thereto.

     5.    **Valid Transfer**. As of the Closing Date, (a) the transactions

contemplated by the Purchase Agreement effect a legal, valid, enforceable and effective sale and

transfer of the Purchased Assets to Purchaser, and shall vest Purchaser with title to such

Purchased Assets (except to the extent that certain intellectual property rights may be owned by

entities other than the Seller) free and clear of all Interests and Excluded Liabilities and (b) the

Purchase Agreement and the transactions and instruments contemplated hereby shall be

specifically performable and enforceable against and binding upon, and not subject to rejection

or avoidance by, the Debtors or any successor chapter 11 or chapter 7 trustee appointed with

respect thereto.

     6.    **General Assignment**. On the Closing Date, this Order shall be construed

and shall constitute for any and all purposes a full and complete general assignment, conveyance

and transfer of the Sellers' interests in the Purchased Assets. Each and every federal, state, and

local governmental agency or department is hereby directed to accept any and all documents and

13

instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

       7.    **Injunction**. Except as expressly permitted by the Purchase Agreement or by this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Interests or Claims of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' businesses before the Closing Date or the transfer of the Debtors' interests in the Purchased Assets to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing against the Purchaser, its property, its successors and assigns, its affiliates or the interests of the Debtors in such Purchased Assets, such persons' or entities' Interests or Claims. Following the Closing Date, no holder of an Interest in or Claim against the Debtors shall interfere with Purchaser's title to or use and enjoyment of the Debtors' interests in the Purchased Assets based on or related to such Interests or Claims, and all such Claims and Interests, if any, shall be, and hereby are transferred and attached to the Debtors' interests in the Sale proceeds as provided in this Sale Order in the order of their priority, with the same validity, force and effect which they have against such Purchased Assets as of the Closing Date, subject to any rights, claims and defenses that the Debtors' estates and Debtors, as applicable, may possess with respect thereto.

14

8.    **Release of Interests**.  This Order (a) shall be effective as a determination

that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the

Purchased Assets (except to the extent that certain intellectual property rights may be owned by

entities other than the Seller) prior to the Closing Date have been unconditionally released,

discharged and terminated, and that the conveyances described herein have been effected, and

(b) shall be binding upon and shall govern the acts of all entities including without limitation, all

filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of

deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of

state, federal, state, and local officials, and all other persons and entities who may be required by

operation of law, the duties of their office, or contract, to accept, file, register or otherwise record

or release any documents or instruments, or who may be required to report or insure any title or

state of title in or to any of the Purchased Assets.

9.    **Direction to Release Interests**.   On the Closing Date, each of the

Debtors' creditors is authorized and directed to execute such documents and take all other

actions as may be reasonably necessary to release its Interests in the Purchased Assets, if any, as

such Interests may have been recorded or may otherwise exist.

10.    **No Successor Liability**.  Neither Purchaser nor its affiliates, successors or

assigns shall, as a result of the consummation of the transaction contemplated by the Purchase

Agreement,: (a) be a successor to the Debtors or their estates; (b) have, de facto or otherwise,

merged or consolidated with or into the Debtors or their estates; or (c) be a continuation or

substantial continuation of the Debtors or any enterprise of the Debtors.  Except for the Assumed

Liabilities, the transfer of the Purchased Assets to Purchaser under the Purchase Agreement shall

not result in (i) Purchaser, its affiliates, members, or shareholders, or the Purchased Assets,

15

having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) Purchaser, its affiliates, members, or shareholders, or the Purchased Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability, or (iii) Purchaser, its affiliates, members, or shareholders, or the Purchased Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Purchase Agreement.

11.    **Examples of No Successor Liability**. Without limiting the effect or scope of the foregoing, as a result of the closing of the transactions contemplated by the Purchase Agreement, the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing Date.

12.    **Assumption and Assignment of Contracts**. In accordance with Bankruptcy Code sections 363, 365 and 105(a), and subject to the terms of the Purchase Agreement and this Sale Order, the Sellers are hereby authorized to assume and assign the Closing Date Contracts, including customer account agreements, to which they are a party to the Purchaser. All counterparties to Closing Date Contracts shall have until the Cure Amount Objection Deadline to file an objection to the Cure Amounts (including as to the specific identity

16

of such contracts). To the extent that any counterparty does not object to its Cure Amount by the Cure Amount Objection Deadline, such counterparty is deemed to have consented to such Cure Amounts and the assignments of their respective Closing Date Contracts to the Purchaser. To the extent any objections are timely filed, the Debtors, Purchaser and the counterparty shall meet and confer in good faith to attempt resolve any such objection without Court intervention. If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon as reasonably practicable after (i) the date on which the contracting counterparty consents in writing to the Cure Amount, (ii) the date on which the counterparty is deemed to have consented, or (iii) the date on which the Court enters an order determining the Cure Amount after the notice and hearing procedure set forth above. The procedures with respect to assumption, assignment and cure of the Designated Contracts will be set forth in one or more separate orders of the Court which will be entered at a later date or dates.

13.    **Bankruptcy Code Sections 365(b)(1) and 365(f)(2).** The requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code are hereby deemed satisfied with respect to the Closing Date Contracts.

14.    **Binding Effect of Order.** This Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties

17

of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

15. **Ipso Facto Clauses Ineffective**. Upon the Debtors' assignment of the Contracts to the Purchaser under the provisions of this Sale Order and any additional order contemplated by the Purchase Agreement, no default shall exist under any Closing Date Contract, and no counterparty to any Closing Date Contract shall be permitted to declare a default by the Purchaser under such Closing Date Contract or otherwise take action against the Purchaser as a result of any Debtors' financial condition, bankruptcy or failure to perform any of its obligations under the relevant Closing Date Contract.

16. **Binding on Successors**. The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon the Debtors, their estates, all creditors of (whether known or unknown) and holders of equity interests in either Debtor, Purchaser and its respective affiliates, successors and assigns, and any third parties, notwithstanding any subsequent appointment of any trustee of the Debtors under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding. This Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

17. **Bankruptcy Code Section 363(n)**. The consideration provided by Purchaser for the Purchased Assets under the Purchase Agreement is fair and reasonable and may not be avoided under Bankruptcy Code section 363(n).

18. **Good Faith**. The transactions contemplated by the Purchase Agreement are undertaken by Purchaser without collusion and in good faith, as that term is used in

18

Bankruptcy Code section 363(m) and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Closing Date Contracts) with Purchaser, unless such authorization is duly stayed pending such appeal prior to the Closing Date. Purchaser is a good faith Purchaser of the Purchased Assets, and is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m).

19.    **Fair Consideration.**  The consideration provided by the Purchaser to the Debtors and LBI pursuant to the Purchase Agreement for its purchase of the Debtors' interest in the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia; provided that nothing in the foregoing shall waive or compromise any claim of a creditor, including a non -debtor affiliate to seek relief against any estate or any person other than the Purchaser, arising out of or related to flows of funds to and from the Debtors prior to entry of this Order.

20.    **Retention of Jurisdiction.**  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to Purchaser; (b) interpret, implement and enforce the provisions of this Order; (c) protect Purchaser against any Interests in or Claims against the Sellers or the Purchased Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d)

19

enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Designated Contracts.

21.    **Retention of Rights By the Government**.  Nothing in this Order or in the Purchase Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order; or (ii) should be construed to give Purchaser any more protection against any government unit than it is otherwise entitled to under 11 U.S.C. § 363(f). Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law.

22.    **Surrender of Possession**.  All entities that are currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Sellers hold an interest hereby are directed to surrender possession of the Purchased Assets either to (i) the Debtors or LBI before the Closing Date, or (ii) to Purchaser on the Closing Date.

23.    **Fees and Expenses**.  Any amounts payable by the Debtors under the Purchase Agreement or any of the documents delivered by the Debtors in connection with the Purchase Agreement, including, but not limited to the Breakup Fee or Expense Reimbursement, shall be paid in the manner provided in the Purchase Agreement and the Break-Up Fee and Competing Bid Order, entered on September 17, 2008, without further order of this Court, shall be an allowed administrative claim in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, shall have the other protections provided in the Break-Up Fee and Competing Bid Order, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by an express agreement with Purchaser, its successors, or assigns.

20

24.     **Sale Proceeds**.  Any and all valid and perfected Interests in Purchased

Assets of the Debtors shall attach to any proceeds of such Purchased Assets immediately upon

receipt of such proceeds by the Debtors (or any party acting on any Debtor's behalf) in the order

of priority, and with the same validity, force and effect which they now have against such

Purchased Assets, subject to any rights, claims and defenses the Debtors, their estates or any

trustee for any Debtor, as applicable, may possess with respect thereto, and, in addition to any

limitations on the use of such proceeds pursuant to any provision of this Order, except as

required by this Order or the Purchase Agreement, no proceeds subject to an asserted Interest

shall be used or disbursed by the Debtors without the express consent of the party or parties

asserting an Interest therein or further order of the Court after notice (to all parties who have

asserted an Interest in such proceeds) and a hearing, consistent with the requirements of the

Bankruptcy Code.

25.     **Non-material Modifications**.  The Purchase Agreement and any related

agreements, documents or other instruments may be modified, amended or supplemented by the

parties thereto, in a writing signed by such parties, and in accordance with the terms thereof,

without further order of the Court, provided that any such modification, amendment or

supplement does not have a material adverse effect on the Debtors' estates and has been agreed

to between the Committee, the Debtors and the Purchaser.

26.     **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan

confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other

order in these chapter 11 cases (including any order entered after any conversion of a chapter 11

case of any of the Debtors to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict

with, or derogate from, the provisions of the Purchase Agreement or this Order.

21

27.  **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety; provided, however, that this Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

28.  **Further Notice to Lienholders**.  The Debtors, at the Debtors' expense, shall provide additional notice to any additional lienholders identified after the Debtors obtain additional lien searches (such searches shall be done in a manner to the reasonable satisfaction of the Purchaser).  If additional lienholders are identified after the Debtors' additional searches, then such additional lienholders identified will be sent notice of the relief granted in the Sale Motion and will be given 15 (fifteen) days after such notice to file an objection to the 11 U.S.C. § 363(f) relief provided herein.  If after such notice, any objections are filed, the Debtors and the Purchaser will have 15 (fifteen) days to respond to such objections and such objections will be set for hearing and determined by this Court.

29.  **No Stay of Order**.  Notwithstanding the provisions of Interim Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for ten (10) days after the entry hereof, but shall be effective and enforceable immediately upon entry.  Time is of the essence in closing the transactions referenced herein, and the Debtors and the Purchaser intend to close the Sale as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

22

30.    **Allocation**. The consideration received by Seller pursuant to the Purchase

Agreement on account of the Lehman headquarters at 745 Seventh Avenue in New York City,

the Cranford New Jersey Data Center and the Piscataway New Jersey Data Center (collectively,

the "Real Estate Assets") shall become property of the LBHI estate. The rights of all parties in

interest in respect of the proper allocation of proceeds received by the Seller on account of the

Purchased Assets other than the Real Estate Assets are reserved, as among each Seller (and

without impairing or affecting in any way Purchaser's rights under the Purchase Agreement),

subject to the further order of the Court. The Debtors shall seek an order approving such

allocation, on notice to the SIPA Trustee and the Committee, in the event of any dispute

regarding such allocation.

31.    **Preservation of Certain Records**. Subject to further order of the Court,

the Seller and the Purchaser are hereby ordered to take appropriate measures to maintain and

preserve, until the consummation of any chapter 11 plan for the Debtors, the books and records

and any other documentation, including tapes or other audio or digital recordings and data in or

retrievable from computers or servers, relating to or reflecting the records held by it or its

Affiliates relating to the Business, including the accounts, property and trading records of the

customers of the Seller.  In addition, the Debtors and Committee shall promptly identify

reasonable procedures for preserving information in the Seller or Purchaser's possession related

to potential tax or financial audits of, government investigations of, or claims against Seller, as

well as any claims that the Debtors may have against third parties, and the Seller and Purchaser

shall maintain and reserve such information, subject to further order of the Court until the

consummation of any chapter 11 plan for the Debtors.

23

32.     Notwithstanding anything to the contrary set forth in this order, this order does not (i) alter the rights of parties to "forward contracts," "securities contracts," "repurchase agreements," "commodity contracts," "swap agreements," "master netting agreements" (each as defined in the Bankruptcy Code) from exercising their rights pursuant to the "financial contract safe harbor" provisions of the Bankruptcy Code, including without limitation those set forth in sections 555, 556, 559, 560, 561 and 562 or (ii) affect any right of JPMorgan under or with respect to any securities contract, commodities contract, forward contract, repurchase agreement, swap agreement or master netting agreement (each as defined in the Bankruptcy Code) to exercise any contractual right (as defined in the relevant section of the Bankruptcy Code) of a kind described in section 362(b)(6), (7), (17), or (27), 362(o), 555, 556, 559, 560 or 561 of the Bankruptcy Code.

33.     Nothing in this order or actions taken pursuant to this Order shall undermine any obligations of the Debtors or the SIPA Trustee to comply with the rules of the Chicago Mercantile Exchange.

Dated:  New York, New York
        September 19, 2008

                        s/ James M. Peck
                        HONORABLE JAMES M. PECK
                        UNITED STATES BANKRUPTCY JUDGE

24

**Exhibit** C



745 Seventh Avenue
New York NY 10019
USA

Tel  +1  (212) 526-2714

CHRISTINE THOMSON
Vice President

October 14, 2008

Maximilian Coreth
By Hand

Dear Maximilian:

This is an agreement ("Separation Agreement") concerning your separation from employment by
Barclays Capital (the "Bank"). If you sign and comply with this Separation Agreement and the
attached Waiver and General Release, you will receive the payments and benefits discussed
below. **Please note that you must sign both documents.**

**Effective Dates, Payments and Benefits**

1.  October 14, 2008 will be the last day that you are expected to report to work.

2.  Provided you sign and comply with this Separation Agreement, you are eligible to continue
    to receive your current base salary and benefits coverage through the earlier of June 27, 2009
    or the date on which you become actively employed with another firm (the "separation
    date"), as follows:

    a.  You will be eligible to receive your current base salary and benefits continuation through
        December 13, 2008 (the "notice period"). Even if you do not sign this agreement, you
        are eligible to remain on the Bank's payroll for the notice period, provided you do not
        become actively employed with another firm during this time.

    b.  Immediately after the notice period and in lieu of a lump sum separation payment
        consisting of 26 weeks of severance pay and 2 weeks of unused vacation pay, you will
        continue to receive your current base salary and certain benefits continuation, including
        medical benefits, through June 27, 2009.

    Salary continuation will be paid on a biweekly basis at your current biweekly base salary
    rate, in accordance with the Bank's regular payroll practices. While you are on salary
    continuation, you will be eligible to continue your benefits coverage under the terms of our
    plans. All payments will be subject to withholding, payroll taxes and other applicable
    deductions.

3.  In addition, you will receive a special lump sum payment in the total amount of $1,960,000
    less withholding, payroll tax and any other applicable deductions to be paid on or about
    February 22, 2009.

4.  The Bank has retained Lee Hecht Harrison to provide you with outplacement counseling
    services. These services are designed to assist you with counseling on resume writing,
    interviewing skills, networking techniques, and a job search campaign. We encourage you to
    take advantage of these services in order to ensure a smooth career transition. To sign up,
    please call Sasha Hohri at (866) 949-3325.

Barclays Capital Inc.
Barclays Bank PLC, New York Branch

Maximilian Coreth

5.  You and your covered dependents, pursuant to the COBRA law, may be eligible to continue health insurance coverage for up to 18 months from your separation date, at your own expense. Your right to continue or convert coverage (including COBRA coverage) after your separation date will be governed by the terms of our plans.

6.  Your rights to benefits under any employee benefits plans will be determined in accordance with the terms of such plans. Our employee benefits plans may be modified or terminated at any time.

7.  Should you become employed by another firm as an employee, consultant or independent contractor at any time while you are on salary continuation, you are obligated to inform the Bank so that you can be terminated from the payroll at that time. This date will be your separation date for purposes of this Separation Agreement. As of this separation date, your salary and benefits coverage continuation will end. Provided you have signed and complied with this Separation Agreement and the attached Waiver and General Release, you will receive a lump sum payment representing the remainder of the payments described in paragraph 2, payable within 4 weeks of your separation date.

8.  Should you be rehired by the Bank or any of its subsidiaries or affiliates as an employee, consultant or independent contractor at any time through your separation date you will no longer be eligible to receive the remainder of the payments described in paragraph 2.

9.  If you are currently registered with the Bank, your registration will cease as of your last day of active employment. Once you join another firm, you should immediately contact the new firm's Registration Department to transfer your registrations, as the transfer does not occur automatically. Your new firm should have you complete a new U-4 form.

10. **Waiver and General Release.**   In consideration of, and as a condition to receiving, the payments and benefits set forth in this Separation Agreement, you must review and sign the Waiver and General Release attached to this document.

**You acknowledge that you have read this Separation Agreement, understand it and are voluntarily entering into it.**

BARCLAYS CAPITAL

*Christine Thomson*

Christine Thomson

Maximilian Coreth

Date

INITIAL          DATE

Maximilian Coreth

| Waiver and General Release |
| --- |

October 14, 2008

Maximilian Coreth

In exchange for the payments and benefits set forth in my Separation Agreement , I hereby release Barclays Capital (the "Bank"), and all of its past and /or present divisions, affiliates, parents, subsidiaries, officers, directors, stockholders, trustees, employees, agents, representatives, administrators, attorneys, insurers, fiduciaries, predecessors, successors and assigns, in their individual and/or representative capacities (hereinafter collectively referred to as "the Barclays Group"), from any and all causes of action, suits, agreements, promises, damages, disputes, controversies, contentions, differences, judgments, claims and demands of any kind whatsoever ("Claims") which I or my heirs, executors, administrators, successors and assigns ever had, now have or may have against the Barclays Group, whether known or unknown to me, by reason of my employment, and/or cessation of my employment, with the Bank or with Lehman Brothers, or otherwise involving facts which occurred on or prior to the effective date of this Waiver and General Release, except to the extent that any such Claim concerns an allegation that the Bank has failed to make the payment(s) set forth above. Such released Claims include, but are not limited to, breach of contract, impairment of economic opportunity, defamation, intentional infliction of emotional distress, wrongful discharge, and any other contract, tort or common law claim. Such released claims also include, but are not limited to, any and all Claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Civil Rights Act of 1871, the Civil Rights Act of 1991, the Fair Labor Standards Act, the Employee Retirement Income Security Act, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993, the New York State Labor Law, the New York State Human Rights Law, the New York City Human Rights Law, and any and all other federal, state and local laws, statutes, rules and regulations pertaining to employment.

I understand and agree that I am waiving any relief available to me (including, for example, monetary damages or reinstatement), under any of the Claims waived in the foregoing paragraph, including but not limited to financial benefit or monetary recovery from any lawsuit filed or settlement reached by the EEOC or anyone else with respect to any Claims released and waived in this Waiver and General Release. I agree that I will not seek or accept any monetary award or settlement from any source or proceeding (including but not limited to any proceeding brought by any other person or by any government agency) with respect to any Claims waived in this Waiver and General Release, and I also represent that as of the date I sign this Waiver and General Release, I have not commenced any proceedings or filed any claim, charge, or complaint of any kind with any local, state or federal court, administrative agency or arbitral forum against any of the Barclays Group based on any Claims or matters waived.

In accordance with my existing and continuing obligations to the Bank, I have returned or will immediately return to the Bank, all Bank property (including but not limited to keys and credit cards) and all Barclays Group Information (as hereinafter defined), including files, software, records, computer access codes, business equipment (including fax machines, telephones, and personal computers) and instruction manuals which I have in my possession or control no matter where located. I further agree not to keep any copies or portions of Barclays Group Information. I affirm my obligation to keep all Barclays Group Information confidential and not to disclose it to any third

INITIAL ___  DATE___   ......  ..

Maximilian Coreth

party in the future except as authorized in writing by the Bank. I understand that the term "Barclays Group Information" means: (a) confidential information, including information received during my employment with Lehman Brothers or from third parties under confidential conditions, and (b) other technical, marketing, business or financial information, or information relating to personnel or former personnel of the Barclays Group or any of its predecessors.

I affirm that I have submitted all outstanding business expense requests for reimbursement to the Bank, including all supporting documentation, and that I have paid all outstanding personal expenses which I owe or owed to the Bank.

I understand and agree that the Bank's payment(s) to me and my signing of this Waiver and General Release do not in any way indicate that I have any viable Claims against the Barclays Group or that the Barclays Group admits any liability to me whatsoever.

I agree to keep the Waiver and General Release and the Separation Agreement to which it is attached confidential and not to reveal its existence or contents to anyone except my lawyer, my immediate family and my financial or tax consultant or except as required by law, and if I do so, I further agree to immediately tell my lawyer, my immediate family and my financial or tax consultant that they must all keep the existence and contents of this Waiver and General Release confidential.

I agree not to make or publish any statement (orally or in writing), or to instigate, assist or participate in the making or publication of any statement, which would or could adversely affect, libel, slander or disparage (whether or not such disparagement legally constitutes libel or slander) or expose to hatred, contempt or ridicule (a) the Bank; (b) any of its services, affairs or operations; or (c) the reputations of any of its past or present directors, officers, employees or shareholders.

Notwithstanding the foregoing paragraphs, I understand that nothing in this Waiver and General Release shall limit my right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities.

I have read this Waiver and General Release carefully, have been given fourteen (14) days to consider all of its terms have been advised to consult with an attorney and any other advisor of my choice, and fully understand that by signing below I am waiving and releasing all Claims against the Barclays Group as described above. I have not been forced or pressured in any manner whatsoever to sign this Waiver and General Release, and I agree to all of its terms voluntarily.

This Waiver and General Release and the Separation Agreement to which it is attached constitutes the complete settlement of all disputes existing between me and the Barclays Group as of the date hereof, and may not be modified except by a suitable writing signed by both myself and the Bank. This Waiver and General Release and the Separation Agreement to which it is attached supersedes and cancels all prior oral and written agreements and understandings concerning the matters described herein. My rights and duties under this Waiver and General Release shall not be assignable without the written consent of the Bank. I acknowledge that no representative of the Bank has made any promises, oral or written, relating to my employment, the termination thereof, the terms of any severance arrangement, or concerning any other related matter, that are not reflected in this Waiver and General Release and the Separation Agreement to which it is attached, and the Bank asserts that it has made no representation that is not reflected in this Waiver and General Release and the Separation Agreement to which it is attached.

I agree to reasonably cooperate with the Barclays Group, its financial and legal advisors and/or government officials in connection with any business matters in which I was involved or any claims,

INITIAL       DATE

Maximilian Coreth

investigations, administrative proceedings or lawsuits which relate to my employment with the Barclays Group or its predecessors.

I understand and agree that this Waiver and General Release and the Separation Agreement to which it is attached will be governed by New York law, without giving effect to its choice of law provisions. I further agree that the only venue for Claims I might make against the Barclays Group, or for an action to enforce the terms of this Waiver and General Release and the Separation Agreement to which it is attached, shall be in a court of appropriate jurisdiction located in the County of New York.

In the event that any one or more of the provisions contained herein shall for any reason be held to be unenforceable in any respect under the law of the United States of America, or any state thereof, such unenforceability shall not affect any other provision of this Waiver and General Release, but this Waiver and General Release shall then be construed as if such unenforceable provision or provisions had never been contained herein.

I understand that if I breach any term of this Waiver and General Release, the Bank may seek appropriate relief, including but not limited to repayment of the amounts paid to me under this Waiver and General Release and my Separation Agreement, and further, the obligation to make any further payments under the terms of this Waiver and General Release and my Separation Agreement at the time of the breach will be null and void.

Please initial and date (where indicated) each of the preceding pages of this agreement and send a hard copy to Christine Thomson.


Date                                            Maximilian Coreth


Date                                            Notary Public


INITIAL        DATE

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                :    Chapter 11 Case No.
                                                     :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :    08-13555 (JMP)
                                                     :
                          Debtors.                   :    (Jointly Administered)
-------------------------------------------------------------x

### NOTICE OF DEADLINES FOR FILING PROOFS
### OF CLAIM BASED ON LEHMAN PROGRAMS SECURITIES

**THIS NOTICE RELATES ONLY TO THE FILING OF CLAIMS AGAINST LEHMAN
BROTHERS HOLDINGS INC. BASED ON LEHMAN PROGRAMS SECURITIES.**

PLEASE TAKE NOTICE THAT, on July 2, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Court"), having jurisdiction over the chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates, as debtors and debtors in possession in the above referenced chapter 11 cases (collectively, the "Debtors"), entered an order (the "Bar Date Order") establishing **November 2, 2009, at 5:00 pm (prevailing Eastern Time)** as the last date and time for each person or entity to file a proof of claim ("Securities Programs Proof of Claim") based on Lehman Programs Securities (the "Securities Programs Bar Date").

The Securities Programs Bar Date and the procedures set forth in the Bar Date Order and below for the filing of Securities Programs Proofs of Claim apply only to claims against LBHI based on securities identified on the "Lehman Programs Securities" list available on http://www.lehman-docket.com (the "Lehman Programs Securities") that arose prior to September 15, 2008 (the "Commencement Date"), the date on which LBHI commenced their case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

If you have claims against any Debtor other than those based on Lehman Programs Securities, you should review the Bar Date Order to determine whether you need to file a proof of claim in accordance with the deadlines and procedures set forth therein. The Bar Date Order and related information and forms are available at http://www.lehman-docket.com. All claims other than those based on Lehman Programs Securities must be filed by September 22, 2009.

If you have any questions with respect to this Notice, please contact the Debtors' court-approved claims agent Epiq Bankruptcy Solutions, LLC ("Epiq") at 1-503-597-7691 or, in the United States, (866)-879-0688.

A CLAIMANT MAY WISH TO CONSULT AN ATTORNEY IF THE CLAIMANT HAS ANY QUESTIONS, INCLUDING WHETHER SUCH CLAIMANT SHOULD FILE A SECURITIES PROGRAMS PROOF OF CLAIM. PLEASE NOTE THAT EPIQ IS NOT PERMITTED TO GIVE LEGAL ADVICE.

All holders of claims against LBHI based on Lehman Programs Securities are required to file a Securities Programs Proof of Claim in order to preserve their claims against LBHI.

1.      WHO MUST FILE A SECURITIES PROGRAMS PROOF OF CLAIM

You **MUST** file a **Securities Programs Proof of Claim** to share in LBHI's estate if you have a claim based on a Lehman Programs Security that arose prior to the Commencement Date. Claims based on Lehman Programs Securities must be filed by the Securities Programs Bar Date notwithstanding that such claims may not have matured or become fixed or liquidated prior to the applicable Commencement Date. Pursuant to section 101(5) of the Bankruptcy Code and as used herein, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such

breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

All notices and distributions with respect to any filed claims based on Lehman Programs Securities will be sent to the party that filed the claim at the address set forth on the Securities Programs Proof of Claim Form submitted. Any entity that files a Securities Programs Proof of Claim consents to receive all such notices and distributions at the address specified on the Securities Programs Proof of Claim and is responsible for any objections raised by the Debtors related to such claim.

**An entity that files a claim based on any Lehman Programs Security, by filing such claim, consents to and is deemed to have authorized Euroclear, Clearstream, or other depository, as appropriate, to disclose their identity and holdings of Lehman Programs Securities to LBHI for the purpose of reconciling claims.**

2.      WHO NEED **NOT** FILE A SECURITIES PROGRAMS PROOF OF CLAIM

**YOU SHOULD NOT FILE A SECURITIES PROGRAMS PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST LBHI BASED ON LEHMAN PROGRAMS SECURITIES.**

3.      WHEN AND WHERE TO FILE

All Programs Securities Proofs of Claim must be filed so as to be **actually received** on or before the Programs Securities Bar Date at the following address:

| If by overnight courier, to: | If by mail, to: |
|---|---|
| Epiq Bankruptcy Solutions, LLC<br>Attn: Lehman Brothers Holdings Claims Processing<br>757 Third Avenue, 3rd Floor<br>New York, New York 10017<br>USA | Lehman Brothers Holdings Claims Processing<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, New York  10150-5076<br>USA |
| If by hand delivery, to:<br><br>Epiq Bankruptcy Solutions, LLC<br>Attn: Lehman Brothers Holdings Claims Processing<br>757 Third Avenue, 3rd Floor<br>New York, New York 10017<br>USA<br><br>or<br><br>Clerk of the United States Bankruptcy Court<br>Attn: Lehman Brothers Holdings Claims Processing<br>One Bowling Green<br>New York, New York 10004<br>USA | |

Securities Programs Proofs of Claim will be deemed timely filed only if **actually received** by Epiq or the Court on or before the Securities Programs Bar Date.  Securities Programs Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

4.      WHAT TO FILE

If you file a Securities Programs Proof of Claim, your filed Securities Programs Proof of Claim must: (i) be written the English language; (ii) to the extent a claim amount is reflected thereon, be denominated in the lawful currency of the United States using the exchange rate as applicable as of September 15, 2008; (iii) conform

substantially with the form attached to this notice (the "Securities Programs Proof of Claim Form"); (iv) state the name and case number of the specific Debtor against which it is filed; (v) identify the International Securities Identification Number ("ISIN") for each Lehman Programs Security; (vi) include either a Euroclear electronic instruction reference number, a Clearsteam blocking reference number, or other depository blocking reference number, as appropriate; (vii) be signed by the claimant or by an authorized agent of the claimant; and (viii) be submitted in hard copy form with an original signature.

**ANY PERSON OR ENTITY THAT HOLDS CLAIMS AGAINST LBHI OR ANY OF THE OTHER DEBTORS THAT ARE NOT BASED ON LEHMAN PROGRAMS SECURITIES SHOULD REVIEW THE BAR DATE ORDER TO DETERMINE WHETHER THEY NEED TO FILE A PROOF OF CLAIM IN ACCORDANCE WITH THE DEADLINES AND PROCEDURES SET FORTH THEREIN. SUCH CLAIMS MAY NOT BE COMBINED WITH ANY CLAIMS BASED ON LEHMAN PROGRAMS SECURITIES AND FILED ON THE SECURITIES PROGRAMS PROOF OF CLAIM FORM.**

---

**SPECIAL NOTE REGARDING BLOCKING NUMBERS**

Each Securities Program Proof of Claim must include either a Euroclear Electronic Instruction Reference Number, a Clearsteam Blocking Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") with respect to each Lehman Programs Security for which such Securities Program Proof of Claim is filed.

**Beneficial holders (which includes most individuals) of Lehman Programs Securities that are not Euroclear Bank ("Euroclear"), Clearstream Bank ("Clearstream") or other depository account holders may not contact Euroclear, Clearstream or such other depository directly. Such holders must direct their accountholder (i.e. the bank, broker or other entity that holds securities on behalf of such beneficial holder) to contact Euroclear, Clearstream or other relevant depository to obtain the Blocking Number.**

Parties that are accountholders with Euroclear, Clearstream or other relevant depository can obtain a Blocking Number for Lehman Programs Securities by following the directions that will be provided by Euroclear, Clearstream or other relevant depository. Accountholders may send a single request for each Lehman Programs Security with the same ISIN, but must send separate requests for Lehman Programs Securities with different ISINs.

**ALL REQUESTS FOR BLOCKING NUMBERS MUST BE SENT TO EUROCLEAR, CLEARSTREAM AND/OR OTHER DEPOSITORY PRIOR TO 5:00 PM (PREVAILING EASTERN TIME)/ 11:00 PM (CET), ON OCTOBER 23, 2009.**

Please note that holders of Lehman Programs Securities will not be permitted to trade such Lehman Programs Securities during the period from the issuance of a Blocking Number by Euroclear, Clearstream or other depository until the Programs Securities Bar Date. During the periods prior to the issuance of a Blocking Number and following the Programs Securities Bar Date, holders of Lehman Programs Securities will be permitted to trade such Lehman Programs Securities in accordance with applicable law and the procedures for the transfer of claims under the Bankruptcy Code.

---

5.    **CONSEQUENCES OF FAILURE TO FILE A SECURITIES PROGRAMS PROOF OF CLAIM BY THE SECURITIES PROGRAMS BAR DATE**

**Any holder of a claim based on a Lehman Programs Security who fails to file a Securities Programs Proof of Claim in accordance with the Bar Date Order on or before the Securities Programs Bar Date, complying with the requirements set forth in the Bar Date Order, for any claim such creditor holds or wishes to assert against LBHI based on a Lehman Programs Security, will be forever barred, estopped, and enjoined from asserting such claim (and from filing a Securities Programs Proof of Claim with respect to such claim) against LBHI, the other Debtors and their estates, and properties will be forever discharged from any and all indebtedness or liability with respect to such claim, and the holder of such claim shall not be permitted to vote on any chapter 11 plan or participate in any distribution in the Debtors' chapter 11 cases on account of such claim or to receive further notices regarding such claim or with respect to the Debtors' chapter 11 cases.**

DATED:    July 27, 2009                              BY ORDER OF THE COURT
               New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Lori R. Fife
Shai Y. Waisman

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

4

# EXHIBIT D

| *United States Bankruptcy Court/Southern District of New York*<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **LEHMAN SECURITIES PROGRAMS<br>PROOF OF CLAIM** |
|---|---|

| In Re:<br>Lehman Brothers Holdings Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | |
|---|---|---|

Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Maximilian Coreth
c/o Robert K. Gross, Esq.
Eaton & Van Winkle LLP
3 Park Avenue, 16th Floor
New York, NY 10016.
Telephone number: 212-561-3636 Email Address: rgross@evw.com

☒ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: 9/21/09

Name and address where payment should be sent (if different from above)

Maximilian Coreth
93 Mercer Street
New York, NY 10012
Telephone number:                  Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

1. Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

**Amount of Claim:** $ approximately $3 million plus unknown amount
*(Required)*

☒ Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

2. Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

**International Securities Identification Number (ISIN):** XS0078505228                  *(Required)*

3. Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

**Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:**

Account No. E1028393 (or other securities account(s) maintained for Claimant by LBI or LBHI)
*(Required)*

4. Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

**Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:**
Account No. E1028393 (or other securities account(s) maintained for Claimant by LBI or LBHI)
*(Required)*

5. Consent to Euroclear Bank, Clearstream Bank or Other Depository: By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions.

FILED / RECEIVED

NOV 0 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date.<br>11/2/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.   *Robert K. Gross*,   Authorized Agent |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571