SALANS LLP
  Claude D. Montgomery
  Paul C. Gunther
  Michael Kauffman
Rockefeller Center
620 Fifth Avenue
New York, NY 10020-2457
Tel: (212) 632-5500
Fax: (212) 632-5555

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                    :
**In re**                                                           :
                                                                    :
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*                         :
                                                                    :
                                        **Debtors.**                :
                                                                    :
                                                                    :
                                                                    :
-------------------------------------------------------------------x

**REPLY IN SUPPORT OF SWEDBANK'S**
**MOTION TO STAY PENDING APPEAL OF THE ORDER GRANTING THE**
**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 362 OF THE**
**BANKRUPTCY CODE ENFORCING THE AUTOMATIC STAY AGAINST**
**AND COMPELLING PAYMENT OF POST-PETITION FUNDS BY SWEDBANK AB**

# TABLE OF CONTENTS

Preliminary Statement...................................................................................................2

I.      Applicable Standards for Stay Pending Appeal.................................................2

II.     Swedbank Will Be Irreparably Harmed Absent a Stay. ...................................4

    A.      Swedback Risks Substantial Harm as a Matter of Law. ...........................4

    B.      Swedbank Risks Substantial Harm as a Matter of Fact. ...........................5

III.    Swedbank Has Demonstrated a  Substantial Possibility of Success on Appeal .................7

        1.      Plain Meaning of Bankruptcy Code Statutes. .........................................7

        2.      Applicable Case Law. ..........................................................................9

        3.      Legislative History. ............................................................................11

IV.     LBHI Has Not Demonstrated That it Would  Be Substantially Harmed by a Stay Order.12

V.      LBHI Has Not Demonstrated that a  Stay Order Will Harm the Public Interest ...............13

VI.     Swedbank Should Not Be Required to Post a Bond. .......................................14

Relief Requested .......................................................................................................15

NewYork 1348572.2

# TABLE OF AUTHORITIES

## CASES

Arban v. West Pub. Corp.,
    345 F.3d 390 (6th Cir.2003) ................................................................14

Bildisco - In re Genuity,
    323 B.R. 79 (Bankr. S.D.N.Y. 2005) ...................................................10

Biltmore Assocs., LLC. v. Twin City Fire Ins. Co.,
    572 F.3d 663 (9th Cir. 2009) ................................................................10

Brenntag Intern. Chemicals, Inc. v. Bank of India,
    175 F.3d 245 (2d Cir. 1999) .................................................................12

Cisneros v. Alpine Ridge Group,
    508 U.S. 10 (1993) ...............................................................................8

Compare In re Gould,
    401 B.R. 415 (9th Cir. B.A.P. 2009) ....................................................5

Dillon v. City of Chicago,
    866 F.2d 902 (7th Cir.1988) .................................................................14

Frommert v. Conkright,
    639 F. Supp. 2d 305 (W.D.N.Y. 2009) ................................................14

GFI Sec., LLC v. Tradition Asiel Sec. Inc.,
    21 Misc.3d 1111 (Sup.Ct. N.Y.Cty. 2008)

In re Adelphia,
    361 B.R. 337 (S.D.N.Y. 2007) .........................................................3, 5

In re Advanced Mining Sys., Inc.,
    173 B.R. 467 (S.D.N.Y. 1994) .............................................................6

In re Allen,
    135 B.R. 856 (Bankr. N.D. Iowa 1992) ...............................................10

In re Ames Dep't Stores, Inc.,
    320 B.R. 518 (Bankr. S.D.N.Y. 2005) .................................................2

In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,
    389 B.R. 325 (Bankr. S.D.N.Y. 2008) .................................................2

In re Cajun Elec. Power Co-op, Inc.,

ii

230 B.R. 693 (Bankr. M.D.La. 1999) ....................................................................10

In re Calpine Corp.,
    2008 WL. 207841 (Bankr. S.D.N.Y. January 24, 2008)........................................4

In re Chateaugay Corp.,
    68 F.3d 26 (2d Cir. 1995)......................................................................................5

In re Country Squire Assocs. of Carle Place, L.P.,
    203 B.R. 182 (B.A.P. 2d Cir. 1996).....................................................................4, 5

In re Durham,
    87 B.R. 300 (Bankr.D.Del. 1988) .........................................................................10

In re Durso Supermarkets, Inc.,
    1995 WL. 739549 (S.D.N.Y. Dec. 14, 1995) ........................................................10

In re Ealy,
    396 B.R. 20 (8th Cir. 2008) .................................................................................4, 5

In re Footstar,
    323 B.R. 566 (Bankr. S.D.N.Y. 2005)...................................................................10

In re General Motors Corp.,
    409 B.R. 24 (Bankr. S.D.N.Y. 2009) ..................................................................2, 3

In re Metromedia Fiber Network, Inc.,
    416 F.3d 136 (2d Cir. B.A.P. 2005).......................................................................5

In re Miller,
    263 B.R. 183 (N.D.N.Y. 2001) .............................................................................3

In re Mohar,
    140 B.R. 273 (Bankr. D.Mont. 1992) ...................................................................10

In re Mohawk Indus. Inc.,
    82 B.R. 174 (Bankr. D. Mass. 1987) ....................................................................10

In re Ontario Locomotive & Indus. Ry. Supplies, (U.S.) Inc.,
    126 B.R. 146-47 (Bankr. W.D.N.Y. 1991) ...........................................................10

In re: R.J. Reynolds Patrick County Memorial Hosp. Inc.,
    315 B.R. 674 (Bankr. W.D.Va. 2003) ...................................................................10

In re Shopper's Paradise, Inc.,
    8 B.R. 271 (Bankr. S.D.N.Y. 1980).......................................................................10

iii

In re St. Johnsbury Trucking Co., Inc.,
        185 B.R. 687 (Bankr. S.D.N.Y. 1995).............................................................4, 5

In re Suprema Specialties, Inc.,
        330 B.R. 93 (S.D.N.Y. 2005)...........................................................................3, 4

In re Weisberg,
        136 F.3d 655 (9th Cir. 1988) ..............................................................................9

In re Women First Healthcare,
        345 B.R. 131 (Bankr. D.Del. 2006) ...................................................................11

In re Worldcom,
        401 B.R. 637 (Bankr. S.D.N.Y. 2009) ...............................................................10

Maharan v. Berkshire Life Ins. Co.,
        948 F. Supp. 261 (W.D.N.Y. 1996) ....................................................................14

Mohammend v. Reno,
        309 F.3d 95 (2d Cir. 2002)...................................................................................3

Park East Corp. v. Blue Cross & Blue Shield of Greater N.Y.,
        470 F. Supp. 147 (S.D.N.Y. 1979) .....................................................................10

Shopmen's Local Union 455 v. Kevin Steel Prods., Inc.,
        519 F.2d 698 (2d Cir. 1975)...............................................................................10

Teachers Ins. & Annuity Ass'n of Am. V. Mall of America Assocs.,
        2006 BL 75779, at 9............................................................................................12

Texaco, Inc. v. Louisiana Land and Exploration Co.,
        136 B.R. 658 (M.D.La. 1992).............................................................................10

Thapa v. Gonzales,
        460 F.3d 323 (2d Cir. 2006)..................................................................................3

United Savings Ass'n of Texas v. Timbers of Inwood Forest,
        484 U.S. 365 (1988).............................................................................................12

United States v. Gerth,
        991 F.2d 1428 (8th Cir. 1993) ...........................................................................10

## STATUTES

iv

11 U.S.C. § 365(e)(1)...........................................................................................................8

11 U.S.C. § 558.................................................................................................................11

11 U.S.C. § 560..................................................................................................................8

H.R. Rep. No 109-648 .....................................................................................................11

Fed. R. Bankr. P. 9014, Advisory Committee Note (1999)..............................................3

Federal Rule of Civil Procedure 62(d).............................................................................3

## MISCELLANEOUS

Robert Gerber, *et al.*, *Drafting Around the Stay: Swaps, Forward Contracts, Repurchase
   Agreements and the Future of Pre-Petition Agreements in Bankruptcy,* 17 080403
   ABI-CLE 473 ...............................................................................................................9

Shmuel Vassar, Derivatives in Bankruptcy, 60 Bus. Law. 1507, 1530 (August 2005)...................9

v

SALANS LLP
  Claude D. Montgomery
  Paul C. Gunther
  Michael Kauffman
Rockefeller Center
620 Fifth Avenue
New York, NY 10020-2457
Tel: (212) 632-5500
Fax: (212) 632-5555

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

| | |
|---|---|
| **In re** : | **Chapter 11 Case No.** |
| : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.* : | **08-13555 (JMP)** |
| **Debtors.** : | |
| : | **(Jointly Administered)** |
| : | |

------------------------------------------------------------------x

**SWEDBANK'S REPLY IN SUPPORT OF SWEDBANK'S**
**MOTION TO STAY PENDING APPEAL OF THE ORDER GRANTING THE**
**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 362 OF THE**
**BANKRUPTCY CODE ENFORCING THE AUTOMATIC STAY AGAINST**
**AND COMPELLING PAYMENT OF POST-PETITION FUNDS BY SWEDBANK AB**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Swedbank AB (publ.) ("Swedbank") by and through its undersigned counsel, files

this reply ("Reply") to the objection ("Objection") interposed by Lehman Brothers Holdings Inc.

("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and

debtors-in-possession (together, the "Debtors"), dated April 30, 2010 and the Joinder of the

Official Committee of Unsecured Creditors (the "Creditors' Committee") of Lehman Brothers

Holdings Inc. and its affiliated chapter 11 debtors and debtors-in-possession, dated April 30,

2010 to Swedbank's Motion Pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") Rule

8005 for a Stay Pending Appeal of the Order Granting the Debtors' Motion Pursuant to Sections

105(A) and 362 of the Bankruptcy Code Enforcing the Automatic Stay Against and Compelling

Payment of Post-Petition Funds by Swedbank AB, dated April 21, 2010 (the "Stay Motion") and

in support thereof states as follows:

### Preliminary Statement

Despite the clear and irreparable loss of setoff rights arising from the Court's

determination in favor of the Debtors and the clear reference and reliance of the text of section

560 and 561 of the Bankruptcy Code, the Debtors' Objection to the Swedbank Motion for a Stay

Pending Appeal challenges Swedbank's statement of irreparable injury and argues there is no

possibility of success on the Merits.  For the reason shown below, the Debtors' arguments miss

the mark.[1]

## I.    APPLICABLE STANDARDS FOR STAY PENDING APPEAL.

Swedbank demonstrated in the Stay Motion that all four factors of the Rule 8005

test for the granting of the stay relief are present.  The Debtors' try to pick apart each factor in

order to find one that might fail and in the words of the Debtors "doom" Swedbank's request.

Importantly for this discussion, standard for stay relief proffered by the Debtors, that failure to

satisfy "one prong" of the four-factor test[2] will "doom the motion", has been rejected by more

recent authorities as too "rigid."  *In re General Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y.

---

[1] The Debtors assertions as to what evidence should be included on appeal are premature on this stay motion.  However, it is entirely appropriate for the Court to consider evidence in connection with a stay pending appeal.  On appeal the District Court may, but need not review the evidence in connection with the merits.  *See In re Bear Sterns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (Bankr. S.D.N.Y. 2008) (demonstrating district court actually considered all evidence offered by party to hold that appeal should be denied based upon insufficiency of the evidence); *In re Ames Dep't Stores, Inc.*, 320 B.R. 518, 522 (Bankr. S.D.N.Y. 2005) (holding that items that were not designated in the record, submitted to the bankruptcy court or considered by the bankruptcy court were not properly part of the record on appeal).

[2] Oddly, the Debtors attempt to import a fifth factor into the substantial harm analysis, whether Swedbank is solvent.  *See* Opposition, ¶ 19.  Although Swedbank's sound capital structure is probative of Swedbank's ability to pay any judgment, and therefore of the lack of any harm to the Debtors from any stay relief, it is not probative of the issue of whether Swedbank will incur irreparable harm if stay relief is not granted.  Unsurprisingly, the Debtors do not, because they cannot, cite any case law supporting the illogical proposition that a solvent party cannot be irreparably harmed if it loses its legal right to bring an action.

2009) (noting that "the more recent cases" have rejected the test in *In re Turner* and instead
adopted a balancing test); *see, e.g.*, *In re Adelphia*, 361 B.R. 337, 347 (S.D.N.Y. 2007)
(balancing the four factors and rejecting a "rigid rule"); *In re Suprema Specialties, Inc.*, 330 B.R.
93 (S.D.N.Y. 2005) (parenthetical).  The proper test following *In re Adelphia, supra* and *In re
General Motors, supra* implements a balancing approach where all four factors are weighed
against one another; as one recent Second Circuit case has succinctly stated in discussing the
same four-factor test in the context of a request for injunctive relief - "more of one [factor] less of
the other." *Thapa v. Gonzales,* 460 F.3d 323, 334 (2d Cir. 2006) (quoting *Mohammend v. Reno*,
309 F.3d 95, 101 (2d Cir. 2002)).  Thus, even if this Court were to decide that one of the stay
relief factors were missing it still could grant the requested relief.

The Debtors' assertion that the case law interpreting Rule 7062 and by reference
Federal Rule of Civil Procedure 62(d) is "inapplicable", is simply incorrect.  The Advisory
Committee Note discussing the 1999 amendment to Rule 8005 states that the amendment was
made not to eliminate consideration of Rule 7062 in granting relief under Rule 8005, but rather
so that Rule 62 wouldn't "apply automatically."  Fed. R. Bankr. P. 9014, Advisory Committee
Note (1999).  The Advisory Committee further stated that amended Rule 8005 "permits the
court, in its discretion, to order that Rule 7062 apply in a particular matter." *Id*.  Thus, court
decisions regarding Bankruptcy Rule 7062 and F.R.C.P. 62 continue to inform Rule 8005
jurisprudence.  *See, e.g.*, *In re Adelphia Comm. Corp.*, 361 B.R. 337, 350 (S.D.N.Y. 2007)
(noting that in analyzing whether to order movants to post a bond under Rule 8005, district
courts have "obtained guidance from [Rule 62(d)"); *In re Miller*, 263 B.R. 183, 185 (N.D.N.Y.

2001) (holding that Rule 8005 has been interpreted consistently with Rule 62, which permits the district courts to grant relief to "preserve the status quo pending an appeal").[3]

## II.    SWEDBANK WILL BE IRREPARABLY HARMED ABSENT A STAY.

### A.    Swedback Risks Substantial Harm as a Matter of Law.

Contrary to the Debtors' assertion, courts in the Second Circuit have not uniformly held that a person must face "actual and imminent" harm to qualify for stay relief pursuant Rule.  *See, e.g., In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182 (B.A.P. 2d Cir. 1996) (citing "irreparable harm" as the applicable standard); *In re Suprema Specialties, Inc.*, 330 B.R. 93 (S.D.N.Y. 2005) (same; *In re St. Johnsbury Trucking Co., Inc.*, 185 B.R. 687 (Bankr. S.D.N.Y. 1995) (same).   Nonetheless, assuming, *argumendo*, "actual and imminent harm" is the standard, it is met here.  As demonstrated in the Stay Motion, Swedbank's setoff rights will be extinguished immediately upon its payment of funds to the Debtors.  *In re Ealy*, 396 B.R. 20 (8th Cir. 2008) (loss of setoff rights occurred upon payment of party's obligation).

The Debtors' voluntary/involuntary test is a red herring designed to deflect attention from the real risk of harm faced by Swedbank.  It is a simple fact that the Debtors have not pointed to one authority within the Second Circuit holding that Swedbank will *not* lose its setoff rights upon its payment of funds.  Their resort to *ipse dixit* assertions that Swedbank's retention of its setoff rights is "self-evident" misses the basic point that setoff rights are lost when there is nothing against which to setoff.  At best, the Debtors have demonstrated that there is *no* authority in this Circuit for the proposition that Swedbank will suffer actual and imminent

---

[3] The continuing vitality of rulings regarding the four-factor stay test outside of the Rule 8005 context is demonstrated by one of the very cases cited by the Debtors.  *See In re Calpine Corp.*, 2008 WL 207841, at *4 (Bankr. S.D.N.Y. January 24, 2008) (referencing Second Circuit decisions discussing FRCP preliminary injunction standards in explicating the irreparable harm factor under Rule 8005).  *In re Calpine*, the bankruptcy court cites in discussing Rule 8005 standards, cites to Second Circuit non-8005 cases for 8005 standards.

NewYork 1348572.2

harm due to its loss of setoff rights upon payment, and that there is uncertainty outside the Second Circuit as to whether "involuntary" payments result in the loss of setoff rights. *Compare In re Gould*, 401 B.R. 415 (9th Cir. B.A.P. 2009) (holding that a payment of funds that resulted from an administrative mistake did not moot the IRS's setoff claims against a Debtor) with *In re Ealy*, 396 B.R. 20 (8th Cir. B.A.P. 2008) (holding IRS lost its right of setoff upon payment of funds to a Debtor).   Court decisions in this Circuit, included those cited by Debtors with approval, consistently state that the risk or possibility that an appeal will be mooted satisfies the irreparable harm requirement.  *In re Adelphia*, 361 B.R. 337, 348 (S.D.N.Y. 2007) ("where the denial of a stay pending appeal *risks mooting any appeal* of significant claims of error, the irreparable harm requirement is satisfied"); *In re St. Johnsbury Trucking Co., Inc.*, 185 B.R. 687, 690 (Bankr. S.D.N.Y. 1995) (holding that the risk that an appeal will be mooted constituted irreparable injury); *In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (mooted appeal is the "quintessential form of prejudice").

**B.    Swedbank Risks Substantial Harm as a Matter of Fact.**

Notably, the Debtors do not attempt to dispute the cases cited by Swedbank to demonstrate the risk of equitable mootness.  *See, e.g., In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. B.A.P. 2005).  Moreover, the cases to which Debtors cites to articulate the standard for mootness in the Second Circuit are consistent with the equitable mootness standards articulated by Swedbank.  For example, the case *In re Chateaugay Corp.,* 68 F.3d 26, 30 (2d Cir. 1995), cited with approval in Defendant's Response, clearly states that even "where effective relief could conceivably be fashioned, an appeal will be dismissed where implementation of that relief would be inequitable."  *Id.*  Even if Swedbank's setoff rights were not extinguished as a matter of law immediately upon payment of the SEK funds, Swedbank faces substantial harm due to the risk that its setoff rights will be extinguished as a practical matter prior to the

5

exhaustion of all appeals. The Debtors dispute the factual circumstances underlying Swedbank's assertion that there is a substantial risk that an appeal might be rendered equitably moot by the distribution of the estate's assets before the outcome of a successful appeal. While Debtors summarily dismiss Swedbank's equitable mootness arguments as "mere speculation and conjecture regarding [the Debtors']" yet to be confirmed plan", the Debtors conveniently neglect to mention that the plan proposes to eliminate the setoff rights of all creditors upon the occurrence of the Plan's Effective Date:

> Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against any or all of the Debtors . . . are *permanently enjoined*, on and after the Effective Date with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan from . . . (iv) *asserting any right of setoff* directly or indirectly . . . against any obligation due the Released Parties or the property of the Released Parties, except as contemplated or allowed by the Plan . . . .

*See* § 12.3, Joint Chapter 11 Plan of Lehman Brothers Holdings, Inc. and Its Affiliates Debtors, dated April 14, 2010, at 65 (emphasis added). Cases in the Second Circuit have routinely found that the risk that an estate's assets will be distributed before a party's claim can be successfully appealed is one circumstance in which equitable relief cannot be fashioned. *In re Advanced Mining Sys., Inc.,* 173 B.R. 467, 468-469 (S.D.N.Y. 1994).

The Debtors also argue that Swedbank will not be harmed because LBHI alone has over "$2.7 billion in cash investments." Objection, at 13. It is unclear how Swedbank should take any comfort in this statement, since the Debtors have not promised either to (i) segregate the funds pending decision on Swedbank's appeals, or (ii) return the funds if Swedbank is successful on appeal, given the "no setoff" proposal under the plan it would be surprising if the Debtor made such premises. Most importantly, the Debtors do not contest, and

thus concede, that a deposit account is a debt owed by the bank to the depositor and is not money held by the bank on behalf of the depositor.  This money is fungible, and once mixed with other funds, impossible to trace.  In short, the Debtors have not made any demonstration to this Court that the funds, once paid, will not be gone.[4]

## III.    SWEDBANK HAS DEMONSTRATED A SUBSTANTIAL POSSIBILITY OF SUCCESS ON APPEAL

In the Stay Motion Swedbank argued that there is a substantial possibility of success on appeal because Swedbank's exercise of its setoff rights is supported by (1) the plain meaning of the relevant provisions of the Bankruptcy Code, (2) the legislative history behind the amendments, and (3) the case law surrounding analogous Safe Harbor provisions.  The Debtors' misstatements of Swedbank's arguments in favor of the merits of Swedbank's claim do not refute the fact that there is a substantial possibility Swedbank will be successful on appeal.

For purposes of the exercise of Safe Harbor Contractual Rights pursuant to the Safe Harbor Provisions of the Code, LBHI the pre-petition debtor is the same corporate entity as LBHI whose accounts were subject to setoff.  Any limitations on Swedbank's exercise of its Safe Harbor Contractual Rights that might have been imposed by virtue of section 553, including the statutory pre-petition/post-petition separate entity distinction, constitute potential limitations arising by virtue of a provision of the Bankruptcy Code.  As such, the proffered limitations have been extinguished by sections 560 and 561 of the Bankruptcy Code.

### 1.    Plain Meaning of Bankruptcy Code Statutes.

The Debtors have not demonstrated that the plain meaning of the Bankruptcy Code does not permit Swedbank to setoff the SEK deposits against the amounts owed by the

---

[4] The Debtors' assertion that the rule referenced by Swedbank would result in irreparable harm every time a judgment was enforced is overstated.  To the contrary, the principles articulated by Swedbank limits a finding of irreparable harm only to those instances where there is a risk that a party could not seek full reimbursement after a successful appeal.

Debtors to Swedbank.  As noted in the Stay Motion, sections 560 and 561 permit Swedbank to exercise "any contractual right . . . to offset . . . amounts arising under or in connection with [the swap and master agreements] . . .shall not be stayed, avoided or otherwise limited by operation of *any provision of this title* . . . ."  11 U.S.C. § 560, 561 (emphasis added).  The Debtors simply read the highlighted phrase out of both sections 560 and 561.  Furthermore, they wholly ignore the basic rule of statutory construction, announced by the Supreme Court, that a phrase providing that a statute will have effect notwithstanding any other provision or statutes "supersedes all other laws," especially where it appears in a more recent legislative enactment.  *Cisneros v. Alpine Ridge Group,* 508 U.S. 10 (1993).

Wholly ignoring the plain language of sections 553, 560 and 561 and the binding precedent cited by Swedbank, Debtors engage in a myopic and, ultimately, failed exegesis of section 553.  The Debtors' argument that the section 553(b) exceptions to mutuality for certain *pre-petition* safe-harbor setoffs ignores the fact that sections 560 and 561 *do not apply* in the pre-petition context because to sections 560 and 561 can only be had *after* the occurrence of an *ipso facto* event specified in 365(e)(1).[5]  By their nature, all of these events either occur upon the filing of the bankruptcy petition or afterwards.  *See* Stay Motion, at 17-18.  Thus, there is no overlap between the 553(b) exceptions for transaction "of a kind" specified in sections 362(b)(17), 362(b)(27), 560 and 561, which deal with limitations on the avoidance of transfers arising from pre-petition setoff, and sections 560 and 561, which deal with setoff after the occurrence of the filing of the bankruptcy petition.  As sections 560 and 561 cannot render the

---

[5] The three *ipso facto* events are (1) the commencement of case under title 11, (2) the appointment of a trustee in a case under title 11, and (3) the insolvency or financial condition of the debtor at any time before the closing of the case.  11 U.S.C. § 365(e)(1).

553(b) exceptions "superfluous,"[6] with respect to pre-petition setoff, the Debtors' assertion of the "general versus specific" principle of statutory construction has no application here.

### 2.      Applicable Case Law.

The Debtors have not cited to a single case holding that the setoff rights exercisable by Swedbank pursuant to sections 560 and 561 are limited by section 553.[7] Indeed, the Debtors haven't cited to *any* case in which *any* Safe Harbor Provision is limited by the operation of section 553. Lacking their own authority, the Debtors attempt to distort the holding of *In re Weisberg* by citing to language that they implying that the obligation of the debtor to the broker arose pre-petition. Objection, at 17 (referring to "mutual, *pre-existing* debts") (emphasis added) (citing 136 F.3d 655, 658 (9th Cir. 1988)). However, in *Weisberg* the debtor filed his petition in November 1991, and the margin calls were issued to the debtor between December 1991 and October 1992, so it is clear that the Debtors' obligations arose post-petition. *Id.* at 658. Members of both the judiciary and leading bankruptcy practitioners have agreed with such an interpretation. *See, e.g.*, Robert Gerber, *et al.*, *Drafting Around the Stay: Swaps, Forward Contracts, Repurchase Agreements and the Future of Pre-Petition Agreements in Bankruptcy,* 17 080403 ABI-CLE 473, Am. Bankr. Institute Spring Meeting (April 3-6, 2008) (citing *Weisberg* for the proposition that section 362(b)(6) applied to "liquidation of collateral posted pre-petition as margin to cover unanswered post-petition margin calls"); Shmuel Vassar, *Derivatives in Bankruptcy,* 60 Bus. Law 1507, 1530 (August 2005) (citing *Weisberg* for the proposition that "[s]etoff is allowed regardless of whether the post-petition termination of a safe harbor contract

---

[6] The Debtors have recognized that Swedbank's interpretations of the Safe Harbor statutes and section 553 are not mutually exclusive and do not render the exceptions in section 553 "superfluous." *See* Objection, at ¶ 21 (noting that the setoff exceptions in section 553 are "inapplicable to the type of setoff that Swedbank is seeking to exercise").

[7] Counsel for Swedbank has also failed to find any such case.

is deemed to give rise to a "post-petition, or pre-petition claim, notwithstanding [section 553] requiring both claims to arise pre-petition").

In arguing that the pre- and post-petition debtor are separate entities, the Debtors attempted to cage the United States Supreme Court's holding *Bildisco* by arguing that it is limited to the context of collective bargaining agreements. *See* Objection, ¶ 30. In so doing, they ignore authority in this Circuit recognizing that *Bildisco* "laid to rest the notion that a debtor in possession should be deemed a different entity than the prepetition debtor." *In re Footstar*, 323 B.R. 566, 574 n.4 (Bankr. S.D.N.Y. 2005); *see also*, *e.g.*, *In re Durso Supermarkets, Inc.*, 1995 WL 739549, at *8 (S.D.N.Y. Dec. 14, 1995) (pre- and post-petition debtor same entity for *res judicata purposes*); *In re Ontario Locomotive & Indus. Ry. Supplies, (U.S.) Inc.*, 126 B.R. 146-47 (Bankr. W.D.N.Y. 1991) (*Bildisco* settled pre- post-question "for all time"). The authorities relied cited by the Debtors are of no avail because they either (1) pre-date *Bildisco*[8] or (2) rely on precedent that predates *Bildisco* - *In re Genuity*, 323 B.R. 79, 82 (Bankr. S.D.N.Y. 2005) (citing *Shopmen's Local Union 455 v. Kevin Steel Prods., Inc.*, 519 F.2d 698, 704 (2d Cir. 1975). The one true post-*Bildisco* precedent cited by the Debtor, *In re Worldcom*, 401 B.R. 637, 649 (Bankr. S.D.N.Y. 2009), recognizes *Bildisco's* continuing validity, but holds that debtor and debtor-in-possession are different entities for the limited purposes of bringing avoidance actions under the Bankruptcy Code. The Debtors' statement that *Bildisco* is "inconsistent with this Circuit's longstanding bankruptcy jurisprudence" is simply incorrect.[9]

---

[8] *In re Shopper's Paradise, Inc.*, 8 BR. 271, 278 (Bankr. S.D.N.Y. 1980); *Park East Corp. v. Blue Cross & Blue Shield of Greater N.Y.*, 470 F. Supp. 147, 150 (S.D.N.Y. 1979).

[9] While some courts have continued to recognize the separate entity distinction in certain, limited contexts, *see*, *e.g.*, *Biltmore Assocs., LLC. v. Twin City Fire Ins. Co.*, 572 F.3d 663, 668-69 (9th Cir. 2009) (recognizing distinction but concluding that pre and post-petition debtor were same entity for purposes of coverage exclusion provision in D&O policy), the cases recognizing the continuing validity of *Bildisco* are many. *See*, *e.g.*, *In re: R.J. Reynolds Patrick County Memorial Hosp. Inc.*, 315 B.R. 674, 680 (Bankr. W.D.Va. 2003) ("[*Bildisco*] "defines a Chapter 11 debtor in possession as the same entity as the pre-Chapter 11 debtor"); *In re Cajun Elec. Power Co-op, Inc.*, 230 B.R. 693, 705 (Bankr. M.D.La. 1999) (recognizing debtor-in-possession as a separate entity "would have

3.    **Legislative History.**

Swedbank demonstrated that the Financial Netting Improvement Act of 2006 demonstrates Congress' intent to permit parties to financial contracts to exercise their contractual setoff rights free of the constraints of the Bankruptcy Code, including the requirement that both debts be "mutual," or arise pre-petition.  Stay Motion, at 15.  The Debtors describe, inaccurately, Swedbank's position as stating that the FNIA amendments "removed the mutuality requirement from the safe-harbored exceptions to the automatic stay."  Objection, at 19.  This is incorrect. Any mutuality requirements under non-bankruptcy law remain and Swedbank has never asserted to the contrary.  *See* Motion at p. 13.  The FNIA amendments eliminated only any unique Bankruptcy Code mutuality under section 553, *i.e.,* or the pre-petition post-petition requirement. This change was in line with the purpose of the FNIA amendments – "to update the language to reflect current market and regulatory practices, and help reduce systemic risk in the financial markets by clarifying the treatment of certain financial products in cases of bankruptcy or insolvency."  H.R. Rep. No 109-648, available at 2006 WL 6165926 at *1587.

Swedbank's interpretation of the expansive rights recognized in the Safe Harbor Provisions finds additional support in Bankruptcy Code section 558, which preserves the debtor's setoff rights.  *See* 11 U.S.C. § 558 (preserving for the estate any defenses available to the debtor); *see also, In re Women First Healthcare,* 345 B.R. 131, 134 (Bankr. D.Del. 2006) (noting that although section 553 and 558 preserve the rights of setoff, its only section 553 that

---

*(cont'd from previous page)*

the virtual effect of rejecting executory contracts covered by section 365(f)"); *In re Mohar*, 140 B.R. 273 (Bankr. D.Mont. 1992) (rejecting separate entity theory in section 553 analysis); *In re Allen*, 135 B.R. 856, 868 (Bankr. N.D. Iowa 1992) (*Bildisco* "laid to rest" separate entity theory); *Texaco, Inc. v. Louisiana Land and Exploration Co.*, 136 B.R. 658, 669 (M.D.La. 1992) (*Bildisco* "squarely held that a debtor-in-possession is the same 'entity' as the prepetition debtor"); *In re Mohawk Indus. Inc.*, 82 B.R. 174, 177 (Bankr. D. Mass. 1987) (holding that after *Bildisco* the new entity theory "is no longer supportable"); *cf. United States v. Gerth*, 991 F.2d 1428, 1436 (8th Cir. 1993) (holding that when a debtor assumes an executory contract the debtor and the debtor-in-possession are the same entity for purposes of section 553); *In re Durham*, 87 B.R. 300, 302 (Bankr.D.Del. 1988) (for purposes of section 365 the debtor-in-possession is not a new entity).

prohibits the setoff of non safe harbor pre-petition claims against post-petition debts).  Given that

the "technical changes" referenced by the Debtors were intended to clarify existing safe harbor

protections for modern financial contracts.  It would not make sense for Congress to ensure that

only the Debtors could exercise setoff rights under safe harbor contracts.  *See United Savings*

*Ass'n of Texas v. Timbers of Inwood Forest,* 484 U.S. 365, 371 (1988) (noting that "statutory

construction is a holistic endeavor").

## IV.    LBHI HAS NOT DEMONSTRATED THAT IT WOULD BE SUBSTANTIALLY HARMED BY A STAY ORDER.

LBHI has not cited to a single legal authority for its unfounded assertion that the

fluctuation in the relative value of United States Dollars and Swedish Kronor[10] during the

pendency of Swedbank's appeal will cause "substantial harm" to LBHI.  To the contrary, case

law supports the proposition that fluctuations in the value of property do not constitute

substantial harm.  *See, e.g.*, *GFI Sec., LLC v. Tradition Asiel Sec. Inc.*, 21 Misc.3d 1111, at *10

(Sup.Ct. N.Y.Cty. 2008) *rev'd in part or other grounds*, 59 Ad.3d 271 (1st Dep't 2009) (no

irreparable harm demonstrated even though share prices had shown a 55% decline).  Assertions

of such harms due to fluctuation are speculative since the fluctuations can favor either party.

*See, e.g.*, *Teachers Ins. & Annuity Ass'n of Am. V. Mall of America Assocs.*, 2006 BL 75779, at

*9 (D.Minn. July 7, 2006) ("purported harm" resulting from "market fluctuations" in value of

mall property was "speculative" and just as likely to fluctuate in other party's favor).

Furthermore, it is hornbook law that damages compensable in money and capable of calculation

are not irreparable.  *Brenntag Intern. Chemicals, Inc. v. Bank of India,* 175 F.3d 245, 249-50 (2d

Cir. 1999) (granting a motion for preliminary injunction noting that injuries compensated by

---

[10] LBHI incorrectly referred to Danish Krone in the 362 Motion.  *See* 362 Motion, ¶ 9.

money damages usually do not constitute irreparable harm, except where the obligation is owed

by an insolvent).

Lacking legal support for its faulty proposition, LBHI has attempted to

manufacture facts allegedly demonstrating the "volatility" and "decrease" in value of SEK

relative to USD by cherry-picking January 11, 2010 as a valuation reference date. January 11th

appears to have been chosen without reference to any important factual or procedural occurrence

in this litigation, and in order to exaggerate the alleged volatility of the SEK. The January 11

date chosen by the debtors posted the second most favorable USD-SEK exchange rate for 2010.

As further demonstrated by the Supplemental Stenberg Declaration, the USD-SEK exchange rate

on the date that the 362 Motion was filed was close to the exchange rate on April 30, 2010.

Supp. Stenberg Decl. ¶ 7. More importantly, the exchange rate today is *more favorable* to LBHI

than on (i) the date by which all SEK deposits had been made into the SEK Account, (ii) the date

on which LBHI requested confirmation that SEK would not exercise its setoff rights, and (iii),

the date on which SEK stated that it would. Supp. Stenberg Decl. ¶ 7. Thus, even assuming,

*arguendo*, that the fluctuations in the can in some circumstances constitute irreparable harm,

LBHI has not demonstrated the threat of any such harm here.

## V.    LBHI HAS NOT DEMONSTRATED THAT A
## STAY ORDER WILL HARM THE PUBLIC INTEREST

The Debtors once again engage in pure speculation in arguing that the public

interest would be substantially harmed by a stay of the proposed order. Engaging in precisely

the "rank speculation" that they warn against, Stay Objection, ¶ 2, the Debtors imagine a parade

of horribles that will befall them if the stay relief is granted, alleging that unidentified "other

creditors" will step out from the shadows to assert their setoff claims en masse. Assuming,

*arguendo*, that parties enforcing their rights under derivatives contracts would constitute a harm

13

to the public interest, there is no indication that such a result would obtain if the stay relief is granted.  The Debtors' own inaction during the more than 16 month since Swedbank informed the Debtors that it would enforce its setoff rights belies their claim of substantial harm.  Ultimately, the Debtors fail to explain how Swedbank's exercise of its Congressionally mandated rights of setoff under the Safe Harbor contracts will cause them substantial harm.

## VI.    **SWEDBANK SHOULD NOT BE REQUIRED TO POST A BOND.**

The Debtors argue that solvency is never a sufficient ground for waiving the bond requirement in reliance upon superseded authority.  *See* Objection, ¶ 38 (citing *Maharan v. Berkshire Life Ins. Co.*, 948 F. Supp. 261, 262 (W.D.N.Y. 1996)).  More recent case law from the same jurisdiction holds that evidence that a party is capable of paying the judgment if unsuccessful on appeal is sufficient to excuse the bond requirement.  *Frommert v. Conkright*, 639 F. Supp.2d 305, 313 (W.D.N.Y. 2009) ("if the district court is confident that the judgment debtor will continue to have sufficient funds to satisfy the judgment, the court may dispense with the bond requirement"); *accord Dillon v. City of Chicago,* 866 F.2d 902, 904-05 (7th Cir.1988); *Arban v. West Pub. Corp.,* 345 F.3d 390, 409 (6th Cir.2003).

The district court can be confident that a bond is not necessary in this instance because, as documented in Debtors' Response, there is no risk that Debtors will not be paid in the event that Swedbank's appeal is unsuccessful.  Swedbank is well capitalized is within the reach of the Court due to its offices in New York and its filing of proofs of claims in this the Debtors cases and its demonstration of an unqualified willingness to pay the Debtors in the event that all appeals are unsuccessful.

To the extent the Court determines for purposes of a bond that interest on the amount held in the Setoff Account should be equivalent to interest at the federal post judgment rate, 28 U.S.C. § 1961, the appropriate interest calculation is 0.45% per annum.  *See* Supp.

14

Stenberg Decl. at ¶ 10.  If the bonding requirement were extended for two years, the amount in question would be $103,311.60.  *Id.*

## **Relief Requested**

Swedbank seeks (i) a stay of the Order entered by this Court, and (ii) waiver of any requirement that Swedbank post a bond ("Relief Requested").

WHEREFORE, Swedbank respectfully requests that the Court grant the Motion, grant Swedbank the Relief Requested and grant such other and further relief as is just and proper.

Dated: New York, New York
       May 4, 2010

SALANS LLP

By: /s/ Claude D. Montgomery
    Claude D. Montgomery, Esq.
    Paul C. Gunther Esq.
    Michael Kauffman, Esq.
620 Fifth Avenue
New York, New York  10020
(212) 632-5500

15