Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------x
                                        :
In re                                   :   Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :   08-13555 (JMP)
                                        :
                Debtors.                :   (Jointly Administered)
                                        :
-------------------------------------------------------------------x
```

### DEBTORS' OBJECTION TO THE MOTION OF THE SUNCAL DEBTORS FOR AN ORDER DETERMINING THAT THE AUTOMATIC STAY DOES NOT APPLY; OR IN THE ALTERNATIVE, GRANTING RELIEF FROM STAY

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

   Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, including Lehman Commercial Paper Inc. ("LCPI"), as debtors and

debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates,

"Lehman"), submit this objection ("Objection") to the motion of the SunCal Debtors for an

Order Determining that the Automatic Stay Does Not Apply; or in the Alternative, Granting

Relief From Stay, filed April 21, 2010 [Docket No. 8539] (the "Motion"), and respectfully state:

## PRELIMINARY STATEMENT[1]

1.      The Debtors remain the beneficiaries of valuable property interests

including liens on property in California, that secure over $2 billion on loans made to a number

of the SunCal Debtors.  Despite an overwhelming lack of equity in this collateral, the SunCal

Debtors have systematically violated the Debtors' automatic stay in an effort to deprive the

Debtors of these assets and to divert the collateral to the use and benefit of the SunCal Debtors'

insiders.

2.      In November 2008, the SunCal Debtors sought blanket relief from the

automatic stay in LCPI's bankruptcy.  The Court denied the broad relief without prejudice and

instructed the SunCal Debtors to return "with a targeted motion focused on the particular relief

for cause shown."  November 20, 2008 Hearing Transcript at 78-79 (Declaration of Allen S.

Blaustein In Support of Debtors' Objection to the Motion of the Suncal Debtors for an Order

Determining that the Automatic Stay Does Not Apply; or in the Alternative, Granting Relief

From Stay (the "Declaration", Exh. A)).  Instead, the SunCal Debtors asked the court in *their*

bankruptcy cases pending in the Central District of California (the "California Court") to

authorize their use of encumbered cash.  In ruling on LCPI's subsequent motion to enforce the

stay, on January 20, 2009, the Court warned the SunCal Debtors' counsel that they were "in the

zone of a willful violation" of the automatic stay and reiterated that the SunCal Debtors must

seek relief from stay on all issues regarding property of LCPI's estate.  Emergency Hearing

Transcript at 19 (emphasis added) (Declaration, Exh. B).

---

[1]      Capitalized terms used in this Preliminary Statement, but not otherwise defined below, shall have the meanings ascribed to them elsewhere in this Objection.

3.    Within days of the Court's January 2009 ruling, however, the SunCal Debtors filed a plan of reorganization (the "Plan") in the California Court, which was premised on equitably subordinating LCPI's claims and transferring its liens to the SunCal Debtors' estates.  Within weeks, the SunCal Debtors obtained an order from the California Court that LCPI's stay did not apply to the prosecution of equitable subordination claims.  After LCPI incurred a year's worth of defense costs, the Bankruptcy Appellate Panel of the Ninth Circuit (the "BAP") held that both the SunCal Debtors' equitable subordination action and their Plan violated LCPI's automatic stay (the "BAP Decision").  For months after the BAP's ruling, the SunCal Debtors refused to dismiss the equitable subordination action against LCPI, until, in March 2010, the California Court ordered that they do so.  Only then did the SunCal Debtors file the motion that this Court directed them to file in November 2008.

4.    Having ignored the Court's directions and ultimately losing in California, the SunCal Debtors essentially have come back to this Court saying 'no harm, no foul,' and that the stay should be lifted by this Court.  The SunCal Debtors, however, do not come before the Court with a blank slate.  The record is clear that the SunCal Debtors repeatedly and willfully violated the automatic stay, this Court's November Stay Order, its January 30, 2009 ruling, and the BAP Decision.  The SunCal Debtors should not now be excused or rewarded for their knowing violations of the automatic stay by being granted relief from stay.  Under these circumstances, it is difficult to envision a more unsympathetic and meritless case for granting relief from the automatic stay.  Accordingly, this Court can and should exercise its discretion to deny the Motion.  Furthermore, the Court should award attorneys' fees and costs as an additional

remedy for the SunCal Debtors' contempt of the automatic stay, this Court's[2] November Stay

Order, its January 30, 2009 ruling, and the BAP Decision.

      5.      Furthermore, the SunCal Debtors fail to meet their burden of

demonstrating cause for lifting the stay.  As a preliminary matter, the SunCal Debtors falsely

assert that LBHI's automatic stay is inapplicable to their action in the California Court.  As set

forth more specifically below, LBHI's automatic stay is clearly applicable.  The SunCal Debtors

are asking this Court to strip both LBHI and LCPI of the fundamental protections afforded by the

automatic stay.  The SunCal Debtors' prosecution of their claims against LCPI may result in the

California Court ruling upon matters with a broader impact on the Debtors' bankruptcy cases,

including with respect to conduct that the SunCal Debtors' special litigation counsel has

threatened to assert as grounds for RICO claims against the estates and Alvarez & Marsal.  The

SunCal Debtors raise this alleged conduct as instances of post-petition "inequitable conduct",

which the SunCal Debtors use to support equitable subordination.  Another court should not rule

on claims of supposed misconduct by professionals of these estates, particularly where it could

result in findings that produce administrative liabilities or have other collateral impact on these

cases.  The equitable subordination action bears much too close a nexus to this case to warrant

granting relief from the automatic stay, and leaving the rights of creditors in these cases

unprotected.

---

[2]      And, if necessary, upon an appropriate motion and order of the California Court lifting the
automatic stay.

# ARGUMENT

## I.    THE SUNCAL DEBTORS' MOTION SHOULD BE DENIED DUE TO THEIR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY

6.    This Court can and should exercise its discretion to deny the Motion as a result of the SunCal Debtors' clear and inexcusable violations of LCPI's automatic stay.[3]  The Court should also award attorneys' fees and costs as an additional remedy for the SunCal Debtors' contempt of the automatic stay, two of this Court's orders, and the BAP's Decision.

### A.    The Automatic Stay

7.    The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envt'l Prot.*, 474 U.S. 494, 503 (1986) (quotation omitted).  Section 362's stay against "the commencement or continuation . . . of a judicial . . . proceeding" or "any act to obtain possession . . . or to exercise control over property of the estate" (11 U.S.C. § 362(a)(1) and (3)) "is crucial for the benefit and protection of creditors and the central bankruptcy objective of equal treatment of creditors."  *Delta Air Lines, Inc. v. Bibb (In re Delta Air Lines)*, 359 B.R. 454, 459 (Bankr. S.D.N.Y. 2006).  It "prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding."  *AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990).  The stay provides the debtor with a "breathing spell" after the commencement of a chapter 11 case,

---

[3]      The "SunCal Debtors" are SunCal Communities I LLC, SunCal Communities III LLC, SCC/Palmdale LLC, Acton Estates LLC, SunCal Beaumont LLC, SunCal Emerald Meadows LLC, SunCal Johansson Ranch LLC, SunCal Bickford Ranch LLC, SunCal Summit Valley LLC, Seven Brothers LLC, Kirby Estates LLC, SJD Partners Ltd., SJD Development Corp., SCC Communities LLC, North Orange Del Rio Land LLC, Tesoro SF LLC, SunCal Marblehead, LLC, SunCal Heartland, LLC, LB/L-SunCal Northlake LLC, LB/L-SunCal Oak Valley LLC, SunCal PSV LLC, Delta Coves Venture LLC, SunCal Oak Knoll, LLC.

shielding the debtor from harassment at a time when the debtor's personnel should be focusing

on the administration of the chapter 11 case. *Fid. Mortgage Investors v. Camelia Builders, Inc.*

*(In re Fid. Mortgage Investors)*, 550 F.2d 47, 53 (2d Cir. 1976) (Bankruptcy Act case), *cert.*

*denied*, 429 U.S. 1093 (1977).[4]

        8.     Courts have recognized that if creditors could violate the stay while

risking only an award of attorneys' fees, they would do so routinely, making a mockery of the

stay. *See Computer Comm., Inc. v. Codex Corp. (In re Computer Comm., Inc.)*, 824 F.2d 725,

731 (9th Cir. 1987) ("Judicial toleration of an alternative procedure of self-help and post hoc

justification would defeat the purpose of the automatic stay."); *Shimer v. Fugazy (In re Fugazy*

*Express., Inc.)*, 982 F.2d 769, 776 (2d Cir. 1992) ("Nothing in the Code suggests that a party is

entitled to engage in 'self-help' in derogation of the automatic stay.").

**B.**     **The SunCal Debtors' Violations of the Automatic Stay**

        9.     The SunCal Debtors' violations of the automatic stay were intentional,

unnecessary, and in all respects *inexcusable*.

        **1.**     **This Court Denies the SunCal Debtors' November 2008 Motion for**
                **Relief  from Stay**

        10.     On November 10, 2008, the SunCal Debtors and certain of their non-

debtor affiliates filed a motion with this Court seeking relief from the automatic stay  [Docket

No. 1439] (the "November Stay Relief Motion").  The SunCal Debtors sought free rein to

---

[4]     The Second Circuit has long held that when an entity files a bankruptcy petition, the automatic
stay is effective immediately and any proceedings filed after the stay takes effect are void. *E.*
*Refractories Co. Inc. v. Forty-Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (citing *Rexnord*
*Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994); *48th St. Steakhouse, Inc. v. Rockefeller*
*Group, Inc*. (*In re 48th St. Steakhouse, Inc.*), 835 F.2d 427, 431 (2d Cir. 1987)); *Hearst Magazines v.*
*Geller*, 2009 U.S. Dist. LEXIS 30481, at *3 (S.D.N.Y. Mar. 24, 2009).  "Moreover, since the bankruptcy
stay is automatic, '[t]he action is void even where the acting party had no actual notice of the stay.'" *Id.*
(quoting *Dalton v. New Commodore Cruise Lines Ltd.*, 2004 U.S. Dist. LEXIS 2590, at *2 (S.D.N.Y.
Feb. 24, 2004)).

generally administer their bankruptcy cases without regard to the automatic stay or the

jurisdiction of this Court, even when affecting LCPI's property or interests.

11.    This Court rejected the request unequivocally:

> [T]he jurisprudence surrounding the automatic stay and the circumstances
> for a judge in this circuit to grant relief from the stay happen to be very
> well established. There's absolutely nothing about the circumstances
> described by counsel for the [the SunCal Debtors] that takes the situation
> out of the normative case law that guides this Court. Just because
> [LCPI's] secured claim happens to be a show stopper, from the
> perspective of the debtors in Southern California doesn't mean that the
> secured claim is not entitled to all of the protections that Section 362
> provide . . . . And that's the way it will remain until such a time as one of
> the following things occurs. Either the [the SunCal Debtors] move again
> with a targeted motion focused on the particular relief for cause shown or
> the parties, following discussions, agree by stipulation to limited relief
> from the automatic stay.

November 20, 2008 Hearing Transcript at 78-79 (Declaration, Exh. A). An order denying the

November Stay Relief Motion was entered the following day [Docket No. 1647] (the "November

Stay Order") (Declaration, Exh. C).

12.    Part of the relief sought by the SunCal Debtors in the November Stay

Relief Motion was leave to file a motion in their bankruptcy cases "to authorize the use of

Lehman's cash collateral."  November Stay Relief Motion ¶ 14.  In *complete* disregard of this

Court's November Stay Order and the Bankruptcy Code, on January 16, 2009, certain of the

SunCal Debtors filed a motion in their bankruptcy cases seeking authority to surcharge LCPI's

cash collateral under section 506(c) of the Bankruptcy Code, or, in the alternative, to use LCPI's

cash collateral pursuant to section 363 of the Bankruptcy Code (the "Cash Collateral Motion")

(Declaration, Exh. D).

13.    At the Emergency Hearing conducted by this Court on January 30, 2009, to determine whether the SunCal Debtors' attempt to use LCPI's cash collateral had violated LCPI's automatic stay, the Court admonished the SunCal Debtors' counsel:

> The only thing that is before me now, and I think I've already made clear what my position is, is that you have no stay relief. You know you have no stay relief. And that denial of the motion brought by you and your local counsel, Morgan Lewis & Bockius, in November speaks for itself and there is a final order which denies that motion. The legal consequences of that denial are what they are. I have no knowledge, and I don't expect to get that knowledge now as to what happened in California. To the extent relevant, I'll learn it in due course. The only thing which is before me is an emergency motion to enforce the automatic stay. It is enforced to the extent applicable. I'm not expanding it nor am I taking away from counsel the ability to reach agreements to modify it. **But if you don't come here and seek consensual relief from stay or relief from stay with appropriate motion practice, you are at full risk as is your client. Act accordingly . . . .** As you well know as an experienced bankruptcy lawyer, careful lawyers almost always, when there's a close question, seek relief from stay to avoid the very severe sanctions that flow from – especially flow from willful violations of the stay. You're in the zone of a willful violation.

Emergency Hearing Transcript at 16-17, 19 (emphasis added) (Declaration, Exh. B).

### 2.    The SunCal Debtors Seek Equitable Subordination Without Requesting Relief from the Automatic Stay

14.    The November Stay Relief Motion also sought leave to "seek[] confirmation of a plan of reorganization or liquidation that may impair Lehman's claims or interests." November Stay Relief Motion ¶ 14. Once again, the SunCal Debtors disregarded the November Stay Order and the Court's January 30, 2009 admonitions. On February 4, 2009, the SunCal Debtors filed the Plan, (Declaration, Exh. E)., which was premised on: (1) equitably subordinating the claims of LCPI, Lehman ALI, Inc. ("ALI"), Northlake Holdings LLC, and OVC Holdings LLC (collectively, the "Lehman Lenders") to *all* of the SunCal Debtors' allowed unsecured claims, (2) transferring the Lehman Lenders' liens to the SunCal Debtors' estates, (3) selling the real property that constitutes the Lehman Lenders' collateral (while eliminating the

Lehman Lenders' credit bid rights), and (4) using the proceeds of the sale of the properties to satisfy the claims of the SunCal Debtors' unsecured creditors.

### 3. The BAP Rules the SunCal Debtors' Equitable Subordination Action and Plan Violate the Automatic Stay

15.    On January 23, 2009, in deference to the California Court's authority to enforce the automatic stay in the SunCal Debtors' chapter 11 cases, LCPI and ALI filed motions for relief from the stay against eight of the SunCal Debtors in their bankruptcy cases to foreclose on the collateral securing the loans that were in default (the "California Stay Relief Motions"). The SunCal Debtors argued that the California Stay Relief Motions should be denied because the SunCal Debtors were entitled to equitably subordinate LCPI's claims and cause LCPI's liens to be transferred to the SunCal Debtors' estates. *See* Declaration, Exh. F.  On March 10, 2009, the California Court denied the California Stay Relief Motions (the "California Denial Orders").  At the request of the SunCal Debtors, it also ruled that the SunCal Debtors could "seek to subordinate the claim of [LCPI] . . . and/or seek to transfer a lien securing a subordinated claim to the estate . . . via an adversary proceeding" in the SunCal Debtors' bankruptcy cases "without violating [LCPI's] automatic stay."  LCPI appealed the California Denial Orders to the BAP.

16.    On March 27, 2009, the California Court issued an order granting the SunCal Debtors' motion for leave to file a Second Amended Complaint in an existing adversary proceeding in order to include an equitable subordination claim against LCPI (the "Equitable Subordination Action").  On July 10, 2009, the SunCal Debtors filed a Third Amended Complaint that included five claims against LCPI: equitable subordination (claim 1), fraudulent transfer (claim 5), lien avoidance (claim 7), disallowance of claims and liens (claim 8), and preservation of claims and liens for the SunCal Debtors' estates (claim 9).  (Declaration, Exh. G).

17.    Notably, if successful, the primary beneficiaries of the Equitable Subordination Action will be two of the SunCal Debtors' insiders: SCC Acquisitions, Inc. (an entity that is wholly owned by Bruce Elieff), and Bruce Elieff.  These insiders are personally liable under indemnities given to bond issuers to secure over $100 million in bonds issued by the bond issuers for the benefit of third parties who are claimants of certain of the SunCal Debtors. If equitable subordination is awarded, such claimants will be paid from the Lehman Lenders' collateral rather than by the bond issuers and as a result, the insiders will avoid personal liability to the bond issuers.

18.    On December 15, 2009, the BAP reversed the California Denial Orders, holding that the "[SunCal] Debtors' subordination action seeks affirmative control over property of [LCPI's] bankruptcy estate by proposing to alter the priority of [LCPI's] claim and the transfer of [LCPI's] lien rights to [the SunCal] Debtors' estate.  Thus, equitable subordination seeks affirmative relief: the modification of a claimant's valid claim and property interest. . . . Accordingly, **we find the adjudication of [the SunCal] Debtors' equitable subordination claim violates [LCPI's] automatic stay."** *Lehman Commercial Paper, Inc. v. Palmdale Hills Prop., LLC (In re Palmdale Hills Prop., LLC)*, 423 B.R. 655, 667 (BAP 9th Cir. 2009) (emphasis added).

19.    The BAP reversed and voided those portions of the California Denial Orders "that find [the SunCal] Debtors may prosecute an adversary proceeding, or propose a reorganization plan, seeking to equitably subordinate [LCPI's] claim and transfer its liens to the estate in the California bankruptcy case without first obtaining relief from the automatic stay in the New York bankruptcy case." *Id*. at 668.  Consistent with what this Court has instructed the

SunCal Debtors all along, the BAP stated that this Court "must have the final say as to whether the automatic stay applies to the bankruptcy case before it." *Id.*

> **4.      The SunCal Debtors' Continued Prosecution of the Equitable Subordination Action and Plan Subsequent To The BAP's Ruling Violate the Automatic Stay**

20.     In *complete* disregard of this Court's November Stay Order, its January 30, 2009 ruling, the BAP Decision, and the Bankruptcy Code, the SunCal Debtors took no action to dismiss the Equitable Subordination Action as to LCPI or withdraw their Plan, even after the BAP released its Decision on December 15, 2009.

21.     The SunCal Debtors would likely argue there were no stay violations because of their contention that they "had no reason to seek relief from stay" due to their characterization of a ruling by the California Court that certain loans by LCPI to the SunCal Debtors that were subsequently transferred by LCPI to Fenway Capital under a Master Repurchase Agreement between LCPI and Fenway Capital (the "MRA") were not simply transferred for security to Fenway Capital, but were "sold" (the "MRA Ruling"). *See* Motion ¶ 63.

22.     The SunCal Debtors' argument is simply unavailing. Not all of the loans that LCPI made to the SunCal Debtors that are subject to the Equitable Subordination Action were "sold" or otherwise transferred to Fenway Capital. In both the Second Amended Complaint and Third Amended Complaint, the SunCal Debtors' claims against LCPI stemmed from three loans, the "Ritter Ranch Mezz Loan," the "Ritter Ranch Loan," which includes the "Ritter Ranch Term Loan" and the "Ritter Ranch Revolver Loan," and the "SunCal Communities I Loan." (Declaration, Exh. H and Exh. G, respectively). The multi-million dollar Ritter Ranch Revolver Loan was never "transferred" to Fenway Capital. Additionally, the Ritter Ranch Mezz

Loan was not a part of the MRA and has never been "transferred."[5]  The MRA Ruling was made

during a June 30, 2009 hearing, with a subsequent written order dated October 2, 2009.  Even

after the MRA Ruling, the SunCal Debtors continued to pursue claims against LCPI with respect

to the Ritter Ranch Mezz Loan and the Ritter Ranch Revolver Loan, loans that were never

transferred to Fenway Capital.  The BAP was well aware of the SunCal Debtors' contention that

LCPI did not own any of the loans at issue.  *See In re Palmdale Hills*, 423 B.R at 662-663.  The

BAP rejected that argument, holding the SunCal Debtors' Equitable Subordination Action

violated LCPI's automatic stay.  *Id.* at 668.  The California Court also recently stated that it

"always understood that there were sold and that there were unsold loans."  (Declaration, Exh.

I).[6]

23.    It was not until a hearing before the California Court on March 8, 2010,

three months after the BAP Decision was issued, that the California Court dismissed the claims

---

[5]    The Debtors discuss these issues further in Docket No. 8260, incorporated by reference herein. The SunCal Debtors rely on an unsigned document – the *Stipulation Valuing Certain Collateral and Preserving Certain Liens* – to argue that LCPI conceded that it would not invoke its automatic stay with respect to the Ritter Ranch Mezz Loan.  Motion ¶ 36, ¶ 36 n.22.  The SunCal Debtors do not and cannot cite to an order from the California Court in support of this statement.  That is because the purported "stipulation" was not signed by LCPI and was not filed with the California Court.  *See* O'Keefe Decl., Ex. M at 116.

[6]    The SunCal Debtors' further attempts to excuse their violations of LCPI's automatic stay after the BAP's ruling are equally unavailing.  The BAP held that the equitable subordination claim violated LCPI's automatic stay, but the SunCal Debtors continued to pursue this claim because, they contend, "(1) motions to dismiss were already pending; (2) the SunCal Debtors were aware of authority that LCPI could be deemed a non-party without the need for affirmative dismissal; and (3) based on [the California Court's ruling], Judge Smith had found that LCPI owned little or none of the loans at issue."  Motion ¶ 65.  Putting aside the "merits" of these arguments (none), there is simply no justification for the SunCal Debtors' unilateral decision to continue pursuing claims against LCPI in violation of court orders.  They had only two choices in light of the BAP's Decision: "seek relief from stay or initiate the equitable subordination action against [LCPI] in the New York bankruptcy case."  *In re Palmdale Hills,* 423 B.R. at 668.  If the SunCal Debtors believed their arguments had merit, they should have immediately raised them before this Court.  It was not for them to decide for themselves whether the stay applied.

against LCPI.[7]  Thus, the SunCal Debtors continued to willfully violate LCPI's automatic stay

for an additional three months after the BAP's ruling by continuing to prosecute the Equitable

Subordination Action against LCPI.  It was only after their claims against LCPI were dismissed

that the SunCal Debtors filed their Motion.

24.     Finally, to this day, the SunCal Debtors continue to prosecute a Plan that

contemplates equitably subordinating LCPI's claims and transferring its liens to the SunCal

Debtors' estates, a present and ongoing willful violation of LCPI's automatic stay.  (Declaration,

Exh. K).

*** 

25.     The SunCal Debtors repeatedly and willfully violated the automatic stay,

this Court's November Stay Order, its January 30, 2009 ruling, and the BAP Decision.  The

SunCal Debtors should not now be excused or rewarded for their wrongdoing by being granted

relief from stay.  Accordingly, this Court should deny the Motion.  Furthermore, the Court

should, upon appropriate motion, award attorneys' fees and costs as an additional remedy.[8]

---

[7]     The California Court subsequently issued a written order on April 12, 2010 (Declaration, Exh. J).

[8]     The Second Circuit has held that "[f]or [non-individual] debtors, [civil] contempt proceedings are
the proper means of compensation and punishment for willful violations of the automatic stay."  *Maritime
Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*, 920 F.2d 183, 186-187 (2d Cir. 1990)
(citing *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc.* (*In re Crysen/Montenay*), 902 F.2d 1098,
1104 (2d Cir. 1990)).  Where, as here, a party has knowingly violated the automatic stay in deliberate
disregarded of this Court's rulings, a finding of civil contempt and a monetary award is entirely
appropriate.  *See Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51, 57 (2d Cir. 1976)
(allowing imposition of costs, including reasonable attorneys' fees, under civil contempt powers for acts
which bankruptcy judge found were done with "knowledge" of automatic stay and "deliberate[]"
disregard of bankruptcy rules regarding requirements for relief), *cert. denied*, 429 U.S. 1093, 97 S. Ct.
1107, 51 L. Ed. 2d 540 (1977).  In deference to the California Court, LCPI is not seeking attorneys' fees
and costs from the period beginning on February 21, 2009, when the California Court orally denied the
California Stay Relief Motions, through December 15, 2009, when the BAP issued its Decision.

## II.   THE SUNCAL DEBTORS DO NOT MEET THEIR BURDEN OF DEMONSTRATING CAUSE FOR LIFTING THE AUTOMATIC STAY

26.     Not only should the SunCal Debtors be denied relief from the automatic stay due to their knowing violations of the stay, but, for the reasons set forth below, they should also be denied relief from stay because they have failed to demonstrate cause to lift the stay. However, the Court should defer consideration of the SunCal Debtors' failure to show cause until after it determines the extent of the costs of the SunCal Debtors' violations.

27.     Section 362(d) of the Bankruptcy Code provides that a party may be entitled to relief from the automatic stay under certain circumstances.  11 U.S.C. § 362(d); *In re Eclair Bakery Ltd.*, 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000).  Specifically, relief from the stay will be granted only where the party seeking relief demonstrates "cause":

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1).[9]  Section 362(d)(1) does not define "cause."  However, courts in this Circuit have determined that in examining whether cause exists they "must consider the particular circumstances of the case and ascertain what is just to the claimants, the debtor, and the estate."  *City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983).

28.     The seminal decision in this Circuit on whether cause exists to lift the automatic stay is *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Indus.,*

---

[9]     Sections 362(d)(2)-(4) of the Bankruptcy Code provide grounds for relief from the stay that are not applicable to the Motion.

*Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). *See Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999) (vacating District Court order granting stay relief where Bankruptcy Court had not applied *Sonnax* factors, made only sparse factual findings, and ultimately did not provide appellate court "with sufficient information to determine what facts and circumstances specific to the present case the court believed made relief from the automatic stay appropriate."). In *Sonnax*, the Second Circuit outlined twelve factors to be considered when deciding whether to lift the automatic stay:

> (1) whether relief would result in a partial or complete resolution of the issues;
>
> (2) lack of any connection with or interference with the bankruptcy case;
>
> (3) whether the other proceeding involves the debtor as a fiduciary;
>
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
>
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
>
> (6) whether the action primarily involves third parties;
>
> (7) whether litigation in another forum would prejudice the interests of other creditors;
>
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
>
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
>
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
>
> (11) whether the parties are ready for trial in the other proceeding; and
>
> (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.  Only those factors relevant to a particular case need be considered, and the court need not assign them equal weight.  *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).  The moving party bears the initial burden to demonstrate that cause exists for lifting the stay under the *Sonnax* factors.  *Sonnax*, 907 F.2d at 1285.  If the movant fails to make an initial showing of cause, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.  *Id.*   Further, the cause demonstrated must be "good cause."  *Morgan Guar. Trust Co. v. Hellenic Lines, Ltd.*, 38 B.R. 987, 998 (S.D.N.Y. 1984).

29.    The SunCal Debtors fail to meet their burden of establishing good cause for lifting the automatic stay under the *Sonnax* analysis.  Thus, the burden does not shift to LCPI to affirmatively demonstrate that relief from the stay is inappropriate.  *Sonnax*, 907 F.2d at 1285.  Nevertheless, the *Sonnax* factors weigh heavily against lifting the automatic stay to allow the SunCal Debtors to proceed at this juncture.

### *Sonnax* Factor Two: Lack Of Any Connection With Or Interference With The Bankruptcy Case

30.    The operative complaint in the Equitable Subordination Action – the Fourth Amended Complaint (the "FAC") – repeatedly alleges that LCPI "fraudulently" or "falsely" invoked its automatic stay.  *See, e.g.*, FAC ¶ 145 ("LCPI . . .  has fraudulently and deceitfully invoked its own automatic stay . . . .), ¶ 149 ("and LCPI again (falsely) invoked its automatic stay").  It further alleges that LCPI "lie[d]" about the applicability of its automatic stay.  *Id.* ¶ 153.  The FAC also alleges that LCPI engaged in inequitable conduct when it argued that its "purported automatic stay prevented [the SunCal Debtors] from seeking to equitably subordinate LCPI's claims."  *Id.* ¶ 150.  The SunCal Debtors even allege that LCPI "continued to falsely assert its stay" before the BAP despite the fact that the BAP held that LCPI's stay applied

and that the SunCal Debtors' conduct violated LCPI's automatic stay. *Id.* ¶ 196 ("LCPI appealed the Court's ruling, and so had continued to falsely assert its stay, this time in the Ninth Circuit BAP.").

31.     The FAC also contains numerous allegations against professionals employed by the bankruptcy estate. *See, e.g.*, FAC ¶ 142 ("A & M is seeking to oust the [SunCal] Debtors and take over ongoing Projects . . . and then trying to 're-invent the wheel,' not only to churn fees for itself, but also to retain any upside in the Projects for itself at the expense of creditors."). The SunCal Debtors have also threatened RICO claims against professionals employed by the bankruptcy estate. *See* March 18, 2010 letter from the SunCal Debtors' special litigation counsel at 11 ("Alvarez & Marsal may be liable for RICO violations to the same extent as Lehman"); *id.* at 12 ("Thus, at the very least, the Lehman Entities, Fenway, Alvarez & Marsal and its agent, Gerald Pietroforte . . . face possible civil and/or criminal RICO exposure") (Declaration, Exh. L). Claims implicating the conduct of court-approved professionals within a bankruptcy case are integral to the administration of a case and are deemed to be within a bankruptcy court's core jurisdiction. *See In re Southmark Corp.*, 163 F.3d 925, 930-31 (5th Cir. 1999) ("A sine qua non in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors. The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively."); *In re Harris Pine Mills*, 44 F.3d 1431, 1438 (9th Cir. 1995). Thus, it is the province of this Court to evaluate the conduct of professionals employed by the bankruptcy estate.

32.     The FAC's allegations concerning the allegedly false or fraudulent assertion of LCPI's automatic stay should not be determined by another court.  This Court alone should determine the existence and scope of LCPI's rights under the Bankruptcy Code.  As the BAP stated, this Court "must have the final say as to whether the automatic stay applies to the bankruptcy case before it."  *In re Palmdale Hills*, 423 B.R. at 668.  Since the scope of LCPI's automatic stay is directly connected to this bankruptcy case and is within this Court's core jurisdiction, the second *Sonnax* factor weighs heavily against granting relief from stay.

33.     Furthermore, the effect of the FAC on and interference with these cases is substantial.  "Even slight interference with the administration [of a chapter 11 case] may be enough to preclude relief in the absence of a commensurate benefit."  *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984).  Here, the SunCal Debtors have asserted that post-petition actions of Lehman Lenders and the Debtors' professionals constitute "inequitable conduct" warranting the subordination of the Lehman Lenders' claims and liens, and have further threatened to bring claims against the Debtors' estates and Alvarez & Marsal, which would saddle these cases with large administrative expenses.  This interference with the administration of these cases weighs strongly against lifting the automatic stay.  *See In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) ("allowing the actions to proceed would distract the Debtors' management from the bankruptcy proceeding by forcing them to litigate the [action against them] and hinder its ability to perform its fiduciary duty of maximizing the value of the Debtors' estates, thereby affecting the interests of other creditors").  Relief from stay would not, as the SunCal Debtors contend, "promote[] LCPI's reorganization."  Motion ¶ 106.

**_Sonnax_ Factor Twelve: Impact Of The Stay On The Parties And The Balance Of Harms**

34.     Incredibly, the SunCal Debtors argue that "the purpose of the automatic stay—to give the debtor a breathing spell from his creditors—has been served." Motion ¶ 100. But the SunCal Debtors have failed to respect the automatic stay and have repeatedly violated it. LCPI has never received the mandatory breathing spell from the SunCal Debtors, so their argument that the purpose of the automatic stay has been served is disingenuous. In light of the substantial harms the SunCal Debtors have already caused LCPI due to their repeated violations of the automatic stay, any alleged harm the SunCal Debtors claim they might suffer if the Motion is denied defies sympathy and equity. In any event, they have failed to demonstrate any harm to themselves if their Motion is denied.

35.     The SunCal Debtors contend that the automatic stay should be lifted because LCPI filed for bankruptcy eighteen months ago, while LBHI filed nineteen months ago. _See_ Motion ¶ 100. The SunCal Debtors fail to understand the complexity of these bankruptcy cases. The Debtors are in the crucial stages of their reorganization efforts in the largest and most complex chapter 11 filing in history. To say that the Debtors have been focused on preserving value at a frenetic pace would be an understatement. As this Court is well aware, the Debtors are dealing with an unprecedented number of novel, complex and pressing bankruptcy issues. To deprive the Debtors of the protections afforded by the automatic stay would negatively impact the Debtors by interfering with the bankruptcy process which, in turn, prejudices their creditors.

36.     The SunCal Debtors' make the conclusory assertion that "the Lehman Estate will not incur additional costs as a result of LCPI's participation" and that they "would not be seeking any money damages from LCPI." Motion ¶¶ 96, 97. But LCPI will incur substantial costs in defending itself, regardless of the relief the SunCal Debtors are seeking. The burden

imposed on LCPI in terms of the time, financial resources, and attention necessary to defend itself in the Equitable Subordination Action, on top of the millions it has had to expend in defending its automatic stay and this Court's prior rulings, far outweighs any purported harm to the SunCal Debtors. *See In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 382142, at *2 (Bankr. S.D.N.Y. Jan. 12, 2006) ("an order lifting the automatic stay would significantly prejudice the Debtors and their efforts to reorganize. . . . [Debtors] are managing a case with over 1,700 docket entries to date and have been dealing with a number of complex issues on an expedited basis"); *In re Bally Total Fitness*, 402 B.R. at 624 ("Forcing the Debtors to litigate at this point would distract and hinder the Debtors from their reorganization efforts and would take away the 'breathing space' necessary to allow them to restructure and preserve the value of their assets for the benefit of their creditors.").

37.    The SunCal Debtors maintain that denying the Motion "would impair the SunCal Debtors' reorganization efforts." Motion ¶ 93. But the fact that the SunCal Debtors have themselves sought protection under chapter 11 of the Bankruptcy Code does not constitute sufficient "cause" for lifting LCPI's automatic stay. LCPI is charged with preserving its estate and resources for the benefit of its creditors. While the SunCal Debtors may wish to steamroll over LCPI's rights for their own benefit, this Court must be cognizant of the competing interests of these Debtors and their creditors. If the SunCal Debtors' Motion is granted, they will continue to enjoy the protection of their automatic stay, but LCPI will be stripped of the automatic stay protections granted to it by the Bankruptcy Code. This result defies the policies underlying the Bankruptcy Code and implies that one debtor's bankruptcy case is more important than another's.

38.     The SunCal Debtors argue that the Motion should be granted because LCPI is employing the automatic stay as a "sword." Motion ¶ 93. They made the same argument to the BAP, claiming that "because [LCPI] initiated the litigation by filing the Stay Relief Motion or a proof of claim against [the SunCal] Debtors, [LCPI's] automatic stay does not prevent [the SunCal] Debtors from prosecuting their equitable subordination claim." *In re Palmdale Hills*, 423 B.R. at 664. The BAP rejected the SunCal Debtors' characterization of their Equitable Subordination Action as defensive. *Id.* at 665. It held that "[t]he adjudication of [the SunCal] Debtors' equitable subordination action seeks affirmative relief, and therefore, violates [LCPI's] automatic stay." *Id.* (citing *In re Enron Corp.*, 2003 WL 23965467, 2003 Bankr.LEXIS 2261, at *23 (Bankr. S.D.N.Y. Jan. 13, 2003)).[10] Thus, it is the Equitable Subordination Action that is the sword, not the automatic stay.[11] The purpose of the Equitable Subordination Action is to strip assets worth hundreds of millions of dollars from the Debtors.

---

[10]     The SunCal Debtors repeatedly and impermissibly seek to relitigate issues that have already been decided against them. They claim that equitable subordination is just a defense to a claim that does not implicate the automatic stay. *See* Motion ¶¶ 79, 80, 82, 120. They also claim they are not seeking affirmative claims or relief against LCPI's estate. *Id.* ¶¶ 106, 109, 112, 113. But the BAP has already held their equitable subordination claim "seeks affirmative relief." *In re Palmdale Hills,* 423 B.R. at 665. Also, on April 12, 2010, the California Court dismissed all of their claims against LCPI because those claims sought affirmative relief. *See* Order re Lehman Entities' Amended Motion to Dismiss the Third Amended Complaint at ¶ 2 ("the claims for relief brought against [LCPI] – namely, claims 1, 5, 7, 8, and 9 – are affirmative relief . . . .") (emphasis added) (Declaration, Exh. J). The doctrine of issue preclusion – also known as collateral estoppel – bars the SunCal Debtors from relitigating whether they have asserted affirmative claims against LCPI. *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003).

[11]     None of the cases cited by the SunCal Debtors support their position. *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1168 (2d Cir. 1979) and *In re Wedtech*, 87 B.R. 279, 290 (S.D.N.Y. 1988) stand for the familiar proposition that the automatic stay generally does not bar a defendant's assertion of a counterclaim *in an action commenced by a debtor. In re Briarpatch Film Corp.* 281 B.R. 820, 834 (Bankr. S.D.N.Y. 2002) is entirely inapt: the "sword" referred to therein is the bad faith filing of a bankruptcy petition solely to stay the entry of judgment. Similar but even more attenuated is *International Distribution Centers, Inc. v. Walsh Trucking Co., Inc.*, 62 B.R. 723, 730 (S.D.N.Y. 1986) where the petition was filed in response to a contempt citation and the automatic stay did not apply at all. *In re Moss*, 270 B.R. 333, 345 (Bankr. W.D.N.Y. 2001) found the stay inapplicable to the federal government's exclusion of a doctor from the Medicare program for failing to repay his student loans.

Moreover, the filing of a proof of claim or competing plan of reorganization does not merit

denying LCPI the protections it is afforded under the Bankruptcy Code.  *See* Motion ¶ 99.  As

the BAP held, "[o]ne of the purposes of the automatic stay is to protect the bankruptcy court's

jurisdiction over the debtor and the property of the estate.  The protection of [LCPI's] automatic

stay did not evaporate when it filed a proof of claim in [the SunCal] Debtors' bankruptcy case."

*In re Palmdale Hills*, 423 B.R. at 667.  The same rationale holds true for the filing of a plan of

reorganization.

39.     The SunCal Debtors contend, incorrectly, that the Court decided in the

*Shinsei* matter that the automatic stay does not apply to equitable subordination claims.  Motion

at 23.  The Court found that Shinsei had not violated the automatic stay by filing a plan only

because under Japanese law, that did not equate to the commencement of litigation against

LBHI.  Tr. at 20:19-21:1 (Exh. C to O'Keefe Dec.).  Rather, Japanese law provided for a

separate proceeding akin to an adversary proceeding.  Id. at 21:2-5.  Thus, the Court specified

that "today's ruling is limited to holding that Shinsei' s submission of the Shinsei plan does not

violate the automatic stay that arose as a result of LBHI's Chapter 11 filing. . . ."  *Id.* at 23:13-16.

**Sonnax Factor Ten: The Interests Of Judicial Economy And The Expeditious And
Economical Resolution Of Litigation**

40.     The tenth *Sonnax* factor does not support relief from the stay because the

interests of judicial economy and the expeditious and economical resolution of litigation would

best be served if the Motion was denied as a result of the SunCal Debtors' violations of LCPI's

automatic stay.  The SunCal Debtors argue that "extensive litigation" has been conducted

"against" LCPI.  *See* Motion ¶ 88.  But LCPI was a party in the litigation only as a result of the

SunCal Debtors' violation of LCPI's automatic stay.  The SunCal Debtors are impermissibly

attempting to use their stay violation offensively, a result the courts uniformly reject.  *See, e.g.,*

*In re Gold & Honey, Ltd.*, 410 B.R. 357, 372 (Bankr. E.D.N.Y. 2009) ("allowing the offensive

use of a stay violation here would severely impinge the value and import of the automatic stay");

*In re Schwartz*, 954 F.2d 569, 572 (9th Cir. 1992) ("we will not reward those who violate the

automatic stay").

      41.     The SunCal Debtors mischaracterize the record in claiming that

"[e]xtensive litigation has been conducted in the Adversary Proceeding."  Motion ¶ 88.  In fact,

the Equitable Subordination Action is in the nascent stages.  The SunCal Debtors note that an

answer was recently filed.  *See* Motion ¶ 45.  But they fail to mention that a partial motion to

dismiss and a motion to strike are still pending.  Thus, the ultimate nature of the SunCal Debtors'

claims and their effects on the estates is uncertain.  Furthermore, the SunCal Debtors have made

clear that the potential claims not yet asserted in the Equitable Subordination Action might in the

future be asserted in the action if relief from stay is granted, including, potentially, civil RICO

claims.  *See* March 18, 2010 letter from the SunCal Debtors' counsel at 8 (". . . the Lehman

Entities' and Fenway's conduct . . . exposes them to potential RICO liability under 18 U.S.C.

§ 1964.") (Declaration, Exh. L).

      42.     The Equitable Subordination Action is in the early stages of discovery.

Any documents that were produced by LCPI were produced because it was improperly named as

a defendant.  Additionally, document production is ongoing and document discovery has thus far

been limited to only those issues that are relevant to both a contested substantive consolidation

matter and the Equitable Subordination Action.  The SunCal Debtors state that depositions are

set to begin on April 30, 2010.  *See* Motion ¶ 45.  Although that was the original date for

depositions to begin, depositions have not begun, nor are any depositions currently scheduled.

43.    The SunCal Debtors assert there is a "significant overlap" of "factual issues affecting LCPI and other Adversary Proceeding defendants," that much of "the witnesses and evidence involved will be *identical*," and that there is a risk of "inconsistent rulings" between this Court and the California Court.  Motion ¶ 90.  But that argument fails to comprehend the nature of equitable subordination.  It is well established that equitable subordination is a fact-specific, creditor-specific remedy, "applied only to the extent necessary to offset the specific harm caused by the inequitable conduct."  *In re Westgate California Corp.*, 642 F.2d 1174, 1178 (9th Cir. 1981).  The factual issues with respect to one creditor will necessarily be different than the factual issues involving another creditor.  Quite obviously, the creditor-witnesses will be different depending upon which creditor's factual circumstances are at issue.  And there is no risk of inconsistent rulings because of the fact-specific nature of equitable subordination.

***Sonnax* Factor Seven: Whether Litigation In Another Forum Would Prejudice The Interests Of Other Creditors**

44.    If LCPI's automatic stay is lifted, the SunCal Debtors will seek to subordinate LCPI's liens, thereby reducing the value of the estate.  LCPI will also be forced to expend large sums of money to defend itself, which will reduce distributions to its creditors.  Thus, lifting stay will prejudice the interests of the creditors in this case.  Indeed, the BAP has already recognized that LCPI's creditors' rights "would be affected by the subordination action." *In re Palmdale Hills*, 423 B.R. at 668.  The damages to LCPI's creditors should not be permitted.  The Motion also fails to address the ways in which the rights of unsecured creditors in these chapter 11 cases would be safeguarded in the Equitable Subordination Action.  This Court is uniquely situated to understand the interests of the LCPI's unsecured creditors.

***Sonnax* Factor Eleven: Whether The Parties Are Ready For Trial In The Other Proceeding**

45.    As discussed, the Equitable Subordination Action is in the nascent stages.  After the conclusion of discovery, the parties will likely engage in various forms of motion practice, including the filing and arguing of dispositive motions.  The parties are clearly not ready for trial.

***Sonnax* Factor Three: Whether The Other Proceeding Involves The Debtor As A Fiduciary**

46.    LCPI is not a fiduciary of the SunCal Debtors.

***Sonnax* Factor Four: Whether A Specialized Tribunal With The Necessary Expertise Has Been Established To Hear The Cause Of Action**

47.    No specialized tribunal has been established to consider the Equitable Subordination Action.  That the Equitable Subordination Action is currently pending before the California Court does not make the California Court a specialized tribunal under *Sonnax*.  *See, e.g., In re Cicale*, No. 05-14462 (AJG), 2007 WL 1893301, *3 n.3 (Bankr. S.D.N.Y. June 29, 2007); *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2007 WL 841948, at *7 (Bankr. S.D.N.Y.

March 12, 2007); *see also In re Bally Total Fitness of Greater New York, Inc.*, 411 B.R. 142, 147-148 (S.D.N.Y. 2009). Additionally, as discussed, *only* this Court should consider issues regarding LCPI's automatic stay and the Debtors' bankruptcy professionals.[12]

**First *Sonnax* Factor: Whether Relief Would Result In A Partial Or Complete Resolution Of The Issues**

48.      Relief from the automatic stay would initiate the commencement of a multi-step, prolonged and expensive litigation process. It would include, but not be limited to, additional discovery, hearings, motion practice, and possibly trial. Full participation in the litigation process would not necessarily lead to complete resolution of the issues, as rulings and decisions by the California Court may be subject to several levels of appeal by the multiple parties to the Equitable Subordination Action.[13]

---

[12]      LCPI could have requested that the entire Equitable Subordination Action be tried before this Court, but in deference to the California Court, has declined to do so. *See* 28 U.S.C. § 157(c)(1) ("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is *otherwise related to a case under title 11*.") (emphasis added); 28 U.S.C. § 1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under chapter 11, or arising in *or related to cases under title 11*.") (emphasis added).

[13]      Nor does the Declaration of Bruce Cook [Docket No. 8542] – which is grounded in impermissible hearsay – somehow overcome the SunCal Debtors' failure to satisfy the *Sonnax* factors. The Second Circuit has made clear that a "hearsay affidavit is not a substitute for the personal knowledge of a party." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988). Hearsay "is a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "As a general rule, [hearsay] is not admissible," and courts routinely refuse to consider hearsay evidence in the context of declarations. *See In re Adler, Coleman Clearing Corp.*, No. 95-08203 (JLG), 1998 WL 160039, at *9 (Bankr. S.D.N.Y. Apr. 3, 1998). In the Declaration, Mr. Cook states that "[t]he Lehman Entities induced the SunCal Debtors to continue developing the Projects through promises of payment *to the SunCal Debtors' vendors and service providers*." Cook Dec. at ¶ 5 (emphasis added). But Mr. Cook fails to demonstrate any personal knowledge of these alleged promises to third parties and fails to substantiate these alleged promises with any documentary evidence. Accordingly, Mr. Cook's statements purporting to paraphrase alleged promises made by Lehman Entitles to unidentified third parties are inadmissible hearsay and must be stricken.

**_Sonnax_ Factor Five: Whether The Debtor's Insurer Has Assumed Full Responsibility For Defending It**

49.    The SunCal Debtors claim this factor is "irrelevant" because they are "not seeking any affirmative relief against LCPI."  Motion ¶ 109.  As discussed, the BAP and the California Court have already held the claims against LCPI seek affirmative relief.[14] Additionally, by information and belief, LCPI lacks insurance coverage to satisfy the litigation costs that will be incurred if the automatic stay is lifted.  The SunCal Debtors' argument simply overlooks the fact that LCPI's estate will be directly burdened by these costs, just as it has already been burdened by these costs when the SunCal Debtors named LCPI as a defendant in the action in violation of its automatic stay.

**_Sonnax_ Factor Six: Whether The Action Primarily Involves Third Parties**

50.    Unlike in more frequent circumstances where stay relief is sought to proceed against a third party, here the stay relief sought would directly affect LCPI and its estate. Consequently, the requested stay relief is not appropriate and should not be granted.  The SunCal Debtors have not established that LCPI's automatic stay will prevent them from proceeding against entities where the automatic stay is not implicated.  *See In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 47 (Bankr. S.D.N.Y. 1990) (denying stay relief where movant "does not assert that the debtor is a necessary party defendant in the California litigation or that

---

[14]    The SunCal Debtors' arguments in support of the Eighth *Sonnax* factor (whether the judgment claim arising from the other action is subject to equitable subordination) and the Ninth *Sonnax* factor (whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor) are similarly predicated on their incorrect assertion that they are not seeking affirmative relief.  *See* Motion ¶¶ 112, 113.  These arguments therefore also fail.

the automatic stay in the debtor's Chapter 11 case in this court will prevent [movant] from proceeding with its California litigation" against the other defendants).[15]

### III.   LBHI'S AUTOMATIC STAY APPLIES

51.   The Debtors have filed a motion seeking this Court's approval to enter into a compromise (the "Transaction") in which LCPI will repurchase the Repo Assets (including the SunCal Loans) pursuant to the terms of the MRA, and LBHI, as the current holder of the CP Notes and the guarantor of LCPI's obligations under the MRA, will surrender the CP Notes for cancellation as payment of the repurchase price under the MRA and in satisfaction of LBHI's obligations under its guaranty of the MRA (the "Guaranty").[16]   Specifically, LBHI, as the current holder of the CP Notes and as guarantor, will return the CP Notes to Fenway Funding and Fenway Funding will return the VFN Note to Fenway Capital.   The CP Notes and VFN Note will be cancelled and the Supplement, Base Indenture and other documents relating to the VFN Note will be terminated.   Each of Fenway Funding and Fenway Capital will have no further liabilities under the CP Notes or VFN Note.

---

[15]   In the unlikely event that this Court grants the Motion, the SunCal Debtors state, "In light of the urgency of the relief requested, the SunCal Debtors request that the Court waive the 10-day stay requirement of Bankruptcy Rule 4001(a)(3) and provide that any order granting the relief requested herein become effective immediately upon entry." Motion ¶ 122.  Aside from the fact that Bankruptcy Rule 4001(a)(3) actually provides for a 14-day stay requirement, the SunCal Debtors' claim of "urgency" is belied by the fact that they waited seventeen months to file their Motion.  The purpose of Bankruptcy Rule 4001(a)(3) is to "provide[] a temporary breathing spell for a debtor to appeal and obtain a stay pending appeal thereby avoiding the potential devastating consequences that stay relief can have on the success of the bankruptcy case."  *In re Henderson*, 395 B.R. 893, 904 (Bankr. D. S.C. 2008).  As the movant, the SunCal Debtors were required to, but have not, "demonstrate[d] countervailing factors that would mitigate against [a stay pending appeal] to obtain a waiver of the temporary stay of Fed. R. Bankr. P. 4001(a)(3)" and shown that they "would be irreparably injured by leaving the stay in place temporarily."  *Id.*

[16]   Capitalized terms not defined herein shall have the meaning ascribed to them in the *Motion Pursuant to Bankruptcy Rule 9019 for Authority to Compromise Controversy in Connection with a Repurchase Transaction with Fenway Capital, LLC and a Commercial Paper Program with Fenway Funding, LLC* [Docket No. 7831] (the "Compromise Motion").

52.    LCPI will repurchase the Repo Assets from Fenway Capital through LBHI's surrender of CP Notes for cancellation and, in exchange, Fenway Capital will assign to LCPI all of the Repo Assets and the parties will terminate the MRA and the Guaranty.  The parties will agree that notwithstanding anything to the contrary in the Fenway Documents or otherwise, the return of the CP Notes to Fenway Funding and the subsequent termination of the VFN Note will constitute full payment of the repurchase price under the MRA and full and fair consideration for the repurchase transaction.

53.    Moreover, the Revised Compromise Order[17] provides that, to the full extent provided under the Guaranty and the other Fenway Documents and applicable law, LBHI will become fully subrogated to the claims of Fenway Capital and/or Fenway Funding against LCPI to the full extent of any payment by LBHI in respect of such claims and LBHI will succeed to any and all liens and security interests with respect to the Repo Assets and any interest therein asserted by Fenway Capital or Fenway Funding under the MRA and/or the other Fenway Documents, in the same priorities as held by Fenway Capital or Fenway Funding, to secure LBHI's subrogated claims.  *See* Revised Compromise Order.  In other words, when the Transaction is consummated and the Revised Compromise Order is entered, LBHI shall succeed to any and all liens and security interests that Fenway Capital or Fenway Funding had in the Repo Assets under the Fenway Documents.

54.    LBHI's automatic stay applies because the Equitable Subordination Action directly and adversely impacts property of LBHI's estate.  Specifically, LBHI currently holds CP Notes that are ultimately secured by, among other assets, a pledge of Fenway's

---

[17]    *See Revised Order Approving Debtors' Motion Pursuant to Bankruptcy Rule 9019 for Authority to Compromise Controversy in Connection with a Repurchase Transaction with Fenway Capital, LLC and a Commercial Paper Program with Fenway Funding, LLC* [Docket No. 8788] (the "Revised Compromise Order") (Declaration, Exh. M).

interests in the SunCal Loans.  Additionally, upon this Court's approval and the subsequent

consummation of the Transaction and entry of the Revised Compromise Order, LBHI will

become fully subrogated to the claims of Fenway Capital and/or Fenway Funding against LCPI

to the full extent of any payment by LBHI in respect of such claims and LBHI will succeed to

any and all liens and security interests with respect to the Repo Assets and any interest therein

asserted by Fenway Capital or Fenway Funding under the MRA and/or the other Fenway

Documents, in the same priorities as held by Fenway Capital or Fenway Funding, to secure

LBHI's subrogated claims.  The CP Notes are undoubtedly property of LBHI's estate and, upon

consummation of the Transaction and entry of the Revised Compromise Order, LBHI's security

interests as a subrogee of Fenway Capital and/or Fenway Funding will become property of its

estate.  *See* 11 U.S.C. § 541(a)(1) (defining "property of the estate" as "all legal or equitable

interests of the debtor in property as of the commencement of the case"); *see also Chartschlaa v.

Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (property of the estate includes

"[e]very conceivable interest of the debtor, future, nonpossesory, contingent, speculative, and

derivative"); *id.* ("It would be hard to imagine language that would be more encompassing than

this broad definition."); *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006) ("mere

'opportunity' to receive an economic benefit in the future" constitutes property of the estate); *In

re GGSI Liquidation Inc.*, 351 B.R. 529, 572 (Bankr. N.D. Ill. 2006) (property of the estate

includes rights where debtor "could have become entitled to full rights of subrogation . . . had

they tendered or attempted to tender the remaining payments due.").

        55.    The SunCal Debtors' contention that LBHI's automatic stay does not

apply completely misses the mark.  To begin with, contrary to what the SunCal Debtors

maintain, LBHI has never argued that the so-called Sold Loans constitute property of its estate.

*See* Motion ¶ 115.  Thus, the SunCal Debtors' reliance on cases such as *In re Matter of Minton*

*Group, Inc.*, 46 B.R. 222 (Bankr. S.D.N.Y. 1985), for the proposition that a debtor's rights or

interest in an asset does not make the underlying asset itself property of the debtor's estate are

beside the point.  *Id.* at ¶ 117 n.50.

   56. The SunCal Debtors also argue that an "indirect interest" in property is not

protected by the automatic stay, but this argument ignores controlling Second Circuit precedent.

Motion ¶ 116 (citing *In re Cont'l Air Lines, Inc.*, 61 B.R. 758 (S.D. Tex. 1986)).  The SunCal

Debtors in essence argue that the automatic stay does not apply because LBHI does not own any

of the SunCal Loans.  But the Second Circuit has made it clear that "where a non-debtor's action

with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal

effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the

automatic stay."  *Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential*

*Lines, Inc.)*, 928 F.2d 565, 574 (2d Cir. 1991) (holding that if parent corporation were allowed to

claim a worthless stock deduction in the stock of its debtor subsidiary, that would eliminate the

value of the debtor's net operating loss carryforward, which action is prohibited under the

automatic stay because it is an act to exercise control over estate assets).  *Accord 48th St.*

*Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431

(2d Cir. 1987) ("where a non-Debtor's interest is intertwined . . . with that of a bankruptcy debtor

. . . , and an action taken against a non-bankrupt party would inevitably have an adverse impact

on property of the bankruptcy estate, then such action should be barred by the automatic stay").

Here, the automatic stay applies because the Equitable Subordination Action would have an

"adverse impact" on property of LBHI's estate–the CP Notes and, upon consummation of the

Transaction and entry of the Revised Compromise Order, LBHI's security interests described above.

57.    Finally, the SunCal Debtors question whether LBHI's "indirect interest" actually constitutes property of its estate.  They argue that LBHI will not have any property interests as a subrogee of Fenway Funding's or Fenway Capital's security interests because, upon consummation of the Transaction, Fenway Funding or Fenway Capital will no longer have any rights in the loans to which LBHI can be subrogated.  *Id.* at ¶ 119.  But upon entry of the Revised Compromise Order, the Court will deem those rights to exist and LBHI will become fully subrogated to the claims of Fenway Capital and/or Fenway Funding against LCPI to the full extent of any payment by LBHI in respect of such claims and LBHI will succeed to any and all liens and security interests with respect to the Repo Assets and any interest therein asserted by Fenway Capital or Fenway Funding under the MRA and/or the other Fenway Documents, in the same priorities as held by Fenway Capital or Fenway Funding, to secure LBHI's subrogated claims.

58.    In any event, this argument only highlights the fact that the SunCal Debtors' attempt to lift stay is premature.  Before this Court can rule on whether to lift LBHI's automatic stay, it must first determine the nature of the LBHI property interests that are at stake in the Equitable Subordination Action, which interests the SunCal Debtors mischaracterize as "new" and "remote and undefined."  Motion ¶ 121.  Generally, that determination can only be made in a separate adversary proceeding, not in the context of a motion to lift stay.

## IV.    THE SUNCAL DEBTORS CANNOT SATISFY THE LEGAL STANDARD FOR LIFTING LBHI'S AUTOMATIC STAY

59.    The SunCal Debtors have not satisfied their burden of proving that LBHI's stay should be lifted.  To begin with, for the same reasons that the SunCal Debtors could

not satisfy the *Sonnax* factors with respect to LCPI, they cannot satisfy those factors with respect to LBHI.  *See infra* at Section II.  Additionally, LBHI has never been a named defendant in the Equitable Subordination Action.  It is a new party with a different set of creditors than LCPI. LBHI never participated in the Equitable Subordination Action.

    60.  The SunCal Debtors' contention that the stay should be lifted because LBHI is acquiring new property with the intent of invoking its automatic stay has no merit. Motion ¶ 121.  They rely on *In re Brannan*, 40 B.R. 20 (Bankr. N.D. Ga. 1984) to make this argument, but that case does not apply here because its holding is expressly limited to chapter 7 cases.  40 B.R. at 23 n.2.  Moreover, the property interest that LBHI will acquire as a result of the Transaction, and the entry of the Revised Compromise Order, is a mere change in the form, but not the substance, of its economic interests.  As a matter of law, the automatic stay will apply, not only to LBHI's prepetition interests, but also to any property that LBHI acquires as a result of the Transaction and entry of the Revised Compromise Order regardless of its intent.  *In re GGSI Liquidation Inc.*, 351 B.R. at 572 (rights of a debtor gained through subrogation are property of the estate and subject to protection by automatic stay).

Hearing Date: May 12, 2010 at 10:00 a.m. (EST)

WHEREFORE the Debtors respectfully request that the Court deny the Motion and the relief requested therein.

Dated:  May 5, 2010
        Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors
and Debtors in Possession