**Exhibit "B"**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555 (JMP)


- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC., et al.


        Debtors.

- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                January 30, 2009

                4:38 PM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1

2    EMERGENCY TELEPHONIC HEARING re Debtors' Emergency Motion for

3    an Order Pursuant to Section 362(a) of the Bankruptcy Code

4    Enforcing the Automatic Stay

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

3

1

2      A P P E A R A N C E S :

3      WEIL, GOTSHAL & MANGES LLP

4            Attorneys for Debtors

5            767 Fifth Avenue

6            New York, NY 10153

7

8      BY:  SHAI WAISMAN, ESQ.

9

10     WEIL, GOTSHAL & MANGES LLP

11           Attorneys for Debtors

12           1395 Brickell Avenue

13           Suite 1200

14           Miami, FL 33131

15

16     BY:  NELLIE P. CAMERIK, ESQ.

17           ELISA LEMMER, ESQ.

18

19     MILBANK, TWEED, HADLEY & MCCLOY LLP

20           Attorneys for the Official Committee of Unsecured

21            Creditors

22           One Chase Manhattan Plaza

23           New York, NY 10005

24

25     BY:  DENNIS C. O'DONNELL, JR.

4

1

2    WINTHROP COUCHOT PROFESSIONAL CORPORATION

3         Attorneys for SCC Entities

4         660 Newport Center Drive

5         Fourth Floor

6         Newport Beach, CA 92660

7

8    BY:   PAUL J. COUCHOT, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

1            P R O C E E D I N G S

2            THE COURT:  This is by counsel for the debtors in

3    connection with an emergency motion and a proposed order to

4    show cause fixing a hearing to consider that motion.  Who's on

5    the line?

6            MR. WAISMAN:  Good afternoon, Your Honor.  For the

7    debtors, Lehman Brothers Holding Inc. and Lehman Commercial

8    Papers, Shai Waisman from Weil Gotshal & Manges.

9            MR. COUCHOT:  Good afternoon, Your Honor.  This is

10   Paul Couchot of Winthrop Couchot in Newport Beach, California

11   on behalf of the what is referred to in the motion as the SCC

12   entities.

13           THE COURT:  Is there anyone else on the line?  Is

14   there anyone else who needs to be on the line?

15           MR. WAISMAN:  Your Honor, Shai Waisman.  The

16   creditors' committee, I believe, is joining.  They might be

17   delayed just -- by last minute nature of our request.  I

18   believe they're intending to join.

19           THE COURT:  I don't want to start this until

20   everybody who should be on the line has already joined.  So

21   maybe we should take a five minute break until they join.  It

22   might be worth having somebody who has e-mail access or an

23   ability to call offline to check and find out the status of

24   their attempt to join the line.  And also, if you could tell me

25   who you think from the committee's team will be participating.

6

1          MR. WAISMAN:  Your Honor, we have somebody calling as

2     we speak.  My understanding is that it will be Dennis O'Donnell

3     of the Milbank firm for the committee.

4          THE COURT:  Okay.  Let's just wait for a minute or

5     two.

6          MR. WAISMAN:  Okay.

7       (Off the record)

8          THE COURT:  So I'll turn it over to Mr. Waisman to

9     explain what it is that he's seeking this afternoon.

10          MR. WAISMAN:  Thank you, Your Honor.  And thank you

11     to the Court and all the parties who are (indiscernible) on

12     such short notice.  Your Honor, what we are requesting is an

13     emergency motion enforcing the automatic stay in these Chapter

14     11 cases.  The Court has had involvement with this matter

15     before -- well, I'll briefly (indiscernible) through the facts

16     without belaboring the record.

17          THE COURT:  I'm actually familiar with the facts.

18     You can put this on the record if you wish but I have received

19     copies of the debtors' moving papers, the emergency motion and

20     the affidavit which you prepared as well as the proposed order

21     to show cause.  I note that there is an attachment of the

22     transcript from a hearing that I remember very well that took

23     place in November where Mr. Kessler was involved when he was

24     one of your partners on behalf of the debtors in opposing

25     relief from the stay being sought by the SSC (sic) parties.

7

1    And so, you can go through the facts if you wish but I'm

2    telling you now that I'm familiar with the facts.

3            MR. WAISMAN:   Okay, Your Honor.   Thank you.   And I'll

4    therefore make it very short.   As Your Honor pointed out, the

5    SCC entities brought on an expedited hearing before the Court

6    requesting a modification of the stay to proceed with

7    unfettered discretion in their cases because if they did not

8    have that relief they could (indiscernible) which immediately

9    befall the properties including various threats to health and

10   welfare.   As a result, this Court referred the matter for

11   expedited consideration on November 20th.

12           The movants made clear in that hearing that one of

13   the reasons they needed to seek relief from the stay or be

14   granted relief from the stay was because they intended to make

15   a motion in their case to use LCPI's cash collateral.   There

16   was lengthy discussion of that on the record.   At the

17   conclusion of the hearing, Your Honor -- and I was not

18   involved.   My partner, Mr. Kessler, who has since retired from

19   the firm, took the lead for LCPI in the matter but at the

20   conclusion, the Court was very clear with the SCC entities.

21   There were two ways to proceed.   Either they come back before

22   the Court with specific requests for relief that were clearly

23   tied to the Sonnax factors at which point the Court would

24   consider their requests and debtors' opposition, if any.   Or

25   the parties could work out their issues and settle the matter.

8

1    An order was entered subsequently, I believe, on the very next

2    day.  There was no appeal, no request for a rehearing.  And, in

3    fact, there was never a motion brought before Your Honor.

4         Quite astonishingly, instead of coming back to Your

5    Honor, the SCC entities decided about two months later to

6    disregard the automatic stay in these cases, disregard their

7    appearance before Your Honor, disregard Your Honor's

8    instruction, clear instructions as to how this matter was to

9    proceed, and filed a motion in their case, which is also

10   annexed to our emergency motion, and in the very first

11   paragraph, on page 2, paragraph 8, the first line, seeking

12   authorization for Palmdale Hills Property to use the surcharge

13   pursuant to 506(c) that purported cash collateral of Lehman

14   Commercial Paper Inc.  Lehman Commercial Paper Inc. remains a

15   debtor before this Court and the automatic stay remains in

16   place.  And we would ask that the automatic stay be enforced

17   and Your Honor's original order stand and that the SCC entities

18   not circumvent this Court and the automatic stay.  And if they

19   so choose to continue to prosecute a request for relief in cash

20   collateral do so in accordance with the Bankruptcy Code and the

21   directives of this Court.  And the SCC entities are, 'cause

22   they already have, likely a response that the stay has been

23   completely waived by actions in their cases and that we should

24   all forget what happened before Your Honor because the

25   California court has authority to modify the stay in these

9

```
 1     cases.  This is exactly the position they've taken in their

 2     case on this very issue.

 3              THE COURT:  This is the first I'm hearing that.

 4              MR. WAISMAN:  There have been -- in addition to this

 5     motion, out of abundance of caution, LCPI responded in

 6     California.  And its reply started off with there's an

 7     automatic stay in place.  There was a hearing before Judge

 8     Peck.  Judge Peck ruled and this is nothing more than an

 9     attempt to circumvent the automatic stay and the Court's

10     ruling.

11              THE COURT:  Now just so I'm clear, Mr. Waisman, is

12     today's telephonic proceeding one in which you are seeking the

13     scheduling of a hearing or are you treating this as if it is

14     the hearing itself because I'm hearing what amounts to

15     substantive argument.  I'm just trying to understand what we're

16     doing.

17              MR. WAISMAN:  I'm treating this, Your Honor, as the

18     hearing itself.

19              THE COURT:  And is that something that --

20              MR. WAISMAN:  The SCC entities have requested to

21     proceed with their motion to use LCPI's cash collateral on

22     Tuesday of next week.

23              THE COURT:  Well, here's my confusion.  I just want

24     to make sure that I know what's going on.  And I was in another

25     meeting when I first heard about this.  Read the papers prior
```

10

1   to the start of this proceeding but when I read them, it was my

2   belief that you were seeking an order to show cause to schedule

3   this for a hearing sometime next week perhaps on Monday because

4   the order to show cause includes a blank date and indicates

5   that the motion is to be served on or before January 30 on all

6   parties entitled to receive notice of the motion.

7           So my first question is what are we doing right now.

8   And is this a consensual hearing on the merits of your motion

9   or is this is a consensual hearing with respect to the order to

10  show cause or is there no consent?  I just want to know what's

11  going on.

12          MR. COUCHOT:  May I speak, Your Honor?

13          THE COURT:  And is that Mr. Couchot?  Couchet?

14          MR. COUCHOT:  Yes, Your Honor.  Couchot.

15          THE COURT:  Couchot?

16          MR. COUCHOT:  Yes.  Your Honor --

17          THE COURT:  I remember that you --

18          MR. COUCHOT:  Your Honor, I'm appearing today and I

19  rearranged plans that I had because I was told that you wanted

20  me to make myself available.  So that's why I'm here.  I'm not

21  consenting to anything.  We filed a reply today that was

22  (indiscernible) at noon today and our position on today's issue

23  is set forth in that reply.  And I disagree with the

24  characterizations made about what the motion was.  And I

25  understand Your Honor was there and you said you remember it

11

1    very well.  But the thrust of the motion was --

2             THE COURT:  You were there, too.  My recollection is

3    you were sitting in the courtroom as Morgan Lewis & Bockius was

4    arguing the motion.  And you were physically present and I was

5    looking right at you.

6             MR. COUCHOT:  Absolutely.

7             THE COURT:  Okay.  So we know who we are and we know

8    that we were both present at a time when I made an absolutely

9    clear ruling that you heard.  And are you telling me that you

10   decided I'll just try my luck in California before Judge Smith?

11            MR. COUCHOT:  No.  That's not what happened, Your

12   Honor.

13            THE COURT:  Well, you better tell me what happened.

14   You better tell me clearly and treat yourself as if you're

15   making a representation to the Court that's subject to

16   sanctions if it's not accurate.

17            MR. COUCHOT:  Yes, Your Honor.

18            THE COURT:  Go ahead.

19            MR. COUCHOT:  We believed that our motion was

20   primarily one of two things.  I was -- two different things.

21   One we were asking for the Court to give us relief from stay to

22   file a priming motion in California.  And on top of that, we

23   asked for a general relief as best we could to administer the

24   cases.  The emergency nature -- and in the general relief, we

25   listed several different things that, you know, might possibly

12

1    need to do and cash collateral was absolutely one of those

2    things.

3            The focus at the hearing, and I've reread the

4    transcript, was that the (indiscernible) term sheet on a DIP

5    financing that clearly the judge -- Your Honor, in my view,

6    after reviewing the (indiscernible) right now made a

7    determination that the priming lien loan would violate the

8    stay.

9            THE COURT:  No.  You're absolutely -- you are totally

10   and completely wrong.  And if you're trying to recharacterize

11   what I said, you better be careful.  I remember it and I've

12   also recently reviewed the transcript.  And I remember very

13   clearly the procedural history.  It was a general motion

14   seeking relief from the automatic stay without specificity.

15   Your counsel when you were present in court made an argument

16   that was wonting in all respects because of a failure to deal

17   with Second Circuit applicable precedent, the Sonnax standards.

18   And, in fact, when asked to identify how the Sonnax standards

19   applied failed completely and ducked the question.  I remember

20   the hearing extremely well.

21           MR. COUCHOT:  I agree that that occurred during the

22   hearing, Your Honor.  I'm not trying to --

23           THE COURT:  Now, if you are attempting through this

24   conversation to characterize my ruling or my order, you are out

25   of order.  If this is some kind of explanation as to how you

13

1    think this is permissible behavior, you are wrong.  It is

2    completely impermissible and sanctionable behavior and, in my

3    view, constitutes a willful violation of the automatic stay.

4    You could not have been on more direct and obvious notice than

5    you were.  I was looking right at you.

6              Now what are you going to do?

7              MR. COUCHOT:  Your Honor, if you're telling me that

8    your order -- I'm going to obey your order.

9              THE COURT:  Excuse me?

10             MR. COUCHOT:  I said I'm going to obey what you're

11   saying.  I'm going to comply with what you're saying today.

12             THE COURT:  Only because I've just said it?

13             MR. COUCHOT:  Your Honor --

14             THE COURT:  There was no motion for reconsideration.

15   There was no appeal.  And, in fact, if you remember clearly

16   what I suggested in the strongest possible terms, I suggested

17   that counsel meet and confer in an effort to develop a means by

18   which your client could deal with Lehman.  Did that happen?

19             MR. COUCHOT:  Yes, Your Honor.  It did.  We flew back

20   the next week and that was done personally.  Yes, we made -- I

21   called, I believe, Mr. Kessler the next day and requested a

22   face-to-face meeting.  And we flew back to New York and met

23   with Lehman, Mr. Kessler and with two representatives of

24   Alvarez & Marsal.

25             THE COURT:  And what was the result of that?

14

1          MR. COUCHOT:  Well --

2          THE COURT:  Now these are settlement discussions so

3     it may be you don't want to talk to me about it.

4          MR. COUCHOT:  Yes, that's my hesitancy, Your Honor.

5     I mean, I would love to tell you what happened but I -- suffice

6     it to say we were very far apart.

7          THE COURT:  And you apparently made the decision not

8     to file, which was your privilege if you chose to exercise it,

9     a follow-up motion for stay relief.  But instead, to act as if

10    what happened here didn't count, didn't matter?

11         MR. COUCHOT:  May I speak, Your Honor?

12         THE COURT:  Of course.

13         MR. COUCHOT:  There's a related case involving SunCal

14    entities and Lehman Commercial Paper before Judge Smith.  In

15    that case, Judge -- he's actually represented by Mr. Al Siegel,

16    who's the Chapter 11 trustee in that case -- moved for use of

17    cash collateral in Judge Smith's courtroom.  Lehman Commercial

18    adamantly opposed the motion.  Lehman Commercial did not raise

19    the stay as being invoked.  And in a fully briefed -- I think

20    there were two different hearings on the issue.  It never once

21    raised -- and in our view -- again, I know you disagree with me

22    but, in our view, cash collateral was not the focus and there

23    was no determination in your courtroom that cash collateral

24    violated -- the use of cash collateral would violate the stay.

25    What we heard -- what I heard was talk to Lehman, try to work

15

1    something out.  I'm not giving you general relief.  If you

2    think that you need relief from stay, come back and be

3    specific.  From our standpoint, at this point in time, Lehman

4    Commercial was not taking the position that the use of cash

5    collateral violated the stay.  And we did our own research and

6    we felt that that was the case.  And we figured, from our

7    thinking, we had a hearing -- we got a conference in front of

8    Judge Smith and I announced that we were going to use -- make a

9    motion for the use of cash collateral.  We even had a turnover

10   motion on this account and we worked conceptually with Lehman

11   at the divided briefing schedule.  We even had further talks to

12   try to work things out as recently as, I believe, yesterday or

13   the day before.  And it was only until we received their

14   opposition that we understand that they were taking a position

15   that the use of cash collateral violated the stay and that your

16   order did so, too, that your order had made that determination.

17   And I've looked at the transcript and I think you did make that

18   determination after a priming lien because that's what --

19   you're right. The in the (indiscernible) general order and

20   everything else you said about that hearing is correct.  But

21   the cash collateral issue was one of the several -- list of

22   things that really wasn't the focus.  The focus was, in my

23   opinion, was what you've mentioned, was that we need to go

24   through those factors and that the priming lien motion you said

25   would be burdensome to the estate and would harm the estate and

16

1   therefore, clearly, in my mind you said there was a violation

2   of the automatic stay.  But we proceeded with this motion in

3   good faith that Lehman Commercial was not taking the position

4   that cash collateral violated the stay.  In that related case

5   that's in front of Judge Smith.

6          THE COURT:  Okay.  Well, I know nothing about that

7   related case.  And this is not a hearing on possible sanctions

8   for willful violation of the automatic stay although that may

9   happen at some time in the future at which point the comments

10   you're making might be helpful.  They're not helpful to me now.

11          MR. COUCHOT:  I have the reply papers, Your Honor,

12   that has all that information in there that I could e-mail to

13   you as well.

14          THE COURT:  I don't need to see them tonight.

15          MR. COUCHOT:  Okay.

16          THE COURT:  The only thing that is before me now, and

17   I think I've already made clear what my position is, is that

18   you have no stay relief.  You know you have no stay relief.

19   And that denial of the motion brought by you and your local

20   counsel, Morgan Lewis & Bockius, in November speaks for itself

21   and there is a final order which denies that motion.  The legal

22   consequences of that denial are what they are.  I have no

23   knowledge, and I don't expect to get that knowledge now, as to

24   what happened in California.  To the extent relevant, I'll

25   learn it in due course.

17

1        The only thing which is before me is an emergency

2   motion to enforce the automatic stay.  It is enforced to the

3   extent applicable.  I'm not expanding it nor am I taking away

4   from counsel the ability to reach agreements to modify it.  But

5   if you don't come here and seek consensual relief from stay or

6   relief from stay with appropriate motion practice, you are at

7   full risk as is your client.  Act accordingly.

8        MR. COUCHOT:  Well, thank you for making that --

9   allowing me to make a record, Your Honor.

10        THE COURT:  Excuse me?

11        MR. COUCHOT:  I appreciate the fact that you allowed

12   me to make the record on that.  Thank you.

13        THE COURT:  I didn't think that's what just happened

14   but okay.  I just heard you make some statements about what you

15   believe may have given you cause to believe that what you were

16   doing was permissible.  I have not for a moment suggested that

17   I agree with you.  Nor is there a record here on the basis of

18   which I could make such a finding.  We're just having a

19   conversation.

20        MR. COUCHOT:  I understand, Your  Honor.

21        THE COURT:  Now what happens next, Mr. Waisman?

22        MR. WAISMAN:  Your Honor, I believe Your Honor's

23   ruling is clear.  I believe the stay is in force and --

24        THE COURT:  There could never be a doubt on that

25   question.

18

1        MR. WAISMAN:  I believe the SCC entities need to act

2    in accordance with the stay and whatever the stay applies to.

3    And I think that point has been made clear.  But I would expect

4    that there would be either a consensual resolution among the

5    parties or a motion on proper notice and properly briefed

6    before this Court for modification of the stay that Your Honor

7    will rule on one way or the other in due course and that there

8    would be any proceedings before that.

9        As for the other allegations of waiver and the like,

10   there's no need to belabor the record.  When and if those

11   issues are relevant, they'll be addressed.

12        MR. COUCHOT:  May I speak, Your Honor?

13        THE COURT:  Of course.

14        MR. COUCHOT:  This waiver is definitely not -- that

15   was made.  The issue is whether or not the use of cash

16   collateral violates the automatic stay and that the -- Palmers

17   indicates that it does not.  In addition to the fact that

18   Lehman Commercial did not waive its interrelated case, that it

19   vigorously contested the use of cash collateral.  And then,

20   thirdly, for the record, my review of it, the Court did not

21   make a finding that the use of cash collateral violated the

22   automatic stay.  And I --

23        THE COURT:  Mr. Couchot, the only record that exists

24   in this record, which is written down, we don't have to

25   characterize it --

19

1          MR. COUCHOT:  Right.

2          THE COURT:  -- relates to a general motion made by

3    your client for relief from the automatic stay.  That motion

4    was denied by final order without prejudice --

5          MR. COUCHOT:  Yes.

6          THE COURT:  -- with statements made on the record

7    that we don't need to recharacterize.  You and other counsel

8    involved no doubt have considered the legal consequences of the

9    actions that you have undertaken with eyes wide open.  I don't

10   want to hear now argument as to why you believe that the action

11   you have taken is not covered by the order that I entered after

12   denying your motion for relief from stay.  It was not a

13   specified targeted motion for relief from stay.  Quite the

14   contrary.  It was a completely general give us full and

15   complete relief from stay.  Motion denied.  That means that the

16   stay applies to the extent it applies.  As you well know as an

17   experienced bankruptcy lawyer, careful lawyers almost always,

18   when there's a close question, seek relief from stay to avoid

19   the very severe sanctions that flow from -- especially flow

20   from willful violations of the stay.  You're in the zone of a

21   willful violation.  And this is not the time for you to defend

22   yourself.  That time may come.

23          MR. COUCHOT:  Yes, Your Honor.

24          MR. WAISMAN:  Your Honor, Shai Waisman.  I actually

25   thought that the issue was resolved.  But based on the

20

1    statements that (indiscernible) made, I have concern as to what

2    resources this estate has to expend in defending what is

3    clearly within the stay and clearly within what was raised,

4    argued and ruled on before this Court.  I thought we were

5    concluded.

6        THE COURT:  I thought we were, too.  But then again,

7    every time I think we're done, I hear another argument from

8    California as to why there's some belief the use of cash

9    collateral is not covered by the automatic stay.  I'm not

10   deciding that now.  It's not before me.  But lawyers can figure

11   this out.  The use of cash --

12       MR. COUCHOT:  I am sorry, Your Honor --

13       THE COURT:  The use of cash collateral happens at the

14   beginning of most Chapter 11 cases and involves either consent

15   or adequate protection.  That's Bankruptcy 101.

16       Now, can we conclude this evening's hearing?  And if

17   so, how?

18       MR. WAISMAN:  I believe for the debtors we can

19   conclude the hearing.  I would (indiscernible) of this Court

20   and this debtor.  If Mr. Couchot could advise based on the

21   Court's comments tonight whether we're proceeding with an

22   attempt to use the debtor's cash collateral or the SCC entities

23   are going to regroup and advise how they will proceed next

24   including to fully vindicate their rights before this Court.

25   That would go a long way and be very helpful.  If we need to

21

1    defend against the use of cash collateral in California, we

2    will do so.  And at the same time, we will bring additional

3    motion practice before Your Honor.

4         MR. COUCHOT:  My recommendations to my client will be

5    to come back to New York and file a motion for use of cash

6    collateral -- I mean, for relief from stay for the use of cash

7    collateral.

8         THE COURT:  I'll tell you what.  If the lawyers

9    involved are going to have a conversation about how to resolve

10   the matter which is not before me but is before Judge Smith in

11   the Central District of California, that doesn't have to be on

12   this record.

13        MR. WAISMAN:  In that case, Your Honor, perhaps we

14   can take leave of the Court and Mr. Couchot and I can

15   conference afterwards and assuming these debtors are properly

16   convinced that there is no more of a -- no risk with violations

17   of the stay, the matter would be concluded.  And if not, it

18   would be our burden to come back to Your Honor.

19        THE COURT:  Fine.  If you need further access at any

20   time before the hearing is presently scheduled, you can have

21   such access on Monday.

22        MR. WAISMAN:  Thank you, Your Honor.  That's greatly

23   appreciated as is the access today and apologize to everybody

24   for the short notice.

25        THE COURT:  No.  This is an important matter and no

22

1    apologies are needed.

2              MR. COUCHOT:  Thank you, Your Honor.

3              MR. WAISMAN:  Thank you, Your Honor.

4              THE COURT:  Have a good weekend, all.  Bye.

5              MR. WAISMAN:  Bye.

6         (Whereupon these proceedings were concluded at 5:18 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

23

1

2                          I N D E X

3

4                        R U L I N G S

5    DESCRIPTION                                    PAGE     LINE

6    Previous ruling of 11/20/08 denying SCC entities'  16      24

7    relief from the automatic stay enforced

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

24

1

2                    C E R T I F I C A T I O N

3

4      I, Lisa Bar-Leib, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7      _____

8      LISA BAR-LEIB

9

10     Veritext LLC

11     200 Old Country Road

12     Suite 580

13     Mineola, NY 11501

14

15     Date:   February 2, 2009

16

17

18

19

20

21

22

23

24

25