# Exhibit "G"

1   LOUIS R. MILLER, State Bar No. 54141
    smiller@millerbarondess.com
2   MARTIN PRITIKIN, State Bar. No. 210845
    mpritikin@millerbarondess.com
3   JAMES MILLER, State Bar No. 234267
    jmiller@millerbarondess.com
4   **MILLER BARONDESS, LLP**
    1999 Avenue of the Stars, Suite 1000
5   Los Angeles, California 90067
    Telephone:    (310) 552-4400
6   Facsimile:    (310) 552-8400
    Special Litigation Counsel for the Jointly
7   Administered Debtors in Possession and Steven
    M. Speier, the Chapter 11 Trustee

8                   **UNITED STATES BANKRUPTCY COURT**
9         **CENTRAL DISTRICT OF CALIFORNIA — SANTA ANA DIVISION**

10  In re

11  PALMDALE HILLS PROPERTY, LLC, AND ITS
12  RELATED DEBTORS,
              Jointly Administered Debtors and
13            Debtors-in-Possession

14  Affects:
15  ☒  All Debtors
    ☒  Palmdale Hills Property, LLC,
16  ☐  SunCal Beaumont Heights, LLC
    ☒  SCC/Palmdale, LLC
17  ☐  SunCal Johannson Ranch, LLC
    ☒  SunCal Summit Valley, LLC
18  ☒  SunCal Emerald Meadows LLC
    ☒  SunCal Bickford Ranch, LLC
19  ☒  Acton Estates, LLC
    ☐  Seven Brothers LLC
20  ☒  SJD Partners, Ltd.
    ☒  SJD Development Corp.
21  ☐  Kirby Estates, LLC
    ☒  SunCal Communities I, LLC
22  ☒  SunCal Communities III, LLC
    ☒  SCC Communities LLC
23  ☒  North Orange Del Rio Land, LLC
24  ☒  Tesoro SF, LLC
    ☒  LB-L-SunCal Oak Valley, LLC
25  ☒  SunCal Heartland, LLC
    ☒  LB-L-SunCal Northlake, LLC
26  ☒  SunCal Marblehead, LLC
27  ☒  SunCal Century City, LLC
    ☒  SunCal PSV, LLC
28

**CASE NO. 8:08-bk-17206-ES**
Jointly Administered With Case Nos.
    8:08-bk-17209-ES; 8:08-bk-17224-ES;
    8:08-bk-17225-ES; 8:08-bk-17227-ES;
    8:08-bk-17230-ES; 8:08-bk-17231-ES;
    8:08-bk-17236-ES; 8:08-bk-17240-ES;
    8:08-bk-17242-ES; 8:08-bk-17245-ES;
    8:08-bk-17246-ES; 8:08-bk-17248-ES;
    8:08-bk-17249-ES; 8:08-bk-17404-ES;
    8:08-bk-17407-ES; 8:08-bk-17408-ES;
    8:08-bk-17409-ES; 8:08-bk-17458-ES;
    8:08-bk-17465-ES; 8:08-bk-17470-ES;
    8:08-bk-17472-ES; 8:08-bk-17573-ES;
    8:08-bk-17574-ES; 8:08-bk-17575-ES;
    8:08-bk-17588-ES
**Adversary No. 8:09-ap-01005-ES**

**THIRD AMENDED ADVERSARY
PROCEEDING COMPLAINT FOR:**

1)  **EQUITABLE SUBORDINATION,
    11 U.S.C. §510(c);**

2)  **FRAUDULENT INDUCEMENT;**

3)  **AVOIDANCE AND RECOVERY OF
    PREFERENTIAL TRANSFERS,
    11 U.S.C §§ 547, 550;**

4)  **AVOIDANCE AND RECOVERY OF
    FRAUDULENT TRANSFERS,
    11 U.S.C. §§ 544(b), 548; CAL. CIVIL
    CODE §§ 3439.04, 3439.05;**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

35043.17

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

1  ☒  Delta Coves Venture, LLC
   ☒  SunCal Torrance, LLC
2  ☒  SunCal Oak Knoll, LLC

3  **ADVERSARY PROCEEDING**

4

5  **Debtor-In-Possession Plaintiffs**
   PALMDALE HILLS PROPERTY, LLC, a Delaware
   limited liability company; SUNCAL SUMMIT
6  VALLEY, LLC, a Delaware limited liability
   company; SUNCAL EMERALD MEADOWS, LLC,
7  a Delaware limited liability company; SUNCAL
   BICKFORD RANCH, LLC, a Delaware limited
8  liability company; ACTON ESTATES, LLC, a
   Delaware limited liability company; SJD
9  PARTNERS, LTD., a California limited partnership;
   SJD DEVELOPMENT CORP., a California
10 corporation; NORTH ORANGE DEL RIO LAND,
   LCC, a Delaware limited liability company;
11 TESORO SF, LLC, a Delaware limited liability
   company; SCC COMMUNITIES, LLC, a Delaware
12 limited liability company; SUNCAL
   COMMUNITIES I, LLC, a Delaware limited liability
13 company; SUNCAL COMMUNITIES III, a
   Delaware limited liability company;
14 SCC/PALMDALE LLC, a Delaware limited liability
   company;

15 **Trustee Plaintiff:**
16 STEVEN SPEIER, Chapter 11 Trustee, on behalf of
   LB-L-SUNCAL OAK VALLEY, LLC, a Delaware
17 limited liability company; SUNCAL HEARTLAND,
   LLC, a Delaware limited liability company; LB-L-
18 SUNCAL NORTHLAKE, LLC, a Delaware limited
   liability company; SUNCAL MARBLEHEAD, LLC,
19 a Delaware limited liability company; SUNCAL
   CENTURY CITY, LLC, a Delaware limited liability
20 company; SUNCAL PSV, LLC, a Delaware limited
   liability company; DELTA COVES VENTURE,
21 LLC, a Delaware limited liability company;
   SUNCAL TORRANCE, LLC, a Delaware limited
22 liability company; and SUNCAL OAK KNOLL,
   LLC, a Delaware limited liability company,
23

24
                    Plaintiffs,
25 v.

26 LEHMAN ALI, INC., a Delaware corporation;
   LEHMAN COMMERCIAL PAPER, INC., a
27 Delaware corporation; OVC HOLDINGS, LLC, a
   Delaware limited company; NORTHLAKE
28 HOLDINGS, LLC, a Delaware limited liability

5)  **VOIDING LIENS, 11 U.S.C. § 506(d);**

6)  **DISALLOWANCE OF CLAIMS AND LIENS, 11 U.S.C. § 502(d); AND**

7)  **PRESERVATION OF CLAIMS AND LIENS FOR DEBTORS' ESTATES, 11 U.S.C. §551**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

---

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

1    company; LV PACIFIC POINT, LLC, a Delaware
     limited liability company; LEHMAN RE, LTD., a
2    Bermuda corporation; FENWAY CAPITAL, LLC, a
     Delaware limited liability company; DANSKE
3    BANK A/S, LONDON BRANCH, a United
     Kingdom corporation,
4
                    Defendants.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ACTION ....................................................................................................1

II.   STATEMENT OF JURISDICTION AND VENUE .................................................4

III.  PARTIES ........................................................................................................................4

    A.    Plaintiffs...............................................................................................................4

        1.    Voluntary Debtor Plaintiffs...................................................................4

        2.    The Trustee, on behalf of the Trustee Debtors ................................5

    B.    Defendants ...........................................................................................................6

        1.    Lehman Defendants ................................................................................6

        2.    Other Defendants ....................................................................................7

IV.   FACTUAL ALLEGATIONS .......................................................................................8

    A.    The SunCal-Lehman Venture ............................................................................8

    B.    The Debtors and Projects at Issue...................................................................11

    C.    The Disputed Lehman Loans at Issue.............................................................12

    D.    Lehman ALI and LCPI Saddle the Projects with Unnecessary Excessive Debt .........13

    E.    Lehman ALI's and LCPI's Promises to Fund the Plaintiff Debtors' Projects.............15

    F.    Lehman ALI and LCPI's Imposition of Control Over the Debtors and the Projects ..17

    G.    The Parties' Restructuring Agreement.............................................................19

    H.    The Projects Subject to the Restructuring Agreement...................................22

    I.    Lehman ALI's Obligations to Fund Under the Restructuring Agreement ................23

    J.    Lehman ALI and LCPI Fail to Fund the Projects as Promised....................24

    K.    Lehman ALI, LCPI, OVC and Northlake Holdings Secretly Shuffle Their Interests in the Plaintiff Debtors' Loans ................26

    L.    Lehman ALI, LCPI, OVC and Northlake Holdings' Failure to Close and Continued Refusal to Fund ................26

    M.    Lehman ALI's Withdrawal of Badly Needed Cash from the Projects .......................28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

i

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

**N.** The Lehman Lenders' Refusal to Fund Necessitates Debtors' Bankruptcies ..............28

**O.** Lehman ALI, LCPI, OVC and Northlake Holdings' Attempts to Block the Debtors' Bankruptcies ...........................................................................................29

**P.** Lehman ALI, OVC and Northlake Holdings' Manipulation of the Lehman Equity Members ......................................................................................................30

**Q.** Lehman ALI, LCPI, OVC and Northlake Holdings' Attempts to Thwart Debtors' Reorganization in Bankruptcy ........................................................................33

**R.** Lehman ALI, LCPI, OVC and Northlake Holdings' Concealment of their Sale of the Loans at Issue ..........................................................................................34

**S.** Lehman ALI, LCPI, OVC and Northlake Holdings' Repeated Assertion of Their "Ownership" of the Sold Loans .......................................................................37

    **1.** Disputed Proofs of Secured Claims Filed by Lehman ALI, LCPI, OVC and Northlake Holdings Based on the Sold Loans ..........................................37

    **2.** Key Pleadings Filed By Lehman ALI, LCPI, OVC and Northlake Holdings Based On the Sold Loans ...............................................................39

        **a.** Stay Relief Motions .......................................................................39

        **b.** Opposition to Sales Procedure Motion ..................................................39

**T.** LCPI's Improper Invocation of the Automatic Stay ........................................40

    **1.** New York Opposition to Priming Loan ..........................................................40

    **2.** Objection to Cash Collateral Motion ..............................................................41

    **3.** "Emergency" Motion to Enforce Stay In New York .......................................41

    **4.** Lehman ALI's Super-Priority Loan Resulting from LCPI's False Invocation of Its Stay ............................................................................41

    **5.** Intervention in Sales Procedures Motion .........................................................42

    **6.** Stay Relief Motions ........................................................................................43

    **7.** LCPI's Appeal from the Denial of its Stay Relief Motions ............................43

    **8.** LCPI's Second Appeal ....................................................................................44

**U.** Summary of Lehman ALI, LCPI, OVC and Northlake Holdings' Post-Petition Inequitable Conduct ........................................................................................44

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 · LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 · FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

V.   Lehman ALI and LV Pacific Point's Fraudulent Acquisition of the Pacific Point Project ...........................................................................................45

W.   Summary of the Disputed Claims to Be Equitably Subordinated, and the Associated Liens to Be Preserved for the Benefit of the Plaintiff Debtors' Estates....48

V.   FIRST CLAIM FOR RELIEF (Equitable Subordination, 11 U.S.C. §510(c)).......................53

VI.   SECOND CLAIM FOR RELIEF (Fraudulent Inducement) ........................................61

VII.   THIRD CLAIM FOR RELIEF (To Avoid and Recover Preferential Transfers 11 U.S.C. § 547) ..................................................................................................63

VIII.   FOURTH CLAIM FOR RELIEF (To Recover Avoided Transfers - 11 U.S.C. § 550)..........64

IX.   FIFTH CLAIM FOR RELIEF (To Avoid and Recover Fraudulent Transfers – 11 U.S.C. §§ 544(b), 548, Cal. Civil Code §§ 3439.04 and 3439.05)..........................................64

X.   SIXTH CLAIM FOR RELIEF (To Avoid and Recover Preferential Transfers – 11 U.S.C. § 547) ...............................................................................................71

XI.   SEVENTH CLAIM FOR RELIEF (To Void Liens – 11 U.S.C. § 506(d) .............................74

XII.   EIGHTH CLAIM FOR RELIEF (To Disallow Claims and Liens – 11 U.S.C. § 502(d) ..........................................................................................75

XIII.   NINTH CLAIM FOR RELIEF (To Preserve Claims and Liens for the Respective Debtors' Estates -- 11 U.S.C. §§ 551 and 541(a)(4)).............................................76

XIV.   PRAYER FOR RELIEF .................................................................................76

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

iii

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# I.

## <u>SUMMARY OF ACTION</u>

1.      This case is about a major Wall Street financial institution, Lehman Brothers, which—through its wholly-owned and controlled subsidiaries, defendants herein—induced the plaintiffs' creditors to render services, perform work and issue surety bonds, and then stiffed them for hundreds of millions of dollars.  With this action, the plaintiffs seek relief for the benefit of those creditors.

2.      The plaintiffs herein (collectively, the "Plaintiffs" or "Plaintiff Debtors")[1] are twenty-two of twenty-six debtors ("Debtors")[2] whose bankruptcy cases have been administratively consolidated before this Court.  The Debtors are all direct or indirect subsidiaries of SCC Acquisitions, Inc. ("SCC"), which is the "parent" of a group of affiliated entities known collectively as the SunCal Companies, or "SunCal."  SunCal is a California-based real estate developer.

3.      The causes of action alleged herein relate to SunCal's dealings with various affiliated entities which are all wholly owned and/or controlled by the Global Real Estate Group within Lehman Brothers Holdings, Inc. ("LBHI") (collectively, "Lehman").  These affiliates include

---

[1] They are: (i) Acton Estates LLC ("SunCal Acton"), SunCal Bickford Ranch LLC ("SunCal Bickford"), SunCal Emerald Meadows LLC ("SunCal Emerald"), SCC Palmdale LLC ("SCC Palmdale"), Palmdale Hills Property LLC ("Palmdale Hills"), SJD Partners, Ltd. ("SJD Partners"), SJD Development Corp. ("SJD Development"), SunCal Summit Valley LLC ("SunCal Summit"), SCC Communities LLC ("SCC Communities"), SunCal Communities I LLC ("SunCal I"), SunCal Communities III LLC ("SunCal III"), North Orange Del Rio Land LLC ("SunCal Del Rio"), and Tesoro SF LLC ("SunCal Tesoro") (collectively, the "Voluntary Debtor Plaintiffs or "Voluntary Plaintiffs"); and (ii) LB/L-SunCal Oak Valley LLC ("SunCal Oak Valley"), LB/L-SunCal Northlake LLC ("SunCal Northlake"), SunCal Heartland LLC ("SunCal Heartland"), SunCal Marblehead LLC ("SunCal Marblehead"), SunCal Century City LLC ("SunCal Century City"), SunCal PSV LLC ("SunCal PSV"), Delta Coves Venture LLC ("SunCal Delta Coves"), SunCal Torrance LLC ("SunCal Torrance"), and SunCal Oak Knoll LLC ("SunCal Oak Knoll") (collectively, the "Trustee Debtors").

To be precise, plaintiff Steven M. Speier, the Chapter 11 trustee ("Trustee") for the nine Trustee Debtors, is authorized to bring, and does bring, the claims herein on their behalf.  References to the Trustee Debtors as "Plaintiffs" are made for readability, and should be understood, where applicable, to refer to the Trustee himself.

[2] There are four administratively consolidated voluntary Debtors that are not currently named as Plaintiffs herein, for reasons explained below.  They are: SunCal Beaumont Heights LLC ("SunCal Beaumont"), SunCal Johannson Ranch LLC ("SunCal Johannson"), Seven Brothers LLC ("Seven Brothers"), and Kirby Estates LLC ("Kirby").

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**
35043.17

1    defendants Lehman ALI, Inc. ("Lehman ALI"), Lehman Commercial Paper, Inc. ("LCPI") (itself

2    wholly owned by Lehman ALI), OVC Holdings, Inc. ("OVC"), Northlake Holdings LLC

3    ("Northlake Holdings"), LV Pacific Point LLC ("LV Pacific Point"), and Lehman Re, Ltd.

4    ("Lehman Re") (collectively, the "Lehman Defendants").[3]

5        4.    Plaintiffs are also naming as defendants herein successors to certain of the Lehman

6    defendants—specifically, Fenway Capital LLC ("Fenway") and Dansk Bank A/S London Branch

7    ("Danske"). (These successors are referred to collectively with the Lehman Defendants as

8    "Defendants.").

9        5.    The Plaintiff Debtors are owners of, and/or have equity interests in other Debtors who

10    are owners of, twenty real estate development projects located throughout California (the

11    "Projects"). As discussed in more detail below, after gaining control over the Debtors, certain of the

12    Lehman Defendants exercised that control to their own advantage, and to the detriment of the

13    Plaintiff Debtors and their creditors. They induced the Project-owning Plaintiff Debtors to incur

14    hundreds of millions dollars in debt through promises of payment—promises which they failed and

15    refused to fulfill.

16        6.    As to one Project in particular known as "Pacific Point," located in San Juan

17    Capistrano, Defendants Lehman ALI and LV Pacific Point fraudulently induced the Project-owning

18    Plaintiff Debtor, SJD Partners, to consent to a foreclosure and sale of the Project through their false

19    promises of funding.

20        7.    Defendants' inequitable conduct has continued post-petition—including making

21    repeated material misrepresentations to the Court and Debtors, and wasting vast amounts of the

22    Plaintiff Debtors' time and money—to the detriment of all of the Plaintiff Debtors' creditors.

23        8.    Because of the Defendants' wrongdoing, not only have the Plaintiff Debtors'

24    creditors' bills gone unpaid, the Projects themselves fell into a state of serious disarray. They have

25

26    ————————————

27    [3] These affiliates also include, but are not limited to, non-defendants LBREP II/SunCal Land Fund Member LLC ("LBREP II/SCLFM"), LB/L-DUC III Master LLC ("LB/L-Duc Master"), SCLV Northlake LLC ("SCLV Northlake"), SCLV Oak Valley LLC ("SCLV Oak Valley"), and SC

28    Master Holdings II LLC ("SC Master Holdings") (collectively, the "Lehman Equity Members").

2

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   encountered erosion, problems with dust, fire control, friable asbestos, unmonitored levees and

2   partially constructed bridges, potential flooding and other serious health and safety hazards.

3   Defendants have refused even to pay property taxes on the Projects, resulting in significant penalties

4   and interest which have decreased the value of the Debtors' estates. The Projects are further

5   threatened with the loss of their governmental entitlements, which are critical to avoid disruptions in

6   the development process and to maintain value.

7       9.      This lawsuit is to obtain redress for the Plaintiff Debtors' creditors by way of:

8           (a) equitably subordinating the Defendants' claims in the Projects;

9           (b) setting aside the foreclosure of the Pacific Point property and returning it to its

10          rightful owner, SJD Partners;

11          (c) avoiding and recovering fraudulent and preferential transfers made to

12          Defendants;

13          (d) declaring void Defendants' liens that are not supported by value; and

14          (e) disallowing Defendants' claims and liens, and preserving those claims and

15          liens for the benefit of the Plaintiff Debtors' estates.

16      10.     This adversary proceeding is filed against defendants who are not in the bankruptcy

17  proceedings involving LBHI in New York, with the exception of LCPI, which is in bankruptcy.

18  LCPI filed a motion for relief from stay in order to foreclose on a number of the Projects. Not only

19  did this constitute the filing of an informal proof of claim against those estates pursuant to this

20  Court's rulings and governing law, but LCPI subsequently filed formal proofs of claim against those

21  estates. Moreover, except with regard to one loan (which LCPI admits is not secured by any value),

22  LCPI sold all of its interest in the loans at issue in this action to Fenway pre-petition. As such,

23  LCPI's automatic stay in its own bankruptcy does not apply—and has never applied—to Plaintiffs'

24  efforts to defend against LCPI's claims by asserting the causes of action alleged against it herein.

25      11.     Plaintiffs reserve the right to seek relief from stay to name any and all other Lehman-

26  related entities, agents and/or individuals as defendants as necessary, and/or to name other

27  defendants as necessary, to obtain and effectuate full and complete relief for the creditors.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

3
**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

## II.

## STATEMENT OF JURISDICTION AND VENUE

12.    The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E), (F), (H), (K), and (O), and 1334.

13.    Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409, in that this civil proceeding arises under title 11 of the United States Code, and arises in and relates to a bankruptcy case pending in the district, and the claims alleged herein arose in this district.

14.    The causes of action alleged herein are all "core" proceedings to be heard and determined by the Bankruptcy Court pursuant to 28 U.S.C. §§ 157 and 1334(b).    To the extent that any claim is determined to be a non-core proceeding that is related to a case under title 11 under this Court's jurisdiction pursuant to 28 U.S.C. § 157(c)(1), Plaintiffs consent to an entry of final order or judgment on the non-core matters by this Court pursuant to 28 U.S.C. § 157(c)(2).

## III.

## PARTIES

15.    As this adversary proceeding deals with numerous plaintiffs and defendants, for convenience, the parties are broken down into the following categories:

### A.    *Plaintiffs*

#### *1.    Voluntary Debtor Plaintiffs*

16.    Plaintiff SunCal Acton is the owner of the "Acton Estates" Project.

17.    Plaintiff SunCal Bickford is the owner of the "Bickford Ranch" Project.

18.    Plaintiff SunCal Del Rio owns CFD bonds proceeds on the "Del Rio" Project.

19.    Plaintiff SunCal Emerald is the owner of the "Emerald Meadows" Project.

20.    Plaintiff SCC Communities is the owner of the "Joshua Ridge" Project.

21.    Plaintiff SJD Partners is the former owner of the Pacific Point Project.

22.    Plaintiff SJD Development is the holder of an interest in SJD Partners, the owner of the Pacific Point Project.

23.    Plaintiff Palmdale Hills is the owner of the "Ritter Ranch" Project.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS  SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

24.    Plaintiff SCC Palmdale is the holder of an interest in Palmdale Hills (itself the owner of the Ritter Ranch Project).

25.    Plaintiff SunCal Summit is the owner of certain parcels of the "Summit Valley" Project, and is the holder of interests in Debtors Seven Brothers and Kirby, the owners of certain other parcels of the Summit Valley Project.

26.    Plaintiff SunCal Tesoro is the owner of the "Tesoro Burnham" Project.

27.    Plaintiff SunCal I is the holder of interests in SunCal Acton, SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal Johannson, and SunCal Summit.

28.    Plaintiff SunCal III is associated with the Acton, "Beaumont Heights," Bickford Ranch, Emerald Meadows, "Johannson Ranch," and Summit Valley Projects.

**2.    _The Trustee, on behalf of the Trustee Debtors_**

29.    The Trustee is authorized to bring, and hereby does bring, claims on behalf of the following Trustee Debtors:

(a)    SunCal Century City, owner of the "Century City" Project;

(b)    SunCal Torrance, owner of the "Del Amo" Project;

(c)    SunCal Delta Coves, owner of the "Delta Coves" Project;

(d)    SunCal Heartland, owner of the "Heartland" Project;

(e)    SunCal Marblehead, owner of the "Marblehead" Project;

(f)    SunCal Northlake, owner of the "Northlake" Project;

(g)    SunCal Oak Knoll, owner of the "Oak Knoll" Project;

(h)    SunCal Oak Valley, owner of the "Oak Valley" Project; and

(i)    SunCal PSV, owner of the "Palm Springs Village" Project.

30.    All of the Plaintiff Debtors are Delaware limited liability companies, except for SJD Partners, a California limited partnership, and SJD Development, a California corporation.

31.    Four of the twenty-six administratively-consolidated Debtors are not currently named as plaintiffs in this action. This is because none of the Defendants herein has filed proofs of claim against these Debtors, since the Defendants' loans are allegedly secured by other Debtors' interests

5

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

in these Debtors, but not in property of these Debtors directly.  These four Debtors are:

   (a)  SunCal Johannson, owner of the Johannson Ranch Project;

   (b)  SunCal Beaumont, owner of the Beaumont Heights Project;

   (c)  Seven Brothers, owner of certain parcels of the Summit Valley Project; and

   (d)  Kirby, owner of certain other parcels of the Summit Valley Project.

Plaintiffs reserve the right to amend their complaint to add these Debtors as plaintiffs in this adversary proceeding, including, but not limited to, in the event that substantive consolidation is granted.

**B.**  **_Defendants_**

  **_1._**  **_Lehman Defendants_**

  32.  On information and belief, Defendant Lehman ALI is a Delaware corporation with its principal place of business in New York, New York, is a wholly-owned subsidiary of the parent Lehman entity, LBHI.  Lehman ALI is not in bankruptcy.

  33.  On information and belief, Defendant LCPI is a Delaware corporation with its principal place of business in New York, New York.  LCPI was formerly a wholly-owned subsidiary of LBHI.  It is now a wholly-owned subsidiary of defendant Lehman ALI.

  34.  On information and belief, Defendant OVC is a Delaware limited liability company, and is a wholly-owned subsidiary of LBHI.  OVC has purported to be the assignee of Lehman ALI's loan to Plaintiff SunCal OakValley and of the associated lien on the Oak Valley Project.  It is not in bankruptcy.

  35.  On information and belief, Defendant Northlake Holdings is a Delaware limited liability company, and is a wholly-owned subsidiary of LBHI.  Northlake has purported to be the assignee of Lehman ALI's loan to Plaintiff SunCal Northlake and of the associated lien on the Northlake Project. It is not in bankruptcy.

  36.  OVC and Northlake are being sued both in their capacity as successors to Lehman ALI, and for their own wrongdoing.

  37.  On information and belief, Defendant LV Pacific Point is a Delaware limited liability

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

6

35043.17

1    company with its principal place of business in Orange County, California, and is a wholly-owned

2    subsidiary of LBHI.  LV Pacific Point has purported to be the assignee of Lehman ALI's interest in

3    the second priority deed of trust on the Pacific Point Project formerly owned by Plaintiff SJD

4    Partners and of the associated lien.  LV Pacific Point foreclosed on, and was the purchaser upon

5    foreclosure of, the Pacific Point Project.  LV Pacific Point is being sued both in its capacity as a

6    successor to Lehman ALI, and for its own wrongdoing.

7         38.    On information and belief, defendant Lehman Re is a Bermuda corporation with its

8    principal place of business in New York, New York, and is a wholly-owned subsidiary of LBHI.  On

9    information and belief, Lehman Re is the transferee of some or all of Lehman ALI and/or LV Pacific

10   Point's interests in the Pacific Point First and/or Pacific Point Second Loan (described below) to SJD

11   Development and SJD Partners, and of the associated liens on the Pacific Point Project.

12        **2.    _Other Defendants_**

13        39.    On information and belief, Defendant Fenway is a Delaware limited liability

14   company. Fenway is the transferee of loans to Plaintiffs SunCal Acton, SunCal Bickford, SunCal

15   Delta Coves, SunCal Emerald, SunCal Heartland, SunCal Marblehead, SunCal Northlake, SunCal

16   Oak Valley, SunCal PSV, Palmdale Hills, SunCal Summit, SunCal I and SunCal III, and of the

17   associated liens on the Acton Estates, Bickford Ranch, Delta Coves, Emerald Meadows, Heartland,

18   Marblehead, Northlake, Oak Valley, Palm Springs Village, Ritter Ranch and Summit Valley

19   Projects, and/or other assets of these Plaintiff Debtors, including SunCal I's interests in SunCal

20   Beaumont and SunCal Johannson, and SunCal Summit's interests in Seven Brothers and Kirby.

21        40.    On information and belief, defendant Danske is a United Kingdom corporation, and is

22   the transferee of the loan to Plaintiff SunCal Century City and of the associated lien on the Century

23   City Project.

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

7

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

# IV.

## FACTUAL ALLEGATIONS

### A.    *The SunCal-Lehman Venture*

41.    SunCal is a family-owned and -operated California real estate business, and is the direct or indirect parent of each of the Debtors.  SunCal is a highly-experienced and successful developer in business for over 70 years.  It manages virtually all aspects of real estate development, from acquiring properties and obtaining governmental entitlements to construction and build-out, culminating in the sale of lots to merchant builders.  SunCal has gained an expertise in these matters, and has formed relationships with many governmental entities and businesses throughout California.

42.    The land development process is inherently capital intensive due to the size and costs of the assets being acquired, the front-loaded capital requirements, and the length of time between the initial acquisition and the ultimate realization of profits.

43.    The acquisition and development of SunCal projects are typically financed through some combination of debt, mezzanine or "mezz" debt (secured by an equity ownership interest in the entity that owns the property), and/or equity contributions.

44.    SunCal historically financed its projects with loans and/or equity from a number of different sources.  However, beginning over a decade ago, an increasing number of SunCal's projects were financed by Lehman, as Mark Walsh ("Walsh"), the head of Lehman's Global Real Estate Group, began cultivating a business relationship with Bruce Elieff, CEO and owner of the SunCal parent entity, SCC.

45.    In 1997, Lehman made its first investment with SunCal via a $20 million mezzanine loan to Plaintiff Debtor SJD Partners on the Pacific Point Project.  As Lehman worked with SunCal on additional projects, a pattern emerged:  Lehman's investments were structured with some type of participation by Lehman in the profitability of the projects, either as an equity partner, pursuant to a contingent interest loan that contains a profit participation component, or through a mezz loan with significant return.

46.    Lehman also provided debt financing on a number of SunCal projects, but typically

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

only when Lehman was also a participant in the profitability of the project.

47.    When Lehman participated as a lender on SunCal projects, it was, with rare exceptions, always through Defendants Lehman ALI and/or LCPI.

48.    Soon after its initial investment, Lehman invested in several more projects with SunCal. Each of these early SunCal-Lehman projects proved to be highly profitable for Lehman, with some projects yielding a return on investment of over a hundred percent.

49.    Based on these results, Lehman accelerated its debt and equity participation in SunCal projects. By 2003, Lehman had partnered with SunCal on approximately fifteen projects. By 2007, that number had grown to over forty.

50.    By 2006, Lehman's distributions on its mezzanine and equity investments with SunCal exceeded its contributions by over a hundred million dollars.

51.    Lehman generated quarterly projections regarding the profitability of its investments with SunCal extending out through the year 2015. Lehman anticipated earning at least $2 billion in profits on $4 billion in debt and equity investments over the course of its relationship with SunCal. Lehman thus accelerated its debt participation further. Between 2005 and 2007, Lehman ALI and/or LCPI lent or contributed over $2 billion to the Debtors.

52.    Given Lehman's past and projected profitability, Lehman continued to seek an even closer and more exclusive relationship with SunCal. And SunCal acquiesced, allowing Lehman to take an increasing role in its Projects and finance an increased share of SunCal's business.

53.    For example, in or about 2005, SunCal allowed Lehman—at Lehman's urging—to participate in $50 million in gains realized from sales in connection with the "Heritage Fields" project. This generated in excess of $22 million to Lehman, without Lehman having to make any capital investment. SunCal did so without any kind of agreement with Lehman, purely for relationship purposes.

54.    There were other instances, such as the College Park and Summerwind projects, where SunCal allowed Lehman to participate—even though others were offering more favorable terms—for the sake of maintaining and building its relationship with Lehman. (LCPI financed the

9

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

Summerwind project.)  Lehman pressured SunCal not to go with DE Shaw on the Century City Project, even though Shaw was offering better terms.  Similarly, Lehman pressed SunCal not to use Goldman Sachs on the Marblehead Project.  (Both the Century City and Marblehead Projects were financed by Lehman ALI, and both are at issue in this action.)

55.    It was not just SunCal that brought Lehman in on projects; the partnership went both ways.  Lehman brought SunCal in to develop and manage (and effectively rescue) two large projects that Lehman was already involved in: Terra Lago and Delta Coves (the latter of which is at issue in this suit, and was financed by debt from Lehman ALI.).

56.    So close was the SunCal-Lehman relationship that in 2007, Lehman even financed an approximately $40 million unsecured option purchase in connection with the Delta Shores Project—something that would be unheard of from a mere arm's length "lender."

57.    In furtherance of Lehman's desire for greater exclusivity, in August 2006, SunCal, through its subsidiary SunCal Communities II, LLC ("SunCal II"), and Lehman, through its wholly-owned and controlled subsidiary, LBREP II/SCLFM, entered into the Operating Agreement of the Lehman SunCal Real Estate Fund LLC (the "Lehman SunCal Fund").  Lehman SunCal Fund is the parent of Plaintiff Debtors SunCal Century City, SunCal Oak Knoll, SunCal Del Amo and SunCal PSV, which own, respectively, the Century City, Oak Knoll, Del Amo and Palm Springs Village Projects at issue in this suit.

58.    The purpose of the Lehman SunCal Fund agreement was to make Lehman, with limited exceptions, the exclusive provider of financing for SunCal projects.  Under that agreement, "SunCal and its Affiliates shall make available for purchase by the Company (i.e., the Lehman SunCal Fund), and the Company shall have the right of first refusal to purchase . . . all Proposed Properties . . . which are sourced by or brought to SunCal . . . ."  Thus, with limited exceptions, SunCal and its affiliates were prohibited from making any investments in real property not in compliance with the provisions of the Fund.

59.    By 2007, Lehman was by far SunCal's biggest source of funding.  Sixty percent of SunCal's total financing came from Lehman.  Two out of every three SunCal projects were financed

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

by Lehman.  Seventy percent of SunCal's debt financing came from loans from Lehman ALI or LCPI.

**B.    _The Debtors and Projects at Issue_**

60.    Whenever Lehman ALI or LCPI provided financing for SunCal projects, the respective lending entities obtained liens on each property as security for their loans, and/or obtained pledges of equity interests in the SunCal-affiliated entities owning such properties.

61.    This lawsuit involves disputes regarding eleven Projects associated with thirteen Voluntary Debtor Plaintiffs ("Voluntary Projects"), and nine Projects associated with nine Trustee Debtor Plaintiffs ("Trustee Projects," and collectively with the Voluntary Projects, the "Projects").[4]

62.    The Plaintiff Debtors, the Projects they are associated with, and the Defendants who originally made the loan to each Plaintiff Debtor are as follows:

| VOLUNTARY DEBTOR PLAINTIFFS | | |
|---|---|---|
| **Plaintiff Debtor** | **Associated Project** | **Original Lender(s)** |
| SunCal Acton | Acton Estates | LCPI |
| SunCal Bickford | Bickford Ranch | LCPI<br>Lehman ALI |
| SunCal Del Rio | Del Rio | Lehman ALI |
| SunCal Emerald | Emerald Meadows | LCPI |
| SCC Communities | Joshua Ridge | Lehman ALI |
| SJD Partners | Pacific Point | Lehman ALI |
| SJD Development | Pacific Point | Lehman ALI |
| Palmdale Hills | Ritter Ranch | LCPI |
| SCC Palmdale | Ritter Ranch | LCPI |
| SunCal Summit | Summit Valley (including parcels owned by Seven Brothers and Kirby) | LCPI |
| SunCal Tesoro | Tesoro Burnham | Lehman ALI |
| SunCal I | Acton Estates, Beaumont Heights, Bickford Ranch, Emerald Meadows, Johannson Ranch, Summit Valley | LCPI |
| SunCal III | Acton Estates, Beaumont Heights, Bickford Ranch, Emerald Meadows, Johannson Ranch, Summit Valley | LCPI |

---

[4]  The Voluntary Debtor Plaintiffs were able to file voluntary bankruptcies in the first instance, because they did not have Lehman Equity Members whose consents were required for filing.  By contrast, involuntary petitions were initially filed against the Trustee Debtors, and only later were orders for relief entered and the Trustee appointed.

11

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

35043.17

| TRUSTEE DEBTOR PLAINTIFFS | | |
|---|---|---|
| **Plaintiff Debtor** | **Associated Project** | **Original Lender(s)** |
| SunCal Century City | Century City (10000 Santa Monica) | Lehman ALI |
| SunCal Delta Coves | Delta Coves | Lehman ALI |
| SunCal Heartland | Heartland | Lehman ALI |
| SunCal Marblehead | Marblehead | Lehman ALI |
| SunCal Northlake | Northlake | Lehman ALI |
| SunCal Oak Knoll | Oak Knoll | Lehman ALI |
| SunCal Oak Valley | Oak Valley | Lehman ALI |
| Sun Cal PSV | Palm Springs Village | Lehman ALI |
| SunCal Torrance | Del Amo | Lehman ALI |

## C.    *The Disputed Lehman Loans at Issue*

63.    The loans at issue in this lawsuit (the "Loans")[5] are as follows:

| LEHMAN LOAN | ORIGINAL LENDER | PLAINTIFF DEBTOR(S) | LOAN DATE | LOAN AMOUNT |
|---|---|---|---|---|
| Pacific Point Second Loan | Lehman ALI | SJD Partners | May 1997 | $20,000,000 |
| Bickford Second Loan | Lehman ALI | SunCal Bickford | May 25, 2005 | 30,000,000 |
| Northlake Loan | Lehman ALI | SunCal Northlake | September 9, 2005 | 100,000,000 |
| SunCal Communities I Loan | LCPI | SunCal Acton SunCal Bickford SunCal Emerald SunCal Summit SunCal I SunCal III | November 17, 2005 | 395,313,713.37 |
| Pacific Point First Loan | Lehman ALI | SJD Partners SJD Development | February 16, 2006 | 125,000,000 |
| Oak Valley Loan | Lehman ALI | SunCal Oak Valley | May 23, 2006 | 120,000,000 |
| Century City Loan | Lehman ALI | SunCal Century City | August 11, 2006 | 120,000,000 |
| Oak Knoll / Torrance Loan | Lehman ALI | SunCal Oak Knoll SunCal Torrance | November 30, 2006 | 167,700,000 |
| Ritter Ranch Loan | LCPI | Palmdale Hills | February 8, 2007 | 264,000,000 |
| PSV Loan | Lehman ALI | SunCal PSV | February 12, 2007 | 90,000,000 |
| SCC Palmdale Loan | LCPI | SCC Palmdale | March 30, 2007 | 95,000,000 |
| Delta Coves Loan | Lehman ALI | SunCal Delta Coves | April 20, 2007 | 236,000,000 |
| Marblehead / Heartland Loan | Lehman ALI | SunCal Marblehead SunCal Heartland | October 6, 2007 | 316,061,300 |
| Interim Loan | Lehman ALI | SCC Communities SunCal Tesoro SunCal Del Rio | October 31, 2007 | 20,000,000 |
| **TOTAL** | | | | **$2,099,075,013.37** |

---

[5] Many of the Loans were amended one or more times in regard to the amount loaned and/or the Projects providing security for the Loans, among other things. Also, proceeds from some of the later Loans were used to pay down outstanding amounts owing on earlier Loans. Thus, the table does not necessarily reflect the total funds provided on the Projects.

12

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL:(310) 552-4400    FAX:(310) 552-8400

35043.17

64.    Each of the above loans is secured by an alleged first-priority deed of trust in real property owned by the respective Debtors, with the following exceptions:

(a)    The Pacific Point Second Loan is secured by an alleged second-priority deed of trust on the Pacific Point Project previously owned by Plaintiff SJD Partners.

(b)    The Bickford Second Loan is secured by an alleged second priority deed of trust on the Bickford Project owned by Plaintiff SunCal Bickford.

(c)    The SunCal Communities I Loan is secured by (1) alleged first-priority deeds of trust on the Acton Estates, Bickford Ranch, and Emerald Meadows Projects owned by Plaintiffs SunCal Acton, SunCal Bickford, and SunCal Emerald, respectively, (2) alleged pledges of Plaintiff SunCal I's interests in SunCal Acton, SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal Johannson, and SunCal Summit; and (3) alleged pledges of Plaintiff SunCal Summit's interests in Seven Brothers and Kirby.

(d)    The Pacific Point First Loan is secured by an alleged first-priority deed of trust on the Pacific Point Project previously owned by Plaintiff SJD Partners, as well as an alleged pledge of SJD Development's interest in Plaintiff SJD Partners.

(e)    The Ritter Ranch Loan is secured by an alleged first-priority deed of trust on all real property and an alleged first priority lien on all personal property owned by Plaintiff Palmdale Hills.

(f)    The SCC Palmdale Loan is secured by an alleged pledge of Plaintiff SCC Palmdale's interest in Plaintiff Palmdale Hills.

(g)    The Interim Loan is secured by alleged first-priority deeds of trust on the Joshua Ridge and the Tesoro Burnham Projects owned by Plaintiffs SCC Communities and SunCal Tesoro, respectively, and an alleged first-priority lien on the net proceeds of the Del Rio CFD Bonds owned by Plaintiff SunCal Del Rio.

**D.    _Lehman ALI and LCPI Saddle the Projects with Unnecessary Excessive Debt_**

65.    In late 2005, around the same time that Lehman was negotiating to become SunCal's exclusive financing partner, LCPI made the "SunCal Communities I Loan" to Plaintiffs SunCal I,

13

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

35043.17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    SunCal III, SunCal Acton, SunCal Bickford, SunCal Emerald, and SunCal Summit, the claimed

2    outstanding amount of which is $343,221,391.

3        66.    Based on the SunCal Communities I Loan, LCPI has filed identical proofs of claim

4    for $343,221,391 against the estates of Plaintiffs SunCal I, SunCal III, SunCal Acton, SunCal

5    Bickford, SunCal Emerald, and SunCal Summit.[6]

6        67.    The proceeds from the SunCal Communities I Loan Agreement were used in part to

7    fund the Acton Estates, Beaumont Heights, Bickford Ranch, Emerald Meadows, Johannson Ranch,

8    and Summit Valley Projects. However, the funds advanced under this Loan were distributed such

9    that some Debtors received a large portion of the funds, while others received little or none at all.

10        68.    Specifically, the following Plaintiffs received the following amounts: SunCal Acton

11    ($380,069); SunCal Bickford ($174,570,287); SunCal Emerald ($44,763,858); SunCal Summit

12    ($9,925,373).[7] Plaintiffs SunCal I and SunCal III each received *nothing* for their $343 million in

13    indebtedness.

14        69.    Each of these Plaintiffs was saddled with a $343 million loan obligation, even though

15    each received only a fraction of that amount, if anything. By structuring the collateral for this Loan

16    in this matter, LCPI ensured that it would enjoy a security interest in the full value of the entire pool

17    of the properties—even in a good market in which Project values may have increased. At the same

18    time, LCPI effectively shifted its credit risk to other creditors, even though neither these Plaintiffs

19    nor their other creditors obtained any benefit in exchange for bearing this additional risk.

20        70.    LCPI also filed a $120 million proof of secured claim against Plaintiff SCC Palmdale

21    based on the SCC Palmdale Loan. Although this Loan was made to SCC Palmdale, and although it

22    was secured by SCC Palmdale's interest in Plaintiff Palmdale Hills, the entire Loan proceeds were

23

24        [6] Although Debtors SunCal Beaumont or SunCal Johannson received some of the funds from
this Loan, LCPI did not file claims against these Debtors as it has no alleged lien on their property,
25    but rather has an alleged lien on SunCal I's interest in these Debtors. Similarly, LCPI did not file
claims against Debtors Seven Brothers or Kirby, as it has no alleged lien on their property, but rather
26    has an alleged lien on SunCal Summit's equity interest in these Debtors. Accordingly, these four
Debtors are not currently named as plaintiffs herein. Should the Debtors' estates be substantively
27    consolidated, Plaintiffs reserve the right to amend their complaint to add these Debtors as plaintiffs.

28        [7] Non-plaintiff Debtors SunCal Beaumont and SunCal Johannson received $42,030,925 and
$14,636,674, respectively.

14

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

used by LCPI to make a paydown on the SunCal Communities I Loan Agreement that did not involve either SCC Palmdale or Palmdale Hills. LCPI thus burdened SCC Palmdale with $120 million in debt for which it got no benefit.

71.    Lehman ALI similarly cross-collateralized several Loans among multiple Plaintiffs and Projects so as to shift its credit risk to other creditors and increase its control over the Plaintiffs:

(a)    The Oak Knoll/Torrance Loan was cross-collateralized by the Oak Knoll Project and the Del Amo Project. Lehman ALI filed identical proofs of claim arising from this Loan against Plaintiffs SunCal Oak Knoll and SunCal Torrance in the amount of $158,141,365. However, the loan proceeds received by SunCal Oak Knoll was only $103,575,426, and by SunCal Torrance only $45,185,350.

(b)    The Marblehead/Heartland Loan was cross-collateralized by the Marblehead Project and the Heartland Project. Lehman ALI has filed identical proofs of claim arising from this Loan against Plaintiffs SunCal Heartland and SunCal Marblehead in the amount of $354,325,126. However, the loan proceeds received by SunCal Marblehead was only $258,843,352, and by SunCal Heartland only $49,594,848.

(c)    The Interim Loan was secured by alleged first-priority deeds of trust on the Joshua Ridge and Tesoro Projects, and an alleged first-priority lien on the proceeds of the Del Rio CFD Bonds owned by SunCal Del Rio. Lehman ALI has filed identical proofs of claim arising from this Loan against Plaintiffs SCC Communities, SunCal Tesoro, and SunCal Del Rio in the amount of $23,795,013. However, none of the proceeds from the Interim Loan were used to fund any of these Plaintiffs' Projects.

E.    *Lehman ALI's and LCPI's Promises to Fund the Plaintiff Debtors' Projects*

72.    For years prior to 2007, the SunCal-Lehman partnership thrived, and the parties prospered in their venture together. As of the start of 2007, Lehman projected making billions in profits over the ensuing years from its relationship with SunCal. However, in or about 2007, the real estate market experienced a downturn, and many of the Projects declined significantly in value.

73.    Beginning in or about the summer of 2007, SunCal's CEO, Bruce Elieff, and its

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

35043.17

President, Stephan Elieff, who were also authorized agents of each of the Plaintiff Debtors, had high-level discussions with Lehman representatives—including Walsh, as well as Paul Hughson ("Hughson") and Frank Gilhool ("Gilhool"), Managing Directors of Global Real Estate—to address these developments.

74.    Each of these individuals at Lehman had both apparent and actual authority to act and make representations on behalf of both Lehman ALI, in its capacity as lender to the nine Trustee Debtors and Plaintiffs SunCal Bickford, SJD Partners, SJD Development, SunCal Del Rio, SCC Communities, and SunCal Tesoro; and LCPI, in its capacity as the lender to SunCal Bickford and the remaining Voluntary Debtor Plaintiffs. (Gilhool would later sign key agreements with SunCal and the Debtors as the authorized signatory on behalf of not only LBHI, but also Lehman ALI, LCPI, and other Lehman Defendants.)

75.    In their dealings with SunCal, Walsh and the other Lehman executives generally made no distinction between the debt and equity interests, or between Projects financed by Lehman ALI debt and Projects financed by LCPI debt. As the financing partner in the parties' venture, Lehman would determine which Lehman entity would provide funding on which Projects, and would dictate the form that the funding would take, according to whatever suited Lehman's needs.

76.    The SunCal principals, on behalf of the Debtors, expressed to the Lehman executives, in their capacity as agents of Lehman ALI and LCPI, that Loans on the Projects were out of balance, and that SunCal would not be able to finance its operations or manage the Projects without assistance. SunCal suggested shutting down or at least slowing development of the Projects.

77.    On information and belief, it was not in Lehman ALI or LCPI's interest for SunCal to discontinue development activities, even though SunCal would not be able to move forward without additional funds. On information and belief, Projects with out-of-balance loans and/or slowed or halted construction would be harder for Lehman ALI or LCPI to market or syndicate, and these lenders' parent, LBHI, would likely be forced to report lower Project values on its books. On information and belief, Lehman ALI and LCPI wanted to create the appearance that they would recoup all, or a substantial portion, of their multi-billion dollar investment in the SunCal Projects, at

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL:(310) 552-4400  FAX:(310) 552-8400

35043.17

1    least in part to prop up LBHI's weakening stock price for the benefit of the securities markets and to

2    entice potential investors that LBHI was pursuing to fortify its own faltering finances.

3        78.    Walsh, on behalf of Lehman ALI and LCPI, instructed SunCal's Bruce Eileff not to

4    slow down or stop work.  He assured SunCal and the Debtors that Lehman ALI and LCPI would

5    provide the necessary funding to pay vendors and keep development of their Projects moving

6    forward, and that they would restructure the Debtors' Loans.

7        79.    Similarly, in numerous telephone conversations between Gilhool and SunCal

8    personnel, including SCC's COO, Frank Faye ("Faye"), and its General Counsel, Bruce Cook

9    ("Cook") (who were also officers of each of the Debtors), in 2007 and 2008, Gilhool assured SunCal

10   that Lehman ALI and LCPI were committed to funding the debts and obligations of the Projects and

11   the work they directed to be performed; that funding would be forthcoming; and that SunCal and the

12   Debtors should continue to have contractors undertake work to develop and preserve the value in the

13   Projects.

14       80.    In reliance on these representations, SunCal and the Debtors continued to move

15   forward with the Projects and incurred substantial expenses in hiring contractors to maintain and/or

16   develop them and to deal with public health and safety issues.

17       81.    Substantially all of the unsecured creditor claims and mechanic's lien claims that

18   have been filed against each of the Plaintiff Debtors' estates are obligations that Lehman ALI or

19   LCPI authorized the Plaintiff Debtors to incur and promised to provide funding for and/or promised

20   to assume.  A list of the unsecured creditors that have filed proofs of claims against each of the

21   Plaintiff Debtors, and the amounts of their claims, is included in Appendix A hereto.  A list of

22   mechanic lien claims filed against each of the Plaintiff Debtors, and the amounts of their claims, is

23   included in Appendix B hereto.

24   **F.**    *Lehman ALI and LCPI's Imposition of Control Over the Debtors and the Projects*

25       82.    Prior to the market downturn, Lehman afforded its partner SunCal substantial

26   discretion to use its expertise to manage development of the Projects.  SunCal, primarily via the

27   Debtors, would contract with third-party vendors to perform grading, health and safety compliance,

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

1    construction, landscaping, and other necessary services on the Project sites, and would coordinate

2    with municipalities for easements, entitlements and other requirements to proceed with development.

3    SunCal and the Debtors would conduct periodic budget meetings with Lehman ALI and LCPI to

4    discuss anticipated expenses over the next quarter; SunCal and the Debtors would submit to Lehman

5    ALI or LCPI documentation of expenses incurred on a monthly basis; and the applicable Lehman

6    lender, Lehman ALI and/or LCPI, in the regular course would remit payment to SunCal and the

7    Debtors so that the third-party vendors could be paid.

8        83.    However, beginning in or about 2007, Lehman ALI and LCPI became much more

9    "hands on" in scrutinizing—and approving—budgets and expenses.  On periodic conference calls,

10   SunCal would explain what Project payables had to be paid and what work had to be performed on

11   the Projects, and Lehman ALI or LCPI would have to give pre-authorization before any work could

12   occur or expenses be incurred.  Lehman ALI and LCPI would unilaterally dictate what future work

13   would proceed, and also decided what payables were "urgent" and what other payables could be

14   deferred.  Lehman ALI and LCPI thereby effectively took over not only financial control of the

15   respective Debtors' Projects, but ultimate management control as well.

16       84.    Lehman ALI and LCPI had not only input on, but importantly, veto power over any

17   expenditure undertaken on the Projects.  Lehman ALI and LCPI thus made SunCal, the Debtors and

18   their creditors dependent on their willingness to continue financing the Projects, and so Lehman ALI

19   and LCPI were in full control of the Projects.

20       85.    Lehman ALI and LCPI also used their control to impose onerous financing terms that

21   did not benefit the Debtors.

22       86.    For example, when SunCal initially approached Lehman ALI and LCPI about the

23   Projects' financial difficulties, they assured SunCal of immediate financing to cover operating

24   expenses, starting out at the $20 to $25 million range per month, and increasing from there.

25   However, only one such loan of $20 million (the October 2007 Interim Loan from Lehman ALI) was

26   made, as what was supposed to be "quick" financing got bogged down in Lehman ALI's extensive

27   documentation.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

18

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

87. Moreover, Lehman ALI insisted that SunCal put up security, previously unencumbered, to secure that financing, although that was not originally contemplated. In that connection, SunCal put up the interests of SunCal Del Rio, SCC Communities, and SunCal Tesoro in the Del Rio, Joshua Ridge and Tesoro Projects, respectively, as security for the Loan.

88. In addition, at the last minute, Lehman ALI decided to specify exactly what the $20 million could be used for, whereas all the way through the discussions, the money was simply to assist SunCal in meeting its operating expenses, as SunCal determined. Ultimately, Lehman ALI kept the funds and only disbursed them after it had approved the disbursements, most of which went to pay expenses of the Ritter Ranch Project, not any of SunCal Del Rio's, SCC Communities', or SunCal Tesoro's encumbered Projects.

### G. The Parties' Restructuring Agreement

89. SunCal and the Debtors continued to work with the contractors and develop the Projects in reliance on a promised overall "work out" or restructuring of the Projects and of the Loans and/or liens held by Lehman ALI and LCPI, as well as an assumption of SCC's and Elieff's indemnity liability on surety bonds covering work that had been done and was being done on the Projects. (SCC and Elieff had agreed to be indemnitors on the bonds in reliance on the relationship with Lehman and on the parties' mutual understanding that, although the Debtors were technically the primary obligors on the bonds, Lehman ALI and LCPI were, in effect, the primary financial obligors, were well aware of the work that was required by the Projects' respective municipalities to be performed and bonded in order for development to proceed, and agreed to be responsible for payment of that work.)

90. It was contemplated as of the October 2007 Interim Loan that a restructuring agreement would be entered into shortly, by no later than January or February of 2008. However, implementation was again dragged out due in large part to Lehman's extensive documentation.

91. In the meantime, until a restructuring agreement was entered into, Lehman ALI and LCPI stopped paying vendor payables, nor would they pay any management fees of SunCal Management LLC, which was managing each of the Debtors' Projects.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

92.    As the restructuring was pushed further and further out and Lehman ALI and LCPI continued to refuse to provide funding—despite their prior assurances—SunCal was effectively drained of liquidity, and so the Debtors became even more desperate and more dependent on Lehman ALI and LCPI financing.

93.    Lehman ALI and LCPI used the Debtors' vulnerability to their advantage in negotiating a restructuring agreement that was tipped heavily in Lehman's favor. (They also specifically exploited the fact that SCC and Bruce Elieff were indemnitors on millions of dollars worth of surety bonds that covered work being done on the Debtors' Projects, including work that Lehman ALI and LCPI had specifically authorized and agreed to pay for. If Lehman ALI and LCPI did not pay for this work as promised, SCC, and Elieff personally, would be exposed to massive bond liability. Hughson, in his capacity as an agent of, among others, Lehman ALI and LCPI, directly threatened Bruce Elieff that if SunCal did not agree to what the Lehman parties wanted, they would leave Elieff "hung out on the bonds.")

94.    For example, Lehman had indicated that it was open to suggestions from SunCal regarding the terms of a restructuring agreement. SunCal proposed that, particularly given the long and profitable history of the parties' venture together, the restructuring should take into account a reasonable view of the values of the properties, so that Lehman ALI and LCPI would at least in part share the burden of the market downturn.

95.    In response, Lehman became irate and countered with what was essentially a take-it-or-leave-it offer. Under the counter-proposal, (1) Lehman ALI and LCPI would be paid in full for every dollar that they had invested with SunCal that had not been returned, including interest on those amounts, default interest, and penalty fees; (2) Lehman would recoup all money that it had put in as equity in certain projects; and (3) Lehman would receive a 15% return on all funds contributed (both debt and equity) until they were returned—all without regard to the value of the properties. For the most part, this is how the restructuring agreement was ultimately structured.

96.    Similarly, when the restructuring agreement was finally entered into in late May 2008, SunCal sought to have its management fees reimbursed as of February 1, 2008, the date by

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

20

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  which the restructuring agreement should have and would have been entered into but for Lehman's

2  delays. Lehman ALI and LCPI refused, and in fact insisted upon a waiver of all past management

3  fees, with only management fees from May 15, 2008 onward being payable, at reduced rates.

4      97.    Lehman ALI and LCPI also required that SunCal pledge $33 million of its equity

5  interest in the four Lehman SunCal Fund projects (Century City, Del Amo, Oak Knoll and Palm

6  Springs Village) as partial consideration for Lehman ALI and LCPI's satisfaction of existing debt on

7  the other Projects subject to the restructuring agreement. SunCal did not believe these Projects (and

8  Palm Springs Village in particular) should have to be included as collateral to secure the

9  restructuring of the other Projects. Instead, SunCal felt that LBREP II/SCLFM, the Lehman equity

10  member in the Lehman SunCal Fund, should cover the Fund Projects' expenses, as there was plenty

11  of capital yet to be called to fund the existing debts and other needs of these Projects, per the terms

12  of the Fund's Operating Agreement. (Lehman had committed to contributing up to $600 million in

13  equity through the Fund, but had contributed only a fraction of that amount.) But Lehman ALI and

14  LCPI insisted, and SunCal had no choice but to acquiesce.

15      98.    Finally, on May 23, 2008, SunCal and certain of the Debtors entered into an omnibus

16  "Restructuring Agreement" with LBHI, Lehman ALI and other Lehman-controlled entities. (LCPI,

17  for reasons known to Lehman ALI and LCPI, was not a signatory to the Restructuring Agreement,

18  although it was a signatory to the subsequent "Settlement Agreement" signed in August 2008.)

19  Lehman's Gilhool signed the Restructuring Agreement on behalf of each of these entities.

20      99.    The Restructuring Agreement was designed to culminate in a closing ("Closing")

21  with the parties entering into a Settlement Agreement, the form of which was attached to the

22  Restructuring Agreement. Under the Settlement Agreement, new Lehman-controlled entities (each

23  with "SCLV" in its name, for "SunCal-Lehman Venture") would take title to the properties, assume

24  Debtors' debt obligations to Lehman ALI and LCPI and assume bond obligations previously owed

25  by SunCal, Elieff and the Debtors. These SCLV entities—along with what was purported by

26  Lehman ALI and LCPI to be a substantial-net-worth Lehman-related entity—were also to provide

27  indemnifications to SunCal and the Debtors. The Settlement Agreement was signed by the SunCal

28

35043.17

1    and Lehman parties on August 25, 2008. But as explained below, the Lehman parties did not close.

2    **H.    *The Projects Subject to the Restructuring Agreement***

3        100.    As originally executed in May 2008, the Restructuring Agreement applied to twelve

4    of the twenty Projects (as well as several other projects not at issue in this lawsuit): (1) Acton

5    Estates; (2) Beaumont Heights; (3) Bickford Ranch; (4) Emerald Meadows; (5) Heartland; (6)

6    Johannson Ranch; (7) Marblehead; (8) Northlake; (9) Oak Valley; (10) Pacific Point; (11) Ritter

7    Ranch; and (12) Summit Valley. The Plaintiff Debtors that owned and/or held equity interests in the

8    owners of these Projects were signatories to the May 2008 agreement.[8]

9        101.    Between May and August 2008, four additional projects were added to the

10    Restructuring Agreement by agreement of the parties: (1) Del Rio; (2) Joshua Ridge; (3) Palm

11    Springs Village; and (4) Tesoro Burnham. Accordingly, the Plaintiffs associated with these

12    Projects—SunCal Del Rio, SCC Communities, SunCal PSV, and SunCal Tesoro—became parties to

13    the Restructuring Agreement as amended. These Plaintiff Debtors were signatories to the August

14    25, 2008 Settlement Agreement, along with the Debtors associated with the original twelve Projects,

15    as "Borrowers" and/or "Grantors."

16        102.    Lehman ALI at first held the Delta Coves Project out from the Restructuring

17    Agreement, apparently because of the problems it was having with a separate participant in that

18    Project. But later in the summer, Lehman ALI indicated that it wanted that Project added as well.

19    SunCal and SunCal Delta Coves provided Lehman ALI information as to management fees, budgets,

20    and the like with respect to that Project being part of the restructuring. But Delta Coves was not

21    formally added to the Restructuring or Settlement Agreement by the time that the parent Lehman

---

[8] Specifically, the Restructuring Agreement was entered into by, among others, the "Borrowers," "Grantors" and "Pledgors," as defined in Annex 1 thereto. The "Borrowers" included Plaintiffs SunCal Marblehead, SunCal Heartland, SunCal Northlake, SunCal Oak Valley, SJD Partners, Palmdale Hills, SCC Palmdale, SunCal I, SunCal III, and SunCal Bickford.

The "Grantors" included Plaintiffs SunCal Marblehead, SunCal Heartland, SunCal Northlake, SunCal Oak Valley, SJD Partners, Palmdale Hills, SunCal Bickford, SunCal Acton, SunCal Summit and SunCal Emerald, and Debtors SunCal Beaumont and SunCal Johannson.

The "Pledgors" included Plaintiffs SCC Palmdale, SunCal I, SunCal Summit and SJD Development.

22

35043.17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL:(310) 552-4400    FAX:(310) 552-8400

1    entity, LBHI, filed for bankruptcy and Lehman ALI, LCPI and the other Lehman entities stopped

2    moving forward with Closing.

3        103.    Thus, four Projects were not formally added to the Restructuring Agreement—

4    Century City, Delta Coves, Oak Knoll and Del Amo; and the four Debtors associated with these

5    Projects—SunCal Century City, SunCal Delta Coves, Suncal Oak Knoll and SunCal Torrance—

6    were not signatories to the Settlement Agreement. Lehman ALI was the lender on each of these

7    Projects, three of which were part of the Lehman SunCal Fund.

8        104.    However, even as to these four Projects, Lehman ALI engaged in the same course of

9    conduct that it had regarding the other Projects regarding representations of funding. Lehman ALI

10    encouraged SunCal and these four Plaintiff Debtors to continue developing these Projects, and made

11    assurances of payment. Later, Lehman ALI approved all expenses, told these Plaintiffs what work to

12    move forward with, and promised it would pay for such work. These Plaintiffs performed

13    substantial work and incurred millions in third-party debt in reliance on Lehman ALI's promises of

14    payment.

15    ***I.    Lehman ALI's Obligations to Fund Under the Restructuring Agreement***

16        105.    Pursuant to the Restructuring Agreement, Lehman ALI, "as the Lender with respect

17    to each Loan," committed, among other things, to: (1) make advances under existing loans to fund

18    the continuing costs necessary to preserve the value of the Projects; (2) move forward to resolve the

19    accrued outstanding subcontractor payables, i.e., to make sure that the Projects' creditors were paid

20    for their work; and (3) to Close the transaction, whereby related Lehman entities would assume the

21    debt and obligations of the Projects.

22        106.    SunCal and the Plaintiff Debtors signed the Restructuring Agreement with Lehman

23    ALI with the understanding that Lehman ALI was by that point the entity that held the various first

24    trust deeds and/or pledged interests on all of the Projects subject to the Restructuring Agreement,

25    and that this was the reason why Lehman ALI, and not LCPI, was the signatory as "Lender."

26        107.    In any event, even after the Restructuring Agreement was signed, Lehman continued

27    to make no distinction between LCPI-financed Projects and Lehman ALI-financed projects, and

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    continued promises of financing emanated from the same Lehman representatives.

2    108.    SunCal and the Debtors believed and relied on Lehman ALI's and LCPI's promises

3    to maintain the long-term value of the Projects and that Lehman ALI and LCPI intended to act in

4    good faith to continue with those Projects.

5    109.    And it appeared—at least for a short while—that might be the case. Lehman ALI

6    arranged for a third party, Radco, to settle outstanding contractor payables. On information and

7    belief, Radco was provided some limited funding and authority to negotiate settlements, and did in

8    fact do so with some creditors. (Funding for settlements on Lehman ALI- and LCPI-funded Projects

9    came from the same source.) Lehman ALI and LCPI also provided approval for new work on the

10   Projects, and Lehman ALI provided payment for some of it. But this funding was minimal and soon

11   stopped.

12   **J.    *Lehman ALI and LCPI Fail to Fund the Projects as Promised***

13   110.    In the summer of 2008, SunCal and the Debtors were unaware that Lehman was

14   facing a looming financial crisis or that an LBHI bankruptcy was impending. However, Lehman's

15   concealed liquidity problems were impacting Lehman ALI's and LCPI's conduct.

16   111.    About a month prior to LBHI filing for bankruptcy in September 2008, Lehman ALI

17   withdrew funding and settlement authority from Radco, and so halted the process of resolving

18   millions of dollars of outstanding contractor payables on the Projects subject to the Restructuring

19   Agreement. This was work that Lehman ALI and/or LCPI had previously authorized and directed

20   SunCal to undertake, but that Lehman ALI later refused to pay for. The contractors would not

21   perform new work unless they received payment for work already done. The halting of Radco's

22   efforts further impeded development of the Projects and also impeded Plaintiffs' ability to deal with

23   public health and safety issues. Radco ultimately ended up resolving only a fraction of the total

24   outstanding payables.

25   112.    On information and belief, Lehman ALI arranged for these negotiations to occur at

26   least in part so it could maintain the appearance that the Projects would be funded and their value

27   maintained, so that LBHI would not have to write-down the Projects' values on its balance sheet.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

24

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

113.    Even as Lehman ALI was pulling back Radco's authority to fund, Lehman ALI's and LCPI's Gilhool continued to assure SunCal personnel, including Faye and Cook, that Lehman ALI and LCPI were committed to funding the Project obligations and paying for lender-authorized work, that the funds were coming, and that SunCal and the Debtors should continue work on the Projects.

114.    Lehman ALI also failed to provide the funding promised on the four Projects that were not made part of the Restructuring Agreement.

115.    At an August 25, 2008 meeting to sign closing documents for the Restructuring Agreement held in Los Angeles—just days after most of the Loans and associated liens had secretly been sold to Fenway—the Lehman parties announced that they wanted to push the Closing date out another month to September 30, 2008, ostensibly in order to obtain a few additional (and easily obtainable) third party consents. SunCal, still believing that the Lehman parties owned the Loans and were acting in good faith, agreed to the extension to September 30, 2008.

116.    Cook, among others, on behalf of SunCal and the Debtors, and Gilhool, on behalf of Lehman ALI, LCPI, and the other Lehman parties, signed hundreds of pages of settlement documents at the August 25 meeting, including the Settlement Agreement itself. Specifically, Gilhool signed the settlement documents on behalf of, among others, OVC and Northlake Holdings—Lehman affiliates that had apparently been assigned the Oak Valley and Northlake Loans and associated liens at some point after the Restructuring Agreement was entered into. OVC and Northlake Holdings were controlled and represented by the same individuals within Lehman that represented and controlled Lehman ALI. These Lehman entities succeeded to Lehman ALI's respective obligations to Plaintiffs SunCal Oak Valley and SunCal Northlake.

117.    Weil, Gotshal & Manges, the attorneys for Lehman ALI, LCPI, OVC and Northlake Holdings (and who are also their bankruptcy counsel), took all of the original signed settlement documents with them, claiming that they would provide copies to SunCal and the Debtors and that the Closing would occur shortly thereafter. (Despite months of requests, Lehman ALI, LCPI, OVC and Northlake Holdings only recently produced these signature pages in response to formal discovery requests.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

25

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17