**K.** *Lehman ALI, LCPI, OVC and Northlake Holdings Secretly Shuffle Their Interests in the Plaintiff Debtors' Loans*

118.   As discussed in more detail below, unbeknownst to SunCal or the Debtors at the time, on or just prior to August 22, 2008—days before Lehman ALI, LCPI, OVC and Northlake Holdings signed the Settlement Agreement and related documents that were to culminate in Closing—Lehman ALI transferred a number of its Loans and liens on the Projects to LCPI.  OVC and Northlake apparently likewise transferred the Oak Valley and Northlake Loans and associated liens, respectively, to LCPI.

119.   LCPI immediately turned around and sold all of its interest in those Loans and liens to a third party, Fenway, pursuant to an August 22, 2008 repurchase agreement, or "Repo." [9] Lehman ALI, LCPI, OVC and Northlake Holdings did not disclose to SunCal or the Debtors that they were selling to third parties the very obligations they were supposedly about to assume and restructure.  On information and belief, LCPI and Fenway entered into this transaction as part of a larger series of transactions designed to inject badly needed liquidity into the Lehman corporate structure, while making it appear that this liquidity was secured by something other than the Loans themselves.

**L.** *Lehman ALI, LCPI, OVC and Northlake Holdings' Failure to Close and Continued Refusal to Fund*

120.   On information and belief, the additional third-party consents required for Closing of the Restructuring Agreement and Settlement Agreement had been obtained (or could have been but for the Lehman parties' refusal to pursue them in good faith) by about the first week of September 2008, and thus all conditions precedent to closing had been met.  Yet Lehman ALI, LCPI, OVC and Northlake Holdings and the other Lehman entities took no steps to proceed with Closing.

---

[9] A standard Repo consists of a two-part transaction. The first part consists of the transfer of specified property by one party, the seller, to another party, the buyer, in exchange for cash. The second part consists of the contemporaneous agreement by the seller to repurchase the property at the original price, plus an agreed upon amount of interest, on a specified future date.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

121.    On September 15, 2008, LBHI filed a voluntary petition in bankruptcy court in the Southern District of New York.  Notwithstanding the bankruptcy, Gilhool was still assuring SunCal and the Debtors that Lehman ALI, LCPI, OVC and Northlake Holdings would continue to fund the Plaintiff Debtors' respective Projects so as to avoid harm and damage to them and to ensure that Plaintiffs' creditors were paid.

122.    As the end of September approached, SunCal and the Debtors became greatly concerned that Lehman ALI, LCPI, OVC, Northlake Holdings and the other Lehman parties were still not doing anything to facilitate closing.  On September 29, 2008, counsel for SunCal and the Debtors sent Weil Gotshal a notice indicating that they were prepared to close, and that all conditions precedent to Closing had been satisfied.  Lehman ALI, LCPI, OVC and Northlake Holdings did not provide a definitive response for weeks.

123.    In the meantime, the Projects required work.  Even if no new construction or development was to be undertaken, significant sums had to be spent on site security, erosion prevention, property taxes and other measures in order to prevent the Projects from becoming a public safety hazard, and in order to prevent losing valuable entitlements, accruing penalties and fines, and other losses to the Projects.

124.    SunCal and the Debtors repeatedly requested that Lehman ALI, LCPI, OVC and Northlake Holdings provide funding to pay for critical health and safety and value preservation measures on the Projects.  Between October 9 and November 4, 2008, SunCal's general counsel Cook sent Robert Brusco, an authorized agent of Lehman ALI, LCPI, OVC and Northlake Holdings, nearly two dozen letters practically begging them to provide promised funding to address critical needs on the Projects as promised.

125.    These letters raised issues such as potential and/or actual public exposure to asbestos, flooding, wind damage, looters and vandals, soil erosion and wildfires, in addition to demands from third-party vendors for payment for services and threats to discontinue service.  Cook's letters attached reports from governmental inspectors, and photographs documenting site conditions that posed a threat to public safety or that could subject the Projects to fines and penalties.  Cook's letters

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

1   were in addition to the myriad of correspondence, from employees of SunCal and the Debtors who

2   were working on the Projects to Lehman ALI, LCPI, OVC and Northlake Holdings employees,

3   requesting payment for previously approved payables or funding for other particular urgent needs.

4       126.   Despite Lehman ALI, LCPI, OVC and Northlake Holdings' assurances of their intent

5   to proceed with funding the Projects, the Debtors' request that Lehman ALI, LCPI, OVC and

6   Northlake Holdings address their critical financial needs fell on deaf ears. Lehman ALI, LCPI, OVC

7   and Northlake Holdings repeatedly requested detailed budgets regarding the needs of the Projects,

8   reinforcing the impression that they were willing and able to fund—budgets which SunCal and the

9   Debtors repeatedly and promptly provided. Lehman ALI, LCPI, OVC and Northlake Holdings

10  repeatedly promised the funding would be forthcoming. But the funds never materialized. In

11  November 2008, Brusco, on behalf of Lehman ALI, LCPI, OVC and Northlake Holdings, delivered

12  a message that these Lehman lenders were unwilling to fund the Projects and that they intended to

13  foreclose on all of the Projects.

14  ### M.   *Lehman ALI's Withdrawal of Badly Needed Cash from the Projects*

15      127.   At the same time that Lehman ALI, LCPI, OVC and Northlake Holdings were

16  stringing SunCal along, promising that funding would be forthcoming but refusing to provide it,

17  Lehman ALI was also secretly stripping the Projects of cash.

18      128.   SunCal Marblehead Heartland LLC, the parent of Debtors SunCal Marblehead and

19  SunCal Heartland, held approximately $3.4 million in two restricted accounts that were to be used

20  for the needs of the Marblehead and Heartland Projects. Unbeknownst to the Debtors, in or about

21  late October or early November 2008—precisely when the Debtors were begging that Lehman ALI

22  provide promised funding—Lehman ALI withdrew the money in those accounts, and then closed the

23  accounts. SunCal Marblehead and SunCal Heartland did not learn about the withdrawal or account

24  closures until they requested updated bank statements from the financial institution holding the

25  accounts.

26  ### N.   *The Lehman Lenders' Refusal to Fund Necessitates Debtors' Bankruptcies*

27      129.   In late October 2008, SunCal indicated to Lehman ALI, LCPI, OVC and Northlake

28

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

35043.17

Holdings that if they continued to refuse to provide critical funding, the Debtors associated with the Projects would have no choice but to file for bankruptcy.

130.    Finally, with creditor demands, fines and penalties and other expenses mounting, and no financial assistance forthcoming from Lehman ALI, LCPI, OVC or Northlake Holdings, the Voluntary Debtors filed for bankruptcy on November 6 and November 7, 2008.  When the Lehman Equity Members in the Trustee Debtors refused to provide consents to their filing, their creditors filed involuntary petitions against them beginning on November 12, 2008.

131.    There are now over 240 vendors and bonding companies claiming over $370 million in work and improvements that they provided on the Projects or are required to have performed.  (A list of the unsecured creditors can be found at Appendix A, and mechanic lien claimants at Appendix B.)  Substantially all of these sums are due to work done or bonded at Lehman ALI, LCPI, OVC and/or Northlake Holdings' behest, which they subsequently failed to pay for as promised.

## O.    *Lehman ALI, LCPI, OVC and Northlake Holdings' Attempts to Block the Debtors' Bankruptcies*

132.    Lehman ALI, LCPI, OVC and Northlake Holdings responded to the initial SunCal bankruptcies with a flurry of activity to try to foreclose on the Projects and avoid their obligations to Debtors' creditors.

133.    On November 12, the same day as the first of the SunCal involuntary bankruptcy filings, Lehman ALI rushed to improperly record notices of default against five Projects—Century City, Torrance, Palm Springs Village, Oak Knoll and Delta Coves—that were not yet in bankruptcy. Even aside from disputing the merits of the claimed defaults, these recordings were improper because no prior notice of default had been sent out, the contents of the notices were inadequate, and no opportunity was given to the equity members in these Projects to make contributions to avoid any default.

134.    On November 13, 2008, Lehman ALI, LCPI, OVC and Northlake sent SunCal and the Debtors a letter repudiating the Restructuring and Settlement Agreement and their prior promises of continued funding.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

*P.    **Lehman ALI, OVC and Northlake Holdings' Manipulation of the Lehman Equity Members***

135.    On information and belief, Lehman ALI, and OVC and Northlake Holdings as successors to Lehman ALI's role as lender to SunCal Oak Valley and SunCal Northlake, also used their control over the Lehman Equity Members in the nine Trustee Debtors to promote the lenders' interests at the expense of the Trustee Debtors or their creditors.

136.    For each of the nine Trustee Projects, Lehman held an equity interest through a (nominally) separate Lehman Equity Member in addition to extending a loan through Lehman ALI. A SunCal equity member and Lehman Equity Member were either members in the Trustee Debtor directly, or in the parent entity that wholly owned the Trustee Debtor, as follows[10]:

| Project | Debtor | Parent Entity | SunCal Equity Member In Debtor (or Parent) | Lehman Equity Member In Debtor (or Parent) |
|---|---|---|---|---|
| Century City | SunCal Century City | Lehman SunCal Fund | SunCal II | LBREP II/SCLFM |
| Delta Coves | Suncal Delta Coves | Delta Coves Master JV LLC | SunCal Delta Coves LLC | LB/L-DUC Master |
| Northlake | SunCal Northlake | N/A | SCC/Northlake, LLC | SCLV Northlake |
| Oak Knoll | SunCal Oak Knoll | Lehman SunCal Fund | SunCal II | LBREP II/SCLFM |
| Oak Valley | SunCal Oak Valley | N/A | SCC/Oak Valley, LLC | SCLV Oak Valley |
| Palm Springs Village | SunCal PSV | Lehman SunCal Fund | SunCal II | LBREP II/SCLFM |
| Torrance (Del Amo) | SunCal Torrance | Lehman SunCal Fund | SunCal II | LBREP II/SCLFM |

137.    For Oak Valley and Northlake, the applicable Lehman Equity Members ostensibly had management and control over the Debtors, SunCal Oak Valley and SunCal Northlake, including

---

[10] For Marblehead and Heartland, the SunCal and Lehman Equity Members were members in the "grandparent" (which wholly owned the parent entity that wholly owned the Debtors), as follows:

| Project | Debtor | Parent Entity | Grandparent Entity | SunCal Equity Member in Grandparent | Lehman Equity Member in Grandparent |
|---|---|---|---|---|---|
| Heartland | SunCal Heartland | SunCal Marblehead Heartland LLC | SunCal Master JV LLC | SCC JV Ventures LLC | SC Master Holdings |
| Marblehead | SunCal Marblehead | SunCal Marblehead Heartland LLC | SunCal Master JV LLC | SCC JV Ventures LLC | SC Master Holdings |

SC Master Holdings transferred its equity interest in SunCal Master JV LLC to SCC JV Ventures LLC in May 2009. The allegations of insider status against Lehman ALI via its affiliation with and/or control of the Lehman Equity Members extend to SC Master Holdings as well, but the other allegations regarding the Lehman Equity Members' breaches of their fiduciary duties do not.

30

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    control over whether to file for bankruptcy. For the other Trustee Projects, the Debtors could not file

2    for bankruptcy without the consent of the respective Lehman Equity Members, which refused to

3    provide such consent. Accordingly, all of the Trustee Projects were initiated as involuntary

4    bankruptcies (on November 12, 14, and 19, 2008).

5        138.    While Lehman ALI, OVC and Northlake Holdings left the Trustee Debtors no viable

6    alternative to bankruptcy with their refusals to fund, the Lehman Equity Members, for their part, sat

7    by silently and did nothing to try to prevent the Lehman lenders from foreclosing. They did not

8    contribute penny one. This is particularly galling as it relates to the Lehman SunCal Fund Projects,

9    because under the parties' operating agreement, the Lehman Equity Member on these Projects,

10    LBREP II/SCLFM, had a capital commitment obligation for $600 million, which it never came close

11    to satisfying.

12        139.    On November 18, 2008, after creditors of some of the Trustee Projects filed

13    involuntary petitions in order to stay foreclosure proceedings on the Projects, the Lehman Equity

14    Members sent the Trustee Debtors (or their parents)[11] virtually identical letters stating that the

15    SunCal equity members had no authority to consent to an order for relief from stay, nor make any

16    decision on behalf of the Trustee Debtors.

17        140.    The same parties within Lehman that controlled Lehman ALI, OVC and Northlake

18    Holdings—Walsh and his associates within the Global Real Estate Group—had and exercised

19    complete control over the Lehman Equity Members as well. The Lehman lenders' control of the

20    Lehman Equity Members did not cease when the parent Lehman entity, LBHI, filed for bankruptcy

21    in September 2008; the only thing that changed was the identity of the individuals running the show.

22        141.    After declaring bankruptcy, LBHI's leadership was taken over by its "restructuring

23    consultants," Alvarez & Marsal ("A & M"). A & M is in control not only of bankrupt Lehman

---

[11] Specifically, SCLV/Northlake sent its letter to Plaintiff Debtor SunCal Northlake regarding
the Northlake Project; SCLV/Oak Valley LLC sent its letter to Plaintiff Debtor SunCal Oak Valley
regarding the Oak Valley Project; LBREP II/SCLFM sent its letter to SunCal II regarding the
Century City, Del Amo, and Palm Springs Village Projects; and LB/L-DUC Master sent its letter to
SunCal Delta Coves LLC regarding the Delta Coves Project.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

31

35043.17

entities such as LBHI and LCPI, but also the non-bankrupt Lehman lenders (Lehman ALI, OVC, and Northlake Holdings), as well as the non-bankrupt Lehman Equity Members.

142.    Thus, when Lehman repudiated the Restructuring Agreement on November 12, 2008, it did so on behalf of LCPI and non-bankrupt Lehman ALI, OVC and Northlake Holdings in a letter by Gerald Pietroforte, one of two "Key A & M Contacts" in charge of Lehman's Real Estate "Asset Recovery Plan, Dispositions, and Pledged Collateral Issues."

143.    Similarly, on November 18, 2008, A & M's Jeff Fitts—the other "Key A & M Contact"—sent the letters on behalf of each of the Lehman Equity Members refusing to consent to voluntary bankruptcy filings by the Trustee Debtors.

144.    On information and belief, A & M and its asset recovery professionals involved in the Lehman-SunCal projects, Messrs. Fitts and Pietroforte, do not have in-depth hands-on experience or expertise in developing large-scale master-planned residential communities, as are involved here. On the other hand, SunCal and its cadre of experienced land development professionals have a very high level of expertise and experience based on many years and literally thousands of hours— including on the Projects at issue in this case.

145.    Common sense and fiduciary duties require the Lehman Equity Members and their asset recovery professionals to pursue the course of action best suited to enhancing the value of the Projects and maximizing the recovery to creditors. Instead, on information and belief, A & M is seeking to oust the Debtors and take over ongoing Projects—without paying for the millions in work that the Lehman ALI, LCPI, OVC and Northlake Holdings induced—and then trying to "re-invent the wheel," not only to churn fees for itself, but also to retain any upside in the Projects for itself at the expense of creditors.

146.    The Lehman Equity Members are using their control of the joint SunCal/Lehman Trustee Debtors not to benefit those entities or the Projects they represent, or to meet fiduciary duties to creditors, but solely to facilitate the interests of Lehman ALI, OVC and Northlake Holdings to effectuate foreclosures and avoid their obligations to creditors, and the interests of A & M itself.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

**Q.** *Lehman ALI, LCPI, OVC and Northlake Holdings' Attempts to Thwart Debtors' Reorganization in Bankruptcy*

147.    Once their efforts to prevent the Debtors from filing for bankruptcy failed, Lehman ALI, LCPI, OVC and Northlake Holdings tried everything in their power to delay and hinder the maintenance of value in the Projects or the successful reorganization of the respective Debtors.  The goal of these actions was to ensure that there would be no option other than a foreclosure by Lehman ALI, LCPI, OVC and Northlake Holdings, leaving nothing for the unsecured creditors who were induced to provide goods and services for the Projects, or to guarantee such goods and services, by these Lehman lenders.

148.    As for LCPI, the only one of these four entities that is in bankruptcy, it has fraudulently and deceitfully invoked its own automatic stay to try to impede the bankruptcies of Plaintiff Debtors Palmdale Hills, SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, SunCal I and SunCal III (as well as Debtors SunCal Beaumont and SunCal Johannson).

149.    These defendants' actions have delayed recovery to the Debtors' respective creditors, increased the claims against the Debtors' estates, increased the cost of administering their bankruptcies, and jeopardized the value of the Debtors' principal assets—the Projects themselves.

150.    The following is a summary of some of the more significant actions Lehman ALI, LCPI, OVC and Northlake Holdings have taken to impede the Debtors' bankruptcies:

151.    LCPI filed for bankruptcy in the Southern District of New York on October 5, 2008.  In November 2008, LCPI refused to consent to relief from its automatic stay to allow the Debtors to, among other things, obtain a priming loan to pay creditors or preserve value in the Projects (even though it did not own the relevant loans).

152.    In January 2009, Debtors Palmdale Hills, SunCal Acton, SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal Johannson, and SunCal Summit filed a motion to use cash collateral for their Projects' critical needs (the "Cash Collateral Motion").  Lehman ALI and LCPI objected to the Cash Collateral Motion, and LCPI again (falsely) invoked its automatic stay.  In response, these Debtors took the motion off calendar.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

153.    Around the same time, LCPI moved for relief from stay in the bankruptcy proceedings of Plaintiff Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, Palmdale Hills, SCC Palmdale and SunCal I to foreclose on the SunCal Communities I Loan, Ritter Ranch Loan and SCC Palmdale Loan; and Lehman ALI moved for relief from stay in the bankruptcy of SunCal Bickford to foreclose on the Bickford Second Loan (collectively, the "Stay Relief Motions").  Ironically, LCPI and Lehman ALI argued that they should be permitted to foreclose because of, among other things, Debtors' inability to preserve value in the Projects.  LCPI also argued that these Debtors could not defend against its Stay Relief Motions, because its own purported automatic stay prevented them from seeking to equitably subordinate LCPI's claims.

154.    In February 2009, Lehman ALI, OVC and Northlake Holdings opposed the "Sales Procedures Motion" brought by SCC Communities, SunCal Del Rio, SunCal Tesoro, and the Trustee, which sought an order approving overbid procedures relating to the proposed sale of the Joshua Ridge, Del Rio, Tesoro Burnham, and nine Trustee Projects to D.E. Shaw.  (That motion has since been amended to include only the sale of the Trustee Debtors' nine properties.)

155.    In March 2009, LCPI asserted—both before this Court and in New York—that the Sales Procedures Motion violated its automatic stay.  LCPI also appealed the orders denying its Stay Relief Motions and holding that the Sales Procedures Motion did not violate LCPI's automatic stay, thus forcing the Debtors to incur the time and cost of defending those rulings before the Ninth Circuit Bankruptcy Appellate Panel.

156.    The irony is, many of the actions that Lehman ALI, LCPI, OVC and Northlake Holdings took to hinder or delay the progress of the Debtors' bankruptcy proceedings were based on lies: their continued ownership of each of the Loans at issue and the applicability of LCPI's stay.

### R.    *Lehman ALI, LCPI, OVC and Northlake Holdings' Concealment of their Sale of the Loans at Issue*

157.    Lehman ALI, LCPI, OVC and Northlake Holdings filed proofs of claims in the Debtors' bankruptcy proceedings, and have continuously represented that they owned the obligations set forth in the Loans and, consequently, that they are "creditors" of the Debtors. The Debtors did

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

35043.17

1    not question the veracity of this representation—until Danske appeared before the Court on March

2    25, 2009 and disclosed that it held all right, title and interest in the $120 million Century City Loan

3    to SunCal Century City and the associated lien, pursuant to an assignment from Lehman ALI. Prior

4    to this appearance, Lehman ALI, LCPI, OVC and Northlake Holdings had been contending that

5    they, collectively, were the holders of all of the Loans, including the Century City Loan.

6        158.    Based upon this disclosure, the Debtors requested, by letter of March 26, 2009, that

7    Lehman ALI, LCPI, OVC and Northlake Holdings disclose whether any of the remaining Loans had

8    been transferred to third parties. Lehman ALI, LCPI, OVC and Northlake Holdings ignored this

9    request for several weeks, and only responded after the Debtors had propounded a third-party

10    subpoena on J.P. Morgan (who they believed may have been the transferee of various Loans) noticed

11    for April 17, 2009.

12        159.    In a letter dated April 15, 2009, Lehman ALI, LCPI, OVC and Northlake Holdings

13    finally admitted that the Loans secured by liens against no less than fifteen out of the twenty

14    Projects[12] were subject to Repos; they further admitted that the "various counterparties" to these

15    agreements (primarily Fenway and/or J.P. Morgan) "may claim some interest" in these Loans.

16    However, Lehman ALI, LCPI, OVC and Northlake Holdings did not disclose what "interest" these

17    counterparties "may claim," and they did not provide the Debtors any of the documentation relating

18    to these claimed interests.

19        160.    It was not until J.P. Morgan produced documents in response to the subpoena on

20    April 28, 2009 that the Debtors obtained confirmation of what was only hinted at in Lehman ALI,

21    LCPI, OVC and Northlake Holdings' April 15 letter—that these Lehman lenders relinquished all

22    right, title and interest in the seven "Sold Loans" (defined below) prior to the Debtors' petition

23    dates.[13]

24

---

25    [12] They are: Acton Estates, Beaumont Heights, Bickford Ranch, Delta Coves, Emerald Meadows, Heartland, Johannson Ranch, Marblehead, Northlake, Oak Valley, Pacific Point, Palm Springs Village, Ritter Ranch, Summit Valley, and 10000 Santa Monica (aka Century City).

26    

27    [13] On or about May 27, 2009, the Lehman lenders produced documents in response to Debtors' first set of requests for production. This production was substantially similar to, although in key respects less inclusive than, what J.P. Morgan produced. Thus, the Lehman lenders, A & M, and their attorneys continue their course of deception and concealment.

28    

35

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

35043.17

161.    The documents produced in discovery revealed the following: On August 22, 2008, Fenway Capital, as "Buyer," and LCPI, as "Seller," entered into a *Master Repurchase Agreement* (the "MRA"). On the same date, the parties entered into a repurchase transaction pursuant to which Fenway purchased all of LCPI's right, title and interest in the following loans (together, the "Sold Loans"):

| Loan | Purported Lender | Alleged Balance |
|---|---|---|
| SunCal Communities I Loan | LCPI | $343,221,391 |
| Ritter Ranch Loan | LCPI | $287,252,096 |
| SunCal PSV Loan | Lehman ALI | $88,257,340 |
| Delta Coves Loan | Lehman ALI | $206,023,142 |
| Marblehead/ Heartland Loan | Lehman ALI | $354,325,126 |
| Oak Valley Loan | OVC | $141,630,092 |
| Northlake Loan | Northlake Holdings | $123,654,777 |
| **TOTAL** | | **$1,544,363,964** |

162.    This repurchase transaction was governed by the terms of the MRA, which states: "All of Seller's interest in the Purchased Securities shall pass to Buyer on the Purchase Date." As this Court ruled on June 30, 2009, this was a sale in which title passed to Fenway. After this transaction, LCPI served solely as the "hold-in-custody-agent" of the Sold Loans for Fenway.

163.    Under the MRA documents, LCPI, as hold-in-custody agent, "shall not take any action (aside from actions in accordance with instructions from Buyer) in respect of the Purchased Securities or Additional Purchased Securities," save for certain limited exceptions that either never applied or ceased to apply once LCPI filed for bankruptcy and defaulted in fall 2008.

164.    Moreover, the MRA states that LCPI's custodial duties cannot be assigned or transferred without the consent of Fenway. LCPI's limited custodial rights were never transferred to Lehman ALI, Northlake Holdings or OVC.

165.    In summary, under the MRA, LCPI has no interest in the Sold Loans and is barred from taking any action with respect thereto. Lehman ALI, OVC and Northlake have no rights in the Sold Loans whatsoever.

166.    In fact, the beneficial interest in the Sold Loans apparently lies elsewhere. The Sold Loans serve as collateral for a "Series 2008-2 Note" issued by Fenway to its affiliate, Fenway Funding, LLC ("Fenway Funding"), on August 22, 2008. The proceeds of the Series 2008-2 Note

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

36

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

serve as collateral for certain commercial paper notes ("CP Notes") that were issued by Fenway

Funding on August 22, 2008 and acquired by LBHI. Around the same time, LBHI pledged the CP

Notes to secure certain obligations owed to JP Morgan.

167.    Notably, LCPI "repo'd" the Sold Loans to Fenway on August 22, 2008—just days

before the August 25, 2008 meeting at which Lehman ALI, LCPI, OVC and Northlake signed the

Settlement Agreement with SunCal in their capacity as "Lenders." Thus, while these Lehman

lenders were apparently scrambling to obtain badly needed liquidity from J.P. Morgan (which, on

information and belief, needed to appear to be secured by something other than the Sold Loans

themselves—a maneuver Fenway was more than happy to facilitate), they were indicating to SunCal

and the Debtors that they fully intended to perform and expected that they would perform their

obligations under the Restructuring and Settlement Agreement. Moreover, they were still

encouraging SunCal and the Debtors to move forward with development of the Projects, and

assuring them that payment would be forthcoming.

### S.    *Lehman ALI, LCPI, OVC and Northlake Holdings' Repeated Assertion of Their "Ownership" of the Sold Loans*

168.    Despite the fact that Fenway owned the Sold Loans for months prior to Debtors'

bankruptcy filings, Lehman ALI, LCPI, OVC and Northlake Holdings filed numerous proofs of

claim and pleadings in the Debtors' bankruptcy cases—virtually all of which were designed to

thwart Debtors' reorganization—in which they purported to own the Sold Loans.

### 1.    *Disputed Proofs of Secured Claims Filed by Lehman ALI, LCPI, OVC and Northlake Holdings Based on the Sold Loans*

169.    On March 27, 2009—*after* Debtors had asked Lehman ALI, LCPI, OVC and

Northlake Holdings to come clean about the current ownership of the Loans— Lehman ALI, LCPI,

OVC and Northlake Holdings filed thirteen proofs of secured claims based on the Sold Loans. They

include the following (some clams are duplicative as they are based on cross-collateralized loans):

| DISPUTED PROOFS OF CLAIM FILED BY LEHMAN CLAIMANTS BASED ON SOLD LOANS | | | | |
|---|---|---|---|---|
| **Claimant** | **Sold Loan** | **POC No.** | **Debtor** | **Claim Amount** |
| LCPI | SunCal Communities I Loan | 6 | SunCal Acton | $343,221,391 |
| LCPI | SunCal Communities I Loan | 16 | SunCal Bickford | $343,221,391 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

| LCPI | SunCal Communities I Loan | 7 | SunCal Emerald | $343,221,391 |
| LCPI | SunCal Communities I Loan | 12 | SunCal Summit | $343,221,391 |
| LCPI | SunCal Communities I Loan | 1 | SunCal I | $343,221,391 |
| LCPI | SunCal Communities I Loan | 2 | SunCal III | $343,221,391 |
| LCPI | Ritter Ranch Loan | 65 | Palmdale Hills | $287,252,096 |
| Lehman ALI | Delta Coves Loan | 21 | SunCal Delta Coves | $206,023,142 |
| Lehman ALI | Marblehead/Heartland Loan | 9 | SunCal Heartland | $354,325,126 |
| Lehman ALI | Marblehead/Heartland Loan | 21 | SunCal Marblehead | $354,325,126 |
| Lehman ALI | SunCal PSV Loan | 12 | SunCal PSV | $88,257,340 |
| Northlake Holdings | Northlake Loan | 6 | SunCal Northlake | $123,654,777 |
| OVC | Oak Valley Loan | 16 | SunCal Oak Valley | $141,630,092 |

170.    On the Official Form for each of these proofs of claims, under "Name of Creditor (the person or other entitiy to whom the debtor owes money or property)," Lehman ALI, LCPI, OVC or Northlake Holdings, as applicable, listed itself, and did not note that it was acting in an agency capacity for Fenway or anyone else.  However, as this Court held, Lehman ALI, LCPI, OVC and Northlake Holdings were not the "creditors" who could file proofs of claims.  While the attachments to each proof of claim stated that the Lehman claimant was "agent for the lenders" under the applicable Loan agreement (which in every case was originally Lehman ALI or LCPI), they did not state who the current "lenders" were, and never made reference to Fenway, the MRA, or any transfer of any interest in the Sold Loans.  Each of these proofs of claim—along with the attachments—was prepared by A & M's Gerald Pietroforte (as "Managing Director" of each Lehman lender) and/or by Weil Gotshal, and each was signed by Pietroforte.

171.    Given the transfer of the seven Sold Loans to Fenway, the transfer of the Century City Loan to Danske, and the transfer of the Pacific Point First Loan to Lehman Re (discussed below), the only proofs of claim filed by the Lehman claimants that are based on Loans that may not have been transferred are the following (several are duplicative based on cross-collateralized Loans):

| PROOFS OF CLAIM FILED BY LEHMAN CLAIMANTS  NOT BASED ON SOLD LOANS | | | | |
| Claimant | Loan | POC No. | Debtor | Claim Amount |
|---|---|---|---|---|
| LCPI | SCC Palmdale Loan | 1 | SCC Palmdale | $119,664,305 |
| Lehman ALI | Bickford Second Loan | 17 | SunCal Bickford | $56,494,059 |
| Lehman ALI | Oak Knoll/Torrance Loan | 12 | SunCal Oak Knoll | $158,141,365 |
| Lehman ALI | Oak Knoll/Torrance Loan | 4 | SunCal Torrance | $158,141,365 |
| Lehman ALI | Interim Loan | 9 | SCC Communities | $23,795,013 |
| Lehman ALI | Interim Loan | 14 | SunCal Del Rio | $23,795,013 |
| Lehman ALI | Interim Loan | 7 | SunCal Tesoro | $23,795,013 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

35043.17

172.    As Lehman ALI and LCPI have acknowledged in pleadings filed with this Court, the Bickford Second Loan has no value because it is subordinate to the SunCal Communities I Loan, and the SCC Palmdale Loan has no value because it is secured by a pledge of SCC Palmdale's equity interest in Palmdale Hills. Only Lehman ALI's Oak Knoll/Torrance Loan and the Interim Loan are supported by any value.

173.    Thus, LCPI has no security interest in any of the proofs of claim it filed with this Court. Lehman ALI has a security interest only in the Oak Knoll/Torrance Loan and the Interim Loan. OVC and Northlake Holdings have no interest in any of the Loans whatsoever.

### 2.    *Key Pleadings Filed By Lehman ALI, LCPI, OVC and Northlake Holdings Based On the Sold Loans*

#### a.    **Stay Relief Motions**

174.    In the brief filed by Lehman ALI and LCPI in support of their Stay Relief Motions, Lehman ALI and LCPI alleged that they were entitled to foreclose because, among other things, *their* interests in Plaintiff Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, Palmdale Hills, and SunCal I's properties were not adequately protected.

175.    The loans that formed the primary basis of LCPI's Stay Relief Motions—totaling $619 million of the $649 million at issue—were the Ritter Ranch Loan and the SunCal Communities I Loan, ostensibly still owned by LCPI. In fact, these Sold Loans were transferred to Fenway five months before the Stay Relief Motions were filed. Accordingly, the factual assertion of ownership underlying LCPI's Stay Relief Motions was and is false.

176.    In fact, the only Loans on which the Stay Relief Motions were premised that were not Sold Loans were Lehman ALI's Bickford Second Loan and LCPI's SCC Palmdale Loan. But as noted above, these Loans were not secured by any value. Thus, the only Loans with regard to which Lehman ALI and LCPI were the real parties in interest who could seek a foreclosure were Loans with no value, making their Stay Relief Motions moot in their entirety.

#### b.    **Opposition to Sales Procedure Motion**

177.    The Sale Procedures Motion includes a provision disallowing Lehman ALI's, OVC's,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    and Northlake Holdings' credit bid rights. On February 25, 2009, Lehman ALI, OVC and Northlake

2    Holdings filed an objection to the Sale Procedures Motion that referred to the "Lehman Lenders'

3    collateral," the "Lehman Lenders rights to credit bid," and the "liens held by the Lehman Lenders."

4        178.    However, due to the August 22, 2008 MRA, OVC and Northlake Holdings have no

5    legal or beneficial interest in the Oak Valley or Northlake Projects, respectively. Likewise, Lehman

6    ALI has no interest in the following Trustee Debtors' Projects: Palm Springs Village, Delta Coves,

7    Marblehead, Heartland or Century City (the last of which was separately assigned to Danske).

8    Accordingly, except with respect to Lehman ALI's interest in the Oak Knoll / Torrance Loan,

9    Lehman ALI, OVC and Northlake Holdings have no basis to oppose the Sale Procedure Motion.

10   **T.    _LCPI's Improper Invocation of the Automatic Stay_**

11       179.    Because property that a debtor holds as a mere custodian for another, without any

12   beneficial interest, is not deemed "property" of the debtor's estate, efforts by Debtors SunCal Acton,

13   SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal Johannson, SunCal Summit,

14   Palmdale Hills, and SunCal I to use cash or otherwise deal with personal or real property securing

15   the Sold Loans does not implicate LCPI's automatic stay—and never has since the inception of these

16   Debtors' bankruptcy proceedings.

17       180.    Nevertheless, LCPI has filed numerous pleadings (or even procedurally improper

18   "letter briefs") with this Court—as well as with the bankruptcy court in its own bankruptcy in New

19   York, and even with the Ninth Circuit Bankruptcy Appellate Panel—in which it asserted that the

20   automatic stay in its bankruptcy precluded these Debtors from taking certain actions in their

21   proceedings. LCPI's assertions were based on its purported ownership of the Sold Loans. These

22   pleadings include the following:

23       **_1.    New York Opposition to Priming Loan_**

24       181.    In November 2008, LCPI opposed Debtors' motion filed in New York seeking relief

25   from LCPI's stay so that Debtors could administer their estates and, among other things, obtain a

26   priming loan to address the Projects' critical needs. In (successfully) opposing that motion, LCPI

27   asserted that its automatic stay applied to the Debtors' efforts to deal with all of the Projects—even

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

those encumbered by Sold Loans.

### 2. *Objection to Cash Collateral Motion*

182.    Given that Debtors could not obtain a priming loan due to LCPI's opposition, Debtors Palmdale Hills, SunCal Acton, SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal Johannson, and SunCal Summit sought funding to preserve their Projects' value via the Cash Collateral Motion. LCPI had not raised the issue of its stay in opposing a cash collateral motion in related proceedings before this Court, nor in repeated discussions with the Court and Debtors' counsel.

183.    Nevertheless, LCPI filed an objection to the Cash Collateral Motion in which it asserted that Debtors' attempt to use cash collateral to preserve value in the Projects constituted a "flagrant disregard of [its] automatic stay."

### 3. *"Emergency" Motion to Enforce Stay In New York*

184.    Not content with opposing the Cash Collateral Motion before this Court, LCPI, two business days before the Cash Collateral Motion was to be heard, filed a motion in its own proceedings in New York wherein it contended that it held a lien on the subject cash, and that the use of the funds proposed in the Cash Collateral Motion would violate its automatic stay. Counsel for the moving Debtors was even threatened with sanctions for bringing the Cash Collateral Motion. In response, the Cash Collateral Motion was taken off calendar.

185.    In fact, the only Loan potentially secured by a lien against the cash that the Debtors were seeking to use was the Ritter Ranch Loan, one of the Sold Loans. Accordingly, all right, title and interest in this Loan and the associated lien is held by Fenway, which was not (and is not) in a bankruptcy proceeding. As such, LCPI's stay was not applicable. LCPI and its counsel falsely asserted LCPI's ownership to the Court and the Debtors.

### 4. *Lehman ALI's Super-Priority Loan Resulting from LCPI's False Invocation of Its Stay*

186.    Because LCPI first opposed Debtors' effort to obtain approval from the New York Court for a priming loan, and then opposed the Cash Collateral Motion, in April 2009, four

41

35043.17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

Voluntary Debtor Plaintiffs (SunCal Acton, SunCal Bickford, SunCal Emerald and Palmdale Hills) and the Trustee on behalf of eight of the Trustee Debtors (all except SunCal Torrance) were ultimately forced to stipulate to loans from Lehman ALI totaling $1.7 million to address the Projects' critical needs. Pursuant to the parties' stipulation and the Court's order, Lehman ALI's loan was granted super-priority status.

187.    The source of the money that Lehman ALI "loaned" to these Debtors was cash in Plaintiff Debtor Palmdale Hills' account. This was the very same money that was sought to be used via the Cash Collateral Motion—money which was subject to disputed liens. Had LCPI not falsely invoked its stay and had the Cash Collateral Motion been granted, Debtors could have avoided repayment of those sums in the event that equitable subordination was granted. However, because of LCPI's false invocation of its stay and the resulting withdrawal of the Cash Collateral Motion, Lehman ALI managed, just a few months later, to endow the loan of these same funds with super-priority status, and thus ostensibly not subject to Plaintiffs' equitable subordination action.

188.    Thus, Lehman ALI effectively turned a $1.7 million loan subject to defenses into a super-priority loan as a result of LCPI's lie regarding the applicability of its stay.

### 5.    *Intervention in Sales Procedures Motion*

189.    The Sales Procedures Motion was originally filed February 18, 2009, and was originally set to be heard on Tuesday, March 10, 2009. Although Lehman ALI, OVC, and Northlake Holdings filed an opposition, LCPI did not. This was not surprising, given that the Debtors— although they had contemplated a sale of all of the Projects since November—specifically tailored the Sales Procedures Motion to apply to a proposed sale of Projects on which LCPI did not purport to be the lender, in order to avoid any accusation that the Debtors were violating LCPI's purported automatic stay.

190.    However, on the afternoon of Sunday, March 8, 2009, counsel for LCPI emailed Debtors' counsel, threatening that LCPI would seek sanctions in New York for Debtors' purported "flagrant violation" of its automatic stay, unless the moving Debtors withdrew the Sales Procedures Motion by 10:00 a.m. the next morning, March 9.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

42

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

191.    On March 9, 2009, LCPI also e-mailed to this Court and the bankruptcy court in New York a "letter brief" which asserted that the Sales Procedures Motion, among other things, "threaten[s] LCPI's property interests." This letter brief attached the motion for sanctions that LCPI intended to file in New York.

192.    In response to LCPI's threat, on March 9, 2009, the Trustee, SCC Communities, SunCal Del Rio, and SunCal Tesoro filed emergency motions seeking an order finding that the automatic stay in LCPI's bankruptcy case did not apply to the Sale Procedures Motion. (LCPI responded with another e-mail directly to the New York bankruptcy court.)

193.    On March 10, 2009, the Court granted the moving Debtors' emergency motions, holding that the automatic stay in the LCPI bankruptcy case did not apply to the Sales Procedures Motion.

194.    Had LCPI admitted all along that its automatic stay did not apply, Plaintiff Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, Palmdale Hills and SunCal Summit, and Debtors SunCal Beaumont, SunCal Johannson, Seven Brothers and Kirby could have joined in the Sales Procedures Motion when it was originally filed. Thus, LCPI's false invocation of its stay delayed by months a proposal by these Debtors to sell the Acton Estates, Bickford Ranch, Beaumont Heights, Emerald Meadows, Johannson Ranch, Ritter Ranch, and Summit Valley Projects. This has delayed or diminished the prospect of recovery by the creditors of these Debtors who provided goods or services or guaranteed the work to be performed on these Projects.

**6.    _Stay Relief Motions_**

195.    As noted above, LCPI's Stay Relief Motions were premised entirely on Sold Loans (with the exception of the SCC Palmdale Loan admittedly supported by no value). LCPI argued in those Motions that the subject Debtors could not submit a feasible plan because their plan was premised on equitable subordination, and they could not seek to equitably subordinate LCPI's claims without violating LCPI's purported automatic stay. This contention was false.

**7.    _LCPI's Appeal from the Denial of its Stay Relief Motions_**

196.    The Court denied the Stay Relief Motions, ruling that LCPI's purported stay did not

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**
35043.17

1   apply to Debtors' efforts to equitably subordinate LCPI's claims (because Debtors were defending

2   against affirmative conduct by LCPI, not because the Loans were not LCPI's property). LCPI has

3   appealed the Court's ruling, and so has continued to falsely assert its stay, this time in the Ninth

4   Circuit BAP. The moving Debtors have already had to file a lengthy opposition to LCPI's appeal.

5       **8.    *LCPI's Second Appeal***

6       197.    The Court also granted an order allowing the Plaintiffs to file a second amended

7   complaint in this adversary proceeding naming LCPI as a defendant. LCPI baselessly appealed that

8   ruling to the BAP as well. The BAP clerk determined—only after briefing from both sides—that the

9   ruling was interlocutory and not immediately appealable.

10  *U.    Summary of Lehman ALI, LCPI, OVC and Northlake Holdings' Post-Petition*

11      *Inequitable Conduct*

12      198.    On information and belief, Lehman ALI, LCPI, OVC and Northlake Holdings were

13  intentionally vague in their proofs of claim about the identity of the current owners of the Sold

14  Loans, so as to "justify" LCPI having repeatedly invoked its inapplicable stay. Lehman ALI also

15  took advantage of this ambiguity in securing super-priority status for its $1.7 million "loan." But for

16  Danske's appearance and the Debtors' subsequent pursuit of discovery, the truth regarding the

17  owners of the Sold Loans might never have been revealed.

18      199.    Lehman ALI, LCPI, OVC and Northlake Holdings' conduct of making repeated

19  misrepresentations to this Court regarding their ownership of the Loans and the applicability of

20  LCPI's automatic stay has wasted many hundreds, if not thousands, of hours of the Plaintiff Debtors'

21  and the counsel's time (not to mention the Court's), delaying the progress of the bankruptcy

22  proceedings and wasting estate assets, to the detriment of all of the Debtors' creditors.

23      200.    Lehman ALI, LCPI, OVC and Northlake Holdings' stubborn refusal to allow the

24  Debtors to use funds to pay for the Projects' critical needs have increased the claims against the

25  Debtors' estates. For example, Lehman ALI, LCPI, OVC and Northlake Holdings refused even to

26  pay property taxes on the Projects. As a result, tax penalties have mounted and continue to increase.

27  Because these tax claims have priority over unsecured and mechanic liens claims, the Lehman

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    defendants' conduct in letting these claims mount has made it even less likely that there will be

2    funds available to pay for the less prioritized claims.

3        201.    The delays Lehman ALI, LCPI and OVC have caused in work being performed on

4    the Projects post-petition (as well as pre-petition) have also increased the claims against the Debtors'

5    bonding companies, which have in turn increased the bond companies' claims against the Debtors.

6        202.    The delays the Lehman lenders have caused in the administration of the Debtors'

7    bankruptcies has also jeopardized the value of the Projects—the primary source of recovery for all

8    creditors—through mounting fines, penalties, erosion, deterioration of work already performed, the

9    failure to pay property taxes, and potential loss of entitlements, among other things.

10        203.    Because of this extensive post-petition inequitable conduct, Defendants' alleged

11    secured claims should be equitably subordinated not only to the general unsecured claims and

12    mechanics' lien claims against the respective Plaintiff Debtors (substantially all of which are based

13    on work induced by Defendants), but to the priority and administrative claims of the respective

14    Plaintiff Debtor's estate as well.

15    **V.    _Lehman ALI and LV Pacific Point's Fraudulent Acquisition of the Pacific Point Project_**

16        204.    Defendants' inequitable conduct regarding the Pacific Point Project was particularly

17    egregious.

18        205.    Pacific Point is a 200 plus acre development in a prime location overlooking the

19    Pacific Ocean in San Juan Capistrano, California.  At the time of the Restructuring and Settlement

20    Agreement, the Pacific Point property was owned by Plaintiff SJD Partners.

21        206.    Pacific Point was among the Projects included in the Restructuring and Settlement

22    Agreement.  SJD Partners was identified in Annex I to the Restructuring Agreement as both a

23    "Borrower" and "Grantor," and SJD Development was identified as a "Pledgor."

24        207.    Although the Restructuring and Settlement Agreements contemplated that at Closing,

25    the Debtors would transfer title to the Projects to new Lehman entities, the parties' agreement was

26    structured somewhat differently with regard to the Pacific Point Project.

27        208.    Specifically, pursuant to the Restructuring Agreement, and as detailed in the

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

45

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

1   Settlement Agreement incorporated thereto, SunCal, SJD Partners and SJD Development agreed not

2   to interfere with Lehman ALI's (or its designee's) foreclosure on the Pacific Point property, and the

3   new Lehman entity, LV Pacific Point, would acquire the property upon foreclosure. In consideration

4   for this, Lehman ALI and LV Pacific Point agreed to (a) assume SJD Partners' and SJD

5   Development's outstanding accounts payable for Pacific Point third-party vendors, (b) assume SJD

6   Partners', SJD Developments' and others' bond liability in connection with the Pacific Point Project,

7   and (c) pay for millions of dollars worth of work that Lehman ALI had authorized.

8   209.    On or about August 25, 2008, the Settlement Agreement was signed by the SunCal

9   parties, including SJD Partners and SJD Development. It was signed by Frank Gilhool as authorized

10   signatory on behalf of both Lehman ALI and LV Pacific Point.

11   210.    All conditions for Closing had been met by the date for which Closing was scheduled.

12   211.    As a signatory to the Settlement Agreement, LV Pacific Point was supposed to and

13   agreed to acquire the property subject to the above obligations.

14   212.    On August 28, 2008, LV Pacific Point foreclosed on Pacific Point, and title was

15   transferred to LV Pacific Point at the foreclosure sale.

16   213.    However, neither Lehman ALI nor LV Pacific Point assumed the liabilities and

17   obligations as promised, to the detriment of the creditors of the estates of SJD Partners and SJD

18   Development and the bond indemnitors.

19   214.    The City of San Juan Capistrano even executed an estoppel certificate for the benefit

20   of SJD Partners and Lehman ALI—at Lehman ALI's request—on August 26, 2008, two days before

21   the foreclosure. That certificate stated, among other things, that the "Acquiring Entity [LV Pacific

22   Point] shall by operation of law become the legal successor-in-interest to Developer [SJD Partners]"

23   under SJD Partners' agreements with the City. That certificate further provided that there existed no

24   breaches, defaults, or claims under SJD Partners' agreements with the City.

25   215.    Despite this estoppel certificate, demands have been made by the City and/or other

26   creditors—even after the estoppel was signed—against SunCal, Elieff, SJD Partners and SJD

27   Development. Neither Lehman ALI nor LV Pacific Point has undertaken to assume any of those

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

46

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

obligations.

216.    In fact, on information and belief, in early September 2008—just days after the foreclosure, and just days before LBHI filed for bankruptcy—Lehman ALI secretly transferred much or all of its interest in the Pacific Point First Loan and the first-priority deed of trust on the property to a separate Lehman-affiliated entity, Lehman Re.  Lehman ALI and/or LV Pacific Point may have transferred some or all of their interests in the Pacific Point Second Loan and associated lien to Lehman Re as well.

217.    The timing of these maneuvers by these Lehman entities confirms that Lehman ALI and LV Pacific Point never intended to fulfill their promises to assume the millions in Pacific Point obligations even at the time they made such promises.  LBHI filed for bankruptcy on September 15, 2008.  On information and belief, Lehman ALI and LV Pacific Point knew as of the August 28, 2008 Pacific Point foreclosure that they would not be in a position to fulfill, and would not be fulfilling, their funding obligations to SunCal, SJD Partners and SJD Development.

218.    As a result of LV Pacific Point's foreclosure and Lehman ALI's and LV Pacific Point's failure to fulfill their payment obligations, SJD Partners no longer owns any real property, but has unsecured claims of approximately $50 million, including bond claims of approximately $34 million.  Moreover, due to the deterioration of construction projects, unpaid taxes, fines, and penalties resulting from Lehman ALI and LV Pacific Point's conduct, this exposure continues to grow.

219.    Had SunCal, SJD Partners and SJD Development known that Lehman ALI and LV Pacific Point had no intent to honor their promised obligations, they never would have agreed to cooperate with a foreclosure.  Instead, SJD Partners could have filed for bankruptcy earlier, precluded a foreclosure and successfully reorganized the Project.

220.    Not only did Lehman ALI and LV Pacific Point fraudulently induce SJD Partners' and SJD Development's consent to the foreclosure and sale of the Pacific Point Project, but that foreclosure and sale constitutes an avoidable transfer of the SJD Partners' property.

221.    On information and belief, the fair market value of the Pacific Point Project was and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

35043.17

1   remains approximately $25 million. The foreclosure of the Pacific Point Project was pursuant to a

2   second priority deed of trust held by LV Pacific Point in the amount of approximately $58 million.

3   The alleged obligation securing the first deed of trust against the Pacific Point Project was

4   approximately $82 million as of August 28, 2008.

5       222.    There was no equity securing the obligation securing the second priority deed of trust.

6   LV Pacific Point foreclosed on a second priority deed of trust that had no value and which would

7   have been avoided in a hypothetical Chapter 7 Case pursuant to 11 U.S.C. § 506(d). In a

8   hypothetical Chapter 7 Case, the second priority deed of trust would also be subject to equitable

9   subordination and transfer of the lien pursuant to 11 U.S.C. § 510(c)(2). (Claims and liens

10  associated with the Pacific Point First Loan are also subject to equitable subordination and transfer.)

11      223.    Accordingly, the parties' agreement should be rescinded, the foreclosure should be

12  set aside and/or a constructive trust should be imposed upon LV Pacific Point, and the property

13  should be returned to its rightful owner, SJD Partners.

**W.**   **_Summary of the Disputed Claims to Be Equitably Subordinated, and the Associated Liens_**
    **_to Be Preserved for the Benefit of the Plaintiff Debtors' Estates_**

16      224.    As to each Plaintiff, the following is a summary of the Defendants' disputed secured

17  claims which Plaintiffs seek to equitably subordinate, as well as the mechanics liens, priority and

18  administrative claims, and general unsecured claims to which Plaintiffs seek to subordinate them:

| DEBTOR | DEFENDANTS' DISPUTED SECURED CLAIMS | MECHANIC LIEN CLAIMS | PRIORITY AND ADMIN. CLAIMS | GENERAL UNSECURED CLAIMS |
|---|---|---|---|---|
| Palmdale Hills | $287,252,096 | $1,069,855 | $499,970 | $33,027,677 |
| SCC Palmdale | $119,664,305 | $0 | $0 | $0 |
| SunCal Bickford | $343,221,391 (Bickford 1st) $56,494,059 (Bickford 2nd) | $3,477,120 | $345,221 | $10,146,825 |
| SunCal Acton | (Same as Bickford 1st) | $0 | $59,242 | $1,428,250 |
| SunCal Emerald | (Same as Bickford 1st) | $1,279,043 | $188,695 | $7,878,901 |
| SunCal Summit | (Same as Bickford 1st) | $16,827 | $48,018 | $1,076,053 |
| SunCal I | (Same as Bickford 1st) | $0 | $0 | $0 |
| SunCal III | (Same as Bickford 1st) | $0 | $0 | $459 |
| SCC Communities | $23,795,013 | $0 | $27,072 | $32,813 |
| SunCal Del Rio | (Same as SCC Communities) | $0 | $261,542 | $7,966,115 |
| SunCal Tesoro | (Same as SCC Communities) | $0 | $118,891 | $170,969 |
| SunCal Oak Knoll | $158,141,365 | $4,700,604 | $874,609 | $1,135,298 |
| SunCal Torrance | (Same as SunCal Oak Knoll) | $0 | $160,914 | $203,838 |
| SunCal Century City | $120,000,000 | $1,434,520 | $1,040,005 | $3,289,632 |
| SunCal Delta Coves | $206,023,142 | $122,535 | $448,061 | $35,192,631 |

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

| DEBTOR | DEFENDANTS' DISPUTED SECURED CLAIMS | MECHANIC LIEN CLAIMS | PRIORITY AND ADMIN. CLAIMS | GENERAL UNSECURED CLAIMS |
|---|---|---|---|---|
| SunCal Heartland | $354,325,126 | $1,552,794 | $231,873 | $30,774,591 |
| SunCal Marblehead | (Same as SunCal Heartland) | $1,406,209 | $740,382 | $109,693,964 |
| SunCal Northlake | $123,654,777 | $0 | $729,432 | $911,296 |
| SunCal Oak Valley | $141,630,092 | $1,662,309 | $138,443 | $29,605,482 |
| SunCal PSV | $88,257,340 | $2,316,430 | $315,213 | $21,892,343 |
| SJD Development | $120,110,237 | $0 | $0 | $368,362 |
| SJD Partners | (Same as SJD Development) | $0 | $244,090 | $51,265,349 |
| Total | $2,142,568,943 | $19,038,246 | $6,471,673 | $346,060,848 |

225.    The following should be noted regarding the above chart:

(a)    Plaintiffs have not completed their investigation as to which claims are allowed.

(b)    Administrative claims are ongoing.

(c)    Certain proofs of claims filed against Palmdale Hills, among other Debtors, appear to be misfiled and relate to other Debtors.

(d)    Certain disputed claims, such as duplicative claims, have been deducted from the figures above.  For example, the Debtors have assumed surety bond claims according to the bond claims arising from the particular Debtors' Projects.  The bond issuers (Arch Insurance Co. and Bond Safeguard Insurance Co.) have asserted various bond obligor claims against the Debtors in the approximate amount of $230 million ($155 million by Arch and $75 million by Bond Safeguard).  The bond issuers assert that their claims are joint and several against all of the Debtors, which the Debtors dispute as lacking consideration and fraudulent conveyances to the extent that such Bond Claims do not arise from or exceed the amount of Bond Claims attributed to the Project of each Debtor.  Thus, the $0 in unsecured claims listed against SCC Palmdale and SunCal I do not reflect the contingent bond claims.

(f)    Plaintiffs believe that $368,362 in unsecured claims filed against Plaintiff SJD Development should have been filed against Plaintiff SJD Partners.  However, even if those claims are correctly characterized, SJD Development would still be a plaintiff on the cause of action for equitable subordination, because of the contingent bond claims asserted against it.

(g)    LV Pacific Point foreclosed upon and obtained the Pacific Point Project prior

49

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

to Plaintiff SJD Partner's bankruptcy filing. Neither LV Pacific Point nor Lehman Re have filed proofs of claim against SJD Partner's estate based on the Pacific Point Second Loan, but Lehman ALI has filed an unliquidated claim against SJD Partners that is contingent upon the unwinding or invalidation of the foreclosure sale. If the Court grants the requested relief and restores title in the Pacific Point Project to SJD Partners, then to the extent that any of these Defendants assert claims against SJD Partners or SJD Development, and/or attempt to enforce their liens, those claims should be subordinated and those liens preserved for the benefit of and transferred to SJD Partners' or SJD Development's estates, as applicable.

(h)      Real property tax claims against the Plaintiff Debtors of $12,998,281 and other secured claims against certain Debtors have not been listed, as they are not subject to the disputed secured claims, and would not be affected by subordination under this action. However, Plaintiffs contend that Defendants' claims should be equitably subordinated to the other claims identified herein to the extent that Defendants have caused these tax claims to be filed and/or to increase through their wrongful conduct.

226.    As to each Plaintiff Debtor, the following summarizes the original and apparent current lender on each disputed Loan, the outstanding amount claimed by Defendants with regard to the Loan, and the total amount of the claims to which Debtors seek to subordinate the Defendants' claims pursuant to 11 U.S.C. § 510(c)(1):

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

| PLAINTIFF DEBTOR | LOAN | ORIGINAL LENDER | CURRENT OWNER OF CLAIM[14] | DISPUTED SECURED CLAIMS THAT PLAINTIFFS SEEK TO SUBORDINATE | TOTAL CLAIMS TO BE GIVEN PRIORITY |
|---|---|---|---|---|---|
| Palmdale Hills | Ritter Ranch | LCPI | Fenway | $287,252,096 | $34,597,502 |
| SCC Palmdale | SCC Palmdale | LCPI | LCPI | $119,664,305 | $0 |
| SunCal Bickford | SunCal Communities I | LCPI | Fenway | $343,221,391 (Bickford 1st) | $13,969,166 |
| | Bickford Second | Lehman ALI | Lehman ALI | $56,494,059 | |
| SunCal Acton | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $1,487,492 |
| SunCal Emerald | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $9,346,639 |
| SunCal Summit | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $1,140,898 |
| SunCal I | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $0 |
| SunCal III | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $459 |
| SCC Communities | Interim | Lehman ALI | Lehman ALI | $23,795,013 | $59,885 |
| SunCal Del Rio | Interim | Lehman ALI | Lehman ALI | (see SCC Communities) | $8,227,657 |
| SunCal Tesoro | Interim | Lehman ALI | Lehman ALI | (see SCC Communities) | $289,860 |
| SunCal Oak Knoll | Oak Knoll/ Torrance | Lehman ALI | Lehman ALI | $158,141,365 | $6,710,511 |
| SunCal Torrance | Oak Knoll/ Torrance | Lehman ALI | Lehman ALI | (see SunCal Oak Knoll) | $364,751 |
| SunCal Century City | Century City Loan | Lehman ALI | Danske Bank | $120,000,000 | $5,764,157 |
| SunCal Delta Coves | Delta Coves | Lehman ALI | Fenway | $206,023,142 | $35,763,227 |
| SunCal Heartland | Marblehead/ Heartland | Lehman ALI | Fenway | $354,325,126 | $32,559,258 |
| SunCal Marblehead | Marblehead/ Heartland | Lehman ALI | Fenway | (see SunCal Heartland) | $111,848,555 |
| SunCal Northlake | Northlake | Lehman ALI | Fenway | $123,654,777 | $1,640,728 |
| SunCal Oak Valley | Oak Valley | Lehman ALI | Fenway | $141,630,092 | $31,406,234 |
| SunCal PSV | PSV | Lehman ALI | Fenway | $88,257,340 | $24,523,986 |
| SJD Partners | Pacific Point First | Lehman ALI | Lehman Re | $120,110,237 (Pac Pt 1st) | $51,265,349 |
| | Pacific Point Second | Lehman ALI | LV Pacific Point and/or Lehman Re | (contingent claim) | |
| SJD Development | Pacific Point First | Lehman ALI | Lehman Re | (see Pac Pt 1st) | |
| **Total** | | | | **$2,142,568,943** | **$371,219,945** |

227.    As to each Plaintiff Debtor, the following summarizes the disputed Loans and associated lien that Plaintiffs seek to transfer to and preserve for the benefit of their respective estates pursuant to 11 U.S.C. § 510(c)(2). The alleged holder, alleged security and the alleged amounts outstanding are taken from the disputed proofs of secured claims ("POCs") that have been filed; as noted in the above table, many of these liens now belong to the claimants' successors:

[14] In the event that the Court determines that Lehman ALI, LCPI, OVC and Northlake, and not Fenway, still have claims to be subordinated with regard to the applicable Sold Loans, they are named herein as defendants as to those Sold Loans, and nothing about this table should be construed as a waiver of Debtors' right to equitably subordinate those Defendants' claims.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP

ATTORNEYS AT LAW

1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067

TEL:(310) 552-4400  FAX:(310) 552-8400

| LOAN(S) | ALLEGED HOLDER | PLAINTIFF DEBTOR(S) | ALLEGED SECURITY | ALLEGED OUTSTANDING AMOUNT |
|---|---|---|---|---|
| SunCal Communities I Loan | LCPI | SunCal I SunCal III SunCal Acton SunCal Emerald SunCal Bickford SunCal Summit | (a) Alleged first-priority deeds of trust on the Bickford, Acton Estates and Emerald Meadows Projects; (b) alleged pledges of SunCal I's interests in SunCal Acton, SunCal Summit, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal Bickford; and (c) alleged pledges of SunCal Summit's interests in Seven Brothers and Kirby. | Identical $343,221,391 POC No. 1 asserted against SunCal I; No. 2 against SunCal III; No. 6 against SunCal Acton; No. 7 against SunCal Emerald; No. 16 against SunCal Bickford; and No. 12 against SunCal Summit |
| Ritter Ranch Loan | LCPI | Palmdale Hills | Alleged first-priority deed of trust on all real and an alleged first priority lien on all personal property owned by Palmdale Hills. | $287,252,096 POC No. 65 asserted against Palmdale Hills |
| SCC Palmdale Loan | LCPI | SCC Palmdale | Alleged pledge of SCC Palmdale's interest in Palmdale Hills. | $119,664,305 POC No. 1 asserted against SCC Palmdale |
| Bickford Second Loan | Lehman ALI | SunCal Bickford | Alleged second priority deed of trust on the Bickford Ranch Project. | $56,494,059 POC No. 17 asserted against SunCal Bickford |
| Interim Loan | Lehman ALI | SCC Communities, SunCal Tesoro and SunCal Del Rio | Alleged first-priority deeds of trust on the Joshua Ridge and the Tesoro Projects, and an alleged first-priority lien on the net proceeds of the Del Rio CFD Bonds. | Identical $23,795,013 POC No. 9 asserted against SCC Communities; No. 14 against SunCal Del Rio; No. 7 against SunCal Tesoro |
| Pacific Point First Loan | Lehman ALI | SJD Partners SJD Dev'pment. | Alleged first priority deed of trust on the Pacific Point Project, and alleged pledge of SJD Development's interest in SJD Partners. | Identical $120,110,237 POC No. 2 asserted against SJD Dev'pment; No. 23 against SJD Partners |
| Pacific Point Second Loan | Lehman ALI | SJD Partners | Alleged second priority deed of trust on the Pacific Point Project | Unliquidated contingent POC No. 24 asserted against SJD Partners |
| Oak Knoll/ Torrance Loan | Lehman ALI | SunCal Oak Knoll and SunCal Torrance | Alleged first-priority deeds of trust on the Oak Knoll Project and the Del Amo Project. | Identical $158,141,365 POC No. 12 asserted against SunCal Oak Knoll; No. 4 against SunCal Torrance |
| Century City Loan | Danske | SunCal Century City | Alleged first-priority deed of trust on the 10000 Santa Monica Project. | $120,000,000 POC No. 17 asserted against SunCal Century City |
| PSV Loan | Lehman ALI | SunCal PSV | Alleged first-priority deed of trust on the Palm Springs Village Project. | $88,257,340 POC No. 12 asserted against SunCal PSV |
| Delta Coves Loan | Lehman ALI | Delta Coves | Alleged first-priority deed of trust on the Delta Coves Project. | $206,023,142 POC No. 21 asserted against SunCal Delta Coves |
| Marblehead/ Heartland Loan | Lehman ALI | SunCal Marblehead; SunCal Heartland | Alleged first-priority deeds of trust on the Marblehead and the Heartland Projects. | Identical $354,325,126 POC No. 9 asserted against SunCal Heartland; No. 21 against SunCal Marblehead |

52

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

| LOAN(S) | ALLEGED HOLDER | PLAINTIFF DEBTOR(S) | ALLEGED SECURITY | ALLEGED OUTSTANDING AMOUNT |
|---|---|---|---|---|
| Oak Valley Loan | OVC | SunCal Oak Valley | Alleged first-priority deed of trust on the Oak Valley Project. | $141,630,092 POC No. 16 asserted against SunCal Oak Valley |
| Northlake Loan | Northlake Holdings | SunCal Northlake | Alleged first-priority deed of trust on the Northlake Project. | $123,654,777 POC No. 6 asserted against SunCal Northlake |
| **TOTAL** | | | | **$2,142,568,943** |

## CAUSES OF ACTION

### V.

## FIRST CLAIM FOR RELIEF

### (Equitable Subordination, 11 U.S.C. §510(c))

| By | Against |
|---|---|
| **SunCal Acton** | **LCPI, Fenway** |
| **SunCal Bickford** | **LCPI, Lehman ALI, Fenway** |
| **SunCal Del Rio** | **Lehman ALI** |
| **SunCal Emerald** | **LCPI, Fenway** |
| **SunCal I** | **LCPI, Fenway** |
| **SunCal III** | **LCPI, Fenway** |
| **SCC Communities** | **Lehman ALI** |
| **SJD Partners** | **Lehman ALI, LV Pacific Point, Lehman Re** |
| **SJD Development** | **Lehman ALI, Lehman Re** |
| **Palmdale Hills** | **LCPI, Fenway** |
| **SunCal Summit** | **LCPI, Fenway** |
| **SCC Palmdale** | **LCPI** |
| **SunCal Tesoro** | **Lehman ALI** |
| **Trustee o/b/o SunCal Century City** | **Danske Bank** |
| **Trustee o/b/o SunCal Delta Coves** | **Lehman ALI, Fenway** |
| **Trustee o/b/o SunCal Heartland** | **Lehman ALI, Fenway** |
| **Trustee o/b/o SunCal Marblehead** | **Lehman ALI, Fenway** |
| **Trustee o/b/o SunCal Northlake** | **Northlake Holdings, Fenway** |
| **Trustee o/b/o SunCal Oak Knoll** | **Lehman ALI** |
| **Trustee o/b/o SunCal Oak Valley** | **OVC, Fenway** |
| **Trustee o/b/o Sun Cal PSV** | **Lehman ALI, Fenway** |
| **Trustee o/b/o SunCal Torrance** | **Lehman ALI** |

228.    Plaintiffs repeat and reallege each and every foregoing and subsequent allegation

contained in the Complaint, and further allege as follows:

***Lehman ALI and LCPI***

229.    LCPI has or purports to have        disputed claims against Plaintiffs SunCal Acton,

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

35043.17

SunCal Bickford, SunCal Emerald, Palmdale Hills, SunCal Summit, SCC Palmdale SunCal I and SunCal III.

230.    Lehman ALI has or purports to have disputed claims against Plaintiffs SunCal Bickford, SunCal Del Rio, SCC Communities, SJD Partners, SJD Development, SunCal Tesoro, and Trustee Debtors SunCal Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal Oak Knoll, SunCal PSV, and SunCal Torrance.

231.    Plaintiffs are informed and believe, and on that basis allege, that Lehman ALI is an affiliate of an insider of each of the Trustee Debtors, and thus is a statutory insider under 11 U.S.C. §101(31). On information and belief, LBHI has had a 100% ownership interest in both Lehman ALI and LCPI, until recently, when Lehman ALI itself acquired a 100% interest in LCPI. (Thus, LBHI still indirectly has a 100% ownership interest in LCPI.) At the same time, LBHI wholly owns the Lehman Equity Members, which themselves have at least a 50% ownership interest in the Trustee Debtors and are therefore insiders of the Trustee Debtors. Accordingly, under 11 U.S.C. §101(2), Lehman ALI is an insider of the Trustee Debtors.

232.    Even aside from Lehman ALI's status as a statutory insider, Lehman ALI and LCPI exerted actual control over all of the Debtors, and so are also non-statutory insiders under the law.

233.    Lehman ALI and/or LCPI have partnered with SunCal and the Debtors for over a decade. Lehman ALI and LCPI have been Debtors' primary source of credit for years. SunCal granted Lehman a first right of refusal on most of SunCal's projects going forward. Thus, over the past several years, SunCal and the Debtors have been almost entirely dependent on Lehman ALI and LCPI for financing. SunCal and the Debtors effectively became the management and development arm of the Lehman real estate lenders, rather than independent developers that received outside funding.

234.    Beginning in or about 2005, if not earlier, Lehman ALI and LCPI exercised their control over SunCal and the Debtors by insisting that many of their loans be cross-collateralized among multiple Projects, many of which received little or none of the loan proceeds. This made SunCal and the Debtors even more dependent on Lehman ALI and LCPI and to the terms that they

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    dictated. They also exercised their control by withholding promised funding in order to induce

2    SunCal and the Debtors to concede to onerous terms.

3        235.    At least after 2007, Lehman ALI and LCPI asserted management control as well.

4    Debtors' management had to vet expenses with Lehman ALI and LCPI and get their approval before

5    they could expend any funds to develop the Projects, and had conference calls or meetings with

6    Lehman ALI and LCPI personnel on as much as a weekly basis or more for this purpose.

7        236.    In some instances, such as on the Delta Coves Project owned by Plaintiff SunCal

8    Delta Coves, Lehman ALI bypassed SunCal as the ostensible Project manager and dealt with third-

9    party contractors directly; Lehman ALI also tried to exercise control over SunCal staff directly,

10    bypassing SunCal's management structure.

11        237.    Lehman ALI and/or LCPI also controlled decisions regarding which creditors would

12    get paid, and Lehman ALI engaged Radco to negotiate such payments for the sixteen Projects

13    subject to the Restructuring Agreement.

14        238.    Lehman ALI and/or LCPI have engaged in a variety of pre- and post-petition

15    inequitable conduct, including the following:

16        •    LCPI cross-collateralized loans among multiple Debtors, including Plaintiffs
      SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, SunCal I and SunCal III,

17    some of whom received little or no benefit, so as to shift its lending risks to unsecured
      creditors and make SunCal and the Debtors even more unlikely to be able to elude its

18    domination and control. SCC Palmdale likewise got nothing for its indebtedness.

19        •    Lehman ALI similarly cross-collateralized loans, for the same purpose and to
      the same effect, on the Marblehead and Heartland Projects owned by Plaintiffs SunCal

20    Marblehead and SunCal Heartland, respectively; the Del Amo and Oak Knoll Projects owned
      by Plaintiffs SunCal Torrance and SunCal Oak Knoll, respectively; and the Del Rio, Joshua

21    Ridge, and Tesoro Burnham Projects owned by Plaintiffs SunCal Del Rio, SunCal Tesoro
      and SCC Communities, respectively.

22

23        •    Lehman ALI and LCPI induced SunCal and each of the Plaintiff Debtors to
      incur massive additional indebtedness on each of the Projects, through representations that

24    they would cover vendor payables and pay for third-party work they authorized, including
      work that was required by municipalities to be performed and bonded, and through promises

25    of an overall restructuring of all of the Projects.

26        •    Lehman ALI made similar promises of funding and inducements with regard
      to the four Projects—Century City, Delta Coves, Del Amo and Oak Knoll—that were not

27    formally made part of the parties' Restructuring Agreement.

28        •    Lehman ALI dragged out the effectuation of the Restructuring Agreement, so
      as to make SunCal and the subject Debtors even more cash-strapped and more desperate for

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

funds to pay creditors, in order to induce them to accept onerous terms.

• After pressuring and threatening Debtors to enter into the onerous Restructuring Agreement, Lehman ALI then failed to provide required funding under the Restructuring Agreement, thereby preventing Debtors' ability to pay creditors and develop and maintain the Projects, including addressing central health and safety issues, and exposing the bond companies and the bond indemnitors to liability for work performed and being performed. Lehman ALI also failed to provide promised funding as to the four Projects not subject to the Restructuring Agreement.

• Lehman ALI and LCPI surreptitiously transferred their liens and loans on at least fifteen of the Projects to Lehman affiliates or third parties in order to stave off a Lehman liquidity crisis, at the same time that they were signing restructuring settlement documents with the Debtors and purporting to be willing and able to proceed to Closing of the Settlement Agreement.

• Lehman ALI (along with LV Pacific Point) fraudulently induced SJD Partners and SJD Development to consent to LV Pacific Point's foreclosure of the Pacific Point Project by promising to cover bond and vendor obligations and pay for lender-authorized work, when it knew that an LBHI bankruptcy was looming and that payment would not be forthcoming.

• Lehman ALI and LCPI refused and failed to proceed to Closing of the Settlement Agreement when they were contractually required to do so.

• Lehman ALI and LCPI repudiated the Restructuring Agreement without cause. Lehman ALI also repudiated its funding obligations regarding the four non-covered Projects.

• Lehman ALI improperly filed notices of default on properties—Century City, Del Amo, Delta Coves, Oak Knoll, and Palm Springs Village—that were not yet in bankruptcy.

• Lehman ALI induced the Lehman Equity Members in Trustee Debtors SunCal Century City, SunCal Delta Coves, SunCal Oak Knoll, SunCal PSV, and SunCal Torrance to breach their fiduciary duties to these Trustee Debtors and their creditors in favor of their lender-affiliate, by refusing to fund the Projects, refusing to consent to bankruptcy filings, or take any other steps to avoid a lender foreclosure.

• LCPI and Lehman ALI filed their respective proofs of claim against the estates of Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, Palmdale Hills, SunCal III, SunCal Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal PSV, and SunCal Oak Valley, in which they purported to own Sold Loans which LCPI had actually sold to Fenway pre-petition. They at least in part did so for the purpose of "justifying" LCPI's repeated false invocation of its automatic stay.

• LCPI brought its Stay Relief Motions against Plaintiffs SunCal Acton, SunCal Bickford, SunCal Emerald Meadows, SunCal Summit, Palmdale Hills, and SunCal I to foreclose on their Projects; Lehman ALI filed the Stay Relief Motion in the SunCal Bickford proceeding to foreclose on the Bickford Ranch Project; and both Lehman Lenders objected to virtually every action the Debtors have taken in their efforts to reorganize the Projects—all without disclosing the true owner of the Loans at issue.

• LCPI repeatedly invoked its automatic stay to prevent the Debtors from obtaining a priming loan, using cash collateral, or otherwise obtaining funds to address the

56

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

Projects' critical needs and preserve the value of the Projects (which are LCPI's own purported collateral), and to justify its Stay Relief Motions. In fact, as LCPI well knew, LCPI's automatic stay was not and has never been applicable.

•  LCPI's conduct also forced Plaintiffs SunCal Acton, SunCal Bickford, SunCal Emerald and Palmdale Hills, and all of the Trustee Debtors all except SunCal Torrance, to accede to a $1.7 million super-priority "loan" from Lehman ALI that was really a release of the same funds sought to be accessed via the Cash Collateral Motion.

•  LCPI even invoked its stay to oppose the Sales Procedures Motion, which has only involved Lehman ALI-financed Projects. LCPI's false assertion of its automatic stay is what induced Debtors to leave LCPI-financed Projects out of the proposed sale in the first place, even though they had intended to include them.

239.    Lehman ALI and LCPI's inequitable conduct has caused and continues to cause damage not only to the Plaintiff Debtors but to all of their creditors as well. Lehman ALI and LCPI's course of conduct of making repeated assurances of funding, drawing out the process, and ultimately refusing to provide needed funding caused them to take on additional third-party debt that they could not pay, increased the fees, penalties and interest assessed against the Debtors, and deepened the Debtors' insolvency, including their exposure to bond claims. Their actions forced the Debtors into bankruptcy, but they have done everything in their power to prevent bankruptcy filings, and to thwart or delay Debtors' reorganization efforts once their bankruptcies began, so as to avoid any outcome other than a foreclosure that leaves nothing for unsecured creditors. They have impeded steps by the Debtors to preserve value in the Projects. They have made and continue to make the Debtors' bankruptcies more time-consuming, expensive and burdensome through their lack of candor and obstructionist tactics. All this has worked to the detriment of the Debtors' respective creditors, diminishing their prospects for recovery.

### *LV Pacific Point*

240.    LV Pacific Point, along with Lehman ALI, represented in the Settlement Agreement that it would assume Pacific Point accounts payable and bond obligations, and pay for work authorized by Lehman ALI, in exchange for SunCal, SJD Partners and SJD Development's consent to a foreclosure. On information and belief, Lehman ALI and LV Pacific Point knew as of the August 2008 Settlement Agreement and foreclosure that, due to LBHI's own financial crisis, they would not be assuming these obligations upon foreclosure as promised. But for these defendants'

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

35043.17

1    fraud, LV Pacific Point would not have obtained Plaintiffs' consent to the foreclosure, and SJD

2    Partners would continue to own the property. This inequitable conduct has harmed all of the other

3    creditors of SJD Partners (as well as SJD Development), not only because SJD Partners was induced

4    to incur third-party debt it could not pay, but because it no longer has the Pacific Point property to

5    satisfy these creditors' claims. As noted below, this Court should invalidate the foreclosure and

6    restore the Pacific Point property to SJD Partners. To the extent that Lehman ALI and/or LV Pacific

7    Point have claims and liens against SJD Partners or SJD Development, their claims should be

8    equitably subordinated to the claims of the other creditors of these Debtors, and those liens should be

9    preserved for the benefit of and transferred to these Debtors' estates.

10    241.    Even aside from its own inequitable conduct, to the extent that LV Pacific Point is or

11    purports to be a successor to Lehman ALI's loans and liens on the Pacific Point Project, it holds

12    claims that are equally subject to equitable subordination, and its liens equally subject to transfer to

13    SJD Partners' estate, as if it were Lehman ALI.

14    ***OVC and Northlake***

15    242.    To the extent that OVC Holdings and Northlake Holdings are or purport to be

16    transferees of Lehman ALI's loans to Plaintiffs SunCal Oak Valley and SunCal Northlake and the

17    liens on the Oak Valley and Northlake Projects, respectively, and to the extent that their claims have

18    not been transferred to Fenway, they hold claims that are equally subject to equitable subordination,

19    and their liens equally subject to transfer to the estates.

20    243.    Not only does a transferee take a claim subject to all defenses that could be raised

21    against the transferor, but OVC and Northlake Holdings' claims, if any, are also subject to equitable

22    subordination based on their own insider status and own inequitable conduct.

23    244.    Like Lehman ALI, OVC Holdings and Northlake Holdings are statutory insiders. On

24    information and belief, LBHI has had a 100% ownership interest in both OVC and Northlake

25    Holdings. At the same time, LBHI wholly owns the Lehman Equity Members in SunCal Oak Valley

26    and SunCal Northlake, which themselves have at least a 50% ownership interest in SunCal Oak

27    Valley and SunCal Northlake, respectively.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

58

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

245.    OVC and Northlake Holdings' inequitable conduct includes the following:

•    As evidenced by, among other things, recent joint correspondence on behalf of Lehman ALI, LCPI, OVC and Northlake Holdings, these four entities are controlled by the same people within Lehman. OVC Holdings and Northlake Holdings became successors to Lehman ALI's liens and loans with knowledge of the former's inequitable conduct, and as part of a scheme to usurp the Oak Valley and Northlake Projects without assuming the previously promised obligations.

•    OVC and Northlake Holdings have purported to step into Lehman ALI's shoes as the lenders on the Oak Valley and Northlake Projects, but they did nothing to fulfill Lehman ALI's obligation as the "Lender" under the Restructuring Agreement.

•    They apparently surreptitiously transferred the Oak Valley and Northlake Loans to LCPI so that LCPI could sell them to Fenway under a Repo, in order to stave off a Lehman liquidity crisis, at the same time that they were signing restructuring settlement documents with SunCal Oak Valley and SunCal Northlake and purporting to be willing and able to proceed to Closing.

•    They signed but refused to proceed toward Closing of the Settlement Agreement.

•    They induced the Lehman Equity Members in SunCal Oak Valley and SunCal Northlake to refuse to fund their Projects, and to refuse to put these Debtors in bankruptcy, in order to avoid any outcome other than a foreclosure to benefit the lenders, in violation of the Lehman Equity Members' fiduciary duties, and to the detriment of the interests of SunCal Oak Valley and SunCal Northlake and their respective creditors.

•    They filed pleadings and proofs of claim with this Court in the estates of SunCal Oak Valley and SunCal Northlake based on their purported ownership of Sold Loans, without disclosing that LCPI had sold those Loans to a third party pre-petition, at least in part in order to "justify" LCPI's repeated false invocation of its automatic stay.

246.    This inequitable conduct has harmed the other creditors of SunCal Oak Valley and SunCal Northlake, respectively, as described above.

### *The Other Successor Lenders*

247.    To the extent that Danske is or purports to be the assignee of Lehman ALI's (or LCPI's) loan to SunCal Century City and the associated lien on the Century City Project, Danske holds claims that are equally subject to equitable subordination, and its liens equally subject to transfer to SunCal Century City's estate. Not only does a transferee take a claim subject to all defenses that could be raised against the transferor, but Danske purports to have been assigned its claim post-petition, and even after the original complaint for equitable subordination was filed against Lehman ALI, and so took with knowledge of Lehman ALI's wrongdoing and the defenses

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1   that would be raised in relation thereto.

2       248.   To the extent that Fenway is the transferee of Lehman ALI, LCPI, OVC or Northlake

3   Holdings' loans and associated liens on any of the Projects based on any of the Sold Loans, Fenway

4   holds claims that are equally subject to equitable subordination, and its liens equally subject to

5   transfer to the Plaintiff Debtors' respective estates.  Not only does a transferee take a claim subject to

6   all defenses that could be raised against the transferor, but, on information and belief, Fenway

7   purchased the Sold Loans with knowledge that its transaction was part of an effort by LCPI to obtain

8   liquidity for LBHI from JP Morgan that appeared to be collateralized by something other than the

9   Sold Loans.

10       249.   To the extent that Lehman Re is the transferee of Lehman ALI's and/or LV Pacific

11   Point's loans and liens on the Pacific Point Project formerly owned by Plaintiff SJD Partners, and to

12   the extent that Lehman Re has purported claims against SJD Partners or SJD Development, Lehman

13   Re holds claims that are equally subject to equitable subordination, and its liens equally subject to

14   transfer to these Debtors' estates.  Not only does a transferee take a claim subject to all defenses that

15   could be raised against the transferor, but, on information and belief, Lehman Re accepted the

16   transfer with knowledge that it was part of an effort by Lehman ALI and LV Pacific Point to avoid

17   their obligations to SJD Partners, SJD Development and their creditors.

18       250.   By reason of the foregoing, Plaintiffs are entitled to equitably subordinate the

19   respective Defendants' secured claims against the respective Plaintiff Debtors to the general

20   unsecured claims, mechanic's lien claims, and priority and administrative claims against the

21   respective Debtors, and to preserve the Defendants' liens for the benefit of the respective Debtors'

22   estates.  The total value of the claims to be equitably subordinated will be proven at trial, but is at

23   least $370 million.  Equitable subordination under the circumstances will achieve a result that is

24   consistent with the purposes of the Bankruptcy Code.

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS  SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

35043.17

# VI.

## SECOND CLAIM FOR RELIEF

### (Fraudulent Inducement –

### By SJD Partners against LV Pacific Point)

251.    Plaintiffs repeat and reallege each and every foregoing and subsequent allegation contained in the Complaint, and further allege as follows:

252.    Lehman ALI and LV Pacific Point represented under the terms of the May 23, 2008 Restructuring Agreement, and under the August 25, 2008 Settlement Agreement, that Lehman ALI and/or LV Pacific Point would assume the millions of dollars in outstanding accounts payable for Pacific Point third-party vendors and millions in bond obligations, as well as pay for work authorized by Lehman ALI to be performed.

253.    Frank Gilhool signed the Settlement Agreement as an authorized signatory of both Lehman ALI and LV Pacific Point.

254.    Lehman ALI and LV Pacific Point made these representations for the purpose of inducing SunCal, SJD Development and SJD Partners, then the owner of the Pacific Point property, to consent to LV Pacific Point foreclosing upon the property.  These representations in fact induced Plaintiffs' consent.

255.    These representations were false.  LV Pacific Point foreclosed upon and took ownership of the Pacific Point property; but LV Pacific Point and Lehman ALI have left millions in outstanding payables and bond liabilities on which Plaintiffs remain exposed.

256.    Indeed, despite obtaining—at Lehman ALI's request—an estoppel certificate from the City of San Juan Capistrano days before the foreclosure, which stated that there had been no breaches of any agreements with the City by SJD Partners, it is SunCal, SJD Partners and SJD Development, and not Lehman ALI or LV Pacific Point, that have been facing millions of dollars of vendor and bond claims, even for amounts arising after the estoppel certificate was signed.

257.    On information and belief, just days after the August 28, 2008 foreclosure, Lehman ALI and/or LV Pacific Point transferred their liens on the property to Lehman Re. The parent

61

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400