

113.   Lehman foreclosed on Pacific Point on August 28, 2008—three days after all the Settlement Agreement was signed—and title was thereafter transferred to LV Pacific Point LLC, but Lehman never assumed the liabilities and obligations as promised. The SunCal entities on the project, SJD Partners, and its parent, SJD Development, filed for bankruptcy in November 2008. Had SunCal known that Lehman had no intent to honor its promised obligations, it never would have agreed to cooperate with a foreclosure. Instead, it could have filed for bankruptcy earlier, precluded a foreclosure and successfully reorganized the project.

**The "New" Lehman**

114.   The various Lehman-affiliated entities do not view themselves as and do not act as separate entities with separate interests regarding the Projects. (For example, Gilhool signed the Restructuring Agreement on behalf of both Lehman Equity Members and the Lehman lenders.) Rather, the various Lehman entities—whether lenders or equity-holders—are acting in concert to usurp the Projects for Lehman's benefit, at the expense of other creditors and equity-holders. And this "concert" is now being orchestrated by a single conductor, Alvarez & Marsal ("A & M"), who is in effect the new principal, controller and decision-maker with respect to the properties in issue herein.

115.   When Lehman went into bankruptcy, it retained A & M as its restructuring consultants. In reality, A & M has taken over the company. On information and belief—and per reports in the media—Bryan Marsal of A & M, in his capacity as Chief Restructuring Officer, is "running things now" at Lehman in place of its CEO. According to Lehman's own website, Marsal "and his management team will ensure the orderly restructuring of LBHI and its subsidiaries." The A & M employees assigned to handle restructuring of Lehman's real estate assets even have "lehman.com" e-mail addresses.

116.   A & M's control over Lehman extends beyond the bankruptcy. For example, while LBHI, LCPI and some of their affiliates are in bankruptcy, Lehman ALI, OVC, Northlake Holdings, and the Lehman Equity Members are not. Yet A & M is apparently in control of all of these non-bankrupt entities as well. When Lehman repudiated the Restructuring Agreement on November 12, 2008, it did so on behalf of LCPI and non-bankrupt Lehman ALI, OVC and Northlake Holdings in a

23

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   letter by Gerald Pietroforte, one of two "Key A & M Contacts" in charge of Lehman's Real Estate

2   "Asset Recovery Plan, Dispositions, and Pledged Collateral Issues." On November 18, 2008, A &

3   M's Jeff Fitts—the other "Key A & M Contact"—sent letters to the SunCal Equity Members on

4   behalf of the Lehman Equity Members instructing them not to take any action or make any decisions

5   relating the bankruptcy cases on behalf of certain of the Trustee Debtors.

6       117.   On information and belief, A & M and its asset recovery professionals involved in the

7   Lehman-SunCal projects, Messrs. Fitts and Pietroforte, do not have in-depth hands-on experience or

8   expertise in developing large-scale master-planned residential communities, as are involved here.

9   On the other hand, SunCal and its cadre of experienced land development professionals have a very

10  high level of expertise and experience based on many years and literally thousands of hours—

11  including on the Projects at issue in this case.

12      118.   Common sense and fiduciary duties require Lehman and its asset recovery

13  professionals to pursue the course of action best suited to enhancing the value of the Projects and

14  maximizing the recovery to creditors. Instead, A & M is seeking to oust SunCal and take over

15  ongoing Projects, and then trying to "re-invent the wheel," to churn fees for itself. The

16  takeover/foreclosure strategy A & M has pursued thus far will result in the worst possible outcome

17  for all concerned.

18      119.   Indeed, Lehman's lead bankruptcy attorney, Harvey Miller, is quoted in the New

19  York Times as saying that a well-managed bankruptcy should produce "a result which benefits

20  people"—including making sure that creditors are paid to the extent possible. Yet when it comes to

21  the land developments that SunCal has expertly managed for years, the A & M strategy has been—

22  and is—the polar opposite: usurp control of the Projects without leaving anything for the hundreds

23  of creditors who did work and conferred value.

24

25

26

27

28

MILLER BARONESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**

33379.5

## CLAIM FOR RELIEF

**(Equitable Subordination, 11 U.S.C. §510(c) – By the Debtors In Possession against Lehman ALI and LCPI; by the Trustee on Behalf of the Trustee Debtors Against Lehman ALI and the Lehman Equity Members, and on Behalf of SunCal Oak Valley against OVC Holdings and SunCal Northlake Against Northlake Holdings)**

120.    Plaintiffs repeat and reallege each and every foregoing and subsequent allegation contained in the Complaint, and further allege as follows:

121.    Lehman ALI and/or LCPI have purported claims against the Debtors In Possession, and Lehman ALI has purported claims against each of the Trustee Debtors, as described above.

122.    Plaintiffs are informed and believe, and on that basis allege, that Lehman ALI and LCPI are affiliates of an insider of the Trustee Debtors, and thus are statutory insiders under 11 U.S.C. §101(31). LBHI has a controlling interest, directly or indirectly, in Lehman ALI and LCPI, on the one hand, and in the Lehman Equity Members, on the other, which themselves have a majority stake in the Trustee Debtors and are therefore insiders of the Trustee Debtors. Accordingly, under 11 U.S.C. §101(2), Lehman ALI and LCPI are insiders of the Debtors.

123.    Even aside from their status as statutory insiders, Lehman ALI and LCPI exerted actual control over all of the Debtors, and so are also non-statutory insiders under the law. Lehman ALI and/or LCPI and Lehman-related entities were partners with SunCal and related entities for many years. Lehman ALI and LCPI were and are Debtors' primary source of credit. At least after mid-2007, Debtors' management had to vet each expense with Lehman ALI/LCPI and get their approval before they could expend any funds to develop the Projects, and had meetings with Lehman personnel on at least a weekly basis for this purpose. Indeed, in some instances, Lehman bypassed SunCal as the ostensible Project manager and dealt with third-party contractors directly. Lehman ALI and/or LCPI also controlled decisions regarding which creditors would get paid, and engaged Radco to negotiate such payments.

124.    Lehman ALI and/or LCPI have engaged in conduct that is not only inequitable but egregious, warranting equitable subordination of their claims regardless of their insider status. This inequitable and egregious conduct, described in more detail above, includes, among others: (1)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

willfully failing to make required advances despite repeated representations that they would do so, thereby preventing Plaintiffs' ability to pay creditors and develop and maintain the Projects, including addressing central health and safety issues; (2) secretly transferring deeds of trust between Lehman ALI to an affiliate, LCPI, mere weeks before LCPI filed for bankruptcy, for the purpose of assisting Lehman in using its impending bankruptcy to impede successful reorganization of the Projects; (3) Lehman ALI improperly filing notices of default on properties that were not yet in bankruptcy; (4) conspiring with their Lehman parent entity, affiliated lender entities, and even equity partners on the Projects to foreclose on the properties and leave hundreds of creditors in the cold for tens of millions of dollars of work that Lehman induced and that was performed; and (5) squeezing out SunCal despite the agreements and representations made by Lehman.

125.    As just one example of the numerous misrepresentations regarding payment of creditors that Lehman made between at least the fall of 2007 and the weeks after Lehman filed for bankruptcy in September 2008, in the Spring of 2008, Lehman agreed to pay the bills of Voss Cook & Thell, LLP ("VCT"), a law firm that Lehman wanted to continue to defend various Project-related litigation. Specifically, Lehman promised to pay one-half of the outstanding amount around the time the Restructuring Agreement was signed (May 2008), and one-half 30 days later. When the 30 days were up and VCT asked for payment, Lehman's Gilhool told SunCal's Cook to tell VCT not to worry, that they would get paid. When time continued to go by and VCT complained, Gilhool did pay for the time billed by VCT on its Lehman-related litigation for the month of May 2008 only, and promised the rest shortly. Gilhool again told Cook: "They will be paid." They never were.

126.    Lehman ALI and LCPI's inequitable conduct resulted in damage not only to the Debtors themselves and to the Debtors' Equity Members but to their creditors as well. Lehman ALI and LCPI's course of conduct of making repeated assurances, drawing out the process, and ultimately refusing to provide needed funding deepened the Debtors' insolvency, forced them into bankruptcy, and diminished both the value of the Debtors' Projects and the ability of the Debtors to pay their debts as they came due.

127.    Furthermore, Lehman ALI's and LCPI's conspiring amongst themselves and with their Lehman affiliates to prevent successful reorganization of the Projects once LCPI and other

26

33379.5

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

1    Lehman affiliates were in bankruptcy has harmed the prospects of a successful reorganization, or has

2    made such reorganization more difficult and costly, thereby further reducing the prospects of

3    repayment of the Debtors' creditors. The extent of this harm to creditors and others is an amount to

4    be proven at trial, but is, at a minimum, $150 million.

5        128.    To the extent that OVC Holdings and Northlake Holdings purport to have received

6    Lehman ALI's loan and liens on the Oak Valley and Northlake Projects, respectively, they hold

7    claims that are equally subject to equitable subordination, and their liens equally subject to transfer

8    to the estates. On information and belief, LBHI has a controlling interest, directly or indirectly, in

9    OVC Holdings and Northlake Holdings, on the one hand, and in the Lehman Equity Members, on

10    the other, which themselves have a majority stake in the Trustee Debtors and are therefore insiders

11    of the Trustee Debtors. Thus, OVC Holdings and Northlake Holdings are statutory insiders.

12    Moreover, as evidenced by, among other things, recent joint correspondence on behalf of Lehman

13    ALI, LCPI, OVC and Northlake Holdings, these four entities are controlled by the same people

14    within Lehman. OVC Holdings and Northlake Holdings became successors to Lehman ALI's liens

15    and loans with knowledge of the former's inequitable conduct, and as part of a conspiracy for the

16    purpose of promoting Lehman's scheme. These entities have caused harm to the creditors on the

17    Oak Valley and Northlake Projects, and are responsible for those entities' inequitable conduct as

18    well.

19        129.    The Lehman Equity Members, as insiders, have sought to block the Projects'

20    reorganizations in violation of their duties of loyalty to the Trustee Debtors. The Lehman Equity

21    Members did so in an effort to facilitate a Lehman foreclosure and to avoid payment of Plaintiffs'

22    creditors as part of the scheme. They also did nothing to try to cure the purported defaults on the

23    Projects and failed to provide promised funding. Their actions have harmed the creditors of the

24    Trustee Debtors. As such, their interests should be subordinated to those of other equity members.

25        130.    By reason of the foregoing, Plaintiffs are entitled to equitably subordinate: (1)

26    Lehman ALI's, LCPI's, OVC Holdings', and Northlake Holdings' secured claims to the claims of

27    unsecured creditors; and (2) the interest of the Lehman Equity Members to the interests of other

28    equity holders. The value of the claims to be equitably subordinated will be proven at trial, but is no

MILLER BARONESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

27

33379.5

1   less than $150 million.  Equitable subordination under the circumstances will achieve a result that is

2   consistent with the purposes of the Bankruptcy Code.

3

4                                   **PRAYER FOR RELIEF**

5          **WHEREFORE**, Plaintiffs pray that this Court enter a judgment against Defendants as

6   follows:

7          1.      For equitable subordination to the unsecured creditors of all claims held by the

8   Defendants, equitable subordination to other equity holders of all interests held by the Defendants,

9   and for the preservation of any liens held by the Defendants for the benefit of, and transfer to, the

10  Debtors' estates; and

11         2.      For such other and further relief as this Court may, in its discretion, deem just and

12  proper, including, without limitation, attorneys' fees, costs and interest, as appropriate.

13

14  Dated: March 11, 2009                       **MILLER BARONDESS LLP**

15

16                                              By: _____

17                                                   Louis R. Miller
                                                    [Proposed] Special Litigation Counsel for
18                                                  the Jointly Administered Debtors in
                                                    Possession and Steven M. Speier, the
19                                                  Chapter 11 Trustee

20

21

22

23

24

25

26

27

28

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**
33379.5

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

# EXHIBIT A
## (Copy #2 of 2 of proposed SAC)

1  LOUIS R. MILLER, State Bar No. 54141
   smiller@millerbarondess.com
2  MARTIN PRITIKIN, State Bar. No. 210845
   mpritikin@millerbarondess.com
3  BRIAN PROCEL, State Bar No. 218657
   bprocel@millerbarondess.com
4  **MILLER BARONDESS, LLP**
   1999 Avenue of the Stars, Suite 1000
5  Los Angeles, California 90067
   Telephone:    (310) 552-4400
6  Facsimile:    (310) 552-8400

7  [Proposed] Special Litigation Counsel for the Debtors in Possession and Steven M.
   Speier, the Chapter 11 Trustee
8
   PAUL J. COUCHOT, State Bar No. 131934
9  pcouchot@winthropcouchot.com
   PETER W. LIANIDES, State Bar No. 160517
10 plianides@winthropcouchot.com
   **WINTHROP COUCHOT, P.C.**
11 660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
12 Telephone:    (949) 720-4100
   Facsimile:    (949) 720-4111
13
   General Insolvency Counsel for the Debtors in Possession and
14 [Proposed] General Insolvency Counsel for Steven M. Speier, the Chapter 11 Trustee

15              **UNITED STATES BANKRUPTCY COURT**
16     **CENTRAL DISTRICT OF CALIFORNIA -- SANTA ANA DIVISION**

|  |  |
|---|---|
| In re | **CASE NO. 8:08-bk-17206-ES** |
|  | Jointly Administered With Case Nos. |
| PALMDALE HILLS PROPERTY, LLC, AND ITS | 8:08-bk-17209-ES; 8:08-bk-17224-ES; |
| RELATED DEBTORS, | 8:08-bk-17225-ES; 8:08-bk-17227-ES; |
| Jointly Administered Debtors and | 8:08-bk-17230-ES; 8:08-bk-17231-ES; |
| Debtors-in-Possession | 8:08-bk-17236-ES; 8:08-bk-17240-ES |
|  | 8:08-bk-17242-ES; 8:08-bk-17245-ES |
|  | 8:08-bk-17246-ES; 8:08-bk-17248-ES |
| Affects: | 8:08-bk-17249-ES; 8:08-bk-17404-ES; |
| ☒ All Debtors | 8:08-bk-17407-ES; 8:08-bk-17408-ES; |
| ☐ Palmdale Hills Property, LLC, | 8:08-bk-17409-ES; 8:08-bk-17458-ES; |
| ☐ SunCal Beaumont Heights, LLC | 8:08-bk-17465-ES; 8:08-bk-17470-ES; |
| ☐ SCC/Palmdale, LLC | 8:08-bk-17472-ES; 8:08-bk-17573 ES |
| ☐ SunCal Johannson Ranch, LLC | 8:08-bk-17574 ES; 8:08-bk-17575 ES; |
| ☐ SunCal Summit Valley, LLC | 8:08-bk-17588-ES |
| ☐ SunCal Emerald Meadows LLC |  |
| ☐ SunCal Bickford Ranch, LLC | **Adversary No. 8:09-bk-01005-ES** |
| ☐ Acton Estates, LLC |  |
| ☐ Seven Brothers LLC | **SECOND AMENDED COMPLAINT FOR** |
| ☐ SJD Partners, Ltd. | **EQUITABLE SUBORDINATION** |
| ☐ SJD Development Corp. |  |

*MILLER BARONDESS, LLP*
*ATTORNEYS AT LAW*
*1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067*
*TEL: (310) 552-4400   FAX: (310) 552-8400*

☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☐ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF, LLC
☐ LB-L-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LB-L-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

## ADVERSARY PROCEEDING

**Debtor-In-Possession Plaintiffs**
PALMDALE HILLS PROPERTY, LLC, a Delaware limited liability company; SUNCAL BEAUMONT HEIGHTS, LLC, a Delaware limited liability company; SCC/PALMDALE, LLC, a Delaware limited liability company; JOHANNSON RANCH, LLC, a Delaware limited liability company; SUNCAL SUMMIT VALLEY, LLC, a Delaware limited liability company; SUNCAL EMERALD MEADOWS, LLC, a Delaware limited liability company; SUNCAL BICKFORD RANCH, LLC, a Delaware limited liability company; ACTON ESTATES, LLC, a Delaware limited liability company; SEVEN BROTHERS, LLC, a Delaware limited liability company; SJD DEVELOPMENT CORP., a Delaware corporation; KIRBY ESTATES, LLC, a Delaware limited liability company; NORTH ORANGE DEL RIO LAND, LCC, a Delaware limited liability company; TESORO SF, LLC, a Delaware limited liability company; SCC COMMUNITIES, LLC, a Delaware limited liability company; SUNCAL COMMUNITIES I, LLC, a Delaware limited liability company; SUNCAL COMMUNITIES III, LLC, a Delaware limited liability company;

**Trustee Plaintiff:**
STEVEN SPEIER, Chapter 11 Trustee, on behalf of LB-L-SUNCAL OAK VALLEY, LLC, a Delaware limited liability company; SUNCAL HEARTLAND, LLC, a Delaware limited liability company; LB-L-SUNCAL NORTHLAKE, LLC, a Delaware limited liability company; SUNCAL MARBLEHEAD, LLC,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**

33379.5

1   a Delaware limited liability company; SUNCAL
    CENTURY CITY, LLC, a Delaware limited liability
2   company; SUNCAL PSV, LLC, a Delaware limited
    liability company; DELTA COVES VENTURE,
3   LLC, a Delaware limited liability company;
    SUNCAL TORRANCE, LLC, a Delaware limited
4   liability company; and SUNCAL OAK KNOLL,
5   LLC, a Delaware limited liability company,

6                    Plaintiffs,
7   v.

8   **Lehman Lender Defendants:**
    LEHMAN ALI, INC., a Delaware corporation;
9   LEHMAN COMMERCIAL PAPER, INC., a
    Delaware corporation; OVC HOLDINGS, LLC, a
10  Delaware limited company; NORTHLAKE
    HOLDINGS, LLC, a Delaware limited liability
11  company;

12  **Lehman Equity Member Defendants:**
    LBREP II/SUNCAL LAND FUND MEMBER,
13  LLC, a Delaware limited liability company; SCLV
    OAK VALLEY, LLC, a Delaware limited liability
14  company; SCLV NORTHLAKE, LLC, a Delaware
    limited liability company; LB/L–DUC III MASTER
15  LLC, a Delaware limited liability company;

16  and DOES 1 through 50, inclusive,

17                   Defendants.

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS  SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

33379.5

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**

## SUMMARY OF ACTION

1.    This case is about a major Wall Street financial institution, Lehman Brothers ("Lehman"), that bilked California businesses out of hundreds of millions of dollars. Lehman perpetrated a fraud on creditors of monumental proportion, with drastic and devastating consequences. With this action, Plaintiffs seek to remedy those consequences.

### A.    Lehman Pre-Bankruptcy

2.    The story begins several years ago when Lehman undertook to loan or otherwise provide various entities affiliated with the SunCal Companies ("SunCal"), a California-based land developer, approximately $2 billion for the acquisition and development of master-planned communities located throughout California, including the entitlement and construction of residences, schools, streets, bridges, golf courses, commercial buildings and all the infrastructure attendant thereto (collectively at times the "Projects"). Through entities that Lehman owned and controlled, Lehman was SunCal's lender and equity partner in over twenty projects. Lehman provided financing to, and determined the financial structure of, the Projects, and SunCal brought real estate development expertise to the venture.

3.    SunCal is a highly-experienced and successful real estate developer in business for over 70 years. It manages virtually all aspects of real estate development, from acquiring properties and obtaining governmental entitlements to construction and build-out, culminating in the sale of lots to merchant builders. For years, the practice under SunCal and Lehman's joint venture was for Lehman to fund the Projects, and for SunCal to control and manage the development process including, among other things, contracting and dealing with and paying vendors, contractors, and municipalities and governmental agencies.

4.    In or about mid-2007, that practice changed. As the real estate market began to cool, Lehman took over financial control and informed SunCal that going forward it would approve or have a veto over all expenditures, and that it alone would decide if and when to advance funds for the Projects. Since Lehman held the purse-strings—and was imposing its control—SunCal had no choice in the matter and acquiesced.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

5.      Meanwhile, Lehman represented to SunCal that it would continue funding the Projects and paying the various contractors and creditors for the millions of dollars of goods and services they provided to the Projects.  In fact, Lehman decided what work would be performed on the Projects and specifically promised to pay for the work, which enhanced the value of the Projects significantly.  In doing so, Lehman imposed its complete financial control over the Projects.

6.      During this time—from the second half of 2007 into 2008—property values were in decline, and SunCal periodically so informed Lehman.  SunCal also provided Lehman with detailed budgets regarding the critical needs of the Projects in order to ensure continued progress and ameliorate any decline in value to the extent possible.  During this period, SunCal worked on the Projects with its vendors and contractors and relied on Lehman's promises and representations of funding.

7.      Unbeknown to SunCal, Lehman had its own agenda for taking financial control.  On information and belief, in order to mask the decline in value of the Projects—and to minimize write-downs that would have further weakened its own declining financial position—Lehman wanted to, and did, create the appearance that it would recoup all, or a substantial portion, of its multi-billion dollar investment in the SunCal projects.

8.      On information and belief, Lehman sought to minimize to the outside world the Projects' decline in value, keep SunCal and the other creditors on the hook and make it appear that the Projects were viable, being supported and would continue going forward.  This was done to prop up Lehman's weakening stock price for the benefit of the securities markets and to entice potential investors Lehman was pursuing to fortify its faltering finances.

9.      In furtherance of this scheme, Lehman threatened SunCal in an effort to obtain its consent to a restructuring agreement.  For instance, Lehman stated it would ensure that SunCal would be exposed to undue tax liability and that Bruce Elieff, SunCal's CEO and owner, would be "hung out" on bonds posted in connection with the Projects if SunCal refused to enter into the restructuring agreement.

10.     In May 2008, faced with no other option, SunCal agreed to Lehman's supposed restructuring agreement ("Restructuring Agreement").  Under the terms of the Restructuring

2

33379.5

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1   Agreement, Lehman would act as both lender and equity partner and recoup its investment plus

2   interest and more. As the lender, Lehman committed to restructure the existing obligations of the

3   Projects; and Lehman agreed to provide continuing financing that was necessary to keep the Projects

4   going. (Ultimately, it was this scheme to misrepresent and inflate asset value that undermined

5   Lehman's credibility and contributed to its demise.)

6       11.    Neither SunCal nor the Project creditors had any knowledge of, or participation in,

7   the Lehman scheme as set forth herein. They are, in effect, its unwitting victims. Had SunCal

8   known of this scheme, it could have—and would have—acted to avert, or at least mitigate, the

9   Projects' diminution in value and harm to creditors.

10      **B.    Lehman Post-Bankruptcy**

11      12.    Even after filing for bankruptcy in September 2008, Lehman for a time continued to

12  tell SunCal that it would fund ongoing critical expenses of the Projects, and continued to encourage

13  and authorize SunCal to incur expenses in connection with the Projects. SunCal and the creditors

14  reasonably and detrimentally relied on the Restructuring Agreement and on the representations and

15  assurances by Lehman made before and after that Agreement was entered into.

16      13.    But Lehman's funding never materialized anywhere close to what was promised and

17  needed. As a result, the value of the Projects has been diminished and continues to diminish. Many

18  of the Projects have been forced into bankruptcy. Worse, approximately 450 creditors, including

19  many small California businesses, have had their bills go unpaid for months, resulting in great harm

20  and hardship to those who relied on and trusted Lehman. The unpaid bills and liabilities now

21  aggregate approximately $150 million.

22      14.    Lehman's deception, and the harm its actions have caused, does not stop there. The

23  Projects themselves are falling into a state of serious disarray. In the dry season, they encountered

24  problems with dust and fire control and friable asbestos, among other things; and they are now

25  experiencing flooding, erosion, problems with unmonitored levees and partially constructed bridges,

26  and other serious health and safety hazards. The Projects are further threatened with the loss of their

27  governmental entitlements, which are critical to avoid massive disruptions in the development

28  process and to maintain value.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

3

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**

33379.5

15.    Not only did Lehman make repeated promises to fund critical needs but fail to do so, Lehman also withdrew millions of dollars of funds from accounts that had been established precisely to meet those needs.

16.    Lehman is orchestrating the foregoing in a squeeze play: to foreclose on its liens and to usurp the properties for itself. If successful in this scheme, Lehman will then "resurrect" the Projects, in the process generating millions of dollars in unnecessary and wasted expense over the next several years, thereby further burdening the Projects and pushing them deeper into financial straits—to the harm and detriment of the creditors and investors therein.

17.    This self-serving scheme will harm—and is harming—the innocent creditors including the Plaintiffs herein. Lehman has already taken action to preclude the Projects from obtaining necessary funds from a ready, willing and able lender.

18.    Lehman has brazenly demanded that SunCal step aside and allow foreclosures on the Projects to proceed, leaving the creditors without any effective recourse. On information and belief, and based on the course of dealings over the past several years, Lehman both pre- and post-bankruptcy has no in-house expertise or hands-on experience in the complex area of land development, whereas over the course of its history SunCal has acquired that expertise and experience and has exercised it at a very high and successful level in connection with many major land development projects.

19.    Various Lehman affiliates have acted in concert to stiff the creditors and effectuate foreclosures through this scheme. For instance, one of the Lehman lending entities, Lehman ALI, Inc. ("Lehman ALI")—which is not in bankruptcy—surreptitiously transferred first deeds of trust on the properties to an affiliate, Lehman Commercial Paper, Inc. ("LCPI"), shortly before LCPI filed for bankruptcy. Lehman engaged in this action in derogation of the rights of the Projects' creditors and investors.

20.    LCPI and the other bankrupt Lehman entities are orchestrating this scheme to impede the reorganization of the Projects and to squeeze SunCal and force it out of the Projects. Lehman also controls the non-bankrupt Lehman entities, including the Lehman equity partners in some of the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    Projects, and through its manipulation of them is attempting to block any reorganization of the

2    Projects in bankruptcy and preclude payment of the creditors.

3            21.        This is a blatant conflict of interest—Lehman is acting against its own (and SunCal's)

4    interests as an equity owner in order to benefit its, Lehman's, interest as a lender.  For instance,

5    Lehman has taken positions to the detriment of the equity interest, including: (1) failing to fund the

6    Projects or otherwise provide necessary capital; (2) refusing to pay creditors even when capital was

7    available; and (3) failing to preserve the assets, including efforts to prevent the debtors from

8    declaring bankruptcy.  Lehman undertook the foregoing actions to the detriment of the equity

9    interest in order to increase the value of the Projects when it foreclosed as lender.

10           22.        On information and belief, Lehman has amassed and has available in excess of $5

11   billion in cash from which it easily could—and should—pay the Projects' creditors.  Lehman has

12   failed and refused to pay the creditors without good cause.

13           23.        Accordingly, this lawsuit is to obtain redress for the creditors by way of equitably

14   subordinating Lehman's claims and interest in the Projects.

15           24.        This adversary proceeding is filed against defendants who are not in the bankruptcy

16   proceedings involving Lehman Brothers in New York, with one exception:  LCPI, which is in

17   bankruptcy.  LCPI filed a motion for relief from stay in order to foreclose on a number of the

18   Projects.  Under the Court's ruling on February 20, 2009, and pursuant to governing law, this

19   constituted the filing of an informal proof of claim against those estates.  Given that LCPI's motion

20   for relief was denied without prejudice to it being reasserted, LCPI's automatic stay in its own

21   bankruptcy does not apply to Debtors' efforts to defend against those claims by seeking to equitably

22   subordinate them.  Accordingly, LCPI is named herein defensively under the equitable subordination

23   claim.

24           25.        Plaintiffs reserve the right to seek relief from stay to name any and all other Lehman-

25   related entities, agents and/or individuals as defendants herein as necessary, and/or to name other

26   defendants as necessary, to obtain and effectuate full and complete relief for the creditors.  Other

27   than LCPI as set forth above, the claims asserted herein do not name Lehman Brothers Holdings,

28   Inc. or any other entity in the bankruptcy proceedings in the Southern District of New York.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

5

33379.5

## STATEMENT OF JURISDICTION AND VENUE

26.    The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), (K), and (O), and 1334.

27.    Venue properly lies in this judicial district in that this civil proceeding arises under title 11 of the United States Code, as provided for in 28 U.S.C. § 1409(a).

28.    The cause of action for equitable subordination under 11 U.S.C. § 510(c) is a core proceedings under 28 U.S.C. §157(b).

## PARTIES

29.    As this adversary proceeding deals with a fraudulent scheme by Lehman affecting numerous properties and involving dozens of bankruptcy proceedings, for convenience, the parties are broken down into the following categories:

***Debtor-In-Possession Plaintiffs***

30.    Plaintiff Acton Estates, LLC ("SunCal Acton Estates") is a Delaware limited liability company, and is owner of the "Acton Estates" project described below.

31.    Plaintiff SunCal Beaumont Heights, LLC ("SunCal Beaumont Heights") is a Delaware limited liability company, and is owner of the "Beaumont Heights" project described below.

32.    Plaintiff SunCal Bickford Ranch, LLC ("SunCal Bickford Ranch") is a Delaware limited liability company, and is owner of the "Bickford Ranch" project described below.

33.    Plaintiff North Orange Del Rio Land, LLC ("SunCal Del Rio") is a Delaware limited liability company, and is owner of the "Del Rio" project described below.

34.    Plaintiff SunCal Emerald Meadows, LLC ("SunCal Emerald Meadows") is a Delaware limited liability company, and is owner of the "Emerald Meadows" project described below.

35.    Plaintiff SunCal Johannson Ranch, LLC ("SunCal Johannson Ranch") is a Delaware limited liability company, and is owner of the "Johannson Ranch" project described below.

36.    Plaintiff SCC Communities, LLC (SCC Communities") is a Delaware limited liability company, and is associated with the "Joshua Ridge" project described below.

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**

33379.5

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

37.    Plaintiff SJD Partners, Ltd. ("SJD Partners") is a Delaware limited liability company.

38.    Plaintiff SJD Development Corp. ("SJD Development") is a Delaware limited liability company, and is the parent of SJD Partners. SJD Partners is the former owner of the "Pacific Point" project described below.

39.    Plaintiff Palmdale Hills Property, LLC ("Palmdale Hills") is a Delaware limited liability company.

40.    Plaintiff SCC/Palmdale, LLC ("SCC/Palmdale") is a Delaware limited liability company. Palmdale Hills and SCC/Palmdale are associated with the "Ritter Ranch" project described below.

41.    Plaintiff SunCal Summit Valley, LLC ("SunCal Summit Valley") is a Delaware limited liability company.

42.    Plaintiff Seven Brothers, LLC, ("Seven Brothers") is a Delaware limited liability company.

43.    Plaintiff Kirby Estates, LLC ("Kirby Estates") is a Delaware limited liability company. SunCal Summit Valley, Seven Brothers, and Kirby Estates are associated with the "Summit Valley" project described below.

44.    Plaintiff Tesoro SF, LLC ("SunCal Tesoro") is a Delaware limited liability company, and is associated with the "Tesoro" project described below.

45.    Plaintiff SunCal Communities I, LLC ("SunCal Communities I") is a Delaware limited liability company, and is associated with the Acton, Beaumont, Bickford Ranch, Emerald Meadows, Johansson Ranch, and Summit Valley projects.

46.    Plaintiff SunCal Communities III, LLC ("SunCal Communities III") is a Delaware limited liability company, and is associated with the Acton, Beaumont, Bickford Ranch, Emerald Meadows, Johansson Ranch, and Summit Valley projects.

***The Trustee, on behalf of the Trustee Debtors***

47.    Plaintiff Steven Speier is the Chapter 11 trustee ("Trustee") of the following Trustee Debtor entities (defined below): SunCal Century City, SunCal Delta Coves, SunCal Heartland,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1   SunCal Marblehead, SunCal Northlake, SunCal Oak Knoll, SunCal Oak Valley, Sun Cal PSV, and

2   SunCal Torrance. The Trustee Debtor entities which the Trustee represents are as follows:

3       48.     SunCal Century City, LLC ("SunCal Century City") is a Delaware limited liability

4   company, and is associated with the "Century City" project described below.

5       49.     SunCal PSV, LLC ("SunCal PSV") is a Delaware limited liability company, and is

6   associated with the "Palm Springs Village" project described below.

7       50.     SunCal Torrance Properties, LLC ("SunCal Torrance") is a Delaware limited liability

8   company, and is associated with the "Torrance (Del Amo)" project described below.

9       51.     SunCal Oak Knoll, LLC ("SunCal Oak Knoll") is a Delaware limited liability

10  company, and is associated with the "Oak Knoll" project described below.

11      52.     LB/L-SunCal Oak Valley, LLC ("SunCal Oak Valley") is a Delaware limited liability

12  company, and is associated with the "Oak Valley" project described below.

13      53.     LB/L-SunCal Northlake, LLC ("SunCal Northlake") is a Delaware limited liability

14  company, and is associated with the "Northlake" project described below.

15      54.     Delta Coves Venture, LLC ("Delta Coves Venture") is a Delaware limited liability

16  company, and is associated with the "Delta Coves" project described below.

17      55.     SunCal Marblehead, LLC ("SunCal Marblehead") is a Delaware limited liability

18  company, and is associated with the "Marblehead" project described below.

19      56.     SunCal Heartland, LLC ("SunCal Heartland") is a Delaware limited liability

20  company, and is associated with the "Heartland" project described below.

21  ***Lehman Lender Defendants***

22      57.     On information and belief, defendant Lehman ALI, Inc. ("Lehman ALI") is a

23  Delaware corporation with its principal place of business in New York, New York, and is a wholly-

24  owned subsidiary of the parent Lehman entity, Lehman Brothers Holdings, Inc. ("LBHI" or

25  "Lehman"), and was—or purported to be—the holder of first deeds of trust and/or pledged interests

26  on all the subject properties in this action. Lehman ALI is not in bankruptcy.

27      58.     On information and belief, defendant Lehman Commercial Paper, Inc. ("LCPI") is a

28  Delaware corporation with its principal place of business in New York, New York, and is a wholly-

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

8

owned subsidiary, directly or indirectly, of LBHI. LCPI purports to be the holder of first deeds of trust and/or pledged interests on a number of the subject properties in this action, including on the Acton, Beaumont Heights, Bickford Ranch, Emerald Meadows, Johannson Ranch, Ritter Ranch, and Summit Valley Projects. LCPI is a defendant herein pursuant to the Court's ruling on February 20, 2009 that a claim against it for equitable subordination does not violate its automatic stay.

59.     On information and belief, defendant OVC Holdings, LLC ("OVC") is a Delaware limited liability company, and is a wholly-owned subsidiary of LBHI. OVC purports to be the assignee of Lehman ALI's loan on the Oak Valley project. It is not in bankruptcy.

60.     On information and belief, defendant Northlake Holdings, LLC ("Northlake Holdings") is a Delaware limited liability company, and is a wholly-owned subsidiary of LBHI. Northlake purports to be the assignee of Lehman ALI's loan on the Northlake project. It is not in bankruptcy. Lehman ALI, LCPI, OVC, and Northlake Holdings are referred to collectively herein as the "Lehman Lenders" or "Lehman Lender Defendants."

***Defendant Equity Members in SunCal/Lehman Joint-Venture "Trustee" Debtors:***

61.     On information and belief, defendant LBREP II/SunCal Land Fund Member, LLC ("LBREP II/SCLF") is a Delaware limited liability company, and a wholly-owned subsidiary (directly or indirectly) of, or at least controlled by, LBHI. LBREP II/SCLF is the Lehman member in the Lehman SunCal Real Estate Fund, LLC, parent of four "trustee" debtors: SunCal Century City, SunCal Palm Springs Village, SunCal Torrance (Del Amo), and SunCal Oak Knoll. It is not in bankruptcy.

62.     On information and belief, defendant SCLV Oak Valley, LLC is a Delaware limited liability company, and a wholly-owned subsidiary (directly or indirectly) of, or at least controlled by, LBHI. SCLV Oak Valley, LLC is purported to be the Lehman member in the SunCal Oak Valley "trustee" debtor. It is not in bankruptcy.

63.     On information and belief, defendant SCLV Northlake, LLC is a Delaware limited liability company, and a wholly-owned subsidiary (directly or indirectly) of, or at least controlled by, LBHI. SCLV Northlake, LLC is purported to be the Lehman member in the SunCal Northlake "trustee" debtor. It is not in bankruptcy.

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**

33379.5

64.     On information and belief, defendant LB/L–DUC III Master LLC is a Delaware limited liability company, and a wholly-owned subsidiary (directly or indirectly) of, or at least controlled by, LBHI. LB/L–DUC III Master LLC is the Lehman member in Delta Coves Master JV LLC, the parent of the SunCal Delta Coves "trustee" debtor. It is not in bankruptcy. LBREP II/SCLF, SCLV Oak Valley, LLC, SCLV Northlake, LLC and LB/L–DUC III Master LLC are each referred to herein as a "Lehman Equity Member," and collectively as "Lehman Equity Members."

65.     On information and belief, the acts and//or omissions complained of herein were done with the express knowledge, consent and/or ratification of the responsible managerial employees, supervisors, directors, members, and/or partners of the defendants.

## FACTUAL ALLEGATIONS

### SunCal

66.     SunCal is a family-owned and operated California real estate business. Real estate development is a time-intensive, complex undertaking that requires coordination among hundreds of third-party contractors and vendors, as well as local, state and federal governmental agencies, and non-governmental organizations. With more than 70 years of experience in real estate development, SunCal has gained an expertise in these matters, and has formed relationships with many governmental entities and businesses throughout California.

67.     SunCal, directly and/or through its affiliates, has entered into numerous agreements with Lehman, directly and/or through its affiliates, whereby Lehman would provide financing for the development of real estate projects, and SunCal would manage and develop those projects. The funding for the purchase and development of the subject property of each project was made through a Lehman entity, ALI or LCPI; and the respective lending entities obtained liens on each property as security for its loan and/or obtained pledges of equity interests in the entities owning such properties.

68.     This lawsuit involves disputes regarding nine development projects associated with nine trustee-managed bankruptcies before this Court (the "Trustee Debtors"), and eleven development projects associated with seventeen debtor-in-possession bankruptcies before this Court (the "Debtor-in-Possession Plaintiffs" or "Debtors In Possession").

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**The Trustee Debtors**

69.    The Trustee Debtors whose projects are at issue in this suit include SunCal Northlake, SunCal Oak Valley, SunCal Century City, SunCal PSV, SunCal Torrance, SunCal Oak Knoll, SunCal Delta Coves, SunCal Marblehead, and SunCal Heartland; they are associated, respectively, with the projects known as Northlake, Oak Valley, Century City, Palm Springs Village, Torrance (Del Amo), Oak Knoll, Delta Coves, Marblehead, and Heartland (collectively, the "Trustee Projects"). Lehman ALI was the lender for each of the Trustee Projects.

70.    In the underlying bankruptcies, the Lehman affiliates OVC and Northlake Holdings LLC purport to be the lenders for the Oak Valley and Northlake Projects, respectively, not Lehman ALI. However, Lehman ALI, not OVC or Northlake Holdings, was the signatory to the parties' May 23, 2008 Restructuring Agreement (defined below), in which Lehman ALI represented itself to be "the Lender with respect to each Loan." If Lehman ALI transferred its interest in the relevant loans to OVC or Northlake Holdings, it did so subsequent to its agreement with Plaintiffs. In any event, recent joint correspondence from Lehman ALI, LCPI, OVC and Northlake Holdings indicates that each of these entities is controlled by the same Lehman-related party. On information and belief, each of these entities is a participant in the intra-Lehman scheme to wrongfully foreclose on the Projects and stiff SunCal and the myriad creditors who did work at Lehman's behest.

71.    For each Trustee Project, Lehman held an equity interest through a (nominally) separate entity in addition to extending a loan through Lehman ALI. For both the Northlake and Oak Valley Projects, a single-purpose entity limited liability company ("SPE") was formed, with a SunCal Equity Member and a Lehman Equity Member serving as the members of that SPE. For five Projects—Century City, Palm Springs Village, Torrance (Del Amo), Oak Knoll, and Delta Coves— the SunCal and Lehman Equity Members were members of the parent of the SPE that ultimately filed for bankruptcy in this Court. The bankrupt SPE, parent company, where applicable, and the SunCal and Lehman Equity Member for each Trustee Project are, as follows:

33379.5

| Project | Debtor SPE | Parent Company | SunCal Equity Member | Lehman Equity Member |
|---------|-----------|----------------|---------------------|---------------------|
| Century City | SunCal Century City | Lehman SunCal Real Estate Fund, LLC | SunCal Communities II, LLC | LBREP II/SCLF |
| Delta Coves | Delta Coves Venture | Delta Coves Master JV, LLC | SunCal Delta Coves LLC | LB/L–DUC III Master LLC |
| Northlake | SunCal Northlake | N/A | SCC/Northlake, LLC | SCLV Northlake |
| Oak Knoll | SunCal Oak Knoll | Lehman SunCal Real Estate Fund, LLC | SunCal Communities II, LLC | LBREP II/SCLF |
| Oak Valley | SunCal Oak Valley | N/A | SCC/Oak Valley, LLC | SCLV Oak Valley, LLC |
| Palm Springs Village | SunCal PSV | Lehman SunCal Real Estate Fund, LLC | SunCal Communities II, LLC | LBREP II/SCLF |
| Torrance (Del Amo) | SunCal Torrance | Lehman SunCal Real Estate Fund, LLC | SunCal Communities II, LLC | LBREP II/SCLF |

72.    SunCal Communities II, LLC, SCC/Oak Valley, LLC, SCC/Northlake, LLC, SunCal

Delta Coves LLC, and SCC JV Ventures LLC[1] are each referred to herein as a "SunCal Equity

Member," and collectively as the "SunCal Equity Members."

---

[1] For the Marblehead and Heartland Projects, the equity member aside from the SunCal Equity Members, SCC JV Ventures LLC, was SC Master Holdings II, LLC, which is not a defendant in the current action. SCC JV Ventures LLC and SC Master Holdings II were members of the "grandparent" of the bankrupt entities, as follows:

| Project | Debtor SPE | Parent (and Grandparent) Company | SunCal Equity Member | Lehman Equity Member |
|---------|-----------|----------------------------------|---------------------|---------------------|
| Heartland | SunCal Heartland | SunCal Marblehead Heartland LLC (owned by SunCal Master JV LLC) | SCC JV Ventures LLC (member of SunCal Master JV LLC) | SC Master Holdings II (member of SunCal Master JV) |
| Marblehead | SunCal Marblehead | SunCal Marblehead Heartland LLC (owned by SunCal Master JV LLC) | SCC JV Ventures LLC (member of SunCal Master JV LLC) | SC Master Holdings II (member of SunCal Master JV LLC) |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400    FAX (310) 552-8400

SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT

33379.5

73.    For Oak Valley and Northlake, the Lehman Equity Member ostensibly has management and control over the Debtor SPE.  For the other seven Trustee Projects, the Lehman Equity Members do not have exclusive management and control of the Debtor SPEs' parent (or grandparent), but the Debtor SPEs could not file for bankruptcy without the consent of the Lehman Equity Member, which refused to provide such consent.  Accordingly, all of the Trustee Projects were initiated as involuntary bankruptcies (on November 12, 14, and 19, 2008).

74.    On or about January 8, 2009, this Court entered orders for relief in the involuntary bankruptcy cases.  On or about January 15, 2009, orders appointing a Trustee were entered as to all of the involuntary debtors.  Thereafter, the Office of the United States Trustee appointed Mr. Steven Speier, Esq. as the trustee of these nine debtors (the "Trustee").  Accordingly, these Debtors are no longer referred to as the "Involuntary Debtors"; to distinguish them from the Debtors In Possession (described below), they are referred to herein as "Trustee Debtors."

75.    The Trustee is authorized to bring, and hereby does bring, claims on behalf of the Trustee Debtors.

### The Debtors In Possession

76.    The other projects at issue in this suit (the "Debtor-In-Possession Projects") are: Acton Estates, Beaumont Hills, Bickford Ranch, Del Rio, Emerald Meadows, Joshua Ridge II, Johannson Ranch, Pacific Point, Ritter Ranch, Summit Valley, and Tesoro.  (The Trustee Projects and Debtor-In-Possession Projects are referred to collectively herein as the "Projects," and the Trustee Debtors and Debtors-In-Possession as the "Debtors").  Lehman ALI and/or LCPI were the lenders on the Debtor-In-Possession Projects.[2]  The difference between the Debtors In Possession and the Trustee Debtors is that the former were able to file voluntary bankruptcies in the first instance (on November 6 and 7, 2008) because their operating agreements did not require Lehman consents to filing.

---

[2] The Pacific Point project is somewhat unique in that LV Pacific Point, LLC, a Lehman affiliate, actually acquired the property from the former SunCal affiliated owner, SJD Partners, Ltd., by foreclosure, in violation of the parties' agreement and through a course of misrepresentation.

13

33379.5

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

77.     In the underlying bankruptcies, the Lehman affiliate LCPI purports to be the sole or primary lender and lien holder for the Acton, Beaumont Heights, Bickford Ranch, Emerald Meadows, Johannson Ranch, Ritter Ranch, and Summit Valley Projects. However, Lehman ALI, not LCPI, was the signatory to the parties' May 23, 2008 Restructuring Agreement (defined below), in which Lehman ALI represented itself to be "the Lender with respect to each Loan." If Lehman ALI transferred its interest in the relevant loans to LCPI, it did so subsequent to its agreement with Plaintiffs. In any event, recent joint correspondence from and court filings by Lehman ALI and LCPI indicate that these entities are controlled by the same Lehman-related party. On information and belief, these entities are participants in the intra-Lehman scheme to wrongfully foreclose on the Projects and stiff SunCal and the myriad creditors who did work at Lehman's behest.

**The Development Projects**

78.     In its dealings with SunCal regarding the Projects, Lehman generally made no distinction between Projects financed by Lehman ALI and Projects financed by LCPI. SunCal dealt simply with representatives of "Lehman," not Lehman ALI or LCPI. Thus, representations made by "Lehman" were being made on behalf of both Lehman ALI and LCPI.

79.     For several years prior to 2007, the SunCal-Lehman partnership thrived, and the parties prospered in their venture together. SunCal used its expertise to manage development of the Projects. SunCal would contract with third-party vendors to perform grading, health and safety compliance, construction, landscaping, and other necessary services on the Project sites, and would coordinate with municipalities for easements, entitlements and other requirements to proceed with development. SunCal would submit to Lehman documentation of expenses incurred on a quarterly basis, and Lehman in the regular course would remit payment to SunCal so that the third-party vendors could be paid.

80.     In or about mid-2007, this changed, as the real estate market experienced a downturn, and many of the Projects declined significantly in value. Lehman became much more "hands on" in scrutinizing—and approving—budgets and expenses. SunCal would submit budgets on a weekly basis. On a weekly conference call, SunCal would explain what Project payables had to paid and what work had to be performed for the Projects to avoid immediate closure, and Lehman would have

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

14

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**

1  to give pre-authorization before any work could occur or expenses be incurred.  Lehman would

2  unilaterally dictate what future work would proceed, and also decided what payables were "urgent"

3  and what other payables could be deferred.  Lehman thereby effectively took over not only financial

4  control of the Projects, but ultimate management control as well.

5       81.     Lehman had not only input on, but importantly, veto power over any expenditure

6  undertaken on the Projects.  Lehman thus made SunCal and its creditors dependent on Lehman's

7  willingness to continue financing the Projects, and Lehman was in full control of the Projects.

8  Lehman represented that it was in fact willing to continue financing these Projects, and in reliance

9  on that, SunCal contracted hundreds of contractors to provide millions of dollars in work developing

10  and improving the Projects.

11  **The Parties' "Work-Out" Agreement**

12       82.     SunCal continued to work with Lehman and develop the Projects in reliance on a

13  promised overall restructuring of the Projects and of the loans and/or liens held by Lehman.  To that

14  end, on May 23, 2008, SunCal and the other Plaintiffs entered into an omnibus restructuring

15  agreement ("Restructuring Agreement") with LBHI, Lehman ALI and other Lehman-controlled

16  entities.  (LCPI was not a signatory.)  Frank Gilhool ("Gilhool"), Lehman's Managing Director of

17  Global Real Estate, signed the Restructuring Agreement on behalf of both Lehman Equity Members

18  and the Lehman lenders.

19       83.     The Restructuring Agreement, as amended, was meant to, and did, cover all the

20  Projects at issue in the instant case.  The same course of conduct applied to all Projects—that is,

21  Lehman approved all expenses and told Plaintiffs what work to move forward with—and this

22  applied to all ongoing Projects including those encompassed within the Restructuring Agreement

23  and those not covered by that Agreement, such as Century City, Del Amo, Oak Knoll and Delta

24  Coves.

25       84.     Pursuant to the Restructuring Agreement, Lehman committed, among other things, to:

26  (1) make advances under existing loans to fund the continuing costs necessary to preserve the value

27  of the Projects; (2) move forward to resolve the accrued outstanding subcontractor payables, i.e., to

28  make sure that the Projects' creditors were paid for their work; and (3) to close the transaction,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

33379.5

1    whereby Lehman-related entities would assume the debt and obligations of the Projects. The

2    Restructuring Agreement was designed to culminate in closing with the parties entering into a

3    settlement agreement ("Settlement Agreement"), under which new Lehman/SunCal entities would

4    assume Plaintiffs' debt obligations to Lehman, assume bond obligations previously owed by SunCal

5    and its affiliates, and provide indemnifications to SunCal and the Plaintiffs.

6       85.    SunCal signed the Restructuring Agreement with Lehman ALI with the

7    understanding that Lehman ALI was by that point the entity that held the various first trust deeds

8    and/or pledged interests on all of the Projects, and that this was the reason why Lehman ALI, and not

9    LCPI, was a signatory. In any event, even after the Restructuring Agreement was signed, Lehman

10    continued to make no distinction between LCPI-financed Projects and Lehman ALI-financed

11    projects, and continued promises of financing emanated from the same Lehman representatives.

12    SunCal believed and relied on Lehman's promises to maintain the long-term value of the Projects

13    and that Lehman intended to act in good faith to continue with those Projects.

14       86.    And it appeared—at least for a short while—that might be the case. Lehman

15    arranged for a third party, Radco, to settle outstanding contractor payables. On information and

16    belief, Radco was provided some limited funding and authority to negotiate settlements, and did in

17    fact do so with some creditors. (Funding for settlements on Lehman ALI- and LCPI-funded Projects

18    came from the same source.) Lehman also provided approval for new work on the Projects, and

19    provided payment for some of it. But this funding was minimal and soon stopped.

20    **Lehman's Misrepresentations and Refusal To Close In Accordance With the Restructuring**

21    **Agreement**

22       87.    In the summer of 2008, SunCal was unaware that a Lehman bankruptcy was

23    impending. Unbeknown to SunCal, the various Lehman entities were proceeding on a coordinated

24    course of conduct designed to shore up Lehman's position in anticipation of a possible bankruptcy

25    and extract any value in the Projects for themselves, in disregard of the promises made to SunCal or

26    the inducements made to the Projects' creditors.

27       88.    First, Lehman consolidated its control of both the debt and equity in the Projects.

28    Prior to the Restructuring Agreement, the Lehman equity interests in the Oak Valley and Northlake

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

16

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**

33379.5

Projects were held by a Lehman-related entity that ostensibly had some independence. But shortly after the Restructuring Agreement was signed, the Lehman lenders threatened to squeeze out the equity-holder's interests by foreclosing on those properties, thereby inducing it to transfer its interests to SCLV Oak Valley, LLC and SCLV Northlake, LLC, respectively—entities that are totally controlled by the Lehman lenders. Around the same time, the Lehman lenders declared to SunCal that they were the real party in interest in the equity of LBREP II/SCLF—the Lehman Equity Member in the Century City, Palm Springs Village, Torrance (Del Amo) and Oak Knoll Projects. As for the Delta Coves Project, Lehman had never made a distinction between its debt and equity interests from its inception.

89.    About a month prior to filing for bankruptcy, Lehman withdrew funding and settlement authority from Radco, and so halted the process of resolving millions of dollars of outstanding contractor payables on the Projects. This was work that Lehman had previously authorized and directed SunCal to undertake, but that Lehman later refused to pay for. The contractors would not perform new work unless they received payment for work already done. The halting of Radco's efforts further impeded development of the Projects and also impeded the entities' ability to deal with public health and safety issues. Radco ultimately ended up resolving a fraction of the total outstanding payables.

90.    On information and belief, Lehman arranged for these negotiations to occur for the secret purpose of staving off creditors from filing involuntary bankruptcies against the Debtors, long enough for Lehman to achieve its fraudulent scheme described herein. Lehman thereby sand-bagged SunCal and the other creditors involved in the Projects.

91.    In numerous telephone conversations between Lehman's Gilhool, and SunCal's Frank Faye and/or Bruce Cook ("Cook") in the latter part of 2007 and most of 2008, Gilhool assured SunCal that Lehman was committed to funding the debts and obligations of the projects and the work directed to be performed by Lehman; that funding would be forthcoming; and that SunCal should continue to have contractors undertake work to develop and preserve the value in the Projects. In reliance on these representations, SunCal continued to move forward with the Projects

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS  SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

17
33379.5

1  and incurred substantial expenses in hiring contractors to maintain and/or develop them and to deal

2  with public health and safety issues.

3      92.    At an August 25, 2008 meeting to sign closing documents for the Restructuring

4  Agreement held in Los Angeles, Lehman announced that it wanted to push the closing date out

5  another month to September 30, 2008, ostensibly in order to obtain a few additional (and easily

6  obtainable) third party consents. SunCal, still believing that Lehman was acting in good faith,

7  agreed to the extension to September 30, 2008, not knowing what Lehman was really planning.

8      93.    SunCal and Lehman signed roughly 1000 settlement documents at the August 25

9  meeting. Lehman's attorneys, Weil, Gotshal & Manges (who are also its bankruptcy counsel), took

10  all of the original signed settlement documents with them, claiming that they would provide copies

11  to SunCal and that the closing would occur shortly thereafter. As of this day, however, Weil Gotshal

12  still has not provided copies of any of those documents.

13      94.    Unbeknownst to SunCal, on or about August 21, 2008—four days before SunCal and

14  Lehman signed the restructuring settlement documents—Lehman ALI transferred its first deeds of

15  trust on some of the Projects to LCPI. Lehman ALI never provided any notices of transfer to

16  SunCal. In addition to Gilhool, Lehman's Robert Brusco signed the deed transfers both as Senior

17  Vice President of the transferor, Lehman ALI, and as Senior Vice President of the transferee, LCPI.

18  On September 15, 2008, LBHI filed for bankruptcy, and on October 5, 2008, LCPI filed for

19  bankruptcy. These transfers by Lehman ALI were improper; and the transferred liens should be

20  subordinated as requested herein.

21      95.    SunCal unwittingly entered into agreements regarding the restructuring of hundreds

22  of millions of dollars in loans and liens with a Lehman entity that was secretly transferring its first

23  deeds of trust to a soon-to-be bankrupt affiliate. On information and belief, Lehman ALI selectively

24  transferred deeds of trust to LCPI on Projects that did not have a Lehman Equity Member that could

25  block the Projects' SPEs from filing bankruptcy. (For Projects on which a Lehman Equity Member

26  could prevent a voluntary bankruptcy, transfer of the deeds was unnecessary.)

27      96.    The transfers were made on these Projects so that LCPI could use the automatic stay

28  in its own impending bankruptcy to impede a successful reorganization of the Projects, and to

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

prevent any outcome other than a Lehman foreclosure. Lehman thereby schemed to usurp the Projects for itself, without paying creditors for their millions of dollars of work and without performing on any of the agreements made with SunCal.

97.    Unbeknownst to Plaintiffs, Lehman ALI also apparently transferred its interests in the loans on Oak Valley and Northlake to OVC and Northlake Holdings, respectively. On information and belief, Lehman ALI made these transfers, and OVC and Northlake accepted these transfers, as part of the Lehman scheme to usurp the Projects, and in knowing violation of the rights of Plaintiffs and/or their creditors.

98.    On information and belief, the additional third-party consents required for closing of the Restructuring Agreement and Settlement Agreement had been obtained or could have been obtained by the first week of September 2008, and thus all conditions precedent to closing had been or could have been met. Yet Lehman took no steps to proceed with closing, apparently planning something else for its own self-serving benefit and to the detriment of the creditors herein including SunCal.

## Lehman's Bankruptcy and Its Continuing Inequitable Conduct

99.    On September 15, 2008, LBHI filed a voluntary petition in bankruptcy court in the Southern District of New York. Notwithstanding the bankruptcy, Lehman's Gilhool was still assuring SunCal that Lehman would continue to fund the Projects so as to avoid harm and damage to them and to ensure that creditors were paid.

100.    As the end of September approached, SunCal became greatly concerned that Lehman was still not doing anything to facilitate closing. On September 29, 2008, SunCal sent Lehman a notice indicating that they were prepared to close, and that all conditions precedent to closing had been satisfied. Lehman did not provide a definitive response for weeks.

101.    In the meantime, the Projects required work. Even if no new construction or development was to be undertaken, significant sums had to be spent on site security, erosion prevention, property taxes and other measures in order to prevent the Projects from becoming a public safety hazard, and in order to prevent losing valuable entitlements and other losses to the Projects.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

102.    SunCal repeatedly requested that Lehman provide funding to pay for critical health and safety and value preservation measures on the Projects.  Between October 9 and November 4, 2008, SunCal's general counsel Cook sent Lehman's Robert Brusco nearly two dozen letters practically begging Lehman to provide promised funding to address critical needs on the Projects.

103.    These letters raised issues such as potential and/or actual public exposure to asbestos, flooding, wind damage, looters and vandals, soil erosion and wildfires, in addition to demands from third-party vendors for payment for services and threats to discontinue service.  Cook's letters attached reports from governmental inspectors, and photographs documenting site conditions that posed a threat to public safety or that could subject the Projects to fines and penalties.  Cook's letters were in addition to the myriad of correspondence from SunCal employees working on the Projects to Lehman employees requesting payment for previously approved payables or funding for other particular urgent needs.

104.    Despite Lehman's assurances of its intent to proceed with funding the Projects, SunCal's request that Lehman address its critical financial needs fell on deaf ears.  Lehman repeatedly requested detailed budgets regarding the needs of the Projects, reinforcing the impression that Lehman was willing and able to fund—budgets which SunCal repeatedly and promptly provided.  Lehman repeatedly promised the funding would be forthcoming.  But the funds never materialized.  In November 2008, Lehman's Brusco delivered a message (from an unknown decision-making person or controlling group) that Lehman was unwilling to fund the Projects and that they intended to foreclose on all of the projects.

105.    At the same time that Lehman was stringing SunCal along, promising that funding would be forthcoming but refusing to provide it, Lehman was also secretly stripping the Projects of cash.  SunCal Marblehead Heartland held approximately $3.4 million in two restricted accounts that were to be used for the needs of the Marblehead and Heartland Projects.  Unbeknownst to Plaintiffs, on information and belief, in or about late October or early November 2008—precisely when Plaintiffs were begging that Lehman provide promised funding—Lehman ALI withdrew the money in those accounts, and then closed the accounts.  Plaintiffs did not learn about the withdrawal or

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**

33379.5

1    account closures until they requested updated bank statements from the financial institution holding

2    the accounts.

3    　　　　106.    In late October 2008, SunCal indicated to Lehman that if Lehman continued to refuse

4    to provide critical funding, the SPEs for the various Projects would have no choice but to file for

5    bankruptcy. Finally, with creditor demands, fines and penalties and other expenses mounting, and

6    no financial assistance forthcoming from Lehman, the Debtors In Possession filed for bankruptcy on

7    November 6 and November 7, 2008. When Lehman refused to provide consents to filing as to the

8    Trustee Debtors, their creditors filed involuntary petitions against them beginning on November 12,

9    2008. There are approximately 450 vendors owed in excess of $150 million for work and

10   improvements they provided on the Projects.

11   　　　　107.    Lehman responded to the SunCal bankruptcies with a flurry of activity to try to

12   foreclose on the Projects and avoid its obligations to creditors. On November 13, 2008, Lehman

13   ALI sent SunCal a letter repudiating its prior promises and agreement of continued funding.

14   　　　　108.    On November 12, the same day as the first of the SunCal involuntary bankruptcy

15   filings, Lehman ALI rushed to improperly record notices of default against five Projects—Century

16   City, Torrance, Palm Springs Village, Oak Knoll and Delta Coves—that were not yet in bankruptcy.

17   Even aside from disputing the merits of the claimed defaults, these recordings were improper

18   because no prior notice of default had been sent out, the contents of the notices were inadequate, and

19   no opportunity was given to the equity members in these Projects to make contributions to avoid any

20   default.

21   　　　　109.    The Lehman Equity Members, for their part, sat by silently and did nothing to try to

22   prevent the Lehman lenders from foreclosing. They did not contribute penny one. This is

23   particularly galling as it relates to the LBREP II/SCLF Projects, because under the parties' operating

24   agreement, the Lehman Equity Member on these Projects had a capital commitment obligation for

25   $600 million, which it never came close to satisfying.

26   　　　　110.    In fact, the Lehman Equity Members did what they could to facilitate a Lehman

27   foreclosure. On November 18, 2008, after creditors of the Trustee Projects filed involuntary

28   petitions in order to stay foreclosure proceedings on the Projects, the Lehman Equity Members sent

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**

1    certain of the Trustee Debtors letters stating that the SunCal Equity Members had no authority to

2    consent to an order for relief from stay, nor make any decision on behalf of the Trustee Debtors.  On

3    information and belief, the Lehman Equity Members are controlled by the same people within

4    Lehman as the Lehman Lenders, and these Equity Members are using their control of the joint

5    SunCal/Lehman entities not to benefit those entities or the Projects they represent, or to meet

6    fiduciary duties to creditors, but solely to facilitate the interests of the Lehman secured lender to

7    effectuate foreclosures.

8         111.    LCPI has further used the automatic stay in its own bankruptcy proceeding to try to

9    prevent the Debtors In Possession or Trustee Debtors from moving forward with their respective

10   bankruptcies and successfully reorganize the Projects.  LCPI refused to consent to relief from the

11   automatic stay in its proceedings, and so has tried to block the Debtors from obtaining priming loans

12   or using cash collateral to pay creditors or preserve value in the Projects.  Ironically, though, on

13   January 23, 2009, LCPI and Lehman ALI filed joint motions for relief from stay in over half of the

14   Debtors In Possession's proceedings, seeking to foreclose on those Projects.  They argued that

15   LCPI's request for relief from stay could not be opposed through equitably subordination of its

16   claims because of its own bankruptcy stay.  The Court rejected this claim, but LCPI's attempt to use

17   its bankruptcy stay as both a sword and shield is an abuse of the system perpetrated to harm the

18   Projects' creditors.

19   **Pacific Point**

20        112.    Pacific Point is a 200 plus acre development in a premium location overlooking the

21   Pacific Ocean in San Juan Capistrano.  Pursuant to the Restructuring Agreement, SunCal agreed not

22   to interfere with Lehman's foreclosure on the Pacific Point property in San Juan Capistrano, and a

23   Lehman entity—LV Pacific Point, LLC—would acquire the property, in consideration for Lehman

24   agreeing to assume millions of dollars in outstanding accounts payable for Pacific Point third-party

25   vendors, as well as millions in SunCal bond liability.  LV Pacific Point LLC was a signatory to the

26   August 25, 2008 Settlement Agreement, and was supposed to and agreed to acquire the property

27   subject to the above obligations.

28

33379.5

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

113.    Lehman foreclosed on Pacific Point on August 28, 2008—three days after all the Settlement Agreement was signed—and title was thereafter transferred to LV Pacific Point LLC, but Lehman never assumed the liabilities and obligations as promised. The SunCal entities on the project, SJD Partners, and its parent, SJD Development, filed for bankruptcy in November 2008. Had SunCal known that Lehman had no intent to honor its promised obligations, it never would have agreed to cooperate with a foreclosure. Instead, it could have filed for bankruptcy earlier, precluded a foreclosure and successfully reorganized the project.

**The "New" Lehman**

114.    The various Lehman-affiliated entities do not view themselves as and do not act as separate entities with separate interests regarding the Projects. (For example, Gilhool signed the Restructuring Agreement on behalf of both Lehman Equity Members and the Lehman lenders.) Rather, the various Lehman entities—whether lenders or equity-holders—are acting in concert to usurp the Projects for Lehman's benefit, at the expense of other creditors and equity-holders. And this "concert" is now being orchestrated by a single conductor, Alvarez & Marsal ("A & M"), who is in effect the new principal, controller and decision-maker with respect to the properties in issue herein.

115.    When Lehman went into bankruptcy, it retained A & M as its restructuring consultants. In reality, A & M has taken over the company. On information and belief—and per reports in the media—Bryan Marsal of A & M, in his capacity as Chief Restructuring Officer, is "running things now" at Lehman in place of its CEO. According to Lehman's own website, Marsal "and his management team will ensure the orderly restructuring of LBHI and its subsidiaries." The A & M employees assigned to handle restructuring of Lehman's real estate assets even have "lehman.com" e-mail addresses.

116.    A & M's control over Lehman extends beyond the bankruptcy. For example, while LBHI, LCPI and some of their affiliates are in bankruptcy, Lehman ALI, OVC, Northlake Holdings, and the Lehman Equity Members are not. Yet A & M is apparently in control of all of these non-bankrupt entities as well. When Lehman repudiated the Restructuring Agreement on November 12, 2008, it did so on behalf of LCPI and non-bankrupt Lehman ALI, OVC and Northlake Holdings in a

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**

33379.5

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    letter by Gerald Pietroforte, one of two "Key A & M Contacts" in charge of Lehman's Real Estate

2    "Asset Recovery Plan, Dispositions, and Pledged Collateral Issues." On November 18, 2008, A &

3    M's Jeff Fitts—the other "Key A & M Contact"—sent letters to the SunCal Equity Members on

4    behalf of the Lehman Equity Members instructing them not to take any action or make any decisions

5    relating the bankruptcy cases on behalf of certain of the Trustee Debtors.

6    117.    On information and belief, A & M and its asset recovery professionals involved in the

7    Lehman-SunCal projects, Messrs. Fitts and Pietroforte, do not have in-depth hands-on experience or

8    expertise in developing large-scale master-planned residential communities, as are involved here.

9    On the other hand, SunCal and its cadre of experienced land development professionals have a very

10    high level of expertise and experience based on many years and literally thousands of hours—

11    including on the Projects at issue in this case.

12    118.    Common sense and fiduciary duties require Lehman and its asset recovery

13    professionals to pursue the course of action best suited to enhancing the value of the Projects and

14    maximizing the recovery to creditors. Instead, A & M is seeking to oust SunCal and take over

15    ongoing Projects, and then trying to "re-invent the wheel," to churn fees for itself. The

16    takeover/foreclosure strategy A & M has pursued thus far will result in the worst possible outcome

17    for all concerned.

18    119.    Indeed, Lehman's lead bankruptcy attorney, Harvey Miller, is quoted in the New

19    York Times as saying that a well-managed bankruptcy should produce "a result which benefits

20    people"—including making sure that creditors are paid to the extent possible. Yet when it comes to

21    the land developments that SunCal has expertly managed for years, the A & M strategy has been—

22    and is—the polar opposite: usurp control of the Projects without leaving anything for the hundreds

23    of creditors who did work and conferred value.

24

25

26

27

28

33379.5

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

## CLAIM FOR RELIEF

**(Equitable Subordination, 11 U.S.C. §510(c) – By the Debtors In Possession against Lehman ALI and LCPI; by the Trustee on Behalf of the Trustee Debtors Against Lehman ALI and the Lehman Equity Members, and on Behalf of SunCal Oak Valley against OVC Holdings and SunCal Northlake Against Northlake Holdings)**

120.    Plaintiffs repeat and reallege each and every foregoing and subsequent allegation contained in the Complaint, and further allege as follows:

121.    Lehman ALI and/or LCPI have purported claims against the Debtors In Possession, and Lehman ALI has purported claims against each of the Trustee Debtors, as described above.

122.    Plaintiffs are informed and believe, and on that basis allege, that Lehman ALI and LCPI are affiliates of an insider of the Trustee Debtors, and thus are statutory insiders under 11 U.S.C. §101(31). LBHI has a controlling interest, directly or indirectly, in Lehman ALI and LCPI, on the one hand, and in the Lehman Equity Members, on the other, which themselves have a majority stake in the Trustee Debtors and are therefore insiders of the Trustee Debtors. Accordingly, under 11 U.S.C. §101(2), Lehman ALI and LCPI are insiders of the Debtors.

123.    Even aside from their status as statutory insiders, Lehman ALI and LCPI exerted actual control over all of the Debtors, and so are also non-statutory insiders under the law. Lehman ALI and/or LCPI and Lehman-related entities were partners with SunCal and related entities for many years. Lehman ALI and LCPI were and are Debtors' primary source of credit. At least after mid-2007, Debtors' management had to vet each expense with Lehman ALI/LCPI and get their approval before they could expend any funds to develop the Projects, and had meetings with Lehman personnel on at least a weekly basis for this purpose. Indeed, in some instances, Lehman bypassed SunCal as the ostensible Project manager and dealt with third-party contractors directly. Lehman ALI and/or LCPI also controlled decisions regarding which creditors would get paid, and engaged Radco to negotiate such payments.

124.    Lehman ALI and/or LCPI have engaged in conduct that is not only inequitable but egregious, warranting equitable subordination of their claims regardless of their insider status. This inequitable and egregious conduct, described in more detail above, includes, among others: (1)

25

33379.5

1    willfully failing to make required advances despite repeated representations that they would do so,

2    thereby preventing Plaintiffs' ability to pay creditors and develop and maintain the Projects,

3    including addressing central health and safety issues; (2) secretly transferring deeds of trust between

4    Lehman ALI to an affiliate, LCPI, mere weeks before LCPI filed for bankruptcy, for the purpose of

5    assisting Lehman in using its impending bankruptcy to impede successful reorganization of the

6    Projects; (3) Lehman ALI improperly filing notices of default on properties that were not yet in

7    bankruptcy; (4) conspiring with their Lehman parent entity, affiliated lender entities, and even equity

8    partners on the Projects to foreclose on the properties and leave hundreds of creditors in the cold for

9    tens of millions of dollars of work that Lehman induced and that was performed; and (5) squeezing

10    out SunCal despite the agreements and representations made by Lehman.

11         125.    As just one example of the numerous misrepresentations regarding payment of

12    creditors that Lehman made between at least the fall of 2007 and the weeks after Lehman filed for

13    bankruptcy in September 2008, in the Spring of 2008, Lehman agreed to pay the bills of Voss Cook

14    & Thell, LLP ("VCT"), a law firm that Lehman wanted to continue to defend various Project-related

15    litigation. Specifically, Lehman promised to pay one-half of the outstanding amount around the time

16    the Restructuring Agreement was signed (May 2008), and one-half 30 days later. When the 30 days

17    were up and VCT asked for payment, Lehman's Gilhool told SunCal's Cook to tell VCT not to

18    worry, that they would get paid. When time continued to go by and VCT complained, Gilhool did

19    pay for the time billed by VCT on its Lehman-related litigation for the month of May 2008 only, and

20    promised the rest shortly. Gilhool again told Cook: "They will be paid." They never were.

21         126.    Lehman ALI and LCPI's inequitable conduct resulted in damage not only to the

22    Debtors themselves and to the Debtors' Equity Members but to their creditors as well. Lehman ALI

23    and LCPI's course of conduct of making repeated assurances, drawing out the process, and

24    ultimately refusing to provide needed funding deepened the Debtors' insolvency, forced them into

25    bankruptcy, and diminished both the value of the Debtors' Projects and the ability of the Debtors to

26    pay their debts as they came due.

27         127.    Furthermore, Lehman ALI's and LCPI's conspiring amongst themselves and with

28    their Lehman affiliates to prevent successful reorganization of the Projects once LCPI and other

26

**SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**

33379.5

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  Lehman affiliates were in bankruptcy has harmed the prospects of a successful reorganization, or has

2  made such reorganization more difficult and costly, thereby further reducing the prospects of

3  repayment of the Debtors' creditors. The extent of this harm to creditors and others is an amount to

4  be proven at trial, but is, at a minimum, $150 million.

5       128.    To the extent that OVC Holdings and Northlake Holdings purport to have received

6  Lehman ALI's loan and liens on the Oak Valley and Northlake Projects, respectively, they hold

7  claims that are equally subject to equitable subordination, and their liens equally subject to transfer

8  to the estates. On information and belief, LBHI has a controlling interest, directly or indirectly, in

9  OVC Holdings and Northlake Holdings, on the one hand, and in the Lehman Equity Members, on

10  the other, which themselves have a majority stake in the Trustee Debtors and are therefore insiders

11  of the Trustee Debtors. Thus, OVC Holdings and Northlake Holdings are statutory insiders.

12  Moreover, as evidenced by, among other things, recent joint correspondence on behalf of Lehman

13  ALI, LCPI, OVC and Northlake Holdings, these four entities are controlled by the same people

14  within Lehman. OVC Holdings and Northlake Holdings became successors to Lehman ALI's liens

15  and loans with knowledge of the former's inequitable conduct, and as part of a conspiracy for the

16  purpose of promoting Lehman's scheme. These entities have caused harm to the creditors on the

17  Oak Valley and Northlake Projects, and are responsible for those entities' inequitable conduct as

18  well.

19       129.    The Lehman Equity Members, as insiders, have sought to block the Projects'

20  reorganizations in violation of their duties of loyalty to the Trustee Debtors. The Lehman Equity

21  Members did so in an effort to facilitate a Lehman foreclosure and to avoid payment of Plaintiffs'

22  creditors as part of the scheme. They also did nothing to try to cure the purported defaults on the

23  Projects and failed to provide promised funding. Their actions have harmed the creditors of the

24  Trustee Debtors. As such, their interests should be subordinated to those of other equity members.

25       130.    By reason of the foregoing, Plaintiffs are entitled to equitably subordinate: (1)

26  Lehman ALI's, LCPI's, OVC Holdings', and Northlake Holdings' secured claims to the claims of

27  unsecured creditors; and (2) the interest of the Lehman Equity Members to the interests of other

28  equity holders. The value of the claims to be equitably subordinated will be proven at trial, but is no

27

1  less than $150 million.  Equitable subordination under the circumstances will achieve a result that is

2  consistent with the purposes of the Bankruptcy Code.

3

4                          **PRAYER FOR RELIEF**

5          **WHEREFORE**, Plaintiffs pray that this Court enter a judgment against Defendants as

6  follows:

7          1.        For equitable subordination to the unsecured creditors of all claims held by the

8  Defendants, equitable subordination to other equity holders of all interests held by the Defendants,

9  and for the preservation of any liens held by the Defendants for the benefit of, and transfer to, the

10  Debtors' estates; and

11          2.        For such other and further relief as this Court may, in its discretion, deem just and

12  proper, including, without limitation, attorneys' fees, costs and interest, as appropriate.

13

14  Dated: March 11, 2009              **MILLER BARONDESS LLP**

15

16                                      By: _____

17                                          Louis R. Miller
                                            [Proposed] Special Litigation Counsel for
18                                          the Jointly Administered Debtors in
                                            Possession and Steven M. Speier, the
19                                          Chapter 11 Trustee

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

33379.5                    **SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT**