# Exhibit “K”

PAUL J. COUCHOT - State Bar No. 131934
PETER W. LIANIDES - State Bar No. 160517
PAYAM KHODADADI - State Bar No. 239906
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
pcouchot@winthropcouchot.com
plianides@winthropcouchot.com
pkhodadadi@winthropcouchot.com
Telephone: (949) 720-4165
Facsimile: (949) 720-4111
General Insolvency Counsel for Administratively Consolidated Debtors-in-Possession and Counsel for SCC Acquisitions, Inc.

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,<br>Jointly Administered Debtors and Debtors-in-Possession | Case No. 8:08-bk-17206-ES<br><br>Jointly Administered With Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574 ES; 8:08-bk-17575-ES; 8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES; 8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES; 8:08-bk-17470-ES; 8:08-bk-17472-ES; and 8:08-bk-17588-ES<br><br>Chapter 11 Proceedings<br><br>**DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN**<br><br>Date: October 15, 2009<br>Time: 10:00 a.m.<br>Place: Courtroom 5A |
| Affects:<br>☒ All Debtors<br>☐ Palmdale Hills Property,<br>☐ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale,<br>☐ SunCal Johannson Ranch, LLC<br>☐ SunCal Summit Valley, LLC<br>☐ SunCal Emerald Meadows LLC<br>☐ SunCal Bickford Ranch, LLC<br>☐ Acton Estates, LLC<br>☐ Seven Brothers LLC<br>☐ SJD Partners, Ltd.<br>☐ SJD Development Corp.<br>☐ Kirby Estates, LLC<br>☐ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC<br>☐ SCC Communities LLC<br>☐ North Orange Del Rio Land, LLC<br>☐ Tesoro SF LLC<br>*Caption Continued on Next Page* | |

*Continued from Previous Page*

- ☐ LBL-SunCal Oak Valley, LLC
- ☐ SunCal Heartland, LLC
- ☐ LBL-SunCal Northlake, LLC
- ☐ SunCal Marblehead, LLC
- ☐ SunCal Century City, LLC
- ☐ SunCal PSV, LLC
- ☐ Delta Coves Venture, LLC
- ☐ SunCal Torrance, LLC
- ☐ SunCal Oak Knoll, LLC

**TABLE OF CONTENTS**

| | | PAGE |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | DEFINITIONS AND RULES OF INTERPRETATION | 3 |
| | 2.1 Definitions | 3 |
| | 2.2 Rules of Construction | 25 |
| III. | TREATMENT OF UNCLASSIFIED CLAIMS | 26 |
| | 3.1 Treatment of Allowed Administrative Claims | 26 |
| | (a) Treatment and Repayment of Lehman's Administrative Loan(s) | 26 |
| | (b) Repayment of Allowed Administrative Claims Other than Repayment of the Lehman Administrative Loans | 27 |
| | (c) Administrative Claims Bar Date | 27 |
| | (i) General Administrative Claims Bar Date | 27 |
| | (ii) Administrative Tax Claims Bar Date | 28 |
| | 3.2 Treatment of Priority Unsecured Tax Claims | 28 |
| IV. | CLASSIFICATION OF CLAIMS AND INTERESTS | 29 |
| V. | THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS | 47 |
| | 5.1 This Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims on Real Properties Subject to Deeds of Trust Arising from Lehman's Disputed Secured Claims and Disputed Liens (Classes 1.1 Through 1.14) | 47 |
| | 5.2 This Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims Against Real Properties Not Subject to Deeds of Trust Arising from Lehman Disputed Claims (Classes 2.1 Through 2.5) | 48 |
| | 5.3 This Plan's Treatment of Lehman Disputed Secured Claim(s) and Disputed Lien(s) (Classes 3.1 Through 3.14) | 48 |
| | 5.4 This Plan's Treatment of Holders of Secured Claims of Primary Secured Creditors Other than the Holders of Lehman's Disputed Claims (Classes 4.1 Through 4.15) | 49 |
| | 5.5 This Plan's Treatment of Holders of Asserted Mechanic Lien Claims Against the Debtors' Projects Subject to Lehman's Disputed Claims (Classes 5.1 Through 5.55) | 50 |
| | 5.6 This Plan's Treatment of Asserted Mechanic Lien Claim Against Projects Not Subject to Lehman's Disputed Claims (Class 6.1) | 51 |
| | 5.7 This Plan's Treatment of Holders of Priority Claims (Classes 7.1 Through 7.4) | 51 |

**TABLE OF CONTENTS**

**(Continued)**

**PAGE**


5.8 This Plan's Treatment of Holders of Allowed General Unsecured Claims Against Debtors with Assets that Are Not Subject to the Lehman's Disputed Claims and Disputed Liens (Classes 8.1 through 8.5) (SunCal Beaumont, SunCal Johannson, Seven Brothers and Kirby Estates) ........ 51
5.9 This Plan's Treatment of Holders of General Unsecured Claims that Become the Beneficiary of any Equitable Subordination Judgment Against Lehman's Disputed Claims and Disputed Liens (Classes 9.1 through 9.20) ........ 52
5.10 This Plan's Treatment of Holders of Allowed General Unsecured Claims that Do Not Become the Beneficiary an Equitable Subordination Judgment Against Lehman's Disputed Claims (Classes 10.1 through 10.20) ........ 52
5.11 This Plan's Treatment of Holders of Allowed Interests ........ 53

VI. ACCEPTANCE OR REJECTION OF THE PLAN ........ 53
6.1 Introduction ........ 53
6.2 Who May Object to Confirmation of this Plan ........ 54
6.3 Who May Vote to Accept/Reject this Plan ........ 54
6.4 What Is an Allowed Claim/Interest ........ 54
6.5 What Is an Impaired Class ........ 54
6.6 Who Is Not Entitled to Vote ........ 54
6.7 Who Can Vote in More than One Class ........ 55
6.8 Votes Necessary for a Class to Accept this Plan ........ 55
6.9 Treatment of Nonaccepting Classes ........ 55
6.10 Request for Confirmation Despite Nonacceptance by Impaired Class(es) ........ 56

VII. MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN ........ 56
7.1 Introduction ........ 56
7.2 The Plan Sponsor ........ 56
7.3 Acquisitions' Funding Obligations Pursuant to the Acquisitions Administrative Loan ........ 56
7.4 Transfer of the Debtors' Assets to the Plan Trust and Removal of the Chapter 11 Trustee ........ 56
7.5 Management of the Plan Trust Assets After Effective Date ........ 57
7.6 The Committee(s) ........ 57
(a) Duties and Powers ........ 57
(b) Dissolution of the Committee(s) ........ 57
7.7 Litigation Claims ........ 57
7.8 Collection of Litigation Recoveries ........ 58
7.9 Payment of Post-Confirmation Expenses ........ 58

**TABLE OF CONTENTS**

**(Continued)**

| | | | PAGE |
|---|---|---|---|
| VIII. | DISTRIBUTIONS | | 58 |
| | 8.1 | Distribution Agent | 58 |
| | 8.2 | Distributions | 59 |
| | | (a) Dates of Distributions | 59 |
| | | (b) Limitation on Liability | 59 |
| | 8.3 | Old Instruments and Securities | 59 |
| | | (a) Surrender and Cancellation of Instruments and Securities | 59 |
| | | (b) Cancellation of Liens | 59 |
| | 8.4 | De Minimis Distributions and Fractional Shares | 60 |
| | 8.5 | Delivery of Distributions | 60 |
| | 8.6 | Undeliverable Distributions | 60 |
| | 8.7 | Disposition of Unclaimed Property | 61 |
| IX. | OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS | | 61 |
| | 9.1 | Standing for Objections to Claims | 61 |
| | 9.2 | Treatment of Disputed Claims and Disputed Liens | 61 |
| | | (a) No Distribution Pending Allowance | 61 |
| | | (b) Distribution After Allowance | 62 |
| X. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 62 |
| | 10.1 | Executory Contracts Being Assumed | 62 |
| | 10.2 | Executory Contracts Being Rejected | 62 |
| | 10.3 | Bar Date for Rejection Damages | 62 |
| | 10.4 | Changes in Rates Subject to Regulatory Commission Approval | 62 |
| XI. | LIMITATION OF LIABILITY | | 63 |
| | 11.1 | No Liability for Solicitation or Participation | 63 |
| | 11.2 | Limitation of Liability | 63 |
| XII. | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF PLAN | | 64 |
| | 12.1 | Conditions Precedent to Plan Confirmation | 64 |
| | 12.2 | Conditions Precedent to Plan Effectiveness | 64 |
| XIII. | RETENTION OF JURISDICTION | | 64 |
| XIV. | MODIFICATION OR WITHDRAWAL OF PLAN | | 64 |
| | 14.1 | Modification of Plan | 64 |
| | 14.2 | Nonconsensual Confirmation | 64 |

**TABLE OF CONTENTS**

**(Continued)**

| | | PAGE |
|---|---|---|
| XV. | MISCELLANEOUS | 65 |
| 15.1 | Payment of Statutory Fees | 65 |
| 15.2 | Payment Dates | 65 |
| 15.3 | Headings | 65 |
| 15.4 | Other Documents and Actions | 65 |
| 15.5 | Notices | 65 |
| 15.6 | Governing Law | 66 |
| 15.7 | Binding Effect | 66 |
| 15.8 | Successors and Assigns | 66 |
| 15.9 | Severability of Plan Provisions | 66 |
| 15.10 | No Waiver | 67 |
| 15.11 | Inconsistencies | 67 |
| 15.12 | Exemption from Certain Transfer Taxes and Recording Fees | 67 |
| 15.13 | Post-Confirmation Status Report | 68 |
| 15.14 | Post-Confirmation Conversion/Dismissal | 68 |
| 15.15 | Final Decree | 68 |

# I.

## INTRODUCTION

This *Debtors' Third Amended Joint Chapter 11 Plan of Reorganization* (the "Plan")[1] is filed by the Plan Proponents, the Voluntary Debtors and Acquisitions on behalf of the Debtors. The Debtors are all Affiliates of each other, Acquisitions, and SCC LLC.

The Voluntary Debtors are the Plan Proponents in each of their respective Chapter 11 Cases and Acquisitions is the Plan Proponent in the Trustee Debtors' Chapter 11 Cases. Acquisitions is also the Plan Sponsor, the Plan Trustee and the Distribution Agent for all of the Debtors.

This Plan provides for the sale and liquidation of the Debtors' Assets, the prosecution and liquidation of the Debtors' Litigation Claims, and the distribution of the Net Sale Proceeds, Net Litigation Recoveries and Available Cash to the Holders of Allowed Claims against the Debtors in accordance with the priorities and other rights set forth in the Bankruptcy Code and the resolution of the Litigation Claims.

Sent to you in the same envelope as this document is the Debtors' Third Amended Joint Disclosure Statement Describing the Debtors' Third Amended Joint Chapter 11 Plan (the "Disclosure Statement"). The Disclosure Statement has been approved by the Court. It is being provided along with this Plan in order to provide you with critical information about the Debtors and to help you understand this Plan. The Disclosure Statement discusses the Debtors' history, businesses, properties, and results of operations and contains a summary and discussion of this Plan. Holders of Claims and Interests and parties to executory contracts and unexpired leases are encouraged to read the Disclosure Statement. No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith and approved for solicitation purposes by the Court, have been authorized for use in soliciting acceptances or rejections of this Plan.

///

[1] All capitalized terms are defined terms set forth in Article II of this Plan.

# II.

## DEFINITIONS AND RULES OF INTERPRETATION

**2.1** **Definitions.** The following defined terms are used in this Plan. Any capitalized term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

2.1.1 10,000 Santa Monica Project. The Project owned by SunCal Century City, located in Century City, California, as more particularly described herein.

2.1.2 Acquisitions. SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a purported obligor on the Bond Claims, a Creditor of all of the Debtors, a Plan Proponent for the Trustee Debtors, the Plan Sponsor, and the proposed Plan Trustee.

2.1.3 Acquisitions Administrative Loan. The Allowed Administrative Claim of Acquisitions, or of such Affiliate that provides such funding, equal to all amounts caused to be funded by Acquisitions or such Affiliate in connection with the Debtors' Chapter 11 Cases and the consummation of this Plan.

2.1.4 Acton Estates. Acton Estates, LLC, a Delaware limited liability, a Voluntary Debtor herein, and the owner of the Acton Project.

2.1.5 Acton Project. The Project owned by Acton Estates, located in Los Angeles County, California, as more particularly described herein.

2.1.6 Administrative Claim(s). Any Claim incurred after the Petition Date but before the Confirmation Dates for any cost or expense of administration of the Cases allowable under Section 330, 331, 503(b), or 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary post-petition expenses of preserving the Estates of the Debtors, any actual and necessary post-petition expenses of operating the business of the Debtors in Possession, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under Section 330, 331, or 503 of the Bankruptcy Code and any fees or charges assessed against the Estates of the Debtors under Section 1930 of title 28 of the United States Code.

2.1.7 Administrative Claims Bar Date. The last date fixed by this Plan for the filing of Proof of Claims or requests for payment of Administrative Claims. Under this Plan, the Administrative Claims Bar Date shall be the first business day after the sixtieth (60th) day after the Confirmation Date.

2.1.8 Affiliate. The term shall have the meaning set forth under Section 101(2), including, but not limited to, as to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other equity ownership interest, by contract or otherwise.

2.1.9 Allowed. When used to describe Claim(s) or Interest(s), such Claim(s) or Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

2.1.10 Allowed Amount shall mean:

i. With respect to any Administrative Claim (i) if the Claim is based upon a Fee Application, the amount of such Fee Application that has been approved by a Final Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation incurred in the ordinary course of business of the Debtors and is not otherwise subject to an Administrative Claim Bar Date, the amount of such Claim that has been agreed to by the Debtors and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date, (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court. The Allowed Amount of any Administrative Claim which is subject to an

Administrative Claims Bar Date and not filed by the applicable Administrative Claims Bar Date shall be zero, and no distribution shall be made on account of any such Administrative Claim;

ii. with respect to any Claim which is not an Administrative Claim (the "Other Claim"): (i) if the Holder of such Other Claim did not file proof thereof with the Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the Debtors'' Schedules as neither disputed, contingent or unliquidated; or (ii) if the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court. The Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not listed on the Debtors' Schedules or is listed as disputed, unliquidated, contingent or unknown, and is not allowed under the terms of this Plan shall be zero, and no distribution shall be made on account of any such Claim; and

iii. with respect to any Interest, (i) the amount provided by or established in the records of the Debtors at the Confirmation Date, provided, however, that a timely filed proof of Interest shall supersede any listing of such Interest on the records of the Debtors; or (ii) the amount stated in a proof of Interest Filed prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed by a Final Order of the Bankruptcy Court.

2.1.11 Allowed Claim. Except as otherwise provided in this Plan (including with respect to those Classes for which the amount of the Allowed Claims is specified by this Plan), a Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

2.1.12 Allowed Interest. Any Interest to the extent, and only to the extent, of the Allowed Amount of such Interest.

2.1.13 Allowed Secured Claims. An asserted Secured Claim that is not either a Disputed Claim or a Disputed Lien.

2.1.14 Assets. All assets that are property of the Debtor(s) pursuant to Bankruptcy Code Section 541.

2.1.15 Arch. Arch Insurance Company, a Bond Issuer.

2.1.16 Available Cash. The Cash deposited into the Distribution Account(s) on or after the Effective Date that is available for making Distributions under this Plan to Holders of Allowed Administrative, Priority, and General Unsecured Claims.

2.1.17 Avoidance Actions. All Claims and defenses to Claims accruing to the Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541, 544, 545, 547, 548, 549, 550, or 551.

2.1.18 Bankruptcy Code. The Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as applicable to the Cases.

2.1.19 Bankruptcy Court. The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the reference made pursuant to Section 157 of title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in lieu thereof.

2.1.20 Bankruptcy Rules. Collectively, as now in effect or hereafter amended and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

2.1.21 Beaumont Heights Project. The Project owned by SunCal Beaumont, located in the City of Beaumont, California, as more particularly described herein.

2.1.22 Bickford Ranch Project. The Project owned by SunCal Bickford, located in the City of Penryn, California, as more particularly described herein.

2.1.23 Bickford Second Loan Agreement. That certain promissory note secured by a deed of trust, dated as of May 25, 2005, in the maximum aggregate principal amount of

approximately $30,000,000 executed by SunCal Bickford, as borrower, and payable to the order of Lehman ALI. The Bickford Second Lien Loan Agreement is allegedly secured by a second priority deed of trust on the Bickford Ranch Project. The Bickford Second Loan Agreement has an asserted balance due of $56,494,059.38 as of March 30, 2009.

2.1.24 Bond Claim(s). Any Claim against the Debtor(s) and a Bond Issuer under various payment or performance bonds, and/or any claims of Bond Issuer(s) against the Debtor(s) under various payment or performance bonds.

2.1.25 Bond Claimant. Holder(s) of a Bond Claim.

2.1.26 Bond Issuer(s). Bond Safeguard, Lexon and Arch in their capacities as issuers and sureties for payment and performance bonds for the benefit of certain of the Debtors.

2.1.27 Bond Safeguard. Bond Safeguard Insurance Company, a Bond Issuer.

2.1.28 Business Day. Any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

2.1.29 Cases. The Chapter 11 cases of the Debtors pending before the Bankruptcy Court.

2.1.30 Cash. Currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

2.1.31 CFD Bonds. Community facilities district bonds issued by a governmental entity.

2.1.32 Chapter 11 Trustee. Steven M. Speier, the duly appointed trustee of the Trustee Debtors in their pending Chapter 11 Cases.

2.1.33 Claim. This term shall have the broadest possible meaning under Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right

of payment from any of the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.1.34 Claims Bar Date. For any Claim other than an Administrative Claim, March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to file Proof of Claims with the Bankruptcy Court in all of the Debtors' cases.

2.1.35 Claims Objection Deadline. The later of (i) the first business day following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between the Plan Trustee and the Holder of the Claim.

2.1.36 Class. Each group of Claims or Interests classified in Article V of this Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

2.1.37 Committees. Collectively, the Voluntary Debtors' Committee and the Trustee Debtors' Committee, both before and after the Confirmation Date.

2.1.38 Confirmation Date. The date on which the Confirmation Order is entered in the Bankruptcy Court's docket.

2.1.39 Confirmation Order. The order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.1.40 Creditor. Any Person who is the Holder of a Claim against any Debtor that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise become due, owing, and payable on or before the Petition Date, including, without limitation, Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.1.41 Danske Bank. Danske Bank A/S London Branch, a Lehman Successor in their asserted capacity as the Holder of Lehman's Disputed Claim and Disputed Liens arising from the SunCal Century City Loan Agreement.

2.1.42 Debtor(s). Individually or collectively, the Voluntary Debtors and the Trustee Debtors. In the event that the Court orders substantive consolidation of two or more Debtor's Estates, then the term "Debtor" shall refer to the consolidated Debtor under this Plan.

2.1.43 Debtor(s)-in-Possession. The Voluntary Debtor(s) when acting in their capacity as representatives of their respective Estates in their respective Chapter 11 Cases.

2.1.44 Del Amo Project. The Project owned by SunCal Torrance, located in the City of Torrance, California, as more particularly described herein.

2.1.45 Del Rio. North Orange Del Rio Land, LLC, a limited liability company, a Voluntary Debtor herein, and the owner of the Del Rio CFD Bond Proceeds.

2.1.46 Del Rio CFD Bond Proceeds. Certain net proceeds of CFD Bonds that may be issued by the City of Orange.

2.1.47 Delta Coves. Delta Coves Ventures, LLC, a limited liability company, a Trustee Debtor herein, and the owner of the Delta Coves Project.

2.1.48 Delta Coves Loan Agreement. That certain Amended and Restated Loan Agreement, dated as of April 20, 2007, by and between Delta Coves, as borrower, and Lehman ALI, lender, pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of approximately $236 million. The Delta Coves Loan Agreement is allegedly secured by a first-priority deed of trust on the Delta Coves Project. The Delta Coves Loan Agreement has an asserted balance due of $206,023,142.48 as of March 30, 2009.

2.1.49 Delta Coves Project. The Project owned by Delta Coves, located in Bethel Island located in Contra Costa County, California, as more particularly described herein.

2.1.50 Disclosure Statement. This Debtors' Third Amended Joint Disclosure Statement Describing the Debtors' Third Amended Joint Chapter 11 Plan.

2.1.51 Disputed Claim(s). All or any part of a Claim other than any Allowed Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount, (ii) the Claim is the subject of (a) a Litigation Claim; (b) the Claim is subject to offset by a Litigation Claim; (c) a timely objection that has not been resolved by a Final Order; or (d) a request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court, or this Plan which is Filed on or before the Claims

Objection Deadline, which Adversary Proceeding, objection, or request for estimation has not been dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a "Disputed Claim" pursuant to this Plan.

2.1.52 Disputed Lien(s). An asserted lien(s) against Assets of the Debtor(s) that is either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action, or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).

2.1.53 Distribution(s). Payments to Holders of Allowed Claims provided for under this Plan.

2.1.54 Distribution Agent. The entity that is responsible for making Distributions under this Plan, which shall be Acquisitions.

2.1.55 Distribution Account(s). Separate account(s) to be established by the Plan Trustee at an FDIC insured bank into which each Debtors' Available Cash shall be deposited and all Available Cash received by the Plan Trust after the Confirmation Date that would have belonged to such Debtor shall be deposited, other than Net Sales Proceeds that are subject to Disputed Claims and Disputed Liens. In the event that the Court orders substantive consolidation of two or more of the Debtors, then there will be only one Distribution Account for such Debtors, as consolidated.

2.1.56 Distribution Date. With respect to any Allowed Claim or Allowed Interest, the date on which a Distribution is required to be made under this Plan.

2.1.57 Effective Date. A date selected by the Plan Trustee, but in no event later than the sixtieth (60th) day after the Confirmation Date.

2.1.58 Elieff. Bruce Elieff, the president of Acquisitions, a purported obligor on the Bond Claims with corresponding indemnity Claims against the Debtors.

2.1.59 Emerald Meadows Project. The Project owned by SunCal Emerald, located in the City of Rubidoux, California, as more particularly described herein.

2.1.60 Estates. The bankruptcy estates of the Debtors created pursuant to Section 541 of the Bankruptcy Code.

2.1.61 Fee Applications. Applications of Professional Persons under Sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Cases.

2.1.62 Fenway Capital. Fenway Capital Funding LLC, a Lehman Successor to Lehman's Disputed Claims and Lehman's Disputed Liens arising from (i) SunCal Communities I Loan Agreement, (ii) Ritter Ranch Loan Agreement, (iii) Bickford Second Loan Agreement, (iv) SunCal PSV Loan Agreement, (v) SunCal Marblehead/SunCal Heartland Loan Agreement, (vi) Delta Coves Loan Agreement (vii) SunCal Northlake Loan Agreement, and (viii) SunCal Oak Valley Loan Agreement.

2.1.63 Filed. Delivered to, received by and entered upon the legal docket by the Clerk of the Bankruptcy Court. "File" shall have a correlative meaning.

2.1.64 Final Order. A judgment, order, ruling or other decree issued and entered by the Bankruptcy Court.

2.1.65 General Unsecured Claim. A Claim against a Debtor that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority Claim.

2.1.66 Heartland Project. The Project being developed by SunCal Heartland, located in Riverside County, California, as more particularly described herein.

2.1.67 Holder. The beneficial owner of any Claim or Interest.

2.1.68 Insider. The term shall have the broadest meaning possible under Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and Insiders of such Affiliates.

2.1.69 Interest. Any equity security interest in any Debtor within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership interest in any of the Debtors, whether in the form of common or preferred stock, stock options, warrants, partnership interests, or membership interests.

2.1.70 Interim Loan Agreement. That certain Loan Agreement, dated as of October 31, 2007, by and between SCC LLC, as borrower and Lehman ALI, as lender, pursuant to which Lehman ALI made a loan in the maximum aggregate amount of approximately $20 million.

The Interim Loan Agreement has an alleged balance due of $23,795,012.59 as of March 30, 2009. The alleged obligation under the Interim Loan Agreement is allegedly secured by (a) an alleged first-priority deed of trust on the Joshua Ridge Project; (b) an alleged first-priority deed of trust on the Tesoro Project; and (c) an alleged first-priority lien on the Del Rio CFD Bond Proceeds.

2.1.71 Johannson Ranch Project. The Project owned by SunCal Johannson, located in the City of Modesto, California, as more particularly described herein.

2.1.72 Joshua Ridge Project. The Project owned by SCC Communities, located in the City of Victorville, California, as more particularly described herein.

2.1.73 Kirby Estates. Kirby Estates, LLC, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of a portion of the Summit Valley Project not owned by SunCal Summit Valley and Seven Brothers.

2.1.74 Legal Rate. The rate of interest payable on judgments obtained in the United States District Courts as set forth in 28 U.S.C. § 1961. The rate applicable under this Plan is 1.44% per annum, representing the applicable rate on November 6, 2008.

2.1.75 Lehman Adversary Proceeding. The Debtors' pending adversary proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of action including equitable subordination, fraudulent conveyances, preferential transfers and lien avoidance.

2.1.76 Lehman ALI. Lehman ALI, Inc.

2.1.77 Lehman Administrative Loans. The post-petition financing provided by Lehman ALI to Palmdale Hills, SunCal Emerald, SunCal Bickford, Acton Estates, SunCal Oak Valley, SunCal Heartland, SunCal Northlake, SunCal Marblehead, SunCal Century City, SunCal PSV, Delta Coves, and SunCal Oak Knoll, which grants priming liens on all borrower Debtors' assets (with the exception of SunCal Century City in which the liens are junior priority), and provides for super-priority administrative status to Lehman ALI and modifies the automatic stay to the extent necessary to implement the financing. The aggregate amount of the Lehman Administrative Loans to all of the borrower Debtors is $1,790,572.

2.1.78 Lehman Commercial. Lehman Commercial Paper, Inc.

2.1.79 Lehman Entities. The Lehman Lenders, the Lehman Equity Members and LBHI.

2.1.80 Lehman Equity Members. Lehman Entities that owned direct or indirect membership Interests in one or more of the Trustee Debtors.

2.1.81 Lehman Lenders. Lehman ALI, Lehman Commercial, Northlake Holdings, and OVC Holdings.

2.1.82 Lehman Loans. Collectively the following loans that are the purported basis for the Lehman's Disputed Claims: (a) SunCal Communities I Loan Agreement; (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC Palmdale Loan; (e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan Agreement; (g) SunCal Century City Loan Agreement; (h) SunCal PSV Loan Agreement; (i) SunCal Delta Coves Loan Agreement; (j) SunCal Marblehead/SunCal Heartland Loan Agreement; (k) Sun Cal Oak Valley Loan Agreement; (l) SunCal Northlake Loan Agreement; (m) Pacific Point First Loan Agreement; and (n) Pacific Point Second Loan Agreement.

2.1.83 Lehman Re. Lehman Re LTD., an Affiliate of the Lehman Entities and a Lehman Successor to Lehman's Disputed Claim and Disputed Liens arising from the Pacific Point First Loan Agreement.

2.1.84 Lehman Successor(s). Entities other than the Lehman Lenders that either assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

2.1.85 Lehman's Disputed Claim(s). All of the Proofs of Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases arising from the Lehman Loans.

2.1.86 Lehman's Disputed Lien(s). All of the alleged liens relating to Proofs of Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's Chapter 11 Cases arising form the Lehman Loans.

2.1.87 Lexon. Lexon Insurance Co.

2.1.88 Litigation Claims. Any and all interests of the Debtors in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens, rights, or causes of action which have been or may be commenced by the Debtor(s), the Chapter 11 Trustee, or the Committee(s), as the case may be, including, but not limited to, any (i) Avoidance Actions; (ii) for turnover of property to the Debtors' Estates and/or the Plan Trust; (iii) for the recovery of property or payment of money that belongs to the Debtors' Estates or the Plan Trust; (iv) the right to compensation in the form of damages, recoupment or setoff of the Debtors' Estates and/or the Plan Trust; (v) the Lehman Adversary Proceeding; and (vi) any and all other Claims against Lehman's Disputed Claims and/or Disputed Liens referenced in this Plan or the Disclosure Statement.

2.1.89 Litigation Recoveries. Any Cash or other property received by the Chapter 11 Trustee, the Debtors, the Committees and/or this Plan Trust, as the case may be, from all or any portion of a Litigation Claim(s), including, but not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by way of settlement, execution on judgment or otherwise.

2.1.90 LV Pacific Point. LV Pacific Point, LLC, a Delaware limited liability company, a Lehman Entity that is the disputed owner of the Pacific Point Project.

2.1.91 Marblehead Project. The Project owned by SunCal Marblehead, located in the City of San Clemente, California, as more particularly described herein.

2.1.92 Maximum Distributions. A Distribution to a Holder of an Allowed General Unsecured Claim against a Debtor equal to one hundred percent (100%) of the amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal Rate from and as of the applicable Debtor's Petition Date.

2.1.93 Mechanic Lien Claims. Mechanic Lien Claims arising pursuant to California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise allegedly satisfy the requirements of Bankruptcy Code 546(b).

2.1.94 Net Litigation Recoveries. Litigation Recoveries less associated Administrative Claims and Post-Confirmation Expenses incurred in connection with such Litigation Recoveries.

2.1.95 Net Sales Proceeds. The Cash generated from the sale(s) or liquidation of the Debtor(s)' Assets or the Plan Trust's Assets, less payment of selling expenses, taxes, Chapter 11 Trustee fees, and any associated Post-Confirmation Expenses and Administrative Claims incurred in furtherance of such sales or liquidation of such Assets.

2.1.96 Net Sales Proceeds Account(s). Separate account(s) to be established by the Plan Trustee at an FDIC insured bank into which all Net Sale Proceeds shall be deposited from the sale of Assets that were allegedly encumbered by a Disputed Secured Claim(s) and/or a Disputed Lien(s). Regardless of whether the Court orders substantive consolidation of two or more of the Debtors' Estates, there shall be separate Net Sales Proceeds Accounts for Net Sale Proceeds allegedly subject to Disputed Secured Claim(s) and/or Disputed Lien(s). The Disputed Secured Claim(s) and/or Disputed Lien(s) shall attach to the corresponding Net Sales Proceeds Account(s) pending any Final Order(s) of the Bankruptcy Court resolving the applicable Disputed Secured Claim(s) and/or applicable Disputed Lien(s). To the extent that a particular Disputed Claim is disallowed or subordinated and/or a particular Disputed Lien is avoided or otherwise invalidated, such Net Sales Proceeds allegedly subject thereto shall become Available Cash and shall be transferred to the applicable Distribution Account(s).

2.1.97 Northlake Holdings. Northlake Holdings LLC, a California limited liability company, that is a Lehman Lender and the asserted Holder of the beneficial interest in the Disputed Secured Claim against the Northlake Project.

2.1.98 Northlake Project. The Project owned by SunCal Northlake, located in the City of Castaic California, as more particularly described herein.

2.1.99 Oak Knoll Project. The Project owned by SunCal Oak Knoll, located in the City of Oakland, California, as more particularly described herein.

2.1.100 Oak Valley Project. The Project owned by SunCal Oak Valley, located in Riverside County, California, as more particularly described herein.

2.1.101 Orders for Relief Date. The following are dates that orders for relief were entered for each of the Trustee Debtors:

| | |
|---|---|
| SunCal Oak Valley | January 6, 2009 |
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

2.1.102 OVC Holdings. OVC Holdings LLC, a California limited liability company, that is a Lehman Lender and the asserted Holder of the beneficial interest in the Disputed Secured Claim against the Oak Valley Project.

2.1.103 Pacific Point First Loan Agreement. That certain loan agreement, dated February 16, 2006, by and among Lehman ALI, SJD Development and SJD Partners, pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of approximately $125,000,000. The Pacific Point First Loan Agreement is allegedly secured by a first-priority deed of trust on the Pacific Point Project. The Pacific Point First Loan Agreement had an asserted balance due of $120,110,237 as of March 30, 2009.

2.1.104 Pacific Point Second Loan Agreement. That certain loan agreement, dated May 1997, by and between Lehman ALI and SJD Partners, pursuant to which Lehman ALI initially made a loan in the maximum aggregate principal amount of approximately $20,000,000. The Pacific Point Second Loan Agreement was secured by a second-priority deed of trust on the Pacific Point Project, which was foreclosed upon on August 28, 2008 by LV Pacific Point, as assignee of Lehman ALI.

2.1.105 Pacific Point Project. The Project formerly owned by SJD Partners, which was non-judicially foreclosed upon on August 28, 2008, by LV Pacific Point, as assignee of Lehman ALI. The Pacific Point Project is a 200 plus acre development overlooking the Pacific Ocean in San Juan Capistrano, California.

2.1.106 Palmdale Hills. Palmdale Hills Property, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of the Ritter Ranch Project

2.1.107 Palmdale Hills CFD Bonds. Certain CFD bonds issued by the City of Palmdale, in the amount of approximately $33 million that are owned by Palmdale Hills.

2.1.108 Palm Springs Village Project. The Project owned by SunCal PSV, located in the City of Palm Springs, California, as more particularly described herein.

2.1.109 Person. An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, committee or other entity of whatever nature.

2.1.110 Petition Dates. The following are dates that each of the Voluntary Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions against the Trustee Debtors:

| | |
|---|---|
| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.111 Plan. The Debtors' Third Amended Joint Chapter 11 Plan, together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with this Plan.

2.1.112 Plan Proponent(s). The parties-in-interest that are proposing this Plan. In the case of the Voluntary Debtors, each Voluntary Debtor is their own Plan Proponent. In the case of the Trustee Debtors, Acquisitions is the Plan Proponent.

2.1.113 Plan Sponsor. The entity that has committed to cause the funding of certain specified obligations under this Plan on or after the Effective Date. The Plan Sponsor is Acquisitions.

2.1.114 Plan Trust. A trust to be established as of the Effective Date, with Acquisitions as the Plan Trustee and the Holders of Allowed Claims against the Debtors as the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtors' Assets and to otherwise consummate this Plan.

2.1.115 Plan Trustee. Acquisitions, as the Plan Trustee, under the Plan Trust.

2.1.116 Post-Confirmation Expenses. The fees and expenses incurred by the Plan Sponsor, the Plan Trustee and the Committee(s) and their professionals following the Confirmation Date (including the fees and costs of Professionals) for the purpose of (i) prosecuting and liquidating the Litigation Claims; (ii) objecting to and resolving Disputed Claims and Disputed Liens; (iii) selling or otherwise liquidating the Plan Trust's Assets; (iv) effectuating Distributions under this Plan; and (v) otherwise consummating this Plan and closing the Debtors' Chapter 11 Cases.

2.1.117 Priority Claim. Any Claim, other than an Administrative Claim or a Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

2.1.118 Pro Rata. Proportionately, so that with respect to any distribution in respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

2.1.119 Professional. A Person or Entity (a) employed by the Debtors, the Committees pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date,

pursuant to Sections 327, 328, 3291 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code.

2.1.120 Professional Fees. All Allowed Claims for compensation and for reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

2.1.121 Projects. The Debtors' residential real estate development projects as separately defined herein and described in Exhibit "1" to the Disclosure Statement.

2.1.122 Ritter Ranch Loan Agreement. That certain Credit Agreement, dated as of February 8, 2007, by and among Palmdale Hills, as borrower, Lehman Commercial, as administrative agent and lender, pursuant to which Lehman Commercial made a loan in the maximum aggregate principal amount of approximately $264,000,000. The Ritter Ranch Loan Agreement is allegedly secured by a first-priority deed of trust on all real and personal property owned by Palmdale Hills. The Ritter Ranch Loan Agreement has an asserted balance due of $287,252,096.31 as of March 30, 2009.

2.1.123 Ritter Ranch Project. The Project owned by Palmdale Hills, located in the City of Palmdale, California, as more particularly described herein.

2.1.124 Sales Period. The Sales Period is the time period that the Plan Trustee is provided under the Plan to consummate a sale or liquidation of the Plan Trust's Assets subject to the Lehman Disputed Claims(s) and/or the Lehman Disputed Lien(s). The Sales Period shall commence on the Effective Date and shall expire on the first calendar date after the one hundred and eightieth (180th) day following the date that the Bankruptcy Court enters a Final Order(s) resolving all of the Lehman's Disputed Claim(s) and/or the Lehman Disputed Lien(s) against the applicable Plan Trust's Assets. To the extent that the Plan Trust is stayed for any reason from selling and/or liquidating such Assets, then the Sales Period for the Plan Trust shall be tolled for a time period equal to the duration of such stay.

2.1.125 SCC Communities. SCC Communities, LLC, a limited liability company, a Voluntary Debtor herein, and the owner of the Joshua Ridge Project.

2.1.126 SCC LLC. SCC Acquisitions LLC, a limited liability company, a subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

2.1.127 SCC Palmdale. SCC Palmdale, LLC, a Delaware limited liability company, a Voluntary Debtor herein, and the Holder of the Allowed Interest in Palmdale Hills.

2.1.128 SCC Palmdale Loan. Mezzanine Credit Agreement, between SCC Palmdale as borrower and Lehman Commercial as lender. The SCC Palmdale Loan is allegedly secured by a pledge of SCC Palmdale's Allowed Interest in Palmdale Hills. The SCC Palmdale Loan has an alleged balance due of $119,664,305.25 as of March 30, 2009.

2.1.129 Schedules. The schedules of assets and liabilities and list of equity security holders Filed by the Debtors, as required by Section 521(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from time to time.

2.1.130 Secured Claim. Any Claim, including interest, fees, costs, and charges to the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and unavoidable Lien on the Debtor(s)' Assets.

2.1.131 Secured Real Property Tax Claims. Secured Claims held by various government entities secured by liens on the underlying real properties owned by the Debtors but that are non-recourse to the Debtors.

2.1.132 Seven Brothers. Seven Brothers, LLC, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of the portion of the Summit Valley Project not owned by Kirby Estates and SunCal Summit Valley.

2.1.133 SJD Development. SJD Development Corp., a California corporation, a Voluntary Debtor herein, and the Holder of the Allowed Interest in SJD Partners.

2.1.134 SJD Partners. SJD Partners, Ltd., a California limited partnership, a Voluntary Debtor herein, and the prior owner of the Pacific Point Project.

2.1.135 Summit Valley Project. The Project owned in part by SunCal Summit Valley, Seven Brothers and Kirby Estates, located in the City of Hesperia, California, as more particularly described herein.

2.1.136 SunCal. The SunCal Companies, a trade name for Acquisitions and its Affiliates.

2.1.137 SunCal I. SunCal Communities I, LLC, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of the equity membership interests in Acton Estates, SunCal Bickford, SunCal Beaumont, SunCal Summit Valley, SunCal Johannson and SunCal Emerald.

2.1.138 SunCal III. SunCal Communities III, LLC, a Delaware limited liability company, a Voluntary Debtor herein.

2.1.139 SunCal Beaumont. SunCal Beaumont, LLC, a limited liability company, a Voluntary Debtor herein, and the owner of the Beaumont Heights Project.

2.1.140 SunCal Bickford. SunCal Bickford Ranch, LLC, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of the Bickford Ranch Project.

2.1.141 SunCal Century City. SunCal Century City, LLC, a Delaware limited liability company, a Trustee Debtor herein, and the owner of the 10,000 Santa Monica Project.

2.1.142 SunCal Century City Loan Agreement. That certain Loan Agreement by and between SunCal Century City, as borrower and Lehman ALI, as agent and sole lender pursuant to which Lehman ALI made a loan in the aggregate maximum principal amount of approximately $120,000,000. The SunCal Century City Loan Agreement is allegedly secured by a first-priority deed of trust on the 10,000 Santa Monica Project. The SunCal Century City Loan Agreement has an alleged balance due of $120,000,000.00 as of April 1, 2009. Danske Bank is the current Holder of the Century City Loan Agreement and related deed of trust.

2.1.143 SunCal Communities I Loan Agreement. The loan agreement by and among (i) SunCal I and SunCal III, as borrowers and (ii) Lehman Commercial, as administrative agent and lender, pursuant to which Lehman Commercial made a loan to SunCal I and SunCal III, as borrowers in the maximum aggregate principal amount of approximately $395,313,713.37. The loan agreement is allegedly secured by (a) alleged first-priority deeds of trust on the SunCal Bickford, the Acton Estates, and the SunCal Emerald Projects, (b) an alleged pledge of SunCal I's Allowed Interest in Acton Estates, SunCal Summit, SunCal Beaumont, SunCal Johannson, SunCal

Emerald, and SunCal Bickford; and (c) an alleged pledge of SunCal Summit's Allowed Interest in Seven Brothers and Kirby. The SunCal Communities I Loan Agreement has an alleged balance due of $343,221,391.06 as of March 30, 2009.

2.1.144 SunCal Emerald. SunCal Emerald Meadows, LLC, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of the Emerald Meadows Project.

2.1.145 SunCal Heartland. SunCal Heartland, LLC, a Delaware limited liability company, a Trustee Debtor herein, and the owner of the Heartland Project

2.1.146 SunCal Johansson. SunCal Johansson Ranch, LLC, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of the Johansson Ranch Project.

2.1.147 SunCal Marblehead. SunCal Marblehead, LLC, a Delaware limited liability company, a Trustee Debtor herein, and the owner of the Marblehead Project.

2.1.148 SunCal Marblehead/SunCal Heartland Loan Agreement. That certain Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, SunCal Marblehead, and SunCal Heartland, as borrowers, and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan in the maximum aggregate principal mount of approximately $316,061,300. The SunCal Marblehead/SunCal Heartland Loan Agreement is allegedly secured by first-priority deeds of trust on the Marblehead and the Heartland Projects. The SunCal Marblehead/SunCal Heartland Loan Agreement has an alleged balance due of $354,325,126.15 as of March 30, 2009.

2.1.149 SunCal Northlake. LB-L-SunCal Northlake, LLC, a Delaware limited liability company, a Trustee Debtor herein, and the owner of the Northlake Project.

2.1.150 SunCal Northlake Loan Agreement. That certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of September 5, 2009, between SunCal Northlake, as borrower, and Northlake Holdings, as successor agent and sole lender, pursuant to which Northlake Holdings' predecessor (Lehman ALI) made a loan in the maximum aggregate principal mount of approximately $100,000,000. The SunCal Northlake Loan Agreement is

allegedly secured by a first-priority deed of trust on the Northlake Project. The SunCal Northlake Loan Agreement has an alleged balance due of $123,654,776.88 as of March 30, 2009.

2.1.151 SunCal Oak Knoll. SunCal Oak Knoll, LLC, a Delaware limited liability company, a Trustee Debtor herein, and the owner of the Oak Knoll Project.

2.1.152 SunCal Oak Knoll/SunCal Torrance Loan Agreement. That certain Loan Agreement, dated as of November 30, 2006, between SunCal Torrance and SunCal Oak Knoll, as borrowers, and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of approximately $167.7 million. The SunCal Oak Knoll/SunCal Torrance Loan Agreement is allegedly secured by first-priority deeds of trust on the Oak Knoll and the Del Amo Projects. The SunCal Oak Knoll/SunCal Torrance Loan Agreement has an alleged balance due of $158,141,364.64 as of March 30, 2009.

2.1.153 SunCal Oak Valley. LB-L-SunCal Oak Valley, LLC, a Delaware limited liability company, a Trustee Debtor herein, and the owner of the Oak Valley Project.

2.1.154 SunCal Oak Valley Loan Agreement. That certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of May 23, 2006, by and between SunCal Oak Valley, as borrower, and OVC Holdings, as successor agent and sole lender, pursuant to which OVC Holdings' predecessor (Lehman ALI) made a loan in the maximum aggregate principal mount of approximately $120,000,000. The SunCal Oak Valley Loan Agreement is allegedly secured by a first-priority deed of trust on the Oak Valley Project. The SunCal Oak Valley Loan Agreement has an alleged balance due of $141,630,091.63 as of March 30, 2009.

2.1.155 SunCal PSV. SunCal PSV, LLC, a Delaware limited liability company, a Trustee Debtor herein, and the owner of the Palm Springs Village Project.

2.1.156 SunCal PSV Loan Agreement. That certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of February 12, 2007, between SunCal PSV, as borrower, and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of approximately $90 million. The SunCal PSV Loan Agreement is allegedly secured by a first-priority deed of trust on the Palm Springs Village

Project. The SunCal PSV Loan Agreement has an alleged balance due of $88,257,340.20 as of March 30, 2009.

2.1.157 SunCal Summit Valley. SunCal Summit Valley, LLC, a Delaware limited liability company, a Voluntary Debtor herein, the owner of a portion of the Summit Valley Project not owned by Kirby Estates and Seven Brothers, and the holder of Allowed Interests in Kirby Estates and Seven Brothers.

2.1.158 SunCal Torrance. SunCal Torrance Properties, LLC, a Delaware limited liability company, a Trustee Debtor herein, and the owner of the Del Amo Project.

2.1.159 Tax. Any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, or imposed on or with respect to such assessments.

2.1.160 Tax Claim. Any Claim for any Tax to the extent that it is entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

2.1.161 Tesoro. Tesoro SF, LLC, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of the Tesoro Project.

2.1.162 Tesoro Project. The Project owned by Tesoro located in the City of Santa Clarita, California, as more particularly described herein.

2.1.163 Trustee Debtor(s). The following Debtors, individually or collectively, that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV, SunCal Torrance, and SunCal Oak Knoll.

2.1.164 Trustee Debtors' Committee. The Official Committee of Unsecured Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the Bankruptcy Code.

2.1.165 Voluntary Debtor(s). The following Chapter 11 debtors and debtors-in-possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale,

Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del Rio and Tesoro.

2.1.166 Voluntary Debtors' Committee. The Official Committee of Unsecured Creditors of the Voluntary Debtors appointed in the Cases pursuant to Section 1102 of the Bankruptcy Code.

**2.2 Rules of Construction**. For purposes of this Plan and the Disclosure Statement, unless otherwise provided herein or in the Disclosure Statement, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in this Plan or the Disclosure Statement to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) except as otherwise indicated herein all references in this Plan or the Disclosure Statement to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "therein," "thereunder" and "thereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; and (g) unless otherwise provided in this Plan or the Disclosure Statement, any reference in this Plan or the Disclosure Statement to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and conditions; (iii) any reference in this Plan or the Disclosure Statement to a document or schedule to this Plan or Disclosure Statement Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified, or supplemented; and (vii) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the express terms of this Plan or the Disclosure Statement or any other provision in this Section.

III.

**TREATMENT OF UNCLASSIFIED CLAIMS**

As required by the Bankruptcy Code, this Plan places Claims and Interests into various Classes according to their right to priority. However, certain types of Claims are not classified in any Classes under this Plan. These Claims are deemed "unclassified" under the provisions of the Code. They are not considered impaired and they do not vote on this Plan, because they are automatically entitled to specific treatment provided for them in the Code. As such, the Plan Proponents have not placed the following Claims in a Class. The treatment of these unclassified Claims is as provided below.

**3.1. Treatment of Allowed Administrative Claims.**

The Code requires that all Allowed Administrative Claims be paid on the Effective Date of this Plan, unless a particular Holder agrees to a different treatment. The treatment of Allowed Administrative Claims is as described below. However, such Administrative Claims are continuing to be incurred. The Allowed Administrative Claims shall be paid from the applicable Distribution Account(s) pursuant to the Acquisitions Administrative Loan. In the event that the Court grants substantive consolidation, Holders of Allowed Administrative Claims shall be paid from a single Distribution Account.

**(a) Treatment and Repayment of the Lehman's Administrative Loan(s).**

Subject to any potential post-petition setoff and/or recoupment rights, the Lehman's Administrative Loans shall continue to have a first priority lien against the respective Assets securing such loans and the applicable Net Sale Proceeds Account with the exception of the lien for the amounts due under the Lehman Administrative Loan secured by the 10,000 Santa Monica Project, which is and shall remain be subordinate to Holders of the Lehman's Disputed Claims arising from the SunCal Century City Loan Agreement. The Lehman Administrative Loans shall be payable from the applicable Net Sales Proceeds Accounts and from the Distribution Accounts of the Debtors that were the borrowers under the Lehman Administrative Loan(s) to the extent and amount that such borrower received loan proceeds. In the event that the Plan Trust has not repaid such loan(s) by the expiration of the Sales Period, the Holders of the Lehman Administrative

Loan(s) shall be free to pursue their rights and remedies against the Assets securing the Lehman Administrative Loans under applicable law.

**(b) Repayment of Allowed Administrative Claims Other than Repayment of the Lehman Administrative Loans.**

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment and subject to the Administrative Claims Bar Date set forth herein, the Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative Claim representing obligations incurred in the ordinary course of post-petition business by the Debtors in Possession (including without limitation post-petition trade obligations and routine post-petition payroll obligations) shall be paid in full or performed by the Plan Trustee in the ordinary course of business, in accordance with the terms of the particular obligation.

**(c) Administrative Claims Bar Date.**

**(i) General Administrative Claims Bar Date.**

All applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred on or before the Effective Date and all other requests for payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2) or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade obligations and routine post-petition payroll obligations incurred in the ordinary course of the Debtors' post-petition business, for which no bar date shall apply, and (ii) post-petition tax obligations, for which the bar date described in the following Section shall apply) shall be Filed with the Bankruptcy Court and served upon the Plan Trustee no later than the General Administrative Claims Bar Date, unless such date is extended by the Bankruptcy Court after notice to the Plan Trustee. Any such request for payment of an Administrative Claim that is subject to the General Administrative Claims Bar Date and that is not Filed and served on or before the General Administrative Claims Bar Date shall be forever barred; any party that seeks payment of

Administrative Claims that (i) is required to file a request for payment of such Administrative Claims and (ii) does not file such a request by the deadline established herein shall be forever barred from asserting such Administrative Claims against the Debtors, the Plan Trust, their estates, or any of their property.

**(ii) Administrative Tax Claims Bar Date.**

All requests for payment of Administrative Claims by a governmental unit for Taxes (and for interest and/or penalties related to such Taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date ("Tax Administrative Claims") and for which no bar date has otherwise previously been established, must be filed and served on the Plan Trustee on or before the later of (i) sixty (60) days following the Effective Date; and (ii) 180 days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any Holder of any Tax Administrative Claims that is required to file a request for payment of such taxes and does not file and properly serve such a request by the applicable bar date shall be forever barred from asserting any such Tax Administrative Claims against the Debtors or the Plan Trust.

**3.2. Treatment of Priority Unsecured Tax Claims.**

Priority Tax Claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such Claim in deferred cash payments, over a period not exceeding five (5) years from the petition date and that such treatment not be less favorable than the treatment accorded to non priority unsecured creditors.

At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of each three-month period following the Effective Date, during a period not to exceed five years after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

favorable terms to the Debtors (or the Plan Trust after the Effective Date) than the treatment set forth in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash.

## IV.

## CLASSIFICATION OF CLAIMS AND INTERESTS

As required by the Code, this Plan places Claims and Interests into various Classes according to their right to priority and other relative rights. This Plan specifies whether each Class of Claims or Interests is impaired or unimpaired, and this Plan sets forth the treatment each Class will receive. The table below lists the Classes of Claims established under this Plan and states whether each particular Class is impaired or left unimpaired by this Plan. A Class is "unimpaired" if this Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy Code.

The Debtors have not yet completed their investigation on whether or not the Claims and Interests are Allowed and their listing herein should not be construed as providing for Allowance under this Plan. However, certain Disputed Claims and Disputed Liens are noted below.

| CLASSIFICATION OF HOLDERS OF SECURED PROPERTY TAX CLAIMS ON REAL PROPERTY SUBJECT TO DEEDS OF TRUST ARISING FROM LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 1.1 | Los Angeles County as the Holder of a Secured Real Property Tax Claim against the Ritter Ranch Project in the amount of $1,037,377. | Palmdale Hills 12 |
| Class 1.2 | Los Angeles County as the Holder of a Secured Real Property Tax Claim against the Acton Project in the amount of $200,454. | Acton Estates 1 |
| Class 1.3 | Riverside County as the Holder of a Secured Real Property Tax Claim against the Emerald Meadows Project in the amount of $284,974. | Emerald Meadows 9 |

| CLASSIFICATION OF HOLDERS OF SECURED PROPERTY TAX CLAIMS ON REAL PROPERTY SUBJECT TO DEEDS OF TRUST ARISING FROM LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 1.4 | Placer County as the Holder of a Secured Real Property Tax Claim against the Bickford Ranch Project in the amount of $2,887,678. | Scheduled Amount |
| Class 1.5 | Contra Costa County as the Holder of a Secured Real Property Tax Claim against the Delta Coves Project in the amount of $609,221. | Delta Coves 16 |
| Class 1.6 | Riverside County as the Holder of a Secured Real Property Tax Claim against the Heartland Project in the amount of $559,022. | SunCal Heartland 5 |
| Class 1.7 | Orange County as the Holder of a Secured Real Property Tax Claim against the Marblehead Project in the amount of $379,156. | SunCal Marblehead 49 and 57 |
| Class 1.8 | Los Angeles County as the Holder of a Secured Real Property Tax Claim against the Northlake Project in the amount of $1,189,919. | Scheduled Amount |
| Class 1.9 | Riverside as the Holder of a Secured Real Property Tax Claim against the Oak Valley Project in the amount of $280,280. | SunCal Oak Valley 9 |
| Class 1.10 | Los Angeles County as the Holder of a Secured Real Property Tax Claim against the 10,000 Santa Monica Project in the amount of $1,407,212. | SunCal Century City 4 |
| Class 1.11 | San Bernardino County as the Holder of a Secured Real Property Tax Claim against the Palm Springs Village Project in the amount of $589,367. | SunCal PSV 22 |
| Class 1.12 | Alameda County as the Holder of a disputed Secured Real Property Tax Claim against the Oak Knoll Project in the amount of $2,356,035. | SunCal Oak Knoll 22, 23 and 24 |

**CLASSIFICATION OF HOLDERS OF SECURED PROPERTY TAX CLAIMS ON REAL PROPERTY SUBJECT TO DEEDS OF TRUST ARISING FROM LEHMAN'S DISPUTED CLAIMS**

| Class | Claimant | Claim Nos. |
|---|---|---|
| Class 1.13 | Los Angeles County as the Holder of a Secured Real Property Tax Claim against the Tesoro Project in the amount of $70,239. | Tesoro 2 |
| Class 1.14 | San Bernardino County as the Holder of a Secured Real Property Tax Claim against the Joshua Ridge Project in the amount of $5,900. | Scheduled Amount |
| Class 1.15 | Placer County as the Holder of a Secured Real Property Tax Claim against the Summit Valley Project in the amount of $ 504,245. | Palmdale Hills 97 |

**CLASSIFICATION OF HOLDERS OF SECURED PROPERTY TAX CLAIMS ON REAL PROPERTY NOT SUBJECT TO DEEDS OF TRUST ARISING FROM THE LEHMAN'S DISPUTED CLAIMS**

| Class | Claimant | Claim Nos. |
|---|---|---|
| Class 2.1 | San Bernardino County as the Holder of a Secured Real Property Tax Claim against the Summit Valley Project in the amount of $69,530. | Scheduled Amount |
| Class 2.2 | Riverside County as the Holder of a Secured Real Property Tax Claim against the Beaumont Project in the amount of $365,954. | SunCal Beaumont 9 |
| Class 2.3 | Stanislaus County as the Holder of a Secured Real Property Tax Claim against the Johannson Ranch Project in the amount of $75,106. | Scheduled Amount |
| Class 2.4 | San Bernardino County as the Holder of a Secured Real Property Tax Claim against Seven Brothers property in the amount of $60,828. | Scheduled Amount |
| Class 2.5 | San Bernardino County as the Holder of a Secured Real Property Tax Claim against the property belonging to Kirby Estates in the amount of $1,744. | Scheduled Amount |

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class** | **Claims** | **Claim Nos.** |
| Class 3.1 | The Holders of Lehman's Disputed Claims filed by Lehman Commercial against SunCal I, SunCal III, Acton Estates, SunCal Emerald, SunCal Bickford, SunCal Summit Valley arising from the SunCal Communities I Loan Agreement in the asserted amount of $343,221,391. | SunCal I: 1<br>SunCal III: 2<br>Acton Estates: 6<br>SunCal Emerald: 7<br>SunCal Bickford: 16<br>SunCal Summit: 12 |
| Class 3.2 | The Holder of Lehman's Disputed Claims filed by Lehman Commercial against Palmdale Hills arising from the Ritter Ranch Loan Agreement in the asserted amount of $287,252,096. | Palmdale Hills 65 |
| Class 3.3 | The Holder of Lehman's Disputed Claims filed by Lehman Commercial against SCC Palmdale arising from the SCC Palmdale Loan Agreement in the asserted amount of $119,664,305. | SCC Palmdale 1 |
| Class 3.4 | The Holder of Lehman's Disputed Claims filed by Lehman ALI against SunCal Bickford arising from the Bickford Second Loan Agreement in the asserted amount of $56,494,059. | SunCal Bickford 17 |
| Class 3.5 | The Holder of Lehman's Disputed Claims filed by Lehman ALI against SCC Communities, Tesoro and Del Rio arising from the Interim Loan Agreement in the asserted amount of $23,795,012. | SCC Communities: 9<br>Del Rio: 14<br>Tesoro: 7 |
| Class 3.6 | The Holder of Lehman's Disputed Claims filed by Lehman ALI against SunCal Oak Knoll and SunCal Torrance arising from the SunCal Oak Knoll/SunCal Torrance Loan Agreement in the asserted amount of $158,141,364. | SunCal Oak Knoll: 12<br>SunCal Torrance: 4 |
| Class 3.7 | The Holder of Lehman's Disputed Claims filed by Lehman ALI against Delta Coves arising from the Delta Coves Loan Agreement in the asserted amount of $206,023,142. | Delta Coves 21 |

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class** | **Claims** | **Claim Nos.** |
| Class 3.8 | The Holder of Lehman's Disputed Claims filed by Lehman ALI against SunCal Marblehead and SunCal Heartland arising from the SunCal Marblehead/SunCal Heartland Loan Agreement in the asserted amount of $354,325,126. | SunCal Heartland: 9<br>SunCal Marblehead: 21 |
| Class 3.9 | The Holder of Lehman's Disputed Claims filed by OVC Holdings against SunCal Oak Valley arising from the SunCal Oak Valley Loan Agreement in the asserted amount of $141,630,091. | SunCal Oak Valley 16 |
| Class 3.10 | The Holder of Lehman's Disputed Claims filed by of Northlake Holdings against SunCal Northlake arising from the Northlake Loan Agreement in the asserted amount of $123,654,776. | SunCal Northlake 6 |
| Class 3.11 | The Holder of Lehman's Disputed Claim filed by Danske Bank against SunCal Century City arising from the SunCal Century City Loan Agreement in the asserted amount of $120,000,000. | SunCal Century City 17 |
| Class 3.12 | The Holder of Lehman's Disputed Claim filed by Lehman ALI against SunCal PSV arising from the SunCal PSV Loan Agreement in the asserted amount of $88,257,340. | SunCal PSV 12 |
| Class 3.13 | The Holder of Lehman's Disputed Claim filed by Lehman ALI against SJD Development arising from the Pacific Point First Loan Agreement in the asserted amount of $120,110,237. | SJD Development 2 |
| Class 3.14 | The Holder of Lehman's Disputed Claim filed by Lehman ALI against SJD Partners arising from the Pacific Point First Loan Agreement in the asserted amount of $120,110,237. | SJD Partners 23 |

| CLASSIFICATION OF FILED SECURED CLAIMS OF PRIMARY SECURED CREDITORS OTHER THAN THE LEHMAN ENTITIES AND LEHMAN SUCCESSORS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 4.1 | The Holder of the filed Secured Claim of Yen Chu Chang Dou, et al. pursuant to first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $3,173,499. | SunCal Beaumont 3 |

| CLASSIFICATION OF FILED SECURED CLAIMS OF PRIMARY SECURED CREDITORS OTHER THAN THE LEHMAN ENTITIES AND LEHMAN SUCCESSORS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 4.2 | The Holder of the filed Secured Claim of Cheryl M. Mims pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $136,229. | Palmdale Hills: 101 |
| Class 4.3 | The Holder of the filed Secured Claim of William L & Kathleen Ward pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $130,000. | Scheduled Amount |
| Class 4.4 | The Holder of the filed Secured Claim of Scott McDaniel pursuant to a first-priority deed of trust against certain portions of Beaumont Heights Project in the amount of $535,000. | Palmdale Hills: 20 |
| Class 4.5 | The Holder of the filed Secured Claim of Wayne & Francis Lee pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $650,000. | Scheduled Amount |
| Class 4.6 | The Holder of the filed Secured Claim of Marie B. Stanford pursuant to a first-priority deed of trust against certain portions of Beaumont Heights Project in the amount of $154,742. | SunCal Beaumont 6 |
| Class 4.7 | The Holder of the filed Secured Claim of Patricia I Volkerts pursuant to a first-priority deed of trust against certain portions of Beaumont Heights Project in the amount of $871,703.. | Palmdale Hills: 11 |
| Class 4.8 | The Holder of the filed Secured Claim of Arleen Logan pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project in the amount of $668,250. | SunCal Summit 5 |
| Class 4.9 | The Holder of the filed Secured Claim of K Square pursuant to a first-priority deed of trust Properties Inc. against certain portions of the Summit Valley Project in the amount of $200,000. | Scheduled Amount |
| Class 4.10 | The Holder of the filed Secured Claim of Leslie Quigg & Betty Quigg pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project in the amount of $1,246,500. | Scheduled Amount |

| CLASSIFICATION OF FILED SECURED CLAIMS OF PRIMARY SECURED CREDITORS OTHER THAN THE LEHMAN ENTITIES AND LEHMAN SUCCESSORS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 4.11 | The Holder of the filed Secured Claim of Jerry Wong & Rosalie Wong, Inc. pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project in the amount of $390,000. | Scheduled Amount |
| Class 4.12 | The Holder of the filed Secured Claim of Cheltimalie Enterprises pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $1,388,156. | SunCal Summit 17 |
| Class 4.13 | The Holder of the filed Secured Claim of Philip C Dowse and Vera G. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $296,910. | Scheduled Amount |
| Class 4.14 | The Holder of the filed Secured Claim of Philip C. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $880,000. | Scheduled Amount |
| Class 4.15 | The Holder of the filed Secured Claim of Desert Wind, LLC pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $862,000. | Scheduled Amount |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS ON THE DEBTORS' PROJECTS SUBJECT TO DEEDS OF TRUST ARISING FROM LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 5.1 | The Holder of the asserted Mechanic Lien Claim held by Asphalt Professionals against the Ritter Ranch Project owned by Palmdale Hills in the amount of $38,249. | Palmdale Hills 1 and 46 |
| Class 5.2 | The Holder of the asserted Mechanic Lien Claim held by Sierra Cascade Construction against the Ritter Ranch Project owned by Palmdale Hills in the amount of $550,677. | Palmdale Hills 33 |
| Class 5.3 | The Holder of the asserted Mechanic Lien Claim held by Staats Construction. Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $166,105. | Palmdale Hills 51 |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS ON THE DEBTORS' PROJECTS SUBJECT TO DEEDS OF TRUST ARISING FROM LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 5.4 | The Holder of the asserted Mechanic Lien Claim held by Southland Farmers, Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $177,801. | Palmdale Hills 55, 67 and 68 |
| Class 5.5 | The Holder of the asserted Mechanic Lien Claim held by Pinnick, Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $1,530,146. | Palmdale Hills 62, 63 and 64 |
| Class 5.6 | The Holder of the asserted Mechanic Lien Claim held by Chamelon Design Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $73,600. | Palmdale Hills 93, 99 |
| Class 5.7 | The Holder of the asserted Mechanic Lien Claim held by Hall & Foreman, Inc. against the Emerald Meadows Project in the amount of $287,727. | SunCal Emerald 13 |
| Class 5.8 | The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Emerald Meadows Project in the amount of $991,315. | SunCal Emerald 15 and 16 |
| Class 5.90 | The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Ritter Ranch Project owned by Palmdale Hills in the amount of $14,893. | Palmdale Hills 15 |
| Class 5.10 | The Holder of the asserted Mechanic Lien Claim held by MHM Engineers against the Bickford Ranch Project in the amount of $8,916. | SunCal Bickford 5 |
| Class 5.11 | The Holder of the asserted Mechanic Lien Claim held by Land Architecture against the Bickford Ranch Project in the amount of $100,245. | SunCal Bickford 6 |
| Class 5.12 | The Holder of the asserted Mechanic Lien Claim held by Kiewit Pacific Co. against the Bickford Ranch Project in the amount of $1,868,357. | SunCal Bickford 10 |
| Class 5.13 | The Holder of the asserted Mechanic Lien Claim held by ARB, Inc. against the Bickford Ranch Project in the amount of $1,052,272. | SunCal Bickford 15 |
| Class 5.14 | The Holder of the asserted Mechanic Lien Claim held by Independent Construction against the Bickford Ranch Project in the amount of $117,209. | SunCal Bickford 28 |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS ON THE DEBTORS' PROJECTS SUBJECT TO DEEDS OF TRUST ARISING FROM LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 5.15 | The Holder of the asserted Mechanic Lien Claim held by Marques Pipeline, Inc. against the Bickford Ranch Project in the amount of $330,118. | SunCal Bickford 29 and 30 |
| Class 5.16 | The Holder of the asserted Mechanic Lien Claim held by Pacific Soils Engineering against the portion of the Summit Valley Project owned by Summit Valley in the amount of $16,827. | SunCal Summit 9 |
| Class 5.17 | The Holder of the disputed asserted Mechanic Lien Claim held by Hertz Equipment Rental Corporation against the Delta Coves Project in the amount of $25,444. | Delta Coves 2 |
| Class 5.18 | The Holder of the asserted Mechanic Lien Claim held by MBH Architects against the Delta Coves Project in the amount of $97,091. | Delta Coves 8 |
| Class 5.19 | The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Heartland Project in the amount of $47,675. | SunCal Heartland 2 |
| Class 5.20 | The Holder of the asserted Mechanic Lien Claim held by Pinnik, Inc. against the Heartland Project in the amount of $563,159. | SunCal Heartland 8 |
| Class 5.21 | The Holder of the asserted Mechanic Lien Claim held by Dennis M. McCoy & Sons against the Heartland Project in the amount of $941,960. | SunCal Heartland 16 |
| Class 5.22 | The Holder of the asserted Mechanic Lien Claim held by Trimax Systems, Inc. against the Marblehead Project in the amount of $75,286. | SunCal Marblehead 3 |
| Class 5.23 | The Holder of the asserted Mechanic Lien Claim held by Butsko Utility Design, Inc. against the Marblehead Project in the amount of $6,250. | SunCal Marblehead 4 |
| Class 5.24 | The Holder of the asserted Mechanic Lien Claim held by Dennis RMF Contracting, Inc. against the Marblehead Project in the amount of $264,749. | SunCal Marblehead 28 |
| Class 5.25 | The Holder of the asserted Mechanic Lien Claim held by The Jasper Companies against the Marblehead Project in the amount of $165,260. | SunCal Marblehead 29 |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS ON THE DEBTORS' PROJECTS SUBJECT TO DEEDS OF TRUST ARISING FROM LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 5.26 | The Holder of the asserted Mechanic Lien Claim held by Kirk Negrete, Inc. dba United Steel Placers against the Marblehead Project in the amount of $270,056. | SunCal Marblehead 38 |
| Class 5.27 | The Holder of the asserted Mechanic Lien Claim held by RBF Consulting against the Marblehead Project in the amount of $125,093. | SunCal Marblehead 39 |
| Class 5.28 | The Holder of the asserted Mechanic Lien Claim held by RJ Noble Co. against the Marblehead Project in the amount of $175,030. | SunCal Marblehead 42, 50 and 58 |
| Class 5.29 | The Holder of the asserted Mechanic Lien Claim held by Orange County Stripping Services against the Marblehead Project in the amount of $4,400. | SunCal Marblehead 46 and 54 |
| Class 5.30 | The Holder of the asserted Mechanic Lien Claim held by Savala Equipment Co. Inc. against the Marblehead Project in the amount of $34,440. | SunCal Marblehead 48 and 56 |
| Class 5.31 | The Holder of the asserted Mechanic Lien Claim held by Rockey Murata Landscaping against the Marblehead Project in the amount of $285,643. | SunCal Marblehead 60 |
| Class 5.32 | The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Oak Valley Project in the amount of $52,806. | SunCal Oak Valley 3 |
| Class 5.33 | The Holder of the asserted Mechanic Lien Claim held by Pinnik Inc. against the Oak Valley Project in the amount of $966,987. | SunCal Oak Valley 12 and 14 |
| Class 5.34 | The Holder of the asserted Mechanic Lien Claim held by Hillcrest Contracting Inc. against the Oak Valley Project in the amount of $136,567. | SunCal Oak Valley 23 |
| Class 5.35 | The Holder of the asserted Mechanic Lien Claim held by MacKenzie Landscape against the Oak Valley Project in the amount of $121,297. | SunCal Oak Valley 25 |
| Class 5.36 | The Holder of the asserted Mechanic Lien Claim held by All American Asphalt against the Oak Valley Project in the amount of $60,355. | SunCal Oak Valley 26 |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS ON THE DEBTORS' PROJECTS SUBJECT TO DEEDS OF TRUST ARISING FROM LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 5.37 | The Holder of the asserted Mechanic Lien Claim held by Los Angeles Times against the Oak Valley Project in the amount of $43,610. | SunCal Oak Valley 31 and 32 |
| Class 5.38 | The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Oak Valley Project in the amount of $280,685. | SunCal Oak Valley 35 and 36 |
| Class 5.39 | The Holder of the asserted Mechanic Lien Claim held by Ateliers Jean Nouvel against the 10,000 Santa Monica Project in the amount of $1,110,000. | SunCal Century City 15 |
| Class 5.40 | The Holder of the asserted Mechanic Lien Claim held by Englekirk & Sabol Construction Structure Engineering against the 10,000 Santa Monica Project in the amount of $324,520. | SunCal Century City 12 |
| Class 5.41 | The Holder of the asserted Mechanic Lien Claim held by Brudvik Inc. against the Palm Springs Village Project in the amount of $43,365. | SunCal PSV 4 |
| Class 5.42 | The Holder of the asserted Mechanic Lien Claim held by Larry Jacinto Construction Inc. against the Palm Springs Village Project in the amount of $212,663. | SunCal PSV 5 and 24 |
| Class 5.43 | The Holder of the asserted Mechanic Lien Claim held by William + Paddon Architects + Planners Inc. against the Palm Springs Village Project in the amount of $73,798. | SunCal PSV 9 and 10 |
| Class 5.44 | The Holder of the asserted Mechanic Lien Claim held by Southern California Edison against the Palm Springs Village Project in the amount of $23,861. | SunCal PSV 26 |
| Class 5.45 | The Holder of the asserted Mechanic Lien Claim held by Pacific Masonry Walls, Inc. against the Palm Springs Village Project in the amount of $314,061. | SunCal PSV 33 and 39 |
| Class 5.46 | The Holder of the asserted Mechanic Lien Claim held by J.R. Simplot Company against the Palm Springs Village Project in the amount of $3,467. | SunCal PSV 34 and 40 |
| Class 5.47 | The Holder of the asserted Mechanic Lien Claim held by Desert Pipeline Inc. against the Palm Springs Village Project in the amount of $469,784. | SunCal PSV 36, 42 and 47 |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS ON THE DEBTORS' PROJECTS SUBJECT TO DEEDS OF TRUST ARISING FROM LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 5.48 | The Holder of the asserted Mechanic Lien Claim held by MSA Consulting against the Palm Springs Village Project in the amount of $666,897. | SunCal PSV 43 |
| Class 5.49 | The Holder of the asserted Mechanic Lien Claim held by Jackson DeMarco against the Palm Springs Village Project in the amount of $52,234. | SunCal PSV 45 |
| Class 5.50 | The Holder of the asserted Mechanic Lien Claim held by Oliphant Golf, Inc. against the Oak Knoll Project in the amount of $456,476. | SunCal Oak Knoll 46 |
| Class 5.51 | The Holder of the asserted Mechanic Lien Claim held by RGA Environmental, Inc. against the Oak Knoll Project in the amount of $75,617. | SunCal Oak Knoll 1 |
| Class 5.52 | The Holder of the asserted Mechanic Lien Claim held by BKF Engineers against the Oak Knoll Project in the amount of $308,817. | SunCal Oak Knoll 2 and 19 |
| Class 5.53 | The Holder of the asserted Mechanic Lien Claim held by CST Environmental Inc. against the Oak Knoll Project in the amount of $4,316,169. | SunCal Oak Knoll 4 and 9 |
| Class 5.54 | The Holder of the asserted Mechanic Lien Claim held by Park West Landscape Inc. against the Ritter Ranch Project in the amount of $ 27,624.70. | **Palmdale Hills 109** |
| Class 5.55 | The Holder of the asserted Mechanic Lien Claim held by Park West Landscape Inc. against the Del Rio Ranch Project in the amount of $ 148,266.10. | **Del Rio 26** |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS ON THE PROJECTS NOT SUBJECT TO DEEDS OF TRUST ARISING FROM LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 6 | The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Beaumont Heights Project in the amount of $46,188. | SunCal Beaumont 11 and 12 |

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS | | |
|---|---|---|
| **Class 7[2]** | **Claimant** | **Claim Nos.** |
| Class 7.1 | The Holder of the disputed Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) in the asserted amount of $10,950 against SunCal Marblehead. | Scheduled Amount and SunCal Marblehead 45 |
| Class 7.2 | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) in the asserted amount of $235 against SunCal Oak Knoll. | SunCal Oak Knoll 26 |
| Class 7.3 | The Holder of Priority Claims that fall within Code Sections 507(a)(4), (5), (6), and (7) in the asserted amount of $10,950 against Palmdale Hills. | Palmdale Hills 70 |
| Class 7.4 | The Holder of Priority Claims that fall within Code Sections 507(a)(4), (5), (6), and (7) in the asserted amount of $4,188 against SJD Partners. | Schedule Amount and SJD Partners 12 |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS NOT SUBJECT TO THE LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 8.1 | The Holder of General Unsecured Claims filed against SunCal Beaumont in the in the estimated amount of $183,731. | Various Filed and Scheduled |
| Class 8.2 | The Holder of General Unsecured Claims filed against SunCal Johannson in the estimated amount of $41,181. | Various Filed and Scheduled |
| Class 8.3 | The Holder of General Unsecured Claims filed against Seven Brothers. | Contingent Bond Claims |
| Class 8.4 | The Holder of General Unsecured Claims filed against Kirby Estates. | Contingent Bond Claims |
| Class 8.5 | The Holder of General Unsecured Claims filed against SCC Palmdale. | Contingent Bond Claims |

[2] In the event the court grants substantive consolidation, Classes 7.1 through 7.4 shall be Class 7.

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT BECOME THE BENEFICIARY OF AN EQUITABLE SUBORDINATION JUDGMENT AGAINST LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class 9[3]** | **Claimant** | **Claim Nos.** |
| Class 9.1 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against Palmdale. | Various Filed and Scheduled |
| Class 9.2 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against Del Rio. | Various Filed and Scheduled |
| Class 9.3 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SunCal. | Various Filed and Scheduled |
| Class 9.4 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SunCal Summit. | Various Filed and Scheduled |
| Class 9.5 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against Acton Estates. | Various Filed and Scheduled |
| Class 9.6 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against Delta Coves. | Various Filed and Scheduled |
| Class 9.7 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SunCal Heartland. | Various Filed and Scheduled |
| Class 9.8 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SunCal Marblehead. | Various Filed and Scheduled |
| Class 9.9 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SJD Development. | Various Filed and Scheduled |
| Class 9.10 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SJD Partners. | Various Filed and Scheduled |

[3] In the event the court grants substantive consolidation, Classes 9.1 through 9.20 shall be Class 9.

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT BECOME THE BENEFICIARY OF AN EQUITABLE SUBORDINATION JUDGMENT AGAINST LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class 9[3]** | **Claimant** | **Claim Nos.** |
| Class 9.11 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against Sun Cal Century City. | Various Filed and Scheduled |
| Class 9.12 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SunCal Northlake. | Various Filed and Scheduled |
| Class 9.13 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SunCal Oak Knoll. | Various Filed and Scheduled |
| Class 9.14 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SunCal Oak Valley. | Various Filed and Scheduled |
| Class 9.15 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SunCal PSV. | Various Filed and Scheduled |
| Class 9.16 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SunCal Torrance. | Various Filed and Scheduled |
| Class 9.17 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SCC Communities. | Various Filed and Scheduled |
| Class 9.18 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against Tesoro. | Various Filed and Scheduled |
| Class 9.19 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SunCal Bickford. | Various Filed and Scheduled |
| Class 9.20 | The Holder of General Unsecured Claims that become the beneficiary of an equitable subordination judgment filed against SunCal III. | Various Filed and Scheduled |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT DO NOT BECOME THE BENEFICIARY OF AN EQUITABLE SUBORDINATION JUDGMENT AGAINST LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class 10[4]** | **Claimant** | **Claim Nos.** |
| Class 10.1 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against Palmdale Hills. | Various Filed and Scheduled |
| Class 10.2 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against Del Rio. | Various Filed and Scheduled |
| Class 10.3 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SunCal Emerald. | Various Filed and Scheduled |
| Class 10.4 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SunCal Summit Valley. | Various Filed and Scheduled |
| Class 10.5 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against Acton Estates. | Various Filed and Scheduled |
| Class 10.6 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against Delta Coves. | Various Filed and Scheduled |
| Class 10.7 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SunCal Heartland. | Various Filed and Scheduled |
| Class 10.8 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SunCal Marblehead. | Various Filed and Scheduled |
| Class 10.9 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SJD Development. | Various Filed and Scheduled |
| Class 10.10 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SJD Partners. | Various Filed and Scheduled |

[4] In the event the court grants substantive consolidation, Classes 10.1 through 10.20 shall be Class 10.

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT DO NOT BECOME THE BENEFICIARY OF AN EQUITABLE SUBORDINATION JUDGMENT AGAINST LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class 10**[4] | **Claimant** | **Claim Nos.** |
| Class 10.11 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against Sun Cal Century City. | Various Filed and Scheduled |
| Class 10.12 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SunCal Northlake. | Various Filed and Scheduled |
| Class 10.13 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SunCal Oak Knoll. | Various Filed and Scheduled |
| Class 10.14 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SunCal Oak Valley. | Various Filed and Scheduled |
| Class 10.15 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SunCal PSV. | Various Filed and Scheduled |
| Class 10.16 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SunCal Torrance. | Various Filed and Scheduled |
| Class 10.17 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SCC Communities. | Various Filed and Scheduled |
| Class 10.18 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against Tesoro. | Various Filed and Scheduled |
| Class 10.19 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SunCal Bickford. | Various Filed and Scheduled |
| Class 10.20 | The Holder of General Unsecured Claims that do not become the beneficiary of an equitable subordination judgment filed against SunCal III. | Various Filed and Scheduled |

| CLASSIFICATION OF INTEREST HOLDERS | | |
|---|---|---|
| Class 11[5] | Claimant | Scheduled |
| Class 11.1 | Allowed Interests in Palmdale Hills held by SCC Palmdale. | Scheduled Amount |
| Class 11.2 | Allowed Interests in Del Rio held by SCC LLC. | Scheduled Amount |
| Class 11.3 | Allowed Interests in SunCal Beaumont held by SunCal I. | Scheduled Amount |
| Class 11.4 | Allowed Interests in SunCal Emerald held by SunCal I. | Scheduled Amount |
| Class 11.5 | Allowed Interests in SunCal Johannson held by SunCal I. | Scheduled Amount |
| Class 11.6 | Allowed Interests in SunCal Summit Valley held by SunCal I. | Scheduled Amount |
| Class 11.7 | Allowed Interests in Acton Estates held by SunCal I. | Scheduled Amount |
| Class 11.8 | Allowed Interests in Delta Coves held by Delta Coves Master JV LLC and LB/L-DUC III Master LLC. | Scheduled Amount |
| Class 11.9 | Allowed Interests in SunCal Heartland held by SunCal Marblehead Heartland Master LLC. | Scheduled Amount |
| Class 11.10 | Allowed Interests in SunCal Marblehead held by SunCal Marblehead Heartland Master LLC. | Scheduled Amount |
| Class 11.11 | Allowed Interests in SJD Development held by Elieff. | Scheduled Amount |
| Class 11.12 | Allowed Interests in SJD Partners held by SJD Development. | Scheduled Amount |
| Class 11.13 | Allowed Interests in Sun Cal Century City held by Lehman SunCal Real Estate Fund LLC and LBREP II/SunCal Land Fund Member LLC. | Scheduled Amount |
| Class 11.14 | Allowed Interests in SunCal Northlake held by SCLV Northlake, LLC and SCC/Northlake, LLC. | Scheduled Amount |
| Class 11.15 | Allowed Interests in SunCal Oak Knoll held by Lehman SunCal Real Estate Fund LLC and LBREP II/SunCal Land Fund Member LLC. | Scheduled Amount |

[5] In the event the court grants substantive consolidation, Classes 11.1 through 11.26 shall be Class 11.

| CLASSIFICATION OF INTEREST HOLDERS | | |
|---|---|---|
| Class 11[5] | Claimant | Scheduled |
| Class 11.16 | Allowed Interests in SunCal Oak Valley held by SCLV Oak Valley, LLC and SCC/Oak Valley, LLC. | Scheduled Amount |
| Class 11.17 | Allowed Interests in SunCal PSV held by Lehman SunCal Real Estate Fund LLC and LBREP II/SunCal Land Fund Member LLC. | Scheduled Amount |
| Class 11.18 | Allowed Interests in SunCal Torrance held by Lehman SunCal Real Estate Fund LLC and LBREP II/SunCal Land Fund Member LLC. | Scheduled Amount |
| Class 11.19 | Allowed Interests in SCC Communities held by SCC LLC. | Scheduled Amount |
| Class 11.20 | Allowed Interests in Tesoro held by SCC LLC. | Scheduled Amount |
| Class 11.21 | Allowed Interests in SunCal Bickford held by SunCal I. | Scheduled Amount |
| Class 11.22 | Allowed Interests in SunCal I held by SCC LLC. | Scheduled Amount |
| Class 11.23 | Allowed Interests in SunCal III held by SCC LLC. | Scheduled Amount |
| Class 11.24 | Allowed Interests in Seven Brothers held by SunCal Summit Valley. | Scheduled Amount |
| Class 11.25 | Allowed Interests in Kirby Estates held by SunCal Summit Valley. | Scheduled Amount |
| Class 11.26 | Allowed Interests in SCC Palmdale held by SCC LLC. | Scheduled Amount |

# V.

## THIS PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### 5.1. This Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims on Real Properties Subject to Deeds of Trust Arising from Lehman's Disputed Secured Claims and Disputed Liens (Classes 1.1 Through 1.14).

The treatment of Holders of Allowed Secured Claims in Classes 1.1 through 1.14 under this Plan is as follows:

(a) The Holder(s)' rights are impaired under this Plan;

(b) The Holder(s) shall retain their underlying first priority liens on the applicable real property collateral but shall forebear from pursuing their rights and remedies until the expiration of the applicable Sales Period;

(c) If the Plan Trustee is not able to consummate a sale of the applicable underlying real property collateral during the applicable Sales Period, such Holder(s) shall receive a distribution to the extent of available Net Sale Proceeds from its underlying real property collateral in accordance with the priorities set forth in the Bankruptcy Code and under applicable California law; and

(d) If the Plan Trustee is unable to consummate a sale of the applicable underlying real property collateral during the applicable Sales Period, the Holder(s) shall be free to pursue their respective rights and remedies against the underlying real property collateral under applicable California law, but shall have no recourse against the Plan Trust or Plan Trustee.

**5.2. <u>This Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims Against Real Properties Not Subject to Deeds of Trust Arising from Lehman's Disputed Claims (Classes 2.1 Through 2.5)</u>.**

The treatment of Holders of Class 2.1 through 2.5 Allowed Secured Claims under this Plan is as follows:

(a) The Holder(s)' rights are unimpaired under this Plan;

(b) The Holder(s) shall retain their underlying first priority liens on the applicable real property collateral and shall be fully paid from any conveyance thereof; and

(c) On the Effective Date, the Holder(s) shall be free to pursue their respective rights and remedies against the underlying real property collateral under applicable California law, but shall have no recourse against the Plan Trust.

**5.3. <u>This Plan's Treatment of Lehman's Disputed Claim(s) and Disputed Lien(s) (Classes 3.1 Through 3.14)</u>.**

The treatment of the Holder(s) of Classes 3.1 through 3.14 consisting of Lehman's Disputed Secured Claim(s) and Disputed Lien(s) under this Plan shall be as follows:

(a) The Holder(s)' rights are impaired under this Plan;

(b) The Holder(s) shall retain their interest in their Disputed Lien(s) on the applicable Plan Trust's Assets pending a Final Order(s) resolving the Allowance of the applicable Disputed Claim(s) and the validity of the applicable Disputed Lien(s) against the applicable Plan Trust's Assets;

(c) The Holder(s) shall forebear from pursuing their rights and remedies against the Plan Trust's Assets until the expiration of the Sales Period;

(d) The Plan Trustee may sell or otherwise liquidate the Holder(s)' alleged collateral free and clear of the applicable Disputed Secured Claims and the applicable Disputed Liens without the right of such Holder to credit bid its Disputed Secured Claim(s) and Disputed Lien(s) provided such sales are subject to overbid procedures and a sale approved by the Bankruptcy Court. All Net Sale Proceeds generated from such sales shall be deposited into the applicable Net Sales Proceeds Account with all Disputed Liens attached thereto;

(e) If the Plan Trustee is able to consummate a sale or otherwise liquidate the particular Asset(s) subject to a Disputed Claim(s) and/or Disputed Lien(s) during the Sales Period, the Holder(s) of such Disputed Claim shall receive a distribution to the extent of available funds from the applicable Net Sale Proceeds Account(s) to the extent required by a Final Order determining the allowance and priority of such Disputed Claim and the validity and priority of the Disputed Liens; and

(f) If the Plan Trustee is unable to consummate a sale or otherwise liquidate the particular Asset(s) subject to a Lehman Disputed Claim during the Sales Period, such Asset(s) shall be deemed abandoned by the Plan Trust, no payment shall be made to such Holder(s), and such Holder(s) shall be allowed to pursue their respective rights and remedies against the underlying collateral under applicable law.

**5.4. <u>This Plan's Treatment of Holders of Secured Claims of Primary Secured Creditors Other than the Holders of Lehman's Disputed Claims (Classes 4.1 Through 4.15)</u>.**

The treatment of the Holders of Allowed Classes 4.1 through 4.15 under this Plan shall be as follows:

(a) The Holder(s)' rights are impaired under this Plan;

(b) The Holder(s) shall retain their respective underlying liens on the applicable real property collateral;

(c) On the Effective Date, the Holder(s) shall be allowed to pursue their rights against the subject real property collateral under applicable California law, but shall have no recourse against the Plan Trust.

**5.5. <u>This Plan's Treatment of Holders of Asserted Mechanic Lien Claims Against the Debtors' Projects Subject to Lehman's Disputed Claims (Classes 5.1 Through 5.55).</u>**

The treatment of the Holders of Allowed Classes 5.1 through 5.55 Secured Claims under this Plan shall be as follows:

(a) The Holder(s)' rights are impaired under this Plan;

(b) The Holder(s) shall retain their respective underlying liens on the applicable real property collateral but shall forebear from pursuing their rights and remedies until the expiration of the Sales Period;

(c) If the Plan Trustee is able to consummate a sale of the applicable underlying real property collateral during the Sales Period, such Holders shall receive a distribution to the extent of available Net Sale Proceeds in accordance with the priorities set forth under the Bankruptcy Code, subject to a Final Order(s) resolving the allowance and priority of the applicable Lehman's Disputed Claim(s) and the validity of the applicable Lehman Disputed Lien(s); and

(d) If the Plan Trustee is unable to consummate a sale of the applicable underlying real property collateral during the Sales Period, such real property collateral shall be deemed abandoned by the Plan Trustee, no payment shall be made to such Holder(s), and such Holder(s) shall be allowed to pursue their respective rights against the real property collateral under applicable California law, subject to a Final Order(s) resolving the allowance and priority of the applicable Lehman's Disputed Claim(s) and applicable Lehman Disputed Lien(s), without recourse to the Debtor (s).

**5.6. This Plan's Treatment of Asserted Mechanic Lien Claims Against Projects Not Subject to Lehman's Disputed Claims (Class 6).**

The treatment of the Holder of Allowed Class 6 under this Plan shall be as follows:

(a) The Holder(s)' rights are unimpaired under this Plan;

(b) The Holder(s) shall retain their respective underlying lien on the subject real property; and

(c) On the Effective Date, the Holder(s) shall be free to pursue their respective rights and remedies against real property collateral under California law, but shall have no recourse against the Plan Trust.

**5.7. This Plan's Treatment of Holders of Priority Claims (Classes 7.1 through 7.4).**

The treatment of the Holders of Allowed Priority Claims under this Plan shall be as follows:

(a) The Holder(s) are unimpaired under this Plan; and

(b) The Holder(s) shall be paid either the applicable Distribution Account(s) (i) the full amount of such Allowed Priority Claim in Cash on the later of (x) the Effective Date, (y) the date such Claim becomes an Allowed Priority Claim or (z) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim, or (ii) upon such other less favorable terms as may be agreed to by such Holder and the Plan Trustee.

**5.8. This Plan's Treatment of Holders of Allowed General Unsecured Claims Against Debtors with Assets that Are Not Subject to the Lehman's Disputed Claims and Disputed Liens (Classes 8.1 through 8.5) (SunCal Beaumont, SunCal Johannson, Seven Brothers and Kirby Estates).**

The treatment of the Holders of Allowed Classes 8.1 through 8.5 Claims under this Plan shall be as follows:

(a) The Holders' rights are impaired under this Plan; and

(b) After payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims of the Debtors, the Holders of Allowed

Classes 8.1 through 8.5 Claims shall receive Distribution(s) of their pro-rata share of the funds remaining in the applicable Distribution Account(s).

**5.9. <u>This Plan's Treatment of Holders of General Unsecured Claims that Become the Beneficiary of any Equitable Subordination Judgment Against Lehman's Disputed Claims and Disputed Liens (Classes 9.1 through 9.20)</u>.**

The treatment of the Holders of Allowed Classes 9.1 through 9.20 Claims under this Plan shall be as follows:

(a) The Holders' rights are impaired under this Plan;

(b) After payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims, the Holders of Allowed Classes 9.1 through 9.20 Claims shall receive Distribution(s) of their pro-rata share from the applicable Distribution Account(s); and

(c) In the event that such Holder provides a written election to sell its Allowed Claim to Acquisitions or an Affiliate of Acquisitions by no later than thirty days after receipt of an Effective Date Notice, Acquisitions shall purchase or cause to be purchased such Allowed Claim, including any Claims against third party obligors arising from such Claim, for an amount equal to ten percent (10%) of the Allowed Amount within sixty days after receipt of such written election, or within sixty (60) days of the determination that the claim is an Allowed Claim, which ever is later.

**5.10. <u>This Plan's Treatment of Holders of Allowed General Unsecured Claims that Do Not Become the Beneficiary of an Equitable Subordination Judgment Against Lehman's Disputed Claims (Classes 10.1 through 10.20)</u>.**

The treatment of the Holders of Allowed Classes 10.1 through 10.20 Claims under this Plan shall be as follows:

(a) The Holders' rights are impaired under this Plan; and

(b) After payment in full of all Allowed Secured Claims, Allowed Post Confirmation Expenses, Allowed Administrative Claims, Allowed Priority Claims, the Holders of

Allowed Classes 10.1 through 10.20 Claims shall receive their pro-rata share of funds remaining in the applicable Distribution Account(s).

**5.11. This Plan's Treatment of Holders of Allowed Interests.**

The treatment of the Holders of Allowed Classes 11.1 to 11.26 Interest(s) under this Plan shall be as follows:

(a) The Holders of Allowed Classes 11.1 to 11.26 Interest(s) are impaired under this Plan;

(b) On the Effective Date, all such Allowed Interest shall be cancelled and will not receive any distribution on account of such Interest(s); and

(c) To the extent that there is a potential Distribution on the Allowed Interests of SunCal Beaumont, SunCal Johannson, Seven Brothers and Kirby Estates, such Distributions shall be made to the Distribution Accounts established for the Debtors that owned such Allowed Interest.

## VI.

## ACCEPTANCE OR REJECTION OF THIS PLAN

**6.1. Introduction.**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing Claims. The Debtors can not represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm this Plan. Some of the requirements include that this Plan must be proposed in good faith, acceptance of this Plan, whether this Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether this Plan is feasible. The requirements described herein are not the only requirements for confirmation.

**6.2. <u>Who May Object to Confirmation of this Plan</u>.**

Any party in interest may object to the confirmation of this Plan, but as explained below not everyone is entitled to vote to accept or reject this Plan.

**6.3. <u>Who May Vote to Accept/Reject this Plan</u>.**

A Holder of a Claim or Interest has a right to vote for or against this Plan if that Holder of the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and (2) Classified in an impaired Class.

**6.4. <u>What Is an Allowed Claim/Interest</u>.**

As noted above, a Holder of Claim or Interest must first have an Allowed Claim or Allowed Interest to vote.

**6.5. <u>What Is an Impaired Class</u>.**

A Class is impaired if this Plan alters the legal, equitable, or contractual rights of the Claims or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults. In this case, the Debtors believe that all Classes, except for Classes 2.1 through 2.5, Classes 6.1 and 6.2, and Classes 7.1 through 7.4.

**6.6. <u>Who Is Not Entitled to Vote</u>.**

The following four types of Claims are <u>not</u> entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain any value under this Plan. Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted this Plan. Claims entitled to priority pursuant to Bankruptcy Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in Classes that do not receive or retain any property under this Plan do not vote because such Classes are deemed to have rejected this Plan. The Debtors believe that all Classes are entitled to vote except Classes 2.1 through 2.5, Class 6, and Classes 7.1 through 7.4 are unimpaired under this Plan and consequently are not entitled to vote, because they are conclusively deemed to have accepted this

Plan. Classes 11.1 to 11.26 Interests are being cancelled under this Plan; accordingly these Interest Holders are deemed to have voted to reject this Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THIS PLAN.

**6.7. Who Can Vote in More than One Class.**

A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the Claim and another ballot for the Unsecured Claim. Also, a Creditor may otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and Subordinated Note Claims), and may vote the Claims held in each Class.

**6.8. Votes Necessary for a Class to Accept this Plan.**

A Class of Claims is deemed to have accepted this Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to accept this Plan. A Class of interests is deemed to have accepted this Plan when Holders of at least two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept this Plan.

**6.9. Treatment of Nonaccepting Classes.**

As noted above, even if there are impaired Classes that do not accept the proposed Plan, the Court may nonetheless confirm this Plan if the nonaccepting Classes are treated in the manner required by the Code and at least one impaired Class of Claims accepts this Plan. The process by which a plan may be confirmed and become binding on non-accepting Classes is commonly referred to as "cramdown." The Bankruptcy Code allows this Plan to be "crammed down" on nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting requirements of 1129(a)(8) and if this Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each impaired Class that has not voted to accept this Plan, as set forth in 11 U.S.C. § 1129(b) and applicable case law.

**6.10. Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

The Plan Proponent will ask the Court to confirm this Plan by cramdown on any impaired Class if such Class does not vote to accept this Plan.

## VII.

## MEANS OF EXECUTION AND IMPLEMENTATION OF THIS PLAN

**7.1. Introduction.** This Section is intended to address how this Plan Proponents intend to fund and to implement the obligations to Creditors under this Plan. It thus provides information regarding funding sources for this Plan obligations and other material issues bearing upon the performance of this Plan.

**7.2. The Plan Sponsor.**

The Plan Sponsor shall be Acquisitions.

**7.3. Acquisitions' Funding Obligations Pursuant to the Acquisitions Administrative Loan.**

As part of its obligations as the Plan Sponsor, Acquisitions has agreed to cause the funding of the payment of the following amounts required under this Plan to the extent necessary after all Available Cash has been exhausted:

(a) All Allowed Administrative Claims;

(b) Allowed Priority Claims; and

(c) Continuing Professional fees for the prosecution of the Litigation Claims.

In exchange for the above referenced funding commitments, Acquisitions, and all of its Affiliates shall receive (i) a complete release from all of the Debtors, the Estates, and the Plan Trust of any potential Litigation Claims, and (ii) Allowance of the Acquisitions Administrative Loan in an amount equal to all Chapter 11 and post-confirmation funding caused by Acquisitions to the extent that the same has not already been approved by the Court.

**7.4. Transfer of the Debtors' Assets to the Plan Trust and Removal of the Chapter 11 Trustee.**

As of the Confirmation Date, the Chapter 11 Trustee shall be removed and replaced by Acquisitions in its capacity as the Plan Trustee. On the Effective Date, the Debtors' Assets shall

be transferred to the Plan Trust, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of Creditors and equity security holders, except for the Claims, Liens and Interests specifically retained under this Plan.

**7.5. Management of the Plan Trust Assets After Effective Date.**

On the Effective Date, the operation of the Plan Trust's Assets shall be the responsibility of Acquisitions as the Plan Trustee. Acquisitions shall be entitled to retain, employ and compensate Professionals, in order to assist with the Plan Trust's obligations and rights under the terms of this Plan. Acquisitions may also employ or contract with other persons or entities to perform the obligations created under this Plan.

**7.6. The Committee(s).**

On the Effective Date, the Committee(s) shall continue to serve their applicable Debtors, subject to the following:

**(a) Duties and Powers.**

The duties of the Committee(s) after the Effective Date shall be limited to, pursuing Avoidance Actions on a contingency fee basis, and monitoring this Plan's implementation, and joint decision-making authority on a settlement of the Lehman Adversary Proceeding, and as otherwise provided in the Acquisitions Administrative Loan.

The Committee(s) shall be entitled to retain, employ and compensate Professionals, in order to assist with the obligations and rights of the Committees under the terms of this Plan. Such compensation shall be from the Distribution Account(s).

**(b) Dissolution of Committee(s).**

The Committee(s) shall be dissolved upon the entry of an order converting, closing or dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases. On dissolution, the Confirmation Committee(s) shall have no other or further obligations or responsibilities on behalf of the Plan Trust.

**7.7. Litigation Claims.**

Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all Litigation Claims whether or not pending on the Effective Date. Unless a Litigation Claim is

expressly waived, relinquished, released, compromised or settled in this Plan or in a Final Order, all rights with respect to such Litigation Claims are reserved and the Plan Trustee and the Committee(s) (in the case of Avoidance Actions) may pursue such Litigation Claims. Notwithstanding the foregoing, the Plan Trustee and the Committee(s) shall not settle or abandon a Litigation Claim valued at greater than $100,000 except upon ten (10) days' prior written notice and opportunity to object to one or another. Any disputes concerning the settlement or abandonment of a Litigation Claim shall be submitted to the Bankruptcy Court for resolution on no less than ten (10) days' notice to the objecting party.

**7.8. Collection of Litigation Recoveries.**

All Litigation Recoveries realized or obtained by the Plan Trustee and/or the Committee(s) shall be promptly deposited into the applicable Distribution Account(s). Except as otherwise provided in this Plan and the Confirmation Order, the Litigation Recoveries shall be free and clear of all Claims and Liens and shall only be expended in accordance with the provisions of this Plan.

**7.9. Payment of Post-Confirmation Expenses.**

All Post-Confirmation Expenses may be paid by the Plan Trustee from the Distribution Account(s) upon ten (10) days' prior written notice and opportunity to object provided to the Committee(s), the Holders of the Lehman's Disputed Claim(s), and the Office of the United States Trustee, but without further notice to other Creditors or Holders of Interests, or approval of the Bankruptcy Court. Any disputes concerning the payment of the Post-Confirmation Expenses shall be submitted to the Bankruptcy Court for resolution.

## VIII.

## DISTRIBUTIONS

**8.1. Distribution Agent.**

Acquisitions shall serve as the Distribution Agent for distributions due under this Plan. The Distribution Agent may employ one or more sub agents on such terms and conditions as it may agree in its discretion and pay such sub agent as a Post Confirmation Expense from the Distribution Accounts. The Distribution Agent shall not be required to provide any bond in connection with the making of any Distributions pursuant to this Plan.

**8.2. Distributions.**

**(a) Dates of Distributions.**

Any distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after such date and, in any event, within thirty (30) days after such date. Any distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

**(b) Limitation on Liability.**

Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any of their employees, members, officers, directors, agents, or professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of this Plan and the making or withholding of Distributions pursuant to this Plan, or (ii) any change in the value of distributions made pursuant to this Plan resulting from any delays in making such distributions in accordance with this Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

**8.3. Old Instruments and Securities.**

**(a) Surrender and Cancellation of Instruments and Securities.**

As a condition to receiving any distribution pursuant to this Plan, each Person holding any note or other instrument or security (collectively "Instruments or Securities" and individually an "Instrument or Security") evidencing, an existing Claim(s) against the Debtor(s) must surrender such Instrument or Security to the Distribution Agent.

(b) **Cancellation of Liens.**

Except as otherwise provided in this Plan, any Lien securing any Secured Claim shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including, without limitation, any cash collateral) held by such Person and to take such actions as may be requested by the Plan Trustee to evidence the release of such Lien, including, without limitation, the

execution, delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

**8.4. De Minimis Distributions and Fractional Shares.**

No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any Holder of Claims unless a request therefore is made in writing to the Plan Trust. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent. Any Cash or other property that is not distributed as a consequence of this Section shall, after the last distribution on account of Allowed Claims in the applicable Class, be treated as "Unclaimed Property" under this Plan.

**8.5. Delivery of Distributions.**

Except as provided in this Plan with respect to Unclaimed Property, distributions to Holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows: (1) with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Holder as maintained by the official claims agent for the Debtors; (2) with respect to each Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the Schedules filed by the Debtors, provided, however, that if the Debtors or the Plan Trust has received a written notice of a change of address for such Holder, the address set forth in such notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at such address as the Holder may specify in writing.

**8.6. Undeliverable Distributions.**

If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing (any such distribution being hereinafter referred to as "Unclaimed Property"), no further distribution shall be made to such Holder unless and until the Plan Trustee is notified in writing of such Holder's then current address. Subject to the remainder of this Section and the following Section, Unclaimed Property shall remain in the possession of the Plan Trustee pursuant to this Section, and shall be set aside and (in the case of Cash) held in a segregated interest bearing account (as to Cash Unclaimed Property) to be maintained by the Distribution Agent until such time as the

subject Distribution becomes deliverable. Nothing contained in this Plan shall require the Plan Trustee or any other Person to attempt to locate such Person.

**8.7. Disposition of Unclaimed Property.**

If the Person entitled thereto notifies the Plan Trustee of such Person's Claim to a Distribution of Unclaimed Property within ninety (90) days following such Person's initial Distribution Date, Effective Date, the Unclaimed Property distributable to such Person, together with any interest or dividends earned thereon, shall be paid or distributed to such Person as soon as practicable. Any Holder of an Allowed Claim that does not assert a Claim in writing for Unclaimed Property held by the Plan Trustee within ninety (90) days after the Holder's initial Distribution Date shall no longer have any Claim to or Interest in such Unclaimed Property, and shall be forever barred from receiving any distributions under this Plan or otherwise from the Plan Trustee. In such cases, any property held for Distribution on account of such Claims shall become Available Cash and deposited into the Distribution Account.

## IX.

## OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS

**9.1. Standing for Objections to Claims.**

The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve objections to Claims other than to the right to object to the claims of SunCal Affiliates, which shall be vested with the applicable Committee. Any objection to a Claim shall be Filed with the Bankruptcy Court and served on the Person holding such Claim on or before the applicable Claims Objection Deadline. The Plan Trustee shall have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of the Claims Objection Deadline if a complete review of all Claims cannot be completed by such date.

**9.2. Treatment of Disputed Claims and Disputed Liens.**

**(a) No Distribution Pending Allowance.**

If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment or distribution provided for under this Plan shall be made on account of such Claim or Lien unless and until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien.

**(b) Distribution After Allowance.**

On the next Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall distribute to the Person holding such Claim any Cash that would have been distributable to such Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a Disputed Claim.

## X.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1. Executory Contracts Potentially Being Assumed.**

The Plan Trustee shall have until the expiration of the Sales Period to assume or reject any of the executory contracts and unexpired leases attached to this Plan as Exhibit "1". The Plan Proponents may add any executory contract or unexpired leases to these exhibits, or delete any contract or lease therefrom up to and including the Confirmation Date. All contracts or leases not assumed by the expiration of the Sales Period shall be deemed rejected.

**10.2. Executory Contracts Being Rejected.**

The Debtors hereby reject all of the executory contracts and unexpired leases set forth in the Debtors' Schedules attached to this Plan as Exhibit "2." The Plan Proponents reserve the right to amend Exhibit "2" to this Plan to include additional leases and contracts on this exhibit, or to delete leases and contracts from this exhibit, up to and including the Confirmation Date.

**10.3. Bar Date for Rejection Damages.**

Any Claim arising out of the rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the Debtors, the Plan Trust, their Affiliates, their successors, or their properties, and shall not be entitled to any distribution under this Plan, unless a Proof of Claim for such Claim is filed and served on the Debtors, or the Plan Trust within thirty (30) days after the receipt of a notice of the rejection of any contract or lease.

**10.4. Changes in Rates Subject to Regulatory Commission Approval.**

The Debtors are not subject to governmental regulatory commission approval of their rates.

# XI.

# LIMITATION OF LIABILITY

**11.1 No Liability for Solicitation or Participation.**

As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

**11.2 Limitation of Liability.**

Effective as of the Effective Date, none of the Debtors, the Plan Trust, or their respective Affiliates, nor any of their respective members, officers, directors, employees and other agents, advisors, attorneys and accountants shall have or incur any liability to any Holder of any Claim or Interest or any other Person for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of this Plan, the Disclosure Statement, the consummation of this Plan, the administration of this Plan, the Cases or the property to be distributed under this Plan except: (a) the Plan Trust shall be liable for the performance of obligations assumed by them or imposed upon them under or by this Plan; and (b) for liability based on willful misconduct as finally determined by a Final Order of the Bankruptcy Court. Each of the Debtors, the Plan Trust and their respective Affiliates, and each of their respective officers, directors, employees and other agents, advisors, attorneys and accountants) shall be entitled to rely, in every respect, upon the advice of counsel with respect to their duties and responsibilities under or with respect to this Plan.

/ / /

## XII.

## CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THIS PLAN

**12.1 Conditions Precedent to Plan Confirmation.**

The only condition precedent to confirmation of this Plan is that the Bankruptcy Court shall have entered a Confirmation Order in form and substance reasonably acceptable to the Plan Proponents.

**12.2 Conditions Precedent to Plan Effectiveness.**

(a) The only conditions precedent to the effectiveness of this Plan and the occurrence of the Effective Date is that the Confirmation Order shall be a Final Order in form and substance reasonably satisfactory to the Plan Proponents.

## XIII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall not be limited under this Plan and the Bankruptcy Court's jurisdiction shall apply to the fullest extent possible under applicable law.

## XIV.

## MODIFICATION OR WITHDRAWAL OF PLAN

**14.1 Modification of Plan.**

At any time prior to confirmation of this Plan, the former Debtor(s) may supplement, amend or modify this Plan. After confirmation of this Plan, the Debtors or Plan Trustee may (x) apply to the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify this Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in this Plan or to reconcile inconsistencies in this Plan.

**14.2 Nonconsensual Confirmation.**

In the event that any impaired Class of Claims or Interests shall fail to accept this Plan in accordance with Section 1129(a)(8) of the Bankruptcy Code, Plan Proponents (i) may request that the Bankruptcy Court confirm this Plan in accordance with Section 1129(b) of the Bankruptcy

Code, and (ii) in accordance with Section 16.1 of this Plan, and may modify this Plan in accordance with Section 1127(a) of the Bankruptcy Code.

## XV.

## MISCELLANEOUS

**15.1 Payment of Statutory Fees.**

All quarterly fees due and payable to the Office of the United States Trustee pursuant to Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the Bankruptcy Code. The Plan Trustee shall remain responsible for timely payment of quarterly fees due and payable after the Effective Date and until the Debtors' Cases are closed, to the extent required by Section 1930(a)(6) of title 28 of the United States Code.

**15.2 Payment Dates.**

Whenever any payment or distribution to be made under this Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

**15.3 Headings.**

The headings used in the Disclosure Statement and in this Plan are inserted for convenience only and neither constitutes a portion of the Disclosure Statement or this Plan nor in any manner affect the construction of the provisions of the Disclosure Statement or this Plan.

**15.4 Other Documents and Actions.**

The Plan Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

**15.5 Notices.**

All notices and requests in connection with the Disclosure Statement and this Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

**To the Plan Proponents:**
Bruce V. Cook
General Counsel
Authorized Agent of the Plan Proponents
2392 Morse Ave
Irvine, CA 92614-6234

**With copies to:**
Paul J. Couchot
Winthrop & Couchot, Professional Corporation
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record. Any such Person may designate in writing any other address for purposes of this Section 21.5, which designation will be effective on receipt.

**15.6 Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of law rules) shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

**15.7 Binding Effect.**

This Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Plan Sponsor Debtors, the Plan Trustee, Holders of Claims, Holders of Interests, and their respective successors and assigns.

**15.8 Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

**15.9 Severability of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to

constitute grounds for denying confirmation of this Plan, the Bankruptcy Court shall, with the consent of the Debtors, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted. Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of this Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

**15.10 No Waiver.**

The failure of the Debtors or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Committee(s)', the Debtors' or the Plan Trustee's right to object to or examine such Claim, in whole or in part.

**15.11 Inconsistencies.**

In the event the terms or provisions of the Disclosure Statement are inconsistent with the terms and provisions of this Plan or documents executed in connection with this Plan, the terms of this Plan shall control.

**15.12 Exemption from Certain Transfer Taxes and Recording Fees.**

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to the Plan Trust or to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property or of any other interest in such property (including, without limitation, a security interest) will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**15.13 Post-Confirmation Status Report.**

Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Unless otherwise ordered, further status reports shall be filed every 180 days and served on the same entities.

**15.14 Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after this Plan is confirmed, if there is a default in performing this Plan. The Plan Trustee reserve the right to object to any motion for conversion or dismissal. If the Court orders any of the Cases converted to Chapter 7 after this Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant to this Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

**15.15 Final Decree.**

Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the Case of such Debtor.

Date: September 9, 2009

By: /s/Bruce Cook
Bruce Cook
Authorized Agent for the Voluntary Debtors

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive., 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as **DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 9, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On ______________________________ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 9, 2009 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 9, 2009 | Viann Corbin | [signature] |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

NEF SERVICE LIST

- Joseph M Adams jadams@sycr.com
- Raymond H Aver ray@averlaw.com
- James C Bastian jbastian@shbllp.com
- John A Boyd fednotice@tclaw.net
- Brendt C Butler BButler@rutan.com
- Dan E Chambers dchambers@jmbm.com
- Shirley Cho scho@pszjlaw.com
- Vonn Christenson vrc@paynefears.com
- Vincent M Coscino emurdoch@allenmatkins.com
- Paul J Couchot pcouchot@winthropcouchot.com, pj@winthropcouchot.com
- Jonathan S Dabbieri dabbieri@shlaw.com
- Ana Damonte ana.damonte@pillsburylaw.com
- Melissa Davis mdavis@shbllp.com
- Daniel Denny ddenny@gibsondunn.com
- Caroline Djang crd@jmbm.com
- Donald T Dunning ddunning@dunningLaw.com
- Joseph A Eisenberg jae@jmbm.com
- Lei Lei Wang Ekvall lekvall@wgllp.com
- Richard W Esterkin resterkin@morganlewis.com
- Lisa Hill Fenning Lisa_Fenning@aporter.com, courtalert@dl.com
- Marc C Forsythe kmurphy@goeforlaw.com
- Alan J Friedman afriedman@irell.com
- Robert P Goe kmurphy@goeforlaw.com
- Eric D Goldberg egoldberg@stutman.com
- Kelly C Griffith bkemail@harrisbeach.com
- Asa S Hami ahami@morganlewis.com
- Michael J Hauser michael.hauser@usdoj.gov
- D Edward Hays ehays@marshackhays.com
- Michael C Heinrichs mheinrichs@omm.com
- Michelle Hribar mhribar@rutan.com
- Lawrence A Jacobson laj@cohenandjacobson.com
- Stephen M Judson sjudson@fablaw.com
- David I Katzen katzen@ksfirm.com
- Christopher W Keegan ckeegan@kirkland.com, emilee@kirkland.com;alevin@kirkland.com
- Irene L Kiet ikiet@hkclaw.com
- Mark J Krone mk@amclaw.com
- Leib M Lerner leib.lerner@alston.com
- Peter W Lianides pj@winthropcouchot.com
- Charles Liu cliu@winthropcouchot.com
- Kerri A Lyman klyman@irell.com
- Mariam S Marshall mmarshall@marshallramoslaw.com
- Robert C Martinez rmartinez@mclex.com
- Hutchison B Meltzer hmeltzer@wgllp.com
- Joel S. Miliband jmiliband@rusmiliband.com

- James M Miller jmiller@millerbarondess.com
- Louis R Miller smiller@millerbarondess.com
- Mike D Neue mneue@thelobelfirm.com, csolorzano@thelobelfirm.com
- Robert Nida Rnida@castlelawoffice.com
- Sean A Okeefe sokeefe@okeefelc.com
- Penelope Parmes pparmes@rutan.com
- Ronald B Pierce ronald.pierce@sdma.com
- Raymond A Policar hausermouzes@sbcglobal.net
- Cassandra J Richey cmartin@pprlaw.net
- Debra Riley driley@allenmatkins.com
- Martha E Romero Romero@mromerolawfirm.com
- William D Schuster bills@allieschuster.org
- Steven M Speier Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Michael St James ecf@stjames-law.com
- Todd L Turoci tturoci@aol.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- Jason Wallach jwallach@gladstonemichel.com
- Joshua D Wayser joshua.wayser@kattenlaw.com
- Christopher T Williams ctwilliams@venable.com, jcontreras@venable.com
- Marc J Winthrop pj@winthropcouchot.com
- David M Wiseblood dwiseblood@seyfarth.com
- Arnold H Wuhrman Wuhrman@serenitylls.com
- Dean A Ziehl dziehl@pszjlaw.com, dziehl@pszjlaw.com

E-Mail

Richard Pachulski – rpachulski@pszjlaw.com
Edward Soto - Edward.soto@weil.com
Carrolynn H.G. Callari – ccallari@Venable.com
Timothy J. Gorry - tgorry@Venable.com

Wayne Abb, Esq. - wayneabb@gmail.com
Atty for P. Volkerts – c.martin@pprlaw.net
Atty for Bond Safeguard & Lexon – mea@amclaw.com;

bcook@suncal.com
Palmdale Hills Property
and its related entities