UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                :

In re                             :   Chapter 11 Case No.

                                :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :   08-13555 (JMP)

                                :

               Debtors.         :   (Jointly Administered)

                                :

                                :

-----------------------------------------------------------x

### ORDER GRANTING THE DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE FOR AN ORDER ENFORCING THE AUTOMATIC STAY AGAINST AND COMPELLING PAYMENT OF POST-PETITION FUNDS BY SWEDBANK AB

Upon the motion, dated January 22, 2009 [Docket No. 6734] (the "Motion")[1], of

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases (together, the "Debtors"), pursuant to sections 105(a) and 362 of title 11 of the

United States Code (the "Bankruptcy Code"), for an order enforcing the automatic stay and

compelling the payment of funds deposited with Swedbank AB (publ) ("Swedbank") subsequent

to the Commencement of LBHI's chapter 11 case as more fully described in the Motion; and the

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided in accordance with the procedures set forth in the amended order entered February 13,

---

[1] All capitalized terms not defined herein shall have the meanings ascribed thereto in the Motion.

2009 governing case management and administrative procedures [Docket No. 2837] (the "Case Management Order") to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Creditors' Committee (the "Creditors' Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and upon the objection of Swedbank to the Motion dated February 3, 2009 [Docket No. 6976] (the "Objection"); and upon the Debtors' Reply in Further Support of the Motion dated April 9, 2010 [Docket No. 8196]; and a hearing having been held on April 14, 2010 to consider the relief requested in the Motion (the "Hearing"); for the reasons stated in the record at the Hearing and as will be supplemented by a written opinion of the Court, including written findings of fact and conclusions of law, in the event that Swedbank seeks to appeal; it is

ORDERED that the Motion is granted; it is further

ORDERED, FOUND AND DETERMINED that Swedbank's administrative freeze on Swedbank Account No. 17608, was and is a violation of the automatic stay with respect to all funds deposited and/or wired into Swedbank Account No. 17608 on and after the Commencement Date and Swedbank is directed to immediately release said administrative freeze; and it is further

ORDERED that Swedbank shall, by close of business on the next business day (i.e., Monday through Friday on days in which banks in New York and Sweden are open) following entry of this Order, transfer to LBHI all amounts deposited and/or credited to the Swedbank Account after the Commencement Date, plus any additional post-petition deposits or transfers into the Swedbank Account No. 17608 and all accrued interest, if any, thereon in

2

accordance with the wire instructions that have been provided or will be provided by LBHI; and

it is further

    ORDERED that Swedbank shall not take any action to restrict or prevent LBHI

from withdrawing any future post-petition deposits, credits or accrued interest in Swedbank

Account No. 17608.

Dated: New York, New York
  May 5, 2010

        *s/ James M. Peck*
        UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

FOR PUBLICATION

------------------------------------------------------- :

:   Chapter 11

In re                 :

:   Case No. 08-13555 (JMP)

LEHMAN BROTHERS HOLDINGS INC., et al.,   :

:   (Jointly Administered)

Debtors.            :

------------------------------------------------------- :

**MEMORANDUM DECISION GRANTING DEBTORS' MOTION PURSUANT
TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE FOR AN
ORDER ENFORCING THE AUTOMATIC STAY AGAINST AND
COMPELLING PAYMENT OF POST-PETITION FUNDS BY SWEDBANK AB**

WEIL, GOTSHAL & MANGES, LLP
*Attorneys for Debtors*
767 Fifth Avenue
New York, New York 10153

      Richard P. Krasnow, Esq.

SALANS
*Attorneys for Swedbank AB*
Rockefeller Center
620 Fifth Avenue
New York, New York 10020

      Claude D. Montgomery, Esq.

JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

## *Introduction*

Before the Court is a motion (the "Motion")[1] by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (together, the "Debtors") for entry of an order enforcing the automatic stay and compelling the payment of certain funds held by Swedbank AB ("Swedbank") in a general deposit account. This contested matter focuses attention on the continued viability of one of the Bankruptcy Code's most fundamental precepts -- the familiar requirement of section 553(a) of the Bankruptcy Code that a creditor may only exercise "setoff" against a debt owed to a debtor when "mutuality" exists between that debt and an obligation running to the creditor from the debtor. Without any relevant case support, Swedbank advances the argument that certain amendments made to the Bankruptcy Code in 2005, i.e., the amendment to section 560 and the enactment of section 561, somehow override section 553 and its bedrock principle of mutuality. A contractual right to setoff under derivative contracts does not change well established law that conditions such a right on the existence of mutual obligations. As stated below, Swedbank's argument fails, and the Debtors' Motion is granted.

## *Relevant Facts and Procedural History*

The facts underlying the present dispute are undisputed. Before the commencement of the Debtors' chapter 11 cases on September 15, 2008 (the "Commencment Date"), the Debtors had a longstanding relationship with Swedbank.

---

[1] Docket No. 6734.

2

LBHI maintained a general deposit account with Swedbank in Stockholm, Sweden (the "Swedbank Account").[2]  LBHI functioned as guarantor with respect to certain ISDA Master Agreements between Swedbank and LBHI affiliates,[3] and LBHI itself, though its UK Branch, was a party to an ISDA Master Agreement with Swedbank dated November 29, 2004 (together, the "ISDA Master Agreements").  *Id.*

Each of the ISDA Master Agreements defines an Event of Default to include bankruptcy, whereby a "Party [or] any Credit Support Provider of such party ... institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights." *See* Stenberg Decl. at p.4 (¶¶11-13); Stenberg Decl. at Ex. A-E (ISDA Master Agreements) at ¶5(a)(vii).  The ISDA Master Agreements further provide that the occurrence of such an Event of Default triggers the early termination of the ISDA Master Agreements.  Objection at pp.3-4 (¶¶ 10-13).  Early Termination, in turn, gives rise to a right to payment in favor of the party to the agreement that is then "in the money." *See id.* at p. 4(¶13); Stenberg Decl. at Ex. A-E (ISDA Master Agreements) at ¶6(e).  One of

---

[2] The account is identified as No. 17608 and is denominated in Swedish Krona.  *See* Declaration of Johan Stenberg In Support Of Swedbank's Objection To Debtors' Motion, Docket No.6978 (the "Stenberg Decl.") at p. 4(¶16).

[3] Specifically: (i) ISDA Master Agreement dated December 17, 1996 between Swedbank and Lehman Brothers Commercial Corp; (ii) ISDA Master Agreement dated December 30, 1997 between Swedbank and Lehman Brothers International (Europe), Inc.; (iii) ISDA Master Agreement dated October 8, 2003 between Swedbank and Lehman Brothers Finance, S.A.; and (iv) ISDA Master Agreement dated November 29, 2004 between Swedbank and Lehman Brothers Special Financing, Inc.  *See* Stenberg Decl. at pp. 2-3 (¶¶6-10).

the ISDA Master Agreements at issue in this proceeding contains a provision that grants Swedbank a right of setoff upon the occurrence of such an Event of Default.[4]

On the Commencement Date, the balance in the Swedbank Account was SEK 2,140,897.40 Swedish Krona. *See* Declaration of Adrian Teng In Support Of Debtors' Motion, Docket No. 6736 (the "Teng Decl.") at p. 2(¶5). Shortly after LBHI commenced its chapter 11 case, Swedbank placed an administrative freeze on the Swedbank Account, blocking the Debtors from withdrawing any amounts, but still allowing additional monies to be deposited and/or wired into the account. By November 12, 2009, the balance of the Swedbank Account had increased to SEK 84,906,363.85 Swedish Krona. As a consequence of post-petition deposits and/or wire transfers, the Swedbank Account held SEK 82,765,466.45 Swedish Krona (approximately $11.7 million) in funds credited to the Swedbank Account after the Commencement Date. *See* Teng Decl., at pp. 2-3 (¶¶5-6, 9).[5]

---

[4] *See* Stenberg Decl. Ex. E (ISDA Master Agreement with LBHI) at Schedule Part 5(b) ("In addition to any rights of set-off a party may have as a matter of law or otherwise, upon the occurrence of an Event of Default or an Additional Termination Event and the designation of an Early Termination Date pursuant to section 6 of this Agreement with respect to a party ('X'), the other party ('Y') will have the right (but not be obliged) without prior notice to X or any other person to setoff or apply any obligation of X owed to Y (and to any affiliate of Y) (whether or not matured or contingent and whether or not arising under this Agreement, and regardless of the currency, place of payment or booking office of the obligation) against any obligation of Y (and of any affiliate of Y) owed to X (whether or not matured or contingent and whether or not arising under this Agreement, and regardless of the currency, place of payment or booking office of the obligation").

[5] Swedbank and the Debtors disagree as to the amount of the pre-petition balance in the Swedbank Account, as well as the precise amount of funds deposited post-petition. Swedbank contends that the balance in the Swedbank Account on the Commencement Date totaled SEK 2,640,124.06, and that the funds deposited post-petition total SEK 82,266,239.79, a figure that is SEK 499,226.66 (approximately $71,000) smaller than the figure alleged by the Debtors. *See* Stenberg Decl. at p. 4(¶16). The Debtors have

On November 27, 2008, Swedbank informed LBHI that it intended to setoff indebtedness allegedly owed by LBHI to Swedbank against amounts on deposit in the Swedbank Account. *See* Sternberg Decl. at p. 4 (¶14). In response, LBHI contested Swedbank's asserted right to setoff and, by letter dated December 4, 2008, requested that Swedbank confirm that it would refrain from offsetting any alleged indebtedness against the funds held in the Swedbank Account. *See* Teng Decl. at p. 3 (¶7). Swedbank, in turn, responded by letter dated January 30, 2009, informing LBHI that it had placed an administrative freeze on the Swedbank Account because "the bank is owed additional amounts for which it may request the court to lift the automatic stay to permit setoffs against transactions which are not [otherwise] protected by the safe harbor provisions of the US Bankruptcy Code." *See* Teng Decl. at Exh. D. In its January 30th letter, Swedbank further "reserve[d] and retain[ed] the right to setoff against the account any claims in relation to qualified financial transactions under the safe harbor provisions or otherwise." *Id.*

Swedbank intends to exercise setoff and apply the approximately $11.7 million in funds held in the Swedbank Account against approximately $32 million[6] in claims against LBHI. Of this $32 million amount, approximately $13.9 million (in Swedish

---

reserved their rights to contest Swedbank's calculation of post-petition deposits at a later date. For purposes of the Motion, the Debtors have agreed to limit the relief sought to the SEK 82,266,239.79 amount offered by Swedbank. *See* Reply at p. 3n.2.

[6] Although Swedbank claims to be owed approximately $32 million from LBHI, Swedbank only filed proofs of claim in LBHI's chapter 11 case for a combined total face amount of approximately $18 million. *See* Debtors' Motion at n.1. The correct and appropriate value of Swedbank's claims, if any, against LBHI is not before the Court at this time. The Debtors dispute the merits of Swedbank's purported right of setoff and have reserved the right to object to or otherwise contest the amount or validity of Swedbank's claims at a later date.

5

Krona, approximately SEK 97.5 million) is an obligation of LBHI as either counterparty or guarantor under the ISDA Master Agreements, and the remaining $18,098,000 allegedly arises under a senior promissory note held by Swedbank. *See* Motion at pp. 4-5(¶¶13-14).

On January 22, 2010, the Debtors filed the Motion. On February 3, 2010, Swedbank objected to the Debtors' Motion (the "Objection").[7] On April 9, 2010, the Debtors filed a reply to the Objection.[8] Thereafter, on April 14, 2010, oral argument was presented on the Motion at a regularly scheduled omnibus hearing (the "Hearing"). At the Hearing, the Court granted Debtors' Motion and reserved the right to issue a memorandum decision. On April 21, 2010, Swedbank filed a motion and supporting memorandum of law for a stay pending appeal (the "Motion for Stay").[9] On April 30, 2010, the Debtors filed an objection to the Motion for Stay.[10] On May 4, 2010, Swedbank filed a reply in support of its Motion for Stay.[11]

---

[7] Docket No. 6976.

[8] Docket No. 8196.

[9] Docket No. 8564; 8567 (Declaration of Johan Stenberg In Support Of Motion For Stay) ("Second Stenberg Declaration"). To the extent that the Second Stenberg Declaration contains facts not previously included in the Stenberg Declaration filed in support of its Objection, such new facts should not be included in the record on appeal. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (Bankr. S.D.N.Y. 2008) (holding post-hearing evidence inadmissible because "if an item was not considered by the court, it should be stricken from the record on appeal"). The Court notes that the Motion for Stay includes legal arguments that were not made at the time of the Hearing and that should not be part of the record on appeal.

[10] Docket No. 8740.

[11] Docket No. 8782. A hearing on the Motion for Stay is scheduled for May 6, 2010.

*Discussion*

In the Motion, Debtors argue that Swedbank should not be permitted to offset the funds in the Swedbank Account, and that Swedbank's administrative freeze of funds in the Swedbank Account violates the automatic stay, because the funds are comprised of post-petition deposits that lack the requisite mutuality with LBHI's alleged pre-petition indebtedness. *See* Motion at p. 2 (¶2). Swedbank insists that the automatic stay does not prohibit it from setting off against LBHI's funds in the Swedbank Account because Swedbank has a contractual right of setoff under the ISDA Master Agreements that qualifies under the Bankruptcy Code safe harbors of sections 560 and 561.[12]

**A.    *No mutuality exists to permit the setoff of funds in the Swedbank Account***

The Bankruptcy Code does not establish an independent right of setoff, but section 553 does preserve any right of setoff that may exist under applicable non-bankruptcy law. *Official Comm. of Unsecured Creditors v. Manufacturers & Traders Trust Co. (In re Bennett Funding Group)*, 146 F.3d 136, 138-39 (2d Cir. 1998). Section 553(a) of the Bankruptcy Code states, in relevant part:

---

[12] At the outset, it must be noted that the parties' briefs present an additional and conceptually distinct legal argument not dealt with in this ruling -- specifically, whether the "safe harbors" of sections 560 and 561 of the Bankruptcy Code permit Swedbank to exercise a right of setoff with respect to funds in a general deposit account that was not identified as arising under a swap agreement. As stated on the record at the conclusion of the Hearing, it is unnecessary to rule on this issue at this time. The parties elected not to emphasize this aspect of their dispute at the Hearing, and the Court's decision does not require consideration of this discrete legal issue. Notably, this issue has been fully briefed in another matter currently before the Court involving setoff disputes between Lehman and Bank of America, and the Court will address that issue at the time of adjudication of this other litigation. *See Bank of America, N.A. v. Lehman Bros. Holdings Inc. et al.*, Adv. Pr. No. 08-01753.

7

> Except as otherwise provided in this section and in sections
> 362 and 363 of this title, this title does not affect any right
> of a creditor to offset a mutual debt owing by such creditor
> to the debtor that arose before the commencement of the
> case under this title against a claim of such creditor against
> the debtor that arose before the commencement of the
> case...

11 U.S.C. 553(a). Therefore, the following prerequisites must be satisfied to be eligible for setoff under section 553 of the Bankruptcy Code: "(1) the amount owed by the debtor must be a prepetition debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the debtor's claim against the creditor and the debt owed the creditor must be mutual." *In re Lehman Bros. Holdings, Inc.*, 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009) (quoting *In re Bousa Inc.*, 2006 WL 2864964, *3 (Bankr. S.D.N.Y. Sept. 29, 2006)). Mutuality, in turn, exists when "the debts and credits are in the same right and are between the same parties, standing in the same capacity." *Scherling v. Hellman Elec. Corp. (In re Westchester Structures)*, 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995).

Here, mutuality is lacking because the funds in the Swedbank Account were deposited post-petition, while LBHI's indebtedness to Swedbank arose pre-petition under the ISDA Master Agreements. The Court's decision in another setoff dispute is on point and deals with the essential element of mutuality. *See In re Lehman Bros. Holdings, Inc.*, 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009) (finding no mutuality between LBHI's alleged pre-petition debts to DnB Nor Bank ("DnB Nor") and the funds credited to LBHI's DnB account post-petition). That opinion explicitly dealt with setoff as it applies to post-petition funds deposited in a bank account and concerned the timing of receipt and posting of a wire transfer. When compared with the situation presented in DnB Nor, the mutuality issue presented by Swedbank is not even a close question of fact or law. *See*

8

*id.* Here, all parties agree that the funds in the Swedbank Account were deposited after the Commencement Date. As such, mutuality does not exist because "mutuality requires that funds must be held in [the debtor's] account prior to commencement of [the debtor's] bankruptcy in order for a [creditor] to be able to exercise the right of setoff." *Id.* at 761. Plainly, the mutuality requirement of section 553 precludes a creditor-bank from offsetting a debtor's pre-petition obligations against funds deposited with the creditor-bank post-petition. *See id.* at 758-61; *In re Orr*, 234 B.R. 249, 254-55 (Bankr. N.D.N.Y. 1999) (held, wages deposited in bank account post-petition not subject to setoff).

**B.    *Bankruptcy Code sections 560 and 561 do not nullify the mutuality requirement of section 553(a)***

Swedbank itself acknowledges, as it must, that mutuality does not exist between LBHI's alleged pre-petition indebtedness and the funds deposited in the Swedbank account after the Commencement Date.    Hearing Tr. at p.49:22-24 ("It is also unquestioned that we are dealing with both pre- and post- petition deposits in connection with this setoff dispute"). However, it is Swedbank's position that this seemingly fatal flaw does not matter. Swedbank contends that the mutuality requirement of section 553 is rendered inapplicable by the safe harbor provisions of sections 560 and 561 of the Bankruptcy Code. *See* Objection at p. 10(¶31). According to Swedbank, the reference in section 560 that permits a derivative-contract counterparty to exercise "any" contractual right notwithstanding the automatic stay should permit Swedbank to exercise its contractual right to setoff arising from the ISDA Master Agreement, notwithstanding the undisputed lack of mutuality under section 553. *See* Objection at p. 7(¶23). Swedbank's self-interested interpretation of the relevant provisions of the Bankruptcy Code is without precedent and unsupported by a fair reading of the textual language.

9

The automatic stay is one of the fundamental protections afforded to debtors under the Bankruptcy Code. *Midatlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986). It "is intended to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *SEC v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000). A creditor's refusal to pay amounts owed to a debtor constitutes a violation of the automatic stay.

Nonetheless, certain limited statutory exceptions are available. The so-called safe harbor exceptions are among them, and they were amended by Congress in 2005. Section 560 of the Bankruptcy Code was amended to provide that:

> The exercise of *any contractual right* of any swap participant ... to offset or net out any termination values or payment amounts arising under or in connection with the termination, liquidation, or acceleration of one or more swap agreements *shall not be stayed, avoided, or otherwise limited by operation of any provision of this title* or by order of a court or administrative agency in any proceeding under this title.

11 U.S.C. § 560(a) (emphasis added). In addition, Congress added section 561, which provides that:

> The exercise of *any contractual right* ... to cause the termination, liquidation, or acceleration of or to offset or net termination values, payment amounts, or other transfer obligations arising under or in connection with one or more ... (5) swap agreements ... *shall not be stayed, avoided, or otherwise limited by operation of any provision of this title* or by any order of a court or administrative agency in any proceeding under this title.

11 U.S.C. § 561(a) (emphasis added).

By their plain terms, these safe harbor provisions do not alter the axiomatic principle of bankruptcy law, codified in section 553, requiring mutuality in order to

exercise a right of setoff. These safe harbor provisions simply do not directly address the requirement of mutuality under section 553(a). Instead, these exceptions permit the exercise of a contractual right of offset in connection with swap agreements, notwithstanding the operation of any provision of the Bankruptcy Code that could operate to stay, avoid or otherwise limit that right, but that right must exist in the first place. Given the silence of the safe harbor provisions with respect to the mutuality requirement of section 553(a), the Court declines to read an exception into the statute. *See U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) ("the plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters").

Recognizing that the safe harbor provisions do not directly address section 553(a), Swedbank argues that these provisions implicitly override the mutuality requirement. *See* Hearing Tr. at p.56:1- 57:13. According to Swedbank, the theoretical underpinning behind the requirement of pre-petition mutuality, which Swedbank characterizes as the "well-established fiction that the debtor changes on the petition date," is irrelevant when dealing with setoff under safe harbored derivative contracts in light of the language dealing with the application of the automatic stay. *See* 11 U.S.C. § 560 ("... shall not be stayed ... or otherwise limited by operation of any provision of this title"); Hearing Tr. at p.53:12-18; 56:23-57:13.

In its proposed interpretation, Swedbank disregards the plain language of section 553(a), which expressly memorializes the pre- and post-petition distinction, independent of the so-called "fiction" regarding the newly created debtor-in-possession. *See* 11 U.S.C. § 553(a) ("...any right of a creditor to offset a mutual debt owing by such creditor

11

to the debtor that arose *before the commencement of the case* ... against a claim of such creditor against the debtor that arose *before the commencement of the case...* "). Swedbank's argument also ignores the fact that section 553 itself delineates a number of specific exceptions to section 553(a)(1) -- and setoff under safe harbored derivative contracts is not one of them. *See* 11 U.S.C. §§ 553(a)(2)(B)(ii), 553(a)(3)(C), 553(b)(1). Accordingly, the Court disagrees with Swedbank's strained reading of the Bankruptcy Code and is unable to find an implicit exception when the statute already lists a number of specific ones. *See U.S. v. LaPorta*, 46 F.3d 152, 156 (2d Cir. 1994) (it is a "long-standing principle[s] of statutory construction" that "a general section of a statute must give way to a specific one").

Moreover, the case law on which Swedbank relies in support of its reading of an implicit exception to the mutuality requirement does not apply to a fair reading of the requirements of section 553. Contrary to Swedbank's contentions, the statements of the United States Supreme Court in *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513 (1984) do not relate directly or indirectly to the interpretation of the plain meaning of section 553. For purposes of any right to setoff permitted under section 553, mutuality is baked into the very definition of setoff. As such, the right arising under the ISDA Master Agreements necessarily must be congruent with the concept of netting pre-petition claims. To require that the offsetting balances are mutual does not stay, avoid, or limit the right to offset because the right only exists in bankruptcy when there is mutuality.

Swedbank's reliance on *In re Weisberg*, 136 F.3d 655 (9th Cir. 1998) does not alter this analysis. *See* Motion For Stay at pp.11-12. The court in *Weisberg* expressly found that mutuality did in fact exist to permit setoff of two pre-petition debts. *Weisberg*,

12

136 F.3d at 658 ("At the time the bankruptcy petition was filed, any such claim against Shearson was unmatured ... however, it would appear that such an unmatured claim could form the basis of a 'debt' for setoff purposes... it does not appear the BAP erred in concluding mutual, pre-existing debts existed ..."). Moreover, even if *Weisberg* stood for the proposition cited by Swedbank, which it does not, the authority is neither binding nor persuasive precedent.

Swedbank's reading of sections 560 and 561 also improperly conflates the "shall not be stayed... by operation of any provision of this title" language with the commonly-used phrase "notwithstanding any other provision of law." *See* Motion For Stay at p. 10. It is true, as Swedbank points out, that the phrase "notwithstanding any other provision of law" has consistently been interpreted as written by courts. *See Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) (noting that courts "have interpreted similar 'notwithstanding' language ... to supercede all other laws") (internal quotes omitted). But the Court must honor the plain language of the safe harbor provisions, which, by their terms, do *not* contain such a blanket "notwithstanding" clause. *See U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) ("the plain meaning of legislation should be conclusive..."). Instead, the language in the safe harbor provisions relied on by Swedbank renders the automatic stay inapplicable in the context of safe harbored contracts -- the central purpose of the safe harbor provisions -- and does not eliminate the mutuality requirement of section 553(a).

Congress enacted sections 560 and 561 well after section 553 had become established as the statutory basis for permitting setoff in bankruptcy and with full knowledge of that section's mutuality requirement. If Congress had intended to establish

13

a plainly worded exception to the rule limiting setoff to mutual pre-petition claims, it would have done so explicitly. *See FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 132-33 (2d Cir. 1992) (stating that Congress will "expressly designate the provisions whose application it wishes to suspend, rather than leave that consequence to the uncertainties of implication compounded by the vagaries of judicial construction").

### C.    *Legislative history confirms that sections 560 and 561 do not override the mutuality requirement of section 553(a)*

An examination of the legislative history surrounding the enactment of the safe harbor provisions, while unnecessary due to their plain language, nonetheless confirms that the enactment of sections 560 and 561 has done nothing to alter the mutuality requirement found in section 553(a).  Indeed, by means of the safe harbor provisions, Congress sought to allay concerns that "the termination and setoff of a swap agreement would be automatically stayed when one of the parties files a bankruptcy petition," and that a trustee, "after indefinitely postponing termination of the swap agreement, could refuse setoff and unfairly 'cherry pick' only the portions of the agreement advantageous to the debtor, while rejecting the portions unfavorable to the debtor." Act of June 25, 1990, H.R. Rep. 101-484, 3, *as reprinted in* 1990 U.S.C.C.A.N. at 225 (also available at 1990 WL 92539 (1990)).  The safe harbor provisions are thus intended to permit parties to swap agreements to exercise the right to "offset or net termination values" despite the automatic stay and without having to seek relief from the stay.  These exceptions do not repeal or nullify the basic legal precepts that govern the right to setoff in bankruptcy cases, nor do they authorize a party to a swap agreement to effectuate a setoff without satisfying the underlying requirements for such a setoff (i.e., mutuality).

14

Swedbank argues that the 2005 amendments to section 553 "explicitly exclude" from the mutuality requirement "transactions or setoff subject to the provisions of Sections 555, 556, 559, 560, and 561..." *See* Objection at p.7 (¶23). Swedbank's argument is unpersuasive. The language of section 553(a) begins with the concept of mutuality. *See* 11 U.S.C. 553(a) ("Except as otherwise provided in this section ..., this title does not affect any right of a creditor to offset *a mutual debt* ... ") (emphasis added). Congress in 2005 simply amended three discrete subsections of section 553 -- subsections 553(a)(2)(B)(ii), (a)(3)(C), and (b)(1) -- to ensure that a creditor's acquisition of or exercise of setoff rights in connection with a safe harbored contract during the preference period could not be avoided as a preference. *See* H. Rpt. No. 109-31, Pt. 1, 109th Cong., 1st Sess. 134 (2005) ("... amends section 553 of the Bankruptcy Code to clarify that the acquisition by a creditor of setoff rights in connection with swap agreements, repurchase agreements, securities contracts, forward contracts, commodity contracts and master netting agreements cannot be avoided as a preference").

For example, section 553(a)(2)(B) disallows the setoff of a claim, even if such setoff would otherwise be valid, when the claim was transferred to the creditor during the preference period. As amended, this disallowance no longer applies with respect to a creditor's claim arising under a safe harbored contract. *See* 11 U.S.C. § 553(a)(2)(B)(ii) ("...this title does not affect any right of a creditor to offset a mutual debt .... except to the extent that – ... (2) such claim was transferred, by an entity other than the debtor, to such creditor (A) after the commencement date; or (B) (i) after 90 days before the date of the filing of the petition; and (ii) while the debtor was insolvent ....*except for a setoff of a kind described in section ... 560 or 561...*") (as amended)(emphasis added). Plainly,

15

then, the 2005 amendments to section 553 with respect to sections 560 and 561 are narrow and leave intact the mutuality requirement of section 553(a). Such an interpretation dovetails with common sense. If Congress had intended to eliminate the mutuality requirement of section 553(a), it would have done so directly and with clarity.

Similarly, Swedbank bestows unwarranted significance on the fact that the amendments to section 560 and 561 do not distinguish between pre- and post-petition obligations. Swedbank argues that the reference in the amended safe harbor provisions to a contractual right of setoff, without any differentiation between pre- and post-petition obligations, somehow signifies an intention to exempt safe harbored contracts from the mutuality requirement of section 553(a). *See* Objection at p. 7(¶23) ("First, sections 560 and 561 do not contain any language which limits netting or setoff of obligations relating to safe harbor transactions between pre- and post-petition obligations ... by way of contrast, where the Bankruptcy Code contemplates differentiating between pre- and post-petition obligations, it does so specifically"). This reading of sections 560 and 561 fails to take into account the plain meaning of section 553(a).

Finally, the legislative history surrounding the enactment by Congress of the Financial Netting Improvement Act of 2006, Pub. L. No. 109-360 (2006) ("FNIA") does not support Swedbank's argument that the amendments removed the requirement of mutuality from the automatic stay exceptions found in section 362(d) of the Bankruptcy Code. Swedbank submits that the amendments to FNIA, which replaced the phrase "mutual debt and claim" in sections 362(b)(6), (b)(17), and (b)(27) with "any contractual right," effectively removed the mutuality requirement from the safe-harbored exceptions to the automatic stay. Motion for Stay at pp. 13-15. The legislative history of FNIA

16

reveals that Congress intended merely to make "technical changes to the netting and financial provisions" of the Bankruptcy Code to "update the language to reflect current market and regulatory practices." *See* H.R. Rep. No. 109-648, available at 2006 WL 6165926, at *1587 (2006). These technical amendments cannot be read as authority for so fundamental a change in creditor rights.

### D.    Swedbank's administrative freeze violates the automatic stay

The Debtors request an order directing Swedbank to immediately comply with the automatic stay by releasing its administrative freeze and compelling Swedbank to pay to LBHI all funds deposited and/or wired into the Swedbank Account after the Commencement Date. *See* Debtors' Motion at p. 11 (¶27).

Nothing is more basic to bankruptcy law than the automatic stay and nothing is more important to fair case administration than enforcing stay violations. The fact that this violation is predicated on a previously untested reading of the safe harbor provisions does not excuse conduct that amounts to a taking of property of the estate.

This Court has the power to protect a debtor's estate, and thereby ensure the equitable treatment of creditors, by enforcing the automatic stay. Indeed, even where a valid right of setoff may exist, a creditor-bank must immediately move for relief from the automatic stay rather than to freeze the account indefinitely. *See In re Adomah*, 340 B.R. 453, 458-59 (Bankr. S.D.N.Y. 2006) (finding violation of automatic stay where bank imposed indefinite administrative freeze over debtor's bank account, including post-petition deposits, and failed to move for relief from the automatic stay). Swedbank has not moved for relief from the stay, despite having implemented its administrative freeze shortly after the Commencement Date. Swedbank's failure to comply with section 362 of the Bankruptcy Code is particularly troublesome in light of the fact that it is well aware

that mutuality does not exist here. The indefinite administrative freeze is unjustified and constitutes a continuing violation of the automatic stay. Accordingly, Swedbank shall immediately release its administrative freeze and return to LBHI all funds held in the Swedbank Account that were deposited after the Commencement Date.

### *Conclusion*

Notwithstanding Swedbank's arguments to the contrary, section 553 and the safe harbor provisions are entirely consistent provisions of the Bankruptcy Code. Sections 560 and 561 preserve contractual rights of setoff for mutual pre-petition obligations -- essentially assuring the nondebtor swap counterparty that the advent of bankruptcy will not frustrate pre-petition commercial expectations relating to setoff and netting. But these sections do not improve the position of a nondebtor counterparty beyond its pre-petition commercial expectations. The contractual rights of parties are to be respected and enforced, but that does not justify overriding applicable bankruptcy jurisprudence. This is especially true in the case of mutuality, which is such an essential and well understood aspect of bankruptcy practice.

For this reason, the Court rejects Swedbank's self-serving attempt to hold itself out as a representative of the swap industry. Its position in this contested matter is highly unusual. Rather than seeking to protect rights in existing collateral, Swedbank is seeking to take advantage of its good fortune as recipient of post-petition funds. Such an incremental recovery is more than any swap counterparty reasonably should expect. Instead of upholding the legitimate commercial expectations of derivative contract counterparties, a finding for Swedbank on this issue would result in a windfall to Swedbank to the detriment of other creditors.

For the reasons stated, the Debtors' Motion is granted.  The Court will enter the

Debtors' proposed order concurrently herewith.


Dated: New York, New York
       May 5, 2010

                              s/ James M. Peck
                              UNITED STATES BANKRUPTCY JUDGE

19