i

relevant Seller Guarantee. From and after the Closing, Purchaser shall not permit any Contract to which a Seller Guarantee relates to be renewed, extended, amended or modified unless the Purchaser obtains and delivers to Seller the related Guarantee Release duly executed by the beneficiaries of the related Seller Guarantee.

8.13   Transition Services. The Purchaser and Seller shall use commercially reasonable efforts to enter into a Transition Services Agreement in a form reasonably acceptable to Seller and Purchaser in order for each of Seller and Purchaser to continue to receive the services provided between LBI and LBHI on the Closing Date.

8.14   Subleases.

(a)   For the leased premises located in 555 California Street, San Francisco, CA, Seller shall sublet to Purchaser pursuant to a sublease agreement (the "Seller Sublease"), reasonably acceptable to both Purchaser and Seller and subject to the terms of the applicable underlying lease, a portion of the demised premises in such location subject to the terms of the applicable lease and obtaining the landlord's consent to the Sublease or Bankruptcy Court approval. Purchaser shall bear its portion of the occupancy cost for such location based on the relative square footage sublet. Seller and Purchaser shall enter into the Seller Sublease at Closing to memorialize the provisions of this Section.

(b)   For the leased premises located in 125 High Street, Boston, MA, 190 S. LaSalle Street, Chicago, IL and 10250 Constellation Boulevard, Los Angeles, CA Seller shall assume such leases in connection with Seller's bankruptcy proceedings and assign such leases to Purchaser. Purchaser shall then sublet to Seller or a designee of Seller, in either event with credit reasonably acceptable to Purchaser, pursuant to three separate subleases (each, a "Purchaser Sublease", collectively the "Purchaser Subleases"), reasonably acceptable to both Purchaser and Seller and subject in all cases to the terms of the underlying lease, a portion of the demised premises in such locations shall be subject to obtaining the landlord's consent to each Sublease or Bankruptcy Court approval. Seller shall bear its portion of the occupancy cost for each such location based on the relative square footage sublet. Seller and Purchaser shall enter into each Sublease at Closing to memorialize the provisions of this Section.

8.15   Landlord Notice. Seller shall give notice, on the date hereof , to Rock-Forty-Ninth LLC in accordance with the terms of the 745 Seventh Ground Lease, regarding the transactions contemplated hereunder and shall provide Rock-Forty-Ninth LLC with the appropriate bankruptcy filings in order to provide adequate notice thereof under applicable Law.

8.16   Artwork. Purchaser shall have the right to possess, for a period of one-year after the closing, all of the artwork at the Seller's headquarters located at 745 Seventh Avenue, New York, New York. At any time during such period, Purchaser shall have the option to purchase any or all of the artwork for a price equal to its appraised value (as

i

determined by an independent, recognized appraiser). To the extent Purchaser does not exercise such option on any or all of the artwork by the first anniversary of the Closing, the Purchaser shall return such artwork to the Seller.

## ARTICLE IX

## EMPLOYEES AND EMPLOYEE BENEFITS

9.1     Employee Benefits,

(a)     Effective as of the Closing Date, Purchaser shall, or shall cause one of Purchaser's Subsidiaries to, continue to employ (where employment continues or is transferred to Purchaser or a Subsidiary of Purchaser automatically by operation of Law), or offer employment to (where employment does not continue or transfer automatically by operation of Law), each Offeree. For purposes of this Agreement, the term "Offeree" means each active employee employed primarily in connection with the Business at the Closing, other than such employees who are identified by Purchaser to Seller prior to Closing, such identified persons shall not include any person who is in the targeted population referred to in Section 10.1(b). Each Offeree who accepts Purchaser's or one of its subsidiaries' offer of employment, together with each person whose employment transfers to Purchaser or a subsidiary of Purchaser automatically by operation of law, shall be referred to herein as a "Transferred Employee." Each Person who is not a Transferred Employee shall be referred to herein as an "Excluded Employee". An Offeree who performs work at his then applicable place of employment on the first Business Day immediately following the Closing shall be deemed for all purposes of this Agreement to have accepted Purchaser's or one of its subsidiaries' offer of employment and shall be deemed to be a Transferred Employee for all purposes of this Agreement.

(b)     Without limiting any additional rights that each Transferred Employee may have, Purchaser shall, or shall cause its Subsidiaries, for a period commencing at the Closing and ending on December 31, 2008, to provide to each Transferred Employee whose employment is terminated during such period by the Purchaser by reason of a "reduction in force" or a "job elimination" (as those terms are customarily applied in good faith, consistent with past practice) severance payments and benefits at levels that are no less favorable than such levels as the Transferred Employee would have been entitled to receive pursuant to the provisions of the Seller's severance plans or agreements covering such Transferred Employee as in effect immediately prior to the Closing. Nothing contained in this Section 9.1 or elsewhere in the Agreement shall be construed to prevent, from and after the Closing, the termination of employment of any individual Transferred Employee or any change in the employee benefits available to any Transferred Employee.

34

08-13555-mg   Doc 28428   Filed 05/06/10   Entered 05/06/10 15:04:26   Docs #1
Case 1:09-cv-09228-NRB   Document 1-2   Filed 04/07/10   Page 3 of 25
Notice of Removal part 2    Pg 3 of 25

i

       (c)     On or after the Closing, Purchaser shall, or shall cause its Subsidiaries to, pay each Transferred Employee an annual bonus ("08 Annual Bonuses"), in respect of the 2008 Fiscal Year that, in the aggregate, are equal in amount to 100 percent of the bonus pool amounts accrued in respect of amounts payable for incentive compensation (but not base salary) and reflected on the financial schedule delivered to Purchaser on September 16, 2008 and initialed by an officer of each of Holdings and Purchaser (the "Accrued 08 FY Liability"). Such 08 Annual Bonuses shall be awarded on or before March 15, 2009 in such forms and proportions as are consistent with Purchaser's customary practices, so that the aggregate amount awarded shall equal the Accrued 08 FY Liability. Any amounts that would have been allocated in respect of any Transferred Employee who voluntarily terminates employment before such award is made shall instead be allocated among the remaining Transferred Employees (who include, for this purpose, those Transferred Employees who are terminated without cause by Purchaser or its affiliates prior to the time the awards are made) (collectively, the "Remaining Transferred Employees"). However, the Accrued 08 FY Liability shall be reduced if, prior to the time such awards are made, both (x) 10% of the Transferred Employees have voluntarily terminated their employment with the Purchaser and (y) such terminated Transferred Employees would have been expected to receive at least 10% of the 08 Annual Bonuses had no such Transferred Employee's employment in fact terminated. In that case, Purchaser may adjust the Accrued 08 FY Liability proportionately from its initial level, in the same proportion as the reduction in Transferred Employees below 90% of the initial number of Transferred Employees compared to 90% of the initial number of Transferred Employees, in a good faith and reasonably equitable manner to account for the Transferred Employees to whom 08 Annual Bonuses will not be payable, and thereby to reduce the aggregate 08 Annual Bonuses. Any such reduction shall take into account the length of service, seniority within the Business and contribution of the Remaining Transferred Employees, relative to the allocation of the Accrued 08 FY Liability, in accordance with the principles enumerated herein.

## ARTICLE X

## CONDITIONS TO CLOSING

     10.1   Conditions Precedent to Obligations of Purchaser. The obligation of Purchaser to consummate the transactions contemplated by this Agreement is subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser in whole or in part to the extent permitted by applicable Law):

       (a)     Seller shall have performed and complied in all material respects with all obligations and agreements required in this Agreement to be performed or complied with by it prior to the Closing Date, and Purchaser shall have received a certificate signed by an authorized officer of Seller, dated the Closing Date, to the forgoing effect;

35

08-13555-mg    Doc 28428    Filed 05/06/10    Entered 05/06/10 15:04:26    Doc #1
Case 1:09-cv-09228-NRB    Document 12    Filed 04/09/10    Page 4 of 25
Notice of Removal part 2    Pg 4 of 25

i

(b)    at least 70% of the U.S. and Canadian Persons identified by Seller and reasonably accepted by Purchaser, acting in good faith, not later than two Business Days after the date hereof as the targeted population are actively employed in the Business immediately prior to the Closing and as to whom management of Seller has made a good faith assessment that they will continue in employment with the Business as of the Closing Date;

(c)    the Bankruptcy Court shall have entered a final order permitting Seller to sell the premises at 745 Seventh Avenue, New York, New York to Purchaser;

(d)    the mortgage in favor of the Seller's Affiliate with respect to the premises at 745 Seventh Avenue, New York, New York shall have been fully repaid and extinguished;

(e)    Seller shall have delivered, or caused to be delivered, to Purchaser all of the items set forth in Section 4.2;

(f)    Purchaser shall have obtained confirmation from the SEC and CFTC that Purchaser will be eligible, following the Closing, to compute its net capital under Appendix E to SEC Rule 15c3-1 and adjusted net capital in accordance with the provisions of CFTC Rule 1.17(c)(6);

(g)    Purchaser shall have obtained from the SEC confirmation reasonably satisfactory to Purchaser regarding (i) the transition period during which Purchaser will be permitted to come into compliance with the consolidated holding company supervisory framework applicable to ultimate holding companies that have a principal regulator under SEC Rule 15c3-1e and g, and (ii) the scope of the deference to be extended by the SEC to the Federal Reserve and/or the home country consolidated supervisor of Purchaser's ultimate parent company in connection with the SEC's administration of the framework described in clause (i) of this subsection 10.1(g); and

(h)    the Sellers headquarters building at 745 Seventh Avenue, New York, New York shall be substantially habitable.

10.2    Conditions Precedent to Obligations of Seller. The obligations of Seller to consummate the transactions contemplated by this Agreement are subject to the fulfillment, prior to or on the Closing Date, of each of the following conditions (any or all of which may be waived by Seller in whole or in part to the extent permitted by applicable Law):

(a)    Purchaser shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by Purchaser on or prior to the Closing Date, and Seller shall have received a certificate signed by an authorized officer of Purchaser, dated the Closing Date, to the foregoing effect; and

36

08-13555-mg Doc 28428 Filed 05/06/10 Entered 05/06/10 15:04:26 Doc#1
Case 1:09-cv-09228-NRB Document 4-2 Filed 04/09/10 Page 5 of 25
Notice of Removal part 2 Pg 5 of 25

i

    (b)    Purchaser shall have delivered, or caused to be delivered, to Seller all of the items set forth in <u>Section 4.3</u>.

    10.3    <u>Conditions Precedent to Obligations of Purchaser and Seller</u>. The respective obligations of Purchaser and Seller to consummate the transactions contemplated by this Agreement are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser and Seller in whole or in part to the extent permitted by applicable Law):

    (a)    there shall not be in effect any Order by a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby;

    (b)    the Bankruptcy Court shall have entered the Breakup Fee and Competing Bid Order, in form and substance reasonably acceptable to Seller and Purchaser;

    (c)    the Bankruptcy Court shall have entered the Sale Order and any stay period applicable to the Sale Order shall have expired or shall have been waived by the Bankruptcy Court;

    (d)    LBI shall have commenced a case under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court; and

    (e)    Purchaser shall have obtained regulatory approval under the HSR Act and all other material regulatory, self-regulatory, exchange, clearing organization and governmental approvals, authorizations, waivers and/or licenses required to conduct the transferred Business following the Closing substantially in the manner as it was conducted immediately prior to the Closing and, after giving effect to the Closing (subject to such exceptions as shall not, in the aggregate, be material).

    10.4    <u>Frustration of Closing Conditions</u>. Neither Seller nor Purchaser may rely on the failure of any condition set forth in <u>Section 10.1</u>, <u>10.2</u> or <u>10.3</u>, as the case may be, if such failure was caused by such party's failure to comply with any provision of this Agreement.

ARTICLE XI

[RESERVED]

ARTICLE XII

TAXES

    12.1    <u>Transfer Taxes</u>. Purchaser shall be responsible for (and shall indemnify and hold harmless Seller and its directors, officers, employees, Affiliates, agents,

37

i

successors and permitted assigns against) any sales, use, stamp, documentary stamp, filing, recording, transfer or similar fees or taxes or governmental charges (including any interest and penalty thereon) payable in connection with the transactions contemplated by this Agreement ("Transfer Taxes"). Seller shall, however, seek to include in the Sales Order a provision that provides that the transfer of the Purchased Assets shall be free and clear of any stamp or similar taxes under Bankruptcy Code Section 1146(c). Seller and Purchaser shall cooperate and otherwise take commercially reasonable efforts to obtain any available refunds for Transfer Taxes.

12.2   Prorations. Seller and Purchaser shall enter into customary prorations for the Purchased Assets as of the Closing.

12.3   Purchase Price Allocation. Seller and Purchaser shall allocate the purchase price (including the Assumed Liabilities) among the Purchased Assets as specified in Schedule 12.3 and, in accordance with such allocation, Purchaser shall prepare and deliver to Seller copies of Form 8594 and any required exhibits thereto (the "Asset Acquisition Statement"). Purchaser shall prepare and deliver to Seller from time to time revised copies of the Asset Acquisition Statement (the "Revised Statements") so as to report any matters on the Asset Acquisition Statement that need updating (including purchase price adjustments, if any) consistent with the agreed upon allocation. The purchase price for the Purchased Assets shall be allocated in accordance with the Asset Acquisition Statement or, if applicable, the last Revised Statements, provided by Purchaser to Seller, and all income Tax Returns and reports filed by Purchaser and Seller shall be prepared consistently with such allocation.

12.4   Adjustment to Purchase Price. The parties agree that any payment made under this Article XII shall be treated by such parties as an adjustment to the Purchase Price.

## ARTICLE XIII

## MISCELLANEOUS

13.1   Expenses. Except as otherwise provided in this Agreement, each of Seller and Purchaser shall bear its own expenses incurred in connection with the negotiation and execution of this Agreement and each other agreement, document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby and thereby.

13.2   Injunctive Relief. Damages at law may be an inadequate remedy for the breach of any of the covenants, promises and agreements contained in this Agreement, and, accordingly, any party hereto shall be entitled to injunctive relief with respect to any such breach, including without limitation specific performance of such covenants, promises or agreements or an order enjoining a party from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained in

38

i

this Agreement. The rights set forth in this <u>Section 13.2</u> shall be in addition to any other rights which a Party may have at law or in equity pursuant to this Agreement.

13.3   <u>Submission to Jurisdiction; Consent to Service of Process</u>.

(a)   Without limiting any party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in <u>Section 13.7</u> hereof; <u>provided, however</u>, that if the Bankruptcy Case has closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in New York County or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court from any thereof, for the resolution of any such claim or dispute. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(b)   Each of the parties hereto hereby consents to process being served by any party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of <u>Section 13.7</u>.

13.4   <u>Waiver of Right to Trial by Jury</u>. Each party to this Agreement waives any right to trial by jury in any action, matter or proceeding regarding this Agreement or any provision hereof.

13.5   <u>Entire Agreement; Amendments and Waivers</u>. This Agreement (including the schedules and exhibits hereto), the transition services agreements, the Dip Facility, the Interim Support and Cooperation Agreement, Master Repurchase Agreement and the Confidentiality Agreement represent the entire understanding and agreement between the parties hereto with respect to the subject matter hereof. This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought. No action taken pursuant to this Agreement, including without limitation, any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by any party hereto of a breach of any provision of this

08-13555-mg   Doc 8842-3   Filed 05/06/10   Entered 05/06/10 15:04:26   Doc #1
Case 1:09-cv-09228-NRB   Document 10-2   Filed 04/09/10   Page 8 of 25
Notice of Removal part 2   Pg 8 of 25

i

Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

      13.6   Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and performed in such State.

      13.7   Notices. All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of receipt), (ii) when sent by facsimile (with written confirmation of transmission) or (iii) one business day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses and facsimile numbers (or to such other address or facsimile number as a party may have specified by notice given to the other party pursuant to this provision):

        If to Seller, to:

        Lehman Brothers Holdings Inc.
        745 Seventh Avenue
        New York, NY 10019
        Facsimile: (646) 758-4226
        Attention: Steven Berkenfeld, Esq.

40

08-13555-mg   Doc 8842-8   Filed 05/06/10   Entered 05/06/10 15:01:26   Doc #1
Case 1:09-cv-09228-RRB   Document 1-2   Filed 04/09/10   Page 9 of 25
Notice of Removal part 2   Pg 9 of 25

i

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Facsimile: (212) 310-8007
Attention:      Thomas Roberts
                Michael Lubowitz


and a copy (which shall not constitute notice) to:

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Facsimile:  (212) 455-2502
Attention:      John Finley
                Andrew Keller


If to Purchaser, to:

Barclays Capital Inc.
200 Park Avenue
New York, NY 10166
Facsimile: (212) 412-7519
Attention:      Jonathan Hughes, Esq.


With a copy to:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
Facsimile: (212) 225-3999
Attention:      Victor I. Lewkow
                David Leinwand
                Duane McLaughlin


and

Sullivan & Cromwell LLP
125 Broad St.
New York, NY 10004
Facsimile: (212) 558-3580
Attention:      Mitchell S. Eitel
                Jay Clayton


41

i

13.8  <u>Severability</u>.  If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party.  Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

13.9  <u>Binding Effect; Assignment</u>.  This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement except as provided below.  No assignment of this Agreement or of any rights or obligations hereunder may be made by either Seller or Purchaser (by operation of law or otherwise) without the prior written consent of the other parties hereto and any attempted assignment without the required consents shall be void, provided that Purchaser shall be entitled to assign its rights and obligations in whole or in part to its Affiliates or to designate its rights to acquire any assets hereunder to its Affiliates.  No assignment of any obligations hereunder shall relieve the parties hereto of any such obligations.  Upon any such permitted assignment, the references in this Agreement to Purchaser shall also apply to any such assignee unless the context otherwise requires.

13.10  <u>Non-Recourse.</u>  No past, present or future director, officer, employee, incorporator, member, partner or equityholder of Seller shall have any liability for any obligations or liabilities of Seller under this Agreement or the Seller Documents of or for any claim based on, in respect of, or by reason of, the transactions contemplated hereby and thereby.

13.11  <u>Counterparts.</u>  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

13.12  <u>Scope of Purchased Assets.</u>  This Agreement is not intended to convey and does not convey assets and liabilities from the non-U.S. and non-Canadian operations of Seller.

[*signature page follows*]

42

08-13555-mg    Doc 8842-3    Filed 05/06/10    Entered 05/06/10 15:01:26    Doc #1
Case 1:10-cv-03229-NRB    Document 2    Filed 04/19/2010    Page 11 of 25
Notice of Removal part 2    Pg 11 of 25

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first written above.

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Name: Steven Berkenfeld
Title: Vice President

LEHMAN BROTHERS INC.

By: _____
Name: Steven Berkenfeld
Title: Managing Director

LB 745 LLC

By: _____
Name:
Title:

BARCLAYS CAPITAL INC.

By: _____
Name: Gerard LaRocca
Title: Chief Executive Officer

Asset Purchase Agreement

**EXHIBIT C**

[Sale Order]

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*         :        **08-13555 (JMP)**
                                                    :
    **Debtors.**                                    :        **(Jointly Administered)**
                                                    :
————————————————————————x

### ORDER UNDER 11 U.S.C. §§ 105(a), 363, AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 6006 AUTHORIZING AND APPROVING (A) THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF LIENS AND OTHER INTERESTS AND (B) ASSUMPTION AND ASSIGNMENT OF <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

Upon the motion, dated September 17, 2008 (the "<u>Motion</u>"),[1] of Lehman Brothers

Holdings, Inc. ("<u>LBHI</u>") and LB 745 LLC ("<u>LB 745</u>"), as debtors and debtors-in-possession

(collectively, the "<u>Debtors</u>" and, together with their non-debtor affiliates, "<u>Lehman</u>") for orders

pursuant to 11 U.S.C. §§ 105, 363, 364(c)(1) and 365 and Fed. R. Bankr. P. (the "<u>Bankruptcy</u>

<u>Rules</u>") 2002, 6004, 6006 and 9014 (A) scheduling a final sale hearing (the "<u>Sale Hearing</u>") with

respect to that certain Asset Purchase Agreement, dated September 16, 2008, among the Debtors,

Lehman Brothers Inc. ("<u>LBI</u>" and, collectively with the Debtors, the "<u>Seller</u>") and Barclays

Capital, Inc. (the "<u>Purchaser</u>"), collectively with that First Amendment Clarifying Asset

Purchase Agreement dated September 19, 2008 and that letter agreement clarifying and

supplementing the Asset Purchase Agreement dated September 20, 2008 (as same may be

subsequently modified or amended or clarified, the "<u>Purchase Agreement</u>"); (B) establishing

sales procedures; (C) approving a break-up fee; and (D) authorizing and approving the sale of

---

[1]   Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the
      Agreement.

08-13555-mg   Doc 28942-3   Filed 05/06/10   Entered 05/06/10 15:01:26   Doc #1
Case 1:10-cv-03222-RJS   Document 2   Filed 04/19/2010   Page 14 of 25
Notice of Removal part 2    Pg 14 of 25

certain of the Seller's assets (the "Purchased Assets") free and clear of all liens, claims,

encumbrances and interests  and the assumption and assignment of certain prepetition executory

contracts and unexpired leases (the "Contracts") relating to the Purchased Assets  to the

Purchaser or the Successful Bidder(s); and upon the Court's consideration of the Motion and the

record of the Sale Hearing held on September 19, 2008 with respect to the Motion, including the

testimony and evidence admitted at the Hearing; and after due deliberation thereon, and

sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.    **Jurisdiction and Venue**.    This Court has jurisdiction to consider this

Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.  The statutory predicates for the relief sought in the

Motion are Bankruptcy Code sections 105(a), 363, and 365, Bankruptcy Rules 2002, 6004, 6006

and 9008 and the applicable Local Rules for the United States Bankruptcy Court for the Southern

District of New York (the "Local Rules").

C.    **Notice**.  As evidenced by the affidavits of service filed with this Court and

based upon the representations of counsel at the Sale Hearing and as approved under the Order

(I) Approving the Break-Up Fee and Expense Reimbursement, (II) Certain Matters Relating to

Competing Bids, If Any, (III) Approving the Form and Manner of Sale Notices and (IV) Setting

the Sale Hearing Date in Connection with the Sale of Certain of the Sellers' Assets (the "Break-

Up Fee and Competing Bids Order"): (i) in light of the exigent circumstances of these cases and

the wasting nature of the Sellers' assets, due, proper, timely, adequate and sufficient notice of the

Motion, the Sale Hearing and the transactions set forth in the Purchase Agreement  (the "Sale"),

08-13555-jmp   Doc 8942-3   Filed 05/06/10   Entered 05/06/10 15:01:26   Doc #1
Case 1:10-cv-03229-KBF   Document 19   Filed 04/19/2010   Page 15 of 25
Notice of Removal part 2   Pg 15 of 25

including the assumption and assignment of the Contracts and Cure Amounts with respect

thereto, has been provided in accordance with Bankruptcy Code sections 105(a), 363 and 365,

Bankruptcy Rules 2002, 6004, 6006 and 9008 and the Local Rules; (ii) it appearing that no other

or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate

under the circumstances of the Debtors' chapter 11 cases; (iv) good cause exists to shorten the

applicable notice periods in Bankruptcy Rules 2002, 6004, and 6006 and the applicable notice

periods in the Local Rules, and (iv) no other or further notice of the Motion, the Sale Hearing or

the Sale (including the assumption and assignment of the Contracts), is or shall be required.

       D.    **Irreparable Harm.**    The Debtors' estates will suffer immediate and

irreparable harm if the relief requested in the Motion is not granted on an expedited basis

consistent with the provisions set forth herein and the Purchase Agreement, particularly given the

wasting nature of the Purchased Assets.

       E.    **LBI.** LBI is the subject of a proceeding under the Securities Investors

Protection Act of 1970 ("SIPA") which was filed on September 19, 2008. The Purchase

Agreement provides for the sale of certain of LBI's assets to the Purchaser. The effectiveness of

this Order is conditioned upon the entry of an order in LBI's SIPA proceeding which, to the

extent applicable, has the same material terms as this Order and is otherwise in form and

substance reasonably satisfactory to the Purchaser. As part of that transfer, the Depository Trust

Clearing Corporation ("DTCC") informed the Purchaser and LBI on Wednesday, September 17,

2008, that the Purchaser would be required to assume the liabilities associated with the accounts

maintained by LBI at the DTCC and its subsidiaries -- The Depository Trust Company ("DTC"),

the National Securities Clearing Corporation ("NSCC"), and the Fixed Income Clearing

Corporation ("FICC") – in their entirety and irrespective of whether the assets or liabilities in a

particular account were the subject of the Purchase Agreement or were owned by LBI or an affiliate of LBI. The Purchaser agreed to do so upon the terms and conditions specified in the Purchase Agreement, as amended.

F.   **Opportunity to Object**.  A reasonable opportunity to object and to be heard with respect to the proposed Sale, the Motion and the relief requested therein has been given, in light of the exigent circumstances in these cases, to all interested persons and entities, including the following: (i) the Office of the United States Trustee, (ii) counsel for the Purchaser, (iii) counsel for the Official Committee of Unsecured Creditors (the "Committee"), (iv) the Company's thirty largest creditors, (iv) Rock-Forty-Ninth LLC, (v) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the Purchased Assets, (vi) all non-Debtor parties to Contracts that will be assumed on the Closing Date (the "Closing Date Contracts"), (vii) the United States Attorney's office, (viii) the United States Department of Justice, the Securities and Exchange Commission, (ix) the Securities Investor Protection Corporation, (x) the Internal Revenue Service, (xi) all persons, if any, who have filed objections to the Sale Motion; and (xiii) all persons who have filed a notice of appearance in the chapter 11 cases.

G.   **Corporate Authority**.  The Debtors (i) have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby and the Debtors' sale of the  Assets has been duly and validly authorized by all necessary corporate action, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement, (iii) have taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly

4

provided for in the Purchase Agreement, are required for the Debtors to consummate such transactions.

      H.    **Sale in Best Interests**. Good and sufficient reasons for approval of the Purchase Agreement and the Sale have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

      I.    **Business Justification**. The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business under Bankruptcy Code section 363(b) before, and outside of, a plan of reorganization in that, among other things, the immediate consummation of the Sale with the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates, particularly given the wasting nature of the Purchased Assets. Entry of an order approving the Purchase Agreement and all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the transactions set forth in the Purchase Agreement.

      J.    **Arm's-Length Sale**. The Purchase Agreement was negotiated, proposed and entered into by the Sellers and the Purchaser without collusion, in good faith and from arm's-length bargaining positions. The Purchaser is not an "insider" of the Debtors, as that term is defined in Bankruptcy Code section 101(31). Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n). Specifically, the Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

      K.    **Good Faith Purchaser**. The Purchaser is a good faith Purchaser of the Purchased Assets within the meaning of Bankruptcy Code section 363(m) and is, therefore,

Case 1:10-cv-03228-RJS    Document 1-3    Filed 04/19/2010    Page 18 of 25
08-13555-mg    Doc 8842-3    Filed 05/06/10    Entered 05/06/10 15:01:26    Doc #1
Notice of Removal part 2    Pg 18 of 25

entitled to all of the protections afforded thereby. The Purchaser has proceeded in good faith in all respects in connection with this proceeding.

    L.  **Highest and Best Offer**. The Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

    M.  **Consideration**. The consideration constitutes reasonably equivalent value or fair consideration, as the case may be (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities, other than the Purchaser, has offered to purchase the Purchased Assets for an amount that would give greater economic value to the Debtors' estates. Approval of the Motion and the Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors and all other parties in interest.

    N.  **Free and Clear**. Except to the extent that certain intellectual property rights may be owned by entities other than the Seller, the Debtors and LBI are the sole and lawful owners of the Purchased Assets. The transfer of the Purchased Assets to the Purchaser under the Purchase Agreement will be a legal, valid, and effective transfer of the Purchased Assets, and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the

Purchased Assets free and clear of all Liens, claims (as defined in section 101(5) of the

Bankruptcy Code) (including, without limitation, successor liability claims), encumbrances,

obligations, liabilities, contractual commitments, rights of first refusal or interests of any kind or

nature whatsoever (collectively, the "Interests"), including, but not limited to, (i) those that

purport to give to any party a right or option to effect any forfeiture, modification or termination

of the Debtors' interests in the Purchased Assets, or any similar rights or (ii) those relating to

taxes arising under or out of, in connection with, or in any way relating to the operation of the

Debtors' business prior to the Closing Date.  For avoidance of doubt, all Interests shall attach to

the proceeds ultimately attributable to the property against or in which such Interests are

asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the

same order of priority, which such Interests now have against the Purchased Assets or their

proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable,

may possess with respect thereto.  Further, the assumption and assignment of any Closing Date

Contracts is likewise free and clear of all Interests.  Notwithstanding the foregoing, as of the

Closing Date, all obligations to The Options Clearing Corporation ("OCC") with respect to

Purchased Assets that are within the possession or control of OCC shall have been assigned to

the Purchaser, and the Purchaser shall have assumed all of such obligations including, without

limitation, all obligations with respect to short option positions, futures contracts, and stock loan

or borrow positions that are transferred to the accounts of Purchaser at OCC as of the Closing

Date in accordance with the Purchase Agreement.  From and after the Closing Date, all

securities, cash, collateral and other property transferred to accounts of the Purchaser at OCC

shall be subject to all rights of OCC therein in accordance with the By-Laws and Rules of OCC

including, without limitation, the security interests and setoff rights of OCC with respect thereto.

O.   **Free and Clear Findings Needed by Purchaser**. The Purchaser asserts
that it would not have entered into the Purchase Agreement and would not consummate the
transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their
creditors, if the sale of the Purchased Assets (except to the extent that certain intellectual
property rights may be owned by entities other than the Seller) to the Purchaser and the
assumption and assignment of the Contracts to the Purchaser was not free and clear of all
Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be
liable for any of the Interests.

P.   **No Liability Findings Needed by Purchaser**. Purchaser asserts that it
will not consummate the transactions contemplated by the Purchase Agreement unless the
Purchase Agreement specifically provides, and the Bankruptcy Court specifically orders, that
none of Purchaser or its affiliates, members or shareholders or the Purchased Assets will have
any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or
in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or
Excluded Liability.

Q.   **Satisfaction of 363(f) Standards**. The Sellers may sell the Purchased
Assets (except to the extent that certain intellectual property rights may be owned by entities
other than the Seller) free and clear of any Interests of any kind or nature whatsoever because in
each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code
has been satisfied. The person or entity with any Interest in the Purchased Assets (except to the
extent that certain intellectual property rights may be owned by entities other than the Seller): (i)
has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have
consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money

8

satisfaction of such Interest; or (iii) otherwise falls within the provisions of section 363(f) of the

Bankruptcy Code. Those holders of Interests who did not object to the Motion are deemed,

subject to the terms of this Order, to have consented pursuant to Bankruptcy Code section

363(f)(2). All holders of Interests are adequately protected by having their Interests attach to the

proceeds ultimately attributable to the Purchased Assets (except to the extent that certain

intellectual property rights may be owned by entities other than the Seller) against or in which

such Interests are asserted, subject to the terms of such Interests, with the same validity, force

and effect, and in the same order of priority, which such Interests now have against the

Purchased Assets or their proceeds, subject to any rights, claims and defenses the Debtors or

their estates, as applicable, may possess with respect thereto.

> R. **No Fraudulent Transfer**. The Purchase Agreement was not entered into

for the purpose of hindering, delaying or defrauding creditors of Seller under the Bankruptcy

Code and under the laws of the United States, any state, territory, possession, or the District of

Columbia. Neither Debtors nor Purchaser is entering into the transactions contemplated by the

Purchase Agreement fraudulently for the purpose of such statutory and common law fraudulent

conveyance and fraudulent transfer claims.

> S. **No Successor Liability**. Except for the Assumed Liabilities, the transfer

of the Purchased Assets (except to the extent that certain intellectual property rights may be

owned by entities other than the Seller) to the Purchaser under the Purchase Agreement shall not

result in (i) the Purchaser having any liability or responsibility for any claim against the Debtors

or against an insider of the Debtors, or (ii) the Purchaser having any liability or responsibility to

the Debtors except as is expressly set forth in the Purchase Agreement. Without limiting the

effect or scope of the foregoing, to the fullest extent permitted by law, the transfer of the

Purchased Assets(except to the extent that certain intellectual property rights may be owned by entities other than the Seller) from the Debtors to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Purchased Assets) to any liability for claims (as that term is defined in section 101(5) of the Bankruptcy Code) against the Debtors or the Debtors' interests in such Purchased Assets by reason of such transfer under the laws of the United States or any state, territory or possession thereof applicable to such transactions, including, without limitation, any successor liability.

        T.    **Cure/Adequate Assurance**.  The assumption and assignment of the Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  The Debtors have:  (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing prior to the date hereof with respect to the Closing Date Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Closing Date Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A).  The Purchaser's promise to pay the Cure Amounts (as defined below) and to perform the obligations under the Closing Date Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).  Any objections to the assumption and assignment of any of the Closing Date Contracts to the Purchaser are hereby overruled.  Any objections to the Cure Amounts (as defined below) are resolved as set forth herein.  All counterparties to Closing Date Contracts shall have until

October 3, 2008 (the "Cure Amount Objection Deadline") to file an objection to the cure

amounts of their respective Closing Date Contracts (including as to the identity of such

contracts) identified on http: //chapter11.epiqsystems.com/Lehman (the "Website") (the "Cure

Amounts"). To the extent that any counterparty does not object to its Cure Amount by the Cure

Amount Objection Deadline, such counterparty is deemed to have consented to such Cure

Amounts and the assignments of their respective Closing Date Contracts to the Purchaser. To

the extent any objections to Cure Amounts are timely filed, the Debtors, Purchaser and the

counterparty shall meet and confer in good faith to attempt resolve any such objection without

Court intervention. If the objecting party and the Purchaser determine that the objection cannot

be resolved without judicial intervention, then such dispute will be determined by the Court upon

written application by either party on 20 (twenty) days notice, with any response due to such an

application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure

Amount as soon as reasonably practicable after (i) the date on which the contracting counterparty

consents in writing to the Cure Amount, (ii) the date on which the counterparty is deemed to

have consented, or (iii) the date on which the Court enters an order determining the Cure

Amount after the notice and hearing procedure set forth above. The procedures with respect to

assumption, assignment and cure of the Contracts that are the subject of the Purchaser's

designation rights (the "Designated Contracts") will be set forth in one or more separate orders

of the Court which will be entered at a later date or dates.

       U.    **Prompt Consummation**. The Sale must be approved and consummated

promptly in order to preserve the viability of the businesses subject to the sale as going concerns,

to maximize the value of the estates. Time is of the essence in consummating the Sale.

V.    **Personally Identifiable Information**.  The Sale may include the transfer

of Personally Identifiable Information, as defined in Bankruptcy Code section 101(41A).  No

Consumer Privacy Ombudsman need be appointed under Code section 363(b)(1) because

Purchaser has agreed to adhere to any such privacy policies applicable to the Debtors.

NOW, THEREFORE, IT IS ORDERED THAT:

1.    **Motion is Granted**.    The Motion and the relief requested therein is

GRANTED and APPROVED, as set forth herein.

2.    **Objections Overruled**.    Any objections to the entry of this Order or the

relief granted herein and requested in the Motion that have not been withdrawn, waived, or

settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and

overruled on the merits with prejudice.

3.    **Approval**.  The Purchase Agreement and all of the terms and conditions

thereto are hereby approved.  The Debtors are hereby authorized and directed to (1) execute the

Purchase Agreement, along with any additional instruments or documents that may be

reasonably necessary or appropriate to implement the Purchase Agreement, provided that such

additional documents do not materially change its terms; (2) consummate the Sale in accordance

with the terms and conditions of the Purchase Agreement and the other agreements contemplated

thereby; and (3) take all other and further actions as may be reasonably necessary to implement

the transactions contemplated by the Purchase Agreement.

4.    **Free and Clear**.  Except as expressly provided for in the Purchase

Agreement or this Order, pursuant to Bankruptcy Code sections 105(a) and 363(f), the Debtors

are authorized and directed to transfer the Purchased Assets (except to the extent that certain

intellectual property rights may be owned by entities other than the Seller) to the Purchaser and,

as of the Closing Date, the Purchaser shall take title to and possession of the Purchased Assets

(except to the extent that certain intellectual property rights may be owned by entities other than

the Seller) free and clear of all Interests of any kind or nature whatsoever, including but not

limited to the Liens and Excluded Liabilities, with all such Interests to attach to the proceeds

ultimately attributable to the property against or in which such Interests are asserted, subject to

the terms of such Interests, with the same validity, force and effect, and in the same order of

priority, which such Interests now have against the Purchased Assets or their proceeds, subject to

any rights, claims and defenses the Debtors or their estates, as applicable, may possess with

respect thereto.

5.     **Valid Transfer**.  As of the Closing Date, (a) the transactions

contemplated by the Purchase Agreement effect a legal, valid, enforceable and effective sale and

transfer of the Purchased Assets to Purchaser, and shall vest Purchaser with title to such

Purchased Assets (except to the extent that certain intellectual property rights may be owned by

entities other than the Seller) free and clear of all Interests and Excluded Liabilities and (b) the

Purchase Agreement and the transactions and instruments contemplated hereby shall be

specifically performable and enforceable against and binding upon, and not subject to rejection

or avoidance by, the Debtors or any successor chapter 11 or chapter 7 trustee appointed with

respect thereto.

6.     **General Assignment**.  On the Closing Date, this Order shall be construed

and shall constitute for any and all purposes a full and complete general assignment, conveyance

and transfer of the Sellers' interests in the Purchased Assets.  Each and every federal, state, and

local governmental agency or department is hereby directed to accept any and all documents and