**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
Sean A. O'Keefe – NY Bar No. 1980853, CA Bar No. 122417
Paul J. Couchot – CA Bar No. 131934
Counsel for the SunCal Voluntary Debtors

**THE LOBEL FIRM, LLP**
840 Newport Center Drive, Suite 750
Newport Beach, CA  92660
Telephone:     (949) 999-2860
Facsimile:     (949) 999-2870
William N. Lobel – CA Bar No. 93202
Counsel for the SunCal Trustee Debtors

**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400
Louis R. Miller – CA Bar No. 54141
Special Litigation Counsel for SunCal Debtors

**Hearing Date: May 12, 2010 at 10:00 a.m. (EST)**
**Objections Due: May 7, 2010 at 4:00 p.m. (EST)**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**LEHMAN BROTHERS HOLDINGS INC, et al.,**<br><br>**Debtors.** | **Chapter 11**<br><br>**Case No. 08-13555 (JMP)**<br><br>**Jointly Administered** |

**SUNCAL DEBTORS' OBJECTION TO FORM OF REVISED ORDER APPROVING DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR AUTHORITY TO COMPROMISE CONTROVERSY RELATING TO REPURCHASE TRANSACTION**

The SunCal Debtors[1] hereby submit the following Objection to the revised order (the "Second Fenway Order") attached to the *Notice of Filing of Revised order Approving Debtors' Motion Pursuant to Bankruptcy Rule 9019 for Authority to Compromise Controversy In Connection With a Repurchase Transaction with Fenway Capital, LLC and a Commercial Paper Program with Fenway Funding, LLC*, (the "Notice") filed by Lehman Commercial Paper, Inc. ("LCPI") and Lehman Brothers Holding, Inc. ("LBHI") (collectively, "Lehman") on May 4, 2010.

# I
# PRELIMINARY STATEMENT

The Second Fenway Order, submitted after the briefing on the Compromise Motion was completed,[2] asks this Court to approve a transaction that is not only different from the terms of the Transaction proposed by the original Compromise Motion, it actually *contradicts* the terms of the motion. The Second Fenway Order asks the Court to find that the Transaction is "pursuant to the MRA," when it is not—it represents an entirely new deal not contemplated by the MRA. It also asks the Court to find that LBHI will be subrogated to the rights of Fenway pursuant to the Fenway Documents, when under the stated terms of the Transaction, the Fenway Documents will be *terminated*. Thus, LBHI will not be subrogated to Fenway's rights because Fenway will have no rights to which LBHI *could be* subrogated.

Although Lehman gives no reason for the submission of this materially different proposed order, it appears that Lehman has submitted it solely to bolster its arguments in opposition to the SunCal Debtors' recently filed motion for relief from stay. In fact, the Second Fenway Order tries to address, and circumvent, a key legal argument in the stay relief motion: it seeks to "rebut" the indisputable fact that, since the MRA will be terminated, LBHI cannot be subrogated to rights that

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the *Motion of the SunCal Debtors for an Order Determining that the Automatic Stay Does Not Apply; Or, In the Alternative, Granting Relief from Stay*, filed April 21, 2010.

[2] In its April 20, 2010 Notice of Adjournment of the hearing on the Compromise Motion from April 21, 2010 to May 12, 2010, Lehman stated: "The matters raised by the Fenway Motion have been fully briefed…."

64649.1                                    2

do not exist, and so LBHI's stay will not apply by virtue of any such subrogated rights. It is not proper to try to "cure" a defect like this by way of a "revised" order.

The Second Fenway Order is procedurally and substantively improper, and should not be adopted by this Court, in the event that the Compromise Motion itself is approved. In such a case, the original order proposed by Lehman is an acceptable form insofar as the SunCal Debtors are concerned.

## II

## BASIS FOR OBJECTIONS

### A. Differences Between the First and Second Fenway Orders

The original order submitted with the Compromise Motion on March 25, 2010 (the "First Fenway Order") would have authorized Lehman to enter into and implement the Transaction "in accordance with the terms described in the Transaction Summary." First Fenway Order at 2.

The "Transaction Summary," which appears in the Compromise Motion, provides, in pertinent part, as follows:

> Upon the assignment of the JPM Pledge and CP Notes to LBHI and the delivery of the CP Notes to LBHI, LBHI, as guarantor, will return the CP Notes to Fenway Funding and Fenway Funding will return the VFN Note to Fenway Capital. ***The CP Notes and VFN Note will be cancelled and the Supplement, Base Indenture and other documents relating to the VFN Note will be terminated.*** Each of Fenway Funding and Fenway Capital will have no further liabilities under the CP Notes or VFN Note.
>
> LCPI will repurchase the Repo Assets from Fenway Capital (by payment of the repurchase price in accordance with the following sentence) and, in connection therewith, Fenway Capital will assign to LCPI all of the Repo Assets and ***the parties will terminate the MRA and the guaranty provided by LBHI with respect thereto.*** The parties will agree that notwithstanding anything to the contrary in the Fenway Documents or otherwise, the return of the CP Notes to Fenway Funding and the subsequent termination of the VFN Note will constitute full payment of the repurchase price under the MRA and full and fair consideration for the repurchase transaction.

Compromise Motion at pp.9-10, ¶ 21 (emphasis added).

The Second Fenway Order makes three substantive changes to the First Fenway Order that are contrary to, and in derogation of, the Compromise Motion itself:

1. It provides that upon closing of the Transaction, "LCPI will have repurchased the Repo Assets *pursuant to the MRA*"; (p.2) (emphasis added)

2. It provides for LBHI's subrogation to Fenway's rights "to the full extent provided *under the Fenway Documents, the LBHI guaranty with respect to the MRA* and applicable law" (p.3) (emphasis added); and

3. It provides for LBHI's succession to "any and all liens and security interests with respect to the Repo Assets and any interest therein asserted by Fenway under the Fenway Repo and/or the Fenway Documents," and for assignment and transfer by Fenway of such liens and interests to LBHI (p.3).

The Second Fenway Order purports to materially change the substance of the Transaction that the Court is being asked to approve in the Compromise Motion. As such, the second order controverts the Compromise Motion itself.

First, the Second Fenway Order purports to have this Court find that the Transaction is a completion of the original repurchase agreement "*pursuant to the MRA*." That is simply not the case: LCPI did not seek, by the original Compromise Motion, authority to assume the Repo agreement (*i.e.,* the MRA) and to perform under it; rather, Lehman sought to "compromise" the controversy with the Fenway entities by seeking approval of a *new* transaction that would achieve much the same thing that completion of the repo *would have* done. Thus, the Transaction Summary in the Compromise Motion provided that the return of the CP Notes and termination of the VFN Note "will constitute" full payment of the repurchase price under the MRA, "notwithstanding anything to the contrary in the Fenway Documents or otherwise." Motion at pp. 9-10.

Indeed, LCPI did not originally seek to complete the Repo "pursuant to the MRA" because it *could not* do so. To perform its repurchase obligation under the terms of the MRA, LCPI, as the seller, was contractually obligated to repurchase the SunCal Loans from Fenway, the buyer, for the

64649.1                                              4

$1 billion dollar repurchase price referenced in the contract with "immediately available funds."[3] LCPI has elected not to comply with its repurchase obligation *in accordance with the terms of the MRA* for a very simple reason: The SunCal Loans, according to LCPI, have a value of less than $400 million. Since this Court presumably would not sanction LCPI purchasing $400 million in assets for $1 billion, LCPI and LBHI have elected to structure *a new transaction* through a "compromise." This compromise effectively unwinds the existing transaction through a new contractual arrangement that incorporates different terms than those set forth in the MRA.

The mechanics of the new transaction described in the Compromise Motion are as follows: JP Morgan (JPM), which holds a lien on certain CP Notes issued by Fenway Funding to LBHI, recently released its lien against these notes (in return for a cash payment). This transaction is not a part of the Transaction described in the Compromise Motion itself; but the release of JPM's lien frees up LBHI, as the holder of the CP Notes, to return the CP Notes to Fenway Funding. Fenway Funding, which holds a certain VFN Note issued by Fenway Capital (the proceeds of which secured the CP Notes), will then cancel the CP Notes and return the VFN Note to Fenway Capital. Fenway Capital will in turn cancel the VFN Note, relieve LCPI of its repo obligation under the MRA, and return the SunCal Loans (along with the other Repo Assets).

At the close of this compromise, per the Motion, *all obligations under the MRA are extinguished* (save for certain indemnity obligations that have been carved out), *including the lien rights against the SunCal Loans held by Fenway, and the guarantee that LBHI issued to secure LCPI's repo obligation to Fenway Capital, leaving LBHI with no obligations thereunder*.

This leads to the second way in which the Second Fenway Order materially alters the relief requested by the Compromise Motion: It provides for LBHI's subrogation to Fenway's rights "under the Fenway Documents" and under "the LBHI guaranty with respect to the MRA," when

---

[3] The MRA is a standard form document published by the Bond Market Association. It describes the sale of certain securities *for a fixed price* and the repurchase of those securities *for a fixed price* (the initial purchase price plus the yield) *on a fixed date*. It also provides that the repurchase price will be paid in *immediately available funds*. The transaction described in the Motion bears no relationship to the contractual exchange described in the MRA.

64649.1    5

the Compromise Motion itself clearly provides that those very documents *will be terminated*. That, indeed, was ostensibly the entire point of bringing the Compromise Motion: to eliminate the cost and burden associated with the ongoing existence of the repurchase agreement and the commercial paper program. Thus, the Second Fenway Order not only deviates from the terms provided in the Compromise Motion itself, it actually *contradicts* those terms.

Moreover, whether the contemplated Transaction is deemed to have occurred pursuant to an entirely new transaction, or "pursuant to the MRA" and "LBHI guaranty," as Lehman now claims, the fact remains that Fenway will no longer have any rights in the SuCal loans to which LBHI could be subrogated, nor will Fenway have any lien or other interests to assign to LBHI. The stated purpose of the Transaction is to extinguish Lehman and Fenway's debt obligations. Once a debt is extinguished, the associated liens are extinguished.[4] Once a debt that is guaranteed is extinguished, the guaranty is extinguished. Finally, where no underlying debt exists, and hence no guaranty exists, any right of subrogation becomes a nullity.

B.     **Grounds for Objections to the Second Fenway Order**

First, the Second Fenway Order, which differs from the Compromise Motion and was submitted after briefing on that Motion was closed, violates the principle that fair notice should be given to all interested parties. The Motion simply does not give interested parties adequate notice as to the relief that would later be requested in the Second Fenway Order.[5]

---

[4] As a matter of law, the disallowance of a claim necessarily extinguishes the lien securing the claim. *In re Spiniak*, 221 B.R. 732, 735 (W.D.Mich.1998); *In re Doty*, 104 B.R. 133, 137 (Bank.S.D.Iowa 1989) ("[A] claim may exist without a lien, but a lien cannot exist without a claim"); *In re O'Leary*, 75 B.R. 881, 885 (Bankr.D.Or. 1987) ("should the claim underlying a lien be disallowed under § 502, the lien must also fall as a lien cannot stand without an underlying claim to support it").

[5] The Revised Order suggests that LBHI may have some claims against LCPI upon consummation of the Transaction. True, LBHI paid a sum to JPM pursuant to an earlier and entirely separate transaction approved by this Court, but that transaction is not described in the Compromise Motion. And there is nothing in the Compromise Motion or in the notice that suggests that the funds LBHI advanced to JPM pursuant to that transaction would give rise to a post-petition debt claim against LCPI. To the contrary, there is no hint in the Compromise Motion that the relief prayed for encompasses a borrowing under 11 U.S.C. § 364—nor is there evidence that would satisfy the notice obligation in Federal Rule of Bankruptcy Procedure 4001(c) that would be necessary for such relief to be granted.

Second, and more importantly, the Second Fenway Order actually contradicts the terms of the Compromise Motion. The Second Fenway Order states that "LBHI shall succeed to any and all liens and security interests with respect to the Repo Assets and an interest therein asserted by Fenway under the Fenway Report and/or Fenway Documents." But the Compromise Motion states that "Fenway Capital will assign to LCPI all of the Repo Assets *and the parties will terminate the MRA and the guaranty provided by LBHI* with respect thereto." Motion at 9-10 (emphasis added). Although Fenway may have had certain lien rights against the Repo Assets *under the MRA*, per the Motion, the MRA is being extinguished and Fenway's claims are being extinguished. LBHI cannot "succeed" to lien rights under a contract that is expressly being terminated. Lehman is thus asking the Court, via the Second Fenway Order, to make findings for which there is no basis in fact.

Finally, the reason *why* Lehman is attempting to make these thirteenth-hour changes to the order cannot be overlooked. In their opposition to the Compromise Motion filed April 7, 2010, the SunCal Debtors pointed out that "this transfer is not being effectuated through the original underlying Repo contract. Rather, it is being effectuated through an entirely new post-petition contract." Opposition to Compromise Motion, at p.6 n.4. The amendment in the Second Fenway Order providing that LCPI will acquire the Repo Assets "pursuant to the MRA" is an apparent attempt to "fix" the problem identified in the Opposition.

Similarly, the SunCal Debtors pointed out in their Motion for Relief from Stay filed April 21, 2010 that LBHI's stay will not apply to the Sold Loans upon consummation of the Transaction as a result of LBHI's subrogation to Fenway's rights because Fenway will have no rights to which LBHI could be subrogated. Lehman is again trying to "fix" this problem, not by responding to it in its opposition to the stay relief motion, but rather by changing the substance of the Compromise Motion *ex post* by submitting a materially different order.

With no other stated rationale for submitting the Second Fenway Order, one can only conclude that Lehman is trying to change the effect of the Transaction in order to strengthen its

argument that LBHI's stay will apply, so as to increase its chances of thwarting the SunCal Debtors' reorganization plan and related adversary proceeding by invoking LBHI's stay.

Moreover, Lehman is attempting this maneuver by asking this Court to find that LBHI will be subrogated to nonexistent rights based on nonexistent liens. Lehman is also tacitly conceding that LBHI's stay does *not* currently apply to the Sold Loans, and that its stay would *not* apply upon consummation of the Transaction as described in the Original Order. Indeed, in its opposition to the SunCal Debtors' stay relief motion, filed the day after the Second Fenway Order was submitted, Lehman relies almost exclusively on the Second Fenway Order for its argument that LBHI's stay is implicated by the SunCal Debtors' bankruptcy cases. The Second Fenway Order is thus an attempt by Lehman to *create* a stay where it did not previously apply. Respectfully, Lehman should not be allowed to use the judicial process to achieve an undisclosed and improper objective.[6]

---

[6] This would also constitute a violation of the stay in the SunCal Debtors' cases, since it is designed to enable Lehman to acquire and collect a debt against the SunCal Debtors.

## III

## CONCLUSION

For the foregoing reasons, the SunCal Debtors would respectfully pray that the Court reject the Second Fenway Order.

Dated: May 6, 2010                    Respectfully submitted,

   /s/ Sean A O'Keefe
Sean A O'Keefe
Paul J. Couchot
WINTHROP COUCHOT
PROFESSIONAL CORPORATION
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

   /s/ Louis R. Miller
Louis R. Miller
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

   /s/ William N. Lobel
William N. Lobel
THE LOBEL FIRM
840 Newport Center Dr Suite 750
Newport Beach, CA 92660
Telephone: (949) 999-2860
Facsimile: (949) 999-2870

*Attorneys for the SunCal Debtors*