<u>Hearing Date:  May 12, 2010 at 10:00 a.m.</u>

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Jayant W. Tambe
James K. Goldfarb
Benjamin Rosenblum

*Attorneys for the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

|  |  |  |
|---|---|---|
|  | : | Chapter 11 |
| In re: | : |  |
|  | : | Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : |  |
|  | : | Jointly Administered |
| Debtors. | : |  |
|  | : |  |

-----------------------------------------------------------------x

## OBJECTION OF DEBTORS AND DEBTORS IN POSSESSION TO THE MOTION OF ROSSLYN INVESTORS I, LLC FOR LEAVE TO CONDUCT RULE 2004 DISCOVERY

Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Brothers Special Financing Inc. ("<u>LBSF</u>"), as debtors and debtors in possession (together, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates, "<u>Lehman</u>"), hereby object to the motion [Docket No. 8221] (the "<u>Motion</u>") of Rosslyn Investors I, LLC ("<u>Rosslyn</u>") for leave to conduct Rule 2004 discovery against certain of the Debtors, and respectfully represent:

### <u>INTRODUCTION</u>

1.      Rosslyn and LBSF were parties to an interest rate swap.  On May 14, 2009, Rosslyn purported to terminate the swap based on alleged events of defaults, including a bankruptcy event of default.  Now Rosslyn asserts in its proofs of claim and Motion that no

enforceable swap existed, but if the swap did exist, LBSF owes Rosslyn $5 million in

termination payments even though the swap was in-the-money to Lehman for nearly $13 million.

To evaluate Rosslyn's assertions, the Debtors sought and obtained Rule 2004 discovery from

Rosslyn. Then Rosslyn filed the Motion for Rule 2004 discovery from the Debtors. The Motion

is transparently retaliatory. Moreover, the discovery sought would burden the Debtors and

impede the claims resolution process. The circumstances do not justify granting the Motion.

2.      Finally, denying the Motion will not prejudice Rosslyn. No contested

matter or adversary proceeding has been commenced with respect to Rosslyn or the swap. If and

when such a proceeding is instituted, Rosslyn will be entitled to discovery and other rights. Until

such time, there is simply no basis to burden the estates or the claims process with Rosslyn's tit-

for-tat discovery demands. Accordingly, the Motion should be denied.

## BACKGROUND

3.      On September 17, 2009, Rosslyn filed proofs of claim, numbers 19651,

19652, and 19697 (collectively, the "Proofs of Claim"), against certain of the Debtors, each in

the approximate amount of $5 million. No objection has been filed with respect to the Proofs of

Claim. Nor have the Debtors commenced an adversary proceeding concerning Rosslyn, the

Proofs of Claim, or the swap.

4.      On November 4, 2009, the Debtors moved, pursuant to Rule 2004, for

entry of a procedural order "to facilitate the efficient administration of these cases" and provide

the Debtors with "authorization to issue subpoenas for the production of documents and the

examination of persons and entities determined by the Debtors to have information relevant to

the acts, conduct, property and liabilities of the Debtors and other matters relating to the

administration of the Debtors' estates . . . ." (Docket No. 5710). On November 23, 2009, the

Court granted the motion and entered the Order Granting the Debtors Authority to Issue

Subpoenas for the Production of Documents and Authorizing the Examination of Persons and

Entities (Docket No. 5910) (the "Rule 2004 Order").

5.      On January 20 and 21, 2010, the Debtors served Rule 2004 subpoenas on

Rosslyn, an affiliate of Rosslyn, and a financial advisor to Rosslyn and its affiliate pursuant to,

and in accordance with, the Rule 2004 Order.  Notices of the subpoenas were timely filed on the

docket.  (*See* Docket Nos. 6742, 6743, 6744).

6.      On April 9, 2010, Rosslyn filed the Motion seeking authorization to take

discovery from LBSF and LBHI pursuant to Rule 2004 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").  Among other things, Rosslyn seeks all (i) communications

concerning the swap formation or any swap document; (ii) documents concerning any payment

pursuant to the swap; (iii) documents concerning the possible assumption and/or assignment of

the swap between any Lehman entity and Rosslyn; and (iv) documents concerning the measure

of any early termination payment due or owing with respect to the swap.  (*See* Mot. Sch. A at 15-

16).  Rosslyn is not shy about stating the purpose of these discovery requests:  "to investigate

facts and circumstances pertaining to the questions of swap formation, agreement,

documentation, repudiation, termination and valuation of the claims."  (Mot. ¶ 22).  In other

words, Rosslyn wants to gather evidence to support its Proofs of Claim.

## ARGUMENT

7.      The Court should deny the Motion.  Rosslyn is attempting to turn the

claims resolution process upside-down by seeking discovery to support claims that currently are

not the subject of any objection or adversary proceeding.  Moreover, the discovery requested is

burdensome and not justified by any – let alone exceptional – circumstances in this matter.

Finally, Rosslyn will suffer no prejudice if the Motion is denied, while the Debtors will suffer significant prejudice if the Motion is granted.

8.      Rule 2004 is intended "to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred." *See In re Hilsen,* No. 87-11261 (JMP), 2008 WL 2945996, *4 (Bankr. S.D.N.Y. July 25, 2008) (citations omitted); *accord In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999) (noting Rule 2004 examinations are allowed for the "purpose of discovering assets and unearthing frauds", and not for the purpose of "abuse or harassment") (citations omitted), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999).  While discovery under Rule 2004 might be broad (*see generally* cases cited in Mot. ¶¶ 17-18),[1] it is not without well-established limits.  *See Duratech*, 241 B.R. at 296; Mar. 25, 2009 Hearing Tr. at 55-56 (denying a request of Carret P.T., L.P. #2 and Evansville Insurance Ltd. for Rule 2004 discovery:  "[W]hile 2004 may be a generally available tool, it is a blunt instrument and it creates enormous burdens for the trustee . . . .").[2]  For example, Rule 2004 does not permit a party to conduct far-reaching discovery against a debtor in possession without careful judicial oversight.  *See In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (noting the importance of judicial oversight to limit carefully the scope of Rule 2004 discovery).

---

[1] None of the cases cited by Rosslyn in the Motion support the relief Rosslyn seeks.  Those cases that granted Rule 2004 discovery were factually dissimilar to the facts here. *See In re Bazemore*, 216 B.R. 1020, 1022 (Bankr. S.D. Ga. 1998) (granting chapter 7 trustee's examination of debtor's attorney); *Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 704 (Bankr. S.D.N.Y. 1991) (granting FDIC/RTC right to receive information obtained in the course of the creditors' committee's Rule 2004 examinations); *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985) (granting trustee's Rule 2004 motion to determine whether estate had equitable title to machinery and to evaluate antitrust claims).

Moreover, several of the cases cited in the Motion either did not address the issue or denied the party's request to conduct Rule 2004 discovery. *See, e.g., Duratech Indus.*, 241 B.R. at 289-90 (affirming bankruptcy court's denial of Rule 2004 examination); *In re Silverman*, 36 B.R. 254, 259 (Bankr. S.D.N.Y. 1984) (noting Rule 2004 did not apply and quashing subpoenas under prior Rule 205).

[2] A true and correct copy of the relevant portion of the hearing transcript from March 25, 2009 is attached as Exhibit A, hereto.

Nor is Rule 2004 a tool to advantage individual creditors in the course of an otherwise orderly and systematic claims resolution process. Yet, that is precisely what Rosslyn is attempting to do.

9.      The size of these Chapter 11 cases is unprecedented. Over 66,000 claims have been filed against the estates, and the asserted liquidated amounts of such claims exceed, in the aggregate, $899 billion.[3]  Due to the size and sheer number of filed claims, the claims resolution process poses significant administrative challenges to these estates and must be conducted in an orderly and efficient manner. To address these challenges, the Debtors sought and obtained procedural orders, including the (i) Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice (Docket No. 4271), (ii) Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) for Approval of Claim Objection Procedures (Docket No. 6664), (iii) Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) Approving Settlement Procedures (Docket No. 8336), and (iv) Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors (Docket No. 8474).

10.      Each of these orders is designed to maximize the efficiency of the claims process and to facilitate the orderly and fair resolution of the tens of thousands of claims filed in these proceedings. Allowing Rosslyn discovery at this juncture achieves the exact opposite result. The discovery – in addition to being burdensome and distracting – would undercut the Debtors' efforts to manage the claims process in a manner that is orderly and fair to **all** creditors.

---

[3] Of the 66,000 claims, over 21,000 are either partially or entirely unliquidated.

The estates resources and attention are finite, and it would not be orderly or fair to the creditors as a whole to permit individual claimants to dictate how the Debtors spend their time and resources in the claims process.

11.    The Court also should consider the precedent that would be set by granting Rosslyn the discovery it seeks.  Other Rule 2004 motions would follow and further weigh down the Debtors even before the claims resolution process has an opportunity to run its course.  (*See* Mar. 25, 2009 Hearing Tr. at 57 (noting, with respect to Lehman Brothers Inc., that it would be inappropriate for every claimant to have "coercive discovery rights before the claim resolution process has had a full and fair opportunity to run its course"); *see id.* at 43-44 (taking note of the argument that "there is a parade of horribles" associated with creditors seeking "to pursue particularized discovery as it relates to a claim before there's any objection to the claim, before there's any issue as to the claim, before the issue has been joined, in effect, there's a floodgates argument that this courtroom will be filled with similarly situated creditors who will be saying well, what about me, what about me.")).  To ensure an orderly claims resolution process, the Court should deny the Motion.[4]

12.    Putting aside administrative concerns, the Court should deny the Motion because Rosslyn presents no valid basis for the relief requested.  As the Court explained earlier in these cases, absent exceptional circumstances, an individual claimant should not be allowed to conduct a Rule 2004 examination against the Debtors.  (*See* Jan. 14, 2009 Hearing Tr. at 90-91 (denying the motion of The Bank Of New York Mellon Trust Company, N.A. for Rule 2004 discovery, and noting "exception[al] circumstances [must] be shown" before Rule 2004

---

[4] A proof of claim is deemed allowed, unless and until a party in interest objects.  *See* 11 U.S.C. § 502(a). Because Rosslyn's Proofs of Claim are deemed allowed, Rosslyn has no principled basis for seeking discovery with respect to the allowance or validity of the Proofs of Claim, at least until such time as the Debtors object to the Proofs of Claim.

discovery will be permitted)).   A contrary result would be wasteful and unjustified.  (*See* Dec. 16, 2009 Hearing Tr. at 104 ("[F]or policy reasons, I consider miscellaneous Rule 2004 requests . . . to be incredibly wasteful.")).  Rosslyn points to no circumstances, at this juncture, that would justify the probing discovery it seeks, let alone exceptional circumstances or even good cause.[5]

13.    Rosslyn suggests that the Motion is justified because the Debtors served Rule 2004 requests on Rosslyn.  (*See* Mot. ¶ 14).  But tit-for-tat is no justification at all, especially where, as here, Rosslyn would suffer no prejudice if the Court denied the Motion. Indeed, Rosslyn's claim of prejudice is based on the argument that, without the discovery it seeks, it would "be forced to proceed in the absence of such information as is solely in the possession of Debtors."  (Mot. ¶ 22).  That argument fails for multiple reasons.

14.    As an initial matter, there is nothing to "proceed" with at this time – the Debtors have neither instituted a contested matter nor commenced an adversary proceeding with respect to Rosslyn, the Proofs of Claim or the swap.  Moreover, Rule 2004 does not mandate symmetrical discovery, and Rosslyn points to no authority to the contrary.  When and if the Debtors object to Rosslyn's claims, or initiate an adversary proceeding, Rosslyn will be entitled to discovery in accordance with the Bankruptcy Rules and orders of this Court.  Until such time, Rosslyn has no need for the discovery it seeks.  In this regard, Rosslyn is indistinguishable from thousands of other parties in interest in these proceedings – it cannot demonstrate any exceptional circumstances or even good cause to warrant Rule 2004 discovery.

15.    Finally, Rosslyn argues that its requests are "narrowly tailored." (Mot. ¶ 22).  In fact, they are broad and burdensome (*see* ¶ 6, above), and clearly designed to help Rosslyn prove its claims.  (*See* Mot. ¶ 22 (admitting that Rosslyn seeks Rule 2004 discovery

---

[5] True and correct copies of the relevant portions of the hearing transcripts from January 14, 2009 and December 16, 2009 are attached as Exhibits B and C, hereto.

"to investigate facts and circumstances pertaining to the questions of swap formation, agreement, documentation, repudiation, termination, and valuation of the claims.")).  The type of discovery Rosslyn seeks is reserved for a contested matter or an adversary proceeding.  Rosslyn is not entitled to such discovery at this time and might never be entitled to such discovery.

## CONCLUSION

16.    For the reasons set forth above, the Debtors respectfully request that the Court deny the Motion.

Dated: May 7, 2010
       New York, New York

                                    s/ James K. Goldfarb
                                    Jayant W. Tambe
                                    James K. Goldfarb
                                    Benjamin Rosenblum
                                    JONES DAY
                                    222 East 41st Street
                                    New York, New York 10017
                                    Telephone:  (212) 326-3939
                                    Facsimile:  (212) 755-7306

                                    *Attorneys for the Debtors and
                                    Debtors in Possession*

**EXHIBIT A**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555(JMP); 08-01420(JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC., et al.


          Debtors.

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS INC.


          Debtor.

- - - - - - - - - - - - - - - - - - - - -x

          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          March 25, 2009

          10:02 AM

B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

43

1    assets of Lehman and the orderly administration of the claims

2    process.  But we have very real and we think very discreet

3    questions about what happened to our clients' money.  We're

4    perfectly willing to be as helpful as possible in limiting

5    those inquiries into the very narrow areas that would answer

6    the questions that we have, the very discreet questions that we

7    have.

8            THE COURT:  Let me ask you this question --

9            MR. MCNALLY:  Yeah.

10           THE COURT:  -- only because you referenced a possible

11   predisposition.  I wasn't aware that I had any but let's just

12   assume that there's something about your question that may be

13   an accurate reflection of what a hypothetical jurist might have

14   in his or her mind.

15           MR. MCNALLY:  Okay.  Fair enough, Your Honor.

16           THE COURT:  There's a claim administration process

17   that the trustee follows as it relates to all of the proofs of

18   claim that are filed in this massive case which the trustee

19   notes is the largest broker/dealer liquidation in the history

20   of the world, the universe, and suggests that there is a parade

21   of horribles aspect to what you're asking for because if you,

22   on behalf of Evansville and Carret, have the opportunity to

23   pursue particularized discovery as it relates to a claim before

24   there's any objection to the claim, before there's any issue as

25   to the claim, before issue has been joined, in effect, there's

44

1    a floodgates argument that the courtroom will be filled with

2    similarly situated creditors who will be saying well, what

3    about me, what about me.  We want information, too, and that an

4    orderly statutory process for managing the case will be

5    adversely affected.

6           In effect, what's different about -- what, if

7    anything, is different about the Evansville and Carret claim

8    that distinguishes it from this parade of other claimants that

9    may come in to One Bowling Green and fill the hallways

10   attempting to gain court time so that they can have the same

11   kind of discovery you're seeking?

12          MR. MCNALLY:  I understand, Your Honor, and that's

13   fair.  What I think differentiates our claim is that, number

14   one, it's patently not a general unsecured claim.  We are not a

15   supplier of goods and services to Lehman.  And not only that,

16   but we are not the counterparty with Lehman to some Lehman-

17   sponsored contract that has a claim in which Lehman is failing

18   to meet its counterparty obligations.  And I think Your Honor

19   can surmise at this point that a good portion of the claims

20   that must be extant and outstanding against Lehman consist in

21   those two groups of parties, at least some of the larger

22   claims, certainly in the second class.

23          We are a customer specially protected under SIPA with

24   identifiable securities and identifiable cash in our accounts

25   except they can't tell us what happened to it.  So I think we

55

1    they have the right to that.

2         THE COURT:  Okay.  It's obvious to me from the papers

3    that I've read and from the argument that counsel for

4    Evansville and Carret is seeking, through informal means and

5    now through 2004 discovery, the very same sort of information

6    that plaintiffs have been seeking at various times since the

7    commencement of these cases, but bringing separate adversary

8    proceeding complaints focused on attempting to locate and

9    obtain the return of identified securities.

10        As I sit here at this moment, I'm unable to give you

11   the total number of such litigations that have already been

12   commenced, but I believe it's some number between ten and

13   twenty separate cases.  As a matter of case administration, I

14   think that it is probably a bad idea for parties like these

15   movants to need to go to the trouble of having to bring a 2004

16   request to obtain answers to questions that they're really

17   entitled to.  I also think it's a bad idea for these parties to

18   have to bring separate lawsuits.

19        So in a balancing of harms analysis, in an effort to

20   come up with some model that can be generally applied to this

21   case, I find myself in the difficult position of considering

22   whether 2004 discovery under these facts makes sense.  It

23   really doesn't from the point of view of case administration.

24   For reasons that I pointed out in an earlier question, while

25   2004 may be a generally available tool, it is a blunt

56

1    instrument and it creates enormous burdens for the trustee, and

2    candidly, it also creates unnecessary burdens for the moving

3    parties.  It's an available remedy, but the most effective

4    remedy is an e-mail that produces a response which could be we

5    can't get to this now, can you give us an extra sixty days so

6    that we can deal with this when we have more time.

7            I don't presume to become involved in the back and

8    forth that attorneys engage in as they seek to gain traction

9    and attention in a case this large.  But I do think it is not

10   desirable for parties like Evansville and Carret to need to go

11   to a 2004 request to request a deposition, whether or not it's

12   going to be pursued or not is kind of beside the point, and to

13   seek documents through coercive means when I think well

14   represented parties can probably get to the truth a lot more

15   conveniently and efficiently by simply cooperating with each

16   other.  I encourage that.

17           For purposes of today's motion however, I am denying

18   the 2004 request without prejudice, in all respects, to further

19   efforts that may be made by Evansville and Carret to obtain the

20   information that it seeks.  That information is probably best

21   obtained by talking to counsel, picking up the phone, sending

22   an e-mail.  And if that effort proves to be unsuccessful, doing

23   what other parties have done, which is to bring an adversary

24   proceeding.  I recognize that that is an unfortunate Whack-a-

25   Mole response in which you whack the mole on one side of the

57

1    game board only to have a mole jump up in another place and

2    have to whack again.

3          But that's how the system works.  Step one is to try

4    to do it cooperatively.  Step two, I suppose, is the 2004

5    request, which is now being rebuffed, not necessarily because

6    it's the wrong approach, but because I believe it to be wrong

7    for this case.  I believe it is inappropri8ate for every

8    claimant in an LBI case to have what amounts to coercive

9    discovery rights before the claim resolution process has had a

10   full and fair opportunity to run its course.  But impatient

11   litigants have recourse, and that's to start an adversary

12   proceeding which is certainly an available option.  Expensive,

13   inefficient, to be sure, but available absolutely.  That's not

14   to say that such an adversary proceeding would be one that

15   would get past a motion to dismiss.  That's not to say that

16   such an adversary proceeding would have merit.  But it's an

17   available option.

18         The motion is denied with the comment that it would

19   be desirable for the parties to try to work this out if they

20   can.  And if they can't, I'll see you again some other day.

21         MR. MCNALLY:  Thank you, Your Honor.

22         MR. WAISMAN:  Good morning, Your Honor.  Shai

23   Waisman, Weil, Gotshal & Manges on behalf of the LBHI debtors.

24   Your Honor, the only remaining matter on the agenda is the

25   motion of CES Aviation V LLC to sell a Sikorsky S-76C+

87

1

2                              C E R T I F I C A T I O N

3

4        I, Lisa Bar-Leib, certify that the foregoing transcript is a

5        true and accurate record of the proceedings.

6        **Lisa Bar-Leib**    Digitally signed by Lisa Bar-Leib
                              DN: cn=Lisa Bar-Leib, c=US
                              Reason: I am the author of this
7        _____   document
                              Date: 2009.03.30 09:25:52 -04'00'

8        LISA BAR-LEIB

9

10       Veritext LLC

11       200 Old Country Road

12       Suite 580

13       Mineola, NY 11501

14

15       Date:  March 27, 2009

16

17

18

19

20

21

22

23

24

25

**EXHIBIT B**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555 (JMP)

   08-01420 (JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.

   Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

   Debtor.

- - - - - - - - - - - - - - - - - - - -x

     United States Bankruptcy Court

     One Bowling Green

     New York, New York


     January 14, 2009

     2:32 PM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

1    to deny the 2004 request without prejudice to its being

2    reasserted in the future in the even that the information

3    sought is not otherwise forthcoming by virtue of the work of

4    the creditors' committee or the work of the examiner.

5              Counsel for the committee has stated that the

6    committee is involved as an estate fiduciary in an examination

7    of the facts and circumstances surround the sale of debtors'

8    assets to Barclays.  That investigation would appear to subsume

9    many of the same issues that are the subject matter of the

10   pending 2004 request.

11             Additionally, the argument with respect to

12   appointment of the examiner made clear particularly since the

13   motion was first filed by the Walt Disney Company, that the

14   examiner will be looking into questions of whether or not

15   assets of non-debtor affiliates somehow made their way over to

16   Barclays at the beginning of the case under the authority of

17   the September 20 sale orders.

18             Under the circumstances, it seems to me that we have

19   one examiner and one creditors' committee that will be dealing

20   with the very same subject matter.  Admittedly, they will be

21   dealing with that subject matter not from the perspective of a

22   zealous advocate.  And no doubt Mr. Horowitz would be doing

23   this discovery as a zealous advocate.  But zealous advocacy is

24   not a requirement to obtain information.  I believe under the

25   circumstances that it makes good sense for the case as a whole

91

1    for particularized requests for information to be put to one

2    side and not to become the subject of ongoing contested matters

3    in this Court unless exception circumstances can be shown.  I

4    believe that no exceptional circumstances have been shown here.

5    But that does not mean that the indentured trustee is not

6    entitled to have questions answered in due course.  And I

7    expect that those questions will be answered at some point over

8    the next several months.

9           In the event that those questions remain outstanding,

10   counsel for the indentured trustee should feel completely free

11   in reasserting its 2004 request and nothing that I've said here

12   is intended to deprive the indentured trustee of the ability to

13   later attempt to assert that the circumstances, in fact, are

14   exceptional.  And that such particularized discovery is, as a

15   result, appropriate.

16          That's my ruling.

17          MR. HOROWITZ:  Your Honor, I ask if we could

18   participate in the examiner meet and confer.

19          THE COURT:  Well, see that's a subject which is no

20   longer before me.  My inclination to that is no.  And it's no

21   for several reasons.  First, as you pointed out in your own

22   comments a few minutes ago, you did not have standing to appear

23   and be heard with respect to the examiner motion because you

24   did not intervene in that proceeding.  Secondly, you are not

25   exceptional as it relates to the multitude of individuals who

142

1

2                    C E R T I F I C A T I O N

3

4      I, Lisa Bar-Leib, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6      Lisa Bar-Leib   Digitally signed by Lisa Bar-Leib
                       DN: cn=Lisa Bar-Leib, c=US
                       Reason: I am the author of this
7      _____   document
                       Date: 2009.01.15 17:45:46 -05'00'

8      LISA BAR-LEIB

9

10     Veritext LLC

11     200 Old Country Road

12     Suite 580

13     Mineola, NY 11501

14

15     Date:  January 15, 2009

16

17

18

19

20

21

22

23

24

25

**EXHIBIT C**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555(JMP)

Adv. Case No. 08-01420(JMP)(SIPA)

Adv. Case No. 09-01480

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS INC., et al.,

                    Debtors.

- - - - - - - - - - - - - - - - - - - - -x

SECURITIES INVESTOR PROTECTION CORPORATION,

                    Plaintiff-Appellant,

          -against-

LEHMAN BROTHERS INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - -x

PT BANK NEGARA IndONESIA (PERSERO) TBK,

                    Plaintiff,

          -against-

LEHMAN BROTHERS SPECIAL FINANCING, INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - -x

                (continued on next page)

2

1

2          U.S. Bankruptcy Court

3          One Bowling Green

4          New York, New York

5

6          December 16, 2009

7          10:02 AM

8

9

10   B E F O R E:

11   HON. JAMES M. PECK

12   U.S. BANKRUPTCY JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

104

1    asset here to pursue and can concentrate its efforts in the UK

2    in the LBIE case.

3         Additionally, for policy reasons, I consider

4    miscellaneous Rule 2004 requests such as this to be incredibly

5    wasteful.  And that was really embedded in my Carret comments.

6    To the extent that parties who have reasonable questions can

7    get those questions answered, that should happen in a reliable

8    way.  And motion practice relating to this kind of

9    particularized discovery should be kept to a minimum.  I'll

10   entertain orders in respect of denial of this motion, but

11   without prejudice to other procedures that may be adopted by

12   Maybank if they're unable to get information from the debtor in

13   a cooperative form.

14        MR. FIRESTONE:  Thank you, Your Honor.

15        THE COURT:  Okay, let's -- I think we go to the SIPC

16   agenda?

17        MR. FIRESTONE:  Yes, Your Honor.

18        MR. KOBAK:  Good afternoon, Your Honor.  James Kobak,

19   Hughes, Hubbard & Reed on behalf of the SIPC trustee.  We had

20   two items on your calendar:  number 18 which concerns the

21   allocation motion and number 19 which concerns the CalPERS

22   matter.  I think the discussion before Your Honor in the LBHI

23   case took care of number 19, so the only thing that's left is

24   the allocation motion.  I'll try to be as brief as possible

25   because I know it's been a long morning for all of us.

146

## C E R T I F I C A T I O N

1

2

3

4    I, Clara Rubin, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6    **Clara**        Digitally signed by Clara Rubin
                       DN: cn=Clara Rubin, o, ou,
                       email=digital1@veritext.com,
7    **Rubin**        c=US
                       Date: 2009.12.18 15:48:19 -05'00'

8    Clara Rubin

9    AAERT Certified Electronic Transcriber (CET**D-491)

10

11    Veritext

12    200 Old Country Road

13    Suite 580

14    Mineola, NY 11501

15

16    Date: December 18, 2009

17

18

19

20

21

22

23

24

25