**WINTHROP COUCHOT**          **Hearing Date: May 12, 2010 at 10:00 a.m. (EST)**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
Sean A. O'Keefe – NY Bar No. 1980853, CA Bar No. 122417
Paul J. Couchot – CA Bar No. 131934
Counsel for the SunCal Voluntary Debtors

**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400
Louis R. Miller – CA Bar No. 54141
Martin H. Pritikin -- CA Bar No. 210845
Special Litigation Counsel for the SunCal Debtors

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | **Chapter 11** |
| | **Case No. 08-13555 (JMP)** |
| **LEHMAN BROTHERS HOLDINGS** | **Jointly Administered** |
| **INC, et al.,** | |
|          **Debtors.** | |

## REPLY RE: MOTION OF THE SUNCAL DEBTORS FOR AN ORDER DETERMINING THAT THE AUTOMATIC STAY DOES NOT APPLY; OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM STAY

The SunCal Debtors[1] hereby submit the following *Reply* (the "Reply") to the *Objection* (the "Objection") filed by Lehman Brothers Holdings, Inc. ("LBHI") and Lehman Commercial Paper, Inc. ("LCPI") (collectively, "Lehman") to that certain *Motion Of The SunCal Debtors For An Order Determining That The Automatic Stay Does Not Apply; Or, In The Alternative, Granting Relief From Stay* (the "RFS Motion" or "Motion")

## I

## PRELIMINARY STATEMENT

The instant Motion is premised, primarily, on two critical *Sonnax* factors—judicial economy and balance of harms. As to the judicial economy factor, Lehman does not dispute that two trials could well result if the Motion is denied: One trial would proceed as to non-debtor defendants, including Lehman ALI, Inc. and LV Pacific Point LLC, both of whom are already represented by LCPI's present counsel; and then a second trial would proceed at some future date against LCPI alone, again with LCPI's present counsel. Both trials would address essentially the same facts, the same legal issues, and involve the same witnesses, documents and lawyers. Under no rational analysis does this result promote "judicial economy." To the contrary, it would be a classic case of inefficiency and waste.

As to balance of harms, LCPI alleges that it will be "burdened" if the Adversary Proceeding in California goes forward. Respectfully, LCPI is not being burdened by anything: It is *voluntarily* taking title to the SunCal Loans through the transaction described in the Compromise

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the moving papers, with the following exception: The original movants consisted of the SunCal Voluntary Debtors as well as Steven M. Speier, the Chapter 11 Trustee (the "Trustee") on behalf of the "SunCal Trustee Debtors" (collectively referred to as the "SunCal Debtors"). Since the filing of the motion, the Trustee has indicated he would be withdrawing as a moving party, pursuant to a tentative settlement reached between the Trustee and the Lehman Entities regarding the Trustee's claims in the California Adversary Proceeding. However, this tentative settlement, even if approved, does not significantly alter the relief requested. Although the Trustee had asserted causes of action against three non-debtor Lehman Entities—Lehman ALI, OVC, and Northlake Holdings—as well as Fenway, the SunCal Voluntary Debtors still have causes of action pending against, in addition to debtor LCPI, non-debtor Lehman Entities Lehman ALI, LV Pacific Point LLC, and Lehman Re, Ltd., as well as Fenway. For convenience, the term "SunCal Debtors" will continue to be used herein, although it shall now refer to the SunCal Voluntary Debtors unless indicated otherwise.

Motion. It is *voluntarily* re-inserting itself back into the Adversary Proceeding in the place and stead of Fenway, and thereby assuming the very burden that it purports to eschew.

Moreover, *just five months before LCPI filed bankruptcy, all of the SunCal Loans were held by Lehman ALI, a non-debtor*; and LCPI acknowledges in its most recent pleading that five of the eight loans now being acquired will be transferred back to Lehman ALI. If LCPI does not want to bear the alleged "burden" associated with the ownership of the SunCal Loans, then it should allow Lehman ALI, who previously owned the loans, and who is already involved in the Adversary Proceeding as a non-debtor litigant, to take title to these assets.

LCPI's burden argument is also contrary to the evidence. The Adversary Proceeding will proceed against Lehman ALI and other non-debtors, whether LCPI voluntarily joins the case or not. If LCPI joins this litigation, it will be represented by the same lawyers who represent Lehman ALI and LV Pacific Point; and these lawyers will address and litigate the same facts, the same legal issues and the same witnesses for all three defendants. Any additional burden on existing counsel occasioned by LCPI's participation will be slight indeed. In contrast, if LCPI joins the litigation and then is dismissed out a second time due to the automatic stay, it will have to face this array alone, in a separate trial in the future.

LCPI's and LBHI's burden argument also mischaracterizes their status. The Lehman debtors are not running an ongoing business. To the contrary, they are in the midst of liquidating Chapter 11s and these liquidations are being managed by outside professional liquidators. There is no ongoing "business reorganization" that can or will be impaired if the Adversary Proceeding proceeds. The resolution of the claim priority question in California will only serve to facilitate and expedite Lehman's ongoing liquidation.[2]

---

[2] LBHI's contention that its automatic stay applies based upon the lien rights that it is purportedly being assigned by Fenway and the subrogation claim arising from its guarantee of LCPI's obligations under the MRA is based upon a nonexistent foundation. Fenway's lien rights and LBHI's guarantee are being extinguished per the express terms of the Compromise Motion. Accordingly, there are no lien rights to assign and no guarantee upon which to base subrogation rights. LBHI's attempt to change this inescapable conclusion, by "supplementing" the Compromise Motion (after briefing had closed) so as to expressly provide that LBHI's stay will apply, is unavailing.

On the other hand, the prejudice that will accrue to the SunCal Debtors if the Adversary Proceeding is not allowed to proceed is substantial. That litigation is an integral part of the SunCal Debtors' ongoing reorganization effort. Until that action is completed, no material distribution to creditors is possible. Hundreds of creditors—almost all of whom, along with their documents, witnesses and lawyers, are located in California—will simply have to wait for payment. In the process, a number of major development projects in California will remain frozen until LCPI decides that its "liquidation" has proceeded to a more favorable stage. The balance of the harms in this case tips in favor of the SunCal Debtors.

Finally, as the Court is well aware, litigation within Chapter 11 proceedings has a strong tendency to expedite and facilitate the all important "settlement dynamic" that is crucial to the Chapter 11 process.[3] Allowing the litigation to proceed in California will either bring about a judicial resolution, or more likely, facilitate a settlement: Delaying this litigation will only delay the resolution of the pending disputes to the detriment of all affected creditors.

## II

## THE ALLEGED STAY VIOLATIONS

Much of Lehman's Objection is premised upon the contention that a motion for relief from stay that is otherwise valid and meritorious should be denied as a means of extracting "retribution" against the movant. Lehman argues that the SunCal Debtors willfully violated LCPI's automatic stay by pursuing their own reorganization effort in California, and that this course of conduct warrants punishment in the form of the denial of the Motion.[4] Lehman's argument is long on characterization, short on facts and devoid of evidentiary support.

---

[3] Indeed, certain of the Lehman Entities recently reached a tentative settlement with the Trustee in the shadow of the very Adversary Proceeding that Lehman is now trying to thwart.

[4] Lehman asks for sanctions against the SunCal Debtors in the Objection. This is not only procedurally improper, but (to adopt a page from the Lehman's litigation playbook) a clear and unequivocal violation of the SunCal Debtors' automatic stay. Moreover, it is ironic, to say the least, that Lehman is seeking sanctions for the SunCal Debtors' ostensible *failure* to seek relief from stay in opposition to a motion *seeking relief from stay.*

As an initial matter, instead of an *ad hominem* attack on the SunCal Debtors, if LCPI believes that its automatic stay has been violated, it can and should file an appropriate motion seeking relief. What it cannot do is seek this relief based upon a string of unsubstantiated allegations coupled with a footnote "prayer" *in an opposition pleading*. *See In re Oliver*, 333 U.S. 257, 275 (1948) ("Except for a narrowly limited category of contempts, due process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.").[5] This attack is procedurally invalid and should be disregarded.[6]

Moreover, Lehman's argument is premised on a mischaracterization of the relevant procedural history. It is true that the SunCal Debtors' filed a motion in California in January 2009 seeking the use of their own cash resources to pay ordinary and necessary bills. This ordinary course motion was filed in good faith, with the understanding that the proposed relief would not constitute a stay violation, even if LCPI held a lien on the same (which it was later established it did not). In response to this motion, LCPI filed a motion to enforce its automatic stay (the "Stay Enforcement Motion"), and represented to this Court, *erroneously*, that it was indeed the holder of a lien on the subject cash; and it further alleged that the SunCal Debtors' proposed use of these funds constituted a violation of its stay. In response to the Stay Enforcement Motion, the Court contacted counsel for the SunCal Debtors and advised counsel that the Court agreed with LCPI's contention (to the extent that ownership rights existed). LCPI fails to note that *the cash collateral*

---

[5] *Sterling Nat'l. Bank v. A-1 Hotels Intern., Inc.,* 2004 WL 1418201, at *2 (S.D.N.Y. June 23, 2004) ("Before imposing sanctions on a person charged with civil contempt, due process requires that the person receive notice and an opportunity to be heard") (citing *Shoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926, 934-35 (2d Cir.1992), *overruled in part on other grounds, Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343 (2d Cir.2000)).

[6] If and when LCPI seeks relief through the proper procedural means, the SunCal Debtors will respond. They look forward to introducing certified transcripts of hearings held before Judge Smith in California where LCPI vociferously represented to Judge Smith that its automatic stay "was not an issue." (See, OKeefe Decl. & Couchot Decl.).

*motion and the Stay Enforcement Motion were then consensually withdrawn based upon the Court's comments.*

LCPI is also correct that the SunCal Debtors sought clarification from the bankruptcy court in California regarding the scope and application of LCPI's automatic stay. What LCPI fails to disclose is that was in the context of a contested matter that *was initiated by LCPI in California*, in the form of a motion for relief from stay.[7] LCPI also fails to disclose that it affirmatively argued to Judge Smith in that motion that the automatic stay in its case not only barred any subordination effort by the SunCal Debtors, but that this stay made the SunCal Debtors' reorganization cases futile under 11 U.S.C. § 362(d)(2) and (3). It was *in response* to these arguments by LCPI that the SunCal Debtors submitted counter-arguments, which prevailed before Judge Smith. Judge Smith ruled, in reliance upon cases in both the Ninth and Second Circuits, that an effort to equitably subordinate a claim affirmatively filed in a Chapter 11 case by another Chapter 11 debtor was a "defensive" act that did not violate the claimant-debtor's automatic stay (the "Stay Finding").

*In reliance upon the Stay Finding*, which remained the law of the case in the SunCal Cases until the BAP decision in December 2009, the SunCal Debtors filed the Adversary Proceeding against LCPI and pursued a reorganization plan that provided for similar relief.

Moreover, any "stay" argument by LCPI was eliminated as of June 30, 2009, when the SunCal Debtors *obtained a judicial finding confirming the fact that LCPI did not own two of the three loans at issue in the SunCal Debtors' proceeding, those loans having been sold previously to Fenway*.[8] The third loan was a mezzanine loan that LCPI retained, but it was under water according to LCPI's own appraisals. LCPI negotiated a stipulation with the SunCal Debtors that

---

[7] LCPI filed its California stay relief motion on January 23, 2009—prior to the January 30, 2009 hearing before this Court on LCPI's emergency motion to enforce its own stay. Thus, notwithstanding this Court's statements at that January 30 hearing, the SunCal Debtors were obligated to respond to and defend against LCPI's stay relief motion in California unless and until LCPI took it off calendar or sought to have it transferred to New York—which LCPI did not do.

[8] Lehman does not dispute that it was appropriate for the SunCal Debtors to bring their Motion to Strike Claims before Judge Smith, and for Judge Smith to rule on that motion. LCPI claims that it retained the "revolver" portion of the Ritter Ranch Mezz Loan, but LCPI asked Judge Smith to find for it on this point, and she has not done so.

the lien (against equity interests) securing this loan would be void for all purposes other than an unforeseen equity distribution, and that LCPI's stay would not be asserted in order to avoid protracted litigation on a Section 506(d) motion. After LCPI's counsel sent an execution copy to SunCal Debtor's counsel, after having informed the California Bankruptcy Court of the stipulation, after having the Section 506(d) motion consensually taken off calendar based on LCPI's representation to submit the stipulation to the Court, and after having disclosed the stipulation in LCPI's own disclosure statement, LCPI now appears to be reneging on the stipulation.

This Court should also be aware that from March of 2009 until December of 2009, LCPI never asserted the automatic stay in California. To the contrary, *LCPI's counsel affirmatively represented to the court in California, at several hearings, that LCPI's stay "was no longer an issue in the SunCal Debtor cases."* To the extent that LCPI's counsel suggests otherwise at the hearing on the instant Motion, the SunCal Debtor will provide this Court the transcripts confirming these representations to the court in California.

This leaves only the time frame from the issuance of the opinion by the BAP (the "BAP Ruling")[9] in December of 2009 through the current date. During this period, the SunCal Debtors treated LCPI as a nonparty in their litigation, and communicated this to LCPI's counsel, in writing. Established authority confirms that this course of conduct does not violate the stay. *See In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 140 B.R 969, 978-79 (N.D.1I1.1992), cited with approval in *In re Miller*, 262 B.R. 499, 504 (9th Cir. BAP 2001) (("The (Mahurkar) court did not, however, dismiss the action against [debtor]; rather, it merely treated [debtor] 'as if [it] were no longer a party to the litigation' and 'as if [it] were an interested non-litigant.'")). Moreover, the subordination claims could not affect LCPI, since Judge Smith had affirmatively ruled in June of 2009 that LCPI held *no interest* in the loans being subordinated. Contrary to LCPI's contention, this finding was never set aside by the BAP. It remains the law of

---

[9] The BAP Ruling is currently on appeal to the Ninth Circuit and has been fully briefed. The SunCal Debtors believe that this ruling will be reversed as contrary to existing precedent in the Ninth Circuit. Notably, it is also contrary to well reasoned precedent in the Second Circuit that is directly on point.

the case and LCPI is appealing Judge Smith's ruling. Finally, when Judge Smith dismissed LCPI from the Adversary Proceeding in March 2010, the SunCal Debtors promptly filed a revised complaint, thereby formally eliminating LCPI as a named defendant.

Lastly, LCPI' contention that the SunCal Debtors violated LCPI's stay by leaving a plan "on file" that provided for subordination, after the BAP Ruling, ignores the facts. First, this plan was filed in February of 2009, *long before the BAP Ruling*. Second, it was filed *in response to LCPI's relief from stay motion, which filing was approved by Judge Smith's Stay Finding*. Third, *by mutual agreement with the Lehman Entities*, the SunCal Debtors have not proceeded with this plan in the California court since September of 2009.

**III**

**<u>LCPI'S STAY DOES NOT APPLY</u>**

Lehman trumpets the BAP's statement that this Court "must have the final say as to whether the automatic stay applies to the bankruptcy case before it." Yet Lehman concurrently argues that this Court cannot exercise this very power, since the BAP has already concluded that the automatic stay bars an equitable subordination claim. The Court should reject these contradictory positions.

Whether the Court addresses the issue of whether LCPI's stay applies, as Lehman invites the Court to do, or whether it grants relief from stay (under the *Sonnax* factors, as discussed below), the Court should allow the SunCal Debtors' Adversary Proceeding and related plan of reorganization go forward against LCPI and/or as to the Sold Loans. As the SunCal Debtors argued in their opening brief, there is persuasive authority in both the Second and Ninth Circuits, including this Court's prior ruling in the Shinsei Bank case and Judge Drain's well reasoned opinion in *In re Metiom,* 301 B.R. 634 (Bankr.S.D.N.Y. 2003), that the automatic stay does not apply to an effort to equitably subordinate claims affirmatively filed by Lehman. These authorities would likewise warrant granting relief from stay.

Although Lehman contends that this Court's ruling in the Shinsei Bank case was grounded in Japanese law, their argument does not withstand analysis. An action to subordinate a claim,

whether taken in Japan or California, seeks the same result. Either *this relief* violates the stay or it does not. In the Shinsei matter, this Court ruled that this relief, which was sought through a plan, did not violate LBHI's stay. Respectfully, the same result should obtain in California. As for Judge Drain's ruling in *Metiom*, which is to the same effect, it was not challenged in the Objection.

IV

**THE COURT SHOULD GRANT RELIEF FROM STAY UNDER *SONNAX***

Lehman contends that the Motion fails to satisfy the applicable *Sonnax* factors for granting relief from stay. *See Sonnax Industries, Inc. v. Tri-Component Products Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280 (2d Cir. 1990). They are wrong:

**A) Sonnax Factor Two: Lack Of Any Connection With Or Interference With The Bankruptcy Case**. Lehman's first contention[10] is that the Fourth Amended Complaint (the "FAC") filed in the Adversary Proceeding includes allegations that refer to *post-petition conduct* engaged in by LCPI's professionals *in the SunCal Debtors' cases* that damaged *the SunCal Debtors'* post-petition. According to LCPI, "claims within a bankruptcy court case are integral to the administration of a claim and are deemed to be within the bankruptcy court's core jurisdiction." (Objection ¶ 31.) Such claims should not, according to LCPI, proceed in California.

First, the core wrongdoing that is alleged to have occurred took place pre-petition.[11] Second, if LCPI and/or its agents engaged in wrongdoing in another court, *post-petition*, the claims arising from this *post-petition* wrongdoing are not subject to the stay. *See In re Sonnax Indus.*, 907 F.2d at 1285-1286 ("Generally, proceedings in which the debtor is a fiduciary, *or involving postpetition activities of the debtor*, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is protection of the debtor and his estate from his

---

[10] For the Court's convenience, the SunCal Debtors herein address the *Sonnax* factors in the order in which they were raised in Lehman's Objection. The SunCal Debtors do not concede, however, that the factors that Lehman emphasizes are the most important ones.

[11] *See* FAC ¶¶ 39-114, 204-220 (attached to O'Keefe Decl. submitted with the Motion).

creriors.").[12] Section 362(a)(1) only bars litigation claims that "w[ere] or could have been commenced *before the commencement of the case under this title*," and claims based upon post-petition wrongdoing fall outside these parameters. 11 U.S.C. § 362(a).[13]

Section 959 of Title 28 categorically provides that "trustees, receivers or managers of any property, including debtors in possession, may be sued, *without leave of the court appointing them*, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959 (emphasis added). An agent acting for a debtor-in-possession is bound to comply with the law in other jurisdictions to the same degree as all other parties and is subject to recourse if it fails to do so. *Id.*[14]

Third, the bankruptcy court in California *has already determined* that LCPI (and Lehman ALI) engaged in wrongdoing (made a "misrepresentation" to the Court) when they filed claims in the SunCal Cases as "creditors," when in fact they did not own the underlying claims. Although on appeal, this ruling remains in effect. Staying recourse for the harm arising from this judicially determined wrong will not undo this finding; it will only delay recourse.

Fourth, the entire concept that the stay should serve as shield to immunize post-petition wrongdoing by a debtor's agents is anathema to the equitable underpinnings of the bankruptcy

---

[12] *See also*, *Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.)*, 744 F.2d 332, 335 (3d Cir.1984), ("Proceedings or claims arising post-petition are not subject to the automatic stay."); *Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.,* 33 B.R. 996, 999-1000 (N.D.Ga.1983); *In re Powell,* 27 B.R. 146, 147 (Bankr.W.D.Mo.1983); *In re Anderson,* 23 B.R. 174, 175 (Bankr.N.D.Ill.1982); *In re York,* 13 B.R. 757, 758-59 (Bankr.D.Me.1981).

[13] For example, if a member of Alvarez & Marsal engages in conduct that would constitute a violation of Fed.R.Civ.P. 11 in a case pending in the Western District of Texas, the punishment meted out by the court in the Western District of Texas would not be barred by the automatic stay in LCPI's case, and the existence of a hearing on this wrong would not constitute grounds for dragging that hearing into this Court. Similarly, if the managers of LCPI or its counsel engage in wrongdoing in another state or jurisdiction and thereby are subjected to legal recourse, this does not violate the stay.

[14] The cases Lehman cites in its Objection (at ¶ 31) are inapposite. *In re Southmark Corp.*, 163 F.3d 925 (9th Cir. 1991), involved claims *by the debtor* that the professionals breached duties *to the debtor. In re Harris Pine Mills*, 44 F.3d 1431 (9th Cir. 1995) simply addressed whether state law claims by a third-party against a trustee gave rise to federal court jurisdiction.

system. Bankruptcy courts are in the business of facilitating payment on prepetition claims, not insulating post-petition wrongdoers from recourse.

LCPI's contention that relief from stay would "interfere with the administration" of LCPI's case is not supported by the evidence. As the Court is aware, *the Lehman debtors are not engaged in a reorganization effort*. Lehman's business was closed two years ago. The purpose of this instant proceeding is to facilitate *liquidation*. This litigation is not being conducted by "key" management personnel, but by a court appointed liquidation firm, Alvarez & Marsal ("A&M"). The "administrative interference" argument carries no weight in this context. *See Bates & Rogers Construction Corp.*, 97 B.R. 905, 908 (N.D.Ill.1989) ("[Debtor] is involved in a liquidating Chapter 11 which involves no reorganization."). Consequently, no administrative urgency or plan of reorganization exists to facilitate."); *In re Lawndale Steel Co., Inc.,* 1991 WL 242977, *7 (Bankr. N.D.Ill., May. 2, 1991) ("[T]here will be no unforeseen effect on the efficient administration of the estate if abstention is exercised. The Debtor is implementing a Plan of Liquidation, and chose to do so via Chapter 11 in lieu of the involuntary Chapter 7 case initially filed by its creditors."). To the contrary, resolution of the litigation in California will expedite LCPI's liquidation by resolving a lien priority dispute *that must be resolved in order for the SunCal Loans to be liquidated*.

      **B)**     **Sonnax Factor Twelve: Impact of the Stay on the Parties and the Balance of Harms.** Lehman contends that this factor militates in their favor for three reasons. First, Lehman contends that it has not received the benefit of the "breathing spell" afforded by the stay due to the SunCal Debtors' purported past violations of the stay. This contention was already addressed above: No violations occurred.

Moreover, the Lehman Entities are represented by the two largest bankruptcy firms in the world -Weil, Gotshal & Manges (the "Weil Firm") and Pachulski, Stang, Ziehl & Jones (the "Pachulski Firm"). *On any given day, these two law firms have more lawyers on vacation than the law firms representing the SunCal Debtors have in totality*. The Lehman Entities also have a

thousand times the cash resources of the SunCal Debtors. The SunCal Debtors are a flea on this elephant's back.

Lehman's second contention, that they are "in the crucial stages of their reorganization efforts" (Obj. ¶ 35), is incredible given the fact that they closed their business operations almost two years ago. The ongoing *liquidation* of Lehman's assets is undoubtedly time consuming and in many instances complex. However, no business is in the midst of being "reorganized." To the extent that anything "crucial" is going on in Lehman's case, it will not be affected if the Weil and Pachulski firms are required to spend a very small slice of their enormous litigation pools defending what is undoubtedly "small potatoes" litigation in their universe.

The third contention is that the costs the Lehman Entities will incur in defending against the Adversary Proceeding "far outweigh[] any purported harm to the SunCal Debtors" (Obj. ¶ 35). This contention could not be further from the truth. The Lehman Entities have virtually unlimited resources with which to participate in the Adversary Proceeding.  The same lawyers who represent LCPI will remain involved in the action on behalf of non-debtors Lehman ALI and LV Pacific Point in any event. The additional cost of defending LCPI will be *de minimis*.

The SunCal Debtors would also point out, again, that LCPI is intervening in the Adversary Proceeding by choice. Title to the SunCal Loans could just as easily be vested in Lehman ALI, instead of LCPI, through the pending Compromise Motion.  Then this non-debtor would pay all of the litigation costs.

In contrast to the all but complete lack of harm that Lehman will suffer if the litigation proceeds, the SunCal Debtors and their creditors will suffer severe harm if the action is delayed. The Adversary Proceeding is an integral part of the SunCal Debtors' reorganization effort. Without this relief, the creditors will receive a very nominal dividend. Equally important, delaying this litigation places the properties owned by the SunCal Debtors' at risk, since they cannot be sold until the Lehman Entities' lien priority is resolved. As more fully detailed in the RFS Motion, delay means costs, damages and actual danger.

**C)     Sonnax Factor Ten: The Interests of Judicial Economy and Expeditious Economical Resolution of Litigation.**  Lehman first argues that "judicial economy" will be served if the RFS Motion is denied due to the alleged past violations of the stay. But there is no connection between *judicial economy* and any purported but nonexistent violations of the stay.

Lehman's second argument is that the Adversary Proceeding is in the early stages of discovery. However, document discovery has been proceeding for six months and is almost complete, with both sides having produced millions of pages of written or electronic matter.[15]  *See Crown Heights Jewish Community Council, Inc. v. Fischer (In re Fischer),* 202 B.R. 341, 355 (E.D.N.Y.1996) (granting relief from stay to allow litigation to continue where great judicial resources had already been expended outside of bankruptcy court).  Assuming no further interference from Lehman, this process can be completed within a matter of several months. This is not a case in its "early stages."

This argument also misses the issue. The question presented by this *Sonnax* factor is whether the cause of *judicial economy* will be promoted or will suffer if the RFS Motion is denied. Whether or not LCPI participates in the litigation, the case will proceed against several other non-debtor parties, including Lehman ALI and LV Pacific Point. Since Lehman ALI, LV Pacific Point and LCPI are all represented in the litigation by the Weil and Pachulski firms, the judicial economics of allowing the action to proceed as LCPI as well are manifest. This relief avoids the necessity of conducting two trials wherein the same facts and issues will be addressed by parties who are already represented by the same counsel.

Lehman apparently purports to question the extent of overlap between the litigation against LCPI and the litigation against Lehman ALI.  But the gist of the claim is that the *exact same individuals* at Lehman spoke and acted on behalf of both Lehman ALI and LCPI, and made

---

[15] Lehman flatly misstates the facts when it claims that document discovery in the Adversary Proceeding been limited to matters that overlap with the substantive consolidation matter:  *all* document production relating to both matters was to have been completed already by court order.  Lehman is correct that depositions have not gone forward, but that is only because the Lehman Entities have failed to completely comply with their document production obligations, while at the same time they are refusing to participate in depositions until all document production is completed.

representations that applied to both entities.[16] Thus, severing LCPI from the litigation threatens not only significant duplication of effort, but also inconsistent judgments. Moreover, although the lists of third-party creditors who worked on Lehman ALI-financed versus LCPI-financed projects are not identical, there is some overlap. In any event, virtually all of them are located in California, and so requiring a number of them to participate in a parallel proceeding in New York will impose an unnecessary burden. *See In re Bushnell*, 2000 WL 35734372, *5 (Bankr.D.Vt., Jan. 12, 2000) ("Continued imposition of the stay will require the more than 50 RICO Claimants to try their cases, by and large, twice. By way of contrast, the Debtor will only be required to try his case once, whether or not the stay is lifted. Furthermore, the Debtor's main counsel is based in New York City as is the vast majority of discoverable material. Accordingly, the balance of the harms tips in favor of the RICO Claimants.").

Relief from stay will also bring closure. Upon the completion of the trial in the Adversary Proceeding, LCPI with either take its collateral and go home, or it will take its reduced dividend after subordination and go home. In either case, its rights will be determined and its claims will be liquidated. *See In re Quigley Co., Inc.*, 361 B.R. 723, 744 (Bankr.S.D.N.Y.2007) ("[W]hen discussing the discretionary stay, I suggested that a resolution of the coverage issue through arbitration might prompt a resolution of the entire coverage dispute. *At a minimum, it will resolve most of the dollars in dispute*. Accordingly, stay relief will have a greater chance of encouraging a complete resolution of the issues, (*Sonnax* Factor # 1), and will promote 'the interests of judicial

---

[16] The following allegations from the FAC are illustrative:

71.     Each of these individuals at Lehman [Mark Walsh, Paul Hughson and Frank Gilhool] had both apparent and actual authority to act and make representations on behalf of both Lehman ALI…and LCPI….

72.     In their dealings with SunCal, Walsh and the other Lehman executives generally made no distinction between … Projects financed by Lehman ALI debt and Projects financed by LCPI debt…

75.     Walsh, on behalf of Lehman ALI and LCPI, instructed SunCal's Bruce Elieff not to slow down or stop work. He assured SunCal and the Debtors that Lehman ALI and LCPI would provide the necessary funding to pay vendors and keep development of their Projects moving forward…"

FAC ¶¶ 71-72, 75 (attached to O'Keefe exhibit to Motion).

economy and the expeditious and economical resolution of litigation.] (*Sonnax* Factor # 10).").
(emphasis added).

Indeed, only recently, the Trustee on behalf of the SunCal Trustee Debtors reached a tentative settlement with the Lehman Entities regarding his claims against them. Obviously, such a settlement could not have been reached had the Adversary Proceeding not been pending. There is no reason to think a mutually agreeable settlement could not also be reached with the SunCal Voluntary Debtors if the litigation is allowed to proceed against all defendants.

      **D)**      **Sonnax Factor Seven: Whether Litigation In Another Forum Would Prejudice The Interests Of Other Creditors.**  Lehman contends that the value of their estates will be reduced to the detriment of the interests of other creditors if the litigation proceeds. In support of this contention, Lehman cites the BAP statement that LCPI "would be affected by the subordination action." This argument ignores the obvious: The value of the SunCal Loans has already been "affected." The value of these loans is reduced (and will remain reduced) *by the very existence of unresolved defensive claims* asserted by the SunCal Debtors. Allowing the litigation to proceed will either eliminate or validate these defensive claims, in whole or in part, and thereby resolve the value of the SunCal Loans.

The cost and expense burden alleged by Lehman is nominal for these parties. Further, this modest burden should be borne now by Lehman ALI, LV Pacific Point and LCPI, collectively, in a single proceeding, with all parties represented by the Weil and Pachulski firms, rather than in separate proceedings. *In re Bushnell*, 2000 WL 35734372, *5.

Lehman's arguments with respect to this factor, assume that the automatic stay will be perpetual, but as the BAP acknowledged, this is not the case. The stay only serves as a temporary protective mechanism. It is designed to afford a debtor *who has a need*, a breathing spell. The Lehman Entities have made it clear, through their conduct, that they do not need the benefit of any respite whatsoever insofar as the SunCal Cases are concerned. To the contrary, they have managed to file eight motions for relief from stay (roughly 5,000 pages), a competing plan and disclosure statement (roughly a 1,000 pages), and to contest virtually every action taken by the SunCal

Debtors, including actions necessary to preserve the value of their own collateral. They have been engaged in non-stop offensive litigation in California for over a year, employing every possible substantive and procedural mechanism available to oppose the SunCal Debtors' reorganization effort. The Lehman Entities' stay argument is just another tool in the Lehman Entities' seemingly unlimited arsenal. The stay was not designed for this end.

      **E)    Sonnax Factor Eleven: Whether The Parties Are Ready For Trial In The Other Proceeding.**  As discussed, document production has been proceeding for months, and would be complete but for the Lehman Entities' failure to timely complete their production (they claim to be diligently working to address the situation).  If the Lehman Entities live up to their own representations, document production will be complete soon.  Depositions could be completed several months later, and even factoring in motion practice, a trial could occur perhaps later this year or early next year.  It is inconceivable that a separate proceeding against LCPI would be ready for trial anywhere near this point.

      **F)    Sonnax Factor Three: Whether The Other Proceeding Involves The Debtor As a Fiduciary.** The parties agree that this factor is not applicable.

      **G)    Sonnax Factor Four: Whether A Specialized Tribunal With The Necessary Expertise Has Been Established To Hear The Cause of Action.** Although this factor does not apply in the sense of a tax court matter or patent case, as addressed in the RFS Motion, the bankruptcy court presiding over a Chapter 11 case is uniquely well positioned to address a litigation dispute that is integral to the reorganization effort that is concurrently pending before that court.  Judge Smith has been doing so with regard to the SunCal Debtors for a year and a half.

      Lehman contends that "only this court should consider issues regarding LCPI's automatic stay and the Debtors' bankruptcy professionals."  (Obj. ¶ 47.)  However, both state and federal courts all over the United States are compelled by circumstance to determine whether a particular act or proceeding transgresses the automatic stay extant in a concurrently pending Chapter 11 proceeding. These courts have jurisdiction to determine this issue. *In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 346 (2d Cir. 1985).

**H)    Sonnax Factor First: Whether Relief Would Result In Partial Or Complete Resolution Of The Issues.** Instead of addressing the merits of this issue, Lehman argues that the litigation in California will be involved, expensive and may involve appeals. This characterization applies to substantially every litigation matter. It also avoids the issue—whether complete resolution of the issues would result if the litigation proceeds. The answer to this question is yes. At the conclusion of the Adversary Proceeding all issues relating to the priority and validity of the claims based upon the SunCal Loans will be resolved. Accordingly, both the SunCal Debtors and the Lehman debtors will know exactly what rights and assets they have, or do not have. In sum, this factor squarely militates in favor of relief from stay.

**IV**

**LBHI'S STAY DOES NOT APPLY**

In the Objection, LBHI argues that its stay will apply to the SunCal Loans after their acquisition by LCPI (via the Compromise Motion). According to LBHI, its future "interest" in these loans will arise from a "subrogation" claim and from the liens assigned to LBHI by Fenway. A review of the transaction described in the Compromise Motion establishes that these purported subrogation rights and liens rights do not exist.

The "Transaction Summary" in the Compromise Motion, provides, in pertinent part:

> Upon the assignment of the JPM Pledge and CP Notes to LBHI and the delivery of the CP Notes to LBHI, LBHI, as guarantor, will return the CP Notes to Fenway Funding and Fenway Funding will return the VFN Note to Fenway Capital. ***The CP Notes and VFN Note will be cancelled and the Supplement, Base Indenture and other documents relating to the VFN Note will be terminated.*** Each of Fenway Funding and Fenway Capital will have no further liabilities under the CP Notes or VFN Note.
>
> LCPI will repurchase the Repo Assets from Fenway Capital (by payment of the repurchase price in accordance with the following sentence) and, in connection therewith, Fenway Capital will assign to LCPI all of the Repo Assets and ***the parties will terminate the MRA and the guaranty provided by LBHI with respect thereto.*** The parties will agree that notwithstanding anything to the contrary in the Fenway Documents or otherwise, the return of the CP Notes to

> Fenway Funding and the subsequent termination of the VFN Note
> will constitute full payment of the repurchase price under the MRA
> and full and fair consideration for the repurchase transaction.

Compromise Motion at pp.9-10, ¶ 21 (emphasis added).

The transaction described above specifically states that the Fenway documents—including the MR, the CP Notes, and the guarantee LBHI issued in favor of Fenway to guarantee LCPI's performance under the MRA—*are being terminated*.  These facts directly contradict the very foundation for LBHI's stay claim.  LBHI cannot be subrogated to nonexistent rights.

Although Fenway may have had certain lien rights against the Repo Assets *under the MRA*, per the Motio*n, the MRA is being extinguished and Fenway's claims are being extinguished*. LBHI cannot "succeed" to lien rights under a contract that is expressly being terminated.  No stay is implicated by lien rights that do no exist.

All but conceding as much, Lehman has tried to "fix" this flaw by gerrymandering the Compromise Motion.  The Compromise Motion was filed on March 25.  The SunCal Debtors' opposition was filed on April 7.  Lehman's reply was filed on April 12.  On April 14, the SunCal Debtors filed the instant RFS Motion, pointing out that LBHI would have no rights upon consummation of the Compromise Motion transaction, pursuant to the terms of that motion.

Then, on May 5—seven weeks after the Compromise Motion was filed, and *the day before Lehman filed its Objection to this RFS Motion*—Lehman submitted its "revised order" on the Compromise Motion, which referred for the first time to LBHI's "subrogation" to Fenway's security interests, and of Fenway's "assignment" to LBHI of those interests.  Lehman's Objection to the RFS Motion relies exclusively on this *revised* order to argue that LBHI's stay will apply upon consummation of the transaction.  (Obj., ¶ 53).

Not content to stop there, the day *after* Lehman filed its Objection to the RFS Motion, it filed a "supplement" to the Compromise Motion purporting to provide that "the automatic stay in favor of LBHI will continue to apply as a result of LBHI's liens and security interests in all of the Repo Assets including such SunCal Loans."  Supplement ¶ 4.  Lehman is thus making a thirteenth-hour change to the Compromise Motion *for the express purpose of creating an automatic stay*.

Aside from the obvious inequities of Lehman's attempt to accomplish this (not to mention the procedural improprieties with the chosen vehicle for doing so), Lehman still, despite its rhetoric about the applicability of LBHI's stay, has failed to identify any cognizable interest that LBHI will have upon consummation of the compromise transaction. The RFS Objection still affirms that all of the documents upon which any subrogation rights of LBHI would be based will be terminated. (Obj. ¶¶ 51-52.)

LBHI's contention that the Adversary Proceeding will "adversely" affect the CP Notes fails for the same reason: The Compromise Motion and the Objection itself (¶ 52) state that the CP Notes *are being cancelled*. The pursuit of an action to subordinate the SunCal Loans will have no effect whatsoever on these cancelled notes (which were issued by Fenway Funding, LLC). The Adversary Proceeding is neither against LBHI nor its property, thus there is no stay. *See Teachers Insurance and Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2d Cir.1986) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."); *In re Comcoach Corp. (Roslyn Savings Bank v. Comcoach Corp.)*, 698 F.2d 571 (2d Cir.1983) (mortgagee of premises leased by debtor was not a party in interest entitled to seek relief from automatic stay because it was neither a creditor or debtor); *see also In re Chugach Forest Products, Inc.,* 23 F.3d 241, 246 (9th Cir. 1994) ("As a general rule, "[t]he automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate. It does not protect non-debtor parties or their property."); *Matter of Lockard,* 884 F.2d 1171, 1178 (9th Cir. 1989) ("In keeping with the prevailing authority, we conclude that the surety bond at issue in this case is not "property of the estate," within the meaning of 11 U.S.C. § 541. O'Malley's state court action against Allied is not, therefore, subject to the automatic stay of 11 U.S.C. § 362(a)(3).").

The cases cited by LBHI in support of the contention that its claimed (but nonexistent) interest in the SunCal Loans is sufficient to invoke the stay, do not support its position. For example, in *In re Prudential Lines Inc.*, 928 F.2d 565 (2d Cir 1991) the Second Circuit held that a net operating loss generated by a subsidiary corporation *constituted the property of the debtor subsidiary*. Due to this ownership interest, an effort by the subsidiary's parent to use his loss for its

own benefit constituted a violation of the automatic stay. LBHI is arguing a very different position—that its *indirect interest* in the SunCal Loans permits its invocation of its stay.

LBHI admits in the Objection that it does not own the SunCal Loans—the property at issue; it is simply contending that since its estate could be indirectly affected by their subordination, a sufficient nexus exists to invoke the stay under Second Circuit law. It does not. The stay will only apply to action against non-debtors in those limited circumstances where recourse will have an immediate adverse effect upon the debtor. *Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282, 287-288 (2d Cir. 2003).

Here, there is no direct and immediate adverse effect arising from subordination as to LBHI that would implicate LBHI's stay. LBHI neither owns nor has any rights in the SunCal Loans. At most, it is owed money by LCPI. Although the subordination of the SunCal Loans could potentially reduce LBHI's recovery from LCPI, when the loans are ultimately liquidated, this is true of every single creditor of LCPI.

The case of *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.)*, 835 F.2d 427, 430 (2d Cir.1987), is also inapposite. In *48th Street*, a landlord served a lease termination notice on the nominal prime tenant. The prime tenant had subleased the space subject to the termination notice to the debtor. Accordingly, if the termination was effected, the debtor's possessory rights in the space would be destroyed. The Second Circuit held on these facts that the debtor's possessory interest under the sublease was protected by the stay. LBHI has no comparable immediate and direct interest in the property, as discussed above.

/ / /

19

# V

## <u>CONCLUSION</u>

For all of the foregoing reasons and the reasons set forth in the moving papers, the SunCal Debtors request that the Court grant the Motion in its entirety.[17]

Dated: May 10, 2010                     Respectfully submitted,

    /s/  Sean A O'Keefe
Sean A O'Keefe
Paul J. Couchot
WINTHROP COUCHOT, P.C.
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

    /s/  Louis R. Miller
Louis R. Miller
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
LOS ANGELES, CA 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

*Attorneys for the SunCal Debtors*

---

[17] In its Statement of Position regarding the RFS Motion, the Lehman creditor's committee stated that it would be amenable, in the alternative, to allowing the equitable subordination litigation to proceed, subject to periodic status reports and/or status conferences with this Court.  The SunCal Debtors are certainly open to such an option.