**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
Sean A. O'Keefe – NY Bar No. 1980853, CA Bar No. 122417
Paul J. Couchot – CA Bar No. 131934
Counsel for the SunCal Voluntary Debtors

**Hearing Date: May 12, 2010 at 10:00 a.m. (EST)**

**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400
Louis R. Miller – CA Bar No. 54141
Special Litigation Counsel for SunCal Voluntary Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**LEHMAN BROTHERS HOLDINGS INC, et al.,**<br><br>         **Debtors.** | **Chapter 11**<br><br>**Case No. 08-13555 (JMP)**<br><br>**Jointly Administered** |

**DECLARATION OF PAUL J COUCHOT IN SUPPORT OF REPLY RE: MOTION OF THE SUNCAL DEBTORS FOR AN ORDER DETERMINING THAT THE AUTOMATIC STAY DOES NOT APPLY; OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM STAY**

I, Paul J. Couchot, hereby declare and state as follows:

1.      I am an attorney admitted to practice before the United States Bankruptcy Court Central District of California (and pro hac vice before this Court) and I am a shareholder of the firm of Winthrop Couchot, Professional Corporation ("Winthrop Couchot"), insolvency counsel for the SunCal Voluntary Debtors, in the jointly administered bankruptcy proceeding *In re Palmdale Hills Property, LLC*, No. 8:08-bk-17206 ES and related adversary proceeding *SCC Acquisitions, Inc., et al. v. Lehman ALI, Inc., et al.*, No. 7:09-ap-01005 ES, pending before the Honorable Judge Erithe Smith in the United States Bankruptcy Court of the Central District of California (the "California Bankruptcy Court").  I have been lead insolvency counsel for the

SunCal Voluntary Debtors since before their Chapter 11 filings. Winthrop Couchot is also counsel for SCC Acquisitions, Inc. ("Acquisitions"), an indirect parent company of the SunCal Voluntary Debtors. I also served as proposed general insolvency counsel to Mr. Steven M. Speier, the duly-appointed Chapter 11 trustee ("Trustee") for the SunCal Trustee Debtors, defined below, through May 13, 2009. This Declaration is submitted in support of the Reply re: Motion of the SunCal Debtors for an Order Determining that the Automatic Stay Does Not Apply or, in the Alternative, Granting Relief from Stay filed concurrently with this Declaration. The facts stated herein are within my personal knowledge and if called upon to testify to the same I could and would testify competently thereto.

2.      In March 2009, Lehman Commercial Paper, Inc. ("LCPI") and the Non-Debtor Lehman Lenders[1] filed twenty proofs of claim against the SunCal Debtors,[2] totaling approximately $2.0 billion dollars. These claims, which are disputed secured claims, are based upon fourteen loans made to the SunCal Debtors prepetition.[3] In each of these claims, the

---

[1] The Non-Debtor Lehman Lenders are Lehman ALI, Inc. ("Lehman ALI"), Northlake Holdings, LLC ("Northlake Holdings") and OVC Holdings LLC ("OVC Holdings").

[2] The SunCal Debtors consist of the following voluntary Chapter 11 debtors and debtors-in-possession: Palmdale Hills Property, LLC ("Palmdale Hills"), SunCal Communities I, LLC ("SunCal I"), SunCal Communities III ("SunCal III), LLC, SCC Palmdale, LLC ("SCC Palmdale"), Acton Estates, LLC ("Acton Estates"), SunCal Beaumont, LLC ("SunCal Beaumont"), SunCal Emerald Meadows, LLC ("SunCal Emerald"), SunCal Johansson Ranch, LLC ("SunCal Johansson"), SunCal Bickford Ranch, LLC ("SunCal Bickford"), SunCal Summit Valley, LLC ("SunCal Summit"), Seven Brothers, LLC ("Seven Brothers"), Kirby Estates, LLC ("Kirby Estates"), SJD Partners, Ltd., a California limited partnership ("SJD Partners"), and SJD Development Corp., a California corporation ("SJD Development"), SCC Communities LLC ("SCC Communities"), North Orange Del Rio Land LLC ("Del Rio") and Tesoro SF LLC ("Tesoro") (collectively, the "SunCal Voluntary Debtors"); and the following Chapter 11 Debtors represented by their Chapter 11 Trustee, Mr. Steven M. Speier (the "Trustee"): Delta Coves Ventures, LLC ("Delta Coves"), SunCal Heartland, LLC ("SunCal Heartland"), SunCal Marblehead, LLC ("SunCal Marblehead"), LB-L-SunCal Northlake, LLC (SunCal Northlake"), LB-L-SunCal Oak Valley, LLC ("SunCal Oak Valley"), SunCal Century City, LLC ("SunCal Century City"), SunCal PSV, LLC ("SunCal PSV"), SunCal Torrance Properties, LLC ("SunCal Torrance"), and SunCal Oak Knoll, LLC ("SunCal Oak Knoll") (collectively, the "SunCal Trustee Debtors"). The SunCal Voluntary Debtors filed petitions under Chapter 11 on November 6, 2008 and November 17, 2009. Involuntary petitions were filed against the Trustee Debtors in November of 2008. The bankruptcy court granted these petitions and entered orders for relief with respect to the Trustee Debtors on January 6, 2009 and January 8, 2009. The Chapter 11 estates of the SunCal Voluntary Debtors and the SunCal Trustee Debtors are being jointly administered pursuant to an order entered on March 11, 2009.

[3] The following are the loans made by the Lehman Entities: (a) SunCal Communities I Loan Agreement; (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC Palmdale Loan; (e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan Agreement; (g) SunCal Century City Loan Agreement; (h) SunCal PSV Loan Agreement; (i) SunCal Delta Coves Loan Agreement; (j) SunCal Marblehead/SunCal Heartland Loan Agreement; (k) Sun Cal Oak Valley Loan Agreement; (l) SunCal Northlake Loan Agreement; (m)

Lehman Entities represented under the penalty of perjury that they were "creditors" of the SunCal Debtors pursuant to the aforementioned loans.

3. In April 2009, through discovery, the SunCal Debtors first became aware that contrary to the representations in at least thirteen (13) of the proofs of claim that the Lehman Entities had sold the seven loans set forth below (the "Fenway Sold Loans") to Fenway Capital, LLC ("Fenway Capital" or "Fenway") pre-petition, on August 25, 2008, pursuant to the terms of that certain Master Repurchase Agreement (the "MRA"). The MRA clearly states that all right, title and interest in the Fenway Sold Loans was transferred to Fenway Capital.

4. The Fenway Sold Loans, which totaled approximately $1.6 billion, were reflected in the following proofs of claim: Six proofs of claim in the amount of $343,221,391 were filed relating to the SunCal Communities I Loan Agreement, which listed LCPI as its original lender; a proof of claim in the amount of $287,252,096 relating to the Ritter Ranch Loan Agreement, which listed LCPI as the original lender; a proof of claim in the amount of $88,257,340 relating to the SunCal PSV Loan Agreement, which listed Lehman ALI as the original lender; two proofs of claim in the amount of $354,325,120 relating to the SunCal Marblehead/SunCal Heartland Loan Agreement, which listed Lehman ALI as the original lender; a proof of claim in the amount of $206,023,142 relating to the Delta Coves Loan Agreement, which listed Lehman ALI as the original lender; a proof of claim in the amount of $123,654,777 relating to the SunCal Northlake Loan Agreement, which listed Lehman ALI as the original lender; and a proof of claim in the amount of $141,630,092 relating to SunCal Oak Valley Loan Agreement, which listed Lehman ALI as the original lender. The following table summarizes the relevant facts reflected in these claims based pm the Fenway Sold Loans:

| Fenway Sold Loan | Lehman Claimant | SunCal Debtor | SunCal Claim No. | POC Amount |
|---|---|---|---|---|
| SunCal Communities I Loan | LCPI | Acton Estates | 6 | $343,221,391 |

Pacific Point First Loan Agreement; and (n) Pacific Point Second Loan Agreement. Four of the loans (a) through (d) were originally made by LCPI and the ten others (e) through (n) had Lehman ALI as its original lender.

| "" | LCPI | SunCal Bickford | 16 | Same |
|---|---|---|---|---|
| "" | LCPI | SunCal Emerald | 7 | Same |
| "" | LCPI | SunCal Summit | 12 | Same |
| "" | LCPI | SunCal I | 1 | Same |
| "" | LCPI | SunCal III | 1 | Same |
| Ritter Ranch Loan | LCPI | Palmdale Hills | 65 | $287,252,096 |
| SunCal PSV Loan | Lehman ALI | SunCal PSV | 12 | $88,257,340 |
| SunCal Marblehead / SunCal Heartland Loan | Lehman ALI | SunCal Marblehead | 21 | $354,325,126 |
| Delta Coves Loan | Lehman ALI | Delta Coves | 21 | $206,023,142 |
| Northlake Holdings Loan | Northlake Holding | SunCal Northlake | 6 | $123,654,777 |
| OVC Holdings Loan | OVC Holding | SunCal Oak Valley | 16 | $141,630,092 |

(The above loans are collectively referred to as the "Fenway Sold Loans").

5.      After the discovery of the MRA and the Fenway Repo and the erroneous proofs of claim in April of 2009, the SunCal Debtors filed a motion seeking an order striking the proofs of claim filed by the Lehman Entities that were premised on the Lehman Entities' ownership of the Fenway Sold Loans.  This motion was filed in May of 2009.

6.      At the hearing on the SunCal Debtors' motion to strike the claims held on June 30, 2009, the California Bankruptcy Court held that the transfer of the Fenway Sold Loans pursuant to the MRA was a true purchase and sale transaction and that accordingly, the Lehman Entities had transferred their entire interest in the Fenway Sold Loans to Fenway.  The California Bankruptcy Court further found that the Lehman Entities had misrepresented their status as a creditor in the relevant proof of claims.  The Bankruptcy Court entered an order and findings regarding the Ownership Issue on October 2, 2009.

7.      Attached hereto as **Exhibit 1** is a true and correct copy of the October 2, Order on Objections to and Motion for Order Striking Claims Filed By the Lehman Entities ("October Ownership Order");

8.      Attached hereto as **Exhibit 2** is a true and correct copy of the Findings of Fact and Conclusions of Law in Support of Order on Objections to Claims, entered October 8, 2009 [D.E. 694 (8:08-bk-17206)] ("October Ownership Findings").

9.      As a result of the August 22, 2008 Fenway Repo and determined by the October Ownership Order, the only loan owned by LCPI relating to the SunCal Debtors was the Mezzanine loan ("Mezz Loan"). The Mezz Loan is secured by an equity pledge of the SunCal parent company. It was not collateralized by any cash or real property.  LCPI's collateral under the Mezz Loan was under water according to the appraisals submitted by LCPI in support of the motions for relief from stay that it filed in the California Bankruptcy Court.

10.      With respect to the Non-Debtor Lehman Lenders, (i) five loans were sold pursuant to the Fenway Repo, (ii) a sixth loan, SunCal Century City Loan Agreement, was sold to third party, Danske Bank, and (iii) a seventh loan, the Pacific Point First Loan Agreement, was sold to a Bahamian entity, Lehman Re Ltd.  As a result, the Non-Debtor Lehman Lenders retained only the remaining five (5) loans.

11.      Notwithstanding its lack of any interest in the Fenway Sold Loans, LCPI has represented that it was the owner of these loans and on this basis asserted that its automatic stay not only barred any effort to impair its non-existent interest in these loans, but further contended that this non-existent ownership interest rendered any reorganization effort by the SunCal Debtors futile, again due to its automatic stay.

12.      Notably, even after the California Bankruptcy Court's October Ownership Order and October Findings, the Lehman Entities have still continued to represent in both the California and New York Bankruptcy Courts that they were "creditors" of the SunCal Debtors on the basis of the Fenway Sold Loans.  As chronicled below, on the basis of this alleged status and LCPI's invocation of its automatic stay, LCPI has opposed substantially every action taken by the SunCal Debtors since the SunCal Debtors' November 2008 petition dates.

13.      The SunCal Debtors' First Motion for Relief from Stay in the LCPI Chapter 11 Proceedings.   On November 10, 2008, certain of the SunCal Debtors, among other related entities, filed a motion in the Bankruptcy Court for the Southern District of New York ("New York Bankruptcy Court") seeking relief from the automatic stay in Lehman Commercial Paper, Inc.'s Chapter 11 Proceeding to allow the SunCal Debtors to file a priming lien motion. They

-5-

also sought relief from stay to the extent necessary to generally administer the California Chapter 11 cases in order to avoid the need for having to file repeated stay relief motions in New York (the "New York Stay Relief Motion"). The request for the general relief included a list of potential motions that the Debtors did not presently intend to, but conceivably could file, such as cash collateral, without any admission that such actions would violate the stay and without any request for a determination that such actions would not violate the stay.

14.     As set forth above, the SunCal Debtors believed that LCPI owned three of the relevant loans. Unbeknownst to the SunCal Debtors, pursuant to the MRA, LCPI had sold the SunCal Communities I Loan and Ritter Ranch Loan, and thus at the time of the New York Stay Relief Motion, LCPI only owned the Mezz Loan, which had no value and could have been carved our of any motion if the Fenway Repo had been disclosed by LCPI. However, by LCPI's own later admission, the collateral that secured the Mezz Loan had no value, and therefore its lien was void by operation of law pursuant to 11 U.S.C. § 506(d).

15.     Accordingly, LCPI had no lien rights to protect when the foregoing motion for relief from stay was filed. Notwithstanding this lack of any interest, on November 18, 2008, LCPI filed an opposition to the New York Stay Relief Motion wherein it opposed any general relief from stay for the SunCal Debtors' California bankruptcy proceedings and it specifically opposed the priming lien motion. In its opposition, LCPI failed to disclose that it had sold the loans to Fenway and expressly stated that it owned the loans thereby invoking the automatic stay. Attached as **Exhibit 3** are the relevant portions of LCPI's Opposition to the New York Stay Relief Motion.

16.     At the hearing on November 20, 2008, which I attended, the New York Bankruptcy Court did not make any finding as to what actions by the SunCal Debtors would violate LCPI's automatic stay other than implicitly the priming lien motion. Rather, the New York Bankruptcy Court declined to grant the generalized relief from stay prayed for in the Motion. This ruling was also based upon the Court's determination that the SunCal Debtors' motion failed to address the relevant factors under the case law. Consequently, the New York

Bankruptcy Court denied the motion without prejudice to the SunCal Debtors right to re-file subsequent motions that specifically addressed the precise relief requested and to address the relevant case law.

17.     <u>LCPI's Objections to the SunCal Debtors' Motion for Use of Cash Collateral in California and LCPI's Motion to Enforce the Stay in New York Based on Its False Assertion of Its Automatic Stay.</u>   On January 16, 2009, seven of the SunCal Debtors filed a motion before the California Bankruptcy Court requesting authority to use the purported cash collateral of LCPI in order to address the health and safety issues on the SunCal Debtors' Projects that were purportedly subject to deeds of trust and other security held by LCPI (the "California Cash Collateral Motion").

18.     Prior to the filing of the California Cash Collateral Motion, in a related Chapter 11 case before the California Bankruptcy Court involving both SunCal and LCPI, <u>In re LBREP/L-SunCal Master I LLC</u>, Bankruptcy Case No. 8:08-bk-15588 ES, jointly administered with Case Nos. 8:08-bk-15637 ES, 8:08-bk-15639 ES, and 8:08-bk-15640 ES, the Chapter 11 Trustee therein, Alfred Siegel ("Siegel Cases"), moved for use of LCPI's cash collateral.  On November 5 and 19, 2008, LCPI filed separate Objections to the Siegel Trustee's proposed use of cash collateral.  However, LCPI did not contend in either of these Objections that the use of its cash collateral constituted a violation of the automatic stay arising from LCPI's Bankruptcy Case.  On November 12, and December 2, 2008, the California Bankruptcy Court entered orders granting the Motion and authorizing the use of LCPI's cash collateral.

19.     Further, LCPI's lawyers did not raise the stay issue at a status conference held on January 15, 2009, when the California Cash Collateral Motion was pending (and LCPI's lawyers appeared both in person and by telephone).  Since one of the material topics of discussion at the status conference was the SunCal Debtors' proposed use of cash collateral, an expedited hearing thereon, and a proposed briefing schedule, presumably LCPI's counsel would have raised the automatic stay issue at this conference if counsel had believed it was an issue.

63138.1

20.     Similarly, Lehman's counsel had never raised the applicability of the automatic stay in any of several discussions I had with Lehman Entities' counsel concerning the alleged cash collateral that was the subject of the motion. All of the discussions concerned the reasonableness of the proposed expenditures in the cash collateral budget.

21.     To the SunCal Debtors' surprise, on January 26, 2009, LCPI filed its Opposition to the California Cash Collateral Motion wherein it asserted that this motion violated LCPI's automatic stay. This contention was not supported by a single case cite. In its Opposition, LCPI again represented that it was the owner of the loans that would be affected by the motion, failed to disclose the sale of the loans to Fenway, and invoked its automatic stay as a defense to the California Cash Collateral Motion. Attached as **Exhibit 4** is a true and correct copy of the relevant portions of LCPI's Opposition to the California Cash Collateral Motion.

22.     In its reply, the SunCal Debtors presented authority to the California Bankruptcy Court that (i) it had concurrent jurisdiction to determine the scope of LCPI's automatic stay, and (ii) the use of LCPI's purported cash to preserve the LCPI's purported collateral would not violate LCPI's automatic stay even assuming their ownership of the subject loans.

23.     The hearing on California Cash Collateral Motion was set for Tuesday February 3, 2009. Rather than addressing the automatic stay issues in California at the cash collateral hearing, on the Friday before the hearing, LCPI filed an emergency motion in its own Chapter 11 proceeding requesting the New York Bankruptcy Court to enforce LCPI's stay as to the SunCal Debtor's California Cash Collateral Motion (the "New York Stay Enforcement Motion"). Attached as **Exhibit 5** is a true and correct copy of the relevant portions of LCPI's New York Stay Enforcement Motion. In its New York Stay Enforcement Motion, LCPI again represented itself to be the owner of the applicable loans and failed to disclose that the loans had been sold pursuant to the MRA. Although the SunCal Debtors believed that LCPI's stay was not violated in any way by the California Cash Collateral Motion, even if LCPI had retained the Fenway Sold Loans, the California Cash Collateral Motion was taken off calendar prior to any ruling by the New York Bankruptcy Court at the threat of sanctions to SunCal Debtors' counsel.

24.     Again, unbeknownst to the SunCal Debtors, pursuant to the MRA, LCPI had sold the SunCal Communities I Loan and Ritter Ranch Loan, and thus at the time of the California Cash Collateral Motion, LCPI only owned the Mezz Loan.  However, the collateral that secured the Mezz Loan had no value, and was not cash and therefore irrelevant to this Motion.

25.     LCPI's Motions for Relief from the Automatic Stay Against Certain of the SunCal Debtors' Projects and the Related Appeals Based on the Assertion of Its Automatic Stay Premised On the Fenway Sold Loans.  On January 23, 2009, LCPI filed seven separate motions for relief from the automatic stay seeking to foreclose on several of the SunCal Debtors' Projects. [4]  Six of LCPI's seven motions were based on Fenway Sold Loans (the "LCPI's California Stay Motions").  The seventh LCPI motion was based upon the Mezz Loan, which lien was void by operation of Section 506(d).  In its memorandum in support of the Stay Motions, LCPI asserted that "it was the administrative agent *and the sole lender*" under all of such loans.  LCPI did not disclose the Fenway Repo discussed above, with respect to which the SunCal Debtors had no knowledge at this time.  In fact, LCPI premised its motion on its assertion that its automatic stay prevented the subject SunCal Debtors from adequately protecting the LCPI's Projects that were purportedly collateral under Section 362(d)(1), and most importantly the SunCal Debtors could not timely reorganize under Section 362(d)(2) and (3) as a result of LCPI's automatic stay.  Attached as **Exhibit 6** is a true and correct copy of the relevant portions of the memorandum in support of the LCPI's California Stay Motions.

26.     The SunCal Debtors opposed LCPI's California Stay Motions again citing authority that that a federal court in which litigation is pending has concurrent jurisdiction to determine the scope or applicability of the automatic stay to such litigation, and that the automatic stay of a creditor does not apply to defensive acts with respect to such claim.

27.     At the hearing on February 20, 2009, the California Bankruptcy Court denied LCPI's California Stay Motions on the grounds that the underlying liens were subject to bona

---

[4] Lehman ALI filed an additional eighth motion for relief from stay.

fide dispute, and further ruled that equitable subordination was defensive and therefore not subject to LCPI's automatic stay ("Stay Finding").

28.     On February 27, 2009, LCPI filed an *Omnibus Objection to Form of Proposed Order*, specifically objecting to any Stay Finding as to relief under Section 510(c)(2).  Attached as **Exhibit 7** is a true and correct copy of the *Omnibus Objection to Form of Proposed Order* (without attachments).  On March 10, 2009, the California Bankruptcy Court entered orders denying LCPI's Stay Motions without prejudice which included the Stay Finding.

29.     On March 20, 2009, LCPI filed Notices of Appeal solely with respect to the Stay Finding contained in the orders denying relief from stay, again, six of which were based on Fenway Sold Loans.

30.     On March 30, 2009, LCPI filed its Statement of Issues on Appeal, which again invoked LCPI's automatic stay with respect to the Fenway Sold Loans. Attached as **Exhibit 8** is a true and correct copy of the relevant portions of one of LCPI's Statement Issues on Appeal (without attachments).

31.     <u>LCPI's Objections to the SunCal Debtors' Chapter 11 Plan and Disclosure Statement Based on the Assertion of Its Automatic Stay Premised On the Fenway Sold Loans</u>. On February 4, 2009 the SunCal Debtors filed their initial plan and disclosure statement.  In summary, the SunCal Debtors plan provided for (i) the sale of the SunCal Debtors' Projects free and clear of the disputed credit bid rights of the Lehman Entities; (ii) the prosecution and liquidation of the SunCal Debtors' litigation claims, including, but not limited to, equitable subordination of the Lehman Entities' liens; (iii) substantive consolidation of the SunCal Debtors' estates; and (iv) the distribution of the net proceeds of the sale and litigation recoveries to the holders of allowed claims against the SunCal Debtors.

32.     In response, the Lehman Entities filed their objections to the SunCal Debtors' Disclosure Statement asserting, among other things (i) LCPI owned the Fenway Sold Loans, and (ii) the material Plan provisions noted above violated LCPI's automatic stay.  Notably, the pleading also did not disclose the MRA and the sale of the loans.  Attached as **Exhibit 9** is a true

and correct copy of the relevant portions of the Objection of Lehman Commercial Paper Inc,
Lehman ALI Inc., Northlake Holding LLC and OVC Holding LLC to the Debtors' First
Amended Joint Disclosure Statement Describing Debtors' First Amended Joint Plan of
Reorganization (without attachments).

33.     <u>LCPI's Assertion of Its Automatic Stay Premised On the Fenway Sold Loans in
Connection with the SunCal Debtors' Adversary Proceeding</u>**.**  On January 6, 2009, certain
SunCal Debtors filed an adversary proceeding with the California Bankruptcy Court against
Lehman ALI and other (non-debtor) Lehman affiliates requesting, amongst other relief, that
Lehman ALI's claim be equitably subordinated ("Equitable Subordination Action").  The SunCal
Debtors did not name LCPI as a defendant because of its automatic stay.  It was only after the
California Bankruptcy Court made the Stay Finding that, on March 11, 2009, that the SunCal
Debtors filed a motion for leave to amend its complaint against the Lehman Entities to include
LCPI.  On March 24, 2009, the California Bankruptcy Court granted the SunCal Debtors' request
for leave to amend the complaint.  On March 26, 2009, LCPI filed an appeal of this order, again,
on the basis of its assertion of the automatic stay based primarily on the Fenway Sold Loans.
Attached as **Exhibit 10** is a true and correct copy of the Lehman Commercial Paper Inc.'s
Statement of Issues and Designation of Record on Appeal.

34.     <u>Certain SunCal Debtors' Filing of the Sale Procedure Motion and LCPI's Second
Motion to Enforce the Stay in New York Based Solely on Loans Held by the Non-Debtor
Lehman Lenders</u>**.**  On February 18, 2008, twelve of the SunCal Debtors – whose projects were
subject to liens held by <u>only</u> the Non-Debtor Lehman Lenders, filed that certain *Sales Procedures
Motion* with the California Bankruptcy Court seeking the approval of overbid procedures
pursuant to a purchase offer from D.E. Shaw for $200,000,000.  As part of the Sales Procedures
Motion, the SunCal Debtors conditioned the sale on the disallowance of the Non-Debtor Lehman
Lenders' credit bid rights.  Because LCPI had not disclosed the Fenway Repo, the Sales
Procedures Motion specifically did not include Projects that were the purportedly LCPI's
collateral due to the SunCal Debtors' concerns over the potential applicability of LCPI's

automatic stay.  The Lehman Entities' counsel filed an opposition to the Sale Procedures Motion, but did <u>not</u> assert that any aspect of the Sale Procedures Motion violated the automatic stay of any Lehman entity.

35.     However, on Sunday, March 8, 2009, at approximately 1:20 pm Pacific Time (two days before the March 10th hearing date), Shai Waisman of the Weil Firm sent me two emails (the "Email Threat") asserting that the Sale Procedures Motion as to Non-Debtor Lehman Lenders somehow violated LCPI's automatic stay.  At no time during these cases had the Well Firm ever taken the position that actions taken by the SunCal Debtors against Non-Debtor Lehman Lenders, violated LCPI's automatic stay at LCPI until the March 8th Email Threat. Attached as **Exhibit 11** is a true and correct copy of the Email Threat.

36.     LCPI also submitted a second stay enforcement motion in New York and a corresponding cover letter to the New York Bankruptcy Court attempting to prevent the California Bankruptcy Court from hearing the Sales Procedures Motion. Attached as **Exhibit 12** is a true and correct copy of the Second Stay Enforcement Motion and cover letters.  Although the hearing in New York did not go forward, LCPI's pleading contained the same invocation of its automatic stay.

37.     <u>LCPI's Representations to the Ninth Circuit BAP, and the Ninth Circuit Regarding its Agreement that its Stay Would Not Apply to the Mezz Loan Notwithstanding the §506(d) Stipulation</u>.  On June 9, 2009, certain SunCal Voluntary Debtors, i.e., SunCal Communities I,  SunCal Communities III, SCC Palmdale LLC (the holder of the Mezz Loan), and SunCal Bickford filed a motion to value certain valueless collateral under Bankruptcy Rule 3012 and to avoid the liens on the valueless collateral under 11 U.S.C. §506(d) (the "§ 506(d) Motion").  At the request of the Lehman Entities, the SunCal Voluntary Debtors and the Lehman Entities agreed to resolve the Motion via stipulation that was extensively negotiated prior to a September 22nd status conference.

38.     On September 21, 2009, Maria Bove, counsel for the Lehman Entities, emailed a final execution form of the Stipulation ("§ 506(d) Stipulation").  Attached as **Exhibit**

**13** is a true and correct copy of cover email and § 506(d) Stipulation. The § 506(d) Stipulation provided that LCPI's automatic stay was not applicable to the Mezz Loan, which was the only loan that was part of the LCPI's California Stay Motions that was retained by LCPI. Furthermore, according to the Motion for Relief from Stay itself, and the filed proof of claim, the Bickford Second Lien Loan was held by Lehman ALI, a Non-Debtor Lehman Lender, as a result of which no automatic stay could apply. I executed the Stay Stipulation and provided my signature page to Lehman Entities' counsel, Richard Pachulski, and at the hearing before the Bankruptcy Court on September 22, 2009, Mr. Pachulski represented to the Court and myself that he would take the necessary steps to have the §506(d) Stipulation approved by the Court. As a result of Mr. Pachulski's representations, the § 506(d) Motion did not go forward.

39.     LCPI's competing disclosure statement filed in the SunCal Debtors' cases specifically acknowledged that they entered into the § 506(d) Stipulation. See, Lehman's First Amended Disclosure Statement, section 4.2, page 41 (filed on October 13, 2009 in the SunCal Debtors' cases.

40.     Notwithstanding the above, in the appeal to the Ninth Circuit, LCPI appears to have reneged on the §506(d) Stipulation.

41.     The SunCal Debtors did not violate LCPI's Stay. Prior to the BAP ruling, LCPI's Counsel Represented to the California Bankruptcy Court that its Stay was "No Longer an Issue." From May of 2009 until February 11, 2010, LCPI ceased to assert the automatic stay in the California Bankruptcy Court. To the contrary, *LCPI's counsel had affirmatively represented to the court in California, at several hearings, that LCPI's stay "was no longer an issue in the SunCal Debtor cases."* It was not until the hearing on the Lehman Entities' Motion to dismiss the Third Amended Complaint in the Equitable Subordination Action, on February 11, 2010, that LCPI made a formal request to the Court to have LCPI dismissed as a defendant.

42.     On January 11, 2010, the Lehman Entities' counsel did send a letter to the SunCal Debtors requesting that they be advised of "SunCal's intentions with respect to the

equitable subordination action and the discovery propounded by SunCal, in light of the decision issued by the Bankruptcy Appellate Panel".

43. On January 15, 2010, the SunCal Debtors responded, reminding the Lehman Entities of the October Ownership Order and October Ownership Order (Exhibits 1 and 2 hereto), that LCPI had sold all of its interest in the Fenway Sold Loans, and that LCPI's stay did not apply to Fenway Sold Loans where LCPI merely acted as an agent.

44. On January 27, 2010, LCPI responded to the SunCal Debtors asserting, inter alia, LCPI's ownership of the revolver component of the Ritter Ranch loan.

45. On February 5, 2010, the SunCal Debtors responded that the October Ownership Order and Findings found that the entire Ritter Ranch Loan, inclusive of the revolver component, had been transferred to Fenway, and further proposed that even if LCPI's stay did apply, under applicable case law, LCPI did not need to be formally dismissed but rather could remain as a "interested non-litigant" in order to avoid any potential violation of LCPI's stay.

46. As set forth above, at the hearing on the motion to dismiss on February 11, 2010, LCPI made a formal request to the Court to have LCPI dismissed as a defendant. The California Bankruptcy Court took the matter under advisement, and at a continued hearing on March 8, 2010, dismissed LCPI without prejudice.

47. Since The BAP Ruling, SunCal Debtors have not Violated LCPI's Stay with respect to the Proposed Plan. The last version of the SunCal Debtors' plan was the Third Amended Joint Chapter 11 Plan which was filed September 9, 2009, well before the BAP ruling as which time the Stay Finding of the California Bankruptcy Court was in effect. Subsequent thereto, the parties have agreed to several continuances of the hearings on their respective

///

///

disclosure statements, effectively placing the approval of their respective disclosure statements on hold.  Accordingly, since the BAP ruling on December 15, 2009, the SunCal Debtors have neither proceeded on the approval of a disclosure statement, nor the confirmation of a plan, in the SunCal cases.

I hereby declare that the foregoing is true and correct under the penalty of perjury under the laws of the United States of America.  Executed this 10th day of May 2010 in Orange County, California.

/s/  *Paul Couchot*
Paul J. Couchot

EXHIBIT "1"

FILED & ENTERED

OCT 02 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY kent          DEPUTY CLERK

PAUL J. COUCHOT - State Bar No. 131934
pcouchot@winthropcouchot.com
SEAN OKEEFE - State Bar No. 122417
**WINTHROP COUCHOT, P.C.**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4165
Facsimile: (949) 720-4111

General Insolvency Counsel for
Administratively Consolidated Debtors-in-Possession and
Counsel for SCC Acquisitions, Inc.

LOUIS R. MILLER, State Bar No. 54141
smiller@millerbarondess.com
MARTIN PRITIKIN, State Bar. No. 210845
**MILLER BARONDESS. LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Special Litigation Counsel

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

In re

Palmdale Hills Property, LLC, and its Related
Debtors,

        Jointly Administered Debtors
        and Debtors-in-Possession

Affects:

☒ All Debtors
☐ Palmdale Hills Property, LLC,
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale,
☐ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
☐ SunCal Emerald Meadows LLC
☐ SunCal Bickford Ranch, LLC
☐ Acton Estates, LLC
☐ Seven Brothers LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☐ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF, LLC
☐ LBL-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC

Case No. 8:08-bk-17206-ES

Jointly Administered With Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574 ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-bk-17588-ES

Chapter 11 cases

**ORDER ON OBJECTIONS TO AND
MOTION FOR ORDER STRIKING
CLAIMS FILED BY THE LEHMAN
ENTITIES**

DATE: June 30, 2009
TIME: 2:00 p.m.
PLACE: Courtroom 5A

Order#11204#5542c07d-0d29-4dcd-adcb-479b185025a0

Exhibit 1, Page 16

☐ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

The hearing on the *Debtors' Objections To And Motion For Order Striking Claims Filed By The Lehman Entities* (the "Objection") filed by the debtors-in-possession listed above ("Voluntary Debtors") and by Mr. Steven M. Speier, as the duly-appointed Chapter 11 trustee ("Trustee") for LB-L-SunCal Oak Valley LLC, SunCal Heartland LLC, LB-L-SunCal Northlake LLC, SunCal Marblehead LLC, SunCal Century City LLC, SunCal PSV LLC, Delta Coves Venture LLC, SunCal Torrance LLC, and SunCal Oak Knoll LLC (the "Trustee Debtors") (the Voluntary Debtors and Trustee Debtors are collectively referred to as the "Debtors") came on for hearing before the undersigned United States Bankruptcy Judge on June 30, 2009, at 2:00 P.M., in Courtroom 5A of the above-entitled Court. The Voluntary Debtors appeared by and through their general insolvency counsel, Winthrop Couchot Professional Corporation, by Sean A. O'Keefe and Paul J. Couchot, and their special litigation counsel, Miller Barondess LLP, by Louis Miller and Martin Pritikin. The Chapter 11 Trustee appeared by and through his special litigation counsel, Miller Barondess LLP, by Louis Miller and Martin Pritikin. Lehman Commercial Paper Inc. ("Lehman Commercial"), Lehman ALI, Inc., Northlake Holdings and OVC Holdings (collectively the "Lehman Entities") appeared by and through their counsels, Pachulski Stang Ziehl & Jones LLP, by Richard Pachulski, and Weil, Gotshal & Manges LLP, by Edward Soto. Other appearances, if any, are as reflected in the Court's record of the hearing.

Based upon the Objection and supporting evidence, Lehman's Consolidated Opposition, the Debtors' Reply thereto, the arguments of counsel, and on the basis of the concurrently filed *Findings of Fact And Conclusions of Law* (the "Findings"), it is hereby

///

///

-2-

1     **ORDERED** that:

2      A)     The Lehman Entities' contention that the transfer of the Sold Loans pursuant to the

3 MRA was a transfer "for security," and consequently they retained the right to file the Proofs of

4 Claim on the basis of their retained interest as owners, is rejected by the Court. As stated in the

5 Findings, the transfer of the Sold Loans pursuant to the MRA was a true purchase and sale

6 transaction, not a transfer for security. Accordingly, the Lehman Entities retained no right to file

7 claims on this basis, under Federal Rule of Bankruptcy Procedure 3001(e)(1); and

8      B)     The Lehman Entities' remaining contention that they were entitled to file the Proofs

9 of Claim as the "creditor's authorized agent" under Federal Rule of Bankruptcy Procedure 3001(b)

10 will be decided by the Court at a later hearing. A status conference on the setting of this hearing

11 will be held on July 17, 2009, at the hour of 2:00 p.m.

12

13                                  ###

14

15

16

17

18

19

20

21

22

23

24     DATED: October 2, 2009               United States Bankruptcy Judge

25

26

27

28

-3-

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

The foregoing document described: **ORDER ON OBJECTIONS TO AND MOTION FOR ORDER STRIKING CLAIMS FILED BY THE LEHMAN ENTITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 2, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 11, 2009 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 2, 2009 | Susan Connor | /s/ Susan Connor |
|---|---|---|
| Date | Type Name | Signature |

-4-

SERVICE BY E-MAIL

- Michael J Hauser   michael.hauser@usdoj.gov
- Kerri A Lyman   klyman@irell.com
- James M Miller   jmiller@millerbarondess.com
- Louis R Miller   smiller@millerbarondess.com
- Dean A Ziehl   dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Richard Pachulski – rpachulzki@pszjlaw.com
- Edward Soto - Edward.soto@weil.com
-

**SERVICE LIST FOR ENTERED ORDER**

Notice is given by the Court that a judgment or order entitled **ORDER GRANTING EMERGENCY MOTION FOR ORDER CONFIRMING THAT AUTOMATIC STAY DOES NOT APPLY TO PENDING SALE PROCEDURES MOTION AND RULING THEREON** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):**
Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document will be served on the following person(s) by the Court via NEF and hyperlink to the judgment or order.  As of July 2, 2009 the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the e-mail address(es) indicated below:

☒ Service information continued on next page

**SERVED BY THE COURT VIA U.S. MAIL:**  A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on next page

**TO BE SERVED BY THE LODGING PARTY:**  Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or e-mail on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or e-mail address(es) indicated below:

- Richard Pachulski   rpachulzki@pszjlaw.com
- Edward Soto - Edward.soto@weil.com
- 

☐ Service information continued on next page

-6-

- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- John A Boyd    fednotice@tclaw.net
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Vincent M Coscino    emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@shlaw.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@gocforlaw.com
- Alan J Friedman    afriedman@irell.com
- Robert P Goe    kmurphy@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michelle Hribar    mhribar@rutan.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Stephen M Judson    sjudson@fablaw.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, emilee@kirkland.com;alevin@kirkland.com
- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Douglas M Neistat    twilliams@greenbass.com

-7-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Mike D Neue    mneue@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Raymond A Policar    hausermouzes@sbcglobal.net
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- Martha E Romero    Romero@mromerolawfirm.com
- William D Schuster    bills@allieschuster.org
- Michael St James    ecf@stjames-law.com
- Todd L Turoci    tturoci@aol.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Jason Wallach    jwallach@bergerkahn.com
- Christopher T Williams    ctwilliams@venable.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Arnold H Wuhrman    Wuhrman@serenitylls.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com

-8-

EXHIBIT "2"

PAUL J. COUCHOT - State Bar No. 131934
pcouchot@winthropcouchot.com
SEAN OKEEFE - State Bar No. 122417
**WINTHROP COUCHOT, P.C.**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4165
Facsimile: (949) 720-4111

General Insolvency Counsel for
Administratively Consolidated Debtors-in-Possession and
Counsel for SCC Acquisitions, Inc.

LOUIS R. MILLER, State Bar No. 54141
smiller@millerbarondess.com
MARTIN PRITIKIN, State Bar. No. 210845
**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Special Litigation Counsel

FILED & ENTERED

OCT 02 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY kent      DEPUTY CLERK

CHANGES MADE BY COURT

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:08-bk-17206-ES |
| Palmdale Hills Property, LLC, and its Related Debtors, | Jointly Administered With Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; |
|     Jointly Administered Debtors and Debtors-in-Possession | 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; |

Affects:

- ☒ All Debtors
- ☐ Palmdale Hills Property, LLC,
- ☐ SunCal Beaumont Heights, LLC
- ☐ SCC/Palmdale,
- ☐ SunCal Johannson Ranch, LLC
- ☐ SunCal Summit Valley, LLC
- ☐ SunCal Emerald Meadows LLC
- ☐ SunCal Bickford Ranch, LLC
- ☐ Acton Estates, LLC
- ☐ Seven Brothers LLC
- ☐ SJD Partners, Ltd.
- ☐ SJD Development Corp.
- ☐ Kirby Estates, LLC
- ☐ SunCal Communities I, LLC
- ☐ SunCal Communities III, LLC
- ☐ SCC Communities LLC
- ☐ North Orange Del Rio Land, LLC
- ☐ Tesoro SF, LLC
- ☐ LBL-SunCal Oak Valley, LLC
- ☐ SunCal Heartland, LLC

8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574 ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-bk-17588-ES

Chapter 11 cases

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER ON OBJECTIONS TO CLAIMS**

DATE: June 30, 2009
TIME: 2:00 p.m.
PLACE: Courtroom 5A

Order#11205#434e9729-2475-4e26-86f4-952e6c52da53

*Caption Continued on Next Page*
*Continued from Previous Page*
☐ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

The hearing on the *Debtors' Objections To And Motion For Order Striking Claims Filed By The Lehman Entities* (the "Objection") filed by the debtors-in-possession listed above ("Voluntary Debtors") and by Mr. Steven M. Speier, as the duly-appointed Chapter 11 trustee ("Trustee") for LB-L-SunCal Oak Valley LLC, SunCal Heartland LLC, LB-L-SunCal Northlake LLC, SunCal Marblehead LLC, SunCal Century City LLC, SunCal PSV LLC, Delta Coves Venture LLC, SunCal Torrance LLC, and SunCal Oak Knoll LLC (the "Trustee Debtors") (the Voluntary Debtors and Trustee Debtors are collectively referred to as the "Debtors") came on for hearing before the undersigned United States Bankruptcy Judge on June 30, 2009, at 2:00 P.M., in Courtroom 5A of the above-entitled Court. The Voluntary Debtors appeared by and through their general insolvency counsel, Winthrop Couchot Professional Corporation, by Sean A. O'Keefe and Paul J. Couchot, and their special litigation counsel, Miller Barondess LLP, by Louis Miller and Martin Pritikin. The Chapter 11 Trustee appeared by and through his special litigation counsel, Miller Barondess LLP, by Louis Miller and Martin Pritikin. Lehman Commercial Paper Inc. ("Lehman Commercial"), Lehman ALI, Inc., Northlake Holdings and OVC Holdings (collectively the "Lehman Entities") appeared by and through their counsels, Pachulski Stang Ziehl & Jones LLP, by Richard Pachulski, and Weil, Gotshal & Manges LLP, by Edward Soto. Other appearances, if any, are as reflected in the Court's record of the hearing.

The Court having read and considered the Objection and supporting evidence, Lehman's Consolidated Opposition, and the Debtors' Reply thereto, and having heard and considered the arguments of counsel, hereby makes the following *Findings of Fact and Conclusions of Law* in support of the concurrently filed *Order*.

///

-2-

///

# I
## FINDINGS OF FACT

1.1.    The following parties, *inter alia*, received notice of the *Objection*: The Lehman Entities, Fenway Capital, LLC ("Fenway Capital") and JPMorgan Chase, N.A. ("JP Morgan"). (Notice of Hearing, Dkt. No. 352).

1.2.    Lehman Commercial and Fenway Capital entered into that certain *Master Repurchase Agreement* ("MRA") as of August 22, 2008, a copy of which is attached to the *Amended Declaration Of Sean A. OKeefe In Support Of Debtors' Objections To And Motion For Order Striking Claims Filed By The Lehman Entities (Replacing Prior Declaration)* (the "OKeefe Decl.") as Exhibits "B," "C" and "D."

1.3.    The MRA states that it is the parties' intent to engage in the *purchase and sale* of the "Purchased Securities," which includes the "Sold Loans" as defined herein. (Ex. "B," ¶ 6, P. WC000013, OKeefe Decl.).

1.4.    The MRA states that the selling party therein, Lehman Commercial, is selling "All of Seller's interest in the Purchased Securities" to Fenway Capital. (Ex. "B," ¶ 8, P. WC000014, OKeefe Decl.).

1.5.    In the MRA, Lehman Commercial represents that it holds or is authorized sell "All of Seller's interest in the Purchased Securities." (Ex. "B," ¶ 10, P. WC000013, OKeefe Decl.).

1.6.    The MRA is an industry form that is accompanied by "Guidance Notes" promulgated by the Bond Market Association. (Ex. "CC," WC000242, OKeefe Decl.). These notes specifically state that the agreement (the "MRA) continues to provide "explicit characterization of transactions as purchases and sales" and describes this characterization as being "essential" for repo participants. (Ex. "CC," WC000242, OKeefe Decl.).

1.7.    The MRA states that it is governed by the laws of the State of New York. (Ex. "B," ¶ 16, P. WC000018, OKeefe Decl.).

1.8.    The Declaration of Irena Goldstein, counsel for Fenway Capital, submitted by the Lehman Entities, states that ". . . while it is correct that Fenway purchases interests in the loans

-3-

pursuant to a repurchase agreement" and "[m]ost importantly, however, Fenway purchase loans."

Goldstein Decl., ¶ 5, ¶ 7.

    1.9.    The following loans (the "Sold Loans") were sold to Fenway Capital pursuant to the MRA on August 22, 2008:

| Loan | Claimant | Proof of Claim No. (collectively, the "Claims") |
|---|---|---|
| SunCal Communities I Loan | Lehman Commercial | 1, 2, 6, 7, 12, 16 |
| Ritter Ranch Loan | Lehman Commercial | 65 |
| SunCal PSV Loan | Lehman ALI | 12 |
| SunCal Delta Coves Loan | Lehman ALI | 21 |
| SunCal Marblehead/ Heartland Loan | Lehman ALI | 9, 21 |
| Sun Cal Oak Valley Loan | OVC Holdings, LLC | 16 |
| SunCal Northlake Loan | Northlake Holdings, LLC | 6 |

(Ex. "B –I," OKeefe Decl.).

    1.10.    The Lehman Entities filed the proofs of claims listed in the above table with respect to the Sold Loans (the "Proofs of Claim"). (Ex. "P" through "BB," OKeefe Declaration).

    1.11.    In the section of the Proofs of Claim (the official form – first page) where a claimant is required to list the "Name Of The Creditor," each of the Lehman Entities filing the Proofs of Claim listed their own name, and each of the Lehman Entities listed their own address on the form as the location for notice and for payment. (Ex. "P" through "BB," OKeefe Declaration).

    1.12.    No reference to the word "agent" appears in the Proofs of Claim, except in the Exhibit "1" thereto. In this exhibit, each Lehman Entities states that the claim is made on behalf of the identified Lehman Entity, "as agent for the lenders." However, the "lenders" are not identified anywhere in the Proofs of Claim or in the exhibit thereto. (Ex. "P" through "BB," OKeefe Declaration).

    1.13.    None of the Lehman Entities have filed the statement required by Federal Rule of Bankruptcy Procedure 2019(a).

-4-

## II

## CONCLUSIONS OF LAW

2.1.     The filing of a claim in a bankruptcy case is governed, *inter alia*, by 11 U.S.C. § 501 and Federal Rule of Bankruptcy Procedure 3001.

2.2.     Fed.R.Bankr.P. 3001(e)(1) provides "If a claim has been transferred other than for security before proof of claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee."

2.3.     At the hearing on the Objection, the Lehman Entities contended that the transfer of the Sold Loans pursuant to the MRA was "for security" within the meaning of Fed.R.Bankr.P. 3001(e)(1), and that they continued to have the right to file the Proofs of Claim with respect to these loans as the "owner." The Court rejects this position on the following grounds:

        A)     The MRA is governed by New York law. In *Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 67 B.R. 557 (D.N.J.1986) the District Court succinctly addressed the application of New York law on the issue of contract interpretation, on similar facts:

> Where the intention of the parties is clearly and unambiguously set forth in the agreement, effect must be given to the parties' intent as revealed in the language used without regard to extrinsic evidence. *See, e.g., Midland Carpet Corp. v. Franklin Associated Properties*, 90 N.J.Super. 42, 46, 216 A.2d 231 (A.D.1966); *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.*, 25 N.Y.2d 535, 307 N.Y.S.2d 449, 451-52, 255 N.E.2d 709, 711-12 (1969). The objective intent of the parties expressed or apparent in the writing controls the interpretation of a contract. *Friedman v. Tappan Development Corp.*, 22 N.J. 523, 531, 126 A.2d 646 (1956); *Hartford Accident & Indemnity Co. v. Wesolowski*, 33 N.Y.2d 169, 171, 350 N.Y.S.2d 895, 305 N.E.2d 90 (1973). The undisclosed, subjective intent of the parties has no bearing on contract construction. *Krosnowski v. Krosnowski*, 22 N.J. 376, 386, 126 A.2d 182 (1956); *In re Smith's Will*, 254 N.Y. 283, 289, 172 N.E. 499 (1930).

67 B.R. at 586.

-5-

1    B)    The language in the MRA is clear with respect to the objective intent of the

2    parties thereto: The parties intended to enter into a *true purchase and sale transaction*, not a transfer

3    "for security." To the extent the parties had an undisclosed subjective intent to the contrary, it is not

4    relevant to this Court's analysis and no evidence has been submitted evidencing such an intent in any

5    event.

6    2.4    The Court hereby concludes that the transfer of the Sold Loans pursuant to the MRA

7    to Fenway Capital was intended to be, and was in fact, a true sale, not a transfer "for security."

8    Accordingly, the Lehman Entities were not authorized to file the Proofs of Claim pursuant to the

9    Fed.R.Bankr.P. 3001(e)(1) on the basis of the clause in this rule excepting instances where the claim

10   is transferred "for security."

11   2.5    The Lehman Entities could not properly file the Proofs of Claim as "creditors."

12   When they listed themselves as the "creditors" on the Proofs of Claim, this was a misrepresentation.

13   2.6    The Lehman Entities' status as "authorized agent" for a creditor for purposes of

14   Fed.R.Bank.P. 3001(b) will be determined by the Court at later hearing.

15

16                                            ###

17

18

19

20

21

22

23

24   DATED: October 2, 2009

     _Erithe A. Smith_
     United States Bankruptcy Judge

25

26

27

28

                                            -6-

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

The foregoing document described: **FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER ON OBJECTIONS TO CLAIMS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 2, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 11, 2009 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 2, 2009 | Susan Connor | /s/ Susan Connor |
|---|---|---|
| Date | Type Name | Signature |

-7-

SERVICE BY E-MAIL

- Michael J Hauser     michael.hauser@usdoj.gov
- Kerri A Lyman     klyman@irell.com
- James M Miller     jmiller@millerbarondess.com
- Louis R Miller     smiller@millerbarondess.com
- Dean A Ziehl     dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Richard Pachulski – rpachulzki@pszjlaw.com
- Edward Soto - Edward.soto@weil.com
- 

-8-

## SERVICE LIST FOR ENTERED ORDER

Notice is given by the Court that a judgment or order entitled **FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER ON OBJECTIONS TO CLAIMS** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):**
Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document will be served on the following person(s) by the Court via NEF and hyperlink to the judgment or order. As of July 2, 2009 the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the e-mail address(es) indicated below:

☒ Service information continued on next page

**SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on next page

**TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or e-mail on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or e-mail address(es) indicated below:

- Richard Pachulski – rpachulzki@pszjlaw.com
- Edward Soto - Edward.soto@weil.com
- 

☐ Service information continued on next page

-9-

- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- John A Boyd    fednotice@tclaw.net
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Vincent M Coscino    emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@shlaw.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Robert P Goe    kmurphy@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michelle Hribar    mhribar@rutan.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Stephen M Judson    sjudson@fablaw.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, emilee@kirkland.com;alevin@kirkland.com
- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Douglas M Neistat    twilliams@greenbass.com

-10-

1
2
3
4
5
6
7
8
9
10

- Mike D Neue   mncue@thelobelfirm.com
- Robert Nida   Rnida@castlelawoffice.com
- Penelope Parmes   pparmes@rutan.com
- Ronald B Pierce   ronald.pierce@sdma.com
- Raymond A Policar   hausermouzes@sbcglobal.net
- Cassandra J Richey   cmartin@pprlaw.net
- Debra Riley   driley@allenmatkins.com
- Martha E Romero   Romero@mromerolawfirm.com
- William D Schuster   bills@allieschuster.org
- Michael St James   ecf@stjames-law.com
- Todd L Turoci   tturoci@aol.com
- United States Trustee (SA)   ustpregion16.sa.ecf@usdoj.gov
- Jason Wallach   jwallach@bergerkahn.com
- Christopher T Williams   ctwilliams@venable.com
- David M Wiseblood   dwiseblood@seyfarth.com
- Arnold H Wuhrman   Wuhrman@serenitylls.com
- Dean A Ziehl   dziehl@pszjlaw.com, dziehl@pszjlaw.com

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-11-

**EXHIBIT "3"**

WEIL, GOTSHAL & MANGES LLP
Attorneys for Debtors
and Debtors in Possession
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Michael P. Kessler, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:                                           :        **Chapter 11 Case No.**
                                                 :
**LEHMAN BROTHERS HOLDINGS, INC.,** *et al.,*    :        **08-13555 (JMP)**
                                                 :
              **Debtor,**                        :        **(Jointly Administered)**
                                                 :

---------------------------------------------------------------x

### DEBTORS' OBJECTION TO THE SCC ENTITIES'
### MOTION FOR RELIEF FROM THE AUTOMATIC STAY

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-

captioned chapter 11 cases (collectively, with LBHI, the "Debtors") as and for their objection to

the motion (the "Motion") dated November 10, 2008 of the SCC Entities[1] for relief from the

automatic stay in the above-captioned cases, respectfully represent:

### PRELIMINARY STATEMENT

The SCC Entities cannot show that cause exists under the Bankruptcy Code to

---

[1] The SCC Entities are defined as follows in the Motion: SCC Acquisitions, Inc.; SunCal Management, LLC; SCC Acquisitions, LLC; SunCal Communities II, LLC; SunCal Bickford Ranch, LLC; SCC/Palmdale, LLC; Palmdale Hills Property, LLC; SunCal Emerald Meadows Ranch, LLC; Acton Estates, LLC; SJD Partners, Ltd.; SJD Development Corp.; SunCal Summit Valley, LLC; Seven Brothers, LLC; Kirby Estates, LLC; SunCal Century City, LLC; SunCal Oak Knoll, LLC; SunCal Torrance Properties, LLC; SunCal Beaumont Heights, LLC; SunCal Johannson Ranch, LLC; SunCal Marblehead, LLC; SunCal Heartland, LLC; SunCal Communities I, LLC; SunCal Communities III, LLC; LB/L-SunCal Northlake, LLC; LB/L-SunCal Oak Valley, LLC; SunCal PSV, LLC; Delta Coves Venture, LLC; North Orange Del Rio Land, LLC; Tesoro SF LLC; and SCC Communities LLC. Certain of the SCC Entities have filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (as defined herein) or have had involuntary petitions for relief under chapter 11 of the Bankruptcy Code filed against them. Such involuntary petitions have not yet been adjudicated. The entities pursuant to which voluntary or involuntary petitions are currently pending are referred to herein as the "SCC Debtors."

grant their blanket request for an order lifting the automatic stay in the Debtors' chapter 11 cases. The SCC Entities ask this Court to lift the automatic stay to allow them to take unfettered actions in their chapter 11 cases – including actions that will threaten the Debtors' interests and unnecessarily incur great expense – without showing that the SCC Entities have a viable game plan with a reasonable chance for success. Indeed, the SCC Entities request that this Court open the door to allow them to pursue *in terrorem* actions against the Debtors which, if permitted, could result in great losses to the Debtors' estates unless the Debtors spend large sums of money to protect their interests. Without limitation, the SCC Entities request that they be permitted by this Court to file motions in their chapter 11 cases seeking (i) authorization of the use of the Debtors' cash collateral, (ii) approval of postpetition debtor-in-possession ("DIP") financing on a priming lien basis that would subordinate the Debtors' first lien interests in a large number of properties to those of a third-party DIP lender, (iii) authorization of the sale of certain assets free and clear of the Debtors' liens, claims and encumbrances, and (iv) confirmation of a plan of reorganization that could impair the Debtors' interests. The SCC Entities fail to specify the parameters of any such proposed motions. Not only have the SCC Entities failed to show that cause exists to modify the automatic stay to enable the SCC Entities to pursue *any* of the aforementioned actions, but also the SCC Entities' bare-bones motion also fails to establish the requisite cause to grant their "everything but the kitchen sink" request.

Although it may be understandable that the SCC Debtors wish to manage their bankruptcy cases without having to seek this Court's relief for actions they take, this Court must, likewise, be cognizant of the competing interests of *these* Debtors. Granting the broad relief requested by the SCC Entities will necessarily require the Debtors to expend valuable estate resources to defend and litigate in the SCC Entities' chapter 11 cases every matter, big or small, that potentially affects their interests, thus opening a Pandora's box of unknown magnitude.

Accordingly, the SCC Entities' arguments to substantiate their broad request – namely that they be allowed to avail themselves of the same rights as the Debtors in their chapter 11 cases – are without merit. If the stay relief requested is granted, the SCC Entities will be able to administer their chapter 11 cases as they wish, but the Debtors will be stripped of the automatic stay protections granted to them by the Bankruptcy Code. To the extent this Court determines that cause exists to lift the automatic stay, such relief should be circumscribed and limited to ensure that the Debtors' interests remain well protected.

## FACTUAL BACKGROUND

1. Lehman Commercial Paper, Inc. ("LCPI"), Lehman ALI, Inc. ("Lehman ALI"), a non-debtor affiliate of LBHI, OVC Holdings LLC ("OVC Lender"), a non-debtor affiliate of LBHI, and Northlake Holdings LLC ("Northlake Lender" and together with LCPI, Lehman ALI and OVC Lender, the "Lehman Lenders"), a non-debtor affiliate of LBHI, are lenders to certain of the SCC Entities (collectively, the "SCC Borrowers") pursuant to various separate loan agreements and are owed by the SCC Borrowers approximately $2.0 billion on account of such obligations (the "Obligations"). The Obligations are secured, in part, by first-priority deeds of trust on various real estate projects located in the State of California (collectively, the "Projects").

2. On or about May 23, 2008, LBHI, Lehman ALI, LCPI, and certain of the SCC Entities (collectively, the "SCC Parties") entered into an agreement (the "Agreement") pursuant to which the parties thereto agreed to enter into a settlement agreement with respect to certain of the Obligations and with respect to certain other obligations and relationships between the parties and/or their respective affiliates pursuant to which, among other things, certain of the Projects were to be conveyed to affiliates of the Lehman Lenders in lieu of foreclosure, all as more particularly described in the Agreement (collectively, the "Settlement Transactions").

Pursuant to the Agreement, and pending the closing of the Settlement Transactions, Lehman ALI, as the then-lender under each of the loans governed by the Agreement, agreed to meet with the SCC Parties to discuss and determine the performance of certain work and the payment of certain urgent payables with respect to certain of the Projects (as described in the Agreement) after which Lehman ALI would make protective advances to reimburse or provide funds to such SCC Parties for the payment of those payables approved by Lehman ALI.

        3.      On or about September 15, 2008 (the "Petition Date"), LBHI commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Certain of its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code shortly thereafter.

        4.      During October and early November 2008, representatives of the SCC Parties and the Lehman Lenders discussed and corresponded regarding the SCC Parties' asserted need to pay certain urgent payables for certain Projects. As noted in the Motion, the Lehman Lenders were willing to disburse certain additional funds. Maintaining that these amounts were insufficient for their needs, on or about November 7, 2008, certain of the SCC Entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "California Court").

        5.      On or about November 10, 2008, the SCC Entities filed the Motion in this Court pursuant to which they seek broad relief from the automatic stay imposed in the Debtors' chapter 11 cases.

## ARGUMENT

### RELIEF FROM THE AUTOMATIC STAY SHOULD BE DENIED

        6.      The automatic stay is a fundamental protection afforded to a debtor under

the Bankruptcy Code. *See* H.R. Rep. No. 95-595, at 340 (1977) reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97; *see also Eastern Refractories Co., Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998). In pertinent part, section 362(a) of the Bankruptcy Code provides that:

> [A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities of –
>
> (1)  the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> [. . .]; or
>
> (3)  any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(1), (3).

7.  The automatic stay not only "provide[s] debtors with temporary respite from their creditors so that they may have an opportunity to develop and implement plans of reorganization to satisfy their creditors and resuscitate their businesses[]," *In re 160 Bleeker St. Assocs.*, 156 B.R. 405, 411 (S.D.N.Y. 1993), but also it preserves property of the estate for use in the Debtors' reorganization. *In re Prudential Lines, Inc.*, 114 B.R. 27, 29 (Bankr. S.D.N.Y. 1989).

8.  Under limited circumstances, however, the Bankruptcy Code recognizes that relief from the automatic stay may be appropriate. 11 U.S.C. § 362(d); *see also In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). The SCC Entities seek relief from the automatic stay pursuant to the grounds set forth in subsection (1) of section 362(d) of the Bankruptcy Code. In pertinent part, the statute provides:

> On request of a party in interest . . . the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1)  for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1). Under section 362(g) of the Bankruptcy Code, the party seeking relief has the burden of proof to make an initial showing of cause. If the movant makes a *prima facie* showing of cause, the burden shifts to the debtor to show cause does not exist to modify the automatic stay. If, however, the movant fails to establish a *prima facie* showing of cause, then "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.*, 907 F.2d at 1285.

9.     As demonstrated below, the SCC Entities have not carried their burden of establishing "cause" under section 362(d)(1) for *any* stay relief, let alone the expansive stay relief they request. For the reasons set forth below, the Motion must be denied.

### A.     The SCC Entities have failed to Demonstrate "Cause" for Relief under Section 362(d)(1) of the Bankruptcy Code.

10.     Although the term "cause" is not defined in the Bankruptcy Code, the Court in the seminal Second Circuit case, *In re Sonnax Industries, Inc.*, set forth a list of twelve factors that may constitute "cause" for purposes of section 362(d). Among these factors are (i) whether the debtor's bankruptcy proceeding is connected to the other proceeding, (ii) the balance of harms, (iii) the interests of judicial economy and economical resolution of litigation, and (iv) whether the action primarily involves third parties. *See In re Sonnax Indus., Inc.*, 907 F.2d at 1286.

11.     Arguing that the balance of harms weighs in their favor, the SCC Entities list a number of Projects that they state need redress. Importantly, however, certain of the Projects listed in the Motion as being in need of immediate redress are not the subject of the Agreement or are no longer subject to any of the SCC Entities' interests.[2] The SCC Entities

---

[2] For example, none of the SCC Entities currently have an interest in the Pacific Point Project (as defined in the Motion). Similarly, the 10000 Santa Monica Project, the Oak Knoll Project and the Delta Cove Project (each as defined in the Motion) are not the subject of the Agreement.

further contend they are entitled to relief from the automatic stay because they would like to be able to administer the debtor SCC Entities' chapter 11 cases without the concomitant burden of having to obtain stay relief from this Court for their every action that affects the interests of the Debtors. Specifically, the SCC Entities have identified a *non-exclusive list* of four contemplated actions for which they have requested stay relief: (i) approval of postpetition DIP financing on a priming lien basis that would subordinate the Debtors' interests to those of a third-party DIP lender (including, theoretically, for certain SCC Entities who are not currently debtors under the Bankruptcy Code), (ii) authorization of the use of the Debtors' cash collateral, (iii) authorization of the sale of certain assets free and clear of the Debtors' liens, claims and encumbrances, and (iv) confirmation of a plan of reorganization that could impair the Debtors' interests, although they do not limit their stay relief request to these. The SCC Entities have failed to establish cause, particularly on an expedited basis, for the relief sought.

12.     DIP Financing. Although the Motion does not identify the prospective DIP lender or contain any other factual information concerning the proposed DIP, the SCC Entities have provided the Debtor with a copy of a proposed term sheet (the "Term Sheet"). As currently drafted, the terms of the proposed DIP are completely unworkable for the SCC Debtors, and it is doubtful the proposed DIP loan can be approved by the California Court. Proceeding with a DIP motion to approve the provided Term Sheet would be a fool's mission. First and foremost, the Term Sheet requires that the DIP facility prime the Debtors' liens under Bankruptcy Code section 364(d). Neither the Motion nor the attached Declaration of Bruce Cook, however, provide any information on how the proposed DIP loan can or may prime the Debtors' first and primary liens. This glaring failure to explain is no accident – there are no means available to provide the Debtors with the adequate protection necessary to prime their liens. The real property collateral values are well below the amount of the Debtors' liens. The

SCC Entities have no unencumbered assets of more than nominal value, equity value in encumbered assets, or other means of providing adequate protection. In addition, the Term Sheet contemplates (a) an interest rate on the outstanding balance of the DIP credit facility at a minimum rate of 14% per annum (with default interest accruing at an additional 5% per annum), (b) commitment and exit fees of $4.5 million in total (including fees attributable to advances made for the payment of such fees) which result in an effective interest rate of approximately 38% over the term of the DIP credit facility assuming that the full amount of the commitment under the DIP credit facility is funded immediately, (c) a closing to occur on December 1, 2008 (which, of course, would necessarily require the SCC Entities to negotiate, document and obtain court approval of such DIP facility by December 1, 2008), (d) an exclusivity provision that would obligate the SCC Entities to pay the proposed DIP lender $2.25 million in liquidated damages if violated, and (e) cross-defaulting the DIP facility with other debt of the SCC Entities (which is prepetition debt that is already in default) and even with debt of SCC Entities that may not be in bankruptcy. Moreover, it even requires liens on collateral that the SCC Entities do not own. All of the interest and fees are contemplated to be paid from DIP loan advances – in effect, the proposed DIP lender would pay itself the high interest charges and egregious fees and by doing so take priming liens on the Debtors' collateral. The SCC Entities have no means or hope of paying back the DIP loan, and such loan is bound to be in default at the end of the maximum 90-day term. The proposal is a classic "loan to own" designed to strip the Debtors of their valuable collateral. The contemplated DIP loan agreement cannot be approved as currently proposed. Accordingly, it is not clear that the balance of harms weighs in favor of the SCC Entities.

13. Use of Cash Collateral. The SCC Entities also state they will seek to use the Debtors' cash collateral, but provide no additional parameters within which this Court may

evaluate the viability of the proposed terms. While it is not for this Court to determine the merits of this request, certainly to the extent the Debtors have to expend their resources and to respond to and defend the debtor SCC Entities' requests, the SCC Entities should be required to show a likelihood that the request they will put forth in their chapter 11 cases is reasonable. Without any additional color, this Court cannot weigh the balance of harms between the debtors.

14.     Sale of Assets and Plan Confirmation. The SCC Entities have not articulated why expedited stay relief, at this juncture, to enable the SCC Debtors to confirm a plan of reorganization and/or an asset sale, will assist them in their immediate goal of estate preservation. There are no imminent plans to sell the SCC Debtors' assets, and no plan, to the Debtors' knowledge, is contemplated as of yet. Indeed, the SCC Debtors' chapter 11 cases are only a couple of weeks old – if that. The Debtors and this Court should be afforded not only the relevant information pertaining to these two requests, but also the time in which to evaluate their merits. Accordingly, the Debtors submit that cause has not been established to warrant expedited stay relief so as to enable the SCC Debtors to seek to sell assets or confirm a plan. Here, too, the balance of harms weighs in the Debtors' favor.

15.     Applying the other *Sonnax* factors similarly supports the conclusion that stay relief is not warranted. For example, unlike in more frequent circumstances where stay relief is sought to proceed against a third party, here the stay relief sought would directly affect the Debtors and their estates. Consequently, the requested stay relief is not appropriate and should not be granted.

**B.     Any Stay Relief Granted Should Be Narrowly Tailored.**

16.     Importantly, the SCC Entities do not seek to limit their expedited request to the four aforementioned actions. Instead, and without providing this Court or the Debtors any substance on which to evaluate their request, the SCC Entities seek *carte blanche* authority from

this Court to do as they wish in their chapter 11 cases as though the Debtors were not in bankruptcy. The SCC Entities reason that they should be afforded "the same Congressionally sanctioned rights as Lehman has sought to pursue in these cases without the threat of violating the automatic stay in these cases." Ironically, and contrary to what the SCC Entities imply, this request, if granted, does not have the effect of leveling the playing field. Instead, granting the broad relief sought by the SCC Entities would strip the Debtors of *their* Congressionally sanctioned rights. The Debtors, in these cases, are charged with preserving their estates and resources for the benefit of their creditors. If the Court grants the relief requested by the SCC Entities, the Debtors may find themselves in the undesirable position of having to litigate and defend much more than life and safety issues, thus draining their employee resources and economic value – and creating dangerous precedent for others to seek similar overarching stay relief. This result defies the policies underlying the Bankruptcy Code and implies that one debtor's bankruptcy case is more important than another's.

17. To the extent the Court finds that cause exists to modify the automatic stay – something that, as noted above, the Debtors dispute, the Court should tailor the relief granted to the specific, identified immediate actions sought to be taken by the SCC Entities, rather than terminating or broadly modifying the stay with respect to the Debtors' entire chapter 11 cases. Section 362(d) of the Bankruptcy Code authorizes bankruptcy courts to grant relief from the stay by "terminating, annulling, modifying, or conditioning" the stay. 11. U.S.C. § 362(d). In the case of modifying or conditioning the stay, "bankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief." *Eastern Refractories Co., Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998). By narrowly tailoring any potential stay relief, the Court will ensure that such stay relief is limited to

redress specific concerns, and the Debtors' interests in their own chapter 11 cases remain

protected.

WHEREFORE, the Debtors respectfully request that the Court deny the Motion

and grant the Debtors such other relief as is just.

Dated: November 18, 2008
New York, New York

/s/ Michael P. Kessler
Michael P. Kessler, Esq.

WEIL, GOTSHAL & MANGES, LLP
767 Fifth Avenue
New York, NY 10153-0019
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**EXHIBIT "4"**

1   Joseph A. Eisenberg P.C. (Bar No. 52346)
    E-Mail: jeisenberg@jmbm.com
2   JEFFER, MANGELS, BUTLER & MARMARO LLP
    1900 Avenue of the Stars, 7th Floor
3   Los Angeles, CA 90067
    Phone: (310) 203-8080
4   Fax: (310) 203-0567

5   -and-

6   Edward Soto, Esq. (*pro hac vice* admission pending)
    Shai Waisman, Esq. (*pro hac vice* admission pending)
7   Gregory Hull, Esq.
    WEIL, GOTSHAL & MANGES LLP
8   767 Fifth Avenue
    New York, NY 10153-0119
9   Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

10
    ATTORNEYS FOR LEHMAN ALI, INC.
11  AND LEHMAN COMMERCIAL PAPER INC.

12                  **UNITED STATES BANKRUPTCY COURT**
                    **CENTRAL DISTRICT OF CALIFORNIA**
13                         **SANTA ANA DIVISION**

14  In re                                    Case No.: 8:08-bk-17206-ES
                                             Chapter 11
15  Palmdale Hills Property, LLC, and
    its Related Debtors.                     Jointly Administered with Case Nos.
16                                           8:08-bk-17209-ES; 8:08-bk-17240-ES;
                                             8:08-bk-17224-ES; 8:08-bk-17242-ES;
17        Jointly Administered Debtors and   8:08-bk-17225-ES; 8:08-bk-17245-ES;
          Debtors-in-Possession             8:08-bk-17227-ES; 8:08-bk-17246-ES;
18                                           8:08-bk-17230-ES; 8:08-bk-17231-ES;
                                             8:08-bk-17236-ES; 8:08-bk-17248-ES;
19  Affects:                                 8:08-bk-17249-ES; 8:08-bk-17573-ES;
    ☐ All Debtors                            8:08-bk-17574 ES; 8:08-bk-17575-ES
20  ☒ Palmdale Hills Property, LLC
    ☒ SunCal Beaumont Heights, LLC
21  ☐ SCC/Palmdale, LLC                      **RESPONSE OF LEHMAN COMMERCIAL**
    ☒ SunCal Johannson Ranch, LLC            **PAPER INC. AND LEHMAN ALI, INC. TO**
22  ☒ SunCal Summit Valley, LLC              **DEBTORS' MOTION FOR ORDER**
    ☒ SunCal Emerald Meadows, LLC            **AUTHORIZING SURCHARGE UNDER 11**
23  ☒ SunCal Bickford Ranch, LLC             **U.S.C. § 506(c), AND, IN THE**
    ☒ Acton Estates, LLC                     **ALTERNATIVE, USE OF CASH**
24  ☐ Seven Brothers, LLC                    **COLLATERAL**
    ☐ SJD Partners, Ltd.
25  ☐ SJD Development Corp.                  **Hearing**:
    ☐ Kirby Estates, LLC                     Date:   February 3, 2009
26  ☐ SunCal Communities I, LLC              Time:   2:00 p.m.
    ☐ SCC Communities LLC                    Place:  Courtroom 5A
27  ☐ SunCal Communities III, LLC                    411 West Fourth Street
    ☐ North Orange Del Rio Land, LLC                 Santa Ana, CA 92701
28  ☐ Tesoro SF, LLC

    **Response to 506(c)/Cash Collateral Motion**              **Case No.: 8:08-17206-ES**

1    Lehman Commercial Paper Inc. ("LCPI"), as debtor and debtor in possession in its

2    chapter 11 case (the "LCPI Bankruptcy Case") in the United States Bankruptcy Court for the

3    Southern District of New York (the "New York Bankruptcy Court"), and Lehman ALI, Inc.

4
("ALI," and collectively, with LCPI, "Lehman"), creditors and parties-in-interest in the above-
5

6    captioned chapter 11 cases, by and through their undersigned counsel, as and for their response to

7    the motion, dated January 16, 2009 (the "Motion"), of the Debtors (defined below) for order

8    authorizing surcharge under 11 U.S.C. § 506(c), and, in the alternative, use of cash collateral,

9    respectfully represent as follows:

10                              I.    PRELIMINARY STATEMENT

11
The Debtors were formed to develop residential real estate projects throughout the
12
western United States.  Real property was mortgaged, and equity interests were pledged to LCPI
13
14   as security, for the applicable Debtors' obligations under the Loans (as defined below) that LCPI

15   furnished.  Certain of the Debtors now seek authority to use and surcharge LCPI's cash collateral

16   pursuant to section 506(c) of the Bankruptcy Code (as defined below) or, in the alternative, to use

17   LCPI's cash collateral pursuant to section 363(c)(2) of the Bankruptcy Code.  As set forth more

18   specifically below, the Debtors' Motion is substantively unsupportable.  However, even before
19
reaching that point, the Motion should be denied because it violates the automatic stay pursuant to
20
21   section 362 of the Bankruptcy Code, and attempts to circumvent a court order declining to lift the

22   automatic stay.

23      As the Debtors are aware, LCPI is a debtor in the LCPI Bankruptcy Case.  Accordingly, all

24   of LCPI's assets are subject to the automatic stay under section 362 of the Bankruptcy Code.

25   Thus, the Debtors' attempt to use or surcharge LCPI's cash collateral constitutes the Debtors'

26   knowing violation of the automatic stay.

27

28                                        2                    **Case No.: 8:08-17206-ES**

Recognizing that actions, including using or surcharging LCPI's cash collateral, would violate the automatic stay, the Debtors previously filed a motion for relief from the automatic stay in the LCPI Bankruptcy Case.[1] The Debtors appeared in the New York Bankruptcy Court and argued their motion.  On November 21, 2008 the New York Bankruptcy Court denied the Debtors' request to modify the stay in the LCPI case.  No appeal or request for reconsideration was filed.[2]  Having requested and been denied relief from the automatic stay, the Debtors have now elected to disregard the New York Bankruptcy Court's order, violate the automatic stay and ask this Court to grant relief affecting the assets of LCPI's estate.  This Court should not countenance the Debtors' flagrant disregard of the automatic stay and an order of another Bankruptcy Court.

Assuming, *arguendo*, that the Motion did not violate the automatic stay and that it were acceptable for the Debtors to attempt an end-run around the New York Bankruptcy Court's order, the Motion fails as a matter of law because the Debtors simply cannot meet their burden under section 506(c).

Section 506(c) is clear that debtors cannot use or surcharge the cash collateral of a lender for costs and expenses related to projects other than the specific project for which the loan was made.  The Debtors seek to use and surcharge LCPI's cash collateral for costs and expenses related to seven different properties.  However, the applicable cash collateral secures only the Ritter Ranch Mortgage Loan (as defined below), which is secured by only one of these seven properties.  The cash collateral does not secure any other loan made by LCPI to any of the

---

[1] The Debtors' motion to the New York Bankruptcy Court is attached hereto as Exhibit A.

[2] The New York Bankruptcy Court's order is attached hereto as Exhibit B.

3

Case No.: 8:08-17206-ES

Debtors.  Section 506(c) bars the Debtors from using or surcharging the Ritter Ranch cash collateral for costs and expenses related to other separate and distinct projects.

Section 506(c) also requires a showing that the costs and expenses are "necessary," or that they "benefit" the secured creditor.  The secured creditor here is LCPI, the holder of the Ritter Ranch Mortgage Loan, which is the only Loan (as defined below) secured by the cash collateral that the Debtors are attempting to surcharge.  The Debtors are seeking to surcharge LCPI's cash collateral, not because it is necessary or will benefit LCPI, but rather to fund the Debtors' operations while pursuing their frivolous equitable subordination action against certain Lehman entities.  Additionally, it is inconceivable how any costs and expenses that are proposed to benefit the projects that do not serve as collateral for the Ritter Ranch Mortgage Loan could possibly benefit the holder of the Ritter Ranch Mortgage Loan.

The case law applying section 506(c) is also clear that a debtor cannot surcharge collateral for the purpose of recovering costs related to labor.  In defiance of that precedent, the Debtors are seeking to use LCPI's cash collateral to pay approximately $820,000 in management fees to the principals of the Debtors for them to manage their own properties.  To add insult to injury, the proposed budget attached to the Motion makes it clear that the purported "management" of the properties requires nothing more than issuing a few checks to vendors.

In the alternative, the Debtors seek to use LCPI's cash collateral pursuant to section 363(c)(2) of the Bankruptcy Code.  The Debtors have failed to carry their burden with respect to this request as well.  Use of cash collateral requires the provision of adequate protection to the secured creditor.  The value of LCPI's collateral with respect to the Ritter Ranch Mortgage Loan is approximately 22% of the aggregate amount of its outstanding principal and interest (let alone late fees, costs and expenses).  There is no conceivable way that the Debtors can provide LCPI with the adequate protection necessary to use its cash collateral.

4

1   Finally, the Debtors claim that the use of the cash collateral will promote successful

2   reorganization is unavailing.   The prospect of a successful reorganization with respect to

3   Palmdale Hills (as defined below), the only Debtor that could even seek the use of LCPI's cash

4   collateral, is impossible, and the Debtors have not provided any evidence to the contrary.   The

5   Motion seeks to do nothing more than shift operating costs of Palmdale Hills and other Debtors

6   that have absolutely no residual or other interest in LCPI's cash collateral, to LCPI, in an attempt

7   to prevent LCPI from foreclosing on its collateral.   For these reasons, the Motion should be

8   denied.

9

10

11                              **I.    BACKGROUND**

12  **A.    General**

13      On or about November 6, 2008 and November 7, 2008 (collectively, the "Initial Petition

14  Dates"), (i) Palmdale Hills Property, LLC ("Palmdale Hills"), (ii) SunCal Beaumont Heights,

15  LLC ("Beaumont"), (iii) SCC/Palmdale, LLC ("Palmdale"), (iv) SunCal Johannson Ranch, LLC

16  ("Johannson"), (v) SunCal Summit Valley, LLC ("Summit"), (vi) SunCal Emerald Meadows,

17  LLC ("Emerald"), (vii) SunCal Bickford Ranch, LLC ("Bickford"), (viii) Acton Estates, LLC

18  ("Acton"), (ix) Seven Brothers, LLC ("Seven Brothers"), (x) SJD Partners, Ltd. ("SJD Partners"),

19  (xi) SJD Development Corp. ("SJD Development"), (xii) Kirby Estates, LLC ("Kirby"),

20  (xiii) SunCal Communities I, LLC ("SunCal I"), and (xiv) SunCal Communities III, LLC

21  ("SunCal III") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

22  On or about November 19, 2008 (collectively, with the Initial Petition Dates, the "Petition

23  Dates"), North Orange Del Rio Land, LLC ("Del Rio"), SCC Communities LLC ("SCC

24  Communities"), and Tesoro SF, LLC ("Tesoro" and collectively, with Palmdale Hills, Beaumont,

25  Palmdale, Johannson, Summit, Emerald, Bickford, Acton, Seven Brothers, SJD Partners, SJD

26  Development, Kirby, Del Rio, SCC Communities, SunCal I and SunCal III, the "Debtors")) each

27  filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

28      The Debtors' chapter 11 cases are currently being jointly administered.   The Debtors are

                                        5
                                                          **Case No.: 8:08-17206-ES**

operating their businesses as debtors in possession. The Debtors were formed to develop various residential real estate projects located throughout the western United States. With the exception of Palmdale Hills, the nature of the remaining Debtors' businesses is described on their voluntary petitions as "single asset real estate" as defined in section 101(51)(B) of the Bankruptcy Code.

**B.     The Loans**

### (1)     The SunCal I Communities Loan

LCPI is the administrative agent and the sole lender under that certain Credit Agreement, dated as of November 17, 2005, by and among (i) SunCal I and SunCal III, as borrowers, (ii) LCPI, as administrative agent and lender, and (iii) Lehman Brothers, Inc., as arranger, pursuant to which LCPI made a loan in the maximum aggregate principal amount of approximately $395,313,713.37 (as amended and/or supplemented from time to time, the "SunCal Communities I Loan"). The SunCal Communities I Loan is secured, in part, by that certain Guarantee and Collateral Agreement, dated as of November 17, 2005, made by SunCal I, SunCal III, Acton, Emerald, Bickford and Summit (collectively, the "SunCal Communities I Guarantors") in favor of LCPI (as amended, modified and/or supplemented, the "SunCal Communities I Guaranty"). The obligations of the SunCal Communities I Guarantors under the SunCal Communities I Guaranty are secured, in part, by (a) first lien deeds of trust on all real and personal property owned by Bickford (the "Bickford Ranch Property"), all real and personal property owned by Acton (the "Acton Property"), and all real and personal property owned by Emerald (the "Emerald Meadows Property"), granted by Bickford, Acton and Emerald, respectively, for the benefit of LCPI, (b) a pledge of equity interests held by SunCal I in each of the following five Debtor subsidiaries of SunCal I: Summit, Beaumont, Johannson, Emerald, and Bickford (which own, respectively, certain real property referred to as the "Summit Valley Property"[3] (as described below), the "Beaumont Heights Property" (as described below), the

---

[3] The Summit Valley Property is owned by three of the Debtors: Summit, Seven Brothers, and Kirby.

6                                     **Case No.: 8:08-17206-ES**

"Johannson Ranch Property" (as described below), the Emerald Meadows Property, and the Bickford Ranch Property), and (c) a pledge of equity interests held by Summit in each of the following two Debtor subsidiaries of Summit:   Seven Brothers and Kirby (which own, respectively, portions of the Summit Valley Property).

### (2)    The Bickford Second Lien Loan

ALI is the owner and holder of that certain Promissory Note Secured by a Deed of Trust, dated as of May 25, 2005, in the maximum aggregate principal amount of approximately $30,000,000 executed by Bickford, as borrower, and payable to the order of ALI (as amended and/or supplemented from time to time, the "Bickford Second Lien Loan"). The Bickford Second Lien Loan is secured, in part, by a second lien deed of trust on the Bickford Ranch Property granted by Bickford for the benefit of ALI.

### (3)    The Ritter Ranch Mortgage Loan and the Ritter Ranch Mezz Loan

LCPI is the administrative agent and the sole lender under that certain Credit Agreement, dated as of February 8, 2007, by and among Palmdale Hills, as borrower, LCPI, as administrative agent and lender, and Lehman Brothers Inc., as arranger, pursuant to which LCPI made a loan in the maximum aggregate principal amount of approximately $264,000,000 (as amended and/or supplemented from time to time, the "Ritter Ranch Mortgage Loan"). The Ritter Ranch Mortgage Loan is secured, in part, by a first lien deed of trust on all real and personal property owned by Palmdale Hills (the "Ritter Ranch Property") granted by Palmdale Hills for the benefit of LCPI.

LCPI is also the administrative agent and sole lender under that certain Mezzanine Credit Agreement, dated as of March 30, 2007, among Palmdale, as borrower, LCPI, as administrative agent and lender, and Lehman Brothers, Inc., as arranger, pursuant to which LCPI provided a revolving credit facility in the maximum aggregate principal amount of approximately $95,000,000 (as amended and/or supplemented from time to time, the "Ritter Ranch Mezz Loan"). The Ritter Ranch Mezz Loan is secured, in part, by a pledge of Palmdale's equity interest in Palmdale Hills.

7

Case No.: 8:08-17206-ES

Prior to the Petition Dates, the borrowers and guarantors under each of the SunCal Communities I Loan, the Bickford Second Lien Loan, the Ritter Ranch Mortgage Loan, and the Ritter Ranch Mezz Loan (collectively, the "Loans") defaulted on their obligations under such loans which defaults remain uncured. There is no equity in any of the real property that has been mortgaged to LCPI or ALI as security for the applicable Debtors' obligations under the Loans (collectively, the "Properties").

**C.    Value of the Collateral**

Although the Loans are secured by personal property and fixtures in addition to real property, the primary value of the collateral securing the respective Loans resides in the Properties and the equity interests referenced in this Motion (collectively, all of the collateral securing the Loans, the "Collateral"). As is set forth in the table below, LCPI and ALI are substantially undersecured with respect to their Loans.

| Loan Facility/ Approximate Amount of Principal Indebtedness as of 1/12/2009 | Approximate Appraised Value of Collateral | Percentage of Value Compared to Outstanding Principal Balance |
|---|---|---|
| **SunCal Communities I Loan/** $277,742,750 | $58,900,000 | 21% |
| **Bickford Second Lien Loan/** $30,000,000 | $0[4] | 0% |
| **Ritter Ranch Mortgage Loan/** $246,526,344 | $42,900,000 | 17% |
| **Ritter Ranch Mezz Loan/** $95,000,000 | $0[5] | 0% |

---

[4] The Bickford Second Lien Loan is subject to the lien of the first deed of trust securing the SunCal Communities I Guaranty which, in turn, secures the SunCal Communities I Loan. Given the value of the Bickford Ranch Property relative to the outstanding balance of the SunCal Communities I Loan, there is no collateral value securing the Bickford Ranch Second Lien Loan.

[5] The Ritter Ranch Mezz Loan is subject to the lien of the first deed of trust securing the Ritter Ranch Mortgage Loan. Given the value of the Ritter Ranch Property relative to the outstanding balance of the Ritter Ranch Mortgage Loan, there is no collateral value securing the Ritter Ranch Mezz Loan.

8

Case No.: 8:08-17206-ES

It goes without saying that the value of Collateral securing each of the Loans cited above does not even begin to approach the outstanding *principal* amount of the debt – let alone the total amount of the Loans including interest and fees. The Debtors simply have no equity in the Collateral, and the value of the Collateral, particularly in this economic climate, continues to decline on a daily basis.

## II.    RESPONSE

### A.    The Filing of the Motion Constituted a Violation of the Automatic Stay

LCPI is currently a debtor in the LCPI Bankruptcy Case. As such, all of LCPI's assets are subject to the automatic stay under section 362 of the Bankruptcy Code. Among other things, the automatic stay prevents "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay "gives the debtor a breathing spell from his creditors ... It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *In re Stucka*, 77 B.R. 777, 781 (Bankr. C.D. Cal. 1987) (quoting H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 340, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6296). "By halting all collection efforts" the automatic stay "gives the debtor a breathing spell from his creditors during which the debtor can try to reorganize." *In re Dawson*, 390 F.3d 1139, 1147 (9th Cir. 2004) (citing *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir. 1993)). "By preventing creditors from pursuing, to the detriment of others, their own remedies against the debtors' property the stay protects creditors." *Id.*

By attempting to use or surcharge LCPI's cash collateral without obtaining a modification of the automatic stay from the New York Bankruptcy Court, the Debtors have completely disregarded the express provisions of Section 362(c) of the Bankruptcy Code. As such, the Motion must be denied.

In fact, the Debtors recognize that use of LCPI's cash collateral without authorization of the New York Bankruptcy Court would be a violation of LCPI's automatic stay. This is precisely why, on November 10, 2008, the Debtors filed a motion in LCPI Bankruptcy Case for relief from

9                                   **Case No.: 8:08-17206-ES**

the automatic stay (the "Lift Stay Motion").  In their Lift Stay Motion, the Debtors *specifically* asked the New York Bankruptcy Court to lift the stay to enable the Debtors to seek to use cash collateral.  Indeed, the Debtors appeared in the New York Bankruptcy Court and argued their motion.  On November 21, 2008, however, the Honorable James M. Peck denied the Lift Stay Motion.  As such, LCPI's automatic stay remains in full force and effect with respect to the Debtors.

Nonetheless, in flagrant violation of both LCPI's automatic stay, and Judge Peck's order, the Debtors have filed the Motion and seek to obtain possession of LCPI's property.  By bringing the Motion before this Court, the Debtors are essentially asking this Court to overrule the decision made by another court in a different jurisdiction.  This Court simply should not countenance the Debtor's request.  *In re Miller,* 397 F.3d 726, 730-31 (9th Cir. 2005) ("11 U.S.C. § 362(b) provides 17 exceptions to the automatic stay provision. It does not exclude bankruptcy courts, however, from the application of an automatic stay … Accordingly, we hold that an automatic stay issued by a home bankruptcy court applies to all other bankruptcy courts.").

**B.      The Debtors May Not Surcharge Lehman's Cash Collateral**

The Debtors seek authority to "use and surcharge the purported cash collateral of LCPI in order to pay the necessary and reasonable expenses required to maintain and preserve the value" of various master planned residential projects owned by the Debtors, which are subject to a perfected security interest for the benefit of LCPI.  *See* Motion at p. 4.  Putting aside the issue of whether the Debtors are able to seek the relief requested in the Motion without first seeking relief from the automatic stay from the New York Bankruptcy Court—something they cannot do—the Debtors do not meet the requirements for surcharge under section 506(c) of the Bankruptcy Code and the case law in the Ninth Circuit construing it.

"Generally, bankruptcy administrative expenses may not be charged to or against secured collateral."  *In re Choo,* 273 B.R. 608, 611 (9th Cir. BAP 2002); *see also In re Cascade Hydraulics and Utility Service, Inc.,* 815 F.2d 546, 548 (9th Cir. 1987).  Section 506(c) allows for an exception to this rule and provides that "[t]he trustee may recover from property securing an

10                          Case No.: 8:08-17206-ES

**EXHIBIT "5"**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                  :

**In re**                                :    **Chapter 11 Case No.**
                                  :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :    **08-13555 (JMP)**
                                  :

                **Debtor.**        :    **(Jointly Administered)**
                                  :

-------------------------------------------------------------------x

## DEBTORS' EMERGENCY MOTION FOR AN ORDER PURSUANT TO SECTION 362(a) OF THE BANKRUPTCY CODE ENFORCING THE AUTOMATIC STAY

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtor, Lehman Commercial

Paper Inc. ("LCPI"), as debtors and debtors in possession (together, the "Debtors" and,

collectively with their debtor and non-debtor affiliates, "Lehman"), file this Motion and

respectfully represent:

### I. PRELIMINARY STATEMENT

        1.    On November 10, 2009, the SCC Entities (defined below), currently debtors in

their own chapter 11 cases (the "SCC Bankruptcy Cases"), filed a motion with this Court seeking

relief from the automatic stay (the "Stay Relief Motion") [Docket No. 1439] to, inter alia, enable

them to file a motion in the SCC Bankruptcy Cases to authorize the use of LCPI's cash

collateral. This Court and the SCC Entities recognized that the automatic stay applied with respect the LCPI's cash collateral. At the hearing to consider the Stay Relief Motion this Court stated "[s]o is your focus today use of cash collateral?" The SCC Entities responded "[o]ur focus, Your Honor, is to obtain debtor-in-possession financing, use of cash collateral and a potential 363 sale." Transcript of Hearing, November 20, 2008 (the "Transcript") at 47.[1] Unequivocally rejecting the SCC Entities' request for relief from the stay, the Court stated "Lehman's right will be protected in this court except for cause shown...." *See* Transcript at 80. The Court then clearly instructed "[e]ither the [SCC Entities] move again with a targeted motion focused on the particular relief for cause shown or the parties, following discussions, agree by stipulation to limited relief from the automatic stay." Transcript at 79. On November 21, 2008, this Court formally denied the Stay Relief Motion (the "Stay Order") [Docket No. 1647]. No appeal or request for reconsideration was filed. A copy of the Stay Order is attached hereto as Exhibit B.

2.      Undeterred by not having received their desired ruling from this Court, and in *complete* disregard for this Court's directive that the automatic stay applies and relief must be sought from this Court, the SCC Movants (as defined below) filed a Motion in the SCC Bankruptcy Cases seeking authority to surcharge LCPI's cash collateral under section 506(c) of the Bankruptcy Code, or, in the alternative, to use LCPI's cash collateral pursuant to section 363 of the Bankruptcy Code (the "Cash Collateral Motion") in an attempt to end-run both this Court's decision and the automatic stay. The Cash Collateral Motion is scheduled for a hearing on February 3, 2009.[2] A copy of the Cash Collateral Motion is attached hereto as Exhibit C.

---

[1] The applicable portions of the Transcript are attached hereto as Exhibit A.

[2] In addition to having violated the automatic stay, the SCC Movants are not entitled to the relief requested in the Cash Collateral Motion. The SCC Movants seek to use the collateral of one project for

3. The SCC Movants' actions are a brazen flouting of both the automatic stay and the Stay Order issued by this Court. As this Court has already ruled that the automatic stay applies with respect to LCPI's cash collateral, the filing of the Cash Collateral Motion is a flagrant, knowing, and premeditated violation of the automatic stay, and intervention by this Court now is needed to protect these estates and their assets.

## II. JURISDICTION

4. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. BACKGROUND

### A. General

5. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries, including LCPI, commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

---

the benefit of several completely unrelated projects. Moreover, the SCC Movants cannot grant LCPI adequate protection, have no income stream, and have no prospects of a successful reorganization.

7.    On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

**B. Lehman's Business**

8.    Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

9.    Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to their chapter 11 filings is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**C. Lehman's Relationship with the SCC Entities**

10.    LCPI, Lehman ALI, Inc. ("Lehman ALI"), a non-debtor affiliate of LBHI, OVC Holdings LLC ("OVC Lender"), a non-debtor affiliate of LBHI, and Northlake Holdings LLC ("Northlake Lender" and together with LCPI, Lehman ALI and OVC Lender, the "Lehman Lenders"), a non-debtor affiliate of LBHI, are lenders to certain of the SCC Entities[3] (collectively, the "SCC Borrowers") pursuant to various separate loan agreements. The Lehman

---

[3] The SCC Entities are defined as follows in the Motion: SCC Acquisitions, Inc.; SunCal Management, LLC; SCC Acquisitions, LLC; SunCal Communities II, LLC; SunCal Bickford Ranch, LLC; SCC/Palmdale, LLC; Palmdale Hills Property, LLC; SunCal Emerald Meadows Ranch, LLC; Acton Estates, LLC; SJD Partners, Ltd.; SJDDevelopment Corp.; SunCal Summit Valley, LLC; Seven Brothers, LLC; Kirby Estates, LLC; SunCal Century City, LLC; SunCal Oak Knoll, LLC; SunCal Torrance Properties, LLC; SunCal Beaumont Heights, LLC; SunCal Johannson Ranch, LLC; SunCal Marblehead, LLC; SunCal Heartland, LLC; SunCal Communities I, LLC; SunCal Communities III, LLC; LB/L-SunCal Northlake, LLC; LB/L-SunCal Oak Valley, LLC; SunCal PSV, LLC; Delta Coves Venture, LLC; North Orange Del Rio Land, LLC; Tesoro SF LLC; and SCC Communities LLC. Certain of the SCC Entities have filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (as defined herein) or have had involuntary petitions for relief under chapter 11 of the Bankruptcy Code filed against them.

Lenders are owed by the SCC Borrowers in excess of $2.0 billion including accrued interest on account of such obligations (the "Obligations"). The Obligations are secured, in part, by first-priority deeds of trust on various real estate projects located in the State of California (collectively, the "Projects"). The SCC Entities are in default on their Obligations and additional interest and charges continue to accrue each month. The funds that the SCC Movants seek to surcharge and use includes approximately $18 million of LCPI's cash collateral currently in a pledged development account relating to and secured by a single project (the "Cash Collateral").

11. On or about May 23, 2008, LBHI, Lehman ALI, LCPI, and certain of the SCC Entities (collectively, the "SCC Parties") entered into an agreement (the "Agreement") pursuant to which the parties thereto agreed to enter into a settlement agreement with respect to certain of the Obligations and with respect to certain other obligations and relationships between the parties and/or their respective affiliates. Pursuant to the Agreement, certain of the Projects were to be conveyed to affiliates of the Lehman Lenders in lieu of foreclosure (collectively, the "Settlement Transactions").

12. Pending the closing of the Settlement Transactions during October and early November 2008, the SCC Parties demanded the Lehman Lenders release funds so that the SCC Parties could fund payables for certain Projects. The Lehman Lenders were willing to disburse certain additional funds, but the SCC Parties were unwilling to accept the Lehman Lenders' offer. On or about November 7, 2008, certain of the SCC Entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "California Court").

13. On or about November 10, 2008, the SCC Entities filed the Stay Relief Motion in this Court pursuant to which they sought relief from the automatic stay imposed in the Debtors'

chapter 11 cases. On November 20, 2008, the SCC Entities appeared and argued the Stay Relief Motion (the "Hearing"). *See* Transcript. On or around November 21, 2008, this Court denied the Stay Relief Motion. *See* Stay Order, Exhibit C. Despite the Stay Order, certain of the SCC Entities filed the Cash Collateral Motion in the SCC Bankruptcy Cases.[4]

## IV. THE FILING OF THE MOTION CONSTITUTED A VIOLATION OF THE AUTOMATIC STAY

14. By this Motion, the Debtors respectfully request entry of an order pursuant to sections 362(a) enforcing the automatic stay and compelling the SCC Movants to comply with the terms of the Stay Order.[5]

15. Section 362(a) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition operates as an automatic stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). In enacting section 362, Congress made clear that:

> [T]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6296-97;

S. Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5840-41;

*see also Midatlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection,* 474 U.S. 494, 503

---

[4] The Cash Collateral Motion was filed by (i) Palmdale Hills Property, LLC, (ii) Beaumont Heights, LLC, (iii) SunCal Johannson Ranch, LLC, (iv) SunCal Summit Valley, LLC, (v) SunCal Emerald Meadows, LLC, (vi) SunCal Bickford Ranch, LLC, and (vii) Acton Estates, LLC (collectively, the "SCC Movants").

[5] The Debtors reserve all of their rights should any of the SCC Entities file any subsequent motions to modify the automatic stay.

(1986) ("The automatic stay is one of the fundamental protections afforded Debtors under the Bankruptcy Code.").

16.    The SCC Movants long ago recognized and publicly acknowledged that use of the Cash Collateral without authorization of this Court would be a violation of LCPI's automatic stay. This is precisely why the SCC Movants filed the Stay Relief Motion, in which they *specifically* asked this Court to lift the stay to enable them to seek to use the Cash Collateral. *See* Stay Relief Motion at ¶ 14 ("the SCC Entities seek … relief from the automatic stay to administer their own bankruptcy cases to the extent that such cases, and the relief requested therein, may affect the rights of Lehman, including, without limitation: (i) filing a motion to authorize the use of Lehman's cash collateral…"). This Court, however, denied the Stay Relief Motion, and as such, the Debtors' automatic stay remains in full force and effect with respect to the SCC Movants. Specifically, at the Hearing, this Court stated:

> [T]he jurisprudence surrounding the automatic stay and the
> circumstances for a judge in this circuit to grant relief from the stay
> happen to be very well established. There's absolutely nothing
> about the circumstances described by counsel for the [SCC
> Entities] that takes the situation out of the normative case law that
> guides this Court. Just because [Lehman's] secured claim happens
> to be a show stopper, from the perspective of the debtors in
> Southern California doesn't mean that the secured claim is not
> entitled to all of the protections that Section 362 provide…. And
> that's the way it will remain until such a time as one of the
> following things occurs. Either the [SCC Entities] move again
> with a targeted motion focused on the particular relief for cause
> shown or the parties, following discussions, agree by stipulation to
> limited relief from the automatic stay.

Transcript at 78-79. The SCC Entities have not moved again in this Court, nor have the parties reached any agreement regarding relief from the automatic stay.

17.    Nonetheless, in flagrant violation of both the automatic stay and this Court's Stay Order the SCC Movants filed the Cash Collateral Motion and seek to obtain possession of the

Debtors' property. The SCC Movants are attempting to end-run both this Court's direct Order and the automatic stay by seeking relief in the California Court. The applicability of the automatic stay to property of LCPI's estate is a determination for this Court, not the California Court. *See In re Miller*, 397 F.3d 726, 730-31 (9th Cir. 2005) ("11 U.S.C. § 362(b) provides 17 exemptions to the automatic stay provision. It does not exclude Bankruptcy Courts, however, from the application of an automatic stay .... Accordingly we hold that an automatic stay issued by a home bankruptcy court applies to all other bankruptcy courts.").

18.     The SCC Movants' refusal to obey the law and comply with this Court's order has already caused harm. Specifically, rather than spend valuable resources concentrating on the management of their businesses, the Debtors' personnel and counsel have been forced to expend valuable resources to protect the Debtors' rights against the SCC Entities on two separate fronts. Accordingly, the Debtors respectfully request that the Court enter an order compelling, among other things, the SCC Movants to comply with the automatic stay and the terms of the Stay Order and cessation of any actions in the SCC Bankruptcy Cases to use the Cash Collateral or any other property of the Debtors.

19.     The SCC Movants, together with their attorneys, have engaged in a blatant, knowing and premeditated violation of the automatic stay. The SCC Movants actions in violations of the automatic stay should not be condoned. The United States Court of Appeals for the Second Circuit has held that "[f]or [non-individual] debtors, contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay." *See Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F.2d 183, 186-187 (2d Cir. 1990) (*citing Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay)*, 902 F.2d 1098, 1104 (2d Cir. 1990)) ; *accord Fidelity Mortg. Investors v.*

*Camelia Builders, Inc.*, 550 F.2d 47, 51, 57 (2d Cir. 1976) (allowing imposition of costs, including reasonable attorney's fees, under civil contempt powers for acts which bankruptcy judge found were done with "knowledge" of automatic stay and "deliberate[]" disregard of bankruptcy rules regarding requirements for relief), *cert. denied*, 429 U.S. 1093, 97 S. Ct. 1107, 51 L. Ed. 2d 540 (1977).

20.     It is undeniable that the SCC Movants knew of the automatic stay, as evidenced by the SCC Entities' filing of the Stay Relief Motion and this Court's Stay Order. The SCC Movants have deliberately chosen to disregard the Debtors' rights and have instead caused the Debtors to expend significant resources in protecting their estates. This Court should not countenance the SCC Entities' willful disregard of the automatic stay.

## V. NOTICE

21.     No trustee has been appointed in these chapter 11 cases. Notice has been provided to the SCC Entities. Because of the emergency nature of the relief requested, no other notice has been provided. The Debtors submit that no other or further notice need be provided.

22.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: January 30, 2009
New York, New York

_____ /s/ Shai Y. Waisman _____
Lori R. Fife
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

EXHIBIT "6"

1   Joseph A. Eisenberg P.C. (Bar No. 52346)
    E-Mail: jeisenberg@jmbm.com
2   JEFFER, MANGELS, BUTLER & MARMARO LLP
    1900 Avenue of the Stars, 7th Floor
3   Los Angeles, CA 90067
    Phone: (310) 203-8080
4   Fax: (310) 203-0567

5   -and-

6   Edward Soto, Esq. (*pro hac vice* admission pending)
    Shai Waisman, Esq. (*pro hac vice* admission pending)
7   Gregory Hull, Esq. (*pro hac vice* admission pending)
    Elisa R. Lemmer, Esq. (*pro hac vice* admission pending)
8   WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
9   New York, NY 10153-0119
    Telephone: (212) 310-8000
10  Facsimile: (212) 310-8007

11  ATTORNEYS FOR LEHMAN ALI, INC.
    AND LEHMAN COMMERCIAL PAPER INC.

12                  **UNITED STATES BANKRUPTCY COURT**
13                  **CENTRAL DISTRICT OF CALIFORNIA**
                    **SANTA ANA DIVISION**
14

15  In re                                    Case No.: 8:08-bk-17206-ES
                                             Chapter 11
16  Palmdale Hills Property, LLC, and
    its Related Debtors.                     Jointly Administered with Case Nos.
                                             8:08-bk-17209-ES; 8:08-bk-17240-ES;
17      Jointly Administered Debtors and     8:08-bk-17224-ES; 8:08-bk-17242-ES;
        Debtors-in-Possession                8:08-bk-17225-ES; 8:08-bk-17245-ES;
18                                           8:08-bk-17227-ES; 8:08-bk-17246-ES;
                                             8:08-bk-17230-ES; 8:08-bk-17231-ES;
19  Affects:                                 8:08-bk-17236-ES; 8:08-bk-17248-ES;
        ☐ All Debtors                        8:08-bk-17249-ES; 8:08-bk-17573-ES;
20      ☒ Palmdale Hills Property, LLC       8:08-bk-17574-ES; 8:08-bk-17575-ES
        ☐ SunCal Beaumont Heights, LLC
21      ☒ SCC/Palmdale, LLC                  **MEMORANDUM OF POINTS AND**
        ☐ SunCal Johannson Ranch, LLC        **AUTHORITIES IN SUPPORT OF**
22      ☒ SunCal Summit Valley, LLC          **MOTIONS OF LEHMAN COMMERCIAL**
        ☒ SunCal Emerald Meadows, LLC        **PAPER INC. AND LEHMAN ALI, INC.**
23      ☒ SunCal Bickford Ranch, LLC         **FOR RELIEF FROM THE AUTOMATIC**
        ☒ Acton Estates, LLC                 **STAY UNDER 11 U.S.C. § 362**
24      ☐ Seven Brothers, LLC
        ☐ SJD Partners, Ltd.
25      ☐ SJD Development Corp.              **Hearing**
        ☐ Kirby Estates, LLC                 Date:    February 20, 2009
26      ☒ SunCal Communities I, LLC          Time:    10:00 a.m.
        ☐ SCC Communities LLC                Place:   Courtroom 5A
27      ☐ SunCal Communities III, LLC                 411 West Fourth Street
        ☐ North Orange Del Rio Land, LLC              Santa Ana, CA 92701
28      ☐ Tesoro SF, LLC

    **Motion for Relief From Stay**                      **Case No.: 8:08-17206-ES**

property that, in the aggregate, is currently only worth approximately $58.9 million (or 21% of the outstanding principal balance).

- The Ritter Ranch Mortgage Loan, which has an outstanding principal balance of approximately $246.5 million is secured by real property that is currently only worth approximately $42.9 million (or 17% of the outstanding principal balance).

- The Properties or other Collateral securing the Bickford Second Lien Loan (the outstanding principal balance of which is approximately $30 million) and the Ritter Ranch Mezz Loan (the outstanding principal balance of which is approximately $95 million) have no residual value because they also secure SunCal Communities I Loan and Ritter Ranch Mortgage Loan, respectively (which Loans are undersecured as described above).

Additionally, reorganization is not a viable option for the Debtors because, among the other reasons discussed below, they have no unencumbered assets of value, no income stream, and no prospects for raising financing. Cause therefore exists for relief from the stay.

Finally, the Debtors inability to submit a feasible plan and inability confirm a plan in a reasonable amount of time warrants relief under section 362(d)(3).

- The Debtors cannot submit a feasible plan because they made it clear at this Court's January 15, 2009 status conference that the feasibility of any plan they propose will be premised entirely on their success in a recently devised litigation scheme to equitably subordinate Lehman's claims against the Debtors. Even assuming that feasibility were the only requirement to confirm a plan over the dissent of objecting creditors something that is obviously not the case — the Debtors' strategy requires them to succeed in subordinating the over $649 million they borrowed and used as the sole source of financing for their projects, something they clearly cannot do because: (i)

F:\Apps\BankRuptcy\Macbank\L folder\Lehman Brothers\Pldgs\Memorandum of Points and Authorities to RFS Motions.DOC
4
**Case No.: 8:08-17206-ES**

there is no basis in law for subordinating these secured claims; and (ii) only approximately $30 million of that $649 million is even at issue in the Equitable Subordination Action. Of the $649 million in aggregate outstanding principal under the Loans at issue in this Motion, ALI holds only approximately $30 million of such outstanding principal. The other approximately $619 million of outstanding principal is held by LCPI which is *not* a defendant in the Equitable Subordination Action. LCPI is a debtor and debtor in possession in the LCPI Bankruptcy Case, and the Debtors would need to obtain relief from the automatic stay in the LCPI Bankruptcy Case in order to proceed against LCPI and join it as a defendant in the Equitable Subordination Action. The Debtors previously filed a blanket motion for relief from stay to administer their chapter 11 cases generally, and that motion was denied. They have not sought such relief from stay regarding the Equitable Subordination Action at this juncture, even though it is clearly required.

- Moreover, putting aside whether the Debtors have any prospects for succeeding in the Equitable Subordination Action, even as to the $30 million of outstanding principal of the Loans which is affected by the Equitable Subordination Action (which amounts to less than 5% of the aggregate outstanding principal of all of the Loans), there is no way a plan by the Debtors could be confirmed in a "reasonable amount of time" as is required by the Bankruptcy Code. Alternatively, the Debtors would have to commence making certain monthly payments – something that, for the reasons stated below, is also unlikely to happen. The Debtors' purported plan hinges on the Debtors prevailing in the Equitable Subordination Action – a case that will require many months of discovery and an equal amount of time to litigate, not to even begin to account for appeals – and therefore, cannot be resolved within a "reasonable amount

Mortgage Loan is secured, in part, by a first lien deed of trust on all real and personal property owned by Palmdale Hills (the "Ritter Ranch Property") granted by Palmdale Hills for the benefit of LCPI.

LCPI is also the administrative agent and sole lender under that certain Mezzanine Credit Agreement, dated as of March 30, 2007, among Palmdale, as borrower, LCPI, as administrative agent and lender, and Lehman Brothers, Inc., as arranger, pursuant to which LCPI provided a revolving credit facility in the maximum aggregate principal amount of approximately $95,000,000 (as amended and/or supplemented from time to time, the "Ritter Ranch Mezz Loan"). The Ritter Ranch Mezz Loan is secured, in part, by a pledge of Palmdale's equity interest in Palmdale Hills.

Prior to the Petition Dates, the borrowers and guarantors under each of the SunCal Communities I Loan, the Bickford Second Lien Loan, the Ritter Ranch Mortgage Loan, and the Ritter Ranch Mezz Loan (collectively, the "Loans") defaulted on their obligations under such loans which defaults remain uncured. There is no equity in any of the real property that has been mortgaged to LCPI or ALI as security for the applicable Debtors' obligations under the Loans (collectively, the "Properties").

## C. Value of the Collateral

Although the Loans are secured by personal property and fixtures in addition to real property, the primary value of the collateral securing the Loans resides in the Properties and the equity interests referenced in this Motion (collectively, all of the collateral securing the Loans, the "Collateral"). As is set forth in the table below, LCPI and ALI are substantially undersecured with respect to their Loans.

| Loan Facility/ Approximate Amount of Principal Indebtedness as of 1/12/2009 | Approximate Appraised Value of Collateral | Percentage of Value Compared to Outstanding Principal Balance |
|---|---|---|
| **SunCal Communities I Loan/** $277,742,750 | $58,900,000 | 21% |
| **Bickford Second Lien Loan/** $30,000,000 | $0[3] | 0% |
| **Ritter Ranch Mortgage Loan/** $246,526,344 | $42,900,000 | 17% |
| **Ritter Ranch Mezz Loan/** $95,000,000 | $0[4] | 0% |

It goes without saying that the value of Collateral securing each of the Loans cited above does not even begin to approach the outstanding *principal* amount of the debt – let alone the total amount of the Loans including interest and fees. The Debtors simply have no equity in the Collateral, and the value of the Collateral, particularly in this economic climate, continues to decline on a daily basis.

### IV.    RELIEF REQUESTED AND BASIS THEREFORE

By this Motion, Lehman requests that the Court enter an order, pursuant to sections 362(d)(1), (2), and (3) of the Bankruptcy Code, granting Lehman relief from the automatic stay to exercise its right to foreclose on the Collateral securing the Loans.

---

[3] The Bickford Second Lien Loan is subject to the lien of the first deed of trust securing the SunCal Communities I Guaranty which, in turn, secures the SunCal Communities I Loan. Given the value of the Bickford Ranch Property relative to the outstanding balance of the SunCal Communities I Loan, there is no collateral value securing the Bickford Ranch Second Lien Loan.

[4] The Ritter Ranch Mezz Loan is subject to the lien of the first deed of trust securing the Ritter Ranch Mortgage Loan. Given the value of the Ritter Ranch Property relative to the outstanding balance of the Ritter Ranch Mortgage Loan, there is no collateral value securing the Ritter Ranch Mezz Loan.

Second, reorganization is not a reasonable prospect for the Debtors. The Debtors have no unencumbered assets of value, absolutely no income stream, and no prospects for raising any financing. Taken together, these factors alone call the feasibility of any prospective plan into question. Furthermore, to confirm a plan over the objection of secured creditors, the Debtors must be able to satisfy the requirements of, among others, section 1129(b)(2)(A) of the Bankruptcy Code.[6] Satisfying the "cramdown" provisions of section 1129(b) would include, *at a minimum*, being able to provide Lehman with deferred cash payments equal to at least the allowed amount of Lehman's claims. Given that the Debtors have no income stream and absolutely no prospect for financing – except for the proceeds of the Equitable Subordination Action which has not even been filed against LCPI and which, as discussed in more detail below, is speculative under the best of circumstances – and in light of the fact that the Debtors lack any equity interest in the Properties, it is clear that the Debtors cannot meet the cramdown provisions of section 1129(b)(2)(A). As such, there is no meaningful prospect for reorganization. Accordingly, relief from the automatic stay under section 362(d)(2) is warranted.

C.  **There is No Reasonable Possibility That a Plan Will Be Confirmed Within a Reasonable Time**

Section 362(d)(3) provides that, unless the debtor files a plan of reorganization within ninety (90) days after the order for relief that has a **"reasonable possibility of being confirmed within a reasonable time,"** a creditor secured by a single asset real estate shall be entitled to obtain relief from the automatic stay. 11 U.S.C. § 362(d)(3)(A) (emphasis added). This provision of the Bankruptcy Code addresses Congress's concern about the **"delay in the bankruptcy process and the resulting unfairness to secured lenders when single asset real estate projects are involved."** *Nationsbank, N.A. v. LDN Corp. (In re LDN Corp.)*, 191 B.R.

---

[6] This analysis assumes that the Debtors would have another class of creditors that would be an impaired accepting class. *See* 11 U.S.C. § 1129(a)(10).

To distract from their inability to propose a feasible plan and buy time, the Debtors have advised this Court that the feasibility of *any* plan they propose will be premised on the Debtors' ability to succeed in a litigation to equitably subordinate Lehman's claims against the Debtors and certain other affiliated debtors whose chapter 11 cases are also pending before this Court, which litigation is currently pending as Adversary Proceeding No. 8:09-ap-01005 in the above-captioned chapter 11 cases (the "Equitable Subordination Action"). However, the Lehman lender defendants in the Equitable Subordination Action are ALI, Northlake Holdings LLC and OVC Holdings LLC. LCPI is not a defendant in that action and the Debtors have not sought relief from the automatic stay in the LCPI Bankruptcy Case to include LCPI as a defendant in the Equitable Subordination Action. As noted above, of the $649 million in aggregate outstanding principal under the Loans at issue in this Motion, ALI holds approximately $30 million in outstanding principal, and Northlake Holdings LLC and OVC Holdings LLC do not hold any of the Loans. The other approximately $619 million of outstanding principal is held by LCPI which, as stated above, is not a defendant in the Equitable Subordination Action.[9] Moreover, even assuming that the Debtors ultimately succeeded in their unprecedented blunderbuss attempt to subordinate ALI's secured claims and, if successful in obtaining relief from the automatic stay in the LCPI Bankruptcy Case, LCPI's secured claims, to those of unsecured creditors — a theory which has no basis in law – under section 362(d)(3), the plan would still be required to have a "reasonable

financing. Even the DIP financing the Debtors were previously negotiating with D.E. Shaw was speculative at best. To begin with, the purported DIP financing from D.E. Shaw previously disclosed to Lehman contained so many disclaimers and conditions, that it was clear that lender had not actually committed to make the financing. In fact, the proposal expressly stated it was not a commitment. Further, the proposed DIP imposed onerous time limitations, interest rates, and break-up fees and required that the DIP lender obtain a priming lien on all of the Debtors' projects and those projects owned by their affiliate-debtors whose cases are also currently pending before this Court and even required that the lender obtain a lien on the Pacific Point project, which is no longer owned by any of the Debtors or their affiliates.

[9] Because the Debtors would need to obtain relief from the automatic stay in the LCPI Bankruptcy Case in order to add LCPI as a defendant in the Equitable Subordination Action, any resolution of the Equitable Subordination Action would be even further delayed.

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    19    **Case No.: 8:08-17206-ES**
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions.DOC

1   possibility of being confirmed within a reasonable time" (or the Debtors would have to have

2   commenced making certain monthly payments – something that, for the reasons stated above, is

3   also unlikely to happen).

4          The Equitable Subordination Action will require several months to over a year for

5   discovery and litigation, to only then begin the process of likely appeals, at the cost of several

6   hundreds of thousands if not millions of dollars that the Debtors do not have.[10] There is simply

7   no plausible scenario in which such litigation is concluded and a plan of reorganization is

8   confirmed within a "reasonable amount of time." *See In re A Partners, LLC,* 344 B.R. at 126 ("A

9   chapter 11 plan cannot be based upon a visionary scheme… The Debtor's 'plan' for opposing this

10  motion for relief from stay is fraught with speculation and uncertainty regarding implementation

11  and feasibility, and it further appears to be unconfirmable as a matter of law. The court cannot

12  find that an 'effective reorganization' is in prospect.") (citation omitted); *In re Edwards,* 1996

13  WL 407253 (Bankr. E.D. Pa. Jun. 17, 1996) ("Judging from the effort involved in settlement

14  negotiations, the early thrusts and parries of the high powered counsel retained by the various

15  combatants, the parties take this litigation quite seriously…The litigation is in its infancy and [] is

16  complex, and will involve thousands of hours of legal time and many expert witnesses…Judging

17  from the posture of the parties on the preliminary matters that have engaged this Court to date, it

18  promises to be a long and hotly contested battle. On this basis alone we find 'no reasonable

19  possibility of a successful reorganization within a reasonable time.") (citation omitted)

---

24  [10] In fact, in the Declaration of Bruce V. Cook in Support of Debtor's [*sic*] Opposition to Motions for
25  Relief from the Automatic Stay Filed By: (1) Staats Construction, Inc.; (2) Sierra Cascade Construction,
    Inc. (MC 019273); (3) Sierra Cascade Construction, Inc. (MC19382); and (4) Bova Contracting
    Corporation, dated January 20, 2009 and filed in this Court (the "Cook Declaration"), it is acknowledged
26  that SCC Acquisitions, Inc. ("SCC"), the indirect parent of, among others, Palmdale Hills, has been
    funding most of the Debtors' chapter 11 fees and costs and the prosecution of the Equitable Subordination
27  Action but that, "if the stay does not apply or an injunction is not granted, there may be no funding for the
    Equitable Subordination Action . . ." Cook Declaration, p. 6, lines 27-28.

**EXHIBIT "7"**

1   Joseph A. Eisenberg P.C. (Bar No. 52346)
    E-Mail: jeisenberg@jmbm.com
2   JEFFER, MANGELS, BUTLER & MARMARO LLP
    1900 Avenue of the Stars, 7th Floor
3   Los Angeles, CA 90067
    Phone: (310) 203-8080
4   Fax: (310) 203-0567

5   -and-

6   Edward Soto, Esq. (admitted *pro hac vice*)
    Shai Waisman, Esq. (admitted *pro hac vice*)
7   WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
8   New York, NY 10153-0119
    Telephone: (212) 310-8000
9   Facsimile: (212) 310-8007

10  ATTORNEYS FOR LEHMAN ALI, INC.
    AND LEHMAN COMMERCIAL PAPER INC.

11                    UNITED STATES BANKRUPTCY COURT
                       CENTRAL DISTRICT OF CALIFORNIA
12                            SANTA ANA DIVISION

13  In re                                  Case No.: 8:08-bk-17206-ES

14  Palmdale Hills Property, LLC, and      Jointly Administered with Case Nos.
    its Related Debtors.                   8:08-bk-17209-ES; 8:08-bk-17240-ES;
15                                         8:08-bk-17224-ES; 8:08-bk-17242-ES;
                                           8:08-bk-17225-ES; 8:08-bk-17245-ES;
16       Jointly Administered Debtors and  8:08-bk-17227-ES; 8:08-bk-17246-ES;
         Debtors-in-Possession            8:08-bk-17230-ES; 8:08-bk-17231-ES;
17                                         8:08-bk-17236-ES; 8:08-bk-17248-ES;
                                           8:08-bk-17249-ES; 8:08-bk-17573-ES;
18  Affects:                               8:08-bk-17574 ES; 8:08-bk-17575-ES
    ☐ All Debtors
19  ☒ Palmdale Hills Property, LLC         **OMNIBUS OBJECTION TO FORM OF**
    ☐ SunCal Beaumont Heights, LLC         **PROPOSED ORDER DENYING MOTION**
20  ☒ SCC/Palmdale, LLC                    **FOR RELIEF FROM THE AUTOMATIC**
    ☐ SunCal Johannson Ranch, LLC          **STAY**
21  ☒ SunCal Summit Valley, LLC
    ☒ SunCal Emerald Meadows, LLC
22  ☒ SunCal Bickford Ranch, LLC
    ☒ Acton Estates, LLC
23  ☐ Seven Brothers, LLC
    ☐ SJD Partners, Ltd.
24  ☐ SJD Development Corp.
    ☐ Kirby Estates, LLC
25  ☒ SunCal Communities I, LLC
    ☐ SCC Communities LLC
26  ☐ SunCal Communities III, LLC
    ☐ North Orange Del Rio Land, LLC
27  ☐ Tesoro SF, LLC

28
                                                        **Case No.: 8:08-17206-ES**

1             Lehman Commercial Paper Inc. ("LCPI"), as debtor and debtor in possession in its

2   chapter 11 case in the United States Bankruptcy Court for the Southern District of New York (the

3

4   "New York Bankruptcy Court") pending as Case No. 08-13555 (JMP) (the "LCPI Bankruptcy

5   Case"), and Lehman ALI, Inc. ("ALI," and collectively, with LCPI, "Lehman"), creditors and

6   parties-in-interest in the above-captioned chapter 11 cases, by and through their undersigned

7   counsel, and pursuant to Local Bankruptcy Rule 9021-1(b)(3)(B), hereby file their omnibus

8   objection (the "Objection") to the form of order denying the motions of Lehman for relief from

9   the automatic stay (the "Proposed Orders"), copies of which are attached hereto as Exhibit "A."

10

11  In support of their Objection, Lehman respectfully represents as follows:

12

13                              I.      **BACKGROUND**

14            On February 20, 2009 at 10:00 a.m., this Court conducted a hearing on the

15  Motions for Relief from the Automatic Stay filed by Lehman on January 23, 2009 (the

16  "Motions"). Prior to the hearing, the Court issued a tentative ruling (the "Tentative Ruling"), a

17  copy of which is attached as Exhibit "B." At the hearing, the Court denied the Motions without

18  prejudice. On the same date as the hearing, counsel for the Debtors served upon counsel for

19

20  Lehman the Proposed Orders.

21            In accordance with Local Bankruptcy Rule 9021-1(b)(3)(B), Lehman objects to the

22  Proposed Orders and submits alternate forms of order, attached hereto as Exhibit "C."

23

24                              II.     **OBJECTION**

25            Lehman objects to the Proposed Orders because they include findings which this

26  Court did not make on the record, nor in the Tentative Ruling. The findings in the Proposed

27

28  Orders therefore go beyond the scope of the Court's ruling. Specifically, the Court did not make a

2

**Case No.: 8:08-17206-ES**

finding that it has "concurrent jurisdiction to determine the scope or applicability of the automatic stay under 11 U.S.C §362(a) and/or (b), arising from the Chapter 11 bankruptcy proceeding of Lehman Commercial Paper, Inc. ("Lehman Commercial") as it applies to matters before this Bankruptcy Court." Proposed Orders at ¶ 5(b). Lehman therefore requests that the Court strike Paragraph 5(b) in its entirety.

Lehman further requests that the Court strike Paragraph 5(d) of the Proposed Order as repetitive of Paragraph 5(c).

In addition, the Court stated in the Tentative Ruling that the Debtors are entitled to assert defenses to Lehman's claims and may do so without violating the automatic stay of LCPI. The Court did not, however, make a ruling that the transferring of LCPI's liens to the estate would not violate the automatic stay. In fact, the parties engaged in a discussion with the Court on this topic at the hearing[1] in the context of the Debtors' proposed amended complaint in the adversary proceeding styled *SCC Acquisitions Inc., et al. v. Lehman ALI, Inc., et al.* and bearing the case number 8:09-ap-01005 ES. The Court contemplated whether transferring of the lien was contained in the statute (11 U.S.C. § 510), but did not come to the conclusion or make a finding that the transfer of liens to the Debtors' estates would not violate LCPI's automatic stay.

Moreover, during said discussion, the Court made clear that the filing of the Motions constituted an informal proof of claim, which placed the Debtors in a *defensive* position. To allow the Debtors to transfer LCPI's liens to the Debtors' estates would reach beyond the scope of this Court's ruling. The Court stated that the Debtors should be permitted to pursue the equitable subordination action, but did not grant the Debtors permission to transfer property (i.e. liens) out of the LCPI estate or to recover any monetary judgment against LCPI.

---

[1] Despite diligent efforts to obtain a copy of the transcript, Lehman's counsel was unable to do so prior to the due date for the filing of this Objection. Lehman reserves the right to supplement this Objection upon review of the transcript.

**Case No.: 8:08-17206-ES**

1    Based on the foregoing, Lehman requests that the Court replace Paragraph 5 of the

2  Proposed Order with the following:

3    (a)    The motion sufficiently states an express demand referencing the nature and

4    amount of the claim, and therefore Movant's Motion constitutes an informal proof of

5    claim (the "Informal Proof of Claim").

6
     (b)    The automatic stay arising from the bankruptcy case of Lehman Commercial does
7
8    not apply to any objection to the claim of Lehman Commercial, and/or any proceeding to

9    subordinate the claim of Lehman Commercial (the "Subordination Proceeding") pursuant

10   to 11 U.S.C. § 510(c)(1) in this Chapter 11 proceeding to the extent such Subordination

11   Proceeding is instituted as a defense to the Informal Proof of Claim.

12

13   WHEREFORE, Lehman respectfully requests that this Court modify the language
14
15 in the Proposed Order as specified in this Objection, or, in the alternative, enter Lehman's

16 proposed form of orders, attached hereto as Exhibit C, and grant Lehman such other and further

17 relief as is just.

18

19 Dated: February 27, 2009

20
                              /s/ Joseph A. Eisenberg
21                            Joseph A. Eisenberg P.C. (Bar No. 52346)
                              E-Mail: jeisenberg@jmbm.com
22                            JEFFER, MANGELS, BUTLER & MARMARO
                              LLP
23
                              -and-
24
                              Edward Soto, Esq. (admitted *pro hac vice*)
25                            Shai Waisman, Esq. (admitted *pro hac vice*)

26                            **ATTORNEYS FOR LEHMAN ALI, INC. AND
                              LEHMAN COMMERCIAL PAPER INC.**
27

28                                  4
                                              **Case No.: 8:08-17206-ES**

EXHIBIT "8"

1 | Richard N. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
2 | Shirley S. Cho (CA Bar No. 192616)
Pachulski Stang Ziehl & Jones LLP
3 | 10100 Santa Monica Blvd. 11th Floor
Los Angeles, California 90067-4100
4 | Telephone: (310) 277-6910
Facsimile: (310) 201-0760
5

6 | -and-

7 | Edward Soto, Esq. (admitted pro hac vice)
Shai Waisman, Esq. (admitted pro hac vice)
8 | WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
9 | New York, NY 10153-0119
Telephone: (212) 310-8000
10 | Facsimile: (212) 310-8007

11 | Attorneys for Appellant
LEHMAN COMMERCIAL PAPER INC.

12 | **UNITED STATES BANKRUPTCY COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
13 | **(SANTA ANA DIVISION)**

| In re PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED DEBTORS,<br><br>    Jointly Administered Debtors and Debtors-in-Possession | Case No. 8:08-bk-17206-ES<br><br>Chapter 11<br><br>Jointly Administered with Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574-ES; 8:08-bk-17575-ES<br><br>**LEHMAN COMMERCIAL PAPER INC.'S STATEMENT OF ISSUES AND DESIGNATION OF RECORD ON APPEAL (Re: Appeal of Docket No. 149)** |
| --- | --- |

Appellant Lehman Commercial Paper Inc. ("LCPI"), creditor and party-in-interest in the above-captioned chapter 11 cases, pursuant to Federal Rule of Bankruptcy Procedure 8006, files its statement of issues to be presented and designation of items to be included in the record on LCPI's

Exhibit 8, Page 78

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    appeal from the Honorable Erithe Smith's March 10, 2009 order denying LCPI's Motion for Relief

2    from the Automatic Stay Under 11 U.S.C. § 362 (Docket No. 149).

3    **A.    Statement of Issues on Appeal**

4    The issues on appeal are as follows:

5

6    1.    Did the Court correctly rule that the automatic stay that is in effect in LCPI's chapter

7    11 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New

8    York pursuant to 11 U.S.C. § 362 does not apply to any proceeding to subordinate LCPI's claims

9    against the debtors in the above-captioned jointly administered chapter 11 cases under 11 U.S.C.

10    § 510(c)(1)?

11    2.    Did the Court correctly rule that the automatic stay that is in effect in LCPI's chapter

12    11 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New

13    York pursuant to 11 U.S.C. § 362 does not apply to any proceeding to transfer LCPI property—

14    namely, liens securing the debts owed to LCPI—to the debtors' estates in the above-captioned

15    jointly administered chapter 11 cases under 11 U.S.C. § 510(c)(2)?

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Exhibit 8, Page 79

# EXHIBIT "9"

1   PACHULSKI STANG ZIEHL & JONES LLP
    Richard M. Pachulski (CA Bar No. 90073)
2   Dean A. Ziehl (CA Bar No. 84529)
    Pachulski Stang Ziehl & Jones LLP
3   10100 Santa Monica Blvd., 11th Floor
    Los Angeles, California 90067-4100
4   Telephone: (310) 277-6910
    Facsimile: (310) 201-0760
5   WEIL, GOTSHAL & MANGES LLP
    Edward Soto (admitted *pro hac vice*)
6   Shai Waisman (admitted *pro hac vice*)
    767 Fifth Avenue
7   New York, NY 10153-0119
    Telephone: (212) 310-8000
8   Facsimile: (212) 310-8007
9   Attorneys for Lehman Commercial Paper, Inc., Lehman ALI, Inc.,
    Northlake Holdings, LLC and OVC Holdings, LLC

10              UNITED STATES BANKRUPTCY COURT
                CENTRAL DISTRICT OF CALIFORNIA
11                    SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 8:08-bk-17206-ES |
| Palmdale Hills Property, LLC, and its Related Debtors, | Chapter 11 |
| Jointly Administered Debtors and Debtors-In-Possession | Jointly Administered Case Nos. |

12

13

14  Affects:
    ☒ All Debtors
15  ☐ Palmdale Hills Property, LLC
    ☐ SunCal Beaumont Heights, LLC
16  ☐ SCC/Palmdale, LLC
    ☐ SunCal Johannson Ranch, LLC
17  ☐ SunCal Summit Valley, LLC
    ☐ SunCal Emerald Meadows LLC
18  ☐ SunCal Bickford Ranch, LLC
    ☐ Acton Estates, LLC
19  ☐ Seven Brothers LLC
    ☐ SJD Partners, Ltd.
20  ☐ SJD Development Corp.
    ☐ Kirby Estates, LLC
21  ☐ SunCal Communities I, LLC
    ☐ SunCal Communities III, LLC
22  ☐ SCC Communities LLC
    ☐ North Orange Del Rio Land, LLC
23  ☐ Tesoro SF, LLC
    ☐ LB-L-SunCal Oak Valley, LLC
24  ☐ SunCal Heartland, LLC
    ☐ LB-L-SunCal Northlake, LLC
25  ☐ SunCal Marblehead, LLC
    ☐ SunCal Century City, LLC
26  ☐ SunCal PSV, LLC
    ☐ Delta Coves Venture, LLC
27  ☐ SunCal Torrance, LLC
    ☐ SunCal Oak Knoll, LLC

28

Jointly Administered Case Nos.

8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574-ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-bk-17588-ES

**OBJECTION OF LEHMAN
COMMERCIAL PAPER, INC., LEHMAN
ALI, INC., NORTHLAKE HOLDINGS,
LLC AND OVC HOLDINGS, LLC TO THE
DEBTORS' FIRST AMENDED JOINT
DISCLOSURE STATEMENT
DESCRIBING DEBTORS' FIRST
AMENDED JOINT PLAN OF
REORGANIZATION**

<u>Disclosure Statement Hearing:</u>
Date:    May 7, 2009
Time:    2:00 p.m.
Place:    Courtroom 5A
          411 West Fourth Street
          Santa Ana, CA 92701

*Vertical left margin:* PACHULSKI STANG ZIEHL & JONES LLP / ATTORNEYS AT LAW / LOS ANGELES, CALIFORNIA

DOCS_NY:17949.5

1

**TABLE OF CONTENTS**

2

Page No.

3    I. PRELIMINARY STATEMENT ................................................................................................ 2

4    II. STATEMENT OF FACTS.................................................................................................... 4

5    A.    The Lehman Entities' Claims ........................................................................................ 4

     B.    Automatic Stay Issues................................................................................................... 5

6    C.    The Subordination Litigation ........................................................................................ 7

7    D.    The Plan and Disclosure Statement .............................................................................. 7

     III. DISCUSSION ...................................................................................................................... 10

8    A.    The Disclosure Statement Should Not Be Approved Because the Plan is Patently

9          Unconfirmable............................................................................................................ 10

10        1.    The Plan is Unconfirmable Because It Does Not Comport with Ninth Circuit Law on
                the Availability and Scope of Equitable Subordination.................................................. 12

11        2.    The Plan's Construct of Substantive Consolidation is Unconfirmable........................... 17

          3.    The Plan is Unconfirmable Because It is Not Feasible.................................................... 24

12        4.    The Plan is Unconfirmable Because it Violates the Automatic Stay in the Lehman

13              Chapter 11 Cases ........................................................................................................... 25

14   B.    The Disclosure Statement Does Not Contain Adequate Information Pursuant to Section

          1125 of the Bankruptcy Code....................................................................................... 27

15        1.    The Disclosure Statement Does Not Contain Adequate Information Concerning the
                Subordination Litigation or Substantive Consolidation.................................................. 30

16        2.    Additional Information Must be Disclosed with Respect to Other Key Components

17              of the Plan...................................................................................................................... 33

18              a.    Further Disclosure is Required Concerning Means of Implementation and Feasibility 33

                b.    Further Disclosure is Required Concerning the Best Interests of Creditors Test ......... 34

19              c.    Further Disclosure is Required Concerning the Claims Bar Date ................................ 34

                d.    Inaccurate Asset Descriptions.................................................................................... 35

20   IV. RESERVATION OF RIGHTS ............................................................................................. 35

21   V. CONCLUSION...................................................................................................................... 35

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_NY:17949.5                                    i

1    As set forth in the Loan Chart, the Lehman Entities are substantially undersecured with

2    respect to their claims. The value of the Collateral securing the Lehman Obligations does not even

3    begin to approach the outstanding principal amount of the corresponding debt – let alone the total

4    amount of the Lehman Obligations, including interest and fees. The SunCal Debtors therefore have

5    no equity in the Collateral, and the value of the Collateral, particularly in this economic climate,

6    continues to decline on a daily basis.

7    **B.    Automatic Stay Issues**

8    On or about November 6 and November 7, 2008, the Voluntary Debtors filed voluntary

9    chapter 11 petitions in the United States Bankruptcy Court for the Central District of California (the

10    "Court"). Between November 12 and November 19, 2008, involuntary petitions were filed against

11    the Trustee Debtors in this Court, and subsequently, a trustee (the "SunCal Trustee") was appointed

12    to administer the Trustee Debtor cases.

13    Immediately after the Voluntary Debtors filed for bankruptcy, they (together with some of

14    their non-debtor affiliates) filed a motion with the New York Bankruptcy Court seeking relief from

15    the automatic stay (the "Stay Relief Motion"). The SunCal Debtors presumably desired free rein in

16    their bankruptcy cases to, *inter alia*, seek to use LCPI's cash collateral, obtain a DIP loan, and

17    generally administer the cases without regard for the automatic stay or the jurisdiction of the New

18    York Bankruptcy Court, even when affecting LCPI's property or interests.

19    The New York Bankruptcy Court unequivocally rejected the SunCal Debtors' request for

20    relief from the stay, and instead instructed "[e]ither the [SunCal Debtors] move again with a targeted

21    motion focused on the particular relief for cause shown or the parties, following discussions, agree

22    by stipulation to limited relief from the automatic stay." November 20, 2008 Hearing Transcript at

23    79 (attached hereto as Exhibit B). That same day, the New York Bankruptcy Court formally denied

24    the Stay Relief Motion (the "Stay Order") [Docket No. 1647] (attached hereto as Exhibit C). No

25    appeal or request for reconsideration was filed by the SunCal Debtors.

26    In complete disregard of the New York Bankruptcy Court's directive, certain of the SunCal

27    Debtors filed a motion in these cases in January 2009 seeking to use LCPI's cash collateral. A

28    second hearing was then conducted by the New York Bankruptcy Court on January 30, 2009 to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_NY:17949.5

5

1    determine whether the SunCal Debtors' attempt to use LCPI's cash collateral had violated LCPI's

2    automatic stay. The New York Bankruptcy Court again admonished counsel to the SunCal Debtors

3    at this second hearing:

4    > The only thing that is before me now, and I think I've already made
> clear what my position is, is that you have no stay relief. You know
5    > you have no stay relief. And that denial of the motion brought by you
> and your local counsel, Morgan Lewis & Bockius, in November
6    > speaks for itself and there is a final order which denies that motion.
> The legal consequences of that denial are what they are. I have no
7    > knowledge, and I don't expect to get that knowledge now as to what
> happened in California. To the extent relevant, I'll learn it in due
8    > course. The only thing which is before me is an emergency motion to
> enforce the automatic stay. It is enforced to the extent applicable. I'm
9    > not expanding it nor am I taking away from counsel the ability to reach
> agreements to modify it. **But if you don't come here and seek**
10   > **consensual relief from stay or relief from stay with appropriate**
> **motion practice, you are at full risk as is your client. Act**
11   > **accordingly.** ... As you well know as an experienced bankruptcy
> lawyer, careful lawyers almost always, when there's a close question,
12   > seek relief from stay to avoid the very severe sanctions that flow from
> -- especially flow from willful violations of the stay. You're in the
13   > zone of a willful violation.

14   Emergency Hearing Transcript at 16:16-25, 17:1-7, 19:16-21 (emphasis added) (attached hereto as

15   Exhibit D). Once again, no appeal or request for reconsideration was filed.

16        On February 19, 2009, the SunCal Debtors filed a Sales Procedures Motion in respect of a

17   proposed sale of Projects to D.E Shaw and requesting, *inter alia*, that ALI be stripped of its right to

18   credit bid. The Court subsequently ruled that the Sale Procedures Motion did not violate the

19   automatic stay in the Lehman Chapter 11 Cases. A decision has not yet been made on the request to

20   deprive a secured creditor with a valid lien of its right to credit bid.

21        On January 23, 2009, LCPI and ALI filed various motions for relief from the

22   automatic stay against certain of the SunCal Debtors seeking to foreclose on the Projects. The

23   SunCal Debtors opposed such motions. On March 10, 2009, this Court entered an order denying the

24   motions. LCPI and ALI have appealed certain aspects of the order.

25   **C.    The Subordination Litigation**

26        On January 6, 2009, the Voluntary Debtors filed an adversary proceeding in this Court

27   seeking, among other things, to equitably subordinate the claims of the Lehman Entities to the

28   claims of all of the SunCal Debtors' unsecured creditors and to transfer the liens of the Lehman

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Entities to the SunCal Debtors' estates (the "Subordination Litigation"). Subsequently, on February

2  3, 2009, the SunCal Plaintiffs filed a First Amended Complaint in the Subordination Litigation

3  adding the Trustee Debtors. The Lehman Entities (with the exception of LCPI, which had not yet

4  been named a defendant) filed a motion to dismiss the First Amended Complaint on or about

5  February 13, 2009.

6       The conduct that is the crux of the Subordination Litigation directly involves the Lehman

7  Debtors and especially LCPI, and requires a finding that LCPI's conduct warrants a subordination of

8  its claims and those of the other Lehman Entities. The Lehman Entities contend that the prosecution

9  of such claims violates the automatic stay in the Lehman Chapter 11 Cases. By order entered on

10 March 24, 2009, this Court granted the SunCal Debtors' motion for leave to amend the complaint to

11 add LCPI as a defendant, and deemed the Second Amended Complaint to be filed. LCPI has

12 appealed from the decision. All claims other than those for equitable subordination were removed

13 from the Second Amended Complaint. The Lehman Entities will file their motion to dismiss the

14 Second Amended Complaint (the "Motion to Dismiss") on April 27, 2009.

15 **D.    The Plan and Disclosure Statement**

16      On or about February 4, 2009, the Voluntary Debtors filed their original disclosure statement

17 and plan. On April 1, 2009, the Voluntary Debtors and Trustee Debtors filed the extant Plan and

18 Disclosure Statement. The Disclosure Statement contains the following summary of the significant

19 features of the Plan:

20          The Plan provides for the methodical sale of the Debtors' Projects, the
             equitable subordination of the Debtors' primary secured creditors'
21          claims, the transfer of their primary secured creditors' liens to the
             Debtors' estates, and the distribution of the net sale proceeds to the
22          Debtors' non-subordinated creditors and then to the subordinated
             claims. Further, to the extent not implemented on an earlier date
23          through an order of the Court, the Plan provides for the substantive
             consolidation of the individual estates of the Debtors into a single
24          debtor entity - Palmdale Hills. Palmdale Hills will then control the
             sale of all of the combined assets through a measured sale program
25          over a period that is projected to be no longer than twelve (12) months
             from the Plan's Effective Date. In the event that substantive
26          consolidation is not allowed, the Debtors shall remain separate entities
             and their indirect parent, Acquisitions, shall control the sale of each of
27          the Projects.

28 Disclosure Statement at 3.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1                         sales price of the particular assets in such creditors' estates.
                          Accordingly, the Debtors believe that the Plan fully satisfies the

2                         feasibility requirement.

3    Disclosure Statement at 56.

4          Effectively, the feasibility of the Plan is premised entirely on the SunCal Debtors' success in

5 the Subordination Litigation, which itself is premised on substantive consolidation. Under the Plan,

6 if the SunCal Debtors do not prevail in the Subordination Litigation, the Lehman Entities are

7 immediately free to exercise all available remedies in respect of their Class 1 and 2 secured claims,

8 the same result as if the Plan had not been confirmed. The inverse proposition is also true: there is

9 no point to proceeding with the Plan pending such a determination. Without equitable subordination

10 of the Lehman Entities' liens and claims, there is nothing that can be done under the Plan that cannot

11 equally be done without confirming a plan. There is, in short, no point to approving the Disclosure

12 Statement at this time.

13          Moreover, technically, the Plan cannot be deemed feasible absent an equitable subordination

14 determination. First, the Plan provides no means of making Effective Date payments from some

15 source other than proceeds of the Collateral. Second, the Plan provides for the transfer of the

16 Lehman Entities' lien rights to the Distribution Agent on the Effective Date. Both preclude any

17 finding that the Plan is feasible.

18       **4.**      **The Plan is Unconfirmable Because it Violates the Automatic Stay in the**
              **Lehman Chapter 11 Cases**

19

20          Section 362(a) of the Bankruptcy Code provides, in pertinent part, that the filing of a

21 bankruptcy petition operates as an automatic stay, applicable to all entities, of "any act to obtain

22 possession of property of the estate or of property from the estate or to exercise control over property

23 of the estate." 11 U.S.C. § 362(a)(3). The automatic stay applies to proceedings in other bankruptcy

24 courts. *See In re Miller*, 397 F.3d 726, 730-31 (9th Cir. 2005) ("11 U.S.C. § 362(b) provides 17

25 exceptions to the automatic stay provision. It does not exclude bankruptcy courts, however, from the

26 application of an automatic stay .... Accordingly we hold that an automatic stay issued by a home

27 bankruptcy court applies to all other bankruptcy courts.") (emphasis added). In *Miller*, a claimant

28 filed a proof of claim in a chapter 11 case pending in a Montana bankruptcy court. The chapter 11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    debtor filed a counterclaim against the claimant. The claimant then filed her own chapter 11 petition

2    in a Washington bankruptcy court. Thereafter, the Montana bankruptcy court awarded to the

3    Montana debtor attorney's fees based upon the counterclaim filed by the Montana debtor. The Ninth

4    Circuit held that the automatic stay of the Washington bankruptcy court applies to all other

5    bankruptcy courts, and so because the Montana debtor had failed to seek relief from stay from the

6    Washington bankruptcy court, the order of the Montana bankruptcy court was entered in violation of

7    the automatic stay and was void. *See id.* at 731-33.

8         Patently, the Plan violates the automatic stay protecting the assets of the Lehman Debtors by,

9    *inter alia*, stripping them of their liens and transferring them to the Distribution Agent, depriving

10   them of their right to credit bid, and subordinating their claims. The SunCal Debtors understand the

11   significance of the automatic stay and the need to seek from this Court relief from the automatic stay

12   before proceeding with any action that affects property of the Lehman Debtors' estates. Indeed, that

13   is why certain of the SunCal Debtors previously appeared before the New York Bankruptcy Court –

14   to request relief from the LCPI automatic stay before affecting LCPI property. *See* Stay Relief

15   Motion at ¶ 14 ("the SCC Entities seek ... relief from the automatic stay to administer their own

16   bankruptcy cases to the extent that such cases, and the relief requested therein, may affect the rights

17   of Lehman, including, without limitation: (i) filing a motion to authorize the use of Lehman's cash

18   collateral... ."). The New York Bankruptcy Court denied the Stay Relief Motion in November 2008,

19   giving the SunCal Debtors clear guidance and instruction that, if they wanted relief from the

20   automatic stays protecting the Lehman Debtors, they had to return to the Court and "move again

21   with a targeted motion focused on the particular relief for cause shown." November 20, 2008

22   Hearing Transcript at 79:2-3 (attached hereto as Exhibit B).

23        After the SunCal Debtors again sought to circumvent the automatic stay, the New York

24   Bankruptcy Court reaffirmed the application of the automatic stay to protect assets of the Lehman

25   Debtors:

26            The only thing that is before me now, and I think I've already made
              clear what my position is, is that you have no stay relief. You know
27            you have no stay relief. And that denial of the motion brought by you
              and your local counsel, Morgan Lewis & Bockius, in November
28            speaks for itself and there is a final order which denies that motion....

1

> But if you don't come here and seek consensual relief from stay or
> relief from stay with appropriate motion practice, you are at full risk as
> is your client. Act accordingly. ... As you well know as an
> experienced bankruptcy lawyer, careful lawyers almost always, when
> there's a close question, seek relief from stay to avoid the very severe
> sanctions that flow from -- especially that flow from willful violations of
> the stay. You're in the zone of a willful violation.

2

3

4

5    Emergency Hearing Transcript at 16:16-25, 17:1-7, 19:16-21 (attached as Exhibit D).

6        This Court also has recognized that relief from stay is needed. Specifically, at the hearing

7    conducted on March 10, 2009, the Court noted that "the reality is that, yes, there is a bankruptcy stay

8    that's in effect here. There's a bankruptcy stay in effect in New York." March 10, 2009 Hearing

9    Transcript at 69: 20-22 (attached hereto as Exhibit E). The Court also made it abundantly clear

10   throughout the hearing that it expects the Lehman Entities and the SunCal Debtors to respect the

11   stays in each case and to seek appropriate relief from the stay in this Court when necessary. *See*

12   *generally id.* Counsel for the Lehman Entities emphasized his understanding of the Court's directive

13   with respect to this issue. *See id.* at 22: 17-22 (attached hereto as Exhibit E).

14   **B.    The Disclosure Statement Does Not Contain Adequate Information Pursuant
         to Section 1125 of the Bankruptcy Code**

15

16       Even if this Court were to conclude that the Plan is not so patently flawed as to render it

17   unconfirmable as a matter of law, the Disclosure Statement fails to satisfy section 1125 of the

18   Bankruptcy Code in several material respects. Section 1125 of the Bankruptcy Code requires that a

19   plan proponent must provide holders of impaired claims with "adequate information" so that

20   creditors can make an informed decision on whether they should support a proposed chapter 11 plan.

21   Specifically, section 1125(a)(1) of the Bankruptcy Code provides:

22           "[A]dequate information" means information of a kind, and in
             sufficient detail, as far as is reasonably practicable in light of the
23           nature and history of the debtor and the condition of the debtor's books
             and records ... that would enable ... a hypothetical investor of the
24           relevant class to make an informed judgment about the plan . . . .

25   11 U.S.C. § 1125(a)(1); *see In re 3DFX Interactive, Inc.,* 2006 WL 2010786, at * 6 (Bankr. N.D.

26   Cal. 2006) ("Additionally, there needs to be additional discovery and disclosure before this court can

27   determine that any disclosure statement accompanying the ... Plan has adequate information."). In

28   determining whether a plan proponent has provided "adequate information" to creditors and parties

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT "10"

1   Richard N. Pachulski (CA Bar No. 90073)
    Dean A. Ziehl (CA Bar No. 84529)
2   Shirley S. Cho (CA Bar No. 192616)
    Pachulski Stang Ziehl & Jones LLP
3   10100 Santa Monica Blvd. 11th Floor
    Los Angeles, California 90067-4100
4   Telephone: (310) 277-6910
    Facsimile: (310) 201-0760
5
    -and-
6
    Edward Soto, Esq. (admitted pro hac vice)
7   Shai Waisman, Esq. (admitted pro hac vice)
    WEIL, GOTSHAL & MANGES LLP
8   767 Fifth Avenue
    New York, NY  10153-0119
9   Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
10
    Attorneys for Appellant
11  **LEHMAN COMMERCIAL PAPER INC.**

12          **UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
(SANTA ANA DIVISION)**

| In re PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED DEBTORS,<br><br>    Jointly Administered Debtors and Debtors-in-Possession | Case No. 8:08-bk-17206-ES<br><br>Chapter 11<br><br>Jointly Administered with Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574 ES; 8:08-bk-17575-ES<br><br>**Adversary No. 8:09-bk-01005-ES**<br><br>**LEHMAN COMMERCIAL PAPER INC.'S STATEMENT OF ISSUES AND DESIGNATION OF RECORD ON APPEAL (Re:  Appeal of Docket No. 22)** |
|---|---|

25      Appellant Lehman Commercial Paper Inc. ("LCPI"), a defendant in the above-captioned

26  adversary proceeding, pursuant to Federal Rule of Bankruptcy Procedure 8006, files its statement of

27  issues to be presented and designation of items to be included in the record on LCPI's appeal from

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Honorable Erithe Smith's March 26, 2009 order granting Plaintiffs' Motion for Leave to File Second Amended Complaint (Docket No. 22).

A.    **Statement of Issues on Appeal**

The issues on appeal are as follows:

1.    Does Plaintiffs' Second Amended Complaint, which asserts a claim for equitable subordination under 11 U.S.C. § 510(c) against LCPI and other defendants, violate the automatic stay that is in effect in LCPI's chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York pursuant to 11 U.S.C. § 362?

2.    Did the Court correctly grant Plaintiffs' Motion for Leave to File the Second Amended Complaint if the Second Amended Complaint violates the automatic stay that is in effect in LCPI's chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York pursuant to 11 U.S.C. § 362?

2

Exhibit 10, Page 89

EXHIBIT "11"

----- Original Message -----
From: Waisman, Shai <Shai.Waisman@weil.com>
To: Paul Couchot
Cc: 'Afriedman@irell.com' <Afriedman@irell.com>; Rothman, Richard
<richard.rothman@weil.com>; Bond, Michael <michael.bond@weil.com>; Soto, Edward
<edward.soto@weil.com>; 'rpachulski@pszjlaw.com' <rpachulski@pszjlaw.com>
Sent: Sun Mar 08 13:27:51 2009
Subject: Re: In re Lehman Brothers Holdings Inc. -- Automatic Stay

Paul,

To clarify, the deadline is tomorrow, March 9, 2009, at 1:00 PM (Eastern Time).

Thank you.


Shai Waisman
Business, Finance & Restructuring
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 100153
p.  212.310.8274
f.  212.310.8007
e.  shai.waisman@weil.com


---

From: Waisman, Shai <Shai.Waisman@weil.com>
To: Paul Couchot
Cc: Afriedman@irell.com <Afriedman@irell.com>; Rothman, Richard
<richard.rothman@weil.com>; Bond, Michael <michael.bond@weil.com>; Soto, Edward
<edward.soto@weil.com>; Richard Pachulski <rpachulski@pszjlaw.com>
Sent: Sun Mar 08 13:20:18 2009
Subject: In re Lehman Brothers Holdings Inc. -- Automatic Stay

Paul,

I am writing in reference to the SunCal motion for bidding procedures and the
SunCal Second Amended Complaint.

As you will certainly recall, Judge Peck has repeatedly advised you that any
act or effort to affect property of the estate in the chapter 11 cases pending
before him of Lehman Brothers Holdings Inc. and its affiliated Debtors (the
"Lehman Debtors" and, together with their non-debtor affiliates, "Lehman") can
only be accomplished in two ways. Either the SunCal Debtors were to return to
Judge Peck with specifically tailored requests for relief from the automatic
stay prior to any such act or effort or the parties were to reach agreement as
to a consensual modification from stay. To date, the SunCal Debtors have not
moved before Judge Peck to modify the automatic stay nor do the Lehman Debtors
consent to such modification.

Since the last hearing before Judge Peck, the SunCal Debtors have accused the
Lehman Debtors of engaging in inequitable conduct along with several other
Lehman entities — conduct that they believe entitles them to subordinate the
claims of the non-bankruptcy Lehman entities to all other creditors and to
transfer the liens of the non-bankruptcy Lehman entities to the SunCal estates.
For example, the Second Amended Complaint makes clear that the SunCal Debtors
believe that each of Lehman entities that extended loans to the SunCal entities

5

(the "Lehman Lenders") all are the alter-ego of the Lehman Debtors. Indeed, the Second Amended Complaint contains paragraph upon paragraph of such alter-ego allegations. Given that the SunCal Debtors clearly contend that the Lehman Lenders are alter-egos of the Lehman Debtors, should SunCal prevail in the allegations set forth in the complaint, any act to affect the property of the Lehman Lenders is an act that seeks to affect the property of the Lehman Debtors. As such, the SunCal Debtors' motion to establish bidding procedures, including the request to preclude Lehman's rights to exercise its Bankruptcy Code mandated right to credit bid on account of its secured claims, is a violation of the automatic stay. Separately and taken together, SunCal's actions are continuing violations of the automatic stay. In addition, your proposed amended complaint would assert a claim directly against LCPI, and further seeks damages against other Lehman entities for which LCPI or LBHI may have contribution or indemnity obligations. More generally, a review of your entire strategy and the totality of your clients' conduct -- as framed by the plan you have now filed, your proposed order on our lift stay motion, as well as your First and Second Amended Complaints -- leaves no doubt that your strategy is predicated on a wholesale attack on the Lehman Debtors in flagrant violation of the Automatic Stay, Judge Peck's prior order and admonitions to you.

Under these circumstances, the purpose of this email is to (i) inform you that we will not consent to the filing of the second amended complaint and (ii) give you the courtesy of informing you that in light of the myriad actions taken by the SunCal Debtors since the January 30, 2009 telephonic hearing before Judge Peck, Lehman will be asking Judge Peck, once again, to enforce the automatic stay. Please be advised that, consistent with Judge Peck's comments on January 30, 2009, we will be asking for sanctions in the form attorneys fees and costs.

In light of the foregoing, please confirm to me by no later than tomorrow, March 9, 2009, at 1:00 PM (Eastern Time) that you will proceed no further with the attacks that could improperly prejudice the interests of the Lehman Debtors unless you apply to Judge Peck for relief from stay, including that you have withdrawn the Credit Bid Motion. Absent withdrawal of the Credit Bid Motion and your clear assurance as to all of the foregoing by 11am (Eastern Time) tomorrow we will request a hearing later during the day before Judge Peck.

I look forward to your prompt response.


Shai Waisman
Business, Finance & Restructuring
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
p.   212.310.8274
f.   212.310.8007
e.   shai.waisman@weil.com

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you

6

**From:** Paul Couchot
**Sent:** Monday, March 09, 2009 10:00 AM
**To:** 'Waisman, Shai'
**Cc:** 'Afriedman@irell.com'; Rothman, Richard; Bond, Michael; Soto, Edward;
'rpachulski@pszjlaw.com'
**Subject:** RE: In re Lehman Brothers Holdings Inc. -- Automatic Stay

Mr. Waisman:

I have reviewed your emails of yesterday. As your collegues are aware from our phone
conference on Saturday morning, I was out of town and anavailable yesterday hosting a 50th
anniverary party for my parents in Northern California. The following shall serve as the voluntary
debtors and trustee's response to the same.

I am surpprised that you are taking the position that a sales procedure motion of assets that are
subject to disputed liens of a non-debtor lehman entity would violate the automatic stay of a
bankrupt lehman entity as the issue was not raised in the opposition that you filed to the
procedures motion. We further do not believe that the stay is violated based on what you
consider to be alter ego allegations in the second amended equitable subordination complaint.
However, in response to your concern in this regard, we will represent to you that if and when the
second amended complaint is filed, it will omit any reference to alter ego liability, which should
alleviate any concerns that you have regarding the procedures motion, and thus, alleviate any
need for emergency relief in the New York Bankruptcy Court.

As to the filing of the second amended complaint, as you know, it cannot be done until the santa
anna bankruptcy court grants leave to amnend. Such a motion has not been filed because, in
part, we were under the false impression that your client was considering stipulating to the same.
Thus, any threat of violating the stay by virtue of the filing of the second amended complaint does
not constitute grounds for emergency relief in the New York bankruptcy court. We are also
surprised that you are taking this position as well since Mr. Soto had represented to Judge Smith
that there would not be any collateral attacks on her order denying your clients' releif from stay
motion.

Sincerely,

Paul J. Couchot

7

# EXHIBIT "12"

**Attachments:**     Mar10Let.PDF


Mar10Let.PDF (2
MB)

----- Original Message -----
From: Waisman, Shai <Shai.Waisman@weil.com>
To: jmp.chambers@nysb.uscourts.gov <jmp.chambers@nysb.uscourts.gov>
Cc: Paul Couchot; dodonell@milbank.com <dodonell@milbank.com>; efleck@milbank.com
<efleck@milbank.com>; afriedman@irell.com <afriedman@irell.com>; rpachulski@pszjlaw.com
<rpachulski@pszjlaw.com>; dziehl@pszjlaw.com <dziehl@pszjlaw.com>; sspeier@squarmilner.com
<sspeier@squarmilner.com>; Bond, Michael <michael.bond@weil.com>; Soto, Edward
<edward.soto@weil.com>; Pace, Christopher <Christopher.Pace@weil.com>; Rothman, Richard
<richard.rothman@weil.com>; Lemmer, Elisa R <elisa.lemmer@weil.com>
Sent: Tue Mar 10 07:17:11 2009
Subject: In re Lehman Brothers Holdings Inc. et al. (SunCal)

To The Honorable Judge Peck,

Further to our letter yesterday afternoon, attached please find an update regarding these
matters.

I am, as always, available to answer any questions the Court may have.


Shai Waisman
Business, Finance & Restructuring
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
p.   212.310.8274
f.   212.310.8007
e.   shai.waisman@weil.com

---

The information contained in this email message is intended only for use of the individual
or entity named above. If the reader of this message is not the intended recipient, or the
employee or agent responsible to deliver it to the intended recipient, you are hereby
notified that any dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please immediately notify us
by email (postmaster@weil.com), and destroy the original message. Thank you

**Exhibit 1, Page 3**

Exhibit 12, Page93

# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE
NEW YORK, NY 10153
(212) 310-8000
FAX: (212) 310-8007

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

SHAI Y. WAISMAN
DIRECT LINE (212) 310-8274
E-MAIL: shai.waisman@weil.com

March 10, 2009

**VIA ELECTRONIC MAIL**

Honorable James M. Peck
United States Bankruptcy Court
Southern District of New York
1 Bowling Green
New York, New York 10004

Dear Judge Peck:

Yesterday afternoon, after sending our letter to you and Judge Smith, we were served with the attached Emergency Motion For Order Confirming That Automatic Stay Does Not Apply to Pending Sale Procedures Motion and Ruling Thereon and Declaration of Paul Couchot in Support Thereof.

By this Motion, despite your Honor's direct admonition, SunCal, yet again, seeks to have the California Bankruptcy Court, rather than Your Honor, make determinations regarding the automatic stay in force in the Lehman Chapter 11 cases over which Your Honor has exclusive jurisdiction. As you will see, SunCal's Motion and the declaration of Mr. Couchot, which purport to provide Judge Smith with an account of the prior hearings regarding SunCal's disregard for the automatic stay extent in Lehman's Chapter 11 cases, are seriously incomplete and misleading.

Mr. Couchot has obtained a hearing on the attached **Motion today at 10:30 a.m. (Pacific Time)**. In light of these events, we are hereby proceeding with the filing of the motion we provided to both Your Honor and Judge Smith yesterday afternoon, and would request that a hearing be scheduled.

**Exhibit 1, Page 4**

March 10, 2009
Page 2

       We respectfully submit that the filing of SunCal's Motion underscores the need for the coordination between the Lehman and SunCal proceedings that we recommended in our letter to Your Honor and Judge Smith yesterday.

Respectfully submitted,

Shai Y. Waisman

cc:     Judge Smith
        Paul Couchot, Esq.
        Mr. Steven M. Speier
        Dennis O'Donnell, Esq.
        Evan Fleck, Esq.
        Alan Friedman, Esq.
        Richard Pachulski, Esq.
        Dean Ziehl, Esq.
        Michael Bond, Esq.
        Edward Soto, Esq.
        Christopher Pace, Esq.

# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE

NEW YORK, NY 10153

(212) 310-8000

FAX: (212) 310-8007

March 9, 2009

SHAI Y. WAISMAN
DIRECT LINE (212) 310-8274
E-MAIL: shai.waisman@weil.com

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

**BY EMAIL**

Honorable James M. Peck
United States Bankruptcy Court – Southern District of New York
Courtroom 601
One Bowling Green
New York, NY 10004-1408

Honorable Erithe Smith
United States Bankruptcy Court - Central District of California
Ronald Reagan Federal Building and United States Courthouse
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

> **Re:** *In re Lehman Brothers Holdings, Inc., et al.* Case No. 08-13555
> *In re Palmdale Hills Property, LLC, et al.,* Case No. 08-17206
> *In re SunCal Heartland, LLC,* Case No. 8:08-17407-ES
> *In re LB-L-SunCal Northlake, LLC,* Case No. 8:08-17408-ES
> *In re SunCal Marblehead, LLC,* Case No. 8:08-17409-ES
> *In re SunCal Century City, LLC,* Case No. 8:08-17458-ES
> *In re SunCal PSV, LLC,* Case No. 8:08-17465-ES
> *In re Delta Coves Venture, LLC,* Case No. 8:08-17470-ES
> *In re SunCal Torrance, LLC,* Case No. 8:08-17472-ES
> *In re LB-L SunCal Oak Valley LLC,* Case No. 8:08-17404-ES
> *In re SunCal Oak Knoll, LLC,* Case No. 8:08-17588-ES

To the Honorable Judges Peck and Smith:

We represent Lehman Brothers Holdings Inc. ("LBHI") and Lehman
Commercial Paper Inc. ("LCPI"), a debtors and debtors in possession in the Chapter 11
Case No. 08-13555 (JMP) pending in the United States Bankruptcy Court for the
Southern District of New York, as well as Lehman ALI, Inc. ("ALI"), Northlake
Holdings, LLC ("Northlake Holdings"), and OVC Holdings, LLC ("OVC Holdings" and
collectively, with ALI, Northlake Holdings, and LCPI, the "Lehman Lenders" together
with LBHI and their debtor affiliates, the "Lehman Debtors").

As Your Honors are aware, the Lehman Lenders are lenders to various SunCal affiliated debtors (collectively, the "SunCal Debtors") whose chapter 11 cases (collectively, the "SunCal Bankruptcy Cases") are currently pending in the United States Bankruptcy Court for the Central District of California.

We are writing to express our concern for the continuing actions by the SunCal Debtors against the Lehman Lenders, which actions collectively threaten LCPI's property interests as well as that of the other Lehman Debtors.

The SunCal Debtors:

- are currently pursuing equitable subordination litigation against ALI, Northlake Holdings, and OVC Holdings that wholly is premised on the alleged "bad acts" of the Lehman Debtors and contains paragraph after paragraph (as set forth in pages 8-9 of the annexed Motion) (including as alleged in paragraph 72 of their proposed second amended complaint), that ALI and LCPI are alter egos of each other and their parent, LBHI, which, if true, would directly implicate the interests of all the Lehman Debtors, and the SunCal Debtors intend to amend their complaint to (i) include claims against LCPI on essentially the same bases and (ii) seek to transfer the liens of the Lehman Lenders (which constitute collateral for their loans to the SunCal Debtors) to the SunCal Debtors' estates;

- have filed a joint plan of reorganization that is premised on, among other things, equitably subordinating the Lehman Lenders' claims to those of all of the SunCal Debtors' unsecured creditors and transferring the liens securing those claims to the SunCal Debtors' estates; and

- are pursuing a motion to eviscerate the statutorily mandated credit bid rights of ALI, Northlake Holdings, and OVC Holdings (i.e., prevent ALI, Northlake Holdings, and OVC Holdings from credit bidding over $1 billion in claims (comprised of outstanding principal alone) on the sale of properties that constitute these lenders' collateral, which motion, at its core, is also premised on the alleged "bad acts" of the Lehman Debtors.

All of these actions, individually, and certainly together, threaten the Lehman Debtors' property interests.

In light of the foregoing, LCPI and LBHI are prepared to file a motion seeking, among other things, (a) to enforce the automatic stay as it relates to LCPI and any of its affiliated-debtor entities and (b) to enjoin the SunCal Debtors and/or their non-debtor affiliates from taking any actions that would implicate or impact the rights and property of the Lehman Debtors' estates. A copy of the proposed motion ("Motion") is enclosed herewith. Although we do not attach copies of the exhibits cited in the Motion or the accompanying complaint, these, too, can be made available to the Courts.

Notwithstanding the foregoing, the Lehman Debtors believe it would behoove all parties to resolve the issues between and among them consensually. To that end, the Lehman Lenders propose a joint conference involving the SunCal Debtors, the Lehman Lenders, and each of the Courts to discuss and determine a process that can protect the interests of *all* of the debtors in the above-referenced bankruptcy cases. Should the Courts be inclined to agree, they may want to consider staying any hearing on the proposed Motion noted above as well as any hearings in the SunCal Bankruptcy Cases that affect any of the Lehman Lenders' interests pending a joint status conference on the above-noted matters.

I am, as always, available to answer any questions the Courts may have.

Respectfully submitted,

Shai Y. Waisman

Encl.

cc:     Paul Couchot, Esq.
        Mr. Steven M. Speier
        Dennis O'Donnell, Esq.
        Evan Fleck, Esq.
        Alan Friedman, Esq.
        Richard Pachulski, Esq.
        Dean Ziehl, Esq.
        Michael Bond, Esq.
        Edward Soto, Esq.
        Christopher Pace, Esq.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard Rothman
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                     :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **DEBTOR.** | : | **(JOINTLY ADMINISTERED)** |
| | : | |

------------------------------------------------------- x

### DEBTORS' EMERGENCY MOTION (A) PURSUANT TO SECTION 362(a) OF THE BANKRUPTCY CODE FOR ENFORCEMENT OF THE AUTOMATIC STAY AND AWARDING DAMAGES, ATTORNEYS' FEES AND COSTS AND (B) PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE GRANTING A PRELIMINARY INJUNCTION STAYING AND ENJOINING ACTIONS AFFECTING LCPI AND ITS AFFILIATES

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtor, Lehman

Commercial Paper Inc. ("LCPI"), as debtors and debtors in possession (together, the "Lehman

Debtors" and together with non-debtor affiliates, "Lehman"), file this Motion (the "Motion") and

in support thereof respectfully represent:

# I. PRELIMINARY STATEMENT[1]

Among the valuable assets of LCPI are liens it holds on property in California that was provided as collateral for loans LCPI made to a number of SunCal Debtors – property valued in the hundreds of millions of dollars – as well as LCPI's claims against those SunCal Debtors to recover the hundreds of millions of dollars it lent to them. The SunCal Debtors, however, have embarked on a systematic effort to deprive LCPI of these assets as well as to otherwise interfere with the administration of the Lehman Debtors' bankruptcies. In an adversary proceeding filed in California in connection with their own bankruptcies, the SunCal Debtors have accused the Lehman Debtors, along with several other Lehman entities, of engaging in inequitable conduct that they believe entitles them to subordinate the claims of the non-bankrupty Lehman entities to all other creditors and to transfer the liens of the non-debtor Lehman entities to the SunCal estates. The SunCal Debtors have also filed a plan and disclosure statement in their bankruptcies clearly laying out their strategy to seek the same relief against LCPI – subordinating LCPI's claims to all other entities and transferring LCPI's liens to the SunCal estates. The SunCal Debtors have even gone so far as (1) to propose amending their adversary proceeding complaint to name LCPI as a party and (2) to ask the California Court to authorize them to pursue subordination of LCPI's claims and the taking of LCPI's liens.

This Court has already *twice* had to order several SunCal Debtors that they cannot interfere with assets of the Lehman Debtors without first following the appropriate – and well-

---

[1] Capitalized terms used in this Preliminary Statement, but not otherwise defined below, shall have the meanings ascribed to them elsewhere in this Motion.

Exhibit 12, Page100

established – procedure of asking this Court for relief from the automatic stay that protects the

Lehman Debtors. As the Court advised the SunCal Debtors on January 30th of this year:

> The only thing which is before me is an emergency motion to enforce the
> automatic stay. It is enforced to the extent applicable. I'm not expanding it nor
> am I taking away from counsel the ability to reach agreements to modify it. But if
> you don't come here and seek consensual relief from stay or relief from stay with
> appropriate motion practice, you are at full risk as is your client. Act
> accordingly....As you well know as an experienced bankruptcy lawyer, careful
> lawyers almost always, when there's a close question, seek relief from stay to
> avoid the very severe sanctions that flow from – especially flow from willful
> violations of the stay. You're in the zone of a willful violation.

Emergency Hearing Transcript, pp. 16-17, p. 19 (attached as Exhibit A).

      The Lehman Debtors are now required to come back to this Court and again seek

to rein in the SunCal Debtors from their constant, repeated, and willful efforts to disregard and

frustrate the automatic stay, and circumvent the orders of this Court. LCPI's liens, worth

hundreds of millions of dollars, cannot be taken from LCPI without directly violating the

automatic stay. The SunCal Debtors should be ordered to cease their active strategy both to take

LCPI's assets and interfere with the Lehman Debtors' bankruptcies without regard for the

automatic stay and this Court's prior orders through maneuverings in their own bankruptcy.

      The Lehman Debtors, like the SunCal Debtors, are debtors in bankruptcy, but

they respect the processes and procedures that must be followed prior to seeking certain relief.

That is why, for example, when LCPI and non-debtor Lehman ALI ("ALI") wanted to foreclose

on the SunCal collateral securing their loans, they *first* brought a motion in the California Court

to do so. The SunCal Debtors, however, have not afforded the same respect to the Lehman

Debtors, their chapter 11 cases, and this Court. They have defied this Court's rulings and have

made every attempt to skirt having to appear before this Court prior to taking actions directly or

indirectly against the Lehman Debtors. This Court should not countenance this blatant disregard

MJ1.\20641208\4P9_08!.DOC\58399.0003    3

of its orders. It should (a) enforce the automatic stay and prevent the SunCal Debtors from taking any further action to take the LCPI liens, and (b) order the SunCal Debtors to pay the Lehman Debtors' attorneys' fees and costs in connection with enforcing the automatic stay. The Court should further enjoin the the SunCal Debtors from taking any further actions, absent leave from this Court, against the Lehman Lender Defendants that would interfere with the administration of the Lehman Debtors' estates, including actions to eviscerate the claims or liens of these Lenders based upon allegations of inequitable conduct by the Lehman Debtors and pursuant to a Plan predicated on the SunCal Debtors depriving LCPI of its claims and liens.

## II. FACTUAL CONTEXT FOR MOTION

The Lehman Lenders are lenders to certain of the SunCal Debtors, and certain of their non-debtor affiliates, pursuant to various separate loan agreements (collectively, the "Loans"). The Lehman Lenders are owed in excess of $2.0 billion, including accrued interest, on account of such obligations (the "Obligations"). The Obligations are secured, in part, by first-priority deeds of trust on various real estate projects located in the State of California (collectively, the "Projects"). The SunCal Debtors are in default on their Obligations, and additional interest and charges continue to accrue each month.

A chart summarizing the loans is attached as Exhibit B. As reflected in the chart, the largest lender to the SunCal Debtors is LCPI. The recently appraisal value of the various properties and collateral securing all of the Loans is approximately $507 million.

**A.    The SunCal Debtors' Chapter 11 Cases And Their Initial Attempts To Avoid The LCPI Automatic Stay**

On or about November 6 and November 7, 2008, the SunCal Voluntary Debtors[2]

filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California

(the "California Court"). Between November 12 and November 19, 2008, involuntary petitions

were filed against the SunCal Involuntary Debtors[3] in the California Court, and subsequently, a

trustee (the "SunCal Trustee") was appointed to administer the Involuntary Cases.[4]

Right after the SunCal Voluntary Debtors filed for bankruptcy, they (together

with some of their non-debtor affiliates) filed a motion with this Court seeking relief from the

automatic stay (the "Stay Relief Motion") [Docket No. 1439].  They wanted free rein in their

---

[2] The SunCal Voluntary Debtors are comprised of: Palmdale Hills Property, LLC (Main Case), Case #8:08-bk-17206-ES; Acton Estates LLC, Case #8:08-bk-17236-ES; Kirby Estates, LLC, Case #8:08-bk-17246-ES; North Orange Del Rio, Case #8:08-bk-17574-ES; SCC Communities, LLC, Case #8:08-bk-17573-ES; SCC/Palmdale, LLC, Case #8:08-bk-17224-ES; Seven Brothers, LLC, Case #8:08-bk-17240-ES; SJD Development Corp., Case #8:08-bk-17245-ES; SJD Partners, Ltd. , Case #8:08-bk-17242-ES; SunCal Beaumont Heights, LLC, Case #8:08-bk-17209-ES; SunCal Bickford Ranch LLC , Case #8:08-bk-17231-ES; SunCal Communities I, LLC, Case #8:08-bk-17248-ES; SunCal Communities III, LLC, Case #8:08-bk-17249-ES; SunCal Emerald Meadows LLC , Case #8:08-bk-17230-ES; SunCal Johansen Ranch, LLC , Case #8:08-bk-17225-ES; SunCal Summit Valley LLC, Case #8:08-bk-17227-ES; Tesoro SF, LLC, Case #8:08-bk-17575-ES.  Their chapter 11 cases are referred to herein as the "SunCal Voluntary Cases."

[3] The SunCal Involuntary Debtors are comprised of: (1) SunCal Heartland, LLC (Case No. 8:08-17407-ES); (2) LB-L-SunCal Northlake, LLC (Case No. 8:08-17408-ES); (3) SunCal Marblehead, LLC (Case No. 8:08-17409-ES); (4) SunCal Century City, LLC (Case No. 8:08-17458-ES); (5) SunCal PSV, LLC (Case No. 8:08-17465-ES); (6) Delta Coves Venture, LLC (Case No. 8:08-17470-ES); (7) SunCal Torrance, LLC (Case No. 8:08-17472-ES); (8) LB-L SunCal Oak Valley LLC (Case No. 8:08-17404-ES); and (9) SunCal Oak Knoll, LLC (Case No. 8:08-17588-ES). Their chapter 11 cases are referred to herein as the "SunCal Involuntary Cases" and collectively, with the SunCal Voluntary Cases, the "SunCal Chapter 11 Cases."

[4] The SunCal Voluntary Debtors and the SunCal Involuntary Debtors are referred to, collectively, as the "SunCal Debtors."

bankruptcy cases to, <u>inter alia</u>, seek to use LCPI's cash collateral, obtain a DIP loan, and generally administer the cases without regard for the automatic stay or the jurisdiction of this Court, even when affecting LCPI's property or interests.

Unequivocally rejecting the SunCal Debtors' request for relief from the stay, the Court instructed "[e]ither the [SunCal Debtors] move again with a targeted motion focused on the particular relief for cause shown or the parties, following discussions, agree by stipulation to limited relief from the automatic stay." November 20, 2008 Hearing Transcript, p. 79 (attached as <u>Exhibit C</u>). That same day, this Court formally denied the Stay Relief Motion (the "<u>Stay Order</u>") [Docket No. 1647] (attached as <u>Exhibit D</u>). No appeal or request for reconsideration was filed.

Apparently undeterred, and in disregard of the Court's directive at the November 20, 2008 hearing, certain of the SunCal Debtors filed a motion in their bankruptcy cases in January 2009 seeking to use LCPI's cash collateral. At the hearing conducted by this Court on January 30 to determine whether the SunCal Debtors' attempt to use LCPI's cash collateral had violated LCPI's automatic stay, the Court admonished counsel to the SunCal Debtors,

> The only thing that is before me now, and I think I've already made clear what my position is, is that you have no stay relief. You know you have no stay relief. And that denial of the motion brought by you and your local counsel, Morgan Lewis & Bockius, in November speaks for itself and there is a final order which denies that motion. The legal consequences of that denial are what they are. I have no knowledge, and I don't expect to get that knowledge now as to what happened in California. To the extent relevant, I'll learn it in due course. The only thing which is before me is an emergency motion to enforce the automatic stay. It is enforced to the extent applicable. I'm not expanding it nor am I taking away from counsel the ability to reach agreements to modify it. **But if you don't come here and seek consensual relief from stay or relief from stay with appropriate motion practice, you are at full risk as is your client. Act accordingly....**As you well know as an experienced bankruptcy lawyer, careful lawyers almost always, when there's a close question, seek relief from stay to

avoid the very severe sanctions that flow from – especially flow from willful violations of the stay. You're in the zone of a willful violation.

Emergency Hearing Transcript, pp. 16-17, p. 19 (emphasis added) (attached as Exhibit A). Once again, no appeal or request for reconsideration was filed.

### B. The Subordination Litigation

On January 6, 2009, the SunCal Debtors, SunCal Trustee and others affiliated with the SunCal Debtors (collectively, the "SunCal Plaintiffs") filed an adversary proceeding in the California Court seeking, among other things, to equitably subordinate the claims of ALI, Northlake Holdings and OVC Holdings (the "Lehman Lender Defendants") to the claims of the SunCal Debtors' unsecured creditors and to transfer the liens of the Lehman Lender Defendants to the SunCal Debtors' estates (the "Subordination Litigation"). Subsequently, on February 3, 2009, the SunCal Plaintiffs filed the First Amended Complaint in the Subordination Litigation (attached as Exhibit E). The First Amended Complaint alleges essentially the same causes of action against the Lehman Lender Defendants as did the initial complaint.

Although, on its face, the First Amended Complaint did not purport to seek direct relief against LCPI or any other Lehman Debtor, the factual predicate of the First Amended Complaint rests on the alleged "bad acts" committed by Lehman Debtors prior to filing for bankruptcy. Indeed, the *first* paragraph of the First Amended Complaint begins as follows,

> **This case is about a major Wall Street financial institution, Lehman Brothers ("Lehman") that bilked California businesses ... *before declaring bankruptcy* in New York, where it is now hoarding billions in cash. Lehman perpetrated a fraud on creditors ..., with drastic and devastating consequences. With this action, [the SunCal] Plaintiffs seek to remedy those consequences.**

First Amended Complaint ("FAC") ¶ 1 (emphasis added).[5] Thus, the SunCal Plaintiffs openly admit that their "action" is all about "Lehman" – the same "Lehman" that is, by the SunCal Plaintiffs' own admissions, in bankruptcy and thus, subject to the automatic stay imposed by the Bankruptcy Code.

The First Amended Complaint's references to the bankrupt "Lehman" do not begin and end in the first paragraph. Rather, the complaint is replete with references to "Lehman's" alleged bad acts, including:

- "Even after filing for bankruptcy in September 2008, Lehman for a time continued to tell SunCal that it would fund ongoing critical expenses of the Projects, and continued to encourage and authorize SunCal to incur expenses in connection with the Projects." FAC ¶ 12.

- "LCPI and other bankruptcy Lehman entities are orchestrating this scheme to impede the reorganization of the Projects and to squeeze SunCal and force it out of the Projects. Lehman also controls the non-bankrupt Lehman entities … and through its manipulation of them is attempting to block any reorganization of the Projects in bankruptcy and preclude payment of the creditors." FAC ¶ 20.

- In the summer of 2008, SunCal was unaware that a Lehman bankruptcy was impending. Unbeknownst to SunCal, the various Lehman entities were proceeding on a coordinated course of conduct designed to shore up Lehman's position in anticipation of a possible bankruptcy and extract any value in the Projects for themselves…" FAC ¶ 88.

- "The transfers were made on these Projects so that LCPI could use the automatic stay in its own impending bankruptcy to impede a successful reorganization of the Projects." FAC ¶ 96.

- "Lehman ALI sought an extension on the closing of the Restructuring Agreement to buy it more time so that the parent, LBHI, could declare bankruptcy…" FAC ¶ 133.

---

[5] The First Amended Complaint is currently the subject of a motion to dismiss filed by ALI, Northlake Holdings, and OVC. A hearing on the motion is scheduled for May 21, 2009.

- "The various Lehman-affiliated entities do not view themselves as and do not act as separate entities with separate interests regarding the Projects. (For example, Gilhool signed the Restructuring Agreement on behalf of both the Lehman Equity Members and the Lehman lenders.) Rather, the various Lehman entities – whether lenders or equity holders – are acting in concert to usurp the Projects for Lehman's benefit, at the expense of other creditors and equity-holders. And this 'concert' is now being orchestrated by a single conductor, Alvarez & Marsal ('A & M')." FAC ¶ 114.[6]

Consequently, the First Amended Complaint, though *styled* as only seeking relief against non-Lehman Debtors, directly involves and embraces the Lehman Debtors, especially LCPI. The very crux of the SunCal Plaintiffs' claims is an attack on the conduct of the Lehman Debtors, along with other Lehman entities, which the SunCal Plaintiffs believe entitle them to avoid or transfer any and all liens connected to these actors. It is replete with allegations that expressly implicate Lehman Debtors and requires a finding against LCPI and, possibly, other Debtors – as it is *their* alleged actions that form the crux of the SunCal Plaintiffs' allegations in the First Amended Complaint.

**D.    The Lehman Lift Stay Motion**

On or about January 23, 2009, in deference to the SunCal Chapter 11 Cases, automatic staym and the California Court, LCPI and ALI filed a motion in the SunCal Voluntary Cases pursuant to which they sought relief from stay to foreclose on certain of the properties that secured some of their loans to the SunCal Debtors. In response, the SunCal Voluntary Debtors contended that the LCPI/ALI motion constituted an informal proof of claim, against which they were entitled to defend themselves and pursue equitable subordination against both LCPI and ALI. On the eve of the hearing on the motion, the California Court issued a tentative ruling

---

[6] The First Amended Complaint is also peppered with allegations about the conduct of various *bankruptcy* professionals retained by the Lehman Debtors to support the SunCal Plaintiffs' claims.

denying the motion (attached as Exhibit F). The next day, the California Court orally ruled consistently with its tentative ruling and asked the SunCal Voluntary Debtors to submit a proposed order to that effect.

The California Court's tentative and oral rulings did not state that the SunCal Voluntary Debtors could pursue claims against LCPI to have its liens transferred to the SunCal estates. Nevertheless, the SunCal Voluntary Debtors submitted a proposed order to the California Court asking the Court to endorse just such relief – to allow them affirmatively to seek taking the liens of LCPI (and ALI) for themselves ("SunCal's Proposed Order", attached as Exhibit G).[7] As this Court is aware, the SunCal Voluntary Debtors took this step without seeking relief from the automatic stay in this Court. And the SunCal Voluntary Debtors have now even acknowledged that the California Court did not expressly authorize such action; instead, they claim that the California Court "*implicitly* ruled" that they could seek transfer of LCPI's liens to the SunCal Debtors' estates without violating the LCPI automatic stay. See Exhibit I (emphasis added).

**E.     The Joint Plan and Disclosure Statement and the SunCal Plaintiffs' Proposed Second Amended Complaint**

On or about February 4, 2009, the SunCal Debtors filed their joint Plan ("Plan") and their disclosure statement (the "Disclosure Statement") (attached as Exhibits J and K, respectively). Both make crystal clear that the SunCal Debtors' reorganization is dependent on their ability to transfer the liens of LCPI to the SunCal Debtors' estates. The Plan expressly contemplates the following: (1) equitably subordinating the claims of LCPI, ALI, Northlake

---

[7] LCPI and ALI have filed an objection to SunCal's Proposed Order, which are attached as Exhibit H.

Holdings, and OVC Holdings (collectively, the "Lehman Lenders") to *all* of the SunCal Debtors' allowed unsecured claims, (2) transferring the Lehman Lenders' liens to the SunCal estates, (3) selling the real property that constitutes the Lehman Lenders' collateral (while eliminating the Lehman Lenders' credit bid rights), and (4) using the proceeds of the sale of the properties to satisfy the claims of the SunCal Debtors' unsecured creditors.

In furtherance of this strategy, the SunCal Plaintiffs have asserted that they will be filing a Second Amended Complaint (attached as Exhibit L). This Second Amended Complaint expressly names LCPI as a party and expressly seeks to both subordinate LCPI's claims and take away from LCPI its liens. The Second Amended Complaint also seeks actual and punitive damages from various Lehman entities other than LCPI.

Also in furtherance of the strategy set forth in the Plan and Disclosure Statement, several of the SunCal Debtors filed a motion (the "Credit Bid Motion") as the first step in their strategy. The Credit Bid Motion asks the California Court to establish bidding procedures to enable them to sell all of the assets owned by the SunCal Involuntary Debtors and certain assets owned by the SunCal Voluntary Debtors. Most notably, these SunCal Debtors seek to prevent ALI, OVC Holdings, and Northlake Holdings from credit bidding on the properties that are sought to be sold. They contend that the liens of ALI, OVC Holdings, and Northlake Holdings are subject to "bona fide dispute" based on the unproven (and unprovable) allegations in the First Amended Complaint that these parties and the Lehman Debtors engaged in inequitable conduct justifying subordination of any Lehman claims to the assets and transfer of any Lehman liens on the assets to the SunCal estates. Putting aside the issue of whether the *mere* existence of equitable subordination litigation is powerful enough to eviscerate hundreds of millions of dollars of a secured party's rights with respect thereto and write out of the Bankruptcy Code a

secured creditor's right to credit bid – an issue that is not before *this* Court – the allegations that form the basis of the Credit Bid Motion directly and extensively encompass the Lehman Debtors. The California Court is currently scheduled to hear argument on the Credit Bid Motion on March 10, 2009.

## III. RELIEF REQUESTED

By this Motion, the Debtors respectfully request the entry of an order (a) pursuant to Bankruptcy Code § 362(a) enforcing the automatic stay and compelling the SunCal Debtors to comply with the terms of the Stay Order and this Court's prior rulings, including by requiring the SunCal Debtors to seek relief from this Court prior to attempting any further to transfer to themselves or otherwise impair LCPI's liens, (b) awarding attorneys' fees and costs on account of the SunCal Debtors' continuing violations of the automatic stay, and (c) staying and/or enjoining any actions against the Lehman Lender Defendants that could affect the property of the Lehman Debtors' estates, pursuant to Bankruptcy Code §§105(a) and 362.[8]

### A. Actions by the SunCal Debtors Against LCPI Violate the Automatic Stay

Section 362(a) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition operates as an automatic stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). In enacting section 362, Congress made clear that:

> [T]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops

---

[8] This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

> all collection efforts, all harassment and all foreclosure actions. It permits the
> debtor to attempt a repayment or reorganization plan, or simply to be relieved of
> the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 95-595 at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6296-97; S. Rep. No. 95-989 at 54-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5840-41; *see also Midatlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection,* 474 U.S. 494, 503 (1986) (noting that the automatic stay is one of the fundamental protections afforded Debtors under the Bankruptcy Code).

As debtors themselves, the SunCal Debtors clearly understand the significance of the automatic stay and the need to seek from this Court relief from the automatic stay before proceeding with any action that affects property of the Lehman Debtors' estates. Indeed, that is why certain of the SunCal Debtors previously appeared before this Court – to request relief from the LCPI automatic stay before affecting LCPI property. *See* Stay Relief Motion at ¶ 14 ("the SCC Entities seek … relief from the automatic stay to administer their own bankruptcy cases to the extent that such cases, and the relief requested therein, may affect the rights of Lehman, including, without limitation: (i) filing a motion to authorize the use of Lehman's cash collateral…"). This Court denied the Stay Relief Motion in November 2008, giving the SunCal Debtors clear guidance and instruction that, if they wanted relief from the automatic stays protecting the Lehman Debtors, they had to return to the Court and "move again with a targeted motion focused on the particular relief for cause shown." November 20, 2008 Hearing Transcript, p. 79 (attached as Exhibit C).

Since then, however, the SunCal Debtors have opted to pursue various avenues to eviscerate the automatic stay without this Court's permission. The Court has already once had to enforce the stay and put a stop to the SunCal Debtors' gamesmanship, granting LCPI's

emergency motion to enforce the automatic stay and sternly advising the SunCal Debtors only a

month-and-a-half ago:

> The only thing that is before me now, and I think I've already made clear what
> my position is, is that you have no stay relief. You know you have no stay
> relief. And that denial of the motion brought by you and your local counsel,
> Morgan Lewis & Bockius, in November speaks for itself and there is a final
> order which denies that motion… But if you don't come here and seek
> consensual relief from stay or relief from stay with appropriate motion
> practice, you are at full risk as is your client. Act accordingly….As you well
> know as an experienced bankruptcy lawyer, careful lawyers almost always,
> when there's a close question, seek relief from stay to avoid the very severe
> sanctions that flow from – especially flow from willful violations of the stay.
> You're in the zone of a willful violation.

Emergency Hearing Transcript, pp. 16-17, p. 19 (emphasis added) (attached as Exhibit A).

       Notwithstanding the Court twice instructing them to the contrary, the SunCal

Debtors have continued on their path of seeking to take property of the Lehman Debtors' estates

and do an end run around the Lehman Debtors automatic stay. They have asked the California

Court, through SunCal's Proposed Order, to allow them affirmatively to seek taking the liens of

LCPI (and ALI) for themselves – a request the SunCal Debtors claim is supported "implicitly"

by the California Court because they know the California Court has made no express ruling

authorizing such action clearly contrary to the Lehman Debtors' automatic stay.[9] The SunCal

Debtors have threatened to file – and even drafted and circulated – an amended complaint

expressly naming LCPI as a defendant and asking for the remedy of taking LCPI's valuable

liens. The SunCal Debtors have even proposed a Plan clearly disclosing that their strategy in

---

[9] The automatic stay applies to proceedings in other bankruptcy courts. *See In re Miller*, 397 F.3d 726,
730-31 (9th Cir. 2005) ("11 U.S.C. § 362(b) provides 17 exceptions to the automatic stay provision. It
does not exclude bankruptcy courts, however, from the application of an automatic stay …. Accordingly
we hold that an automatic stay issued by a home bankruptcy court applies to all other bankruptcy
courts.").

their own bankruptcy cases is, ultimately, to eliminate or wholly marginalize the rights of LCPI, their largest creditor.

Rather than spend valuable resources concentrating on the management of their businesses, the Lehman Debtors' personnel and counsel have been forced to expend significant resources to protect the Lehman Debtors' property rights as against the SunCal Debtors' constant manipulations. This is precisely the type of distraction the automatic stay was designed to prevent. The SunCal Debtors have no right to either disregard or search for loopholes around the Lehman Debtors' automatic stay, and the Court should not countenance their actions. Accordingly, the Debtors respectfully request that the Court enter an order compelling, among other things, the SunCal Debtors to comply with the automatic stay and cease taking any actions in the SunCal Cases that are aimed, either directly or indirectly, to take from the Lehman Debtors their valuable claims and liens, absent express leave from this Court in advance.

**B.    LCPI Should Be Awarded Attorneys' Fees and Costs**

As set forth above, the SunCal Debtors have engaged in a blatant, and premeditated, violations of the automatic stay. Given the Court's prior instructions and warnings, both at the November 20, 2008 and the January 30, 2009 hearings, these violations can be neither condoned nor overlooked.

The United States Court of Appeals has held that "[f]or [non-individual] debtors, [civil] contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay." *Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*, 920 F.2d 183, 186-187 (2d Cir. 1990) (citing *Crysen/Montenay Energy Co.*

*v. Esselen Assoc., Inc. (In re Crysen/Montenay)*, 902 F.2d 1098, 1104 (2d Cir. 1990)).[10]  Where, as here, a party has knowingly violated the automatic stay in deliberate disregarded of this Court's rulings, a finding of civil contempt and a monetary award is entirely appropriate.  *See Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51, 57 (2d Cir. 1976) (allowing imposition of costs, including reasonable attorneys' fees, under civil contempt powers for acts which bankruptcy judge found were done with "knowledge" of automatic stay and "deliberate[]" disregard of bankruptcy rules regarding requirements for relief), *cert. denied*, 429 U.S. 1093, 97 S. Ct. 1107, 51 L. Ed. 2d 540 (1977).  Accordingly, the Lehman Debtors should be awarded from the SunCal Debtors attorneys' fees and costs, in an amount to be established, to compensate the Lehman Debtors for the harm already caused and prevent further violations.

## C.     The SunCal Debtors Should Be Enjoined From Taking Actions Against Non-Debtors That Threaten the Lehman Debtors' Property Interests

Because the Subordination Litigation is part and parcel of the SunCal Debtors' strategy to eliminate LCPI's claims, take LCPI's liens as they relate to SunCal properties, and otherwise divert the Lehman Debtors from tending to the administration of their estates – a strategy the SunCal Debtors are pursuing with full rigor – LCPI has commenced an adversary proceeding (the "Adversary Proceeding") to enjoin the SunCal Plaintiffs from continuing, without leave from this Court, the Subordination Litigation against the Lehman Lender Defendants or otherwise to seek to impair the liens of those Lenders.  By this motion, LCPI asks

---

[10] Bankruptcy courts are empowered to impose civil contempt sanctions.  *Bartel v. Eastern Airlines*, 133 F.3d 906, 1998 WL 2405 at *2 (2d Cir. 1998); *Bartel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 171 B.R. 18, 21 (Bankr. S.D.N.Y. 1994).

the Court to enjoin such conduct preliminarily, pending further hearings before this Court and resolution of the Adversary proceeding.

Numerous courts have extended the automatic stay provided for in Bankruptcy Code § 362(a)(1) pursuant to, or in combination with, their equitable powers under Bankruptcy Code § 105(a) to "enjoin acts against third parties when they impair a debtor's ability to reorganize a chapter 11 case - even though such acts are not proscribed by the automatic stay of section 362 of the Code." *Lyondell Chemical Co. v. Centerpoint Energy Gas Servs., Inc. (In re Lyondell Chemical Co.), No. 09-01038 (REG),* 2009 WL 497570, at *17 (Bankr. S.D.N.Y. 2009); *see also Calpine Corp. v. Nevada Power Co. (In re Calpine Corp.),* 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006) (recognizing the authority of the bankruptcy court to extend the automatic stay to non-debtors).

If the automatic stay is not extended to stay the SunCal Debtors' actions against the Lehman Lender Defendants, LCPI and its estate will be irreparably damaged and the purposes of the Bankruptcy Code will be frustrated because, among other things:

- The Lehman Debtors could be subject to preclusion risks depending upon the outcome of the Subordination Litigation, which directly attacks the conduct of the Lehman Debtors. This will require the Lehman Debtors to participate actively in that Litigation, with substantial costs to them and distraction of their current management and bankruptcy professionals;

- Depending upon the outcome of the Subordination Litigation, the Lehman Debtors may have contribution or indemnity obligations to the Lehman Lender Defendants;

- The Lehman Debtors will be deprived of the value from the investments of the Lehman Lender Defendants that ultimately inures to the benefit of the Lehman Debtors' estates; and

- In any event, the Lehman Debtors will be forced to expend valuable resources to refute the allegations of misconduct against them, their

management and their bankruptcy professionals that are at issue in the Subordination Litigation.

The fact that, in their current iterations, the Subordination Litigation and the related Credit Bid Motion are not, in name, against the Lehman Debtors is nothing more than smoke and mirrors. When examined with any depth, what is revealed is that the core of both are the alleged "bad acts" of the Lehman Debtors, and the goal of both is, ultimately, to deprive LCPI of its valuable claims and liens. Consequently, the relief requested herein is necessary to protect the property and interests of the Lehman Debtors' estates. If the relief requested herein is not granted, the Lehman Debtors' estates will suffer irreparable harm, their value will be diminished, and their efforts to reorganize will be unduly hampered.

### (1) *This Court Should Hold that the Automatic Stay Bars the SunCal Debtors' Attacks on the Lehman Lenders*

Because the ultimate objective of the Subordination Litigation (and the related Credit Bid Motion) is, eventually, for the SunCal Debtors to take LCPI's liens and eviscerate their claims, this Court is empowered to halt such conduct by enforcement of the automatic stay. In fact, recognizing the broad reach Congress intended for the automatic stay, numerous courts have held that its protection reaches beyond direct actions against the debtor and stays actions against non-debtors where such actions actually have as their objective the recovery of claims against the debtor and are as detrimental to the debtor's estate as an action pursued directly against the debtor. *See Federal Deposit Ins. Co. v. Hirsch (In re Colonial Realty,* 980 F.2d 125, 131 (2d Cir. 1992); *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.),* 788 F.2d 994, 999 (4th Cir. 1986), *cert. denied,* 479 U.S. 876 (1986); *North Star Contracting Corp. v. McSpedon (In re North Star Contracting Corp.),* 125 B.R. 368 (S.D.N.Y. 1991); *Cf. Teachers Ins. and Annuity Ass'n of Am. v. Butler,* 803 F.2d 61, 65 (2d Cir. 1986) (although the court determined that

chapter 11 contains no specific provision to protect non-debtors, it relied on both section 105 and *A.H. Robins* as authority to apply automatic stay to non-debtor co-defendants in appropriate circumstances).

As revealed in the Plan, Disclosure Statement, SunCal's Proposed Order and the proposed Second Amended Complaint, the objective of the SunCal Debtors is to free themselves from LCPI's claims and liens. The intent of the Subordination Litigation (and Credit Bid Motion) is simply to lay the foundation to accomplish this objective. These actions are detrimental to the Lehman Debtors' estates, and place the Lehman Debtors in the position of having to respond to such attacks rather than tend to their estates. As a result, this Court is empowered to – and should – halt such actions as a means of enforcing the Lehman Debtor automatic stay.

**(2)** ***The Court Also Should Enjoin The SunCal Debtors' Actions Against the Lehman Lender Defendants Employing Its Broad Equitable Powers Under Bankruptcy Code § 105(a).***

In addition to the pervasive reach of the automatic stay provided in section 362 of the Bankruptcy Code, section 105(a) confers broad equitable powers in the Bankruptcy Court to achieve even greater protection and to promote the purpose of chapter 11. Section 105(a) provides a court with broad authority to enjoin or stay actions that are subject to the automatic stay, as well as actions that may not directly be subject to the automatic stay:

> *The court has ample . . . powers to stay actions not covered by the automatic stay.* Section 105 . . . grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court as its adjunct have all the traditional injunctive powers of a court of equity.

S. Rep. No. 95-989 at 51 (1978); H. Rep. No. 85-595 at 341-42 (1977) (emphasis added). *See also* H. Rep. No. 95-595 at 342-43 (1977); S. Rep. No. 95-989 at 51-52 (1978) (the effect of an

exception to the automatic stay under section 362(b) is not to make the action immune from injunction, and the court has power, under section 105, to stay actions not covered by the automatic stay).

Numerous courts have acknowledged that section 105(a) allows the bankruptcy court to issue injunctions or discretionary stays in circumstances beyond the scope of the automatic stay provisions of section 362. *See, e.g., Pennsylvania Pub. Util. Comm'n v. Metro Transp. Co. (In re Metro Transp. Co.)*, 64 B.R. 968, 974 (Bankr. E.D. Pa. 1986). Courts have also recognized the broad injunctive authority provided under section 105(a) in circumstances where, as here, the debtor is the true target of the action, and the action, if not enjoined, will affect the debtor's ability to pursue and confirm a chapter 11 plan:

> Consistent with congressional intent and with the fundamental purposes underlying the automatic stay, numerous federal courts have held that, under appropriate circumstances, *the automatic stay may be extended beyond direct actions against the debtor to lawsuits against non-debtors*. Specifically, courts in this circuit and others have held that while the automatic stay ordinarily applies only to actions against the debtor itself, it is properly extended to actions against non-debtors where an identity of interest exists between the debtor and non-debtor defendant such that *the debtor is the real party defendant and the litigation will directly affect the debtor and, more importantly, the debtor's assets or its ability to pursue a successful plan of reorganization* under Chapter 11.

*Gillman v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 177 B.R. 475, 479 (D. Del. 1993) (emphasis added); *see also In re Calpine Corp.*, 354 B.R. at 48 ("[S]ection 105 of the Bankruptcy Code provides bankruptcy courts with broad discretion to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. Although stays under section 362(a) of the Bankruptcy Code generally apply only to bar proceedings against the debtor, it is well settled that bankruptcy courts may extend the automatic stay to

enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts.") (citations omitted).[11]

"The basic purpose of [section 105(a)] is to enable the court to do whatever is necessary to aid its jurisdiction, *i.e.*, anything arising in or relating to a bankruptcy case." *In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y. 1987), *aff'd*, 88 B.R. 30 (S.DN.Y. 1988); *see also United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990) ("bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships"); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993). This Circuit, acknowledging the breadth of section 105, stated that "the Bankruptcy Court has authority under section 105 broader than the automatic stay provisions of section 362 and may use its equitable powers to assure the orderly conduct of the reorganization proceedings." *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985); *accord LTV Steel Co. v. Board of Educ. of the Cleveland City Sch. Dist. (In re Chateaugay Corp.)*, 93 B.R. 26, 29 (S.D.N.Y. 1988); *see also In re Lyondell Chemical Corp.*, 2009 WL 497570 at *17 (recognizing that Section 105(a) grants broader authority than section 362). This broad authority includes the power to issue injunctions to restrain creditors of a debtor from proceeding with litigation against third party non-debtors where such actions contravene the policies inherent in the Bankruptcy Code and adversely impact the debtor. *See A.H. Robins*, 788 F.2d at 1003; *Eastern Air Lines, Inc. v. Rolleston (In re Ionosphere Clubs, Inc.)*, 111 B.R. 423, 434 (Bankr. S.D.N.Y. 1990), *aff'd*

---

[11] *See also Adelphia Comm. Corp. v. The America Channel (In re Adelphia Comm. Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process. A bankruptcy court may enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it."); *In re Keene Corp.*, 164 B.R. 844, 848 (Bankr. S.D.N.Y. 1994) ("[T]he court can [pursuant to section 105(a)] enjoin an activity that threatens the reorganization process or impairs the court's jurisdiction with respect to a case before it.")

*in relevant part*, 124 B.R. 635 (S.D.N.Y. 1991) ("Where, as here, a proceeding against [non-debtors] would adversely affect the debtor's estate, a court may enjoin the action as to all defendants pursuant to its authority under § 105 of the Code").[12]

      (a)     Applicable Standard for Grant of Section 105(a) Injunction.

      In considering whether to grant an injunction pursuant to Bankruptcy Code § 105(a), bankruptcy courts are guided by the traditional, non-bankruptcy standards for issuance of an injunction pursuant to Federal Rule of Civil Procedure ("FRCP") 65. In the Second Circuit, under FRCP 65, the movant must demonstrate (i) irreparable harm and (ii) either (a) likelihood of success on the merits or (b) sufficient serious questions regarding the merits to make them a "fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *United States v. Bedford Assoc.*, 618 F.2d 904, 912 n.15 (2d Cir. 1980).

      As this Court recently stated, in *Lyondell*, "courts have applied the 'traditional preliminary injunction standard as modified to fit the bankruptcy context.'" *In re Lyondell Chem. Co.*, 2009 WL 497570, at *17 (citations omitted). Case law has established an exception to the need for meeting each of the FRCP 65 requirements for issuance of an injunction in the bankruptcy context. "[S]ince injunctions in bankruptcy cases are authorized by statute, the usual equitable grounds for relief, such as irreparable damage, need not be shown." *Neuman*, 71 B.R.

---

[12] *See also AP Indus. Inc. v. SN Phelps & Co (In re AP Indus. Inc.)*, 117 B.R. 789, 801 (Bankr. S.D.N.Y. 1990) (action for alleged fraudulent transfer enjoined in order to preserve and protect debtor's estate and prospects for reorganization); *In re Circle K Corp.*, 121 B.R. 257, 262 (Bankr. D. Ariz. 1990) (securities litigation enjoined against debtors' officers and directors due to impact "at this early stage in a series of complex, interrelated Chapter 11 filings"); *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 751 (Bankr. E.D. Pa. 1986) (noting that bankruptcy courts have the power to restrain legal action by creditors of the debtor against non-debtor third parties, in certain circumstances, pursuant to 11 U.S.C. § 105, including actions which would have a detrimental impact on the debtor or the estate).

at 571; *accord Ionosphere*, 111 B.R. at 431; *AP Indus.*, 117 B.R. at 802. "Instead, the bankruptcy court may 'enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it.'" *In re Johns-Manville Corp.*, 91 B.R. 225, 228 (Bankr. S.D.N.Y. 1988) (quoting *Chateaugay Corp.*, 93 B.R. at 29); *In re Calpine Corp.*, 365 B.R. at 48 (recognizing a limited exception to the irreparable harm requirement "where the action to be enjoined is one that threatens the reorganization process or which would impair the court's jurisdiction with respect to the case before it.") (citing *Alert Holdings, Inc. v. Interstate Protective Servs. (In re Alert Holdings)*, 148 B.R. 194, 199 (Bankr. S.D.N.Y. 1992)). Accordingly, bankruptcy courts focus on the need for an injunction to achieve the goals of bankruptcy rather than on whether there is an adequate remedy at law or irreparable harm. The critical issue, therefore, is whether the injunction sought can prevent harm to the bankruptcy estate. *See e.g., In re Calpine Corp.*, 365 B.R. at 48 (a bankruptcy court may issue injunctive relief "[w]here there is a showing that the action sought to be enjoined would burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects.").

      (b)    The SunCal Debtors' Actions Are Impeding the Lehman Debtors' Reorganization Proceedings and Threatening the Lehman Debtors' Estates

As admitted in their Plan and reflected in their proposed Second Amended Complaint, there is no doubt that the SunCal Debtors' actions against the Lehman Lender Defendants is intended as the first step to the SunCal Debtors marginalizing LCPI's claims against them and taking LCPI's liens against them. Moreover, even the current operative complaint in the Subordination Litigation – which also forms the basis for the Credit Bid Motion – is clear that the SunCal Debtors' claims against the Lehman Lender Defendants are

inextricably intertwined with attacks on the Lehman Debtors. The First Amended Complaint devotes paragraph after paragraph to discuss the alleged bad acts of "Lehman" and the harm that "Lehman" alleged caused the SunCal Debtors, both before and after the Lehman Debtors filed for bankruptcy protection. The SunCal Debtors thus hope that, through their Subordination Litigation, they can establish the basis for taking punitive action against the Lehman Debtors. Because findings made concerning the Lehman Lender Defendants' rights or liability in the Subordination Litigation can adversely affect the Lehman Debtors and limit LCPI's ability to relitigate the findings at a later juncture, enjoining the SunCal Debtors from pursuing these actions is entirely appropriate under Bankruptcy Code § 105(a) (as well as Bankruptcy Code § 362). *See In re Lyondell Chem. Co.,* 2009 WL 497570, at \*19 ("[W]here the movant shows 'that the action sought to be enjoined would burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects, the Bankruptcy Court may issue injunctive relief.'") (citation omitted).

For example, in *In re Lion Capital*, 44 B.R. 690, 702 (Bankr. S.D.N.Y. 1984), the bankruptcy court stayed certain limited partnership actions against non-debtor principals of the debtor-limited partnership, recognizing that those actions could have adverse effects on the debtor. The court held:

> [T]he risk of collateral estoppel, the consequent drain on the debtor's resources through having to monitor or perhaps participate in other actions, and the risk that testimony by employees or agents might be subsequently employed against the debtor, would irreparably injure the estates and thus warranted the issuance of a stay.

44 B.R. at 703 (citations omitted).

In *Ionosphere*, the court similarly used its authority under section 105(a) of the Bankruptcy Code to enjoin an action against non-debtor third parties that threatened the debtor to further the policies underlying the automatic stay, reasoning that

> pursuit of the [lawsuit] against the other defendants will surely involve, burden and directly impact upon [the debtor], and will likely prejudice [the debtor's] future defense against identical claims based upon identical facts. Where, as here, a proceeding against a debtor's codefendants would adversely affect the debtor's estate, a court may enjoin the action as to all defendants pursuant to its authority under § 105 of the Code .... In particular, the courts have recognized that a stay should be provided . . . when the claims against them and the claims against the debtor are *"inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding."*

111 B.R. at 434 (citations omitted) (emphasis added).[13]

As explained above, the SunCal Debtors are seeking determinations with respect to the rights and liabilities of the Lehman Lender Defendants that will necessarily impact upon the rights and liabilities of at least LCPI, if not also LBHI. In connection with such determinations, testimony and evidence by, and about, the Lehman Debtors is essential. As a result, the Lehman Debtors not only face a risk of preclusion from the SunCal Debtors' actions against the Lehman Lender Defendants, but they are also forced to defend against the SunCal Debtors' repeated accusations against the Lehman Debtors – accusations that underlie all of the SunCal Debtors' legal maneuvers, whether against the Lehman Debtors or against the Lehman Lender Defendants. Because the SunCal Debtors' actions are forcing the Lehman Debtors away

---

[13] *See also Lomas Fin. Corp. v. Northern Trust Co. (In re Lomas Fin.)*, 117 B.R. 64, 68 (S.D.N.Y. 1990) (fraud action against debtor's executives stayed where judgment would collaterally estop debtor from subsequently litigating issues); *Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123, 127-28 (Bankr. D. Mass. 1984) (section 362(a)(1) stays proceedings against non-debtors where necessary to protect the debtor from the risk of being bound by findings or testimony in a third-party proceeding in which the debtor is not participating); *MacDonald/Assocs., Inc. v. Stillwagon (In re MacDonald/Assocs., Inc.)*, 54 B.R. 865, 869 (Bankr. D.R.I. 1985) (where "there is one wrong, one injury and one recovery, . . . [an] action [against non-debtors] is inextricably intertwined with the claim against and liability of the debtor").

from focusing on their reorganization and threatening to impair the Lehman Debtors' property interests, those actions should be immediately enjoined.

        (c)    The Injury to the Lehman Debtors Outweighs Any Potential Harm to the SunCal Debtors.

In contrast to the obvious irreparable injury the Lehman Debtors will endure if the SunCal Debtors are able to continue their present course and litigate the rights and liabilities of the Lehman Debtors through actions taken against the Lehman Lender Defendants, the SunCal Debtors will not suffer undue prejudice if the Court enjoins them from the unimpeded pursuit of the Lehman Lender Defendants. First, this Court has already informed the SunCal Debtors that it is willing to entertain proper motions by them for relief from the Lehman Debtors automatic stay. If they do so, they can seek at the same time relief from any order limiting their actions against the Lehman Lender Defendants. Furthermore, since the ultimate goal of the SunCal Debtors is to affect the claims and liens of the LCPI, requiring them to address the Lehman Debtors and the Lehman Lender Defendants at the same time simply promotes efficiency, the effect use of judicial resources, and fairness. None of these interests can be deemed to prejudice the SunCal Debtors.

        (d)    Granting of an Injunction Serves The Public Interest.

The issuance of an injunction would not be adverse to the public interest. Quite to the contrary, it will promote the public interest and policy of reorganization and rehabilitation codified in the Bankruptcy Code for the benefit of all creditors, rather than for the parochial interests of the SunCal Debtors. By issuing an injunction barring the unrestrained actions against the Lehman Lender Defendants (which actions are rooted in, and designed to "remedy," the alleged conduct of the Lehman Debtors), the Court will prevent the SunCal Debtors from

achieving indirectly what they cannot achieve directly. Enjoining such actions will also prevent

the SunCal Debtors' ongoing and creeping violations of the Lehman Debtors automatic stay.

Finally, as noted above, the injunction will increase efficiency, the effect use of judicial

resources, and fairness, all of which are obviously in the public interest.

## V.     **WAIVER OF SECURITY**

Bankruptcy Rule 7065 provides that a court may issue a preliminary injunction,

on application of a debtor, without requiring security under FRCP 65(c). LCPI submits that the

security requirements of FRCP 65(c) would impose an undue burden on its estate. Moreover, the

SunCal Debtors will not be unduly prejudiced by the issuance of the requested preliminary

injunction, which merely requires them to respect the automatic stay and seek relief from this

Court before they adversely affect, either directly or indirectly, the Lehman Debtors.

Accordingly, the Lehman Debtors request that, pursuant to Bankruptcy Rule 7065, the Court

waive the requirements for security.

## VI.     **NOTICE**

No trustee has been appointed in these chapter 11 cases. Notice has been

provided to the SunCal Debtors. Because of the emergency nature of the relief requested, the

Lehman Debtors submit that no other or further notice need be provided.

Exhibit 12, Page125

## VII.  CONCLUSION

WHEREFORE, the Lehman Debtors respectfully requests that this Court enter an order  (i) enforcing the automatic stay, as set forth above, (ii)  staying and enjoining the SunCal Debtors from taking actions against the Lehman Lender Defendants that implicate or may impact the rights and property of the Lehman Debtors' estates, (iii) waiving the requirements for security under FRCP 65(c), and (iv) granting the Lehman Debtors such other and further relief as the Court deems just.

Dated: March 9, 2009
       New York, New York

 

_____

Richard Rothman
Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Exhibit 12, Page126

EXHIBIT "13"

-----Original Message-----
From: Maria Bove [mailto:mbove@pszjlaw.com]
Sent: Wednesday, August 26, 2009 1:06 PM
To: Paul Couchot
Cc: Richard Pachulski
Subject: SunCal/Lehman - Revised Cash Collateral Stipulation and Valuation Stipulation

 <<Lehman - Cash Collateral Stipulation_v6.DOC>>   <<Lehman - Valuation
Stipulation_v6.DOC>>
Paul,

Attached for your review please find revised versions of the SunCal/Lehman Cash Collateral
Stipulation and Valuation Stipulation.

The blacklines reflect your comments provided on 8/6 as well as some of our own revisions.

Please let us know if you have any additional comments.

Thanks.

Maria

Maria Bove
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Tel: 212.561.7700 | Fax: 212.561.7777
mbove@pszjlaw.com
www.pszjlaw.com

Los Angeles | San Francisco | Wilmington, DE | New York

CONFIDENTIALITY
This e-mail message and any attachments thereto is intended only for use by the
addressee(s) named herein and may contain legally privileged and/or confidential
information. If you are not the intended recipient of this e-mail message, you are hereby
notified that any dissemination, distribution or copying of this e-mail message, and any
attachments thereto is strictly prohibited. If you have received this e-mail message in
error, please immediately notify me by telephone and permanently delete the original and
any copies of this email and any prints thereof.

NOT INTENDED AS A SUBSTITUTE FOR A WRITING Notwithstanding the Uniform Electronic
Transactions Act or the applicability of any other law of similar substance and effect,
absent an express statement to the contrary hereinabove, this e-mail message, its
contents, and any attachments hereto are not intended to represent an offer or acceptance
to enter into a contract and are not otherwise intended to bind the sender, Pachulski
Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.

1

1  PACHULSKI STANG ZIEHL & JONES LLP
   Richard M. Pachulski (CA Bar No. 90073)
2  Dean A. Ziehl (CA Bar No. 84529)
   Pachulski Stang Ziehl & Jones LLP
3  10100 Santa Monica Blvd., 11th Floor
   Los Angeles, California 90067-4100
4  Telephone: (310) 277-6910
   Facsimile: (310) 201-0760
5  WEIL, GOTSHAL & MANGES LLP
   Edward Soto (admitted *pro hac vice*)
6  Shai Waisman (admitted *pro hac vice*)
   767 Fifth Avenue
7  New York, NY 10153-0119
   Telephone: (212) 310-8000
8  Facsimile: (212) 310-8007
   Attorneys for Lehman Commercial Paper Inc. and Lehman ALI, Inc.

9
## UNITED STATES BANKRUPTCY COURT
10
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| 11  In re: | Case No.: 8:08-bk-17206-ES |
| 12  Palmdale Hills Property, LLC, and its Related Debtors, | Chapter 11 |
| 13         Jointly Administered Debtors and Debtors-In-Possession | Jointly Administered Case Nos. |

8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574-ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-bk-17588-ES

14  Affects:
☐ All Debtors
☐ Palmdale Hills Property, LLC
15  ☐ SunCal Beaumont Heights, LLC
☑ SCC/Palmdale, LLC
16  ☐ SunCal Johannson Ranch, LLC
☑ SunCal Summit Valley, LLC
17  ☐ SunCal Emerald Meadows LLC
☑ SunCal Bickford Ranch, LLC
18  ☐ Acton Estates, LLC
☐ Seven Brothers LLC
19  ☐ SJD Partners, Ltd.
☐ SJD Development Corp.
20  ☐ Kirby Estates, LLC
☑ SunCal Communities I, LLC
21  ☑ SunCal Communities III, LLC
☐ SCC Communities LLC
22  ☐ North Orange Del Rio Land, LLC
☐ Tesoro SF, LLC
23  ☐ LB-L-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
24  ☐ LB-L-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
25  ☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
26  ☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
27  ☐ SunCal Oak Knoll, LLC

**STIPULATION VALUING CERTAIN COLLATERAL AND PRESERVING CERTAIN LIENS**

Date:   September 22, 2009
Time:   10:00 a.m.
Place:  Courtroom 5A

28

This Stipulation is entered into by and between Lehman ALI, Inc. ("Lehman ALI") and Lehman Commercial Paper Inc. ("LCPI" and, together with Lehman ALI, the "Lehman Entities"), on the one hand, and SunCal Communities I, LLC ("SunCal I"), SunCal Communities III, LLC ("SunCal III"), SCC/Palmdale, LLC ("SCC Palmdale"), SunCal Summit Valley, LLC ("SunCal Summit") and SunCal Bickford Ranch, LLC ("SunCal Bickford Ranch" and, collectively with SunCal I, SunCal III, SCC Palmdale, and SunCal Summit, the "Moving Debtors"), on the other hand. The Lehman Entities and the Moving Debtors (the "Parties") hereby enter into this Stipulation and agree as follows:

## RECITALS

WHEREAS, on March 30, 2009: (1) LCPI filed Proof of Claim No. 1 against SunCal I in Case No. 08-17248 (the "SunCal I Claim") asserting claims secured by pledges of SunCal I's equity membership interests in Acton Estates, LLC, SunCal Summit, SunCal Beaumont Heights, LLC, SunCal Johannson Ranch, LLC, SunCal Bickford Ranch, and SunCal Emerald Meadows LLC (such pledges being referred to collectively as the "SunCal I Lien"); (2) LCPI filed Proof of Claim No. 1 against SCC Palmdale in Case No. 08-17224 (the "SCC Palmdale Claim") asserting claims secured by a pledge of SCC Palmdale's interests in Palmdale Hills Property, LLC (the "SCC Palmdale Lien"); (3) LCPI filed Proof of Claim No. 2 against SunCal III in Case No. 08-17249 (the "SunCal III Claim") asserting claims secured by a pledge of SunCal III's ownership interests in certain investment property (the "SunCal III Lien"); and (4) Lehman ALI filed Proof of Claim No. 17 against SunCal Bickford Ranch in Case No. 08- 17231 (the "SunCal Bickford Ranch Claim" and, collectively with the SunCal I Claim, the SCC Palmdale Claim and the SunCal III Claim, the "Claims")[1] asserting claims secured by a second priority deed of trust on certain real and personal

---

[1] "Claims" as used herein shall mean any amendments filed thereto.

property (the "Bickford Lien" and, collectively with the SunCal I Lien, SCC Palmdale Lien and SunCal III Lien, the "Liens");

WHEREAS, the collateral subject to the Liens shall be referred to herein as the "Collateral."

WHEREAS, on June 30, 2009, the Moving Debtors filed the *Motion for Order: (1) Valuing Collateral of Certain Disputed Creditors; (2) Avoiding Certain Disputed Liens Pursuant to 11 U.S.C. §506(d); and (3) Preserving Avoided Lien(s) for the Respective Estates Pursuant to 11 U.S.C. §551* (the "Motion") seeking an order: (a) valuing the Collateral at zero dollars; (b) voiding the Liens; and (c) preserving such voided Liens for the benefit of the Moving Debtors;

WHEREAS, on July 6, 2009, the Lehman Entities filed the *Opposition to Motion for Order: (1) Valuing Collateral of Certain Disputed Creditors; (2) Avoiding Certain Disputed Liens Pursuant to 11 U.S.C. §506(d); and (3) Preserving Avoided Lien(s) for the Respective Estates Pursuant to 11 U.S.C. §551*;

WHEREAS, on July 24, 2009, the Moving Debtors filed the *Reply to Opposition to Motion for Order: (1) Valuing Collateral of Certain Disputed Creditors; (2) Avoiding Certain Disputed Liens Pursuant to 11 U.S.C. §506(d); and (3) Preserving Avoided Lien(s) for the Respective Estates Pursuant to 11 U.S.C. §551*;

WHEREAS, the Lehman Entities and Moving Debtors have agreed to resolve the Motion on the terms set forth below;

NOW THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged), it is hereby stipulated and agreed by and among the Parties as follows:

## STIPULATION

1.      The Collateral shall be valued at $0.00.

2. Notwithstanding the valuation of the Collateral at $0.00, each of the Liens is hereby deemed valid and preserved for the benefit of the Lehman Entities and any other holder of an interest in any of the Liens for the sole purpose of allowing the Lehman Entities and any other holder of any interest in any of the Liens to enforce their rights to obtain any available distribution from the applicable Moving Debtor(s) prior to any distribution to holders of equity interests in such applicable Moving Debtor(s). Except as otherwise allowed under the Bankruptcy Code taking into account that the Collateral is valued at $0.00, the Liens shall not be enforceable for any purpose other than that specifically set forth in the preceding sentence, including but not limited to, expressly not enforceable for the purpose of invoking and/or asserting the automatic stay of any holder of the Liens in its own bankruptcy proceeding based on the Liens, invoking and/or asserting any purported rights under section 1111(b) of the Bankruptcy Code in the applicable Moving Debtor's(s') bankruptcy proceedings based on the Liens, and attempting to assert a priority with respect to any of the allowed unsecured claims against an applicable Moving Debtor based on the Liens.

3. This Stipulation shall have no effect upon the rights of the Lehman Entities or any other holder of any interest in any of the Liens (taking into account that the Collateral is valued at $0.00) or Claims to seek or obtain a distribution in connection with such Liens or Claims for any allowed deficiency claims in connection therewith.

4. Each person signing this Stipulation, including but not limited to any person signing as counsel for a party, hereby represents and warrants that he or she has been duly authorized and has the requisite authority to enter into this Stipulation on behalf of and bind the party on whose behalf they so sign.

5. The Bankruptcy Court shall retain exclusive jurisdiction over any issues arising from or relating to this Stipulation and its enforcement.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6.      This Stipulation may be executed in identical counterparts, any of which may be transmitted by facsimile or email, and each of which shall constitute an original and all of which taken together shall constitute one and the same instrument.

Dated: September __, 2009

PACHULSKI STANG ZIEHL & JONES LLP            WINTHROP COUCHOT

By _____          By _____
   Richard M. Pachulski (CA Bar No. 90073)        Paul J. Couchot (CA Bar No. 131934)
   Dean A. Ziehl (CA Bar No. 84529)               660 Newport Center Drive, Fourth Floor
   10100 Santa Monica Blvd., Suite 1100           Newport Beach, CA 92660
   Los Angeles, CA 90067-4100                     Telephone: (949) 720-4165
   Telephone: (310) 277-6910                      Facsimile: (949) 720-4111
   Facsimile: (310) 201-0760

   WEIL, GOTSHAL & MANGES LLP                     Attorneys for the Jointly Administered
   Edward Soto (admitted *pro hac vice*)          Voluntary Debtors in Possession
   Shai Waisman (admitted *pro hac vice*)
   767 Fifth Avenue
   New York, NY 10153-0119
   Telephone: (212) 310-8000
   Facsimile: (212) 310-8007

   Attorneys for Lehman ALI, Inc. and
   Lehman Commercial Paper Inc.

APPROVED AS TO FORM AND SUBSTANCE:

Dated:    September ___, 2009            IRELL & MANELLA LLP

                        By: _____
                              Alan J. Friedman
                              Kerri A. Lyman

                              Attorneys for Official Unsecured Creditors'
                              Committee of the Voluntary Debtors