Dennis F. Dunne
Wilbur F. Foster, Jr.
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

and

David S. Cohen (admitted *pro hac vice*)
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――x
                                                                      Chapter 11
In re:                                                          :
                                                                      Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC., *et al.*   :
                                                                       (Jointly Administered)
                        Debtors.                        :
―――――――――――――――――――――――――――x

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**IN SUPPORT OF DEBTORS' MOTION TO COMPEL PERFORMANCE**
**BY NORTON GOLD FIELDS LIMITED**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii
PRELIMINARY STATEMENT ............................................................................................ 1
ARGUMENT ........................................................................................................................... 2
    LBHI's Bankruptcy Filing Does Not Excuse Norton Gold's Performance ....................... 2
CONCLUSION ....................................................................................................................... 8

# TABLE OF AUTHORITIES

Page

**CASES**

Benjamin v. Fraser, 343 F.3d 35 (2d Cir. 2003) ........................................................... 6, 7

Caiozzo v. Koreman, 581 F.3d 63 (2d Cir. 2009) ............................................................ 6

INS v. Cardoza-Fonseca, 480 U.S. 421 (1987) ................................................................ 7

J.P. Morgan Chase Bank, N.A. v. Charter Communications Operating, LLC (In re Charter Commc'ns), 419 B.R. 221 (Bankr. S.D.N.Y. 2009) ................................... 7

Lehman Bros. Special Fin. Inc. v. BNY Corp. Trustee Servs. Ltd. (In re Lehman Bros Holdings Inc.), 422 B.R. 407 (Bankr. S.D.N.Y. 2010) ................................. 1, 2, 5, 6, 7

Russello v. United States, 464 U.S. 16 (1983) ................................................................. 6

**STATUTES AND RULES**

11 U.S.C. § 365(e)(1)(B) .............................................................................................. 2, 4

11 U.S.C. § 541(c)(1)(B) .......................................................................................... 1, 2, 4, 5

Pub. L. No. 91-354, § 1(b), 84 Stat. 468 (1970) (Joint Resolution creating the Commission) ................................................................................................................ 2

**OTHER AUTHORITIES**

124 Cong. Rec. H11,055 (daily ed. Sept. 28, 1978) ....................................................... 6

124 Cong. Rec. H11,060 (daily ed. Sept. 28, 1978) ....................................................... 6

H.R. 10792, 93d Cong., §§ 4-601(b), -602(b) (introduced Oct. 9, 1973) ...................... 3

H.R. 31, 94th Cong., §§ 4-601(b), -602(b) (introduced Jan. 14, 1975) ........................ 3

H.R. 32, 94th Cong., §§ 4-601(b), -602(b) (introduced Jan. 14, 1975) ........................ 3

H.R. 6, 95th Cong. (introduced Jan. 4, 1977) ................................................................ 3

H.R. 7330, 95th Cong. (introduced May 23, 1977) ..................................................... 4, 5

H.R. 8200, 95th Cong. (introduced July 11, 1977) ........................................................ 5

H.R. Doc. No. 93-137, pt. 2 (1973) ............................................................................ 2, 3

H.R.16643, 93d Cong., §§ 4-601(b), -602(b) (introduced Sept. 12, 1974) .................. 3

S. 2266, 95th Cong. (1977) ............................................................................................. 5

S. 235, 94th Cong., §§ 4-601(b), -602(b) (introduced Jan. 17, 1975) .......................... 3

S. 236, 94th Cong., §§ 4-601(b), -602(b) (introduced Jan. 17, 1975) .......................... 3

S. 2565, 93d Cong., §§ 4-601(b), -602(b) (introduced Oct. 11, 1973) ......................... 3

S. 4046, 93d Cong., §§ 4-601(b), -602(b) (introduced Sept. 26, 1974) ....................... 3

The Official Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings Inc. ("LBHI") and each of its affiliated debtors in possession (collectively, the "Debtors"), hereby joins in the Debtors' Motion To Compel Performance by Norton Gold Fields Limited of Its Obligations Under an Executory Contract and To Enforce the Automatic Stay (the "Debtors' Motion") and files this statement in support.[1] In support thereof, the Committee adopts the arguments set forth in the Debtors' Motion and respectfully states as follows:

## PRELIMINARY STATEMENT

1. Norton Gold seeks to withhold payments to LBCC based on contractual provisions and arguments that this Court has already considered and rejected. Norton Gold contends that it is entitled to deprive LBCC of these payments by asserting, *inter alia*, that LBCC is not entitled to the protections of section 365(e)(1) of the Bankruptcy Code because the chapter 11 filing of another Debtor, LBHI, was a prepetition Event of Default with respect to LBCC. This Court, however, recently rejected a similar argument in Lehman Bros. Special Fin. Inc. v. BNY Corp. Trustee Servs. Ltd. (In re Lehman Bros. Holdings Inc.), 422 B.R. 407 (Bankr. S.D.N.Y. 2010) [hereinafter LBSF v. BNY], where the Court held that LBSF was entitled to the protections of sections 365(e)(1) and 541(c)(1)(B) of the Bankruptcy Code even if the relevant Event of Default was LBHI's bankruptcy filing. The Court held that the commencement of LBHI's case "entitled LBSF, consistent with the statutory language, fairly read, to claim the protections of the *ipso facto* provisions of the Bankruptcy Code because its ultimate corporate parent and credit support provider, at a time of extraordinary panic in the global markets, had filed a case under the Bankruptcy Code." Id. at 420. Because LBCC is equally entitled to claim these protections, LBHI's bankruptcy filing does not excuse Norton Gold's performance.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Debtors' Motion.

# ARGUMENT

## LBHI's Bankruptcy Filing Does Not Excuse Norton Gold's Performance

2. The Bankruptcy Code generally prohibits the enforcement of contractual *ipso facto* provisions – that is, provisions that purport to terminate or modify a debtor's property interests, executory contracts, or rights or obligations under executory contracts based on "the commencement of a case under" the Bankruptcy Code. 11 U.S.C. §§ 365(e)(1)(B), 541(c)(1)(B). In LBSF v. BNY, this Court held that LBHI's commencement of a case under the Bankruptcy Code "entitled LBSF . . . to claim the protections of the *ipso facto* provisions of the Bankruptcy Code." 422 B.R. at 420. This holding is equally applicable to LBCC in this matter, and is supported not only by the plain language of sections 365(e)(1) and 541(c)(1)(B), but also by their legislative history.

3. The statutory prohibitions on *ipso facto* provisions in sections 365(e)(1) and 541(c)(1)(B) originated in the work of the Commission on the Bankruptcy Laws of the United States (the "Commission"), which was formed to "study, analyze, evaluate, and recommend changes to" the Bankruptcy Act of 1898. See Pub. L. No. 91-354, § 1(b), 84 Stat. 468 (1970) (joint resolution creating the Commission). On June 30, 1973, the Commission filed a two-part report with Congress. The second part, H.R. Doc. No. 93-137, pt. 2 (1973), consisted of "the text of proposed statutory changes to effect [the Commission's] recommendations, including a new 'Bankruptcy Act of 1973.'" Id. at Letter of Transmittal.

4. Section 4-601 of the Commission's Proposed Bankruptcy Act of 1973 (the "Proposed Act"), titled "Property of the Estate," included the following provision: "Invalidity of Certain Restrictions and Forfeitures. Any prohibition on the transfer of property by the debtor and any provision for forfeiture or termination conditioned on *the filing of a petition* are unenforceable as to property of the estate . . . ." Id. § 4-601(b) (emphasis added). Section 4-602

2

of the Proposed Act, titled "Executory Contracts and Unexpired Leases," included a subsection, titled "Unenforceability of Certain Contractual Provisions," that limited the enforceability of "[a] provision in a contract or lease, or in any law applicable thereto, which terminates or modifies, or permits a party other than the debtor to terminate or modify, the contract or lease because of the insolvency of the debtor or *the commencement of a case under this Act by or against the debtor*." Id. § 4-602(b) (emphasis added).

5. In the Ninety-Third and Ninety-Fourth Congresses, a number of bankruptcy bills were introduced that included, verbatim,[2] these provisions of the Commission's Proposed Act. See H.R. 10792, 93d Cong., §§ 4-601(b), -602(b) (introduced Oct. 9, 1973); S. 2565, 93d Cong., §§ 4-601(b), -602(b) (introduced Oct. 11, 1973); H.R. 16643, 93d Cong., §§ 4-601(b), -602(b) (introduced Sept. 12, 1974); S. 4046, 93d Cong., §§ 4-601(b), -602(b) (introduced Sept. 26, 1974); H.R. 31, 94th Cong., §§ 4-601(b), -602(b) (introduced Jan. 14, 1975); H.R. 32, 94th Cong., §§ 4-601(b), -602(b) (introduced Jan. 14, 1975); S. 235, 94th Cong., §§ 4-601(b), -602(b) (introduced Jan. 17, 1975); S. 236, 94th Cong., §§ 4-601(b), -602(b) (introduced Jan. 17, 1975).

6. Subsequent bills in the Ninety-Fifth Congress, however, used new section numbers for, and changed the text of, these provisions. The first was H.R. 6, 95th Cong. (introduced Jan. 4, 1977), which included the following provisions:

> Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease may not be terminated or modified, and any right or obligation under an executory contract or unexpired lease may not be terminated or modified, at any time because of – (1) the insolvency or financial condition of the debtor at any time before the closing of the case; (2) *the commencement of the case under*

---

[2] One exception, which is not relevant here, is that in their proposed section 4-602(b), most of these bills used the words "under this title" rather than "under this Act".

> *this title*; or (3) the appointment of or taking possession by a custodian before such commencement.

Id. § 365(e) (emphasis added) (paragraphing omitted).

> An interest of the debtor in property becomes property of the estate under subsection (a)(1), (2), or (5) of this section notwithstanding any provision – (1) that restricts or conditions transfer of such interest by the debtor; or (2) that is conditioned on the insolvency or financial condition of the debtor, on *the commencement of a case under this title concerning the debtor*, or on the appointment of or the taking possession by a custodian, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

Id. § 541(c) (emphasis added) (paragraphing omitted).

7. A later, superseding bill, H.R. 7330, 95th Cong. (introduced May 23, 1977), revised section 365(e) to read as follows:

> Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease, other than a contract or lease of the kind specified in subsection (c) of this section, may not be terminated or modified, and any right or obligation under an executory contract or unexpired lease, other than a contract or lease of the kind specified in subsection (c) of this section, may not be terminated or modified, at any time after the commencement of the case solely because of *a default of a kind specified in [section 365(b)(2)]*.

Id. § 365(e) (emphasis added) (paragraphing omitted). Section 365(b)(2), in turn, specified the following kinds of default: "(A) the insolvency or financial condition of the debtor at any time before the closing of the case; (B) the *commencement of the case* under this title; or (C) the appointment of or taking possession by a custodian before such commencement."

Id. § 365(b)(2) (emphasis added).

8. H.R. 7330 also revised section 541(c) to read as follows:

> (1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (2), or (5) of this section notwithstanding any provision – (A) that restricts or conditions transfer of such

4

> interest by the debtor; or (B) that is conditioned on the insolvency or financial condition of the debtor, on *the commencement of a case under this title concerning the debtor*, or on the appointment of or the taking possession by a custodian, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property. (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

Id. § 541(c) (emphasis added) (paragraphing omitted).

9. H.R. 7330 was superseded by H.R. 8200, 95th Cong. (introduced July 11, 1977), which included (see id. §§ 365(b)(2), (e), 541(c)), provisions identical to their counterparts in H.R. 7330, with one exception: whereas section 541(c)(1)(B) of H.R. 7330 referred to "the commencement of a case under this title *concerning the debtor*" (emphasis added), section 541(c)(1)(B) of H.R. 8200 dropped "concerning the debtor," and instead referred more generally to "the commencement of a case under this title." See LBSF v. BNY, 422 B.R. at 419.

10. Sections 365(e) and 541(c) of (a) S. 2266, 95th Cong. (1977), as introduced in the Senate on October 31, 1977, and reported on July 14 and August 10, 1978, respectively, and (b) the versions of H.R. 8200 that were reported and passed by the House on September 8, 1977, and February 8, 1978, respectively, all tracked, in relevant part, their counterparts in the original version of H.R. 8200. In particular, in each of these four subsequent bills, (a) section 365(e), incorporating section 365(b)(2)(B) by reference, applied to a default that was a breach of a provision relating to "the commencement of *the* case under this title" (emphasis added), and (b) section 541(c)(1)(B) referred to "the commencement of *a* case under this title" (emphasis added).

11. In the final version of the bankruptcy bill, which both the House and Senate agreed to and approved, section 541(c)(1)(B) continued to refer to "the commencement of

5

*a* case under this title." See 124 Cong. Rec. H11,060 (daily ed. Sept. 28, 1978); see also LBSF v. BNY, 422 B.R. at 419. Section 365(e), however, was revised (a) to eliminate the reference to section 365(b)(2), and (b) to add the provisions that are now at section 365(e)(1)(A), (B), and (C), thereby changing the reference to "the commencement of *the* case under this title" to "the commencement of *a* case under this title." See 124 Cong. Rec. H11,055 (daily ed. Sept. 28, 1978); see also LBSF v. BNY, 422 B.R. at 419. Section 365(b)(2)(B) was similarly amended. 124 Cong. Rec. at H11,055 (daily ed. Sept. 28, 1978).

12. As this Court has noted, the substitution of "a case" for "the case" in these provisions is an indication of Congressional intent. LBSF v. BNY, 422 B.R. at 419 ("This initial use and later rejection of limiting language demonstrates that Congress considered, but ultimately rejected, drafting sections 365(e)(1) and 541(c)(1)(B) in a manner that would have expressly restricted their application to the bankruptcy case of the debtor counterparty.").

13. This conclusion is supported by general principles of statutory construction that have been followed by the Second Circuit and other courts. In Benjamin v. Fraser, 343 F.3d 35, 46 (2d Cir. 2003), overruled in part on other grounds by Caiozzo v. Koreman, 581 F.3d 63 (2d Cir. 2009),[3] the Second Circuit noted that "[w]ell-settled principles of statutory construction dictate that '[w]here Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended.'" 343 F.3d at 46 (quoting Russello v. United States, 464 U.S. 16, 23 (1983)). The Second Circuit explained that "[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it

---

[3] Benjamin was overruled in part on a point that is not relevant to the legislative history analysis.

has earlier discarded in favor of other language." Id. at 46-47 (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 442-43 (1987)).

14. This interpretation of the legislative history of sections 365(e)(1) and 541(c)(1)(B) is also supported by the treatment of cross-default provisions in bankruptcy. As this Court stated in J.P. Morgan Chase Bank, N.A. v. Charter Communications Operating, LLC (In re Charter Communications), 419 B.R. 221 (Bankr. S.D.N.Y. 2009), "a determination to enforce a cross-default provision necessarily is fact-specific," id. at 251, and in an "integrated enterprise . . . the financial condition of one affiliate affects the others," id.; see LBSF v. BNY, 422 B.R. at 420. The Court held that an event of default with "respect to a holding company was necessarily connected both factually and contractually to the financial condition of" its affiliate, thus rendering a cross-acceleration event of default an *ipso facto* default "that either is ineffective and unenforceable or does not need to be cured." Charter Communications, 419 B.R. at 251.

15. As with LBHI and LBSF, the financial conditions of LBHI and LBCC are similarly connected. See LBSF v. BNY, 422 B.R. at 420 ("[T]he Debtors are perhaps the most complex and multi-faceted business ventures ever to seek the protection of chapter 11. . . . Their various corporate entities comprise an 'integrated enterprise' and, as a general matter, 'the financial condition of one affiliate affects the others.'" (quoting Charter Communications, 419 B.R. at 251)). And as with LBSF, LBHI's bankruptcy filing triggered the protections of the Bankruptcy Code's *ipso facto* provisions for LBCC.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court grant the Debtors' Motion, and grant such other and further relief as the Court deems just.

Dated: New York, New York
May 10, 2010

    MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

    By: /s/ Dennis F. Dunne
    Dennis F. Dunne
    Wilbur F. Foster, Jr.
    Evan R. Fleck
    1 Chase Manhattan Plaza
    New York, NY 10005
    Telephone: (212) 530-5000
    Facsimile: (212) 530-5219

    David S. Cohen (admitted *pro hac vice*)
    1850 K Street N.W., Suite 1100
    Washington, DC 20006
    Telephone: (202) 835-7500
    Facsimile: (202) 835-7586

    Counsel for the Official Committee
    of Unsecured Creditors of Lehman Brothers
    Holdings, Inc., et al.