UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re:                                                      :     Chapter 11 Case No.
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                    :     08-13555 (JMP)
                                                            :
                                    Debtors.                :     (Jointly Administered)
                                                            :
------------------------------------------------------------x

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr.P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| Jade Tree I, L.L.C. | JPMorgan Chase Bank, N.A. |
|---|---|
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee should be sent:

P.O. Box 6463
New York, New York 10150
E-mail: loans@jadetree.net
Phone: N/A
Last Four Digits of Acct #: _____

With a copy to:
Esbin & Alter, LLP
497 South Main Street
New City, NY 10956
Attention: Scott L. Esbin
Phone: 845-634-7909
Facsimile: 845-634-4160
E-Mail: sesbin@esbinalter.com

Court Claim # (if known): 27691
Amount of Claim: $3,109,961.15
Date Claim Filed: September 22, 2009

**PLEASE SEE ATTACHED DOCUMENTS**

Name and Address where transferee payments should be sent (if different from above): N/A

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____[signature]_____    Date: 5/12/2010
Transferee/Transferee's Agent
Scott L. Esbin/Authorized Signatory

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.*

# EXHIBIT A

## EVIDENCE OF TRANSFER OF CLAIM

TO: Clerk, United States Bankruptcy Court, Southern District of New York

AND TO: JPMorgan Chase Bank, N.A.

JPMorgan Chase Bank, N.A., a national banking association under the laws of the United States, having offices located at Mail Code: NY1-A436, 1 Chase Manhattan Plaza, Floor 26, New York, New York 10005, Attn: Susan McNamara ("Assignor"), for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and pursuant to the terms of an Assignment of Claim Agreement dated as of the date hereof, does hereby certify that it has unconditionally and irrevocably sold, transferred and assigned to **Jade Tree I, L.L.C.**, with an address of P.O. Box 6463, New York, New York 10150 ("Buyer"), all right, title and interest in and to the claims of Assignor against **Lehman Brothers Holdings Inc.** (and its affiliates) (originally owned by **TRG Local Currency Opportunity Master Fund, Ltd.**) in the amount of $3,109,961.15, docketed as Claim No. 27691 (the "Claim") in the case entitled *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (Jointly Administered) (JMP), pending in the United States Bankruptcy Court, Southern District of New York.

Assignor hereby waives any notice or hearing requirements imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, and stipulates that an order may be entered recognizing this transfer and sale of the Claim as an unconditional assignment and sale and Assignee herein as the valid owner of the Claim. You are hereby requested to make all future payments and distributions, and to give all notices and other communications, in respect to the Claim to Assignee.

IN WITNESS WHEREOF, dated as of the 11 day of May, 2010.

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| JPMORGAN CHASE BANK, N.A. | JADE TREE I, L.L.C. |
| By: _____ | By: _____ |
| (Signature of authorized signatory) | (Signature of authorized signatory) |
| Name: Michael Economos | Name: Scott L. Esbin |
| Title: Authorized Signatory | Title: Authorized Signatory |

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 || **PROOF OF CLAIM** |
|---|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)    0000027691 |
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Holdings Inc. | Case No. of Debtor<br>Case No. 08-13555 (JMP) | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br><br>TRG Local Currency Opportunity Master Fund, Ltd.<br>c/o TRG Management LP<br>280 Park Avenue<br>27th Floor West<br>New York, New York 10017<br>Attention: Bruce Wolfson<br>Bruce.Wolfson@rohatyngroup.com<br>Telephone number: 212-984-2900<br>Email address: Bruce.Wolfson@rohatyngroup.com |
|---|

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:
Email address:

1. **Amount of Claim as of Date Case Filed:** $ See attached.
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*
*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** See attached.
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $_____    Annual Interest Rate ____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____    Basis for perfection: _____
Amount of Secured Claim: $_____    Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

Amount entitled to priority:

$_____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

**FILED / RECEIVED**

**SEP 2 2 2009**

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

Date: 9/21/09

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Guido Mosca - Authorized Signatory

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## **EXHIBIT A**

**I.    Introduction**

1.    On September 15, 2008, Lehman Brothers Holdings Inc. (the "Debtor") commenced a voluntary case under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.    On December 16, 2008, the Bankruptcy Court entered the Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (the "Order").

3.    This proof of claim (this "Proof of Claim") is filed in the Debtor's bankruptcy case by TRG Local Currency Opportunity Master Fund, Ltd. ("TRG Local"). TRG Local has a claim (the "Claim") against the Debtor on account of that certain Termination Agreement ("Termination Agreement"), dated as of September 16, 2009 ("Termination Date"), by and between TRG Local, the Debtor and Lehman Brothers Special Financing Inc. ("LBSF"; together with TRG Global and the Debtor, the "Parties"). The Termination Agreement is attached hereto.

4.    Pursuant to the Termination Agreement, the Parties agreed to terminate and/or acknowledge the termination, as of the Termination Date, of each transaction that was governed by that certain ISDA Master Agreement, dated April 28, 2005 (together with certain schedules, documents, confirmations and a guaranty of the obligations of LBSF by LBHI, the "Agreement Documents"). In addition, the Parties agreed to a settlement amount (the "Settlement Amount"), pursuant to the Order, in favor of TRG Local in respect of claims arising under the Agreement Documents.

**II.    The Claim**

5.    TRG Local hereby asserts the Claim for the Settlement Amount in the amount of $ 3,109,961.15.

**III.    General**

6.    TRG Local does not waive any right or rights of action that it has or may have against the Debtor, LBSF or any other person or persons. TRG Local reserves the right to amend or supplement this Proof of Claim in any manner.

7.    By filing this Proof of Claim, TRG Local does not submit itself to the jurisdiction of the Bankruptcy Court for any purpose other than with respect to this Proof of Claim.

8.    This Proof of Claim is not intended to be, and shall not be construed as: (i) an election of remedies; (ii) a waiver of any defaults; (iii) a waiver or limitation of any of TRG Local's rights, remedies, claims or interests under applicable law against the Debtor, LBSF or any other person or entity; (iv) a waiver of any setoff or recoupment rights under applicable law; (v) a waiver of any netting rights under applicable law; (vi) a waiver of any rights to assert that all or any portion of the amounts claimed for are being held by the Debtor, as bailee, or in constructive trust; (vii) a waiver of TRG Local's property or ownership rights (legal or equitable); or (viii) a waiver of TRG Local's legal, equitable or beneficial interests.

9.    All notices and communications concerning this Proof of Claim should be addressed as follows:

        TRG Local Currency Opportunity Master Fund, Ltd.
        c/o TRG Management LP
        280 Park Avenue
        27th Floor West
        New York, New York 10017
        Attention: Bruce Wolfson
        (212) 984-2900
        Bruce.Wolfson@rohatyngroup.com

and to:

        Azam Aziz Esq.
        Solomon Noh Esq.
        Shearman & Sterling LLP
        599 Lexington Avenue
        New York, New York 10022
        212-848-4000
        aaziz@shearman.com
        snoh@shearman.com

Dated as of September 21, 2009

## TERMINATION AGREEMENT

This Termination Agreement (the "Termination Agreement") is made and entered into as of the 16th day of September, 2009, by and between TRG Local Currency Opportunity Master Fund, Ltd. ("Counterparty") and Lehman Brothers Special Financing Inc. ("Lehman"), and Lehman Brothers Holdings Inc. ("Holdings") as credit support provider (each of the foregoing a "Party" and collectively the "Parties").

RECITALS:

WHEREAS, the Parties entered into one or more transactions (each a "Transaction") that were governed by a 1992 ISDA Master Agreement, dated as of April 28, 2005, which included certain schedules, documents, confirmations and a guaranty of the obligations of Lehman by Holdings (collectively, the "Agreement Documents").

WHEREAS, commencing on September 15, 2008 and thereafter, Holdings and certain of its affiliates, including Lehman, each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (collectively, the "Bankruptcy Cases").

WHEREAS, the Parties wish to terminate and/or acknowledge the termination of each Transaction under Agreement Documents as of September 16, 2009.

WHEREAS, on December 16, 2008 the court having jurisdiction over the Bankruptcy Cases entered an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption or Assignment of Prepetition Derivative Contracts (the "Order").

WHEREAS, as of the date hereof, the Parties have agreed a settlement amount in favor of Counterparty in the amount of $3,109,961.15 (the "Settlement Amount") in respect of the claims arising under the Agreement Documents.

NOW, THEREFORE, in consideration of the recitals set forth above and promises made herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

Section 1.   Allowance of General Unsecured Claim. In consideration of the termination of the Transactions under the Agreement Documents by Counterparty, Lehman and Holdings hereby agree to the allowance of general, unsecured claims against each of them in their respective chapter 11 cases (the "Claim Allowance"), in favor of Counterparty in the amount of the Settlement Amount (the "Allowed Claims") in full and complete satisfaction of all of the claims of Counterparty under the Agreement Documents and the Transactions thereunder; provided, however, that the aggregate recovery of Counterparty in respect of the Allowed Claims shall not exceed the Settlement Amount

Section 2.   Release. In consideration of each other Party's execution of this Termination Agreement and the Claim Allowance, each Party on behalf of itself and any other party, person or entity claiming under or through it, hereby generally releases, discharges and

1

acquits each other Party, and its respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "Released Party"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, other than the Allowed Claim and the rights and obligations of the Parties set forth under this Termination Agreement, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Agreement Documents or the Transactions thereunder, their negotiation, execution, performance, any breaches thereof, or their termination.

Section 3. Representations. Each Party represents and warrants to each other Party that (i) the execution, delivery, and performance by such Party of this Termination Agreement are within the powers of such Party and have been duly authorized by all necessary action on the part of such Party and (ii) this Termination Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Termination Agreement, (iv) it has had the opportunity to be represented and advised by legal counsel in connection with this Termination Agreement, which it enters voluntarily and of its own choice and not under coercion or duress, (v) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation that any of the other Parties will disclose facts material to the Agreement Documents or this Termination Agreement, and (vii) it knowingly waives any and all claims that this Termination Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this Termination Agreement based upon presently existing facts, known or unknown. Additionally, Lehman and Holdings represent and warrant to Counterparty that this Termination Agreement is being entered into in accordance with the terms of the Order. The Parties agree and stipulate that each Party is relying upon the representations and warranties in this Section in entering into the Termination Agreement. Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this Termination Agreement. These representations and warranties shall survive the execution of this Termination Agreement indefinitely without regard to statutes of limitations.

Section 4. Setoff. Counterparty agrees that it will not, nor will the Counterparty permit any affiliate or third party to set-off, recoup, appropriate, or otherwise apply any deposits (general, special, time or demand, provisional or final) in any currency, or any other credits, indebtedness or claims, in any currency, whether direct or indirect, absolute or contingent, matured or unmatured, that is held or owing by the Counterparty or any third party or affiliate against the Allowed Claims and Counterparty hereby irrevocably and unconditionally waives any and all rights to do so, whether such rights arise by virtue of contract or law.

Section 5.     Execution in Counterparts. This Termination Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 6.     Effectiveness. This Termination Agreement shall become effective upon execution hereof by each of the Parties. The Transactions that are not already terminated according to their terms will terminate as of the effective date of this Termination Agreement.

Section 7.     Governing Law. This Termination Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York, without regard for conflicts of laws principles.

Section 8.     Special Provision for Unknown Claims. All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 2. Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Section 9.     Successors and Assigns. The provisions of this Termination Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

Section 10.    Amendment. This Termination Agreement may only be amended, modified, superseded or canceled and any of the terms, covenants, representations, warranties or conditions hereof may be waived only by an instrument in writing signed by each of the Parties.

Section 11.    Entire Agreement. This Termination Agreement constitutes the entire agreement and understanding of the Parties relating to the subject matter hereof and supersede all prior agreements and understandings relating to the subject matter hereof.

Section 12.    Construction. This Termination Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Termination Agreement or any of its provisions against the Party responsible for drafting this Termination Agreement will not apply in any construction or interpretation of this Termination Agreement.

*[Signature pages follow]*

3

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Termination Agreement on the date first written above.

TRG LOCAL CURRENCY OPPORTUNITY MASTER FUND, LTD.

By: _____
Name: Guido Mosca
Title: Authorized Signatory

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____
Name:
Title:

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Name:
Title:

4

H A N D   D E L I V E R Y

RECEIVED BY: _[signature]_

FILED / RECEIVED
SEP 2 2 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

DATE

TIME: 2:35