**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 Case No. |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
|  | : |  |

------------------------------------------------------------------x

## AFFIDAVIT AND DISCLOSURE STATEMENT OF ROY H. MARCH,

## ON BEHALF OF EASTDIL SECURED, L.L.C.

STATE OF NEW YORK          )
                                            ) ss
COUNTY OF NEW YORK     )

Roy H. March, being duly sworn, upon his oath, deposes and says:

1.      I am the Chief Executive Officer of Eastdil Secured, L.L.C., with a principal office located at 40 West 57th Street, 22nd Floor, New York, NY 10019 (the "Firm").

2.      Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), have requested that the Firm provide real estate financial advisory services with respect to a strategic review of certain real estate assets held by the Debtors, and the Firm has consented to provide such services.

3.      I submit this Affidavit in accordance with the procedures set forth in the order entered November 5, 2008 authorizing the Debtors to employ professionals utilized in the ordinary course of business [Docket No. 1394] in connection with the Firm's engagement with

the Debtors, pursuant to sections 105(a), 327(a), 328, 330 and 504 of title 11 of the United

States Code, 11 U.S.C. § 101 *et seq.* (the "<u>Bankruptcy Code</u>").

4.     The Firm may have performed services in the past and may perform

services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties

in interest in the Debtors' chapter 11 cases.  As part of its customary practice, the Firm is

retained in transactions involving many different parties, some of whom may represent or be

claimants or employees of the Debtors, or other parties in interest in these chapter 11 cases.  The

Firm is not currently performing services for any such party in interest in connection with these

chapter 11 cases.  In addition, the Firm does not have any relationship with any such party in

interest, their attorneys, or accountants that would be adverse to the Debtors or their estates.

5.     Neither I, nor any professional employed by the Firm, has agreed to share

or will share any portion of the compensation to be received from the Debtors with any other

person other than the regular employees of the Firm; provided that the Firm is a wholly owned

indirect subsidiary of Wells Fargo & Company, and in connection therewith and in the ordinary

course of operations, income of the Firm is distributed to its direct and indirect shareholders.

6.     Neither I, nor any professional employed by the Firm, insofar as I have

been able to ascertain, holds or represents any interest adverse to the Debtors or their estates

except that (i) the wife of one managing director at the Firm had worked for the Debtors and has

a claim against the Debtors' estate for certain pension monies, which we believe is being

handled by the Pension Benefit Guarantee Corporation, and (ii) certain employees of the Firm

had aggregate investments of approximately $450,000 in original principal amount in certain

structured note products of the Debtors, the claims for which are being asserted by the trustee

administering the structured note products on behalf of all such noteholders, including the

aforementioned Firm employees, and no independent action is required to be taken by any such employees.  As noted above, the Firm is a wholly owned indirect subsidiary of Wells Fargo & Company, and Wells Fargo & Company and certain of its subsidiaries, including but not limited to Wells Fargo Bank, N.A. and Wachovia Bank, N.A., but not including the Firm, hold substantial claims in the Debtors' chapter 11 cases.  Certain subsidiaries of Wells Fargo & Company, but not the Firm, also hold capital stock of the Debtors.

7.    The Debtors owe the Firm $0 for prepetition services.

8.    If at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Affidavit.

By: _____

Roy H. March
Chief Executive Officer
Eastdil Secured, L.L.C.

Subscribed and sworn to before me
this 26 day of April , 2010

_____
Notary Public

VICTORIA R. ROBERTS
Notary Public, State of New York
No. 43-4523186
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires July 31, 2010.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                          :
In re                                     :          Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :          08-13555 (JMP)
                                          :
                              Debtors.    :          (Jointly Administered)
                                          :
                                          :
---------------------------------------------------------------x

## RETENTION QUESTIONNAIRE

TO BE COMPLETED BY PROFESSIONALS EMPLOYED BY LEHMAN
BROTHERS HOLDINGS INC. OR ANY OF ITS DEBTOR AFFILIATES (collectively,
the "Debtors")

DO NOT FILE THIS QUESTIONNAIRE WITH THE COURT.
RETURN IT FOR FILING BY THE DEBTORS, TO:

    Weil, Gotshal & Manges LLP
    767 Fifth Avenue
    New York, New York 10153
    Attn:  Jennifer Sapp
          Christopher Stauble

All questions **must** be answered.  Please use "none," "not applicable," or "N/A," as
appropriate.  If more space is needed, please complete on a separate page and attach.

    1.     Name and address of firm:

        Eastdil Secured, L.L.C.
        40 West 57th Street, 22nd Floor
        New York, NY 10019

    2.     Date of retention:   April 19, 2010

    3.     Type of services provided (accounting, legal, etc.):

        Real estate financial advisory services

4.      Brief description of services to be provided:

Eastdil Secured, L.L.C. ("Eastdil") will provide the Debtors with real estate financial advisory services with respect to a strategic review of certain real estate assets ("Assets") held by the Debtors' estates. Eastdil will review relevant financial and market information relating to the Assets, perform certain financial analyses with respect to the Assets, and prepare reports detailing various disposition and strategic options for the Assets, all as more fully described in the engagement letter between Lehman Brothers Holdings Inc. ("LBHI") and Eastdil, dated April 19, 2010 and executed  as of April 22, 2010, attached hereto as <u>Exhibit 1</u> (the "Engagement Letter").

5.      Arrangements for compensation (hourly, contingent, etc.)

Pursuant to the Engagement Letter, LBHI agrees to pay Eastdil a monthly non-refundable fee in the amount of $100,000.

(a)      Average hourly rate (if applicable):  N/A

(b)      Estimated average monthly compensation based on prepetition retention (if firm was employed prepetition): N/A

6.      Prepetition claims against the Debtors held by the firm:

Amount of claim:        N/A

Date claim arose:        N/A

Source of Claim:        N/A

7.      Prepetition claims against the Debtors held individually by any member, associate, or professional employee of the firm:

Name: N/A

Status: N/A

Amount of Claim:  N/A

Date claim arose:  N/A

Source of claim:  N/A

Eastdil Secured, L.L.C. is a wholly owned indirect subsidiary of Wells Fargo & Company, and Wells Fargo & Company and certain of its

subsidiaries, including but not limited to Wells Fargo Bank, N.A. and Wachovia Bank, N.A., hold substantial claims in the Debtors' chapter 11 cases. Certain professional employees of Eastdil Secured, L.L.C. are dually employed by Wells Fargo Securities, L.L.C. and Wells Fargo Securities International Limited, each of which holds a claim in the Debtors' chapter 11 cases. Neither Eastdil Secured, L.L.C. nor any of its professional employees holds any prepetition claims against the Debtors, except that (i) the wife of one managing director at the Firm had worked for the Debtors and has a claim against the Debtors' estate for certain pension monies, which we believe is being handled by the Pension Benefit Guarantee Corporation, and (ii) certain employees of the Firm had aggregate investments of approximately $450,000 in original principal amount in certain structured note products of the Debtors, the claims for which are being asserted by the trustee administering the structured note products on behalf of all such noteholders, including the aforementioned Firm employees, and no independent action is required to be taken by any such employees.

Stock of the Debtors currently held by the firm:

Kind of shares:  N/A

No. of shares:   N/A

8.    Stock of the Debtors currently held individually by any member, associate, or professional employee of the firm:

Name:  N/A

Status:  N/A

Kind of shares:  N/A

No. of shares:  N/A

Neither Eastdil Secured, L.L.C. nor any of its professional employees holds any stock of the Debtors. As mentioned above, Eastdil Secured, L.L.C. is a wholly owned indirect subsidiary of Wells Fargo & Company, and certain other subsidiaries of Wells Fargo & Company hold capital stock of the Debtors.

9.    Disclose the nature and provide a brief description of any interest adverse to the Debtors or to their estates with respect to the matters on which the above-named firm is to be employed.

Eastdil Secured, L.L.C. is not aware of any interest it has in the Assets or in any matter relating to its engagement by the Debtors that is adverse to the interests of the Debtors or their estates. If the Debtors request that Eastdil Secured, L.L.C. provide services with respect to any Asset as to which, after review, Eastdil Secured, L.L.C. determines it does have an interest that is adverse to the Debtors, Eastdil Secured, L.L.C. will promptly update its disclosure to the Debtors as set forth in this Questionnaire.

11.    Name of individual completing this form:

Roy H. March, Chief Executive Officer

**EXHIBIT 1**
(Engagement Letter)



40 WEST 57th STREET, 22nd FLOOR
NEW YORK, NY 10019
TEL 212 315-7200    FAX 212 315-3602

April 19, 2010

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, New York 10020
Attn: Jeffrey Fitts

**Re:      Advisory Retention**

Ladies and Gentlemen:

The purpose of this letter agreement (this "Agreement") is to describe the terms and conditions under which Eastdil Secured, L.L.C. ("Eastdil") is retained by Lehman Brothers Holdings, Inc. ("LBHI") to provide financial advisory services with respect to a strategic review of certain assets, to be determined by LBHI from time to time in its sole discretion, held by the estate of LBHI or its affiliates, including fee interests, limited partnership and joint venture interests, as well as mortgage, mezzanine and other debt interests in various real properties (collectively with all underlying collateral, the "Assets"). LBHI shall from time to time, during the Term (as defined below), notify Eastdil of the specific Assets for which it desires Eastdil's services hereunder; provided, however that LBHI shall so designate not less than 50 such LBHI assets during the Term of this Agreement.

We understand that LBHI and certain of its affiliates are debtors in certain cases under filed under title 11 of the United States Code (the "Bankruptcy Code"), which are being jointly administered in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under Case No. 08-13555 (JMP) (the "Lehman Cases").

      1.    <u>Term</u>. The term of Eastdil's engagement hereunder shall commence on the date hereof and shall continue for 6 months (the "Term"). Notwithstanding the foregoing, LBHI shall have the right to terminate the engagement at any time upon thirty days' written notice or to extend the engagement on a month to month basis. Notwithstanding any such expiration or termination, the provisions in this Agreement regarding Term, Fees and Expenses, Use of Information, Confidentiality, Indemnity and Limitation of Liability, Limitation of Scope, Remedies for Breach and Prevailing Party, Governing Law and Waiver of Trial by Jury, and Miscellaneous shall survive and remain in full force and effect.

      2.    <u>Services</u>.

A. Pursuant to its engagement hereunder, Eastdil will perform the following services:

      i)    Review initial Asset information and determine the necessary scope of due diligence;

*486227.11*

ii)    Perform due diligence with a focus on:

    (a)    reviewing relevant information relating to the Assets provided by LBHI to ascertain the economic and financial terms of LBHI's interest in each Asset;

    (b)    reviewing and identifying, to the extent reasonably practicable, the other owners in the capital structure of each Asset; and

    (c)    as specifically requested by LBHI, conducting property tours of Assets.

iii)    Perform financial analysis of each Asset, as follows:

    (a)    Review the Asset's geographic location, credit parameters and other relevant characteristics and perform such underwriting and other analyses as Eastdil deems appropriate and use its market knowledge and empirical data, along with its detailed loan and property valuation models and the application of tailored pricing parameters, to develop (i) an estimated net present value for each Asset based on future cash flows and residual asset values and (ii) an estimated market value range for each of the Assets; it being acknowledged and agreed that (x) any such analysis will represent Eastdil's view only, and will not constitute a representation of warranty, expressed or implied, by Eastdil as to future events or any value or sale price that might be obtained in an actual sale or disposition to a third party and (y) the valuations will not be MAI appraisals, as they will not have "three approaches to value" or other information commonly seen in a typical MAI appraisals.

    (b)    Upon completing the Asset analyses described above, Eastdil will, in conjunction with LBHI and its professionals, prepare an Analysis and Strategy Report (a "Report") for each Asset or pool of Assets, as appropriate. Each Report will include a summary of Eastdil's analyses performed under (a) above as well as proposals for alternative sale or disposition strategies for each Asset (each, a "Transaction"). It is anticipated that each Report will be delivered within forty five (45) days after Eastdil has received all relevant Asset information for such Asset.

B.    In the event LBHI wishes to engage in a Transaction based on any Eastdil Report with respect to all or any of the Assets, LBHI may, but shall have no obligation, to engage Eastdil, on an exclusive basis, to act as LBHI's financial advisor in connection with such Transaction. Any decision by Eastdil to act as financial advisor with respect to such Transaction(s) would be contained in a separate agreement, which agreement would contain, among other things, provisions for customary fees for transactions of similar size and nature and indemnification of

Eastdil and will be subject to Bankruptcy Court approval. Eastdil's services in such regard would be negotiated in good faith by the parties, but would likely include:

i)    Preparing marketing materials, which will be subject to the review and approval of LBHI;

ii)    Actively and diligently marketing the Asset to potential interested parties, responding to questions and facilitating investors' due diligence;

iii)    Receiving and analyzing bids for the Asset from potential purchasers; and

iv)    Assisting in the negotiation of the financial aspects of any Transaction agreements.

C.    In addition to sale and disposition Transactions, LBHI may desire, but shall have no obligation, to engage Eastdil for advisory services to pursue Alternative Strategies, which are defined to include but not be limited to, negotiations with borrowers for restructurings or discounted payoffs, joint venture structures for Assets, purchasing other pieces in the capital stack of an Asset, and/or other recapitalization strategies and should LHBI desire to pursue any such Alternative Strategy, LHBI may engage Eastdil, on an exclusive basis, to act as LBHI's financial advisor in connection with such Alternative Strategy on terms that would be contained in a separate agreement, which agreement would contain, among other things, provisions for customary fees for transactions of similar size and nature and indemnification of Eastdil and shall be subject to Bankruptcy Court approval.

3.    **Fees; Expenses**.

A.    <u>Monthly Fees</u>. In connection with its engagement hereunder, LBHI agrees to pay Eastdil a monthly non-refundable fee in the amount of $100,000 (the "Monthly Fees").

B.    <u>Transaction Fees</u>: The fee for Transaction and Alternative Strategy services will be negotiated for each Asset at the time of any engagement of Eastdil for such Asset.

C.    <u>Expenses</u>. LBHI hereby agrees, from time to time upon request and upon expiration or termination of this Agreement, to promptly reimburse Eastdil for all reasonable travel and other expenses incurred in connection with Eastdil's engagement hereunder provided that any such travel and other expenses shall be subject to the prior written approval of LBHI and shall otherwise be in accordance with LBHI's travel and expense policy. Monthly Fees and the travel and expenses shall be invoiced by Eastdil monthly and be paid by LBHI within thirty (30) days of receipt. Eastdil shall provide LBHI with copies of the invoices for all reimbursable expenses.

4.    **Use of Information**. LBHI will furnish Eastdil with such information as

Eastdil reasonably requests in connection with the performance of its services hereunder. LBHI understands, acknowledges and agrees that, in performing its services hereunder, Eastdil will use and rely entirely upon such information as well as publicly available information and that Eastdil does not assume responsibility for independent verification of the accuracy or completeness of any information, whether publicly available or otherwise furnished to it, concerning, including, without limitation, any financial information, forecasts or projections considered by Eastdil in connection with the provision of its services. Accordingly, Eastdil shall be entitled to assume and rely upon the accuracy and completeness of all such information and shall not be required to conduct a physical inspection of any of the Assets, or to prepare or obtain any independent appraisal of any of the Assets, or to make any determination as to the solvency of any party. With respect to any financial forecasts or projections used by Eastdil in its analyses that are made available to Eastdil by LBHI or any manager or other party with an interest in any Asset, Eastdil shall be entitled to assume that such forecasts or projections have been reasonably prepared and reflect the best currently available estimates and judgments of LBHI or such other party. If any information provided to Eastdil by LBHI or any information becomes, to the knowledge of LBHI, inaccurate, incomplete or misleading in any material respect during Eastdil's engagement hereunder, LBHI shall so advise Eastdil.

    **5.**    **Confidentiality**.  (a)  In connection with Eastdil's performance of the financial advisory services under the terms of this Agreement, the parties hereto may deliver to each other or otherwise make available to each other certain Confidential Information (as hereinafter defined). In order to protect the confidentiality of any Confidential Information which either Party or any of their affiliates (the "Providing Party") may provide to the other Party or any of its affiliates (the "Receiving Party") during the Term of this Agreement, each Receiving Party, on behalf of itself and its Representatives (as hereinafter defined), undertakes:

    (i)    to keep Confidential Information received from or on behalf of the Providing Party confidential and not to disclose it to anyone except as provided for in Subsection 5(c) below and to ensure that such Confidential Information is protected with a commercially reasonable degree of care to prevent unauthorized use or disclosure;

    (ii)    to keep confidential and not to disclose to anyone other than the persons referred to in Subsection 5(c) below the fact that Confidential Information received from or on behalf of the Providing Party has been made available to the Receiving Party; and

    (iii)    to inform any person to whom the Receiving Party passes any Confidential Information received by the Receiving Party from or on behalf of the Providing Party of the confidential nature thereof and the purpose for which it may be used, as provided herein.

Further, Eastdil, on behalf of itself and its Representatives, agrees (i) to use Confidential Information received from or on behalf of any LBHI Providing Party solely for the purpose of providing LBHI with financial advisory services in accordance with the terms of this Agreement, (ii) to disclose the Confidential Information only to Eastdil's Representatives who need to know such Confidential Information for the purpose of providing LBHI with such financial advisory

services in accordance with the terms of this Agreement, and (iii) to treat all Reports, opinions, evaluations, or analyses prepared or performed by Eastdil or its Representatives and any other advice rendered by Eastdil to LBHI or any of its affiliates or their respective Representatives pursuant to the terms of this Agreement as Confidential Information in accordance with the terms of this Agreement.

     (b)  The term "Confidential Information" shall mean (i) all information relating in any manner to LBHI and/or its affiliates and/or their respective assets or liabilities, including, without limitation, each of the Assets, and any information relating to the LBHI's and/or any of its affiliates' plans, pricing, methods, methodologies, processes, financial data, lists, intellectual property, customer information, apparatus, statistics, programs, research, development, and/or information technology that LBHI, its affiliates or its and their respective officers, directors, employees, controlling shareholders, accountants, counsel, investment bankers, consultants, general partners, managing members, agents and other representatives (such persons in their capacity as such being generally referred to herein as "LBHI Representatives") furnish, cause to be furnished or otherwise make available to Eastdil or its Representatives, on, before or after the date of this Agreement, whether oral, written, electronically stored or otherwise, together with any appraisals, reports, analyses, compilations, forecasts, memoranda, notes, studies and any other written or electronic materials furnished or made available to Eastdil or any of its affiliates or their respective Representatives by LBHI or any of its affiliates or any of their respective Representatives, or prepared by or for Eastdil or any Eastdil Representatives that contain, reflect or are based upon such information, including, without limitation, any information given orally and any document, electronic file or any other way of representing or recording information which contains or is derived or copied from such information, together with all such information contained in or used as the basis of (in whole or in part) any Reports or any analyses, compilations, evaluations, studies, opinions, interpretations or other documents (whether in written form, electronically stored or otherwise) prepared by Eastdil or its Representatives, and (ii) all Reports, opinions, evaluations, or analyses performed by Eastdil or its Representatives or any other advice rendered by Eastdil to LBHI or any of its affiliates or their respective Representatives pursuant to the terms of this Agreement.  The term "Representatives" means, with respect to (i) LBHI, its affiliates and its and their respective officers, directors, employees, general partners, managing members, accountants, consultants, servants, agents and counsel and (ii) Eastdil, its officers, directors, employees, accountants, consultants, servants, agents and counsel.  In no event shall Eastdil share any Confidential Information with any of its affiliates, including but not limited to Wells Fargo Bank NA., Wells Fargo & Company, Wells Fargo Bank Northwest, N.A. or any of their respective affiliates or their respective officers, directors, employees, accountants, consultants, servants, agents or counsel.  Each party hereto agrees to instruct its respective Representatives to treat the Confidential Information in a confidential manner and in accordance with the terms of this Agreement (it being understood and agreed that each party hereto will be responsible for any breach of any provisions of this Agreement, which by their terms apply to such party's Representatives, by any of such party's Representatives).  Notwithstanding anything to the contrary contained herein, without the prior written consent of LBHI, no borrower, guarantor, counterparty or any other person obligated to or having any claim against LBHI or any of its affiliates in connection with any of the Assets, and no person who is a potential purchaser of any of the Assets or any interest therein, shall be considered a Representative of Eastdil for any purpose hereunder, and no Confidential Information shall be disclosed thereto without the prior written consent of LBHI.  Notwithstanding anything to the contrary contained herein, The term "Confidential Information" does not include information which (i) is or becomes generally available to the public other than as a result of a disclosure by Eastdil or its Representatives, (ii) was within Eastdil's possession prior to it being furnished to Eastdil by or on behalf of LBHI pursuant hereto, provided that the source of such information

was not known by Eastdil to be bound by a confidentiality agreement with or other contractual, legal or fiduciary obligation of confidentiality to LBHI or any other party with respect to such information or (iii) becomes available to Eastdil on a non-confidential basis from a source other than LBHI or any of its Representatives, provided that such source is not bound by a confidentiality agreement with or other contractual, legal or fiduciary obligation of confidentiality to LBHI or any other party with respect to such information.

(c)     Each Receiving Party agrees not to disclose any Confidential Information received from the Providing Party to any person without the prior written consent of the Providing Party; provided, however, that notwithstanding anything to the contrary contained herein:

(a)     a Receiving Party may disclose Confidential Information received from the Providing Party to Representatives of the Receiving Party to the extent such Representatives need to know such information, provided that the Receiving Party shall direct such Representatives to keep the Confidential Information so disclosed confidential on the confidentiality terms described herein and the Receiving Party shall be liable to the Providing Party for any breach by such Representatives of such direction.

(b)     LBHI may disclose Confidential Information received from Eastdil and its Representatives to (i) members of the Unsecured Creditor's Committee in the Lehman Cases (as hereinafter defined) (the "Lehman UCC") and Lehman UCC's Representatives, counsel (currently Milbank, Tweed, Hadley & McCloy LLP), advisors and consultants, (ii) Alvarez & Marsal Inc. and its employees, agents and Representatives, and (ii) LBHI's affiliates and any of their respective Representatives.

(c)     each Receiving Party is entitled to disclose Confidential Information received from the Providing Party to the extent that, on the advice of counsel, the Receiving Party is required to do so by any applicable law, rule or regulation or by any competent judicial, governmental, supervisory or regulatory body or in connection with a legal proceeding (including, with respect to LBHI, in connection with the Lehman Cases), provided that the Receiving Party will disclose only that portion of such Confidential Information that is necessary in order for the Receiving Party to comply with such disclosure requirement and that the Receiving Party will inform the party to whom it makes such disclosure that the disclosed Confidential Information is of a confidential nature.

(d)     At any time at the request and option of LBHI, Eastdil agrees to promptly: (a) return to LBHI all Confidential Information held by Eastdil and its Representatives; or (b) at the written direction of LBHI, destroy or permanently erase (on all forms of recordation) all Confidential Information held by Eastdil and its Representatives. Notwithstanding the foregoing, Eastdil may retain copies of the Confidential Information to the extent (i) required to comply with applicable legal and regulatory requirements, or (ii) such Confidential Information is contained on automatic electronic back-up servers or systems, the retrieval of which is unreasonably burdensome, provided, however, that such Confidential Information will remain subject to the terms and conditions herein.

(e)     All materials, Reports, opinions, evaluations, or analyses prepared by Eastdil or its affiliates or their respective Representatives for LBHI or developed as a result of the performance of the financial advisory services under the terms of this Agreement shall belong

exclusively to LBHI, and Eastdil on behalf of itself, and its Representatives, hereby irrevocably assigns to LBHI all its right, title and interest therein.

(f)  The obligations under this Section 5 shall terminate two (2) years from the date hereof.  Reference is made to the Confidentiality Agreement, dated January 28, 2010 (the "January 28 Agreement") executed by Eastdil in favor of LBHI.  To the extent anything contained in this Section 5 is inconsistent with a corresponding provision in the January 28 Agreement, the provisions of this Agreement shall prevail.

6.    **Indemnity and Limitation of Liability**.  LBHI and Eastdil agree to the provisions with respect to indemnification by LBHI of Eastdil and certain other parties as set forth on <u>Annex A</u> attached hereto.

In addition, LBHI and Eastdil also agree that, except with respect to any breach by Eastdil, its affiliates or any of their respective Representatives of the confidentiality provisions set forth in Section 5 hereof, neither Eastdil nor any of its affiliates, nor any of its or their respective officers, directors, controlling persons, employees or agents (collectively, the "Eastdil Parties") shall have any liability to LBHI, its security holders or creditors, or any person asserting claims on behalf of or in the right of LBHI (whether direct or indirect, in contract, tort or otherwise) related to, or arising out of or in connection with, this Agreement or any services performed by Eastdil hereunder, except to the extent of any judgment, loss, claim, damage, cost, fee, expense or liability that shall have resulted from the bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct of Eastdil or any Eastdil Party.  In no event, however, except with respect to any breach by Eastdil, its affiliates or any of their respective Representatives of the confidentiality provisions set forth in Section 5 hereof, shall Eastdil be liable for any lost profits or consequential, special, indirect, exemplary, or punitive damages, even if it shall have been advised of the possibility of such damages.

7.    **Limitation of Scope**.  LBHI acknowledges that Eastdil has been retained only by LBHI, that Eastdil is providing services hereunder as an independent contractor (and not in any agency capacity), and that LBHI's engagement of Eastdil is not deemed to be on behalf of, and is not intended to confer rights upon, any shareholder, creditor or partner of LBHI or any other person not a party hereto as against Eastdil or any of its affiliates, or any of its or their respective officers, directors, controlling persons (within the meaning of the Section 15 of the Securities Act of 1933 or Section 20 of the Securities Exchange Act of 1934), employees or agents.  Unless otherwise expressly agreed in writing by Eastdil, no one other than LBHI and its subsidiaries and affiliates are authorized to rely upon this engagement or any other statements or conduct of Eastdil, and no one other than LBHI and its subsidiaries and affiliates ares intended to be a beneficiary of this Agreement.  LBHI acknowledges that any Report, recommendation or advice, written or oral, given by Eastdil in connection with this engagement is intended solely for the use of the management of LBHI and its subsidiaries and affiliates in considering possible alternatives with respect to Assets, and any such recommendation or advice is not on behalf of, and shall not confer any rights or remedies upon, any other person or be used or relied upon for any other purpose.

Nothing that may be contained in any Report, or any evaluation analysis or other advice rendered by Eastdil hereunder shall be considered a representation or warranty regarding the value of any Asset or the price or value that may ultimately be received for such Asset in any Transaction. Each Report rendered by Eastdil in connection with its engagement hereunder shall be provided solely for the purpose of assisting LBHI in its evaluation of the financial value of the Assets and shall not constitute any representation or guarantee that any strategic alternative, Transaction or Alternative Strategy proposed with respect to any Asset will be successful.

Please note that Eastdil does not provide legal, tax, regulatory or accounting advice.

8. **Governing Law; Waiver of Trial by Jury**. This Agreement shall be governed and construed in accordance with New York law, without regard to conflict of law principles thereof. LBHI AND EASTDIL EACH HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT, AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY LBHI AND EASTDIL, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LBHI AND EASTDIL ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR LBHI AND EASTDIL TO ENTER INTO THIS AGREEMENT.

9. **Certain Relationships**. Please note that Eastdil is an affiliate of Wells Fargo & Company, which through its subsidiaries and affiliates (together with Wells Fargo & Company, the "Wells Fargo Group") is engaged in various activities, including securities trading and brokerage, investment banking, commercial banking, financial advisory services, investment management, principal investment, financial planning, risk management, hedging, financing and other financial and non-financial activities and services for a wide range of institutions and individuals. In the ordinary course of these activities, any member of the Wells Fargo Group, as well as the investment funds in which they may have financial interests, may at any time acquire, hold or sell positions and investments, and may trade or otherwise effect transactions, in the debt, equity and other securities and financial instruments of LBHI or its affiliates, or otherwise relating to any of the Assets. All rights with respect to such securities, financial instruments and/or investments, including any voting rights, will be exercised by the holder thereof in its sole discretion.

**10.    Assignment.**  This Agreement shall bind and inure to the benefit of and be enforceable by LBHI and Eastdil and their respective successors and permitted assigns.  This Agreement may be assigned by the LBHI to (i) one or more newly formed entities, which may subsequently be created in connection with the Lehman Cases, that will own Assets, and/or (ii) one or more affiliates of LBHI, and or (iii) any service provider (including third parties and affiliates of LBHI contracted by LBHI and/or any such newly formed entities or affiliates described in (i) or (ii) above to perform data processing, facilities management or other services on behalf of LBHI , provided LBHI shall not be released from any liability to pay the Monthly Fees or reimburse Eastdil for expenses as contemplated hereunder, without Eastdil's prior written consent.  This Agreement shall not otherwise be assigned, pledged or hypothecated by either party to a third party except as expressly provided herein.  In the case of any permitted assignment under this Agreement, the parties hereto acknowledge that each party shall retain such party's right to terminate this Agreement in accordance with the terms of this Agreement.

**11.    Remedies for Breach; Prevailing Party.**  The parties hereto agree that money damages may not be a sufficient remedy for any breach of this Agreement and that in addition to all other remedies available to the non-breaching party, the non-breaching party may seek specific performance and injunctive or other equitable relief as a remedy for any breach by the breaching party. The prevailing party in any arbitration, suit, or action brought by one party against the other party to interpret or enforce the terms of this Agreement or any rights or obligations hereunder, shall be entitled to receive its reasonable costs, expenses, and attorneys' fees of bringing such arbitration, suit, or action.

**12.    Bankruptcy Court Jurisdiction.**  THE PARTIES HERETO AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT EXECUTED PURSUANT HERETO, (ii) ANY SERVICES TO BE PERFORMED HEREUNDER, AND (iii) ANY OBLIGATIONS OF A PARTY THAT MAY SURVIVE TERMINATION OF THIS AGREEMENT, AND THE PARTIES EXPRESSLY CONSENT TO AND AGREE NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.   THE PARTIES HERETO FURTHER AGREE THAT, IF THE BANKRUPTCY COURT DOES NOT HAVE OR ABSTAINS FROM EXERCISING SUCH JURISDICTION, THEY UNCONDITIONALLY AND IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE SOURTHERN DISTRICT OF NEW YORK OR THE COMMERICAL DIVISION, CIVIL BRANCH OF THE SUPREME COURT OF THE STATE OF NEW YORK SITTING IN NEW YORK COUNTY AND ANY APPELLATE COURT FROM ANY THEREOF, FOR THE RESOLUTION OF ANY SUCH DISPUTES AND OTHER MATTERS.

**13.    Miscellaneous.**  This Agreement shall not be modified or amended except in a writing signed by Eastdil and LBHI.  This Agreement constitutes the entire agreement of Eastdil and LBHI with respect to the subject matter hereof and supersedes all prior agreements.  If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination shall not affect such provision in any other respect, and the remainder of the Agreement shall remain in full force and effect.   This Agreement may be executed in

*486227.11*                                              9

counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures shall be deemed valid and binding to the same extent as an original signature.

We are delighted to accept this assignment and look forward to working with you. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this Agreement.

Sincerely,

EASTDIL SECURED, L.L.C.

By: _____

Name:  Roy H. March
Title:   Chief Executive Officer

**AGREED AND ACCEPTED:**

LEHMAN BROTHERS HOLDINGS INC.
a New York corporation, as debtor and
debtor in possession in the Lehman Cases

By: _____
Name:                    Jeffrey Fitts
Title:                    Authorized Signatory

Dated: _____4|22|10_____

## ANNEX A

In connection with Eastdil's engagement to advise and to assist Lehman Brothers Holdings, Inc. ("LBHI") pursuant to the Agreement dated March__, 2010, to which this Annex A is attached, LBHI agrees to indemnify and to hold harmless Eastdil and each of its affiliates, and their respective officers, directors, controlling persons (within the meaning of Section 15 of the Securities Act of 1933 or Section 20(a) of the Securities Exchange Act of 1934), employees, affiliates, agents, counsel and other advisors (hereinafter collectively referred to as an "Indemnified Party"), to the full extent allowed by law or equity, from and against any and all judgments, losses, claims, damages, liabilities and reasonable costs, fees and expenses, to which any Indemnified Party may become subject, related to or arising out of Eastdil's engagement or performance under the Agreement, the transactions contemplated thereby, the services to be rendered by Eastdil under the Agreement, or any actual or threatened claim, litigation, investigation, proceeding or action in any court or before any regulatory, administrative or other body relating to any of the foregoing (collectively, "Claims"), and shall, upon request, reimburse an Indemnified Party for all reasonable legal and other costs, fees and expenses as they are incurred in connection with investigating, preparing or defending a Claim, whether or not such Indemnified Party is ever made party to any legal proceedings; provided, however, that no such indemnification shall be required to be paid to an Indemnified Party to the extent that any judgment, loss, Claim, damage, cost, fee, expense or liability shall (i) have resulted from the bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct of Eastdil or any Indemnified Party, or (ii) have resulted from or in connection with any breach by Eastdil, its affiliates or any of their respective Representatives of the confidentiality provisions set forth in Section 5 hereof.

All amounts due to an Indemnified Party hereunder shall be payable by LBHI promptly upon request by such Indemnified Party. The prevailing party in any arbitration, suit, or action brought by one party against the other party to interpret or enforce the terms of this Annex A or any rights or obligations hereunder, shall be entitled to receive its reasonable costs, expenses, and attorneys' fees of bringing such arbitration, suit, or action.

LBHI agrees not to enter into any waiver, release or settlement of any Claim (whether or not Eastdil or any other Indemnified Party is a formal party to such Claim) in respect of which indemnification may be sought hereunder without the prior written consent of Eastdil (which consent will not be unreasonably withheld), unless such waiver, release or settlement (i) is without any liability, cost or expense whatsoever to Eastdil or such Indemnified Party unless such liability, cost or expense is paid in full by LBHI on the date of such settlement and neither Eastdil or such Indemnified Party has any further liability with respect thereto, or (ii) includes an unconditional release of Eastdil and each subject Indemnified Party from all liability arising out of such Claim.

In case any such Claim is brought against Eastdil or any Indemnified Party in respect of which indemnification may be sought by Eastdil or any such Indemnified Party pursuant hereto, Eastdil or such Indemnified Party shall give prompt written notice thereof to LBHI, which notice shall include all documents and information in the possession of or under the control of Eastdil and/or such Indemnified Party relating to such Claim and shall specifically state that

indemnification for such Claim is being sought under the term of this Agreement; provided, however, that the failure of the Indemnified Party to so notify the indemnifying party shall not limit or affect such Indemnified Party's rights to be indemnified pursuant to this Agreement except to the extent that LBHI as the indemnifying party is materially prejudiced by such failure. Upon receipt of such notice of Claim (together with such documents and information from such Indemnified Party), LBHI may, at its sole cost and expense, in good faith defend any such Claim with counsel reasonably satisfactory to Eastdil (provided that counsel selected by any insurance company which covers the subject Claim in for the benefit of the Indemnified Party shall be deemed acceptable provided that such insurance company does not deny or otherwise contest its coverage of such Claim), which counsel may, without limiting the rights of such Indemnified Party pursuant to the next succeeding sentence of this paragraph, also represent LBHI in such investigation, action or proceeding. In the alternative, such Indemnified Party may elect to conduct the defense of the Claim, if LBHI refuses to defend (or fails to give written notice to the Indemnified Party within 15 days of receipt of a notice of Claim that LBHI assumes such defense). Eastdil and each Indemnified Party shall reasonably cooperate with LBHI, at LBHI's sole cost and expense, in connection with the defense or settlement of any Claim in accordance with the terms hereof. If Eastdil or such Indemnified Party is entitled pursuant to this Agreement to elect to defend such Claim by counsel of its own choosing and so elects, then LBHI shall be responsible for any good faith settlement of such Claim entered into by Eastdil or such Indemnified Party with the prior written consent of LBHI (which consent will not be unreasonably withheld). Except as provided in the immediately preceding sentence, neither Eastdil nor any Indemnified Party may pay or settle any Claim and seek reimbursement therefor under this Agreement.

Notwithstanding anything that may be contained herein to the contrary, in the event that Eastdil or any Indemnified Party seeks reimbursement for attorneys' fees from LBHI pursuant to this Agreement, the invoices and supporting time records from such attorneys shall be included in Eastdil's own monthly invoice and payment of such invoice shall be subject to the same payment procedures applicable to professionals in the Lehman Cases including the Amended Order Pursuant to Sections 105(a), 327, 328 and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business, dated March 25, 2010 and any other applicable orders of the Bankruptcy Court.

The provisions of this Annex A shall be in addition to any liability which LBHI may otherwise have to Eastdil; shall not be limited by any rights that Eastdil or any other Indemnified Party may otherwise have; shall remain in full force and effect regardless of any expiration or termination of Eastdil's engagement; and shall inure to the benefit of and be binding upon any successors or assigns of Eastdil and LBHI.