# Exhibit B



**CUSTOMER CLAIM FORM**
**LEHMAN BROTHERS INC.**

Account Name: Moore Global Investments L.P.  Daytime Phone: (212) 782-7124

Account Number: 01599502                        Email: james.danza@moorecap.com

Address: c/o Moore Capital Management, L.P.
1251 Avenue of the Americas
New York, N.Y. 10020                              Taxpayer I.D. Number

Contact Person: James Danza                       (Social Security No.): 72-1541776

# PLEASE NOTE

- A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT.

- TO BE ELIGIBLE FOR THE MAXIMUM PROTECTION AFFORDED UNDER THE SECURITIES INVESTOR PROTECTION ACT ("SIPA"), ALL CUSTOMER CLAIMS SHOULD BE RECEIVED BY THE TRUSTEE ON OR BEFORE JANUARY 30, 2009; THE TRUSTEE WILL DETERMINE WHETHER CLAIMS MEET THE STATUTORY REQUIREMENTS FOR "CUSTOMER" CLAIMS UNDER SIPA; INCLUSION OF A CLAIM OR CLAIM TYPE ON THIS CLAIM FORM IS NOT DETERMINATIVE OF CUSTOMER STATUS UNDER SIPA.

- THE DEADLINE FOR FILING ALL CLAIMS IS JUNE 1, 2009. NO CLAIM WILL BE ALLOWED IF IT IS RECEIVED AFTER THAT DATE.

- ALL CLAIMS ARE DATED AS OF THE DATE RECEIVED BY THE TRUSTEE.

- YOU MAY FILE YOUR CLAIM ELECTRONICALLY ONLINE AT WWW.LEHMANTRUSTEE.COM OR SEND YOUR COMPLETED AND SIGNED CLAIM FORM TO THE TRUSTEE VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED.

- IF YOUR ACCOUNT HAS BEEN TRANSFERRED TO ANOTHER BROKERAGE FIRM, BUT YOU BELIEVE YOU HAVE A CLAIM FOR PROPERTY OWED TO YOU BY LEHMAN BROTHERS INC., YOU MUST FILE A CLAIM TO PROTECT YOUR RIGHTS.

- LEHMAN BROTHERS INC. IS THE ONLY LEHMAN ENTITY THAT IS A DEBTOR IN THIS SIPA LIQUIDATION PROCEEDING. THIS CUSTOMER CLAIM FORM APPLIES ONLY TO LEHMAN BROTHERS INC. AND DOES NOT APPLY TO ANY OTHER LEHMAN ENTITY, INCLUDING ANY ENTITY IN A PROCEEDING UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE.

This claim form must be completed electronically online at www.lehmantrustee.com or mailed promptly, together with supporting documentation, to the following:

If by first class mail:

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 6389
Portland, OR 97228-6389

If by overnight mail:

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

1. **CLAIM FOR MONEY BALANCES OR CASH AS OF SEPTEMBER 19, 2008:**

   a.  LBI owes me a credit or cash in the amount of:               $ 11,496,774.18   See

   b.  I owe LBI a debit or cash in the amount of:                  $ 0              Attachment
                                                                                     1

   c.  If you wish to repay the debit balance listed in point b. above please insert the amount you wish to repay and attach a check payable to "James W. Giddens, Trustee for the SIPA Liquidation of Lehman Brothers Inc." If you wish to make a payment, **it must be enclosed** with this claim form.

                                                                    $ 0

2. **CLAIM FOR SECURITIES AS OF SEPTEMBER 19, 2008:**

   <u>Please Do Not Claim Any Securities You Have In Your Possession</u>

   |     |                      | YES | NO |
   |     |                      | (Circle Y or N) | |
   | a.  | LBI owes me securities: | Y | (N) |
   | b.  | I owe LBI securities:   | Y | (N) |

   c.  If yes to either, please list below (or in additional pages as necessary):

   | Trade Date of Transaction (mm/dd/yyyy) | Name of Security | CUSIP | Number of Shares or Face Amount of Bonds | |
   | --- | --- | --- | --- | --- |
   | | | | LBI Owes Me (Long) | I Owe LBI (Short) |
   | | | | | |
   | | | | | |
   | | | | | |
   | | | | | |
   | | | | | |

   If additional space is needed, attach additional pages providing the information in the exact format above.

## 3. COMMODITY FUTURES CLAIMS

|  | YES | NO |
|---|---|---|
|  | (Circle Y or N) | |

Do you have a claim based on a commodity futures account?     (Y)     N

If the answer to the above question is "yes," please state the amount, and explain the basis for your claim below, attaching additional pages and supporting documents as necessary:

Amount of Claim: _See Question 1.a ._

Basis for Claim: _See Attachment 1_

_____
_____
_____
_____

## WHEN COMPLETING SECTIONS 1 THROUGH 3 PLEASE KEEP IN MIND:

- If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate that your claim is an estimated claim.
- Proper documentation can speed the review, allowance, and satisfaction of your claim.
- Please enclose: copies of your last LBI account statement; purchase or sale confirmation slips; copies of checks that relate to the securities or cash you claim; and any other documentation or correspondence you believe will be of assistance in processing your claim.
- Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement.
- If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

## PLEASE CIRCLE THE APPROPRIATE ANSWER FOR ITEMS 4 THROUGH 11.

NOTE:   IF "Y" IS CIRCLED FOR ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  | YES | NO |
|---|---|---|
|  | (Circle Y or N) | |

4.   Does your claim in any way relate to an entity other than Lehman Brothers Inc. (for example, Lehman Brothers Holdings Inc., or another Lehman subsidiary)?     Y     (N)

5.   Has there been any change in your account since September 19, 2008?     Y     (N)

i

6. Are you or were you a party to a repurchase or reverse repurchase agreement, director, officer, partner, shareholder, lender to, or capital contributor of LBI?   Y   

7. Are you related to, or do you have any business venture with, any of the persons specified in "6" above, or any employee or other person associated in any way with LBI? If so, give name(s).   Y   

8. Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of LBI?   Y   

9. Is this claim being filed on behalf of a customer of a broker or dealer or bank? If so, provide documentation with respect to each customer on whose behalf you are claiming.   Y   

10. Have you ever given any discretionary authority to any person to execute securities transactions with or through LBI on your behalf? Give names, addresses and phone numbers.    See Attachment 2
  N

11. Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? If so, give name of that broker.   Y   

Please list the full name, address, phone number, and email address of anyone assisting you in the preparation of this claim form:

Full name: _____ Teigland - Hunt LLP _____
Address: _____ 127 West 24th Street, 4th Floor _____
_____ New York, N.Y. 10011 _____
Phone number: __ (212) 269 - 1002 _____
Email address: __ Heigland @ teiglandhunt.com _____

If more than one person is assisting you, attach additional pages providing the information in the exact format above.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF UP TO $50,000 OR IMPRISONMENT OF UP TO FIVE YEARS OR BOTH.**

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date ____ 1 - 27 - 2009 ____   Signature _____
Date _____   Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)   See Attachment 3

4

# Attachment 1

(Response to Question 1.a. – Description of Claim for Money Balances or Cash as of
September 19; and Question 3 – Commodity Futures Claim – Basis for Claim)

Attachment 1

## Customer Claim Form
### Lehman Brothers Inc.

**This Attachment 1 supplements and forms part of the Customer Claim Form filed on behalf of Moore Global Investments, L.P., Account Number 01579502, and responds to Question 1.a. (Claim for Money Balances or Cash as of September 19, 2008) and Question 3 (Commodity Futures Claims – Basis for Claim).**

This claim relates to cash balances in the futures account (Account 01579502) (the "Account") of Moore Global Investments, L.P. ("MGI") with Lehman Brothers Inc. ("LBI") after applying amounts due to LBI in respect of the termination/close-out of foreign exchange contracts (the "Contracts") which were booked in the Account.

A copy of the statement (the "Statement") dated as of September 19, 2008 received by us from LBI in respect of the Account is attached hereto as Annex A.

We have used the values contained in the Statement for the purposes of determining both (i) the termination/close-out value of the Contracts; and (ii) the cash balances in the Account.

We have set-off and netted (i) and (ii) above and, accordingly, we have determined that LBI owes MGI, as at September 19, 2008, USD 11,396,647.79 (referred to as the "Net Liquidating Value" in the Statement).

Additionally, in accordance with Section 7 of the Master Institutional Futures Customer Agreement between Lehman Brothers Inc. and Moore Global Investments, L.P. (the "Futures Agreement" attached hereto as Annex B), LBI is required to pay interest on MGI's cash held by LBI based on interest rates mutually agreed to by the parties. The parties mutually agreed that the interest rate for cash would be the Federal Funds rate, as evidenced by email correspondence dated October 30, 2006, attached hereto as Annex C. Accordingly, USD 80,126.39 in interest has accrued as of September 19, 2008.

Therefore, the total claim in respect of the Account as of September 19, 2008 is USD 11,476,774.18.

Please remit the total claim amount to the following account:

JPMorgan Chase
ABA # 021-000-021
Moore Global Investments, LP
Acct # 323-308-589

Under Section 7 of the Futures Agreement, interest will continue to accrue at the Federal Funds rate with respect to such amount to the maximum extent permitted by law.

**Moore Global Investments, L.P.**

Name: *James Danza*
Title: Treasurer, Moore Capital Management LP, Investment Manager
Date: 1/27/09

# Annex A
**(Lehman Brothers Inc. Account Statement)**

LEHMAN BROTHERS INC.
745 7TH AVE
NEW YORK, NY    10019


MOORE GLOBAL INVESTMENTS L.P.          SEP 19, 2008
1 MONTAGUE PLACE, 1ST PLACE
EAST BAY STREET                        Salesman  Account
P.O. BOX N-4906                        62015395 01579502
NASSAU, BAHAMAS


US NON-SEGREGATED ACCOUNT              Page    1


- - - - OPENING  ACCOUNT  BALANCES - - - -
SWISSFRANC                  135.40DB
EURO                     14,142.20CR
HK DOLLAR                      .04CR
US DOLLAR            70,555,682.14CR
- - - - CLOSING  ACCOUNT  BALANCES - - - - -
SWISSFRANC                  135.40DB*
EURO                     14,142.20CR*
HK DOLLAR                      .04CR*
US DOLLAR            70,555,682.14CR*

- - - - - - - - - - F O R E I G N   E X C H A N G E   O P E N   P O S I T I O N S - - - - - - - - - - - - - -

| Date | B/S | Base Currency | Maturity | Currency Pair | Counter Amount | Rate | Net Present Value | |
|------|-----|---------------|----------|---------------|----------------|------|-------------------|---|
| 9/10/08 | S | 4,000,000.00CR | 22OCT08 | EUR/USD | 5,623,600.00CR | 1.4059000 | 162,763.47DB | USD |
| 9/12/08 | S | 2,300,000.00DB | 22OCT08 | EUR/USD | 3,234,560.00CR | 1.4072000 | 90,607.79DB | USD |
| 9/09/08 | B | 1,800,000.00DB | 22OCT08 | EUR/USD | 2,534,400.00DB | 1.4080000 | 69,474.69CR | USD |
| 9/09/08 | S | 1,148,773.00DB | 22OCT08 | EUR/USD | 1,627,581.59CR | 1.4168000 | 34,289.76DB | USD |
| 9/09/08 | B | 100,000.00CR | 22OCT08 | EUR/USD | 141,700.00DB | 1.4170000 | 3,863.35CR | USD |
| 9/03/08 | B | 1,000,000.00CR | 22OCT08 | EUR/USD | 1,444,800.00DB | 1.4448000 | 1,908.27CR | USD |
| 8/25/08 | S | 4,900,000.00DB | 22OCT08 | EUR/USD | 7,218,484.00CR | 1.4731600 | 129,319.41CR | USD |
| 8/21/08 | B | 3,800,000.00CR | 22OCT08 | EUR/USD | 5,609,940.00DB | 1.4763000 | 113,107.81DB | USD |
| 8/12/08 | S | 3,700,000.00DB | 22OCT08 | EUR/USD | 5,503,835.00CR | 1.4875500 | 190,660.26CR | USD |
| 8/14/08 | B | 3,200,000.00CR | 22OCT08 | EUR/USD | 4,761,600.00DB | 1.4880000 | 131,736.52DB | USD |
| 8/13/08 | B | 3,800,000.00CR | 22OCT08 | EUR/USD | 5,655,540.00DB | 1.4883000 | 157,573.76DB | USD |
| 8/08/08 | B | 5,300,000.00CR | 22OCT08 | EUR/USD | 7,949,470.00DB | 1.4999000 | 281,073.11DB | USD |
| 8/06/08 | B | 300,000.00CR | 22OCT08 | EUR/USD | 461,100.00DB | 1.5370000 | 27,007.06DB | USD |
| 8/05/08 | B | 1,500,000.00CR | 22OCT08 | EUR/USD | 2,313,750.00DB | 1.5425000 | 143,261.05DB | USD |
| 8/05/08 | B | 6,600,000.00CR | 22OCT08 | EUR/USD | 10,187,100.00DB | 1.5435000 | 636,929.23DB | USD |
| 7/30/08 | S | 4,800,000.00DB | 22OCT08 | EUR/USD | 7,422,000.00CR | 1.5462500 | 476,382.43CR | USD |
| 7/24/08 | S | 1,800,000.00DB | 22OCT08 | EUR/USD | 2,808,720.00CR | 1.5604000 | 204,038.50CR | USD |
| 7/29/08 | B | 2,600,000.00CR | 22OCT08 | EUR/USD | 4,063,870.00DB | 1.5629500 | 301,332.71DB | USD |
| 7/28/08 | B | 2,200,000.00CR | 22OCT08 | EUR/USD | 3,450,260.00DB | 1.5683000 | 266,709.27DB | USD |
| 7/18/08 | S | 20,500,000.00DB | 22OCT08 | EUR/USD | 32,334,650.00CR | 1.5773000 | 2,669,303.87CR | USD |
| 7/21/08 | S | 3,000,000.00DB | 22OCT08 | EUR/USD | 4,732,200.00CR | 1.5774000 | 390,914.17CR | USD |
| 7/18/08 | B | 426,470,000.00CR | 22OCT08 | EUR/USD | 678,087,300.00DB | 1.5900000 | 60,928,773.81DB | USD |
| Net | | 413,521,227.00CR* | | | 656,152,899.41DB* | | | |

                                       Net Present Value                        59,179,375.27DB* USD
                                       Undiscounted NPM     1.4467109 59353963.83DB* USD
                                       Total FX Forward NPV                      59,179,375.27DB* USD
                                       Total FX Undiscounted NPM                 59,353,963.83DB* USD
                                       Total FX Long Option value                      0CR* USD
                                       Total FX Short Option Value                     0CR* USD
                                       Net FX Option Value                             0CR* USD

- - - - - - - - - - - Foreign Exchange Position Summary - - - - - - - - - - -

| CURR | LONG | SHORT | NET |
|------|------|-------|-----|
| EUR | 458,670,000.00CR | 46,148,773.00DB | 412,521,227.00CR* |
| USD | 70,507,730.59CR | 726,660,630.00DB | 656,152,899.41DB* |

- - - - - - - - - - M A R G I N   R E Q U I R E M E N T   S U M M A R Y - - - - - - - - - - -

| | Margin Requirement | Equity Excess/Deficit | Margin Call/Excess |
|---|--------------------|-----------------------|--------------------|
| | Initial | | |
| CHF | 0CR | 135.40DB | 135.40DB |
| EUR | 0CR | 14,142.20CR | 14,142.20CR |
| HKD | 0CR | .04CR | .04CR |
| USD | 8,390,115.93DB | 11,376,306.87CR | 2,986,190.94CR |
| Total Value in Base Currency | | | |
| USD | 8,390,115.93DB | 11,396,647.79CR | 3,006,531.86CR |

- - - - - - - - - - - - A C C O U N T   V A L U E   S U M M A R Y - - - - - - - - - - - - - - -
        Account    Unrealized G/L    Net Present Value    Net Option    Collateral  Net Liquidating
             - - - - C O N T I N U E D   O N   N E X T   P A G E - - - - -

LEHMAN BROTHERS INC.
745 7TH AVE
NEW YORK, NY   10019

MOORE GLOBAL INVESTMENTS L.P.                    SEP 19, 2008
1 MONTAGUE PLACE, 1ST PLACE
EAST BAY STREET                                  Salesman  Account
P.O. BOX N-4906                                  62015395 01579502
NASSAU, BAHAMAS

US NON-SEGREGATED ACCOUNT                        Page    2

- - - - - - - - - - - - - - A C C O U N T   V A L U E   S U M M A R Y - - - - - - - - - - - - - - -

| | Account Balance | Unrealized G/L on Futures | Net Present Value on Forwards | Net Option Value | Collateral Market Value | Net Liquidating Value |
|---|---|---|---|---|---|---|
| CHF | 135.40DB | OCR | OCR | OCR | OCR | 135.40DB |
| EUR | 14,142.20CR | OCR | OCR | OCR | OCR | 14,142.20CR |
| HKD | .04CR | OCR | OCR | OCR | OCR | .04CR |
| USD | 70,555,682.14CR | OCR | 59,179,375.27DB | OCR | OCR | 11,376,106.87CR |
| Total Value in Base Currency | | | | | | |
| USD | 70,576,023.06CR | OCR | 59,179,375.27DB | OCR | OCR | 11,396,647.79CR |

********* CURRENCY  CONVERSION  RATES *********
*                                            *
*  Base Currency - USD                       *
*    SWISSFRANC       CHF      1.1027500  *
*    EURO             EUR      1.4469960  *
*    HK DOLLAR        HKD      7.7793440  *
*                                            *
**********************************************

- - - - - - - - - A D J U S T E D   M A R G I N   D E T A I L   S U M M A R Y - - - - - - - - - - - - -
These figures are for information only.  They should not be relied upon for settlement or other purposes.

| | Margin Requirement Initial | Cash Equity Excess/Deficit | Unrealized Equity On Forwards | Pending Cash Entries | Margin Call/Excess |
|---|---|---|---|---|---|
| CHF | OCR | 135.40DB | OCR | OCR | 135.40DB |
| EUR | OCR | 14,142.20CR | OCR | OCR | 14,142.20CR |
| HKD | OCR | .04CR | OCR | OCR | .04CR |
| USD | 8,390,115.93DB | 70,555,682.14CR | 59,179,375.27DB | OCR | 2,986,190.96CR |
| Total Value in Base Currency | | | | | |
| USD | 8,390,115.93DB | 70,576,023.06CR | 59,179,375.27DB | OCR | 3,006,531.86CR |

# Annex B

**(Master Institutional Futures Customer Agreement
between Lehman Brothers Inc. and Moore Global Investments, L.P.)**

## MASTER INSTITUTIONAL FUTURES CUSTOMER AGREEMENT OF LEHMAN BROTHERS INC. FOR MOORE GLOBAL INVESTEMENTS, L.P.

In consideration of the acceptance of its account by Lehman Brothers Inc. ("LBI") and LBI's agreement to act as its broker and/or dealer, the undersigned, Moore Global Investments, L.P. ("the Customer") agrees to the following with respect to its account with LBI for the purchase and sale of commodities, contracts for the future delivery thereof and options on such contracts (collectively, "Futures Contracts"), commodity option contracts and forward commodities and foreign exchange contracts (together with Futures Contracts, "Contracts"):

### 1. GOVERNMENTAL AND EXCHANGE RULES.

The Customer's account shall be maintained in accordance with, and all transactions therein shall be subject to, the constitution, statutes, by-laws, rules, regulations, customs, usages, rulings and interpretations (collectively, "Applicable Law") of all applicable governmental and self-regulatory agencies, including, but not limited to, all exchanges or their clearing houses, if any, on which or subject to whose rules such transactions are executed. LBI shall not be liable to the Customer as a result of any actions taken to comply with Applicable Law or of any independent floor broker transacting the Customer's Contracts at LBI's or the Customer's request, including, without limitation, any liquidation, in whole or in part, of the Customer's positions or any other action taken in the event that any exchange declares an emergency. The Customer appoints LBI to act as agent of, and not as counterparty or principal for, the Customer in connection with any Futures Contracts purchased and/or sold for the Customer's account. All Property (as defined in Section 4 below) held by LBI for the Customer shall be held subject to Applicable Law or as the parties mutually agree.

### 2. MARGIN.

The Customer agrees to maintain such collateral and/or margin in its account as LBI in its reasonable discretion may require in addition to the amounts required by Applicable Law, and to deposit immediately on demand cash or property in any such amount as may be required by LBI or Applicable Law. The Customer agrees to make all margin deposits in United States Dollars unless LBI in its discretion permits otherwise.

### 3. EVENTS OF DEFAULT.

In the event that:

(a)  the Customer timely fails to deposit sufficient monies, funds or such other Property (as defined in Section 4 below) acceptable to LBI to satisfy any demands for original and/or variation margin or such other amounts as LBI may, in its reasonable discretion, require;

(b)  the Customer is dissolved or liquidated;

(c)  a proceeding under any applicable bankruptcy law or an assignment for the benefit of creditors or an application for a receiver or trustee is filed by or against the Customer or any of its affiliates;

(d)  any attachment, execution or distress is levied against or sought to be levied against, or an encumbrancer takes possession of the whole or any part of, the Property, undertaking or assets of the Customer or assets being held at or being sent to LBI for the Customer's benefit, or any lien created by the Customer becomes enforceable or the lienholder takes steps to enforce such security;

(e)  the Customer fails to perform or comply with any material obligation contained herein or under any other agreement with LBI;

(f)  the Customer's account incurs a deficit balance;

(g)  LBI determines that any representation, statement or warranty made by the Customer to LBI in this Agreement or in any notice or other document, certificate or statement delivered by it pursuant hereto or in connection herewith is untrue, inaccurate or misleading in any material respect;

(h)  LBI, in its sole and absolute discretion, considers it necessary for its protection; or

(i)  anything analogous to any of the events specified above occurs under the laws of any applicable jurisdiction

(each of such events referred to in the foregoing clauses (a) through (i) being referred to herein as an "Event of Default"), then LBI may, at the Customer's sole risk and expense, without prejudice to any other rights which LBI may have, exercise the rights set forth in Section 4 below. If the Customer knows or should know or becomes aware of any event in this Section 3, the Customer shall

immediately notify LBI thereof.

**4.    CONSEQUENCES OF AN EVENT OF DEFAULT.**

At any time following the occurrence of an Event of Default, LBI shall be entitled at its sole discretion, as soon as it has attempted to give or has given written or oral notice thereof to the Customer, to take one or more of the following actions:

(i)    liquidate, sell or close out any or all of the Contracts and monies, funds, securities of all kinds, commodities and other property or collateral (collectively, "Property") in the Customer's account;

(ii)    hedge and/or offset such Contracts and Property in the cash or other market, including a related but separate market;

(iii)    sell any Contracts or Property held by LBI belonging to the Customer or in which the Customer it has an interest;

(iv)    cancel any open orders for the purchase and/or sale of any Contracts or Property;

(v)    borrow and/or buy any Contracts or Property required to make delivery against any sales, including a short sale, effected for the Customer;

(vi)    exercise any or all option contracts to which LBI is a party; or

(vii)    take such action as LBI reasonably deems necessary for its protection.

If any such sale or purchase occurs, it may be public or private, and LBI itself may be the counterparty of such transaction(s). The Customer agrees not to make any claim against LBI concerning the manner of sale, timing or price thereof. The proceeds of any such transactions shall be applied by LBI to reduce any and all indebtedness owed to LBI by the Customer. All costs, fees, expenses and liabilities incurred by LBI in the exercise of the rights detailed in this Paragraph 4 shall be borne by the Customer.

**5.    SECURITY.**

All Contracts and other Property belonging to the Customer which LBI or any of its subsidiaries or affiliates may at any time be carrying for the Customer or holding in its or their possession or control on behalf of the Customer for any purpose, including safekeeping, shall be held by LBI as security and be subject to a general lien and right of setoff for the discharge of all liabilities and obligations of the Customer owed to LBI, wherever or

however arising, and without regard to whether or not LBI has made advances with respect to such Property, and LBI is hereby authorized to sell and/or purchase, loan, hypothecate or rehypothecate any and all such Property, provided LBI has attempted to give or has given written or oral notice to the Customer, to satisfy such general lien and security interest. With respect to any Property of the Customer held by LBI, LBI may deliver securities or other Property of like or equivalent kind or amount.

**6.    PAYMENT OBLIGATIONS OF CUSTOMER.**

The Customer shall pay LBI upon demand:

(a) all brokerage charges, give-up fees, commissions and service fees as LBI may from time to time charge;

(b) all exchange, clearinghouse, National Futures Association ("NFA"), clearing member or electronic trading system fees or charges;

(c) any tax imposed on such transactions by any competent taxing authority;

(d) the amount of any realized or unrealized losses in the Customer's account;

(e) any debit balance or deficiency in the Customer's account;

(f) interest on any debit balance or deficiency in the Customer's account, at the prevailing rate as determined by LBI, together with costs and reasonable attorneys' and accountants' fees incurred in collecting any such debit balance or deficiency; and

(g) any other amounts owed by the Customer to LBI with respect to its account or any transactions therein.

**7.    INTEREST.**

LBI shall pay interest on the Customer's cash held by LBI based on interest rates mutually agreed to by the parties. Notwithstanding the above, the Customer understands that LBI may retain for its own account any interest, increment, profit, gain or benefit, direct or indirect, resulting from or relating to the deposit or investment of funds, including Property of the Customer, held in commodity customer segregated accounts, customer secured amount accounts and non-regulated accounts.

**8.    CUSTOMER'S REPRESENTATIONS AND WARRANTIES.**

The Customer represents and warrants at the time this Agreement is entered into and at the time each subsequent transaction is entered into under this Agreement that:

(a) the Customer has full right, power, capacity and authority to enter into this Agreement and each and every transaction entered into hereunder, and that each person executing this Agreement and giving instructions or orders on behalf of the Customer is authorized to do so;

(b) this Agreement and obligations expressed to be assumed by the Customer herein are legal, valid and binding on the Customer and enforceable against the Customer in accordance with the terms hereof;

(c) the Customer may lawfully establish and open the accounts for the purpose of effecting purchases and sales of Contracts through LBI and any financing thereof;

(d) transactions entered into pursuant to this Agreement will not violate any Applicable Law, including any law to which the Customer is subject or any agreement to which the Customer is subject or a party;

(e) the Customer will provide on request such information regarding the Customer's financial or business affairs as LBI may reasonably require or as required by Applicable Law, and that all information provided by the Customer to LBI hereunder or otherwise is true and correct, and the Customer shall promptly notify LBI of any change in such information and the Customer shall not omit or withhold any information that would render the information so supplied to be false or inaccurate in any material respect;

(f) the Customer has satisfied itself and will continue to satisfy itself as to the tax, accounting, legal and other implications, if any, of the transactions contemplated hereunder;

(g) the Customer has the full and unqualified right to transfer margin to LBI as required under the terms of this Agreement, and any such margin so transferred shall be beneficially owned by the Customer and free and clear of any mortgage, lien, claim, charge or other encumbrance whatsoever;

(h) no Event of Default described in Section 3 above has occurred with respect to it and is continuing, and no such event or circumstance would occur as a result of its entering into or performing its obligations under this Agreement;

(i) the Customer has received the Terms of Business Supplement required by the Futures and Securities Authority ("FSA"), has read it and understands it;

and

(j) If applicable, the Customer is not an authorized person or the employee of an authorized person under the Financial Services Act 1986 unless the Customer has specifically notified LBI to that effect in writing.

9.    TRADING RECOMMENDATIONS.

The Customer acknowledges and understands that any market recommendations or information or other communication (written or oral) provided by LBI or by any of its affiliates or agents with respect to the Customer's trading activities is solely incidental to the conduct of its business, shall not serve as a primary basis for any decision by the Customer and does not constitute investment advice nor a recommendation to enter into a transaction unless there is a written agreement between LBI and the Customer to the contrary. No fiduciary or advisory relationship between LBI and the Customer is created by this Agreement. All decisions of the Customer are made solely by and at the discretion of the Customer and are based upon the Customer's judgment and upon advice from such professional advisors as the Customer deems it necessary to consult (LBI is not nor can be considered a professional advisor for the purpose of this Agreement) and do not constitute the exercise of discretionary or fiduciary authority or control by LBI. Any information provided by LBI may be incomplete, may not have been verified and may be changed without notice to the Customer. The Customer understands that LBI makes no representation or warranty as to the accuracy, completeness, reliability or prudence of any such information. The Customer further understands that LBI, its affiliates, its officers and its employees may take or hold positions in or advise other customers concerning such transactions which are the subject of advice from LBI to the Customer, which positions and advice may be inconsistent with or contrary to positions which are held by the Customer.   LBI is not acting as a fiduciary, foundation manager, commodity pool operator, commodity trading advisor or investment adviser in respect of any accounts opened by the Customer.   LBI shall have no responsibility hereunder for compliance with Applicable Law governing the conduct of fiduciaries, foundation managers, commodity pool operators, commodity trading advisors or investment advisors. Upon entering into a transaction, the Customer acknowledges and agrees that by entering in to the transaction, that it understands the terms, conditions and risks of such transaction and is willing to assume those risks, financially or otherwise.

3

## 10. POSITION LIMITS.

The Customer understands that LBI has, at its discretion, the right to limit positions in the Customer's account, to decline to accept any orders from the Customer, and to require that the Customer's account be transferred to another firm. The Customer shall file or cause to be filed all applications or reports required under Applicable Law with the relevant governmental authority or exchange, contract market or clearing house, and shall provide LBI with a copy of such applications or reports and such other information as LBI may reasonably request in connection therewith.

## 11. STATEMENTS AND CONFIRMATIONS.

Final written confirmation of actual transactions and/or orders, purchase and sale notices, correction notices and statements of the Customer's account shall be conclusive if not objected to in writing within seven days of the date of the statement. Communications mailed or electronically transmitted to the Customer's address shown on LBI's books and records shall, until LBI has received notice in writing from the Customer of a different address, be deemed to have been personally delivered to the Customer, and the Customer agrees to waive all claims resulting from any failure to receive such communications.

Any notice or other communication in respect of this Agreement must be given to LBI in writing and delivered in person, sent by certified or registered mail or by overnight courier or by telex or facsimile at the address or number set forth opposite such party's name below or as may be subsequently specified in writing between the parties from time to time. Notices delivered by mail shall be deemed to have been received on the third business day thereafter where such notice is sent to or from the United States or another country. Notices sent by messenger shall be deemed duly given when delivered to the address of the Customer as reflected on the messenger's records. Notices sent by overnight air courier shall be deemed fully given when delivered to the address of the Customer as reflected on the air courier's records. If delivered by telex or facsimile, such notice shall be deemed to have been delivered on the date that the answerback is received or the date of the date stamp on the facsimile. Notices sent by electronic transmission from the mainframe used by LBI shall be deemed given when sent. All communications to LBI shall be sent to the address set forth below or such other place as LBI notifies in writing to the Customer.

## 12. EXCLUSION OF LIABILITY AND INDEMNITY.

LBI shall have no responsibility or liability to the Customer

(i)   in connection with the performance or non-performance by any exchange, clearinghouse, clearing firm or other third party (including floor brokers and banks) of their obligations in respect of any order, bid, offer, Contract or other Property of the Customer;

(ii)   as a result of any prediction or recommendation made or information given by a representative of LBI whether or not made or given at the request of the Customer;

(iii)   as a result of LBI's reliance on any instructions, notices or communications that it believes to be that of an individual authorized to act on behalf of the Customer;

(iv)   as a result of any delay in the performance or non-performance of any of LBI's obligations hereunder directly or indirectly caused by the occurrences of any contingency beyond the control of LBI including, but not limited to, the unscheduled closure of an exchange, clearinghouse or delays in the transmission of bids, offers, orders or instructions due to slowdowns, breakdowns or failures of transmission or communication facilities, execution, and/or trading facilities or other systems (including, without limitation, electronic trading systems, facilities or services), it being understood that LBI shall be excused from performance of its obligations hereunder for such period of time as is reasonably necessary after such occurrence to remedy the effects therefrom;

(v)   as a result of any action taken by LBI or any clearing firm or executing firm, including floor brokers selected by LBI, to comply with Applicable Law;

(vi)   for any acts or omissions of those neither employed nor supervised by LBI; or

(vii)   for losses suffered by the Customer resulting directly or indirectly from government action, war, strike or national disaster.

LBI shall not be responsible for any loss, liability, damage or expense except to the extent that it is judicially determined that such loss, liability damage or expense resulting directly from its gross negligence or willful misconduct. In no event shall LBI be liable to the Customer for consequential, incidental or special damages

4

hereunder.

Nothing in this Agreement, express or implied, is intended to confer or does confer upon any person or entity other than the parties hereto or their respective successors and assigns any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by LBI hereunder.

### 13.    OPTIONS TRANSACTIONS.

If a transaction involves a commodity option contract, the Customer acknowledges and agrees that it is responsible for taking or failing to take action to exercise any commodity option contract in the Customer's account and that, unless such commodity option contract is automatically exercised subject to Applicable Law, LBI shall not take any action to exercise any commodity option contract in the Customer's account without instructions from the Customer.

### 14.    INDEPENDENT INVESTMENT ADVISOR.

If the Customer directs LBI in writing to accept trading instructions from an independent commodity trading advisor or investment adviser ("Advisor"), unless otherwise agreed in writing, Customer hereby appoints such Advisor as the Customer's agent for the purpose of receiving all communications, notices and requests for instructions related to this Agreement and the transactions effected pursuant to this Agreement, including, without limitation, trading recommendations or market information, confirmations of trades, statements of account and margin calls. Nothing in this Clause 14 shall relieve the Customer of any of its obligations under this Agreement. The Customer acknowledges that LBI is not responsible for the conduct of such Advisor, that such Advisor is independent of and not LBI's agent and that LBI's sole responsibilities relate to the execution, clearing and bookkeeping of transactions in the Customer's account with respect to any orders given to LBI by such Advisor. The Customer represents that it has reviewed the registration requirements of Applicable Law relating to the Advisor and itself and has determined that each is in compliance with such requirements.

### 15.    CURRENCY RISK.

If the Customer initiates transactions in a Contract on an exchange where such transaction is effected in a currency other than U.S. dollars, any profit or loss from a fluctuation in the exchange rate of such currency shall be for the Customer's account and risk. Unless the Customer

gives LBI contrary written instructions, LBI will debit and credit the Customer's account in U.S. dollars at an exchange rate determined by LBI in its reasonable discretion based on prevailing currency exchange rates. Unless the Customer instructs LBI otherwise, monies it deposits with LBI in currency other than U.S. dollars and unrealized profits in currencies other than U.S. dollars are not intended to margin, guarantee or secure transactions on United States exchanges. LBI shall be entitled, without prior notice to the Customer, to make any currency conversions LBI reasonably considers necessary or desirable for the purposes of complying with LBI's obligations or exercising any of LBI's rights hereunder. Any such conversion shall be effected by LBI in such manner and at such rates as LBI may in its absolute discretion determine having regard to the prevailing rates for freely convertible currencies. If for the purposes of any claim, proof or order, a liability which the Customer owes to LBI must be converted into a currency other than that in which it would otherwise have been due, the Customer shall pay to LBI such additional amounts as may be necessary to ensure that, when received and reconverted, LBI will receive the full amount in the original currency as would have been received had no such conversion been required.

### 16.    RECORDING.

Each of the parties hereto understands that the other, in its sole discretion, may record, on tape or otherwise, any telephone conversation between such parties. Each of the parties hereto hereby agrees and consents to such recordings and waives any right it may have to object on the basis of consent to the admissibility into evidence of such recordings in any legal or regulatory proceeding between the Customer and LBI or in any proceeding to which such party is a party or in which such party's records are subpoenaed. Neither party shall have any obligation hereunder to retain or preserve any tapes so made.

### 17.    INFORMATION.

LBI may from time to time be required to provide information regarding the Customer or the Customer's Contracts to one or more regulatory bodies or exchanges. The Customer irrevocably authorizes LBI to provide any such information as may be required by Applicable Law.

### 18.    TERM.

5

This Agreement shall remain in effect until terminated by the parties. Termination may occur immediately at any time provided the party so terminating this Agreement has given five days' written notice to the other party in accordance with the terms hereof. In the event of the Customer committing an Event of Default as outlined in Section 3 LBI may immediately terminate this Agreement effective at the time of occurrence of the Event of Default. Sections 3, 4, 5, 6, 8, 9, 12, 16, 23, 24, 25 and 28 shall survive the termination of this Agreement.

## 19.  GOVERNING LAW.

This Agreement is governed by the laws of the State of New York without reference to the choice of law or conflicts of law provisions thereof. The Customer agrees that LBI may, in its reasonable discretion, initiate proceedings in the courts of any jurisdiction in which the Customer is resident or in which its assets are situated. In any legal action permitted by or against the Customer, the Customer agrees that the United States courts sitting in the State of New York shall have jurisdiction over it, and that the venue of any such action shall be the Southern District of New York. The Customer hereby waives any objection to such jurisdiction and venue.

## 20.  NO WAIVER.

LBI's failure to insist at any time upon strict compliance with this Agreement or with any of its terms or any continued course of such conduct on the Customer's part shall not constitute a waiver by LBI of any of its rights hereunder.

## 21.  SEVERABILITY.

If any provision of this Agreement is or becomes inapplicable or unenforceable due to a change in Applicable Law, such provision shall be deemed to be rescinded or modified in accordance with any such change. In all other respects, this Agreement shall continue and remain in full force and effect.

## 22.  BINDING EFFECT.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

## 23.  RIGHTS AND REMEDIES CUMULATIVE.

All rights and remedies and powers arising under this Agreement as amended and modified from time to time are cumulative and not exclusive of and shall not prejudice any rights, remedies or powers that may be available to LBI at law or otherwise.

## 24.  WAIVER OF JURY TRIAL.

The Customer hereby waives a trial by jury in any action arising out of or relating to this Agreement or any transaction in connection herewith.

## 25.  ENTIRE AGREEMENT.

This Agreement represents the entire agreement between the Customer and LBI and supersedes all prior negotiations and understandings between the Customer and LBI, whether written or oral, as to the terms hereof. This agreement may not be amended or modified except in writing signed by each of the parties. No employee of LBI is authorized to make any representations contrary to the terms of this Agreement.

## 26.  ADDITIONAL TERMS.

This Agreement is supplemental to and in addition to any other Agreement between the parties relating to other investment or services.

## 27.  ASSIGNMENT.

Neither party may assign or transfer any rights or obligations arising under this Agreement except that LBI may assign or delegate to any other affiliate of Lehman Brothers Holdings Inc. any of LBI's rights or obligations hereunder and in the event of any reorganization, reconstitution or merger, LBI may assign or transfer those rights or obligations to any successor company or any other affiliate of Lehman Brothers Holding Inc. without the Customer's prior consent.

## 28.  AUTHORIZATION TO TRANSFER FUNDS.

LBI is hereby authorized to transfer from the Customer's commodity accounts to any of its other accounts such excess funds as may be required to avoid a margin call or for any other reason not in conflict with the rules and regulations of the SFA or Applicable Law. Any such transfer shall be in compliance with Applicable Law. It is understood that, within a reasonable time after making any such transfer, LBI will confirm the same to the Customer.

**29.    HEDGE LETTER.**

If this account is to be designated as a bona fide hedge account, the Customer hereby represents that all orders given by the Customer for the purchase and sale of all Futures Contracts for its account at LBI shall represent bona fide hedges, as defined by the CFTC, against any spot position or commitments in accordance with Section 4a(3) of the CEA and with any amendments or CFTC interpretations which have been made or which may be made in the future. Customer further agrees to notify LBI if any orders for the purchase or sale of Futures Contracts are not bona fide hedge transactions.

CUSTOMER HEREBY ACKNOWLEDGES THAT IT HAS RECEIVED  THE SEPARATE RISK DISCLOSURE STATEMENT REQUIRED BY CFTC REGULATIONS PRIOR TO THE OPENING OF THIS ACCOUNT AND UNDERSTANDS ITS TERMS AND CONTENT.

MOORE GLOBAL INVESTMENTS , L. P.

Name: Anthony Gallagher
Title: Director of Operations

Address for notices:
C/O  Moore Capital Management, LLC
1251 Avenue of the Americas
17th floor
New York, NY 10020
Attn: Anthony Gallagher, Director of Operations
Telephone: 212-782-7532
Telecopier:

Name:    Ronald H. Filler
Title:    Sr. Vice President

Address for notices:

Lehman Brothers Inc.,
Futures Department
Ronald Filler Desk 31-200
101 Hudson St.
Jersey City, N.J. 07302
Telephone:    (202) 524-5118
Telecopier:    (212) 524-2065

With a copy to :

Lehman Brothers Inc..
Futures Department
Ronald Filler 5th floor
745-7th Avenue
New York, N.Y. 10019
Telephone:    212-526-0236
Telecopier:    212-526-6193

LEHMAN BROTHERS INC.

CustAgmt Moore Global Investments lp

7

## SCHEDULE A

### THIRD PARTY LIMITED TRADING AUTHORIZATION FORM

The undersigned Customer ("the Customer") hereby authorizes the advisory firm listed below as its agent and attorney-in-fact to buy, sell (including short sales) and trade in futures contracts and options on futures contracts, forwards and foreign exchange (collectively "Contracts") on margin or otherwise for the Customer's account and risk on your books. It is understood that any such Contracts may be effected with Lehman Brothers Inc.. ("LBI") as agent or broker for the Customer.

In all such purchases, sales and trades, LBI is authorized to follow the instructions of the advisory firm listed below in every respect concerning the Customer's account with LBI, and such advisory firm is authorized to act for the Customer and in the Customer's behalf in the same manner and with the same force and effect as the Customer might or could do with respect to such purchases, sales and trades. This authorization includes sales, purchases and trades in Contracts on both U.K., and non-U.K futures exchanges.

If the advisory firm is registered with the Commodity Futures Trading Commission ("CFTC") as a Commodity Trading Advisor ("CTA"), the Customer acknowledges receipt of the CTA's Disclosure Document as required by CFTC regulations.

The Customer hereby ratifies and confirms any and all transactions with LBI heretofore or hereafter made by the advisory firm for the Customer's account. The Customer hereby agrees to indemnify and hold LBI, its affiliates, subsidiaries and agents, harmless from and to pay LBI promptly on demand any and all losses and costs, including reasonable attorney's fees, arising from any actions taken by or Contracts purchased, sold or traded by such advisory firm for the Customer.

This authorization and indemnity will remain in full force and effect until terminated in writing and shall enure to the benefit of LBI, its affiliates, subsidiaries and agents, and successor corporations of them irrespective of any change or changes in the personnel thereof for any cause whatsoever, and of the assigns of LBI and these affiliated firms or any successor corporations thereof. To revoke this authorization, the Customer hereby agrees to submit a written notice addressed to the Futures Department at LBI, 3 World Financial Center, 8th Floor, New York, NY 10285, or such other address as LBI may provide in writing, but such revocation shall not affect any liability in any way resulting from transactions in Contracts initiated prior to such revocation.

NAME OF ADVISORY FIRM. Moore Capital Management LLC_____

NAME OF CUSTOMER: Moore Global Investments L.P._____

BY:_____

PRINT NAME: Anthmoy Gallagher, Director of Operations_____

APPROVED BY BRANCH MANAGER:_____

8

**SCHEDULE B**

N/A

**Commodity Hedge Letter**
Specific Commodities, Products or By-Products to be Hedged

# LEHMAN BROTHERS

Please read carefully, sign and return to
Lehman Brothers Inc. – Please list below all products to
be hedged.

1.

2.

3.

4.

5.

6.

I hereby confirm to you that all orders which I give you for the purchase or sale of the aforementioned listed futures contracts for my account(s) will represent bona fide hedges, as defined by the Commodity Futures Trading Commission ("CFTC"), against my spot position or commitments in accordance with section 4a(3) of the Commodity Exchange Act, and with any amendments or CFTC interpretations which may be made in the futures. Should I place orders for the purchase or sale of futures contracts which are not hedge transactions, I will advise you to that effect.

I hereby request hedge margins wherever they properly apply.

CFTC regulations 190.06(d)(1) requires "A commodity broker must provide an opportunity for each customer to specify when undertaking its first hedging contract whether, in the event of bankruptcy, such customer prefers that open commodity contracts held in a hedging account be liquidated by the trustee without seeking customer instructions."

Please indicate by a check mark in the following box if you prefer to have positions not liquidated until the trustee seeks your specific instructions.

☐ Yes, I prefer to have my positions not liquidated until the trustee seeks my specific instructions.

| Account Number | Name (Please print) | |
|---|---|---|
| Signature | | Date |

9

# LEHMAN BROTHERS INC.

## Risk Disclosure Statement for Futures and Options-on-Futures

This brief statement does not disclose all of the risks and other significant aspects of trading in futures and options. In light of the risks, you should undertake such transactions only if you understand the nature of the contracts (and contractual relationships) into which you are entering and the extent of your exposure to risk. Trading in futures and options is not suitable for many members of the public. You should carefully consider whether trading is appropriate for you in light of your experience, objectives, financial resources and other relevant circumstances.

## Futures

### 1.  Effect of "Leverage" or "Gearing"

Transactions in futures carry a high degree of risk. The amount of initial margin is small relative to the value of the futures contract so that transactions are "leveraged" or "geared". A relatively small market movement will have a proportionately larger impact on the funds you have deposited or will have to deposit: this may work against you as well as for you. You may sustain a total loss of initial margin funds and any additional funds deposited with the firm to maintain your position. If the market moves against your position or margin levels are increased, you may be called upon to pay substantial additional funds on short notice to maintain your position. If you fail to comply with a request for additional funds within the time prescribed, your position may be liquidated at a loss and you will be liable for any resulting deficit.

### 2.  Risk-reducing orders or strategies

The placing of certain orders (e.g. "stop-loss" orders, where permitted under local law, or "stop-limit" orders) which are intended to limit losses to certain amounts may not be effective because market conditions may make it impossible to execute such orders. Strategies using combinations of positions, such as "spread" and "straddle" positions may be as risky as taking simple "long" or "short" positions.

## Options

### 3.  Variable degree of risk

Transactions in options carry a high degree of risk. Purchasers and sellers of options should familiarize themselves with the type of option (i.e. put or call) which they contemplate trading and the associated risks. You should calculate the extent to which the value of the options must increase for your position to become profitable, taking into account the premium and all transaction costs.

The purchaser of options may offset or exercise the options or allow the options to expire. The exercise of an option results either in a cash settlement or in the purchaser acquiring or delivering the underlying interest. If the option is on a future, the purchaser will acquire a futures position with associated liabilities for margin (see the section on Futures above). If the purchased options expire worthless, you will suffer a total loss of your investment which will consist of the option premium plus transaction costs. If you are contemplating purchasing deep-out-of-the-money options, you should be aware that the chance of such options becoming profitable ordinarily is remote.

Selling ("writing" or "granting") an option generally entails considerably greater risk than purchasing options. Although the premium received by the seller is fixed, the seller may sustain a loss well in excess of that amount. The seller will be liable for additional margin to maintain the position if the market moves unfavorably. The seller will also be exposed to the risk of the purchaser exercising the option and the seller will be obligated to either settle the option in cash or to acquire or deliver the underlying interest. If the option is on a future, the seller will acquire a position in a future with associated liabilities for margin (see the section on Futures above). If the option is 'covered' by the seller holding a corresponding position in the underlying interest or a future or another option, the risk may be reduced. If the option is not covered, the risk of loss can be unlimited.

Certain exchanges in some jurisdictions permit deferred payment of the option premium, exposing the purchaser to liability for margin payments not exceeding the amount of the premium. The purchaser is still subject to the risk of losing the premium and transaction costs. When the option is exercised or expires, the purchaser is responsible for any unpaid premium outstanding at that time.

### Additional risks common to futures and options

4.  Terms and conditions of contracts

You should ask the firm with which you deal about the terms and conditions of the specific futures or options which you are trading and associated obligations (e.g. the circumstances under which you may become obligated to make or take delivery of the underlying interest of a futures contract and, in respect of options, expiration dates and restrictions on the time for exercise). Under certain circumstances, the specifications of outstanding contracts (including the exercise price of an option) may be modified by the exchange or clearing house to reflect changes in the underlying interest.

5.  Suspension or restriction or trading and pricing relationships

Market conditions (e.g. illiquidity) and/or the operation of the rules of certain markets (e.g. the suspension of trading in any contract or contract month because of price limits or "circuit breakers") may increase the risk of loss by making it difficult or impossible to effect transactions or liquidate/offset positions. If you have sold options, this may increase the risk of loss.

Further, normal pricing relationships between the underlying interest and the future, and the underlying interest and the option may not exist. This can occur when, for example, the futures contract underlying the option is subject to price limits while the option is not. The absence of an underlying reference price may make it difficult to judge "fair" value.

6.  Deposited cash and property

You should familiarize yourself with the protections accorded money or other property you deposit for domestic and foreign transactions, particularly in the event of a firm insolvency or bankruptcy. The extent to which you may recover your money or property may be governed by specific legislation or local rules. In some jurisdictions, property which has been specifically identifiable as your own will be pro-rated in the same manner as cash for purposes of distribution in the event of a shortfall.

7.  Commission and other charges

Before you begin to trade, you should obtain a clear explanation of all commissions, fees and other charges for which you will be liable. These charges will affect your net profit (if any) or increase your loss.

8.  Transactions in other jurisdictions

Transactions on markets in other jurisdictions, including markets formally linked to a domestic market, may expose you to additional risk. Such markets may be subject to regulation which may offer different or diminished investor protection. Before you trade you should inquire about any rules relevant to your particular transactions. Your local regulatory authority will be unable to compel the enforcement of the rules of regulatory authorities or markets in other jurisdictions where your transactions have been effected. You should ask the firm with which you deal for details about the types of redress available in both your home jurisdiction and other relevant jurisdictions before you start to trade.

9.  Currency risks

The profit or loss in transactions in foreign currency-denominated contracts (whether they are traded in your own or another jurisdiction) will be affected by fluctuations in currency rates where there is a need to convert from the currency denomination of the contract to another currency.

10.  Trading facilities

Most open-outcry and electronic trading facilities are supported by computer-based component systems for the order-routing, execution, matching, registration or clearing of trades. As with all facilities and systems, they are vulnerable to temporary disruption or failure. Your ability to recover certain losses may be subject to limits on liability imposed by the system provider, the market, the clearing house and/or member firms. Such limits may vary: you should ask the firm with which you deal for details in this respect.

11.  Electronic trading

Trading on an electronic trading system may differ not only from trading in an open-outcry market but also from trading on other electronic trading systems. If you undertake transactions on an electronic trading system, you will be exposed to risks associated with the system including the failure of hardware and software. The result of any system failure may be that your order is either not executed according to your instructions or is not executed at all.

12.  Off-exchange transactions

In some jurisdictions, and only then in restricted circumstances, firms are permitted to effect off-exchange transactions. The firm with which you deal may be acting as your counter-party to the transaction. It may be difficult or impossible to liquidate an existing position, to assess the value, to determine a fair price or to assess the exposure to risk. For these reasons, these transactions may involve increased risks. Off-exchange transactions may be less regulated or subject to a separate regulatory regime. Before you undertake such transactions, you should familiarize yourself with applicable rules and attendant risks.

# ELECTRONIC TRADING AND ORDER ROUTING SYSTEMS DISCLOSURE STATEMENT*

Electronic trading and order routing systems differ from traditional open outcry pit trading and manual order routing methods. Transactions using an electronic system are subject to the rules and regulations of the exchange(s) offering the system and/or listing the contract. Before you engage in transactions using an electronic system, you should carefully review the rules and regulations of the exchange(s) offering the system and/or listing contracts you intend to trade.

## DIFFERENCES AMONG ELECTRONIC TRADING SYSTEMS

Trading or routing orders through electronic systems varies widely among the different electronic systems. You should consult the rules and regulations of the exchange offering the electronic system and/or listing the contract traded or order routed to understand, among other things, in the case of trading systems, the system's order matching procedure, opening and closing procedures and prices, error trade policies, and trading limitations or requirements; and in the case of all systems, qualifications for access and grounds for termination and limitations on the types of orders that may be entered into the system. Each of these matters may present different risk factors with respect to trading on or using a particular system. Each system may also present risks related to system access, varying response times, and security. In the case of internet-based systems, there may be additional types of risks related to system access, varying response times and security, as well as risks related to service providers and the receipt and monitoring of electronic mail.

## RISKS ASSOCIATED WITH SYSTEM FAILURE

Trading through an electronic trading or order routing system exposes you to risks associated with system or component failure. In the event of system or component failure, it is possible that, for a certain time period, you may not be able to enter new orders, execute existing orders, or modify or cancel orders that were previously entered. System or component failure may also result in loss of orders or order priority.

## SIMULTANEOUS OPEN OUTCRY PIT AND ELECTRONIC TRADING

Some contracts offered on an electronic trading system may be traded electronically and through open outcry during the same trading hours. You should review the rules and regulations of the exchange offering the system and/or listing the contract to determine how orders that do not designate a particular process will be executed.

## LIMITATION OF LIABILITY

Exchanges offering an electronic trading or order routing system and/or listing the contract may have adopted rules to limit their liability, the liability of FCMs, and software and communication system vendors and the amount of damages you may collect for system failure and delays. These limitations of liability provisions vary among the exchanges. You should consult the rules and regulations of the relevant exchange(s) in order to understand these liability limitations.

*Each exchange's relevant rules are available upon request from the industry professional with whom you have an account. Some exchanges' relevant rules also are available on the exchange's Internet home page.

/nsm(MISC:ElecTrad.caw)

# Annex C

(Email correspondence re: Interest rate)

## Adam Butterfield

**From:** McManus, William [wmcmanus@lehman.com]
**Sent:** Monday, October 30, 2006 02:51 PM
**To:** Adam Butterfield
**Cc:** Thomas Norrby
**Subject:** RE: Interest rates

Ok we will start today, changing rate from t-bill plus 15bp to fed funds (no add on)
regards
Bill

---

**From:** Adam Butterfield [mailto:adam.butterfield@moorecap.com]
**Sent:** Monday, October 30, 2006 2:40 PM
**To:** McManus, William
**Cc:** Thomas Norrby
**Subject:** RE: Interest rates

if your guys can start it immediatley that would be excellent...

just let us know the rate that they are comfortable with and we can go from there...thanks bill

---

**From:** McManus, William [mailto:wmcmanus@lehman.com]
**Sent:** Monday, October 30, 2006 02:37 PM
**To:** Adam Butterfield
**Cc:** Thomas Norrby
**Subject:** RE: Interest rates

Adam,
No problem on this, do you want to start immediately, or November 1.
Bill

---

**From:** Adam Butterfield [mailto:adam.butterfield@moorecap.com]
**Sent:** Monday, October 30, 2006 1:40 PM
**To:** McManus, William
**Cc:** Thomas Norrby
**Subject:** Interest rates

Bill-
        After looking over the rate schedule that you sent me last week, we have determined that our T Bill +.15bps
with Lehman is not competitive with what we are receiving from the other FCMs on the street. I went through the
exercise back in July of reviewing our interest rates across the board, and overlooked LB because of the special
rate already in place. We have switched to a Fed Funds rate with all other brokers, and would like to do the same
with Lehman Bros. Please review with your treasury group and let us know what kind of Fed Funds based rate
LB is willing to work with. Thanks.

Adam

10/30/2006

015-79502

| | USD Balance | Rate | Interest | CHF Balance | Rate | Interest | EUR Balance | Rate | Interest |
|---|---|---|---|---|---|---|---|---|---|
| 01-Sep | 61,666,464.27 | 2.09% | 3,586.74 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 02-Sep | 61,666,464.27 | 2.09% | 3,586.74 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 03-Sep | 61,666,464.27 | 2.09% | 3,586.74 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 04-Sep | 61,666,464.27 | 2.09% | 3,586.74 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 05-Sep | 74,666,464.27 | 2.09% | 4,342.87 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 06-Sep | 74,666,464.27 | 2.09% | 4,342.87 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 07-Sep | 74,666,464.27 | 2.09% | 4,342.87 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 08-Sep | 78,666,464.27 | 2.09% | 4,575.52 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 09-Sep | 78,666,464.27 | 2.09% | 4,575.52 | (135.40) | 1.42% | (0.01) | 114,142.20 | 3.92% | 12.42 |
| 10-Sep | 83,177,206.61 | 2.09% | 4,837.88 | (135.40) | 1.42% | (0.01) | 114,142.20 | 3.92% | 12.42 |
| 11-Sep | 84,847,206.61 | 2.09% | 4,935.02 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 12-Sep | 88,207,206.61 | 2.09% | 5,130.45 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 13-Sep | 88,207,206.61 | 2.09% | 5,130.45 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 14-Sep | 88,207,206.61 | 2.09% | 5,130.45 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 15-Sep | 78,935,682.65 | 2.09% | 4,591.18 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 16-Sep | 78,935,682.65 | 2.09% | 4,591.18 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 17-Sep | 78,935,682.65 | 2.09% | 4,591.18 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| 18-Sep | 78,935,682.65 | 2.09% | 4,591.18 | (135.40) | 1.42% | (0.01) | 14,142.20 | 3.92% | 1.54 |
| | | | $80,055.59 | | | SFr. -0.20 | | | € 49.47 |
| | FX Rate | 1.0000 | | FX Rate | 1.1046 | | FX Rate | 1.4348 | |
| | USD Equiv | $80,055.59 | | USD Equiv | ($0.18) | | USD Equiv | $70.98 | |

Total USD Interest    $80,126.39

# Attachment 2

**(Discretionary Authority)**

**Attachment 2**

## Customer Claim Form
## Lehman Brothers Inc.

This Attachment 2 supplements and forms part of the Customer Claim Form filed on behalf of Moore Global Investments, L.P., Account Number 01579502, and responds to Item 10, as follows:

Have you ever given any discretionary authority to any person to execute securities transactions with or through LBI on your behalf? Give names, addresses and phone numbers.

Moore Global Investments, L.P. ("MGI") has granted discretionary authority to Moore Capital Management, L.P., as its investment manager. The contact details for the investment manager are provided on page 1 of the claim form.

Moore Global Investments, L.P.

Name: James Danza

Title: Treasurer, Moore Capital Management LP, Investment Manager

Date: 1/27/09

# Attachment 3

**(Proof of Authority)**

## MOORE CAPITAL MANAGEMENT, LP

### SECRETARY'S CERTIFICATE

The undersigned is duly elected and acting Secretary of Moore Capital Management, LP (the "Company"). The Secretary hereby certifies that:

1. The Company acts as the Investment Manager for Moore Macro Fund, LP and Moore Global Investments, LP pursuant to an Investment Management and Trading Authorization Agreement.

2. Each of the individuals set forth below presently holds the office in the Company set forth next to such person's name, each being duly qualified and now acting as such.

3. Each of the individuals set forth below are authorized and empowered to sign documents, including but not limited to SIPC Claim forms, and otherwise act on behalf of the Company and the Funds the Company manages; and to take all actions necessary or appropriate with respect to the affairs of the Company and the Funds the Company manages.

| | |
|---|---|
| Anthony DeLuca | Chief Financial Officer |
| Mohsen Fahmi | Chief Operating Officer |
| Michael J. Inserra | Chief Administrative Officer |
| Lawrence M. Noe | Vice President (Tax Director) |
| James E. Kaye | Vice President (General Counsel) & Secretary |
| Denise M. Jeffries | Vice President (Finance) |
| James Danza | Treasurer |

IN WITNESS WHEREOF, I have executed this Certificate as of this 27th day of January 2009.

James E. Kaye
Secretary