1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555(JMP)


- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS INC., et al.


         Debtors.

- - - - - - - - - - - - - - - - - - - -x


         United States Bankruptcy Court

         One Bowling Green

         New York, New York


         May 6, 2010

         1:32 PM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

HEARING re Swedbank's Memorandum of Law for Stay Pending Appeal

of the Order Granting the Debtors' Motion Enforcing the

Automatic Stay Against and Compelling Payment of Post-Petition

Funds by Swedbank AB

Transcribed by:  Lisa Bar-Leib

3

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES, LLP

4         Attorneys for Lehman Brothers Holdings, Inc.

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:   RICHARD P. KRASNOW, ESQ.

9         DENISE ALVAREZ, ESQ.

10

11   SALANS, LLP

12        Attorneys for Swedbank

13        620 5th Avenue

14        New York, NY 10020

15

16   BY:  CLAUDE D. MONTGOMERY, ESQ.

17

18   MILBANK, TWEED, HADLEY & MCCLOY, LLP

19        Attorneys for Official Committee of Unsecured Creditors

20        One Chase Manhattan Place

21        New York, NY 10005

22

23   BY:  EVAN R. FLECK, ESQ.

24

25

4

          P R O C E E D I N G S

1          THE COURT:  Be seated please.  Mr. Montgomery, it's

2  your motion.

3          MR. MONTGOMERY:  Thank you, Your Honor.  Your Honor,

4  first, I would like to say thank you for the accommodation and

5  letting us come today in the middle of your extremely busy

6  trial with respect to Barclays Lehman stew.  I have a

7  housekeeping matter that Your Honor may know.  We filed this

8  morning a corrected extended --

9          THE COURT:  I saw it.

10          MR. MONTGOMERY:  -- if you -- I have a copy --

11          THE COURT:  I've read it.  I don't need it.

12          MR. MONTGOMERY:  Thank you.  Your Honor, obviously, we

13  are not here to reargue or ask you to reconsider the decision

14  that you wrote last night and the order that you entered last

15  night as well.  Instead, we are here simply to ask Your Honor

16  for a stay pending appeal.  We have, as of 1:00, filed a notice

17  of appeal with respect to yesterday's order, Your Honor.  In

18  that regard, we ask you to undertake a review or accommodate us

19  with respect to the standard that this Court should be applying

20  with respect to our request for relief today on behalf of the

21  bank.

22          The two cases that, I think, we've cited to Your Honor

23  which dispel the notion of a rigid rule, are the In re Adelphia

24  case which granted a stay subject to a bond; and In re Suprema

5

1    case which granted a stay without a bond.  We have, Your Honor,

2    said that, if necessary, we will post a bond that is re -- if

3    required by the Court.  We've also suggested to Your Honor that

4    no bond should be required given both the solvency of the

5    debtor and the availability of -- excuse me -- solvency of the

6    bank.

7          THE COURT:  You were right when you said that.

8          MR. MONTGOMERY:  Actually, unfortunately, I wasn't

9    correct about the solvency of the debtor, Your Honor.

10          THE COURT:  No.  You were right, though, that there's

11    a very significant fund of assets that can provide assurance of

12    repayment in the event that you should be successful on your

13    appeal.  And I view you're likelihood of success as close to

14    zero.

15          MR. MONTGOMERY:  Your Honor, I think the -- I

16    understand that you do not think we are likely to win and I

17    heard you just now say that our probability of success is close

18    to zero.  Obviously, Your Honor, we disagree; otherwise we

19    wouldn't be --

20          THE COURT:  Well, somebody must disagree.  I don't

21    understand what you're doing.  I, frankly, think this is a huge

22    waste of time --

23          MR. MONTGOMERY:  Well, thank you, Your Honor --

24          THE COURT:  I'm accommodating you but this is a huge

25    waste of time.

6

1          MR. MONTGOMERY:  Your Honor, I must ask --

2          THE COURT:  You should pay the money, prosecute your

3    appeal and take your chances.

4          MR. MONTGOMERY:  Your Honor, I think, if I may just

5    indicate to you why I think the loss of the setoff right

6    constitutes the requisite irreparable injury.

7          THE COURT:  What kind of claim would you have against

8    the Lehman estate in the event that you should be successful in

9    the appeal?

10         MR. MONTGOMERY:  And we had already turned over the

11   money to --

12         THE COURT:  Absolutely.

13         MR. MONTGOMERY:  That's not at all clear to me.  We

14   have already filed a proof of claim for X million dollars

15   relating to the ISDA accounts.  In that proof of claim, we

16   reserve the right to setoff.  Presumably, all that we would

17   have had we turned over the money is the rights established by

18   our proof of claim which are those of a general unsecured

19   creditor.  This is not a money judgment case.  This is a

20   automatic stay enforcement case brought by the debtor.  We

21   don't have the capacity to reverse the money judgment.  All

22   what we're asking for is reversal of Your Honor's order

23   directing us to cease the retention of the accounts.  Now,

24   there is money clearly involved there but what we're losing is

25   the right to setoff a krona debt against a krona asset, if you

7

1    will.  What the debtor is asking us to do is to take a krona

2    debt, persuade Your Honor after we win, then it can be

3    translated from dollars, which are the only thing that the

4    debtor can pay in, translate it back to krona, try to put us

5    back to where we were on the date that the Court entered the

6    order in krona, refund the account and then say, okay, now you

7    may set off the results.  That, I think, constitutes the

8    concept of a hypothetical possibility of reestablishing relief

9    that is a series of things the Court can do, no one of which is

10   mandated by a simple reversal of the judge's -- of Your Honor's

11   decision that we are violating the automatic stay if we've

12   actually turned over the money.  If we were absolutely certain,

13   and if the Court were absolutely certain, that there would be

14   no unsecured versus priority or administrative claim issue,

15   absolutely no concern that the right to setoff wouldn't be lost

16   through the very plan of reorganization that might get -- might

17   get confirmed during this interim period, if those kinds of

18   issues all disappear, then maybe we've got the ability to, say,

19   give the money -- give it back.  But, Your Honor, we don't see

20   that as being the actual circumstances Your Honor is faced with

21   or that we are faced with.  That's the only reason why we are

22   asking for the extraordinary request -- extraordinary relief of

23   a stay pending the appeal.  No other reason.  We're willing to

24   bond it if necessary.  We're willing to bond the full amount in

25   U.S. dollars, if necessary, because we are so convinced that if

8

1   we actually pay the krona account, we've killed our right to a

2   setoff.  And that's the -- that, we think, qualifies as

3   irreparable nature.  Nothing more extraordinary than that, Your

4   Honor.  And the reason --

5          THE COURT:  How is there irreparable harm if this is

6   just about money?  And it's just about money.  You just said

7   that.

8          MR. MONTGOMERY:  What is said was that it was our

9   right to setoff, Your Honor.  The debtor didn't sue us in an

10  adversary proceeding for a money judgment for which, if we pay

11  the money over, we could simply get it back pursuant to

12  reversal of the money judgment.

13         THE COURT:  No.  You unilaterally and without obvious

14  authority simply held onto the money.

15         MR. MONTGOMERY:  Your Honor, because of the safe

16  harbor rights under 560 and 561 --

17         THE COURT:  You can read my opinion.  You know what I

18  think of those rights.

19         MR. MONTGOMERY:  I absolutely do, Your Honor.  And I

20  think -- I just am compelled to seek Your Honor's indulgence

21  that having read your opinion, we understand why you think

22  we're wrong.  And we think that the -- page 13, which sort of

23  nicely summarizes, if you will, the dispute between is the

24  expression of no other stay or otherwise affect language of 566

25  overridden by the failure to list 560 and 553(a).  I mean,

9

1    that's basically, if you will, the dispute because I don't

2    think there's any argument that the corporate entities are the

3    same.

4        THE COURT:  So you like page 13 of the opinion?  Is

5    that what you're saying?

6        MR. MONTGOMERY:  I say it is the essence, I believe,

7    of the dispute between ourselves and the debtor as Your Honor

8    has reached the determination.  I wouldn't be standing here if

9    we did not think we had credible arguments that Your Honor,

10   while reasoned, is not correct.  That's the only reason why

11   we're asking for --

12       THE COURT:  It's your absolute right to take an

13   appeal.  I'm happy to have you do it.  You've already done it.

14   That's fine.  But how do you qualify for a stay pending appeal?

15   That's the problem I'm having.

16       MR. MONTGOMERY:  Okay.  The -- with the non-rigid

17   rule, we think you are under -- we are under the circumstances

18   where there is, in essence, if you look at page 13, conflicting

19   statutory provisions.  We don't think there's a conflict.  Your

20   Honor clearly has said we lose that proposition.  However, you

21   can't get away from -- we can't get away from -- the debtors

22   can't get away from -- that 560 and 561 themselves do say,

23   notwithstanding any stay or other provision of the Code.  And I

24   think that to be even more candid, on page 13:  "Improperly" --

25   you said, if you will, "Improperly conflates shall not be

10

1    stayed...", skipping out, "avoided, or otherwise limited return

2    by operation of any provision of this title."  That is the

3    dispute, Your Honor.  And we are relying squarely on language.

4    We think it's plain meaning.  Your Honor has clearly said 553's

5    silence on this is plain meaning.  We think that in the context

6    of what appears to be a structural plain meaning fight, that's

7    not the kind of no chance of success that should automatically

8    deny us a right to a stay pending appeal.

9         Obviously, Your Honor, will -- you will say whatever

10   you're going to say at the conclusion of Mr. Krasnow's remarks.

11        THE COURT:  Well, I didn't say you had no chance of

12   success.  I said it was close to zero.

13        MR. MONTGOMERY:  Well, in the world of derivatives,

14   that could yield big profits, Your Honor.  I think the other

15   points that I would just like to make, Your Honor, in that

16   regard is that with respect to the possibility of a bond --

17   which, were this a money judgment case, would give us a virtual

18   right to appeal.  And we ask the Court to consider as -- in the

19   Court's discretion, along the same lines.  Even though this is

20   not a money judgment request under 8005(1)(a), nonetheless, we

21   think that the 762 cases can be looked at for the proposition

22   that if a stay -- excuse me -- if a bond is, in fact, required

23   by the Court for nonjurisdictional reasons, that that virtually

24   assures us, should virtually assure us, of a stay pending

25   appeal.  And as Mr. Stenberg said in his declaration

11

1   unequivocally, if a bond is required, we'll put up the bond.

2        THE COURT:  In what amount?

3        MR. MONTGOMERY:  We didn't make an offer, Your Honor.

4   The debtor made a demand for the amount of the krona in the

5   account 11.4 plus 11 percent interest.  I believe that was the

6   debtor's demand.  I'll let them speak for themselves.  Our

7   indication was that if you applied the federal judgment rule as

8   opposed to the eleven percent rule under the local, you're

9   talking about much smaller additional number of 103,000

10  dollars.

11       THE COURT:  You know, even in the Metavante case,

12  which you may be familiar with, which recently was settled and

13  where I had a similar motion brought in that case by

14  Metavante's counsel for a stay pending appeal, Metavante's

15  counsel made the proposal that all of the money be turned over

16  to the debtor and held in escrow when some other secured

17  vehicle pending their appeal.  That was requested by Metavante,

18  rejected by the debtor and became irrelevant for my purposes

19  because I denied the stay.

20       Have you had any conversations with Mr. Krasnow or

21  anyone else about ways to avoid what I consider to be entirely

22  unnecessary litigation in the middle of the Lehman/Barclays

23  dispute which as you point out I have made time for just so you

24  could make this argument?

25       MR. MONTGOMERY:  Your Honor, we did have conversations

12

1   with the debtor about bonding and the debtors' management, if

2   you will, I believe, rejected -- Mr. Krasnow will confirm they

3   rejected any bond as --

4        THE COURT:  I wasn't talking about bonding.  You take

5   the money, you transfer it from your account by complying with

6   the order requiring you to turn over that money and the money

7   is put someplace.

8        MR. MONTGOMERY:  Well, Your Honor, no, we've not had

9   a --

10       THE COURT:  A place where --

11       MR. MONTGOMERY:  -- conversation about stipulation to

12   that regard for two reasons.  One, the debtors were pretty

13   clear they weren't agreeing to anything with respect to a stay

14   pending appeal in our conversations.  And second, Your Honor,

15   we have always --

16       THE COURT:  It wouldn't have been a stay pending

17   appeal.  It would have been a stipulation that would have

18   avoided this motion practice by giving you more security with

19   respect to your rights after you turned over the money in

20   compliance with the order directing you to do so.

21       MR. MONTGOMERY:  Your Honor, our plain and simple

22   problem is we think we've lost our right to setoff.  Unless

23   there's some elaborate if-then-then-that kind of stipulated

24   order that lets us put it back into the account, puts us back

25   to the status quo ante and then allows us to setoff.  But since

13

1    the debtor and we are at complete loggerheads with respect to

2    how to deal with this --

3         THE COURT:  Well, I've already said in my opinion you

4    have no right to setoff.  You are nonetheless asserting that

5    you have such a right.

6         MR. MONTGOMERY:  That is correct, Your Honor.

7         THE COURT:  Assuming that you actually have such a

8    right, it is today a secured claim.

9         MR. MONTGOMERY:  Your Honor, it is a debt under the

10   Strumpf case --

11        THE COURT:  A right of setoff is the functional

12   equivalent of a claim in the cash, isn't it?

13        MR. MONTGOMERY:  Well, Your Honor, the ability to set

14   off liabilities against debts can result in a computational

15   zeroing out of the debtors' obligations.  In this particular

16   circumstance, the debtor will remain liable under both the

17   guaranty and ISDAs that gave rise to that claim.  The question

18   then becomes what will be the net liability of the debtor post

19   setoff.  That whole conversation about whether it's dollars at

20   the petition date or it's krona at the setoff date, has never

21   occurred and has never been litigated.

22        THE COURT:  I'm really addressing a totally different

23   question which is why we're here.  And it seems to me that you

24   and the debtors have, in fact, invited this dispute, invited a

25   stay pending appeal litigation on an emergency basis in the

14

1  middle of the Barclays/Lehman trial so that you can then

2  proceed presumably to the district court after you lose here,

3  and I think you will, to present this in the district court and

4  then post a bond if you're successful there.  You have to see

5  it as highly unlikely that you're going to persuade me after

6  I've written a nineteen page decision yesterday that I got it

7  wrong especially when I spent considerable time on the textual

8  analysis of the comparison between the 560 and 561 arguments

9  and the mutuality requirement of 553.  So, it is a matter of

10  law and there's nothing personal here.  I just think you're

11  plain wrong.

12        MR. MONTGOMERY:  Your Honor, I more than understand

13  it.  Were it not for the fact that we believe we are obligated

14  to ask you first --

15        THE COURT:  Well, I know.  That's why you're here.

16        MR. MONTGOMERY:  That's why we're here.

17        THE COURT:  But the problem I'm having is well you

18  didn't ask the debtor first.

19        MR. MONTGOMERY:  We did.

20        THE COURT:  No, not for a stay pending appeal.  To

21  comply with the order, to turn the money over and to try to

22  establish some understanding that would give you rights,

23  whatever they might be, should you be successful on appeal.  If

24  that were the case, you wouldn't need to be here at all.  And

25  you knew that you lost when I ruled from the bench back in

15

1  April.

2        MR. MONTGOMERY:  Three weeks ago, Your Honor.

3  Absolutely.

4        THE COURT:  Right.

5        MR. MONTGOMERY:  And if I recall correctly, I stood up

6  then and asked Your Honor for a stay pending appeal and you

7  said only on paper, Mr. Montgomery.  I'm not considering an

8  oral motion.

9        THE COURT:  That's what I said.

10        MR. MONTGOMERY:  The -- all I can say with respect to

11  why haven't the -- why haven't Swedbank and LHBI tried to work

12  out some accommodation appeared to us that none was possible.

13  The debtors wanted the money.  They wanted to squash our right

14  to have an effective appeal.  Now, whether that's true or not,

15  that's how it appeared to the opposing litigant, Mr.

16  Montgomery, in the course of representing Swedbank.

17        THE COURT:  Fair enough.  Go on with your argument.

18  I'm just trying to understand why we're having this particular

19  emergency today and I gather there is no effort to try to

20  resolve it without the need for this process.  So, why don't

21  you proceed with the rest of your argument?

22        MR. MONTGOMERY:  Your Honor, I think we've had

23  sufficient amount of conversation on the second prong with the

24  possibility of success in the field.  We've outlined in our

25  papers why we think there is possibility of an appeal that will

16

1    be successful on behalf of Swedbank.  I think that the big

2    question left then after we've made our argument as to the

3    existence of the right to setoff or the loss of the right to

4    setoff being an irreparable injury is whether or not there is

5    harm to the debtor.  That third prong in this case revolves

6    around fluctuations in the value of currency.  That is, when

7    ultimately turned over, will the amount of krona in the account

8    be or not be exactly --

9         THE COURT:  Don't you think it's more than that?  I

10   mean we're talking about the automatic stay.  We're talking

11   about assets that ended up in your bank post-petition that

12   you've been holding onto.  And in the life of the Lehman case,

13   these are not dramatically large dollars.  But in the life of

14   most people, these are dramatically large dollars.  We're

15   talking in excess of eleven million dollars.  But you're

16   holding onto and, obviously, care enough about to be fighting

17   here and in the district court and wherever it takes you.  The

18   harm to the debtor is not having the money.  The harm to the

19   debtor is a party, apparently a good corporate citizen of

20   Sweden, that's illegally holding the money.  That's the harm.

21   And from an international bankruptcy perspective, if other

22   lenders think they can get away with this, they will.  You're

23   demonstrating this that responsible institutions will do

24   whatever it takes to hold onto the money.  Well, the law

25   doesn't permit that.  That's the harm.

17

1          MR. MONTGOMERY:  Well, Your Honor, and as you quite

2     correctly pointed out, that's also the source of the very

3     legitimate disagreement with the Court.  You're right that at

4     bottom, this is an automatic stay issue.  If the automatic stay

5     is what creates the distinction, the automatic stay is what

6     triggers the applicability or nonapplicability of 553.  The

7     automatic stay is what is invoked with the exception with

8     respect to an ipso facto clause under the safe harbor

9     provisions.  You're absolutely right.  This is all about

10    whether or not the automatic stay protects the financial

11    industry participants, whatever the ultimate consequences, or

12    it protects the debtor, whatever the consequences.

13          Your Honor is absolutely correct that that is the

14    policy dispute.  We think in the context of the international

15    markets where U.K. law or Swedish law are also implicated here

16    that letting those laws play out in the normal course of

17    contractual rights enforcement is the right answer.  Your Honor

18    clearly disagrees.  But when we say that when it comes to

19    valuing or assessing the nature of the harm suffered by the

20    debtors in that dispute, it really just comes down to money for

21    the debtors.  The policy issue as to whether or not this is a

22    floodgate problem is also a policy issue as to whether or not

23    the marketplace is allowed to rely on contracts as written if

24    they otherwise fall within the definition of the safe harbor

25    contract.

18

1      The fourth prong, Your Honor, ties actually to this

2   dispute which is where does the public interest fit in this?

3   We think, as we've just described, that it boils down to

4   dollars for the debtor, public interest, I think, I've just

5   described.  I think with that, Your Honor, I should let Mr.

6   Krasnow have his say.

7      THE COURT:  Okay.  Thank you, Mr. Montgomery.

8      MR. KRASNOW:  Richard Krasnow, Weil, Gotshal & Manges

9   on behalf of the debtors.  Your Honor, I won't address each of

10  the factors that Swedbank must demonstrate or, if you want to

11  use the analysis, that they suggest a weighing.  I don't think

12  it makes any difference in this case because I don't think they

13  can and I don't think they have satisfied any of the factors.

14      It sounds to me, in listening to the argument, that

15  their primary issue revolves around the immediate harm or

16  irreparable harm that they would allegedly suffer if Your

17  Honor's order were to be enforced today, if you will.  A harm

18  which they must demonstrate is imminent and is tangible.  And

19  their argument in that regard, as I understand it, appears to

20  focus on their expectation that in the remote possible -- in

21  the remote possibility or event that Your Honor were to be

22  reversed, which as I understand it, and maybe I'm

23  misunderstanding the effect of a reversal, would result in Your

24  Honor's order finding that the automatic stay was -- in effect,

25  precluded them from withholding the funds which required

19

1  them -- which requires them to turn the funds over to us, that

2  that order would essentially be vacated.  And if that order

3  were to be vacated, thus a determination having been made that

4  they were not in violation of the automatic stay by holding

5  onto those files, that they have the right to setoff, then what

6  would follow from that, it would seem to me, is that we would

7  have to repay the funds to Swedbank.  And they seem to be

8  suggesting that were there to be such a reversal and were that

9  logical result to flow from such a reversal, that the debtor

10 would not abide by orders of the appellate court or this Court

11 and we would not disgorge the funds.  If we disgorge the funds,

12 it would seem to me, again, as a result of a reversal, one

13 would go to status quo ante and they would have whatever rights

14 they would have.

15      In response to Your Honor's question that Mr.

16 Montgomery did not answer, as I understand the Bankruptcy Code,

17 a setoff right results in that party which has the setoff right

18 being deemed a secured creditor.  And Swedbank was rather

19 selective and is quoting from our proposed plan.  What they did

20 not refer to in the quote is that, under the provisions of our

21 plan, if a creditor has a setoff right, a valid setoff right,

22 then they are deemed a secured creditor and they will be paid

23 in full to the extent of the value of their collateral.  That's

24 what the plan provides.

25      THE COURT:  Let me ask you this question because it

08-13555-mg    Doc 9060    Filed 05/11/10    Entered 05/17/10 11:44:30    Main Document
Pg 20 of 27

20

1    goes to the heart of whether or not any stay pending appeal is

2    needed.  Even if it could be demonstrated that the various

3    standards have been met, is it the debtors' position that, in

4    the unlikely event, in my view, that the district court or the

5    court of appeals were to disagree with my analysis and decision

6    and say that mutuality does not apply where the safe harbors

7    are implicated and that contractual rights trump everything in

8    the Bankruptcy Code, including the mutuality provisions of 553,

9    and, as a result, my decision and order are vacated and it's

10   either remanded back here for further proceedings consistent

11   with the order or that's just the decision of the Court, is it

12   correct that the debtors will respect that order and to the

13   extent that there are cash assets in the estate, as no doubt

14   there will be under the Lamco model, would simply restore its

15   way back to status quo?  Is that something you're prepared to

16   commit to?

17         MR. KRASNOW:  I am prepared to commit that the

18   debtors-in-possession abide by orders of the Court.  And were

19   there to be a reversal and whether the appellate Court itself

20   directs a return of the funds or it's remanded and Your Honor

21   does, since the only basis for our holding the funds would be

22   Your Honor's decision and order which would have been reversed,

23   Your Honor, I think there's only one result that can flow from

24   that.

25         THE COURT:  Fine.  Sounds right to me, too.

21

1          MR. KRASNOW:  And so, Your Honor, we've addressed the

2     other standards that they need to satisfy on our papers.  Your

3     Honor has addressed them.  I think that in light of stating

4     what I think is simply the obvious, there is no basis

5     whatsoever for a stay to be issued pending appeal of Your

6     Honor's order to the district court.  Thank you.

7          THE COURT:  Okay.  Mr. Montgomery, anything more?

8          MR. MONTGOMERY:  No, Your Honor.  Just a housekeeping

9     matter.  If I understand it correctly, under the order to show

10    cause, the order Your Honor entered yesterday is stayed in its

11    effect until Your Honor renders a decision.  So we effectively

12    have until Friday to comply with the turnover request.  I just

13    wanted to indicate that if Your Honor is willing to extend that

14    by another twenty-four hours, that'd be great; otherwise I

15    understand the Court's decision.

16         THE COURT:  Another twenty-four hours would extend it

17    to when?

18         MR. MONTGOMERY:  Monday.  Your Honor entered an order

19    yesterday that said day after entry and had entered an order to

20    show because that said that order would be stayed until the

21    decision was -- so, we have until Friday, close of business New

22    York time, to fund.

23         THE COURT:  That should be easy for your bank, I would

24    think.  Here's my disposition of this and I don't think it's a

25    surprise to anyone who's read the colloquy.

22

1       The debtor brought a motion against Swedbank to

2    enforce the automatic stay and to compel payment of certain

3    funds in excess of eleven million dollars of which in dollars

4    are held by Swedbank in krona.  The facts are laid out in

5    detail in the memoranda decision that I issued yesterday.  I

6    also issued an order yesterday in the form that had been

7    submitted by the debtors following the last omnibus hearing.

8    At that omnibus hearing, following oral argument, I ruled from

9    the bench that I was going to be entering an order granting the

10    motion of the debtor and requiring Swedbank to turn over the

11    funds that it has been holding in accordance with an

12    administrative freeze for an extended period of time.

13       From the bench, I had indicated that because of the

14    stated desire of Swedbank through counsel to appeal my decision

15    to the district court that I wanted the opportunity to

16    supplement my findings and conclusions with a fully considered

17    written decision which I've done.  I believe that on the basis

18    of not only my bench ruling but the decision that, I gather,

19    the parties have had a chance to read, I view this as not

20    really that close a question and that a fair reading of the

21    Bankruptcy Code leads to the conclusion that mutuality remains

22    a necessary ingredient of every setoff in bankruptcy including

23    setoffs such as those at issue here that arise under ISDA

24    Master Agreements.

25       Having considered the motion for a stay pending

23

1    appeal, the various supplements that have been filed, including

2    the supplemental declaration of Mr. Johan Stenberg and the

3    reply papers that were filed -- I think it was the day before

4    yesterday by Swedbank -- this has been a very actively

5    litigated contested matter but one that I believe is purely a

6    legal question.  The likelihood of success on appeal, as I've

7    indicated, I view as -- I don't want to be uncharitable,

8    slim -- I may have gotten it wrong but I think I got it right.

9    And I believe that other judges will agree with me.  But if it

10   turns out that I'm wrong and the district court or the court of

11   appeals for the second circuit, upon consideration of this

12   question, were to disagree and reverse my order, based upon the

13   representations that have been made on the record by debtors'

14   counsel, I am satisfied that Swedbank is not at risk.  It's not

15   at risk either because it never had the right to hold the money

16   in the first place, or, if it should be determined that it did

17   have the right to hold the money, either the district court or

18   this Court will fashion a remedy so as to restore Swedbank to

19   status quo ante.  The fear that Swedbank has expressed that

20   there will be no remedy here because of plan provisions that

21   speak in terms of disallowing setoff at some time in the future

22   as to various claims that haven't been specified here, by the

23   way, as to a plan that is not yet before the Court, all this

24   amounts to speculation.

25          I believe that even if Swedbank did have a good

24

1   argument to make on appeal and even if it were successful on

2   appeal, it will not be harmed economically assuming that the

3   district court or this Court is able to fashion an appropriate

4   equitable remedy to restore the status quo and I think we can

5   do that.  So, your motion for a stay pending appeal is denied

6   for a whole host of reasons, not the least of which is that I

7   don't believe you have a meritorious appeal, but, most

8   significantly, I don't believe that Swedbank is exposed to any

9   appreciable economic risk here.

10          MR. KRASNOW:  Your Honor, Richard Krasnow.  We weren't

11   being presumptuous; we were being prepared.  I happen to have a

12   form of order --

13          THE COURT:  Great.

14          MR. KRASNOW:  -- which I have not previously shared

15   with counsel and I am doing so now which simply provides that

16   for the reasons stated in the record, the motion's denied.

17          THE COURT:  Fine.

18          MR. KRASNOW:  If I may hand it --

19          THE COURT:  You may hand that to one of my clerks and

20   we'll enter that this afternoon.

21          MR. KRASNOW:  Thank you, Your Honor.

22          THE COURT:  And as far as extending the payment date,

23   Swedbank's been aware of this for a long time and probably had

24   a pretty good idea of what the likelihood of success of getting

25   a stay pending appeal was, as well.  So, I think the money

25

1   should be paid in accordance with the original order to show

2   cause, which is before the close of business tomorrow.

3          MR. KRASNOW:  And thank, Your Honor, again for your

4   indulgence.

5       THE COURT:  No problem at all.  And we'll take a five

6   minute break so that we can reset the tables here and we'll

7   resume in five minutes.

8          (Whereupon these proceedings were concluded at 2:07 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

I N D E X


R U L I N G S

| DESCRIPTION | PAGE | LINE |
|---|---|---|
| Motion by Swedbank for stay pending appeal denied | 24 | 5 |
| Payments to be made in accordance with original order to show cause | 25 | 1 |

VERITEXT REPORTING COMPANY

212-267-6868                                                    516-608-2400

27

1

2                     C E R T I F I C A T I O N

3

4       I, Lisa Bar-Leib, certify that the foregoing transcript is a

5       true and accurate record of the proceedings.

6

7       _____

8       LISA BAR-LEIB

9       AAERT Certified Electronic Transcriber (CET**D-486)

10

11      Veritext

12      200 Old Country Road

13      Suite 580

14      Mineola, NY 11501

15

16      Date:  May 10, 2010

17

18

19

20

21

22

23

24

25