WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
:
**In re** : **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : **08-13555 (JMP)**
:
Debtors. : (Jointly Administered)
:
----------------------------------------------------------------x

## NOTICE OF FILING OF TERM SHEET WITH RESPECT TO
## THE RESTRUCTURING OF THE ARCHSTONE CREDIT FACILITIES

Reference is made to the motion, dated May 6, 2010 [Docket No. 8836] (the "Motion"),[1] of Lehman Brothers Holdings Inc., Lehman Commercial Paper Inc. and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105 and 363 of title 11 of the United States Code and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure for authorization and approval of the restructuring of the Archstone credit facilities, as further described in the Motion.

**PLEASE TAKE NOTICE** that, pursuant to the Motion, the Debtors hereby file the Term Sheet, annexed hereto as Exhibit A.  At the time of filing the Motion, the Debtors believed that an understanding would be reached among relevant parties with respect to the terms of the Restructuring prior to the date hereof.  Please note that the parties continue to negotiate the Restructuring and, therefore, the terms set forth in the Term Sheet have not been agreed to and

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

are subject to agreement by Barclays and Bank of America and the execution of definitive documentation. To the extent the terms of such definitive documentation are inconsistent in any material respect from those set forth in the Term Sheet as determined by the Debtors after consultation with the Creditors' Committee, the Debtors will seek further relief from the Court to approve and authorize such documentation and the transactions contemplated thereby.

Dated: May 18, 2010
   New York, New York

               /s/ Shai Y. Waisman
               Shai Y. Waisman

               WEIL, GOTSHAL & MANGES LLP
               767 Fifth Avenue
               New York, New York 10153
               Telephone: (212) 310-8000
               Facsimile: (212) 310-8007

               Attorneys for Debtors
               and Debtors in Possession

# **Exhibit A**

(see attached)

# INDICATIVE SUMMARY OF TERMS AND CONDITIONS
# ARCHSTONE POST-RESTRUCTURING CREDIT FACILITY

**Borrowers:** Archstone, The Lakes Holdings, LLC and a to-be-formed subsidiary of Junior Mezz Borrower will be joint and several borrowers.

**Credit Facilities:** An aggregate principal amount of up to approximately $835 million will be available through the following facilities (collectively, the "***Credit Facilities***"):

*Term Loan Facility*: The Cutoff Period Loans (approximately $237 million) under the Amended and Restated Credit Agreement, dated as of March 31, 2009, among Archstone, the Lenders and the Parent/Affiliate Guarantors party thereto (the "***Existing Archstone Credit Agreement***"), will remain outstanding as the "***Term Loan***." The initial principal amount of the Term Loan will be deemed fully funded on the closing date and will evidence (but not refinance) existing Cutoff Period Loans. The principal amount of the Term Loan shall include all interest thereon that is capitalized from time to time.

*Revolving Credit Facility:* A revolving credit facility in an aggregate principal amount of up to approximately $596 million (plus interest amounts which may be capitalized) will be made available in two tranches as follows:

*Tranche A Revolver*: A portion of the undrawn existing PDD Commitments in an amount to be agreed upon by the Lenders but not to exceed $100 million will be converted into one tranche of the revolving credit facility (the "***Tranche A Revolver***") and will be made available to the Borrowers on and after the closing date until the Maturity Date. New letters of credit will be available under the Tranche A Revolver on an uncommitted basis from Bank of America (in such capacity, the "***Issuing Lender***"), and each of the Lenders under the Tranche A Revolver will purchase participations in each such letter of credit. Availability under the Tranche A Revolver will be reduced on a dollar-for-dollar basis by the face amount of all such letters of credit. Amounts repaid under the Tranche A Revolver may be reborrowed. Tranche A Revolver loans will be available to provide funds for day to day operating expenses and working capital needs of the Borrowers and their subsidiaries, excluding in any event investments in joint ventures, acquisitions, other capital projects and general corporate purposes. Letters of credit under the Tranche A Revolver will be available to support the working capital needs of the Borrowers and their subsidiaries.

*Tranche B Revolver*: A second tranche of the Revolving Credit Facility (the "***Tranche B Revolver***") will be made available to the Borrowers on and after the closing date until the Maturity Date and will be comprised of (i) a portion of the undrawn existing PDD Commitments, which amount will be unfunded at closing, (ii) all PDD loans outstanding on the closing date, which amount will be deemed fully funded at closing

and (iii) all outstanding letters of credit issued under the Existing Archstone Credit Agreement, which letters of credit will be deemed issued under the Tranche B Revolver. The Tranche B Revolver will include sublimit in an amount to be agreed upon by the Lenders for the issuance of new letters of credit, which will be available on an uncommitted basis from the Issuing Lender. Each of the Lenders under the Tranche B Revolver will purchase participations in each letter of credit issued or deemed issued under the Tranche B Revolver. Availability under the Tranche B Revolver will be reduced on a dollar-for-dollar basis by the face amount of all such letters of credit. Amounts repaid under the Tranche B Revolver may be reborrowed. Tranche B Revolver loans deemed made on the closing date will evidence (but not refinance) PDD loans outstanding on the closing date. Tranche B Revolver loans made after the closing date will be available to provide funds for investments in joint ventures, acquisitions and other capital projects. Letters of credit under the Tranche B Revolver will be available to support the working capital needs of the Borrowers and their subsidiaries. The principal amount of Tranche B Revolver loans shall include any interest that is required to be capitalized in connection with the amount set forth in clause (ii) of the first sentence of this paragraph.

**Maturity:** No less than two years and no more than five years, which may include one-year extensions thereof at the sole discretion of the Lenders.

**Credit Documentation:** The Term Loan and the Revolving Credit Facility will be evidenced by a single Credit Agreement and other documentation reflecting the terms and provisions set forth in this Term Sheet and terms and conditions to be agreed by the Borrowers and the Lenders.

**Priority:** The Term Loan and the Revolving Credit Facility will be *pari passu* senior secured debt of the Borrowers and the Guarantors (as defined below). The Tranche A Revolver and Tranche B Revolver will be *pari passu* as between themselves.

**Guarantors and Subrogation of Rights:** The obligations of the Borrowers under the Credit Facilities and any Specified Hedge Agreements (as defined in the Existing Archstone Credit Agreement) will be guaranteed by Archstone and each of the guarantors under the Archstone Credit Agreement and each of the borrowers and guarantors under the existing affiliate credit facilities, and future direct and indirect domestic subsidiaries of the Borrowers (collectively, the "*Guarantors*").

To the extent any Borrower pays more than its share of any obligation, such Borrower shall be subrogated to the Lenders claims against the other Borrowers.

**Administrative Agent:** Bank of America, N.A. ("*Bank of America*") will act as administrative agent for the Lenders (the "*Administrative Agent*").

| | |
|---|---|
| **Lenders:** | The initial lenders will be Bank of America (or another direct or indirect subsidiary of Bank of America Corporation), Lehman Commercial Paper Inc. and Barclays Capital Real Estate Inc. (together with their respective permitted successors and assigns, collectively, the "***Lenders***"). |
| **Interest:** | The Credit Facilities will bear interest as set forth below: |
| | *Term Loan*: Interest on the Term Loan will be capitalized at a per annum rate approximately equal to the rate under the existing Cutoff Period Loans. |
| | *Tranche A Revolver*: Interest on the loans under the Tranche A Revolver will be payable in cash at a per annum rate approximately equal to the rate under the existing PDD loans. |
| | *Tranche B Revolver*: Interest on the loans under the Tranche B Revolver will be payable in cash at a per annum rate approximately equal to the rate under the existing PDD loans for any new loans made after the closing date. Interest on the loans under the Tranche B Revolver in respect of the outstanding PDD loans deemed drawn on the closing date will be capitalized at a per annum rate approximately equal to the rate under the existing PDD Loan. |
| | Interest on LIBOR loans will be calculated on a 360-day basis and interest on Base Rate loans will be calculated on a 365/366-day basis. |
| **Administrative Agent Fee:** | To be agreed upon by the Lenders but in no event more than is existing under the Existing Archstone Credit Agreement. |
| **Unused Line Fee:** | To be agreed upon by the Lenders. |
| **Letter of Credit Fees:** | Letter of credit fees will be payable at a per annum rate equal to the applicable margin on LIBOR loans under the Tranche A Revolver with respect to letters of credit issued under the Tranche A Revolver. Letter of credit fees will be payable at a per annum rate equal to equal to the applicable margin from time to time on LIBOR loans under the Tranche B Revolver with respect to letters of credit issued (or deemed issued) under the Tranche B Revolver. All letter of credit fees will be payable quarterly in arrears and shared proportionately by the Lenders under the applicable tranche of the Revolving Credit Facility. In addition, a fronting fee at a rate per annum agreed upon between the Borrowers and the Issuing Lender will be payable to the Issuing Lender for its own account, as well as customary issuance and documentary fees. |
| **Amortization:** | The Credit Facilities will have a bullet maturity on the Maturity Date. |

| | |
|---|---|
| **Mandatory Prepayments:** | Mandatory prepayment from certain events described in Section 2.12 of the Existing Archstone Credit Agreement (with any modifications to be agreed by the Borrower and the Lenders) will be applied first to prepay outstanding loans under the Tranche B Revolver until paid in full, then to prepay outstanding loans under the Tranche A Revolver until paid in full. If required by the Lenders, amounts remaining after such application will be utilized to cash collateralize letters of credit issued (or deemed issued) first under the Tranche B Revolver until all letters of credit issued thereunder have been cash collateralized, and then under the Tranche A Revolver until all letters of credit issued thereunder have been cash collateralized. Amounts remaining after such application will be utilized to prepay outstanding loans under the Term Loan.<br><br>The commitments under the Revolving Credit Facility will not be reduced by virtue of mandatory prepayments of loans thereunder made in accordance with the provisions of the previous paragraph. |
| **Optional Prepayments and Commitment Reductions:** | The Credit Facilities will be subject to optional prepayment at any time in whole or in part without premium or penalty (other than customary breakage costs associated with prepayment of LIBOR loans) on terms consistent with the Existing Archstone Credit Agreement. Each optional prepayment of loans outstanding under the Credit Facilities will be applied as the Borrowers shall direct to either the Tranche B Revolver or the Tranche A Revolver. Upon such time that the Revolver Facility has been paid in full and the commitments thereunder have been terminated, the Borrower shall have the ability to direct application of proceeds of any optional prepayment to the prepayment of the Term Loan.<br><br>The unutilized portion of any commitment under the Revolving Credit Facility may be reduced permanently or terminated by the Borrowers at any time without penalty. |
| **Security:** | The Credit Facilities will be secured by the assets and capital stock of each of the Borrowers and guarantors, including but not limited to all collateral that secures the Existing Archstone Credit Agreement and the affiliate credit facilities. Without limiting the foregoing, the Borrowers and their subsidiaries will enter into cash management arrangements that are acceptable to each of the Lenders and will cause each of their accounts, subject to exceptions to be agreed by the Borrower and the Lenders, to be subject to control agreements in form and substance satisfactory to each of the Lenders. |
| **Conditions Precedent to Initial Closing:** | Completion of the contemplated restructuring and other conditions precedent usual and customary for a transaction of this type including (i) execution and delivery of definitive amended and restated credit documentation, (ii) delivery of legal opinions, (iii) absence of defaults (including but not limited to defaults under material agreements with third parties), (iv) accuracy of representations and warranties, (v) evidence of authority, (vi) payment of fees and expenses (including |

legal fees), (vii) delivery of insurance certificates, (viii) a first priority perfected security interest in the Collateral to the extent available and (ix) the Lenders shall be satisfied that all requisite governmental authorities and material third parties shall have approved or consented to the Credit Facilities and the contemplated restructuring to the extent required to avoid a material adverse effect on the Borrowers and their subsidiaries and joint ventures.

**Conditions Precedent to Each Borrowing Under the Revolving Credit Facility:** Each borrowing and each issuance or renewal of a letter of credit under the Revolving Credit Facility will be subject to satisfaction of the following conditions precedent: (i) all of the representations and warranties in the definitive credit documentation shall be true and correct in all material respects as of the date of such extension of credit unless such representation and warranty relates to an earlier date and then such representation and warranty shall be true and correct in all material respects as of such earlier date; (ii) no default or event of default under the definitive credit documentation shall have occurred and be continuing or would result from such extension of credit; (iii) delivery of a borrowing notice; and (iv) if required by the Lenders, compliance with actual and projected budgets under terms to be agreed by the Borrower and the Lenders with respect to draws under the PDD facility.

**Representations and Warranties:** The representations and warranties in the Existing Archstone Credit Agreement, with modifications, including the modifications of provisions, to be agreed by the Borrowers and the Lenders.

**Covenants:** The affirmative and negative covenants in the Existing Archstone Credit Agreement, with modifications, including the modifications of provisions, to be agreed by the Borrowers and the Lenders.

**Events of Default:** The events of default in the Existing Archstone Credit Agreement, with modifications, including the modifications of provisions, to be agreed by the Borrowers and the Lenders.

**Assignments and Participations:** The assignment and participation provisions in the Existing Archstone Credit Agreement.

**Waivers and Amendments:** Amendments and waivers of the provisions of the credit documentation will require the approval of majority Lenders, with tranche, super-majority and unanimous consent requirements with respect to specified matters to be agreed.

**Indemnification:** The Borrowers will indemnify and hold harmless, and provide releases from claims against, the Administrative Agent, each Lender and each of their affiliates and related parties on the terms set forth in the Existing Archstone Credit Agreement.

**Governing Law:** New York.

| | |
|---|---|
| **Expenses:** | The Borrowers will reimburse the reasonable expenses of the Administrative Agent, the Issuing Bank and the Lenders on the terms set forth in the Existing Archstone Credit Agreement with changes to be agreed by Borrowers and Lenders. |
| **Flex Letter:** | Flex Letter to be terminated. |
| **Other Facilities:** | The Development Loan and related collateral structure will remain in place. The maturity of the Development Loan will be extended for no less than two years and no more than five years, which may include one-year extensions thereof at the sole discretion of the Lenders. All Mezzanine Loans and all loans under the Existing Archstone Credit Agreement other than outstanding PDD Loans and Cutoff Period Loans will be converted to equity. All existing affiliate credit facilities will be terminated and amounts outstanding thereunder will be forgiven or otherwise extinguished. |

# Draft Term Sheet for Preferred Interests
# For Discussion Purposes Only

*This proposed term sheet is not an offer or commitment and does not purport to summarize all the conditions, covenants, representations, warranties and other provisions that would be included in definitive legal documentation.*

| | |
|---|---|
| Issuers | Archstone Multifamily Junior Mezz Borrower LP ("JMB") |
| | The Lakes Holdings LLC (the "Lakes") |
| | Archstone Multifamily Holdings I (Borrower-B) LP ("Holdings I") |
| Interests Offered | JMB will issue the following preferred interests (the "JMB Preferred Interests") to the Banks in exchange for a portion of the Bank Debt: |
| | • Class A preferred LP interests ("JMB Class A Interests") |
| | • Class B preferred LP interests ("JMB Class B Interests") |
| | • Class C preferred LP interests ("JMB Class C Interests") |
| | • Class D preferred LP interests ("JMB Class D Interests") |
| | • Class E preferred LP interests ("JMB Class E Interests") |
| | • Class F preferred LP interests ("JMB Class F Interests") |
| | The Lakes will issue the following preferred interests (the "Lakes Preferred Interests") to JMB in exchange for the contribution of a portion of the Bank Debt: |
| | • Class A preferred LLC interests ("Lakes Class A Interests") |
| | • Class B preferred LLC interests ("Lakes Class B Interests") |
| | • Class C preferred LLC interests ("Lakes Class C Interests") |
| | • Class D preferred LLC interests ("Lakes Class D Interests") |
| | • Class E preferred LLC interests ("Lakes Class E Interests") |
| | Holdings I will issue a single class of preferred LP interests (the "Holdings I Preferred Interests") to JMB in exchange for the contribution of the Freddie Mezz (Fixed) Debt. |
| | The JMB Preferred Interests, the Lakes Preferred Interests and the Holdings I Preferred Interests are referred to collectively as the "Preferred Interests". |
| Distribution Preference | The right to receive distributions on the Preferred Interests will accumulate as follows: |
| | • The rate applied to determine the Class A Preferred Return will be based upon the |

|  |  |
|---|---|
|  | interest rate provisions in the Tranche A Term Loan documents and the base liquidation preference for the Class A Interests will approximately equal the amount of Tranche A Term Loan converted (the "<u>Class A Base Liquidation Preference</u>").<br><br>• The rate applied to determine the Class B Preferred Return will be based upon the interest rate provisions in the Tranche B Term Loan documents and the base liquidation preference for the Class B Interests will approximately equal the amount of Tranche B Term Loan converted (the "<u>Class B Base Liquidation Preference</u>").<br><br>• The rate applied to determine the Class C Preferred Return will be based upon the interest rate provisions in the Revolving Loan documents and the base liquidation preference for the Class C Interests will approximately equal the amount of Revolving Loan converted (the "<u>Class C Base Liquidation Preference</u>").<br><br>• The rate applied to determine the Class D Preferred Return will be based upon the interest rate provisions in the Fannie Mezz loan documents and the base liquidation preference for the Class D Interests will approximately equal the amount of Fannie Mezz converted (the "<u>Class D Base Liquidation Preference</u>").<br><br>• The rate applied to determine the Class E Preferred Return will will be based upon the interest rate provisions in the Freddie Mezz (Floating) loan documents and the base liquidation preference for the Class E Interests will approximately equal the amount of Freddie Mezz (Floating) converted (the "<u>Class E Base Liquidation Preference</u>").<br><br>• The rate applied to determine the Class F Preferred Return will be based upon the interest rate provisions in the Freddie Mezz (Fixed) loan documents and the base liquidation preference for the Class F Interests will approximately equal the amount of Freddie Mezz (Fixed) converted (the "<u>Class F Base Liquidation Preference</u>").<br><br>Distributions will be made when, as and if determined by the Managing Member. With respect to each Issuer, no distributions will be made out of cash available for distribution (i.e., after taking into account the operating needs of the enterprise, including without limitation, those items described in "Permitted Junior Distributions" below) to the holders of common interests of such Issuer as long as such Issuer has Preferred Interests outstanding. |
| Liquidation Preference | If JMB is liquidated, dissolved, wound up or subject to a change of control, holders of the JMB Preferred Interests will have the right to receive their respective pro rata shares of the sum of (i) the Base Liquidation Preference for each class of JMB Preferred Interests plus (ii) the accumulated and unpaid Preferred Return for each class of JMB Preferred Interests, to and including the date of payment, before any payments are made to the holders of JMB's junior interests.<br><br>If the Lakes is liquidated, dissolved, wound up or subject to a change of control, JMB will have the right to receive an amount equal to the sum of (i) the Base Liquidation Preference for each class of the Lakes Preferred Interests, plus (ii) the accumulated and unpaid Preferred Return for each class of the Lakes Preferred Interest, to and including the date of |

|  | payment, before any payments are made to the holders of the Lakes' junior interests. |
|---|---|
|  | If Holdings I is liquidated, dissolved, wound up or subject to a change of control, JMB will have the right to receive an amount equal to the sum of (i) the Base Liquidation Preference for the Holdings I Preferred Interest plus (ii) the accumulated and unpaid Preferred Return for the Holdings I Preferred Interest, to and including the date of payment, before any payments are made to the holders of the Holdings I's junior interests. |
| Permitted Junior Distributions | Notwithstanding the foregoing, the Managing Member will be entitled in its sole discretion (subject to applicable contractual limitations) to make distributions from the Lakes to Archstone. |
| Maturity | The Preferred Interests will have no maturity date and the Issuers will not be required to redeem the Preferred Interests. The Issuers will not be required to set aside funds to redeem the Preferred Interests or any accumulated distributions thereon. |
| Optional Redemption/Call Right | The Issuers will be permitted to redeem the Preferred Interests at their option, in whole or in part, at any time and from time to time, for cash in an amount equal to the product of (a) the percentage interest of the Preferred Interests to be redeemed and (b) the Liquidation Preference. |
| Ranking | The Preferred Interests will rank senior to the Issuers' junior interests with respect to (i) the payment of distributions and (ii) payments of amounts upon liquidation, dissolution or winding up. As among the Preferred Interests, the following ranking will apply:<br><br>• Class D, Class E and Class F Interests will rank on parity with each other and will rank senior to the other classes of Preferred Interest;<br><br>• Class C will rank senior to the Class A and Class B Interests;<br><br>• Class A will rank senior to Class B. |
| Governance | JMB will be the Managing Member of the Lakes until the redemption in full of all Lakes Preferred Interests. JMB will continue to be managed in accordance with the Voting Agreement. |
| No Fiduciary Duties | Neither Managers nor interestholders of the Issuers will have any fiduciary duties. Holders of the Preferred Interests will have no fiduciary duties. |
| Amendment | Amendments to the Operating Agreements of the Issuers will be considered a "Special Major Matter" pursuant to the Voting Agreement. |
| Negative Covenants | Limitations on the incurrence of new debt (other than the debt that will be in place at the time of the conversion), without the consent of the Managing Member. |
| Financial Covenants | None. |
| Affirmative Covenants | None. |

| Lead Lenders Agreement | Tags, ROFOs and other transfer restrictions corollary to those in the Lead Lenders Agreement. |
| --- | --- |