KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Fax: (212) 715-8000

**JUDGE BUCHWALD   10 CV 4165**

Attorneys for Defendant

**DOC # 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARGARET BENNETT a/k/a MALGORZATA        :
BENNETT,                                 :
                                         :
                         Plaintiff,      :
                                         :   Adv. Proc. No. 10-_____
    - against -                          :
                                         :
                                         :
LEHMAN BROTHERS HOLDINGS INC.,           :
                                         :
                         Defendant.      :
                                         :
------------------------------------------------------------x

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT pursuant to 28 U.S.C. § 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure, defendant Lehman Brothers Holdings Inc. ("Lehman") hereby removes this action from the Supreme Court of the State of New York, County of New York, Index No. 104833/10 (the "Removed Action") to the United States District Court for the Southern District of New York and, upon such removal, request that the action then be transferred to the United States Bankruptcy Court for the Southern District of New York.

**Nature of this Proceeding**

1.  The Removed Action arises out of an employment contract between the Plaintiff and Lehman entered after Lehman filed for Chapter 11 protection, a matter currently

KL3 2778054.4

pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Because the Bankruptcy Court has core jurisdiction over disputes regarding contracts executed by a debtor post-petition, the Removed Action should be decided by that court.

**The Bankruptcy Case**

2. On September 15, 2008, (the "Petition Date") Lehman filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. The matter is pending in the Bankruptcy Court of the Southern District of New York before Judge James M. Peck under the caption In re Lehman Brothers Holdings Inc., No. 08-13555 (Bankr. S.D.N.Y.).

**The State Case**

3. On April 22, 2010, Margaret Bennett ("Plaintiff") served Lehman with a summons and complaint in the Removed Action in the Supreme Court of the State of New York, County of New York. A copy of the Summons and Complaint in the Removed Action is attached hereto as Exhibit A.

4. Plaintiff's Complaint alleges that Lehman breached two employment contracts she entered with the debtor-in possession. The first of these contracts was dated October 22, 2008 and executed on October 23, 2008. A copy is attached hereto as Exhibit B. Plaintiff alleges that this agreement, together with an agreement dated November 23, 2009 and executed December 3, 2009, represent the complete agreement between the parties. A copy of the agreement dated November 23, 2009 is attached hereto as Exhibit C. Both agreements were signed after the Petition Date.

**Entitlement to Removal**

5. Pursuant to 28 U.S.C. § 1452(a), "any claim or cause of action in a civil action" may be removed "to the district court where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334(b) provides the district courts with "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

6. "[T]he bankruptcy court has core jurisdiction, pursuant to § 157(b)(2)(A), over contract claims under state law when the contract was entered into post-petition. The adjudication of such claims is an essential part of administering the estate." In re Ben Cooper, Inc., 896 F.2d 1394, 1400 (2d Cir.1990) (superseded on other grounds).

7. The employment agreements entered into by the Plaintiff and the debtor-in-possession were indisputably offered and executed following the Petition Date. As a result, the Removal Action falls within the core jurisdiction of the Bankruptcy Court and is removable pursuant to § 1452.

8. Alternatively, the Removed Action is "related to" the bankruptcy pursuant to 28 U.S.C. § 1334 and, therefore, is removable pursuant to 28 U.S.C. § 1452. A case is "related to" a bankruptcy case if the resolution of that case "could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). Patently, Plaintiff's claim for breach of a contract with the debtor-in-possession could have a conceivable effect on Lehman's estate.

3

WHEREFORE, Lehman hereby removes the Removed Action from the Supreme Court of the State of New York, County of New York to the United States District Court for the Southern District of New York and, upon such removal, requests that the action promptly be transferred to the United States Bankruptcy Court for the Southern District of New York.

Dated: May 20, 2010

> KRAMER LEVIN NAFTALIS & FRANKEL LLP
>
> By: /s/ Katrina L. Baker
> Robert N. Holtzman
> Katrina L. Baker
> 1177 Avenue of the Americas
> New York, New York 10036
> (212) 715-9100
> RHoltzman@kramerlevin.com
> KBaker@kramerlevin.com
>
> *Attorneys for Defendant*
> Lehman Brothers Holdings Inc.

To:  Gabriel Fischbarg, Esq.
401 Fifth Avenue, 7th Floor
New York, NY 10075
212-401-4906

*Attorney for the Plaintiff*
Margaret Bennett

4

KL3 2778054.4

```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------X
MARGARET BENNETT a/k/a MALGORZATA
BENNETT,

                Plaintiff,

    -against-

LEHMAN BROTHERS HOLDINGS INC.,

                Defendant.
-------------------------------------X
```

Index No. 104633/10
Date Purchased: 4/14/10

**SUMMONS**

Plaintiff's address:
22 Alfred Dr.
Poughkeepsie, NY 12603

Basis of venue:
Defendant's address

To the above named defendant:

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer on the plaintiff within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if the summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Defendant's address:

1271 Avenue of the Americas, 38th Floor
New York, NY 10020

Dated:    New York, New York
          April 12, 2010          Yours, etc.

                                  _____
                                  Gabriel Fischbarg, Esq.
                                  401 Fifth Avenue, 7th Floor
                                  New York, New York 10075
                                  (212) 401-4906
                                  Attorney for plaintiff

Ex. A

return for certain compensation (the "Initial Agreement").

4. From November 3, 2008 to September 30, 2009, plaintiff properly performed her work with the title of Associate for the defendant. From October 1, 2009 to December 31, 2009, plaintiff continued to work for defendant under the terms of the Initial Agreement. From October 1, 2009 to December 31, 2009, plaintiff properly performed her work with the title of Associate for the defendant.

5. On or about November 23, 2009, plaintiff and defendant entered into a supplemental written employment agreement with a term from January 1, 2010 to December 31, 2010 whereby, among other things, plaintiff agreed to continue to work for defendant in return for certain compensation (the "Supplemental Agreement"). Under the Supplemental Agreement, plaintiff's entire employment agreement with defendant is the Initial Agreement together with the Supplemental Agreement (the "Entire Agreement").

6. On December 1, 2009, as a result of plaintiff's work performance at the defendant and defendant's predecessor entities, defendant promoted plaintiff from Associate to Assistant Vice President effective on January 1, 2010 and wrote plaintiff: "Congratulations on this well deserved recognition of your contributions and commitment to the Derivatives Unwind Program."

7. From January 1, 2010 to March 1, 2010, plaintiff

2

properly performed her work for the defendant. Under the Entire Agreement, defendant was entitled to terminate plaintiff's employment with defendant with or without "Cause" as defined in the Entire Agreement at anytime during plaintiff's employment. On March 1, 2010, defendant informed plaintiff that her employment with defendant was terminated with Cause. In truth, defendant did not have any justification whatsoever for terminating plaintiff's employment with Cause as defined in the Entire Agreement.

8. Under the Entire Agreement, plaintiff is entitled to certain compensation in the event she is terminated without Cause, namely, (1) her base salary from April 1, 2010 to December 1, 2010 ($93,750.00), (2) $6,666.66 as a bonus payment, and (3) four months base salary as a severance payment ($41,666.66), totaling $142,083.32.

9. In breach of the Entire Agreement, defendant terminated plaintiff's employment purportedly with Cause even though none of the elements required to terminate plaintiff with Cause existed under the definition of "Cause" in the Entire Agreement.

10. Defendant's breach of the Entire Agreement entitles plaintiff to damages in the amount of at least $142,083.32 plus interest from March 1, 2010 or such greater amount to be proven at trial.

JURY DEMAND

3

4

11. Plaintiff demands a trial by jury.

WHEREFORE, the plaintiff respectfully prays the Court for judgment as follows:

Judgment against defendant, in the amount to be provable at trial, but believed to be at least $142,083.32, plus applicable interest from March 1, 2010, together with the attorneys' fees, costs and disbursements of this action.

Dated:   New York, New York
         April 12, 2010      Yours, etc.

*[signature]*

Gabriel Fischbarg, Esq.
401 Fifth Avenue, 7th Floor
New York, New York  10016
(212) 401-4906
Attorney for plaintiff

4

# LEHMAN BROTHERS

WENDY M. UVINO
SENIOR VICE PRESIDENT
HUMAN RESOURCES

October 22, 2008

Margaret Bennett
22 Alfred Drive
Poughkeepsie, NY 12603

Dear Margaret:

1. I am pleased to confirm the compensation terms we have agreed to with respect to your employment by Lehman Brothers Holdings Inc. ("LBHI"). Your employment under this agreement will be effective as of November 03, 2008 (the "Effective Date") and is expected to continue for until September 30, 2009 (the "Initial Commitment Period").

    10-26-08

2. For your active employment with LBHI during the Initial Commitment Period, you will be paid an annualized base salary of $108,000, payable on a bi-weekly basis. You may also be eligible to receive a cash bonus for delivering certain identified objectives up to a total amount of $24,000, in recognition of your services during this period (the "Bonus Payment"). The Bonus Payment schedule is designed so that your Bonus Payment, subject to paragraph 3. below, will be paid as follows: (1) for service in the fourth quarter of 2008, payable on or before January 30, 2009 and (2) for service in calendar 2009, upon the earlier of (i) January 29, 2010, or (ii) within 30 days following the end of your Initial Commitment Period. See Compensation Summary attached.

3. At the end of the Initial Commitment Period (and at the end of any subsequent commitment periods thereafter), LBHI may, in its sole discretion, offer to extend your employment for an additional commitment period on substantially similar terms as set forth in this agreement (any such extension, a "Commitment Period"). Any offer regarding an extension at the end of the Initial Commitment Period or subsequent Commitment Period shall be made in writing no less than 30 days prior to the end of such period, and will specify your Bonus Payment opportunity and payment schedule for the applicable Commitment Period.

4. In the event your employment is terminated by LBHI involuntarily without Cause (as defined below) during any commitment period, or if you work through the end of the Commitment Period and receive no offer for an additional period thereafter as set forth above, you will be eligible to receive the following payments:

   - Base salary – the unpaid balance of your base salary payable through the end of the Commitment Period in accordance with standard payroll practices.

   - Bonus payment - a payment equal to a pro-rata portion of the Bonus Payment for the applicable Commitment Period, pro-rated for the period of your active employment during such period (less any bonus amounts previously paid to you during the Commitment Period), payable in accordance with the applicable Bonus Payment schedule.

   - Severance pay – severance equal to 1 week per month of your service with LBHI for the period commencing as of the date hereof and ending on your employment termination date, up to a maximum of 6 months of severance. Your severance pay shall be calculated based on your base salary at the time of your employment termination.

LEHMAN BROTHERS HOLDINGS INC.
1271 AVENUE OF THE AMERICAS 38TH FLOOR NEW YORK NY 10020
PHONE: 646 333 8311  FAX: 646 758 1415  EMAIL: WUVINO@LEHMAN.COM


Ex. B

Margaret Bennett
October 22, 2008
Page 2

5. If you resign your employment for any reason prior to the end of any Commitment Period, your base salary will end, and you will not be entitled to severance, the unpaid portion of any Bonus Payment, or other payments of any kind.

6. If you decline an offer by LBHI offer to extend employment through a new Commitment Period, you will be paid the Bonus Payment less any other amount already paid for the completed Commitment Period, but you will not be paid any severance.

7. In order to be eligible to receive severance pay or any other separation payment set forth in this letter, you will be required to sign a separation agreement that includes a waiver of any claims you may have against LBHI, and other terms as determined by LBHI. Any severance payments payable under this agreement shall be payable as salary continuation in accordance with standard payroll practices until the severance obligation is satisfied. For the purposes of this agreement, "Cause" means a termination of your employment by LBHI because of any of the following: (i) misconduct, (ii) breach of LBHI policies or rules, (iii) dishonesty, (iv) violation of laws or regulations, or (v) substantial and continuing failure to perform employment duties or obligations satisfactorily.

8. All compensation payments described in this letter will be paid in accordance with our customary payroll practices, and will be subject to applicable payroll and income tax withholding and other applicable deductions. In addition, you shall remain eligible to participate in the Lehman Brothers Holdings Inc. Group Benefit Plan (medical, dental, vision, etc.) and the Lehman Brothers Savings Plan (the "401(k) Plan"), subject to the applicable terms and conditions of such plans.

9. Please understand that the terms and conditions of your employment by LBHI are governed by standard Firm policies. While the foregoing commitments will be honored on the terms outlined above, this letter is not a contract of continuing employment. Your employment by LBHI is at-will, and either you or LBHI may terminate the employment relationship at any time for any reason, subject to any applicable notice requirement.

10. You understand that this letter represents the complete agreement between you and LBHI with respect to your compensation and other matters addressed in this letter, and that this letter replaces any prior written or oral agreements or understandings. **The parties hereto acknowledge that the compensation terms contained herein with respect to bonus and severance are subject to the approval of the Bankruptcy Court.** In the event that LBHI does not obtain approval from the Bankruptcy Court for this employment arrangement, this agreement shall be modified to take into account the decision of the Bankruptcy Court.

Margaret Bennett
October 22, 2008
Page 3

Margaret, please confirm your agreement to the above by signing a copy of this letter in the space provided below, and returning it to me no later than Friday, October 31, 2008.

Sincerely,

*[signature]*

Wendy M. Uvino
Senior Vice President
Human Resources

I agree to and accept the terms described in this letter and further acknowledge that no representations were made to induce the execution of this letter which are not expressly contained in this letter.

_____*[signature]*_____                      Date  10/23/2008
Margaret Bennett

*[Handwritten at bottom:]* As per conversation with Patrick, I would like to start on Nov 5th, Wednesday and take 3rd and 4th of Nov off. (MB) Thank You,

Margaret Bennett
October 22, 2008
Page 4

Compensation Summary:

| | |
|---|---|
| Initial Commitment Period: | Through September 30, 2009 |
| Base Salary (Annualized): | $108,000 |
| Bonus Potential (Initial Commitment Period): | $24,000 |
| Initial Bonus Payment Date(s): | January 30, 2009 |
| | October 31, 2009 |
| Severance: | 1 week per month as described in paragraph 4 |

Bonus – Performance Objectives:

To be determined with your team leader.

Extensions of Initial Commitment period:

For any extended Commitment Period ending after December 31, 2009, your second bonus payment will be paid no later than January 29, 2010.

# LEHMAN BROTHERS

November 23, 2009

*By Hand*
Margaret Bennett

Dear Margaret:

I am pleased to confirm that Lehman Brothers Holdings Inc. ("LBHI") has agreed to extend your employment until December 31, 2010, effective January 1, 2010. (the "Commitment Period"). Set forth below are the compensation terms we have agreed to with respect to this Commitment Period.

For your active employment with LBHI during this Commitment Period, you will be paid an annualized base salary of $125,000 payable on a bi-weekly basis.

You are eligible to receive a cash bonus for delivering certain identified objectives up to a total amount of $40,000, in recognition of your services during this Commitment Period (the "2010 Bonus Payment"). Your 2010 Bonus Payment will be determined and vest at the end of calendar year 2010 if you are employed with LBHI on such date.

If you continue your employment with LBHI through December 31, 2010, you will be entitled to not less than 80% of your 2010 Bonus Payment. If you are terminated by LBHI without Cause (as defined in the Initial Agreement) prior to December 31, 2010, you will receive a pro rata amount (based on your period of active employment during 2010) of your 2010 Bonus Payment (assuming a 100% pay-out) no later than 30 days following the termination of your employment.

Provided you remain actively employed with LBHI, you will be fully vested in the Bonus Payment described in the previous agreement(s) in the amount of $ 6,531, as of December 31, 2009. You hereby agree that vested Bonus Payments shall be paid on the date that LBHI generally pays employee bonuses (for calendar year 2009, no later than January 31, 2010).

In addition, you are fully vested in the amount of $19,660 of the Bonus Payment for 2009, and you hereby agree that such Bonus Payment shall be paid the earlier of (i) the date that LBHI generally pays 2009 employee bonuses (no later than January 31, 2010), or (ii) within 30 days following the termination of your employment for any reason.

Vested bonuses will be paid at the time LBHI pays bonuses to employees generally for the applicable calendar year (no later than January 31st of the following year). In the event your employment ends for any reason after any portion of your 2010 Bonus Payment has vested but before such vested portion is paid, you will be paid such vested amount within 30 days following your employment termination.

In addition to your 2010 Bonus Payment, you are eligible for a separate incentive opportunity under a new Derivatives Incentive Plan ("DIP") for calendar year 2010.

An incentive pool is being created for the Derivatives team based on certain performance criteria, including the amount of recovery value (cash and certain cash equivalents described in the DIP) and the amount of claims mitigated by the Derivatives work group determined at December 31, 2010. More detail regarding the calculation of the aggregate amount of the incentive pool is set forth in the DIP (a copy will be made available

Ex: C

Margaret Bennett
November 23, 2009
Page 2

to you). The total amount of the incentive pool will be determined as of December 31, 2010, but such total dollar amount cannot exceed $50 million.

Your fixed share in the incentive pool is: 1.4 basis points.

In addition, at the end of 2010, the Derivatives co-heads have the sole discretion to make an additional incentive award to you from a discretionary pool.

The maximum amount of all incentive payouts to you (fixed and discretionary) will not exceed $10,000.

If you are terminated by LBHI without Cause prior to July 1, 2010 or with Cause anytime during 2010, you will not be eligible to receive an incentive payment under the DIP.

If you are terminated by LBHI without Cause after July 1, 2010, you will receive 100% of your incentive payment under the DIP no later than January 31, 2011.

*If LBHI Does Not Offer An Extension*   If you continue your employment with LBHI through December 31, 2010, and LBHI does not offer to extend your employment beyond such date, you will receive 100% of your incentive payment under the DIP no later than January 31, 2011.

*If LBHI Offers an Extension.*   If you continue your employment with LBHI through December 31, 2010, and LBHI offers to extend your employment beyond such date, you will receive 75% of your 2010 incentive payment under the DIP no later than January 31, 2011 (i.e., 25% of your 2010 incentive payment shall be held back). LBHI intends to notify you regarding an extension of your employment by October 1, 2010. If you continue your employment through the extension date proposed by LBHI or you are terminated by LBHI without Cause or by reason of your death or total disability before such date, you will receive the remaining 25% of your 2010 incentive payment under the DIP no later than 30 days after the end of your extension date. You will forfeit the remaining 25% of your 2010 incentive payment under the DIP if you do not agree to the extension or you resign before the extension date proposed by LBHI.

- If LBHI offers to extend your employment beyond December 31, 2010 and you continue your employment with LBHI through the proposed extension date, (i) your Bonus Payment for 2011 will be not less than your 2010 Bonus Payment (subject to proration based on the period of your active employment during 2011), and (ii) you will be eligible for an additional payment equal to not less than 50% of your 2010 incentive payment under the DIP (subject to proration based on the period from January 1, 2011 to the proposed extension date); provided that such payments will be exclusive of the remaining 25% of your 2010 incentive payment under the DIP which was held back.
- If your employment is terminated by LBHI without Cause during 2011 before the proposed extension date, you will receive 100% of your 2011 incentive payment and a pro rata amount (based on your period of active employment during 2011) of your 2011 Bonus Payment (assuming a 100% pay-out).

Margaret Bennett
November 23, 2009
Page 3

Notwithstanding any other provision in this letter or the Initial Agreement, you shall forfeit all rights to your 2010 Bonus Payment or 2010 incentive payment under the DIP, as well as any similar bonus or incentive payments for 2011, if you commit an act or omission constituting Cause and are therefore terminated..

In the case of any ambiguity or conflict between the terms of this letter and the DIP, the terms of the DIP shall control. The provisions relating to your Bonus under the DIP is subject to bankruptcy court approval of the DIP, as proposed by LBHI.

You agree that LBHI may assign this letter agreement, together with all rights and obligations under this letter, without prior notice to or consent by you, to an affiliate of LBHI, a purchaser of or successor to any business of LBHI with respect to which you provide services, or an entity created in whole or in part to provide services to LBHI similar to those services you provide to LBHI as of the date of this letter.

During the time you provide services to LBHI or any of its subsidiaries or affiliates, and for a period of one year following the termination of your employment, you will not, without the consent of LBHI or any such subsidiary or affiliate, by yourself or in partnership or conjunction with, or as an employee, officer, director, manager, consultant or agent of, any firm, corporation, entity or other person, either directly or indirectly, solicit, entice, encourage or influence, or attempt to solicit, entice, encourage or influence, any employee, consultant or senior advisor of LBHI or any of its subsidiaries or affiliates to resign or leave the employ of LBHI or any such subsidiary or affiliate or hire, employ, engage or contract with any such person to perform services other than for the benefit of LBHI or any of its subsidiaries or affiliates.

You agree to keep in confidence the existence and terms of this letter and not discuss them with any person other than your immediate family, accountant or attorney.

All unpaid and vested bonus and incentive payments are considered "other separation payments", as described in your Initial Agreement, and therefore require a signed separation agreement. Any deferred bonus provision in your Initial Agreement continues to apply, unless specifically modified herein.

All other terms and conditions of your employment, including those relating to your entitlement to severance and other compensation upon termination of employment, will remain in effect as set forth in your original agreement with LBHI (the "Initial Agreement"). All compensation payments described in this letter will be paid in accordance with our customary payroll practices, and will be subject to applicable payroll and income tax withholding and other applicable deductions. The terms and conditions of your employment by LBHI will continue to be governed by standard Firm policies. Your employment by LBHI is at-will, and LBHI may terminate the employment relationship at any time for any reason without advance notice, and you may terminate employment at any time for any reason subject to 2 week notice requirement.

You understand that this letter, together with the Initial Agreement, represents the complete agreement between you and LBHI with respect to your compensation and other matters addressed in this letter.

Margaret Bennett
November 23, 2009
Page 4

Please confirm your agreement to the above by signing a copy of this letter in the space provided below, and returning it to Donna Fowler in Human Resources no later than November 30, 2009.

Sincerely,

*Donna Fowler*

Lehman Brothers Holdings Inc.

I agree to and accept the terms described in this letter and further acknowledge that no representations were made to induce the execution of this letter which are not expressly contained in this letter.

_____         _____12/03/2009_____
Margaret Bennett                                               Date

Margaret Bennett
November 23, 2009
Page 5

## Compensation Summary

| | |
|---|---|
| Commitment Period: | 12 Months |
| Base Salary (Annualized): | $125,000 |
| Bonus Potential (Commitment Period): | $40,000 |
| Bonus Vesting Date: | December 31, 2010 |
| | |
| 2009 Bonus Amount: | $26,191 (payable as described above) |

Derivatives Incentive Plan

| | |
|---|---|
| Fixed Share of Incentive Pool: | 1.4 bps |
| Discretionary Share of Incentive Pool: | If any, to be determined by Derivatives co-heads at 12/31/2010 |
| Maximum Incentive Payout: | $10,000 |
| | |
| Severance: | 1 week per month as described in Initial Agreement (6 months maximum) |