WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                          :   Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,       :   Case No. 08-13555 (JMP)
:
Debtors.                       :   (Jointly Administered)
:
------------------------------------------------------------------x

**DECLARATION OF JEFFREY FITTS**
**IN SUPPORT OF DEBTORS' MOTION PURSUANT TO**
**SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND FEDERAL**
**RULE OF BANKRUPTCY PROCEDURE 9019 FOR AUTHORIZATION TO**
**RESTRUCTURE CERTAIN TERMS OF THE ARCHSTONE CREDIT FACILITIES**

Pursuant to 28 U.S.C. § 1746, I, Jeffrey Fitts, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this declaration (the "Declaration") in support of the *Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 6004 and 9019 for Authorization to Restructure Certain Terms of the Archstone Credit Facilities* [Docket No. 8836] (the "Motion")[1] filed in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper Inc.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

("LCPI"), and their affiliated debtors, as debtors in possession (together, the "Debtors" and collectively with their non-debtor affiliates, "Lehman").

3. I am a Managing Director with Alvarez & Marsal Real Estate Advisory Services ("A&M"). I have more than 19 years of experience in assisting insolvent and troubled companies, with a focus on operational and financial restructuring efforts. Prior to joining A&M, I was a Managing Director with GE Commercial Finance ("GE"), where I led GE's Distressed Debt and Alternative Investment Group and managed complex distressed credits. Before joining GE, I was with the Corporate Workout Division (IRM) of Citicorp, where I spent three years managing investment grade and middle market corporate workouts. I began my career in 1990 as a workout officer and, later, an asset manager with Citicorp Real Estate, where I managed more than $1 billion of office, retail, and industrial projects. I received a bachelor's degree from the University of Delaware in 1988.

4. I was assigned to the representation of Lehman in September 2008. I currently serve as the Co-Head of Lehman's real estate group (the "Real Estate Group"). My primary responsibility as Co-Head of the Real Estate Group is day-to-day management and oversight of Lehman's real estate portfolio, including investments in, among others, the multi-family sectors. As Co-Head of the Real Estate Group, I oversee a number of Lehman employees, including Benjamin Herman and R. Webster Neighbor, who have been actively involved in finalizing the terms of the transactions described herein and in the Motion. I am a member of the Real Estate Group's Investment Committee, which is charged with approving certain of the Real Estate Group's investment decisions.

5. In 2007, certain of the Debtors and their non-Debtor affiliates made certain equity investments and loans in connection with the leveraged buyout of a publicly-

traded real estate investment trust known as Archstone Trust, formerly known as Archstone-Smith Trust (together with its affiliates, "Archstone"). In connection with the acquisition of Archstone, LCPI, Bank of America and Barclays (collectively, the "Co-Sponsors") provided secured financing to Archstone and its affiliates that consisted of certain term loans, revolving loans, a development loan and mezzanine loans (the "Acquisition Financing"). Through their non-Debtor affiliates, the Debtors currently hold approximately 47% of common equity interests in Archstone. Affiliates of Barclays Capital Real Estate Inc. and affiliates of Bank of America, N.A collectively hold approximately 52% of such interests. LCPI currently holds an interest of approximately $2.7 billion in the secured financing provided to Archstone.

6. The Debtors originally contemplated that Archstone would generate sufficient funds to repay the Acquisition Financing through property sales and operations. However, due to a decline in the state of the real estate market, it has proven difficult for Archstone to generate the revenues or property sales necessary to meet its liabilities, resulting in Archstone's need for additional liquidity. In January 2009, the Co-Sponsors modified the terms of the Archstone Credit Facilities pursuant to this Court's *Order Granting The Debtor's Motion Purusant to Sections 105(a), 363(b) And 365(a) of The Bankruptcy Code And Bankruptcy Rules 6004 And 6006 For Authorization to (I) Assume, As Modified, Certain Loan Agreements, And (II) Consummate Related Loans to be Made by Lehman Commercial Paper Inc. and Other Lenders to Archstone* (the "Initial Modification Order") [Docket No. 2677]. The Initial Modification Order provided Archstone with additional time to generate revenue through asset sales, by extending the maturity date of some of the loans provided by the Co-Sponsors, and authorized the Co-Sponsors to provide an additional $485 million as a new priority facility (the "Priority Financing") to offset Archstone's cash shortfalls.

7. In light of general economic conditions, the state of the real estate market, and related challenges faced by Archstone, the Debtors propose to effectuate a more comprehensive restructuring of the Acquisition Financing and the Priority Financing to improve Archstone's cash flow and liquidity on a long term basis (the "Restructuring") as set forth in the term sheet (the "Term Sheet") filed on the docket of these cases by notice (the "Notice") [Docket No. 9108] and described in the Motion. The key terms of the Restructuring involve (i) the conversion of approximately $5.2 billion of the Acquisition Financing to preferred equity, (ii) the conversion of the Priority Financing to a new revolving credit facility with an extended maturity date, (iii) extensions of the maturity dates of the portions of the Acquisition Financing that are not converted to preferred equity.

8. The Restructuring involves highly complicated transactions necessitating negotiations with numerous third parties. The Debtors believe the terms and conditions set forth in the Term Sheet are those under which such third parties will agree, and, indeed, Bank of America has already agreed to the terms and conditions set forth in the Term Sheet. However, negotiations with the relevant third parties continue, and as a result, the transaction is not fully agreed to by all of such parties. Nevertheless, the terms and conditions set forth in the Term Sheet are those that the Debtors believe will ultimately govern the Restructuring. If the terms of the definitive documentation evidencing the transactions contemplated under the Restructuring are inconsistent in any material respect from those set forth in the Term Sheet, the Debtors will seek further relief from the Court to approve and authorize such documentation and the transactions contemplated thereby.

9. I believe that the terms of the Restructuring are beneficial to the Debtors. After analyzing various alternatives, I, with the assistance of my team, determined that the

Restructuring provides the best framework for protecting and maximizing the value of the investments made in Archstone. Most notably, if effectuated, the Restructuring (i) will reduce the leverage of the capital structure of Archstone by approximately $5.2 billion and given the current interest rate environment, the Debtors anticipate that the Equity Conversion may reduce Archstone's overall interest expense by at least $150 million per year; (ii) will provide the Debtors with the benefit of enhanced economic terms governing the provisions of the Post-Conversion Revolver and Post-Conversion Term Loan, as compared to the existing Revolver, Term Loan A and Term Loan B; (iii) will maximize the value of the Post-Conversion Financing; (iv) improves Archstone's capital structure to potentially attract new third-party debt and equity; and (v) is expected to minimize the need for additional capital infusions from the Co-Sponsors by reducing the accrual and payment of interest.

10. By improving Archstone's balance sheet, the Restructuring is also anticipated to improve market perception of Archstone's financial condition, as a real estate owner, operator, acquirer and developer. The Restructuring will provide Archstone with maximum flexibility to operate its business and optimize the value of its assets. The Restructuring provides Archstone with the best way to obtain a source of liquidity that will provide for the capital needs of its business and increase the Debtors' prospects of recovering their substantial investment in Archstone.

11. In connection with obtaining the requisite internal approvals at Lehman, as is customary, Messrs. Herman and Neighbor prepared an extensive memorandum outlining the Restructuring and the Real Estate Group's recommendation for approval of same. Following an extensive review and comment period, the Restructuring was approved by the Real Estate

Group's Investment Committee and subsequently approved by John Suckow, an A&M Managing Director currently serving as LBHI's President.

[*The Remainder of This Page is Intentionally Left Blank*]

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 24th day of May, 2010.

/s/ Jeffrey Fitts
Jeffrey Fitts