**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------:
                            :      Chapter 11

In re                             :

                            :      Case No. 08-13555 (JMP)

LEHMAN BROTHERS HOLDINGS INC., et al.,  :

                            :      (Jointly Administered)

Debtors.                        :

                            :
---------------------------------------------------------------:

### ERRATA ORDER

The Memorandum Decision Denying Motions for Leave to File Late Claims, dated May 20, 2010 [ECF # 9150], is hereby corrected as follows: the list of appearances is stricken in its entirety and replaced by the entries below.

WEIL, GOTSHAL & MANGES, LLP
*Attorneys for Debtor and Debtors in Possession*
767 Fifth Avenue
New York, New York 10153

      Shai Y. Waisman, Esq.
      Mark Bernstein, Esq.

MILBANK, TWEED, HADLEY & MCCLOY LLP
*Attorneys for the Official Committee of Unsecured Creditors*
One Chase Manhattan Plaza
New York, New York 10005

      Dennis F. Dunne, Esq.
      Dennis C. O'Donnell, Esq.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Special Counsel to the Official Committee of Unsecured Creditors*
51 Madison Avenue, 22nd Floor
New York, New York 10010

      James C. Tecce, Esq.

EDWARDS ANGELL PALMER & DODGE LLP
*Attorneys for Pacific Life Insurance Company*
750 Lexington Avenue
New York, New York 10022

Paul J. Labov, Esq.

LOVELLS LLP
*Attorneys for Sea Port Group Securities, LLC and Berner Kantonalbank*
590 Madison Avenue
New York, New York 10022

Christopher R. Donoho, III, Esq.

DUANE MORRIS LLP
*Attorneys for Pennsylvania Public School Employees Retirement System*
1540 Broadway
New York, New York 10036

Lawrence J. Kotler, Esq.

KLESTADT & WINTERS, LLP
*Attorneys for Tensor Opportunity Ltd.*
292 Madison Avenue, 17th Floor
New York, New York 10017

John E. Jureller, Jr., Esq.
Samir Gebrael, Esq.

AKIN GUMP STRAUSS HAUER & FELD LLP
*Attorneys for Dynegy Power Marketing Inc.*
One Bryant Park
New York, New York 10036

Robert A. Johnson, Esq.

FAEGRE & BENSON LLP
*Attorneys for Santa Fe Partners, LLC; Santa Fe Partners, LLC for and on behalf of Anasazi Systematic Long Short LP and Anasazi Market Neutral LP; and Santa Fe Master Fund SPC for and on behalf of Anasazi Market Neutral 2x, Segregated Portfolio, Anasazi Market Neutral 3x, Segregated Portfolio, Anasazi Systematic Long Short B, Segregated Portfolio, Anasazi Systematic European Long Short C, Segregated Portfolio, Anasazi Japanese Systematic Long Short D, Segregated Portfolio, Anasazi Systematic European Long Short E, Segregated Portfolio and Anasazi Systematic Japanese Long Short F, Segregated Portfolio; and CVI GVF (LUX) Master S.a.r.l.; Black River Asia Fund Ltd.*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402

     Michael M. Krauss, Esq.

A corrected version of the opinion is attached as <u>Exhibit A</u>.

SO ORDERED.


Dated: New York, New York
      May 26, 2010

                <u>   *s/ James M. Peck*           </u>
                UNITED STATES BANKRUPTCY JUDGE

# **Exhibit A**

**UNITED STATES BANKRUPTCY COURT**　　　　　　FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------:
                                                             :   Chapter 11
In re                                                        :
                                                             :   Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC., et al.,   :
                                                             :   (Jointly Administered)
Debtors.                                                     :
                                                             :
-------------------------------------------------------------:
```

## MEMORANDUM DECISION DENYING MOTIONS
## FOR LEAVE TO FILE LATE CLAIMS

WEIL, GOTSHAL & MANGES, LLP
*Attorneys for Debtor and Debtors in Possession*
767 Fifth Avenue
New York, New York 10153

　　　Shai Y. Waisman, Esq.
　　　Mark Bernstein, Esq.

MILBANK, TWEED, HADLEY & MCCLOY LLP
*Attorneys for the Official Committee of Unsecured Creditors*
One Chase Manhattan Plaza
New York, New York 10005

　　　Dennis F. Dunne, Esq.
　　　Dennis C. O'Donnell, Esq.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Special Counsel to the Official Committee of Unsecured Creditors*
51 Madison Avenue, 22nd Floor
New York, New York 10010

　　　James C. Tecce, Esq.

EDWARDS ANGELL PALMER & DODGE LLP
*Attorneys for Pacific Life Insurance Company*
750 Lexington Avenue
New York, New York 10022

　　　Paul J. Labov, Esq.

LOVELLS LLP
*Attorneys for Sea Port Group Securities, LLC and Berner Kantonalbank*
590 Madison Avenue
New York, New York 10022

      Christopher R. Donoho, III, Esq.

DUANE MORRIS LLP
*Attorneys for Pennsylvania Public School Employees Retirement System*
1540 Broadway
New York, New York 10036

      Lawrence J. Kotler, Esq.

KLESTADT & WINTERS, LLP
*Attorneys for Tensor Opportunity Ltd.*
292 Madison Avenue, 17th Floor
New York, New York 10017

      John E. Jureller, Jr., Esq.
      Samir Gebrael, Esq.

AKIN GUMP STRAUSS HAUER & FELD LLP
*Attorneys for Dynegy Power Marketing Inc.*
One Bryant Park
New York, New York 10036

      Robert A. Johnson, Esq.

FAEGRE & BENSON LLP
*Attorneys for Santa Fe Partners, LLC; Santa Fe Partners, LLC for and on behalf of Anasazi Systematic Long Short LP and Anasazi Market Neutral LP; and Santa Fe Master Fund SPC for and on behalf of Anasazi Market Neutral 2x, Segregated Portfolio, Anasazi Market Neutral 3x, Segregated Portfolio, Anasazi Systematic Long Short B, Segregated Portfolio, Anasazi Systematic European Long Short C, Segregated Portfolio, Anasazi Japanese Systematic Long Short D, Segregated Portfolio, Anasazi Systematic European Long Short E, Segregated Portfolio and Anasazi Systematic Japanese Long Short F, Segregated Portfolio; and CVI GVF (LUX) Master S.a.r.l.; Black River Asia Fund Ltd.*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402

      Michael M. Krauss, Esq.

**JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE**

*Introduction*

In this decision, the Court deals with seven motions separately brought by individual creditors each of whom missed the bar date for filing claims against Lehman Brothers Holdings Inc. ("LBHI" and, together with its affiliated debtors, the "Debtors") despite the fact that these creditors all knew about this important deadline. The common theme is ordinary negligence, those oversights and mistakes that plague all of us occasionally. The oversights in question arise in the context of the largest claims allowance process in the history of bankruptcy practice. The seven motions offer a variety of explanations for the failure to perform the ministerial act of filing timely proofs of claim, but none satisfies the strict standards in this circuit for finding excusable neglect.

Pacific Life Insurance Company[1] ("Pacific Life"), Seaport Group Securities, LLC ("Seaport") and Berner Kantonalbank[2] ("BEKB"), Pennsylvania Public School Employees' Retirement System[3] ("PSERS"), Dynegy Power Marketing Inc.[4] ("Dynegy"),

---

[1] Motion of Pacific Life Insurance Company to Permit It to File A Late Proof of Claim Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1) (the "Pacific Life Motion"), Oct. 22, 2009 [ECF No.: 5599].

[2] Joint Motion of Seaport Group Securities, LLC and Berner Kantonalbank to Deem Proofs of Claim to Be Timely Filed by the Securities Programs Bar Date (the "Seaport Motion"), Dec. 12, 2009 [ECF No.: 6150].

[3] Motion of Pennsylvania Public School Employees' Retirement System for Entry of an Order that Its Timely Filed Guarantee Questionnaire Be Considered a Timely Filed Proof of Claim, or, in the Alternative, to Permit a Late Claim Filing Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1) (the "PSERS Motion"), Jan. 7, 2010 [ECF No.: 6558].

[4] Motion of Dynegy Power Marketing Inc. for Entry of an Order that its Timely Filed Guarantee Questionnaire Be Deemed a Timely Filed Proof Of Claim, or, in the Alternative, to Permit a Late Claim Filing Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1) (the "Dynegy Motion"), Feb. 5, 2010 [ECF No.: 7008].

Tensor Opportunity Limited[5] ("Tensor"), Santa Fe Partners, LLC[6] ("Santa Fe"), and CVI GVF (Lux) Master S.a.r.l.[7] ("CVI") (each a "Movant" and collectively, the "Movants") seek relief from the bar date order[8] (the "Bar Date Order") under Bankruptcy Rule 9006(b)(1) due to "excusable neglect."  Certain of the Movants also seek relief in the alternative under an informal proof of claim theory.  The Court, in exercising its discretion, finds that the neglect alleged, while understandable and regrettable, does not amount to excusable neglect as that term is interpreted under applicable law.  For the reasons stated below, the Court denies all of the motions.

### *Factual Background*

Given the Debtors' multi-faceted worldwide business activities before filing for bankruptcy, it comes as no surprise that the Bar Date Order is not a typical one.  It is a bespoke document that balances the needs of the Debtors and creditors alike, many of whom are sophisticated counterparties in the global financial marketplace.  The Bar Date Order is the product of litigation and negotiation and reflects a pragmatic compromise with representatives of various objecting parties in interest relating to the burden of compiling and presenting information in support of each claim.  Despite its custom-made

---

[5] Amended Motion of Tensor Opportunity Limited to Permit it to File a Late Proof of Claim Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1) (the "Tensor Motion"), Feb. 18, 2010 [ECF No.: 7162].

[6] Santa Fe Entities' Motion to Treat Their Claims as Timely Filed and Memorandum of Points and Authorities in Support Thereof (the "Santa Fe Motion"), Feb. 17, 2010 [ECF No.: 7144].

[7] CVI GVF (Lux) Master S.A.R.L.'S Motion to Treat Claim Filed by Black River Asia Fund Ltd. as Timely Filed and Memorandum of Points and Authorities in Support Thereof (the "CVI Motion"), Feb. 26, 2010 [ECF No.: 7290].

[8] Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form, Jul. 2, 2009 [ECF No.: 4271].

features, the Bar Date Order still serves the traditional function of establishing firm deadlines for creditors to set forth their claims against the Debtors.

The Bar Date Order provides for two bar dates: September 22, 2009 for general claims against the Debtors (the "General Bar Date") and November 2, 2009 for claims based on securities included on the Lehman Program Securities list (the "Program Securities Bar Date").[9]  In addition to the submission of a traditional proof of claim form, claims based on derivative contracts[10] required the submission of a Derivative Questionnaire[11] by October 22, 2009 (the "Questionnaire Deadline").  Likewise, claims based on a guarantee[12] had a similar requirement that a Guarantee Questionnaire[13] be submitted by the Questionnaire Deadline.  The Court then ordered the Debtors to serve the Bar Date Order and an explanatory notice of the bar date (the "Bar Date Notice") on the broadest array of potential creditors.  (Bar Date Order at 10-11.)  No Movant contests receipt of actual notice of the bar date.[14]

---

[9] The creation and contents of the Lehman Program Securities list are not at issue for any of the Movants. A detailed description of its creation is available in the Debtors' Objection to Motion of Banesco Banco Universal Requiring Lehman Brothers Holdings Inc. to Provide Requested Information and to Deem Claim to Be Timely Filed by the Securities Programs Bar Date, ¶¶ 7-13, filed Nov. 10, 2009 [ECF No.: 5778].

[10] The Bar Date Order provides, a "'Derivative Contract' shall mean any contract that is any of (i) a 'swap agreement' as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a 'forward contract' as such term is defined in section 101(25) of the Bankruptcy Code" with certain limited exclusions. (Bar Date Order at 6.)

[11] The Derivative Questionnaire is attached to the Bar Date Order as Exhibit C.

[12] Guarantee claims are "claim[s] against a Debtor based on amounts owed pursuant to a promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance."  (Bar Date Order at 7.)

[13] The Guarantee Questionnaire is attached to the Bar Date Order as Exhibit D.

[14] The Debtors' opposition papers to each respective Movant are accompanied by an affidavit from an employee of Epiq Bankruptcy Solutions, LLC, the Debtors' claims agent, attesting to the service of a Bar Date Notice, a General Proof of Claim Form, and a Schedule Proof of Claim Form, on each Movant.  See Exhibit A to each of the respective objections.

## *Legal Standard*

### *Excusable Neglect*

Bar dates are "critically important to the administration of a successful chapter 11 case." *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006). They are not designed merely as a "'a procedural gauntlet'" but rather serve "as an integral part of the reorganization process" and the efficient administration of bankruptcy cases. *In re Hooker Invest., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991).

Bankruptcy Rule 3003(c) requires the bankruptcy court to set a bar date after which proofs of claim may not be filed. Bankruptcy Rule 9006(b)(1) gives the court the discretion to enlarge the time to file claims "where the failure to act was the result of excusable neglect." The Supreme Court has interpreted "excusable neglect" to be a flexible standard - one that can include "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Serv. Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380, 395 (1993). However, "the determination is at bottom an equitable one" that must take "account of all relevant circumstances surrounding the party's omission." *Id.* To guide lower courts, the *Pioneer* Court offered four factors that should be considered in analyzing excusable neglect. They are:

> [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*Id.* The party seeking an extension of time bears the burden of proving excusable neglect. *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005).

The Second Circuit strictly observes bar dates and has adopted what has been characterized as a "hard line" in applying the *Pioneer* test. *Id.* at 122. This "hard line" approach focuses primarily on the reason for the delay, and specifically whether the delay was in the reasonable control of the movant. *Id.* This factor is weighed most heavily because the other factors will typically favor the party seeking the extension. *Id.* at 123. A creditor seeking to file a late claim "must explain the circumstances surrounding the delay in order to supply the Court with sufficient context to fully and adequately address the reason for delay factor and the ultimate determination of whether equities support the conclusion of excusable neglect." *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) (citing *Pioneer*, 507 U.S. at 388). Critically, in the Second Circuit, "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule, and … where the rule is entirely clear … a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron*, 419 F.3d at 123 (internal quotations omitted).

*Prejudice to the Estates*

The prejudice factor calls for consideration of the overall negative effect, if any, on a debtor and its estate resulting from allowing a late claim. Determining the foreseeable impact of late-filed claims, however, is an uncertain process that "require[s] a certain amount of crystal ball gazing." *Id.* at 130. The court must avoid finding prejudice based on unsupported speculation or hypothetical harm and draw conclusions of prejudice from facts in evidence. *Id.* at 131. These determinations are guided by factors such as the size of a late claim in relation to the estate, whether a disclosure

statement or plan has been filed, and the disruptive effect permitting the late claim would have on plan formation.[15] *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995).

This forward looking evaluation of potential prejudice is challenging in any case, but it is especially hard to assess in these cases due to the overwhelming number and total dollar amount of filed proofs of claim. Creditors have filed over 66,000 claims in an aggregate liquidated amount exceeding $899 billion dollars. 4/14/10 Tr. 30:21-24 (presenting Lehman Claims Summary to the Court). The enormity of the claims allowance process is self-evident, and prejudice needs to be evaluated in this unprecedented setting. What these statistics also demonstrate is that the Bar Date Order did serve its primary intended purpose – numerous creditors from all over the world understood their obligation to file proofs of claim by a date certain or suffer the consequences of failing to do so.

Evaluating such a large number of claims is a monumental task. To address the significant administrative burdens of maintaining an efficient and orderly process, the Court has entered several procedural orders relating to claims objections, claim settlement procedures, and alternative dispute resolution.[16] These orders are designed to maximize the efficiency of the claims process and promote the fair resolution of the tens of thousands of filed claims. In this heavily populated claims environment, it is difficult

_____

[15] At the time of the Movants' motions the Debtors had not yet filed a plan or disclosure statement. Subsequently, the Debtors filed their Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors on Mar. 15, 2010 [ECF No.: 7572] and related Disclosure Statement on April 14, 2010 [ECF No.: 8332].

[16] These orders include: Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) for Approval of Claim Objection Procedures [ECF No.: 6664], Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) Approving Settlement Procedures [ECF No.: 8336], and Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors [ECF No.: 8474].

to comprehend how a handful of late-filed claims will add materially to the burdens that already exist.

Debtors argue that to allow these claims to be filed will invite others to bring similar motions, leading to an endless loop of litigation concerning the failure of certain creditors to file claims on time. The premise is that granting relief now will open the floodgates, undermine the effectiveness of the Bar Date Order, and further complicate an already cumbersome process. Without speculating on the long-term adverse consequences of granting relief to the Movants, the Court accepts the proposition that allowing any claims to be filed now is highly undesirable from the Debtors' perspective and potentially quite disruptive. Enforcement of the Bar Date Order is an essential part of the orderly administration of the claims that have been filed in compliance with that order, and incremental exceptions such as those urged by the Movants cannot be viewed in isolation or determined by means of a formulaic approach.

In this instance, the extraordinary size of the claims management project is itself a significant factor in determining prejudice. The massive undertaking of processing so many claims depends on the integrity of the Bar Date Order and bringing closure to the class of timely filed claims. The prejudice to the Debtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency. In view of the need to bring finality to the enormous task of resolving those claims that have already been filed in these cases, the Court concludes that strict application of the Bar Date Order is needed to effectively manage the claims process and that permitting additional claims will lead to an opening of the claims

process with foreseeable prejudice to the Debtors. Thus, the prejudice factor favors the Debtors.

*Length of Delay and Good Faith*

The remaining *Pioneer* factors are the length of delay and whether the movant acted in good faith. Both of these factors favor the Movants. There is no bright-line rule governing when the lateness of a claim renders it too late. *In re Enron*, 419 F.3d at 128. The "lateness of a claim must be considered in the context of the proceeding as a whole." *Id.* Here, the delays in seeking relief are not unreasonably long, and so lateness is not an issue that adversely affects the motions. Debtors also have no reason to question the good faith of the Movants. These two factors are both helpful to the Movants but are insufficient to overcome the Movants' inability to show excusable neglect.

*Informal Proof of Claim*

PSERS and Dynegy ask the Court to treat their Derivative or Guarantee Questionnaires as informal proofs of claim. An informal proof of claim "must have (1) been timely filed with the bankruptcy court and have become part of the judicial record, (2) state the existence and nature of the debt, (3) state the amount of the claim against the estate, and (4) evidence the creditor's intent to hold the debtor liable for the debt." *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 99 (Bankr. S.D.N.Y. 2007) (citing *Houbigant, Inc. v. ACB Mercantile, Inc.* (*In re Houbigant, Inc.*), 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1995)). Courts may grant relief to a creditor that provides the requisite claim information in a non-standard form, but that relief is limited to documents filed before the expiration of the applicable bar date.

Because the Derivative and Guarantee Questionnaires purporting to be informal proofs of claim were filed *after* the applicable bar date, none of them qualify as informal proofs of claim. The Movants contention that the Debtors could not begin to process their claims until after the Questionnaire Deadline confuses the distinction between the claim itself and the ancillary documentation that supports the claim. The requirements of the Bar Date Order were clear, and the questionnaires are not the equivalent of filing the prescribed forms on time.

### The Circumstances Surrounding the Late-Filed Claims

The reasons for each Movants' late-filed claim are varied, but they all involve errors and omissions of the creditor either acting through its employees or through its agents, attorneys, or advisors. The excuses offered uniformly miss the mark and fail to satisfy the stringent requirements for a finding of excusable neglect in this circuit.

### The Failure of Agents, Attorneys, or Advisors

PSERS, Tensor, and Dynegy assert that their late-filed claims were due to mistakes by their agents, attorneys, or advisors and suggest that they should not be penalized for the errors of their representatives. The *Pioneer* case speaks directly to this issue. *Pioneer* applied the long-standing principle that clients "are held accountable for the acts and omissions of their attorneys" in failing to timely file a proof of claim.[17] *Pioneer*, 507 U.S. at 396. To proceed otherwise "would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his

---

[17] The *Pioneer* Court's ultimate finding of excusable neglect was based on the excuse offered by counsel - that notice of the bar date was insufficient - and not that the creditor had relied on counsel. 507 U.S. at 398.

lawyer agent" *Id.* (quotations omitted). The proposition is a simple one. Entities are bound by the actions and failures to act of their authorized representatives.

*PSERS*

PSERS urges this Court to deem its Guarantee Questionnaire a timely filed informal proof of claim or allow the filing of a late claim due to excusable neglect. The claims in question relate to approximately $35 million of notes issued by Lehman Brothers Treasury Co. B.V. guaranteed by LBHI. (PSERS Motion, Ex. A ¶ 8.)[18] Because these notes were not on the Lehman Program Securities list, PSERS was required both to (i) file a proof of claim form by the General Bar Date and (ii) file a Guarantee Questionnaire by the Questionnaire Deadline. PSERS did not file a timely proof of claim, but did file a Guarantee Questionnaire prior to the Questionnaire Deadline.

For reasons stated above, PSERS's Guarantee Questionnaire does not satisfy the standards applicable to an informal proof of claim because the questionnaire was filed *after* the General Bar Date. Missing the bar date applicable to all claims is fatal. PSERS also seeks leave to file a late proof of claim, but PSERS has failed to establish excusable neglect.

PSERS's failure to timely file a guarantee proof of claim against LBHI is traceable to a miscommunication with DB Advisors, its investment advisor. In early 2009, PSERS "requested the assistance of DB Advisors in filing claims related to the transactions that DB Advisors entered into on behalf of PSERS." (Id. ¶ 17.) DB

---

[18] Exhibit A to the PSERS Motion is the declaration of Andrew D. Fiscus, the Director of Investment Account of PSERS.

Advisors agreed to provide this assistance. (Id. ¶ 19.) Based on these communications, and because DB Advisors filed proofs of claim against Lehman Brothers Treasury Co. B.V. in its Dutch proceedings, "PSERS believed that DB Advisors had filed the required claim based on the Notes in the LBHI Proceeding." (Id. ¶ 23.) That belief, whether or not reasonable, was simply incorrect, and the miscommunication, carelessness or inattention to the guarantee claim was entirely within the control of PSERS and DB Advisors. Under the circumstances, PSERS has not made a sufficient showing for a finding of excusable neglect.

*Dynegy*

Dynegy also asks the Court to treat its Guarantee Questionnaire as a timely filed informal proof of claim or, in the alternative, that it be allowed to file a late claim due to excusable neglect. Dynegy's claim is based on an LBHI guarantee of a derivative contract between Dynegy and Lehman Brothers Commodity Services ("LBCS").[19] (Dynegy Mot., Ex A. ¶ 5.)[20] Dynegy was required to file a proof of claim form for its LBHI guarantee claim by the General Bar Date and a Guarantee Questionnaire by the Questionnaire Deadline. Dynegy did not file a proof of claim against LBHI for its guarantee claim, but did timely file a Guarantee Questionnaire relating to the claim against LBHI. Because the Guarantee Questionnaire was filed *after* the General Bar Date, it does not qualify as a timely informal proof of claim.

---

[19] Dynegy timely filed its direct claim against LBCS for approximately $3.4 million. (Claim No. 30414.)

[20] Exhibit A to the Dynegy Motion is the declaration Angela J. Koenn, Senior Corporate Counsel at Dynegy.

Dynegy also seeks authority to file a late proof of claim on the grounds of excusable neglect relating to the failure of its outside counsel to do so. Dynegy offers no explanation why its counsel made this mistake, although it appears to be the result of oversight or inattention that was within the control of Dynegy and its counsel. In this circuit, a failure to comply with the requirements of a clear order absent unique or extraordinary circumstances will not give rise to a finding of excusable neglect. *See In re Enron*, 419 F.3d at 123-24. Dynegy is bound by the acts and omissions of its attorneys, and the Court finds Dynegy has not met its burden of showing excusable neglect.

### Tensor

Tensor's claim arises from a swap agreement with Lehman Brothers International Europe ("LBIE") that was guaranteed by LBHI. (Tensor Mot., Ex. C ¶¶ 4-6.)[21] On February 3, 2010 - after the General Bar Date and the Questionnaire Deadline - Tensor filed a proof of claim against LBHI and submitted Derivative and Guarantee Questionnaires.[22]

Tensor explains that the delay in filing its proof of claim documentation was caused by its counsel's improper analysis of Tensor's swap agreements. (Id. ¶ 5.) While assessing the existence of claims against the Debtors and their affiliates, counsel concluded in error that a particular contract gave rise to claims only against LBIE, when

---

[21] Exhibit C to the Dynegy Motion is the declaration of Michele Navazio. Ms. Navazio was an attorney at Purrington Moody Weil LLP, Tensor's retained counsel in connection with its bankruptcy claims against the Debtors.

[22] Tensor's guarantee claim is approximately $2.4 million. (Claim No. 66236.)

in fact, that swap agreement also supported a guarantee claim against LBHI.[23]  (Id. ¶ 6.)
This guarantee claim was overlooked, and no proof of claim or Guarantee Questionnaire
was filed.  Mistakes such as this are avoidable and fail to meet the Second Circuit's
"hard-line" test.  Because this error was within the control of counsel for Tensor, Tensor
has failed to demonstrate that the late filings should be allowed.

*A Failure of Diligence*

The second category of motions for leave to file claims after the bar date relate to
creditors that claim not to have become aware of their rights until after the bar date.
These claims share the general characteristics of inadvertence, lack of oversight,
inadequate internal procedures, and operational errors.  These mistakes amount to failures
to act with reasonable diligence and do not justify the filing of late claims.

*Pacific Life*

Pacific Life moves this Court to deem its proof of claim (the "Pacific Life
Claim") as timely filed due to excusable neglect.  The Pacific Life Claim, in the amount
of $45.3 million, relates to a swap agreement between Pacific Life and LBIE that was
guaranteed by LBHI.  (Aff. of Joseph J. Tortorelli ¶¶ 4-5.)[24]

Pacific Life's late-filed claim resulted from its internal policy that divided
responsibility for filing proofs of claim in the Debtors' chapter 11 cases between two

---

[23] At oral argument, and then by letter and affidavit following the hearing, counsel for Tensor further
explained the reason for the delay was that the attorney originally surveying Tensor's contracts for potential
claims had a death in her family and passed the work to another attorney in the firm.  The supplemental
communications to the Court after the close of the record are themselves untimely and even giving
consideration to these additional explanations does not change the Court's analysis.

[24] [ECF No.: 5939.]  Mr. Tortorelli is an Assistant Vice President and Investment Counsel at Pacific Life
Insurance Co.

employees – one who handled domestic derivative claims, and another who handled foreign derivative claims. (Id. ¶¶ 8-10.) According to Pacific Life, the employee responsible for foreign transactions believed the claim would be filed by the employee handling domestic claims based on the domestic LBHI guarantee while the employee in charge of domestic claims believed that the claim would be filed by the employee handling foreign claims because the swap was with LBIE. (Id. ¶ 11.) Ultimately, neither one of them took the necessary action to file the proof of claim. (Id.) On October 15, 2009, after the General Bar Date, Pacific Life realized that no proof of claim had been filed, prepared a late claim, and filed it on October 21, 2009. (Id. ¶¶ 12-13.) Pacific Life then timely filed a Derivative Questionnaire. (Id. ¶ 14.)

The reason for the delay was within Pacific Life's reasonable control, having resulted from a failure to coordinate, a lack of supervision or a mistake. The Bar Date Order was entirely clear, and the reason for the delay was mismanagement of the claim preparation functions within Pacific Life. Pacific Life's showing is insufficient for a finding of excusable neglect, and the Court denies its request to file a late claim.

*Seaport*

Seaport and BEKB filed a joint motion to have their late-filed claims (the "Seaport Claims") deemed timely filed due to excusable neglect. The Seaport Claims, in the amount of approximately $5 million, involve confusion relating to a proposed trade of certain notes between Seaport and BEKB (the "Trade"). (Decl. of Samuel Stucki ¶ 4.)[25]

---

[25] [ECF. No.: 6343 (the "Stucki Decl.")] Mr. Sarnuel Stucki is an attorney at Berner Kantonalbank.

These notes were included on the Lehman Programs Securities list and the holder of these notes was required to file a proof of claim before the Program Securities Bar Date.

Seaport, among other things, deals in the purchase and sale of securities. (Seaport Mot., Ex. B ¶ 3.)[26] BEKB is a regional bank that provides a variety of commercial banking and financial services in Switzerland. (Stucki Decl. ¶ 3.) On September 4, 2009, BEKB confirmed a Seaport purchase of an eleven note portfolio issued by Lehman Brothers Treasury Co. B.V. and guaranteed by LBHI, but documentation for the purchase only confirmed a transfer of eight of the eleven notes. (Silverman Decl. ¶¶ 4-6.) Neither Seaport nor BEKB noticed this omission, and the three outstanding trades failed to settle. (Id. ¶ 7.)

On or about September 30, 2009 – *over one month before the Program Securities Bar Date* - the parties realized the oversight and began taking steps to identify and reconcile the three unconfirmed trades. (Id. ¶ 8.) On November 5, 2009, two months after the original trade, and two days after the Program Securities Bar Date, the parties concluded the three trades had failed to settle. (Id. ¶ 10.) After another month of investigation, the parties understood the error and on December 14, 2009, BEKB filed proofs of claim for the three notes that failed to settle. Seaport and BEKB now request that this Court deem those proofs of claim as having been timely filed due to excusable neglect.

The failure of Seaport or BEKB to timely file proofs of claim resulted from a series of sequential errors, but these errors at all times were within the complete control

---

[26] Exhibit B to the Seaport Motion is the declaration of Mr. Jonathan Silverman (the "Silverman Decl."), General Counsel at Sea Port Group Securities, LLC.

of Seaport or BEKB. The specific reason for the delay is difficult to pinpoint, but it arises from a combination of communication errors between traders, a breakdown in the proper administration of "back office" functions relating to settlement of trades, and a failure of both parties to investigate and take prudent steps to protect their legal rights. Either party could have filed protective proofs of claim, but neither did. These errors do not rise to the level of excusable neglect, and Seaport's motion is denied.

*Santa Fe and CVI*

Santa Fe and CVI filed practically identical motions to have their late-filed claims deemed timely.[27] Their claims are based on LBIE obligations that were guaranteed by LBHI. Both Santa Fe and CVI assert that they were unaware of their guarantee claims against LBHI until after the General Bar Date. (Santa Fe Mot. at 2; CVI Mot. at 2.) Upon learning of the guarantee claims, Santa Fe and CVI filed late proofs of claim and submitted timely Guarantee Questionnaires. Thus, Santa Fe and CVI are in substantially the same position as PSERS, Dynegy, and Pacific Life, having filed a timely Questionnaire but an untimely proof of claim.

Santa Fe and CVI assert their "delay was not the result of carelessness, or even within [their] control. [They] simply did not know that [their] claim existed" until after the General Bar Date. (Santa Fe Mot. at 2; CVI Mot. at 2.) The Court disagrees. Santa Fe and CVI each had the ability to act with greater diligence to investigate and determine what claims could be asserted against the Debtors.

---

[27] Santa Fe and CVI filed similar motions and are represented by the same counsel. At oral argument the attorney for Santa Fe and CVI argued the motions together and the Court will address them in the same manner.

Santa Fe and CVI state that they were unaware of the guarantee given by LBHI with respect to various LBIE obligations. (Santa Fe Mot., Aff. of J. Leatherman ¶ 7; CVI Mot., Aff. of M. Rabogliatti ¶ 6.) These guarantees were issued in June 2005 and January 2008 after Santa Fe and CVI (or its predecessors in interest) had entered into their agreements with LBIE. (Santa Fe Mot., Ex. A; CVI Mot., Ex. A.)[28] The guarantees, however, were readily ascertainable. They were posted and available on the websites for the administrators of LBIE.[29] Ultimately, creditors must bear the responsibility for investigating and performing reasonable diligence to identify those claims that they have against debtors in bankruptcy.

The guarantee claims may have been unknown to Santa Fe and CVI, but these claims certainly were not unknowable. These Movants, with the exercise of reasonable diligence, could have discovered the existence of the guarantee claims.[30] Creditors act at their peril where they fail to adequately investigate and pursue their rights.

### Excusable Neglect in the Lehman Cases

The Court has had the opportunity to evaluate nine motions seeking leave to file late claims on grounds of excusable neglect. Two of these motions were granted in a bench ruling issued on December 16, 2009. See 12/22/2009 Tr. 131:21–140:3. The

---

[28] These exhibits contain LBHI's written guarantees of LBIE's obligations.

[29] See < http://www.pwc.co.uk/eng/issues/lehman_holdings_bar_date_application_update_190609.html>, last visited May 20, 2010.

[30] Unlike the cases Santa Fe and CVI cited suggesting a creditor with an unknown claim should be afforded relief from a bar date, Santa Fe and CVI could have learned of the guarantee claims in the year between the Debtors' filing date and General Bar Date. Ignorance of one's claim alone cannot be enough. In *In re PT-1 Communs., Inc.* the Court permitted a late-filed claim where the creditor tax-authority "had no reason on the basis of the facts known to it prior to the Bar Date to conclude that it had a claim against" the debtor. 292 B.R. 482, 489 (Bankr. E.D.N.Y. 2003). Here, Santa Fe and CVI had cause to inquire and the ability to perform diligence on their contracts with the Debtors.

seven motions that are the subject of the current decision are all being denied for the reasons stated above.  It is important to concisely state the reasoning that produced these different outcomes.

Having applied the *Pioneer* factors nine times, the Court believes that it is in a position to distinguish the excusable neglect found earlier from the inexcusable neglect described in the pending motions.  The Court articulates this distinction as follows: Neglect in filing a claim before the expiration of a clear bar date is excusable when the creditor, after conducting a reasonable amount of diligence, is justifiably confused or uncertain as to whether a particular transaction giving rise to a claim is or is not subject to the bar date order.  That confusion was the principal reason for granting relief and finding excusable neglect in the bench ruling.

The reason for the delay remains the central focus in determining excusable neglect.  The Court found excusable neglect in those instances where creditors consciously endeavored to comply with the bar date and established that their delay was the result of justifiable confusion over the application of the bar date to their particular claims.[31]  By comparison, the reasons offered by the Movants demonstrate a lack of care or thoughtful attention to the preparation and filing of their proofs of claim.

### Conclusion

Excusable neglect is tough to demonstrate under *Pioneer* especially where the bar date order in question is clear.  Parties are held to a high standard of care and only the

---

[31]  In both instances where the Court found excusable neglect the claimants consciously endeavored to comply with the Bar Date Order but were justifiably confused as to the application of the General Bar Date or the Program Securities Bar Date due to the circumstances surrounding the Lehman Program Securities list.

slightest flexibility is available for "rights lost because they have been slept on."

*Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003).  In reviewing and

considering the various motions by creditors for relief from the impact of the Bar Date

Order, the Court finds that all of these motions fall short in making a showing of

excusable neglect.

In each instance, the Movants or their agents had the capacity to file a timely

proof of claim but missed the deadline due to neglect that amounted to an explanation for

the delay but not an excuse for it.  Allowing the filing of late claims also would expose

the Debtors to the risk of a virtually never ending claims resolution process.  Particularly

in the context of these enormously complex cases, the Bar Date Order needs to be

uniformly enforced except in truly unusual and compelling circumstances.

The Debtors are directed to submit a proposed order in accordance with this

decision.

Dated: New York, New York
May 20, 2010

*/s/  James M. Peck*
Honorable James M. Peck
United States Bankruptcy Judge