Hearing Date and Time: June 16, 2010 at 10:00 a.m.

BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-0208
Telephone: (212) 885-5000
Andrew B. Eckstein
Kenneth L. Bressler
Philippe M. Salomon
*Attorneys for Och-Ziff Capital Management Group LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
In re                                              : Chapter 11 Case No. 08-13555 (JMP)
                                                   : (Jointly Administered)
LEHMAN BROTHERS HOLDINGS, INC., *et al.*,          :
                                                   :
            Debtors.                               :
                                                   :
                                                   :
                                                   :
------------------------------------------------- X

## OCH-ZIFF CAPITAL MANAGEMENT GROUP LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTIONS TO DEBTOR'S SUBPOENA *DUCES TECUM* DATED APRIL 12, 2010

### PRELIMINARY STATEMENT

1.    Responding to Debtor's request to produce all documents that relate, refer or describe Lehman during the twelve-month period of January 1, 2008 through January 1, 2009, will require Och-Ziff to produce over **3.9 million** electronic documents at a cost of over **$3.3 million**. Undertaking such a burden is not warranted as Debtor cannot articulate any reasonable basis for believing that Och-Ziff engaged in activity that would give rise to a compensable claim.

## BACKGROUND FACTS

*Och-Ziff and its Relationship with Lehman*

2. Och-Ziff Capital Management Group LLC ("Och-Ziff") is a publicly traded asset management firm. Och-Ziff had, and still has, significant ties with Lehman Brothers Holdings, Inc., *et al.* ("Lehman" or "Debtor") and its various affiliates:

- Lehman was one of Och-Ziff's significant prime brokers and at the time of bankruptcy, Och-Ziff had approximately $215 million in net assets held in custody by Lehman's U.K. affiliate, Lehman Brothers International Europe;

- Lehman was one of Och-Ziff's substantial counterparties in both listed and over-the-counter securities and derivatives transactions;

- Lehman served as co-lead underwriter of Och-Ziff's initial public offering, which took place in 2007;

- Funds advised by Lehman's asset management business were invested in funds managed by Och-Ziff;

- Lehman provided research coverage for Och-Ziff's trading desks in the United States, United Kingdom and Hong Kong; and

- Lehman was, and still is, a lender to Och-Ziff's Management Company, with approximately $250 million in loans outstanding as of the date of bankruptcy. Och-Ziff continues to make monthly payments to Lehman as required by the terms of the loan.

(Declaration of Joel Martin Frank dated June 2, 2010 ("Frank Declaration") ¶¶ 3, 5.)

3. Och-Ziff's interest was thus in Lehman's continued financial health; and Och-Ziff had nothing to gain from Lehman's demise. To the contrary, Lehman's bankruptcy, which was

not brought about by any wrongful act by Och-Ziff, has caused Och-Ziff significant losses. Debtor cannot point to anything to the contrary. (Frank Declaration ¶ 4.)

*The Subpoena, the Burden on Och-Ziff, and Counsel's Inability to*
*Give any Basis for Subjecting Och-Ziff to Discovery*

4. Given the various relationships between Och-Ziff and Lehman, compliance with the Subpoena, which requests, among other things, "All documents [relating to, referring to, or describing] Lehman" during 2008, would require Och-Ziff to produce over **3.9 million** electronic documents at a cost of over **$3.3 million**. (Frank Declaration ¶¶ 6-9 and Ex. A.) Presumably reviewing these documents would correspondingly cost Debtor's estate millions of dollars.

5. In light of the burden of complying with the Subpoena, the undersigned asked counsel for Debtor to provide a basis for seeking such broad discovery from Och-Ziff.

6. According to counsel for Debtor, someone at Lehman said Och-Ziff was a "source of information" about Lehman. When asked to explain, counsel represented that he was told that someone at Och-Ziff participated in communications in which he or she passed on information about Lehman. Counsel had no knowledge whether the information emanated from Och-Ziff or was simply relayed by someone at Och-Ziff. Counsel did not indicate the nature of the information or whether the information was even false. And when asked when such supposed activity took place, counsel responded, "throughout the period covered by the Subpoena," *i.e.*, all of 2008.

## ARGUMENT

7. The law governing Rule 2004 discovery is clear as set forth in Debtor's Memorandum of Law in Opposition to the Motions of Harbinger Funds and Others to Conduct Examinations Under Bankruptcy Rule 2004 dated October 12, 2008 ("Debtor's MOL"). (Docket No. 838 at pp. 15 – 25.)

3

8. "While Rule 2004 is undoubtedly broad and authorizes what some courts have termed 'fishing expeditions,' it is precisely because of that breadth that courts have recognized the need to impose limits and safeguards to keep the rule from being abused." Debtor's MOL at p. 15, citing *In re Enron Corp.*, 281 B.R. 836, 840-41 (Bankr. S.D.N.Y. 2002).

9. The court must first determine if the examination is proper, *i.e.*, related to "the condition and whereabouts of the bankrupt's estate." *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984); *In re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr. D. Mass. 1983).

10. Once challenged, the party seeking Rule 2004 discovery bears the burden of showing "good cause." *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004); Debtor's MOL at p. 18.

11. "Good cause is shown if the [ ] examination is necessary to establish the claim of the party seeking the examination, or if the denial of such request would cause the examiner undue hardship or injustice." *In re Metiom, Inc.*, 318 B.R. at 268 (citations omitted); Debtor's MOL at p. 18. Good cause cannot be established absent a cognizable claim to be pursued by the Debtor. *See In re Wilcher*, 56 B.R. 428, 440 (Bankr. N.D. Ill. 1985) (finding no good cause for Rule 2004 discovery concerning issues that were barred by res judicata and collateral estoppel).

12. The court must also "balance the competing interest of the parties, weighing the relevance of and necessity of the information sought by the examination. That documents meet the requirements of relevance does not alone demonstrate that there is good cause for requiring their production." *In re the Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991); Debtor's MOL at p. 23.

13. "'[I]f the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied.'" Debtor's MOL at p. 24

*citing In re Express One Int'l*, 217 B.R. 215, 217 (Bankr. E.D.Tex. 1998); *see also In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr. W.D.Pa. 2008) (the "level of good cause required to be established by [the examiner] before [it] can obtain certain documents or pursue a certain line of inquiry in a Rule 2004 examination involving a creditor will vary depending on the potential intrusiveness involved.").

14. Debtor's broad request for production by Och-Ziff should be quashed.

15. First, Debtor has not identified any cognizable claim of the Estate that it is seeking to enforce. It is thus impossible for the Court to determine whether Debtor has met its burden of establishing good cause for the examination, no less one as extensive and burdensome as this.

16. Second, Debtor has not provided any reasonable basis for subjecting Och-Ziff to such broad discovery. Certainly, Debtor's claim that **someone** at Lehman said that **someone** at Och-Ziff passed on **something** about Lehman during a twelve-month period is not substantive evidence of good cause sufficient to subject Och-Ziff to an extraordinary **$3.3 million** expense. *See, e.g., In re Wilcher*, 56 B.R. at 434-35 (finding no good cause under Rule 2004 because examiner failed to "show some reasonable basis to examine the material sought to be discovered" and quashing broad discovery requests).

17. Finally, balancing the competing interests of the parties, it is clear that the burden sought to be placed on Och-Ziff is far greater than the interests of Debtor's estate in potentially pursuing an unspecified and amorphous claim. Indeed, it is questionable whether it makes any sense to further deplete Debtor's estate by spending millions of dollars reviewing Och-Ziff's documents with no concrete objective.

## CONCLUSION

18.    For the foregoing reasons, it is respectfully requested that the Subpoena be quashed.

BLANK ROME LLP

By: _____
Andrew B. Eckstein
Kenneth L. Bressler
Philippe M. Salomon
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 885-5000
*Attorneys for Och-Ziff Capital Management Group, LLC*