**Hearing Date and Time: June 16, 2010 at 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – X

In re                                                  : Chapter 11 Case No. 08-13555 (JMP)
                                                       : (Jointly Administered)
LEHMAN BROTHERS HOLDINGS, INC., *et al.*,              :
                                                       :
                    Debtors.                           :
                                                       :
                                                       :
                                                       :
                                                       :
                                                       :
– – – – – – – – – – – – – – – – – – – – – – – – – – – X

## DECLARATION OF JOEL MARTIN FRANK IN SUPPORT
## OF OCH-ZIFF CAPITAL MANAGEMENT GROUP LLC'S OPPOSITION
## TO DEBTOR'S SUBPOENA *DUCES TECUM* DATED APRIL 12, 2010

Joel Martin Frank declares:

1.     I am the Chief Financial Officer of Och-Ziff Capital Management Group LLC

("Och-Ziff") and submit this declaration in support of Och-Ziff's Opposition to Lehman Brothers

Holdings, Inc., *et al.*'s ("Lehman" or "Debtor") Subpoena *Duces Tecum* dated April 12, 2010

(the "Subpoena").

2.     Debtor is demanding that Och-Ziff produce "All documents [relating to, referring

to, or describing] Lehman" during the twelve month period from January 1, 2008 through

January 1, 2009.  (*See* Subpoena Request No. 1, a copy of which is attached as Exhibit A.)

**Complying with the Subpoena will cost Och-Ziff at least $3.3 million dollars as explained**

**below.**

_Och-Ziff and its Relationship with Lehman_

3.      Och-Ziff is a publicly traded asset management firm.  Och-Ziff had, and still has,
significant ties with Lehman and its various affiliates:

- Lehman was one of Och-Ziff's significant prime brokers and at the time of
  bankruptcy, Och-Ziff had approximately $215 million in assets held in custody by
  Lehman's U.K. affiliate, Lehman Brothers International Europe;

- Lehman was one of Och-Ziff's substantial counterparties in both listed and over-
  the-counter securities and derivatives transactions;

- Lehman served as co-lead underwriter of Och-Ziff's initial public offering, which
  took place in 2007;

- Funds advised by Lehman's asset management business were invested in funds
  managed by Och-Ziff;

- Lehman provided research coverage for Och-Ziff's trading desks; and

- Lehman was, and still is, a lender to Och-Ziff's Management Company, with
  approximately $250 million in loans outstanding as of the date of bankruptcy.
  Och-Ziff continues to make monthly payments to Lehman as required by the
  terms of the loan.

4.      Och-Ziff's interest was thus in Lehman's continued financial health; and Och-Ziff
had nothing to gain from Lehman's demise.  To the contrary, Lehman's bankruptcy, which was
not brought about by any wrongful act by Och-Ziff, has caused Och-Ziff significant losses.

*Communications Between Lehman and Och-Ziff that Would be Covered by the Subpoena*

5.       In light of the extensive relationship between Och-Ziff and Lehman, Och-Ziff

naturally has a tremendous number of documents that are covered by Debtor's Subpoena.

- As one of Och-Ziff's significant prime brokers, Och-Ziff and Lehman

  communicated hundreds of times a day regarding trading activity, margin

  accounting for collateral on derivatives transactions and other trades, lending of

  securities, and trade settlements;

- As an executing counterparty, Lehman would communicate with Och-Ziff

  regularly about purchases and sales transactions;

- In connection with Lehman's loan to Och-Ziff, the parties would communicate

  regularly concerning loan compliance matters;

- In connection with its investment in funds managed by Och-Ziff, the parties

  would communicate regularly about liquidity terms, operational due diligence,

  and net capital flows; and

- In connection with research coverage, each day Lehman sent Och-Ziff

  independent research, market information and data, and solicited purchase and

  sale orders from Och-Ziff's trading desks located in its three main offices in the

  United States, United Kingdom and Hong Kong.

*The Cost of Responding to the Subpoena*

6.       In order to understand the scope of documents responsive to the Subpoena, our

counsel had a vendor segregate emails created during the first nineteen days of September 2008

that contain in the body of the email or in an attachment the word "Lehman" or the symbol

"LEH." The result was 134,228 emails and 76,296 attachments. Multiplying that number by 19

3

(19 x 19 = 361 days) leads to 2,550,332 responsive emails and 1,449,624 responsive
attachments.

      7.     I am also informed that on average an attorney can review 75 documents an hour.
It would thus take about 53,000 hours to review the 3.9 million responsive documents. I also
understand that contract attorneys cost on average $55 an hour. This would result in a cost of
$2,915,000 for contract attorneys alone.

      8.     I am further informed that a privilege log would add significant additional
expense, but that it would be impossible to estimate the cost at this time.

      9.     I understand that there are also technology costs of at least $395,000 involved in
processing, hosting and producing the emails and attachments. This is based on the following: I
am told that it has been reasonably estimated that approximately 265 gigabytes of data would be
involved, and that processing the data will cost around $500/gigabyte, or $132,500. Due to the
volume, a service provider will have to host this data on their servers. I am told that the cost is
approximately $45/gigabyte per month plus $25/gigabyte loading fees. The cost for storage
alone would be $11,925 per month, which for six months adds up to $71,550. Data loading
charges will total approximately $6,625. And converting the documents into a format to be
produced to Debtor will cost $700/gigabyte, or about $185,000. None of these charges include
project management time which cannot be estimated at this time.

      10.     Our estimate for the cost to comply of producing emails alone is $3,310,000. I

fear that producing other documents, project management and the cost of producing a privileged

log will add hundreds of thousands of dollars more to Och-Ziff's costs.

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York
June 2, 2010

JOEL MARTIN FRANK

## EXHIBIT A

B254 (Rev. 5/92) Subpoena for Rule 2004 Examination

# UNITED STATES BANKRUPTCY COURT

Southern _____ District of  New York _____

In re  Lehman Bros. Holdings, Inc., et al.          **SUBPOENA FOR RULE 2004 EXAMINATION**

             Debtor

                              Case No.   08-13555 (JMP) _____

To:  Och-Ziff Capital Mgmt. Group LLC          Chapter   11 _____
     9 West 57th Street,
     New York, NY  10019

☐    YOU ARE COMMANDED to appear and testify at an examination under Rule
       2004, Fed.R.Bankr.P., at the place, date and time specified below. A copy of the
       court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☑    YOU ARE COMMANDED to produce and permit inspection and copying of the
       following documents or objects at the place, date and time specified below (list
       documents or objects):

See attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| Kasowitz, Benson, Torres & Friedman LLP<br>1633 Broadway, New York, NY  10019 | See attached Order |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| Attorney for Debtor | April 12, 2010 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael J. Bowe, ESq., Kasowitz, Benson, Torres, & Friedman, LLP
1633 Broadway, New YOrk, NY 10019, 212-506-1777

B254 (Rev. 5/92) Subpoena for Rule 2004 Examination

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information is true and correct.

Executed on _____         _____

DATE                                             SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

_____

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take responsible steps to avoid imposing undue burden or expense on a person subject to that subpoena. Th court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause(c)(3)(B)(iii) of this rule, such a person

may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trail, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be other wise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

In re                                                            :    Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., et al.,                           :    08-13555 (JMP)
                                                                 :
                              Debtors.                           :    (Jointly Administered)
                                                                 :

------------------------------------------------------------ x

## REQUEST FOR THE PRODUCTION OF DOCUMENTS IN CONNECTION WITH AN ORDER AUTHORIZING EXAMINATION AND PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004

### DEFINITIONS

The following definitions apply to terms as they are used herein, regardless of tense or whether the terms are used in the singular, plural or possessive case.

   a. "You" or "Your" means the person or entity to whom this document request is directed and any and all of its partners, affiliates, agents, servants, representatives, assigns, attorneys, experts, investigators, insurers, or anyone acting or purporting to act on their behalf.

   b. "Employee" includes, without limitation, current or former partners, directors, shareholders, employees, officers, agents, officials, representatives, associates, consultants, attorneys, advisors, accountants, aliases, and all persons and entities acting or purporting to act on the employer's behalf.

   c. "Research reports" or "analyst reports" means the final or draft versions, including any component portions, of any communications -- written or oral -- containing substantive, qualitative or quantitative data, analysis, or other information

including recommendations, predictions, projections, price ranges, or financial or business models.

      d.     "Lehman" means Lehman Brothers Holdings, Inc. and each of its former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments, and operating units, and includes, without limitation, each of its former directors, officers, employees, consultants and agents.

      e.     "Lehman Securities" means any Security issued by Lehman, as defined above, or that in any way relates to Lehman, as defined above. "Security" or "Securities" means any equity, debt, option, derivative, or similar interest, including, without limitation, common stock, preferred stock, bills, bonds, notes, paper, warrants, convertibles, options, calls, puts, swaps, credit-default swaps and derivatives, and also includes, without limitation, any and all instruments encompassed within the definition of the term "security" under the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10).

      f.     "Transaction" means any act of buying, selling, borrowing, loaning, or otherwise transferring in exchange for consideration, whether in a public market or by private arrangement.

      g.     "Position" means any holding or interest in Securities, including, but not limited to, any ownership interest or any interest in, or obligation for, a Security that has been borrowed but not yet replaced.

      h.     "Short Sale" or "Short Selling" means any sale of a Security not owned by the seller, or any equivalent strategy involving options, derivatives, swaps, credit-default swaps, other Securities or other synthetic positions that are economically equivalent to the sale of a Security not owned by the seller.

    i.      "Relevant Period" means January 1, 2008 through January 1, 2009.

    j.      The term "Hedge Fund" refers to (i) any pooled investment vehicle, fund or entity that is privately organized, administered by professional investment managers, and is not widely available to the public; and (ii) has any of the following characteristics:

    1.  It holds a pool of securities but does not register its securities offerings under the Securities Act of 1934 and is not registered as an investment company under the Investment Company Act, 15 U.S.C. 80a-1 et seq.;

    2.  It is not registered with the Securities & Exchange Commission and it relies on Sections 3(c)(1) or 3(c)(7) of The Investment Company Act of 1940, for an exception from investment company regulation;

    3.  It is a managed portfolio of investments using investment strategies such as, among others, leverage, long, short and derivative positions in both domestic and international markets, global macro strategies (attempting to profit from changes in global economies caused by shifts in government policy which impact interest rates, and in turn affect currency, stock, and bond markets), with the goal of generating high returns and has performance-based compensation;

    4.  It is a private investment partnership open to a limited number of investors and requiring an initial minimum investment;

    5.  It is an entity requiring investors to keep their money in the fund for a minimum period of time; and/or

    6.  It is an investment firm using proprietary trading activities.

    k.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

    l.      The term "person" is defined as any natural person or any business, legal or governmental entity or association.

m.    The terms "and" and "or" shall be construed both disjunctively and
conjunctively, as necessary, to bring within the scope of this document request all
documents and responses which might otherwise be considered to be beyond its scope.

n.    The term "communication" means the transmittal of information
(in the form of facts, ideas, inquiries or otherwise).

o.    The term "concerning" means relating to, referring to, describing,
evidencing or constituting.

p.    The term "short equivalent positions" refers to any investment
strategy — regardless of how it is executed — based on the expectation that the value of
a stock in a publicly traded company will decline.

q.    The term "Member of the Media" shall mean all reporters, media
and agencies of any type that print, broadcast, that transmit news, information or opinion
to the general public, or that gather such information for that purpose, including, but not
limited to, free-lance reporters, newspapers, magazines, internet sites and web logs, radio
and television stations, and wire services.

r.    The terms "all" and "each" shall be construed as all and each.

s.    The term "representative" as used herein shall mean and include
any and all officers, directors, employees, partners, attorneys, agents, consultants, and
all other persons.

## GENERAL INSTRUCTIONS

1.    Each request shall be deemed to call for the production of the original
document or documents.  If the original is not available, then a copy shall be produced.
In addition, any copy of a document shall be produced if it differs in any respect from the

4

original (*e.g.,* by reason of handwritten notes or comments having been added to the copy which do not appear on the original or otherwise).

2. These document requests cover documents in the possession, custody or control of you, your agents, servants, employees, or representatives, including documents in the possession of any of Your counsel whether that counsel represents You in this action or otherwise.

3. If you withhold any document pursuant to claims of privilege, work product immunity, or for any other reason, then you shall provide a log relating to each document or portion of a document withheld that provides the following identifying and descriptive information:

(a.) The kind of document (*e.g.,* memorandum, letter, notes, etc.);

(b.) The date of the document or, if not date appears thereon, the approximate date that the document was prepared;

(c.) The identity of the author;

(d.) The identity of the custodian of the document;

(e.) The identity of the person(s) to whom the document is addressed, including the identity of any other recipients of the document that appear on the document as having received a copy (e.g., as "cc" or "bcc") or did actually receive a copy;

(f.) The relationship of the author to the addressee(s);

(g.) The title of the document, if any;

(h.) The identity of the attachments to the document and whether the attachments have been produced;

(i.) The claim of privilege providing the grounds for withholding the document (*e.g.,* attorney-client); and

(j.) Without revealing any privileged information, the subject matter and contents of the document.

4.     If any document requested herein was formerly in your possession, custody or control and has been lost, destroyed or otherwise disposed of, furnish a list identifying each such document and stating the following information with respect to each document:

    (a.)    the nature of the document and its contents;

    (b.)    the persons who prepared or authored the document, and, if applicable, the persons to whom the document was sent;

    (c.)    the date on which the document was prepared or transmitted; and

    (d.)    the date on which the document was lost, destroyed or otherwise disposed of, the conditions of and reasons for such destruction or other disposition and the persons requesting and performing the destruction or other disposition.

5.     The past tense shall be construed to include the present tense, and *vice versa*, to make the request inclusive rather than exclusive.

6.     The singular shall be construed to include the plural, and *vice versa*, to make the request inclusive rather than exclusive.

7.     Each paragraph and subparagraph herein shall be construed independently and not with reference to any other paragraph or subparagraph for the purpose of limitation.

8.     Each document requested is to be produced as it is kept in the normal course of business.  The name of the file from which it was produced, the identity of the person from whose file it was produced and the identity of the present custodian of that file shall be set forth.

9.     Any document that is attached by staple, clip or otherwise to a document requested herein shall also be produced (attached in the same manner as the original) regardless of whether the production of that document is otherwise requested herein.

6

10.    Each request herein for a document or documents to be produced

contemplates production of the document in its entirety without abbreviation or

expurgation.

11.    These requests are continuing in nature and, to the extent that your

responses may be enlarged, diminished or otherwise modified by information acquired

subsequent to the production of your initial responses hereto, you are required promptly

to produce supplemental responses reflecting such changes.

12.    The period covered by these Requests is the Relevant Period, except as

otherwise specifically provided.

## DOCUMENT REQUESTS

**Request No. 1:**

All documents concerning Lehman, including, without limitation, all (a)

documents concerning any investment, trading or hedging strategy or transactions that

involved, in any way, Lehman or Lehman Securities, including trading, profit and loss,

risk, and other transaction or investment position related records; (b) documents

(including voicemail recordings, transcripts, phone records, and communication logs)

concerning communications related to Lehman, including but not limited to internal

communications concerning Lehman and any between You and any Ratings Agency,

Hedge Fund, investment company, any investment bank, commercial bank, or financial

institution, governmental agency, customer or investor, or Member of the Media; (c)

documents concerning any posting on an internet web log, chat room, or other internet

forum concerning Lehman; (d) documents concerning the financial condition of Lehman,

including any actual or potential losses or financial risk at Lehman (including counter-

7

party risk and any risk from any potential default, insolvency or bankruptcy of any other

institution), the proportion or ratio of Lehman's debt to either its capital or equity, the

unwillingness of any person or entity to trade with, transact business with, or provide

credit to, Lehman, or Lehman's actual or potential default, insolvency, or bankruptcy; (e)

documents concerning Lehman's stock repurchase plan; (f) documents concerning the

accuracy or propriety of Lehman's public financial reporting; (g) documents concerning

the value or liquidity of Lehman's Level 3 assets; (h) documents concerning any actual or

potential need for Lehman to raise capital; (i)  documents concerning any attempts by

Lehman to raise or access capital from the public markets or Federal Reserve Discount

Window or its Primary Dealer Credit Facility; (j) documents concerning One William

Street Capital Management L.P. ("One William Street") or R3 Capital Partners L.P.

("R3"); or (k) documents concerning any actual or potential acquisition, merger, or

similar transaction involving Lehman.

**Request No. 2:**

All documents concerning any internal or external formal or informal

investigation or disciplinary action contemplated or taken involving You or any of Your

directors, partners, general managers, members, officers, employees, or agents, or in

which You or any such persons were requested to provide documents, testimony, or other

information between January 1, 2008 to the present concerning in any way Lehman,

Lehman Securities, or any Transaction or Position involving Lehman Securities,

including any investigations by the Securities and Exchange Commission, Department of

Justice, or any financial regulator or state agency.

**Request No. 3:**

Documents sufficient to show Your management and organizational structure

both now and during the Relevant Period, including, without limitation, all organizational

charts generated during or relating to the Relevant Period.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                :

In re                          :     Chapter 11 Case No.
                                :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :     08-13555 (JMP)
                                :

            Debtors.         :     (Jointly Administered)
                                :
------------------------------------------------------------x

### ORDER GRANTING THE DEBTORS AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND AUTHORIZING THE EXAMINATION OF PERSONS AND ENTITIES

Upon the motion, dated November 4, 2009 (the "Motion"), of Lehman

Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), pursuant

to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for an order authorizing the

Debtors to issue subpoenas for the production of documents and the examination of

persons and entities that have information relevant to the administration of the Debtors'

estates, including without limitation, the Debtors' former employees, lenders, investors,

creditors and counterparties to transactions with Debtors, as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of

Cases to Bankruptcy Court Judges of the District Court for the Southern District of New

York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due

and proper notice of the Motion having been provided, and it appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and approval

of the relief requested in the Motion being within the sound discretion of the Court; and

the Court having determined that the relief sought in the Motion is in the best interests of

the Debtors, their creditors and all parties in interest; and the Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefore, it is

   ORDERED that the Motion is granted; and it is further

   ORDERED that the Debtors are authorized, pursuant to Bankruptcy Rule

2004, to issue such subpoenas as may be necessary to compel the production of

documents and the testimony of witnesses in connection with the administration of these

cases; and it is further

   ORDERED that, unless otherwise agreed to by the applicable Debtor,

witnesses shall have thirty (30) days from the service of a subpoena to either (1) begin

production on a rolling basis, which production shall be completed prior to the later of

seventy-five (75) days from the service of a subpoena or such other date agreed to by the

Debtor and the witness, to the Debtor of responsive documents requested in the Debtor's

subpoena, other than those documents withheld under a claim of privilege or (2) serve on

the Debtor any objections to the subpoena; and it is further

   ORDERED that, if the Debtor and an objecting witness cannot resolve the

objection within ten (10) days following the date such objection is served on the Debtor

(or such later date agreed to by the Debtor and the witness), the witness shall either (i)

2

produce responsive documents in accordance with this Order or (ii) file the objection

with the Court and promptly schedule a hearing; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor, if a

witness withholds any documents from the production based upon a claim of privilege,

such witness is directed to provide counsel for the Debtor with a privilege log, containing

the information required under Bankruptcy Rule 7026, within ten (10) days following the

completion of the production of documents; and it is further

ORDERED that, the witness is directed to submit to oral examination

upon reasonable notice and, absent other agreement with the Debtor, within thirty (30)

days of the date of the service of a deposition subpoena upon such witness (unless such

subpoena is the subject of an objection); and it is further

ORDERED that, nothing herein shall limit the rights of any witness or any

other party under applicable law to object to or oppose any subpoena the Debtors may

serve upon such witness; and it is further

ORDERED that, in accordance with Bankruptcy Rules 2004 and 9016, the

Clerk of this Court shall issue subpoenas, signed, but otherwise in blank, as requested by

the Debtors; and it is further

ORDERED that the Debtors shall serve each subpoena and a copy of this

Order on the party subject to the subpoena, with a copy to (i) the Securities and Exchange

Commission; (ii) the Internal Revenue Service; (iii) the United States Attorney for the

Southern District of New York and (iv) counsel for the party subject to such subpoena

that has appeared in these cases; and it is further

ORDERED that within three (3) days following the service of a subpoena, the Debtors shall file with the Court notice of each subpoena, naming the witness and setting forth the date, time and place of any examination; and it is further

ORDERED that, notwithstanding the request for certain documents or information in a subpoena, witnesses shall not be required to produce to the Debtors any documents or information that have been previously provided to the Debtors by a witness either in connection with the claims filing process or otherwise; and it is further

ORDERED that, the Debtors shall not serve a subpoena pursuant this Order on any party for any documents or information or for an oral examination related to a derivative contract for which such party has received a Derivatives ADR Package pursuant to the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts* [Docket No. 5207] and such mediation has not yet been terminated by the mediator; and it is further

ORDERED that the Debtors shall file with the Court an affidavit or declaration of service for each subpoena it serves; and it is further

ORDERED that, this Court shall retain jurisdiction to resolve any disputes arising or related to this Order including any discovery disputes that may arise between or among the parties and to interpret, implement and enforce the provisions of this Order; and it is further

4

ORDERED that, this Order is without prejudice to the Debtors' right to

file further motions seeking additional documents and testimony pursuant to Bankruptcy

Rule 2004(a) or any other applicable law.

Dated: New York, New York
      November 23, 2009

                          _s/ James M. Peck_____
                          HONORABLE JAMES M. PECK
                          UNITED STATES BANKRUPTCY JUDGE