WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re : Chapter 11
: 
LEHMAN BROTHERS HOLDINGS INC., et al., : Case No. 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
---------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC.
PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FOR AUTHORITY
TO MAKE NEW DEBT INVESTMENT IN 237 PARK AVENUE PROPERTY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), together with its affiliates, as debtors and debtors in possession in the above-referenced chapter 11 cases (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), moves for authority to make a new debt investment in property located at 237 Park Avenue by purchasing the B Note (as defined herein) of a senior debt facility, and respectfully represent:

**Relief Requested**

1. By this Motion, pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"), LBHI seeks authority to use up to $255.4 million in estate funds to purchase the B Note from the Seller (as defined herein). LBHI in consultation with the

Official Committee of Unsecured Creditors (the "Creditors' Committee") will seek to purchase the B Note at the most favorable terms possible, however acquisition of the B Note even at its par value represents a valuable investment for LBHI and its estate.

**Jurisdiction**

2.　　　　This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Background**

3.　　　　Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.　　　　On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5.　　　　On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

6.　　　　On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

The Examiner issued a report at his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

7. On April 14, 2010, the Debtors filed a revised joint chapter 11 plan and disclosure statement [Docket Now. 8330 and 8332].

## Lehman's Business

8. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

9. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## 237 Park Avenue

10. 237 Park Avenue (hereinafter "237 Park") is a 21-story, 1,252,000 square-foot, high-rise building occupying the entire block-front on Park Avenue between 45th and 46th streets in New York City.

### *Capital Structure*

11. At the closing of the acquisition of 237 Park in May 2007, LBHI originated $1.23 billion in loans to finance the purchase of 237 Park by affiliates of Broadway Partners (the "Borrower"). This included $900 million of senior debt (the "Senior Debt") and an additional $330 million bridge mezzanine loan (the "Junior Mezz Loan"). LBHI securitized the

first $419.6 million of Senior Debt and sold the next $255.4 million as a B Note (the "B Note") to PRII 237 Park, LLC (the "Seller"). The remaining $225 million of Senior Debt was restructured as a senior mezzanine loan (the "Senior Mezz Loan") and was never syndicated. The Junior Mezz Loan is structured in two tranches, one of which is currently owned by LBHI, and the other by Lehman RE Ltd. ("Lehman RE") as the result of repo transactions completed prior to the Commencement Date.

12. All of the Senior Debt matures in June 2017, and the Junior Mezz Loan matures in May 2012.

13. In addition to the Senior Mezz Loan, LBHI currently holds a $60 million future funding facility (the "Future Funding Facility"), which is currently unfunded. The Future Funding Facility was established at the closing to provide additional capital for, among other things, debt service shortfalls on the Senior Debt and the Future Funding Facility, leasing costs and capital expenditures. The first dollars funded under the Future Funding Facility would come in senior to the Junior Mezz Loans. The Debtors have the option of rejecting this obligation in their chapter 11 cases as a pre-petition contract.

14. The equity in 237 Park is held, indirectly, in full, by the Borrower. A table summarizing the capital structure of 237 Park Avenue is below:

| Total Capitalization | | | | |
|---|---|---|---|---|
| Debt Type | $ Amount | $ per square foot | Maturity | Coupon |
| Senior Mortgage Debt | $419,600,000 | $335 psf | June 2017 | 6.27409% |
| Mortgage B Note | $255,400,000 | $539 psf | June 2017 | 6.00560% |
| Senior Mezzanine Loan | $225,000,000 | $719 psf | June 2017 | 6.17250% |
| Future Funding Facility | $0 | $719 psf | June 2017 (including extension options) | LIBOR + 300 |
| Junior Mezz (LBHI) | $212,041,346 | $888 psf | May 2012 | 12.000% |
| Junior Mezz B (Lehman RE) | $117,530,705 | $982 psf | May 2012 | 12.000% |
| **TOTAL DEBT** | **$1,229,572,051** | **$982 psf** | | |
| **Equity** | **% Ownership** | | | |
| Borrower | 100% | | | |

*Restructuring Discussions*

15. In July 2009, the Borrower requested a $1.25 million draw on the Future Funding Facility. Given the perceived impairment of the underlying asset and the high basis into which these dollars would be funded, the Debtors determined that a larger restructuring of the asset was necessary before infusing new capital, and began discussions with the Borrower regarding a potential restructuring.

16. In August 2009, LBHI believed that the Borrower was going to default on the B Note and, as a result, LBHI began discussions with the Seller regarding a potential restructuring.

17. LBHI believes that beginning in the second quarter of 2010, the Seller entered into discussions with a few select candidates to determine the market for the B Note.

Since that time, the Seller has engaged a broker to run a full marketing and sale process for the B Note. The ask date for bids has been set at June 18, 2010, and LBHI expects an expedited sale process to follow. LBHI believes that there has been significant interest in acquiring the B Note.

18. Making a new investment in 237 Park by purchasing the B Note from the Seller has significant upside for LBHI and represents the best means of protecting LBHI's current investment in 237 Park of approximately $437 million,[1] which could potentially be wiped out if a party other than LBHI acquires the B Note and pursues a foreclosure of the B Note.

**The Court Should Approve the Use of**
**Estate Funds to Purchase the B Note from the Seller**

19. The *Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a) Establishing Procedures to (I) Restructure, (II) Make New or Additional Debt or Equity Investments in, and/or (III) Enter into Settlements and Compromises in Connection with Existing Real Estate Investments*, entered by this Court on November 23, 2009 (the "Restructuring Protocol") [Docket No. 5912] authorizes, subject to certain conditions, the Debtors to make additional or new debt and/or equity investments beyond existing commitments in connection with an existing real estate investment up to $25 million. As the purchase of the B Note will require a larger investment than is authorized by the Restructuring Protocol, LBHI seeks authority, pursuant to section 363 of the Bankruptcy Code to use estate funds as necessary and up to the par value of the B Note ($255.4 million), to purchase the B Note from the Seller.

20. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

---

[1] Prior to the Commencement Date, all or a portion of the Debtors' interests in the Senior Mezz Loan were pledged and/or participated to SASCO C2-2008, LLC a structured finance vehicle.

property of the estate." *Id.* § 363(b)(1). When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In Re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986).

21. It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

22. LBHI believes that its multiple positions in the 237 Park debt structure make it the most natural and best buyer of the B Note. As such, LBHI will, in consultation with the Creditors' Committee, negotiate with the Seller to purchase the B Note at the most favorable price possible. LBHI believes that acquisition of the B Note at an attractive per square foot

basis could yield significant recoveries to the estate, and, as such, is in the best interests of LBHI and its estate.

23. Furthermore, acquisition of the B Note would enable LBHI to exert influence over the asset and enable LBHI to pursue multiple options to maximize recovery. Should LBHI succeed in acquiring the B Note, but fail to gain control of the asset, the estate anticipates that it will still collect scheduled interest and principal repayment at loan maturity and be in a better position to protect its other positions in the debt structure and preserve the opportunity to maximize value for the estate.

### Relief under Bankruptcy Rule 6004(h)

24. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale or lease of property . . . is stayed until expiration of 10 days after entry of the order, unless the Court orders otherwise." Fed. R. Bank. P. 6004(h). As set forth above, bids for the B Note are due on June 18, 2010. LBHI believes that the sale process will be conducted expeditiously and that a potential purchaser's ability to close the sale and to do so quickly will be very important factors in determining the winning bidder. Accordingly, the Debtors seek to consummate transactions contemplated by this Motion immediately following the entry of the proposed order. Waiver of the ten-day stay is therefore requested.

### Notice

25. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the Office of the United States Trustee for the Southern District of New York; (ii) the attorneys for the Statutory Committee of Unsecured Creditors appointed in these cases; (iii) the Securities and Exchange Commission; (iv) the Internal

Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases. No other or further notice need be provided.

26. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated: June 7, 2010
      Houston, Texas

                                        /s/ Alfredo R. Pérez
                                        Alfredo R. Pérez

                                        WEIL, GOTSHAL & MANGES LLP
                                        700 Louisiana, Suite 1600
                                        Houston, TX 77002
                                        Telephone: (713) 546-5040
                                        Facsimile: (713) 224-9511

                                        Attorneys for Debtors
                                        and Debtors in Possession

# Annex A

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                           :
In re                                      :    Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :    08-13555 (JMP)
                                           :
                   Debtors.                :    (Jointly Administered)
                                           :
------------------------------------------------------------x
```

### ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE GRANTING AUTHORITY TO LEHMAN BROTHERS HOLDINGS INC. TO MAKE NEW DEBT INVESTMENT IN 237 PARK AVENUE PROPERTY

Upon the motion, dated June 7, 2010 (the "Motion"),[2] of Lehman Brothers Holdings Inc. ("LBHI"), as debtor in possession (together with their affiliated debtors in the above-referenced chapter 11 cases, the "Debtors"), for an order pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") authorizing LBHI to use up to $255.4 million in estate funds to purchase the B Note tranche of 237 Park's senior debt, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures

---

[2] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

[Docket No. 2837]; and the Court having found and determined that the relief sought in the Motion is in the best interests of LBHI, its estate and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that LBHI is authorized and empowered, but not directed, to negotiate, in consultation with the Creditors' Committee, with Prudential for the purchase of the B Note; and it is further

ORDERED that LBHI is authorized and empowered, but not directed, to use estate funds as necessary to purchase the B Note at a purchase price up to its par value and to execute, deliver, implement, and perform any and all obligations, instruments, documents and papers, to make any required deposits, and to take any and all corporate and other actions that may be necessary or appropriate to purchase the B Note; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: June __, 2010
New York, New York

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE