**Hearing Date: June 16, 2010 at 10:00 a.m.**

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179
Douglas P. Bartner
Henry Weisburg
Brian H. Polovoy

*Attorneys for Nomura Global Financial Products, Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                           :

                                           :

In re:                                :         **Chapter 11**

                                           :

**LEHMAN BROTHERS HOLDINGS INC., et al.,**  :       **Case No. 08 – 13555 (JMP)**

                                           :

                         **Debtors.**      :        **(Jointly Administered)**

                                           :

                                           :
-----------------------------------------------------------------x

**OBJECTION OF NOMURA GLOBAL FINANCIAL PRODUCTS, INC. TO THE
MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF AN
ORDER, PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 1001, 7042 AND 9014, TO CONSOLIDATE CERTAIN
<u>PROCEEDINGS AND ESTABLISH RELATED PROCEDURES</u>**

       Nomura Global Financial Products, Inc. ("<u>NGFP</u>"), through its undersigned

counsel, for its objection to the Motion of Debtors and Debtors in Possession for Entry of an

Order, Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 1001, 7042 and

9014, to Consolidate Certain Proceedings and Establish Related Procedures [Docket No. 8614],

respectfully represents and states as follows:

## PRELIMINARY STATEMENT

1.        NGFP respectfully submits this opposition to the motion of Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special Financing, Inc. ("LBSF," together with LBHI and certain of LBHI's debtor affiliates, the "Debtors") to consolidate the claims objection against NGFP with the two adversary proceedings commenced against its foreign affiliates, Nomura International plc ("NIplc") (which is headquartered in London) and Nomura Securities Co., Ltd. ("NSC") (which is headquartered in Tokyo).  The Debtors fail to meet their burden of demonstrating that the facts warrant consolidating the Debtors' objection to NGFP's claims with the adversary proceedings against these two foreign affiliates.

2.        The common issues between the claims objection and the adversary proceedings that the Debtors identify – which would apply equally to any of thousands of claims against the Debtors based on derivatives transactions – are easily outweighed by many factual differences.  The Debtors do not try to argue – because they cannot – that the three Nomura entities are anything other than separate companies.  Each will have its own witnesses and produce its own documents; there will be little overlap, if any.  Moreover, whereas the vast majority of NGFP's terminated transactions are interest rate swaps, the vast majority of terminated transactions in the adversary proceedings involve credit default swaps, a completely different type of derivative transaction.  Combining these different transaction types into a single proceeding will only further complicate what already are complicated matters.  Finally, NGFP did not engage in derivative transactions referencing Icelandic banks.  Courts consistently refuse to consolidate matters when, as here, there are significant issues involved in one of the matters that are not involved in the other, when the evidence in one proceeding would not be directly

relevant in the other, or when consolidation of complicated issues would only amplify those complications.

3.      Moreover, even if there were any judicial efficiencies to be achieved, they would not outweigh the significant prejudice NGFP will suffer if the claims objection is consolidated with the adversary proceedings.  NIplc and NSC are based in the United Kingdom and Japan, respectively.  Combining discovery, testimony and expert reports concerning NGFP's interest rate swaps with the highly complex financial transactions at issue in the adversary proceedings will undoubtedly cause confusion and complicate and delay the resolution of NGFP's claim.  The Debtors all but concede they owe NGFP money.  NGFP's claim should not be held hostage to discovery that is completely irrelevant to its claim.  For these reasons, the Debtors' motion with respect to NGFP should be denied.

## PROCEDURAL HISTORY

4.      On September 15, 2008, LBHI commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Subsequently, on October 3, 2008, LBSF commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The chapter 11 cases of LBHI, LBSF and certain of LBHI's subsidiaries were consolidated for procedural purposes only and are jointly administered.  LBHI and LBSF are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On July 2, 2009, the Court entered the Order Pursuant to Section 502(b)(9) of the Bankruptcy Court and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claims, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4721] (the "Bar Date Order").  In compliance with the Bar Date

3

Order, NIplc, NSC and NGFP each filed proofs of claim against LBHI and LBSF dated as of

September 18, 2009 and electronically submitted corresponding derivatives and guarantee

questionnaires on October 20-21, 2009.

6.      On April 23, 2010, the Debtors filed:  (i) an adversary complaint and

objection against NIplc; (ii) a separate adversary complaint and objection against NSC; and

(iii) an Objection to Claims of NGFP.  On April 23, 2010, the Debtors also moved to consolidate

the adversary proceedings and the claims objection pursuant to Rule 42 of the Federal Rules of

Civil Procedure.

7.      On May 7, 2010, NIplc and NSC responded to the Debtors' motion to

consolidate [Docket No. 8903].  NIplc and NSC did not object to the consolidation of the two

adversary proceedings for procedural purposes but requested that the Court defer consideration

of whether any evidentiary hearings or trials should be consolidated.  On May 12, 2010, the

Court heard the Debtors' consolidation motion, and, on May 18, 2010, the Court entered an order

consolidating NIplc's and NSC's adversary proceedings for pretrial purposes [Docket No. 9103].

The Court expressly deferred to a later date its consideration of whether evidentiary hearings and

trials in the adversary proceedings also should be consolidated.

## ARGUMENT

8.      Rule 42 of the Federal Rules of Civil Procedure, made applicable to

adversary proceedings and contested matters by Rules 7042 and 9014 of the Federal Rules of

Bankruptcy Procedure, provides that a court may consolidate actions if they involve "common

issues of law and fact."  Although a court has discretion to determine whether consolidation is

appropriate, it "is not unfettered."  *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990)

(citations omitted).  A court "must" balance the risks of prejudice to the parties with the efficient administration of the proceedings by considering:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (quotations omitted).  As the moving parties, the Debtors bear the burden of demonstrating that there are judicial economy advantages and that those advantages outweigh the possibility of prejudice or delay.  *In re Currency Conversion Fee Antitrust Litig.*, No. 01-MDL-1409, 2009 WL 1834351, at *2 (S.D.N.Y. June 18, 2009).  The Debtors cannot sustain their burden with respect to NGFP.

> A.    Debtors Fail to Identify Common Issues.

9.    The three purportedly common issues identified in the Debtors' motion are issues common to nearly all derivative transactions and would justify consolidating every claim involving derivative transactions currently pending against the Debtors.  The Debtors' first argument is that the three actions involve common issues because certain provisions of the respective Master Agreements used by each of the Nomura entities were the same.  (Mot. ¶¶ 22-27.)  But each of the Master Agreements was based on a form of agreement that was an industry standard used by the vast majority of parties transacting in derivatives.  The Debtors' second purportedly common issue is that each Nomura entity did not "offset" allegedly mirror-image transactions.  (*Id.* ¶¶ 36-47.)  Here again, the Debtors do not demonstrate that this is an issue that is unique to the three Nomura entities.

10.    Finally, the Debtors' third purportedly common issue is that each Nomura entity delivered a Calculation Statement that relied on a Loss method to show that each was

owed money only a short time after each Nomura entity allegedly acknowledged owing money

to the Debtors.  (*Id.* ¶¶ 31-35.)  This is nothing more than saying that each of the Nomura entities

complied with the Master Agreement by submitting a Calculation Statement using the Loss

method, and that each Calculation Statement valued the terminated transactions after Lehman's

filing.  Undoubtedly, this is a situation in which thousands of other claimants found themselves

after the Debtors' bankruptcy filings – events that had effects on markets that were properly

accounted for in the Loss calculations.

      B.    <u>NGFP Will Be Prejudiced by Consolidation</u>.

      11.    The three purportedly common issues identified by the Debtors – which

are generic and would apply equally to numerous other claims based on derivative transactions –

are easily outweighed by a myriad of factual differences between the claims objection asserted

against NGFP and the two adversary proceedings.  These factual differences broadly fall into

two categories.

      12.    *First*, whereas there is overlap between the types of derivative transactions

engaged in by NIplc and NSC, NGFP's claim almost exclusively involves interest rate swaps.

*See* Calculation Statement for Payments on Early Termination from NIplc to LBSF

(Sept. 30, 2008); Supplement to NIplc Calculation Statement from NIplc to LBSF

(Feb. 13, 2009); Calculation Statement from NSC to LBSF (Sept. 30, 2008); Calculation

Statement from NGFP to LBSF (Sept. 30, 2008).  The differences between interest rate swaps,

on the one hand, and the credit default swaps making up the vast majority of the combined

claims of NIplc and NSC's claims are significant, and include different valuation models and/or

methodologies (including inputs) and different market practices.  Evidence relevant to NGFP's

interest rate swaps will not be relevant to credit default swaps or other types of derivative

6

transactions.  This provides one ground to deny the Debtors' motion.  *See, e.g.*, *In re Total Containment, Inc.*, Bk. No. 04-13144, 2008 Bankr. LEXIS 1043, at *7 (Bankr. E.D. Pa. Mar. 25, 2008) (motion for consolidation denied even though common issues were involved when "the evidence in one proceeding is not directly relevant to the issues in the other proceeding").

13.    Moreover, owing to the differences between the types of derivative transactions, the NGFP models used to perform its Loss calculations relied on different algorithms and different market inputs.  The different models and/or methodologies used by each of the three Nomura entities are complicated and highly technical.  Consolidation should be denied when it "may create confusion by combining already complicated claims."  *See In re Bob Desmond*, Bk. No. 03-13878, 2005 Bankr. LEXIS 2245, at *3 (Bankr. D. N.H. Sept. 20, 2005).

14.    Such confusion undoubtedly would arise here if all three of these matters were consolidated.  For example, expert reports and testimony on highly complex financial transactions will play an important role in these matters.  If the Debtors' objection to NGFP's claim is consolidated with the adversary proceedings, there will be sprawling expert reports and testimony addressing more than 4000 terminated transactions and multiple types of derivative transactions.  If the matters are not consolidated, the experts with respect to NGFP would be able to focus mainly on interest rate swaps and cover approximately 1200 terminated transactions. The balance of the transactions – most of which are credit default swaps – would be covered in the consolidated proceeding involving NIplc and NSC.  It is beyond argument that these two proceedings would be much more manageable for the Court and the parties, and that neither proceeding would be slowed by issues arising exclusively in the other.

15.    *Second*, the actions against NIplc and NSC involve issues that are not implicated in the action against NGFP.  Only the action against NIplc involves transactions with

Icelandic banks as reference entities.  (Mot. ¶ 9.)  NGFP did not engage in a single transaction referencing Icelandic banks and did not submit a Supplementary Statement in February 2009. (*Id*. ¶ 50.)  In addition, whereas NSC and NIplc used September 16, 2008 as the "as of" date for their Loss calculations, NGFP used September 15, 2008.  (*Id*.)  Courts have denied motions to consolidate matters when one involves issues not involved in the other.  *See, e.g.*, *Aerotel, Ltd. v. Verizon Commc'ns Inc.*, 234 F.R.D. 64, 67 (S.D.N.Y. 2005) (denying motion to consolidate because, among other things, one of the actions involved claims not at issue in the other).

16.     In stark contrast to the prejudice to NGFP that would result from consolidation, the Debtors do not identify any efficiency that would come from consolidation. The Debtors do not try to argue – because they cannot – that the three Nomura entities were anything other than completely separate companies, each of which will have its own unique witnesses, and each of which is located on one of three different continents.  The Debtors also concede (essentially) that they ultimately will owe NGFP some amount of money.  (Mot. ¶ 47.) Because NGFP is based in the United States, and most of the relevant witnesses reside in New York, consolidating discovery with respect to its claim with the international discovery will not be more efficient.  Indeed, consolidation gives rise to the possibility of delays and complications stemming from a discovery process taking place in three continents.

* * * *

17.     The only common issues shared among the three matters here relate to certain language contained in the Master Agreements and whether certain terminated transactions should have been offset.  These are largely issues of contract interpretation common to thousands of claims against the Debtors based on derivative transactions.  There is no reason to consolidate the Debtors' objection to NGFP's claim into the adversary proceedings.  NGFP's

transactions were of a different type than either NIplc's or NSC's, NGFP has no interest in the

Debtors' arguments against NIplc based on derivative transactions referencing Icelandic banks,

and judicial economy would not be served by consolidating the Debtors' objection to NGFP's

claim with adversary proceedings against two foreign affiliates involving distinct, highly

complex transactions.

## **CONCLUSION**

18.    For the foregoing reasons, the Debtors failed to sustain their burden, and

their motion to consolidate the Debtors' objection to NGFP's claim with the adversary

proceedings should be denied.

Dated:  New York, New York
       June 9, 2010

Respectfully submitted,

SHEARMAN & STERLING LLP

By:    /s/ Douglas Bartner
        Douglas P. Bartner
        Henry Weisburg
        Brian H. Polovoy
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:   (212) 848-7179

*Attorneys for*
*Nomura Global Financial Products, Inc.*

04/520145