**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
Sean A. O'Keefe – NY Bar No. 1980853, CA Bar No. 122417
Paul J. Couchot CA Bar No. 131934
Counsel for the SunCal Appellants

**Hearing Date: June 16, 2010 at 10:00 a.m. (EST)**

**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400
Louis R. Miller – CA Bar No. 54141
Martin H. Pritikin -- CA Bar No. 210845
Special Litigation Counsel for SunCal Appellants

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**LEHMAN BROTHERS HOLDINGS INC, et al.,**<br><br>**Debtors.** | **Chapter 11**<br>**Case No. 08-13555 (JMP)**<br>**Jointly Administered** |

**SUPPLEMENTAL DECLARATION OF SEAN O'KEEFE IN SUPPORT OF SUNCAL APPELLANTS' REPLY TO OPPOSITION TO MOTION FOR STAY PENDING APPEAL OF ORDER APPROVING COMPROMISE CONTROVERSY IN CONNECTION WITH A REPURCHASE TRANSACTION WITH FENWAY CAPITAL, LLC AND A COMMERCIAL PAPER PROGRAM WITH FENWAY FUNDING, LLC *AND* FOR STAY PENDING APPEAL OF ORDER DENYING MOTION OF THE SUNCAL DEBTORS FOR AN ORDER DETERMINING THAT THE AUTOMATIC STAY DOESNOT APPLY; OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM STAY AND NOTICE OF APPEAL**

I, Sean A. O'Keefe, hereby declare and state as follows:

1. I am an attorney admitted to practice before this Court and I am associated in this matter with the firm of Winthrop Couchot, Professional Corporation, attorneys for the SunCal Voluntary Debtors, in the jointly administered bankruptcy proceeding *In re Palmdale Hills*

*Property, LLC*, No. 8:08-bk-17206 and related adversary proceeding *SCC Acquisitions, Inc., et al. v. Lehman ALI, Inc., et al.*, No. 7:09-ap-01005 (the "Action"), pending before the Honorable Judge Erithe Smith in the United States Bankruptcy Court of the Central District of California (the "California Bankruptcy Court"). This Supplemental Declaration is submitted in support of the *SunCal Appellants' Reply to Opposition to Motion for Stay Pending Appeal of Order Approving Compromise of Controversy in Connection with a Repurchase Transaction with Fenway Capital LLC and A Commercial Paper Program with Fenway Funding LLC and For Stay Pending Appeal of Order Denying Motion of the SunCal Debtors for an Order Determining that the Automatic Stay Does Not Apply or, in the Alternative, Granting Relief from Stay*, filed concurrently with this Declaration. The facts stated herein are within my personal knowledge and if called upon to testify to the same I could and would testify competently thereto.

2. Attached hereto as **Exhibit A** is a true and correct copy of the relevant portions of the transcript of the hearing on Motion to Strike held on June 30, 2009, before the California Bankruptcy Court [8:08-bk-17406].

3. Attached hereto as **Exhibit B** is a true and correct copy of the proof of claim no. 65 (without attachments) filed by LCPI against Palmdale Hills Property LLC on September 21, 2009 [Claim 65-4 (8:08-bk-17206 ES)].

4. Attached hereto as **Exhibit C** is a true and correct copy of the Lehman Defendants' Supplement To Unilateral Status Report (LBR 7016-1 And FRBP 7026) filed on Supplement to Unilateral Status Report filed with the California Bankruptcy Court on June 3, 2010 [D.E. 290 8:09-ap-01005 ES].

5. Attached hereto as **Exhibit D** is a true and correct copy of the *Stipulation By Lehman ALI, Inc., Lehman Commercial Paper Inc., Northlake Holding LLC, OVC Holdings LLC and Voluntary Debtors Pursuant to 11 U.S.C. §§ 362, 363, 364, And 507: (1) Authorizing the Use of Alleged Unencumbered Cash; (2) Granting Administrative Expense Claims, and (3) Modifying*

*Automatic Stay To The Extent Necessary* filed with the California Bankruptcy Court on September 21, 2009 [D.E. 1154 (8:08-bk-17206 ES)].

6.    Attached hereto as **Exhibit E** is a true and correct copy of the Order of the Ninth Circuit Court of Appeal denying the Motion to expedite the appeal, entered on June 9, 2010, Ninth Circuit Case No. 10-60004 [D.E. 29]/

7.    All of the proofs of claim filed against the SunCal Trustee Debtors' estates were filed by non-debtor Lehman-related entities, that is, Lehman ALI Inc., OVC Holdings LLC, and Northlake Holdings LLC. As a result, the SunCal Trustee Debtors' equitable subordination claims were only asserted against non-debtor Lehman claimants, and not LCPI.

| SunCal Trustee Debtor | Lehman Claimant | Claim No. and Amount |
|---|---|---|
| SunCal PSV | Lehman ALI | Proof of Secured Claim ("POC") No. 12  $88,257,340 |
| Delta Coves | Lehman ALI | POC No. 21  $206,023,142 |
| SunCal Marblehead | Lehman ALI | POC No. 21  $354,325,126 |
| SunCal Heartland | Lehman ALI | POC No. 9  $354,325,126 |
| SunCal Oak Valley | OVC Holdings LLC | POC No. 16  $141,630,092 |
| SunCal Northlake | Northlake Holdings LLC | POC No. 6  $123,654,777 |
| SunCal Oak Knoll | Lehman ALI | POC No. 12  $158,141,365 |
| SunCal Torrance | Lehman ALI | POC No. 4  $158,141,365 |
| SunCal Century City | Danske Bank A/S London Branch, as assignee of Lehman ALI | POC No. 4  $120,000,000.00 |

See also Declaration of Paul J. Couchot, ¶ 4, filed on May 10, 2010 (Docket Entry 8960).

8.    The Lehman Entities continuously represented to the California Bankruptcy Court that they are "creditors" of the SunCal Debtors pursuant to the terms of the various loans from November of 2008 through March of 2009. The SunCal Debtors had no reason to question the veracity of the Lehman Entities' representations until Danske Bank appeared before the California Bankruptcy Court on March 25, 2009 and represented that it held all right, title and interest in the $120 million loan secured by the property owned by SunCal Century City, pursuant to a 1999 repurchase agreement. Prior to this appearance, the Lehman Entities had been contending that they were the holders of this loan. Based upon this disclosure, the SunCal Debtors

conducted discovery. It was not until J.P. Morgan produced documents in response to the SunCal Debtors' subpoena on April 28, 2009 that the SunCal Debtors obtained confirmation that the Lehman Entities had relinquished all right, title and interest in the seven Sold Loans pursuant to the August 2008 Master Repurchase Agreement.

I hereby declare that the foregoing is true and correct under the penalty of perjury under the laws of the United States of America.

Executed this 10th day of June 2010, in Orange County, California.

/s/ Sean A. O'Keefe
Sean A. O'Keefe

# EXHIBIT "A"



ORIGINAL

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

In Re:

PALMDALE HILLS PROPERTY, LLC,

Debtor.

Case No. SA08-17206-ES

Santa Ana, California
Tuesday, June 30, 2009
2:00 p.m.

HEARING RE: DEBTORS' OBJECTIONS TO AND MOTION FOR ORDER STRIKING CLAIMS FILED BY THE LEHMAN ENTITIES

HEARING RE: MOTION FOR ORDER STRIKING PLEADINGS FILED BY THE LEHMAN ENTITIES

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE ERITHE SMITH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:

LOUIS R. MILLER, ESQ.
MARTIN H. PRITIKIN, ESQ.
Miller Barondess, LLP
1999 Avenue of the Stars
Suite 1000
Los Angles, California 90067
(310) 552-4400

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

*Briggs Reporting Company, Inc.*

APPEARANCES: (cont'd.)

| | |
|---|---|
| For the United States Trustee: | WILLIAM N. LOBEL, ESQ.<br>The Lobel Firm<br>840 Newport Center Drive<br>Suite 750<br>Newport Beach, California 92660<br>(949) 999-2860 |
| For the Voluntary Debtors: | SEAN A. O'KEEFE, ESQ.<br>PAUL COUCHOT, ESQ.<br>Winthrop Couchot<br>660 Newport Center Drive<br>Fourth Floor<br>Newport Beach, California 92660<br>(949) 720-4100 |
| For the Chapter 11 Trustee on Involuntary Cases: | STEVEN SPEIER, ESQ.<br>4100 Newport Place<br>Third Floor<br>Newport Beach, California 92660<br>(949) 222-2999 |
| For Lehman Entities: | RICHARD PACHULSKI, ESQ.<br>DEAN ZIEHL, ESQ.<br>Pachulski, Stang, Ziehl & Jones<br>10100 Santa Monica Boulevard<br>11th Floor<br>Los Angeles, California 90067<br>(310) 277-6910 |
| | ED SOTO, ESQ.<br>CLAY ROESCH, ESQ.<br>Weil, Gotshal & Manges, LLP<br>1395 Brickell Avenue<br>Suite 1200<br>Miami, Florida 33131<br>(305) 577-3100 |



Court Recorder: Sally Daniels
United States Bankruptcy Court
411 West Fourth Street
Suite 2030
Santa Ana, California 92701

Transcriber: Briggs Reporting Company, Inc.
6336 Greenwich Drive, Suite B
San Diego, California 92122
(310) 410-4151

it nicely. I've only been here four times --

THE COURT: Here -- here's my question. The truth of the matter --

MR. SOTO: -- but I'm going to just --

THE COURT: -- the truth of the matter is --

MR. SOTO: -- yeah.

THE COURT: -- at the time the bankruptcy was filed --

MR. SOTO: Right.

THE COURT: -- okay. There were certain known facts, that is known to Lehman. Lehman knew that these repurchase transactions had gone on.

MR. SOTO: Right.

THE COURT: Okay. And so this isn't a matter of, well, you know, this didn't happen until after the proof of claim was filed, or we didn't know about it -- everybody -- you knew about it, okay --

MR. SOTO: And we thought we were the lenders --

THE COURT: -- and -- and so, if one was looking at the proof of claim, it does look like you're being purposely vague, okay, not to have mentioned that the repurchase transaction took place. Not to have mentioned -- whether you want to call it a sale or something else, because if you look at the documents, it says sale.

Now, I understand that you got other arguments as

to why, you know, I should look beyond the -- the -- what -- what's in the document in terms of what the parties said they were intending to do. I understand. I get that argument. But, I find it, you know, just a bit self-serving to say, "well, this is all of no consequence," okay. We have the information, but you say, 'well they have the loan documents.' They may have had the loan documents, what they didn't have was any disclosure that these -- the transactions had -- had taken place.

It wasn't until Danske came forward, in the midst of the litigation over the sale procedures motion, that any of this came to light. And so, yeah, it causes me to wonder what's going on with Lehman when you've got documents.

Now you can certainly take the position that you take, that this was not a true sale, that was a transfer for security. But you had to have known, because you have the documents, you had to have known that that document was subject to interpretation that it was a sale. Why? Because it said it was a sale. Why? Because it said the parties intended it to be a sale. You knew that, okay.

And that's part of the problem that I'm having with this entire scenario. That, you know, you -- you knew that these transactions had happened, and it seemed, it almost seems as if, 'well, if we don't say anything about it, and no one says anything, then, you know, we'll just

sort of slide through the cracks.' You may never get to a determination one way or another. Was it a true sale or was it, you know, a security transfer? We never get there because it wasn't initially disclosed at all. That cannot be blamed on -- on the SunCal or Palmdale entities, because this would -- was information that was known exclusively by the Lehman entities.

And that's why we're in the position that we're in today. However we got here, it was because these things were not disclosed.

And again, as I said, yeah, you can make the argument now, "we think was a security," but you knew that document said on its face that it was a sale --

MR. SOTO: Uh-huh.

THE COURT: -- and that that was the intent of the parties to accomplish that. You knew that the day that you filed the first motion for relief from stay --

MR. SOTO: Uh-huh.

THE COURT: -- okay. You knew that when you filed the proof of claim --

MR. SOTO: And let me respond to that, your Honor --

THE COURT: -- and I think -- and I think -- and I think that when you file a proof of claim, I'm just -- I'm just curious and I'm wanting to know, I'm really, I'm

really, really wanting to know.

Because, again, one of the things that Mr. O'Keefe pointed out at the outset of the hearing, which is absolutely true -- I mean, I don't know what other firm in this country files as many or as big cases, bankruptcy cases, as the Weil, Gotshal firm.

I -- I'm not sure whether I can draw the Pachulski firm in this, because Mr. Pachulski pointed out, they came in late. So, I guess they get a pass, at least with respect to, you know, hearings that took place before. So, I guess I'll focus on -- on Weil, Gotshal --

MR. SOTO: Yeah.

THE COURT: -- in reviewing these papers, it was tremendously perplexing to me why this information had to come out the way that it did. I mean, why not, from the very beginning, just be straightforward. You know, these repurchase agreements took place, they existed. It's our position that, notwithstanding what it says in those documents, that we continue to have an interest in it because we believe that these are secured transactions, not outright sales because. And -- and I think that, you know, this issue could have been addressed months ago, you know, before a lot of other positions were taken.

And I'm -- I'm just personally curious as to why there was no disclosure whatsoever that the -- that these --

that this had happened.

MR. SOTO: Well, first of all, let me address that very point. And -- and --

THE COURT: And this kind of goes beyond, you know, the technicality, or the -- the legalities of the motion itself. It really goes to, you know, various positions that Lehman took. Because, again, Mr. Pachulski wasn't here very early on, but, you know, there were a lot of hearings where -- where the issue regarding the -- the stay. I mean if we were going to, you know, just sort of flush out all those issues, we could have done so very early on in the case. There were motions for use of cash collateral. I mean, there were representations that were made about counsel for -- for the Debtors here, about what they were doing, and violating the stay. And maybe, maybe there was a stay violation going on, but at the same time, there were these other issues that all the time, were kind of lurking beneath and it never come to surface --

MR. SOTO: Well, I --

THE COURT: -- and I find that a little distressing that we're dealing with this now, so many months in to the case.

MR. SOTO: -- and I do, too, because this issue was disclosed in a letter from me to opposing counsel the very first time he inquired about it. I sent his -- a

response telling him which loans were -- were the subject of a repo, and in the --

THE COURT: But wasn't this -- wasn't this after the Danske matter?

MR. SOTO: -- at -- at the same time as Danske was being disclosed, we said, "yes, there are others. Here's what they are," and -- and we told them that --

THE COURT: But that's -- but that's -- but that's my point --

MR. SOTO: -- and the reason is --

THE COURT: -- if Danske --

MR. SOTO: -- because our client truly --

THE COURT: -- if Danske had not --

MR. SOTO: -- I'm sorry. Go ahead.

THE COURT: -- If Danske had not come forward, okay, how many more months? I mean, we could have been at plan confirmation before this came up again.

MR. SOTO: I don't think so, because we had already raised it even in connection with Danske, we addressed it to the Court again. I wasn't here at the time but counsel, because I've looked at it, addressed it to the Court and suggested that there are other entities who -- who may claim an interest in the loans. Danske was one of them in. It came forth, first of all. Secondly, in filing the proof of claims, as co-counsel points out, the proof of

claims says, "there are voluminous, excuse me, documents that exist with respect to these claims, and we'll provide them." Our client at all times, including today, believes that it is the owner of these loans. It didn't file the proof of claims as agent for the lenders --

THE COURT: But, you know, having a belief -- having a belief --

MR. SOTO: It's a good faith "belief," because --

THE COURT: -- well, well, you know. Having a belief is one thing, but you're the lawyer --

MR. SOTO: Uh-huh.

THE COURT: -- okay. And you've got a document that says what it says --

MR. SOTO: Uh-huh.

THE COURT: -- and so, irrespective of what the belief is, you know, it just seems to me that the reality is that you have to deal with this document.

And it, to me, it should have been clear that this could be a potential issue, given the black-and-white language of the document, even if you believed it was subject to interpretation. I mean it -- because, what you seem to be inviting the Court to do is to is, to a certain extent, suspend reality and ignore what the document actually says.

MR. SOTO: No. What I'm really inviting the Court

# EXHIBIT "B"

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT Central DISTRICT OF California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Palmdale Hills Property, LLC | Case Number: 08-17206 |
|---|---|

*NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Names of Creditor (the person or other entity to whom the debtor owes money or property): Lehman Commercial Paper Inc.

☒ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
Lehman Commercial Paper Inc., Attn: Jeff Fitts    Weil, Gotshal & Manges, LLP, Attn: Shai Y. Waisman
1271 Sixth Avenue, 46ᵗʰ Floor    with a copy to:    767 Fifth Avenue
New York, New York 10020    New York, New York 10153

Telephone number: (646) 333-4027

Court Claim Number: 65
*(if known)*

Filed on: 3/30/2009

Name and address where payment should be sent (if different from above):
Lehman Commercial Paper Inc., Attn: Jeff Fitts
1271 Sixth Avenue, 46ᵗʰ Floor
New York, New York 10020
Telephone number: (646) 333-4027

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ See Exhibit "A"

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim: See Exhibit "A"**
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 8C51

**3a. Debtor may have scheduled account as:**
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☒ Other
Describe:

Value of Property: $ Undetermined    Annual Interest Rate As specified in the Loan Documents, as defined in Exhibit "A"

Amount of arrearage and other charges as of time case filed included in secured claim,
if any: $ See Exhibit "A"    Basis for perfection: See Exhibit "A"

Amount of Secured Claim: $ See Exhibit "A"    Amount Unsecured: $ See Exhibit "A"

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 01/19/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. Print: Jeff Fitts, Duly Authorized Signatory  Signature: | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

DOCS_LA:205690.1

American LegalNet, Inc.
www.FormsWorkflow.com

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

1. **Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

2. **Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

3. **Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

4. **Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

5. **Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

6. **Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

7. **Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

American LegalNet, Inc.
www.FormsWorkflow.com



**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

In re:

Palmdale Hills Property, LLC, and Its Related Debtors,

Jointly Administered Debtors and Debtors-In-Possession.

Affects:
- ☐ All Debtors
- ☒ Palmdale Hills Property, LLC
- ☐ SunCal Beaumont Heights, LLC
- ☐ SCC/Palmdale, LLC
- ☐ SunCal Johannson Ranch, LLC
- ☐ SunCal Summit Valley, LLC
- ☐ SunCal Emerald Meadows, LLC
- ☐ SunCal Bickford Ranch, LLC
- ☐ Acton Estates, LLC
- ☐ Seven Brothers, LLC
- ☐ SJD Partners, Ltd.
- ☐ SJD Development Corp.
- ☐ Kirby Estates, LLC
- ☐ SunCal Communities I, LLC
- ☐ SunCal Communities III, LLC
- ☐ SCC Communities, LLC
- ☐ North Orange Del Rio Land, LLC
- ☐ Tesoro SF, LLC
- ☐ LB-L-SunCal Oak Valley, LLC
- ☐ SunCal Heartland, LLC
- ☐ LB-L-SunCal Northlake, LLC
- ☐ SunCal Marblehead, LLC
- ☐ SunCal Century City, LLC
- ☐ SunCal PSV, LLC
- ☐ Delta Coves Venture, LLC
- ☐ SunCal Torrance, LLC
- ☐ SunCal Oak Knoll, LLC

Case No.: 8:08-bk-17206-ES

Jointly Administered With Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574-ES; 8:08-bk-17575-ES; 8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES; 8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES; 8:08-bk-17470-ES; 8:08-bk-17472-ES; and 8:08-bk-17588-ES

Chapter 11

**EXHIBIT "A" TO AMENDED PROOF OF SECURED CLAIM OF LEHMAN COMMERCIAL PAPER INC.**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 and 3003, this amended proof of claim (the "***Claim***")[1] is made by Lehman Commercial Paper Inc. ("***LCPI***" or "***Agent***") on behalf of itself and as authorized agent of the lenders, their successors and assigns (the "***Lenders***")[2] under that certain Credit Agreement dated as of February 8, 2007 (as supplemented and/or amended, the "***Loan Agreement***"), and the various related loan documents as well as any other documents evidencing perfection (collectively, including any amendments and/or supplements thereto, together with the Loan Agreement, the "***Loan Documents***").

Specifically, LCPI files this Claim (i) on behalf of itself and as authorized agent for the Lenders under the revolver component of the Loan Agreement (the ***"Ritter Ranch Revolver Loan"***) and (ii) on behalf of itself and as authorized agent for the Lenders and Fenway, based on this Court's ruling that Fenway is a transferee of the term loan component of the Loan Agreement (the ***"Ritter Ranch Term Loan"***) under that certain Master Repurchase Agreement dated as of August 22, 2008 (the ***"MRA"***).[3] Pursuant to the written confirmation executed on September 12, 2008 in accordance with section 3 of the MRA (the ***"Repo Confirm"***), the Ritter Ranch Term Loan was transferred to Fenway. According to the Repo Confirm, the Ritter Ranch Revolver Loan was not transferred to Fenway and LCPI continues to own such loan. True and correct copies of the Loan Agreement, the MRA, and the Repo Confirm are attached hereto as Exhibits "1," "2" and "3," respectively.

This claim is made by the undersigned, Jeff Fitts, who is a duly authorized signatory of Agent to make and file this Claim on behalf of Agent and the Lenders.

The liability of Palmdale Hills Property, LLC (the "***Debtor***") arises under the Loan Documents with respect to which the following amounts were, and still are, due and owing under the Loan Documents. The liability against the Debtor arises because the Debtor is a borrower under the Loan Agreement and a guarantor under that certain Guarantee and Collateral Agreement, dated as of

---

[1] This amended proof of claim amends and supersedes in its entirety Proof of Claim No. 65 filed by the Agent in this chapter 11 case.

[2] For purposes of this amended proof of claim, the term "Lenders" includes LCPI and Fenway Capital, LLC (***"Fenway"***).

[3] Nothing in this amended proof of claim should be construed as a waiver of the Agent's and Lenders' rights in connection with such ruling, including, without limitation, the right to appeal the ruling, assert that the transactions under the MRA constituted transfers for security and not outright sales, and further amend this proof of claim, and all of the Agent's and Lenders' rights in connection therewith are hereby reserved.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

February 8, 2007 (as amended and/or supplemented, the "***Collateral Agreement***"). A true and correct copy of the Collateral Agreement is attached hereto as Exhibit "4." Such amounts are summarized as follows:[4]

| Facility | Description | Amount |
|---|---|---|
| Term Loan | Principal | $208,477,500.00 |
| | Interest Owing | $33,047,549.92 |
| | Exit Fee | $2,090,000.00 |
| Revolver | Principal | $38,033,844.07 |
| | Interest Owing | $4,984,859.13 |
| | Non-use Fee | $68,343.19 |
| | Exit Fee | $550,000.00 |
| **TOTAL** | | **$287,252,096.31** |

The Agent, on behalf of itself and the Lenders, is the holder of valid and perfected first priority security interests in and liens on substantially all of the tangible and intangible assets of the Debtor, including, but not limited to, the following (collectively, the "***Collateral***"):

(a) any real or personal property granted by the Debtor pursuant to a deed of trust on the property commonly referred to as Ritter Ranch;

(b) accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, instruments, inventory, investment property, letter of credit rights and any supporting obligations relating to the foregoing;

(c) all books and records pertaining to the Collateral;

(d) goods and personal property (including fixtures);

(e) intellectual property;

(f) investment property;

(g) money, cash and any cash equivalents; and

[4] Amounts noted are as of November 6, 2008, the petition date in the Debtor's chapter 11 case. The Agent reserves the right to assert a claim for any postpetition amounts due and owing.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(h) all proceeds, rents and products of any and all of the foregoing, in any form, as more thoroughly set forth in the Loan Documents and the amendments and supplements thereto.

A true and correct copy of the first priority deed of trust as publicly recorded is attached hereto as Exhibit "5."

This Claim is not subject to any set-off or counterclaim by the Debtor.

This Claim is filed as a secured claim to the extent of the value of the Collateral. If the value of such Collateral is insufficient to satisfy the amounts asserted in this Claim, this Claim is filed as a general unsecured claim to the extent of any such deficiency.

Nothing in this proof of secured claim constitutes an election under section 1111(b) of the Bankruptcy Code, as to which the Agent expressly reserves all of its rights and elections.

The Agent reserves the right to amend and/or supplement this Claim, including any exhibits filed concurrently herewith, and to assert any and all other claims of whatever kind or nature that they or any of them have, or they or any of them may have, against the Debtor that come to the Agent's attention or arise after the filing of this Claim. The filing of this Claim shall not be deemed a waiver of any such claims.

A portion of the claims asserted in this Claim may be entitled to administrative expense priority. This Claim is without prejudice to the Agent to assert an administrative expense claim against the Debtor.

In filing the Claim, the Agent expressly reserves all rights and causes of action, including without limitation, contingent or unliquidated rights that it may have against the Debtor. The description of claims and the classification thereof herein is not a concession or admission as to the correct characterization or treatment of any such claims or a waiver of any rights of the Agent under the Loan Documents. Furthermore, the Agent expressly reserves all rights to amend, modify and/or supplement the Claim in any respect, including without limitation, with respect to filing an amended proof of claim to fix and liquidate any contingent or unliquidated claim set forth herein, or to file additional proofs of claim for additional claims, including without limitation, claims for interest, fees and related expenses (including attorneys' fees) that are not ascertainable at this time. The Claim is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

filed without prejudice to the filing by the Agent of additional proofs of claim or requests for payment with respect to any other indebtedness, liability or obligation of the Debtor.

The filing of the Claim is not and shall not be construed as an election of remedies or limitation of rights and remedies. In filing this Claim, the Agent does not waive or release: (i) its rights and remedies against any person or entity who may be liable for all or part of the claims set forth in this Claim, whether an affiliate or subsidiary of the Debtor, a guarantor, an assignee or otherwise, (ii) any obligation owed to it, or any right to any security that may be determined to be held by it for its benefit or (iii) any past, present or future defaults or events of default by the Debtor or any other person or entity.

Nothing contained in the Claim is intended to be a waiver or release of any rights, claims, actions, defenses setoffs or recoupments to which the Agent is or may be entitled under any agreements, instruments or documents, in law or equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved. In filing this Claim, the Agent does not submit itself to the jurisdiction of this Court for any purpose other than with respect to the claims asserted in this Claim.

All notices concerning this Claim should be sent to:

Lehman Commercial Paper Inc.
1271 Sixth Avenue, 46th Floor
New York, New York 10020
Attn: Jeff Fitts

with copies to

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Facsimile: (212) 310-8007
Attn: Shai Y. Waisman, Esq.

-and-

Weil, Gotshal & Manges LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Facsimile: (305) 374-7159
Attn: Nellie Camerik, Esq. and Elisa R. Lemmer, Esq.

[*The remainder of this page is intentionally blank*]

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Dated: September 18, 2009

LEHMAN COMMERCIAL PAPER INC.

By: ____________________
Jeff Fitts
Its: Duly Authorized Signatory

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT "C"

Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd. 11th Floor
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

-and-

Edward Soto, Esq. (*admitted pro hac vice*)
Shai Waisman, Esq. (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendants Lehman ALI, Inc., OVC Holdings LLC, Northlake Holdings LLC and LV Pacific Point, LLC

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

In re

PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED DEBTORS,
Jointly Administered Debtors and Debtors-in-Possession

---

PALMDALE HILLS PROPERTY, LLC, et al.,

Plaintiffs,

v.

LEHMAN ALI, INC., et al.,

Defendants.

**CASE NO. 8:08-bk-17206-ES**
Jointly Administered With Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES
8:08-bk-17224-ES; 8:08-bk-17242-ES
8:08-bk-17225-ES; 8:08-bk-17245-ES
8:08-bk-17227-ES; 8:08-bk-17246-ES
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES
8:08-bk-17249-ES; 8:08-bk-17573 ES
8:08-bk-17574 ES; 8:08-bk-17575 ES
*And*
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
8:08-bk-17588-ES
**Adversary No. 8:09-ap-01005-ES**

**LEHMAN DEFENDANTS' SUPPLEMENT TO UNILATERAL STATUS REPORT (LBR 7016-1 AND FRBP 7026)**

Date: June 10, 2010
Time: 9:30 a.m.
Place: Courtroom 5A

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**SUPPLEMENT TO UNILATERAL STATUS REPORT**

Pursuant to Local Bankruptcy Rules 7016-1 and 7026-1(b)(2), Defendants Lehman ALI, Inc., OVC Holdings LLC, Northlake Holdings LLC and LV Pacific Point, LLC (the "Lehman Defendants") hereby supplement their Unilateral Status Report, filed May 3, 2010. As set forth below, several events have occurred since the Unilateral Status Report that have a fundamental effect on the scheduling issues in this adversary proceeding ("AP").

**A. Recent Developments**

1. All parties are now ready to proceed with plan confirmation. The Lehman Defendants, the Trustee and the Committee for the Involuntary Debtors have agreed upon the terms of a plan of reorganization for the Involuntary Debtors, and expect to have a term sheet signed within the next several days. The parties are already preparing a plan and disclosure statement to implement the agreed terms for the joint plan, and expect, if the Court permits, to confirm their plan before the end of the year. For their part, the Voluntary Debtors have withdrawn their motion for substantive consolidation ("SubCon Motion") that they had sought to litigate before plan confirmation, and indicated that they can proceed with their plan. Lehman may file a competing plan in those cases. Thus the AP need not be resolved before moving forward with plan confirmation.

2. The settlement will render moot most of the claims in the AP. It provides for a final resolution of the claims of creditors of the Involuntary Debtors in the AP, rather than, as before, a structure for litigating such claims post-confirmation. Thus the settlement will moot a substantial percentage of the AP claims, since it subsumes 75% of the value of the SunCal projects at issue.

3. Accordingly, *the Trustee is immediately suspending any participation in or prosecution of the AP claims*. Those claims will be fully resolved and dismissed upon plan confirmation. This suspension is without prejudice to whatever rights other parties to the litigation may have.

4. The remaining claims, those asserted by the Voluntary Debtors, are largely stayed as a result of two rulings made by Judge Peck on May 12, 2010.

- Judge Peck authorized LCPI and LBHI to enter an agreement whereby the term loans transferred to Fenway Capital, LLC ("Fenway") pursuant to the August 22, 2008 Master Repurchase Agreement ("Repo Agreement") will be returned to LCPI. LBHI is subrogated to Fenway Capital's indemnity claims, and to Fenway's security interest in the loans that secure such claims.

- Judge Peck also ruled that the Debtors' equitable subordination claims are subject to the stay protecting both LCPI's and LBHI's interests in the liens, and that he would await a ruling by the Ninth Circuit on the Voluntary Debtors' appeal of the BAP ruling before entertaining a renewed motion for relief from stay. That could take at least six months, effectively putting a hold on the AP.[1]

- The Voluntary Debtors have filed notices of appeal from Judge Peck's orders.

5. The Voluntary Debtors have withdrawn the SubCon motion, thereby eliminating that motion as an unstayed, substantive basis for conducting discovery that overlaps with the AP (and as the asserted basis of any urgent need to complete discovery).

6. Meanwhile, the AP remains at the pleading stage and non-document discovery remains stayed. The Lehman Defendants' motions to strike and for partial dismissal of the Fourth Amended Complaint are not scheduled for hearing until August 10, 2010, and September 8, 2010, respectively, and both the Lehman Defendants and Lehman Re have filed motions to dismiss Arch Insurance Company's complaint in intervention (which repackages the Voluntary Debtors' already-dismissed Third Amended Complaint), the hearing on which is set for October 5, 2010. These hearings should proceed prior to opening the floodgates of discovery. Once it begins, discovery currently contemplated in the AP would take at least eight months to complete, and the Court has already indicated it cannot conduct the trial, but will assign it to another court for trial.

7. Based on the foregoing, the Lehman Defendants submit that discovery should be stayed, at least until the outcome of plan confirmation proceedings. The Trustee will not participate until that time (and likely not at all) and, moreover, nearly all claims in the AP are stayed in any event. There is simply no need to proceed with costly discovery on the AP claims prior to

[1] There are only four loans to the Voluntary Debtors that were not part of the Repo Agreement and so are not subject either to the LCPI or the LBHI automatic stay. These are the loans referred to as the "Bickford Second Loan," which all parties agree is underwater, the "Interim Loan" (a $20 million loan guaranteed by SCC Communities LLC, Tesoro SF, LLC and North Orange Del Rio Land, LLC), and the Pacific Point First and Second Loans (the second of which was foreclosed upon prepetition), which foreclosure must be avoided before equitable subordination could apply even in theory.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

confirmation, particularly when confirmation of the joint plan would eliminate the need for discovery concerning the majority of the creditor claims that are at issue.

**B. State Of Discovery**

With the withdrawal of the SubCon Motion, the only extant deadlines applicable to the AP from the scheduling orders entered on December 30, 2009, March 23, 2010 and June 3, 2010, are April 19, 2010 for document production and submission of declarations re documents in the possession of Barclay's Bank and Alvarez & Marsal ("A&M"). These are dates that the parties had *already* acknowledged required extension in order to address, *inter alia*, the Lehman Defendants' receipt of 1.9 million pages of documents from Barclay's Bank. Although the Voluntary Debtors lob a complaint concerning the pace of production, the A&M documents have been produced, and a document review of the magnitude of the Barclay's Bank documents is obviously a very large undertaking, involving a large team of document reviewers working full time on the review. Until this Court issues an order applying the stay to discovery herein, the Lehman Defendants are continuing to push forward with review and production of such documents, which they hope to conclude within the time projected in the previous status report.

**C. Proposed Discovery Schedule**

In the face of the foregoing, Plaintiffs have suggested that discovery should proceed on all fronts as to all Debtors, whether they are Voluntary Debtors or Involuntary Debtors which have already agreed to settle their claims, and whether they are "stay-implicated projects" or "non-stay projects." They contend this is efficient, despite the fact that most of the claims will be mooted, because "most of the issues and witnesses would overlap anyway."

The suggestion is ill-founded. Discovery should be stayed, at least until after plan confirmation. First, LCPI's and LBHI's automatic stays cannot be ignored based on "efficiency." Moreover, there are not "stay-implicated projects" and "non-stay projects"; rather the automatic stay protects LCPI and LBHI and their respective interests in the loans and liens securing the loans. It would be wasteful to allow the litigation to proceed independently only as to four loans that have so little bearing on the AP.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Voluntary Debtors' assertion that "most issues and witnesses will overlap" between the purported "non-stay projects" and others that are either fully stayed and/or belong to Involuntary Debtors is incorrect, and does not justify discovery in any event. Subordination is a creditor-specific remedy, hence inequitable conduct must be shown as to each creditor on whose behalf subordination is asserted. *Stoombus v. Kilimnik*, 988 F.2d 949, 960 (9th Cir. 1993) ("[a] claim will be [equitably] subordinated only to the claims of creditors whom the inequitable conduct has disadvantaged."). It is patently inefficient to conduct discovery on 450 claims when the substantial majority will be mooted by settlement. Moreover, to the extent there is any overlap, it militates *against* conducting discovery at this time. If the only justification for conducting discovery on the four insignificant non-Repo Agreement loans is that the discovery may be useful with respect to much larger claims that are stayed, and that may become moot, then the fairest and most efficient approach is to stay all discovery at this time, *particularly* where there is a chance that if the settlement is *not* consummated, the Trustee may seek to conduct the same discovery. To avoid substantial prejudice to the Lehman Defendants from efforts to take duplicative discovery, and to reduce expense for all parties, all discovery should be stayed at this time.

The Lehman Defendants intend to continue their review and production of the Barclay's Bank documents as required by orders presently in force in the AP. At the time of the status conference, however, discovery activity should be ordered ceased until the stay is lifted.

**D. <u>Schedule Of Contemplated Law-And-Motion Matters</u>**

The Lehman Defendants' motions to strike and for partial dismissal of the Fourth Amended Complaint are scheduled for hearing on August 10, 2010, and September 8, 2010, respectively, and their motion to dismiss Arch Insurance Company's complaint in intervention (along with Lehman Re's motion) is scheduled for hearing on October 5, 2010. In view of the stay, however, these motions should be put off calendar until such time as the stay is lifted.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**E. Counsel Have Met And Conferred In Compliance With LBR 7026-1**

Counsel engaged in initial meet and confer sessions on February 27, 2009, April 2, 2009, October 16, 2009, April 29, 2010 and again on May 28, 2010.

Dated: June 3, 2010

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Dean A. Ziehl
Richard M. Pachulski, Esq.
Dean A. Ziehl, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, California 90067-4100
Telephone: (310) 277-6910

-and-

Edward Soto, Esq.
Shai Waisman, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000

Attorneys for Defendants Lehman ALI, Inc., OVC Holdings LLC, Northlake Holdings LLC and LV Pacific Point, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT "D"

Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Edward Soto (admitted *pro hac vice*)
Shai Waisman (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Counsel for Lehman Commercial Paper Inc., Lehman ALI, Inc., Northlake Holdings LLC and OVC Holdings LLC

Paul J. Couchot
Peter W. Lianides
WINTHROP COUCHOT
PROFESSIONAL CORPORATION
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-41111

General Insolvency Counsel for Voluntary Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

In re:
Palmdale Hills Property, LLC, and Its Related Debtors, Jointly Administered Debtors and Debtors-In-Possession.

Affects:
- ☐ All Debtors
- ☒ Palmdale Hills Property, LLC
- ☒ SunCal Beaumont Heights, LLC
- ☐ SCC/Palmdale, LLC
- ☒ SunCal Johannson Ranch, LLC
- ☒ SunCal Summit Valley, LLC
- ☒ SunCal Emerald Meadows, LLC
- ☒ SunCal Bickford Ranch, LLC
- ☒ Acton Estates, LLC
- ☐ Seven Brothers, LLC
- ☐ SJD Partners, Ltd.
- ☐ SJD Development Corp.
- ☐ Kirby Estates, LLC
- ☐ SunCal Communities I, LLC
- ☐ SunCal Communities III, LLC

Case No.: 8:08-bk-17206-ES

Jointly Administered With Case Nos.

8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574-ES; 8:08-bk-17575-ES; 8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES; 8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES; 8:08-bk-17470-ES; 8:08-bk-17472-ES; and 8:08-bk-17588-ES

Chapter 11

**STIPULATION PURSUANT TO 11 U.S.C. §§ 362, 363, 364, AND 507: (1) AUTHORIZING THE USE OF ALLEGED UNENCUMBERED CASH;**

☒ SCC Communities, LLC
☒ North Orange Del Rio Land, LLC
☒ Tesoro SF, LLC
☐ LB-L-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LB-L-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

**(2) GRANTING ADMINISTRATIVE EXPENSE CLAIMS; AND (3) MODIFYING AUTOMATIC STAY TO THE EXTENT NECESSARY**

**Hearing Date Requested Pursuant to Ex Parte Application to Shorten Time Filed Herewith:**

Date: June 22, 2010
Time: 10:30 AM
Place: Courtroom 5A

This stipulation (the "Stipulation") is made by and between Lehman ALI, Inc. ("Lehman ALI"), Lehman Commercial Paper Inc. ("LCPI"), Northlake Holdings LLC ("Northlake Holdings"), OVC Holdings LLC ("OVC Holdings" and, collectively with Lehman ALI, LCPI and Northlake Holdings, the "Lehman Entities"),[1] on the one hand, and certain of the above-captioned debtors and debtors in possession affected by this Stipulation (the "Subject Voluntary Debtors")[2], on the other hand. The Lehman Entities and the Subject Voluntary Debtors (together, the "Parties") hereby enter into this Stipulation and agree as follows:

**RECITALS**

WHEREAS, on November 6, 7, and 19, 2008, the Voluntary Debtors[3] filed their respective voluntary petitions under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Court"). The Voluntary Debtors

[1] The Lehman Entities shall refer to the Lehman Entities on behalf of themselves, both individually and collectively, as purported lenders, and as purported agents for all lenders under the applicable loan documents, including, without limitation, as purported agents for Fenway Capital, LLC. Notwithstanding anything to the contrary contained herein, the Lehman Entities do not concede that they are "purported" lenders or agents as to the loan(s) or any particular loan, and reserve all of their rights in connection therewith.

[2] The Subject Voluntary Debtors are: Palmdale Hills Property, LLC; Acton Estates, LLC; SunCal Beaumont Heights, LLC; SunCal Bickford Ranch LLC; North Orange Del Rio Land, LLC; SunCal Emerald Meadows, LLC; SunCal Johannson Ranch, LLC; SunCal Summit Valley, LLC; Tesoro SF, LLC; and SCC Communities, LLC.

[3] The Voluntary Debtors in these cases consist of: Palmdale Hills Property, LLC (Main Case) (Case No. 8:08-17206-ES); Acton Estates, LLC (Case No. 8:08-17236-ES); Kirby Estates, LLC (Case No. 8:08-17246-ES); North Orange Del Rio Land, LLC (Case No. 8:08-17574-ES); SCC Communities, LLC (Case No. 8:08-17573-ES); SCC/Palmdale, LLC (Case No. 8:08-17224-ES); Seven Brothers, LLC (Case No. 8:08-17240-ES); SJD Development Corp. (Case No. 8:08-17245-ES); SJD Partners, Ltd. (Case No. 8:08-17242-ES); SunCal Beaumont Heights, LLC (Case No. 8:08-17209-ES); SunCal Bickford Ranch, LLC (Case No. 8:08-17231-ES); SunCal Communities I, LLC (Case No. 8:08-17248-ES); SunCal Communities III, LLC (Case No. 8:08-17249-ES); SunCal Emerald Meadows, LLC (Case No. 8:08-17230-ES); SunCal Johannson Ranch, LLC (Case No. 8:08-17225-ES); SunCal Summit Valley, LLC (Case No. 8:08-17227-ES); and Tesoro SF, LLC (Case No. 8:08-17575-ES).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

continue to manage their affairs and property as debtors in possession pursuant to sections 1107 and 1008 of the Bankruptcy Code.

WHEREAS, on November 12, 14 and 19, 2008, involuntary petitions were filed against the Trustee Debtors.[4]

WHEREAS, on or about January 8, 2009, the Court entered orders for relief in the Trustee Debtors' cases.

WHEREAS, on or about January 15, 2009, the Court entered orders granting the appointment of a chapter 11 trustee in each of the Trustee Debtors' cases. Thereafter, the Office of the United States Trustee appointed Steven M. Speier as the Chapter 11 Trustee (the "Trustee") for the Trustee Debtors.

WHEREAS, the Lehman Entities are authorized to enter into this Stipulation on behalf of themselves, as lenders, and as agents for all lenders under the applicable loan documents.

WHEREAS, LCPI is a debtor and debtor in possession in the jointly administered cases captioned In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP), pending in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

WHEREAS, the Lehman Entities assert secured claims against the Debtors that approximate $2.3 billion, and include within the scope of the pledged collateral certain real and personal property owned by the Subject Voluntary Debtors.

WHEREAS, certain of the Voluntary Debtors maintain bank accounts containing cash or cash equivalents, which the Lehman Entities assert are subject to perfected liens and therefore constitute the Lehman Entities' "cash collateral" under section 363 of the Bankruptcy Code. The Subject Voluntary Debtors dispute such contention, and assert that such cash and cash equivalents are not subject to perfected liens of the Lehman Entities and therefore do not constitute "cash

[4] The Trustee Debtors in these cases consist of: SunCal Heartland, LLC (Case No. 8:08-17407-ES); LB-L-SunCal Northlake, LLC (Case No. 8:08-17408-ES); SunCal Marblehead, LLC (Case No. 8:08-17409-ES); SunCal Century City, LLC (Case No. 8:08-17458-ES; SunCal PSV, LLC (Case No. 8:08-17465-ES); Delta Coves Venture, LLC (Case No. 8:08-17470-ES); SunCal Torrance, LLC (Case No. 8:08-17472-ES); LB-L SunCal Oak Valley, LLC (Case No. 8:08-17404-ES); and SunCal Oak Knoll, LLC (Case No. 8:08-17588-ES). The Voluntary Debtors and the Trustee Debtors shall be referred to herein as the "Debtors."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

collateral" under section 363 of the Bankruptcy Code. The cash and cash equivalents held by the Subject Voluntary Debtors shall be referred to herein as the "Alleged Unencumbered Cash" and shall include, but are not limited to, the cash and cash equivalents held in the accounts maintained by the Subject Voluntary Debtors set forth in **Exhibit A** attached hereto.

WHEREAS, on April 2, 2009, Lehman ALI, certain of the Voluntary Debtors, and the Trustee for the Trustee Debtors, by and through their counsel, entered into that certain *Stipulation with Lehman ALI, Inc. Pursuant to 11 U.S.C. §§ 362, 363, 364, and 507: (1) Approving Senior Secured Superpriority Postpetition Financing; (2) Granting Liens and Providing Superpriority Administrative Expense Status; and (3) Modifying Automatic Stay to the Extent Necessary* (the "April 2009 DIP Stipulation") affecting certain of the Voluntary Debtors and certain of the Trustee Debtors as set forth specifically therein (the "April 2009 Borrowers"). The April 2009 DIP Stipulation was approved by the Court by the entry of an order on April 17, 2009 (the "April 2009 DIP Order").

WHEREAS, pursuant to the April 2009 DIP Stipulation, among other things, the April 2009 Borrowers were authorized to borrow from Lehman ALI, and Lehman ALI was authorized to make available to each April 2009 Borrower, individual loans (collectively, the "April 2009 DIP Loans") in an aggregate amount equal to $1,790,572.00.

NOW THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration (the receipt and sufficiency of which are acknowledged), it is hereby stipulated and agreed by and among the Parties as follows:

**AGREEMENT**

1. Court Approval. The Stipulation is subject to approval of the Court, and LCPI's entry into the Stipulation is subject to approval by the New York Bankruptcy Court, and the Stipulation shall have no force and effect until the date that both such approvals have been obtained (the "Approval Date"). Immediately upon the Approval Date (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Stipulation shall become valid and binding upon and inure to the benefit of the Lehman Entities, the Subject Voluntary Debtors, all other creditors of the Subject Voluntary Debtors, any committees appointed in these cases, and all other parties in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the cases or upon dismissal of any of the above-captioned cases (the "Cases").

2. The Subject Voluntary Debtors' Use of the Alleged Unencumbered Cash. The Lehman Entities consent to the use by each Subject Voluntary Debtor of the Alleged Unencumbered Cash held by each such Subject Voluntary Debtor solely for the purpose of paying: (a) the costs and expenses attributable to each such Subject Voluntary Debtor in the total aggregate amount not to exceed $423,172.00 as set forth in the budgets attached hereto as **Exhibit B** (the "Budgets," as such Budgets may be revised or amended with the written consent of the Lehman Entities, which consent may be granted or withheld in the Lehman Entities' sole and absolute discretion) in an aggregate amount not to exceed the total amount of the Budgets as set forth in **Exhibit B**, except that each Subject Voluntary Debtor may expend funds for any particular line items allocable to such Subject Voluntary Debtor as set forth in the Budgets (the "Budget Items") in excess of the respective amounts provided for such Budget Items for a particular Subject Voluntary Debtor, so long as such excess amount is equal to or less than 5% of the amount allocated to that particular Subject Voluntary Debtor for a particular Budget Item and provided that the aggregate amount for all such Budget Items for a particular Subject Voluntary Debtor is not increased; and (b) the reasonable fees and expenses incurred by professionals retained in the Voluntary Debtors' cases, including the law firm of Miller Barondess, LLP (the "Miller Firm"). In addition, LCPI consents to and Palmdale Hills Property, LLC ("Palmdale Hills") is authorized to make, from Alleged Unencumbered Cash held by Palmdale Hills, individual loans: (a) to each of the other Subject Voluntary Debtors solely for the purpose of paying (i) the costs and expenses attributable to each such Subject Voluntary Debtor as set forth in the Budgets attached hereto as **Exhibit B** and (ii) the reasonable fees and expenses incurred by professionals retained in the Voluntary Debtors' cases, including the Miller Firm; and (b) by separate Court approval, to the Trustee Debtors for the purpose of paying the reasonable fees and expenses incurred by professionals retained in the Trustee Debtors' cases, including the Miller Firm; provided, however, that: (a) Palmdale Hills is permitted to make individual loans from Alleged Unencumbered Cash held by Palmdale Hills only to Subject Voluntary Debtors or Trustee Debtors that have used, and accordingly no longer hold, any Alleged

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Unencumbered Cash; and (b) the use of any Alleged Unencumbered Cash for payments to the Miller Firm shall be subject to the terms and conditions set forth in the *Order Granting Amended Joint Application for Authority to Employ Miller Barondess, LLP as Special Litigation Counsel* [D.E. 1061]. The aggregate amount of any Alleged Unencumbered Cash used in accordance with this paragraph 2 shall be referred to herein as the "Alleged Unencumbered Cash Funding Amount." The Subject Voluntary Debtors shall maintain appropriate documentation related to the expenditure of any and all of the Alleged Unencumbered Cash Funding Amount. The Subject Voluntary Debtors shall provide to the Lehman Entities, upon their reasonable request, a breakdown of the Alleged Unencumbered Cash Funding Amount spent as of the date of the request and provide all documentation relating to such actual amounts spent. For the avoidance of doubt, the Budget Items for each Subject Voluntary Debtor shall not be modified, the Subject Voluntary Debtors shall not expend any of the Alleged Unencumbered Cash Funding Amount for any particular Budget Items in excess of the respective amounts provided for such Budget Items in the Budgets (plus 5%), and the Alleged Unencumbered Cash held by each such Subject Voluntary Debtor shall not be used for any other purpose, or by any other Subject Voluntary Debtor for costs and expenses allocable to any such other Subject Voluntary Debtor, without (i) the prior written consent of the Lehman Entities, which consent may be granted or withheld in the Lehman Entities' sole and absolute discretion, or (ii) further order of the Court.

3. Termination Date. The authority provided hereunder to use the Alleged Unencumbered Cash Funding Amount shall terminate on the one hundred and twentieth day (120th) day after the Approval Date (the "Termination Date"), and no further use of the Alleged Unencumbered Cash Funding Amount shall be made after thirty (30) days following the Termination Date without either the prior written consent of the Lehman Entities, which consent may be granted or withheld in the Lehman Entities' sole and absolute discretion, or further order of the Court, provided however, that the Termination Date shall apply only with respect to the Budgets and not with respect to the payment of professional fees.

4. Repayment of the Alleged Unencumbered Cash Funding Amount as Administrative Expense Claims Under Certain Circumstances. In the event the Parties agree or the Court finds that

PACHULSKI STANG ZIEHL & JONES LLP ATTORNEYS AT LAW LOS ANGELES, CALIFORNIA

all or portion(s) of the Alleged Unencumbered Cash are subject to perfected liens of the Lehman Entities, then such portions of the Alleged Unencumbered Cash Funding Amount subject to the perfected liens shall constitute an allowed administrative expense claim under the Bankruptcy Code that shall be due and payable to the applicable Lehman Entities by a plan proponent in full, in cash, without notice or demand, upon the effective date of any confirmed plan of reorganization or liquidation in the Cases. In the event the Parties agree or the Court finds that all or portion(s) of the Alleged Unencumbered Cash are not subject to perfected liens held by any of the Lehman Entities, then such portions of the Alleged Unencumbered Cash Funding Amount not subject to any perfected lien shall not be repayable in such circumstances wherein a Subject Voluntary Debtor used its own Alleged Unencumbered Cash to pay the expenses of its own estate, or that such payments were authorized to be made pursuant to the entered orders of the Court authorizing joint administration of the Debtors (the "Joint Administration Orders"). Notwithstanding anything to the contrary contained herein, the Lehman Entities reserve their rights to assert that the Joint Administration Orders did not excuse the Subject Voluntary Debtors from repaying the amounts of professional fees paid by other Subject Voluntary Debtors. In the event that the Parties agree or the Court finds that all or portion(s) of the Alleged Unencumbered Cash are not encumbered by a perfected lien of the Lehman Entities but such portions were used for the benefit of another Subject Voluntary Debtor, then such portion(s) shall constitute an administrative expense obligation of the Subject Voluntary Debtor for whose benefit such portion of the Alleged Unencumbered Cash was used, and shall be repaid in accordance with section 1129(a)(9) of the Bankruptcy Code to the Subject Voluntary Debtor that owned such portion of the Alleged Unencumbered Cash. The Parties reserve all rights in connection with the Alleged Unencumbered Cash, including, without limitation, their rights with respect to whether such cash is encumbered or unencumbered by perfected liens held by any of the Lehman Entities. The administrative expense claims provided for in this paragraph 3 shall be referred to herein as the "Alleged Unencumbered Cash Administrative Expense Claims."

5. Payment by Lehman ALI of Insurance Amounts. Lehman ALI agrees to pay directly to insurers the insurance premiums associated with the provision of insurance coverage for the properties owned by the Subject Voluntary Debtors up to the amounts listed for such properties as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

set forth in **Exhibit C** attached hereto (the "Insurance Amounts").

6. Maturity Date/Plan Treatment of Insurance Amounts. The Subject Voluntary Debtors expressly stipulate and acknowledge that the Insurance Amounts shall be treated as administrative expense claims under the Bankruptcy Code (the "Insurance Administrative Expense Claims") and, as such, must be paid to Lehman ALI in full, in cash, on the effective date of any confirmed plan of reorganization or liquidation, or, in the event no plan is confirmed in the Voluntary Debtors' cases, the earlier of dismissal of such cases or conversion of such cases to chapter 7 (the "Insurance Amount Maturity Date").

7. Repayment Of April DIP Loan Amounts. Upon the occurrence of the Approval Date, each applicable Subject Voluntary Debtor shall repay to Lehman ALI, from the Alleged Unencumbered Cash held by each such Subject Voluntary Debtor, only to the extent of the lesser of the amount that such Subject Voluntary Debtor borrowed under the April 2009 DIP Order and the amount of such Voluntary Debtor's Alleged Unencumbered Cash, the full amount of the April 2009 DIP Loans (including all outstanding principal and accrued and unpaid interest) made to each such Voluntary Debtor as set forth in **Exhibit D** attached hereto, plus all outstanding accrued and unpaid interest on such loans as provided for in paragraph 5 of the April 2009 DIP Stipulation. To the extent an April DIP Loan made to a particular Subject Voluntary Debtor exceeds the amount of Alleged Unencumbered Cash held by such Subject Voluntary Debtor, Palmdale Hills shall make an individual loan to such Subject Voluntary Debtor from Alleged Unencumbered Cash held by Palmdale Hills for the purpose of permitting the repayment of such Subject Voluntary Debtor's April DIP Loan by such Subject Voluntary Debtor to Lehman ALI. All funds lent by Palmdale Hills from its Alleged Unencumbered Cash to any Voluntary Debtor(s) for the purpose set forth in this paragraph shall constitute Alleged Unencumbered Cash Administrative Expense Claims and shall be repaid in accordance with paragraph 3 herein. Any lien or encumbrance arising by reason of the April 2009 DIP Loans shall be deemed released and of no further force or effect as to each Subject Voluntary Debtor that has fully repaid such amount.

8. Modification of Automatic Stay. The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of this

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Stipulation, including, without limitation: (a) to permit the Subject Voluntary Debtors to incur all liabilities and obligations in connection with their use of the Alleged Unencumbered Cash Funding Amount; (b) authorize the repayment of the Alleged Unencumbered Cash Administrative Expense Claims and Insurance Administrative Expense Claims; and (c) enable the enforcement, protection and preservation of all of the Lehman Entities' rights and remedies with respect thereto or otherwise under this Stipulation.

9. Events of Default. The following occurrences shall constitute an "Event of Default" under this Stipulation as to the particular defaulting Subject Voluntary Debtor: (a) failure of the Subject Voluntary Debtor to comply with any term of this Stipulation; or (b) the use of Alleged Unencumbered Cash other than in strict compliance with the terms of this Stipulation; or (c) the failure to repay the Alleged Unencumbered Cash Administrative Expense Claims or Insurance Amounts pursuant to and in accordance with the terms of this Stipulation.

10. Remedies. Immediately upon the occurrence and during the continuation of an Event of Default set forth in paragraph 9 by a particular Subject Voluntary Debtor, and without further order of the Court, the applicable defaulting Subject Voluntary Debtor shall, at the direction of the Lehman Entities, cease using the Alleged Unencumbered Cash.

11. Reservation of Rights. Notwithstanding anything to the contrary herein, this Stipulation is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any rights, claims or privileges (whether legal, equitable or otherwise) of the Parties with respect to any issues that are not expressly addressed herein. Specifically, and without limitation, (a) the Parties reserve all rights in connection with the Alleged Unencumbered Cash, including without limitation whether such cash is encumbered by perfected liens held by the Lehman Entities, and all aspects of pending litigation among the Parties, including, without limitation, any matters involving equitable subordination or substantive consolidation, (b) the Parties further agree that entry into this Stipulation, and the use of Alleged Unencumbered Cash or the consent to the Alleged Unencumbered Cash Administrative Expense Claims contemplated hereunder, shall not be used in any manner in litigation amongst the Parties, whether as, for instance, a basis for or against substantive consolidation or otherwise, and in no way shall have any effect on the adversary

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

proceeding captioned *Palmdale Hills Property, LLC, et al., v. Lehman ALI, Inc., et al.*, Adv. Pro. No. 09-1005-ES, pending in the Court, or otherwise, and (c) the rights, obligations, waivers, stipulations, agreements or defenses of the Parties among or between or to each other or any of them shall not be affected hereby except to the extent provided herein.

12. No Modification. Absent the written consent of the Lehman Entities and the Subject Voluntary Debtors or further order of the Court, the Lehman Entities and the Subject Voluntary Debtors agree that this Stipulation shall not be modified.

13. Jurisdiction. The Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation.

14. Further Cooperation. The Parties agree to and will cooperate fully with each other in the performance of this Stipulation, and will execute such additional agreements, documents or other instruments as may reasonably be required to carry out the intent of this Stipulation.

15. Signatures. This Stipulation may be signed in any number of counterparts (and by each Party hereto on different counterparts), each of which constitutes an original, but all such counterparts when taken together shall constitute one and the same agreement. This Stipulation may be executed by facsimile signature and delivered by facsimile transmission with the same effect as delivery of a manually executed counterpart of this Stipulation.

16. No admission; No Evidence. Neither this Stipulation nor anything contained in this Stipulation shall be construed as, treated as or characterized as an admission by any Party of any fact or liability or as evidence of any allegation of any Party. Neither this Stipulation nor anything in this Stipulation shall be admissible in any proceeding as evidence of liability or wrongdoing by any of the Parties. This Stipulation may be introduced, however, in any proceeding to enforce the terms of this Stipulation.

17. Authority. Each person who signs this Stipulation represents and warrants that he or she has the authority and capacity to act on behalf of the Party for whom he or she is signing and to bind that Party to the terms of this Stipulation.

18. Entire Agreement. This Stipulation contains the entire agreement between the Parties and may not be amended or modified except by a writing executed by the Parties or further order of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Court. All prior oral and written agreements, if any, are expressly superseded hereby and are of no further force and effect.

WEIL, GOTSHAL & MANGES LLP

- and -

Dated: June 4, 2010

PACHULSKI STANG ZIEHL & JONES LLP

By */s/ Dean A. Ziehl*
Richard M. Pachulski
Dean A. Ziehl
Attorneys for Lehman ALI, Inc., Lehman Commercial Paper Inc., Northlake Holdings LLC and OVC Holdings LLC.

Dated: June 4, 2010

WINTHROP COUCHOT PROFESSIONAL CORPORATION

By */s/ Paul J. Couchot*
Paul J. Couchot
Peter W. Lianides
General Insolvency Counsel for Debtors and Debtors-in Possession

APPROVED AS TO FORM AND SUBSTANCE:

Dated: June 4, 2010

IRELL & MANELLA LLP

By */s/ Alan Friedman*
Alan Friedman
Kerri A. Lyman
Attorneys for Official Unsecured Creditors' Committee of Voluntary Debtors

**EXHIBIT "A"**

| Account Holder | Approx. Balance | Account No. | Depository Bank |
|---|---|---|---|
| Acton Estates, LLC | $0.00 | 3090345971 | California Bank & Trust |
| North Orange Del Rio LLC | $10.79 | 3090343681 | California Bank & Trust |
| Palmdale Hills Property LLC (Anaverde Account) | $2,715,279.41 | 1000914414 | Central Pacific Bank |
| Palmdale Hills Property LLC - (Bond Interest) | $2,685,118.80 | 3090346941 | California Bank & Trust |
| Palmdale Hills Property LLC (CD) | $343,000.00 | 3090003143 | California Bank & Trust |
| SCC Communities LLC | $4,534.42 | 3090343411 | California Bank & Trust |
| SunCal Beaumont Heights, LLC | $11.11 | 3090340821 | California Bank & Trust |
| SunCal Bickford Ranch LLC | $1,935,800.49 | 3090345891 | California Bank & Trust |
| SunCal Emerald Meadows LLC | $2,769.95 | 3090345701 | California Bank & Trust |
| SunCal Johannson Ranch LLC | $83,292.29 | 3090341041 | California Bank & Trust |
| SunCal Summit Valley, LLC | $37,434.14 | 3090341121 | California Bank & Trust |
| Tesoro SF, LLC | $71.07 | 3090343761 | California Bank & Trust |

# EXHIBIT B

**120-Day DIP Budget**
**Approved Voluntary Budget**

| | Approved 120-Day Voluntary Budget | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Asset Name | Life Safety | Security | Utilities | Erosion Control & Maint. | Entitlement Preservation | Insurance | G&A | Title Report | Taxes | 4-Month TOTAL |
| Acton | - | - | - | 2,000 | - | - | - | 800 | - | 2,800 |
| Beaumont Heights | - | - | - | - | - | - | - | 800 | - | 800 |
| Bickford Ranch | - | - | 48,000 | 35,500 | 15,000 | - | 43,636 | 8,800 | - | 150,936 |
| Del Rio | - | - | - | - | - | - | 80,000 | - | - | 80,000 |
| Emerald Meadows | - | 1,200 | - | 13,000 | - | - | 43,636 | 800 | - | 58,636 |
| Johansen Ranch | - | - | - | - | - | - | - | 2,000 | - | 2,000 |
| Joshua Ridge II | - | - | - | - | - | - | - | 800 | - | 800 |
| Ritter Ranch | - | 4,000 | 2,000 | 36,400 | - | - | 80,000 | 1,600 | - | 124,000 |
| Summit Valley | - | - | - | - | - | - | - | 2,400 | - | 2,400 |
| Tesoro Burnham | - | - | - | - | - | - | - | 800 | - | 800 |
| **TOTAL** | **$0** | **$5,200** | **$50,000** | **$86,900** | **$15,000** | **$0** | **$247,272** | **$18,800** | **$0** | **$423,172** |

**EXHIBIT B**

# EXHIBIT C

## Allocated Voluntary Debtor Liability Insurance Premium

| Voluntary Asset | Allocated Liability Insurance Premium |
|---|---|
| Acton | - |
| Beaumont Heights | - |
| Bickford Ranch | $5,481 |
| Emerald Meadows | $1,027 |
| Johansen Ranch | - |
| Summit Valley | - |
| Del Rio | - |
| Joshua Ridge | - |
| Tesoro Burnham | - |
| Ritter Ranch | $35,710 |
| **TOTAL** | **$42,218** |

EXHIBIT C

52063-001\DOCS_NY:20997.2

# EXHIBIT D

**SUNCAL PORTFOLIO**
**Lehman 30-Day April 2009 Approved Voluntary Budgets**

| | Lehman 30-Day April 2009 Approved Voluntary Budgets | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Asset Name** | **Life Safety** | **Security** | **Utilities** | **Erosion Control & Maint.** | **Insurance (1)** | **G&A (2)** | **Legal Fee** | **30-Day Totals** |
| Acton Ranch | - | - | 150 | 1,000 | 2,273 | 10,909 | 22,727 | 37,059 |
| Beaumont Heights | - | - | - | - | - | - | - | |
| Bickford Ranch | - | - | - | 47,545 | 2,273 | 10,909 | 22,727 | 83,454 |
| Del Rio | - | - | - | - | - | - | - | |
| Emerald Meadows | - | 1,200 | - | 33,150 | 2,273 | 10,909 | 22,727 | 70,259 |
| Johansen Ranch | - | - | - | - | - | - | - | |
| Joshua Ridge II | - | - | - | - | - | - | - | |
| Ritter Ranch | - | - | 7,550 | 36,500 | 2,273 | 10,909 | 22,727 | 79,959 |
| Summit Valley | - | - | - | - | - | - | - | |
| Tesoro Burnham | - | - | - | - | - | - | - | |
| **TOTAL** | **$0** | **$1,200** | **$7,700** | **$118,195** | **$9,091** | **$43,636** | **$90,909** | **$270,731** |

EXHIBIT D

# EXHIBIT "E"

FILED
JUN 09 2010
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

In re: PALMDALE HILLS PROPERTY, LLC,

Debtor,

PALMDALE HILLS PROPERTY, LLC; et al.,

Appellants,

v.

LEHMAN COMMERCIAL PAPER, INC.,

Appellee.

No. 10-60004

BAP No. 09-1101-HpaMk

ORDER

The appellants' opposed motion to expedite this case is denied.

This case shall be placed on calendar in due course.

For the Court:
MOLLY C. DWYER
Clerk of the Court:

Cathie A. Gottlieb
Deputy Clerk
Ninth Cir. R. 27-7/Advisory Note to Rule 27
and Ninth Circuit 27-10

6.7.10/cag/Pro Mo