**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
Sean A. O'Keefe – NY Bar No. 1980853, CA Bar No. 122417
Paul J. Couchot – CA Bar No. 131934
Counsel for the SunCal Voluntary Debtors

**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400
Louis R. Miller – CA Bar No. 54141
Martin H. Pritikin -- CA Bar No. 210845
Special Litigation Counsel for SunCal Debtors

Hearing Date: June 16, 2010 at 10:00 a.m. (EST)

## UNITED STATES BANKRUPTCY COURT

### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>**LEHMAN BROTHERS HOLDINGS INC, et al.,**<br><br>Debtors. | **Chapter 11**<br>**Case No. 08-13555 (JMP)**<br>**Jointly Administered** |

**DECLARATION OF ROBERT STARKMAN IN SUPPORT OF SUNCAL APPELLANTS'
REPLY RE MOTION FOR STAY PENDING APPEAL OF ORDER APPROVING
DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR AUTHORITY
TO COMPROMISE CONTROVERSY IN CONNECTION WITH A REPURCHASE
TRANSACTION WITH FENWAY CAPITAL, LLC AND A COMMERCIAL PAPER
PROGRAM WITH FENWAY FUNDING, LLC *AND* FOR STAY PENDING APPEAL OF
ORDER DENYING MOTION OF THE SUNCAL DEBTORS FOR AN ORDER
DETERMINING THAT THE AUTOMATIC STAY DOESNOT APPLY; OR, IN THE
ALTERNATIVE, GRANTING RELIEF FROM STAY AND NOTICE OF APPEAL**

I, Robert Starkman, hereby declare and state as follows:

1.      I am over the age of eighteen years.

2.    I am employed by Argent Management, LLC ("Management"), holding the position of Senior Vice President for Asset Management.

3.    Management operates and manages the day-to-day affairs of the SunCal Appellants, as that term is defined in the motion.

4.    Management prepares and retains the books and records and manages the business affairs and assets of the SunCal Appellants.

5.    The SunCal Appellants are part of integrated network of residential development entities that operate under the common dba "the SunCal Companies" or "SunCal." They (and seven other affiliated Chapter 11 debtors) (collectively the "SunCal Debtors") were formed as part of a joint venture with affiliates of Lehman Brothers Holdings, Inc. ("LBHI"), including, most importantly, Lehman Commercial Paper, Inc. ("LCPI") and non-debtor affiliate Lehman ALI, Inc. ("ALI") to develop a series of large residential real estate projects (the "Projects"). Between about 2005 and 2007, ALI and LCPI (together the "Lehman Entities") made loans and/or equity contributions to the SunCal Debtors totaling approximately $2 billion. LCPI made three of the fourteen loans at issue, totaling about $700 million of the $2 billion total.

6.    The SunCal Debtors filed Chapter 11 proceedings in the California Bankruptcy Court in November 2008, in order to stay the Lehman Entities' foreclosure proceedings and to obtain time to reorganize their affairs. The SunCal Voluntary Debtor cases are jointly administered under the lead case Palmdale Hills Property, LLC, Case No. 8:08-bk-17206-ES.

| Case Name | Case Number | Petition Date |
|---|---|---|
| Palmdale Hills Property, LLC | 8:08-17206 ES | November 6, 2008 |
| SunCal Beaumont Heights, LLC | 8:08-17209 ES | November 6, 2008 |
| SCC/Palmdale, LLC | 8:08-17224 ES | November 7, 2008 |
| SunCal Johannson Ranch LLC | 8:08-17225 ES | November 7, 2008 |
| SunCal Summit Valley LLC | 8:08-17227 ES | November 7, 2008 |
| SunCal Emerald Meadows LLC | 8:08-17230 ES | November 7, 2008 |
| SunCal Bickford Ranch LLC | 8:08-17231 ES | November 7, 2008 |
| Acton Estates, LLC | 8:08-17236 ES | November 7, 2008 |
| Seven Brothers LLC | 8:08-17240 ES | November 7, 2008 |
| SJD Partners, Ltd. | 8:08-17242 ES | November 7, 2008 |
| SJD Development Corp. | 8:08-17245 ES | November 7, 2008 |

| Case Name | Case Number | Petition Date |
|---|---|---|
| Kirby Estates, LLC | 8:08-17246 ES | November 7, 2008 |
| SunCal Communities I, LLC | 8:08-17248 ES | November 7, 2008 |
| SunCal Communities III, LLC | 8:08-17249 ES | November 7, 2008 |
| SCC Communities LLC | 8:08-17573 ES | November 19, 2008 |
| North Orange Del Rio Land, LLC | 8:08-17574 ES | November 19, 2008 |
| Tesoro SF, LLC | 8:08-17575 ES | November 19, 2008 |

7.    In my capacity as a Senior Vice President for Asset Management, I am part of the management team that maintains the properties owned by the SunCal Appellants and that prepares the ongoing budgets for these properties. The facts stated herein are within my personal knowledge and if called upon to testify to the same I could and would testify competently thereto.

8.    The following is a general description of the primary real estate projects owned by the SunCal Appellants (the "Properties):

| Appellant | Asset |
|---|---|
| Palmdale Hills Property, LLC | Palmdale Hills Property, LLC owns the Ritter Ranch Project. The Ritter Ranch Project consists of a 10,625 acre site situated in the City of Palmdale, in Los Angeles County, California. Grading of the first phase is complete with master infrastructure nearly 90% complete. The specific plan and the development agreement were approved in 1992 and allow for the development of up to 7,158 residential units. A vesting tentative parcel map consisting of 42 parcels has been processed and was recorded in 1995. Additionally, six vesting tentative tract maps totaling 553 lots were approved by the city in December 1995. All regulatory permits have been received. |
| SCC Palmdale, LLC | SCC Palmdale, LLC does not own any real property. SCC Palmdale is the Holder of the Allowed Interest in Palmdale Hills. |
| Acton Estates, LLC | Acton Estates, LLC owns the Acton Project consisting of a 175-acre site situated in Los Angeles County, California. The Acton Project is surrounded by mostly equestrian properties and light agricultural vacant land. The Acton Project is expected to consist of 136 units. |

| | |
|---|---|
| SunCal Beaumont Heights, LLC | SunCal Beaumont Heights, LLC owns the Beaumont Heights Project that originally consisted of a 1,191-acre site situated in the City of Beaumont, in Riverside County, California. The property is currently designated as low density residential use - rural residential use. The City of Beaumont is in the process of amending the general plan, preparing an environmental impact report and annexing the assemblage. The specific plan and tentative tract map are in the drafting stage. The Beaumont Heights Project was expected to consist of 1,203 units. A portion of the Beaumont Heights Project has been lost through foreclosure sales completed prior and following the Petition Date. |
| SunCal Bickford Ranch, LLC | SunCal Bickford Ranch, LLC owns the Bickford Ranch Project, consisting of a 1,940-acre site situated in the City of Penryn, in Placer County, California. The Bickford Ranch Project is fully entitled with an approved large lot tentative map, small lot tentative map, specific plan, design guidelines, development standards, and a development agreement. The offsite water and sewer improvements are mostly complete. Improvement plans for major roads and in-tract improvements were in process of being completed and a memorandum of understanding between the City and County for the regional sewer pipeline was in process. The Bickford Ranch Project is expected to consist of 2,105 units. |
| SunCal Emerald Meadows, LLC | SunCal Emerald Meadows, LLC owns the Emerald Meadows Project, consisting of a 178-acre site situated in the City of Rubidoux, in Riverside County, California. The specific plan, general plan and the environmental impact report were approved in October 2005 . The tentative tract map & final map were in process. The Emerald Meadows Project is expected to consist of 1,002 units. |
| SunCal Johannson Ranch, LLC | SunCal Johannson Ranch, LLC owns the Johannson Ranch Project, consisting of a 501-acre site in the City of Modesto, in Stanislaus County, California. Tentative maps were in the process of being prepared. Engineering plans and preparation of the draft specific plan were commenced. The SunCal Johansson Project is expected to consist of 921 units. |

| | |
|---|---|
| SJD Partners, Ltd. | SJD Partners, Ltd. currently owns no real property. SJD Partners formerly owned a project located in San Juan Capistrano known as the "Pacific Point Project". The Pacific Point Project was lost through a non-judicial foreclosure sale by Lehman ALI, which caused a Lehman Affiliate, LV Pacific Point LLC ("LV PacPoint"), a Delaware Limited Liability Company, to purchase the Pacific Point Project at a foreclosure sale conducted on August 28, 2008. SJD Partners has a potential preference claim and other causes of action against the Lehman Entity Affiliate. |
| SJD Development, Corp. | SJD Development Corp. does not own any real property. SJD Development is the Holder of the Allowed Interest in SJD Partners. |
| SunCal Summit Valley, LLC | SunCal Summit Valley, LLC owns the Summit Valley Project that originally consisted of a 2,500-acre site situated in the City of Hesperia, in San Bernardino County, California. The City of Hesperia's general plan allows for low density residential development. SunCal Summit Valley anticipated approximately 2.5 lots per acre over the entire assemblage. Most of the technical studies for the environmental impact report were completed. The Summit Valley Project was previously expected to consist of 6,023 units. A part of the Summit Valley Project has been lost through foreclosure proceedings completed prior to and following the Petition Date. |
| Seven Brothers, LLC | Seven Brothers, LLC owned 900 acres of the Summit Valley Project, a portion of which has been lost through foreclosure proceedings completed prior to and following the Petition Date. |
| Kirby Estates, LLC<br>SCC Communities, LLC | Kirby Estates, LLC owns 27 acres of the Summit Valley Project. SCC Communities, LLC owns the Joshua Ridge Project, consisting of an 80-acre site situated in the City of Victorville in San Bernardino County, California. The Joshua Ridge Project was slated to be sold to the city and the city was scheduled to use the land to build a park or a school. |
| Tesoro SF, LLC | Tesoro SF, LLC owns the Tesoro Project consisting of a 185-acre site situated in the City of Santa Clarita in Los Angeles County, California. The existing entitlements include a tentative tract map approved by the planning commission, which allows for 37 lots. |

| | |
|---|---|
| North Orange Del Rio Land, LLC | North Orange Del Rio Land, LLC does not own any real property. Del Rio owns the Del Rio CFD Bond Proceeds after use and application as provided in an Acquisition Agreement to be entered into between Del Rio and the City of Orange. The Acquisition Agreement will set forth certain terms for the acquisition of various facilities by the City of Orange from Del Rio, the issuance of the Del Rio CFD Bonds and the use and application of a portion of the proceeds of the Del Rio Bonds for the construction of certain improvements and other applications, and with the remaining proceeds to go to Del Rio. It is anticipated that the Acquisition Agreement will provide for a maximum bond authorization in the amount of up to $21.67 million. The Acquisition Agreement has not been finally negotiated and the maximum authorization amount may change. |
| SunCal Communities I, LLC | SunCal I Communities, LLC does not own any real property. SunCal I is the Holder of Allowed Interests in Acton Estates, SunCal Bickford, SunCal Beaumont, SunCal Summit Valley, SunCal Johannson and SunCal Emerald. |
| SunCal Communities III, LLC | SunCal III Communities, LLC, owns no real or personal property. |

9.     Substantially all of the Properties are in-process residential developments. To preserve the value of these assets, the SunCal Appellants must provide security and manage dust control, and address the fire, flood and erosion risks inherent in the maintenance of partially completed residential development projects. These services impose substantial carrying costs on the SunCal Appellants. These costs cannot be offset through parcel, lot or homes sales until the disputes relating to the Lehman Entities alleged secured claims are resolved.

10.     In addition to the substantial maintenance and preservation costs associated with the Properties, the SunCal Appellants, as major landowners within existing municipalities, must address the concerns and problems that their development cause the surrounding communities.

11.     The SunCal Appellants are parties to development agreements with the various local governments (cities, counties, etc.) who have jurisdiction over the Properties. Pursuant to these agreements the SunCal Appellants are obligated to complete various infrastructure projects (streets, storm drains, etc.). The development and sale of the Properties is being delayed by the Lehman Entities' interference, and the existing appellate litigation, this work cannot proceed.

12.     The local regulatory compliance includes maintenance of "erosion and dust control" measures is necessary to ensure (1) adequate functioning of control facilities, and (2) compliance with the stringent requirements of the California Regional Water Quality Control Board which aims to prevent sediment discharge, water pollution and erosion damage to the Development and to adjacent properties. The implementation and maintenance of a Storm Water Pollution Prevention Plan (SWPPP) is imperative in conforming to the Board's requirements whose violations have resulting fines that may cost hundreds of thousands of dollars.

13.     For adequate functioning of control facilities, sand bags, silt fences, polymer application on slopes and lots, hydroseeding and sediment basins must be in place and routinely maintained in accordance with the State's BMPs (best management practices). In addition, compliance with the State Water Quality Control Board (Clean Water Act) requires that several of the projects which are surrounded by large storm drains/rivers need to be protected such that silts and unwanted sediment does not enter the tributaries during a rainfall event. Noncompliance could be subject to significant fines issued by the Board in excess of $200,000 based upon past experiences with fines issued on similar projects in the area. The Water Quality Control Board utilizes a standard procedure to determine the amount of fines imposed on projects that are not in compliance with the Storm Water Discharge permit. This procedure includes the extent of the violation, the immediate response to properly correct the violation, and the projects past history of similar violations.

14.     Due to the SunCal Appellants' present inability to comply with their obligations under the development agreements, a number of the local governments are seeking recourse against the bonds securing this work. These demands will increase the claims against the SunCal Appellants' estates and dilute the rights of other creditors. Once the litigation with the Lehman Entities is resolved, the SunCal Appellants will be able to mitigate this problem through completion of development followed by property sales.

15.     The SunCal Appellants have engaged a team of legal and accounting professionals to guide them through the Chapter 11 reorganization process. The Lehman Entities interference

-7-

and stay of the SunCal Appellants' cases places the work of these professionals on "hold." This is both expensive and wasteful.

16.    The SunCal Appellants have limited funds. Unless they are allowed the opportunity to proceed with their Chapter 11 reorganization efforts in the near future, the SunCal Appellants reorganization options will become more limited and the rights of the hundreds of creditors seeking the payment over $200 million in claims will be materially and possibly irreparably prejudiced through the reduction and possible elimination of a dividend.

17.    The cost of the delay in this case exceeds a hundred thousand dollars each month. It is unlikely that these costs will ever be recovered.

18.    On or about June 4, 2010, the SunCal Appellants and the Lehman Entities entered into a Stipulation Pursuant to 11 U.S.C. §§ 362, 363, 364 and 507: (1) Authorizing the Use of Alleged Unencumbered Cash; (2) Granted Administrative Expense Claims; and (3) Modifying Automatic Stay to the Extend Necessary ("Stipulation") which authorizes the SunCal Appellants use of certain Alleged Unencumbered Cash in the amount of $423,172.00 to pay the necessary health and safety costs to preserve projects owned by the SunCal Appellants for a period of 120 days. A true and correct copy of the Stipulation is attached hereto as Exhibit A. Accordingly, the SunCal Appellants' burn rate of funds for property maintenance is approximately $105,793 per month.

I declare that the foregoing is true and correct under the penalty of perjury,

Executed this 10th day of June 2010, in Irvine, California.

Robert Starkman

8

# EXHIBIT "A"

1  Richard M. Pachulski (CA Bar No. 90073)
   Dean A. Ziehl (CA Bar No. 84529)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Boulevard, Suite 1100
3  Los Angeles, California 90067
   Telephone: (310) 277-6910
4  Facsimile: (310) 201-0760

5  Edward Soto (admitted *pro hac vice*)
   Shai Waisman (admitted *pro hac vice*)
6  WEIL, GOTSHAL & MANGES LLP
   767 Fifth Avenue
7  New York, NY 10153-0119
   Telephone: (212) 310-8000
8  Facsimile: (212) 310-8007

9  Counsel for Lehman Commercial Paper Inc., Lehman ALI, Inc.,
   Northlake Holdings LLC and OVC Holdings LLC

10 Paul J. Couchot
   Peter W. Lianides
11 WINTHROP COUCHOT
   PROFESSIONAL CORPORATION
12 660 Newport Center Drive, Suite 400
   Newport Beach, CA 92660
13 Telephone: (949) 720-4100
   Facsimile: (949) 720-41111

14
15 General Insolvency Counsel for Voluntary Debtors and Debtors
   in Possession

16          UNITED STATES BANKRUPTCY COURT
            CENTRAL DISTRICT OF CALIFORNIA
17               SANTA ANA DIVISION

18 In re:                                    Case No.: 8:08-bk-17206-ES
   Palmdale Hills Property, LLC, and Its Related Debtors,
19      Jointly Administered Debtors and    Jointly Administered With Case Nos.
        Debtors-In-Possession.               8:08-bk-17209-ES; 8:08-bk-17240-ES;
20                                           8:08-bk-17224-ES; 8:08-bk-17242-ES;
   Affects:                                  8:08-bk-17225-ES; 8:08-bk-17245-ES;
21 ☐ All Debtors                            8:08-bk-17227-ES; 8:08-bk-17246-ES;
   ☒ Palmdale Hills Property, LLC           8:08-bk-17230-ES; 8:08-bk-17231-ES;
22 ☒ SunCal Beaumont Heights, LLC           8:08-bk-17236-ES; 8:08-bk-17248-ES;
   ☐ SCC/Palmdale, LLC                      8:08-bk-17249-ES; 8:08-bk-17573-ES;
23 ☒ SunCal Johannson Ranch, LLC            8:08-bk-17574-ES; 8:08-bk-17575-ES;
   ☒ SunCal Summit Valley, LLC              8:08-bk-17404-ES; 8:08-bk-17407-ES;
24 ☒ SunCal Emerald Meadows, LLC            8:08-bk-17408-ES; 8:08-bk-17409-ES;
   ☒ SunCal Bickford Ranch, LLC             8:08-bk-17458-ES; 8:08-bk-17465-ES;
25 ☒ Acton Estates, LLC                     8:08-bk-17470-ES; 8:08-bk-17472-ES;
   ☐ Seven Brothers, LLC                    and 8:08-bk-17588-ES
26 ☐ SJD Partners, Ltd.
   ☐ SJD Development Corp.                  Chapter 11
27 ☐ Kirby Estates, LLC
   ☐ SunCal Communities I, LLC              **STIPULATION PURSUANT TO**
28 ☐ SunCal Communities III, LLC           **11 U.S.C. §§ 362, 363, 364, AND 507:**
                                            **(1) AUTHORIZING THE USE OF**
                                            **ALLEGED UNENCUMBERED CASH;**

52063-001\DOCS_NY:20664.7

Exhibit A, Page 9

| | |
|---|---|
| ☒ SCC Communities, LLC<br>☒ North Orange Del Rio Land, LLC<br>☒ Tesoro SF, LLC<br>☐ LB-L-SunCal Oak Valley, LLC<br>☐ SunCal Heartland, LLC<br>☐ LB-L-SunCal Northlake, LLC<br>☐ SunCal Marblehead, LLC<br>☐ SunCal Century City, LLC<br>☐ SunCal PSV, LLC<br>☐ Delta Coves Venture, LLC<br>☐ SunCal Torrance, LLC<br>☐ SunCal Oak Knoll, LLC | **(2) GRANTING ADMINISTRATIVE EXPENSE CLAIMS; AND (3) MODIFYING AUTOMATIC STAY TO THE EXTENT NECESSARY**<br><br>**Hearing Date Requested Pursuant to Ex Parte Application to Shorten Time Filed Herewith:**<br><br>Date:  June 22, 2010<br>Time:  10:30 AM<br>Place:  Courtroom 5A |

This stipulation (the "Stipulation") is made by and between Lehman ALI, Inc. ("Lehman ALI"), Lehman Commercial Paper Inc. ("LCPI"), Northlake Holdings LLC ("Northlake Holdings"), OVC Holdings LLC ("OVC Holdings" and, collectively with Lehman ALI, LCPI and Northlake Holdings, the "Lehman Entities,")[1] on the one hand, and certain of the above-captioned debtors and debtors in possession affected by this Stipulation (the "Subject Voluntary Debtors")[2], on the other hand.  The Lehman Entities and the Subject Voluntary Debtors (together, the "Parties") hereby enter into this Stipulation and agree as follows:

## RECITALS

WHEREAS, on November 6, 7, and 19, 2008, the Voluntary Debtors[3] filed their respective voluntary petitions under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Court").  The Voluntary Debtors

---

[1] The Lehman Entities shall refer to the Lehman Entities on behalf of themselves, both individually and collectively, as purported lenders, and as purported agents for all lenders under the applicable loan documents, including, without limitation, as purported agents for Fenway Capital, LLC.  Notwithstanding anything to the contrary contained herein, the Lehman Entities do not concede that they are "purported" lenders or agents as to the loan(s) or any particular loan, and reserve all of their rights in connection therewith.

[2] The Subject Voluntary Debtors are: Palmdale Hills Property, LLC; Acton Estates, LLC; SunCal Beaumont Heights, LLC; SunCal Bickford Ranch LLC; North Orange Del Rio Land, LLC; SunCal Emerald Meadows, LLC; SunCal Johannson Ranch, LLC; SunCal Summit Valley, LLC; Tesoro SF, LLC; and SCC Communities, LLC.

[3] The Voluntary Debtors in these cases consist of: Palmdale Hills Property, LLC (Main Case) (Case No. 8:08-17206-ES); Acton Estates, LLC (Case No. 8:08-17236-ES); Kirby Estates, LLC (Case No. 8:08-17246-ES); North Orange Del Rio Land, LLC (Case No. 8:08-17574-ES); SCC Communities, LLC (Case No. 8:08-17573-ES); SCC/Palmdale, LLC (Case No. 8:08-17224-ES); Seven Brothers, LLC (Case No. 8:08-17240-ES); SJD Development Corp. (Case No. 8:08-17245-ES); SJD Partners, Ltd. (Case No. 8:08-17242-ES); SunCal Beaumont Heights, LLC (Case No. 8:08-17209-ES); SunCal Bickford Ranch, LLC (Case No. 8:08-17231-ES); SunCal Communities I, LLC (Case No. 8:08-17248-ES); SunCal Communities III, LLC (Case No. 8:08-17249-ES); SunCal Emerald Meadows, LLC (Case No. 8:08-17230-ES); SunCal Johannson Ranch, LLC (Case No. 8:08-17225-ES); SunCal Summit Valley, LLC (Case No. 8:08-17227-ES); and Tesoro SF, LLC (Case No. 8:08-17575-ES).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    continue to manage their affairs and property as debtors in possession pursuant to sections 1107 and

2    1008 of the Bankruptcy Code.

3        WHEREAS, on November 12, 14 and 19, 2008, involuntary petitions were filed against the

4    Trustee Debtors.[4]

5        WHEREAS, on or about January 8, 2009, the Court entered orders for relief in the Trustee

6    Debtors' cases.

7        WHEREAS, on or about January 15, 2009, the Court entered orders granting the appointment

8    of a chapter 11 trustee in each of the Trustee Debtors' cases. Thereafter, the Office of the United

9    States Trustee appointed Steven M. Speier as the Chapter 11 Trustee (the "Trustee") for the Trustee

10   Debtors.

11       WHEREAS, the Lehman Entities are authorized to enter into this Stipulation on behalf of

12   themselves, as lenders, and as agents for all lenders under the applicable loan documents.

13       WHEREAS, LCPI is a debtor and debtor in possession in the jointly administered cases

14   captioned In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP), pending in the United

15   States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy

16   Court").

17       WHEREAS, the Lehman Entities assert secured claims against the Debtors that approximate

18   $2.3 billion, and include within the scope of the pledged collateral certain real and personal property

19   owned by the Subject Voluntary Debtors.

20       WHEREAS, certain of the Voluntary Debtors maintain bank accounts containing cash or

21   cash equivalents, which the Lehman Entities assert are subject to perfected liens and therefore

22   constitute the Lehman Entities' "cash collateral" under section 363 of the Bankruptcy Code. The

23   Subject Voluntary Debtors dispute such contention, and assert that such cash and cash equivalents

24   are not subject to perfected liens of the Lehman Entities and therefore do not constitute "cash

25

26   ---

[4] The Trustee Debtors in these cases consist of: SunCal Heartland, LLC (Case No. 8:08-17407-ES); LB-L-SunCal
27   Northlake, LLC (Case No. 8:08-17408-ES); SunCal Marblehead, LLC (Case No. 8:08-17409-ES); SunCal Century
     City, LLC (Case No. 8:08-17458-ES); SunCal PSV, LLC (Case No. 8:08-17465-ES); Delta Coves Venture, LLC (Case
     No. 8:08-17470-ES); SunCal Torrance, LLC (Case No. 8:08-17472-ES); LB-L SunCal Oak Valley, LLC (Case No.
28   8:08-17404-ES); and SunCal Oak Knoll, LLC (Case No. 8:08-17588-ES). The Voluntary Debtors and the Trustee
     Debtors shall be referred to herein as the "Debtors."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Exhibit A, Page 11

1   collateral" under section 363 of the Bankruptcy Code. The cash and cash equivalents held by the

2   Subject Voluntary Debtors shall be referred to herein as the "Alleged Unencumbered Cash" and

3   shall include, but are not limited to, the cash and cash equivalents held in the accounts maintained by

4   the Subject Voluntary Debtors set forth in **Exhibit A** attached hereto.

5         WHEREAS, on April 2, 2009, Lehman ALI, certain of the Voluntary Debtors, and the

6   Trustee for the Trustee Debtors, by and through their counsel, entered into that certain *Stipulation*

7   *with Lehman ALI, Inc. Pursuant to 11 U.S.C. §§ 362, 363, 364, and 507: (1) Approving Senior*

8   *Secured Superpriority Postpetition Financing; (2) Granting Liens and Providing Superpriority*

9   *Administrative Expense Status; and (3) Modifying Automatic Stay to the Extent Necessary* (the

10   "April 2009 DIP Stipulation") affecting certain of the Voluntary Debtors and certain of the Trustee

11   Debtors as set forth specifically therein (the "April 2009 Borrowers"). The April 2009 DIP

12   Stipulation was approved by the Court by the entry of an order on April 17, 2009 (the "April 2009

13   DIP Order").

14         WHEREAS, pursuant to the April 2009 DIP Stipulation, among other things, the April 2009

15   Borrowers were authorized to borrow from Lehman ALI, and Lehman ALI was authorized to make

16   available to each April 2009 Borrower, individual loans (collectively, the "April 2009 DIP Loans")

17   in an aggregate amount equal to $1,790,572.00.

18         NOW THEREFORE, in consideration of the mutual covenants contained herein, and other

19   good and valuable consideration (the receipt and sufficiency of which are acknowledged), it is

20   hereby stipulated and agreed by and among the Parties as follows:

21                    **AGREEMENT**

22        1.    Court Approval. The Stipulation is subject to approval of the Court, and LCPI's entry

23   into the Stipulation is subject to approval by the New York Bankruptcy Court, and the Stipulation

24   shall have no force and effect until the date that both such approvals have been obtained (the

25   "Approval Date"). Immediately upon the Approval Date (notwithstanding any applicable law or rule

26   to the contrary), the terms and provisions of this Stipulation shall become valid and binding upon

27   and inure to the benefit of the Lehman Entities, the Subject Voluntary Debtors, all other creditors of

28   the Subject Voluntary Debtors, any committees appointed in these cases, and all other parties in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    interest and their respective successors and assigns, including any trustee or other fiduciary hereafter

2    appointed in any of the cases or upon dismissal of any of the above-captioned cases (the "Cases").

3        2.    The Subject Voluntary Debtors' Use of the Alleged Unencumbered Cash.  The

4    Lehman Entities consent to the use by each Subject Voluntary Debtor of the Alleged Unencumbered

5    Cash held by each such Subject Voluntary Debtor solely for the purpose of paying:  (a) the costs and

6    expenses attributable to each such Subject Voluntary Debtor in the total aggregate amount not to

7    exceed $423,172.00 as set forth in the budgets attached hereto as **Exhibit B** (the "Budgets," as such

8    Budgets may be revised or amended with the written consent of the Lehman Entities, which consent

9    may be granted or withheld in the Lehman Entities' sole and absolute discretion) in an aggregate

10    amount not to exceed the total amount of the Budgets as set forth in **Exhibit B**, except that each

11    Subject Voluntary Debtor may expend funds for any particular line items allocable to such Subject

12    Voluntary Debtor as set forth in the Budgets (the "Budget Items") in excess of the respective

13    amounts provided for such Budget Items for a particular Subject Voluntary Debtor, so long as such

14    excess amount is equal to or less than 5% of the amount allocated to that particular Subject

15    Voluntary Debtor for a particular Budget Item and provided that the aggregate amount for all such

16    Budget Items for a particular Subject Voluntary Debtor is not increased; and (b) the reasonable fees

17    and expenses incurred by professionals retained in the Voluntary Debtors' cases, including the law

18    firm of Miller Barondess, LLP (the "Miller Firm").  In addition, LCPI consents to and Palmdale

19    Hills Property, LLC ("Palmdale Hills") is authorized to make, from Alleged Unencumbered Cash

20    held by Palmdale Hills, individual loans: (a) to each of the other Subject Voluntary Debtors solely

21    for the purpose of paying (i) the costs and expenses attributable to each such Subject Voluntary

22    Debtor as set forth in the Budgets attached hereto as **Exhibit B** and (ii) the reasonable fees and

23    expenses incurred by professionals retained in the Voluntary Debtors' cases, including the Miller

24    Firm; and (b) by separate Court approval, to the Trustee Debtors for the purpose of paying the

25    reasonable fees and expenses incurred by professionals retained in the Trustee Debtors' cases,

26    including the Miller Firm; provided, however, that: (a) Palmdale Hills is permitted to make

27    individual loans from Alleged Unencumbered Cash held by Palmdale Hills only to Subject

28    Voluntary Debtors or Trustee Debtors that have used, and accordingly no longer hold, any Alleged

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Exhibit A, Page 13

1   Unencumbered Cash; and (b) the use of any Alleged Unencumbered Cash for payments to the Miller

2   Firm shall be subject to the terms and conditions set forth in the *Order Granting Amended Joint*

3   *Application for Authority to Employ Miller Barondess, LLP as Special Litigation Counsel* [D.E.

4   1061]. The aggregate amount of any Alleged Unencumbered Cash used in accordance with this

5   paragraph 2 shall be referred to herein as the "Alleged Unencumbered Cash Funding Amount." The

6   Subject Voluntary Debtors shall maintain appropriate documentation related to the expenditure of

7   any and all of the Alleged Unencumbered Cash Funding Amount. The Subject Voluntary Debtors

8   shall provide to the Lehman Entities, upon their reasonable request, a breakdown of the Alleged

9   Unencumbered Cash Funding Amount spent as of the date of the request and provide all

10   documentation relating to such actual amounts spent. For the avoidance of doubt, the Budget Items

11   for each Subject Voluntary Debtor shall not be modified, the Subject Voluntary Debtors shall not

12   expend any of the Alleged Unencumbered Cash Funding Amount for any particular Budget Items in

13   excess of the respective amounts provided for such Budget Items in the Budgets (plus 5%), and the

14   Alleged Unencumbered Cash held by each such Subject Voluntary Debtor shall not be used for any

15   other purpose, or by any other Subject Voluntary Debtor for costs and expenses allocable to any

16   such other Subject Voluntary Debtor, without (i) the prior written consent of the Lehman Entities,

17   which consent may be granted or withheld in the Lehman Entities' sole and absolute discretion, or

18   (ii) further order of the Court.

19        3.    Termination Date. The authority provided hereunder to use the Alleged

20   Unencumbered Cash Funding Amount shall terminate on the one hundred and twentieth day (120th)

21   day after the Approval Date (the "Termination Date"), and no further use of the Alleged

22   Unencumbered Cash Funding Amount shall be made after thirty (30) days following the

23   Termination Date without either the prior written consent of the Lehman Entities, which consent

24   may be granted or withheld in the Lehman Entities' sole and absolute discretion, or further order of

25   the Court, provided however, that the Termination Date shall apply only with respect to the Budgets

26   and not with respect to the payment of professional fees.

27        4.    Repayment of the Alleged Unencumbered Cash Funding Amount as Administrative

28   Expense Claims Under Certain Circumstances. In the event the Parties agree or the Court finds that

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    all or portion(s) of the Alleged Unencumbered Cash are subject to perfected liens of the Lehman

2    Entities, then such portions of the Alleged Unencumbered Cash Funding Amount subject to the

3    perfected liens shall constitute an allowed administrative expense claim under the Bankruptcy Code

4    that shall be due and payable to the applicable Lehman Entities by a plan proponent in full, in cash,

5    without notice or demand, upon the effective date of any confirmed plan of reorganization or

6    liquidation in the Cases.  In the event the Parties agree or the Court finds that all or portion(s) of the

7    Alleged Unencumbered Cash are not subject to perfected liens held by any of the Lehman Entities,

8    then such portions of the Alleged Unencumbered Cash Funding Amount not subject to any perfected

9    lien shall not be repayable in such circumstances wherein a Subject Voluntary Debtor used its own

10   Alleged Unencumbered Cash to pay the expenses of its own estate, or that such payments were

11   authorized to be made pursuant to the entered orders of the Court authorizing joint administration of

12   the Debtors (the "Joint Administration Orders").  Notwithstanding anything to the contrary

13   contained herein, the Lehman Entities reserve their rights to assert that the Joint Administration

14   Orders did not excuse the Subject Voluntary Debtors from repaying the amounts of professional fees

15   paid by other Subject Voluntary Debtors.  In the event that the Parties agree or the Court finds that

16   all or portion(s) of the Alleged Unencumbered Cash are not encumbered by a perfected lien of the

17   Lehman Entities but such portions were used for the benefit of another Subject Voluntary Debtor,

18   then such portion(s) shall constitute an administrative expense obligation of the Subject Voluntary

19   Debtor for whose benefit such portion of the Alleged Unencumbered Cash was used, and shall be

20   repaid in accordance with section 1129(a)(9) of the Bankruptcy Code to the Subject Voluntary

21   Debtor that owned such portion of the Alleged Unencumbered Cash.  The Parties reserve all rights in

22   connection with the Alleged Unencumbered Cash, including, without limitation, their rights with

23   respect to whether such cash is encumbered or unencumbered by perfected liens held by any of the

24   Lehman Entities.  The administrative expense claims provided for in this paragraph 3 shall be

25   referred to herein as the "Alleged Unencumbered Cash Administrative Expense Claims."

26           5.      Payment by Lehman ALI of Insurance Amounts.  Lehman ALI agrees to pay directly

27   to insurers the insurance premiums associated with the provision of insurance coverage for the

28   properties owned by the Subject Voluntary Debtors up to the amounts listed for such properties as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    set forth in **Exhibit C** attached hereto (the "Insurance Amounts").

2        6.        Maturity Date/Plan Treatment of Insurance Amounts. The Subject Voluntary Debtors

3    expressly stipulate and acknowledge that the Insurance Amounts shall be treated as administrative

4    expense claims under the Bankruptcy Code (the "Insurance Administrative Expense Claims") and,

5    as such, must be paid to Lehman ALI in full, in cash. on the effective date of any confirmed plan of

6    reorganization or liquidation, or, in the event no plan is confirmed in the Voluntary Debtors' cases,

7    the earlier of dismissal of such cases or conversion of such cases to chapter 7 (the "Insurance

8    Amount Maturity Date").

9        7.        Repayment Of April DIP Loan Amounts. Upon the occurrence of the Approval Date,

10    each applicable Subject Voluntary Debtor shall repay to Lehman ALI, from the Alleged

11    Unencumbered Cash held by each such Subject Voluntary Debtor, only to the extent of the lesser of

12    the amount that such Subject Voluntary Debtor borrowed under the April 2009 DIP Order and the

13    amount of such Voluntary Debtor's Alleged Unencumbered Cash, the full amount of the April 2009

14    DIP Loans (including all outstanding principal and accrued and unpaid interest) made to each such

15    Voluntary Debtor as set forth in **Exhibit D** attached hereto, plus all outstanding accrued and unpaid

16    interest on such loans as provided for in paragraph 5 of the April 2009 DIP Stipulation. To the

17    extent an April DIP Loan made to a particular Subject Voluntary Debtor exceeds the amount of

18    Alleged Unencumbered Cash held by such Subject Voluntary Debtor, Palmdale Hills shall make an

19    individual loan to such Subject Voluntary Debtor from Alleged Unencumbered Cash held by

20    Palmdale Hills for the purpose of permitting the repayment of such Subject Voluntary Debtor's April

21    DIP Loan by such Subject Voluntary Debtor to Lehman ALI. All funds lent by Palmdale Hills from

22    its Alleged Unencumbered Cash to any Voluntary Debtor(s) for the purpose set forth in this

23    paragraph shall constitute Alleged Unencumbered Cash Administrative Expense Claims and shall be

24    repaid in accordance with paragraph 3 herein. Any lien or encumbrance arising by reason of the

25    April 2009 DIP Loans shall be deemed released and of no further force or effect as to each Subject

26    Voluntary Debtor that has fully repaid such amount.

27        8.        Modification of Automatic Stay. The automatic stay imposed under section 362(a) of

28    the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of this

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

52063-001\DOCS_NY:20664 7                                8

Stipulation, including, without limitation: (a) to permit the Subject Voluntary Debtors to incur all liabilities and obligations in connection with their use of the Alleged Unencumbered Cash Funding Amount; (b) authorize the repayment of the Alleged Unencumbered Cash Administrative Expense Claims and Insurance Administrative Expense Claims; and (c) enable the enforcement, protection and preservation of all of the Lehman Entities' rights and remedies with respect thereto or otherwise under this Stipulation.

9.    Events of Default.  The following occurrences shall constitute an "Event of Default" under this Stipulation as to the particular defaulting Subject Voluntary Debtor:  (a) failure of the Subject Voluntary Debtor to comply with any term of this Stipulation; or (b) the use of Alleged Unencumbered Cash other than in strict compliance with the terms of this Stipulation; or (c) the failure to repay the Alleged Unencumbered Cash Administrative Expense Claims or Insurance Amounts pursuant to and in accordance with the terms of this Stipulation.

10.    Remedies.  Immediately upon the occurrence and during the continuation of an Event of Default set forth in paragraph 9 by a particular Subject Voluntary Debtor, and without further order of the Court, the applicable defaulting Subject Voluntary Debtor shall, at the direction of the Lehman Entities, cease using the Alleged Unencumbered Cash.

11.    Reservation of Rights.  Notwithstanding anything to the contrary herein, this Stipulation is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any rights, claims or privileges (whether legal, equitable or otherwise) of the Parties with respect to any issues that are not expressly addressed herein.  Specifically, and without limitation, (a) the Parties reserve all rights in connection with the Alleged Unencumbered Cash, including without limitation whether such cash is encumbered by perfected liens held by the Lehman Entities, and all aspects of pending litigation among the Parties, including, without limitation, any matters involving equitable subordination or substantive consolidation, (b) the Parties further agree that entry into this Stipulation, and the use of Alleged Unencumbered Cash or the consent to the Alleged Unencumbered Cash Administrative Expense Claims contemplated hereunder, shall not be used in any manner in litigation amongst the Parties, whether as, for instance, a basis for or against substantive consolidation or otherwise, and in no way shall have any effect on the adversary

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Exhibit A, Page 17

1    proceeding captioned *Palmdale Hills Property, LLC, et al., v. Lehman ALI, Inc., et al.*, Adv. Pro.

2    No. 09-1005-ES, pending in the Court, or otherwise, and (c) the rights, obligations, waivers,

3    stipulations, agreements or defenses of the Parties among or between or to each other or any of them

4    shall not be affected hereby except to the extent provided herein.

5          12.    No Modification. Absent the written consent of the Lehman Entities and the Subject

6    Voluntary Debtors or further order of the Court, the Lehman Entities and the Subject Voluntary

7    Debtors agree that this Stipulation shall not be modified.

8          13.    Jurisdiction. The Court shall retain jurisdiction to resolve any disputes or

9    controversies arising from or related to this Stipulation.

10         14.    Further Cooperation. The Parties agree to and will cooperate fully with each other in

11    the performance of this Stipulation, and will execute such additional agreements, documents or other

12    instruments as may reasonably be required to carry out the intent of this Stipulation.

13         15.    Signatures. This Stipulation may be signed in any number of counterparts (and by

14    each Party hereto on different counterparts), each of which constitutes an original, but all such

15    counterparts when taken together shall constitute one and the same agreement. This Stipulation may

16    be executed by facsimile signature and delivered by facsimile transmission with the same effect as

17    delivery of a manually executed counterpart of this Stipulation.

18         16.    No admission; No Evidence. Neither this Stipulation nor anything contained in this

19    Stipulation shall be construed as, treated as or characterized as an admission by any Party of any fact

20    or liability or as evidence of any allegation of any Party. Neither this Stipulation nor anything in this

21    Stipulation shall be admissible in any proceeding as evidence of liability or wrongdoing by any of

22    the Parties. This Stipulation may be introduced, however, in any proceeding to enforce the terms of

23    this Stipulation.

24         17.    Authority. Each person who signs this Stipulation represents and warrants that he or

25    she has the authority and capacity to act on behalf of the Party for whom he or she is signing and to

26    bind that Party to the terms of this Stipulation.

27         18.    Entire Agreement. This Stipulation contains the entire agreement between the Parties

28    and may not be amended or modified except by a writing executed by the Parties or further order of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   the Court. All prior oral and written agreements, if any, are expressly superseded hereby and are of

2   no further force and effect.

3                                              WEIL, GOTSHAL & MANGES LLP

4

5                                              - and -
    Dated:    June 4, 2010                     PACHULSKI STANG ZIEHL & JONES LLP
6

7                                              By    /s/ Dean A. Ziehl
                                                     Richard M. Pachulski
8                                                    Dean A. Ziehl
                                                     Attorneys for Lehman ALI, Inc., Lehman
9                                                    Commercial Paper Inc., Northlake
                                                     Holdings LLC and OVC Holdings LLC.
10

11  Dated:    June 4, 2010                     WINTHROP COUCHOT
                                               PROFESSIONAL CORPORATION
12

13                                             By    /s/ Paul J. Couchot
                                                     Paul J. Couchot
14                                                   Peter W. Lianides
                                                     General Insolvency Counsel for Debtors
15                                                   and Debtors-in Possession

16

17  APPROVED AS TO FORM AND SUBSTANCE:

18  Dated:    June 4, 2010                     IRELL & MANELLA LLP

19

20                                             By    /s/ Alan Friedman
                                                     Alan Friedman
21                                                   Kerri A. Lyman
                                                     Attorneys for Official Unsecured
22                                                   Creditors' Committee of Voluntary
                                                     Debtors

23

24

25

26

27

28

52063-001\DOCS_NY:20664.7                      11

## EXHIBIT "A"

| Account Holder | Approx. Balance | Account No. | Depository Bank |
|---|---|---|---|
| Acton Estates, LLC | $0.00 | 3090345971 | California Bank & Trust |
| North Orange Del Rio LLC | $10.79 | 3090343681 | California Bank & Trust |
| Palmdale Hills Property LLC (Anaverde Account) | $2,715,279.41 | 1000914414 | Central Pacific Bank |
| Palmdale Hills Property LLC - (Bond Interest) | $2,685,118.80 | 3090346941 | California Bank & Trust |
| Palmdale Hills Property LLC (CD) | $343,000.00 | 3090003143 | California Bank & Trust |
| SCC Communities LLC | $4,534.42 | 3090343411 | California Bank & Trust |
| SunCal Beaumont Heights, LLC | $11.11 | 3090340821 | California Bank & Trust |
| SunCal Bickford Ranch LLC | $1,935,800.49 | 3090345891 | California Bank & Trust |
| SunCal Emerald Meadows LLC | $2,769.95 | 3090345701 | California Bank & Trust |
| SunCal Johannson Ranch LLC | $83,292.29 | 3090341041 | California Bank & Trust |
| SunCal Summit Valley, LLC | $37,434.14 | 3090341121 | California Bank & Trust |
| Tesoro SF, LLC | $71.07 | 3090343761 | California Bank & Trust |

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California



52063-001\DOCS_NY:20664.7

**120-Day DIP Budget**
**Approved Voluntary Budget**

**EXHIBIT B**

**Approval 120-Day Voluntary Budget**

| Asset Name | Life Safety | Security | Utilities | Erosion Control & Maint. | Entitlement Preservation | Insurance | G&A | Title Report | Taxes | 4-Month TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Acton | - | - | - | 2,000 | - | - | - | 800 | - | 2,800 |
| Beaumont Heights | - | - | - | - | - | - | - | 800 | - | 800 |
| Buckford Ranch | - | - | 48,000 | 35,500 | 15,000 | - | 43,636 | 8,800 | - | 150,936 |
| Del Rio | - | - | - | - | - | - | 80,000 | - | - | 80,000 |
| Emerald Meadows | - | 1,200 | - | 13,000 | - | - | 43,636 | 800 | - | 58,636 |
| Johansen Ranch | - | - | - | - | - | - | - | 2,000 | - | 2,000 |
| Joshua Ridge II | - | - | - | - | - | - | - | 800 | - | 800 |
| Ritter Ranch | - | 4,000 | 2,000 | 36,400 | - | - | 80,000 | 1,600 | - | 124,000 |
| Summit Valley | - | - | - | - | - | - | - | 2,400 | - | 2,400 |
| Tesoro Burbank | - | - | - | - | - | - | - | 800 | - | 800 |
| TOTAL | $0 | $5,200 | $50,000 | $86,900 | $15,000 | $0 | $247,272 | $18,800 | $0 | $424,172 |

# EXHIBIT 🅱

## EXHIBIT C

**Allocated Voluntary Debtor Liability Insurance Premium**

| Voluntary Asset | Allocated Liability Insurance Premium |
|---|---:|
| Acton | - |
| Beaumont Heights | - |
| Bickford Ranch | $5,481 |
| Emerald Meadows | $1,027 |
| Johansen Ranch | - |
| Summit Valley | - |
| Del Rio | - |
| Joshua Ridge | - |
| Tesoro Burnham | - |
| Ritter Ranch | $35,710 |
| **TOTAL** | **$42,218** |



52063-001\DOCS_NY:20997.2

Exhibit A, Page 22

# EXHIBIT D

**SUNCAL PORTFOLIO**
Lehman 30-Day April 2009 Approved Voluntary Budgets

| Asset Name | Life Safety | Security | Utilities | Erosion Control & Maint. | Insurance (1) | G&A (2) | Legal Fee | |
|---|---|---|---|---|---|---|---|---|
| Acton Ranch | - | - | 150 | 1,000 | 2,273 | 10,909 | 22,727 | |
| Beaumont Heights | - | - | - | - | - | - | - | |
| Bickford Ranch | - | - | - | 47,545 | 2,273 | 10,909 | 22,727 | |
| Del Rio | - | - | - | - | - | - | - | |
| Emerald Meadows | - | 1,200 | - | 33,150 | 2,273 | 10,909 | 22,727 | |
| Johansen Ranch | - | - | - | - | - | - | - | |
| Joshua Ridge II | - | - | - | - | 2,273 | 10,909 | 22,727 | |
| Ritter Ranch | - | - | 7,550 | 36,500 | - | - | - | |
| Summit Valley | - | - | - | - | - | - | - | |
| Tesoro Burnham | - | - | - | - | - | - | - | |
| TOTAL | $0 | $1,200 | $7,700 | $118,195 | $9,091 | $43,636 | $90,909 | |

**EXHIBIT D**