Objection Deadline: July 30, 2010 at 4:00 p.m. (ET)
Hearing Date and Time: August 4, 2010 at 10:00 a.m. (ET)

KLESTADT & WINTERS, LLP
John E. Jureller, Jr.
292 Madison Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Counsel to* **GLG Credit Fund**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                                :
In re LEHMAN BROTHERS HOLDINGS         :    Case No. 08-13555 (JMP)
INC., *et al.*                                      :    (Jointly Administered)
                                                                :
                    Debtors.                      :
                                                                :
---------------------------------------------------------------x

### NOTICE OF HEARING ON MOTION OF GLG CREDIT FUND TO PERMIT IT TO FILE A LATE PROOF OF CLAIM PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)

PLEASE TAKE NOTICE that a hearing on the motion ("Motion") of GLG Credit Fund ("Claimant") for entry of an order deeming Claimant's proof of claim related to certain collateral held by Lehman Brothers Special Financing Inc. ("LBSF") for or on behalf of Claimant in a certain margin account, Derivative Master Account Number 082802GLGP, to be timely filed as of the Bar Date, as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Room 601 of the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **August 4, 2010 at 10:00 a.m. (EST)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections to the Motion, if any, must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and Local Rules of the Bankruptcy Court and shall be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format, in either case, with two hard copies delivered directly to the Chambers of the Honorable James M. Peck, U.S.B.J., United States Bankruptcy Court, One Bowling Green, Courtroom 601, New York, New York 10004; and shall be served upon: (i) counsel to the Debtors, Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq.); (ii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Andrew Velez-Rivera Esq., Paul Schwartzberg Esq., Brian Masumoto Esq., Linda Riffkin Esq., and Tracy Hope Davis Esq.); (iii) counsel for the Committee of Unsecured Creditors, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., Evan Fleck, Esq.); (iv) counsel to GLG Credit Fund, Klestadt & Winters, LLP, 292 Madison Avenue, 17th Floor, New York, New York 10017 (Attn: John E. Jureller, Jr.) so as to be received no later than **July 30, 2010 at 4:00 p.m. (EST)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections that have been filed and served by the Objection Deadline in accordance with the procedures herein may be considered by the Bankruptcy Court at the Hearing.

Dated: New York, New York
June 14, 2010

KLESTADT & WINTERS, LLP
Attorneys for Claimant
GLG Credit Fund

By: _/s/ John E. Jureller, Jr.___
John E. Jureller, Jr.
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 972-3000

KLESTADT & WINTERS, LLP
John E. Jureller, Jr.
292 Madison Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

Counsel to *GLG Credit Fund*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
In re LEHMAN BROTHERS HOLDINGS      :     Case No. 08-13555 (JMP)
INC., *et al.*                                :     (Jointly Administered)
                                                                 :
        Debtors.                                    :
                                                                 :
-----------------------------------------------------------------x

### MOTION OF GLG CREDIT FUND TO PERMIT IT
### TO FILE A LATE PROOF OF CLAIM PURSUANT TO
### FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)

GLG Credit Fund ("Claimant") hereby respectfully moves this Court for the entry of an order, in substantially the form attached hereto as **Exhibit E**, pursuant to Federal Rule of Bankruptcy Procedure 9006(b), deeming as timely filed a proof of claim ("Proof of Claim", a copy of which is attached hereto as **Exhibit A**) against Lehman Brothers Special Financing Inc. ("LBSF")(the "Motion"). In support of the Motion, Claimant respectfully states as follows:

### BACKGROUND

1.      Prior to the Debtors filing for chapter 11 relief pursuant to title 11 of the United States Code (the "Bankruptcy Code"), Claimant and the Debtors' UK subsidiary, Lehman Brothers International (Europe)("LBIE"), Debtors' principal European broker-dealer, entered into a certain Strategic Client Services Agreement (the "Agreement"), dated July 25, 2003, as

4

amended and restated, whereby Claimant appointed LBIE as its clearing agent for certain transactions, including credit default swaps ("CDS"), and engaged LBIE or its divisions/affiliates, including LBFI, to assist Claimant in clearing, settling and processing its transactions with various counterparties.[1] A copy of the Strategic Clients Services Agreement, dated as of July 25, 2003, is annexed hereto as **Exhibit B**. In furtherance of this Agreement, LBIE or its divisions/affiliates agreed to use reasonable efforts to receive, deliver and transfer Securities and funds for Claimant.

2. Thereafter, LBIE and Claimant entered into a certain "Superprime" Agreement, which were additional services that LBIE offered and provided to certain of its larger investors and clients, whereby all transactions, including CDS transactions, would be processed through Claimant's account with LBIE or its divisions/affiliates such as LBFI, including any posted collateral related to or required by these transactions. For example, if Claimant entered into a CDS transaction with Morgan Stanley as counterparty, all payments due or owing from Claimant or Morgan Stanley would necessarily flow through Claimant's account with LBIE or its divisions/affiliate.

3. With respect to such transactions, Claimant was required to and did deposit certain collateral with LBIE for clearance of these transactions which were held in certain margin account ("Margin Account") with LBIE and its divisions/affiliates, and such deposits were held in the name of and for the benefit of Claimant. A copy of the printout of the deposits and balances related to this account is annexed hereto as **Exhibit D**.

4. Under the Agreement, Claimant was required to initially deposit $500,000 into an LBIE account as a minimum clearing deposit for the transactions. It is believed that the deposit

---

[1] All of the facts are more fully set forth in the Affidavit of Robert Price, sworn to on June 7, 2010.

was made into the account of LBFI, a division of LBIE, although the volume of deposits into LBIE related accounts under these clearing arrangements has made it difficult to confirm this particular deposit with absolute certainty. What is clear is that well in excess of the $500,000 was deposited in the account including further subscriptions and settlement transactions. LBIE made internal journal entries in excess of $3,500,00 to LBSF which were to be used as collateral for the transactions in connection with which LBIE acted as clearing agent. Where collateral was by external counterparties, these were made by providing full bank payment instructions.

5. All of Claimant's CDS transactions with LBSF had been terminated and closed out more than a year before Lehman's bankruptcy filings; however, the funds for collateral totaling $3,619,269.31, plus interest thereon, are, upon information and belief, still on deposit in the margin account, Derivative Master Account Number 082802GLGP ("Margin Account"), with respect to these prior CDS transactions. Upon information and belief, all funds are still being held by LBSF, as agent for and for the benefit of Claimant, in the Margin Account.

6. On September 15, 2008, Lehman Brothers Holdings, Inc. ("LBHI") and certain of its subsidiaries filed for bankruptcy protection. LBSF filed its bankruptcy petition on October 3, 2008.

7. On same date, LBIE was placed into administration and PricewaterhouseCoopers partners were appointed Administrators ("LBIE Administration"). GLG Partners LP, the fund manager for, amongst others, Claimant, is a member of the Creditors Committee in the LBIE Administration proceeding and has been working closely with LBIE in that matter.

8. On July 2, 2009, this Court entered an order establishing September 22, 2009 at 5:00 pm (ET) as the deadline ("Bar Date") for each person or entity to file proofs of claim based on prepetition claims, such as the Claimant's Proof of Claim, against the Debtors.

9. Because Claimant booked and recorded the margin accounts on its books and records pursuant to the Agreement as against LBIE, Claimant did not file a proof of claim against LBSF. Quite simply, Claimant's records, as maintained since 2003, accounted for the funds being held by and owed by LBIE. *See* Exhibit D. Consequently, on or before the September 22, 2009 Bar Date, Claimant filed a timely proof of claim against LBHI for, *inter alia*, its guarantee of the obligations of LBIE, including these collateral fund that it understood were on deposit in the accounts with LBIE. A copy of the timely filed LBHI Proof of Claim and Derivative Questionnaire are annexed hereto as **Exhibit C**. To date, there has been no bar date in the LBIE administration proceedings.

10. During the course of the LBIE Administration, Claimant has been working with the Administrators of LBIE to reconcile its significant claims against LBIE, its principal broker-dealer pursuant to the prime brokerage agreement. It was only at this time that Claimant discovered that LBIE did not have record of these collateral funds being held on behalf of Claimant in any accounts held by LBIE or LBFI, and further learned that LBIE's books and records show that these funds were transferred to LBSF and held in the Margin Account at LBSF, despite no outstanding CDS transactions with LBSF since over a year prior to the Lehman bankruptcy filings.

11. Thereafter, Claimant initiated discussions with LBSF whereby it discovered that these funds were in fact held by LBSF in the Margin Account, Derivative Master Account Number 082802GLGP. Upon further review of the bankruptcy petition of LBSF, Claimant's Derivative Master Account was identified by LBSF's Schedule G as an outstanding Derivative Contract.

7

12. It is clear that the differing accounting practices of Claimant and the Lehman entities resulted in differing booking of the collateral held in the Margin Account. Although Claimant recorded these funds as being held by LBIE, they were in fact held by LBSF as a result of inter-company journal entry transfers within Lehman. As a result, Claimant now seeks to file a proof of claim against LBSF's bankruptcy estate after the Bar Date and deem such proof of claim timely filed.

13. By this Motion, Claimant requests the Court to deem Claimant's proof of claim with respect to the collateral funds held on deposit in the Margin Account to be timely filed *nunc pro tunc* to the Bar Date.

### RELIEF REQUESTED

14. Claimant respectfully requests the entry of an order pursuant to Bankruptcy Rules 3003 and 9006(b) deeming its proof of claim with respect to the collateral funds held on deposit in the Margin Account timely filed.

15. Bankruptcy Rules 3003(c)(3) and 9006(b)(1) govern extensions of time, and those rules provide, in relevant part, "[t]he court shall fix and for cause shown may extend the time within which proofs of claim may be filed." FED. R. BANKR. P. 3003(c)(3). Bankruptcy Rule 9006(b)(1) provides that a bankruptcy court in its discretion may accept a late-filed proof of claim where a claimant establishes that its failure to adhere to the Bar Date is attributable to "excusable neglect." Specifically, Rule 9006(b) states, in pertinent part, that:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by notice given thereunder or by order of the court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

FED. R. BANKR. P. 9006(b).

16.  The seminal case interpreting "excusable neglect" is <u>Pioneer Inv. Servs. Co</u>. v. <u>Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380 (1993). In permitting a creditor's late filing under Bankruptcy Rule 9006(b)(1), the Supreme Court held that "the determination [of excusable neglect] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." <u>Id</u>. at 395.

17.  These circumstances include (but are not limited to): (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. <u>Id</u>. at 395.

18.  The <u>Pioneer</u> test does not require the movant to be entirely without fault and, as one bankruptcy court concluded, "[n]o single circumstance controls, nor is a court to simply proceed down a checklist ticking off traits. Significantly, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other." <u>In re 50-Off Stores, Inc</u>., 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998). In this analysis, courts may also consider the debtor's actions or inactions as a factor. <u>See</u>, <u>e</u>.<u>g</u>., <u>See</u> <u>In re Robinson Foundry, Inc</u>. 347 B.R. 781, 783 n.1 (Bankr. M.D. Ala. 2006) (discussing possibility that debtor acted in bad faith, but refusing to draw any conclusions where creditor failed to raise the issue in its Rule 9006 motion); <u>In re Spring Ford Indus</u>., No. 0215015, 2003 WL 21785960, at *4 (Bankr. E.D. Pa. July 25, 2003) (stating that "if the Debtor is prejudiced, it is partially of its own doing" and ultimately concluding that claimants demonstrated excusable neglect); <u>In re Eagle Bus Mfg., Inc</u>., 62 F.3d 730, 739 (5th Cir. 1995) (considering debtor's conduct in evaluating and ultimately holding that claimants' conduct constituted excusable neglect). Furthermore, "[c]ourts are to resolve any doubts in favor of the movant in order to increase the likelihood that disputes will be resolved on

9

their merits." In re Enron, Inc. 326 B.R. 46, 51 (Bankr. S.D.N.Y. 2005).

**A.     Based on the Circumstances, Claimant's Failure
to Meet the Bar Date was Due to Excusable Neglect**

19.     Applying Pioneer's equitable factors to the facts of this case makes clear that the Bankruptcy Court should determine that "excusable neglect" exists to justify granting Claimant's Motion. Although the Second Circuit applies the "hard line" test, it is submitted that Claimant meets this standard in this matter.

*i. Reason for Delay*

20.     The Second Circuit has adopted what has been characterized as a "hard line" in applying the *Pioneer* Test. In re Enron Corp., 419 F.3d 115, 122 (2d Cir. 2005). This "hard line' approach focuses primarily on the reason for the delay, and specifically whether the delay was in the reasonable control of the movant. Id. Where a debtor's reason for not filing a timely proof of claim is based on an ill-conceived strategy or brazen indifference to the bankruptcy process, excusable neglect will not apply. See In re Sacred Heart Hosp., 186 B.R. at 895 (listing "claimant's conscious, tactical reason for the delay" as a factor weighing against a finding of excusable neglect); see also, In re Eagle-Picher Indus., 158 B.R. 713, 716 (Bankr. S.D. Ohio 1993) (noting creditor's "express indifference regarding our bar date order" in finding neglect inexcusable). However, when the creditor has a reason for missing the bar date, even if that creditor acted negligently in doing so, the court may find that the neglect is excusable. In re Infiltrator Sys., 241 B.R. at 281; In re Sacred Heart Hosp., 186 B.R. at 895-96.

21.     Here, the Claimant's reason for the failure to file a proof of claim as against LBSF related to the differing accounting practices between Claimant and the respective Lehman entities, and the confusion, only now apparent, as to which Lehman entity was deemed to hold certain collateral at certain point in time. Claimant had a longstanding relationship with LBIE,

and based upon this relationship, the parties entered into the Agreement whereby all CDS transactions flowed through Lehman. Consequently, Lehman was charged with transferring and/or holding funds as collateral for Claimant's transactions, and as such, executed various inter-company journal entry transfers between Lehman entities in furtherance of the transactions. Claimant, along with certain other funds managed by GLG Partners LP, was amongst the largest creditor of LBIE and currently participates as a member of the Creditors Committee in the LBIE Administration. Claimant has been intimately involved in the bankruptcy case, and has done its due diligence with respect to its claims. However, because of the Agreement, Claimant duly booked all collateral deposits held in margin accounts as being held by LBIE. This practice commenced in at least 2003 and continues to date. *See* Exhibit D.

*22.*       Claimant understood that any claim as to the collateral deposited in the margin accounts was necessarily made against LBIE, and in fact, timely filed a claim against LBHI based upon LBHI's guarantees of the obligations of LBIE related to, amongst other things, these deposits in the margin accounts. *See* Exhibit C.

*23.*       As of LBSF's bankruptcy filing, and for more than a year before, all CDS transactions between Claimant and LBSF were terminated and closed out. As such, there was no reason for LBSF to hold any collateral on deposit for such transactions, and according to Claimant's books and records, all such collateral deposits would continue to be held in accounts with LBIE. Because these transactions and deposits were apparently shifted back and forth between the Lehman entities by inter-company journal entries, there was no reason for Claimant to believe that the funds were on deposit any place other than LBIE pursuant to the Agreement. Consequently, according to Claimant's books and records, no claim needed to be made against LBSF.

*24.* Alternatively, even if these collateral deposits were held in margin accounts with LBSF, there were no outstanding transactions between the parties or disputes as to any previous transactions and the collateral deposits in the margin accounts should have been identified on LBSF's schedules as an undisputed amount.  See Robinson Foundry, 347 B.R. at 783 n.1 (questioning the good faith of a debtor that categorized all claims as disputed, contingent, and unliquidated, but ultimately refusing to find bad faith and denying creditor's excusable neglect defense, where creditor failed to raise bad faith as an issue).

25. The facts and circumstances related to Claimant's claim as to the Margin Account are distinct and unique, and are clearly distinguishable from those asserted by other claimants of the Debtors, meaning that a finding in its favor will not necessarily open the floodgates for other late-filing claimants.

### ii. Claimant's Good Faith

26. At all times, Claimant acted in good faith. Its failure to comply with the Bar Date Order was due to the fact that it was not aware of the need to file a proof of claim against LBSF because of differing accounting practices between Claimant and the Lehman entities. It understood that all funds were held on deposit with LBIE pursuant to the Agreement. As soon as it learned that the collateral funds in the margin accounts were held by LBSF, it immediately contact LBSF's, and then filed its proof of claim (on June 10, 2010) along with this motion to raise this issue with the Court. Claimant's failure to file a timely proof of claim was in no way part of a strategy or scheme nor did it reflect any indifference to the Bankruptcy Court's procedures. In fact, Claimant is working closely with LBIE in its Administration proceeding as an integral member of the Creditors' Committee.

### iii. The Danger of Prejudice to the Debtor

27. Where a plan of reorganization has yet to be finalized, courts are more inclined to find that the delay will not prejudice the debtor or impact judicial administration. In re Infiltrator Sys., Inc. 241 B.R. 278, 281-82 (Bankr. D. Conn. 1999); In re Keene Corp., 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995). Among other factors considered by the courts are the relative size of the claim and "the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated." In re Keene, 188 B.R. at 910.

28. Here, the prejudice to the Debtors is minimal. First, the plan of reorganization has yet to be confirmed. Second, the size of the claim is minuscule compared to the size of the entire estate. Claimant's claim is for $3,619,269.31, and the overall claims against LBSF's estate are estimated to be about $899 billion. There is no way that this small claim would have any noticeable impact on the estate or would have affected any economic model used during earlier plan negotiations.

29. Further, LBSF identified the Master Derivative Account on Schedule G of their bankruptcy petition, so there can be no surprise to the debtor herein of the funds they apparently have record of being held in such account.

### *iv. Length of the Delay and its Potential Impact on Judicial Proceedings*

30. Where delay is considered substantial, it will generally weigh in favor of the debtor. Generally, delay is substantial if it "may disrupt the judicial administration of the case." In re Infiltrator Sys., 241 B.R. at 281. But the courts have not provided a bright-line rule in this regard and a two-year delay has been held to be excusable, where the plan had yet to be confirmed. See In re Beltrami Enters., Inc., 178 B.R. 389, 392 (Bankr. M.D. Pa. 1994) ("[N]o plan was confirmed prior to the request for the extension of time to file the proof of claim. We

conclude that the length of the delay is not a factor in this case at this time with regard to the court administration of this case."); see also, In re Sacred Heart Hosp. of Norristown, 186 B.R. 891, 895 (Bankr. E.D. Pa. 1995) (opining that the approach taken in Beltrami was appropriate). Here, the nine-month delay is not nearly as long as an excusable two-year delay and because the plan has not been confirmed and the claim amount is so small, the late filing will have absolutely no bearing on the judicial administration of the case. Claimant engaged counsel as soon as it learned of the differing accounting practices between Claimant and the Lehman entities, and after it discovered that the margin accounts were deemed by Lehman to be held by LBSF. Claimant immediately contacted LBSF and notified them of the accounting discrepencies. This Motion was prepared and filed soon there.

## NOTICE

31. Claimant has provided notice of the Motion pursuant to the Amended Order Implementing Certain Notice and Case Management Procedures entered in this proceeding [Docket No. 2837]. Claimant submits that no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

32. Claimant requests that the Court waive the Local Bankruptcy Rule 9013-1(b) requirement of a memorandum of law as this Motion raises no novel issues of law.

## NO PRIOR REQUEST

33. No prior motion for the relief requested herein has been made to this Court or any other court.

**WHEREFORE**, Claimant respectfully moves this Court to enter an order in the form annexed hereto as **Exhibit E**, (i) permitting Claimant to file the Proof of Claim against LBSF; (ii) deeming such filing to be timely under Bankruptcy Rule 9006(b); and (iii) granting such other and further relief as this Court deems just and equitable.

Dated: New York, New York
       June 14, 2010

                                                KLESTADT & WINTERS, LLP

                                                By: _/s/ John E. Jureller, Jr._
                                                     John E. Jureller, Jr.
                                               292 Madison Avenue, 17th Floor
                                               New York, New York 10017
                                               Telephone (212) 972-3000
                                               Attorneys for Claimant