UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re LEHMAN BROTHERS HOLDINGS INC., *et al.*<br><br>Debtors. | Case No. 08-13555 (JMP)<br>(Jointly Administered) |

**AFFIDAVIT IN SUPPORT OF MOTION OF GLG CREDIT FUND TO PERMIT IT TO FILE A LATE PROOF OF CLAIM PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)**

Robert Price, being duly sworn, under penalties of perjury, states as follows:

1. I am Head of Operations for GLG Partners L.P., the fund manager for GLG Credit Fund (the "Claimant"), and as such, I am fully familiar with the facts and circumstances of this matter.

2. I am submitting this affidavit in support of the Claimant's instant motion for entry of an order deeming Claimant's proof of claim ("LBSF Proof of Claim") related to certain collateral held by Lehman Brothers Special Financing Inc. ("LBSF") for or on behalf of Claimant in a certain margin account, Derivative Master Account Number 082802GLGP, to be timely filed as of the Bar Date (the "Motion"). A copy of the LBSF Proof of Claim is annexed hereto as Exhibit A.

3. Prior to the Debtors filing for chapter 11 relief pursuant to title 11 of the United States Code (the "Bankruptcy Code"), Claimant and the Debtors' UK subsidiary, Lehman Brothers International (Europe)("LBIE"), Debtors' principal European broker-dealer, entered into a certain Strategic Client Services Agreement (the "Agreement"), dated July 25, 2003, as amended and restated, whereby Claimant appointed LBIE as its clearing agent for certain



transactions, including credit default swaps ("CDS"), and engaged LBIE or its divisions/affiliates, including LBFI, to assist Claimant in clearing, settling and processing its transactions with various counterparties. In furtherance of this Agreement, LBIE or its divisions/affiliates agreed to use reasonable efforts to receive, deliver and transfer Securities and funds for Claimant.

4. Thereafter, LBIE and Claimant entered into a certain "Superprime" Agreement, which were additional services that LBIE offered and provided to certain of its larger investors and clients, whereby all transactions, including CDS transactions, would be processed through Claimant's account with LBIE or its divisions/affiliates such as LBFI, including any posted collateral related to or required by these transactions. For example, if Claimant entered into a CDS transaction with Morgan Stanley as counterparty, all payments due or owing from Claimant or Morgan Stanley would necessarily flow through Claimant's account with LBIE or its divisions/affiliate.

5. Under the Superprime Agreement, Claimant was required to deposit $500,000 into an LBIE account as a minimum clearing deposit for the transactions. It is believed that the deposit was made into the account of LBFI, a division of LBIE, although the volume of deposits into LBIE related accounts under these clearing arrangements has made it difficult to confirm this particular deposit with absolute certainty. What is clear is that well in excess of the $500,000 was deposited in the account including further subscriptions and settlement of transactions. LBIE made internal journal entries in excess of $3,500,000 to LBSF which were to be used as collateral for the transactions in connection with which LBIE acted as clearing agent. Where collateral was sought by external counterparties these were made by providing full bank payment instructions.



6. On September 15, 2008, Lehman Brothers Holdings, Inc. ("LBHI") and certain of its subsidiaries filed for bankruptcy protection. LBSF filed its bankruptcy petition on October 3, 2008.

7. LBIE was also placed into administration in the United Kingdom and PricewaterhouseCoopers partners were appointed Administrators ("LBIE Administration"). GLG Partners LP, the fund manager for, amongst others, Claimant, is a member of the Creditors Committee in the LBIE Administration proceeding and has been working closely with LBIE in that matter.

8. On July 2, 2009, this Court entered an order establishing September 22, 2009 at 5:00 pm (ET) as the deadline ("Bar Date") for each person or entity to file proofs of claim based on prepetition claims, such as the Claimant's Proof of Claim, against the Debtors.

9. Because Claimant booked and recorded the Margin Accounts on its books and records pursuant to the Agreement as against LBIE, Claimant did not file a proof of claim against LBSF. However, Claimant did timely file its proof of claim for, *inter alia*, the monies on deposit in the Margin Account as against LBHI pursuant to certain guarantees issued by LBHI for obligations of LBIE ("LBHI Proof of Claim"). A copy of the LBHI Proof of Claim is annexed hereto as Exhibit C.

10. During the course of the LBIE Administration, Claimant has been working with the Administrators of LBIE to reconcile its claims against LBIE, its principal broker-dealer pursuant to the prime brokerage agreement. It was then learned that LBIE did not have records of the funds being held on behalf of Claimant in any Margin Account held by LBIE or LBFI, and further indicated that LBIE's books and records show that these funds were transferred to LBSF

DE PINNA
35 PICCADILLY

and held in the Margin Account at LBSF, despite no outstanding CDS transactions with LBSF since before the bankruptcy filings.

11. Thereafter, Claimant initiated discussions with LBSF whereby it discovered that these funds were in fact held by LBSF in the Margin Account, Derivative Master Account Number 082802GLGP . Upon further review of the bankruptcy petition of LBSF, Claimant's Derivative Master Account was identified by LBSF's Schedule G as an outstanding Derivative Contract.

12. It is clear that the differing accounting practices of Claimant and the Lehman entities resulted in differing booking of the collateral held in the Margin Accounts. As a result, Claimant now seeks to file a proof of claim against LBSF's bankruptcy estate after the Bar Date and deem such proof of claim timely filed.

13. It is respectfully requested that the Court enter an order deeming Claimant's proof of claim with respect to the collateral funds held on deposit in the Margin Accounts to be timely filed *nunc pro tunc* to the Bar Date.

14. The foregoing is true and correct to the best of my knowledge.

Robert Price

Sworn to before me this
7th day of ~~May~~ June, 2010. AT LONDON, ENGLAND

Notary Public

NOTE: The Exhibits referred to herein were not produced to me, the Notary.

D.N.L. FAWCETT
NOTARY PUBLIC
MY COMMISSION EXPIRES
WITH LIFE

DE PINNA
35 PICCADILLY
LONDON
W1J 0LJ
SCRIVENER NOTARIES