Hearing Date and Time: July 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: July 9, 2010 at: 4:00 p.m. (Prevailing Eastern Time)

Weiland, Golden, Smiley, Wang Ekvall &
Strok, LLP
Evan D. Smiley, CA State Bar No. 161812
esmiley@wgllp.com
Robert S. Marticello, CA State Bar No. 244256
rmarticello@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California  92626
Telephone: 714-966-1000
Facsimile: 714-966-1002

Sills Cummis & Gross P.C.
One Rockefeller Plaza
New York, New York 10020
Telephone:  212-643-7000
Facsimile:  212-643-6500

Attorneys for Alfred H. Siegel,
Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ----------------------------------------------------------------- x | | |
| **In re** | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS, INC., et al,** | : | **Case No. 08-13555 (JMP)** |
| | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| ----------------------------------------------------------------- x | | |

**NOTICE OF MOTION OF THE CHAPTER 11 TRUSTEE**
**OF THE SUNCAL MASTER DEBTORS FOR AN**
**ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

**PLEASE TAKE NOTICE** that Alfred H. Siegel, the chapter 11 trustee (the "Trustee")

of the jointly administered bankruptcy cases of LBREP/L-SunCal Master I, LLC (the "SunCal

Parent Debtor"), and LBREP/L-SunCal McAllister Ranch, LLC, LBREP/L-SunCal McSweeney

Farms, LLC, and LBREP/L-SunCal Summerwind Ranch, LLC   (collectively, the "SunCal

Subsidiary Debtors" and together with the SunCal Parent Debtor, the "SunCal Master Debtors"),

currently pending in the United States Bankruptcy Court, Central District of California, Santa

Ana Division, before Judge Erithe A. Smith, has filed a motion pursuant to Section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order Granting Relief from the Automatic Stay (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held in connection with the Motion (the "Hearing") on July 14, 2010 at 10:00 a.m. (prevailing Eastern time) before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York (the "Court" or "Bankruptcy Court"), Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, Room 601.

**PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the Motion and the relief requested therein must be made in writing, conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the Bankruptcy Court, set forth the basis for the objection and the specific grounds therefore, and be filed with the Bankruptcy Court electronically in accordance with General Order M-242, as amended by General Order M-269, by registered users of the Court's electronic case filing system (the User's manual for the Electronic case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), with a hard copy delivered directly to the Chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004 and served in accordance with General Order M-242 or by first-class mail upon each of the following:

(i)      Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq.), attorneys for the above-captioned Debtors;

(ii)        the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis);

(iii)       Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.), attorneys for the Official Committee of Unsecured Creditors appointed in these cases;

(iv)       Cleary Gotliebb LLP, One Liberty Plaza, New York, NY 10006 (Attn: Lindsee P. Granfield, Esq. and Lisa Schweiger, Esq.) and Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, (Attn: Robinson B. Lacy, Esq. And Hydee R. Feldstein, Esq.), attorneys for the Debtors' post-petition lenders;

(v)        the attorneys for any other official committee(s) that may be appointed in the above captioned cases;

(vi)       Weiland, Golden, Smiley, Wang Ekvall & Strok , LLP, Center Tower, 650 Town Center Drive, Suite 950, Costa Mesa, CA 92626 (Attn: Evan D. Smiley, Esq.), attorneys for the Trustee;

(vii)      Sills Cummis & Gross P.C., One Rockefeller Plaza, New York, NY 10020 (Attn: Andrew H. Sherman), local counsel for the Trustee; and

(viii)     Levene Neale Bender Rankin & Brill LLP, 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067-6200 (Attn: Daniel H. Reiss, Esq.), attorneys for the Official Committee of Unsecured Creditors for the SunCal Master Debtors' chapter 11 cases,

so as to be received on or before 4:00 p.m. (prevailing Eastern Time) on July 9, 2010, or such shorter time as the Bankruptcy Court may hereafter order and of which you may receive subsequent notice (the "Objection Deadline"). Only those objections which have been timely filed and served by the Objection Deadline in accordance with the procedures herein may be considered by the Court at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written objection to the relief requested in the Motion in accordance with this Notice and the Court's Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures (D.I. 2837), dated February 13, 2009, the Bankruptcy Court may deem any opposition waived, treat the Motion as conceded, and enter an order granting the relief requested in the Motion without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Motion may be obtained at no charge at http://www.lehman-docket.com or for a fee via PACER at http://www.nysb.uscourts.gov.

Dated: June 17, 2010          WEILAND, GOLDEN, SMILEY, WANG  EKVALL &
                             STROK, LLP

                             650 Town Center Drive, Suite 950
                             Costa Mesa, California  92626
                             Telephone: (714) 966-1000
                             Facsimile: (714) 966-1000
                             Attorneys for Alfred H. Siegel,
                             Chapter 11 Trustee

                                     and

SILLS CUMMIS & GROSS P.C.
One Rockefeller Plaza
New York, New York  10020
Telephone: 212-643-6982
Facsimile: 212-643-6500

Local Counsel for Alfred H. Siegel,
Chapter 11 Trustee


By:     /s/ Andrew H. Sherman_____
        Andrew H. Sherman

Weiland, Golden, Smiley, Wang Ekvall &
Strok, LLP
Evan D. Smiley, CA State Bar No. 169296
esmiley@wgllp.com
Robert S. Marticello, CA State Bar No. 244256
rmarticello@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California  92626
Telephone: 714-966-1000
Facsimile: 714-966-1002

Sills Cummis & Gross P.C.
One Rockefeller Plaza
New York, New York
Telephone:  212-643-7000
Facsimile:  212-643-6500

Attorneys for Alfred H. Siegel,
Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
In re                                                                     :    **Chapter 11**
                                                                            :
**LEHMAN BROTHERS HOLDINGS, INC., et al,**     :    **Case No. 08-13555 (JMP)**
                                                                            :
                                                                            :
                              **Debtors.**                             :    **(Jointly Administered)**
------------------------------------------------------------- x


### MOTION OF THE CHAPTER 11 TRUSTEE
### OF THE SUNCAL MASTER DEBTORS FOR AN ORDER
### GRANTING RELIEF FROM THE AUTOMATIC STAY

Alfred H. Siegel, the chapter 11 trustee (the "Trustee") of the jointly administered

bankruptcy cases of LBREP/L-SunCal Master I, LLC (the "SunCal Parent Debtor"), and

LBREP/L-SunCal McAllister Ranch, LLC, LBREP/L-SunCal McSweeney Farms, LLC, and

LBREP/L-SunCal Summerwind Ranch, LLC  (collectively, the "SunCal Subsidiary Debtors"

and together with the SunCal Parent Debtor, the "SunCal Master Debtors"), currently pending in

1768873 v7

the United States Bankruptcy Court, Central District of California, Santa Ana Division, before Judge Erithe A. Smith (the "California Bankruptcy Court"), by and through his undersigned attorneys, files this motion ("Motion") pursuant to Section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") praying for the entry of an order substantially in the form attached hereto as Exhibit "A" granting certain relief from the automatic stay in the Lehman Debtors' Chapter 11 cases. In support of the Motion, the Trustee respectfully represents as follows:

## I.
## PRELIMINARY STATEMENT

1.      The Trustee seeks this Court's permission[1] to modify the automatic stay in the Lehman Bankruptcy Cases to allow the Trustee to proceed with the expeditious administration of the bankruptcy cases of the SunCal Master Debtors and to defend himself from the actions and allegations of Lehman Commercial Paper, Inc. ("LCPI") in the California Bankruptcy Court.[2]

2.      The SunCal Master Debtors' chapter 11 cases have been pending before the California Bankruptcy Court since November 2008. The substantial majority of the time that has elapsed since the Trustee's appointment has been spent negotiating with LCPI on a consensual resolution of the parties' disputes. Notwithstanding the ultimate resolution of these disputes through a global compromise, various third-party objections resulted in the parties' failure to consummate the settlement. Consequently, the Trustee is taking steps to immediately proceed with alternative means to effectively administer the SunCal Master Debtors' bankruptcy estates

---

[1] Unlike the debtors in *SunCal Communities I LLC et al.* referred to in this Court's decision of May 12, 2010, the Trustee seeks stay relief <u>prior to</u> taking any action adverse to the estates herein. As set forth at length herein, the Trustee has yet to seek relief from this Court as the Trustee has been in settlement discussions with LCPI and those efforts have recently failed to yield a consensual resolution.

[2] As set forth herein, LCPI has argued that the SunCal Master Debtors' bankruptcy cases are at a "standstill" and alleged that the Trustee failed to comply with section 362(d)(3) of the Bankruptcy Code.

and requires relief from the automatic stay herein to effectuate such administration.

3.    By this Motion, the Trustee seeks relief from the automatic stay in all applicable Lehman Chapter 11 cases, to the extent necessary, to proceed with the relief requested in the Motion.  More specifically, the Trustee requests that the automatic stay be lifted to allow the Trustee to proceed with a sale pursuant to 11 U.S.C. § 363, which will affect the rights and collateral serving as security for certain obligations owing to LCPI.  Since the California Bankruptcy Court has the exclusive jurisdiction over the property to be sold, the stay should be lifted so that the Trustee and the California Bankruptcy Court can fully administer the assets of the SunCal Master Debtors and resolve any claims which relate to those assets.

4.    The Trustee also seeks relief from the automatic stay to file a complaint against LCPI (and others) in the California Bankruptcy Court to (a) equitably subordinate LCPI's claims and cause the liens securing LCPI's claims to be transferred to the SunCal Master Debtors' bankruptcy estates, (b) avoid LCPI's liens against the SunCal Subsidiary Debtors' real estate development projects as fraudulent transfers and to preserve those liens for the benefit of the estates, (c) avoid other, unperfected liens that may be asserted by LCPI against cash deposits of the SunCal Master Debtors in the possession of third parties, and (d) to liquidate the SunCal Master Debtors' claims for monetary damages against LCPI based on breach of fiduciary duty. The Trustee also intends to assert causes of action against Lehman Lakeside, a non-debtor, to, among other things, recover the $117,000,000 distribution it received.

5.    Cause exists under 11 U.S.C. § 362(d) to modify the automatic stay to allow the Trustee to proceed with the sale of the SunCal Master Debtors' real property assets, against which LCPI has asserted liens, and to pursue the SunCal Master Debtors' claims against LCPI. The relief requested herein is necessary to enable the Trustee to administer the assets of the

SunCal Master Debtors' bankruptcy estates, and to fully and finally determine the validity and priority of the liens asserted by LCPI against those assets and upon which LCPI has requested stay relief to foreclose.  The California Bankruptcy Court is the appropriate venue and, in some respects the only venue, to resolve the disputes between the parties.  Pursuant to 28 U.S.C. § 1334(e), the California Bankruptcy Court has exclusive jurisdiction over property of the SunCal Master Debtors' estates and, therefore, the California Bankruptcy Court is the only court that can order the sale of such property under 11 U.S.C. § 363.  The determination of issues relating to the validity and priority of LCPI's alleged liens and claims is a necessary step for the California Bankruptcy Court to exercise its exclusive jurisdiction and plenary power to administer the property of the SunCal Master Debtors' bankruptcy estates to be sold.

6.      Denying the relief requested by the Trustee would prevent the administration of the SunCal Master Debtors' bankruptcy estates and interfere with the California Bankruptcy Court's exercise of its jurisdiction over the property of those estates in contravention of 28 U.S.C. § 1334(e).  Moreover, denial of the relief requested will also create an anomaly whereby this Court could interject itself into issues relating to the validity and priority of LCPI's liens and claims with respect to property subject to the exclusive jurisdiction of the California Bankruptcy Court despite the fact that LCPI has filed proofs of claim and actively participated in the SunCal Master Debtors' bankruptcy cases.  Similarly, the value of the Properties may not be maximized unless bidders are assured that there is a cohesive process to enable the SunCal Master Debtors' properties to be sold and any lien issues efficiently addressed.  Principles of comity and judicial economy weigh in favor of one court with the power to consider all relevant issues deciding any and all disputes so that piecemeal litigation and the potential for inconsistent results can be avoided.  Therefore, ample cause exists to modify the automatic stay to enable the California

Bankruptcy Court to effectively exercise its exclusive jurisdiction under 28 U.S.C. § 1334(e) and enable the efficient administration of the SunCal Master Debtors' bankruptcy cases.

## II.
## SUMMARY OF MATERIAL FACTS

### A.    The Lehman Debtors

7.    On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI") filed a petition in the Bankruptcy Court seeking relief under chapter 11 of the Bankruptcy Code.  Subsequently, 22 additional affiliates of LBHI, including LCPI, also filed petitions in the Bankruptcy Court seeking relief under chapter 11 of the Bankruptcy Code.  LBHI, LCPI and the 21 remaining affiliates of LBHI are collectively referred to as the "Lehman Debtors."  The Lehman Debtors' chapter 11 cases (the "Lehman Bankruptcy Cases") are jointly administered for procedural purposes.

### B.    The SunCal Master Debtors

8.    On or about September 10 and 11, 2008, involuntary petitions under chapter 11 of the Bankruptcy Code were filed against the SunCal Master Debtors.  The SunCal Master Debtors' bankruptcy cases (the "SunCal Master Bankruptcy Cases") are being jointly administered pursuant to an order of the California Bankruptcy Court entered on November 13, 2008.  On or about October 30, 2008, the California Bankruptcy Court entered an order for relief in the SunCal Master Bankruptcy Cases and an order approving the Trustee's appointment.

9.    The SunCal Parent Debtor is a holding company, established to fund the real estate development projects owned by each of its four operating subsidiaries, i.e., the SunCal Subsidiary Debtors and LBREP/L SunCal Patterson Ranch, LLC.  The SunCal Parent Debtor is controlled by LBREP Lakeside SC Master I, LLC ("Lehman Lakeside"), which is an affiliate of

LCPI and a subsidiary of Lehman Bros. Real Estate Partners, LP ("LBREP")[3].    More specifically, Lehman Lakeside is the managing member and ninety percent (90%) equity owner of the SunCal Parent Debtor.  The remaining equity interests in the SunCal Parent Debtor are owned by SCC Ranch Venture, LLC, which is an affiliate of SCC Acquisitions, Inc. d/b/a SunCal Companies.

10.    The SunCal Parent Debtor's primary asset, other than cash, is its interests in its operating subsidiaries.  The SunCal Parent Debtor is the sole equity member of the SunCal Subsidiary Debtors, each of which, in turn, owns a real property development project bearing the same name (each a "Property" and collectively, the "Properties").  The SunCal Parent Debtor also has cash in accounts with a current aggregate balance of approximately $14 million, which funds were formerly held in a "Development Account" established under the LCPI loan documents.  As discussed in further detail below, LCPI asserts a first priority lien against the Properties and the SunCal Parent Debtor's cash for the full amount of the loans to the SunCal Parent Debtor.  The Trustee estimates that there is approximately $60 million in non-lien lender debt based upon the schedules and claims filed in the SunCal Master Debtors' chapter 11 cases.  Some of these creditors assert mechanic's liens against the Properties superior in position to the liens asserted by LCPI.

11.    As of this date, the Trustee is aware of approximately $18 million in claims potentially secured by mechanic's liens.  Pursuant to a stipulation and order entered on January 16, 2009, this Court terminated the automatic stay to allow one mechanic's lien claimant, Superior Pipelines, Inc., to proceed with an adversary proceeding before the California Bankruptcy Court to determine the priority of its liens against the Properties and certain other

---

[3] Both LCPI and LBREP are affiliates of LBHI.  Lehman Lakeside is not one of the Lehman Debtors.

personal property (e.g., cash deposits), in which LCPI also asserts security interests.

## C.    The Properties

12.    The Properties are summarized as follows:

a.    <u>McAllister Ranch</u>.  LBREP/L-SunCal McAllister Ranch, LLC, owns the real estate development project commonly known as "McAllister Ranch," which is located near Bakersfield in Kern County, California.  The Trustee understands that McAllister Ranch is designed to be a 2,070 acre master planned community featuring a golf course, lake, and approximately 6,087 homes.  All of the lots have been graded, and the first of five planned subdivisions were nearly complete at the time the SunCal Master Bankruptcy Cases were commenced.

b.    <u>McSweeny Farms</u>.  LBREP/L-SunCal McSweeny Farms, LLC, owns the real estate development project commonly known as "McSweeny Farms," which is located near Hemet in Riverside County, California.  McSweeny Farms is comprised of 673 acres, and a total of 1,640 lots are planned to be included thereon.  Phase 1 of the project has been completed and sold out.  Phase 3 is currently being leased to a third party for farming.

c.    <u>Summerwind Ranch</u>.  LBREP/L-SunCal Summerwind Ranch, LLC, owns the real estate development project commonly known as "Summerwind Ranch," which is located near Calimesa in Riverside County, California. Summerwind Ranch is comprised of 2,591 acres with 3,683 lots planned thereon.

## D.    Secured Creditors

13.    The Properties are subject to the asserted liens of LCPI, as First Lien Administrative Agent for the First Lien Lenders, Gramercy Warehouse Funding I, LLC ("Gramercy"), as Second Lien Administrative Agent for the Second Lien Lenders, Square Mile Structured Debt (One), LLC, and Square Mile Structured Debt (Two), LLC, as Third Lien

Administrative Agent for the Third Lien Lenders, and various trade creditors asserting mechanic's liens. Disputes exist as to the priority of certain of the mechanic's liens and the liens of LCPI, as First Lien Administrative Agent.

14. LCPI has actively and materially participated in the SunCal Master Debtors' bankruptcy cases. The following are some of the pleadings filed by LCPI in the SunCal Mater Debtors' bankruptcy cases:

- On October 2, 2008, LCPI filed a Notice of Motion, Motion for Relief from the Automatic Stay, and a Memorandum of Points and Authorities in Support of Notice of Motion and Motion for Relief From the Automatic Stay to Foreclose on Secured Collateral (Dkt # 5,6,7);

- On November 05, 2008, Lehman filed an Objection to Motion to Use Cash Collateral, a Memorandum of Points and Authorities, and the Declaration of Howard Grobstein (Dkt # 56);

- On November 10, 2008, LCPI filed an Objection to Stipulation Regarding Creditor's Funding of Fees and Expenses of the Chapter 11 Trustee and the Trustee's Professionals (Dkt # 64);

- On November 19, 2008, LCPI filed a Response to Chapter 11 Trustee's supplemental Brief in Support of Emergency Motion for Order Authorizing Use of Cash Collateral (Dkt # 107);

- On December 11, 2008, LCPI filed an Objection to the Motion for Order Fixing Last Date for Filing Proofs of Claim and Approving Form of Notice of Bar Date, a Memorandum of Points and Authorities, and the Declaration of Robert S. Marticello in Support (Dkt # 129);

- On December 24, 2008, LCPI filed an Objection to Motion for Approval of SunCal Management Fees per Cash Collateral Order (Dkt # 143);

- On or about September 23, 2009, LCPI entered into a Binding Term Sheet with the Official Committee of Unsecured Creditors and the Chapter 11 Trustee, which if approved, would have allowed the first-position secured lenders a claim in the amount of $230,006,233.98, and would have settled the estates' claims against Lehman. By motion dated October 9, 2009, the Chapter 11 Trustee sought Court approval of the Term Sheet (Dkt # 306), which was ultimately withdrawn pursuant to a Notice of Withdrawal Without Prejudice of Motion to Approve Compromise (Dkt # 375);

- On December 23, 2009, LCPI filed a Limited Objection to Trustee's Motion for Order Authorizing Use of Cash Collateral Through March 31, 2010 (Dkt # 371);

- On December 18, 2009, LCPI filed an Objection to Motion for Order Authorizing

Use of Cash Collateral Through June 30, 2010 (Dkt # 393); and

•    On June 7, 2010, LCPI filed an Opposition to Motion for Order Authorizing Use of Cash Collateral Through September 30, 2010 (Dkt # 415).

15.    LCPI has also filed claims against the SunCal Master Debtors.  True and correct copies of LCPI's claims are attached to the Declaration of Evan Smiley filed in support of the Motion (the "Smiley Declaration") as Exhibits "C" and "D."  Most recently, on June 7, 2010, LCPI filed the First Lien Lenders' Objection to Trustee's Motion for Order Authorizing Use of Cash Collateral and argued that the SunCal Master Bankruptcy Cases are at a "standstill" and alleged that the Trustee failed to comply with section 362(d)(3) of the Bankruptcy Code.  The Trustee can respond to such allegations by commencing a sale under section 363(f) of the Bankruptcy Code, but first seeks relief from the automatic stay herein.

16.    As set forth above, LCPI filed motions for relief from the automatic stay in each of the SunCal Master Bankruptcy Cases (collectively, the "LCPI Stay Relief Motions"), which were set for an evidentiary hearing by the California Bankruptcy Court.  Pursuant to a stipulation between the Trustee and LCPI, which was approved by order of the California Bankruptcy Court, the evidentiary hearing on the LCPI Stay Relief Motions was taken off calendar as the parties explored settlement alternatives (discussed more fully below).  Pursuant to the stipulation and order, LCPI can re-notice the evidentiary hearing on the LCPI Stay Relief Motions, without re-filing or re-serving such motions and supporting pleadings, on not less than 60 days' written notice.  A true and correct copy of the stipulation to take the evidentiary hearing off calendar and the order approving the same are attached to the Smiley Declaration as Exhibits "A" and "B," respectively.

E.    **Liens of LCPI are Disputed**

17.    The Trustee believes that the SunCal Master Debtors' estates have claims against

LCPI to: (1) equitably subordinate the claims of LCPI and cause the liens securing LCPI's claims to be transferred to the estates; (2) avoid the security interests held by LCPI against the Properties as fraudulent transfers and preserve those security interests for the benefit of the estates; and (3) recover money damages for, among other things, breach of fiduciary duty and breach of the covenant of good faith and fair dealing. The Trustee has prepared a draft complaint that incorporates the claims (the "Complaint Claims") that will be alleged against LCPI and other defendants. A true and correct copy of the draft complaint is attached to the Smiley Declaration as Exhibit "E." The claims of the SunCal Master Debtors' estates are based on the following facts.

18.    The SunCal Parent Debtor, as borrower, entered into three Lien Credit Agreements with LCPI (collectively, the "Lien Credit Agreements"). Pursuant to the First and Second Lien Credit Agreements, which were entered into on or around January 19, 2006, the SunCal Parent Debtor borrowed a total of $320 million (collectively, the "January 2006 Loans") as follows: (1) a revolving credit facility of $75 million and term loan facility of $160 million under the First Lien Credit Agreement; and (2) a $85 million term loan facility under the Second Lien Credit Agreement. The SunCal Parent Debtor's obligations under First and Second Lien Credit Agreements were guaranteed by the SunCal Subsidiary Debtors, and these upstream guaranties were secured by first and second liens against the Properties. The SunCal Subsidiary Debtors also contributed approximately $45 million to repay the existing financing secured by the Properties. LCPI was a lender under the January 2006 Loans, and acted as the sole administrative agent, and Lehman Brothers, Inc. ("Lehman Brothers"), served as the advisor, sole lead arranger and syndication agent. Later, Gramercy replaced LCPI as the administrative agent under the Second Lien Credit Agreement.

19.     Despite the fact that the SunCal Master Debtors incurred $320 million in secured debt and the significant interest accruing thereon, a significant portion of proceeds from the January 2006 Loans was not available to the SunCal Master Debtors for operations and the development of the Properties.  Rather, most of the $320 million went to one Lehman entity or another.  Specifically, pursuant to the First Lien Credit Agreement, the sum of $144 million was paid directly from escrow to the SunCal Parent Debtor's equity owners, of which $117 million was paid to Lehman Lakeside.  The sum of $10.6 million was paid from escrow to LCPI for its arrangement and administration fee.  Approximately $62 million was disbursed to Lehman Ali, Inc. ("Lehman Ali"), to repay previous loans to the SunCal Subsidiary Debtors.  Approximately $25 million was immediately set aside by escrow to fund a "Development Account," which the SunCal Master Debtors were not permitted to use, but served as the lenders' collateral.  Thus, over $240 million (75%) of the $320 million loaned to the SunCal Parent Debtor, and upon which the SunCal Master Debtors paid interest, was either disbursed directly to LCPI or other entities, or was otherwise unavailable to the SunCal Parent Debtor.

20.     The SunCal Subsidiary Debtors were forced to grant security interests in the Properties to secure the entire $320 million in loans to the SunCal Parent Debtor, which is approximately sixteen (16) times the amount of secured debt formerly encumbering the Properties, despite the fact that each entity received only a fraction of the loan proceeds.  As such, the debt encumbering each Property was in an amount far greater than it could sustain.  Moreover, the SunCal Subsidiary Debtors were forced to contribute cash to repay the loans.  The following is a brief summary of the loan proceeds received by each SunCal Subsidiary Debtor:

a.     McAllister Ranch.  In exchange for securing the entire $320 million in loans to the SunCal Parent Debtor, McAllister Ranch received only $20 million in loan proceeds,

all of which was used to replace the existing $20 million first position lien (plus accrued interest), which was allegedly created on November 5, 2004 and held by another Lehman related entity, Lehman Ali, plus some real property taxes in relatively small amounts. Moreover, in March 2006, approximately $22.7 million in cash from McAllister Ranch's account was effectively paid to LCPI on account of the January 2006 Loans.

b.    McSweeny Farms. In exchange for securing the entire $320 million in loans to the SunCal Parent Debtor, McSweeny Farms received loan proceeds of $17.7 million, all of which was used to replace the existing $17.7 million first position lien (plus accrued interest), which was allegedly created on May 18, 2005, and held by another Lehman related entity, Lehman Ali, plus some real property taxes in relatively small amounts. Moreover, McSweeny Farms actually paid approximately $21.5 million into escrow prior to the closing of the January 2006 Loans, which was presumably paid to LCPI.

c.    Summerwind Ranch: In exchange for securing the entire $320 million in loans to the SunCal Parent Debtor, Summerwind received only loan proceeds sufficient to replace the existing $24 million first position lien (plus accrued interest), which was allegedly created on May 3, 2005, and held by another Lehman related entity, Lehman Ali, plus some real property taxes in relatively small amounts.

21.    In sum, the only concrete economic benefit received by the SunCal Subsidiary Debtors in exchange for securing the SunCal Parent Debtor's obligations under the First and Second Lien Credit Agreements (i.e., the repayment of the $320 million in loans), and repaying a portion of the January 2006 Loans, was funds sufficient to simply replace existing secured obligations to another Lehman related entity, in amounts far less than that guaranteed by the SunCal Subsidiary Debtors and secured by the Properties. The apparent flow of funds

demonstrates LCPI's scheme to maximize the return to it and its affiliates, while minimizing the cash actually paid to the SunCal Master Debtors.  Clearly, the SunCal Subsidiary Debtors did not receive reasonably equivalent value and the transaction served to benefit LCPI, Lehman Lakeside and SCC Ranch Venture, LLC.  These transactions left the SunCal Subsidiary Debtors with virtually no ability to pay their vendors and placed the SunCal Subsidiary Debtors into a downward spiral as the small amount of excess funds were needed to make debt service payments to LCPI on the $320 million in loans.

22.    Because of the severe cash flow crisis, on February 6, 2007, a Third Lien Credit Agreement was entered into by the SunCal Parent Debtor, which provided for an additional $75 million term loan (the "February 2007 Loan," collectively with the January 2006 Loans, the "Loans"), guaranteed again by the SunCal Subsidiary Debtors and secured by third priority liens against the Properties.  From the $75 million loaned to the SunCal Parent Debtor under the Third Lien Credit Agreement, $50 million was paid out of escrow directly to LCPI to pay down the obligations under the First Lien Credit Agreement.  Just as with the January 2006 Loans, LCPI was the lender and served as the administrative agent, and Lehman Brothers served as advisor, sole arranger and syndication agent.  Square Mile Structured Debt (One), LLC, and Square Mile Structured Debt (Two), LLC, collectively, replaced LCPI as the administrative agent under the Third Lien Credit Agreement.

23.    Pursuant to a Fourth Amendment and Waiver to the First Lien Credit Agreement dated January 31, 2008 (the "Amendment"), the SunCal Parent Debtor was required to increase the cash in the Development Account from $25 million to $50 million within 60 days (i.e., by March 31, 2008).  The SunCal Parent Debtor was unable to increase the amount of funds deposited in the Development Account and, as result, on March 31, 2008, LCPI declared a

default.  The Trustee believes that LCPI knew or reasonably should have known that the SunCal Master Debtors would be unable to comply with the Amendment and come up with an additional $25 million in cash in 60 days, and that the Amendment was executed in part to provide a basis to declare the Lien Credit Agreements in default.  Just following the execution of the Amendment, LCPI resigned its position as the administrative agent on the Second Lien Credit Agreement and Third Lien Credit Agreement.

24.    The other defaults declared by LCPI are equally suspect.  LCPI declared a default because the SunCal Master Debtors missed an interest payment, even though there was approximately $25 million of cash in the Development Account, which should have been available to repay and prepay loans.  LCPI declared a default because the SunCal Master Debtors failed to timely deliver financial statements while under the control of LCPI's affiliate, Lehman Lakeside.  LCPI declared a default because the SunCal Master Debtors failed to pay a $100,000 administrative fee and maintain the necessary liquidity requirements, which was presumably caused by the fact that $144 million of the loan under the First Lien Credit Agreement was paid directly from escrow to the SunCal Parent Debtor's owners and, primarily, Lehman Lakeside. The Trustee believes that each of the defaults declared by LCPI was arguably caused by LCPI's conduct or was within the control of its affiliate, Lehman Lakeside.

F.    **Proposed Settlement with LCPI**

25.    On October 9, 2009, after months of negotiations, the Trustee filed a motion (the "Compromise Motion") to approve a term sheet globally resolving the disputes existing between the Trustee, the Official Committee of Unsecured Creditors for the SunCal Master Debtors (the "Committee"), and LCPI.  The Compromise Motion was initially heard on November 3, 2009. The California Bankruptcy Court continued the hearing on the Compromise Motion to December 17, 2009.  On November 25, 2009, the Trustee filed an ex parte motion to continue the hearing

on the Compromise Motion for an additional 30-45 days to allow the Trustee an opportunity to resolve the objections to the Compromise Motion. On December 2, 2009, the California Bankruptcy Court entered an order granting the Trustee's ex parte motion and continuing the hearing on the Compromise Motion to February 2, 2010.

26.     The Compromise Motion was, for various reasons, opposed by multiple third parties, including Fidelity National Title, Lehman Lakeside, and Gramercy.    The objections raised by certain of the opposing parties created a dispute between the Trustee and the Committee, on one hand, and LCPI, on the other hand, regarding the interpretation of what proved to be ambiguous provisions in the Term Sheet.  The Trustee believed that LCPI's interpretation of the Term Sheet was contrary to the parties' intent.  The parties attempted to negotiate revisions to the Term Sheet to resolve the dispute, but were unable to reach an agreement.  As a result, on January 25, 2010, the Trustee filed a notice of withdrawal of the Compromise Motion.  By letter dated March 30, 2010, LCPI notified the Trustee of its termination of the proposed settlement.

**G.     The Trustee's Sale Motion**

27.     The Trustee has received multiple letters of intent to acquire the SunCal Subsidiary Debtors' Properties free and clear of liens and interests, and the Trustee is in the process of finalizing an asset purchase agreement with a prospective buyer.  The Trustee intends to proceed with a sale pursuant to section 363(f) of the Bankruptcy Code subject to overbid.  In connection with the anticipated sale, the Trustee will seek the entry of an order from the California Bankruptcy Court providing for certain relief, including the following: (a) approving the form of Asset Purchase Agreement; (b) approving proposed bidding procedures; (c) authorizing the sale of the Properties free and clear of liens and interests, including the liens of LCPI; (d) prohibiting LCPI or any other creditor (e.g., a mechanic's lien claimant) from credit

bidding because its liens are in bona fide dispute; and (e) authorizing surcharge of the sale proceeds to pay the broker's fee and related costs of sale (including legal fees and costs) (collectively, the "Sale Motion Relief").

28.     Issues relating to the validity, extent and/or priority of the liens and interests, if any, of LCPI will most likely be a part of the Sale Motion Relief and may be considered by the California Bankruptcy Court, to the extent that stay relief is granted herein.

## III.
## JURISDICTION AND VENUE

29.     This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV.
## RELIEF REQUESTED

30.     By this Motion, the Trustee seeks, pursuant to Section 362(d) of the Bankruptcy Code and Bankruptcy Rule 4001, an order granting the Trustee relief from the automatic stay of LBHI and LCPI in order to (a) proceed with the Sale Motion Relief, (b) pursue and liquidate the Complaint Claims, but not to enforce any final judgment for monetary damages awarded against the Lehman Debtors, (c) resolve existing disputes as to the priority of certain mechanic's liens and liens asserted by LCPI, as First Lien Administrative Agent, and (d) avoid any other, unperfected liens that may be asserted by LCPI in personal property of the SunCal Master Debtors, such as utility deposits in the possession of third parties.

## V.
## ARGUMENT

31.     Bankruptcy Code Section 362(d)(1) provides that, "[o]n request of a party in

interest and after notice and a hearing, the court shall grant relief from the stay... such as by

terminating, annulling, modifying, or conditioning such stay for cause..." 11 U.S.C. § 362(d)(1).

The party seeking relief from the stay is required to make an initial showing of cause, and if

cause is shown, the burden is shifted to the debtor to disprove the existence of cause under

Section §362(g)(2).  *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

32.    This Court has broad discretion to grant relief from stay.  *In re Newman*, 196 B.R.

700, 703 (Bankr. S.D.N.Y. 1996) ("As to those areas protected by the automatic stay, relief from

the stay is liberally granted."); *In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992) ("The

Bankruptcy Court has wide discretion to grant the relief and lift the automatic stay.").

33.    The Second Circuit, in *In re Sonnax*, enunciated a number of factors that should

be considered in determining whether to modify the automatic stay.  *In re Curtis*, 40 B.R. 795

(Bankr. D. Utah 1984), catalogued a dozen factors to be weighed in deciding whether litigation

should be permitted to continue in another forum.  These are:

> (1)  whether relief would result in a partial or complete resolution
> of the issues; (2) lack of any connection with or interference with
> the bankruptcy case; (3) whether the other proceeding involves the
> debtor as a fiduciary; (4) whether a specialized tribunal with the
> necessary expertise has been established to hear the cause of
> action; (5) whether the debtor's insurer has assumed full
> responsibility for defending it; (6) whether the action primarily
> involves third parties; (7) whether litigation in another forum
> would prejudice the interests of other creditors; (8) whether the
> judgment claim arising from the other action is subject to equitable
> subordination; (9) whether movant's success in the other
> proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and
> economical resolution of litigation; (11) whether the parties are
> ready for trial in the other proceeding; and (12) impact of the stay
> on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286 (citing *Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984)).

34.     Only those factors relevant to the case need be considered, *Sonnax,* 907 F.2d at 1285, and a court need not assign them equal weight.  *In re Anton,* 145 B.R. at 770; *In re Cole*, 202 B.R. 356, 361 (Bankr. S.D.N.Y. 1996) (stating that "[t]he court should consider only those factors relevant to a particular case" and granting stay relief after disregarding 5 factors as "irrelevant to [the] motion").

35.     Here, factors 10 and 12–judicial economy and the balance of harms—are the most significant factors.  *In re G.S. Distrib., Inc.*, 331 B.R. 552, 568 (Bankr. S.D.N.Y. 2005) (lifting stay where, among other factors, judicial economy and balance of harms weigh in favor of granting relief from stay); *In re Deep*, 279 B.R. 653, 660 (Bankr. N.D.N.Y. 2002) (lifting automatic stay where 8 factors were either irrelevant or did not weigh strongly in either direction, but judicial economy and balance of harms warranted relief).  As discussed below, not only these two factors, but virtually all of the *Sonnax* factors, warrant relief from stay.

**B.     THE REQUESTED RELIEF WILL RESULT IN A COMPLETE RESOLUTION OF THE ISSUES BETWEEN THE TRUSTEE AND LCPI**

36.     The requested relief will result in a complete resolution of the issues between the Trustee and LCPI.  In fact, the requested relief is the only way to resolve the issues between the Trustee and LCPI.  LCPI has taken an extremely active role in the SunCal Master Bankruptcy Cases.  LCPI has moved for stay relief to foreclose on its asserted liens against the Properties and has routinely objected to the Trustee's use of cash collateral to maintain the Properties.  Presumably, LCPI will resume its stay relief efforts now that it has terminated the settlement with the Trustee.  Without the relief requested by this Motion, the Trustee cannot fully defend the SunCal Master Debtors' bankruptcy estates (the "SunCal Master Estates"), and cannot finally resolve the issues related to the validity and priority of LCPI's liens and claims, which it has asserted in the SunCal Master Bankruptcy Cases.

37.    The Trustee attempted to settle the estates' disputes with LCPI and avoid the need for litigation.  However, after much negotiation, the proposed settlement was not consummated.  As a result, the Trustee, in the exercise of his business judgment, has determined that he is left with no option but to proceed with the proposed sale of the Properties and to pursue the proposed complaint against LCPI.  Consequently, the Trustee is requesting relief from this Court so that he can fulfill his fiduciary duties and properly administer the SunCal Master Estates.  Such administration will require the resolution of the disputes related to the claims and liens asserted by LCPI in the SunCal Master Bankruptcy Cases, and the relief requested herein will enable the California Bankruptcy Court to fully and finally resolve those disputes.

38.    The Trustee submits that the disputes between SunCal Master Debtors and LCPI should be resolved in one forum to respect the notions of comity and judicial economy.  The California Bankruptcy Court is the appropriate forum to fully resolve all of the issues between the SunCal Master Estates and all of the Lehman Debtors because, as discussed in further detail below, the California Bankruptcy Court has the exclusive jurisdiction over the property of the SunCal Master Estates and, thus, is the only Court with the power to oversee the sale of the Properties.  In deciding whether authorize the sale of the Properties pursuant to section 363(f), the California Bankruptcy Court will need to analyze the disputes concerning the validity and priority of LCPI's liens.  Thus, to the extent that the Court grants stay relief to permit the sale of the Properties, the stay should be lifted for all purposes so as not to hamstring the California Bankruptcy Court in rendering complete relief relating to the sale of the Properties.  If the stay is not lifted for all purposes, the California Bankruptcy Court may not be able to grant full relief and the value of the Properties could be negatively affected, to the detriment of all interested parties.

39.    In sum, granting the Motion will result in the complete and final resolution of the disputes between the SunCal Master Estates and LCPI regarding the liens and claims of LCPI asserted in the SunCal Master Bankruptcy Cases.

## C.    THE REQUESTED RELIEF WILL NOT INTERFERE WITH THE LEHMAN BANKRUPTCY CASES

40.    The stay relief requested herein will not unduly interfere with the Lehman Bankruptcy Cases.    Again, LCPI is already an active participant in the SunCal Master Bankruptcy Cases.    LCPI moved for stay relief, which matter was set for an evidentiary hearing prior to the parties' commencement of settlement discussions.    Moreover, since settlement discussions between LCPI and the Trustee have ceased, LCPI has continued to object to the use of cash collateral to maintain and preserve the value of the Properties.    The Trustee expects that LCPI will re-notice its stay relief motion for an evidentiary hearing in the near future.    Thus, absent a settlement between the parties (which was attempted, but failed), litigation will be required to resolve the parties' disputes, and whether or not this Motion is granted such litigation will occur.    The question is whether the Trustee will be limited to litigating its claims related to LCPI's liens in the context of LCPI's stay relief motion, or whether the Trustee will be permitted to fully and finally resolve such issues in the context of an adversary proceeding commenced against LCPI.    In short, permitting the Trustee to defend the SunCal Master Debtors' bankruptcy estates as proposed herein will not cause a greater interference than LCPI's active involvement has already caused or will cause in the future.

41.    Also, there is no apparent reason to maintain the automatic stay herein to the detriment of the creditors of the SunCal Master Debtors Bankruptcy Cases.    LCPI and its affiliated debtors have already filed a plan and disclosure statement and the "breathing spell" afforded by the automatic stay is not as significant now as at the inception of these cases.    This

Court should allow the disputes between these parties to be adjudicated by the court that has already considered many relevant issues – the California Bankruptcy Court.

**D.    LCPI IS AN INSIDER AND OWED THE SUNCAL MASTER DEBTORS A FIDUCIARY DUTY**

42.     The SunCal Master Bankruptcy Cases involve LCPI as an insider and a fiduciary. LCPI is a per se insider of the SunCal Master Debtors by its own admission.  Pursuant to 11 U.S.C. § 101(31), the term "insider" includes an affiliate, or insider of an affiliate.  The term "affiliate" means any entity that "directly or indirectly owns, controls or holds" 20% or more of the ownership interests in the debtor.  See 11 U.S.C. § 101(2).  Lehman Lakeside, directly or indirectly, owns 90% of the equity interests in the SunCal Master Debtors and, therefore, is an affiliate of the SunCal Master Debtors.  LCPI is admittedly an affiliate of Lehman Lakeside.  As an affiliate of Lehman Lakeside, LCPI is an "insider of an affiliate" and thus, an insider of the SunCal Master Debtors.  As discussed above, LCPI used its position as an insider to maximize its return and enrich its affiliates at the expense of the SunCal Master Debtors and their unsecured creditors.  Moreover, the Trustee believes that the amount of control exercised by LCPI over the SunCal Master Debtors and their affairs gave rise to a fiduciary relationship. Accordingly, this factor weighs in favor of granting the Motion.

**E.    THE CALIFORNIA BANKRUPTCY COURT SHOULD HEAR THE DISPUTES BETWEEN THE PARTIES**

43.     The California Bankruptcy Court is well-suited to hear and is the appropriate central venue to litigate the disputes between the parties.  The Trustee requests stay relief to sell the Properties, and litigate the validity and priority of the liens asserted by LCPI against the Properties and the claims asserted by LCPI in the SunCal Master Bankruptcy Cases proceeding the California.  The California Bankruptcy Court is the appropriate (and perhaps only) central forum to resolve the parties' disputes because it has the exclusive jurisdiction over the assets of

the SunCal Master Estates.

44.    Pursuant to 28 U.S.C. § 1334(e), "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction -- of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate. . . ." This language, by vesting exclusive jurisdiction in the district where the bankruptcy is pending, divests all other courts of *in rem* jurisdiction over property that forms a part of the bankruptcy estate.  *See Gilchrist v. Gen. Elec. Capital Corp.*, 262 F.3d 295, 303 (4th Cir. 2001) (concluding that section 1334(e) provides exclusive *in rem* jurisdiction over estate property and thus divested another district court of jurisdiction to continue *in rem* receivership action over that property). The Supreme Court of the United States has also characterized 28 U.S.C. § 1334(e) as affecting *in rem* jurisdiction over the property of the bankruptcy estate.  *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447-48, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004) (A bankruptcy court's *in rem* jurisdiction permits it to "determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question. The proceeding is 'one against the world.'" 16 J. Moore, et al., *Moore's Federal Practice* § 108.70[1], p 108-106 (3d ed. 2004)).

45.    The function of 28 U.S.C. § 1334(e) is clear--to insure that only one court administers the bankruptcy estate of a debtor.  Otherwise, the orderly distribution of the assets of the debtor to holders of claims against the estate--one of the main functions of bankruptcy--could not be accomplished.  Congress has chosen to vest exclusive jurisdiction over the property of a bankruptcy estate in the "[t]he district court in which a case under title 11 is commenced or is pending."  *Williams v. Sears, Roebuck & Co. (In re Williams)*, 244 B.R. 858, 866 (S.D. Ga. 2000), *aff'd*, 34 F. Appx. 967 (11th Cir. 2002).

46.    The United States Court of Appeals for the Second Circuit has held that:

> A primary goal of bankruptcy law is to centralize adjudication of a
> bankrupt's estate into a single court. The Bankruptcy Code
> includes a broad grant of subject matter jurisdiction over a debtor's
> property.

*Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 96 (2d Cir.

2005).

47.    Because the California Bankruptcy Court has the exclusive jurisdiction over the

assets of the SunCal Master Estates, it is the only court that can order the sale of the Properties

and grant the Sale Motion Relief.  In determining whether to authorize the proposed sale of the

Properties under section 363(f) of the Bankruptcy Code, the California Bankruptcy Court will

have to analyze the validity and priority of the liens asserted by LCPI against the Properties and

determine whether those liens are in bona fide dispute.  Thus, the litigation of the parties'

disputes before the California Bankruptcy Court is, to some extent, inevitable.  Moreover, the

California Bankruptcy Court is already familiar with the parties' disputes due to the litigation and

briefing that occurred in connection with LCPI's stay relief motion as well as the volume of

pleadings filed by LCPI in the SunCal Master Debtor cases.  The California Bankruptcy Court,

with a full panoply of remedies and powers at its arsenal, should be allowed to fully consider all

issues relating to the Properties and the claims of all parties with any interest in the Properties,

and to take the steps necessary to fully and finally resolve those issues.

48.    For these reasons, the California Bankruptcy Court is the appropriate central

venue to resolve the disputes between the Trustee and LCPI.

### F.    THE LITIGATION IN ANOTHER FORUM WILL NOT PREJUDICE INTERESTS OF THE LEHMAN DEBTORS' CREDITORS

49.    The only creditors that stand to be prejudiced are the creditors of the SunCal

Master Debtors if this Motion is denied.   The Trustee has valid and meritorious claims to

equitably subordinate LCPI's claims and avoid LCPI's liens.  Absent the requested stay relief, the Trustee cannot move the SunCal Master Bankruptcy Cases forward and cannot ultimately defend against LCPI's request for stay relief.  Moreover, the requested relief will not prejudice the creditors of LCPI.  Again, LCPI has already interjected itself in the SunCal Master Bankruptcy Cases by asserting claims, seeking stay relief, and objecting to use of cash collateral. The Trustee is merely seeking the relief necessary to fully defend himself in the SunCal Master Bankruptcy Cases and finally resolve LCPI's involvement therein.

### G. THE TRUSTEE WILL NOT OBTAIN A CLAIM SUBJECT TO EQUITABLE SUBORDINATION OR LIEN SUBJECT TO AVOIDANCE

50.     The pursuit of the Trustee's claims against LCPI will not result in the Trustee holding a claim subject to subordination or a lien subject to avoidance.  These factors focus on whether lifting the automatic stay to allow the subject litigation to proceed would be a waste of judicial resources, i.e., because the claim to be liquidated will ultimately be subordinated or the lien to be obtained will ultimately be avoided.  Here, allowing the Trustee to proceed will not be a waste of judicial resources.  The sale of the Properties and the avoidance of LCPI's liens and the subordination of LCPI's claims will result in substantial unencumbered cash that can be distributed to the general unsecured creditors of the SunCal Master Bankruptcy Cases.

### H. INTERESTS OF JUDICIAL ECONOMY AND EXPEDITIOUS AND ECONOMICAL RESOLUTION OF LITIGATION SUPPORT GRANTING THE MOTION

51.     The interests of judicial economy support granting the Motion.  The SunCal Master Bankruptcy Cases have already been pending for almost two years.  The majority of that time was spent negotiating with LCPI on a consensual resolution of the parties' disputes. Because a settlement could not be reached, the Trustee has no choice but to proceed with the sale of the Properties and litigation with LCPI.  However, the Trustee cannot move forward in the SunCal Master Bankruptcy Cases without the relief requested by this Motion.  Maintaining the

automatic stay would necessarily impede the Trustee's administration of the SunCal Master Estates because the Trustee would be unable to effectuate a principal tool in bankruptcy administration– the sale of the Properties. The Trustee will be forced to maintain the *status quo* and continue to use cash collateral to preserve the value of the Properties while defending against LCPI's attempts to obtain stay relief and foreclose on the Properties. Since LCPI has already alleged that the SunCal Master Bankruptcy Cases are "at a complete standstill" and have objected to the use of cash collateral, the continued imposition of the automatic stay will have significant consequences for the Trustee's actions which could impair the value of the estates. Certainly, the interests of judicial economy and the expeditious and economical resolution of litigation are furthered by allowing the Trustee to move the SunCal Master Bankruptcy Cases forward to their ultimate conclusion.

52.    As discussed above, the California Bankruptcy Court provides a single, expeditious forum for resolution of the disputed issues between the Trustee and LCPI. The legal and factual disputes between the Trustee and LCPI will be addressed in connection with the proposed sale motion, LCPI's stay relief motion (if re-noticed), and in connection with the Trustee's proposed complaint. The California Bankruptcy Court is already familiar with the issues between the parties due to the litigation and briefing that occurred in connection with LCPI's stay relief motion as well as the volume of pleadings filed by LCPI in the SunCal Master Debtor cases. Moreover, further litigation of the disputes between LCPI and the Trustee before the California Bankruptcy Court is unavoidable as certain proceedings, such as the proposed sale motion, can only take place in that forum. It would be both incongruous and inefficient for the California Bankruptcy Court to oversee the sale of the Properties, but the automatic stay being maintained to allow this Court to consider the liens and interests of LCPI in the Properties.

Apart from the extraordinary costs in such a process, the Trustee submits that bidding could be chilled or adversely affected as there would not be one forum to decide all necessary issues and there could be protracted litigation regarding sale issues.

53.    For these reasons, the California Bankruptcy Court is the appropriate central venue to resolve the disputes between the Trustee and LCPI.

**I.    THE RELIEF REQUESTED IN THE MOTION IS NECESSARY TO PERMIT THE PARTIES TO PROCEED TO TRIAL**

54.    While the parties are not currently ready for trial, they will never be unless the Motion is granted.  Again, the Trustee cannot proceed without the requested stay relief.  Once the Motion is granted, the Trustee will file the Complaint and will expeditiously move forward with the proceedings contemplated herein.

**J.    THE IMPACT OF THE STAY ON THE PARTIES AND THE BALANCE OF HARMS SUPPORTS GRANTING THE MOTION**

55.    The balance of harms supports granting the Motion.  LCPI will not be unduly harmed or prejudiced by the relief requested herein.  LCPI is already an active and willing participant in the SunCal Master Bankruptcy Cases.  The relief requested herein is directed against the claims (and the underlying debts and liens described therein) that were affirmatively filed by LCPI against the SunCal Master Debtors, and that must be addressed for the SunCal Master Bankruptcy Cases to proceed.  LCPI inserted itself into the SunCal Master Bankruptcy Cases when it sought relief from stay and filed proofs of claim against their estates.  The Trustee expects that LCPI will re-notice its stay relief motion for an evidentiary hearing.  Thus, whether the Motion is granted or not, litigation between the parties will occur.

56.    In contrast, the creditors of the SunCal Master Bankruptcy Cases will be harmed if the Motion is not granted.  Because the Trustee's efforts to settle with LCPI have failed, the Trustee has no choice but to proceed with litigation.  Thus, the Trustee cannot proceed with the

administration of the SunCal Master Bankruptcy Cases without the requested stay relief. Moreover, if the Motion is not granted, the Trustee cannot properly defend the SunCal Master Debtors' estates against LCPI's attempts to obtain stay relief and foreclose on the Properties. The Trustee opposed LCPI's stay relief motion, in part, because the liens and claims of LCPI are in bona fide dispute. However, if the Motion is not granted, the disputes regarding LCPI's liens cannot be resolved and it will only be a matter of time before LCPI is able to obtain stay relief. If that occurs, the general unsecured creditors of the SunCal Master Bankruptcy Cases will be irreparably harmed.

57.    In addition, the statute of limitations for the Trustee to commence an avoidance action is fast approaching. Pursuant to 11 U.S.C. § 546, avoidance actions must be commenced before the later of 2 years after entry of the order for relief or 1 year after a trustee's appointment. Here, the order for relief was entered and the Trustee was appointed on the same date, October 30, 2008. Accordingly, pursuant to § 546, the Trustee must commence any avoidance action against LCPI by October 30, 2010. Thus, if the Trustee is not granted stay relief to proceed with the estates' avoidance claims against LCPI in the near future, such claims could be barred forever. The delay in commencing an action against LCPI was not due to a lack of diligence on the part of the Trustee, but due to the time the Trustee spent first pursuing a settlement with LCPI. Thus, if the Motion is not granted (and granted soon) the creditors of the SunCal Master Debtors' estates will be irreparably harmed.

58.    In sum, the majority of the *Sonnax* factors overwhelmingly support granting the Motion. The Trustee requests very limited stay relief as is necessary to administer the assets of the SunCal Master Bankruptcy Cases and fully and finally resolve the estates' disputes with LCPI. The Trustee, in good faith, attempted to negotiate a settlement with LCPI. However, such

settlement efforts have stalled. Now, the Trustee has no choice but to proceed with the relief discussed in the Motion, and to do so quickly. If the Motion is not granted, and the Properties are lost to foreclosure, the creditors of the SunCal Master Debtors will be irreparably harmed.

## VI.
## WAIVER OF 14-DAY STAY UNDER BANKRUPTCY RULE 4001(A)(3)

59.     In light of the urgency of the relief requested herein, the Trustee requests that the Court waive the 14-day stay requirement of Bankruptcy Rule 4001(a)(3) and provide that any order granting the relief requested herein become effective immediately upon entry.

## VII.
## NOTICE

60.     Notice of this motion has been served, in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for this case [Docket No. 2837], on (i) the chambers of the Honorable James M. Peck ("Chambers"), One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, (Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq.), attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis); (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.), attorneys for the official committee of unsecured creditors appointed in these cases (the "Committee"); (v) the attorneys for any other official committee(s) appointed in these chapter cases; (vi) any person or entity with a particularized interest in the subject matter of a certain Document (collectively, the "Standard Parties"), and (vii) the Rule 2002 List. The

Trustee submits that no further notice need be given and that the notice provided is sufficient.

## VIII.
## WAIVER OF MEMORANDUM OF LAW

61.      This Motion sets forth the applicable authority upon which it relies herein and does not raise novel issues of law.  Thus, the Trustee respectfully requests that the Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted in support of the Motion.

62.      No prior request for the relief sought herein has been made to this or any other Court.

## IX.
## <u>CONCLUSION</u>

For all of the foregoing reasons, the Trustee requests that the Court grant the Motion in

its entirety and grant such other and further relief as is just and proper.


Dated: June 17, 2010                    Respectfully submitted,

                                        WEILAND, GOLDEN, SMILEY, WANG EKVALL &
                                        STROK, LLP

                                             650 Town Center Drive, Suite 950
                                             Costa Mesa, California  92626
                                             Telephone: (714) 966-1000
                                             Facsimile: (714) 966-1000
                                             Attorneys for Alfred H. Siegel,
                                             Chapter 11 Trustee

                                                       and

                                        SILLS CUMMIS & GROSS P.C.

                                             One Rockefeller Plaza
                                             New York, New York 10020
                                             Telephone: 212-643-6982
                                             Facsimile: 212-643-6500

                                             Local Counsel for Alfred H. Siegel,
                                             Chapter 11 Trustee


                                        By:_____/s/ Andrew H. Sherman

                                             Andrew H. Sherman

EXHIBIT A

Weiland, Golden, Smiley, Wang Ekvall &
Strok, LLP
Evan D. Smiley, CA State Bar No. 161812
esmiley@wgllp.com
Robert S. Marticello, CA State Bar No. 244256
rmarticello@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California  92626
Telephone: 714-966-1000
Facsimile: 714-966-1002

Sills Cummis & Gross P.C.
One Rockefeller Plaza
New York, New York 10020
Telephone:  212-643-7000
Facsimile:  212-643-6500

Attorneys for Alfred H. Siegel,
Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------  x
**In re**                                                  :        **Chapter 11**
                                                           :
**LEHMAN BROTHERS HOLDINGS, INC., et al,**                 :        **Case No. 08-13555 (JMP)**
                                                           :
                                                           :
                        **Debtors.**                       :        **(Jointly Administered)**
-------------------------------------------------------------------  x

## ORDER APPROVING MOTION OF THE CHAPTER 11 TRUSTEE
## OF THE SUNCAL MASTER DEBTORS FOR AN ORDER
## GRANTING RELIEF FROM THE AUTOMATIC STAY

Upon the Motion of Alfred H. Siegel, the chapter 11 trustee (the "Trustee") of the jointly

administered bankruptcy cases of LBREP/L-SunCal Master I, LLC (the "SunCal Parent

Debtor"), and LBREP/L-SunCal McAllister Ranch, LLC, LBREP/L-SunCal McSweeney Farms,

LLC, and LBREP/L-SunCal Summerwind Ranch, LLC  (collectively, the "SunCal Subsidiary

Debtors" and together with the SunCal Parent Debtor, the "SunCal Master Debtors"), currently

1768873 v7

pending in the United States Bankruptcy Court, Central District of California, Santa Ana

Division, before Judge Erithe A. Smith for an Order Granting Relief from the Automatic Stay

(the "Motion"), the Court finds that (i) it has jurisdiction over the matters raised in the Motion

pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. §

157(b)(2); (iii) the relief requested in the Motion is proper and should be granted; (iv) proper and

adequate notice of the Motion and the Hearing thereon has been given and no other or further

notice is necessary; and (v) upon the record herein after due deliberation thereon, good and

sufficient cause exists for the granting of relief as set forth herein,

   IT IS HEREBY ORDERED THAT:

   1.      The Motion is granted;

   2.      The automatic stay under § 362(a) of the United States Bankruptcy Code in the

above-captioned cases, to the extent applicable, is modified to permit the Trustee to:

          a.      Sell the Properties under 11 U.S.C. § 363 and 363(f) free and clear of all

liens, claims and interests with such interests attaching to the proceeds of sale;

          b.      Commence an adversary proceeding before the California Bankruptcy

Court against LCPI to (i) subordinate LCPI's claims in the SunCal Master Bankruptcy Cases and

cause LCPI's liens against property of the SunCal Master Debtors' estates to be transferred to the

estates, (ii) avoid LCPI's liens against the Properties and preserve those liens for the benefit of

the SunCal Master Debtors' bankruptcy estates, and (iii) obtain a final judgment for money

damages against LCPI, however, the automatic stay shall not be terminated to allow the Trustee

to enforce any judgment for money damages obtained against LCPI; and

    c.  Commence an adversary proceeding before the California Bankruptcy Court to avoid any liens asserted by LCPI in cash deposits of the SunCal Master Debtors currently in the possession of third parties;

    3.  The modification of the automatic stay, to the extent applicable, granted by this Order shall take effect immediately upon entry of this Order and shall not be stayed by operation of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure; and

    4.  The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: New York, New York
   July ___, 2010

            _____
            HONORABLE JAMES M. PECK
            UNITED STATES BANKRUPTCY JUDGE