Hearing Date and Time:  July 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  July 2, 2010 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
In re                                                                          :    **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :    **08-13555 (JMP)**
:
Debtors.                        :    **(Jointly Administered)**
:
-----------------------------------------------------------------x

**NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC.
PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 6004 FOR AUTHORIZATION TO SELL ITS
LIMITED PARTNERSHIP INTEREST IN NEW SILK ROUTE PE ASIA FUND, L.P.**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI" and together with its affiliated debtors in the above-

referenced chapter 11 cases, the "Debtors"), pursuant to section 363 of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for authorization to sell LBHI's limited partnership interest

in New Silk Route PE Asia Fund, L.P. will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs

House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy

Court"), on **July 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

US_ACTIVE:\43403224\08\58399.0003

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Lori R. Fife, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) Kirkland & Ellis, LLP, 300 North LaSalle, Chicago, IL 60654, Attn:  Marc J. Carmel, so as to be so filed and received by no later than **July 2, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: June 18, 2010
     New York, New York

/s/ Lori R. Fife
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time: July 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: July 2, 2010 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
**In re**  :  **Chapter 11 Case No.**
: 
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,  :  **08-13555 (JMP)**
: 
Debtors.  :  **(Jointly Administered)**
: 
------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC.
PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 6004 FOR AUTHORIZATION TO SELL ITS
LIMITED PARTNERSHIP INTEREST IN NEW SILK ROUTE PE ASIA FUND, L.P.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and together with its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), files this motion (the "Motion") and respectfully represents:

**Preliminary Statement**

1. By this Motion, LBHI seeks authorization to sell its limited partnership interest (the "Interest") in New Silk Route PE Asia Fund, L.P. (the "Fund") to Berkeley Investment Ltd. ("Berkeley"). Pursuant to a transfer agreement, dated June 4, 2010 (the

US_ACTIVE:\43403224\08\58399.0003

"Agreement"), negotiated among LBHI, Berkeley, and the Fund's general partner, New Silk Route PE Associates, L.P. (the "General Partner"), (i) Berkeley will pay LBHI $441,226.65 (the "Purchase Price") and assume LBHI's outstanding and future obligations to contribute capital to the Fund, and (ii) the General Partner will withdraw its claim (proof of claim number 11042, the "Claim") against LBHI relating to obligations arising from LBHI's Interest.  A copy of the Agreement is attached hereto as Exhibit A.  As set forth below, LBHI believes, in its business judgment, that a sale of the Interest pursuant to the Agreement presents the best opportunity to realize value from a diminishing asset.  Absent the relief requested, (i) the value of the Interest will continue to erode as, inter alia, pro rata fees and expenses of the Fund and other charges are accruing against LBHI's investment, (ii) LBHI will recover none of the amount it has already funded, and (iii) LBHI may be liable and ultimately required to make distributions to the Fund for its Claim.

**Background**

2.  Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

4. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

5. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. On March 11, 2010, the Examiner filed its report with the Court (the "Examiner's Report") [Docket No. 7531].

6. On March 15, 2010, the Debtors filed their joint chapter 11 plan pursuant to section 1121 of the Bankruptcy Code [Docket No. 7572]. On April 14, 2010, the Debtors filed their revised joint chapter 11 plan [Docket No. 8330] and disclosure statement for their revised joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code [Docket No. 8332].

## Jurisdiction

7. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

8. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

9. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### LBHI's Interest in the Fund

10. Prior to the Commencement Date, LBHI invested in many private equity funds. One of such funds was the Fund, which is an approximately $1.4 billion India-focused first time private equity fund. As of December 31, 2009, the Fund had twelve portfolio companies, with investments spanning industries including infrastructure, manufacturing, telecom, education, media, and heath care.

11. On April 27, 2007, LBHI and the General Partner entered into that certain Amended and Restated Agreement of Exempt Limited Partnership of the Fund (as amended by Amendment No. 1, dated November 13, 2007, Amendment No. 2, dated July 2, 2008, Amendment No. 3, dated December 31, 2008, and Amendment No. 4, dated October 8, 2009, and as further amended or modified from time to time pursuant to its terms, the "Partnership Agreement"). LBHI and the General Partner are also parties to a Subscription Agreement accepted by the General Partner on April 27, 2007 (the "Subscription Agreement"), pursuant to which LBHI became a limited partner in the Fund and committed to invest in the Fund. Currently, LBHI has an Interest in the Fund represented by a commitment to contribute to the

capital of the Fund of up to $125 million (the "Commitment"), subject to the terms and conditions of the Partnership Agreement.

12. Prior to the Commencement Date, LBHI funded approximately $28 million of its Commitment (i.e., approximately 23% of the total Commitment). As of the Commencement Date, the unpaid portion of LBHI's Commitment was $97 million (the "Unfunded Commitment").

**Postpetition Capital Calls**

13. The Fund made a capital call (the "First Postpetition Capital Call") of its investors in October 2008, for which LBHI was requested to pay approximately $3.7 million on or before October 15, 2008. Because LBHI did not make any payment in respect of the First Postpetition Capital Call, the Fund sent LBHI a default notice on or about October 24, 2008, but the Fund assessed no penalties other than accrued interest on the amount outstanding.

14. The Fund subsequently made four additional capital calls of its limited partners, for which LBHI was requested to fund approximately $43 million (excluding accrued interest) in the aggregate. LBHI did not fund any of these subsequent capital calls.

**Decision to Sell**

15. Pursuant to the Partnership Agreement, if LBHI defaults on a capital call, the Fund is entitled to, among other remedies, (i) charge interest on the defaulted amount at annual rate of the prime rate plus 600 basis points per annum, (ii) sue to collect the overdue amount plus interest on the overdue amount, (iii) sell the Interest on behalf of LBHI to a third party, the General Partner, or an affiliate thereof in exchange for a non-interest bearing, non-recourse 10-year promissory note, due to LBHI in an amount no greater than 10% of its fair value capital account, (iv) allocate losses but not gains to LBHI's capital account, (v) withhold

distributions from the Fund, and (vi) deduct from LBHI's capital account pro rata fees and expenses on the full Commitment.

16. Following the First Postpetition Capital Call, LBHI informed the Fund that LBHI desired to sell its Interest as quickly as possible. Given the dramatic decline in markets worldwide, including in India, and the large Unfunded Commitment, however, LBHI determined that it would be very difficult to sell the Interest to a secondary buyer and any offer it received would be at a steep discount to net asset value (which is determined on a periodic basis by the General Partner). Nonetheless, LBHI approached over 40 potential secondary buyers. LBHI did not receive any interest.

17. On March 25, 2010, the General Partner informed LBHI that Berkeley was interested in purchasing the Interest. Berkeley agreed to pay $441,226.65 for the Interest, which had a net asset value as of December 31, 2009, of approximately $17.6 million. Pursuant to the Agreement, Berkeley's purchase of the Interest will result in payment of $441,226.65 in proceeds to LBHI. In addition, because Berkeley will assume LBHI's obligations under the Subscription Agreement and the Partnership Agreement, the Agreement will result in an elimination of LBHI's ongoing obligations and any claims relating to the $97 million Unfunded Commitment, plus accrued interest, among other potential claims. As such, the General Partner will also withdraw its Claim against LBHI.

18. If LBHI does not enter into the Agreement, it will likely not recover any amount on account of its Interest and, indeed, will face a significant claim.[1] A combination of

---

[1] The Claim has been assigned number 11042 by LBHI's claims and noticing agent. The General Partner asserted in the Claim certain of the Fund's rights upon default (described in paragraph 15 herein) and payment for two unfunded postpetition capital calls (totaling approximately $15 million). LBHI reserves all rights it may have to dispute the amount and validity of the Claim in the event that it is not withdrawn.

onerous default remedies, ongoing management fees and expenses based on the amount of the full Commitment (which will total approximately $15 million over the remaining life of the Fund), the continued allocation of losses but not gains, withholding of distributions, and the continued accrual of interest (currently over $2 million) will likely offset any remaining value of the Interest.  Thus, in the absence of a sale, the Interest will have no value to LBHI's estate, and LBHI will recoup none of the $28 million it has already funded.  In addition, the Unfunded Commitment and related claims will remaining outstanding.

## Relief Requested

19.     LBHI seeks, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 6004, approval to sell its Interest in the Fund to Berkeley pursuant to the Agreement in order to realize value and eliminate potential liability on a diminishing asset of LBHI's for the benefit of its estate.

## The Relief Requested is Warranted and in the Best Interests of LBHI and its Estate

### A.     Sale of the Property

20.     Ample authority exists for approval of the relief requested.  Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

21.     Courts in the Second Circuit and others, in applying this section, have required that the sale or disposition of a debtor's assets be based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge determining a § 363(b) application must find from the evidence presented a good business reason to grant such application); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel*

*Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same). It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)). Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (i) the debtor has provided interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. *In re Betty Owens Sch.*, 1997 U.S. Dist. Lexis 5877, *12 (S.D.N.Y. 1997); *accord In re Decora Indus., Inc.*, Case No. 00-4459, 2002 WL 32332749, *3 (Bankr. D. Del. May 20, 2002).

22. LBHI's decision to sell its Interest is an exercise of sound business judgment. Since the Commencement Date, LBHI's Principal Investments & Private Equity Group marketed the Interest, including the Unfunded Commitment, to over 40 potential secondary buyers but did not receive any interest. The General Partner also made inquiries on LBHI's behalf. The parties solicited included secondary private equity funds, family office funds, sell-side advisors, and brokers of secondary private equity interests. Meanwhile, LBHI continues to incur liabilities through the accrual of management fees and interest without

concomitant benefits because of the allocation of only losses (but not gains) to or distributions on account of its Interest.  LBHI has carefully evaluated the benefits and burdens of holding the Interest and, upon a due and proper exercise of its business judgment, has determined that LBHI's possession of the Interest does not represent value to the estate.  A sale of the Interest will stop the accrual of management fees and interest against LBHI with respect to the Interest, eliminate the Unfunded Commitment, and provide LBHI with $441,226.65 in proceeds.  LBHI believes it is receiving fair and reasonable value for the Interest.  Further, as described below, Berkeley is proceeding in good faith.  The Agreement, therefore, should be approved.

**B.     Private Sale Subject to Higher or Better Offers**

23.     Bankruptcy Rule 6004(f)(1) permits private sales by a debtor.  FED. R. BANKR. P. 6004(f)(1).  Courts, including this Court, often allow a chapter 11 debtor to sell assets outside the ordinary course of business by private sale when the debtors demonstrate that the sale is permissible pursuant to section 363(b) of the Bankruptcy Code.  *See, e.g., In re Lehman Brothers Holdings Inc.*, Ch. 11 Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 18, 2008), *In re Lehman Brothers Holdings Inc.*, Ch. 11 Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Feb. 24, 2009), *In re Lehman Brothers Holdings Inc.*, Ch. 11 Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Jan. 28, 2009); *Palermo v. Pritam Realty, Inc. (In re Pritam Reality, Inc.),* 233 B.R. 619 (D.P.R. 1999); *In re Condere Corp.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

24.     LBHI's decision to pursue a private sale is supported by the fact that LBHI has fully explored potential sales of its Interest.  The time and efforts associated with marketing the Interest for sale at a public auction would needlessly duplicate the previous efforts

made by LBHI and the General Partner and would likely exceed any benefit of a public sale to LBHI, its estate, or its creditors.

25. Nonetheless, consistent with LBHI's fiduciary duties to ensure the greatest return to creditors and its estate and with the Debtors' practice in certain other private sales conducted in their chapter 11 cases, the proposed sale remains subject to a higher or better offer. **Any party interested in submitting a higher or better offer for the Interest must submit** an offer so as to be **received by** Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, 38th Floor, New York, New York, 10019, Attn: Ashvin Rao, with a copy to Weil Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Lori R. Fife, Esq., attorneys for LBHI, by no later than **July 2, 2010 at 4:00 p.m. (Prevailing Eastern Time)**. LBHI retains the right to determine, in its sole discretion, the highest or otherwise best offer, and to reject any offer.

26. Subjecting the proposed transaction to higher or better offers will ensure that the consideration to be paid by Berkeley or by a party who submits a higher or better offer that is ultimately accepted by LBHI (i) will represent the highest or best offer for the Interest; (ii) will be fair and reasonable; (iii) may provide for a greater recovery for LBHI's creditors than would be provided by any other practical, available alternative; and (iv) will constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and non-bankruptcy law.

C. **Sale Free and Clear of Liens, Claims, Encumbrances and Interests**

27. In the interest of attracting the best offers, the sale of the Interest should be free and clear of any and all liens, claims, encumbrances, and other interests in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances and other

interests attaching to the proceeds of the sale.  Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property of its estate "free and clear of any interest in such property of an entity other than the estate" if applicable nonbankruptcy law permits sale of such property free and clear of such interest, if such entity consents, if such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, if such interest is in bona fide dispute, or if such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  11 U.S.C. § 363(f)(1) – (5).

28.    LBHI is not aware of any party secured by the Interest.  Nevertheless, with respect to any party asserting a lien, claim, encumbrance, or other interest against the Interest, LBHI anticipates that it will be able to satisfy one or more of the conditions set forth in section 363(f).  Thus the sale of the Interest free and clear of liens, claims, encumbrances, and other interests will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code.

D.    **Protections as a Good Faith Purchaser**

29.    Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'"  *In re Chateaugay Corp.*, 1993 U.S. Dist. Lexis 6130, *9

(S.D.N.Y. 1993) (quoting *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

30.   The sale of the Interest is the result of arm's length, good faith negotiations with Berkeley.  Berkeley has not, in connection with the proposed transaction, engaged in any conduct that constitutes a lack of good faith.  Neither Berkeley nor any of its affiliates or insiders is associated with the Debtors in any way.  Accordingly, Berkeley is entitled to the protections of section 363(m) of the Bankruptcy Code.  *See In re Gucci*, 126 F.3d 380 (2d Cir. 1997) (a good faith purchaser is shown by integrity of his conduct during the course of the sale proceedings); *In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998) (a determination of bad faith must be based on untoward conduct by the purchaser, such as fraud or collusion) (citing *Gucci*, 126 F.3d 380); *Community Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985) (a good faith purchaser is one that has not engaged in conduct involving fraud or collusion nor has sought to take grossly unfair advantage of other bidders).  In the event a higher or better offer is ultimately accepted by LBHI, LBHI intends to request a finding that such bidder is similarly a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

**Notice**

31.  No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to Berkeley; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

32.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE LBHI respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: June 18, 2010
       New York, New York

/s/ Lori R. Fife
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession