## Exhibit A

**Agreement**

**EXECUTION COPY**

## **TRANSFER AGREEMENT**

THIS TRANSFER AGREEMENT (this "Agreement") is entered into on June 4, 2010, by and among Lehman Brothers Holdings Inc. (the "Transferor"), Berkeley Investment Ltd. (the "Transferee"), and New Silk Route PE Associates, L.P., a Cayman Islands exempted limited partnership and the general partner (in its capacity as general partner, the "General Partner") of New Silk Route PE Asia Fund, L.P., a Cayman Islands exempted limited partnership (the "Fund").  The closing of the transactions contemplated by this Agreement shall take place on the first date following the satisfaction of all of the conditions to closing set forth in Section 3(b) below that is also the last day of the Fund's fiscal quarter (the "Closing Date").

The Transferor is a debtor-in-possession under title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and filed a voluntary petition for relief ender chapter 11 of the Bankruptcy Code on September 15, 2008 in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

The Transferor and the General Partner are parties to that certain Amended and Restated Agreement of Exempted Limited Partnership of the Fund, dated April 27, 2007, as amended by Amendment No. 1 dated November 13, 2007, Amendment No. 2 dated July 28, 2008, Amendment No. 3 dated December 31, 2008, and Amendment No. 4 dated October 8, 2009 (as further amended or modified from time to time pursuant to its terms, the "Partnership Agreement").  Terms defined in the Partnership Agreement and not otherwise defined herein shall have the meanings ascribed to them in the Partnership Agreement.  The Transferor and the General Partner are parties to a Subscription Agreement accepted by the General Partner on April 27, 2007 (the "Subscription Agreement"), pursuant to which the Transferor became a Limited Partner in the Fund, and committed to invest in the Fund.  Immediately prior to this Agreement, the Transferor has a limited partner interest in the Fund represented by a Commitment to the Fund of $125,000,000 (the "Interest").  The Transferor desires to transfer and assign, and the Transferee desires to assume, all of the Transferor's rights and obligations with respect to 100% of the Transferor's limited partnership interest in the Fund to be acquired by it hereunder (the "Transferred Interest") under the Partnership Agreement and the Subscription Agreement, including the Transferor's obligation under the Subscription Agreement to pay the unpaid portion of the Transferor's Commitment with respect to the Transferred Interest (including, without limitation, any interest owing thereon) in accordance with the terms of the Partnership Agreement (which transfer, assignment and assumption shall be effective on the Closing Date).

In accordance with the terms and conditions of the Partnership Agreement, the Transferor requests the consent of the General Partner for the transfer and assignment of the Transferred Interest as described herein and the General Partner grants such consent, subject to the conditions provided herein.

The parties hereto agree as follows:

1.    <u>Representations and Warranties of the Transferor</u>.  The Transferor hereby represents and warrants to the Transferee and the General Partner, on the date of this Agreement and on the Closing Date, as follows:

(a)    Subject to any approval required from the Bankruptcy Court, the Transferor has full legal capacity, power and authority to execute and deliver this Agreement and to perform the Transferor's obligations hereunder, and this Agreement has been duly executed and delivered by the Transferor.

(b)    Subject to any approval required from the Bankruptcy Court, the Transferor is authorized, empowered and qualified to execute this Agreement and consummate the transactions contemplated hereby.  The individual signing this Agreement and all agreements contemplated hereby on the Transferor's behalf has been duly authorized to do so.

(c)    Subject to any approval required from the Bankruptcy Court, the execution and delivery of this Agreement, the consummation of the transactions contemplated hereby and the performance of the Transferor's obligations hereunder will not conflict with, or result in any violation of or default under, any provision of any governing instrument applicable to the Transferor, any agreement or other instrument to which the Transferor is a party or by which the Transferor or any of its properties is bound, or any judgment, decree, order, statute, rule or regulation applicable to the Transferor or the Transferor's business or properties.

(d)    Upon the consummation of the transactions contemplated hereby, the Transferee will receive good and valid title to the Transferred Interest, free and clear of any lien, liability or encumbrance (other than the obligations of the Transferee assumed (i) hereunder to pay the unpaid portion of the Transferor's capital commitment in accordance with the terms of the Partnership Agreement and the Subscription Agreement and (ii) under the Partnership Agreement), and, subject to the terms of the Partnership Agreement, the Transferee will be entitled to exercise all rights and receive all benefits to which the Transferor has heretofore been entitled as a limited partner of the Fund with respect to the Transferred Interest.

(e)    The Transferor has had an opportunity to ask the General Partner questions and receive answers regarding the Fund and the Fund's investments and has had full access to such other information concerning the Fund and the Fund's investments as the Transferor has requested.

(f)    Except for any alterations to this Agreement that have been clearly marked or otherwise specifically identified in writing to the General Partner prior to the execution of this Agreement, the Transferor has not altered or otherwise revised this Agreement in any manner from the version initially received by the Transferor nor, to the knowledge of the Transferor, has the Transferee altered or otherwise revised this Agreement in any manner from the version initially received by the Transferor.

(g)    The Transferor has conducted its own independent evaluation and made its own analysis as it has deemed necessary, prudent or advisable in order for it to make its own determination and decision to transfer the Transferred Interest hereunder, enter into this Agreement and consummate the transactions contemplated hereby.  The Transferor is entering

into this Agreement and the transactions contemplated hereby relying entirely upon such independent evaluation and analysis and without reliance upon any oral or written representations and warranties of any kind or nature by the General Partner, or its general partner, or any of their respective direct or indirect equity owners, shareholders, directors, officers, agents, partners, managers, members or employees or by the Transferee (other than as provided in <u>Section 2</u> below).

(h)     The Transferor acknowledges that it is transferring the Transferred Interest at a significant discount to the most recent net asset value provided by the General Partner in respect of the Transferred Interest and that the Purchase Price is significantly less than the amount of Capital Contributions made by the Transferor to the Fund as of the date hereof.  In addition, the Transferor acknowledges that the net asset value of the Transferred Interest may increase and, upon sale of the Fund's portfolio companies, lead to significant profits.

(i)     The Transfer of the Transferred Interest:

(i)     is not being effected on or through (A) a U.S. national, regional or local securities exchange, (B) a foreign securities exchange or (C) an interdealer quotation system that regularly disseminates firm buy or sell quotations by identified brokers or dealers (including, without limitation, the NASDAQ System);

(ii)     is not being made by, through or on behalf of (A) a person or entity, such as a broker or a dealer, making a market in interests in the Fund or (B) a person or entity who makes available to the public bid or offer quotes with respect to interests in the Fund or stands ready to effect buy or sell transactions at quoted prices for itself or on behalf of others; and

(iii)     is not being effected on or through an "established securities market" or a "secondary market or the substantial equivalent thereof" within the meaning of U.S. Department of Treasury Reg. § 1.7704-1.

(j)     The Transferor did not enter into a binding agreement to sell the Transferred Interest prior to the 15th calendar day after, and the closing of the sale of the Transferred Interest will not occur prior to the 45th calendar day after, the date the Transferee initiated negotiations with the Transferor, and the purchase price and terms and conditions regarding the transfer of the Transferred Interest were determined by the Transferee and Transferor, after some discussions between them.

(k)     The Transferor acknowledges that (i) the General Partner has retained Kirkland & Ellis LLP, Walkers and AZB Partners (the "<u>Law Firms</u>") as legal counsel in connection with the formation of the Fund and related matters (other than the transactions contemplated by this Agreement) and (ii) the Transferee has retained Kirkland & Ellis LLP as legal counsel in connection with the transactions contemplated by this Agreement.  Furthermore, the Transferor acknowledges and agrees that (i) the Law Firms' representation of the General Partner is limited to the specific matters with respect to which it has been retained and consulted by the General Partner and its affiliates, (ii) there may exist other matters that could have a bearing on the Fund, the Fund's investments and portfolio companies, the General Partner and/or

their affiliates as to which the Law Firms have been neither retained nor consulted, (iii) the Law Firms do not undertake to monitor the compliance of the General Partner and its affiliates with the investment program and other investment guidelines and procedures set forth in the Offering Materials (as defined below) and the Partnership Agreement, nor do the Law Firms monitor compliance by the Fund, the General Partner and/or their affiliates with applicable laws, unless in each case the Law Firms have been specifically retained to do so, (iv) the Law Firms do not investigate or verify the accuracy and completeness of information set forth in the Offering Materials concerning the Fund, the General Partner or any of their respective affiliates and personnel or investments or portfolio companies and (v) the Law Firms are not providing any advice, opinion, representation, warranty or other assurance of any kind as to any matter to the Transferor in connection with the transactions contemplated hereby, but Kirkland & Ellis LLP is advising the Transferee in connection with the transactions contemplated hereby.  The Transferor previously waived any conflicts associated with the Law Firms' representation of the General Partner and the Fund in connection with the transactions contemplated by this Agreement.  The Transferor hereby waives any conflicts associated with the representation of the Transferee by Kirkland & Ellis LLP in connection with the transactions contemplated by this Agreement.

2.    Representations and Warranties of the Transferee.

(a)    The Transferee hereby represents and warrants to the Transferor and the General Partner, on the date of this Agreement and on the Closing Date, as follows:

(i)    The Transferee has full legal capacity, power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and this Agreement has been duly executed and delivered by the Transferee.

(ii)    The Transferee is duly organized, formed or incorporated, as the case may be, and the Transferee is authorized, empowered and qualified to execute this Agreement and consummate the transactions contemplated hereby.  The individual signing this Agreement, the Partnership Agreement and all agreements contemplated hereby and thereby on the Transferee's behalf has been duly authorized to do so.

(iii)    The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby and the performance of the Transferee's obligations hereunder by it will not conflict with, or result in any violation of or default under, any provision of any governing instrument applicable to it, or any agreement or other instrument to which it is a party or by which it or any of its properties are bound, or any decree, order, statute, rule or regulation applicable to it or its business or properties.

(iv)    Except for any alterations to this Agreement that have been clearly marked or otherwise specifically identified in writing to the General Partner prior to the execution of this Agreement, the Transferee has not altered or otherwise revised this Agreement in any manner from the version initially received by the Transferee nor, to the knowledge of the Transferee, has the Transferor altered or otherwise revised this Agreement in any manner from the version initially received by the Transferee.

(v)      The Transferee has received and read the Partnership Agreement and the Subscription Agreement and is familiar with the respective terms thereof. The Transferee has received and read a copy of the confidential Private Placement Memorandum of the Fund, and all supplements thereto (collectively, the "Private Offering Memorandum"), and the Transferee has relied on nothing other than the Partnership Agreement, the Private Offering Memorandum and the Subscription Agreement (collectively, the "Offering Materials") in deciding whether to make an investment in the Fund. In addition, the Transferee has had an opportunity to ask the General Partner questions and receive satisfactory answers regarding the Fund and the Fund's investments. The Transferee has also had full access to such other information concerning the Fund and the Fund's investments as the Transferee has requested in order to evaluate the merits and risks of an investment in the Fund and that is necessary to verify the accuracy of the information contained in the Offering Materials. No statement, printed material or other information that is contrary to the information contained in the Offering Materials has been given or made by or on behalf of the General Partner and/or the Fund to the Transferee. The Transferee has consulted to the extent deemed appropriate by the Transferee with the Transferee's own advisers as to the financial, tax, legal, accounting, regulatory and related matters concerning the acquisition of the Transferred Interest and on that basis understands the financial, tax, legal, accounting, regulatory and related consequences of the acquisition of the Transferred Interest, and believes that the acquisition of the Transferred Interest is suitable and appropriate for the Transferee.

(vi)      The Transferee has conducted its own independent evaluation and made its own analysis as it has deemed necessary, prudent or advisable in order for it to make its own determination and decision to acquire the Transferred Interest, to enter into this Agreement and consummate the transactions contemplated hereby. The Transferee is entering into this Agreement and the transactions contemplated hereby relying entirely upon such independent evaluation and analysis and without reliance upon any oral or written representations and warranties of any kind or nature by the Transferor or any of its affiliates, the General Partner, or its general partner, or any of their respective direct or indirect equity owners, shareholders, directors, officers, agents, managers, partners, members or employees or by the Transferor (other than as provided in Section 1 above).

(vii)      The Transferee understands and acknowledges that the value of the Transferred Interest may be worth more or less than the consideration being delivered by the Transferee in connection herewith.

(b)      The Transferee hereby further represents and warrants to the General Partner, on  the date of this Agreement and on the Closing Date, as follows:

(i)      The statements, answers and information set forth in the Investor Qualification Statement provided to the General Partner by the Transferee pursuant to Section 4(b) of this Agreement (the "IQS") are true and correct in all respects.

(ii)      The Transferee understands that the Transferred Interest has not been, and will not be, registered under the Securities Act of 1933, as amended (the

"Securities Act"), or any state securities laws, and is being offered and sold in reliance upon U.S. federal and state exemptions from registration requirements for transactions not involving any public offering. The Transferee recognizes that reliance upon such exemptions as well as the tax treatment of the Fund may be based in part upon the representations of the Transferee contained herein (including, without limitation, those representations contained in the IQS and the Tax Forms). The Transferee represents and warrants that the Transferred Interest will be acquired by the Transferee solely for the account of the Transferee, for investment purposes only and not with a view to the distribution thereof in violation of applicable securities laws. The Transferee represents and warrants that the Transferee (A) is a sophisticated investor with such knowledge and experience in business and financial matters as will enable the Transferee to evaluate the merits and risks of investment in the Fund, (B) is able to bear the economic risk and lack of liquidity of an investment in the Fund for an indefinite period of time, and (C) is able to bear the risk of loss of its entire investment in the Fund. The Transferred Interest, together with the Transferee's other investments that are not readily marketable, is not disproportionate to the Transferee's net worth.

        (iii)     The Transfer of the Transferred Interest:

        (A)     is not being effected on or through (1) a U.S. national, regional or local securities exchange, (2) a foreign securities exchange or (3) an interdealer quotation system that regularly disseminates firm buy or sell quotations by identified brokers or dealers (including, without limitation, the NASDAQ System);

        (B)     is not being made by, through or on behalf of (1) a person or entity, such as a broker or a dealer, making a market in interests in the Fund or (2) a person or entity who makes available to the public bid or offer quotes with respect to interests in the Fund or stands ready to effect buy or sell transactions at quoted prices for itself or on behalf of others; and

        (C)     is not being effected on or through an "established securities market" or a "secondary market or the substantial equivalent thereof" within the meaning of U.S. Department of Treasury Reg. § 1.7704-1.

        (iv)     The Transferee did not enter into a binding agreement to purchase the Transferred Interest prior to the 15th calendar day after, and the closing of the purchase of the Transferred Interest will not occur prior to the 45th calendar day after, the date the Transferee initiated negotiations with the Transferor, and the purchase price and terms and conditions regarding the transfer of the Transferred Interest were determined by the Transferee and Transferor, after some discussions between them.

        (v)     The Transferee also understands that, based in part upon the reliance on the Transferee's representations herein (including, without limitation, those representations contained in the IQS), the Fund is not registered and does not intend to

register as an investment company under the Investment Company Act of 1940, as amended, and the rules and regulations promulgated thereunder (the "Investment Company Act"), and that none of the General Partner, its owners, its managers and any other person or entity selected by the General Partner to act as an agent of the Fund with respect to managing the investments of the Fund currently is registered (or intends to register) under the Investment Advisers Act of 1940, as amended (the "Advisers Act"). The Transferee will not be afforded the protections provided to clients of registered investment advisers under the Advisers Act.  However, the General Partner or any of its owners or managers, or any other person or entity selected by the General Partner to act as investment adviser, manager and/or agent of the Fund in managing its investments may, in its sole discretion, register as an investment adviser under the Advisers Act.  The Transferee agrees that the General Partner and the Fund may provide in any electronic medium (including via email or website access) any disclosure or document that is required by applicable securities laws to be provided to the Transferee.  In addition, the Transferee hereby agrees that the board or committee designated in the Partnership Agreement to provide Advisers Act approvals on behalf of the Transferee, including, without limitation, any approvals required under Section 206(3) of the Advisers Act and any consent to a transaction that would result in the "assignment" (within the meaning of the Advisers Act) of the General Partner's interest in the Fund, is appointed and authorized to do so on behalf of the Transferee.

(vi)    The Transferee acknowledges and agrees that (A) an investment in the Fund involves certain risks, (B) the Transferred Interest is subject to certain restrictions on transferability as described in the Partnership Agreement and (C) as a result of the foregoing, the marketability of the Transferred Interest is severely limited.

(vii)    The Transferee covenants and agrees that it will not transfer, sell, assign, pledge, mortgage, hypothecate, encumber or otherwise dispose of the Transferred Interest in any manner that will violate the Partnership Agreement, the Securities Act or any state securities laws, or subject the Fund or the General Partner to regulation under the Investment Company Act, the Advisers Act, the rules and regulations of the Securities and Exchange Commission or the laws and regulations of the Cayman Islands, or any other federal, state or municipal authority having jurisdiction thereover.

(viii)    The Transferee is either (A) an "accredited investor" as that term is defined in Regulation D promulgated under the Securities Act, or (B) not a U.S. Person (as defined in Rule 902 as promulgated under the Securities Act).  If the Transferee is not a U.S. Person, (x) the Transferee further represents and warrants that (1) the Transferee has not acquired the Transferred Interest for the account of any person who is a U.S. Person and (2) the offer and sale of the Transferred Interest to the Transferee constitute an "Offshore Transaction," as defined in Rule 902 as promulgated under the Securities Act and (y) the Transferee hereby agrees to resell the Transferred Interest, in whole or in part, only in accordance with the Partnership Agreement and (1) the provisions of Regulation S (Rules 901 through 905) as promulgated under the Securities Act and the Preliminary Notes (as defined in Regulation S), (2) pursuant to registration under the Securities Act or (3) pursuant to an available exemption from registration.

(ix)     The Transferee is aware that: (A) the Fund has a very limited financial and operating history; (B) the General Partner or another person or entity selected by the General Partner (which may be a partner, member or affiliate thereof) will receive substantial compensation in connection with the management of the Fund; (C) no U.S. federal, state, local or non-U.S. agency has passed upon all or any portion of the Transferred Interest or made any finding or determination as to the fairness of this investment; (D) the Transferee is not entitled to cancel, terminate or revoke this Agreement or any of the powers conferred herein or in the Partnership Agreement, the Subscription Agreement or the power of attorney delivered by the Transferee pursuant to Section 3(b) of this Agreement; and (E) investment returns set forth in the Private Offering Memorandum or in any supplemental letters or materials thereto are not necessarily comparable to the returns, if any, which may be achieved on investments made by the Fund.

(x)     The Transferee was not formed or reformed for the specific purpose of making an investment in the Fund, and the Transferee is not subject to the ownership attribution rules under Section 3(c)(1) of the Investment Company Act in a way that would result in more than one person being deemed the beneficial owner of the Transferred Interest.

(xi)     (A) Except as disclosed to the General Partner in the IQS which the Transferee has completed and returned to the General Partner herewith, the Transferee is not (1) an "employee benefit plan" within the meaning of Section 3(3) of the United States Employee Retirement Income Security Act of 1974, as amended ("ERISA"), that is subject to Part 4 of Subtitle B of Title I of ERISA, (2) an individual retirement account or annuity ("IRA") that is subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"), or (3) a fund of funds, an insurance company separate account or an insurance company general account or another entity (such as a group trust), in each case whose underlying assets are deemed under United States Department of Labor rules and regulations that address the applicability of ERISA to entities in which employee benefit plans invest, including § 2510.3-101 *et seq*, as amended and modified by Section 3(42) of ERISA), to include "plan assets" of any "employee benefit plan" or IRA (each a "benefit plan investor"), (B) if the Transferee is a benefit plan investor, neither the General Partner nor any of its affiliates acted as a "fiduciary" within the meaning of Section 3(21) of ERISA with respect to the acquisition of the Transferred Interest by the Transferee, and (C) the acquisition of the Transferred Interest has been duly authorized in accordance with the Transferee's governing documents.  The Transferee acknowledges and understands that the Fund will not be a "venture capital operating company" as defined in the United States Department of Labor Regulations § 2510.3-101 et seq, as amended.

(xii)     The Transferee acknowledges that the General Partner has retained the Law Firms in connection with the formation of the Fund and related matters (other than the transactions contemplated by this Agreement) and expects to retain the Law Firms as legal counsel in connection with the management and operation of the Fund, including making, holding and disposing of investments.  None of the Law Firms is

representing and none will represent the Transferee, the Transferor or any other limited partner of the Fund in connection with the formation of the Fund, the offering of the limited partnership interests therein, the management and operation of the Fund (other than the transactions contemplated by this Agreement), or any dispute that may arise between any limited partner on one hand and the General Partner and/or the Fund on the other hand (the "Partnership Legal Matters"). Furthermore, the Transferee acknowledges and agrees that (i) the Law Firms' representation of the General Partner is limited to the specific matters with respect to which each has been retained and consulted by the General Partner and its affiliates, (ii) there may exist other matters that could have a bearing on the Fund, the Fund's investments and portfolio companies, the General Partner and/or their affiliates as to which the Law Firms have been neither retained nor consulted, (iii) the Law Firms do not undertake to monitor the compliance of the General Partner and its affiliates with the investment program and other investment guidelines and procedures set forth in the Offering Materials and the Partnership Agreement, nor do the Law Firms monitor compliance by the Fund, the General Partner and/or their affiliates with applicable laws, unless in each case the Law Firms have been specifically retained to do so, (iv) the Law Firms do not investigate or verify the accuracy and completeness of information set forth in the Offering Materials concerning the Fund, the General Partner or any of their respective affiliates and personnel or investments or portfolio companies and (v) the Law Firms are not providing any advice, opinion, warranty or other assurance of any kind as to any matter to the Transferor or the General Partner in connection with the transactions contemplated by this Agreement. The Transferee acknowledges that it has retained Kirkland & Ellis LLP as legal counsel in connection with the transactions contemplated by this Agreement. The Transferee will, if it wishes counsel on a Partnership Legal Matter, retain its own independent counsel with respect thereto and will pay all fees and expenses of such independent counsel.

(xiii)    The Transferee, as well as any other direct or indirect beneficial owner of the Transferee that would be identified as a "client" under Rule 205-3 of the Advisers Act, (A) either (1) has a net worth in excess of $1,500,000 (including, for natural persons, assets held jointly with such person's spouse) or (2) is acquiring a direct or indirect Commitment to the Fund of at least $750,000, and (B) is a "qualified client" within the meaning of the Advisers Act and the rules and regulations promulgated thereunder.

(xiv)    The Transferee is a "qualified purchaser" within the meaning of the Investment Company Act and the rules and regulations promulgated thereunder.

(xv)    The Transferee shall constitute only one partner of the Fund within the meaning of U.S. Department of Treasury Reg §1.7704-1(h).

(xvi)    If the Transferee is a partnership, a limited liability company treated as a partnership for U.S. federal income tax purposes, a grantor trust (within the meaning of Code §§671-679) or an S corporation (within the meaning of Code §1361) (each a "flow-through entity"), the Transferee represents and warrants either that:

(A)    no person or entity will own, directly or indirectly through one or more flow-through entities, an interest in the Transferee where more than 70% of the value of the person's or entity's interest in the Transferee is attributable to the Transferee's investment in the Fund; or

(B)    if one or more persons or entities will own, directly or indirectly through one or more flow-through entities, an interest in the Transferee where more than 70% of the value of the person's or entity's interest in the Transferee is attributable to the Transferee's investment in the Fund, neither the Transferee nor any such person or entity has or had any intent or purpose to cause such person (or persons) or entity (or entities) to invest in the Fund indirectly through the Transferee in order to enable the Fund to qualify for the 100-partner safe harbor under U.S. Department of Treasury Reg. §1.7704-1(h).

(xvii)   The Transferee hereby acknowledges that the Fund seeks to comply with all applicable anti-money laundering laws and regulations. In furtherance of such efforts, the Transferee hereby represents and agrees that: (A) no part of the funds used by the Transferee to acquire the Transferred Interest or to satisfy its capital commitment obligations with respect thereto has been, or shall be, directly or indirectly derived from, or related to, any activity that may contravene United States federal, state, or non-United States laws and regulations, including anti-money laundering laws and regulations and (B) no capital commitment, contribution or payment to the Fund by the Transferee and no distribution to the Transferee shall cause the Fund or the General Partner to be in violation of any applicable anti-money laundering laws or regulations including, without limitation, the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001 and the United States Department of the Treasury Office of Foreign Assets Control regulations.   The Transferee acknowledges and agrees that, notwithstanding anything to the contrary contained in the Partnership Agreement, any side letter or any other agreement, to the extent required by any anti-money laundering law or regulation, the Fund and the General Partner may prohibit additional capital contributions, restrict distributions or take any other reasonably necessary or advisable action with respect to the Transferred Interest, and the Transferee shall have no claim, and shall not pursue any claim, against the Fund, the General Partner or any other person or entity in connection therewith.  The Transferee hereby agrees to promptly provide such additional information and representations as the General Partner may request to ensure compliance with all applicable anti-money laundering laws and regulations.

(xviii)  The Transferee hereby acknowledges and agrees that (A) it has received and will in the future receive Confidential Information regarding the Fund, the Parallel Fund, the General Partner, the Management Company, each Alternative Investment Vehicle, the equity owners of the General Partner and each existing or prospective Portfolio Company (collectively, the "Partnership Entities") as well as the other Partners, (B) such Confidential Information contains trade secrets and is proprietary, (C) disclosure of such Confidential Information to third parties is not in the

best interest of any of the Partnership Entities or the Partners and (D) disclosure of such Confidential Information would cause substantial harm and damages to the Partnership Entities and the Partners. The Transferee hereby represents and warrants that, except as previously disclosed to the General Partner in writing, (X) it is not subject to any law, statute, governmental rule or regulation or judicial or governmental order, judgment or decree requiring it to disclose any information or materials (whether or not Confidential Information) relating to any of the Partnership Entities or the other Partners to any Person(s) and (Y) it is not required by any law, statute, governmental rule or regulation or judicial or governmental order, judgment or decree or any agreement or contract to obtain any consent or approval prior to agreeing to be bound by the confidentiality covenant set forth in the Partnership Agreement. The Transferee hereby represents and warrants that except as previously disclosed in writing to the General Partner, it has taken all actions and obtained all consents necessary to enable it to comply with the provisions of Section 7.13 of the Partnership Agreement. The Transferee hereby agrees that it will not use any Confidential Information it receives for any purpose other than monitoring and evaluating its investment in the Fund. Any information provided to a Person at the direction or request of the Transferee shall be treated for purposes hereof and for purposes of the Partnership Agreement as instead having been provided to such Person by the Transferee, and such deemed disclosure by the Transferee shall be subject to all of the limitations and other provisions in the Partnership Agreement relating to Confidential Information.

(xix)    The Transferee is solvent and capable of paying its obligations as and when such obligations become due. The Transferee will not be rendered insolvent as a direct result of the transactions contemplated hereby.

(xx)    Except as otherwise approved by the General Partner, the Transferee is not an Indian Resident within the meaning of the India Foreign Exchange Management Act of 1999. Furthermore, the Transferee has no purpose or intent to evade the India Foreign Exchange Management Act of 1999, including by directly or indirectly "round-tripping", or facilitating the "round-tripping" of, capital from India. The Transferee shall promptly notify the General Partner if the Transferee becomes aware that any representation the Transferee has made pursuant to this Section 2(b)(xx) has ceased to be true and accurate with respect to the Investor. For purposes hereof, the term "Indian Resident" shall mean: (a) a natural person residing in India for more than one hundred and eighty-two days during the course of the preceding financial year but does not include: (i) a natural person who has gone out of India or who stays outside India, in either case: (A) for or on taking up employment outside India; or (B) for carrying on outside India a business or vocation outside India; or (C) for any other purpose, in such circumstances as would indicate his intention to stay outside India for an uncertain period; (ii) a natural person who has come to or stays in India, in either case, otherwise than: (A) for or on taking up employment in India; or (B) for carrying on in India a business or vocation in India; or (C) for any other purpose, in such circumstances as would indicate his intention to stay in India for an uncertain period; (b) any person or body corporate registered or incorporated in India; (c) an office, branch or agency in India owned or controlled by a person resident outside India; or (d) an office, branch or

agency outside India owned or controlled by a person resident in India; and the term "person" shall include: (i) an individual, (ii) a Hindu undivided family, (iii) a company, (iv) a firm, (v) an association of persons or a body of individuals, whether incorporated or not, (vi) every artificial juridical person, not falling within any of the preceding sub-clauses, and (vii) any agency, office or branch owned or controlled by such person.

3.    Transfer and Assignment by Transferor.

(a)    The Transferor hereby transfers and assigns to the Transferee, for an amount equal to $441,226.65 (the "Purchase Price") in cash or other immediately available funds delivered on the Closing Date, all of the Transferor's rights and obligations under the Partnership Agreement and the Subscription Agreement with respect to the Transferred Interest (including, without limitation, the Transferor's obligation to contribute its Commitment with respect to the Transferred Interest in accordance with the terms of the Partnership Agreement and the Subscription Agreement).  As a result of the transfer and assignment contemplated by this Section 3, the Transferee shall be a Limited Partner for all purposes under the Partnership Agreement and the Subscription Agreement to the extent of the Transferred Interest, and the General Partner (i) hereby consents to the transfer and assignment of the Transferred Interest and agrees that the Transferee shall be a substitute Limited Partner with respect to the Transferred Interest pursuant to Section 7.3 of the Partnership Agreement and (ii) hereby waives any right to impose any default remedies on the Transferor in accordance with Section 7.9 of the Partnership Agreement.  For the avoidance of doubt, as a result of the transfer and assignment contemplated by this Section 3, the Transferor shall cease to be a Limited Partner of the Partnership and shall have no rights, obligations or liabilities with respect to the Transferred Interest or otherwise to the Partnership, except as described in this Agreement.

(b)    The transfer contemplated herein shall be effective as to the Transferor and the Transferee on the Closing Date upon satisfaction (or waiver by the General Partner) of the following conditions:  (i) the General Partner shall have received the IQS properly completed and executed, (ii) the Transferor, the Transferee and the General Partner shall have signed this Agreement in the spaces provided below, (iii) the Transferee shall have executed the power of attorney attached as Exhibit A hereto, (iv) the Transferee shall have executed the duplicate signature pages to the Partnership Agreement and all amendments made thereto on or prior to the Closing Date attached as Exhibit B hereto, (v) the Transferee shall have delivered the Tax Forms required by Section 4(d) of this Agreement, (vi) an order by the Bankruptcy Court authorizing Transferor to enter into this Agreement and perform its obligations hereunder shall have been entered and (vii) the completion, execution and delivery to the Transferor of a withdrawal of claim form in the form attached as Exhibit E hereto solely with respect to Proof of Claim Number 11042, it being understood and agreed that this Agreement is without prejudice to all other proofs of claim filed by General Partner as of the date hereof.

(c)    As a result of the transfer and assignment contemplated by this Section 3, the Transferee shall succeed to all of the rights and be subject to all of the obligations of the Transferor with respect to the Transferred Interest for all purposes under the Partnership Agreement (including, without limitation, the Transferor's obligation to contribute the transferred portion of its Commitment with respect to the Transferred Interest in accordance with

the terms of the Partnership Agreement and the Subscription Agreement). Furthermore, with respect to the obligation of the Partners, pursuant to <u>Section 6.10</u> of the Partnership Agreement, to return distributions made either before or after the Closing Date, the Transferee agrees that it shall be treated as having received all distributions previously made with respect to the Transferred Interest and shall be obligated to return to the Fund, subject to the limitations set forth in the Partnership Agreement, any such distributions.

(d)     Upon the effectiveness of the transfer contemplated herein, the Transferee accepts the transfer and assignment to it described herein and agrees to be subject to all of the rights and obligations and to be bound by all of the terms and conditions of the Partnership Agreement and the Subscription Agreement with respect to the Transferred Interest in the place of the Transferor as if the Transferee had been party thereto originally with respect to the Transferred Interest (including, without limitation, the Transferor's obligation to contribute its Commitment with respect to the Transferred Interest in accordance with the terms of the Partnership Agreement and the Subscription Agreement).

(e)     Upon the effectiveness of the transfer contemplated herein, to the fullest extent permitted by Cayman Islands law, the Transferor shall be relieved of all obligations to the Fund and the General Partner under the Partnership Agreement and the Subscription Agreement with respect to the Transferred Interest, except for any obligations relating to <u>Section 7.13</u> (Confidentiality of Information) of the Partnership Agreement. Notwithstanding the foregoing, the effectiveness of the transfer shall not relieve the Transferor of its obligations hereunder or for any breaches by the Transferor of its representations and warranties made to either the General Partner or the Fund in the Subscription Agreement.

(f)     Notwithstanding anything to the contrary contained herein, the Transferee's obligation to purchase the Transferred Interest shall terminate and be of no further force or effect if the closing of the transactions contemplated hereby does not occur on or before October 15, 2010.

4.     <u>Additional Agreements</u>.

(a)     <u>Indemnification</u>.     The remedies provided in this <u>Section 4(a)</u> shall be cumulative and shall not preclude the assertion by any party to this Agreement of any other rights or the seeking of any other remedies against any other party to this Agreement. Notwithstanding anything to the contrary contained in this <u>Section 4(a)</u>, no indemnity amounts shall be payable as a result of any claim under this <u>Section 4(a)</u> to indemnify another party for indirect, special or consequential damages.

(i)     The Transferee hereby agrees to indemnify and hold the Fund, the General Partner, the Management Company and each officer, director, shareholder, partner or member of the General Partner and/or the Management Company and each other person and entity that controls, is controlled by, or is under common control with, any of the foregoing within the meaning of Section 15 of the Securities Act (collectively, the "<u>Indemnified Parties</u>"), harmless for, from and against (i) any taxes, liabilities or related obligations imposed upon an Indemnified Party by reason of the transactions contemplated hereunder, (ii) any and all losses, claims, damages, expenses and liabilities

US_ACTIVE:\43390694\08\58399.0003

K&E 16740513.13

relating to or arising out of any breach of any representation, warranty, certification, covenant or undertaking made by or on behalf of the Transferor or Transferee herein (including the IQS and the Tax Forms (as defined below)) and (iii) any action for securities laws violations instituted by or on behalf of the Transferor or Transferee against the Fund or such Indemnified Party in connection with the transfer of the Transferred Interest hereunder; provided, however, that the sum of any such indemnification obligations under this Section 4(a)(i) and Section 4(a)(iii) shall not exceed the Purchase Price.

(ii)    The Transferor hereby agrees to indemnify and hold each Indemnified Party harmless from and against any and all losses, claims, damages, expenses and liabilities relating to or arising out of any breach of any representation, warranty, certification, covenant or undertaking made by the Transferor herein; provided, however, that the sum of any such indemnification obligations under this Section 4(a)(ii) and Section 4(a)(iv) shall not exceed the Purchase Price.

(iii)    The Transferee hereby agrees to indemnify and hold the Transferor harmless from and against any and all losses, claims, damages, expenses and liabilities relating to or arising out of any breach of any representation, warranty, certification, covenant or undertaking made by the Transferee herein; provided, however, that the sum of any such indemnification obligations under this Section 4(a)(iii) and Section 4(a)(i) shall not exceed the Purchase Price.

(iv)    The Transferor hereby agrees to indemnify and hold the Transferee harmless from and against any and all losses, claims, damages, expenses and liabilities relating to or arising out of any breach of any representation, warranty, certification, covenant or undertaking made by the Transferor herein; provided, however, that the sum of any such indemnification obligations under Section 4(a)(ii) and this Section 4(a)(iv) shall not exceed the Purchase Price.

(b)    Simultaneous with its execution of this Agreement and as a condition to the General Partner's consent to the transactions contemplated hereby, the Transferee shall complete, execute and deliver to the General Partner the IQS in the form attached as Exhibit D, the substance of which shall be satisfactory to the General Partner.  The Transferee hereby acknowledges that the General Partner may rely upon one or more of the representations and warranties set forth in such investor qualification statement in connection with the General Partner's consent to the transactions contemplated hereby.

(c)    On or prior to the Closing Date, and as a condition to the General Partner's consent to the transactions contemplated hereby, the Transferee shall execute (i) the Power of Attorney attached as Exhibit A hereto and (ii) the duplicate signature pages to the Partnership Agreement and all amendments made thereto on or prior to the Closing Date attached as Exhibit B hereto.

(d)    Simultaneous with its execution of this Agreement and as a condition to the General Partner's consent to the transactions contemplated hereby, (i) if the Transferee is a "United States person" for U.S. federal tax purposes, the Transferee shall complete, execute and

deliver to the General Partner a Form W-9 of the Internal Revenue Service, a copy of which is attached as <u>Exhibit C</u> hereto, and (ii) if the Transferee is not a "United States person" for U.S. federal tax purposes, the Transferee shall complete, execute and deliver (and, if the Transferee is not a "United States person" and is also a "flow-through entity" (*i.e.*, as described in <u>Section 2(b)(xvi)</u> above) for U.S. federal tax purposes, the Transferee shall cause each beneficial owner of such Transferee of any amounts to be allocated or distributed to the Transferee by the Fund for United States federal income tax purposes (each such beneficiary, a "<u>Beneficial Tax Owner</u>") to complete, execute and deliver) the applicable Form W-8 of the Internal Revenue Service (or Form W-9 in the case of any Beneficial Tax Owner that is a "United States person" for U.S. federal tax purposes) (collectively, such Forms W-8 and W-9 are referred to herein as the "<u>Tax Forms</u>").   More specifically, Transferees and Beneficial Tax Owners that are not "United States persons" are required to provide information about their status for withholding tax purposes on Form W-8BEN (for non-United States Beneficial Owners), Form W-8IMY (for non-United States intermediaries, flow-through entities, and certain United States branches), Form W-8EXP (for non-United States governments, non-United States central banks of issue, non-United States tax-exempt organizations, non-United States private foundations, and governments of certain United States possessions), or Form W-8ECI (for non-"United States persons" receiving income that is effectively connected with the conduct of a trade or business in the United States), as more specifically described in the instructions accompanying those forms. Any Transferee that is not a "United States person" must also provide a United States taxpayer identification number on the applicable Form W-8.   For purposes of determining which Tax Form to prepare, "United States person" means (i) a United States citizen or resident, (ii) a partnership, corporation or limited liability company organized under United States law, (iii) a United States estate (or any other estate whose income from sources outside of the United States is subject to United States federal income tax regardless of the source) or (iv) a trust if a court within the United States is able to exercise primary supervision over the trust's administration and one or more United States persons have the authority to control all of its substantial decisions or if a valid election to be treated as a United States person is in effect with respect to such trust.

(e)      On or prior to the Closing Date, and as a condition to the consummation of the transactions contemplated hereby, the General Partner shall complete, execute and deliver to the Transferor a withdrawal of claim form in the form attached as <u>Exhibit E</u> hereto.

(f)      So long as the Transferee remains a Limited Partner, it shall not be entitled to assign his, her or its beneficial interest in Fund profits, losses and distributions held by the Transferee without the prior written consent of the General Partner.

(g)      In the event that any of the statements, representations or warranties made or information provided by the Transferee herein (including, without limitation, in the IQS or the Tax Forms) is untrue or ceases to be true as of any date subsequent to the date hereof or if there is any change in the form of entity of the Transferee (*e.g.,* conversion of a limited partnership into a limited liability company), the Transferee shall promptly (but in no event later than 7 calendar days after the Transferee's knowledge thereof) notify the General Partner in writing of such change.

US_ACTIVE:\43390694\08\58399.0003

K&E 16740513.13

(h)    The Transferor and Transferee severally, but not jointly, hereby agree to each reimburse the Fund, the Management Company and the General Partner for 50% of all reasonable expenses incurred by such entities with respect to this Agreement and the transactions contemplated hereby, including, without limitation, attorneys' fees and expenses and any incremental accounting fees incurred in connection with the Fund's U.S. federal tax law compliance (including, without limitation, as the result of any election by the Fund to be an "electing investment partnership" under Code § 743(e) or other compliance with the requirements of Code § 743 and the Treasury Regulations promulgated thereunder); provided, however, that the Transferor's obligations under this Section 4(h) shall not exceed $10,000. Each of the Transferor and the Transferee shall be liable for their own costs and expenses incurred in connection with the purchase and sale of the Transferred Interest provided for by this Agreement.

(i)    The Transferor and Transferee agree to cooperate with the General Partner in connection with the Fund's compliance with any U.S. federal tax requirements related to the transfer of the Transferred Interest. Without limitation of the foregoing, (i) the Transferee agrees to provide to the Fund such information, and at such time, as is set forth in U.S. Department of Treasury Reg. § 1.743-1(k)(2) (determined as if an election under Code § 754 were in effect for the Fund) and (ii) if the Transferor receives notice that the Fund is a electing investment partnership under Code § 743(e), the Transferor agrees to provide to the Fund and to the Transferee such information, and at such time, as is set forth in Section 5A of Internal Revenue Service Notice 2005-32 (or any successor guidance issued by the Internal Revenue Service related thereto).

(j)    The Transferor, the Transferee and the General Partner agree to allocate between the Transferor and the Transferee using the "interim closing of the books" method in accordance with Code § 706 and the Treasury Regulations promulgated thereunder, all items of income, gain, loss, deduction or credit attributable to the Transferred Interest for the tax year of the Fund in which the Closing Date occurs.

(k)    Simultaneous with the execution of this Agreement, the Transferor will provide the Transferee with a statement in the form of Exhibit F attached hereto conforming to the requirements of U.S. Department of Treasury Reg. § 1.1445-5(b)(3)(ii), and the Transferee shall not withhold under Code § 1445.

(l)    The Transferor, the Transferee and the General Partner agree to use commercially reasonable efforts to take the steps necessary to consummate the transactions contemplated hereby on or prior to September 30, 2010.

5.    Notices.

(a)    All notices and other communications to be given to or by the General Partner, the Fund or any Indemnified Party pursuant to or in connection with this Agreement shall be in writing and given in the manner and time set forth in Section 13.4 (Notices) of the Partnership Agreement, in each case to (i) the Transferor at the address, facsimile number or email address set forth below the Transferor's signature block on the signature page to this Agreement or to such other address, facsimile number or email address or to the attention of such

other Person as has been indicated to the General Partner in writing in accordance with the provisions of the Partnership Agreement, (ii) to the Transferee at the address, facsimile number or email address set forth below the Transferee's signature block on the signature page to this Agreement or to such other address, facsimile number or email address or to the attention of such other Person as has been indicated to the General Partner in writing in accordance with the provisions of the Partnership Agreement and (iii) to the General Partner, the Fund or an Indemnified Party at the principal office of the Fund.

(b)     For purposes of clarification, any delay or failure of an Indemnified Party to give notice in a timely manner of an indemnification claim pursuant to this Agreement shall not relieve the Transferor or Transferee of its obligations for indemnification under this Agreement.

(c)     The General Partner acknowledges that the Transferee has retained Kirkland & Ellis LLP in connection with the transactions contemplated by this Agreement and that the Transferee expects to retain Kirkland & Ellis LLP as legal counsel in connection with other unrelated matters.  The General Partner hereby consents to such representation and waives (other than any conflicts related to any dispute that may arise between the General Partner and/or the Fund, on the one hand, and the Transferee on the other), on behalf of itself and the Fund, any conflicts or other objections associated with Kirkland & Ellis LLP's representation of the Transferee in connection with the transactions contemplated by this Agreement.

6.      <u>Miscellaneous</u>.

(a)     This Agreement shall be governed by the internal laws (and not the law of conflicts) of the Cayman Islands.  During the pendency of the case of the Transferor pursuant to chapter 11 of the Bankruptcy Code and upon closing of such case, to the extent permitted by order of the Bankruptcy Court, except if the Bankruptcy Court declines to exercise such jurisdiction, the Bankruptcy Court shall have and retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement if the Transferor is a party to such dispute.

(b)     No amendment or waiver of this Agreement shall be effective without the prior written consent of the General Partner and the party against whom such amendment or waiver is sought to be enforced.

(c)     This Agreement may be executed in one or more counterparts, each of which is deemed to be an original and all of which taken together constitute one and the same agreement.

(d)     Neither the Transferor nor the Transferee may assign any of its rights or obligations hereunder without the prior written consent to such assignment by the General Partner and each of the other parties hereto.

(e)     The Transferor and the Transferee each acknowledges that it participated in, or had the meaningful opportunity to participate in, the negotiation and drafting of this Agreement.  In the event any ambiguity or question of intent or interpretation arises, this

Agreement shall be construed to be the product of meaningful negotiations among the General Partner, the Transferor and the Transferee and no presumption or burden of proof shall arise favoring or disfavoring any of them by virtue of the authorship of any of the provisions of this Agreement.  The Transferor and the Transferee each hereby confirms that it expressly requested that this Agreement and all agreements and documents evidencing or relating in any way to the Transferred Interest be prepared in the English language only.  In the event of any translation of this Agreement or any other document or agreement evidencing or relating to the Transferred Interest, the English version shall govern.

(f)    If it is determined by a court of competent jurisdiction that any provision of this Agreement is invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of this Agreement.

(g)    The parties hereto acknowledge and agree that the General Partner and the Fund are intended beneficiaries of each and every provision of this Agreement.  This Agreement and each provision hereof will inure to the benefit of and be enforceable by the General Partner, the Fund and their respective successors and assigns.

(h)    In consideration of the Purchase Price and the Transferor being released from the obligation to fund any additional amounts in respect of the unfunded Commitment relating to the Transferred Interest, the Transferor, for and on behalf of itself and each of its successors and assignees, hereby fully and forever releases and discharges each of the General Partner, the Fund, the Transferee and their respective direct and indirect shareholders, members, partners, managers, officers, directors, employees, agents, affiliates and representatives (each, a "Released Party") from and against any and all claims and other liabilities and obligations of every kind and nature which have existed, may exist or do exist and are arising out of or related to the transfer by the Transferor to the Transferee hereunder, including without limitation, the Purchase Price being significantly less than the amount of Capital Contributions made by the Transferor to the Fund as of the date hereof; provided, however, that the foregoing release shall not apply to any claims or other liabilities and obligations with respect to (i) fraud, securities law violations, gross negligence or willful misconduct by any Released Party in connection with the transfer by the Transferor to the Transferee hereunder or (ii) a material breach of this Agreement.

*  *  *  *  *  *

US_ACTIVE:\43390694\08\58399.0003

K&E 16740513.13

IN WITNESS WHEREOF, the undersigned have executed this Agreement as a deed on the date first written above, with the transfer of the Transferred Interest contemplated hereby to be effective on the Closing Date.

TRANSFEROR:

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____

Name: _William J. Fox_

Title: _Executive Vice President_

Address/Facsimile Number for formal notice to the Transferor under the Partnership Agreement:

1271 Avenue of the Americas, 38th Floor
New York, New York 10020
Attention: Ashvin Rao
Facsimile No.: (646) 834-4769
E-Mail: ashvin.rao@ lehmanholdings.com

TRANSFEREE:

**BERKELEY INVESTMENT LTD.**

By: _____

Name:_____

Title:_____

Address/Facsimile Number for formal notice to the Transferee under the Partnership Agreement:

8, Eu Tong Sen Street
#21 - 90, Office 1, The Central
Singapore 059818
Attention: Chief Financial Officer
Facsimile: 65-6222-6467
E-mail address: mrscapital@gmail.com

Taxpayer Identification Number:

_____

*(Please also remember to complete and deliver the Form W-8 and/or W-9, as applicable)*

IN WITNESS WHEREOF, the undersigned have executed this Agreement as a deed on the date first written above, with the transfer of the Transferred Interest contemplated hereby to be effective on the Closing Date.

TRANSFEROR:

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____

      Name: _____

      Title: _____

Address/Facsimile Number for formal notice to the Transferor under the Partnership Agreement:

1271 Avenue of the Americas, 38th Floor
New York, New York 10020
Attention: Ashvin Rao
Facsimile No.: (646) 834-4769
E-Mail: ashvin.rao@ lehmanholdings.com

TRANSFEREE:

**BERKELEY INVESTMENT LTD.**

By: _Ch____ _____

      Name: Chandru Ramani

      Title: Chief Executive Officer

Address/Facsimile Number for formal notice to the Transferee under the Partnership Agreement:

8, Eu Tong Sen Street
#21 – 90, Office 1, The Central
Singapore 059818
Attention: Chief Financial Officer
Facsimile: 65-6222-6467
E-mail address: mrscapital@gmail.com

Taxpayer Identification Number:

_____

*(Please also remember to complete and deliver the Form W-8 and/or W-9, as applicable)*

TRANSFEREE'S WIRE TRANSFER
INSTRUCTIONS (FOR DISTRIBUTIONS):

Bank Name: UBS AG
Bank Location: 677 Washington Blvd., Stamford
CT 06901
ABA Routing Number (for US Banks): 026007993
Swift Code (for non-US Banks): UBSWUS33
Account Name: _____
Account Number: 101-WA-258641-000
Reference: _____
Further Credit:  K201398
Beneficiary:  Berkeley Investment Ltd.

GENERAL PARTNER:

NEW SILK ROUTE PE ASSOCIATES, L.P.

By:   New Silk Route Partners, Ltd.
Its:   General Partner

By:   _____

Name: Parag Saxena
Title:   Chief Executive Officer

# EXHIBIT A

## Power of Attorney

(To be executed by the Transferee and notarized)



Berkeley Investment Ltd.

Name of Transferee

## NEW SILK ROUTE PE ASIA FUND, L.P.

## POWER OF ATTORNEY

The undersigned hereby constitutes, appoints and grants (a) New Silk Route PE Associates, L.P., a Cayman Islands exempted limited partnership, and each other person or entity that is or becomes a general partner of New Silk Route PE Asia Fund, L.P., a Cayman Islands exempted limited partnership (the "Partnership") after the Partnership's initial closing date (collectively, the "General Partner") and (b) each person or entity that is or becomes a general partner of the General Partner (the "Ultimate GP"), with full power to act as its true and lawful representative and attorney-in-fact, in its name, place and stead, to make, execute, sign, acknowledge, swear to, verify, deliver, record, file and/or publish (so long as such person or entity continues to be a general partner of the Partnership) the following:

1.  a Statement pursuant to Section 9 of the Exempted Limited Partnership Law (2003 Revision) of the Cayman Islands, as amended from time to time (the "Statement"), with the Registrar of Exempted Limited Partnerships of the Cayman Islands, for the Partnership, an exempted limited partnership of which the General Partner is the general partner and in which the undersigned is named as a limited partner, and any formation certificates or documents for any alternative investment vehicle created pursuant to Section 3.4 of the Agreement of Exempted Limited Partnership of the Partnership, as amended (the "Agreement") (each, an "AIV"), including, without limitation, any partnership agreement, operating agreement, shareholders agreement, memoranda of association and articles of association or similar governing document;

2.  any and all instruments that the General Partner deems appropriate to reflect a change or modification of the Statement, including the substitution of an authorized and permitted transferee of a limited partner pursuant to the terms of the Agreement;

3.  all instruments, documents, certificates and consents which may from time to time be necessary or advisable to effectuate, implement and continue the valid and subsisting existence of the Partnership or any AIV;

4.  all instruments, documents and certificates which may be necessary or advisable in the sole discretion of the General Partner to effectuate the provisions of Section 3.4 and/or Section 7.14 of the Agreement;

5.  any bills of sale or other appropriate transfer documents necessary or advisable to effectuate transfers of a Regulated Partner's or a Defaulting Partner's interest in the Partnership pursuant to Section 7.7 or Section 7.9, as the case may be, of the

Agreement or of a similar interest pursuant to the comparable provisions of the governing documents for any AIV;

6.    all instruments, documents, certificates and consents which may be necessary or advisable to effectuate the dissolution, liquidation, winding-up and termination of the Partnership or any AIV; and

7.    such other documents or instruments as may be required under the laws of the United States, any state thereof, the Cayman Islands or any other jurisdiction.

The undersigned hereby empowers each attorney-in-fact acting pursuant hereto to determine in its sole discretion the time when, purpose for and manner in which any power herein conferred upon it shall be exercised, and the conditions, provisions and covenants of any instruments or documents which may be executed by it pursuant hereto; provided that the powers of attorney granted herein shall only be exercised in accordance with the Agreement and clauses 1 through 7 above.  The powers of attorney granted herein are coupled with an interest in favor of the General Partner and the Ultimate GP and as such (a) shall be irrevocable and continue in full force and effect notwithstanding the subsequent death, incapacity, disability, insolvency or dissolution of the undersigned regardless of whether the Partnership, the General Partner or the Ultimate GP has notice thereof and (b) shall survive the delivery of an assignment by the undersigned of the whole or any portion of its interest in the Partnership, except that if the assignee thereof has been approved for admission to the Partnership as a substitute limited partner, this Power of Attorney given by the assignor shall survive the delivery of the assignment for the sole purpose of enabling the General Partner to execute, acknowledge and file any instrument necessary to effect the substitution.  The powers of attorney granted herein shall not be deemed to constitute a written consent of the undersigned for purposes of Section 13.1 of the Agreement.  Capitalized terms used but not defined herein shall have the respective meanings given to such terms in the Agreement.

This Deed shall be governed and construed in accordance with the laws of the Cayman Islands.

*  *  *  *  *

IN WITNESS WHEREOF, the undersigned has executed this Deed on the date set forth below.

Dated _____

**FOR COMPLETION BY TRANSFEREES WHO ARE NATURAL PERSONS:**
**(i.e., individuals)**

Transferee's Name:     _____
                                          (print or type)

Transferee's Signature:     _____
                                          (signature)

**FOR COMPLETION BY TRANSFEREES WHO ARE NOT NATURAL PERSONS:**
**(i.e., corporations, partnerships, limited liability companies, trusts or other entities)**

Transferee's Name:     **Berkeley Investment Ltd.**
                                          (print or type)

By:     _____
                                          (signature of authorized representative)

Its:     _____
                                          (name and title of authorized representative)

SUBSCRIBED AND SWORN to
before me this _____ day
of _____, _____.

_____
              Notary Public

My Commission Expires:

_____

## EXHIBIT B

## Partnership Signature Pages

(To be executed <u>only</u> by the Transferee in duplicate)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as a Deed with effect from the date first above written.

Signed by the General Partner
as a Deed in the presence of:

GENERAL PARTNER:

NEW SILK ROUTE PE ASSOCIATES, L.P.

_____
Witness

By:    New Silk Route Partners, Ltd.
Its:    General Partner

By:    _____
Name:  _____
Title:  _____

Signed by the Limited
Partner as a Deed in the presence of:

LIMITED PARTNER:

_____
Witness

_____BERKELEY INVESTMENT LTD._____
(Print or Type Name)

By:    _____
Name:
Title:

      IN WITNESS WHEREOF, the parties hereto have executed this Agreement as a Deed with effect from the date first above written.

Signed by the General Partner
as a Deed in the presence of:

GENERAL PARTNER:

NEW SILK ROUTE PE ASSOCIATES, L.P.

_____

Witness

By:    New Silk Route Partners, Ltd.
Its:    General Partner

By:    _____
       Name: _____
       Title: _____

Signed by the Limited
Partner as a Deed in the presence of:

LIMITED PARTNER:

_____

Witness

__BERKELEY INVESTMENT LTD.__
(Print or Type Name)

By:    _____
       Name:
       Title:

## **<u>EXHIBIT C</u>**

See attached Internal Revenue Service Form W-9

*(If any Form W-8 is required, please contact the General Partner and one will be provided)*

The completed forms should be returned to the General Partner with this Agreement.

***Do not send them to the Internal Revenue Service****.*

## EXHIBIT D

### Investor Qualification Statement

**(Applicable Form of Investor Qualification Statement**
**(*i.e.*, Individual or Entities) to be Executed by Transferee)**

**Berkeley Investment Ltd.**
Name of Transferee
(Please Print or Type)

# INVESTOR
# QUALIFICATION STATEMENT
# FOR ENTITIES[1]

## Part I.  Regulation D and Regulation S Matters.

(a)    If the Transferee is **not** a natural person, a revocable grantor trust (the sole settlor (i.e., grantor) of which is a natural person), an individual retirement account of a natural person or a self-directed employee benefit plan of a natural person (i.e., is, instead, a corporation, partnership, limited liability company, trust or other entity), please indicate with an "X" the category or categories that accurately describe the Transferee and qualify it as an "accredited investor" pursuant to Regulation D promulgated under the United States Securities Act of 1933, as amended and in effect as of the date hereof (the "Act"):

_____    (1)    a bank as defined in Section 3(a)(2) of the Act, or a savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Act, whether acting in its individual or fiduciary capacity;

_____    (2)    a broker or dealer registered pursuant to Section 15 of the United States Securities Exchange Act of 1934, as amended;

_____    (3)    an insurance company as defined in Section 2(13) of the Act;

_____    (4)    an investment company registered under the United States Investment Company Act of 1940, as amended;

_____    (5)    a business development company as defined in Section 2(a)(48) of the United States Investment Company Act of 1940, as amended;

_____    (6)    a Small Business Investment Company licensed by the United States Small Business Administration under Section 301(c) or (d) of the United States Small Business Investment Act of 1958, as amended;

_____    (7)    a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000;

---

[1] For purposes hereof, the "Partnership" means New Silk Route PE Asia Fund, L.P., a Cayman Islands exempted limited partnership.

(8)    an employee benefit plan within the meaning of Title I of the United States Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and (check all subcategories that apply):

_____    (A)    the investment decision is made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company or registered investment adviser,

_____    (B)    the employee benefit plan has total assets in excess of $5,000,000, or

_____*    (C)    such plan is a self-directed plan with investment decisions made solely by persons that are "accredited investors";

*See Section (b) below*

_____    (9)    a private business development company as defined in Section 202(a)(22) of the United States Investment Advisers Act of 1940, as amended;

(10)    one of the following entities which was not formed for the specific purpose of making an investment in the Partnership and which has total assets in excess of $5,000,000:

__X____    (A)    a corporation, limited liability company or partnership;

_____    (B)    an organization described in Section 501(c)(3) of the United States Internal Revenue Code of 1986, as amended; or

_____    (C)    a Massachusetts or similar business trust;

_____    (11)    a trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring limited partnership interests of the Partnership, whose purchase of the limited partnership interests offered is directed by a person with such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in such limited partnership interests; or

_____*    (12)    an entity in which all of the equity owners are "accredited investors."

*See Section (b) below*

(b)    If the Transferee is an accredited investor for the reason described in Part I(a)(8)(C) above, **a separate Investor Qualification Statement must be submitted for each person making investment decisions for the Transferee**. If the Transferee is an accredited investor for the reason described in Part I(a)(12) above, **a separate Investor Qualification Statement must be submitted for each stockholder, partner, member or other beneficial owner of the Transferee**. *In the event the Transferee is an accredited investor for any of the reasons referenced in this paragraph, the Transferee may be required to enter into a*

*letter agreement with the Partnership restricting direct and indirect transfers of beneficial
interests in the Transferee to accredited investors.*

      (c)    If the Transferee described in Part I(a) is not a "U.S. Person" as defined in
Rule 902 of Regulation S and set forth on <u>Appendix B</u> hereto, and is not acquiring a limited
partnership interest in the Partnership for the benefit of a U.S. Person, please mark this box with
an "X": ☐.

## Part II.  Investment Company Act Matters.

      (a)    The Transferee is one of the following:

      (i)    an "investment company," as defined in Section 3 of the United
States Investment Company Act of 1940, as amended (the
"<u>Investment Company Act</u>"), registered or required to be
registered under the Investment Company Act; or

      (ii)    a "business development company," as defined in Section 2(a)(48)
of the Investment Company Act.

_____ True \_\_\_\_\_X_____ False

      (b)    The Transferee would be an "investment company" as defined in Section
3(a) of the Investment Company Act if it were not exempt from such
definition due to Section 3(c)(1) or Section 3(c)(7) of the Investment
Company Act.

_____ True \_\_\_\_\_X_____ False

      (c)    <u>If the answer to Part II(a) or (b) above is "True,"</u> the Transferee's
commitment to the Partnership is less than ten percent (10%) of the
Partnership's committed capital committed by all of its limited partners
(leave blank if the answers to both <u>Part II(a)</u> and <u>(b)</u> above are "False").

_____ True _____ False

      (d)    <u>If the answer to Part II(c) above is "False,"</u> the number of direct or indirect
beneficial owners of the Transferee's securities as interpreted under the
Investment Company Act (other than short-term paper, as such term is
interpreted under the Investment Company Act) is _____ (leave
blank if the answer to <u>Part II(c)</u> above is "True" or blank).

**If at any time during the term of the Partnership any statement in
<u>Part II(a)</u>, <u>(b)</u>, <u>(c)</u>, or <u>(d)</u> shall no longer be accurate if made at such
time, the Transferee shall promptly notify the general partner of the
Partnership (the "<u>General Partner</u>").**

(e)    The Transferee was <u>not</u> formed or reformed (as interpreted under the Investment Company Act) for the purpose of acquiring limited partnership interests of the Partnership.

_____X_____ True _____ False

(f)    The Transferee's commitment to the Partnership is less than forty percent (40%) of the Transferee's assets (including committed capital).

_____X_____ True    _____ False

(g)    The Transferee has made investments prior to the date hereof or intends to make investments in the near future and each beneficial owner of interests in the Transferee has shared and will share in the same proportion in each such investment (e.g., no beneficial owner of the Transferee may vary its interests in different investments made by or on behalf of the Transferee).

_____X_____ True    _____False

(h)    The governing documents of the Transferee require that each beneficial owner of the Transferee including, but not limited to, shareholders, partners and beneficiaries, participate through his, her or its interest in the Transferee in all of the Transferee's investments and that the profits and losses from each such investment are shared among such beneficial owners in the same proportions as all other investments of the Transferee. No such beneficial owner may vary his, her or its share of the profits and losses or the amount of his, her or its contribution for any investment made by the Transferee.

_____X_____ True    _____ False

(i)    The Transferee is not managed as a device for facilitating individual investment decisions of its beneficial owners, but rather is managed as a collective investment vehicle (e.g., no beneficial owner of the Transferee has the right to "opt out" of an investment or has individual discretion over the amount of his, her or its investment).

_____X_____ True    _____ False

**Part III. Investment Advisers Act Matters.**

**(Note that the ability to give a response of "True" to each of questions (b), (c) and (d) below that apply qualifies the Transferee as a "qualified client" under the United States Investment Advisers Act of 1940, as amended, and the rules and regulations promulgated thereunder (the "<u>Investment Advisers Act</u>").)**

     (j)    The Transferee is:

          (i)    an entity which is registered as an "investment company" under the Investment Company Act, or which would be an "investment company" as defined in Section 3(a) of the Investment Company Act if it were not exempt from such definition due to Section 3(c)(1) of the Investment Company Act;

              _____ True       \_\_\_\_\_X_____ False

          (ii)    a "business development company" as defined in Section 202(a)(22) of the Investment Advisers Act.

              _____ True       \_\_\_\_\_X_____ False

     (k)    If the Transferee answered "False" to each part of <u>Part III(a)</u> above, the Transferee either (i) has a net worth in excess of $1,500,000 or (ii) is making a commitment to the Partnership of at least $750,000.

          \_\_\_\_\_X_____ True       _____ False

     (l)    If the Transferee answered "True" to any part of <u>Part III(a)</u> above (a "<u>Look-Through Entity</u>"), each equity owner of the Transferee either (i) has a net worth (including, for natural persons, assets held jointly with such person's spouse) in excess of $1,500,000 or (ii) is making a direct or indirect commitment to the Partnership of at least $750,000.

          _____ True       _____ False

     (m)    If the Transferee is a Look-Through Entity <u>and</u> any direct or indirect equity owner of the Transferee is also a Look-Through Entity, each equity owner of such direct or indirect equity owner either (i) has a net worth (including, for natural persons, assets held jointly with such person's spouse) in excess of $1,500,000 or (ii) is making a direct or indirect commitment to the Partnership of at least $750,000.

          _____ True       _____ False

**Part IV.  Qualified Purchaser Matters.**

        (n) Please indicate with an "X" the category or categories, if any, that accurately describe the Transferee and qualify it as a "qualified purchaser" as defined under the Investment Company Act:

__X___       (1)       an entity acting for its own account or the accounts of other qualified purchasers, that:  (i) was not formed or reformed for the specific purpose of acquiring the securities offered by the Partnership; and (ii) which in the aggregate owns and invests on a discretionary basis not less than $25,000,000 in Investments;[2]

_____*       (2)       a trust: (i) that was not formed or reformed for the specific  purpose of acquiring the securities offered by the Partnership; and (ii) as to which the trustee or other person authorized to make decisions with respect to the trust, and each settlor or other person who has contributed assets to the trust, is a qualified purchaser as described in clause (a)(1) or (a)(3) or is a natural person who owns at least $5,000,000 of Investments;

*See Section (b) below*

_____*       (3)       a company as defined in Section 2(a)(8) of the Investment Company Act[3] that:  (i) was not formed or reformed for the specific purpose of acquiring the securities offered by the Partnership; (ii) owns not less than $5,000,000 in Investments; and (iii) is owned, directly or indirectly, only by or for 2 or more natural persons who are related as siblings or spouses (including former spouses), or direct lineal descendants by birth or adoption, spouses of such persons, the estates of such persons, or foundations, charitable organizations, or trusts established by or for the benefit of such persons (a "Family Company");

*See Section (b) below*

_____*       (4)       a company in which each beneficial owner of such company's securities is a qualified purchaser;

*See Section (b) below*

---

    [2]   See Appendix A to this Investor Qualification Statement for the definition of "Investments."  In determining whether a company is a qualified purchaser pursuant to Part IV(a)(1) there may be included Investments owned by majority-owned subsidiaries of the company, Investments owned by a company (the "Parent Company") of which the company is a majority-owned subsidiary, or by a majority-owned subsidiary of the company and other majority-owned subsidiaries of the Parent Company.

    [3]   Section 2(a)(8) of the Investment Company Act defines a "company" as "a corporation, a partnership, an association, a joint-stock company, a trust, a fund, or any organized group of persons whether incorporated or not; or any receiver, trustee in a case under Title 11 of the United States Code or similar official or any liquidating agent for any of the foregoing, in his capacity as such."

_____  (5)  a qualified institutional buyer as defined in paragraph (a) of Section 230.144A(a) under the Code of Federal Regulations (the "<u>CFR</u>"), acting for its own account, the account of another qualified institutional buyer or the account of a qualified purchaser provided:  (i) a dealer described in paragraph (a)(1)(ii) of Section 230.144A of the CFR owns and invests on a discretionary basis at least $25 million in securities of issuers that are not affiliated persons of the dealer; and (ii) a plan referred to in paragraph (a)(1)(D) or (a)(1)(E) of Section 230.144A of the CFR or a trust fund referred to in paragraph (a)(1)(F) of Section 230.144A of the CFR that holds the assets of such a plan, will not be deemed to be acting for its own account if investment decisions with respect to the plan are made by the beneficiaries of the plan, except with respect to investment decisions made solely by the fiduciary, trustee or sponsor of such plan; or

_____  (6)  the Transferee is <u>not</u> a "qualified purchaser" as defined under the Investment Company Act.

(o)  **If the Transferee is a qualified purchaser for the reason described in Part IV(a)(2) above**, a separate Investor Qualification Statement must be submitted for each trustee, or other person authorized to make decisions with respect to the trust and each settlor or other person who has contributed assets to the trust.  **If the Transferee is a qualified purchaser for the reason described in Part IV(a)(3) above**, additional information regarding the direct and indirect owners of the Family Company may need to be provided to the General Partner.  **If the Transferee is a qualified purchaser for the reason described in Part IV(a)(4) above**, a separate Investor Qualification Statement must be submitted for each beneficial owner of the Transferee's securities.  *In the event the Transferee is a qualified purchaser for the reasons referenced in <u>Part IV(a)(3)</u> or <u>Part IV(a)(4)</u>, the Transferee may be required to enter into a letter agreement with the Partnership restricting direct and indirect transfers of beneficial interests in the Transferee to, in the case of <u>Part IV(a)(3)</u>, qualified family members and, in the case of <u>Part IV(a)(4)</u>, qualified purchasers.*

(p)  If the Transferee is a company formed on or before April 30, 1996 that relies on the exceptions provided for in Section 3(c)(1) or 3(c)(7) of the Investment Company Act to be exempt from registration as an investment company under the Investment Company Act (an "<u>excepted investment company</u>"), the Transferee hereby represents and warrants that all consents required under the Investment Company Act to the Transferee's treatment as a qualified purchaser have been obtained.[4]

---

[4]  The Investment Company Act and the rules and regulations thereunder require that (i) all "beneficial owners" of outstanding securities (other than "short-term paper") of such Transferee that acquired their interests on or before April 30, 1996, and (ii) all "beneficial owners" of any other excepted investment company that is a "beneficial owner" of outstanding securities (other than "short-term paper") of such Transferee that acquired their interests in such other excepted investment company on or before April 30, 1996, consent to such treatment.  Terms in quotes in the preceding sentence refer to such terms as interpreted under the Investment Company Act.  The unanimous consent of all trustees, directors or general partners of a beneficial owner which is a trust or company referred to in <u>Part IV(a)(2)</u> or <u>Part IV(a)(3)</u> shall constitute consent of a beneficial owner for purposes of this <u>Part IV(c)</u>.

**Part V.  Miscellaneous Matters.**

(q)     <u>Benefit Plan Matters</u>.  The Transferee hereby notifies the General Partner and the Partnership that the following statements are true as indicated:

(1)     The Transferee is an employee benefit plan that is subject to the provisions of Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

\_\_\_\_\_ Yes      \_\_X\_\_\_ No

(2)     The Transferee is an individual retirement account or annuity or other plan that is subject to Code §4975 (an "IRA").

\_\_\_\_\_ Yes      \_\_X\_\_\_ No

(3)     The Transferee is an insurance company general account whose underlying assets are deemed under ERISA and applicable regulations to include "plan assets" of one or more "employee benefit plans" subject to ERISA.

\_\_\_\_\_ Yes      \_\_X\_\_\_ No

If Yes, the percentage of the Transferee's assets that are deemed to be "plan assets" is and will continue to be no more than _____% (specify maximum percentage).

(4)     The Transferee is an entity, account or other pooled investment fund, such as a fund of funds or group trust, whose underlying assets are deemed under United States Department of Labor regulations at § 2510.3-101 et seq., as amended by Section 3(42) of ERISA (the "Plan Asset Regulations"), to include "plan assets" of any "employee benefit plan" subject to ERISA or IRA.

\_\_\_\_\_ Yes      \_\_X\_\_\_ No

If Yes, the percentage of the Transferee's assets that are deemed to be "plan assets" is and will continue to be no more than _____% (specify maximum percentage).

(5)     The Transferee is an entity, account or other pooled investment fund, such as a fund of funds or group trust, that may now or in the future have equity investors, partners, members, beneficiaries, or other beneficial owners that are "employee benefit plans" subject to ERISA or IRAs, but whose underlying assets are not currently deemed under the Plan Asset Regulations to include "plan assets" of any "employee benefit plan" subject to ERISA or IRA because investment by "employee benefit plans" is not "significant" (currently defined as 25% or more of any class of the vehicle's equity interests disregarding interests held by fund managers or their affiliates) or the Transferee complies with another applicable exception under the Plan Asset Regulations.

_____ Yes     __X___ No

If Yes, the Transferee complies with and intends to continue to comply with (Check applicable exception under the Plan Asset Regulations):

_____     the "significant participation" exception.  The current percentage the Transferee's underlying assets that are held by "employee benefit plans" is and will continue to be no more than _____% (specify maximum percentage).

_____     the Venture Capital Operating Company exception

_____     the Real Estate Operating Company exception

_____     another applicable exception under the Plan Asset Regulations (Please specify, including where the Transferee is permitted to rely on multiple exceptions)

(r)     <u>Notifications</u>.  The Transferee hereby notifies the General Partner and the Partnership that it is (check any and all that apply):

_____     (1)     a Limited Partner subject to the "BHCA" (as defined in the Agreement of Exempted Limited Partnership of the Partnership (the "<u>Partnership Agreement</u>")), but is investing under Section 4(k) of the BHCA and is thus <u>not</u> a "BHCA Limited Partner" (as defined in the Partnership Agreement);

_____     (2)     a BHCA Limited Partner;

_____     (3)     a "Governmental Plan Partner" (as defined in the Partnership Agreement);

_____     (4)     a "Tax Exempt Partner" (as defined in the Partnership Agreement); and/or

__X____     (5)     "not a United States person under §7701(a)(30) of the United States Internal Revenue Code of 1986, as amended".

(s)    <u>Type of Entity</u>.  The Transferee represents that it is:

__X____    (1)    a corporation;

_____    (2)    a general partnership;

_____    (3)    a limited partnership;

_____    (4)    a limited liability company;

_____    (5)    an unincorporated agency or instrumentality of the government of
_____ (specify city, state, province, country and/or other
jurisdiction);

_____    (6)    a trust of the following type: _____ (e.g., charitable remainder
trust, etc.); or

_____    (7)    the following other form of entity:

_____.

(t)    <u>Jurisdiction of Organization</u>.    The Transferee represents that its
jurisdiction of organization is <u>Hong Kong</u>.

(u)    <u>Domicile</u>.  The Transferee represents that it is domiciled in <u>Hong Kong</u>
(specify state or non-U.S. jurisdiction, including the applicable city, province or other
subdivision thereof).

(v)    <u>Non-Resident Indian Ownership</u>.    The Transferee is:

(1)    an entity (other than a trust) which is at least 60% owned, directly or
indirectly, by Non-Resident Indians;[5]

_____X_____ True _____ False

---

[5]    For purposes of this item, a "<u>Non-Resident Indian</u>" means a person resident outside India who is a citizen
of India or is a "Person of Indian Origin."  For purposes of this item, a "<u>Person of Indian Origin</u>" means a citizen of
any country other than Bangladesh or Pakistan, if (i) he at any time held an Indian passport; (ii) he or either of his
parents or any of his grandparents was a citizen of India by virtue of the Constitution of India or the Citizenship Act,
1955 (57 of 1955); or (iii) the person is a spouse of an Indian citizen or a person referred to in sub-clause (i) or (ii).
For purposes of this item, a "<u>Person Resident in India</u>" means (i) a person residing in India for more than one
hundred and eighty two (182) days during the course of the preceding financial year, but does not include (A) a
person who has gone out of India or who stays outside India, in either case, (1) for employment outside India, (2) for
carrying on a business or vocation outside India, or (3) for any other purpose, in such circumstances as would
indicate his intention to stay outside India for an uncertain period; or (B) a person who has come to or stays in India,
in either case, otherwise than (1) for employment in India, (2) for carrying on a business or vocation in India; or (3)
or for any other purpose in such circumstances as would indicate his intention to stay in India for an uncertain
period; (ii) any person or corporate body registered or incorporated in India; (iii) an office, branch or agency in India
owned or controlled by a person resident outside India; or (iv) an office, branch or agency outside India owned or
controlled by a person resident in India.

(2)      an irrevocable trust which is at least 60% owned, directly or indirectly, by Non-Resident Indians.

_____ True   _____X_____ False

The Transferee hereby represents and warrants that all of the answers, statements and information set forth in this Investor Qualification Statement are true and correct on the date hereof and will be true and correct on the closing date of the transfer of the Transferred Interest set forth in the Transfer Agreement to which this Investor Qualification Statement is attached. The Transferee hereby agrees to provide such additional information related to the foregoing as is requested by the General Partner and to notify the General Partner promptly of any change that may cause any answer, statement or information set forth in this Investor Qualification Statement to become untrue in any material respect.

*      *      *      *      *

IN WITNESS WHEREOF, the Transferee has executed this Investor Qualification Statement on the date set forth below.

Dated _____ ___, ____

Transferee's Name:     **Berkeley Investment Ltd.**
                                       (print or type)

By: _____
              (signature of authorized representative)

Name: _____
        (print or type name of authorized representative)

Title: _____
        (print or type title of authorized representative)

Transferee's Tax Identification No.: _____

## EXHIBIT E

### Withdrawal of Claim Form

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
```
| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
```
-------------------------------------------------------------x
```

### WITHDRAWAL OF CLAIM

| | |
|---|---|
| Debtor Name and Case Number: | Lehman Brothers Holdings Inc., Case Number: 08-13555 |
| Creditor Name and Address: | New Silk Route PE Asia Fund, L.P.<br>c/o New Silk Route Partners, Ltd.<br>540 Madison Avenue, 38th Floor<br>New York, NY 10022<br>Attn: Rishi Gupta<br>Phone: (212) 710-5232 |
| Claim Number (if known): | **This Withdrawal of Claim applies solely with respect to Proof of Claim Number [_____],** it being understood and agreed that this Withdrawl of Claim is without prejudice to all other proofs of claim filed by New Silk Route Partners, Ltd. or its affiliates. |
| Date Claim Filed: | September 10, 2009 |
| Total Amount of Claim Filed: | (see claim) |

I, the undersigned, am the above-referenced creditor, or an authorized signatory for the above-referenced creditor. I hereby withdraw the above-referenced claim and authorize the Debtors' claims and noticing agent to file and reflect this withdrawal on the official claims register for the above-referenced Debtor.

| | |
|---|---|
| Signature: | Title: |
| Printed Name: | Dated: |

## DEFINITIONS

*Debtor*
The person, corporation or other entity that has filed a bankruptcy case is called the debtor.

*Creditor*
A creditor is any person, corporation, or other entity to which the debtor owed a debt.

*Proof of Claim*
A form filed with the clerk of the bankruptcy court where the bankruptcy case was filed or the Debtors' authorized claims and noticing agent, to tell the bankruptcy court how much the debtor owed a creditor (the amount of the creditor's claim).

## ITEMS TO BE COMPLETED ON THIS WITHDRAWAL OF CLAIM

*Name of Debtor and Case Number:*
Fill in the name of the debtor in the bankruptcy case, and the bankruptcy case number.  A list of the Debtors and their case numbers is provided below.

| | | | | | |
|---|---|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC | 08-13904 | Lehman Scottish Finance L.P. |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC | 08-13664 | PAMI Statler Arms LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC | 08-13902 | Lehman Brothers Financial Products In |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. | 09-17331 | Merit, LLC |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC | 09-17503 | LB Somerset LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation | 09-17505 | LB Preferred Somerset LLC |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC | | |

*Information about Creditor:*
Complete the section giving the name and address of the creditor that was listed on the previously filed Proof of Claim form.

*Information identifying the Proof of Claim that is to be withdrawn:*
Complete the section giving the claim number, date claim was filed and total amount of claim filed to help identify the claim that is to be withdrawn.

**Sign and print the name and title, if any, of the creditor or other person authorized to file this withdrawal of claim (attach copy of power of attorney, if any).**

**THIS FORM MUST BE SENT TO EPIQ BANKRUPTCY SOLUTIONS LLC, THE DEBTORS' AUTHORIZED CLAIMS AND NOTICING AGENT AT:**

**Epiq Bankruptcy Solutions, LLC**
**Attn: Lehman Brothers Holdings**
**757 Third Avenue, 3rd Floor**
**New York, New York 10017**

<u>Exhibit F</u>

Form of Statement

## <u>CERTIFICATE OF NON-FOREIGN STATUS</u>
## <u>OF</u>
## <u>LEHMAN BROTHERS HOLDINGS INC.</u>

[        ], 2010

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person.  For U.S. tax purposes (including section 1445), the owner of a disregarded entity (which has legal title to a U.S. real property interest under local law) will be the transferor of the property and not the disregarded entity. To inform Berkeley Investment Ltd., (the "<u>Transferee</u>"), that withholding of tax is not required upon the disposition of a U.S. real property interest by Lehman Brothers Holdings Inc. (the "<u>Transferor</u>"), pursuant to that certain Transfer Agreement dated [        ], 2010, among the Transferor, New Silk Route PE Associates, L.P., New Silk Route PE Asia Fund, L.P. and the Transferee, the undersigned hereby certifies to the Transferee the following on behalf of the Transferor:

1.    The Transferor is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2.    The Transferor is not a disregarded entity as defined in §1.1445-2(b)(2)(iii);

3.    The Transferor's U.S. employer identification number is [              ]; and

4.    Transferor's office address is 1271 Avenue of the Americas – 38th Floor, New York, NY 10020.

The Transferor understands that this certification may be disclosed to the Internal Revenue Service by the Transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury, I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct, and complete, and I further declare that I have authority to sign this document on behalf of the Transferor.

**[The Remainder of This Page Is Intentionally Left Blank.]**

IN WITNESS WHEREOF, the party hereto has executed this Certificate as of this [   ]
day of [        ] 2010.

**LEHMAN BROTHERS HOLDINGS INC.**

**By:** _____
**Name:**
**Title:**

## APPENDIX A
### To Individual and Entity Investor Qualification Statements

### Definition of "Investment" for purposes of the Investment Company Act

For purposes of determining whether the Transferee qualifies as a "qualified purchaser" under the Investment Company Act, the term Investments[1] means:

(1) Securities (as defined by Section 2(a)(1) of the Act), other than securities of an issuer that controls, is controlled by, or is under common control with the Transferee, unless the issuer of such securities is: (A) an investment company, a company that would be an investment company but for an exclusion provided by Sections 3(c)(1) through 3(c)(9) of the Investment Company Act or the exemptions provided by Section 270.3a-6 or 270.3a-7 of CFR, or a commodity pool; (B) a company that files reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 or has a class of securities that are listed on a "designated offshore securities market" as such term is defined by Regulation S under the Securities Act of 1933; or (C) a company with shareholders' equity of not less than $50 million (determined in accordance with generally accepted accounting principles) as reflected on the company's most recent financial statements, provided that such financial statements present the information as of a date within 16 months preceding the date on which the Transferee will acquire the securities of the Partnership;

(2) Real estate held for investment purposes. Real estate shall not be considered to be held for investment purposes by the Transferee if it is used by the Transferee or a Related Person (A) for personal purposes or as a place of business, or (B) in connection with the conduct of the trade or business of the Transferee or a Related Person, provided that real estate owned by the Transferee if the Transferee is engaged primarily in the business of investing, trading or developing real estate in connection with such business may be deemed to be held for investment purposes. Residential real estate shall not be deemed to be used for personal purposes if deductions with respect to such real estate are not disallowed

---

[1] For purposes of determining whether the Transferee is a qualified purchaser, the aggregate amount of Investments owned and invested on a discretionary basis by the Transferee will be the Investments' fair market value on the most recent practicable date, or their cost; *provided* that: (i) in the case of Commodity Interests (as defined in paragraph 3 of this Appendix A), the amount of Investments will be the value of the initial margin or option premium deposited in connection with such Commodity Interests; and (ii) in each case, deduct from the amount of Investments owned by the Transferee the following amounts, as applicable: (a) the amount of any outstanding indebtedness incurred to acquire or for the purpose of acquiring the Investments owned by the Transferee (including, in the case of any joint Investments, any outstanding indebtedness incurred by the spouse to acquire or for the purpose of acquiring the Investments) and (b) in addition to the amount specified in clause (a) of this sentence with respect to a Family Company (described in Part IV(a)(3) of the Investor Qualification Statement for Entities), the amount of outstanding indebtedness incurred by an owner of the Family Company to acquire or for the purpose of acquiring such Investments.

by Section 280A of the United States Internal Revenue Code of 1986, as amended. A "Related Person" means a person who is related to the Transferee as a sibling, spouse or former spouse, or is a direct lineal descendant or ancestor by birth or adoption of the Transferee or is a spouse of such descendant or ancestor; provided that, in the case of a Family Company, a Related Person includes any owner of the Family Company and any person who is a Related Person of such owner;

(3)     Commodity Interests held for investment purposes. "Commodity Interests" means commodity futures contracts, options on commodity futures contracts, and options on physical commodities which are traded on or subject to the rules of any contract market designated for trading such transactions under the Commodity Exchange Act and the rules thereunder or any board of trade or exchange outside the United States, as contemplated in Part 30 of the rules under the Commodity Exchange Act. A Commodity Interest owned by the Transferee who is engaged primarily in the business of investing, reinvesting, or trading in Commodity Interests in connection with such business may be deemed to be held for investment purposes;

(4)     Physical Commodities held for investment purposes. "Physical Commodity" means any physical commodity with respect to which a Commodity Interest is traded on or subject to the rules of any contract market designated for trading such transactions under the Commodity Exchange Act and the rules thereunder or any board of trade or exchange outside the United States, as contemplated in Part 30 of the rules under the Commodity Exchange Act. A Physical Commodity owned by the Transferee who is engaged primarily in the business of investing, reinvesting, or trading in Physical Commodities in connection with such business may be deemed to be held for investment purposes;

(5)     To the extent not securities, financial contracts (as such term is defined in Section 3(c)(2)(B)(ii) of the Investment Company Act) entered into for investment purposes. A financial contract entered into by the Transferee who is engaged primarily in the business of investing, reinvesting, or trading in financial contracts in connection with such business may be deemed to be held for investment purposes;

(6)     If the Transferee is a commodity pool or company that would be an investment company except that it is relying on an exception provided in Section 3(c)(1) or Section 3(c)(7) of the Investment Company Act, any amounts payable to the Transferee pursuant to a firm agreement or similar binding commitment pursuant to which a person has agreed to acquire an interest in, or make capital contributions to, the Transferee upon the demand of the Transferee; and

(7)    Cash and cash equivalents (including in currencies other than the US dollar) held for investment purposes, including:  (A) bank deposits, certificates of deposit, bankers acceptances and similar bank instruments held for investment purposes; and (B) the net cash surrender value of an insurance policy.

## APPENDIX B
### To  Individual and Entity Investor Qualification Statements

### <u>Definition of "U.S. Person" for purposes of the Securities Act</u>

"<u>U.S. Person</u>" means:

(i)     Any natural person resident in the United States;

(ii)    Any partnership or corporation organized or incorporated under the laws of the United States;

(iii)   Any estate of which any executor or administrator is a U.S. Person;

(iv)    Any trust of which any trustee is a U.S. Person;

(v)     Any agency or branch of a non-United States entity located in the United States;

(vi)    Any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. Person;

(vii)   Any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; and

(viii)  Any partnership or corporation if:

    (A) Organized or incorporated under the laws of any non-United States jurisdiction; and

    (B) Formed by a U.S. Person principally for the purpose of investing in securities not registered under the Act, unless it is organized or incorporated, and owned by accredited investors (as defined in Regulation D) who are not natural persons, estates or trusts.

**However, the following are <u>not</u> U.S. Persons:**

(i)     Any discretionary account or similar account (other than an estate or trust) held for the benefit or account of a non-U.S. Person by a dealer or other professional fiduciary organized, incorporated, or (if an individual) resident in the United States;

(ii)    Any estate of which any professional fiduciary acting as executor or administrator is a U.S. Person if:

(C) An executor or administrator of the estate who is not a U.S. Person has sole or shared investment discretion with respect to the assets of the estate; and

(D) the estate is governed by non-United States law;

(iii)    Any trust of which any professional fiduciary acting as trustee is a U.S. Person, if a trustee who is not a U.S. Person has sole or shared investment discretion with respect to the trust assets, and no beneficiary of the trust (and no settlor if the trust is revocable) is a U.S. Person;

(iv)    An employee benefit plan established and administered in accordance with the law of a country other than the United States and customary practices and documentation of such country;

(v)    Any agency or branch of a U.S. Person located outside the United States if:

(E) The agency or branch operates for valid business reasons; and

(F) The agency or branch is engaged in the business of insurance or banking and is subject to substantive insurance or banking regulation, respectively, in the jurisdiction where located; and

(vi)    The International Monetary Fund, the International Bank for Reconstruction and Development, the Inter-American Development Bank, the Asian Development Bank, the African Development Bank, the United Nations, and their agencies, affiliates and pension plans, and any other similar international organizations and their agencies, affiliates and pension plans.