

**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
**Tel** +32 16 28 41 10 • **Fax** +32 16 28 41 11 • RPR Leuven, VAT BE 0455.

**EASDAQ**

Maatschappelijke zetel: Lei 19 Bus 11,
B-3000 Leuven, België

RPR Leuven 0455.240.893

(de "**Vennootschap**")

---

**UITNODIGING VOOR DE BUITENGEWONE ALGEMENE VERGADERING VAN AANDEELHOUDERS VAN EASDAQ NV DIE ZAAL PLAATSVINDEN OP OF ROND 24 JUNI 2010**

---

Per aangetekend schrijven.
De Bijlagen maken integraal uit van deze uitnodiging.

Hierbij worden de aandeelhouders, warranthouders, bestuurders en commissaris van EASDAQ NV (de "**Vennootschap**") uitgenodigd voor een Buitengewone Algemene Vergadering van de aandeelhouders van de Vennootschap ("**BAV**") die zal plaatsvinden in de kantoren van of Berquin Notarissen, **Lloyd Georgelaan 11, B-1000 Brussel**, om **11u** op **24 juni 2010**, om te beraadslagen en te beslissen over de punten en voorstellen die hierna zijn uiteengezet.

**Agenda**

1. Beslissing dat de beslissingen van de algemene vergadering te nemen onder agendapunten (3), (6), (7), (8), (9), (10) en (11) interconditioneel zijn (de "**Opschortende Voorwaarde**")

2. Kennisname en bespreking van het bijzonder verslag van de raad van bestuur overeenkomstig artikel 560 van het Wetboek van vennootschappen ("**W. Venn.**") met betrekking tot, onder meer, (i) de afschaffing van alle bestaande klassen van aandelen en gelijkschakeling van alle rechten verbonden aan de bestaande aandelen (behoudens de bijzondere rechten toegekend aan bepaalde aandeelhouders overeenkomstig de statuten); (ii) wijziging van de statuten van de vennootschap tot vaststelling van de bijzondere rechten toegekend aan bepaalde aandeelhouders; en (iii) de bevestiging dat de bestaande warrants uitgegeven door de vennootschap voortaan bij uitoefening recht geven op gewone aandelen (Bijlage 1).

3. Beslissing tot (i) afschaffing van alle bestaande klassen van aandelen en tot gelijkschakeling van alle rechten verbonden aan de bestaande aandelen (behoudens de bijzondere rechten toegekend aan bepaalde aandeelhouders overeenkomstig de statuten); (ii) wijziging van de statuten van de vennootschap substantieel in de vorm zoals



**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
**Tel** +32 16 28 41 10 • **Fax** +32 16 28 41 11 • RPR Leuven, VAT BE 0455.

hier aangehecht (Bijlage 2); en (iii) bevestiging dat de bestaande warrants uitgegeven door de vennootschap voortaan bij uitoefening recht geven op gewone aandelen;

4. Kennisname en bespreking van het gecombineerd bijzonder verslag van de Raad van Bestuur op basis van: (i) de artikelen 582, 596 en 598 W. Venn. met betrekking tot de uitgifte van nieuwe aandelen beneden de fractiewaarde van de bestaande aandelen en met opheffing van het voorkeurrecht ten gunste van Knight Capital Group, Inc. ("**Knight**").; (ii) de artikelen 582 en 602 W. Venn. met betrekking tot de uitgifte van nieuwe aandelen beneden de fractiewaarde van de bestaande aandelen aan Börse Berlin AG ("**BSX**") door een inbreng in natura van (de gehele of een deel van) de IP Transfer Consideration of (de gehele of een deel van) de hoofdsom of de verworven interesten onder de 2009 Leningsovereenkomst en ; (iii) de artikelen 582, 583, 596 en 598 W. Venn. met betrekking tot de uitgifte van warrants ten gunste van Knight met een uitoefenprijs die lager is dan de fractiewaarde van de bestaande aandelen en met opheffing van het voorkeurrecht; en (iv) de artikelen 582, 583, 596, 598 en 602 W. Venn. met betrekking tot de uitgifte van warrants ten gunste van BSX met een uitoefenprijs die lager is dan de fractiewaarde van de bestaande aandelen, uitoefenbaar ofwel (a) in geld en met opheffing van het voorkeurrecht, ofwel (b) in natura, door de inbreng van het saldo (in voorkomend geval) van de IP Transfer Consideration en/of de inbreng van het saldo (in voorkomend geval) van de hoofdsom en de verworven interesten onder de 2009 Leningsovereenkomst (Bijlage 3).

5. Kennisname en bespreking van het verslag van de commissaris op basis van: (i) de artikelen 582, 596 en 598 W. Venn. met betrekking tot de uitgifte van nieuwe aandelen beneden de fractiewaarde van de bestaande aandelen en met opheffing van het voorkeurrecht ten gunste van Knight.; (ii) de artikelen 582 en 602 W. Venn. met betrekking tot de uitgifte van nieuwe aandelen beneden de fractiewaarde van de bestaande aandelen aan BSX door een inbreng in natura van (de gehele of een deel van) de IP Transfer Consideration of (de gehele of een deel van) de hoofdsom of de verworven interesten onder de 2009 Leningsovereenkomst; (iii) de artikelen 582, 596 en 598 W. Venn. met betrekking tot de uitgifte van warrants ten gunste van Knight met een uitoefenprijs die lager is dan de fractiewaarde van de bestaande aandelen en met opheffing van het voorkeurrecht; en (iv) de artikelen 582, 596, 598 en 602 W. Venn. met betrekking tot de uitgifte van warrants ten gunste van BSX met een uitoefenprijs die lager is dan de fractiewaarde van de bestaande aandelen, uitoefenbaar ofwel (a) in geld en met opheffing van het voorkeurrecht, ofwel (b) in natura, door de inbreng van het saldo (in voorkomend geval) van de IP Transfer Consideration en/of de inbreng van het saldo (in voorkomend geval) van de hoofdsom en de verworven interesten onder de 2009 Leningsovereenkomst (Bijlage 4).

6. Beslissing tot verhoging van het kapitaal van de vennootschap met een bedrag gelijk aan USD 5.000.000 omgezet in euro aan de wisselkoers voor conversie van US dollars in euro van toepassing op het tijdstip van de omzetting (de "**Knight Inschrijvingsprijs**"), die



**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
**Tel** +32 16 28 41 10 • **Fax** +32 16 28 41 11 • RPR Leuven, VAT BE 0455.

op datum van deze uitnodiging verwacht wordt plaats te vinden op of rond 10 juni 2010, door uitgifte van 8.735.111 nieuwe gewone aandelen, beneden de fractiewaarde van de bestaande aandelen, met opheffing van het voorkeurrecht van de aandeelhouders ten gunste van Knight, en onmiddellijk te volstorten. De uitgifteprijs per nieuw aandeel is vastgesteld op een bedrag gelijk aan de Knight Inschrijvingsprijs gedeeld door de 8.735.111 uit te geven nieuwe gewone aandelen (de "**Uitgifteprijs**").

7. Beslissing tot verhoging van het kapitaal van de Vennootschap door uitgifte van 888.298 gewone aandelen, beneden de fractiewaarde van de bestaande aandelen en onmiddellijk te volstorten, door een inbreng in natura van een of meer schuldvorderingen van BSX verschuldigd door de Vennootschap ten belope van een bedrag in hoofdsom (of interest) gelijk aan de totale Uitgifteprijs van de 888.298 aan BSX uit te geven nieuwe aandelen (de "**BSX Inschrijvingsprijs**"). De aldus in te brengen schuldvorderingen zullen bestaan uit: (x) de vordering van BSX op de betaling door de Vennootschap van de schuld van EUR 500.000 betaalbaar door de Vennootschap aan BSX voor de overdracht van bepaalde intellectuele eigendomsrechten, waaronder onder andere een Trademark Assignment (de "**IP Transfer Consideration**") onder de investeringsovereenkomst afgesloten op 20 juli 2009 tussen de Vennootschap, Citadel Tactical Investments LLC ("**Citadel**"), BSX en Dr. Jos B. Peeters, en (y) voor zover de IP Transfer Consideration niet voldoende is om de BSX Inschrijvingsprijs volledig te volstorten, een vordering van BSX tot terugbetaling van een deel van de bestaande uitstaande lening tussen BSX en de Vennootschap voor een bedrag (bestaande voor een deel uit het bedrag in hoofdsom (EUR 3.244.126,94) en daarop verworven interesten) gelijk aan het saldo van de BSX Inschrijvingsprijs dat aldus nog volgestort dient te worden.

8. Vaststelling van de verwezenlijking van de kapitaalverhoging, de volledige volstorting van de inbrengen, de uitgifte van nieuwe gewone aandelen en de gelijkschaking van de fractiewaarde van alle (bestaande en nieuwe) aandelen.

9. Beslissing tot uitgifte van één warrant aan Knight, met een uitoefenprijs beneden de fractiewaarde van de bestaande aandelen en met opheffing van het voorkeurrecht en beslissing tot uitgifte van één warrant aan BSX, met een uitoefenprijs beneden de fractiewaarde van de bestaande aandelen, uitoefenbaar ofwel (a) in geld en met opheffing van het voorkeurrecht, ofwel (b) in natura, door de inbreng van het saldo (in voorkomend geval) van de IP Transfer Consideration en/of de inbreng van het saldo (in voorkomend geval) van de hoofdsom en de verworven interesten onder de 2009 Leenovereenkomst (telkens met de uitgifte- en uitoefenvoorwaarden zoals uiteengezet in <u>Bijlage 4</u>).

10. Beslissing tot verhoging van het kapitaal van de Vennootschap onder opschortende voorwaarde van de uitoefening van de Warrants.



**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
**Tel** +32 16 28 41 10 • **Fax** +32 16 28 41 11 • RPR Leuven, VAT BE 0455.

11. Benoeming van een bestuurder, samen met andere kandidaten genomineerd voor benoeming door Knight, voor een termijn van zes jaar

12. Vaststelling van de realisatie van de Opschortende Voorwaarde

13. Beslissing tot wijziging van artikel 5 van de statuten van de Vennootschap als gevolg van de kapitaalverhoging.

14. Verlenen van kwijting aan de bestuurders in functie in 2010 voor de uitoefening van hun mandaat gedurende de periode van het boekjaar 2010 tot aan de datum van de BAV.

15. Volmacht aan eender welke twee bestuurders van de vennootschap, samen handelend, met macht van indeplaatsstelling, voor de uitvoering van de genomen beslissingen met betrekking tot de voorgaande agendapunten, met inbegrip van de bevoegdheid om de formaliteiten van artikel 591 van het W. Venn. te vervullen, in het bijzonder de authentieke vaststelling van de kapitaalverhoging en van het aantal aandelen uitgegeven bij de kapitaalverhoging, ingeval van uitoefening van de Warrants en de wijziging van de statuten om deze in overeenstemming te brengen met het nieuwe bedrag van het kapitaal en het nieuwe aantal aandelen.

16. Volmacht,, met mogelijkheid tot indeplaatsstelling, om de nodige formaliteiten te vervullen in verband met de "Kruispuntbank voor Ondernemingen", het "Ondernemingsloket" en de BTW, indien nodig.

17. Volmacht, met mogelijkheid tot indeplaatsstelling, om een gecoördineerde tekst van de statuten op te stellen, te ondertekenen en neer te leggen op de griffie van de bevoegde rechtbank van koophandel

Overeenkomstig artikel 28 van de statuten, dient iedere eigenaar van aandelen op naam, om te worden toegelaten tot de BAV, zijn intentie om aan de BAV deel te nemen, kenbaar te maken aan de raad van bestuur per e-mail aan at investor-relations@equiduct.eu, en dit ten laatste op 22 juni 2010.

Overeenkomstig artikel 29 van de statuten, heeft de raad van bestuur de vorm van de volmachten vastgesteld. Gelieve, aangehecht als Bijlage 4, een kopie te vinden van dit volmachtformulier dat kan worden ingevuld en bezorgd op de zetel van de Vennootschap, en dit ten laatste op 22 juni 2010.



**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
**Tel** +32 16 28 41 10 • **Fax** +32 16 28 41 11 • RPR Leuven, VAT BE 0455.

Voor de raad van bestuur,

Artur Fischer
Voorzitter

*Bijlagen (die integraal deel uitmaken van deze oproeping):*
1. Bijzonder verslag van de Raad van Bestuur op basis van artikel 560 W. Venn.
2. Voorstel tot aanpassing van de statuten van de Vennootschap

3. Bijzonder verslag van de Raad van Bestuur op basis van de artikelen 582, 583, 596, 598 en 602 W. Venn.
4. Verslag van de commissaris overeenkomstig de artikelen 582, 596, 598 en 602 W. Venn.
5. Volmachtformulier voor aandeelhouders



**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
**Tel** +32 16 28 41 10 • **Fax** +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

# EASDAQ

Limited liability company
Registered office: Lei 19 Box 11, 3000 Leuven
Company number: 0455.240.893

(the "**Company**")

## NOTICE FOR THE EXTRAORDINARY GENERAL MEETING OF THE SHAREHOLDERS OF EASDAQ NV TO BE HELD ON OR ABOUT 24 JUNE 2010

By registered mail.
The Exhibits are an integral part of this notice.

Notice is hereby given to the shareholders, warrantholders, directors and statutory auditor of EASDAQ NV (the "**Company**") for the Extraordinary General Meeting of the Company's shareholders (the "**EGM**") to be held at the offices of Berquin Notarissen, **1000 Brussels, Lloyd Georgelaan 11**, at **11.00 a.m.** on **24 June 2010**, to discuss and decide on the points and proposals set out in the following agenda.

## Agenda

1. Resolution that the resolutions of the shareholders meeting to be taken under agenda items (3), (6), (7), (8), (9), (10) and (11) are inter-conditional upon each other (the "**Condition Precedent**").

2. Acknowledgement of and deliberation on the Special Board Report pursuant to Article 560 of the Belgian Companies Code ("**BCC**") regarding, amongst other things: (i) the cancellation of all existing classes of shares and the equalization of all rights attaching to the existing shares (subject to specific rights granted to specific shareholders pursuant to the articles of association); (ii) the amendments to the articles of association to determine the specific rights granted to specific shareholders; and (iii) the confirmation that, henceforth, the existing warrants issued by the Company will entitle the holders thereof to ordinary shares upon exercise (Exhibit 1).

3. Resolution to: (i) cancel all existing classes of shares and equalize all rights attaching to the existing shares (subject to specific rights granted to specific shareholders pursuant to the articles of association); (ii) amend the Company's articles of association substantially in the form as attached hereto (Exhibit 2); and (iii) confirm that, henceforth, the existing warrants issued by the Company will entitle the holders thereof to ordinary shares upon exercise.

4.  Acknowledgement of and deliberation on the combined Special Board Report pursuant to: (i) Articles 582, 596 and 598 BCC regarding the issuance of new shares below the fractional value of the existing shares, with cancellation of the preferential subscription rights for the benefit of Knight Capital Group, Inc. ("**Knight**"); (ii) Articles 582 and 602 BCC regarding the issuance of new shares below the fractional value of the existing shares to Börse Berlin AG ("**BSX**"), by way of contribution in kind of (all or a portion of) the IP Transfer Consideration or (all or a portion of) the principal or accrued interest under the 2009 Loan Agreement; (iii) Articles 582, 583, 596 and 598 BCC regarding the issuance of warrants to Knight with an exercise price below the fractional value of the existing shares and with cancellation of the preferential subscription rights; and (iv) Articles 582, 583, 596, 598 and 602 BCC regarding the issuance of warrants to BSX with an exercise price below the fractional value of the existing shares, exercisable either (a) in cash, with cancellation of the preferential subscription rights, or (b) in kind, by way of the contribution of the balance (if any) of the IP Transfer Consideration and/or the contribution of the balance (if any) of the principal and accrued interest under the 2009 Loan Agreement (Exhibit 3).

5.  Acknowledgement of and deliberation on the report of the Statutory Auditor pursuant to: (i) Articles 582, 596 and 598 BCC regarding the issuance of new shares below the fractional value of the existing shares, with cancellation of the preferential subscription rights for the benefit of Knight Capital Group, Inc.; (ii) Articles 582 and 602 BCC regarding the issuance of new shares below the fractional value of the existing shares to BSX, by way of contribution in kind of (all or a portion of) the IP Transfer Consideration or (all or a portion of) the principal or accrued interest under the 2009 Loan Agreement; (iii) Articles 582, 596 and 598 BCC regarding the issuance of warrants to Knight with an exercise price below the fractional value of the existing shares and with cancellation of the preferential subscription rights; and (iv) Articles 582, 596, 598 and 602 BCC regarding the issuance of warrants to BSX with an exercise price below the fractional value of the existing shares, exercisable either (a) in cash, with cancellation of the preferential subscription rights, or (b) in kind, by way of the contribution of the balance (if any) of the IP Transfer Consideration and/or the contribution of the balance (if any) of the principal and accrued interest under the 2009 Loan Agreement (Exhibit 4).

6.  Resolution to increase the Company's share capital with an amount equal to USD 5,000,000 converted into euro at the exchange rate from conversion of US dollars into euro applicable at the time of conversion (the "**Knight Subscription Price**"), which is on the date of this notice expected to occur on or about 10 June 2010, by way of the issuance of 8,735,111 new ordinary shares, below the fractional value of the existing shares, with cancellation of the shareholders' preferential subscription rights for the benefit of Knight, and to be immediately fully paid up. The issue price per new share is set at an amount equal to the Knight Subscription Price divided by the 8,735,111 new ordinary shares to be issued (the "**Issue Price**").

7.  Resolution to increase the Company's share capital by way of the issuance of 888,298 new ordinary shares, below the fractional value of the existing shares and to be immediately fully paid up, by means of a contribution in kind of one or more receivables of

BSX due by the Company in an amount in principal (or interest) equal to the aggregate Issue Price of the 888,298 new shares to be issued to BSX (the "**BSX Subscription Price**"). The receivables to be so contributed shall consist of: (x) the claim of BSX to the payment by the Issuer of the debt of EUR 500,000 payable by the Company to BSX for the transfer of certain intellectual property rights, amongst other things by way of a Trademark Assignment (the "**IP Transfer Consideration**") under the investment agreement entered into on 20 July 2009 between the Company, Citadel Tactical Investments LLC ("**Citadel**"), BSX and Dr. Jos B. Peeters, and (y) to the extent the IP Transfer Consideration is not sufficient to pay up the BSX Subscription Price in full, a claim of BSX to the repayment of part of the existing loan outstanding between BSX and the Company in an amount (consisting of a part of the principal amount (EUR 3,244,126.94) with interest accrued thereon) equal to the balance of the BSX Subscription Price that remains to be so paid-up.

8. Acknowledgement of the realization of the capital increases, the payment in full of the contributions, the issuance of the new ordinary shares and equalization of the fractional value of all (existing and new) shares.

9. Resolution to issue one warrant to Knight, with an exercise price below the fractional value of the existing shares and with cancellation of the preferential subscription right and resolution to issue one warrant to BSX, with an exercise price below the fractional value of the existing shares, exercisable either (a) in cash, with cancellation of the preferential subscription rights, or (b) in kind, by way of the contribution of the balance (if any) of the IP Transfer Consideration and/or the contribution of the balance (if any) of the principal and accrued interest under the 2009 Loan Agreement (each time with the issue and exercise conditions set out in <u>Exhibit 4</u>).

10. Resolution to increase the Company's share capital subject to the condition precedent of the exercise of the Warrants.

11. Appointment of a director nominated for appointment among candidates proposed by Knight for a six year term.

12. Confirmation of the realization of the Condition Precedent.

13. Resolution to amend article 5 of the company's articles of association as a result of the capital increase.

14. Discharge ("*kwijting*") to the Directors in function in 2010 for their mandate during the period of the 2010 financial year until the date of the EGM.

15. Power of attorney to any two directors, acting jointly, with full power of substitution, for the implementation of the resolutions taken in accordance with the preceding agenda items, including the authorization to satisfy the formalities set out in Article 591 of the BCC, in particular, the notarial recordation of the capital increase and the number of shares issued at the occasion of such capital increase upon exercise of Warrants and the amendment of

the articles of association to reflect the new amount of the Company's share capital and the new number of shares.

16. Power of attorney, with power of substitution, to satisfy the required formalities in connection with the "Crossroad Bank for Enterprises", the "Business One-Stop Shops" and the value added tax, if required.

17. Power of attorney, with power of substitution, to draw up a restated version of the articles of association, execute such restated articles of association, and file such restated articles of association with the clerk's office of the competent commercial court.

In accordance with Article 28 of the Articles of Association, in order to be admitted to the EGM, all owners of registered shares must notify the Board of their intention to attend the EGM by e-mail at investor-relations@equiduct.eu at the latest on 22 June 2010.

In accordance with Article 29 of the Articles of Association, the Board has fixed the proxy format. Please find attached as Exhibit 4 a copy of such proxy format that can be completed and deposited at the Company's registered offices at the latest on 22 June 2010.

*Exhibits (which are an integral part of this notice):*

1. Special Board Report pursuant to Article 560 BCC
2. Proposal to amend the Company's articles of association
3. Special Board Report pursuant to Articles 582, 583, 596, 598 and 602 BCC
4. Report of the Statutory Auditor pursuant to Articles 582, 596, 598 and 602 BCC
5. Proxy form for shareholders

Chairman EASDAQ NV.

*Raad van Bestuur van 7 juni 2010*
*Bijzonder verslag van de Raad van Bestuur 560 W. Venn.*

# EASDAQ NV

Lei 19 Bus 11, B-3000 Leuven, België
RPR Leuven 0455.240.893

(de **"Vennootschap"**)

---

## BIJZONDER VERSLAG VAN DE RAAD VAN BESTUUR OP BASIS VAN ARTIKEL 560 VAN HET WETBOEK VAN VENNOOTSCHAPPEN ("W.VENN.") MET BETREKKING TOT, ONDER MEER, DE AFSCHAFFING VAN ALLE BESTAANDE KLASSEN VAN AANDELEN EN WIJZIGINGEN AAN DE STATUTEN DAARAAN VERBONDEN

---

### 1. AARD VAN DE VOORGESTELDE WIJZIGINGEN AAN DE KLASSEN VAN AANDELEN

De raad van bestuur (de **"Raad"**) legt hierbij zijn bijzonder verslag voor aan de buitengewone algemene vergadering van aandeelhouders van de Vennootschap op basis van artikel 560 W.Venn. met betrekking tot de afschaffing van alle bestaande klassen van aandelen en de gelijkschakeling van alle rechten verbonden aan de bestaande aandelen en de wijzigingen van de statuten die hiermee gepaard gaan.

Om de hieronder uiteengezette redenen stelt de Raad aan de algemene vergadering van aandeelhouders voor om, onder meer, de volgende artikelen van de statuten[1] te wijzigen om de afschaffing van de bestaande klassen van aandelen en het toekennen van bijzondere rechten aan Citadel Tactical Investments LLC (**"Citadel"**) en Knight Capital Group, Inc. (**"Knight"**) te weerspiegelen (zie ook het document dat aan de aandeelhouders is verstuurd samen met dit bijzondere verslag van de Raad en waarin het geconsolideerde voorstel van de nieuwe gecoördineerde statuten is opgenomen):

-   Artikel 5 (Kapitaal)
-   Artikel 13 (Samenstelling van de raad van bestuur)
-   Artikel 15 (Voorzitterschap)
-   Artikel 16 (Vergaderingen van de raad van bestuur)
-   Artikel 17 (Beraadslaging)
-   Artikel 22 (Dagelijks bestuur en Bijzondere comités)
-   Artikel 32 (Beraadslaging)

### 2. BESCHRIJVING VAN DE VOORGESTELDE WIJZIGINGEN

---

[1] De verwijzingen verwijzen naar de nummering van de bestaande statuten.

*Raad van Bestuur van 7 juni 2010*
*Bijzonder verslag van de Raad van Bestuur 560 W. Venn.*

Het aandelenkapitaal van de Vennootschap wordt momenteel vertegenwoordigd door 49.077.487 aandelen verdeeld in twee aparte klassen (klasse A (2.500.000 aandelen) en klasse B (46.577.487 aandelen)), waarbij bijzondere rechten zijn verbonden aan de klasse A aandelen, maar niet aan de klasse B aandelen (zijnde de klasse van gewone aandelen). Alle A aandelen worden gehouden door Citadel. Börse Berlin AG (**"BSX"**) en Dr. Jos. B. Peeters (**"JBP"**) hebben reeds het recht, dat rechtstreeks aan hen is toegekend, om maximum twee, respectievelijk één lid van de Raad van Bestuur te nomineren (op voorwaarde dat BSX, respectievelijk JBP, een bepaalde Relevant Aandeelhouderschap houden, zoals gedefinieerd in de huidige statuten).

Als gevolg van een investeringsovereenkomst die afgesloten zal worden op of rond 7 juni 2010 tussen de Vennootschap, Citadel, Knight, BSX en JBP (de **"Investeringsovereenkomst"**), wordt verwacht dat de partijen bij de Investeringsovereenkomst zullen overeenkomen om een nieuwe, eenvoudigere beheersstructuur te implementeren, waarbij er niet langer behoefte is aan bijzondere rechten verbonden aan de huidige klasse A aandelen. Algemeen gesteld, de bijzondere rechten verbonden aan de klasse A aandelen, waar Citadel op dit moment het genot van heeft, vallen weg en worden vervangen door substantieel gelijkaardige bijzondere rechten, rechtstreeks toegekend aan Citadel. Daarnaast zullen op het moment van deze kapitaalverhoging ook bijzondere rechten rechtstreeks worden toegekend aan Knight.

Daarom wordt voorgesteld om de bestaande aandelenklassen af te schaffen en om alle rechten verbonden aan alle bestaande, door de Vennootschap uitgegeven aandelen gelijk te schakelen. Aangezien er momenteel geen bijzondere rechten zijn verbonden aan de klasse B aandelen, hebben deze afschaffing en gelijkschakeling enkel gevolgen voor Citadel, de enige houder van klasse A aandelen.

Volgend op de afschaffing van alle bestaande klassen van aandelen en de gelijkschakeling van alle bestaande aandelen, stelt de Raad aan de aandeelhouders voor om toestemming te geven voor een verhoging van het kapitaal van de Vennootschap via de uitgifte van 8.735.111 nieuwe aandelen aan Knight, en 888.298 nieuwe aandelen aan BSX (zie het bijzonder verslag van de Raad op basis van de artikelen 582, 583, 596, 598 en 602 W.Venn., met zelfde datum als dit verslag en dat samen met dit verslag dient te worden gelezen) met opheffing van het voorkeurrecht ten gunste van Knight, respectievelijk BSX.

Verder wordt er voorgesteld om bepaalde bijzondere rechten rechtstreeks toe te kennen aan Knight en Citadel:

- Tot vijf bestuurders zullen worden verkozen op voordracht van Citadel zolang Citadel een Relevant Citadel Aandeelhouderschap (zoals

*Raad van Bestuur van 7 juni 2010*
*Bijzonder verslag van de Raad van Bestuur 560 W. Venn.*

gedefinieerd in de voorgestelde tekst van de herziene statuten) van meer dan 20% houdt. Tot drie bestuurders zullen worden verkozen op voordracht van Citadel zolang Citadel een Relevant Citadel Aandeelhouderschap van meer dan 10% houdt. Tot twee bestuurders zullen worden verkozen op voordracht van Citadel zolang Citadel een Relevant Citadel Aandeelhouderschap van meer dan 8% houdt. Eén bestuurder zal worden verkozen op voordracht van Citadel zolang Citadel een Relevant Citadel Aandeelhouderschap van meer dan 3,5% houdt. Naar de bestuurders verkozen op voordracht van Citadel zal worden verwezen als "Citadel Bestuurders".

- Eén bestuurder zal worden verkozen op voordracht van Knight zolang Knight een Relevant Knight Aandeelhouderschap (zoals gedefinieerd in de voorgestelde tekst van de herziene statuten) van ten minste 3.75% houdt. Daarenboven, zolang Knight een Relevant Knight Aandeelhouderschap heeft van ten minste 3,75%, zal Knight ook het recht hebben één permanente waarnemer tot de Raad te benoemen, die zal kunnen deelnemen aan de vergaderingen van de Raad van Bestuur maar die niet gerechtigd is te stemmen, en die dezelfde vertrouwelijkheidsverplichtingen zal hebben als een bestuurder. Naar de bestuurder verkozen op voordracht van Knight zal worden verwezen als de "Knight Bestuurder".

- De voorzitter van de Raad zal een bestuurder zijn die wordt voorgedragen door Citadel. Als de voorzitter eveneens een Citadel Bestuurder is, zal hij een doorslaggevende stem hebben in geval van staking van stemmen.

- Bij afwezigheid van de voorzitter zal de vergadering worden voorgezeten door een bestuurder gekozen uit de Citadel Bestuurders (of, als er geen aanwezig zijn, door een van de andere bestuurders).

- De Raad kan enkel geldig beraadslagen als, bovenop de toepasselijke regels van het Belgisch vennootschapsrecht, ten minste één Citadel Bestuurder en de Knight Bestuurder aanwezig of vertegenwoordigd is.

- Beslissingen worden genomen bij eenvoudige meerderheid. Een omvangrijke reeks van belangrijke beslissingen of voorstellen vereisen echter een gekwalificeerde meerderheid van de leden van de Raad, namelijk een eenvoudige meerderheid met inbegrip evenwel van de goedkeuring van ten minste één Citadel Bestuurder en/of de Knight Bestuurder (zie de voorgestelde tekst van de gewijzigde statuten voor een overzicht van deze beslissingen; met betrekking tot een aantal van deze onderwerpen, zal de vereiste instemming van de Knight Bestuurder enkel van toepassing zijn indien Knight de Knight Warrant uitgeoefend zal hebben).

- De Raad kan het dagelijks bestuur van de Vennootschap opdragen aan één of meerdere personen, die geen bestuurder hoeven te zijn. Dergelijke persoon of personen zal of zullen worden aangeduid op voordracht van de Citadel Bestuurders.

*Raad van Bestuur van 7 juni 2010*
*Bijzonder verslag van de Raad van Bestuur 560 W. Venn.*

- Elk bijzonder comité dat binnen de Raad wordt opgericht, moet ten minste één Citadel Bestuurder en de Knight Bestuurder tellen. Opdat het quorum voor een vergadering van een comité bereikt zou zijn, moeten ten minste twee Bestuurders, onder wie ten minste één Citadel Bestuurder en de Knight Bestuurder, aanwezig of vertegenwoordigd zijn. Het comité zal handelen bij beslissing van een meerderheid van de aanwezige of vertegenwoordigde Bestuurders, waarbij evenwel geen enkele beslissing genomen door het comité geldig zal zijn als niet één of meer Citadel Bestuurders voor de bedoelde beslissing hebben gestemd.
- Bepaalde belangrijke beslissingen van de aandeelhouders zullen, bovenop de toepasselijke regels van het Belgisch vennootschapsrecht, de toestemming vereisen van ten minste Citadel en/of Knight (zie de voorgestelde tekst van de gewijzigde statuten voor een overzicht van deze beslissingen; ten aanzien van een aantal van deze onderwerpen, zal de vereiste instemming van de Knight Bestuurder enkel van toepassing zijn indien Knight de Knight Warrant uitgeoefend zal hebben).

De hierboven opgesomde bijzondere rechten (behalve die onder het eerste punt van bovenstaande lijst) vervallen wanneer Citadel niet langer een Relevant Citadel Aandeelhouderschap van 20% houdt; deze bijzondere rechten zullen opnieuw van toepassing zijn wanneer Citadel opnieuw ten minste een Relevant Citadel Aandeelhouderschap van 20% houdt.

De hierboven opgesomde bijzondere rechten vervallen wanneer Knight niet langer een Relevant Knight Aandeelhouderschap van 3.75% houdt (10% voor de vereiste toestemming van de Knight Bestuurder/Knight ten aanzien van bepaalde onderwerpen indien Knight de Knight Warrant heeft uitgeoefend); deze bijzondere rechten zullen opnieuw van toepassing zijn wanneer Citadel opnieuw ten minste een Relevant Knight Aandeelhouderschap van 3.75% (respectievelijk 10%) houdt.

Er dient eveneens te worden opgemerkt dat, volgend op de afschaffing van alle klassen van aandelen, de bestaande warrants uitgegeven door de Vennootschap voortaan, bij uitoefening, de houder ervan recht zullen geven op gewone aandelen in de Vennootschap.

## 3. DOEL EN VERANTWOORDING VAN DE WIJZIGINGEN

De afschaffing van de bestaande klassen van aandelen en het toekennen van bijzondere rechten aan Citadel en Knight zijn noodzakelijk om de Investeringsovereenkomst uit te voeren, waarin is overeengekomen dat naast de bijzondere rechten waar Citadel het genot van heeft, ook Knight het genot zal hebben van bepaalde bijzondere rechten (zoals hierboven in algemene zin beschreven).

*Raad van Bestuur van 7 juni 2010*
*Bijzonder verslag van de Raad van Bestuur 560 W. Venn.*

Zoals hierboven vermeld, vallen de bijzondere rechten verbonden aan de A aandelen, en waar Citadel als houder van A aandelen op dit moment het genot van heeft, weg en worden deze veranderd door substantieel gelijkaardige bijzondere rechten, rechtstreeks toegekend aan Citadel. De bijzondere rechten toegekend aan Knight op het ogenblik van de kapitaalverhoging, zullen haar ook worden toegekend door middel van een rechtstreekse toekenning van bijzondere rechten (niet aan de aandelen door haar gehouden).

De bijzondere rechten die zijn voorgesteld toegekend te worden aan Citadel zijn verantwoord omdat Citadel de grootste aandeelhouder van de Vennootschap is en al van substantieel gelijkaardige rechten genoot als houder van alle A aandelen, onder de huidige statuten.

Wat Knight betreft, zal de voorgestelde kapitaalverhoging, die het hoofddoel van de Investeringsovereenkomst vormt en die de Vennootschap zal toelaten om haar activiteiten van het aanbieden van diensten aan effectenbeurzen en handelsplatformen verder te ontwikkelen (zie ook het bijzonder verslag van de Raad overeenkomstig de artikelen 582, 583, 596, 598 en 602 W.Venn.), als resultaat hebben dat Knight de tweede grootste aandeelhouder wordt van de Vennootschap. In dit opzicht is het redelijk en een standaardpraktijk om bijzondere rechten toe te kennen aan zulk een aandeelhouder. De kapitaalverhoging is in het belang van de Vennootschap en de bijzondere rechten die toegekend zullen worden aan Knight, zijn, volgens de Raad, evenredig met de omvang van haar investering, haar aandeelhouderschap in de Vennootschap na de investering en haar rol in de bevordering van de activiteiten van de Vennootschap, en worden daarom geacht in het belang van de Vennootschap en van haar bestaande aandeelhouders te zijn.

Als besluit is de Raad van mening dat de afschaffing van alle bestaande klassen aandelen en het creëren van bijzondere rechten ten voordele van Citadel en Knight in het belang van de Vennootschap en van haar bestaande aandeelhouders zijn.

_____

7 juni 2010

Voor de raad van bestuur,

Artur Fischer
Voorzitter

*Board of Directors of 7 June 2010*
*Special Board Report 560 BCC*

# EASDAQ NV

Lei 19 Box 11, B-3000 Leuven, Belgium
RPR Leuven 0455.240.893

(the "**Company**")

---

## *FREE TRANSLATION OF A DUTCH ORIGINAL*
## *FOR INFORMATION PURPOSES ONLY*

---

## SPECIAL REPORT OF THE BOARD OF DIRECTORS PURSUANT TO SECTION 560 OF THE BELGIAN COMPANY CODE ("BCC") RELATING, AMONGST OTHER THINGS, TO THE CANCELLATION OF ALL EXISTING CLASSES OF SHARES AND THE AMENDMENTS TO THE ARTICLES OF ASSOCIATION IN RELATION THERETO

---

**1.** **NATURE OF THE PROPOSED CHANGES TO THE CLASSES OF SHARES**

The Board of Directors (the "**Board**") hereby presents to the extraordinary general meeting of shareholders of the Company its special report pursuant to Article 560 BCC regarding the cancellation of all existing classes of shares and the equalization of all rights attaching to the existing shares and the amendments to the articles of association in relation thereto.

For the reasons mentioned below, the Board proposes to the shareholders meeting to amend, amongst other things, the following provisions of the articles of association[1] to reflect the cancellation of all existing classes of shares and the grant of special rights to Citadel Tactical Investments LLC ("**Citadel**") and Knight Capital Group, Inc. ("**Knight**") (reference is also made to the document provided to the shareholders together with this special Board report containing the proposal for the consolidated version of the new restated articles of association):

- Article 5 (Capital)
- Article 13 (Composition of the Board of Directors)
- Article 15 (Chairmanship)
- Article 16 (Meetings of the Boards of Directors)
- Article 17 (Proceedings)
- Article 22 (Daily Management and Board Committees)
- Article 32 (Proceedings)

---

[1] The references are to the numbering of the current articles of association.

*Board of Directors of 7 June 2010*
*Special Board Report 560 BCC*

## 2. DESCRIPTION OF THE PROPOSED CHANGES

The share capital of the Company is currently represented by 49,077,487 shares divided into two separate classes (A (2,500,000 shares) and B (46,577,487 shares)) whereby special rights are attached to the A shares, but not to the B shares (which is the class of common stock). All of the A shares are currently held by Citadel. Börse Berlin AG ("**BSX**") and Dr. Jos. B. Peeters ("**JBP**") already have the right, attributed directly to them, to nominate up to two, resp. one member of the Board of Directors (provided that BSX, resp. JBP hold a certain Relevant Shareholding, as defined in the current articles of association).

As a result of an investment agreement to be entered into on or about 7 June 2010 between the Company, Citadel, Knight, BSX and JBP (the "**Investment Agreement**"), the parties to the Investment Agreement are expected to agree to implement a new and more simple governance structure, whereby there is no longer a need for specific rights attached to the A shares. Broadly speaking, the special rights attached to the A shares and currently enjoyed by Citadel as holder of the A shares, fall away, and are replaced by substantially similar special rights attributed directly to Citadel. In addition, Knight will at the occasion of this capital increase also be granted certain special rights attributed directly to it.

It has therefore been proposed to cancel all existing classes of shares and to equalize any and all rights attaching to all existing shares issued by the Company. Since currently no special rights attach to the B shares, this cancellation and equalization only affects Citadel, the only holder of A shares.

Following the cancellation of all existing classes of shares and the equalization of all rights attaching to the existing shares, the Board proposes to the shareholders to authorize an increase in the Company's capital through the issuance of 8,735,111 new shares to Knight, and 888,298 new shares to BSX (reference is made to the Special Board Report pursuant to sections 582, 583, 596, 598 and 602 BCC of even date herewith, with which this special report should be read together) with cancellation of the preferential subscription rights for the benefit of Knight, respectively BSX.

It is also proposed to grant the following special rights directly to Knight and Citadel:

- Up to five directors will be elected upon nomination by Citadel whilst Citadel has a Citadel Relevant Shareholding (as defined in the proposed text of the restated articles of association) of higher than 20%. Up to three directors will be elected upon nomination by Citadel whilst Citadel has a Citadel Relevant Shareholding of higher than 10%. Up to two directors will be elected upon nomination by Citadel whilst Citadel has a Citadel Relevant Shareholding of higher than 8%. One

director will be elected upon nomination by Citadel whilst Citadel has a Citadel Relevant Shareholding of higher than 3.5%. The directors elected upon nomination by Citadel shall be referred to as "Citadel Directors".

- One director will be elected upon nomination by Knight whilst Knight has a Knight Relevant Shareholding (as defined in the proposed text of the restated articles of association) of at least 3.75%. In addition, whilst Knight has a Knight Relevant Shareholding of at least 3.75%, Knight will also have the right to nominate a permanent observer to the Board, who shall be entitled to attend the meeting of the Board but shall not be entitled to vote and who shall have the same obligations of confidentiality as a director. The Director elected upon nomination by Knight shall be referred to as the "Knight Director".
- The chairman of the Board shall be a director nominated by Citadel. If the chairman is also a Citadel Director, he shall have a casting vote in the event of a tied vote.
- In the absence of the chairman, a director chosen among the Citadel Directors (or, if there be none present, one of the other directors) shall chair the meeting.
- The Board may validly deliberate only if, in addition to any quorum requirements of Belgian company law, at least one Citadel Director and the Knight Director are present or represented.
- Decisions are taken at a simple majority of the votes. However, a wide range of material decisions or proposals require a qualified majority of the members of the Board, namely a simple majority which includes at least the approval of one Citadel Director and/or the Knight Director (for an overview of these decisions, reference is made to the proposed text of the restated articles of association; in respect of a number of matters, the required consent of the Knight Director will only come to apply in case Knight will have exercised the Knight Warrant).
- The Board may delegate the daily management of the Company to one or several persons, who need not be directors. Such person(s) shall be appointed upon nomination by the Citadel Directors.
- Any special Board committee that is created shall comprise at least one Citadel Director and the Knight Director. For a committee meeting to be quorate at least two Directors, of which at least one Citadel Director and the Knight Director, must be present or represented. The committee shall act by decision of a majority of the Directors present or represented provided that no decision by the committee shall be valid unless one or more Citadel Directors shall have voted in favour of such decision.
- Certain material decisions of the shareholders shall, in addition to the applicable rules of Belgian company law, require the consent of at least Citadel and/or Knight (for an overview of these decisions, reference is made to the proposed text of the restated articles of association; in

3

respect of a number of matters, the required consent of Knight will only come to apply in case Knight will have exercised the Knight Warrant).

In the event that the Citadel Relevant Shareholding falls below 20%, the Citadel's special rights listed above (except under the first indent of the list) will lapse; these special rights will apply again if the Citadel Relevant Shareholding subsequently increases to 20% or above.

In the event that the Knight Relevant Shareholding falls below 3.75% (10% for the required consent of the Knight Director/Knight in respect of certain matters in case it has exercised the Knight Warrant), Knight's special rights listed above will lapse; these special rights will apply again if the Knight Relevant Shareholding subsequently increases to 3.75% (respectively 10%) or above.

It should also be noted that in view of the cancellation of all classes of shares, the existing warrants issued by the Company to date will entitle the holder thereof, upon exercise, to ordinary shares in the Company.

## 3. PURPOSE AND JUSTIFICATION FOR THE CHANGES

The cancellation of all existing classes of shares and the granting of special rights to Citadel and Knight are necessary to give effect to the Investment Agreement, where it has been agreed that in addition to the special rights enjoyed by Citadel, Knight will also enjoy certain special rights (as generally described above).

As noted above, the special rights attached to the A shares and currently enjoyed by Citadel as holder of the A shares, fall away, and are replaced by substantially similar special rights attributed directly to Citadel. The special rights attributed to Knight at the occasion of this capital increase, will also be granted by way of certain special rights attributed directly to it (not to shares held by it).

The special rights that are proposed to be granted to Citadel are justified because Citadel is the largest shareholder of the Company and already enjoyed substantially similar rights as holder of all A shares under the current articles of association.

As far as Knight is concerned, the proposed capital increase, which is the main object of the Investment Agreement and which will further enable the Company to develop its business in providing services to investment exchanges and platforms (see also the Special Board Report pursuant to sections 582, 583, 596, 598 and 602 BCC), will result in Knight becoming the second largest shareholder of the Company. In this respect, it is reasonable and standard practice to grant certain special rights to such shareholder. The capital increase is in the

Company's interest. The special rights to be granted to Knight are, in the opinion of the Board, reasonably commensurate with the size of its investment, its post-investment shareholding in the Company and its role in furthering the business of the Company, and, as such, are believed to be in the interest of the Company and its existing shareholders.

As a conclusion, the Board is of the opinion that the cancellation of all existing classes of shares and the creation of special rights in favour of Citadel and Knight are in the interest of the Company and the existing shareholders.

_____

Chairman EASDAQ NV.



Berquin Notarissen
burgerlijke cvba
Lloyd Georgelaan, 11
1000 Brussel
RPR Brussel 0474.073.840
Tel. +32(2)645.19.45  Fax : +32(2)645.19.46

# Gecoördineerde tekst van de statuten
## van
## NV "EASDAQ"

met zetel te 3000 Leuven, Lei 19 – bus 11,
ondernemingsnummer 0455.240.893 - RPR Leuven.

## na de statutenwijziging d.d.
## [24 juni 2010]

---

2

**HISTORIEK**
**(in toepassing van art. 75, eerste lid, 2° Wetboek van Vennootschappen)**

**OPRICHTINGSAKTE :**
De vennootschap werd opgericht krachtens akte verleden voor Meester Hans Berquin, Notaris te Brussel, op elf mei negentienhonderd vijfennegentig, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van zeven juni negentienhonderd vijfennegentig, onder nummer 950607-49.

**WIJZIGINGEN AAN DE STATUTEN :**
De statuten werden gewijzigd bij :

- proces-verbaal opgesteld door Meester Denis Deckers, Notaris te Brussel, op achttien december tweeduizend en drie, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van vijf maart tweeduizend en vier, onder nummer 20040305-37833

- proces-verbaal opgesteld door Meester Eric Spruyt, Notaris te Brussel, op zeventien december tweeduizend en vier, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van veertien januari tweeduizend en vijf onder nummer 20050114-9594.

- proces-verbaal opgesteld door Meester Dirk Michiels, Notaris te Aarschot, vervangende zijn ambtgenoot Meester Eric Spruyt, Notaris te Brussel, op drie en twintig juni tweeduizend en vijf, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van negenentwintig september daarna, onder nummer 135749;

- proces-verbaal opgesteld door Meester Meester Luc Hertecant, Notaris te Neerijse, vervangende zijn ambtgenoot Meester Peter Van Melkebeke, Notaris te Brussel, op twee en twintig juni tweeduizend en zes, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van éénentwintig augustus tweeduizend en zes daarna, onder nummer 132534;

- proces-verbaal opgesteld door Meester Eric Spruyt, Notaris te Brussel, op twaalf januari tweeduizend en zeven, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van zesen februari tweeduizend en zeven daarna, onder nummer 27929,

- proces-verbaal opgesteld door Meester Eric Spruyt, Notaris te Brussel, op vijfentwintig september tweeduizend en zeven, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van zeventien oktober tweeduizend en zeven daarna, onder nummer 151689.

- proces-verbaal opgesteld door Meester Eric Spruyt, Notaris te Brussel, op achtentwintig januari tweeduizend en acht, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van drie april tweeduizend en acht daarna, onder nummer 49946.

- proces-verbaal opgesteld door Meester Eric Spruyt, notaris te Brussel, op zesentwintig juni tweeduizend en acht, bekendgemaakt in de Bijlage tot het Belgisch Staatsblad van vijfentwintig juli tweeduizend en acht daarna, onder nummer 124553.

- en voor het laatst bij akte verleden voor Meester Eric Spruyt, Notaris te Brussel, op zeven augustus tweeduizend en negen (onder andere aanneming van een nieuwe tekst van statuten), neergelegd ter bekendmaking in de bijlage tot het Belgisch Staatsblad.

----------

1

3

## GECOÖRDINEERDE
## S T A T U T E N   OP [24 juni 2010]

### TITEL I. Benaming – zetel – voorwerp – duur

**Artikel 1 – Vorm en benaming**

De vennootschap neemt de vorm aan van een naamloze vennootschap en heeft als benaming "EASDAQ".

Deze benaming zal steeds worden voorafgegaan of gevolgd door de woorden "naamloze vennootschap" of de afkorting "NV".

**Artikel 2 – Zetel**

De maatschappelijke zetel is gevestigd te 3000 Leuven, Lei 19 bus 11.

De raad van bestuur kan zonder statutenwijziging de maatschappelijke zetel overbrengen naar eender welke andere plaats in België mits de geldende wetgeving inzake het gebruik van de talen wordt gerespecteerd. Iedere wijziging van de maatschappelijke zetel wordt gepubliceerd in de bijlagen bij het Belgisch Staatsblad door toedoen van de raad van bestuur.

De raad van bestuur is bovendien gemachtigd om administratieve zetels, exploitatiezetels, bijkantoren en filialen op te richten zowel in België als in het buitenland.

**Artikel 3 – Voorwerp**

De vennootschap heeft als doel, zowel in België als in het buitenland, in eigen naam of in naam van derden, voor eigen rekening of voor rekening van anderen, de organisatie, het beheer, de controle en operationele, organisatorische en commerciële aspecten van financiële instrumenten, alsook de werking van de markt en, voor wat betreft de leden, de opneming van de financiële instrumenten om te verhandelen op de markt, de werking van het technisch platform waarover de vennootschap beschikt, zonder dat de vennootschap zelf transacties doet met de financiële instrumenten die op de markt worden verhandeld.

De vennootschap kan, zowel in België als in het buitenland, alle industriële, commerciële, financiële, roerende en onroerende handelingen stellen die van aard zijn om haar activiteiten rechtstreeks of onrechtstreeks uit te breiden of te bevorderen. Zij kan als toegelaten goederen verhandelen, zelfs wanneer deze geen enkel rechtstreeks of onrechtstreeks verband hebben met het doel van de vennootschap.

Zij kan op om het even welke manier belangen nemen in, samenwerken of fusioneren met alle verenigingen, zaken, ondernemingen of vennootschappen die een zelfde, een gelijkaardig of een verwant maatschappelijk doel hebben of die haar activiteiten kunnen bevorderen of de verkoop van haar producten of diensten kunnen vergemakkelijken.

**Artikel 4 – Duur**

De vennootschap is opgericht voor onbepaalde duur.

### TITEL II.   Kapitaal

**Artikel 5 – Onderschreven kapitaal**

Het maatschappelijk kapitaal is vastgesteld op [BEDRAG] (€ ●).

Het onderschreven maatschappelijk kapitaal wordt vertegenwoordigd door [AANTAL] (●) aandelen zonder nominale waarde die elk één/[AANTAL] (1/●) van het kapitaal vertegenwoordigen.

4

### Artikel 6 — Wijziging van het onderschreven kapitaal

Het onderschreven kapitaal kan worden verhoogd of verminderd door een besluit van de algemene vergadering, die beraadslaagt volgens de bepalingen voorzien voor de wijziging van de statuten.

Onverminderd het recht van de algemene vergadering om de wijziging van de statuten te heffen overeenkomstig het Wetboek van vennootschappen, moeten de aandelen waarop in geld wordt ingeschreven bij voorrang worden aangeboden aan de aandeelhouders naar evenredigheid in geld wordt te rekenen vanaf de dag van de opening van de inschrijving, gedurende een termijn van ten minste vijftien (15) dagen van de betrekking of de termijn gedurende dewelke het voorkeurrecht kan worden uitgeoefend.

De Aandeelhouders zijn echter niet gerechtigd het voorkeurrecht van Knight te beperken of op te heffen, met uitzondering voor het geval van uitgifte van aandelen of effecten converteerbaar in aandelen: (i) met betrekking tot aandelenplannen voor werknemers; (ii) bij uitoefening van de warrants uitgegeven op of rond 24 juni 2010; of (iv) in null voor een inbreng anders dan in geld.

Indien de algemene vergadering beslist om betaling van een uitgiftepremie te vragen, dient deze te worden geboekt op een geblokkeerde reserverekening die naar kan worden verminderd of opgeheven door een beslissing van de algemene vergadering die beraadslaagt volgens de regels voorzien voor de wijziging van de statuten. De uitgiftepremie zal, ten zelfde titel als het kapitaal, de kwalificatie hebben van een gemeenschappelijke waarborg ten gunste van derden.

De raad van bestuur is bevoegd om het geplaatst maatschappelijk kapitaal in één of meer malen te verhogen met een bedrag van vijftig miljoen euro (€ 50.000.000,00) overeenkomstig door de raad te bepalen modaliteiten.

Deze verhoging kan gebeuren door inbreng in geld in welk geval de raad van bestuur rekening zal dienen te houden met het voorkeurrecht van de bestaande aandeelhouders.

De verhoging van het kapitaal kan binnen het kader van het toegestane kapitaal ook gebeuren door inbreng in natura, de raad van bestuur mag evenwel, van het toegestane kapitaal geen gebruik maken om te beslissen tot een kapitaalverhoging die voornamelijk tot stand wordt gebracht door inbreng in zijn bezit houdt waaraan meer dan tien procent van de stemrechten van de vennootschap in zijn bezit houdt waaraan meer dan tien procent van de stemrechten van de vennootschap verbonden zijn. De verhoging van het kapitaal kan, onder de vorm van de effecten van de besloten, kan verder ook geschieden door omzetting van reserves, met of zonder uitgifte van nieuwe aandelen, zonder uitgifte van nieuwe converteerbare obligaties en warrants.

Binnen het kader van het toegestaan kapitaal kan de raad van bestuur beslissen tot uitgifte van converteerbare obligaties en warrants.

In geval van kapitaalverhoging door de raad van bestuur, in het kader van het toegestaan kapitaal, zal de raad van bestuur de uitgiftepremies, indien er zijn, moeten toewijzen aan een onbeschikbare rekening "Uitgiftepremies", die, zoals het kapitaal, de waarborg voor derden zal uitmaken en waarbij, behoudens de mogelijkheid tot incorporatie in kapitaal door de raad van bestuur, zoals hiervoor voorzien, slechts zal kunnen verminderd of opgeheven worden krachtens een beslissing van de algemene vergadering beraadslaagd onder de voorwaarden gesteld door artikel 612 van het Wetboek van vennootschappen.

De raad van bestuur kan deze bevoegdheid uitoefenen gedurende vijf jaar te rekenen vanaf de bekendmaking van deze akte in de Bijlagen tot het Belgisch Staatsblad.

Deze bevoegdheid kan worden hernieuwd overeenkomstig de geldende wettelijke bepalingen.

Wanneer de raad van bestuur van de algemene vergadering voorstelt deze bevoegdheid te hernieuwen, stelt hij een met redenen omkleed verslag op waarin wordt aangegeven in welke bijzondere omstandigheden hij gebruik zal kunnen maken van het toegestane kapitaal en welke doeleinden hij daarbij nastreeft.

De Raad van Bestuur is niet gerechtigd het voorkeurrecht van Knight te beperken of op te heffen, met uitzondering voor het geval van uitgifte van aandelen of effecten converteerbaar in aandelen: (i) met betrekking tot aandelenoptieplannen voor werknemers; (ii) met betrekking tot incentive plannen voor

5

werknemers; (iii) bij uitoefening van de warrants uitgegeven op 7 augustus 2009 en op of rond 24 juni 2010; of (iv) in nul voor een inbreng anders dan in geld.

De raad van bestuur is bevoegd het voorkeursrecht te beperken of op te heffen ten gunste van één of meer bepaalde personen, al dan niet personeelsleden van de vennootschap of van haar dochtervennootschappen. In dat geval dienen de voorwaarden gesteld door het Wetboek van vennootschappen nageleefd te worden.

**Artikel 7 – Opvraging van stortingen**

Onverminderd de bepalingen van artikel 18, wordt tot de opvraging van stortingen soeverein beslist door de raad van bestuur.

Indien een aandeelhouder binnen de termijn bepaald door de raad van bestuur niet de gevraagde stortingen op zijn aandelen heeft verricht, wordt de uitoefening van de rechten die aan deze aandelen verbonden zijn van rechtswege geschorst.

**Artikel 8 – Aard van de aandelen**

De aandelen zijn en blijven op naam.

**Artikel 9 – Overdracht van Aandelen**

Enkele aandeelhouders van de Vennootschap hebben een aandeelhoudersovereenkomst afgesloten met de Vennootschap op of rond 24 juni 2010, dewelke bepaalde bepaling inhoudt omtrent de overdracht van de aandelen van de Vennootschap. Voorafgaand aan elke overdracht van aandelen zal de Raad van Bestuur bevestigen dat deze bepalingen zijn nageleefd. Om twijfel te vermijden, deze bevestiging is slechts een technische vereiste en zal zin niet zo worden geïnterpreteerd dat zulk een overdracht van aandelen onderworpen is aan de goedkeuring van de Raad Binnen de betekenis van artikel 510 van het Wetboek Van Vennootschappen.

**Artikel 10 – Uitoefening van de rechten verbonden aan een aandeel**

Ten aanzien van de Vennootschap zijn de aandelen ondeelbaar. Indien een aandeel toebehoort aan verschillende personen of indien de rechten die verbonden zijn aan een aandeel in onverdeeldheid zijn tussen verschillende personen, heeft de raad van bestuur het recht om de uitoefening van de daaraan verbonden rechten te schorsen totdat één enkele persoon te zijnen opzichte als aandeelhouder is aangewezen.

**Artikel 11 – De rechtsopvolgers**

Tenzij uitdrukkelijk anders bepaald in deze Statuten, volgen de aan de aandelen verbonden rechten en plichten de aandelen in de handen van iedere verkrijger.

**Artikel 12 – Verkrijging door de vennootschap van haar eigen aandelen**

De vennootschap kan haar eigen aandelen verkrijgen overeenkomstig artikel 620 en volgende van het Wetboek van vennootschappen.

**Artikel 13 – Obligaties**

De vennootschap mag alle soorten obligaties uitgeven bij besluit van de raad van bestuur.

Evenwel mag tot de uitgifte van in andere converteerbare obligaties of warrants slechts besloten worden door de algemene vergadering de beraadslaagt met naleving van de voorschriften omtrent statutenwijziging of door de raad van bestuur binnen het kader van het toegestaan kapitaal.

**TITEL III.    Bestuur en toezicht**

**Artikel 14 – Samenstelling van de raad van bestuur**

De vennootschap wordt bestuurd door een raad van bestuur, samengesteld uit tenminste drie (3) leden, die geen aandeelhouders hoeven te zijn.

Tot vijf (5) bestuurders worden verkozen op voordracht van Citadel Tactical Investments LLC (of, indien van toepassing, elke Verbonden Vennootschap aan wie ze aandelen overdraagt) ("Citadel"), zolang Citadel een Relevant Citadel Aandeelhouderschap heeft. Indien het Relevant Citadel Aandeelhouderschap (zoals hierna gedefinieerd) heeft van meer dan 20%, Tot drie (3) bestuurders worden verkozen op voordracht van Citadel, zolang Citadel een Relevant Citadel Aandeelhouderschap heeft van meer dan 10%. Tot twee (2) bestuurders worden verkozen op voordracht van Citadel, zolang Citadel een Relevant Citadel Aandeelhouderschap heeft van meer dan 3,5%. De bestuurders die worden verkozen op voordracht van Citadel, worden "Citadel Bestuurders" genoemd. Indien het Relevant Citadel Aandeelhouderschap daalt tot beneden de voormelde percentagedrempels en daarna opnieuw stijgt tot boven deze drempels, worden de rechten verbonden aan deze drempels opnieuw van toepassing. Citadel heeft het recht om te beslissen dat één of meer Citadel Bestuurders, benoemd volgens deze clausule, niet de bijzondere rechten hebben die bij toepassing van deze Statuten aan de Citadel Bestuurders worden toegekend.

Eén (1) bestuurder wordt benoemd op voordracht van Knight Capital Group, Inc. (of, indien van toepassing, elke Verbonden Vennootschap aan wie ze aandelen overdraagt) ("Knight"), zolang Knight een

---

6

Relevant Knight Aandeelhouderschap (zoals hierna gedefinieerd) heeft van ten minste 3,75%. Daarenboven, zolang Knight een Relevant Knight Aandeelhouderschap heeft van ten minste 3,75%, zal Knight ook het recht hebben één (1) bijkomende vertegenwoordiger te benoemen, die deel zal nemen aan de vergaderingen van de raad van bestuur maar die niet gerechtigd is te stemmen. Indien het Relevant Knight Aandeelhouderschap daalt tot beneden 3,75% en daarna opnieuw stijgt tot 3,75% of meer, worden de rechten verbonden aan deze drempel opnieuw van toepassing. De bestuurder die wordt verkozen op voordracht van Knight, wordt de "Knight Bestuurder" genoemd.

Tot twee (2) bestuurders worden verkozen op voordracht van Börse Berlin AG ("BSX"), zolang BSX een Relevant BSX Aandeelhouderschap (zoals hierna gedefinieerd) heeft van méér dan 8%. Eén (1) bestuurder wordt verkozen op voordracht van BSX, zolang BSX een Relevant BSX Aandeelhouderschap heeft van méér dan 3,5%. Indien het Relevant BSX Aandeelhouderschap daalt tot beneden de voormelde drempels en daarna opnieuw stijgt tot boven deze drempels, worden de rechten verbonden aan deze drempels opnieuw van toepassing.

Eén (1) bestuurder wordt verkozen op voordracht van Jos B. Peeters ("Dr. Peeters"), zolang Dr. Peeters een Relevant Dr. Peeters Aandeelhouderschap (zoals hierna gedefinieerd) heeft van meer dan 3,5%. Indien het Relevant Dr. Peeters Aandeelhouderschap daalt tot onder 3,5% en daarna opnieuw stijgt tot boven 3,5%, dan worden de rechten verbonden aan deze drempel opnieuw van toepassing.

Voor de toepassing van artikel 14:

– betekent "Relevant Citadel Aandeelhouderschap" het aandeelhouderschap (i.e. het percentage aandelen dat door een aandeelhouder wordt gehouden) van Citadel en/of haar Verbonden Vennootschappen zoals berekend volgens de volgende formule: $(A / B) \times 100$;

  • waarbij A het aantal aandelen is dat door Citadel en/of haar Verbonden Vennootschappen van tijd tot tijd wordt gehouden;

  • B het totaal aantal uitgegeven aandelen is, van tijd tot tijd;

– Betekent "Relevant Knight Aandeelhouderschap" het aandeelhouderschap (i.e. het percentage aandelen dat door een aandeelhouder wordt gehouden) van Knight en/of haar Verbonden Vennootschappen zoals berekend volgens de volgende formule: $(A / B) \times 100$;

  • waarbij A het aantal aandelen is dat door Knight en/of haar Verbonden Vennootschappen van tijd tot tijd wordt gehouden;

  • B het totaal aantal uitgegeven aandelen is, van tijd tot tijd;

– Betekent "Relevant BSX Aandeelhouderschap" het aandeelhouderschap (i.e. het percentage aandelen dat door een aandeelhouder wordt gehouden) van BSX en/of haar Verbonden Vennootschappen zoals berekend volgens de volgende formule: $(A / (B+C+D)) \times 100$

  • Waarbij A het aantal aandelen is dat door BSX of haar Verbonden Vennootschappen van tijd tot tijd wordt gehouden;

  • B het totaal aantal reeds uitgegeven aandelen is, van tijd tot tijd;

  • C het aantal aandelen is dat door de vennootschap met uitgegeven bij de uitoefening van warrants of inschrijvingsrechten, die voor ieder van de gevallen bij uitoefening werden gehouden door BSX of haar Verbonden Vennootschappen; en

  • D het aantal aandelen (maar voor alle duidelijkheid niet warrants, converteerbare effecten of rechten om in te schrijven op aandelen) uitgegeven door de vennootschap onder een Toegankelijke Uitgifte (zoals hierna gedefinieerd), of de uitoefening of de omzetting van warrants, converteerbare effecten, of rechten om in te schrijven op aandelen (in geval van warrants, converteerbare effecten of rechten om in te schrijven op aandelen die werden uitgegeven vóór 20 juli 2012, enkel indien BSX en haar Verbonden Vennootschappen de mogelijkheid hadden om in te schrijven op deze uitgifte); en

– Betekent "Relevant Dr. Peeters Aandeelhouderschap" het aandeelhouderschap (i.e. het percentage aandelen dat door een aandeelhouder wordt gehouden) van Dr. Peeters en/of zijn Verbonden Vennootschappen zoals berekend volgens de volgende formule: $(A / (B+C+D)) \times 100$

  • Waarbij A het aantal aandelen is dat door Dr. Peeters of zijn Verbonden Vennootschappen van tijd tot tijd wordt gehouden;

  • B het totaal aantal reeds uitgegeven aandelen is dat door de vennootschap van rond 24 juni 2010, na de vergadering van aandeelhouders van diezelfde dag (exclusief de aandelen uitgegeven op 24 juni 2010);

7

- • C het aantal aandelen is dat door de vennootschap wordt uitgegeven bij de uitoefening van warrants, convergeerbare effecten of inschrijvingsrechten, die voor ieder van de gevallen bij uitoefening werden gehouden door Dr. Peeters of zijn Verbonden Vennootschappen;

- • D het aantal aandelen (maar voor alle duidelijkheid niet de warrants, convergeerbare effecten of rechten om in te schrijven op aandelen) uitgegeven door de vennootschap onder een Toegankelijke Uitgifte, of bij de uitoefening van of bij de omzetting van warrants, convergeerbare effecten, of rechten om in te schrijven op aandelen (in geval van warrants, convergeerbare effecten of rechten om in te schrijven op aandelen uitgegeven vóór 20 juli 2012, enkel indien Dr. Peeters en zijn Verbonden Vennootschappen de mogelijkheid hadden om in te schrijven op deze uitgifte);

- Verbonden Vennootschappen:
Het Verbonden Vennootschap van BSX en Dr. Peeters) heeft de betekenis gegeven in artikel 11 van het Wetboek van Vennootschappen en, in het geval van Dr. Peeters, met inbegrip van zijn rechtsopvolgers en (met betrekking tot Citadel en Knight) betekent elke andere persoon die, direct of indirect, controle heeft over, gecontroleerd wordt door of onder gezamenlijke controle staat van Citadel, dan wel Knight (zoals van toepassing).

- Controle:
Betekent, met betrekking tot Citadel en Knight en elke relevante persoon:
  - • de eigendom van of (directe of indirecte) controle over de aandelen of andere belangen in die persoon, die meer dan vijftig procent van de stemmen inhouden, uitoefeningen op de algemene vergaderingen van die persoon, aangaande alle of substantieel alle onderwerpen; of
  - • het recht om bestuurders (of mandatarissen met gelijkaardige functie) van die persoon te benoemen of af te zetten, en meerderheid houdend van de stemmen op de raad van bestuur (of het equivalent daarvan) van die persoon, aangaande alle of substantieel alle onderwerpen; of
  - • de bevoegdheid om een persoon om ervoor te zorgen dat de activiteiten, business en zaken van die persoon worden uitgevoerd in overeenstemming met de wensen van die persoon, met uitsluiting van alle overige personen, als gevolg van een bevoegdheidsdelegatie, contractuele regeling of anderszins, en elke afgeleide term van "controle" naar "controle" dienovereenkomstig opgevat zal worden.

- Toegankelijke Uitgifte betekent een uitgifte van aandelen of effecten convergeerbaar in aandelen (of waarvan er in te schrijven op aandelen) door de vennootschap in waarbij BSX of haar Verbonden Vennootschappen (voor het bepalen van het Relevant BSX van haar Verbonden Vennootschappen) of Dr. Peeters of zijn Verbonden Vennootschappen (voor het bepalen van het Relevant Dr. Peeters aandeelhouderschap) overeenkomstig een uitgifte waren toegelaten om eraan deel te nemen, en alle andere uitgiftes van effecten convergeerbaar in aandelen (of warranten of rechten om in te schrijven op aandelen) (zonder dubbele telling) die plaatsvinden na 20 juli 2012, ongeacht of BSX of Dr. Peeters of hun respectieve Verbonden Vennootschappen, naargelang het geval, overeenkomstig de voorwaarden van deze uitgifte waren toegelaten om eraan deel te nemen.
De duur van mandaat mag niet langer zijn dan zes (6) jaar. De bestuurders van wie de termijn van hun mandaat is verstreken, blijven in functie zolang de algemene vergadering, niet in hun vervanging heeft voorzien.

De uittredende bestuurders zijn herbenoembaar.

Artikel 15 – Vacature voor einde mandaat
Enige vacature die een bestuur vóór het verstrijken van zijn mandaat openvalt door overlijden, ontslag of beëindiging van het mandaat van een lid van de raad van bestuur die werd verkozen op voordracht van een aandeelhouder overeenkomstig artikel 14 (de "Betrokken Aandeelhouder"), zal worden opgevuld door de verkiezing van een nieuwe bestuurder op voordracht van de Betrokken Aandeelhouder (voor zover deze aandeelhouder op dat ogenblik nog dat recht heeft).
Indien de Betrokken Aandeelhouder meldt dat hij geen kandidaten of geen voldoende aantal kandidaten wenst voor te dragen of indien hij onvoldoende kandidaten voordraagt, dan zullen de betreffende mandaten vacant blijven en zullen zij pas worden opgevuld indien kandidaten voor verkiezing worden voorgedragen door de Betrokken Aandeelhouder.

8

Voor alle duidelijkheid weze hierbij verduidelijkt dat het gebrek aan voordracht van kandidaten voor benoeming overeenkomstig de bovenstaande paragrafen geen afstand inhoudt van het recht om kandidaten voor benoeming voor te dragen, en dat een nieuwe vergadering van aandeelhouders in geval van de Betrokken Aandeelhouder zal het recht hebben om de kandidaten te verkiezen die aldus zullen worden voorgedragen voor benoeming door de Betrokken Aandeelhouder.

Indien een Betrokken Aandeelhouder ervoor opteert om geen kandidaten voor benoeming voor te dragen, zijn de bijzondere rechten die aan deze kandidaten worden toegekend niet van toepassing, totdat er opnieuw kandidaten worden voorgedragen.

Artikel 16 – Voorzitterschap
De voorzitter van de raad van bestuur is een bestuurder die wordt voorgedragen door Citadel. Indien de voorzitter ook een Citadel Bestuurder is, beschikt hij over de doorslaggevende stem in geval van staking van stemmen. Indien het Relevant Citadel Aandeelhouderschap daalt tot onder 20%, hebben de Citadel Bestuurders niet langer de rechten beschreven in dit artikel 16. Indien het aandeelhouderschap van Citadel daarna opnieuw stijgt tot 20% of meer, zullen de Citadel Bestuurders opnieuw de rechten hebben zoals beschreven in dit artikel 16.

Artikel 17 – Vergaderingen van de raad van bestuur
De raad van bestuur wordt samengeroepen door zijn voorzitter of door twee bestuurders telkens als het belang van de vennootschap het vereist. Vergaderingen van de Raad van Bestuur zullen minstens eens per kwartaal plaatsvinden.

De oproepingen vermelden plaats, dag, uur en agenda van de vergadering en worden ten minste drie (3) werkdagen voor de vergadering verzonden per brief, fax, e-mail, hetzij op een andere schriftelijke wijze. In dringende gevallen mag de raad van bestuur op kortere termijn worden bijeengeroepen, voor zover de bestuurders daarvan redelijkerwijze op voorhand op de hoogte worden gesteld.

Indien de voorzitter verhinderd is, wordt de vergadering voorgezeten door een bestuurder die wordt verkozen onder de Citadel Bestuurders (of, indien er geen enkele aanwezig is, door één van de andere bestuurders).

Zodra alle bestuurders aanwezig zijn of rechtsgeldig vertegenwoordigd zijn, kan de regelmatigheid van de oproepingen niet worden betwist.

Artikel 18 – Beraadslaging
Opdat een vergadering van de raad van bestuur rechtsgeldig kan beraadslagen en beslissen moet, bovenop de vereisten van het Belgische vennootschapsrecht, minstens één Citadel Bestuurder en de Knight Bestuurder aanwezig zijn in persoon, per telefoon of bij wijze van volmacht. Indien echter: (i) het Relevant Citadel Aandeelhouderschap daalt tot onder 20% kan de raad van bestuur geldig beraadslagen (indien voldaan is aan de voorwaarden van het Belgische vennootschapsrecht) zelfs indien geen enkele Citadel Bestuurder aanwezig is; en (ii) het Relevant Knight Aandeelhouderschap daalt onder 3,75%, kan de raad van bestuur geldig beraadslagen (indien voldaan is aan de voorwaarden van het Belgische vennootschapsrecht) zelfs indien de Knight Bestuurder niet aanwezig is. De aanwezigheid van minstens één Citadel Bestuurder en de Knight Bestuurder vereist zijn indien het Relevant Citadel Aandeelhouderschap opnieuw stijgt tot 20% of meer en de aanwezigheid van de Knight Bestuurder zal opnieuw vereist zijn indien het Relevant Knight Aandeelhouderschap daarna opnieuw stijgt tot 3,75% of meer. Indien geen Citadel Bestuurder is benoemd en/of de Knight Bestuurder niet is benoemd, is de aanwezigheid van geen Citadel Bestuurder en/of de Knight Bestuurder (zoals van toepassing) niet vereist opdat de raad van bestuur geldig kan beraadslagen. De vereiste van aanwezigheid van de Knight Bestuurder zal niet van toepassing zijn zolang het agendapunt indien de Knight Bestuurder niet aanwezig is op twee opeenvolgende vergaderingen van de raad van bestuur, waarvoor zij rechtsgeldig werd opgeroepen, in enig voorwaarde dat tot zulke een vergadering en, in kennis werd gesteld van het relevante agendapunt.

In uitzonderlijke gevallen die behoorlijk het belang van de vennootschap, kunnen de beslissingen van de raad van bestuur bij dringende noodzakelijkheid en in het belang van de vennootschap, kunnen de beslissingen van de raad van bestuur bij eenparig schriftelijk besluit worden genomen. Van deze procedure kan echter geen gebruik worden gemaakt voor de vaststelling van de jaarrekening of voor een besluit tot kapitaalverhoging in het kader van het toegestaan kapitaal.

De raad van bestuur kan maar rechtsgeldig beraadslagen over punten die niet vermeld zijn op de agenda wanneer alle bestuurders aanwezig of rechtsgeldig vertegenwoordigd zijn en unaniem beslissen om over deze punten te beraadslagen.

Iedere bestuurder kan per brief, fax, e-mail of op een andere schriftelijke manier volmacht geven aan een andere bestuurder om hem op een vergadering van de raad van bestuur te vertegenwoordigen. Een bestuurder kan bij volmacht verscheidene van zijn collega's vertegenwoordigen.

De bestuurders dienen zich te onthouden van de bepalingen betreffende de belangenconflicten in het Wetboek van vennootschappen.

Beslissingen worden genomen met een gewone meerderheid van stemmen. Echter, op voorwaarde dat Citadel een Relevant Citadel Aandeelhouderschap (zoals gedefinieerd in artikel 14) houdt van ten minste 20%, de verplichtingen opgenomen in onderstaande lijst kunnen slechts door de raad van bestuur worden gesteld en voorstellen daartoe kunnen enkel worden gedaan aan de aandeelhouders, mits de voorafgaande toestemming van minstens één Citadel Bestuurder, zodat de beslissing met betrekking tot de onderstaande handelingen (indien deze kunnen worden genomen door de raad van bestuur), respectievelijk de voorstellen met betrekking tot onderstaande handelingen (indien die beslissing met betrekking tot deze handelingen niet door de raad van bestuur kan worden genomen), dienen te worden goedgekeurd met een gewone meerderheid van stemmen van de bestuurders met inbegrip van de goedkeuring van minstens één Citadel Bestuurder (en onderstaande zaken kunnen door de raad van bestuur en aandeelhouders worden overeengekomen). Citadel heeft het recht om één (of meerdere) Citadel Bestuurder(s) aan te duiden die bevoegd is of zijn om dit goedkeuringsrecht uit te oefenen, in welk geval enkel de aangeduide Citadel Bestuurder(s) dit recht kan of kunnen uitoefenen. Deze handelingen zijn:

- Het opvragen van niet-volgestorte kapitaal van de vennootschap (met inbegrip van elk voorstel aan Citadel of enige rechten met betrekking tot dit niet-volgestort kapitaal);
- Het voorstel tot wijziging van de statuten van de vennootschap (met inbegrip van elk voorstel dat de rechten van Citadel onder deze statuten wijzigt) of van een van haar dochtervennootschappen, in de zin van artikel 6 van het Wetboek van vennootschappen (de vennootschap samen met deze dochtervennootschappen worden hierna de "Easdaq Group" genoemd);
- De uitgifte of de toekenning van aandelen of andere effecten door een lid van de Easdaq Group (of aandelen, toekenning of uitgifte van een lid van de Easdaq Group, waarvan het recht om in te schrijven op aandelen van een lid van de Easdaq Group of het recht om andere effecten te verwerven of het recht om effecten om te zetten in aandelen van een lid van de Easdaq Group, of een voorstel om het bovenstaande te doen);
- Een beslissing of voorstel tot vaststelling of betaling van een dividend of de vaststelling of het doen van enige andere uitkering door een lid van de Easdaq Group;
- Een belangrijke wijziging in de aard of de omvang van de activiteiten van de vennootschap;
- Het aangaan van schulden door de vennootschap voor meer dan 25.000 euro (voor de duidelijkheid, de intra-groep schulden tussen de leden van de Easdaq Group niet inbegrepen) of het oplopen van handelskrediet boven 100.000 euro per krediet;
- Het oprichten of verwerven van een verbonden vennootschap door de vennootschap;
- Het toekennen of de toestemming tot het creëren van een zekerheid of een ander recht op een lid van de Easdaq Group, op haar onderneming of haar goederen van de vennootschap, met een marktwaarde van meer dan 10.000 euro;
- De beslissing of een voorstel tot ontbinding van een lid van de Easdaq Group of een verzoek tot aanstelling van een beheerder of een curator van de goederen van de vennootschap;
- Het toekennen van een waarborg of een schadevergoeding door de vennootschap die kan leiden tot een aansprakelijkheid van meer dan 10.000 euro (uitgezonderd met betrekking tot de aansprakelijkheid van een lid van de Easdaq Group);
- Het aanspannen van een gerechtelijke of arbitrale procedure of het aangaan van een dading in een dergelijke procedure voor een bedrag van meer dan 120.000 euro (andere dan de gewone inning van schuldvorderingen);
- Het verrichten van enige verbintenissen die buiten de normale grenzen vallen van de activiteiten of die overeengekomen zijn door de vennootschap voor de vennootschap (een uitgave zou meebrengen van meer dan 250.000 euro of die in enig ander opzicht als belangrijk kunnen worden beschouwd voor de activiteiten van de vennootschap;
- Het aangaan van een lening of het toekennen van een krediet door de vennootschap buiten de normale grenzen van haar activiteit (en uitgezonderd met betrekking tot de aansprakelijkheid van een lid van de Easdaq Group);
- Het voorstel tot kapitaalvermindering of het inkopen, kopen of anderszins verwerven door een lid van de Easdaq Group van aandelen of effecten van een lid van de Easdaq Group (ongeacht of hiervoor kapitaal wordt gebruikt);
- Het voorstel om het kapitaal van een lid van de Easdaq Group verder onder te verdelen, samen te voegen of te herbenoemen, en alle beslissingen of voorstellen van een lid van de Easdaq Group te fuseren (in of met andere entiteiten, een volledige of partiële splitsing door de

---

voeren van een lid van de Easdaq Group, of een gelijkaardige transactie in de zin van artikel 676 van het Wetboek van vennootschappen;
- Een naamsverandering van een lid van de Easdaq Group, of een voorstel in die zin;
- De verplaatsing van de maatschappelijke- of andere zetel van een lid van de Easdaq Group;
- Het verwerven, de verkoop of transfer buiten de Easdaq Group van: (i) cash of cash equivalenten of een ander goed voor een bedrag van meer dan 100.000 euro per transfer (waarbij verbonden transfers worden samengevoegd); of (ii) elk belang van de vennootschap in Equiduct Systems Limited (hierna gedefinieerd als "Equiduct"), behalve indien daartoe reeds een bijzondere goedkeuring werd gegeven in toepassing van een sub paragraaf van dit artikel 18;
- De goedkeuring van het jaarlijkse budget of business plan (dat in overeenstemming dient te zijn met artikel 9.8 van de investeringsovereenkomst tussen Citadel, BSX, Dr. Peeters en de Vennootschap van 20 juli 2009) van de Easdaq Group;
- De toekenning of overdracht van het overdracht van het ontslag van een senior medewerker van de vennootschap of een belang in aandelen of schuldinstrumenten of een voorstel in dit verband;
- Het verlenen van financiële bijstand (zoals deze uitdrukking is gedefinieerd in artikel 629 van het Wetboek van vennootschappen) door de vennootschap voor de verwerving van aandelen van de vennootschap;
- De benoeming, het vaststellen van de voorwaarden van tewerkstelling (of een wijziging daarvan) of de overdracht of het ontslag van een senior medewerker van de vennootschap wiens basissalaris (commissies en bonussen niet inbegrepen) meer bedraagt dan 100.000 euro per jaar;
- Het aangaan, wijzigen of ontbinden van een overeenkomst of akkoord tussen enerzijds een lid van de Easdaq Group en anderzijds Citadel, BSX, Knight, Dr. Peeters (of een verbonden vennootschap of een rechtsopvolger van iedereen van Citadel, BSX, Knight of Dr. Peeters) en/of een andere directe of indirecte aandeelhouder van de vennootschap die een belang van 1% of meer houdt in de aandelen uitgegeven door de vennootschap;
- Enige andere transactie of de regeling door een lid van de Easdaq Group in het voordeel van Citadel, BSX, Knight, Dr. Peeters (of een verbonden vennootschap of een rechtsopvolger van de vennootschap die een belang van 1% of meer houdt in de aandelen uitgegeven door de vennootschap;
- De registratie van intellectuele eigendom of het aanvragen van een licentie voor deze intellectuele eigendom door de vennootschap, buiten de normale grenzen van haar activiteiten;
- Het overeenkomen van prijzen en andere voorwaarden met deelnemers (i.a. dfvel (i) aan een tegenpartij of tot Börse Berlin, indien deze person een tegenovereenkomst heeft afgesloten met BSX (of, naargelang het geval, een andere partij) teneinde gebruik te maken van een beurs die wordt ondersteund door de Easdaq Group, of (ii) een deelnemer aan één of meer beurzen of trading platforms waaraan de vennootschap diensten verstrekt) en trekkaten;
- Het overeenkomen van verbintenissen of voorwaarden met enige publieke overheid;
- De benoeming en het ontslag van de bestuurders van Equiduct of andere leden van de Easdaq Group, anders dan overeenkomstig artikel 14;
- Het vaststellen of wijzigen van de boekhoudkundige richtlijnen voor de vennootschap; en
- Het uitoefenen van aandeelhoudersrechten door een lid van de Easdaq Group met betrekking tot enige andere lid van de Easdaq Group.

Indien het Relevant Citadel Aandeelhouderschap daalt tot onder 20%, kunnen alle voormelde beslissingen en voorstellen worden aangenomen met een gewone meerderheid van stemmen. Indien het Relevant Citadel Aandeelhouderschap daarna opnieuw stijgt tot 20% of meer, komt de uitoefening van de rechten beschreven in dit artikel 18, zesde paragraaf, opnieuw toe aan de Citadel Bestuurders.

Daarenboven, indien Knight een Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) houdt van ten minste 3,75%, kunnen de handelingen opgenomen in onderstaande lijst slechts door de raad van bestuur worden gesteld en kunnen voorstellen daartoe enkel worden gedaan aan de aandeelhouders, mits de voorafgaande toestemming van de Knight Bestuurder, zodat de beslissing met betrekking tot de onderstaande handelingen (indien deze kunnen worden genomen door de raad van bestuur), respectievelijk de voorstellen met betrekking tot onderstaande handelingen (indien de beslissing met betrekking tot deze handelingen niet door de raad van bestuur kan worden genomen), dienen te worden goedgekeurd met een gewone meerderheid van stemmen van de bestuurders met inbegrip van de

11

goedkeuring van de Knight Bestuurder (en onderstaande zaken kunnen door de raad van bestuur niet aan anderen worden gedelegeerd). Deze handelingen zijn:

- Het voorstel tot wijziging van de statuten van de vennootschap hetwelk de rechten van Knight onder deze statuten wijzigt;
- Tot 24 juni 2012, elke belangrijke wijziging van de aard van de activiteiten van de Easdaq Group;
- Tot 24 juni 2012, de goedkeuring van het jaarlijkse budget of business plan van de Easdaq Group of elke belangrijke wijziging of afwijking van het jaarlijkse budget en het business plan. Waar van toepassing, indien de Knight Bestuurder het jaarlijkse budget of het business plan of belangrijke wijzigingen of afwijkingen niet goedkeurt, zal het jaarlijkse budget van het voorgaande jaar van toepassing zijn op het huidige jaar ten aanzien van het betrokken item (met verhogingen tot en met 20%) en het business plan van het voorafgaande jaar zal van toepassing blijven.

(De twee voorgaande paragrafen zullen zodanig worden geïnterpreteerd om de ontwikkeling van nieuwe producten door de Easdaq Group, of verwervingen van enige persoon, actief of positieve cashflow of door bedragen andere dan de vergoeding verschaft door Knight voor de inschrijving op aandelen, of aan geen substantiële kosten of met de toestemming van de Knight Bestuurder, die niet onredelijk zal worden weerhouden of uitgesteld);)

- Tot 24 juni 2012, elke wijziging van de juridische status van enig lid van de Easdaq Group, welk een rechtstreeks effect heeft op het Equiduct marktsegment zoals geëxploiteerd door BSX, met inbegrip van elke wijziging van of hernieuwing van de afspraken met BSX zoals vastgelegd in de master agreement tussen BSX, Equiduct en de vennootschap van 7 augustus 2009 en de outsourcing agreement tussen BSX, Equiduct en de vennootschap van 7 augustus 2009.
- Tot 24 juni 2012, de beslissing of een voorstel tot ontbinding van enig lid van de Easdaq Group of een verzoek tot aanstelling van een beheerder of een curator van enig lid van de Easdaq Group; en
- Enige transactie door een lid van de Easdaq Group met Citadel, BSX, Dr. Peeters of een andere directe of indirecte aandeelhouder van de vennootschap die een belang van 1% of meer houdt in de aandelen uitgegeven door de vennootschap en elke wijziging van een bestaande transactie (in alle gevallen andere dan transacties of wijzigingen waarvan de voorwaarden aan "arms length" zijn)

Indien het Relevant Knight Aandeelhouderschap daalt tot onder 3,75%, kunnen alle voormelde beslissingen en voorstellen worden aangenomen met een gewone meerderheid van stemmen. Indien het Relevant Knight Aandeelhouderschap daarna opnieuw stijgt tot 3,75% of meer, komt de uitoefening van de rechten beschreven in dit artikel 18, achtste paragraaf opnieuw toe aan de Knight Bestuurder.

Daarenboven, indien Knight de warrant uitoefent die haar was toegekend op of rond 24 juni 2010 en een Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) aanhoudt van ten minste 10%, Knight de handelingen opgenomen in onderstaande lijst slechts door de raad van bestuur worden gesteld en kunnen voorstellen daartoe enkel worden gedaan aan de aandeelhouders, mits de voorafgaande toestemming van ten minste één Knight Bestuurder, zodat de beslissingen met betrekking tot de onderstaande handelingen (indien deze kunnen worden genomen door de raad van bestuur), respectievelijk de voorstellen met betrekking tot onderstaande handelingen (indien de beslissing met betrekking tot deze handelingen niet door de raad van bestuur kan worden genomen), dienen te worden goedgekeurd met een gewone meerderheid van stemmen van de bestuurders met inbegrip van de goedkeuring van minstens één Knight Bestuurder (en onderstaande zaken kunnen door de raad van bestuur niet aan anderen worden gedelegeerd). Deze handelingen zijn de volgende:

- Goedkeuring van de vestiging en de voorwaarden van enig aandeelnoptieplan voor werknemers of enig plan voor werknemers dat een toewijzing of de toekenning inhoudt van

12

opties, prijzen of belangen met betrekking tot een aantal aandelen, dat mogelijk 7% van de aandelen van de vennootschap overschrijdt;

- Tussen 24 juni 2012 en 24 juni 2014, de goedkeuring van het jaarlijkse budget of business plan van de Easdaq Group of elke belangrijke wijziging of afwijking van het jaarlijkse budget en het business plan, in de mate dat het budget of belangrijke wijzigingen of afwijkingen in belangrijke mate afwijken van de business positie van de Easdaq Group zoals per 24 juni 2012. Waar van toepassing, indien de Knight Bestuurder het jaarlijkse budget en het business plan of belangrijke wijzigingen of afwijkingen niet goedkeurt, zal het jaarlijkse budget van het voorgaande jaar van toepassing zijn op het dan huidige jaar (met verhogingen tot en met 20%) en het business plan van het voorafgaande jaar zal van toepassing blijven;

(De twee voorgaande paragrafen zullen zodanig worden geïnterpreteerd om de ontwikkeling van nieuwe producten door de Easdaq Group, of verwervingen van enige persoon, actief of positieve cashflow of door bedragen andere dan de vergoeding verschaft door Knight voor de inschrijving op aandelen, of aan geen substantiële kosten of met de toestemming van de Knight Bestuurder, die niet onredelijk zal worden weerhouden of uitgesteld); en

- op voorwaarde dat Knight en haar Verboden Vennootschappen tenminste 10% van het gemiddelde dagelijkse volume van het Easdaq Trading System verhandeld heeft tijdens de voorafgaande drie maanden, de goedkeuring van elke wijziging van de juridische status van enig lid van de Easdaq Group, welk een rechtstreeks effect heeft op het Equiduct marktsegment zoals geëxploiteerd door BSX, met inbegrip van elke wijziging van of hernieuwing van de afspraken met BSX zoals vastgelegd in de master agreement tussen BSX, Equiduct en de vennootschap van 7 augustus 2009 en de outsourcing agreement tussen BSX, Equiduct en de vennootschap van 7 augustus 2009.

Daarenboven, indien Knight de warrant uitoefent die haar was toegekend op of rond 24 juni 2010 en een Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) aanhoudt van ten minste 10%, zal Knight ten minste 10 weken op voorhand geraadpleegd worden over de volgende onderwerpen met betrekking tot elk lid van de Easdaq Group:

- het jaarlijkse budget of business plan van de Easdaq Group;
- de aankoop of verkoop van activa niet opgenomen in de jaarrekening, business plan van de Easdaq Group en met een waarde hoger dan €500.000 per actief;
- De benoeming, het ontslag, en het vaststellen van de voorwaarden van tewerkstelling (of een vervanging daarvan) of de overdracht of het ontslag van een senior werknemer (of vennootschap wiens basissalaris (commissies en bonussen niet inbegrepen) meer bedraagt dan 100.000 euro per jaar;
- De benoeming of het ontslag van de bestuurders van de Easdaq Group, anders dan overeenkomstig artikel 14;

Indien het Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) daalt tot onder 10%, en daarna opnieuw stijgt tot deze drempel, worden de rechten van Knight beschreven in dit artikel 18, tiende en elfde paragraaf opnieuw van toepassing.

Artikel 19 — Notulen
Van de beraadslagingen van de raad van bestuur worden notulen bijgehouden die worden ondertekend door de voorzitter of de secretaris van de raad van bestuur en door de bestuurders die daarom verzoeken. Deze notulen worden bewaard in een speciaal daartoe bestemd register. De volmachten worden aan de notulen gehecht.

De afschriften of uittreksels die in rechte of anderszins moeten worden aangewend, worden ondertekend door twee (2) bestuurders of door een persoon die belast is met het dagelijks bestuur. Deze bevoegdheid kan worden gedelegeerd aan een gevolmachtigde.

Artikel 20 — Bevoegdheid van de raad van bestuur

13

De raad van bestuur wordt bekleed met de meest uitgebreide bevoegdheden om alle daden te stellen die nuttig of noodzakelijk zijn voor de verwezenlijking van het maatschappelijk doel.

De raad van bestuur heeft niet de bevoegdheid om handelingen te stellen die door de wet of de statuten uitdrukkelijk voorbehouden zijn aan de algemene vergadering.

**Artikel 21 – Bezoldiging**

Het mandaat van de bestuurder is onbezoldigd behoudens een andersluidende beslissing van de algemene vergadering.

**Artikel 22 – Vertegenwoordiging**

De vennootschap wordt rechtsgeldig vertegenwoordigd voor alle handelingen, met inbegrip van de vertegenwoordiging in rechte, door twee (2) bestuurders die gezamenlijk handelen.

De vennootschap wordt bij alle daden van dagelijks bestuur, inbegrepen de vertegenwoordiging in rechte, rechtsgeldig vertegenwoordigd door de persoon die belast is met het dagelijks bestuur, tenzij de raad van bestuur niet één persoon heeft belast met het dagelijks bestuur, in welk geval de vennootschap in alle handelingen, met inbegrip van deze in verband met het gerechtelijke procedures, rechtsgeldig vertegenwoordigd worden door telkens twee van deze personen belast met het dagelijks bestuur, samenhandelend. Deze personen zullen ten aanzien van derden zich niet dienen te verantwoorden middels een voorafgaande beslissing van de raad van bestuur.

De vennootschap is eveneens geldig verbonden door bijzondere gevolmachtigden binnen de perken van hun mandaat.

**Artikel 23 – Dagelijks bestuur en bijzondere comités**

**§.1. Dagelijks bestuur**

De raad van bestuur kan het dagelijks bestuur van de vennootschap toevertrouwen aan één of meer personen, die geen bestuurders hoeven te zijn. Deze perso[o]n(en) worden benoemd op voordracht van de Citadel Bestuurders.

Indien het Relevant Citadel Aandeelhouderschap daalt tot onder 20%, is het voordrachtrecht van de Citadel Bestuurders, zoals beschreven in dit artikel 23, §1, niet van toepassing. Indien het Relevant Citadel Aandeelhouderschap daarna opnieuw stijgt tot 20% of meer, komt dit voordrachtrecht opnieuw toe aan de Citadel Bestuurders.

Indien de persoon die met het dagelijks bestuur is belast tevens een bestuurder is, zal deze de titel van gedelegeerd bestuurder dragen.

De raad van bestuur kan aan de delegatie van het dagelijks bestuur bepaalde van haar bevoegdheden voor deze functie.

Iedere persoon die belast is met het dagelijks bestuur kan voor bijzondere en welbepaalde aangelegenheden een deel van zijn bevoegdheden delegeren aan een volmachthouder, die geen aandeelhouder of bestuurder hoeft te zijn.

**§.2. Directiecomité**

Overeenkomstig artikel 524bis van het Wetboek van vennootschappen kan de raad van bestuur zijn bestuursbevoegdheden overdragen aan een directiecomité, zonder dat deze overdracht evenwel betrekking kan hebben op het algemeen beleid van de vennootschap of op alle handelingen die op grond van andere bepalingen van de wet aan de raad van bestuur zijn voorbehouden.

De voorwaarden voor de aanstelling van de leden van het directiecomité, hun ontslag, hun bezoldiging, de duur van hun opdracht en de werkwijze van het directiecomité worden bepaald door de raad van bestuur.

Een lid van het directiecomité dat, rechtstreeks of onrechtstreeks, een belang van vermogensrechtelijke aard heeft dat strijdig is met een beslissing of een verrichting die tot de bevoegdheid van het comité behoort, stelt de andere leden hiervan in kennis voordat het comité beraadslaagt. Voorts moeten de voorschriften van artikelen 524bis en ter van het Wetboek van vennootschappen in acht worden genomen.

**§.3. Bijzondere comités**

Zonder afbreuk te doen aan artikel 18, mag de raad van bestuur een uitvoerend-, benoemings-, remuneratie- en auditcomité oprichten, of elk ander comité dat hij bepaalt en waarvan hij de bevoegdheden bepaalt. Elk comité telt minstens één Citadel Bestuurder en de Citadel Bestuurder en de vergadering van een comité kan pas geldig beraadslagen indien minstens twee bestuurders, waarvan minstens één een Citadel Bestuurder en/of de Knight Bestuurder, aanwezig zijn in persoon, per telefoon of bij volmacht. Indien geen Citadel Bestuurder is benoemd en/of de Knight Bestuurder niet is benoemd, is de aanwezigheid van een Citadel Bestuurder en/of de Knight Bestuurder (zoals van toepassing) niet vereist

14

opdat de vergadering van een comité geldig kan beraadslagen. De vereiste van aanwezigheid van de Knight Bestuurder zal niet van toepassing zijn ten aanzien van enig agendapunt indien de Knight Bestuurder niet aanwezig is op twee opeenvolgende vergaderingen van het relevante comité, op voorwaarde dat de Knight Bestuurder geldig opgeroepen was tot zulk een vergadering en in kennis werd gesteld van het relevante agendapunt. In zulk geval zal de vergadering van het comité geldig kunnen beraadslagen indien ten minste twee bestuurders, waarvan ten minste één een Citadel Bestuurder, aanwezig of vertegenwoordigd zijn.

Het comité beslist bij gewone meerderheid van de aanwezige of vertegenwoordigde bestuurders, met dien verstande dat een beslissing pas geldig genomen is wanneer één of meer Citadel Bestuurders voor deze beslissing hebben gestemd. Indien het Relevant Citadel Aandeelhouderschap daalt tot onder 20%, moet een comité niet minstens één Citadel Bestuurder tellen, kan het comité geldig beraadslagen zelfs indien geen Citadel Bestuurder aanwezig of vertegenwoordigd is en geen enkele beslissing van een dergelijk comité zal onderworpen zijn aan het vetorecht van een Citadel Bestuurder (wanneer een dergelijke bestuurder lid is van het comité). Indien het Relevant Citadel Aandeelhouderschap daarna opnieuw stijgt tot 3,75% of meer komen deze rechten opnieuw toe aan de Citadel Bestuurders (zoals van toepassing).

**Artikel 24 – Controle**

De controle van de financiële positie, de jaarrekening en de regelmatigheid in het licht van het Wetboek van vennootschappen en de statuten en van de in de jaarrekening vast te stellen verrichtingen, wordt toevertrouwd aan één of meer commissarissen die door de algemene vergadering wordt/worden benoemd onder de erkende leden van het Instituut der Bedrijfsrevisoren.

De algemene vergadering bepaalt het aantal commissarissen en stelt hun vergoedingen vast.

De commissarissen worden benoemd voor een hernieuwbare termijn van drie jaar. Op straffe van schadevergoeding kunnen zij tijdens hun opdracht alleen worden ontslagen door de algemene vergadering om wettige redenen en met eerbiediging van de procedure ingesteld door de artikels 135 en 136 van het Wetboek van vennootschappen.

**Artikel 25 – Taak van de Commissarissen**

De commissarissen hebben gezamenlijk of individueel een onbeperkt recht van toezicht en controle op alle verrichtingen van de vennootschap. Zij kunnen ter plaatse kennis nemen van de boeken, de briefwisseling, de notulen en in het algemeen alle geschriften van de vennootschap. Ieder semester wordt hen door de raad van bestuur een samenvattende staat van activa en passiva van de vennootschap overgemaakt.

De commissarissen kunnen zich bij de uitoefening van hun functies op hun kosten laten bijstaan door aangestelden of andere personen voor wie zij aansprakelijk zijn.

**TITEL IV. – Algemene vergadering**

**Artikel 26 – Samenstelling en bevoegdheid**

De regelmatig samengestelde algemene vergadering vertegenwoordigt alle aandeelhouders. De beslissingen die door de algemene vergadering worden opgenomen, zijn bindend voor alle aandeelhouders, ook voor de afwezigen of voor diegenen die een afwijkend standpunt innemen.

**Artikel 27 – Vergaderingen**

De jaarlijkse algemene vergadering wordt gehouden op de vierde donderdag van de maand juni om tien (10) uur. Indien deze dag een wettelijke feestdag is, wordt de vergadering gehouden op de daaropvolgende werkdag.

Een buitengewone algemene vergadering kan worden bijeengeroepen telkens als het belang van de vennootschap dit vereist en moet worden bijeengeroepen telkens als de aandeelhouders die een vijfde van het onderschreven kapitaal vertegenwoordigen daarom verzoeken.

De algemene vergaderingen wordt gehouden op de maatschappelijke zetel van de vennootschap of op enige welke andere plaats aangewezen in de oproeping.

**Artikel 28 – Bijeenroeping**

15

De algemene vergadering komt bijeen na oproeping door de raad van bestuur, de voorzitter van de raad en van bestuur of de commissaris(sen).

Deze oproeping vermeldt plaats, datum, uur en agenda van de algemene vergadering en dient te geschieden overeenkomstig de vormen en termijnen voorgeschreven door artikel 533 van het Wetboek van vennootschappen.

Elk jaar wordt ten minste één algemene vergadering gehouden waarvan de agenda onder andere vermeldt: de bespreking van het jaarverslag (en, indien nodig, het verslag van de commissaris(sen)), de bespreking en goedkeuring van de jaarrekeningen, de verdeling van de winst, de ontlasting van de bestuurders en de commissaris(sen) en, in voorkomend geval, de benoeming van bestuurders en commissaris(sen).

De rechtsgeldigheid van de bijeenroeping kan niet worden betwist wanneer alle aandeelhouders aanwezig of geldig vertegenwoordigd zijn.

**Artikel 29 – Toelating**

Voorzover de raad van bestuur het in de oproeping vermeldt, dient iedere eigenaar van aandelen op naam, om te worden toegelaten tot de algemene vergadering, zijn intentie om aan de algemene vergadering deel te nemen, kenbaar te maken aan de raad van bestuur ten minste vier (4) volle dagen voor de datum van deze vergadering.

De houders van obligaties kunnen aan de algemene vergadering deelnemen voorzover zij hun titels neerleggen binnen de termijn en op de plaats die door de raad van bestuur in de oproeping is aangeduid. Deze termijn kan evenwel niet langer zijn dan vier (4) volle dagen.

**Artikel 30 – Vertegenwoordiging**

Iedere aandeelhouder kan per brief, fax, e-mail of op iedere andere schriftelijke wijze volmacht geven om zich te vertegenwoordigen op de algemene vergadering. De volmachthouder hoeft geen aandeelhouder te zijn.

De raad van bestuur kan de vorm van de volmachten vaststellen in de oproeping en eisen dat deze ten minste vier (4) volle dagen vóór de algemene vergadering worden neergelegd op de plaats die is aangewezen in de oproeping.

**Artikel 31 – Voorzitterschap van de algemene vergadering**

De algemene vergadering wordt voorgezeten door de voorzitter van de raad van bestuur of, in diens afwezigheid, door een gedelegeerd bestuurder of, in dien afwezigheid, door de bestuurder met de grootste anciënniteit.

**Artikel 32 – Aantal stemmen– Uitoefening van het stemrecht**

Ieder aandeel geeft recht op één stem.

De houders van obligaties mogen deelnemen aan de algemene vergadering, doch uitsluitend met raadgevende stem.

**Artikel 33 – Beraadslaging**

Vóór de opening van de zitting wordt een aanwezigheidslijst met de namen van de aandeelhouders en het aantal aandelen dat zij bezitten door elk van de hen of door hun gevolmachtigde ondertekend.

De algemene vergadering kan niet beraadslagen over punten die niet vermeld zijn op de agenda behalve wanneer alle aandeelhouders persoonlijk op de algemene vergadering aanwezig zijn en unaniem beslissen om over deze punten te beraadslagen.

Onder voorbehoud van de vragen die hen worden gesteld door de aandeelhouders met betrekking tot hun jaarverslag of de punten vermeld op de agenda. De commissaris(sen) beantwoorden, volgens de vragen die hen (hun) worden gesteld door de aandeelhouders met betrekking tot zijn (hun) verslag.

Behoudens een andersluidende wettelijke of statutaire bepaling, wordt iedere beslissing door de algemene vergadering genomen bij gewone meerderheid van stemmen, ongeacht het aantal aandelen dat ar is vertegenwoordigd. De blanco of ongeldige stemmen kunnen niet worden toegevoegd aan de uitgebrachte stemmen.

Niettegenstaande de voorgaande paragraaf en zonder afbreuk te doen aan de bepalingen van artikel 18 hierboven en aan quorumvereisten en/of strengere meerderheidsvereisten die in voorkomend geval door wettelijke bepalingen worden opgelegd, en indien Citadel een Relevant Citadel Aandeelhouder is (zoals gedefinieerd in artikel 14) aanhoudt van ten minste 20%, zullen de hierna volgende beslissingen wettelijk worden opgelegd en indien Citadel, wanneer zij worden voorgelegd aan de vergadering van aandeelhouders (voor alle duidelijkheid wordt gespecificeerd dat het niet de bedeling is

16

dat dit artikel 33 aan de vergadering van aandeelhouders bevoegdheden toekent die zij niet heeft onder het gemeen vennootschapsrecht);
- Iedere wijziging aan de statuten van de vennootschap (met inbegrip van elk voorstel dat de rechten van Citadel onder deze statuten wijzigt);
- De uitgifte of de toekenning van aandelen of andere effecten door de vennootschap of de creatie, toekenning of uitgifte van een optie, warrant of het recht om in te schrijven op aandelen van de vennootschap of het recht om deze te verwerven of het recht om effecten om te zetten in aandelen;
- De vaststelling of uitbetaling van een dividend of de vaststelling of het doen van enige andere uitkering door de vennootschap;
- De ontbinding van de vennootschap;
- De vermindering van het kapitaal of het inkopen, kopen of anderszins verwerven van aandelen of effecten door de vennootschap;
- Het verder onderverdelen, samenvoegen of herbenoemen van het kapitaal van de vennootschap, of een fusie in of met andere entiteiten, een volledige of partiële splitsing van de vennootschap, of een gelijkaardige transactie in de zin van artikel 676 van het Wetboek van vennootschappen;
- De verandering van de naam van de vennootschap;
- De verplaatsing van de zetel van de vennootschap;
- Het verlenen van financiële bijstand (zoals deze uitdrukking is gedefinieerd in artikel 629 van het Wetboek van vennootschappen) door de vennootschap voor de verwerving van aandelen van de vennootschap;
- Het aangaan van schulden door de vennootschap voor meer dan 25,000 euro.

Indien het Relevant Citadel Aandeelhouderschap (zoals gedefinieerd in artikel 14) daalt tot onder 20%, en daarna opnieuw stijgt tot deze drempel, of erboven, worden de rechten van Citadel beschreven in dit artikel 33, vijfde paragraaf opnieuw van toepassing.

Niettegenstaande paragraaf 4 hierboven en zonder afbreuk te doen aan de bepalingen van artikel 18 hierboven en aan quorumvereisten en/of strengere meerderheidsvereisten die in voorkomend geval door wettelijke bepalingen worden opgelegd, en indien Knight een Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) aanhoudt van ten minste 3,75%, zullen de hierna volgende beslissingen de instemming vereisen van Knight, wanneer zij worden voorgelegd aan de vergadering van aandeelhouders (voor alle duidelijkheid wordt gespecificeerd dat dit niet de bedeling is dat dit artikel 33 aan de vergadering van aandeelhouders bevoegdheden toekent die zij niet heeft onder het gemeen vennootschapsrecht);
- Iedere wijziging aan de statuten van de vennootschap dewelke de rechten van Knight onder deze statuten wijzigt en
- De ontbinding van de vennootschap.

Indien het Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) daalt tot onder 3,75%, en daarna opnieuw stijgt tot deze drempel of erboven, worden de rechten van Knight beschreven in dit artikel 33, zevende paragraaf opnieuw van toepassing.

Met betrekking tot de benoeming van bestuurders en/of de commissaris, wordt, indien bij een stemming over de benoeming van een bestuurder (of een commissaris) geen enkele kandidaat de absolute meerderheid van de stemmen behaalt, overgegaan tot een nieuwe stemming over de twee kandidaten die het hoogste aantal stemmen hebben behaald.

Er wordt gestemd bij handopsteken of bij naamafroeping, tenzij de algemene vergadering er met eenvoudige meerderheid van de uitgebrachte stemmen anders over beslist. Elke bestuurder mag vragen dat er gestemd wordt bij naamafroeping. Het voorgaande doet geen afbreuk aan het recht van iedere aandeelhouder om per brief te stemmen door middel van een formulier dat ministens de volgende vermeldingen bevat: (i) identificatie van de aandeelhouder; (ii) aantal stemmen dat hij kan uitbrengen; (iii) voor iedere beslissing die volgens de agenda door de algemene vergadering moet worden genomen: "ja", "neen" of "onthouding".

**Artikel 34 – Notulen**

De notulen van de algemene vergadering worden ondertekend door het bureau, zoals omschreven in artikel 546 van het Wetboek van vennootschappen, en door de aandeelhouders die daarom verzoeken.

17

De afschriften die in rechte of anderszins moeten worden aangewend, worden ondertekend door twee bestuurders.

## TITEL V. Jaarrekening – Verdeling van de winst

**Artikel 35 – Jaarrekening**

Het boekjaar begint op 1 januari en eindigt op 31 december van ieder jaar.

Op het einde van iedere boekjaar worden door de raad van bestuur de inventaris en de jaarrekening opgemaakt. De bestuurders stellen tevens een jaarverslag op waarin zij rekenschap afleggen over hun bestuur. Dit verslag bevat een commentaar op de jaarrekening teneinde een getrouw overzicht te geven van de gang van zaken en van de positie van de vennootschap, alsook van de andere elementen opgesomd in artikel 96 van het Wetboek van vennootschappen.

**Artikel 36 – Goedkeuring van de jaarrekening**

De jaarlijkse algemene vergadering aanhoort het jaarverslag en, in voorkomend geval, het verslag van de commissaris(sen) en beraadslaagt over de goedkeuring van de jaarrekening.

Na de goedkeuring van de jaarrekening, spreekt de algemene vergadering zich in een bijzondere stemming uit over de kwijting van de bestuurders en, in voorkomend geval, van de commissaris(sen). Deze kwijting is maar geldig indien de balans geen vergetelheid, noch valse vermelding bevat die de werkelijke toestand van de vennootschap verbergt en, voor wat betreft de handelingen die in afwijking van de statuten werden gesteld of die ingaan tegen het Wetboek van vennootschappen, indien zij uitdrukkelijk zijn vermeld in de oproeping.

**Artikel 37 – Uitkering**

Van de nettowinst vermeld in de jaarrekening wordt jaarlijks een bedrag van vijf (5 %) ingehouden voor de vorming van het wettelijk reservefonds, waarbij deze inhouding niet meer noodzakelijk is zodra het reservefonds tien procent (10 %) van het onderschreven kapitaal vertegenwoordigt.

Op voorstel van de raad van bestuur wordt het saldo jaarlijks ter beschikking gesteld van de algemene vergadering die er soeverein de bestemming kan bepaald, binnen de beperkingen opgelegd door artikel 617 van het Wetboek van vennootschappen.

**Artikel 38 – Betaling van dividenden**

De dividenden worden betaald op het tijdstip en de plaats die wordt aangeduid door de raad van bestuur.

Ingeval de dividenden die worden uitgekeerd aan aandelen op naam niet worden opgevorderd, is de betaling van deze dividenden verjaard ten gunste van de vennootschap na het verstrijken van een termijn van vijf jaar vanaf de betaalbaarstelling.

**Artikel 39 – Interimdividenden**

De raad van bestuur heeft de bevoegdheid om een interimdividend uit te betalen, binnen de beperkingen van artikel 618 van het Wetboek van vennootschappen.

## TITEL VI. Ontbinding – Vereffening

**Artikel 40 – Voortijdige ontbinding**

Indien tengevolge van geleden verlies het netto actief gedaald is tot minder dan de helft van het maatschappelijk kapitaal, moet de bestuurders de vraag over de ontbinding van de vennootschap en eventueel andere maatregelen voorleggen aan de algemene vergadering, die dient te beraadslagen overeenkomstig artikel 633 van het Wetboek van vennootschappen.

Indien tengevolge van geleden verlies het netto actief gedaald is tot minder dan een vierde van het onderschreven kapitaal, kan de ontbinding worden uitgesproken door een vierde van de uitgebrachte stemmen op de vergadering.

Indien het netto actief is gedaald tot minder dan het wettelijk minimum, kan iedere belanghebbende voor de rechtbank de ontbinding van de vennootschap vorderen. De rechtbank kan, in voorkomend geval, aan de vennootschap een termijn toestaan om haar toestand te regulariseren.

**Artikel 41 – Vereffening**

Ingeval van ontbinding en vereffening van de vennootschap, om welke reden of op welk ogenblik ook, dient de vereffening te geschieden door één vereffenaar of verscheidene vereffenaars, die worden benoemd door de algemene vergadering, door tussenkomst van de raad van bestuur die de handelt als vereffeningscomité. Behoudens andersluidende beslissing treden de vereffenaars gezamenlijk op. Daartoe beschikken de vereffenaars over de meest uitgebreide bevoegdheden overeenkomstig artikel 186 en volgende van het Wetboek van vennootschappen, behoudens de

18

beperkingen opgelegd door de algemene vergadering. De algemene vergadering bepaalt de vergoedingen van de vereffenaars.

**Artikel 42 – Uitkering**

Na aanzuivering van alle schulden, lasten en kosten van aanleggen, of het aanleggen van de nodige reserves ter betaling van deze schulden, lasten en kosten, zal het netto-actief aangewend worden voor de terugbetaling, in geld of in natura, van het volstortte en nog niet terugbetaalde bedrag van de aandelen. Het eventuele positieve saldo wordt in gelijke delen verdeeld onder de aandelen.

## TITEL VII. Algemene bepalingen

**Artikel 43 – Keuze van woonplaats**

Iedere bestuurder, directeur en vereffenaars die gedomicilieerd is in het buitenland doet keuze van woonplaats voor de duur van de uitoefening van zijn opdracht op de maatschappelijke zetel, waar alle betekeningen en een kennisgevingen betreffende de zaken van de vennootschap en de aansprakelijkheid voor zijn bestuur hem rechtsgeldig op zijn naam kunnen worden gedaan, behoudens de kennisgevingen die overeenkomstig deze statuten geschieden.

De houders van aandelen op naam zijn gehouden om aan de vennootschap iedere wijziging van woonplaats mee te delen. Bij gebreke daarvan worden zij geacht keuze van woonplaats te hebben gedaan op hun voorgaande domicilie.

**Artikel 44 – Wettelijke bepalingen vermeld in deze statuten**

De statutaire bepalingen die beperkt zijn tot een letterlijke herhaling van de wettelijke bepalingen van het Wetboek van vennootschappen worden in de statuten ten informatieve titel vermeld.

**Artikel 45 – Aandeelhoudersovereenkomsten**

Alle of sommige van de aandeelhouders van de vennootschap mogen overeenkomsten sluiten in verband met hun aandeelhouderschap.

VOOR GELIJKVORMIGE COÖRDINATIE

Sara BERQUIN
Krachtens volmacht
Notarieel medewerkster "Berquin Notarissen"

D. 209-2091 / R. 43.369 / ES 07.08.2009 / SB / w

"EASDAQ"

**Limited Liability Company**
**("naamloze vennootschap")**

**At 3000 Leuven, Lei 19 box 11**
**(BTW BE) 0455.240.893 Company Register (Leuven)**

---

**COORDINATED TEXT OF THE ARTICLES OF ASSOCIATION**
**following the amendment of the articles of 24 June 2010**

*- Convenience translation of official Dutch text -*

## TITLE I. NAME - REGISTERED OFFICE - PURPOSE - DURATION

**Article 1    Corporate Form and Name**

The Company is incorporated as a "naamloze vennootschap " under the name of "EASDAQ".

This name shall always be preceded or followed by the Dutch words "naamloze vennootschap" or the abbreviation "NV".

**Article 2    Registered Office**

The registered office of the Company is located in 3000 Leuven, Lei 19 box 11. The Board of Directors may move the registered office of the Company elsewhere in Belgium if the applicable legislation on the use of languages is respected. Such decisions shall not require any amendment to the Articles of Association.

The Board of Directors shall publish any transfer of the registered office in the Annexes to the Belgian Official Gazette.

The Board of Directors shall also be authorised to set up administrative offices, places of business, branches and subsidiaries both in Belgium and abroad.

**Article 3    Purpose**

The purpose of the Company shall be, both in Belgium and abroad, in its own name or in the name of third parties, for its own account or for the account of third parties, to organise, manage, control and supervise a pan-European regulated stock market, as well as all operational, organisational and commercial aspects relating to the development, marketing and operating of this market and, with respect to the members, the admission of financial instruments to trading on the market, the operating of a technical platform made available to the Company, without the Company itself engaging in transactions on financial instruments admitted to trading on the market.

The Company may carry out all industrial, commercial, and financial transactions as well as transactions involving real and personal property, both in Belgium and abroad, which directly or indirectly extend or promote the business of the Company. The Company may acquire any real and personal property, irrespective of whether it is directly or indirectly connected with the purpose of the Company.

The Company may, in any manner whatsoever, take an interest in, co-operate or merge with any association, business, enterprise or Company having an identical, similar or related purpose or which are susceptible to benefit the business of the Company or facilitate the sale of its products or services.

**Article 4    Duration**

The Company shall be incorporated for an unlimited duration.

## TITLE II. CAPITAL

**Article 5    Subscribed Capital**

The subscribed capital amounts to EUR [•].

It is represented by [•] shares, without par value, each share representing 1/[•]th of the share capital.

## Article 6    Change of the Subscribed Capital

The Shareholders, acting in accordance with the provisions applicable to the amendment to the Articles of Association, may decide to increase or lower the subscribed capital.

Without prejudice to the shareholders meeting's right to limit or cancel the pre-emption right in accordance with the Company Code, shares subscribed for in cash must first be offered to the existing shareholders in proportion to the amount of the capital represented by their shares during a period of at least fifteen (15) days from the opening day of the subscription period. The shareholders' meeting shall fix the subscription price and the time limit for exercising this preferential subscription right.

The Shareholders shall however not be entitled to limit or cancel the pre-emption right of Knight, except for shares or securities convertible into shares to be issued : (i) in respect of employee share option schemes; (ii) in respect of employee incentive plans, (iii) upon the exercise of the warrants issued on or about 24 June 2010 or (iv) in return for non-cash consideration.

If the Shareholders Meeting decides to request payment of an issue premium, the issue premium shall be booked as an inalienable reserve fund which may only be decreased or removed upon a decision of the Shareholders taken in accordance with the provisions applicable to the amendment of the Articles of Association. The issue premium, like the capital, shall constitute a guarantee for third parties.

The Board of Directors shall be authorised to increase the subscribed capital once or several times by an amount not exceeding fifty million euros (50,000,000 EURO), in accordance with the conditions set by the Board. In case the increase is done through a contribution of cash, the Board will have to take into account the preferential subscription rights of the existing shareholders.

The capital increase through the use of the authorised capital may also be done through a contribution in kind. The Board of Directors may however not use the authorised capital for a capital increase through contribution in kind which is reserved for a shareholder which holds securities that represent more than 10% of the voting rights.

The increase of capital through the use of the authorised capital may also be done through the incorporation of reserves, with or without the issuance of new shares.

The authorised capital can also be used by the Board of Directors, within the aforementioned limits, to issue warrants or convertible bonds.

In case the Board of Directors decides to increase the capital through the use of the authorised capital, the issue premiums, if any, shall be attributed to an inalienable reserve fund "Issue Premiums". This reserve fund will, like the subscribed capital, constitute a guarantee for third parties. Apart from the possibility of incorporation of reserves by the Board of Directors as provided above, this reserve fund may only be decreased or removed upon a decision of the Shareholders taken in accordance with Article 612 of the Belgian Company Code.

The Board of Directors may exercise the powers resulting from the authorised capital during a period of five years following the publication of the authorisation in the annexes to the Belgian Official Gazette.

This authorisation granted to the Board of Directors may be renewed in accordance with the applicable legal provisions. When the Board of Directors proposes a renewal of this authorisation, it will draft a motivated report indicating under which circumstances it intends to make use of this authorisation capital and which objectives it thereby seeks to fulfil.

The Board of Directors shall be authorised to cancel or restrict the preferential subscription rights of the existing shareholders, in which case it will provide for a justification in a detailed report. A report will also be drafted by the statutory auditor ("commissaris"). In case of cancellation of or restriction to the preferential subscription rights, the Board may decide that, for the attribution of the new shares, preference will be given to the existing shareholders, in which case the subscription period will be 10 days.

The Board of Directors shall not be entitled to limit or cancel the pre-emption right of Knight, except for shares or securities convertible into shares to be issued : (i) in respect of employee share option schemes; (ii) in respect of employee incentive plans; (iii) upon the exercise of the warrants issued on 7 August 2009 and on or about 24 June 2010 or (iv) in return for non-cash consideration.

The Board of Directors shall be authorised to cancel or restrict the preferential subscription rights, for the benefit of one or more defined persons whether or not employees of the Company or one of its subsidiaries. In that case, the conditions set forth in the Belgian Company Code must be respected.

**Article 7**    **Calls on Shares**

Without prejudice to the provisions of Article 18, calls on shares shall be decided by the Board of Directors at its discretion.

If a shareholder fails to effect payments requested on its shares within the time limit prescribed by the Board of Directors, the exercise of the rights attached to the shares shall be automatically suspended.

**Article 8**    **Form of Shares**

The shares shall be and shall remain in registered form.

**Article 9**    **Transfer of Shares**

Some of the shareholders of the Company have entered into a shareholders' agreement with the Company on or about 24 June 2010 which includes certain provisions dealing with the transfer of the shares of the Company. Prior to any transfer of shares, the Board of Directors shall confirm that these provisions have been complied with. For the avoidance of doubt, this confirmation is only a technical requirement and shall not be construed as making such transfer of shares subject to a prior board approval within the meaning of article 510 of the Belgian Company Code.

**Article 10**    **Exercise of the Rights Attached to the Shares**

The shares are indivisible for the purposes of the Company. If a share is owned by several persons, or if the rights attached to a share are divided among several persons, the Board of Directors shall have the right to suspend the exercise of the rights attached thereto until one person has been designated as the owner of the share for the purposes of the Company.

**Article 11**    **Successors**

Unless explicitly set out otherwise in these Articles of Association, the rights and obligations attached to the shares shall remain with the transferee of the share upon each transfer.

**Article 12**    **Acquisition by the Company of its own Shares**

The Company may acquire its own shares in accordance with Article 620 and following of the Company Code.

**Article 13**    **Bonds**

The Company may at all times, upon decision of the Board of Directors, issue bonds.

However, the issue of convertible bonds or warrants, is subject to a decision of the shareholders' meeting deliberating in accordance with the provisions for an amendment of the Articles of Association, or by the Board of Directors within the limits of the authorised capital.

## TITLE III.  MANAGEMENT AND SUPERVISION

**Article 14**    **Composition of the Board of Directors**

The Company is managed by a Board of Directors, which shall be composed of at least three members who need not be shareholders.

Up to five directors will be elected upon nomination by Citadel Tactical Investments LLC (or, if applicable, any Affiliate to which it transfers shares) ("Citadel") whilst Citadel has a Citadel Relevant Shareholding (as defined below) of higher than 20%. Up to three directors will be elected upon nomination by Citadel whilst Citadel has a Citadel Relevant Shareholding of higher than 10%. Up to two directors will be elected upon nomination by Citadel whilst Citadel has a Citadel Relevant Shareholding of higher than 8%. One director will be elected upon nomination by Citadel whilst Citadel has a Citadel Relevant Shareholding of higher than 3.5%. The directors elected upon nomination by Citadel shall be referred to as "Citadel Directors". If the Citadel Relevant Shareholding of Citadel falls below any of the above percentage thresholds and subsequently exceeds such threshold again, then the rights attached to such threshold shall apply again. Citadel shall be entitled to designate that one or more of the Citadel Directors nominated under this clause shall not have any of the special rights enjoyed by a Citadel Director under the Articles of Association.

One director will be elected upon nomination by Knight Capital Group, Inc. (or, if applicable, any Affiliate to which it transfers shares) ("Knight") whilst Knight has a Knight Relevant Shareholding (as defined below) of at least 3.75%. In addition, whilst Knight

has a Knight Relevant Shareholding of at least 3.75%, Knight will also have the right to nominate one additional representative to attend the meetings of the Board of Directors but who shall not be entitled to vote. If the Knight Relevant Shareholding falls below 3.75% and subsequently reaches or exceeds 3.75% again, then it shall again have the relevant rights. The director elected upon nomination by Knight shall be referred to as the "Knight Director".

Up to two directors will be elected upon nomination by Börse Berlin AG ("BSX") whilst BSX has a BSX Relevant Shareholding (as defined below) of higher than 8%. One director will be elected upon nomination by BSX whilst BSX has a BSX Relevant Shareholding of higher than 3.5%. If the BSX Relevant Shareholding falls below any of the above percentage thresholds and subsequently exceeds such threshold again, then the rights attached to such threshold shall apply again.

One director will be elected upon nomination by Dr. Jos B. Peeters ("Dr. Peeters") whilst Dr. Peeters has a Dr. Peeters Relevant Shareholding (as defined below) of higher than 3.5%. If the Dr. Peeters Relevant Shareholding falls below 3.5% and subsequently exceeds 3.5% again, then he shall again have the relevant rights.

For the purposes of this Article 14:

- "Citadel Relevant Shareholding" means the shareholding (i.e., the percentage holding of shares of a shareholder) of Citadel and/or its Affiliates as calculated following application of the formula: (A / B) x 100;
  - o where A is the number of shares held by Citadel and its Affiliates from time to time;
  - o B is the aggregate number of shares in issue from time to time;

- "Knight Relevant Shareholding" means the shareholding (i.e., the percentage holding of shares of a shareholder) of Knight and/or its Affiliates as calculated following application of the formula: (A / B) x 100;
  - o where A is the number of shares held by Knight and its Affiliates from time to time;
  - o B is the aggregate number of shares in issue from time to time;

- "BSX Relevant Shareholding" means the shareholding (i.e., the percentage holding of shares of a shareholder) of BSX and/or its Affiliates as calculated following application of the formula: (A / (B+C+D)) x 100;
  - o where A is the number of shares held by BSX or its Affiliates from time to time;
  - o B is the number of shares in issue on or about 24 June 2010 after the shareholders meeting of that day,

  - o C is the number of shares issued by the Company on the exercise of any warrants to subscribe or securities convertible into, or rights to subscribe, which in each case were on exercise held by BSX or its Affiliates; and
  - o D is the number of shares (but not, for the avoidance of doubt, warrants to subscribe, securities convertible into, or rights to subscribe shares) issued by the Company under an Eligible Issue (as defined below), or upon exercise or conversion of warrants to subscribe, securities convertible into, or rights to subscribe shares (in the case of warrants to subscribe, securities convertible into, or rights to subscribe shares issued prior to 20 July 2012, only if BSX and its Affiliates were eligible to participate in such issue under its terms);

"Dr. Peeters Relevant Shareholding" means the shareholding (i.e., the percentage holding of shares of a shareholder) of Dr. Peeters and/or his Affiliates as calculated following application of the formula:(A / (B+C+D)) x 100;
  - o where A is the number of shares held by Dr. Peeters and his Affiliates from time to time;
  - o B is the number of shares in issue on or about 24 June 2010 after the shareholders meeting of that day (excluding the shares issued on or about 24 June 2010);
  - o C is the number of shares issued by the Company on the exercise of any warrants to subscribe or securities convertible into, or rights to subscribe, which in each case were on exercise held by Dr. Peeters or his Affiliates; and
  - o D is the number of shares (but not, for the avoidance of doubt, warrants to subscribe, securities convertible into, or rights to subscribe shares) issued by the Company under an Eligible Issue, or upon exercise or conversion of warrants to subscribe, securities convertible into, or rights to subscribe Shares (in the case of warrants to subscribe, securities convertible into, or rights to subscribe shares issued prior to 20 July 2012, only if Dr. Peeters and his Affiliates were eligible to participate in such issue under its terms);

"Affiliate":
  - o (in relation to BSX and Dr. Peeters) has the meaning given in Article 11 of the Belgian Company Code and, including, in the case of Dr. Peeters, his heirs; and

o (in relation to Citadel and Knight) means any other person that is, directly or indirectly, Controlling, Controlled by or under common Control with, Citadel, Knight (as applicable)

- "Control":

  o in relation to Citadel and Knight and any relevant person, means:

    ▪ the ownership or control (directly or indirectly) of shares or other interests in that person carrying more than fifty per cent. of the votes exercisable at general meetings of that person on all, or substantially all, matters; or

    ▪ the right to appoint or remove directors (or equivalent officers) of that person having a majority of the voting rights exercisable at meetings of the board of directors (or equivalent officers) of that person on all, or substantially all, matters; or

    ▪ the ability of a person to ensure that the activities, business and affairs of that person are conducted in accordance with the wishes of that person to the exclusion of any other person whether as a result of a delegation of authority, contractual arrangement or otherwise,

    and any derivative term or reference to "Controlling" shall be construed accordingly; and

- "Eligible Issue" means any issue of shares or securities convertible into shares (or warrants or rights to subscribe for shares) by the Company in which BSX or its Affiliates (for the purposes of BSX Relevant Shareholding) and Dr. Peeters or his Affiliates (for the purposes of the definition of Dr. Peeters Relevant Shareholding) were eligible to participate under the terms of the issue, and any other issue of shares or securities convertible into shares (or warrants or rights to subscribe for shares) (without double counting) which occurs after 20 July 2012 whether or not BSX or Dr. Peeters or their respective Affiliates as the case may be, were eligible to participate in that issue under its terms.

-

The duration of the Directors' mandate cannot exceed six (6) years. However, a director whose mandate has expired will remain in function as long as the Shareholders Meeting has not decided on the appointment of a successor.

The outgoing directors shall be eligible for re-election.

**Article 15    Vacancy Before Term**

Each vacancy caused by death, resignation or termination of the mandate of a member of the Board of Directors appointed upon nomination by a shareholder in accordance with Article 14 (the "Relevant Shareholder") shall be filled by the election of a new director upon nomination by the Relevant Shareholder (provided such shareholder continues to enjoy such right at such time).

If the Relevant Shareholder indicates that it does not wish to nominate a candidate or a sufficient number of candidates, the mandates will remain vacant and will be filled only if candidates for the appointment are nominated by the Relevant Shareholder.

For the avoidance of doubt, it is hereby clarified that the absence of nomination of a candidate in accordance with the preceding paragraphs does not imply a waiver of the right to nominate candidates for an appointment, and the Relevant Shareholder will have the right to request that a new meeting of shareholders of the Company is convened to elect candidates nominated for appointment by it.

If a Relevant Shareholder elects not to nominate candidates for appointment, the special rights exercised by such nominees will not apply until such nomination is again made.

**Article 16    Chairmanship**

The chairman of the Board of Directors shall be a director nominated by Citadel. If the chairman is also a Citadel Director he shall have a casting vote in the event of a tied vote. In the event that the Citadel Relevant Shareholding falls below 20%, the Citadel Directors will no longer be entitled to the rights set out in this Article 16. The Citadel Directors will again be entitled to such rights set out in this Article 16 when the Citadel Relevant Shareholding subsequently increases to 20% or above.

**Article 17    Meetings of the Board of Directors**

Board meetings shall be convened by the chairman or any two directors whenever it is required by the interests of the Company. Board meetings shall be held at least quarterly.

Notices of the meeting shall set out the place, date, time and agenda of the meeting. They shall be sent by letter, facsimile, e-mail or any other written form at least three business days prior to the meeting. A meeting may be called by shorter notice in the case of an urgent matter, provided reasonable advance notice is given to the directors.

In the absence of the chairman, a director chosen among the Citadel Directors (or, if there be none present, one of the other directors) shall chair the meeting.

The validity of the notices of the meeting may not be challenged if all directors are present or validly represented.

### Article 18    Proceedings

For a meeting of the Board of Directors to be quorate, in addition to the requirements of Belgian company law, a minimum of one Citadel Director and the Knight Director must be present, in person, by telephone or by proxy. However, in the event that: (i) the Citadel Relevant Shareholding falls below 20%, a meeting of the Board of Directors can be quorate (subject to the requirements of Belgian company law) even if no Citadel Director is present; and (ii) the Knight Relevant Shareholding falls below 3.75%, a meeting of the Board of Directors can be quorate (subject to the requirements of Belgian company law) even if no Knight Director is present. The presence of a minimum of one Citadel Director will be required again if the Citadel Relevant Shareholding subsequently increases to 20% or above and the presence of the Knight Director will be required again if the Knight Relevant Shareholding subsequently increases to 3.75% or above. If no Citadel Director has been appointed and/or the Knight Director has not been appointed, the presence of a Citadel Director and/or the Knight Director (as applicable) shall not be required for a Board meeting to be quorate. The requirement for the Knight Director to be present shall be disregarded in respect of any agenda item if the Knight Director is not present at two consecutives meetings of the Board of Directors provided the Knight Director has been given due notice of such meeting and the relevant agenda item.

In exceptional cases duly justified by emergency and corporate interest, the decisions of the Board of Directors may be taken by written and unanimous consent of all directors. This procedure may however not be used to prepare the annual accounts or decide to increase the capital within the limits of the authorized capital.

The Board of Directors may only deliberate on items not listed in the agenda if all the directors are present or validly represented at the meeting and unanimously decide to deliberate on these items.

Any director may authorise another director by letter, facsimile, e-mail or any other written means to represent him at a Board meeting. A director may represent more than one of his colleagues.

The directors shall comply with the provisions relating to conflicts of interests referred to in the Company Code.

Decisions are taken at a simple majority of the votes. However, subject to Citadel having a Citadel Relevant Shareholding (as defined in Article 14) of at least 20%, none of the actions listed below shall be taken by the Board of Directors and no resolution in respect of any such actions shall be proposed to the shareholders, without the prior consent of at least one Citadel Director, meaning that decisions in respect of the below matters (if capable of being taken by the Board of Directors), respectively proposals in respect of the below matters (if decisions in such matters are not capable of being taken by the Board of Directors) must be approved by a simple majority of the Directors, including at least one Citadel Director (and the below matters will not be capable of further delegation by the Board of Directors). Citadel may nominate one (or more) Citadel Director(s) to exercise such consent right, in which case only the nominated Citadel Director(s) may exercise such right. These actions are :

- the calling of any unpaid capital on the shares of the Company issued to Citadel or exercising any rights in respect of such uncalled amount for such shares;

- the proposal to amend the Articles of Association of the Company (including any proposal which varies the Citadel's rights thereunder) or any of its subsidiaries, within the meaning of Article 6 of the Company Code (the Company and any such subsidiary being hereinafter referred to as the "Easdaq Group");

- the issue or allotment of any share capital or any other security by any member of the Easdaq Group or the creation, grant or issue of any option, warrant or right to subscribe or acquire, or convert any security into, any share capital of any member of the Easdaq Group, or any proposal to do any of the above;

- any decision or proposal to declare or pay any dividend or to declare or make any other distribution by any member of the Easdaq Group;

- any material change in the nature or scope of the business of the Company;

- the raising of any indebtedness by the Company in excess of €25,000 (for the avoidance of doubt, excluding inter-company indebtedness between members of the Easdaq Group) or incurring trade credit in excess of €100,000 per occurrence;

- the establishment or acquisition of any affiliate by the Company;

- the granting, or permitting the creation, of any security or other encumbrance over any part of the undertaking, property or assets of, the Company with a fair market value exceeding €10,000;

- the passing of any resolution or proposal for the winding-up of any member of the Easdaq Group or any application for the appointment of a receiver or an administrator over the assets of the Company;

- the giving of any guarantee or indemnity by the Company which may lead to a liability of more than €10,000 (except in respect of a liability of a member of the Easdaq Group);

- the commencement or settlement of any legal or arbitration proceedings involving an amount exceeding €120,000 (other than routine debt collection);

- the entering into of any contract or commitment which is outside the ordinary course of business or would involve a total outlay by the Company over the term of the contract in excess of €250,000 or which is otherwise material to the business of the Company;

- the making of any loan or the granting of any credit by the Company other than in the ordinary course of business (and except in respect of a liability of a member of the Easdaq Group);

- the proposal to reduce the share capital or any redemption, purchase or other acquisition by any member of the Easdaq Group of any shares or securities of that member of the Easdaq Group (whether out of capital or otherwise);

- the proposal to sub-divide, consolidate or re-denominate the share capital of any member of the Easdaq Group and all decisions or proposals to merge any member of the Easdaq Group into or with other entities, effect a full or partial split of any member of the Easdaq Group or any assimilated transactions within the meaning of Article 676 of the Company Code;

- any change in the name of any member of the Easdaq Group, or any proposal to that effect;

- any change to the registered office or other offices of any member of the Easdaq Group;

- the acquisition, sale or transfer outside of the Easdaq Group of : (i) cash or cash equivalent or any other form of asset exceeding €100,000 per transfer (and aggregating connected transfers); or (ii) any interest of the Company in Equiduct Systems Limited (hereinafter referred to as "Equiduct"), except if already specifically approved under any sub-paragraph of this Article 18;

- agreeing the annual budget or business plan (such business plan to be in accordance with clause 9.8 of the investment agreement between Citadel, BSX, Dr. Peeters and the Company dated 20 July 2009) of the Easdaq Group;

- the repurchase or transfer of any interest in equity or debt or any proposal to that effect;

- the giving of financial assistance (as that expression is defined in Article 629 of the Company Code) by the Company for the acquisition of any shares of the Company;

- the appointment, the setting of the terms and conditions of employment (or any change thereto) or the transfer or discharge of any senior employee of the Company whose base salary (excluding any commissions or bonuses) exceeds €100,000 per annum;

- the entering into, alteration or cancellation of any agreement or arrangement between a member of the Easdaq Group on the one side and Citadel, BSX, Knight, Dr. Peeters (or an Affiliate or heirs of Citadel, BSX, Knight or Dr. Peeters) and/or any other direct or indirect shareholder of the Company holding an interest in 1% or more of the issued shares of the Company as a whole on the other;

- any other transaction or arrangement by a member of the Easdaq Group for the benefit of Citadel, BSX, Knight, Dr. Peeters (or an affiliate or heir of Citadel, BSX, Knight or Dr. Peeters) and/or any other direct or indirect shareholder of the Company holding an interest in 1% or more of the issued shares of the Company as a whole;

- the registration of any intellectual property and the licensing of such intellectual property by the Company outside the ordinary course of business;

- agreeing pricing and other terms with participants (i.e., either (i) a person admitted to Börse Berlin, if that person has entered into a participant agreement with BSX (or, as the case may be, another party) to use an exchange which is supported by the Easdaq Group or (ii) a participant on one or more of the stock exchanges or on any trading platforms to which the Company provides services) and customers;

- agreeing any undertakings or terms with any relevant regulatory authority;

- the appointment and removal of any directors of Equiduct or other members of the Easdaq Group other than in accordance with Article 14;

- setting or amending the accounting policies of the Company; and

- the exercise of shareholder rights by a member of the Easdaq Group in respect of any other member of the Easdaq Group.

In the event that the Citadel Relevant Shareholding falls below 20%, any and all of the foregoing decisions and proposals can be taken at a simple majority of the votes. The Citadel Directors will again be entitled to such rights as set out in this Article 18 paragraph 6 if the Citadel Relevant Shareholding subsequently increases to 20% or above.

In addition, subject to Knight having a Knight Relevant Shareholding (as defined in Article 14) of at least 3.75%, none of the actions listed below shall be taken by the Board of Directors and no resolution in respect of any such actions shall be proposed to the shareholders, without the prior consent of the Knight Director, meaning that decisions in respect of the below matters (if capable of being taken by the Board of Directors), respectively proposals in respect of the below matters (if decisions in such matters are not capable of being taken by the Board of Directors) must be approved by a simple majority of the Directors, including the Knight Director (and the below matters will not be capable of further delegation by the Board of Directors). These actions are :

- the proposal to amend the Articles of Association of the Company which varies Knight's rights thereunder;

- until 24 June 2012, any material change in the nature of the business of the Easdaq Group;

- until 24 June 2012, agreeing the annual budget and business plan of the Easdaq Group or any material changes to or deviations from the annual budget and business plan. Where applicable, if the Knight Director does not approve the annual budget and business plan or material changes or deviations, the previous year's annual budget shall apply to the then current year with respect to that line item (with up to 20% increases) and the previous year's business plan shall continue to apply;

- (the preceding two paragraphs shall be construed to permit the development of new products by the Easdaq Group or acquisitions of any person, asset or business provided such is funded by internally generated positive cashflow, or amounts other than consideration provided by Knight for the subscription of shares, or at no material cost or with the consent of the Knight Director which shall not be unreasonably withheld or delayed);

- until 24 June 2012, any change in the regulatory status of any member of the Easdaq Group, which has a direct effect upon the Equiduct market segment as operated by BSX, including any amendments to or renewals of the arrangements with BSX as set out in the master agreement between BSX, Equiduct and the Company dated 7 August 2009 and the outsourcing agreement between BSX, Equiduct and the Company dated 7 August 2009;

- until 24 June 2012, the voting of any resolution or proposal for the winding-up of, or any application for the appointment of a receiver or an administrator over any member of the Easdaq Group; and

- any transactions of a member of the Easdaq Group with Citadel, BSX, Dr Peeters or any other direct or indirect shareholder holding an interest of 1% or more of the issued shares of the Company as a whole and any amendment to any existing such transaction (in either case other than transactions or amendments on arms length terms).

In the event that the Knight Relevant Shareholding falls below 3.75%, any and all of the foregoing decisions and proposals can be taken at a simple majority of the votes. The Knight Director will again be entitled to such rights as set out in this Article 18 paragraph 8 if the Knight Relevant Shareholding subsequently increases to 3.75% or above.

In addition, subject to Knight exercising the warrant it was granted on or about 24 June 2010 and having a Knight Relevant Shareholding (as defined in Article 14) of at least 10%, none of the actions listed below shall be taken by the Board of Directors and no resolution in respect of any such actions shall be proposed to the shareholders, without the prior consent of the Knight Director, meaning that decisions in respect of the below matters (if capable of being taken by the Board of Directors), respectively proposals in respect of the below matters (if decisions in such matters are not capable of being taken by the Board of Directors) must be approved by a simple majority of the Directors, including the Knight Director (and the below matters will not be capable of further delegation by the Board of Directors). These actions are:

- approving the establishment and terms of any employee share option or incentive scheme or plan that involves an allocation or grant of options, awards or interests over a number of shares which may exceed 7% of the Company's shares;

- between 24 June 2012 and 24 June 2014, agreeing the annual business plan and budget of the Easdaq Group or any material changes to or deviations from the annual business plan and budget to the extent that the business plan or budget or material changes or deviations materially deviate from the business position of the Easdaq Group as at 24 June 2012. Where applicable, if the Knight Director does not approve the annual budget and business plan or any material changes or deviations the previous year's annual budget shall apply to the current year with respect to that line item (with up to 20% increase) and the previous year's business plan shall continue to apply;

(the preceding paragraph shall be construed to permit the development of new products by the Easdaq Group or acquisitions of any person, asset or business provided such is funded by internally generated positive cashflow, or amounts other than consideration provided by Knight for the subscription of shares, or at no material cost or with the consent of the Knight Director which shall not be unreasonably withheld or delayed); and

- subject to Knight and its Affiliates having traded at least 10% of the average daily volume of the Easdaq Trading System in the preceding three months, approving any change in the regulatory status of any member of the Easdaq Group, which has a direct effect upon the Equiduct market segment as operated by BSX, including any amendments to or renewals of the arrangements with BSX as set out in the master agreement between BSX, Equiduct and the Company dated 7 August 2009 and the outsourcing agreement between BSX, Equiduct and the Company dated 7 August 2009.

Furthermore, subject to Knight exercising the warrant it was granted on or about 24 June 2010 and having a Knight Relevant Shareholding (as defined in Article 14) of at least 10%, Knight shall be consulted at least 10 business days in advance over the following matters in respect of each member of the Easdaq Group:

- the annual business plan and budget of the Easdaq Group;

- the acquisition or sale of assets not provided for in the annual business plan of the Easdaq Group and with a value greater than €500,000 per asset;

- the appointment, dismissal and determination of the terms of employment of any senior employee of the Company whose base salary (excluding any commissions or bonuses) exceeds €100,000 per annum;

- the appointment and removal of any directors of a member of the Easdaq Group other than in accordance with Article 14.

If the Knight Relevant Shareholding (as defined in Article 14) falls below 10% and subsequently increases to 10% or above, then Knight's rights under Article 18 paragraphs 10 and 11 shall apply again.

**Article 19    Minutes**

The decisions of the Board of Directors are recorded in minutes signed by the chairman and/or the secretary of the Board, as well as by those directors who wish to do so. Minutes are kept in a special register. Proxies are attached to the minutes.

Copies or extracts of said minutes required for judicial or other purposes shall be signed by two directors or by a person entrusted with daily management powers. This power may be delegated to a designated person.

**Article 20    Powers of the Board of Directors**

The Board of Directors shall have the broadest powers to do whatever is necessary or useful to achieve the corporate purpose.

The Board shall not have the power to do what is expressly reserved to the Shareholders Meeting, by law or by the Articles of Association.

**Article 21    Remuneration**

The office of director shall be non-remunerative, unless the Shareholders Meeting decides otherwise.

**Article 22    Representation**

The Company shall be represented with respect to all acts, including court proceedings, by two directors acting jointly.

Within the limits of the daily management, the Company shall be validly represented with respect to all acts, including those with respect to court proceedings, by the person(s) entrusted with the daily management, except if the Board of Directors has appointed more than one person with the daily management, in which case the Company shall be validly represented with respect to all acts, including those with respect to court proceedings, by two such persons in charge of the daily management acting each time jointly. These persons shall not be obliged to offer proof to third parties of the existence of a prior decision of the Board of Directors.

The Company is also validly represented by special proxy holders within the limits of their powers.

**Article 23    Daily Management and Board Committees**

**§ 1.    Daily Management**

The Board of Directors may delegate the daily management of the Company to one or several persons, who need not be directors. Such person(s) shall be appointed upon nomination by the Citadel Directors.

In the event that the Citadel Relevant Shareholding falls below 20%, such right of nomination under this Article 23, § 1 of the Citadel Directors shall not apply. The Citadel Directors will again be entitled to such right of nomination if the Citadel Relevant Shareholding subsequently increases to 20% or above.

If the person in charge of the daily management of the Company is at the same time a director of the Company, he/she will have the title of managing director.

In case of delegation of the daily management, the Board of Directors determines the remuneration attached to this position.

Any person entrusted with the daily management may delegate his powers for particular or specified purposes to a person, who does not need to be a shareholder or director.

**§ 2.    Executive Committee**

In accordance with Article 524bis of the Company Code, the Board of Directors can delegate its powers to an Executive Committee. Such delegation of powers is not permitted for defining and setting out the Company's strategy, or any other power that is, in accordance with the Company Code, solely reserved to the Board of Directors.

The terms and conditions for the appointment of the members of the Executive Committee, their resignation, their remuneration, the term of their appointment and the working procedures of the Executive Committee are decided by the Board of Directors.

A member of the Executive Committee who, directly or indirectly, has a conflict of interest with a decision or action that falls within the powers of the Executive Committee has to notify the other members of the Committee before the Committee takes such decision or action.

Additionally, the procedures of the Executive Committee must comply with the regulations of Articles 524bis and ter of the Company Code.

**§ 3.    Special Board Committees**

Subject to Article 18, the Board may establish executive, nomination, remuneration, audit and such other committees as it may determine with such terms of reference as it may determine. Each committee shall comprise at least one Citadel Director and the Knight Director. For a committee meeting to be quorate, at least two Directors, of which at least one Citadel Director and the Knight Director must be present in person, by telephone or by proxy. If no Citadel Director has been appointed and/or the Knight Director has not been appointed, the presence of a Citadel Director and/or the Knight Director (as applicable) shall not be required for a committee meeting to be quorate. The requirement for the Knight Director to be present shall be disregarded in respect of any agenda item if the Knight Director is not present at two consecutive meetings of the relevant committee provided the Knight Director has been given due notice of such meeting and the relevant agenda item. In such a case, the committee meeting shall be quorate if at least two Directors, of which at least one is a Citadel Director, are present or represented. The committee shall act by decision of a majority of the directors present or represented provided that no decision by the committee shall be valid unless one or more Citadel Directors shall have voted in favour of such decision. In the event that the

Citadel Relevant Shareholding falls below 20%, a committee need not comprise at least one Citadel Director, can be quorate even if no Citadel Director is present or represented and no decisions of any such committee will be subject to a veto right by any Citadel Director (if a member to such committee). In the event that the Knight Relevant Shareholding falls below 3,75%, a committee need not comprise the Knight Director, can be quorate even if the Knight Director is not present or represented and no decisions of any such committee will be subject to a veto right by the Knight Director (if a member to such committee). The Citadel Directors and/or the Knight Director (as applicable) will again be entitled to such rights if (in the case of the Citadel Director) the Citadel Relevant Shareholding subsequently increases to 20% or above and (in the case of the Knight Director), the Knight Relevant Shareholding subsequently increases to 3.75% or above.

### Article 24    Audit

The supervision of the financial situation and annual accounts, and the verification that the transactions set out in the annual accounts comply with the Company Code and the Articles of Association, shall be entrusted to one or several statutory auditors ("commissarissen") appointed by the Shareholders' Meeting from among the members of the Institute of Auditors ("Institut van Bedrijfsrevisoren").

The Shareholders' Meeting shall fix the number of statutory auditors and their remuneration.

The statutory auditors shall be appointed for a period of three years, subject to renewal. A statutory auditor may only be dismissed during his term of office by the Shareholders' Meeting for a valid reason and in accordance with the procedure set forth in Articles 135 and 136 of the Company Code; dismissal under any other circumstances shall entitle him to damages.

In the absence of the appointment of statutory auditors, or in the event that all statutory auditors are prevented from carrying out their duties, the Board of Directors shall immediately convene a Shareholders' Meeting for the purpose of appointing or replacing such auditors.

### Article 25    Duties of the Statutory Auditors

The statutory auditors, jointly or severally, shall have an unlimited right to inspect and audit all transactions of the Company. They may inspect the books, correspondence,

minutes, and in general, all other documents and papers of the Company at the Company's premises.

Every six months, the Board of Directors shall deliver a report summarising the assets and liabilities of the Company to the statutory auditors.

In carrying out their duties, the statutory auditors may, at their own expense, use the assistance of their employees or other persons for whom they are responsible.

## TITLE IV – SHAREHOLDERS' MEETING

### Article 26    Composition and Powers

The Shareholders' Meeting, duly constituted, shall represent all shareholders. The resolutions adopted at the Shareholders' Meeting shall be binding on all shareholders, including those absent or dissenting.

### Article 27    Meetings

The Annual Shareholders' Meeting (AGM) shall be held on the fourth Thursday of June at 10.00 CET. If such date is a legal holiday, the meeting shall be held on the next business day.

An Extraordinary Shareholders' Meeting (EGM) may be convened whenever the interests of the Company so require and must be convened if the shareholders representing one-fifth of the subscribed capital so request.

The Shareholders' Meetings shall be held at the registered office of the Company unless the notice of the meeting provides otherwise.

### Article 28    Notice of Meetings

The Shareholders' Meeting shall be convened by the Board of Directors, by the chairman of the Board of Directors or by the statutory auditor(s).

The notice shall state the place, date, time and agenda of the meeting and shall comply with the form and the notice period prescribed by Article 533 of the Company Code.

Each year, a Shareholders' Meeting must be held with an agenda which includes at least: the discussion of the management report and, if necessary, the report of the

statutory auditor(s), the discussion and adoption of the annual accounts and the allocation of the net profits, the discharge from liability of the director(s) and statutory auditor(s) and, if necessary, the appointment of director(s) and statutory auditors.

The validity of the notice of a meeting cannot be challenged if all shareholders are present or represented at the meeting.

**Article 29    Conditions for Admission**

In order to be admitted to the Shareholders' Meeting, and provided the Board of Directors requests it in the notice, all owners of registered shares must notify the Board of Directors of their intention to attend the Shareholders' Meeting at least four (4) full days in advance.

Bond holders may attend the Shareholders' Meeting if they deposit their bonds within the period and at the place specified by the Board of Directors in the notice. Such period may not exceed four (4) full days prior to the meeting.

**Article 30    Representation**

Any shareholder may designate a proxy holder, who need not be a shareholder, by letter, facsimile, e-mail or any other written instrument to represent him at the Shareholders' Meeting.

In the notice, the Board of Directors may specify the form of such proxies and require their deposit at least four (4) full days prior to the meeting at the location specified in the notice.

**Article 31    Chairmanship of the Shareholders' Meeting**

All Shareholders' Meetings shall be chaired by the chairman of the Board of Directors, or in his absence, by a Managing Director, or failing same, the longest serving director.

**Article 32    Number of Votes - Exercise of Voting Rights**

Each share shall carry the right to one vote. Bond holders may attend the Shareholders' Meeting in an advisory capacity only.

**Article 33    Proceedings**

An attendance list, indicating the shareholders' names and the number of shares held by each shareholder shall be signed by each shareholder or his proxy holder prior to the meeting.

The Shareholders may only discuss matters set out in the agenda, unless all shareholders are present and decide unanimously to discuss other matters.

The directors shall answer the shareholders' questions on the management report or on any other item on the agenda. The statutory auditor(s) shall answer the shareholders' questions on his/their report.

Except as provided by law or by these Articles of Association, all resolutions shall be adopted by the shareholders by a simple majority of the votes cast, irrespective of the number of shares represented at the meeting. Blank and invalid votes shall not be counted in the votes cast.

Notwithstanding the preceding paragraph and without prejudice to the provisions of Article 18 above or, as the case may be, to quorum requirements and/or more stringent majority requirements laid down by law, and subject to Citadel having a Citadel Relevant Shareholding (as defined in Article 14) of at least 20%, the following decisions, when submitted to the shareholders meeting (for the avoidance of doubt, it is specified that this Article 33 does not intend to attribute powers to the shareholders meeting that it does not have under common company law), shall require the consent of Citadel:

- the amendment of the Articles of Association of the Company (including any proposal which varies the Citadel's rights thereunder);

- the issue or allotment of any share capital or any other security by the Company or the creation, grant or issue of any option, warrant or right to subscribe or acquire, or convert any security into, any share capital of the Company;

- the declaration or payment of any dividend or the declaration or making of any other distribution by the Company;

- the winding-up of the Company;

- the reduction of the share capital or any redemption, purchase or other acquisition of any shares or securities of the Company;

- the sub-division, consolidation or redenomination of the share capital of the Company or any merger into or with other entities, full or partial split of the Company or assimilated transactions within the meaning of Article 676 of the Company Code;

- any change in the name of the Company;

- any change to the registered office of the Company;

- the giving of financial assistance (as that expression is defined in Article 629 of the Company Code) by the Company for the acquisition of any shares of the Company;

- the raising of any indebtedness by the Company in excess of €25,000.

If the Citadel Relevant Shareholding (as defined in Article 14) falls below 20% and subsequently increases to 20% or above, then Citadel's rights under Article 33 paragraph 5 shall apply again.

Notwithstanding paragraph 4 above and without prejudice to the provisions of Article 18 above or, as the case may be, to quorum requirements and/or more stringent majority requirements laid down by law, and subject to Knight having a Knight Relevant Shareholding (as defined in Article 14) of at least 3.75%, the following decisions, when submitted to the shareholders meeting (for the avoidance of doubt, it is specified that this Article 33 does not intend to attribute powers to the shareholders meeting that it does not have under common company law), shall require the consent of Knight:

- the amendment of the Articles of Association of the Company which varies Knight's rights thereunder; and

- the winding-up of the Company.

If the Knight Relevant Shareholding (as defined in Article 14) falls below 3.75% and subsequently increases to 3.75% or above, then Knight's rights under Article 33 paragraph 7 shall apply again.

In the case of an appointment of directors and/or auditor, if at the vote no candidate obtains the absolute majority, a new vote shall be organized between the two candidates having obtained the highest number of votes.

Voting shall be by a show of hands or by roll call, unless the Shareholders decide otherwise by a simple majority of the votes cast. Any director may call for the vote to be conducted by roll call. The foregoing does not affect the right of each shareholder to vote by letter, by means of a form containing the following points: (i) identification of the shareholder, (ii) number of votes that he/she can exercise, (ii) for each decision that, pursuant to the agenda, must be taken by the Shareholders: "yes", "no" or "abstention".

**Article 34    Minutes**

The minutes of the Shareholders' Meeting shall be signed by the members of the Committee, as defined in Article 546 of the Company Code, and by any shareholder wishing to do so.

Copies to be produced for legal or other purposes shall be signed by two directors.

**TITLE V - ANNUAL ACCOUNTS - ALLOCATION OF PROFITS**

**Article 35    Annual Accounts**

The financial year shall begin on January 1 and shall end on December 31 of each year.

The Board of Directors shall prepare an inventory and the annual accounts at the end of each financial year. The Board of Directors shall also issue a report justifying its management of the Company. This management report shall include comments on the annual accounts for the purpose of accurately presenting the evolution of the business and the Company's position, as well as all matters listed in Article 96 of the Company Code.

**Article 36    Approval of the Annual Accounts**

The management report and, if applicable, the report of the statutory auditor(s) shall be presented at the annual Shareholders' Meeting at which the Shareholders shall decide upon the approval of the annual accounts.

After approval of the annual accounts at the Annual Shareholders' Meeting, the Shareholders shall take a special vote on the discharge from liability of the directors and, if any, the statutory auditor(s). Such discharge shall be valid only if the balance sheet contains no omissions or false information distorting the real situation of the Company,