UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                            :
In re                                       :        Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*     :        08-13555 (JMP)
                                            :
             Debtors.                       :        (Jointly Administered)
                                            :
-----------------------------------------------------------------x

**DECLARATION OF CHRISTOPHER MOSHER IN SUPPORT
OF MOTION OF LEHMAN BROTHERS HOLDINGS INC.
PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 6004 FOR AUTHORIZATION TO SELL ITS
LIMITED PARTNERSHIP INTEREST IN NEW SILK ROUTE PE ASIA FUND, L.P.**

Pursuant to 28 U.S.C. § 1746, I, Christopher Mosher, declare:

1.  I am over the age of 18 years and make these statements based on my own personal knowledge, my review of the business records of Lehman Brothers Holdings Inc. ("LBHI" and, together with its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors") and/or my consultation with employees of the Debtors and their affiliates. If called to testify, I could testify to the truth of the matters set forth herein.

2.  I submit this declaration in support of the *Motion of Lehman Brothers Holdings Inc. Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 6004 for Authorization to Sell Its Limited Partnership Interest in New Silk Route PE Asia Fund, L.P.* (the "Motion") filed on June 18, 2010 [Docket No. 9682].

3.  I am a Managing Director in LAMCO LLC's ("LAMCO") Private Equity & Principal Investments Group (the "PEPI Group") with responsibility for advising LBHI on its private equity and principal investment assets (including the New Silk Route PE Asia Fund, L.P. (the "Fund")) pursuant to the asset management agreement between LBHI and LAMCO. Specifically, and among other responsibilities, I have senior responsibility

within the PEPI Group for general and limited partnership interests in third-party private equity and hedge funds and certain direct principal investments.  Prior to the formation of LAMCO, I was a Managing Director of LBHI and part of LBHI's PEPI Group with the same responsibilities I now have for LAMCO.  Prior to the commencement of LBHI's chapter 11 case, I was a Managing Director of Lehman Brothers Inc. and Global Head of Corporate Development with responsibility for leading strategic acquisitions.  Prior to that, I was a Vice President in the Investment Banking Division of Goldman, Sachs & Co. focusing on financial institutions.

4. I am familiar with the activities of the PEPI Group, including the various types of asset sale agreements entered into by LBHI as it winds up its estate.

5. The Fund is a first time private equity fund that focuses on investments in India.  It currently has approximately $1.4 billion of assets under management.  LBHI initially became a limited partner and committed to invest in the Fund on April 27, 2007, pursuant to LBHI's Subscription Agreement (the "Subscription Agreement") with New Silk Route PE Associates, L.P. (the "General Partner").  LBHI and the General Partner also entered into that certain Amended and Restated Agreement of Exempt Limited Partnership of the Fund, dated April 27, 2007 (as amended by Amendment No. 1, dated November 13, 2007, Amendment No. 2, dated July 2, 2008, Amendment No. 3, dated December 31, 2008, and Amendment No. 4, dated October 8, 2009, and as further amended or modified from time to time pursuant to its terms, the "Partnership Agreement").

6. LBHI has an interest in the Fund (the "Interest") represented by a commitment to contribute up to $125 million to the capital of the Fund (the "Commitment"), subject to the terms and conditions of the Partnership Agreement. Prior to the

commencement of LBHI's chapter 11 case on September 15, 2008 (the "Commencement Date"), LBHI funded approximately $28 million of its Commitment, leaving the unpaid portion of the Commitment at $97 million (the "Unfunded Commitment") as of the Commencement Date.

7.  Following the Commencement Date, the Fund made a capital call (the "First Postpetition Capital Call") of its investors, for which LBHI was requested to pay approximately $3.7 million on or before October 15, 2008. LBHI did not make any payment in respect of the First Postpetition Capital Call, and, as a result, the Fund sent LBHI a default notice on or about October 24, 2008. Following the First Postpetition Capital Call, LBHI informed the Fund that LBHI desired to sell the Interest as quickly as possible.

8.  The PEPI Group marketed the Interest, including the Unfunded Commitment, to over 40 potential secondary buyers but did not receive any interest. The General Partner also made inquiries on LBHI's behalf. The parties solicited included secondary private equity funds, family office funds, sell-side advisors, and brokers of secondary private equity interests.

9.  On March 25, 2010, the General Partner informed LBHI that Berkeley Investment Ltd. ("Berkeley") was interested in purchasing the Interest. Pursuant to a transfer agreement, dated June 4, 2010 (the "Agreement"), Berkeley agreed to pay $441,226.65 for the Interest, which had a net asset value as of December 31, 2009, of approximately $17.6 million. Berkeley will also assume LBHI's obligations under the Subscription Agreement and the Partnership Agreement, including funding the Unfunded Commitment. Additionally, the General Partner has filed a proof of claim (proof of claim number 11042, the "Claim")

against LBHI in respect of the Unfunded Commitment, which the General Partner will withdraw pursuant to the Agreement.

10. Entering into the Agreement represents a sound business decision. After carefully evaluating the benefits and burdens of LBHI's holding the Interest, I determined that the Interest does not represent value to the Debtors. If LBHI does not enter into the Agreement, it will likely not recover any amount on account of its Interest, and will face a significant claim against its estate, including for funding the Unfunded Commitment. Specifically, a combination of onerous default remedies, ongoing management fees and expenses based on the amount of the full Commitment (which will total approximately $15 million over the remaining life of the Fund), the continued allocation of losses but not gains, withholding of distributions, and the continued accrual of interest will likely offset any remaining value of the Interest.

11. Following the First Postpetition Capital Call, the Fund made four additional capital calls of its limited partners, for which LBHI was requested to fund approximately $43 million in the aggregate. Consequently, LBHI has accrued over $2 million in interest on the First Postpetition Capital Call and the four subsequent capital calls, and interest will continue to accrue as long as LBHI holds the Interest without funding it. Entering the Agreement is a sound exercise of LBHI's business judgment because it will stop the accrual of management fees and interest against LBHI with respect to the Interest and result in an elimination of LBHI's ongoing obligations and any claims related to the $97 million Unfunded Commitment, plus accrued interest, among other potential claims.

12. The decision to pursue a private sale is supported by the fact that LBHI has fully explored potential sales of the Interest, and the General Partner also made

inquiries on LBHI's behalf. The PEPI Group engaged in substantial marketing efforts which did not generate any interest, and a public auction process would needlessly and expensively duplicate these efforts. Consistent with LBHI's fiduciary duty, however, the sale of the Interest remains subject to a higher or better offer, which will ensure that the consideration paid for the Interest maximizes its value for LBHI's estate.

13.     The $441,226.65 in proceeds that LBHI will receive from selling the Interest to Berkeley, coupled with a full release from the Unfunded Commitment and a withdrawal of the Claim, represents fair and reasonable value. Given the dramatic decline in markets worldwide, including in India, and the large Unfunded Commitment, it would be very difficult to sell the Interest to a secondary buyer and any offer it received would be at a steep discount to net asset value. Nonetheless, the Interest was subjected to substantial marketing efforts. The proceeds LBHI will receive from selling the Interest to Berkeley represent greater value than LBHI would receive from keeping the Interest.

14.     The sale of the Interest pursuant to the Agreement is the result of arm's length, good faith negotiations with Berkeley. I am not aware of any conduct by Berkeley in connection with the Agreement that constitutes a lack of good faith, and, to my knowledge, neither Berkeley nor any of its affiliates or insiders is associated with the Debtors in any way.

15. It is therefore my belief that it is in the best interests of LBHI, its estate, and its creditors for LBHI to enter into the Agreement and that the relief requested by the Motion is both appropriate and necessary.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 21st day of June, 2010.

/s/ Christopher Mosher
Christopher Mosher