Hearing Date and Time:  July 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline:  July 6, 2010 at 4:00 p.m. (Prevailing Eastern Time)

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Corinne Ball
Brett Barragate
Richard Engman
Robert Micheletto

Attorneys for Debtor and Debtor in Possession
Lehman Commercial Paper Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re:                                        :   Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., *et al.,*      :   Case No. 08-13555 (JMP)
:
Debtors.                    :   (Jointly Administered)
:
---------------------------------------------------------------x

**NOTICE OF MOTION OF DEBTOR LEHMAN COMMERCIAL PAPER INC.
PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE
<u>FOR AN ORDER ENFORCING THE AUTOMATIC STAY</u>**

**PLEASE TAKE NOTICE** that a hearing on the annexed motion of Lehman Commercial Paper Inc., as debtor and debtor in possession (together, with Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, the "<u>Debtors</u>"), enforcing the automatic stay (the "<u>Motion</u>"), all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "<u>Bankruptcy Court</u>"), on **July 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "<u>Hearing</u>").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), Microsoft Word, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Jones Day, 222 East 41st Street, New York, New York 10017 (Attn: Corinne Ball, Brett Barragate, Richard Engman, and Robert Micheletto) and Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard P. Krasnow, Lori R. Fife, Shai Y. Waisman, and Jacqueline Marcus), attorneys for the Debtor; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis); (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Dennis O'Donnell, and Evan Fleck) and Quinn Emanuel Urquhart Oliver & Hedges, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010 (Attn: Susheel Kirpalani), attorneys for the official committee of unsecured creditors appointed in these cases; and (v) Buchanan Ingersoll & Rooney PC, One Oxford Centre, 301 Grand St., 20th Floor, Pittsburgh, Pennsylvania 15219-1410 (Attn: Donald E. Malecki),

attorneys for Greenbrier Minerals Holdings, LLC, so as to be received no later than **July 6, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: June 22, 2010         Respectfully submitted,
       New York, New York

                                    /s/ Corinne Ball
                                    Corinne Ball
                                    Brett Barragate
                                    Richard Engman
                                    Robert Micheletto

                                    222 East 41st Street
                                    New York, New York  10017
                                    Telephone:  (212) 326-3939
                                    Facsimile:  (212) 755-7306

                                    *Attorneys for Debtor and Debtor in Possession*
                                    *Lehman Commercial Paper Inc.*

Hearing Date and Time: July 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: July 6, 2010 at 4:00 p.m. (Prevailing Eastern Time)

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Corinne Ball
Brett Barragate
Richard Engman
Robert Micheletto


Attorneys for Debtor and Debtor in Possession
Lehman Commercial Paper Inc.


**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                            :
In re:                                      : Chapter 11
                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*    : Case No. 08-13555 (JMP)
                                            :
                    Debtors.                : (Jointly Administered)
                                            :
---------------------------------------------------------------x


**MOTION OF DEBTOR LEHMAN COMMERCIAL PAPER INC.
PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE
FOR AN ORDER ENFORCING THE AUTOMATIC STAY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

      Lehman Commercial Paper Inc. ("LCPI"), as debtor and debtor in possession (together with Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, the "Debtors"), files this motion (the "Motion") pursuant to sections 105(a) and 362 of title 11 of the United States Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"), to enforce the automatic stay against Greenbrier Minerals Holdings, LLC ("Greenbrier"). In support of the Motion, LCPI respectfully states:

**PRELIMINARY STATEMENT**[1]

1.  More than eighteen months after LCPI filed for bankruptcy, during which time LCPI's appointee on Greenbrier's Board of Mangers (the "Board") participated without objection from anyone in numerous Board meetings and voted on Company matters on a routine basis, Greenbrier has asserted for the first time that LCPI's Membership Interests in Greenbrier, including LCPI's right to vote on Company matters, were automatically terminated under Section 18-304 of the Delaware Limited Liability Company Act (the "Delaware LLC Act") as a result of LCPI's bankruptcy filing. The result being, according to Greenbrier, that the Board has not had a proper quorum to vote on Company matters.

2.  Tellingly, Greenbrier asserted this position only after the Board, by majority vote, decided to terminate the CEO and after a break-down of negotiations between Greenbrier and LCPI, in its capacity as the sole secured creditor of Greenbrier Minerals, regarding the potential sale of the Company.

3.  Greenbrier's misguided negotiating tactic not only misinterprets Delaware law and Greenbrier's own operative limited liability company documents but also prevents the Board from taking actions that may become necessary to ensure the safety of Company employees and the proper operation of its coal mines, which could lead to catastrophic results.

4.  It is beyond dispute that where a Delaware limited liability company's operating agreement includes express provisions on a subject, the statutory default provisions of the Delaware LLC Act must give way to the provisions of the agreement in order to give effect to the contracting parties' intent.

---

[1] All capitalized terms used in this Preliminary Statement, but not otherwise defined, shall have the meanings ascribed to them below in the Motion.

5. Here, the Operating Agreement expressly addresses Greenbrier's and a member's rights in the event of a bankruptcy – specifically providing under Section 9.7(a) of the Operating Agreement that Greenbrier may purchase the interests of a debtor-member. Thus, those interests are not automatically terminated upon the member's bankruptcy. Greenbrier has the option to purchase these interests, and if it fails to do so, the debtor-member continues as a member of Greenbrier without the loss of any of its rights. Greenbrier in fact did not purchase (or even attempt to purchase) LCPI's Membership Interests.

6. Because LCPI's Membership Interests and related rights, including the right for LCPI's votes to be counted to permit the Board to conduct Company business, are property of LCPI's bankruptcy estate, Greenbrier's unauthorized acts are violations of LCPI's automatic stay. Fully aware of this fact, Greenbrier continues to deny LCPI of estate property.

7. Pursuant to this Motion, LCPI requests that Greenbrier be directed to comply with the automatic stay by honoring all previously taken and future Board actions as permitted under the Operating Agreement and ceasing any further efforts to deny LCPI of its Membership Interests or any rights relating thereto, including voting rights.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

9. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

LCPI's Chapter 11 Filing

10. On September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries, including LCPI, commenced voluntary cases under chapter 11 of the Bankruptcy Code with this Court. Specifically, LCPI filed its voluntary petition for chapter 11 relief with this Court on October 5, 2008. The Debtors' chapter 11 cases have been consolidated for procedural purposes and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

LCPI and Greenbrier's Prepetition Business Relationship

11. On December 9, 2005, Greenbrier Minerals, LLC ("Greenbrier Minerals," and together with Greenbrier, the "Company") and LCPI entered into that certain Credit Agreement (as further amended, the "Original Credit Agreement"), pursuant to which LCPI provided Greenbrier with an initial credit commitment of $10 million (and ultimately increased to $20.5 million). A copy of the Original Credit Agreement is attached hereto as Exhibit A.

12. On May 1, 2007, Greenbrier Minerals and LCPI entered into that certain Amended and Restated Credit Agreement (as further amended, the "Credit Agreement"), pursuant to which LCPI provided Greenbrier Minerals with an initial credit commitment of $94

million (and ultimately increased to $206 million). A copy of the Credit Agreement is attached hereto as Exhibit B.[2]

13. On March 12, 2008, the members of Greenbrier, including LCPI, entered into an Amended and Restated Operating Agreement (the "Operating Agreement"). A copy of the Operating Agreement is attached hereto as Exhibit C. Pursuant to the Operating Agreement, LCPI was allocated 49,000 Class D Units in Greenbrier and 49% of the voting and sharing ratios of Greenbrier (collectively, the "Membership Interests"). See Operating Agreement at Sch. A. As a result of its Membership Interests, LCPI has the right to appoint one manager to the Board, with such manager having five (5) votes. See Operating Agreement at § 5.2.

LCPI and Greenbrier's Postpetition Relationship

14. For approximately 14 months following the commencement of its chapter 11 case, LCPI continued to exercise its Membership Interests and the rights related thereto without any formal objection from the Board or the Company's counsel, Donald E. Malecki of Buchanan Ingersoll & Rooney PC ("Buchanan Ingersoll"), as to the validity of those interests.

15. In March 2009, LCPI appointed Jack McCarthy as its representative to the Board. None of the members of the Board or the Company's counsel challenged LCPI's right to appoint Mr. McCarthy to serve as a member of the Board. To the contrary, on December 22, 2009, more than one year after LCPI filed for bankruptcy, Mr. McCarthy was designated by the

---

[2] LCPI fully funded the Credit Agreement through Amendment No. 6 (which increased the total credit commitment to $156 million). Greenbrier Minerals owes approximately $180 million under the Credit Agreement.

- 5 -

Board to oversee compensation matters involving certain of the Company's executives. See December 22, 2009 Board minutes attached hereto as Exhibit D.[3]

16. Nor did any of the parties assert that the Board lacked a proper voting quorum to conduct Company business as a result of LCPI's purported loss of the Membership Interests due to its chapter 11 filing. In fact, the Board (including LCPI's Board appointee) conducted numerous acts of official business, including holding meetings of the Board at which Company decisions were made without any objection by any member as to the validity of those acts. See generally Board minutes attached hereto as Exhibit D.[4] The Company's counsel was present at each of these meetings and likewise did not raise an issue as to the validity of the Board's acts on behalf of the Company or LCPI's continued participation on the Board. See Id. The actions taken by the Board were properly memorialized in corporate minutes, which were approved by the Board and entered into the corporate records books. Both the Board and third parties with whom the Company conducted business relied on the validity of these corporate actions. The Board had no warning from the Company or its counsel until late May 2010 that they allegedly believed these actions were invalid.[5]

---

[3] LCPI was unable to obtain executed copies of Board minutes and has attached unexecuted versions of the minutes sent via email to Mr. McCarthy by Clarence Hodge, the Secretary-Treasurer of the Board.

[4] For example, among other things, the Board, with LCPI's Board appointee's participation, voted to (i) approve a release of claims involving one of the Company's contract counterparties; (ii) credit Midland (as defined below) for certain amounts related to commissions from coal shipments; and (iii) pursue a coal sales agreement with another counterparty. See October 13, 2009 and June 16, 2009 Board minutes attached hereto as Exhibit D.

[5] It is unclear whether Greenbrier has contacted third parties subject to business decisions by the Board after October 5, 2008 (the date of LCPI's chapter 11 filing) to advise that the Board did not have authority to act on behalf of the Company.

> LCPI's Issuance of the Notice of Default and The Parties'
> <u>Attempted Negotiation of a Sale and Sharing Agreement</u>

17. On May 20, 2009, LCPI issued a notice of default (the "<u>Notice of Default</u>"), advising Greenbrier Minerals that an "Event of Default" had occurred pursuant to Article VII of the Credit Agreement. A copy of the Notice of Default is attached hereto as <u>Exhibit E</u>. Although Greenbrier Minerals did not cure the default, LCPI did not seek to immediately enforce its remedies under the Credit Agreement or the related loan documents. Instead, LCPI sought to consensually resolve certain outstanding funding issues between the parties under the Credit Agreement.[6]

18. On September 21, 2009, Greenbrier Minerals filed a proof of claim (the "<u>Proof of Claim</u>") against LCPI in this Court, alleging that LCPI's failure to fund in accordance with the terms of the Credit Agreement constituted a breach of its obligations under the Credit Agreement, causing Greenbrier Minerals to suffer damages. A copy of the Proof of Claim is attached hereto as <u>Exhibit F</u>.

19. In October 2009, the parties began negotiating a proposed Joint Sale and Sharing Agreement ("<u>Sharing Agreement</u>"), pursuant to which Greenbrier Minerals would potentially be sold. Pursuant to the proposed Sharing Agreement, the parties contemplated a potential joint sale of Greenbrier Minerals and Midland Trail Resources, LLC ("<u>Midland</u>"). Midland is currently the sole supplier of low sulfur coal to Greenbrier. Significantly, Joseph C. Turley III ("<u>Turley</u>") (the President and CEO of Greenbrier and Greenbrier Minerals and a

---

[6] On September 18, 2008, three days after LBHI's bankruptcy filing, Greenbrier Minerals requested that LCPI fund $10 million under the terms of the Credit Agreement. As a result of the Debtors' overall financial distress, LCPI was unable to satisfy the funding request.

member of the Board, holding membership interests in Greenbrier) owns a controlling equity interest in Midland and is also that company's President and CEO.

### Challenge to LCPI's Membership Interests and Board Authority to Act

20. For the first time, on December 17, 2009, in connection with the negotiation of the terms of the Sharing Agreement, a member of the Board, William Karis, alleged that, as a result of LCPI's chapter 11 filing, it was no longer a member of Greenbrier. See Email from William Karis to Jack McCarthy dated Dec. 17, 2009 (the "Karis Email") (asserting that "[u]nder Delaware law, upon commencing its bankruptcy, Lehman automatically ceased to be a member of Greenbrier as a matter of law"). A copy of the Karis Email is attached hereto as Exhibit G. Notably, neither Mr. Karis nor the remaining members of the Board or Company counsel alleged that the Board lacked authority to act on behalf of the Company as a result of LCPI's purported membership termination, and as discussed above, the Board (including LCPI's appointee) continued to conduct Company business. Rather, the issue was raised informally as a negotiating tactic.

21. In December 2009, counsel for LCPI, Jones Day, contacted Company counsel to dispute that LCPI's bankruptcy resulted in any change to its Membership Interests or the rights afforded to it under the Operating Agreement with respect to those interests. The matter was left unresolved and the parties continued negotiations in connection with the Sharing Agreement through May 2010.

22. On May 25, 2010, the Board decided by a majority of votes (10 to 1) to terminate Turley as the Company's CEO (the "May 25th Vote") and replace him with an

independent CEO with significant experience in coal mining.[7] This decision was made because Turley notified LCPI and members of the Board that Midland would not participate in continued negotiations for a joint sale of Greenbrier Minerals and Midland. Specifically, a majority of the members of the Board felt that because of his positions as CEO and part owner of Greenbrier and CEO and majority owner of Midland, Turley was conflicted and unable to impartially and effectively perform his duties at Greenbrier, particularly as it related to pursuing a sale of Greenbrier on a stand alone basis and not as part of a joint sale with Midland as was originally envisioned.

23. On May 29, 2010, solely in response to the May 25th Vote, Greenbrier, by memorandum (the "Buchanan Ingersoll Memorandum") from Company counsel, formally asserted for the first time that LCPI's Membership Interests in Greenbrier ceased under the Delaware LLC Act upon LCPI's bankruptcy filing and, as a result of the loss of the Membership Interests, the Board did not have proper authority to act on behalf of the Company because it no longer had a proper voting quorum to conduct Company business. A copy of the Buchanan Ingersoll Memorandum is attached hereto as Exhibit H.

24. By letter dated June 2, 2010 (the "LCPI Response Letter"), LCPI, through its counsel, responded to the Buchanan Ingersoll Memorandum. Specifically, counsel for LCPI advised that (i) LCPI retained its Membership Interests in Greenbrier notwithstanding the LCPI bankruptcy filing; (ii) those interests are part of LCPI's bankruptcy estate; and (iii) any attempt to deny LCPI of the Membership Interests or the rights afforded to it under the Operating Agreement with respect to those interests would constitute a willful violation of the automatic

---

[7]   LCPI has not received the minutes for the May 25, 2010 Board meeting.

- 9 -

stay in LCPI's bankruptcy case. A copy of the LCPI Response Letter is attached hereto as <u>Exhibit I</u>.

25. On June 3, 2010, counsel for LCPI called Company counsel to discuss his position regarding LCPI's retention of its Membership Interests and the Board quorum issue. During this communication, Company counsel acknowledged receipt of the LCPI Response Letter, but disagreed with LCPI's position and reiterated the Company's position that (i) LCPI's Membership Interests terminated upon its bankruptcy filing; and (ii) the Board lacked authority to act on behalf of the Company as a result of such termination, particularly with respect to the May 25th Vote.

## **RELIEF REQUESTED**

26. By this Motion, the Debtors seek an order enforcing the automatic stay against Greenbrier with respect to its efforts to deny LCPI of the Membership Interests and the rights afforded to it under the Operating Agreement relating to those interests, and specifically requiring that Greenbrier honor all actions taken by the Board (including the May 25th Vote and future actions taken in accordance with the Operating Agreement and including LCPI's voting interests).[8] A copy of the proposed order is attached hereto as <u>Exhibit J</u>.

    A.    Notwithstanding Its Bankruptcy Filing, LCPI Retained Its Membership Interests <u>and Rights Pursuant to the Terms of the Operating Agreement</u>

27. Notwithstanding Greenbrier's arguments, there is no real dispute as to whether LCPI retained its Membership Interests in Greenbrier after the bankruptcy filing, as the law and the Operating Agreement are clear on this point. Section 18-304 of the Delaware LLC

---

[8] Further, LCPI reserves any and all rights, including its right to seek an order from this Court holding Greenbrier in contempt for its willful and knowing violation of the stay.

- 10 -

Act provides, in relevant part, that "[a] person ceases to be a member of a limited liability company upon the happening of any of the following events: (1) *Unless otherwise provided in a limited liability company agreement* . . . a member . . . [f]iles a voluntary petition in bankruptcy." 6 Del. C. §18-304(A)(1)(b) (emphasis added). This express statutory carve out is consistent with the policy of the Delaware LLC Act "to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements." See 6 Del. C. §18-1101(b). Section 18-304 is a default provision, which is applicable only if a limited liability company operating agreement fails to specify what happens to a member's interests upon the member's commencement of a bankruptcy case.

28.     Moreover, it is well established under Delaware law that a limited liability company's operating agreement is the controlling document, and only where the agreement is silent or ambiguous with regard to an issue should guidance be sought in the provisions of the statute. See, e.g., Elf Atochem North America, Inc. v. Jaffari, 727 A.2d 286, 291 (Del. 1999) (noting that the clause "unless otherwise provided in a limited liability company agreement" is commonly used in the Delaware LLC Act for demarcating those "fundamental provisions made subject to modification in the [operating] [a]greement"); R & R Capital, LLC v. Buck & Doe Run Valley Farms, LLC, 2008 WL 3846318, at *4 (Del. Ch. Aug. 19, 2008) (same).

29.     As noted above, the Operating Agreement expressly addresses the rights of Greenbrier and its members upon a member's bankruptcy filing. Specifically, Section 9.7(a) of the Operating Agreement provides that:

> [a]t the election of the Company within three months after the Company becomes aware of an Affected Company Interest [which includes an interest held by a member that has sought bankruptcy relief], the Affected Company Interest may be purchased and liquidated by the Company, and the Member owning the Affected Company Interest shall surrender the Affected Company Interest in

- 11 -

>  exchange for the Liquidation Value of the Affected Company Interest.

Operating Agreement at § 9.7(a). Thus, pursuant to the Operating Agreement, the only way LCPI could lose the Membership Interests as a result of its bankruptcy filing was if Greenbrier purchased those interests within three months after such filing. Greenbrier never purchased (or even attempted to purchase) the Membership Interests from LCPI in accordance with the terms of the Operating Agreement.

30. It is no answer, as Greenbrier would contend, that Section 9.7(a) of the Operating Agreement does not specifically address what happens to a member's rights upon a bankruptcy filing, but merely gives Greenbrier the right to purchase a member's interests after the filing. Such a reading of Section 9.7 would render the language of that section meaningless. Greenbrier would never pay for a membership interest that would be lost upon a member's bankruptcy filing if it could recover such interest by simply electing to do nothing. See Segovia v. Equities First Holdings, LLC, 2008 WL 2251218, at *9 (Del. Super. Ct. May 30, 2008) (finding that "the Court must view the contracts as a whole and interpret them in a manner that gives 'a reasonable, lawful, and effective meaning to all the terms'") (citations omitted). Greenbrier's interpretation of Section 9.7(a) clearly was not the intent of the Operating Agreement, and cannot now be used as a justification to deny LCPI of its rights to the Membership Interests more than 18 months after its bankruptcy filing.[9]

---

[9] Greenbrier has suggested that there was no need to formally raise the lack of authority by the Board to act on behalf of the Company prior to the May 25th Vote because all prior Board actions were unanimously approved by all members of the Board. It is unclear why this would make any difference and such assertion belies the fact that if the Board lacked proper authority because it could not obtain a proper voting quorum without LCPI's board designee having a valid vote, this would be true whether Board votes were unanimous or not. If the Board could not achieve a quorum, then all of its votes from the day LCPI filed for bankruptcy were invalid.

31. Further, it is beyond coincidence that Greenbrier is now taking the position that LCPI lost its Membership Interests upon the commencement of its chapter 11 case and, as a result, the Board is without proper quorum to act on behalf of the Company. Tellingly, this position became the formal position of Greenbrier, upon the advice of Company counsel, just 4 days after the May 25th Vote to terminate Turley as CEO of Greenbrier and a general impasse among Turley, certain other members of the Board and LCPI regarding the proposed Sharing Agreement.

32. Additionally, as noted above, even after the Karis Email in December 2009, initially alleging that LCPI had lost its Membership Interests as a result of its bankruptcy filing, the Board continued to conduct Company business, with LCPI's postpetition appointee to the Board actively participating as a member. At no point, until now, did Greenbrier or Company counsel ever indicate that the Board was without authority to act on behalf of the Company due to a lack of voting quorum resulting from LCPI's purported loss of Membership Interests, and in fact by continuing to engage in Company business with third parties, the Board was purporting to have authority to conduct Company affairs. See In re Desmond, 316 B.R. 593, 595 (Bankr. D. N.H. 2004) (Rejecting a Delaware limited liability company member's argument that the company had dissolved under the Delaware LLC Act as a result of the member's bankruptcy filing, where such member continued to hold the company out for purposes of conducting business well after the filing).

33. Given the facts here, including the express provisions of the Operating Agreement, the Delaware LLC Act and the conduct of Greenbrier after the commencement of LCPI's chapter 11 case, it is disingenuous for Greenbrier to now take the position that LCPI's bankruptcy filing automatically terminated LCPI's Membership Interests, resulting in the Board

- 13 -

losing authority to act on behalf of the Company. Such position not only lacks good faith based on the law and the plain language of the Operating Agreement, but, more significantly, leaves the Board of a company, engaging in a highly dangerous industry, without authority to, *inter alia*, ensure that its employees are safe and its coal mines are operated properly in accordance with all applicable laws, regulations and ordinances.

B.  The Membership Interests Are Property of LCPI's Estate

34.  It is well established that "property of the estate" under the Bankruptcy Code is broad and encompasses, subject to certain exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case," including intangible property. 11 U.S.C. § 541(a);[10] see United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 (1983). Despite Greenbrier's untenable position that LCPI automatically lost its Membership Interests and the rights related thereto under the Operating Agreement upon its bankruptcy filing, such interests and related rights clearly fall within the ambit of the Bankruptcy Code's definition of property of the estate. See Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008) (finding that "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541 . . . Contractual rights clearly fall within the reach of this section"); see also In re Desmond, 316 B.R. at 595 (finding under Delaware law that a debtor's membership interests are property of a debtor estate). Accordingly, LCPI's

---

[10]  Specifically, Section 541(a)(1) of the Bankruptcy Code provides, in relevant part, that

(a) The commencement of a case under [the Bankruptcy Code] creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsection (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

Membership Interests, and the rights afforded to it with respect to those interests under the Operating Agreement, are property of the estate pursuant to section 541 of the Bankruptcy Code and cannot be summarily denied to LCPI as a means to further the agenda of certain Board members, or to obtain leverage over LCPI in connection with the Sharing Agreement negotiations. As property of the estate, the Membership Interests and related rights are afforded the protections of the Bankruptcy Code.

C. Greenbrier's Efforts to Deprive LCPI of the Membership
   Interests and Related Rights Are Violations of the Automatic Stay.

35. The automatic stay provisions of section 362 of the Bankruptcy Code serve as the primary tool used by bankruptcy courts to protect property of a debtor's estate. Significantly, "[t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors . . . ." See 11 U.S.C. § 362, Revision Notes and Legislative Reports.

36. Importantly, section 362(a)(3) of the Bankruptcy Code prohibits all entities from engaging in "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Greenbrier's efforts to deny LCPI its Membership Interests and the rights relating thereto (including the right to have its Board votes honored with respect to conducting Company business) are impermissible attempts to exercise control over property of LCPI's estate and, thus, are void as violations of the automatic stay. See In re Albion Disposal, Inc., 217 B.R. 394, 407-408 (W.D.N.Y. 1997) (finding an attempt to deny a debtor of contractual rights as an act to exercise control over property of the debtor's estate); In re Enron Corp., 300 B.R. 201, 211-214 (Bankr. S.D.N.Y. 2003); see also In re Colonial Realty Co., 980 F.2d 125, 137 (2d Cir. 1992) (finding that "actions taken in violation of the stay are void and without effect") (citing In re 48th

St. Steakhouse, Inc., 835 F.2d 427, 431 (2d Cir. 1987)); Serio v. DiLoreto, 2002 WL 426165, at *2 (S.D.N.Y. Mar. 19, 2002) (same).

## NOTICE

37.  No trustee has been appointed in these chapter 11 cases.  LCPI has served notice of this Motion, in accordance with the procedures set forth in the amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [Docket No. 9635], on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the United States Attorney for the Southern District of New York; (v) counsel for Greenbrier; and (vi) all parties who have requested notice in these chapter 11 cases (collectively, the "Notice Parties").  LCPI submits that no other or further notice need be provided.

38.  No previous request for the relief sought herein has been made by LCPI to this or any other court.

WHEREFORE LCPI respectfully requests that the Court grant the relief requested herein and such other relief as it deems just and proper.

Dated:  June 22, 2010               JONES DAY
        New York, New York

                                     /s/ Corinne Ball
                                    Corinne Ball
                                    Brett Barragate
                                    Richard Engman
                                    Robert Micheletto

                                    222 East 41st Street
                                    New York, New York  10017
                                    Telephone:  (212) 326-3939
                                    Facsimile:  (212) 755-7306

                                    *Attorneys for Debtor and Debtor in Possession
                                    Lehman Commercial Paper Inc.*