EXHIBIT I

## FORM OF MILESTONE SCHEDULE

## GREENBRIER MINERALS L.L.C:  DETAILED MILESTONE SCHEDULE

Milestones would be deemed met when certified by the Borrower and the Independent Engineer (which may include a site visit as reasonably determined by the Independent Engineer).

The following tables show detailed descriptions of the Milestones:

**Milestone/Conditions Precedent for September 1, 2006:**

| |
|---|
| The preparation plant, overland conveyor and rail loadout shall operate, fully staffed, at name plate ratings and within quality specifications. |

**Milestone/Conditions Precedent for June 1, 2007:**

| |
|---|
| The Mountaineer #3 mine shall begin production. |

**Milestone/Conditions Precedent for September, 2007:**

| |
|---|
| The Mountaineer #3 mine shall begin second shift production. |

**Milestone/Conditions Precedent for October 30, 2007:**

| |
|---|
| The slope at Mountaineer #1 Mine shall intercept the Pocahontas #6 Seam, including turnouts and vertical curves. |

**Milestone/Conditions Precedent for November 30, 2007:**

| |
|---|
| The 20 feet, inside diameter air shaft shall be completed with lining, curtain wall and turnouts. |

**Milestone/Conditions Precedent for January 1, 2008:**

| |
|---|
| The Mountaineer #1 Mine shall be complete with the slope/shaft bottom development and begin coal production. |

**Milestone/Conditions Precedent for February 8, 2008:**

| |
|---|
| The second unit shall begin operations in Mountaineer #1 Mine. |

**Milestone/Conditions Precedent for March 1, 2008:**

| |
|---|
| The third unit shall begin coal production at Mountaineer #1 Mine. |

EXHIBIT J

FORM OF MORTGAGE

See Tabs 12 and 13

EXHIBIT K

## PERFORMANCE TEST

Greenbrier Smokeless shall conduct, or have Taggart conduct, a performance test of the preparation plant ("Performance Test") as follows:

- The period of the Performance Test shall be 2 consecutive eight (8) hour shifts.

- Greenbrier Smokeless shall supply coal for the Performance Test, and shall do so at a controlled rate of 600 TPH continuously for the period of the Performance Test.

- During the Performance Test, Taggart or Greenbrier Smokeless will operate the Plant to meet the Plant Capacity and Mechanical Availability performance guarantees set forth in the attachment hereto. Testing to validate performance guarantees, including sampling and collecting costs, will be arranged by Greenbrier Smokeless.

## PERFORMANCE GUARANTEES

The preparation plant will process 600 raw tons per hour on a continuous basis, based on the following expected raw feed size distribution:

| Size Distribution | Poca #6 WT % |
|---|---|
| Plus 1/2 In. | 12.0 |
| 1/2 In. x  1 mm | 58.0 |
| 1 mm x 100 Mesh | 21.0 |
| 100 Mesh x 325 Mesh | 3.5 |
| 325Mesh x 0 | 5.5 |

Magnetite losses are to be less than 1.50 Lb. per raw ton feed to the preparation plant. Magnetite consumption limits are based on using B Grade magnetite with the following specifications:

- Greater than 96% magnetics

- 88%-92% 0.044mm x 0

The Heavy Media Cyclone (2 In. x 1mm) is guaranteed as follows: per the equipment manufacturer.

| S.G. of Separation | Expected Ep | Guaranteed Ep |
|---|---|---|
| 1.40 | 0.034 | 0.041 |
| 1.50 | 0.036 | 0.043 |
| 1.60 | 0.039 | 0.046 |
| 1.70 | 0.041 | 0.049 |

K-2

The Spirals (1mm x 0.15mm) are guaranteed as follows:, per the equipment manufacturer.

| S.G. of Separation | Expected Ep | Guaranteed Ep |
|---|---|---|
| 1.70 | 0.15 | 0.18 |
| 1.80 | 0.15 | 0.19 |
| 1.90 | 0.18 | 0.20 |
| 2.00 | 0.20 | 0.21 |

The Ultra Fine Spiral (0.15mm x 0.044 mm) is guaranteed as follows:

The performance of the ultra-fine cleaning circuit will have an organic efficiency of 85 percent.

ORGANIC EFFICIENCY

Organic efficiency testing (defined as the percentage of actual yield at ash divided by theoretical yield at the same ash value) is another less accurate method of defining plant performance. This procedure is employed by several commercial laboratories, and basically entails collecting raw coal samples, clean coal samples, and two refuse samples (coarse and fine). Washability analysis is performed typically only on the raw coal samples to define the theoretical yields. Ash by size analysis is performed on both the clean coal and refuse samples. The two refuse sample analysis are then weight proportioned and combined to achieve the composite refuse and utilized in ash balance calculations. From this, actual yields are developed and compared to the theoretical values.

Taggart does not typically use this methodology in defined plant performance. This method does not, take into account in-plant degradation or define individual problem area if present. With the standard performance guarantees, individual circuit analysis will be evaluated as part of the performance guarantee.

EXHIBIT L-1

## FORM OF TERM A NOTE
## GREENBRIER MINERALS, LLC

THIS NOTE AND THE OBLIGATIONS REPRESENTED HEREBY MAY NOT BE TRANSFERRED EXCEPT IN COMPLIANCE WITH THE TERMS AND PROVISIONS OF THE CREDIT AGREEMENT REFERRED TO BELOW. TRANSFERS OF THIS NOTE AND THE OBLIGATIONS REPRESENTED HEREBY MUST BE RECORDED IN THE REGISTER MAINTAINED BY THE ADMINISTRATIVE AGENT PURSUANT TO THE TERMS OF SUCH CREDIT AGREEMENT.

$_____

New York, New York

_____, \_\_\_\_\_
(Issuance Date)

FOR VALUE RECEIVED, the undersigned, GREENBRIER MINERALS, LLC, a Delaware limited liability company ("*Borrower*"), hereby unconditionally promises to pay to the order of _____ (the "*Lender*") or its registered assigns at the Payment Office specified in the Credit Agreement (as hereinafter defined) in lawful money of the United States of America and in immediately available funds, the principal amount of (a) _____ ($_____.\_\_), or (b) if less, the unpaid principal amount of the Term A Loans made by the Lender pursuant to Section 2.1 of the Credit Agreement. The principal amount shall be paid in the amounts and on the dates specified in Article II of the Credit Agreement. Borrower further agrees to pay interest in like money at such office on the unpaid principal amount hereof from time to time outstanding at the rates and on the dates specified in Section 2.10 of the Credit Agreement.

The holder of this Note is authorized to indorse, on <u>Schedule A</u> annexed hereto and made a part hereof or on a continuation thereof which shall be attached hereto and made a part hereof, the date and amount of the Term A Loans and the date and amount of each payment or prepayment of principal with respect thereto or amount of accrued and unpaid interest outstanding under this Note. Each such indorsement shall constitute *prima facie* evidence of the accuracy of the information indorsed. The failure to make any such indorsement or any error in any such indorsement shall not affect the obligations of Borrower in respect of the Term A Loans.

This Note is (a) one of the Notes referred to in the Amended and Restated Credit Agreement dated as of May 1, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "*Credit Agreement*"), among Borrower, the several banks and other financial institutions or entities from time to time party thereto, Lehman Brothers Inc., as Sole Arranger, and Lehman Commercial Paper Inc., as Syndication Agent and Administrative Agent, (b) subject to the provisions of the Credit Agreement and (c) subject to optional and mandatory prepayment in whole or in part as provided in the Credit Agreement. This Note is secured and guaranteed as provided in the Loan Documents. Reference is hereby made to the Loan Documents for a description of the properties and assets in which a security interest has been granted, the nature and extent of the security and the guarantees, the terms and conditions upon which the security interests and each guarantee were granted and the rights of the holder of this Note in respect thereof.

Upon the occurrence of any Event of Default, the unpaid principal balance of this Note and all accrued and unpaid interest thereon shall become, or may be declared to be, immediately due and payable, all as provided in the Credit Agreement.

All parties now and hereafter liable with respect to this Note, whether as maker, principal, surety, guarantor, indorser or otherwise, hereby waive presentment for payment, demand, protest and all other notices of any kind.

Terms not otherwise defined herein shall have the meanings given to them in the Credit Agreement.

**NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN OR IN THE CREDIT AGREEMENT, THIS NOTE MAY NOT BE TRANSFERRED EXCEPT PURSUANT TO AND IN ACCORDANCE WITH THE REGISTRATION AND OTHER PROVISIONS OF SECTION 9.6 OF THE CREDIT AGREEMENT.**

**THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.**

There are no unwritten or oral agreements between Borrower and the Lender.

IN WITNESS HEREOF, this Note is executed and effective as of the date first written above.

GREENBRIER MINERALS, LLC


By: _____
Name: _____
Title: _____

## SCHEDULE A

### Term A Loans and Repayments of Term A Loans

| Date | Amount of Loans | Amount of Principal of Loans Repaid | Unpaid Principal Balance of Loans | Notation Made By |
|------|-----------------|-------------------------------------|-----------------------------------|------------------|
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |

EXHIBIT L-2

### FORM OF TERM B NOTE
### GREENBRIER MINERALS, LLC

THIS NOTE AND THE OBLIGATIONS REPRESENTED HEREBY MAY NOT BE
TRANSFERRED EXCEPT IN COMPLIANCE WITH THE TERMS AND PROVISIONS OF
THE CREDIT AGREEMENT REFERRED TO BELOW. TRANSFERS OF THIS NOTE AND
THE OBLIGATIONS REPRESENTED HEREBY MUST BE RECORDED IN THE
REGISTER MAINTAINED BY THE ADMINISTRATIVE AGENT PURSUANT TO THE
TERMS OF SUCH CREDIT AGREEMENT.

$_____$                                                  New York, New York

_____, \_\_\_\_\_
(Issuance Date)

FOR VALUE RECEIVED, the undersigned, GREENBRIER MINERALS, LLC, a
Delaware limited liability company (“**Borrower**”), hereby unconditionally promises to pay to the
order of _____ (the “**Lender**”) or its registered assigns at the Payment Office
specified in the Credit Agreement (as hereinafter defined) in lawful money of the United States
of America and in immediately available funds, the principal amount of (a) _____
($_____.\_\_), or (b) if less, the unpaid principal amount of the Term B Loans made by the
Lender pursuant to Section 2.1 of the Credit Agreement. The principal amount shall be paid in
the amounts and on the dates specified in Article II of the Credit Agreement. Borrower further
agrees to pay interest in like money at such office on the unpaid principal amount hereof from
time to time outstanding at the rates and on the dates specified in Section 2.10 of the Credit
Agreement.

The holder of this Note is authorized to indorse, on <u>Schedule A</u> annexed hereto and made
a part hereof or on a continuation thereof which shall be attached hereto and made a part hereof,
the date and amount of the Term B Loans and the date and amount of each payment or
prepayment of principal with respect thereto or amount of accrued and unpaid interest
outstanding under this Note. Each such indorsement shall constitute *prima facie* evidence of the
accuracy of the information indorsed. The failure to make any such indorsement or any error in
any such indorsement shall not affect the obligations of Borrower in respect of the Term B
Loans.

This Note is (a) one of the Notes referred to in the Amended and Restated Credit
Agreement dated as of May 1, 2007 (as amended, restated, supplemented or otherwise modified
from time to time, the “**Credit Agreement**”), among Borrower, the several banks and other
financial institutions or entities from time to time party thereto, Lehman Brothers Inc., as Sole
Arranger, and Lehman Commercial Paper Inc., as Syndication Agent and Administrative Agent,
(b) subject to the provisions of the Credit Agreement and (c) subject to optional and mandatory
prepayment in whole or in part as provided in the Credit Agreement. This Note is secured and
guaranteed as provided in the Loan Documents. Reference is hereby made to the Loan
Documents for a description of the properties and assets in which a security interest has been
granted, the nature and extent of the security and the guarantees, the terms and conditions upon
which the security interests and each guarantee were granted and the rights of the holder of this
Note in respect thereof.

Upon the occurrence of any Event of Default, the unpaid principal balance of this Note and all accrued and unpaid interest thereon shall become, or may be declared to be, immediately due and payable, all as provided in the Credit Agreement.

All parties now and hereafter liable with respect to this Note, whether as maker, principal, surety, guarantor, indorser or otherwise, hereby waive presentment for payment, demand, protest and all other notices of any kind.

Terms not otherwise defined herein shall have the meanings given to them in the Credit Agreement.

**NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN OR IN THE CREDIT AGREEMENT, THIS NOTE MAY NOT BE TRANSFERRED EXCEPT PURSUANT TO AND IN ACCORDANCE WITH THE REGISTRATION AND OTHER PROVISIONS OF SECTION 9.6 OF THE CREDIT AGREEMENT.**

**THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.**

There are no unwritten or oral agreements between Borrower and the Lender.

IN WITNESS HEREOF, this Note is executed and effective as of the date first written above.

GREENBRIER MINERALS, LLC

By: _____
Name: _____
Title: _____

L-2-2

## SCHEDULE A

### Term B Loans and Repayments of Term B Loans

| Date | Amount of Loans | Amount of Principal of Loans Repaid | Unpaid Principal Balance of Loans | Notation Made By |
|------|-----------------|-------------------------------------|-----------------------------------|------------------|
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |

EXHIBIT L-3

## FORM OF REVOLVING CREDIT NOTE
## GREENBRIER MINERALS, LLC

THIS NOTE AND THE OBLIGATIONS REPRESENTED HEREBY MAY NOT BE TRANSFERRED EXCEPT IN COMPLIANCE WITH THE TERMS AND PROVISIONS OF THE CREDIT AGREEMENT REFERRED TO BELOW. TRANSFERS OF THIS NOTE AND THE OBLIGATIONS REPRESENTED HEREBY MUST BE RECORDED IN THE REGISTER MAINTAINED BY THE ADMINISTRATIVE AGENT PURSUANT TO THE TERMS OF SUCH CREDIT AGREEMENT.

$_____                                          New York, New York

                                                         _____, _____
                                                            (Issuance Date)

FOR VALUE RECEIVED, the undersigned, GREENBRIER MINERALS, LLC, a Delaware limited liability company ("***Borrower***"), hereby unconditionally promises to pay to the order of _____ (the "***Lender***") or its registered assigns at the Payment Office specified in the Credit Agreement (as hereinafter defined) in lawful money of the United States of America and in immediately available funds, the principal amount of _____ ($_____.____). The principal amount shall be paid in the amounts and on the dates specified in Article II of the Credit Agreement. Borrower further agrees to pay interest in like money at such office on the unpaid principal amount hereof from time to time outstanding at the rates and on the dates specified in Section 2.10 of the Credit Agreement.

The holder of this Note is authorized to indorse, on <u>Schedule A</u> annexed hereto and made a part hereof or on a continuation thereof which shall be attached hereto and made a part hereof, the date and amount of the Revolving Credit Loans and the date and amount of each payment or prepayment of principal with respect thereto or amount of accrued and unpaid interest outstanding under this Note. Each such indorsement shall constitute *prima facie* evidence of the accuracy of the information indorsed. The failure to make any such indorsement or any error in any such indorsement shall not affect the obligations of Borrower in respect of the Revolving Credit Loans.

This Note is (a) one of the Notes referred to in the Amended and Restated Credit Agreement dated as of May 1, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "***Credit Agreement***"), among Borrower, the several banks and other financial institutions or entities from time to time party thereto, Lehman Brothers Inc., as Sole Arranger, and Lehman Commercial Paper Inc., as Syndication Agent and Administrative Agent, (b) subject to the provisions of the Credit Agreement and (c) subject to optional and mandatory prepayment in whole or in part as provided in the Credit Agreement. This Note is secured and guaranteed as provided in the Loan Documents. Reference is hereby made to the Loan Documents for a description of the properties and assets in which a security interest has been granted, the nature and extent of the security and the guarantees, the terms and conditions upon which the security interests and each guarantee were granted and the rights of the holder of this Note in respect thereof.

Upon the occurrence of any Event of Default, the unpaid principal balance of this Note and all accrued and unpaid interest thereon shall become, or may be declared to be, immediately due and payable, all as provided in the Credit Agreement.

All parties now and hereafter liable with respect to this Note, whether as maker, principal, surety, guarantor, indorser or otherwise, hereby waive presentment for payment, demand, protest and all other notices of any kind.

Terms not otherwise defined herein shall have the meanings given to them in the Credit Agreement.

NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN OR IN THE CREDIT AGREEMENT, THIS NOTE MAY NOT BE TRANSFERRED EXCEPT PURSUANT TO AND IN ACCORDANCE WITH THE REGISTRATION AND OTHER PROVISIONS OF SECTION 9.6 OF THE CREDIT AGREEMENT.

THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

There are no unwritten or oral agreements between Borrower and the Lender.

IN WITNESS HEREOF, this Note is executed and effective as of the date first written above.

GREENBRIER MINERALS, LLC

By: _____
Name: _____
Title: _____

**SCHEDULE A**

**Revolving Credit Loans and Repayments of Revolving Credit Loans**

| Date | Amount of Loans | Amount of Principal of Loans Repaid | Unpaid Principal Balance of Loans | Notation Made By |
|------|-----------------|-------------------------------------|-----------------------------------|------------------|
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |
|      |                 |                                     |                                   |                  |

## FORM OF EXEMPTION CERTIFICATE

Reference is made to that certain Amended and Restated Credit Agreement, dated as of May 1, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "*Credit Agreement*"), among GREENBRIER MINERALS, LLC, a Delaware limited liability company ("*Borrower*"), the several banks and other financial institutions or entities from time to time party thereto, LEHMAN BROTHERS INC., as Arranger, and LEHMAN COMMERCIAL PAPER INC., as Syndication Agent and Administrative Agent. Terms not otherwise defined herein shall have the meanings given to them in the Credit Agreement.

_____ (the "*Non-U.S. Lender*") is providing this certificate pursuant to Section 2.13(d) of the Credit Agreement. The Non-U.S. Lender hereby represents and warrants that:

1.    The Non-U.S. Lender is the sole record and beneficial owner of the Loans or the obligations evidenced by Note(s) in respect of which it is providing this certificate.

2.    The Non-U.S. Lender is not a "bank" for purposes of Section 881(c)(3)(A) of the Code. In this regard, the Non-U.S. Lender further represents and warrants that:

(a)    the Non-U.S. Lender is not subject to regulatory or other legal requirements as a bank in any jurisdiction; and

(b)    the Non-U.S. Lender has not been treated as a bank for purposes of any tax, securities law or other filing or submission made to any Governmental Authority, any application made to a rating agency or qualification for any exemption from tax, securities law or other legal requirements;

3.    The Non-U.S. Lender is not a 10-percent shareholder of Borrower within the meaning of Section 881(c)(3)(B) of the Code; and

4.    The Non-U.S. Lender is not a controlled foreign corporation receiving interest from a related person within the meaning of Section 881(c)(3)(C) of the Code.

**[Signature Page Follows]**

IN WITNESS WHEREOF, the undersigned has executed this Exemption Certificate as of the date set forth below.

[NAME OF NON-U.S. LENDER]

_____

By:
Title:

Date: _____, _____

EXHIBIT N

FORM OF CLOSING CERTIFICATE

See Tab 18

EXHIBIT O

## FORM OF ASSIGNMENT AND ACCEPTANCE

This ASSIGNMENT AND ACCEPTANCE, dated as of _____, _____ (this *"Assignment and Acceptance"*), is between _____, a _____ (the *"Assignor"*), and _____, a _____ (the *"Assignee"*).

Reference is made to that certain Amended and Restated Credit Agreement, dated as of May 1, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the *"Credit Agreement"*), among GREENBRIER MINERALS, LLC, a Delaware limited liability company (*"Borrower"*), the several banks and other financial institutions or entities from time to time party thereto, LEHMAN BROTHERS INC., as Arranger, and LEHMAN COMMERCIAL PAPER INC., as Syndication Agent and Administrative Agent. Terms not otherwise defined herein shall have the meanings given to them in the Credit Agreement.

The Assignor and Assignee hereby agree as follows:

1.      Subject to and in accordance with the terms of the Credit Agreement and the other Loan Documents, the Assignor hereby sells and assigns to the Assignee, and the Assignee hereby purchases and assumes from the Assignor, [all of] [an interest in] the Assignor's right, title and interest in, and obligations with respect to, the Loans and the Loan Documents equal to the Loan Percentage specified in Section 1 to Schedule I hereto (the *"Assigned Interest"*). The Commitments and principal amount of the Loans assigned to the Assignee are set forth in Section 1 to Schedule I and Commitments and principal amount of the Loans retained by the Assignor after giving effect to such sale and assignment are set forth in Section 2 to Schedule I.

2.      The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim, and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Acceptance and to consummate the transactions contemplated hereby; (b) makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with the Credit Agreement or with respect to the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement, any other Loan Document or any other instrument or document furnished pursuant thereto; (c) makes no representation or warranty and assumes no responsibility with respect to the financial condition of Borrower, any of its respective Subsidiaries or any other obligor or the performance or observance by Borrower, any of its respective Subsidiaries or any other obligor of any of their respective obligations under the Credit Agreement or any other Loan Document or any other instrument or document furnished pursuant hereto or thereto; and (d) attaches any Note held by it evidencing the Assigned Interest and requests that the Administrative Agent, upon request by the Assignee, request Borrower to cancel the attached Note (if any) and issue in exchange therefor (i) a new Note payable to the Assignee and (ii) if the Assignor has retained any interest in the Loans held, and other rights and obligations under the Credit Agreement, a new Note payable to the Assignor, in each case in amounts which reflect the assignment being made hereby (and after giving effect to any other assignments which have become effective on the Effective Date, as defined below).

3.      The Assignee (a) represents and warrants that it is legally authorized to enter into this Assignment and Acceptance; (b) confirms that it has received a copy of the Credit Agreement, together with copies of the financial statements delivered pursuant to Section 5.1 thereof and such other documents and information as it has deemed appropriate to make its own credit analysis and decision

to enter into this Assignment and Acceptance; (c) agrees that it will, independently and without reliance upon the Assignor, the Agents or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Credit Agreement, the other Loan Documents or any other instrument or document furnished pursuant hereto or thereto; (d) appoints and authorizes the Administrative Agent to take such action as agent on its behalf and to exercise such powers and discretion under the Credit Agreement, the other Loan Documents or any other instrument or document furnished pursuant hereto or thereto as are delegated to the Administrative Agent by the terms thereof, together with such powers as are incidental thereto; and (e) agrees that it will be bound by the provisions of the Credit Agreement and will perform in accordance with its terms all the obligations which by the terms of the Credit Agreement are required to be performed by it as a Lender including, if it is organized under the laws of a jurisdiction outside the United States, its obligation pursuant to Section 2.13(d) of the Credit Agreement.

4.      The effective date of this Assignment and Acceptance shall be the effective date of assignment described in Section 3 to Schedule 1 hereto (the "*Effective Date*").  Following the execution of this Assignment and Acceptance, it will be delivered to the Administrative Agent for acceptance by it and recording by the Administrative Agent pursuant to the Credit Agreement, effective as of the Effective Date (which shall not, unless otherwise agreed to by the Administrative Agent, be earlier than five Business Days after the date of such acceptance and recording by the Administrative Agent).

5.      Upon such acceptance and recording, from and after the Effective Date the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) [to the Assignor for amounts which have accrued to the Effective Date and to the Assignee for amounts which have accrued subsequent to the Effective Date] [to the Assignee whether such amounts have accrued prior to the Effective Date or accrue subsequent to the Effective Date. The Assignor and the Assignee shall make all appropriate adjustments in payments by the Administrative Agent for periods prior to the Effective Date or with respect to the making of this assignment directly between themselves].

6.      From and after the Effective Date, (a) the Assignee shall be a party to the Credit Agreement and, to the extent provided in this Assignment and Acceptance, have the rights and obligations of a Lender thereunder and under the other Loan Documents and shall be bound by the provisions thereof and (b) the Assignor shall, to the extent provided in this Assignment and Acceptance, relinquish its rights and be released from its obligations under the Credit Agreement.

7.      This Assignment and Acceptance shall be governed by and construed in accordance with the laws of the State of New York.

8.      This Assignment and Acceptance may be executed in any number of counterparts and by different parties on separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement.  Delivery of an executed counterpart of this Assignment and Acceptance by telecopier shall be effective as delivery of a manually executed counterpart of this Assignment and Acceptance.

**[Signature Page Follows]**

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Acceptance to be executed by their respective duly authorized officers as of the date first above written.


**ASSIGNOR:**                                      **ASSIGNEE:**


By:_____          By:_____
Name:                                              Name:
Title:                                             Title:



Accepted:

LEHMAN COMMERCIAL PAPER INC., as Administrative Agent



By:_____
Name:
Title:

**Schedule I**
**to**
**Assignment and Acceptance**

**Section 1.**

Loan Percentage assigned to Assignee:                    _____%

Commitments assigned to Assignee:                    $_____

Aggregate Outstanding Principal Amount of Loans
assigned to Assignee:                    $_____

**Section 2.**

Loan Percentage retained by Assignor:                    _____%

Commitments retained by Assignor:                    $_____

Aggregate Outstanding Principal Amount of Loans
retained by Assignor                    $_____

**Section 3.**

Effective Date:                    _____, _____

SCHEDULES TO

AMENDED AND RESTATED CREDIT AGREEMENT

among

GREENBRIER MINERALS, LLC,
as Borrower,

The Several Lenders
from Time to Time Parties Thereto,

LEHMAN BROTHERS INC.,
as Arranger

LEHMAN COMMERCIAL PAPER INC.,
as Administrative Agent

## SCHEDULE 1.1(a) - Coal Leases

1.      Lease dated October 15, 2004, as amended by Amendment No. 1 dated June 18, 2006 by and between MeadWestvaco Corporation, as Lessor, and Matoaka Land Company, LLC, as Lessee.

2.      Lease dated May 5, 2005 by and between MeadWestvaco Corporation, as Lessor and Matoaka Land Company, LLC, as Lessee.

3.      Lease dated July 1, 2006 by and between MeadWestvaco Corporation, as Lessor and Matoaka Land Company, LLC, as Lessee.

## SCHEDULE 1.1(b) - Existing Indebtedness

As of May 1, 2007:

A.

    1.    Greenbrier Smokeless Coal Mining, L.L.C.

        a.    West Virginia Simple Interest Vehicle Retail Installment Contracts (Ford Credit) with Ramey Automotive Group Inc. as follows:         $102,718.90

            (i)    2005 Ford Truck Econoline (used) VIN 1FBNE31L85HB37847 dated March 21, 2006

            (ii)    2006 Ford Truck S-DTY F-2 (new) VIN 1FTNF215X6EC76191 dated March 21, 2006

            (iii)    2004 Ford Truck F-250 (used) VIN 1FTNX21L04EA67731 dated March 21, 2006

            (iv)    2006 Ford Truck F-150 SER (new) VIN 1FTRF14W46NB15271 dated March 17, 2006

            (v)    2006 Ford Truck F-150 SER (new) VIN 1FTRF14W96NA90190 dated March 17, 2006

            (vi)    2004 Ford Truck F-250 (used) VIN 1FTNW21L24EA45961 dated March 31, 2006

            (vii)    2006 Ford Truck F-150 SER (new) VIN 1FTRF14W46NA66122 dated March 20, 2006

            (viii)    2006 Ford Truck F-150 SER (new) VIN 1FTRF14W86NB10803 dated March 20, 2006

    (ix)   2006 Ford Truck F-150 SER (new) VIN
1FTRX14W46NA63699 dated
March 20, 2006

    (x)   2005 GMC Sierra Truck (Used)
2GTEK63N4S1151770
September 16, 2006

c.   National Bank of Blacksburg vehicle financing
(5 vehicles) promissory notes as follows:        $80,676.60

    (i)   dated August 19, 2005 in the original
principal amount of $90,874.56

    (ii)   dated August 19, 2005 in the original
principal amount of $70,962.64

d.   Volvo Financial Services equipment financing
promissory note dated August 18, 2006       $325,217.71

e.   Volvo Financial Services equipment financing
promissory note dated 12/07/06         $334,980.00

f.   Volvo Financial Services equipment financing
promissory note dated 12/07/06         $281,180.00

g.   Deere Credit equipment financing
promissory note dated 11/09/06         $317,035.00

B.   Orix Leases:

| | |
|---|---|
| 1. | Master Lease Agreement between Greenbrier Smokeless Coal Mining, L.L.C. and ORIX Financial Services, Inc. together with the following: |
| (a) | Equipment Schedule No. 1, together with all Exhibits and Riders attached thereto, dated July 12, 2005 (Acceptance Date: July 14, 2005) and in addition, the following,: |
| (1) | Certificate of Acceptance of Greenbrier Smokeless Coal Mining, LLC, dated July 12, 2005 |
| (b) | Limited Liability Company Certificates and Agreements of Greenbrier Minerals, LLC individually and on behalf of each of the following: |
| (1) | Greenbrier Smokeless Coal Mining, L.L.C., dated July 12, 2005 |
| (2) | Powhatan Mid-Vol Coal Sales, L.L.C., dated July 12, 2005 |

| | | |
|---|---|---|
| | (3) | Matoaka Land Company, LLC, dated July 12, 2005 |
| (c) | | Guaranty of Matoaka Land Company, LLC in favor of ORIX Financial Services, dated July 12, 2005 |
| (d) | | Equipment Schedule No. 2, together with all Exhibits and Riders attached thereto, dated July 22, 2005 (Acceptance Date July 22, 2005), and in addition, the following: |
| | (1) | Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C., dated July 22, 2005 |
| (e) | | Equipment Schedule No. 3, together with all Exhibits and Riders attached thereto, dated August 19, 2005 (Acceptance Date August 19, 2005), and in addition, the following: |
| | (1) | Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C., dated August 19, 2005 |
| (f) | | Equipment Schedule No. 4, together with all Exhibits and Riders attached thereto, dated September 30, 2005 (Acceptance Date September 30, 2005), and in addition, the following: |
| | (1) | Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C., dated September 29, 2005 |
| (g) | | Equipment Schedule No. 5, together with all Exhibits and Riders attached thereto, dated October 18, 2005 (Acceptance Date October 18, 2005), and in addition, the following: |
| | (1) | Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C., dated October 18, 2005 |
| (h) | | Equipment Schedule No. 6, together with all Exhibits and Riders attached thereto, dated November 16, 2005 (Acceptance Date [undated]), and in addition, the following: |
| | (1) | Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C., dated November 16, 2005 |
| (i) | | Equipment Schedule No. 7, together with all Exhibits and Riders attached thereto, dated December 9, 2005 (Acceptance Date December 9, 2005), and in addition, the following: |

| | | | |
|---|---|---|---|
| | (1) | Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C., dated December 8, 2005 | |
| | | | |
| (j) | | Equipment Schedule No. 8, together with all Exhibits and Riders attached thereto, dated December 13, 2005 (Acceptance Date December 12, 2005), and in addition, the following: | |
| | | | |
| | (1) | Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C., dated December 12, 2005 | |
| | | | |
| (k) | | Rider X to Master Lease Agreement, dated as of July 8, 2005 | |
| | | | |

## SCHEDULE 1.1(c) - Mortgaged Property

1.      That certain property generally referred to by the Borrower as its office and as more specifically described on that certain Deed dated July 19, 2005 between MeadWestvaco Corporation, as Grantor, and Greenbrier Smokeless Coal Mining, L.L.C., as Grantee.

2.      That certain property subject to that certain Lease dated May 5, 2005 by and between MeadWestvaco Corporation, as Lessor and Matoaka Land Company, LLC, as Lessee.

3.      That certain property subject to that certain Lease dated October 15, 2004, as amended by Amendment No. 1 dated June 18, 2006 by and between MeadWestvaco Corporation, as Lessor, and Matoaka Land Company, LLC, as Lessee.

4.      That certain 222.32 acre tract described on that certain Deed dated on or about the Closing Date between MeadWestvaco Corporation, as Grantor, and Matoaka Land Company, LLC, as Grantee.

5.      That certain property subject to that certain Lease dated October 15, 2004, as amended by Amendment No. 1 dated June 18, 2006 by and between MeadWestvaco Corporation, as Lessor, and Matoaka Land Company, LLC, as Lessee.

6.      That certain property subject to that certain Lease dated July 1, 2006 by and between MeadWestvaco Corporation, as Lessor and Matoaka Land Company, LLC, as Lessee.

**SCHEDULE 3.4 - Consents, Authorizations, Filings and Notices**

Those certain UCC filings and Instructions Agreements set forth on Schedule 2 to the Guarantee
and Security Agreement.

Notice to MeadWestvaco Corporation required pursuant to each of the Coal Leases listed on
Schedule 3.10(b) to be delivered after the Closing Date.

**SCHEDULE 3.8(a) - Government Approval[1] - Closing Date**

Obligor: Greenbrier Smokeless Coal Mining, L.L.C.:

1. Permit: Mountaineer No. 1 Load-out Facility Permit No. O-3006-05, NPDES No. WV1021842
   MSHA ID 46-09175

   Issued by: WVDEP
   Issued: 2-13-06 for SMA, 1-20-06 for NPDES, 2-21-06 for 401 Certification

      Issued By: USACE
      Issued: 5-16-06 for 404 IP

2. Permit: Mountaineer No. 1 Preparation Plant Facility Permit No. O-3010-05;
   Mountaineer Haul Road No. 1 Permit No. O-3011-05; NPDES No. WV1021885
      MSHA ID 46-09125 (State ID: O-3010-05)
   Issued By: WVDEP
   Issued: 5-30-06 for SMA, 4-27-06 for NPDES, 8-11-06 for 401 Certification

      Issued By: USACE
      Issued: 10/08/2006 for 404 IP

3. Permit: Mountaineer Pocahontas No. 1 Deep Mine Permit No. U-3012-05; Mountaineer
   Haul Road No. 1A Permit No. O-3013-05; NPDES No. WV1021893
      MSHA ID 46-09172 (State ID: U-3012-05A)
   Issued By: WVDEP
   Issued: 6-8-06 for SMA, 6-14-06 for NPDES, 8-11-06 for 401 Certification.
   02/21/2007 Revision 1 addition of Beckley Seam
   Pending, IBR No. 1 Storage Area

      Issued by USACE
      Issued: 10/08/2006 for 404 IP

4. Permit: Mountaineer Pcoahontas Deep Mine No. 2 Permit No. U-3007-05, NPDES No. WV1021851
      MSHA ID 46-09154 (State ID: U-3007-05A)
   Issued By: WVDEP
   Issued: 2-13-06 for SMA, 1-31-06 for NPDES

      Issued By: MSHA
      Issued: No. 46-09154 begin date of 3-23-06

5. Permit: Greenbrier Complex Air Quality Permit; Facility ID No. 025-00068

---

[1] All Government Approvals issued to Borrower unless otherwise noted.

Issued by: WVDEP
Issued: 3-13-06

6. Permit: Permit No. 09-05-0371, CR1, MP 4,38, Greenbrier County
   Issued By: WVDOT, Division of Highways
   Issued: 9-14-05

7. Permit: Mitigation and Compensation Agreement in connection with WVNPDES No.
   WV 1021842; Article 3 Nos. O-3006-05
   Issued By: WVDEP
   Issued: February 1, 2006

8. Permit: Mitigation and Compensation Agreement in connection with WVNPDES Nos.
   WV 1021885, WV 1021893 and WV 1021974; Article 3 Nos. O-3010-05, O-3011-05, U-
   3012-05, O-3013-05, O-3021-05, O-3022-05 and O-3023-05
   Issued By: WVDEP
   Issued: August 11, 2006

9. Permit: General Mitigation Plan Agreement in connection with WVNPDES Nos. WV
   1021885, WV 1021893 and WV 1021974; Article 3 Nos. O-3010-05, O-3011-05, U-
   3012-05, O-3013-05, O-3021-05, O-3022-05 and O-3023-05; and Associated Application
   WV 1021893-NP401(2)
   Issued By: WVDEP
   Issued: August 11, 2006

10. Mountaineer Haul Road No. 1 Pemrit No. O-3011-05
    NPDES No. WV1021885
    Issued By: WVDEP
    Issued: 5-30-06 for SMA, 4-27-06 for NPDES, 8-11-06 for 401 Certification

    Issued by USACE
    Issued: 10/08/2006 for 404 IP

11. Mountaineer Haul Road No.1A Permit No. O-3013-05
    NPDES No. WV1021893
    Issued By: WVDEP
    Issued: 6-8-06 for SMA, 6-14-06 for NPDES, 8-11-06 for 401 Certification

    Issued By: USACE
    Issued: 10/08/2006 for 404 IP

12. WV1021842 NPDES
    Issued By: WVDEP
    Issued: 1-20-06
    Associated Article 3 Permit: O-3006-05 Mountaineer No. 1 Load Out Facility

13. WV1021885 NPDES
    Issued By: WVDEP
    Issued: 4-24-06
        Associated Article 3 Permit: O3011-05 Mountaineer No. 1 Haul Road and O-3010-05
                                     Mountaineer No. 1 Preparation Plant.
    MSHA ID 46-09175

14. Permit: Mountaineer No. 1 Refuse Disposal Facility SMA No. O-3021-05; Mountaineer
    Haul Road No. 2 SMA No. O-3022-05; Mountaineer Haul Road No. 3 SMA No. O-
    3023-06: NPDES No. WV1021974

        Issued By: WVDEP
        Issued: 12/15/06 for SMA, 11/17/06 for NPDES, 8-11-06 for 401 Certification

        Issued By: USACE
        Issued: 10/08/06 for 404 IP,

15. Permit: Buck Lilly Surface Mine (in the name of Oxford Mining Company, Inc.) SMA
    No. S-3008-05; NPDES No. WV1021869

        Issued By: WVDEP
        Issued: 12/15/06 for SMA, 12/22/06 for NPDES

16. No Cost Reclamation Agreement to be entered into between Matoaka or Oxford Mining
    Company, Inc. with the West Virginia Department of Environmental Protection.
    Signed 12/07/06

**SCHEDULE 3.8(b) - Government Approvals - Post-Closing Date**

1. Mountaineer Pocahontas No. 3 Mine
   State ID Pending
   MSHA ID 46-09210

2. Mountaineer Pocahontas No. 3 Mine
   All Plans Pending

## SCHEDULE 3.10(a) - Real Property - Owned

That certain property generally referred to by the Borrower as its office and as more specifically described on that certain Deed dated July 19, 2005 between MeadWestvaco Corporation, as Grantor, and Greenbrier Smokeless Coal Mining, L.L.C., as Grantee.

That certain 222.32 acre tract described on that certain Deed dated August 30, 2006. between MeadWestvaco Corporation, as Grantor, and Matoaka Land Company, LLC, as Grantee.

**SCHEDULE 3.10(b) - Real Property - Leased**

1.      Lease dated October 15, 2004, as amended by Amendment No. 1 dated June 18, 2006 by and between MeadWestvaco Corporation, as Lessor, and Matoaka Land Company, LLC, as Lessee.

2.      Lease dated May 5, 2005 by and between MeadWestvaco Corporation, as Lessor and Matoaka Land Company, LLC, as Lessee.

3.      Lease dated July 1, 2006 by and between MeadWestvaco Corporation, as Lessor and Matoaka Land Company, LLC, as Lessee.

**SCHEDULE 3.18(a) - Subsidiaries**

| Borrower's Subsidiary | Ownership | Name and jurisdiction of organization or formation | Number of shares of each class of Capital Stock authorized | Number of shares of each class of Capital Stock outstanding |
|---|---|---|---|---|
| Greenbrier Smokeless Coal Mining, L.L.C. | Greenbrier Minerals, LLC (100%) | Delaware | N/A | N/A |
| Matoaka Land Company, LLC | Greenbrier Minerals, LLC (100%) | Delaware | N/A | N/A |
| Powhatan Mid-Vol Coal Sales, L.L.C. | Greenbrier Minerals, LLC (100%) | Delaware | N/A | N/A |

### SCHEDULE 3.20(a) - Environmental and Mining Permits

Obligor:  Greenbrier Smokeless Coal Mining, L.L.C.:

1.     Permit:  Mountaineer No. 1 Load-out Facility Permit No. O-3006-05, NPDES No.
       WV1021842

       MSHA ID 46-09175

       Issued By:  WVDEP
       Issued:  2-13-06 for SMA, 1-20-06 for NPDES, 2-21-06 for 401 Certification

              Issued By:  USACE
              Issued:  5-16-06 for 404 IP

2.     Permit:  Mountaineer No. 1 Preparation Plant Facility Permit No. O-3010-05;
       Mountaineer Haul Road No. 1 Permit No. O-3011-05; NPDES No. WV1021885

       MSHA ID 46-09125 (State ID: O-3010-05)

       Issued By:  WVDEP
       Issued:  5-30-06 for SMA, 4-27-06 for NPDES, 8-11-06 for 401 Certification

              Issued By:  USACE
              Issued:  10/08/2006 for 404 IP

3.     Permit:  Mountaineer Pocahontas No. 1 Deep Mine Permit No. U-3012-05; Mountaineer
       Haul Road No. 1A Permit No. O-3013-05; NPDES No. WV1021893

       MSHA ID 46-09172 (State ID: U-3012-05A)

       Issued By:  WVDEP
       Issued:  6-8-06 for SMA, 6-14-06 for NPDES, 8-11-06 for 401 Certification

              Issued By:  USACE
              Issued:  10/08/2006 for 404 IP

4.     Permit:  Mountaineer No. 1 Refuse Disposal Facility SMA No. O-3021-05; Mountaineer
       Haul Road No. 2 SMA No. O-3022-05; Mountaineer Haul Road No. 3 SMA No. O-3023-
       06; NPDES No. WV1021974

       Issued By:  WVDEP
       Issued:  Pending for SMA, Pending for NPDES, 8-11-06 for 401 Certification

              Issued By:  USACE
              Issued:  10/08/2006 for 404 IP, Pending correction changes

5.     Permit:  Buck Lilly Surface Mine SMA No. S-3008-05; NPDES No. WV1021869

Issued By: WVDEP
Issued: Pending for SMA, Pending for NPDES

6.    Permit: Mountaineer Pocahontas Deep Mine No. 2 Permit No. U-3007-05, NPDES No.
WV1021851

Issued By: WVDEP
Issued: 2-13-06 for SMA, 1-31-06 for NPDES, 2-21-06 for 401 Certification

Issued By: USACE
Issued: 5-16-06 for 404 IP

Issued By: MSHA
Issued: No. 46-09154 begin date of 3-23-06

7.    Permit: Greenbrier Complex Air Quality Permit; Facility ID No. 025-00068
Issued By: WVDEP
Issued: 3-13-06

8.    Permit: Permit No. 09-05-0371, CR1, MP 4.38, Greenbrier County
Issued By: WVDOT, Division of Highways
Issued: 9-14-05

9.    Permit: Mitigation and Compensation Agreement
Issued By: WVDEP
Issued: February 1, 2006

10.    Permit: Mitigation and Compensation Agreement in connection with WVNPDES Nos.
WV 1021885, WV 1021893 and WV 1021974; Article 3 Nos. O-3010-05, O-3011-05, U-
3012-05, O-3013-05, O-3021-05, O-3022-05 and O-3023-05
Issued By: WVDEP
Issued: August 11, 2006

11.    Permit: General Mitigation Plan Agreement in connection with WVNPDES Nos. WV
1021885, WV 1021893 and WV 1021974; Article 3 Nos. O-3010-05, O-3011-05, U-
3012-05, O-3013-05, O-3021-05, O-3022-05 and O-3023-05; and Associated Application
WV 1021893-NP401(2)
Issued by: WVDEP
Issued: August 11, 2006

## SCHEDULE 3.27 - Bank Accounts

| Grantor | Bank | Acct Name | Acct No. |
|---------|------|-----------|----------|
| Greenbrier Minerals, LLC | The National Bank of Blacksburg | Operating | 1110733 |
| Greenbrier Minerals, LLC | City National Bank | Payroll | 8002061888 |
| Greenbrier Smokeless Coal Mining, L.L.C. | The National Bank of Blacksburg | Operating | 7528698 |
| Greenbrier Smokeless Coal Mining, L.L.C. | City National Bank | Miscellaneous | 8002062076 |
| Powhatan Mid-Vol Coal Sales, L.L.C. | The National Bank of Blacksburg | Operating | 7528714 |
| Matoaka Land Company, LLC | The National Bank of Blacksburg | Operating | 7528706 |

**SCHEDULE 3.28 - Coal Marketing Contracts**

1.  Sales Agency Agreement dated May 19, 2004 between Powhatan Mid-Vol Coal Sales, L.L.C. and Crown Coal & Coke Company.

2.  Sales Agency Agreement dated June 1, 2004 between Powhatan Mid-Vol Coal Sales, L.L.C. and D.L.-Man bvba.

3.  Coal Sales Agreement dated June 20, 2005 between Powhatan Mid-Vol Coal Sales, L.L.C. and Dofasco Inc.

4.  Coal Sales Agreement dated September 9, 2005 between Powhatan Mid-Vol Coal Sales, L.L.C. and United States Steel Corporation.

5.  Coal Sales Agreement dated April 1, 2006 between Powhatan Mid-Vol Coal Sales, L.L.C. and Indiana Harbor Coke Company, L.P.

## SCHEDULE 3.30 - Material Agreements

### MATERIAL PROJECT DOCUMENTS – FUNDING DATE

A.    Construction Contracts

| | Description | Date |
|---|---|---|
| 1. | Design and Construction Agreement between Greenbrier Smokeless Coal Mining, L.L.C., a Delaware limited liability company, and Sedgman, LLC, a Pennsylvania limited liability company | June 29, 2006 |
| 2. | Remote Monitoring and Technical Services Agreement between Greenbrier Smokeless Coal Mining, L.L.C., a Delaware limited liability company, and Far East Processing, LLC, a Pennsylvania limited liability company | June 29, 2006 |
| 3. | Thyssen Mining Construction of Canada Ltd. Ventilation Shaft Construction | April 18, 2007 |
| 4. | Atlas Railroad Construction Co. for: CSX Track Rehab Crossings Rehab Loadout Track Construction CSX Track Rehab Extension | Various |

B.    Operating Agreements

| | Description | Date |
|---|---|---|
| 1. | Certificate of Formation of Greenbrier Minerals, LLC, as amended, as certified by the Delaware Secretary of State | Certified August 11, 2006 |
| 2. | Operating Agreement for Greenbrier Minerals, LLC | July 25, 2006 |
| 3. | Certificate of Formation of Greenbrier Smokeless Coal Mining, L.L.C., as amended, as certified by the Delaware Secretary of State | Certified August 11, 2006 |
| 4. | Amended and Restated Operating Agreement for Greenbrier Smokeless Coal Mining, L.L.C. by Greenbrier Minerals, LLC | July 25, 2006 |
| 5. | Certificate of Formation of Matoaka Land Company, LLC as certified by the Delaware Secretary of State | Certified August 11, 2006 |

| | Description | Date |
|---|---|---|
| 6. | Amended and Restated Operating Agreement for Matoaka Land Company, LLC by Greenbrier Minerals, LLC | July 25, 2006 |
| 7. | Certificate of Formation of POWHATAN MID-VOL COAL SALES, L.L.C., as amended, as certified by the Delaware Secretary of State | Certified August 11, 2006 |
| 8. | Amended and Restated Operating Agreement for POWHATAN MID-VOL COAL SALES, L.L.C. by Greenbrier Minerals, LLC | July 25, 2006 |
| 9. | Certificate of Formation of Greenbrier Minerals Holdings, LLC as certified by the Delaware Secretary of State | Certified August 11, 2006 |
| 10. | Amended and Restated Operating Agreement for Greenbrier Minerals Holdings, LLC | July 25, 2006, as amended May 1, 2007 |

C. Coal Supply Contracts

| | Description | Date |
|---|---|---|
| 1. | Dofasco Coal Sales Agreement, Purchase Order Z00006368-16 between POWHATAN MID-VOL COAL SALES, L.L.C. and Dofasco Inc., and Attachment 1 thereto | June 20, 2005 |
| 2. | Coal Sales Agreement between POWHATAN MID-VOL COAL SALES, L.L.C. and Indiana Harbor Coke Company, L.P. | April 1, 2006 |
| | Guaranty of Buyer's Obligations by Sun Coke Company | [undated] |
| | Guaranty [of] Seller's Obligations by Greenbrier Minerals, LLC | [undated] |
| 3. | Coal Supply Agreement between POWHATAN MID-VOL COAL SALES, L.L.C. and United States Steel Corporation and joined by Greenbrier Minerals, L.L.C. [sic] | September 9, 2005 |
| 4. | Coal Supplier Standard Terms and Conditions between POWHATAN MID-VOL COAL SALES, L.L.C. and United States Steel Corporation, and joined by Greenbrier Minerals, L.L.C. [sic] | September 14, 2005 |

D.    <u>Orix Leases</u>

    <u>Description</u>          <u>Date</u>

1.    Master Lease Agreement between Greenbrier Smokeless Coal Mining, L.L.C. and ORIX Financial Services, Inc. together with the following:

    (a)    Equipment Schedule No. 1, together with all Exhibits and Riders attached thereto, and in addition, the following: — July 12, 2005

          Acceptance Date July 14, 2005

        (i).    Certificate of Acceptance of Greenbrier Smokeless Coal Mining, LLC — July 12, 2005

    (b)    Limited Liability Company Certificates and Agreements of Greenbrier Minerals, LLC individually and on behalf of each of the following:

        (i).    Greenbrier Smokeless Coal Mining, L.L.C. — July 12, 2005

        (ii).    POWHATAN MID-VOL COAL SALES, L.L.C. — July 12, 2005

        (iii).    Matoaka Land Company, LLC — July 12, 2005

    (c)    Guaranty of Matoaka Land Company, LLC in favor of ORIX Financial Services, Inc. — July 12, 2005

    (d)    Guaranty of Greenbrier Smokeless Coal Mining LLC in favor of ORIX Financial Services, Inc. — July 12, 2005

    (e)    Equipment Schedule No. 2, together with all Exhibits and Riders attached thereto, and in addition, the following: — July 22, 2005

          Acceptance Date July 22, 2005

        (i).    Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C. — July 22, 2005

| Description | Date |
|---|---|
| (f)  Equipment Schedule No. 3, together with all Exhibits and Riders attached thereto, and in addition, the following: | August 19, 2005 |
| | Acceptance Date August 19, 2005 |
|     (i).  Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C. | August 19, 2005 |
| (g)  Equipment Schedule No. 4, together with all Exhibits and Riders attached thereto, and in addition, the following: | September 30, 2005 |
| | Acceptance Date September 30, 2005 |
|     (i).  Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C. | September 29, 2005 |
| (h)  Equipment Schedule No. 5, together with all Exhibits and Riders attached thereto, and in addition, the following: | October 18, 2005 |
| | Acceptance Date October 18, 2005 |
|     (i).  Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C. | October 18, 2005 |
| (i)  Equipment Schedule No. 6, together with all Exhibits and Riders attached thereto, and in addition, the following: | November 1 6, 2005 |
| | Acceptance Date [Undated], 2005 |
|     (i).  Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C. | November 16, 2005 |

| Description | Date |
|---|---|
| (j)   Equipment Schedule No. 7, together with all Exhibits and Riders attached thereto, and in addition, the following: | December 9, 2005 |
| | Acceptance Date December 9, 2005 |
|     (i).   Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C. | December 8, 2005 |
| (k)   Equipment Schedule No. 8, together with all Exhibits and Riders attached thereto, and in addition, the following: | December 13, 2005 |
| | Acceptance Date December 12, 2005 |
|     (i).   Certificate of Acceptance of Greenbrier Smokeless Coal Mining, L.L.C. | December 12, 2005 |
| (l)   Rider X to Master Lease Agreement, dated as of July 8, 2005: | December 12, 2005 |

E.   Midland Project Documents

| | Description | Date |
|---|---|---|
| 1. | Coal Processing Agreement between Midland Trail Resources, LLC and Greenbrier Smokeless Coal Mining, L.L.C. | July 20, 2006 |
| 2. | Administrative Services and Equipment Agreement between Midland Trail Resources, LLC and Greenbrier Minerals, LLC | July 20, 2006 |
| 3. | Contract Mining Agreement between Greenbrier Smokeless Coal Mining, L.L.C. and Midland Trail Resources, LLC | July 20, 2006 |
| 4. | Coal Sales Agreement between Powhatan Mid-Vol Coal Sales, L.L.C. and Midland Trail Resources, LLC | July 20, 2006, as amended January 29, 2007 |

| | | |
|---|---|---|
| 5. | Midland Undertaking Agreement between Midland Trail Resources, LLC and Greenbrier Minerals, LLC | May 1, 2007 |

F.  Project Documents with an Affiliate of the Borrower or any Borrower Subsidiary

| | Description | Date |
|---|---|---|
| 1. | Agreement for Advising Services between Greenbrier Minerals, LLC and Monarch Financial Corporation, as amended | March 22, 2004, as amended as of March 22, 2006 |
| 2. | Coal Processing Agreement between Midland Trail Resources, LLC and Greenbrier Smokeless Coal Mining, L.L.C. | July 20, 2006 |
| 3. | Administrative Services and Equipment Agreement between Midland Trail Resources, LLC and Greenbrier Minerals, LLC | July 20, 2006 |
| 4. | Coal Sales Agreement between Powhatan Mid-Vol Coal Sales, L.L.C. and Midland Trail Resources, LLC | July 20, 2006 |
| 5. | Contract Mining Agreement between Greenbrier Smokeless Coal Mining, L.L.C. and Midland Trail Resources, LLC | July 20, 2006 |
| 6. | $4,000,000 Promissory Note of Midland Trail Resources, LLC payable to Greenbrier Minerals, LLC | June 22, 2006 |
| 7. | $1,000,000 Promissory Note of Midland Trail Resources, LLC payable to Greenbrier Minerals, LLC | August 17, 2006 |

G.  Leases or Other Agreement with Respect to Easement Properties

| | Description | Date |
|---|---|---|
| 1. | Lease between MeadWestvaco Corporation, as Lessor, and Matoaka Land Company, LLC, as Lessee, as amended by Amendment No. 1 dated June 18, 2006 | October 15, 2004 |
| 2. | Lease between MeadWestvaco Corporation, as Lessor, and Matoaka Land Company, LLC, as Lessee | May 5, 2005 |
| 3. | Lease between MeadWestvaco Corporation, as Lessor, and Matoaka Land Company, LLC, as Lessee | July 1, 2006 |

| | | |
|---|---|---|
| 4. | Agreement between MeadWestvaco Corporation and Matoaka Land Company, LLC pertaining to $200,000 escrow | July 1, 2006 |

H.   Other Credit Support Instruments

Disclosed elsewhere in this Schedule 3.30, in addition the following:

| | Description | Date |
|---|---|---|
| 1. | Guaranty of Indianan Harbor Coke Company, L.P.'s obligations to POWHATAN MID-VOL COAL SALES, L.L.C. by Sun Coke Company | undated but delivered in connection with the April 1, 2006 Coal Sales Agreement |
| 2. | Guaranty of POWHATAN MID-VOL COAL SALES, L.L.C.'s obligations to Indianan Harbor Coke Company, by Greenbrier Minerals, LLC | undated but delivered in connection with the April 1, 2006 Coal Sales Agreement |

I. Other Agreements

| | | |
|---|---|---|
| 1. | Tatum, L.L.C.<br>Financial Consulting with Greenbrier Minerals, L.L.C. | April 17, 2007 |
| 2. | Security Agreement by and between Midland Trail Resources, LLC and Greenbrier Minerals, L.L.C., POWHATAN MID-VOL COAL SALES, L.L.C., Matoaka Land Company, L.L.C. and Greenbrier Smokeless Coal Mining, L.L.C. | May 1, 2007 |

**SCHEDULE 5.6(a) - Mines**

Mountaineer Pocahontas #1 - This mine facility is depicted on the map separately delivered to the Independent Engineer.

Mountaineer Pocahontas #2 - This mine facility is depicted on the map separately delivered to the Independent Engineer.

Mountaineer Pocahontas #3 - This mine facility is depicted on the map separately delivered to the Independent Engineer.

Buck Lilly - This mine facility is depicted on the map separately delivered to the Independent Engineer.

**SCHEDULE 7(h)(i) - Required Payments to Employee Welfare Benefit Plans**

There is a discretionary 401 (k) plan.  No Defined Benefits

## SCHEDULE 7(h)(ii) - Required Payments to Multiemployer Plans

None

**Exhibit "B"**

AMENDMENT NO. 7 TO
AMENDED AND RESTATED CREDIT AGREEMENT

This AMENDMENT NO. 7 TO AMENDED AND RESTATED CREDIT AGREEMENT
(this "*Amendment*"), dated as of June 3, 2008, is by and among GREENBRIER MINERALS,
LLC, a Delaware limited liability company ("*Borrower*"), the other Credit Parties party hereto, the
several banks and other financial institutions or entities from time to time party to this Agreement
(the "*Lenders*"), and LEHMAN COMMERCIAL PAPER INC., as the administrative agent (in such
capacity, the "*Administrative Agent*") under that certain Credit Agreement (as defined below);

WHEREAS, Borrower, the other Credit Parties, the Lenders and the Administrative Agent
are parties to that certain Amended and Restated Credit Agreement, dated as of May 1, 2007, as
amended by Amendment No. 1 to Credit Agreement, dated as of July 27, 2007, as further amended
by Amendment No. 2 to Credit Agreement, dated as of August 31, 2007, as further amended by
Amendment No. 3 to Credit Agreement, dated as of September 28, 2007, as further amended by
Amendment No. 4 to Credit Agreement, dated as of October 31, 2007, as further amended by
Amendment No. 5 to the Credit Agreement dated as of December 21, 2007, as further amended
by Amendment No. 6 to the Credit Agreement dated as of April 29, 2008 (as may be further
amended, restated or otherwise modified from time to time, the "*Credit Agreement*");

WHEREAS, the aggregate outstanding principal balance of the Term B Loans as of the
date of this Amendment, and prior to giving effect to the amendments hereunder, is $39,000,000
and the Lenders' aggregate Term B Commitments have been reduced to zero in connection with
such borrowings;

WHEREAS, Borrower has requested that the Lenders increase their aggregate Term B
Commitments as of the Seventh Amendment Closing Date to $50,000,000; and

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual covenants and
agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of
which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    *Defined Terms*

        (a)    Capitalized terms used but not defined in this Amendment shall have the
meanings ascribed to such terms in the Credit Agreement. Unless the context of this
Amendment clearly requires otherwise, references to the plural include the singular; references
to the singular include the plural; the words "include," "includes," and "including" will be
deemed to be followed by "without limitation"; and the term "or" has, except where otherwise
indicated, the inclusive meaning represented by the phrase "and/or". The principles of
interpretation set forth in Section 1.2 of the Credit Agreement shall apply to the provisions of
this Amendment.

        (b)    Each reference to "hereof", "hereunder", "herein" and "hereby" and each
other similar reference contained in the Credit Agreement, each reference to "this Agreement"
or "the Credit Agreement" and each other similar reference contained in the Agreement or any
other Loan Document and each reference contained in this Amendment to the "Credit
Agreement" shall on and after the Seventh Amendment Closing Date refer to the Credit

Agreement as amended by this Amendment  Any notices, requests, certificates and other instruments executed and delivered on or after the Seventh Amendment Closing Date may refer to the Credit Agreement without making specific reference to this Amendment but nevertheless all such references shall mean the Credit Agreement as amended by this Amendment unless the context otherwise requires

2.    *Amendments to Credit Agreement*.  In reliance on the representations and warranties set forth in Section 3 below and subject to the satisfaction of the conditions set forth in Section 4 below, the parties hereby agree to the following amendments.

(a)    The cover page is hereby amended by replacing the amount "$156,000,000" where it appears therein with the amount "$206,000,000".

(b)    Section 1.1 is hereby amended by the addition of the following definitions, each in proper alphabetical order:

"*LIBOR*: for each LIBOR Period, a rate of interest determined by the Administrative Agent equal to the greater of:

(a) 3.00%; and

(b) (i) the offered rate for three month deposits in  Dollars that appears on Telerate Page 3750 as of 11:00 a.m. (London time) on the second full LIBOR Business Day preceding the first day of each LIBOR Period (unless such date is not a Business Day, in which event the next succeeding Business Day will be used); divided by

(ii) a number equal to 1.0 minus the aggregate (but without duplication) of the rates (expressed as a decimal fraction) of reserve requirements in effect on the day that is two LIBOR Business Days prior to the beginning of such LIBOR Period (including basic, supplemental, marginal and emergency reserves under any regulations of the Board or other Governmental Authority having jurisdiction with respect thereto, as now and from time to time in effect) for Eurocurrency funding (currently referred to as "Eurocurrency Liabilities" in Regulation D of the Board) that are required to be maintained by a member bank of the Federal Reserve System.

If such interest rates shall cease to be available from Telerate News Service, LIBOR shall be determined from such comparable publicly available financial reporting service for displaying any Eurodollar rates as shall be selected by the Administrative Agent.

*Seventh Amendment*: that certain Amendment No. 7 to the Credit Agreement, dated as of June 3, 2008, by and among Borrower, the other Credit Parties party thereto, the Lenders and the Administrative Agent.

*Seventh Amendment Closing Date*:  the date on which all of the

conditions precedent to the conditions set forth in the Seventh Amendment shall have been satisfied, which date shall not be later than June 3, 2008."

(c)    Section 1.1 of the Credit Agreement is hereby amended by the amendment and restatement of the following terms in their entirety as follows:

"*Guaranty Confirmation*: those certain Confirmations of Guarantee and Security Agreement made by any Credit Party in favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties dated as of August 31, 2007, September 28, 2007, October 31, 2007, December 21, 2007, April 29, 2008, and June 3, 2008, in each case, in form and substance acceptable to the Administrative Agent.

*Mortgage Amendments*: that certain (i) First Amendment to Amended and Restated Credit Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining, LLC, dated effective as of August 31, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (ii) First Amendment to Second Amended and Restated Fee and Leasehold Credit Line Deed of Trust, Financing Statement On As Extracted Minerals, Assignment of Leases and Rents and Fixture Filing as to Matoaka Land Company, LLC, dated effective as of August 31, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (iii) Second Amendment to Amended and Restated Credit Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining, LLC, dated effective as of September 28, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties;    (iv) Second Amendment to Second Amended and Restated Fee and Leasehold Credit Line Deed of Trust, Financing Statement On As Extracted Minerals, Assignment of Leases and Rents and Fixture Filing as to Matoaka Land Company, LLC, dated effective as of September 28, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (v) Third Amendment to Amended and Restated Credit Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining, LLC, dated effective as of October 31, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (vi) Third Amendment to Second Amended and Restated Fee and Leasehold Credit Line Deed of Trust, Financing Statement On As Extracted Minerals, Assignment of Leases and Rents and Fixture Filing as to Matoaka Land Company, LLC, dated effective as of October 31, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (vii) Fourth Amendment to Amended and Restated Credit Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining, LLC, dated effective as of December 21, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (viii) Fourth Amendment to Second Amended and

Restated Fee and Leasehold Credit Line Deed of Trust, Financing
Statement On As Extracted Minerals, Assignment of Leases and Rents and
Fixture Filing as to Matoaka Land Company, LLC, dated effective as of
December 21, 2007, favor of, or for the benefit of, the Administrative
Agent for the benefit of the Secured Parties; (ix) Fifth Amendment to
Amended and Restated Credit Line Deed of Trust, Assignment of Leases
and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining,
LLC, dated effective as of April 29, 2008, favor of, or for the benefit of,
the Administrative Agent for the benefit of the Secured Parties; and (x)
Fifth Amendment to Second Amended and Restated Fee and Leasehold
Credit Line Deed of Trust, Financing Statement On As Extracted
Minerals, Assignment of Leases and Rents and Fixture Filing as to
Matoaka Land Company, LLC, dated effective as of April 29, 2008, favor
of, or for the benefit of, the Administrative Agent for the benefit of the
Secured Parties; (xi) Sixth Amendment to Amended and Restated Credit
Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as
to Greenbrier Smokeless Coal Mining, LLC, dated effective as of June 3,
2008, favor of, or for the benefit of, the Administrative Agent for the
benefit of the Secured Parties; and (xii) Sixth Amendment to Second
Amended and Restated Fee and Leasehold Credit Line Deed of Trust,
Financing Statement On As Extracted Minerals, Assignment of Leases and
Rents and Fixture Filing as to Matoaka Land Company, LLC, dated
effective as of June 3, 2008, favor of, or for the benefit of, the
Administrative Agent for the benefit of the Secured Parties.

    ***Term B Commitment***: as to any Lender, the obligation of such
Lender to make a Term B Loan to Borrower hereunder on or after the
Seventh Amendment Closing Date in an aggregate principal amount not to
exceed the amount set forth under the heading "Term B Commitment"
opposite such Lender's name on Annex I hereto, or, as the case may be, in
the Assignment and Acceptance pursuant to which such Lender became a
party hereto, as the same may be changed from time to time pursuant to
the terms hereof  The aggregate amount of the Term B Commitments as
of the Seventh Amendment Closing Date and after giving effect to the
amendments thereunder is $50,000,000, and after giving effect to the
borrowing of Term B Loans on the date hereof is $45,000,000."

    (d)    Section 2.1(b) of the Credit Agreement is hereby amended and restated as
follows:

"As of the Seventh Amendment Closing Date (but without giving effect to
any borrowings on the date thereof), the aggregate principal amount of all
Term B Loans equals $39,000,000.  Subject to the terms and conditions of
the Seventh Amendment, each Lender severally agrees to make a term
loan to Borrower on the Seventh Amendment Closing Date in an
aggregate principal amount equal to such Lender's Term B Loan
Percentage of $5,000,000. After the Seventh Amendment Closing Date,

subject to the terms and conditions of this Agreement (as amended by the Seventh Amendment), each Lender severally agrees to make term loans to the Borrower in an aggregate principal amount not to exceed such Lender's Term B Commitment (after giving effect to the borrowing on the Seventh Amendment Closing Date)  Such term loans in the preceding two sentences, the "*Term B Loans*"  Once repaid, Term B Loans may not be reborrowed and the Term B Commitment, once terminated or reduced, may not be reinstated."

(e)    Section 3 22(c) of the Credit Agreement is hereby amended by replacing the last sentence thereof, with the following:

"The Original Mortgages, as amended and restated by the Mortgages, constitutes a fully perfected Lien on, and security interest in, all right, title and interest of the Credit Parties in the Properties described therein and the proceeds thereof, as security for the principal amount of $156,000,000 of the Obligations, and upon execution and delivery of the Sixth Amendment, and the filing of the Mortgage Amendments executed and delivered in connection therewith, shall constitute a fully perfected Lien on, and security in, all right, title and interest of the Credit Parties in the Properties described therein and the proceeds thereof, as security for all Obligations, including the principal amount of $206,000,000 of the Obligations, in each case prior and superior in right to any other Person (other than Persons holding Liens or other encumbrances or rights permitted by the relevant Mortgage)."

(f)    Section 4.2 of the Credit Agreement is hereby amended by adding the following new paragraphs thereto:

"(e)    The Lenders shall be satisfied with the business prospects of Borrower.

(f)    The Lenders shall be satisfied with the progress of Borrower in developing a plan to develop the reserves known as Buck Lilly, satisfactory to the Lenders.

(g)    The Lenders shall be satisfied with the status and termination provisions of all coal supply agreements including any amendments thereto."

(g)    Section 6.1 of the Credit Agreement is hereby amended and restated in its entirety as follows:

"(a)    <u>Consolidated Interest Coverage Ratio</u>.  Permit the Consolidated Interest Coverage Ratio for any period of four consecutive fiscal quarters of Borrower, commencing March 31, 2009, to be less than 2.50:1.00.

(b)    <u>Consolidated Leverage Ratio</u>.  Permit the Consolidated
Leverage Ratio as of the last day of any period of four consecutive
calendar quarters, commencing September 30, 2008, to exceed the
following respective ratio for the following respective periods; *provided*
that, notwithstanding the foregoing, for the fiscal quarter beginning July 1,
2008, the calculation of Consolidated EBITDA shall be calculated on an
annualized basis so that (i) for the fiscal quarter ending September 30,
2008, Consolidated EBITDA shall be determined for such quarter and
multiplied by four, (ii) for the fiscal quarter ending December 31, 2008,
Consolidated EBITDA shall be determined for the two fiscal quarters
ending December 31, 2008, and multiplied by two and (iii) for the fiscal
quarter ending March 31, 2009, Consolidated EBITDA shall be
determined for the three fiscal quarters ending March 31, 2009 and
multiplied by four-thirds:

| Period | Ratio |
|---|---|
| From September 30, 2008 through December 31, 2008.................................. | 6.25 to 1.00 |
| From January 1, 2009 through March 31, 2009....................................... | 4.00 to 1.00 |
| From April 1, 2009 through December 31, 2009...... .. .. ... ... ... ... ..... | 3.00 to 1.00 |
| From January 1, 2010 and thereafter........ | 2.00 to 1.00 |

(c)    <u>Minimum Current Ratio</u>. At any time during the period
commencing on October 1, 2008 and ending on December 31, 2008,
permit the Current Ratio to be less than 1.25 to 1.0; and on or at any time
after January 1,2009 permit the Current Ratio to be less than 1.75 to 1.0."

(h)    Article VII of the Credit Agreement shall be amended by adding the
following additional Event of Default immediately following clause (r) thereof:

"(s)    The modifications (as contemplated by the Seventh Amendment)
of all of the Credit Parties' long-term coal supply agreements have not been effected on or before
July 3, 2008."

(i)    Annex I to the Credit Agreement is hereby amended and restated in its
entirety by Annex I attached to this Amendment

3.    *Representations and Warranties of Borrower*  Each Credit Party, jointly and
severally, represents and warrants as of the date hereof and on the Seventh Amendment Closing
Date to the Administrative Agent and each Lender that:

(a)    Each Credit Party (i) has the power and authority, and the legal right, to
make, deliver and perform this Amendment and (ii) has taken all necessary corporate or other

action to authorize the execution, delivery and performance of this Amendment;

(b)    No consent or authorization of, filing with, notice to or other act by or in respect of, any Governmental Authority or any other Person is required to be obtained by a Credit Party in connection with the execution, delivery, performance, validity or enforceability of this Amendment;

(c)    This Amendment (i) has been duly executed and delivered on behalf of each Credit Party and (ii) constitutes a legal, valid and binding obligation of each Credit Party, enforceable against each such Credit Party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law);

(d)    The execution, delivery and performance of this Amendment, the borrowings under the Credit Agreement in connection herewith, and the use of the proceeds thereof will not result in a violation by any Credit Party of any Requirement of Law or any Contractual Obligation of any Credit Party and will not result in, or require, the creation or imposition of any Lien on any of its Properties or revenues pursuant to any Requirement of Law or any such Contractual Obligation (other than the Liens created by the Security Documents);

(e)    After giving effect to the amendments set forth herein, the representations and warranties of the Credit Parties contained in the Loan Documents are true and accurate as of the date hereof with the same force and effect as if such had been made on and as of the date hereof;

(f)    Each Credit Party is in compliance in all material respects with all terms and provisions set forth in the Loan Documents to which such Credit Party is a party on its part to be observed or performed; and

(g)    No Default or Event of Default has occurred and is continuing.

4.    *Conditions Precedent.* The effectiveness of this Amendment is subject to the satisfaction of the following conditions precedent:

(a)    The Administrative Agent shall have received this Amendment, the Guaranty Confirmations, a Fifth Amendment to Amended and Restated Credit Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining, LLC, dated effective as of Sixth Amendment Closing Date, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties, and a Fifth Amendment to Second Amended and Restated Fee and Leasehold Credit Line Deed of Trust, Financing Statement On As Extracted Minerals, Assignment of Leases and Rents and Fixture Filing as to Matoaka Land Company, LLC, dated effective as of Sixth Amendment Closing Date, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties, in each case, in form and substance acceptable to the Administrative Agent in its sole and absolute discretion and duly executed and delivered by a Responsible Officer of the applicable Credit Parties;

(b)    All Permits or other approvals necessary to be obtained by Credit Parties in connection with the execution, delivery and performance of the documents listed in Section 4(a) of this Amendment shall have been obtained and be in full force and effect;

(c)    Since the Closing Date, no event or circumstance having a Material Adverse Effect shall have occurred and shall be continuing;

(d)    After giving effect to the amendments set forth herein, the representations and warranties of the Credit Parties contained in the Loan Documents are true and accurate as of the date hereof with the same force and effect as if such had been made on and as of the date hereof;

(e)    The Administrative Agent shall have received written confirmation, satisfactory to the Administrative Agent in its sole discretion, that all of the Credit Parties' customers under long-term coal supply agreements have approved modifications of such contracts in a manner that will permit the Borrower (based upon projections acceptable to the Administrative Agent in its sole discretion) to meet its obligations under the Credit Agreement (including all financial covenants).

(f)    The Credit Parties shall pay, or cause to be paid, a fee to the Administrative Agent for the account of the Lenders on the Closing Date equal to $250,000, which fee, the Credit Parties acknowledge, the Administrative Agent shall be entitled to net from the proceeds of any further Loans advanced to the Credit Parties under the Credit Agreement; and

(g)    After giving effect to the amendments set forth herein, no Default or Event of Default shall have occurred and be continuing on the Seventh Amendment Closing Date or will occur after giving effect to the extensions of credit requested to be made on the Seventh Amendment Closing Date and the execution and delivery of this Amendment by the parties hereto.

5.    *Loan Documents.*  This Amendment shall constitute a Loan Document, as such term is defined in the Credit Agreement.

(b)    This Amendment is not intended to nor shall it be construed to create a novation or accord and satisfaction with respect to any of the Obligations.

(c)    Each Credit Party hereby reaffirms its obligations under each of the Loan Documents, as the same are amended hereby, and agrees and acknowledges that each such document and all of such obligations thereunder, remains in full force and effect after giving effect to this Amendment.

6.    *Counterparts.*  This Amendment may be executed by one or more parties to this Agreement on any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.  Delivery of an executed signature page of this Amendment by facsimile transmission shall be effective as delivery of a manually executed counterpart hereof.  A set of the copies of this Amendment signed by all the parties shall be lodged with Borrower and the Administrative Agent.

7    *Severability.* Any provision of this Amendment that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8    *Integration.* This Amendment and the other Loan Documents represent the entire agreement of Borrower, the other Credit Parties, the Agents, the Arranger and the Lenders with respect to the subject matter hereof and thereof, and there are no promises, undertakings, representations or warranties by the Arranger, any Agent or any Lender relative to subject matter hereof not expressly set forth or referred to herein or in the other Loan Documents.

9    GOVERNING LAW. THIS AMENDMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.

10.    *Submission To Jurisdiction, Waivers.* Borrower hereby knowingly, voluntarily and intentionally, irrevocably and unconditionally:

(a)    submits for itself and its Property in any legal action or proceeding relating to this Amendment and the other Loan Documents to which its is a party (whether for claims sounding in contract or in tort), or for recognition and enforcement of any judgment in respect thereof, to the nonexclusive general jurisdiction of the courts of the State of New York, the courts of the United States of America for the Southern District of New York, and appellate courts from any thereof;

(b)    consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

(c)    agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to Borrower at its address set forth in Section 9.2 to the Credit Agreement or at such other address of which the Administrative Agent shall have been notified pursuant thereto;

(d)    agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and

(e)    WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LEGAL ACTION OR PROCEEDING REFERRED TO IN THIS SECTION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES.

11.    *Ratification.* Except as expressly modified hereby, the Credit Agreement and each other Loan Document are each hereby ratified and confirmed by the parties hereto and

remain in full force and effect in accordance with the respective terms thereof.

12.     *Survival.* The representations and warranties contained in Section 3 of this Amendment shall survive the execution and delivery of this Amendment and the Seventh Amendment Closing Date

13     *No Other Amendments; Reservation of Rights; No Waiver*  Other than as otherwise expressly provided herein, this Amendment shall not be deemed to operate as an amendment or waiver of, or to prejudice, any right, power, privilege or remedy of any Lender, any Agent or any other Indemnitee under the Agreement or any of the other Loan Documents, nor shall the entering into of this Amendment preclude any such Person from refusing to enter into any further amendments with respect to the Agreement or any of the other Loan Documents. Other than as to otherwise expressly provided herein, this Amendment shall not constitute a waiver of compliance with any covenant or other provision in the Agreement or any other Loan Document or of the occurrence or continuance of any present or future Default or Event of Default.

14.     *Costs; Expenses.*   Subject to and in accordance with Section 9.5 of the Credit Agreement, regardless of whether the transactions contemplated by this Amendment are consummated, Borrower agrees to pay on demand all reasonable out-of-pocket costs and expenses of each Agent and each Lender incurred in connection with the development, preparation, execution and delivery of this Amendment, including the reasonable fees and disbursements and other charges of counsel and consultants to the Agents and charges of Intralinks.

15.     *Headings.* The section headings contained in this Amendment are inserted for convenience only and will not affect in any way the meaning or interpretation of this Amendment.

16.     *Amendments.* This Amendment may not be amended or modified except in the manner specified for an amendment of or modification to the Credit Agreement in Section 9.1 of the Credit Agreement.

*[Signature Page to Follow]*

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed under seal and delivered by their respective duly authorized officers on the date first written above.

GREENBRIER MINERALS HOLDINGS, LLC

By: _____

    Joseph C. Turley, III
    President & CEO


GREENBRIER MINERALS, LLC, as Borrower

By: _____

    Joseph C. Turley, III
    President & CEO


GREENBRIER SMOKELESS COAL MINING,
L.L.C.

By: _____

    Joseph C. Turley, III
    President & CEO


MATOAKA LAND COMPANY LLC

By: _____

    Joseph C. Turley, III
    President & CEO


POWHATAN MID-VOL COAL SALES, L.L.C.

By: _____

    Joseph C. Turley, III
    President & CEO

LEHMAN COMMERCIAL PAPER INC.,
as Administrative Agent and a Lender

By: _____

J. Robert Chambers
Authorized Signatory

Annex 1

Commitments

| Lender | Revolving Credit Commitment | Term A Commitment | Term B Commitment |
|---|---|---|---|
| Lehman Commercial Paper Inc.<br>745 Seventh Avenue<br>New York, New York 10019<br>Attention: Michelle Rosolinsky<br>Facsimile: (646) 758-5015 | $5,000,000 | $0 | $50,000,000 |

H
A
N
D

D
E
L
I
V
E
R
Y

**FILED / RECEIVED**

SEP 2 1 2009

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

_____          _____          _____
RECEIVED BY!                     DATE                             TIME