JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Corinne Ball
Brett Barragate
Richard Engman
Robert Micheletto

Attorneys for Debtor and Debtor in Possession
Lehman Commercial Paper Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
|  | : |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

------------------------------------------------------------------x

**DECLARATION OF JACK MCCARTHY, SR. IN SUPPORT OF MOTION OF DEBTOR LEHMAN COMMERCIAL PAPER INC. PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE FOR AN ORDER ENFORCING THE AUTOMATIC STAY**

Under penalty of perjury, Jack McCarthy, Sr. hereby declares pursuant to section 1746 of title 28 of the United States Code:

1. I am over 18 years of age and I can testify to the following facts based on my personal knowledge and my review of the above-captioned Debtors' business records. I submit this Declaration in support of the *Motion of Debtor Lehman Commercial Paper Inc. ("LCPI") Pursuant to Sections 105(a) and 362 of the Bankruptcy Code for an Order Enforcing the Automatic Stay* (the "Motion") against Greenbrier Minerals Holdings, LLC ("Greenbrier").

2.  I am a Managing Director–International with Alvarez & Marsal Financial Industry Advisory Services LLP ("A&M"). A&M, along with Alvarez & Marsal North America, LLC, have been providing restructuring and general operational and managerial services to Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors, including LCPI (together, the "Debtors"), in connection with their pending chapter 11 cases.

3.  LCPI is the sole secured lender to Greenbrier Minerals, LLC ("Greenbrier Minerals," and together with Greenbrier, the "Company") pursuant to two credit agreements, one dated December 9, 2005, pursuant to which LCPI provided Greenbrier with an initial credit commitment of $10 million (and ultimately increased to $20.5 million), and a second dated May 1, 2007 (the "Credit Agreement"), pursuant to which LCPI provided Greenbrier Minerals with an initial credit commitment of $94 million (and ultimately increased to $206 million).

4.  In addition, LCPI holds 49,000 Class D Units and 49% of the voting and sharing ratios of Greenbrier (collectively, the "Membership Interests"). As a result of its Membership Interests, pursuant to the Amended and Restated Operating Agreement of Greenbrier (the "Operating Agreement"), LCPI has the right to appoint one manager to the Greenbrier Board of Managers (the "Board"), with such manager having five (5) votes.

5.  In March 2009, LCPI appointed me as its representative to the Board. None of the members of the Board or Company counsel challenged LCPI's right to appoint me to serve as a member of the Board.

6.  Moreover, since my appointment to the Board, I have participated without objection from anyone, including the members of the Board or Company counsel, in numerous Board meetings and voted on Company matters on a routine basis.

7. On May 20, 2009, LCPI issued a notice of default, advising Greenbrier Minerals that an "Event of Default" had occurred pursuant to Article VII of the Credit Agreement. Although Greenbrier Minerals did not cure the default, LCPI did not seek to immediately enforce its remedies under the Credit Agreement or the related loan documents.

8. On September 21, 2009, Greenbrier Minerals filed a proof of claim against LCPI in this Court, alleging that LCPI's failure to fund in accordance with the terms of the Credit Agreement constituted a breach of its obligations under the Credit Agreement, causing Greenbrier Minerals to suffer damages.

9. In October 2009, LCPI and Greenbrier began negotiating a proposed Joint Sale and Sharing Agreement ("Sharing Agreement"), pursuant to which Greenbrier Minerals would potentially be sold jointly with Midland Trail Resources, LLC ("Midland"). Joseph C. Turley III ("Turley") (the President and CEO of Greenbrier and Greenbrier Minerals and a member of the Board, holding membership interests in Greenbrier) owns a controlling equity interest in Midland and is also that company's President and CEO.

10. On December 17, 2009, in connection with the negotiation of the terms of the proposed Sharing Agreement, a member of the Board, William Karis, asserted that, as a result of LCPI's chapter 11 filing, LCPI was no longer a member of Greenbrier. LCPI disputed this assertion. Moreover, neither Mr. Karis nor the remaining members of the Board or Company counsel alleged that the Board lacked authority to act on behalf of the Company as a result of LCPI's purported membership termination and, as discussed above, the Board (including me) continued to conduct Company business.

11. On December 22, 2009, more than one year after LCPI filed for bankruptcy, I was designated by the Board to oversee compensation matters involving certain of the Company's executives.

12. On May 25, 2010, the Board decided by a majority of votes (10 to 1) to terminate Turley as the Company's CEO (the "May 25th Vote") and replace him with an independent CEO with significant experience in coal mining. This decision was made because Turley notified LCPI and members of the Board that Midland would not participate in continued negotiations for a joint sale of Greenbrier Minerals and Midland. Specifically, a majority of the members of the Board felt that because of his positions as CEO and part owner of Greenbrier and CEO and majority owner of Midland, Turley was conflicted and unable to impartially and effectively perform his duties at Greenbrier, particularly as it related to pursuing a sale of Greenbrier on a stand alone basis and not as part of a joint sale with Midland as was originally envisioned.

13. On May 29, 2010, in response to the May 25th Vote, Greenbrier, by memorandum (the "Buchanan Ingersoll Memorandum") from Company counsel, formally asserted for the first time that LCPI's Membership Interests in Greenbrier ceased upon LCPI's bankruptcy filing and, as a result of the loss of the Membership Interests, the Board did not have proper authority to act on behalf of the Company because it no longer had a proper voting quorum to conduct Company business. Prior to this time, none of the members of the Board or Company counsel ever asserted that the Board lacked a proper voting quorum to conduct Company business as a result of LCPI's purported loss of the Membership Interests due to its chapter 11 filing.

14. By letter dated June 2, 2010 (the "LCPI Response Letter"), LCPI, through its counsel, responded to the Buchanan Ingersoll Memorandum. Specifically, counsel for LCPI advised that (i) LCPI retained its Membership Interests in Greenbrier notwithstanding the LCPI bankruptcy filing; (ii) those interests are part of LCPI's bankruptcy estate; and (iii) any attempt to deny LCPI of the Membership Interests or the rights afforded to it under the Operating Agreement with respect to those interests would constitute a willful violation of the automatic stay in LCPI's bankruptcy case.

15. Notwithstanding the LCPI Response Letter, the Company has maintained its position that (i) LCPI's Membership Interests terminated upon its bankruptcy filing; and (ii) the Board lacked authority to act on behalf of the Company as a result of such termination, particularly with respect to the May 25th Vote.

16. I have reviewed the Motion and I believe it accurately reflects the facts set forth therein.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 22nd day of June, 2010

_____
Jack McCarthy, Sr.