**Hearing Date and Time:  July 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  July 7, 2010 at 4:00 p.m.(Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                        :

In re                       :       **Chapter 11**
                        :

**LEHMAN BROTHERS HOLDINGS INC., et al.,**   :      **Case No. 08-13555 (JMP)**
                        :

           **Debtors.**       :      **(Jointly Administered)**
                        :

------------------------------------------------------------------x

**NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND**
**RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**FOR AUTHORITY TO ENTER INTO SETTLEMENT  RELATED TO,**
**AND ASSIGN INTEREST IN HERITAGE FIELDS PROPERTY AND**
**TO PURCHASE PARTICIPATION INTERESTS RELATED THERETO**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the

"Motion") of Lehman Brothers Holdings Inc. ("LBHI"), and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors") for an order pursuant to section 363 of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedures

authorizing LBHI (i) to enter into a settlement with Heritage Fields El Toro LLC

("Heritage"), (ii) pursuant to such settlement, to assign its debt interest with respect to the

Heritage Fields project to State Street Bank and Trust Company in exchange for a

payment from Heritage in the approximate amount of $125 million plus additional

consideration, and (iii) to provide interim financing to the Heritage Fields project, will be

held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United

States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One

Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **July 14,**

**2010 at 10:00 a.m. (prevailing Eastern Time)** (the "Hearing").

       PLEASE TAKE FURTHER NOTICE that objections, if any, to the

Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of

the Bankruptcy Court for the Southern District of New York, shall set forth the name of

the objecting party, the basis for the objection and the specific grounds thereof, shall be

filed with the Bankruptcy Court electronically in accordance with General Order M-242

(which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk,

preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-

based word processing format (with two hard copies delivered directly to Chambers), and

shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling

Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP,

767 Fifth Avenue, New York, New York 10153, Attn:  Alfredo R. Perez, Esq., counsel to

the Debtors; (iii) the Office of the United States Trustee for the Southern District of New

York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Andy Velez-

Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and

Tracy Hope Davis; Esq., (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase

Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis

O'Donnell, Esq., and Evan Fleck, Esq., counsel to the official committee of unsecured

creditors appointed in these cases, and (v) all parties who have requested notice in these

chapter 11 cases, so as to be so filed and received by no later than July 7, 2010 at 4:00

p.m. (prevailing Eastern Time) (the "<u>Objection Deadline</u>").

       PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is

not received by the Objection Deadline, the relief requested shall be deemed unopposed,

and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

       PLEASE TAKE FURTHER NOTICE that objecting parties are required

to attend the Hearing, and failure to appear may result in relief being granted or denied

upon default.

Dated: June 22, 2010
     Houston, Texas

                 /s/ Alfredo R. Pérez
                Alfredo R. Pérez
                WEIL, GOTSHAL & MANGES LLP
                700 Louisiana Street, Suite 1600
                Houston, Texas  77002
                Telephone: (713) 546-5000
                Facsimile: (713) 224-9511

                Attorneys for Debtors
                and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                  :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE**
**AND RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE FOR AUTHORITY TO ENTER INTO SETTLEMENT**
**RELATED TO, AND ASSIGN INTEREST IN HERITAGE FIELDS PROPERTY**
**AND TO PURCHASE PARTICIPATION INTERESTS RELATED THERETO**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI"), as debtor and debtor in

possession ("LBHI," and together with its affiliated debtors in the above-referenced

chapter 11 cases, the "Debtors" and, collectively with their non-debtor affiliates,

"Lehman"), moves for authority to enter into a settlement related to the Heritage Fields

Project (as defined herein), to assign its debt interest with respect to the Project to State

Street Bank and Trust Company ("State Street") pursuant thereto, and to purchase up to a

$32 million senior participation interest in an existing first mortgage loan from El Toro

LLC to Heritage Fields El Toro LLC, which will be repaid, in full with interest, upon the closing of the settlement, and respectfully represents:

## Relief Requested

1.      By this Motion, pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), LBHI seeks authority (i) to enter into a settlement (the "Settlement") according to terms substantially similar to those set forth herein and on the Term Sheet (defined herein), with Heritage Fields El Toro LLC ("Heritage"), (ii) pursuant to the Settlement, assign its debt interest with respect to the Heritage Fields Project to State Street in exchange for a payment from Heritage in the amount of approximately $125 million plus additional consideration as set forth herein, and (iii) to provide interim financing to the Project by amending the Amended LBHI Participation Agreement and purchasing the Participation Interests (each as defined herein) up to an aggregate amount of $32 million, which will be repaid, in full, with interest, upon the closing of the Settlement.

## Jurisdiction

2.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

3.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy

2

Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

6.     On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. The Examiner issued a report at his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

7.     On April 14, 2010, the Debtors filed a revised joint chapter 11 plan and disclosure statement [Docket Now. 8330 and 8332].

**Lehman's Business**

8.     Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years,

3

Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

9.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Heritage Fields Background**

10.      Heritage is the owner of Heritage Fields (the "Project"), a 3,723-acre masterplan development in Irvine, California.  On June 26, 2007, El Toro LLC ("El Toro"), at the time, a wholly-owned subsidiary of LBREM REIT Holdings, LLC ("LBREM REIT"), at the time a non-debtor Lehman affiliate, which is no longer under the control of Lehman, entered into a mortgage loan agreement with Heritage pursuant to which El Toro agreed to loan $775 million to Heritage (the "Mortgage Loan").

11.      On June 26, 2007, a portion of the Mortgage Loan was participated to Lehman ALI, Inc. ("ALI") in the amount of $650 million (the "Original Participation"), with the balance remaining with El Toro.[1]  On November 30, 2007 a portion of the Original Participation was further participated to Lehman Brothers Bankhaus AG ("Bankhaus", and the participation to Bankhaus, the "Bankhaus Interest") and thereafter a portion of the Original Participation was sold to State Street for approximately $200 million (the "State Street Interest").

---

[1] As the result of certain intercompany repo transactions, on or around April 24, 2008, Lehman Commercial Paper Inc. became the holder of a portion of the Original Participation, which was later transferred to State Street, as set forth below.

4

12.     On or around May 27, 2008, the Original Participation was terminated and restructured as a secured corporate loan in the maximum principal amount of $650 million (the "Corporate Loan").  LBHI is the lender under the Corporate Loan. The Corporate Loan is secured by certain membership interests of LBREM REIT, in El Toro.

13.     On September 22, 2009 LBREM REIT and El Toro filed certain proofs of claim (the "Proofs of Claim") in the Debtors' chapter 11 cases asserting, among other things, inequitable conduct of LBHI with respect to the conversion of the Original Participation into the Corporate Loan.  In the Proofs of Claim, LBREM REIT and El Toro specifically reserved the right to, among other things, bring against LBHI, without any limitation, any claims and causes of actions, including, but not limited to, claims for breach of fiduciary duties and self-dealing, as well as any right to seek any and all remedies, including, but not limited to, rescission of the Corporate Loan.

14.     On December 11, 2009, certain of LBHI's wholly owned non-debtor subsidiaries transferred their general partnership interests in Lehman Brothers Real Estate Mezzanine Partners, L.P. ("LBREM") and Lehman Brothers Real Estate Mezzanine Partners II, L.P. and the related funds to PCCP, LLC ("PCCP") and certain of its affiliates (the "LBREM Transfer").  As a result of the LBREM Transfer, PCCP acquired indirect management control of LBREM REIT.

15.     On June 18, 2009, State Street filed an adversary proceeding against Lehman captioned *State Street Bank and Trust Company v. Lehman Commercial Paper, Inc.*, Adv. Proc. No. 08-01743 (the "Adversary Proceeding"), which asserted, among other things, ownership in certain assets, including the State Street Interest.

16.     Pursuant to that certain Settlement Agreement dated December 15, 2009 and the *Order Pursuant to Section 105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 9019 Authorizing and Approving of a Settlement Agreement with the Insolvency Administrator of Lehman Brothers Bankhaus AG (in Insolvenz)*, entered by this Court on January 14, 2010 [Docket No. 6665], Bankhaus sold the Bankhaus Interest to LBHI.  As such, LBHI is the sole owner of the Bankhaus Interest.

17.     On December 9, 2009, pursuant to the *Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a) Establishing Procedures to (i) Restructure, (ii) Make New or Additional Debt or Equity Investments in, and/or (iii) Enter into Settlements and Compromises in Connection with Existing Real Estate Investments*, entered by this Court on November 23, 2009 (the "Restructuring Procedures Order") [Docket No.5912], El Toro and LBHI entered into that certain Participation Agreement (the "First LBHI Participation Agreement") pursuant to which El Toro sold to LBHI a participation in the Mortgage Loan in an amount of $3,551,203.23 (the "Initial Participation Interest").

18.     On January 15, 2010, pursuant to the Restructuring Procedures Order, El Toro and LBHI entered into that certain Amended and Restated Participation Agreement, which amended, restated and superseded in its entirety the First Participation Agreement (the "Amended LBHI Participation Agreement"), pursuant to which LBHI agreed to purchase from El Toro additional participation interests (together with the Initial Participation Interest, the "Additional Participation Interests" and each, an "Additional Participation Interest") in the Mortgage Loan, up to an aggregate amount,

6

including the Initial Participation Interest, of $20 million.[2]  The past and future purchase

of the Additional Participation Interests is based on the critical funding needs of the

Project.

19.     Under the authority granted by the Restructuring Procedures

Order, Additional Participation Interests were purchased by LBHI in the aggregate

amount of $16,124,415 on the following dates and in the following approximate amounts:

(i) January 29, 2010 for $3,716,329; (ii) February 12, 2010 for $150,000, (iii) February

17, 2010 for $1,477,373; (iv) March 18, 2010 for $1,532,690; (v) April 9, 2010 for

$5,393,586; (vi) April 30, 2010 for $1,794,661; and (vii) May 28, 2010 for $2,059,776.

20.     The Official Committee of Unsecured Creditors (the "Creditors'

Committee") was aware of and in support of the purchase of each of the Additional

Participation Interests.

21.     Under the Amended LBHI Participation Agreement, the Additional

Participation Interests and all other future participation interests purchased thereunder are

entitled to repayment priority and, accordingly, are to be repaid before substantially any

other amounts outstanding under the Mortgage Loan.[3]

---

[2] Pursuant to the authority granted by the Restructuring Procedures Order and subject to the terms and conditions thereof, LBHI intends to increase the aggregate amount of the Additional Participation Interests to $24.5 million.

[3] Specifically, the Amended LBHI Participation Agreement provides that the Additional Participation Interests are to be paid *pari passu* with $16,655,258 in other amounts outstanding under the Mortgage Loan.

### The Settlement Meets the Standards for Approval

**A. The Terms of the Settlement**

22.　In order to settle all disputes among LBHI, State Street, Heritage, LBREM, and LBREM REIT, LBHI seeks authority to enter into a Settlement according to the terms substantially similar to those set forth on the term sheet (the "Term Sheet") attached hereto as Exhibit A, and as summarized below:[4]

a.　LBHI will assign its debt interest with respect to the Project (the "LBHI Interests") to State Street (the "LBHI Assignment") in exchange for Heritage (i) paying to LBHI the Pay-Off Amount (as defined herein) and (ii) granting to LBHI the Cash Flow Participation (as defined herein);

b.　the "Pay-Off Amount" shall be equal to the sum of (i) $125 million, plus (ii) the aggregate amount of all Additional Participation Interests (including all future Additional Participation Interests purchased pursuant to this Motion), together with interest on each such Additional Participation Interest from the date of such advance through the closing date of the Settlement at the default rate currently provided for under the Mortgage Loan;

c.　LBHI shall be granted a cash flow participation (the "Cash Flow Participation") equal to 10% of all residual cash flow after the equity holders of Heritage receive a return of all of their old and new equity in the Project; and

d.　LBHI shall exchange releases, including, without limitation, with respect to the Proofs of Claim and the Adversary Proceeding, with State Street, Heritage, LBREM and PCCP.

In addition, though not set forth on the Term Sheet, the Settlement contemplates that:

e.　LBHI will indemnify, defend and hold harmless each of State Street and PCCP from and against all claims (including, without limitation, reasonable attorney fees)

---

[4] The terms listed below in subparagraphs (a) – (f) are provided as a summary of the terms of the Settlement.  In the case of an inconsistency between the terms set forth in the summary and the terms of the Settlement, the terms of the Settlement shall control.

made by any third party other than LBREM, LBREM REIT, Heritage, El Toro, PCCP, State Street and/or any of their respective affiliates (collectively, the "Excluded Parties"), arising out of any transfer, assignment or encumbrance made by LBHI and/or ALI or any of their respective successors or assigns or any party claiming or taking by or through any of them prior to the date of the LBHI Assignment of the LBHI Interests to any person or entity other than the Excluded Parties;

f.     LBHI will indemnify, defend and hold harmless PCCP from and against all reasonable costs and expenses (including, without limitation, reasonable attorney fees) incurred by PCCP in responding to any subpoena or other discovery request (the "Heritage Fields Discovery Request") propounded by LBHI and/or any of its affiliates in connection with the underlying transactions giving rise to the Heritage Fields Restructuring (the "Heritage Fields Transactions") provided that (i) none of LBREM, LBREM REIT, Heritage, PCCP, or their respective affiliates (collectively, the "PCCP Parties") is a party to any such suit or action giving rise to the Heritage Fields Discovery Request, (ii) the portion of the subject matter of such suit or action relating to the Heritage Fields Transactions is covered by the release delivered by LBHI to PCCP in connection with the Heritage Fields Restructuring (as defined below), and (iii) the suit or action does not otherwise arise out of a breach or violation by any of the PCCP Parties of any of their respective obligations under the definitive Heritage Fields Restructuring documents; and

g.     LBHI would be entitled to all customary rights to defend any claim giving rise to the indemnification obligations set forth above.

23.     Contemporaneous settlements are also being entered into between PCCP Parties and Heritage which, together with the Settlement and related documents, will result in the restructuring of the Project (the "Heritage Fields Restructuring"). Upon consummation of the Heritage Fields Restructuring, State Street will be the lender to the project and neither El Toro, nor LBHI will have any debt or equity interest in the Project

9

(other than the Cash Flow Participation) whether as a loan participant or holder of the
Corporate Loan.

**B. Rule 9019 Requires that the Settlements are
Within the Acceptable Range of Reasonableness**

24.     Rule 9019 of the Bankruptcy Rules governs the procedural
requirements to be followed before a compromise or settlement may be approved.
Bankruptcy Rule 9019 provides, in pertinent part, that "[o]n motion by the [debtor-in-
possession] and after notice and a hearing, the court may approve a compromise or
settlement."  Fed. R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to
approve settlements "if they are in the best interests of the estate."  Vaughn v. Drexel
Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 134 B.R.
499, 505 (Bankr. S.D.N.Y. 1991); see also Protective Comm. for Indep. Stockholders of
TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Fisher v. Pereira (In re
47-49 Charles St., Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc.,
156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).  A decision to
accept or reject a compromise or settlement is within the sound discretion of the Court.
Drexel Burnham Lambert Group, 134 B.R. at 505; see also 9 Collier on Bankruptcy ¶
9019.02 (15th ed. rev. 2001).  The settlement need not result in the best possible outcome
for the debtor, but must not "fall below the lowest point in the range of reasonableness."
Drexel Burnham Lambert Group, 134 B.R. at 505 (internal citations omitted); see also
Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re
Spielfogel, 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997).  Indeed, courts have long
considered compromises to be "a normal part of the process of reorganization."  TMT

Trailer Ferry, 390 U.S. at 424 (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S.

106, 130 (1939).

25.    The decision to approve a particular compromise lies within the

sound discretion of the bankruptcy court.  Nellis v. Shugrue, 165 B.R. 115, 123

(S.D.N.Y. 1994).  Additionally, a court may exercise its discretion "in light of the general

public policy favoring settlements."  In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46

(Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the question of whether a

particular compromise is "fair and equitable, . . . and [ ] in the best interest of the estate."

In re Best Products Co., 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations

omitted).

26.    While a court must evaluate "all . . . factors relevant to a full and

fair assessment of the wisdom of the proposed compromise," TMT Trailer Ferry, 390

U.S. at 424, a court need not conduct a "mini-trial" of the merits of the claims being

settled, or conduct a full independent investigation.  Drexel Burnham Lambert Group,

134 B.R. at 505.  "The bankruptcy judge does not have to decide the numerous questions

of law and fact. . . . The court need only canvass the settlement to determine whether it is

within the acceptable range of reasonableness."  Nellis, 165 B.R. at 123 (internal citations

omitted).

27.    The court may give weight to the "informed judgments of the . . .

debtor-in-possession and their counsel that a compromise is fair and equitable, and

consider the competency and experience of counsel who support the compromise."

Drexel Burnham Lambert Group, 134 B.R. at 505 (internal citations omitted); see also In

re Purofied Down Prods. Corp., 150 B.R. 519, 522-23 (S.D.N.Y. 1993); accord In re

Ashford Hotels, Ltd., 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness. . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.") (internal citations omitted).

28.    Significantly, there is no requirement that "the value of the compromise . . . be dollar-for-dollar the equivalent of the claim." Ionosphere Clubs, Inc., 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." Id. at 427-28 (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 n.2 (2nd Cir. 1974)).

**C. Section 363 Requires that the Assignment
   Of LBHI's Interest In the Mortgage Loan Is
   An Exercise of Sound Business Judgment of the Debtors**

29.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Id. § 363(b)(1). When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor. Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); accord In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); In re Martin, 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In Re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); Institutional Creditors of

12

Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 780 F.2d 1223,

1226 (5th Cir. 1986).

        30.     It is generally understood that "[w]here the debtor articulates a

reasonable basis for its business decisions (as distinct from a decision made arbitrarily or

capriciously), courts will generally not entertain objections to the debtor's conduct." In

re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business

justification exists, there is a strong presumption that "the directors of a corporation acted

on an informed basis, in good faith and in the honest belief that the action taken was in

the best interests of the company."  In re Integrated Res., Inc., 147 B.R. 650, 656

(S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)), appeal

dismissed, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting this presumption falls to

parties opposing the proposed exercise of a debtor's business judgment. Id. (citing

Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).

### D. Entry into the Settlements and the Assignment of the Mortgage Loan as Contemplated Thereby Meets the Standards for Approval under Rule 9019(a) and Section 363

        31.     LBHI's entry into the Settlement and its assignment of its debt

interests in the Project is in the best interests of its estate and its creditors.  The

Settlement is the product of extensive good-faith, arms'-length negotiation with State

Street, PCCP and Heritage, as well as the other parties to the Heritage Fields

Restructuring, and releases LBHI from costs, liabilities and uncertainties associated with

the Adversary Proceeding and the Proofs of Claim.

        32.     In addition, the Settlement provides LBHI with a significant

recovery on account of its debt interest with respect to the Project, whereas retention of

the interest could result in no recovery for the estate.  The Project continues to have

substantial costs associated with it which need to be funded.  As such, in order to realize

any profit on account of its investment, LBHI would have to continue to fund these costs,

which would amount to a significant investment.  Furthermore, even if LBHI were to

continue to fund, it would be a substantial period of time before LBHI would be able to

recover any profit on account of its debt investment with respect to the Project.  The

Heritage Fields Restructuring relieves LBHI from this funding burden and enables LBHI

to realize significant recovery on account of its investment in the Project.  LBHI's entry

into the Settlement is a necessary component of this valuable restructuring.

### The Amendment of the Amended LBHI Participation Agreement and the Funding of the Additional Participation Interests Meets the Standard for Approval

33.    Costs associated with the Project require funding above the $20

million allowed under the Amended LBHI Participation Agreement and above the $25

million authorized by the Restructuring Procedures Order.  As such, LBHI seeks

authority to further amend the Amended LBHI Participation Agreement to provide for the

purchase of up to $32 million of Additional Participation Interests (inclusive of all

previously purchased Additional Participation Interests).

34.    Amending the Amended LBHI Participation Agreement to provide

for the purchase of up to $32 million of Additional Participation Interests is in the best

interests of LBHI and meets the standard for approval under section 363 of the

Bankruptcy Code, as set forth above.  Although LBHI is expected to assign its debt

interest in the Project (other than the Cash Flow Participation), there are certain necessary

costs associated with the Project which must be paid prior to the closing of the Settlement

and the Heritage Fields Restructuring.  The funds provided through the purchase of the

Additional Participation Interests have been and will be used to fund these necessary

costs.  The Project's value is inextricably tied to the payment of these costs, and, as such,

if they were unpaid, LBHI would risk losing its valuable investment.

35.    LBHI chose to structure the funding of these costs through the

purchase of the Additional Participation Interests because such structure provided LBHI

and its creditors with the most security.  As a participation in El Toro's loan, the

Additional Participation Interests are secured by a *first priority security interest* in the

Project.  Because the Additional Participation Interests have repayment priority, they will

be paid off prior to substantially any other interest in the Project.  The value of the Project

is far in excess of the cap of the Additional Participation Interests at $32 million

(inclusive of all previously purchased Additional Participation Interests), and as a result

and in conjunction with the payment priority, LBHI is confident that, even if the Heritage

Fields Restructuring is not consummated, it will receive repayment of the Additional

Participation Interests.  In addition, by entering into and amending the Amended LBHI

Participation Agreement and purchasing the Additional Participation Interests, LBHI is

able to protect its debt interest with respect to the Project until the consummation of the

Heritage Fields Restructuring, a result which in the best interests of LBHI, its creditors,

and all economic parties in interest.

## Notice

36.    The Debtors have served notice of this Motion in accordance with

the procedures set forth in the second amended order entered on June 17, 2010 governing

case management and administrative procedures for these cases [Docket No. 9635] on (i)

the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and

Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney

for the Southern District of New York; and (vi) all parties who have requested notice in

these chapter 11 cases.  The Debtors submit that no other or further notice need be

provided.

   37. No previous request for the relief sought herein has been made by

the Debtors to this or any other court.

   WHEREFORE the Debtors respectfully request that the Court grant the

relief requested herein and such other and further relief as is just.

Dated: June 22, 2010
  Houston, Texas

        /s/ Alfredo R. Pérez
       Alfredo R. Pérez

       WEIL, GOTSHAL & MANGES LLP
       700 Louisiana, Suite 1600
       Houston, TX 77002
       Telephone: (713) 546-5040
       Facsimile: (713) 224-9511

       Attorneys for Debtors
       and Debtors in Possession

**Exhibit A**

**(Term Sheet)**

**LEHMAN BROTHERS HOLDINGS INC ("LBHI")**

**HERITAGE FIELDS EL TORO, LLC ("HF")**

**PROPOSED DISCOUNTED PAY-OFF**

<u>**TERM SHEET**</u>

General:            LBHI is the owner and holder of certain interests (the "**LBHI Interests**") in that certain mortgage loan made by El Toro, LLC ("**Original Lender**") to HF (as amended, the "**Mortgage Loan**"). HF has entered into a Term Sheet dated as of June 4, 2010 (the "**SS Term Sheet**") with State Street Bank and Trust Company ("**SSBT**") pursuant to which SSBT would acquire all right, title and interest in the Mortgage Loan from the Original Lender. A copy of the SS Term Sheet is attached hereto as Schedule A. In order to effectuate the Restructuring Transaction (as defined in the SS Term Sheet), LBHI has agreed to join with the other holders of interests in the Mortgage Loan in the conveyance of the Mortgage Loan to SS in exchange for HF: (i) paying to LBHI the Pay-Off Amount (as defined below) and (ii) granting to LBHI the Equity Participation (as defined below).

Pay-Off Amount:     The Pay-Off Amount shall be equal to the sum of the following:

(i)   $125mm; plus

(ii)  the aggregate amount of all protective advances under the Mortgage Loan as of the date of the closing of the Restructuring Transaction (which amount as of the date hereof is $19,525,620.38), together with interest on each such advance from the date of such advance through such closing date at the default rate currently provided for under the Mortgage Loan.

The foregoing calculation of the Pay-Off Amount is conditioned upon a closing of no later than August 31, 2010.

Cash Flow
Participation:      LBHI shall be granted cash flow participation equal to 10% of all residual cash flow after the equity holders of HF receive 1x all of their old and new equity in the project (i.e., 13.33% of distributions payable to HF under waterfall level "Sixth" and 10% of distributions payable to HF under waterfall level "Thereafter" (i.e., the seventh and final tier of the waterfall) as set forth in the SS Term Sheet until LBHI receives $100mm in the aggregate, after which LBHI will have no further cash flow participation.) The parties will also reasonably cooperate so that the definitive documents contain adequate protections for LBHI to ensure that

LBHI cannot be deprived of the participation interest described above..

| | |
|---|---|
| LBHI Actions to be taken at Closing: | At the closing of the Restructuring Transaction, LBHI shall: |

(i)  join with the other holders of interests in the Mortgage Loan to convey all right, title and interest in the Mortgage Loan to SSBT. The conveyance by LBHI of the LBHI Interests shall be on an "as-is/where-is basis" and without representation or warranty of any kind whatsoever except that LBHI will represent that it is the owner of the LBHI Interests except for any claims or encumbrances held by PCCP, SSBT and their respective affiliates.

(ii)  exchange releases with SSBT, HF, Lehman Brothers Real Estate Mezzanine Fund and PCCP as contemplated by the SS Term Sheet; and

(iii)  execute and deliver such documents as are reasonably necessary to evidence the Cash Flow Participation.

| | |
|---|---|
| Certain Conditions: | It shall be a condition to closing the discounted pay-off to LBHI contemplated by this term sheet that there shall be a simultaneous closing of (i) the Restructuring Transaction with SSBT and (ii) a discounted pay-off and cash flow participation grant with respect to all of the interest in the Mortgage Loan now held by PCCP. |
| Court Approval: | The proposed transaction shall be subject in all respect to approval of the United States Bankruptcy Court for the Southern District of New York, in which LBHI's bankruptcy case is currently pending |
| Non-Binding: | This Term Sheet is non-binding and is intended to be for discussion purposes only solely as a basis for commencing and engaging in discussion concerning the subject matter hereof. |

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____

Name:     Jeffrey Fitts
Title:     Authorized Signatory

**HERITAGE FIELDS EL TORO, LLC**

By:   Heritage Fields, LLC, its sole member

    By:   Lennar-LNR Heritage Fields, LLC, its
        administrative member

        By:   Lennar Homes of California, Inc.,
            its managing member

            By:   _____

                Name:
                Title:

**<u>Annex A</u>**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :      08-13555 (JMP)
                                          :
                       Debtors.           :      (Jointly Administered)
                                          :
---------------------------------------------------------------------x
```

### ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING LBHI TO ENTER INTO SETTLEMENT RELATED TO, AND ASSIGN INTEREST IN HERITAGE FIELDS PROPERTY AND TO PURCHASE PARTICIPATION INTERESTS RELATED THERETO

Upon the motion, dated June 22, 2010 (the "Motion"),[1] of Lehman Brothers Holdings Inc., as debtor in possession ("LBHI," and together with its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors"), for an order pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing LBHI to (i) enter into the Settlement related to the Heritage Fields Project, (ii) assign its debt interest with respect to the Project to State Street in exchange for a payment from Heritage in the approximate amount of $125 million plus additional consideration, and (iii) provide interim financing to the Project up to an aggregate amount of $[34] million, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting

---

[1] Capitalized terms used, but not defined herein shall have the meaning ascribed to such term in the Motion.

C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having

been provided in accordance with the procedures set forth in the amended order entered

February 13, 2009 governing case management and administrative procedures [Docket

No. 2837]; and the Court having found and determined that the relief sought in the

Motion is in the best interests of LBHI, its estate and creditors, and all parties in interest

and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it

is

ORDERED that the Motion is granted; and it is further

ORDERED that all objections, if any, to the Motion and the relief

requested therein that have not been withdrawn, waived, or settled, and all reservations of

rights included therein, are denied and overruled on the merits with prejudice; and it is

further

ORDERED that, pursuant to Bankruptcy Rule 9019 LBHI is authorized

and empowered to enter into the Settlement, according to terms substantially similar to

those set forth in the Motion and on the Term Sheet attached as Exhibit A to the Motion,

and is authorized, but not directed, to execute, deliver, implement, and perform any and

all obligations, instruments, documents and papers, and to take all corporate and other

actions that may be necessary or appropriate to consummate all of the transactions

contemplated by the Settlement without the necessity or requirement of further court

proceedings or approval; and it is further

21

ORDERED that, pursuant to section 363 of the Bankruptcy Code and according to the terms of the Settlement, LBHI is authorized and empowered to assign its debt interest with respect to the Project to State Street upon receipt of payment by Heritage as contemplated by the Settlement and convey, and is authorized, but not directed, to execute, deliver, implement, and perform any and all obligations, instruments, documents and papers, and to take all corporate and other actions that may be necessary or appropriate to assign such interest without the necessity or requirement of further court proceedings or approval; and it is further

ORDERED that, pursuant to section 363 of the Bankruptcy Code, LBHI is authorized and empowered to amended the Amended LBHI Participation Agreement to provide for the purchase, by LBHI, of Additional Participation Interests up to an aggregate amount of $32 million, and LBHI is authorized and empowered to purchase such Additional Participation Interests, up to an aggregate amount of $32 million, thereunder; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that nothing contained herein shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies of LBHI or, except as otherwise expressly provided in the Motion, that the Debtors may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties, and the Debtors are herby authorized and directed to execute such further documents to evidence these reservations; and it is further

22

ORDERED that this Court shall retain jurisdiction to hear and determine

all matters arising from or related to the implementation and/or interpretation of this

Order.

Dated: July ___, 2010
        New York, New York

_____

HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE