Hearing Date and Time: July 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  July 7, 2010 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
**In re**                                                          :    **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :    **08-13555 (JMP)**
:
**Debtors.**                                    :    **(Jointly Administered)**
:
:
------------------------------------------------------------------x

**NOTICE OF LBHI'S MOTION, PURSUANT TO SECTIONS 105(a),
363(b)(1) and 363(f) OF THE BANKRUPTCY CODE AND RULE 6004(h)
OF THE BANKRUPTCY RULES, FOR AUTHORIZATION TO TRANSFER
CERTAIN MORTGAGE SERVICING RIGHTS TO AURORA BANK FSB**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") for authorization to transfer certain mortgage servicing rights to Aurora Bank FSB, all as more fully set forth in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **July 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Alfredo R. Perez, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **July 7, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

　　　　　PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: June 23, 2010
      Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time: July 14, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: July 7, 2010 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                :
In re                                           :  Chapter 11 Case No.
                                                :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :  08-13555 (JMP)
                                                :
    Debtors.                                    :  (Jointly Administered)
                                                :
------------------------------------------------------------------x

**LBHI'S MOTION, PURSUANT TO SECTIONS 105(a), 363(b)(1)
AND 363(f) OF THE BANKRUPTCY CODE AND RULE 6004(h) OF
THE BANKRUPTCY RULES, FOR AUTHORIZATION TO TRANSFER
CERTAIN MORTGAGE SERVICING RIGHTS TO AURORA BANK FSB**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this motion (the "Motion") and respectfully represent:

**Preliminary Statement**

1.      By this Motion, LBHI seeks authorization to transfer to Aurora Bank FSB (the "Bank")[1] certain of its mortgage servicing rights ("MSRs") with respect to a portfolio of

---

[1] The Bank, formerly known as Lehman Brothers Bank, FSB, is an indirect wholly owned non-debtor subsidiary of LBHI.

Federal National Mortgage Association ("Fannie Mae") sponsored residential mortgage loans (approximately 40,000 loans) with an outstanding principal amount of approximately $8.8 billion (the "Fannie Mae Loans" and the servicing rights with respect thereto, the "Designated Fannie Mae MSRs"). The portfolio of Fannie Mae Loans is considered a high-risk portfolio because of the large number of loans that are, or are expected to become, delinquent. Fannie Mae has offered incentives (described below) to LBHI and the Bank to complete the transfer of the Designated Fannie Mae MSRs by August 1, 2010 that will allow the Bank to recover $26 million for the Designated Fannie Mae MSRs through a sale of such assets to Fannie Mae, improve the value of the entire portfolio of Fannie Mae MSRs, which LBHI has determined to transfer to the Bank as part of a global settlement with the Bank, and increase the value of the Bank's business as a result of Fannie Mae's approval of the Bank for participation in additional Fannie Mae programs. The transfer of the Designated Fannie Mae MSRs will allow LBHI to maximize the recovery of its equity interest and prior investments in the Bank.

2. LBHI has negotiated a settlement (the "Settlement") of virtually all open issues between Lehman and the Bank, which will result in a substantial recapitalization of the Bank and position the Bank for substantial modification of the regulatory restrictions on its operations. This will permit the Bank to conduct new business operations and to carry out a business plan intended to position the Bank so that LBHI will have the opportunity to realize on its equity in the Bank through a sale of the Bank's business as a going concern. The Settlement has been submitted for approval to the Bank's primary regulator, the Office of Thrift Supervision (the "OTS"), and is in an advanced stage of review. Upon obtaining regulatory approval, LBHI will seek authorization from the Court for its entry into the Settlement.[2]

---

[2] LBHI has also negotiated a settlement of virtually all open issues between Lehman and Woodlands Commercial Bank ("Woodlands"), which will result in an increase in the capital of Woodlands and

3. As part of the Settlement with the Bank, LBHI has agreed to, among other things, transfer to the Bank or its wholly owned subsidiary Aurora Loan Services, LLC ("Aurora") all MSRs owned by LBHI and for which the Bank, through Aurora, currently provides servicing, including the substantial portion of such MSRs that relate to loans owned either by Fannie Mae or Fannie Mae sponsored securitization vehicles, subject to the requisite approval by Fannie Mae of such transfer to the Bank. By transferring the Designated Fannie Mae MSRs now as requested by Fannie Mae, LBHI will realize additional benefits for transferring assets that LBHI already determined was in the best interests of its estate to transfer to the Bank or Aurora as part of the Settlement. The transfer of the Designated Fannie Mae MSRs should boost the value of the Bank's enterprise and make it more attractive to potential purchasers. Accordingly, the Motion should be granted.

**Background**

4. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

substantially lessen the regulatory restrictions on Woodlands. The settlement with Woodlands has been submitted to the Federal Deposit Insurance Corporation and the Utah Department of Financial Institutions for approval. LBHI will seek authorization from the Court for the Woodlands settlement upon obtaining regulatory approval for that settlement.

5.  On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.  On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

7.  On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. The Examiner issued a report of his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

8.  On April 14, 2010, the Debtors filed a revised joint chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [Docket Nos. 8330 and 8332].

**Jurisdiction**

9.  This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

10. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

11. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Relief Requested**

12. By this Motion, LBHI seeks authorization, pursuant to sections 105(a), 363(b)(1) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 6004(h), to transfer the Designated Fannie Mae MSRs free and clear of any liens, claims or interests in such assets to the Bank. In order to meet the August 1, 2010 deadline required by Fannie Mae, the Bank will need to provide notice of the transfer to the underlying borrowers 15 days prior to such date. Accordingly, LBHI requests that the Court waive the requirements of Bankruptcy Rule 6004(h) and direct that the order granting the relief requested herein be effective immediately upon its entry. As set forth more fully below, LBHI's decision `to transfer the Designated Fannie Mae MSRs to the Bank represents a reasonable exercise of its business judgment and should be approved.

**The Settlement Agreement**

13. As the Court is aware, in response to the Bank's diminished capital level, on February 4, 2009, the OTS issued a Prompt Corrective Action directive imposing serious restrictions on the Bank's sources of funding and origination of new loans. LBHI believed and continues to believe that LBHI's equity interest in the Bank (most recently reported in the Bank's Thrift Financial Report to have a value of approximately $642 million) is a significant asset of its estate that should be preserved for the benefit of LBHI's creditors. Accordingly, since February 2009, LBHI has taken a series of actions to support the Bank.

14. After extensive negotiations with the Bank (overseen on the part of the Bank by a committee of independent directors of the Bank) and extensive discussions with the

OTS, LBHI has negotiated the Settlement with the Bank. Among other things, the Settlement will (i) settle the claim submitted by the Bank asserting a breach of the master forward agreement between the Bank and LBHI as well as the OTS's related claim against LBHI under section 365(o) of the Bankruptcy Code, which are over $2.1 billion in amount (plus unliquidated amounts), and also settle virtually all other claims of the Bank against LBHI, (ii) as a result of the settlement of such claims, increase significantly the Bank's capital and substantially lessen the current regulatory restrictions on the Bank's operations, and (iii) allow the Bank to originate high quality residential mortgage loans and otherwise enter into new business and regain limited – but for the Bank very significant – access to the market for brokered certificates of deposit. The Settlement supports a business plan for the Bank under which the Bank will conduct mortgage loan originations, purchases and sales and is expected to position the Bank for a going concern sale. The Settlement has been submitted for approval to the OTS. Upon approval and consummation of the Settlement, the immediate risk of appointment of a receiver for the Bank and the assertion of a claim under section 365(o) of the Bankruptcy Code by the Bank's regulators will have been eliminated.

### The Fannie Mae MSRs

15.     LBHI is the seller / servicer of a large portfolio of Fannie Mae sponsored residential mortgage loans (approximately 114,000 loans with an unpaid principal balance of approximately $21.7 billion) and has designated Aurora as subservicer of such loans. In its capacity as seller, LBHI has certain obligations, including representations and warranties regarding the status of the loans, such as the regularity of the loan documents and compliance with all applicable Fannie Mae guidelines and requirements. A transfer by LBHI of the MSRs with respect to Fannie Mae sponsored loans requires Fannie Mae's approval and, unless

otherwise agreed to by Fannie Mae, any transfer of such MSRs is subject to the assumption of the seller obligations, including liability for such representations and warranties, by the new servicer.[3] As a result, buyers are less likely to acquire the servicing rights on an "as is" basis because of the potential exposure on the seller obligations to which they would become subject, especially in the case of a high risk portfolio, thereby limiting LBHI's ability to realize the value of the MSRs on Fannie Mae sponsored loans. In May 2009, LBHI's portfolio of Fannie Mae MSRs was appraised at approximately $154 million, but such appraised value does not take into account the risk of seller obligations that would need to be assumed by a purchaser absent Fannie Mae's agreement to the contrary.

16. Pursuant to the Settlement, LBHI has agreed to transfer to the Bank or Aurora all the MSRs with respect to Fannie Mae loans that LBHI owns. The transfer of such MSRs must be approved by Fannie Mae. The Bank has discussed the matter with Fannie Mae. Fannie Mae has proposed that LBHI immediately transfer the Designated Fannie Mae MSRs to the Bank without the Bank being required to assume responsibility for the related seller obligations (which is what LBHI has contemplated doing in the Settlement as to all its MSRs on Fannie Mae loans). After the transfer to the Bank of the Designated Fannie Mae MSRs is completed and before August 1, 2010, the Bank will sell the acquired servicing rights to Fannie Mae for approximately $26 million to be paid to the Bank.[4] This transaction is part of a program Fannie Mae is developing to concentrate the servicing of high-risk loans.

---

[3] Claims by Fannie Mae against LBHI regarding such representations and warranties are not affected by the transactions described in this Motion.

[4] Fannie Mae will also pay the Bank for any of its outstanding servicing advances on the Fannie Mae Loans. In conjunction with these transactions, LBHI will cease to be the master servicer or servicer of the related loans and Aurora will cease to be the subservicer, and a new servicer would be appointed by Fannie Mae as part of its new troubled loan servicing program.

The amount the Bank will be paid for the Designated Fannie Mae MSRs is somewhat less than the most recent appraisal LBHI has received for them ($44 million), but LBHI and the Bank have determined that such payment is fair under the circumstances and it is in their best interest to participate in the transaction, inasmuch as that the appraised value does not account for the risk of related seller obligations – so neither LBHI nor the Bank would be in a position today to sell these MSRs for the appraised amount – and in light of other benefits they will receive from the transaction referred to herein, which will increase the Bank's value as a going concern.

17. In exchange for LBHI and the Bank's cooperation in moving the servicing of the Designated Fannie Mae MSRs, Fannie Mae will:

- approve the transfer of *all* Fannie Mae MSRs by LBHI to the Bank or Aurora as contemplated by the Settlement *without* requiring assumption of responsibility by the assignee for the obligations of LBHI as seller with respect to the underlying loans[5]; and

- approve the Bank and Aurora as a Fannie Mae seller/servicer, which is expected to include approval of the Bank as seller for retail originations immediately upon transfer of the Designated Fannie Mae MSRs, and assuming completion of the Settlement, approval of the Bank as seller for correspondent originations (subject to review of the Bank's proposed correspondent operations).

Transferring the MSRs on Fannie Mae sponsored loans without the ongoing exposure for seller obligations will immediately improve the marketability of such MSRs to third parties. In addition, Fannie Mae's approval of the Bank for retail and correspondent originations will

---

[5] These are the terms on which the Settlement contemplates that LBHI would transfer to the Bank or Aurora the MSRs LBHI owns on loans sponsored by Fannie Mae, i.e., without the Bank or Aurora assuming responsibility for LBHI's representations and warranties as seller of the loans. The Settlement recognizes that agency approval of such transfer is required and contemplates that, in the event agency approval cannot be obtained, LBHI would not transfer such MSRs and instead would covenant not to terminate Aurora's status as subservicer of the loans. LBHI would in either case remain responsible for the representations and warranties made with respect to the underlying loans and deal with any related claims unless otherwise agreed. The contemplated transfer to the Bank of the Designated Fannie Mae MSRs will not require a change in the terms of the Settlement, as it will be treated as an advance delivery of the Settlement consideration.

achieve an important goal of the Bank's business plan and will increase the value of the Bank's business that would flow to LBHI for the benefit of its creditors.

### Sound Business Reasons Support LBHI's Immediate Transfer of the Designated Fannie Mae MSRs to the Bank

18. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper* (*In Re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).

19. It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

20. There are ample business justifications in support of the Motion. By accommodating Fannie Mae's request to transfer the Designated Fannie Mae MSRs to the Bank before August 1, 2010, the Bank and LBHI can take advantage of the incentives offered by Fannie Mae and realize the benefits therefrom. The Bank will immediately recover $26 million on the Designated Fannie Mae MSRs, which LBHI believes to be fair in light of the limitations on recovering the value of such assets through a sale of such assets. The Bank is expected to also be approved for retail originations that should improve the value of its business.

21. In addition to the immediate benefits to the value of the Bank's business that will be realized from the transfer of the Designated Fannie Mae MSRs, LBHI has determined in the exercise of its business judgment to transfer all of the Fannie Mae MSRs to the Bank or Aurora pursuant to the Settlement so that it can preserve and enhance the significant value of the Bank for the benefit of its creditors. Eliminating liability exposure on the seller obligations from ownership on the remaining MSRs on Fannie Mae sponsored loans will instantaneously improve the marketability of such MSRs in the Bank's hands and position LBHI, after the Bank's receipt of such MSRs upon completion of the Settlement, to recover the value of such MSRs, which were independently appraised at an estimated $154 million at May 31, 2010, in connection with a sale of the Bank. Moreover, Fannie Mae's approval of the Bank and Aurora for participation in other Fannie Mae programs and products will improve the value of the Bank's business. As a result, transferring the Designated Fannie Mae MSRs immediately to the Bank will maximize LBHI's return on its equity interest and investments in the Bank.

22. LBHI has invested a substantial amount of time, money, and effort into preserving the opportunity to realize the value of its equity interest in the Bank and to

maximizing the return on its investments therein.[6]  The transfer of the Designated Fannie Mae MSRs to the Bank is part of LBHI's strategy to realize the value of the Bank.  LBHI has long contemplated the transfer of its MSRs to the Bank or Aurora as a component of the Settlement even before the incentives were offered by Fannie Mae.  The additional benefits to LBHI of the incentives further justify LBHI's decision to transfer the MSRs.  Thus, the relief requested by the Motion represents a reasonable exercise of LBHI's business judgment and should be granted.

### The Transfer of the Designated Fannie Mae MSRs to the Bank Should be Free and Clear of Liens, Claims and Interests

23.    The transfer of the Designated Fannie Mae MSRs to the Bank should be free and clear of any and all liens, claims, encumbrances and other interests in accordance with section 363(f) of the Bankruptcy Code.  A debtor may sell property of its estate free and clear of any interest in such property if one of the conditions in section 363(f)(1) – (5) is satisfied.  *See* 11 U.S.C. § 365(f); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition.); *Circus Time, Inc. v. Oxford Bank & Trust (In re Circus Time, Inc.*), 5 B.R. 1, 8 (Bankr. D. Me. 1979) (finding the court's power to sell property free and clear of liens has long been recognized).

---

[6] Specifically, LBHI has taken the following actions to preserve the value of the Bank: (i) LBHI's entry into two settlement agreements with Aurora that transferred to the Bank and Aurora ownership of approximately $99 million in excess servicing fees; (ii) capital contributions of $9.838 million on February 27, 2009, $15 million on March 31, 2009, $50 million on June 30, 2009, and $100 million on December 28, 2009; (iii) the transfer of mortgage servicing rights to the Bank and Aurora valued at approximately $171 million; (iv) the provision of services to assist the termination of certain Bank loan commitments totaling $1.357 billion; (v) LBHI's entry into the amended master repurchase agreement that made $450 million in financing available to the Bank; and (vi) LBHI's entry into a short-term bridge financing facility with Aurora that made up to $500 million in financing available to Aurora.

24.     In the ordinary course of its business during the prepetition period, LBHI entered into various repurchase transactions with, amongst others, Lehman Commercial Paper Inc. ("LCPI"), a Debtor in these cases, in an effort to obtain financing using LBHI's assets as collateral. It may be the case that LBHI's MSRs, including the Designated Fannie Mae MSRs to be transferred to the Bank pursuant to this Motion, were pledged as collateral to LCPI in connection with such a prepetition transaction. While the parties reserve all of their rights with respect to whether or not LCPI has an interest in the Designated Fannie Mae MSRs, to the extent it is determined that LCPI does have an interest in such assets, LCPI's right to assert a claim for the value of such interest against LBHI in a nature and priority equivalent to such interest is preserved and shall not be prejudiced by this Motion. Thus, LCPI's interests will be adequately protected and the transfer of the Designated Fannie Mae MSRs should be allowed free and clear.

## Notice

25.     No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

26.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: June 23, 2010
      Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
: 
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
------------------------------------------------------------------x

### ORDER GRANTING LBHI'S MOTION, PURSUANT TO SECTIONS 105(a), 363(b)(1) AND 363(f) OF THE BANKRUPTCY CODE AND RULE 6004(h) OF THE BANKRUPTCY RULES, FOR AUTHORIZATION TO TRANSFER CERTAIN MORTGAGE SERVICING RIGHTS TO AURORA BANK FSB

Upon the motion, dated June 23, 2010 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105(a), 363(b)(1) and 363(f) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for authorization to transfer certain of its mortgage servicing rights on a portfolio of Federal National Mortgage Association sponsored loans (the "Designated Fannie Mae MSRs") free and clear of any liens, claims or interests in such assets to Aurora Bank FSB (the "Bank"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided in accordance with the procedures set forth in the amended order entered June 17, 2010 governing case management and administrative procedures [Docket No. 9635] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, LBHI is authorized to transfer the Designated Fannie Mae MSRs to the Bank; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, the Bank shall take title to and possession of LBHI's interest in the Designated Fannie Mae MSRs free and clear of all liens, claims, encumbrances and other interests of any kind or nature whatsoever; and it is further

ORDERED that LBHI and Lehman Commercial Paper Inc.'s ("LCPI") rights with respect to whether LCPI has an interest in the Designated Fannie Mae MSRs and the nature and priority of such interest are preserved; and it is further

ORDERED that, to the extent it is determined that LCPI has an interest in the Designated Fannie Mae MSRs, LCPI's right to assert a claim for the value of such interest

against LBHI in the nature and priority equivalent to such interest is preserved and shall not be prejudiced; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(h) are waived and this Order shall be effective immediately upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: July __, 2010
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE