- 1 -

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-01420(JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

                  Debtor.

- - - - - - - - - - - - - - - - - - - - -x

         U.S. Bankruptcy Court

         One Bowling Green

         New York, New York

         June 24, 2010

         10:02 AM

B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

TRIAL

- 2 -

1

2   HEARING re Fourth Application of Hughes Hubbard & Reed LLP for

3   Allowance of Interim Compensation for Services Rendered and

4   Reimbursement of Actual and Necessary Expenses Incurred from

5   October 1, 2009 through January 31, 2010 [Docket No. 3265]

6

7   HEARING re Trustee's Motion for an Order Upholding the

8   Trustee's Determinations as to Claims Previously Satisfied in

9   Accordance with SIPA and the Account Transfer Order and

10  Expunging Related Objections Thereto [Docket No. 3346]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Sharona Shapiro

- 3 -

```
 1
 2   A P P E A R A N C E S :
 3   HUGHES HUBBARD & REED LLP
 4        Attorneys for the James W. Giddens, SIPA Trustee
 5        One Battery Park Plaza
 6        New York, NY 10004
 7
 8   BY:   ANSON B. FRELINGHUYSEN, ESQ.
 9
10
11   HUGHES HUBBARD & REED LLP
12        Attorneys for the SIPC Trustee
13        One Battery Park Plaza
14        New York, NY 10004
15
16   BY:   JAMES B. KOBAK, JR., ESQ.
17
18
19   SECURITIES INVESTOR PROTECTION CORPORATION
20        805 15th Street, N.W.
21        Suite 800
22        Washington, DC 20005
23
24   BY:   KENNETH J. CAPUTO, ESQ.
25
```

- 4 -

```
 1
 2   MORGAN LEWIS & BOCKIUS, LLP
 3        Attorneys for Joint Administrators of LBIE
 4        101 Park Avenue
 5        New York, NY 10178
 6
 7   BY:   HOWARD S. BELTZER, ESQ.
 8
 9
10   MILBANK, TWEED, HADLEY & MCCLOY, LLP
11        Attorneys for the Official Committee of
12         Unsecured Creditors
13        One Chase Manhattan Plaza
14        New York, NY 10005
15
16   BY:   DENNIS C. O'DONNELL, ESQ.
17         BRADLEY SCOTT FRIEDMAN, ESQ.
18
19   STUTMAN TREISTER & GLATT
20        Interested Party
21   BY:   JEFFREY H. DAVIDSON (TELEPHONICALLY)
22
23   CHAPMAN AND CUTLER LLP
24        Creditor
25   BY:   JAMES HEISER (TELEPHONICALLY)
```

LEHMAN BROTHERS INC.

- 5 -

1            P R O C E E D I N G S

2            THE COURT: Be seated, please. Good morning.

3            MR. KOBAK: Good morning, Your Honor. James Kobak on

4    behalf of the SIPC trustee. Your Honor, we're here on our

5    fourth interim fee application and then we have a few customer

6    matters.

7            If Your Honor permits, I think before we do the

8    customer matter but after the fee application I can give you a

9    very, very brief report on the allocation motion and generally

10   where we are with respect to customer matters if that will be

11   helpful to you.

12           THE COURT: That would be helpful.

13           MR. KOBAK: Thank you, Your Honor. With respect to

14   the fee application, this is Hughes Hubbard's and the trustee's

15   fourth interim fee application. It covers the four-month

16   period, October 1, 2009 through January of this year.

17           There's no opposition to the application. SIPC,

18   which has performed its customary thorough review by Mr. Kaputo

19   and Ms. Wang, has filed a recommendation in support of our

20   application.

21           We're seeking the approval of the amount that's

22   already been received for that four-month period except for the

23   holdback which amounts to approximately one million dollars.

24   The application covers a total of slightly over 56,000 hours by

25   Hughes Hubbard and 570 and a half hours by Mr. Giddens, the

 1   trustee at a blended rate of 444 dollars which represents our

 2   customary 10 percent public interest discount for SIPC.

 3           We also seek approval for $354,344.87 in costs and

 4   disbursements.  And as you know, under SIPC's longstanding

 5   policy, these amounts do not include first-class travel, late

 6   night meals, late night travel, internal copies and other

 7   things which are often part of a firm's disbursements.  We also

 8   seek approval of the payment of the holdback for our first

 9   three interim applications, and that's also been approved by

10   SIPC.

11           THE COURT:  I've reviewed the application and I have

12   placed considerable reliance on SIPC's recommendation and the

13   oversight functions of SIPC in connection with your firm's

14   work.  Additionally, I recognize, as you have pointed out, that

15   the fee application includes a voluntary reduction in your

16   customary hourly rate and various other concessions in light of

17   the public nature of this important matter.

18           I do have a question, and I suppose I'll place this

19   one to SIPC, as to the rationale for paying the holdbacks

20   associated with the first three applications now and the

21   justification for that in SIPC's view.

22           MR. CAPUTO:  Good morning, Your Honor.  Ken Caputo on

23   behalf of the Securities Investor Protection Corporation.  Our

24   review of the fees takes into consideration not only just what

25   the firm is billing for now but what they are also -- what's in

- 7 -

1   the pipeline and what is expected based upon events as they

2   unfold within the liquidation proceeding.

3           The holdback in this case started to grow to such a

4   number that it was extremely large.  And in keeping with prior

5   liquidation proceedings, both in the Southern District of New

6   York -- I'm thinking of the District of Minnesota in a

7   particularly large case as well --  we from time to time

8   perform a review where we permit counsel to explain to us what

9   the rationale is for a payment of a holdback at this point in

10  time.

11          And here we thought that it would be fitting and

12  proper for them to be paid at least a significant portion, not

13  all of the holdback, leaving at least a million dollars in a

14  pile which grows every month still further, so that we --

15  assuming the Court were to approve the application as filed,

16  the holdback would be reduced now to just about a million, a

17  little north of that, and then each month it would grow back up

18  so that by the time 2010 ended that holdback would probably be

19  in the nature of another two million or two and a half million

20  dollars.

21          So we thought that based upon SIPC's policies and

22  based upon the procedure and practice here in the Southern

23  District of New York, including litigants in this courtroom in

24  other LBI matters as well as other cases where participants can

25  come in from time to time and obtain a portion of their

- 8 -

1  holdback, we thought that that was reasonable and we thought
2  that the request was proper at this time.
3              THE COURT:  All right.  Any other comments on that?
4       (No audible response)
5              THE COURT:  Apparently not.  Okay.  As it relates to
6  the particular holdback question, I will reiterate that I will
7  place considerable reliance on SIPC's review and determination
8  that the payment of the prior holdbacks is appropriate under
9  the current circumstances, particularly in light of the
10 substantial ongoing work that will result in the ordinary
11 course in the accumulation of what amounts to a replacement
12 holdback.  And so I will grant the application as presented,
13 including the request that there be authority to pay the
14 amounts held back from earlier applications.
15             MR. KOBAK:  Thank you, Your Honor.  We'll submit an
16 order at the conclusion of the hearing.
17             THE COURT:  Fine.
18             MR. KOBAK:  Your Honor, with respect to ongoing
19 matters, we had requested today to report on the allocation
20 motion.  Essentially, I don't have a lot to report.  There are
21 four items that were disputed with various parties that we've
22 continued to discuss with them.  We've continued to work with
23 them.
24             Many of these items are quite complicated factually
25 and they are all tied up with disputes with other parties, for

1  instance Barclays discussions that we're having about actions

2  that Citibank took, et cetera. So if those issues were

3  resolved it would have an impact on this motion, and it's

4  difficult to do the allocation without determining those facts

5  and seeing where we are with the other parties. But we are

6  continuing to work on it.

7  The other factor is that the financial position of the

8  estate has changed. We have been pursuing claims against

9  counterparties to transactions that were outstanding prior to

10 the filing date. Those have begun to result in significant

11 amounts of money coming in to the estate.

12 So what we would propose to do is come back and report

13 again as to where we are on October 28th. And I think at that

14 time both sides of the equations, the facts as to the amounts

15 that might be subject to allocation on the one hand, and the

16 amount of funds in the estate that could be allocated will both

17 be clearer than they are today.

18 THE COURT: You said October 28th?

19 MR. KOBAK: Yes.

20 THE COURT: That seems like a long way off to me. I'm

21 just wondering the significant of that date?

22 MR. KOBAK: Well, it's one of the days that we have

23 set aside for trustee claims, matters. I'm not sure we'd be --

24 I can't remember now exactly what --

25 UNIDENTIFIED SPEAKER: August 19th.

```
 1            MR. KOBAK:  Yeah, August 19th.  I don't think,
 2   frankly, we'd be all that much further along than we are
 3   today --
 4            THE COURT:  Okay.
 5            MR. KOBAK:  -- in August.
 6            THE COURT:  All right.  I think it might be useful at
 7   the October 28th hearing if you could provide something
 8   comparable to the state of the estate report which Mr. Marsal
 9   has given in the LBHI case with some detail as to concrete
10   progress to date, ongoing areas of anticipated litigation, work
11   that's in the pipeline, including matters that may result in
12   potential significant matters to be brought to court and any
13   settlements that have been achieved, along with a projection,
14   if you can provide one, as to the likely timeline for actually
15   bringing this all to a conclusion.
16            MR. KOBAK:  All right.  Yes, Your Honor, we'll be
17   happy to do that, whether we'll be able to reach a conclusion
18   as to the timeline, we've been trying to do that internally for
19   some time, and a lot depends on potential litigation with other
20   parties and so forth, as you know.  But we'll be happy to
21   provide a full report.  It'll actually be not too long after
22   the second anniversary of the case, so it's probably an
23   appropriate time to do that.
24            THE COURT:  I think that's true.  And I'll also point
25   out the obvious.  You have a great deal of knowledge as to
```

1   what's going on in the case that you don't share with the Court
2   because there's no need to.  And I think it would be useful, in
3   the interests of transparency, not only for my information but
4   for the information of other interested parties, to have a
5   better understanding of what has been accomplished concretely
6   and what still needs to be done, along with a work plan, in
7   effect, for getting to the end.  I'm sure there's an internal
8   work plan --
9            MR. KOBAK:  Yes.
10           THE COURT:  -- but one that you might be able to share
11  publically.
12           MR. KOBAK:  Certainly.  We'll be happy to do that,
13  Your Honor.
14           THE COURT:  Okay.
15           MR. KOBAK:  With respect to the claims, just by way of
16  a review, we've had approximately 1,200 objections filed to our
17  determinations of customer claims.  There are about 100 of
18  those that have now been resolved.  I think you've seen over
19  the last couple of weeks that from time to time we've been
20  filing notices indicating that some claimants have withdrawn
21  their claims.  You decided the case involving 5th 3rd.  We're
22  working with other claimants to see if they will not withdraw
23  their claims.
24           We do have some very significant items that will be
25  litigated; one category is TBAs.  And of the 1,200 objections

08-13555-mg Doc 9938 Filed 06/25/10 Entered 06/30/10 11:41:06 Main Document
Pg 12 of 20
LEHMAN BROTHERS INC.

- 12 -

1  that are outstanding, approximately half of them are accounted

2  for by TBAs.  We have been working with the parties.  There are

3  several parties, such as PIMCO, that have large numbers of

4  those claims on behalf of their individual clients.  We've had

5  serious discussions with PIMCO about whether there might be a

6  way to resolve some of those claims.  They won't all get

7  resolved, but -- so a large number of them will have to be

8  presented to the Court.  So we're not ready to present those to

9  the Court yet, but I'm hoping in the future we will, and I'm

10 hoping that it will be fewer than the 5 or 600 that are

11 currently in dispute.

12          THE COURT:  Let me ask you a question that I think is

13 related to the comments you've just made.  I noticed in the fee

14 application a reference to the very significant claims against

15 the LBI estate that have been asserted by LBHI and affiliated

16 entities.  Whether you can provide me with information today or

17 not is almost beside the point, but I would like you to provide

18 some greater insight on the claims process as it relates to

19 these very, very large intramural disputes, the prospect for

20 resolving those disputes, and the methodology for resolving

21 those disputes.

22          MR. KOBAK:  Okay.  I can do that to some extent today,

23 if Your Honor will bear with me.

24          THE COURT:  Sure.

25          MR. KOBAK:  On the LBHI side, they've filed claims as

1    customer claims; I think there are over 600 of them.  We

2    believe a large number of those are subordinated by agreement

3    or because that's the way the broker treated them.  We've had a

4    process of periodic meetings and exchanges of information with

5    the holding company to try to see to what extent we can reach

6    agreement about those matters legally as well as coming to a

7    better understanding of the amounts involved.

8              Frankly, that hasn't progressed quite as rapidly as we

9    would have liked.  And we're actually contemplating issuing

10   letters of determination, probably over the summer, to move

11   those disputes involved.  And I don't want to go further in

12   characterizing LBHI's position or what the ultimate issues

13   might be.  But we do intend to get that meeting moving.

14             On the LBIE side -- and I know Mr. Beltzer's here in

15   court -- we have had extensive discussions about a protocol as

16   to how their claim might be treated.  Whether we're going to

17   actually reach agreement about that I can't say for sure,

18   although I think the recent discussions have been very

19   promising.  There's been a very substantial reconciliation

20   effort going on between Deloitte and PWC as to the portion of

21   the LBIE -- what we call the omnibus claim that relates to

22   LBIE's underlying customers.  And we're hoping that we can

23   reach agreement with them or at least agreement in part as to

24   what the dollar amount of the claim might be.  They also have a

25   house claim which is a customer claim asserted on their own

- 14 -

1  behalf, not for underlying customers.  And we do have some
2  significant potential disputes about that, although on both
3  sides our priority has been to deal with the customer side of
4  it first.
5           THE COURT:  All right, thank you.
6           MR. KOBAK:  Okay.  As to other third-party claims, we
7  also have a number of repo objections which are very
8  substantial in dollar value.  We've been trying to negotiate
9  stipulated facts with most of the repo claimants so that that
10 can be presented.  We think that that's essentially a legal
11 question in most cases rather than a factual question.  And
12 whether we'll be completely successful with everyone in
13 reaching stipulated facts I can't tell you, but that's our
14 objective.
15          I think next month we will be presenting for a
16 decision at least a couple of classes of cases including some
17 people who have underwriting agreements and other things that
18 we don't think qualify for customer treatment.
19          So essentially, Your Honor, that's where we are with
20 respect to the customer claims.
21          THE COURT:  Okay.  I appreciate that report.
22          I'll just ask if there's anyone else who wishes to say
23 anything on the general subject?
24          MR. KOBAK:  Fine.  I'll turn the podium over to Mr.
25 Frelinghuysen -- who I know you've seen on tape --

- 15 -

1        THE COURT:  I have seen him on tape.

2        MR. KOBAK:  -- but not in the flesh, I don't

3   believe -- to present our transferred motions -- transferred

4   accounts motion.

5        THE COURT:  You were projected on that screen

6   actually.

7        MR. FRELINGHUYSEN:  That is my screen, yes.

8        Hi.  Good morning, Your Honor.  Anson Frelinghuysen

9   for Hughes Hubbard & Reed for the SIPA trustee.

10       The trustee seeks entry of an order upholding its

11  denial of customer status of five claims asserted by former LBI

12  account holders whose accounts and assets were transferred to

13  either Barclays Capital or Neuberger Berman as part of the

14  account transfer process.

15       Expunging these five claims is a concluding step in

16  the trustee's handling of nearly 2,500 claims filed by

17  similarly situated individuals.  As the Court is aware, the

18  trustee transferred over 110,000 customer accounts and property

19  valued at approximately 92 billion dollars to Barclays and

20  Neuberger.  Notwithstanding the trustee's efforts to complete

21  these account transfers and avoid unnecessary hardship to the

22  customers, approximately 2,500 claims were filed by these PIM

23  and PAM account holders which is Barclays' and Neuberger's

24  transferred accounts.

25       The trustee denied nearly all of these claims

1  following the Court's entry of the December 14th order.

2  Forty-eight individuals objected to the trustee's determination

3  of their claim.  In the intervening months the trustee has

4  worked closely with these claimants to obtain consensual

5  withdrawal of their objections.  Three claimants provided

6  additional information and have been issued revised

7  determination letters allowing their claims.  Nineteen

8  claimants have stipulated with the trustee to withdraw their

9  objections.  And there are an additional nineteen claimants

10 with whom we are continuing to work and believe we'll get

11 consensual withdrawal, and they are not subject to the motion.

12         When we filed this motion in early June the remaining

13 seven objections represented invalid customer claims.  Unable

14 to obtain consensual withdrawal, the trustee filed the motion

15 seeking expungement from the record of the objections.  Since

16 the filing of the motion two objectors have contacted the

17 trustee.  In one instance the trustee may issue a revised

18 determination allowing the claim, and that objection has been

19 removed from the amended order.

20         SLF PPIC Fund has filed a written response to the

21 motion but has since stipulated with the trustee to withdraw it

22 and its original objection to the termination.  That objection

23 is also not subject to the amended order.

24         The remaining five objections should be expunged and

25 the trustee's determination confirmed, because the claims have

- 17 -

1  received their property via the account transfers and because
2  the parties have not responded to the motion.
3           Details regarding the accounts are available in the
4  motion's exhibits.  Should the Court desire further implication
5  of the property transfers to Barclays and Neuberger Berman,
6  Gina Greer, a partner at Deloitte is here with us today.  Ms.
7  Greer has extensive knowledge regarding the account transfers.
8  If called she would testify that the five objections subject to
9  this motion pertain to accounts that were included in the
10 account transfers and that all assets associated with each of
11 these accounts was transferred to either Barclays or Neuberger
12 Berman or otherwise provided for, as described in the November
13 20, 2009 account transfer motion.
14          The five claimants subject to the amended order have
15 each received their SIPA protected customer property at their
16 new brokers, and none is entitled to further recovery from or
17 recourse to the LBI estate.
18          THE COURT:  I'll accept that as a proffer of what she
19 would testify to.  I assume, given the fact that this is
20 uncontested, there's no party who objects to that or would wish
21 to further examine the witness.
22          Hearing nothing, I accept my own assumption as true
23 and accept this as a closed record and grant your motion as
24 uncontested as to those claimants that are currently subject to
25 the pending motion.

- 18 -

1          MR. FRELINGHUYSEN:  Thank you, Your Honor.

2          THE COURT:  Is there anything more for today?

3          MR. KOBAK:  I believe the other items have all been

4   adjourned, so this concludes our calendar, Your Honor.

5          THE COURT:  Very good.  We're adjourned.  Thank you.

6          MR. KOBAK:  Thank you.

7       (Proceedings concluded at 10:23 AM)

```
                                                            - 19 -
 1
 2                              I N D E X
 3
 4                             R U L I N G S
 5                                              PAGE      LINE
 6
 7    Fourth Application of                      8         12
 8    Hughes Hubbard & Reed LLP Approved
 9
10    Trustee's Motion for an Order Upholding   17         22
11    the Trustee's Determinations as to
12    Claims Previously Satisfied in
13    Accordance with SIPA and the Account
14    Transfer Order and Expunging
15    Related Objections Thereto - Approved
16
17
18
19
20
21
22
23
24
25
```

- 20 -

C E R T I F I C A T I O N

I, Sharona Shapiro, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

Sharona Shapiro

AAERT Certified Electronic Transcriber (CET**D-492)

Veritext

200 Old Country Road

Suite 580

Mineola, NY 11501

Date:   June 25, 2010