# EXHIBIT A

AMENDMENT NO. 7 TO
AMENDED AND RESTATED CREDIT AGREEMENT

This AMENDMENT NO. 7 TO AMENDED AND RESTATED CREDIT AGREEMENT (this "*Amendment*"), dated as of June 3, 2008, is by and among GREENBRIER MINERALS, LLC, a Delaware limited liability company ("*Borrower*"), the other Credit Parties party hereto, the several banks and other financial institutions or entities from time to time party to this Agreement (the "*Lenders*"), and LEHMAN COMMERCIAL PAPER INC., as the administrative agent (in such capacity, the "*Administrative Agent*") under that certain Credit Agreement (as defined below);

WHEREAS, Borrower, the other Credit Parties, the Lenders and the Administrative Agent are parties to that certain Amended and Restated Credit Agreement, dated as of May 1, 2007, as amended by Amendment No. 1 to Credit Agreement, dated as of July 27, 2007, as further amended by Amendment No. 2 to Credit Agreement, dated as of August 31, 2007, as further amended by Amendment No. 3 to Credit Agreement, dated as of September 28, 2007, as further amended by Amendment No. 4 to Credit Agreement, dated as of October 31, 2007, as further amended by Amendment No. 5 to the Credit Agreement dated as of December 21, 2007, as further amended by Amendment No. 6 to the Credit Agreement dated as of April 29, 2008 (as may be further amended, restated or otherwise modified from time to time, the "*Credit Agreement*");

WHEREAS, the aggregate outstanding principal balance of the Term B Loans as of the date of this Amendment, and prior to giving effect to the amendments hereunder, is $39,000,000 and the Lenders' aggregate Term B Commitments have been reduced to zero in connection with such borrowings;

WHEREAS, Borrower has requested that the Lenders increase their aggregate Term B Commitments as of the Seventh Amendment Closing Date to $50,000,000; and

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual covenants and agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. *Defined Terms*

(a) Capitalized terms used but not defined in this Amendment shall have the meanings ascribed to such terms in the Credit Agreement. Unless the context of this Amendment clearly requires otherwise, references to the plural include the singular; references to the singular include the plural; the words "include," "includes," and "including" will be deemed to be followed by "without limitation"; and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or". The principles of interpretation set forth in Section 1.2 of the Credit Agreement shall apply to the provisions of this Amendment.

(b) Each reference to "hereof", "hereunder", "herein" and "hereby" and each other similar reference contained in the Credit Agreement, each reference to "this Agreement" or "the Credit Agreement" and each other similar reference contained in the Agreement or any other Loan Document and each reference contained in this Amendment to the "Credit Agreement" shall on and after the Seventh Amendment Closing Date refer to the Credit

6245151 v5                                    1

Agreement as amended by this Amendment. Any notices, requests, certificates and other instruments executed and delivered on or after the Seventh Amendment Closing Date may refer to the Credit Agreement without making specific reference to this Amendment but nevertheless all such references shall mean the Credit Agreement as amended by this Amendment unless the context otherwise requires.

2. *Amendments to Credit Agreement*. In reliance on the representations and warranties set forth in Section 3 below and subject to the satisfaction of the conditions set forth in Section 4 below, the parties hereby agree to the following amendments.

(a) The cover page is hereby amended by replacing the amount "$156,000,000" where it appears therein with the amount "$206,000,000".

(b) Section 1.1 is hereby amended by the addition of the following definitions, each in proper alphabetical order:

"*LIBOR*: for each LIBOR Period, a rate of interest determined by the Administrative Agent equal to the greater of:

(a) 3.00%; and

(b) (i) the offered rate for three month deposits in Dollars that appears on Telerate Page 3750 as of 11:00 a.m. (London time) on the second full LIBOR Business Day preceding the first day of each LIBOR Period (unless such date is not a Business Day, in which event the next succeeding Business Day will be used); divided by

(ii) a number equal to 1.0 minus the aggregate (but without duplication) of the rates (expressed as a decimal fraction) of reserve requirements in effect on the day that is two LIBOR Business Days prior to the beginning of such LIBOR Period (including basic, supplemental, marginal and emergency reserves under any regulations of the Board or other Governmental Authority having jurisdiction with respect thereto, as now and from time to time in effect) for Eurocurrency funding (currently referred to as "Eurocurrency Liabilities" in Regulation D of the Board) that are required to be maintained by a member bank of the Federal Reserve System.

If such interest rates shall cease to be available from Telerate News Service, LIBOR shall be determined from such comparable publicly available financial reporting service for displaying any Eurodollar rates as shall be selected by the Administrative Agent.

*Seventh Amendment*: that certain Amendment No. 7 to the Credit Agreement, dated as of June 3, 2008, by and among Borrower, the other Credit Parties party thereto, the Lenders and the Administrative Agent.

*Seventh Amendment Closing Date*: the date on which all of the

conditions precedent to the conditions set forth in the Seventh Amendment shall have been satisfied, which date shall not be later than June 3, 2008."

(c) Section 1.1 of the Credit Agreement is hereby amended by the amendment and restatement of the following terms in their entirety as follows:

"*Guaranty Confirmation*: those certain Confirmations of Guarantee and Security Agreement made by any Credit Party in favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties dated as of August 31, 2007, September 28, 2007, October 31, 2007, December 21, 2007, April 29, 2008, and June 3, 2008, in each case, in form and substance acceptable to the Administrative Agent.

*Mortgage Amendments*: that certain (i) First Amendment to Amended and Restated Credit Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining, LLC, dated effective as of August 31, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (ii) First Amendment to Second Amended and Restated Fee and Leasehold Credit Line Deed of Trust, Financing Statement On As Extracted Minerals, Assignment of Leases and Rents and Fixture Filing as to Matoaka Land Company, LLC, dated effective as of August 31, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (iii) Second Amendment to Amended and Restated Credit Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining, LLC, dated effective as of September 28, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (iv) Second Amendment to Second Amended and Restated Fee and Leasehold Credit Line Deed of Trust, Financing Statement On As Extracted Minerals, Assignment of Leases and Rents and Fixture Filing as to Matoaka Land Company, LLC, dated effective as of September 28, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (v) Third Amendment to Amended and Restated Credit Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining, LLC, dated effective as of October 31, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (vi) Third Amendment to Second Amended and Restated Fee and Leasehold Credit Line Deed of Trust, Financing Statement On As Extracted Minerals, Assignment of Leases and Rents and Fixture Filing as to Matoaka Land Company, LLC, dated effective as of October 31, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (vii) Fourth Amendment to Amended and Restated Credit Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining, LLC, dated effective as of December 21, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (viii) Fourth Amendment to Second Amended and

Restated Fee and Leasehold Credit Line Deed of Trust, Financing Statement On As Extracted Minerals, Assignment of Leases and Rents and Fixture Filing as to Matoaka Land Company, LLC, dated effective as of December 21, 2007, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (ix) Fifth Amendment to Amended and Restated Credit Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining, LLC, dated effective as of April 29, 2008, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; and (x) Fifth Amendment to Second Amended and Restated Fee and Leasehold Credit Line Deed of Trust, Financing Statement On As Extracted Minerals, Assignment of Leases and Rents and Fixture Filing as to Matoaka Land Company, LLC, dated effective as of April 29, 2008, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; (xi) Sixth Amendment to Amended and Restated Credit Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining, LLC, dated effective as of June 3, 2008, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties; and (xii) Sixth Amendment to Second Amended and Restated Fee and Leasehold Credit Line Deed of Trust, Financing Statement On As Extracted Minerals, Assignment of Leases and Rents and Fixture Filing as to Matoaka Land Company, LLC, dated effective as of June 3, 2008, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties.

*Term B Commitment*: as to any Lender, the obligation of such Lender to make a Term B Loan to Borrower hereunder on or after the Seventh Amendment Closing Date in an aggregate principal amount not to exceed the amount set forth under the heading "Term B Commitment" opposite such Lender's name on Annex I hereto, or, as the case may be, in the Assignment and Acceptance pursuant to which such Lender became a party hereto, as the same may be changed from time to time pursuant to the terms hereof. The aggregate amount of the Term B Commitments as of the Seventh Amendment Closing Date and after giving effect to the amendments thereunder is $50,000,000, and after giving effect to the borrowing of Term B Loans on the date hereof is $45,000,000."

(d) Section 2.1(b) of the Credit Agreement is hereby amended and restated as follows:

"As of the Seventh Amendment Closing Date (but without giving effect to any borrowings on the date thereof), the aggregate principal amount of all Term B Loans equals $39,000,000. Subject to the terms and conditions of the Seventh Amendment, each Lender severally agrees to make a term loan to Borrower on the Seventh Amendment Closing Date in an aggregate principal amount equal to such Lender's Term B Loan Percentage of $5,000,000. After the Seventh Amendment Closing Date,

subject to the terms and conditions of this Agreement (as amended by the Seventh Amendment), each Lender severally agrees to make term loans to the Borrower in an aggregate principal amount not to exceed such Lender's Term B Commitment (after giving effect to the borrowing on the Seventh Amendment Closing Date) Such term loans in the preceding two sentences, the "*Term B Loans*" Once repaid, Term B Loans may not be reborrowed and the Term B Commitment, once terminated or reduced, may not be reinstated."

(e)     Section 3 22(c) of the Credit Agreement is hereby amended by replacing the last sentence thereof, with the following:

"The Original Mortgages, as amended and restated by the Mortgages, constitutes a fully perfected Lien on, and security interest in, all right, title and interest of the Credit Parties in the Properties described therein and the proceeds thereof, as security for the principal amount of $156,000,000 of the Obligations, and upon execution and delivery of the Sixth Amendment, and the filing of the Mortgage Amendments executed and delivered in connection therewith, shall constitute a fully perfected Lien on, and security in, all right, title and interest of the Credit Parties in the Properties described therein and the proceeds thereof, as security for all Obligations, including the principal amount of $206,000,000 of the Obligations, in each case prior and superior in right to any other Person (other than Persons holding Liens or other encumbrances or rights permitted by the relevant Mortgage)."

(f)     Section 4.2 of the Credit Agreement is hereby amended by adding the following new paragraphs thereto:

"(e)     The Lenders shall be satisfied with the business prospects of Borrower.

(f)     The Lenders shall be satisfied with the progress of Borrower in developing a plan to develop the reserves known as Buck Lilly, satisfactory to the Lenders.

(g)     The Lenders shall be satisfied with the status and termination provisions of all coal supply agreements including any amendments thereto."

(g)     Section 6.1 of the Credit Agreement is hereby amended and restated in its entirety as follows:

"(a)     <u>Consolidated Interest Coverage Ratio</u>. Permit the Consolidated Interest Coverage Ratio for any period of four consecutive fiscal quarters of Borrower, commencing March 31, 2009, to be less than 2.50:1.00.

(b)  Consolidated Leverage Ratio. Permit the Consolidated Leverage Ratio as of the last day of any period of four consecutive calendar quarters, commencing September 30, 2008, to exceed the following respective ratio for the following respective periods; *provided* that, notwithstanding the foregoing, for the fiscal quarter beginning July 1, 2008, the calculation of Consolidated EBITDA shall be calculated on an annualized basis so that (i) for the fiscal quarter ending September 30, 2008, Consolidated EBITDA shall be determined for such quarter and multiplied by four, (ii) for the fiscal quarter ending December 31, 2008, Consolidated EBITDA shall be determined for the two fiscal quarters ending December 31, 2008, and multiplied by two and (iii) for the fiscal quarter ending March 31, 2009, Consolidated EBITDA shall be determined for the three fiscal quarters ending March 31, 2009 and multiplied by four-thirds:

| Period | Ratio |
| --- | --- |
| From September 30, 2008 through December 31, 2008 | 6.25 to 1.00 |
| From January 1, 2009 through March 31, 2009 | 4.00 to 1.00 |
| From April 1, 2009 through December 31, 2009 | 3.00 to 1.00 |
| From January 1, 2010 and thereafter | 2.00 to 1.00 |

(c)  Minimum Current Ratio. At any time during the period commencing on October 1, 2008 and ending on December 31, 2008, permit the Current Ratio to be less than 1.25 to 1.0; and on or at any time after January 1, 2009 permit the Current Ratio to be less than 1.75 to 1.0."

(h)  Article VII of the Credit Agreement shall be amended by adding the following additional Event of Default immediately following clause (r) thereof:

"(s)  The modifications (as contemplated by the Seventh Amendment) of all of the Credit Parties' long-term coal supply agreements have not been effected on or before July 3, 2008."

(i)  Annex I to the Credit Agreement is hereby amended and restated in its entirety by Annex I attached to this Amendment

3.  *Representations and Warranties of Borrower* Each Credit Party, jointly and severally, represents and warrants as of the date hereof and on the Seventh Amendment Closing Date to the Administrative Agent and each Lender that:

(a)  Each Credit Party (i) has the power and authority, and the legal right, to make, deliver and perform this Amendment and (ii) has taken all necessary corporate or other

action to authorize the execution, delivery and performance of this Amendment;

(b) No consent or authorization of, filing with, notice to or other act by or in respect of, any Governmental Authority or any other Person is required to be obtained by a Credit Party in connection with the execution, delivery, performance, validity or enforceability of this Amendment;

(c) This Amendment (i) has been duly executed and delivered on behalf of each Credit Party and (ii) constitutes a legal, valid and binding obligation of each Credit Party, enforceable against each such Credit Party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law);

(d) The execution, delivery and performance of this Amendment, the borrowings under the Credit Agreement in connection herewith, and the use of the proceeds thereof will not result in a violation by any Credit Party of any Requirement of Law or any Contractual Obligation of any Credit Party and will not result in, or require, the creation or imposition of any Lien on any of its Properties or revenues pursuant to any Requirement of Law or any such Contractual Obligation (other than the Liens created by the Security Documents);

(e) After giving effect to the amendments set forth herein, the representations and warranties of the Credit Parties contained in the Loan Documents are true and accurate as of the date hereof with the same force and effect as if such had been made on and as of the date hereof;

(f) Each Credit Party is in compliance in all material respects with all terms and provisions set forth in the Loan Documents to which such Credit Party is a party on its part to be observed or performed; and

(g) No Default or Event of Default has occurred and is continuing.

4. *Conditions Precedent.* The effectiveness of this Amendment is subject to the satisfaction of the following conditions precedent:

(a) The Administrative Agent shall have received this Amendment, the Guaranty Confirmations, a Fifth Amendment to Amended and Restated Credit Line Deed of Trust, Assignment of Leases and Rents and Fixture Filing as to Greenbrier Smokeless Coal Mining, LLC, dated effective as of Sixth Amendment Closing Date, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties, and a Fifth Amendment to Second Amended and Restated Fee and Leasehold Credit Line Deed of Trust, Financing Statement On As Extracted Minerals, Assignment of Leases and Rents and Fixture Filing as to Matoaka Land Company, LLC, dated effective as of Sixth Amendment Closing Date, favor of, or for the benefit of, the Administrative Agent for the benefit of the Secured Parties, in each case, in form and substance acceptable to the Administrative Agent in its sole and absolute discretion and duly executed and delivered by a Responsible Officer of the applicable Credit Parties;

(b)     All Permits or other approvals necessary to be obtained by Credit Parties in connection with the execution, delivery and performance of the documents listed in Section 4(a) of this Amendment shall have been obtained and be in full force and effect;

(c)     Since the Closing Date, no event or circumstance having a Material Adverse Effect shall have occurred and shall be continuing;

(d)     After giving effect to the amendments set forth herein, the representations and warranties of the Credit Parties contained in the Loan Documents are true and accurate as of the date hereof with the same force and effect as if such had been made on and as of the date hereof;

(e)     The Administrative Agent shall have received written confirmation, satisfactory to the Administrative Agent in its sole discretion, that all of the Credit Parties' customers under long-term coal supply agreements have approved modifications of such contracts in a manner that will permit the Borrower (based upon projections acceptable to the Administrative Agent in its sole discretion) to meet its obligations under the Credit Agreement (including all financial covenants).

(f)     The Credit Parties shall pay, or cause to be paid, a fee to the Administrative Agent for the account of the Lenders on the Closing Date equal to $250,000, which fee, the Credit Parties acknowledge, the Administrative Agent shall be entitled to net from the proceeds of any further Loans advanced to the Credit Parties under the Credit Agreement; and

(g)     After giving effect to the amendments set forth herein, no Default or Event of Default shall have occurred and be continuing on the Seventh Amendment Closing Date or will occur after giving effect to the extensions of credit requested to be made on the Seventh Amendment Closing Date and the execution and delivery of this Amendment by the parties hereto.

5.     *Loan Documents.*  This Amendment shall constitute a Loan Document, as such term is defined in the Credit Agreement.

(b)     This Amendment is not intended to nor shall it be construed to create a novation or accord and satisfaction with respect to any of the Obligations.

(c)     Each Credit Party hereby reaffirms its obligations under each of the Loan Documents, as the same are amended hereby, and agrees and acknowledges that each such document and all of such obligations thereunder, remains in full force and effect after giving effect to this Amendment.

6.     *Counterparts.*  This Amendment may be executed by one or more parties to this Agreement on any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument. Delivery of an executed signature page of this Amendment by facsimile transmission shall be effective as delivery of a manually executed counterpart hereof. A set of the copies of this Amendment signed by all the parties shall be lodged with Borrower and the Administrative Agent.

7  *Severability.* Any provision of this Amendment that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8  *Integration*  This Amendment and the other Loan Documents represent the entire agreement of Borrower, the other Credit Parties, the Agents, the Arranger and the Lenders with respect to the subject matter hereof and thereof, and there are no promises, undertakings, representations or warranties by the Arranger, any Agent or any Lender relative to subject matter hereof not expressly set forth or referred to herein or in the other Loan Documents.

9  GOVERNING LAW.  THIS AMENDMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.

10.  *Submission To Jurisdiction, Waivers*  Borrower hereby knowingly, voluntarily and intentionally, irrevocably and unconditionally:

(a) submits for itself and its Property in any legal action or proceeding relating to this Amendment and the other Loan Documents to which its is a party (whether for claims sounding in contract or in tort), or for recognition and enforcement of any judgment in respect thereof, to the nonexclusive general jurisdiction of the courts of the State of New York, the courts of the United States of America for the Southern District of New York, and appellate courts from any thereof;

(b) consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

(c) agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to Borrower at its address set forth in Section 9.2 to the Credit Agreement or at such other address of which the Administrative Agent shall have been notified pursuant thereto;

(d) agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and

(e) WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LEGAL ACTION OR PROCEEDING REFERRED TO IN THIS SECTION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES.

11.  *Ratification.*  Except as expressly modified hereby, the Credit Agreement and each other Loan Document are each hereby ratified and confirmed by the parties hereto and

remain in full force and effect in accordance with the respective terms thereof.

12. *Survival.* The representations and warranties contained in Section 3 of this Amendment shall survive the execution and delivery of this Amendment and the Seventh Amendment Closing Date

13. *No Other Amendments; Reservation of Rights; No Waiver* Other than as otherwise expressly provided herein, this Amendment shall not be deemed to operate as an amendment or waiver of, or to prejudice, any right, power, privilege or remedy of any Lender, any Agent or any other Indemnitee under the Agreement or any of the other Loan Documents, nor shall the entering into of this Amendment preclude any such Person from refusing to enter into any further amendments with respect to the Agreement or any of the other Loan Documents. Other than as to otherwise expressly provided herein, this Amendment shall not constitute a waiver of compliance with any covenant or other provision in the Agreement or any other Loan Document or of the occurrence or continuance of any present or future Default or Event of Default.

14. *Costs, Expenses.* Subject to and in accordance with Section 9.5 of the Credit Agreement, regardless of whether the transactions contemplated by this Amendment are consummated, Borrower agrees to pay on demand all reasonable out-of-pocket costs and expenses of each Agent and each Lender incurred in connection with the development, preparation, execution and delivery of this Amendment, including the reasonable fees and disbursements and other charges of counsel and consultants to the Agents and charges of Intralinks.

15. *Headings.* The section headings contained in this Amendment are inserted for convenience only and will not affect in any way the meaning or interpretation of this Amendment.

16. *Amendments.* This Amendment may not be amended or modified except in the manner specified for an amendment of or modification to the Credit Agreement in Section 9.1 of the Credit Agreement.

[*Signature Page to Follow*]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed under seal and delivered by their respective duly authorized officers on the date first written above.

GREENBRIER MINERALS HOLDINGS, LLC

By: _____
Joseph C. Turley, III
President & CEO

GREENBRIER MINERALS, LLC, as Borrower

By: _____
Joseph C. Turley, III
President & CEO

GREENBRIER SMOKELESS COAL MINING, L.L.C.

By: _____
Joseph C. Turley, III
President & CEO

MATOAKA LAND COMPANY LLC

By: _____
Joseph C. Turley, III
President & CEO

POWHATAN MID-VOL COAL SALES, L.L.C.

By: _____
Joseph C. Turley, III
President & CEO

[Signature Page 1 of 2 to Amendment No. 7 to Credit Agreement]

LEHMAN COMMERCIAL PAPER INC.,
as Administrative Agent and a Lender

By: _____
J. Robert Chambers
Authorized Signatory

{Signature Page 2 of 2 to Amendment No. 7 to Credit Agreement}

Annex 1

Commitments

| Lender | Revolving Credit Commitment | Term A Commitment | Term B Commitment |
|---|---|---|---|
| Lehman Commercial Paper Inc.<br>745 Seventh Avenue<br>New York, New York 10019<br>Attention: Michelle Rosolinsky<br>Facsimile: (646) 758-5015 | $5,000,000 | $0 | $50,000,000 |