**Hearing Date:  July 14, 2010 at 10:00 a.m.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77027
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Alfredo R. Pérez

*Counsel for the Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ x
                                            :
In re:                                      :      Chapter 11
                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,      :      Case No.: 08-13555 (JMP)
                                            :
                Debtors.                    :      (Jointly Administered)
                                            :
------------------------------------------------------------ x
```

## DEBTORS' OBJECTION TO THE MOTION OF THE CHAPTER 11 TRUSTEE OF THE SUNCAL MASTER DEBTORS FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

Lehman Commercial Paper Inc. ("LCPI"), as debtor and debtor in possession, and its

affiliated debtors in the above-referenced Chapter 11 cases (collectively, with LCPI, the

"Debtors"), submit this objection ("Objection") to the motion ("Lift Stay Motion") of the

Trustee[1] seeking relief from the automatic stay in the Debtors' bankruptcy cases pursuant to

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion of the Chapter 11 Trustee of the SunCal Master Debtors for an Order Granting Relief from the Automatic Stay*, dated June 17, 2010 [Docket No. 9642].

Section 362(d) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code").  In support of this Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.    The Trustee has failed to satisfy his burden of demonstrating cause to lift the automatic stay in the Debtors' bankruptcy cases and, in particular, LCPI's bankruptcy case.  In this regard, a review of the factors enunciated by the Second Circuit in *In re Sonnax Indus., Inc.*,[2] and the application of those factors to this case, demonstrates that the Lift Stay Motion should be denied.

2.    Denial of the Lift Stay Motion is warranted not only because of what the Trustee admits in the Lift Stay Motion, but also based upon what he omitted from his incomplete presentation to the Court.  The Lift Stay Motion needs to be put into its proper context.  As demonstrated below, the true economic owner of the Properties are LCPI and the other first lien lenders.[3]  The Lift Stay Motion does not state what the value of the Properties is, or the range of offers which the Trustee is entertaining.  When the Trustee filed his Compromise Motion[4] (since withdrawn) to approve a settlement with the first lien lenders (including LCPI), the last appraised value of the Properties was $62 million  ("Appraised Amount").  Thus, the Appraised Amount is (a) approximately 26% of the principal amount of the first lien debt (the original principal amount of approximately $235 million), and (b) according to the Trustee's own pleading, less than the funds acknowledged to have been received by the specific SunCal Master Debtors that pledged their assets to the first lien lenders.  In other words, even according to the Trustee, the

---

[2]   907 F.2d 1280, 1286 (2d Cir. 1990).
[3]   LCPI owns approximately 30% of the first lien debt.  LCPI also owns approximately 15% of second lien debt, and approximately 65% of third lien debt, secured by the Properties.
[4]   A copy of the Compromise Motion is annexed as Exhibit "A" to the Declaration of Arthur Steinberg, dated July 9, 2010 ("Steinberg Declaration"), which is being filed simultaneously herewith.  A copy of the Term Sheet between the Trustee, LCPI and the first lien lenders which was attached to the Compromise Motion is annexed to the Steinberg Declaration as Exhibit "B."

"reasonably equivalent value" received by the entities that pledged their assets, is more than the current value of the Properties.

3.      In the fall of 2009, the Trustee filed the Compromise Motion in the SunCal Master Debtors' bankruptcy cases to approve a settlement with the first lien lenders which essentially provided that: (a) the Trustee would sell the Properties and the first lien lenders would be the stalking horse and make an initial credit bid of $62 million (the Appraised Amount); (b) the Trustee would be paid (i) $3 million (essentially to cover anticipated administrative expenses in the SunCal Master Debtors' cases) from the first lien lenders' cash collateral, (ii) up to $1.5 million to pay mechanic's liens to the extent the holders held superior liens to the first lien lenders in the Properties, (iii) 3.5% of the net proceeds received by the first lien lenders relating to a future sale of the Properties, (iv) up to $2 million of cash collateral[5] to preserve the Properties until sale, and (v) 50% of the remaining assets of the bankruptcy estate (including net recoveries from causes of action) until the SunCal Master Debtors' trade creditors were paid in full; and (c) in addition to the Properties, the balance of the cash collateral and the residual bankruptcy estate would be transferred to the first lien lenders.

4.      In seeking approval of this settlement with the first lien lenders, the Trustee made the following statements relating to the benefits of the settlement with the first lien lenders:

(a)      The Trustee's potential success against the first lien lenders to challenge their liens was "at best, uncertain." Compromise Motion, p. 13.

(b)      The Trustee's claims will be difficult to prove and expensive to litigate. The claims against the first lien lenders involve numerous, complex and disputed issues of fact and law surrounding the loan transactions and the financial condition of the Debtors. The litigation likely will require significant discovery and a lengthy drawn out trial. *See* Compromise Motion, p. 14.

---

[5]   When the SunCal Master Debtors filed for bankruptcy there was approximately $20 million in a cash collateral account. Approximately $6 million of cash collateral has been used by the Trustee; some portion of which has been used notwithstanding the objection of LCPI.

(c)     The Trustee will be unable to collect, in full, money damages from LCPI, a debtor in a bankruptcy. Any recovery would be an unsecured claim, and payable if and when distributions are made to unsecured creditors. *See* Compromise Motion, p. 14.

(d)     If not for the proposed settlement, unsecured creditors could receive nothing or substantially less than the settlement. *See* Compromise Motion, p. 16.

5.      In the Lift Stay Motion, the Trustee claims that, after he signed the Term Sheet, he "perceived" an ambiguity in one of the provisions. The so-called ambiguity related to the provision wherein $1.5 million was set aside to deal with mechanic's liens to the extent such liens were senior to the first lien lenders or would not otherwise be paid by title insurance on the Properties. The Trustee believed that $1.5 million, plus the availability of title insurance, would be sufficient to deal with the issue. However, after he signed the Term Sheet, he became concerned that, if he was wrong, he would lose some of the bargained for benefits of the settlement. Essentially, the Trustee did not want to take the risk that his assessment could be wrong. The first lien lenders made a subsequent proposal as to how the risk should be shared between the first lien lenders and the Trustee if the unexpected scenario relating to the magnitude of senior mechanics' liens, not covered by title insurance, would occur.

6.      Earlier this year, the Trustee withdrew his Compromise Motion. LCPI did not oppose the withdrawal because it reasonably expected that settlement discussions with the Trustee would continue and the settlement would be modified. Instead, the Trustee ceased communications with the Debtors, and the Trustee did nothing for months until he made a request to further use the first lien lenders' cash collateral. This cash collateral request was opposed by the first lien lenders, in part because of the failure of the Trustee to communicate with the first lien lenders and by the lack of progress in the SunCal Master Debtors' bankruptcy cases. In response to the first lien lenders' criticism of how the Trustee was conducting the SunCal Master Debtors' bankruptcy cases, the Trustee reflexively fired back that he would file

the Lift Stay Motion to sell the Properties in an especially tepid California real estate market and
sue LCPI.

7.      The draft complaint which the Trustee seeks to file against LCPI is basically the
same proposed pleading that he attached to a pleading in the SunCal Master Debtors' bankruptcy
cases before the Term Sheet was ultimately signed by him. It does not represent a "new
revelation" for the Trustee. Essentially, the Trustee is asking this Court to sanction a major,
protracted and expensive litigation against LCPI because of a relatively minor risk in an
otherwise agreed upon settlement which has a low probability of actually occurring.

8.      The issues presented in the Lift Stay Motion are very similar to those presented in
a dispute between LCPI and certain other affiliates of the SunCal Master Debtors ("Affiliated
SunCal Debtors").  In *In re Palmdale Hills Property, LLC*, Case 08-17206 ("Other SunCal
Matter"), the Court denied automatic stay relief, among other reasons, to permit the Ninth Circuit
Court of Appeals to rule on whether the automatic stay applies to equitable subordination claims
against a debtor ("Ninth Circuit Appeal").  The Court reasoned, in the Other SunCal Matter, that
to grant such stay relief would moot the Ninth Circuit Appeal, and the Court was disinclined to
do so.

9.      In denying automatic stay relief in the Other SunCal Matter, the Court responded
to the allegation that the Debtors were seeking to invoke the automatic stay against the Affiliated
SunCal Debtors as a "sword."  The Court properly noted there, and such comment is clearly
applicable to this case, that denying stay relief often had the potential salutary benefit of causing
the parties to engage in settlement discussions to resolve complex matters on a consensual basis.

10.     Any argument that the Trustee makes that denial of automatic stay relief would
cause delays in administering his case would, at this juncture, be exaggerated.  A prompt and
intensive effort to settle this matter will clearly save time and expense for all sides.  The Trustee

has held the Properties for a few years, and he has not presented any evidence that substantial injury would occur if the Properties are not sold now.  And, even if that were true, the effective economic owners of the Properties are the first lien lenders and they should decide when the Properties are to be brought to market.

11.    <u>Finally, the draft complaint attached to the Lift Stay Motion is essentially the same pleading that the Trustee attached to the proofs of claim he filed with this Court in the Debtors' bankruptcy cases</u>.  Thus, the Trustee submitted himself to the jurisdiction of this Court, and the issues raised in the draft complaint, if not resolved by settlement, can be resolved by this Court as part of a more streamlined and efficient claims resolution process.

12.    Based on the foregoing and as more particularly described below, an overwhelming majority of the *Sonnax* factors have not been established by the Trustee and the Lift Stay Motion should, therefore, be denied in its entirety.

<u>**ARGUMENT**</u>

**I.**

<u>**THE TRUSTEE HAS NOT MET HIS BURDEN OF DEMONSTRATING CAUSE FOR LIFTING THE AUTOMATIC STAY**</u>

13.    The Lift Stay Motion should be denied because the Trustee has failed to demonstrate cause to lift the automatic stay in the Debtors' bankruptcy cases to file his proposed motion ("<u>Sale Motion</u>") seeking to sell the Properties and commence his proposed adversary proceeding seeking a recovery in connection with the draft complaint ("<u>Trustee Proposed Adversary Proceeding</u>").

**A.    <u>The Automatic Stay</u>**

14.    The automatic stay provision is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envt'l Prot.*, 474 U.S. 494, 503 (1986) (quotation omitted).  Its stay against "the commencement or continuation . . . of

a judicial . . . proceeding" or "any act to obtain possession . . . or to exercise control over

property of the estate" (11 U.S.C. § 362(a)(1) and (3)) "is crucial for the benefit and protection of

creditors and the central bankruptcy objective of equal treatment of creditors." *Delta Air Lines,*

*Inc. v. Bibb (In re Delta Air Lines)*, 359 B.R. 454, 459 (Bankr. S.D.N.Y. 2006).

15.     Moreover, the automatic stay "prevents creditors from reaching the assets of the

debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims

can be assembled in the bankruptcy court for a single organized proceeding." *AP Indus., Inc. v.*

*SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990).  The stay

provides the debtor with a "breathing spell" after the commencement of a chapter 11 case,

shielding the debtor from harassment at a time when the debtor's personnel should be focusing

on the administration of the chapter 11 case. *Fid. Mortgage Investors v. Camelia Builders, Inc.*

*(In re Fid. Mortgage Investors)*, 550 F.2d 47, 53 (2d Cir. 1976) (Bankruptcy Act case).

16.     Section 362(d) of the Bankruptcy Code provides that a party may be entitled to

relief from the automatic stay under certain circumstances. 11 U.S.C. § 362(d); *In re Eclair*

*Bakery Ltd.*, 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000).  Specifically, relief from the stay will be

granted only where the party seeking relief demonstrates "cause":

> On request of a party in interest and after notice and a
> hearing, the court shall grant relief from the stay provided
> under subsection (a) of this section, such as by terminating,
> annulling, modifying, or conditioning such stay –
>
> > (1) for cause, including the lack of adequate
> > protection of an interest in property of such party in
> > interest;

11 U.S.C. § 362(d)(1).[6]  Section 362(d)(1) does not define "cause."  However, courts in this Circuit have determined that in examining whether cause exists they "must consider the particular circumstances of the case and ascertain what is just to the claimants, the debtor, and the estate." *City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983).

17.    The seminal decision in this Circuit on whether cause exists to lift the automatic stay is *Sonnax Industries, Inc. v. Tri Component Products Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1286 (2d Cir. 1990). *See Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999) (vacating District Court order granting stay relief where Bankruptcy Court had not applied *Sonnax* factors, made only sparse factual findings, and ultimately did not provide appellate court "with sufficient information to determine what facts and circumstances specific to the present case the court believed made relief from the automatic stay appropriate.").  In *Sonnax*, the Second Circuit outlined twelve factors to be considered when deciding whether to lift the automatic stay:

>    (1)    whether relief would result in a partial or complete resolution of the issues;
>
>    (2)    lack of any connection with or interference with the bankruptcy case;
>
>    (3)    whether the other proceeding involves the debtor as a fiduciary;
>
>    (4)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
>
>    (5)    whether the debtor's insurer has assumed full responsibility for defending it;
>
>    (6)    whether the action primarily involves third parties;
>
>    (7)    whether litigation in another forum would prejudice the interests of other creditors;

---

[6]    Sections 362(d)(2)-(4) of the Bankruptcy Code provide grounds for relief from the stay that are not applicable to the Lift Stay Motion.

(8)     whether the judgment claim arising from the other action is subject to equitable subordination;

(9)     whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10)    the interests of judicial economy and the expeditious and economical resolution of litigation;

(11)    whether the parties are ready for trial in the other proceeding; and

(12)    impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286. Only those factors relevant to a particular case need be considered, and factors need not be assigned equal weight. *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

18.     The moving party bears the initial burden to demonstrate that cause exists for lifting the stay under the *Sonnax* factors. *See Sonnax*, 907 F.2d at 1285.  If the movant fails to make an initial showing of cause, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection. *Id*. Further, the cause demonstrated must be "good cause." *Morgan Guar. Trust Co. v. Hellenic Lines, Ltd*., 38 B.R. 987, 998 (S.D.N.Y. 1984).

19.     The Trustee has failed to meet his initial burden of establishing good cause for lifting the automatic stay under the *Sonnax* analysis.  Thus, the burden does not shift to the Debtors to affirmatively demonstrate that relief from the stay is inappropriate. *Sonnax*, 907 F.2d at 1285.  Indeed, the *Sonnax* factors weigh heavily against lifting the automatic stay to allow the Trustee to proceed at this juncture.

**B.**    **Application of the Relevant Sonnax Factors**
       **Militates in Favor of Denying the Lift Stay Motion**

    **(i)**    **Second *Sonnax* Factor:  Lack of Any Connection**
       **With or Interference With the Bankruptcy Case**

    20.    While the Trustee focuses on the "interference" prong of this *Sonnax* factor, he completely fails to address the "connection" component. This is so because it cannot credibly be disputed that the Trustee's proposed actions have a direct connection to and will adversely affect LCPI's bankruptcy case.  LCPI is the beneficiary of valuable property interests including liens on the Properties.[7]  The claims of the first lien lenders are substantially greater than the value of the Properties, thus, making the first lien lenders, including LCPI, the true economic owners of the Properties.  Through the proposed Sale Motion and the Trustee Proposed Adversary Proceeding, the Trustee is seeking to strip LCPI of its predominant interests in the Properties. Depriving LCPI of these interests indisputably would have a direct connection to the LCPI bankruptcy case and the administration of its estate.

    21.    Moreover, there is no doubt but that the relief the Trustee seeks will have an adverse impact on LCPI's chapter 11 case and thus is directly connected to it.  It is well established that "[e]ven slight interference with the administration [of a chapter 11 case] may be enough to preclude relief in the absence of a commensurate benefit."  *In re* Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984). The effect of the Sale Motion and the Trustee Proposed Adversary Proceeding on, and interference with, the LCPI bankruptcy case, however, is unquestionably substantial.  Not only does the Trustee seek to disallow LCPI's claims and void LCPI's liens in a case in California, he also seeks authority to pursue affirmative recoveries against LCPI in that forum (i) for money damages allegedly arising from claims grounded in breach of fiduciary duty and breach of covenant of good faith and fair dealings; (ii) to equitably subordinate LCPI's

---

[7]    Among other things, LCPI is the collateral agent for the first lien debt.

claims in the SunCal Master Debtors' bankruptcy cases; (iii) to deprive LCPI of its rights to credit bid on the Properties; and (iv) to surcharge the first lien lenders' collateral for marketing expenses against the wishes of the first lien lenders.

22.    Furthermore, the Trustee has acknowledged the connection of the various claims he seeks to pursue because the very claims that are the subject of the Trustee Proposed Adversary Proceeding are the subject of proofs of claim filed by the Trustee in the Debtors' chapter 11 cases on or about September 17, 2009.[8] The resolution of claims filed in these chapter 11 cases is unequivocally connected to the administration of the Debtors' cases, and this Court should be the ultimate arbiter of those proofs of claim. *See In re WorldCom, Inc.*, No. 02-13533 (AJG), 2007 WL 841948, at *7 (Bankr. S.D.N.Y. March 12, 2007) ("The Court finds that the resolution of the Proof of Claim is directly connected with the bankruptcy proceedings and therefore, this Sonnax Factor weighs in favor of the Debtors.").

23.    Finally, the Trustee's reference to 28 U.S.C. § 1334(e) for the proposition that only the California Bankruptcy Court has exclusive jurisdiction over the Properties is "over the top."  The same argument applies equally to LCPI's claims against the SunCal Master Debtors. Section 1334(e) provides that "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction -- of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate . . . ."  Section 541(a) of the Bankruptcy Code sets forth what constitutes "property" of the estate.

> (a)  The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:
>
>> (1)  Except as provided in subsection (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

---

[8]   A sample proof of claim filed by the Trustee in the Debtors' bankruptcy cases is annexed as Exhibit "C" to the Steinberg Declaration.

11 U.S.C. § 541(a)(1). "The scope of [Section 541 of the Bankruptcy Code] is broad, and is intended to maximize the amount of property available for distribution to creditors according to priorities established by the Code." *Musso v. Ostashko*, 468 F.3d 99, 104 (2d Cir. 2006). LCPI's claims against the SunCal Master Debtors and, specifically, its liens on the Properties are unquestionably "property" of LCPI's bankruptcy estate and, therefore, this Court has exclusive jurisdiction over such property. As noted, because of the greater size of the first lien lenders' secured debt versus the smaller value of the Properties, the first lien lenders are, in reality, the economic owners of the Properties which the Trustee seeks to sell.

24.     In sum, the connection to the Debtors' bankruptcy cases of the relief sought by the Trustee in the Lift Stay Motion is wide and deep.

### (ii) Twelfth *Sonnax* Factor: Impact of the Stay On the Parties and the Balance of Harms

25.     The balance of harms supports denying the Lift Stay Motion. By arguing that the balance of harms weighs in his favor, the Trustee completely fails to acknowledge the complexity surrounding the Debtors' bankruptcy cases and that the Debtors are currently in the crucial stages of their reorganization efforts in the largest and most complex Chapter 11 filing in history. To say that the Debtors have been focused on preserving value at a frenetic pace would be an understatement. As this Court is well aware, the Debtors are dealing with an unprecedented number of novel, complex and pressing bankruptcy issues. To deprive the Debtors of the protections afforded by the automatic stay at this juncture would negatively impact the Debtors by interfering with the bankruptcy process which, in turn, prejudices their creditors.

26.     In addition, LCPI will incur substantial costs in defending itself in the Sale Motion and Trustee Proposed Adversary Proceeding if relief from the automatic stay is granted.

The burden imposed on LCPI in terms of the time, financial resources, and attention necessary to defend itself in these matters, far outweighs any purported harm to the SunCal Master Debtors. *See In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 382142, at *2 (Bankr. S.D.N.Y. Jan. 12, 2006) ("an order lifting the automatic stay would significantly prejudice the Debtors and their efforts to reorganize. . . . [Debtors] are managing a case with over 1,700 docket entries to date and have been dealing with a number of complex issues on an expedited basis"); *In re Bally Total Fitness*, 402 B.R. at 624 ("Forcing the Debtors to litigate at this point would distract and hinder the Debtors from their reorganization efforts and would take away the 'breathing space' necessary to allow them to restructure and preserve the value of their assets for the benefit of their creditors.").

27.     The Trustee maintains that "the creditors of the SunCal Master Bankruptcy Cases will be harmed if the Motion is not granted." Lift Stay Motion. ¶ 56. It should be noted that the largest and most significant creditors in the SunCal Master Debtors' bankruptcy cases are the first lien lenders, including LCPI. Moreover, the fact that the SunCal Master Debtors have themselves sought protection under Chapter 11 of the Bankruptcy Code and have their own set of creditors does not constitute sufficient "cause" for lifting LCPI's automatic stay. LCPI is charged with preserving its estate and resources for the benefit of its creditors. While the SunCal Master Debtors may wish to ignore LCPI's rights and interests in the Properties, this Court must be cognizant of the competing interests of these Debtors and their creditors. If the Lift Stay Motion is granted, the SunCal Master Debtors will continue to enjoy the protection of their automatic stay with respect to the Properties and LCPI's claims against them, but LCPI will be stripped of the automatic stay protections granted to it by the Bankruptcy Code. This result defies the policies underlying the Bankruptcy Code and implies that one debtor's bankruptcy case is more important than another debtor's bankruptcy case. This simply cannot be the case.

28.     The Trustee also references LCPI's stay relief motions ("LCPI Stay Motions") in the SunCal Master Debtors' bankruptcy cases (which were removed from the Court's calendar pursuant to a Court-approved stipulation more than a year ago**;** the LCPI Stay Motions may be re-set on calendar with an evidentiary hearing scheduled thereon, provided at least 60 days' notice of such hearing is filed with the Court and served on Trustee and his counsel), that settlement negotiations between the parties have "stalled" (Lift Stay Motion, ¶ 58) and that he "expects that LCPI will re-notice [the LCPI Stay Motions] for an evidentiary hearing." Lift Stay Motion, ¶ 55. The Trustee also contends that he cannot properly defend the LCPI Stay Motions without obtaining relief from the automatic stay in LCPI's bankruptcy case. However, the harms that the Trustee cites are, at this time, theoretical in nature as LCPI has not re-noticed the LCPI Stay Motions.

29.     Moreover, while the settlement negotiations may have stalled, they are not dead. The Trustee asserts that even though a term sheet was negotiated by the parties, a dispute arose between the Trustee and LCPI regarding the "interpretation of what proved to be ambiguous provisions in the Term Sheet." Lift Stay Motion, ¶ 26. However, the Trustee never articulates what this dispute is; LCPI believes that the outstanding dispute, in relation to the other matters where there is an agreement between the parties, is not so great that a settlement could not ultimately be achieved.[9] As this Court found in connection with the Other SunCal Debtors Matter:

> [T]he existence of the stay is not inconsistent with the pursuit of negotiations that could lead to a resolution of this ongoing dispute. The fact that the involuntary debtors, through their trustee, appeared to have reached an agreement in principle resolving many, if not all, of the same issues that are set forth in the equitable

---

[9] LCPI also does not agree that there are ambiguous provisions in the Term Sheet. As noted above, LCPI believes that the Trustee determined that the *unambiguous* provisions of the Term Sheet create a risk for the SunCal Master Debtors' estates which, on reflection, the Trustee has determined he does not want those estates to bear. Regardless of whether there is a risk, or that the Trustee's assessment of that risk is appropriate, the first lien lenders' effort to mitigate the perceived risk has not yet been reciprocated. Whatever the risk, LCPI is perplexed by the Trustee's apparent unwillingness to date to try to bridge it.

subordination complaint, demonstrates that it's possible for the parties to engage in potentially productive discussions, notwithstanding the fact that they [sic] stay remains in effect.

To the extent that the existence of the stay is viewed as an impediment of any sort to meaningful dialogue, I want to be absolutely clear in saying that I do not believe the stay impacts in any adverse way the ability of the parties to meet and confer -- to mediate or to otherwise seek a constructive resolution of the matters that are currently before the bankruptcy court in the Central District of California.

May 12, 2010 Hearing Transcript ("May 12 Transcript"), at 74:4 - 74:19.[10]  The same is true here.  The parties can resume settlement negotiations while the automatic stay is in place and, if a global settlement can be reached, it will inure to the benefit of both LCPI's creditors and the SunCal Master Debtors' creditors.

    (iii)    **Tenth Sonnax Factor:  The Interest of Judicial Economy and the Expeditious and Economical Resolution of Litigation**

30.  Judicial economy clearly supports denial of the Lift Stay Motion.  This is demonstrated by both what the Trustee has acknowledged in the Lift Stay Motion and what he conveniently omitted.  First, the Trustee asserts that at least $62 million of the loans made by the first lien and second lien lenders was used to refinance debts owed by the SunCal Master Debtors.  The Trustee forgets to mention that in addition to the foregoing, the SunCal Master Debtors also received, among other things, (a) $26 million of the loans made by the first and second lien lenders, (b) had access to, and ultimately utilized a $75 million revolver, and (c) a portion of the $25 million operating account.[11]  In short, the SunCal Master Debtors received not less than $169 million of the loans made by the first and second lien lenders.  Thus, the first lien lenders have a valid and unavoidable secured claim in the SunCal Master Debtors' bankruptcy

---

[10]   A copy of the May 12 Transcript is annexed to the Steinberg Declaration as Exhibit "D."
[11]   The Trustee implies that LCPI was the most substantial recipient of the loan proceeds.  It was not.  Most of the loan proceeds went to entities other than LCPI.

cases and a valid and unavoidable lien on the Properties to at least that extent ($169 million), an amount substantially in excess of the Properties' Appraised Value.

31.      Moreover, the Trustee states that "[f]rom the $75 million loaned to the SunCal Parent Debtor under the Third Lien Credit Agreement, $50 million was paid out of escrow directly to LCPI to pay down the obligations under the First Lien Agreement."  Lift Stay Motion, ¶ 22. Again, implicit in this statement is that approximately $25 million was available to the SunCal Master Debtors; this amount also properly forms the basis of the first lien lenders' valid and unavoidable secured claims in the SunCal Master Debtors' bankruptcy cases and its valid and unavoidable liens on the Properties.  Accordingly, any demands the Trustee may assert seeking to avoid claims of the first lien lenders or equitably subordinate such claims below the $194 million aggregate amount will not be successful.

32.      Next, while the Trustee asserts that he has "received multiple letters of intent to acquire the SunCal Subsidiary Debtors' Properties . . ." (Lift Stay Motion, ¶ 27), he conspicuously refrains from setting forth the current value of the Properties or the amount of the bids received.  There is only one fair inference from this omission:  the "offers" for the Properties (or if different, their current fair market value) is substantially less than the Appraised Amount ($62 million) which formed the basis of the Trustee's proposed settlement, and the amount of the first lien lenders' contemplated credit bid under the previously proposed settlement.  The first lien lenders are fearful that the Trustee will actually now try and sell the Properties for an amount **_less_** than the Appraised Amount.  Accordingly, even under a best case scenario for the Trustee, the first lien lenders would remain the dominant secured creditor who would receive all of the proceeds of sale from the Properties.  Thus, contrary to the assertions of the Trustee, the unsecured creditors of the SunCal Master Debtors would likely receive nothing if the automatic stay is lifted in the Debtors' bankruptcy cases.  Thus, because the likelihood of

any recovery for unsecured creditors from the Properties is objectively remote at best, lifting the stay to permit the California Bankruptcy Court to preside over the Trustee Proposed Adversary Proceeding (and, effectively, the Trustee's proofs of claim in these cases) is the antithesis of judicial economy, would be a waste of judicial resources and is completely inappropriate under the facts of this case.

33.    Moreover, if the automatic stay is lifted, there would be no expeditious and economical resolution of the disputes between the Trustee and LCPI.  Litigation would ensue which would be hotly contested, extremely expensive and very time consuming.  Issues relating to the first lien lenders' ability to credit bid would immediately come to center stage.  Conversely, as stated above, if the automatic stay is not lifted, the parties would be free to resume their dialogue about a possible settlement of all issues, which would be more efficient and less time consuming and costly.

34.    Accordingly, the tenth *Sonnax* factor weighs heavily in favor of denying the Lift Stay Motion.

**(iv)    Seventh *Sonnax* Factor:  Whether Litigation in Another
Forum Would Prejudice the Interests of Other Creditors**

35.    If the automatic stay is lifted, the Trustee will seek to avoid and subordinate LCPI's liens.  LCPI will be forced to expend large sums of money to defend itself, which will reduce distributions to its creditors.  Thus, lifting the automatic stay will clearly prejudice the interests of the creditors in this case.  Indeed, in the Other SunCal Debtors matter, the Ninth Circuit Bankruptcy Appellate Panel ("9th Circuit BAP") has already recognized that LCPI's creditors' rights "would be affected by [a] subordination action." *Lehman Commercial Paper, Inc. v. Palmdale Hills Property, LLC (In re Palmdale Hills Property, LLC)*, 423 B.R. 655, 668 (9th Cir BAP, 2009).  That "subordination action" is similar to the Trustee Proposed Adversary

Proceeding in this case and the same rationale applies.  This damage to LCPI's creditors should not be permitted.

36.    The Lift Stay Motion also fails to address the ways in which the rights of unsecured creditors in these Chapter 11 cases would be safeguarded in the Trustee Proposed Adversary Proceeding.  This Court, and not the California Bankruptcy Court, is uniquely situated to understand the interests of LCPI's unsecured creditors and to protect their interests.

### (v)    Eleventh *Sonnax* Factor:  Whether the Parties Are Ready for Trial in the Other Proceeding

37.    The parties are not ready for trial, and would not be ready for trial for some time.  As acknowledged in the Lift Stay Motion, the Trustee has not filed the Sale Motion or commenced the Trustee Proposed Adversary Proceeding and no discovery has been undertaken in connection with the issues to be raised either by the Sale Motion or the Trustee Proposed Adversary Proceeding.  Moreover, if the Sale Motion and the Trustee Proposed Adversary Proceeding were authorized to be filed, they would be hotly contested by LCPI.  Discovery would have to be conducted and various forms of motion practice would likely follow.  As noted, the first lien lenders' ability to credit bid to protect their interest in the Properties would need to be litigated. Indeed, as noted by the Trustee in the Compromise Motion, adjudication of the Trustee Proposed Adversary Proceeding would be protracted and expensive.  *See* Compromise Motion, p. 14.

### (vi)    Third *Sonnax* Factor:  Whether the Other Proceeding Involves the Debtor as a Fiduciary

38.    Contrary to the Trustee's conclusory assertions, neither LCPI nor any of the Debtors are fiduciaries of the SunCal Master Debtors.  The Trustee is the sole current fiduciary of the SunCal Master Debtors.

**(vii)    Fourth *Sonnax* Factor:  Whether a Specialized Tribunal with
the Necessary Expertise has been Established to Hear the Cause of Action**

39.    No specialized tribunal has been established to consider the Sale Motion or the

Trustee Proposed Adversary Proceeding.  That the SunCal Master Debtors' bankruptcy cases are

currently pending before the California Bankruptcy Court does not make that court a specialized

tribunal under *Sonnax. See, e.g., In re Cicale*, No. 05-14462 (AJG), 2007 WL 1893301, *3 n.3

(Bankr. S.D.N.Y. June 29, 2007); *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2007 WL 841948,

at *7 (Bankr. S.D.N.Y. March 12, 2007); *see also In re Bally Total Fitness of Greater New York,

Inc.*, 411 B.R. 142, 147-148 (S.D.N.Y. 2009).  Indeed, this Court is as much a "specialized

tribunal" as any other court with respect to the substantive disputes sought to be pursued in the

as-of-yet filed Trustee Proposed Adversary Proceeding and the already-filed proofs of claim

pending before this Court.

**(viii)    First *Sonnax* Factor:  Whether Relief Will Result
In a Partial or Complete Resolution of the Issues**

40.    Relief from the automatic stay would initiate the commencement of a multi-step,

prolonged and expensive litigation process.  It would include, but not be limited to, extensive

discovery, hearings, motion practice, and possibly trial.  Full participation in the litigation

process would not necessarily lead to complete resolution of the issues, as rulings and decisions

by the California Bankruptcy Court may be subject to several levels of appeal by the various

parties to the Trustee Proposed Adversary Proceeding.

41.    The fact that LCPI has previously taken an active role in the SunCal Master

Debtors' bankruptcy cases to protect its rights therein should not be the linchpin for stripping

LCPI and the other Debtors of their fundamental right to the protections afforded by the

automatic stay.  As stated above, this Court has exclusive jurisdiction over the property of the

Debtors -- this property includes LCPI's secured claims and liens against the SunCal Master

Debtors and the Properties.  There is no reason why the Trustee could not seek to address the issues associated with LCPI's secured claims and liens in this Court.  Again, the Trustee has filed proofs of claim in the Debtors' bankruptcy cases; the resolution of those proofs of claim should be the province of this Court, not the California Bankruptcy Court.

> **(ix)    Fifth *Sonnax* Factor:  Whether the Debtor's Insurer has Assumed Responsibility for Defending the Action**

42.    While the Trustee did not discuss this *Sonnax* factor, it is relevant to the Lift Stay Motion.  The Trustee is unquestionably seeking affirmative relief in the Trustee Proposed Adversary Proceeding against LCPI in connection with the claims for money damages and the equitable subordination of claims.  *See Lehman Commercial Paper, Inc. v. Palmdale Hills Property, LLC (In re Palmdale Hills Property, LLC)*, 423 B.R. 655, 667 (9th Cir BAP, 2009) (in connection with the Other SunCal Debtors matter, finding that "equitable subordination seeks affirmative relief").  Upon information and belief, LCPI lacks insurance coverage to satisfy the litigation costs that will be incurred if the automatic stay is lifted.  The Trustee's argument simply overlooks the fact that LCPI's estate will be directly burdened by these costs and that no insurance coverage is available.

> **(x)    Sixth *Sonnax* Factor:  Whether the Action Primarily Involves Third Parties**

43.    Unlike most cases where stay relief is sought to proceed against a third party, here the stay relief sought would directly affect a debtor in possession -- LCPI -- and its estate.  Consequently, the requested stay relief is not appropriate and should not be granted.[12]

---

[12]   In the unlikely event that this Court grants the Lift Stay Motion, the Trustee states, "[i]n light of the urgency of the relief requested herein, the Trustee requests that the Court waive the 14-day stay requirement of Bankruptcy Rule 4001(a)(3) and provide that any order granting the relief requested herein become effective immediately upon entry." Motion, ¶ 59.  The Trustee's claim of "urgency" is belied by the fact that he waited over six (6) months to file the Lift Stay Motion since he acknowledged that he withdrew the Compromise Motion on January 25, 2010, *see* Lift Stay Motion, ¶ 26, and that the Lift Stay Motion was filed only after the first lien lenders opposed the Trustee's continued use of cash collateral.  The purpose of Bankruptcy Rule 4001(a)(3) is to "provide[] a temporary breathing spell for a debtor to appeal and obtain a stay pending appeal thereby avoiding the potential devastating consequences that stay relief can have on the success of the bankruptcy case." *In re Henderson*, 395 B.R. 893, 904 (Bankr. D. S.C.

44.    Accordingly, based on the foregoing, all of the relevant *Sonnax* factors[13] support the denial of the Lift Stay Motion.

## II.

### THE COURT SHOULD DEFER RULING ON THE LIFT STAY MOTION UNTIL THE NINTH CIRCUIT APPEAL IS DECIDED

45.    While the Trustee does not represent the Affiliated SunCal Debtors, was not involved in the Other SunCal Matter and the issues in the Ninth Circuit Appeal are not identical, the issues here are sufficiently similar in that the Trustee is seeking relief from the automatic stay to commence the Trustee Proposed Adversary Proceeding, which is similar to the equitable subordination action sought to be prosecuted by the Affiliated SunCal Debtors.  Accordingly, in order to avoid any confusion between the two matters, including the possibility of mooting the Ninth Circuit appeal and inconsistent rulings, this Court should preserve the *status quo* and similarly defer ruling on the Lift Stay Motion.

## III.

### TO THE EXTENT STAY RELIEF IS WARRANTED, IT SHOULD ONLY BE GRANTED ON A CONDITIONAL BASIS WITH RESPECT TO THE SALE MOTION ONLY

46.    Based on the foregoing, LCPI does not believe that the Trustee has satisfied his burden of demonstrating cause for obtaining relief from the automatic stay.  However, if the Court believed it is necessary to modify the automatic stay in order for the Sale Motion only to go forward, LCPI believes that such automatic stay relief should only be considered (a) after the parties have first fully tried to settle this matter, and then (b) only subject to the express condition

---

2008). As the movant, the Trustee was required to demonstrate, but has not "demonstrate[d,] countervailing factors that would militate against [a stay pending appeal] to obtain a waiver of the temporary stay of Fed. R. Bankr. P. 4001(a)(3)" and shown that the SunCal Master Debtors "would be irreparably injured by leaving the stay in place temporarily." *Id.*  Accordingly, the 14-day stay requirement in Bankruptcy Rule 4001(a)(3) should remain intact.

[13]    The eighth and ninth *Sonnax* factors do not apply to this controversy.

that the first lien lenders' can credit bid at the sale of the Properties, and (c) the liens of the first

lien lenders cannot be surcharged for sale expenses without their express consent.

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that the Lift

Stay Motion be denied in its entirety, and that the Court grant such other and further relief as is

just and proper.

Dated: New York, New York
      July 9, 2010

                                 WEIL, GOTSHAL & MANGES LLP

                              By: /s/ Alfredo R. Pérez
                                  Alfredo R. Pérez
                                  700 Louisiana Street, Suite 1600
                                  Houston, Texas 77027
                                  Telephone: (713) 546-5000
                                  Facsimile: (713) 224-9511

                                  KING & SPALDING LLP
                                  1185 Avenue of the Americas
                                  New York, New York 10036
                                  Telephone: (212) 556-2100
                                  Facsimile: (212) 556-2222
                                  Arthur Steinberg
                                  Scott Davidson

                                  *Counsel for the Debtors and Debtors-in-Possession*