## Exhibit A

Compromise Motion

1    **WEILAND, GOLDEN,**
     **SMILEY, WANG EKVALL & STROK, LLP**
2    Evan D. Smiley, State Bar No. 161812
     esmiley@wgllp.com
3    Hutchison B. Meltzer, State Bar No. 217166
     hmeltzer@wgllp.com
4    Robert S. Marticello, State Bar No. 244256
     rmarticello@wgllp.com
5    650 Town Center Drive, Suite 950
     Costa Mesa, CA 92626
6    Telephone:  714-966-1000
     Facsimile:   714-966-1002
7
     Attorneys for Alfred H. Siegel,
8    Chapter 11 Trustee

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                    **SANTA ANA DIVISION**

12   In re                              Case No. 8:08-bk-15588-ES

13   LBREP/L-Sun Cal Master I, LLC, et al.,   Chapter 11 Case

14             Debtor.                   (Jointly Administered with Case Nos.
                                         8:08-bk-15637-ES; 8:08-bk-15639-ES; and
15                                       8:08-bk-15640-ES)
     _____ Affects LBREP/L-SunCal Master I,
16   LLC, Only
                                         **MOTION TO APPROVE COMPROMISE**
17   _____ Affects LBREP/L-SunCal McAllister   **BETWEEN TRUSTEE, THE OFFICIAL**
     Ranch, LLC, Only                    **COMMITTEE OF UNSECURED**
18                                       **CREDITORS, AND LEHMAN**
     _____ Affects LBREP/L-SunCal        **COMMERCIAL PAPER INC., AS**
19   McSweeny Farms, LLC, Only           **ADMINISTRATIVE AGENT FOR FIRST**
                                         **LIEN LENDERS; AND MEMORANDUM OF**
20   _____ Affects LBREP/L-SunCal        **POINTS AND AUTHORITIES; AND**
     Summerwind Ranch, LLC, Only         **DECLARATION OF ALFRED H. SIEGEL IN**
21                                       **SUPPORT**
       X   Affects All Debtors.
22                                       DATE:    **November 3, 2009**
23                                       TIME:    **10:30 a.m.**
                                         PLACE:   **Courtroom 5A**
24                                                **411 W. Fourth St.**
                                                  **Santa Ana, CA 92701**
25

26

27

28

318786.7                                        MOTION TO APPROVE COMPROMISE

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................ 1

II.  BACKGROUND ........................................................................................ 2

    A.  General Background ...................................................................... 2

    B.  Significant Post-Petition Events ................................................... 3

        1.  The LCPI Stay Relief Motions ............................................ 3

        2.  Trustee's Use Of Cash Collateral ...................................... 3

    C.  Pre-Petition Events Giving Rise to Claims Against LCPI ............. 4

        1.  The First And Second Lien Credit Agreement ................... 5

        2.  The Third Lien Credit Agreement ....................................... 6

        3.  The Debtors' Alleged Defaults Under The Lien Credit
           Agreements ...................................................................... 6

III.  PROPOSED SETTLEMENT ..................................................................... 7

IV.  LEGAL ANALYSIS .................................................................................. 11

    A.  The Probability Of Success In The Litigation .............................. 12

    B.  The Difficulties To Be Encountered In The Matter Of Collection .............. 14

    C.  The Complexity, Expense, Inconvenience, and Delay .................. 14

    D.  The Paramount Interests Of Creditors ....................................... 15

V.  CONCLUSION ....................................................................................... 17

DECLARATION OF ALFRED H. SIEGEL .................................................... 18

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re A & C Props.*,
    784 F.2d 1377 (9th Cir. 1986) ............................................................... 12

*In re America West Airlines, Inc.*,
    214 B.R. 382 (Bankr. D. Ariz. 1997) .................................................... 12

*In re Hermitage Inn, Inc.*,
    66 B.R. 71 (Bankr. D. Colo. 1986) ...................................................... 12

*In re Mickey Thompson Entertainment Group, Inc.*,
    292 B.R. 415 (B.A.P. 9th Cir. 2003) ................................................... 12

*In re Schmitt*,
    215 B.R. 417 (B.A.P. 9th Cir. 1997) ................................................... 12

*In re World Health Alternatives, Inc.*,
    344 B.R. 291 (Bankr. D. Del. 2006) .................................................... 12

## STATUTES

11 U.S.C. § 363(c) ................................................................................ 3, 4

11 U.S.C. § 363(f) ................................................................................ 16

11 U.S.C. § 1123(a)(5)(D) ..................................................................... 8

## RULES

Federal Rule of Bankruptcy Procedure 9019(a) ..................................... 11, 12

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE:

2       Alfred H. Siegel ("Trustee"), the chapter 11 trustee of the jointly administered

3   estates of LBREP/L-SunCal Master I, LLC (the "Parent Debtor"), and LBREP/L-SunCal

4   McAllister Ranch, LLC, LBREP/L-SunCal McSweeny Farms, LLC, and LBREP/L-SunCal

5   Summerwind Ranch, LLC (collectively, the "Subsidiary Debtors," and together with the

6   Parent Debtor, the "Debtors"), submits this Motion (the "Motion") to Approve Compromise

7   Between Trustee, the Official Committee of Unsecured Creditors (the "Committee"), and

8   Lehman Commercial Paper Inc., as First Lien Administrative Agent for the First Lien

9   Lenders ("LCPI").[1]  In support of the Motion, Trustee submits the following memorandum

10  of points and authorities, and the Declaration of Alfred H. Siegel (the "Siegel Declaration").

11                    **MEMORANDUM OF POINTS AND AUTHORITIES**

12

13  I.   **INTRODUCTION**

14      By this Motion, Trustee seeks approval of a term sheet (the "Term Sheet") globally

15  resolving the disputes existing between Trustee, the Committee, and LCPI.  Approval of

16  the Term Sheet will settle the estates' claims against LCPI and resolve LCPI's stay relief

17  proceeding, thereby saving the estates significant administrative expense and eliminating

18  the risk associated with litigation.  Under the Term Sheet, the estates will immediately

19  receive $6.5 million in cash to administer these cases, preserve estate property, and

20  pursue other litigation, and the potential to recover significant funds in the future for

21  distribution to unsecured trade creditors.  Moreover, by resolving the disputes between

22  Trustee and LCPI, the Term Sheet will clear the way for Trustee to propose a chapter 11

23  plan with the support of LCPI, and to expeditiously pursue confirmation of the same.

24  Trustee believes that the proposed settlement is in the best interests of the bankruptcy

25

26

27  ───────────────

    [1]   Unless the context clearly requires otherwise, LCPI means and refers to LCPI only in its capacity as

28  administrative agent.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  estates. Accordingly, Trustee requests that the Court enter an order approving the Term

2  Sheet.

3

4  **II.    BACKGROUND**

5      **A.    General Background**

6          On or about September 10 and 11, 2008 (the "Petition Dates"), involuntary petitions

7  under chapter 11 of the Bankruptcy Code were filed against the Debtors. The Debtors'

8  bankruptcy cases are being jointly administered pursuant to an order of this Court entered

9  on November 13, 2008. On or about October 29, 2008, the Court entered an order

10  approving Alfred H. Siegel's appointment as the chapter 11 trustee.

11          The Parent Debtor is a holding company, established to the fund the real estate

12  development projects owned by each of its four operating subsidiaries, *i.e.*, the Subsidiary

13  Debtors and LBREP/L-SunCal Patterson Ranch, LLC. Ninety percent (90%) of the Parent

14  Debtor is owned by LBREP Lakeside SC Master I, LLC ("Lehman Lakeside"), which is an

15  affiliate of Lehman Bros. Real Estate Partners, LP ("LBREP").[2] The remaining equity

16  interests in the Parent Debtor are owned by SCC Ranch Ventures, LLC, which is an

17  affiliate of SCC Acquisitions, Inc. d/b/a SunCal Companies. Lehman Lakeside is the

18  managing member of the Parent Debtor.

19          The Parent Debtor's primary asset, other than cash, is its interests in its operating

20  subsidiaries. The Parent Debtor is the sole equity member of the Subsidary Debtors,

21  each of which, in turn, owns a real estate development project bearing the same name

22  (collectively, the "Properties"). The Parent Debtor also has cash in accounts with a

23  current aggregate balance of approximately $16 million, which funds were formerly held in

24  a "Development Account" established under the LCPI loan documents. As discussed in

25  further detail below, LCPI asserts a first priority lien against the Properties and the Parent

26  _____

27      [2]   Both LCPI and LBREP are affiliates of Lehman Brothers Holding, Inc. ("LBHI"). LCPI and LBHI are
debtors in possession in jointly administered chapter 11 cases (Lead Case No. 08-13555) pending before
28  the United States Bankruptcy Court for the Southern District of New York. Lehman Lakeside is not a debtor.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  Debtor's cash for the full amount of the loans to the Parent Debtor.  Trustee estimates that

2  there is approximately $60 million in non-lien lender debt based upon the Debtors

3  schedules and claims filed in the cases.

4  **B.    Significant Post-Petition Events**

5  **1.    The LCPI Stay Relief Motions**

6  On October 2, 2008, LCPI filed four motions for relief from the automatic stay, one

7  in each individual case (the "LCPI Stay Relief Motions"), which were originally scheduled

8  for hearing on October 28, 2008.  The Court continued the hearing to November 20, 2008,

9  to allow Trustee an opportunity to analyze the motions and prepare a response, if

10  necessary, thereto.  Both Trustee and the Committee opposed the LCPI Stay Relief

11  Motions, in part, because the amount and validity of LCPI's security interests were in

12  dispute.  Following a hearing on October 28, 2008, the Court set the LCPI Stay Relief

13  Motions for an evidentiary hearing on February 6, 2009 (the "Evidentiary Hearing").  The

14  Court also set certain related deadlines to designate experts, file expert reports, and file

15  trial briefs.  To prepare for the Evidentiary Hearing, Trustee sought discovery from LCPI

16  and certain third parties.

17  Trustee and LCPI entered into multiple stipulations to continue the Evidentiary

18  Hearing and extend the related deadlines, which were approved by the Court, and the

19  Evidentiary Hearing was ultimtaely continued to June 19, 2009.  However, due to the

20  settlement discussions between Trustee and LCPI, the parties entered into a stipulation to

21  take the Evidentiary Hearing off calendar, and to suspend the related deadlines and

22  discovery, subject to the parties' rights to re-notice and/or reinstate the same.  Absent

23  approval of the Term Sheet, Trustee expects that LCPI will re-notice the Evidentiary

24  Hearing and seek stay relief to foreclose on its interests in the Properties.

25  **2.    Trustee's Use Of Cash Collateral**

26  On November 4, 2008, the Trustee filed an Emergency Motion for Order

27  Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c) (the "Emergency

28  Motion"), which was opposed by LCPI.  The Emergency Motion was heard on November

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

318786.7                                            3                    MOTION TO APPROVE COMPROMISE

1   6, 2008.  On November 12, 2008, the Court entered an order granting the Emergency

2   Motion, and authorizing the use of cash collateral through November 20, 2008, pursuant

3   to a very limited budget allowing use of the cash on hand to pay the expenses necessary

4   to preserve the Properties.  On December 8, 2008, the Court entered an Order

5   Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c) From November 21,

6   2008 Through February 28, 2009.  Thereafter, Trustee and LCPI stipulated to the use of

7   cash collateral from March 1, 2009, through March 31, 2009, and then from April 1, 2009,

8   through June 30, 2009, on the same terms and conditions as in the Final Order, subject to

9   a reservation of rights, and with such approval to use cash collateral deemed over LCPI's

10  continuing objection.  The stipulations were approved by orders of this Court.

11          On July 2, 2009, Trustee filed and served a Motion for Order Authorizing Use of

12  Cash Collateral Through September 30, 2009 (the "Cash Collateral Motion"), and an

13  Application for Order Shortening Time on the Cash Collateral Motion (the "OST

14  Application").  On that same date, the Court entered an order granting the OST

15  Application, and setting the hearing on the Cash Collateral Motion on July 16, 2009.  On

16  July 16, 2009, the Court authorized the interim use of cash collateral pending a final

17  hearing on August 4, 2009.  Prior to the final hearing, LCPI and Trustee stipulated to the

18  use of cash collateral through September 30, 2009, on substantially the same terms and

19  conditions as in prior cash collateral stipulations and orders of this Court, to allow Trustee

20  to use the cash on hand only as necessary to preserve and maintain the value of the

21  Properties and protect these estates from liability.  LCPI and Trustee have further

22  stipulated to the use of cash collateral through October 31, 2009.  As discussed in further

23  detail below, the Term Sheet enables Trustee to use cash collateral to fully administer

24  these estates, as opposed to only to preserve the Properties.

25          **C.    Pre-Petition Events Giving Rise to Claims Against LCPI**

26          Following his appointment, and in connection with the LCPI Stay Relief Motions,

27  Trustee and his professionals analyzed the pre-petition transactions between LCPI and

28  the Debtors.  Trustee determined that the estates hold certain potential claims against

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   LCPI.  The following is a summary of the relevant facts giving rise to the estates' potential

2   claims.  LCPI has indicated that it strongly disputes each of Trustee's claims and

3   assertions.

4           **1.**       **The First And Second Lien Credit Agreement**

5         The Parent Debtor, as borrower, entered into three Lien Credit Agreements with

6   LCPI (collectively, the "Lien Credit Agreements").  Pursuant to the First and Second Lien

7   Credit Agreements, which were entered into on or around January 19, 2006, the Parent

8   Debtor borrowed a total of $320 million (collectively, the "January 2006 Loans") as follows:

9   (1) a revolving credit facility of $75 million and term loan facility of $160 million under the

10  First Lien Credit Agreement; and (2) a $85 million term loan facility under the Second Lien

11  Credit Agreement.  The Parent Debtor's obligations under First and Second Lien Credit

12  Agreements were guaranteed by the Subsidiary Debtors, and these upstream guaranties

13  were secured by first and second liens against the Properties.  The Subsidiary Debtors

14  also contributed approximately $45 million to repay the existing financing secured by the

15  Properties.  LCPI was a lender under the January 2006 Loans, and acted as the sole

16  administrative agent, and Lehman Brothers, Inc. ("Lehman Brothers"), served as the

17  advisor, sole lead arranger and syndication agent.  Later, Gramercy Warehouse Funding

18  I, LLC, replaced LCPI as the administrative agent under the Second Lien Credit

19  Agreement.

20        Although the Debtors incurred secured debt totaling $320 million, a significant

21  portion of proceeds from the January 2006 Loans was not available to the Debtors for

22  operations and the development of the Properties.  Specifically, pursuant to the First Lien

23  Credit Agreement, the sum of $144 million was paid directly from escrow to the Parent

24  Debtor's equity owners (the "Dividend").  The sum of $10.6 million was paid from escrow

25  to LCPI for its arrangement and administration fee.  Approximately $62 million was

26  disbursed to Lehman Ali, Inc., to repay previous loans to the Subsidiary Debtors.

27  Approximately $25 million was immediately set aside by escrow to fund a "Development

28  Account," which the Debtors were not permitted to use, but served as the lenders'

318786.7

5

MOTION TO APPROVE COMPROMISE

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    collateral. Thus, over $240 million of the $320 million loaned to the Parent Debtor, and

2    upon which the Debtors paid interest, was either disbursed directly to LCPI or other

3    entities, or was otherwise unavailable to the Parent Debtor.

4            **2.**      **The Third Lien Credit Agreement**

5        On February 6, 2007, a Third Lien Credit Agreement was entered into by the

6    Parent Debtor, which provided for an additional $75 million term loan (the "February 2007

7    Loan," collectively with the January 2006 Loans, the "Loans"), guaranteed again by the

8    Subsidiary Debtors and secured by third priority liens against the Properties. From the

9    $75 million loaned to the Parent Debtor under the Third Lien Credit Agreement, $50

10    million was paid out of escrow directly to LCPI to pay down the obligations under the First

11    Lien Credit Agreement. Just as with the January 2006 Loans, LCPI was a lender and

12    served as the administrative agent, and Lehman Brothers served as advisor, sole

13    arranger and syndication agent. Square Mile Structured Debt (One), LLC, and Square

14    Mile Structured Debt (Two), LLC, collectively, replaced LCPI as the administrative agent

15    under the Third Lien Credit Agreements.

16            **3.**      **The Debtors' Alleged Defaults Under The Lien Credit**

17                   **Agreements**

18        Pursuant to a Fourth Amendment and Waiver to the First Lien Credit Agreement

19    dated January 31, 2008 (the "Amendment"), the Parent Debtor was required to increase

20    the cash in the Development Account from $25 million to $50 million within 60 days (*i.e.*,

21    by March 31, 2008). However, the Parent Debtor was unable to increase the amount of

22    funds deposited in the Development Account and, as result, on March 31, 2008, LCPI

23    declared a default. LCPI also declared defaults because: (a) the Debtors missed an

24    interest payment; (b) the Debtors failed to timely deliver financial statements; and (c) the

25    Debtors failed to pay a $100,000 administrative fee and maintain the necessary liquidity

26    requirements. Based on the alleged defaults, LCPI commenced non-judicial foreclosure

27    proceedings, which were stayed by the commencement of these cases. Trustee believes

28    that each of the defaults declared by LCPI were arguably caused by LCPI's conduct or

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1  were within the control of its affiliate, Lehman Lakeside.  LCPI strongly disputes this and

2  points to the Lien Credit Agreements, which it asserts were negotiated at arms-length.

3      Based on the facts outlined above, Trustee and the Committee believe that the

4  estates have claims against LCPI to: (1) equitably subordinate the claims of LCPI and

5  cause the liens securing LCPI's claims to be transferred to the estates; (2) avoid the

6  security interests held by LCPI against the Properties as fraudulent transfers and preserve

7  those security interests for the benefit of the estates; and (3) recover damages against

8  LCPI for lender liability.  The estates' alleged claims against LCPI are more fully set out in

9  Trustee's opposition to the LCPI Stay Relief Motions, a true and correct copy of which is

10 attached hereto as Exhibit "3."  LCPI advised Trustee as to the basis for its defense and

11 contends that it will prevail on any action on the estates' claims.  LPCI further contends

12 that it will also prevail on the LCPI Stay Relief Motions and that it has the right to foreclose

13 on all real and personal property of the estates, which serves as LCPI's collateral.

14

15 III.    **PROPOSED SETTLEMENT**

16      In an effort to avoid the cost and uncertainty associated with litigating the claims

17 against LCPI and the LCPI Stay Relief Motions, Trustee, the Committee and LCPI have

18 entered into a term sheet resolving their disputes.  A true and correct copy the Term

19 Sheet is attached hereto as Exhibit "1."[3]  The material terms of the settlement are as

20 follows:

21      1.    <u>Allowance of LCPI Claim.</u>  The claim of first-position secured lenders of the

22          Debtor (the "1st Lien Lenders"), for which LCPI serves as the administrative

23          agent, will be allowed in the aggregate amount of $230,006,233.98, plus

24          accrued and unpaid interest through the petition date and legal fees.  The

25          secured portion of the claim will be allowed in the amount of 1st Lien

26

27  _____

28  [3]    If there is a conflict between the summary of the compromise set forth in this Motion and the Term
Sheet, the provisions of the Term Sheet shall control.

1    Lenders' final credit bid for the Properties as discussed below, and the

2    remainder will be deemed an allowed unsecured claim.

3    2.    Distributions on Settlement Effective Date. Trustee will retain $6.5 million

4    from the funds originally held in the Development Account (the

5    "Development Account Funds"). Of this amount: (a) $3 million (the

6    "Administrative Funds") will be available for the administrative expenses of

7    the estates and for potential distribution to non-lender general unsecured

8    creditors; (b) $1.5 million (the "Senior Lien Reserve Funds") will be placed in

9    a segregated account subject to the 1st Lien Lenders' liens to be used in

10    connection with the resolution of the senior lien claims (as discussed below);

11    and (c) $2.0 million (the "Remaining Development Funds") will be retained to

12    pay the operating expenses of the Properties pursuant to an approved

13    budget. The balance of the Development Account Funds (net of the $6.5

14    million retained by Trustee) will be transferred to the 1st Lien Lenders, and

15    will be included in the calculation of the 1st Lien Lenders' allowed secured

16    claim.

17    3.    Sale of Properties Under the Plan. The Properties will be sold pursuant to a

18    plan under 11 U.S.C. § 1123(a)(5)(D) in accordance with the bidding

19    procedures attached to the Term Sheet as Exhibit "B." The 1st Lien Lenders

20    shall be the initial bidder with an initial credit bid in the aggregate amount of

21    $62 million, and shall be allowed to increase their credit bid up to the entire

22    amount of their allowed claim.

23    4.    Resolution of Senior Liens. Promptly after the "Settlement Effective Date,"

24    the parties will cooperate to file estimation motions to determine whether

25    there are liens superior to the liens of the 1st Lien Lenders (e.g., mechanics

26    liens) against the Properties (the "Senior Liens"). Trustee shall afford the

27    title insurer, Fidelity National Title Insurance Company ("Fidelity"), a

28    reasonable opportunity to participate in the estimation process. To the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   extent that there are liens determined to be senior liens and that Fidelity has

2   not accepted the defense and payment of such senior liens, Trustee will

3   negotiate for the release of such liens with such lienholders and/if

4   necessary, commence litigation against the alleged lienholders.  Trustee

5   may use the Senior Lien Reserve Fund in connection with such efforts.  If

6   Trustee is able to sell the Properties free and clear of all liens, then the

7   estates shall retain the balance of the Senior Lien Reserve Fund.  If not, the

8   balance will be transferred to the 1st Lien Lenders, however, Trustee will

9   retain the Administrative Funds in any event.

10      5.   Distributions Pursuant to the Plan.

11          a.   Distributions of Other Recoveries.  The plan will provide that all

12              proceeds recovered from sources other than the sale of the

13              Properties (e.g., from fraudulent transfer litigation) ("Other

14              Recoveries"), after the payment of administrative and priority

15              unsecured claims, will be split 50/50 between the 1st Lien Lenders

16              and the holders of allowed claims other than the 1st, 2nd and 3rd lien

17              lenders (the "Trade Creditors") (on an administratively consolidated

18              pro rata basis) until the Trade Creditors are paid in full.  To the extent

19              necessary to effectuate the foregoing distribution scheme, the 1st Lien

20              Lenders will assign the estates their allowed unsecured claims and

21              their rights under the Amended and Restated  Intercreditor

22              Agreement among the 1st, 2nd and 3rd lien lenders (the "Intercreditor

23              Agreement").[4]

24

25      _____
        [4]   A true and correct copy of the Intercreditor Agreement is attached hereto as Exhibit "2."  The
26      Intercreditor Agreement provides that any payments to the 2nd lien lenders (the "2nd Lien Lenders") and the
        3rd lien lenders (the "3rd Lien Lenders") be paid over to the 1st Lien Lenders, until the 1st Lien Lenders are
        paid in full.  (See Ex. 2 at §§ 2.1, 4.2.)  The Intercreditor Agreement also provides that the 2nd and 3rd Lien
27      Lenders cannot benefit from avoidance of the 1st Lien Lender's lien, rather, any proceeds received by the 2nd
        and 3rd Lien Lenders as a result of the avoidance must be paid over to the 1st Lien Lenders.  (See id. at
28      § 6.5.)  For this reason, via the assignment of the 1st Lien Lenders' unsecured claim, any cash payable to

(Continued...)

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1        b.   Trustee's Participation in Gross Recovery.  Pursuant to the plan, from

2   the subsequent disposition of the Properties by the 1st Lien Lenders,

3   Trustee will receive the lesser of 3.5% of the "Gross Recovery" by the

4   1st Lien Lenders, and the amount necessary to pay the allowed claims

5   of the Trade Creditors (the "Trustee Participation").  The Trustee

6   Participation shall be distributed to non-lender creditors.

7   6.   Trustee Loss Collateral.  On the Settlement Effective Date, LCPI on behalf

8   of the 1st Lien Lenders will deliver to Trustee cash or irrevocable letters of

9   credit acceptable to Trustee in the aggregate amount of $500,000 (the

10  "Trustee Loss Collateral").  The Trustee Loss Collateral will be used to cover

11  proven losses that occur during the period from the Settlement Effective

12  Date to the date of transfer of title to the Properties (the "Trustee

13  Maintenance Period") based on claims of simple negligence or strict liability

14  in connection with the ownership, operation, maintenance and management

15  of the Properties, to the extent such losses are not covered by insurance

16  and subject to a formula set forth in section G of the Term Sheet.  Upon a

17  termination event or the effective date of the plan, Trustee will deliver any

18  remaining Trustee Loss Collateral to LCPI.

19  7.   Releases.  LCPI on behalf of the 1st Lien Lenders immediately releases

20  Trustee (and not the estates) in his trustee and individual capacity with

21  respect to all claims related to the subject matter of the Term Sheet or

22  actions taken with respect to the Properties arising prior to the transfer of

23  title to the Properties to the 1st Lien Lenders or any third party, except to the

24  extent of any gross negligence or gross malfeasance.  Upon the effective

25  date of the plan or if there is a "Termination Event" (as defined below),

26  _____

27  (...Continued)
the 2nd and 3rd Lien Lenders would be paid to the estates up to the full amount of the 1st Lien Lenders'
unsecured claim.  The 2nd and 3rd Lien Lenders are no worse off because the cash disbursed to the estates

28  would have otherwise been paid to the 1st Lien Lenders as required by the Intercreditor Agreement.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    Trustee and the estates, on the one hand, and LCPI and the 1st Lien

2    Lenders, on the other hand, will mutually release each other from all claims

3    (other than the allowed claims of the 1st Lien Lenders discussed above).

4    The Term Sheet does not provide for releases against Lehman Lakeside,

5    SCC Ranch Ventures, LLC, SCC Acquisitions, Inc., or SCC Acquisitions,

6    LLC.

7    8.    <u>Termination Event.</u>  If a final Plan confirmation order is not in effect by

8    January 15, 2010 (or extended pursuant to an agreed upon extension of the

9    original date), or if the settlement otherwise terminates by its own terms,

10    then: (a) the 1st Lien Lenders will be granted relief from the automatic stay to

11    immediately foreclose on the Properties, and Trustee (and any party

12    claiming by or through any of the Debtors) shall be prohibited from

13    interfering with such foreclosure; (b) Trustee will retain the Administrative

14    Funds free from the secured claims of the 1st, 2nd and 3rd lien lenders; (c) the

15    1st Lien Lenders will retain the balance of the Development Account Funds;

16    (d) Trustee shall immediately pay over to the 1st Lien Lenders the unused

17    portion of the Senior Lien Reserve Funds and the Remaining Development

18    Funds, and the Trustee Loss Collateral free of all claims and interests; (e)

19    the parties will be deemed to have mutually released each other as

20    discussed above.

21

22    IV.    **LEGAL ANALYSIS**

23    Federal Rule of Bankruptcy Procedure ("Rule") 9019(a) provides:

24    On motion by the trustee and after notice and a hearing, the
court may approve a compromise or settlement.  Notice shall

25    be given to creditors, the United States trustee, the debtor, and
indenture trustees as provided in Rule 2002 and to any other

26    entity as the court may direct.

27    Fed. R. Bankr. P. 9019(a).

28

1    "The bankruptcy court has great latitude in approving compromising agreements."

2  *See In re A & C Props.*, 784 F.2d 1377, 1380-81 (9th Cir. 1986).  In approving a

3  settlement agreement, the court must find that it is fair and equitable, and the product of

4  good faith negotiations.  *See id.*  To this end, the court must consider the following criteria:

5          (a) the probability of success in the litigation; (b) the difficulties,
           if any, to be encountered in the matter of collection; (c) the
6          complexity of the litigation involved, and the expense,
           inconvenience and delay necessarily attending it; (d) the
7          paramount interest of the creditors and a proper deference to
           their reasonable views in the premises.
8  *Id.*

9          Generally speaking, the court may defer to a trustee's business judgment in

10  deciding whether to settle a matter.  *See In re Mickey Thompson Entertainment Group,*

11  *Inc.,* 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003).  The court need not conclude that the

12  proposed settlement is the best possible compromise, but only that the settlement is

13  "within the reasonable range of litigation possibilities."  *See In re World Health*

14  *Alternatives, Inc.,* 344 B.R. 291, 296 (Bankr. D. Del. 2006).  Similarly, the court need not,

15  and should not conduct a "mini-trial" on the compromised claims but simply determine that

16  disputes related to those claims exist.  *See In re Schmitt*, 215 B.R. 417, 423 (B.A.P. 9th

17  Cir. 1997) ("When assessing a compromise, courts need not rule upon disputed facts and

18  questions of law, but rather only canvass the issues. A mini trial on the merits is not

19  required."); *see also In re Hermitage Inn, Inc.,* 66 B.R. 71, 72 (Bankr. D. Colo. 1986)

20  ("[T]he court's assessment does not require resolution of the issues, but only their

21  identification, so that the reasonableness of the settlement may be evaluated.").  It is

22  enough that the court conclude the probability of success is uncertain.  *See, e.g., In re*

23  *America West Airlines, Inc.,* 214 B.R. 382, 386 (Bankr. D. Ariz. 1997).

24          A.    **The Probability Of Success In The Litigation**

25          As discussed above, Trustee believes that the estates have claims to equitably

26  subordinate LCPI's secured claims, avoid LCPI's liens, and to recover damages against

27  LCPI for lender liability (collectively, the "Estate Claims").  Trustee believes that these

28  claims have merit.  However, Trustee's success will require the resolution of a number of

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   legal and factual issues by this Court, all of which are disputed by LCPI and the 1st Lien

2   Lenders.  In fact, LCPI and certain of the 1st Lien Lenders disputed a number of Trustee's

3   allegations in connection with the LCPI Stay Relief Motions.  For example, disputes exist

4   regarding the relationship between LCPI and Lehman Lakeside, whether LCPI's pre-

5   petition conduct was inequitable or otherwise actionable and whether such conduct, even

6   if found inequitable, is attributable to the other 1st Lien Lenders, and whether the Debtors

7   were insolvent or undercapitalized at the time or because of the Loans and the related

8   transfers and encumbrances.[5]  Thus, Trustee's success on the Estate Claims is, at best,

9   uncertain.

10       For the Estate Claims to have value Trustee must also succeed in defending

11   against the LCPI Stay Relief Motions.  As LCPI is a debtor in its own bankruptcy case, any

12   redress for LCPI's alleged misconduct (and, thus, the repayment of creditors) would likely

13   have to come from the cash on hand or the value in the Properties (as opposed to the

14   payment of money damages), which is not possible if LCPI obtains stay relief and is able

15   to foreclose.  In opposition to the LCPI Stay Relief Motions, Trustee argued that, among

16   other things, that stay relief was not appropriate because the amount and validity of

17   LCPI's secured claims were in dispute.  However, the Court could conclude that,

18   assuming Trustee has viable claims against LCPI, such claims should not be considered

19   in the context of stay relief proceedings and could grant the LCPI Stay Relief Motions,

20   which would render the estates' equitable subordination and avoidance claims

21   meaningless and without value to the estates.

22       In short, Trustee's success on the Estate Claims and in defending the LCPI Stay

23   Relief Motions is certainly not a given.  Rather, Trustee must prevail on a number of

24   _____

25   [5]    LCPI and the 1st Lien Lenders contend, and have contended, that the Debtors' inability to satisfy its
     creditors is the result of the collapse of the credit market generally and the real estate market in southern
     California in particular, all of which and the severity of which could not have been reasonably contemplated

26   when the Loans were made.  LCPI and the 1st Lien Lenders contend that there was nothing inequitable in
     connection with the loan transactions which were governed and controlled by the loan agreements between

27   the parties.  Accordingly, LCPI and the 1st Lien Lenders contend that the overriding predicate of the estates'
     potential claims simply cannot be true: at the time the Loans were made, the Debtors were not insolvent and

28   were not unreasonably capitalized.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   disputed issues of fact and law, which this Court has yet to resolve.  Accordingly, this

2   factor supports approval of the Term Sheet.

3        **B.    The Difficulties To Be Encountered In The Matter Of Collection**

4        Trustee will likely be unable to collect money damages from LCPI.  LCPI is a debtor

5   in its own bankruptcy case.  Thus, even if Trustee obtains a judgment against LCPI, it will

6   simply result in an unsecured claim, and he may be able to recover only a small portion, if

7   any, of the amount awarded.  To the extent that Trustee seeks to subordinate LCPI's

8   secured claim or avoid LCPI's liens, collectibility is not an issue.  However, if LCPI obtains

9   stay relief, the estates' equitable subordination and avoidance claims would essentially be

10  meaningless, and Trustee will be unable to recover any value for the estates on account

11  of the Estate Claims.  Thus, Trustee faces difficulties in both collecting money damages

12  from LCPI and preserving the claims to recover value from LCPI's collateral for the benefit

13  of the estates.  Accordingly, this fact supports approval of the Term Sheet.

14       **C.    The Complexity, Expense, Inconvenience, and Delay**

15       The Estates Claims will be difficult to prove and expensive to litigate.  The claims

16  against LCPI involve numerous complex and disputed issues of fact and law surrounding

17  the loan transactions between the Debtors and LCPI and LCPI's conduct related thereto,

18  and the financial condition of the Debtors.  The litigation likely will require significant

19  discovery and a lengthy drawn-out trial.  Moreover, Trustee likely will need to seek stay

20  relief in LCPI's bankruptcy case to pursue the Estate Claims, resulting in additional

21  expense and delay.  The Term Sheet also resolves the LCPI Stay Relief Motions, which,

22  in the absence of a settlement, LCPI would continue to pursue.  The LCPI Stay Relief

23  Motions were set for an evidentiary hearing, and will necessitate discovery by Trustee.

24  Without the proposed settlement, Trustee would also likely face continued objections by

25  LCPI to the use of cash collateral to preserve the Properties and administer these

26

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    estates.[6]  Thus, the Term Sheet resolves numerous disputes, thereby saving the estates

2    substantial administrative expense.

3        Litigation related to the Estate Claims and the LCPI Stay Relief Motions will delay

4    the conclusion of the Debtors' bankruptcy case.  Trustee would be forced to devote

5    significant time and energy to pursuing the Estate Claims and defending against the LCPI

6    Stay Relief Motions, time that could otherwise be devoted to pursuing confirmation of a

7    plan.  Absent the proposed settlement, a plan submitted by Trustee and/or the Committee

8    would likely be vigorously opposed by LCPI and the 1st Lien Lenders.  Moreover,

9    distributions under any nonconsensual plan would likely be based on the outcome of the

10    Estate Claims, which could take significant time to resolve.  Approval of the Term Sheet,

11    on the other hand, will clear the way for Trustee and the Committee to immediately

12    prepare and propose a plan with the support of LCPI and move expeditiously towards

13    confirmation, providing creditors with some certainty regarding the outcome of these

14    cases.  Accordingly, this factor supports approval of the Term Sheet.

15        D.    **The Paramount Interests Of Creditors**

16        The Term Sheet will provide the estates with immediate funds and the potential for

17    substantial additional cash in the future.  First, Trustee will immediately receive $6.5

18    million.  Of this sum, $3.0 million is guaranteed to the estates and is available to

19    administer these estates and for potential distribution to creditors, $2.0 million is available

20    to preserve the Properties, and $1.5 million is to be used to settle potential Senior Liens.[7]

21    Second, any proceeds from the litigation to avoid and recover the Dividend, which could

22    total approximately $144 million, or from other avoidance actions will be split 50/50 with

23    LCPI.  Third, via the "Trustee's Participation," the estates are entitled to receive cash from

24

25    _____

26    [6]  If the Trustee were to pursue the Estate Claims against LCPI, he would need to maintain the
Properties in the meantime.  With erosion and dust control, security and other necessary expenditures, the
Trustee would be required to spend several hundred thousand dollars a month, and LCPI asserts a lien in all
27    the cash on hand.

28    [7]  However, the estates are entitled to retain the balance of the $1.5 million Senior Lien Reserve Fund,
if Trustee is able to sell the Property free and clear of all liens.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

1    LCPI's subsequent disposition of the Properties in the lesser amount of (a) unpaid allowed

2    trade claims, or (b) 3.5% of the recovery by the 1st Lien Lenders.

3         Without the proposed settlement, the non-lender unsecured creditors could receive

4    nothing or substantially less.  Again, Trustee's success on the Estate Claims and in

5    defending against the LCPI Stay Relief Motions is uncertain, and there are numerous

6    complex issues that impact the unsecured creditors potential distribution.  If Trustee is

7    unsuccessful, any cash or value in the Properties would be transferred solely to the 1st

8    Lien Lenders on account of their secured claims.[8]  To the extent that Trustee is successful

9    in avoiding LCPI's lien, but not subordinating LCPI's secured claim, LCPI would still hold

10    significant unsecured claims against the estates and be entitled to share in any

11    distributions to unsecured creditors on a *pro rata* basis.  Similarly, the 2nd and 3rd Lien

12    Lenders would be entitled to distributions on account of any unsecured deficiency claims

13    (although such disbursements would be paid to LCPI until paid in full).  Moreover, it is

14    likely that, absent substantive consolidation, any unencumbered cash held by the Parent

15    Debtor would first have to be used to repay the Parent Debtor's creditors, which would

16    include the claims of the lien lenders, including any unsecured or subordinated claims of

17    LCPI, before such cash could be used to repay the Subsidiary Debtors' creditors.  Thus,

18    the proposed settlement not only provides these estates with immediate cash and the

19    potential for significant distributions in the future, but also provides a mechanism to

20    disburse those funds to the unsecured trade creditors.

21         In sum, the proposed settlement is fair and equitable, and in the best interests of

22    the estates.  The Term Sheet resolves multiple proceedings, thereby saving the estates

23    significant administrative expense.  The Term Sheet entitles the estates to $6.5 million to

24    administer these cases and preserve the Properties.  Of this sum, the estates are

25    guaranteed $3.0 million upon approval of the Term Sheet, even if the proposed plan is not

26

27    [8]    Sale of the Properties under 11 U.S.C. § 363(f) would likely result in a recovery far less than the
amount owed to LCPI and the 1st Lien Lenders.  Moreover, Trustee's efforts to sell the Properties would
28    likely be opposed by the lien lenders attempting to credit bid their claims.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   confirmed.  The Term Sheet also entitles the estates to significant additional sums from

2   any subsequent disposition of the Properties by LCPI or from the pursuit of avoidance

3   actions against third parties.  The estates are not settling all claims arising from the facts

4   outlined above, but only the estates' claims against LCPI and the 1st Lien Lenders.  The

5   estates are retaining their claims against other third parties to avoid and recover the

6   Dividend, and, due to the proposed settlement, the estates will have funds to pursue such

7   claims.  Therefore, there is a real possibility that the estates will receive significant cash in

8   the future to distribute to unsecured trade creditors.  Accordingly, Trustee respectfully

9   requests that the Court approve the Term Sheet.

10

11  **V.      CONCLUSION**

12          Based on the foregoing, Trustee respectfully requests that the Court approve the

13  Term Sheet, and such other and further relief as the Court deems just and proper.

14

15  Dated:  October 9, 2009              WEILAND, GOLDEN,
                                         SMILEY, WANG EKVALL & STROK, LLP
16

17                                       By: _____

18                                         EVAN D. SMILEY
                                           ROBERT S. MARTICELLO
19                                         Attorneys for Alfred H. Siegel
                                           Chapter 11 Trustee,
20

21

22

23

24

25

26

27

28

318786.7                      17            MOTION TO APPROVE COMPROMISE

1    ## DECLARATION OF ALFRED H. SIEGEL

2

3    I, Alfred H. Siegel, declare as follows:

4    1.    I am the chapter 11 trustee of the of the jointly administered estates of

5    LBREP/L-SunCal Master I, LLC, LBREP/L-SunCal McAllister Ranch, LLC, LBREP/L-

6    SunCal McSweeny Farms, LLC, and LBREP/L-SunCal Summerwind Ranch, LLC. I make

7    this declaration in support of the Motion to Approve Compromise Between Trustee, the

8    Official Committee of Unsecured Creditors, and Lehman Commercial Paper, Inc., (the

9    "Motion"). All terms as defined in the Motion are incorporated herein by this reference. I

10    know each of the following facts to be true of my own personal knowledge, except as

11    otherwise stated, and, if called as a witness, I could and would competently testify with

12    respect thereto.

13    2.    Following my appointment, and in connection with the LCPI Stay Relief

14    Motions, my professionals and I analyzed the pre-petition transactions between LCPI and

15    the Debtors. Based on the facts outlined in the Motion related to the loan transactions

16    between the Debtors and LCPI, I believe that the estates have meritorious claims against

17    LCPI to: (1) equitably subordinate the claims of LCPI and cause the liens securing LCPI's

18    claims to be transferred to the estates; (2) avoid the security interests held by LCPI

19    against the Properties as fraudulent transfers and preserve those security interest for the

20    benefit of the estates; and (3) recover damages against LCPI for lender liability.

21    3.    In an effort to avoid the cost and uncertainty associated with litigating the

22    Estate Claims and the LCPI Stay Relief Motions, I have entered into a term sheet with the

23    Committee and LCPI to resolve our disputes. A true and correct copy the Term Sheet is

24    attached hereto as Exhibit "1."

25    4.    While I believe that the Estate Claims have merit, they will be difficult and

26    costly to prove as I must prevail on multiple complex issues of fact and law, which are

27    disputed by LCPI and the 1st Lien Lenders. Due to these numerous outstanding disputed

28    issues, success on the Estate Claims is uncertain. Pursuit of the Estate Claims will

318786.7    18    DECLARATION

*Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002*

1   require significant discovery and a lengthy trial and, therefore, will take significant time to

2   conclude and will result in significant administrative expense.  Moreover, I will need to

3   seek stay relief in LCPI's bankruptcy case to pursue the Estate Claims, which will result in

4   additional expense and delay.

5        5.    For the Estate Claims to have value I must also succeed in defending

6   against the LCPI Stay Relief Motions, which in the absence of a settlement, LCPI would

7   continue to pursue.  As LCPI is a debtor in its own bankruptcy case, any redress for

8   LCPI's alleged misconduct (and, thus, the repayment of creditors) would likely have to

9   come from the cash on hand or the value in the Properties (as opposed to the payment of

10  money damages), which is not possible if LCPI obtains stay relief and is able to foreclose.

11  The Court could conclude that, assuming the estates have viable claims against LCPI,

12  such claims should not be considered in the context of stay relief proceedings and could

13  grant the LCPI Stay Relief Motions, which would render the estates' equitable

14  subordination and avoidance claims meaningless.

15       6.    Without the proposed settlement, I would also likely face continued

16  objections by LCPI to the use of cash collateral to preserve the Properties and/or to

17  administer these estates.  Thus, the Term Sheet resolves numerous disputes, thereby

18  saving the estates substantial administrative expense.

19       7.    Litigation related to the Estate Claims and the LCPI Stay Relief Motions will

20  delay the conclusion of the Debtors' bankruptcy case.  If the Term Sheet is not approved,

21  the Committee and I would be forced to devote significant time and energy to pursuing the

22  Estate Claims and defending against the LCPI Stay Relief Motions, time that we could

23  otherwise devote to pursuing confirmation of a plan.  Moreover, absent the proposed

24  settlement, any plan submitted by myself and/or the Committee would likely be opposed

25  by LCPI and the 1st Lien Lenders.  Distributions under any nonconsensual plan would

26  likely be based on the outcome of the Estate Claims, which could take significant time to

27  resolve.  Approval of the Term Sheet, on the other hand, will enable the Committee and I

28  to immediately prepare and propose a joint plan with the support of LCPI and to move

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

318786.7                              19                              DECLARATION

1  expeditiously towards confirmation.  Therefore, I believe that approval of the Term Sheet

2  will help to move these cases forward towards a successful conclusion, and will provide

3  creditors with some certainty regarding the outcome of these cases.

4      8.    I believe that the Term Sheet will provide significant benefits to the estates.

5  The Term Sheet entitles the estates to $6.5 million to administer these cases and

6  preserve the Properties.  Of this sum, the estates are guaranteed $3.0 million upon

7  approval of the Term Sheet, even if the proposed plan is not confirmed.  The Term Sheet

8  also provides the estates with the potential to recover significant cash in the future from

9  any avoidance action recoveries or the subsequent disposition of the Properties by LCPI,

10  and a mechanism to distribute such cash to unsecured trade creditors.  The estates are

11  not settling all claims arising from the facts outlined in the Motion, but only those against

12  LCPI and the 1st Lien Lenders.  The estates are retaining their claims against other third

13  parties to recover the Dividend and, due to the proposed settlement, the estates will have

14  funds to pursue such claims.  Therefore, I believe there is a real possibility that the estates

15  will receive additional cash in the future.

16      9.    I estimate there to be approximately $60 million  of non-lender creditor

17  claims in these cases based upon the Debtors schedules and proofs of claim filed.  Due to

18  the significant secured claims asserted by the lien lenders and the potential unsecured

19  deficiency claims, without the proposed settlement, the non-lender unsecured creditors

20  could receive nothing or substantially less.  Success on the Estate Claims and in

21  defending against the LCPI Stay Relief Motions is uncertain, and there are numerous

22  complex issues that impact the unsecured creditors potential distribution.

23      10.    For all these reasons, I believe that the Term Sheet is fair and equitable, and

24  in the best interests of the bankruptcy estates.

25      I declare under penalty of perjury that the foregoing is true and correct.

26      Executed on this ___ day of _____, at Los Angeles, California.

27

28  _____
                                    Alfred H. Siegel

318786.7                              20                           DECLARATION

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP