# Exhibit C

Sample Proof of Claim

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held<br>**LEHMAN COMMERCIAL PAPER, INC.** | Case No. of Debtor<br>**08-13900** |

## PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000026147

**THIS SPACE IS FOR COURT USE ONLY**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

ALFRED H. SIEGEL, Chapter 11 Trustee of
LBREP/L-Lehman SunCal Master I, LLC
c/o WEILAND, GOLDEN, SMILEY, WANG EKVALL & STROK, LLP
650 Town Center Drive, Suite 950, Costa Mesa, California 92626
Attention:  Robert S. Marticello

Telephone number: (714) 966-1000     Email Address: rmarticello@wgllp.com

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number: _____     Email Address: _____

1. **Amount of Claim as of Date Case Filed:** $ Unliquidated claim for money damages

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete Item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Fraudulent conveyance, lender liability, etc. (see attached)
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a. **Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate     ☐ Motor Vehicle     ☐ Other
Describe: _____
Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____
Amount of Secured Claim: $_____   Amount Unsecured: $_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $**_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$_____

**FOR COURT USE ONLY**

FILED / RECEIVED

SEP 2 1 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date:<br><br>09/17/09 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 13-13664 | PAMI Statler Arms LLC |

If your claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9).**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150-5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

1

2

3

4

5

6   Attorneys for Alfred H. Siegel,
    Chapter 11 Trustee
7

8                  **UNITED STATES BANKRUPTCY COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10                      **SANTA ANA DIVISION**

| | |
|---|---|
| 11  In re | Case No. 8:08-BK-15588-ES |
| 12  LBREP/L-Sun Cal Master I, LLC, et al., | Chapter 11 Case |
| 13                          Debtor. | (Jointly Administered with Case Nos. 8:08-bk-15637-ES; 8:08-bk-15639-ES; and 8:08-bk-15640-ES) |
| 14 | Adversary Case No. _____ |
| 15  ____ Affects LBREP/L-SunCal Master I, LLC Only | **COMPLAINT:** |
| 16  ____ Affects LBREP/L-SunCal McAllister Ranch, LLC Only | **(1)  TO AVOID AND RECOVER FRAUDULENT CONVEYANCE PURSUANT TO 11 U.S.C. SECTIONS 544(b) AND 550 AND CALIFORNIA CIVIL CODE SECTIONS 3439.04(a)(1);** |
| 17 | |
| 18  ____ Affects LBREP/L-SunCal McSweeny Farms Only | |
| 19  ____ Affects LBREP/L-SunCal Summerwind Ranch Only | **(2)  TO AVOID AND RECOVER FRAUDULENT CONVEYANCE PURSUANT TO 11 U.S.C. SECTIONS 544(b) AND 550 AND CALIFORNIA CIVIL CODE SECTIONS 3439.04(a)(2);** |
| 20 | |
| 21  ____ Affects All Debtors, | **(3)  TO AVOID AND RECOVER FRAUDULENT CONVEYANCE PURSUANT TO 11 U.S.C. SECTIONS 544(b) AND 550 AND CALIFORNIA CIVIL CODE SECTIONS 3439.05;** |
| 22  ALFRED H. SIEGEL, Chapter 11 Trustee, | |
| 23                          Plaintiff, | **(4)  TO PRESERVE THE TRANSFERS FOR THE BENEFIT OF THE ESTATES PURSUANT TO 11 U.S.C SECTION 551;** |
| 24         v. | |
| 25  LEHMAN COMMERCIAL PAPER, INC., a New York corporation; LBREP LAKESIDE SC MASTER I, LLC, a Delaware limited liability company; GRAMERCY WAREHOUSE FUNDING I, LLC, a Delaware limited liability company; and SQUARE MILE, an entity of unknown origin, | **(5)  FOR IMPOSITION OF CONSTRUCTIVE TRUST;** |
| 26 | **(6)  FOR BREACH OF FIDUCIARY DUTY;** |
| 27 | **(7)  FOR BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING;** |
| 28 | **(8)  FOR EQUITABLE SUBORDINATION; AND** |

274057.1                                                            COMPLAINT

| | | |
|---|---|---|
| | Defendants. | ) **(9) FOR AWARD OF ATTORNEYS' FEES** <br> ) **AND COSTS** <br> ) <br> ) |

Alfred H. Siegel, the duly appointed, qualified and acting chapter 11 trustee (the "Trustee" or "Plaintiff") of the administratively consolidated estates of LBREP/L-SunCal Masters I, LLC, LBREP/L-SunCal McAllister Ranch, LLC, LBREP/L-SunCal McSweeny Farms, and LBREP/L-SunCal Summerwind Ranch (collectively, the "Estates") hereby files this Complaint: (1) To Avoid and Recover Fraudulent Conveyance Pursuant to 11 U.S.C. §§ 544(b) and 550 and California Civil Code § 3439.04(a)(1); (2) To Avoid and Recover Fraudulent Transfer Pursuant to 11 U.S.C. §§ 544(b) and 550 and California Civil Code § 3439.04(a)(2); (3) To Avoid and Recover Fraudulent Transfer Pursuant to 11 U.S.C. §§ 544(b) and 550 and California Civil Code § 3439.05; (4) To Preserve Avoidable Transfer for the Benefit of the Estates Pursuant to 11 U.S.C. § 551; (5) For Imposition of Constructive Trust; (6) For Breach of Fiduciary Duty; (7) For Equitable Subordination; (8) For Declaratory Relief; and (9) For Award of Attorneys' Fees and Costs (the "Complaint") against Lehman Commercial Paper, Inc. ("Lehman Commercial"), LBREP Lakeside SC Master I LLC ("Lehman Lakeside"), Gramercy Warehouse Funding I, LLC ("Gramercy"), and Square Mile ("Square Mile") (collectively, the "Defendants"), and alleges that:

## STATEMENT OF JURISDICTION AND VENUE

1.      The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), (E), (H), (K), and (O), and 1334.

2.      Venue properly lies in this judicial district in that this civil proceeding arises under title 11 of the United States Code as provided for in 28 U.S.C. § 1409(a).

3.      This adversary proceeding arises out of and is related to the involuntary bankruptcy cases of the administratively consolidated estates of LBREP/L-SunCal Masters I, LLC ("Lehman/SunCal Master"), LBREP/L-SunCal McAllister Ranch, LLC ("McAllister Ranch LLC"), LBREP/L-SunCal McSweeney Farms ("McSweeney Farms

1  LLC"), and  LBREP/L-SunCal Summerwind Ranch ("Summerwind Ranch LLC"), filed on

2  September 10 and 11, 2008 (the "Petition Dates") and currently pending in the United

3  States Bankruptcy Court for the Central District of California, Santa Ana Division.

4  McAllister Ranch LLC, McSweeney Farms LLC, and Summerwind Ranch LLC collectively

5  referred to as "Lehman/SunCal Subsidiaries." "Lehman/SunCal Master and the

6  Lehman/SunCal Subsidiaries are collectively referred to as the "Debtors."

7

8                              **STATEMENT OF STANDING**

9       4.     The Plaintiff, as the Trustee, has standing to bring this action pursuant to 11

10  U.S.C. §§ 323, 544, 550, and 551.

11

12                              **PARTIES TO THE ACTION**

13      5.     Plaintiff, Alfred H. Siegel, is the duly appointed, qualified and acting chapter

14  11 trustee for the Estates.  This action is brought by the Trustee in his representative

15  capacity only.

16      6.     The Trustee is informed and believes, and on that basis alleges, that

17  defendant Lehman Commercial is a New York corporation with its principal place of

18  business at 745 Seventh Avenue, New York, New York 10019.

19      7.     The Trustee is informed and believes, and on that basis alleges, that

20  Lehman Lakeside is a Delaware limited liability company with its principal place of

21  business at is an individual residing at 3500 West Olive Avenue Suite 650, Burbank,

22  California 915053.

23      8.     The Trustee is informed and believes, and on that basis alleges, that

24  defendant Gramercy is the administrative agent for the Second Lien creditors and is sued

25  in this representative capacity.

26      9.     The Trustee is informed and believes, and on that basis alleges, that

27  defendant Square Mile is the administrative agent for the Third Lien creditors and is sued

28  in this representative capacity.

274057.1                              3                              COMPLAINT

## GENERAL ALLEGATIONS

10.    The Trustee is informed and believes, and on that basis alleges, debtor Lehman/SunCal Master is a holding company, established to the fund the real estate development projects owned by each of the its four operating subsidiaries, *i.e.*, the debtor Lehman/SunCal Subsidiaries and a non-debtor LBREP/L-SunCal Patterson Ranch, LLC. Debtor Lehman/SunCal Master is controlled by defendant Lehman Lakeside. Defendant Lehman Lakeside is a subsidiary of Lehman Bros. Real Estate Partners, LP ("LBREP") and an affiliate of defendant Lehman Commercial. More specifically, defendant Lehman Lakeside is the managing member and 90% equity owner of debtor Lehman/SunCal Master. The remaining 10% equity interest in debtor Lehman/SunCal Master is owned by SCC Ranch Venture, LLC, which is an affiliate of SCC Acquisitions, Inc. d/b/a SunCal Companies.

11.    The Trustee is informed and believes, and on that basis alleges, debtor Lehman/SunCal Master's primary asset is its interest in its operating subsidiaries. Debtor Lehman/SunCal Master is the sole equity member of the debtors McAllister Ranch LLC, McSweeney Farms LLC, and Summerwind Ranch LLC, each of which, in turn, own real estate developments bearing the same name (collectively, the "Real Properties"). Each Lehman/SunCal Subsidiary has its own set of creditors and assets. The following is a more detailed discussion of the Real Properties:

## MCALLISTER RANCH

12.    The Trustee is informed and believes, and on that basis alleges, debtor McAllister Ranch LLC owns the real estate development commonly known as "McAllister Ranch," which is located near Bakersfield in Kern County, California. The Trustee understands that McAllister Ranch is designed to be a 2070 acre master-planned community featuring a golf course, lake, and approximately 6,087 homes. All of the lots have been graded, and the first of five planned subdivisions is nearly complete. In addition, the golf course is completed and the clubhouse is framed and roofed. Defendant

1  Lehman Commercial asserts that McAllister Ranch was worth $123 million on an "as is"

2  basis as of March 31, 2008 (approximately seven months prior to the Petition Dates).

3  **MCSWEENEY FARMS**

4      13.    The Trustee is informed and believes, and on that basis alleges, debtor

5  McSweeney Farms LLC owns the real estate development commonly known as

6  "McSweeney Farms," which located near Hemet in Riverside County, California.

7  McSweeney Farms is comprised of 673 acres, and a total of 1,640 lots are planned to be

8  included thereon.  Phase 1 of the project has been completed and sold out.  The Trustee

9  is informed and believes that hundreds of homes have been completed, and there are

10 residents living in a substantial portion of these homes.  Defendant Lehman Commercial

11 asserts that McSweeney Farms was worth $13,300,000 on an "as is" basis as of

12 March 31, 2008.

13  **SUMMERWIND RANCH**

14      14.    The Trustee is informed and believes, and on that basis alleges, debtor

15 Summerwind Ranch LLC owns the real estate development commonly known as

16 "Summerwind Ranch," which is located near Calimesa in Riverside County, California.

17 Summerwind Ranch is comprised of 2,591 acres with 3,683 lots planned thereon.

18      15.    The Trustee is informed and believes, and on that basis alleges, debtor

19 Lehman/SunCal Master, as borrower, entered into three Lien Credit Agreements with

20 defendant Lehman Commercial as an administrative agent and participant (collectively,

21 the "Lien Credit Agreements").  Pursuant to the First and Second Lien Credit Agreements

22 (collectively, the "January 2006 Loan"), which were entered into on or around January 19,

23 2006, debtor Lehman/SunCal Master borrowed a total of $320 million as follows: (1) a

24 revolving credit facility of $75 million and term loan facility of $160 million under the First

25 Lien Credit Agreement; and (2) a $85 million term loan facility under the Second Lien

26 Credit Agreement.  Defendant Lehman Commercial participated in the January 2006

27 Loans, and acted as the sole administrative agent, and Lehman Brothers, Inc. ("Lehman

28 Brothers"), served as the sole lead arranger and syndicator.  Defendant Lehman

1  Lakeside, Debtor's Lehman/SunCal Master's managing member, caused Lehman/SunCal

2  Master's obligations under these agreements to be guaranteed by the Lehman/SunCal

3  Subsidiaries, and secured by first and second liens cross-collateralized against the Real

4  Properties and other assets. More specifically, defendant Lehman Commercial obtained a

5  lien from its affiliate defendant Lehman Lakeside against debtor Lehman/SunCal Master

6  for the full amount of the January 2006 Loan (the "Lehman/SunCal Master Lien"), as well

7  as liens against each of the Lehman/SunCal Subsidiaries also in the full amount of the

8  January 2006 Loan ("Lehman/SunCal Subsidiary Liens"). Therefore, a Lehman affiliated

9  entity was the lender, administrative agent, arranger, syndicator, borrower, managing

10  member of the borrower, and guarantor on the January 2006 Loans.

11       16.    The Trustee is informed and believes, and on that basis alleges, as a result

12  of the January 2006 Loan, the Debtors' were collectively saddled with $320 million in

13  secured debt and the significant interest thereon. However, Debtors did not receive the

14  benefit of all the January 2006 Loan proceeds. Of the $235 million allegedly loaned to

15  Lehman/SunCal Master under the First Lien Credit Agreement, a $144 million equity

16  distribution (the "Dividend") was immediately paid from escrow to Debtor Lehman/SunCal

17  Master's equity owners, of which 90%, $117 million, was paid to Lehman Lakeside.

18  Debtors appear to never have received the $144 million, nor any value for the transfer of

19  the Dividend.

20       17.    The Trustee is informed and believes, and on that basis alleges, most of the

21  $320 million January 2006 Loan proceeds went to one Lehman entity or another. Besides

22  the $144 million Dividend, $10.6 million was paid to Lehman Commercial for its

23  arrangement and administrative fee. Approximately $62 million went to repay another

24  Lehman entity's, "Lehman, Ali," loans to the Lehman/SunCal Subsidiaries. This value

25  received by the Debtors is offset by the fact that debtor McSweeney Farms LLC paid

26  approximately $21 million into escrow prior to closing.

27       18.    The Trustee is informed and believes, and on that basis alleges, from

28  escrow $25 million was automatically set aside by escrow to fund a "Debt Service

1  Reserve" which the Debtors could not use, but served as defendant Lehman

2  Commercial's collateral.  Although this Debt Service Reserve which has also been

3  characterized as the Development Account was allegedly intended to be used by the

4  Debtors for various development and maintenance expenses, it appears that Lehman

5  Commercial's unfair exercise of control agreements and its lack of consent effectively

6  prohibited the use of these funds during the a substantial portion of the loan term.

7  Moreover, it appears that Lehman Commercial unnecessarily caused the funds in the

8  Development Account to be borrowed in order to increase its yield on its investment.

9  Similarly, there was another $25 million on the revolving credit line that was never made

10  available to the Debtors between the January 19, 2006 funding date and March, 2007

11  resulting in a combined $50 million of lost liquidity of which Debtors did not receive the

12  benefit.

13      19.    Moreover, while the Lehman/SunCal Subsidiaries were forced to grant

14  security interests in the Real Properties to secure the entire $320 million in loans it

15  Lehman/SunCal Master, each entity received very little of the loan proceeds.  The

16  following is a brief summary of the Trustee's findings regarding each Lehman/SunCal

17  Subsidiary:

18          A.    McAllister Ranch LLC: The Trustee is informed and believes, and on

19  that basis alleges, in exchange for securing the entire $320 million in loans to

20  Lehman/SunCal Master, McAllister Ranch received only loan proceeds sufficient to

21  replace the existing $20 million first position lien, which was held by another

22  Lehman-related entity and allegedly created on November 5, 2004.. Moreover, Lehman

23  SunCal Master upstreamed approximately $22.8 million of McAllister Ranch sale deposits

24  in March, 2006 which were effectively used in the operating account to disburse to

25  Lehman Commercial as part of the $40 million in interest and principal it received as part

26  of the $235 million loan ($144 million of which was disbursed as an allegedly as a

27  dividend).

28

1       B.   <u>McSweeney Farms LLC</u>: The Trustee is informed and believes, and

2  on that basis alleges, in exchange for securing the entire $320 million in loans to

3  Lehman/SunCal Master, McSweeney Farms LLC received only loan proceeds sufficient to

4  replace the existing $17.7 million first position lien, which was held by another

5  Lehman-related entity and allegedly created on May 18, 2005.  Moreover, on January 19,

6  2006, through the escrow related to the funding of the loans, SunCal Master upstreamed

7  approximately $21.5 million of McSweeney Farms sale proceeds which were also

8  effectively used to as part of the $40 million in interest and principal Lehman Commercial

9  received as part of the $235 million loan ($144 million of which was disbursed allegedly as

10  a dividend).

11       C.   <u>Summerwind Ranch LLC</u>: The Trustee is informed and believes, and

12  on that basis alleges, in exchange for securing the entire $320 million in loans to

13  Lehman/SunCal Master, Summerwind Ranch LLC received only loan proceeds sufficient

14  to replace the existing $24 million first position lien, which was held by another

15  Lehman-related entity and allegedly created on May 3, 2005.  It is unclear what other

16  benefit Summerwind Ranch LLC received at this point.

17       20.   The Trustee is informed and believes, and on that basis alleges, In sum, the

18  only concrete economic benefit received by the Lehman/SunCal Subsidiaries in exchange

19  for securing Lehman/SunCal Master's obligations under First and Second Lien Credit

20  Agreements (*i.e.*, the repayment of the $320 million in loans) was funds sufficient to relay

21  existing obligations to another Lehman-related entity, in amounts far less than that

22  secured by the Real Properties.  Clearly, the Lehman/SunCal Subsidiaries did not receive

23  reasonably equivalent value.

24       21.   The Trustee is informed and believes, and on that basis alleges, on

25  February 6, 2007, a Third Lien Credit Agreement was entered into by Lehman/SunCal

26  Master, which allegedly provided for an additional $75 million term loan, guaranteed again

27  by the Lehman/SunCal Subsidiaries and secured by third priority liens ("Third

28

274057.1                                  8                              COMPLAINT

1    Lien") against the Real Properties.  Lehman/SunCal Master Lien, the Lehman/SunCal

2    Subsidiary Liens and the Third Lien are collectively referred to as the "Transfers."

3         22.    The Trustee is informed and believes, and on that basis alleges, just as with

4    the January 2006 Loans, Lehman Commercial participated and served as the

5    administrative agent, and Lehman Brothers served as sole arranger and syndicator with

6    Lehman Lakeside as the managing member of the Debtors.  It appears that the need for

7    the Third Lien Credit Agreement was not contemplated when the First and Second Lien

8    Credit Agreements were originated but needed because of cash flow shortages within the

9    Debtors, and simultaneous pressure by Lehman Commercial for the Debtors to timely pay

10    their obligations under the First Lien Credit Agreement.  One year later, on February 14,

11    2008, defendant Lehman Commercial resigned as administrative agent under the Second

12    and Third Lien Credit Agreements and defendants Gramercy and Square Mile,

13    respectively, became the administrative agents.  From the $75 million loaned to

14    Lehman/SunCal Master under the Third Lien Credit Agreement, $50 million was paid out

15    of escrow directly to Lehman Commercial to pay down obligations on the First Lien Credit

16    Agreement.

17         23.    The Trustee is informed and believes, and on that basis alleges, the

18    negotiations between Lehman Commercial and Lehman Lakeside essentially set the

19    Debtors' up for default.  For example, on January 31, 2008, Lehman Commercial, as the

20    lien agent for all three Lien Credit Agreements, negotiated the Fourth Amendment and

21    Waiver to the First Lien Credit Agreement (the "Amendment"), which required that the

22    cash in the Development Account be *increased* from $25 million to $50 million by

23    March 31, 2008.  Then, 60 days later on March 31, 2008, Lehman Commercial declared a

24    default due to the Debtors failure to increase the Development Account.  Lehman

25    Commercial knew or reasonably should have known that the Debtors would be unable to

26    comply with the Amendment and come up with an additional $25 million in cash 60 days.

27         24.    The Trustee is informed and believes, and on that basis alleges, the other

28    defaults declared by Lehman Commercial are equally suspect.  Lehman Commercial

1  argues that the Debtors missed an interest payment, even though there was

2  approximately $25 million of cash in the Development Account, which was admittedly

3  available to repay and prepay loans. Lehman Commercial argues that the Debtors failed

4  to timely deliver financial statements, but the Debtors were under the control of Lehman

5  Commercial's affiliate, Lehman Lakeside. Lehman Commercial further asserts that the

6  Debtors failed to pay a $100,000 administrative fee and maintain the necessary liquidity

7  requirements, which was presumably caused by that fact that $144 million of the

8  January 2006 Loan proceeds were paid directly from escrow to Lehman/SunCal Master's

9  owners and, primarily, Lehman Lakeside.

10                    **SIGNIFICANT POST-PETITION EVENTS**

11        25.    The Trustee is informed and believes, and on that basis alleges, on

12  October 2, 2008, Lehman Commercial filed four motions for relief from the automatic stay

13  (the "Lehman Relief Motions") in each individual case, which were originally scheduled for

14  hearings on October 28, 2008. On October 14, 2008, a group of petitioning creditors filed

15  an opposition to the Lehman Relief Motions. The Debtors, controlled by Lehman

16  Lakeside, did not oppose the Lehman Relief Motions, arguing that the Debtors have no

17  viable defenses to thereto.

18        26.    The Trustee is informed and believes, and on that basis alleges, following

19  the Debtors' refusal to oppose the Lehman Relief Motions, on or about October 15, 2008,

20  a group of petitioning creditors filed a motion for order authorizing the appointment of a

21  chapter 11 trustee (the "Trustee Appointment Motion"). The petitioning creditors argued

22  that an independent trustee should be appointed to represent the interests of the Debtors'

23  estates, especially in light of the affiliate relationship between Lehman Commercial, the

24  lender and movant, and Lehman Lakeside, the managing member and majority owner of

25  the Lehman/SunCal Master.

26        27.    The Trustee is informed and believes, and on that basis alleges, on

27  October 22, 2008, the Debtors answered the involuntary petitions, consented to the entry

28  of the orders for relief, and then filed motions to convert the cases from chapter 11 to

1  chapter 7 (collectively, the "Motions to Convert"). The Debtors, controlled by Lehman

2  Lakeside, argued that conversion was proper because there was no possibility to

3  reorganize. Both Lehman Commercial and the Lehman-controlled Debtors opposed the

4  Trustee Appointment Motion.

5      28.    The Trustee is informed and believes, and on that basis alleges, following

6  his appointment, the Trustee immediately moved the Court for authoirty to use cash

7  collateral on a emergency basis (the "Cash Collateral Motion"). Lehman Commerical

8  opposed the Cash Collateral Motion, despite the fact that the Trustee sought Court

9  authority to use the cash in the Development Account for the sole purpose of preventing

10  the neglect complained of in the Lehman Relief Motions, and which was originally caused

11  by Lehman Commercial's own conduct. On November 6, 2008, the Court heard and

12  approved the Cash Collateral Motion over Lehman Commerical's objection. Pursuant to

13  the Court's order, the Trustee has authority to use the funds in the Development Account

14  pursuant to the Court-approved budget to bring the deferred maintenance up to date

15  (which maintenance Lehman Commercial refused to fund) and to preserve the value of

16  the Real Properties.

17

18
                   **FIRST CLAIM FOR RELIEF**
    **(To Avoid Transfer and Recover Intentionally Fraudulently Conveyance**
      **under 11 U.S.C. §§ 544(b), 550, and Cal. Civ. Code § 3439.04(a)(1))**

19
      **(against Lehman Commercial, Gramercy and Square Mile)**

20
    29.    Plaintiff incorporates each and every allegation contained in paragraphs 1

21
through 28, inclusive, as though fully set forth herein.

22
    30.    The Trustee is informed and believes, and on that basis alleges, the

23
Transfers occurred during the four-year period immediately preceding the Petition Dates.

24
    31.    The Trustee is informed and believes, and on that basis alleges, the

25
Transfers were made with the actual intent to hinder, delay or defraud the Estates'

26
creditors.

27

28

32.    Trustee is informed and believes, and on that basis alleges, that the Lehman/SunCal Master Lien is in the amount of $320 million. The Lehman/SunCal Subsidiaries Liens are cross collateralized in the amount of $320 million.  The Third Lien is in the amount of $75 million.

33.    The Trustee is informed and believes, and on that basis alleges, creditors existed at the time of the Transfers that remained unpaid as of the Petition Dates.

34.    The Trustee is informed and believes, and on that basis alleges, the Transfers were made to or for the benefit of Lehman Commercial, Gramercy and Square Mile.

35.    The Trustee is informed and believes, and on that basis alleges, the Debtors received no or inadequate consideration from Lehman Commercial, Gramercy and Square Mile in exchange for the Transfers.

36.    Trustee is informed and believes, and on that basis alleges, that Lehman Commercial is an insider of the Debtors.

37.    The Trustee is informed and believes, and on that basis alleges, that Debtors became insolvent as a result of the Transfers.

38.    By reason of the foregoing, the Transfers are avoidable, Plaintiff is entitled to set aside and recover the Transfers pursuant to 11 U.S.C. § 544(b), California Civil Code §§ 3439.04(a)(1) and 3439.07, and 11 U.S.C. § 550.

**SECOND CLAIM FOR RELIEF**
**(To Avoid Transfer and Recover Constructively Fraudulently Conveyance**
**under 11 U.S.C. §§ 544(b), 550 and Cal. Civ. Code §§ 3439.04(a)(2))**
**(against Lehman Commercial, Gramercy and Square Mile)**

39.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 38, inclusive, as though fully set forth herein.

40.    The Trustee is informed and believes, and on that basis alleges, the Transfers occurred during the four-year period immediately preceding the Petition Dates.

41.    Trustee is informed and believes, and on that basis alleges, that the Lehman/SunCal Master Lien is in the amount of $320 million. The Lehman/SunCal

274057.1                                          12                                    COMPLAINT

1  Subsidiaries Liens are cross collateralized in the amount of $320 million. The Third Lien

2  is in the amount of $75 million.

3      42.    The Trustee is informed and believes, and on that basis alleges, creditors

4  existed at the time of the Transfers that remained unpaid as of the Petition Dates.

5      43.    The Trustee is informed and believes, and on that basis alleges, the

6  Transfers were made to or for the benefit of Lehman Commercial, Gramercy and Square

7  Mile.

8      44.    The Trustee is informed and believes, and on that basis alleges, the Debtors

9  received no or inadequate consideration from Lehman Commercial, Gramercy and

10  Square Mile in exchange for the Transfers.

11      45.    The Trustee is informed and believes, and on that basis alleges, at the time

12  of the Transfers, the Debtors were engaged or were about to engage in a business or a

13  transaction for which the remaining assets of the Debtors were unreasonably small in

14  relation to the business or transaction.

15      46.    The Trustee is informed and believes, and on that basis alleges, at the time

16  of the Transfers, the Debtors intended to incur, or believed or reasonably should have

17  believed that they would incur, debts beyond their ability to pay as they became due.

18      47.    The Trustee is informed and believes, and on that basis alleges, Lehman

19  Commercial, Gramercy and Square Mile did not take the Transfers for a reasonably

20  equivalent value or in good faith.

21      48.    By reason of the foregoing, the Transfers are avoidable, Plaintiff is entitled to

22  set aside and recover the Transfers pursuant to 11 U.S.C. § 544(b), California Civil Code

23  §§ 3439.04(a)(2) and 3439.07, and 11 U.S.C. § 550.

24

25                    **THIRD CLAIM FOR RELIEF**
       **(To Avoid Transfer and Recover Constructively Fraudulently Transferred**
       **Property under 11 U.S.C. §§ 544(b), 550 and Cal. Civ. Code §§ 3439.05)**
26            **(against Lehman Commercial, Gramercy and Square Mile)**

27      49.    Plaintiff incorporates each and every allegation contained in paragraphs 1

28  through 48, inclusive, as though fully set forth herein.

50.     The Trustee is informed and believes, and on that basis alleges, the Debtors made the Transfers to and for the benefit of Lehman Commercial, its affiliates, Gramercy and Square Mile.

51.     The Trustee is informed and believes, and on that basis alleges, the Debtors did not receive reasonably equivalent value for making the Transfers.

52.     The Trustee is informed and believes, and on that basis alleges, at the time of the Transfers, the Debtors were either insolvent and/or were rendered insolvent as a result of the Transfers.

53.     The Trustee is informed and believes, and on that basis alleges, creditors existed at the time of or prior to the Transfers that remained unpaid as of the Petition Dates.

54.     By reason of the foregoing, the Transfers are avoidable, Plaintiff is entitled to set aside and recover the Transfers pursuant to 11 U.S.C. § 544(b), California Civil Code §§ 3439.05 and 3439.07, and 11 U.S.C. § 550.

### FOURTH CLAIM FOR RELIEF
#### (To Preserve Transfer for the Benefit of the Estates Pursuant to 11 U.S.C. § 551)
#### (against Lehman Commercial, Gramercy and Square Mile)

55.     Plaintiff incorporates each and every allegation contained in paragraphs 1 through 54, inclusive, as though fully set forth herein.

56.     Pursuant to 11 U.S.C. § 551, the Transfers are preserved for the benefit of the Estates as the Transfers are avoidable under 11 U.S.C. §§ 544 and 550 as set forth above.

### FIFTH CLAIM FOR RELIEF
#### (For Imposition of Constructive Trust)
#### (against Lehman Commercial, Gramercy and Square Mile)

57.     Plaintiff incorporates each and every allegation contained in paragraphs 1 through 56, inclusive, as though fully set forth herein.

1    58.    The Trustee is informed and believes, and on that basis alleges, the

2  Transfers are fraudulent transfers for less than reasonably equivalent value.

3    59.    The Trustee is informed and believes, and on that basis alleges, Lehman

4  Commercial, Gramercy and Square Mile were unjustly enriched as a result of the

5  Transfers.

6    60.    By reason of the foregoing, Plaintiff is entitled to the imposition of a

7  constructive trust as of the date of the Transfers for the benefit of the Estates as of the

8  Petition Date.

9

10                    **SIXTH CLAIM FOR RELIEF**
                      **(For Breach of Fiduciary Duty)**
        **(against Lehman Commercial and Lehman Lakeside)**

11

12    61.    Plaintiff incorporates each and every allegation contained in paragraphs 1

13  through 60, inclusive, as though fully set forth herein.

14    62.    The Trustee is informed and believes, and on that basis alleges, Lehman

15  Lakeside, as the managing member of debtor Lehman SunCal Master, which is the 100%

16  member of the remaining debtors, has fiduciary duties to the Debtors and their creditors.

17  Lehman Commercial, Lehman Lakeside's affiliate and recipient of, among other things,

18  the Transfers, exercised sufficient control over the Debtors through, at a minimum, the

19  affiliate relationship with Lehman Lakeside, to be considered an insider with fiduciary

20  duties to the Debtors and their creditors.

21    63.    The Trustee is informed and believes, and on that basis alleges, Lehman

22  Lakeside and Lehman Commercial breached their fiduciary duties to Debtors and their

23  creditors, by, among other things set out in more detail above, causing the Debtors to

24  agree to the Transfers when they did not receive reasonably equivalent value for these

25  liens, and agreeing to loan terms which left insufficient funds for the development of the

26  Real Properties, and causing the Debtors to agree to an increased reserved account

27  which was unsustainable.   Moreover, by permitting a $144 million distribution of equity

28  through the proceeds of development loans with no benefit to the Debtors, it caused

1  interest and principal obligations which burdened the Debtors to such an extent that it

2  resulted in inadequate liquidity to sustain the operations.

3      64.    The Trustee is informed and believes, and on that basis alleges, these

4  breaches caused the Debtors' insolvency and inability to pay their debts as they came

5  due.

6      65.    The Trustee is informed and believes, and on that basis alleges, Debtors

7  and their other creditors who did not know or have reason to know about the Transfers

8  have been injured in an amount to be proven at trial.

9      66.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to

10  be proven at trial.  Because Lehman Commercial and Lehman Lakeside's conduct was

11  malicious, oppressive and in open disregard for the rights of others, the Plaintiff is entitled

12  to exemplary damages in an amount to be proven at trial.

13

14  **SEVENTH CLAIM FOR RELIEF**
**(For Breach of Implied Covenant of Good Faith and Fair Dealing)**
**(against Lehman Commercial)**

15

16      67.    Plaintiff incorporates each and every allegation contained in paragraphs 1

17  through 66, inclusive, as though fully set forth herein.

18      68.    The Trustee is informed and believes, and on that basis alleges, defendant

19  Lehman Commercial owed Debtors the implied covenant of good faith and fair dealing

20  pursuant to the First, Second and Third Lien Credit Agreements in which Lehman

21  Commercial impliedly covenanted that it would, in good faith and in the exercise of fair

22  dealing, deal with debtor Lehman/SunCal Master fairly and honestly and do nothing to

23  impair, interfere with, hinder or potentially injure its rights.

24      69.    The Trustee is informed and believes, and on that basis alleges, defendant

25  Lehman Commercial breached the implied covenant of good faith and fair dealing, by,

26  among other things, the acts detailed above, which may not constitute breach of contract,

27  but which are contrary to the First, Second and Third Lien Credit Agreements purpose of

28  loans, i.e. real estate development.  These acts include, at a minimum, structuring the

1   First, Second and Third Lien Credit Agreements, and related terms, so that sufficient

2   funds for the real estate development projects did not exist upon funding, refusing to allow

3   Debtors to use the funds in the Debt Servicing Account/Development Account to service

4   the January 2006 Loan, and requiring terms which Lehman Commercial knew or should

5   have known Debtors could not comply with such as the increased Debt Servicing

6   Account/Development Account withholding and using these terms to call a default on the

7   January 2006 Loan.

8        70.    The Trustee is informed and believes, and based thereon alleges, Debtors

9   performed all acts, duties and responsibilities required of it under the First, Second and

10  Third Lien Credit Agreements except that which was prevented or caused by Lehman

11  Commercial's improper conduct.

12       71.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to

13  be proven at trial.

14

15                    **EIGHTH CLAIM FOR RELIEF**
                     **(For Equitable Subordination)**
        **(against Lehman Commercial, Gramercy and SquareMile)**

16

17       72.    Plaintiff incorporates each and every allegation contained in paragraphs 1

18  through 71, inclusive, as though fully set forth herein.

19       73.    The Trustee is informed and believes, and on that basis alleges, Lehman

20  Commercial, Gramercy and SquareMile are the recipients of the Lehman/SunCal Master

21  Lien, the Lehman/SunCal Subsidiary Liens, and the Third Lien, respectively.  Collectively

22  these liens are in the amount of no less than $395 million and Lehman Commercial,

23  Gramercy and SquareMile have asserted or will assert first, second and third priority

24  secured claims against the Estates for this amount.

25       74.    The Trustee is informed and believes, and on that basis alleges, Lehman

26  Commercial has engaged in inequitable conduct described in more detail above including

27  causing the Debtors, through its affiliate Lehman Lakeside, to agree to the

28  Lehman/SunCal Master Lien, the Lehman/SunCal Subsidiary Liens and the Third Lien

1    when they did not receive reasonably equivalent value for these liens, causing the

2    Dividend to its affiliate Lehman Lakeside which left insufficient funds for the development

3    of the Real Properties, and causing the Debtors to agree to an increased reserved

4    account which was unsustainable.

5    75.    The Trustee is informed and believes, and on that basis alleges, Lehman

6    Commercial's misconduct resulted in injury to the Debtors and their creditors by putting

7    the Debtors in insolvency, unable to pay their debts as they came due in an amount to be

8    proven at trial but, at a minimum, in an amount equivalent to the Dividend plus interest.

9    76.    By reason of the foregoing, Plaintiff is entitled to equitably subordinate

10    Lehman Commercial's, Gramercy's and SquareMile's claims in an amount to be proven at

11    trial but, at a minimum, in the amount of the Dividend, plus interest, which result is not

12    inconsistent with the purposes of the Bankruptcy Code.

13

14    **NINTH CLAIM FOR RELIEF**
**(For Award of Attorneys' Fees and Costs Pursuant to Rule 7008(b)**
**of the Federal Bankruptcy Rules)**

15    **(against all Defendants)**

16    77.    Plaintiff incorporates each and every allegation contained in paragraphs 1

17    through 76, inclusive, as though fully set forth herein.

18    78.    Based on the foregoing allegations, Plaintiff is entitled to reasonable

19    attorneys' fees and costs resulting from bringing the instant action.

20    WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendants

21    as follows:

22    1.    Avoiding the Transfers and declaring that the Transfers be annulled and

23    rendered void as fraudulent transfers and for recovery of the Transfers for the benefit of

24    the Estates against Lehman Commercial, Gramercy and Square Mile.

25    2.    For preservation of the Transfers for the benefit of the Estates.

26    3.    For imposition of a constructive trust as of the date of the Transfers for the

27    benefit of the Estates.

28

1      4.     For a money judgment against Lehman Commercial and Lehman Lakeside

2 for breach of their fiduciary duties.

3      5.     For the equitable subordination to general unsecured creditors of all liens

4 created under the First, Second and Third Credit Agreements and for the preservation of

5 such liens for the benefit of the Estates;

6      6.     Plaintiff be awarded the Estates' costs and attorneys' fees incurred in this

7 action.

8      7.     For award of exemplary damages.

9      8.     For pre-judgment and post-judgment interest at the maximum legal rate.

10      9.     For such other and further relief as this Court may, in its discretion, deem

11 just and proper.

12

13 Dated:  November _____, 2008

14

15                            By:  _____

16                                  Attorneys for Alfred H. Siegel,
                                 Chapter 11 Trustee

17

18

19

20

21

22

23

24

25

26

27

28

274057.1                                 19                                   COMPLAINT

**PLEASE FOLD THIS SHIPPING DOCUMENT IN HALF AND PLACE IT IN A WAYBILL POUCH AFFIXED TO YOUR SHIPMENT SO THAT THE BARCODE PORTION OF THE LABEL CAN BE READ AND SCANNED. ***WARNING: USE ONLY THE PRINTED ORIGINAL LABEL FOR SHIPPING. USING A PHOTOCOPY OF THIS LABEL FOR SHIPPING PURPOSES IS FRAUDULENT AND COULD RESULT IN ADDITIONAL BILLING CHARGES, ALONG WITH THE CANCELLATION OF YOUR FEDEX ACCOUNT NUMBER.**

| From:   Origin ID: TWHA   (714) 966-1000 | Ship Date: 18SEP09 |
|---|---|
| ROBERT S. MARTICELLO | ActWgt: 1.0 LB MAN |
| WEILAND & GOLDEN | System#: 582835/CAFE2361 |
| 650 TOWN CENTER DRIVE | Account#: S 189516738 |
| SUITE 950 | |
| COSTA MESA, CA 92626 | |

FedEx Express

E

CL86GM/0T/21/23


Delivery Address Bar Code

SHIP TO:   (714) 966-1000          BILL SENDER

**ATT: LEHMAN BROTHERS HOLDINGS CLAIM**
**EPIQ BANKRUPTCY SOLUTIONS, LLC**
**757 THIRD AVENUE  3RD FLLOR**

**NEW YORK, NY 10017**

Ref #    SIE01.0002
Invoice #
PO #
Dept #


RECEIVED
SEP 21 2009



**PRIORITY OVERNIGHT**                    **MON**

TRK#   **4213 6487 1985**   FORM 0201        Deliver By:
21SEP09

**EWR**   A1

**10017**   -NY-US

**SB OGSA**

