Weiland, Golden, Smiley, Wang Ekvall &
Strok, LLP
Evan D. Smiley, CA State Bar No. 169296
esmiley@wgllp.com
Robert S. Marticello, CA State Bar No. 244256
rmarticello@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California  92626
Telephone: 714-966-1000
Facsimile: 714-966-1002

Sills Cummis & Gross P.C.
One Rockefeller Plaza
New York, New York 10020
Telephone:  212-643-7000
Facsimile:  212-643-6500

Attorneys for Alfred H. Siegel,
Chapter 11 Trustee

Levene, Neale, Bender, Yoo & Brill L.L.P.
Daniel H. Reiss, CA State Bar No. 150573
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244

Attorneys for the Official Committee of Unsecured
Creditors of LBREP/L-SunCal Master I, LLC, *et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| -------------------------------------------- X | | |
| In re | : | Chapter 11 |
| | : | |
| **LEHMAN BROTHERS** | : | **Case No. 08-13555 (JMP)** |
| **HOLDINGS, INC., et al,** | | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| -------------------------------------------- X | | |

**REPLY OF THE CHAPTER 11 TRUSTEE OF THE
SUNCAL MASTER DEBTORS TO THE DEBTORS' OBJECTION TO THE
MOTION FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

Alfred H. Siegel, the chapter 11 trustee (the "Trustee") of the jointly administered

bankruptcy cases of LBREP/L-SunCal Master I, LLC (the "SunCal Parent Debtor"), and

LBREP/L-SunCal McAllister Ranch, LLC, LBREP/L-SunCal McSweeney Farms, LLC, and

LBREP/L-SunCal Summerwind Ranch, LLC  (collectively, the "SunCal Subsidiary Debtors"

and together with the SunCal Parent Debtor, the "SunCal Master Debtors"), currently pending in

the United States Bankruptcy Court, Central District of California, Santa Ana Division, before

Judge Erithe A. Smith (the "California Bankruptcy Court") by and through the undersigned

attorneys, file this joint reply (the "Reply") to the objection (the "Objection") of Lehman

Commercial Paper Inc. ("LCPI"), and its affiliated debtors in the above-referenced Chapter 11

cases (collectively, with LCPI, the "Lehman Debtors") to the *Motion of the Chapter 11 Trustee*

*of the SunCal Master Debtors for an Order Granting Relief from the Automatic Stay* [Docket No.

9642] (the "Motion"), and the joinder in the Objection filed by the Official Committee of

Unsecured Creditors (the "Lehman Committee").  Capitalized terms not otherwise defined herein

shall have the meanings ascribed to them in the Motion.  In support of the Reply, the Trustee

respectfully represents as follows:

**I.
PRELIMINARY STATEMENT**

1.      As demonstrated in the Motion and again in this Reply, "cause" exists to lift the

automatic stay to allow the Trustee to administer the SunCal Master Estates, and to avoid

irreparable harm to the SunCal Master Debtors' creditors.  The filing of the Motion was not

reflexive, but rather was the culmination of the Trustee's careful consideration of alternatives to

the failed settlement discussions with LCPI.  In exercising his fiduciary duties, the Trustee has

2

determined that the sale of the Properties is in the best interests of *all* creditors.  The Trustee has received multiple all-cash offers to acquire the Properties for at least $40 million and expects to execute a binding asset purchase agreement prior to the hearing on the Motion.  The Trustee simply seeks to reduce the Properties to cash for the highest and best price, and to resolve the disputes related to the liens and claims asserted by LCPI in the SunCal Master Bankruptcy Cases.  The granting of the Motion will allow the parties to obtain final and complete relief regarding their disputes, which ultimately have to be resolved for the parties' respective bankruptcy cases to be concluded.

2.      The California Bankruptcy Court is the appropriate and most economical venue to resolve the disputes between the parties.  Only the California Bankruptcy Court can order the sale of the Properties and, therefore, will have to address the issues related to the validity and priority of LCPI's liens.  Thus, to the extent that this Court has the jurisdiction to decide the Trustee's equitable subordination and fraudulent transfer claims, the litigation of such claims before this Court would cause duplicitous litigation and create the potential for inconsistent rulings, both of which should be avoided.  The California Bankruptcy Court provides a single, expeditious forum to fully resolve all the disputes between the parties.

3.      Denial of the Motion will result in significant harm to the SunCal Master Estates and their creditors.  If the Motion is denied, any prospective buyers interested in the Properties will be lost, as will the opportunity to reduce the Properties to substantial cash and avoid future holdings costs.  The Trustee will be unable to carry out his statutory duties and the administration of the SunCal Master Bankruptcy Cases will be hampered.  The Trustee will be forced to maintain the *status quo* and continue to use cash collateral to preserve the value of the Properties over LCPI's objection, while defending against LCPI's attempts to obtain stay relief

and foreclose on the Properties without all available remedies.  If the Trustee is unable to use cash collateral to preserve the value of the Properties or if the Trustee is unable to fully defend the SunCal Master Estates against LCPI's attempts to obtain stay relief based on its disputed liens, then the Properties will likely be lost.  Further, the statute of limitations for commencing an avoidance action against LCPI will continue to run without the possibility of a filing a complaint.  Thus, there are specific and irreparable harms facing the SunCal Master Estates if the Motion is denied.

4.     In contrast, LCPI has offered nothing more than conclusory assertions that granting the Motion will result in costly litigation related to the claims and liens it asserted in the SunCal Master Bankruptcy Cases and that such litigation will interfere with its bankruptcy case.  However, LCPI has, by its conduct, already demonstrated that it has the resources to participate actively in both cases.  Clearly, the balance of the harms weighs in favor of granting the Motion.

5.     LCPI's objection is nothing more than a further attempt to paralyze the administration of the SunCal Master Estates so as to gain a tactical advantage in the SunCal Master Bankruptcy Cases.  LCPI is not requesting denial of the Motion to promote settlement discussions, but to increase the chances that it will obtain stay relief in the SunCal Master Bankruptcy Cases.  Incredibly, LCPI requests that this Court deny the Motion to maintain the *status quo*, but continues to object to the Trustee's efforts to preserve the value of the Properties in the meantime.  LCPI opposed the Trustee's motion to use cash collateral for the sole and limited purpose of preserving the value of LCPI's purported real property collateral and, recently, appealed the California Bankruptcy Court's order granting the cash collateral motion.  In opposing the Trustee's cash collateral motion, LCPI argued that the Trustee has failed to diligently move the SunCal Master Bankruptcy Cases forward; however, now LCPI asks this

Court to prevent the Trustee from doing so.  LCPI seeks to put the Trustee in the untenable position of being unable to administer the Properties and bring the SunCal Master Bankruptcy Cases to their ultimate conclusion, but also unable to preserve the value of the Properties while the SunCal Master Bankruptcy Cases are pending.

6.        The denial of the Motion will not foster settlement discussions between the Trustee and LCPI, nor are the parties close to reaching a compromise.  The Trustee and LCPI were engaged in settlement discussions for over a year, but were unable to reach an agreement, and settlement discussions have since ceased.  The Trustee believes that, at this stage, the settlement discussions between the parties have been exhausted.  Moreover, the prior settlement discussions did not stall because of a minor risk or issue, as LCPI would have this Court believe. The parties disagreed on the interpretation of material terms of the Term Sheet, which greatly impacted the economic benefits to the SunCal Master Estates.  In short, LCPI's interpretation of the Term Sheet gutted the benefits to the SunCal Master Estates, and pursuit of the Term Sheet's approval was no longer consistent with the Trustee's fiduciary duties.  LCPI's subsequent proposal was as unacceptable as its interpretation of the Term Sheet and provided no benefit to the SunCal Master Estates.

7.        Contrary to its assertions, LCPI is not the true or economic owner of the Properties, but a creditor, holding disputed undersecured claims.  As discussed in the Motion, the Trustee holds meritorious claims against LCPI to equitably subordinate LCPI's claims and to avoid LCPI's liens.  In defending the validity of its liens, LCPI fails to address its pre-petition misconduct and grossly overstates the value conferred on the SunCal Master Debtors.  For example, of the $168 million LCPI alleges benefited the SunCal Master Debtors, $117 million was disbursed from escrow to LCPI's affiliate, Lehman Lakeside.  If the Trustee is successful on

the Complaint Claims, LCPI will be nothing more than a subordinated unsecured creditor. Moreover, the priority of LCPI's liens is in dispute as creditors holding mechanic's liens against the Properties assert that their liens are superior to the liens asserted by LCPI.[1]  These creditors would be grossly prejudiced if the Trustee was not permitted to sell the Properties for the highest and best price.  LCPI, as one disputed lienholder, should not be permitted to use its bankruptcy to prevent the administration of the SunCal Master Estates and prejudice the rights of competing lienholders and the holders of approximately $60 million in unpaid vendor debt.

8.      Cause exists to grant the Motion and lift the automatic stay as requested therein, and LCPI has failed to offer any compelling reason to the contrary.  LCPI wants to delay the administration of the SunCal Master Estates to gain a strategic advantage; however, such delay will have real and immediate economic consequences for the SunCal Master Bankruptcy Cases. Balancing LCPI's attempts for strategic delay against the real economic harm facing the SunCal Master Estates clearly weighs in favor of stay relief.  Accordingly, the Trustee respectfully requests that the Court grant the Motion.

## II.
## ADDITIONAL MATERIAL FACTS

### A.    The Trustee's Sale Efforts

9.      The Trustee is close to finalizing a purchase agreement for the Properties with one of several potential stalking horse buyers for at least $40 million in all cash, subject to overbid. The Trustee expects to have a signed asset purchase agreement by the time of the hearing on the Motion.    The Trustee is close to completing the sale motion and the accompanying bid procedures.  However, under each potential asset purchase agreement, the Trustee must obtain a final order granting the Motion.  If the Motion is granted, the Trustee expects to file the proposed

---

[1] This Court has already granted one such mechanic's lien holder stay relief to resolve the lien priority dispute.

sale motion within days of entry of a final order granting the Motion. Multiple buyers have resisted executing an agreement until the Trustee obtains stay relief and, therefore, granting the Motion will facilitate the sale process.

10. Over the past year, third-party interest in the Properties has increased, and the Trustee is receiving higher all-cash offers now than at any other point of the SunCal Master Bankruptcy Cases. With several potential purchasers, an overbid process, and the current state of the market, the SunCal Master Estates will be severely prejudiced if the Trustee is not permitted to reduce the Properties to cash at this point in time.

**B.    The Prior Settlement Discussions with LCPI**

11. LCPI attempts to down play the dispute related to the interpretation of the Term Sheet (which dispute is irrelevant to the current Motion). The Term Sheet required that the Trustee settle and obtain a release of any mechanic's liens determined to be senior to the liens of LCPI ("Senior Liens") using LCPI's title insurance and the $1.5 million set aside for that purpose (the "Senior Lien Reserve Fund"). If all the Senior Liens were released, then the Trustee could retain any unused portion of the Senior Lien Reserve Fund. However, the title insurance company, Fidelity National Title Insurance Company ("Fidelity"), objected to the Compromise Motion arguing that, due to LCPI's conduct, it could and would deny coverage. If Fidelity was correct, and LCPI was unable to offer any assurance to the contrary, the title insurance could not be used to settle any Senior Liens, leaving only the $1.5 million Senior Lien Reserve Fund to resolve potentially $18 million in Senior Liens.

12. The dispute between the Trustee and LCPI arose regarding the impact on the settlement if any Senior Liens were not released. LCPI took the position that the Trustee was entitled to only the $3 million set aside to pay administrative expenses, and that LCPI could foreclose on the Properties. The Trustee believed that LCPI's interpretation of the Term Sheet

was contrary to the parties' intent.  The Trustee and the SunCal Committee, in contrast, believed that, under such circumstances, the SunCal Master Estates would not be entitled to any unused portion of the Senior Lien Reserve Fund, however, the other benefits under the Term Sheet, *e.g.*, the "Trade Creditor Allocation" and the "Trustee's Participation," would remain in tact.

13.    The Trustee, the SunCal Committee, and LCPI attempted to resolve the dispute regarding the interpretation of the Term Sheet.  The Trustee continued the hearing on the Compromise Motion on multiple occasions to give the parties' an opportunity to reach a consensual resolution.  However, the parties were unable to do so.  LCPI's subsequent proposal was far from satisfactory to the Trustee and the SunCal Committee as it essentially meant that the SunCal Master Bankruptcy Estates would receive only $3 million under the proposed settlement.  Despite the insinuations by LCPI and the Lehman Committee, the Trustee and LCPI are not close to reaching a settlement.  Again, the settlement discussions fell apart, the proposed compromise was never fully documented, *and the Term Sheet was terminated by LCPI*. Settlement discussions have not occurred between the parties in months.

## III.
## ARGUMENT

As demonstrated in the Motion, the Trustee believes that the overwhelming majority of the *Sonnax* factors support granting the Motion.  However, in the interests of brevity, the Trustee has limited the discussion below to only the more significant of the *Sonnax* factors.

**A.    INTERESTS OF JUDICIAL ECONOMY AND EXPEDITIOUS AND ECONOMICAL RESOLUTION OF LITIGATION ARE FURTHERED BY PERMITTING THE ADMINISTRATION OF THE SUNCAL MASTER BANKRUPTCY ESTATES IN A SINGLE FORUM**

14.    Interests of judicial economy and the speedy and economical resolution of litigation are furthered by permitting the Trustee to administer the SunCal Master Estates and to move the SunCal Master Bankruptcy Cases forward to their ultimate conclusion.  The SunCal

Master Bankruptcy Cases have been pending for almost two years and the continued maintenance of the *status quo* is in no party's best interests - except perhaps LCPI.  In contrast, the sale of the Properties for the highest and best price will generate substantial cash, eliminate holding costs, and prevent further cash collateral disputes.  Litigation surrounding the liens and claims asserted by LCPI, and the expenses related thereto, are inevitable.  Lifting the stay will result in the most economical and efficient resolution of the subject disputes.  The Trustee is ready to proceed with the Sale Motion Relief and the Complaint Claims upon stay relief.  Moreover, the California Bankruptcy Court provides a single, expeditious forum for the resolution of the disputes between the parties.

15.    The California Bankruptcy Court is uniquely situated to adjudicate each and every dispute between the parties.  As discussed in the Motion, the California Bankruptcy Court is the only forum that can authorize the sale of the Properties and, as a result, will have to evaluate the disputes related to the validity and priority of LCPI's liens.  Absent stay relief as requested in the Motion, the disputes between the Trustee and LCPI will be resolved in a piecemeal fashion as such issues arise during the SunCal Master Bankruptcy Cases, such as, in the context of cash collateral motions, the LCPI Stay Relief Motion, and the Trustee's eventual objection to LCPI's claims. While LCPI's claims and liens are property of LCPI's bankruptcy estate and this Court may have exclusive *in rem* jurisdiction over that property, the California Bankruptcy Court indisputably has jurisdiction to resolve any disputes regarding the claims asserted by LCPI in the SunCal Master Bankruptcy Cases and the liens asserted by LCPI against the property of the SunCal Master Estates.  Moreover, to the extent that  this Court has jurisdiction to adjudicate the Complaint Claims, including the claims to subordinate LCPI's claims and avoid LCPI's liens, it is not the most economical and efficient way of proceeding and may impact the doctrine of

comity.  By adjudicating the Complaint Claims before this Court, the parties will be required to litigate the same issues in multiple forums, thereby increasing costs and creating the potential for inconsistent rulings.  It is to avoid this type of outcome that a lift stay motion is typically denied and not, as LCPI requests, to create it.

16.    The SunCal Master Estates' claims against LCPI unquestionably have merit, and LCPI's unsupported assertions to the contrary are irrelevant to the Motion.  LCPI briefly attempts to refute the Trustee's claims to avoid its liens against the Properties by quoting only a portion of the Trustee's pleadings and alleging that the SunCal Master Debtors received at least $164 million of value pursuant to the January 2006 Loans.  However, of this purported sum, $144 million was upstreamed directly to the SunCal Master Debtors' equity owners, of which $117 million was disbursed to Lehman Lakeside, and $25 million served only as LCPI's collateral and could not be accessed by the SunCal Master Debtors.  As discussed in the Motion, approximately 75% of the $320 million in loans to the SunCal Master Parent Debtor was disbursed directly to LCPI or its affiliates, or was otherwise unavailable to the SunCal Master Debtors.[2]  In a nutshell, LCPI used its position as an insider, via its affiliate relationship to the SunCal Parent Debtor's majority owner and manager (Lehman Lakeside), to overleverage the SunCal Master Debtors so as to the maximize its return and enrich its affiliates.[3]  If the Trustee is

_____

[2] Moreover, the SunCal Subsidiary Debtors, which entities own the Properties, guaranteed and secured the *entirety* of the loans to the SunCal Parent Debtor, but received only a small fraction of the loan proceeds

[3] Recent decisions in factually similar situations have only bolstered the SunCal Master Debtors' claims against LCPI.  In a recent and extraordinarily similar case, the bankruptcy court equitably subordinated the entire secured claim of a lender, Credit Suisse, because it recklessly overleveraged the debtors to increase its fees.  *See In re YellowStone Mountain Club, LLC*, 2009 WL 3094930 (Bankr. D. Mont. 2009).  In *Yellowstone*, of the $375 million loaned to the debtors, the owners of a real estate development project known as the Yellowstone Club, $7.5 million was paid to Credit Suisse as a transaction fee, $209 million was immediately upstreamed to the debtors' shareholder (who was <u>not</u> an affiliate of the lender), and approximately $24.2 million was used to takeout existing debt.  *See id.* at *5-6.  In *In re Tousa*, 2009 WL 3519403 (Bankr. S.D. Fla. 2009), the bankruptcy court found a fraudulent transfer "savings clause," like the ones contained in the SunCal Subsidiary Debtors' guaranty agreements, invalid.  *See id.* at *75-77.

successful in avoiding LCPI's liens and/or equitably subordinating LCPI's claims, the proceeds from the sale of the Properties will be distributed to any senior mechanic's lien creditors and to the holders of the $60 million in unpaid vendor debt. Thus, LCPI's assertions that it will receive the sale proceeds even if the Trustee is successful on the Complaint Claims, is entirely incorrect.

17.    The continuation of the automatic stay will not result in a settlement, but will simply delay the inevitable. The parties already attempted a settlement. The Trustee, the SunCal Committee and LCPI engaged in settlement discussions for over one year, but the parties were unable to reach an agreement. If stay relief to permit the Trustee to pursue alternatives is not appropriate now, then when? Moreover, the proposed settlement between the Trustee and LCPI did not fall apart because of a minor issue or risk, but because the parties disagreed on the impact if any "Senior Liens" could not be released, which, based on the objection of Fidelity, appeared to be the likely outcome. The Trustee believes that LCPI's interpretation of the Term Sheet was contrary to the parties' intent, and would have greatly impacted the bargained-for benefits to the SunCal Master Estates. The Term Sheet was subsequently terminated by LCPI, and settlement discussions have ceased. Put simply, there is currently no settlement between the parties.

18.    The Trustee will consider any further settlement offer by LCPI, but should not be held hostage in the meantime. LCPI is not seeking denial of the Motion to foster settlement discussions, but to limit the Trustee's alternatives, increase its own leverage, and achieve the ultimate goal of stay relief in the SunCal Master Bankruptcy Cases. The automatic stay should not be continued for such an improper purpose. In fact, if the Motion is denied, LCPI will have no incentive to renew settlement discussions, which have not occurred in months. The Trustee should be permitted to fulfill his statutory duties by moving forward with the administration of SunCal Master Estates in the exercise of his business judgment. Granting the Motion does not

preclude renewed settlement discussions.

19.     Based on the foregoing, interests of judicial economy and the speedy and economical resolution of litigation support granting the Motion.

**B.     THE IRREPARABLE HARM TO THE SUNCAL MASTER ESTATES AND THEIR CREDITORS GREATLY OUTWEIGHS THE POTENTIAL, UNSPECIFIED HARM TO LCPI**

20.     The SunCal Master Estates and their creditors face real, significant harm if the Motion is denied in contrast to the lack of harm to LCPI if the Motion is granted.  The Trustee has indentified multiple potential stalking horse buyers for the Properties offering at least $40 million in cash.  If the Motion is denied, the prospective buyers and their significant all-cash offers will be lost.  The Trustee will be forced to continue to the hold the Properties and request use of cash collateral to preserve and maintain the Properties over LCPI's objection.  The longer the Trustee remains in possession of the Properties, which consist of more than 5,000 acres, the greater the holding costs to prevent vandalism, remain in compliance with municipal regulations, and otherwise prevent health and safety issues from arising.  It is for all these reasons, the Trustee believes that the sale of the Properties for the highest and best price is in the best interests of *all* creditors, including LCPI, as it will reduce the Properties to cash, eliminate holding costs, and will prevent the need to further manage the Properties and to use cash collateral to do so.

21.     LPCI's request for denial of the Motion appears to be nothing more than an attempt to gain a tactical advantage and leverage in the SunCal Master Bankruptcy Cases.  LCPI is attempting to place the Trustee in an unsustainable position.  LCPI is requesting that this Court keep the stay in place to maintain the *status quo*, while also requesting that the California Bankruptcy Court deny the Trustee's use of cash collateral to preserve the value of the Properties in the meantime.  If LCPI is successful in its efforts, it will only be a matter of time before LCPI

is able to obtain stay relief, and any value for the general unsecured creditors of the SunCal Master Bankruptcy Cases will be unfairly lost. The relief requested in the Motion is necessary to enable the Trustee to fully and fairly defend the SunCal Master Estates against the attempts of LCPI to obtain possession of the Properties based on its disputed liens. Moreover, the statute of limitations for the Trustee to commence an avoidance action expires on October 30, 2010, a fact that LCPI has failed to address. Thus, if the Trustee is not granted stay relief to proceed with the estates' avoidance claims against LCPI in the near future, such claims could be barred forever – which will obviously benefit LCPI and be detrimental to the SunCal Master Estates.

22.    LCPI has failed to demonstrate any harm to it if the Motion is granted and it is evident that LCPI is simply trying to delay. There is no reason to believe that granting the Motion will in any way interfere with LCPI's bankruptcy case. LCPI has already demonstrated the ability to actively participate in both cases, and is currently doing so. Moreover, that LCPI may incur costs in opposing the Sale Motion Relief and/or defending the Complaint Claims does not justify denial of the Motion. Such costs are inevitable, and LCPI will continue to incur costs even if the Motion is denied. LCPI will continue to incur costs opposing the use of cash collateral and appealing the California Bankruptcy Court's cash collateral orders, in renewing the LCPI Stay Relief Motions, which must be viewed as inevitable, and in defending the Trustee's objection to LCPI's claims. Moreover, if the Motion is denied and the Trustee is not permitted to liquidate the Properties, the Trustee will have no choice but to use LCPI's putative cash collateral as is necessary to maintain the Properties. The most economical and least costly resolution is to grant the Motion to allow the Properties to be reduced to cash and the parties' disputes to be finally resolved.

23.    In the end, the irreparable harm of losing the prospective buyers, or worse, losing

the Properties, the primary assets of the SunCal Master Estates, without the opportunity to challenge the merits of LCPI's liens and claims and to pursue the SunCal Master Estates' meritorious claims against LCPI, by far outweighs the sole identified harm to LCPI, *i.e.*, the cost of defending the contemplated proceedings.

C.     **LCPI, BY ITS OWN CONDUCT, HAS DEMONSTRATED THAT PROCEEDING IN THE SUNCAL MASTER BANKRUPTCY CASES WILL NOT INTERFERE WITH THE LEHMAN BANKRUPTCY CASES**

24.     Any connection between the contemplated proceedings in the SunCal Master Bankruptcy Cases and the Lehman Bankruptcy Cases is minimal.  In an attempt to tip this factor in LCPI's favor, both LCPI and the Lehman Committee assert that LCPI is the "economic owner" of the Properties.  While creative, this term is meaningless.  In reality, LCPI is a creditor, nothing more, and LCPI's claims are disputed and undersecured.  Moreover, the validity and priority of LCPI's liens against the Properties are in dispute.  LCPI makes no allegations and provides no evidence that the claims and liens it has asserted in the SunCal Master Bankruptcy Cases are significant assets of its bankruptcy case.  Besides, if LCPI truly holds valid senior liens, then LCPI will likely be paid almost the entirety of the sale proceeds.  LCPI and its creditors will ultimately receive what they are entitled to receive.

25.     LCPI has failed to provide any evidence or make any substantive argument that the requested relief will interfere with the administration of the Lehman Bankruptcy Cases.  Rather, LCPI offers nothing more than conclusory statements that inference will occur.  However, the fact remains that LCPI is already, and will continue to be, an active participant in the SunCal Master Bankruptcy Cases.  While LCPI was preparing its opposition to this Motion it was also commencing an appeal of the California Bankruptcy Court's order authorizing use of cash collateral.  LCPI clearly has the resources and counsel to actively participate in both cases, a fact it has demonstrated by its own actions.  It cannot seriously be disputed that LCPI's

continued involvement in the SunCal Master Bankruptcy Cases will have little to no impact on LCPI's administration of its own bankruptcy case or, at least, no more than LCPI's active involvement has already caused or will continue to cause in the future.

**D.**     **THE INTERESTS OF LCPI AND ITS CREDITORS WILL NOT BE PREJUDICED**

26.     Granting the Motion will not prejudice LCPI's creditors.  The validity, priority, and other issues related to LCPI's liens and claims in the SunCal Master Bankruptcy Cases, must be resolved.  LCPI will have the right to oppose the Trustee's sale motion, and the California Bankruptcy Court will determine whether the proposed sale and the related relief are consistent with the applicable requirements of the Bankruptcy Code.  To the extent the Trustee succeeds on the Sale Motion Relief and the Complaint Claims, it is not the lifting of the stay that is harming LCPI and its creditors, but LCPI's own egregious pre-petition conduct.

**IV.**
**THE COURT SHOULD NOT DEFER RULING ON THE MOTION
UNTIL THE NINTH CIRCUIT COURT OF APPEAL IS DECIDED**

27.     There is no benefit to be gained by deferring a ruling on the Motion until the Ninth Circuit Appeal is decided.  Due to the divergent issues involved, the Court will have to decide the Motion on its merits regardless of the ruling on the Ninth Circuit Appeal.  LCPI and the Lehman Committee fail to identify how waiting for the Ninth Circuit to rule will save costs, avoid inconsistent rulings, or how ruling on this Motion will moot the Ninth Circuit Appeal. LCPI and the Lehman Committee offer no more than conclusory statements.  Moreover, the SunCal Master Estates will be prejudiced by the delay for the same reasons they will be harmed and prejudiced if the Motion was denied.

**V.**

**ALTERNATIVELY, THE TRUSTEE REQUESTS THAT
THE COURT GRANT THE MOTION TO ALLOW THE
TRUSTEE TO PROCEED WITH THE SALE MOTION RELIEF, AND
<u>CONTINUE THE HEARING WITH RESPECT TO THE COMPLAINT CLAIMS</u>**

28.    At a minimum, the Trustee requests that the Court lift the automatic stay to allow the Trustee to proceed with the Sale Motion Relief.  However, the Court should not limit the Trustee's ability to sell the Properties as requested by LCPI or the Lehman Committee.  First, as discussed at length herein and in the Motion, the Trustee and LCPI have already tried to negotiate a settlement.  Conditioning the Trustee's ability to file the Motion on further settlement discussions is pointless and will only lead to further litigation.  Second, whether LCPI is entitled to credit bid for the Properties or whether the Trustee is entitled to a surcharge pursuant to 11 U.S.C. § 506(c) are issues to be resolved by the California Bankruptcy Court in connection with the sale motion.

29.    The Trustee should not be required to re-file the Motion once an asset purchase agreement is signed, as requested by the Lehman Committee.  The Trustee expects to have a signed asset purchase agreement by the time of the hearing on the Motion.  Requiring the Trustee to re-file the Motion would be a waste of the time and resources of this Court and the parties.  The granting of the Motion, at this stage, is not premature.  The Trustee is extremely close to choosing its stalking horse buyer, executing an asset purchase agreement, and completing his sale motion.  Granting the Motion will only facilitate this process.

30.    As discussed above, the deadline for the Trustee to commence any avoidance action against LCPI is fast approaching, and will expire on October 30, 2010.  Thus, the Trustee requests that if the Court continues the hearing on the Motion as to the Trustee's request to pursue the Complaint Claims while allowing the Properties to be sold now, then any extension should be based upon LCPI's consent to the tolling the statute of limitations so there is no

prejudice to the Trustee.

## VI.
## CONCLUSION

For all of the foregoing reasons, the Trustee requests that the Court grant the Motion and

such other and further relief as is just and proper.

Dated: July 12, 2010             Respectfully submitted,

Robert S. Marticello
California State Bar No.: 161812
WEILAND, GOLDEN, SMILEY,
WANG EKVALL & STROK, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California  92626
Telephone: (714) 966-1000
Facsimile: (714) 966-1000
Attorneys for Alfred H. Siegel,
Chapter 11 Trustee

and

SILLS CUMMIS & GROSS P.C.
One Rockefeller Plaza
New York, New York 10020
Telephone: 212-643-6982
Facsimile: 212-643-6500

Local Counsel for Alfred H. Siegel,
Chapter 11 Trustee

By:    /s/ Andrew H. Sherman          
Andrew H. Sherman