KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
Gregory A. Horowitz
Amy Caton

Attorneys for Bank of New York Mellon Trust
Company, N.A. as Indenture Trustee

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――― X
In re:                                                  )
                                                        )
LEHMAN BROTHERS HOLDINGS INC., et al.                   )   Chapter 11
                                                        )
                                                        )   Case No. 08-13555
Debtors.                                                )
                                                        )   (Jointly Administered)
                                                        )
―――――――――――――――――――――――― X

**RESPONSE OF THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS INDENTURE TRUSTEE, TO THE PRELIMINARY OBJECTION OF THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS TO THE DEBTORS' JOINT CHAPTER 11 PLAN AND DEBTORS' DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND REQUEST FOR STATUS CONFERENCE**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

       The Bank of New York Mellon Trust Company, N.A. (formerly known as The Bank of New York Trust Company, N.A.) as indenture trustee ("BNYMTC" or the "Trustee") for the holders of the Main Street Bonds (as defined below), hereby submits this response (the "Response") to the Preliminary Objection of the Ad Hoc Group of Lehman Brothers Creditors (the "White & Case Group") to the Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. ("LBHI") and its Affiliated Debtors and to the Debtors' Disclosure Statement for Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of

the Bankruptcy Code and Request for Status Conference [Docket No. 9905] (the "White & Case Objection") filed with this Court on June 29, 2010.[1] In support of the Response, the Trustee respectfully states as follows:

**RELEVANT BACKGROUND**

1. The Trustee indirectly holds over $700 million in claims against Lehman Brothers Commodity Services ("LBCS"), Lehman's former commodities trading subsidiary, to repay public municipal revenue bonds (the "Main Street Bonds"), as well as a separate guarantee claim against LBHI.[2] As of the Petition Date, over the course of the three-plus years LBCS had been in existence, LBCS had been profitable, according to unchallenged financial information from the Debtors. *See* Statement of Financial Affairs of Lehman Brothers Commodity Services Inc. (Case No. 08-13885 (JMP)) at 10 [Docket No. 3091]. The Trustee's claims are the largest individual claims against LBCS.

2. The Trustee has been actively involved in these cases as a creditor of LBCS and a long-standing proponent of increased access to critical information in the Debtors' proceedings.[3]

3. The official committee of unsecured creditors (the "Committee") currently consists of the following members: Wilmington Trust Company, as Indenture Trustee, The Bank of New York Mellon ("BNYM"), as indenture trustee for certain subordinated bonds,[4] Mizuho

---

[1] Capitalized terms used but not defined herein shall take the meaning ascribed thereto in the White & Case Objection.

[2] The Main Street Bonds are more fully described in the Trustee's Limited Objection to the Debtors Motion for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form [Docket No. 3865].

[3] *See e.g.,* Trustee's Limited Obj. to Debtors' Mot'n for Second Extension of Exclusivity filed July 10, 2009 [Docket No. 4331]; Trustee's Mot'n for Rule 2004 Discovery filed Nov. 26, 2008 [Docket No. 1766]; Trustee's Limited Obj. to the Sale of Eagle Energy filed Oct. 14, 2008 [Docket No. 914].

[4] BNYM is serving on the Committee in its capacity as the indenture trustee for various series of LBHI bonds. BNYM and BNYMTC are separate entities. The BNYM individuals serving on the Committee are represented

Corporate Bank, Ltd., as Agent, Metlife, The Vanguard Group Inc., U.S. Bank. N.A., and Elliott Management Corp. Based upon information and belief, the Trustee understands that most or all of the members of the Committee hold, or represent creditors holding, substantial LBHI claims. The Trustee is not aware of any Committee members whose holdings are weighted towards their LBCS claims.

4. On April 14, 2010, the Debtors filed a revised Chapter 11 Plan (the "Plan") and Disclosure Statement [Docket Nos. 8330, 8332]. The Debtors have not yet filed a motion seeking to approve the Disclosure Statement, but have been engaging in ongoing discussions with parties-in-interest, including the Trustee, regarding the proposed Plan and discovery-related issues.

5. As of the filing of the revised Plan and Disclosure Statement, the Debtors estimated LBCS's assets to total $1.643 billion. In the Disclosure Statement, the Debtors estimated that unsecured claims against LBCS total approximately $4.134 billion (instead of filed claims of $3.645 billion), for which there is an anticipated recovery of 26.8%.[5] However, the Debtors' estimate of recoveries against LBCS includes $1.861 billion of currently unsubstantiated intercompany debt claims against LBCS. This greatly dilutes value to the Main Street Bondholders and LBCS's creditor body as a whole. LBCS estimated creditor recoveries are also negatively impacted by the fact that the Debtors ascribe *no* value to the approximately $1.8 billion in receivables due to LBCS from Lehman Brothers, Inc., the failed broker/dealer

---

by separate counsel, and are different from those individuals that are acting in a representative capacity for BNYMTC as indenture trustee to the Main Street Bonds.

[5] The Trustee has a separate claim against LBHI for the guaranty of the LBCS obligations in Class 7B of the Plan for which the Debtors anticipate a recovery of 14.7%.

("LBI") and other non-Debtor affiliates, including substantial intercompany receivables that, according to the Disclosure Statement, arose after September 15, 2008.

6. It is clear that accounting of intercompany payables and receivables drives creditor recoveries at LBCS. For example, if recoveries against LBI generate $500 million, and the LBHI intercompany claim is reduced by $500 million, this could drastically improve recoveries for LBCS creditors, in this illustration by up to 38 cents (or 43%). Thus, understanding the background of intercompany transactions between LBCS and its affiliates is critical to LBCS creditors in assessing the "settlements" proposed in the current Plan.

7. On June 29, 2010, the White & Case Group filed the White & Case Objection seeking for the Court to establish a "comprehensive plan for conducting discovery with respect to Inter-Debtor Issues" as well as a status conference on the White & Case Group's suggested procedures order. (White & Case Obj. at ¶¶ 12-13.) The White & Case Group argues that the proposed discovery procedures "are based in large part on Judge Gerber's scheduling order of inter-debtor disputes and related confirmation issues in *Adelphia Communications*." (Id. at ¶ 13.) However, the White & Case Group makes no mention of the increased costs to the *Adelphia* estate, both in time and ultimate creditor recoveries, which the protocol represented. As the Court is overseeing what is currently the largest bankruptcy case in history, it should be wary of implementing a similar order.[6]

---

[6] Judge Gerber later expressed concern over both the increased costs to the estate as well as the unforeseen ramifications his rulings on interdebtor issues in the litigation context later had on creditor recoveries. *See In re Adelphia Commc'ns. Corp.*, 368 B.R. 140, 161, 162 n.35 (Bankr. S.D.N.Y. 2007) (noting that this unforeseen result "underscore[d] the difference between a settlement, where the parties can fine tune their deal to meet their needs and concerns, and a litigated controversy, where a court must address the dispute before it.").

## RESPONSE

8. While the White & Case Objection is vague with respect to what it believes the valid basis is for substantively consolidating each of the Lehman Brothers estates, any arguments that the White & Case Group may have, or may hope to develop through discovery, with respect to the LBCS estate are, to the Trustee's knowledge, meritless. Certainly with respect to the LBCS estate, these arguments appear to be made on behalf of a few individual LBHI bondholders that are merely grabbing for a higher recovery for LBHI creditors at the expense of subsidiary creditors. As a preliminary matter, LBCS cannot be appropriately consolidated with the other Debtor estates due to a variety of factors, including:

- The Examiner's report makes clear that the books and records for LBCS and other Lehman corporate entities are not hopelessly intertwined. To the contrary, the Examiner was able to access data in Lehman's Global Cash and Collateral Management system ("GCCM"), which included significant safeguards to ensure accuracy including bank account reconciliation platforms. (*See* Examiner's Report [Docket No. 7531] at 1560-62). In fact, the systems were sufficiently reliable for the Examiner to be able to make good faith estimates of LBHI's preference liability on account of intercompany transfers through the cash management system during the 30 days prior to LBCS's bankruptcy filing. (*See* Examiner's Report at 1718-22 and Appendix 22 at 25-30.)

- Additionally, the Examiner stated in his report that LBCS was "borderline solvent" as of May 31, 2008 (and in fact borderline solvent on all examined dates from September 2007-August 2008) (Examiner's Report at 1592, 1622 *et seq.*) As an essentially solvent entity, the LBCS estate, if consolidated with the other Debtors, would go from paying its unsecured creditors a range of $0.415 (the Debtors' current Plan estimate for the Main Street Bonds on account of their claims against LBCS and LBHI) to what could be a par recovery, to substantially less than that, for every dollar of claim. Indeed, the only way LBCS could not be solvent, and its creditors could properly receive less than full recovery, is if its assets somehow lost value.

- The Main Street Bonds were issued to monetize LBCS's long-term contracts for the supply of natural gas to certain municipalities. Main Street Natural Gas, Inc. ("Main Street"), the entity that issued the Main Street Bonds, intentionally contracted with LBCS, and no other Lehman

5

- Brothers entity, to provide natural gas to these municipalities—a capacity for natural gas provision which LBHI and the other Debtors could not provide and upon which Main Street, the Trustee, and the Main Street Bondholders explicitly relied.

- LBHI used its separate corporate form to achieve the financing of the Main Street Bonds by providing a separate guaranty of the Main Street Bonds to the Main Street Bondholders, a separate corporate structure and guaranty upon which Main Street, the Trustee, and the Main Street Bondholders explicitly relied.

- It is unlikely, if not impossible, that the White & Case Group can assert that it *actually* and *reasonably* relied on the Debtors' supposed unity as a single entity to support a claim of substantive consolidation. *See In re Owens Corning*, 419 F.3d 195, 212 (3d Cir. 2005). Even if such a claim were alleged, it could be defeated by the Trustee's and the Main Street Bondholders' (presumably in addition to many other creditors') proof of their adverse treatment by substantive consolidation and actual reliance on the Debtors' separate existence. *Id*.

It appears to the Trustee that the White & Case Group's attempts to obtain discovery to support its arguments that the LBCS estate should be substantively consolidated would be merely a fishing expedition with no intention of bringing about a consensual resolution to the Debtors' proposed Plan.

9. However, the Trustee agrees with the White & Case Objection to a limited extent. At present, creditors, like holders of the Main Street Bonds, have inadequate information to determine whether what appear to be substantial gifts to LBHI creditors from the LBCS estate in exchange for settling substantive consolidation litigation is a reasonable compromise. Without additional information, it appears that the Plan gives too much value to LBHI creditors at the expense of LBCS creditors to reward them for substantive consolidation claims that LBHI creditors cannot possibly win. In addition, the Debtors have not yet substantiated whether certain intercompany claims against LBCS and its subsidiaries qualify as debt claims.

10. The Trustee has requested information on these points on several occasions. However, while the Trustee appreciates that Debtor representatives have been willing to talk to and meet with the Trustee, the Debtors have refused to share necessary, relevant information with the Trustee because they claim this information is not public. To date, the Debtors have been unwilling to sign a confidentiality agreement with the Trustee's representatives, presumably not because they are trying to protect and maintain confidentiality for an ongoing business, but because the Debtors want to maintain control over information and do not want to open the floodgates for individual creditors making information requests.

11. While the Trustee understands and respects the need for the Debtors to maintain control over the plan process, this must be balanced with the valid needs of appropriate creditor representatives to obtain information that would allow them to adequately assess the Plan. The Trustee is not seeking this information for trading or any other purposes; it is seeking this information in order to have adequate time to digest and analyze it so that it can make a recommendation to the Main Street Bondholders on whether the Plan constitutes a fair compromise of their claims against LBCS and, if not, to engage in settlement discussions with the Debtors to try to craft a compromise on these issues. But given the dearth of information it has received, the Trustee is unable to analyze or recommend any meaningful compromise on the Main Street Bond claims. It is difficult to see a way forward for these cases, and a plan and disclosure statement ever being confirmed, until some subset of appropriate creditor representatives for debtors like LBCS begin to receive information that will allow them to assess their claims and proposed plan treatment.

12. However, the Trustee does not endorse the White & Case Group's premature call for an intensive, trial-oriented protocol as the appropriate next step in these proceedings. As the

White & Case Group well knows, the discovery and trial schedules in the *Adelphia* proceedings that they cite to as a model broke down in the second phase out of a series of six trial phases, after approximately twenty trial days. *See Adelphia* at 162. The extreme adversarial nature of the *Adelphia* proceedings, which moved straight from discovery and information gathering into depositions, expert reports and trial dates, may have contributed to the several months of trial, forced mediation and resumed substantive consolidation and confirmation hearings that resulted in months, if not years, in delay in creditors receiving recoveries. The Trustee does not believe it is appropriate at this time to embark down a road that looks like the *Adelphia* protocol.

## CONCLUSION

For the reasons set forth herein, the Trustee supports the White & Case Objection solely to the extent that it requests the Debtors set up a protocol to begin providing meaningful data to appropriate representatives of creditor groups, such as the Trustee, by establishing a data room and other appropriate means for providing information to certain creditor group representatives. The Trustee believes that the provision of this information will help appropriate creditor representatives analyze their proposed treatment under the Plan and engage in meaningful dialogue with the Debtors about resolutions of any of their issues.  However, the Trustee opposes the White & Case Objection to the extent that it seeks to establish any other discovery or trial protocol at this time as premature, and requests that the Court decline to approve any such procedures proposed in Exhibit A to the White & Case Objection.

Dated: New York, New York
       July 15, 2010

>                    KRAMER LEVIN NAFTALIS & FRANKEL LLP
>
>                       /s/ Amy Caton
>                    Gregory A. Horowitz
>                    Amy Caton
>                    1177 Avenue of the Americas
>                    New York, NY 10036
>                    (212) 715-9100
>
>                    Attorneys for Bank of New York Mellon Trust
>                    Company, N.A. as Indenture Trustee

KL2 2658177.4