The Aggregate Limit of Liability shall not be increased or reinstated by any recovery made and applied in accordance with subsection (a), (b), and (c) of Section 7. In the event that a loss of Property is settled by the Underwriter through the use of a lost instrument bond, such loss shall not reduce the Aggregate Limit of Liability.

### Single Loss Limit of Liability

Subject to the Aggregate Limit of Liability, the Underwriter's liability for each Single Loss shall not exceed the applicable Single Loss Limit of Liability shown in Item 4 of the Declarations. If a Single Loss is covered under more than one Insuring Agreement or coverage, the maximum payable shall not exceed the largest applicable Single Loss Limit of Liability.

### Single Loss Defined

Single Loss means all covered loss, including court costs and attorneys' fees incurred by the Underwriter under General Agreement (F), resulting from:

(a)     any one act or series of related acts of burglary, robbery, or attempt thereof in which no Employee is implicated, or

(b)     any one act or series of related unintentional or negligent acts or omissions on the part of any person (whether an Employee or not) resulting in damage to or destruction or misplacement of Property, or

(c)     all acts or omissions other than those specified in (a) and (b) preceding, caused by any person (whether an Employee or not) or in which such person is implicated, or

(d)     any one casualty or event not specified in (a), (b), or (c) preceding.

### NOTICE/PROOF - LEGAL PROCEEDINGS AGAINST UNDERWRITER

Section 5.

(a)     At the earliest practicable moment, not to exceed ninety (90) days, after discovery of loss by any individual assigned to the Risk and Insurance Management Department of Vice President level or above, the Assured shall give the Underwriter notice thereof.

(b)     Within six (6) months after such discovery, the Assured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars.

(c)     Lost Certificated Securities listed in a proof of loss shall be identified by certificate or bond numbers if such securities were issued therewith.

(d)     Legal proceedings for the recovery of any loss hereunder shall not be brought prior to the expiration of ninety (90) days after the original proof of loss is filed with the Underwriter or after the expiration of twenty-four (24) months from the discovery of such loss.

(e)     If any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to equal the minimum period of limitation provided by such law.

21

CONFIDENTIAL

(f)      This bond affords coverage only in favor of the Assured.  No suit, action, or legal proceedings shall be brought hereunder by any one other than the Named of Assured.

VALUATION

Section 6:  Any loss of money, or loss payable in money, shall be paid, at the option of the Assured, in the money of the country in which the loss was sustained on in the United States of America dollar equivalent thereof determined at the rate of exchange on the day preceding the discovery of such loss.

<u>Securities</u>

The value of any securities for the loss of which claim shall be made hereunder, shall be determined by the average market value of such securities on the day preceding the discovery of such loss. However, if prior to the settlement of the claim by the Underwriter, the Assured shall be compelled by the demands of a third party or by market rules to purchase equivalent securities, and gives written notification of this to the Underwriter, the cost incurred by the Assured shall be taken as the value of those securities. In case of a loss of subscription, conversion, or redemption privileges through the misplacement or loss of securities, the amount of such loss shall be the value of such privileges immediately preceding the expiration thereof.  If such securities cannot be replaced or have no quoted market value, or if such privileges have no quoted market value, their value shall be determined by agreement or arbitration.

If the applicable coverage of this bond is subject to a Deductible Amount and/or is not sufficient in amount to indemnify the Assured in full for the loss of securities for which claim is made hereunder, the liability of the Underwriter under this bond is limited to the payment for, or the duplication of, so much of such securities as has a value equal to the amount of such applicable coverage.

<u>Books of Account and Other Records</u>

In case of loss of or damage to, any books of account or other records used by the Assured in its business, the Underwriter shall be liable under this bond only if such books or records are actually reproduced and then for not more than the cost of the blank books, blank pages, or other materials plus the cost of labor for the actual transcription or copying of data which shall have been furnished by the Assured in order to reproduce such books and other records.

<u>Property other than Money, Securities, or Records</u>

In case of loss of, or damage to, any Property other than Money, securities, books of account or other records, the Underwriter shall not be liable for more than the actual cash value of such Property.  The Underwriter may, at its election, pay the actual cash value of, or replace or repair such property. Disagreement between the Underwriter and the Assured as to the cash value or as to the adequacy of repair or replacement shall be resolved by arbitration.

<u>Set-Off</u>

Any loss covered under this bond shall be reduced by a set-off consisting of any amount owed to the Employee causing the loss if such loss is covered under Insuring Agreement (A) (1).

CONFIDENTIAL

## ASSIGNMENT

Section 7.

    (a)    In the event of payment under this bond, the Assured shall deliver, if so requested by the Underwriter, an assignment of such of the Assured's rights, title, and interest and causes of action as it has against any person or entity to the extent of the loss payment.

    (b)    In the event of payment under this bond, the Underwriter shall be subrogated to all of the Assured's rights of recovery therefor against any person or entity to the extent of such payment.

    (c)    Recoveries, whether effected by the Underwriter or by the Assured, shall be applied net of the expense of such recovery first to the satisfaction of the Assured's loss which would otherwise have been paid but for the fact that it is in excess of either the Single or Aggregate Limit of Liability, secondly, to the Underwriter as reimbursement of amounts paid in settlement of the Assured's claim; and thirdly, to the Assured in satisfaction of any Deductible Amount. Recovery on account of loss of securities as set forth in the second paragraph of Section 6, or any recovery from reinsurance and/or indemnity of the Underwriter shall not be deemed a recovery as used herein.

    (d)    Upon the Underwriter's request and at reasonable times and places designated by the Underwriter the Assured shall

        (1)    submit to examination by the Underwriter and subscribe to the same under oath; and

        (2)    produce for the Underwriter's examination all pertinent records; and

        (3)    cooperate with the Underwriter in all matters pertaining to the loss.

    (e)    The Assured shall execute all papers and render assistance to secure to the Underwriter the rights and causes of action provided for herein. The Assured shall do nothing after discovery of loss to prejudice such rights or causes of action

    (f)    The attached bond does not afford coverage in favor of any Disclosed Agent or Servicing Contractor and in the event of a payment under this bond, the Underwriter shall be subrogated to the Assured's rights of recovery, as described in Section 7, preceding, against any Disclosed Agent or Servicing Contractor.

## LIMIT OF LIABILITY UNDER THIS BOND AND PRIOR INSURANCE

Section 8.  With respect to any loss set forth in subsection (c) of Section 4 of this bond which is recoverable or recovered in whole or in part under any other bonds or policies issued by the Underwriter to the Assured or to any predecessor in interest of the Assured and terminated or canceled or allowed to expire and in which the period of discovery has not expired at the time any such loss thereunder is discovered, the total liability of the Underwriter under this bond and under such other bonds or policies shall not exceed, in the aggregate, the amount carried hereunder on such loss or the amount available to the Assured under such other bonds or policies, as limited by the terms and conditions thereof, for any such loss if the latter amount be the larger.

CONFIDENTIAL

If the coverage of this bond supersedes in whole or in part the coverage of any other bond or policy of insurance issued by an Insurer other than the Underwriter and terminated, canceled, or allowed to expire, the Underwriter, with respect to any loss sustained prior to such termination, cancellation, or expiration, and discovered within the period permitted under such other bond or policy for the discovery of loss thereunder, shall be liable under this bond only for that part of such loss covered by this bond as is in excess of the amount recoverable or recovered on account of such loss under such other bond or policy, anything to the contrary in such other bond or policy notwithstanding.

OTHER INSURANCE OR INDEMNITY

Section 9.  Coverage afforded hereunder shall apply only as excess over any valid and collectible insurance or indemnity obtained by the Assured, or by another entity on Property subject to exclusion 2.2(g) or by a Transportation Underwriter, or by another entity on whose premises the loss occurred or which employed the person causing the loss or the messenger conveying the Property involved.

OWNERSHIP

Section 10. This bond shall apply to loss of Property (1) owned by the Assured, (2) held by the Assured in any capacity, or (3) for which the Assured is legally liable. This bond shall be for sole use and benefit of the Assured named in the Declarations.

DEDUCTIBLE AMOUNT

Section 11.  The Underwriter shall be liable hereunder only for the amount by which any Single Loss, as defined in Section 4, exceeds the Single Loss Deductible amount of the Insuring Agreement or coverage applicable and is also subject to the Aggregate Limit of Liability and the applicable Single Loss Limit of Liability.

The Assured shall, in the time and in the manner prescribed in this bond, give the Underwriter notice of any loss of the kind covered by the terms of this bond, whether or not the Underwriter is liable therefor, and upon the request of the Underwriter, shall file with it a brief statement giving the particulars concerning such loss.

TERMINATION OR CANCELLATION

Section 12. This bond terminates as an entirety upon occurrence of any of the following:

(a)    immediately upon the taking over of the Assured by a receiver or other liquidator or by State or Federal officials, or

(b)    immediately upon the taking over of the Assured by another institution, or

(c)    immediately upon exhaustion of the Aggregate Limit of Liability, or

(d)    immediately upon expiration of the Bond Period as set forth in Item 2 of the Declarations.

24

CONFIDENTIAL

This bond terminates as to any Employee or any partner, officer, or employee of any Processor as soon as the Risk and Insurance Management Department of the Assured not in collusion with such person, learns of any dishonest or fraudulent act committed by such person at any time, whether in the employment of the Assured or otherwise and whether or not of the type covered under this bond, against the Assured or any other person or entity, without prejudice to the loss of any Property then in transit in the custody of such person, or (b) thirty (30) days after the receipt by the Assured of a written notice from the Underwriter of its desire to cancel this bond as to such person.

Termination of this bond as to any Assured terminates liability for any loss sustained by such Assured which is discovered after the effective date of such termination.

This bond terminates as to any Disclosed Agent or Servicing Contractor:

1. As soon as the Risk and Insurance Management Department of the Assured not in collusion with such Disclosed Agent, or Servicing Contractor, whether while under contract to the Assured or otherwise and whether or not of the type covered under this bond, against the Assured or any other person or entity, or

2. At the time specified in a written notice from the Underwriter to the Assured provided that the date of such termination shall be not less than thirty (30) days after the receipt of such notice by the Assured.

It is agreed that with respect to any Employee as to whom this bond or policy is terminated or cancelled as a result of the Assured learning of a dishonest or fraudulent act, the Underwriter agrees to reinstate such Employee without specific submission or approval if:

1. the Employee's Department recommends that the Employee be reinstated, and

2. such recommendation is approved by a Senior Representative of the Treasury Department, Senior Representative from the Office of the General Counsel and Senior Representative from the Office of the General Counsel and Senior Representative of the Human Resources Department of the Assured, and

3. the dishonest or fraudulent act(s) took place more than three (3) years prior to the date of knowledge of such act(s) by the Assured.

The Assured agrees to keep full written records concerning the above, to be available to the Underwriter upon request with all approvals signed and dated by the approving persons concerned.

However, the above provision shall not apply if such dishonest or fraudulent act(s) occurred in the course of, or in connection with, the Employee's current or prior employment with the Assured.

Notwithstanding anything in the foregoing to the contrary, the Underwriter agrees that this bond shall continue to apply in respect of those Employees for whom the Assured have, prior to the inception of this bond or policy, received special agreement from any prior bond Insurer for such Employees to be covered under such prior bond.



CONFIDENTIAL

## EMPLOYEE BENEFIT PLANS

Section 13. If any of the Assured's employee benefit plans are named as Assureds in the Declarations, it is agreed that, except for the Single Loss Limit of Liability required by Section 412 of the Employee Retirement Income Security Act of 1974 (ERISA), Insuring Agreement (A1), EMPLOYEE FIDELITY, provides Bonding protection to such plans as required thereunder.

## CENTRAL HANDLING OF SECURITIES

Section 14.  It is agreed that:

1. Those premises of depositories used by the Assured shall be deemed to be premises of the Assured but only as respects coverage of Certificated or Uncertificated Securities.

2. Property held by such depository shall be deemed to be property as defined in this bond to the extent of the Assured's interest therein as effected by the making of appropriate entries on the books and records of such depository.

26



CONFIDENTIAL

Rider No. 1
Bond No. QA529399 - Section I (a)

Name of Assured:  LEHMAN BROTHERS HOLDINGS INC.

It is agreed that:

1.  At the written request of the named Assured, any payment in satisfaction of loss covered by said bond involving Money or other Property in which the Government National Mortgage Association and the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation has an interest shall be paid by an instrument issued to that organization and the named Assured as joint loss-payees, subject to the following conditions and limitations:

    a.  The attached bond is for the sole use and benefit of the named Assured as expressed herein. The organization named above shall not be considered as an Assured under the bond, nor shall it otherwise have any rights or benefits under said bond.

    b.  Notwithstanding any payment made under the terms of this rider or the execution of more than one of such similar rider, the amount paid for any one loss occurrence or otherwise in accordance with the terms of this bond shall not exceed the aggregate limits of liability as set forth in Item 3 of the Declarations Page.

    c.  Nothing herein is intended to alter the terms, conditions and limitations of the bond.

2.  Should this bond be cancelled, reduced, non-renewed, or restrictively modified by the Underwriter, the Underwriter will endeavor to give thirty (30) days advance notice to the organization named above, but failure to do so shall not impair or delay the effectiveness of any such cancellation, reduction, non-renewal or restrictive modification, nor shall the Underwriter be held liable in any way.

3.  Should this bond be cancelled or reduced at the request of the Assured, the Underwriter will endeavor to notify the organization named above of such cancellation or reduction within 10 business days after receipt of such request, but failure to do so shall not impair or delay the effectiveness of such cancellation or reduction, nor shall the Underwriter be held liable in any way.

4.  This Rider shall become effective 12:01 a.m. standard time on January 31, 1999.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.



CONFIDENTIAL

Rider No. 2
Bond No.  QA529399 - Section I (a)

Name of Assured:   LEHMAN BROTHERS HOLDINGS INC.

It is agreed that that this bond is amended by adding to Section 12., TERMINATION OR CANCELLATION, the following:

"The Underwriter will mark its records to indicate that the New York Stock Exchange is to be notified promptly concerning termination, cancellation or substantial modification of this bond or as to any Partner or Employee, whether such termination, cancellation or substantial modification is effected by notice from the Assured or by the Underwriter.  The Underwriter will use its best efforts to so notify the New York Stock Exchange, but failure to so notify shall not impair or delay the effectiveness of any such termination, cancellation or modification.

This Rider applies to loss discovered after 12:01 a.m. on January 31, 1999.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.



CONFIDENTIAL

Rider No. 3
Bond No. QA529399 - Section I (a)

Name of Assured:    LEHMAN BROTHERS HOLDINGS INC.

It is agreed that:

1. The attached bond is amended in the event of loss covered under the Underwriter's Electronic & Computer Crime Policy, Policy No. QA529399 Section 2 issued to LEHMAN BROTHERS HOLDINGS INC., the Aggregate Limit of Liability under this bond shall be reduced by any payment under Policy No. QA529399 Section 2 and only the remainder, if any, shall be applicable to such loss under this bond.

2. This Rider applies to loss discovered after 12:01 a.m. on January 31, 1999.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.



29

CONFIDENTIAL

Rider No. 4
Bond No. QA529399 - Section I (a)

Name of Assured:    LEHMAN BROTHERS HOLDINGS INC.

It is agreed that the Name of Assured as shown on the Declarations will also include PANAGORA ASSET
MANAGEMENT, INC. and PANAGORA ASSET MANAGEMENT LTD.

This Rider applies to loss discovered after 12:01 a.m. on January 31, 1999.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.

30

CONFIDENTIAL

Rider No. 5
Bond No. QA529399 - Section I (a)

Name of Assured:    LEHMAN BROTHERS HOLDINGS INC.

It is agreed that:

1.    The Name of Assured in the Declarations is amended to read as follows:

"LEHMAN BROTHERS HOLDINGS INC. and any subsidiary or management controlled entity now existing or hereinafter created or acquired including all Employee Benefit, Mutual Funds, Welfare or Pension Plans sponsored by the Assured."

2.    Coverage shall be provided for these joint venture companies, limited liability companies, partnerships or other entities which are not under Lehman's management control and in which they do not own more than 50% up to their interest herein. This policy will respond excess of any other insurance available or as primary if no other insurance exists.

This Rider applies to loss discovered after 12:01 a.m. on January 31, 1999.

ALL OTHER TERMS AND CONDITIONS ON THIS BOND REMAIN UNCHANGED.



31

CONFIDENTIAL

Rider No. 6
Bond No. QA529399 - Section I (a)

Name of Assured:    LEHMAN BROTHERS HOLDINGS INC.

It is agreed that:

Coverage provided under the Insuring Agreements hereof shall be deemed to include amounts which the
Assured becomes obligated to pay a third party as a direct result of liability imposed by law or assumed
under contract provided such loss otherwise meets the Insuring Agreements, conditions and limitations
hereunder.

It is understood by the Underwriter and the Assured that the addition of this Rider to the bond is not an
admission that such coverage did not already exist under the bond.

This Rider applies to loss discovered after 12:01 a.m. on January 31, 1999

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.



32

CONFIDENTIAL

Rider No. 7 Page 1 of 2
Bond No. QA529399 - Section I (a)

Name of Assured:    LEHMAN BROTHERS HOLDINGS INC.

It is agreed that this bond is amended by deleting GENERAL AGREEMENT F., NOTICE OF LEGAL
PROCEEDINGS AGAINST ASSURED-ELECTION TO DEFEND, in its entirety and substituting the
following:

"F.  COURT COSTS AND ATTORNEYS' FEES

(a)    Collectible Loss

The Underwriter shall indemnify the Assured against court costs and reasonable attorneys' fees
incurred and paid by the Assured in defending any suit or legal proceeding brought against the
Assured to enforce the Assured's liability on account of any loss, claim or damage which results
in a collectible loss under this bond in excess of any Deductible Amount. The mere proceeding
being insufficient to establish coverage hereunder.  Such indemnity shall be a part of the
Aggregate Limit of Liability and the Sub-Limit for the applicable Insuring Agreement(s).

(b)    Calculation of Costs and Fees

(1)    Aggregate Limit or Sub-Limit not Reduced — The following formula is to be applied
solely for the purpose of calculating how court costs and attorneys' fees are to be
prorated when the Aggregate Limit of Liability or a Sub-Limit has not been reduced:

If the amount of the Assured's liability is greater than the amount recoverable under
this bond, or if a Deductible Amount is applicable, or both, the liability of the
Underwriter under this General Agreement F is limited to the proportion of court costs
and attorneys' fees incurred and paid by the Assured or by the Underwriter that the
amount recoverable under this bond bears to the total of such amount plus the amount
which is not so recoverable.

(2)    Aggregate Limit or Sub-Limit Reduced — The following formula is to be applied solely
for the purpose of calculating how court costs and attorneys' fees are to be prorated
when the Aggregate Limit of Liability or a Sub-Limit has been reduced in part:

If the amount of the Assured's liability is greater than the reduced amount recoverable
under this bond at the time court costs and attorneys' fees are to be calculated, or if a
Deductible Amount is applicable, or both, the liability of the Underwriter under this
General Agreement F is limited to the proportion of court costs and attorneys' fees
incurred and paid by the Assured or by the Underwriter that the reduced amount
recoverable under this bond bears to the total of such amount plus the amount which is
not recoverable.

CONFIDENTIAL

Rider No. 7 Page 2 of 2
Bond No. QA529399 - Section I (a)

Name of Assured:    LEHMAN BROTHERS HOLDINGS INC.

(c)    Reimbursement of Excess Payment

If the Underwriter pays court costs and attorneys' fees in excess of its proportionate share of
such costs and fees, the Assured shall promptly reimburse the Underwriter for such excess.

(d)    Reduction of Aggregate Limit or Sub-Limit

Court costs and attorneys' fees indemnified to the Assured under this General Agreement I
shall be part of and not in addition to the Aggregate Limit of Liability or applicable Sub-Limit,
and payments made under this bond including payments of court costs and attorneys' fees shall
reduce the amount of the Aggregate Limit of Liability or Sub-Limit shown in the Declarations.

(e)    Notice of Legal Proceedings

The Assured shall promptly give notice to the Underwriter of the institution of any suit or legal
proceeding referred to in paragraph (a) above and at the request of the Underwriter shall furnish
it with copies of all pleadings and other papers therein.

(f)    Election to Defend

At the Underwriter's election, the Assured shall permit the Underwriter to conduct the defense
of such suit or legal proceeding, in the Assured's name, through attorneys to be mutually agreed
upon by the Underwriter and the Assured.  In such event, the Assured shall give all reasonable
information and assistance which the Underwriter shall deem necessary to the defense of such
suit or legal proceeding.

(g)    Payment of Court Costs and Attorney's Fees

The Underwriter shall not be liable to indemnify the Assured for court costs and attorney's fees
until after final judgment or settlement of any suit or legal proceeding.

This Rider applies to loss discovered after 12:01 a.m. on January 31, 1999.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.

34

CONFIDENTIAL

Rider No. 8
Bond No. QA529399 - Section I (a)

Name of Assured:    LEHMAN BROTHERS HOLDINGS INC.

It is agreed that this bond is amended by deleting INSURING AGREEMENT (E), SECURITIES, (2), in its entirety and substituting the following:

"(2)    guaranteed in writing or witnessed any signatures, whether for valuable consideration or not and whether or not such guaranteeing or witnessing is ultra vires the Assured, upon any transfers, assignments, bills of sale, power of attorney, Guarantees, endorsements or other obligations upon or in connection with any of the items listed in (a) through (d) above; or purportedly guaranteed in writing or witnessed a signature on any transfer, assignment, bill of sale, power of attorney, Guarantee, endorsement, stock or bond power or any items listed in (a) through (d) above which purported guarantee was effected by the unauthorized use of a stamp or medallion of or belonging to the Assured which was lost, stolen or counterfeited and for which loss the Assured is legally liable, excluding, in any event, loss through Forgery or alteration of, on or in any bills of exchange, checks, drafts, acceptances, certificates of deposit, promissory notes, or other written promises, orders or directions to pay sums certain in money, due bills, money orders, warrants, orders upon public treasuries, Letters of Credit, written instructions or advices directed to the Assured, authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any person or entity but which instructions or advices either bear the forged signature or endorsement or have been altered without the knowledge and consent of such person or entity, withdrawal orders or receipts for the withdrawal of funds or Property or receipts or Certificates of Deposit for Property and bearing the name of the Assured as issuer."

This Rider applies to loss discovered after 12:01 a.m. on January 31, 1999



CONFIDENTIAL

Rider No. 9
Bond No. QA529399 - Section I (a)

Name of Assured:   LEHMAN BROTHERS HOLDINGS INC.

It is agreed that this bond is amended by deleting the last paragraph of GENERAL AGREEMENT B., ADDITIONAL OFFICES OR EMPLOYEES CONSOLIDATION, MERGER OR PURCHASE OF ASSETS NOTICE, in its entirety and substituting the following:

"unless the acquisition or merger occurs with an entity having one thousand (1,000) or less employees; and having assets totaling under 35% of LEHMAN BROTHERS HOLDINGS INC., assets; and having a clean fidelity bond record excess of $2,500,000 for the prior three (3) years."

This Rider applies to loss discovered after 12:01 a.m. on January 31, 1999.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.



36

CONFIDENTIAL

Rider No. 10  Page 1 of 2
Bond No. QA529399 - Section I (a)

Name of Assured:   LEHMAN BROTHERS HOLDINGS INC.

### AUTOMATED TELLER MACHINE RIDER

It is agreed that: **(B)**

1.    Section 2.2 (c) of the attached bond is deleted and replaced by the following:

"(c)   loss involving automated mechanical devices which, on behalf of the Assured, disburse money, accept deposits, cash checks, drafts, or similar written instruments or make credit card loans unless:

(a)   such automated mechanical devices are situated within an office of the Assured which is permanently staffed by an Employee whose duties are those usually assigned to a teller, even though public access to such devices is from outside the confines of such office, or

(b)   such automated mechanical devices are not situated within an office covered under (a) above, but are situated on premises at any other location,

but in no event shall the Underwriter be liable under the attached bond for loss (including loss of Property):

(i)    as a result of damage to such automated mechanical devices situated within any office referred to in (a) above resulting from vandalism or malicious mischief perpetrated from outside such office, or

(ii)   as a result of damage to such automated mechanical devices situated on any premises referred to in (b) above resulting from vandalism or malicious mischief, or

(iii)  as a result of damage to the interior of that portion of a building on any premises referred to in (b) above to which the public has access resulting from vandalism or malicious mischief, or

(iv)  as a result of failure of such automated mechanical devices to function properly, or

(v)   through misplacement or mysterious unexplainable disappearance while such Property is located within any such automated mechanical devices, or

(vi)  to any customer of the Assured or to any representative of such customer while such person is on any premises referred to in (b) above, or



37

CONFIDENTIAL

Rider No. 10  Page 2 of 2
Bond No. QA529399 Section I (a)

Name of Assured:    LEHMAN BROTHERS HOLDINGS INC.

## AUTOMATED TELLER MACHINE RIDER

(vii)  as a result of the use of credit, debit, charge, access, convenience, identification or other cards in gaining access to such automated mechanical devices whether such cards were issued, or purport to have been issued, by the Assured or by anyone other than the Assured,

except when such loss is covered under Insuring Agreement (A1) and (B)".

2.  The liability of the Underwriter is limited to $250,000 for each device location as set forth in (b) above, after the application of the Deductible Amount of $2,500.

Such liability shall be a part of and not in addition to the Single Loss Limit of Liability stated in the Declarations.

3.  This rider shall become effective as of 12.01 a.m. local standard time on January 31, 1999.

SR 5886g



38

CONFIDENTIAL

## SPECIAL LETTER NO.1

Gentlemen:

It is understood and agreed that Underwriters hereon hereby waive their rights to assert any rights or defenses under the bond with respect to SECTION 12., TERMINATION, insofar as it pertains to Christopher Rouland and only for those dishonest acts described in his statement dated December 14, 1995.

It is further understood and agreed that all other terms and conditions of the above captioned bond remain in full force and effect.

This Special Letter No. 1 shall run contemporaneously with this bond, and any extensions, renewals or substitutions thereof.

Special Letter No. 1
Dishonesty Employees

## SPECIAL LETTER NO.2

Gentlemen:

It is understood and agreed that Underwriters hereon hereby waive their right to assert rights or defenses under the bond with respect to SECTION 12., TERMINATION, insofar as it pertains to Mr. Martin Harding and only for those dishonest acts described in the Assured's letter dated March 7, 1997.

It is further understood and agreed that all other terms and conditions of the above captioned bond remain in full force and effect.

This Special Letter No. 2 shall run contemporaneously with this bond, and any extensions, renewals or substitutions thereof.

Special Letter No. 2
Dishonesty Employees



39

CONFIDENTIAL

## SPECIAL LETTER NO. 3

Gentlemen:

It is understood and agreed that Underwriters hereon hereby waive their right to assert any rights or defense under the bond respect to SECTION 12., TERMINATION, insofar as it pertains to Melesia A. Palomo and only for those dishonest acts described in her statement dated May 8, 1998.

It is further understood and agreed that all other terms and conditions of the above captioned bond remain in full force and effect.

This Special Letter No. 3 shall run contemporaneously with this bond, and any extensions, renewals or substitutions thereof.

Special Letter No. 3
Dishonesty Employees

## SPECIAL LETTER NO. 4

Gentlemen:

It is understood and agreed that Underwriters hereon hereby waive their right to assert any rights or defense under the bond respect to SECTION 12., TERMINATION, insofar as it pertains to Scott D. Girouard and only for those dishonest acts described in her statement dated July 29, 1998.

It is further understood and agreed that all other terms and conditions of the above captioned bond remain in full force and effect.

This Special Letter No. 4 shall run contemporaneously with this bond, and any extensions, renewals or substitutions thereof.

Special Letter No. 4
Dishonesty Employees



CONFIDENTIAL

## SPECIAL LETTER NO. 5

Gentlemen:

It is understood and agreed that Underwriters hereon hereby waive their right to assert any rights or defense under the bond respect to SECTION 12., TERMINATION, insofar as it pertains to Kenneth D. Ashby and only for those dishonest acts described in her statement dated August 3, 1998.

It is further understood and agreed that all other terms and conditions of the above captioned bond remain in full force and effect.

This Special Letter No. 5 shall run contemporaneously with this bond, and any extensions, renewals or substitutions thereof.

Special Letter No. 5
Dishonesty Employees

## SPECIAL LETTER NO. 6

Gentlemen:

Please be advised as Assured under Financial Institution Bond No. QA 29399 Section 1 issued by Underwriters hereon, in your favor, that negotiable mortgage notes in which Freddie Mac and/or Fannie Mae, etc., has an interest, while in the custody of a Transportation Underwriter and being transported to the above named entity or to a document custodian in a conveyance other than an armored motor vehicle, shall be deemed covered Property under Section (c) (iii) of the In-Transit Insuring Agreement of such bond.

ALL OTHER TERMS AND CONDITIONS OF THIS BOND REMAIN UNCHANGED.

Freddie Mac/Fannie Mae

41

CONFIDENTIAL

**SPECIAL LETTER NO. 7**

Re:   LEHMAN BROTHERS BOND – TRANSIT COVERAGE

Gentlemen:

This will acknowledge that the outsourced service utilized by the captioned Assured would be covered under the definition of Employee subsection (g) since this messenger service is one hired by the Assured to perform services normally performed by in-house employees.  The coverage for the outsourced messenger service would be identical to any coverage granted to other employees of Lehman Brothers.

I trust this is sufficient for your needs.  If anything is needed from me, please do not hesitate in contacting me.

**SPECIAL LETTER NO. 8**

Gentlemen:

It is understood and agreed that Underwriters hereon hereby waive their right to assert any rights or defense under the bond respect to SECTION 12., TERMINATION, insofar as it pertains to Clarence Mallory and only for those dishonest acts described in his statement dated June 17, 1998.

It is further understood and agreed that all other terms and conditions of the above captioned bond remain in full force and effect.

This Special Letter No. 8 shall run contemporaneously with this bond, and any extensions, renewals or substitutions thereof.

Special Letter No. 8
Dishonesty Employees

42

CONFIDENTIAL

## SPECIAL LETTER NO. 9

Gentlemen:

It is understood and agreed that Underwriters hereon hereby waive their right to assert any rights or defense under the bond respect to SECTION 12., TERMINATION, insofar as it pertains to Catina Forte and only for those dishonest acts described in her statement dated October 28, 1998.

It is further understood and agreed that all other terms and conditions of the above captioned bond remain in full force and effect.

This Special Letter No. 9 shall run contemporaneously with this bond, and any extensions, renewals or substitutions thereof.

Special Letter No. 9
Dishonesty Employees

## SPECIAL LETTER NO. 10

Gentlemen:

It is understood and agreed that Underwriters hereon hereby waive their right to assert any rights or defense under the bond respect to SECTION 12., TERMINATION, insofar as it pertains to Rebecca Cabral and only for those dishonest acts described in her statement sent to Underwriters on June 16, 1999.

It is further understood and agreed that all other terms and conditions of the above captioned bond remain in full force and effect.

This Special Letter No. 10 shall run contemporaneously with this bond, and any extensions, renewals or substitutions thereof.

Special Letter No. 10
Dishonesty Employees



43

CONFIDENTIAL

## SPECIAL LETTER NO. 11

Gentlemen:

It is understood and agreed that Underwriters hereon hereby waive their right to assert any rights or defense under the bond respect to SECTION 12., TERMINATION, insofar as it pertains to Tracy Palomo and only for those dishonest acts described in his statement dated May 7th, 1999.

It is further understood and agreed that all other terms and conditions of the above captioned bond remain in full force and effect.

This Special Letter No. 11 shall run contemporaneously with this bond, and any extensions, renewals or substitutions thereof.

Special Letter No. 11
Dishonesty Employees

## SPECIAL LETTER NO. 12

Gentlemen:

It is understood and agreed that Underwriters hereon hereby waive their right to assert rights or defenses under the bond with respect to SECTION 12., TERMINATION, insofar as it pertains to Michelle Radamski, and only for those dishonest acts known to the Assured at the inception of this policy.

It is further understood and agreed that all other terms and conditions of the above captioned bond remain in full force and effect.

This Special Letter No. 12 shall run contemporaneously with this bond, and any extensions, renewals or substitutions thereof.

Special Letter No. 12
Dishonesty Employees



44

CONFIDENTIAL

**BOND NO.QA529399    SECTION I (b) – ELECTRONIC COMPUTER CRIME**

**ITEM 1. NAME OF ASSURED:    LEHMAN BROTHERS HOLDINGS INC.,**
and its majority owned subsidiaries as now existing or hereinafter constituted including any Employee Benefit, Welfare or Pension Plans created by the Assured for the by the Assured for the benefits of its Employees (herein called Assured), NEW YORK, NY

**ITEM 2. BOND PERIOD:**    from 12:01 a.m. Local Standard Time on    January 31, 1999
to 12:01 a.m. Local Standard Time on    January 31, 2002

**ITEM 3.**    The Aggregate Limit of the Underwriter during the Bond Period shall be: $100,000,000.

**ITEM 4.**    Subject to Section 4 and 11 hereof, the Single Loss Limit of Liability is $100,000,000. and the Single Loss Deductible is $2,500,000.

Provided, however, that if any amounts are inserted below opposite specified Insuring Agreement or Coverage, those amounts shall be controlling. Any amount set forth below shall be part of and not in addition to amounts set forth above.

| Amount applicable to: | Single Loss Limit of Liability | Single Loss Deductible |
|---|---|---|
| Insuring Agreement (1)-    COMPUTER SYSTEMS | $100,000,000. | $2,500,000. |
| Insuring Agreement (2)-    ELECTRONIC COMPUTER INSTRUCTIONS | $100,000,000. | $2,500,000. |
| Insuring Agreement (3)-    ELECTRONIC COMMUNICATIONS | $100,000,000. | $2,500,000. |
| Insuring Agreement (4)-    ELECTRONIC TRANSMISSIONS | $100,000,000. | $2,500,000. |
| Insuring Agreement (5) –    CUSTOMER VOICE INITIATED TRANSFERS | $100,000,000. | $2,500,000. |
| Insuring Agreement (6) –    ASSURED'S SERVICE BUREAU OPERATIONS | $100,000,000. | $2,500,000. |
| Insuring Agreement (7) –    FORGED TELEFACSIMILE | $100,000,000. | $2,500,000. |
| Insuring Agreement (8) –    FRAUDULENT TELEPHONE SYSTEM ACCESS | $100,000,000. | $2,500,000. |
| Insuring Agreement (9) –    COMPUTER VIRUS | $100,000,000. | $2,500,000. |
| Insuring Agreement (10) –    ELECTRONIC SECURITIES | $100,000,000. | $2,500,000. |
| Insuring Agreement (11) – MALICIOUS DESTRUCTION | $100,000,000. | $2,500,000. |

**ITEM 5.**    The liability of the Underwriter is subject to the terms of the following Riders attached hereto:

Riders 1 - 5



45

CONFIDENTIAL