c.  Regardless of the number of years this insurance has been in force or may continue to be in force and of the premiums paid or payable in respect thereof, the liability of the Underwriters shall not be cumulative in amount from year to year or from period to period, and in no case shall exceed the Limit of Indemnity stated in Item 6 of the Schedule in respect of each separate annual policy period.

d.  If a series of **Claims** shall result from (i) any single **Wrongful Act** or related series of **Wrongful Acts** (ii) any transaction or event or series of transactions or events from which allegations of such **Wrongful Acts** arise, then, irrespective of the total number of **Claims**, all such **Claims** shall be considered to have been made as of the date the first of such **Claims** was made against the **Assured** and shall be considered to be a single **Claim** for the purposes of the application of the Limit of Indemnity.

3.  *DEDUCTIBLE*

Subject to the Limit of Indemnity stated in Item 6 of the Schedule, the Underwriters shall pay **Loss** only for each and every **Claim** first made against the **Assured** during the Policy Period, or Optional Extension Period (if applicable), including the **Assured's** approved Defense Costs and Expenses, which exceeds the Deductible stated in Item 7 of the Schedule.

The Deductible shall apply to each and every **Claim** and shall be subject to no aggregate limitation.

If a series of **Claims** shall result from (i) any single **Wrongful Act** or related series of **Wrongful Acts** (ii) any transaction or event or series of transactions or events from which allegations of such **Wrongful Acts** arise, then, irrespective of the total number of **Claims**, all such **Claims** shall be considered to have been made as of the date the first of such **Claims** was made against the **Assured** and shall be considered to be a single **Claim** for the purposes of the application of the Deductible.

4.  *RECOVERIES*

All recoveries from third parties for payments made under this Policy shall be applied (after first deducting the costs and expenses, including attorney's fees and accountants' fees, incurred in obtaining such recovery) in the following order of priority:

a.  The **Assured** shall first be reimbursed for the amount by which their paid legal liability exceeds the amounts paid under this Policy.

b.  The Underwriters shall then be reimbursed for the amounts paid under this Policy.

c.  Any remaining sum shall be applied towards reimbursement of the Deductible borne by the **Assured** under this Policy.



71

CONFIDENTIAL

5.    *SUBROGATION*

As a condition precedent to any payment under this Policy, the Underwriters shall be subrogated to the extent of such payment to all of the Assured's rights or recovery therefor, and the Assured shall execute all papers required and shall do anything that may be reasonably necessary to secure such rights, including the execution of such documents as may be necessary to enable the Underwriters effectively to bring suit in the name of the Assured.

6.    *DEFENSE AND DEFENSE COSTS AND EXPENSES*

a.    The Underwriters shall not be liable to pay **Defense Costs and Expenses** in excess of $2,500,000 unless the consent of the Underwriters is obtained prior to such **Defense Costs and Expenses** being incurred, which consent shall not unreasonably be withheld, delayed or denied. Subject to the Deductible, Underwriters shall pay **Defense Costs and Expenses** upon periodic notification by **Assured** as such **Defense Costs and Expenses** are incurred, provided that the **Assured** agrees to repay the Underwriters any **Defense Costs and Expenses** that are advanced if it is established by a court that any such **Defense Costs and Expenses** are not covered under this Policy, and provided that the **Assured** agrees to accept such reasonable and necessary conditions with respect to the documentation of such **Defense Costs and Expenses** as Underwriters may require.

b.    The Underwriters shall not be required hereunder to assume the handling or control of the defense or settlement of any **Claim** made against the **Assured**.

c.    Insofar as any **Claims** fall within the Limit of Indemnity provided hereunder, and in excess of the Deductible stated in Item 7 of the Schedule, no settlement of any such **Claim** or **Claims** shall be made without the Underwriters' consent, such consent not to be unreasonably withheld, delayed or denied.

d.    If the Underwriters appoint a representative to report to them upon any **Claim**, then this cost so incurred by the Underwriters (as distinguished from **Defense Costs and Expenses**) shall not form part of the Limit of Indemnity or the Deductible.

e.    In the event that the Underwriters fail to give their consent to the payment of either **Defense Costs and Expenses** or the settlement of any **Claims** in excess of the Deductible, the **Assured** shall have the right to make such payments in respect of either **Defense Costs and Expenses** or the settlement of any **Claims** without prejudice to the **Assured's** right to claim for reimbursement of such payments which are established by a court or agreed by the parties hereto as covered under this Policy.

72

CONFIDENTIAL

7.    *NON-ADMISSION OF LIABILITY*

The Assured shall not admit liability for or settle any **Claim** in excess of the **Deductible** made against the Assured without the prior consent of the **Underwriters**, which consent shall not be unreasonably withheld, delayed or denied, and subject to Clause 6(c) above. Nevertheless, the Assured shall not be required to contest any legal proceedings to trial unless counsel, to be mutually agreed upon by the Assured and the **Underwriters**, shall advise that such proceedings should be contested.

8.    *MEANING OF CLAIMS MADE AND NOTICE PROVISIONS*

This Policy applies only to **Claims** first made against the **Assured** during the **Policy Period**, **Optional Extension Period** (if applicable) or in the event of non-renewal or cancellation of this policy for a period of ninety (90) days after the effective date of such non-renewal or cancellation. For the purposes of this Policy, a **Claim** is considered to be made at the earliest of the following times, under either:

a.    when the Director Of Insurance Risk Management first receives a written demand (or a copy thereof) for damages of the type covered by this Policy, including the service of suit or institution of legal or arbitration proceedings; or

b.    when the Director Of Insurance Risk Management first becomes aware of the intention of any person to make such a demand against the Assured.

Written notice of any such **Claim** made or discovered during the **Policy Period** or **Optional Extension Period** (if applicable) may be given by the Director Of Insurance Risk Management to the Underwriters as soon as practicable, but in any event:  (1) within ninety (90) days after the expiration date of the **Policy Period**; or (2)  during the **Optional Extension Period** (if applicable); or (3) within ninety (90)  days after the effective date of non-renewal or cancellation of the Policy.

Notwithstanding **CONDITIONS** Section 8. above, if the anticipated **Defense Costs and Expenses** plus the anticipated costs of resolving any **Claim**, or the circumstances which may give rise to a **Claim** (which include the anticipated costs of settlement or judgment) reach or exceed $12,500,000, the **Assured** shall provide notification to the Underwriters of this event as soon as practicable, but in any event:  (1) within ninety (90) days after the expiration date of the **Policy Period**; or (2)  during the **Optional Extension Period** (if applicable); or (3) within ninety (90)  days after the effective date of non-renewal or cancellation of the Policy..

Any subsequent legal proceeding for damages brought against the Assured as a direct result of any matter or matters for which written notice has been given under b. above, whether such proceedings are brought during or after the expiration of the **Policy Period** or **Optional Extension Period** (if applicable), is considered to be a **Claim** first made against the Assured at such time as the Assured first gives notice to the Underwriters of the said matter or matters. Notwithstanding any other provisions in this Policy, subsequent legal proceedings may be covered under earlier policies even if brought after the expiration of the **Policy Period** or **Optional Extension Period** (if applicable) if the Assured first gave notice of said matter or matters under that earlier Policy.

73

CONFIDENTIAL

Upon receipt of written notice of any **Claim**, the Underwriters shall be entitled to appoint a representative to investigate the **Claim** on their behalf and the **Assured** shall provide reasonable co-operation to the Underwriters' representative in the conduct of his inquires, including but not limited to making available to him all necessary and non-privileged information and documentation as he may require together with facilities for the interviewing of those of the **Assured's** personnel whom the representative may consider to be relevant to his inquires.

If a series of **Claims** shall result from (i) any single **Wrongful Act** or related series of **Wrongful Acts** (ii) any transaction or event or series of transactions or events from which allegations of such **Wrongful Acts** arise, then, irrespective of the total number of **Claims**, all such **Claims** shall be considered to have been a **Claim** first made in the Policy Period in which the first of such **Claims** was made against the Assured.

9.   *WARRANTY*

It is warranted that the statements and particulars in the Proposal Form referred to in Item 5 of the Schedule and any supplementary information pertaining thereto, including the Assureds' Annual Reports, 10-K's and all other publicly available information provided by or on behalf of the Assured, are the basis of this Policy and shall be deemed incorporated herein.

The Assured agrees, by acceptance of this Policy:

a.   that the statements and particulars in the Proposal Form, and any supplementary information, are its representations and this Policy is issued in reliance upon the truth of such representations; and

b.   that in the event the Proposal Form, or any supplementary information, contain misrepresentations concerning any business of the Assured which materially affects the acceptance of risk hereunder with respect to such businesses by the Underwriters, this Policy shall be void and of no effect whatsoever insofar as it concerns indemnity for **Claims** made with respect to such business.

10.   *JURISDICTION AND SERVICE OF SUIT*

a.   The obligation of the Underwriters under this Policy shall apply in respect of Claims made anywhere in the world.

b.   In the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the **Assured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon the person(s) named in Item 9 of the Schedule, and that, in any suit instituted against any one of them upon this contract, the Underwriters will abide by the final decision of such court or of any appellate court in the event of an appeal.

74

CONFIDENTIAL

Such persons named in Item 9 of the Schedule are authorized and directed to accept service of process on behalf of the Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in that state, or his successor or successors in office, as their true and lawful attorney upon whom may be served process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

11.   *MATERIAL CHANGES*

    a.    Change of Control of the Assured

        In the event of the occurrence of any of the following:

    1.    the acquisition of more than 50% of the outstanding securities of the Assured named in Item 1 of the Schedule (other than by employee stockholders) representing the present right to vote for the election of directors by any person or entity, or

    2.    the merger of the Assured named in Item 1 of the Schedule into another entity such that the Assured named in Item 1 of the Schedule is not the surviving entity, or

    3.    acquisition of substantially all of the assets of the Assured named in Item 1 of the Schedule by another entity

then this Policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective date and time of such event but coverage under this Policy shall terminate in respect of any and all Wrongful Acts occurring after such date and time unless the Underwriters agree in writing to the continuation of the Policy and then only upon such terms as may be stipulated by the Underwriters.

It is further agreed that coverage as is afforded with respect to a Claim made against a Subsidiary or any individual Assured of such Subsidiary (as set forth below in Section 11(b)) shall only apply as respects Wrongful Acts committed or allegedly committed after the effective date and time that such Subsidiary became a Subsidiary and prior to the date and time that such Subsidiary ceased to be a Subsidiary.

CONFIDENTIAL

b.      Merger, Purchase or Acquisition

In the event that the Assured named in Item 1 of the Schedule or any Subsidiary shall merge with or, other than in the ordinary course of business, purchase or otherwise acquire all or any of the undertaking, assets or liabilities of another business and as a result increase the Assured's total consolidated assets by more than $50,000,000,000, this policy shall not afford any coverage of any kind for any **Claim** which involves any **Wrongful Act** which arises or occurs directly or indirectly out of or in relation to all and any of such undertaking, assets or liabilities or their acquisition unless and until the Assured named in Item 1 of the Schedule shall have obtained the Underwriters' prior agreement in writing to the extension of coverage under this Policy in relation to the same and then only upon such terms as may be stipulated by Underwriters after full disclosure of all material facts by the Assured named in Item 1 of the Schedule.

In the event that the Assured named in Item 1 of the Schedule or any **Subsidiary** shall merge with or, other than in the ordinary course of business, purchase or otherwise acquire all or any of the undertaking, assets or liabilities of another business and as a result does not increase the Assured's total consolidated assets by more than $50,000,000,000 this Policy shall afford coverage for any Wrongful Acts occurring after the time and date of such merger, purchase or acquisition. This Policy shall not afford any coverage of any kind for any **Claim** which involves any **Wrongful Act** by the acquired entity occurring prior to the date of such merger, purchase or acquisition, unless and until the Assured named in Item 1 of the Schedule shall have obtained the Underwriters' prior agreement in writing to the extension of coverage for such prior **Wrongful Act.** The Assured shall use its best efforts to provide the Underwriters with the full particulars of any such merger, purchase or acquisition prior to the end of the Policy Period but the failure of the Assured to furnish such notification shall not serve to prejudice the Assured's rights with respect to a **Claim** arising out of such transaction.

12.    *TERMINATION AND CANCELLATION PROVISIONS AND NON-RENEWAL*

Without prejudice to coverage for Claims made before the termination date, this Policy shall terminate:

a.      immediately for ongoing acts in the event of the occurrence of any of those events providing for termination set forth in Condition 11; or

b.      immediately for ongoing acts as to any **Subsidiary** in the event of the occurrence of any of the events set forth in Condition 11 in relation to such **Subsidiary**; unless in any such case the Underwriters, after having been furnished with all relevant particulars relating to the event, have offered revised terms and conditions as to the continuation of coverage and such terms and conditions have been accepted by the Assured named in Item 1 of the Schedule; or

c.      upon exhaustion of the Limit of Indemnity by one or more payments made under this Policy.

CONFIDENTIAL

Without prejudice to coverage for **Claims** made before the cancellation date this **Policy** shall be canceled:

d. upon receipt by the **Underwriters** of a written request by the **Assured** named in Item I of the Schedule to cancel this **Policy**.

The **Underwriters** will refund any unearned premium computed pro rata if terminated/cancelled in accordance with a) b), and d) herein above. In the event of termination in accordance with c) herein above, premium is deemed to be fully earned.

The **Underwriters** will have the right to cancel this **Policy** in the event of non-payment of premium. In such case, the **Underwriters** shall give the **Assured** thirty (30) day written notice prior to the effective date of cancellation.

13. *OPTIONAL EXTENSION PERIOD*

If the **Underwriters** or the **Assured** cancel or refuse to renew this **Policy** for reasons other than the nonpayment of premium or noncompliance with the terms of this **Policy**, the **Assured** named in Item 1 of the Schedule shall have the right, upon payment of additional premium equal to 25% of the total premium for this **Policy**, to an extension of the coverage granted by this **Policy** with respect to any **Claim** or **Claims** made during the period of one year after the effective date of such cancellation or non-renewal and reported to the **Underwriters** within ninety (90) days after the expiration date of the Optional Extension Period, but only with respect to any **Wrongful Act** committed before the effective date of such cancellation or non-renewal (such period referred to herein as the "Optional Extension Period").

There shall be no right to an Optional Extension Period unless a written request for this extension, together with payment of the appropriate additional premium, is received by the **Underwriters** within forty-five (45) days after the effective date of cancellation or non-renewal of the **Policy**.

14. *OTHER INSURANCE*

This **Policy** does not cover any **Loss** which is insured by or would but for the existence of this **Policy** be insured by, any other existing policy or policies, except in respect of any excess (not exceeding the Limit of Indemnity stated in Item 6 of the Schedule) beyond the amount which would have been payable under such other policy or policies, including any deductible applicable thereunder.

15. *DEATH, INCOMPETENCY, INSOLVENCY OR BANKRUPTCY OF ANY OFFICER OR EMPLOYEE*

This **Policy** shall, subject to all the terms and conditions, cover **Loss** arising from a **Claim** or **Claims** made against the estates, heirs and legal representatives of deceased persons who were individual **Assureds** at the time of the actual or alleged **Wrongful Act** upon which such **Claim** or **Claims** are based or against the legal representative of the individual **Assureds** in the event of their incompetency, insolvency or bankruptcy.

77

CONFIDENTIAL

16.    *CONFORMITY TO STATUTE*

In the event that any provision of this Policy shall be deemed or declared invalid or unenforceable under any applicable law, such invalidity or unenforceability shall not affect the remaining portion of this Policy. With respect to the validity or enforceability of any provision of this Policy, of the jurisdictions potentially applicable to such issue, the law of the jurisdiction most favorable to advance the intent of the parties hereto shall apply to determine whether such provision is valid or enforceable.

17.    *AUTHORIZATION*

By acceptance of this Policy, the Director Of Insurance Risk Management of the **Assured** named in Item 1 of the Schedule agrees to act on behalf of all other **Assureds** in respect to the giving and receiving of notice of **Claim** or of termination, the payment of premiums, the receiving of any return premiums that may become due under this Policy, the acceptance of endorsements, and the giving or receiving of any other notice provided for in this Policy, and the individual **Assureds** agree that the **Assured** named in Item 1 of the Schedule shall act on their behalf.

## DEFINITIONS

1.    **Affiliate** shall mean any entity in which the **Assured** holds, directly or indirectly, less than 50% of the outstanding shares of such entity, either directly or indirectly, and possesses the right to control, manage or direct such entity by reason of : (a) the **Assured's** ownership of voting securities in such entity, or (b) the **Assured's** right to elect or appoint directors or the equivalent managerial positions in such entity, or (c) the **Assured's** rights and obligations pursuant to any contract relating to such entity.

2.    **Assured** shall mean:

   a.    the **Assured** named in Item 1 of the Schedule;

   b.    any **Subsidiary**; and

   c.    any person who was, is or hereafter becomes a partner, officer, director, employee (whether full-time, part-time or temporary), trustee, official of any of the entities described in (1) and (2) above, or other person serving the **Assured** in any title, role, position, duty and / or capacity comparable to the foregoing , and the estates, heirs, legal representatives or assigns of deceased persons who were insured at the time of the act, error or omission upon which such **Claim** or **Claims** are based.

   **Assured** shall include the legal representatives or assigns of the individual **Assured** in the event of their incompetency, insolvency or bankruptcy, provided always that such **Claim** is first made during the Policy Period or in the event of non-renewal or cancellation of this Policy, a period of 90 days after such non-renewal or cancellation, or during the Optional Extension Period, if purchased.

3.    **Claim** means any (1) oral or written notice received by an **Assured** that any person or entity intends to hold an **Assured** responsible for a **Wrongful Act**, or (2) a legal, injunctive, adjudicatory or administrative proceeding or arbitration against an **Assured**.

78

CONFIDENTIAL

4.  **Cost of Corrections** shall mean:

The Underwriters shall reimburse the Assured for all amounts for all sums which the Assured shall have paid in order to correct an actual or potential loss to a customer or client resulting from or caused by a **Wrongful Act** of the Assured arising out of the Assured's provision of **Professional Services**.

Such **Loss** must be reported in writing to the Underwriters during the Policy Period or Optional Extension Period (if applicable), or within ninety (90) days after the expiration date of the Policy Period or the Optional Extension Period (if applicable). The Assured shall obtain the Underwriters' prior written consent prior to making such payment, which consent shall not be unreasonably withheld, delayed or denied.

The Underwriters shall reimburse the Assured for Cost of Correction only if:

(1)  such **Wrongful Act** causing such **Loss** is first discovered by the Director Of Insurance Risk Management during the Policy Period or Optional Extension Period (if applicable), or within ninety (90) days after the expiration date of the Policy Period or Optional Extension Period (if applicable).

(2)  at the time of payment there is a reasonable probability that such actual or potential loss would have constituted, in the absence of any action by the Assured, a covered **Loss** under the terms of this Policy.

If the Underwriters unreasonably withhold, delay or deny their consent because they lack sufficient information with which to evaluate entitlement to coverage, the Assured may pay the **Cost of Correction** without prejudicing its rights under the Policy.

5.  **Defense Costs and Expenses** shall mean all sums necessarily incurred in the response to and management of any complaint, legal action, arbitration or allegation which is or could be covered under this Policy.

6.  **Executive Officer** shall mean the chairperson, chief executive officer and chief legal officer of the Assured named in Item 1 of the Schedule .

7.  **Loss** shall mean damages which the Assured is legally obligated to pay for any **Claim** or **Claims** made against them and shall include judgments, **Cost of Corrections** , and settlements negotiated with the approval of the Underwriters together with **Defense Costs and Expenses** and shall include punitive, multiple and exemplary damages; provided always that such subject of **Loss** shall not include:

(1)  salaries of any individual Assured ;

(2)  diminution in value or damages resulting from the diminution in value of any investment; however, this paragraph (2) shall only apply where the Assured has guaranteed the performance of such investments in writing;

79

CONFIDENTIAL

(3) that portion of any Claim constituting the intrinsic value of property or the face value or costs of reconstruction of any property which is in the custody or control of an Assured on behalf of any customer or client but only to the extent that indemnity of such value or cost is provided by the Bankers Blanket Bond; and

(4) fines or penalties imposed by law, or matters deemed uninsurable pursuant to which this Policy shall be construed (fines or penalties do not include punitive, exemplary or multiple damages).

8. **Professional Services** shall mean those services which are performed by or on behalf of the Assured for or on behalf of any customer or client of the Assured, including but not limited to, those services performed by an investment bank, securities firm or financial services firm operating on a global basis engaged in a wide range of advisory, underwriting, financial services, investing, trading and other activities.

9. **Subsidiary** means any entity in which 50% or more of whose outstanding securities representing the present right to vote for the election of directors are owned or were owned by the Assured first named in Item 1 of the Schedule and/or one or more of its Subsidiaries. **Subsidiary** shall also mean any **Affiliate**.

10. **Wrongful Act** means any actual or alleged act, error, omission, breach of duty, neglect, misstatement, misrepresentation, misleading statement committed in any capacity by an Assured or any person or entity for whom the Assured is legally liable.

## EXCLUSIONS

This policy shall not indemnify the Assured:

1. for any deliberate criminal or fraudulent act or omission by an Assured; however, this exclusion shall not apply unless a final adjudication establishes that such act or omission is deliberately criminal or fraudulent and is material to the claim; provided, however, for the purposes of determining the applicability of the foregoing paragraph of Exclusion (1), only the deliberately criminal or fraudulent acts or omissions of any **Executive Officer** shall be imputed to the Assured first named in Item 1 and any Subsidiary.

Nothing in the foregoing shall exclude coverage to an Assured who has not committed or participated in, or had no knowledge of, such deliberate criminal or fraudulent act or omission.

2. for any bodily injury, sickness, disease or death, damage to, or destruction of tangible property, including loss of use thereof;

3. for any legal liability to the extent based solely on physical loss or damage to any goods or other property, including but not limited to securities, documents and other written instruments of every kind, whether owned by the Assured, held by the Assured in any capacity or for which the Assured may be liable.

CONFIDENTIAL

4.  for any **Claim** by or on behalf of or at the behest of any **Assured**, the **Assured's** parent company or any **Affiliate**; provided, however, that this Exclusion shall not apply to any **Claim** by or on behalf of any **Affiliate** if such **Claim** arises from the **Assured's** provision of **Professional Services** for such **Affiliate**;

5.  for any **Claim** involving any fact, circumstance or event which has been the subject of any notice given prior to the effective date of this **Policy** under any prior policy of which this **Policy** is a renewal or replacement;

6.  for any suit or legal proceeding, whether brought directly or derivatively on behalf of, or at the behest of, any security holder of the **Assured** when such suit or legal proceeding is based on, arises out of, or is in any way related to any interest in such security;

7.  for any legal liability arising solely from any claim alleging depreciation (or failure to appreciate) in value of any investments, including but not limited to securities, leased products, commodities, currencies, options and futures transactions as to which the **Assured** has guaranteed the performance of such investments in writing;

8.  based upon, arising out of, or in connection with any legal liability arising from or contributed to by any actual or alleged seepage, pollution or contamination of any kind;

9.  based upon, arising out of, or in connection with any legal liability to the extent based solely on war, invasion, act of foreign enemy, hostilities (whether war has been declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, martial law, or the act of any lawfully constituted authority;

10. for any legal liability to the extent based solely on the bankruptcy of, insolvency of, or suspension of payment by any bank or banking firm or broker or dealer in securities or commodities; provided, however, that this exclusion shall not apply to any **Claim** otherwise covered under this policy for which the **Assured** is unable to receive indemnity from an issuer of any security or debt instrument underwritten by the **Assured** because the issuer is bankrupt or insolvent.

11. for any legal liability of a party who is not an **Assured** under the Policy, assumed by the **Assured**:

    a.  under the terms, conditions or warranties of any contract or agreement, or

    b.  by virtue of any waiver or release from liability of any third party, except to the extent that liability would have attached to the **Assured** in the absence thereof.

    provided, however, that this exclusion shall not apply to claims for breach of the terms of the agreement pursuant to which the services of the **Assured** provided **Professional Services** for or on behalf of such third party.

81

CONFIDENTIAL

Rider No. 1
Bond No. QA529399 – All Sections

Name of Assured: LEHMAN BROTHERS HOLDINGS INC

It is understood and agreed that the following general conditions shall apply, except as noted, to the Financial Institution Professional Indemnity Insurance Policy (the "Indemnity Policy") and to the Financial Institution Bond and Electronic and Computer Crime Policy ( collectively referred to as the "Bond"). With respect to the coverage furnished by this endorsement, "Insured" shall mean the "Insured" as defined in the Bond and "Assured" as defined in the Indemnity Policy.

1.  Deductible:  In the event a Claim is covered in part under the Indemnity Policy and/or in part under the Bond, the applicable Deductibles set forth in Item 6 of the Schedule of the Indemnity Policy and in Item 4 of the Bond shall be applied separately to that part of Loss covered by each Policy. It is further understood and agreed that to the extent that Loss is covered under the Bond and Indemnity Policy, the Single Loss Deductible applicable to the Bond shall apply where the Insured can establish that in the absence of the Indemnity Policy the Bond would have responded to such Loss.

2.  Tie-In Limits: The combined limit of liability for which the Underwriters shall be liable under the Indemnity Policy and the Bond shall be US$100,000,000. Any and all amounts paid under the Indemnity Policy and/or the Bond shall reduce the aggregate limit of liability available under all of the Policies combined.

3.  Reinstatement:  If the limit of liability under the Policies and the limit of liability of all policies of insurance providing excess coverage above the Policies are exhausted by actual payment, then the limit of liability of the Policies, shall be reinstated a single time. Provided, however, the reinstatement provided herein shall not be conditioned upon payment under Excess Securities Policy No. QR039398 and any renewal or reinstatement thereof (also referred to as Form: J) maintained by the Insured. Underwriters under this Policy shall not be liable to pay more than US $100,000,000 in respect of any one Loss or any one Claim. If a series of Claims shall result from (i) any single Wrongful Act or related series of Wrongful Acts (ii) any transaction or event or series of transactions or events from which allegations of such Wrongful Acts arise, then, irrespective of the total number of Claims, all such Claims shall be considered to have been made as of the date the first of such Claims was made against the Assured and shall be considered to be a single Claim for the purposes of determining Underwriters' liability hereunder.

4.  Mergers and Acquisitions:  It is understood and agreed that the Section of the Electronic Computer Crime Policy entitled "Additional Offices or Employees Consolidation, Merger or Purchase of Assets Notice" is deleted and replaced with the following:



82

CONFIDENTIAL

(D)   If the Insured shall, while this bond is in force, establish any additional offices or add any computer systems, other than by consolidation or merger with or purchase or acquisition of assets or liabilities of another institution which consolidation or merger or acquisition or merger does not increase the Insured's total consolidated assets by more than $50,000,000,000, such offices or computer systems shall be automatically covered hereunder from the date of such establishment without the requirement of notice to the Underwriter or the payment of additional premium for the remainder of the premium period.

If the Insured shall, while this bond is in force, consolidate or merge with, or purchase or acquire assets or liabilities of another institution which merger, consolidation or acquisition shall increase the Insured's total consolidated assets by more than $50,000,000,000, the Insured shall not have such coverage as is afforded under this bond for loss which:

(a)   has occurred or will occur in offices or premises, or

(b)   has been caused or will be caused by an Employee or Employees of such institution, or

(c)   has arisen or will arise out of the assets or liabilities acquired by the Insured as a result of such consolidation, merger, or purchase or acquisition of assets or liabilities unless the Insured shall:

(i)   give the Underwriter written notice of the proposed consolidation, merger or purchase or acquisition of assets or liabilities prior to the effective date of such action and

(ii)   obtain the written consent of the Underwriter to extend the coverage provided by this bond to such additional offices or premises, Employees, and other exposures, and

(iii)   pay to the Underwriter an additional premium computed pro-rata from the date of such consolidation, merger, or purchase of assets to the end of the current premium period.

5.   It is understood and agreed that the Section of the Financial Institution Bond entitled "ADDITIONAL OFFICES OR EMPLOYEES CONSOLIDATION, MERGER OR PURCHASE OF ASSETS NOTICE" shall be deleted and replaced by the following:

B.   If the Insured shall, while this bond is in force, establish any additional offices, other than by consolidation or merger with or purchase or acquisition of assets or liabilities of another institution which consolidation or merger or acquisition or merger does not increase the Insured's total consolidated assets by more than $50,000,000,000, such offices shall be automatically covered hereunder from the date of such establishment without the requirement of notice to the Underwriter or the payment of additional premium for the remainder of the premium period.

CONFIDENTIAL

If the Insured shall, while this bond is in force, consolidate or merge with, or purchase or acquire assets or liabilities of another institution which merger, consolidation or acquisition shall increase the Insured's total consolidated assets by more than $50,000,000,000, the Insured shall not have such coverage as is afforded under this bond for loss which:

(a)    has occurred or will occur in offices or premises, or

(b)    has been caused or will be caused by an Employee or Employees of such institution, or

(c)    has arisen or will arise out of the assets or liabilities acquired by the Insured as a result of such consolidation, merger, or purchase or acquisition of assets or liabilities unless the Insured shall:

   (i)    give the Underwriter written notice of the proposed consolidation, merger or purchase or acquisition of assets or liabilities prior to the effective date of such action and

   (ii)    obtain the written consent of the Underwriter to extend the coverage provided by this bond to such additional officers or premises, Employees, and other exposures, and

   (iii)    pay to the Underwriter an additional premium computed pro-rata from the date of such consolidation, merger, or purchase of assets to the end of the current premium period.

Notice: It is understood and agreed that the failure of the Insured to furnish notice of Loss under the Bond, including notice of any legal proceedings brought to determine the Insured's liability for any loss, claim or damage, shall not affect coverage for Loss arising from such Claim under the Indemnity Policy so long as the Insured complies with the notice provisions set forth in paragraph 7 of the Indemnity Policy. It is also understood and agreed that the failure of the Insured to furnish notice pursuant to paragraph 7 of the Indemnity Policy shall not affect coverage for loss under the Bond so long as the Insured complies with the pertinent notice provisions set forth in the Bond.

7.    If any Underwriter participating as a cosurety on this program is acquired by, or merged with another company or receives a Claims Paying Ability rating of less than A- from Standard & Poor's at any time during the Policy Period or bond term, the Underwriter agrees that the Insured shall have the right, but not the obligation, to replace the participation of such cosurety and the unearned premium for that cosurety's participation shall be returned on a pro-rata basis to the Insured. Such cancellation of such cosurety's participation shall take effect immediately upon written notice from the Insured of its intention to replace such participating cosurety.



84

CONFIDENTIAL

8.    Notice of Claim is to be made to:

        John McCarrick
        McCarrick & Meyer, P.C.
        420 Lexington Avenue
        New York
        New York 10170
        USA

9.    This Policy is subject to the Service of Suit Clause (USA) as attached.

10.    <u>Special Cancellation Clause</u>

    In the event that an Underwriter:

    (a)    ceases underwriting (wholly or in part) or formally announces its intention to do so, or

    (b)    is the subject of an order or resolution for winding up or formally proposes a scheme
        of arrangement, or

    (c)    has its authority to carry on insurance business withdrawn or modified,

    The Assured may terminate that Underwriters' participation on this risk forthwith by giving
notice and the premium payable to that Underwriter shall be pro-rata to the time on risk.



85

CONFIDENTIAL



## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Assured (or Reassured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon Mendes and Mount, 750 Seventh Avenue, New York, N.Y. 10019-6829, U.S.A. and their nominees, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured (or Reassured) to give a written undertaking to the Assured (or Reassured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured (or Reassured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

N.M.A. 1998 (24/4/86)



CONFIDENTIAL

## ENDORSEMENT

Date  6th June 2001

To be attached to Lloyd's Policy Number 509/QA529399

In the name of    Lehman Brothers Holdings Inc

---

It is noted and agreed that the Period of Insurance is extended up to and including 31st January 2003 at 12.01 a.m. Local Standard Time, subject to no increase in the aggregate limit.

In consideration of the foregoing an additional premium of USD1,859,689.84, split as follows:
Section I USD650,891.44
Section II USD1,208,798.40
hereon 83.3332% of 60.0000% thereof, is charged to the Assured.

All other terms and conditions remain unchanged.

CONFIDENTIAL

# COPY

## ENDORSEMENT

Date: 6th June 2001

To be attached to Lloyd's Policy Number 509/QA529399

In the name of    Lehman Brothers Holdings Inc

---

It is noted and agreed that with effect from 31st January 1999 at 12.01 a.m. Local Standard Time this Policy is amended as follows:

### Section I

1.  Insuring Agreement (A2), Disclosed Agent Fidelity, is amended by deleting the words "with annually reporting required for additions" from the last line.

2.  Wherever the words "Transportation Underwriter" are stated same shall be deemed to read "Transportation Company"

3.  Insuring Agreement (G), Facsimile Signatures, is amended by deleting the words "trust Underwriter" from the first line and replacing them with the words "trust company".

4.  Definition (e), the final paragraph is amended to read as follows:

    The term Disclosed Agent shall include the partners, officers and employees of such Disclosed Agent and each such Disclosed Agent, and its partners, officers, and employees, shall collectively be deemed to be one person for all purposes of subsection (c) of the last paragraph of Section 4.

5.  Rider No. 3 subsection 1. is amended by deleting the words "Section 2" and replacing them with the words "Section 1 (b)".

6.  Exclusions, Section 2.2 (b) (2) is deleted in its entirety.

7.  Rider No. 10 subsection 1 is amended by deleting the words "Section 2.2(c) of the attached bond is deleted and replaced by the following" and replacing them with the words "Section 2.2 of the attached bond is amended by adding the following exclusion" and by deleting the word "(c)" and replacing it with the word "(q)".

### Section II

1.  Item 1 of the Declarations is amended to read as follows:

    LEHMAN BROTHERS HOLDINGS INC.,
    and its majority owned subsidiaries as now existing or hereafter constituted including any Employee benefit, Welfare or Pension Plans created by the Assured for the benefits of its Employees (herein called Assured), NEW YORK, N.Y.

All other terms and conditions remain unchanged.

CONFIDENTIAL

COPY

## ENDORSEMENT

Date  6th June 2001

To be attached to Lloyd's Policy Number 509/QA529399

In the name of    Lehman Brothers Holdings Inc

It is noted and agreed that with effect from 6th April 2000 at 12.01 a.m. Local Standard Time, the following entities are deemed to be Assureds, as applicable, under the Policy:

1. GLG Partners LP (UK Limited liability partnership)

2. GLG Partners Limited (General Partner of GLG Partners LP)

3. GLG Holdings Limited (Limited Partner of GLG Partners LP)

It is understood and agreed that the above coverage shall be limited to:

1. under the Financial Institution Bond and Electronic Computer Crime Policy sections, loss resulting from the above mentioned Assured's management of funds sponsored by any other Assured's covered hereunder; and

2. under the Financial Institution Professional Indemnity section, Claims arising out of Wrongful Acts resulting from the above mentioned Assured's management of funds sponsored by any other Assured covered hereunder

All other terms and conditions remain unchanged.



CONFIDENTIAL

# COPY

### ENDORSEMENT

Date  6th June 2001

To be attached to Lloyd's Policy Number 509/QA529399

In the name of    Lehman Brothers Holdings Inc

---

It is noted and agreed that with effect from 14th September 2000 at 12.01 a.m. Local Standard
Time item 7. of General Conditions applicable to All Sections of the policy Rider No. 1 is
deleted in its entirety and replaced by the following:

If at any time during the Policy Period,

(1)    the Underwriter is acquired by, or merges with or into, another company, or

(2)    the Underwriter transfers its right to service, via sale or other legal means, all or any part
of its existing portfolio of business of which this policy is part of, or

(3)    the Underwriter receives a claims paying ability rating of less than "A-" from any rating
agency,

the Parent Corporation has the right to cancel the participation of such Underwriter, and such
Underwriter shall return to the Parent Corporation the unearned premium, to be computed on a
pro-rata basis.  Premium adjustment must be made within thirty days after such cancellation
becomes effective.

CONFIDENTIAL

The Table of Syndicates referred to on the face of this Policy follows:

## SCHEDULES IN RESPECT OF BANKERS BLANKET BOND

| LPSO USE ONLY | BROKER 0509 | REFERENCES 61129  03|03|99 |
|---|---|---|
| 9 | | |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REFERENCE | PAGE 1 |
|---|---|---|---|
| PERCENT | | | |
| 8.3333 | 79 | 925JE182116A | |
| 8.3333 | 79 | 925JE282116A | |
| 16.6667 | 435 | 78163300 | |
| 16.6667 | 1411 | FAUZAC105893 | |
| 16.6666 | 219 | FFA99AFA278K | |
| 4.1666 | 456 | DO238ADLELSA | |
| 4.1667 | 456 | DO238AEFELSA | |
| 4.1667 | 376 | KAAE48380KXN | |
| 4.1666 | 839 | BAO4717AXOOO | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS IN RESPECT OF 1999
YEAR OF ACCOUNT

| TOTAL LINE | No. OF SYND. | FOR LPSO USE ONLY |
|---|---|---|
| 83.3332 | 9 | USL1  4350 |

CONFIDENTIAL

The Table of Syndicates referred to on the face of this Policy follows:

## SCHEDULES IN RESPECT OF PROFESSIONAL INDMENTIY

| LPSO USE ONLY | BROKER | REFERENCES |
|---|---|---|
| 13 | 0509 | 61131 03 03 99 |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REFERENCE | PAGE |
|---|---|---|---|
| PERCENT | | | 1 |
| 8.3333 | 79 | 925JE3L1981A | |
| 8.3333 | 79 | 925JE4L1981A | |
| 16.6667 | 435 | 78164100 | |
| 16.6667 | 1411 | FBUZAC105893 | |
| 16.6666 | 219 | EEE99BFA278K | |
| 4.1666 | 456 | DO238ADLELSB | |
| 4.1667 | 456 | DO238AEFELSB | |
| 4.1667 | 376 | KBAE48381ZXN | |
| 4.1666 | 839 | BAO4718AEOOO | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS IN RESPECT OF 1999
YEAR OF ACCOUNT

| TOTAL LINE | № OF SYND. | FOR LPSO USE ONLY |
|---|---|---|
| 83.3332 | 9 | USL1    4350 |

CONFIDENTIAL