# EXHIBIT F-1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAWRENCE FOGARAZZO and CAROLYN FOGARAZZO, Joint Tenants With Rights of Survivorship, STEPHEN L. HOPKINS, AND DON ENGEL, on behalf of themselves, and all others similarly situated, <br><br> Plaintiffs, <br><br> - against - <br><br> LEHMAN BROTHERS, INC., GOLDMAN SACHS & CO., and MORGAN STANLEY & CO., INC., <br><br> Defendants, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Civ. Action No. 03 CV 5194 (SAS) |

## PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND INTERROGATORIES DIRECTED TO DEFENDANT LEHMAN BROTHERS, INC.

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Lead Plaintiffs, by and through Lead Counsel, hereby request that Defendant Lehman Brothers, Inc. produce for inspection and copying the original documents described herein within 30 days from the date of service hereof at the Law Offices of Curtis V. Trinko, LLP, 16 West 46th Street, 7th Floor, New York, New York 10036, and answer the following Interrogatories within the time(s) permitted by the Federal Rules and Local Rules of this Court and/or proscribed by the Court. The documents and records subject to this request shall remain available to Lead Counsel until the inspection and copying can reasonably be completed.

1

## DEFINITIONS

1.      "Lehman," "you" and "your" means Lehman Brothers, Inc., and includes its predecessors and successors, parents, subsidiaries, affiliates, segments or divisions thereof, any present or former officers, employees, agents, members of the Board of Directors of Lehman, advisors, investment bankers and investment banking personnel, equities research analysts, supervisory personnel, accountants, attorneys, consultants, or other person (as defined below) acting or purporting to act on behalf of Lehman.

2.      "Defendant" means Lehman.

3.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, in the broadest sense possible, but is not limited to, any written, printed, typed, photostated, photographed, recorded, or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have notes or other markings. Without limiting the generality of the foregoing, "document" or "documents" includes, but is not limited to correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, research reports, research committee reports and memoranda, investment banking reports, activity reports, compliance reports, investment banking reports, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions,

2

notes, or minutes of meetings or other communications of any type, including inter- and

intra- office communications, questionnaires, surveys, charts, graphs, photographs,

photographic recordings, films, tapes, disks, data cells, print-outs of information stored or

maintained by electronic data processing or word processing equipment, including e-

mail, and all other data compilations from which information can be obtained (by

translation, if necessary, by you through detection devises into usable form), including,

but not limited to, electromagnetically sensitive stored media such as floppy disks, hard

disks, and magnetic tapes, and any preliminary versions, draft, or revisions of any of the

foregoing.

4.     When referring to a person, "to identify" means to give, to the extent

known, the person's full name, present or last known address, phone number and any

other known contact information, and when referring to a natural person, additionally, the

present or last known place of employment.  Once a person has been identified in

accordance with this subparagraph, only the name of that person need be listed in

response to subsequent discovery requesting the identification of that person.

5.     When referring to documents, "identify" means to give to the extent known,

the (1) type of document; (2) its general subject matter; (3) date of the document; and (4)

author(s), addressee(s) and recipients(s).

6.     The terms "plaintiff" and "defendant," as well as a party's full or

abbreviated name or a pronoun referring to a party means the party and, where

applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or

affiliates.

7.    The term "person" is defined as any natural person or any business, legal or governmental entity or association.

8.        The term "concerning" means relating to, referring to, describing, evidencing or constituting.

9.        The terms "all" and "each" shall be construed as all and each.

10. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

11.        The use of the singular form of any word includes the plural and vice versa.

12.        "Refer" or "relate" or "referring" or "relating" mean all documents that explicitly or implicitly, in whole or in part, were received in conjunction with, or were generated as a result of, the subject matter of the request, including, but not limited to, all documents that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

13.        "Communicate" or "communication" refers to and includes any utterance, spoken or heard, whether in person, by telephone, electronically, or otherwise, and refers to all written, verbal or other exchanges of information or documents between or among persons or entities.

14.        "RSL" or the "Company" means RSL Communications, Inc. and/or RSL Communications Ltd., and includes its predecessors and successors, parents, subsidiaries, affiliates, spin-offs (including Delta 3, as defined herein below), segments or divisions

4

thereof, any present or former officers, employees, agents, or members of the Board of

Directors of RSL, advisors, investment bankers, research analysts, management,

compliance officers, supervisors, accountants, attorneys, consultants, or other person (as

defined below) acting or purporting to act on behalf of RSL.

15.    "Delta 3" refers to RSL's deltathree.com, Inc. or Delta Three

Communications, Inc. spin-off Initial Public Offering dated on or about September 3,

1999.

16.    "SEC" refers to the United States Securities and Exchange Commission.

17.    "Financial Statement" refers to all documents summarizing or reporting

RSL's operations, liabilities, revenues, expenses, assets, equity or capital including, but

not limited to, the following (whether audited or unaudited and whether final, pro forma,

complete or partial): consolidated and non-consolidated balance sheets, statements of

earnings, results of operations, additional paid-in capital, retained earnings, source and

application of funds, cash flow, projections, and any other statements, schedules, work

papers, drafts, memoranda and notes that pertain to the financial condition of RSL.

18.    "Investment Research Report" means any and all written equity research

materials or analyses and First Call notes concerning RSL, including but not limited to

analyst reports and any and all drafts of such reports.

19.    "Meeting" refers to the contemporaneous presence of any natural persons,

whether or not such presence was by chance or prearranged, and whether or not the

meeting was formal or informal, occurred in connection with some other activity, or was

by telephone or teleconferencing.

20.    "IPO" means initial public offering.

5

21.    "Consent Order" means Administrative Order No. CO-2003-0010,

entitled IN THE MATTER OF: LEHMAN BROTHERS, INC., RESPONDENT, entered

into by and between Lehman, the State of Alabama Securities Commission, and the

Attorney General of the State of Alabama, on April 25, 2003.

22.    "Including" means including but not limited to.

23.    "NYSE" means the New York Stock Exchange.

24.    "NASD" means the National Association of Securities Dealers.

25.    "RSL-related" means concerning RSL, and/or marked as or otherwise

identified as relating to RSL.

## INSTRUCTIONS

1.    In responding to these requests, you shall produce all responsive

documents that are in your actual or constructive possession, custody or control or in the

actual or constructive possession, custody or control of your predecessors, successors,

parents, subsidiaries, divisions, or affiliates, or any of your respective directors, officers,

managing agents, agents, employees, attorneys, accountants or other representatives.  A

document shall be deemed to be within your control if you have the right to secure the

document or a copy of the document from another person having possession or custody

of the document.

2.    In responding to these requests, you shall produce all responsive

documents available at the time of production and you shall supplement your responses

as required by any applicable rule of the Federal Rules of Civil Procedure.

3.    Pursuant to the Federal Rules of Civil Procedure, you are to produce for

inspection and copying by Plaintiffs *original* documents as they are kept in the usual

course of business, or you shall organize and label them to correspond with the categories
in these requests.

4.    If any responsive document was, but is no longer in your possession or
subject to your control, state whether it is (a) missing or lost; (b) destroyed; (c)
transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in
each instance identify the name, address, phone number and any other known contact
information for its current or last known custodian and the circumstances surrounding
such disposition.

5.    If any document responsive to these requests is withheld under a claim of
privilege or upon any other ground, as to each such document, identify the privilege
being asserted and provide the following information in sufficient detail to permit the
Court to rule on your claim:

> a.    the date, author, primary addressees and secondary addressee(s) or
> persons copied, including the relationship of those persons to the client
> and/or author of the document;
>
> b.    a brief description sufficient to identify the type, subject matter and
> purpose of the document;
>
> c.    all persons to whom its contents have been disclosed; and
> the party who is asserting the privilege.

6.    If a portion of any document responsive to these requests is withheld
under the claim of privilege pursuant to Instruction 5, any non-privileged portion of such
document must be produced with the portion claimed to be privileged redacted.  If you
have redacted any portion of a document, stamp the word "redacted" on each page of the

document that you have redacted. Redactions should be included on the privilege log described in Instruction 5.

7.    You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 5 and 6 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

8.    Documents attached to each other should not be separated.

9.    Documents not otherwise responsive to this Request shall be produced if such documents mention, discuss, refer to, or explain the documents that are called for by this Request, or if such documents are attached to documents called for by this Request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations, file folder labels or similar materials.

10.    Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

## RELEVANT TIME PERIOD

All requests refer to the period January 1, 1997 through the date of this request (the "relevant time period"), unless otherwise specifically indicated, and shall include all documents and information that relate, in whole or in part, to such period even though dated, prepared, generated or received prior to or subsequent to that period.

## DOCUMENTS REQUESTED

## REQUEST NO. 1:

All documents concerning RSL's projected, actual and/or historical financial or

operating results including:

      a.  operating budgets, business plans, projections, targets, forecasts, outlooks, including all investment research reports;

      b.  financial results including monthly, quarterly, and annual financial statements;

      c.  analyses of operating and financial results;

      d.  analyses of projected and actual revenues, earnings, or other financial or operating results; and

      e.  analyses of projected and actual earnings, including all estimates and trend analysis.

**REQUEST NO. 2:**

All documents concerning RSL's SEC filings, including all SEC filings, underlying financial, operation or accounting documents for any businesses, subsidiaries, units, affiliates or divisions, their revenue(s), operations, net income, earnings, cash flow, expected future revenues, liabilities and expenses, write-offs and reserves, profit margins, financial condition and performance and asset valuations, as well as all documents evaluating, communicating or discussing any aspect of RSL's business, financial or operating results, and/or whether matters should be disclosed or omitted from an SEC filing.

**REQUEST NO. 3:**

All documents concerning any press releases, public announcements or other similar public communications about RSL, its business(es), its operations or financial results, its securities offerings, including but not limited to equities, note, and bond or

debt offerings, including drafts or other documents related to the preparation of such documents.

**REQUEST NO. 4**:

All documents concerning any accountant or accounting firm (including any meeting or communication with those persons or firms) who performed any work concerning RSL, including work concerning RSL's business(es), finances, financial and/or operating results, accounts, books and records, internal controls, management, revenue recognition or other financial accounting, subsidiaries, affiliates, divisions, as well as financial statements and/or press releases and other public statements, including but not limited to management letters, accounting reports and auditor's opinions.

**REQUEST NO. 5**:

All documents concerning any internal or other financial audits or reviews concerning RSL, including such audits and reviews performed by any individual, organization, contractor and/or RSL employee(s), including all agendas, reports, memos and/or accounting work papers prepared in connection with the Company's monthly, quarterly, and/or annual financial statements.

**REQUEST. NO. 6**:

All Investment Research Reports concerning RSL prepared by or on behalf of Lehman, including all such reports authored by Lehman equity analysts, and all drafts thereof, as well as documents relating to the preparation or approval of such reports.

**REQUEST NO. 7:**

All documents concerning RSL's accounting policies, procedures, practices, and/or internal controls or audit practices, including but not limited to those relating to revenue recognition.

**REQUEST NO. 8:**

All rating agency reports (including those from Fitch Investors and Moody's Investor Services) concerning RSL.

**REQUEST. NO. 9:**

All documents concerning RSL Board of Director meetings, including minutes (including any and all committees thereof), as well as all Board packages, handouts, presentations, agendas or other materials to or from the Board or any of its committees, as well as any drafts thereof.

**REQUEST. NO. 10:**

All documents prepared for, distributed to, or created in connection with any meetings you had with RSL, including any RSL management committee, management staff, executive committee or executive personnel, compensation committee or compensation personnel, including any presentation materials, minutes, agendas, handouts, notes, or other materials concerning the Company's business, operations, sales, revenues or revenue recognition, preparation of financial results, compliance with GAAP, business unit planned or actual budgets, results, performance or operations, financial or operating results, press releases or other public statements, securities and/or debt offerings, SEC filings, audits, accountants or accounting.

11

**REQUEST. NO. 11**:

　　All Investment Research Reports concerning RSL written or prepared, in whole

or in part, by non-Lehman research analysts, as well as all documents that refer or relate

to such Investment Research Reports.

**REQUEST. NO. 12**:

　　All industry reports, news stories, articles, journals, historical stock prices, and

stock indexes concerning RSL.

**REQUEST. NO. 13**:

　　All communications between Lehman and any third party stock market analyst,

investment banker, security rating service or financial lending institution concerning RSL

**REQUEST. NO. 14**:

　　All performance evaluations, business plans, and self-evaluations, including all

documents generated or received by research committees, research commitment

committees, supervisory committees, or research approval committees, concerning all

equity research analysts and other Lehman employees who covered or participated in the

research coverage of RSL equities, as well as all documents relating to or referenced in

such documents, and all drafts thereof.

**REQUEST. NO. 15**:

　　All communications concerning the Delta 3 IPO.

**REQUEST. NO. 16**:

　　All documents concerning Lehman's investment banking relationships with RSL,

including all documents referring to Lehman's role as manager, underwriter,

"bookrunner," and/or placement agent concerning:

    a. the RSL IPO;

    b. RSL's high yield note and senior note offerings;

    c. the Delta 3 IPO;

    d. RSL's debt offerings;

    e. RSL's preferred and convertible preferred share offerings;

    f. any mergers and acquisitions involving RSL; and/or

    g. RSL's Consent Solicitation Statements.

**REQUEST. NO. 17**:

All documents which were prepared by Lehman in order to advertise or otherwise promote its investment banking and equity research analysis products and services to RSL, including all "pitchbooks" concerning RSL.

**REQUEST. NO. 18**

All documents concerning RSL's equities and debt offerings, including preferred and convertible preferred share offerings, high yield notes, Senior Notes, and Consent Solicitation Statements.

**REQUEST. NO. 19**

All documents concerning Lehman's investment ratings, recommendations, and price targets for RSL securities.

**REQUEST. NO. 20**

All communications between Lehman and RSL.

**REQUEST. NO. 21**:

All marketing documents concerning RSL, including all materials utilized at road shows or other events that promoted or marketed RSL, its business, or its equities or debt

13

offerings, including preferred and convertible preferred share offerings, high yield notes,

Senior Notes, and Consent Solicitation Statements.

**REQUEST. NO. 22**:

All internal communications concerning RSL, including communications between

and among research analysts and investment banking personnel, and communications

sent or received by your personnel who performed supervisory or oversight functions

concerning research and/or investment banking coverage of RSL, including members of

any research, research commitment, oversight, and supervisory committees.

**REQUEST. NO. 23**:

All documents concerning compensation, including salary, bonuses, and other

remuneration, paid by Lehman to its research analysts who covered RSL, as well similar

materials for all investment banking personnel who were involved in providing

investment banking products or services to RSL.

**REQUEST. NO. 24**:

All documents concerning fees or other remuneration paid by RSL or Delta 3 to

you concerning investment banking work performed by you for RSL or Delta 3,

including work performed by you in your capacity as manager, underwriter, bookrunner,

and/or placement agent for RSL's or Delta 3's securities and/or debt offerings.

**REQUEST. NO. 25**:

All documents concerning Lehman's role as Solicitation Agent, Underwriter,

bookrunner, manager, or Placement Agent concerning any and all equities or debt

offerings by RSL.

**REQUEST. NO. 26**:

All documents concerning any debt or securities offerings by RSL, including any preferred share and common stock offerings by RSL during the relevant time period.

**REQUEST. NO. 27**:

All RSL-related files of Lehman's Equity Research Analyst Daniel Fletcher, including all communications, correspondence, chronological files, diaries, employment or personnel files, job performance evaluations and self-evaluations, reports, business plans, daybooks, calendars, appointment books, telephone logs, or documents related to compensation.

**REQUEST. NO. 28**:

All RSL-related files of Leonard G. Rosen, including all communications, correspondence, chronological files, diaries, employment or personnel files, job performance evaluations and self-evaluations, reports, business plans, daybooks, calendars, appointment books, telephone logs, or documents relating to compensation.

**REQUEST. NO. 29**:

All RSL-related files of Steven R. Hash, Lehman's current or former Director of U.S. Equity Research, including all communications, correspondence, chronological files, diaries, employment or personnel files, job performance evaluations and self-evaluations, reports, business plans, daybooks, calendars, appointment books, telephone logs, or documents relating to compensation.

**REQUEST. NO. 30**:

All RSL-related files of Lehman's Equity Research Analyst, Blake Bath, including all communications, correspondence, chronological files, diaries, employment

15

or personnel files, job performance evaluations and self-evaluations, reports, business plans, daybooks, calendars, appointment books, telephone logs, or documents relating to compensation.

### REQUEST. NO. 31:

All RSL-related files of Lehman's Current or former Director of Global Equity Research, Joseph V. Amato, including all communications, correspondence, chronological files, diaries, employment or personnel files, reports, business plans, job performance evaluations and self-evaluations, daybooks, calendars, appointment books, telephone logs, or documents relating to compensation.

### REQUEST. NO. 32:

All RSL-related files of all other Lehman research analysts and investment banking personnel not specifically referred to herein, including all communications, correspondence, chronological files, diaries, employment or personnel files, reports, business plans, job performance evaluations and self-evaluations, daybooks, calendars, appointment books, telephone logs, or documents relating to compensation.

### REQUEST. NO. 33:

All documents concerning salaries, bonuses, loans, stock options or other payments or compensation to or for the benefit of any equities or debt analyst employed by Lehman during the relevant period that was involved in providing research coverage of RSL securities, including but not limited to any fees, payments, bonuses, remuneration or compensation that such analysts were entitled to receive, or could have received based upon their Investment Research Reports on RSL.

**REQUEST. NO. 34**:

All documents concerning salaries, bonuses, loans, stock options or other

payments or compensation for the benefit of any investment banking personnel or other

management personnel employed by Lehman during the relevant period that were

involved in providing investment banking services to RSL.

**REQUEST. NO. 35**:

All documents concerning the purchase, sale, pledge, loan, encumbrance or

ownership of any RSL security or equity or bond offering, or any portion thereof, or the

granting to or exercising of any equities options for RSL securities by Lehman,

including, but not limited to, all documents concerning:

       a. the date of any such transaction;

       b. the number and type of securities purchased or acquired, sold or

disposed of;

       c. the price per share for which the securities were purchased or acquired,

sold or disposed of;

       d. in the case of a sale or disposition of RSL securities, the net proceeds

realized;

       e. options granted and exercised;

       f. the purpose or reason for the purchase, pledge, encumbrance, sale or

exercise; and

       g. the full utilization of the proceeds from any such pledge, encumbrance,

sale or exercise.

**REQUEST. NO. 36**:

All communications with the NYSE, the NASD, the SEC, the State of Alabama

Securities Commission, and the Attorney General of the State of Alabama concerning the

investigation into and charges made against Lehman, as referred to in the Consent Order,

as well as all documents produced or transmitted to the aforesaid governmental

authorities by Lehman concerning, referring to, or relating to RSL.

**REQUEST. NO. 37:**

All stock trading data for RSL equities, including common stock, for the relevant

time period, including, for each trading day: (a) the volume; (b) the high price; (c)the low

price; and (d) the closing price.

**REQUEST. NO. 38**:

All documents concerning or relating to the settlement of charges made against

Lehman pursuant to or in accordance with the Consent Order, including monetary

payments made and "Undertakings" performed by Lehman pursuant to the Consent

Order, including Addendum A to the Consent Order.

**REQUEST. NO. 39**:

All organizational charts, personnel reports and/or other documents listing or

describing RSL employees, personnel, or management.

**REQUEST. NO. 40**:

All documents concerning or relating to any formal or informal investigation,

inquiry, proceeding, sanction, or complaint against Lehman by the SEC, any national

securities exchange, the NASD, or any federal or state administrative or governmental

agency, including the state of Alabama Securities Division, including any meetings or

18

communications with such agency, that refer to RSL, including all indexes and privilege

logs created during the course of such investigation(s), including all documents produced

or transmitted to the aforesaid governmental or other authorities by Lehman concerning,

referring to, or relating to RSL.

**REQUEST. NO. 41**

All documents upon which you rely or intend to rely at the time of trial in support

of your defense(s) regarding the allegations contained in the Amended Class Action

Complaint.

**REQUEST. NO. 42**:

All documents constituting or concerning any insurance policy under which the

Defendant may claim coverage to satisfy all or part of any possible liabilities as a result

of any of the claims asserted in this litigation, including any indemnification agreement,

hold harmless agreement, by-laws, loss mitigation insurance, and/or liability-sharing

arrangements, as well as options to purchase such insurance or sharing arrangements,

whether acquired before or after the initiation of the litigation.

**REQUEST. NO. 43:**

All documents concerning any policy or procedure of Lehman with respect to the

retention or destruction of documents.

**REQUEST. NO. 44:**

All documents you intend to use, introduce or show to any or all proposed class

representatives during their respective depositions.

**REQUEST. NO. 45:**

All documents you believe refute Lead Plaintiffs' contention(s) that the alleged

class should be certified under Federal Rule of Civil Procedure 23, that the alleged class

satisfies the prerequisites for certification, and that the proposed class representatives

should be certified as class representatives.

**REQUEST. NO. 46:**

All documents that you believe support your opposition, or that you intend to

submit in opposition, to the prospective motion for class certification in this case.

**REQUEST. NO. 47:**

All documents on which you rely, to which you refer in responding to, or which

relate in any way to, your responses to the Interrogatories below.

**REQUEST. NO. 48:**

All drawings, charts, exhibits, demonstratives, or other evidence that you intend

to present at any class certification hearing in this case or in support of your opposition to

any motion for class certification.

**REQUEST. NO. 49:**

All documents relating to any expert witness that you may call to testify by

affidavit or in person in connection with your opposition to the motion for class

certification, including but not limited to:

(a) the most current resume or curriculum vitae of that expert witness;

(b) all documents, including deposition transcripts, from other actions or
legal proceedings, concerning the previous testimony of that expert
witness;

(c) All documents on which your expert witnesses will rely to form any
opinions or otherwise prepare testimony or affidavits for purposes of
your opposition to any motion for class certification; and

(d) All RSL-related documents, including reports that contain or reflect

20

the facts known by, or opinions of, any expert witness whom you may call to testify by affidavit or in person in connection with your opposition to any motion for class certification.

## INTERROGATORIES

1.    Identify each and every person who has knowledge of facts or other discoverable matters that are relevant to any issue regarding class certification in this litigation, including a summary of the subject matter of each such person's knowledge.

2.    Identify each expert witness Defendant Lehman expects to call as a witness to testify in person, by affidavit or other means with regard to any class certification hearing or judicial consideration in opposition to any motion for class certification, and describe the subject matter on which the expert is expected to testify, the substance of the facts and opinions on which the expect is expected to testify, and a summary of the grounds for each opinion.

3.    Identify all investment banking division personnel who were involved in providing investment banking products or services to RSL and Delta 3.

4.    Identify all past or present Lehman personnel, including members of all research or oversight committees, as well as their job titles, that held formal or informal positions of supervision or oversight over: (1) research analysts who provided research analysis of RSL, and (2) investment bankers who were involved in providing investment banking products and services to RSL.

5.    Identify all personnel who were authorized to make decisions concerning the compensation of research analysts and investment bankers, including their job titles.

21

Dated: August 5, 2004

**LAW OFFICES OF CURTIS V.
TRINKO, LLP**

By: _____
Curtis V. Trinko (CT-1838)
Neal A. DeYoung (ND- 3098)
Jeffrey B. Silverstein (JS-4818)
16 West 46th Street, 7th Floor
New York, NY  10036
(212) 490-9550

**Lead Counsel for Lead Plaintiffs and the Class**

**RSL: /DocRequests_Final_Lehman.wpd**

22

# CERTIFICATE OF SERVICE

I, Curtis V. Trinko, hereby certify that a true and correct copy of:

1- Plaintiffs' First Request For The Production Of Documents And Interrogatories Directed To Defendant Lehman Brothers, Inc.;

2- Plaintiffs' First Request For The Production Of Documents And Interrogatories Directed To Defendant Goldman Sachs & Co.;

3- Plaintiffs' First Request For The Production Of Documents And Interrogatories Directed To Defendant Morgan Stanley & Co., Inc; and

4- Lead Plaintiffs' Initial Disclosure Statement Pursuant To Federal Rule of Civil Procedure 26 (a)(1), including exhibits thereto in compact disk and/or hard copy format.

was served on the following attorneys by means of hand delivery to their offices on this date:

H. Christopher Boehning, Esq.
Moses Silverman, Esq.
Paul Weiss Rifkind Wharton & Garrison, LLP
1285 Avenue of the Americas
New York, New York 10019

**Attorneys for Defendant Lehman Brothers, Inc.**

David H. Braff, Esq.
Stephanie G. Wheeler, Esq.
David E. Swarts, Esq.
Sullivan & Cromwell, LLP
125 Broad Street
New York, New York 10004-2498

**Attorneys for Defendant Goldman, Sachs & Co.**

Alexander Dimitrief, Esq.
Peter D. Doyle, Esq.
Katherine J. Alprin, Esq.
Kirkland & Ellis LLP
153 East 53rd Street
New York, New York 10022

**Attorneys for Defendant Morgan Stanley & Co., Inc.**

Dated:  August 5, 2004
    New York, New York

_____
Curtis V. Trinko