# EXHIBIT F-2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LAWRENCE FOGARAZZO and CAROLYN ) 
FOGARAZZO, Joint Tenants With Rights of )
Survivorship, STEPHEN L. HOPKINS, AND )     Civ. Action No. 03 CV 5194
DON ENGEL, on behalf of themselves, and all )     (SAS)
others similarly situated, )

               Plaintiffs, )

      - against - )

LEHMAN BROTHERS, INC., GOLDMAN )
SACHS & CO., and MORGAN STANLEY )
& CO., INC., )

               Defendants, )

---

## PLAINTIFFS' SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT LEHMAN BROTHERS, INC.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Lead Plaintiffs, by and through Lead Counsel, hereby request that Defendant Lehman Brothers, Inc. produce for inspection and copying the original documents described herein within 30 days from the date of service hereof at the Law Offices of Curtis V. Trinko, LLP, 16 West 46th Street, 7th Floor, New York, New York 10036. The documents and records subject to this request shall remain available to Lead Counsel until the inspection and copying can reasonably be completed.

1

## DEFINITIONS

1.  "Lehman," "you" and "your" means Lehman Brothers, Inc., and includes its predecessors and successors, parents, subsidiaries, affiliates, segments or divisions thereof, any present or former officers, employees, agents, members of the Board of Directors of Goldman Sachs, advisors, investment bankers and investment banking personnel, equities and debt research analysts, supervisory personnel, accountants, attorneys, consultants, or other person (as defined below) acting or purporting to act on behalf of Lehman.

2.  "Defendant" means Lehman.

3.  "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, in the broadest sense possible, but is not limited to, any written, printed, typed, photostated, photographed, recorded, or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have notes or other markings. Without limiting the generality of the foregoing, "document" or "documents" includes, but is not limited to correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, research reports, research committee reports and memoranda, investment banking reports, activity reports, compliance reports, investment banking reports, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes, or minutes of meetings or other communications of any type, including inter- and intra- office

communications, questionnaires, surveys, charts, graphs, photographs, photographic recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, including e-mail, and all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devises into usable form), including, but not limited to, electromagnetically sensitive stored media such as floppy disks, hard disks, and magnetic tapes, and any preliminary versions, draft, or revisions of any of the foregoing.

4. When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, phone number and any other known contact information, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

5. When referring to documents, "identify" means to give to the extent known, the (1) type of document; (2) its general subject matter; (3) date of the document; and (4) author(s), addressee(s) and recipients(s).

6. The terms "plaintiff" and "defendant," as well as a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

7. The term "person" is defined as any natural person or any business, legal or governmental entity or association.

8. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

9. The terms "all" and "each" shall be construed as all and each.

10. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

11. The use of the singular form of any word includes the plural and vice versa.

12. "Refer" or "relate" or "referring" or "relating" mean all documents that explicitly or implicitly, in whole or in part, were received in conjunction with, or were generated as a result of, the subject matter of the request, including, but not limited to, all documents that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

13. "Communicate" or "communication" refers to and includes any utterance, spoken or heard, whether in person, by telephone, electronically, or otherwise, and refers to all written, verbal or other exchanges of information or documents between or among persons or entities.

14. "RSL" or the "Company" means RSL Communications, Inc. and/or RSL Communications Ltd., and includes its predecessors and successors, parents, subsidiaries, affiliates, spin-offs (including Delta 3, as defined in paragraph 15 below), segments or divisions thereof, any present or former officers, employees, agents, or members of the Board of Directors of RSL, advisors, investment bankers, compliance officers, accountants, attorneys, consultants, or other person (as defined below) acting or purporting to act on behalf of RSL.

15. "Delta 3" refers to RSL's deltathree.com, Inc. or Delta Three Communications, Inc. spin-off Initial Public Offering dated on or about September 3, 1999.

16.  "SEC" refers to the United States Securities and Exchange Commission.

17.  "Financial Statement" refers to all documents summarizing or reporting RSL's operations, liabilities, revenues, expenses, assets, equity or capital including, but not limited to, the following (whether audited or unaudited and whether final, pro forma, complete or partial): consolidated and non-consolidated balance sheets, statements of earnings, results of operations, additional paid-in capital, retained earnings, source and application of funds, cash flow, projections, and any other statements, schedules, work papers, drafts, memoranda and notes that pertain to the financial condition of RSL.

18.  "Investment Research Report" means any and all written equity or debt research materials or analyses and First Call notes concerning RSL, including but not limited to analyst reports and any and all drafts of such reports.

19.  "Meeting" refers to the contemporaneous presence of any natural persons, whether or not such presence was by chance or prearranged, and whether or not the meeting was formal or informal, occurred in connection with some other activity, or was by telephone or teleconferencing.

20.  "IPO" means initial public offering.

21.  "Including" means including but not limited to.

22.  "NYSE" means the New York Stock Exchange.

23.  "NASD" means the National Association of Securities Dealers.

24.  "RSL-related" means concerning RSL, and/or marked as or otherwise identified as relating to RSL.

25. "Policies or procedures, rules or regulations, governance or guidelines, rights or responsibilities, customs or practices, routines or expectations, or any similar general operating principles" is a broad phrase that encompasses any written policies, unwritten practices, any standards, criteria, methods, etc., that comprised acceptable means for a Lehman employee to perform his work and responsibilities during the Relevant Period.

**INSTRUCTIONS**

1. In responding to these requests, you shall produce all responsive documents that are in your actual or constructive possession, custody or control or in the actual or constructive possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of your respective directors, officers, managing agents, agents, employees, attorneys, accountants or other representatives. A document shall be deemed to be within your control if you have the right to secure the document or a copy of the document from another person having possession or custody of the document.

2. In responding to these requests, you shall produce all responsive documents available at the time of production and you shall supplement your responses as required by any applicable rule of the Federal Rules of Civil Procedure.

3. Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection and copying by Plaintiffs *original* documents as they are kept in the usual course of business, or you shall organize and label them to correspond with the categories in these requests.

4. If any responsive document was, but is no longer in your possession or subject to your control, state whether it is (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name,

6

address, phone number and any other known contact information for its current or last known custodian and the circumstances surrounding such disposition.

5. If any document responsive to these requests is withheld under a claim of privilege or upon any other ground, as to each such document, identify the privilege being asserted and provide the following information in sufficient detail to permit the Court to rule on your claim:

   a. the date, author, primary addressees and secondary addressee(s) or persons copied, including the relationship of those persons to the client and/or author of the document;

   b. a brief description sufficient to identify the type, subject matter and purpose of the document;

   c. all persons to whom its contents have been disclosed; and

   the party who is asserting the privilege.

6. If a portion of any document responsive to these requests is withheld under the claim of privilege pursuant to Instruction 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged indicated as being redacted. If you have redacted any portion of a document, stamp the word "redacted" on each page of the document that you have redacted. Redactions should be included on the privilege log described in Instruction 5.

7. You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 5 and 6 above), regardless of whether you consider the entire document to be relevant or responsive to the requests.

8. Documents attached to each other should not be separated.

7

9.  Documents not otherwise responsive to this Request shall be produced if such documents mention, discuss, refer to, or explain the documents that are called for by this Request, or if such documents are attached to documents called for by this Request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations, file folder labels or similar materials.

10. Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

## RELEVANT TIME PERIOD

All requests refer to the period January 1, 1997 through the date of this request (the "relevant time period"), unless otherwise specifically indicated, and shall include all documents and information that relate, in whole or in part, to such period even though dated, prepared, generated or received prior to or subsequent to that period.

## DOCUMENTS REQUESTED

**REQUEST NO. 1:**

All documents concerning any policies or procedures, rules or regulations, governance or guidelines, rights or responsibilities, customs or practices, routines or expectations, or any similar general operating principles that were applicable to any Lehman investment research personnel and the work they performed in contributing to Lehman's published analyses of any corporate securities, whether equity or debt instruments.

This request is limited to the divisions, areas, sections, etc. wherein any work was performed concerning RSL. The subject matter of this request includes, but is not limited to: the standards and criteria applied in analyzing securities; considerations utilized in determining

and issuing ratings, recommendations, commentary and target prices; considerations utilized in determining whether to cover a security, whether to alter coverage in any way, whether to issue any written or oral comments on covered securities, and whether to cease coverage; considerations utilized in determining when to publish reports or any other commentary on securities; guidelines for communicating with anyone inside or outside of Lehman; etc. This request includes all communications, documents, or files referencing, discussing, addressing, or regarding any aspect of the matters covered herein. Responsive documents include, but are not limited to, Goldman Sachs's "U.S. Investment Research Policies and Procedures – Spring 1999," including all Appendices, in any editions current during the Relevant Period, the table of contents of which was produced as GS/RSL 025468-470.

**REQUEST NO. 2:**

All documents concerning any policies or procedures, rules or regulations, governance or guidelines, rights or responsibilities, customs or practices, routines or expectations, or any similar general operating principles that were applicable to any Goldman Sachs managerial personnel and the work they performed in the administration and management of investment research, and any sections therein.

This request is limited to the divisions, areas, sections, etc. wherein any work was performed concerning RSL. The subject matter of this request includes, but is not limited to: considerations, methods, and means utilized in conducting performance reviews and determining compensation and bonuses; considerations, methods, and means utilized in determining what securities are to be covered by research and what analysts are to cover what securities; considerations, means, and methods utilized in managing, supervising, monitoring, coordinating,

or evaluating the work of analysts, etc. This request includes all communications, documents, or files referencing, discussing, addressing, or regarding any aspect of the matters covered herein.

**REQUEST NO. 3:**

All documents discussing any policies or procedures, rules or regulations, governance or guidelines, rights or responsibilities, customs or practices, routines or expectations, or any similar general operating principles that were applicable to any Lehman investment banking personnel and the work they performed in the investment banking division, or any section therein, including all financial advisory work, underwriting, and any other functions.

This request is limited to the divisions, areas, sections, etc. wherein any work was performed concerning RSL, and may include, but may not be limited to, industrial group, any telecommunications group, leveraged finance, mergers and acquisitions, et al. The subject matter of this request includes, but is not limited to: considerations, methods, and means utilized in identifying, targeting, and developing new business opportunities from new or existing corporate clients; considerations, methods, and means utilized in monitoring, analyzing, and evaluating ongoing efforts to solicit new business; standards and criteria for performing services to corporate clients; guidelines for communicating with anyone inside or outside of Lehman; etc. This request includes all communications, documents, or files referencing, discussing, addressing, or regarding any aspect of the matters covered herein.

**REQUEST NO. 4:**

All documents discussing any policies or procedures, rules or regulations, governance or guidelines, rights or responsibilities, customs or practices, routines or expectations, or any similar general operating principles applicable to any Lehman managerial

10

personnel and the work they performed in the administration and management of the investment banking division or any section therein.

This request is limited to the divisions, areas, sections, etc. wherein any work was performed concerning RSL. The subject matter of this request includes, but is not limited to: considerations, methods, and means utilized in conducting performance reviews, determining compensation and bonuses, determining what new business opportunities are to be undertaken, determining what securities are to be covered by research, determining what analysts are to cover what securities; considerations, methods, and means utilized in managing, supervising, monitoring, or coordinating the work of all personnel in the investment banking division; etc. This request includes all communications, documents, or files referencing, discussing, addressing, or regarding any aspect of the matters covered herein.

**REQUEST NO. 5**:

All documents concerning any policies or procedures, rules or regulations, governance or guidelines, rights or responsibilities, customs or practices, routines or expectations, or any similar general operating principles that were applicable to any Lehman personnel who performed any work in any division, department, area, section, etc. other than investment research or investment banking.

This request is limited to the divisions, areas, sections, etc. wherein any work was performed concerning RSL. Such sections may include, but may not be limited to, high yield research, capital markets, high yield capital markets, fixed income capital markets, equity capital markets, et al. This request includes all communications, documents, or files referencing, discussing, addressing, or regarding any aspect of the matters covered herein.

**REQUEST. NO. 6:**

All documents concerning any policies or procedures, rules or regulations, governance or guidelines, rights or responsibilities, customs or practices, routines or expectations, or any similar general operating principles applicable to any Lehman managerial personnel and the work they performed in the administration and management of any Lehman division, area or section other than investment research and investment banking division.

This request is limited to the divisions, areas, sections, etc. wherein any work was performed concerning RSL. Such sections may include, but may not be limited to, high yield research, capital markets, high yield capital markets, fixed income capital markets, equity capital markets, et al. This request includes all communications, documents, or files referencing, discussing, addressing, or regarding any aspect of the matters covered herein.

**REQUEST NO. 7:**

All documents concerning any policies or procedures, rules or regulations, governance or guidelines, rights or responsibilities, customs or practices, routines or expectations, or any similar general operating principles applicable to any Lehman personnel who were involved in joint, coordinated, or cooperative efforts with other Lehman personnel from different divisions, areas, sections, etc.

This request is limited to the divisions, areas, sections, etc. wherein any work was performed concerning RSL. The subject matter of this request includes, but is not limited to: considerations, methods, and means for determining when such joint, coordinated, or cooperative efforts are to be undertaken, and implementing such efforts; guidelines for communicating with anyone inside or outside of Lehman; etc. This request includes all

communications, documents, or files referencing, discussing, addressing, or regarding any aspect of the matters covered herein.

**REQUEST NO. 8**:

All documents concerning any policies or procedures, rules or regulations, governance or guidelines, rights or responsibilities, customs or practices, routines or expectations, or any similar general operating principles applicable to any Lehman managerial or other personnel who were involved in the administration, management, or coordination of joint, coordinated, or cooperative efforts with other Lehman personnel from different divisions, areas, sections, etc.

This request is limited to divisions, areas, sections, etc. wherein any work was performed concerning RSL. The subject matter of this request includes, but is not limited to: considerations, methods and means of promoting, encouraging, permitting, limiting, restricting, managing, monitoring and evaluating such joint, coordinated, or cooperative efforts; etc. This request includes all communications, documents, or files referencing, discussing, addressing, or regarding any aspect of the matters covered herein.

**REQUEST. NO. 9**:

All documents concerning any policies or procedures, rules or regulations, governance or guidelines, rights or responsibilities, customs or practices, routines or expectations, or any similar general operating principles applicable to any efforts at Lehman to promote, encourage, reward, coordinate, manage, permit, or otherwise facilitate joint, coordinated or cooperative efforts conducted by any Lehman personnel in investment banking and in investment research.

13

The subject matter of this request includes, but is not limited to: considerations, methods, and means utilized in efforts that have been variously referred to as "alignment," "research alignment," "strategic alignment," "seamless partnership," "Banking/Research Partnership," "investment spending," analysts' "revenue contribution," analysts' "banking contribution," analysts' "revenue share;" considerations, methods, and means utilized in initiating, sustaining, and coordinating contacts and resolving issues between investment bankers and investment analysts; considerations, methods, and means utilized in motivating, inducing, rewarding, etc. such "alignment," coordination, or cooperation between investment bankers and investment analysts, etc.

This request is limited inasmuch as it does not seek "alignment" documentation that merely regards any client company other than RSL and does not include address any general policy or procedure issues. However, this request includes any document that does address any such general policy or procedure issue, regardless of whether it also pertains to any client company other than RSL. This request includes all communications, documents, or files referencing, discussing, addressing, or regarding any aspect of the matters covered herein, including, but not limited to, documents referencing Joseph Amato, Bob Swindell, Brad Jack, etc. Responsive documents include, but are not limited to LEH-E 00619555-589, which documents formed part of the support for the Consent Order, signed on April 25, 2003, by Lehman, the Alabama Securities Commission and the Attorney General of the State of Alabama.

**REQUEST. NO. 10**:

All documents concerning any efforts to implement, monitor, analyze, or facilitate accountability regarding any efforts at Lehman to promote, encourage, reward,

coordinate, manage, permit, or otherwise facilitate joint or cooperative efforts conducted by any Lehman personnel in investment banking and in investment research.

The subject matter of this request includes, but is not limited to: the gathering, analyzing and synthesizing data of analysts' "revenue contributions," "banking contributions," "revenue shares," etc. This request also includes all communications discussing, addressing, or regarding any aspect of the matters covered herein. Responsive documents include, but are not be limited to, analyst contribution or revenue share worksheets or spreadsheets, any other collections or presentations of data related to the contributions of investment research analysts to investment banking business, or to the efforts by investment bankers to enlist such contributions by research analysts.

This request is limited inasmuch as it does not seek documentation that merely pertains to any Lehman employee who never worked on any RSL-related matters and also neither addresses any generalized issues nor contains any summary or accumulated data or issues. However, this request includes any documentation that does address any generalized issues or contains any summary or accumulated data, regardless of whether is also pertains to any client company other than RSL, or any Lehman employee. This address also includes any documentation that pertains to any Lehman employee who worked on any RSL-related matters. This request includes all communications, documents, or files referencing, discussing, addressing, or regarding any aspect of the matters covered herein.

15

**REQUEST. NO. 11**:

All investment research reports prepared by or on behalf of Lehman concerning, in whole or in part, or references any bonds or debt instruments issued or to be issued by RSL, including all such reports prepared in whole or in part by any Lehman analysts, and all drafts thereof, as well as documents relating to the preparation or approval of such reports.

**REQUEST. NO. 12**:

All organizational charts, personnel reports and/or other documents listing or describing Lehman employees, personnel, management, divisions, areas, sections, etc. This request is limited to the divisions, areas, sections, etc. wherein any work was performed concerning RSL, or wherein any administrative or managerial work was performed that pertained to or concerned any such divisions, areas, sections, etc.

**REQUEST. NO. 13**:

All documents which appear to reflect any remarks or comments attributable to any Lehman employee in investment research who performed work on any RSL-related matter, which remarks or comments appear to have been made to or regarding any employee, referenced by name or title, of the Lehman investment banking division.

**REQUEST. NO. 14**:

All documents which appear to reflect any remarks or comments attributable to any employee of the Lehman investment banking division who performed work on any RSL-related matter, which remarks or comments appear to have been made to or regarding any employee, referenced by name or title, of Lehman investment research.

Dated: December 13, 2005

                        **LAW OFFICES OF CURTIS V. TRINKO, LLP**

By: *[signature: Curtis V. Trinko]*

                  Curtis V. Trinko (CT-1838)
                  Jeffrey B. Silverstein (JS-4818)
16 West 46th Street, 7th Floor
New York, NY  10036
Tel:  (212) 490-9550

**Lead Counsel for Lead Plaintiffs and the Class**