Presentment Date and Time:    **August 2, 2010 at 12:00 p.m. (Prevailing Eastern Time)**
Objection Deadline:    **August 2, 2010 at 11:00 a.m. (Prevailing Eastern Time)**
Hearing Date and Time (If an Objection is Filed):    **August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                           :
In re                                      :          Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :          08-13555 (JMP)
                                           :
                    Debtors.               :          (Jointly Administered)
                                           :
-----------------------------------------------------------------x
```

**NOTICE OF PRESENTMENT OF APPLICATION**
**OF THE DEBTORS PURSUANT TO SECTION 327(e) OF**
**THE BANKRUPTCY CODE AND RULE 2014(a) OF THE FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO**
**EMPLOY AND RETAIN MOMO-O, MATSUO & NAMBA, AS SPECIAL**
**COUNSEL TO THE DEBTORS, _NUNC PRO TUNC_ TO FEBRUARY 1, 2010**

**PLEASE TAKE NOTICE** that the undersigned will present the annexed

Application (the "Application") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated

debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together,

the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), pursuant to section

327(e) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "Local Rules"), to employ and

retain Momo-o, Matsuo & Namba as special counsel to the Debtors, effective _nunc pro tunc_ to

February 1, 2010 all as more fully described in the Application, to the Honorable James M. Peck,

United States Bankruptcy Judge, for approval and signature on **August 2, 2010 at 12:00 p.m. (Prevailing Eastern Time)**.

        **PLEASE TAKE FURTHER NOTICE** that objections to the Application, if any, shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) Momo-o, Matsuo & Namba, Kojimachi Diamond Building 6F, 4-1 Kojimachi, Chiyoda-ku, Tokyo 102-0083, Attn: Junya Naito, **so as to be so filed and received by no later than August 2, 2010 at 11:00 a.m. (Prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that only if a written objection is timely filed and served, a hearing will be held on **August 18, 2010 at 10 a.m. (Prevailing Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, Honorable James M. Peck, United States Bankruptcy Judge, One Bowling Green, New York, New York 10004-1408.   If an objection is filed the moving and objecting parties are required to attend the hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 22, 2010
       New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile. (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Presentment Date and Time:    **August 2, 2010 at 12:00 p.m. (Prevailing Eastern Time)**
Objection Deadline:    **August 2, 2010 at 11:00 a.m. (Prevailing Eastern Time)**
Hearing Date and Time (If an Objection is Filed):    **August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
**In re**                                     :          **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :          **08-13555 (JMP)**
:
**Debtors.**                          :          **(Jointly Administered)**
:
-----------------------------------------------------------------x

**APPLICATION OF THE DEBTORS**
**PURSUANT TO SECTION 327(e) OF THE**
**BANKRUPTCY CODE AND RULE 2014(a) OF THE FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO**
**EMPLOY AND RETAIN MOMO-O, MATSUO & NAMBA, AS SPECIAL**
**COUNSEL TO THE DEBTORS, *NUNC PRO TUNC* TO FEBRUARY 1, 2010**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this application (the "Application")

and respectfully represent:

**Background**

1.        Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this

Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").   The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").   The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.       On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.       On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").   A trustee appointed under SIPA is administering LBI's estate.

4.       On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.   The Examiner issued a report of his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

5.       On April 14, 2010, the Debtors filed a revised joint chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [Docket Nos. 8330 and 8332].

**Jurisdiction**

6.       This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

7.       Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.   For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients, and individuals worldwide.

8.       Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

9.       By this Application, the Debtors request authorization, pursuant to section 327(e) of the Bankruptcy Code, Rule 2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), to employ Momo-o, Matsuo & Namba ("MMN") as special counsel to the Debtors, effective *nunc pro tunc* to February 1, 2010.   Specifically, MMN has been engaged with respect to the representation of the Debtors in connection with the Civil Rehabilitation Proceedings of Lehman Brothers Holdings Japan Inc., Lehman Brothers Commercial Mortgage, Inc. and Sunrise Finance Inc. at the Tokyo District Court and related matters ("Representative Matters").

## MMN as an Ordinary Course Professional

10.       MMN has previously been performing legal services on behalf of the Debtors as a professional utilized in the ordinary course of business ("Ordinary Course Professional" or "OCP") in these chapter 11 cases pursuant to this Court's Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ

Professionals Utilized in the Ordinary Course of Business, dated November 5, 2008 [Docket No. 1394] (the "OCP Order").    On December 12, 2008, the Debtors submitted the affidavit and questionnaire of Junya Naito [Docket No. 2203] pursuant to the OCP Order and in support of MMN's retention as an Ordinary Course Professional.

        11.     The OCP Order authorizes the Debtors to pay compensation to and reimburse the expenses of Ordinary Course Professionals in the full amount billed by each OCP "upon receipt of reasonably detailed invoices indicating the nature of the services rendered and calculated in accordance with such professional's standard billing practices."    In accordance with the OCP Order, MMN provided services to the Debtors and was or will be compensated for those services upon the presentation of detailed invoices indicating the nature of the services rendered, which were calculated in accordance with MMN's standard billing practices.

        12.     The OCP Order further provides that "payment to any one Ordinary Course Professional shall not exceed $1 million for the period prior to the conversion of, dismissal of, or entry of a confirmation in these chapter 11 cases (the 'Chapter 11 Period')" and that "in the event payment to any Ordinary Course Professional exceeds $1 million during the Chapter 11 Period, such Ordinary Course Professional shall be required to file a retention application to be retained as a professional pursuant to sections 327 and 328 of the Bankruptcy Code. . . ."    MMN has determined that it has reached and exceeded the $1 million compensation cap for Ordinary Course Professionals during the "Chapter 11 Period" (the "OCP Cap").    As of February 1, 2010, MMN had incurred fees and expenses totaling approximately $1,105,268.66 in these cases.    Accordingly, the Debtors now seek to retain MMN as special counsel in accordance with the OCP Order and pursuant to section 327(e) of the Bankruptcy Code.    All

fees and expenses paid to MMN by the Debtors (as opposed to non-Debtor entities) in excess of

$1 million will be subject to the Court's review and approval.

### Scope of Services to be Provided

13.     Subject to further order of this Court, it is proposed that MMN be employed

to continue to advise the Debtors in connection with the Representative Matters.

14.     Furthermore, the Debtors request that MMN's retention be made effective

*nunc pro tunc to February 1, 2010*, to ensure that MMN is compensated for all of its services to the

Debtors.   Establishing February 1, 2010 as the date of MMN's retention as special counsel in these

cases will enable MMN to smoothly transition its billing practices and procedures from its prior

retention as an Ordinary Course Professional and will enable MMN to be compensated for all of its

services rendered to the Debtors which provided value to the Debtors' estates.   The Debtors submit

that the circumstances of MMN's initial retention as an Ordinary Course Professional, and the

compensation provisions under the OCP Order warrant retroactive approval of MMN as special

counsel, particularly because MMN provided necessary services to the Debtors and such services

are of value to the estate and all parties in interest.   *See In re Hasset, Ltd.*, 283 B.R. 376, 379

(Bankr. E.D.N.Y. 2002) (approving *nunc pro tunc* retention application and recognizing that "*nunc*

*pro tunc* applications are disfavored in this Circuit but have been permitted when the attorney

performs services of 'value' to the estate") (internal citations omitted); *see also In re Jarvis*, 53

F.3d 416 (1st Cir. 1995) (finding that a bankruptcy court may grant a *post facto* application if

employment meets statutory requirements and delay results from extraordinary circumstances);

*Matter of Arkansas Co. Inc.*, 798 F.2d. 645 (3d Cir. 1986) (opining that bankruptcy courts have

discretion in extraordinary circumstances to retroactively approve a professional's employment).

In part, because of uncertainty as to whether said payment obligations were to be satisfied by the

Debtors or certain non-Debtor affiliates, MMN has only recently determined that their fees and

expenses have exceeded the OCP cap.   While MMN has continued to provide uninterrupted and valuable services to the Debtors and their estates, they have not received any payments that exceed the OCP Cap.

### Payment of MMN's Fees and Expenses

15.     The Debtors propose to pay MMN its customary hourly rates for services rendered that are in effect from time to time, as set forth in the declaration of Junya Naito (the "Naito Declaration") attached hereto as Exhibit A, and to reimburse MMN according to its customary reimbursement policies, in accordance with sections 330(a) and 331 of the Bankruptcy Code, and respectfully submit that such rates are reasonable.

16.     MMN's hourly rates vary with the experience and seniority of the individuals assigned.   MMN has informed the Debtors, that the current hourly billing rates for MMN's partners range from JPY35,000 to 60,000, for senior associates the range is from JPY30,000 to 35,000, and for associates JPY20,000 to 30,000.[1]   The hourly rates are subject to change from time to time in accordance with MMN's established billing practices and procedures.

17.     The Debtors understand that in connection with the reimbursement of reasonable and necessary expenses, it is MMN's policy to charge its clients for expenses incurred in connection with providing certain client services, including, without limitation, travel, lodging, photocopying, postage, vendor charges, long distance and other telephone charges, delivery service, and other expenses incurred in providing professional services.

18.     In order to minimize costs, MMN is prepared to work closely with the Debtors and each of their other retained professionals to delineate clearly the professionals' respective duties so as to prevent unnecessary duplication of services whenever possible.

---

[1]  Applying the conversion rate as of July 15, 2010, calculating 1 US Dollar as JPY87.37, MMN's hourly rates would range from approximately $400 to $686 for partners, $343 to $400 for senior associates, and $229 to $343 for associates.

19.     All of MMN's fees and expenses incurred during these chapter 11 cases on

or after February 1, 2010,[2] will be subject to approval of the Court upon proper application by

MMN in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the

Local Rules, and the guidelines promulgated by the U.S. Trustee, as those procedures may be

modified or supplemented by order of this Court, including this Court's Third Amended Order

Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a)

Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals [Docket No. 4165] and this Court's Order Appointing Fee Committee and Approving

Fee Protocol [Docket No. 3651].

## Basis for Relief Requested

20.     The retention of MMN under the terms described herein is appropriate under

Bankruptcy Code sections 327(e) and 1107.   Section 327(e) provides for the appointment of

special counsel where the proposed counsel does not possess any interest that is materially adverse

to the debtor with regard to the matter(s) that will be handled by counsel.   Section 327(e) provides:

> The trustee, with the court's approval, may employ, for a specified
> special purpose, other than to represent the trustee in conducting
> the case, an attorney that has represented the debtor, if in the best
> interest of the estate, and if such attorney does not represent or
> hold any interest adverse to the debtor or to the estate with respect
> to the matter on which such attorney is to be employed.

21.     Accordingly, section 327(e) of the Bankruptcy Code authorizes the retention

of counsel who previously represented a debtor prepetition provided that: (a) the appointment is in

the best interest of the debtor's estate; (b) counsel does not hold an interest adverse to the estate

with respect to the matter for which counsel is to be employed; and (c) the specified special

purpose for which counsel is being retained does not rise to the level of conducting the bankruptcy

---

[2]     The Debtors intend to pay MMN for its services rendered and expenses incurred prior to February 1, 2010, in
accordance with the OCP Order.

case for the debtor in possession. *See In re AroChem Corp.*, 176 F.3d 610, 622 (2d Cir. 1999)

(noting that "where the interest of the special counsel and the interest of the estate are identical *with*

*respect to the matter for which special counsel is retained*, there is no conflict and the

representation can stand") (emphasis in original); *In re DeVlieg, Inc.*, 174 B.R. 497 (N.D. Ill.

1994). As explained more fully below, the Debtors submit that each of these factors is satisfied

with respect to MMN and that, therefore, its retention should be approved under section 327(e) of

the Bankruptcy Code.

A.     **The Employment and Retention of**
      **<u>MMN is in the Best Interests of the Estates</u>**

      22.     As described more fully in the Naito Declaration, the Debtors retained MMN

with respect to the Representative Matters pursuant to the procedures set forth in the OCP Order.

MMN has been working on the Representative Matters since that date. As a result, MMN is

intimately familiar with the facts and circumstances surrounding the Representative Matters. The

Debtors believe that the continued employment of MMN as special counsel for the Debtors will

enable the Debtors to avoid the unnecessary expense otherwise attendant to having another law

firm familiarize itself with the relevant matters. For these reasons, the Debtors submit that the

continued employment of MMN is in the best interests of the Debtors, their estates, and their

creditors.

B.     **MMN Holds No Interest Adverse to the Debtors or the Debtors' Estates**
      **<u>With Respect to the Representative Matters</u>**

      23.     To the best of the Debtors' knowledge, and except as may be set forth in the

Naito Declaration, MMN does not represent or hold any interest adverse to the Debtors or their

estates with respect to the matters as to which MMN is to be employed. As described more fully

in paragraph 11 of the Naito Declaration, MMN advises a creditor with respect to its claim against

the Debtors in these chapter 11 cases, however, said services are unrelated to the Representative

Matters for which MMN has been retained by the Debtors.   *See In re AroChem*, 176 F.3d at 622

(emphasizing that, under section 327(e) of the Bankruptcy Code, potential conflicts must be

evaluated only with respect to the scope of the proposed retention).   The Debtors have been

informed that MMN will continue to conduct an ongoing review of its files to ensure that no

disqualifying circumstances arise and, if any new relevant facts or relationships are discovered,

MMN will supplement its disclosure to the Court.

24.     Based on the foregoing and the disclosures set forth in the Naito Declaration,

the Debtors submit that MMN does not hold or represent any interest adverse to the Debtors or the

Debtors' estates with respect to the matters on which MMN is to be employed.

## C.     MMN will not Conduct the Debtors' Bankruptcy Case

25.     By separate applications, the Debtors have sought and obtained the Court's

approval to retain and employ Weil, Gotshal & Manges LLP as the Debtors' general bankruptcy

counsel [Docket No. 1660], and Curtis, Mallet-Prevost, Colt & Mosle LLP as conflicts counsel

[Docket No. 1659].   By contrast, MMN's postpetition work is comprised substantially of the

Representative Matters.   None of these matters involve the conduct of the bankruptcy cases

themselves.   Additionally, because MMN is not serving as the Debtors' general bankruptcy

counsel, the Debtors believe that MMN has not rendered "services . . . in contemplation of or in

connection with the case" within the meaning of section 329(a) of the Bankruptcy Code.

Accordingly, the services rendered and functions to be performed by MMN have not been and will

not be duplicative of any bankruptcy-related work performed by other law firms retained by the

Debtors.   Furthermore, MMN will coordinate with the Debtors' other professionals to ensure that

its services are, to the maximum extent possible, complementary to other professionals' services.

26.     In order to minimize costs, MMN is prepared to work closely with the Debtors and each of their other retained professionals to delineate clearly the professionals' respective duties so as to prevent unnecessary duplication of services whenever possible.

27.     As described above, the Debtors' proposed retention of MMN as special counsel to the Debtors falls squarely within the scope of and purpose for which Congress enacted section 327(e).   As stated above, the Debtors do not believe that MMN holds or represents any interest adverse to the Debtors or their estates with respect to the matters for which MMN is proposed to be retained.   Accordingly, the Debtors submit that the retention of MMN with respect to the Representative Matters is in the best interests of the Debtors, their estates, and their creditors and should be approved by the Court.

## Notice

28.     No trustee has been appointed in these chapter 11 cases.   The Debtors have served notice of this Application in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on: (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; and (v) the United States Attorney for the Southern District of New York.   The Debtors submit that no other or further notice need be provided.

29.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: July 22, 2010
      New York, New York

                                    /s/ Richard P. Krasnow
                                    Richard P. Krasnow
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

### Exhibit A

**Declaration of Junya Naito**



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                          :

**In re**                            :        **Chapter 11 Case No.**

:

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :        **08-13555 (JMP)**

:

         **Debtors.**               :        **(Jointly Administered)**

:

:

------------------------------------------------------------x

## DECLARATION OF JUNYA NAITO ON BEHALF OF
## MOMO-O, MATSUO & NAMBA

JUNYA NAITO, being duly sworn, upon his oath, deposes and says:

        1.       I am a Partner of Momo-o, Matsuo & Namba, located at Kojimachi

Diamond Building 6F, 4-1 Kojimachi, Chiyoda-ku, Tokyo 102-0083, Japan ("MMN").

        2.       I submit this declaration ("Declaration") pursuant to Japanese law,

and in support of the application, dated on or about July 21, 2010 ("Application") (any

capitalized term not defined herein shall have the meaning ascribed to it in the

Application), filed by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors

in the above-referenced chapter 11 cases, as debtors and debtors in possession (together,

the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), seeking

authorization to employ MMN as special counsel to the Debtors effective *nunc pro tunc*

to February 1, 2010, as described in greater detail below and in the Application, and to

provide the disclosures required under Bankruptcy Rules 2014(a).    All facts set forth

below in this Declaration are based upon information from, and discussion I or other

MMN personnel reporting to me have had with, certain members of MMN.   The facts

below are also based on a review performed by the persons within MMN responsible for

maintaining records of our representations, with the assistance of attorneys at MMN, of

the list provided to MMN by Weil, Gotshal and Manges LLP ("WGM"), the Debtors'

general bankruptcy counsel (the "Master Conflicts Checklist").   The Master Conflicts

Checklist sets forth certain of the creditors and other parties in interest (collectively,

"Interested Parties") of the Debtors.   Based on the foregoing, if I were called upon to

testify, I could and would testify competently to the facts set forth herein.   I am

authorized to submit this Declaration on behalf of MMN.


### Services Performed by MMN

3.     The Debtors seek to retain MMN as special counsel pursuant to

section 327(e) of the Bankruptcy Code, *nunc pro tunc* to Febuary 1, 2010, to perform

legal services in connection with matters set forth below and in the Application.   In part,

because of uncertainty as to whether a portion of MMN's compensation was to be

satisfied by the Debtors or certain non-Debtor affiliates, MMN has only recently

discovered its fees and expenses have exceeded the OCP Cap.   Additionally, while

MMN has continued to provide uninterrupted and valuable services to the Debtors and

their estates, they have not received any payments that exceed the OCP Cap.


4.     As an Ordinary Course Professional, MMN has been acting as

attorney for the Debtors including LBHI in the Civil Rehabilitation proceedings for

Lehman Brothers Holdings Japan Inc. ("LBHJ"), Lehman Brothers Commercial

Mortgage Inc. ("LBCM") and Sunrise Finance Inc. ("Sunrise") (those three Civil

Rehabilitation companies are referred to as the "Civil Rehabilitation Companies") at the

Tokyo District Court, Tokyo, Japan ("Japan Matters").    In the Japan Matters, MMN has

maintained close contact with and provided advice to Alvarez & Marsal North America,

LLC, the Debtors' Chief Restructuring Officers, and WGM, the Debtors' general

bankruptcy counsel.

5.    As a result, MMN is intimately familiar with the managers and

counsels for the Civil Rehabilitation Companies and the court-appointed Supervisor

supervising the Civil Rehabilitation proceedings of the three Civil Rehabilitation

Companies.    MMN is also knowledgeable about and familiar with the proceedings of

the Japan Matters and the civil rehabilitation plans submitted by the three Civil

Rehabilitation Companies.    In the case of the Civil Rehabilitation proceedings of LBHJ

and Sunrise, the bank creditors have appealed the Tokyo District Court's approval of the

Civil Rehabilitation Companies' civil rehabilitation plans to the Tokyo High Court

seeking reduced distribution to LBHI and/or its affiliates, and MMN has been defending

LBHI in such appellate proceedings.    Consequently, assigning new counsel at this time

would unduly prejudice the Debtors, their estates, and all parties in interest as a result of

the time and expense necessary to enable counsel other than MMN to become familiar

with the Japan Matters.

6.    For these reasons, appointment of MMN as special counsel will inure to the benefit of the Debtors both in terms of providing our particular expertise as well as in cost savings to the Debtors and their estates.

7.    MMN's work has heretofore been and hereafter will be comprised of continuing to represent the Debtors solely in connection with the Japan Matters. Accordingly, the services rendered and functions to be performed by MMN will not be duplicative of any bankruptcy-related work performed by WGM or any of the other law firms retained by the Debtors.    As a result of the foregoing, I believe that MMN is qualified to represent the Debtors as special counsel pursuant to section 327(e) of the Bankruptcy Code.

8.    Following the Commencement Date, MMN, at the Debtors' request, assisted the Debtors on the Japan Matters as one of the Debtors' Ordinary Course Professionals.    In its capacity as an Ordinary Course Professional, MMN has applied for compensation and expenses in the aggregate amount of JPY98,175,845 as of the date of this Declaration (or USD1,105,268.66; USD1 = JPY88.8253 per market rates on July 12, 2010).    Under this same currency exchange rate, our compensation and expenses exceeded USD1 million in February 2010 when an aggregate amount of JPY90,597,855 was applied for and due MMN.    As noted above, no fees and expenses in excess of the USD1 million OCP Cap has been paid to MMN.

### "Connections" of MMN

9.    To check and clear potential conflicts of interest in these cases, as well as to determine all "connections" to the Debtors, their creditors, other parties in interest, their respective attorneys and accountants, the U.S. Trustee or any person employed by the U.S. Trustee, MMN researched its client database for the past two (2) years to determine whether it had any relationships with the Interested Parties.    To the extent that MMN's research of its relationships with the Interested Parties indicates that MMN has represented in the past two years, or currently represents, any of these entities, the identities of these entities and such entities' relationship to the Debtors and connection to MMN are set forth below in **Schedule 1**.

10.    To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I, nor MMN, nor any partner or associate thereof, has a connection with the Debtors, their creditors, the U.S. Trustee or any other parties with an actual or potential interest in these Chapter 11 cases or their respective attorneys or accountants, except as set forth below in Item 11 and **Schedule 1**.

11.    Further, to the best of my knowledge, MMN does not represent or hold any interest adverse to the Debtors or the Debtors' estates with respect to the Japan Matters.    Contemporaneous to MMN's representation of LBHI in Civil Rehabilitation proceedings at the Tokyo District Court, MMN also advises TV Asahi Corporation ("TVA") in its claim as creditor to LBHI, Lehman Brothers Treasury Co. B.V. and Lehman Brothers Japan, Inc. ("LBJ").    This representation is unrelated to the Japan

Matters for which MMN has been engaged.    TVA's claim is based upon a "Note" in

the amount of JPY1 billion issued by LBJ and guaranteed by LBHI which TVA

purchased from LBJ.    MMN, however, has not represented TVA in its filing of any

Proof of Claim in relation to the Note against LBHI.    Rather, U.S. counsel for TVA has

represented TVA in its filing of any Proof of Claim against LBHI.    Further, MMN has

obtained a consent to such contemporaneous representation from both LBHI and TVA

and it is in compliance with all local laws and/or rules of professional conduct regarding

conflicts of interest.

          12.    The Debtors are a large global enterprise with thousands of parties

in interest.    MMN may (a) from time to time have represented, (b) currently represent,

and (c) in the future represent many entities that are parties in interest in these cases (or

somehow related to parties in interest in these cases) in matters unrelated to that which

the Debtors have retained MMN.

          13.    I understand that the Debtors will retain various professionals

during the pendency of these cases to aid in the prosecution of the Debtors' Chapter 11

cases.    I have been advised that the Debtors have retained, among others, the following

professionals: Baker & McKenzie LLP; Clifford Chance, Davis, Pork & Wardwell,

Ernst & Young, Herbert Smith Ltd.; Jones Day; Morrison & Foerster LLP; and Skadden,

Arps, Slate Meagher & Flom LLP.    Over the past years, attorneys at MMN have

worked with certain of these professionals on various matters, representing either the

same parties, parties with similar interests or parties with adverse interests.

14.    In addition, during the course of the Debtors' Chapter 11 cases, the

Debtors may retain additional or different professionals, not all of which are or can

currently be identified.    Further, the Master Conflicts Checklist does not disclose the

identities of all of the various professionals that have been retained, or are being

considered for retention by the various parties in interest.    Therefore, we are unable to

determine if MMN has a client or other relationship with such as yet unidentified

advisors or their affiliates.    However, I believe it is likely that many of the

professionals who may appear in these cases are trustees, witnesses, advisors or counsels,

as the case may be, in transactions or cases in which MMN also represents a client.

MMN may retain various such professionals or affiliates thereof to provide forensic,

litigation support and financial advisory services to MMN or MMN's clients in a variety

of past, present or future engagements.    Current employees at MMN may be former

employees of, or related to employees of, one of more of the other professionals in this

case.    In addition, attorneys at MMN may belong to professional organizations to

which other professionals who may appear in these cases may also belong.


15.    MMN may also represent, in matters unrelated to the Debtors,

competitors of the Debtors.


16.    It is not my understanding that Bankruptcy Rule 2014(a), or other

applicable law, requires disclosure of each present or future engagement MMN receives

from a party in interest as long as it is unrelated to these cases.    MMN intends to accept

engagements from other parties in interest (whether existing or new clients).   As
described above, MMN has undertaken a detailed search to determine whether it
represents, or has represented in the last two (2) years, any of the Interested Parties listed
on the Master Conflicts Checklist, and the identities of such entities and such entities'
relationship to the Debtors in connection to MMN is set forth herein.   MMN, however,
does not and will not represent any of the Interested Parties with respect to the matters
for which MMN is being retained hereunder.

17.    Despite the efforts described above to identify and disclose
connections with parties in interest in these cases, because the Debtors are a large
enterprise with many creditors and other relationships, MMN is unable to state with
certainty that every client connection of MMN has been disclosed.   In this regard, if
MMN discovers additional information that requires disclosure, MMN will file
supplemental disclosures with the Court.

**Securities Ownership**

18.    Certain individual attorneys at MMN may own, or have beneficial
interest in trusts, owning shares in the Debtors and securities of related entities and may
own shares in other parties in interest.

19.    MMN notes, however, that a large number of the Debtors' debt
and equity securities are held by various mutual funds, trusts and portfolios and accounts
that are managed by various advisors.   MMN does not know the ultimate beneficial

owners of the funds, although it is believed they are widely held.   Similarly, many of

the Debtors' securities are registered in the name of the Depository Trust Company or its

nominee, and securities entitlements to such securities are held through securities

accounts maintained by brokers, investment advisors and other securities intermediaries.

The ultimate owners of the securities entitlements are unknown to MMN, except for

those reported on the Master Conflicts Checklist.   It is possible that some of such

holders may be clients of MMN.


### Various Commercial Relationships with Parties in Interest

20.    Some attorneys at or employees of MMN may receive services

from the Debtors, other parties in interest or professionals involved in these cases.

Attorneys at or other employees at MMN or their spouses or relatives may have

beneficial ownership of securities issued by, or banking, insurance, brokerage or money

management relationships with, other parties in interest.   Attorneys at MMN may have

relatives or spouses who are members of professional firms involved in these cases or

employed by parties in interest.   We have conducted no investigation of our colleagues'

banking, insurance, brokerage or investment activities or familial connections in

preparing this Declaration.


### Fees and Engagement

21.    Upon its retention as special counsel, MMN intends to apply for

compensation for professional services rendered in connection with these Chapter 11

cases subject to approval of the Bankruptcy Court and in compliance with applicable

provisions of the Bankruptcy Code, applicable Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), the Local Bankruptcy Rules for the Southern District of New

York (the "Local Rules"), orders of this Court, and the guidelines promulgated by the

U.S. Trustee, on an hourly basis, plus reimbursement of actual, necessary expenses

incurred by MMN.

22.    MMN's hourly rates and billing policies are based on market

conditions among certain firms of a size, location and practice comparable to MMN.

The current hourly billing rates for MMN professionals expected to spend significant

time on the Japan Matters range from JPY35,000 to 60,000 for partners, JPY30,000 to

35,000 for senior associates, and JPY20,000 to 30,000 for associates.    (Such hourly

rates may change from time to time in accordance with MMN's established billing

practices and procedures.)

23.    The hourly rates set forth above are MMN's standard hourly rates

for work of this nature.    These rates are set at a level designed to fairly compensate

MMN for the work of its attorneys.    It is MMN's policy to charge its clients in all areas

of practice for all other expenses incurred in connection with the client's case.    The

expenses charged to clients include, among others, telephone and facsimile tolls and

other charges, mail and express mail charges, special or hand delivery charges,

document retrieval, photocopying charges, travel expenses, expenses for "working

meals," computerized research, and translation and transcription costs.    The firm will

charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to MMN's other clients.

24.    MMN maintains contemporaneous records of the time expended and out-of-pocket expenses incurred in connection with providing services to its clients in accordance with sections 330 and 331 of the Bankruptcy Code, and applicable Bankruptcy Rules, Local Rules, orders of the Court, and guidelines promulgated by the U.S. Trustee.

25.    MMN recognizes that it will be required to submit applications for interim and/or final allowances of compensation pursuant to sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rules and orders of the Court.    MMN has reviewed the fee application guidelines promulgated by the U.S. Trustee, and will comply with them.

26.    To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I nor MMN, nor any partner or associate thereof, has received or been promised any compensation for legal services rendered or to be rendered in any capacity in connection with the Debtors' Chapter 11 cases, other than as permitted by the Bankruptcy Code.    MMN has not agreed to share compensation received in connection with these cases with a any other person, except as permitted by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016(b) in respect of the sharing of compensation among MMN's partners.

By: 内藤 順也

Junya Naito
Partner
Momo-o, Matsuo & Namba

Subscribed and sworn to before me
this 21st day of ___July___ , 2010

_____
Notary Public  SHOJI MIZOGUCHI

Tokyo Legal Affairs Bureau
NOTARY OFFICE
5-2-1 Kojimachi,Chiyoda-ku,
Tokyo,Japan

平成２２年登簿認証第８２３ﾊﾟﾞ－８　号

認　　　証

　　嘱託人　桃尾・松尾・難波法律事務所（所在　東京都千代田区
麹町四丁目１番地麹町ダイヤモンドビル６階）弁護士　内藤順也
は、本公証人の面前で添付証書に署名した。

よって、これを認証する。
　　平成２２年　７　月　２１日、本公証人役場において
　　東京都千代田区麹町５丁目２番地１
　　　東京法務局所属
　　　公　証　人
　　　　Notary　溝口昭介
　　　　　　SHOJI MIZOGUCHI

証　　　明

　上記署名は、東京法務局所属公証人の署名に相違ないものであり、かつ、その押印は、
真実のものであることを証明する。
　　平成２２年　７　月　２１日

　　東 京 法 務 局 長　　　山舗　弥一郎

---

APOSTILLE
(Convention de La Haye du 5 octobre 1961)

1. Country:　JAPAN
   This public document
2. has been signed by　　SHOJI MIZOGUCHI
3. acting in the capacity of Notary of the Tokyo Legal Affairs Bureau
4. bears the seal/stamp of　　SHOJI MIZOGUCHI , Notary
   Certified
5. at Tokyo　　　　　　　6.　　２１st　July , ２０１０
7. by the Ministry of Foreign Affairs
8. 10- № 036214
9. Seal/stamp:　　　　　　　10. Signature

Kazutovo OYABE
For the Minister for Foreign Affairs

**Schedule 1**

# Relationships with Interested Parties

The following indicates MMN's clients and its relationship with those clients for the last two years.

Largest Unsecured Creditors other than Bondholders
25.     Chuo Mitsui Trust & Banking: representation of lawsuits, providing legal advice
48.     IBM Corporation: providing legal advice
77.     Shinsei Bank Ltd.: providing legal advice
Significant Leases
        Deustche Bank Securities, Inc.: providing legal advice
Secured Creditors
5.      SMBC: providing legal advice
Underwriting Investment Bankers for Debtor's Securities
        Merrill Lynch: providing legal advice
        UBS Investment Bank: providing legal advice
Potential Parties in Interest
23.     Accenture LLP: representation of lawsuits
94.     Allianz: providing legal advice
199.    Autodesk Inc.: representation of lawsuits, providing legal advice
268.    Bank of New York Mellon: providing legal advice
285.    Baushe and Lomb: providing legal advice
534.    Citigroup, Inc.: providing legal advice
616.    Credit Suisse: providing legal advice
637.    Daiwa Securities Capital Markets Co., Ltd.: providing legal advice
676.    Deustche Bank Securities, Inc.: providing legal advice
1170.   IBM: providing legal advice
1203.   ING Group: providing legal advice
1369.   KPMG: providing legal advice
1561.   Merrill Lynch & Co.: providing legal advice
1614.   Mizuho Investors Securities Co., Ltd.: providing legal advice
1706.   Nomura Holdings Inc.: providing legal advice
2004.   Royal Bank of Scotland: providing legal advice
2074.   Shinsei Bank Limited: providing legal advice
2283.   The Chuo Mitsui Trust And Banking Co., Ltd.:
        representation of lawsuits, providing legal advice
2322.   The Walt Disney Company/Disney: providing legal advice
2553.   Wyeth: providing legal advice

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                      :
In re                                                 :           **Chapter 11 Case No.**
                                                      :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,          :           **08-13555 (JMP)**
                                                      :
                         **Debtors.**                 :           **(Jointly Administered)**
                                                      :
-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTION 327(e) OF THE**
**BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT**
**AND RETENTION OF MOMO-O, MATSUO & NAMBA, AS SPECIAL**
**COUNSEL TO THE DEBTORS, *NUNC PRO TUNC TO FEBRUARY 1, 2010***

Upon consideration of the application, dated July 22, 2010 (the "Application"),[1]

of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to

section 327(e) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule

2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-

1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), to

employ and retain Momo-o, Matsuo & Namba ("MMN") as special counsel to the Debtors,

effective *nunc pro tunc to February 1, 2010*, all as more fully described in the Application; and

upon the declaration of Junya Naito (the "Naito Declaration"), filed in support of the

Application; and the Court being satisfied, based on the representations made in the Application

and the Naito Declaration, that MMN represents no interest adverse to the Debtors or the

Debtors' estates with respect to the matters upon which it is to be engaged, under section 327 of

the Bankruptcy Code as modified by section 1107; and the Court having jurisdiction to consider

---

[1]   Capitalized terms that are used but not defined in this order have the meanings ascribed to them in the
Application.

the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334

and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New

York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Application having been provided in

accordance with the procedures set forth in the amended order entered February 13, 2009

governing case management and administrative procedures [Docket No. 2837] to (i) the United

States Trustee for the Southern District of New York; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; and (v) the United States Attorney for the Southern District of New

York, and it appearing that no other or further notice need be provided; and the Court having

found and determined that the relief sought in the Application is in the best interests of the

Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases

set forth in the Application establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefore, it is

ORDERED that the Application is approved; and it is further

ORDERED that pursuant to section 327(e) of the Bankruptcy Code, the Debtors

are hereby authorized to employ and retain MMN as special counsel to the Debtors, effective *nun

pro tunc* to February 1, 2010, on the terms set forth in the Application and this order for the

Representative Matters identified in the Application and in accordance with MMN's customary

rates in effect from time to time and its disbursement policies; and it is further

17

ORDERED that MMN shall, solely with respect to fees and expenses paid to

MMN by the Debtors (as opposed to non-debtor entities) in excess of $1 million, apply for

compensation and reimbursement of expenses in accordance with the procedures set forth in

sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the Local Rules and

orders of the Court, guidelines established by the U.S. Trustee, and such other procedures that

have been or may be fixed by order of this Court, including but not limited to the Court's Third

Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy

Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of

Expenses of Professionals [Docket No. 4165] and the Court's Order Appointing a Fee

Committee and Approving a Fee Protocol [Docket No. 3651].

Dated: August    , 2010
      New York, New York

 

_____
UNITED STATES BANKRUPTCY JUDGE