**Hearing Date and Time: August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  August 11, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,        :    Case No. 08-13555 (JMP)
                                              :
                    Debtors.                  :    (Jointly Administered)
                                              :
------------------------------------------------------------------x
```

**NOTICE OF LEHMAN BROTHERS HOLDINGS INC.'S AND LEHMAN**
**COMMERCIAL PAPER INC.'S MOTION PURSUANT TO BANKRUPTCY RULE 9019**
**TO ENTER INTO THE RELEASE AND TERMINATION OF LOAN AGREEMENT**
**AND OTHER DOCUMENTS WITH TS BOSTON CORE HOLDINGS, L.P.;**
**125 HIGH JUNIOR MEZZ, L.P.; ONE FEDERAL INTERMEDIATE MEZZ, L.P.;**
**ONE FEDERAL JUNIOR MEZZ, L.P.; AND OTHER BORROWER AFFILIATES**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI"), and

their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in

possession (collectively, the "Debtors") for an order, pursuant to Rule 9019 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing LBHI and LCPI to enter into a

Release and Termination of Loan Agreement and Other Documents with TS Boston Core

Holdings, L.P.; 125 High Junior Mezz, L.P.; One Federal Intermediate Mezz, L.P.;

One Federal Junior Mezz, L.P.; and other Borrower Affiliates (as defined in the Motion), will be

held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States

Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green,

New York, New York 10004 (the "Bankruptcy Court"), on **August 18, 2010 at 10:00 a.m.**

**(prevailing Eastern Time)** (the "Hearing").

            PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy

Court for the Southern District of New York, shall set forth the name of the objecting party, the

basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with two hard copies

delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable

James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil,

Gotshal & Manges LLP, 700 Louisiana Street, Houston, Texas 77002, Attn:  Alfredo R. Perez,

Esq., counsel to the Debtors and Debtors-in-Possession; (iii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New

York 10004, Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq.,

Linda Riffkin, Esq., and Tracy Hope Davis; Esq., (iv) Milbank, Tweed, Hadley & McCloy LLP,

1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis

O'Donnell, Esq., and Evan Fleck, Esq., counsel to the official committee of unsecured creditors

appointed in these cases, and (v) all parties who have requested notice in these chapter 11 cases,

so as to be so filed and received by no later than August 11, 2010 at 4:00 p.m. (prevailing

Eastern Time) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 27, 2010
   Houston, Texas

      /s/ Alfredo R. Pérez     
      Alfredo R. Pérez
      WEIL, GOTSHAL & MANGES LLP
      700 Louisiana Street, Suite 1600
      Houston, Texas  77002
      Telephone: (713) 546-5000
      Facsimile: (713) 224-9511

      Attorneys for Debtors
      and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
: 
**In re**                                                            :          Chapter 11 Case No.
                                                                     :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :          **08-13555 (JMP)**
                                                                     :
                                    **Debtors.**                :          **(Jointly Administered)**
                                                                     :
-------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND LEHMAN
COMMERCIAL PAPER INC. PURSUANT TO BANKRUPTCY RULE 9019 TO
ENTER INTO RELEASE AND TERMINATION OF LOAN AGREEMENT AND
OTHER DOCUMENTS WITH TS BOSTON CORE HOLDINGS, L.P.;
125 HIGH JUNIOR MEZZ, L.P.; ONE FEDERAL INTERMEDIATE MEZZ, L.P.;
ONE FEDERAL JUNIOR MEZZ, L.P.; AND OTHER BORROWER AFFILIATES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

                  Lehman Brothers Holdings Inc. ("LBHI") and its affiliate, Lehman Commercial

Paper Inc. ("LCPI"), as debtors and debtors in possession (together with their affiliated debtors

in the above-referenced chapter 11 cases, the "Debtors" and, collectively with their non-debtor

affiliates, "Lehman"), move, pursuant to Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for authority to enter into that certain Release and

Termination of Loan Agreement and Other Documents (the "Release Agreement")[1] with TS

_____

[1] A copy of the form of Release Agreement is attached hereto as Exhibit A.  As explained herein, due to the
commercially sensitive nature of the Payoff Amount (as defined below) in the Release Agreement, it has been

Boston Core Holdings, L.P.; 125 High Junior Mezz, L.P.; One Federal Intermediate Mezz, L.P.;

One Federal Junior Mezz, L.P.; and other Borrower Affiliates (as defined in the Release

Agreement), and respectfully represent:

## **Preliminary Statement**

1.        LBHI and LCPI seek approval of entry into the Release Agreement, which

would release LBHI and LCPI's interests in a potentially out-of-the-money junior mezzanine

loan position that is collateralized by an office building in downtown Boston, Massachusetts in

return for, among other things, (i) a cash payment that is less than the balance owed on the loan

(the "Payoff Amount"), (ii) a full borrower release of LBHI and LCPI's obligations to fund

certain unfunded commitments totaling $55 million on that office building and a neighboring

building, and (iii) release of all claims by these borrowers – including two proofs of claims filed

in the Debtors' bankruptcy cases (as more fully described in the Release Agreement).

2.        The borrowers that will be providing releases and the joint venture that

will provide the Payoff Amount for LCPI's mezzanine loan position are entities related to

Tishman Speyer Properties, a commercial real estate management firm.  After significant good

faith and arm's-length negotiating sessions, LBHI and LCPI have entered into the Release

Agreement, subject to the Court's approval.

3.        As explained herein, LCPI purportedly sold a 100% participation in this

junior mezzanine position to RACERS (as defined below).  Pursuant to the Court's order

authorizing a collateral disposition agreement and certain related transactions, LBHI is the

current holder of all the RACERS securities, and believes that it has the power to make decisions

with respect to the assets, including the release of any collateral securing an obligation in which

---

redacted.  LBHI and LCPI will disclose the Payoff Amount in chambers or provide a copy for in camera review.
The Official Committee of Unsecured Creditors and their professionals are aware of the Payoff Amount.

RACERS has a purported interest.  As a part of the Release Agreement, LCPI is required to provide a limited indemnity, as further explained below, to certain counterparties to the Release Agreement from, among other things, losses resulting from claims made by RACERS or any party with an interest in, through, or under RACERS (i) asserting that such party holds or controls a direct or indirect legal or beneficial interest in LCPI's junior mezzanine loan position, or (ii) challenging the authority or right of LCPI to accept the Payoff Amount and enter into the Release Agreement.

4.     Based on the commercially sensitive nature of this transaction, LBHI and LCPI have redacted the Payoff Amount in the Release Agreement.  However, because of the relative benefit to their estates, i.e. receiving a cash payment, obtaining a release from funding two currently unfunded loans totaling $55 million, and withdrawal of two unliquidated proofs of claim filed in these bankruptcy cases, it is LBHI and LCPI's business judgment that entering into the Release Agreement is in the best interests of their estates, creditors, and all economic stakeholders.

## Relief Requested

5.     By this Motion, LBHI and LCPI seek, pursuant to Bankruptcy Rule 9019, authorization of entry into the Release Agreement.  A proposed order granting the relief requested is attached hereto as "Annex A."

## Jurisdiction

6.     This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## **Background**

7.        Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.        On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

9.        On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

10.        On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. The Examiner issued a report at his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

11.        On April 14, 2010, the Debtors filed a revised joint chapter 11 plan and disclosure statement [Docket Nos. 8330 and 8332].

## Lehman's Business

12.     Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

13.     Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## The Released Loans[2]

*A.     The One Fed Related Loans*

14.     On June 1, 2006, LBHI, as a lender, made an acquisition loan of $373,500,000 (the "Acquisition Loan") to certain of the One Fed Entities (as collectively listed in the Release Agreement, the "One Fed Borrowers"), each as a borrower, that was collateralized by an office building ("One Fed") known as One Federal Plaza in downtown Boston, Massachusetts.

15.     The Acquisition Loan was subsequently partitioned into a $262,000,000 securitized mortgage, a $49,000,000 senior mezzanine loan, a $62,500,000 intermediate mezzanine loan (the "Mezz B Loan"), and a $25,000,000 unfunded junior mezzanine loan (the "Junior Mezz Loan").

---

[2] Each description and/or summary of a provision in the Release Agreement is qualified in its entirety by the Release Agreement.  To the extent a description or summary contained in this Motion conflicts with the terms of the Release Agreement, the Release Agreement shall govern.

16.     The Mezz B Loan was subsequently subdivided into two parts, a $35,000,000 senior note (the "Mezz B Senior Note"), and a $27,500,000 junior note (the "Mezz B Junior Note").  On May 6, 2010, the Mezz B Senior Note was sold to a third party entity at a discount to its par value, while LCPI remains the lender of record with respect to the Mezz B Junior Note (subject to the purported interest of RACERS) and, as such, is currently the controlling lender with respect to the Mezz B Loan.

17.     Although debt service payments relating to the Acquisition Loan are current, the Debtors believe that certain lease rollovers over the next nine months may potentially create debt service shortfalls that may force LBHI and LCPI, pursuant to provisions in the applicable underlying loan documents, to either (i) purchase the Mezz B Senior Note, or (ii) be replaced as the controlling lender with respect to the Mezz B Loan.  Upon being replaced as the controlling lender with respect to the Mezz B Loan, LBHI and LCPI may face foreclosure and lose their rights based on their status as holder of the Mezz B Junior Note.

B.     *The 125 High Street Related Loans*

18.     On July 31, 2006, LBHI, as a lender, made a $365,000,000 mortgage loan, a $82,000,000 mezzanine A loan, a $82,000,000 mezzanine B loan, and a $30,000,000 unfunded mezzanine C loan (the "125 Mezz C Loan"), to certain special purpose entities (as collectively listed in the Release Agreement, the "125 Borrowers"), each as a borrower.  Each of these loans were secured by a property ("125 High Street") located at 125 High Street in downtown Boston, Massachusetts.

19.     Subsequently, LBHI transferred its interest in all such loans, except LBHI's interest with respect to the 125 Mezz C Loan.

C.      *The Release Agreement*

20.      Beginning in June 2010, representatives of TS Boston Core Holdings, L.P. (the "Joint Venture") approached LBHI and LCPI seeking to purchase LCPI's interest in the Mezz B Junior Note.  Following arm's-length and good faith negotiations, the Joint Venture, the Borrowers, other Borrower Affiliates, LBHI, and LCPI have each entered into the Release Agreement, subject to the Court's approval.

21.      Pursuant to the Release Agreement, LBHI and LCPI shall, among other things, release all of their interest in the collateral securing the Mezz B Junior Loan, the Junior Mezz Loan, and the 125 Mezz C Loan in exchange for (i) the Payoff Amount, (ii) a release of any and all claims held by the Borrowers and other Borrower Affliates, including claims relating to the unfunded Junior Mezz and 125 Mezz C Loans, and (iii) withdrawal of unliquidated Proofs of Claim Nos. 27387 and 27389 (the "Proofs of Claim") filed by 125 High Junior Mezz, L.P. and One Federal Junior Mezz, L.P., respectively.

22.      In addition to releasing any interest in the collateral securing its Mezz B Junior Loan, pursuant to the Release Agreement, LCPI will provide a limited indemnity solely for the purposes of defending and holding harmless the Borrower Affiliates (as defined in the Release Agreement) from and against any and all loss, liabilities, damages, claims, costs and expenses (including without limitation, attorneys' fees and disbursements) arising out of, resulting from, or associated in any way with a claim made by RACERS or any party with an interest in, through, or under RACERS, (i) asserting such party holds or controls a direct or indirect legal or beneficial interest in the Mezz B Junior Note, (ii) challenging the authority or right of LCPI to enter into the Release Agreement, perform any of its respective obligations

thereunder, or otherwise consummate the transactions contemplated thereunder, or (iii) otherwise related to the Mezz B Junior Note, this Release or the transactions contemplated thereby.

23.    The limited indemnity being provided by LCPI will not be effective unless all of the transactions contemplated by the Release Agreement occur on or before the Closing Date (as defined in the Release Agreement).

## LBHI's Authority Over the RACERS Trusts

A.    *The RACERS Trusts*

24.    On August 23, 2007 the Restructured Asset Securities with Enhanced Returns Series 2007-A Trust (the "RACERS A Trust") and 2007-7-MM Trust (the "RACERS MM Trust" and, together with the RACERS A Trust, "RACERS"), special purpose securitization vehicles, were established in order to issue securities to finance a portfolio of corporate loans, mortgage loans and equity interests (collectively, the "Collateral").

25.    While LCPI remains the lender of record with respect to the Mezz B Junior Note, it purportedly sold a 100% participation interest in it[3] to RACERS and, as a result, LCPI's interest in the Mezz B Junior Note may be legally or beneficially under the purported indirect control of RACERS.

26.    The RACERS A Trust and the RACERS MM Trust are constituted and governed by certain transaction documents (the "RACERS Transaction Documents"), including that certain Security and Control Agreement dated as of August 23, 2007 pursuant to which RACERS A Trust pledged all of its right title and interest in the Collateral to U.S. Bank, National Association (the "RACERS Collateral Agent") as the collateral agent for the secured parties under the RACERS Transaction Documents.

---

[3] Lehman's records are unclear as to the exact interests purportedly participated to RACERS and the rights of all parties, including all Debtors, are preserved with respect to these issues.

27.    As a result of certain transactions set forth below, LBHI became the holder of the RACERS MM Notes and direct or indirect holder of the equity interests in the Trusts, and, as such, LBHI is entitled to direct RACERS and the RACERS Collateral Agent to take action not specifically permitted by the RACERS Transaction Documents, including the release of any collateral securing an obligation in which RACERS has a purported interest.

B.    *The RACERS Transactions*

28.    The RACERS A Trust issued notes to the RACERS MM Trust.  The notes in the RACERS MM Trust (the "RACERS MM Notes") were later pledged to JPMorgan Chase Bank, N.A. or its affiliate, subsidiary, or related entity (collectively, "JPMorgan") as collateral.

29.    On March 16, 2010, JPMorgan and LBHI (and certain of its affiliates and subsidiaries) entered into that certain Collateral Disposition Agreement (the "CDA"), pursuant to which LBHI succeeded to any and all alleged liens of JPMorgan as against certain collateral, including, among other things, the RACERS MM Notes, and such liens were transferred to LBHI as a result of LBHI provisionally satisfying certain claims JP Morgan purportedly had against LBI and LBHI and certain of its affiliates and subsidiaries.  The Court approved the CDA on March 17, 2010, and the transactions under the CDA were completed on March 31, 2010. Accordingly, LBHI is the current holder of the RACERS MM Notes and has the power to direct the management of the underlying assets.

C.    *Court Approval*

30.    LBHI and LCPI are seeking court approval to enter into the Release Agreement, which provides for a limited indemnity to certain Borrower Affiliates (as defined in the Release Agreement) for certain losses to the extent that RACERS or any other party challenges the authority or right of LCPI to enter into the Release Agreement.

## The Court Should Authorize LBHI and LCPI
## to Enter into the Release Agreement

31.     The Debtors submit that the Release Agreement is in the Debtors' best

interest.  Without entry into the Release Agreement, LCPI may face a potential foreclosure and a

loss of their rights in the Mezz B Junior Note.  Accordingly, LBHI and LCPI seek authority,

pursuant to Bankruptcy Rule 9019, to enter into the Release Agreement.  Bankruptcy Rule 9019

provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing,

the court may approve a compromise or settlement."  FED. R. BANKR. P. 9019(a).  This rule

empowers bankruptcy courts to approve settlements "if they are in the best interests of the

estate."  *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert

Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  A decision to accept or reject a

compromise or settlement is within the sound discretion of the Court.  *Id*.  The settlement need

not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point

in the range of reasonableness."  *Id*.

32.     Bankruptcy courts have applied the following factors in determining

whether a settlement should be approved: (i) the probability of success in litigation, with due

consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the

litigation and any attendant expense, inconvenience, and delay; (iii) the proportion of creditors

who do not object to, or who affirmatively support, the proposed settlement; and (iv) the extent

to which the settlement is truly the product of arm's-length bargaining and not the product of

fraud or collusion.  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.

Anderson*, 390 U.S. 414, 424 (1968) ("There can be no informed and independent judgment as to

whether a proposed compromise is fair and equitable until the bankruptcy judge has appraised

himself of all facts necessary for an intelligent and objective opinion of the probabilities of

ultimate success should the claim be litigated."); *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 804

(Bankr. S.D.N.Y. 1998); *In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994).

33.      When considering a transaction outside the ordinary course of business,

courts in the Second Circuit, and others, require that such transaction be based upon the sound

business judgment of the debtor.  *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel*

*Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143

(2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v.*

*Schipper (In Re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l*

*Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir.

1986).

34.      It is generally understood that "[w]here the debtor articulates a reasonable

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville*

*Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is

a strong presumption that "the directors of a corporation acted on an informed basis, in good

faith and in the honest belief that the action taken was in the best interests of the company."  *In*

*re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488

A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting

this presumption falls to parties opposing the proposed exercise of a debtor's business judgment.

*Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

35.      The Debtors believe that near-term rollover of the lessees at One Fed may,

potentially, create debt service shortfalls that may require LCPI to either (i) purchase the Mezz B

Senior Note, or (ii) risk losing its status as controlling lender.[4]  Such a loss in LCPI's status may

lead to a foreclosure the Mezz B Junior Note and a loss of LCPI's interest in One Fed.

Accordingly, it is the sound business judgment of the Debtors that the relief requested herein

presents a better alternative and is in the best interests of LBHI and LCPI because it provides

them, among other things, the Payoff Amount for the Mezz B Junior Note, a release from

funding approximately $55 million in unfunded loans, and a withdrawal of the Proofs of Claim.

**Redaction of Commercially Sensitive Information
in the Release Agreement is Proper**

36.     LBHI and LCPI submit that the Payoff Amount contained in the Release

Agreement represents commercially sensitive information that should be protected pursuant to

section 107(b) of the Bankruptcy Code, and Bankruptcy Rule 9018.

37.     Specifically, section 107(b) provides:

> On request of a party in interest, the bankruptcy court shall,
> and on the bankruptcy court's own motion, the bankruptcy
> court may –

> (l) protect an entity with respect to a trade secret or
> confidential research, development, or commercial
> information . . .

11 U.S.C. § 107(b)(1).  Further, Bankruptcy Rule 9018 states:

> On motion or on its own initiative, with or without notice,
> the court may make any order which justice requires ... to
> protect the estate or any entity in respect of a trade secret or
> other confidential research, development, or commercial
> information . . .

FED. R. BANKR. P. 9018.  Together, section 107(b) of the Bankruptcy Code and Bankruptcy Rule

9018 operate to ensure that a debtor need not choose between involuntary disclosure of vital

---

[4] LCPI could purchase the Mezz B Senior Note and retain its status as controlling lender, however it is the Debtors'
business judgment that such an investment is not the most financially attractive option.

business information and the availability of bankruptcy relief.  <u>Video Software Dealers Assoc. v.</u>

<u>Orion Pictures Corp. (In re Orion Pictures Corp.)</u>, 21 F.3d 24, 27 (2d Cir. 1994).

38.     In granting relief under section 107(b) of the Bankruptcy Code, a

bankruptcy court is required to protect confidential commercial information.  "Commercial

information" is defined as "information which would cause an unfair advantage to competitors

by providing them information as to the commercial operations of the debtor."  <u>In re Orion</u>

<u>Pictures Corp.</u>, 21 F.3d at 27.

39.     Filing a public document disclosing the exact amount LCPI receives in

exchange for its interest in the Mezz B Junior Note may create a ceiling for recovery during

future negotiations with entities hoping to obtain LCPI's positions in other secured loans.  In

order to ensure that LBHI and LCPI obtain the benefits provided to them in the Release

Agreement, the Court should permit the redaction of the amounts contained in the Release

Agreement pursuant to section 107(b) and Bankruptcy Rule 9018.

<u>**Reservation of Rights**</u>

40.     The Debtors request that nothing contained herein be deemed to be a

waiver or the relinquishment of any rights, claims, interests, obligations, benefits, or remedies of

LBHI, LCPI, or any of the Debtors or their non-debtor affiliates except as otherwise expressly

provided in this Motion, that any of the Debtors or non-debtor affiliates may have or choose to

assert on behalf of their respective estates under any provision of the Bankruptcy Code or any

applicable non-bankruptcy law, including against each other or third parties.  Additionally, the

parties seek authorization to execute such further documentation necessary to reflect this

reservation of rights.

## **Notice**

41.     No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Motion in accordance with the procedures set forth in the amended

order entered on June 17, 2010 governing case management and administrative procedures for

these cases [Docket No. 9635] on (i) the Office of the United States Trustee for the Southern

District of New York; (ii) the attorneys for the Statutory Committee of Unsecured Creditors

appointed in these cases; (iii) the Securities and Exchange Commission; (iv) the Internal

Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the

attorneys for each counterparty to the Release Agreement; (vii) the attorneys for the RACERS

Collateral Agent; and (vii) all parties who have requested notice in these chapter 11 cases.  No

other or further notice need be provided.

42.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: July 27, 2010
      Houston, Texas

                                   /s/ Alfredo R. Pérez
                                   Alfredo R. Pérez

                                   WEIL, GOTSHAL & MANGES LLP
                                   700 Louisiana, Suite 1600
                                   Houston, TX 77002
                                   Telephone: (713) 546-5040
                                   Facsimile: (713) 224-9511

                                   Attorneys for Debtors
                                   and Debtors in Possession

**<u>Exhibit A</u>**


**(Redacted Form of Release Agreement)**

## RELEASE AND TERMINATION OF
## LOAN AGREEMENT AND OTHER LOAN DOCUMENTS

## (ONE FEDERAL INTERMEDIATE MEZZANINE AND JUNIOR MEZZANINE LOANS AND 125 HIGH JUNIOR MEZZANINE LOAN)

THIS **RELEASE AND TERMINATION OF LOAN AGREEMENT AND OTHER LOAN DOCUMENTS** (this "**Release**") is made as of July __, 2010 (the "**Effective Date**"), by and among LEHMAN BROTHERS HOLDINGS INC., d/b/a LEHMAN CAPITAL, a division of LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**") and LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**", together with LBHI, collectively "**Lender**"), ONE FED NOTE A ACQUISITION, L.L.C., a Delaware limited liability company ("**One Fed Mezz B Co-Lender**"), ONE FEDERAL, L.P., a Delaware limited partnership ("**One Fed Mortgage Borrower**"), ONE FEDERAL SENIOR MEZZ, L.P., a Delaware limited partnership ("**One Fed Senior Mezz Borrower**"), ONE FEDERAL INTERMEDIATE MEZZ, L.P., a Delaware limited partnership ("**One Fed Mezz B Borrower**"), ONE FEDERAL JUNIOR MEZZ, L.P., a Delaware limited partnership ("**One Fed Junior Mezz Borrower**; together with all other borrowers under the Acquisition Loan (as defined below), the "**One Fed Borrower**"), 125 HIGH STREET, L.P., a Delaware limited partnership ("**125 Mortgage Borrower**"; together with all other borrowers under the 125 Loans, the "**125 Loan Borrowers**"), 125 HIGH SENIOR MEZZ, L.P., a Delaware limited partnership ("**125 Mezz A Borrower**"), 125 HIGH INTERMEDIATE MEZZ, L.P., a Delaware limited partnership ("**125 Mezz B Borrower**"), 125 HIGH INTERMEDIATE-2 MEZZ, L.P., a Delaware limited partnership ("**125 Mezz B-2 Borrower**"), 125 HIGH JUNIOR MEZZ, L.P., a Delaware limited partnership ("**125 Borrower**"; together with the One Fed Mezz B Borrower and the One Fed Junior Mezz Borrower, the "**Borrowers**"), HENLEY HOLDING COMPANY, a Cayman Islands corporation ("**Henley Guarantor**"), TISHMAN SPEYER CROWN EQUITIES LLC, a Delaware limited liability company ("**TSCE Guarantor**"; together with Henley Guarantor, the "**Guarantors**"); TS BOSTON CORE HOLDINGS, L.P., a Delaware limited partnership (the "**Joint Venture**"; together with One Fed Mezz B Co-lender, One Fed Borrower, 125 Loan Borrowers and Guarantors, collectively referred to herein as the "**Borrower Affiliates**").

## W I T N E S S E T H:

WHEREAS, LBHI made an acquisition loan in the amount of $373,500,000 ("**Acquisition Loan**") to One Fed Mortgage Borrower, pursuant to that certain Loan Agreement dated June 1, 2006, by and between LBHI, as lender and One Fed Mortgage Borrower, as borrower;

WHEREAS, the Acquisition Loan was collateralized by, among other things, an office building known as One Federal Plaza, Boston, Massachusetts ("**One Fed**");

WHEREAS, the Acquisition Loan was subsequently partitioned into a $262,000,000 securitized mortgage ("**Mortgage**"), a $49,000,000 senior mezzanine loan ("**Mezz A Loan**"), a $62,500,000 intermediate mezzanine loan ("**Mezz B Loan**") and a $25,000,000 unfunded junior mezzanine loan ("**Junior Mezz Loan**");

**WHEREAS**, the Mezz B Loan was subsequently divided into two parts, a $35,000,000 senior note currently held by One Fed Mezz B Co-lender (the "**Mezz B Senior Note**") and a $27,500,000 junior note currently held by LCPI by way of assignment from Capital Trust, Inc. ("**Capital Trust**") by way of assignment from LBHI (the "**Mezz B Junior Note**");

**WHEREAS**, on July 31, 2006, LBHI made a $365,000,000 mortgage loan ("**125 Mortgage**"), an $82,000,000 mezzanine A loan ("**125 Mezz A Loan**"), an $82,000,000 mezzanine B loan ("**125 Mezz B Loan**") and a $30,000,000 unfunded mezzanine C loan ("**125 Mezz C Loan**"; together with the 125 Mortgage, the 125 Mezz A Loan, and the 125 Mezz B Loan, the "**125 Loans**") secured by, among other things, a property located at 125 High Street, Boston, Massachusetts ("**High Street**", together with One Fed, the "**Property**");

**WHEREAS**, LBHI subsequently transferred its interests in and rights to all the 125 Loans except with respect to the 125 Mezz C Loan;

**WHEREAS**, in connection with the Released Loans (as defined below) (i) TSCE Guarantor executed that certain Intermediate Amended and Restated Mezzanine Guaranty dated June 21, 2006 in favor of LBHI, (ii) One Fed Mezz B Borrower executed that certain Intermediate Mezzanine Environmental Indemnity Agreement dated June 1, 2006 in favor of LBHI, (iii) Henley Guarantor and TSCE Guarantor executed that certain Junior Mezzanine Guaranty Agreement dated June 1, 2006 in favor of LBHI; (iv) One Fed Junior Mezz Borrower executed that certain Junior Mezzanine Environmental Indemnity dated June 1, 2006 in favor of LBHI, and (v) 125 Borrower executed that certain Mezzanine C Environmental Indemnity Agreement dated July 31, 2006 in favor of LBHI (each of the documents referred to in clauses (i) and (iii), as the same may have been amended, modified or restated, individually, a "**Guaranty**", and collectively, the "**Guarantees**"; each of the documents referred to in clauses (ii), (iv) and (v), as the same may have been amended, modified or restated, individually, an "**Environmental Indemnity**" and collectively, the "**Environmental Indemnities**");

**WHEREAS**, the Lender has agreed to (i) release all of its interests in the collateral (the "**Borrowers' Collateral**") securing the Mezz B Junior Note, the Junior Mezz Loan and the 125 Mezz C Loan (collectively, the "**Released Loans**"), and release Borrowers and Guarantors from the liens of the Loan Agreements, Guarantees and the other Loan Documents (other than as set forth in Section 3 below), and (ii) terminate the Released Loans, the Loan Agreements (as defined below), the Co-lender Agreement (as defined below) and the other Loan Documents (other than as set forth in Section 3 below) in consideration for payment in the amount of $XXXXXXXXXX (the "**Payoff Amount**") by the Joint Venture to Lender; and

**WHEREAS**, the Joint Venture is an indirect owner of the Borrowers and will derive a benefit from the execution of this Release. All capitalized terms used, but not defined, herein shall have the meaning ascribed to them as follows: (A) as to the Mezz B Loan, that certain Intermediate Mezzanine Loan Agreement, dated June 1, 2006 by and between LBHI, as lender and One Fed Mezz B Borrower, as borrower (as amended, modified, restated and/or assigned, the "**Mezz B Loan Agreement**"), (B) as to the Junior Mezz Loan, that certain Mezzanine C Loan Agreement, dated July 31, 2006 by and between LBHI, as lender and One Fed Junior Mezz Borrower, as borrower (as amended, modified, restated and/or assigned, the "**Junior Mezz Loan Agreement**"), and (C) as to the 125 Mezz C Loan, that certain Amended And Restated Mezzanine

C Loan Agreement, dated September 27, 2006 by and between Lender, as lender and 125 Mezz C Borrower, as borrower (as amended, modified, restated and/or assigned, the "**125 Mezz C Loan Agreement**"; together with the Mezz B Loan Agreement and the Junior Mezz Loan Agreement, the "**Loan Agreements**").

      **NOW, THEREFORE**, in consideration of the sum the of One Thousand ($1,000) Dollars and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, Lender and Borrowers hereby covenant, agree, represent and warrant as follows:

1. **Incorporation of Recitals**. The foregoing recitals are hereby incorporated herein by reference and are expressly acknowledged and agreed to by the parties hereto.

2. **Representations**.

    (a) Lender Representations.

      (i) LCPI hereby represents and warrants, as of the date hereof and on and as of the Closing Date (as hereinafter defined), that:

      (A) LCPI owns a one hundred percent (100%) interest in the Mezz B Junior Note;

      (B) LCPI is a corporation duly organized, validly existing and in good standing under the laws of Delaware;

      (C) subject to Bankruptcy Court Approval (as defined below), LCPI (I) has the full power and authority to enter into and consummate the transactions contemplated by this Release, (II) is authorized to execute, deliver and perform its obligations this Release, and (III) the person or persons signing this Release on behalf of LCPI have been duly authorized to sign this Release on behalf of LCPI;

      (D) subject to Bankruptcy Court Approval, all actions (including, without limitation, all internal consents or approvals and any third party consents or approvals necessary to authorize the execution, delivery, and performance of this Release on behalf of LCPI have been duly taken, and all such actions continue in full force and effect as of the date hereof;

      (E) subject to Bankruptcy Court Approval, there are no conditions precedent to the effectiveness of this Release as against LCPI that have not been satisfied or waived; and

      (F) to its actual knowledge without any inquiry, the only written notices delivered to Borrower and/or Borrower Affiliates regarding any assignment of the Mezz B Junior Note are the notices reflecting (1) LBHI's assignment to Capital Trust and (2) Capital Trust's assignment to LCPI.

      The representations and/or warranties made by LCPI in clauses (A), (C)(I) and (II), (D), and (E) of this Section 2(a) are subject in all respects to any and all rights and/or interests held by or consent and/or approval rights that Restructured Asset Securities with Enhanced Returns, Series 2007-A Trust ("**RACERS**") and/or parties with an interest therein may have with respect to the Mezz B Junior Note, without LCPI in any way acknowledging or agreeing that RACERS and/or any such party has any rights, interests, consent and/or approval rights whatsoever with respect to the Mezz B Junior Note.

(ii) LBHI hereby represents and warrants, as of the date hereof and on and as of the Closing Date, that:

    (A) LBHI owns a one hundred percent (100%) interest in the Junior Mezz Loan and the 125 Mezz C Loan;

    (B) LBHI is a corporation duly organized, validly existing and in good standing under the laws of Delaware;

    (C) subject to Bankruptcy Court Approval, LBHI has the full power and authority to enter into and consummate the transactions contemplated by this Release, is authorized to execute, deliver and perform its obligations under this Release, and the person or persons signing this Release on behalf of LBHI have been duly authorized to sign this Release on behalf of LBHI;

    (D) subject to Bankruptcy Court Approval, all actions (including, without limitation, all internal consents or approvals and any third party consents or approvals) necessary to authorize the execution, delivery, and performance of this Release on behalf of LBHI have been duly taken, and all such actions continue in full force and effect as of the date hereof; and

    (E) subject to Bankruptcy Court Approval, there are no conditions precedent to the effectiveness of this Release as against LBHI that have not been satisfied or waived.

    (b) Borrower Affiliate Representations. Each Borrower Affiliate hereby represents and warrants as to itself only, and not as to any other Borrower Affiliate, as of the date hereof and on and as of the Closing Date, that: (i) after giving effect to this Release, there are no loans outstanding nor any other indebtedness in connection with or secured by One Fed (or any property or assets thereon or therein owned by any Borrower Affiliate or any proceeds thereof) other than the Mortgage, the Mezz A Loan, equipment leases and trade payables incurred in the ordinary course of business, (ii) each Borrower Affiliate is a corporation, limited liability company, or limited partnership, as applicable, duly organized, validly existing and in good standing under the laws of Delaware, or the Cayman Islands, as applicable, (iii) each Borrower Affiliate has the full power and authority to enter into and consummate the transactions contemplated by this Release, is authorized to execute, deliver and perform this Release, and the person or persons signing this Release on behalf of each Borrower Affiliate has been duly authorized to sign this Release on behalf of Borrower Affiliate, (iv) all actions (including, without limitation, all internal consents or approvals and any third party consents or approvals) necessary to authorize the execution, delivery, and performance of this Release on behalf of each Borrower Affiliate have been duly taken, and all such actions continue in full force and effect as of the date hereof, and (v) there are no conditions precedent to the effectiveness of this Release as against each Borrower Affiliate that have not been satisfied or waived.

    3. **Covenants; Closing Conditions; Closing.**

    (a)      During the period from the Effective Date until the Closing Date:

        (i)      Lender shall promptly file a motion, in the form annexed hereto as Exhibit A, seeking bankruptcy court approval to enter into this Release, and thereafter use reasonable efforts to diligently pursue the bankruptcy court's approval of such motion. Lender shall promptly notify the Borrower Affiliates in writing of

the filing of such motion, and deliver a true, correct and complete copy thereof to the Borrower Affiliates, and shall promptly notify the Borrower Affiliates in writing of the approval or disapproval thereof by the bankruptcy court, and shall keep the Borrower Affiliates reasonably apprised of the status of such motion.

(ii)   Lender shall not (and shall cause its affiliates to not) take any action or omit to any action that would cause any of the representations and warranties of LCPI, LBHI or Lenders not to be true, correct, and complete in all material respects.

(b)     The Joint Venture's obligation to pay LCPI the Payoff Amount on the Closing Date and otherwise effectuate the Closing hereunder is expressly conditioned upon:

(i)     all of the representations and warranties of LCPI and LBHI being true, correct and complete in all material respects on and as of the Closing Date without any qualification related to Bankruptcy Court Approval;

(ii)    compliance in all material respects by Lender with its obligations under Section 3(a); and

(iii)   the bankruptcy court entering a final, nonappealable order approving Lender's entry into this Release ("**Bankruptcy Court Approval**").

(c)     Subject to the satisfaction of the conditions precedent set forth above, the Joint Venture shall pay LCPI the Payoff Amount within three (3) business days after receipt of written notice from Lender that all conditions precedent in Section 3(b) have been satisfied.  The date upon which the Payoff Amount is paid shall be referred to herein as the "**Closing Date**", and the closing of the transactions contemplated hereby on the Closing Date shall be referred to herein as the "**Closing**".  On the Closing Date, the Closing shall be deemed to have occurred for all purposes, and any and all acts, releases, and other matters specified herein to be effective on the Closing Date shall be deemed effective automatically without any further action.

(d)     If the Closing has not occurred prior to September 30, 2010 this Release shall be null and void and of no further force or effect and no party shall have any further rights or obligations hereunder, provided, that to the extent there is a default hereunder, the non-defaulting party shall have the right to pursue any and all remedies provided at law or in equity with respect to such default.

(e)     In the event the Closing occurs, One Fed Mezz B Borrower shall have no obligation to pay interest in connection with the Mezz B Junior Note from the Payment Date (as defined in the Mezz B Loan loan documents) immediately prior to the Closing Date through the Closing Date.

4.   **Release of Borrowers and Termination of Loan Agreements and Other Loan Documents**.  On and as of the Closing Date, subject to payment of the Payoff Amount, the Lender shall automatically and without any further action, be deemed to have (a) forever fully released, acquitted, waived, settled, and discharged the Borrower Affiliates from any and all claims, counterclaims, liabilities, damages, defenses, demands and causes of action, obligation or duty under the Loan Documents that the Lender has or may have against any of the Borrower Affiliates, their officers, directors, members, partners, managers, advisors, trustees, agents, employees, attorneys, successors and assigns, whether or not acting in their official capacity with respect to any of the Borrower Affiliates, in their personal capacity or in any

other capacity, related to or that may have arisen, may arise or are or become assertable in connection with the Released Loans and the Loan Documents, (b) forever released and discharged the Borrowers' Collateral from the lien of the Loan Agreements and the other Loan Documents, and (c) terminated the Released Loans, the Loan Agreements and the other Loan Documents. Notwithstanding the foregoing, subject to Section 2.5 of each Environmental Indemnity (for which purpose the Debt shall be deemed repaid in full as of the Closing Date), Lender hereby retains its rights and remedies against the applicable Borrowers under the applicable Environmental Indemnities as to any of their respective obligations or liabilities arising thereunder (collectively, the **"Surviving Liabilities"**). For the avoidance of doubt, the provisions of this <u>Section 4</u> shall not be effective unless and until the Closing shall have occurred.

5. **No Defenses**. On and as of the Closing Date, except with respect to the Surviving Liabilities, each of the Borrower Affiliates shall be deemed to have acknowledged, confirmed and warranted to Lender that as of the Closing Date, no Borrower Affiliate has any defenses, claims, rights of set-off or counterclaims against Lender under, arising out of, or in connection with the Released Loans, the Loan Agreements, the Guarantees or any of the other Loan Documents or against any of the indebtedness evidenced, advanced or secured thereby, any and all of which each of the Borrower Affiliates shall be deemed to have expressly waived as of the Closing Date. Borrowers and Guarantors shall further be deemed to have acknowledged as of the Closing Date that (i) Lender shall have no obligation to advance any funds after the Closing Date with respect to the Released Loans and (ii) the Released Loans, the Loan Agreements and the other Loan Documents are terminated. For the avoidance of doubt, the provisions of this <u>Section 5</u> shall not be effective unless and until the Closing shall have occurred.

6. **Release**. In consideration of Lender executing this Release, each of the Borrower Affiliates shall, on and as of the Closing Date, automatically and without any further action, be deemed to have unconditionally and irrevocably fully released, acquited, waived, settled, and discharged any and all claims, counterclaims, liabilities, damages, defenses, demands and causes of action that any of the Borrower Affiliates has or may have against Lender, Alvarez & Marsal Holdings, LLC, their respective officers, directors, members, partners, managers, advisors, trustees, agents, employees, attorneys, predecessors, successors and assigns (collectively, the **"Released Parties"**), whether or not acting in their official capacity with respect to Lender, in their personal capacity or in any other capacity, related to or that may have arisen, may arise or are or become assertable in connection with the Released Loans and the Loan Documents (except with respect to any defenses, claims and counterclaims of the Borrower Affiliates related to any Surviving Liabilities), together with any and all negotiations, discussions, acts, omissions, renewals, extensions, collateral documents, and other agreements and actions related thereto, whether in contract or in tort, including any claims, causes of action or defenses, based on the negligence of Lender or any of the Released Parties or on any other "lender liability" theories of, among others, bad faith, breach of implied covenant of good faith, unfair dealing, duress, coercion, control, misrepresentation, omissions, misconduct, overreaching, unconscionability, disparate bargaining position, reliance, equitable subordination, fraud, or otherwise, and each of the Borrower Affiliates shall, as of the Closing Date, be deemed to intend to release, compromise and settle such claims and matters in connection with or otherwise arising under or related to the Released Loans, whether known or unknown, whether reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured and whether they arose

collaterally, directly, derivatively or otherwise between any of the Borrower Affiliates and the Released Parties from the beginning of the world to and including the date of this release in connection with or otherwise arising under the Released Loans (collectively, the "**Released Claims**"). Each of the Borrower Affiliates hereby represents and warrants to each Lender that they are presently the legal and beneficial owner and holder of any and all of the Released Claims and that no Borrower Affiliate has heretofore expressly or impliedly assigned, transferred, pledged, hypothecated, sold, conveyed or otherwise disposed of, for the benefit of creditors or otherwise, any of the Released Claims. As of the Closing Date, each of the Borrowers hereby agrees to indemnify and to hold harmless the Released Parties against any claim, contention, demand, cause of action, obligation, damage and liability of any nature, character or description whatsoever, including the payment of any and all out-of-pocket costs and reasonable attorneys' fees and costs, whether or not litigation is commenced, which may be based upon or which may arise solely out of or in connection with any such assignment or transfer or purported assignment or transfer.

To the fullest extent permitted by law, each of the Borrower Affiliates hereby acknowledges and agrees that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses which are presently unknown, unanticipated and unsuspected, and each of the Borrower Affiliates further acknowledges and agrees that the waivers and releases herein have been negotiated and agreed upon in light of that realization and that each of the Borrower Affiliates nevertheless hereby intends, as of the Closing Date, to release, discharge and acquit Lender from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses (except with respect to any defenses, claims and counterclaims of the Borrower Affiliates related to any Surviving Liabilities).

Each of the Borrower Affiliates expressly assumes the risk that any fact not set forth in this Release and/or not now known to any of the Borrower Affiliates may subsequently be determined to be other than, different from, or contrary to the facts now known to any or all of them or believed by any or all of them to be true. Each of the Borrower Affiliates intends this Release to release fully, finally and forever all matters to be released as set forth herein as of the Closing Date, and this Release shall be completely effective in all respects notwithstanding any difference in facts, and shall not be subject to any termination, modification or rescission by reason of any such difference in facts.

Each of the Borrower Affiliates expressly agrees that in executing and entering into this Release, that none of the Borrower Affiliates are relying upon and have not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Release or any document or instrument delivered contemporaneously with this Release. Each of the Borrower Affiliates understands and expressly assumes the risk that any fact not recited, contained or embodied herein or any document or instrument delivered contemporaneously with this Release may turn out hereafter to be other than, different from, or contrary to the facts now known to it or believed by it to be true. Nevertheless, each of the Borrower Affiliates intends by this Release, and with the advice of independently selected counsel, to release fully, finally and forever, as of the Closing Date, the Released Claims and agrees that, as of the Closing Date, this Release shall be effective in all respects

notwithstanding any such difference in facts, and shall not be subject to termination, modification or rescission by reason of any such difference in facts.

Each of the Borrower Affiliates acknowledges that the foregoing waivers are essential and material terms of this Release, without which the consideration and binding obligations of Lender expressly set forth herein and relating hereto would not have been delivered. It is the intent of each of the Borrower Affiliates that, as of the Closing Date, this be a complete, full, comprehensive, irrevocable, unconditional and final release of all Released Claims.

Without limiting the generality of the foregoing, each of the Borrower Affiliates shall, as of the Closing Date, be deemed to have expressly released any and all past and present Released Claims, which any of the Borrower Affiliates, does not know of or suspects to exist in their favor, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Release, and to this end they and each of them, to the extent permitted by law waives all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

For the avoidance of doubt, the provisions of this <u>Section 6</u> shall not be effective unless and until the Closing shall have occurred.

7.  **No Novation**.  THIS RELEASE AND THE TRANSACTIONS CONTEMPLATED HEREBY SHALL NOT BE CONSTRUED TO BE A NOVATION OF ANY OF THE OBLIGATIONS OWING BY ANY OTHER BORROWERS UNDER ANY OTHER LOANS OR TO ANY OTHER LENDERS OR ANY GUARANTOR UNDER OR IN CONNECTION WITH THE LOAN DOCUMENTS.

8.  **Indemnity**.

    (a)    On and as of the Closing Date, One Fed Borrower shall jointly and severally, indemnify, defend and hold the Lender harmless from and against any and all loss, liabilities, damages, claims, costs and expenses (including, without limitation, attorneys' fees and disbursements) arising out of, resulting from or associated in any way with a claim made by any of the parties to that certain Intercreditor Agreement, dated June 1, 2006 related to the One Fed Loans by and among the parties thereto (the **"Intercreditor Agreement"**), that it was a violation of LCPI's obligations under the Intercreditor Agreement to accept the Payoff Amount.

    (b)    On and as of the Closing Date, LCPI shall indemnify, defend and hold the Borrower Affiliates harmless from and against any and all loss, liabilities, damages, claims, costs and expenses (including, without limitation, attorneys' fees and disbursements) arising out of, resulting from or associated in any way with a claim made by RACERS or any party with an interest in RACERS, or any other party claiming by, through or under RACERS or a party with an interest in RACERS, (i) asserting such party holds or controls a direct or indirect legal or beneficial interest in the Mezz B Junior Note or (ii) challenging the authority or right of LCPI to enter into this Release, perform any of their respective obligations hereunder or otherwise consummate the transactions contemplated hereunder or (iii) otherwise related to the Mezz B Junior Note, this Release or the transactions contemplated hereby.

(c)    For the avoidance of doubt, the provisions of this <u>Section 8</u> shall not be effective unless and until the Closing shall have occurred.

9.  **Mezz B Co-Lender**.  Each of LCPI and One Fed Mezz B Co-Lender acknowledges that all requirements set forth under that certain Co-lender Agreement dated March 12, 2007 by and among LCPI as successor by assignment from Capital Trust, as successor by assignment from LBHI and One Fed Mezz B Co-Lender as successor in interest to Landesbank Hessen-Thuringen Girozentrale (as the same has been amended, modified, restated and/or assigned, the "**Co-lender Agreement**") required to enter into this Release have been satisfied by LCPI and One Fed Mezz B Co-Lender, as the case may be, and to the extent not satisfied, are hereby waived. On and as of the Closing Date (and for the avoidance of doubt, subject to the occurrence of the Closing), automatically and without any further action, the Co-lender Agreement shall be deemed terminated, and each of LCPI and One Fed Mezz B Co-Lender shall be deemed to have unconditionally and irrevocably fully released, acquitted, waived, settled, and discharged any and all claims, counterclaims, liabilities, damages, defenses, demands and causes of action that either of them has or may have against each other, their respective officers, directors, members, partners, managers, advisors, trustees, agents, employees, attorneys, predecessors, successors and assigns, whether or not acting in their official capacity, in their personal capacity or in any other capacity, related to or that may have arisen, may arise or are or become assertable in connection with the Mezz B Loan and the Co-lender Agreement, together with any and all negotiations, discussions, acts, omissions, renewals, extensions, collateral documents, and other agreements and actions related thereto, including any claims, causes of action or defenses, based on the negligence of any of them, or on any other "lender liability" theories of, among others, bad faith, breach of implied covenant of good faith, unfair dealing, duress, coercion, control, misrepresentation, omissions, misconduct, overreaching, unconscionability, disparate bargaining position, reliance, equitable subordination, fraud, or otherwise, and each of the Borrower Affiliates shall be deemed to release, compromise and settle all claims and matters in connection with or otherwise arising under the Mezz B Loan, whether known or unknown, in contract or in tort, whether reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured and whether they arose collaterally, directly, derivatively or otherwise between any of them and/or against LCPI from the beginning of the world to and including the Closing Date in connection with or otherwise arising under the Mezz B Loan and the Co-lender Agreement.

10.  **Withdrawal of Proofs of Claim**.  As of the Closing Date, the Borrower Affiliates shall file a Withdrawal of Proof of Claims or shall permit Lender to file such withdrawal with respect to the Proof of Claims filed by 125 Borrower and One Fed Junior Mezz Borrower, in the United States Bankruptcy Court of the Southern District of New York in Chapter 11 Case # 08-13555(JMP), and do all other things necessary to withdraw any Proof of Claims submitted in connection with the Released Loans.

11.  **Delivery Of Note and Filing of UCC3s**.  On the Closing Date, Lender shall deliver to Borrower the original Mezz B Junior Note marked cancelled.  In addition, subject to the occurrence of the Closing,, Lender hereby authorizes the Borrowers and/or Borrower Affiliates' to record any UCC3 financing statements in connection with Loans.

12. **Survival.** Notwithstanding anything to the contrary contained in this Release: (a) Lender is not and shall not be released from any of its obligations under this Release, nor a breach of its representations and warranties or covenants hereunder, each of which shall survive the Closing Date and the consummation of the transactions contemplated hereby; and (b) the Borrower Affiliates are not and shall not be released from any of their respective obligations under this Release, nor a breach of their respective representations and warranties or covenants hereunder, each of which shall survive the Closing Date and the consummation of the transactions contemplated hereby.

13. **Expenses of Transaction.**    Each party shall pay its own fees, costs, expenses and disbursements in connection with the preparation, execution and delivery of this Release and each of the other documents executed in connection herewith and the transactions contemplated hereby.

14. **Headings.**  The headings of the sections and subsections of this Release are for convenience of reference only and shall not be considered a part hereof nor shall they be deemed to limit or otherwise affect any of the terms or provisions hereof.

15. **Validity of Provisions.**  Any provision of this Release which may prove unenforceable under law shall not affect the validity of the other provisions hereof.

16. **Counterparts.**  This Release may be executed in one or more counterparts with the same effect as if all parties hereto had signed the same document.  All such counterparts shall be construed together and shall constitute one instrument, but in making proof hereof it shall only be necessary to produce one such counterpart.

17. **Successors and Assigns.**  Whenever in this Release any of the parties hereto is referred to, such reference shall be deemed to include the legal representatives, successors and assigns of such party.  All covenants, promises and agreements in this Release shall inure to the benefit of the legal representatives, successors and assigns of the parties hereto.

18. **Modification.**  This Release may not be modified, amended, waived, changed or terminated orally, but only by an agreement in writing signed by the party against whom the enforcement of the modification, amendment, waiver, change or termination is sought and by the Released Parties.

19. **Entire Agreement**.  This Release constitutes the entire agreement among the parties with respect to the subject matter hereof.

20. **Governing Law.**  THIS RELEASE SHALL BE CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, AND GOVERNED AND ENFORCED IN ALL RESPECTS BY, THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE.

21. **Trial by Jury.**  EACH OF THE BORROWER AFFILIATES AND THE RELEASED PARTIES DO HEREBY INTENTIONALLY, KNOWINGLY, VOLUNTARILY, UNCONDITIONALLY AND IRREVOCABLY WAIVES THE RIGHT WHICH THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS RELEASE (INCLUDING, WITHOUT LIMITATION, ANY ACTION TO RESCIND OR CANCEL THIS RELEASE OR ANY CLAIMS OR DEFENSES ASSERTING THAT THIS RELEASE WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE).    THE

FOREGOING WAIVER BY THE BORROWER AFFILIATES IS A MATERIAL INDUCEMENT FOR THE RELEASED PARTIES TO ACCEPT THIS RELEASE.

22. **Exculpation**.  Notwithstanding anything appearing to the contrary in this Release, no direct or indirect partner, member, shareholder or affiliate of either party hereto (or any officer, director, agent, member, manager, personal representative, trustee or employee of either party hereto or of any such direct or indirect partner, member, shareholder or affiliate) shall be personally liable for the performance of such party's obligations under this Release.

*[NO FURTHER TEXT ON THIS PAGE]*

**IN WITNESS WHEREOF**, the parties hereto have caused this Release to be duly executed by their duly authorized representatives, all as of the day and year first above written.

**LENDER:**

**LEHMAN BROTHERS HOLDINGS INC.,**
a Delaware corporation as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:_____

    Name:

    Title:

**LEHMAN COMMERCIAL PAPER INC.,**
a New York corporation as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:_____

    Name:

    Title:

*[Signatures Continue on Following Pages]*

STATE OF NEW YORK            )
                            ) ss.:
COUNTY OF NEW YORK          )

On the ____ day of July in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

Signature and office of individual
taking acknowledgement
My Commission Expires:

_____

Notary Public

STATE OF NEW YORK            )
                            ) ss.:
COUNTY OF NEW YORK          )

On the ____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

Signature and office of individual
taking acknowledgement
My Commission Expires:

_____

Notary Public

*[Signatures Continue on Following Pages]*

**IN WITNESS WHEREOF**, the parties hereto have caused this Release to be duly executed by their duly authorized representatives, all as of the day and year first above written.

**BORROWER AFFILIATES:**

**ONE FEDERAL, L.P.,**
a Delaware limited partnership

By:    One Federal GP, L.L.C.,
       a Delaware limited liability company

       By:_____
       Name:
       Title:

**ONE FEDERAL JUNIOR MEZZ, L.P.,**
a Delaware limited partnership

By:    One Federal Junior Mezz GP, L.L.C.,
       a Delaware limited liability company

       By:_____
       Name:
       Title:

**ONE FEDERAL INTERMEDIATE MEZZ, L.P.,**
a Delaware limited partnership

By:    One Federal Intermediate Mezz GP, L.L.C.,
       a Delaware limited liability company

       By:_____
       Name:
       Title:

**ONE FEDERAL SENIOR MEZZ, L.P.,**
a Delaware limited partnership

By:    One Federal Senior Mezz GP, L.L.C.,
       a Delaware limited liability company

By:_____
Name:
Title:

**125 HIGH JUNIOR MEZZ, L.P.,**
a Delaware limited partnership

By:    125 High Junior Mezz GP, L.L.C.,
       a Delaware limited liability company

       By:_____
       Name:
       Title:

**125 HIGH INTERMEDIATE-2 MEZZ, L.P.,**
a Delaware limited partnership

By:    125 High Intermediate-2 Mezz GP, L.L.C.,
       a Delaware limited liability company

       By:_____
       Name:
       Title:

**125 HIGH INTERMEDIATE MEZZ, L.P.,**
a Delaware limited partnership

By:    125 High Intermediate Mezz GP, L.L.C.,
       a Delaware limited liability company

       By:_____
       Name:
       Title:

**125 HIGH SENIOR MEZZ, L.P.,**
a Delaware limited partnership

By:    125 High Senior Mezz GP, L.L.C.,

a Delaware limited liability company

By:_____
Name:
Title:


**125 HIGH STREET, L.P.,**
a Delaware limited partnership

By:    TST 125 High GP, L.L.C.,
       a Delaware limited liability company

       By:_____
       Name:
       Title:


**TISHMAN  SPEYER  CROWN  EQUITIES LLC,**
a Delaware limited liability company

By: _____
Name:
Title:


**TS BOSTON CORE HOLDINGS, L.P.,**
a Delaware limited partnership

By:    TS Boston Holdings GP, L.L.C.,
       a Delaware limited liability company

       By:_____
       Name:
       Title:


**HENLEY HOLDING COMPANY,**
a Cayman Islands corporation

By:_____
Name:
Title:

**ONE FED NOTE A ACQUISITION, L.L.C.,**
a Delaware limited liability company


By:_____
Name:
Title:

*[Signatures Continue on Following Pages]*

STATE OF NEW YORK          )
                                               ) ss.:
COUNTY OF NEW YORK     )

On the ____ day of July in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and office of individual
taking acknowledgement
My Commission Expires:

_____
Notary Public


STATE OF NEW YORK          )
                                               ) ss.:
COUNTY OF NEW YORK     )

On the ____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and office of individual
taking acknowledgement
My Commission Expires:

_____
Notary Public

STATE OF NEW YORK                )
                                 ) ss.:
COUNTY OF NEW YORK               )

On the _____ day of July in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.


_____
Signature and office of individual
taking acknowledgement
My Commission Expires:


_____
Notary Public


STATE OF NEW YORK                )
                                 ) ss.:
COUNTY OF NEW YORK               )

On the _____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.


_____
Signature and office of individual
taking acknowledgement
My Commission Expires:


_____
Notary Public

STATE OF NEW YORK            )
                            ) ss.:
COUNTY OF NEW YORK          )

         On the ____ day of July in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and office of individual
taking acknowledgement
My Commission Expires:

_____
Notary Public

STATE OF NEW YORK            )
                            ) ss.:
COUNTY OF NEW YORK          )

         On the ____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and office of individual
taking acknowledgement
My Commission Expires:

_____
Notary Public

STATE OF NEW YORK              )
                              ) ss.:
COUNTY OF NEW YORK            )

       On the _____ day of July in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

Signature and office of individual
taking acknowledgement
My Commission Expires:

_____

Notary Public


STATE OF NEW YORK              )
                              ) ss.:
COUNTY OF NEW YORK            )

       On the _____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

Signature and office of individual
taking acknowledgement
My Commission Expires:

_____

Notary Public

STATE OF NEW YORK                    )
                                     ) ss.:
COUNTY OF NEW YORK                   )

On the _____ day of July in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

Signature and office of individual
taking acknowledgement
My Commission Expires:

_____

Notary Public

STATE OF NEW YORK                    )
                                     ) ss.:
COUNTY OF NEW YORK                   )

On the _____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

Signature and office of individual
taking acknowledgement
My Commission Expires:

_____

Notary Public

STATE OF NEW YORK                    )
                                     ) ss.:
COUNTY OF NEW YORK                   )

        On the _____ day of July in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

Signature and office of individual
taking acknowledgement
My Commission Expires:

_____

Notary Public

STATE OF NEW YORK                    )
                                     ) ss.:
COUNTY OF NEW YORK                   )

        On the _____ day of _____ in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

Signature and office of individual
taking acknowledgement
My Commission Expires:

_____

Notary Public

STATE OF NEW YORK            )
                            ) ss.:
COUNTY OF NEW YORK          )

On the ____ day of July in the year 2010, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.


_____

Signature and office of individual
taking acknowledgement
My Commission Expires:


_____

Notary Public

## **Annex A**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :        08-13555 (JMP)
                                          :
                    Debtors.              :        (Jointly Administered)
                                          :
----------------------------------------------------------------x
```

**ORDER PURSUANT TO BANKRUPTCY RULE 9019 AUTHORIZING LEHMAN**
**BROTHERS HOLDINGS INC. AND LEHMAN COMMERCIAL PAPER INC. TO**
**ENTER INTO RELEASE AND TERMINATION OF LOAN AGREEMENT AND**
**OTHER DOCUMENTS WITH TS BOSTON CORE HOLDINGS, L.P.;**
**125 HIGH JUNIOR MEZZ, L.P.; ONE FEDERAL INTERMEDIATE MEZZ, L.P.;**
**ONE FEDERAL JUNIOR MEZZ, L.P.; AND OTHER BORROWER AFFILIATES**

Upon the motion, dated July __, 2010 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI"), as debtors in

possession (together with their affiliated debtors in the above-referenced chapter 11

cases, the "Debtors"), for an order pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") authorizing LBHI and LCPI to enter

into the Release Agreement with TS Boston Core Holdings, L.P.; 125 High Junior Mezz,

L.P.; One Federal Intermediate Mezz, L.P.; One Federal Junior Mezz, L.P.; and other

Borrower Affiliates [1] all as more fully described in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated

---

[1]  Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided in accordance with the procedures set

forth in the amended order entered June 17, 2010 governing case management and

administrative procedures [Docket No. 9635]; and the Court having found and

determined that the relief sought in the Motion is in the best interests of LBHI and LCPI,

their estates and creditors, and all parties in interest and that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as set forth herein; and it is further

ORDERED that LBHI and LCPI are authorized and empowered, but not

directed, to execute, deliver, implement, and perform any and all obligations,

instruments, documents and papers, and to take all corporate and other actions that may

be necessary or appropriate to enter into and/or effectuate the Release Agreement; and it

is further

ORDERED that, on the Closing Date (as defined in the Release

Agreement), the Borrower Affiliates shall file, or shall permit LBHI and/or LCPI to file,

with this Court, a notice, substantially in the form attached to this Order as Exhibit 1,

withdrawing proofs of claim number 27387 and 27389; and it is further

ORDERED that TS Boston Core Holdings, L.P.; 125 High Junior Mezz,

L.P.; One Federal Intermediate Mezz, L.P.; One Federal Junior Mezz, L.P.; and other

Borrower Affiliates shall not re-file any proof of claim relating to the Acquisition Loan,

the Mortgage, the Mezz A Loan, the Mezz B Loan, the Junior Mezz Loan, the Mezz B

Senior Note, the Mezz B Junior Note, or the 125 Loans (each as defined in the Release

Agreement), or for alleged liabilities relating to those asserted in proofs of claim number

27387 and 27389 filed in these bankruptcy cases; and it is further

      ORDERED that notice of the Motion as provided therein shall be deemed

good and sufficient notice of such Motion; and it is further

      ORDERED that nothing contained in the Motion shall be deemed to be a

waiver or the relinquishment of any rights, claims, interests, obligations, benefits, or

remedies of LBHI, LCPI, or any of the Debtors or their non-debtor affiliates except as

otherwise expressly provided in the Motion, that any of the Debtors or non-debtor

affiliates may have or choose to assert on behalf of their respective estates under any

provision of the Bankruptcy Code or any applicable non-bankruptcy law, including

against each other or third parties.  It is further ordered that the parties are authorized to

execute such further documentation necessary to reflect this reservation of rights.

      ORDERED that this Court shall retain jurisdiction to hear and determine

all matters arising from or related to the implementation and/or interpretation of this

Order.

Dated: August __, 2010
      New York, New York

      _____
      HONORABLE JAMES M. PECK
      UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**(Form of Withdrawal of Claims)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                        :
In re                                   :          Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :          08-13555 (JMP)
                                        :
                   Debtors.             :          (Jointly Administered)
                                        :
-------------------------------------------------------------------x
```

## <u>WITHDRAWAL OF CLAIM</u>

| | |
|---|---|
| Debtor Name and Case Number: | Lehman Brothers Holdings Inc. (Case No. 08-13555 (JMP)) |
| Creditor Name and Address: | One Federal Junior Mezz, L.P. c/o Tishman Speyer 45 Rockefeller Plaza New York, New York 10111 Attn: Chief Financial Officer<br><br>Fried, Frank, Harris, Shriver & Jacobson LLP One New York Plaza New York, New York 10004<br><br>Attn: Janice Mac Avoy, Esq. |
| Claim Number (if known): | 27389 |
| Date Claim Filed: | September 22, 2009 |
| Total Amount of Claim Filed: | N/A |

I, the undersigned, am the above-referenced creditor, or an authorized signatory for the above-referenced creditor. I hereby withdraw the above-referenced claim and authorize the Debtors' claims and noticing agent to file and reflect this withdrawal on the official claims register for the above-referenced Debtor.

| | |
|---|---|
| Signature: | Title: |
| Printed Name: | Dated: |

# DEFINITIONS

*Debtor*

The person, corporation or other entity that has filed a bankruptcy case is called the debtor.

*Creditor*

A creditor is any person, corporation, or other entity to which the debtor owed a debt.

*Proof of Claim*

A form filed with the clerk of the bankruptcy court where the bankruptcy case was filed, to tell the bankruptcy court how much the debtor owed a creditor (the amount of the creditor's claim).

## ITEMS TO BE COMPLETED ON THIS WITHDRAWAL OF CLAIM

*Name of Debtor and Case Number:*

Fill in the name of the debtor in the bankruptcy case, and the bankruptcy case number. A list of the Debtors and their cases numbers is provided below.

| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC | 08-13904 | Lehman Scottish Finance L.P. |
|---|---|---|---|---|---|
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC | 08-13664 | PAMI Statler Arms LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC | 08-13902 | Lehman Brothers Financial Products Inc. |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. | 09-17331 | Merit, LLC |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC | 09-17503 | LB Somerset LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation | 09-17505 | LB Preferred Somerset LLC |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC | | |

*Information about Creditor:*

Complete the section giving the name and address of the creditor that was listed on the previously filed Proof of Claim form.

*Information identifying the Claim that is to be withdrawn:*

Complete the section giving the court claim number, date claim was filed and total amount of claim filed to help identify the claim that is to be withdrawn.

**Sign and print the name and title, if any, of the creditor or other person authorized to file this withdrawal of claim (attach copy of power of attorney, if any).**

**THIS FORM MUST BE SENT TO EPIQ BANKRUPTCY SOLUTIONS LLC, THE DEBTORS' AUTHORIZED CLAIMS AND NOTICING AGENT AT:**

**Epiq Bankruptcy Solutions, LLC**
**Attn: Lehman Brothers Holdings**
**757 Third Avenue, 3rd Floor**
**New York, New York 10017**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,        :        **08-13555 (JMP)**
                                                    :
                                **Debtors.**        :        **(Jointly Administered)**
                                                    :
--------------------------------------------------------------------x

## WITHDRAWAL OF CLAIM

| | |
|---|---|
| Debtor Name and Case Number: | Lehman Brothers Holdings Inc. (Case No. 08-13555 (JMP)) |
| Creditor Name and Address: | 125 High Junior Mezz, L.P.<br>c/o Tishman Speyer<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Attn: Chief Financial Officer<br><br>Fried, Frank, Harris, Shriver & Jacobson LLP<br>One New York Plaza<br>New York, New York 10004<br>Attn: Janice Mac Avoy, Esq. |
| Claim Number (if known): | 27387 |
| Date Claim Filed: | September 22, 2009 |
| Total Amount of Claim Filed: | N/A |

I, the undersigned, am the above-referenced creditor, or an authorized signatory for the above-referenced creditor.  I hereby withdraw the above-referenced claim and authorize the Debtors' claims and noticing agent to file and reflect this withdrawal on the official claims register for the above-referenced Debtor.

| | |
|---|---|
| Signature: | Title: |
| Printed Name: | Dated: |

## DEFINITIONS

*Debtor*

The person, corporation or other entity that has filed a bankruptcy case is called the debtor.


*Creditor*

A creditor is any person, corporation, or other entity to which the debtor owed a debt.


*Proof of Claim*

A form filed with the clerk of the bankruptcy court where the bankruptcy case was filed, to tell the bankruptcy court how much the debtor owed a creditor (the amount of the creditor's claim).


## ITEMS TO BE COMPLETED ON THIS WITHDRAWAL OF CLAIM

*Name of Debtor and Case Number:*

Fill in the name of the debtor in the bankruptcy case, and the bankruptcy case number.  A list of the Debtors and their cases numbers is provided below.

| | | | | | |
|---|---|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC | 08-13904 | Lehman Scottish Finance L.P. |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC | 08-13664 | PAMI Statler Arms LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC | 08-13902 | Lehman Brothers Financial Products Inc. |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. | 09-17331 | Merit, LLC |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC | 09-17503 | LB Somerset LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation | 09-17505 | LB Preferred Somerset LLC |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC | | |


*Information about Creditor:*

Complete the section giving the name and address of the creditor that was listed on the previously filed Proof of Claim form.


*Information identifying the Claim that is to be withdrawn:*

Complete the section giving the court claim number, date claim was filed and total amount of claim filed to help identify the claim that is to be withdrawn.


**Sign and print the name and title, if any, of the creditor or other person authorized to file this withdrawal of claim (attach copy of power of attorney, if any).**


**THIS FORM MUST BE SENT TO EPIQ BANKRUPTCY SOLUTIONS LLC, THE DEBTORS' AUTHORIZED CLAIMS AND NOTICING AGENT AT:**


**Epiq Bankruptcy Solutions, LLC**
**Attn: Lehman Brothers Holdings**
**757 Third Avenue, 3rd Floor**
**New York, New York 10017**