**Hearing Date and Time:  August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  August 11, 2010  at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                           :
In re                                      :   Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :   08-13555 (JMP)
                                           :
                 Debtors.                  :   (Jointly Administered)
                                           :
------------------------------------------------------------------x
```

## NOTICE OF DEBTORS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW ADVANCEMENT UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES BY CONTINENTAL CASUALTY COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S LONDON AND U.S. SPECIALTY INSURANCE COMPANY

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") for relief from the automatic stay, to the extent applicable, to

permit Continental Casualty Company ("Continental"), Certain Underwriters at Lloyd's London

("Lloyd's") and U.S. Specialty Insurance Company ("U.S. Specialty") to make payment of

covered defense costs, advancement of covered defense costs or both incurred by the Debtors'

current and former officers, directors, and employees that have been named as defendants in

various legal proceedings, all as more fully described in the Motion, will be held before the

Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy

Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,

New York 10004 (the "Bankruptcy Court"), on **August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; (v) Wiley Rein, LLP, 1776 K Street NW, Washington DC 20006, Attn: William Smith, Esq. and Mary Catherine Martin, Esq., attorneys for Continental; (vi) Mendes & Mount, LLP, 750 7th Avenue, New York, New York 10019, Attn: Arthur Washington, Esq. and Pamela Passarello, Esq., attorneys for Lloyd's; (vii)

Wiley Rein, LLP, 1776 K Street NW, Washington DC 20006, Attn: Kimberly M. Melvin,

attorneys for U.S. Specialty; and (viii) any person or entity with a particularized interest in the

Motion, so as to be so filed and received by no later than **August 11, 2010 at 4:00 p.m.**

**(Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 27, 2010
       New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Hearing Date and Time:  August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  August 11, 2010  at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                       :

In re                               :         **Chapter 11 Case No.**

                                       :

**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :         **08-13555 (JMP)**

                                       :

                 **Debtors.**        :         **(Jointly Administered)**

                                       :

-------------------------------------------------------------------x

**DEBTORS' MOTION, PURSUANT TO SECTION 362 OF THE
BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY
TO ALLOW ADVANCEMENT UNDER DIRECTORS AND OFFICERS INSURANCE
POLICIES BY CONTINENTAL CASUALTY COMPANY, CERTAIN UNDERWRITERS
AT LLOYD'S LONDON AND U.S. SPECIALTY INSURANCE COMPANY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

             Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully

represent:

**Preliminary Statement**

             1.        On two prior occasions, the Debtors have sought and obtained orders

modifying the automatic stay provided for under section 362(a) of title 11 of the United States

Code (the "Bankruptcy Code"), to the extent applicable, to remove any impediments to payment

by the Debtors' primary and first excess directors' and officers' liability and fiduciary liability

insurers of defense costs and fees that current or former directors, officers, and employees of the

Debtors were incurring as defendants in ongoing federal securities lawsuits and regulatory and

other investigations.[1]  By this Motion, the Debtors seek the entry of an identical form of order

granting relief from the automatic stay with respect to Continental Casualty Company

("Continental"), Certain Underwriters at Lloyd's London and London Market Company

subscribing to policy no. QA0160907 (collectively "Lloyd's"), and U.S. Specialty Insurance

Company ("U.S. Specialty"), the second, third and fourth excess insurers, respectively, of the

Debtors' primary directors and officers liability insurance coverage.

        2.        For Claims[2] made against the Individual Defendants (defined below)

during the period from May 16, 2007 to May 16, 2008, the Debtors purchased a primary policy

from XL Specialty Insurance Company ("XL," and said policy the "2007-2008 Primary D&O

Policy" or the "Primary Policy").[3]  The Debtors also purchased excess coverage for this period

from a number of other carriers of up to $250 million in the aggregate.  The excess policies

(together with the Primary Policy, the "Policies") are all "follow form" policies subject to

additional independent terms and conditions.  That is, the terms and conditions of the excess

coverage are governed by the 2007-2008 Primary D&O Policy, but each excess insurer's

---

[1] See *Order Granting Motion Pursuant to Section 362 of the Bankruptcy Code for an Order Modifying the Automatic Stay to Allow Advancement Under Directors and Officers and Fiduciary Liability Insurance Policies* (Bankr. S.D.N.Y. March 25, 2009) [Docket No. 3220] (the "XL Order"); *Order Granting Motion Pursuant to Section 362 of the Bankruptcy Code for an Order Modifying the Automatic Stay to Allow Advancement Under Directors and Oficers Insurance Policy by Federal Insurance Company (Chubb)* (Bankr. S.D.N.Y. November 23, 2009) [Docket No. 5906] (the "Chubb Order").

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Policies.

[3] A copy of the 2007-2008 Primary D&O Policy is annexed hereto as Exhibit "A."

obligations are subject to certain additional terms, such as limits of liability, and are triggered only after all Loss within the underlying layers of coverage has been paid.

3.        On March 25, 2009, the Court entered the XL Order, which modified the automatic stay to allow for the payment by XL of the full amount of the primary limits of liability of $20 million, subject to the terms of the Primary Policy.  On November 23, 2009, the Court entered the Chubb Order.  Chubb is the first layer excess insurer and agreed to provide coverage of $15 million in excess of $20 million.  Due to the continued state of ongoing legal proceedings, however, Chubb's $15 million first excess limit of liability is expected to be exhausted before Chubb pays all of the bills that have already been submitted to it for the defense of covered matters.  Accordingly, the individual insureds will need to look to the second excess insurance Policy issued by Continental, which was procured pre-petition by the Debtors for the benefit of their directors, officers, and employees, and which provides up to $10 million in coverage in excess of $35 million.  Based upon a review of the bills that have already been submitted to Chubb, it is anticipated that the $10 million second excess Policy issued by Continental will be exhausted by August of this year, and as a result, the individual insureds will need to look to Lloyd's to advance defense costs and fees when the third excess insurance Policy issued by Lloyd's is triggered.  The Lloyd's Policy has a limit of liability of $10 million in excess of $45 million.  Based on the current rate of defense cost expenditures, the $10 million third excess insurance issued by Lloyd's could be exhausted by the end of October 2010.  The individual insureds then would need to look to U.S. Specialty, the fourth excess insurer, to

advance fees and expenses when the fourth excess insurance is triggered.  U.S. Specialty issued

up to $15 million in coverage in excess of $55 million.[4]

4.      As with the primary and first excess insurers, by this Motion, the Debtors

seek to assure Continental, Lloyd's and U.S. Specialty that they can make payment of directors

and officers coverage of defense costs and fees without concern that, if the automatic stay is

otherwise applicable, they are violating the automatic stay.

5.      Confirming Continental, Lloyd's and U.S. Specialty's ability to pay such

defense costs and fees is in the best interests of the Debtors' estates and creditors because, *inter*

*alia*, it will avoid the possible collateral estoppel effect on the Debtors that could result if the

individuals' inability to defend themselves were to give rise to judgments and findings that

impacted direct claims against the Debtors.  Furthermore, the interests of the Debtors' estates, if

any, in the proceeds of the applicable insurance policy is expressly subordinate to the interest of

the individual insureds.  Specifically, the applicable insurance policy provides that the Debtors

have rights to the insurance proceeds only after the insured individuals are fully reimbursed for

any Loss, including defense costs.  Thus, granting the relief requested by this Motion is unlikely

to have any adverse effect on the Debtors' estates and creditors.

### Background

6.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under the Bankruptcy Code.  The Debtors' chapter 11 cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to Rule

---

[4] A copy of the Continental excess Policy is attached hereto as Exhibit "B."  A copy of the Lloyd's excess Policy is attached hereto as Exhibit "C"  A copy of the U.S. Specialty excess Policy is attached hereto as Exhibit "D."

1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors

are authorized to operate their businesses and manage their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.    On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

8.    On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

9.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

On March 11, 2010, the Examiner filed its report with the Court (the "Examiner's Report")

[Docket No. 7531].

10.    On April 14, 2010, the Debtors filed their revised joint chapter 11 plan

[Docket No. 8330] and disclosure statement for their revised joint chapter 11 plan pursuant to

section 1125 of the Bankruptcy Code [Docket No. 8332].

## Jurisdiction

11.    This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

12.    Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States. For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

13.    Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### Relief Requested

14.    The Debtors seek the entry of an order granting relief from the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it applies, to allow payments and/or advancements by Continental, Lloyd's and U.S. Specialty of defense costs that are, or will become, owing to the Individual Defendants under the Continental, Lloyd's and U.S. Specialty Policies.  The Debtors further request that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

### The Debtors' Directors and Officers Liability Insurance Policies

15.    Pursuant to their advancement and indemnification obligations expressed in their by-laws and certificate of incorporation, the Debtors purchased primary and excess directors' and officers' liability ("D&O") insurance, which provides coverage for the Debtors' current and former officer, directors, and employees in connection with civil, criminal, regulatory and other actions and investigations.  As noted above, for Claims made against the Individual Defendants during the period from May 16, 2007 to May 16, 2008, the Debtors purchased a Primary and sixteen excess D&O Policies providing, in the aggregate, $250 million in D&O coverage.

16.     Subject to their terms, conditions, limitations and exclusions, the Continental, Lloyd's and U.S. Specialty Policies cover Loss (including defense costs, expenses, settlements, and judgments) incurred as a result of Claims made during the Policy Period where such Loss exceeds $35 million, $45 million and $55 million, respectively, arising from Wrongful Acts allegedly committed by the Individual Defendants in their capacity as directors, officers or employees of LBHI and its subsidiaries.  Coverage under Insuring Agreement (A) for non-indemnifiable loss ("Side A") of the Policies is immediately available to Insured Persons, which includes certain of the Debtors' present and former officers, directors, and employees, for any Loss resulting from Claims made under the Policies that is not otherwise advanced or indemnified by the Debtors by reason of their financial insolvency.

17.     Furthermore, endorsement 22 of the 2007-2008 Primary D&O Policy to which the excess Policies follow form contains a "Priority of Payments" provision, which provides that when competing claims for coverage under both Side A, as described above, and Insuring Agreement (B) (covering indemnifiable Claim made against Insured Persons) are made under the Policies, "the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under Insuring Agreement (A)… ."  Thus, the 2007-2008 Primary D&O Policy and each of the excess Policies, by virtue of Insuring Agreement A and the Priority of Payments endorsement, provides for the immediate payment of the Individual Defendants' defense costs and expenses ahead of any payment that may be made to the Debtors.

## The Legal Proceedings

18.     Certain former and current directors, officers, and employees of the Debtors (collectively, the "Individual Defendants") are defendants in one or more of multiple civil actions brought on behalf of purported classes and individuals and/or are within the scope of certain arbitrations or criminal, regulatory or other investigations (collectively, the "Legal

Proceedings") described below.  Though Debtors were named as defendants in some of the Legal

Proceedings, they are not participating in those proceedings due to the automatic stay.

19.    Both prior to and after the collapse of the Lehman enterprise in September

2008, various securities actions were commenced against certain officers and directors in both

federal and state court.  Many of these actions assert, among other claims, violations of sections

10(b) and 20(a) of the Securities Act of 1934, and sections 11, 12 and 15 of the Securities

Exchange Act of 1933 (the "Securities Act"), and arise from various alleged wrongful actions of

certain Individual Defendants in connection with securities issued by LBHI.  Most of these

actions have been consolidated at least for pre-trial purposes before the Honorable Lewis Kaplan

in the United States District Court for the Southern District of New York.  A second set of

actions alleging violations of sections 11, 12, and 15 of the Securities Act arise from alleged

wrongful actions of certain of the Individual Defendants in connection with the plaintiffs'

purchase of mortgage-backed securities.  These actions have been consolidated and are also

before Judge Kaplan.  There are additional actions or arbitrations against certain Individual

Defendants arising out of Lehman-issued securities, auction-rate securities, issues common to the

class actions and other alleged conduct of Debtors, asserting claims under the federal securities

laws and various state laws, and arising from various allegedly wrongful actions of certain of the

Individual Defendants.

20.    Additionally, both the United States Department of Justice (by and

through the United States Attorney's Offices for the Southern and Eastern Districts of New

York, and for the District of New Jersey) as well as the United States Securities and Exchange

Commission and the New Jersey Bureau of Securities, have commenced formal grand jury and

regulatory investigations concerning the circumstances surrounding the collapse of the Lehman

enterprise and have issued various requests and subpoenas to both the Debtors and various Individual Defendants.

21.    In connection with the Legal Proceedings, the Individual Defendants have incurred and will continue to incur defense costs and fees.  Prior to the Commencement Date, in the ordinary course of business and pursuant to the terms of their by-laws, the Debtors indemnified and covered their officers and directors for defense costs incurred in legal proceedings.  Subsequent to the Commencement Date, however, the Debtors have been unable to continue to advance defense costs to the Individual Defendants.  That is why the Debtors sought the XL Order and the Chubb Order.  As noted above, however, the $20 million Primary Policy issued by XL has been exhausted, and the first excess Policy issued by Chubb is expected to be exhausted before Chubb pays the bills that have already been submitted to it.  Thus, Continental's second excess Policy will soon be triggered.  It is anticipated that the third excess Policy, issued by Lloyd's, will be triggered in August 2010, and the fourth excess Policy, issued by U.S. Specialty, may be triggered in October 2010.  Accordingly, the Debtors are seeking the relief requested herein to ensure that the Individual Defendants will continue to have access to funding of additional defense costs under, and consistent with, the terms of the Continental Policy, the Lloyd's Policy and the U.S. Specialty Policy.

## Cause Exists to Grant the Relief Requested

22.    Pursuant to the XL Order and the Chubb Order, this Court has granted relief with respect to the primary insurer and first excess insurer that is identical to the relief sought in this Motion, based on rights and obligations *vis-à-vis* the Debtors and Individual Defendants that are governed by the same terms and conditions followed by the Continental, Lloyd's and U.S. Specialty Policies.  Accordingly, because cause to modify the automatic stay to

allow the primary and first excess insurers to make payments under their Policies was found to

exist, *a fortiori*, such cause exists here as well with respect to the second, third and fourth excess

insurers.  If, however, the Debtors must independently demonstrate that such cause exists with

respect to Continental, Lloyd's and U.S. Specialty, as described below, it is beyond peradventure

that such a modification of the automatic stay is warranted.

A.    The Policy Proceeds Are Not Property of the Estate

23.    Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay

of any action seeking to obtain possession or exercise control over property of the bankruptcy

estate.  It is well settled that insurance policies are property of the estate and covered by the

automatic stay provisions of the Bankruptcy Code.  *See MacArthur Co. v. Johns-Manville Corp.*,

837 F.2d 89 (2d Cir 1988).  However, courts have distinguished between ownership of a *policy*

and ownership of the *proceeds* of a policy.  While courts have not been uniform in their analysis,

where a policy provides for payment only to a third party – such as payments to officers and

directors under an executive insurance policy – or where the debtor has a right of coverage or

indemnification, but such right is hypothetical or speculative, courts have held that the proceeds

of such policy are not property of the bankruptcy estate.  *See, e.g.*, *In re Adelphia Commc'ns*

*Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of

the estate where it had not been suggested that debtors had made any payment for which they

may be entitled to indemnification under policy or that any such payments were then

contemplated); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004)

(holding that proceeds of D&O insurance policy were not property of the estate where debtor's

indemnification right under the policy was speculative and direct coverage of debtor under

policy was hypothetical); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987)

(holding that proceeds of a D&O policy belonged only to the officers and directors and, therefore, were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers and not the estate, the proceeds are not property of the estate); *see In re First Cent. Fin. Corp.*, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may give rise to entity coverage were highly remote and therefore proceeds were not property of estate).

24.     In determining whether proceeds are property of the estate, courts review the "language and scope of the policy at issue." *Allied Digital*, 306 B.R. at 509. *See also In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002); *In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) (respective rights of debtors and non-debtors to insurance proceeds "must be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the pertinent contractual provisions under applicable state law").

25.     Here, the Primary D&O Policy – to which the Continental, Lloyd's and U.S. Specialty Policies follow form – contains an unambiguous priority of payments endorsement that expressly subordinates the rights of the Debtors to proceeds payable under the Policies to the rights of the Individual Defendants.  The priority of payment endorsement is an enforceable contractual provision and should be upheld for the benefit of the Individual Defendants as intended.  *See In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Apr. 11, 2002) [Docket No. 3278] (holding that priority of payment provision was an enforceable contractual right).[5]  In addition, because none of the Debtors are participating in the Legal Proceedings, and have only been requested to produce certain documents in connection with the

---

[5] A copy of the Court's bench ruling in *Enron* is attached hereto at Exhibit "E."

government or other investigations, the likelihood that the Debtors may require coverage under

the Policies is remote.  As the court explained in *In re Laminate Kingdom LLC*:

> [T]he Court believes the depletion of proceeds to pay the [c]osts of [d]efense [i]ncurred by the officers and directors] does not diminish the protection afforded the estate's assets under the terms of the Policy.  The Policy's "Priority of Payments Endorsement" specifically requires that the proceeds be used *first* to pay non-indemnifiable loss for which coverage is provided under Coverage A of this Policy, which coverage includes the [officer's and director's costs of defense].  Then, only after such payments are made, and only if proceeds remain after payment of such [c]osts of [d]efense, will the Trustee or the estate be paid any proceeds.  Thus, under the language of the Policy itself, the estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the "Priority of Payments Endorsement" does not diminish the protection the Policy affords the estate, as such protection is only available after the [c]osts of [d]efense are paid.

No. 07-10279-BKC-AJC, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008).

26.    Consistent with the purpose of such policies, the Debtors purchased the

Policies primarily to provide insurance coverage to their officers and directors, including the

Individual Defendants.  *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999)

("In essence and at its core, a D&O Policy remains a safeguard of officer and director interests

and not a vehicle for corporate protection.").  The Debtors' speculative rights to any residual

proceeds, which are subject to an express contractual subordination provision, should not alter

the conclusion that the proceeds should not constitute property of the Debtors' estates.

B.    Cause Exists to Modify the Automatic Stay, to the Extent
      That it Applies, to Allow Payment of Defense Costs Under the Policies.

27.    Even if the proceeds of the Policies are determined to be property of the

estate, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the automatic

stay to allow the payment of defense costs under the Policies.  It is not uncommon for courts to

grant stay relief to allow payment of defense costs or settlement costs to directors and officers,

especially when there is no evidence that direct coverage of the debtor will be necessary. *See Allied Digital*, 306 B.R. at 513.

28.    Allowing Continental, Lloyd's and U.S. Specialty to advance defense costs and fees to the Individual Defendants will, in fact, benefit the Debtors' estates. The Legal Proceedings are highly complex. If the Individual Defendants are not adequately represented, it is foreseeable that a finding of wrongdoing or liability against the Individual Defendants may be used, or attempted to be used, to judicially prejudice or prosecute claims against the Debtors. Granting the requested relief will also alleviate the Individual Defendants' concern that they will personally be liable for their own defense costs.

29.    Additionally, the Debtors believe that they have an obligation under their by-laws to advance the defense costs and fees incurred by the Individual Defendants. In connection with the Legal Proceedings, the Individual Defendants have and will continue to incur significant defense costs, which, if unsatisfied, may potentially be asserted by some or all of the Individual Defendants against the Debtors' estates. Moreover, to the extent the Individual Defendants suffer adverse judgments that are not paid from the proceeds of the Policies due to the enforcement of the automatic stay, the Individual Defendants may seek to assert indemnification claims against the estates for such amounts. Consequently, coverage of the Individual Defendants under the Policies will reduce or eliminate the claims that the Individual Defendants could assert against the estates.

30.    Modifying the automatic stay will not harm the Debtors' estates. As explained above, the Debtors' rights to the proceeds are contractually subordinated to the rights of the Individual Defendants pursuant to the priority of payments endorsement. In addition, at this time, the need for coverage is speculative given that the Debtors are not participating in the

Legal Proceedings, have incurred minimal costs in connection with the documents subpoenaed in

the government investigations, and have not made advancements to the Individual Defendants

during the chapter 11 cases for their defense costs.

31.    Accordingly, the Debtors respectfully submit that there are no legal

impediments to the direct payment or advancement by Continental, Lloyd's and U.S. Specialty

under their respective Policies to the Individual Defendants for their costs of defense.

Alternatively, if this Court finds that the Debtors have some interest in the proceeds of the

Policies, the Debtors submit that any such interest is nominal and in any event cannot be

determined until the Individual Defendants' losses have been quantified and paid.  Advancing

the Individual Defendants' defense costs pursuant to the Policies is necessary to minimize those

losses.  Accordingly, cause exists to modify the automatic stay pursuant to section 362(d) of the

Bankruptcy Code, to the extent it applies, to allow Continental to immediately commence

payment of outstanding and ongoing defense costs incurred by the Individual Defendants and to

allow Lloyd's and U.S. Specialty to advance such costs once their insurance obligations are

triggered pursuant to the terms and conditions of their Policies.

32.    In making this motion, the Debtors, the Individual Defendants,

Continental, Lloyd's, and U.S. Specialty are not waiving any of their respective rights under the

Policies.  In addition, the Debtors are not seeking an advance determination of Continental's,

Lloyd's or U.S. Specialty's obligation to pay any particular expense or claim of the Individual

Defendants.[6]  Rather, the Debtors seek only the entry of an order modifying the automatic stay,

---

[6] As stated above, the Policies cover claims made during the period from May 16, 2007 to May 16, 2008.
In addition, LBHI purchased another $250 million tower of D&O insurance for claims made during the
subsequent period of May 16, 2008 to May 16, 2009 (the "2008-2009 Insurance Program").  XL is also
the primary insurer in the 2008-2009 Insurance Program, and Continental, Lloyd's and U.S. Specialty
have excess policies in that program.  The Debtors reserve their rights with respect to whether some of the
Legal Proceedings may be covered under the 2008-2009 Insurance Program.

to the extent applicable, to allow Continental, Lloyd's and U.S. Specialty to fulfill their

obligations, whatever they may be, to pay defense costs and expenses of the Individual

Defendants under the terms of the respective Policies, including amounts incurred both pre and

post-petition, if and when they arise.

### Waiver of Bankruptcy Rule 4001(a)(3)

33.    The Debtors request that the Court direct that the order granting the relief

requested herein be effectively immediately.  The first excess layer of D&O coverage has

effectively been exhausted because there are currently insufficient limits under the first excess

Policy to pay defense bills that have already been submitted for payment to Chubb.  To facilitate

a smooth transition and avoid any interruption in coverage, the Debtors request that the order

granting the Motion be effective immediately.

### Notice

34.    No trustee has been appointed in these cases.  The Debtors have served

notice of this Motion in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee;

(iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; (vi) all parties who have requested notice

in these chapter 11 cases; (vii) attorneys for Continental; (viii) attorneys for Lloyd's; and (ix)

attorneys for U.S. Specialty.  The Debtors submit that no other or further notice need be

provided.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: July 27, 2010
        New York, New York

                                    /s/ Richard P. Krasnow
                                    Richard P. Krasnow

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                    :
In re                                               :    Chapter 11 Case No.
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :    08-13555 (JMP)
                                                    :
                              Debtors.              :    (Jointly Administered)
                                                    :
-------------------------------------------------------------------x

### ORDER GRANTING DEBTORS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW ADVANCEMENT UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES BY CONTINENTAL CASUALTY COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S LONDON AND U.S. SPECIALTY INSURANCE COMPANY

Upon the motion, dated July 27, 2010 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman"), pursuant to section 362(d) of title 11 to the United States Code (the

"Bankruptcy Code") and Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for an order modifying the automatic stay, to the extent applicable, to

allow Continental Casualty Company ("Continental"), the second excess insurer, those certain

Underwriters at Lloyd's London and London Market Company subscribing to policy no.

QA0160907 (collectively, "Lloyd's"), the third excess insurers, and U.S. Specialty Insurance

Company ("U.S. Specialty"), the fourth excess insurer, to pay covered defense costs, advance

covered defense costs, or both incurred by the Individual Defendants[1] that have been named as

defendants in the Legal Proceedings, all as more fully described in the Motion; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with 28

---
[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided in accordance with the procedures set forth in the second amended order entered June

17, 2010 governing case management and administrative procedures [Docket No. 9635] to (i) the

United States Trustee for the Southern District of New York; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) all parties who have requested notice in these chapter 11 cases; (vii) Continental; (viii)

Lloyd's; and (ix) U.S. Specialty, and it appearing that no other or further notice need be

provided; and a hearing having been held to consider the relief requested in the Motion; and the

Court having found and determined that the relief sought in the Motion is in the best interests of

the Debtors, their estates and creditors, and all parties in interest and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

        ORDERED that the Motion is granted; and it is further

        ORDERED that pursuant to sections 105(a) and 362(d) of the Bankruptcy Code,

the automatic stay, to the extent applicable, is hereby modified to, and without further order of

this Court, allow payment of covered defense costs, advancement of covered defense costs, or

both from Continental, Lloyd's and U.S. Specialty to the Individual Defendants pursuant to the

terms of their respective Policies; and it is further

ORDERED the Debtors are authorized to execute all documentation necessary to allow Continental, Lloyd's and U.S. Specialty to pay covered defense costs, advance covered defense costs, or both incurred by the Individual Defendants in the Legal Proceedings; and it is further

ORDERED that nothing in this Order shall modify, alter or accelerate the rights and obligations of Continental, Lloyd's, U.S. Specialty, the Debtors or the Individual Defendants provided for under the terms and conditions of the Policies; and it is further

ORDERED that all parties to the Policies reserve all rights and defenses that they would otherwise have with respect thereto; and it is further

ORDERED that nothing in this Order shall constitute a determination that the proceeds of the Policies are property of the Debtors' estates, and the rights of all parties in interest to assert that the proceeds of the Policies are, or are not, property of the Debtors' estates are hereby reserved; and it is further

ORDERED that the fourteen-day stay provided by Bankruptcy Rule 4001(a)(3) is waived; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: August __, 2010
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE