## EXHIBIT "C"

## (LLOYD'S EXCESS POLICY)



THE INSURED IS REQUESTED TO **READ THIS POLICY**. IF IT IS INCORRECT, PLEASE RETURN IT

## DECLARATIONS
## EXCESS LIABILITY POLICY

SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO ANY CLAIM MADE AGAINST
THE ASSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE
TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED
BY AMOUNTS INCURRED AS REASONABLE AND NECESSARY LEGAL FEES AND
EXPENSES IN DEFENDING THE ASSUREDS. THIS POLICY DOES NOT PROVIDE FOR ANY
DUTY BY UNDERWRITERS TO DEFEND THE ASSUREDS.

These Declarations along with the completed and signed Application, and the Policy with
endorsements shall constitute the contract between the Assureds and Underwriters.

**Policy Number:** 509/QA016907

**Item A.    Named Insured:**

Lehman Brothers Holdings, Inc.

**Principal Address:**

1301 Avenue of the Americas
New York
NY 10019
USA

**Item B.    Policy Period:**

From:   16th May, 2007
To:      16th May, 2008
Both days at 12:01 a.m. local standard time at the Principal Address stated in Item A.

**Item C.    Limit of Liability:**

USD 10,000,000 in the aggregate for the Policy Period.

**Item D.    Premium:**

USD 527,199 including TRIA, hereon 85.7142% thereof

**Item E.**   **Notification to Underwriters pursuant to Clause V. shall be given via:**

Arthur Washington
Mendes & Mount, LLP
750 Seventh Avenue
New York
NY 10036-6829
USA

**Item F.**   **Primary Policy:**

| | |
|---|---|
| Primary Carrier: | XL Specialty Insurance Company |
| Policy Number: | ELU097792-07 or renewal thereof |
| Limit: | USD 20,000,000 |
| Retention: | USD 10,000,000 |
| Period: | 12 months from 16th May, 2007 at 12:01 a.m. local standard time |

**Item G.**   **Underlying Excess Policies:**

| | |
|---|---|
| 1st Excess Carrier: | Chubb |
| Policy Number: | 7043-0876 or renewal thereof |
| Limit: | USD 15,000,000 |
| Retention: | As per Primary |
| Period: | 12 months from 16th May, 2007 at 12:01 a.m. local standard time |

| | |
|---|---|
| 2nd Excess Carrier: | CNA |
| Policy Number: | 267996454 or renewal thereof |
| Limit: | USD 10,000,000 |
| Retention: | As per Primary |
| Period: | 12 months from 16th May, 2007 at 12:01 a.m. local standard time |

**Item H.**   **Service of process in any suit pursuant to Clause VI. shall be made upon:**

Mendes & Mount, LLP
750 Seventh Avenue
New York
NY 10036-6829
USA

**Dated in London:** 15th May 2007

## EXCESS LIABILITY POLICY

In consideration of the payment of the premium, in reliance upon the statements in the Application
and subject to the provisions of this Policy, Underwriters and the Assureds agree as follows:

### I.    CONFORMANCE WITH UNDERLYING POLICIES

Except as regards:

A.    the premium, and

B.    the amount and Limit of Liability, and

C.    the subject matter of Clauses II, III, IV, V, VI, VII and VIII, and

D.    as otherwise may be provided herein,

this Policy is subject to the same insuring clauses, definitions, terms, conditions, exclusions
and other provisions as those set forth in the Underlying Policies as described in the materials
submitted to Underwriters in connection with the Application for this Policy. No changes to
the Underlying Policies as so described shall be binding upon Underwriters under this Policy
unless specifically agreed in writing by Underwriters hereon.

### II.    DEFINITIONS

The following terms whenever used in this Policy shall have the meanings indicated.

A.    "Assureds" shall mean all persons or entities insured under the Primary Policy.

B.    "Primary Policy" shall mean the policy identified in Item F. of the Declarations.

C.    "Underlying Limits of Liability" shall mean the combined limits of liability of the
Underlying Policies as set forth in Items F and G of the Declarations, less any
reduction or exhaustion of said limits of liability due to payment of loss under said
policies.

D.    "Underlying Policies" shall mean the policies identified in Items F and G of the
Declarations.

### III.   MAINTENANCE OF UNDERLYING POLICIES

This Policy provides excess coverage only.  It is a condition precedent to the coverage afforded under this Policy that the Assureds maintain the Underlying Policies with retentions/deductibles, and limits of liability (subject to reduction or exhaustion as a result of loss payments), as set forth in Items F and G of the Declarations.  This Policy does not provide coverage for any loss not covered by the Underlying Policies except and to the extent that such loss is not paid under the Underlying Policies solely by reason of the reduction or exhaustion of the Underlying Limits of Liability through payments of loss thereunder.  In the event the insurer under one or more of the Underlying Policies fails to pay loss in connection with any claim under Insuring Agreements (B) and (C) of the Primary Policy as a result of the insolvency, bankruptcy or liquidation of said insurer, then the Assureds shall be deemed self-insured for the amount of the limit of liability of said insurer which is not paid as a result of such insolvency, bankruptcy or liquidation.

### IV.   LIMIT OF LIABILITY

A.   Underwriters shall be liable to pay loss which is in excess of:

    1.   the Underlying Limits of Liability plus

    2.   the applicable retention or deductible under the Primary Policy

up to the Limit of Liability as shown under Item C of the Declarations resulting from each claim made against the Assureds.

B.   The amount shown in Item C of the Declarations shall be the maximum aggregate Limit of Liability of Underwriters under this Policy.

C.   Underwriters shall be liable only after the insurers under each of the Underlying Policies have paid or have been held liable to pay the full amount of the Underlying Limits of Liability.

D.   In the event of the reduction or exhaustion of the Underlying Limits of Liability by reason of payment of loss, or under Insuring Agreement (A) of the Primary Policy, by reason of failure to pay loss as a result of a claim due to insolvency, bankruptcy or liquidation of an insurer under one or more of the Underlying policies this Policy shall:

    1.   in the event of reduction, pay excess of the reduced limits, and

    2.   in the event of exhaustion, continue in force as primary insurance; provided, however that in the case of exhaustion this Policy shall only pay excess of the retention or deductible applicable to the Primary Policy as set forth in Item F of the Declarations, which shall be applied to any subsequent loss in the same manner as specified in the Primary Policy.

**V.    NOTIFICATION**

Notice to Underwriters of any claims shall be given to the firm shown under Item E of the Declarations.

**VI.    WARRANTY CLAUSE**

It is warranted that the particulars and statements contained in the Application, a copy of which is attached hereto, are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy.

By acceptance of this Policy, the Assureds agree:

A.    that the statements in the Application are their representations, that they shall be deemed material to the acceptance of the risk or the hazard assumed by Underwriters under this Policy and that this Policy is issued in reliance upon the truth of such representations;

B.    that in the event that the Application contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by Underwriters under this Policy, this Policy shall be void and of no effect whatsoever with respect to those Assureds who made or had knowledge of such misrepresentations; and

C.    that, except as provided in Clause VI.B, this Policy shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual contracts of insurance with each of the Assureds.

**VII.    CHOICE OF LAW AND JURISDICTION**

It is agreed that in the event of Policy disputes between the Assured and the Underwriter, this insurance shall be governed by the laws of New York but subject always to the provisions of NMA1998 below.

**SERVICE OF SUIT**

It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of any person or entity insured hereunder will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm shown under Item H of the Declarations, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The firm shown under Item H of the Declarations is authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of any person or entity insured hereunder to give a written undertaking to such person or entity that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to the statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or any of their successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of any person or entity insured hereunder or any beneficiary hereunder arising out of this Policy, and hereby designate the firm shown under Item H of the Declarations as the firm to whom the said officer is authorised to mail such process or a true copy thereof.

24/4/86
NMA1998 (amended)

## VIII.   OUTSIDE DIRECTORSHIP PROVISIONS

If any loss arising from any claim made against any of the Assureds, as covered by XL Specialty Insurance Company Primary Policy No. ELU097792-07 or renewal thereof, Endorsement No. 12 (Outside Directorship Liability Endorsement) is insured under any other valid policy(ies) issued by Underwriters, then the total amount Underwriters shall pay under all such policies for all covered loss on account of such claim shall not exceed the combined Aggregate Limit of Liability of USD 25,000,000.

Further, and solely with respect to an Outside Directorship Liability claim, this Policy shall recognise any payment made by Lehman Brothers Holdings, Inc. in excess of payments paid by XL Specialty Insurance Company for loss arising from a claim made against any of the Assureds which is covered by XL Specialty Insurance Company (or any other member of the XL Capital Family) under an outside entity policy and the Primary Policy for Lehman Brothers Holdings, Inc., as being part of the Primary Policy Limit of Liability with respect to an Outside Directorship Liability Claim.

IT IS HEREBY UNDERSTOOD AND AGREED THAT NO CHANGES TO THE UNDERLYING POLICIES AS SO DESCRIBED SHALL BE BINDING UPON UNDERWRITERS UNDER THIS INSURANCE UNLESS AGREED IN WRITING BY UNDERWRITERS HEREON.

LSW1045 (amended)

## NEW SHORT RATE CANCELLATION TABLE ENDORSEMENT (U.S.A.)

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this insurance is written it is agreed that in the event of cancellation thereof by the Assured the earned premium shall be computed as follows:

A.    For Insurance written for one year:

| Days Insurance in Force | | Percent of One Year Premium | Days Insurance in Force | | Percent of One Year Premium |
|---|---|---|---|---|---|
| 1 | | 5 | 154-156 | | 53 |
| 2 | | 6 | 157-160 | | 54 |
| 3-4 | | 7 | 161-164 | | 55 |
| 5-6 | | 8 | 165-167 | | 56 |
| 7-8 | | 9 | 168-171 | | 57 |
| 9-10 | | 10 | 172-175 | | 58 |
| 11-12 | | 11 | 176-178 | | 59 |
| 13-14 | | 12 | 179-182 | (6 months) | 60 |
| 15-16 | | 13 | 183-187 | | 61 |
| 17-18 | | 14 | 188-191 | | 62 |
| 19-20 | | 15 | 192-196 | | 63 |
| 21-22 | | 16 | 197-200 | | 64 |
| 23-25 | | 17 | 201-205 | | 65 |
| 26-29 | | 18 | 206-209 | | 66 |
| 30-32 | (1 month) | 19 | 210-214 | (7 months) | 67 |
| 33-36 | | 20 | 215-218 | | 68 |
| 37-40 | | 21 | 219-223 | | 69 |
| 41-43 | | 22 | 224-229 | | 70 |
| 44-47 | | 23 | 230-232 | | 71 |
| 48-51 | | 24 | 233-237 | | 72 |
| 52-54 | | 25 | 238-241 | | 73 |
| 55-58 | | 26 | 242-246 | (8 months) | 74 |
| 59-62 | (2 months) | 27 | 247-250 | | 75 |
| 63-65 | | 28 | 251-255 | | 76 |
| 66-69 | | 29 | 256-260 | | 77 |
| 70-73 | | 30 | 261-264 | | 78 |
| 74-76 | | 31 | 265-269 | | 79 |
| 77-80 | | 32 | 270-273 | (9 months) | 80 |
| 81-83 | | 33 | 274-278 | | 81 |
| 84-87 | | 34 | 279-282 | | 82 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 88-91 | (3 months)........................ | 35 | 283-287 | ........................................ | 83 |
| 92-94 | ........................................ | 36 | 288-291 | ........................................ | 84 |
| 95-98 | ........................................ | 37 | 292-296 | ........................................ | 85 |
| 99-102 | ........................................ | 38 | 297-301 | ........................................ | 86 |
| 103-105 | ........................................ | 39 | 302-305 | (10 months)...................... | 87 |
| 106-109 | ........................................ | 40 | 306-310 | ........................................ | 88 |
| 110-113 | ........................................ | 41 | 311-314 | ........................................ | 89 |
| 114-116 | ........................................ | 42 | 315-319 | ........................................ | 90 |
| 117-120 | ........................................ | 43 | 320-323 | ........................................ | 91 |
| 121-124 | (4 months)........................ | 44 | 324-328 | ........................................ | 92 |
| 125-127 | ........................................ | 45 | 329-332 | ........................................ | 93 |
| 128-131 | ........................................ | 46 | 333-337 | (11 months)...................... | 94 |
| 132-135 | ........................................ | 47 | 338-342 | ........................................ | 95 |
| 136-138 | ........................................ | 48 | 343-346 | ........................................ | 96 |
| 139-142 | ........................................ | 49 | 347-351 | ........................................ | 97 |
| 143-146 | ........................................ | 50 | 352-355 | ........................................ | 98 |
| 147-149 | ........................................ | 51 | 356-360 | ........................................ | 99 |
| 150-153 | (5 months)........................ | 52 | 361-365 | (12 months)...................... | 100 |

B.   For Insurances written for more or less than one year:

    1.   If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

    2.   If insurance has been in force for more than 12 months;

        a.   Determine full annual premium as for an insurance written for a term of one year.

        b.   Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written

        c.   Add premium produced in accordance with items (a) and (b) to obtain earned premium during full period insurance has been in force.

09/02/58
NMA45

**NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)**

For attachment to insurances of the following classifications in the U.S.A., its Territories and
Possessions, Puerto Rico and the Canal Zone:

> Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or
> Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability,
> Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage
> Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-
Direct (Limited) applies.

This Policy* does not apply:

I.     Under any Liability Coverage, to injury, sickness, disease, death or destruction:

    (a)    with respect to which an insured under the Policy is also an insured under a nuclear
        energy liability policy issued by Nuclear Energy Liability Insurance Association,
        Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of
        Canada, or would be an insured under any such policy but for its termination upon
        exhaustion of its limit of liability; or

    (b)    resulting from the hazardous properties of nuclear material and with respect to which
        (1) any person or organization is required to maintain financial protection pursuant to
        the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is,
        or had this Policy not been issued would be, entitled to indemnity from the United
        States of America, or any agency thereof, under any agreement entered into by the
        United States of America, or any agency thereof, with any person or organization.

II.    Under any Medical Payments Coverage, or under any Supplementary Payments Provision
    relating to immediate medical or surgical relief, to expenses incurred with respect to bodily
    injury, sickness, disease or death resulting from the hazardous properties of nuclear material
    and arising out of the operation of a nuclear facility by any person or organization.

III.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from
    the hazardous properties of nuclear material, if:

    (a)    the nuclear material (1) is at any nuclear facility owned by, or operated by or on
        behalf of, an insured or (2) has been discharged or dispersed therefrom;

    (b)    the nuclear material is contained in spent fuel or waste at any time possessed,
        handled, used, processed, stored, transported or disposed of by or on behalf of an
        insured; or

     (c)     the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.    As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

     (a)     any nuclear reactor,

     (b)     any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

     (c)     any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

     (d)     any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.
17/3/60
NMA1256

## RADIOACTIVE CONTAMINATION EXCLUSION
## CLAUSE-LIABILITY-DIRECT (U.S.A.)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
NMA1477

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1. war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2. any act of terrorism.

   For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918

## SPECIAL CANCELLATION CLAUSE

In the event that an Underwriter:

(a)     ceases underwriting; or

(b)     is the subject of an order or resolution for winding up or formally proposes a scheme of
        arrangement; or

(c)     has its authority to carry on insurance business withdrawn,

the Assured may terminate that Underwriter's participation on this risk forthwith by giving notice and
the premium payable to that Underwriter shall be pro rata to the time on risk.  In the event there are
any notified, reserved or paid losses or circumstances, premium shall be deemed fully earned.  Any
return of premium shall also be subject to a written full release of liability from the Assured.

30/05/03
NMA2975

### U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
### NEW & RENEWAL BUSINESS ENDORSEMENT

This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.

In consideration of an additional premium of USD5,272 paid, it is hereby noted and agreed with effect from inception that the Terrorism exclusion to which this Insurance is subject, shall not apply to any "insured loss" directly resulting from any "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002" as amended ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the type insured by this Insurance directly resulting from an "act of terrorism" as defined in TRIA. The coverage provided by this Endorsement shall expire at 12:00 midnight December 31st, 2007, the date on which the TRIA Program is scheduled to terminate or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates. The Terrorism exclusion, to which this Insurance is subject, applies in full force and effect to any other losses and any act or events that are not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject. All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on the Underwriter's liability for payment for terrorism losses.

22/12/05
LMA5052

## EXCESS PRIOR AND PENDING LITIGATION

In consideration of the premium charged for the Policy, it is hereby understood and agreed that
Underwriters shall not be liable to make any payment for loss in connection with any claim made
against the Assureds based upon, arising out of, directly or indirectly resulting from or in consequence
of, or in any way involving:

1.      any prior and/or pending litigation as of 12:01 a.m. Local Standard Time on
        31st March, 1989, or

2.      any fact, circumstance, situation, transaction or event underlying or alleged in such litigation,

regardless of the legal theory upon which such claim is predicated.


06/01
LSW888A


## WAIVER OF APPLICATION (EXCESS)

In consideration of the payment of the premium charged for the Policy, it is hereby understood and
agreed as follows:

1.      The first paragraph of the Policy is deleted and the following is substituted therefor:

        "In consideration of the payment of the premium, in reliance upon the statements in any
        Application for previous policies issued providing continuous coverage until the inception
        date of this Policy, and subject to the provisions of this Policy, Underwriters and the Assureds
        agree as follows:"

2.      The first paragraph of Clause VI. Warranty Clause is deleted and the following is substituted
        therefor:

        "It is warranted that the particulars and statements contained in any Application for this
        Policy or contained in any Application for any policy issued by Underwriters of which this
        Policy is a renewal thereof and any material submitted therewith are the basis of this Policy
        and are to be considered as incorporated into and constituting a part of this Policy."


02/97
LSW957 (amended)

## PREMIUM PAYMENT WARRANTY

The Premium must be paid to and received by Underwriters on or before 24.00hrs on 30th June, 2007.
If this warranty is not complied with, then this Insurance shall be cancelled ab initio.

## ADDENDUM NUMBER 1

It is agreed that Underwriters hereon follow:

(a)     the terms of the "Outside Directorship Liability Non Accumulation Endorsement";

(b)     the terms "Amend Insuring Clause and Apply Coinsurance Endorsement";

(c)     the terms of the "Follow Form Endorsement";

(d)     the addition of de facto directors to the definition of Insured Person;

(e)     the addition of pre/post judgement interest to the definition of Loss;

(f)     defence costs exception to the Insured versus Insured Exclusion, specific to Australia;

(g)     the amendment to the Extended Reporting Period to allow for Notice of Circumstances;

(h)     the provision that Outside Entity versus Insured exceptions applicable to the Outside
        Directorship Liability coverage will be the same as those provided for under the Insured
        versus Insured clause;

all as stated in the Underlying Chubb Policy, and

(g)     the "Employed Lawyers" endorsement as stated in the Primary XL Insurance Policy and
        Underlying Chubb Policy.

## ADDENDUM NUMBER 2

It is hereby understood and agreed that wherever the words "Insured" and "Insurers" appear in this
Policy same shall be deemed to read "Assured" and "Underwriters" respectively.

## ADDENDUM NUMBER 3

It is hereby understood and agreed that the Underwriters hereon follow the "Employed Lawyers"
endorsement, per Primary XL Insurance Policy and Underlying Chubb Policy.

### ADDENDUM NUMBER 4

It is understood and agreed that no account taken hereunder of Robert L. Garber or Doris Staehr actions.

### LINES CLAUSE

This Insurance, being signed for 85.7142%, insures only that proportion of any loss, whether total or partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the manner provided in this Insurance.

The percentages signed in the Table are percentages of 100% of the amount(s) of Insurance stated herein.

### SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing Insurer who for any reason does not satisfy all or part of its obligations.

LSW 1001 (Insurance)

## Endorsement No. 1

Attaching to Lloyd's Policy Number 509/QA016907

In the name of  Lehman Brothers Holdings, Inc.

---

It is agreed that, effective from16th May 2007 both days at 12.01 a.m. local standard time, the
following amendments are made:

1.    Clause VIII. Outside Directorship Provisions, is amended to read as follows:

   If any loss arising from a claim made against any of the Assureds under endorsement
   #38 to XL Specialty Insurance Company's Primary Policy No. ELU097792-07 or
   renewal thereof, AMEND INSURED PERSON ENDORSEMENT, including any
   revisions or amendments made to endorsement #38, (hereinafter "ODL Claim"), is
   covered under any other valid and collectible policy(ies) issued by Underwriters, then
   the total amount the Insurer shall pay under all such policies for all covered loss an
   account of such claim shall not exceed the combined aggregate Limit of liability of
   $25,000,000.

   Further, and solely with respect to an ODL Claim, the Underlying Limits of Liability
   shall be deemed to be depleted or exhausted as a result of the issuers of the
   Underlying Insurance or any of the members of the issuers of the Underlying
   Insurance, and/or the Assureds, paying loss covered under the Underlying Insurance.

2.    The Excess Prior and Pending Litigation Clause is amended by deleting the word
   "Assureds" and replacing it with the words "directors and officers".

3.    Addendum Number 1 attached to the policy is amended to read as follows:

### "ADDENDUM NUMBER 1

It is agreed that Underwriters hereon follow:

1.    the terms "Amend Insuring Clause and Depletion of Underlying Limits Section
   Endorsement"

2.    the terms of the "Follow Form Endorsement"

All as stated in the Underlying Chubb Policy.

21/11/07

4.    Addendum Number 3 is deleted in its entirety and replaced as follows:

### ADDENDUM NUMBER 3

It is hereby understood and agreed that Drop Down/Difference in Conditions provision solely applicable to Insuring Clause I(A) (non-indemnifiable) of the Primary, if and to the extent that the insurer(s) of the Underlying Insurance is financially unable to indemnify any Assureds for loss as defined in such Underlying Insurance.

All other terms and conditions remain unchanged.

Dated: London, 19th November 2007



21/11/07 .



The Table of Syndicates referred to on the face of this Policy follows:

**BUREAU REFERENCE**   61146 15/06/07

**BROKER NUMBER**   0509

| PROPORTION % | SYNDICATE | UNDERWRITER'S REFERENCE |
|---|---|---|
| 47.6190 | 2987 | TF587K07A000 |
| 19.0476 | 2000 | 715Y00118450 |
| 19.0476 | 2488 | AKD567YF0619 |

**TOTAL LINE**
85.7142

**No. OF SYNDICATES**
3

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS IN RESPECT OF 2007
YEAR OF ACCOUNT

BUREAU USE ONLY
USL1  57    7475

# Companies
# Insurance Policy

We, the Insurers, hereby severally agree, in consideration of the payment to us, or the promise of payment to us, by the Insured of the premium specified in the Schedule, to insure against loss, damage, liability or expense in the proportions and manner hereinafter provided. Each Insurer shall be liable only for its own respective proportion.

In witness whereof the name of the Managing Director of Ins-sure Services Limited is subscribed on behalf of each of the Insurers in accordance with the provisions of the Services Agreement that each of the Insurers has with London Processing Centre Limited (a wholly owned subsidiary of the Ins-sure Services Limited).



**Managing Director**

This policy is not valid unless it bears the signature of the Managing Director of Ins-sure Services Limited.

| | |
|---|---|
| **Policy Number** | 509/QA016907 |
| **Insured** | Lehman Brothers Holdings, Inc. |
| **Period of Insurance** | From 16th May 2007 To 16th May 2008<br>Both days as expressed in the Co-Insuring Policy and for<br>such further period or periods as may be mutually agreed<br>upon. |
| **Type of Insurance** | Third Excess Directors and Officers Liability and Company<br>Reimbursement Insurance as more fully set forth in the Co-<br>Insuring Policy. |
| **Premium** | USD 527,199 for the period. |
| **Hereon** | 14.2858% of the Premium and Limit of Liability as more<br>fully set forth in the Co-Insuring Policy. |

**Co-Insurance Clause**

*This Policy is subject to the same terms, conditions, limitations and exclusions as more fully
defined in Policy Number 509/QA016907 issued by Lloyd's Policy Signing Office on the
identical subject matter and risk.*

## Several Liability

The subscribing Insurers' obligations under this contract are several and not joint and are limited solely to the extent of their individual signed subscriptions. The subscribing Insurers are not responsible for the subscription of any co-subscribing Insurer who for any reason does not satisfy all or part of its obligations.

### Insurers' Proportions

| BUREAU REFERENCE | | 0706150000513 |  |
|---|---|---|---|

| BUREAU REFERENCE | | 0706150001024 |
|---|---|---|
| PROPORTION % | CODE | MEMBER COMPANY AND REFERENCE |
| 14.2858000 | W3206 | WUERTTEMBERGISCHE VERSICHERUNG A.G. 201336400007 |

| 14.2858000 % | TOTAL |
|---|---|