**Hearing Date and Time: August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  August 11, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                 :
In re                                                            :        **Chapter 11 Case No.**
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                      :        **08-13555 (JMP)**
                                                                 :
                          **Debtors.**                           :        **(Jointly Administered)**
                                                                 :
-----------------------------------------------------------------x

**NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**AND LEHMAN COMMERCIAL PAPER INC., PURSUANT TO SECTIONS 105(a)**
**AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004(h),**
**FOR AUTHORIZATION TO GUARANTEE PAYMENT OF THE FEES**
**AND RELATED CHARGES OF LAZARD FRERES & CO. LLC,**
**AS INVESTMENT BANKER TO LEHMAN ALI, INC.,**
**INCURRED IN CONNECTION WITH THE INNKEEPERS RESTRUCTURING**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc., pursuant to sections 105(a)

and 363(b) of title 11 of the United States Code and Rule 6004(h) of the Federal Rules of

Bankruptcy Procedure, for authorization to guarantee payment of the fees and other related

charges of Lazard Frères & Co. LLC ("Lazard"), as investment banker to Lehman ALI Inc.,

incurred in connection with the restructuring of Innkeepers USA Trust, all as more fully

described in the Motion, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

        PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn: Shai Y. Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United

States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York,

New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto,

Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy

LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq.,

Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of

Unsecured Creditors appointed in these cases, and (v) Lazard Frères & Co. LLC, 30 Rockefeller

Plaza, New York, NY 10020, Attn: Brandon Aebersold; so as to be so filed and received by no

later than **August 11, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 27, 2010
       New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Hearing Date and Time: August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  August 11, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
                                           :

In re                              :        Chapter 11 Case No.
                                           :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :        **08-13555 (JMP)**
                                           :

               **Debtors.**        :        **(Jointly Administered)**
                                           :

---------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS
HOLDINGS INC. AND LEHMAN COMMERCIAL
PAPER INC., PURSUANT TO SECTIONS 105(a) AND
363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 6004(h), FOR AUTHORIZATION TO GUARANTEE
PAYMENT OF THE FEES AND RELATED CHARGES OF LAZARD
FRERES & CO. LLC, AS INVESTMENT BANKER TO LEHMAN ALI, INC.,
<u>INCURRED IN CONNECTION WITH THE INNKEEPERS RESTRUCTURING</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and Lehman Commercial Paper Inc.

("<u>LCPI</u>") and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and

debtors in possession (together, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates,

"<u>Lehman</u>"), file this Motion and respectfully represent:

## Preliminary Statement

1.        In June 2007, Lehman ALI Inc. ("Lehman ALI"), a wholly-owned, non-debtor subsidiary of LBHI, originated a $367,658,725 financing (the "Financing") to fund a portion of the approximately $1.8 billion acquisition of all outstanding shares of Innkeepers USA Trust ("Innkeepers") by Apollo Investment Corporation  ("AIC").  The financing was bifurcated into a $250,000,000 floating-rate first mortgage loan (the "Mortgage Loan") and an approximately $117,658,725 floating-rate mezzanine loan (the "Mezzanine Loan").[1]  Lehman ALI remains the lender under the Mortgage Loan, which currently is secured by 20 hotel properties and has a balance of approximately $220.2 million (plus late fees and any other charges payable under the agreements evidencing the Mortgage Loan).  Innkeepers financial situation has become dire in recent months, and Lehman ALI has focused on how to maximize its recovery on account of the Mortgage Loan.  As is typical in these types of circumstances, Lehman ALI has engaged an investment banker, Lazard Frères & Co. LLC ("Lazard"), to assist with effectuating a comprehensive restructuring of Innkeepers and the Mortgage Loan.

2.        Pursuant to the terms and conditions of the engagement letter (the "Engagement Letter") between Lehman ALI, Dechert LLP (as counsel to Lehman ALI), LBHI and Innkeepers (collectively, the "Parties"), and the related indemnification agreement, dated May 15, 2010 (the "Indemnification Agreement" and, together with the Engagement Letter, the "Engagement Agreement"), a copy of which is attached hereto as Exhibit 1, all amounts that accrue pursuant to the Engagement Letter (collectively, the "Fees"), so long as a restructuring agreed to between Lehman and Innkeepers is consummated at any time, particularly with respect

---

[1]  The Mezzanine Loan is held by LBHI's non-Debtor affiliate SASCO 2008-C2 LLC (the "Mezzanine Lender").  LBHI does not make any representations with respect to the Mezzanine Lender and are not seeking any approval with respect to the Mezzanine Loan or the Mezzanine Lender.

to the Mortgage Loan, will be payable in the first instance by Innkeepers, in accordance with the

Engagement Letter, the PSA (as defined herein), and interim or final cash collateral order, as

applicable, entered in the Innkeepers' chapter 11 cases (the "Cash Collateral Order").

3.      On July 19, 2010 Innkeepers and certain of its affiliates, filed voluntary

petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the

United States Bankruptcy Court for the Southern District of New York (Case No. 10-13800).

Innkeepers has filed a motion to approve a plan support agreement (the "PSA") pursuant to

which it is required to pay all reasonable professional fees and expenses incurred by Lehman in

connection with the proposed restructuring of Innkeepers, including in part, the conversion of the

Mortgage Loan into all or substantially all of the equity in a reorganized Innkeepers and the

subsequent sale of 50% of such equity.  [Docket No. 15].[2]

4.      In accordance with the Engagement Letter, in the event that Innkeepers

does not pay Lazard's Fees, Lehman ALI is obligated to pay such amounts.  Should both

Innkeepers and Lehman ALI fail to satisfy such fees and expenses, Lazard has required and

LBHI has agreed, subject to Court approval and certain conditions described herein, to serve as a

guarantor and "backstop" the payment of Lazard's Fees.  If LBHI is ever called upon to make

such payments, then it will be reimbursed by LCPI for any and all amounts paid as set forth

herein, and Lazard will file interim and final applications of allowances for approval by the

Court.

---

[2]  On May 13, 2010, this Court entered its *Order Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 6004 Authorizing the Transfer of Loans from Variable Funding Trust 2007-1 to Non-Debtor Affiliates* [Docket No. 9025] (the "Transfer Order").  Pursuant to the authority granted by the Transfer Order, the Mortgage Loan was transferred from VFT 2007 (as defined therein) to Lehman ALI.  The Transfer Order required generally, however, that Lehman ALI as transferee grant Lehman Commercial Paper Inc. ("LCPI") a note in the amount of the outstanding balance of the Mortgage Loan and a security interest therein, and seek Court approval with respect to the Mortgage Loan if LCPI would have been so required.  As such, on July 27, 2010, LCPI filed a motion with the Court for authority to consent to Lehman ALI's entry into the PSA (the "PSA Motion") [Docket No. 10465].

5.      As the lead debtor and parent company in the Lehman enterprise, LBHI has relationships with the Debtors' professionals, including Lazard.  Specifically, as set forth in detail herein, the Debtors have retained Lazard as their investment advisor in their chapter 11 cases.  Lazard's services and expertise are necessary to effectuate a comprehensive restructuring of Innkeepers and thereby assist Lehman ALI in receiving a higher value for its collateral. Further, LCPI has a direct interest in maximizing Lehman ALI's recovery under the Mortgage Loan because, as the result of certain intercompany transactions, LCPI holds the economic interests in the Mortgage Loan.  As such, guaranteeing payment of Lazard's Fees is in the best interests of the Debtors and the structure of such guarantee, as set forth herein, is necessary to accomplish this objective.  Accordingly, the Motion should be granted.

## Background

6.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

8.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

9.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

The Examiner issued a report of his investigation pursuant to section 1106 of the Bankruptcy

Code on March 11, 2010 [Docket No. 7531].

10.     On April 14, 2010, the Debtors filed a revised joint chapter 11 plan and

disclosure statement [Docket Nos. 8330 and 8332].

## Jurisdiction

11.     This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

12.     Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

13.     Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit

of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York in Support of First-Day Applications and Applications, filed on September 15,

2008 [Docket No. 2].

## Relief Requested

14.     Pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004(h), (a) LBHI requests authorization to guarantee and pay, if necessary and upon further approval of the Court of interim and final applications for allowances to be filed by Lazard, Lazard's Fees as investment banker to Lehman ALI with respect to restructuring Innkeepers, and (b) LCPI requests authorization to enter into an agreement pursuant to which LCPI will agree to reimburse LBHI to the extent any funds are expended on account of such guarantee (the "Reimbursement Agreement").

## Lehman ALI's Retention of Lazard

15.     Both prior to and since the commencement of Innkeepers' chapter 11 cases, Lehman ALI, with the Debtors' assistance, has been engaged in discussions with Innkeepers to negotiate and effectuate a comprehensive restructuring of the Mortgage Loan to maximize its recovery thereon.  Despite an initial restructuring of the Mortgage Loan in July 2009, as a result of the high amount of outstanding debt on Innkeeper's portfolio and the current state of the hospitality industry, Innkeepers filed for chapter 11 protection in order to pursue a more comprehensive restructuring, as contemplated by the PSA, as a means of preserving its value.

16.     To assist with the restructuring, Lehman ALI has engaged Lazard to provide certain investment banking services on the terms and conditions of the Engagement Agreement.  Generally, Lazard's services under the Engagement Agreement include, but are not limited to: (a) reviewing and analyzing the business, operations, financial projections, proposed capital structure and valuation of Innkeepers; (b) assisting Lehman ALI in connection with the financial aspects of negotiations with Innkeepers; and (c) evaluating any proposed restructuring.

Lazard and its senior professionals have an excellent reputation for providing high quality

financial advisory and investment banking services to debtors and creditors in chapter 11

reorganizations and other debt restructurings and it is well suited for this engagement.

***Professional Compensation***

17.    Lazard will receive a monthly fee of $150,000 (the "Monthly Fee") and a

restructuring fee equal to $1,500,000 (the "Restructuring Fee") that is payable upon the

consummation of a restructuring.  As described in the Engagement Agreement, a percentage of

the Monthly Fee after the first ten months will be credited against the potential Restructuring

Fee.  Additionally, pursuant to the Engagement Agreement, Lazard is entitled to be reimbursed

for the cost of certain overhead and out of pocket expenses.  Pursuant to the Engagement

Agreement, and in accordance with the PSA and the Cash Collateral Order, Innkeepers has

agreed to pay all Fees that accrue in the event a restructuring that is agreed to by both Lehman

ALI and Innkeepers is consummated (without limiting Lehman ALI's rights under the Mortgage

Loan).

18.    It is the Debtors understanding that Innkeepers will obtain authorization to

pay Lazard's fees in accordance with the terms and conditions of the Engagement Letter.  In the

event that any Fees are not paid by Innkeepers, all amounts payable pursuant to the Engagement

Agreement shall be paid by Lehman ALI.  Should both Innkeepers and Lehman ALI fail to pay

any such amounts, they will be paid by LBHI, subject to Lazard's filing of interim and final

applications for allowance of fees and reimbursement of expenses and approval thereof by the

Court.

19.    The compensation structure described above is comparable to

compensation generally charged by investment banking firms of similar stature to Lazard and for

comparable engagements, both in and out of court.  The above compensation structure is also

consistent with Lazard's normal and customary billing practices for engagements of this size and

complexity that require the level and scope of services outlined.  LBHI believes that the fees are

reasonable for services that are appropriate and necessary to maximize the value of the Mortgage

Loan.

20.     As the Court is aware, by order dated November 13, 2009 [Docket No.

2275], the Debtors retained Lazard as their investment advisor.  Lazard's services under the

Engagement Agreement will not relate to the Debtors' chapter 11 cases.  The Engagement

Agreement is specific to the restructuring of Innkeepers, in particular the Mortgage Loan, and

will not be governed by or in any way affect the Debtors' engagement of Lazard.

### *Proposed Indemnification Provisions*

21.     In addition to payment of the Monthly Fee, and the Restructuring Fee, and

reimbursement of expenses discussed above, Lehman ALI and Innkeepers have agreed in the

Engagement Letter to indemnify, reimburse and provide contribution to Lazard in accordance

with the Indemnification Agreement, such as reimbursement of reasonable out of pocket legal

expenses, indemnifying and holding Lazard and certain identified persons harmless for services

rendered, and providing contribution for any claim, expense or loss should the indemnification

provisions be held unenforceable.  In addition to guaranteeing the Monthly Fee, Restructuring

Fee and reimbursement of expenses, LBHI is guaranteeing any payments that are not paid by

Innkeepers or Lehman ALI under the Indemnification Agreement.

22.    To the extent LBHI is required to pay Innkeepers' indemnification obligations to Lazard, Lazard has agreed to certain modifications to the Indemnification Agreement, which are reflected in the form of order attached hereto as Exhibit 2: [3]

- All requests of Indemnified Persons for payment of indemnity pursuant to the Engagement Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable based upon the circumstances in which indemnity is sought;

- In no event shall an Indemnified Person be indemnified or receive contribution or other payment to the extent the Court determines that such claim or expense has arose from the bad faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person.

- In the event that an Indemnified Person seeks reimbursement for attorneys' fees from LBHI pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be annexed to Lazard's interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code.

### Reimbursement by LCPI

23.    As set forth in more detail in the PSA Motion, pursuant to the Transfer Order, on or around June 24, 2010, when the Mortgage Loan was transferred from LCPI to Lehman ALI, Lehman ALI granted LCPI (a) a note (the "Note") in the amount of the outstanding balance (at the time of transfer) of the Mortgage Loan with payment terms reflecting the payment terms of the Mortgage Loan and (b) a pledge of the Mortgage Loan for which control rights will attach upon non-payment of the Note by Lehman ALI.  As a result of these transactions, LCPI has an economic interest in Lehman ALI's recovery under the Mortgage Loan.

---

[3] Capitalized terms used but not defined in the below subparagraphs shall have the meaning ascribed to them in the Indemnification Agreement.

24.    Therefore, it is appropriate and in the best interests of LCPI to reimburse
LBHI to the extent LBHI is required to pay any funds in connection with its guarantee.
Accordingly, LCPI seeks authorization to enter into the Reimbursement Agreement with LBHI
which will memorialize LCPI's obligation to reimburse LBHI.

### Sound Business Reasons Support LBHI's
### Decision to Guarantee the Payment of Lazard's Fees

25.    Section 363(b) of the Bankruptcy Code, provides, in relevant part, that
"[t]he trustee, after notice and a hearing, may use…, other than in the ordinary course of
business, property of the estate."  11 U.S.C. § 363(b)(1).  Bankruptcy Code section 105(a)
further provides that the "court may issue any order, process, or judgment that is necessary or
appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

26.    Under applicable case law in this and other circuits, if a debtor's proposed
use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable
business judgment on the part of the debtor, such use should be approved.  *See Committee of
Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)
(requiring an "articulated business justification"); *Myers v. Martin (In re Martin)*, 91 F.3d 389,
395 (3d Cir. 1996) (noting that under normal circumstances, the court defers to the trustee's
judgment so long as there is a "legitimate business justification"); *In re Delaware & Hudson
R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business
purpose" test to evaluate motions brought pursuant to section 363(b)).

27.    It is generally understood that "[w]here the debtor articulates a reasonable
basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),
courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville
Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is

a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

28.     Sound business reasons support LBHI's decision to guarantee the payment of Lazard's Fees in connection with a restructuring of Innkeepers and LCPI agreeing to reimburse LBHI for any and all funds expended in connection therewith. Lazard's expertise and assistance is necessary to assist Lehman ALI to effectuate a restructuring that maximizes Lehman ALI's recovery on account of the Mortgage Loan (in which LCPI has an economic interest). The Debtors carefully considered the economics of the restructuring, and believe that the costs of Lazard's Fees that may have to be paid are far outweighed by the increased recovery Lehman ALI, and thereby LCPI, will be able to realize on account of its interest in the Mortgage Loan in a successful restructuring of Innkepers. In light of the benefits inuring to LCPI, and subject to LCPI's entry into the Reimbursement Agreement, the relief requested by the Motion represents an exercise of reasonable business judgment and should be approved.

### Relief Under Bankruptcy Rule 6004(h)

29.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). To effectuate a comprehensive restructuring of Innkeepers as soon as possible, and thereby preserve the value of investments made in and to Innkeepers, the Debtors believe it is important to immediately provide Lazard

with its requested assurances so it can provide the needed services without distraction.

Accordingly, the Debtors respectfully request that any order approving the restructuring be

effective immediately.

### Notice

30.    No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Motion in accordance with the procedures set forth in the second

amended order entered on June 17, 2010 governing case management and administrative

procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the

Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue

Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys

for Innkeepers; (vii) the attorneys for ALI; and (viii) the attorneys for Lazard.  LBHI submits

that no other or further notice need be provided.

31.    No previous request for the relief sought herein has been made by the

Debors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: July 27, 2010
       New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## Exhibit 1

**Engagement Agreement**

LAZARD

LAZARD FRÈRES & CO. LLC
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020
PHONE 212-632-6000
www.lazard.com

As of May 15, 2010

Michael J. Sage, Esq.
Partner
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797

cc:    Lehman ALI Inc.
       1271 Avenue of the Americas
       New York, NY 10020

       Lehman Brothers Holdings Inc.
       1271 Avenue of the Americas
       New York, NY 10020

       Innkeepers USA Trust
       340 Royal Poinciana Way, Suite 306
       Palm Beach, Florida 33480

Dear Michael:

This letter and the accompanying exhibit confirm the understanding between Lazard Frères &
Co. LLC ("Lazard") and Dechert LLP ("Dechert"), as counsel to and acting on behalf of Lehman
ALI Inc. ("Lehman"),a wholly-owned subsidiary of Lehman Brothers Holdings Inc. ("LBHI")
regarding the retention of Lazard by Dechert to act as investment banker to Lehman in
connection with a possible Restructuring.[1]  For purposes hereof, the terms (i) "Company" means
Innkeepers USA Trust and its subsidiaries and affiliates, collectively, and (ii) the "Loan
Agreement" means that certain loan agreement dated as of June 29, 2007 (as amended,
supplemented or modified from time to time), among Lehman and the Company[2].

I.    Scope of Services.  Lazard shall perform the following investment banking services for
      Lehman, in each case as necessary and if requested:

              a.    review and analyze the business, operations, and financial projections of
                    the Company;

---

[1] As used in this Agreement, the term "Restructuring" means any material restructuring, reorganization (whether or
not pursuant to chapter 11 of title 11 of the United States Code) and/or recapitalization involving all or a substantial
portion of the obligations pursuant to the Loan Agreement that is achieved, without limitation, through a material
rescheduling of the maturities or amendment of other material terms; repurchase, settlement or redemption;
conversion or exchange into equity or other new securities; foreclosure, deed-in-lieu or other similar transaction; or
sale.
[2] For the avoidance of any doubt, nothing in this agreement shall limit in any respect the obligations of the Company
or Lehman's rights pursuant to the Loan Agreement.

# LAZARD

b.    evaluate the Company's debt capacity in light of its projected cash flows;

c.    review and provide an analysis of any proposed capital structure for the Company;

d.    review and provide an analysis of any valuation of the Company or its assets;

e.    prepare an enterprise valuation analysis of the Company and/or an enterprise valuation of the Company's individual hotel properties;

f.    advise and attend meetings with Lehman and/or Dechert as well as meetings with the Company or other third parties as appropriate in connection with the matters set forth herein;

g.    advise and assist Lehman in evaluating the financial aspects of any proposed use of cash collateral, any potential debtor-in-possession ("DIP") loan or other financing by the Company;

h.    review and provide an analysis of any Restructuring proposed by any party;

i.    evaluate sources of capital as part of a Restructuring;

j.    assist Lehman in connection with the financial aspects of negotiations with the Company;

k.    provide delivery of expert reports and accompanying testimony, as reasonably requested by Lehman and which are customarily provided by financial advisors in similar situations, in support of any proceeding effecting a Restructuring or similar transaction, including any financings referred to above; and

l.    provide such other financial advisory services as Lehman may from time to time reasonably request and which are customarily provided by financial advisors in similar situations.

In rendering its services to Lehman hereunder, Lazard is not assuming any responsibility for Lehman's, the Company's, or any other person's underlying business decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring or other transaction(s) or decision(s). Lazard shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company or any other person or entity and shall have no

LAZARD

responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements. Nothing in this agreement is intended to obligate or commit Lazard or any of its affiliates to provide any services other than those set forth above. Lehman confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other specialist advice.

Lehman and Dechert agree to seek, through the Company, to provide Lazard with all information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that Lazard reasonably requests in connection with the services to be performed for Lehman hereunder, provided, however, that Lazard understands that neither Lehman nor Dechert makes any representation as to the accuracy or completeness of any information provided by the Company. At all times during Lazard's engagement Lazard will be assuming that all information furnished to Lazard (i) is accurate and complete in all material respects and (ii) does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made. In addition, Lazard will be using and relying on publicly available information and on data, material and other information furnished to Lazard by the Company, Lehman, Dechert and other parties. It is understood that in performing its services under this engagement, Lazard is not assuming any responsibility for independent verification of any information, including without limitation in connection with any valuation analysis performed by Lazard. **Lazard will not, as part of its engagement, undertake any appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice with respect thereto or with respect to any issues of solvency.**

In connection with this engagement, Lazard may utilize the services of one or more of its affiliates, in which case references herein to Lazard shall include such affiliates. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lazard.

II.    Compensation. In consideration for Lazard's services to Lehman hereunder, Lazard shall be paid the following:

A.    Monthly Fee.
    1.    A monthly fee (the "Monthly Fee") of $150,000, which shall accrue upon execution of this agreement and on the first day of each month thereafter until the termination of Lazard's engagement pursuant to Section IV.
    2.    50% of all Monthly Fees paid in respect of any month after the first ten months, and 100% of all Monthly Fees paid in respect of any month after the first fifteen months following the execution of this engagement shall be credited (without duplication) against any Restructuring Fee (defined below).

3

LAZARD

B.  <u>Restructuring Fee</u>.  A fee (the "<u>Restructuring Fee</u>"), payable upon consummation of a Restructuring, equal to $1,500,000.

C.  <u>Expense Reimbursement</u>.  In addition to any fees that may be payable to Lazard, Lazard shall be reimbursed for reasonable document production charges and all reasonable out-of-pocket expenses, including expenses of outside counsel, if any, retained with the consent of Lehman (which consent shall not be unreasonably withheld) travel and lodging, data processing and communications charges, courier services and other expenditures incurred in connection with, or arising out of Lazard's activities under or contemplated by, this engagement promptly upon submission by Lazard of statements for such expenses.

D.  Without limiting Lehman's rights under the Loan Agreement (all of which rights are expressly reserved), the Company agrees that it shall pay all fees that accrue pursuant to this agreement in the event a Restructuring agreed by between Lehman and the Company is consummated at any time.  Additionally, the Company agrees that it shall pay all fees that accrue during the first two months following the execution of this agreement, regardless of whether such a Restructuring is achieved during that period, and the payment of any fees accrued after two months shall be subject to further negotiation.  Except to the extent paid by the Company as set forth in the preceding two sentences, all amounts payable pursuant to this Section II shall be paid by Lehman.  To the extent the Company, in the first instance, and then Lehman, both fail to pay when due all amounts payable pursuant to this Section II, LBHI is obligated to pay such amounts.  No fee payable to any other person, by the Company, Lehman, LBHI, Dechert or any other party, shall reduce or otherwise affect any fee payable hereunder.

III.  <u>Indemnification</u>.  In addition to the compensation set forth in paragraph II above, as a material part of the consideration for Lazard to furnish its services under this agreement, Lazard requires that the Company and certain related persons indemnify, reimburse and provide contribution to Lazard in accordance with the provisions attached hereto as <u>Exhibit A</u>.  The provisions of <u>Exhibit A</u> are an integral part of this agreement, and the terms thereof are incorporated in entirety by reference herein.  The terms of <u>Exhibit A</u> shall survive any termination or expiration of this agreement or Lazard's engagement.  By signing below, the Company agrees to and acknowledges its obligations on <u>Exhibit A</u> hereto.  To the extent that the Company fails to pay when due any amounts payable pursuant to Exhibit A, Lehman agrees that it will promptly pay such amounts.  In the event the Company, in the first instance, and then Lehman, fail to pay when due any amounts payable pursuant to to Exhibit A, LBHI is obligated to satisfy such obligations.

4

# LAZARD

IV.    Termination.   The parties hereto agree that Lazard's engagement hereunder will automatically expire on consummation of a Restructuring and Lazard's engagement hereunder may be earlier terminated by either Lehman or Lazard at any time, provided, however, that (a) termination or expiration of Lazard's engagement hereunder shall not affect the Company's continuing obligations pursuant to Exhibit A, and the Company's, Lehman's, LBHI's and Dechert's respective agreements under paragraphs I, III, IV, V, VI, VII, VIII (to the extent set forth therein), IX, X and XI hereof, (b) notwithstanding any such termination or expiration, Lazard shall remain entitled to any fees due pursuant to paragraph II but not yet paid prior to such termination or expiration and to reimbursement of expenses pursuant to paragraph II incurred prior to such termination or expiration, and (c) in the case of termination by Lehman or any expiration of this agreement, Lazard shall remain entitled to full payment of all fees contemplated by paragraph II hereof in respect of any Restructuring resulting from negotiations occurring during the period from the date hereof until twelve months following such termination or expiration.

V.    Independent Contractor.   Each party hereto recognizes that Lazard has been engaged as an independent contractor to and only on behalf of Lehman, and that Lazard's engagement is not deemed to be on behalf of and is not intended to confer any rights upon Dechert or the Company, or any shareholder, creditor, owner or partner of the Company or Dechert, or any other person or entity not a party hereto (other than the Indemnified Persons).   Nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Lazard and Lehman, Dechert, the Company, any shareholder, creditor, owner or partner of the Company or Dechert, or any other person or entity.   The advice (oral or written) rendered by Lazard pursuant to this agreement is intended solely for the benefit and use of Lehman in considering the matters to which this agreement relates, and such advice may not be relied upon by any other person or entity (including Dechert or the Company), used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to Lazard be made by or on behalf of Lehman, Dechert or the Company, without the prior consent of Lazard.   Notwithstanding the foregoing, nothing herein shall prohibit any party hereto from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

LAZARD

VI.  <u>Limitation of Liability</u>.  Lehman, LBHI and Dechert agree that neither Lazard nor any Indemnified Persons (as defined in <u>Exhibit A</u>) shall have any liability (whether direct or indirect, in contract or tort or otherwise) to Lehman, LBHI, Dechert or their members, partners, interestholders or affiliates relating to, arising out of or in connection with this engagement or any transactions or conduct in connection therewith, except, in the case of Lehman and LBHI only, to the extent that any losses, claims, damages, liabilities or expenses incurred by Lehman and/or LBHI are found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith, willful misconduct or gross negligence.

VII.  <u>Successors and Assigns</u>.  This agreement (including <u>Exhibit A</u> hereto) shall be binding upon Lazard, Lehman, LBHI, Dechert and the Company and their respective successors and assigns.  The Company's obligations hereunder are joint and several.

VIII.  <u>Confidentiality; Privileged and Confidential Work Product</u>.  Except as may be required by law, regulation (including regulations or rules of any governmental or self-regulatory agency with appropriate jurisdiction), legal process or valid judicial or administrative process, (i) Lazard will not disclose to any third party (other than to Lehman and its advisors, including Dechert) any portion of the information provided by the Company which is not otherwise available to such third party or publicly available, and (ii) Lazard will not use such confidential information for any purpose other than pursuant to our engagement hereunder. Except as may be required by law, regulation (including regulations or rules of any governmental or self-regulatory agency with appropriate jurisdiction), legal process or valid judicial or administrative process, Lazard will not disclose to anyone, without Lehman's permission, the content of any oral or written confidential communication received from Lehman or Dechert during the course of Lazard's engagement hereunder or any information gained from the inspection or review of any records or documents provided by Lehman or Dechert that are identified as confidential. Written reports, memoranda or status summaries that Lazard prepares under this Agreement and delivers to Lehman or Dechert will be maintained in accordance with Lazard's customary retention procedures and, at the request of Dechert, shall be prominently labeled "Privileged and Confidential."  The obligations set forth in this paragraph VIII shall survive any termination or expiration of Lazard's engagement hereunder for a period of twelve months.

LAZARD

As of May 15, 2010
Page 7

IX.    <u>Authority</u>.  Each party hereto represents and warrants that it has all requisite power and authority to enter into this agreement and the transactions contemplated hereby, save, in the case of LBHI only, for approval by the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") of LBHI's entry into and performance of this agreement as referenced to in Section X of this agreement.  Each party hereto further represents and warrants that this agreement has been duly and validly authorized by all necessary corporate or other action on the part of such party, has been duly executed and delivered by such party and constitutes a legal, valid and binding agreement of such party, enforceable in accordance with its terms, except, in the case of LBHI only, it shall be a legal, valid and binding agreement of LBHI upon approval of LBHI's entry into and performance of this agreement by the Bankruptcy Court.  For the avoidance of any doubt, the obligations of Lehman and Dechert set forth herein shall be valid and binding irrespective of whether the Bankruptcy Court approves LBHI's entry into and performance of this agreement.

X.    <u>Retention in Chapter 11 Proceedings</u>.  The Company agrees that it shall use its best efforts to obtain authorization from the Bankruptcy Court in connection with any debtor in possession financing or cash collateral order related to the assets securing the Company's obligations under the Loan Agreement entered in the Company's chapter 11 case to pay, reimburse and indemnify Lazard on the terms and conditions set forth in this agreement and that such obligations shall be entitled to administrative expense priority. In addition, LBHI agrees that it will use its reasonable commercial efforts to obtain authorization from the Bankruptcy Court to guarantee Lehman's payment obligations to Lazard on the terms and conditions set forth in this agreement.  Lazard agrees that during the pendency of LBHI's bankruptcy proceeding, to the extent Lazard is paid or requests payment of indemnity from LBHI, it shall file interim and final applications for allowance of the fees and expenses payable to it by LBHI under the terms of this agreement, pursuant to the applicable Federal Rules of the Bankruptcy Procedures and the local rules and order of the Bankruptcy Court.

XI.    <u>Miscellaneous</u>.  This agreement and <u>Exhibit A</u> constitute the entire understanding of the parties hereto as to the matters set forth herein and in <u>Exhibit A</u>, and shall supersede all prior understandings and proposals, whether written or oral, relating to any of the matters contemplated herein or in <u>Exhibit A</u>.  This agreement may by executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument.  This agreement may only be amended or waived by a writing signed by the parties hereto.

7

LAZARD

XII.   <u>Choice of Law</u>.   This agreement and any claim related directly or indirectly to this agreement (including any claim concerning advice provided pursuant to this agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law.   No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, including the Bankruptcy Court, and each of the parties hereby submits to the jurisdiction of such courts.   Each party hereto hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH THIS ENGAGEMENT IS HEREBY WAIVED BY EACH PARTY HERETO.

[Remainder of page intentionally left blank]

# LAZARD

If the foregoing agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____
   Andrew T. Yearley
   Managing Director

AGREED TO AND ACCEPTED
as of the date first above written:

DECHERT LLP, on behalf of itself

By. _____
   Name: Michael J. Sage
   Title: Partner

LEHMAN ALI INC.

By. _____
   Name:
   Title:

LEHMAN BROTHERS HOLDINGS INC.,
a Delaware corporation, as Debtor and Debtor in Possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
   Name:
   Title:

INNKEEPERS USA TRUST, on behalf of itself and its affiliates,

By. _____
   Name:
   Title:

9

# LAZARD

As of May 15, 2010
Page 9

If the foregoing agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____
Andrew T. Yearley
Managing Director

AGREED TO AND ACCEPTED
as of the date first above written:

DECHERT LLP, on behalf of itself

By._____
Name: Michael J. Sage
Title: Partner

LEHMAN ALI INC.

By._____
Name: Nancy Shanik
Title: AUTHORIZED SIGNATORY

LEHMAN BROTHERS HOLDINGS INC.,
a Delaware corporation, as Debtor and Debtor in Possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Nancy Shanik
Title: AUTHORIZED SIGNATORY

INNKEEPERS USA TRUST, on behalf of itself and its affiliates,

By._____
Name:
Title:

9

# LAZARD

As of May 15, 2010
Page 9

If the foregoing agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____
Andrew T. Yearley
Managing Director

AGREED TO AND ACCEPTED
as of the date first above written:

DECHERT LLP, on behalf of itself

By. _____
Name: Michael J. Sage
Title: Partner

LEHMAN ALI INC.

By. _____
Name:
Title:

LEHMAN BROTHERS HOLDINGS INC.,
a Delaware corporation, as Debtor and Debtor in Possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:
Title:

INNKEEPERS USA TRUST, on behalf of itself and its affiliates,

By. _____
Name: Mark A. Murphy
Title: VP

9

LAZARD

LAZARD FRÈRES & CO. LLC
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020
PHONE 212-632-6000
www.lazard.com

## EXHIBIT A

Innkeepers USA Trust
340 Royal Poinciana Way, Suite 306
Palm Beach, Florida 33480

In connection with our retention by Dechert LLP ("Dechert"), as counsel to and acting on behalf of Lehman ALI Inc ("Lehman"),a wholly-owned subsidiary of Lehman Brothers Holdings Inc., to advise and assist Lehman with the matters set forth in the engagement letter of even date herewith (the "Engagement Letter"), Innkeepers USA Trust and its controlled affiliates (collectively, "you") and we are entering into this letter agreement. Capitalized terms used herein without definition shall have the meanings assigned to them in the Engagement Letter. It is understood and agreed that in the event that Lazard Frères & Co. LLC or any of our affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Lazard Frères & Co. LLC, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including your securityholders or creditors, related to, arising out of or in connection with our engagement, you will promptly reimburse each such Indemnified Person for its reasonable out-of-pocket legal and other expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith. You will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is initiated or brought by you or on your behalf and whether or not in connection with any action, claim, proceeding or investigation in which you or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith, willful misconduct or gross negligence. You also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to you or your securityholders or creditors related to, arising out of or in connection with our engagement except to the extent that any loss, claim, damage or liability is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith, willful misconduct or gross negligence.

If for any reason the foregoing indemnification is held unenforceable (other than due to a failure to meet the standard of care set forth above), then you shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by

# LAZARD

you and your securityholders and creditors on the one hand and the Indemnified Persons on the other hand in the matters contemplated by our engagement as well as the relative fault of yourselves and such persons with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. You agree that for the purposes hereof the relative benefits received, or sought to be received, by you and your securityholders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid by or to you and your securityholders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) in connection with which we have been engaged to perform investment banking services bears to (ii) the fees paid or proposed to be paid to us in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services. Your reimbursement, indemnity and contribution obligations of under this agreement shall be joint and several, shall be in addition to any liability which you may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of yourselves, ourselves, and any other Indemnified Persons.

You agree that, without our prior written consent (which will not be unreasonably withheld), you will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution could be reasonably be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby. This agreement and any claim related directly or indirectly to this agreement shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York or the United States Bankruptcy Court for the Southern District of New York, and each of us hereby submits to the jurisdiction of such courts. You hereby waive on behalf of yourself and your successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable. You (on your own behalf and, to the extent permitted by applicable law, on behalf of your securityholders and creditors) waive all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in

# LAZARD

As of May 15, 2010
Page 3

connection with our engagement.   This agreement shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.

Very truly yours,

LAZARD FRERES & CO. LLC

By _____
Andrew T. Yearley
Managing Director

AGREED TO AND ACCEPTED
as of the date first above written:

INNKEEPERS USA TRUST, on behalf of itself and its affiliates

By. _____
Name: Mark Murphy
Title: VP

3

## <u>Annex A</u>

**Proposed Form of Order**

US_ACTIVE:\43433216\15\58399.0008

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                                                    :
In re                                               :    Chapter 11 Case No.
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :    08-13555 (JMP)
                                                    :
                            Debtors.                :    (Jointly Administered)
                                                    :
-------------------------------------------------------------------x

## ORDER GRANTING MOTION OF
## LEHMAN BROTHERS HOLDINGS INC. AND
## LEHMAN COMMERCIAL PAPER INC., PURSUANT
## TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY
## CODE AND BANKRUPTCY RULE 6004(h), FOR AUTHORIZATION
## TO GUARANTEE PAYMENT OF THE FEES AND RELATED CHARGES
## OF LAZARD FRERES & CO. LLC, AS INVESTMENT BANKER TO LEHMAN ALI,
## INC.,  INCURRED IN CONNECTION WITH THE INNKEEPERS RESTRUCTURING

Upon the motion, dated July 27, 2010 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI"), pursuant to sections

105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule

6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for

authorization to guarantee payment of the fees, expenses and indemnification obligations

(collectively, the "Fees") of Lazard Frères & Co. LLC ("Lazard") as investment banker to

Lehman ALI Inc. ("Lehman ALI") incurred in connection with the restructuring of Innkeepers

USA Trust, all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of

New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.);

and consideration of the Motion and the relief requested therein being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the second amended order entered June 17, 2010 governing case

management and administrative procedures [Docket No. 9635] to (i) the United States Trustee

for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured

Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v)

the United States Attorney for the Southern District of New York; and (vi) Lazard, and it

appearing that no other or further notice need be provided; and the Court having found and

determined that the relief sought in the Motion is in the best interests of LBHI, its estates and

creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

      ORDERED that the Motion is granted; and it is further

      ORDERED that pursuant to sections 105(a) and 363(b) of the Bankruptcy Code,

LBHI is authorized to guarantee Lazard's Fees as investment banker to Lehman ALI in

connection with the restructuring of Innkeepers, on the terms and conditions set forth in the

Engagement Agreement;[1] and it is further

      ORDERED that during the pendency of LBHI's chapter 11 cases, to the extent

Lazard is entitled to payment of its Fees from LBHI, Lazard shall file interim and final

applications for allowance of all such Fees pursuant to the applicable Bankruptcy Rules, the

Local Rules of the Bankruptcy Court for the Southern District of New York, and orders of the

Court; and it is further

---

[1] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

ORDERED that notwithstanding anything in the Engagement Agreement to the

contrary, LBHI is authorized to provide indemnification contribution and reimbursement to

Lazard and its affiliates, and its and their respective directors, officers, members, agents,

employees and controlling persons, and each of their respective successors and assigns

(collectively, the "Indemnified Persons"), subject to the following conditions:

- All requests of Indemnified Persons for payment of indemnity pursuant to the Engagement Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable based upon the circumstances in which indemnity is sought;

- In no event shall an Indemnified Person be indemnified or receive contribution or other payment to the extent the Court determines that such claim or expense has arose from the bad faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person.

- In the event that an Indemnified Person seeks reimbursement for attorneys' fees from LBHI pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be annexed to Lazard's interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code.

ORDERED that LBHI is authorized to take all further actions that may be

necessary or required for its entry into and performance of the Engagement Agreement; and it is

further

ORDERED that LCPI is authorized to enter into the Reimbursement Agreement

and, in accordance with the Reimbursement Agreement to the extent LBHI is required to expend

any funds in connection with its obligations as set forth in this Order, LCPI shall promptly

reimburse LBHI for any and all such expenditure; and it is further

ORDERED that this Order shall be effective immediately upon its entry and the

requirements of Bankruptcy Rule 6004(h) are waived; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: August __, 2010
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE