meaning or interpretation of any language contained in this Agreement. References to Sections, unless otherwise indicated, are references to Section of this Agreement. All Schedules and Exhibits to this Agreement are hereby made a part hereof and incorporated herein by reference for all purposes. Reference to any Schedule or Exhibit herein shall be to the Schedules and Exhibits attached hereto.

28.    *Effectiveness of Agreement*. This Agreement shall be effective upon execution by the Parties, subject only to the Lehman Court Approval and the Bankhaus Creditors' Approval.

29.    *No Personal Liability*. The Parties (and solely for the purposes of this <u>Section 29</u>, including the LBB InsAdmin also acting on his own and personal behalf) accept and agree that this Agreement and all transactions and measures contained herein do not give rise to any personal liability on the part of the LBB InsAdmin, his firm and its partners and employees, and his representatives or other professional advisors as well as the members of the Bankhaus Creditors Committee, and to the extent any such personal liability existed, the Parties explicitly waive any and all potential rights and claims against him, his firm and its partners and employees, and his representatives and other professional advisers and members of the Bankhaus Creditors Committee personally. The LBB InsAdmin further accepts and agrees that this Agreement and all transactions and measures contained herein do not give rise to any personal liability on the part of any of the officers, directors, employees, members, consultants, asset managers, representatives or professional advisors of any of the Lehman Parties or Transferees and to the extent any such personal liability existed, the LBB InsAdmin explicitly waives any and all potential rights and claims against all of the aforementioned persons. Unless otherwise provided by German mandatory law, any claim by a Party against the LBB InsAdmin or Bankhaus arising under or relating to this Agreement shall only be satisfied out of the assets of the insolvency estate of Bankhaus, and any claim by a Party against any Lehman Party or Transferee arising under or relating to this Agreement or any of the Ancillary Documents shall only be satisfied out of the assets of such Lehman Party or Transferee.

30.    *Limit of Liability*. To the extent any claim or cause of action is brought that directly or indirectly relates to or arises under this Agreement, the liability of the Parties for such claim or cause of action shall not exceed the Purchase Price.

31.    *Severability and Construction*. If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect if the essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

32.    *Waiver of Jury Trial*. EACH OF THE PARTIES HERETO HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY OF THE ANCILLARY DOCUMENTS OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR

ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR ANY OF THE ANCILLARY DOCUMENTS OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT OR ANY OF THE ANCILLARY DOCUMENTS AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT OR ANY OF THE ANCILLARY DOCUMENTS WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS <u>SECTION 32</u> IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

Dr. Michael C. Frege, in his capacity as insolvency administrator over the assets of LEHMAN BROTHERS BANKHAUS AKTIENGESELLSCHAFT i. Ins.

By: /s/ Michael C. Frege _____

Name:  Dr. Michael C. Frege
Title:  Insolvency Administrator (*Insolvenzverwalter*)

By: /s/ Daniel J. Ehrmann _____
Name:  Daniel J. Ehrmann
Title:  Vice President

LEHMAN ALI, INC., a Delaware corporation

LEHMAN COMMERCIAL PAPER INC., a New York corporation, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: /s/ Daniel J. Ehrmann _____
Name:  Daniel J. Ehrmann
Title:  Vice President

By: Daniel J. Ehrmann _____
Name:  Daniel J. Ehrmann
Title:  Vice President

SCHEDULE 1

DEFINITIONS

"Actual Closing Date" shall have the meaning set forth in Section 2.c. hereof.

"Affiliate" shall mean, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with, such Person. A Person will be deemed to control another Person if such Person possess, directly or indirectly, the power to direct or cause the direction of the management and policies of such other Person, whether through the ownership of voting securities, partnership interests or other equity interests, by contract or otherwise. For purposes of clarity, Bankhaus shall not be considered to be an Affiliate of any of the Lehman Parties.

"Agreement" shall have the meaning set forth in the Preamble.

"ALI" shall have the meaning set forth in the Preamble.

"Ancillary Category 2 Loan Documents" shall have the meaning set forth in Section 2.a.ii. hereof.

"Ancillary Category 4 Loan Documents" shall have the meaning set forth in Section 2.a.iii. hereof.

"Ancillary Documents" shall mean each of the documents that are part of the Bankhaus Closing Deliveries and/or the Lehman Closing Deliveries and any other document, instrument, certificate or agreement explicitly agreed and designated by the Parties to be executed pursuant to the terms of this Agreement or in connection herewith or otherwise in furtherance of the Closing and the consummation of the transactions contemplated by this Agreement.

"Applicable Value" shall mean, as of October 31, 2009, the value of each Category 1 Loan and each Category 4 Loan reflected on Schedule 2 and Schedule 4, respectively, which shall be reduced for purposes of calculating the Purchase Price by any principal payments made between October 31, 2009 and the applicable Closing Date. Any change in the Applicable Values for purposes of calculating the Purchase Price shall result solely from principal payments made between October 31, 2009 and the applicable Closing Date and not from changes in market values. Under no circumstances shall the Applicable Values include or be increased by any amounts which have been funded, directly or indirectly, by any Lehman Party or any Affiliate thereof on account of the Category 1 Loans or Category 4 Loans at any time on or after September 15, 2008 (including, without limitation, any amounts which may be funded in respect of the M-Loans). Nothing contained herein shall in any way modify or affect any existing agreements between or among the Parties in respect of any such fundings.

"Assigned Category 1 Interests" shall have the meaning set forth in Section 8.a.iii. hereof.

"Bankhaus" shall have the meaning set forth in the Preamble.

"Bankhaus Assets" shall have the meaning set forth in Section 2.a. hereof.

"Bankhaus Closing Deliveries" shall have the meaning set forth in Section 8.b. hereof.

"Bankhaus' Creditors Approval" shall have the meaning set forth in Section 3.a. hereof.

"Bankhaus Creditors Assembly" shall have the meaning set forth in Section 3.a. hereof.

"Bankhaus Creditors Committee" shall have the meaning set forth in Section 3.a. hereof.

"Bankruptcy Code" shall have the meaning set forth in the Recitals.

"Bankruptcy Court" shall have the meaning set forth in the Recitals.

"Business Days" shall mean days on which commercial banks in New York, New York and Frankfurt am Main are both open to the public.  For the avoidance of doubt, Saturdays and Sundays are not Business Days.

"Category 1 Assignment and Assumption Agreements" shall have the meaning set forth in Section 8.b.iii. hereof.

"Category 1 Loan BH Interests" shall have the meaning set forth in Section 2.a.i. hereof.

"Category 1 Loan Cash" shall mean:  (i) all cash and cash equivalents held, as of October 31, 2009, as segregated funds by or on behalf of any of the Lehman Parties and derived from payments made under or in respect of any of the Category 1 Loans including, without limitation, any proceeds from insurance, condemnation or the sale, liquidation or disposition of collateral or otherwise, and (ii) any Debt Service Payments made in respect of any Category 1 Loans from October 31, 2009 through the Initial Closing Date.  As of October 31, 2009, the Lehman Parties and/or their respective Affiliates, agents and servicers are holding $437,456,054.18 in respect of Category 1 Loan Cash.

"Category 1 Loan Cash Amount" shall have the meaning set forth in Section 2.a.iv. hereof.

"Category 1 Loan Holder" shall have the meaning set forth in Section 2.a.iv. hereof.

"Category 1 Loan Participation Termination Agreement" shall have the meaning set forth in Section 8.b.ii. hereof.

"Category 1 Loan Participations" shall have the meaning set forth in Section 4 hereof.

"Category 1 Loan Transferee" shall have the meaning set forth in Section 2.a.i. hereof.

"Category 1 Loans" shall have the meaning set forth in Section 2.a.i. hereof.

"Category 2 Loan Agency Substitution" shall have the meaning set forth in Section 2.a.ii. hereof.

"Category 2 Loan BH Interests" shall have the meaning set forth in Section 2.a.ii. hereof.

"Category 2 Loan Cash" shall mean: (i) all cash and cash equivalents held, as of November 17, 2009, as segregated funds by or on behalf of any of the LBB InsAdmin or Bankhaus and derived from payments made under or in respect of any of the Category 2 Loans and the Repaid Category 2 Loans including, without limitation, any proceeds from insurance, condemnation or the sale, liquidation or disposition of collateral or otherwise, and (ii) any Debt Service Payments made under any Category 2 Loans or under the Repaid Category 2 Loans from November 17, 2009 through the applicable Closing Date. As of November 17, 2009, the LBB InsAdmin and/or Bankhaus and/or their agents and servicers are holding $4,263,889.24 in respect of Category 2 Loan Cash. The Category 2 Loan Cash attributable to each Category 2 Loan as of November 17, 2009 is reflected on Schedule 3 hereto.

"Category 2 Loan Cash Amount" shall have the meaning set forth in Section 2.a.v. hereof.

"Category 2 Loan Transferee" shall have the meaning set forth in Section 2.a.ii. hereof.

"Category 2 Loans" shall have the meaning set forth in Section 2.a.ii. hereof.

"Category 3 Loans" shall have the meaning set forth in Section 12 hereof.

"Category 4 Loan Agency Substitution" shall have the meaning set forth in Section 2.a.iii. hereof.

"Category 4 Loan BH Interests" shall have the meaning set forth in Section 2.a.iii. hereof.

"Category 4 Loan Transferee" shall have the meaning set forth in Section 2.a.iii. hereof.

"Category 4 Loans" shall have the meaning set forth in Section 2.a.iii. hereof.

"Closing" shall mean either the Initial Closing or a Subsequent Closing.

"Closing Conditions" shall have the meaning set forth in Section 7 hereof.

"Closing Date" shall mean either the Initial Closing Date or a Subsequent Closing Date.

"Debt Service Payments" shall mean any payments in respect of principal, interest (including default rate interest), late fees, exit fees, prepayment premiums or penalties, and all other payments made under a Loan exclusive of Escrow Funds.

"Default Rate" shall mean a rate of interest equal to the LIBOR Rate in effect from time to time plus 500 basis points per annum.

"Deferred Debt Service Payment" shall have the meaning set forth in Section 2.d.iv. hereof.

"Deferred Purchased Assets" shall have the meaning set forth in Section 9 hereof.

"Escrow Funds" shall mean all funds held by, on behalf of or for the benefit of any of the Lehman Parties or the LBB InsAdmin, as applicable, as reserve or escrow funds under the applicable Loan Documents (including any interest reserves) and not otherwise applied to the applicable Loan or to any amounts outstanding under such Loan, but expressly excluding any

such funds which have been forfeited to the applicable lender following the occurrence of a default or event of default under such Loan Documents and which have been applied by the applicable lender to or on account of the applicable Loans.

"Essential Original Loan Documents" shall have the meaning set forth in <u>Section 8.b.viii</u> hereof.

"Execution Date" shall have the meaning set forth in the Preamble.

"Facility Participation Loans" shall mean, collectively, the Category 2 Loans described on <u>Schedule 3</u> as "00003052", "00008510", "00008511", and "00004155".

"Facility Participation Participants" shall mean, collectively, Spruce CCS, Ltd. and Variable Funding Trust 2008-1.

"Failed Closing Date" shall have the meaning set forth in <u>Section 2.c.</u> hereof.

"Final Order" shall mean an order or judgment of a court of competent jurisdiction that has not been reversed, vacated or stayed, and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule may be filed relating to such order shall not cause such order to not be a Final Order.

"Fulfillment Rejection Claims" shall mean any claims or counterclaims by any borrower, guarantor or other obligor under a Category 2 Loan or Category 4 Loan listed on Schedule 12 as a result of the rejection by the LBB InsAdmin or a deemed rejection by the LBB Ins Admin (by his act or omission) of the fulfillment of any outstanding commitment under any of the Loan Documents pertaining to any of those Category 2 Loans or Category 4 Loans within the meaning of Section 103 of the German Insolvency Code.

"Governmental Authority" means any U.S. federal, state or local or any foreign government, or political subdivision thereof, or any multinational organization or authority or any authority, agency, commission, official or other instrumentality entitled to exercise any administrative, executive, judicial, legislative, police, regulatory or taxing authority or power, any court or tribunal (or any department, bureau or division thereof), or any arbitrator or arbitral body, including, without limitation, the German Financial Regulatory Authority (*Bundesanstalt für Finanzdienstleistungsaufsicht*), of the United States, the Federal Republic of Germany or any other nation or any foreign or domestic state, county, city or other political subdivision thereof.

"Governmental Order" means any order, writ, judgment, injunction, decree, stipulation, ruling, determination or award entered by or with any Governmental Authority.

"Guarantee" shall have the meaning set forth in the Recitals.

"Initial Closing" shall have the meaning set forth in Section 7 hereof.

"Initial Closing Date" shall have the meaning set forth in Section 7 hereof.

"LBB InsAdmin" shall have the meaning set forth in the Preamble.

"LBB InsAdmin Closing Conditions" shall have the meaning set forth in Section 7.e. hereof.

"LBHI" shall have the meaning set forth in the Preamble.

"LBHI Agreements" shall have the meaning set forth in the Recitals.

"LBHI Release Agreement" shall have the meaning set forth in Section 8.b.vii. hereof.

"LCPI" shall have the meaning set forth in the Preamble.

"Legal Requirement" means any U.S. federal, state or local or foreign constitution, treaty, law, statute, standard, ordinance, code, rule, regulation, resolution or promulgation, or any Governmental Order, or any license, franchise, permit or similar right granted under any of the foregoing, or any similar provision having the force or effect of law.

"Lehman Bankruptcy Case" shall have the meaning set forth in the Recitals.

"Lehman Closing Conditions" shall have the meaning set forth in Section 7.d. hereof.

"Lehman Closing Deliveries" shall have the meaning set forth in Section 8.a. hereof.

"Lehman Court Approval" shall have the meaning set forth in Section 7.c. hereof.

"Lehman Court Order" shall have the meaning set forth in Section 6.a. hereof.

"Lehman Party" and "Lehman Parties" shall have the meaning set forth in the Preamble.

"LIBOR Rate" shall mean the quoted offered rate for one-month United States dollar deposits with leading banks in the London interbank market that appears on Dow Jones Market Services (formerly Telerate) page 3750 (or the successor thereto) ("Page 3750") (provided that at least two offered rates appear on Page 3750) as of 11:00 a.m., London time (rounded upward, if necessary, to the nearest one-sixteenth of one percent (1/16%)).

"Loan Documents" shall mean all promissory notes, mortgages, deeds of trust, pledge agreements, indentures, loan agreements, credit agreements, security agreements, environmental indemnities, guaranties and other documents and agreements evidencing, securing, guaranteeing or otherwise relating to any of the Loans.

"Loan Files" shall mean all records in the actual possession of the LBB InsAdmin (or Bankhaus) or in the possession of any servicer, custodian or other third party acting for the LBB InsAdmin, relating to the servicing, title, ownership or enforcement of any of the Loans, as well as all

reports prepared with respect to the assets securing any of the Loans, such as environmental and engineering reports, appraisals, valuations or analyses, excluding, however, any attorney work product.

"Loans" shall mean, collectively, the Category 1 Loans, Category 2 Loans and Category 4 Loans.

"Losses" shall mean any and all losses, liabilities, damages, fines, penalties, fees, amounts paid in settlement, Taxes, reasonable costs (including costs of investigation or enforcement), reasonable expenses and claims (including, without limitation, interest, reasonable fees and disbursements of counsel, witness fees and court costs).

"M-Interest Payments" shall have the meaning set forth in Section 2.d.iii hereof.

"M-Loans" shall mean, collectively, those certain Loans described on Schedule 4 as "00009929/00009930" and "00009927/00009928" which Loans were made to C. de la R. (French SAS) ("Retail Borrower") and R. de la R. (French SAS) ("Residential Borrower"),[1] respectively, pursuant to the terms of that certain credit and loan agreement r (Convention de Pret et de Credit r) entered into pursuant to a notarial deed dated August 5, 2008 between Bankhaus, as lender, and Retail Borrower, as borrower, and that certain credit and loan agreement R2 (Convention de Pret et de Credit R2) entered into pursuant to a notarial deed dated August 5, 2008 between Bankhaus, as lender, and Residential Borrower, as borrower, respectively.

"Master Participation Agreement" shall have the meaning set forth in the Recitals.

"Material Event" shall mean the occurrence of any of the following:  (i) a suspension or material limitation in trading in securities generally on the New York Stock Exchange, Nasdaq or the over-the-counter market, (ii) a general moratorium on commercial banking activities declared by either federal or New York State authorities or a material disruption in commercial banking or securities settlement or clearance services within or outside the United States, (iii) the outbreak or escalation of hostilities involving the United States or the declaration by the United States of a national emergency or war, (iv) the bankruptcy or default of any major and/or critical financial institution, or (v) the occurrence of any other calamity or crisis.  "Material Event" shall not include the bankruptcy or insolvency of any particular borrower or obligor under any Loan Documents even if the value of the applicable Loan is material and represents more than twenty-five percent (25%) of the aggregate value of all of the Bankhaus Assets.

"Material Value Change" shall have the meaning set forth in Section 7.d.iv. hereof.

"Mutual Release Agreement" shall have the meaning set forth in Section 8.a.vi. hereof.

"Net Payment Amount" shall have the meaning set forth in Section 2.c. hereof.

---

[1] The names of the borrowers have been intentionally abbreviated.

"Non-Category 1 Assignment and Assumption Agreements" shall have the meaning set forth in Section 8.b.iv. hereof.

"O.T.A. Senior Loan" shall mean that certain Loan described on Schedule 2 as "WH6370".

"Other Loans" shall have the meaning set forth in Section 12 hereof.

"Outside Initial Closing Date" shall have the meaning set forth in Section 7 hereof.

"Outside Subsequent Closing Date" shall have the meaning set forth in Section 9 hereof.

"Parent Resolution" shall have the meaning set forth in the Recitals.

"Participation Agreement" shall have the meaning set forth in the Recitals.

"Party" and "Parties" shall have the meaning set forth in the Preamble.

"Pending Notice" shall have the meaning set forth in Section 4 hereof.

"Person" shall mean and include an individual, corporation, partnership (limited or general), joint venture, association, trust, limited liability company, any other unincorporated organization or entity, or any Governmental Authority.

"Proceeds" shall mean any consideration received from the sale, exchange, license, lease or other disposition of any specified asset or property, any value received as a consequence of the possession thereof, and any payment received from any insurer or other Person as a result of the destruction, loss, theft, damage or other involuntary conversion of whatever nature thereof and shall include (a) all properties or other assets acquired through foreclosure or deed in lieu of foreclosure and (b) all "proceeds" as defined in the Uniform Commercial Code as in effect in the jurisdiction in which the specified asset or property is located.

"Purchase Price" shall have the meaning set forth in Section 2.b. hereof.

"Relevant Loans" shall have the meaning set forth in the Mutual Release Agreement.

"Repaid Category 2 Loans" shall mean, collectively, the following facility loans: (a) Domestic Revolver 00005191 with a total commitment of $2,722,222.23 and an outstanding balance of $0 (as of 10/31/09), (b) Foreign Revolver 00005192 with a total commitment of $8,944,444.44 and an outstanding balance of $0 (as of 10/31/09), and (c) Term Loan 00010205 with an outstanding balance pf $9,994,593.92 (as of 10/31/09).

"Repaid Category 2 Loans Cash Amount" shall have the meaning set forth in Section 2.c. hereof.

"Repurchase Price" shall have the meaning set forth in Section 4 hereof.

"Repurchase Reserve" shall have the meaning set forth in Section 4 hereof.

"Repurchase Reserve Amount" shall mean an amount equal to ten percent (10%) of the Purchase Price for all Bankhaus Assets as of the Initial Closing Date and without regard to any portion thereof that may be applicable to any Deferred Purchased Assets.

"Repurchase Reserve Termination Date" shall mean the date that is 18 months after the last Closing Date.

"R-Loan" shall mean the Loan described on Schedule 4 as "RIPELSVNT" and evidenced by the R-Note.

"R-Note" shall have the meaning set forth in Section 2.a.iii. hereof.

"Security & Collateral Agreement" shall have the meaning set forth in the Recitals.

"Subsequent Closing" shall have the meaning set forth in Section 7 hereof.

"Subsequent Closing Date" shall have the meaning set forth in Section 9 hereof.

"Substitute Document" shall have the meaning set forth in Section 8.b.viii hereof.

"Taxes" means all taxes, charges, fees, levies, tariffs, charges, duties or other assessments, and all estimated payments thereof, including but not limited to income, excise, property, sales, use, value added, environmental, franchise, payroll, transfer, gross receipts, withholding, social security, and unemployment taxes, imposed by any foreign, federal, state, county or local government, or any subdivision or agency thereof, and any interest, penalty and expense relating to such taxes, charges, fees, levies or other assessments.

"Terminated Category 1 Interests" shall have the meaning set forth in Section 8.a.ii. hereof.

"Third Party Appraiser" shall mean Eastdil Secured, LLC, Cushman & Wakefield, Inc., CB Richard Ellis Group, Inc. or any other independent third party valuation agent selected by the Lehman Parties and reasonably approved by the LBB InsAdmin.

"Title Claimant" shall have the meaning set forth in Section 4.f. hereof.

"Transferees" shall mean, collectively, the Category 1 Loan Transferees, the Category 2 Loan Transferees and the Category 4 Loan Transferees.

## SCHEDULE 2

## CATEGORY 1 LOANS

*($ in millions)*

| Loan IQ [FCN] - WLT [MTS] | Facility / Deal Type | Lender | Transferee | Face Value Funded | Face Value Unfunded | Total | Applicable Value | Allocated Purchase Price |
|---|---|---|---|---|---|---|---|---|
| **Commercial Loans** | | | | | | | | |
| 00007392 | 7-YEAR TERM LOAN | LCPI | | $ 90.9 | $ - | $ 90.9 | $ [REDACTED] | $ [REDACTED] |
| 00005766 | 5 YR MULTI CCY REVOLVER | LCPI | | 2.5 | - | 2.5 | [REDACTED] | [REDACTED] |
| 00009191 | TERM LOAN | LCPI | | 117.1 | - | 117.1 | [REDACTED] | [REDACTED] |
| 00007511 | 5 YEAR REVOLVER | LCPI | | 85.7 | - | 85.7 | [REDACTED] | [REDACTED] |
| 00010035 | LCPI LOAN | LCPI | | 10.7 | - | 10.7 | [REDACTED] | [REDACTED] |
| 00010033 | TERM LOAN A | LCPI | | 15.5 | - | 15.5 | [REDACTED] | [REDACTED] |
| 00010034 | TERM LOAN B | LCPI | | 59.7 | - | 59.7 | [REDACTED] | [REDACTED] |
| 00007979 | TERM LOAN B | LCPI | | 210.4 | - | 210.4 | [REDACTED] | [REDACTED] |
| 00010176 | TRANCHE 6-J TERM LOAN | LCPI | | 12.6 | - | 12.6 | [REDACTED] | [REDACTED] |
| 00010015 | TERM LOAN | LCPI | | 108.3 | - | 108.3 | [REDACTED] | [REDACTED] |
| 00006628 | TERM LOANS AS OF 5/22/09 | LBCB | LCPI | 17.2 | - | 17.2 | [REDACTED] | [REDACTED] |
| 00010141 | $1.5BN TERM 5-29-09 | LBHI | | 3.9 | - | 3.9 | [REDACTED] | [REDACTED] |
| 00005001 | 5-YR JAPANESE TERM LOAN | LBHI | | 6.4 | - | 6.4 | [REDACTED] | [REDACTED] |
| 00008101 | 5 YEAR REVOLVER | LCPI | | 8.9 | 41.1 | 50.0 | [REDACTED] | [REDACTED] |
| 00003168 | BANK FACILITY | LCPI | | 14.5 | 0.7 | 15.2 | [REDACTED] | [REDACTED] |
| 00005000 | 5-YR JAPANESE REVOLVER | LBHI | | 10.1 | 1.5 | 11.6 | [REDACTED] | [REDACTED] |
| 00005735 | 6-YR REVOLVER | LCPI | | - | 6.1 | 6.1 | [REDACTED] | [REDACTED] |
| 00005119 | 5YR - RCF | LCPI | | - | 10.0 | 10.0 | [REDACTED] | [REDACTED] |
| **Subtotal - Loan Book** | | | | 774.3 | 59.4 | 833.6 | [REDACTED] | [REDACTED] |
| **Real Estate Loans** | | | | | | | | |
| V252 | Operating Property | LBHI | | 35.0 | - | 35.0 | [REDACTED] | [REDACTED] |
| WH6500 | Operating Property | ALI | | 16.0 | - | 16.0 | [REDACTED] | [REDACTED] |
| WH8803 | Operating Property | ALI | ALI | 15.0 | - | 15.0 | [REDACTED] | [REDACTED] |
| WH6051 | Operating Property | LBHI | | 16.3 | - | 16.3 | [REDACTED] | [REDACTED] |
| WH8752 | Operating Property | LBHI | LBHI | 13.7 | - | 13.7 | [REDACTED] | [REDACTED] |
| WH9111 | Operating Property | LBHI | | 7.5 | - | 7.5 | [REDACTED] | [REDACTED] |
| WH9112 | Operating Property | LBHI | | 10.9 | - | 10.9 | [REDACTED] | [REDACTED] |
| WH6499 | Operating Property | ALI | | 6.9 | - | 6.9 | [REDACTED] | [REDACTED] |
| WH6459 | Operating Property | LBHI | | 72.6 | - | 72.6 | [REDACTED] | [REDACTED] |

S2-1

*Final execution document 14/12/2009*

| Loan IQ (FCN) - WLT (MTS) | Facility / Deal Type | Lender | Transferee | Face Value Funded | Face Value Unfunded | Total | Applicable Value | Allocated Purchase Price |
|---|---|---|---|---|---|---|---|---|
| WH4619 | Operating Property | LBHI | | 44.5 | - | 44.5 | [REDACTED] | [REDACTED] |
| WH6460 | Operating Property | LBHI | | 37.5 | - | 37.5 | [REDACTED] | [REDACTED] |
| WH3977 | Operating Property | LBHI | | 21.4 | - | 21.4 | [REDACTED] | [REDACTED] |
| WH3975 | Operating Property | LBHI | | 21.4 | - | 21.4 | [REDACTED] | [REDACTED] |
| WH8877 | Operating Property | LBHI | | 12.5 | - | 12.5 | [REDACTED] | [REDACTED] |
| WH8876 | Operating Property | LBHI | | 8.8 | - | 8.8 | [REDACTED] | [REDACTED] |
| WH6370 | Operating Property | LBHI | | 65.0 | - | 65.0 | [REDACTED] | [REDACTED] |
| WH6371 | Operating Property | LBHI | | 41.0 | - | 41.0 | [REDACTED] | [REDACTED] |
| VU22A | | ALI | ALI | 250.0 | - | 250.0 | [REDACTED] | [REDACTED] |
| WH8554 | Development | LBHI | | 131.3 | - | 131.3 | [REDACTED] | [REDACTED] |
| WH4817 | Development | LBHI | | 147.7 | - | 147.7 | [REDACTED] | [REDACTED] |
| WH6545 | Development | LBHI | | 77.3 | - | 77.3 | [REDACTED] | [REDACTED] |
| 00006110 | Development | LCPI | | 9.8 | - | 9.8 | [REDACTED] | [REDACTED] |
| WH4815 | Development | LBHI | | 1.8 | - | 1.8 | [REDACTED] | [REDACTED] |
| WH8758 | Development | LBHI | | 85.0 | - | 85.0 | [REDACTED] | [REDACTED] |
| WH6537 | Development | LBHI | | 71.4 | - | 71.4 | [REDACTED] | [REDACTED] |
| WH8756 | Development | LBHI | | 32.5 | - | 32.5 | [REDACTED] | [REDACTED] |
| WH8757 | Development | LBHI | | 32.5 | - | 32.5 | [REDACTED] | [REDACTED] |
| WH8754 | Development | LBHI | | 10.2 | - | 10.2 | [REDACTED] | [REDACTED] |
| WH8753 | Development | LBHI | | 8.1 | - | 8.1 | [REDACTED] | [REDACTED] |
| WH8755 | Development | LBHI | | 4.1 | - | 4.1 | [REDACTED] | [REDACTED] |
| WE701 | Seller Financing | LCPI | | 50.7 | - | 50.7 | [REDACTED] | [REDACTED] |
| WE831 | Seller Financing | LCPI | | 4.6 | - | 4.6 | [REDACTED] | [REDACTED] |
| WE832 | Seller Financing | LCPI | | 4.6 | - | 4.6 | [REDACTED] | [REDACTED] |
| WE827 | Seller Financing | LCPI | | 4.9 | - | 4.9 | [REDACTED] | [REDACTED] |
| WE828 | Seller Financing | LCPI | | 4.9 | - | 4.9 | [REDACTED] | [REDACTED] |
| WE823 | Seller Financing | LCPI | | 5.9 | - | 5.9 | [REDACTED] | [REDACTED] |
| WE824 | Seller Financing | LCPI | | 5.9 | - | 5.9 | [REDACTED] | [REDACTED] |
| WE729 | Seller Financing | LCPI | | 12.0 | - | 12.0 | [REDACTED] | [REDACTED] |
| WE820 | Seller Financing | LCPI | | 7.5 | - | 7.5 | [REDACTED] | [REDACTED] |
| WE819 | Seller Financing | LCPI | | 7.5 | - | 7.5 | [REDACTED] | [REDACTED] |
| WE727 | Seller Financing | LCPI | | 17.3 | - | 17.3 | [REDACTED] | [REDACTED] |
| WE830 | Seller Financing | LCPI | | 11.3 | - | 11.3 | [REDACTED] | [REDACTED] |
| WE826 | Seller Financing | LCPI | | 12.0 | - | 12.0 | [REDACTED] | [REDACTED] |
| WE816 | Seller Financing | LCPI | | 12.8 | - | 12.8 | [REDACTED] | [REDACTED] |
| WE822 | Seller Financing | LCPI | | 14.4 | - | 14.4 | [REDACTED] | [REDACTED] |
| WE815 | Seller Financing | LCPI | | 15.6 | - | 15.6 | [REDACTED] | [REDACTED] |
| WE829 | Seller Financing | LCPI | | 16.9 | - | 16.9 | [REDACTED] | [REDACTED] |
| WE625 | Seller Financing | LCPI | | 46.5 | - | 46.5 | [REDACTED] | [REDACTED] |
| WE818 | Seller Financing | LCPI | | 18.3 | - | 18.3 | [REDACTED] | [REDACTED] |
| WE825 | Seller Financing | LCPI | | 17.9 | - | 17.9 | [REDACTED] | [REDACTED] |

C:\DOCUMENTS AND SETTINGS\KRASNOW\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\NNKFVGR0G\US_ACTIVE_BANKHAUS SETTLEMENT AGREEMENT - REDACTED VERSION -
EXHIBIT A TO MOTION_43259365_1 (3).DOC

S2-2

Final execution document 14/12/2009

| Loan IQ (FCN) - WLT (MTS) | Facility / Deal Type | Lender | Transferee | Face Value Funded | Face Value Unfunded | Total | Applicable Value | Allocated Purchase Price |
|---|---|---|---|---|---|---|---|---|
| WE821 | Seller Financing | LCPI | | 21.5 | - | 21.5 | [REDACTED] | [REDACTED] |
| WE814 | Seller Financing | LCPI | | 23.3 | - | 23.3 | [REDACTED] | [REDACTED] |
| WE718 | Seller Financing | LCPI | | 30.7 | - | 30.7 | [REDACTED] | [REDACTED] |
| WE817 | Seller Financing | LCPI | | 27.4 | - | 27.4 | [REDACTED] | [REDACTED] |
| WE723 | Seller Financing | LCPI | | 36.0 | - | 36.0 | [REDACTED] | [REDACTED] |
| WE703 | Seller Financing | LCPI | | 30.8 | - | 30.8 | [REDACTED] | [REDACTED] |
| WE717 | Seller Financing | LCPI | | 90.2 | - | 90.2 | [REDACTED] | [REDACTED] |
| WE726 | Seller Financing | LCPI | | 81.0 | - | 81.0 | [REDACTED] | [REDACTED] |
| 00007962 | Bank Loans | LCPI | | 48.2 | - | 48.2 | [REDACTED] | [REDACTED] |
| 00005545 | Bank Loans | LCPI | | 15.3 | - | 15.3 | [REDACTED] | [REDACTED] |
| 00005545 | Bank Loans | LCPI | | 6.6 | - | 6.6 | [REDACTED] | [REDACTED] |
| 00005502 | Bank Loans | LCPI | | 95.3 | - | 95.3 | [REDACTED] | [REDACTED] |
| 00007962 | Bank Loans | LCPI | | 4.4 | - | 4.4 | [REDACTED] | [REDACTED] |
| 00005545 | Bank Loans | LCPI | | 1.9 | - | 1.9 | [REDACTED] | [REDACTED] |
| 00005545 | Bank Loans | LCPI | | 0.0 | - | 0.0 | [REDACTED] | [REDACTED] |
| 00007962 | Bank Loans | LCPI | | 0.6 | - | 0.6 | [REDACTED] | [REDACTED] |
| 00004490 | Bank Loans | LCPI | | - | - | - | [REDACTED] | [REDACTED] |
| 00010205 | Bank Loans | LCPI | | 4.8 | - | 4.8 | [REDACTED] | [REDACTED] |
| **Subtotal - Real Estate Loans** | | | | 2,117.3 | - | 2,117.3 | [REDACTED] | [REDACTED] |
| | | | | $ 2,891.6 | $ 59.4 | $ 2,951.0 | $ 1,266.9 | $ 756.4 |

C:\DOCUMENTS AND SETTINGS\KRASNOW\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\NKFVGR\GGUS_ACTIVE_BANKHAUS SETTLEMENT AGREEMENT - REDACTED VERSION -
EXHIBIT A TO MOTION_4325936S_1 (3).DOC

SCHEDULE 3

CATEGORY 2 LOANS

| Loan IQ - FCN | Facility / Deal Type | Transferee | Agent (Type) | Face Value Funded | Face Value Unfunded | Total | Value | Allocated Purchase Price | Allocated Cash | Exist. Escrow Accounts | Exist. Collateral |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Commercial Loans** | | | | | | | | | | | |
| 00003052 | TERM LOAN FACILITY | LCPI | Bank of America | $ 25.0 | $ - | $ 25.0 | $[REDACTED] | $[REDACTED] | $ 0.9 | N/A | N/A |
| 00008510 | RCF A | LCPI* | Calyon New York | 7.5 | 5.0 | 12.5 | [REDACTED] | [REDACTED] | 0.2 | N/A | N/A |
| 00008511 | RCF B | LCPI* | Calyon New York | 7.5 | 5.0 | 12.5 | [REDACTED] | [REDACTED] | 0.2 | N/A | N/A |
| 00004155 | REVOLVING AND LETTER OF CREDIT | LCPI UK* | JP Morgan Europe | 30.0 | 129.9 | 159.9 | [REDACTED] | [REDACTED] | 0.8 | N/A | N/A |
| 00008444 | NOTE FACILITY | LCPI UK* | Bankhaus London | 16.8 | - | 16.8 | [REDACTED] | [REDACTED] | 0.4 | Unknown | Unknown |
| **Grand Total** | | | | $ 86.8 | $ 139.9 | $ 226.7 | $ 61.9 | $ 23.4 | $ 2.5 | | |

* Transfer may need to be made directly to a facing bank to be identified by the Lehman Parties
N/A: Not Applicable

C:\DOCUMENTS AND SETTINGS\KRASNOW\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\NXKFVGR0GU\US_ACTIVE_BANKHAUS SETTLEMENT AGREEMENT - REDACTED VERSION -
EXHIBIT A TO MOTION_4325936S_1 (3).DOC

*Final execution document 14/12/2009*

S3-1

# SCHEDULE 4

## CATEGORY 4 LOANS

($ in millions)

| Loan IQ - FCN | Facility / Deal Type | Transferee | Agent (Type) | Face Value Funded | Face Value Unfunded | Face Value Total | Applicable Value | Allocated Purchase Price | Exist. Escrow | Exist Collateral |
|---|---|---|---|---|---|---|---|---|---|---|
| **Commercial Loans** | | | | | | | | | | |
| 00004567 | TRANCHE A1 | LCPI UK | Banesto Madrid | $ 0.4 | $ - | $ 0.4 | $[REDACTED] | $[REDACTED] | N/A | N/A |
| 00004580 | TRANCHE A2 | LCPI UK | Banesto Madrid | 1.3 | - | 1.3 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00004582 | TRANCHE A3 | LCPI UK | Banesto Madrid | 1.1 | - | 1.1 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00004568 | TRANCHE B1 | LCPI UK | Banesto Madrid | 0.6 | - | 0.6 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00004581 | TRANCHE B2 | LCPI UK | Banesto Madrid | 1.0 | - | 1.0 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00004570 | TRANCHE D | LCPI UK | Banesto Madrid | 1.4 | - | 1.4 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00008080 | AGRIFACTORING | LCPI UK* | NPL | 0.4 | - | 0.4 | [REDACTED] | [REDACTED] | Unknown | Unknown |
| 00008081 | CAP BENEVENTO | LCPI UK* | NPL | 0.4 | - | 0.4 | [REDACTED] | [REDACTED] | Unknown | Unknown |
| 00008082 | CAP ROMA E FROSINONE | LCPI UK* | NPL | 0.3 | - | 0.3 | [REDACTED] | [REDACTED] | Unknown | Unknown |
| 00005926 | CREDEM | LCPI UK* | NPL | 1.4 | - | 1.4 | [REDACTED] | [REDACTED] | Unknown | Unknown |
| 00005512 | SECOND LIEN B | LCPI UK | RBS | 11.4 | - | 11.4 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00005513 | SECOND LIEN C | LCPI UK | RBS | 0.5 | - | 0.5 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00005508 | SECOND LIEN A FACILITY | LCPI UK | RBS | 0.1 | - | 0.1 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00006601 | MEZZANINE | LCPI UK | RBS Frankfurt | 4.8 | - | 4.8 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00004569 | TRANCHE C | LCPI UK | Banesto Madrid | 3.3 | - | 3.3 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00006595 | CAPEX FACILITY | LCPI UK | Bayerische Hypo Vereinsbank | 1.1 | 0.3 | 1.4 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00006596 | REVOLVING FACILITY | LCPI UK | Bayerische Hypo Vereinsbank | 4.8 | 20.1 | 24.9 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00006593 | FACILITY B | LCPI UK | Bayerische Hypo Vereinsbank | - | 8.1 | 8.1 | [REDACTED] | [REDACTED] | N/A | N/A |
| 00006594 | FACILITY C | LCPI UK | Bayerische Hypo Vereinsbank | 3.6 | - | 3.6 | [REDACTED] | [REDACTED] | N/A | N/A |
| RIPELSVNT | | LCPI | N/A | 250.0 | - | 250.0 | [REDACTED] | [REDACTED] | N | Y |
| **Subtotal - Commercial Loans** | | | | 291.0 | 28.5 | 319.6 | [REDACTED] | [REDACTED] | | |
| **Real Estate Loans** | | | | | | | | | | |
| 00009929/00009930 | Bank Loans | TBD | Bankhaus London | 131.2 | 14.0 | 145.3 | [REDACTED] | [REDACTED] | Y | Y |
| 00009927/00009928 | Bank Loans | TBD | Bankhaus London | 54.0 | 51.9 | 105.9 | [REDACTED] | [REDACTED] | Y | Y |
| 00005233 | Real Estate Loans | LCPI UK | Bankhaus London | 2.7 | - | 2.7 | [REDACTED] | [REDACTED] | Unknown | Unknown |
| 00002986 | Real Estate Loans | LCPI UK | Hatfield Philips | 1.8 | - | 1.8 | [REDACTED] | [REDACTED] | Unknown | Unknown |
| **Subtotal - Real Estate Loans** | | | | 189.7 | 66.0 | 255.7 | [REDACTED] | [REDACTED] | | |
| **Grand Total** | | | | $ 480.8 | $ 94.5 | $ 575.3 | $ 382.4 | $ 305.9 | | |

* Transfer may need to be made directly to a facing bank to be identified by the Lehman Parties

N/A: Not applicable

C:\DOCUMENTS AND SETTINGS\KRASNOW\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\NKFVGR0G\US_ACTIVE_BANKHAUS SETTLEMENT AGREEMENT - REDACTED VERSION - EXHIBIT A TO MOTION_43259365_1 (3).DOC

*Final execution document 14/12/2009*

S4-1

SCHEDULE 5

## LBB INSADMIN WIRE TRANSFER INSTRUCTIONS

FRNYUS33 (BIC Number)

Federal Reserve Bank of New York, New York, NY

ABA (Fed Wire No.) 021084018

Acc: 021084018

MARKDEFF

Deutsche Bundesbank

Acc: 5041034066

MARKDEFF

FFC: SLBSDEFX

Lehman Brothers Bankhaus AG

SCHEDULE 6

<u>SCHEDULE 6 LOANS</u>

| Loan | Facility | Loan Balance[1] |
|------|----------|-----------------|
| 00005705 | 5-yr Dollar Commitment | $51,959,183.65 |
| 00010205 | Term Loan | $9,994,593.92 |

---

[1] As of the Execution Date.

## SCHEDULE 7

## EXCEPTIONS TO DEFERRED DEBT SERVICE PAYMENT REPRESENTATION

None.

# SCHEDULE 8

## EXAMPLE OF PURCHASE PRICE CALCULATION

### a. Base Price Calculation

| | |
|---|---|
| Category 1 Loans | $756.4 |
| Category 1 Accumulated Cash | $240.4 |
| Category 1 Accumulated Cash (May-Oct) | $ 65.8 |
| Category 2 Loans | $ 23.4 |
| Category 2 Accumulated Cash (70%) | ($ 3.0) |
| Category 4 Loans | $305.9 |
| **GRAND TOTAL** | **$1,388.9** |

### b. Price Calculation – Excluding Potential Deferred Purchased Assets as listed in Schedule 11

| | |
|---|---|
| Category 1 Loans | $756.4 |
| Category 1 Accumulated Cash | $240.4 |
| Category 1 Accumulated Cash (May-Oct) | $ 65.8 |
| Category 2 Loans | $ 10.4 |
| Category 2 Accumulated Cash (70%) | ($ 1.8) |
| Category 4 Loans | $207.0 |
| **GRAND TOTAL** | **$1,278.2** |

## SCHEDULE 9

## CATEGORY 1 LOAN BH INTERESTS TO BE ASSIGNED

| Loan | Facility/Deal Type |
| --- | --- |
| 00006628 | Term Loan |
| WH8803 | Operating Property |
| WH8752 | Operating Property |
| VU22A | Operating Property |

SCHEDULE 10

## TITLE DEFECTS

None.

## SCHEDULE 11

## POTENTIAL DEFERRED PURCHASED ASSETS

| Loan | Facility/Deal Type |
| --- | --- |
| 00008510 | RCF A |
| 00008511 | RCF B |
| 00004155 | Revolving and Letter of Credit |
| 00008444 | Note Facility |
| 00008080 | Agrifactoring |
| 00008081 | Cap Benevento |
| 00008082 | Cap Roma E Frosinone |
| 00005926 | Credem |
| 00009929/00009930 | Bank Loans |
| 00009927/00009928 | Bank Loans |
| 00005233 | Real Estate Loans |
| 00002986 | Real Estate Loans |

SCHEDULE 12

## FULFILLMENT REJECTION CLAIMS

| Loan | Facility / Deal Type | Unfunded Amount | Drawdown Request | Date | Comments |
|---|---|---|---|---|---|
| 00008510 | RCF A | $5m | Y | 12.01.2009 | $5m drawdown refused |
| 00008511 | RCF B | $5m | Y | 12.01.2009 | $5m drawdown refused |
| 00004155 | Revolving Facility and Letter of Credit | $129.9m | N | N/A | |
| 00004569 | Tranche C | $0.3m | Y | 18./25.09.2009 | EUR 204,927.99 not funded |
| 00006596 | Revolving Facility | $8.1m | Y | | As per Agent Notices. All unfunded commitment to be terminated in current capital restructuring |
| 00006595 | CAPEX Facility | $20.1m | Y | | As per Agent Notices. All unfunded commitment to be terminated in current capital restructuring |
| 00009929/00009930 | Bank Loans | $14.0m | N | | No official drawdown received, but communication (in consultation with the Lehman Parties) |
| 00009927/00009928 | Bank Loans | $51.9m | N | | No official drawdown received, but communication (in consultation with the Lehman Parties) |

C:\DOCUMENTS AND SETTINGS\SKRASNOW\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT OUTLOOK\NKFVGRØGUS_ACTIVE_BANKHAUS SETTLEMENT AGREEMENT - REDACTED VERSION
- EXHIBIT A TO MOTION_4329365_1 (3).DOC

*Final execution document 14/12/2009*

S12-1

## SCHEDULE 13

## CATEGORY 3 LOANS

| Loan IQ - FCN | Facility / Deal Type | LOR |
|---|---|---|
| **Commercial Loans** | | |
| 00008248 | TERM A | LCPI UK |
| 00006708 | REVOLVING CREDIT FACILITY | LCPI UK |
| 00004042 | REVOLVER | LCPI UK |
| 00006557 | TERM LOAN | LCPI UK |
| 00006555 | D | LCPI UK |
| 00006725 | SENIOR BANK FACILITY | LCPI UK |
| 00004178 | TRANCHE A | LCPI UK |
| 00004179 | TRANCHE B | LCPI UK |
| 00009176 | RCF | LCPI UK |
| 00006693 | TERM D | LCPI UK |
| 00008250 | REVOLVING | LCPI UK |
| 00009897 | TERM B | LCPI UK |
| 00006236 | REVOLVER | LCPI UK |
| 00008709 | B | LCPI UK |
| 00008710 | C | LCPI UK |
| 00006691 | TERM B | LCPI UK |
| 00009934 | FACILITY A (RCF) | LCPI UK |
| 00004220 | REVOLVING FACILITY | LCPI UK |
| 00008711 | REVOLVING CREDIT FACILITY | LCPI UK |
| 00004602 | MULTI CCY REV LOAN | LCPI UK |
| 00004619 | RCF | LCPI UK |
| 00008075 | RCF | LCPI UK |
| 00008925 | TERM | LCPI UK |
| 00009789 | TERM | LCPI UK |
| **Real Estate** | | |
| 00004598 | REVOLVING CREDIT FACILITY | LCPI UK |
| 00009818 | FACILITY B | LCPI UK |
| 00009819 | FACILITY C | LCPI UK |
| 00008507 | TERM LOAN | LCPI UK |

## SCHEDULE 14

### ORIGINALS

R-Loan

a.    [Name of Borrower] Senior Floating Note due April 30, 2012

M-Loans

a.    Copie exécutoire à ordre numbered 1 and the copie exécutoire nominative both issued in favor of Bankhaus pursuant to the r Credit Agreement

b.    Copie exécutoire à ordre numbered 1 and the copie exécutoire nominative both issued in favor of Bankhaus pursuant to the R2 Credit Agreement

00008444

a.    Carta De Instrucciones Para Llenar El Pagaré No. 001 (Letter of Instructions to Fill in Promissory Note No. 001)

b.    Pagaré No. 001 (Promissory Note No. 001)

# SCHEDULE 15

# DEUTSCHE BANK LETTER

**Deutsche Bank** ◿

Deutsche Bank AG

Investment & FinanzCenter Leipzig-Mitte
Martin-Luther-Ring 2
04109 Leipzig

CMS Hasche Sigle
Insolvenzberatung und -verwaltung GbR
RAin Dr. Charlotte Schildt
Barckhausstr. 12 - 16

60325 Frankfurt

Herr Mike Röseler
Telefon (0341) 120-1500
24h-Kundenservice (0 18 18) 10 00
24-Condition aus dem Deutschen Festnetz, Mobilfunkpreise können abweichen

8. Dezember 2009

**Joachim Kühne (Trustee), account 100/0241711 23**

Dear Dr. Schildt,

Deutsche Bank AG hereby agrees to waive any and all existing, contingent and future rights of

(1) set-off or retention, and
(2) pledge established by operation of its general terms and conditions (AGB) or otherwise,

that it may have now or in the future against Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper Inc ("LCPI"), Lehman Commercial Paper Inc (UK) ("LCPI UK"), Lehman ALI, Inc ("Lehman Ali"), and/or the insolvency administrator over the assets of Lehman Brothers Bankhaus AG with respect to the funds in the repurchase reserve kept in the trust account held by Joachim Kühne, number 100/0241711 23, at Deutsche Bank AG.

The above waiver shall not apply to the extent of claims (even if not due or conditional) Deutsche Bank AG may have in connection with reverse entries (Stornobuchungen) and correction entries (Berichtigungsbuchungen) made with regard to the above mentioned account in accordance with its germeral terms and conditions and applicable law.

Yours sincerely

Deutsche Bank AG
Investment & FinanzCenter Leipzig-Mitte

Annette Harnisch          Andreas Riese

Sie können der Verwendung Ihrer Adressdaten durch die Bank zur Zusendung von Werbe- und Informationsschreiben jederzeit widersprechen,
zum Beispiel telefonisch unter (08 90) 902 26 22.

Vorsitzender des Aufsichtsrats: Clemens Börsig
Vorstand: Josef Ackermann (Vorsitzender),
Hugo Bänziger, Michael Cohrs, Jürgen Fitschen, Anshuman Jain,
Stefan Krause, Hermann Josef Lamberti, Rainer Neske

Deutsche Bank Aktiengesellschaft mit Sitz in Frankfurt am Main
HRB Nr. 30 000 · Amtsgericht Frankfurt am Main
Umsatzsteuer ID Nr. DE114103379
Deutsche Bank Gruppe im Internet: www.deutsche-bank.de

EXHIBIT A-1

FORM OF CLOSING CERTIFICATE (LEHMAN PARTIES)

## CLOSING CERTIFICATE

### LEHMAN BROTHERS HOLDINGS INC., LEHMAN ALI, INC. AND LEHMAN COMMERCIAL PAPER INC.

### [INSERT APPLICABLE CLOSING DATE]

Reference is made to that certain Settlement Agreement, dated as of December __, 2009 (the "Agreement"), by and among Lehman Brothers Holdings Inc., a Delaware corporation ("LBHI"), Lehman ALI, Inc., a Delaware corporation ("ALI"), Lehman Commercial Paper Inc., a New York corporation ("LCPI") (LBHI, ALI and LCPI are each referred to herein as a "Lehman Party" and collectively as the "Lehman Parties") and Dr. Michael C. Frege in his capacity as Insolvency Administrator (Insolvenzverwalter) over the assets of Lehman Brothers Bankhaus Aktiengesellschaft i. Ins.  Capitalized terms used herein and not otherwise defined shall have the meanings given to such terms in the Agreement.

Pursuant to Section 8.a.i. of the Agreement, each of the Lehman Parties does hereby certify solely for itself (and not for any other Lehman Party) as follows:

1.    The representations and warranties made by such Lehman Party in the Agreement are true and correct in all material respects as of the date hereof with the same force and effect as if made on and as of the date hereof; and

2.    In connection with the **[Initial] [Subsequent]** Closing occurring on the date hereof, each of the Lehman Closing Conditions applicable to such Closing have been satisfied or otherwise waived by such Lehman Party.

*[Remainder of Page Left Intentionally Blank]*

IN WITNESS WHEREOF, the undersigned have executed this Closing Certificate as of the date first written above.

LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Name:

Title:

LEHMAN ALI, INC., a Delaware corporation

By: _____

Name:

Title:

LEHMAN COMMERCIAL PAPER INC., a New York corporation, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Name:

Title:

EXHIBIT A-2

## FORM OF CLOSING CERTIFICATE (LBB INSADMIN)

## **CLOSING CERTIFICATE**

LEHMAN BROTHERS BANKHAUS AKTIENGESELLSCHAFT I. INS.

**[INSERT APPLICABLE CLOSING DATE]**

Reference is made to that certain Settlement Agreement, dated as of December __, 2009 (the "Agreement"), by and between Lehman Brothers Holdings Inc., a Delaware corporation, Lehman ALI, Inc., a Delaware corporation, Lehman Commercial Paper Inc., a New York corporation, and Dr. Michael C. Frege in his capacity as Insolvency Administrator (Insolvenzverwalter) over the assets of Lehman Brothers Bankhaus Aktiengesellschaft i. Ins. (the "LBB InsAdmin"). Capitalized terms used herein and not otherwise defined shall have the meanings given to such terms in the Agreement.

Pursuant to Section 8.b.i. of the Agreement, the undersigned does hereby certify as follows:

1.    The representations and warranties made by the LBB InsAdmin in the Agreement are true and correct in all material respects as of the date hereof with the same force and effect as if made on and as of the date hereof; and

2.    In connection with the **[Initial] [Subsequent]** Closing occurring on the date hereof, each of the LBB InsAdmin Closing Conditions applicable to such Closing have been satisfied or otherwise waived by the LBB InsAdmin.

*[Remainder of Page Left Intentionally Blank]*

IN WITNESS WHEREOF, the undersigned has executed this Closing Certificate as of the date first written above.

> Dr. Michael C. Frege, in his capacity as insolvency administrator over the assets of LEHMAN BROTHERS BANKHAUS AKTIENGESELLSCHAFT i. Ins.
>
> By: _____
>
> Name:  Dr. Michael C. Frege
> Title:  Insolvency Administrator
> (*Insolvenzverwalter*)

EXHIBIT B

FORM OF MUTUAL RELEASE

MUTUAL RELEASE AGREEMENT

This Mutual Release ("Release") is made as of this _____ day of
_____, 2009, by and among (1) Lehman Brothers Holdings Inc., a Delaware corporation
("LBHI"), (2) Lehman ALI, Inc., a Delaware corporation ("ALI"), (3) Lehman Commercial
Paper Inc., a New York corporation ("LCPI") (LBHI, ALI and LCPI are each referred to herein
as a "Lehman Party" and collectively as the "Lehman Parties"), and (4) Dr. Michael C. Frege in
his capacity as Insolvency Administrator (*Insolvenzverwalter*) over the assets of Lehman
Brothers Bankhaus Aktiengesellschaft i. Ins. ("Bankhaus") (the "LBB InsAdmin"). Capitalized
terms used but not defined herein shall have the meanings ascribed to such terms in the
Settlement Agreement, dated as of December ___, 2009, by and among the Lehman Parties and
the LBB InsAdmin (the "Agreement").

      1.   The LBB InsAdmin, for and in consideration of the execution and
delivery of the Agreement and for other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged, hereby (i) forever releases, waives, remises,
acquits and discharges the Lehman Parties and each of their affiliates and each of their respective
directors, officers, employees, managers, agents, representatives, independent contractors,
administrators, consultants, attorneys, accountants, trustees, insurers and (as well as their
predecessors, successors and assigns) (collectively, the "Lehman Released Parties"), of and from
any and all claims, causes of action, damages, losses, debts, obligations, agreements, liabilities,
attorneys' fees, costs and expenses, whether asserted or unasserted, known or unknown,
suspected or unsuspected, fixed or contingent, foreseen or unforeseen and whether based on
contract, tort, statute or other legal or equitable theory of recovery (collectively, "Claims") which
the LBB InsAdmin now has or ever had against any of the Lehman Released Parties for or by
reason of any Claims arising or accruing at any time on or prior to the date hereof in connection
with, arising out of, or in any way relating, directly or indirectly, to any of the Loans, the
Schedule 6 Loans or, except as provided in Section 12 of the Agreement, the Category 3 Loans
(collectively, the "Relevant Loans") or any of the Participation Agreements pursuant to which
any of the Relevant Loans were participated to or by Bankhaus including, without limitation,
any matters pertaining to any of the discussions, communications, correspondence, negotiations
or dealings among the LBB InsAdmin and the Lehman Released Parties relating to any of the
Relevant Loans, and any previous pursuit of remedies by any Lehman Released Parties against
the LBB InsAdmin or any matters arising out of or in any way relating to any of the foregoing
(the "LBB InsAdmin Released Claims"), and (ii) covenants that it will not, on or after the Initial
Closing Date, bring any action or initiate any proceeding in respect of the LBB InsAdmin
Released Claims against any of the Lehman Released Parties; provided, however, that the LBB
InsAdmin Released Claims shall specifically exclude any claims arising under or in connection
with (i) the Agreement (including, without limitation, those claims more specifically described in
Section 12 of the Agreement), this Release or any of the other Ancillary Documents, or (ii) any
Other Loans or any other loans other than the Relevant Loans, or the claims, rights and remedies
of the parties with respect to the same including, without limitation, under the Participation

Agreements related thereto, and there shall be no release of any of the Lehman Released Parties' obligations and liabilities in respect of the matters described in clauses (i) or (ii) above, and the LBB InsAdmin may fully enforce the obligations and liabilities of the Lehman Released Parties in respect of the matters described in clauses (i) and (ii) above just as if this Release had not been executed.

2.    Each of the Lehman Parties, for and in consideration of the execution and delivery of the Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby (i) forever releases, waives, remises, acquits and discharges Bankhaus, the LBB InsAdmin, his firm, its lawyers, employees, representatives and advisors as well as the members of the creditors committee, Bankhaus' insolvency administration and each of their directors, officers, employees, managers, agents, representatives, independent contractors, consultants, attorneys, accountants, trustees, insurers (as well as their predecessors, successors and assigns) (collectively, the "LBB InsAdmin Released Parties", and together with the Lehman Released Parties, the "Released Parties"), of and from any and all Claims which the Lehman Parties now have or ever had against any of the LBB InsAdmin Released Parties for or by reason of any Claims arising or accruing at any time on or prior to the date hereof in connection with, arising out of, or in any way relating, directly or indirectly, to any of the Relevant Loans or any of the Participation Agreements pursuant to which any of the Relevant Loans were participated to or by Bankhaus including, without limitation, any matters pertaining to any of the discussions, communications, correspondence, negotiations or dealings among any of the Lehman Parties and the LBB InsAdmin Released Parties relating to any of the Relevant Loans, and any previous pursuit of remedies by any LBB InsAdmin Released Parties against any of the Lehman Parties or any matters arising out of or in any way relating to any of the foregoing (collectively, the "Lehman Released Claims" and together with the LBB InsAdmin Released Claims, the "Released Claims"), and (ii) covenants that it will not, on or after the Initial Closing Date, bring any action or initiate any proceeding in respect of the Lehman Released Claims against the LBB InsAdmin Released Parties; provided, however, that the Lehman Released Claims shall specifically exclude any claims arising under or in connection with (i) the Agreement, this Release or any of the other Ancillary Documents (including, without limitation, those claims more specifically described in Section 12 of the Agreement), or (ii) any Other Loans or any other loans other than the Relevant Loans, or the claims, rights and remedies of the parties with respect to the same including, without limitation, under the Participation Agreements related thereto, and there shall be no release of any of the LBB InsAdmin Released Parties' obligations and liabilities in respect of the matters described in clauses (i) or (ii) above, and the Lehman Parties may fully enforce the obligations and liabilities of the LBB InsAdmin Released Parties in respect of the matters described in clauses (i) and (ii) above just as if this Release had not been executed.

3.    Notwithstanding anything contained herein to the contrary, the Lehman Parties, the LBB InsAdmin and the Released Parties agree that this Release is a release in full in favor of the Released Parties with respect to the Released Claims but that this Release does not release and nothing contained herein shall alter, affect or modify (a) the rights of any party under the Agreement or any of the Ancillary Documents, (b) those representations, warranties, agreements or obligations to be fulfilled or performed after the date hereof which are set forth in, or which survive after the date hereof, pursuant to the Agreement or any of the Ancillary Documents; (c) any rights any party may have to institute, maintain and prosecute an action or actions for any fraud or intentional misrepresentation by any party to the Agreement or

E-B-2    *Final execution document 14/12/2009*