any of the Ancillary Documents in connection with the Agreement or any of the Ancillary Documents; or (d) any rights any party may have to institute, maintain and prosecute an action or actions for any other Claims against any other party under the Agreement or any of the Ancillary Documents.

4.    Without limiting the generality of the foregoing, the Lehman Parties and the LBB InsAdmin expressly release any and all past and present Released Claims, which the Lehman Parties and the LBB InsAdmin, or any of them, do not know of or suspect to exist in their favor, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Release, and to this end they and each of them, to the extent permitted by law waive all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

5.    Each of the Lehman Parties further (a) expressly warrants and represents that neither the Released Claims nor any part of any interest in any claim, contention, demand, or cause of action relating to any Released Claim or any portion of any recovery or settlement has been sold, granted, transferred, assigned or encumbered by such Lehman Party, and (b) hereby agrees to indemnify and to hold harmless the Released Parties against any claim, contention, demand, cause of action, obligation, damage (but excluding any punitive, special or consequential damages) and liability of any nature, character or description whatsoever, including the payment of attorneys' fees (including allocated costs incurred by internal counsel) and costs actually incurred, whether or not litigation is commenced, which may be based upon or which may arise out of or in connection with any such assignment or transfer or purported assignment or transfer by such Lehman Party.

6.    The LBB InsAdmin further (a) expressly warrants and represents that, since November 13, 2008, neither the Released Claims nor any part of any interest in any claim, contention, demand, or cause of action relating to any Released Claim or any portion of any recovery or settlement has been sold, granted, transferred, assigned or encumbered by the LBB InsAdmin, and (b) hereby agrees to indemnify and to hold harmless the Released Parties against any claim, contention, demand, cause of action, obligation, damage (but excluding any punitive, special or consequential damages) and liability of any nature, character or description whatsoever, including the payment of attorneys' fees (including allocated costs incurred by internal counsel) and costs actually incurred, whether or not litigation is commenced, which may be based upon or which may arise out of or in connection with any such assignment or transfer or purported assignment or transfer by the LBB InsAdmin.

7.    The Lehman Parties and the LBB InsAdmin hereby agree not to bring, or assist in bringing, any Released Claims, and the Lehman Parties and the LBB InsAdmin further agree that this Release is, will constitute, and may be pleaded as, a bar to any such Released Claims. Neither the execution nor delivery of this Release by any party nor the payment of any consideration by any person incident to this Release is an admission of any wrongdoing whatsoever on the part of any party. Each of the Lehman Parties and the LBB InsAdmin for itself and for anyone claiming by, through or under it, hereby agrees to defend, protect, indemnify and hold harmless any and all of the Released Parties from and against all loss, cost, liability, damage (but excluding any punitive, special or consequential damages) and expense (including attorneys' fees and expenses) incurred by the Released Parties or any of them

in connection with, arising out of or in any way relating to any breach by the Lehman Parties and the LBB InsAdmin, or any of them, of the covenants and agreements set forth in this Release.

8.    This Release shall inure solely to the benefit of and be binding upon the Lehman Parties and the LBB InsAdmin and the respective Released Parties.

9.    The Released Parties acknowledge and agree that neither any reference herein or the execution and delivery of this Release shall in any way or manner imply or constitute an admission or concession on the part of the Lehman Parties or the LBB InsAdmin.

10.    If any provisions of this Release are determined by a court of competent jurisdiction to be invalid or unenforceable, in whole or in part, the remaining provisions, and any partially invalid or unenforceable provisions, to the extent valid and enforceable, shall nevertheless be binding and valid and enforceable.

11.    When necessary herein, all terms used in the singular shall apply to the plural, and vice versa, and all terms used in the masculine shall apply to the neuter and feminine genders, and vice versa.

12.    This Release shall be construed according to and governed by the laws of the State of New York without giving effect to principles of conflicts of law to the extent that such principles would apply a law other than that of the State of New York.

13.    This Release may be executed in any number of counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

14.    The parties shall, from time to time, promptly execute and deliver such further instruments, documents and papers and perform such further acts as may be necessary or proper to carry out and effect the terms of this Release.

15.    This Release, the Agreement and the Ancillary Documents constitute and are intended to constitute the entire agreement among the parties with respect to the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party except as specifically set forth herein or in the Agreement or the Ancillary Documents. All prior discussions and negotiations with respect to the subject matter hereof (including, without limitation, that certain Summary of Lehman/Bankhaus Issues – Proposed Deal Points, dated August 27, 2009) are superseded by this Release, the Agreement and the Ancillary Documents. It is expressly understood and agreed that this Release may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by authorized representatives of each of the parties hereto. In any action to enforce or interpret this Release, the Released Parties shall, in addition to all other relief, be entitled to an award for their respective attorneys' fees.

16.   THE LEHMAN PARTIES, THE LBB INSADMIN AND THE RELEASED PARTIES DO HEREBY INTENTIONALLY, KNOWINGLY, VOLUNTARILY, UNCONDITIONALLY AND IRREVOCABLY WAIVE THE RIGHT WHICH THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR

ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS RELEASE (INCLUDING, WITHOUT LIMITATION, ANY ACTION TO RESCIND OR CANCEL THIS RELEASE OR ANY CLAIMS OR DEFENSES ASSERTING THAT THIS RELEASE WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE).  THE FOREGOING WAIVER BY THE LEHMAN PARTIES AND THE LBB INSADMIN IS A MATERIAL INDUCEMENT FOR THE RELEASED PARTIES TO ACCEPT THIS RELEASE.

[Signatures on following page]

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Release as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

DR. MICHAEL C. FREGE in his capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus Aktiengesellschaft i. Ins.

By: _____

Name:  Dr. Michael C. Frege
Title:  Insolvency Administrator (*Insolvenzverwalter*)

By: _____
Name:
Title:

LEHMAN ALI, INC., a Delaware corporation

LEHMAN COMMERCIAL PAPER, INC., a New York corporation, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:
Title:

By: _____
Name:
Title:

[ACKNOWLEDGMENTS ON FOLLOWING PAGE]

STATE OF_____        )
                           ) ss.:
COUNTY OF_____         )

On the _____ day of _____ in the year 2009, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. [**LEHMAN BROTHERS HOLDINGS INC.**]

_____
Signature and office of individual
taking acknowledgement
My Commission Expires:

STATE OF_____        )
                           ) ss.:
COUNTY OF_____         )

On the _____ day of _____ in the year 2009, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. [**LEHMAN ALI, INC.**]

_____
Signature and office of individual
taking acknowledgement
My Commission Expires:

**[ACKNOWLEDGMENTS CONTINUE ON FOLLOWING PAGE]**

STATE OF_____        )
                            ) ss.:
COUNTY OF_____           )

On the _____ day of _____ in the year 2009, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. **[LEHMAN COMMERCIAL PAPER INC.]**

_____
Signature and office of individual
taking acknowledgement
My Commission Expires:


STATE OF_____        )
                            ) ss.:
COUNTY OF_____           )

On the _____ day of _____ in the year 2009, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. **[DR. MICHAEL C. FREGE]**

_____
Signature and office of individual
taking acknowledgement
My Commission Expires:

EXHIBIT C

## FORM OF CATEGORY 1 LOAN PARTICIPATION TERMINATION AGREEMENT

### TERMINATION AGREEMENT

THIS TERMINATION AGREEMENT (this "Agreement"), dated as of [INSERT INITIAL CLOSING DATE], is made by and among Lehman Brothers Holdings Inc., a Delaware corporation ("LBHI"), Lehman ALI, Inc., a Delaware corporation ("ALI"), Lehman Commercial Paper Inc., a New York corporation ("LCPI;" LBHI, ALI and LCPI are each referred to herein as a "Lehman Party" and collectively as the "Lehman Parties") and Dr. Michael C. Frege in his capacity as Insolvency Administrator (Insolvenzverwalter) over the assets of Lehman Brothers Bankhaus Aktiengesellschaft i. Ins. (the "LBB InsAdmin").

### *RECITALS*

WHEREAS, the Lehman Parties are the holders of record of, and the Category 1 Loan Holders (as defined in the Settlement Agreement, as hereinafter defined) with respect to, those certain loans, debts, obligations, facilities, notes, or portions thereof, more particularly described on Schedule 1 attached hereto and made a part hereof (collectively, the "Designated Category 1 Loans");

WHEREAS, LBHI, ALI and Lehman Brothers Bankhaus Aktiengesellschaft i. Ins. ("Bankhaus") entered into a Master Participation Agreement, dated November 10, 1999, pursuant to which various loans, including certain of the Designated Category 1 Loans, originated by LBHI or ALI were participated to Bankhaus (as heretofore amended and together with all confirmations executed pursuant thereto, the "Master Participation Agreement");

WHEREAS, the Lehman Parties (or certain of them) and Bankhaus also entered into various other oral and written master participation agreements and participation agreements pursuant to which various loans, including certain of the Designated Category 1 Loans, originated by a Lehman Party were participated to Bankhaus (together with the Master Participation Agreement, and as heretofore amended, the "Participation Agreements");

WHEREAS, the Lehman Parties and the LBB InsAdmin entered into that certain Settlement Agreement, dated as of December ___, 2009 (the "Settlement Agreement") relating to, among other things, the Designated Category 1 Loans (all initially capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement);

WHEREAS, pursuant to the terms of the Settlement Agreement, the Lehman Parties and the LBB InsAdmin agreed that all participation interests created by and under the Participation Agreements or otherwise with respect to each of the Designated Category 1 Loans (collectively, the "Terminated Category 1 Interests") will be terminated, relinquished and quitclaimed and all right, title and interest of the LBB InsAdmin in and to the Category 1 Loan Cash held by, on behalf of or for the benefit of the Category 1 Loan Holders as of the Initial Closing Date will be

assigned, transferred and conveyed to the applicable Category 1 Loan Holders and/or otherwise relinquished by the LBB InsAdmin;

WHEREAS, the Lehman Parties and the LBB InsAdmin wish to effectuate the foregoing terminations subject to the terms of this Agreement.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    **Termination.**

(a)    Effective as of the date hereof, the Terminated Category 1 Interests are hereby terminated, relinquished and quitclaimed and neither the Lehman Parties nor the LBB InsAdmin shall have any further rights or obligations under the Participation Agreements with respect to the Terminated Category 1 Interests.

(b)    All right, title and interest of the LBB InsAdmin in and to the Category 1 Loan Cash held by, on behalf of or for the benefit of the Lehman Parties, as Category 1 Loan Holders, as of the date hereof, is hereby relinquished by the LBB InsAdmin, and any remaining right, title or interest therein is hereby assigned, transferred and conveyed by the LBB InsAdmin to the respective Category 1 Loan Holders such that each Category 1 Loan Holder shall, from and after the date hereof, have rights to the Category 1 Loan Cash held by, or on behalf of or for the benefit of such Category 1 Loan Holder, free of any right, title, interest or claim of the LBB InsAdmin.

2.    **Miscellaneous.**

(a)    **Counterparts**. This Agreement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Agreement by telecopy or PDF electronic copy shall be effective as delivery of a manually executed counterpart of this Agreement.

(b)    **Severability**. The illegality, invalidity, or unenforceability of any provision of this Agreement under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction nor the legality, validity or enforceability of any other provision.

(c)    **Waiver of Trial by Jury**. Section 32 of the Settlement Agreement is hereby incorporated herein as if fully set forth in this Agreement.

(d)    **Governing Law**. This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without regard to the choice of law principles to the extent such principles would apply a law other than that of the State of New York.

[SIGNATURE PAGES FOLLOW]

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized signatories as of the date first above written.

LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)


By: _____
Name:
Title:


LEHMAN ALI, INC., a Delaware corporation


By: _____
Name:
Title:


LEHMAN COMMERCIAL PAPER INC., a New York corporation, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:
Title:

Dr. Michael C. Frege, in his capacity as insolvency
administrator over the assets of LEHMAN
BROTHERS BANKHAUS
AKTIENGESELLSCHAFT i. Ins.


By: _____

Name:  Dr. Michael C. Frege
Title:  Insolvency Administrator
(*Insolvenzverwalter*)

## SCHEDULE 1

## DESIGNATED CATEGORY 1 LOANS

EXHIBIT D-1

<u>FORM OF CATEGORY 1 ASSIGNMENT AND ASSUMPTION AGREEMENT</u>

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

The LBB InsAdmin (the "**Assignor**"), and [INSERT APPLICABLE CATEGORY 1 LOAN TRANSFEREE] (the "**Assignee**") hereby enter into this ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Agreement**") as of the [INSERT INITIAL CLOSING DATE].

Reference is made to that certain Settlement Agreement, dated as of December ___, 2009 (the "**Settlement Agreement**"), by and among (1) Lehman Brothers Holdings Inc., a Delaware corporation ("**LBHI**"), (2) Lehman ALI, Inc., a Delaware corporation ("**ALI**"), (3) Lehman Commercial Paper Inc., a New York corporation ("**LCPI**"), and (4) Dr. Michael C. Frege in his capacity as Insolvency Administrator (*Insolvenzverwalter*) over the assets of Lehman Brothers Bankhaus Aktiengesellschaft i. Ins. (the "**LBB InsAdmin**"). Unless defined herein, terms defined in the Settlement Agreement are used herein as therein defined.

In consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignor and Assignee hereby agree as follows:

1.    The Assignor hereby conveys, sells, transfers, assigns and delivers to the Assignee, and the Assignee hereby purchases from the Assignor, all participation interests of the Assignor in and to that certain loan more particularly described on <u>Annex I</u> attached hereto and made a part hereof (the "**Participation Interests**") and all right, title and interest of the Assignor in, to and under the Participation Agreement pursuant to which the Participation Interests were created or otherwise granted to Assignor (the "**Applicable Participation Agreement**"). The Assignee hereby assumes and agrees to perform, pay and discharge all obligations of Assignor in respect of the Participation Interests to the extent such obligations arise and are to be performed, paid or discharged after the date hereof.

2.    As of the date hereof, (i) the Assignee shall be a party to the Applicable Participation Agreement and shall have all of the rights of the Assignor as the participant thereunder to the extent such rights relate to the Participation Interests, and (ii) the Assignor shall relinquish all further rights under the Applicable Participation Agreement to the extent such rights relate to the Participation Interests.

3.    Subject to Section 2.d. of the Settlement Agreement, the Assignee shall be entitled to all payments made under the Applicable Participation Agreement from and after the date hereof to the extent such payments relate to or are made in respect of the Participation Interests and any such payments which are otherwise made to the Assignor from and after the date hereof shall be received and held in trust for the Assignee and promptly remitted by the Assignor to the Assignee.

4.      This Agreement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.  Delivery of an executed counterpart of a signature page to this Agreement by telecopy or PDF electronic copy shall be effective as delivery of a manually executed counterpart of this Agreement.

5.      The Assignor will, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, assignments, notices of assignments, transfers and assurances as the Assignee shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Assignee the property and rights hereby given, granted, bargained, sold, conveyed, and/or assigned or intended now or hereafter. The Assignor and the Assignee will, do, execute, acknowledge and deliver all and every such further acts as are reasonably required for carrying out the intention or facilitating the performance of the terms of this Agreement.

6.      This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with  the laws of the State of New York, without regard to the choice of law principles to the extent such principles would apply a law other than that of the State of New York.

7.      The illegality, invalidity or unenforceability of any provision of this Agreement under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction nor the legality, validity or enforceability of any other provision.

8.      Section 32 of the Settlement Agreement is hereby incorporated herein as if fully set forth in this Agreement.

## [SIGNATURES APPEAR ON THE FOLLOWING PAGE]

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized signatories, as of the date first above written.

**ASSIGNOR:**

DR. MICHAEL C. FREGE in his capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus Aktiengesellschaft i. Ins.

By: _____

Name:  Dr. Michael C. Frege
Title:  Insolvency Administrator
(*Insolvenzverwalter*)

**ASSIGNEE:**

[INSERT SIGNATURE BLOCK OF CATEGORY 1 TRANSFEREE]

## ANNEX I

### Description of Loan

EXHIBIT D-2

FORM OF NON-CATEGORY 1 ASSIGNMENT AND ASSUMPTION AGREEMENT

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

The LBB InsAdmin (the "**Assignor**"), and [INSERT APPLICABLE CATEGORY 2/4 LOAN TRANSFEREE] (the "**Assignee**") hereby enter into this ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Agreement**") as of the [INSERT APPLICABLE CLOSING DATE].

Reference is made to that certain Settlement Agreement, dated as of December ___, 2009 (the "**Settlement Agreement**"), by and among (1) Lehman Brothers Holdings Inc., a Delaware corporation ("**LBHI**"), (2) Lehman ALI, Inc., a Delaware corporation ("**ALI**"), (3) Lehman Commercial Paper Inc., a New York corporation ("**LCPI**"), and (4) Dr. Michael C. Frege in his capacity as Insolvency Administrator (*Insolvenzverwalter*) over the assets of Lehman Brothers Bankhaus Aktiengesellschaft i. Ins. (the "**LBB InsAdmin**"). Unless defined herein, terms defined in the Settlement Agreement are used herein as therein defined.

In consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignor and Assignee hereby agree as follows:

1.    The Assignor hereby conveys, sells, transfers, assigns and delivers to the Assignee, and the Assignee hereby purchases from the Assignor, that certain loan more particularly described on <u>Annex I</u> attached hereto and made a part hereof (the "**Loan**") and all right, title and interest of the Assignor in, to and under each of the loan documents evidencing, securing, guaranteeing and/or otherwise governing the Loan including, without limitation, each of the loan documents specified in Annex II attached hereto and made a part hereof (collectively, the "**Loan Documents**") subject, however, to the existing participation interest of the Assignee or any assignee or subparticipant of the Assignee with respect to the Loan. The Assignee hereby assumes and agrees to perform, pay and discharge, in accordance with the terms and conditions set forth in the Loan Documents, all obligations of Assignor under the Loan Documents in respect of the Loan to the extent such obligations arise and are to be performed, paid or discharged after the date hereof.

2.    Following the execution of this Agreement by the Assignor and the Assignee, an executed original hereof (together with all attachments) may be delivered to the [agent] under the Loan Documents for acceptance by it and recording in the records of the [agent] as set forth in the Loan Documents. The effective date of this Agreement shall be the date hereof.

3.    As of the date hereof, (i) the Assignee shall be a party to the Loan Documents and shall have all of the rights of the Assignor as a [lender] thereunder, and (ii) the Assignor shall relinquish all further rights under the Loan Documents.

4.    Subject to Section 2.d. of the Settlement Agreement, the Assignee shall be entitled to all payments made under the Loan Documents from and after the date hereof and to the extent that such payments relate to or are made in respect of the Loan. Any such payments which are otherwise made to the Assignor shall be received and held in trust for the Assignee and immediately remitted by the Assignor to the Assignee.

5.    This Agreement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Agreement by telecopy or PDF electronic copy shall be effective as delivery of a manually executed counterpart of this Agreement.

6.    The Assignor will, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, assignments, notices of assignments, transfers and assurances as the Assignee shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Assignee the property and rights hereby given, granted, bargained, sold, conveyed, and/or assigned or intended now or hereafter. The Assignor and the Assignee will, do, execute, acknowledge and deliver all and every such further acts as are reasonably required for carrying out the intention or facilitating the performance of the terms of this Agreement.

7.    This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with  the laws of the State of New York, without regard to the choice of law principles to the extent such principles would apply a law other than that of the State of New York.

8.    The illegality, invalidity or unenforceability of any provision of this Agreement under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction nor the legality, validity or enforceability of any other provision.

9.    Section 32 of the Settlement Agreement is hereby incorporated herein as if fully set forth in this Agreement.

**[SIGNATURES APPEAR ON THE FOLLOWING PAGE]**

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized signatories, as of the date first above written.

**ASSIGNOR:**

DR. MICHAEL C. FREGE in his capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus Aktiengesellschaft i. Ins.

By: _____

Name:  Dr. Michael C. Frege
Title:  Insolvency Administrator
(*Insolvenzverwalter*)

**ASSIGNEE:**

[INSERT SIGNATURE BLOCK OF CATEGORY 2/4 TRANSFEREE]

# ANNEX I

## Description of Loan

# <u>ANNEX II</u>

<u>List of Loan Documents</u>

EXHIBIT E

## INTENTIONALLY OMITTED

EXHIBIT F

## FORM OF TERMINATION AND RELEASE AGREEMENT

## TERMINATION AND RELEASE AGREEMENT

This Termination and Release Agreement ("Termination") is made as of this ____ day of _____, 2009, made by Dr. Michael C. Frege in his capacity as Insolvency Administrator (*Insolvenzverwalter*) over the assets of Lehman Brothers Bankhaus Aktiengesellschaft i. Ins. ("Bankhaus") (the "LBB InsAdmin") in favor of Lehman Brothers Holdings Inc., a Delaware corporation ("LBHI"). Reference is made to that certain Agreement, dated as of December ____, 2009, by and among the LBB InsAdmin, LBHI, Lehman ALI, Inc., and Lehman Commercial Paper Inc. (the "Agreement"); capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement.

1. The LBB InsAdmin hereby terminates that certain Guarantee dated as of November 21, 2002 made by LBHI (the "Guarantee") and that certain Security & Collateral Agreement dated as of August 15, 2002 made by LBHI (the "Security & Collateral Agreement") and further terminates, waives, releases and relinquishes any right it may have to seek, demand or enforce any payment from LBHI thereunder or under the Parent Resolution (as hereinafter defined) (the Guarantee, Security & Collateral Agreement and Parent Resolution being collectively referred to herein as the "LBHI Agreements") as a result of any guarantees, obligations, undertakings or liabilities of LBHI, if any, under any of the LBHI Agreements, but such termination, waiver, release and relinquishment of rights is solely to the extent such rights exist in connection with, arise out of, or in any way relate, directly or indirectly, to any of the Loans or the Schedule 6 Loans (collectively, the "Relevant Loans"), or any of the Participation Agreements pursuant to which any of the Relevant Loans were participated (all of the foregoing being collectively referred to as the "Terminated Obligations"). LBHI, by its acknowledgement hereto, hereby agrees to the termination of the Guarantee and the Security & Collateral Agreement as and to the extent provided herein. LBHI further agrees that any cash collateral provided by LBHI to Bankhaus under the Security & Collateral Agreement shall remain with the LBB InsAdmin, and the LBB InsAdmin and Bankhaus shall under no circumstance be required to repay such cash collateral. LBHI expressly waives all of its rights with respect to such cash collateral including, but not limited to, all rights pursuant to the doctrines of set-off, recoupment, retention or any other legal or equitable theory. The term "Parent Resolution" shall mean that certain Unanimous Written Consent of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc., dated June 9, 2005 adopted by the members of the Executive Committee of the Board of Directors of LBHI, which superseded and replaced, in its entirety, that certain Unanimous Written Consent of the Executive Committee of the Board of Directors of LBHI, dated November 14, 1994.

2. The LBB InsAdmin, for and in consideration of the execution and delivery of the Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged hereby, (i) forever releases, waives, remises, acquits and discharges LBHI and its affiliates and each of their respective directors, officers, employees, managers, agents, representatives, independent contractors, administrators,

consultants, attorneys, accountants, trustees, insurers and (as well as their predecessors, successors and assigns) (collectively, the "Released Parties"), of and from any and all claims, causes of action, damages, losses, debts, obligations, agreements, liabilities, attorneys' fees, costs and expenses, whether asserted or unasserted, known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen and whether based on contract, tort, statute or other legal or equitable theory of recovery (collectively, "Claims") which the LBB InsAdmin now has or ever had against any of the Released Parties for or by reason of any Claims arising or accruing at any time on or prior to the date hereof in connection with, arising out of, or in any way relating, directly or indirectly, to the Terminated Obligations or any matters arising out of or in any way relating thereto (collectively, the "Released Claims") and (ii) covenants that it will not, on or after the [Initial/Subsequent] Closing Date, bring any action or initiate any proceeding in respect of the Released Claims against any of Released Parties; provided, however, that the Released Claims shall specifically exclude any claims arising under or in connection with (i) the Agreement, this Termination or any of the other Ancillary Documents (including, without limitation, those claims more specifically described in Section 12 of the Agreement), (ii) any Other Loans or any other loans other than the Relevant Loans, or the claims, rights and remedies of the parties with respect to the same including, without limitation, under the Participation Agreements related thereto, and there shall be no release of any of the Released Parties' obligations and liabilities in respect of the matters described in clauses (i) or (ii) above, and the LBB InsAdmin may fully enforce the obligations and liabilities of the Released Parties in respect of the matters described in clauses (i) and (ii) above just as if this Termination had not been executed. For the avoidance of doubt, except as provided herein, the foregoing release only includes the LBB InsAdmin's own Claims, if any, under the LBHI Agreements and does not include the Claims, if any, of any other parties to or named third party beneficiaries under any of the LBHI Agreements.

3.   Except as provided in Section 12.e. of the Agreement, the LBB InsAdmin acknowledges and agrees that neither any reference herein to any of the LBHI Agreements nor the execution and delivery of this Termination shall in any way or manner imply or constitute an admission or concession on the part of LBHI or any of the other Released Parties that LBHI or any other Released Party has or may have any liability or obligation under any of the LBHI Agreements and LBHI and each other Released Party hereby reserve all of their respective rights, claims, defenses and objections with respect thereto.

4.   Notwithstanding anything contained herein to the contrary, the LBB InsAdmin and the Released Parties agree that this Termination is a release in full in favor of the Released Parties with respect to the Released Claims but that this Termination does not release and nothing contained herein shall alter, affect or modify (a) the rights of any party under the Agreement or any of the Ancillary Documents, (b) those representations, warranties, agreements or obligations to be fulfilled or performed from and after the date hereof which are set forth in, or which survive after the date hereof, pursuant to the Agreement or any of the Ancillary Documents; (c) any rights any party may have to institute, maintain and prosecute an action or actions for any fraud or intentional misrepresentation by any party to the Agreement or any of the Ancillary Documents in connection with the Agreement or any of the Ancillary Documents; or (d) any rights any party may have to institute, maintain and prosecute an action or actions for

any other claims against any other party under the Agreement or any of the Ancillary Documents.

5.    Without limiting the generality of the foregoing, the LBB InsAdmin expressly releases any and all past and present Released Claims, which the LBB InsAdmin does not know of or suspect to exist in his favor, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect his decision to enter into this Termination, and to this end he, to the extent permitted by law waives all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

6.    The LBB InsAdmin further expressly warrants and represents that, since November 13, 2008, neither the Released Claims nor any part of any interest in any claim, contention, demand, or cause of action relating to any Released Claim or any portion of any recovery or settlement has been sold, granted, transferred, assigned or encumbered by the LBB InsAdmin. The LBB InsAdmin hereby agrees to indemnify and to hold harmless the Released Parties against any claim, contention, demand, cause of action, obligation, damage (but excluding any punitive, special or consequential damages) and liability of any nature, character or description whatsoever, including the payment of attorneys' fees (including allocated costs incurred by internal counsel) and costs actually incurred, whether or not litigation is commenced, which may be based upon or which may arise out of or in connection with any such assignment or transfer or purported assignment or transfer.

7.    The LBB InsAdmin hereby agrees not to bring, or assist in bringing, any Released Claims, and the LBB InsAdmin further agrees that this Termination is, will constitute, and may be pleaded as, a bar to any such Released Claims. Neither the execution nor delivery of this Termination by any party nor the payment of any consideration by any person incident to this Termination is an admission of any wrongdoing whatsoever on the part of any party. The LBB InsAdmin, for himself and for anyone claiming by, through or under him, hereby agrees to defend, protect, indemnify and hold harmless any and all of the Released Parties from and against all loss, cost, liability, damage (but excluding any punitive, special or consequential damages) and expense (including attorneys' fees and expenses) incurred by the Released Parties or any of them in connection with, arising out of or in any way relating to any breach by the LBB InsAdmin of the covenants and agreements set forth in this Termination.

8.    This Termination shall inure solely to the benefit of and be binding upon the LBB InsAdmin and the respective Released Parties.

9.    If any provisions of this Termination are determined by a court of competent jurisdiction to be invalid or unenforceable, in whole or in part, the remaining provisions, and any partially invalid or unenforceable provisions, to the extent valid and enforceable, shall nevertheless be binding and valid and enforceable.

10.    When necessary herein, all terms used in the singular shall apply to the plural, and vice versa, and all terms used in the masculine shall apply to the neuter and feminine genders, and vice versa.

11.  This Termination shall be construed according to and governed by the laws of the State of New York without giving effect to principles of conflicts of law to the extent that such principles would apply a law other than that of the State of New York.

12.  This Termination may be executed in any number of counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

13.  The LBB InsAdmin shall, from time to time, promptly execute and deliver such further instruments, documents and papers and perform such further acts as may be necessary or proper to carry out and effect the terms of this Termination.

14.  This Termination, the Agreement and the Ancillary Documents constitute and are intended to constitute the entire agreement among the parties with respect to the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party except as specifically set forth herein or in the Agreement or the Ancillary Documents.  All prior discussions and negotiations with respect to the subject matter hereof (including, without limitation, that certain Summary of Lehman/Bankhaus Issues – Proposed Deal Points, dated August 27, 2009) are superseded by this Termination, the Agreement and the Ancillary Documents.  It is expressly understood and agreed that this Termination may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by the LBB InsAdmin and LBHI.  In any action to enforce or interpret this Termination, the Released Parties shall, in addition to all other relief, be entitled to an award for their respective attorneys' fees.

15.  THE PARTIES HERETO HEREBY INTENTIONALLY, KNOWINGLY, VOLUNTARILY, UNCONDITIONALLY AND IRREVOCABLY WAIVE THE RIGHT WHICH THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS TERMINATION (INCLUDING, WITHOUT LIMITATION, ANY ACTION TO RESCIND OR CANCEL THIS TERMINATION OR ANY CLAIMS OR DEFENSES ASSERTING THAT THIS TERMINATION WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE).  THE FOREGOING WAIVER BY EACH PARTY IS A MATERIAL INDUCEMENT FOR THE OTHER PARTIES TO ACCEPT THIS TERMINATION.

[Signatures on following page]

IN WITNESS WHEREOF, the undersigned by his or its duly authorized representative has executed this Termination as of the date first written above:

> DR. MICHAEL C. FREGE in his capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus Aktiengesellschaft i. Ins.
>
>
> By: _____
>
> Name:  Dr. Michael C. Frege
> Title:  Insolvency Administrator (*Insolvenzverwalter*)

ACKNOWLEDGED AND AGREED TO:

LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:
Title:

[ACKNOWLEDGMENTS ON FOLLOWING PAGE]

STATE OF_____          )
                           ) ss.:
COUNTY OF_____           )

      On the ____ day of _____ in the year 2009, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. [**DR. MICHAEL C. FREGE**]

_____
Signature and office of individual
taking acknowledgement
My Commission Expires:


STATE OF_____          )
                           ) ss.:
COUNTY OF_____           )

      On the ____ day of _____ in the year 2009, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. [**LEHMAN BROTHERS HOLDINGS INC.**]

_____
Signature and office of individual
taking acknowledgement
My Commission Expires:

C:\DOCUMENTS AND SETTINGS\KRASNOW\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\NKFVGR0G\US_ACTIVE_BANKHAUS SETTLEMENT AGREEMENT - REDACTED VERSION - EXHIBIT A TO MOTION_43259365_1 (3).DOC

E-F-6          *Final execution document 14/12/2009*