UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
In re : Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
:
------------------------------------------------------------------x

## OBJECTION TO STIPULATION

Now comes William Kuntz who appears here *Pro Se* and respectfully submits the following for the Court's Consideration.

The Parties seek the Court's Approval of a error in the amount of $500,000 which Has already been approved by the Court. This is just the kind of typical Make-Work Earn-Fee kind of paperwork that has distinguished this case as having paid out the Highest Legal Fee's in USA History.

The Lawyers seek to amend a Claim which will be paid out in Post Petition Dollars Perhaps 4% of the face value of the Claim but will seek to charge the Estate in Lawyers Fee's in Cash now.

4% of $500,000 is $20,000 and no doubt the Debtor Counsel and the Creditors Committee will seek more than that just for this Stipulation.

It would seem more appropriate that the Fee Earning Parties disclose how much they have already charged the Estate in this and that they absorb the Error.

There are many examples of Typo Errors in the News. I recall one where Several Zero's were left off of a Ships Mortgage.

**&lt;see The Comma That Costs 1 Million Dollars&gt;**

http://www.nytimes.com/2006/10/25/business/worldbusiness/25comma.html?ex=1319428800&en=dc3f597eeb9845ca&ei=5090&partner=rssuserland&emc=rss

or

**&lt;At the Bar; How Three Missing Zeros Brought Red Faces and Cost Millions of Dollars.&gt;**

By David Margolick

The cable read: PARDON. IMPOSSIBLE TO BE SENT TO SIBERIA.

In one of his famous "Believe it or Not" columns, Robert Ripley wrote about that cable, and how a man's life had been spared when some Czarist apparatchik mistakenly placed theperiod after the first word of it instead of after the second.

The occasionally errant typography emerging from New York's corporate law firms rarely has such life-and-death consequences. But the omission of three figures from a routine mortgage agreement five years ago, a mistake overlooked by numerous supposedly crackerjack lawyers at several New York law firms, has generated a spate of litigation, hundreds of thousands of dollars in legal fees, millions of dollars in damages and an untold fortune in embarrassment.

What Erle Stanley Gardner might have called "The Case of the Terrible Typo" began in the early 1980's, when both the Prudential Insurance Company and

the General Electric Capital Corporation lent money to the United States Lines. A fleet of ships was the collateral, with Prudential holding first dibs in the event of foreclosure and General Electric Capital entitled to whatever was left.

When the deal was restructured in early 1986, United States Lines still owed Prudential $92,885,000. But when a secretary at Haight, Gardner, Poor & Stevens in New York, which officially represented G.E.C.C. but by agreement of the parties was to draft the revised mortgage, typed up the document she forget three crucial things: a zero, a zero and a zero. As she recorded the deal, Prudential's interest was only worth $92,885.

Even though it was ultimately repeated on almost 100 different documents, neither the Haight lawyers nor Prudential's in-house counsel spotted the mistake. Nor did the insurance company's outside counsel, at Dewey, Ballantine, Bushby, Palmer & Wood. Nor did the lawyers for United States Lines, from Gilmartin, Poster & Shafto. James R. Gillen, Prudential's general counsel, called the oversight "astonishing."

In November 1986, United States Lines went bankrupt. But while its problems were thereby temporarily placed on hold, Prudential's had just begun. First, the shipping company argued that under the clear terms of the mortgage, Prudential's interest in its ships was a matter of thousands, not millions of dollars. It was a powerful claim, particularly because under a quirk in the

bankruptcy law, whatever United States Lines actually knew about the parties' intent was irrelevant.

Nowhere in the voluminious court records is it disclosed who discovered the missing zeros. But rather than put its entire entitlement at risk, Prudential gave United States Lines $11.4 million of the $65.4 million it raised from the sale of the ships to drop the claim.

Then in March 1988, G.E.C.C., too, tried cashing in on the mistake. In what Manhattan Lawyer magazine called "the kind of claim that only a lawyer could love," General Electric Capital insisted that Prudential should get the smaller amount, thereby leaving G.E.E.C. tens of millions of dollars it wouldn't have otherwise gotten.

The lawyer for General Electric Capital, Nathan Bayer of Freehill, Hogan & Mahar, made the argument, but only after assuring Federal District Judge Richard Owen he could still "look himself in the mirror" after doing so. Prudential eventually prevailed in two Federal courts, but not before it had forked over hefty fees to another set of lawyers, at Weil, Gotshal & Manges.

What with the payment to United States Lines, its own legal fees, and the costs of holding onto and maintaining ships it would otherwise have sold, Prudential reckoned that the typo had cost it at least $31 million. In September 1989 the insurance company, represented by Howrey & Simon of Washington, sued

Haight Gardner, Dewey Ballantine, and Gilmartin, Poster for malpractice. All three, of course, had thereupon to hire counsel of their own: Parker, Chapin, Flattau & Kimpl (for Dewey); Gair, Gair & Conason (for Haight, Gardner), and Bower & Gardner (for Gilmartin).

A State Supreme Court Justice dismissed Prudential's claim against Gilmartin, a decision the company is appealing to New York's highest court. Meantime, Haight Gardner and Dewey Ballantine have quietly bought peace from Prudential. As is usually the case when lawyers make mistakes, the settlement is shrouded in secrecy.

"I'd really like to talk you out of doing an article about this," said Dewey's managing partner, L. Robert Fullem, who described the episode as "really unnewsworthy," saying it was "just a plain typographical error that we've resolved."

William J. Honan 3d, a member of Haight, Gardner's management committee, was marginally forthcoming, declaring that whatever his firm shelled out was "well, well within" the firm's malpractice insurance coverage. He also disclosed that the firm knew the name of the erring secretary. He described her as contrite. He also said her current whereabouts were unknown.

Respectfully,
William Kuntz, III

India St PO Box 1801 Nantucket Island, Ma 02554-1801

508-775-5225

New York City, July 26, 2010