SUTHERLAND ASBILL & BRENNAN LLP
Mark D. Sherrill (*pro hac vice*)
1275 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 383-0100

*Counsel for U.S. AgBank, FCB*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| LEHMAN BROTHERS HOLDING INC., | § | Case No. 08-13555 (JMP) |
| | § | |
| Debtor. | § | |

**RESPONSE OF U.S. AGBANK, FCB TO DEBTORS' TWENTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

U.S. AgBank, FCB ("AgBank") files this Response (the "Response") to the *Debtors' Twenty-Eighth Omnibus Objection to Claims (Valued Derivative Claims)* (the "Claim Objection"), and states as follows:

**Background**

1.      AgBank is a financial institution and a part of the Farm Credit System, a network of borrower-owned lending institutions comprised of cooperatives and related service organizations. Congress authorized the creation of the first Farm Credit System institutions in 1916 to provide reliable credit to agricultural America. Today, the Farm Credit System provides financing and related services to eligible, creditworthy borrowers in the agricultural and rural sectors, to certain related entities, and to domestic or foreign parties in connection with international agricultural trade transactions. AgBank and its affiliated Associations make credit available in Arizona, California, Colorado, Hawaii, Idaho, Kansas, Nevada, New Mexico, Oklahoma and Utah.

9348768.3

2.  AgBank and the other Banks of the Farm Credit System are not legally authorized to accept deposits.[1] Instead, they principally obtain their funds through the issuance of Systemwide Debt Securities, which are bonds and notes issued by the Banks of the Farm Credit System.  Likewise, the individual Associations are not legally authorized to accept deposits and may not borrow from other financial institutions without the approval of their affiliated Bank.  AgBank is the primary source of funds for its Associations. As a result, the loans made by the Associations are primarily funded by the issuance of Systemwide Debt Securities.

3.  The Associations are cooperatives owned by their borrowers, and the Farm Credit Banks are cooperatives primarily owned by their affiliated Associations.  A Bank and its affiliated Associations are financially and operationally interdependent as the Bank is statutorily required to serve as an intermediary between the financial markets and the retail lending activities of its affiliated Associations.

4.  Systemwide Debt Securities are the general unsecured joint and several obligations of the Banks of the Farm Credit System.  As a result of AgBank's joint and several liability under the Systemwide Debt Securities, it faces certain interest rate risks.  To hedge against those risks, AgBank[2] entered into that certain ISDA Master Agreement (the "Master Agreement") with Lehman Brothers Special Financing Inc. ("LBSF"), dated February 14, 2000.  A copy of the Master Agreement is attached as Exhibit A.  LBSF's parent, Lehman Brothers Holdings Inc. ("LBHI," and collectively with its debtor affiliates, the "Debtors"), provided a

---

[1] Although generally not authorized to accept deposits, the Farm Credit Act of 1971 permits AgBank to "… accept deposits of securities or funds from associations in its district." 12 U.S.C. §§ 2001 (as amended); 2013.

[2] The original signatory to the Master Agreement with LBSF was Western Farm Credit Bank ("Western FCB").  On October 1, 2003, Western FCB merged with Farm Credit Bank of Wichita to create AgBank.  On September 26, 2003, the parties executed an amendment to the Master Agreement, reflecting the pending merger and providing that AgBank would assume all rights, duties and obligations of Western FCB under the Master Agreement.

9348768.3                                    2

guaranty of LBSF's payment obligations under the Master Agreement and served as the Credit Support Provider.

5.  Under the Master Agreement, AgBank and LBSF entered into a number of individual swap transactions. At the time of the Petition Date (as defined below), the parties had six active interest rate swaps.

6.  More specifically, the active swaps were as follows:

| AgBank Ref. No. | Lehman Ref. No. | Notional Amount |
|---|---|---|
| VIII-11 | 355519 | $ 25,000,000 |
| IX-11 | 351030 | 25,000,000 |
| I-09 | 407224 | 65,000,000 |
| S22-09 | 2882996 | 10,000,000 |
| S23-09 | 3132174 | 50,000,000 |
| S24-09 | 3203126 | 25,000,000 |

7.  In addition, as of the Petition Date, the parties had 15 active interest rate caps. More specifically, the active interest rate caps were as follows:

| AgBank Ref. No. | Lehman Ref. No. | Notional Amt. | Strike |
|---|---|---|---|
| 3-09 | 491770 | $ 50,000,000 | 7.5 |
| 4-09 | 491773 | 50,000,000 | 7.5 |
| C8-09 | 2436849 | 25,000,000 | 6.5 |
| C9-09 | 2529585 | 10,000,000 | 7.0 |
| C10-09 | 2555334 | 15,000,000 | 5.5 |
| C11-09 | 2557413 | 10,000,000 | 6.5 |
| C12-09 | 2603498 | 50,000,000 | 6.0 |
| C13-09 | 2625944 | 15,000,000 | 9.25 |
| C14-09 | 2709727 | 50,000,000 | 7.0 |
| C15-09 | 2755185 | 100,000,000 | 7.0 |
| C16-09 | 3434072 | 30,000,000 | 6.0 |
| C17-09 | 3481679 | 25,000,000 | 4.75 |
| C18-09 | 3498987 | 20,000,000 | 4.0 |
| C19-09 | 3673474 | 30,000,000 | 6.0 |
| C20-09 | 3738870 | 100,000,000 | 5.5 |

8.  On September 15, 2008 (the "Petition Date"), LBHI filed its voluntary petition for relief under chapter 11 of the U.S. Bankruptcy Code. Because LBHI served as Credit Support

9348768.3                                3

Provider under the Master Agreement, the LBHI bankruptcy filing constituted an Event of Default under Section 5(a)(vii) of the Master Agreement. On October 3, 2008, LBSF filed its own voluntary petition.

9. Exercising its rights under (*inter alia*) section 560 of the Bankruptcy Code and Section 6(a) of the Master Agreement, AgBank provided LBSF with its notice of termination (the "Termination Notice") of the Master Agreement on October 9, 2008. A copy of the Termination Notice is attached as Exhibit B. The Termination Notice established October 14, 2008 as the Early Termination Date of the Master Agreement.

10. Pursuant to Section 6(d) of the Master Agreement, on October 17, 2008, AgBank provided LBSF with its calculations (the "Valuation Letter") of the termination payment owed by LBSF. A copy of the Valuation Letter is attached as Exhibit C. As reflected in the Valuation Letter, the amount owed by LBSF was $10,380,591.56.

11. On December 5, 2008, AgBank filed proof of claim number 1229 ("Claim 1229"). Claim 1229 asserts a general unsecured claim against LBHI in the amount of $10,380,591.56. Also on December 5, 2008, AgBank filed proof of claim number 1230 ("Claim 1230" and collectively with Claim 1229, the "Original Claims"). Claim 1230 asserts a general unsecured claim against LBSF in the amount of $10,380,591.56 plus applicable interest.

12. On September 21, 2009, AgBank filed proof of claim number 24540 ("Claim 24540"). Claim 24540 amended Claim 1230 to comply with the court's Bar Date Order,[3] but continued to assert a general unsecured claim against LBSF in the amount of $10,380,591.56 plus applicable interest. Also on September 21, 2009, AgBank filed proof of claim number

---

[3] The "Bar Date Order" means this Court's *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form*, entered July 2, 2009.

9348768.3                                       4

24543 ("Claim 24543" and collectively with Claim 25450, the "Amended Claims").  Claim 24543 amended Claim 1229 to comply with the Bar Date Order, but continued to assert a general unsecured claim against LBHI in the amount of $10,380,591.56.

13. On May 26, 2010, the Court entered its *Order Granting Debtors' Fifth Omnibus Objection to Claims (Amended and Superseded Claims)* (the "Fifth Omnibus Claim Order").  In the Fifth Omnibus Claim Order – and with AgBank's consent – the Court disallowed the Original Claims, leaving only the Amended Claims as the surviving claims of AgBank.

14. On July 1, 2010, the Debtors filed the instant Claim Objection.  In the Claim Objection, the Debtors assert that the amounts asserted in the Amended Claims "are greater than the fair, accurate and reasonable values determined by the Debtors."  Claim Objection, ¶ 10.

### Response and Legal Authorities

15. AgBank disputes the Debtors' assertions in the Claim Objection, and re-asserts that the proper amount of the Amended Claims is $10,380,591.56 (plus, in the case of Claim 24540, applicable interest).  Accordingly, the Claim Objection should be overruled with regard to the Amended Claims.

16. The Master Agreement provides:  "On or as soon as reasonably practicable following the occurrence of an Early Termination Date, each party will make the calculation on its part, if any, contemplated by Section 6(e) [the provision related to payments upon early termination] and will provide to the other party a statement … showing, in reasonable detail, such calculations."  Master Agreement, § 6(d)(i).

17. In the Schedule to the Master Agreement, the parties selected a "Market Quotation" methodology of calculating the amount due following an Early Termination Date.  Under the Market Quotation methodology, the nondefaulting party is required to obtain at least

three (3) quotations from "Reference Market-makers" – essentially, other swap dealers – for the amount that would be paid to the nondefaulting party to enter into a replacement transaction "that would have the effect of preserving for [the nondefaulting] party the economic equivalent" of the transaction if it had not been terminated. *See* Master Agreement, § 14. The nondefaulting party is instructed to disregard the highest and lowest quotes, and then to use the arithmetic mean of the remaining quotations. *Id.*

18. AgBank has complied with the foregoing contractual requirements. As detailed in the Valuation Letter, AgBank obtained five (5) market quotations from Reference Market-makers with regard to each of the terminated transactions. AgBank set aside the high and low quotation for each transaction, and then calculated the mean for the three remaining quotes for each transaction. $10,380,591.56 represents the sum of those mean amounts for all of the terminated transactions. *See* Valuation Letter, Schedule 1. This methodology is exactly as required by the Master Agreement. *See* Master Agreement, §§ 6(e), 14.

19. Moreover, the Debtors have not carried their burden of proof with regard to the Amended Claims. "The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim. The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. The debtor must introduce evidence to rebut the claim's presumptive validity." *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004) (internal citations omitted). *See also In re Spiegel, Inc.*, 2007 WL 2456626, *15 n.6 (S.D.N.Y. Aug. 22, 2007).

20. The Claim Objection, however, contains nothing but cursory statements of disagreement. Although the Claim Objection is eight pages long, the only portions that approach any substantive criticism of the relevant claims are variations of the statement: "the amounts

listed on the proofs of claim are greater than the fair, accurate and reasonable values determined by the Debtors." Claim Objection, ¶ 10. *See also* Claim Objection, ¶¶ 12 ("the asserted claim amount is greater than the fair, accurate and reasonable value as determined by the Debtors"); 15 ("a fair, accurate and reasonable valuation of the Valued Derivative Claim is less than that reflected on the proof of claim").

21.     The Debtors' repetition of cursory statements does not make those statements true, nor does it transform those cursory statements into the introduction of evidence. Fundamental principles of bankruptcy law require the Debtors to introduce admissible evidence to overcome the prima facie validity of a claim and to shift the burden of proof back to the claimant. "Mere denial of [a] claim's validity or amount is not sufficient to rebut prima facie effect of [the] proof of claim." Hon. Barry Russell, Bankruptcy Evidence Manual, § 301.13(3) (West Group, 1999) (citing *In re O'Connor*, 153 F.3d 258 (5th Cir. 1998); *In re Brown*, 221 B.R. 46 (Bankr. S.D. Ga. 1998); *In re Narragansett Clothing Co.*, 143 B.R. 582, 583 (Bankr. D.R.I. 1992)).

22.     To the extent necessary, AgBank requests a full evidentiary hearing pursuant to Rule 9014(e) of the Federal Rules of Bankruptcy Procedure and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the proper amount of the Amended Claims.

WHEREFORE, AgBank respectfully requests that the Court (a) overrule the Claim Objection as it pertains to the Amended Claims, and (b) grant AgBank such further relief as the Court deems just.

Dated: July 28, 2010
       Washington, DC

    SUTHERLAND ASBILL & BRENNAN LLP

    By:   /s/ Mark D. Sherrill

    Mark D. Sherrill (*pro hac vice*)
    1275 Pennsylvania Avenue, NW
    Washington, DC 20004
    Tel: (202) 383-0100
    Fax: (202) 637-3593

    COUNSEL FOR U.S. AGBANK, FCB