**Hearing Date and Time:  August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  August 11, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

---------------------------------------------------------------x

### NOTICE LBHI'S MOTION, PURSUANT TO SECTIONS 105(a), 363 AND 554 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004 AND 6007, FOR (I) APPROVAL OF SURRENDER AGREEMENT IN CONNECTION WITH SURRENDER OF REAL PROPERTY LEASE AND (II) AUTHORIZATION TO ABANDON CERTAIN PERSONAL PROPERTY

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman Brothers Holdings Inc. ("LBHI," and together with its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors") for approval of a surrender agreement in connection with the surrender of a real property lease and authorization to abandon certain personal property, all as more fully set forth in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Shai Y. Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United

States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases, so as to be so filed and received by no later than **August 11, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 28, 2010
        New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Hearing Date and Time: August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  August 11, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                           :        Chapter 11 Case No.
                                                                :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :        **08-13555 (JMP)**
                                                                :
                              **Debtors.**              :        **(Jointly Administered)**
-------------------------------------------------------------------x

**LBHI'S MOTION, PURSUANT TO SECTIONS**
**105(a), 363 AND 554 OF THE BANKRUPTCY CODE AND**
**BANKRUPTCY RULES 6004 AND 6007, FOR (I) APPROVAL OF SURRENDER**
**AGREEMENT IN CONNECTION WITH SURRENDER OF REAL PROPERTY LEASE**
**AND (II) AUTHORIZATION TO ABANDON CERTAIN PERSONAL PROPERTY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI," and together with its affiliated debtors

in the above-referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors"

and, collectively with their non-debtor affiliates, "Lehman"), files this Motion and respectfully

represents:

**Relief Requested[1]**

1.        By this Motion, LBHI seeks approval, pursuant to sections 105(a),

363(b)(1) and 554(a) of the Bankruptcy Code and Bankruptcy Rules 6004 and 6007, of that

certain Surrender Agreement and the transactions contemplated therein.  Pursuant to the

---

[1] Capitalized terms used but not defined in this section shall have the meanings set forth below in this Motion.

Surrender Agreement, among other things, LBHI will surrender a Lease of real property that has

a remaining term of over three years and, as a condition thereto, and in consideration of, LBHI

will pay a Termination Fee to the landlord, 85 Tenth.

2.      LBHI no longer has a business use for the Premises and, in fact, does not

occupy the Premises.  LBHI, however, has an outstanding obligation with respect to the Premises

of over $12 million.  By entering into the Surrender Agreement and paying the Termination Fee,

LBHI will reduce its obligations under the Lease for the benefit of its estate and creditors by a

net amount of approximately $8 million.  LBHI's decision to enter into the Surrender Agreement

represents a reasonable exercise of its business judgment and should be approved.

3.      In addition, LBHI seeks authorization to abandon the Personal Property

located at the Premises to 85 Tenth.  LBHI has determined that the Personal Property is of little

utility to its estate.

### Background

4.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

5.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner.  The Examiner issued a report of his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

7.      On April 14, 2010, the Debtors filed a revised joint chapter 11 plan and disclosure statement [Docket Nos. 8330 and 8332].

## Jurisdiction

8.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

9.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

10.     Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## The Lease

11.    Pursuant to that certain Agreement of Sublease, dated as of November 30, 2001 (as amended, the "Lease"), by and between LBHI and 85 Tenth Avenue Associates, LLC (as successor-in-interest to Level 3 Communications, LLC, "85 Tenth"), 85 Tenth leases to LBHI the seventh floor and a certain ancillary area of the roof level in a building located at 85 Tenth Avenue, New York, New York (as more particularly defined in the Lease, the "Premises").  The Lease expires on December 31, 2013 (the "Expiration Date").

12.    Prior to the Commencement Date, the Premises was utilized as one of the Debtors' primary data centers.  Following the commencement of these cases, as a result of its obligation to provide access to the Premises to Barclays Capital Inc. ("Barclays") under that certain Transition Services Agreement, dated as of September 22, 2008 (the "TSA"), between LBHI and Barclays, LBHI assumed the Lease pursuant to this Court's order, dated April 9, 2009 [Docket No. 3316],[2] and, pursuant to the TSA, with 85 Tenth's consent, Barclays occupied all or a portion of the Premises.  Barclays used the Premises to provide the Debtors with certain data services until the Debtors established their own data system.  Barclays no longer provides the Debtors with such services, and has informed LBHI it will vacate the Premises by July 31, 2010.

13.    LBHI is obligated under the Lease to pay rent and other charges to 85 Tenth through the Expiration Date in the amount of approximately $300,000 per month.[3]  The Debtors, however, do not have any business purpose for the Premises and do not occupy the

---

[2] The term of the Lease was reduced from February 28, 2017 to the Expiration Date pursuant to that certain Third Amendment of Lease, dated March, 2009 (the "Third Amendment").  LBHI and 85 Tenth entered into the Third Amendment postpetition, and LBHI assumed the Lease as amended by the Third Amendment.

[3] Such amount is inclusive of rent, certain operating expenses, real estate taxes and fixed utilities.

Premises.  Consequently, the Lease is no longer of utility and represents a drain on LBHI's estate and resources.

### The Surrender Agreement

14.    Upon being advised of Barclays' intention to vacate the Premises, LBHI approached 85 Tenth to negotiate LBHI's surrender of the Lease prior to the Expiration Date in order to reduce LBHI's obligations under the Lease.  As a result of such negotiations, LBHI and 85 Tenth entered into a surrender agreement (the "Surrender Agreement"), dated July 28, 2010, the effectiveness of which is subject to this Court's approval.  A copy of the Surrender Agreement is attached hereto as Exhibit A.

15.    The Surrender Agreement includes the following material terms:[4]

| *Surrender of Lease* | As of the Surrender Date, the Lease and the term thereof, and all rights of LBHI and 85 Tenth thereunder, shall expire and terminate with the same effect as if the Surrender Date were the Expiration Date set forth in the Lease. |
|---|---|
| *Surrender Date and Surrender Notice* | The "Surrender Date" shall be the date specified in a written notice (the "Surrender Notice") from 85 Tenth to LBHI, which Surrender Date shall be not later than **December 31, 2010**.<br><br>If 85 Tenth shall have failed or refused to deliver the Surrender Notice by December 25, 2010 (the "Outside Date") for any reason whatsoever, then the Surrender Agreement shall be automatically deemed to have been terminated and of no force or effect, and the Lease shall continue in effect in accordance with its terms.  85 Tenth shall have no obligation to deliver the Surrender Notice, and 85 Tenth may elect not to deliver the Surrender Notice, at 85 Tenth's sole discretion, without incurring any liability to LBHI. |
| *Termination Amount* | On or prior to the Surrender Date, and as a condition thereto, LBHI shall pay to 85 Tenth **$3,500,000** (the "Termination Amount" or "Termination Fee"). |
| *Releases* | Except as otherwise set forth in the Surrender Agreement, each of 85 Tenth and LBHI does release and relieve the other, and their respective successors and assigns and legal representatives from and against all claims, obligations and liabilities of every kind and nature whatsoever arising out of or in connection with the Lease and the Premises surrendered, except for any claims arising out of the Surrender Agreement. |

---

[4] The terms listed below are provided as a summary of the terms of the Surrender Agreement.  In the case of an inconsistency between the terms set forth in the summary and the terms of the Surrender Agreement, the terms of the Surrender Agreement shall control.  Capitalized terms used but not defined within the summary shall have the meanings set forth in the Surrender Agreement.

| | |
|---|---|
| **Abandonment of Personal Property** | Upon the Surrender Date, LBHI abandons any rights it may have in the Personal Property (defined below) remaining at the Premises. |
| **Effective Date** | The Surrender Agreement shall not become binding upon or enforceable against either party unless and until (i) each party, in its sole discretion, shall have executed and unconditionally delivered to the other party an executed counterpart of the Surrender Agreement, and (ii) the Bankruptcy Court's order approving the terms of the Surrender Agreement becomes a Final Order (the "<u>Effective Date</u>"). <br><br> As used in the Surrender Agreement, a "<u>Final Order</u>" means an order that (i) has not been stayed and the time for any motion to stay has expired and (ii) has not been appealed and the time for any appeals has expired, or was appealed and all appeals have been dismissed or have resulted in the affirmance of the order and the time for any further appeals has expired. |
| **Indemnification** | LBHI agrees to indemnify and save and hold 85 Tenth harmless from and against any and all damages, costs, claims, losses or liabilities (including, without limitation, reasonable attorneys' fees and disbursements) resulting from any delay by LBHI in so surrendering the Premises, including, without limitation, any claims made by any succeeding tenant founded on such delay.  LBHI also agrees to indemnify 85 Tenth from and against any and all loss, costs, damage, liability and expense related to any sales tax payable in connection with the abandonment of Personal Property. |

16.     Given that the Debtors do not have any use for the Premises, and considering Barclays will vacate the Premises by July 31, 2010, LBHI and 85 Tenth are negotiating and working to establish the Surrender Date as a date as soon thereafter the Effective Date as possible.  The Surrender Date ultimately depends on 85 Tenth's ability to attract a new tenant to the Premises as 85 Tenth is unwilling to agree to LBHI's surrender of the Lease prior to the Expiration Date unless and until a new tenant is willing to sign a lease for the Premises immediately upon LBHI's surrender of the Lease.

17.     LBHI is obligated to pay rent and other charges to 85 Tenth of approximately $300,000 per month through the Expiration Date, and on a prorated basis through the Surrender Date.  LBHI's outstanding obligation under the Lease from September 1, 2010 through the Expiration Date is approximately $12,483,000.  Thus, assuming the earliest possible Surrender Date under the terms of the Surrender Agreement, after paying the Termination Amount and prorated rent through such Surrender Date, LBHI will have reduced its obligations

under the Lease by a net amount of approximately $9 million.  The latest Surrender Date allowed under the Surrender Agreement is December 31, 2010 (the "December Surrender Date").  Assuming the December Surrender Date, after paying the Termination Amount and rent for the months of September – December 2010, LBHI will have reduced its obligations under the Lease by an approximate net amount of $8 million.

18.    LBHI submits that its decision to surrender the Lease prior to the Expiration Date is in the ordinary course.  Nevertheless, given that the Surrender Agreement requires LBHI to pay the Termination Fee to 85 Tenth and to indemnify 85 Tenth against certain damages, costs, claims, losses or liabilities, LBHI seeks the Court's approval of the Surrender Agreement.

### The Transactions Set Forth in the Surrender Agreement are an Appropriate Exercise of LBHI's Business Judgment

19.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor.  *Comm. Of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper* (*In Re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).

20.    It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

21. As reflected in the Declaration of William B. Gordon, dated July 28, 2010, in support of the Motion, filed concurrently herewith, there are ample business justifications in support of the Motion. Although the Debtors have no business use for the Premises, LBHI has a substantial outstanding obligation – over $12 million – remaining under the terms of the Lease. By entering into the Surrender Agreement and paying the Termination Fee, LBHI will save its estate and creditors, at the very least, approximately $8 million. Thus, the cost of the Termination Amount, an amount that was heavily negotiated by the parties and that LBHI believes to be fair and reasonable under the circumstances, pales in comparison to the savings to LBHI's estate resulting from the surrender of the Lease at least three years prior to the Expiration Date. Even if 85 Tenth ultimately establishes the December Surrender Date, the cost of surrendering the Lease is still justified by the savings resulting to LBHI's estate. Thus, LBHI believes it would be a gross waste of LBHI's property and unreasonable as a matter of business judgment to continue to pay rent to 85 Tenth through the Expiration Date for use of the Premises, a space the Debtors do not occupy and for which the Debtors have no business purpose.

22.     For these reasons, LBHI's decision to enter into the Surrender Agreement and pay the Termination Amount is in the best interest of its estate and creditors and represents a reasonable exercise of its business judgment.  Accordingly, the relief requested by the Motion should be granted.

### Authorization to Abandon Personal Property

23.     LBHI has been informed that after Barclays vacates the Premises, certain miscellaneous equipment and property ("Personal Property") will remain at the Premises.  LBHI has determined that the Personal Property is burdensome and of little utility to LBHI's estate.  Accordingly, LBHI requests authority to abandon the Personal Property pursuant to the terms of the Surrender Agreement.[5]  Section 554(a) of the Bankruptcy Code provides that a debtor in possession "after a notice and hearing . . . may abandon any property of the estate that . . . is of inconsequential value and benefit to the estate."  The right to abandon property is, except for certain exceptions inapplicable in the present case, unfettered.  *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 506–07 (1986) (noting one such exception and holding that section 554(a) does not preempt state laws aimed at protecting the public's health and safety).

24.     LBHI submits that the standard set forth in section 554(a) of the Bankruptcy is satisfied.  Barclays will be vacating the Premises and LBHI does not occupy the Premises.  If LBHI is required to remove the Personal Property from the Premises and store the Personal Property, property for which LBHI has no use, it would incur a cost that would be greater than the value of such assets.  Therefore, LBHI has determined that it is in the best interests of its estate and its creditors to abandon the Personal Property.

---

[5] LBHI is not aware of any property of LBHI's estate remaining at the Premises.  Thus, to the extent LBHI has any rights to the Personal Property, LBHI seeks authority to abandon such rights in the Personal Property.

## Notice

25.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) 85 Tenth; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

26.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: July 28, 2010
     New York, New York

                    /s/ Shai Y. Waisman
                    Shai Y. Waisman

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Debtors
                    and Debtors in Possession

**<u>Exhibit A</u>**
**(The Surrender Agreement)**

## SURRENDER AGREEMENT

THIS SURRENDER AGREEMENT, made this $28$ day of July, 2010 and effective as of the Effective Date (hereinafter defined), by and between 85 TENTH AVENUE ASSOCIATES, L.L.C., a Delaware limited liability company having an office at 60 Columbus Circle, New York, New York 10023 ("Landlord"), and LEHMAN BROTHERS HOLDINGS INC, a Delaware corporation having an address at 1271 Avenue of the Americas, 38th Floor, New York, New York 10020 ("Tenant").

## W I T N E S S E T H

WHEREAS, by Agreement of Sublease, dated as of November 30, 2001, between Level 3 Communications, LLC (predecessor-in-interest to Landlord), and Tenant, as amended (collectively, the "Lease"), Landlord did demise and let unto Tenant, and Tenant did hire and take from Landlord, the Premises (as such term is defined in the Lease), consisting of the seventh (7th) floor in the building (the "Building") known by the street address 85 Tenth Avenue, New York, New York, together with certain ancillary area of the roof level of the Building, as more particularly described in the Lease; and

WHEREAS, Tenant and certain of its affiliates filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), commencing on September 15, 2008 (the "Filing Date"); and

WHEREAS, Tenant desires to surrender to Landlord the Lease and the Premises, and Landlord agrees to accept said surrender, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of Ten Dollars ($10), the mutual receipt and legal sufficiency of which are hereby acknowledged, Landlord and Tenant hereby agree as follows:

1.      Unless otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to such terms in the Lease.

2.      A.      Subject to the provisions of this Agreement, effective as of the Surrender Date (hereinafter defined) Tenant hereby surrenders possession of the Premises to Landlord and, to the intent and purpose that the remainder of the term of the Lease be wholly merged and extinguished, Tenant gives, grants and surrenders all of Tenant's right, title and interest therein and under the Lease (other than those rights, remedies and defenses relating to Claims (hereinafter defined) arising out of this Surrender Agreement which are not released pursuant to this Surrender Agreement). As of the Surrender Date (i) the Lease

and the term thereof and all rights of Tenant (and all persons and entities, including, without limitation, Barclays (hereinafter defined) and Landlord thereunder shall expire and terminate with the same effect as if the Surrender Date were the expiration date set forth in the Lease, and (ii) Landlord shall accept the surrender of the Premises and, except as otherwise set forth in this Surrender Agreement, each of Landlord and Tenant does hereby release and relieve the other, and their respective successors and assigns and legal representatives from and against all claims, obligations and liabilities of every kind and nature whatsoever arising out of or in connection with the Lease and the Premises hereby surrendered (collectively, "Claims"), except for any Claims arising out of this Surrender Agreement.

        B.        For purposes hereof, the "Surrender Date" shall be the date specified in a written notice (the "Surrender Notice") from Landlord to Tenant, which Surrender Date shall be (i) not less than five (5) days after the Surrender Notice has been delivered to Tenant, by hand delivery or by commercial overnight courier service, at the address stated above (Attn: Frank Bartolotta), and (ii) not later than December 31, 2010. The Surrender Notice shall also set forth the Wire Instructions (as hereinafter defined).

        C.        Notwithstanding anything to the contrary contained herein, if Landlord shall have failed or refused to deliver the Surrender Notice by December 25, 2010 (the "Outside Date") for any reason whatsoever (including, without limitation, Landlord's decision, in its sole and absolute discretion, to refuse to deliver the Surrender Notice), then this Surrender Agreement shall be automatically deemed to have been terminated and of no force or effect, and the Lease shall continue in effect in accordance with its terms. Landlord shall have no obligation to deliver the Surrender Notice, and Landlord may elect not to deliver the Surrender Notice, at Landlord's sole discretion, without incurring any liability to Tenant.

        3.        Landlord hereby acknowledges that Barclays Capital Inc. and certain affiliates thereof (collectively, "Barclays") have, with Landlord's consent, been occupying all or a portion of the Premises from and after the Filing Date (such occupation, the "Barclays Occupation"). Tenant represents and warrants to Landlord on behalf of itself, its successors and assigns, that, other than in connection with the Barclays Occupation, it has not, at any time, pledged, hypothecated, assigned or encumbered the Lease or subleased the Premises, or in any other manner whatsoever encumbered the Lease or the Premises, and Tenant hereby covenants, on behalf of itself, its successors and assigns, that, other than in connection with the Barclays Occupation, it will not do any of the foregoing, or permit or suffer any of the foregoing to be done prior to the Surrender Date. For the avoidance of doubt, on or before the Surrender Date, and as a condition thereto, Barclays shall have vacated and surrendered the Premises and all rights in respect thereof

        4.        Tenant shall pay to Landlord all Fixed Rent, Tenant's Operating Payment, Tenant's Tax Payment, and all other items of rental, apportioned as of the Surrender Date, as and when due pursuant to the Lease, and Landlord shall pay to Tenant all refunds or overages as and when due pursuant to the Lease, apportioned as of the Surrender

Date. The provisions of this Paragraph 4 shall survive the Surrender Date.

5.      On or before the Surrender Date, and as a condition thereto, the Premises shall be delivered to Landlord vacant, free and clear of all tenancies and occupancies (including, without limitation, all rights of Barclays), free of all Tenant's Property and in broom clean condition in accordance with the provisions of Article 20 of the Lease. Notwithstanding the foregoing, any items of equipment remaining in the Premises after Barclay's vacates the Premises (collectively, the "Remaining FF&E"), shall remain in the Premises. As of the Surrender Date Tenant hereby waives any right, title or interest it may have in the Remaining FF&E, which shall be deemed to have been abandoned by Tenant and shall become the property of Landlord. As of the Surrender Date, all right, title or interest in and to the Remaining FF&E, if any, shall be deemed to have been transferred to or at the direction of Landlord. Any sales or similar tax payable in connection with the provisions of this Paragraph 5 shall be paid by Tenant. Tenant shall indemnify, defend and save and hold Landlord harmless of and from any and all loss, costs, damage, liability and expense (including, without limitation, reasonable attorneys' fees and disbursements), arising out of or in connection with any sales tax (including any interest and penalties thereon) payable in connection with the provisions of this Paragraph 5. The provisions of this Paragraph 5 shall survive the Surrender Date.

6.      On or prior to the Surrender Date, and as a condition thereto, Tenant shall pay to Landlord, by wire transfer of immediately available funds to the account(s) set forth by Landlord in the Surrender Notice (the "Wire Instructions"), an amount equal to Three Million Five Hundred Thousand Dollars ($3,500,000) (the "Termination Amount").

7.      Landlord and Tenant each represents and warrants to the other that it has not dealt with any broker, finder or like agent in connection with this Surrender Agreement other than CB Richard Ellis, Inc. ("Broker"). Each party does hereby agree to indemnify and hold the other party harmless of and from any and all loss, costs, damage and expense, including, without limitation, reasonable attorneys' fees and disbursements, incurred by reason of any claims of, or liability to, any broker, finder or like agent who shall claim to have dealt with the indemnifying party in connection with this Surrender Agreement (except that Tenant shall not be obligated to indemnify Landlord with regard to claims made by Broker). Landlord will pay a commission to Broker pursuant to a separate agreement between Landlord and Broker. The provisions of this Paragraph 7 shall survive the Surrender Date.

8.      Tenant acknowledges that possession of the Premises must be surrendered to Landlord by the Surrender Date. Subject to the provisions of Paragraph 9 below, Tenant agrees to indemnify and save and hold Landlord harmless from and against any and all damages, costs, claims, losses or liabilities (including, without limitation, reasonable attorneys' fees and disbursements) resulting from any delay by Tenant in so surrendering the Premises, including, without limitation, any claims made by any succeeding tenant founded on such delay. The provisions of this Paragraph 8 shall survive

3

the Surrender Date.

9.     The parties recognize and agree that the damage to Landlord resulting from any failure by Tenant to surrender possession of the Premises by the Surrender Date as aforesaid may be extremely substantial, may exceed the amount of the monthly installments of the Fixed Rent and other items of rental theretofore payable hereunder, and may be impossible to accurately measure. Tenant therefore agrees that if possession of the Premises is not surrendered to Landlord within twenty-four (24) hours after the Surrender Date, in lieu of Landlord's rights under Paragraph 8, Landlord may elect, by written notice to Tenant, to waive Landlord's rights under Paragraph 8 and without vitiating Tenant's obligation to pay the Termination Amount on the Surrender Date, instead receive from Tenant, on account of Tenant's use and occupancy of the Premises for each month and for each portion of any month during which Tenant holds over in the Premises after the Surrender Date, a sum equal to three (3) times the aggregate of that portion of the Fixed Rent, Tenant's Operating Payment, Tenant's Tax Payment and other items of rental which was payable under the Lease during the last month of the Term. Nothing herein contained shall be deemed to permit Tenant to retain possession of any portion of the Premises after the Surrender Date, or to limit in any manner Landlord's right to regain possession of the Premises through summary proceedings, or otherwise, and no acceptance by Landlord of payments from Tenant after the Surrender Date shall be deemed to be other than on account of the amount to be paid by Tenant in accordance with the provisions of this Surrender Agreement. The provisions of this Paragraph 9 shall survive the Surrender Date.

10.     A.     The provisions of this Surrender Agreement shall be self-operative and no further instrument shall be required to terminate the Lease. The foregoing notwithstanding, Tenant and Landlord shall promptly execute, acknowledge and deliver any instrument reasonably requested by the other party hereto in confirmation of the termination of the Lease.

B.     Each of Tenant and Landlord represents and warrants to the other that it is authorized to execute and deliver this Surrender Agreement, and to perform all of its respective financial and other obligations hereunder, and Tenant represents and warrants to Landlord that, as of the Effective Date, the same has been approved by a Final Order of the Bankruptcy Court. Each of Tenant and Landlord shall indemnify, defend and save and hold the other harmless of and from any and all loss, costs, damage, liability and expense (including, without limitation, reasonable attorneys' fees and disbursements), arising out of or in connection with its breach of the foregoing representations and warranties.

C.     The provisions of this Paragraph 10 shall survive the Surrender Date.

11.     A.     This Surrender Agreement shall not become binding upon or enforceable against either party unless and until (i) each party, in its sole discretion, shall have executed and unconditionally delivered to the other party an executed counterpart of this Surrender Agreement, and (ii) the Bankruptcy Court's order approving the terms of the

Surrender Agreement becomes a Final Order (the "Effective Date"). As used in this Surrender Agreement, a "Final Order" means an order that (i) has not been stayed and the time for any motion to stay has expired and (ii) has not been appealed and the time for any appeals has expired, or was appealed and all appeals have been dismissed or have resulted in the affirmance of the order and the time for any further appeals has expired. Tenant shall keep Landlord reasonably apprised, from time to time and upon request from Landlord, of the progress of the Bankruptcy Court's approval of the order, and shall notify Landlord promptly of any stay or appeal of such order and of the occurrence of the Final Order

        B.     Without limiting any rights that Tenant may have at law or in equity, including, without limitation, in its capacity as debtor and debtor in possession in its chapter 11 case in the Bankruptcy Court, the parties hereto hereby acknowledge that Tenant may, in its sole and absolute discretion, unilaterally withdraw any motion submitted to the Bankruptcy Court by Tenant for approval of the terms of this Surrender Agreement. Tenant shall promptly notify Landlord of any such withdrawal.

        12.    The Surrender Agreement constitutes the entire understanding between the parties hereto with respect to the subject matter hereof and may not be waived, changed, modified or discharged orally but only by an agreement in writing signed by the party against whom enforcement of any such waiver, change, modification or discharge is sought. This Surrender Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, Landlord and Tenant have executed this Surrender Agreement as of the day and year first above written.

85 TENTH AVENUE ASSOCIATES, L.L.C.

By:_____

Bruce A. Beal, Vice President

LEHMAN BROTHERS HOLDINGS
INC., as Debtor and Debtor in Possession
in its chapter 11 case in the United States
Bankruptcy Court for the Southern District
of New York, Case No. 08-13555 (JMP)

By: _____

Name:

Title:

6

IN WITNESS WHEREOF, Landlord and Tenant have executed this Surrender Agreement as of the day and year first above written.

85 TENTH AVENUE ASSOCIATES, L.L.C.

By:_____
    Bruce A. Beal, Vice President

LEHMAN BROTHERS HOLDINGS
INC., as Debtor and Debtor in Possession
in its chapter 11 case in the United States
Bankruptcy Court for the Southern District
of New York, Case No. 08-13555 (JMP)

By: _____
    Name: WILLIAM GORDON
    Title: Senior Vice President

6

STATE OF NEW YORK    )

                             : ss.:

COUNTY OF NEW YORK )


        On the ___ day of _____ in the year 2010 before me, the undersigned, a Notary Public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


                                            _____

                                          Notary Public


STATE OF NEW YORK    )

                             : ss.:

COUNTY OF NEW YORK )


        On the 28th day of July____ in the year 2010 before me, the undersigned, a Notary Public in and for said state, personally appeared _Bruce A. Beal_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                          Notary Public

BERNARD J. MICHAEL
Notary Public, State of New York
No. 02MI4845358
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires February 28, 20_17

STATE OF NEW YORK      )
                            : ss.:
COUNTY OF NEW YORK )

On the ___ day of _____ in the year 2010 before me, the undersigned, a Notary Public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

STATE OF NEW YORK      )
                            : ss.:
COUNTY OF NEW YORK )

On the 28 day of July in the year 2010 before me, the undersigned, a Notary Public in and for said state, personally appeared William Gordon, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

JOELLE HALPERIN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02HA6026800
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 21, 2011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                                        :      **Chapter 11 Case No.**
                                                                             :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :      **08-13555 (JMP)**
                                                                             :
                                **Debtors.**                       :      **(Jointly Administered)**
-------------------------------------------------------------------x

**ORDER GRANTING LBHI'S MOTION, PURSUANT TO
SECTIONS 105(a), 363 AND 554 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 6004 AND 6007, FOR (I) APPROVAL OF SURRENDER
AGREEMENT IN CONNECTION WITH SURRENDER OF REAL PROPERTYLEASE
AND (II) AUTHORIZATION TO ABANDON CERTAIN PERSONAL PROPERTY**

Upon the motion, dated July 28, 2010 (the "Motion"),[1] of Lehman Brothers

Holdings Inc. ("LBHI," and together with its affiliated debtors in the above-referenced chapter

11 cases, as debtors and debtors-in-possession, the "Debtors"), pursuant to sections 105(a),

363(b)(1) and 554(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules

6004 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for

approval of a surrender agreement (the "Surrender Agreement"), dated July 28, 2010, between

LBHI and 85 Tenth Avenue Associates, LLC (as successor-in-interest to Level 3

Communications, LLC, "85 Tenth"), pursuant to which LBHI will (i) surrender that certain

Agreement of Sublease, dated as of November 30, 2001 (as amended, the "Lease"), by and

between LBHI and 85 Tenth, and pay to 85 Tenth $3,500,000 (the "Termination Fee") in

consideration of such surrender, and (ii) abandon any miscellaneous equipment and personal

property ("Personal Property") of LBHI's estate remaining at the Premises, all as more fully

described in the Motion; and upon the declaration of William B. Gordon, dated July 28, 2010, in

support of the Motion; and the Court having jurisdiction to consider the Motion and the relief

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61

Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the second amended order entered on June

17, 2010 governing case management and administrative procedures for these cases [Docket No.

9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities

and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for

the Southern District of New York; (vi) 85 Tenth; and (vii) all parties who have requested notice

in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a

hearing having been held to consider the relief requested in the Motion; and the Court having

found and determined that the relief sought in the Motion is in the best interests of LBHI, its

estate and creditors, and all parties in interest and that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor, it is

ORDERED that the Motion is GRANTED; and it is further

ORDERED that, pursuant to sections 105(a), 363(b)(1) and 554(a) of the

Bankruptcy Code, LBHI's entry into the Surrender Agreement, attached hereto as Exhibit A, is

approved and, to the extent required by the Surrender Agreement, LBHI is authorized to execute,

deliver, implement and fully perform any and all obligations, instruments, documents and papers

and to take any and all actions reasonably necessary or appropriate to consummate the Surrender

Agreement and perform any and all obligations contemplated therein; and it is further

ORDERED that LBHI is authorized to pay the Termination Fee to 85 Tenth on or prior to the Surrender Date; and it is further

ORDERED that, as of the Surrender Date, the Lease is hereby terminated with the same effect as if the Surrender Date were the expiration date set forth in the Lease; and it is further

ORDERED that, as of the Surrender Date, the releases contained in the Surrender Agreement shall be effective and LBHI and 85 Tenth shall be deemed to have released and relieved the other, and their respective successors and assigns and legal representatives from and against all claims, obligations and liabilities of every kind and nature whatsoever arising out of or in connection with the Lease and the premises surrendered, except for any claims arising out of the Surrender Agreement; and it is further

ORDERED that LBHI is authorized to abandon the Personal Property pursuant to section 554(a) of the Bankruptcy Code; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: August __, 2010
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit A**
**(The Surrender Agreement)**

US_ACTIVE:\43444597\07\58399.0008

SURRENDER AGREEMENT

THIS SURRENDER AGREEMENT, made this 28 day of July, 2010 and effective as of the Effective Date (hereinafter defined), by and between 85 TENTH AVENUE ASSOCIATES, L.L.C., a Delaware limited liability company having an office at 60 Columbus Circle, New York, New York 10023 ("Landlord"), and LEHMAN BROTHERS HOLDINGS INC, a Delaware corporation having an address at 1271 Avenue of the Americas, 38th Floor, New York, New York 10020 ("Tenant").

W I T N E S S E T H

WHEREAS, by Agreement of Sublease, dated as of November 30, 2001, between Level 3 Communications, LLC (predecessor-in-interest to Landlord), and Tenant, as amended (collectively, the "Lease"), Landlord did demise and let unto Tenant, and Tenant did hire and take from Landlord, the Premises (as such term is defined in the Lease), consisting of the seventh (7th) floor in the building (the "Building") known by the street address 85 Tenth Avenue, New York, New York, together with certain ancillary area of the roof level of the Building, as more particularly described in the Lease; and

WHEREAS, Tenant and certain of its affiliates filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), commencing on September 15, 2008 (the "Filing Date"); and

WHEREAS, Tenant desires to surrender to Landlord the Lease and the Premises, and Landlord agrees to accept said surrender, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of Ten Dollars ($10), the mutual receipt and legal sufficiency of which are hereby acknowledged, Landlord and Tenant hereby agree as follows:

1.     Unless otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to such terms in the Lease.

2.     A.     Subject to the provisions of this Agreement, effective as of the Surrender Date (hereinafter defined) Tenant hereby surrenders possession of the Premises to Landlord and, to the intent and purpose that the remainder of the term of the Lease be wholly merged and extinguished, Tenant gives, grants and surrenders all of Tenant's right, title and interest therein and under the Lease (other than those rights, remedies and defenses relating to Claims (hereinafter defined) arising out of this Surrender Agreement which are not released pursuant to this Surrender Agreement). As of the Surrender Date (i) the Lease

and the term thereof and all rights of Tenant (and all persons and entities, including, without limitation, Barclays (hereinafter defined) and Landlord thereunder shall expire and terminate with the same effect as if the Surrender Date were the expiration date set forth in the Lease, and (ii) Landlord shall accept the surrender of the Premises and, except as otherwise set forth in this Surrender Agreement, each of Landlord and Tenant does hereby release and relieve the other, and their respective successors and assigns and legal representatives from and against all claims, obligations and liabilities of every kind and nature whatsoever arising out of or in connection with the Lease and the Premises hereby surrendered (collectively, "Claims"), except for any Claims arising out of this Surrender Agreement.

        B.      For purposes hereof, the "Surrender Date" shall be the date specified in a written notice (the "Surrender Notice") from Landlord to Tenant, which Surrender Date shall be (i) not less than five (5) days after the Surrender Notice has been delivered to Tenant, by hand delivery or by commercial overnight courier service, at the address stated above (Attn: Frank Bartolotta), and (ii) not later than December 31, 2010. The Surrender Notice shall also set forth the Wire Instructions (as hereinafter defined).

        C.      Notwithstanding anything to the contrary contained herein, if Landlord shall have failed or refused to deliver the Surrender Notice by December 25, 2010 (the "Outside Date") for any reason whatsoever (including, without limitation, Landlord's decision, in its sole and absolute discretion, to refuse to deliver the Surrender Notice), then this Surrender Agreement shall be automatically deemed to have been terminated and of no force or effect, and the Lease shall continue in effect in accordance with its terms. Landlord shall have no obligation to deliver the Surrender Notice, and Landlord may elect not to deliver the Surrender Notice, at Landlord's sole discretion, without incurring any liability to Tenant.

        3.      Landlord hereby acknowledges that Barclays Capital Inc. and certain affiliates thereof (collectively, "Barclays") have, with Landlord's consent, been occupying all or a portion of the Premises from and after the Filing Date (such occupation, the "Barclays Occupation"). Tenant represents and warrants to Landlord on behalf of itself, its successors and assigns, that, other than in connection with the Barclays Occupation, it has not, at any time, pledged, hypothecated, assigned or encumbered the Lease or subleased the Premises, or in any other manner whatsoever encumbered the Lease or the Premises, and Tenant hereby covenants, on behalf of itself, its successors and assigns, that, other than in connection with the Barclays Occupation, it will not do any of the foregoing, or permit or suffer any of the foregoing to be done prior to the Surrender Date. For the avoidance of doubt, on or before the Surrender Date, and as a condition thereto, Barclays shall have vacated and surrendered the Premises and all rights in respect thereof

        4.      Tenant shall pay to Landlord all Fixed Rent, Tenant's Operating Payment, Tenant's Tax Payment, and all other items of rental, apportioned as of the Surrender Date, as and when due pursuant to the Lease, and Landlord shall pay to Tenant all refunds or overages as and when due pursuant to the Lease, apportioned as of the Surrender

Date. The provisions of this Paragraph 4 shall survive the Surrender Date.

5.      On or before the Surrender Date, and as a condition thereto, the Premises shall be delivered to Landlord vacant, free and clear of all tenancies and occupancies (including, without limitation, all rights of Barclays), free of all Tenant's Property and in broom clean condition in accordance with the provisions of Article 20 of the Lease. Notwithstanding the foregoing, any items of equipment remaining in the Premises after Barclay's vacates the Premises (collectively, the "Remaining FF&E"), shall remain in the Premises. As of the Surrender Date Tenant hereby waives any right, title or interest it may have in the Remaining FF&E, which shall be deemed to have been abandoned by Tenant and shall become the property of Landlord. As of the Surrender Date, all right, title or interest in and to the Remaining FF&E, if any, shall be deemed to have been transferred to or at the direction of Landlord. Any sales or similar tax payable in connection with the provisions of this Paragraph 5 shall be paid by Tenant. Tenant shall indemnify, defend and save and hold Landlord harmless of and from any and all loss, costs, damage, liability and expense (including, without limitation, reasonable attorneys' fees and disbursements), arising out of or in connection with any sales tax (including any interest and penalties thereon) payable in connection with the provisions of this Paragraph 5. The provisions of this Paragraph 5 shall survive the Surrender Date.

6.      On or prior to the Surrender Date, and as a condition thereto, Tenant shall pay to Landlord, by wire transfer of immediately available funds to the account(s) set forth by Landlord in the Surrender Notice (the "Wire Instructions"), an amount equal to Three Million Five Hundred Thousand Dollars ($3,500,000) (the "Termination Amount").

7.      Landlord and Tenant each represents and warrants to the other that it has not dealt with any broker, finder or like agent in connection with this Surrender Agreement other than CB Richard Ellis, Inc. ("Broker"). Each party does hereby agree to indemnify and hold the other party harmless of and from any and all loss, costs, damage and expense, including, without limitation, reasonable attorneys' fees and disbursements, incurred by reason of any claims of, or liability to, any broker, finder or like agent who shall claim to have dealt with the indemnifying party in connection with this Surrender Agreement (except that Tenant shall not be obligated to indemnify Landlord with regard to claims made by Broker). Landlord will pay a commission to Broker pursuant to a separate agreement between Landlord and Broker. The provisions of this Paragraph 7 shall survive the Surrender Date.

8.      Tenant acknowledges that possession of the Premises must be surrendered to Landlord by the Surrender Date. Subject to the provisions of Paragraph 9 below, Tenant agrees to indemnify and save and hold Landlord harmless from and against any and all damages, costs, claims, losses or liabilities (including, without limitation, reasonable attorneys' fees and disbursements) resulting from any delay by Tenant in so surrendering the Premises, including, without limitation, any claims made by any succeeding tenant founded on such delay. The provisions of this Paragraph 8 shall survive

the Surrender Date.

9.    The parties recognize and agree that the damage to Landlord resulting from any failure by Tenant to surrender possession of the Premises by the Surrender Date as aforesaid may be extremely substantial, may exceed the amount of the monthly installments of the Fixed Rent and other items of rental theretofore payable hereunder, and may be impossible to accurately measure.  Tenant therefore agrees that if possession of the Premises is not surrendered to Landlord within twenty-four (24) hours after the Surrender Date, in lieu of Landlord's rights under Paragraph 8, Landlord may elect, by written notice to Tenant, to waive Landlord's rights under Paragraph 8 and without vitiating Tenant's obligation to pay the Termination Amount on the Surrender Date, instead receive from Tenant, on account of Tenant's use and occupancy of the Premises for each month and for each portion of any month during which Tenant holds over in the Premises after the Surrender Date, a sum equal to three (3) times the aggregate of that portion of the Fixed Rent, Tenant's Operating Payment, Tenant's Tax Payment and other items of rental which was payable under the Lease during the last month of the Term.  Nothing herein contained shall be deemed to permit Tenant to retain possession of any portion of the Premises after the Surrender Date, or to limit in any manner Landlord's right to regain possession of the Premises through summary proceedings, or otherwise, and no acceptance by Landlord of payments from Tenant after the Surrender Date shall be deemed to be other than on account of the amount to be paid by Tenant in accordance with the provisions of this Surrender Agreement. The provisions of this Paragraph 9 shall survive the Surrender Date.

10.    A.    The provisions of this Surrender Agreement shall be self-operative and no further instrument shall be required to terminate the Lease.  The foregoing notwithstanding, Tenant and Landlord shall promptly execute, acknowledge and deliver any instrument reasonably requested by the other party hereto in confirmation of the termination of the Lease.

B.    Each of Tenant and Landlord represents and warrants to the other that it is authorized to execute and deliver this Surrender Agreement, and to perform all of its respective financial and other obligations hereunder, and Tenant represents and warrants to Landlord that, as of the Effective Date, the same has been approved by a Final Order of the Bankruptcy Court. Each of Tenant and Landlord shall indemnify, defend and save and hold the other harmless of and from any and all loss, costs, damage, liability and expense (including, without limitation, reasonable attorneys' fees and disbursements), arising out of or in connection with its breach of the foregoing representations and warranties.

C.    The provisions of this Paragraph 10 shall survive the Surrender Date.

11.    A.    This Surrender Agreement shall not become binding upon or enforceable against either party unless and until (i) each party, in its sole discretion, shall have executed and unconditionally delivered to the other party an executed counterpart of this Surrender Agreement, and (ii) the Bankruptcy Court's order approving the terms of the

4

Surrender Agreement becomes a Final Order (the "Effective Date"). As used in this Surrender Agreement, a "Final Order" means an order that (i) has not been stayed and the time for any motion to stay has expired and (ii) has not been appealed and the time for any appeals has expired, or was appealed and all appeals have been dismissed or have resulted in the affirmance of the order and the time for any further appeals has expired. Tenant shall keep Landlord reasonably apprised, from time to time and upon request from Landlord, of the progress of the Bankruptcy Court's approval of the order, and shall notify Landlord promptly of any stay or appeal of such order and of the occurrence of the Final Order

    B.  Without limiting any rights that Tenant may have at law or in equity, including, without limitation, in its capacity as debtor and debtor in possession in its chapter 11 case in the Bankruptcy Court, the parties hereto hereby acknowledge that Tenant may, in its sole and absolute discretion, unilaterally withdraw any motion submitted to the Bankruptcy Court by Tenant for approval of the terms of this Surrender Agreement. Tenant shall promptly notify Landlord of any such withdrawal.

    12.  The Surrender Agreement constitutes the entire understanding between the parties hereto with respect to the subject matter hereof and may not be waived, changed, modified or discharged orally but only by an agreement in writing signed by the party against whom enforcement of any such waiver, change, modification or discharge is sought. This Surrender Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument.

[NO FURTHER TEXT ON THIS PAGE]

5

IN WITNESS WHEREOF, Landlord and Tenant have executed this Surrender Agreement as of the day and year first above written.

85 TENTH AVENUE ASSOCIATES, L.L.C.

By:_____
       Bruce A. Beal, Vice President

LEHMAN BROTHERS HOLDINGS
INC., as Debtor and Debtor in Possession
in its chapter 11 case in the United States
Bankruptcy Court for the Southern District
of New York, Case No. 08-13555 (JMP)


By: _____
      Name:
      Title:

IN WITNESS WHEREOF, Landlord and Tenant have executed this Surrender Agreement as of the day and year first above written.

85 TENTH AVENUE ASSOCIATES, L.L.C.

By:_____
     Bruce A. Beal, Vice President

LEHMAN BROTHERS HOLDINGS
INC., as Debtor and Debtor in Possession
in its chapter 11 case in the United States
Bankruptcy Court for the Southern District
of New York, Case No. 08-13555 (JMP)

By:_____
Name: WILLIAM GORDON
Title: Senior Vice President

6

STATE OF NEW YORK    )

                            : ss.:

COUNTY OF NEW YORK )


                    On the ___ day of _____ in the year 2010 before me, the undersigned, a Notary Public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


                                           _____

                                         Notary Public


STATE OF NEW YORK    )

                            : ss.:

COUNTY OF NEW YORK )


                    On the 28th day of July in the year 2010 before me, the undersigned, a Notary Public in and for said state, personally appeared _Bruce A. Beal_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


                                         _____

                                         Notary Public

                                         BERNARD J. MICHAEL
                               Notary Public, State of New York
                                No. 02MI4845358
                              Qualified in Westchester County
                           Certificate Filed in New York County
                      Commission Expires February 28, 20_17_

STATE OF NEW YORK     )
                     : ss.:

COUNTY OF NEW YORK )


On the ___ day of _____ in the year 2010 before me, the undersigned, a Notary Public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
Notary Public


STATE OF NEW YORK     )
                     : ss.:

COUNTY OF NEW YORK )


On the 28 day of July in the year 2010 before me, the undersigned, a Notary Public in and for said state, personally appeared William Gordon _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
Notary Public

JOELLE HALPERIN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02HA6026800
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 21, 2011