SEWARD & KISSEL LLP
Ronald L. Cohen (RC-3897)
Jack Yoskowitz (JY-3935)
Ellen Lafferty (EL-6537)

One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

Attorneys for Investcorp Interlachen
Multi-Strategy Master Fund Limited

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*<br><br>Debtors. | Chapter 11 Case No.<br><br>Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |

## RESPONSE OF INVESTCORP INTERLACHEN MULTI-STRATEGY MASTER FUND LIMITED TO DEBTORS' TWENTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)

TO THE HON. JAMES PECK, UNITED STATES BANKRUPTCY JUDGE:

Investcorp Interlachen Multi-Strategy Master Fund Limited ("Investcorp"), by and through its undersigned counsel, hereby submits this response (the "Response") to the Debtors' (the "Debtors") Twenty-Eighth Omnibus Objection to Claims (Valued Derivative Claims), dated July 1, 2010 (the "Objection"). In support of its Response, Investcorp respectfully states as follows:[1]

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Master Agreements.

**Summary of Argument**

1.      The Objection should be denied because Investcorp's proofs of claim are prima facie valid.  It is the Debtors' burden to overcome that prima facie validity, and the Objection does not meet that burden.  The amounts in Investcorp's proofs of claim were calculated pursuant to the express terms of the ISDA master agreements governing the parties' relationships.  The Objection does not address the ISDA master agreements in any specific respect, nor does the Objection argue or even state that the process by which the proofs of claim were calculated was flawed.  Instead, the Objection cursorily concludes – without providing *any* numerical support for its conclusion – that Investcorp's claims should reduced by more than eighty percent.  The Objection provides only a general discussion of the Debtors' process in generating "modified claim amounts," a process generically applied across multiple creditors without reference to any facts specific to Investcorp's proofs of claim and not in any way supported by the ISDA master agreements.  The Debtors' request to reduce Investcorp's claim amounts should be denied.

**Background**

**Investcorp's Proof of Claim Against Lehman Brothers Special Financing Inc.**

2.      On September 4, 2009, Investcorp filed a proof of claim against Lehman Brothers Special Financing Inc. (the "LBSF Proof of Claim") and a proof of claim against Lehman Brothers Holdings Inc. (the "LBHI Proof of Claim" and, together with the LBSF Proof of Claim, the "Proofs of Claim").  Exs. A (LBSF Proof of Claim) and B (LBHI Proof of Claim).

3.      Investcorp entered into an ISDA Master Agreement, dated as of July 11, 2006, with Lehman Brothers Special Financing Inc. ("LBSF").  Ex. A (Addendum to LBSF Proof of Claim) at ¶ 1; Ex. C (LBSF Master Agreement).  The ISDA Master Agreement, together

with the Schedule thereto and the Credit Support Annex part thereof, are collectively referred to as the "LBSF Master Agreement." *Id.*

4. Under the terms of the LBSF Master Agreement, Investcorp and LBSF agreed to enter into one or more derivative transactions. Ex. A (Addendum to LBSF Proof of Claim) at ¶ 2. Each Transaction is evidenced by a confirmation. *Id.*

5. Debtor Lehman Brothers Holdings Inc. ("LBHI") unconditionally guaranteed the obligations of LBSF under the LBSF Master Agreement pursuant to the Guarantee of LBHI relating to the LBSF Master Agreement (the "LBSF Guarantee"). Ex. A (Addendum to LBSF Proof of Claim) at ¶ 3. The LBSF Guarantee is a Credit Support Document as contemplated by the LBSF Master Agreement. *Id.*

6. Section 5 of the LBSF Master Agreement defines "Events of Default and Termination Events." Ex. C (LBSF Master Agreement) at § 5. Section 5(a) lists eight scenarios that constitute Events of Default. *Id.* The filing by debtor guarantor LBHI of a chapter 11 petition on September 15, 2008 constituted an Event of Default under Section 5(a)(vii) of the LBSF Master Agreement. Ex. A (Addendum to LBSF Proof of Claim) at ¶ 4.

7. Section 6 of the LBSF Master Agreement gives Investcorp the right to terminate all outstanding transactions following an Event of Default. Ex. C (LBSF Master Agreement) at § 6.

8. Pursuant to Section 6 of the LBSF Master Agreement, on September 17, 2008, Investcorp sent LBSF a Notice of Termination Event, which set an Early Termination Date of September 17, 2008. Ex. A (Addendum to LBSF Proof of Claim) at ¶ 4; Ex. D (Notice of Termination Event).

9. Section 6(d) of the LBSF Master Agreement states that, following the occurrence of an Early Termination Date, each party will calculate any payments due pursuant to Section 6(e), which governs "Payments on Early Termination," and will provide the other party with a statement of those calculations. Ex. C (LBSF Master Agreement) at § 6(d).

10. Section 6(e) of the LBSF Master Agreement states, in part, that

> If an Early Termination Date occurs, the following provisions shall apply based on the parties' election in the Schedule of a payment measure, either 'Market Quotation' or 'Loss', and a payment method, either the 'First Method' or the 'Second Method'. If the parties fail to designate a payment measure or payment method in the Schedule, it will be deemed that 'Market Quotation' or the 'Second Method', as the case may be, shall apply.

Ex. C (LBSF Master Agreement) at § 6(e).

11. The parties designated in the Schedule the Market Quotation/Second Method as applying to the types of transactions then in effect under the LBSF Master Agreement, so the Market Quotation/Second Method was the appropriate method under the LBSF Master Agreement of calculating amounts owed to Investcorp. Ex. C (LBSF Master Agreement).

12. Section 6(e)(i)(3) of the LBSF Master Agreement defines the "Second Method and Market Quotation" as follows:

> If the Second Method and Market Quotation apply, an amount will be payable equal to (A) the sum of the Settlement Amount (*determined by the Non-defaulting Party*) in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party less (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party. If that amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting Party will pay the absolute value of that amount to the Defaulting Party.

Ex. C (LBSF Master Agreement) at § 6(e)(i)(3) (emphasis added).

4

13. "Settlement Amount" means,

"with respect to a party and any Early Termination Date, the sum of: (a) the Termination Currency Equivalent of the Market Quotations (whether positive or negative) for each Terminated Transaction or group of Terminated Transactions for which a Market Quotation is determined; and (b) such party's Loss (whether positive or negative and without reference to any Unpaid Amounts) for each Terminated Transaction or group of Terminated Transactions for which a Market Quotation cannot be determined or would not (in the reasonable belief of the party making the determination) produce a commercially reasonable result.

Ex. C (LBSF Master Agreement) at § 14.

14. "Market Quotation" means, "with respect to one or more Terminated Transactions and a party making the determination, an amount determined on the basis of quotations from Reference Market-makers." Ex. C (LBSF Master Agreement) at § 14.

15. "Reference Market-makers" means "four leading dealers in the relevant market *selected by the party determining a Market Quotation in good faith* (a) from among dealers of the highest credit standing which satisfy all criteria that such party applies generally at the time in deciding whether to offer or to make an extension of credit and (b) to the extent practicable, from among such dealers having an office in the same city." (emphasis added) Ex. C (LBSF Master Agreement) at § 14.

16. On September 22, 2008, Investcorp sent LBSF a statement of payments on early termination of the LBSF Master Agreement (the "Statement"). Ex. A (Addendum to LBSF Proof of Claim) at ¶ 5; Ex. E (Statement). The Statement calculated Investcorp's losses pursuant to the Market Quotation/Second Method, as required by Section 6(e) of the LBSF Master Agreement. Specifically, Investcorp obtained Market Quotations from four Reference Market-makers with respect to each derivative transaction terminated pursuant to the Notice of

Termination Event and used those Market Quotations to calculate the losses that it identified in its LBSF Proof of Claim.

17. Investcorp provided those Market Quotations and supporting data to the Debtors on the Debtors' supplemental questionnaire website, www.lehman-claims.com (the "Website"), in satisfaction of the "Derivative Questionnaire" requirements set forth in the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form entered in this case on July 2, 2009 (the "Bar Date Order"). Ex. A (Addendum to LBSF Proof of Claim) at ¶ 1; Ex. F (Spreadsheet containing Market Quotations).

18. The Statement provides that Investcorp's losses with respect to the LBSF Master Agreement are as follows:

| | |
|---|---|
| Termination Value of All Outstanding Derivative Contracts: | $526,228.94 |
| Interest Payable to date of Statement | $216.29 |
| Net Claim: | $526,445.23 |

Ex. E (Statement).

19. Under the LBSF Master Agreement, LBSF agreed to indemnify Investcorp and pay all reasonable out-of-pocket expenses, including legal fees and stamp tax, as a result of enforcement of its rights under that agreement or any Credit Support Document, such as the Guarantee. Ex. A (Addendum to LBSF Proof of Claim) at ¶ 6. Investcorp's LBSF Proof of Claim includes Investcorp's legal fees and expenses, including legal fees and expenses in an amount to be determined. *Id.*

20. Pursuant to the LBSF Master Agreement, Investcorp is also entitled to interest at the default rate on all amounts due and owing. Ex. A (Addendum to LBSF Proof of Claim) at ¶ 7. Investcorp's LBSF Proof of Claim includes all interest and default interest to the extent permitted under applicable law. *Id.*

21. In addition, LBSF made certain representations and warranties under the LBSF Master Agreement. Ex. A (Addendum to LBSF Proof of Claim) at ¶ 8. Investcorp's LBSF Proof of Claim includes damages to Investcorp for any breaches of representations and warranties made by LBSF in the LBSF Master Agreement, to the extent applicable under the LBSF Master Agreement and related documents. *Id.*

22. On September 4, 2009, Investcorp filed its LBSF Proof of Claim seeking (a) recovery of an aggregate amount of $526,445.23, (b) an unliquidated amount of fees and expenses that will continue to accrue, (c) interest at the default rate, to the extent permitted under applicable law, and (d) an unliquidated amount for LBSF's potential breaches under the LBSF Master Agreement. Ex. A (Addendum to LBSF Proof of Claim) at ¶ 10.

**Investcorp's Proof of Claim Against Lehman Brothers Holdings Inc.**

23. Investcorp is a party to the ISDA Master Agreement dated as of July 11, 2006 between Investcorp and LBIE (together with the Schedules and Credit Support Annex part thereof, the "LBIE Master Agreement" and, together with the LBSF Master Agreement, the "Master Agreements").

24. Under the terms of the Master Agreements, Investcorp, LBSF and LBIE agreed to enter into one or more transactions under the Master Agreements. Ex. B (Addendum to LBHI Proof of Claim) at ¶ 3. Each Transaction is evidenced by a confirmation. *Id.*

25. LBHI unconditionally guaranteed the obligations of LBSF and LBIE under the Master Agreements pursuant to two separate guarantees, (a) the LBSF Guarantee and (b) the Guarantee of Lehman Brothers Holdings Inc. relating to the LBIE Master Agreement (the "LBIE Guarantee," and together with the LBSF Guarantee, the "Guarantees"). Ex. B (Addendum to LBHI Proof of Claim) at ¶ 4. The Guarantees are Credit Support Documents as contemplated by the Master Agreements. *Id.* The relevant documentation relating to the Guarantees was uploaded to the Website in satisfaction of the "Guarantee Questionnaire" requirements set forth in the Bar Date Order. *Id.*

26. Pursuant to the Guarantees, LBHI

> unconditionally guarantees to [Investcorp] the due and punctual payment of all amounts payable by [LBSF/LBIE] under each Transaction when and as [LBSF/LBIE]'s obligations thereunder shall become due and payable in accordance with the terms of the [Master] Agreement. In the case of the failure of [LBSF/LBIE] to pay punctually any such amounts, [LBHI] hereby agrees, upon written demand by [Investcorp], to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

Ex. B (Addendum to LBHI Proof of Claim) at ¶ 5; Ex. G (Guarantees).

27. LBHI's filing of a chapter 11 petition on September 15, 2008, constituted an Event of Default under Section 5(a)(vii) of the Master Agreements. Ex. B (Addendum to LBHI Proof of Claim) at ¶ 6; Ex. C (LBSF Master Agreement); Ex. H (LBIE Master Agreement). On September 17, 2008, Claimant sent each of LBSF and LBIE a notice designating an Early Termination Date under the respective Master Agreements of September 17, 2008. Ex. B (Addendum to LBHI Proof of Claim) at ¶ 6; Ex. I (Notices).

28. On September 22, 2008, Investcorp sent LBSF and LBIE notices designating payments on Early Termination. Ex. B (Addendum to LBHI Proof of Claim) at ¶ 7;

Ex. I (Notices). The Notices Designating Payments on Early Termination provide that Claimant's losses in respect of the LBSF Master Agreement are as follows:

| | |
|---|---|
| Termination Value of All Outstanding Derivative Contracts: | $526,228.94 |
| Interest Payable to date of Statement | $216.29 |
| Net Claim: | $526,445.23 |

And, in respect of the LBIE Master Agreement are as follows:

| | |
|---|---|
| Termination Value of All Outstanding Derivative Contracts: | $31,699.52 |
| Interest Payable to date of Statement | $13.03 |
| Net Claim: | $31,712.55 |

*Id.*

29. On December 15, 2008, Investcorp sent LBHI notices under each of the Guarantees demanding payment by LBHI in accordance with the Guarantees. Ex. J (Payment Demands to LBHI).

30. The LBIE Master Agreement contains the same language and requirements for calculation of a claim amount as does the LBSF Master Agreement. Investcorp undertook the same steps for calculating its losses in the LBHI Proof of Claim as it did with respect to its LBSF Proof of Claim. *See supra*.

31. Under the Master Agreements, LBSF and LBIE agreed to indemnify Investcorp and pay all reasonable out-of-pocket expenses, including legal fees and stamp tax, as a result of the enforcement of its rights under those Master Agreements or any Credit Support Document, such as the Guarantees. Ex. B (Addendum to LBHI Proof of Claim) at ¶ 9. Investcorp's LBHI Proof of Claim includes fees and expenses, including legal fees and expenses in an amount to be determined. *Id.*

32. Pursuant to the Master Agreements, Investcorp is also entitled to interest at the default rate on all amounts due and owing. Ex. B (Addendum to LBHI Proof of Claim) at ¶ 10. Investcorp's LBHI Proof of Claim includes all interest and default interest to the extent permitted under applicable law. *Id.*

33. To date, neither LBSF nor LBIE have paid the amounts due under the Master Agreements. Pursuant to the Guarantees, the LBHI is obligated to pay these amounts. Ex. B (Addendum to LBHI Proof of Claim) at ¶ 8; Ex. G (Guarantees).

34. Additionally, LBHI, pursuant to a resolution of its board of directors dated June 9, 2005 (the "Board Resolution"), fully guaranteed the payment of all liabilities, obligations and commitments of certain of its subsidiaries, including LBSF and LBIE. Ex. B (Addendum to LBHI Proof of Claim) at ¶ 13. LBHI is therefore fully liable under the Board Resolution for all amounts owed by LBSF and LBIE, as well as for any and all amounts owing in respect of any other claim Investcorp may have against LBSF and LBIE. *Id.*

35. On September 4, 2009, Investcorp filed its LBHI Proof of Claim for (a) recovery of $526,445.23 with respect to the LBSF Master Agreement and $31,712.55 with respect to the LBIE Master Agreement, (b) an unliquidated amount of fees and expenses that will continue to accrue, (c) interest at the default rate, to the extent permitted under applicable law, and (d) an unliquidated amount for the Debtor's potential breaches under the Master Agreements. Ex. B (Addendum to LBHI Proof of Claim) at ¶ 14.

**The Debtors' Objection to Investcorp's Proofs of Claim**

36. On July 1, 2010, the Debtors filed their Objection.

37. The Debtors stated that they had examined Investcorp's Proofs of Claim and that those Proofs of Claim "should be reduced and allowed on the basis that the amounts

10

listed on the proofs of claim are greater than the fair, accurate, and reasonable values determined by the Debtors after a review of the claimant's supporting documentation and the Debtors' books and records." Objection at ¶ 2.

38. The Debtors therefore requested that this Court reduce each such claim to the "Modified Claim Amount" and allow each such claim only to the extent of such Modified Claim Amount. Objection at ¶ 2.

39. Specifically, the Debtors have requested that Investcorp's LBSF Proof of Claim should be reduced from $526,445.23 to $99,483.00 and that Investcorp's LBHI Proof of Claim should be reduced from $558,157.78 to $99,483.00. Objection at Ex. A.

## ARGUMENT

40. The Debtors' Objection to Investcorp's Proofs of Claim is baseless. Investcorp was entitled, under the express terms of the Master Agreement, to calculate the amounts underlying Investcorp's Proofs of Claim. Investcorp calculated these amounts specifically as mandated by the terms of the Master Agreements. The Debtors do not offer *any* evidence to dispute this fact. The Debtors erroneously claim that the burden of proof with respect to the Proofs of Claim lies with Investcorp even though the Debtors' own cited case law is unequivocal that the Proofs of Claim are prima facie valid and that the burden of proving otherwise rests squarely with the Debtors.

**Investcorp Calculated the Amounts in the Proofs of Claim
as Required By the Master Agreements**

41. Pursuant to Section 14 of the LBSF Master Agreement, it is the right of Investcorp, as the non-defaulting party – not the Debtors – to obtain Market Quotations from four Reference Market-makers and to use that data as the basis for valuing the amounts owed by the Debtors in connection with the termination of the Master Agreements.

11

42. Investcorp calculated the amounts in the Proofs of Claim as required by the terms of the Master Agreements.

43. As discussed *supra*, Investcorp calculated the amounts asserted in the Proofs of Claim using the Market Quotation/Second Method, as expressly required by the terms of the Master Agreements.

44. Pursuant to the Market Quotation/Second Method, Investcorp obtained four Market Quotations from four Reference Market-makers, as prescribed by the Master Agreements, and used those Market Quotations to calculate the losses that it identified in its Proofs of Claim. *See supra*. Investcorp provided those Market Quotations and other supporting data to the Debtors through the Website, as required by the Bar Date Order. *Id.*, Ex. F (Spreadsheet containing Market Quotations).

**The Debtors Do Not Provide Any Evidence To Dispute the Amounts in the Proofs of Claim**

45. The Debtors do not provide any evidence to dispute the amounts in Investcorp's Proofs of Claim.

46. The Debtors do not even address the terms of the Master Agreements in their Objection. Instead, the Objection discusses only the general process – unrelated to the terms of the Master Agreements – that resulted in their conclusion that the amounts in Investcorp's Proofs of Claim should be reduced. The Debtors do not provide a single calculation or a single document in support of their position – just their bare conclusion that the amounts in Investcorp's Proofs of Claim should be reduced by more than eighty percent.[2] Neither the Debtors' general process nor its conclusion is supported by the Master Agreements. In fact, the

---

[2] In footnote 2 of their Objection, "[f]or a more comprehensive discussion of the valuation process," the Debtors refer to the Declaration of Gary H. Mandelblatt in Support of Debtors' Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3002(c)(3) for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form. However, that declaration does not provide any information that is specific to Investcorp.

Debtors' process and conclusion are wholly inconsistent with the terms of the Master Agreements.

47. It should also be noted that, although the LBSF Proof of Claim and the LBHI Proof of Claim were for different amounts, each was reduced to the exact same Modified Claim Amount of $99,483.00. A reasoned calculation of two different groups of transactions would have resulted in different valuations. The identical Modified Claim Amounts suggest that the reduction was arbitrary and not the result of a considered process, as claimed by the Debtors.

**The Debtors Misstate the Burden of Proof**

48. The Debtors not only ignore the terms of the Master Agreements which govern the calculation of the amounts in the Proofs of Claim but, even according to their own cited case law, they misstate the applicable burden of proof. The Debtors argue that "[i]f an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim." Objection at ¶ 11 *citing In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Comms Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

49. To the contrary, "[a] proof of claim is prima facie evidence of the validity and amount of a claim, and the *objector* bears the initial burden of persuasion." *Oneida*, 400 B.R. at 389 (emphasis added). The burden would only shift to Investcorp if the Debtors had produced "evidence in equal force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.* In other words, to shift the burden of proof to Investcorp, the Debtors must first produce sufficient evidence to

overcome the "prima facie validity" of Investcorp's Proofs of Claim. *Adelphia*, 2007 Bankr. LEXIS 660 at *15-16; *Rockefeller*, 272 B.R. at 539.

50.     As discussed *supra*, the Debtors have not produced information sufficient to shift the burden of proof to Investcorp – the Debtors have not produced any information at all. The Objection does not provide any numerical data in support of how the Modified Claims Amounts were calculated and does not even refer to the Master Agreements, which define the obligations of the parties and which govern the calculation of the amounts in the Proofs of Claim. The Objection merely describes a general process that was purportedly used to reach the Modified Claim Amounts. This general process has no basis in, and is in fact inconsistent with, the express terms of the Master Agreement. The Debtors' Objection should be denied.

**Conclusion**

WHEREFORE, for the foregoing reasons, Investcorp respectfully requests that this Court deny the Debtors' Objection and grant Investcorp such other, further, and different relief as this Court deems just and proper.

New York, New York
August 3, 2010

                        SEWARD & KISSEL LLP

                        By:   /s/ Jack Yoskowitz
                            Ronald L. Cohen (RC-3897)
                            Jack Yoskowitz (JY-3935)
                            Ellen Lafferty (EL-6537)

                            One Battery Park Plaza
                            New York, New York 10004

                            Telephone: (212) 574-1200
                            Facsimile:  (212) 480-8421

*Attorneys for Investcorp Interlachen Multi-Strategy Master Fund Limited*

SK 26539 0001 1121187