WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC., *et al.*,** | : | **08-13555 (JMP)** |
| **Debtors.** | : | **(Jointly Administered)** |

**NOTICE OF AMENDMENT TO**
**AGREEMENT BETWEEN LEHMAN BROTHERS**
**HOLDINGS INC. AND STRUCTURED CAPITAL SOLUTIONS, LLC**

**PLEASE TAKE NOTICE** that on August 2, 2010, Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), filed the ordinary course professional affidavit and retention questionnaire (together the "Affidavit and Questionnaire") of Mark McTigue on behalf of Structured Capital Solutions, LLC ("Structured Capital") in connection with the Notice of Fifty-Sixth Supplemental List of Ordinary Course Professionals [Docket No. 10611]. Attached as Exhibit 1 of the Affidavit and Questionnaire is the agreement entered into between LBHI and Structured Capital (together, the "Parties") on July 16, 2010 setting forth the terms and conditions of Structured Capital's engagement (the "Engagement Letter").

**PLEASE TAKE FURTHER NOTICE** that the Parties have amended the Engagement Letter (the "Amended Engagement Letter"). A copy of the Amended Engagement Letter is annexed hereto as Exhibit A. The Amended Engagement Letter supersedes the Engagement Letter originally filed with the Court.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as Exhibit B is a blackline of the Engagement Letter annexed to the Affidavit and Questionnaire, that has been marked to identify those amendments made to said agreement.

Dated: August 4, 2010
New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# <u>Exhibit A</u>

Structured Capital Solutions, LLC
230 Park Avenue, 10th Floor
New York, NY, 10169
United States of America

July 16, 2010

Lehman Brothers Holdings Inc.
Mr Jeffry Ciongoli
Floor 11 Corporate Tax
101 Hudson Street
Jersey City, NJ
07302

Dear Jeff,

As we have recently discussed, I set forth the terms on which Structured Capital Solutions, LLC ("SCS") would provide certain services as described below to Lehman Brothers Holding Inc. ("LBHI"). SCS is prepared to provide these services upon acceptance of the terms outline herein. We understand that LBHI is a debtor in a case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") currently pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

1. **The Evaluation**. LBHI has requested that SCS undertake an evaluation of the Real Estate Mortgage Investment Conduit ("REMIC") portfolio of LBHI and affiliated companies (collectively referred to herein as the "Evaluation"). As part of the Evaluation SCS, and specifically Paul Edwards, will provide LBHI with a Declaration prepared for the Bankruptcy Court, regarding the fairness and reasonableness given current market condition of the $24 million Inducement Fee payable by LBHI for the entire REMIC portfolio (referred to herein as the "Declaration").

Further if and as required Paul Edwards, Adam Parr or Mark McTigue are able to testify in the Bankruptcy Court as to SCS's conclusion regarding the fairness and reasonableness as presented in the Declaration.

2. **Delivery Of The Evaluation**. SCS understands that LBHI has a compressed timeframe for SCS to undertake the Evaluation and we are committed to working towards the delivery of the Evaluation in a manner that is consistent with this compressed timeframe, subject to SCS receiving confirmation of our appointment and any necessary financial and operating documents required to undertake the Evaluation. SCS is aiming to deliver LBHI with the Evaluation by Friday July 23, 2010.

3. **Fees**. In consideration for undertaking the Evaluation and testifying in the Bankruptcy Court (if applicable), SCS will charge LBHI on an hourly rate basis for work undertaken. SCS will provide LBHI with an invoice of fees charged from time to time or at the conclusion of the Evaluation based on the standard SCS hourly rate for the individuals assigned to undertake the Evaluation and any testimony including (i) a Managing Director at $900 per hour (i.e. Adam Parr, Mark McTigue, Don Susswein, Paul Edwards), and (ii) a Vice President at $700 per hour (i.e. Jonathan Huang) (collectively referred to herein as "Fees"). In the event that the total Fees exceed $100,000 SCS agrees to reconsider the standard SCS hourly rate as detailed herein and will in good faith agree a lower hourly rate with LBHI at that time before any further Fees are incurred. SCS agrees that it will provide LBHI with notice once the total amount of Fees incurred has reached $90,000.

In addition, LBHI agrees to reimburse SCS for reasonable out-of-pocket expenses including fax, phone and courier charges ("Expenses").

Notwithstanding anything contained in this letter to the contrary, we understand and agree that our engagement by LBHI, and our submission of invoices or other forms of payment requests, are subject to compliance with the provisions of the Bankruptcy Code and relevant orders entered by the Bankruptcy Court in the Chapter 11 Case, including but not limited to the Amended Order Pursuant to Section 105(a), 327, 328 and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business, dated March 25, 2010.

Fees for any additional work to be performed by SCS shall be subject to negotiations and a separate engagement agreement between SCS and LBHI.

4. **Information**. LBHI will provide SCS with the information in its possession considered to be relevant to undertaking the Evaluation and all other such information that is reasonably requested by SCS in order to undertake the Evaluation (all information so provided, as it from time to time updated and kept accurate, including any information provided subsequently and including all information required in order for SCS to be capable of undertaking the Evaluation referred to hereinafter as the "Information").

5. **Reliance On Information**. LBHI acknowledges and agrees that SCS shall, and has been directed by LBHI to rely on the Information in undertaking the Evaluation. LBHI agrees that SCS shall be under no duty or obligation to (i) undertake further due diligence on any of the underlying loans contained within the REMIC portfolio or to physically inspect any property or premises, or any other sort of tangible property, or (ii) meet with any borrowers or servicers of the underlying loans contained within the REMIC portfolio or any other individuals other than the immediate business unit of LBHI that is undertaking the sale of the REMIC portfolio.

As part of the Evaluation SCS will assess the Information and inform LBHI to the extent that in SCS's view the Information is inconsistent with current market conditions and practices.

6. **Accuracy Of Information**. LBHI warrants, represents and covenants that to the best of its knowledge any Information provided is accurate and true and SCS can rely on the Information without exposing itself to liability arising from such not being the case.

7. **Use And Reproduction Of The Evaluation**. LBHI agrees that the Evaluation is for its own use and will not, for any other reason, be (i) reproduced without the written consent of SCS and then only in its entirety, and with all revisions, changes, qualifications, attachments, schedules, exhibits and notations thereto, as such exist at the time of the given reproduction and each such report shall bear a legend to that effect, (ii) bound into or incorporated in any manner into a business plan in connection with securing the financing or financial restructuring of any venture, or (iii) shown to any person not part of LBHI's management staff, or Weil Gotshal & Manges LLP as general counsel to LBHI and its affiliated debtors, unless required to be disclosed to the Bankruptcy Court as part of LBHI's Chapter 11 filing. SCS grants permission for LBHI to make copies for internal use.

For the avoidance of doubt this paragraph will only apply to working papers and other supporting documents provided to LBHI as part of the Evaluation and will not relate to the Declaration or any information contained in the Declaration.

8. **Confidentiality**. All information and any and all other documents released by LBHI to SCS, shall be kept confidential by SCS and shall only be used by SCS for purposes of undertaking the Evaluation. With the exception of the Declaration SCS shall keep confidential all correspondence with LBHI including, but not limited to, its final Evaluation submitted to LBHI. Any information discovered and/or generated independently by SCS in undertaking the Evaluation remains the property of SCS so long as the information discovered is not proximately and causally linked to the Evaluation.

9. **Indemnity Obligation**. LBHI, for itself and its successors, agrees to indemnify and forever hold SCS, its partners, employees, agents, consultants, directors, officers, and principals including without limitation Paul Edwards, Mark McTigue, Adam Parr and Donald Susswein (collectively "Indemnified Parties") harmless from and against any and all losses, claims, damages and liabilities (including all legal or other expenses reasonably incurred by the Indemnified Parties in connection with the preparation for or defense of any claim, action or proceeding) to which the Indemnified Parties may be subject under any applicable federal or state law or otherwise, caused by, or in any way connected with or arising out of services rendered hereunder and/or the Evaluation, or any use thereof or reference thereto; provided, however, that LBHI shall not be liable in any case to the extent that any such damages arise out of or are based upon SCS's gross negligence, willful misconduct, criminal conduct, disclosure of confidential information, self-dealing, breach of fiduciary duty (to the extent one exists), or bad faith. Damages in any action brought against SCS by LBHI, due to SCS's SCS's gross negligence, wilful misconduct, criminal conduct, disclosure of confidential information, self-dealing, breach of fiduciary duty (to the extent one exists), or bad faith shall be limited to the fees paid to SCS by LBHI.

10. **Litigation**. Promptly upon SCS receiving actual notice of a claim or the commencement of an action subject to provisions of paragraph 9 above, SCS shall notify LBHI of same in writing. LBHI may assume the defense of such action insofar as LBHI elects, including liability to SCS for legal and other expenses SCS subsequently incurs. LBHI shall also reimburse SCS for the time spent on responding to any such action at 30% of the standard SCS hourly rate as agreed herein. Regardless of whether LBHI assumes the defense thereof, SCS will cooperate with the investigation and defense of such claims or action, it being understood that if LBHI requests any service in connection therewith, such services shall be provided under a separate appointment and engagement under which LBHI shall reimburse SCS at 30% of the standard SCS hourly rate as agreed herein for the services of its employees, agents,

consultants, directors, officers, and principals or any of them, and any out-of-pocket expenses incurred by SCS in providing same. SCS agrees not to settle any litigation without LBHI's consent.

11. **Enforcement**. This agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to the application of New York's conflict of law principles. Without limiting any party's right to appeal any order of the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this agreement and to decide any claims or disputes which may arise or result from, or be connected with, this agreement, any breach or default hereunder, or the transactions contemplated hereby; provided, however, that if the Bankruptcy Court does not have or abstains from exercising such jurisdiction, the parties hereto agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in New York County or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court from any thereof, for the resolution of any such claim or dispute.

Please let me know if you have any questions otherwise please signify your acceptance of the above by signing below and returning a copy to our office. We are pleased to be able to assist you with this evaluation and look forward to working with you.

Kind regards

**Paul Edwards**
Managing Director

For and on behalf of Lehman Brother Holdings Inc.

**Jeff Ciongoli**
Managing Director
Lehman Brother Holdings Inc.

**Exhibit B**

Structured Capital Solutions, LLC
230 Park Avenue, 10th Floor
New York, NY, 10169
United States of America

July 16, 2010

Lehman Brothers Holdings Inc.
~~[Address]~~
Mr Jeffry Ciongoli
Floor 11 Corporate Tax
101 Hudson Street
Jersey City, NJ
07302

Dear Jeff,

As we have recently discussed, I set forth the terms on which Structured Capital Solutions, LLC ("SCS") would provide certain services as described below to Lehman Brothers Holding Inc. ("LBHI"). SCS is prepared to provide these services upon acceptance of the terms outline herein. We understand that LBHI is a debtor in a case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") currently pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

**1. The Evaluation**. LBHI has requested that SCS undertake an evaluation of the Real Estate Mortgage Investment Conduit ("REMIC") portfolio of LBHI and affiliated companies (collectively referred to herein as the "Evaluation"). As part of the Evaluation SCS, and specifically Paul Edwards, will provide LBHI with a Declaration prepared for the Bankruptcy Court, regarding the fairness and reasonableness given current market condition of the $24 million Inducement Fee payable by LBHI for the entire REMIC portfolio (referred to herein as the "Declaration").

Further if and as required Paul Edwards, Adam Parr or Mark McTigue are able to testify in the Bankruptcy Court as to SCS's conclusion regarding the fairness and reasonableness as presented in the Declaration.

**2. Delivery Of The Evaluation**. SCS understands that LBHI has a compressed timeframe for SCS to undertake the Evaluation and we are committed to working towards the delivery of the Evaluation in a manner that is consistent with this compressed timeframe, subject to SCS receiving confirmation of our appointment and any necessary financial and operating documents required to undertake the Evaluation. SCS is aiming to deliver LBHI with the Evaluation by Friday July 23, 2010.

SCS STRUCTURED CAPITAL SOLUTIONS

3. **Fees**. In consideration for undertaking the Evaluation and testifying in the Bankruptcy Court (if applicable), SCS will charge LBHI on an hourly rate basis for work undertaken. SCS will provide LBHI with an invoice of fees charged from time to time or at the conclusion of the Evaluation based on the standard SCS hourly rate for the individuals assigned to undertake the Evaluation and any testimony including (i) a Managing Director at $900 per hour (i.e. Adam Parr, Mark McTigue, Don Susswein, Paul Edwards), and (ii) a Vice President at $700 per hour (i.e. Jonathan Huang) (collectively referred to herein as "Fees"). In the event that the total Fees exceed $100,000 SCS agrees to reconsider the standard SCS hourly rate as detailed herein and will in good faith agree a lower hourly rate with LBHI at that time before any further Fees are incurred. SCS agrees that it will provide LBHI with notice once the total amount of Fees incurred has reached $90,000.

In addition, LBHI agrees to reimburse SCS for reasonable out-of-pocket expenses including fax, phone and courier charges ("Expenses").

Notwithstanding anything contained in this letter to the contrary, we understand and agree that our engagement by LBHI, and our submission of invoices or other forms of payment requests, are subject to compliance with the provisions of the Bankruptcy Code and relevant orders entered by the Bankruptcy Court in the Chapter 11 Case, including but not limited to the Amended Order Pursuant to Section 105(a), 327, 328 and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business, dated March 25, 2010.

Fees for any additional work to be performed by SCS shall be subject to negotiations and a separate engagement agreement between SCS and LBHI.

4. **Information**. LBHI will provide SCS with the information in its possession considered to be relevant to undertaking the Evaluation and all other such information that is reasonably requested by SCS in order to undertake the Evaluation (all information so provided, as it from time to time updated and kept accurate, including any information provided subsequently and including all information required in order for SCS to be capable of undertaking the Evaluation referred to hereinafter as the "Information").

5. **Reliance On Information**. LBHI acknowledges and agrees that SCS shall, and has been directed by LBHI to rely on the Information in undertaking the Evaluation. LBHI agrees that SCS shall be under no duty or obligation to (i) undertake further due diligence on any of the underlying loans contained within the REMIC portfolio or to physically inspect any property or premises, or any other sort of tangible property, or (ii) meet with any borrowers or servicers of the underlying loans contained within the REMIC portfolio or any other individuals other than the immediate business unit of LBHI that is undertaking the sale of the REMIC portfolio.

As part of the Evaluation SCS will assess the Information and inform LBHI to the extent that in SCS's view the Information is inconsistent with current market conditions and practices.

6. **Accuracy Of Information**. LBHI warrants, represents and covenants that to the best of its knowledge any Information provided is accurate and true and SCS can rely on the Information without exposing itself to liability arising from such not being the case.

7. **Use And Reproduction Of The Evaluation**. LBHI agrees that the Evaluation is for its own use and will not, for any other reason, be (i) reproduced without the written consent of SCS and then only in its entirety, and with all revisions, changes, qualifications, attachments, schedules, exhibits and notations thereto, as such exist at the time of the given reproduction and each such report shall bear a legend to that effect, (ii) bound into or incorporated in any manner into a business plan in connection with securing the financing or financial restructuring of any venture, or (iii) shown to any person not part of LBHI's management staff, or Weil Gotshal & Manges LLP as general counsel to LBHI and its affiliated debtors, unless required to be disclosed to the Bankruptcy Court as part of LBHI's Chapter 11 filing. SCS grants permission for LBHI to make copies for internal use.

For the avoidance of doubt this paragraph will only apply to working papers and other supporting documents provided to LBHI as part of the Evaluation and will not relate to the Declaration or any information contained in the Declaration.

8. **Confidentiality**. All information and any and all other documents released by LBHI to SCS, shall be kept confidential by SCS and shall only be used by SCS for purposes of undertaking the Evaluation. With the exception of the Declaration SCS shall keep confidential all correspondence with LBHI including, but not limited to, its final Evaluation submitted to LBHI. Any information discovered and/or generated independently by SCS in undertaking the Evaluation remains the property of SCS so long as the information discovered is not proximately and causally linked to the Evaluation.

9. **Indemnity Obligation**. LBHI, for itself and its successors, agrees to indemnify and forever hold SCS, its partners, employees, agents, consultants, directors, officers, and principals including without limitation Paul Edwards, Mark McTigue, Adam Parr and Donald Susswein (collectively "Indemnified Parties") harmless from and against any and all losses, claims, damages and liabilities (including all legal or other expenses reasonably incurred by the Indemnified Parties in connection with the preparation for or defense of any claim, action or proceeding) to which the Indemnified Parties may be subject under any applicable federal or state law or otherwise, caused by, or in any way connected with or arising out of services rendered hereunder and/or the Evaluation, or any use thereof or reference thereto; provided, however, that LBHI shall not be liable in any case to the extent that any such damages arise out of or are based upon SCS's gross negligence, willful misconduct, criminal conduct, disclosure of confidential information, self-dealing, breach of fiduciary duty (to the extent one exists), or bad faith. Damages in ~~which case any claim against SCS will be limited to a maximum of the Fees charged~~any action brought against SCS by LBHI, due to SCS's SCS's gross negligence, wilful misconduct, criminal conduct, disclosure of confidential information, self dealing, breach of fiduciary duty (to the extent one exists), or bad faith shall be limited to the fees paid to SCS by LBHI.

10. **Litigation**. Promptly upon SCS receiving actual notice of a claim or the commencement of an action subject to provisions of paragraph 9 above, SCS shall notify LBHI of same in writing. LBHI may assume the defense of such action insofar as LBHI elects, including liability to SCS for legal and other expenses SCS subsequently incurs. LBHI shall also reimburse SCS for the time spent on responding to any such action at 30% of the standard SCS hourly rate as agreed herein. Regardless of whether LBHI assumes the defense thereof, SCS will cooperate with the investigation and defense of such claims or action, it being understood that if LBHI requests any service in connection therewith, such services shall be provided under a separate appointment and engagement under which LBHI shall reimburse SCS at 30% of the standard SCS hourly rate as agreed herein for the services of its employees, agents,




consultants, directors, officers, and principals or any of them, and any out-of-pocket expenses incurred by SCS in providing same. SCS agrees not to settle any litigation without LBHI's consent.

11. **Enforcement**. This agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to the application of New York's conflict of law principles. Without limiting any party's right to appeal any order of the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this agreement and to decide any claims or disputes which may arise or result from, or be connected with, this agreement, any breach or default hereunder, or the transactions contemplated hereby; provided, however, that if the Bankruptcy Court does not have or abstains from exercising such jurisdiction, the parties hereto agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in New York County or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court from any thereof, for the resolution of any such claim or dispute.

Please let me know if you have any questions otherwise please signify your acceptance of the above by signing below and returning a copy to our office. We are pleased to be able to assist you with this evaluation and look forward to working with you.

Kind regards

**Paul Edwards**
Managing Director

For and on behalf of Lehman Brother Holdings Inc.

________________________________

**Jeff Ciongoli**
Managing Director
Lehman Brother Holdings Inc.