Presentment Date and Time: August 16, 2010 at 12:00 p.m. (Prevailing Eastern Time)
Objection Deadline: August 16, 2010 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed): August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                                :
In re                                           :   Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,          :   08-13555 (JMP)
                                                :
                              Debtors.           :   (Jointly Administered)
                                                :
                                                :
-------------------------------------------------------------------x
```

**NOTICE OF PRESENTMENT OF APPLICATION OF**
**THE DEBTORS PURSUANT TO SECTION 327(e) OF THE**
**BANKRUPTCY CODE AND RULE 2014(a) OF THE FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION**
**TO EMPLOY AND RETAIN SONNENSCHEIN NATH & ROSENTHAL LLP, AS**
**SPECIAL COUNSEL TO THE DEBTORS, *NUNC PRO TUNC* TO JANUARY 1, 2010**

**PLEASE TAKE NOTICE** that the undersigned will present the annexed

Application (the "Application") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated

debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together,

the "Debtors"), pursuant to section 327(e) of title 11 of the United States Code (the "Bankruptcy

Code"), Rule 2014(a) of Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local

Rules"), to employ Sonnenschein Nath & Rosenthal LLP as special counsel to the Debtors,

effective *nunc pro tunc* to January 1, 2010, all as more fully described in the Application, to the

Honorable James M. Peck, United States Bankruptcy Judge, for approval and signature on **August 16, 2010, at 12:00 p.m. noon (Prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that objections to the Application, if any, shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) Sonnenschein Nath & Rosenthal LLP, 1221 Avenue of the Americas, New York, New York, 10020, Attn: Hugh M. McDonald, Esq., **so as to be so filed and received by no later than August 16, 2010, at 11:30 a.m. (Prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that only if a written objection is timely filed and served, a hearing will be held on **August 18, 2010, at 10:00 a.m. (Prevailing Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, Honorable James M. Peck, United States Bankruptcy Judge, One Bowling Green, New York, New York 10004-1408. If an objection is filed the moving and objecting parties are required to attend the hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: August 4, 2010
      New York, New York

                                    /s/ Richard P. Krasnow
                                    Richard P. Krasnow

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

Presentment Date and Time: August 16, 2010 at 12:00 p.m. (Prevailing Eastern Time)
Objection Deadline: August 16, 2010 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed): August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :    08-13555 (JMP)
                                        :
                      Debtors.          :    (Jointly Administered)
                                        :
-------------------------------------------------------------------x
```

**APPLICATION OF THE DEBTORS PURSUANT**
**TO SECTION 327(e) OF THE BANKRUPTCY CODE**
**AND RULE 2014(a) OF THE FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE FOR AUTHORIZATION TO EMPLOY AND RETAIN**
**SONNENSCHEIN NATH & ROSENTHAL LLP, AS SPECIAL COUNSEL**
**TO THE DEBTORS, *NUNC PRO TUNC* TO JANUARY 1, 2010**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this application (the "Application")

and respectfully represent:

### Background

1.        Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. The Examiner issued a report of his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

5.      On April 14, 2010, the Debtors filed a revised joint chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [Docket Nos. 8330 and 8332].

**Jurisdiction**

6.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

7.     Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

8.     Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

9.     By this Application, the Debtors request authorization, pursuant to section 327(e) of the Bankruptcy Code, Rule 2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), to employ SNR as special counsel to the Debtors, including, but not limited to, LBHI, Lehman Commercial Paper, Inc., LB Rose Ranch LLC and other debtor entities for which SNR may perform legal services from time to time, effective *nunc pro tunc* to January 1, 2010.  Specifically, SNR has been engaged in the representation of the Debtors with respect to various real estate matters, including in part, loan workouts and modifications, loan sales, real estate equity investments, real estate financings, enforcement of remedies under loan documentation, and negotiation of, and advice concerning, management agreements for REO properties (the "Representative Matters").

## SNR as Ordinary Course Professionals

10.     SNR had previously been performing legal services on behalf of the Debtors as a professional utilized in the ordinary course of business ("Ordinary Course

<u>Professional</u>") in these chapter 11 cases pursuant to this Court's Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business, dated November 5, 2008 [Docket No. 1394] (the "<u>OCP Order</u>").  In support of such retention, the Debtors filed the affidavit of Linda D. White with the Court on December 12, 2008 [Docket No. 2202], as supplemented by the supplemental affidavit and disclosure statement of Linda D. White, dated October 9, 2009 [Docket No. 5415].

11.     The OCP Order outlines the procedures that all Ordinary Course Professionals must follow in order receive compensation and reimbursement of expenses for services provided to the Debtors.  With respect to any Ordinary Course Professional seeking compensation in excess of $1 million during the Chapter 11 Period, the OCP Order provides, in pertinent part:

\*     \*     \*

"that payment to any one Ordinary Course Professional shall not exceed $1 million for the period prior to the conversion of, dismissal of, or entry of a confirmation in these chapter 11 cases (the "Chapter 11 Period")…

"that in the event payment to any Ordinary Course Professional exceeds $1 million during the Chapter 11 Period, such Ordinary Course Professional shall be required to file a retention application to be retained as a professional pursuant to sections 327 and 328 of the Bankruptcy Code…"

\*     \*     \*

12.     SNR has determined that it has reached and exceeded the $1 million compensation cap for Ordinary Course Professionals during the Chapter 11 Period (the "<u>OCP Cap</u>") on or about January 1, 2010.  As of January 1, 2010 SNR's total fees and expenses submitted to the Debtors exceeded the OCP Cap.  The Debtors submit that SNR provided

necessary services and that such services are of value to the estate and all parties in interest and as such SNR should be compensated by the Debtors for such services. Accordingly, the Debtors now seek to retain SNR as special counsel in accordance with the OCP Order and pursuant to section 327(e) of the Bankruptcy Code.

**Scope of Services to be Provided**

13. Subject to further order of this Court, it is proposed that SNR be employed to continue to advise the Debtors in connection with the Representative Matters.

14. Furthermore, the Debtors request that SNR's retention be made effective *nunc pro tunc* to January 1, 2010, to ensure that SNR is compensated for all of its services to the Debtors which provided value to the Debtors' estates. Establishing January 1, 2010 as the date of SNR's retention as special counsel in these cases will enable SNR to smoothly transition its billing practices and procedures from its prior retention as an Ordinary Course Professional. The Debtors submit that the circumstances of SNR's initial retention as an Ordinary Course Professional, and the compensation provisions under the OCP Order warrant retroactive approval of SNR as special counsel, particularly because SNR provided necessary services to the Debtors and such services are of value to the estate and all parties in interest. *See, In re Hasset, Ltd.*, 283 B.R. 376, 379 (Bankr. E.D.N.Y. 2002) (approving *nunc pro tunc* retention application and recognizing that "*nunc pro tunc* applications are disfavored in this Circuit but have been permitted when the attorney performs services of 'value' to the estate" (internal citations omitted)); *see also, In re Jarvis*, 53 F.3d 416 (1st Cir. 1995) (finding that a bankruptcy court may grant *post facto* application if employment meets statutory requirements and delay results from extraordinary circumstances); *Matter of Arkansas Co. Inc.*, 798 F.2d. 645 (3d Cir. 1986) (opining that bankruptcy courts have discretion in extraordinary circumstances to retroactively approve a professional's employment). While SNR has continued to provide uninterrupted and valuable

services to the Debtors and their estates, as set forth in the White Declaration, it has several unpaid invoices, totaling approximately $300,841.47, for the period commencing January 1, 2010, because total fees and expenses have exceeded the OCP Cap provided for in the OCP Order. In part, because of uncertainty as to whether a portion of certain fees and expenses were to be satisfied by the Debtors or certain non-Debtor affiliates, SNR has only recently discovered that their fees and expenses have exceeded the OCP Cap. See White Declaration, ¶¶ 26 and 27. The Debtors have inadvertently made payments to SNR of approximately $105,684 in excess of aforesaid cap as a consequence of a system error in which $200,000 paid through the prior accounts payable system in July 2009 was not reflected in the current system.

### Professional Compensation

15. The Debtors propose to pay SNR its customary hourly rates for services rendered that are in effect crom time to time, as set forth in the White Declaration, and to reimburse SNR according to its customary reimbursement policies, in accordance with sections 330 and 331 of the Bankruptcy Code, and respectfully submit that such rates are reasonable.

16. SNR has further informed the Debtors that the current hourly billing rates for SNR professionals expected to spend significant time on the Representative Matters range from $500 to $935 for partners, $265 to $610 for associates, and $140 to $335 for para-professionals.[1]

17. All of SNR's fees and expenses incurred during these chapter 11 cases on or after January 1, 2010, will be subject to approval of the Court upon proper application by SNR in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the guidelines promulgate by the U.S. Trustee, as those procedures may be

---

[1] SNR has informed the Debtors that such hourly rates may change from time to time in accordance with SNR's established billing practices and procedures.

modified or supplemented by order of this Court, including this Court's Third Amended Order

Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a)

Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals [Docket No. 4165] and this Court's Order Appointing Fee Committee and

Approving Fee Protocol dated May 26, 2009 [Docket No. 3651].

## Basis for Relief

18.     The Debtors' knowledge, information, and belief regarding the matters set

forth in this Application are based on and made in reliance upon the Declaration of Linda D.

White, Esq., sworn to on August [ ], 2010 (the "White Declaration"), a copy of which is attached

hereto as Exhibit A.

19.     The retention of SNR under the terms described herein is appropriate

under Bankruptcy Code sections 327(e) and 1107(b).  Section 327(e) provides for the

appointment of special counsel where the proposed counsel does not possess any interest

materially adverse to the debtor with regard to the matter(s) that will be handled by counsel.

Section 327(e) provides:

*     *     *

> "The trustee, with the court's approval, may employ, for a
> specified special purpose, other than to represent the trustee
> in conducting the case, an attorney that has represented the
> debtor, if in the best interest of the estate, and if such
> attorney does not represent or hold any interest adverse to
> the debtor or to the estate with respect to the matter on
> which such attorney is to be employed."

*     *     *

11 U.S.C. § 327(e).  Moreover, section 1107(b) provides that "a person is not disqualified for

employment under section 327 of this title by a debtor in possession solely because of such

person's employment by or representation of the debtor before the commencement of the case."

11 U.S.C. § 1107(b).

20.     Accordingly, section 327(e) of the Bankruptcy Code authorizes the

retention of counsel who previously represented a debtor prepetition provided that:  (a) the

appointment is in the best interest of the debtor's estate; (b) counsel does not hold an interest

adverse to the estate with respect to the matter for which counsel is to be employed; and (c) the

specified special purpose for which counsel is being retained does not rise to the level of

conducting the bankruptcy case for the debtor in possession.  *See In re DeVlieg, Inc.*, 174 B.R.

497 (N.D. Ill. 1994); *In re AroChem Corp.*, 176 F.3d 610, 622 (2d Cir. 1999) (noting that "where

the interest of the special counsel and the interest of the estate are identical *with respect to the*

*matter for which special counsel is retained*, there is no conflict and the representation can

stand") (emphasis in original).  As explained more fully below, the Debtors submit that each of

these factors is satisfied with respect to SNR and, therefore, its retention should be approved

under section 327(e) of the Bankruptcy Code.

### The Employment and Retention of
### SNR is in the Best Interests of the Estates

21.     As described more fully in the White Declaration, SNR and attorneys who

have joined SNR from Thacher Proffitt & Wood LLP have been representing the Debtors and its

affiliates in real estate and real estate finance transactions for over 20 years.  As discussed above,

the Debtors retained SNR with respect to the Representative Matters as of December 12, 2008

pursuant to the procedures set forth in the OCP Order and SNR continues to work on some of

these matters.  As a result, the SNR attorneys who have been engaged to represent Lehman are

intimately familiar with Lehman's real estate business, its form of loan and venture documents

and management agreements, its internal organization and its structuring, documentation and

business preferences.  Several transactions that SNR attorneys have been working on since the Commencement Date involve transactions which they originally closed for Lehman. The Debtors believe that the continued employment of SNR as special counsel for the Debtors will enable the Debtors to avoid the unnecessary expense otherwise attendant to having another law firm familiarize itself with the matters described above.  To remove SNR at this point would be disruptive to the Debtors.  For these reasons, the Debtors submit that the continued employment of SNR is in the best interests of the Debtors, their estates, and their creditors.

### SNR Holds No Interest Adverse to the Debtors or the Debtors' Estates With Respect to the Representative Matters

22.     To the best of the Debtors knowledge, and except as may be set forth in the White Declaration, SNR does not represent or hold any interest adverse to the Debtors or their estates with respect to the matters as to which SNR is to be employed.  As described in paragraph 15 of the White Declaration, SNR is involved in certain matters involving certain creditors and other parties in interest, however, said matters are unrelated to the Representative Matters for which SNR has been retained by the Debtors.  *See In re AroChem*, 176 F.3d at 622 (emphasizing that, under section 327(e) of the Bankruptcy Code, potential conflicts must be evaluated only with respect to the scope of the proposed retention).  The Debtors have been informed that SNR will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise and, if any new relevant facts or relationships are discovered, SNR will supplement its disclosure to the Court.

23.     SNR has informed the Debtors that it is owed approximately $125,645.00 in unpaid fees and expenses from the Debtors for prepetition services rendered by SNR unrelated to these chapter 11 cases.  SNR has not received payment of any of these outstanding amounts.

SNR is, therefore, a prepetition creditor of the Debtors.[2]  However, SNR's status as a prepetition creditor of the Debtors should not be an impediment to its retention by LBHI under section 327(e) of the Bankruptcy Code.  Collier on Bankruptcy, ¶ 327.04[9][d] at 327-63 – 327-64 (15th ed. 2008) ("the disinterested test of section 327(a) does not apply to section 327(e) because the attorney may, in fact, be a creditor of the debtor for fees related to such prepetition representation of the debtor"); *see also* 11 U.S.C. § 1107(b); *In re DeVlieg, Inc.*, 174 B.R. at 503 (holding that proposed attorney due outstanding prepetition fees did not hold interest adverse to the debtor or its estate for the matters for which it was to be retained under the "more relaxed conflict-of-interest standard" of section 327(e)).

24.    Based on the foregoing and the disclosures set forth in the White Declaration, the Debtors submit that SNR does not hold or represent any interest adverse to the Debtors or the Debtors' estates with respect to the matters on which SNR is to be employed.

### **SNR will not Conduct the Debtors' Bankruptcy Case**

25.    By separate applications, the Debtors have sought and obtained the Court's approval to retain and employ Weil, Gotshal & Manges LLP as the Debtors' general bankruptcy counsel [Docket No. 1660], and Curtis, Mallet-Prevost, Colt & Mosle LLP as conflicts counsel [Docket No. 1659].  By contrast, SNR's post-petition work is comprised substantially of the Representative Matters.  None of these matters involve the conduct of the bankruptcy cases themselves.  Additionally, because SNR is not serving as the Debtors' general bankruptcy counsel, the Debtors believe that SNR has not rendered "services . . . in contemplation of or in connection with the case" within the meaning of section 329(a) of the Bankruptcy Code.  Accordingly, the services rendered and functions to be performed by SNR

---

[2]    SNR has informed the Debtors that it is also owed amounts by certain non-debtor affiliates for services rendered to those entities.  SNR anticipates that it will receive payment from those entities for such services.

will not be duplicative of any bankruptcy-related work performed by other law firms retained by the Debtors.  Furthermore, SNR will coordinate with the Debtors' other professionals to ensure that its services are, to the maximum extent possible, complimentary to other professionals' services.

26.    As described above, the Debtors' proposed retention of SNR as special counsel to the Debtors falls squarely within the scope of and purpose for which Congress enacted section 327(e).  As stated above, the Debtors do not believe that SNR holds or represents any interest adverse to the Debtors or their estates with respect to the matters for which SNR is proposed to be retained.  Accordingly, the Debtors submit that the retention of SNR with respect to the Representative Matters is in the best interests of the Debtors, their estates, and their creditors and should be approved by the Court.

**<u>Notice</u>**

27.    The Debtors have served notice of this Application in accordance with the procedures set forth in the amended order entered on February 13, 2009 [Docket No. 2837] governing case management and administrative procedures for these cases Docket No. 2851 on: (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) Sonnenschein Nath & Rosenthal LLP, 1221 Avenue of the Americas, New York, New York, 10020, Attn:  Hugh M. McDonald, Esq.; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

28.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: New York, New York
August 4, 2010

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# **Exhibit A**

## **White Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
: 
In re:                              :     Chapter 11 Case
                                       :     No. 08-13555 (JMP)

LEHMAN BROTHERS HOLDINGS INC., *et al*,   :
                                       :     (Jointly Administered)
: 
: 
               Debtors.          :

-------------------------------------------------------------x

## DECLARATION OF LINDA D. WHITE
## IN SUPPORT OF THE APPLICATION OF THE DEBTORS
## FOR AUTHORIZATION TO EMPLOY AND RETAIN
## SONNENSCHEIN NATH & ROSENTHAL LLP
## AS SPECIAL COUNSEL TO THE DEBTORS

Linda D. White hereby declares as follows:

1.      I am a member of the Bar of the State of Illinois and the firm of Sonnenschein Nath & Rosenthal LLP ("SNR" or the "Firm").

2.      I submit this Declaration (the "Declaration") pursuant to section 327(e) of the Bankruptcy Code, rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and 28 U.S.C. § 1746, and in support of the application, dated August 4, 2010 (the "Application"),[1] filed by Lehman Brothers Holdings Inc., Debtors-in-Possession ("LBHI") and its affiliated debtors in the above-referenced jointly administered chapter 11 cases (together, the "Debtors") seeking authorization to employ SNR as special counsel to the Debtors with respect to the Representative Matters *nunc pro tunc* to January 1, 2010, as described in greater detail below and in the Application, and to provide the disclosures required under Bankruptcy Rules 2014(a) and 2016(b). All facts set forth below in this Declaration are based

---

[1] Any capitalized term not defined herein shall have the meaning given to it in the Application.

upon information from, and discussions I or other SNR personnel reporting to me have had with certain of my colleagues and an attorney at SNR responsible for conflicts matters. The facts below are also based on a review performed by the persons within SNR responsible for maintaining records of our representations, with the assistance of attorneys at SNR, of the list of major creditors involved with these proceedings that was provided to SNR by Weil, Gotshal & Manges LLP ("WGM"), the Debtors' general bankruptcy counsel, on January 14, 2010 the "Master Conflicts Checklist"), setting forth certain of the creditors and other parties in interest (collectively, the "Interested Parties") of the Debtors in the above-referenced chapter 11 cases. Based on the foregoing, if I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of SNR.

**Services Performed by SNR**

3.      The Debtors seek to retain SNR as special counsel to the Debtors pursuant to section 327(e) of the Bankruptcy Code, *nunc pro tunc* to January 1, 2010, to perform legal services in connection with the Representative Matters set forth below and in the Application. SNR and attorneys who have joined SNR from Thacher Proffitt & Wood LLP have been representing the Debtors and their affiliates in real estate, real estate finance and other related transactions for over 20 years including with respect to loan workouts and modifications, loan sales, real estate equity investments, real estate financings, reinforcements of remedies under loan documentation, and negotiation of, and advice concerning, management agreements for REO properties and bankruptcies. Additionally, SNR continues to represent the Debtors in some of the same matters that we were working on as Ordinary Course Professionals pursuant to the OCP Order dated November 5, 2008 [Docket No. 1394]. As a result, we are intimately familiar with Lehman's real estate business, its form of loan and joint venture documents and management agreements, its internal organization and its structuring, documentation and

2

business preferences. We have particular expertise in (i) all aspects of real estate joint ventures (both preferred and pari passu equity) and the exercise by Debtor of its rights and remedies, including removing the managing member and exercising the buy-sell, (ii) structuring and documenting tiered capital debt and equity investments, (iii) the workout and restructuring of troubled mortgage loans, mezzanine loans and lines of credit, (iv) the enforcement of Lender's rights in all types of loans, including deed in lieu and foreclosure proceedings, (v) litigating the rights of lenders and joint venture partners in all types of real estate-related disputes, (vi) providing analysis for complex development deals including zoning, land use, environmental and title matters and (vii) negotiating hotel management agreements and other property management agreements. Several of the transactions we have been working on since the Commencement Date involve transactions that we originally closed for Lehman. Assigning new counsel at this time, we believe, would be inefficient. On certain of the transactions on which we are currently assisting the Debtors, attorneys at SNR have been working on various aspects of these complex transactions for several years. If a new firm were to be asked to handle this matter, there would be a steep learning curve and the involvement of SNR would still be required in the education process. All of this would lead to substantial additional cost to the Debtors, their creditors and their estates.

4. For these reasons, appointment of SNR as Special Counsel will inure to the benefit of the Debtors both in terms of our particular expertise as well as in cost savings to the Debtor.

5. Following the Commencement Date, at the Debtors' request, SNR assisted the Debtors in connection with the Representative Matters as one of the Debtors' Ordinary Course Professionals.

6.    In connection with certain of the Representative Matters, SNR has represented, or will be representing, the following non-debtor affiliates of the Debtors, in addition to other non-debtor entities that the Debtors may request services for from time to time: LB Whispering Oaks, LLC; LB Regency Park, LLC; LB Pointe, LLC; LB Shadow Valley, LLC; LB RHW, LLC; LB Carlyle, LLC; LB SVF, LLC; LB Seth, LLC; LB ECS, LLC; LB Manassas, LLC; LB Midtown Memphis JV; LB 816 Congress, LLC; LB Coconut Beach, LLC; CJC Investments, Inc.; LB Centre Point, LLC; LB Mission Valley, LLC; PAMI Public/Private I, Inc.; PAMI Public/Private II, Inc.; PAMI Public/Private III, Inc.; LB West Side Studios, LLC; PAMI, LLC; Property Asset Management, Inc.; SD Mark Holdings, LLC; LB Farmington Hills LLC; LB Alpha Tech North LLC; LB Northville LLC; LB New Van Buren LLC; LB Vendy Wick LLC; LB Bloomfield LLC; LB Milford West LLC; LB Shelby Industrial Investors-II, LLC; LB Shelby Industrial Investors-III, LLC; LB Shelby Industrial Investors IV, LLC; LB Farmington Hills II, LLC; LB Farmington Hills V, LLC; LB Alpha Tech, Inc.; LB Van Buren, Inc.; PAMI Michigan Mezzanine II, LLC; LB SMC/Livonia, Inc.; LB Maple Stephenson, LLC; LB 900 Tower Drive, LLC; LB Business Park, LLC; LB Stoneridge, LLC; LB Rancho Mirage, LLC; LB NYLO, LLC; LB Whiteface Lodge, LLC; PAMI Autumn, LLC; Lehman Brothers Commerical Bank; VR SVF Holdings Limited Partnership; CO 112 Overlook Drive, LLC; Archstone; TX 77 Boot Ranch Circle, LLC; WL Placid Mezz Holdings LLC; LB Warwick LLC; LB NYLO LLC; LB Plano LLC; LB Las Colinas LLC; NV 4250 Koval Lane LLC and MN 2200 Freeway Boulevard LLC.  SNR will be paid by the foregoing non-debtor affiliates for services provided on their behalf in connection with certain of the Representative Matters.

7.    WGM represents the Debtors in connection with the financial restructuring of the Debtors and bankruptcy-specific issues.  Because SNR is not serving as the Debtors bankruptcy counsel, it is my view that SNR has not rendered "services. . . in

4

contemplation of, or in connection with the case" within the meaning of section 329(a) of the Bankruptcy Code. SNR's post-petition work has heretofore been and hereafter will be comprised of continuing to represent the Debtors solely in connection with the Representative Matters. None of such matters involves the conduct of the bankruptcy cases themselves. Accordingly, the services rendered and functions to be performed by SNR will not be duplicative of any bankruptcy-related work performed by WGM or any of the other law firms retained by the Debtors. As a result of the foregoing, I believe that SNR is qualified to represent the Debtors as special counsel pursuant to section 327(e) of the Bankruptcy Code.

### "Connections" of SNR

8.     To check and clear potential conflicts of interest in these cases, as well as to determine all "connections"[2] to the Debtors and their creditors, SNR researched its client database for the past two (2) years to determine whether it had any relationships with the Interested Parties. To the extent that SNR's research of its relationships with the Interested Parties indicates that SNR has represented in the past two years, or currently represents, any of these entities, the identities of these entities and such entities' relationship to the Debtors and connection to SNR are set forth below and in Schedule 1 hereto.

9.     To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I, nor SNR, nor any partner or associate thereof, has any connection with the Debtors, their creditors, the U.S. Trustee or any other parties with an

---

[2] To the best of my knowledge, neither the term "connection" as used in Bankruptcy Rule 2014 nor the proper scope of a professional's search for "connections" has been completely defined, and I am therefore required to exercise some degree of professional judgment in applying that term to the facts of which I am aware, as well as in defining the scope of how to search for such facts. Out of an abundance of caution, I may be disclosing items that are not, in my judgment, disqualifying or problematic under either the Bankruptcy Code or applicable standards of professional ethics.

actual or potential interest in these chapter 11 cases or their respective attorneys or accountants, except as set forth below.

10. Further, to the best of my knowledge, SNR does not represent or hold any interest adverse to the Debtors or the Debtors' estates with respect to the Representative Matters.

11. The Debtors are a large global enterprise with thousands of parties in interest. SNR (a) may from time to time have represented, (b) may currently represent, and (c) may in the future represent many entities that are parties in interest in these cases in matters unrelated to the Representative Matters.

12. I understand that the Debtors will retain various professionals during the pendency of these cases to aid in the prosecution of the Debtors chapter 11 cases. I have been advised that the Debtors have retained, among others, the following professionals: WGM, as general bankruptcy counsel, Curtis, Mallet-Prevost, Colt & Mosle LLP, as conflicts counsel, and Alvarez & Marsal North America, LLC, as restructuring advisor. Over the past years, attorneys at SNR have worked with certain of these professionals on various matters, representing either the same parties, parties with similar interests or parties with adverse interests.

13. In addition, during the course of the Debtors' chapter 11 cases, the Debtors may retain additional or different professionals, not all of which are or can currently be identified. Further, the Master Conflicts Checklist does not disclose the identities of all of the various professionals that have been retained, or are being considered for retention by the various parties in interest. Therefore, we are unable to determine if SNR has a client or other relationship with such as yet unidentified advisors or their affiliates. However, we believe it likely that many of the professionals who may appear in these cases are trustees, witnesses, advisors or counsel, as the case may be, in transactions or cases in which SNR also represents a client. SNR may retain various such professionals or affiliates thereof to provide forensic,

6

litigation support and financial advisory services to SNR or SNR's clients in a variety of past, present or future engagements. Current employees at SNR may be former employees of, or related to employees of, one or more of the other professionals in this case. In addition, attorneys at SNR belong to professional organizations to which other professionals who may appear in these cases may also belong.

14. SNR currently represents several clients that, according to the Debtors' Master Conflicts Checklist, have connections to the Debtors (the "Connected Entities"). SNR does not, however, to the best of my knowledge, represent the Connected Entities in matters related to the Representative Matters. A schedule of Interested Parties that currently employ or have formerly employed SNR in matters unrelated to the Representative Matters, is annexed hereto as Schedule 1. SNR expects to continue to represent the Connected Entities set forth in Schedule 1 in their current matters within the limits of section 327(e) of the Bankruptcy Code.

15. In addition, I note the following matters that involve the Debtors:

(i)    SNR represents Landesbank Hessen-Thüringen Girozentrale ("Helaba") for itself and as administrative agent in connection with a construction loan made to a non-debtor entity of which LBHI indirectly owns approximately 95%. The subject loan is guaranteed by LBHI and Helaba may have claims against LBHI on account of such guarantees.

(ii)   SNR represents Dr. Michael C. Frege, Insolvency Administrator for Lehman Brothers Bankhaus AG ("LBB") in LBB's Chapter 15 proceeding pending in the United States Bankruptcy Court for the Southern District of New York, under docket No. 09-12704(JMP) and in matters related to the Debtors' bankruptcy cases.

(iii)  SNR represents The Union Labor Life Insurance Company as mortgage lender in connection with a pending foreclosure on a certain mortgage loan. LBHI is an equity partner of the borrower and non-debtor affiliate LB Real Estate Mezzanine Partners is the mezzanine lender in the project.

(iv)   SNR represents parties in connection with mortgage loans on which certain non-debtor special purpose entities affiliated with LBHI are obligors or guarantors.

7

(v)     SNR represents other lenders in connection with loans where LBHI is a member of the lender group but SNR does not represent LBHI as a lender in such group.

16.     In order to ensure that all client confidences are protected, SNR has set up and maintains a screening wall between those attorneys, such as myself, who represent the Debtors, and those attorneys who will represent certain non-Debtor parties in interest in matters disclosed in this Declaration. SNR has established procedures to ensure that the attorneys working for the Debtors will not disclose to any non-Debtor client any information concerning the Debtors that has been identified to the Firm as confidential or proprietary or that SNR should reasonably believe to be confidential or proprietary. In addition, SNR has implemented procedures to ensure that no information concerning the Debtors will be used without the Debtors' prior written consent. Lastly, SNR has implemented procedures to ensure that all files (both physical and electronic) are kept separate. Notice of these screening procedures has been sent to all of SNR's attorneys.

17.     SNR also may represent from time to time other clients that are co-defendants with one or more of the Debtors, but I do not believe that there is any adversity between such co-defendants and the Debtors.

18.     In addition, SNR may have represented, may currently represent, or may in the future represent, a borrower, issuer of securities, financial advisor, underwriter of securities, banks in multibank transactions in which the Debtor is a lending bank or other client financing transactions, merger and acquisition transactions, litigation or arbitration matters, bankruptcy matters or other matters unrelated to Representative Matters in which one or more parties in interest (or an affiliate) or a professional involved in these cases, including, but not limited to those listed on the Master Conflicts Checklist, happens to be involved.

19.     SNR may also represent, in matters unrelated to the Representative Matters, competitors of the Debtors.

20.     I do not understand Bankruptcy Rule 2014(a) or other applicable law to require disclosure of each present or future engagement SNR receives from a party in interest as long as it is unrelated to matters we are working on for Lehman in these cases.  SNR intends to accept engagements from other parties in interest (whether existing or new clients).  These engagements may include matters similar to those described in paragraph 18 hereof.  As described above, SNR has undertaken a detailed search to determine whether it represents, or has represented in the last two (2) years, any of the Interested Parties listed on the Master Conflicts Checklist, and the identities of such entities and such entities' relationship to the Debtors and connection to SNR is set forth herein.  SNR, however, does not and will not represent any of the Interested Parties with respect to the matters for which SNR is being retained hereunder.

21.     Despite the efforts described above to identify and disclose connections with parties in interest in these cases, because the Debtors are a large enterprise with many creditors and other relationships, SNR is unable to state with certainty that every client connection of SNR has been disclosed.  In this regard, if SNR discovers additional information that requires disclosure, SNR will file supplemental disclosures with the Court.

**Securities Ownership**

22.     Certain individual attorneys at SNR may own, or have beneficial interests in trusts owning, shares in the Debtors and securities of related entities and may own shares in other parties in interest.

23.     SNR notes, however, that a large number of the Debtors' debt and equity securities are held by various mutual funds, trusts and portfolios and accounts that are managed by various advisors.  SNR does not know the ultimate beneficial owners of the funds, although it

is believed they are widely held. Similarly, many of the Debtors' securities are registered in the name of Depositary Trust Company or its nominee, and securities entitlements to such securities are held through securities accounts maintained by brokers, investment advisors and other securities intermediaries. The ultimate owners of the securities entitlements are unknown to SNR, except for those reported on the Master Conflicts Checklist. It is possible that some of such holders may be clients of SNR.

**Various Commercial Relationships with Parties in Interest**

24.     Some attorneys at or employees of SNR may receive services from the Debtors, other parties in interest or professionals involved in these cases. Attorneys at or other employees at SNR or their spouses or relatives may have beneficial ownership of securities issued by, or banking, insurance, brokerage or money management relationships with, other parties in interest. Attorneys at SNR may have relatives or spouses who are members of professional firms involved in these cases or employed by parties in interest. We have conducted no investigation of our colleagues' banking, insurance, brokerage or investment activities or familial connections in preparing this Declaration.

**Amounts Owed to SNR as of Commencement Date**

25.     As of the Commencement Date, SNR is owed approximately $125,645.00 in unpaid fees and expenses incurred by the Debtors for prepetition services rendered by SNR unrelated to this chapter 11 cases. SNR has not received payment of any of these outstanding amounts. SNR is therefore a prepetition creditor of the Debtors.[3]  However, SNR's status as a prepetition creditor of the Debtors should not be an impediment to its retention by the Debtors under section 327(e) of the Bankruptcy Code. Additionally, because SNR is not serving as

---

[3]  SNR is also owed amounts by certain non-debtor affiliates of the Debtor for services rendered to those entities. SNR anticipates that it will receive payment from those entities for such services.

Debtors' bankruptcy counsel, SNR does not believe that it has rendered "services...in contemplation of, or in connection with the case" within the meaning of section 329(a) of the Bankruptcy Code.

## Fees and Engagement

26.     Pursuant to Bankruptcy Code section 329(a), SNR discloses that since the Commencement Date, SNR received as payment from the Debtors for services rendered and disbursements incurred a total of approximately $1,105,684. The Debtors have inadvertently made payments to SNR in excess of the OCP Cap as a consequence of a system error in which $200,000 paid through the prior accounts payable system in July 2009 was not reflected in the current system. Additionally, because of uncertainty as to whether a portion of certain fees and expenses were to be satisfied by the Debtors or certain non-Debtor affiliates, SNR has only recently discovered that their fees and expenses have exceeded the OCP Cap.

27.     SNR requests that this Application be effective *nunc pro tunc* to January 1, 2010 because there are several unpaid invoices that SNR submitted to the Debtors for services rendered and distributions beginning on or about January 1, 2010. The unpaid invoices total approximately $296,966.47. In addition, there are two small unpaid invoices from August and September 2009, totaling approximately $3,875. In total, SNR has unpaid invoices for services rendered totaling approximately $300,841.47. Further, SNR has unsubmitted bills for the month of June 2010, indicating that we have unbilled time totaling approximately $97,707.86. SNR will submit bills for our June time upon our retention as special counsel to the Debtors.

28.     Upon its retention as special counsel, SNR intends to apply for compensation for professional services rendered in connection with these chapter 11 cases subject to approval of the Bankruptcy Court and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of

11

New York (the "Local Rules") and guidelines promulgated by the U.S. Trustee, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by SNR.

29.     Upon its retention as special counsel, SNR will resubmit its unpaid invoices totaling approximately $300,841.47 in accordance with the format, holdback, manner and procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the Local Rules and orders of the Court, guidelines established by the U.S. Trustee, and such other procedures that have been or may be fixed by order of this Court, including but not limited to this Court's Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, dated June 25, 2009 [Docket No. 4165] and this Court's Order Appointing a Fee Committee and Approving a Fee Protocol, dated May 26, 2009 [Docket No. 3651].

30.     SNR's hourly rates and billing policies are based on market conditions among certain firms of a size, location and practice comparable to SNR.  The current hourly billing rates for SNR professionals expected to spend significant time on the Representative Matters range from $500 to $935 for partners, $265 to $610 for associates, and $140 to $335 for para-professionals.[4]

31.     The hourly rates set forth above are SNR's standard hourly rates for work of this nature.  These rates are set at a level designed to fairly compensate SNR for the work of its attorneys and par-professionals and to cover fixed and routine overhead expenses.  It is SNR's policy to charge its clients in all areas of practice for all identifiable non-overhead expenses incurred in connection with the client's case that would not have been incurred except for

---

[4] Such hourly rates may change from time to time in accordance with SNR's established billing practices and procedures.

representation of that particular client.  It is also SNR's policy to charge its clients only the amount actually incurred by SNR in connection with such items.  SNR has advised the Debtors that, in connection with the reimbursement of reasonable and necessary expenses, SNR bills for certain actual out of pocket expenses it incurs, such as travel costs, filing fees, outside messengers, document reproduction, conference calls using third party providers, database research such as LEXIS or Westlaw and certain other actual expenses incurred specifically on behalf of a particular client and for which SNR is billed by an outside vendor.  SNR does not charge for a number of court-authorized expenditures including, but not limited to, facsimile transmissions and word processing services.  SNR will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to SNR's other clients.  SNR believes that it is more fair to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

       32.    SNR maintains contemporaneous records of the time expended and out-of-pocket expenses incurred in connection with providing services to its clients in accordance with the fee guidelines for this district.

       33.    SNR recognizes that it will be required to submit applications for interim and/or final allowances of compensation pursuant to sections 330 and 331 of the Bankruptcy Code and the rules and orders of the Court.  SNR has reviewed the fee application guidelines promulgated by the U.S. Trustee and will comply with them.

       34.    To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I nor SNR, nor any partner or associate thereof, has received or been promised any compensation for legal services rendered or to be rendered in any capacity in connection with the Debtors' chapter 11 cases, other than as permitted by the Bankruptcy Code.  SNR has not agreed to share compensation received in connection with these

13

34.     To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I nor SNR, nor any partner or associate thereof, has received or been promised any compensation for legal services rendered or to be rendered in any capacity in connection with the Debtors' chapter 11 cases, other than as permitted by the Bankruptcy Code.  SNR has not agreed to share compensation received in connection with these cases with any other person, except as permitted by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016(b) in respect of the sharing of compensation among SNR's partners.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  August 3, 2010

*Linda D. White*

Linda D. White

SONNENSCHEIN NATH & ROSENTHAL LLP
233 S. Wacker Drive, Suite 7800
Chicago, IL 60606-6404
Telephone:  (312) 876-8950
Facsimile:  (312) 876-7934

Proposed Special Counsel for Debtors
and Debtors-in-Possession

14

Presentment Date and Time: August [ ], 2010 at 12:00 p.m. (Prevailing Eastern Time)
Objection Deadline: August [ ], 2010 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed): August 18, 2010 at 10:00 a.m. (Prevailing Eastern Time)

# SCHEDULE 1

## SCHEDULE 1

### SCHEDULE OF INTERESTED PARTIES THAT CURRENTLY EMPLOY OR HAVE FORMERLY EMPLOYED SONNENSCHEIN NATH & ROSENTHAL LLP IN MATTERS UNRELATED TO THE DEBTOR

| Searched Entity | Relationship to Lehman Bankruptcy | Current Status |
|---|---|---|
| Aegon USA Investment Management | Major Creditor | Existing client on unrelated matters |
| JPMorgan Chase | Major Creditor | Existing client on unrelated matters |
| MetLife | Major Creditor | Existing client on unrelated matters |
| Mizuho Corporate Bank, Ltd. | Major Creditor | Existing client on unrelated matters |
| PAMI Statler Arms LLC | Debtor Affiliate of Debtor | Existing client on unrelated matters |
| Royal Bank of Scotland PLC | Major Creditor | Existing client on unrelated matters |
| SMBC | Major Creditor | Existing client on unrelated matters |
| State Street | Major Creditor | Existing client on unrelated matters |
| The Bank of NY Mellon | Major Creditor | Existing client on unrelated matters |
| The Royal Bank of Scotland, PLC | Major Creditor | Existing client on unrelated matters |
| Wilmington Trust Company | Major Creditor | Existing client on unrelated matters |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------------------x
                                          :
In re                                     :   Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :   08-13555 (JMP)
                                          :
                    Debtors.              :   (Jointly Administered)
                                          :
                                          :
--------------------------------------------------------------------x
```

**ORDER PURSUANT TO SECTION 327(e) OF THE**
**BANKRUPTCY CODE AND RULE 2014(a) OF THE FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION**
**TO EMPLOY AND RETAIN SONNENSCHEIN NATH & ROSENTHAL LLP, AS**
**SPECIAL COUNSEL TO THE DEBTORS, *NUNC PRO TUNC* TO JANUARY 1, 2010**

Upon consideration of the application, dated August 4, 2010 (the "<u>Application</u>"),[1]

of Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), pursuant to

section 327(e) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 2014(a) of

the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for authorization to employ

and retain Sonnenschein Nath & Rosenthal LLP ("<u>SNR</u>") as special counsel to the Debtors *nunc*

*pro tunc* to January 1, 2010; and upon the Declaration of Linda D. White, Esq., partner of SNR

(the "<u>White Declaration</u>"), filed in support of the Application; and the Court being satisfied,

based on the representations made in the Application and the White Declaration, that SNR

represents no interest adverse to the Debtors or the Debtors' estates with respect to the matters

upon which it is to be engaged, under section 327(e) of the Bankruptcy Code as modified by

---

[1] Capitalized terms that are used but not defined in this order have the meanings ascribed to them in the
Application.

section 1107(b); and the Court having jurisdiction to consider the Application and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61

Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); a and consideration of the Application

and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Application having been provided in accordance with the procedures set

forth in the amended order entered February 13, 2009 governing case management and

administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern

District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; and (vi) all parties who have requested

notice in these chapter 11 cases, and it appearing that no other or further notice need be provided;

and the Court having found and determined that the relief sought in the Application is in the best

interests of the Debtors, their estates and creditors, and all parties in interest and that the legal

and factual bases set forth in the Application establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is approved; and it is further

ORDERED that pursuant to section 327(e) of the Bankruptcy Code, the Debtors

are hereby authorized to employ and retain SNR as special counsel to the Debtors on the terms

set forth in the Application and this order, effective *nunc pro tunc* to January 1, 2010, for the

Representative Matters identified in the Application and in accordance with SNR's customary

rates in effect from time to time and its disbursement policies; and it is further

ORDERED that SNR shall, solely with respect to fees and expenses to be paid to SNR by the Debtors (as opposed to non-debtor entities) in excess of $1 million, apply for compensation and reimbursement of expenses in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the Local Rules and orders of the Court, guidelines established by the U.S. Trustee, and such other procedures that have been or may be fixed by order of this Court, including but not limited to the Court's Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Docket No. 4165], and the Court's Order Appointing a Fee Committee and Approving a Fee Protocol [Docket No. 3651].

Dated:  August ___, 2010
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE