Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 08-13555(JMP)

5  - - - - - - - - - - - - - - - - - - - - -x

6

7  In the Matter of:

8

9  LEHMAN BROTHERS HOLDINGS INC., et al.

10

11            Debtors.

12

13  - - - - - - - - - - - - - - - - - - - - -x

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            August 4, 2010

19            10:03 AM

20

21  B E F O R E:

22  HON. JAMES M. PECK

23  U.S. BANKRUPTCY JUDGE

24

25

1

2   HEARING re Debtors' Seventeenth Omnibus Objection to Claims

3   (Settled Derivative Claims)

4

5   HEARING re Debtors' Eighteenth Omnibus Objection to Claims

6   (Duplicative of Indenture Trustee Claims)

7

8   HEARING re Debtors' Nineteenth Omnibus Objection to Claims

9   (Duplicative of Indenture Trustee Claims)

10

11   HEARING re Debtors' Twentieth Omnibus Objection to Claims

12   (Duplicative of Indenture Trustee Claims)

13

14   HEARING re Debtors' Twenty-First Omnibus Objection to Claims

15   (Duplicative of Indenture Trustee Claims)

16

17   HEARING re Debtors' Twenty-Second Omnibus Objection to Claims

18   (Duplicative of Indenture Trustee Claims)

19

20   HEARING re Debtors' Twenty-Third Omnibus Objection to Claims

21   (Duplicative of Indenture Trustee Claims)

22

23   HEARING re Debtors' Twenty-Fourth Omnibus Objection to Claims

24   (Duplicative of Indenture Trustee Claims)

25

Page 3

1

2    HEARING re Debtors' Twenty-Fifth Omnibus Objection to Claims

3    (Duplicative of Indenture Trustee Claims)

4

5    HEARING re Debtors' Twenty-Sixth Omnibus Objection to Claims

6    (Duplicative of Indenture Trustee Claims)

7

8    HEARING re Debtors' Twenty-Seventh Omnibus Objection to Claims

9    (Duplicative of Indenture Trustee Claims)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

Page 4

1

2   A P P E A R A N C E S :

3   WEIL, GOTSHAL & MANGES LLP

4           Attorneys for Debtors and Debtors-in-Possession

5           767 Fifth Avenue

6           New York, NY 10153

7

8   BY:   HARVEY R. MILLER, ESQ.

9           GARRET A. FAIL, ESQ.

10          ERIN D. ECKOLS, ESQ.

11

12  MCKENNA LONG & ALDRIDGE LLP

13          Special Counsel for Debtors

14          230 Park Avenue

15          Suite 1700

16          New York, NY 10169

17

18  BY:   CHRISTOPHER F. GRAHAM, ESQ.

19

20

21

22

23

24

25

Page 5

1

2     MCKENNA LONG & ALDRIDGE LLP

3          Special Counsel for Debtors

4          303 Peachtree Street, NE

5          Suite 5300

6          Atlanta, GA 30308

7

8     BY:   ALISON ELKO, ESQ.

9          (TELEPHONICALLY)

10

11    MILBANK, TWEED, HADLEY & MCCLOY LLP

12         Attorneys for the Official Committee of Unsecured

13          Creditors

14         One Chase Manhattan Plaza

15         New York, NY 10005

16

17    BY:   DENNIS C. O'DONNELL, ESQ.

18         ANDREA CONIS, ESQ.

19

20    BINGHAM MCCUTCHEN LLP

21         Attorneys for

22         399 Park Avenue

23         New York, NY 10022

24

25    BY:   STEFANIE J. GREER, OF COUNSEL

Page 6

```
 1
 2    BINGHAM MCCUTCHEN LLP
 3         Attorneys for
 4         2020 K Street, NW
 5         Washington, DC 20006
 6
 7    BY:   SHERI DILLON, ESQ.
 8
 9    CADWALADER, WICKERSHAM & TAFT LLP
10         Attorneys for Banc of America & Securities, LLC
11         One World Financial Center
12         New York, NY 10281
13
14    BY:   JONATHAN D. CANFIELD, ESQ.
15
16    COVINGTON & BURLING LLP
17         Attorneys for Wilmington Trust Company
18         The New York Times Building
19         620 Eighth Avenue
20         New York, NY 10018
21
22    BY:   SUSAN POWER JOHNSTON, ESQ.
23         MARTIN BEELER, ESQ.
24
25
```

Page 7

1

2    FEINBERG ROZEN LLP

3         Attorneys for the Fee Committee

4         780 Third Avenue

5         26th Floor

6         New York, NY 10017

7

8    BY:   KENNETH R. FEINBERG, ESQ.

9         MARY P. FOX, ESQ.

10

11   SHEPPARD MULLIN RICHTER & HAMPTON LLP

12        Attorneys for The Bank of New York Mellon

13        30 Rockefeller Plaza

14        24th Floor

15        New York, NY 10112

16

17   BY:   RUSSELL L. REID, JR., ESQ.

18

19

20

21

22

23

24

25

Page 8

1

2    CHAPMAN & CUTLER LLP

3         Attorneys for US Bank

4         111 West Monroe Street

5         Chicago, IL 60603

6

7    BY:   JEREMY D. SCHREIBER, ESQ.

8         (TELEPHONICALLY)

9

10   CLEARY GOTTLIEB STEEN & HAMILTON LLP

11        Attorneys for Goldman Sachs Bank, USA and Goldman Sachs

12         International

13        2000 Pennsylvania Avenue, NW

14        Washington, DC 20006

15

16   BY:   BENJAMIN MEEKS, ESQ.

17        (TELEPHONICALLY)

18

19

20

21

22

23

24

25

Page 9

1

2    REILLY POZNER LLP

3         Special Counsel to Debtors

4         The Kittredge Building

5         511 Sixteenth Street

6         Suite 700

7         Denver, CO 80202

8

9    BY:    MICHAEL A. ROLLIN, ESQ.

10         (TELEPHONICALLY)

11

12    STUTMAN TREISTER & GLATT

13         Attorneys for Perry Capital

14         1901 Avenue of the Stars

15         12th Floor

16         Los Angeles, CA 90067

17

18    BY:    MARINA FINEMAN, ESQ.

19         (TELEPHONICALLY)

20

21

22

23

24

25

Page 10

1

2    ALSO APPEARING:

3

4    RONALD P. ZEMENAK

5          5051 Vermillion Lane

6          Castle Rock, CO 80108

7

8    BY:   RONALD P. ZEMENAK, PRO SE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

LEHMAN BROTHERS HOLDINGS INC., et al.

1                    P R O C E E D I N G S

2          THE COURT:  Let's proceed.

3          MS. ECKOLS:  Good morning, Your Honor.  Erin Eckols

4   with Weil Gotshal for the debtors.  I will be covering the

5   agenda items 1 through 11 today.  That is debtors' seventeenth

6   through twenty-seventh omnibus objection to claims.  I did want

7   to notify the Court of a couple of changes to the agenda since

8   it was filed.  State Street Trust and Banking Company has

9   withdrawn its objection to the eighteenth, nineteenth and

10  twenty-seventh omnibus objections.  So those items are agenda

11  items 2(b), 3(b) and 11(b) that we won't be taking up today

12  'cause they've been resolved.

13         THE COURT:  Is that simply a withdrawal and an

14  acceptance of the form of order proposed by the debtor or is

15  there some agreement with respect to language for the order to

16  satisfy the objection?

17         MS. ECKOLS:  No, sir.  They filed a notice -- they

18  sent us a notice of withdrawal, a formal one, for us to submit

19  to the Court.  This --

20         THE COURT:  Is there any understanding with respect to

21  the language of the order --

22         MS. ECKOLS:  No.

23         THE COURT:  -- as it relates to the objection?

24         MS. ECKOLS:  No, sir.

25         THE COURT:  Okay.

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 12 of 59

Page 12

 1           MS. ECKOLS:  They requested no changes.

 2           I'm going to start with a general discussion of the

 3     omnibus objections on the agenda today and then proceed with

 4     the specific discussion regarding some issues related thereto.

 5     As I mentioned, we are covering debtors' seventeenth through

 6     twenty-seventh omnibus objections today.  On May 28th, debtors

 7     filed the seventeenth omnibus objection on settled derivative

 8     claims.  There were eighty-five claims on this objection and it

 9     requested the reduction and an allowance of those claims

10     because the parties had already reached an agreement regarding

11     the amount.  And so -- of those claims.  And so the objection

12     was to conform the proofs of claim and the claim amounts to

13     what was in those agreements.

14           There were a few formal inquiries but there were no

15     objections so we are proceeding on an uncontested basis today

16     with respect to the seventeenth omnibus objection.

17           On June 17th, the debtors filed omnibus objections 18

18     through 27.  These are the omnibus objections that we refer to

19     as duplicative of indenture trustee claims.  There were

20     6,620 -- excuse me -- 3,620 total claims on these objections.

21     And these omnibus objections are seeking to expunge claims

22     filed by individual holders of securities that are in substance

23     duplicative of the global claims filed by the applicable

24     indenture trustee, as Wilmington Trust or Bank of New York

25     Mellon, on behalf of the holders of those same securities.  In

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 13 of 59

Page 13

1   other words, the indenture trustee and the individual claimants

2   are seeking to recover from the debtors on the same obligation,

3   for example, principal and interest on the note, with respect

4   to a particular security as identified with a CUSIP number.

5          We believe these omnis are appropriate 'cause, as a

6   general matter, debtors should not be required to pay on the

7   same claim more than once, and these omnibus objections, by

8   eliminating redundant claims, will help avoid the possibility

9   of multiple or duplicative recoveries.

10          Moreover, as set forth in the omnibus objections, the

11  indenture trustee was the proper party to file a claim on

12  behalf of the holders of those securities issued under the

13  indentures.  Thus we believe the global claims of the indenture

14  trustees are the appropriate vehicle for those claims being

15  resolved.

16          Just briefly, as is set forth in the objection and as

17  this Court is aware, the bar date order specifically allowed

18  indenture trustees, such as Wilmington Trust and Bank of New

19  York Mellon, to file such global claims.  The terms of the

20  applicable indentures allow the indenture trustees to file such

21  a global proof of claim and the Bankruptcy Rule procedure 3003

22  also states that an indenture trustee may file such a claim.

23          I wanted to give Your Honor a -- to discuss the

24  methodology that debtors used to put together these particular

25  omnibus objections.  Our claims agent, Epiq, initially

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 14 of 59

Page 14

1    performed a manual search of claims to identify those that were

2    claiming for a particular CUSIP or ISIN number, it's basically

3    trying to identify claims that were asserting a claim based on

4    a security.  Alvarez & Marsal then took the results of that

5    manual search by Epiq and identified claims for the duplicative

6    of the indenture trustee objections using a multi-set and very

7    thorough process.  Alvarez & Marsal did a claim by claim review

8    of those claims that were identified by Epiq in what I'm going

9    to call the preliminary pool and they used the information on

10   the claim as well as debtors' books and records to determine

11   what specific security the individual claimant was claiming

12   for.  Once the securities on the individual claims were

13   identified, those were cross-referenced with the securities on

14   the respective indenture trustee claim.  Claims that were for

15   securities that matched to securities on the Wilmington Trust

16   or Bank of New York Mellon's claims, again using a CUSIP or

17   ISIN number, were flagged for potential objection.  A&M then

18   provided the initial list of claims for objection to the

19   debtors.  They -- already been claims that have been reviewed

20   on an individual basis by Alvarez & Marsal.

21        Debtors then performed a check of fifty percent of

22   those claims that have been identified for objection by Alvarez

23   & Marsal.  The methodology employed by debtors to identify

24   duplicative claims, we believe, was both logical and

25   reasonable.  Wilmington Trust and Bank of New York Mellon

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 15

1    specifically identified in their global claims exactly what

2    securities were covered by those claims and they did so by

3    CUSIP number.  Individual claimants also frequently provided

4    CUSIP or ISIN number of the notes that the claim was based on,

5    how they frequently identified them on the basis of the claim.

6    Thus, we believe that using CUSIP numbers were the best way for

7    debtors to identify claims for these omnibus objections.

8            The holders of the 3,620 claims that received

9    individual -- received an individualized notice at significant

10   expense to debtors in informing them of the objection.  The

11   notice promptly set forth a specific attorney for the debtors

12   that the claimant can contact with questions or concerns

13   including if a claimant believed that his claim should not be

14   subject to those omnibus objections.

15           Debtors received inquiries or objections on behalf of

16   approximately 345 claimants.  We wanted to provide the

17   claimants with as much information as possible so that they

18   could determine how to proceed with respect to the omnibus

19   objections if they wanted to object.  So not only did we make

20   our -- debtors make themselves available to discuss the

21   objections with the claimant and answer their questions, we

22   also informed them how they could check -- that they didn't

23   just have to rely on debtors' word for this, that they could

24   check it themselves by looking at the Wilmington Trust or Bank

25   of New York Mellon claim and seeing if their CUSIP was on there

Page 16

1    and assessing if they believed that was adequate.

2         We then also coordinated with Wilmington Trust and

3    Bank of New York Mellon and they specifically designated

4    attorneys, specific point people, that debtors can refer

5    claimants to, to answer specific questions regarding the scope

6    of the Wilmington Trust or Bank of New York Mellon claim.  So

7    that way, if the claimant wanted to hear it from the horse's

8    mouth, we gave them the information for them to be able to do

9    that.

10        That's -- again, we believe that we provided --

11   debtors undertook extraordinary efforts to try to give

12   claimants the information that they needed to assess these

13   objections.  And we do want to -- the debtors very much

14   appreciate the coordination with Wilmington Trust and Bank of

15   New York Mellon in making their specific attorneys available to

16   claimants.  That was a great help.

17        And as this Court is aware, Wilmington Trust and Bank

18   of New York Mellon filed the limited objections to omnibus

19   objections 18 and 27 that I will discuss in detail later --

20   'cause they're unique issues --

21      (Pause)

22        THE COURT:  Sorry about that.  I have no idea if

23   CourtCall listeners are hearing this.  But we'll proceed

24   anyway.

25        MS. ECKOLS:  Okay.  Thank you, Your Honor.  Putting

08-13555-mg  Doc 10653  Filed 08/05/10  Entered 08/06/10 10:04:30  Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 17 of 59

Page 17

1   aside the Wilmington Trust and Bank of New York Mellon

2   objections for the moment, debtors received nineteen formal

3   objections, counting by docket entries, from eighteen claimants

4   for those omnibus objections.  Eight of those formal objections

5   have been resolved; four have been adjourned.  Thus, debtors

6   will be proceeding with respect to seven formal objections from

7   claimants today as well as the Wilmington Trust and Bank of New

8   York Mellon objections.

9           The debtors have taken steps to address the concerns

10  raised by Wilmington Trust and Bank of New York Mellon in their

11  objections.  Briefly, the Wilmington Trust and Bank of New York

12  Mellon objections expressed concern that the omnibus objections

13  may inadvertently capture claims that are not duplicative in

14  whole or in part of the indenture trustee claims.  The UCC also

15  expressed similar concerns.  In an effort to address those

16  concerns, debtors have already conducted a claim-by-claim

17  review of the 1,280 claims subject to those omnis that are

18  equal to or greater than a hundred thousand dollars.  Debtors

19  believe that those claims presented -- those higher dollar

20  claims presented the greatest risk of having such an issue

21  because they were more likely to be claiming multiple -- on the

22  basis of multiple securities.

23          Also, at the request of the UCC, debtors have agreed

24  to conduct an additional review of every single claim on omnis

25  18 through 27 that is less than a hundred thousand dollars.

Page 18

1    This additional review will cover the 2,340 claims left over

2    and again will be a significant additional expense for debtors.

3    In the event that claims that aren't identified that are in

4    whole or in part not duplicative of the indenture trustee

5    claims, debtors will address those issues by either withdrawing

6    their objection or modifying it to only expunge a specific

7    portion of that claim.

8            Today the debtors are requesting that the Court grant

9    omnibus objections 18 through 27 over the objections going

10   forward today.  The debtors will not submit the final orders to

11   the Court until the additional review that debtors have agreed

12   to undertake is completed as we have informed the creditors'

13   committee, Wilmington Trust and Bank of New York Mellon.

14           Unless Your Honor has questions at this point, I will

15   proceed to the specific omnibus objections.

16           THE COURT:  No.  You're certainly free to proceed, but

17   I want to be clear on something.  The intention of the omnibus

18   objections which are substantially identical to each other is

19   to eliminate duplication where an individual claimant has filed

20   a claim for a particular security that is the subject of the

21   proof of claim filed by the respective indenture trustees,

22   correct?

23           MS. ECKOLS:  Correct.

24           THE COURT:  In the event that this ongoing diligence

25   that you describe either for claims greater than a hundred

Page 19

```
 1    thousand or less than a hundred thousand fails to identify a

 2    certain random claimant that happens to have a claim embedded

 3    in its proof of claim, that it is not a duplicative claim.

 4    Assuming my intention that nobody's proper claim unrelated to

 5    the indenture trustee claims will be lost as a result of what

 6    I'll call human error in the process of diligence -- diligence

 7    in this, the purpose of this is to avoid duplicates not to

 8    inadvertently cross out valid claims, correct?

 9              MS. ECKOLS:  Correct.  And that is certainly -- we are

10    not intending or seeking to expunge claims that are

11    nonduplicative of the indenture trustee although, as you noted,

12    human error can occur.  Unfortunately, although we do our best,

13    claims processing is somewhat of an imperfect process.  But

14    again, it is not our intention to expunge a claim --

15              THE COURT:  And it's not my intention in entering any

16    order to inadvertently expunge a claim that has been somehow

17    missed that is not within the category of a duplicative claim.

18    Although if there's an injustice as a result of a mistake,

19    we'll find a way to correct it later --

20              MS. ECKOLS:  Okay, Your Honor.

21              THE COURT:   -- assuming somebody brings it to my

22    attention.

23              MS. ECKOLS:  And we are hopeful that by providing -- I

24    feel confident that by providing the individualized notice to

25    the claimants that -- again, we've done our best.  But we
```

Page 20

1    expect them to let us know if they believe that there is an

2    error.  And we believe it's incumbent upon them to come forward

3    and reach out to us which we've made it incredibly easy to do

4    if they believe that there is an issue.

5             I do want to raise a particular point 'cause I feel

6    it's -- perhaps that this -- a good juncture to do this.  It

7    appears as though there may be a disagreement between the

8    debtors and the indenture trustees regarding what exactly is a

9    claim that is duplicative of the indenture trustee claims.  So

10   we do have an interpretation issue that I can discuss with the

11   Court.  Specifically, Bank of New York Mellon -- the indenture

12   trustees have raised the issue of a claimant asserting a claim

13   that would otherwise be duplicative of the indenture trustee

14   claim if it's for a note, principal interest, but it's

15   asserting a priority that is different from the priority

16   asserted in the indenture trustee claims.  For example, someone

17   deci -- one individual who checked that their claim was secured

18   although, quite frankly, it's not.  Or that their claim was

19   entitled to priority although, again, we don't believe that is

20   correct.  Debtors' position is that the omnibus objections are

21   to expunge claims that are, in substance, duplicative of the

22   indenture trustee claims.  And regardless of what priority the

23   claimant actually claims, in substance, those claims -- again,

24   whether they check secured or priority, are, in effect, seeking

25   to recover for the same thing that the Wilmington Trust or the

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 21 of 59

Page 21

1    Bank of New York Mellon claims are seeking to recover.

2          So that is the issue currently on the table.  And if

3    you'd like me to continue or if you'd like to hear from the

4    indenture trustees on this particular issue --

5          THE COURT:  Rather than parse out that issue

6    separately now, I think I'd like to hear from them all at once

7    with respect to their objections.  And I'm confused about the

8    withdrawal of the Wilmington Trust Company objections you

9    referred to at the outset of the hearing.  What objection was

10   withdrawn?

11         MS. ECKOLS:  The State Street.

12         THE COURT:  Oh, State Street.  I'm sorry.

13         MS. ECKOLS:  State Street.

14         THE COURT:  I misunderstood you.

15         MS. ECKOLS:  I may have misspoke.  So, Your Honor, at

16   this point, would you prefer that I go ahead and continue

17   through the omnibus objections putting the Wilmington Trust and

18   Bank of New York Mellon issues aside for the moment?

19         THE COURT:  I'd like to hear those issues all at once.

20         MS. ECKOLS:  Okay.  Well, I believe that at this

21   point, then, I will turn over the podium to Wilmington Trust.

22         MS. JOHNSTON:  Thank you.  Your Honor, Susan Johnston

23   from Covington & Burling on behalf of Wilmington Trust.  We

24   appreciate the debtors' undertaking to review all of the claims

25   to be sure that there are no claims that are not related to the

Page 22

1    indentures and to deal with them separately.  There's one

2    issue, as debtor indicated, that is still open between us.  And

3    that is our concern that some of the claimants have asserted a

4    different priority from the Wilmington Trust global claim.

5    We're not aware of any basis on which a different priority

6    would be appropriate.  But the notice of claim objection that

7    we've seen does not refer to an objection based on priority.

8    It is limited to an objection based on duplication.

9         So we are concerned -- there is a difference of

10   opinion between Wilmington Trust and the debtor about whether

11   the existing notice gave proper notice that the debtor would be

12   disallowing claims that assert a different priority even if

13   they arise under the indenture.

14        THE COURT:  Let me understand something.  There's no

15   question as to the adequacy of notice to the individual holders

16   of claims that there would be a disallowance of duplicate

17   claims.

18        MS. JOHNSTON:  Correct.

19        THE COURT:  Presumably, a claimant in receipt of an

20   omnibus objection that has asserted a priority within the claim

21   or, for whatever reason, has listed this as a secured claim,

22   this same claimant might have an apparent prima facie right to

23   recovery other than an unsecured claim, would be in a position

24   to express his or her or its views to the debtor and say, wait

25   a minute, I don't want my claim expunged because I think I'm

LEHMAN BROTHERS HOLDINGS INC., et al.

1    entitled to a priority distribution.  Isn't there that notice

2    here?

3         MS. JOHNSTON:  Your Honor, yes.  And at least two of

4    the creditors have done that.  There are two objections that

5    are responses to the objection, Mr. Ebbert's and the Senior

6    Civil Liberties Association that have raised with the debtor

7    and with the Court their claim for a different priority.

8         The concern that we have, Your Honor, is that over

9    the -- since the cases were filed nearly two years ago, we've

10   had conversations with about 2,000 of the noteholders.  We've

11   had conversations with about 200 since the omnibus claims

12   objections were filed.  Most of the people that we've spoken

13   with have been relatively unsophisticated people that would

14   appear in this court pro se.  Their comprehension of this

15   process is limited.  They are not sophisticated.  And it is not

16   clear to us that they fully understand the nature of the notice

17   that they've been given.  The notice that we've seen simply

18   refers to a claim that is duplicative of the Wilmington Trust

19   claim.  The Wilmington Trust claim was filed as an unsecured

20   claim.  We are concerned that some of these people may think

21   that my claim is a priority claim so it's not being expunged.

22   They may just misunderstand.  And we're worried that

23   overlooking that issue now will create administrative problems

24   for the Court later.  And what we would like for the debtor to

25   do is since they're going to be looking at the claims anyway to

1    ensure that none contain nonindenture claims, we would like for

2    them also to identify any claims that identify themselves as

3    priority or secured and deal with them separately, take them

4    out of these objections and file a separate objection on the

5    basis of both duplicative and incorrect priority.  We think

6    that's the simplest -- I mean, I know it involves a lot of

7    work, but they're going to be looking at the claims anyway.  We

8    think that is the cleanest way to deal with this problem to

9    avoid future problems and to ensure that the notice is

10   adequate.

11        Your Honor is obviously correct.  They've all gotten a

12   notice.  And if they had questions about it they could have

13   raised it.  But we're assuming a lot of knowledge about basic

14   bankruptcy on behalf of people who've never been in this

15   situation before.  And I certainly wouldn't want to -- I

16   wouldn't assume that they understood especially because it

17   didn't say anything about priority.  The notice doesn't say

18   priority.

19        So that's my concern that I have.  And I think, as I

20   said, Your Honor, that since they're going --

21        THE COURT:  Is that the only current concern?

22        MS. JOHNSTON:  That is the only current concern, Your

23   Honor.  And we are -- I am prepared to say that we obviously

24   have no objections to the elimination of true duplicative

25   claims.  We have -- we agree that all of the responses have

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 25 of 59

Page 25

1   been filed except for these two with respect to the priority

2   and secured issue are, in fact, covered by our claim are

3   duplicative and can be expunged.  We very much appreciate the

4   debtors' undertaking to look at the claims to ensure that there

5   are no nonduplicative claims.  And all we're asking now, Your

6   Honor, is that in the course of that review, they also identify

7   claims that incorrectly list improper priority or security

8   assertions and deal with those separately so that people get

9   proper notice.  We think there's a -- our consensual difference

10  with the debtor is that we don't think a notice that says your

11  claim will be expunged because it's duplicative also gives

12  adequate notice that the claim will be expunged because it had

13  an improper priority assertion.

14          THE COURT:  I understand your position although it

15  carries with it incremental administrative expenses to the

16  estate and a level of further work on this that almost takes

17  away from the benefit of having indenture trustees file global

18  claims in the first place.  It makes this process

19  extraordinarily burdensome, it seems to me.  And the issue that

20  you raise is so nuanced and I'm not prepared to say I agree

21  with it at all.  I believe that notice of expungement of the

22  duplicative claim carries with it notice that the individual

23  claim that I have filed is going to disappear.  And I am going

24  to be relegated to the indenture trustee claim that applies to

25  the same security, unless I do something to object, it's pretty

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 26 of 59

Page 26

1    clear to me.  And I think even people who are unsophisticated

2    in the bankruptcy practice reading plain language would know if

3    I don't do something, I'll have whatever claim the trustee has

4    provided for me.

5            So I hear what you're saying.  I'm just not that

6    sympathetic to it.

7            MS. JOHNSTON:  All right.

8            THE COURT:  Is Bank of New York taking the same

9    position?  Maybe I'll -- maybe through repetition, I'll get the

10   point.

11           MR. REID:  Good morning, Your Honor.  Russell Reid

12   with Sheppard Mullin Richter & Hampton on behalf of the Bank of

13   New York Mellon.  We, likewise, appreciate the debtors'

14   efforts.  We recognize this is a voluminous process.  And we

15   certainly appreciate their recent commitment to review all of

16   the 3,620 claims.

17           I think Your Honor, earlier this morning, hit the nail

18   on the head when you acknowledged that to the extent that there

19   is an unintended nonduplicative claim embedded in one of those

20   three thousand claims, there's certainly a way that the Court

21   and the debtors can address that problem and if it's brought to

22   their attention I think that this can, frankly, be settled with

23   respect to language in the order which is very clear that the

24   only thing that's intended here, which I think we all

25   acknowledge, is the expungement of duplicative claims under the

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 27 of 59

Page 27

1   indenture trustee umbrellas.  And to the extent that a claimant

2   feels that there is some portion of their claim, in whole or in

3   part, that's not related to that, that that can be taken up

4   with the debtors in some appropriate fashion.  I think we can

5   carve an order that satisfies both of our concerns that is

6   expedient with respect to getting rid of the duplicative claims

7   but, by the same token, acknowledges this issue that there

8   could be, by virtue of human error or oversight or whatever,

9   some type of claims that are still out there that are embedded

10   in these proofs of claims that should be administered by the

11   Court.  And I think this can be addressed in the order.  I

12   don't think we have to necessarily agree to disagree with

13   respect to philosophied nuance.  I think there's language that,

14   among all of us, we could come up with in the order that would

15   address this issue.

16         THE COURT:  Okay.  But do you or don't you take the

17   same position as Wilmington Trust Company with respect to the

18   priority or classification of the claim relating to the same

19   security as being, in effect, nonduplicative?  I mean, this is

20   definitional.

21         MR. REID:  Correct.

22         THE COURT:  Is a duplicative claim a claim, how ever

23   it may be styled, that relates to the same security and the

24   same CUSIP number or is a duplicative claim a claim of the same

25   sort as that filed by the indenture trustee?  Because, in

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 28

1  effect, that's the definitional question raised by Wilmington

2  Trust in its objection.  Either you subscribe to that or you

3  say we can deal with it with language in the order.  I'm not

4  sure what you're saying.

5        MR. REID:  We concur with Wilmington Trust's position,

6  frankly, with respect to that, yet, at the same time, believe

7  that we can deal -- that they could be addressed satisfactorily

8  in the order.

9        THE COURT:  Okay.  That seems to me to be an order

10  that's going to be tough to draft as you describe it because if

11  there's a fundamental philosophical disagreement between the

12  debtors and the indenture trustees as to what constitutes a

13  duplicative claim, I don't think you're going to be able to

14  draft around that.

15        MR. REID:  Well, I agree to the extent that we

16  continue to have this philosophical difference.  That being

17  said, from a practical standpoint, Your Honor, I don't think

18  that we're inviting legions of people to come forward and make

19  this a much more burdensome process.  I think that we could be

20  over-encompassing perhaps from the debtors' perspective with

21  respect to what we invite in this order.  And I would hope that

22  we could come up with agreeable language.  Perhaps we can't.

23  But if we could, I think that it is possible to meet in the

24  middle for purposes of the order.  But I don't believe, from a

25  pragmatic or a realistic standpoint that we are going to be

08-13555-mg    Doc 10653    Filed 08/05/10    Entered 08/06/10 10:04:30    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 29 of 59

Page 29

1    seeing thousands of people coming forward thinking they have

2    some type of nuanced different claim.  I think we protect

3    ourselves and the Court from that possibility with an

4    appropriate order but I don't think that we'll be adding

5    excessive burdensome work to the estate.

6         THE COURT:  Okay.  I understand the position of both

7    indenture trustees.

8         MR. REID:  Thank you, Your Honor.

9         MR. O'DONNELL:  Your Honor, Dennis O'Donnell, Milbank

10   Tweed Hadley & McCloy on behalf of the official committee.

11   Your Honor, the committee, separate from the indenture

12   trustees, did weigh in on the initial issue here in terms of

13   whether there should be a subsequent review to determine

14   whether there are claims out there that should not be included

15   or portions of claims.  It did not weigh in on this most recent

16   issue so we don't -- we're not taking a position on the nuanced

17   issue that we're now seeking to address.

18        THE COURT:  Okay.

19        MS. ECKOLS:  Your Honor, I believe that the

20   philosophical differences between the parties have become clear

21   so I'm not going to rehash that.  I did want to note that

22   although debtors have undertaken and agreed to review claim by

23   claim the 2600 additional claims what Bank of New York and

24   Wilmington Trust are requesting is that debtors would also need

25   to go back and rereview the 1,280 claims that we have already

Page 30

1   reviewed on a claim-by-claim basis to see if there are any of

2   these philosoph -- claims that raise this philosophical

3   difference between the parties.  As we've indicated, we believe

4   that whether or not a claim has asserted a different priority

5   that it is, in substance, duplicative of the indenture trustee

6   claims.

7           In respect, obviously, debtors do believe that the

8   individualized notice was adequate.  And although we understand

9   that there are concerns regarding whether pro se individuals

10  could understand that notice, that is one of the reasons why we

11  do put in bold, big type, a specific attorney for the debtors

12  that these claimants can reach out to.  And we know that has

13  worked and that they understand that they can reach us 'cause

14  we've received well over 300 -- approximately 345 inquiries

15  related to these objections.  And at that point, I'm going to

16  move on unless Your Honor has any further questions.

17          THE COURT:  I think it's simply time to move on though

18  we'll probably come back to this point before the hearing is

19  concluded.

20          MS. ECKOLS:  Understood.  With respect to agenda item

21  1, debtors' seventeenth omnibus objection to claims, there were

22  no formal objections.  So we are proceeding on an uncontested

23  basis.  So debtors respectfully request that the Court grant

24  debtors' seventeenth omnibus objection to claims.

25          THE COURT:  I'm granting it with one question,

LEHMAN BROTHERS HOLDINGS INC., et al.

1    however, as it relates to the continuing objections of

2    Wilmington Trust and the Bank of New York Mellon.  Are there

3    any what we'll call the philosophical claimant issues that are

4    embedded in this?

5            MS. ECKOLS:  No, Your Honor, not that we are aware of.

6    These are the omnibus objection on the claims where the parties

7    have already reached an agreement on the amount.

8            THE COURT:  Fine.

9            MS. ECKOLS:  Moving on to agenda item 2, omnibus

10   objection 18, again, putting aside the Wilmington Trust and

11   Bank of New York Mellon objections, there are three formal

12   unresolved objections going forward today.  The first is that

13   of Daniel Ebbert.  Mr. Ebbert is not a claimant but reached out

14   to debtors prior to filing his objection to debtors' eighteenth

15   omnibus objection.  I personally spoke with Mr. Ebbert

16   regarding his objection and provided an explanation as to why

17   his claim had been objected to.  Based on that conversation, we

18   understand that Mr. Ebbert had already confirmed that the

19   security he was seeking to recover for under his individual

20   claim was, in fact, on the Wilmington Trust claim.

21           It is also our understanding that despite Mr. Ebbert

22   agreeing that a security was on the Wilmington Trust claim that

23   he would pursue his objection.  Debtors followed up with a

24   letter to Mr. Ebbert enclosing a copy of the debtors'

25   eighteenth omnibus objection and a copy of the Wilmington Trust

Page 32

1    claim and set forth the contact information for Wilmington

2    Trust counsel therein.  We asked that Mr. Ebbert contact us if

3    he decided not to pursue his objection and we've received no

4    further communication from him and, thus, we are proceeding

5    with respect to his objection.

6           This is one of the claims that Wilmington Trust raised

7    as a claimant who had -- was asserting priority on his

8    individual claim we're seeking to expunge.  So it does raise

9    that issue.  But as we mentioned, Mr. Ebbert informed us that

10   he had confirmed that his note was on the Wilmington Trust

11   claim.  Debtors also confirmed that the note Mr. Ebbert is

12   seeking is listed on the Wilmington Trust claim and confirmed

13   directly with Wilmington Trust that that security was on the

14   Wilmington Trust claim.  Accordingly, we believe that Mr.

15   Ebbert is seeking to recover for the same obligation that

16   Wilmington Trust is seeking to recover and that the Ebbert

17   claim is, in substance, duplicative of the Wilmington Trust

18   claim and thus we believe that Mr. Ebbert's objection to the

19   debtors' eighteenth omnibus objection should be overruled.

20          We do also next have the objection and response of

21   Ronald Zemenak.  We spoke with Mr. Zemenak prior to his filing

22   of the objection and we gave him, again, the general

23   information and how he could access the Wilmington Trust claim

24   and gave him contact information for Wilmington Trust counsel.

25          That objection that Mr. Zemenak filed indicated that

Page 33

1    he was not satisfied that the Wilmington Trust claim would

2    adequately protect his interests and that his son, an attorney,

3    was advising him on the matter.  Therefore, we reached out to

4    his son.  And in e-mail correspondence with him, the son, he

5    advised that his father understood the nature of the omnibus

6    objection but wanted to pursue his claim individually and apart

7    from the Wilmington Trust claim.  However, he also stated that

8    his father would accept it if the Court found that the

9    Wilmington Trust claim adequately protected his rights.

10          Mr. Zemenak, Sr., the father, contacted us last night

11   and confirmed that he would be going forward with his objection

12   this morning.

13          Debtors checked this claim specifically and the

14   securities Mr. Zemenak are claiming for are all on the

15   Wilmington Trust claim.  We do note that there was actually a

16   typo on one of the CUSIP numbers that he put in.  But again,

17   we -- it matches up.  We also confirmed with Wilmington Trust

18   that those CUSIP numbers were on the Wilmington Trust claim.

19   Thus, we believe that the Zemenak claim is duplicative of the

20   Wilmington Trust indenture claim and that his objection should

21   be overruled.

22          Next is the objection of the Senior Civil Liberties

23   Association, Inc.  I'm going to refer to this claimant as SCLA

24   for short.  This is not a claimant that reached out to debtors

25   prior to filing its objection.  I personally spoke with Mr.

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 34 of 59

Page 34

1    Burr, the representative for SCLA regarding SCLA's objection

2    and provided an explanation as to why the particular claim had

3    been objected to.  I sent Mr. Burr a copy of the eighteenth

4    omnibus objection, a copy of the SCLA claim and a copy of the

5    Wilmington Trust claim so that he could look for himself.  I

6    also provided Mr. Burr with the contact information for

7    Wilmington Trust counsel and asked that he inform us whether he

8    wished to pursue his objection.  And I did want to note for the

9    Court that this is the claimant that Wilmington Trust

10   identified as his individual claim asserting secured status so

11   it does present this philosophical issue.  We did not receive

12   further communication from Mr. Burr and thus his objection is

13   going forward today.

14          In the SCLA objection, there is no statement regarding

15   whether or not SCLA believes that its claim is duplicative of

16   the Wilmington Trust claim.  Thus debtors do not believe that

17   SCLA is contesting that its claim is, in fact, duplicative of

18   the Wilmington Trust claim.  Moreover, debtors reviewed the

19   SCLA claim and identified it as claiming for a security with a

20   CUSIP number covered by the Wilmington Trust claim.  We also

21   had Wilmington Trust confirm that this was the case, that it

22   was a security on their claim.

23          Accordingly, we believe that SCLA is seeking to

24   recover for the same obligation that Wilmington Trust is

25   seeking to recover for and that the SCLA claim is, in

1  substance, duplicative of the Wilmington Trust claim.  And

2  thus, we respectfully request that the Court overrule SCLA's

3  objection to the debtors' eighteenth omnibus objection.

4        THE COURT:  Let me just ask if there's anyone in court

5  or on the telephone representing the interest of Mr. Ebbert,

6  Mr. Zemenak or what we're calling the SCLA.

7        MR. ZEMENAK (TELEPHONICALLY):  Your Honor -- Your

8  Honor, this is Ronald P. Zemenak and I am on the phone from

9  Castle Rock, Colorado.

10       THE COURT:  Okay.  Is there anything that you wish to

11  say in reference to the newest position taken by the debtors

12  with regard to the duplicative nature of the claim that you are

13  asserting?

14       MR. ZEMENAK:  Yes, I do.  And I will try to be

15  succinct.  I've somewhat lost confidence in the process because

16  of the way it's gone forward.  In December of '08, I had

17  received notice of the Lehman bankruptcy and it was indicated

18  that I had to support all required documentation to submit my

19  claim, which I did.  On June 3rd of '09, I had received

20  acknowledgment that my claim had been received.  Then in July

21  of '09, I received notice that my claim had to be resubmitted

22  even though I referenced the acknowledgment that I had received

23  and I thought that this request for an additional claim

24  submission was in error.

25       Later, I received notice that I had a duplicative

Page 36

```
 1    claim and I contacted Epiq Systems and they told me that I had
 2    to make a choice to either stay with my original claim or keep
 3    with the second claim I filed.  But I had to write a letter
 4    and -- indicating that I wanted to cancel the duplicative claim
 5    which I was forced to submit and stay with my original claim.
 6         Then I received notice after that that a global claim
 7    was being filed on my behalf by Wilmington Trust.  However, I
 8    had never received any prior notice directly from Wilmington
 9    Trust that they were going to be acting on my behalf or in what
10    manner they were going to be acting on my behalf.
11         So, quite frankly, all of this caused me to lose
12    confidence in the process.  And the primary basis for my
13    objection is that I wish to be certain that my rights to
14    maximize any settlement due me are protected to the fullest
15    extent possible.  If Your Honor can assure me that I will be in
16    no better position by yielding to the global claim then I will
17    do so.  As a retiree living on a fixed income, I need to be
18    sure that by participating in the global claim that I am not in
19    any way shortchanging myself, and that is, not obtaining the
20    best dollar settlement possible.  And that's the substance of
21    my objection.
22         THE COURT:  Okay.  I understand.  And I would ask
23    debtors' counsel and counsel for the indenture trustee to
24    provide such assurances as can be provided concerning the claim
25    process.
```

08-13555-mg    Doc 10653    Filed 08/05/10    Entered 08/06/10 10:04:30    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 37 of 59

Page 37

 1              MR. ZEMENAK:  And if I may add one thing, Your Honor.

 2      I'm, quite frankly, very perplexed why the first time I have

 3      ever heard that I was going to be represented by Wilmington

 4      Trust in a global claim was with the eighteenth omnibus

 5      objection.

 6              THE COURT:  Okay.  Well, maybe we can provide you with

 7      the information you're seeking now.

 8              MR. ZEMENAK:  Thank you, sir.

 9              MS. ECKOLS:  Your Honor, debtors do, in fact, believe

10      that Mr. Ebbert's would be --

11              THE COURT:  Well, this is Mr. Zemenak.

12              MS. ECKOLS:  I'm sorry.  I'm so sorry.  Mr. Zemenak

13      would be in the same position going it alone or as part of the

14      Wilmington Trust claim.  But again, I believe that there's -- I

15      don't know that there's necessarily disagreement with the

16      Wilmington Trust and Bank of New York Mellon -- Wilmington

17      Trust on this particular issue as this claim does not raise the

18      philosophical issues.

19              THE COURT:  But you mentioned, and I just want to be

20      clear on this, that there was a typographical error of some

21      sort.  Apparently, the CUSIP number that was used by Mr.

22      Zemenak in filing his individual proof of claim in contrast

23      with the CUSIP number that was part of the global claim filed

24      by Wilmington Trust on behalf of all holders of the issue.  I

25      just want to be clear that there's no inadvertent mistake here.

08-13555-mg    Doc 10653    Filed 08/05/10    Entered 08/06/10 10:04:30    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 38 of 59

Page 38

1    Has sufficient work been done to verify that we're talking

2    about the same security?

3        MS. ECKOLS:  We believe that it has.  It appears as

4    though Mr. Zemenak just left one digit off whatever he was --

5    writing his objection.  He wrote CUSIP number 5259FDMO.

6    Debtors believe that it is, in fact, 52519FDMO which would give

7    it the required numbers.  And we do believe, based on a review

8    of his claim and the objection and what we know is on the

9    Wilmington Trust claim, that it is, in fact, a typo.

10       THE COURT:  Okay.  And can counsel for Wilmington

11   Trust provide some assurance on the record both to Mr. Zemenak

12   and to the Court that the filing by Wilmington Trust Company or

13   the indenture trustee claim on behalf of the various holders

14   was sufficient to give Mr. Zemenak the same rights that he

15   would have in an individual claim regardless of any priority

16   issues that might be embedded in the claim?

17       MS. JOHNSTON:  Yes, Your Honor.  Susan Johnston from

18   Covington & Burling on behalf of Wilmington Trust.  Wilmington

19   Trust is the successor trustee on this indenture.  Mr. Zemenak

20   may not have heard the name Wilmington Trust associated with

21   this indenture before because the original trustee was

22   Citibank.  And so, it may be that Mr. Zemenak was confused by

23   an unfamiliar name of an indenture trustee.  Wilmington Trust

24   succeeded to the indenture several months before the petition

25   was filed.  But that's not necessarily something that the

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 39 of 59

Page 39

1    noteholders would have heard about in the ordinary course.  The

2    notice went out but I'm not quite sure when because we weren't

3    representing Wilmington in its capacity as indenture trustee at

4    that time.

5            So, I believe that there was probably a reference to

6    Wilmington Trust as the indenture trustee in the bar notice

7    which indicated that Wilmington Trust was authorized both by

8    the Court and by the indenture to file a global proof of claim

9    on behalf of all noteholders.  Once Lehman -- once the Lehman

10   bankruptcy commenced, Wilmington Trust became the fiduciary for

11   all noteholders and acts on their behalf in securing the

12   maximum recovery possible for each of them under the notes.

13   And so, because that is the nature of Wilmington Trust's role

14   in this case, I am confident that Mr. Zemenak will recover as

15   much under the global proof of claim as he would be able to

16   recover under an individual proof of claim.

17           THE COURT:  Okay.  Thank you very much.  Based upon

18   those statements and an understanding of the proof of claim

19   process as it relates to securities that are issued under and

20   subject to the indentures in question, I am satisfied that Mr.

21   Zemenak and other similarly situated holders are protected to

22   the fullest extent by the proof of claim filed by the indenture

23   trustee on behalf of all holders subject to the respective

24   indentures.  So, Mr. Zemenak, I'm going to overrule your

25   objection but I'm doing so in a manner that I hope you'll find

Page 40

1    satisfactory based upon what you heard represented on the

2    record.

3           MR. ZEMENAK:  I guess so.  I'll certainly accept that

4    and I do understand that the reason I had pursued this was

5    because in speaking with other parties along the way, nobody

6    could give me that assurance.  And so, having that come from

7    you, I certainly understand.

8           THE COURT:  Okay.  Fine.  Thank you very much.  And as

9    to the remainder of the eighteenth omnibus objection, having

10   heard nothing from anyone on behalf of Mr. Ebbert or the SCLA,

11   I'm overruling those objections and I'm now granting the

12   eighteenth omnibus objection as presented.

13          MR. ZEMENAK:  And, Your Honor, I do have one

14   additional comment.  And that is, do I need to take any

15   additional steps in order to be included?

16          THE COURT:  No.

17          MR. ZEMENAK:  Okay.  Then, with your permission, I

18   will end this call.

19          THE COURT:  That's fine.  You have my permission to

20   hang up.

21          MR. ZEMENAK:  Thank you.

22          MS. ECKOLS:  Thank you, Your Honor.  Moving on to

23   agenda item 3, which is debtors' nineteenth omnibus objection

24   to claims, there is only one formal unresolved objection going

25   forward, again, putting aside Wilmington Trust and Bank of New

Page 41

 1   York Mellon.  That is the opposition of Maheswora Baidya.  I

 2   know I've mangled that name.  The debtors request that the

 3   Court overrule Mr. Baidya's opposition to expungement of his

 4   claim numbers 3229 and 3330 under the nineteenth omnibus

 5   objection.  Mr. Baidya's objection is on the -- objections are

 6   on the basis that he had not authorized anyone, meaning

 7   Wilmington Trust, to file a claim on his behalf and that his

 8   claim was, in fact, a valid claim.

 9          After a lengthy discussion with Mr. Baidya regarding

10   the omnibus objection and his response thereto, I e-mailed him

11   a copy of the omnibus objection, a copy of the Wilmington Trust

12   claim and the contact information for Wilmington Trust counsel.

13   Mr. Baidya informed me via e-mail that he would pursue his

14   opposition to debtors' nineteenth omnibus objection because he

15   could not "understand how they can legitimize their objection

16   to the -- investors' claim for their investments".

17          In the e-mail, Mr. Baidya did not make a statement

18   regarding whether or not he believed that his claim was or was

19   not duplicative of the Wilmington Trust claim.  The debtors

20   specifically reviewed Mr. Baidya's claims and identified the

21   securities that he is seeking to recover for as being on the

22   Wilmington Trust claim.  The debtors have also confirmed

23   directly with Wilmington Trust that Mr. Baidya's securities are

24   on the Wilmington Trust claim rendering Mr. Baidya's individual

25   claims duplicative of that indenture trustee claim.

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 42 of 59

Page 42

1   Accordingly, we request that the Court overrule Mr. Baidya's

2   objection to the expungement of his claims and grant the

3   nineteenth omnibus objection.

4        THE COURT:  Is there anyone in court or on the

5   telephone representing the interest of Mr. Baidya?  I don't

6   hear anything and I overrule the opposition to the expungement

7   of that claim as a duplicative claim.  Notwithstanding the

8   statement that there was no direct authorization given to the

9   indenture trustee under the applicable documents which I have

10  reviewed, the indenture trustee has the obligation, as well as

11  the ability, to file global proofs of claim and has done so in

12  this instance.  And so, that objection is overruled.  The

13  nineteenth omnibus objection is granted.

14       MS. ECKOLS:  Thank you, Your Honor.  With respect to

15  agenda item number 4, that is debtors' twentieth omnibus

16  objection to claims, putting aside the Wilmington Trust and

17  Bank of New York Mellon objections, there are no unresolved

18  formal objections going forward today and thus we request that

19  the Court grant the twentieth omnibus objection.

20       THE COURT:  The objection is granted subject to

21  discussion that we'll have at the end concerning how best to

22  deal with the philosophical issues that are still before us.

23       MS. ECKOLS:  Thank you, Your Honor.  And with respect

24  to agenda item number 5, debtors' omnibus objection 21, there

25  are no unresolved formal objections for this particular omnibus

Page 43

1   objection, again, putting aside the Wilmington Trust and Bank

2   of New York Mellon issues.  And thus, we would request that the

3   Court grant the debtors' twenty-first omnibus objection to

4   claims.

5          THE COURT:  The twenty-first omnibus objection to

6   claims is granted.

7          MS. ECKOLS:  Thank you, Your Honor.  With respect to

8   agenda item 6, debtors' omnibus objection -- twenty-second

9   omnibus objection to claims, again, putting aside the

10  Wilmington Trust and Bank of New York Mellon objections, there

11  are no unresolved formal objections for this particular omnibus

12  objection and, therefore, we respectfully request that the

13  Court grant it.

14         THE COURT:  The twenty-second omnibus objection to

15  claims is granted.

16         MS. ECKOLS:  With respect to agenda item number 7,

17  debtors' twenty-third omnibus objection to claims, again,

18  putting aside the Wilmington Trust and Bank of New York Mellon

19  objections, there are no unresolved formal objections going

20  forward today on that omni and, thus, we respectfully request

21  that the Court grant debtors' twenty-third omnibus objection.

22         THE COURT:  The twenty-third omnibus objection to

23  claims is granted.

24         MS. ECKOLS:  And agenda item number 8, omnibus

25  objection 24, again, putting aside the Wilmington Trust and

Page 44

 1    Bank of New York Mellon objections, there are no unresolved

 2    formal objections for this particular omnibus objection and,

 3    thus, we respectfully request that the Court grant debtors'

 4    twenty-fourth omnibus objection to claims.

 5             THE COURT:  The twenty-fourth omnibus objection to

 6    claims is granted.

 7             MS. ECKOLS:  Excuse me.  With respect to agenda item

 8    number 9, omnibus objection 25, there are no unresolved formal

 9    objections for this particular omnibus objection.  There is one

10    informal objection that we received that we would like to raise

11    with the Court.  It is an objection from Phyllis Dua.  It has

12    not appeared on the docket and thus we do not believe it has

13    been submitted to the Court.  In an abundance of caution,

14    however, we wanted to bring it to Your Honor's attention.  We

15    do believe that the objection should be overruled.

16             Debtors spoke with Ms. Dua on June 19th and provided

17    her a general explanation of the notice that she received

18    advising her that her claim, 6601, had been objected to.  So

19    this is a claimant who received the individualized notice and

20    reached out to us.  We provided Ms. Dua information regarding

21    how she can obtain a copy of the Wilmington Trust claim so she

22    can look at it herself and judge it and as well as contact

23    information for Wilmington Trust counsel should she have any

24    questions.

25             A few days after that conversation, we received a

08-13555-mg    Doc 10653    Filed 08/05/10    Entered 08/06/10 10:04:30    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 45 of 59

Page 45

1    letter from Ms. Dua stating that she objected to the

2    disallowance and expungement of her claim.  In her objection,

3    Ms. Dua makes no reference with respect to whether or not her

4    claim, 6601, is duplicative of the Wilmington Trust claim.

5    Instead, her objection states that she should be paid on her

6    claim due to her financial circumstances and that it's a valid

7    claim.

8            We tried to contact Ms. Dua several times after

9    receiving her letter objection but could not reach her.  We

10   subsequently sent Ms. Dua a letter containing the information

11   we had previously verbally provided her regarding accessing the

12   Wilmington Trust claim and providing the contact information

13   for Wilmington Trust counsel again.  We also included a copy of

14   the objection as well as information regarding the date, time

15   and location of the hearing.  In the letter to Ms. Dua, we

16   requested that she inform us if she intended to proceed with

17   her objection.  We received no response from her.

18           Debtors specifically reviewed Ms. Dua's claim and

19   confirmed that the security Ms. Dua is seeking to recover for

20   is listed on the Wilmington Trust claim.  We also confirmed

21   with Wilmington Trust directly that the security Ms. Dua is

22   claiming for is on that Wilmington Trust claim.  So

23   accordingly, we request that the Court overrule Ms. Dua's

24   objection.

25           THE COURT:  Thanks for that explanation.  And the

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 46 of 59

Page 46

1   informal objection of Phyllis Dua is overruled and the twenty-

2   fifth omnibus objection to claims is granted.

3        MS. ECKOLS:  Thank you, Your Honor.  Agenda item

4   number 10, debtors' twenty-sixth omnibus objection to claims,

5   putting aside Wilmington Trust and Bank of New York Mellon,

6   there are no unresolved formal objections for this particular

7   omni and, thus, we respectfully request that the Court grant

8   debtors' twenty-sixth omnibus objection to claims.

9        THE COURT:  The twenty-sixth omnibus objection to

10  claims is granted.

11       MS. ECKOLS:  Moving on to agenda item number 11, which

12  is omnibus objection 27, putting aside Wilmington Trust and

13  Bank of New York Mellon, there is one unresolved formal

14  objection to discuss as well as one informal objection that we

15  would like to raise with the Court and to make him aware of it.

16  It is an objection that we received via letter.  It has not hit

17  the docket but in an abundance of caution, like Ms. Dua, we

18  wanted to discuss it with Your Honor.

19       Taking up the objections of Ms. Pugia, Ms. Pugia did

20  not contact us prior to filing her objection.  The basis of her

21  objection is that her claim is valid and financial

22  circumstances should permit her claim to be paid.  There is a

23  misstatement that her claim is -- or is not duplicative of the

24  respective Bank of New York Mellon claim.

25       We did speak with Mr. Pugia, Ms. Pugia's husband, as

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 47 of 59

Page 47

```
 1   he is handling the objection on behalf of his wife.  We

 2   explained the objection.  And Mr. Pugia stated -- indicated

 3   that they intended to proceed with the objection because it's a

 4   lot of money.  We followed up with a letter reiterating that --

 5   what we had told Mr. Pugia including how to access the Bank of

 6   New York Mellon claim and the contact information for Bank of

 7   New York Mellon counsel and this letter was directed to Mrs.

 8   Pugia as the claimant.  And we asked that Ms. Pugia advise us

 9   if she changed her mind and we have received no further

10   communication from her.  Thus, we are moving forward with her

11   objection this morning.

12           We reviewed Ms. Pugia's claim and the security that

13   she is claiming for is, in fact, on the Bank of New York Mellon

14   claim.  We did reach out to Bank of New York Mellon claim (sic)

15   and they have not disagreed that that claim is on the Bank

16   of -- oh, that security is on the Bank of New York Mellon

17   claim.  Thus, we believe that the Pugia claim is, in fact,

18   duplicative of the Bank of New York Mellon global claim and

19   that that objection should be overruled.

20           THE COURT:  The objection of Annetta Pugia is

21   overruled based on the representation that the security that is

22   the subject of her individual claim is included in the global

23   proof of claim filed by Bank of New York Mellon.

24           MS. ECKOLS:  Thank you, Your Honor.  Taking --

25           THE COURT:  And the twenty-seventh omnibus objection
```

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 48

1    to claims is granted.

2           MS. ECKOLS:  Thank you, Your Honor.  Unless your Court

3    feels otherwise, I was going to discuss the informal objection

4    to omnibus objection 27 that I had mentioned.

5           THE COURT:  Oh.  I didn't know there was another.

6    Okay.

7           MS. ECKOLS:  That's okay.  It's the informal objection

8    that didn't show up on the docket so it's not on the agenda.

9    But I wanted to make you aware of it.

10          That is from Metzler Investment GMBH.  It's regarding

11   claim 63413.  I'm just going to refer to it as Metzler for

12   short.  Metzler had filed three separate claims, two of which

13   showed up on omnibus objection 23.  That's the Wilmington

14   Trust -- duplicative of the Wilmington Trust indenture claim.

15   They didn't object to that.  Their third claim, claim 63413,

16   was objected to on the twenty-seventh omnibus objection as

17   duplicative of the Bank of New York Mellon indenture trustee

18   claim.

19          The correspondence that we received from Metzler was

20   that they had no record of claims -- that them filing claim

21   63413 at all and thus they had to object to its expungement.

22   We then sent Metzler a copy of that claim, 63413, which is very

23   clearly signed by someone on behalf of Metzler and stamped by

24   them.  And then, in subsequent e-mail correspondence with them,

25   provided the information related to -- explaining what the

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 49

1    claim is, giving them the Bank of New York Mellon information,

2    telling them how they can get the claim.  We, in fact, sent

3    them the claim, the objection -- the full copy of the

4    objection, and the surviving Bank of New York Mellon claim.

5    And it is our understanding that they are persisting with their

6    objection.  Again, we've checked this particular claim.  We've

7    checked the security number, the CUSIP number.  It's on the

8    Bank of New York Mellon claim.  So we -- we did check with Bank

9    of New York Mellon or raised this claim with them and we have

10   not -- they have not told us that the claim is not on the Bank

11   of New York Mellon claim.

12           That was a poorly constructed sentence.

13           THE COURT:  Is it on the Bank of New York Mellon

14   global claim?

15           MS. ECKOLS:  Yes.

16           THE COURT:  Fine.  On that basis, the Metzler informal

17   objection, which is not on the docket but which has been

18   described, is overruled and I'll repeat what I said earlier.

19   The twenty-seventh omnibus objection to claims is granted.

20           MS. ECKOLS:  And, Your Honor, at this point, we

21   actually have covered all the agenda items that are going

22   forward today and thus are just left with the outstanding issue

23   of Wilmington Trust and Bank of New York Mellon.

24           THE COURT:  Okay.  I guess one of the questions that I

25   have about that is whether, as suggested by counsel for Bank of

Page 50

1    New York Mellon, this is a matter that can be productively

2    resolved through drafting or whether or not this is something

3    that requires guidance from the Court if we can effectively

4    work on an order.

5         MS. JOHNSTON:  Your Honor, this is Susan Johnston on

6    behalf of Wilmington Trust again.  May I raise one small issue

7    before I answer that, before I get to that?

8         THE COURT:  Sure.

9         MS. JOHNSTON:  It occurred to me, in the course of the

10   prior discussion, that it might actually be fairly easy for

11   Epiq to search for all claims that had been denominated secured

12   or priority with the CUSIP numbers.  That is, it might not

13   require an attorney examination because if they -- if the

14   claimants, in fact, denominated their claims as secured or

15   priority, they would have checked the box in the front of the

16   claim number -- the claim -- proof of claim and Epiq would have

17   that registered in their database.  So that, I don't exactly

18   know how difficult it is for Epiq to do that but it's got to be

19   a lot easier than having lawyers do it.  If Your Honor was

20   willing to cons -- in other words, if the issue was

21   administrative inconvenience for the debtor and if that was a

22   relatively easy thing to do, that might be one way of dealing

23   with it.  And I'll put that aside -- that thought aside.

24   Perhaps if the debtor wants to think about it and address the

25   language issue.

08-13555-mg    Doc 10653    Filed 08/05/10    Entered 08/06/10 10:04:30    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 51 of 59

                                                                    Page 51

1          We had proposed language in our objection that was

2     intended to deal with the nonindenture trustee claim issue.

3     And that language included a reference to priority that is it

4     indicated that their objection was not intended to expunge any

5     claim that was -- that did not arise under the indenture and

6     have the same priority that the indenture had.  The debtors'

7     response to that was that it was unworkable because it left

8     them not knowing what claims survived and what claims were

9     expunged.

10         It seems to me that if the debtor is now going to

11    actually look at the claims to exclude all nonindenture claims,

12    and we're only left with the priority issue, that it would be

13    easier either to do the Epiq search that I just suggested or

14    have Your Honor rule on whether or not you agreed with our

15    interpretation of that initial proof of claim.

16         My suspicion is that there are not many of them

17    because only two creditors filed responses to these multiple

18    omnibus objections and that an Epiq search might reveal that

19    there are none other than the two that were identified.  I

20    don't know.  But that, as a practical matter, my thought was

21    that the Epiq search might be the best way to do it if it can

22    be done feasibly.

23         THE COURT:  Well, that's a question that I think maybe

24    can be answered but it doesn't really get to the fundamental

25    issue that's presented by the Wilmington Trust and Bank of New

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 52 of 59

Page 52

1    York Mellon objections which, as it relates to these omnibus

2    objections, may be manageable.  But in terms of further claims

3    management issues, may raise other questions as to adequacy of

4    notice in various omnibus objections that have been lodged to

5    date or that may be lodged in the future.

6         I have some thoughts about it.  One thought is that

7    notice that a claim is going to be expunged is sufficient

8    notice, assuming that we're talking about people who can read

9    and write English, that they would lose their rights as an

10   individual claimant, whatever they may be, as reflected in

11   their individual proofs of claim unless action is taken.  That

12   notice goes to the priority of the claim being asserted.

13        On the other hand, I also recognize, if we can parse

14   this very closely, that the actual notice given was notice that

15   claims duplicative of the indenture trustee claims were the

16   claims that were going to be expunged.  Because there's a lack

17   of pure symmetry between the indenture trustee claims and those

18   individual claims asserting a priority at a higher level,

19   whether it's a secured claim or an administrative claim or some

20   kind of priority claim, in fact, some claimant might conclude,

21   simply by doing overlapping Venn diagrams, that, well, maybe I

22   still have an ongoing priority claim because it's not precisely

23   duplicative.

24        So I think that what we have here is an administrative

25   problem regardless of language used.  For the avoidance of

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 53 of 59

Page 53

1   doubt, as lawyers like to say, I think it would be a good idea

2   to give additional notice to any of the parties who are the

3   subject of the current omnibus motions relating to duplicative

4   claims that the duplicative claim objection extends to priority

5   differences between the individual claim and the global proofs

6   of claim filed by Bank of New York Mellon and Wilmington Trust

7   Company.

8          In saying that, I do not mean to suggest that I agree

9   that the notice given was inadequate.  I think the notice given

10  was adequate for reasons that I've said already in the record.

11  But on the theory that more notice is never a bad thing, and in

12  the hope that the administrative burden is relatively moderate,

13  I think it's probably a good thing to do in order to avoid what

14  may turn out to be problems down the road of somebody coming in

15  and saying I didn't actually have notice that the priority of

16  my claim is going to be affected by this.

17         Now, those are my comments.  It's not exactly a ruling

18  as much as a statement of my current mental perception of this

19  problem.  On the one hand, I would like this to be as efficient

20  a process as possible and one that minimizes unnecessary

21  administrative expense to the estate.  On the other hand, I'm

22  actually benefitted by the comments that were made earlier by

23  the pro se claimant who was on the phone and who was expressing

24  some confusion and concern.  Mr. Zemenak, who spoke as a

25  layman, indicated that he wasn't even sure what Wilmington

08-13555-mg   Doc 10653   Filed 08/05/10   Entered 08/06/10 10:04:30   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 54 of 59

Page 54

1   Trust Company was doing in respect of his security claims.  And

2   that, to me, suggests that there may be other confusion out

3   there.  Because it is possible for a thoughtful person, and

4   this is a little bit like taking a College Board exam.  Every

5   once in a while, you look at a couple of answers and you can

6   overlogic it.  And if you overlogic the answer to a logic

7   question, you can say, well, my claim maybe isn't expunged

8   because it actually isn't duplicative because it's claiming a

9   higher priority.  To the extent there's anyone out there that

10  smart, we should give them actual notice that the claim is

11  going to be expunged.

12         MS. JOHNSTON:  And, Your Honor, it does seem that that

13  notice could be limited to the people who identified their

14  claims as priority or secured.  There's no --

15         THE COURT:  Absolutely.  This is not intended to be

16  global matters.  This is only intended to be particularized

17  notice to those claimants who have asserted priority status or

18  a status of the amount of a general unsecured creditor.

19         Now, in doing this, I don't mean to invite what

20  amounts to the next wave of objections to claims which I'm

21  assuming will be to those unsecured claims that hadn't properly

22  classified themselves as priority claims or claims in a higher

23  category of distribution status.  This is intended, however, to

24  be limited to duplicative claims so they know that they're gone

25  for all purposes and otherwise covered by the indenture trustee

Page 55

1    claims.  I'm not suggesting that we take out of order a series

2    of claims objections that may be due in the future.

3           MS. ECKOLS:  And, Your Honor, in the future, we

4    actually will be filing more duplicative and indenture trustee

5    objections.  So this is incredibly instructive.

6           The debtors will undertake the renoticing that you

7    suggested with respect to claimants on omnibus objections 18

8    through 27 to assert a different priority status than the

9    Wilmington Trust claim using the Epiq methodology that

10   Wilmington Trust suggested.

11          THE COURT:  That's fine.  Is there anything more with

12   respect to the claims docket?

13          MS. ECKOLS:  Not that I'm aware of, sir.

14          THE COURT:  Fine.  I understand that there has been a

15   request for a chambers conference as it relates to the fee

16   committee.  And we're going to clear the courtroom -- we're

17   going to use the courtroom as the place for that chambers

18   conference to take place because I understand some people are

19   going to want to dial in and the telephone system in the

20   courtroom is best.  So we're going to take a -- call it a ten-

21   minute recess.  People who are not to remain for purposes of

22   that chambers conference are excused.  We'll also clear a line

23   and people who need to call in solely for the chambers

24   conference will have an opportunity to do that.  So we'll take

25   a ten-minute recess.  We're adjourned till then.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 56

1          (Whereupon these proceedings were concluded at 11:16 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 57

```
 1                          I N D E X

 2

 3                        R U L I N G S

 4    DESCRIPTION                                  PAGE      LINE

 5    Debtors' seventeenth omnibus objection to     31        9

 6    claims sustained

 7    Ronald Zemenak's objection to debtors'        39        25

 8    eighteenth omnibus objection to claims

 9    overruled; debtors' eighteenth omnibus        40        12

10    objection to claims sustained

11    Debtors' nineteenth omnibus objection to      42        14

12    claims sustained

13    Debtors' twentieth omnibus objection to       42        21

14    claims sustained

15    Debtors' twenty-first omnibus objection to    43         7

16    claims sustained

17    Debtors' twenty-second omnibus objection to   43        16

18    claims sustained

19    Debtors' twenty-third omnibus objection to    43        24

20    claims sustained

21    Debtors' twenty-fourth omnibus objection to   44         7

22    claims sustained

23    Debtors' twenty-fifth omnibus objection to    46         3

24    claims sustained

25
```

```
1                      I N D E X, cont'd

2

3                      R U L I N G S

4    DESCRIPTION                              PAGE    LINE

5    Debtors' twenty-sixth omnibus objection to    46      11

6    claims sustained

7    Debtors' twenty-seventh omnibus objection to  49      20

8    claims sustained

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 59

1                    C E R T I F I C A T I O N

2

3      I, Lisa Bar-Leib, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5

6      _____

7      LISA BAR-LEIB

8      AAERT Certified Electronic Transcriber (CET**D-486)

9

10     Veritext

11     200 Old Country Road

12     Suite 580

13     Mineola, NY 11501

14

15     Date:  August 5, 2010

16

17

18

19

20

21

22

23

24

25