**EXHIBIT B**

UNITED STATES OF AMERICA
before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
RELEASE NO. 58166 / July 15, 2008

EMERGENCY ORDER PURSUANT TO SECTION 12(k)(2) OF THE SECURITIES EXCHANGE ACT OF 1934 TAKING TEMPORARY ACTION TO RESPOND TO MARKET DEVELOPMENTS

False rumors can lead to a loss of confidence in our markets. Such loss of confidence can lead to panic selling, which may be further exacerbated by "naked" short selling. As a result, the prices of securities may artificially and unnecessarily decline well below the price level that would have resulted from the normal price discovery process. If significant financial institutions are involved, this chain of events can threaten disruption of our markets.

The events preceding the sale of The Bear Stearns Companies Inc. are illustrative of the market impact of rumors. During the week of March 10, 2008, rumors spread about liquidity problems at Bear Stearns, which eroded investor confidence in the firm. As Bear Stearns' stock price fell, its counterparties became concerned, and a crisis of confidence occurred late in the week. In particular, counterparties to Bear Stearns were unwilling to make secured funding available to Bear Stearns on customary terms. In light of the potentially systemic consequences of a failure of Bear Stearns, the Federal Reserve took emergency action.

The Commission has taken a series of actions to address concerns about rumors. For example, in April, 2008, we charged Paul S. Berliner, a trader, with securities fraud and market manipulation for intentionally disseminating a false rumor concerning The Blackstone Group's acquisition of Alliance Data Systems Corp ("ADS"). The

1

Commission alleged that this false rumor caused the price of ADS stock to plummet, and that Berliner profited by short selling ADS stock and covering those sales as the false rumor caused the price of ADS stock to fall. See http://www.sec.gov/litigation/litreleases/2008/lr20537.htm.

As another example, on July 13, 2008, the Commission announced that the SEC and other securities regulators would immediately conduct examinations aimed at the prevention of the intentional spreading of false information intended to manipulate securities prices. The examinations will be conducted by the SEC's Office of Compliance Inspections and Examinations, as well as the Financial Industry Regulatory Authority, Inc. and New York Stock Exchange Regulation, Inc. See http://www.sec.gov/news/press/2008/2008-140.htm.

We intend these and similar actions to provide powerful disincentives to those who might otherwise engage in illegal market manipulation through the dissemination of false rumors and thereby over time to diminish the effect of these activities on our markets. In recent days, however, false rumors have continued to threaten significant market disruption. For example, press reports have described rumors regarding the unwillingness of key counterparties to deal with certain financial institutions. There also have been rumors that financial institutions are facing liquidity problems.

As a result of these recent developments, the Commission has concluded that there now exists a substantial threat of sudden and excessive fluctuations of securities prices generally and disruption in the functioning of the securities markets that could threaten fair and orderly markets. Based on this conclusion, the Commission is

exercising its powers under Section 12(k)(2) of the Securities Exchange Act of 1934.[1] Pursuant to Section 12(k)(2), in appropriate circumstances the Commission may issue summarily an order to alter, supplement, suspend, or impose requirements or restrictions with respect to matters or actions subject to regulation by the Commission.

In these unusual and extraordinary circumstances, we have concluded that requiring all persons to borrow or arrange to borrow the securities identified in Appendix A prior to effecting an order for a short sale of those securities is in the public interest and for the protection of investors to maintain fair and orderly securities markets, and to prevent substantial disruption in the securities markets. This emergency requirement will eliminate any possibility that naked short selling may contribute to the disruption of markets in these securities. We described in the releases in which we proposed and adopted Regulation SHO the bases for the current requirements Regulation SHO imposes. We believe, however, that the unusual circumstances we now confront require the temporarily enhanced requirements we are imposing today.

IT IS ORDERED that, pursuant to our Section 12(k)(2) powers, in connection with transactions in the publicly traded securities of substantial financial firms, which entities are identified in Appendix A, no person may effect a short sale[2] in these securities using the means or instrumentalities of interstate commerce unless such person or its agent has borrowed or arranged to borrow the security or otherwise has the security

---

[1] This finding of an "emergency" is solely for purposes of Section 12(k)(2) of the Exchange Act and is not intended to have any other effect or meaning or to confer any right or impose any obligation other than set forth in this Order.

[2] The definition of "short sale" shall be the same definition used in Rule 200(a) of Regulation SHO and the requirements for marking orders "long" or "short" shall be the same as provided in Regulation SHO.

3

available to borrow in its inventory prior to effecting such short sale and delivers the security on settlement date.[3]

In order to allow market participants time to adjust their operations to implement the enhanced requirements, this Order shall take effect at 12:01 a.m. EDT on Monday, July 21, 2008. This Order shall terminate at 11:59 p.m. EDT on Tuesday, July 29, 2008 unless further extended by the Commission.

By the Commission.

Florence E. Harmon
Acting Secretary

---

[3] Short sales to be effected as a result of a put options exercise are subject to this Order. In addition, we note that short sales used to hedge would also be subject to this Order.

4

## Appendix A

| Company | Ticker Symbol(s) |
|---|---|
| BNP Paribas Securities Corp. | BNPQF or BNPQY |
| Bank of America Corporation | BAC |
| Barclays PLC | BCS |
| Citigroup Inc. | C |
| Credit Suisse Group | CS |
| Daiwa Securities Group Inc. | DSECY |
| Deutsche Bank Group AG | DB |
| Allianz SE | AZ |
| Goldman, Sachs Group Inc | GS |
| Royal Bank ADS | RBS |
| HSBC Holdings PLC ADS | HBC and HSI |
| J. P. Morgan Chase & Co. | JPM |
| Lehman Brothers Holdings Inc. | LEH |
| Merrill Lynch & Co., Inc. | MER |
| Mizuho Financial Group, Inc. | MFG |
| Morgan Stanley | MS |
| UBS AG | UBS |
| Freddie Mac | FRE |
| Fannie Mae | FNM |