JONES DAY
David L. Carden
Robert W. Gaffey
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

-and-

JONES DAY
Robert L. Thomson
29th Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: (852) 2526-6895
Facsimile: (852) 2868-5871

Special Counsel to Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------------x

**FIFTH INTERIM APPLICATION OF JONES DAY,**
**SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION,**
**SEEKING ALLOWANCE AND PAYMENT OF INTERIM COMPENSATION AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

| | |
|---|---|
| Name of Applicant: | Jones Day |
| Authorized to Provide Professional Services to: | Lehman Brothers Holdings Inc. and its affiliated debtors |
| Date of Retention Order: | February 25, 2009 (effective *nunc pro tunc* to the Engagement Dates, as defined in the Retention Application (as such term is defined below))[1] |

---

[1] Jones Day's retention was subsequently expanded by various supplemental retention orders entered by the Court.

Name of Applicant:                                                    <u>Jones Day</u>

Period for Which Compensation and Reimbursement are          <u>February 1, 2010 to</u>
Sought                                                        <u>May 31, 2010</u>

Amount of Professional Fees Sought as Actual,                <u>$12,925,764.10</u>
Reasonable, and Necessary:

Amount of Expense Reimbursement Sought as Actual,            <u>$361,198.39</u>
Reasonable, and Necessary:

Total Amount Sought:                                         <u>$13,286,962.49</u>

This is an/a:        <u>X</u> Interim      ___ Final Application.

Total Amount Received for this Application:                   <u>$10,733,724.69</u>
Total Amount Received for All Prior Applications:            <u>$22,005,726.21</u>
Aggregate Amount Paid to Date:                              <u>$32,739,450.90</u>

**<u>Total Compensation and Expenses</u>**
**<u>Previously Requested and Awarded:</u>**

| Dated | Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees[2] | Approved Expenses |
|-------|-------|----------------|----------------|--------------------|------------------|--------------------|
| 04/09/09 | 04/09/09 | 09/18/08 – 01/31/09 | $1,258,056.00 | $10,425.76 | $1,258,056.00 | $10,425.76 |
| 08/14/09 | 08/14/09 | 02/01/09 – 05/31/09 | $4,119,794.00 | $130,667.42 | $4,095,167.00 | $127,483.94 |
| 12/15/09 | 12/15/09 | 06/01/09 – 09/30/09 | $8,787,718.20 | $413,222.52 | $8,613,937.88 | $305,416.91 |
| 05/10/10 | 05/10/10 | 10/01/09 – 01/31/10 | $9,143,140.60 | $266,470.81 | Not yet determined. | Not yet determined. |

---

[2] The "Approved Fees" do not include certain of those fees ("<u>Disputed Fees</u>") in respect of which the Fee Committee (as defined below) has raised certain objections, which objections are disputed by Jones Day. Jones Day and the Fee Committee have agreed to defer presenting the Disputed Fees to this Court for ruling until the hearing on Jones Day's final fee application in these cases.

## COMPENSATION PERIOD

## FEBRUARY 1, 2010 THROUGH MAY 31, 2010

| Name | Year | Rate | Compensation Period Hours | Compensation Period Fees |
|------|------|------|---------------------------|--------------------------|
| **Partner** | | | | |
| AVIVA WARTER SISITSKY | 1997 | 700 | 831.00 | 581,700.00 |
| BARNABY STUECK | 2001 | 1075 | 12.20 | 13,115.00 |
| BRETT BARRAGATE | 1996 | 725 | 39.60 | 28,710.00 |
| CARL BLACK | 1998 | 650 | 294.10 | 191,165.00 |
| CHRISTINE KIM | 1989 | 925 | 539.80 | 499,315.00 |
| CHRISTOPHER AHERN | 1992 | 675 | 11.10 | 7,457.50 |
| CHUNG-PING LIU | 1996 | 450 | 55.90 | 25,155.00 |
| CORINNE BALL | 1979 | 950 | 265.20 | 251,940.00 |
| DAVID CARDEN | 1976 | 925 | 445.50 | 412,087.50 |
| DAVID HEIMAN | 1971 | 900 | 63.00 | 56,700.00 |
| DAVID LONGSTAFF | 1985 | 750 | 2.00 | 1,500.00 |
| EDWARD NALBANTIAN | 1983 | 880 | 116.80 | 102,784.00 |
| ERIC SEDLAK | 1984 | 675 | 56.10 | 37,867.50 |
| GLENN ARDEN | 1986 | 775 | 77.40 | 59,985.00 |
| GREGORY GORDON | 1980 | 825 | 25.20 | 20,790.00 |
| HERMAN YIP | 1997 | 700 | 29.80 | 20,860.00 |
| IAIN SEOW | 1993 | 700 | 15.90 | 11,130.00 |
| JANE RUE WITTSTEIN | 1985 | 750 | 113.90 | 85,425.00 |
| JAYANT TAMBE | 1992 | 775 | 623.60 | 483,290.00 |
| JEREMY COLE | 1999 | 550 | 12.80 | 7,040.00 |
| JOEL TELPNER | 1984 | 825 | 341.10 | 281,407.50 |
| JOHN KANE | 1991 | 725 | 74.00 | 53,650.00 |
| KATHERINE U | 1991 | 700 | 1.00 | 700.00 |
| LEE RUSSO | 1980 | 700 | 20.10 | 14,070.00 |
| LISA LAUKITIS | 1999 | 725 | 34.50 | 25,012.50 |
| MARIANNE CHAO | 1989 | 475 | 14.10 | 6,697.50 |
| MARK SISITSKY | 1971 | 800 | 29.10 | 23,280.00 |
| PETER BENVENUTTI | 1974 | 800 | 183.60 | 146,880.00 |
| PHILIP HOSER | 1982 | 675 | 54.60 | 36,855.00 |
| RIKA SATO | 1992 | 600 | 14.80 | 8,880.00 |
| ROBERT GAFFEY | 1982 | 825 | 833.20 | 687,390.00 |
| ROBERT MICHELETTO | 1988 | 800 | 218.00 | 174,400.00 |
| RONALD GROSS | 1986 | 775 | 40.50 | 31,387.50 |
| SEVAN OGULLUK | 1999 | 650 | 329.90 | 214,435.00 |

| Name | Year | Rate | Compensation Period Hours | Compensation Period Fees |
|---|---|---|---|---|
| SIMON POWELL | 1989 | 850 | 135.50 | 115,175.00 |
| SION RICHARDS | 1996 | 880 | 0.50 | 440.00 |
| STEPHEN PEARSON | 1991 | 775 | 14.30 | 11,082.50 |
| THOMAS HOWLEY | 1995 | 650 | 164.70 | 107,055.00 |
| TODD GEREMIA | 1999 | 700 | 118.30 | 82,810.00 |
| TOM SMITH | 1972 | 850 | 0.30 | 255.00 |
| TONI-ANN CITERA | 1996 | 725 | 183.40 | 132,965.00 |
| TRACY SCHAFFER | 2001 | 650 | 631.00 | 410,150.00 |
| TRACY STRATFORD | 1998 | 525 | 3.40 | 1,785.00 |
| WEYINMI POPO | 1996 | 575 | 12.00 | 6,900.00 |
| WILLIAM BRYSON | 1985 | 575 | 33.30 | 19,147.50 |
| WILLIAM HINE | 1996 | 700 | 738.00 | 516,600.00 |
| YUICHIRO MORI | 1993 | 600 | 13.30 | 7,980.00 |
| **Partner Total:** | | | **7,867.40** | **6,015,406.50** |
| | | | | |
| **Counsel** | | | | |
| JOSEPH WITALEC | 1994 | 575 | 31.00 | 17,825.00 |
| MARLA BERGMAN | 1988 | 575 | 26.60 | 15,295.00 |
| PETER CROSBY IV | 1984 | 575 | 156.80 | 90,160.00 |
| SCOTT FRIEDMAN | 1998 | 625 | 107.90 | 67,437.50 |
| **Counsel Total:** | | | **322.30** | **190,717.50** |
| | | | | |
| **Of Counsel** | | | | |
| AMY KHO | 2002 | 840 | 202.00 | 169,680.00 |
| BRETT BERLIN | 1996 | 575 | 0.70 | 402.50 |
| ELEANOR LAM | 1994 | 550 | 11.30 | 6,215.00 |
| ELIZABETH TERRITT | 1998 | 840 | 65.60 | 57,115.50 |
| FAY NG | 1997 | 600 | 256.90 | 154,140.00 |
| ROBERT HAMILTON | 1984 | 700 | 17.00 | 11,900.00 |
| STEVEN FLEMING | 1994 | 550 | 93.50 | 51,425.00 |
| **Of Counsel Total:** | | | **647.00** | **450,878.00** |
| | | | | |
| **Associate** | | | | |
| ABHISHEK BAPNA | 2009 | 325 | 144.20 | 46,865.00 |
| ADAM BLOOM | 2008 | 350 | 235.10 | 82,285.00 |
| ALEXANDER MCBRIDE | 2007 | 375 | 325.40 | 122,025.00 |
| ALEXANDER VAN VOORHEES | 2006 | 400 | 49.60 | 19,840.00 |
| ARTHUR MARGULIES | 2004 | 500 | 50.60 | 25,300.00 |
| BENJAMIN GROSSMAN | 2006 | 400 | 55.80 | 22,320.00 |

| **Name** | **Year** | **Rate** | **Compensation Period Hours** | **Compensation Period Fees** |
|---|---|---|---|---|
| BENJAMIN ROSENBLUM | 2005 | 550 | 491.20 | 270,160.00 |
| BRANDON MORRIS | 2009 | 325 | 98.20 | 31,915.00 |
| BRENDAN FYFE | 2007 | 375 | 4.50 | 1,687.50 |
| BRIDGET CRAWFORD | 2009 | 350 | 809.40 | 283,290.00 |
| BRONSON BIGELOW | 2004 | 500 | 64.30 | 32,150.00 |
| CHIAHENG SEETOO | 2007 | 225 | 6.50 | 1,462.50 |
| CHRISTINE HOHL | N/A | 224 | 74.90 | 16,781.60 |
| CLAIRE WELLS | 2009 | 325 | 166.00 | 53,950.00 |
| DANIEL CULHANE | 2009 | 325 | 30.20 | 9,815.00 |
| DANIEL SYPHARD | 2005 | 375 | 2.50 | 937.50 |
| DANIEL TRAVERS | 2007 | 400 | 25.90 | 10,360.00 |
| DANNY KAN | 2009 | 275 | 5.30 | 1,457.50 |
| DAVID BECK | 2000 | 500 | 0.80 | 400.00 |
| DAVID JOHNSTON | 2007 | 540 | 6.50 | 3,510.00 |
| DAVID MARKS | 2009 | 325 | 55.90 | 18,167.50 |
| DEBRA SIMPSON | 2000 | 550 | 20.70 | 11,385.00 |
| DEREK SUN | 2006 | 275 | 16.90 | 4,647.50 |
| ELIZABETH GREENBERG | 2009 | 325 | 180.30 | 58,597.50 |
| EMILY POSNER | 2008 | 350 | 27.30 | 9,555.00 |
| EMILY ROMANINSKY | 2004 | 475 | 32.70 | 15,532.50 |
| EMMA SHELSTON | 2010 | 250 | 21.30 | 5,325.00 |
| ERI UERKWITZ | 2007 | 375 | 85.00 | 31,875.00 |
| ERIC STEPHENS | 2009 | 325 | 756.50 | 245,862.50 |
| GEORGE HOWARD | 2008 | 300 | 28.00 | 8,400.00 |
| GEORGE SPENCER | 2008 | 375 | 498.00 | 186,750.00 |
| HABEN GOITOM | 2008 | 425 | 17.40 | 7,395.00 |
| HANNAH MILLS | 2009 | 275 | 16.00 | 4,400.00 |
| HIROKO HOSONO | 1998 | 500 | 2.70 | 1,350.00 |
| IAN GRIMM | 2001 | 550 | 0.30 | 165.00 |
| JAMES DOUGLAS | 2007 | 275 | 1.20 | 330.00 |
| JAMES GOLDFARB | 2001 | 550 | 363.30 | 199,815.00 |
| JAMES VEVERKA | 2006 | 400 | 73.00 | 29,200.00 |
| JASON COVER | 2006 | 500 | 18.30 | 9,150.00 |
| JEFFREY JONES | 2009 | 325 | 8.20 | 2,665.00 |
| JENNIFER DEL MEDICO | 2006 | 450 | 513.90 | 231,255.00 |
| JENNIFER SEIDMAN | 2009 | 225 | 6.50 | 1,462.50 |
| JESSICA LIN | 2004 | 350 | 1.00 | 350.00 |
| JOHN MCMAHON | 2008 | 350 | 471.30 | 164,955.00 |
| JONATHAN FELCE | 2006 | 650 | 25.40 | 16,510.00 |

| **Name** | **Year** | **Rate** | **Compensation Period Hours** | **Compensation Period Fees** |
|---|---|---|---|---|
| JORDAN SCHWARTZ | 2009 | 325 | 126.20 | 41,015.00 |
| JOSEPH TILLER | 2006 | 450 | 14.10 | 6,345.00 |
| JUSTINA CHAN | 1996 | 525 | 323.40 | 169,785.00 |
| KAMILLA MAMEDOVA | 2008 | 350 | 181.20 | 63,420.00 |
| KAREN PHANG | 2006 | 375 | 2.50 | 937.50 |
| KATHLEEN CHOI | 2008 | 350 | 37.70 | 13,195.00 |
| KELLY CARRERO | 2004 | 500 | 956.50 | 478,250.00 |
| KELLY MARINO | 2006 | 325 | 12.50 | 4,062.50 |
| LAUREN BUONOME | 2009 | 325 | 192.40 | 62,530.00 |
| LEE POLLACK | 2006 | 400 | 289.20 | 115,680.00 |
| MARC SKAPOF | 2000 | 600 | 4.50 | 2,700.00 |
| MASAAKI ITO | 2006 | 325 | 2.30 | 747.50 |
| MICHAEL DAILEY | 2009 | 325 | 741.30 | 240,922.50 |
| MICHAEL FLUHR | 2006 | 400 | 18.80 | 7,520.00 |
| MICHAEL SILBERFARB | 2005 | 475 | 83.10 | 39,472.50 |
| MICHAEL THAYER | 2009 | 325 | 221.80 | 72,085.00 |
| MICHELLE POULOS | 2006 | 400 | 33.10 | 13,240.00 |
| MING WEI LO | 1997 | 375 | 58.10 | 21,787.50 |
| MIRIAM REZNIK | 2009 | 350 | 190.50 | 66,675.00 |
| MIYUKA NISHI | 1997 | 530 | 12.20 | 6,466.00 |
| NATHAN LEBIODA | 2006 | 500 | 156.40 | 78,200.00 |
| NICHOLAS AHUJA | 2009 | 325 | 7.00 | 2,275.00 |
| NICHOLAS DAVIES | 2007 | 540 | 28.30 | 15,282.00 |
| NICHOLAS KAMPHAUS | 2008 | 425 | 40.90 | 17,382.50 |
| NIDHI YADAVA | 2008 | 350 | 486.30 | 170,205.00 |
| OWEN THOMAS | 2009 | 275 | 9.00 | 2,475.00 |
| PAUL GREEN | 2008 | 350 | 609.40 | 213,290.00 |
| PETER BRABANT | 2004 | 375 | 162.70 | 61,012.50 |
| PETER WILKINSON | 2007 | 430 | 453.90 | 195,177.00 |
| RAJEEV MUTTREJA | 2005 | 350 | 140.70 | 49,245.00 |
| RICHARD GALATI | 2009 | 325 | 66.90 | 21,742.50 |
| ROSS BARR | 2004 | 625 | 24.90 | 15,562.50 |
| RUSSELL REITER | 2002 | 550 | 6.10 | 3,355.00 |
| SARAH LIEBER | 2003 | 500 | 392.70 | 196,350.00 |
| SATARUPA CHAKRAVORTTY | 2006 | 565 | 26.80 | 15,142.00 |
| SATOSHI YAMABE | 2009 | 270 | 34.70 | 9,369.00 |
| SCOTT GRIFFIN | 2000 | 675 | 195.30 | 131,827.50 |
| SO LYN LEE | 2009 | 325 | 56.00 | 18,200.00 |
| SONIA SUN | 2004 | 350 | 6.00 | 2,100.00 |

| **Name** | **Year** | **Rate** | **Compensation Period Hours** | **Compensation Period Fees** |
|---|---|---|---|---|
| STELA TIPI | 2005 | 475 | 30.40 | 14,440.00 |
| SUSAN TURK | 2008 | 350 | 751.20 | 262,920.00 |
| SUZANNE GRANDT | N/A | 325 | 11.00 | 3,575.00 |
| TAKAFUMI TSURUTA | 2008 | 285 | 1.50 | 427.50 |
| THOMAS WILSON | 2003 | 475 | 25.90 | 12,302.50 |
| TIMOTHY HOFFMANN | 2003 | 525 | 2.70 | 1,417.50 |
| VICTORIA FERGUSON | 2004 | 680 | 1.00 | 680.00 |
| XOCHITL STROHBEHN | 2009 | 325 | 671.20 | 218,140.00 |
| YASUNOBU TAKATAMA | 2007 | 300 | 20.00 | 6,000.00 |
| YUSUKE OHIRA | 2008 | 285 | 13.50 | 3,847.50 |
| **Associate Total** | | | **13,821.80** | **5,470,390.10** |
| | | | | |
| **Senior Staff Attorney** | | | | |
| JENNY LEE | 1985 | 550 | 13.10 | 7,205.00 |
| **Senior Staff Attorney Total** | | | **13.10** | **7,205.00** |
| | | | | |
| **Staff Attorney** | | | | |
| CINDY CHIEN | 2009 | 200 | 108.20 | 21,640.00 |
| LYNNE FISCHER | 1996 | 275 | 383.40 | 105,435.00 |
| **Staff Attorney Total** | | | **491.60** | **127,075.00** |
| | | | | |
| **Paraprofessional** | | | | |
| ALEXANDER SALEMMO | N/A | 175 | 0.50 | 87.50 |
| ALICIA FARRINGTON | N/A | 275 | 9.10 | 2,502.50 |
| ALINA KAYE | N/A | 110 | 5.00 | 550.00 |
| ALLISON PETRONE | N/A | 250 | 11.00 | 2,750.00 |
| ANDREW SAMUELSON | N/A | 250 | 68.90 | 17,225.00 |
| AURORE VANDE-KERCHOVE | N/A | 170 | 8.00 | 1,360.00 |
| BRETT STONE | N/A | 275 | 43.70 | 12,017.50 |
| BRIANA HULET | N/A | 325 | 27.90 | 9,067.50 |
| CARISSA CHAN | N/A | 250 | 17.50 | 4,375.00 |
| CHRISTOPHER CHUNG | N/A | 250 | 5.00 | 1,250.00 |
| CRYSTAL ANN GOODSEIT | N/A | 175 | 9.00 | 1,575.00 |
| DANIEL YI | N/A | 250 | 18.30 | 4,575.00 |
| DANIELLE CHERENCE | N/A | 250 | 2.00 | 500.00 |
| DENISE HIRTZEL | N/A | 275 | 8.50 | 2,337.50 |
| EDITH HO | N/A | 250 | 168.00 | 42,000.00 |
| ELIZABETH MASUHR | N/A | 250 | 394.40 | 98,600.00 |
| EVA LAM | N/A | 225 | 1.00 | 225.00 |

| **Name** | **Year** | **Rate** | **Compensation Period Hours** | **Compensation Period Fees** |
|---|---|---|---|---|
| HENRY HAWTHORNE | N/A | 110 | 1.50 | 165.00 |
| IVAN LAI | N/A | 275 | 18.00 | 4,950.00 |
| JANIS TREANOR | N/A | 275 | 83.70 | 23,017.50 |
| JI UNG KIM | N/A | 275 | 494.10 | 135,877.50 |
| JULIE CHU | N/A | 330 | 8.20 | 2,706.00 |
| KEVIN ENGLERT | N/A | 175 | 473.00 | 82,775.00 |
| KEVIN HAHM | N/A | 150 | 265.00 | 39,750.00 |
| LAURIE PAIGE BURNS | N/A | 275 | 29.60 | 8,140.00 |
| MARGOT BEACH | N/A | 250 | 5.90 | 1,475.00 |
| MARY HEMANN | N/A | 200 | 162.00 | 32,400.00 |
| NICOLA CRAVER | N/A | 175 | 0.50 | 87.50 |
| NUBIA CABRERA | N/A | 275 | 1.00 | 275.00 |
| RICHARD CERULLO | N/A | 175 | 40.50 | 7,087.50 |
| ROGER LOK | N/A | 180 | 31.70 | 5,706.00 |
| SHIRL WONG | N/A | 275 | 85.90 | 23,622.50 |
| SOPHIA BRYAN | N/A | 275 | 1.00 | 275.00 |
| STEPHEN FERRY | N/A | 250 | 362.20 | 90,550.00 |
| TIMOTHY SOLOMON | N/A | 250 | 15.50 | 3,875.00 |
| VICKY BANSON | N/A | 225 | 1.60 | 360.00 |
| **Paraprofessional Total** | | | **2,878.70** | **664,092.00** |
| **Grand Total** | | | **26,041.90** | **12,925,764.10** |

JONES DAY
David L. Carden
Robert W. Gaffey
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

-and-

JONES DAY
Robert L. Thomson
29th Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: (852) 2526-6895
Facsimile: (852) 2868-5871

Special Counsel to Debtors In Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-----------------------------------------------------------------------x

### FIFTH INTERIM APPLICATION OF JONES DAY, SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION, SEEKING ALLOWANCE AND PAYMENT OF INTERIM COMPENSATION AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Jones Day, special counsel for Lehman Brothers Holdings Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "Debtors"), submits this fifth interim application (the "Application") seeking (a) allowance of compensation for professional services rendered by Jones Day to the Debtors in the amount of $12,925,764.10, and (b) reimbursement of actual and necessary charges and disbursements

incurred by Jones Day in the rendition of required professional services on behalf of the Debtors in the amount of $361,198.39, in each case for the period from February 1, 2010 through May 31, 2010 (the "Compensation Period") pursuant to section 330(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), General Order M-151, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Local Guidelines"), and the Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(b) Establishing Procedures for Interim Monthly Compensation of Professionals, entered in these cases on June 25, 2009  (the "Interim Compensation Order").  In support of this Application, Jones Day respectfully represents as follows.

## Background

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and the other Debtors commenced with the United States Bankruptcy Court of the Southern District of New York (the "Court") voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.  On January 19, 2009, the U.S. Trustee appointed an examiner (the "Examiner") and on January 20, 2009, the Court approved the U.S. Trustee's appointment of the Examiner.

4.      On May 26, 2009, the Court appointed a fee committee (the "Fee Committee"), and approved a protocol to govern the review and payment of fees and reimbursement of expenses of professionals retained by the Debtors' estates (the "Fee Protocol"). The Fee Committee was authorized to perform the duties described in the Fee Protocol, including, among others, implementing procedures to effectively monitor the fees of the Retained Professionals (as defined in the Fee Protocol) and reducing inefficiency by establishing measures to avoid duplication of effort, overstaffing, the rendering of unnecessary services, and the incurrence of excessive or inappropriate expenses by Retained Professionals.  Since its appointment, the Fee Committee has intermittently issued guidelines with respect to the fees and expenses of the Retained Professionals (the "Fee Committee Guidelines", together with the UST Guidelines, the Local Guidelines and the Interim Compensation Order, the "Guidelines").

**Jurisdiction and Venue**

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409.

## **Relief Requested**

6.      Pursuant to this Application, Jones Day seeks allowance of the following: (a) compensation for professional services rendered during the Compensation Period in the aggregate amount of $12,925,764.10; and (b) reimbursement of expenses incurred in connection with such services in the aggregate amount of $361,198.39.

7.      During the Compensation Period, Jones Day attorneys and paraprofessionals expended a total of 26,041.90 hours for which compensation is requested.

8.      Prefixed to this Application is the cover sheet required by the UST Guidelines, which includes a schedule setting forth the names of all Jones Day professionals and paraprofessionals who have performed services for which compensation is sought, the person's position in the firm, and the year in which each attorney was first admitted to practice law.  In addition, the schedule sets forth for each person (a) the hourly rate during the Compensation Period, (b) the total hours billed for which compensation is sought, and (c) the total compensation for such hours.

9.      Annexed hereto as Exhibit "A" is a summary of the services rendered by Jones Day for which compensation is sought by project category.  Annexed hereto as Exhibit "B" is a listing of the detailed time entries of Jones Day professionals and paraprofessionals, by project category, with respect to the compensation requested. [3] Annexed hereto as Exhibit "C" is a summary of the types of expenses for which reimbursement is sought.  Annexed hereto as Exhibit "D" is a detailed itemization of such expenses.[3]  Annexed hereto as Exhibit "E" is the certification of Robert W. Gaffey with respect to the Application pursuant to the Local Guidelines.

---

[3]  Due to the voluminous nature of such documents, Jones Day's detailed time and expense records (Exhibits B and D hereto) are not being filed herewith, but, consistent with the Interim Compensation Order, are being provided to the Court and the Notice Parties (as defined herein).  The Notice Parties have previously received such records.

## Jones Day's Retention

10.     On February 4, 2009, the Debtors filed their Application Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules for Authorization to Employ and Retain Jones Day as Special Counsel to the Debtor, *nunc pro tunc* to the Engagement Dates (Docket No. 2725) (the "Retention Application").

11.     On February 25, 2009, the Court entered the Amended Order Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code Authorizing the Employment and Retention of Jones Day as Special Counsel to the Debtors, *nunc pro tunc* to the Engagement Dates (Docket No. 2925) (the "Retention Order").

12.     During the period of May 2009 through November 2009, the Court entered three further orders granting additional supplemental retention applications under which Jones Day's scope of retention was subsequently expanded.

13.     On January 25, 2010, the Debtors filed their Fourth Supplemental Application of the Debtors Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules for Authorization to Employ and Retain Jones Day as Special Counsel to the Debtors, *nunc pro tunc* to the Engagement Date (Docket No. 6750) (the "Fourth Supplemental Retention Application").

14.     On February 18, 2010, the Court entered an Order granting the Fourth Supplemental Retention Application (Docket No. 7166) (the "Fourth Supplemental Retention Order").  Under the Fourth Supplemental Retention Order, Jones Day's scope of retention was expanded to include representation of the Debtors in connection with (a) the workout and/or restructuring of certain loans or investments in the Debtors' loan portfolio or investment portfolio involving Greenbrier Minerals LLC and (b) such other matters relating to the loan portfolio or investment portfolio as requested by the Debtors and agreed to by Jones Day (collectively, the "Fourth Additional Matters").

15.     On May 17, 2010, the Debtors filed their Fifth Supplemental
Application of the Debtors Pursuant to Section 327(e) of the Bankruptcy Code and Rule 2014
of the Federal Rules of Bankruptcy Procedure for Authorization to Employ and Retain Jones
Day as Special Counsel to the Debtors, *nunc pro tunc* to the Engagement Dates (Docket No.
9065) (the "Fifth Supplemental Retention Application").

16.     On June 15, 2010, the Court entered an Order granting the Fifth
Supplemental Retention Application (Docket No. 9569) (the "Fifth Supplemental Retention
Order").  Under the Fifth Supplemental Retention Order, Jones Day's scope of retention was
expanded to include representation of the Debtors in connection with the joint representation
of the Debtors and the funds identified therein as defendants with respect to the Barclays
Fund Litigation (as defined therein).

**Payments Received by Jones Day in
Accordance with the Interim Compensation Order**

17.     On June 25, 2009, the Court entered the Interim Compensation Order,
which superseded the amended order dated March 13, 2009 in its entirety.  Pursuant to the
Interim Compensation Order, the Court established procedures for the Debtors' payment of
interim compensation and reimbursement of expenses of professionals retained in these
chapter 11 cases.

18.     During the Compensation Period, Jones Day served a notice of
monthly fee and expense invoice for each monthly period from February 1, 2010 through
May 31, 2010 (collectively, the "Monthly Statements").  Because no objections were filed to
any of the Monthly Statements the Debtors made the following payments to Jones Day in
respect of certain of the Monthly Statements, pursuant to the Interim Compensation Order:

| **Periods** | **Fees Requested** | **Expenses Requested** | **Payment Dates** | **Payment Amount[4]** |
|---|---|---|---|---|
| February 2010[5] | $2,749,674.10[6] | $100,616.28[6] | April 17, 2010<br>April 21, 2010 | $2,300,355.56<br>$1,675,534.95[7] |
| March 2010[5] | $3,315,931.90 | $85,097.51 | May 25, 2010 | $2,526,723.75 |
| April 2010[5] | $3,879,194.40 | $107,127.83 | June 18, 2010 | $3,210,483.35 |
| May 2010[5] | $3,066,798.70 | $89,500.07 | July 16, 2010 | $2,542,939.03[8] |

---

[4] Payments were made on account of 80% of fees and 100% of expenses requested.

[5] (A) Of the fees requested and rendered in the Monthly Statements of February 2010, March 2010 and April 2010, $2,189.00, $3,104.00 and $1,589.00 respectively have since been voluntarily written off in order to comply with the Fee Committee Guidelines.

(B) Of the expenses requested and rendered in the Monthly Statements of February 2010, March 2010 and April 2010, $10,685.19, $3,934.94 and $3,309.29 respectively have since been voluntarily written off in order to comply with the Fee Committee Guidelines.

[6] The February 2010 Monthly Statement included fees of $68,353.00 and expenses of $3,213.88 attributable to the Fourth Additional Matters rendered in December 2009 and January 2010. As the Fourth Supplemental Retention Application was not approved until February 18, 2010, Jones Day was not in a position to include such sums when it served the December 2009 and January 2010 Monthly Statements. As such, the above-mentioned fees and expenses, although contained in the February 2010 Monthly Statement served on March 30, 2010, were included in the Fourth Interim Application of Jones Day, Special Counsel to the Debtors and Debtors in Possession, Seeking Allowance and Payment of Interim Compensation and Reimbursement of Actual and Necessary Expenses (Docket No. 8382) ("Fourth Interim Fee Application") and as such are not subject to this Application. In light of the above and the voluntary reductions as described in footnote 5 above, fees and expenses submitted in the February 2010 Monthly Statement in the amounts of $2,679,132.10 and $86,717.21, respectively, are subject to this Application and were rendered in the Compensation Period.

Of the payment amount of $2,300,355.56 made on April 17, 2010, only $2,242,459.28 is in satisfaction of 80% of the fees and 100% of the expenses rendered in the Compensation Period.

[7] On April 21, 2010, the Debtors paid $1,675,534.95 to Jones Day in satisfaction of the outstanding fees and expenses payable to Jones Day pursuant to its Third Interim Application of Jones Day, Special Counsel to the Debtors and Debtors in Possession, Seeking Allowance and Payment of Interim Compensation and Reimbursement of Actual and Necessary Expenses (Docket No. 6216) minus the Recommended Deductions (as such term is defined in the Order Granting Applications for the Allowances of Interim Compensation for the Period of June 1, 2009 through September 30, 2009 for Professional Services Performed and Reimbursement of Actual and Necessary Expenses Incurred and Other Relief (Docket No. 8218) ("Third Interim Compensation Order")) authorized under the Third Interim Compensation Order. Of this amount, $211,119.28 was overpaid by the Debtors and was applied to the partial payment of 80% of the fees and 100% of the expenses rendered in the March 2010 monthly statement.

[8] The May 2010 Monthly Statement included fees of $10,600.00 attributable to services rendered by Jones Day professionals for Lehman Brothers Offshore Partners Ltd. ("LBOP") in connection with its role as a selling shareholder in the initial public offering of certain shares by Camelot Information Systems Inc. ("Camelot"). After the May 2010 Monthly Statement had been submitted, it was discovered that the fees and expenses of counsel to selling shareholders, including LBOP, may be reimbursed by Camelot pursuant to a registration rights agreement and therefore, such fees are not subject to this Application and have since been credited back to the Debtors in Jones Day's June 2010 Monthly Statement.

## Summary of Services Rendered by Jones Day

19.     Below is a summary of the major activities performed during the Compensation Period by Jones Day professionals and paraprofessionals in assisting the Debtors with their chapter 11 cases and other restructuring-related activities, categorized by region.[9]  More detailed descriptions of the services rendered by Jones Day are included in the Monthly Statements and Exhibit B hereto.  In accordance with the UST Guidelines, a summary of the hours and amounts billed during the Compensation Period by each timekeeper, as well as each timekeeper's position, hourly rate and, if applicable, the year in which each timekeeper was first licensed to practice law, is set out in the cover sheet prefixed to this Application.

20.     During the Compensation Period, Jones Day professionals and paraprofessionals assisted the Debtors in relation to a multitude of issues arising in the Asia Pacific region, Australia, England, Hong Kong, Japan, the Philippines, Singapore, Taiwan, Thailand and the United States as a consequence of the Debtors' chapter 11 cases in the United States, including anticipated litigation, securities, insolvency, commercial, real estate and any and all other related issues as more specifically set out below.

21.     In addition, Jones Day professionals represented the Debtors in litigation to recover money damages which has been pending in the U.S. Bankruptcy Court in San Francisco since 2003, involving chapter 11 debtors Central European Industrial Development Company ("CEIDCO") and The Kontrabecki Group LP ("TKG"), and their former principal, John Kontrabecki (the "San Francisco - Kontrabecki Matter").

*Asia Pacific – 3,656.60 hours - $1,758,889.00*

22.     During the Compensation Period, Jones Day professionals and paraprofessionals attended to numerous case administration tasks and commercial issues

---

[9] Categorizing the various services provided to the Debtors by Jones Day by region was previously approved by both the Debtors and the Fee Committee.

arising from the restructuring of various entities across the Asia Pacific region and globally. Such tasks included liaising and coordinating across a number of Jones Day's offices in various jurisdictions, compiling and filing of Monthly Statements, preparing Jones Day's Fourth Interim Fee Application, responding to the Fee Committee's questions and requests, dealing with conflict and similar issues arising from time to time and other issues as more specifically set forth below.

*Australia*

23.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Australia included assisting and advising the Debtors with respect to insolvency proceedings in relation to Lehman Brothers Australia Limited (In Liquidation) ("LBA").  Such services included preparing pleadings and submissions, briefing and instructing counsel and appearing at proceedings in the High Court of Australia to appeal the judgment of the Full Federal Court of Australia which ruled that the Deed of Company Arrangement for LBA which sought to release the Debtors and other related Lehman entities from claims by certain creditors of LBA was void. Jones Day professionals and paraprofessionals advised the Debtors in relation to settlement options proposed by the liquidators of LBA for claims against LBA and non-Australian Lehman entities and also in relation to protecting the Debtors' rights under a gold price swap agreement (and other associated transaction documents) entered into with an Australian company including advising on the Debtors' rights and obligations under such transaction documents.

*Hong Kong*

24.     Jones Day was retained in December 2009 to advise LBOP on the issuance of 7% exchangeable notes in the aggregate principal amount of $9.75 million due 2011, exchangeable into shares held by LBOP in a Taiwanese company, which were issued together with a call option, right of first refusal and security for the notes (collectively, the

"Transactions"). During the Compensation Period, Jones Day professionals and paraprofessionals advised on the exchange of notes and exercise of the call option, drafted, reviewed, negotiated and analyzed the various transactional documentation required for the Transactions and advised on, prepared and coordinated the logistics and other arrangements required to be undertaken by all relevant parties to the Transactions in various overseas jurisdictions such as Taiwan, Bermuda and the British Virgin Islands. Jones Day also advised on the various filing requirements in relation to the Transactions with the British Virgin Islands Registrar of Corporate Affairs and Bermuda Registrar of Companies.

*Japan*

25.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Japan were attributed predominantly to Lehman Brothers Special Finance ("LBSF") and Lehman Real Estate Private Equity ("REPE"). Such services included conducting legal research on civil rehabilitation law, drafting memoranda in relation to reorganization and licensing matters, preparing and filing various documents with the local court, translating various documents from Japanese into English and vice-versa, assisting the Debtors and other United States-based Lehman entities in Japan in asserting claims in the Japanese Civil Rehabilitation proceedings of Lehman Brothers Japan KK ("LBJ"), Lehman Brothers Commercial Mortgage KK ("LBCM") and Sunrise Finance KK ("Sunrise") and advising (i) the Debtors and other United States-based Lehman entities in Japan on the contents of the proposed rehabilitation plans of LBCM and Sunrise and associated approval and voting procedures, (ii) LBSF on the settlement of derivatives claims involving LBJ and other counterparties, (iii) REPE on labor and employment issues, and (iv) the Debtors on operational matters associated with the winding down of operations in Japan.

*Korea*

26.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Korea focused on the GKI Development Co., Ltd. ("GKID") project.  Jones Day professionals worked on workout issues and bankruptcy issues in relation to GKID's involuntary bankruptcy.  Work included drafting petitions, responding to creditor claims against GKID and advising on all bankruptcy related matters in connection with the declaration of bankruptcy against GKID in November 2009.

27.     Jones Day  professionals also advised Maehwa K-Star Co., Ltd. during the Compensation Period in relation to its negotiations with its borrowers.

*Philippines*

28.     During the Compensation Period, Jones Day professionals and paraprofessionals reviewed and analyzed rehabilitation plans, court orders and other relevant documents in connection with the disposal of LBHI's interests in certain non-performing loan portfolios in the Philippines.  Jones Day was involved in the entire disposal process including drafting the relevant transaction documents related thereto.

*Singapore*

29.     During the Compensation Period, Jones Day professionals and paraprofessionals assisted various employment issues, including issues related to the Central Provident Fund and to the late submission of Form IR8A with the Inland Revenue Authority of Singapore.

*Taiwan*

30.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Taiwan were attributed to TL I Asset Management Company Limited, TL II Asset Management Company Limited and TL III Asset Management Company Limited.  Such services included assisting the Debtors with various

corporate matters, advising the Debtors with respect to the disposal of assets and repayment of debts, drafting letters to banks, companies, and governmental authorities, attending to matters relating to mortgage auction rulings, loan and trust agreements, real estate sales and purchase agreements, litigation, and translating various documents from English into Chinese and vice versa, as well as representing the Debtors in negotiations with various third parties.

31.    In particular, Jones Day assisted in the negotiations with Hua-Nan Bank in relation to the closing of the sale of the Xiu-Gang Land and the disposal of investment in the Yilan development project.

*Thailand*

32.    Services rendered by Jones Day professionals and paraprofessionals in Thailand during the Compensation Period included assisting LBHI and its subsidiaries in managing LBHI's Thailand real estate and other assets. This has involved advising LBHI and its subsidiaries on investment, financing issues and disposal strategies – in particular, a number of assets are currently in the process of being auctioned. With respect to disposition strategy and implementation of the sales process, Jones Day has drafted all key transaction documents and been an integral part of the team from the inception of the sales process.

33.    Jones Day has researched the financing structures for a number of LBHI's assets in Thailand, in particular reviewing the extent to which security has been granted over LBHI assets as a result of its debt obligations.

34.    Jones Day has liaised with local counsel and other professionals on Thai legal and tax issues affecting the LBHI asset portfolio in Thailand and advised on compliance issues with regard to Thai laws on financing and resulting security issues as well as providing general bankruptcy and insolvency advice.

*London - 513.90 hours – $370,133.60*

35.    In September 2009, Jones Day professionals in London were retained to advise the Debtors on derivatives documentation matters arising from the occurrence of credit events with respect to various "Reference Obligations" referenced in credit derivatives and synthetic CDO documentation to which the Debtors are party, including the exercise or performance of their respective rights and obligations under such documentation.

36.    During the Compensation Period, Jones Day professionals have continued to review and analyze credit derivatives and synthetic CDO documentations and provided advice to the Debtors with respect to the contractual requirements and procedures for the content and delivery of credit event notices in order to enable the Debtors to maximize the value of these transactions for the benefit of the Debtors' estates.  As part of this work and pursuant to the relevant documentation, Jones Day advised on, prepared and coordinated the delivery of Credit Event Notices and Notices of Publicly Available Information in respect of each of the special purpose CDO entities.  Jones Day also advised on the valuation process, including the preparation of the forms of Notices of Final Valuation/Calculation and Statements of Calculation with respect to various Reference Obligations referenced in the documentation for the special purpose CDO entities.

37.    Jones Day also advised the Debtors on various valuation issues under five separate credit derivative transactions.    Jones Day reviewed and analyzed the documentation for these transactions and the subsequent service of Credit Event Notices, Notice of Termination and Statements of Calculation by counterparties on the Debtors.  Jones Day further provided advice to the Debtors, as well as draft correspondence to counterparties regarding the basis of valuation of sums due to Debtors under the transaction documentation.

38.    Jones Day reviewed and analyzed the documentation for certain CDO structures and the related swap transaction and provided advice to the Debtors regarding potential rights of termination and recovery arising from marked to market trigger events in the financing structure. Jones Day developed a proposed strategy for effecting a termination in the context of the documentation and a potential judicial challenge.

39.    During the Compensation Period, Jones Day also advised on the termination and settlement of derivatives transactions involving the Debtors related to a series of 15 securitization structures. Jones Day reviewed and analyzed the transaction documents and prepared and negotiated settlement agreements with the Debtors' counterparties with respect to each securitization structure.

*New York – 21,461.50  hours – $10,540,639.00*

*Barclays*

40.    During the Compensation Period, Jones Day continued its representation as special counsel to the Debtors to pursue claims or other remedies, arising from the Asset Purchase Agreement between Debtors and Barclays executed September 16, 2008 and approved by the Court by order entered September 20, 2008.

41.    In September 2009, after the conclusion of Bankruptcy Rule 2004 discovery, Jones Day filed an Adversary Complaint and an extensive motion in the United States Bankruptcy Court for the Southern District of New York under Federal Rule 60(b) seeking significant relief from certain aspects of the Sale Order issued on September 20, 2008 regarding the sale of Debtors' New York North American broker dealer business to Barclays on the grounds that material aspects of the sale transaction were not properly disclosed to the Court. During the Compensation Period, Jones Day continued its discovery process from Barclays by continuing to review documents, taking depositions and conducting further factual investigations and analyzing pertinent legal issues and claims arising from the

discovery taken.  Jones Day also continued to respond to discovery requests propounded by Barclays, prepared and filed expert reports concerning issues presented by the Adversary Complaint and the Rule 60 motions, and engaged in extensive preparation for a trial and evidentiary hearing before the Court of the claims asserted in the Adversary Complaint and the Rule 60 motions.  In the course of this work, Jones Day also coordinated the continued discovery process and trial preparation with counsel for the Committee and the SIPA Trustee, reviewed hundreds of thousands of pages of documents produced by Barclays and numerous third parties, and communicated frequently with counsel for Barclays, the SIPA Trustee and the Committee.

42.     During the Compensation Period, the trial of certain claims asserted in the Adversary Complaint and the issues presented by Rule 60 motions began before the Court. Jones Day took a lead role in the trial, questioning multiple witnesses, introducing hundreds of documents into evidence, arguing trial related motions before the Court and otherwise addressing issues that arose during trial.  Segments of the trial, which has not yet concluded, took place during the Compensation Period.

*Derivatives*

43.     During the Compensation Period, Jones Day continued to advise the Debtors concerning certain credit derivative transactions with AIG CDS, Inc. ("AIG") which was in litigation before the Court.  During the Compensation Period, Jones Day counseled the Debtors with regard to an amendment agreement and stipulation which led to a joint resolution, whereby the Debtors withdrew their motion to compel and AIG withdrew its objection to the derivatives procedures motion.

44**.**     During the Compensation Period, Jones Day has continued to advise the Debtors with regard to certain derivative transactions with Prudential Global, Inc. ("Prudential").  This matter is currently in litigation before the Court.  In February 2010,

Jones Day drafted and filed a cross-motion for partial judgment on the pleadings, an opposition to Prudential's motion for judgment on the pleadings, and an opposition to Lehman Brothers Finance, SA's ("LBF") motion to dismiss.  In April 2010, Prudential filed a reply in further support of its motion for partial judgment on the pleading, and an opposition to the debtors' cross-motion for partial judgment on the pleadings, and LBF filed a reply in further support of its motion to dismiss.  In May 2010, the Debtors drafted and filed a reply in further support of the motion for partial judgment on the pleadings.

45.    During the Compensation Period, Jones Day has continued to advise the Debtors concerning a gold price hedge with Norton Gold Fields Ltd ("Norton").  This matter is currently in litigation before the Court.  Throughout the Compensation Period, Jones Day continued to counsel the Debtor with regard to settlement negotiations.  Additionally, in February 2010, Jones Day drafted and filed a reply in further support of its motion to compel Norton to perform its obligations under the hedge.  In March 2010, Norton filed a sur-reply brief and Jones Day drafted and filed a response in April 2010.  In May 2010, Jones Day prepared for a formal meditation of this dispute.

46.    During the Compensation Period, Jones Day advised the Debtors regarding transactions under three separate ISDA Master Agreements between the Debtors and Nomura entities, including valuation issues pertaining to Icelandic bank Reference Entities.  In April 2009, Jones Day drafted and filed adversary complaints and claim objections against Nomura International and Nomura Securities, a claim objection against Nomura GFP, and motion to consolidate proceedings against the three Nomura entities.  In May 2010, Jones Day continued to brief the issue of consolidation of these proceedings and negotiated with the Nomura entities to develop a discovery schedule.

47.    In addition to the foregoing litigation matters, during the Compensation Period, Jones Day continued to counsel the Debtors concerning various

derivatives and other complex structured products entered into with multiple counterparties, including interest rate swaps, credit default swaps, total return swaps, foreign currency swaps, multi-currency cross border swaps, accelerated share repurchase transactions and other financial products.  With regard to these matters, Jones Day analyzed relevant transaction documents and communications and conducted a broad range of research relating to all aspects of relevant state and federal laws.  Jones Day also continues to advise the Debtors on derivatives issues pertaining to collateral and margin posting, valuation and reconciliation, as well as unique provisions specific to counter-party swaps.

48**.**    With regard to a number of these derivatives transactions, Jones Day drafted and served pre-litigation discovery on counter-parties as well as relevant third parties.  During the Compensation Period, Jones Day received and reviewed document productions responsive to these requests.  Jones Day continues to review such document productions and craft pre-litigation and litigation strategy with respect to additional counterparties of the Debtors.

*Barclays v. Lehman Funds*

49.    During the Compensation Period, Barclays Capital Inc. ("Barclays Capital") filed two lawsuits in New York Supreme Court against various real estate and private equity funds that are (or, at the time of the allegations, were) affiliates and/or subsidiaries of the Debtors.  Barclays Capital alleged non-payment of placement fees to the Private Investment Management Group, a former division of Lehman acquired by Barclays Capital post-petition.  Jones Day represented the Debtors and the defendant funds in these lawsuits.

50.    During the Compensation Period, Jones Day analyzed the Complaints, engaged in extensive fact collection and analysis and crafted a litigation strategy.  As part of this strategy, in April 2010, Jones Day filed notices of removal removing these actions from

the New York Supreme Court to the United States District Court for the Southern District of New York (the "District Court") and sought transfer to the Court. Barclays Capital opposed these notices of removal through a series of letters it sent to the District Court urging the District Court to retain the matters rather than refer them to the Court. Jones Day conducted research on removal, assessed the relatedness of these actions to the Debtors, and responded to each of Barclays Capital's letters with caselaw and analysis in favor of removal to the Court.

51.    At the end of April 2010, Judge Naomi Buchwald, the District Court judge assigned to one of the actions, held a conference in which Jones Day and counsel for Barclays Capital each articulated its position on removal to the Court. Following this conference, at the beginning of May 2010, Judge Buchwald referred both actions to the Court.

52.    In mid-May 2010, Barclays Capital filed a motion to remand or abstain and remand. At the end of the Compensation Period, Jones Day was briefing its opposition to this Motion.

*Greenbrier*

53.    During the Compensation Period, Jones Day advised the Debtors in connection with the workout and restructuring of certain loans and investments involving Greenbrier Minerals LLC ("Greenbrier"). Services rendered by Jones Day professionals included, among other*s*, advising the Debtors in relation to Lehman Commercial Paper Inc. ("LCPI"), particularly, LCPI's (i) rights under its credit agreement with certain affiliates of Greenbrier in connection with various defaults existing under the agreement, (ii) forbearing from exercising remedies under the credit agreement while LCPI and Greenbrier negotiated a sharing arrangement relating to a potential sale of Greenbrier's assets, (iii) the retention of mining consultants for Greenbrier's operations, and (iv) LCPI's enforcement of the automatic

stay against Greenbrier. Jones Day professionals also participated in numerous teleconferences with counsel for Greenbrier in an attempt to consensually resolve disputes between LCPI and Greenbrier relating to LCPI's ongoing membership interests in Greenbrier.

54.    In addition to performing the above-mentioned services for the Debtors, Jones Day professionals prepared a term sheet for a standstill agreement, a retention agreement for Greenbrier's mining consultants and pleadings to enforce the stay against Greenbrier. Jones Day professionals also prepared a memorandum regarding LCPI's ability to exercise remedies under the credit agreement, and conducted substantial research relating thereto analyzing New York and Delaware law.

*Quadrant*

55.    During the Compensation Period, Jones Day professionals and paraprofessionals advised the Debtors with regard to their investment in Quadrant Structured Products Company, Ltd. ("Quadrant") and researched and analyzed various aspects of New York contract law, the Bankruptcy Code, and Cayman Islands wind-up procedure in relation to the same. Jones Day professionals also assisted in developing a strategy to monetize the Debtors' interest in Quadrant.

56.    As part of the aforementioned strategy, Jones Day represented the Debtors in connection with the sale of their ownership interest in Quadrant. Jones Day drafted and negotiated multiple drafts of a Stock Purchase Agreement, Escrow Agreement and other ancillary agreements in connection with such sale.

**San Francisco – 409.90  hours – $256,102.50**

57.    The history of the San Francisco – Kontrabecki Matter, which remains pending in the U.S. Bankruptcy Court in San Francisco has been summarized in prior applications.

58.     In October 2009, the Court granted a motion by defendant John Kontrabecki for partial summary judgment to exclude the primary element of Debtors' economic damages.   Jones Day prepared, and filed on November 17, a motion for reconsideration of the partial summary judgment.  During the current Compensation Period, Jones Day reviewed the opposition to the motion for reconsideration filed by John. Kontrabecki in early February 2010, prepared and filed a reply in late February 2010, and represented Debtors at the hearing held on March 9, 2010.  The Court denied the motion for reconsideration on March 31, 2010.

59.     Following denial of the motion for reconsideration the Debtors and John Kontrabecki jointly requested, and the Court ordered, a judicial settlement conference and that all litigation be suspended during the course of the settlement conference proceedings.

60.     During the Compensation Period, prior to the suspension of litigation that was ordered in connection with the settlement conference, Jones Day professionals also performed services relating to supplementation of document discovery.

## Expenses Incurred by Jones Day

61.     Section 330 of the Bankruptcy Code authorizes "reimbursement for actual, necessary expenses" incurred by professionals employed under section 327 of the Bankruptcy Code.  Accordingly, Jones Day seeks reimbursement for expenses incurred in rendering services to the Debtors during the Compensation Period.  The total amount of the expenses is $361,198.39 for the Compensation Period, as summarized in the attached Exhibit "C" and detailed in the attached Exhibit "D".

62.     In accordance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Guidelines, Jones Day maintains the following policies with

respect to expenses for which reimbursement is sought herein:

(a)     No amortization of the cost of any investment, equipment, or capital outlay is included in the expenses.  In addition, for those items or services that Jones Day purchased or contracted from a third party (such as outside copy services), Jones Day seeks reimbursement only for the exact amount billed to Jones Day by the third party vendor and paid by Jones Day to the third party vendor.

(b)     Black and white photocopying by Jones Day was charged at 10 cents per page.[10]  Color photocopying by Jones Day was charged at 50 cents per page. To the extent practicable, Jones Day utilized less expensive outside copying services.

(d)     Telecopying by Jones Day was charged to the Debtors at the cost of the long distance call required to send the facsimile.  The firm did not impose any charge to the Debtors for local facsimiles, inbound facsimiles, interoffice facsimiles or facsimiles costing less than $1.00.

(e)     Meal charges incurred during travel charged to the Debtors for Jones Day personnel were limited to $40 per person.

(f)     Working meals and overtime meals for Jones Day personnel working past 8:00 p.m. were limited to $20 per person.

(g)     Coach airfares charged to the Debtors for Jones Day personnel were associated with out of town travel, meetings with the Debtors or other parties in these chapter 11 cases.

(h)     Taxi fares for overtime travel home after 8:00 p.m. were limited to $100.

(i)     Fees for hotel accommodation charged to the Debtors for Jones Day personnel were not in excess of $500 per night.

---

[10] As disclosed and agreed to by the Fee Committee, Jones Day charges the Debtors at cost for duplication charges for obtaining court records at the Tokyo District Court.

      (j)      No staff overtime, word processing or proofreading charges have been charged to the Debtors.

## The Requested Compensation Should Be Allowed

63.      Section 330 of the Bankruptcy Code provides that the Court may award a professional person employed under section 327 or 1103 of the Bankruptcy Code:

    (A)     reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

    (B)     reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1). Section 330(a)(3)(A) further provides the following standards for the Court's review of a fee application:

In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

    (A)     the time spent on such services;

    (B)     the rates charged for such services;

    (C)     whether the services were necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title;

    (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

    (E)     whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A).

64.      Jones Day respectfully submits that it has satisfied the requirements for the allowance of the compensation and reimbursement of expenses sought herein. The services described above, at the time they were provided, were necessary and beneficial to the

administration of the Debtors' chapter 11 cases.  Jones Day's services were consistently performed in a timely manner, commensurate with the complexity of the issues facing the Debtors and the nature and importance of the problems, issues, and tasks.  Furthermore, the compensation sought by Jones Day is reasonable because it is based on the customary compensation charged by comparably skilled practitioners outside of bankruptcy.  Accordingly, approval of the compensation sought herein is warranted.

### Statements of Jones Day Pursuant to Bankruptcy Rule 2016(a)

65.    Pursuant to the Interim Compensation Order and the Fee Protocol, Jones Day has submitted the Monthly Statements to (a) the Debtors, (b) counsel to the Debtors, Weil, Gotshal & Manges, LLP, (c) counsel to Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, (d) the U.S. Trustee, (e) the Fee Committee, and (f) BrownGreer PLC (collectively the "Notice Parties"), during the Compensation Period with respect to the Debtors' chapter 11 cases, as follows: (a) from February 1, 2010 through February 28, 2010 – fees of $2,749,674.10 and expenses of $100,616.28, of which $2,679,132.10 of fees and $86,717.21 of expenses are submitted for consideration under this Application; (b) from March 1, 2010 through March 31, 2010 – fees of $3,315,931.90 and expenses of $85,097.51 of which $3,312,827.90 of fees and $81,162.57 of expenses are submitted for consideration under this Application; (c) from April 1, 2010 through April 30, 2010 – fees of $3,879,194.40 and expenses of $107,127,83 of which $3,877,605.40 of fees and $103,818.54 of expenses are submitted for consideration under this Application; and (d) from May 1, 2010 through May 31, 2010 – fees of $3,066,798.70 and expenses of $89,500.07 of which $3,056,198.70 of fees and $89,500.07 of expenses are submitted for consideration

under this Application.[11]

66.    In total, therefore, Jones Day has submitted Monthly Statements for fees of $13,011,599.10 and expenses of $382,341.69 during the Compensation Period, of which $12,925,764.10 of fees and $361,198.39 are submitted for consideration under this Application.

67.    Jones Day has received such payment from the Debtors relating to fees and expenses in the Monthly Statements on account of services provided during the Compensation Period as described in paragraph 18 above.

68.    No agreement or understanding exists between Jones Day and any third person for the sharing of compensation, except as allowed by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016 with respect to the sharing of compensation between and among partners of Jones Day.  All of the services for which compensation is sought in this Application were rendered at the request of, and solely on behalf of, the Debtors, and not at the request of, or on behalf of, any other person or entity.

69.    Prior to the filing of this Application, Jones Day received no objections to any of the Monthly Statements provided under the Interim Compensation Order from the Debtors, the Fee Committee or any one else.

**Waiver of Memorandum of Law**

70.    This Application does not raise any novel issues of law.  Accordingly, Jones Day respectfully requests that the Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted.

---

[11] Please refer to paragraph 18 hereof for a further explanation of the fees included in each of the above described Monthly Statements.

**<u>Notice</u>**

71.     Notice of this Application and its exhibits will be given to (a) the Debtors; (b) counsel to the Debtors; (c) the U.S. Trustee; (d) counsel to the Committee; (e) the Fee Committee; and (f) as requested by the Fee Committee, BrownGreer PLC.  Jones Day respectfully submits that no other or further notice is required.

WHEREFORE, Jones Day respectfully requests that the Court (a) enter an order allowing interim compensation of $12,925,764.10 to Jones Day for professional services rendered as special counsel for the Debtor during the Compensation Period, plus reimbursement of actual and necessary charges and disbursements incurred in the sum of $361,198.39 in connection with Jones Day's services during the Compensation Period; (b) authorize and direct the Debtors to pay to Jones Day any and all unpaid, invoiced amounts for the Compensation Period; and (c) grant to Jones Day such other and further relief as the Court may deem proper.

Dated:  August 16, 2010
      New York, New York

<div style="margin-left:50%">

     /s/  Ross S. Barr
David L. Carden
Robert W. Gaffey
Ross S. Barr
JONES DAY
222 East 41st Street
New York, New York 10017-6702
Telephone:  (222) 326 3939
Facsimile:  (212) 755 7306

Robert L. Thomson
JONES DAY
29th Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: (852) 2526 6895
Facsimile: (852) 2868 5871

SPECIAL COUNSEL TO THE DEBTORS
IN POSSESSION

</div>

EXHIBIT "A"

**SUMMARY OF SERVICES BY PROJECT CATEGORY FOR SERVICES RENDERED**
**BY JONES DAY ON BEHALF OF THE DEBTORS**
**FROM FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

| Project Category | Total Hours by Project | Total Fees by Project (USD) |
|---|---|---|
| Asia Pacific | 3,656.60 | 1,758,889.00 |
| London | 513.90 | 370,133.60 |
| New York | 21,461.50 | 10,540,639.00 |
| San Francisco | 409.90 | 256,102.50 |
| **Total** | **26,041.90** | **12,925,764.10** |

## CURRENT FEE PERIOD: FEBRUARY 1, 2010 THROUGH MAY 31, 2010

Case No.: 08-13555 (JMP)

Case Name: In re LEHMAN BROTHERS HOLDINGS INC., *et al.*, Debtors.

| APPLICANT | DATE/DOCUMENT NO. OF APPLICATION | FEES REQUESTED | FEES AWARDED | EXPENSES REQUESTED | EXPENSES AWARDED |
|---|---|---|---|---|---|
| Jones Day | August 16, 2010 | $12,925,764.10 | [          ] | $361,198.39 | [          ] |

SCHEDULE A(1)
HKI-249151v1

DATE: _____

INITIALS: _____ USBJ

**EXHIBIT "B"**

**SERVED ON NOTICE PARTIES UNDER INTERIM COMPENSATION ORDER**

**ACTUAL AND NECESSARY DISBURSEMENTS INCURRED**
**BY JONES DAY ON BEHALF OF THE DEBTORS**
**FROM FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

| Disbursement Description | Amount Billed (USD) |
|---|---|
| Agents Fee | 170.00 |
| Air Fare | 6,756.32 |
| Bank Charges | 35.49 |
| Binding | 851.53 |
| Calling Card Charges | 1,185.43 |
| Color Duplication Charges | 2,406.00 |
| Communication charges | 935.65 |
| Computerized Research Services | 2,140.98 |
| Conference Charges | 1,874.28 |
| Courier Services | 3,847.14 |
| Court Costs | 1,851.95 |
| Court Reporter Fees | 47,357.41 |
| Docket Copy Charges | 467.89 |
| Document Reproduction Charges | 11.20 |
| Dow Jones Search Fees | 3.69 |
| Duplication Charges | 55,363.94 |
| Federal Express Charges | 1,439.03 |
| Filing Fees | 500.00 |
| Filing Fees and Related | 10.58 |
| Food and Beverage Charges/Expenses | 1,205.16 |
| General Communications Charges | 42.50 |
| General Internal Charges | 468.00 |
| Hotel Charges | 6,999.25 |
| Imaging Services | 1,448.40 |
| Infosearch Search Fees | 5.90 |
| Late Work Meal | 452.35 |
| Late Work Parking | 18.70 |
| Late Work Taxi | 15,276.05 |
| Lexis Search Fees | 36,811.41 |
| Litigation Expenses | 363.50 |
| Local Food and Beverage Expense | 10,361.92 |
| Local Mileage Charge | 280.75 |
| Local Taxi Charges | 3,900.51 |
| Long Distance Charges | 1,685.81 |
| Mileage Expenses | 85.98 |

| Disbursement Description | Amount Billed (USD) |
|---|---|
| Miscellaneous Expenses | 29,268.24 |
| Parking Expenses | 734.04 |
| Parking Validation Charges | 68.00 |
| Postage Charges/Expenses | 62.29 |
| Printing Charges | 27,975.84 |
| Publication Expenses | 205.59 |
| Research Fees | 3,194.96 |
| Subway/Bus Charges | 6.75 |
| Taxi Fare/Charges | 2,344.34 |
| Toll Charges | 164.00 |
| Train Fare | 497.23 |
| Travel-Other Costs | 1,564.47 |
| United Parcel Service Charge | 1,121.05 |
| Video and Electronic Expenses | 1,337.40 |
| Westlaw Search Fees | 85,094.49 |
| Witness Fees | 945.00 |
|  |  |
| **Total Disbursements** | **361,198.39** |

HKI-248318v4

**EXHIBIT "D"**

**SERVED ON NOTICE PARTIES UNDER INTERIM COMPENSATION ORDER**

**EXHIBIT "E"**

JONES DAY
David L. Carden
Robert W. Gaffey
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

-and-

JONES DAY
Robert L. Thomson
29th Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: (852) 2526-6895
Facsimile: (852) 2868-5871

Special Counsel for the Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re                                        :      Chapter 11 Case No.
                                             :
LEHMAN BROTHERS HOLDINGS INC., et al.,       :      08-13555 (JMP)
                                             :
                Debtors.                     :      (Jointly Administered)
                                             :
-------------------------------------------------------------------x
```

## CERTIFICATION OF ROBERT W. GAFFEY

I, Robert W. Gaffey, certify as follows:

1.      I am a partner in the law firm of Jones Day.  I submit this certification with respect to the application (the "Application")[1] of Jones Day, special counsel for the debtors in possession in the above-captioned cases (the "Debtors"), for allowance of compensation for

---

[1]      Unless otherwise defined herein, all capitalized terms used herein shall have the meanings set forth in the Application.

professional services rendered, and reimbursement of actual and necessary expenses incurred, for the period from February 1, 2010 through May 31, 2010.

2.      I make this certification in accordance with General Order M-151, the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the United States Bankruptcy Court for the Southern District of New York on April 19, 1995 (the "Local Guidelines").

3.      In connection therewith, I hereby certify that

(a)      I have read the Application;

(b)      to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought in the Application fall within the Local Guidelines and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines") except as specifically noted therein;

(c)      except to the extent that fees or disbursements are prohibited by the Local Guidelines or the UST Guidelines, the fees and disbursements sought are billed at rates customarily employed by Jones Day and generally accepted by Jones Day's clients; and

(d)      in providing a reimbursable service, Jones Day does not make a profit on that service, whether the service is performed by Jones Day in house or through a third party.

Dated:  August 16, 2010
        New York, New York

Respectfully submitted,

/s/ Robert W. Gaffey
Robert W. Gaffey
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

SPECIAL COUNSEL FOR THE DEBTORS IN POSSESSION

- 2 -

HKI-249084v1