Hearing Date: **August 18, 2010 at 10:00 a.m. (ET)**

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Corinne Ball
Jayant W. Tambe
Aviva Warter Sisitsky

*Attorneys for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re: : Chapter 11
: 
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : Case No. 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
---------------------------------------------------------------x
: 
LEHMAN BROTHERS HOLDINGS INC. and :
LEHMAN BROTHERS SPECIAL : Adv. Proc. No. 10-03228-jmp
FINANCING, INC. :
Plaintiffs, :
:
-and- :
:
OFFICIAL COMMITTEE OF UNSECURED :
CREDITORS OF LEHMAN BROTHERS :
HOLDINGS INC., *et al*. :
Intervenor, :
:
-against- :
:
NOMURA INTERNATIONAL PLC, :
:
Defendant. :
---------------------------------------------------------------x

```
---------------------------------------------------------------- x
LEHMAN BROTHERS HOLDINGS INC. and              :
LEHMAN BROTHERS SPECIAL                        :    Adv. Proc. No. 10-03229-jmp
FINANCING, INC.                                :
                            Plaintiffs,        :
    -and-                                      :
                                               :
OFFICIAL COMMITTEE OF UNSECURED                :
CREDITORS OF LEHMAN BROTHERS                   :
HOLDINGS INC., et al.                          :
                            Intervenor,        :
                                               :
    -against-                                  :
                                               :
NOMURA SECURITIES CO., LTD.                    :
                                               :
                            Defendant.         :
----------------------------------------------------------------x
```

**DEBTORS AND DEBTORS IN POSSESSION'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY
OF AN ORDER, PURSUANT TO SECTION 105 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULES 1001, 7042 AND 9014, TO CONSOLIDATE
<u>CERTAIN PROCEEDINGS AND ESTABLISH RELATED PROCEDURES</u>**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF" and together with LBHI and their affiliated debtors in the above-referenced chapter 11 cases, the "Debtors"), as debtors and debtors in possession, submit this Reply Memorandum in further support of Debtors' motion for entry of an order pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 1001, 7042 and 9014 to consolidate: (a) an adversary complaint and objection relating to certain proofs of claim filed by Nomura International plc ("Nomura") against LBSF and LBHI, (b) an adversary complaint and objection relating to certain proofs of claim filed by Nomura Securities Co. Ltd. ("Nomura Securities") against LBSF and LBHI, and (c) The Debtors' objection to certain proofs of claim filed by Nomura Global Financial Products, Inc. ("Nomura GFP" and together with Nomura and Nomura Securities, the

"Nomura Entities") against LBSF and LBHI (collectively, the "Nomura Proceedings"); and establish related procedures (the "Motion to Consolidate"). For the reasons set forth below and in the Debtors' opening memorandum, the Debtors request that the Court grant consolidation and issue an appropriate order.[1]

## ARGUMENT

### I. The Nomura Proceedings Should Be Consolidated Because They Share Common Issues Of Fact And Law

1. This Court has broad discretion to consolidate actions before it. See Fed. R. Bankr. P. 7042; Fed. R. Civ. P. 42; Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir. 1990); Matter of Dak Mfg. Corp., 73 B.R. 917, 921-922 (Bankr. D.N.J. 1987).

2. This Court has already ordered the pre-trial consolidation of Nomura and Nomura Securities based on their consent. See Order, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1001, 7042 and 9014, to Consolidate Certain Proceedings and Establish Related Procedures, dated May 18, 2010 [Docket No. 9013]. In addition, all three Nomura Entities have consented to, and this Court has ordered, parallel discovery schedules for these proceedings. Compare Stipulated Scheduling Order for the Nomura and Nomura Securities Proceedings, dated June 21, 2010 [Adv. Proc. Nos. 10-03228, 10-03229, Docket No. 13] with Claims Litigation Schedule for the Objection of Debtors and Debtors in Possession to Claims of Nomura Global Financial Products, Inc., dated July 19, 2010 [Docket No. 10291].

3. Notwithstanding the parties' and this Court's recognition that these three proceedings are connected, Nomura GFP objects to the instant motion (the "Objection") based on a misstatement of the standard for consolidation. The Objection invites the court to apply a

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion to Consolidate, the Master Agreement or the CSA.

standard akin to that under Federal Rule of Civil Procedure 23(b)(3) for granting class action status, instead of the applicable standard dictated by Federal Rule of Civil Procedure 42. (See Objection ¶¶ 11-16; Fed. R. Civ. P. 23(b)(3) (class certification is appropriate when "questions of law or fact common to class members *predominate*").

4. Rule 42, in contrast to Rule 23, provides that a court may consolidate actions before it when the actions "involve a common question of law or fact." Fed. R. Civ. P. 42. Even *one* substantial common issue of fact or law is a sufficient basis for consolidation. See BD ex rel. Jean Doe v. DeBuono, 193 F.R.D. 117, 141 (S.D.N.Y. 2000) (holding consolidation appropriate despite the fact that the claims arose out of separate interactions where multiple parents challenged a government agency's application of the same policy to deny appropriate treatment to their children).

5. Common issues of law and fact abound here. All three Nomura Entities entered into substantially identical Master Agreements and CSAs with LBSF. Identical language in these contracts created the obligations out of which all three of these matters arise. Operating under identical definitions of Exposure, each Nomura Entity transferred credit support to LBSF in the days leading up to the Early Termination Date. Applying identical definitions of Loss, each Nomura Entity's Settlement Amount calculation should have been limited to actual contract damages, namely, the benefit of the bargain or costs actually incurred as a result of the early termination. Despite this, all three Nomura Entities admitted, in identical language, that they determined their Loss "by reference to" their "own internal models (which generate a 'mid' value), and by reference to a bid/offer spread." (See Calculation Statements).

6. It is this common calculation methodology that is the core of the dispute between the Debtors and the Nomura Entities. Many of the Transactions entered into under each of the

Swap Agreements were partially or wholly mirror images of each other. There was little or no net risk to the Nomura Entities or LBSF on groups of such offsetting Transactions. By applying deflated bid prices and inflated offer prices, each Nomura Entity generated hundreds of millions of dollars of "Loss" without actually suffering any loss at all, in violation of the definition of Loss, which is identical across each of the three Master Agreements.

7.  Each of the Nomura Proceedings raises the same fundamental legal issue, that under the Swap Agreements the Nomura Entities were required to calculate their Loss in a commercially reasonable manner, including by netting overlapping and offsetting Transactions.

8.  Nomura GFP states in the Opposition that consolidation should be denied because its Transactions were interest rate swap Transactions, as opposed to credit default swap Transactions. This is incorrect and not a basis to deny consolidation: Like the Nomura GFP proceeding, the Nomura Securities proceeding involves offsetting interest rate swap Transactions. (See Motion to Consolidate ¶ 41, Adversary Complaint and Objection Against Nomura Securities ¶¶ 47-49). Lehman asserts that the failure to calculate Loss in a commercially reasonable manner is one of several problems that all three Nomura Entities' proofs of claim have in common.

9.  Because common issues of fact and law are not only present, but abound, the statutory requirement for the court to consolidate the Nomura Proceedings has been met.[2]

---

[2] Nomura GFP is correct that Nomura's recalculation of its Settlement Amount to seek protection under ten Transactions for credit events that occurred to Icelandic banks after the Transactions terminated is not an issue in either the Nomura GFP or Nomura Securities proceeding. This difference is not a basis to deny consolidation, given the many other substantial common issues in these proceedings. In fact, Nomura and Nomura Securities recognized that the Icelandic bank Transactions issue was *not* a basis to resist consolidation of their proceedings—Nomura GFP cannot reasonably disagree. (See generally Resp. of Nomura International plc. and Nomura Securities Co., Ltd. to the Motion to Consolidate ¶¶4-5).

**II.   Consolidation Will Increase Judicial Efficiency And Fairness For All Parties—
Nomura GFP's Claim That Consolidation Will Cause It Prejudice Is Baseless.**

10.   In determining whether consolidation is appropriate, courts weigh the potential for prejudice to the defendant, the risk of confusion for the fact finder and the risk of delay against the advantages to judicial economy and fairness that flow from hearing actions with common issues of law and fact together.  Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC., 208 F.R.D. 59, 61 (S.D.N.Y. 2002); In re Dow Corning Corp., 211 B.R. 545, 582 (Bankr. E.D. Mich. 1997).

11.   Contrary to Nomura GFP's primary assertion in the Objection, the Nomura Entities do not operate, and do not manage their financial risks, independently.  In its 2009 Annual Report, Nomura Holdings, Inc., the ultimate parent company of all three Nomura Entities, boasts of its "globally linked risk management departments."  Nomura Holdings, Inc., Annual Report 2009 49 (2010), available at http://www.nomuraholdings.com/investor/library/ar/2009/pdf/ar_all.pdf.[3]  Nomura Holdings' "Group Integrated Risk Management Committee," chaired by the company's CEO and COO, reports directly to its "Executive Management Board" and from there to the company's President.  Id. at 46-47.  This global risk management structure, working from the highest levels of the Nomura organization, strongly suggests that the Nomura Entities' conduct, both before and after the termination event, was a coordinated effort.  Key testimony and evidence about this coordination is likely to be relevant to all three Nomura Proceedings, particularly with regard to the fundamental issue of whether the Nomura Entities' calculations under the Swap Agreements were reasonable.

---

[3]   A true and correct copy of Nomura Holdings, Inc.'s Annual Report 2009, as available on Nomura's website, is attached as Exhibit A.  A court may consider matters outside the record where relevant to decide a motion, and take judicial notice of facts that are capable of accurate determination by resort to sources whose accuracy can not reasonably be questioned.  See Fed. R. Civ. P. 43; Fed. R. Evid. 201.

12. Further, the fact that the Nomura Entities are not identical would not bar consolidation. See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranch & Co., Inc., 229 F.R.D. 395, 402 (S.D.N.Y. 2004) ("consolidation is not barred simply because the actions to be consolidated allege claims against different parties" (quoting Skwortz v. Crayfish Co., Ltd., Nos. 00 Civ. 6766 (DAB) et al., 2001 WL 1160745 at *2 (S.D.N.Y. Sept. 28, 2001))).

13. The possibility that some documents and witnesses might be in different places in each of the Nomura Proceedings is outweighed by the substantial advantages for both the Court and the parties that will come from consolidation of these proceedings given their common questions of law and fact. Stein, Hall & Co. v. Scindia Steam Navigation Co., 264 F. Supp. 499, 501 (S.D.N.Y. 1967) ("Under all the circumstances, the substantial saving in time, effort and expense that would result from trial of the common questions of fact and law outweighs the slight hardship that might result to the defendant [] from being required to attend trial of some issues in which it is not involved."). In fact, consolidation will provide substantial efficiencies in the Nomura Proceedings. It will save time and resources by allowing the parties' counsel, which is the same across all three proceedings, to address the common legal issues simultaneously. In addition, each party's expert witnesses will need to address substantially identical issues in each proceeding and it will be efficient for all of the parties to provide evidence about, and for the court to resolve, these issues once. See e.g., In re Dow Corning, 211 B.R. at 586-588 (holding that because a mass tort action turned on common medical questions, consolidation would provide substantial advantages to both the Court and the debtor by eliminating the need for repeated expert testimony on the same issues).

14. Consolidation will also assist the Court and reduce the potential for confusion. See Consorti v. Armstrong World Indus., Inc., 72 F.3d 1003, 1007 (2d Cir. 1995) (vacated on

other grounds) (noting that the fact finder is presented with more complete information in a consolidated action, which can reduce confusion).  This Court will ultimately resolve all three of the Nomura Proceedings, regardless of consolidation.  It is not plausible that hearing these proceedings together will present difficulties that this Court would not face if it heard them separately, especially given the underlying fundamental legal issue—that under the Swap Agreements the Nomura Entities were required to calculate their Loss in a commercially reasonable manner—and the three Nomura Entities claim that they have calculated their Losses in substantially the same, if not the same, manner.  See Hanson v. District of Columbia, 257 F.R.D. 19, 22 (D.D.C. 2009) ("The parties are fully able to brief-and the court is capable of rendering a well-reasoned judgment on-multiple issues within the context of one unified civil action").

15. Finally, consolidating the Nomura GFP proceeding into the already consolidated Nomura and Nomura Securities proceedings for discovery will not delay its resolution.  All three Nomura Entities have come to an agreement with Lehman under which fact discovery will be completed on the same six month schedule.  Given this agreement, it is not reasonable to imagine that divorcing Nomura GFP from the other Nomura Entities for other pre-trial purposes can bring this matter to a resolution more quickly.  Moreover, even if there were no overlap in the discovery materials, a position Lehman disputes, Nomura GFP would not suffer prejudice from consolidation because there would be no duplication of its efforts; it would have to produce the same documents on the same schedule with or without consolidation.

16. Because consolidation will save time and resources and will not prejudice Nomura GFP, this Court should grant the Motion to Consolidate.

**NOTICE**

17. No trustee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) counsel for the Nomura Entities; (ii) the U.S. Trustee; (iii) the attorneys for the Creditors' Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; and (vi) the United States Attorney for the Southern District of New York, in accordance with the Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, dated June 17, 2010 [Docket No. 9635] (the "Case Management Order"). The Debtors submit that such notice is sufficient and no other or further notice need be provided.

WHEREFORE, the Debtors respectfully request that this Court consolidate these virtually identical proceedings.

Dated: August 16, 2010
New York, New York

      /s/ Jayant W. Tambe
Corinne Ball
Jayant W. Tambe
Aviva Warter Sisitsky
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

*Attorneys for the Debtors and
Debtors in Possession*