**GIBSON, DUNN & CRUTCHER LLP**
Wayne P.J. McArdle
Telephone House
2-4 Temple Avenue
London EC4Y 0HB
Telephone: +44 (0)20 7071-4000
Facsimile: +44 (0)20 7070-4244

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x
                       :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC., et al.** | : | **08-13555 (JMP)** |
| | : | |
| **Debtors** | : | **(Jointly Administered)** |
| | : | |
| | : | |

--------------------------------------------------------------------x

**THIS SUMMARY SHEET APPLIES TO:**

  **X**  All Debtors

## SUMMARY SHEET PURSUANT TO THE UNITED STATES TRUSTEE GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

| | |
|---|---|
| Name of Applicant: | GIBSON, DUNN & CRUTCHER, LLP |
| Date of Retention: | September 15, 2008 (as ordinary course professional); September 1, 2009 (as 327(e) professional)[1] |

---

[1] Gibson, Dunn & Crutcher, LLP was retained in these cases *nunc pro tunc* to September 15, 2008 as an ordinary course professional pursuant to this Court's *Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business*, dated November 5, 2008 [Docket No. 1394]. Subsequently, Gibson, Dunn & Crutcher, LLP was retained as special counsel pursuant to section 327(e) of the Bankruptcy Code *nunc pro tunc* to September 1, 2009 pursuant to this Court's *Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing the Employment and Retention of*

[Footnote continued on next page]

| | |
|---|---|
| Date of Entry of Order Authorizing Employment: | November 5, 2008 *nunc pro tunc* to September 15, 2008 (ordinary course professional); June 25, 2010 *nunc pro tunc* to September 1, 2009 (327(e) professional) |
| Period for Which Compensation and Reimbursement is Sought: | February 1, 2010 through May 31, 2010 |
| Amount of Compensation Sought As Actual, Necessary and Reasonable: | $771,797.53 |
| Amount of Expense Reimbursement Sought as Actual, Necessary, and Reasonable | $12,644.51 |
| This is: | The Second Interim Application as a 327(e) Professional |
| Blended Rate of Professionals (Including Paraprofessionals): | $596.76 |
| Blended Rate of Professionals (Excluding Paraprofessionals): | $637.56 |

---

[Footnote continued from previous page]

*Gibson, Dunn & Crutcher LLP, As Special Counsel to the Debtors,* Nunc Pro Tunc *to September 1, 2009* [Docket No. 9857].

**PROFESSIONALS AND PARAPROFESSIONALS RENDERING SERVICES IN USD**

From February 1, 2010 through May 31, 2010

| NAME | POSITION | YEAR ADMITTED TO BAR | DATE OF EMPLOYMENT | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|---|
| Joel A. Feuer | Partner—Litigation | 1981 CA | 6/1/1981 | .50 | $875 | $437.50 |
| Amy R. Forbes | Partner—Real Estate | 1984 CA | 6/1/1984 | 62.70 | $875 | $54,862.50 |
| Mark Pecheck | Partner—Real Estate | 1984 CA | 6/1/1984 | .20 | $875 | $175.00 |
| Jesse Sharf | Partner—Real Estate | 1986 CA | 6/1/1986 | 6.40 | $925 | $5,920.00 |
| Wayne P. McArdle | Partner—Corporate | 1995 UK | 6/16/2001 | 17.20 | $1,110.0 | $19,092.00 |
| Dora Arash | Partner – Tax | 1995 CA | 10/13/1997 | 1.00 | $730 | $730.00 |
| Shireen B. Rahnema | Of Counsel—Real Estate | 1998 CA | 2/6/2006 | 71.60 | $650 | $46,540.00 |
| Jesse I. Shapiro | Associate—Real Estate | 2000 NJ 2001 NY 2006 CA | 9/12/2005 | 3.30 | $650 | $2,145.00 |
| Samuel A. Newman | Partner—Corporate | 2001 CA | 9/4/2001 | 0.70 | $665 | $465.50 |
| Daniel D. Ball | Associate—Real Estate | 2002 CA | 5/14/2001 | 0.40 | $625 | $250.00 |
| David S. Egdal | Associate—Real Estate | 2003 CA | 11/3/2003 | 175.60 | $615 | $107,994.00 |
| Farshad E. More | Associate—Real Estate | 2003 CA | 9/2/2003 | 61.00 | $615 | $37,515.00 |
| Danielle A. Katzir | Associate—Real Estate | 2004 CA | 5/19/2003 | 2.00 | $595 | $1,190.00 |
| Douglas M. Champion | Associate—Real Estate | 2006 CA | 9/5/2006 | 9.50 | $515 | $4,892.50 |
| Milena Radoycheva | Associate—Corporate | 2006 UK | 10/9/2006 | 9.60 | $640 | $6,144.00 |
| Claire Vigil | Associate – Real Estate | 2006 CA | 4/25/2005 | 20.70 | $595 | $12,316.50 |
| Kelsey M. Lestor | Associate—Real Estate | 2007 CA | 10/1/2007 | 4.60 | $490 | $2,254.00 |
| Jeremy L. Graves | Associate—Litigation | 2007 TX | 10/6/2008 | 50.40 | $490 | $24,696.00 |
| Julie Arnaoutova | Associate—Real Estate | 2007 CA | 8/6/2007 | 4.30 | $515 | $2,214.50 |
| Linn Mayhew | Associate—Global Finance | 2007 UK | 9/20/2004 | 4.00 | $625 | $2,500.00 |

| NAME | POSITION | YEAR ADMITTED TO BAR | DATE OF EMPLOYMENT | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|---|
| Leanne Maxwell | Associate | 2008 TX | 5/17/2007 | 1.50 | $415 | $622.50 |
| Carol A. Fabrizio | Associate—Real Estate | 2008 CA | 11/3/2008 | 62.40 | $415 | $25,896.00 |
| Daniel J. Aleshire | Associate—Real Estate | 2009 CA | 11/30/2009 | 3.50 | $360 | $1,260.00 |
| Sarah R. Garber | Associate—Real Estate | 2009 CA | 11/16/2009 | 26.30 | $360 | $9,468.00 |
| Michael Szczurek | Associate—Real Estate | 2009 CA | 11/30/2009 | 17.50 | $360 | $6,300.00 |
| Irene Hymanson | Senior Paralegal—Real Estate | N/A | 11/02/1987 | .90 | $345 | $310.50 |
| Deborah D. Hoxie | Paralegal—Real Estate | N/A | 2/15/1996 | 10.00 | $330 | $3,300.00 |
| Jennifer M. Contreras | Paralegal—Bankr. | N/A | 2/23/2004 | 23.50 | $300 | $7,050.00 |
| Sherif Farrag | Paralegal—Bankr. | N/A | 6/17/2009 | 105.00 | $245 | $25,725.00 |
| Leila A. John | Legal Assistant | N/A | 7/14/2008 | .70 | $245 | $171.50 |
| TOTAL: | | | | 757.00 | | $412,437.50 |

## PROFESSIONALS AND PARAPROFESSIONALS RENDERING SERVICES IN GBP

### From February 1, 2010 through May 31, 2010

| NAME | POSITION | YEAR ADMITTED TO BAR | DATE OF EMPLOYMENT | HOURS | RATE | RATE IN USD[1] | AMOUNT IN USD |
|---|---|---|---|---|---|---|---|
| Nicholas P.B. Aleksander | Partner—Tax | 1986 UK | 2/5/2001 | 1.30 | £625 | $906 | $1,178.13 |
| Dorothee Fischer-Appelt | Partner—Corporate | 1997 NY 2001 UK | 11/27/2006 | 3.50 | £555 | $805 | $2,816.63 |
| Wayne P. Mcardle | Partner—Corporate | 1995 UK | 6/16/2001 | 155.30 | £632 | $916 | $142,205.13 |

---

[1] All amounts have been converted into U.S. Dollars using the exchange rate that was in effect as of May 31, 2010 of USD 1.45 per GBP 1.00.

| NAME | POSITION | YEAR ADMITTED TO BAR | DATE OF EMPLOYMENT | HOURS | RATE | RATE IN USD[1] | AMOUNT IN USD |
|---|---|---|---|---|---|---|---|
| Selina Sagayam | Partner—Corporate | 2003 UK | 1/17/2007 | 1.50 | £580 | $841 | $1,261.50 |
| Gregory A. Campbell | Partner—Corporate | 1999 UK 2004 NY | 6/2/2008 | 32.60 | £512 | $743 | $24,219.35 |
| Edward A. Tran | Associate—Corporate | 2001 NY 2007 CA 2010 UK | 1/4/2010 | 53.20 | £467 | $677 | $35,997.70 |
| Allan R. W. Neil | Associate—Litigation | 2001 UK | 10/6/2005 | 10.70 | £473 | $687 | $7,345.70 |
| Milena Radoycheva | Associate—Corporate | 2006 UK | 10/9/2006 | 224.40 | £363 | $526 | $118,138.03 |
| David Yoon | Associate—Corporate | 2006 UK | 9/4/2006 | 11.80 | £357 | $518 | $6,106.68 |
| Howard Watt | Associate—Corporate | 2006 UK | 12/3/2007 | 11.80 | £355 | $515 | $6,074.05 |
| Linn Nathalie Mayhew | Associate—Corporate | 2007 UK | 1/1/2008 | 7.20 | £335 | $486 | $3,497.40 |
| Jay Ze | Associate—Corporate | 2007 UK | 9/3/2007 | .50 | £335 | $486 | $242.88 |
| Jonathan Organ | Associate | 2008 UK | 9/22/2008 | 22.50 | £315 | $457 | $10,276.88 |
| TOTAL: | | | | 536.30 | | | $359,360.03 |

Total Professional Hours: ................... 1153.20
Total Paraprofessional Hours: ............. 140.10
Total Hours: ....................................... 1293.30
Total Fee Amount: ..................... $771,797.53
Blended Rate: ..................................... $596.76
Excluding Paraprofessional Hours:  $637.56

3

**GIBSON, DUNN & CRUTCHER LLP**
Wayne P.J. McArdle
Telephone House
2-4 Temple Avenue
London EC4Y 0HB
Telephone: +44 (0)20 7071-4000
Facsimile: +44 (0)20 7070-4244

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
                                            :
**In re**                                   :      **Chapter 11 Case No.**
                                            :
**LEHMAN BROTHERS HOLDINGS INC., et al.**   :      **08-13555 (JMP)**
                                            :
                        **Debtors**         :      **(Jointly Administered)**
                                            :
                                            :
---------------------------------------------------------------------x

**THIS APPLICATION APPLIES TO:**

 **X**   All Debtors

### SECOND APPLICATION OF GIBSON, DUNN & CRUTCHER LLP, AS A 327(e) PROFESSIONAL, FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM FEBRUARY 1, 2010 THROUGH MAY 31, 2010

Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), a professional providing services to

Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), files pursuant

to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), this

application (the "Application") for interim allowance of compensation for professional services

performed by Gibson Dunn for the period from February 1, 2010 through May 31, 2010 (the

4

"Compensation Period"), and for reimbursement of its actual and necessary expenses incurred during the Compensation Period. Gibson Dunn respectfully represents:

## JURISDICTION

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, respectively. The statutory predicates for the relief requested herein are sections 330 and 331 of the Bankruptcy Code.

## GENERAL BACKGROUND

2.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

4.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

5.     On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

6.     Gibson Dunn began performing legal services on behalf of the Debtors as an Ordinary Course Professional pursuant to this Court's *Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business*, dated November 5, 2008 [Docket No. 1394] (the "OCP Order"). In accordance with the procedures set forth in the OCP Order, such retention became effective *nunc pro tunc* to September 15, 2008 upon the filing of the affidavit of Jesse Sharf [Docket No. 2444] and the expiration of the relevant objection period. Subsequently, Gibson Dunn was retained as special counsel pursuant to section 327(e) of the Bankruptcy Code *nunc pro tunc* to September 1, 2009 pursuant to this Court's *Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing the Employment and Retention of Gibson, Dunn & Crutcher LLP, As Special Counsel to the Debtors,* Nunc Pro Tunc *to September 1, 2009* [Docket No. 9857].

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

7.     This Application is Gibson Dunn's second application for interim compensation and reimbursement of expenses as a 327(e) professional in these chapter 11 cases.

8.     Gibson Dunn prepared this Application in accordance with the *Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases*, adopted by the Court on April 19, 1995 (the "Local Guidelines"), the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, adopted on January 30, 1996 (the "UST Guidelines"),

this Court's *Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals* [Docket No. 4165] (the "Interim Compensation Order"), and this Court's *Order Appointing Fee Committee and Approving Fee Protocol* [Docket No. 3651] (the "Fee Protocol Order," and together with the Local Guidelines, the UST Guidelines, and the Interim Compensation Order, the "Guidelines"). Pursuant to the Local Guidelines, a certification regarding compliance with the Guidelines is annexed hereto as Exhibit A.

9.    Gibson Dunn seeks allowance of interim compensation for professional services rendered to the Debtors during the Compensation Period in the amount of $771,797.53,[1] and for reimbursement of expenses incurred in connection with such services in the amount of $12,644.51. During the Compensation Period, Gibson Dunn attorneys and paraprofessionals expended a total of 1,293.30 hours for which compensation is requested.

10.    There is no agreement or understanding between Gibson Dunn and any other person for the sharing of compensation to be received for services rendered in these cases.

11.    Gibson Dunn's fees in these cases are billed in accordance with its existing billing rates and procedures. The rates Gibson Dunn charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are the same rates Gibson Dunn charges for professional and paraprofessional services rendered in comparable non-bankruptcy

---

[1]  Although some of Gibson Dunn's services were billed in GBP, all amounts have been converted into U.S. Dollars using the exchange rate that was in effect as of May 31, 2010 of USD 1.45 per GBP 1.00.

matters. Such fees are reasonable based on the customary compensation charged by comparably

skilled practitioners in comparable non-bankruptcy cases in a competitive international legal

market.

     12.    Pursuant to the UST Guidelines, annexed hereto as Exhibit B is a schedule setting

forth: (a) all Gibson Dunn professionals and paraprofessionals who have performed services in

these chapter 11 cases during the Compensation Period; (b) the capacities in which each such

individual is employed by Gibson Dunn; (c) the department in which each such individual

practices; (d) the hourly rate charged by Gibson Dunn for services performed by each such

individual; (e) the aggregate number of hours expended by each such individual on behalf of the

Debtors during the Compensation Period and (f) the year in which each professional was first

licensed to practice law.

     13.    Annexed hereto as Exhibit C is a schedule specifying the categories of expenses

for which Gibson Dunn is seeking reimbursement and the total amount of reimbursement

requested for each such expense category.

     14.    Pursuant to the UST Guidelines, annexed hereto as Exhibit D is a summary by

project category of the services performed by Gibson Dunn during the Compensation Period.

     15.    Gibson Dunn has attempted to include in this Application all time and expenses

relating to the Compensation Period. However, delays in processing such time and receiving

invoices for certain expenses may occur. Accordingly, Gibson Dunn reserves the right to

supplement this Application prior to the date set by this Court for hearing this Application to

request additional compensation for professional services rendered and reimbursement of

expenses incurred during the Compensation Period.

16.     Gibson Dunn maintains computerized records of the time spent by all Gibson Dunn attorneys and paraprofessionals in connection with its representation of the Debtors. Subject to redaction for attorney-client privilege where necessary to protect the Debtors and their estates, copies of such computerized records for the Compensation Period are attached hereto as Exhibit E and copies of Gibson Dunn's disbursement records for the Compensation Period are annexed hereto as Exhibit F.[1]

### SERVICES RENDERED BY GIBSON DUNN

17.     The description of services below summarizes the primary services rendered by Gibson Dunn, and highlights the benefits conferred upon the Debtors and their estates and creditors as a result of Gibson Dunn's services.

**A.     PHX TECH (MATTER # 00196)**

(Total Hours: 7.90  Total Fees: $4,399.00)

18.     The Debtors made a mezzanine loan in the amount of $6,500,000.00 in July 2006. During 2009, the borrower under the mezzanine loan threatened litigation against the Debtors for their alleged failure to fund protective advances that the borrower asserted the Debtors were required to fund and asserted that such failure resulted in the Debtors not being able to enforce the debt (the "Protective Advance Allegations"). Subsequently, the mezzanine loan matured in

---

[1] Due to the voluminous nature of these records, Gibson Dunn will not serve them with this application. Instead, these records may be viewed on the official website for the Bankruptcy Court at www.nysb.uscourts.gov, by using an account obtained from Pacer Service Center by dialing 1-800-676-6856 (from the United States) or 1-210-301-6440 (from outside the United States), or copies may be obtained upon written request to Jennifer Contreras, Gibson, Dunn & Crutcher, 200 Park Avenue, New York, NY 10166, Telephone 1-212-351-3826 or email at jcontreras@gibsondunn.com.

the fall of 2009 and it became apparent that the borrower's wholly owned subsidiary was going to default on its mortgage loan. The Debtors and the lender under the mortgage loan were parties to an intercreditor agreement which provides that the mezzanine loan is subordinate to the mortgage loan and following a mortgage loan default, mezzanine lender is not entitled to be paid on its mezzanine loan unless the mortgage loan is repaid in full.

19.     With the impending default on the mortgage loan, the Debtors elected to enter into a settlement agreement (the "Settlement") with the mortgage borrower pursuant to which the borrower would release all claims against the Debtors, the Debtors would receive a payment of approximately $550,000.00, the borrower would pay all of lender's attorney fees (up to $110,000.00), and the Debtors would agree to transfer the loan to an affiliate of the borrower if the borrower caused the mortgage lender to terminate the intercreditor agreement.

20.     Gibson Dunn has represented the Debtors to (i) defend against the Protective Advance Allegations, (ii) negotiate and document the Settlement, and (iii) negotiate and document the Assignment and the termination of the intercreditor agreement.

## B.     OCP (MATTER # 00271)

(Total Hours: 2.00  Total Fees: $1,208.00)

21.     Time billed to this matter is related to Gibson Dunn's representation of the Debtors in connection with the acquisition of the Warner Center property at 6101 Variel in Los Angeles, together with a joint venture with DS Ventures. Gibson Dunn initially negotiated a purchase contract for the property. Gibson Dunn also drafted and negotiated various agreements that governed the Debtors' portion of the deposit made by the buyer under the purchase contract, so that the Debtors could force DS Ventures to either terminate the contract and get the deposit

10

back or proceed without the Debtors after reimbursing the Debtors for their portion of the deposit. Gibson Dunn also drafted and negotiated a LLC agreement between the Debtors and DS Ventures. When the Debtors eventually decided to not make an equity investment in the property but to instead make a mezzanine loan to DS Ventures, Gibson Dunn drafted and negotiated the mezzanine loan documents with DS Ventures.

## C.    SUNCAL GENERAL (MATTER # 00280)

(Total Hours: 130.50 Total Fees: $94,801.50)

22.    Time spent on this matter involved serving as local land use and development counsel with respect to 13 different Suncal development projects, each in a different stage of development. Work has included updating the entitlement memos on all of the Suncal Property, detailing the complete entitlement and permitting history, and outlining the necessary steps to complete development of each project. Gibson Dunn has also focused on individual issues related to specific developments. For example, Gibson Dunn was asked to analyse the status of various easements to be granted to merchant builders at PacPoint. Gibson Dunn also reviewed a proposed modification to the Heartland streambed alteration agreement, as well as agreements related to the dedication of certain property required as mitigation of project impacts. Gibson Dunn also spent a significant amount of time reviewing the issue relative to the various subdivision agreements and improvement bonds for each project. Gibson Dunn researched whether the liabilities under the agreements transferred to subsequent owners, as well as the rules for accessing the subdivision bonds to complete the delinquent improvements. Gibson Dunn also gathered updated entitlement information for each of the 13 projects, and determined the

Debtors' potential rights and obligation under the development agreements applicable to the projects.

**D.    VILLA MASTER (MATTER # 00323)**

(Total Hours: .20  Total Fees: $185.00)

23.    Time billed on this matter relates to Gibson Dunn's representation of one of the Debtors' affiliates in workout discussions with its partner.

**E.    VCC WORKOUT (Matter # 00324)**

(Total Hours: 25.60  Total Fees: $15,314.00)

24.    Time billed on this matter was in connection with Gibson Dunn's representation of the Debtors and various subsidiaries of PAMI LLC (the "LB Members"), in the restructuring and work-out of various mortgage loans and/or joint ventures with subsidiaries of Venture Corporation (the "VCC Members") whereby 19 LB Members received an assignment of membership interests in the joint ventures from the VCC Members, and 2 LB Members assigned their membership interests in the joint ventures to a subsidiary of the VCC Members.

**F.    CAPSTONE (MATTER # 00325)**

(Total Hours: 19.90  Total Fees: $8,866.50)

25.    Time billed to this matter relates to Gibson Dunn's representation of the Debtors in completing "buy-sell" transactions pursuant to partnership and joint venture agreements with various Capstone subsidiaries.  The Debtors either acquired or assigned their interests in the various joint ventures/partnerships from or to the Capstone subsidiaries.

**G.    EXCALIBUR (MATTER # 00326)**

(Total Hours: 283.50  Total Fees: $189,597.65)

12

26.     Time billed to this matter by Gibson Dunn represents work performed in connection with the assisting the Debtors in their efforts to obtain control (the "LB RE Transaction") over the primary asset of LB RE Financing No. 3 Limited (in administration), a private limited company incorporated and registered in England and Wales ("LB RE"). LBHI is the primary creditor of LB RE, which is in administration (insolvency proceedings) in the United Kingdom.[2] LB RE is the holder of a €722,181,000 Class B Note due 2054 (the "B Note") issued by Excalibur Funding No. 1 PLC ("Excalibur"), an orphan special purpose vehicle that Lehman Brothers created in May 2008 to issue real estate backed commercial debt obligations. Pursuant to the LB RE Transaction, LBHI will (i) gain control over most of the commercial decisions relating to the B Note, (ii) secure the right to recover from LB RE amounts advanced to it in respect of the B Note, in priority to any other claims of creditors, and (iii) obtain the right, in certain circumstances, to acquire the B Note (or shares of LB RE). The Debtors will benefit from the LB RE Transaction in a number of ways which are articulated in the *Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004 for Authorization to Enter Into Agreements to Provide Funding to LB RE Financing No. 3 Limited (in administration) in Connection with Certain Real Estate Investments* [Docket No. 5651] (the "LB RE Transaction Approval Motion"). These include direct benefits such as ensuring that the B Note is effectively managed and indirect benefits such as creating synergies with other parties that have an interest in the underlying loan portfolio.

---

2   LBHI will be directly and indirectly entitled to approximately 98.1% of LB RE's estate

13

27.     During the Compensation Period, Gibson Dunn advised LBHI on issues in connection with some of the collateral debt obligations owned by Excalibur including (i) Cerep III, where a substantial cash amount belonging to the borrower was trapped in an account of Lehman Brothers International (Europe) Limited (in its role as custodian) instead of being released to Excalibur as debt service, (ii) Queensbridge House, where LBHI sought legal advice on acquiring the senior loan from Excalibur through a joint venture with the current equity owners of Queensbridge House, and (iii) an alleged event of default under the Drapers Gardens loan, and implications for the calculations of the coverage tests under the Excalibur securitization documents. Gibson Dunn also advised in connection with the allegations by the Issuer that LB RE had failed to fund monies committed under the B Note Committed Subscription Agreement and potential implications of such alleged failure to fund.

## H.    1000 ISLANDS MALL RESTRUCTURING (MATTER # 00327)

(Total Hours: 11.50  Total Fees: $7,394.28)

28.     Time billed to this matter by Gibson Dunn represents work performed in connection with assisting the Debtors in their efforts to recover amounts due to Lehman Commercial Paper Inc. ("LCPI") from 1000 Islands Mall Finance Company Inc.

29.     Pursuant to a senior credit agreement dated 25 July 2007 (the "Senior Credit Agreement") between, amongst others, Lehman Brothers Canada Holdings Inc. and Boultbee Canada Holdings Inc, as borrowers (the "Senior Borrowers"), DekaBank Deutsche Girozentrale, as lender (the "Senior Lender") and certain guarantors, the Senior Lender made available to the Senior Borrowers a secured term loan facility in an amount of CAN$37,725,000 (the "Senior Loan").

14

30.    Pursuant to a mezzanine credit agreement dated 25 July 2007 (the "Mezzanine Credit Agreement") between, amongst others, 1000 Islands Mall Finance Company Inc., as borrower (the "Mezzanine Borrower"), LCPI, as lender (the "Mezzanine Lender"), Lehman Brothers International (Europe), as administrative agent and 1000 Islands Mall LP, as guarantor, the Mezzanine Lender made available to the Mezzanine Borrower a secured term loan facility in an amount of CAN$8,627,925 (the "Mezzanine Loan").

31.    In accordance with the terms of an intercreditor agreement dated 25 July 2007 (the "Intercreditor Agreement"), between, amongst others, the Senior Borrowers, the Senior Lender, the Mezzanine Borrower and the Mezzanine Lender, the amounts owed to the Mezzanine Lender under the Mezzanine Credit Agreement are subordinated to the amounts owed to the Senior Lender under the Senior Credit Agreement.

32.    The Senior Borrowers have defaulted under the Senior Credit Agreement by failing to meet their payment obligations and by failing to comply with certain other covenants. In accordance with the Senior Credit Agreement, the Senior Lender has notified the Senior Borrowers of the occurrence of Events of Default and has requested that such Events of Default are promptly remedied.  The Senior Lender has informed the Senior Borrowers that it has reserved its right to accelerate the Senior Loan.

33.    An Event of Default under the Senior Loan gives rise to a default under the Mezzanine Loan. In addition, the Mezzanine Borrower has failed to meet its payment obligations under the Mezzanine Loan.  In accordance with the Mezzanine Loan Agreement, the Mezzanine Lender has notified the Mezzanine Borrower of the events of default and has requested that such events of default are promptly remedied.  The Mezzanine Lender has informed the Mezzanine Borrowers that it has reserved its right to accelerate the Mezzanine Loan.

15

34.    During the Compensation Period, work undertaken by Gibson Dunn lawyers included advising on the acquisition of the Senior Loan from the Senior Lender.

## I.    CRV II - FORECLOSURE (MATTER # 00328)

(Total Hours: 28.60  Total Fees: $16,270.50)

35.    Time billed to this matter represents work performed in representing the Debtors in the foreclosure of a Deed of Trust secured by real property located in Riverside County, California.

## J.    THUNDERBIRD (MATTER # 00329)

(Total Hours: 2.20  Total Fees: $1,368.80)

36.    Time billed to this matter by Gibson Dunn represents work performed in connection with (i) a loan agreement dated 7 October 2005 (subsequently amended and restated on 10 April 2007) in respect of a €22,900,000 investment facility and a €5,769,826 capex facility relating to a portfolio of properties in Berlin, Germany entered into by (among others) LCPI (as original lender) and Phoenix II Mixed H Sarl and affiliates thereof (as borrowers and guarantors) (the "Firebird Loan") and (ii) a loan agreement dated 29 June 2006 (last amended and restated on 19 October 2006) in respect of a €129,267,180 acquisition facility and a €14,804,849 capex facility relating to a portfolio of fifty-five properties in Germany entered into by (among others) LCPI (as original lender) and Thunderbird B Sarl and affiliates thereof (as borrowers) (the "Thunderbird Loan"). Pursuant to a master sale loan agreement dated 12 April 2007 (the "Master Sale Loan Agreement"), the Firebird Loan and the Thunderbird Loan (among others) were sold by LCPI to Windermere X CMBS Limited ("Windermere") with the exception of undrawn (at that time) parts of the capex facilities of each of the loans, which were approximately €4,897,317

16

for the Firebird Loan (the "Firebird Capex Loan") and €13,383,014 for the Thunderbird Loan

(the "Thunderbird Capex Loan"). The Firebird Capex Loan has since been drawn down in full by

the borrowers and an aggregate of €3,626,734 of the Thunderbird Capex Loan have been drawn

down by the borrowers.  The Master Sale Loan Agreement envisaged that upon the advance of

further amounts pursuant to the Firebird Capex Loan and the Thunderbird Capex Loan by LCPI

to the relevant borrowers and provided that certain tests were satisfied at the relevant time,

Windermere will pay an amount equal to such advances to Lehman Brothers Financing Limited

("LBF") who will use such amounts to purchase such advances from LCPI, and LBF will

thereafter transfer such advances to Windermere. The amounts advanced by LCPI to the relevant

borrowers under the Firebird Capex Loan and the Thunderbird Capex Loan are still on LCPI's

balance sheet due to the relevant tests for the acquisition of the loans by Windermere not being

satisfied.

37.    During the Compensation Period, Gibson, Dunn provided advice on a proposed

extension to the maturity date of the Thunderbird Loan.

## K.    EL CENTRO - FORECLOSURE (MATTER # 00330)

(Total Hours: 22.00  Total Fees: $9,118.50)

38.    Time billed to this matter represents work performed in connection with

representing the Debtors in the foreclosure of a Deed of Trust secured by real property located in

El Centro, California.

## L.    SILVERLEAF (MATTER # 00331)

(Total Hours: 15.80  Total Fees: $9,699.05)

39.    Time billed to this matter by Gibson Dunn represents work performed in connection with the assisting the Debtors in their efforts to ensure that their subsidiary, LB Greenleaf Opportunity LLC ("LB Greenleaf"), has complied with its obligations, and remedied any continuing events of default pursuant to a joint venture agreement dated 20 July 2007 (the "Greenleaf JV Agreement") between LB Greanleaf, Silverleaf Business Solutions ("Silverleaf"), LLC. and Greenleaf Holding Ltd.

40.    During the Compensation Period, Gibson Dunn provided advice to LBHI on the Grenleaf JV Agreement and related documents and advised in connection with the sale by LB Greenleaf of its interests in the joint venture to Silverleaf, including advising on the sale documents and assisting with the completion of the sale.

## M.    CENTRA (MATTER # 00332)

(Total Hours:  134.80  Total Fees:  $174,884.25)

41.    Time billed to this matter by Gibson Dunn represents work performed in connection with the assisting the Debtors in their efforts to (1) address certain events of default under a Building Loan Agreement dated 1 December 2006 (the "Building Loan Agreement") and (2) ensure that its indirect subsidiary, LB Tirador LLC ("LB Tirador"), has complied with its obligations, and protected its rights pursuant to a joint venture agreement dated 1 December 2006 (the "Tirador JV Agreement") between LB Tirador and Centra Tirador LLC.

42.    During the Compensation Period, Gibson Dunn provided advice to the Debtors in connection with the Building Loan Agreement and the Tirador JV Agreement, including addressing various events of default and other matters under the Building Loan Agreement and the Tirador JV Agreement, noticing and conducting a trustee's sale of real property securing the loan, and exiting the joint venture.

18

**N.    RE HOLDINGS STRATEGY ADVICE (MATTER # 00334)**

(Total Hours: 185.50  Total Fees: $125,744.73)

43.    Time billed to this matter by Gibson Dunn represents work performed assisting the Debtors in their consideration of various strategies for seeking to gain greater control over LB UK RE Holdings Limited and Lehman Brothers (PTG) Limited (the "UK Entities"). The UK Entities are currently in UK administration. The Debtors are, directly and indirectly, the most significant creditors of the UK Entities. The UK Entities hold, directly or indirectly, interests in various real estate and real estate assets based in the UK and the rest of Europe. The Debtors wish to assume greater control over the assets held by the UK Entities. Gibson Dunn's work in connection with this matter has extended to engaging and instructing Robin Dicker QC to advise on various legal issues relating to the administration of the UK Entities, and preparing detailed briefing materials for counsel, attending various meetings with counsel, and preparing detailed notes of the meetings with counsel. Gibson Dunn's work has also involved considering various legal issues arising out of administration of the UK Entities, and attending various meetings with representatives of the Debtors to discuss the matter and develop a strategy for dealing with the administrators and other creditors (through a formal insolvency process under the Insolvency Act (1986) as amended). Gibson Dunn also prepared a detailed draft proposal to be sent to the UK administrators of the UK Entities, as well as time lines and decision charts for proceedings to seek greater control of the UK Entities and other related materials including drafting correspondence with the administrators of RE Holdings and other creditors of RE Holdings.

**O.    RETENTION AND FEE APPLICATIONS (MATTER #00335)**

(Total Hours: 211.90  Total Fees: $86,001.00)

44.     Time billed to this matter by Gibson Dunn represents work performed in connection with preparing Gibson Dunn's retention and fee applications to be filed with the Court and in performing other tasks related to Gibson Dunn's obligations as a retained professional.

## P.     CENTRA PILOT RESTRUCTURING (MATTER # 00337)

(Total Hours:  135.20  Total Fees:  $76,332.00)

45.     Time billed to this matter by Gibson Dunn represents work performed in connection with the assisting the Debtors in their efforts to (1) address certain events of default under the Pilot Loan Agreement and (2) ensure that its indirect subsidiary, LB Pilot, has complied with its obligations, and protected its rights pursuant to the Pilot JV Agreement.

46.     During the Compensation Period, Gibson Dunn provided advice to LBHI in connection with the Pilot Loan Agreement and the Pilot JV Agreement, including addressing various events of default and other matters under the Pilot Loan Agreement and the Pilot JV Agreement, noticing and conducting a trustee's sale of real property securing the loan, addressing matters related to various purchase offers made in respect of the Pilot property, and exiting the joint venture.

## Q.     LAS ALDEAS (MATTER #00338)

(Total Hours:  38.40  Total Fees:  $25,477.50)

47.     Time billed to this matter represents work performed in connection with the review and assessment of the status of the entitlements for a residential project located in unincorporated Imperial County, within the sphere of influence of the City of El Centro, California (the "Project") partly owned by a subsidiary of LBHI, CRV Lerno-Verhaegen L.P.

(the "Developer"), including review of a proposed settlement of litigation that was filed by the

School District challenging the Project entitlements.

**R.    LEHMAN BROTHERS FINANCING LIMITED (MATTER #00339)**

(Total Hours: 37.80  Total Fees: $25,553.53)

48.    Time billed to this matter by Gibson Dunn represents work performed in

connection with advising the Debtors on the Lehman Brothers Financing Limited's ("LBF")

position (as vendor of certain collateralized loan obligations) in Windermere XIV CMBS

Limited ("Windermere XIV") in view of Windermere XIV threatening to file a statutory demand

against LBF as a result of LBF (allegedly) failing to make reimbursement payments to

Windermere XIV pursuant to the terms of a master sale agreement entered into by (among

others) Windermere XIV, LBF and Lehman Brothers International (Europe) on 28 November

2007.

## ALLOWANCE OF COMPENSATION

49.    Section 331 of the Bankruptcy Code allows a bankruptcy court to authorize

interim compensation for "[a] trustee, an examiner, a debtor's attorney, or any professional

person employed under section 327 or 1103 of this title . . . not more than once every 120 days

after an order for relief in a case under this title...."

50.    Section 330 of the Bankruptcy Code authorizes the bankruptcy court to award a

trustee, examiner, ombudsman or professional employed pursuant to 11 U.S.C. § 327 reasonable

compensation for services and reimbursement of expenses.  Specifically, section 330 of the

Bankruptcy Code provides as follows:

> (a)(1) After notice to the parties in interest and to the United States Trustee and a
> hearing, and subject to sections 326, 328, and 329, the court may award to a
> trustee . . . or a professional person employed under section 327 or 1103 —

> (A)    reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B)    reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

51.    Section 330(a)(3) of the Bankruptcy Code provides that in determining the amount of reasonable compensation to be awarded, the Court should consider the nature, extent, and value of the services rendered to the estate, taking into account all relevant factors, including:

> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(F).

52.    As analyzed below, Gibson Dunn submits that the elements governing awards of compensation justify the allowance requested.

**(1)    The Time and Labor Required**

53.    During the Compensation Period, 1,293.30 recorded hours have been expended by Gibson Dunn's partners, counsel, associates and paraprofessionals in providing the requested professional services.  Exhibits B, D, and E attached hereto detail the time and labor expended by Gibson Dunn on behalf of the Debtors.  Gibson Dunn has made every effort to coordinate its efforts with those of the Debtors' bankruptcy counsel so as to avoid any duplication of efforts.  The number of hours spent by Gibson Dunn is commensurate with the defined tasks Gibson Dunn has performed and continues to perform in these chapter 11 cases.

**(2)    The Rates Charged for Such Services**

54.    During the Compensation Period, Gibson Dunn's hourly billing rates ranged from $665 to $1,110 per hour for partners, $360 to $677 for staff attorneys, of counsels and associates, and $245 to $345 for paraprofessionals.  Based on the recorded hours expended by Gibson Dunn's attorneys and paraprofessionals, the average hourly billing rate for Gibson Dunn's services was $596.76

55.    The amounts charged to the Debtors for the particular services rendered approximate the rates charged other clients of Gibson Dunn for such services.  Indeed, if the firm's retention in these matters were not pursuant to the Bankruptcy Code, Gibson Dunn would charge the Debtors and expect to receive, on a current basis, an amount at least equal to the amounts requested herein for the professional services rendered.

56.    In connection with the provision of its legal services, Gibson Dunn has sought, within the parameters required for effective legal representation, to minimize legal expenses.  Moreover, consistent with its belief that strict fee management inures to the benefit of the

Debtors, their creditors, the Court, and ultimately the public, Gibson Dunn diligently monitored

the integrity of its bills. Gibson Dunn carefully reviewed the entries of all professionals and

paraprofessionals who worked on these cases to determine the reasonableness of the monthly

totals for services rendered.

### (3) The Necessity of the Services and the Benefit to the Estate

57. As detailed above, the services Gibson Dunn provided to the Debtors have

conferred substantial benefit on the Debtors' estates. Gibson Dunn's services to the Debtors have

also served the desired goal of allowing for continuity of service in these non-bankruptcy

matters. This has allowed Debtors' bankruptcy counsel to focus on issues more closely related to

the reorganization of Debtors' operations.

### (4) Customary Compensation

58. Gibson Dunn relies on the Court's experience and knowledge with respect to the

compensation awards in similar cases. Given that frame of reference, Gibson Dunn submits that,

in light of the circumstances of the case and the substantial benefits derived from Gibson Dunn's

assistance, compensation in the amount requested is fair and reasonable.

### (5) Whether Services Were Performed In a Reasonable Amount of Time

59. Gibson Dunn represents and can demonstrate to this Court that the services were

performed in a reasonable amount of time, given the complexity of the issues involved and the

many and varied legal issues facing the Debtors. Gibson Dunn's detailed and thorough

contemporaneous time records demonstrate that the time expended on various tasks was

necessary and appropriate to the vigorous representation of the Debtors. From the earliest stages

of Gibson Dunn's involvement in the case, every attempt was made to limit the hours worked to

the lowest amount feasible, and to avoid duplication of effort and other unnecessary costs. On

occasion, Gibson Dunn attorneys rendered services on behalf of the Debtors under time

constraints. Moreover, during the Compensation Period, Gibson Dunn attorneys were required

to perform services on behalf of the Debtors to the preclusion of other firm matters and clients.

### (6)    Board Certification

60.    Because the services provided by Gibson Dunn were, by design, primarily non-

bankruptcy in nature, Gibson Dunn submits that board certification in bankruptcy law is not a

particularly relevant factor. In preparing this fee application and when otherwise appropriate,

however, the Gibson Dunn attorneys performing services for the Debtors did employ the

assistance of experienced attorneys in Gibson Dunn's bankruptcy department.

### (7)    Whether Compensation is Reasonable

61.    Gibson Dunn's services have been rendered in a highly efficient manner by

attorneys who have achieved a high degree of expertise in their respective fields. The skill and

competency of the Gibson Dunn attorneys who have represented the Debtors are amply

demonstrated by the results achieved in these cases. Gibson Dunn's highly professional and

expert group of attorneys has ensured that the representation of the Debtors has progressed in an

efficient and expeditious manner.

62.    Gibson Dunn thus represents and can demonstrate that the compensation sought

for the services rendered and expenses incurred in connection with these chapter 11 cases is

reasonable and commensurate with those rates charged by comparably skilled practitioners.

25

63.    Gibson Dunn's fee request is based upon the normal hourly rates that Gibson

Dunn charges its non-bankruptcy clients.  Taking into consideration the time and labor spent, the

nature and extent of the representation, and the nature of these proceedings, Gibson Dunn

believes the allowance asked is reasonable.

64.    Based upon Gibson Dunn's blended hourly rate of $596.76 for professionals

(including paraprofessionals) and $637.56 (excluding paraprofessionals), Gibson Dunn submits

that its rates are comparable to those prevailing in the relevant international market.  Therefore,

Gibson Dunn's fees are fair and reasonable.

65.    Based on the factors to be considered under sections 330 and 331 of the

Bankruptcy Code, the results Gibson Dunn has achieved to date more than justify allowance in

full of Gibson Dunn's compensation and reimbursement request.

## DISBURSEMENTS

66.    For this Compensation Period, Gibson Dunn requests reimbursement of

$12,644.51 for reasonable and necessary out-of-pocket expenses incurred on behalf of the

Debtors.  Exhibit C attached hereto is a summary of such expenses, and Exhibit F attached hereto

details each of the actual expenses incurred by Gibson Dunn on behalf of the Debtors during the

Compensation Period.  Each of the charges reflected on Exhibits C and F is based on the actual

and necessary expenses incurred by Gibson Dunn, in the exercise of reasonable discretion, on

behalf of the Debtors.

67.    Gibson Dunn's normal billing rates do not take these expenses into consideration.

Rather, Gibson Dunn bills each expense to the applicable client.  A prime example of the

rationale for such an approach is photocopying expense.  Because of the great disparity between

26

the photocopying requirements of different clients, it is virtually impossible to absorb

photocopying costs fairly and equitably into Gibson Dunn's normal billing rates. Accordingly,

Gibson Dunn charges each client for photocopying expenses separately. Photocopies are billed

at $.10 or £.07 per page (as applicable). Similarly, Gibson Dunn charges each client separately

for telephone, postage, overnight courier, travel expenses, computerized legal research, and

messenger services, in each case at Gibson Dunn's cost. Gibson Dunn does not charge for

incoming or outgoing facsimile transmissions.

68.    Gibson Dunn does not include the amortization of the cost of any investment,

equipment, or capital outlay in its charges for these services.

69.    Any services billed by a third party vendor, with the exception of certain

computerized research charges, are charged to the Debtors in the precise amount billed to and

paid by Gibson Dunn. Like many large law firms, Gibson Dunn has negotiated a special

arrangement with computerized research companies under which Gibson Dunn pays a flat rate

monthly fee for computerized research services. Consistent with its general policy of billing

out-of-pocket expenses only to clients for whom the use of such services is required, Gibson

Dunn separately charges each client for computerized research. To account for such charges and

pass through Gibson Dunn's cost savings resulting from its special arrangements, Gibson Dunn

charges those clients for whom such services are required up to eighty percent of the rates

charged by the computerized research company to the general public for such services. These

charges are intended to cover Gibson Dunn's direct costs for computerized research. A

determination of Gibson Dunn's actual direct cost for computerized research, however, is

dependent on both the volume of the research performed and the total expenses attributable to

such research on an annual basis.  As a result, it is possible that Gibson Dunn will ultimately

realize a discount greater than the twenty percent or more passed on to the client.

70.      Gibson Dunn has made reasonable efforts to minimize its disbursements in these

cases.  Each of the expenses incurred by Gibson Dunn in providing professional services to the

Debtors was necessary, reasonable, and justified under the circumstances to serve the needs of

the Debtors, their estates, and creditors.

WHEREFORE, Gibson Dunn requests that allowance be made to it in the sum of

$771,797.53 as compensation for necessary professional services rendered to the Debtors for the

Compensation Period, and the sum of $12,644.51 for reimbursement of actual necessary costs

and expenses incurred during that Period, and further requests such other and further relief as this

Court may deem just and proper.


Dated:    August 16, 2010          **GIBSON, DUNN & CRUTCHER LLP**
      London, England

                                     By:  Wayne P.J. McArdle
                                     Telephone House
                                     2-4 Temple Avenue
                                     London EC4Y 0HB
                                     Telephone: +44 (0)20 7071-4000
                                     Facsimile: +44 (0)20 7070-4244

                                     Special Counsel to the Debtors
                                     and Debtors in Possession

100914653_4.DOC

**EXHIBIT A**

**CERTIFICATION OF WAYNE P.J. McARDLE**

**GIBSON, DUNN & CRUTCHER LLP**
Wayne P.J. McArdle
Telephone House
2-4 Temple Avenue
London EC4Y 0HB
Telephone: +44 (0)20 7071-4000
Facsimile: +44 (0)20 7070-4244

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                       :

**In re**                       :              **Chapter 11 Case No.**
                       :

**LEHMAN BROTHERS HOLDINGS INC., et al.**   :              **08-13555 (JMP)**
                       :

                  **Debtors**    :              **(Jointly Administered)**
                       :
                       :
-------------------------------------------------------------------x

THIS CERTIFICATION APPLIES TO:

  **X**   All Debtors

### CERTIFICATION UNDER GUIDELINES IN RESPECT OF APPLICATION OF GIBSON, DUNN & CRUTCHER LLP, AS 327(e) PROFESSIONALS, FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM FEBRUARY 1, 2010 THROUGH MAY 31, 2010

I, Wayne P.J. McArdle, hereby certify that:

1.      I am a partner with the applicant firm, Gibson, Dunn & Crutcher LLP ("Gibson Dunn"). I submit this certification in accordance with the *Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases*, adopted by the Court on April 19, 1995 (the "Local Guidelines"), the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, adopted on January 30, 1996 (the "UST Guidelines"), this Court's *Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of*

*Expenses of Professionals* [Docket No. 4165] (the "Interim Compensation Order"), and this

Court's *Order Appointing Fee Committee and Approving Fee Protocol* [Docket No. 3651] (the

"Fee Protocol Order," and together with the Local Guidelines, the UST Guidelines, and the

Interim Compensation Order, the "Guidelines").

2.　　This certification is made in respect to Gibson Dunn's application, dated August

16, 2010 (the "Application"), for interim compensation and reimbursement of expenses for the

period from February 1, 2009 through May 31, 2010 (the "Compensation Period"), in accordance

with the Guidelines.

3.　　In respect of Section A.1 of the Local Guidelines, I certify that:

      a.　　I have read the Application;

      b.　　to the best of my knowledge, information, and belief
formed after reasonable inquiry, the fees and disbursements
sought fall within the Local Guidelines;

      c.　　the fees and disbursements sought are billed at rates in
accordance with practices customarily employed by Gibson
Dunn and generally accepted by Gibson Dunn's clients; and

      d.　　in providing a reimbursable service, Gibson Dunn does not
make a profit on that service, whether the service is
performed by Gibson Dunn in-house or through a third
party.

4.　　In respect of Section A.2 of the Local Guidelines, I certify that  Gibson Dunn has

provided the Debtors and the official committee of unsecured creditors with a statement of its

fees and disbursements accrued during the previous month for all months during the

Compensation Period.

5.　　In respect of Section A.3 of the Local Guidelines, I certify that the Debtors, the

Creditors' Committee, the chairman of the Fee Committee (as defined in the Fee Protocol Order),

and the United States Trustee for the Southern District of New York will receive a copy of this

Application.


Dated: August 16, 2010                    **GIBSON, DUNN & CRUTCHER LLP**
      London, England

                                         _____
                                 By:  Wayne P.J. McArdle
Telephone House
2-4 Temple Avenue
London EC4Y 0HB
Telephone: +44 (0)20 7071-4000
Facsimile: +44 (0)20 7070-4244

Special Counsel to the Debtors
and Debtors in Possession

3

**<u>EXHIBIT B</u>**

**SUMMARY OF PROFESSIONAL COMPENSATION SOUGHT (BY TIMEKEEPER)**

**PROFESSIONALS AND PARAPROFESSIONALS RENDERING SERVICES IN USD**

**From February 1, 2010 through May 31, 2010**

| NAME | POSITION | YEAR ADMITTED TO BAR | DATE OF EMPLOYMENT | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|---|
| Joel A. Feuer | Partner—Litigation | 1981 CA | 6/1/1981 | .50 | $875 | $437.50 |
| Amy R. Forbes | Partner—Real Estate | 1984 CA | 6/1/1984 | 62.70 | $875 | $54,862.50 |
| Mark Pecheck | Partner—Real Estate | 1984 CA | 6/1/1984 | .20 | $875 | $175.00 |
| Jesse Sharf | Partner—Real Estate | 1986 CA | 6/1/1986 | 6.40 | $925 | $5,920.00 |
| Wayne P. McArdle | Partner—Corporate | 1995 UK | 6/16/2001 | 17.20 | $1,110.0 | $19,092.00 |
| Dora Arash | Partner – Tax | 1995 CA | 10/13/1997 | 1.00 | $730 | $730.00 |
| Shireen B. Rahnema | Of Counsel—Real Estate | 1998 CA | 2/6/2006 | 71.60 | $650 | $46,540.00 |
| Jesse I. Shapiro | Associate—Real Estate | 2000 NJ 2001 NY 2006 CA | 9/12/2005 | 3.30 | $650 | $2,145.00 |
| Samuel A. Newman | Partner—Corporate | 2001 CA | 9/4/2001 | 0.70 | $665 | $465.50 |
| Daniel D. Ball | Associate—Real Estate | 2002 CA | 5/14/2001 | 0.40 | $625 | $250.00 |
| David S. Egdal | Associate—Real Estate | 2003 CA | 11/3/2003 | 175.60 | $615 | $107,994.00 |
| Farshad E. More | Associate—Real Estate | 2003 CA | 9/2/2003 | 61.00 | $615 | $37,515.00 |
| Danielle A. Katzir | Associate—Real Estate | 2004 CA | 5/19/2003 | 2.00 | $595 | $1,190.00 |
| Douglas M. Champion | Associate—Real Estate | 2006 CA | 9/5/2006 | 9.50 | $515 | $4,892.50 |
| Milena Radoycheva | Associate—Corporate | 2006 UK | 10/9/2006 | 9.60 | $640 | $6,144.00 |
| Claire Vigil | Associate – Real Estate | 2006 CA | 4/25/2005 | 20.70 | $595 | $12,316.50 |
| Kelsey M. Lestor | Associate—Real Estate | 2007 CA | 10/1/2007 | 4.60 | $490 | $2,254.00 |
| Jeremy L. Graves | Associate—Litigation | 2007 TX | 10/6/2008 | 50.40 | $490 | $24,696.00 |
| Julie Arnaoutova | Associate—Real Estate | 2007 CA | 8/6/2007 | 4.30 | $515 | $2,214.50 |
| Linn Mayhew | Associate—Global Finance | 2007 UK | 9/20/2004 | 4.00 | $625 | $2,500.00 |

| NAME | POSITION | YEAR ADMITTED TO BAR | DATE OF EMPLOYMENT | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|---|
| Leanne Maxwell | Associate | 2008 TX | 5/17/2007 | 1.50 | $415 | $622.50 |
| Carol A. Fabrizio | Associate—Real Estate | 2008 CA | 11/3/2008 | 62.40 | $415 | $25,896.00 |
| Daniel J. Aleshire | Associate—Real Estate | 2009 CA | 11/30/2009 | 3.50 | $360 | $1,260.00 |
| Sarah R. Garber | Associate—Real Estate | 2009 CA | 11/16/2009 | 26.30 | $360 | $9,468.00 |
| Michael Szczurek | Associate—Real Estate | 2009 CA | 11/30/2009 | 17.50 | $360 | $6,300.00 |
| Irene Hymanson | Senior Paralegal—Real Estate | N/A | 11/02/1987 | .90 | $345 | $310.50 |
| Deborah D. Hoxie | Paralegal—Real Estate | N/A | 2/15/1996 | 10.00 | $330 | $3,300.00 |
| Jennifer M. Contreras | Paralegal—Bankr. | N/A | 2/23/2004 | 23.50 | $300 | $7,050.00 |
| Sherif Farrag | Paralegal—Bankr. | N/A | 6/17/2009 | 105.00 | $245 | $25,725.00 |
| Leila A. John | Legal Assistant | N/A | 7/14/2008 | .70 | $245 | $171.50 |
| TOTAL: | | | | 757.00 | | $412,437.50 |

## PROFESSIONALS AND PARAPROFESSIONALS RENDERING SERVICES IN GBP

### From February 1, 2010 through May 31, 2010

| NAME | POSITION | YEAR ADMITTED TO BAR | DATE OF EMPLOYMENT | HOURS | RATE | RATE IN USD[1] | AMOUNT IN USD |
|---|---|---|---|---|---|---|---|
| Nicholas P.B. Aleksander | Partner—Tax | 1986 UK | 2/5/2001 | 1.30 | £625 | $906 | $1,178.13 |
| Dorothee Fischer-Appelt | Partner—Corporate | 1997 NY 2001 UK | 11/27/2006 | 3.50 | £555 | $805 | $2,816.63 |
| Wayne P. Mcardle | Partner—Corporate | 1995 UK | 6/16/2001 | 155.30 | £632 | $916 | $142,205.13 |

---

[1] All amounts have been converted into U.S. Dollars using the exchange rate that was in effect as of May 31, 2010 of USD 1.45 per GBP 1.00.

| NAME | POSITION | YEAR ADMITTED TO BAR | DATE OF EMPLOYMENT | HOURS | RATE | RATE IN USD[1] | AMOUNT IN USD |
|---|---|---|---|---|---|---|---|
| Selina Sagayam | Partner—Corporate | 2003 UK | 1/17/2007 | 1.50 | £580 | $841 | $1,261.50 |
| Gregory A. Campbell | Partner—Corporate | 1999 UK 2004 NY | 6/2/2008 | 32.60 | £512 | $743 | $24,219.35 |
| Edward A. Tran | Associate—Corporate | 2001 NY 2007 CA 2010 UK | 1/4/2010 | 53.20 | £467 | $677 | $35,997.70 |
| Allan R. W. Neil | Associate—Litigation | 2001 UK | 10/6/2005 | 10.70 | £473 | $687 | $7,345.70 |
| Milena Radoycheva | Associate—Corporate | 2006 UK | 10/9/2006 | 224.40 | £363 | $526 | $118,138.03 |
| David Yoon | Associate—Corporate | 2006 UK | 9/4/2006 | 11.80 | £357 | $518 | $6,106.68 |
| Howard Watt | Associate—Corporate | 2006 UK | 12/3/2007 | 11.80 | £355 | $515 | $6,074.05 |
| Linn Nathalie Mayhew | Associate—Corporate | 2007 UK | 1/1/2008 | 7.20 | £335 | $486 | $3,497.40 |
| Jay Ze | Associate—Corporate | 2007 UK | 9/3/2007 | .50 | £335 | $486 | $242.88 |
| Jonathan Organ | Associate | 2008 UK | 9/22/2008 | 22.50 | £315 | $457 | $10,276.88 |
| TOTAL: | | | | 536.30 | | | $359,360.03 |

**Total Professional Hours:** ................... 1153.20
**Total Paraprofessional Hours:** ............. 140.10
**Total Hours:** ....................................... 1293.30
**Total Fee Amount:** ...................... $771,797.53
**Blended Rate:** .................................... $596.76
**Excluding Paraprofessional Hours:** $637.56

3

**EXHIBIT C**

**SUMMARY OF EXPENSE REIMBURSEMENTS SOUGHT**

**ACTUAL AND NECESSARY DISBURSEMENTS**
**INCURRED BY GIBSON, DUNN & CRUTCHER LLP IN USD FROM FEBRUARY 1,**
**2010 THROUGH MAY 31, 2010**

| DISBURSEMENT | AMOUNT |
|---|---|
| Certified Copies | 874.25 |
| Freight and Shipping | 504.23 |
| In House Duplication | 586.57 |
| Messenger and Courier Expense | 196.12 |
| On-Line Research (Lexis) | 244.59 |
| On-Line Research Nexis – Main | 272.91 |
| Outside Process Server | 206.85 |
| Telephone Charges | 155.36 |
| Travel - Taxi & Other Modes/Miles | 57.66 |
| **TOTAL:** | **$ 3,098.54** |

**ACTUAL AND NECESSARY DISBURSEMENTS**
**INCURRED BY GIBSON, DUNN & CRUTCHER LLP IN GBP FROM FEBRUARY 1,**
**2010 THROUGH MAY 31, 2010**

| DISBURSEMENT | AMOUNT[1] |
|---|---|
| Freight and Shipping | 276.24 |
| In House Duplication | 3,567.69 |
| Messenger and Courier Expense | 307.81 |
| On-Line Research (Lexis) | 160.08 |
| On-Line Research (Westlaw) | 86.35 |
| Outside Attorney | 891.75 |
| Outside Services/Consultants | 98.60 |
| Specialized Research/Filing Fees | 2,158.62 |
| Telephone Charges | 322.51 |
| Travel - Taxi & Other Modes/Miles | 1,676.32 |
| **TOTAL:** | **$9,545.97** |

---

[1] All amounts have been converted into U.S. Dollars using the exchange rate that was in effect as of May 31, 2010 of USD 1.45 per GBP 1.00.

**EXHIBIT D**

**SUMMARY OF PROFESSIONAL COMPENSATION SOUGHT (BY MATTER)**

**SUMMARY OF SERVICES BY TASK CODE FOR SERVICES
RENDERED IN USD FROM FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 52279-00196 | Phx Tech | 7.90 | $4,399.00 |
| 52279-00271 | OCP | 2.00 | $1,208.00 |
| 52279-00280 | Suncal General | 130.50 | $94,801.50 |
| 52279-00323 | Villa Master | .20 | $185.00 |
| 52279-00324 | VCC Workout | 25.60 | $15,314.00 |
| 52279-00325 | Capstone | 19.90 | $8,866.50 |
| 52279-00328 | Crv II – Foreclosure | 28.60 | $16,270.50 |
| 52279-00330 | Re Holdings Strategy Advice | 22.00 | $9,118.50 |
| 52279-00332 | Centra | 134.805 | $74,464.00 |
| 52279-00335 | Retention and Fee Applications | 211.90 | $86,001.00 |
| 52279-00337 | Centra Pilot Restructuring | 135.20 | $76,332.00 |
| 52279-00338 | Las Aldeas | 38.40 | $25,477.50 |
| **TOTAL** | | **758.30** | **$412,437.50** |

**SUMMARY OF SERVICES BY TASK CODE FOR SERVICES
RENDERED IN GBP FROM FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

| TASK CODE | DESCRIPTION | HOURS | AMOUNT[1] |
|---|---|---|---|
| 52279-00326 | Excalibur | 283.50 | $189,597.65 |
| 52279-00327 | 1000 Islands Mall Restructuring | 11.50 | $7,394.28 |
| 52279-00329 | Thunderbird | 2.20 | $1,368.80 |
| 52279-00331 | Silverleaf | 15.80 | $9,699.05 |
| 52279-00334 | Re Holdings Strategy Advice | 185.50 | $125,744.73 |
| 52279-00339 | Lehman Brothers Financing Ltd. | 37.80 | $25,555.53 |
| **TOTAL** | | **536.30** | **$359,360.03** |

---

[1]  All amounts have been converted into U.S. Dollars using the exchange rate that was in effect as of May 31, 2010 of USD 1.45 per GBP 1.00.

## **EXHIBIT E**

**CONTEMPORANEOUS TIME RECORDS**

**EXHIBIT F**

**BREAKDOWN OF DISBURSEMENTS**