**Hearing Date: To Be Determined**
**Objection Deadline: To Be Determined**

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| --------------------------------------------------------------------------x | : | |
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| --------------------------------------------------------------------------x | | |

**FIFTH INTERIM FEE APPLICATION OF THE EXAMINER AND**
**JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION**
<u>**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**</u>

SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES
FOR REVIEWING APPLICATIONS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

| | |
|---|---|
| Name of Applicant: | Anton R. Valukas (the "Examiner") and Jenner & Block LLP |
| Period for which Compensation and Reimbursement is Sought: | February 1, 2010 to May 31, 2010 |
| Authorized to Provide Professional Services to: | Anton R. Valukas, Examiner |
| Date of Notice of Appointment: | January 19, 2009 |
| Date of Retention (Jenner & Block): | February 11, 2009, *nunc pro tunc* January 19, 2009 |

| | | |
|---|---|---|
| Amount of Compensation and Expense Reimbursement Sought As Actual, Reasonable and Necessary: | Fees Requested: | $3,527,374.26[1] |
| | Expenses Requested: | $362,281.56[2] |
| Prior Amounts Requested: | Fees Previously Requested: | $48,243,130.20[3] |
| | Fees Previously Awarded: | $27,412,082.31[4] |
| | Expenses Previously Requested: | $7,586,516.80 |
| | Expenses Previously Awarded: | $4,507,931.21[5] |

_____

[1] This reflects a 10% reduction in standard hourly rates to which the Examiner and Jenner & Block have agreed because of the significant public interest associated with the Examiner's duties and responsibilities. This total also reflects the Examiner's and Jenner & Block's voluntary reduction of half their non-working travel time, as well as other time that they have voluntarily written off or not billed.

[2] The amount of expense reimbursement requested herein represents a reduction of $2,435.43 in the amount of expense reimbursement sought by the Examiner and Jenner & Block in their previously submitted monthly statements for February 2010 to May 2010. This reduction represents adjustments made to certain expense items to implement the Fee Committee's guidelines on expenses.

[3] The Examiner and Jenner & Block submitted previous fee and expense reimbursement requests in their First Interim Fee Application, covering the period January 19, 2009 to January 31, 2009, their Second Interim Fee Application, covering the period February 1, 2009 to May 31, 2009, their Third Interim Fee Application, covering the period June 1, 2009 to September 30, 2009, and their Fourth Interim Fee Application, covering the period October 1, 2010 to January 31, 2010. [Docket Nos. 3319, 4808, 6188, 8404].

[4] The Examiner's and Jenner & Block's Fourth Interim Fee Application remains subject to the Court's review and approval.

[5] The Examiner's and Jenner & Block's Fourth Interim Fee Application remains subject to the Court's review and approval.

Summary of Time Recorded in Connection With Rendering
Services to the Examiner for February 1, 2010 - May 31, 2010

ATTORNEYS

| Position | Name | Admitted to Practice | Rate[6] | Hours | Amount |
|---|---|---|---|---|---|
| Examiner | Anton R. Valukas | 1968 | 975 | 158.0 | $154,050.00 |
| Partner | Stephen L. Ascher | 1991 | 775 | 65.6 | $50,840.00 |
| Partner | Matt D. Basil | 1997 | 600 | 160.6 | $96,360.00 |
| Partner | Robert L. Byman | 1970 | 850 | 453.0 | $385,050.00 |
| Partner | Timothy J. Chorvat | 1986 | 650 | 54.3 | $35,295.00 |
| Partner | David W. DeBruin | 1980 | 775 | 0.4 | $310.00 |
| Partner | Larry P. Ellsworth | 1973 | 725 | 2.9 | $2,102.50 |
| Partner | Jerome L. Epstein | 1986 | 725 | 56.7 | $41,107.50 |
| Partner | Gabriel A. Fuentes | 1993 | 590 | 13.3 | $7,847.00 |
| Partner | Marc B. Hankin | 1992 | 750 | 97.9 | $73,425.00 |
| Partner | Katya Jestin | 1996 | 700 | 28.6 | $20,020.00 |
| Partner | Carter H. Klein | 1972 | 675 | 8.8 | $5,940.00 |
| Partner | C. John Koch | 1981 | 775 | 1.5 | $1,162.50 |
| Partner | David C. Layden | 1993 | 600 | 89.8 | $53,880.00 |
| Partner | Vincent E. Lazar | 1990 | 750 | 91.2 | $68,400.00 |
| Partner | James T. Malysiak | 1973 | 650 | 172.3 | $111,995.00 |
| Partner | Ronald L. Marmer | 1977 | 925 | 29.3 | $27,102.50 |
| Partner | Heather D. McArn | 1992 | 575 | 151.7 | $87,227.50 |
| Partner | John J. Molenda | 1999 | 580 | 2.9 | $1,682.00 |
| Partner | Daniel R. Murray | 1970 | 850 | 348.3 | $296,055.00 |
| Partner | Thomas C. Newkirk | 1966 | 875 | 34.0 | $29,750.00 |
| Partner | Suzanne J. Prysak | 1997 | 600 | 8.1 | $4,860.00 |
| Partner | Catherine L. Steege | 1982 | 775 | 37.5 | $29,062.50 |
| Partner | Howard S. Suskin | 1983 | 775 | 0.3 | $232.50 |
| Partner | William L. Tolbert | 1988 | 925 | 3.1 | $2,867.50 |
| Partner | Seth A. Travis | 1996 | 575 | 15.0 | $8,625.00 |
| Partner | Patrick J. Trostle | 1992 | 750 | 183.1 | $137,325.00 |
| **Partner Total** | | | | **2,268.2** | **$1,732,574.00** |

---

[6] These rates do not reflect the 10% reduction in the standard hourly rates. The 10% reduction is applied to the Total Attorney Time amount.

| Position | Name | Admitted to Practice | Rate[6] | Hours | Amount |
|---|---|---|---|---|---|
| Of Counsel | Brent E. Kidwell | 1993 | 525 | 2.1 | $1,102.50 |
| Staff Attorney | Laura B. Duchesne | 2006 | 235 | 17.4 | $4,089.00 |
| Staff Attorney | Edward P. McKenna | 2003 | 315 | 75.9 | $23,908.50 |
| **Of Counsel/Staff Attorney Total** | | | | **95.4** | **$29,100.00** |
| Associate | Anne M. Alexander | 2008 | 370 | 122.1 | $45,177.00 |
| Associate | Angela M. Allen | 2008 | 370 | 74.2 | $27,454.00 |
| Associate | Thomas G. Appleman | 2009 | 325 | 20.0 | $6,500.00 |
| Associate | Anna L. Barreiro | 2009 | 325 | 24.7 | $8,027.50 |
| Associate | Chad E. Bell | 2006 | 445 | 26.6 | $11,837.00 |
| Associate | Christine P. Benavente | 2009 | 325 | 1.6 | $520.00 |
| Associate | Sofia E. Biller | 2008 | 370 | 143.2 | $52,984.00 |
| Associate | Kristen M. Boike | 2006 | 445 | 11.0 | $4,895.00 |
| Associate | Anthony B. Borich | 2009 | 325 | 61.6 | $20,020.00 |
| Associate | Eric P. Brown | 2009 | 370 | 33.0 | $12,210.00 |
| Associate | Stephen R. Brown | 2008 | 370 | 3.3 | $1,221.00 |
| Associate | Adam M. Caldwell | 2009 | 325 | 7.0 | $2,275.00 |
| Associate | Penelope P. Cambell | 2009 | 325 | 3.0 | $975.00 |
| Associate | Erin K. Cannon | 2009 | 370 | 3.0 | $1,110.00 |
| Associate | Walter H. Chen | 2010 | 370 | 34.4 | $12,728.00 |
| Associate | Anjan Choudhury | 2004 | 510 | 66.0 | $33,660.00 |
| Associate | Tiffany E. Clements | 2008 | 370 | 60.3 | $22,311.00 |
| Associate | Jonathan D. Conley | 2008 | 370 | 41.6 | $15,392.00 |
| Associate | Angela L. Davis | 2009 | 325 | 1.0 | $325.00 |
| Associate | Matthew R. Devine | 2004 | 510 | 272.2 | $138,822.00 |
| Associate | Irina Y. Dmitrieva | 2003 | 540 | 27.0 | $14,580.00 |
| Associate | Joseph R. Dunn | 2009 | 325 | 4.1 | $1,332.50 |
| Associate | Genevieve J. Essig | 2009 | 325 | 1.6 | $520.00 |
| Associate | Daniel T. Fenske | 2008 | 370 | 60.5 | $22,385.00 |
| Associate | Kristina Filipovich | 2008 | 400 | 72.9 | $29,160.00 |
| Associate | Grant R. Folland | 2008 | 370 | 27.1 | $10,027.00 |
| Associate | Ilya Fradkin | 2006 | 445 | 39.7 | $17,666.50 |
| Associate | Michelle A. Groman | 2006 | 490 | 48.2 | $23,618.00 |
| Associate | Gabriel A. Gutierrez | 2009 | 325 | 15.5 | $5,037.50 |
| Associate | Drew R. Haase | 2009 | 325 | 2.5 | $812.50 |
| Associate | Sarah E. Haddy | 2009 | 325 | 2.0 | $650.00 |
| Associate | Melissa M. Hinds | 2003 | 540 | 1.8 | $972.00 |
| Associate | Kaija K. Hupila | 2008 | 370 | 56.3 | $20,831.00 |
| Associate | David E. Hutchinson | 2009 | 325 | 6.6 | $2,145.00 |

| Position | Name | Admitted to Practice | Rate[6] | Hours | Amount |
|----------|------|----------------------|---------|-------|--------|
| Associate | Precious S. Jacobs | 2009 | 325 | 19.1 | $6,207.50 |
| Associate | Omar Jafri | 2008 | 370 | 48.0 | $17,760.00 |
| Associate | Stacy S. Jakobe | 2003 | 540 | 21.2 | $11,448.00 |
| Associate | Marc A. Katz | 2009 | 325 | 15.1 | $4,907.50 |
| Associate | Michael J. Kelly | 2006 | 445 | 29.2 | $12,994.00 |
| Associate | Andrew D. Kennedy | 2008 | 370 | 81.2 | $30,044.00 |
| Associate | Travis A. Kennedy | 2009 | 325 | 73.1 | $23,757.50 |
| Associate | Michael W. Khoo | 2009 | 370 | 8.5 | $3,145.00 |
| Associate | Gregory S. Knudsen | 2008 | 370 | 23.7 | $8,769.00 |
| Associate | Andrew Kopelman | 2006 | 445 | 11.6 | $5,162.00 |
| Associate | Rodney L. Lewis | 2005 | 445 | 54.4 | $24,208.00 |
| Associate | Elizabeth L. Liebschutz | 2008 | 400 | 110.5 | $44,200.00 |
| Associate | Mark A. Lightner | 2007 | 400 | 83.0 | $33,200.00 |
| Associate | Matthew J. Mason | 2008 | 370 | 21.5 | $7,955.00 |
| Associate | Alexander J. May | 2009 | 325 | 31.3 | $10,172.50 |
| Associate | Sarah R. McNally | 2008 | 370 | 103.9 | $38,443.00 |
| Associate | Christopher V. Meservy | 2008 | 370 | 82.5 | $30,525.00 |
| Associate | Deanne B. Millison | 2008 | 370 | 37.3 | $13,801.00 |
| Associate | David A. Newman | 2007 | 445 | 16.9 | $7,520.50 |
| Associate | Andrew J. Olejnik | 2004 | 510 | 330.8 | $168,708.00 |
| Associate | Andrea C. Otto-Classon | 2008 | 370 | 44.9 | $16,613.00 |
| Associate | William E. Parker | 2007 | 400 | 4.7 | $1,880.00 |
| Associate | Brij B. Patnaik | 2009 | 325 | 19.5 | $6,337.50 |
| Associate | Laura E. Pelanek | 2004 | 510 | 64.3 | $32,793.00 |
| Associate | Tarsha A. Phillibert | 2006 | 445 | 57.7 | $25,676.50 |
| Associate | Keith V. Porapaiboon | 2002 | 540 | 68.3 | $36,882.00 |
| Associate | John M. Power | 2008 | 370 | 44.7 | $16,539.00 |
| Associate | Landon S. Raiford | 2008 | 370 | 11.4 | $4,218.00 |
| Associate | Jonathan W. Riley | 2009 | 325 | 5.0 | $1,625.00 |
| Associate | Adam C.G. Ringguth | 2008 | 370 | 30.5 | $11,285.00 |
| Associate | Aaron-Michael H. Sapp | 2008 | 370 | 70.9 | $26,233.00 |
| Associate | Shorge K. Sato | 2002 | 540 | 58.6 | $31,644.00 |
| Associate | David P. Saunders | 2007 | 400 | 1.3 | $520.00 |
| Associate | Trevor F. Schrage | 2008 | 370 | 62.8 | $23,236.00 |
| Associate | Ashley M. Schumacher | 2008 | 370 | 12.5 | $4,625.00 |
| Associate | Eric J. Schwab | 2007 | 400 | 45.2 | $18,080.00 |
| Associate | Anwar T. Shatat | 2006 | 445 | 11.5 | $5,117.50 |
| Associate | Michele L. Slachetka | 2008 | 370 | 30.8 | $11,396.00 |

| Position | Name | Admitted to Practice | Rate[6] | Hours | Amount |
|---|---|---|---|---|---|
| Associate | Nicholas O. Stephanopoulos | 2008 | 445 | 6.6 | $2,937.00 |
| Associate | Sarah F. Terman | 2008 | 370 | 17.0 | $6,290.00 |
| Associate | Adam G. Unikowsky | 2008 | 400 | 1.2 | $480.00 |
| Associate | Andrew W. Vail | 2003 | 540 | 40.6 | $21,924.00 |
| Associate | Krishanti Vignarajah | 2009 | 370 | 85.8 | $31,746.00 |
| Associate | Richard M. Wallace | 2008 | 370 | 29.3 | $10,841.00 |
| Associate | Chelsea L. Warren | 2009 | 325 | 60.4 | $19,630.00 |
| Associate | Daniel I. Weiner | 2006 | 490 | 8.4 | $4,116.00 |
| Associate | Benjamin P. Wieck | 2006 | 445 | 21.2 | $9,434.00 |
| Associate | Thomas M. Winegar | 2008 | 370 | 67.4 | $24,938.00 |
| Associate | Jacob P. Zipfel | 2008 | 370 | 66.8 | $24,716.00 |
| **Associate Total** | | | | **3,627.7** | **$1,502,860.50** |
| **Total Attorney Time** | | | | **5,991.3** | **$3,264,534.50** |
| **Less 10% Reduction** | | | | | **($326,453.45)** |
| **Total Attorney Time at Reduced Rate** | | | | | **$2,938,081.05** |
| **Blended Hourly Rate for Attorneys** | | | | | **$490.39** |

PARAPROFESSIONALS

| Position | Name | Rate[7] | Hours | Amount |
|---|---|---|---|---|
| Senior Paralegal | Michael H. Matlock | 275 | 89.7 | $24,667.50 |
| Senior Paralegal | Christopher R. Ward | 255 | 448.0 | $114,240.00 |
| Technology Ass't | Kelly A. Laughran | 275 | 10.0 | $2,750.00 |
| Technology Ass't | Lory I. Manheimer | 275 | 69.9 | $19,222.50 |
| Technology Ass't | Zulaikha Master | 275 | 177.0 | $48,675.00 |
| Paralegal | Lamia K. Azize | 270 | 34.5 | $9,315.00 |
| Paralegal | Wenette Belcher | 255 | 133.5 | $34,042.50 |
| Paralegal | Jeanne C. Haske | 255 | 27.0 | $6,885.00 |
| Paralegal | Micah B. Horan | 270 | 157.3 | $42,471.00 |
| Paralegal | W. Michael Hughes | 230 | 57.3 | $13,179.00 |
| Paralegal | Jessica M. Merkouris | 275 | 21.8 | $5,995.00 |
| Paralegal | Cleopatra S. Murray | 230 | 134.9 | $31,027.00 |
| Paralegal | Jeffrey K. Phillips | 230 | 117.0 | $26,910.00 |
| Paralegal | Aubrey L. Rettig | 255 | 140.6 | $35,853.00 |

---

[7] These rates do not reflect the 10% reduction in the standard hourly rates. The 10% reduction is applied to the Total Paraprofessional Time amount.

| Position | Name | Rate[7] | Hours | Amount |
|---|---|---|---|---|
| Paralegal | Shannon R. Roberts | 220 | 61.9 | $13,618.00 |
| Paralegal | Mark R. Scholl | 270 | 185.7 | $50,139.00 |
| Paralegal | Julie H. Shaw | 255 | 31.3 | $7,981.50 |
| Project Assistant | Catherine L. Chu | 160 | 31.5 | $5,040.00 |
| Project Assistant | Emily A. Flores | 160 | 397.5 | $63,600.00 |
| Project Assistant | Casey J. Gioielli | 170 | 4.0 | $680.00 |
| Project Assistant | Yong Joon Lee | 160 | 80.0 | $12,800.00 |
| Project Assistant | Alexander S. Malson | 160 | 10.2 | $1,632.00 |
| Project Assistant | Gretchen J. Pinnick | 160 | 135.6 | $21,696.00 |
| Project Assistant | Panagiota Ramos | 170 | 109.6 | $18,632.00 |
| Project Assistant | Alexander M. Righi | 160 | 180.8 | $28,928.00 |
| Project Assistant | Jonathan W. Striegel | 170 | 89.6 | $15,232.00 |
| Project Assistant | Adrienne P. Thacher | 160 | 7.1 | $1,136.00 |
| Project Assistant | Kenneth S. Waldmann | 170 | 126.8 | $21,556.00 |
| Project Assistant | Lauren E. Wang | 160 | 46.9 | $7,504.00 |
| **Total Paraprofessional Time** | | | **3,117.0** | **$685,407.00** |
| **Less 10% Reduction** | | | | **($68,540.70)** |
| **Total Paraprofessional Time at Reduced Rate** | | | | **$616,866.30** |

| | |
|---|---|
| **Total Amount for Services Rendered (Attorneys and Paraprofessionals)** | **$3,949,941.50** |
| **Less 10% Reduction** | **($394,994.15)** |
| **Total Amount for Services Rendered, including 10% Reduction (Attorneys and Paraprofessionals)** | **$3,554,947.35** |
| **Less 50% Non-Working Travel Time** | **($27.573.09)** |
| **Total Amount of Fees Requested for Services Rendered (February 1, 2010 - May 31, 2010)** | **$3,527,374.26** |

**Hearing Date: To Be Determined**
**Objection Deadline: To Be Determined**

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                    :

In re                                :        Chapter 11
                                      :

LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>,    :        Case No. 08-13555 (JMP)
                                      :

                       Debtors.      :        (Jointly Administered)

------------------------------------------------------------------------x

**FIFTH INTERIM FEE APPLICATION OF THE EXAMINER AND**
**JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION**
**<u>FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES</u>**

**TO THE HONORABLE JAMES M PECK**
**UNITED STATES BANKRUPTCY JUDGE**

       Anton R. Valukas, the Examiner (the "<u>Examiner</u>") appointed for Lehman Brothers

Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors (collectively, the "<u>Debtors</u>") in the above-

captioned bankruptcy cases, and Jenner & Block LLP ("<u>Jenner & Block</u>"), counsel to the

Examiner, by this fifth interim fee application (the "<u>Fifth Interim Application</u>") pursuant to

sections 330(a) and 331 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seek (i) interim allowance and payment of reasonable compensation for actual and necessary professional services performed by the Examiner and Jenner & Block in the aggregate amount of $3,527,374.26 for the period from February 1, 2010 through and including May 31, 2010 (the "Compensation Period"); and (ii) reimbursement of actual, reasonable and necessary expenses in the aggregate amount of $362,281.56 incurred during the Compensation Period.

To aid this Court in analyzing the Fifth Interim Application, the Examiner and Jenner & Block have divided it into four parts. Part I provides a brief background of the Debtors' cases and the Examiner's appointment. Part II provides an overview of the Fifth Interim Application. Part III provides a description of the work performed by the Examiner and Jenner & Block during the Compensation Period, by category, as well as how the Examiner and Jenner & Block calculated this compensation request. Finally, Part IV explains why this compensation request should be allowed.

## I. Background

1.      Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its direct and indirect subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.     On September 19, 2008, a proceeding was commenced under the Securities

Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A

trustee appointed under SIPA (the "SIPA Trustee") is administering LBI's estate.

4.     On January 16, 2009, the Court entered an order (the "Examiner Order") directing

the appointment of an examiner, pursuant to 11 U.S.C. § 1104(c)(2), to investigate, *inter alia*,

various transfers and transactions by the Debtors and their affiliates, claims that certain Debtors

may have against LBHI, and the events that immediately preceded the commencement of the

LBHI chapter 11 case (collectively, the "Investigation").  Examiner Order at ¶ 2 [Docket No.

2569].  The Examiner Order also directed the examiner to "perform the duties specified in

sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court orders

otherwise."  Id. at ¶ 3.

5.     On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner

in the chapter 11 cases, subject to Court approval, and filed her notice of such appointment.

[Docket No. 2570].  On January 20, 2009, the U.S. Trustee filed her application for an Order of

this Court approving the appointment of Anton R. Valukas as examiner in the chapter 11 cases.

[Docket No. 2571].  On January 20, 2009, this Court entered an order approving the appointment

by the U.S. Trustee of Anton R. Valukas as Examiner (the "Examiner") in the chapter 11 cases.

[Docket No. 2583].  On January 23, 2009, the Examiner filed his Application to Employ Jenner

& Block LLP as Counsel to the Examiner.  [Docket No. 2627].  On February 11, 2009, this

Court entered the Order Authorizing the Examiner to Retain and Employ Jenner & Block LLP as his Counsel *nunc pro tunc* as of January 19, 2009.  [Docket No. 2803].[8]

6.       On February 13, 2009, the Examiner filed an application to retain Duff & Phelps, LLC as his financial advisor.  [Docket No. 2825].  The Court approved the application on February 25, 2009.  [Docket No. 2924].  On April 29, May 15, and June 30, the Examiner filed applications to retain contract attorneys to perform specific document review tasks.  [Docket Nos. 3457, 3582, 4239].[9]  The applications were approved by the Court on May 15, June 3, and July 16, respectively.  [Docket Nos. 3577, 2750, 4428].

7.       On June 25, 2009, the Court entered the Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals.  [Docket No. 4165].

8.       On February 8, 2010, the Examiner filed with the Court under seal the Report of Examiner Anton R. Valukas (the "Report"), pursuant to the Court's Order Authorizing the Examiner to File the Examiner's Report Under Seal.  [Docket No. 7024].  On March 11, 2010, the Examiner publicly filed a partially redacted version of the Report [Docket No. 7531], and substituted an unredacted version of the Report with the Court under seal pursuant to the Bankruptcy Court's Order dated March 11, 2010.  [Docket No. 7530].  On April 14, 2010, the Examiner filed an unredacted version of Volume 5 of the Report.  [Docket No. 8307].

_____

[8] On May 28, 2009, November 6, 2009, and April 9, 2010, Jenner & Block filed supplemental declarations disclosing connections with certain creditors and other parties-in-interest.  [Docket Nos. 3676, 5752, 8198].

[9] On July 8, 2009, the Examiner filed 10 additional affidavits of disinterestedness in connection with his third application to retain contract attorneys.  [Docket No. 4296].

9.      On March 15, 2010, the Debtors filed the Joint Chapter 11 Plan of Lehman

Brothers Holdings Inc. and Its Affiliated Debtors.  [Docket No. 7572].  On April 14, 2010, the

Debtors filed a revised Joint Chapter 11 Plan [Docket No. 8330] and a Disclosure Statement for

Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to

Section 1125 of the Bankruptcy Code.  [Docket No. 8332].

10.     On July 13, 2010, the Court entered an Order Discharging Examiner and Granting

Related Relief (the "Discharge Order").  [Docket No. 10169].  The Discharge Order terminated

the appointment of the Examiner and discharged the Examiner and his professionals "from any

further obligations, duties, or responsibilities except as otherwise set forth in [the Discharge

Order]."  Among other things, the Discharge Order permits the Examiner and his professionals to

continue to provide cooperation to various parties involved in these chapter 11 cases.

## II.  Fifth Interim Application

11.     The Examiner and Jenner & Block have prepared this Fifth Interim Application in

accordance with the Administrative Order Re: Amended Guidelines for Fees and Disbursements

for Professionals in Southern District of New York Bankruptcy Cases dated November 25, 2009

(the "Amended SDNY Guidelines"), and the United States Trustee Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330

promulgated by the United States Department of Justice dated January 30, 1996 (the "UST

Guidelines" and together with the Amended SDNY Guidelines, the "Guidelines").  Pursuant to

the Amended SDNY Guidelines, a certification regarding compliance with such guidelines is

attached hereto as Exhibit A.

5

12.    The Examiner and Jenner & Block also have prepared their time and expense entries to comply with suggested guidelines proposed by the Fee Committee.[10]  Jenner & Block is prepared to provide additional information to the Fee Committee with respect to any comments or questions the Fee Committee may have with respect to any disbursements or time entry descriptions for the period covered by this Fifth Interim Application.

13.    The Examiner and Jenner & Block seek interim allowance herein of reasonable compensation for actual and necessary professional services rendered by and to the Examiner during the Compensation Period, in the aggregate amount of $3,527,374.26 and for reimbursement of actual, reasonable and necessary expenses incurred during the Compensation Period in connection with the rendition of such services in the aggregate amount of $362,281.56.

14.    The fees sought by this Fourth Interim Application reflect an aggregate of 9,108.30 hours of attorney and paraprofessional time spent and recorded in performing services by and for the Examiner during the Compensation Period.  This aggregate amount does not include time that might be construed as duplicative or otherwise not beneficial to the Examiner's Investigation.  Of the aggregate time expended during the Compensation Period, 2,268.20 recorded hours were expended by partners, 3,627.70 recorded hours were expended by associates, 95.40 recorded hours were expended by of counsel or staff attorneys, and 3,117.00 recorded hours were expended by paraprofessionals.  During the Compensation Period, the Examiner's and Jenner & Block's hourly billing rates for attorneys working on these matters ranged from $235.00 to $975.00 per hour before applying the agreed upon 10% rate reduction.

---

[10] On May 26, 2009, the Court entered an Order Appointing a Fee Committee and Approving a Fee Application Protocol [Docket No. 3651].  On August 3, 2009, September 10, 2009, December 14, 2009, March 10, 2010, and April 9, 2010, the Fee Committee filed reports pertaining to the first, second, and third interim fee applications.  [Docket Nos. 4655, 5104, 6165, 7498, 8209].

Allowance of compensation in the amount requested would result in a blended hourly billing rate for attorneys of approximately $490.39.

15.    Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

16.    Pursuant to the Guidelines, annexed hereto as <u>Exhibit B</u> is a schedule setting forth all Jenner & Block professionals and paraprofessionals who have performed services for the Examiner during the Compensation Period for which the Examiner and Jenner & Block are seeking reimbursement, the position in which each such individual is employed by Jenner & Block, the hourly billing rate charged for services performed by such individual, the aggregate number of hours expended in this matter and fees billed therefore, and as to attorneys, the year in which the attorney was first licensed to practice law.

17.    Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit C</u> is a summary by project matter of the fees generated by the services performed during the Compensation Period and, for each separate project matter, a list of each person providing services on the project, a statement of the number of hours spent, and the amount of compensation requested for each person on the project.

18.    Annexed hereto as <u>Exhibit D</u> is a schedule specifying the categories of expenses for which the Examiner and Jenner & Block are seeking reimbursement and the total amount for each such expense category; <u>Exhibit D</u> also includes a table that provides additional detail regarding each of the disbursement expenses for contract attorney wages during the Compensation Period.  <u>Exhibit E</u> contains a detailed list of all expenses for which the Examiner and Jenner & Block seek reimbursement.  This schedule has been adjusted for and does not

reflect certain expenses incurred by the Examiner and Jenner & Block for which it will not be

seeking reimbursement.[11]

19.     The Examiner and Jenner & Block maintain detailed records of the time spent by

all attorneys and paraprofessionals in connection with the representation of the Examiner.

Copies of redacted, detailed time records are annexed hereto as Exhibit F.  Copies of unredacted

versions of these detailed time records have been submitted previously to the Chair of the Fee

Committee, under a confidentiality letter agreement, and to the Office of the United States

Trustee.  During the course of the Investigation, the Examiner and Jenner & Block prepared and

submitted redacted versions of the detailed time entries in order to comply with the

confidentiality requirement of Paragraph 5 of the Examiner Order.  Although the Examiner has

now filed his Report and the Report has become public in its totality, the Examiner has

cooperated and continues to cooperate with law enforcement authorities in their investigations.

Therefore, the scope of the Investigation continues to be confidential (except to the extent

disclosures are made in the Report itself), which is why the Examiner and Jenner & Block are

submitting with this application the redacted versions of the detailed time records.

_____

[11] The total amount of expense reimbursement sought in this Fourth Interim Application is $2,435.43 less
than the amount of expense reimbursement sought by the Examiner and Jenner & Block in their
previously submitted monthly statements for February 2010 to May 2010.  This difference represents
adjustments made to certain expense items to implement the Fee Committee's guidelines on expenses.

During the course of the Investigation, the Examiner and Jenner & Block redacted parts of some of the
expense entry descriptions in order to comply with Paragraph 5 of the Examiner Order, which states,
"Until the Examiner has filed his or her report, neither the Examiner nor the Examiner's representatives
or agents shall make any public disclosures concerning the performance of the Investigation or the
Examiner's duties...."  Although the Examiner has now filed his Report and the Report has become public
in its totality, the Examiner has cooperated and continues to cooperate with law enforcement authorities in
their investigations.  Therefore, the scope of the Investigation continues to be confidential (except to the
extent disclosures are made in the Report itself), which is why the Examiner and Jenner & Block are
submitting with this application a redacted version of the detailed expenses.  Concurrently herewith, the
Examiner and Jenner & Block are providing the Chair of the Fee Committee and the U.S. Trustee with an
unredacted version of Exhibit E.

20.    The fees charged by the Examiner and Jenner & Block in these cases reflect an agreed upon 10% reduction from standard hourly rates because of the significant public interest associated with the Examiner's duties and responsibilities.  The fees are otherwise billed in accordance with Jenner & Block's general existing billing rates and procedures in effect during the Compensation Period.  The rates the Examiner and Jenner & Block charge for the services rendered by its professionals and paraprofessionals to the Examiner are the rates charged by the Examiner and the firm for professional and paraprofessional services rendered in comparable matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in a competitive national legal market in cases other than cases under title 11.

21.    All of the services for which interim compensation is sought were rendered by or to the Examiner solely in furtherance of his duties and functions as Examiner and not on behalf of any individual creditor or other person.

22.    The Examiner and Jenner & Block have not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

23.    The Examiner and Jenner & Block have not shared, nor agreed to share (a) any compensation they have received or may receive with another party or person, other than with the members, counsel and associates of the firm, or (b) any compensation another person or party has received or may receive.  No promises have been received by the Examiner or Jenner & Block as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

24.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Fifth Interim Application, the Examiner and Jenner & Block reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

### III.  Summary of Professional Compensation and Reimbursement of Expenses Requested

25.    As reported in the First Interim Fee Application, immediately following the Examiner's appointment, the Examiner[12] performed a wide variety of tasks in connection with the Investigation.  These included, among other things:  (a) assembling publicly available materials; (b) meeting and conferring with various parties to develop a work plan and to coordinate to avoid duplication of effort; (c) coordinating with agencies of the U.S. Government; (d) contacting examiners in other complex matters for assistance in developing an efficient work plan; (e) entering into stipulations with the Debtors and the Creditors' Committee to obtain access to documents and other materials; (f) filing a Rule 2004 motion that requested omnibus authority to issue subpoenas, including document requests, upon witnesses;[13] and (g) establishing a depository to collect documents, transcripts, and other materials.

26.    As reported in the Second Interim Fee Application, the Examiner continued the Investigation by:  (a) finalizing and transmitting the Examiner's Preliminary Work Plan to the

---

[12] Except as otherwise noted, references to steps taken by the Examiner include both the Examiner and Jenner & Block.

[13] The Court granted the 2004 Motion on February 11, 2009.  [Docket No. 2804].

Court and parties-in-interest; (b) meeting with the Examiner's financial advisor, Duff & Phelps,[14] to coordinate the Investigation; (c) conferring with the Debtors, the Creditors' Committee, and other parties involved in the case to eliminate duplication and to make the work product being generated useful to other parties in the future; (d) meeting with professionals at Alvarez & Marsal to ascertain what data and documents were available, how the data and documents could be accessed, and what analysis had already been performed; (e) entering into stipulations with various parties; and (f) communicating with the Office of the United States Trustee, the SIPA Trustee, and agencies of the U.S. Government.

27.    The Examiner also:  (a) collaborated with the Debtors and other parties involved in the Investigation to begin the process of collecting, managing, and reviewing documents; (b) obtained authority from the Court to retain contract attorneys to perform document review; (c) commenced witness interviews in early February;[15] (d) held a weekly meeting with team leaders to coordinate the investigation, maximize efficiency, avoid duplication, and draw on the expertise and experience of his professionals; and (e) prepared factual and legal memoranda as information was discovered during the course of the Investigation.

28.    As reported in the Third Interim Fee Application, many of these activities continued from June through September 2009 as the Examiner's Investigation advanced. Specifically, the Examiner:  (a) remained in communication with parties involved in the case, including the U.S. Government, to eliminate duplication of effort, to make the work product being generated useful to other parties in the future, and to obtain documents relevant to the

_____

[14] On February 13, 2009, the Examiner filed an application to retain Duff & Phelps, LLC as his financial advisor.  [Docket No. 2825].  The Court approved the application on February 25, 2009.  [Docket No. 2924].

[15] From February 2009 through May 2009, the Examiner conducted 69 interviews.

Investigation; (b) collected and reviewed millions of pages of documents; (c) entered into court-approved confidentiality stipulations regarding documents with several parties; and (d) managed "claw-back" requests and other privilege related issues arising in connection with the Examiner's document review.

29.    Also as reported in the Third Interim Fee Application, the Examiner: (a) conducted 123 witness interviews;[16] (b) prepared outlines and work plans for drafting sections of the Examiner's final Report; (c) began drafting sections of the final Report; (d) worked with Duff & Phelps to identify analyses necessary for the Report; (e) identified public domain materials that related to the Investigation; (f) tracked witness, interview, and document information so as to coordinate among team members; (g) conducted legal research on potential claims to be analyzed as required by the Examiner Order; and (h) continued to hold a weekly team leaders meeting to coordinate the Investigation.

30.    As reported in the Fourth Interim Fee Application, many of these activities continued from October 2009 through January 2010 as the Examiner completed his Investigation and prepared his Report, including (a) conducting an additional 151 witness interviews; (b) tracking witness, interview, and document information; (c) pursuing, collecting, and reviewing documents and public domain materials relating to the Investigation; (d) entering into additional, court-approved confidentiality stipulations with various parties; (e) managing privilege related issues arising in the connection with the Examiner's document review; (f) analyzing evidence and legal research regarding potential claims to be reported on;

_____

[16] These numbers include depositions taken by other parties which the Examiner participated in or attended.

12

(g) finalizing the substance of the Examiner's Report; and (h) integrating the various sections of the Report.

31.    During the Compensation Period, the Examiner finalized his Report and filed it with the Court under seal on February 8, 2010.  On March 11, 2010, the Examiner publicly filed a partially redacted version of the Report [Docket No. 7531], and, on April 14, 2010, the Examiner filed an unredacted version of Volume 5 of the Report [Docket No. 8307].  The Examiner also (a) communicated with various parties in interest regarding the Report, including the Debtors, the SIPA Trustee, the U.S. Trustee, and the U.S. Government; (b) communicated with various third parties regarding confidentiality and privilege issues; (c) took steps to preserve the document and data repositories utilized by the Examiner during the course of his Investigation; and (d) prepared and negotiated proposed orders to make the Report publicly available and to terminate the Examiner's appointment.

### A.    Specific Project Matters

32.    As noted above, Exhibit C is a summary by project matter of the fees generated during the Compensation Period.  The following are descriptions of the project matters and their necessity and benefit to the estate.  The descriptions include a statement of the aggregate number of hours spent and fees charged for each matter after applying the 10% reduction.  The persons providing services on each project matter are listed on Exhibit C.

### B.    Case Administration

33.    During the Compensation Period, this matter includes time spent (i) winding down the Examiner's Investigation, and (ii) preparing a supplemental declaration in support of Jenner & Block's retention as counsel to the Examiner.

34.    During the Compensation Period, Jenner & Block expended 38.5 hours, at an aggregate charge of $15,797.70, on matters relating to case administration.

13

C.    **Examiner**

35.    This matter includes all the Examiner's time spent performing his duties under the Examiner Order and Bankruptcy Code during the Compensation Period, including finalizing the Report; communicating and meeting with various parties and the U.S. Government regarding the Report and Investigation; and preparing for and attending Court hearings regarding the filing of the Report.[17]

36.    During the Compensation Period, the Examiner expended 130.2 hours, at an aggregate charge of $114,250.50, on matters relating to performing his duties as Examiner.

D.    **Court Hearings**

37.    This matter includes all time spent by Jenner & Block attorneys in attending court hearings regarding filing the Examiner's Report, establishing procedures to unseal the Report, and publicly disclosing certain material contained in the Report or its supporting documents.

38.    During the Compensation Period, Jenner & Block expended 24.1 hours, at an aggregate charge of $15,320.25, attending Court hearings.

E.    **Report Drafting**

39.    Over 75% of the time spent by Jenner & Block attorneys and paraprofessionals in this matter occurred at the beginning of February in connection with the preparation of the final redacted version of the Examiner's Report.  Tasks in this matter include (i) revising specific sections of the Report that were not specific to one of the investigatory topics, for example, the introduction, chronology, table of key individuals, glossary, section on government involvement, bibliography, table of witnesses, and legal appendix; (ii) meetings with team members to discuss

_____

[17] The Examiner's non-working travel time is not included in this matter, but is billed under "Non-Working Travel Time" so that the 50% reduction could be applied to such time.

Report integration, Report preparation logistics, and final analyses; (iii) implementing drafting protocols, formatting consistency, and naming conventions; (iv) proofreading and cite-checking final versions of the Report; and (v) indexing, logging, and bates labeling documents cited in the Report.

40.      The remainder of the time spent by Jenner & Block attorneys and paraprofessionals in this matter involves (i) creating document logs for purposes of tracking confidentiality issues to be addressed prior to filing the Report publicly; (ii) reviewing the redacted version of the Report for any errata or other corrections to be made prior to unsealing the Report; (iii) responding to objections to making the Report publicly available; and (iv) working to create a hyperlinked version of the Report whereby readers could access easily the underlying documents cited in the Report.

41.      During the Compensation Period, Jenner & Block expended 2,906.7 hours, at an aggregate charge of $1,084,254.30, on matters relating to Report drafting.

### F.      Governance and Fiduciary Duty Issues

42.      The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether there are colorable claims for breach of fiduciary duties and/or aiding or abetting any such breaches against the officers and directors of LBCC and/or other Debtors arising in connection with the financial distress of the Lehman enterprise prior to the commencement of the LBHI chapter 11 case on September 15, 2008; and

- The events that occurred from September 4, 2008 through September 15, 2008 or prior thereto that may have resulted in commencement of the LBHI chapter 11 case.

Examiner Order, ¶ 2 (fifth and tenth bullets).  The Examiner Order also required the Examiner to "perform the duties specified in sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court orders otherwise."  Examiner Order, ¶ 3.

43.      All of the time spent on this matter during the Compensation Period was performed prior to the filing of the partially redacted version of the Report on March 11, 2010,

15

and related to finalizing sections of the Report regarding these elements of the Investigation.

Jenner & Block expended 918.3 hours, at an aggregate charge of $388,963.35, on finalizing the

Report regarding possible colorable claims with respect to the governance and fiduciary duty

elements of the Investigation.

## G.    **Intercompany Transfers**

44.    The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether LBCC or any other entity that currently is an LBHI chapter 11 debtor subsidiary or affiliate ("LBHI Affiliate(s)") has any administrative claims against LBHI resulting from LBHI's cash sweeps of cash balances, if any, from September 15, 2008, the commencement date of LBHI's chapter 11 case, through the date that such applicable LBHI affiliate commenced its chapter 11 case;

- All voluntary and involuntary transfers to, and transactions with, affiliates, insiders and creditors of LBCC or its affiliates, in respect of foreign exchange transactions and other assets that were in the possession or control of LBHI Affiliates at any time commencing on September 15, 2008 the day that each LBHI Affiliate commenced its chapter 11 case;

- Whether any LBHI Affiliate has colorable claims against LBHI for potentially insider preferences arising under the Bankruptcy Code or state law;

- Whether any LBHI Affiliate has colorable claims against LBHI or any other entities for potentially voidable transfers or incurrences of debt, under the Bankruptcy Code or otherwise applicable law; and

- The inter-company accounts and transfers among LBHI and its direct and indirect subsidiaries, including but not limited to:  LBI, LBIE, Lehman Brothers Special Finance and LBCC, during the 30-day period preceding the commencement of the chapter 11 cases by each debtor on September 15, 2008 or thereafter or such longer period as the Examiner deems relevant to the Investigation.

Examiner Order, ¶ 2 (first, second, third, fourth, and seventh bullets).

45.    All of the time spent on this matter during the Compensation Period was

performed prior to the filing of the partially redacted version of the Report on March 11, 2010,

and related to finalizing sections of the Report regarding these elements of the Investigation.

Jenner & Block expended 671.6 hours, at an aggregate charge of $250,852.95, on finalizing the

Report regarding intercompany transfers.

### H.      Barclays Transactions

46.     The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether assets of any LBHI Affiliates (other than Lehman Brothers, Inc.) were transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was approved by order of the Bankruptcy Court entered September 20, 2008, and whether consequences to any LBHI Affiliate as a result of the consummation of the transaction created colorable causes of action that inure to the benefit of the creditors of such LBHI subsidiary or affiliate; and

- The transfer of the capital stock of certain subsidiaries of LBI on or about September 19, 2008 to Lehman ALI Inc.

Examiner Order, ¶ 2 (sixth and ninth bullets).

47.     All of the time spent on this matter during the Compensation Period was

performed prior to the filing of the partially redacted version of the Report on March 11, 2010,

and related to finalizing sections of the Report regarding these elements of the Investigation.

Jenner & Block expended 584.0 hours, at an aggregate charge of $253,267.20 finalizing the

Report on whether assets of any LBHI Affiliate were transferred to Barclays, whether the

Barclays sale created colorable causes of action that inure to the benefit of the creditors of such

LBHI subsidiary or affiliate, and the facts surrounding the transfer of the capital stock of certain

subsidiaries of LBI on or about September 19, 2008 to Lehman ALI Inc.

### I.      Bank and Other Third-Party Transactions

48.     The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether any LBHI Affiliate has colorable claims against LBHI or any other entities for potentially voidable transfers or incurrences of debt, under the Bankruptcy Code or otherwise applicable law; and

- The transactions and transfers, including but not limited to the pledging or granting of collateral security interest among the debtors and the prechapter 11 lenders and/or

financial participants including but not limited to, JPMorgan Chase, Citigroup, Inc., Bank of America, the Federal Reserve Bank of New York and others.

Examiner Order, ¶ 2 (fourth and eighth bullets).

49.    All of the time spent on this matter during the Compensation Period was performed prior to the filing of the partially redacted version of the Report on March 11, 2010, and related to finalizing sections of the Report regarding these elements of the Investigation. Jenner & Block expended 395.6 hours, at an aggregate charge of $184,660.65 finalizing the Report on bank and other third-party transactions.

### J.    General Bankruptcy Matters and Research

50.    This matter relates to general bankruptcy matters and research in support of the Examiner's Report and Investigation.  Tasks in this matter during the Compensation Period include (i) finalizing legal research related to potential claims investigated by the Examiner; (ii) preparing the Report for submission to the Court in redacted form, partially redacted form, and unredacted form; (iii) drafting and filing a motion to establish procedures for unsealing the Report; (iv) drafting and filing a motion and proposed order requesting discharge and other related relief; and (v) monitoring the LBHI bankruptcy docket for pleadings and documents relevant to the Report and Investigation.

51.    During the Compensation Period, Jenner & Block expended 215.4 hours, at an aggregate charge of $101,178.90, on such matters.

### K.    Communications and Meetings with Parties in Interest

52.    In the Examiner Order, the Court directed the Debtors, the Debtors' affiliates and subsidiaries, the Creditors' Committee, the SIPA Trustee, and their respective representatives "to cooperate with the Examiner in conjunction with the performance of any of the Examiner's duties and the Investigation" and "to coordinate with the Examiner to avoid unnecessary

interference with, or duplication of, the Investigation." Examiner Order, ¶ 4. The Court also ordered the Examiner to "cooperate fully with any governmental agencies" and to "follow a protocol to be established with the governmental agencies for the sharing of information…." Examiner Order, ¶ 8.

53.    During the Compensation Period, the Examiner conferred with various parties in interest and remained in close communication with the U.S. Government, the Office of the United States Trustee, and the SIPA Trustee and his professionals regarding the Report and the Examiner's findings therein. The Examiner communicated and met with personnel from the United States Attorney's Office, the SEC, Congress, the SIPA Trustee, and the U.S. Trustee, among others. The Examiner and his professionals also communicated with the Debtors regarding further cooperation following the filing of the Examiner's Report and with third parties regarding proposed redactions in the Examiner's Report and related confidentiality issues.

54.    During the Compensation Period, Jenner & Block expended 899.2 hours, at an aggregate charge of $460,884.60 on matters described in this category.

### L.    Non-Working Travel Time

55.    This matter includes time entries related to non-working travel time spent by the Examiner and Jenner & Block attorneys to participate in court hearings and meetings with parties in interest, including the U.S. Government, during the Compensation Period.

56.    During the Compensation Period, the Examiner and Jenner & Block expended 71.3 hours, at an aggregate charge of $55,146.15 for non-working traveling time. However, the Examiner and Jenner & Block are voluntarily reducing their bill for these fees and are seeking compensation only for one-half of these fees, or $27,573.07.

### M.    Document Management and Review

57.    A critical piece of the Examiner's Investigation and Report preparation related to the collection and processing of a vast volume of documents and information that was in the possession of various parties in interest.  During the Compensation Period, time entries in this matter relate to (i) reviewing documents produced by the Debtors shortly before the Report was to be filed; (ii) responding to privilege issues raised by the Debtors; (iii) researching and preserving public domain documents related to the Investigation; and (iv) technically processing documents for review by attorneys.

58.    After the Report was finalized, time entries in this matter largely relate to the preparation of a document log regarding documents cited in the Report.  This document log was necessary to identify any confidentiality issues that may arise under the confidentiality stipulations entered into with various third parties and to obtain waivers of confidentiality designations by such parties.  The document log and document organization process was also a key component for producing a publicly available hyperlinked version of the Report.

59.    Time entries in this matter also relate to coordinating with the Debtors, Alvarez & Marsal, and Epiq regarding the preservation of the document repositories created and utilized by the Examiner.  Once the Investigation ended and the Report was finalized, the Examiner began making arrangements with these parties to have them to host the data and information collected and used by the Examiner in his Investigation.

60.    During the Compensation Period, Jenner & Block expended 1,705.8 hours, at an aggregate charge of $427,462.20, with respect to document and data management and review.

### N.    Billing and Fee Applications

61.    This matter relates to the preparation of monthly fee statements, fee applications, and responses to the Fee Committee.  During the Compensation Period, Jenner & Block

reviewed and edited time entry descriptions and expense entries to comply with the Guidelines

and the Fee Committee's reports.  Jenner & Block also redacted the time and expense entries to

preserve the confidentiality of the Investigation.

62.     During the Compensation Period, Jenner & Block expended 455.6 hours, at an

aggregate charge of $181,420.65, on billing and fee application matters.  This amounts to 5.14%

of the fees requested for the current Compensation Period.  The 5.14% is calculated by dividing

the amount of fees incurred on billing and fee application matters ($181,420.65) by the total

amount of fees requested for the current Compensation Period ($3,527,374.26).  This percentage

is higher than past interim fee applications because (i) the overall fees for the current

Compensation Period (the denominator of the equation) were much lower than prior periods

since the Examiner's work was largely complete; and (ii) the billing and fee application work

performed during the current Compensation Period (the numerator of the equation) did not

decrease proportionately because it related to a prior period when the Examiner's and Jenner &

Block's work was much more extensive.  Over the course of the Examiner's appointment and

Jenner & Block's engagement, from January 19, 2009 through May 31, 2010, the fees for billing

and fee application matters have amounted to 1.56% of the total fees requested.

### O.     Consultation with Financial Advisors

63.     In order to carry out his duties and responsibilities under the Bankruptcy Code

and the Examiner Order, shortly after his appointment, the Examiner determined that he would

need the assistance of a financial advisor who had extensive experience and expertise in complex

accounting and bankruptcy investigations.  After conducting several interviews with potential

candidates, in early February 2009, the Examiner selected Duff & Phelps as his financial advisor,

subject to Court approval.  This matter includes time spent by Jenner & Block conferring with

21

Duff & Phelps professionals regarding finalizing the Examiner's Report and follow-up requests
and inquiries regarding analyses conducted.

64.     During the Compensation Period, Jenner & Block expended 14.6 hours, at an
aggregate charge of $8,105.40, on matters relating to consultation with Duff & Phelps.[18]

### P.     Witness Interviews

65.     Time entries in this matter relate to (i) tracking interviews conducted and witness
information; (ii) maintaining witness files; and (iii) preparing final interview memoranda.

66.     During the Compensation Period, Jenner & Block expended 77.4 hours, at an
aggregate charge of $13,382.55, on matters relating to witness interviews.

## IV.  The Requested Compensation Should Be Allowed

67.     The foregoing professional services performed by the Examiner and Jenner &
Block were necessary and appropriate to the Examiner's administration of his duties in the
above-referenced chapter 11 cases and were in the best interests of the Examiner, the Debtors'
estates, and other parties in interest.  Compensation for the foregoing services as requested is
commensurate with the complexity, importance, and nature of the problems, issues, or tasks
involved.  Jenner & Block has taken significant efforts to ensure that the professional services
were performed expeditiously, in an efficient manner, and without duplication of effort.

68.     In preparing this Fifth Interim Application, the Examiner and Jenner & Block
calculated the amount of time spent by each attorney and paraprofessional in performing actual
and necessary legal services for the Examiner and the Investigation.  That data came directly
from computerized records that are kept for each Jenner & Block client.  Individual time entries

---

[18] Where communications with Duff & Phelps professionals related substantially to one of the elements of
the Investigation, the time entries were recorded in the project matter to which that element was assigned.

22

are maintained on written daily logs, personal computer hard drives or the firm's central

computer network.  All time entries and expenses are uploaded into the billing system, which

then produces draft client billing memoranda and invoices.  Jenner & Block attorneys have

reviewed and edited the draft invoices and billing memoranda for errors prior to their

submission.

      69.     The rates used in this Fifth Interim Application are the customary and usual rates

which the Examiner and Jenner & Block charge clients on matters of this type, subject to the

10% reduction in standard hourly rates to which the Examiner and Jenner & Block have agreed

because of the significant public interest associated with the Examiner's duties and

responsibilities.  In addition, the disbursements for which the Examiner and Jenner & Block seek

reimbursement are the customary and usual expenses for which the Examiner and Jenner &

Block seek reimbursement from their clients.  Jenner & Block charges 10 cents per page for

duplicating.  Jenner & Block does not charge its clients for facsimiles, domestic and long

distance telephone (other than while traveling), and certain overtime expenses, and takes those

expenses into account in its overhead.  Jenner & Block does not include charges for postage,

messenger services, duplicating and computerized legal research in its overhead because it is

fairer to clients who use less of these services to have these expenses billed separately.

According to its outside auditors these charges fairly approximate the firm's actual costs and do

not result in undue revenue for the firm.  The firm's hourly rates used for this Fifth Interim

Application do not compensate the firm for such expenses.

      70.     Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Court's

award of such compensation. 11 U.S.C. § 331.  Section 330 provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to an Examiner, trustee under Chapter 11, or professional person, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

71.    In the instant case, the Examiner and Jenner & Block respectfully submit that the services for which they seek compensation in this Fifth Interim Application were, at the time rendered, believed to be necessary for and beneficial to the Examiner and the Investigation. The Examiner and Jenner & Block further submit that the compensation requested herein is reasonable in light of the nature, extent, and value of such services provided by and to the

Examiner; and, the Examiner has been given the opportunity to review this application and has approved the requested amount.

72.     The services rendered by the Examiner and Jenner & Block were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.  Accordingly, approval of the interim compensation sought herein for the Compensation Period is warranted.

73.     This Fifth Interim Application includes citations to the applicable authorities and does not raise any novel issues of law.  The Examiner and Jenner & Block reserve the right to file a brief in reply to any objection to this Fifth Interim Application.

74.     To the extent applicable, the Examiner and Jenner & Block further request that the Court waive for cause shown any Guideline requirement not met by this Fifth Interim Application.

75.     No previous motion for the relief sought herein has been made to this or any other court.

## <u>CONCLUSION</u>

WHEREFORE the Examiner and Jenner & Block respectfully request:  (i) allowance and payment of compensation for professional services rendered during the Compensation Period in the amount of $3,527,374.26; and (ii) reimbursement for actual and necessary expenses the Examiner and Jenner & Block incurred during the Compensation Period in the amount of $362,281.56; and (iii) that the Court grant the Examiner and Jenner & Block such other and further relief as is just.

Dated: August 16, 2010
New York, New York

Respectfully submitted,


By: <u>/s/ *Patrick J. Trostle*</u>
    Patrick J. Trostle

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner