WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                            :
```

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

```
----------------------------------------------------------------x
```

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. §§ 330 AND 331**

**FIFTH INTERIM FEE APPLICATION**

Name of Applicant:      **Weil, Gotshal & Manges LLP**

Time Period:      February 1, 2010 through and including May 31, 2010

Role in the Case:      Attorneys for the Debtors and Debtors in Possession

Current Application:      Total Fees Requested:  $46,694,158.14
                        Total Expenses Requested:  $1,125,788.89

Prior Applications:    First Interim Fee Application, filed April 13, 2009 [Docket No. 3343], for the period from September 15, 2008 through and including January 31, 2009
  Total Fees & Expenses Requested:  $55,140,791.25
  Total Fees & Expenses Allowed:  $55,140,197.25

Second Interim Fee Application, filed August 14, 2009 [Docket No. 4825], for the period from February 1, 2009 through and including May 31, 2009
  Total Fees & Expenses Requested:  $46,462,615.85
  Total Fees and Expenses Allowed:  $46,191,429.23

Third Interim Fee Application, filed December 14, 2009 [Docket No. 6205], for the period from June 1, 2009 through and including September 30, 2009
  Total Fees & Expenses Requested:  $46,615,231.42
  Total Fees and Expenses Allowed:  $46,266,463.77

Fourth Interim Fee Application, filed April 16, 2010 [Docket No. 8395], for the period from October 1, 2009 through and including January 31, 2010
  Total Fees & Expenses Requested:  $40,429,578.75
  Total Fees and Expenses Allowed:  Pending

## SUMMARY SHEET FOR THE FIFTH INTERIM FEE
## APPLICATION OF WEIL, GOTSHAL & MANGES LLP

| NAME OF PROFESSIONAL PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Harvey R. Miller | BFR | 1959 | $990.00 | 477.10 | $468,369.00 |
| Peter Gruenberger | L | 1961 | $990.00 | 759.90 | $752,301.00 |
| Barry Frank | C | 1967 | $845.00 | 25.70 | $21,716.50 |
| Richard J. Davis | L | 1970 | $950.00 | 29.30 | $27,835.00 |
| Richard P. Krasnow | BFR | 1972 | $990.00 | 556.50 | $539,649.00 |
| Ralph I. Miller | L | 1972 | $950.00 | 452.30 | $394,392.50 |
| Bernard Casanova | L | 1973 | $725.00 | 21.00 | $15,225.00 |
| Gregory D. Hull | L | 1973 | $700.00 | 31.20 | $21,840.00 |
| Howard B. Comet | L | 1976 | $865.00 | 30.30 | $26,209.50 |
| T. R. Guy | L | 1976 | $885.00 | 8.80 | $7,788.00 |
| William H. HortonJr. | T | 1977 | $865.00 | 7.30 | $6,314.50 |
| Rupert J. L. Jones | C | 1978 | $910.00 | 9.00 | $8,190.00 |
| RothmanRichard A. | L | 1978 | $990.00 | 84.30 | $83,457.00 |
| Marsha E. Simms | C | 1978 | $860.00 | 11.40 | $9,804.00 |
| Edward Soto | L | 1978 | $950.00 | 764.50 | $726,275.00 |
| Edward Soto | L | 1978 | $875.00 | 9.10 | $7,962.50 |
| Elaine Stangland | C | 1978 | $900.00 | 113.10 | $101,790.00 |
| David I. Bower | T | 1979 | $845.00 | 11.50 | $9,717.50 |
| Robert L. Messineo | C | 1979 | $950.00 | 219.50 | $208,525.00 |
| W. Michael Bond | C | 1980 | $990.00 | 669.70 | $663,003.00 |
| W. Michael Bond | C | 1980 | $925.00 | 32.00 | $29,600.00 |
| Peter D. Isakoff | L | 1980 | $900.00 | 94.90 | $85,410.00 |
| Alfredo R. Perez | BFR | 1980 | $975.00 | 565.10 | $550,972.50 |
| Christopher K. Aidun | C | 1981 | $920.00 | 14.70 | $13,524.00 |
| Mike Francies | C | 1981 | $1,000.00 | 48.60 | $48,600.00 |
| Mindy J. Spector | L | 1981 | $950.00 | 255.40 | $242,630.00 |
| Jacqueline Marcus | BFR | 1983 | $870.00 | 140.50 | $122,235.00 |
| Donald R. Whittaker | C | 1983 | $700.00 | 18.60 | $13,020.00 |
| Lawrence J. Baer | L | 1984 | $720.00 | 22.10 | $15,912.00 |
| Brenda Coleman | T | 1984 | $1,000.00 | 20.70 | $20,700.00 |
| Lori R. Fife | BFR | 1984 | $975.00 | 687.20 | $643,695.00 |
| Stuart J. Goldring | T | 1984 | $990.00 | 126.40 | $125,136.00 |
| Richard L. Levine | L | 1984 | $885.00 | 310.70 | $274,969.50 |
| Richard L. Levine | L | 1984 | $850.00 | 0.40 | $340.00 |
| Daniel J. Mette | C | 1984 | $865.00 | 312.30 | $270,139.50 |
| Richard A. Morrison | C | 1984 | $885.00 | 762.10 | $674,458.50 |
| Conrad G. Bahlke | C | 1985 | $845.00 | 54.10 | $45,714.50 |
| Jonathan D. Polkes | L | 1985 | $990.00 | 260.70 | $258,093.00 |
| Walter E. Zalenski | L | 1985 | $845.00 | 15.30 | $12,928.50 |

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC – Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

US_ACTIVE:\43447048\09\58399.0003

| NAME OF PROFESSIONAL PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Andrew N. Norwood | C | 1986 | $1,000.00 | 31.80 | $31,800.00 |
| Michael K. Kam | T | 1987 | $900.00 | 15.60 | $14,040.00 |
| Bruce S. Meyer | L | 1987 | $885.00 | 5.10 | $4,513.50 |
| Richard W. Slack | L | 1987 | $885.00 | 356.30 | $315,325.50 |
| Paul T. Cohn | C | 1988 | $865.00 | 42.10 | $36,416.50 |
| Annemargaret Connolly | C | 1988 | $845.00 | 12.50 | $10,562.50 |
| Larry J. Gelbfish | T | 1988 | $885.00 | 25.80 | $22,833.00 |
| Jeffrey B. Hitt | C | 1988 | $845.00 | 6.40 | $5,408.00 |
| Kenneth E. Schiff | C | 1988 | $1,000.00 | 12.90 | $12,900.00 |
| Vernon S. Broderick | L | 1989 | $800.00 | 198.60 | $158,880.00 |
| Nellie P. Camerik | C | 1989 | $845.00 | 724.50 | $610,935.00 |
| Paul A. Ferrillo | L | 1989 | $720.00 | 32.40 | $23,328.00 |
| Frank P. Nocco | C | 1989 | $925.00 | 178.80 | $165,390.00 |
| Eric J. Peterman | C | 1989 | $900.00 | 462.20 | $415,755.00 |
| Penny P. Reid | L | 1989 | $885.00 | 6.80 | $6,018.00 |
| John B. Strasburger | L | 1989 | $845.00 | 292.70 | $217,460.75 |
| Andrew J. Colao | C | 1990 | $845.00 | 68.80 | $58,136.00 |
| Andrew J. Colao | C | 1990 | $790.00 | 21.20 | $16,748.00 |
| Christopher K. Aidun | L | 1990 | $845.00 | 289.90 | $244,965.50 |
| Barry Fishley | C | 1990 | $990.00 | 1.60 | $1,584.00 |
| Barry Fishley | C | 1990 | $960.00 | 54.60 | $52,416.00 |
| Craig W. Adas | C | 1991 | $900.00 | 18.40 | $16,560.00 |
| Robert N. Chiperfield | C | 1991 | $900.00 | 508.50 | $457,110.00 |
| Elizabeth H. Evans | C | 1991 | $845.00 | 11.00 | $9,295.00 |
| Jacky Kelly | C | 1991 | $1,000.00 | 12.00 | $12,000.00 |
| Michael E. Lubowitz | C | 1991 | $950.00 | 173.20 | $164,540.00 |
| Dominic T. McCahill | BFR | 1991 | $1,000.00 | 87.40 | $87,400.00 |
| Steven K. Ong | C | 1991 | $990.00 | 0.60 | $594.00 |
| Steven K. Ong | C | 1991 | $960.00 | 201.00 | $192,960.00 |
| Christopher R.J. Pace | L | 1991 | $845.00 | 86.10 | $72,754.50 |
| Lynda M. Braun | L | 1992 | $700.00 | 97.20 | $68,040.00 |
| Yvette Ostolaza | L | 1992 | $865.00 | 48.50 | $38,925.00 |
| Vance L. Beagles | L | 1993 | $845.00 | 295.90 | $233,515.75 |
| Rodney D. Miller | C | 1993 | $885.00 | 16.90 | $14,956.50 |
| Lori L. Pines | L | 1993 | $845.00 | 13.30 | $11,238.50 |
| Beatriz Azcuy-Diaz | C | 1994 | $780.00 | 328.50 | $256,230.00 |
| John J. Dedyo | C | 1994 | $900.00 | 6.00 | $5,400.00 |
| Y. Shukie Grossman | C | 1995 | $845.00 | 275.90 | $233,135.50 |
| Uwe Hartmann | C | 1995 | $835.00 | 67.60 | $56,446.00 |
| Emmanuelle Henry | C | 1995 | $855.00 | 9.10 | $7,780.50 |
| Holly E. Loiseau | L | 1995 | $780.00 | 527.60 | $411,528.00 |
| Peter Van Keulen | L | 1995 | $940.00 | 1.40 | $1,316.00 |
| Peter Van Keulen | L | 1995 | $910.00 | 68.00 | $61,880.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Jeffrey D. Osterman | C | 1996 | $845.00 | 81.10 | $68,529.50 |
| Anthony J. Albanese | L | 1997 | $820.00 | 67.40 | $55,268.00 |
| Robert Frastai | T | 1997 | $800.00 | 239.20 | $191,360.00 |
| Jane E. McDonald | C | 1997 | $950.00 | 90.30 | $85,785.00 |
| Fiona A. Schaeffer | L | 1997 | $845.00 | 15.00 | $12,675.00 |
| Matthew Shankland | L | 1997 | $1,000.00 | 198.90 | $198,900.00 |
| Shai Y. Waisman | BFR | 1997 | $845.00 | 610.50 | $515,872.50 |
| Shai Y. Waisman | BFR | 1997 | $775.00 | 72.20 | $55,955.00 |
| Jean Beauchataud | C | 1998 | $945.00 | 28.30 | $26,743.50 |
| David R. Fertig | L | 1998 | $780.00 | 593.30 | $462,774.00 |
| Soo-Jin Shim | C | 1998 | $780.00 | 1.00 | $780.00 |
| Soo-Jin Shim | C | 1998 | $725.00 | 136.00 | $98,600.00 |
| Scott M. Sontag | T | 1998 | $780.00 | 7.50 | $5,850.00 |
| Arnold Buessemaker | C | 1999 | $760.00 | 237.10 | $180,196.00 |
| Arnold Buessemaker | C | 1999 | $710.00 | 0.30 | $213.00 |
| Danek A. Freeman | C | 1999 | $700.00 | 6.80 | $4,760.00 |
| Yolanda C. Garcia | L | 1999 | $760.00 | 15.40 | $8,778.00 |
| Nancy E. Lynch | C | 1999 | $700.00 | 611.90 | $428,330.00 |
| Randi W. Singer | L | 1999 | $780.00 | 90.60 | $70,473.00 |
| Ardith Bronson | L | 2000 | $700.00 | 291.70 | $198,240.00 |
| Elisa R. Lemmer | BFR | 2000 | $700.00 | 155.30 | $105,560.00 |
| William A. Burck | L | 2001 | $760.00 | 226.80 | $172,368.00 |
| David Herman | C | 2001 | $700.00 | 521.70 | $365,190.00 |
| Robert J. Lemons | BFR | 2001 | $780.00 | 232.80 | $181,584.00 |
| Ronit J. Berkovich | BFR | 2002 | $725.00 | 130.00 | $89,066.25 |
| TOTAL | | | | 18,389.10 | $15,971,313.25 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Christine Howard | L | 1975 | $660.00 | 7.60 | $5,016.00 |
| Christine Howard | L | 1975 | $640.00 | 128.40 | $82,176.00 |
| Carole K. Ganguzza | C | 1982 | $695.00 | 11.70 | $8,131.50 |
| Alexander Levine | L | 1984 | $595.00 | 15.20 | $9,044.00 |
| Lynn Bodkin | C | 1984 | $695.00 | 189.60 | $131,772.00 |
| Alan R. Kusinitz | L | 1986 | $695.00 | 13.20 | $9,174.00 |
| Roshelle A. Nagar | C | 1989 | $695.00 | 8.40 | $5,838.00 |
| John Butenas | C | 1991 | $695.00 | 154.10 | $107,099.50 |
| Ariel Kronman | C | 1993 | $700.00 | 391.00 | $273,315.00 |
| Leslie S. Smith | C | 1995 | $695.00 | 69.10 | $48,024.50 |
| Elizabeth A. Martialay | C | 1996 | $665.00 | 50.60 | $33,649.00 |
| Laura S. Mello | L | 1996 | $250.00 | 271.70 | $67,925.00 |
| Meredith Parenti | L | 1996 | $695.00 | 678.40 | $460,124.75 |
| Scarlett E. Collings | L | 1997 | $695.00 | 710.80 | $492,268.50 |
| Konstantin Hoppe | C | 1998 | $580.00 | 208.00 | $120,640.00 |
| Konstantin Hoppe | C | 1998 | $540.00 | 2.40 | $1,296.00 |
| David W. Dummer | L | 1999 | $695.00 | 72.50 | $50,387.50 |
| Eugene J. Ng | C | 1999 | $665.00 | 381.80 | $253,897.00 |
| Melissa Meyrowitz | C | 1999 | $695.00 | 30.40 | $21,128.00 |
| Christy K. Kailis | BFR | 2000 | $840.00 | 299.10 | $251,244.00 |
| Deepak Reddy | C | 2000 | $695.00 | 40.50 | $28,147.50 |
| Erin J. Law | L | 2000 | $695.00 | 9.90 | $6,880.50 |
| Gregory S. Silbert | L | 2000 | $695.00 | 112.70 | $78,326.50 |
| Kian Tauser | T | 2000 | $655.00 | 20.10 | $13,165.50 |
| Konrad Von Buchwaldt | C | 2000 | $545.00 | 32.40 | $17,658.00 |
| Konrad Von Buchwaldt | C | 2000 | $505.00 | 4.80 | $2,424.00 |
| Kristen D. Perrault | L | 2000 | $225.00 | 28.30 | $6,367.50 |
| Lionel Spizzichino | BFR | 2000 | $690.00 | 5.50 | $3,795.00 |
| Astrid N. Sandberg | L | 2001 | $695.00 | 5.20 | $3,614.00 |
| Jean-Christophe David | C | 2001 | $690.00 | 130.10 | $89,769.00 |
| Lidija Hubana | L | 2001 | $250.00 | 224.60 | $56,150.00 |
| Margarita Platkov | L | 2001 | $665.00 | 168.40 | $111,986.00 |
| Ron Ben-Menachem | C | 2001 | $630.00 | 88.70 | $55,881.00 |
| Arman Kuyumjian | C | 2002 | $665.00 | 158.20 | $105,203.00 |
| Charles J. Maples | L | 2002 | $825.00 | 3.20 | $2,640.00 |
| Charles J. Maples | L | 2002 | $800.00 | 224.40 | $179,520.00 |
| Eleanor H. Gilbane | L | 2002 | $695.00 | 674.20 | $457,483.75 |
| Jay H. Park Jr. | C | 2002 | $595.00 | 262.60 | $156,247.00 |
| Michael Kohl | C | 2002 | $655.00 | 6.90 | $4,519.50 |
| Paulette C. Deruelle | L | 2002 | $695.00 | 77.50 | $53,862.50 |
| Ronit J. Berkovich | BFR | 2002 | $630.00 | 69.60 | $37,705.50 |
| Sarah J. Auchterlonie | L | 2002 | $685.00 | 199.80 | $136,863.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Andrew W. Nelson | C | 2003 | $665.00 | 17.70 | $11,770.50 |
| Andrew W. Nelson | C | 2003 | $580.00 | 7.40 | $4,292.00 |
| Claire L.M. Webb | L | 2003 | $630.00 | 93.30 | $58,779.00 |
| Daniel B. Martin | BFR | 2003 | $825.00 | 1.00 | $825.00 |
| Daniel B. Martin | BFR | 2003 | $800.00 | 5.80 | $4,640.00 |
| Denise Alvarez | L | 2003 | $685.00 | 606.00 | $415,110.00 |
| Edward McCarthy | L | 2003 | $665.00 | 788.80 | $515,042.50 |
| Edward McCarthy | L | 2003 | $580.00 | 96.50 | $45,385.00 |
| Erin D. Eckols | L | 2003 | $665.00 | 237.50 | $151,819.50 |
| Hansem Kim | C | 2003 | $665.00 | 7.90 | $5,253.50 |
| Julia S. Williams | C | 2003 | $665.00 | 149.10 | $99,151.50 |
| Julie T. Friedman | BFR | 2003 | $500.00 | 281.30 | $140,650.00 |
| Justin G. Mapes | C | 2003 | $665.00 | 244.50 | $162,592.50 |
| Lori M. Schiffer | C | 2003 | $685.00 | 17.00 | $11,645.00 |
| Marisa L. Ferraro | C | 2003 | $685.00 | 352.00 | $241,120.00 |
| Michael Arnott | BFR | 2003 | $800.00 | 26.10 | $20,880.00 |
| Alcira Moncada | L | 2004 | $250.00 | 177.20 | $44,300.00 |
| Allen S. Blaustein | L | 2004 | $630.00 | 897.30 | $565,299.00 |
| Caroline Hickey Zalka | L | 2004 | $595.00 | 341.50 | $203,192.50 |
| Diana M. Eng | L | 2004 | $665.00 | 8.60 | $5,719.00 |
| Elizabeth R. Todd | C | 2004 | $510.00 | 78.20 | $39,882.00 |
| Garrett Fail | BFR | 2004 | $665.00 | 915.60 | $606,779.25 |
| Garrett Fail | BFR | 2004 | $580.00 | 5.40 | $3,132.00 |
| Gavin Westerman | C | 2004 | $665.00 | 26.70 | $17,755.50 |
| Hannah L. Field | L | 2004 | $745.00 | 574.90 | $419,509.50 |
| Heather R. Solow | L | 2004 | $665.00 | 86.60 | $57,589.00 |
| Hendrik Boss | C | 2004 | $470.00 | 459.60 | $216,012.00 |
| J. Friedrich Isenbart | C | 2004 | $400.00 | 24.30 | $9,720.00 |
| Jared R. Friedmann | L | 2004 | $665.00 | 6.50 | $4,322.50 |
| Jennifer M. Wolff | T | 2004 | $630.00 | 5.50 | $3,465.00 |
| Jordan K. Kolar | T | 2004 | $665.00 | 215.70 | $143,440.50 |
| Kathleen E. Murphy | L | 2004 | $665.00 | 8.60 | $5,719.00 |
| Max A. Goodman | T | 2004 | $665.00 | 14.90 | $9,908.50 |
| Maya M. Grant | C | 2004 | $665.00 | 254.50 | $169,242.50 |
| Maya M. Grant | C | 2004 | $565.00 | 213.60 | $120,684.00 |
| Michael Firestone | L | 2004 | $665.00 | 344.20 | $223,905.50 |
| Mirella B. Hart | C | 2004 | $825.00 | 1.50 | $1,237.50 |
| Mirella B. Hart | C | 2004 | $800.00 | 366.80 | $293,440.00 |
| Nick Flynn | C | 2004 | $800.00 | 15.80 | $12,640.00 |
| Robert C. Shmalo | C | 2004 | $665.00 | 332.90 | $221,378.50 |
| Robert Konig | C | 2004 | $595.00 | 6.80 | $4,046.00 |
| Robert S. Velevis | L | 2004 | $630.00 | 399.10 | $247,873.50 |
| Scott T. Arakawa | C | 2004 | $595.00 | 87.20 | $51,884.00 |

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Sherri L. Toub | BFR | 2004 | $665.00 | 30.30 | $19,850.25 |
| Aimee N. Blanchard | L | 2005 | $595.00 | 186.00 | $110,670.00 |
| Amber D. Taylor | L | 2005 | $595.00 | 268.20 | $159,579.00 |
| Andrew J. Chen | C | 2005 | $665.00 | 187.70 | $124,820.50 |
| Blandine Davies | BFR | 2005 | $695.00 | 424.30 | $293,846.00 |
| Brian J. D'Amico | L | 2005 | $595.00 | 14.10 | $8,389.50 |
| Bronwen R. Pyle | C | 2005 | $550.00 | 16.90 | $9,295.00 |
| Daniel J. Venditti | L | 2005 | $630.00 | 46.80 | $29,484.00 |
| Eric W. Ostroff | L | 2005 | $630.00 | 265.20 | $167,076.00 |
| Eric W. Ostroff | L | 2005 | $540.00 | 140.90 | $66,231.00 |
| Gemma Bullmore | L | 2005 | $715.00 | 26.10 | $18,661.50 |
| Gemma Bullmore | L | 2005 | $695.00 | 196.90 | $136,845.50 |
| Hyun K. Kim | C | 2005 | $630.00 | 426.20 | $268,506.00 |
| Ilomai Kurrik | C | 2005 | $685.00 | 54.80 | $37,538.00 |
| Isabel S. Guerrero | L | 2005 | $630.00 | 75.30 | $47,439.00 |
| John W. Blevin | C | 2005 | $630.00 | 6.40 | $4,032.00 |
| Kamran A. Khan | L | 2005 | $250.00 | 38.30 | $9,575.00 |
| Katy Byatt | C | 2005 | $715.00 | 14.00 | $10,010.00 |
| Katy Byatt | C | 2005 | $695.00 | 230.10 | $159,919.50 |
| Kevin F. Meade | L | 2005 | $630.00 | 150.30 | $94,689.00 |
| Kirsten A. Noethen | C | 2005 | $630.00 | 114.80 | $72,040.50 |
| Mark I. Bernstein | BFR | 2005 | $630.00 | 677.20 | $426,636.00 |
| Michael T. Maletic | L | 2005 | $595.00 | 17.70 | $10,531.50 |
| Orla O'Sullivan | C | 2005 | $640.00 | 66.10 | $42,304.00 |
| Pejman Razavilar | C | 2005 | $665.00 | 249.40 | $165,851.00 |
| Rene A. Trevino | L | 2005 | $550.00 | 102.50 | $56,375.00 |
| Robert C. Roesch | L | 2005 | $595.00 | 256.20 | $146,518.75 |
| Samuel J. Comer | C | 2005 | $630.00 | 391.80 | $246,834.00 |
| Sarah E. Barrows | L | 2005 | $630.00 | 15.70 | $9,891.00 |
| Thomas E. Feeney | C | 2005 | $595.00 | 13.40 | $7,973.00 |
| Thomas E. Feeney | C | 2005 | $500.00 | 68.20 | $34,100.00 |
| Thomas S. Hetherington | C | 2005 | $765.00 | 14.30 | $10,939.50 |
| Thomas S. Hetherington | C | 2005 | $745.00 | 35.40 | $26,373.00 |
| Wilfried Krauss | T | 2005 | $400.00 | 9.00 | $3,600.00 |
| Yen P. Nguyen | L | 2005 | $595.00 | 102.50 | $60,987.50 |
| Anne-Sophie Noury | BFR | 2006 | $615.00 | 10.00 | $6,150.00 |
| Anne-Sophie Noury | BFR | 2006 | $527.82 | 2.00 | $1,055.64 |
| Benay H. Lizarazu | C | 2006 | $695.00 | 343.70 | $238,871.50 |
| Brian P. Maher | C | 2006 | $660.00 | 2.20 | $1,452.00 |
| Brian P. Maher | C | 2006 | $640.00 | 23.20 | $14,848.00 |
| Bryant S. York | L | 2006 | $595.00 | 138.20 | $82,229.00 |
| Christine T. DiGuglielmo | L | 2006 | $665.00 | 15.40 | $10,241.00 |
| Christopher R. Machera | C | 2006 | $595.00 | 116.00 | $69,020.00 |

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Damon P. Meyer | BFR | 2006 | $595.00 | 221.80 | $131,971.00 |
| Danitra T. Spencer | L | 2006 | $515.00 | 213.20 | $109,798.00 |
| Diana H. Widjaya | L | 2006 | $550.00 | 43.50 | $23,925.00 |
| Dotan Weinman | L | 2006 | $595.00 | 12.70 | $7,556.50 |
| Elizabeth Alibhai | C | 2006 | $640.00 | 20.30 | $12,992.00 |
| Emily L. Gold | C | 2006 | $595.00 | 305.20 | $181,594.00 |
| Emily L. Gold | C | 2006 | $500.00 | 2.10 | $1,050.00 |
| Georgia Magno | L | 2006 | $630.00 | 124.50 | $78,435.00 |
| Haskell Murray | L | 2006 | $550.00 | 9.10 | $5,005.00 |
| Lauren Hoelzer | L | 2006 | $550.00 | 212.40 | $116,820.00 |
| Mark Schwed | T | 2006 | $630.00 | 14.80 | $9,324.00 |
| Naomi Munz | C | 2006 | $695.00 | 61.50 | $42,742.50 |
| Nicole Schlatter | C | 2006 | $470.00 | 5.70 | $2,679.00 |
| Ricardo P. Pellafone | L | 2006 | $550.00 | 22.70 | $12,485.00 |
| Steven Seltzer | C | 2006 | $550.00 | 307.40 | $169,070.00 |
| Su-Yeon Cho | C | 2006 | $630.00 | 26.80 | $16,884.00 |
| Timothy J. Nestler | C | 2006 | $550.00 | 8.40 | $4,620.00 |
| Tomasz Kulawik | C | 2006 | $455.00 | 133.80 | $60,879.00 |
| Aabha Sharma | C | 2007 | $550.00 | 17.70 | $9,735.00 |
| Adam B. Rosenblum | C | 2007 | $515.00 | 5.80 | $2,987.00 |
| Alexandra Lehson | C | 2007 | $515.00 | 42.80 | $22,042.00 |
| Alicia L. Speake | C | 2007 | $595.00 | 9.20 | $5,474.00 |
| Alicia L. Speake | C | 2007 | $575.00 | 117.10 | $67,332.50 |
| Aliza Reicher | BFR | 2007 | $515.00 | 163.90 | $83,996.50 |
| Amanjit Arora | BFR | 2007 | $550.00 | 976.70 | $536,827.50 |
| Andrew R. Fox | L | 2007 | $595.00 | 0.80 | $476.00 |
| Andrew R. Fox | L | 2007 | $575.00 | 486.20 | $272,521.25 |
| Brant D. Kuehn | L | 2007 | $550.00 | 29.70 | $16,335.00 |
| Calvin Y. Cheng | L | 2007 | $515.00 | 293.70 | $151,255.50 |
| Cassie Waduge | C | 2007 | $515.00 | 147.50 | $75,962.50 |
| Christina Maurer | C | 2007 | $435.00 | 16.10 | $7,003.50 |
| Christine Doktor | L | 2007 | $515.00 | 113.80 | $58,607.00 |
| Eberhard Koch | L | 2007 | $400.00 | 33.80 | $13,520.00 |
| Elizabeth Bosshard-Blackey | L | 2007 | $515.00 | 32.20 | $16,583.00 |
| Evert J. Christensen | L | 2007 | $515.00 | 134.90 | $69,473.50 |
| Hoyoon Nam | C | 2007 | $640.00 | 5.50 | $3,520.00 |
| Hoyoon Nam | C | 2007 | $550.00 | 15.60 | $8,580.00 |
| Jackson P. Wagener | L | 2007 | $595.00 | 41.20 | $24,514.00 |
| Jessica Ryan | C | 2007 | $550.00 | 42.20 | $23,210.00 |
| Jessica Ryan | C | 2007 | $465.00 | 9.90 | $4,603.50 |
| Jie Yuan | C | 2007 | $550.00 | 109.80 | $60,390.00 |
| John T. O'Connor | L | 2007 | $515.00 | 166.60 | $85,799.00 |

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Lara Kuehl | L | 2007 | $575.00 | 292.60 | $167,353.75 |
| Marc Weinroth | L | 2007 | $515.00 | 84.90 | $43,723.50 |
| Mark B. Rosen | L | 2007 | $515.00 | 128.80 | $66,332.00 |
| Noah Waisberg | C | 2007 | $550.00 | 12.30 | $6,765.00 |
| Pierre-Arnoux Mayoly | C | 2007 | $615.00 | 10.00 | $6,150.00 |
| Richard O'Donoghue | L | 2007 | $550.00 | 262.10 | $144,155.00 |
| Ritu Pancholy | L | 2007 | $550.00 | 109.60 | $60,280.00 |
| SM. Decker | L | 2007 | $550.00 | 123.00 | $67,650.00 |
| Sunny Singh | BFR | 2007 | $550.00 | 836.80 | $458,755.00 |
| Teresa Brady | L | 2007 | $550.00 | 111.00 | $61,050.00 |
| Alexander J. Swartz | C | 2008 | $550.00 | 16.90 | $9,295.00 |
| Alexander Wandt | C | 2008 | $365.00 | 8.40 | $3,066.00 |
| Amanda M. Hendy | BFR | 2008 | $455.00 | 974.40 | $443,352.00 |
| Amanda M. Hendy | BFR | 2008 | $355.00 | 130.40 | $46,292.00 |
| Amie Tang | C | 2008 | $515.00 | 39.40 | $20,291.00 |
| Brandon E. Cherry | C | 2008 | $550.00 | 59.30 | $32,615.00 |
| Brandon E. Cherry | C | 2008 | $465.00 | 41.80 | $19,437.00 |
| Brandon E. Miller | L | 2008 | $515.00 | 369.60 | $190,344.00 |
| Brennan Hackett | BFR | 2008 | $515.00 | 731.60 | $376,439.25 |
| Brennan Hackett | BFR | 2008 | $415.00 | 164.80 | $63,432.75 |
| Casey A. Burton | L | 2008 | $455.00 | 54.70 | $24,888.50 |
| Cristina Iliescu | C | 2008 | $365.00 | 174.00 | $63,510.00 |
| Dev A. Ghose | C | 2008 | $515.00 | 30.00 | $15,450.00 |
| Eoghan P. Keenan | C | 2008 | $515.00 | 76.30 | $39,294.50 |
| Frank Martire | C | 2008 | $515.00 | 378.50 | $194,927.50 |
| Georgia D. Quinn | C | 2008 | $515.00 | 140.20 | $72,203.00 |
| Jakub Biernacki | C | 2008 | $515.00 | 50.40 | $25,956.00 |
| Jennifer D. Larson | L | 2008 | $455.00 | 764.30 | $346,414.25 |
| Jeremy Smith | C | 2008 | $510.00 | 5.40 | $2,754.00 |
| John A. Goldfinch | C | 2008 | $660.00 | 9.00 | $5,940.00 |
| John A. Goldfinch | C | 2008 | $640.00 | 65.90 | $42,176.00 |
| Joseph Abadi | C | 2008 | $515.00 | 488.30 | $251,474.50 |
| Joshua E. Peck | C | 2008 | $515.00 | 108.80 | $56,032.00 |
| June K. Lee | L | 2008 | $515.00 | 635.50 | $327,282.50 |
| Kate McGovern | L | 2008 | $250.00 | 499.40 | $124,850.00 |
| Kathleen E. Clark | C | 2008 | $515.00 | 20.60 | $10,609.00 |
| Kavita C. Desai | L | 2008 | $455.00 | 25.60 | $11,648.00 |
| Kimberleigh Scott | C | 2008 | $530.00 | 1.50 | $795.00 |
| Kimberleigh Scott | C | 2008 | $510.00 | 31.00 | $15,810.00 |
| Kristen L. Depowski | C | 2008 | $455.00 | 264.00 | $120,120.00 |
| Lauren L. Zerbinopoulos | L | 2008 | $455.00 | 687.20 | $312,676.00 |
| Layne S.R. Behrens | L | 2008 | $515.00 | 208.10 | $107,171.50 |
| Lisa N. Cloutier | L | 2008 | $515.00 | 73.80 | $38,007.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC – Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Maurice Horwitz | BFR | 2008 | $515.00 | 733.20 | $368,096.25 |
| Mavnick B. Nerwal | T | 2008 | $510.00 | 33.70 | $17,187.00 |
| Philip Ratner | C | 2008 | $515.00 | 12.70 | $6,540.50 |
| Qiong Sun | C | 2008 | $550.00 | 54.60 | $30,030.00 |
| Richard A. DeCicca | L | 2008 | $515.00 | 509.00 | $262,135.00 |
| Richard A. DeCicca | L | 2008 | $415.00 | 17.50 | $7,262.50 |
| Richard R. Cook | L | 2008 | $515.00 | 74.40 | $38,316.00 |
| Simon Saitowitz | C | 2008 | $510.00 | 60.90 | $31,059.00 |
| Steven B. Stein | C | 2008 | $515.00 | 96.20 | $49,543.00 |
| Sujan H. Trivedi | L | 2008 | $550.00 | 683.10 | $375,402.50 |
| Sunny J. Thompson | L | 2008 | $455.00 | 47.30 | $21,521.50 |
| Susan Fiore | C | 2008 | $515.00 | 293.60 | $151,204.00 |
| Tracy T. Mann | L | 2008 | $455.00 | 10.10 | $4,595.50 |
| Vigdis Bronder | C | 2008 | $515.00 | 88.30 | $45,474.50 |
| Xiaofeng Stephanie Da | C | 2008 | $455.00 | 137.30 | $62,471.50 |
| Adam B. Banks | L | 2009 | $455.00 | 16.00 | $7,280.00 |
| Adam J. Feit | C | 2009 | $455.00 | 16.10 | $7,325.50 |
| Adrian Perry | C | 2009 | $455.00 | 24.80 | $11,284.00 |
| Alexander R. Liroff | C | 2009 | $395.00 | 221.10 | $87,334.50 |
| Alexandre Vermynck | L | 2009 | $275.00 | 27.30 | $7,507.50 |
| Alicia F. Castro | L | 2009 | $395.00 | 163.20 | $64,464.00 |
| Allen T. Yancy | L | 2009 | $550.00 | 448.10 | $240,460.00 |
| Allison J. Becker | L | 2009 | $455.00 | 135.20 | $61,516.00 |
| Anne K. Castellani | L | 2009 | $455.00 | 5.40 | $2,457.00 |
| Ausra O. Pumputis | L | 2009 | $455.00 | 143.00 | $65,065.00 |
| Bambo Obaro | L | 2009 | $395.00 | 270.30 | $106,768.50 |
| Brian C. Drozda | C | 2009 | $455.00 | 28.60 | $13,013.00 |
| Brian Compagna | L | 2009 | $550.00 | 218.90 | $120,395.00 |
| Brianna N. Benfield | L | 2009 | $455.00 | 13.30 | $6,051.50 |
| Cassie Kimmelman | C | 2009 | $455.00 | 207.40 | $94,367.00 |
| Cheri Veit | L | 2009 | $455.00 | 161.60 | $73,528.00 |
| Cheryl A. James | L | 2009 | $455.00 | 62.90 | $28,619.50 |
| Christopher M. Neely | L | 2009 | $515.00 | 114.40 | $58,916.00 |
| Christopher T. Luise | L | 2009 | $455.00 | 338.50 | $154,017.50 |
| Consuelo A. Kendall | L | 2009 | $455.00 | 173.90 | $79,124.50 |
| Damien Wint | L | 2009 | $455.00 | 36.80 | $16,744.00 |
| Daniel L. Chin | C | 2009 | $455.00 | 31.60 | $14,378.00 |
| Daniel S. Klein | L | 2009 | $550.00 | 82.70 | $45,485.00 |
| Daniel S. Klein | L | 2009 | $515.00 | 70.00 | $36,050.00 |
| David A. Cohen | C | 2009 | $455.00 | 86.60 | $39,403.00 |
| David P. Byeff | L | 2009 | $455.00 | 147.20 | $66,976.00 |
| Edward Wu | BFR | 2009 | $395.00 | 158.70 | $62,686.50 |
| Eileen Hren | L | 2009 | $395.00 | 424.70 | $166,492.50 |

* BFR – Business Finance & Restructuring, C – Corporate, L – Litigation, T – Tax, MC – Managing Clerk, LSS – Litigation Support Services, X – Library, ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Elizabeth M. Velez | L | 2009 | $395.00 | 580.50 | $229,297.50 |
| Eric Kasenetz | BFR | 2009 | $395.00 | 521.00 | $205,795.00 |
| Erica Coleman | BFR | 2009 | $455.00 | 11.00 | $5,005.00 |
| Erica Rutner | L | 2009 | $395.00 | 281.50 | $111,192.50 |
| Evgeny Zborovsky | C | 2009 | $455.00 | 10.80 | $4,914.00 |
| Faraz Rana | C | 2009 | $515.00 | 19.40 | $9,991.00 |
| Hongan N. Tran | L | 2009 | $395.00 | 145.50 | $57,472.50 |
| Irini Kalamakis | C | 2009 | $515.00 | 283.60 | $146,054.00 |
| Jannelle M. Seales | C | 2009 | $515.00 | 51.50 | $26,522.50 |
| Jared Foley | L | 2009 | $455.00 | 7.70 | $3,503.50 |
| Jason Kwartner | L | 2009 | $455.00 | 33.50 | $15,242.50 |
| Jeffrey R. Friedman | C | 2009 | $515.00 | 5.00 | $2,575.00 |
| Jenna E. Schaeffer | C | 2009 | $455.00 | 35.30 | $16,061.50 |
| Jennifer Cheng | C | 2009 | $515.00 | 13.30 | $6,849.50 |
| Jennifer M. Nelsen | L | 2009 | $515.00 | 237.10 | $122,106.50 |
| Jennifer Sapp | BFR | 2009 | $455.00 | 618.00 | $281,190.00 |
| Jodie A. Turner | C | 2009 | $455.00 | 27.10 | $12,330.50 |
| Justin L. Constant | L | 2009 | $455.00 | 0.30 | $136.50 |
| Justin L. Constant | L | 2009 | $395.00 | 35.30 | $13,943.50 |
| Lee J. Goldberg | BFR | 2009 | $455.00 | 499.10 | $226,817.50 |
| Mark Glover | C | 2009 | $455.00 | 42.30 | $19,246.50 |
| Mark Glover | C | 2009 | $355.00 | 55.20 | $19,596.00 |
| Matthew Baudler | L | 2009 | $455.00 | 162.30 | $73,846.50 |
| Matthew D. Bergman | C | 2009 | $455.00 | 29.70 | $13,513.50 |
| Matthew D. Bergman | C | 2009 | $355.00 | 131.20 | $46,576.00 |
| Matthew Howatt | L | 2009 | $455.00 | 79.00 | $35,945.00 |
| Matthew M. Spritz | L | 2009 | $455.00 | 296.40 | $134,862.00 |
| Melanie Conroy | L | 2009 | $455.00 | 155.00 | $70,525.00 |
| Melanie Conroy | L | 2009 | $355.00 | 2.80 | $994.00 |
| Nadya Salcedo | L | 2009 | $455.00 | 87.70 | $39,903.50 |
| Patricia Astorga | L | 2009 | $455.00 | 53.50 | $24,342.50 |
| Peter J. Ibrahim | BFR | 2009 | $455.00 | 6.00 | $2,730.00 |
| Peter J. McRae | C | 2009 | $455.00 | 323.10 | $147,010.50 |
| Rachel B. Sherman | L | 2009 | $455.00 | 112.80 | $51,324.00 |
| RaShawn Woodley | L | 2009 | $455.00 | 168.70 | $76,758.50 |
| Sandra Y.Fusco | L | 2009 | $395.00 | 16.80 | $6,636.00 |
| Tanya Forde-Chandler | C | 2009 | $455.00 | 79.00 | $35,945.00 |
| Tanya Forde-Chandler | C | 2009 | $355.00 | 24.80 | $8,804.00 |
| Tashanna B. Pearson | L | 2009 | $455.00 | 153.60 | $69,888.00 |
| Thomas M. Kretchmar | C | 2009 | $455.00 | 71.30 | $32,441.50 |
| Tracy K. Bookspan | C | 2009 | $455.00 | 196.30 | $89,316.50 |
| U-Hyeon Kwon | C | 2009 | $550.00 | 126.10 | $69,355.00 |
| William J. Carter | C | 2009 | $470.00 | 10.60 | $4,982.00 |

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| William J. Carter | C | 2009 | $455.00 | 350.60 | $159,523.00 |
| Zaw Win | BFR | 2009 | $455.00 | 757.20 | $344,526.00 |
| Zohar R. Levy | L | 2009 | $455.00 | 164.30 | $74,756.50 |
| Aida P. Santillan | C | 2010 | $595.00 | 27.50 | $16,362.50 |
| Ajit Gokhale | T | 2010 | $455.00 | 214.80 | $97,734.00 |
| Andrea Y. Loh | L | 2010 | $395.00 | 204.00 | $80,580.00 |
| Ashley Birnbaum | C | 2010 | $395.00 | 25.70 | $10,151.50 |
| Brett A. Bush | C | 2010 | $455.00 | 234.50 | $106,697.50 |
| Brian Kim | C | 2010 | $395.00 | 163.90 | $64,740.50 |
| Candace Arthur | BFR | 2010 | $395.00 | 689.70 | $272,431.50 |
| Chelsea Rosen | BFR | 2010 | $395.00 | 179.20 | $70,784.00 |
| Christopher Oliver | C | 2010 | $455.00 | 31.60 | $14,378.00 |
| Dana Hall | BFR | 2010 | $395.00 | 34.10 | $13,469.50 |
| Elana R. Pollack | L | 2010 | $455.00 | 352.00 | $159,796.00 |
| Erika del Nido | BFR | 2010 | $395.00 | 547.80 | $216,381.00 |
| Jessica Costa | L | 2010 | $395.00 | 407.30 | $160,883.50 |
| Jesse L. Morris | L | 2010 | $395.00 | 245.70 | $97,051.50 |
| John Figura | L | 2010 | $395.00 | 102.40 | $40,448.00 |
| Julian Lista | C | 2010 | $515.00 | 139.10 | $71,636.50 |
| Justin C. Lee | C | 2010 | $395.00 | 515.00 | $203,425.00 |
| Justin Yi | C | 2010 | $395.00 | 201.60 | $79,632.00 |
| Kevin Kramer | L | 2010 | $395.00 | 41.70 | $16,471.50 |
| Neil H. Vaishnav | L | 2010 | $395.00 | 46.60 | $18,407.00 |
| Peter J. Kee | L | 2010 | $395.00 | 239.30 | $94,523.50 |
| Sam Limmer | C | 2010 | $395.00 | 76.50 | $30,217.50 |
| Shrutee Raina | L | 2010 | $395.00 | 491.80 | $194,261.00 |
| Tracy Burgess | C | 2010 | $395.00 | 131.00 | $51,745.00 |
| Young Lee | C | 2010 | $455.00 | 5.70 | $2,593.50 |
| Young Lee | C | 2010 | $355.00 | 1.50 | $532.50 |
| **Total** | | | | **53,788.50** | **$28,802,245.39** |

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC – Managing Clerk, LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL PARALEGALS, CLERKS, LIBRARY STAFF AND OTHER NON-LEGAL STAFF | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Catherine Gurney | C | $295.00 | 1.20 | $354.00 |
| Catherine Gurney | C | $290.00 | 4.30 | $1,247.00 |
| David Brangam | C | $295.00 | 1.60 | $472.00 |
| David Brangam | C | $290.00 | 360.90 | $104,661.00 |
| David Elphinstone | C | $295.00 | 3.90 | $1,150.50 |
| David Elphinstone | C | $290.00 | 72.40 | $20,271.00 |
| Emily Wapples | C | $295.00 | 3.90 | $1,150.50 |
| Emily Wapples | C | $290.00 | 9.50 | $2,755.00 |
| Trinh Hoang | L | $295.00 | 2.00 | $590.00 |
| Trinh Hoang | L | $290.00 | 49.10 | $14,094.00 |
| Julian Chatterton | C | $290.00 | 50.70 | $14,703.00 |
| Nathan Lorenzo-George | C | $290.00 | 7.00 | $2,030.00 |
| Abeer Garousha | BFR | $280.00 | 13.10 | $3,668.00 |
| Abeer Garousha | BFR | $270.00 | 200.20 | $54,054.00 |
| Christopher A. Stauble | BFR | $275.00 | 467.30 | $128,507.50 |
| Christopher A. Stauble | BFR | $245.00 | 10.80 | $2,646.00 |
| Kathleen Lee | BFR | $275.00 | 29.10 | $8,002.50 |
| Kathleen Lee | BFR | $245.00 | 0.30 | $73.50 |
| Matthew Viola | C | $275.00 | 7.60 | $2,090.00 |
| Christine Doyle | L | $260.00 | 77.20 | $20,072.00 |
| Colin O'Connor | C | $260.00 | 10.50 | $2,730.00 |
| Deidre E. Fuller | L | $260.00 | 6.30 | $1,638.00 |
| Jeffrie Hausman | L | $260.00 | 14.80 | $3,848.00 |
| Jo N. Burns | L | $260.00 | 6.60 | $1,716.00 |
| John A. Ellsworth | C | $260.00 | 42.00 | $10,920.00 |
| Lance Y. Shiroma | C | $260.00 | 152.20 | $39,572.00 |
| Leason Hoilett | L | $260.00 | 11.50 | $2,990.00 |
| Peggy Jones | C | $260.00 | 38.70 | $10,062.00 |
| Yvonne Washington | L | $260.00 | 143.80 | $37,388.00 |
| Erica Rees | T | $255.00 | 7.60 | $1,938.00 |
| Erica Rees | T | $250.00 | 11.40 | $2,850.00 |
| James Nierinck | C | $255.00 | 28.00 | $7,140.00 |
| James Nierinck | C | $250.00 | 54.20 | $13,550.00 |
| Noel Hughes | C | $255.00 | 6.00 | $1,530.00 |
| Rachel Ponnusamy | L | $255.00 | 5.90 | $1,504.50 |
| Rachel Ponnusamy | L | $250.00 | 85.80 | $21,450.00 |
| Victoria Burton | L | $255.00 | 1.00 | $255.00 |
| Victoria Burton | L | $250.00 | 50.80 | $12,700.00 |
| Emma Rubin | C | $250.00 | 5.00 | $1,250.00 |
| Helen Jones | C | $250.00 | 24.20 | $5,975.00 |
| Katie Slater | T | $250.00 | 7.50 | $1,875.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL PARALEGALS, CLERKS, LIBRARY STAFF AND OTHER NON-LEGAL STAFF | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Lewis Blakey | C | $250.00 | 202.10 | $50,525.00 |
| Nancy P. Cade | L | $250.00 | 7.90 | $1,975.00 |
| Noel Hughes | C | $250.00 | 134.90 | $33,725.00 |
| Michelle I. Freifeld | L | $245.00 | 41.50 | $10,167.50 |
| Suzanne Inglis | L | $245.00 | 3.40 | $833.00 |
| Suzanne Inglis | L | $275.00 | 131.40 | $36,135.00 |
| Barbara Frayle | C | $240.00 | 214.20 | $51,408.00 |
| Beth Akers | L | $240.00 | 2.60 | $624.00 |
| Beth Akers | L | $210.00 | 7.60 | $1,596.00 |
| Crystal McCray | L | $240.00 | 129.70 | $31,128.00 |
| Karen A Joffrion | C | $240.00 | 10.90 | $2,616.00 |
| Laura Jewett | LSS | $235.00 | 26.30 | $6,180.50 |
| Meshawn DeCoteau | LSS | $235.00 | 16.00 | $3,760.00 |
| Mili Sam | LSS | $235.00 | 87.30 | $20,515.50 |
| Sarah B. Roberts | BFR | $230.00 | 73.80 | $16,974.00 |
| Francheska Marquez | C | $225.00 | 64.20 | $14,445.00 |
| Karen M. Roche | L | $225.00 | 186.00 | $41,850.00 |
| Karen M. Roche | L | $205.00 | 3.40 | $697.00 |
| Lori A. Seavey | BFR | $225.00 | 196.10 | $44,122.50 |
| Mel C. Maravilla | C | $225.00 | 16.20 | $3,645.00 |
| Michael Jackson | L | $225.00 | 461.70 | $103,882.50 |
| Odalys C. Smith | L | $225.00 | 197.00 | $44,325.00 |
| Odalys C. Smith | L | $205.00 | 0.40 | $82.00 |
| Artur Robin | LSS | $215.00 | 38.50 | $8,277.50 |
| Betty McGee | BFR | $215.00 | 6.60 | $1,419.00 |
| Christine Guthrie | C | $215.00 | 36.50 | $7,847.50 |
| Christine Guthrie | C | $195.00 | 82.00 | $15,990.00 |
| Doe Y. Oh | C | $215.00 | 5.30 | $1,139.50 |
| Geetinder Gujral | LSS | $215.00 | 8.90 | $1,913.50 |
| George Scopas | LSS | $215.00 | 17.50 | $3,762.50 |
| Gillad Matiteyahu | BFR | $215.00 | 536.20 | $115,283.00 |
| Gillad Matiteyahu | BFR | $190.00 | 4.40 | $836.00 |
| Herbert Chan | L | $215.00 | 91.00 | $19,565.00 |
| Herbert Chan | L | $195.00 | 14.50 | $2,827.50 |
| MaryAnne Bollen | LSS | $215.00 | 21.30 | $4,579.50 |
| Michael Quarry | LSS | $215.00 | 15.10 | $3,246.50 |
| Peter Nudelman | LSS | $215.00 | 12.70 | $2,730.50 |
| Scott Larangeira | LSS | $215.00 | 9.90 | $2,128.50 |
| Tashan Q. Reid | C | $215.00 | 32.10 | $6,901.50 |
| Victoria A. Bennett | L | $215.00 | 10.90 | $2,343.50 |
| William H. Gordon | L | $215.00 | 18.80 | $4,042.00 |
| Yovanka Malkovich | L | $215.00 | 21.90 | $4,708.50 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC – Managing Clerk, LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL PARALEGALS, CLERKS, LIBRARY STAFF AND OTHER NON-LEGAL STAFF | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Lauren C. Haiken | LSS | $210.00 | 8.00 | $1,680.00 |
| Jorge A. Romero | LSS | $205.00 | 22.70 | $4,653.50 |
| Ann M Scarpa | L | $200.00 | 181.30 | $36,260.00 |
| Bill K. Chan | C | $200.00 | 49.40 | $9,880.00 |
| Debra Roth | C | $200.00 | 5.30 | $1,060.00 |
| Lougran Potter | L | $200.00 | 6.20 | $1,240.00 |
| Sean P. Devaney | C | $200.00 | 70.20 | $14,040.00 |
| Shelley J. Fortune | L | $200.00 | 80.10 | $16,020.00 |
| Steve Vacek | L | $200.00 | 5.40 | $1,080.00 |
| Yashomati B. Koul | BFR | $200.00 | 414.40 | $82,880.00 |
| Yashomati B. Koul | BFR | $180.00 | 5.00 | $900.00 |
| Daniel F. McLaughlin | X | $195.00 | 26.10 | $5,089.50 |
| Frances Fredrick | L | $195.00 | 12.70 | $2,476.50 |
| Kent Japp | L | $195.00 | 6.00 | $1,170.00 |
| Merill Losick | X | $195.00 | 8.60 | $1,677.00 |
| Francene S. Castillero | L | $190.00 | 15.00 | $2,850.00 |
| Gareth M Mandel | L | $190.00 | 13.50 | $2,565.00 |
| Harish Perkari | C | $190.00 | 21.40 | $4,066.00 |
| Justin Benjamin | LSS | $190.00 | 21.30 | $4,047.00 |
| Andrea Wilmer | BFR | $180.00 | 7.30 | $954.00 |
| Benjamin Scetbon | L | $180.00 | 24.20 | $4,356.00 |
| Christophe Cheyroux | C | $180.00 | 10.10 | $1,818.00 |
| Donald Etienne | BFR | $180.00 | 119.70 | $16,821.00 |
| Genna D. Grossman | C | $180.00 | 452.50 | $81,450.00 |
| Hillary A. Axon | L | $180.00 | 137.40 | $24,732.00 |
| Katharine L. Steigerwald | C | $180.00 | 94.50 | $17,010.00 |
| Margaux-Joy Latimier | BFR | $180.00 | 5.00 | $900.00 |
| Michael R. Lynch | C | $180.00 | 7.60 | $1,368.00 |
| Mona V. Mehta | L | $180.00 | 276.80 | $49,599.00 |
| Steve Vacek | L | $180.00 | 0.70 | $126.00 |
| Mark Ribaudo | MC | $170.00 | 9.30 | $1,581.00 |
| Caitlin M. McGrath | L | $160.00 | 505.90 | $80,944.00 |
| Elizabeth W. Safran | L | $160.00 | 59.50 | $9,520.00 |
| Jeffrey A. Klein | L | $160.00 | 145.30 | $23,248.00 |
| Matthew Schoenfeld | BFR | $160.00 | 470.90 | $75,344.00 |
| Rachel Shapiro | BFR | $160.00 | 94.70 | $15,152.00 |
| Sherri Bell | L | $160.00 | 65.70 | $10,512.00 |
| Stephanie A. Schiffman | L | $160.00 | 29.00 | $4,640.00 |
| David Rivera | MC | $150.00 | 18.10 | $2,715.00 |
| Daniela M. Pugh | X | $145.00 | 5.30 | $768.50 |
| Marie J. Carmant | X | $145.00 | 17.80 | $2,581.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| NAME OF PROFESSIONAL PARALEGALS, CLERKS, LIBRARY STAFF AND OTHER NON-LEGAL STAFF | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Deidra M. Mulligan | X | $140.00 | 11.10 | $1,554.00 |
| Luis Cruz | X | $135.00 | 9.40 | $1,269.00 |
| Elio Bettini | X | $125.00 | 5.10 | $637.50 |
| Maximiliano Greco | X | $85.00 | 13.40 | $1,139.00 |
| **Total** | | | **8,853.50** | **$1,920,599.50** |

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC – Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

| PROFESSIONALS<br><br>TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Of Counsel | $868.52 | 18,389.10 | $15,971,313.25 |
| Associates | $535.47 | 53,788.50 | $28,802,245.39 |
| Paraprofessionals | $216.93 | 8,853.50 | $1,920,599.50 |
| **Blended Attorney Rate** | $620.32 | | |
| **Total Fees Incurred** | | **81,031.10** | **$46,694,158.14** |

\* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  T – Tax,  MC –  Managing Clerk,
LSS – Litigation Support Services,  X – Library,  ‡ – Attorney not yet admitted to the bar

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                          :
**In re**                                 :   **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :   **08-13555 (JMP)**
                                          :
                            **Debtors.**  :   **(Jointly Administered)**
                                          :
-----------------------------------------------------------------x

**FIFTH APPLICATION OF WEIL, GOTSHAL & MANGES LLP,**
**AS ATTORNEYS FOR THE DEBTORS, FOR INTERIM ALLOWANCE**
**OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Weil, Gotshal & Manges LLP ("<u>WGM</u>"), attorneys for Lehman Brothers

Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors in possession (together with LBHI, the "<u>Debtors</u>" and, collectively with their non-debtor

affiliates, "<u>Lehman</u>"), for its fifth application, pursuant to sections 330(a) and 331 of title 11 of

the United States Code (the "<u>Bankruptcy Code</u>") and Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for the interim allowance of compensation for

professional services performed by WGM for the period commencing February 1, 2010, through

and including May 31, 2010 (the "<u>Fifth Compensation Period</u>"), and for reimbursement of its

actual and necessary expenses incurred during the Fifth Compensation Period, respectfully represents:

## PRELIMINARY STATEMENT

1.     The significant resources WGM dedicated during the Fifth Compensation Period enabled the Debtors to substantially advance the administration of these chapter 11 cases. In perhaps the most public example, WGM worked with the Debtors to formulate and file the Debtors' joint chapter 11 plan on March 15, 2010 [Docket No. 7572], and a revised plan (the "Plan") [Docket No. 8330] and disclosure statement (the "Disclosure Statement") [Docket No. 8332] on April 14, 2010, marking significant milestones in the Debtors' chapter 11 cases.  These filings and disclosures made only 18 months into the largest and most complicated chapter 11 cases in history were the result of countless hours of research, investigation and counseling by WGM on issues that will impact recoveries to all creditors, including substantive consolidation, intercompany and guarantee claims against the Debtors, and analysis of various affirmative claims of the Debtors.

2.     No less significant were the other accomplishments that WGM enabled the Debtors to achieve during the Fifth Compensation Period, including:

- negotiating settlements with 23 counterparties in 18 separate alternative dispute resolution ("ADR") proceedings, recovering a total of $137,500,000 of new dollars for the Debtors' estates and creditors, pursuant to the order approving ADR procedures for the Debtors' affirmative claims under their more than 10,000 derivatives contracts (the "Derivatives Contracts") [Docket No. 5207];

- negotiating, documenting and obtaining an order authorizing a Collateral Disposition Agreement (the "CDA") between the Debtors and JPMorgan Chase Bank, N.A. ("JPMorgan"), among others, reducing JPMorgan aggregate claim balance from approximately $7.64 billion to approximately $524 million and transferring control of billions of dollars of collateral to LBHI such that LBHI can now manage those assets to maximize the value thereof for the benefit of its estate and creditors;

- successfully prosecuting a motion to enforce the automatic stay against Swedbank AB (publ.) ("Swedbank") for turnover of 82 million Swedish Krona and successfully

defeating Swedbank's application for a stay pending appeal;

- successfully prosecuting the Debtors' first through ninth omnibus objections to claims, expunging 3,096 claims asserting more than $68 billion against the Debtors; and preparing and filing the Debtors' tenth through seventeenth omnibus objections to claims, seeking to expunge over 1,600 additional claims asserting $108 billion; and

- issuing 28 subpoenas pursuant to Bankruptcy Rule 2004 of numerous counterparties to derivative contracts and reviewing and facilitating information received to assist the Debtors to make informed decisions in administering the chapter 11 cases.

3.      In addition, during the Fifth Compensation Period, WGM was required to prepare, review, or respond to the more than 2,446 motions, notices, applications, objections, briefs, orders, and other pleadings filed in the Debtors' chapter 11 cases to ensure that the interests of the Debtors were adequately represented.  Each of these filings and the 718 filings in the SIPA Proceeding (defined below) required careful consideration and substantial resources from WGM.  Among other filings, three new adversary proceedings were commenced by third parties against the Debtors (increasing to the total number of adversary proceedings pending during the Fifth Compensation Period to forty-one) (the "Adversary Proceedings"), nine motions for relief from the automatic stay, and seven motions to file late claims or to extend the time to file proofs of claim were filed against the Debtors.  In addition to the Plan and Disclosure Statement, WGM drafted and filed over 100 motions, objections, replies, applications, stipulations or other pleadings on behalf of the Debtors during the Fifth Compensation Period.

4.      Since the commencement of these cases, WGM has coordinated its efforts with the Alvarez and Marsal North America LLC ("A&M"), the Debtors' restructuring advisors, the professionals of the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), the SIPA Trustee (defined below), the Examiner (defined below), the foreign administrators appointed to administer the insolvency proceedings of the Debtors' foreign

affiliates, and a variety of other constituents to ensure that the interests of the Debtors were adequately represented and all of the Debtors' constituents were apprised of major developments. WGM's efforts to advise and represent the Debtors in all facets of these cases and the affairs of the Lehman enterprise during the Fifth Compensation Period were actual and necessary and of substantial benefit to the estates and their creditors. In the perspective of the complexity and scale of these cases, WGM's charges for professional services performed and expenses incurred are reasonable under the applicable standards. WGM respectfully requests that the Court grant this application and allow interim compensation for professional services performed and reimbursement for expenses incurred during the Fifth Compensation Period as requested.

## **BACKGROUND**

5.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On October 8, 2008, the Debtors filed an application to employ WGM as their attorneys. No objections were filed to WGM's retention and, pursuant to an order, dated November 21, 2008 [Docket No. 1660], the Debtors were authorized to retain WGM as their attorneys to render legal services in the prosecution of their chapter 11 cases.

7.      On September 17, 2008, the U.S. Trustee appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.

8.    On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970, as amended ("SIPA") with respect to Lehman

Brothers Inc. ("LBI").  James W. Giddens, Esq. is the trustee (the "SIPA Trustee") appointed to

administer LBI's estate under the SIPA (the "SIPA Proceeding").

9.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner (the "Examiner") and by order, dated January 20, 2009, the Court approved the U.S.

Trustee's appointment of the Examiner.  On March 11, 2010, the Examiner issued his report

pursuant to section 1106(b) of the Bankruptcy Code.  On July 13, 2010, the Court entered an

order discharging the Examiner and his professionals.

10.    On May 26, 2009, the Court entered an order appointing a fee committee

(the "Fee Committee") and approving a fee protocol (the "Fee Protocol") to make

recommendations with respect to fees and expenses of retained professionals in these cases.

11.    WGM filed the following applications for interim allowance of

compensation for professional services rendered and reimbursement of actual and necessary

expenses incurred by WGM prior to the Fifth Compensation Period on April 13, 2009 [Docket

No. 3343], August 14, 2009 [Docket No. 4825], December 14, 2009 [Docket No. 6205], and

April 16, 2010 [Docket No. 8395].  Orders with respect to the first three of these applications

were entered on August 13, 2009 [Docket No. 4795] and April 9, 2010 [Docket No. 8205],

[Docket No. 8207] and [Docket No. 8218].

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

12.    WGM seeks allowance of interim compensation for professional services

performed during the Fifth Compensation Period in the amount of $46,694,158.14 and for

reimbursement of expenses incurred in connection with the performance of such services in the

amount of $1,125,788.89.  These amounts include certain fees and expenses incurred prior to the

Fifth Compensation Period which were to be, but were not, paid by third parties for which the

Debtors are primarily responsible.[1]  During the Fifth Compensation Period, WGM attorneys and

paraprofessionals expended a total of 81,031.10 hours in connection with the necessary services

performed.  Of the aggregate time expended, 18,389.10 recorded hours were expended by

partners and counsel of WGM, 53,788.50 recorded hours were expended by associates, and

8,853.50 recorded hours were expended by paraprofessionals of WGM.  To the extent that time

or disbursement charges for services performed or disbursements incurred relate to the Fifth

Compensation Period, but are processed subsequent to the preparation of this application, WGM

reserves the right to request additional compensation for such services and reimbursement of

such expenses in a future application.

13.    This application has been prepared in accordance with the Guidelines for

Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on June 20, 1991 and the Amended Guidelines for Fees and Disbursements

for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on

April 19, 1995 (together the "Local Guidelines"), the United States Trustee Guidelines for

---

[1]    As described in WGM's prior applications, in certain instances, Lehman may be entitled to reimbursement
from third parties, or third parties may be obligated to pay Lehman's professionals directly, for legal services
provided and expenses incurred in connection therewith.  For example, in many instances, borrowers may be
responsible for payment of Lehman's costs and expenses in connection with Lehman's role as a lender or agent.
After consultation and upon agreement with the U.S. Trustee, WGM endeavored to segregate legal fees and
expenses that may be subject to payment by third parties, and such fees and expenses are not contained within this
Application.  Based upon the agreement with the U.S. Trustee, for each matter in which the Debtors and/or Lehman
may be entitled to reimbursement from third parties, WGM has opened, or will open, a new billing account.  WGM
has sought and will seek payment from third parties for all applicable fees and expenses charged to these accounts,
which will not be subject to any holdback.  WGM has not, and is not required to submit monthly fee statements to
the Debtors or Lehman for such matters unless and until such third-parties fail to pay the amounts due, at which
point WGM would seek payment from the Debtors, but will reflect amounts charged and payments received on
account of such matters, in summary fashion, in interim fee applications.  References to the Fifth Compensation
Period made herein shall include prior periods in which WGM incurred fees and expenses with respect to which
WGM has not previously sought Court approval.

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and the Second Amended

Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a)

Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals [Docket No. 3102] (the "Administrative Order," and together with the Local

Guidelines and the UST Guidelines, the "Guidelines").  Further, WGM has endeavored to

comply with the directions provided by the Fee Committee made in connection with WGM's

prior applications.  Pursuant to the Fee Protocol, the Debtors will provide a copy of this

application to the Fee Committee.

        14.     The fees charged by WGM in these cases are billed in accordance with

WGM's existing billing rates and procedures in effect during the Fifth Compensation Period.

The rates WGM charges for the services rendered by its professionals and paraprofessionals in

these chapter 11 cases are the same rates WGM charges for professional and paraprofessional

services rendered in comparable bankruptcy and non-bankruptcy related matters.  Such fees are

reasonable based on the customary compensation charged by comparably skilled practitioners in

comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

        15.     In the regular course of its business WGM adjusts its billing rates from

time to time.  The customary hourly rates in WGM's domestic offices are $725 to $990 for

members and counsel, $395 to $695 for associates and $160 to $275 for paraprofessionals.

Hourly rates in WGM's foreign offices, applicable in these chapter 11 cases, subject to change

from time to time, are $735 to $1,000[2] for members, and $365 to $825 for associates.

---

[2]      The normal billing rate for certain members in WGM's foreign offices exceeds $1,000, but has been voluntarily capped by WGM at $1,000 for these Chapter 11 Cases.

16.     Accordingly, during the Fifth Compensation Period, WGM billed the

Debtors for time expended by attorneys based on hourly rates ranging from $395 to $990 per

hour for domestic attorneys and $365 to $1,000 for foreign attorneys.  Allowance of

compensation in the amount requested would result in a blended hourly billing rate of

approximately $620.32 (based on 72,177.60 recorded hours for attorneys at WGM's regular

billing rates in effect at the time of the performance of services).

17.     WGM consistently monitors its charges and expenses before and after the

submission of monthly fee statements for possible errors or charges that might be inappropriate

or otherwise should be reduced.  As a result, prior and subsequent to the submission of monthly

fee statements for the Fifth Compensation Period, WGM reduced its charges by $430,085.36 and

its expenses by $148,149.43, for a total of $578,234.79 in voluntary reductions.  WGM will

continue to diligently monitor its charges and expenses and, where appropriate, make appropriate

reductions.  As of the date hereof, WGM has voluntarily reduced its fees and expenses by

$2,637,503.02 in aggregate since the Commencement Date.

18.     In accordance with the Administrative Order, to date, WGM received

payments totaling $30,001,397.24 for the Fifth Compensation Period, consisting of

$29,164,524.40, representing 80% of the fees, and $836,872.84, representing 100% of the

expenses, invoiced for February, March, and April 2010.  WGM has not yet received payment

for either the fees or the expenses invoiced for May 2010.

19.     There is no agreement or understanding between WGM and any other

person, other than members of the firm, for the sharing of compensation to be received for

services rendered in these cases.  Except as explained immediately below, during the Fifth

Compensation Period, other than pursuant to the Administrative Order, WGM received no

payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.

20.    During the Fifth Compensation Period, WGM has received payment in the aggregate of approximately $4,751,057.05, from third parties related to representations of Lehman entities (as described in footnote 1) listed on Exhibit A hereto.  WGM may have incurred, but not yet received payment from third parties for additional fees and expenses in connection with these and other matters.  To the extent any third party fails to reimburse WGM for such fees or expenses, however, WGM is authorized to seek reimbursement from the Debtors or Lehman in accordance with the Administrative Order.[3]

21.    As of the date hereof, WGM has a remaining credit balance in favor of the Debtors for future professional services to be performed, and expenses to be incurred, in the amount of $4,422,608.80.  WGM will file further disclosures to the extent reconciliation of time and expenses incurred prior to the Commencement Date results in further charges.

22.    Annexed hereto as Exhibit B is a certification regarding compliance with the Guidelines.

23.    Pursuant to the UST Guidelines, the Summary Sheet filed in connection with this Application includes a schedule of WGM professionals and paraprofessionals who have performed services for the Debtors during the Fifth Compensation Period, the capacities in which each such individual is employed by WGM, the department in which each individual practices, the hourly billing rate charged by WGM for services performed by such individuals, the year in which each professional was first licensed to practice law and the aggregate number of hours expended in this matter and fees billed therefor.

---

[3]    As noted in footnote 1 above, based upon an agreement with the U.S. Trustee, WGM is not required to maintain or provide detailed task codes or billing increments for such engagements.

24. Annexed hereto as <u>Exhibit C</u> is a schedule specifying the categories of expenses for which WGM is seeking reimbursement and the total amount for each such expense category. An itemized schedule of all such expenses will be provided to the Debtors, the Court, the attorneys for the Creditors' Committee, the U.S. Trustee, and the Fee Committee.

25. Annexed hereto as <u>Exhibit D</u>, pursuant to the UST Guidelines, is a summary of WGM's time records billed during the Fifth Compensation Period using project categories hereinafter described.[4] WGM maintains computerized records of the time spent by all WGM attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter 11 cases. Copies of these computerized records will be furnished to the Debtors and, subject to redaction or modification for the attorney-client privilege where necessary to protect the Debtors' estates, the Court, the attorneys for the Creditors' Committee, the U.S. Trustee, and the Fee Committee in the format specified by the UST Guidelines.

**SUMMARY OF SERVICES PERFORMED BY
WGM DURING THE FIFTH COMPENSATION PERIOD**

26. Descriptions of some of the more significant tasks performed by WGM during the Fifth Compensation Period are set forth below.

27. <u>Plan and Disclosure Statement</u>. The preparation of the Plan and Disclosure Statement were massive undertakings that required substantial commitment from WGM. The size, complexity and importance of these cases required WGM to devote a significant amount of time, commitment and effort to prepare the Plan and Disclosure Statement. Additionally, WGM was heavily involved in and delivered services critical to, the Debtors'

---

[4] In order to streamline the review process of the all of the professional fee applications that are filed in connection with the Debtors' chapter 11 cases, the project categories of all retained professionals were standardized beginning on March 1, 2010. Accordingly, <u>Exhibit D</u> consists of two charts: the first chart provides a summary of WGM's time records billed during February using the prior project categories and the second chart provides a summary of WGM's time records billed during March, April and May 2010 using the standardized project categories.

efforts to try to achieve a consensus amongst stakeholders on the Plan.  In that regard, during the

Fifth Compensation Period, WGM participated in multiple meetings with the Debtors, the

Creditors' Committee and its professionals, and other creditor constituencies and their

professionals.  WGM participated in multilateral global protocol meetings on April 22 and 23

and May 18 and 19, 2010 with the majority of the foreign administrators administering the

estates of the Debtors' foreign affiliates and also participated in separate bilateral meetings with

certain administrators.  WGM also participated in meetings with individual creditors of the

Debtors including indenture trustees and several ad hoc groups and alliances composed of

creditors of the various Debtors.

    28.    WGM also expended significant effort to analyzing the Plan in the context

of the requirements for confirmation under section 1129 of the Bankruptcy Code.  Specifically,

during the Fifth Compensation Period, WGM researched, analyzed, prepared memoranda and

advised the Debtors on a variety of issues, including classification of claims, voting,

subordination, the "best interests" test, the "absolute priority" rule and creditor recoveries.

WGM also assisted the Debtors in their efforts to maximize transparency regarding the Plan

process, including assisting the Debtors to establish a virtual data room and negotiating

confidentiality agreements with certain parties.

    29.    In addition to the Plan, during the Fifth Compensation Period, WGM

engaged in an intensive review of Lehman's prepetition businesses, the events leading up to the

chapter 11 filings and its immediate aftermath, and transactions entered into post-petition in

order to draft a comprehensive 500-page Disclosure Statement to allow creditors to make

informed judgments regarding the Plan.  WGM carefully reviewed Lehman's filings with the

Securities and Exchange Commission as well as the numerous indentures and credit agreement

representing indebtedness to which Lehman was a party.  WGM also reviewed the entire docket

of these Chapter 11 Cases containing over 10,000 entries and all material transactions entered

into since the bankruptcy to draft detailed descriptions of the transactions, sales, litigations and

other events that have occurred since the Commencement Date.  WGM also coordinated with

A&M and other estate professionals to prepare an analysis of the estimated recoveries that

creditors would receive under the Plan and in a hypothetical liquidation pursuant to chapter 7 of

the Bankruptcy Code.  WGM also worked with the Debtors and their advisors to create the

schedules to the Disclosure Statement, which include the recovery analysis, the liquidation

analysis, claims data, intercompany balances and projected budgets of the Debtors.

    30. <u>LAMCO</u>.  During the Fifth Compensation Period, WGM advised and

represented the Debtors in all aspects of the establishment of LAMCO LLC (together with its

affiliates, "<u>LAMCO</u>"), a non-debtor affiliate asset management company that will provide

administration services to the Debtors and, subject to certain restrictions and approvals, third

parties.  LAMCO was formed to capitalize on LBHI's team of approximately 450 individuals

(including 70 A&M employees) spread across LBHI's information technology infrastructure and

five distinct asset classes (commercial real estate, residential mortgages, private equity and

principal investments, corporate loans and derivatives) to manage and wind-down the Debtors'

assets and other infrastructure for the long-term management of the Debtors' long-term

investments and assets.   WGM advised the Debtors on LAMCO's overall structure, preparing

LAMCO's formation documents and obtaining the necessary domestic and international

approvals for the formation of LAMCO, assisting and documenting the transfer of LBHI's asset

management personnel and infrastructure to LAMCO, and preparing the asset management

documents pursuant to which LAMCO would begin providing asset management services to the

Debtors.  WGM also prepared and filed with the Court on March 15, 2010, a motion, pursuant to

sections 105(a) and 363 of the Bankruptcy Code [Docket No. 7579], seeking approval to enter

into an asset management agreement (and related agreements) with LAMCO for the purposes

discussed above.  WGM negotiated the resolution of several objections filed by the Debtors' UK

affiliates and certain creditors of Lehman Brothers Special Financing Inc. ("LBSF"), and

obtained a consensual order, entered on April 15, 2010, granting the Debtors the authority to

consummate the LAMCO transaction [Docket No. 8372].

       31.    Derivatives.  As of the Commencement Date, Lehman was party to or

guarantor of 10,000 plus Derivative Contracts with an excess of 1,700,000 transactions.  The size

and complexity of the Derivative Contracts are unprecedented in the context of chapter 11 cases

and will have an enormous impact on recoveries to creditors.  As has been the case since the

Commencement Date, during the Fifth Compensation Period, WGM devoted substantial

resources to implementing the Debtors' global strategies to maximize the value of their

derivatives assets.  At any one time, WGM's multi-disciplinary derivatives team may be engaged

a large number of research and other derivative-related projects.

       32.    Significantly, during the Fifth Compensation Period, WGM assisted the

Debtors to implement the Court-approved ADR procedures for the Debtors' Derivatives

Contracts with recovery potential.  WGM counseled the Debtors on identifying matters for

mediation, prepared notices, replies and related documents for mediations and participated in

settlement conferences and mediations with Derivatives Contract counterparties to attempt to

achieve consensual resolutions.  With WGM's assistance, during the Fifth Compensation Period,

the Debtors settled disputes with 23 counterparties in 18 separate ADR proceedings realizing a

total recovery of $137,500,000 of new dollars for the Debtors' estates.

33.     WGM also expended resources to preserve the Court's rulings on the

Debtors' motion to compel Metavante Corporation ("Metavante") to perform its obligations

under a swap agreement and in the *LBSF v. BNY Corporate Trustee Serv. Ltd.* (Adv. Pro. No. 09-

01242) adversary proceeding (the "BNY Litigation").  In that regard, the Debtors achieved a

settlement with Metavante, including dismissal of Metavante's appeal of the Court's decision.

The settlement is expected to result in a substantial payment to LBSF upon maturity of the

contract and also eliminates Metavante's proofs of claims.  WGM also continued to devote

substantial time and resources to the BNY Litigation to ensure that the Debtors' interests are

adequately represented, including representing the interests of the Debtors in the parallel

proceeding pending in England in which noteholders seek to enforce contractual provisions to

withhold payments from the Debtors under English law.  These decisions are of great

significance to the Debtors because similar contractual provisions appear in hundreds of similar

prepetition transactions of the Debtors, and counterparties have taken similar legal positions

against the Debtors to withhold significant value from the Debtors' estates.

34.     In addition to these significant achievements, throughout the Fifth

Compensation Period, WGM represented the Debtors' interests in various disputes, including

those related to invalid terminations, counterparties' non-performance, and assertions of rights of

setoff.  These issues were raised both informally, in negotiations, and formally, in pleadings filed

with the Court.  The Debtors' motion to enforce the automatic stay against Swedbank and

Swedbank's objection thereto is one example of the latter.  In response to the Debtors' demand

to turnover approximately 82 million Swedish Krona deposited postpetition in an LBHI general

deposit account at Swedbank, Swedbank argued that the safe harbor provisions, in particular,

sections 560 and 561 of the Bankruptcy Code, override the mutuality requirement of section 553

of the Bankruptcy Code. WGM researched and briefed the issue and presented oral argument to the Court. The Court granted the Debtors' motion and overruled Swedbank's objection. The Court also upheld WGM's objection to Swedbank's motion for a stay pending appeal. WGM continues to represent the interests of the Debtors on appeal. This victory has set an important precedent in the Debtors' cases that serves to discourage any creditor similarly situated to Swedbank from attempting to withhold payments to the Debtors on similar grounds.

35.     WGM also prepared and served 28 subpoenas on derivative counterparties under Bankruptcy Rule 2004 during the Fifth Compensation Period, and achieved numerous consensual discovery schedules to facilitate the exchange of information and establish parameters for potential settlements. WGM expects to continue to devote substantial resources to maximizing the value of the Debtors' derivatives assets for the benefit of the Debtors' estates.

36.     <u>JPM Collateral Disposition Agreement</u>.  In an effort to transfer management of certain illiquid securities held as collateral by JPMorgan back to certain of the Debtors, WGM dedicated significant resources to the negotiation, documentation, approval and consummation of the CDA between the Debtors and JPMorgan. The purpose of this agreement is twofold. First, it provides the Debtors with the means of recovering and administering, in a manner most conducive to enhancing their value, illiquid securities with an aggregate face value in the billions of dollars. Second, it allows JPMorgan to apply cash and cash equivalents it held upon execution of the CDA to provisionally reduce its claims against the Debtors, while reserving the rights of all parties with respect to the propriety of such claims. Specifically, pursuant to the CDA:

- JPMorgan reduced its remaining aggregate claim balance from approximately $7.64 billion to approximately $524 million through application of certain collateral consisting of cash, cash proceeds and principal and income payments received in respect of certain securities and money market funds that JPMorgan

has asserted had been pledged by LBHI, LBI and their affiliates to secure such claims.

- JPMorgan transferred certain remaining illiquid collateral to LBHI.

- LBHI made a one time cash payment to JPMorgan in an amount of approximately $524 million equal to the aggregate unpaid balance of the provisionally allowed JPMorgan claims.

- LBHI stepped into the shoes of JPMorgan as a secured creditor of LBI and the guaranteed Debtors as a subrogee of JPMorgan without any prejudice or impairment of any and all rights of LBI or the other Debtors as to the validity or enforceability of such claims and without any waiver of any further rights of any parties-in-interest.

- Each Lehman entity has reserved any and all rights and remedies it may have under applicable law, contract or otherwise, including, without limitation, the right to contest the validity and enforceability of any such provisionally allowed secured or other claim and/or to avoid or contest such claims, any alleged guarantee thereof and any alleged security therefor, as further set forth in the CDA.

WGM's services in connection with the CDA should result in greater recoveries for the Debtors' estates and creditors.

37.    <u>Real Estate</u>.  As of the Commencement Date, the Debtors and their affiliates had tens of billions of dollars invested in both the debt and equity of various commercial and residential real estate projects across the globe.  During the Fifth Compensation Period, WGM continued to dedicate a significant amount of time to review the extensive documentation related to these projects and to implement the best available course of action for the Debtors' real estate assets.  At any one time during the Fifth Compensation Period, WGM's real estate team was engaged in analyzing aspects of over fifty transactions.  WGM's multi-disciplinary team of professionals and extensive experience enabled the Debtors to expeditiously resolve formal and informal demands of their counterparties and to take necessary actions to preserve the value of Lehman's real estate portfolio.

38.    For example, prior to the Commencement Date, the Debtors provided prepetition financing to third-party borrowers to finance certain real estate developments.  Many

of these third-party borrowers subsequently have experienced financial difficulties and certain of

them have defaulted on their obligations to the Debtors.  Accordingly, WGM has expended

significant time and resources attending to issues related to these financings, including with

respect to representing the Debtors as creditors in the chapter 11 cases of certain third-party

borrowers including:

- *In re Moonlight Basin Ranch, LP*, Case No. 09-62327-11, United States Bankruptcy Court for the District of Montana
- *In re Palmdale Hills Property, LLC, et al.*, Case No. 08-17206, United States Bankruptcy Court of the Central District of California
- *In re Latshaw Drilling, LLC, et al.*, Case No. 09-13572-R, United States Bankruptcy Court for the Northern District of Oklahoma
- *In re Fontainebleau Las Vegas Holdings, LLC, et al.*, Case No. 09-21481, United States Bankruptcy Court for the Southern District of Florida

Each of these matters has been heavily contested and has required a dedicated team of WGM

attorneys to ensure that the Debtors' interests are adequately represented and that recoveries for

their creditors are maximized.

39.    During the Fifth Compensation Period, WGM expended substantial

resources to obtain court approval of a compromise transaction involving Fenway Capital, LLC

("Fenway Capital").  Under the transaction (a) LCPI terminated a repurchase agreement with

Fenway Capital (the counterparty buyer in the transaction) and repurchased the loans and other

assets that were transferred to Fenway Capital (the "Fenway Assets") under such repurchase

agreement, and (b) LBHI paid the repurchase price to Fenway Capital, on behalf of and as

guarantor of the obligations of LCPI, by tendering back for cancellation approximately $3 billion

of commercial paper that was issued to LBHI pursuant to a commercial paper program with

Fenway Funding, LLC which commercial paper was indirectly secured by the Fenway Assets.

The compromise transaction was intended to (i) eliminate the expense and time delay associated

with maintaining the repo structure and commercial paper program, (ii) allow LCPI to end

certain litigation regarding the repurchase agreement in the chapter 11 cases of SCC/Palmdale

LLC and its affiliated debtors (the "SunCal Debtors") and (iii) enable Fenway Capital to seek

dismissal of certain claims against it in the adversary proceeding involving the SunCal Debtors

and circumvent the expense of additional litigation regarding the Fenway Capital repurchase

agreement.

       40.     The compromise with Fenway Capital is expected to benefit the Debtors

because it will streamline administration of the Fenway Assets and allow the Debtors to

maximize value of these assets for their estates.  The motion for approval of the transaction was

contested by the SunCal Debtors and also prompted the filing of a motion for relief from the

automatic stay by the SunCal Debtors.  WGM took immediate action to research, analyze and

brief the issues, and presented oral argument to the Court.  The Court approved the settlement

with Fenway Capital and denied the SunCal Debtors' motion for relief from stay.

       41.     Similarly, WGM continued to represent the Debtors with respect to their

significant investments in the Archstone-Smith Operating Trust ("Archstone"), the former

publicly traded REIT that owns a portfolio of properties concentrated in the Washington, D.C.,

San Francisco, New York and Boston.  WGM negotiated a comprehensive restructuring of

certain acquisition and priority financing in order to improve Archstone's cash flow and liquidity

on a long term basis and maximize LBHI's recovery on the investment.  The key terms of the

restructuring proposal involve the conversion of approximately $5.2 billion of the existing

acquisition financing to classes of new equity interests entitled to a preferred return, the

conversion of the existing priority financing to a new revolving credit facility with an extended

maturity date, and extensions of the maturity dates of the portions of the acquisition financing

that are not converted to preferred equity.  This restructuring is expected to benefit LBHI's estate

because it will stabilize Archstone's balance sheet, minimize the need for additional owner

capital infusions and preserve the value of Archstone's business.  WGM also drafted and filed a

motion and obtained authorization from the Court for the Debtors to entry into the restructuring

agreement.

42.    <u>Claims Resolution</u>.  During the Fifth Compensation Period, WGM

devoted substantial time and effort to assist the Debtors to analyze thousands of claims filed

against the Debtors and, where appropriate, object to such claims.  The claims objection process

is an enormous undertaking that has required significant dedication by a team of WGM

professionals that coordinates with A&M to process, review, analyze and identify thousands of

claims for objection and to prepare, prosecute and secure orders granting the Debtors' objections

to claims.  During the Fifth Compensation Period, WGM successfully prosecuted the Debtors'

first through ninth omnibus objections to claims, expunging 3,096 claims asserting more than

$68 billion against the Debtors.

43.    Additionally, following substantial review and analysis, WGM drafted and

filed the Debtors' fifth through seventeenth omnibus objections to claims seeking to disallow and

expunge an additional 1,600 claims asserting over $108 billion plus unliquidated amounts

against the Debtors.

44.    WGM coordinated its efforts with the Debtors' Court-approved claims and

noticing agent, Epiq Bankruptcy Solutions, LLC, to provide notice to all claimants whose claims

were subject to those objections.  For each omnibus objection, WGM designated a specific

WGM attorney whose name and contact information was prominently set forth on the notice and

who claimants could contact with any questions or concerns.  A team of WGM attorneys

responded to hundreds of informal inquiries and addressed formal objections on behalf of claimants, many of whom were proceeding *pro se*.  Substantial attorney time and resources were spent responding to claimant inquiries and addressing issues raised resulting in a significant reduction in the number of formal responses that were ultimately filed and prosecuted by parties in interest.

45.    <u>Transparency</u>.  Disclosure to the Court, the U.S. Trustee, the Creditors' Committee and their professionals, and all creditors has been, and continues to be, one of the Debtors' fundamental goals.  WGM has taken the lead in assisting the Debtors in the disclosure process and in providing information to the Debtors' stakeholders.  As previously disclosed, WGM maintains a "Lehman Team Hotline" through which any party in interest can email WGM attorneys or call to speak with WGM attorneys regarding developments in these cases.  WGM attorneys spend hours each day responding to emails and calls on a continuous basis to ensure that individual stakeholders have access to accurate information and a platform to raise inquiries.  During the Fifth Compensation Period, WGM responded to hundreds of informal inquiries.

46.    Additional professional services rendered by WGM during the Fifth Compensation Period, organized in accordance with WGM's project codes, are described below.[5]

a.    Case Administration Issues

(i)    General Case Administration

▪    Drafted and obtained Court approval of an amended case management order and coordinated with parties in interest regarding same.

---

[5]    As noted above, WGM's work task codes were revised beginning on March 1, 2010.  Services that were recorded under the prior work task codes in February, 2010 have been allocated to the appropriate new work task codes for the purposes of this summary.

(ii)  General Case Strategy Meetings

- Conducted internal meetings, conferences, and teleconferences regarding case strategy, pending issues, business issues, preparation of and responses to various motions and applications, numerous sale transactions of the Debtors and their non-Debtor affiliates, general litigation strategy, governmental and other investigations, corporate governance, inter-company issues, and international issues.

(iii)  Project Monitoring/Court Calendar & Docket Maintenance

- Reviewed, analyzed, monitored and distributed filings in the main chapter 11 cases, Adversary Proceedings, appeals, and non-Bankruptcy Court litigations to appropriate Lehman, A&M, and WGM teams; and
- maintained work-in-progress reports, and case calendar for distribution to the Debtors and WGM teams.

(iv)  Hearings and Court Communications

- Prepared for and participated in numerous hearings at the Bankruptcy Court, including omnibus hearings on February 19, March 17, April 14 and May 12, 2010, and non-omnibus hearings on February 1 and 25, March 5 and 11, April 15, 20, 26, 27, 28, 29 and 30, May 4, 25 and 26, 2010;
- participated in telephonic and in-person conferences with the Court;
- coordinated regularly with the Court and parties in interest regarding hearings and agenda items; and
- prepared hearing agenda's and summaries of significant pleadings heard at various hearings.

b.  Constituency and Coordination-Related Issues

(i)  Interested Party Communications/Website/Lehman Team Hotline

- Reviewed and responded to communications from numerous parties including the Debtors, A&M, WGM, and other parties in interest regarding various case administration matters; and
- responded to hundreds of telephone and email inquiries from creditors and other parties in interest, including customers, vendors, shareholders, secured and unsecured creditors and potential purchasers of assets regarding Debtors' chapter 11 cases.

(ii)  Communication with Debtors

- Participated in various teleconferences with the Debtors' regarding pending chapter 11 matters; and
- reviewed and responded to numerous emails from the Debtors regarding pending issues.

(iii)  Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee

- Prepared for and participated in meetings and teleconferences with the Creditors' Committee and its professionals regarding the status of the chapter 11 cases, the Plan and Plan-related issues, potential causes of actions, protocols, various document demands, asset sales, loan restructurings, derivative transactions, inter-company and international issues.

(iv)  Secured Creditors Issues/Meetings/Communications

- Participated in meetings with the Debtors and professionals for the Creditors' Committee and the SIPA Trustee regarding, among other things, a collateral disposition agreement with JPMorgan and prepared motion, proffer and reply to objection and obtained approval of same.

(v)  LBI/SIPC Coordination and Issues

- Conducted meetings and teleconferences with the Debtors, A&M, and the SIPC Trustee's professionals to address numerous issues, including reconciling customer claims and non-customer claims of Lehman's foreign and domestic affiliates, LBI/LBHI tax issues, "Purchase in Kind" notes, and potential preference and avoidance actions;
- analyzed issues relating to intercompany claims and relationships between the Debtors, the non-debtor affiliates, and LBI;
- participated in meetings and teleconferences internally and with the SIPA Trustee and the Creditors' Committee, drafted side letter, and negotiated form of order, with respect to LBI's motion seeking authorization to allocate certain property between customer property and property of the general estate;
- prepared various agreements for release of securities from LBI and participated in calls with the Debtors regarding same; and
- reviewed and monitored case docket for SIPA proceeding.

c.    General Business Operation Issues

(i)  Cash Management

- Drafted agreements with banking institutions to prevent setoffs of postpetition deposits for debtor-in-possession accounts and negotiated stipulations to resolve postpetition misdirected wire transfers;
- drafted agreement establishing brokered CD program and motion to retain Stone and Youngberg LLC ("S&Y") to assist with same, and participated in multiple teleconference calls regarding same with the Debtors, S&Y and the U.S. Trustee;
- prepared stipulation with Citibank and obtained Court authority regarding the transfer of certain prepetition deposits to income-earning accounts;

■ participated in conferences and teleconferences with Lehman, A&M, the Creditors' Committee, the U.S. Trustee, the SIPC Trustee and various parties-in-interest regarding Lehman's cash management systems, investment guidelines, intercompany notes, misdirected wire transfers, various banking institutions, prepetition bank accounts, postpetition administrative freezes, setoffs, and postpetition account administration, and conducted legal research and analysis relating to the same.

(ii) Insurance Issues

■ Reviewed and attended to issues regarding the Debtors' insurance policies and coverage, including directors and officers policy and prepared and filed motion for authorization to purchase tail extension under same; and
■ reviewed Examiner's Report regarding insurance issues and participated in meetings with the Debtors regarding same.

(iii) Employee/ERISA/Benefits/Pension Issues

■ Participated in meetings, conducted research and responded to inquiries regarding Debtors' employee-related issues, including, among other matters, retiree medical benefits, severance claims, certain employee-related litigation, and UK pension issues;
■ participated in internal meetings, negotiated and drafted settlement agreement which eventually led to the dismissal of the *Berenshteyn v. Lehman Brothers Holdings, Inc.* Adversary Proceeding; and
■ drafted and reviewed employee staff handbook, offer letters, settlement agreements for former employees, and advised the Debtors and A&M regarding employee benefits, severance, continuation of employment agreements and other issues, including those in connection with various asset sales.

(iv) Customer / Vendor Issues

■ Reviewed and revised various contracts and related documents for the supply of goods and services, statements of work, master services agreements, compromise agreements, and outsourcing agreements.

(v) Intellectual Property

■ Negotiated, drafted and revised several agreements related to the Debtors' use or service of intellectual property and information technology including master service agreements, data sharing agreements, transition service agreements, software licenses and statements of work, and drafted memorandum of law related to same; and
■ attended to issues related to the international affiliate data sharing agreement.

(vi)  Tax Issues

- Advised Lehman in connection with tax efficient structures for various asset sales and restructurings;
- filed motion and obtained approval of certain settlements with the Internal Revenue Service;
- participated in internal meetings and prepared IRS ruling request and pre-submission memorandum in connection with the Plan;
- conducted regular conferences and teleconferences with the Debtors, A&M, the Creditors' Committee, the SIPA Trustee and other professionals regarding various tax matters, including those relating to certain payments, tax indemnities, state tax issues, sales tax issues, tax claims, and net operating losses; and
- prepared and filed stipulation, agreement and order between LB Rose Ranch LLC and Garfield County Treasurer providing for payment of 2009 property taxes.

(vii)  Corporate Governance

- Attended meetings of LBHI's board of directors, prepared briefing memorandum for same, drafted and reviewed resolutions and minutes, conducted research, reviewed and drafted consents for various entities and advised the Debtors' directors and officers on issues arising in these chapter 11 cases;
- researched and prepared memorandum regarding certain governance issues; and
- drafted and reviewed numerous organizational documents, corporate matters chart, and consents for various issues, and prepared and filed forms 8-K, 10-K, 10-D, 12B-25, 13F and other documents with the United States Securities and Exchange Commission.

(viii) Other General Business Operation Issues

- Participated in internal meetings, reviewed documents and reviewed and responded to correspondence regarding the dissolution of various entities; and
- drafted memorandum regarding business operations issues including buy/sell provisions in certain limited liability company agreements.

(ix)  Intercompany Issues

- Advised the Debtors in the preparation of intercompany promissory notes and related security documents;
- reviewed and summarized intercompany claims filed by foreign entities;
- participated in conferences and teleconferences with the Debtors regarding intercompany issues including intercompany repurchase agreements and reviewed memorandum regarding same; and

▪ conducted research and drafted memoranda analyzing validity and defenses to intercompany claims.

d.    Asset Class-Related Issues

(i)    Real Estate Matters

▪ Drafted, revised and analyzed various documents in connection with the mortgage loans transfer, equity ownership and joint venture agreements regarding a senior debt project known as "Sun & Moon" (a commercial and residential real estate investment in Marseilles, France);

▪ organized and participated in regular meetings and teleconferences with Lehman, A&M and various other domestic and international professionals to coordinate real estate asset disposition strategy;

▪ drafted, negotiated, and sought approval of new and modified protocols regarding real estate transactions, including a new protocol regarding the disposition of real estate assets and revised protocols regarding restructurings and entry into real estate investments and the sale or abandonment of *de minimis* assets;

▪ conducted legal research, factual due diligence (including with respect to corporate structure, assets and liabilities, tax considerations, employee and transfer considerations, and regulatory and other consent issues) for settlements, sales, transfers and other dispositions of real estate assets;

▪ negotiated, drafted and reviewed numerous real estate loan restructuring documents and sought approval of restructurings regarding various real estate transactions, including with respect to the acquisition and priority financing of the Archstone, a former publicly traded REIT, and the acquisition financing of Hilton Worldwide Inc.;

▪ negotiated and obtained court approval of various settlements, including in connection with certain deed-in-lieu transactions and a global settlement regarding the purchase by certain LBHI controlled entities of various fee, ground lease and master lease interests involving real property located in Stamford, Connecticut from certain Bank of America controlled entities;

▪ negotiated settlements and related agreements regarding various repurchase transactions, including with respect to Fenway Capital and certain Restructured Asset Securities with Enhanced Return Trusts (collectively, "<u>RACERS</u>"), and drafted pleadings to approve same;

▪ negotiated and sought approval of the prepayment of the debt of Variable Funding Trust 2007-1, a securitization trust that served as a financing facility and transfer of mortgage loans that secured such debt to Lehman Commercial Paper Inc. ("<u>LCPI</u>") and/or its non-Debtor affiliates;

▪ represented the Debtors as creditors in the *In re Moonlight Basin Ranch, LP* chapter 11 case with respect to both pre and postpetition financing provided in connection with a ski resort in Big Sky, Montana;

▪ represented the Debtors as creditors in the *In re Palmdale Hills Property, LLC, et al.* chapter 11 cases with respect to prepetition financing provided in connection with certain real estate developments in California, and

prepared and filed Debtors' objection to motion of SunCal Debtors for an
order determining that the automatic stay does not apply, or in the
alternative, granting relief from the automatic stay;

▪ represented the Debtors as creditors in the *In re Latshaw Drilling, LLC, et
al.* chapter 11 cases in connection with certain prepetition equipment
loans; and

▪ represented the Debtors in the *In re Fontainebleau Las Vegas Holdings,
LLC, et al.* chapter 11 case with respect to certain prepetition financing
provided in connection with a resort and casino in Las Vegas, Nevada.

(ii)  Private Equity

▪ Reviewed and counseled Debtors on strategic alternatives with respect to
credit facilities, third party agreements, extensions and amendments of
certain credit facilities; extensively diligenced transactions and underlying
investments of funds; developed structures for other possible transactions;
counseled on potential litigation and negotiated and drafted transaction
documents (including transaction and purchase agreements, trust
agreements, consents, transition services agreements), as well as notes,
collateral agreements, advisory agreements and partnership agreements on
various miscellaneous sales, including a sale by LB OWS Holdings LLC
of its approximately $50,000,000.00 interest in One William Street Capital
Partners, L.P., and certain follow-on investments made by Lehman
Brothers Merchant Banking Partners III L.P. and parallel investment
vehicles, including Trilantic, Europe G.P., Silver Lake Credit Fund, L.P.,
New Silk Route PE Asia Fund, L.P., and certain investments in the
Philippines;

▪ negotiated and drafted stipulation resolving the motion of Markit Group
Limited ("Markit") for relief from the automatic stay, preventing the loss
of, and providing for the sale of, Lehman's interest in Markit for more
than $26 million; and

▪ conducted diligence, engaged in negotiations, and drafted various
documents and pleadings in connection with transactions and consent
processes related to the Lehman Real Estate Partners, certain European
mezzanine loan funds, certain merchant banking funds, and Lehman's
Brazilian subsidiary.

(iii)  Derivatives/SWAP Agreement Issues (Including Derivatives-Related
Adversary Proceedings, Alternative Dispute Resolution, and Claims
Reconciliation and Litigation)

▪ Drafted and served numerous ADR notices, replies and related documents
for mediation and participated in settlement conferences and mediations
with counterparties;

▪ represented LBSF in connection with certain litigation actions in the
United Kingdom High Court and Court of Appeals and filed an
application for leave to appeal to the United Kingdom Supreme Court in

connection with the *LBSF v. BNY Corp. Trustee Serv.* Adversary Proceeding;

- prepared motion and obtained Court approval of settlement agreement with Metavante concerning all remaining disputes, including the matters on appeal and Metavante's proofs of claim;

- drafted response to objection and successfully prosecuted Debtors' motion to enforce the automatic stay and to compel payment of post petition funds by Swedbank and prepared and filed Debtors' objection to Swedbank's motion for stay pending appeal of the order enforcing same;

- drafted and successfully prosecuted motion to obtain Court authorization to purchase and sell notes issued by certain special purpose vehicles that are party to transactions with certain debtors and drafted reply to US Bank, N.A.'s objection to same;

- conducted due diligence of derivatives transactions including collateralized debt obligations and swap novations, and negotiated, drafted and reviewed settlement and/or novation agreements regarding Derivatives Contracts and confidentiality agreements related thereto;

- counseled Debtors regarding jurisdictional issues related to foreign swaps, subordination agreements, valuation issues relating to termination calculations, conflicts of law, safe harbor and set-off issues, non-performing counterparties, and intercompany trades;

- reviewed master agreements, security and collateral agreements, guarantees, and derivatives contracts between U.S. Lehman entities and Bankhaus, and between U.S. Lehman entities and third parties in Germany and negotiated settlement/termination agreements with various counterparties;

- represented LBSF as swap counterparty of Ruby Finance Plc with regard to allocation of collateral granted by Ruby Finance Plc in favor of LBSF which had been transferred to Bankhaus;

- represented LBCS in an action in the United Kingdom High Court against Crédit Agricole Corporate and Investment Bank ("CACIB"), seeking payment of €11,622,809.31 due under a letter of credit which CACIB granted in favor of LBCS;

- represented the Debtors in proceedings before the London Court of International Arbitration; and

- reviewed and advised on a number of special purpose entity and counterparty derivative settlements and ancillary issues.

(iv) Loans/Investments

- conduct research, participated in strategy meetings and teleconferences, and draft various pleadings to protect Lehman's interest in certain loans in the chapter 11 case of Latshaw Drilling LLC, which is pending before the United States Bankruptcy Court for the Northern District of Oklahoma;

(v)   Domestic Bank and Related Regulatory Issues

- negotiated, drafted and conducted legal research and investigation regarding the Debtors' global settlement agreements with Woodlands Commercial Bank and Aurora Bank FSB (together, the "Banks") that will result in substantial recapitalization of the Banks and modification of the regulatory restrictions on the Banks' operations so as to position LBHI to recover the substantial value of the Banks for the benefit of its creditors and also to resolve the claims asserted against the Debtors by the Banks and their regulators, and also participated in meetings and conference calls with bank regulatory counsel and the Creditors' Committee's professionals regarding the same.

e.    International Insolvency Issues

(i)   International Insolvency Issues

- Assisted foreign counsel in representing Lehman in proceedings and related issues in Japan, Hong Kong, Singapore, the Philippines, Korea, and Thailand;
- advised Debtors in connection with civil rehabilitation proceedings for Philippine affiliates;
- represented LBHI in the preparation and submission of filings to BaFin, the German federal financial supervisory authority, under German securities laws and transmission of filings made by current or former Lehman entities under other legal regimes to LBHI for review, in particular regarding filings to be made as a consequence of securities transactions by Bankhaus;
- represented LCPI in the German insolvency proceedings over the respective assets of Formel Eins Beteiligungs GmbH, Kirch Beteiligungs GmbH & Co. KG, and Taurus Holding GmbH & Co. KG;
- represented the Debtors in German insolvency proceedings over the assets of LB Capital GmbH and Bankhaus;
- drafted and negotiated multilateral agreements among the Debtors and their foreign affiliates regarding data-sharing;
- participated in bilateral meetings and assisted in liaising with foreign affiliates on a variety of intercompany issues;
- collected and catalogued information regarding status of the Debtors' foreign subsidiaries and investments and communicated with Lehman, A&M and third parties regarding international insolvency proceedings and regulatory matters;
- monitored and participated in the English insolvency proceedings (including court hearings) of 19 English companies with PricewaterhouseCoopers LLP ("PWC") as joint administrators, and advised with respect to their respective effects on the Debtors' chapter 11 cases and counseled the Debtors with their role on the official committee of unsecured creditors in the cases of LBIE, Lehman Brothers Europe

Limited, Lehman Brothers Limited, LB UK Re Holdings Limited, and Lehman Brothers Holdings Plc ("Lehman UK");

- represented the Debtors in connection with a number of proceedings in the High Court of England and Wales including (i) the treatment of "client moneys"; (ii) the ownership of certain assets subject to the "RASCALS" program (Regulation and Administration of Safe Custody And Global Settlement); and (iii) disputes relating Leman trades under derivative contracts;

- represented LCPI in an action for specific performance on open trade confirmations with Axa Mezzanine II SA, and MD Mezzanine SA;

- obtained recognition of the Chapter 11 Cases as foreign main proceedings in England and Wales under the Cross-border Insolvency Regulations;

- provided advice on disputes relating to ownership of assets and rights of set-off;

- advised the Debtors on the allocation of repayments relating to the Lehman tax group in the United Kingdom;

- coordinated and monitored the list of authorized signatories, directors and officers and the replacement of directors for various Asian entities; and

- advised the Debtors on the winding down of corporate and partnership structures.

f.    Bankruptcy Issues

(i)    Schedules/Statement of Financial Affairs

- Assisted Debtors in the preparation and timely filing of schedules of assets and liabilities and statements of financial affairs for Merit, LLC, LB Somerset LLC, and LB Preferred LLC.

(ii)    Non-Derivative Automatic Stay/Safe Harbor Issues

- Prepared, filed and obtained Court approval of stipulations for the turnover of postpetition deposits with First National Bank and Royal Bank of Canada and participated in meetings and teleconferences related to the same;

- reviewed motion of Merrill Lynch International for relief from the automatic stay and prepared and filed LBHI's motion for modification of the automatic stay to allow delivery of acceleration notices to LBHI under EMTN program; and

- prepared and filed stipulations between BNC Mortgage LLC and U.S. Bank N.A., as Trustee, providing relief from the automatic stay with regard to certain real property.

(iii)    Miscellaneous Asset Sales/363 Issues

- Participated in meetings with the Debtors, Creditors' Committee, and A&M, prepared and reviewed various documents including asset

management agreement, contribution agreement, limited liability company agreement, shared services agreement, purchase agreement, merger agreement, non-disclosure agreement and corporate governance documents such as board presentation, board resolutions and member resolutions, prepared and filed pleadings and obtained authorization to enter into certain asset management and related agreements regarding establishment of LAMCO;

▪ participated in internal meetings and teleconferences regarding issues related to Lehman's artwork and reviewed various documents including purchase agreement related to the purchase of same;

▪ prepared joint motion of LBHI and the SIPA Trustee for authorization to enter into (i) cost sharing agreement and (ii) transfer agreement related to real estate mortgage investment conduits and participated in meetings and teleconferences regarding same;

▪ attended to various post-closing matters related to sale of Lehman's Investment Management Division sale;

▪ prepared and revised various documents related to the sale of the assets of the Lehman Brothers Trust Companies to Neuberger Berman including merger agreement, stockholder and board consents, director and shareholder resolutions, escrow agreement, joinder agreement, closing checklist, and certificate of transfer and prepared for and participated in closing of same; and

▪ negotiated, drafted and filed motion to amend the *de minimis* asset sale procedures.

(iv)   Non-Derivative Executory Contracts/365 Issues

▪ Attended to issues related to Yarpa Investimenti S.G.R. S.p.A RP3 Fund open trade matters including meetings, and drafted various documents regarding same, including stipulation for approval of settlement agreement;

▪ prepared and filed motion for authorization to assume and assign contracts to Aurora Bank FSB;

▪ reviewed and participated in teleconferences with Debtors regarding motion of Factiva Inc. to compel assumption or rejection of an executory contract and prepared draft objection to same; and

▪ researched and drafted memos regarding various issues related to executory contracts, including damage claims.

(v)   Plan of Reorganization/Plan Confirmation/Plan Implementation

▪ Participated in meetings and teleconferences with the Debtors, A&M, the Creditors' Committee, foreign administrators, and various other creditor groups and their respective professionals regarding plan issues including various claims against the Debtors, conducted research and drafted memoranda, negotiated chapter 11 Plan terms sheets, and drafted Plan;

- conducted factual and legal research, prepared memoranda, coordinated and managed interviews and document production and review, and facilitated numerous conferences both internally and with the Debtors, A&M, the Creditors' Committee and other professionals regarding other Plan-related issues;
- prepared and filed motion requesting the extension of the exclusive periods for the filing of and the solicitation of acceptances for chapter 11 plans of Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC and obtained authorization for Merit, LLC; and
- prepared Debtors' draft reply to objection of Somerset Associates, LLC and Somerset Properties SPE, LLC to motion of LB Somerset LLC for extension of exclusive periods.

(vi)  Disclosure Statement/Solicitation/Voting

- Filed Debtors' Disclosure Statement and participated in numerous internal meetings regarding same; and
- prepared and filed motion and obtained an order extending the time to file a disclosure statement.

(vii) Non-Derivative Claims Reconciliation, Estimation, Litigation, and Alternative Dispute Resolution and Bar Date Issues

- Participated in internal meetings, conferences and teleconferences with the Debtors and A&M and other professionals regarding claims objections procedures and alternative dispute resolution procedures for claims against the Debtors and prepared and filed motion and Debtors' omnibus response to objections to motion authorizing the Debtors to implement claims objections hearing procedures and alternative dispute resolution procedures for claims against Debtors and obtained authorization for same;
- participated in internal meetings and teleconferences regarding the claims reconciliation process and responded to communications from claimants regarding Debtors' omnibus claims objections;
- reviewed claims filed in the SIPA proceeding and participated in telephone and in-person conferences with Hughes Hubbard & Reed LLP regarding same;
- prepared and filed omnibus objections to the claims of (i) Palmyra Capital Fund, L.P., Palmyra Capital Institutional Fund, L.P. and Palmyra Capital Offshore Fund, L.P., (ii) Dynegy Power Marketing Inc., (iii) Tensor Opportunity Limited, (iv) The Santa Fe Entities, and (v) CVI GVF (Lux) Master S.A.R.L each seeking relief pursuant to Bankruptcy Rule 9006(b)(1) and reviewed and responded to motions seeking allowance of late claims filed by Mark Glasser,  the Pennsylvania Public School Employees' Retirement System and Simeon Morneau;

- drafted and filed the Debtors' fifth through seventeenth omnibus objections to proofs of claim and participated in meetings with the Debtors and A&M regarding same;
- participated in meetings regarding disallowence and subordination of certain claims and researched and prepared memorandum and drafted pleadings regarding same;
- prepared for and participated in meetings with SIPA Trustee and its professionals regarding subordinated claims and reviewed materials and prepared memorandum regarding same;
- prepared and filed motion and obtained authority of Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC for establishment of a deadline for filing proofs of claim, approval of the form, and manner of notice thereof and approval of the proof of claim form.

(viii) Other Bankruptcy Motions and Matters

- prepared for and participated in meetings and teleconferences with the Debtors, A&M, the Creditors' Committee and the SIPA Trustee and its professionals regarding potential preferences actions, avoidance actions, structured notes, solvency and other related issues and prepared solvency presentation;
- drafted motion to establish procedures for settlement of avoidance actions; and
- prepared motion of LBHI and LCPI to amend the RACERS transaction documents and terminate certain RACERS transaction documents and reviewed correspondence and participated in meetings regarding same.

g.    Litigation Related Issues

(i)    Non-Derivative Adversary Proceedings Preparation and Litigation

- Prepared and filed motion for authority for LBHI and LCPI to enter into settlement agreement in the State Street Bank and Trust Company v. LCPI Adversary Proceeding regarding 340 Madison Avenue Loan; and
- attended to various issues relating to the *LBHI v. Barclays Capital, Inc.* litigation and *Bank of America, N.A. v. LBSF & LBHI* and *Federal Home Loan Bank of Pittsburgh v. LBSF et al.* Adversary Proceedings, including the preparation of various documents, participating in meetings and teleconferences, conducting research and engaging in discovery and document production.

(ii)    Non-Bankruptcy Litigation

- Reviewed, researched, drafted and analyzed complaints, claims and pleadings and responded to document requests in multiple foreign and domestic litigations commenced by and against Lehman entities; and

- prepared reply brief in support of motion to dismiss Texas Securities Act claim and researched and participated in meetings regarding same.

(iii)  2004 Issues

- Reviewed documents and/or prepared document requests pursuant to Bankruptcy Rule 2004; and
- prepared and served 28 notices of subpoenas issued pursuant to order granting the Debtors authority to issue subpoenas for the production of documents and authorizing the examination of persons and entities.

(iv)  Appeals

- Negotiated settlement of Metavante and DnB NorBank ASA and obtained dismissal of appeals relating to both litigations;
- prepared counterdesignation of record for appeals filed by William Kuntz of order authorizing and approving a settlement agreement with the Insolvency Administrator of Lehman Brothers Bankhaus AG (In Insolvenz); and
- prepared objection to Swedbank's motion for stay pending appeal.

h.    US Trustee / SEC / DOJ / Examiner Issues

(i)  US Trustee Related Issues

- Conferred and corresponded with U.S. Trustee on numerous issues including 341 meeting for Merit, LLC, LB Somerset LLC, and LB Preferred Somerset LLC;
- prepared and filed monthly operating reports for January 2010, February 2010, March 2010, April 2010, Amendment to March 2010 and December 2009 supplement, and addressed issues related to same; and
- monitored compliance with the UST Guidelines.

(ii)  SEC / DOJ Issues

- Prepared for and participated in numerous meetings and teleconferences with various governmental and regulatory entities and witnesses for interviews related to governmental and regulatory investigations, and coordinated with A&M regarding same; and
- performed and coordinated document review, collection and production in response to various governmental and regulatory requests and created and reviewed various privilege logs related thereto.

(iii)  Examiner Issues

- Conducted meetings and teleconferences with the Examiner, his professionals, the Debtors and A&M regarding various issues and coordination of workstreams and investigations;

- created database and privilege logs, conducted diligence, and prepared (e.g., redaction and review for confidential information) materials for production to the Examiner;
- reviewed, analyzed and summarized the Examiner's Report and related exhibits; and
- negotiated provisions related to motion for order discharging Examiner and granting related relief.

i.      Fee-Related Issues

(i)     Firm's Own Billing/Fee Applications

- Prepared and filed WGM's fourth interim application for compensation and reimbursement and prepared monthly fee statements and budgets in compliance with the Guidelines; and
- addressed various issues raised by the Fee Committee regarding WGM's third interim application for compensation and reimbursement and prepared response to same.

(ii)    Firm's Own Retention Issues

- Prepared and filed WGM's third supplemental affidavit.

(iii)   Third Party Retention/Fee Application/Other Issues

- Assisted the Debtors in negotiating engagement letters with numerous ordinary course professionals and certain other parties;
- regularly conferred with certain of the more than 178 ordinary course professionals of the Debtors regarding retention procedures and conflicts issues;
- liaised with retained professionals, the Creditors' Committee, the U.S. Trustee, and the Fee Committee regarding guidelines, orders, and Fee Committee protocols established for all professionals retained in these chapter 11 cases;
- drafted a motion to amend the order authorizing Debtors' to employ professionals utilized in the ordinary course of business;
- reviewed and revised applications and obtained Court approval for the retention of (i) Latham and Watkins LLP as special counsel, (ii) Sutherland Asbill and Brennan LLP as special tax counsel, (iii) Kleyr Grasso Associes as special counsel, (iv) The O'Neil Group as tax services providers, (v) Sotheby's, Inc. as its auctioneers, and (vi) Dechert LLP as special counsel; and
- prepared motion to amend the order approving retention of Bingham McCutchen LLP as special counsel.

47.     The professional services performed by WGM were actual, necessary and appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests of the Debtors and their stakeholders.  Compensation for such services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved.  The professional services were performed expeditiously and efficiently.

48.     The professional services performed by members and associates of WGM were rendered by the Business Finance & Restructuring, Corporate, Litigation, and Tax Departments in numerous offices across three continents.  WGM has a preeminent Business Finance & Restructuring practice and maintains an international reputation for its expertise in financial reorganizations and restructurings of troubled entities, with approximately 90 attorneys that specialize in this area of law.

## ACTUAL AND NECESSARY DISBURSEMENTS OF WGM

49.     As set forth in Exhibit C hereto, WGM has disbursed $1,125,788.89 as expenses incurred in providing professional services during the Fifth Compensation Period.  These expenses are reasonable and necessary in light of the size and complexity of the Debtors' cases.  For example, the novel legal issues invoked by the global scope of the Debtors' businesses and the complex nature of the many financial arrangements they are party to require WGM attorneys to work long hours, engage in numerous long distance and international communications, and perform considerable computerized research in order to effectively prosecute the Debtors' chapter 11 cases.

50.     The time constraints facing the Debtors, along with the sheer magnitude of tasks generated by these cases, have required WGM's attorneys and other employees to devote significant time during the evenings and on weekends to perform legal services on behalf of the Debtors.  Such services were essential to meet deadlines, timely respond to motions and

objections, and to satisfy the extraordinary demands of the Debtors' businesses and the

administration of these complex chapter 11 cases.

51.    While WGM has not charged the Debtors for any overtime expenses,

consistent with firm policy, attorneys and other employees of WGM who worked late into the

evenings or on weekends were reimbursed for their reasonable meal costs and their cost for

transportation from the office to home.  WGM's regular practice is not to include components for

those charges in overhead when establishing billing rates and to charge its clients for these and

all other out-of-pocket disbursements incurred during the regular course of the rendition of

services.  The reimbursement amounts do not exceed those set forth in the U.S. Trustee

Guidelines.

52.    With respect to photocopying expenses, WGM's domestic offices charge

all of WGM's clients $.10 per page for black-and-white copies.  With respect to facsimile

expenses, in compliance with the U.S. Trustee Guidelines, WGM does not charge for facsimile

transmissions, other than the cost of long distance facsimiles at applicable toll charge rates,

which invariably are less than the $1.25 per page amount permitted by the U.S. Trustee

Guidelines.  Each of these categories of expenses does not exceed the maximum rate set by the

U.S. Trustee Guidelines.  These charges are intended to cover WGM's direct operating costs,

which costs are not incorporated into the WGM hourly billing rates.  Only clients who actually

use services of the types set forth in Exhibit C are separately charged for such services.  The

effect of including such expenses as part of the hourly billing rates would impose that cost upon

clients who do not require extensive photocopying and other facilities and services.  The amount

of the standard photocopying charge is intended to allow WGM to cover the related expenses of

its photocopying service.  A determination of the actual expenses per page for photocopying,

however, is dependent on both the volume of copies and the total expenses attributable to

photocopying on an annual basis.

53.     In addition, because of the global scope of the Debtors' businesses,

frequent long distance and international telephone calls are required.  On many occasions,

overnight delivery of documents and other materials was required as a result of circumstances

necessitating the use of such express services.  These disbursements are not included in WGM's

overhead for the purpose of setting billing rates.  WGM has made every effort to minimize its

disbursements in these cases.  The actual expenses incurred in providing professional services

were absolutely necessary, reasonable, and justified under the circumstances to serve the needs

of the Debtors, their estates, and creditors.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

54.     Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Court's

award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  Id.

§ 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and

reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court
> should consider the nature, the extent, and the value of such services, taking into
> account all relevant factors, including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or beneficial
>         at the time at which the service was rendered toward the completion of, a
>         case under [the Bankruptcy Code];

(D)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [the Bankruptcy Code].

Id. § 330(a)(3).

55.    In the instant case, WGM respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this application were necessary for and beneficial to the Debtors' preservation, the orderly administration of their estates, and the prosecution of their chapter 11 cases.  WGM worked assiduously to anticipate or respond to the Debtors' needs and assist in the Debtors' chapter 11 process.  The professional services were performed expediently and efficiently.  Whenever possible, WGM sought to minimize the costs of its services to the Debtors by utilizing talented junior attorneys and paraprofessionals to handle more routine aspects of case administration.  Groups of the same WGM attorneys were utilized for similar tasks in these cases to minimize the costs of intra-WGM communication and education about the Debtors' circumstances.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.  Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved.  Furthermore, WGM voluntarily reduced its requests for fees and expenses incurred during the Fifth Compensation Period in the aggregate amount of $578,234.79.  Approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## CONCLUSION

56.    WGM respectfully requests the Court allow interim compensation for professional services rendered during the Fifth Compensation Period in the amount of $47,819,947.03, consisting of $46,694,158.14, representing 100% of fees incurred during the Fifth Compensation Period, and reimbursement of $1,125,788.89, representing 100% of actual and necessary expenses incurred during the Fifth Compensation Period, without prejudice to WGM's right to seek additional compensation for services performed and expenses incurred during the Fifth Compensation Period, which were not processed at the time of this application, and (ii) direct payment by the Debtors of the difference between the amounts allowed and the amounts previously paid by the Debtors pursuant to the Administrative Order.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested and such other and further relief as is just.

Dated:  August 16, 2010
      New York, New York

                /s/ Shai Y. Waisman
                Shai Y. Waisman

                WEIL, GOTSHAL & MANGES LLP
                767 Fifth Avenue
                New York, New York 10153
                Telephone: (212) 310-8000
                Facsimile: (212) 310-8007

                Attorneys for Debtors
                and Debtors in Possession

## EXHIBIT A

### (Third Party Representations)

| Lehman Entity Represented | Amount Paid |
|---|---|
| Subsidiary of PAMI LLC | $1488.5 |
| Subsidiary of PAMI LLC | $4672.2 |
| LBHI, LCPI, Real Estate Private Equity Inc. and certain of their affiliates | $86,251.98 |
| LBHI, LCPI, Real Estate Private Equity Inc. and certain of their affiliates | $274,072.75 |
| LBHI, LCPI, Real Estate Private Equity Inc. and certain of their affiliates | $163,680.97 |
| LBHI, LCPI, and certain of their affiliates | $507,551.62 |
| LBHI | $347,597.45 |
| LCPI | $50,000.00 |
| LCPI | $36,999.75 |
| LCPI | $4,500.00 |
| LCPI | $23,052.19 |
| LCPI | $11,483.50 |
| LCPI | $14,446.79 |
| LCPI | $20,611.59 |
| LCPI | $24,778.07 |
| LCPI | $6,681.50 |
| LCPI | $70,180.52 |
| LCPI | $74,836.60 |
| LCPI | $13,024.50 |
| LCPI | $13,896.10 |
| LCPI | $336,368.93 |
| LCPI | $124,068.53 |
| LCPI | $892,933.46 |
| LCPI | $434,400.09 |
| LCPI | $97,122.59 |
| LCPI | $28,773.92 |
| LCPI | $15,522.10 |
| LCPI | $43,578.68 |
| LCPI | $178,895.99 |
| LCPI | $849,586.18 |
| **Total:** | **$4,751,057.05** |

## **EXHIBIT B**

**(Certification)**

US_ACTIVE:\43447048\09\58399.0003

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                       :
**In re**                                              :    **Chapter 11 Case No.**
                                                       :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,           :    **08-13555 (JMP)**
                                                       :
                          **Debtors.**                 :    **(Jointly Administered)**
                                                       :
-------------------------------------------------------------------x

**CERTIFICATION UNDER GUIDELINES FOR FEES**
**AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT**
**OF FIFTH APPLICATION OF WEIL, GOTSHAL & MANGES LLP**
**FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**

I, Shai Y. Waisman, hereby certify that:

1.        I am a partner with the applicant firm, Weil, Gotshal & Manges LLP

("WGM"), with responsibility for the chapter 11 cases of Lehman Brothers Holdings Inc. and

certain of its affiliates, as debtors in possession in the above-captioned cases (collectively, the

"Debtors"), in respect of compliance with the Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June

20, 1991 (the "Fee and Disbursement Guidelines") and the Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by

the Court on April 19, 1995 (together with the Fee and Disbursement Guidelines, the "Local

Guidelines"), the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on

January 30, 1996 (the "U.S. Trustee Guidelines") and the Second Amended Order Pursuant to

Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing

Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals

[Docket No. 3102] (the "Administrative Order," and together with the Local Guidelines and the

U.S. Trustee Guidelines, the "Guidelines").

       2.       This certification is made in respect of WGM's application, dated August

16, 2010 (the "Application"), for interim compensation and reimbursement of expenses for the

period commencing February 1, 2010 through and including May 31, 2010 (the "Fifth

Compensation Period") in accordance with the Guidelines.

       3.       In respect of section 2 of the Fee and Disbursement Guidelines, I certify

that WGM reviewed the fee application and has approved it.

       4.       In respect of section B.1 of the Local Guidelines, I certify that:

       a.       I have read the Application;

       b.       to the best of my knowledge, information, and belief formed after
               reasonable inquiry, the fees and disbursements sought fall within
               the Local Guidelines;

       c.       the fees and disbursements sought are billed at rates in accordance
               with those customarily charged by WGM and generally accepted
               by WGM's clients; and

       d.       in providing a reimbursable service, WGM does not make a profit
               on that service, whether the service is performed by WGM in-
               house or through a third party.

       5.       In respect of section B.2 of the Local Guidelines and as required by the

Administrative Order, I certify that WGM has complied with these provisions requiring it to

provide counsel for the statutory committee of unsecured creditors appointed in these cases (the

"Committee") and the Debtors, with a statement of WGM's fees and disbursements accrued

during the previous months, although, due to administrative limitations, such statements were not always provided within the timetables set forth in the Local Guidelines and the Administrative Order.

6.    In respect of section B.3 of the Local Guidelines, I certify that the Debtors, attorneys for the Committee, and the United States Trustee for the Southern District of New York are each being provided with a copy of the Application.

Dated: August 16, 2010
        New York, New York

                                /s/ Shai Y. Waisman                
                                Shai Y. Waisman

                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, New York 10153
                                Telephone: (212) 310-8000
                                Facsimile: (212) 310-8007

                                Attorneys for Debtors in Possession

## EXHIBIT C

### EXPENSE SUMMARY BY WEIL, GOTSHAL & MANGES LLP FOR THE FIFTH INTERIM PERIOD OF FEBRUARY 1, 2010 THROUGH MAY 31, 2010

| EXPENSES | AMOUNTS |
|---|---|
| Business Meals | $48,486.91 |
| Computerized Research / Other Research | $457,221.06 |
| Consultant / Witness / Deposition Fees | $16,906.83 |
| Corporation Service | $52,620.98 |
| Court / Filing / Regulatory Fees | $10,435.34 |
| Court Reporting | $35,693.43 |
| Duplicating | $254,165.95 |
| E-Discovery Services / Document Scanning and Coding | $11,311.60 |
| Facsimile | $139.00 |
| Mediation Expenses | $2,343.16 |
| Messenger / Process Service | $15,207.95 |
| Outside Temps - Paralegal/Other | $4,765.96 |
| Periodicals / Online News Monitoring | $1,549.76 |
| Postage and Express Mail | $8,684.77 |
| Telephone | $4,422.57 |
| Translation Fees | $8,018.84 |
| Travel and Transportation | $193,814.78 |
| **Total:** | **$1,125,788.89** |

## EXHIBIT D

### COMPENSATION BY WORK TASK CODE FOR SERVICES RENDERED BY WEIL, GOTSHAL & MANGES LLP FOR FIFTH INTERIM PERIOD OF FEBRUARY 1, 2010 THROUGH MAY 31, 2010

Compensation By Work Task Code – February 2010[1]

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| **1001** | **Case Administration** | | |
| 0102 | Case Administration | 101.30 | $36,758.50 |
| 0103 | Document Management | 57.20 | $12,817.50 |
| **1002** | **Unsecured Creditors Issues/Meetings/Communications/ Creditors' Committee** | | |
| 0200 | Unsecured Creditors Issues/Meetings/Communications/ Creditors' Committee | 8.30 | $6,486.50 |
| **1003** | **Secured Creditors Issues/Meetings/ Communications** | | |
| 0300 | Secured Creditors Issues/Meetings/Communications | 137.60 | $108,407.00 |
| **1005** | **Case Strategy** | | |
| 0500 | Strategy Meetings | 112.30 | $87,099.50 |
| 0501 | Project Monitoring/Court Calendar | 71.80 | $38,294.50 |
| **1006** | **Hearing and Court Matters** | | |
| 0600 | Debtors | 70.40 | $33,314.50 |
| **1007** | **WG&M Retention/Billing/Fee Applications** | | |
| 0700 | WG&M Retention/Billing/Fee Applications | 406.50 | $127,472.50 |
| **1008** | **Retention/Fee Applications: Ordinary Course Professionals** | | |
| 0800 | Retention/Fee Applications: Ordinary Course Professionals | 100.30 | $38,246.50 |
| **1009** | **Retention/Fee Applications: Other Professionals** | | |
| 0900 | Retention/Fee Applications: Other Professionals | 97.70 | $53,084.50 |
| **1010** | **Schedules/Statement of Financial Affairs** | | |
| 1000 | Schedules/Statement of Financial Affairs | 16.30 | $8,184.50 |
| **1011** | **US Trustee Related Issues** | | |
| 1100 | US Trustee Related Issues | 8.20 | $5,091.00 |

---

[1]    As noted above, WGM's work task codes were revised beginning on March 1, 2010. Accordingly, Exhibit D is divided into two charts, one that shows the breakdown of compensation by work task code for February, using the work task codes that were in use during that period, and one shows the breakdown of compensation by work task code for March, April and May, using the revised work task codes.

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| **1012** | **General Business Operations** | | |
| 1200 | Party In Interest Communications | 33.00 | $30,460.00 |
| 1201 | Cash Management | 33.50 | $21,088.00 |
| 1202 | A&M Issue Coordination | 8.10 | $6,055.50 |
| 1204 | Other | 67.00 | $47,925.00 |
| 1205 | Loans/Investments-General | 88.00 | $45,224.00 |
| **1013** | **Corporate Governance** | | |
| 1300 | Corporate Governance | 660.60 | $278,182.00 |
| **1016** | **Insurance Issues** | | |
| 1600 | Insurance Issues | 27.30 | $15,979.00 |
| **1017** | **Employee/ERISA/Benefit Issues** | | |
| 1700 | Employee/ERISA/Benefit Issues | 80.90 | $51,511.00 |
| **1018** | **Asset Disposition/363 Issues** | | |
| 1800 | Barclays Sale | 98.90 | $68,257.50 |
| 1801 | IMD Sale | 60.70 | $18,473.50 |
| 1802 | Real Estate Sales | 267.50 | $128,688.50 |
| 1803 | Sales of Miscellaneous Assets | 466.20 | $275,083.00 |
| 1804 | Other | 841.00 | $457,946.00 |
| 1805 | Domestic Banks & Aurora | 15.10 | $14,591.00 |
| **1019** | **Executory Contracts/365 Issues** | | |
| 1900 | Executory Contracts/365 Issues | 531.20 | $268,723.00 |
| 1901 | Derivatives/SWAP Agreement Issues | 2,835.30 | $1,972,550.00 |
| **1020** | **Real Property/365 Issues** | | |
| 2000 | Real Property/365 Issues | 3,470.30 | $2,104,898.50 |
| **1021** | **Adversary Proceedings** | | |
| 2100 | Adversary Proceedings | 1,001.30 | $491,550.00 |
| **1022** | **Claims Objections Litigation** | | |
| 2200 | Claims Objections Litigation | 657.40 | $396,465.50 |
| **1023** | **Bar Date Motion and Claims Reconciliation Issues** | | |
| 2300 | Bar Date Motion and Claims Reconciliation Issues | 232.60 | $152,343.50 |
| **1024** | **Automatic Stay/Safe Harbor** | | |
| 2400 | Automatic Stay/Safe Harbor | 142.00 | $85,154.50 |
| **1025** | **Disclosure Statement/Solicitation/Voting** | | |
| 2500 | Disclosure Statement/Solicitation/Voting | 64.70 | $31,634.00 |
| **1027** | **Plan of Reorganization/Plan Confirmation** | | |
| 2600 | Exclusivity | 10.00 | $4,712.00 |
| 2700 | Plan of Reorganization/Plan Confirmation | 644.80 | $425,245.00 |
| **1029** | **Tax Issues** | | |
| 2900 | Tax Issues | 156.20 | $103,880.00 |
| **1030** | **Communications** | | |
| 3001 | Lehman Team Hotline/Emails | 42.80 | $18,349.00 |
| **1031** | **Customer/Vendor Issues** | | |
| 3102 | Other | 8.70 | $7,292.50 |
| 3200 | Utility Issues | 0.20 | $91.00 |

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| **1034** | **Corporate/Securities** | | |
| 3400 | Corporate/Securities | 102.50 | $55,024.50 |
| **1035** | **Non-Bankruptcy Litigation** | | |
| 3500 | Non-Bankruptcy Litigation | 374.50 | $213,028.50 |
| 3501 | Merchant Banking Fund | 2.60 | $2,258.00 |
| **1036** | **Non-Working Travel** | | |
| 3600 | Non-Working Travel | 166.00 | $56,496.25 |
| **1037** | **Intellectual Property** | | |
| 3700 | Intellectual Property | 35.10 | $20,439.50 |
| **1038** | **International Matters/Foreign Proceedings** | | |
| 3800 | U.K. (Including LBIE) | 35.10 | $20,439.50 |
| 3801 | Asia | 1,479.30 | $880,452.50 |
| 3802 | Germany | 15.10 | $7,914.00 |
| 3803 | France | 272.10 | $156,094.50 |
| 3804 | Switzerland | 56.50 | $22,956.50 |
| 3805 | Israel | 7.00 | $5,160.00 |
| 3806 | South America | 3.30 | $1,815.00 |
| 3807 | Other/General | 3.10 | $3,069.00 |
| 3807 | Other/General | 205.90 | $138,641.50 |
| 3808 | PWC/LBIE Client Money Directions Application | 31.80 | $21,163.00 |
| **1039** | **Appeals** | | |
| 3900 | Appeals | 9.70 | $5,950.50 |
| **1040** | **LBI Issues** | | |
| 4000 | LBI | 59.60 | $45,521.00 |
| **1041** | **2004 Issues** | | |
| 4100 | 2004 Issues | 352.80 | $188,856.50 |
| **1042** | **Examiner Issues** | | |
| 4200 | Examiner Issues | 544.30 | $270,859.00 |
| **1043** | **Other Bankruptcy Matters** | | |
| 4300 | 9019 Motions | 34.20 | $17,281.00 |
| 4301 | Other Bankruptcy Motions | 27.30 | $11,500.50 |
| 4302 | Other Bankruptcy Litigation | 81.50 | $59,591.50 |
| **Total Fees Requested:** | | **17,570.10** | **$10,245,703.75** |

Compensation By Work Task Code – March 2010 – May 2010[1]

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 0100 | General Case Administration | 225.30 | $69,737.00 |
| 0200 | General Case Strategy Meetings | 195.60 | $138,718.00 |
| 0300 | Project Monitoring/Court Calendar & Docket Maintenance | 361.60 | $147,848.00 |
| 0400 | Hearings and Court Communications | 446.80 | $195,312.00 |
| 0500 | Non-Working Travel | 655.80 | $223,762.75 |
| 0600 | Interested Party Communications/Website/Lehman Team Hotline | 256.60 | $150,840.00 |
| 0700 | Communications with Debtors | 1.80 | $1,247.00 |
| 0800 | Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee | 64.10 | $56,098.00 |
| 0900 | Secured Creditors' Issues/Meetings/Communications | 329.30 | $220,188.50 |
| 1000 | Equity Holders/Motions/Hearings/Communications | 33.80 | $17,532.00 |
| 1100 | LBI/SIPC Coordination and Issues | 139.00 | $109,694.00 |
| 1200 | Cash Management | 163.40 | $91,970.00 |
| 1300 | Insurance Issues | 68.20 | $49,455.00 |
| 1400 | Employee/ERISA/Benefits/Pension Issues | 192.70 | $126,783.50 |
| 1500 | Customer/Vendor Issues | 38.50 | $29,860.00 |
| 1700 | Intellectual Property | 185.00 | $114,405.50 |
| 1800 | Tax Issues | 443.70 | $284,726.50 |
| 1900 | Corporate Governance | 474.60 | $240,425.00 |
| 2000 | Other General Business Operation Issues | 163.60 | $84,215.00 |
| 2100 | Intercompany Issues | 155.20 | $103,822.00 |
| 2200 | Data Preservation/Migration | 21.60 | $5,241.50 |
| 2300 | Real Estate Matters | 18,112.10 | $10,544,706.00 |
| 2400 | Private Equity | 2,753.40 | $1,408,026.00 |
| 2500 | All Derivatives (Adversaries, ADR, Claims, etc.) | 16,595.20 | $10,584,369.00 |
| 2600 | Loans/Investments | 1,812.60 | $1,012,845.00 |
| 2700 | Domestic Bank and Related Regulatory Issues | 96.30 | $84,091.00 |
| 2800 | International Insolvency Issues | 1,667.10 | $1,107,264.14 |
| 2900 | Schedules/Statement of Financial Affairs | 12.90 | $7,324.50 |
| 3000 | Non-Derivative Automatic Stay/Safe Harbor Issues | 422.10 | $246,335.00 |

[1]    As noted above, WGM's work task codes were revised beginning on March 1, 2010. Accordingly, Exhibit D is divided into two charts, one that shows the breakdown of compensation by work task code for February, using the work task codes that were in use during that period, and one shows the breakdown of compensation by work task code for March, April and May, using the revised work task codes.

| 3100 | Miscellaneous Asset Sales/363 Issues | 1,979.10 | $1,042,593.50 |
|---|---|---|---|
| 3200 | Non-Derivative Executory Contracts/365 Issues | 267.00 | $133,730.00 |
| 3500 | Plan of Reorganization/Plan Confirmation/Plan Implementation | 1,369.50 | $915,401.50 |
| 3600 | Disclosure Statement/Solicitation/Voting | 1,149.50 | $738,330.00 |
| 3700 | Non-Derivative Claims Reconciliation, Estimation, Litigation and ADR | 2,679.10 | $1,575,370.00 |
| 3800 | Other Bankruptcy Motions and Matters | 852.20 | $505,766.00 |
| 3900 | Non-Derivative Adversary Proceeding Prep and Litigation | 1,256.30 | $677,659.00 |
| 4000 | Non-Bankruptcy Litigation | 1,253.20 | $706,234.00 |
| 4100 | 2004 Issues | 156.10 | $73,606.00 |
| 4200 | Appeals | 140.00 | $91,450.00 |
| 4300 | US Trustee Related Issues | 50.90 | $27,213.00 |
| 4400 | SEC/DOJ Issues | 2,094.50 | $893,050.50 |
| 4500 | Examiner Issues | 2,051.70 | $898,937.50 |
| 4600 | Firm's Own Billing/Fee Applications | 1,372.60 | $416,335.50 |
| 4700 | Firm's Own Retention Issues | 82.60 | $19,113.00 |
| 4800 | Third Party Retention/Fee Application/Other Issues | 618.80 | $276,823.00 |
| **Total Fees Requested:** | | **63,461.00** | **$36,448,454.39** |