Hearing Date:  To Be Determined, 2010
Objection Deadline:  To Be Determined, 2010

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, NY  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
Cindi M. Eilbott
Email:   sreisman@curtis.com
          lharrison@curtis.com
          ceilbott@curtis.com

*Conflicts Counsel for the Debtors*
 *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | |
|---|---|
| : | **Chapter 11** |
| **In re:** : | |
| : | **Case No. 08-13555 (JMP)** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : | |
| : | **(Jointly Administered)** |
| **Debtors.** : | |
| : | |

---------------------------------------------------------------------x

**FIFTH INTERIM APPLICATION OF CURTIS, MALLET-PREVOST,**
**COLT & MOSLE LLP, AS CONFLICTS COUNSEL, FOR THE DEBTORS AND**
**DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR**
**PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT**
**OF ACTUAL AND NECESSARY EXPENSES INCURRED**
**FOR THE PERIOD FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

**SUMMARY OF CURRENT FEE APPLICATION**

| | |
|---|---|
| Name of Applicant: | Curtis, Mallet-Prevost, Colt & Mosle LLP |
| Authorized to Provide Professional Services To: | Debtors and Debtors In Possession |
| Retention Date: | November 21, 2008 *nunc pro tunc* to September 26, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | February 1, 2010 through May 31, 2010 |

| | |
|---|---|
| Amount of Compensation Requested: | $ 3,546,135.00 |
| Amount of Expense Reimbursement Requested: | $ 135,181.82 |
| Total Compensation and Expense Reimbursement Requested: | $ 3,681,316.82 |
| Blended Rate for Attorneys: | $ 516.30 |
| Blended Rate for all Professionals and Paraprofessionals: | $ 491.03 |

### PRIOR FEE APPLICATION(S)

| Period Covered | Requested | | Awarded | |
|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses |
| First<br>09/15/08 – 01/31/09 | $4,611,589.50 | $151,402.02 | $4,605,112.00 | $151,402.02 |
| Second<br>02/01/09 – 05/31/09 | $4,230,132.50 | $164,681.90 | $4,216,398.50 | $132,363.87 |
| Third<br>06/01/09 – 09/30/09 | $4,664,248.00 | $188,127.18 | $4,551,471.48 | $151,898.05 |
| Fourth<br>10/01/09 – 01/31/10 | $3,396,981.50 | $87,448.45 | To Be Determined | To Be Determined |

### Exhibits to Current Fee Application

The following exhibits are attached hereto and incorporated herein by reference:

Exhibit "A"   Certification Under Guidelines for Fees and Disbursements for Professionals in Respect of Fifth Interim Application of Curtis, Mallet-Prevost, Colt & Mosle LLP for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses

Exhibit "B"   By-Timekeeper Summary of Hours Devoted and Compensation Sought (includes billing rate and year of admission to practice) for Fifth Interim Compensation Period

Exhibit "C"   Summary of Expenses for Fifth Interim Compensation Period

Exhibit "D"   Summary of Hours Devoted and Compensation Sought by Work Task Code for February 2010

Exhibit "E"   Summary of Hours Devoted and Compensation Sought by Work Task Code for March 2010 through May 2010

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, NY 10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
Cindi M. Eilbott
Email:  sreisman@curtis.com
          lharrison@curtis.com
          ceilbott@curtis.com

*Conflicts Counsel for the Debtors*
 *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

| | | |
|---|---|---|
| | : | **Chapter 11** |
| **In re:** | : | |
| | : | **Case No. 08-13555 (JMP)** |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |
| | : | |

-------------------------------------------------------------------------x

**FIFTH INTERIM APPLICATION OF CURTIS, MALLET-PREVOST,**
**COLT & MOSLE LLP, AS CONFLICTS COUNSEL, FOR THE DEBTORS AND**
**DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR**
**PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT**
**OF ACTUAL AND NECESSARY EXPENSES INCURRED**
**FOR THE PERIOD FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

          Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), as conflicts counsel for

Lehman Brothers Holdings Inc., and its direct and indirect debtor subsidiaries, as debtors and

debtors in possession (collectively, the "Debtors"), respectfully submits this application (the

"Application") for allowance of interim compensation for professional services rendered for the

period February 1, 2010 through and including May 31, 2010 (the "<u>Compensation Period</u>"), and

for reimbursement of its actual and necessary expenses incurred in connection with such

services.  In support of this Application, Curtis respectfully represents as follows:

**SUMMARY OF PROFESSIONAL COMPENSATION AND
<u>REIMBURSEMENT OF EXPENSES REQUESTED</u>**

1.        This Application has been prepared in accordance with the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases adopted by the Court on November 25, 2009 (the "<u>Local Guidelines</u>"), the

United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the

"<u>UST Guidelines</u>"), and the Third Amended Order Pursuant to Sections 105(a) and 331 of the

Bankruptcy Code Establishing Procedures for Interim Compensation and Reimbursement of

Expenses of Professionals entered by the Court on June 25, 2009 (the "<u>Administrative Order</u>,"

collectively with the Local Guidelines and UST Guidelines, the "<u>Guidelines</u>").  Pursuant to the

Local Guidelines, a certification regarding compliance with the Guidelines is attached hereto as

"**<u>Exhibit A</u>**."[1]

2.        Curtis attorneys and paraprofessionals expended a total of 7,221.80 hours

representing the Debtors during the Compensation Period for which the firm requests

compensation.  Curtis seeks allowance of interim compensation for services rendered to the

Debtors in the amount of $3,546,135, representing 100% of fees incurred during the

Compensation Period, and for reimbursement of $135,181.82, representing 100% of the actual

and necessary expenses incurred during the Compensation Period.

---

[1] As to contested matters, existing litigation, or possible additional litigation to be brought by, or against, the
Debtors, adversary proceedings, and other actions or threatened actions, this Fee Application shall not constitute or
be construed as an admission of any fact or any issue of liability, nor shall it constitute a stipulation, or a waiver, but
rather as statements made without prejudice to the Debtors' rights and interests in these chapter 11 cases.

3.      During the Compensation Period, other than pursuant to the Administrative Order, Curtis has received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered in this Application.  There is no agreement or understanding between Curtis and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases.

4.      In accordance with the Administrative Order, Curtis has received payments totaling $2,213,840.34 for the Compensation Period, which consists of $2,119,411.60 representing 80% of the fees incurred from February 1, 2010 through April 31, 2010, and $94,428.74 representing 100% of the expenses incurred during such period.

5.      The fees charged by Curtis in these cases are billed in accordance with Curtis' existing billing rates and procedures in effect during the Compensation Period.  The rates Curtis charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are the same rates Curtis charges for professional and paraprofessional services rendered in non-bankruptcy-related matters.[2]  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

6.      Pursuant to the UST Guidelines, annexed hereto as "**Exhibit B**" is a schedule setting forth all Curtis professionals and paraprofessionals who have performed services in these chapter 11 cases during the Compensation Period, the capacity in which each such individual is employed by Curtis, the hourly billing rate charged by Curtis for services performed by such individual, the aggregate number of hours expended in these proceedings and

---

[2] In instances where professionals spent less than one hour working on the Debtors' cases during a month, Curtis has written off the time as a courtesy to the Debtors.

fees billed therefor, and, if applicable, the year in which each professional was first licensed to practice law.

7.       Annexed hereto as "**Exhibit C**" is a schedule specifying the categories of expenses for which Curtis is seeking reimbursement, and the total amount for each such expense category.

8.       Pursuant to Section II.D of the UST Guidelines, annexed hereto as "**Exhibit D**" and "**Exhibit E**" are summaries of Curtis' time records billed during the Compensation Period by project categories.

9.       Curtis maintains computerized records of the time spent by all Curtis attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter 11 cases.  Subject to redaction for the attorney-client privilege where necessary to protect the Debtors' estates, copies of these computerized records have been furnished to the Court, the attorneys for the official committee of unsecured creditors (the "Creditors' Committee"), the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), and the committee appointed pursuant to the Order Appointing Fee Committee and Approving Fee Protocol, dated May 27, 2009 [Docket No. 3651] (the "Fee Committee"), in the format specified by the UST Guidelines.

10.      To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, Curtis reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

11.      Curtis has provided the Debtors, the U.S. Trustee, lead counsel to the Debtors, the Creditors' Committee and the Fee Committee with monthly fee statements for professional services rendered and expenses incurred on behalf of the Debtors, along with

detailed reports of time entries and expenses.[3]  Pursuant to such statements, and in accordance

with the Administrative Order, Curtis has requested that the Debtors pay Curtis 80% of its fees

for professional services and 100% of the expenses.  By this Application, Curtis requests the

release of the 20% "holdback" of fees for professional services rendered during the

Compensation Period.[4]

## BACKGROUND

12.     Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), the Debtors and certain of its direct and indirect

subsidiaries commenced with this Court voluntary cases for relief under chapter 11 of title 11 of

the United States Code, as amended (the "Bankruptcy Code").  The Debtors are continuing to

operate their businesses and manage their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

13.     On September 17, 2008, pursuant to section 1102 of the Bankruptcy Code,

the U.S. Trustee appointed the Creditors' Committee.

14.     On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

## RETENTION OF CURTIS

15.     Curtis was retained by the Debtors as of September 26, 2008 to serve as

conflicts counsel for the Debtors.  Among other matters, Curtis is responsible for handling all

bankruptcy-, corporate- and litigation-related matters where lead counsel for the Debtors, Weil,

---

[3] In connection with this Application, Curtis updated certain of it time records and expenses consistent with certain recommendations and guidelines recently implemented by the Fee Committee.
[4] The requested release of the holdback for the Compensation Period will not affect the holdback for any subsequent periods.

Gotshal & Manges LLP ("WGM"), or other counsel for the Debtors, has an actual or perceived conflict of interest, and to perform discrete duties as assigned by WGM and other Debtors' counsel that could be handled more efficiently by Curtis.

16.     Pursuant to the Order of the Court, dated November 21, 2008, the Debtors were authorized to retain Curtis as their conflicts counsel to render legal services in the prosecution of their chapter 11 cases.

17.     Since its retention, Curtis has coordinated its efforts with WGM so that their work is complementary and not duplicative.  WGM and Curtis have experience working as debtors' general bankruptcy counsel and conflicts counsel, respectively, for large bankruptcy cases previously pending before this Court.  *See In re Silicon Graphics, Inc., et al.*, Case No. 06-10977 (ALG) (Bankr. S.D.N.Y. 2006) and *In re Parmalat Finanziaria S.p.A., et al.*, Case No. 04-14268 (RDD) (Bankr. S.D.N.Y. 2004).  As a result of these experiences and the continued efforts of WGM and Curtis, the assignment of tasks is being maintained efficiently and with a clear delineation of duties.

18.     In addition, Curtis is presently acting or has recently acted as conflicts counsel in *In re CIT Group Inc., et al.*, Case No. 09-16565 (ALG) (Bankr. S.D.N.Y. 2009), *In re The Reader's Digest, Inc., et al.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. 2009), *In re Lear Corporation*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. 2009), *In re Charter Communications, Inc., et al.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. 2009), *In re Star Tribune Holdings Corporation*, Case No. 09-10244 (RDD) (Bankr. S.D.N.Y. 2009) and *In re Bally Total Fitness of Greater New York, Inc.*, Case No. 08-14818 (BRL) (Bankr. S.D.N.Y. 2008).

19.     The work encompassed by this Application for which Curtis seeks compensation was performed efficiently and at a reasonable cost to the estates.  All of the work

summarized in this Application was performed in a manner to ensure minimal duplication of services and an effort to keep the administration expenses to a minimum.

**SUMMARY OF SERVICES RENDERED BY**
**CURTIS DURING THE COMPENSATION PERIOD**

20.    During the Compensation Period, Curtis performed substantial services for the Debtors. These services were necessary to effectively administer the chapter 11 cases.

21.    In accordance with the Guidelines and Curtis' internal billing procedures, Curtis has established separate matter numbers and matter names for distinct project categories in these chapter 11 cases. Listed below is a summary, by matter name, of services provided by Curtis during the Compensation Period:

A.    **February 2010**[5]

22.    **Case Administration.** A total of 46.40 hours of services was performed and Curtis is seeking allowance of $12,922 in fees. This matter covers a variety of different services undertaken by Curtis attorneys and paraprofessionals in the general administration of the Debtors' chapter 11 cases. Given the scale and complexity of the matters on which Curtis advises the Debtors, Curtis attorneys and paraprofessionals spent time on case administration in order to keep informed with respect to the matters on which Curtis is representing the Debtors, as well as communicate with the conflict-related parties and other stakeholders of the Debtors with respect to ongoing matters in the Debtors' cases. Services rendered by Curtis in connection with this matter included, among other tasks, the monitoring of the case docket for pleadings with potential conflict implications, reviewing and maintaining a case docket of significant pleadings filed with the Court, and keeping a calendar of critical dates in these chapter 11 cases.

---

[5] In March 2010, in accordance with the request of the Fee Committee, Curtis established a new set of standardized matter numbers. Thus, the matter numbers and descriptions for February 2010 are discussed separately from the matter numbers and descriptions for the remainder of the Compensation Period.

23.    **General Corporate Issues.**  A total of 16.50 hours of services was performed and Curtis is seeking allowance of $9,011.50 in fees.  This matter corresponds to general issues handled by Curtis' Corporate and Restructuring and Insolvency departments, especially advising the Debtors with regard to Riopelle Broadway L.P. ("Riopelle").  Riopelle was formed by Lehman in association with Caisse de dépôt et placement du Québec ("Caisse") and its wholly owned subsidiary, CDP Investissements (together with Caisse, the "Quebec Partners") to acquire from Lehman Commercial Paper Inc. ("LCPI") approximately $750 million principal amount of certain funded (approximately $550 million) and unfunded (approximately $200 million) loans of Texas Competitive Electric Holdings Company LLC.  To finance the purchase and funding of the underlying loans, Riopelle issued a Senior Variable Floating Rate Note due 2012 in a principal amount of up to $517 million to LCPI, and Junior Profit-Participating Notes due 2012 to the Quebec Partners, with LCPI holding a nominal (0.1%) junior ownership percentage, and with U.S. Bank National Association ("U.S. Bank") serving as indenture trustee.  During the Compensation Period, Curtis completed all transactions relating to the transfer of a senior note to Caisse.

24.    **Curtis Retention, Fee Applications and Monthly Fee Statements.**  A total of 98 hours of services was performed and Curtis is seeking allowance of $28,839 in fees.[6] In connection with this matter, Curtis prepared its January Fee Statement in accordance with the Guidelines.  Tasks included reviewing all expenses, timekeeper entries, and Fee Statement schedules and tables for accuracy and compliance with the Guidelines.  Additionally, Curtis addressed issues related to its Third Interim Fee Application.  Finally, Curtis responded to requests from the Fee Committee and prepared its March budget for the Fee Committee.

---

[6] Curtis reserves the right to contest any deductions recommended by the Fee Committee in connection with this matter.

25.    **Swap Transactions/Terminations/Analysis.**  A total of 77.40 hours of services was performed and Curtis is seeking allowance of $42,501.50 in fees.  This matter covers a multitude of services related to the analysis and resolution of the complex financial instruments affected by the Debtors' cases, including the review and analysis of ISDA agreements and synthetic CDO structures.

26.    Additionally, Curtis performed a variety of tasks related to counterparty termination of (i) interest rate swaps (the "AmeriCredit Interest Rate Swaps") between LBSF and affiliates of three trusts serviced by AmeriCredit Financial Services, Inc. (AmeriCredit Automobile Receivables Trust 2005-B-M, AmeriCredit Automobile Receivables Trust 2007-B-F and AmeriCredit Automobile Receivables Trust 2007-D-F) (collectively, the "AmeriCredit Trusts") and (ii) Differential Swaps between AmeriCredit Financial Services, Inc. ("ACFSI") and LBSF (the "AmeriCredit Diff Swaps").  The tasks performed by Curtis included analysis of the AmeriCredit Interest Rate Swaps and the AmeriCredit Diff Swaps and related correspondence and documentation, the respective terminations thereof and the calculation of termination amounts with respect thereto, advising LBSF with respect to LBSF's right to contest the methodology in calculating the termination amounts related to such early terminations, drafting correspondence and position letters to counsel for ACFSI and the AmeriCredit Trusts, and review and analysis of correspondence received from such counsel.

27.    Curtis also performed a variety of tasks involving a structured CDO transaction – Pebble Creek LCDO 2007-2, Ltd. ("Pebble Creek") – concerning Lehman Brothers Special Financing Inc. ("LBSF"), as credit default swap counterparty, and Citibank, N.A. ("Citibank"), as indenture trustee.  The issuer in the Pebble Creek transaction sold tranches of notes to investors and entered into a credit default swap with LBSF, which swap position was in the money to LBSF as of the Commencement Date.  The swap was purportedly terminated on

September 19, 2008.  Citibank therafter redeemed the collateral, consisting of shares in Lehman

Brothers ABS Enhanced LIBOR Fund, liquidating the transaction and distributing the proceeds

on or around October 15, 2008.  Curtis has continued to perform tasks relating to LBSF's

position that the termination of the swap and the liquidation of collateral and distribution of

proceeds violated the terms of the indenture and the credit default swap.  The Pebble Creek

transaction is part of the same series of other structured CDO transactions being handled by

WGM for which U.S. Bank is the indenture trustee and LBSF is the credit default swap

counterparty.  Accordingly, Curtis professionals have closely coordinated their efforts in the

Pebble Creek matter with WGM and Lehman professionals who are involved in ongoing

negotiations with the indenture trustee, and the noteholders in the U.S. Bank CDO transactions.

28.    **JPMorgan Chase Matters.**  A total of 577.10 hours of services was

performed and Curtis is seeking allowance of $345,186 in fees.  During the month of February,

Curtis continued to work on matters related to the various relationships between JPMorgan

Chase ("JPMC") and the Debtors, including the analysis of pledges that and certain Debtors

provided which purportedly collateralize the JPMC entities' claims.  To this end, Curtis

continued to perform extensive legal research and analysis with respect to a variety of legal

issues surrounding the collateral pledges and the JPMC entities' claims.  Finally, Curtis has

continued to coordinate its efforts regarding this matter with other parties in interest, including

the Creditors' Committee and/or its counsel.

29.    Curtis, along with co-counsel, also finalized the negotiation of a Collateral

Disposition Agreement (the "CDA") with JPMC, regarding the disposition of certain of the

collateral pledged by LBHI to JPMC.

30.    **Syncora Matters.**  A total of 3.80 hours of services was performed and

Curtis is seeking allowance of $2,807 in fees.  This matter designation covers all tasks related to

the restructuring of bond insurer Syncora Holdings, Ltd. ("Syncora") and a related credit default swap commutation transaction. Curtis continued to advise the Debtors with respect to amendments to the documentation related to the transaction and the Debtors' consent to certain actions acquired by the provisions thereof. Curtis worked with common counsel to Syncora credit default swap counterparties and counsel to such counterparties with respect to such matters.

31. **Fenway Matters.** A total of 22.90 hours of services was performed and Curtis is seeking allowance of $7,334 in fees. In February 2010, Curtis reviewed and analyzed underlying documentation with respect to the commercial paper issuance in connection with Fenway Funding, LLC and Fenway Capital, LLC (together, "Fenway").

32. **RACERS Matters.** A total of 40 hours of services was performed and Curtis is seeking allowance of $17,764.50 in fees. Curtis performed an analysis of the legal documentation constituting the Restructured Asset Securities with Enhanced Returns ("RACERS") Series 2007 structured finance transaction, including a review of the securities issued by the RACERS Series 2007-MM Trust.

33. **SASCO Matters.** A total of 5.20 hours of services was performed and Curtis is seeking allowance of $2,048 in fees. In February 2010, Curtis reviewed the documentation related to the structured finance transaction known as SASCO 2008 C-2, LLC ("SASCO").

34. **Pyxis Matters.** A total of 5.40 hours of services was performed and Curtis is seeking allowance of $3,041 in fees. For this project category, Curtis has provided services related to PYXIS ABS CDO 2007-1 LTD ("Pyxis"), a CDO transaction. In the Pyxis transaction, LBSF is the credit default swap counterparty, and Bank of America, N.A., as successor to LaSalle Bank, is the indenture trustee. On October 6, 2008, the indenture trustee,

after having previously declared (i) an event of default under the indenture, (ii) an acceleration of the maturity of the notes, and (iii) an early termination date under the credit default swap, distributed approximately $386 million from the Reserve Account to the noteholders, and cancelled the remaining unfunded commitment of the holder of the Class A-1 Notes, Canadian Imperial Bank of Commerce ("CIBC"). Curtis has continued to perform tasks relating to LBSF's position that the indenture trustee's termination of the credit default swap and any liquidation of collateral or distribution of proceeds by the indenture trustee is improper. Curtis has continued to work closely with WGM and Lehman to coordinate negotiation and litigation strategies in the Pyxis transaction with those in the other CDO transactions being handled for the Debtors by WGM.

35.    **Pine, Spruce and Verano Matters.** A total of 29.30 hours of services was performed and Curtis is seeking allowance of $9,579.50 in fees. Curtis assisted the Debtors with respect to the legal documentation constituting the Pine, Spruce and Verano structured finance transactions, including securities issued by issuers Pine CCS, Ltd., Spruce CCS, Ltd. and Verano CCS, Ltd.

36.    **CEAGO Matters.** A total of 2.20 hours of services was performed and Curtis is seeking allowance of $999 in fees. In connection with CEAGO ABS CDO 2007-1, Ltd. (the "CDO"), in which LBSF is a counterparty to a credit default swap and a total return swap with the CDO, and for which Bank of America, N.A., as successor to LaSalle Bank, is indenture trustee. Curtis advised LBSF with respect to its rights in the event of a liquidation of the CDO and the effect of certain legal developments on such rights.

37.    **Citibank.** A total of 570.40 hours of services was performed and Curtis is seeking an allowance of $265,256 in fees. During the Compensation Period, Curtis was asked by the Debtors to investigate certain aspects of the Debtors' prepetition relationship with Citibank,

including, but not limited to Citibank's alleged right of setoff.  In this regard, Curtis worked

closely with counsel to the Creditors' Committee, reviewed documents provided to the Debtors

by Citibank and began a factual and legal investigation.

38.    **Bankruptcy Litigation.**  A total of 5.90 hours of services was performed

and Curtis is seeking an allowance of $2,833 in fees.  During February 2010, Curtis addressed

certain follow up issues with respect to disputes involving GE Corporate Financial Services, Inc.

("GECFS").  In connection with this matter, Curtis previously advised the Debtors in disputes

under loan purchase agreements between LCPI and Fusion Funding Limited ("Fusion") and

Fusion Funding Luxembourg S.A.R.L. ("Fusion Luxembourg" and, together with Fusion, the

"Fusion Entities"), and a loan participation agreement between Lehman Brothers Bankhaus AG

and Fusion Luxembourg.  The Fusion Entities are special purpose vehicles whose purchases

were financed almost exclusively from a secured credit facility provided by General Electric

Capital Corporation ("GE Capital" and, together with GECFS, the "GE Entities"), with GECFS

acting as the loan servicer for the Fusion Entities.  In December 2009, Curtis advised the Debtors

and coordinated with the Creditors' Committee advisors in connection with the negotiation of a

final settlement agreement providing for the restructuring of the Fusion loan portfolio and a

sharing of the related proceeds, as well as a settlement of all related claims.  This settlement was

approved by the Bankruptcy Court in December 2009.  Curtis subsequently advised the Debtors

in the negotiation of an escrow agreement with the GE Entities and U.S. Bank, as escrow agent,

resulting in completion of the closing of the settlement.

B.    **March 2010 through May 2010[7]**

39.    **General Case Administration.**  A total of 88.70 hours of services was

performed and Curtis is seeking allowance of $22,618.50 in fees.  This matter covers a variety of

tasks performed by Curtis professionals that relate to the smooth and efficient administration of the chapter 11 cases. Among other things, during the Compensation Period, Curtis professionals reviewed global procedures applicable to the chapter 11 cases, including orders relating to unfunded loan commitments, alternative dispute resolutions and disposition of certain assets, liaised with WGM regarding coordination among counsel going forward and created and updated a comprehensive calendar of pertinent deadlines, hearings and meetings.

40.    **General Case Strategy Meetings.**  A total of 113.10 hours of services was performed and Curtis is seeking allowance of $61,353.50 in fees.  This matter covers time spent by professionals at a weekly meeting where attorneys working on various Lehman matters provide status updates to the larger group and developments in the bankruptcy cases are discussed.  Such meetings are critical to the smooth operation and prosecution of the Debtors' chapter 11 cases.

41.    **Project Monitoring/Court Calendar & Docket Maintenance.**  A total of 84.70 hours of services was performed and Curtis is seeking allowance of $26,792 in fees. With respect to this matter, Curtis professionals monitored the docket for pleadings filed in the chapter 11 cases, the SIPA Proceeding and various adversary proceedings.  The purpose of monitoring these dockets is to stay apprised of the happenings in the cases and proceedings involving the Debtors, especially with respect to pleadings filed by potential conflict parties.

42.    **Hearings and Court Communications.**  A total of 84.70 hours of services was performed and Curtis is seeking allowance of $26,792 in fees.  With respect to this matter, Curtis professionals prepared for and attended all hearings in the chapter 11 cases, including the monthly omnibus hearings.

---

[7] See, supra n. 5.

43.    **Secured Creditors Issues/Meetings/Communications.**  A total of 1.00 hours of services was performed and Curtis is seeking allowance of $622 in fees.  During the Compensation Period, with respect to this matter, Curtis addressed a follow up issue related to principal and interest on certain assets previously held in a vault at JPMC.

44.    **LBI/SIPC Coordination and Issues.**  A total of 16.60 hours of services was performed and Curtis is seeking allowance of $4,814 in fees.  During the Compensation Period, Curtis professionals liaised with LBI on various issues, including, but not limited to, the treatment and ongoing administration of certain assets that LBHI received as a subrogee of JPMC's claims under the CDA.

45.    **Employee/ERISA/Benefits/Pension Issues.**  A total of 2.20 hours of services was performed and Curtis is seeking allowance of $1,468 in fees.  During the Compensation Period, Curtis professionals addressed an issue related to the removal of a state court action brought by former employees.

46.    **Derivatives/Swap Agreement Issues.**  A total of 344 hours of services was provided and Curtis is seeking allowance of $167,553.50 in fees.  During the Compensation Period, Curtis continued to address various activities related to Pyxis, Pebble Creek and Syncora (as described above).  Additionally, Curtis reviewed and analyzed numerous derivatives contracts with JPMC and its affiliates and subsidiaries.

47.    **Loans/Investments.**  A total of 849 hours of services was provided and Curtis is seeking allowance of $393,310.50 in fees.  With respect to this matter, Curtis professionals continued to analyze and review numerous structured finance vehicles, including RACERS, Fenway, Pine, Spruce and Verano (collectively, the "Structures").  Additionally, Curtis worked closely with co-counsel, WGM, to draft motion papers related to certain of the

Structures.  Finally, Curtis addressed follow up issues related to the Fusion transaction

(described in greater detail above).

48.    **Domestic Bank and Related Regulatory Issues.**  A total of 277.40 hours

of services was provided and Curtis is seeking allowance of $136,393 in fees.  During the

Compensation Period, Curtis began reviewing the events and interactions between the Debtors

and the New York Federal Reserve Bank.

49.    **Non-Derivative Automatic Stay/Safe Harbor Issues.**  A total of 152.90

hours of services was provided and Curtis is seeking allowance of $49,116 in fees.  During the

Compensation Period, Curtis professionals continued to analyze the impact of the safe harbors on

various causes of action that the Debtors are pursuing.  In that regard, attorneys extensively

reviewed all recent case law addressing the safe harbor provisions.

50.    **Non-Derivative Executory Contracts/365 Issues.**  A total of 24.90 hours

of services was performed and Curtis is seeking allowance of $14,844 in fees.  During the

Compensation Period, Curtis professionals provided advice to the Debtors in connection with the

rejection of a co-location license agreement.

51.    **Plan of Reorganization/Plan Confirmation/Plan Implementation.**  A

total of 11.80 hours of services was performed and Curtis is seeking allowance of $6,399 in fees.

During the Compensation Period, Curtis reviewed aspects of the Debtors' proposed plan of

reorganization to assess the impact of such plan on other matters Curtis is handling on behalf of

the Debtors.

52.    **Disclosure Statement/Solicitation/Voting.**  A total of 36 hours of

services was performed and Curtis is seeking allowance of $20,886.50 in fees.  During the

Compensation Period, Curtis professionals reviewed the Debtors' Disclosure Statement and

provided WGM with draft language addressing the CDA and litigation with JPMC.

53.    **Non-Derivative Claims Reconciliation, Estimation, Litigation and Alternative Dispute Resolution, and Bar Date Issues.**  A total of 127 hours of services was performed and Curtis is seeking allowance of $41,899 in fees.  During the Compensation Period, Curtis professionals extensively analyzed claims filed by JPMC and its affiliates and Citibank and its affiliates.  Additionally, Curtis professionals prepared transfer notices related to the subrogated claims assigned to LBHI pursuant to the CDA with JPMC.

54.    **Other Bankruptcy Motions and Matters.**  A total of 509.10 hours of services was performed and Curtis is seeking allowance of $271,406 in fees.  During the Compensation Period, with respect to this matter, tasks focused on the preparation, filing and approval of the motion to approve the CDA.  Curtis professionals also worked with WGM to assist with the preparation of other pleadings filed in the Bankruptcy Court, including with respect to issues related to the SunCal debtors and Fenway Funding.

55.    **Non-Derivative Adversary Proceedings Preparation and Litigation.**  A total of 2,271 hours of services was performed and Curtis is seeking allowance of $1,243,725 in fees.  With respect to this matter, the primary tasks performed by Curtis professionals relate to the litigation commenced against JPMC.  In that regard, on May 26, 2010, Curtis filed the adversary proceeding styled *Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A.*, Case No. 10-03266, in which LBHI is seeking a judgment that LBHI is entitled to void certain agreements entered into between LBHI and JPMC prior to LBHI's Commencement Date on the grounds that such agreements were fraudulent transfers and/or unenforceable under state law.  LBHI further seeks to recover billions in cash collateral, certain securities collateral posted to JPMC, and all other damages occasioned by JPMC's wrongful conduct under bankruptcy and state law theories.  The matter is currently pending before the Bankruptcy Court.

56.     Additionally, Curtis professionals continued investigating Lehman's prepetition relationship with Citibank and performed research in connection with potential vendor preferences.

57.     **2004 Issues.**  A total of 9.40 hours of services was performed and Curtis is seeking allowance of $4,277.  In connection with this matter, Curtis attorneys continued to review certain documentation produced by JPMC as the result of a 2004 examination of JPMC commenced by the Creditors' Committee early in the Debtors' chapter 11 cases.

58.     **Examiner Issues.**  A total of 324.20 hours of services was performed and Curtis is seeking allowance of $185,516 in fees.  In connection with this matter, Curtis professionals extensively reviewed the Examiner's Report with a focus on matters that Curtis is handling on behalf of the Debtors.  Curtis professionals also produced memoranda discussing certain findings and conclusions made by the Examiner.  Finally, Curtis professionals addressed issues related to the order discharging the Examiner.

59.     **Proprietary Retention/Billing/Fee Applications.**  A total of 365.40 hours of services was performed and Curtis is seeking allowance of $107,488.50 in fees.  As described more fully above, in connection with this matter, Curtis professionals prepared and served Fee Statements in accordance with the Guidelines, prepared budgets and responded to inquiries from the Fee Committee.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

60.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation.  *See* 11 U.S.C. § 331.  The awarding of interim compensation should be based on the circumstances of the particular case.  *In re Nana Daly's Pub., Ltd.*, 67 B.R. 782, 787 (Bankr. E.D.N.Y. 1986).

61.     Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  The Court has broad discretion in determining whether to allow compensation and determining the amount of compensation.  *In re Nine Assocs., Inc.*, 76 B.R. 943, 944 (Bankr. S.D.N.Y. 1987).

62.     Section 330 of the Bankruptcy Code also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

63.     Courts within the Second Circuit have employed the "lodestar approach" for calculating judicial awards of compensation to attorneys.  The lodestar approach was articulated by the Second Circuit in *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983).  The lodestar method of determining reasonable compensation

involves multiplying the hours spent on a case, based on attorney time records, by a reasonable hourly rate of compensation for each attorney based on prevailing market rates for private law firms performing services for non-governmental clients. *In re McLean Industries, Inc.*, 88 B.R. 36, 39 (Bankr. S.D.N.Y. 1988). Once calculated, this lodestar figure may be adjusted upward or downward to take into account the facts of the particular case. *In re Baldwin United Corp.*, 79 B.R. 321, 347 (Bankr. S.D. Ohio 1987). Factors regarding the difficulty, complexity and contingent nature of the case may thereafter be employed to arrive at a reasonable and just compensation in excess of the lodestar figure. *In re Stable Mews Assocs.*, 49 B.R. 395, 398 (Bankr. S.D.N.Y. 1985); *In re Chriss*, 38 B.R. 655, 657 (Bankr. S.D.N.Y. 1984).

64.    In the instant case, Curtis respectfully submits that the services for which it seeks compensation in this Application meet or exceed the standards set forth in section 330 of the Bankruptcy Code as applied by bankruptcy courts in this Circuit to determine the reasonableness of professional fees sought from a debtor's estate. Curtis also respectfully submits that the services provided to the Debtors during the Compensation Period were necessary and beneficial to the Debtors' efforts to maximize the value of their estates. The professional services that Curtis rendered were focused on pursuing an efficient reorganization and/or liquidation of the Debtors' businesses that maximizes the value of the estates and recovery to creditors. Except as otherwise set forth herein, Curtis' rates charged to the Debtors are identical to the rates charged by Curtis for comparable services in a non-chapter 11 context. Such services were not only necessary to benefit the Debtors' estates, but also to enhance potential recovery to creditors. Accordingly, Curtis further submits that the compensation requested herein is reasonable and warranted in light of the nature, extent and value of such services to the Debtors, their estates and all parties in interest.

## FEES AND ACTUAL AND NECESSARY DISBURSEMENTS OF CURTIS

65.    Curtis devoted 7,221.80 hours of actual recorded time during the Compensation Period resulting in time charges of $3,546,135.00.  The amount of $709,227.00[8] remains unpaid as of the date of this Application.  By this Application, Curtis also requests release of the 20% holdback from the Fourth Interim Compensation Period.

66.    Throughout the Compensation Period, Curtis sought to assign projects in this case to partners, associates and paraprofessionals who could most efficiently and expeditiously handle the tasks at hand.  Curtis respectfully submits that the legal services reflected in this Application are fair and reasonable and are commensurate with the quality of services provided herein.  The blended rate for services performed by Curtis during the Compensation Period is $516.30.

67.    In addition to the fees sought for legal services, Curtis has incurred $135,181.82 in out-of-pocket expenses and disbursements during the Compensation Period directly attributable to the representation of the Debtors.

68.    No part of the compensation to be received pursuant to this Application will be shared with any other person or firm, and no other agreements, either express or implied, to share any compensation received as attorneys for the Debtors has been, or will be, made by Curtis.

## NOTICE

69.    A copy of this Application has been submitted to:  (i) the Debtors; (ii) lead bankruptcy counsel for the Debtors; (iii) counsel for the Creditors' Committee; (iv) the U.S. Trustee; and (v) the Fee Committee.

---

[8] This amount reflects the 20% holdback from February 2010, March 2010, April 2010, and May 2010. Additionally, Curtis has not yet received payment for the 80% of services and 100% of expenses incurred according to the May 2010 bill.

## CONCLUSION

**WHEREFORE**, Curtis respectfully requests that this Application be granted and

that it be awarded an allowance of $3,546,135 for legal services rendered to the Debtors during

the Compensation Period, and $135,181.82 for reimbursement of expenses, and that the Debtors

be allowed to pay such amounts to the extent not previously paid, together with such other and

further relief be granted as may be just and proper.

Dated:   August 16, 2010                    Respectfully submitted,
         New York, New York

                                            **CURTIS, MALLET-PREVOST,**
                                              **COLT & MOSLE LLP**

                                            By: /s/ *Steven J. Reisman*
                                                Steven J. Reisman
                                                L. P. Harrison 3rd
                                                Cindi M. Eilbott
                                            101 Park Avenue
                                            New York, NY  10178-0061
                                            Telephone:  (212) 696-6000
                                            Facsimile:  (212) 697-1559
                                            Email:   sreisman@curtis.com
                                                     lharrison@curtis.com
                                                     ceilbott@curtis.com

                                            *Conflicts Counsel for the Debtors and*
                                              *Debtors in Possession*

## EXHIBIT A

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Telephone:  212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
Cindi M. Eilbott

*Conflicts Counsel for the Debtors*
  *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| | : | **Chapter 11** |
| **In re:** | : | |
| | : | **Case No. 08-13555 (JMP)** |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | |
| | : | **(Jointly Administered)** |
| Debtors. | : | |
| | : | |

------------------------------------------------------------------------x

**CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR
PROFESSIONALS IN RESPECT OF FIFTH INTERIM APPLICATION OF CURTIS,
MALLET-PREVOST, COLT & MOSLE LLP FOR ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

I, L. P. Harrison 3rd, hereby certify that:

1.  I am a partner with the applicant firm, Curtis, Mallet-Prevost, Colt & Mosle

LLP ("Curtis"), with primary responsibility for the chapter 11 cases of Lehman Brothers

Holdings Inc., and its direct and indirect subsidiaries, as debtors and debtors in possession

(collectively, the "Debtors"), in respect of compliance with the Amended Guidelines for Fees

and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on November 25, 2009 (the "Local Guidelines"), the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and the Third

Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing

Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the

"Administrative Order," collectively with the Local Guidelines and UST Guidelines, the

"Guidelines").

2.    This certification is made in respect of Curtis' application, dated August 16,

2010 (the "Application"), for interim compensation and reimbursement of expenses for the

period commencing February 1, 2010, through and including May 31, 2010 (the "Compensation

Period") in accordance with the Guidelines.

3.    In respect of section A.1 of the Local Guidelines, I certify that:

- I have read the Application;

- to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines and the UST Guidelines;

- the fees and disbursements sought are billed at rates in accordance with practices customarily employed by Curtis and generally accepted by Curtis' clients; and

- in providing a reimbursable service, Curtis does not make a profit on that service, whether the service is performed by Curtis in house or through a third party.

4.    In respect of section A.2 of the Local Guidelines, I certify that Curtis has

provided the Debtors, counsel for the statutory committee of unsecured creditors appointed in

these cases (the "Creditors' Committee"), the United States Trustee for the Southern District of

New York (the "U.S. Trustee") and the Committee appointed pursuant to the Order Appointing

Fee Committee and Approving Fee Protocol, dated May 27, 2009 [Docket No. 3651] (the "Fee

Committee"), with a statement of Curtis' fees and disbursements on a monthly basis.

5.  In respect of section A.3 of the Local Guidelines, I certify that the Debtors,

counsel for the Creditors' Committee, lead bankruptcy counsel for the Debtors, the Fee

Committee and the U.S. Trustee are each being provided with a copy of the Application more

than 14 days before the hearing on the Application.

Dated:    New York, New York
          August 16, 2010

                                        /s/ *L. P. Harrison 3rd*
                                    _____
                                            L. P. Harrison 3rd

## EXHIBIT B

## SUMMARY OF FIFTH INTERIM FEE APPLICATION OF CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR SERVICES RENDERED FOR THE PERIOD FEBRUARY, 2010 TO MAY 31, 2010[1]

| NAME OF PROFESSIONAL | DEPARTMENT AND YEAR ADMITTED[2] | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| | | | | |
| **PARTNERS** | | | | |
| Roman A. Bninski | C – 1976 | $785 | 2.10 | $1,648.50 |
| L. P. Harrison 3rd | RIG – 1984 | $785 | 792.30 | $621,955.50 |
| Joseph D. Pizzurro | L – 1977 | $785 | 277.20 | $217,602.00 |
| Steven J. Reisman | RIG – 1991 | $785 | 9.00 | $7,065.00 |
| Nancy E. Delaney | L – 1989 | $730 | 188.10 | $137,313.00 |
| Daniel R. Lenihan | C – 1982 | $730 | 18.10 | $13,213.00 |
| Michael J. Moscato | L – 1982 | $730 | 214.10 | $156,293.00 |
| Andrew H. Seiden | C – 1993 | $730 | 512.10 | $373,833.00 |
| Turner P. Smith | L – 1980 | $730 | 167.70 | $122,421.00 |
| Martin L. Forman | RE – 1986 | $675 | 11.80 | $7,965.00 |
| **TOTAL PARTNERS** | | | **2,192.50** | **$1,659,309.00** |
| | | | | |
| **COUNSEL** | | | | |
| Myles K. Bartley | L – 1999 | $595 | 32.60 | $19,397.00 |
| Susan F. Pollack | C – 1967 | $595 | 363.40 | $216,223.00 |
| **TOTAL COUNSEL** | | | **396.00** | **$235,620.00** |
| | | | | |
| **ASSOCIATES** | | | | |
| James V. Drew | RIG – 2002 | $575 | 1.50 | $862.50 |
| Susana M. Namnum | C – 1996 | $575 | 99.10 | $56,982.50 |
| Peter J. Behmke | L – 2005 | $495 | 409.00 | $202,455.00 |
| Benjamin Lowin | C – 2006 | $495 | 30.50 | $15,097.50 |
| Rachael Yocum | L – 2006 | $495 | 29.50 | $14,602.50 |
| Andrew Zinman | L – 1996 | $495 | 79.00 | $39,105.00 |
| Danny Phillips | C – 2006 | $455 | 9.40 | $4,277.00 |
| Priya Swaminathan | L – 2007 | $455 | 478.40 | $217,672.00 |
| Joseph Clyne | L – 1984 | $415 | 3.00 | $1,245.00 |
| Bradley Doline | C – 2007 | $415 | 51.60 | $21,414.00 |
| Cindi M. Eilbott | RIG – 2007 | $415 | 682.20 | $283,113.00 |
| Veronique Hodeau | RIG – 2007 | $415 | 18.20 | $7,553.00 |
| Julie W. Arkush | L – 2008 | $375 | 100.40 | $37,650.00 |
| Stefano de Stefano | C – 2008 | $375 | 137.80 | $51,675.00 |
| Christina Manthei | RIG – 2008 | $375 | 5.30 | $1,987.50 |
| Steven Gibbs | L – 2010 (6-11-10) | $335 | 5.40 | $1,809.00 |
| Shafiq Perry | C – 2009 | $335 | 431.80 | $144,653.00 |
| Joseph Audal | L – 2010 | $290 | 3.00 | $870.00 |
| Dienna Ching | RIG – 2009 | $290 | 686.00 | $198,940.00 |

[1] In instances where professionals spent less than one hour working on the Debtors' cases during a month, Curtis has written off the time as a courtesy to the Debtors.
[2] C – Corporate; L – Litigation; RE – Real Estate; RIG – Restructuring and Insolvency Group; T – Tax.

| NAME OF PROFESSIONAL | DEPARTMENT AND YEAR ADMITTED[2] | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Joshua Holt | C – 2010 (5-26-10) | $290 | 253.70 | $73,573.00 |
| Chang Jung | C – 2010 (4-29-10) | $290 | 48.70 | $14,123.00 |
| Andrew Kaspersen | L – 2010 (3-24-10) | $290 | 2.30 | $667.00 |
| Matthew Lischin | RIG – 2010 | $290 | 461.70 | $133,893.00 |
| Edward McNamara | RIG – 2010 | $290 | 6.60 | $1,914.00 |
| Sara Sherrod | C – 2010 (4-12-10) | $290 | 4.50 | $1,305.00 |
| Alex Siegal | C – 2010 (8-4-10) | $290 | 3.50 | $1,015.00 |
| **TOTAL ASSOCIATES** | | | **4,042.10** | **$1,528,453.50** |
| | | | | |
| **PARAPROFESSIONALS** | | | | |
| Neal Goodman | L | $250 | 1.30 | $325.00 |
| Georgia Faust | RIG | $210 | 99.50 | $20,895.00 |
| Alejandro Montenegro | RIG | $210 | 41.90 | $8,799.00 |
| Laura Raposo | RIG | $210 | 2.90 | $609.00 |
| Andrew Russo | RIG | $210 | 34.30 | $7,203.00 |
| Jerome Tufte | RIG | $210 | 354.30 | $74,403.00 |
| Susan Kindya-Culley | L | $200 | 6.20 | $1,240.00 |
| Michael Malavarca | L | $190 | 22.60 | $4,294.00 |
| Olivia Dana | L | $180 | 22.10 | $3,978.00 |
| Patrick Romero | L | $165 | 5.10 | $841.50 |
| Herbert Tapia | L | $165 | 1.00 | $165.00 |
| **TOTAL PARAPROFESSIONALS** | | | **591.20** | **$122,752.50** |

| TOTALS | | | |
|---|---|---|---|
| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
| Partners | $756.81 | 2,192.50 | $1,659,309.00 |
| Counsel | $595.00 | 396.00 | $235,620.00 |
| Associates | $378.13 | 4,042.10 | $1,528,453.50 |
| Paraprofessionals | $207.63 | 591.20 | $122,752.50 |
| | | | |
| **TOTAL FEES REQUESTED** | | **7,221.80** | **$3,546,135.00** |

**EXHIBIT C**

**EXPENSE SUMMARY FOR CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
FOR THE FIFTH INTERIM COMPENSATION PERIOD FROM
FEBRUARY, 2010 TO MAY 31, 2010**

| DESCRIPTION | AMOUNT |
|---|---|
| Courier | $478.48 |
| Duplicating | $11,230.90 |
| Lexis/Westlaw | $85,231.47 |
| Litigation Printing | $2,152.95 |
| Meals Expense | $7,000.51 |
| Pacer | $1,465.92 |
| Search Fees | $104.52 |
| Postage | $0.00 |
| Telephone Audio Conference | $1,586.54 |
| Telephone Expense | $46.65 |
| Transportation Expense | $4,007.27 |
| Word Processing | $21,876.61 |
| **TOTAL:** | **$    135,181.82** |

8081328

## EXHIBIT D

## COMPENSATION BY WORK TASK CODE FOR SERVICES RENDERED BY CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR THE FIFTH INTERIM COMPENSATION PERIOD FEBRUARY 1, 2010 THROUGH FEBRUARY 28, 2010[1]

| WORK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| Matter No. 100 | Case Administration | 46.40 | $      12,922.00 |
| Matter No. 200 | General Corporate Matters | 16.50 | 9,011.50 |
| Matter No. 300 | Curtis Retention/Billing/Fee Application | 98.00 | 28,839.00 |
| Matter No. 400 | Swap Transactions/Terminations/Analysis | 77.40 | 42,501.50 |
| Matter No. 420 | JPMorgan Chase Matters | 577.10 | 345,186.00 |
| Matter No. 440 | Syncora Matters | 3.80 | 2,807.00 |
| Matter No. 450 | Fenway Matters | 22.90 | 7,334.00 |
| Matter No. 460 | Racers Matters | 40.00 | 17,764.50 |
| Matter No. 470 | Racers Matters | 5.20 | 2,048.00 |
| Matter No. 480 | Pyxis Matters | 5.40 | 3,041.00 |
| Matter No. 490 | Pine, Spruce and Verano Matters | 29.30 | 9,579.50 |
| Matter No. 510 | CEAGO Matters | 2.20 | 999.00 |
| Matter No. 520 | Citibank Matters | 570.40 | 265,256.00 |
| Matter No. 700 | Bankruptcy Litigation | 5.90 | 2,833.00 |
| **TOTAL** | | **1,500.50** | **$      750,122.00** |

---

[1] In March 2010, in accordance with the request of the Fee Committee, Curtis established a new set of standardized matter numbers.  Thus, the matter numbers and descriptions for February 2010 are discussed separately from the matter numbers and descriptions for the remainder of the Compensation Period.

### EXHIBIT E

## COMPENSATION BY WORK TASK CODE FOR SERVICES RENDERED BY CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR THE FIFTH INTERIM COMPENSATION PERIOD MARCH 1, 2010 TO MAY 31, 2010[1]

| WORK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| Matter No. 100 | General Case Administration | 88.70 | $22,618.50 |
| Matter No. 200 | General Case Strategy Meetings | 113.10 | $61,353.50 |
| Matter No. 300 | Project Monitoring/Court Calendar & Docket Maintenance | 84.70 | $26,792.00 |
| Matter No. 400 | Hearings and Court Communications | 112.80 | $35,531.00 |
| Matter No. 900 | Secured Creditors Issues/Meetings/Communications | 1.00 | $622.00 |
| Matter No. 1100 | LBI/SIPC Coordination and Issues | 16.60 | $4,814.00 |
| Matter No. 1400 | Employee/ERISA/Benefits/Pension Issues | 2.20 | $1,468.00 |
| Matter No. 2400 | Derivatives/Swap Agreement Issues | 344.00 | $167,553.50 |
| Matter No. 2500 | Loans/Investments | 849.00 | $393,310.50 |
| Matter No. 2600 | Domestic Bank and Related Regulatory Issues | 277.40 | $136,393.00 |
| Matter No. 2900 | Non-Derivative Automatic Stay/Safe Harbor Issues | 152.90 | $49,116.00 |
| Matter No. 3100 | Non-Derivative Executory Contracts/365 Issues | 24.90 | $14,844.00 |
| Matter No. 3400 | Plan of Reorganization/Plan Confirmation/Plan Implementation | 11.80 | $6,399.00 |
| Matter No. 3500 | Disclosure Statement/Solicitation/Voting | 36.00 | $20,886.50 |
| Matter No. 3600 | Non-Derivative Claims Reconciliation, Estimation, Litigation, and Alternative Dispute Resolution and Bar Date Issues | 127.00 | $41,899.00 |
| Matter No. 3700 | Other Bankruptcy Motions and Matters | 509.10 | $271,406.00 |
| Matter No. 3800 | Non-Derivative Adversary Proceedings Preparation and Litigation | 2,271.10 | $1,243,725.00 |
| Matter No. 4000 | 2004 Issues | 9.40 | $4,277.00 |

---

[1] See supra, Exhibit D, n. 1.

8081328

| Matter No. 4400 | Examiner Issues | 324.20 | $185,516.00 |
|---|---|---|---|
| Matter No. 4500 | Proprietary Retention/Billing/Fee Applications | 365.40 | $107,488.50 |
| **TOTAL** | | **5,721.30** | **$2,796,013.00** |

8081328