**Hearing Date: TBD (Prevailing Eastern Time)**
**Objection Deadline: TBD (Prevailing Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

**COVER SHEET FOR THE FIFTH INTERIM APPLICATION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC., INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

**NAME OF APPLICANT:** Houlihan Lokey Howard & Zukin Capital, Inc.

**TIME PERIOD:** February 1, 2010 through May 31, 2010

**DATE OF FINAL RETENTION:** December 17, 2008 (*nunc pro tunc* to September 17, 2008)

**ROLE IN THE CASE:** Investment Banker to the Official Committee of Unsecured Creditors

**CURRENT APPLICATION:**

Fees Incurred (Including 20% Holdback): $1,600,000.00

Expenses Incurred: $54,675.06

**PRIOR APPLICATIONS:[1]**

Fees Previously Requested: $7,186,666.66
Fees Previously Awarded: $6,643,333.33
Expenses Previously Requested: $383,251.03
Expenses Previously Awarded: $344,487.58

---

[1] The 10% holdback from the First Interim Period remains unawarded due to a lack of a final recommendation from the Fee Committee. Houlihan Lokey is working with the Debtor and the Fee Committee to resolve the issue. These figures include the current application and any outstanding fees and expenses that have not been heard by the Court.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

**FIFTH INTERIM APPLICATION OF HOULIHAN LOKEY**
**HOWARD & ZUKIN CAPITAL, INC., INVESTMENT BANKER TO THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF**
**COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED**
**FROM FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), as investment banker to the Official Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings, Inc., ("LBHI") et al., the debtors and debtors-in-possession in the above captioned chapter 11 cases (collectively, the "Debtors"), and together with their non-debtor affiliates ("Lehman"), hereby submits this Fifth application (the "Application"), pursuant to sections 328, 330 and 331 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and amended April 21, 1995 (together, the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, effective January 30, 1996 (the "U.S. Trustee

Guidelines"), and the Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement Of Expenses of Professionals, dated June 25, 2009 (the "Interim Compensation Order"), for the allowance of interim compensation for professional services rendered from February 1, 2010 through and including May 31, 2010 (the "Fifth Interim Compensation Period"), and for reimbursement of expenses incurred in connection with such services, and in support thereof respectfully represents as follows:

## BACKGROUND

1.      Bankruptcy Filing.   On September 15, 2008 (the "Petition Date"), and periodically thereafter, the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for procedural purposes and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

2.      Creditors' Committee.   On September 17, 2008, the United States Trustee appointed the Committee in the Chapter 11 Cases.

3.      SIPA Trustee.    On September 19, 2008, a proceeding ("SIPA Proceeding") was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"), a wholly owned subsidiary of LBHI and a registered broker dealer.   James W. Giddens, Esq. is the trustee appointed under SIPA (the "SIPA Trustee") and is administering LBI's estate.

4.      Examiner.   The United States Bankruptcy Court for the Southern District of New York approved the appointment of Anton R. Valukas as examiner (the "Examiner") in

the Chapter 11 Cases in the Order Approving the Appointment of Examiner dated January 20, 2009.

5.    <u>Fee Committee</u>.  The United States Bankruptcy Court for the Southern District of New York appointed a fee committee (the "Fee Committee") and approved a fee protocol in the Chapter 11 Cases on May 26, 2009 (Docket No. 3651).

6.    <u>Jurisdiction</u>.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 328, 330 and 331 of the Bankruptcy Code.

**RETENTION OF HOULIHAN LOKEY
AND SUMMARY OF PROFESSIONAL COMPENSATION
<u>AND REIMBURSEMENT OF EXPENSES REQUESTED</u>**

7.    On December 17, 2008, pursuant to the Final Order Under 11 U.S.C. §§ 328(a) and 1103 And Fed. R. Bankr. P. 2014 And S.D.N.Y. LBR 2014-1 Authorizing The Retention And Employment Of Houlihan, Lokey, Howard, & Zukin Capital, Inc., As Investment Banker For The Official Committee Of Unsecured Creditors Effective As Of September 17, 2008, and as amended on July 2, 2009 (Docket No. 4265), (the "Retention Order"), the Court authorized Houlihan Lokey's retention as an investment banker for the Committee in these cases. The Retention Order authorized Houlihan Lokey to receive compensation pursuant to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Guidelines, the U.S. Trustee Guidelines, and the local rules and orders of this Court.

8.    Houlihan Lokey prepared this application in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the

3

United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), and the Third Amended Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals dated June 25, 2009, (Docket No. 4165) (the "Interim Compensation Order", and collectively with the Local Guidelines and UST Guidelines, the "Guidelines"). Pursuant to the Local Guidelines, a certification regarding compliance with the Guidelines is attached hereto as Exhibit "A".

9.    Houlihan Lokey seeks allowance of the interim compensation for professional services rendered to the Committee in the aggregate amount of $1,600,000.00, of which $320,000.00 remains unpaid, and for reimbursement of expenses incurred in connection with the rendition of such services in the aggregate amount of $54,675.06[2] during the Fifth Interim Compensation Period, which is the adjusted amount of fees based on the guidelines provided by the Fee Committee at certain times during the case.  In total $320,000.00 remains unpaid.

(a)    In accordance with the Interim Compensation Order, Houlihan Lokey submitted monthly fee statements to the Debtors seeking interim compensation and reimbursement of expenses.  During the Fifth Interim Compensation Period, Houlihan Lokey submitted the following fee statements:

(i)    On March 31, 2010, pursuant to the Interim Compensation Order, Houlihan served its seventeenth fee statement for the period from February 1, 2010 through and including February 28, 2010 (the "Seventeenth Fee Statement").  The

---

[2]  Houlihan Lokey has included all actual and necessary expenses processed by its accounting department for the Fifth Interim Compensation Period.  However, some vendors do not send regular invoices.  As a result, it is possible that some expenses for the Fifth Interim Compensation Period will be processed in subsequent periods and that some expenses for prior periods will be included in this Fifth Interim Compensation Period.  Accordingly, Houlihan Lokey reserves the right to seek reimbursement of additional expenses that may have been incurred during the Fifth Interim Compensation Period, but which have not been accounted for in Houlihan Lokey's billing system as of the close of the Fifth Interim Compensation Period, and the right to seek allowance of all or a portion of the reductions taken from the application of the Fee Committee's guidelines and recommendations.

4

Seventeenth Fee Statement sought (i) an allowance of $400,000.00 as compensation for services rendered and (ii) the reimbursement of $19,030.81 (adjusted for the Fee Committee guidelines) in expenses. As of the date hereof, Houlihan Lokey has received a total of $339,030.81, which represents payment for (i) 80% of Houlihan Lokey's fees and (ii) 100% of the expenses incurred.

(ii)     On April 30, 2010, pursuant to the Interim Compensation Order, Houlihan served its eighteenth fee statement for the period from March 1, 2010 through and including March 31, 2010 (the "Eighteenth Fee Statement"). The Eighteenth Fee Statement sought (i) an allowance of $400,000.00 as compensation for services rendered and (ii) the reimbursement of $11,315.09 (adjusted for the Fee Committee guidelines) in expenses. As of the date hereof, Houlihan Lokey has received a total of $331,315.09, which represents payment for (i) 80% of Houlihan Lokey's fees and (ii) 100% of the expenses incurred.

(iii)    On June 1, 2010, pursuant to the Interim Compensation Order, Houlihan served its nineteenth fee statement for the period from April 1, 2010 through and including April 30, 2010 (the "Nineteenth Fee Statement"). The Nineteenth Fee Statement sought (i) an allowance of $400,000.00 as compensation for services rendered and (ii) the reimbursement of $13,704.71 (adjusted for the Fee Committee guidelines) in expenses. As of the date hereof, Houlihan Lokey has received a total of $333,704.71, which represents payment for (i) 80% of Houlihan Lokey's fees and (ii) 100% of the expenses incurred.

(iv)     On June 30, 2010, pursuant to the Interim Compensation Order, Houlihan served its twentieth fee statement for the period from May 1, 2010 through and including May 31, 2010 (the "Twentieth Fee Statement"). The Twentieth Fee Statement sought (i) an allowance of $400,000.00 as compensation for services rendered and (ii) the reimbursement of $10,624.45 (adjusted for the Fee Committee guidelines) in expenses. As of the date hereof, Houlihan Lokey has received a total of $330,624.45, which represents payment for (i) 80% of Houlihan Lokey's fees and (ii) 100% of the expenses incurred.

10.     Pursuant to Bankruptcy Rule 2016(a), there is no agreement or understanding between Houlihan Lokey and any other person for the sharing of compensation to be received for services rendered in these cases.

11.     Houlihan Lokey respectfully submits that (a) the services provided by Houlihan Lokey were necessary for, and beneficial to, the Committee, (b) Houlihan Lokey has satisfied the requirements of Sections 328(a) of the Bankruptcy Code as set forth in this Court's Order dated December 17, 2008 (Docket No. 2279), as amended on July 2, 2009 (Docket No. 4265), authorizing the retention and employment of Houlihan Lokey by the Committee *nunc pro tunc* to September 17, 2008 (the "Retention Order"), and (c) the requested compensation is appropriate based on the complexity, importance and nature of the services provided.

12.     Pursuant to the UST Guidelines and the Retention Order, Houlihan Lokey has maintained a schedule setting forth all Houlihan Lokey professionals who have performed services in these Chapter 11 Cases during the Fifth Interim Compensation Period, the capacities in which each such individual is employed by Houlihan Lokey and the aggregate number of hours expended by U.S. restructuring professionals in this matter, which totaled approximately 4,400 hours for the period from February 1, 2010 through and including May 31, 2010, pursuant to the Retention Order.

13.     Houlihan Lokey does not maintain, in the normal course of providing financial advisory and investment banking services to its clients, detailed written time records, and does not bill its clients based on the number of hours expended by its professionals. However, Houlihan Lokey has maintained written records in hour increments of the time expended by its U.S. restructuring professionals in the rendition of professional services to the Committee in the Fifth Interim Compensation Period in accordance with the terms of the

6

Guidelines.  Such time records were made in connection with the rendition of services by the person rendering such services.  Non-U.S. restructuring professionals and all non-restructuring professionals have maintained weekly task summaries during the Fifth Interim Compensation Period.  A schedule setting forth the number of hours expended by each of the U.S. restructuring professionals and the weekly tasks of the other professionals who rendered services to the Committee during the Fifth Interim Compensation Period is annexed hereto as Exhibit "B".[3]

14.    Annexed hereto as Exhibit "C" [3] is a schedule specifying the categories of expenses for which Houlihan Lokey is seeking reimbursement, the total amount and adjustments for each such expense category and detail of expenses by employee and category.

15.    Houlihan Lokey has not received any payments from the Debtors other than those sought by this Application and those set forth in Houlihan Lokey's retention application.

## SUMMARY OF SERVICES RENDERED

16.    Houlihan Lokey has been retained as investment banker to the Committee in respect of all of the Debtors in these unprecedented and complex cases because of Houlihan Lokey's extensive knowledge and reputation in financial restructuring, its familiarity with the issues involved in these cases and the Committee's belief that Houlihan Lokey possesses the requisite resources and is well qualified to represent the Committee in these cases. During the Fifth Interim Compensation Period, Houlihan Lokey rendered a broad range of professional services to the Committee in various areas, addressing critical issues faced by the Committee during these Chapter 11 Cases. The services that Houlihan Lokey has been required to perform and has performed have been substantial and necessary in the Chapter 11 Cases. Houlihan Lokey

---

[3] Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) the Debtors; (iv) counsel for the Debtors; and (v) the Fee Committee.

has worked extensively with other professionals retained by the Committee, the Debtors, and the

Debtors professionals (including but not limited to Alvarez & Marsal ("A&M") as advisor,

Lazard Freres & Co. LLC ("Lazard") as investment banker, and Weil Gothsal & Manges LLC

("Weil") as counsel), while at the same time Houlihan Lokey has attempted to perform its

services with the minimum amount of duplication with the Committee's and other advisors.

17.     The following summarizes the significant professional services rendered

by Houlihan Lokey during the Fifth Interim Compensation Period.

**Business Due Diligence & Analysis**

18.     Houlihan Lokey has conducted business due diligence and analysis on,

and/or had meetings or discussions with, the following key areas and/or individuals in these

Chapter 11 Cases, including, among others:

(a)     Investment Banking Division ("IBD") Sale Transaction (3100)[4]

(b)     LBI/SIPA/Examiner (1100)

(c)     Investment Management Division ("IMD") Spin-Out Transaction (3100)

(d)     Private Equity (2300)

(e)     Real Estate (2200)

(f)     Loan Book (2500)

(g)     Derivatives (2400)

(h)     International Operations and Other Foreign Assets (2700)

(i)     Lehman Banks (Bankhaus, LBCB, LBB, et al.) (2600)

(j)     Capital Structure/Cash Reports/Monthly Operating Report (1200/1800/1900/2100/2800)

---

[4] Figure in parentheses indicates the standardized Fee Committee code for hours.

8

19.     Houlihan Lokey's primary role has been to advise and represent the Committee in connection with the Debtors' vast, varied and complicated assets and operations. To do so, it is necessary for Houlihan to investigate and analyze the activities and assets of the Debtors and to report significant events and decisions to the Committee and its various subcommittees. In order to complete thorough due diligence processes and enable the Committee to be fully informed, along with the Committee's other professionals (including, but not limited to, FTI Consulting, Inc. ("FTI") as financial advisor and Milbank, Tweed, Hadley & McCloy, LLP ("Milbank") as counsel and Quinn Emanuel ("Quinn") as conflicts counsel), when necessary, Houlihan Lokey attended numerous in-person meetings and participated in conference calls with the Debtors and the Debtors' professionals across the areas listed above and met with governmental regulators when necessary. These meetings allowed Houlihan Lokey to become more familiar with the relevant issues concerning the Debtors and their assets and monitor and participate in the processes of the Debtors and the Debtors' professionals, including sale processes (e.g. IMD, private equity platforms, loan trading book transactions and derivative settlements). In conjunction with keeping the Committee informed, Houlihan Lokey prepared materials for distribution for weekly Committee and Committee co-chair calls, for regularly scheduled private equity, real estate, derivatives, loan book, and international subcommittee calls, and for monthly in-person Committee meetings. Houlihan Lokey researched underlying issues, compiled and analyzed data provided by the Debtors and the Debtors' professionals, and synthesized this information for the Committee and subcommittees. Based on all of the meetings, data analysis, and Houlihan Lokey's experience, Houlihan Lokey, along with the Committee's other advisors, continued to develop a preliminary overall plan strategy for the cases as well as specific strategies for each of the asset classes.

9

IBD Sale Transaction

20.    During the Fifth Interim Compensation Period, Houlihan Lokey along with the Committee's other professionals monitored certain IBD sale transaction related settlements between the SIPA Trustee, Barclays, LBI and the Depository Trust & Clearing Corporation (the "DTCC") (the "Barclays Settlement"), and continued to analyze the effectuation, terms and outcome of the IBD Transaction itself. In addition, certain members of the Houlihan Lokey team were deposed in regards to the IBD transaction, which took place in the Fifth Interim Compensation Period.

LBI/SIPA/Examiner

21.    Houlihan Lokey, along with the other Committee advisors, has met periodically with the SIPA Trustee and his advisors to discuss a myriad of issues, including the Barclay's sale and LBI motions.  Houlihan Lokey coordinated with the Committee's other professionals to provide appropriate updates to the Committee regarding the meetings.

IMD Spin-Out

22.    During the Fifth Interim Compensation Period, Houlihan Lokey participated in calls with representatives of IMD to monitor IMD's business operations and performance. Houlihan Lokey provided an update to the Committee on IMD's performance and financial projections in February 2010.

Private Equity

23.    During the Fifth Interim Compensation Period, Houlihan Lokey devoted substantial time to the private equity work stream. Houlihan Lokey's activities included analyzing and assessing the value of the underlying investments within the principal investment platform and evaluating potential dispositions and funding requests of assets and investment

platforms. In particular, Houlihan Lokey spent significant time to begin developing frameworks to manage the Estate's assets going forward, specifically discussing potential disposition strategies and situational factors for more illiquid positions. Houlihan Lokey also helped Lehman and their professionals proactively manage and reduce the outstanding unfunded commitments held by Lehman. Houlihan Lokey additionally evaluated certain proposed dispositions during this time period.

24.     Lehman has a significant number of principal investments and investments in third-party hedge and private equity funds. Houlihan Lokey has been actively involved in Lehman's decision to provide on-going funding to some of these investments and to sell certain positions.

Real Estate

25.     During the Fifth Interim Compensation Period, the Debtors and the Debtors' professionals focused on the US commercial real estate asset portfolio as this area continued to have immediate and substantial funding requests. Houlihan Lokey attended the weekly real estate meeting with the Debtors, the Debtors' professionals and FTI. In these meetings, the group discussed weekly fundings, key issues, the process for evaluating property disposition and long term funding decisions, and third-party motions filed against the Debtors and their related action plans. Additionally, the group continued discussing the overall strategy for the US commercial real estate, regarding long term hold and short term sale strategies by asset type, in order to maximize the return for the creditors and best utilize the Estate's expertise in certain areas.

26.     While individual assets were sold post-petition, Houlihan Lokey's main focus has continued to be on monitoring and analyzing investments that require significant

funding during the Fifth Interim Compensation Period and those that are being restructured. Houlihan Lokey, in coordination with FTI, reviewed deal memos and the underlying cash flows and met with the specific asset managers at the Debtors.  Houlihan Lokey presented fulsome analyses, summaries and recommendations to the real estate subcommittee for its approval for the Debtors to fund and/or restructure these investments.

Loan Book

27.     During the Fifth Interim Compensation Period, Houlihan Lokey continued to monitor Lehman's existing Loan Book positions, both un-pledged and pledged, including those held in special purpose vehicles, and has participated in regularly scheduled weekly meetings with the Debtors' professionals.  Houlihan Lokey continued its review and analysis of all major loan positions under the Debtors' management and, with the Debtors' advisors, updated internal loan facility ratings and marks.  Houlihan Lokey utilized internal valuation resources to examine the risk and recovery potential by borrower exposure.

28.     In addition to its ongoing reviews, Houlihan Lokey continued a comprehensive analysis of the Loan Book portfolio of assets and maturity profile to formulate, with the Debtors' advisors, an overall loan management and disposition strategy.  Analysis included Houlihan Lokey's consideration and estimation of the remaining life of the case and underlying credit quality of individual borrowers.  For each position, Houlihan Lokey performed credit analysis, worked with Estate employees, and presented final results to the Loan Book subcommittee for their consideration.

29.     Houlihan Lokey continued to monitor and update positions included in the loan book "watch list", which was initially prepared in the First Interim Compensation Period to track higher-risk loans.  As market conditions evolved, certain positions on the "watch list" were

reviewed for sale. In cases where borrowers had defaulted or proposed restructurings or amendments and waivers, Houlihan Lokey closely reviewed each situation – providing the Debtors' professionals with the Loan Book subcommittee's perspective regarding each transaction. In each case, Houlihan Lokey prepared updates, analysis, and recommendations for the Loan Book subcommittee.

30.    Houlihan Lokey and the Debtors' professionals continued to track open trades and unfunded commitments. For open trades, Houlihan Lokey conducted economic analysis by counterparty and has been involved throughout the entire trade negotiation process, frequently providing feedback and perspective to the Debtors' professionals regarding transaction strategies and potential outcomes, reviewing final settlements, and elevating issues to the Loan Book subcommittee as necessary. Houlihan Lokey worked with the Debtors' professionals and Milbank to analyze and resolve open trade items that resulted in conflicts and court motions.

31.    During the Fifth Interim Compensation Period, Houlihan Lokey continued to monitor the process of eliminating unfunded loan commitments, which has reduced risk exposure, outstanding claims, and improved equity position for the non-Debtor regulated banks.

Derivatives

32.    During the Fifth Interim Compensation Period, Houlihan Lokey focused on asset recovery and value maximization of un-terminated "in-the-money" derivative positions. This effort included either the assignment, mutually negotiated termination, or hedging of receivables, depending on each situation. Important milestones in the Fifth Interim Compensation Period included implementing additional commodity, credit, and interest rate

13

hedges under the existing hedging protocol, the successful negotiation of SPV derivative settlements, continued efforts to facilitate the settlement of both in-the-money derivatives positions and derivatives claims filed prior to the bar date, and the continued collection of cash payments on both settled and live transactions.

33.    Houlihan Lokey also worked with the FTI, Milbank, Weil, and the Debtors on court orders to ensure continued progress is made on the winding down of the derivatives book.  This included the development and implementation of a retention plan for key derivative employees and the mediation order.  The derivatives incentive plan accepted by the court in December 2009, will allow the Estate to retain individuals with key talents required to value and negotiate settlements on the derivatives book.

34.    The mediation order accepted by the court in November 2009, allows the debtors additional avenues to pursue settlements outside of the bankruptcy court at a lower cost for the Estate and counterparties.  Prior to serving mediation notices, Houlihan Lokey, in coordination with Milbank and FTI, reviewed draft mediation statements, vetted valuation and legal issues with the Debtors and Weil, and  reported settlement proposals to the UCC to obtain UCC consent on final settlements, where necessary.

35.    Houlihan Lokey participated in the daily valuation and settlement discussions of derivative positions with the Debtor and other Committee professionals.  Given the volume of transactions, the evaluation of proposed settlement terms has been divided between Houlihan Lokey and FTI who each subsequently present their respective settlement proposals to the Derivatives subcommittee or the Committee for approval, as appropriate.  Houlihan Lokey has focused on the largest, open receivable positions and complex SPV related

14

positions to-date and has produced analyses, including calculation of settlement values, which supported counterparty negotiations.

36.    In particular, Houlihan Lokey provided invaluable support to the Debtors when reviewing derivatives where the counterparties are SPVs (such as credit default swaps of asset back securities or collateralized loan obligations issuers, mortgage trusts, etc.).   Houlihan Lokey was involved in developing and executing the appropriate strategy through each stage of the process, which included either a negotiated settlement or a novation, and in some cases litigation.   In each instance, Houlihan Lokey played an integral role in negotiating settlements and novation agreements and determining the value of trades.

37.    Houlihan Lokey also became involved in the oversight of a portfolio of notes (par value of €100 million) issued by European corporations.  These notes were primarily managed by a Lehman affiliate with the input of Houlihan Lokey as the Committee's investment banking advisor.  As of the end of the Fifth Interim Compensation Period, Houlihan Lokey is still working with the Lehman affiliate to develop an appropriate liquidation strategy for these notes.

International Operations and Other Foreign Assets

38.    During the Fifth Interim Compensation Period, Houlihan Lokey continued to coordinate with A&M on foreign proceedings and provided updates to the Committee, as appropriate. Additionally, Houlihan Lokey coordinated with A&M to review and comment on transactions involving Lehman Brothers' foreign affiliates that have remained under the control of LBHI.   These transactions included whole-entity and asset sales and recapitalizations, amongst other intercompany affairs.

15

Lehman Banks

39.     For the US banks, Lehman Brothers Commercial Bank ("LBCB") and Lehman Brothers Bank ("LBB"), Houlihan Lokey continued its integral role in evaluating liquidity and bank viability for the Committee.  Houlihan Lokey monitored each bank's capital ratio and financial health and provided updates to the Committee and bank regulatory subcommittee.

40.     During the Fifth Interim Compensation Period, Houlihan Lokey continued to assist the Debtors' professionals and bank management in developing strategies to deal with government regulators from the Office of Thrift Supervision (the "OTS") and the Federal Deposit Insurance Corporation (the "FDIC").

Liquidity/Capital Structure/Monthly Operating Reports

41.     During the Fifth Interim Compensation Period, Houlihan Lokey analyzed cash distributions and receipts pertaining to each of the major asset work streams.  Houlihan Lokey also reviewed and commented on the monthly operating report, and the 13-week cash flow forecast provided by the Debtors and their advisors and responded to numerous inquiries from public bondholders and the ad hoc committee regarding operating reports filed by the Debtor with the Court.

42.     Houlihan Lokey also worked extensively with Alvarez & Marsal and legacy Estate personnel to manage the growing cash balances of the various Debtors.  Houlihan Lokey became involved in the development and oversight of the cash investment portfolio, expanding the universe of Estate approved investments to enhance the returns of invested cash within the guidelines of the Bankruptcy Code.

**Plan Development** (3400)

16

43.     During the Fifth Interim Compensation Period, Houlihan Lokey coordinated with the Committee's other professionals to continue developing a list of issues associated with the development of the Debtors' plan of reorganization, including evaluating the Debtors' "LAMCO" concept and alternative plan concepts and considering issues between the Debtors and foreign jurisdictions, among other complicating factors. Houlihan Lokey also worked with the Debtors in their development of the initial plan of reorganization in March 2010 and associated disclosure statement filed in April 2010. After the filing of these documents, Houlihan Lokey fielded numerous calls from creditors and other interested parties.

44.     During the Fifth Interim Compensation Period, Houlihan Lokey continued to update the model based on additional information received (namely, the filed plan of reorganization and disclosure statement) to simulate recovery rates for creditors of the Lehman Brothers affiliated entities through a variety of scenarios. The model included data on assets, third party and intercompany liabilities and equity, and guarantees, amongst other details. Numerous model simulations and observations were presented to the Committee for discussion. Assumptions and methods were continued to be shared with the Debtors and the Debtors' advisors to assist them in developing and updating their own analysis.

45.     With respect to LAMCO, Houlihan Lokey continued to work directly with the Debtors and the Debtors' advisors on the contemplated structure and the associated sale process of a minority stake to a third party. Houlihan Lokey provided insight and recommendations on the potential investors, and the sale process itself, to the Debtors and the Debtors' advisors along with the Committee. To continue to ensure the Committee was fully informed, Houlihan Lokey presented updates to the Committee on a number of occasions.

**Committee and Advisor Interaction** (200/700/800)

46.    In connection with weekly Committee, subcommittee, and co-chair calls during the Fifth Interim Compensation Period, Houlihan Lokey drafted multiple presentations with analyses and summaries of the work streams described above in order to keep the Committee and subcommittees well-informed and apprised of situations. Houlihan Lokey coordinated with the Committee's other advisors via calls and meetings. In addition to the full Committee calls, each of the subcommittees continued to have weekly conference calls to discuss asset specific issues and decision points.

**Case Administration and Other** (100/3800/3900/4000/4100/4200/4300/4400/4500/4600/4700)

47.    Houlihan Lokey spent significant time developing its fourth interim fee application, preparing the monthly reimbursement statements and reconciling expense issues with the Fee Committee. While Houlihan Lokey does not generally keep time records, Houlihan Lokey's retention order stipulated, after the order date of December 17, 2008, that all US restructuring personnel keep hourly time and task records.  The tracking and compilation of hours occurs monthly.  For all other Houlihan Lokey employees associated with this case, weekly task summaries are required on an individual basis, after the order date of December 17, 2008.

48.    Houlihan Lokey has also provided its input to the Committee's advisors, the Debtors, and the Debtors' advisors regarding litigation issues, and certain members of Houlihan Lokey have been deposed. Additionally, Houlihan Lokey reviewed the Examiner's report and fielded numerous calls from creditors and other interested parties.

* * *

18

49.    The professional services performed by Houlihan Lokey were necessary and appropriate to the administration of the Chapter 11 Cases and were in the best interests of the Committee and other parties in interest.  Compensation for the services described above is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.

## ACTUAL AND NECESSARY DISBURSEMENTS OF HOULIHAN LOKEY

50.    Houlihan Lokey has disbursed $54,675.06 as expenses incurred in providing professional services during the Fifth Interim Compensation Period, which has been adjusted per the Fee Committee guidelines.  It is Houlihan Lokey's policy to charge its clients for all actual and necessary expenses incurred in connection with the engagement.  The expenses charged to clients include, among other things, telephone and telecopier charges, regular mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," and computerized research.  In accordance with the applicable factors enumerated in the Bankruptcy Code, it is respectfully submitted that the amount requested by Houlihan Lokey is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.

51.    In addition, because the location of the Debtors' businesses in relation to Houlihan Lokey's offices, long distance telephone calls were often required.  In some instances, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services.  These disbursements are not included in Houlihan Lokey's overhead.  Houlihan Lokey has made every effort to minimize its disbursements in these

19

cases.    The actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Committee.

### THE REQUESTED COMPENSATION SHOULD BE ALLOWED

52.    Houlihan Lokey respectfully submits that the services for which it seeks compensation in the Application were necessary for, and beneficial to, the Committee and that Houlihan Lokey has satisfied the requirements of sections 328(a), 330(a), and 331 of the Bankruptcy Code as set forth in the Retention Order.    Houlihan Lokey's requested compensation is appropriate based on the complexity, importance and nature of the services provided, and is consistent with the customary compensation charged by comparable professionals both in and out of the bankruptcy context.    Houlihan Lokey therefore respectfully requests that the Court grant the relief requested in this Application.

### NO DUPLICATION OF SERVICE

53.    Houlihan Lokey has developed a cooperative working relationship on behalf of the Committee with Milbank as the Committee's counsel, Quinn as the Committee's conflicts counsel and the Committee's financial advisor, FTI.    Because each firm has been aware of the others' role and services to the Committee, Houlihan Lokey believes that no unnecessary duplication of services has occurred.

### NO PRIOR REQUEST

54.    No previous motion for the relief sought herein has been made to this or any other court.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

20

## <u>CONCLUSION</u>

WHEREFORE, Houlihan Lokey respectfully requests the Court enter an order conforming to the amounts set forth in Fee Schedule A(1) attached hereto as Exhibit "D" (a) allowing Houlihan Lokey (i) an interim allowance of compensation for professional services rendered during the Fifth Interim Compensation Period in the amount of $1,600,00.00, of which $320,000.00 is unpaid, and reimbursement for adjusted actual and necessary expenses Houlihan Lokey incurred during the Fifth Interim Compensation Period in the amount of $54,675.06, for a total award of $1,654,675.06; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice of Houlihan Lokey's right to seek additional compensation for expenses incurred during the Fifth Interim Compensation Period, which were not processed at the time of this Application and for those expenses reduced due to the Fee Committee guidelines and recommendations; and (iii) such other and further relief as is just and proper, and (b) authorizing and directing the Debtors to pay Houlihan Lokey $320,000.00, the difference between (i) the $1,654,675.06 and (ii) $1,334,675.06, which is the total amount the Debtors have previously paid Houlihan Lokey pursuant to the Interim Compensation Order for services rendered and expenses incurred.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

Dated: New York, New York
       August 16, 2010          HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.
                                Investment Banker to the Official Committee of Unsecured
                                Creditors


By: _____
      P. Eric Siegert
      Managing Director

245 Park Avenue, 20th Floor
New York, New York  10167
Telephone:      (212) 497-4100
Facsimile:      (212) 661-1070

**EXHIBIT A**

**SIEGERT CERTIFICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | |
| | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

**CERTIFICATION UNDER GUIDELINES FOR FEES AND
DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF
FIFTH APPLICATION OF
HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.,
FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**

I, P. Eric Siegert, hereby certify that:

1.     I am a senior managing director with the applicant firm, Houlihan Lokey Howard & Zukin Capital, Inc., ("Houlihan Lokey"), as investment banker for the Official Committee of Unsecured Creditors (the "Committee") for the jointly administered chapter 11 cases of Lehman Brothers Holdings Inc., et. al. (together, the "Debtors"), in respect of compliance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted January 30, 1996 (the "UST Guidelines") and the third amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (Docket No. 4165) (the "Interim Compensation Order," and collectively with the Amended Local Guidelines and UST Guidelines, the "Guidelines").

2.      This certification is made in respect of Houlihan Lokey's application, dated August 16, 2010, (the "Application"), for interim compensation and reimbursement of expenses for the period commencing February 1, 2010, through and including May 31, 2010, (the "Fifth Interim Compensation Period") in accordance with the Guidelines.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

(a)     I have read the application;

(b)     To the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

(c)     The Application respectfully requests that this Court enter an Order awarding Houlihan Lokey $1,600,000.00 as compensation for services rendered during the Fifth Interim Compensation Period and $54,675.06 as reimbursement of reasonable actual and necessary expenses incurred in connection with such services;

(d)     The fees and disbursement requested in the Application are billed in accordance with practices customarily employed by Houlihan Lokey and generally accepted by Houlihan Lokey's clients; and

(e)     In providing a reimbursable service, Houlihan Lokey does not make a profit on that service, whether the service is performed by Houlihan Lokey in-house or through a third party.

4.      In respect of section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Houlihan Lokey has provided, on a monthly basis, statements of Houlihan Lokey's fees and disbursements accrued during the previous month, in accordance with the Interim Compensation Order (as defined in the Application), to the Debtors, the Debtors' counsel, the Committee's counsel, the Office of the United States Trustee for the Southern District of New York, and the Fee Committee (as defined in the Application).

2

5.    In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the Debtors' counsel, the United States Trustee for the Southern District of New York and the Committee are each being provided a copy of the Application.

Dated: New York, New York
      August 16, 2010

Respectfully submitted,

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.
Investment Banker to the Official Committee of Unsecured Creditors

By: _____
    P. Eric Siegert
    Senior Managing Director

245 Park Avenue, 20th Floor
New York, New York  10167
Telephone:    (212) 497-4100
Facsimile:    (212) 661-1070

**EXHIBIT B**

Time Entry Records[1]

---

[1] Due to the volume of the time and expense records, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) the Debtors; (iv) counsel for the Debtors; and (v) the members of the Fee Committee.

**EXHIBIT C**

Expenses[1]

---

[1] Due to the volume of the time and expense records, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) the Debtors; (iv) counsel for the Debtors; and (v) the members of the Fee Committee.

**EXHIBIT D**

SCHEDULE A(1)

CASE NO.:  08-13555 (JMP) (Jointly Administered)

CASE NAME:  IN RE LEHMAN BROTHERS HOLDINGS INC., et al.

| FIFTH INTERIM FEE PERIOD FEBRUARY 1, 2010 – MAY 31, 2010 | | | | | | | |
|---|---|---|---|---|---|---|---|
| **APPLICANT** | **DATE/DOCKET NO. OF APPLICATION** | **FEES REQUESTED** | **FEES ALLOWED (INCLUDING FEES HELD BACK)** | **FEES HELD BACK** | **FEES PAYABLE BY DEBTOR** | **EXPENSES REQUESTED** | **EXPENSES ALLOWED AND PAYABLE BY DEBTOR** |
| Houlihan Lokey Howard & Zukin Capital, Inc. | 6/14/2010 [X] | $1,600,000.00 | $1,600,000.00 | $320,000.00 [20% of $1,600,000.00] | $320,000.00 [20% of $1,600,000.00] | $54,675.06 | $54,675.06 |

| FOURTH INTERIM FEE PERIOD OCTOBER 1, 2009 – JANUARY 31, 2010 | | | | | | | |
|---|---|---|---|---|---|---|---|
| **APPLICANT** | **DATE/DOCKET NO. OF APPLICATION** | **FEES REQUESTED** | **FEES ALLOWED (INCLUDING FEES HELD BACK)** | **FEES HELD BACK** | **FEES PAYABLE BY DEBTOR** | **EXPENSES REQUESTED** | **EXPENSES ALLOWED AND PAYABLE BY DEBTOR** |
| Houlihan Lokey Howard & Zukin Capital, Inc. | 4/14/2010 Docket No. 8328 | $1,600,000.00 | $1,600,000.00 | $320,000.00 [20% of $1,600,000.00] | $320,000.00 [20% of $1,600,000.00] | $56,067.42 | $56,067.42[1] |

_____

[1] The Fee Committee has not filed its final recommendations on the Fourth Interim Fee Period and thus this figure has not been adjusted.

1

**FEE SCHEDULE A(1)**                                                      **SO ORDERED:** _____

| THIRD INTERIM FEE PERIOD JUNE 1, 2009 – SEPTEMBER 30, 2009 | | | | | | | |
|---|---|---|---|---|---|---|---|
| APPLICANT | DATE/DOCKET NO. OF APPLICATION | FEES REQUESTED | FEES ALLOWED (INCLUDING FEES HELD BACK) | FEES HELD BACK | FEES PAYABLE BY DEBTOR | EXPENSES REQUESTED | EXPENSES ALLOWED AND PAYABLE BY DEBTOR |
| Houlihan Lokey Howard & Zukin Capital, Inc. | 12/14/2009 Docket No. 6194 | $1,600,000.00 | $1,600,000.00 | $0 | $0 | $70,239.57 | $48,378.32 |

| SECOND INTERIM FEE PERIOD FEBRUARY 1, 2009 – MAY 31, 2009 | | | | | | | |
|---|---|---|---|---|---|---|---|
| APPLICANT | DATE/DOCKET NO. OF APPLICATION | FEES REQUESTED | FEES ALLOWED (INCLUDING FEES HELD BACK) | FEES HELD BACK | FEES PAYABLE BY DEBTOR | EXPENSES REQUESTED | EXPENSES ALLOWED AND PAYABLE BY DEBTOR |
| Houlihan Lokey Howard & Zukin Capital, Inc. | 8/14/2009 Docket No. 4816 | $1,753,333.33 | $1,753,333.33 | $0 | $0 | $99,265.60[2] | $82,363.40 |

---

[2] This figure is the adjusted amount of expenses billed and paid of $103,099.11 less the less the expense adjustments of $3,833.51 per the guidelines of the Fee Committee.

2

**FEE SCHEDULE A(1)**                                    SO ORDERED: _____

| FIRST INTERIM FEE PERIOD SEPTEMBER 17, 2008 – JANUARY 31, 2009 | | | | | | | |
|---|---|---|---|---|---|---|---|
| **APPLICANT** | **DATE/DOCKET NO. OF APPLICATION** | **FEES REQUESTED** | **FEES ALLOWED (INCLUDING FEES HELD BACK)** | **FEES HELD BACK** | **FEES PAYABLE BY DEBTOR** | **EXPENSES REQUESTED** | **EXPENSES ALLOWED AND PAYABLE BY DEBTOR** |
| Houlihan Lokey Howard & Zukin Capital, Inc. | 4/10/2009 Docket No. 3339 | $2,233,333.33 | $2,233,33.33 | $223,333.33[3] [10% of $2,233,333.33] | $223,333.33[2] [10% of $2,233,333.33] | $159,070.80[2] | $159,070.80[2] |

---

[3] This figure does not yet account for any recommendations made by the LBHI Fee Committee in any of its filed reports for reduction of fees or expenses.

3

**FEE SCHEDULE A(1)**                    SO ORDERED: _____