QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official
Committee Of Unsecured Creditors of
Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                                    :    Chapter 11 Case
                                          :
LEHMAN BROTHERS HOLDINGS INC.,            :    No. 08-13555 (JMP)
et al.                                    :
                                          :    Jointly Administered
                          Debtors.        :
-------------------------------------------------------- x

## SUMMARY SHEET

| | |
|---|---|
| **Name and Role of Applicant** | Quinn Emanuel Urquhart & Sullivan, LLP |
| **Authorized to Provide professional services to:** | The Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. |
| **Date of Retention** | October 21, 2008, (*Nunc pro tunc* to September 15, 2008) |
| **Compensation Period** | February 1, 2010 through May 31, 2010 |
| **Fees Incurred for Counsel** | $3,480,537.09 |
| **Expenses Incurred** | $281,095.21 |
| **Prior Interim Applications Filed** | This is the Fifth Interim Fee Application Filed by Quinn Emanuel Urquhart & Sullivan, LLP |
| **Blended Hourly Rate for Fees Incurred during Compensation Period** | $538.91 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period (Attorneys Only)** | $545.07 |

**Schedule 1**

**Hours, Rate and Fees for Services Rendered during the Fifth Interim Fee Period[1].**

| TIMEKEEPER | INITIALS | TITLE | RATE | TOTALS HOURS | TOTAL FEES |
|---|---|---|---|---|---|
| John B. Quinn | JBQ | Partner | $950 | 64.30 | $61,085.00 |
| Daniel P. Cunningham | DPC | Partner | $950 | 98.60 | $93,670.00 |
| Richard I. Werder, Jr. | RIW | Partner | $950 | 77.90 | $74,005.00 |
| Sue Prevezer QC | SP | Partner | $950 | 2.10 | $1,995.00 |
| Andrew Rossman | AJR | Partner | $820 | 87.40 | $71,668.00 |
| Susheel Kirpalani | SK2 | Partner | $820 | 312.70 | $256,414.00 |
| Kevin S. Reed | KSR | Partner | $775 | 19.80 | $15,345.00 |
| James C. Tecce | JCT | Partner | $775 | 881.00 | $682,775.00 |
| Eric D. Winston | EDW | Partner | $740 | 177.20 | $131,128.00 |
| Erica Taggart | ET | Partner | $660 | 444.00 | $293,040.00 |
| Joseph G. Minias | JGM | Partner | $660 | 68.10 | $44,946.00 |
| John H. Chun | JHC | Counsel | $650 | 6.10 | $3,965.00 |
| Scott C. Shelley | SCS | Counsel | $650 | 76.20 | $49,530.00 |
| Eric M. Kay | EMK | Counsel | $650 | 638.40 | $414,960.00 |
| Matthew Bunting | MJB | Associate | $530 | 4.30 | $2,279.00 |
| Stan Karas | SK2 | Associate | $455 | 41.80 | $19,019.00 |
| Christopher D. Kercher | CDK | Associate | $430 | 83.20 | $35,776.00 |
| Robert K. Dakis | RKD | Associate | $430 | 790.10 | $339,743.00 |
| Tyler G. Whitmer | TGW | Associate | $400 | 655.20 | $262,080.00 |
| Marc A. Palladino | MAP | Associate | $400 | 306.30 | $122,520.00 |
| Lance Yang | LYX | Associate | $380 | 1.60 | $608.00 |
| Muireann Dennehy | MD3 | Associate | $380 | 2.80 | $1,064.00 |
| Olga M. Urbieta | OMU | Associate | $380 | 530.00 | $201,400.00 |
| James Shaerf | JS3 | Associate | $380 | 15.70 | $5,966.00 |
| Kathryn K. Erno | KEX | Associate | $370 | 5.50 | $2,035.00 |
| Justin Brownstone | JBX | Associate | $370 | 45.10 | $16,687.00 |
| Cash Rowden | CR | Attorney | $320 | 7.40 | $2,368.00 |
| John Volpe | JV1 | Attorney | $320 | 57.20 | $18,304.00 |
| SoYun Roe | SR1 | Attorney | $320 | 481.00 | $153,920.00 |
| Stephen Chiu | SC1 | Attorney | $320 | 31.00 | $9,920.00 |
| Christopher Clark | CC4 | Attorney | $320 | 494.40 | $158,208.00 |
| Jeffrey L. Benner | JLB | Law Clerk | $295 | 18.70 | $5,516.50 |
| Alexander Edelson | AE | Law Clerk | $275 | 1.90 | $522.50 |
| Roy Nelson | RN | Managing Clerk | $280 | 7.40 | $2,072.00 |
| Shahreen Mehjabeen | SXM | Paralegal | $250 | 2.20 | $550.00 |
| Joan Collopy | JC | Paralegal | $250 | 4.20 | $1,050.00 |
| Martine Lacroix | ML4 | Paralegal | $250 | 5.90 | $1,475.00 |

---

[1]    The titles and hourly rates list above are reflective of the current status, and may have changed during the interim period.

| TIMEKEEPER | INITIALS | TITLE | RATE | TOTALS HOURS | TOTAL FEES |
|---|---|---|---|---|---|
| Dave Scholz | DS4 | Paralegal | $250 | 5.20 | $1,300.00 |
| Sonal Pandya | SP3 | Paralegal | $250 | 0.50 | $125.00 |
| Vince Mesa | VM | Lit Support | $250 | 0.90 | $225.00 |
| Danny Rose | DR | Lit Support | $150 | 7.00 | $1,050.00 |
| Raul Vasquez | RV2 | Lit Support | $150 | 6.30 | $945.00 |
| Joe Liao | JL9 | Lit Support | $150 | 3.70 | $555.00 |
| Linda Jovel | LJ | Lit Support | $150 | 4.00 | $600.00 |
| Michael Lee | ML5 | Lit Support | $150 | 0.70 | $105.00 |
| Jacob Cisneros | JC2 | Lit Support | $150 | 5.60 | $840.00 |
| Alan Davis | AD1 | Lit Support | $150 | 0.40 | $60.00 |
| Arthur Daye | AD | Lit Support | $150 | 2.20 | $330.00 |
| Kanstantsin Dziamentsy | KD | Lit Support | $150 | 2.80 | $420.00 |
| Hilary Quatinetz | HQ | Lit Support | $150 | 38.30 | $5,745.00 |
| **SUBTOTAL:** | | | | 6,624.30 | $3,569,909.00 |
| | | Reserved Fee Application Deduction Amount | | | ($89,371.91)[2] |
| **TOTAL** | | | | 6,624.30 | $3,480,537.09 |

---

[2]    Quinn Emanuel's actual fees incurred for the preparation of fee applications are $125,071.00.  Consistent with the Fee Committee Guidelines, Quinn Emanuel is only seeking 1% of the total fees charged for this period and not the actual fees associated for the preparation of fee applications.  Quinn Emanuel reserves the right to seek the remaining $89,371.91 at a later date.

**Schedule 2**

## Hours and Fees for the Fifth Interim Compensation Period As Rendered By Category

| DESCRIPTION[3] | TOTAL HOURS | TOTALS FEES |
|---|---|---|
| LEH01  Case Management/Calendar Maintenance | 15.20 | $4,876.00 |
| LEH03  Claims Analysis/Objections | 45.70 | $20,471.50 |
| LEH05  Court Hearings | 0.10 | $77.50 |
| LEH06  Creditor Communication | 2.80 | $2,082.50 |
| LEH07  Creditors' Committee Meetings | 22.90 | $15,742.00 |
| LEH11  Litigation/Potential Litigation | 3.90 | $3,198.00 |
| LEH12  Non-Working Travel | 61.50 | $38,563.00 |
| LEH13  Other Conflict Roles | 0.40 | $310.00 |
| LEH16  Quinn Emanuel Fee Applications | 45.50 | $14,894.50 |
| LEH20  United Kingdom & European Matters | 21.70 | $10,023.00 |
| LEH21  Derivatives | 122.10 | $95,083.50 |
| LEH22  Barclays' Transaction Investigation and Litigation | 1197.90 | $574,538.00 |
| LEH23  Special Litigation | 90.90 | $55,353.50 |
| 0100   General Case Administration | 28.40 | $9,184.00 |
| 0400   Hearings and Court Communications | 535.00 | $329,302.50 |
| 0500   Non-Working Travel | 130.00 | $76,974.00 |
| 0800   Unsecured Creditors Issues/Meetings/Communication | 56.60 | $43,392.50 |
| 2500   Derivatives/SWAP Agreement Issues | 301.30 | $192,340.00 |
| 3700   Non-Derivative Claims Reconciliation Estimations | 9.50 | $7,362.50 |
| 3900   Non-Derivative Adversary Proceedings | 3611.40 | $1,951,230.00 |
| 4100   2004 Issues | 12.50 | $8,250.00 |
| 4500   Examiner Issues | 4.80 | $5,153.50 |
| 4600   Firm's Own Billing/Fee Applications | 300.90 | $110,176.50 |
| 4700   Firm's Own Retention Issues | 3.30 | $1,330.50 |
| **SUBTOTAL** | **6624.30** | **$3,569,909.00** |
| Reserved Fee Application Deduction Amount | | ($89,371.91)[4] |
| **TOTAL** | **6624.30** | **$3,480,537.09** |

---

[3]    On March 1, 2010, Quinn Emanuel adopted the Fee Committee's uniform categories for recording time.

[4]    Quinn Emanuel's actual fees incurred for the preparation of fee applications are $125,071.00.  Consistent with the Fee Committee Guidelines, Quinn Emanuel is only seeking 1% of the total fees charged for this period and not the actual fees associated for the preparation of fee applications.  Quinn Emanuel reserves the right to seek the remaining $89,371.91 at a later date.

**Schedule 3**

| DESCRIPTION | TOTAL |
|---|---:|
| Air travel | $4,712.46 |
| Attorney Services | $1,630.00 |
| Color printing @$0.50/ppg | $726.50 |
| Database Licensing Fees | $2,325.57 |
| Deposition transcript | $64,357.45 |
| Deposition preparation meals | $717.30 |
| Digital Prints | $8,521.14 |
| Document Reproduction @0.10 per page | $24,903.30 |
| Express mail | $3,119.92 |
| Filing fees – court fee for UK consent order (fee convert from pound sterling to USD) | $62.11 |
| Hosting Fees | $9,420.00 |
| Hotel (for California trial attorneys during Barclays trial for two weeks) | $27,661.99 |
| Image Endorsement | $276.50 |
| Local travel (e.g. car service, taxi) | $1,606.08 |
| Local Telephone | $3.00 |
| Meals | $2,506.70 |
| Media Create/Dup (creation of CD's & DVD) | $2,072.50 |
| Messanger | $1,661.40 |
| Miscellaneous credit for airfare | $-2,391.60 |
| Miscellaneous (Office Supplies purchased from outside vendor) | $124.03 |
| OCR | $3.12 |
| Off-site document services (e.g., at cost billing - binding, binders, tabs and copying performed by outside vendors) | $10,009.26 |
| Online Research | $24,966.76 |
| Other Lit Support Services (processing native files) | $2,665.05 |
| Outside velobind | $16.00 |
| Outsourcing Expense | $80.30 |
| Professional Services | $12,137.42 |
| Postage | $77.78 |
| Parking | $528.00 |
| Scanning | $341.40 |
| Telecopier | $30.48 |
| Telephone | $747.54 |
| Travel | $13,557.36 |
| Trial Materials | $8.98 |
| U.K. Court Ordered Litigation reimbursement (fee convert from pound sterling to U.S. dollar)[5] | $50,878.35 |
| Video deposition | $8,180.00 |
| Volume Printing (@ $0.07 per page) | $2,851.06 |
| **TOTAL** | **$281,095.21** |

---

[5]   As part of a settlement of a discovery dispute in the United Kingdom, and consistent with the law of the United Kingdom and consent orders, the fees of Fulbright & Jaworski, International, LLP and the Financial Services Authority incurred in connection with the production of documents relating to the letters of request in the Barclays litigation as well as the preparation of affidavits relating to the letters of request issued to the FSA and PwC will be reimbursed.  Both the documents and affidavits have been used in the prosecution of the Barclays Rule 60(b) litigation and are thus, necessary and proper.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
In re:                                        :    Chapter 11 Case
                                              :
LEHMAN BROTHERS HOLDINGS INC.,                :    No. 08-13555 (JMP)
<u>et al.</u>                                 :
                                              :    Jointly Administered
                             Debtors.         :
---------------------------------------------------------- x

### FIFTH INTERIM APPLICATION OF QUINN EMANUEL URQUHART & SULLIVAN, LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND EXPENSES INCURRED DURING THE PERIOD <u>FEBRUARY 1, 2010 THROUGH MAY 31, 2010</u>

Quinn Emanuel Urquhart & Sullivan, LLP ("<u>Quinn Emanuel</u>"), Special Counsel to

the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., <u>et al.</u> (the

"<u>Committee</u>"), by this application (the "<u>Application</u>"), respectfully moves this Court, pursuant to

sections 330 and 331 of title 11 of the United States Code, §§ 101-1532 (the "<u>Bankruptcy Code</u>"),

and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the

Amended Administrative Order, pursuant to sections 105(a) and 331 of the Bankruptcy Code

establishing procedures for interim compensation and reimbursement of expenses of

professionals, dated June 25, 2009, (as amended, the "<u>Compensation Order</u>"), for allowance of

interim compensation for professional services rendered in the amount of $3,480,537.09 and

reimbursement of actual, reasonable, and necessary out-of-pocket expenses incurred in the amount of $281,095.21, during the period beginning February 1, 2010 through and including May 31, 2010 (the "Fee Period"), and, in support thereof, respectfully represents as follows:

## I.   PRELIMINARY STATEMENT

1.        As special counsel to the Creditors' Committee, Quinn Emanuel is responsible primarily for investigating and prosecuting claims and causes of action against major financial institutions that were parties to myriad complex transactions with Lehman, such as Barclays Capital, Inc., JPMorgan Chase Bank, N.A. and Bank of America, N.A.  During this Fee Period, Quinn Emanuel attorneys participated in two trials, reviewed thousands of pages of documents, drafted hundreds of pages of briefs and participated in numerous derivatives-related meetings and mediations.  All the activity described herein was necessary to the administration of these estates.  To provide context for this Application, Quinn Emanuel provides a preliminary overview describing its most time-consuming activities during this Fee Period.

2.        Among the tasks for which Quinn Emanuel is responsible is the Barclays Rule 60(b) litigation.  In September 2008, the estates sold substantially all their assets relating to the broker-dealer business to Barclays Capital, Inc. ("Barclays").  After the sale, the Committee became involved in extensive discovery from Barclays concerning the transaction which resulted in each of the Committee, LBHI and the SIPA Trustee (together, the "Movants") filing detailed motions pursuant to Rule 60(b) of the Federal Rules of Civil Procedure seeking relief from the Sale Order (the "Rule 60(b) Motions").  The Committee continues to actively prosecute the matter in conjunction with LBHI and the SIPA trustee.

3.        During this Fee Period, litigation with Barclays intensified as the Movants participated in extensive and compressed discovery consisting of preparing responses to Barclays' multiple, comprehensive discovery requests on the Committee, its members, and its professionals (e.g., Milbank, Houlihan and FTI).  With respect to written submissions, Quinn Emanuel attorneys spent extensive time preparing a detailed response to Barclays' 300-plus page objection to the Rule 60(b) Motions.  Moreover, Quinn Emanuel attorneys spent considerable time preparing for and attending the thirty seven depositions by extensively reviewing thousands of documents as well as preparing the Committee's witnesses.

4.        Most significantly, during this Fee Period, Quinn Emanuel attorneys dedicated substantial time and effort to preparing for the bench trial on the Committee's Rule 60(b) motion.  During the Fee Period, the Court heard opening arguments on the Rule 60(b) Motions and conducted ten days of evidentiary hearings.  Given the complexity and significance of the issues presented in the Rule 60(b) Motions, eight attorneys attended the ten days of trial at varying times and dates.  Among the many vital tasks performed at trial, Quinn Emanuel attorneys on the Barclays litigation team examined certain witnesses, formulated trial strategy, orally argued various issues, performed research, and managed the introduction into evidence of the exhibits.

5.        In addition, Quinn Emanuel was heavily involved in the initiation of litigation against JPMorgan Chase Bank, N.A. ("JPMC").  During this period, Quinn Emanuel continued its comprehensive investigation of the relationship between JPMC and the Debtors, analyzing thousands of documents produced by JPMC in response to the Committee's Rule 2004 requests and provided by LBHI and its advisors.  Ultimately, the Debtors and the Committee (represented by Quinn Emanuel) filed a joint complaint against JPMC.  Pursuant to a protocol

governing the joint prosecution of claims against JPMC, the complaint identifies the Committee

as a proposed plaintiff intervenor.  As such, Quinn Emanuel attorneys prepared and filed a motion

for the Committee to intervene in these proceedings.  On June 24, 2010, the Court issued an order

authorizing the Committee's intervention in the JPMC litigation.  The Committee continues to

work with the estate to actively prosecute the JPMC litigation.

6.      Throughout this Fee Period, Quinn Emanuel attorneys spent a

significant amount of time investigating claims, drafting hundreds of pages of briefs and

memoranda, and participating in numerous derivatives-related meetings and mediations.  As a

direct result of the work of Quinn Emanuel and the Committee's other professionals, claims and

causes of action potentially worth billions of dollars in recovery for the estates against financial

institutions are being prosecuted.

## II.     JURISDICTION AND VENUE

7.      This Court has jurisdiction to hear and determine the Application

pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§

1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of

the Bankruptcy Code.  Pursuant to the Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and

amended April 21, 1995 (the "Local Guidelines"), a certification regarding compliance with the

Local Guidelines is attached hereto as Exhibit A.

## III.     GENERAL BACKGROUND

8.      On September 15, 2008, and periodically thereafter (the "Petition

Date"), Lehman Brothers Holdings Inc. ("LBHI"), and certain of its subsidiaries and affiliated

entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the

4

Bankruptcy Code (collectively, the "Chapter 11 Cases").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating their business and managing their properties as debtors in possession.

9.          On September 17, 2008, the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

10.          On January 16, 2009, the Court entered an Order directing the appointment of an Examiner pursuant to 11 U.S.C. §§ 1104(c)(1) and (c)(2).  By order dated July 13, 2010, the Examiner was discharged of its duties to investigate, *inter alia*, various transfers and transactions involving the Debtors and their affiliates as well as the events immediately preceding the commencement of the Chapter 11 Cases.

## IV.    RETENTION OF QUINN EMANUEL

11.          On October 21, 2008, the Committee filed its Application Under 11 U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014 and 5002, for Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel, Nunc Pro Tunc to September 17, 2008 (the "Retention Application").

12.          On November 21, 2008, this Court entered the Final Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. et al., Nunc Pro Tunc to September 17, 2008 (the "Retention Order").  A true and correct copy of the Retention Order is attached hereto as Exhibit B.

13.          On October 11, 2008, the Debtors filed a Motion Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) for Authorization to Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals (the "Compensation Motion").  The Compensation Motion was granted pursuant to

the Compensation Order.

14.    The Compensation Order established a procedure for, inter alia, the

payment of interim fees and expenses to professionals employed by the Committee on a monthly

basis.  Quinn Emanuel, on a monthly basis, has been preparing and serving monthly fee

statements in accordance with the Compensation Order.[1]  A copy of the Compensation Order is

attached as Exhibit C.

## V.    MONTHLY FEE STATEMENTS AND QUARTERLY APPLICATIONS

15.    Quinn Emanuel submitted its first quarterly fee application on April

10, 2009 requesting $2,129,413.50 in fees and $41,113.30 in expenses for the period commencing

September 15, 2008 through January 31, 2009.

16.    Quinn Emanuel submitted its second quarterly fee application on

August 14, 2009 requesting $820,579.50 in fees and $28,104.76 in expenses for the period

commencing February 1, 2009 through May 31, 2009.

17.    Quinn Emanuel submitted its third quarterly fee application on

December 14, 2009 requesting $2,248,453.00 in fees and $144,241.20 in expenses for the period

commencing June 1, 2009 through September 30, 2009.

18.    Quinn Emanuel submitted its fourth quarterly fee application on April

16, 2010 requesting $2,829,628.18 in fees and $191,748.74 in expenses for the period

commencing October 1, 2009 through January 31, 2010.  A chart summarizing the amounts

requested and approved in Quinn Emanuel's prior fee applications is attached hereto as Exhibit G.

---

[1]    Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee
statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

19.        This Application is Quinn Emanuel's fifth quarterly fee application and seeks payment of interim compensation and reimbursement of expenses for services rendered to the Committee in amounts that have been invoiced to the Debtors for the period from February 1, 2010 through May 31, 2010.

20.        This Application requests that the Court (a) approve interim fees in the total amount of $3,480,537.09 (including the 20% of such fees "held back"), and reasonable out-of-pocket expenses in the amount of $281,095.21 incurred by Quinn Emanuel for services rendered in the Chapter 11 Cases during the Fee Period and (b) award and order to be paid to Quinn Emanuel the balance of any such fees, costs and expenses that remain unpaid, after deducting interim payments already received by Quinn Emanuel pursuant to the Compensation Order.

21.        For the period February 1, 2010 through and including May 31, 2010, Quinn Emanuel submitted four monthly fee statements (the "Monthly Fee Statements").  Through the Monthly Fee Statements, Quinn Emanuel has requested interim fee compensation in the amount of $2,855,927.00 (representing 80% of the fees billed by Quinn Emanuel from February 1, 2010 through May 31, 2010) and expenses incurred in the total amount of $281,095.21 (100% of the expenses billed by Quinn Emanuel from February 1, 2010 through May 31, 2010).  For the period commencing on February 1, 2010 through February 28, 2010, Quinn Emanuel requested payment of $672,519.20 in fees (representing 80% of the $840,649.00[2] in fees for that period) and $46,809.71 in expenses.  For the period commencing on March 1, 2010 through March 31, 2010, Quinn Emanuel requested payment of $738,268.00 in fees (representing 80% of the $922,835.00

---

[2]        Staff attorneys rates have been voluntarily reduced to a uniform rate of $320.00.  As such, Quinn Emanuel adjusted the February fees to $835,213.00 to reflect the reduction of certain staff attorney fees.

fees for that period) and $25,113.08[3] in expenses.  For the period commencing on April 1, 2010

through April 30, 2010, Quinn Emanuel requested payment of $833,160.40 in fees (representing

80% of the $1,041,450.50 in fees for that period) and $137,658.44 in expenses.  For the period

commencing on May 1, 2010 through May 31, 2010, Quinn Emanuel requested payment of

$616,328.40 in fees (representing 80% of the $770,410.50 in fees for that period) and $71,521.75

in expenses.[4]

   22.   The fees and expenses requested are reasonable, and all amounts

requested were for actual and necessary services rendered on behalf of the Committee.

   23.   Quinn Emanuel has not entered into any agreement, express or

implied, with any other party for the purpose of fixing or sharing fees or other compensation to be

paid for professional services rendered in these cases.  No promises have been received by Quinn

Emanuel or any member thereof as to compensation in connection with these cases other than in

accordance with the provisions of the Bankruptcy Code.

## VI. SUMMARY OF PROFESSIONAL SERVICES RENDERED

   24.   Pursuant to the guidelines promulgated by the United States Trustee,

Quinn Emanuel classified all services performed for which compensation is sought into separate

categories.  Quinn Emanuel attempted to place the services performed in the category that best

relates to the services provided.  However, because certain services may relate to one or more

categories, services pertaining to one category may be included in another category.  Schedule 1,

attached hereto, lists each timekeeper, his or her respective billing rate, professional information,

---

[3] Given the Fee Committee's recent report requesting that Lehman professionals charge $.50 for colored copies, Quinn Emanuel adjusted its March expenses to $25,105.31 to reflect the reduction in the charge for colored copies from $.57 to $.50.

[4] Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

and the total number of hours expended on this case.  Schedule 2, attached hereto, summarizes the

professional and paraprofessional time expended by project category.  Timekeeping entries and

Quinn Emanuel invoices provide detailed descriptions of all services rendered by each of these

categories.  Exhibit D, attached hereto, contains time entry records broken down in tenths of an

hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description

of services performed by each attorney and paraprofessional on behalf of the Committee.[5]

      25.      The following summary is intended only to highlight key services

rendered by Quinn Emanuel in certain project billing categories where Quinn Emanuel has

expended a considerable number of hours on behalf of the Committee, and is not meant to be a

detailed description of all of the work performed.[6]

### A.    **General Case Administration (Hours: 43.6; Fees: $14,060.00)[7]**

      26.      Quinn Emanuel serves as special counsel to the Official Committee of

Unsecured Creditors in respect of numerous matters, including various estate litigations against

major financial institutions.  To that end, its attorneys must keep abreast of the various pleadings

filed in the chapter 11 cases and in various adversary proceedings.  Accordingly, during this Fee

Period, Quinn Emanuel staff attorneys spent time reviewing pleadings filed each day in the

Lehman cases and various adversary proceedings.  In order to create cost savings to the estate,

Quinn Emanuel has arranged for a specially trained staff attorney (who bills at a rate lower than

a first year associate) to conduct a review and assessment of newly filed pleadings (including,

---

[5]    Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) counsel for the Debtors; and (iv) the Fee Committee.

[6]    The project billing categories are combined in the summaries which follow to reflect the new billing categories set by the Fee Committee.

[7]    On March 1, 2010, Quinn Emanuel adopted the Fee Committee's uniform categories for recording time. This category includes fees from the former billing category, LEH01 and the new billing category, 0100.

without limitation, whether the pleadings seek relief directly from the Committee or in
proceedings where the Committee is a party).  These charges are part of Quinn Emanuel's efforts
to prosecute valuable estate claims and are integral to the litigation effort.

## B.    Claims Analysis/Objections  (Hours: 45.70, Fees: $20,471.50)[8]

27.    During this period, Quinn Emanuel attorneys, working with the
Committee's retained professionals, continued reviewing and analyzing a wide variety of claims
asserted against the Debtors' estates.  Certain of the claims examined during this period are set
forth below.

28.    Collateral Disposition Agreement.  Shortly before LBHI filed for
chapter 11 bankruptcy protection, JPMC demanded that LBHI guarantee all obligations between
JPMC and its affiliates (together, "JPMCB") and LBHI and its affiliates, including Lehman
Brothers Inc. ("LBI").  JPMCB further demanded that LBHI post collateral to support its guaranty
obligations.  LBHI consented to JPMCB's requests and executed a guaranty (on September 9,
2008) (the "Guaranty") of the obligations of its affiliates and posted cash (the "Cash Collateral")
and securities (the "Posted Securities", and together with the Cash Collateral, the "Collateral") to
secure the Guaranty.  Shortly after LBHI's chapter 11 filing, JPMCB allegedly began liquidating
the Posted Securities and applying the proceeds against LBI's clearance-related obligations, yet,
JPMCB had not sold certain supposedly illiquid securities (the "Remaining Securities") and had
not, yet, applied the Cash Collateral to LBI's obligations.

---

[8]    On March 1, 2010, Quinn Emanuel adopted the Fee Committee's uniform categories for recording time.
This category includes fees from the former billing category, LEH03.

29.        On February 24, 2010, LBHI filed a motion seeking approval of an agreement by which JPMCB would return the Remaining Securities to LBHI in exchange for authorization to apply the Cash Collateral against the Secured Claims (the "Collateral Disposition Agreement").  The Collateral Disposition Agreement also contained an express reservation of any and all estate and Committee claims and causes of action, rights and defenses with respect to JPMCB.

30.        During this Fee Period, Quinn Emanuel undertook, on the Committee's behalf, an extensive review and analysis of the Collateral Disposition Agreement. In addition to reviewing and commenting on multiple drafts of the agreements and attending multiple conferences with the Debtors' professionals, Quinn Emanuel also dedicated considerable time and effort to ensuring the "litigation neutrality" of the agreement.  Quinn Emanuel also worked closely with the Committee's financial advisors to ascertain the economic benefits of the agreement and to ensure it had a positive economic impact on the estates.  By order dated March 24, 2010, the Court approved the Collateral Disposition Agreement.

C.    **Hearings and Court Communications (Hours: 535.1; Fees: $329,380.00)**[9]

31.        Throughout the Chapter 11 Cases, Quinn Emanuel attorneys, on behalf of the Committee, have prepared for and attended certain regularly scheduled omnibus hearings where matters being handled by Quinn Emanuel were being presented for consideration, and special scheduled hearings with respect to adversary proceedings where it represents the Committee.  To prepare for these hearings, Quinn Emanuel attorneys often expended considerable

---

[9]        On March 1, 2010, Quinn Emanuel adopted the Fee Committee's uniform categories for recording time. This category includes fees from the former billing category, LEH05 and the new billing category, 0400.

time reviewing and analyzing documents, including correspondence and pleadings, and

conducting independent legal and factual research.

32.           Notably, from April 26, 2010 through May 7, 2010, Quinn Emanuel

attorneys prepared for and attended the bench trial on the Rule 60(b) Motions.  Given the

complexity and significance of the issues involved in the Barclays trial, different attorneys were

present at the hearings on varying days and times in accordance with the needs of the team and

trial.  See infra Part VI. D. (Non Derivative Adversary Proceedings: Barclays Transaction

Investigation and Litigation: Trial).

**D.      Non-Derivative Adversary Proceedings (Hours: 4925.8; Fees: $2,594,342.50)[10]**

33.           Time billed to this category generally relates to litigation that Quinn

Emanuel, as special counsel to the Committee, is pursuing or may pursue against certain entities

in furtherance of the Committee's obligations as a fiduciary for the Debtors' unsecured creditors.

Barclays' Transaction Investigation and Litigation

34.           On September 15, 2009 Quinn Emanuel filed the Rule 60(b) Motion

on the Committee's behalf seeking relief from the Sale Order dated September 20, 2008

approving the sale of assets related to Lehman Brothers' North American broker dealer business

to Barclays.  The other Movants (i.e., LBHI and the SIPA Trustee) filed the Rule 60(b) Motions

on the same day.  Litigation of the Rule 60(b) Motions took place on an expedited basis, with a

fact discovery cut-off of March 31, 2010 and a trial date of April 26, 2010.

---

[10]        On March 1, 2010, Quinn Emanuel adopted the Fee Committee's uniform categories for recording time.
This category includes fees from the former billing categories, LEH11, LEH20, LEH22, LEH23, and the
new billing category, 3900.

35.        During the Fee Period, Quinn Emanuel attorneys devoted substantial time to prosecuting the Committee Rule 60(b) Motion and assisting the Movants in prosecuting the Rule 60(b) Motions.  In particular, Quinn Emanuel attorneys were involved in (i) continuing discovery and related motion practice in connection with the Rule 60(b) Motions, (ii) preparing a detailed reply brief in response to Barclays 300- plus page objection to the Rule 60(b) Motions, (iii) preparing for and attending thirty seven (37) depositions; (iv) coordinating with the Movants and Barclays regarding pre-trial preparations, and (v) participating in the first two weeks of trial (i.e., April 26 – May 7, 2010) on the Rule 60(b) Motions.

36.        <u>Continued Document Discovery</u>.  Barclays served three requests for the production of documents on each of the Committee's professionals, Houlihan Lokey ("<u>Houlihan</u>"), Milbank Tweed Hadley & McCloy LLP ("<u>Milbank</u>") and FTI Consulting ("<u>FTI</u>").  Quinn Emanuel represented Houlihan and FTI (in addition to the Committee) in connection with these document requests.  To that end, Quinn Emanuel prepared and served written responses and objections to Barclays' demands and coordinated the large-scale effort of retrieving and reviewing responsive documents.  Quinn Emanuel's specially trained staff attorneys assisted with the collection of documents from the Committee Houlihan, Milbank and FTI.  Quinn Emanuel's staff attorneys collected the voluminous productions, ensured that the productions were properly coded in Quinn Emanuel's litigation database, eliminated duplicate documents, and reviewed every document for privilege.  These staff attorneys acted under the careful supervision of Quinn Emanuel attorneys that monitored the document review process.

37.        In connection with the production of documents, Quinn Emanuel attorneys withheld certain documents from production because those documents contained attorney client communications and work product privilege.  Quinn Emanuel's staff attorneys also

13

assembled and prepared a detailed privilege log of these documents which was produced to

Barclays.  Ultimately, Quinn Emanuel produced (on a rolling basis during this period), on behalf

of the Committee, Houlihan and FTI, no less than 51,000 pages of documents to Barclays.

38.    Barclays also served document requests on all the professionals

involved in the transactions, including the LBHI estates' attorneys and financial advisors (e.g.,

Weil, Alvarez & Marsal, Lazard Ltd.) and the LBI estates' advisors (e.g., Hughes Hubbard &

Reed and Deloitte), as well as a host of third parties (e.g., the Depository Trust Corporation, Akin

Gump Strauss Hauer & Feld LLP).  During this period, Quinn Emanuel attorneys also reviewed

documents produced by these various parties and coordinated with counsel to the other Movants

regarding production.

39.    During this Fee Period, Barclays also continued to produce

documents to the Movants.  To that end, Quinn Emanuel's staff attorneys and litigation support

specialists received, reviewed and coded approximately 13,044 documents produced to the

Movants.  Given the volume of documents produced by both Barclays and the Movants it was

essential that these documents be centralized into a litigation database in order to permit Quinn

Emanuel to locate relevant documents in connection with the continued prosecution of the Rule

60(b) Motions.  Given the complexity of the operation of the litigation database, the importance

of the database to this litigation, and the importance that the documents in the database be readily

accessible, Quinn Emanuel's specially trained staff attorneys and litigation support specialists

were tasked with coding documents received and were often called on to search the database for

relevant documents.

40.          Indeed, with every new production, Quinn Emanuel staff attorneys and litigation support specialists reviewed and coded documents.  Subsequently, Quinn Emanuel staff attorneys would selected documents for further review by those Quinn Emanuel attorneys tasked with prosecuting the Committee Rule 60(b) Motion.  The ability to search and retrieve documents is a critical aspect of the litigation with universal application.  It is required to write briefs (i.e., to identify substantiating documentation), to examine witnesses (i.e., to identify documents for examination) and to present arguments to the Court.

41.          Continued Discovery:  Depositions.  In addition to propounding document requests, Barclays also served deposition notices on the Committee, Houlihan, Milbank and FTI.  Barclays also noticed a host of depositions for the estates and LBI's principals and professionals.  Quinn Emanuel attorneys dedicated considerable time during the Fee Period to preparing the witnesses of its financial advisors for these depositions.  The depositions of the Committee's advisors' witnesses took place on February 10, 2010 (C. Tully), February 12, 2010 (M. Fazio), April 19, 2010 (L, Despins), April 29, 2010 (S. Burian), and April 30, 2010 (L. Despins).

42.          Preparing for depositions involved Quinn Emanuel staff attorneys, under the supervision of a coordinating attorney, performing targeted searches in Quinn Emanuel's litigation database to identify the universe of documents relevant to a particular witness.  Once this process was complete, documents were sent to the Quinn Emanuel attorneys assigned to a particular witness for review.

43.          In addition, the Movants served additional deposition notices on Barclays' principals.  Quinn Emanuel attorneys prepared for and attended those depositions on the Committee's behalf.  In preparing for these depositions, Quinn Emanuel staff attorneys would

perform targeted searches for relevant documents in the litigation database.  The attorney

responsible for attending the deposition would then review the relevant documents that had been

gathered in order to select those documents that would be necessary for use at the deposition.  The

Quinn Emanuel attorney also often coordinated with counsel to the other Movants in order to

ensure that there was no unnecessary duplication of efforts in preparing for or taking these

depositions.

44.        Continued Discovery:  United Kingdom Document Request Motion.

On December 16, 2009, the Court held a hearing on, and granted a motion (the "Assistance

Motion") filed by the Committee seeking judicial assistance in the production of documents from

the United Kingdom Financial Services Authority (the "FSA") and Pricewaterhouse Cooper's

United Kingdom branch ("PwC") that were relevant to the prosecution of the Rule 60(b) Motions

and could not otherwise be obtained in the United States.  On February 11, 2010 and March 2,

2010, the High Court of Justice, Queens Bench Division in the United Kingdom (the "English

Court') acted on the letters of request and enabled the Committee to issue document requests to

the FSA and PwC.

45.        During the Fee Period, Quinn Emanuel attorneys negotiated a

consensual resolution of Assistance Motion with PwC.  Accordingly, PwC produced documents

to the Committee, and Quinn Emanuel attorneys spent time during this Fee Period reviewing

those documents.

46.        Quinn Emanuel also entered into negotiations with the FSA for the

consensual production of relevant documents.  The FSA insisted, in sworn affidavits filed in the

English Court, that it did not have any responsive documents.  Those affidavits also contained

facts outlining the FSA's role with respect to the transaction and certain pre-transaction events.

47.        Ultimately, the Committee negotiated consent decrees with the FSA and PwC.  As a result of the Committee's prosecution of the Assistance Motion in the United Kingdom, and consistent with English law, the United Kingdom High Court entered consent orders directing the reimbursement of the costs incurred by both the FSA and PwC in connection with the settlements.[11]  These settlements resulted in the production of important documents regarding Barclays' dealings with its regulators and auditors (both from Barclays and PwC).  It also enabled the Committee to use the FSA's affidavit in the Rule 60(b) litigation.

48.        <u>Continued Discovery:  Privilege Dispute</u>.  On April 14, 2010, on the eve of the start of the bench trial on the Rule 60(b) Motions, Barclays filed a motion seeking production of, *inter alia*, all Houlihan work product relating to the analysis of the financial terms of the Sales Transaction (the "<u>Work Product Motion</u>") and similar work product prepared by LBHI and the SIPA trustee.  Quinn Emanuel attorneys took the lead in researching and drafting a response to the Work Product Motion and filed a detailed objection on April 22, 2010 (in which the Movants joined).

49.        The Court heard argument on the Work Product Motion on April 26, 2010.  To that end, Quinn Emanuel attorneys spent time outlining and preparing the Committee's argument that the documents Barclays sought were protected by work product privilege.  The Court granted the Work Product Motion as to the Committee on the same date.  To ensure prompt production, leading up to the argument on the Work Product Motion and immediately following the hearing, Quinn Emanuel attorneys reviewed the privilege logs and selected those documents

---

[11]        These costs totaled $50,878.35 (converted from pound sterling to U.S. dollar) and appear in the expense reimbursement section of this application.

that fell within the scope of the Court's ruling. Quinn Emanuel then prepared those documents for prompt production to Barclays.

50.        The granting of the Work Product Motion also lead to additional depositions of two Committee witnesses, Mr. Luc Despins and Mr. Saul Burian. During this Fee Period, Quinn Emanuel spent time preparing these witnesses for their continued depositions under considerable time constraints. Indeed, the Work Product Motion was filed on the eve of trial, and Quinn Emanuel allowed Barclays to take these depositions prior to the trial because both Mr. Burian and Mr. Despins were scheduled to testify at the trial.

51.        Continued Discovery:  Experts.  During this Fee Period, the Movants prepared and submitted seven expert reports and rebuttals to the expert reports filed by Barclays. Quinn Emanuel attorneys coordinated with the Movants on the submission of these expert reports. Additionally, Quinn Emanuel attorneys reviewed the reliance materials produced with the expert reports.

52.        Committee Reply Brief.  On January 29, 2010, Barclays filed a voluminous response to the 60(b) Motions. During the Fee Period, Quinn Emanuel attorneys spent considerable analyzing Barclays' three hundred-plus page response in order to prepare a detailed reply brief. Quinn Emanuel's specially trained staff attorneys assisted the attorneys charged with drafting the reply brief by performing targeted searches of the litigation database in order to identify documents necessary for the Committee's reply brief. The selected documents were then reviewed by the Quinn Emanuel attorneys drafting the reply and ultimately were synthesized into a thorough timeline of both the events leading up to the Sale Transaction and the Committee's involvement in the sale process. This task was necessary in order to refute Barclays' statement of facts and arguments.

18

53.        Under the supervision of a coordinating attorney, Quinn Emanuel attorneys also performed legal research on numerous issues raised by Barclays in its reply brief, including, but not limited to: (i) the timeliness of the Rule 60(b) Motions, (ii) the propriety of challenging a sale order, and (iii) the effects of amendments to the Sale Order made without the Committee's consent.  In connection with the Committee's reply brief, Quinn Emanuel attorneys also prepared declarations both supporting the Committee's statement of facts and responding to Barclays' statement of facts.

54.        Quinn Emanuel attorneys also spent time coordinating with the other Movants regarding legal and factual research and reviewing the draft submissions of the other Movants.  Such coordination was necessary in order to minimize unnecessary duplication in the three briefs submitted in reply to Barclays' response to the Rule 60(b) Motions.  On March 18, 2010, Quinn Emanuel filed the Committee's 150- plus page reply brief.

55.        Pre-Trial: Scheduling.  Given the complexity of the issues raised through the Rule 60(b) motions as well as the numerous parties and witnesses involved, Barclays and the Movants entered into extensive negotiations during this period scheduling pre-trial motion practice and trial.  Quinn Emanuel attorneys participated in numerous email exchanges, phone calls and in-person discussions regarding the scheduling and coordination of the various witnesses presented by the Movants at trial.  Moreover, as the Barclays trial was ongoing, depositions were taking place also requiring coordination efforts among the parties.  Because of the non-consecutive trial dates and the length of the trial, scheduling has required frequent conferences and meetings among all of the parties involved as well as the Court.

56.        <u>Pre-Trial:  Motions in Limine</u>.  During the Fee Period, the Movants

prepared motions in limine in connection with the trial on the Rule 60(b) Motions.  Specifically,

the Movants submitted (i) a motion to admit into the record (a) all undisputed facts and (b) all

facts to which Barclays only lodged a legal, but not factual, objection (the "<u>Undisputed Fact</u>

<u>Motion</u>") and (ii) a motion to exclude the trial testimony of Barclays' expert witnesses (the

"Motion to Exclude" and together with the Undisputed Fact Motion, the "<u>Motions In Limine</u>").

57.        During the Fee Period, Quinn Emanuel attorneys reviewed and drafts

of the Motions In Limine and coordinated with counsel to the Debtors and the SIPA Trustee in the

preparation and filing of the Motions In Limine.  The Undisputed Fact Motion was filed on March

9, 2010.  The Motion to Exclude was filed on April 2, 2010.

58.        On April 1, 2010, Barclays filed a response to the Undisputed Fact

Motion.  Quinn Emanuel attorneys reviewed Barclays' opposition and coordinated with counsel

to the other Movants in crafting a strategy for prosecuting the Motion to Exclude.  Ultimately, the

Undisputed Fact Motion was withdrawn.  On April 19, 2010, Barclays filed an opposition to the

Motion to Exclude.  By agreement, the Movants' reply to Barclays' opposition to the Motion to

Exclude was adjourned until August 2010.

59.        <u>Pre-Trial:  Exhibits.</u>  At the direction of those attorneys tasked with

prosecuting the Committee 60(b) Motion, Quinn Emanuel's staff attorneys performed numerous

and frequent targeted searches of the litigation database in order to select those documents that

would be used as trial exhibits.  Quinn Emanuel attorneys then reviewed those documents and

from that universe of documents selected the trial exhibits.  Quinn Emanuel attorneys then

coordinated with counsel to the other Movants in preparing a comprehensive list of all trial

exhibits.  On April 1, 2010, the Movants served their exhibits on Barclays.

60.        On April 8, 2010, Barclays served objections to the Movants' exhibit list.  Quinn Emanuel attorneys then coordinated with other Movants' counsel and prepared responses to those Barclays' objections that related directly to the Committee's exhibits.

61.        The Movants subsequently made additions to the exhibit list, which required additional review and coordination among counsel.  Altogether, Quinn Emanuel attorneys, together with the other Movants' counsel, compiled and submitted 723 exhibits for use during trial.  Indeed, effectively moving the Movants' exhibits into evidence required a coordinated effort by the Debtors, Trustee and Committee counsel.

62.        Pre-Trial:  Designations.  Quinn Emanuel attorneys also designated the deposition testimony of various witnesses for use at trial.  In connection with the deposition designations, Quinn Emanuel spent time reviewing all of the Rule 60(b) motions, Barclays' response as well as the Movants' Rule 60(b) replies in order to ascertain the scope of the designations.  It was also necessary for Quinn Emanuel attorneys to review the other Movants' deposition designations so as ensure all facts necessary to the Committee's prosecution of the Rule 60(b) Motions were presented through the designations.

63.        Pre-Trial:  Witness Lists.  Quinn Emanuel dedicated time during this period to coordinating with other Movants' counsel to create a complete witness list for the Movants' case in the Barclays trial.  Quinn Emanuel attorneys engaged in multiple discussions, extensive review of deposition transcripts, and numerous emails in order to create a list of witnesses for trial.  Subpoenas were required for certain witnesses.  To that end, Quinn Emanuel prepared trial subpoenas for Mr. Klein, Mr. Despins and Mr. Seery.  Quinn Emanuel attorneys further prepared outlines and demonstrative exhibits for use with witnesses scheduled to appear at trial.

64.        Trial:  Quinn Emanuel attorneys devoted significant time and effort to prepare for the eleven trial dates occurring during this Fee Period.  Quinn Emanuel attorneys together with the other Movants' counsel, spent a considerable time coordinating the numerous tasks involved in preparing for trial as well as general overall trial strategy by email, phone conferences, and in-person meetings.  Coordination has been key in a case with such complex issues and with numerous parties.

65.        On April 9, 2010, the Court heard opening arguments in connection with the Barclays Trial.  In preparation for opening arguments, Quinn Emanuel attorneys reviewed the voluminous factual record (including the briefing and exhibits) and created a detailed presentation to the Court that outlined the Committee's legal arguments.

66.        Additionally, Quinn Emanuel attorneys spent considerable time reviewing the record to prepare their oral presentation during opening arguments.  In connection with these preparations, Quinn Emanuel attorneys undertook a detailed review and summary of case law presented in both the Committee's briefing respecting the state of the law on the issues raised in the Rule 60(b) Motions.

67.        On April 26, 2010, the evidentiary hearing regarding the Rule 60(b) Motions began.  Through the course of the 10 days of evidentiary hearings, the Court took testimony from fourteen witnesses.  Quinn Emanuel attorneys participated in the direct and cross examinations of witnesses.  As discussed above, considerable effort went into preparing to take testimony from these witnesses.

68.        Once trial began, Quinn Emanuel attorneys reviewed the trial transcripts to supplement the witness outlines.  Quinn Emanuel attorneys also continually reviewed the exhibit list and supplemented the list as necessary.  Further, additional Quinn

Emanuel attorneys were responsible for reviewing and understanding Barclays' exhibit list.

Indeed, due to the complex nature of the trial issues, various Quinn Emanuel attorneys were

necessary both in trial preparation and at trial.  The following list explains the tasks assigned to

each attorney present through the Barclays trial:

| Attorney | Description of Tasks |
|---|---|
| Richard I. Werder, Jr. | Prepared to examine certain witnesses; assisted with trial strategy. |
| Susheel Kirpalani | Prepared to examine certain witnesses; assisted with trial strategy. |
| James C. Tecce | Prepared to argue attorney client and work product issues; witness preparation; assisted with trial strategy. |
| Erica Taggart | Prepared to examine certain witnesses; assisted with trial strategy. |
| Eric M. Kay | Familiar with exhibits, documents and witnesses; assisted with trial strategy. |
| Robert K. Dakis | Most familiar with exhibits produced by Barclays and Debtors; conducted spot research assignments; updated exhibit list; added exhibits; assisted with trial strategy. |
| Tyler G. Whitmer | Most familiar with exhibits produced to Barclays; conducted spot research assignments; assisted with trial strategy. |
| Olga M. Urbieta | Conducted spot research assignments; familiar with exhibits and exhibits list; updated exhibit list; added exhibits. |

69.        JPMorgan Litigation.  On December 2, 2009, the Committee and

LBHI co-signed a memorandum (the "Protocol") governing among other things, the joint

prosecution of claims against JPMC.  The Protocol provides the Committee, through its counsel

Quinn Emanuel, will play a significant role in any litigation involving the prosecution of these

claims.  Pursuant to the terms of the Protocol, Quinn Emanuel worked with LBHI's counsel,

Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), to develop potential claims against JPMC,

to conduct the legal and fact research required effectively to plead those claims, and to draft an

adversary complaint.

70.        During this Fee Period, Quinn Emanuel attorneys analyzed thousands

of documents produced by JPMC in response to the Committee's Rule 2004 requests and

provided by LBHI and its advisors.  Quinn Emanuel utilized its specially trained staff attorneys to

perform broad and targeted searches of the voluminous document productions.  Once relevant

documents were identified, Quinn Emanuel attorneys responsible for analyzing potential claims

reviewed these relevant documents to consider their effect on claims and causes of action.

71.        Quinn Emanuel attorneys further spent considerable time working

with Curtis to draft, coordinating the research and drafting of the complaint with Curtis.  On May

26, 2010, LBHI and the Committee filed an adversary complaint against JPMC asserting both

common law claims and avoidance claims to seek the return of billions of dollars in value to the

LBHI estate by invalidating certain guaranties and security agreements entered into in the weeks

before LBHI filed for bankruptcy relief.

72.        The complaint identifies the Committee as a proposed plaintiff

intervenor.  Accordingly, Quinn Emanuel attorneys spent time drafting a motion for the

Committee to intervene in the proceedings.  On May 26, 2010, Quinn Emanuel attorneys filed the

motion.  On June 24, 2010, the Court issued an order authorizing the Committee's intervention in

the JPMC litigation for all purposes.

73.        Citibank.  During this Fee Period, the Committee continued its

independent investigation of the claims Citibank, N.A. ("Citibank") has asserted against the estate

and the contours of Citibank's relationship with Lehman.  Starting in January 2010, the Debtors

24

and Citibank produced thousands of pages of documents to the Committee, and Quinn Emanuel

attorneys spent a significant amount of time reviewing those documents.

74.        During this Fee Period, Quinn Emanuel attorneys also attended a

number of meetings with Citibank and LBHI representatives in connection with its investigation.

In coordination with the Debtors, Quinn Emanuel attorneys are continuing its investigation into

Citibank.

75.        <u>Bank of America Litigation.</u>  Quinn Emanuel attorneys actively

participated on the Committee's behalf in the litigation between the estates and Bank of America

("<u>BofA</u>").  On January 29, 2010, February 1, 2010 and February 2, 2010, an evidentiary hearing

was conducted regarding BofA's purported right to offset $509 million in a LBHI bank account

against amounts owed by LBHI and Lehman Brothers Special Financing ("<u>LBSF</u>") under certain

LBSF derivative contracts.  Quinn Emanuel represented the Committee, as intervenor, in

connection with the BofA litigation.

76.        At the conclusion of the evidentiary hearing, the Court directed the

parties to submit post-trial briefing.  In particular, the Court requested that the parties prepare a

statement of facts based on the evidence presented at trial.  During this Fee Period, Quinn

Emanuel attorneys spent considerable time reviewing the trial testimony and other evidence in

order to (i) assist the Debtors in the preparation of their post-trial brief and (ii) prepare the

Committee's submission.  The briefs were submitted on March 12, 2010.  The matter is under

submission to the Court.

77.        <u>Financial Institutions Litigation/Examiner Report Investigations.</u>  On

March 11, 2010, Anton R. Valukas, the Examiner appointed to the LBHI cases, issued a report

(the "<u>Examiner's Report</u>") presenting his findings and conclusions respecting, *inter alia*, potential

estate claims and causes of action.  Quinn Emanuel attorneys spent a significant amount of time

reviewing the Examiner's Report and incorporating its findings into its own investigations.

Quinn Emanuel attorneys conducted an independent investigation of certain of the factual and

legal assertions in the Examiner's Report in order to ascertain the effect of such findings on the

Committee's investigation of claims against certain secured lenders and other financial

institutions.

78.      With respect to the on-going investigations against secured lenders

and financial institutions, during this period, Quinn Emanuel attorneys worked closely with the

estates' professionals in the analysis of potential claims against such entities.  The investigations

entailed (i) in-depth research, (ii) multiple conferences, (iii) document review, (iv) drafting

memoranda of law regarding potential claims, (v) reviewing filed proofs of claim, and (vi) the

drafting of pleadings relating to these institutions.  Due to the confidential nature of these

investigations, this fee application only discusses this investigation in general terms.

E.      **Nonworking Travel  (Hours: 191.5, Fees: $115,537.00)**[12]

79.      Time billed under this category was for the necessary time that Quinn

Emanuel attorneys spent traveling on behalf of the Creditors' Committee to Committee meetings,

depositions and court hearings.  Given the compressed time and magnitude of the Barclays Rule

60(b) litigation, it was necessary to task attorneys outside of Quinn Emanuel's New York office

with handling depositions and discovery taking place in New York.  Specifically, during this time

period, Quinn Emanuel attorneys from offices outside of New York who are members of the Rule

60(b) Barclays adversary proceeding team traveled to New York to participate in the ongoing

---

[12]      On March 1, 2010, Quinn Emanuel adopted the Fee Committee's uniform categories for recording time.
This category includes fees from the former billing category, LEH12 and the new billing category, 0500.

hearings.  As discussed above, the attendance of these attorneys was necessary to the effective

and efficient representation of the Committee.  Thus, time billed during this Fee Period, included

cross-country air travel relating to this litigation.[13]  Quinn Emanuel attorneys also spent time

traveling locally to Court, depositions and in-person meetings with the Debtors.

### F. Quinn Emanuel Fee Applications (Hours: 346.40, Fees: $125,071.00[14])[15]

80.        Pursuant to the Bankruptcy Code, Local Rules, and the Compensation

Order, Quinn Emanuel prepared and served four monthly fee statements (the "Fee Statements")

for approval and allowance of compensation for actual, reasonable and necessary professional

services rendered, and reimbursement of expenses for actual reasonable and necessary expenses

incurred during those fee periods.  Each Fee Statement contained extensive records of the work

performed by Quinn Emanuel.  Quinn Emanuel attorneys also prepared and served the Fourth

Interim Fee Application during this Fee Period.  Preparing the Fourth Interim Fee Application

involved consolidating Quinn Emanuel's fees and expenses for four monthly fee statements and

preparing a detailed narrative in the pleading describing these efforts.  Extensive time was also

spent organizing the time entries and preparing the charts and the summary descriptions of the

work done throughout the Fourth Interim Fee Application.  Additionally, during this Fee Period,

time was spent responding to the Fee Committee's questions and reports and filing a joinder to

Milbank's response to the Fee Committee's report for the third interim period.  In connection with

the Fee Committee's report, Quinn Emanuel attended a meeting on March 31, 2010 regarding the

---

[13]        The airfare incurred was not billed at business class fares.

[14]        Quinn Emanuel's actual fees incurred for the preparation of fee applications is $125,071.00.  Consistent with the Fee Committee Guidelines, Quinn Emanuel is only seeking 1% of the total fees charged for this period and not the actual fees associated for the preparation of fee applications.  Quinn Emanuel reserves the right to seek the remaining $89,317.55 at a later date.

[15]        On March 1, 2010, Quinn Emanuel adopted the Fee Committee's uniform categories for recording time.  This category includes fees from the former billing category, LEH16 and the new billing category, 4600.

Fee Committee's concerns.  Lastly, Quinn Emanuel attorneys spent time reviewing and revising the overall litigation budget and amending Quinn Emanuel's budget accordingly.

### G.     Derivatives  (Hours: 423.4, Fees: $287,423.50)[16]

81.          During the Fee Period, Quinn Emanuel attorneys devoted time to reviewing numerous derivatives transactions to which the Debtors were, or are, parties.  The Debtors are in the process of reconciling and winding down their considerable derivatives trading activities.  As part of that function, the Debtors have been regularly informing the Committee of the status of their efforts in connection with this process.  Quinn Emanuel attorneys devoted time to diligencing certain of these transactions to ensure that the value for unsecured creditors has been maximized.

82.          The Debtors have challenged whether counterparties had the right to unilaterally terminate various derivatives transactions as a result of the Debtors' chapter 11 filings.  Given the sheer volume of the Debtors' trading activity, the number of similarly situated transactions, and the value of such transactions to the estates, the outcome of such challenges can have substantial effect on the chapter 11 cases.  On behalf of the Committee, and working the Committee's financial advisors, and from time to time, the Debtors' professionals, Quinn Emanuel attorneys have devoted substantial time examining the issues concerning such challenges.  Among others, Quinn Emanuel attorneys have provided services on such issues concerning the following counterparties: Ballyrock, RACERS/Pyxis , Phoenix ADR and Libra/MKP Vela.

---

[16]     On March 1, 2010, Quinn Emanuel adopted the Fee Committee's uniform categories for recording time. This category includes fees from the former billing category, LEH21 and the new billing category, 2500.

83.         In addition, Quinn Emanuel has provided services to the Committee in connection with the derivatives mediation protocols. Quinn Emanuel's involvement entailed reviewing documents, engaging in discussions with the Debtors' professionals, making presentations and providing updates to the Committee and derivatives sub-committee, conducting legal research, and developing memoranda regarding the various issues in the litigations.

84.         <u>Libra Adversary Proceeding.</u>  On May 5, 2009, Lehman Brothers Special Financing Inc. ("<u>LBSF</u>") and LBHI filed a complaint for declaratory and injunctive relief against Libra CDO Limited ("<u>Libra</u>"), LaSalle Bank National Association ("<u>LaSalle</u>"), acting in its capacity as trustee under an indenture (the "<u>Indenture</u>") pursuant to which Libra raised capital through the issuance of certain notes, Bank of America (as successor in interest to LaSalle and with LaSalle, the "<u>Trustee</u>"), and Société Générale, New York Branch ("<u>SGNY</u>" and together with Libra and the Trustee, the "<u>Defendants</u>").  The Committee intervened in this action by stipulation and order entered on July 16, 2009.  During this Fee Period, Quinn Emanuel attorneys participated in multiple meetings and conferences with Libra counsel, Debtors' counsel and the Committee's financial advisors regarding the status and implications of this adversary proceeding with respect to other issues in the cases.  Moreover, Quinn Emanuel attorneys dedicated significant time discussing issues implicated in this case with the derivatives sub-committee.

85.         Indeed, it was necessary for Quinn Emanuel attorneys to conduct research regarding the implications of this proceeding as well as other legal issues, and draft memoranda regarding the same.  The parties have also been engaged in settlement negotiations. On March 16, 2010, the Court arranged for a conference call to hear an update on the settlement discussions.  Subsequently, Quinn Emanuel attorneys have been involved in researching and

analyzing settlement scenarios to advise the Committee of the propriety of certain of these
settlement scenarios.

## VII.   ALLOWANCE OF COMPENSATION

86.      The factors to be considered in awarding attorneys fees as enumerated
in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been
adopted by most courts, including the Bankruptcy Court for the Southern District of New York.
See, e.g., In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 22 n.5 (Bankr. S.D.N.Y.
1991).  Indeed, a majority of the First Colonial factors are now codified in section 330(a)(3). See,
e.g., 3 L. King, et al., Collier on Bankruptcy at ¶ 330.04[3][c] (15th ed. rev 2008).

87.      Section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent
part, that the Court may award to a professional person, "reasonable compensation for actual,
necessary services rendered." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded,
> the court shall consider the nature, the extent, and the value of such
> services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time which the service was rendered toward the
> completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount
> of time commensurate with the complexity, importance, and nature of
> the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases
> other than cases under this title. 11 U.S.C. § 330(a)(3)(A).

88.      The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citation and internal quotation marks omitted); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' objective on requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."). Quinn Emanuel respectfully submits that the consideration of these factors should result in this Court's allowance of the full compensation sought.

### A.      **The Time and Labor Required**

89.      The professional services rendered by Quinn Emanuel have required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and holidays. The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch. During the Compensation Period, approximately 6,624.30 recorded hours were expended by Quinn Emanuel' s partners, associates, and legal assistants in providing the requested professional services. Quinn Emanuel's hourly billing rates, as set out in Schedule 1, are computed at the rates Quinn Emanuel regularly charges its hourly clients.

B.      **The Necessity of The Services and Benefit to the Estate**

90.      These Chapter 11 Cases are generally regarded as among the most complex and active bankruptcy cases ever filed.  Indeed, many of the complex issues regarding the Debtors' financial contracts are issues of first impression, with far reaching ramifications.  As detailed above, the services Quinn Emanuel provided to the Committee were necessary to preserve and enhance the value of the Debtors' estates and conferred substantial benefit to the Debtors' unsecured creditors.  Quinn Emanuel's services have furthered and will continue to further the Committee's obligations as fiduciary for the Debtors' unsecured creditors and will continue to maximize estate value.

91.      As discussed above, given the significance and complexity of the Barclays Rule 60(b) Litigation, it was necessary for multiple attorneys to participate in accelerated discovery and attend the bench trial.  The litigation team was leanly staffed and every attorney who attended the bench trial was not present every day or for the entire trial day.  Indeed, attorneys were present only on those dates and at those times where that attorney was necessary for the bench trial.  The attorneys on the litigation team were tasked with crucial tasks such as (i) the examination of certain witnesses, (ii) the formulation of trial strategy, (iii) oral argument of various issues, (iv) knowledge of the exhibits and documentary evidence, (v) spot research assignments, (vi) updating the exhibit list, and (vii) familiarity with witness depositions.  As such, the presence of multiple attorneys at the Barclays bench trial was necessary and proper in order for Quinn Emanuel to properly represent the Committee.

32

### C.      The Novelty and Difficulty of Issues Presented in the Cases

92.          Novel and complex issues have arisen in the course of the Chapter 11 Cases, and it can be anticipated that other such issues will be encountered.  In these cases, as in many others in which the firm is involved, Quinn Emanuel's effective advocacy and creative approach to problem solving have helped clarify and resolve difficult issues and will continue to prove beneficial.

### D.      The Experience, Reputation and Ability of the Attorneys

93.          Quinn Emanuel has extensive experience in the areas of insolvency, workouts and corporate reorganizations.  Quinn Emanuel's services on behalf of the Committee have been rendered in a highly efficient manner by attorneys who have achieved a high degree of expertise in these areas.  The skill and competency of the Quinn Emanuel attorneys who have represented the Committee have ensured that these cases have been administered in the most efficient and expeditious manner.

## VIII.   DISBURSEMENTS

94.          Quinn Emanuel has incurred a total of $281,095.21 in expenses in connection with representing the Committee during the Fifth Interim Compensation Period. Quinn Emanuel records all expenses incurred in connection with the performance of professional services.  A summary of these expenses and detailed descriptions of these expenses, is annexed hereto as Exhibit E.

95.          In connection with the reimbursement of expenses, Quinn Emanuel's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients.  The expenses charged to Quinn Emanuel's clients include, among other things, telephone and telecopy toll and other

charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research and transcription costs.

96.     Quinn Emanuel charges the Committee for these expenses at rates consistent with those charged to Quinn Emanuel's other bankruptcy clients, which rates are equal to or less than the rates charged by Quinn Emanuel to its non-bankruptcy clients.  Quinn Emanuel seeks reimbursement from the Debtors at the following rates for the following expenses: (a) ten cents ($0.10) per page for photocopying; (b) no charge for incoming facsimiles; and (c) toll charges only for outgoing facsimiles.  In accordance with section 330 of the Bankruptcy Code, the Local Guidelines and with the U.S. Trustee Guidelines, Quinn Emanuel seeks reimbursement only for the actual cost of such expenses to Quinn Emanuel.

97.     In providing or obtaining from third parties services which are reimbursable by clients, Quinn Emanuel does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

98.     Quinn Emanuel regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.  However, Quinn Emanuel is not requesting reimbursement of such expenses in this Application and will not seek reimbursement from the Debtors of such expenses in future applications. Nevertheless, Quinn Emanuel reserves its rights with respect to such expenses until such time as an order is entered regarding its final fee application.

99.        Attorneys at Quinn Emanuel have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of air travel expenses in excess of coach fares.  Throughout the Fifth Interim Compensation Period, Quinn Emanuel has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

100.        As part of a settlement of a discovery dispute in the United Kingdom, under compulsion of the law of the United Kingdom and court order, the Committee must pay the fees of Fulbright & Jaworski, International, LLP and the Financial Services Authority for the production of documents relating to the Barclays litigation and the preparation of affidavits relating to the letters of request issued to the FSA and PwC.  The fees total £20,000(GBP) and £15,942.50 (GBP), respectively, totaling £35,942.55(GBP) or $50,878.35(USD).  These expenses are reasonable and necessary to the prosecution of the Rule 60(b) Motions and should be allowed.

## IX.    NOTICE

101.        Notice of this Application, as set forth in the Interim Compensation Order, has been given to (a) the Debtors, (b) counsel for the Debtors, (c) the Office of the United States Trustee, (d) Counsel for the Official Committee of Unsecured Creditors and (e) the chairperson of the fee committee.

## X.    CONCLUSION

WHEREFORE, Quinn Emanuel respectfully requests the Court to enter an order, conforming to the amounts set forth in Fee Schedule A (1) attached hereto as Exhibit F (a) allowing Quinn Emanuel (i) interim compensation for professional services rendered as counsel for the Committee during the Fifth Interim Compensation Period in the amount of $3,480,537.09 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $281,095.21, for a total award of $3,761,632.30; (b) authorizing and directing the Debtors to pay to Quinn Emanuel any and all such amounts less any amounts already received for services rendered and expenses incurred during the Fifth Interim Compensation Period; and (c) granting such further relief as is just.

Dated:  August 16, 2010
      New York, New York

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By:  /s/ James C. Tecce
     James C. Tecce

Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone No.:  (212) 849-7000
Facsimile No.:  (212) 849-7100

*Special Counsel to Official Committee Of
Unsecured Creditors Of Lehman Brothers
Holdings Inc., et al.*