Hearing Date and Time: August 18, 2010 at 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X
In re                                            : Chapter 11 Case No. 08-13555 (JMP)
                                                 : (Jointly Administered)
LEHMAN BROTHERS HOLDINGS, INC., *et al.*,        :
                                                 :
            Debtors.                             :
                                                 :
                                                 :
                                                 :
                                                 :
------------------------------------------------- X

**REPLY DECLARATION OF KENNETH L. BRESSLER IN SUPPORT OF OCH-ZIFF
CAPITAL MANAGEMENT GROUP LLC'S OPPOSITION TO DEBTOR'S SUBPOENA
*DUCES TECUM* DATED APRIL 12, 2010 AND PURSUANT TO RULE 7007-1**

Kenneth L. Bressler declares:

1. I am a member of the law firm of Blank Rome LLP, counsel to Och-Ziff Capital Management Group LLC ("Och-Ziff"), and submit this Declaration in further support of Och-Ziff's Memorandum of Law in Support of Its Objection (the "Objection") to Debtor's Subpoena *Duces Tecum* dated April 12, 2010 (the "Subpoena"), and as required by Rule 7007-1. I am fully familiar with the facts set forth herein.

2. Prior to filing Och-Ziff's Objection I conferred with counsel for Lehman Brothers Holdings, Inc. ("Lehman" or "Debtor"), Michael Bowe and Jennifer Recine, of the firm Kasowitz, Benson, Torres & Friedman, LLP, in a good faith effort to resolve the issues raised in Och-Ziff's Objection. The details of my attempts to resolve the issue are set forth below. As we were unable to reach an agreement, Och-Ziff had no choice but to file the Objection.

3. During my first conversation on April 16, 2010, Ms. Recine informed me that she could not narrow the scope of the Subpoena. She told me that "they are just exploring" and that

there was not a particular transaction they were looking into. Mr. Bowe was not on this call and I note that he does not even refer to it in his Declaration in Response to Och-Ziff's Objection.

4. On April 28, 2010, I again spoke to Ms. Recine. She told me that they had a basis for seeking documents from Och-Ziff, but would not tell me what the basis was, claiming that there was no requirement to do so. Again, Mr. Bowe was not on this call.

5. On May 10, 2010, I met with Ms. Recine, who, along with Mr. Bowe were in my offices on an unrelated matter. Ms. Recine replied to my request for her to tell me why they were seeking documents from Och-Ziff and what they were looking for by exclaiming "That is not how it works." Later Mr. Bowe stopped by my office accompanied by Ms. Recine. In response to my inquiry, Mr. Bowe told me that Och-Ziff is a "major player" in the hedge fund world, and that Lehman had done an investigation and had reason to seek documents from Och-Ziff. He refused to tell me what his "investigation" revealed or anything that would either justify his request for a year's worth of documents or permit me to narrow the scope of the Subpoena. Mr. Bowe told me that he understood that complying would be difficult but said "that is litigation." He did, however, say we could start the process by producing trading records for 2008 as well as the identities of all persons who had any business dealings with Lehman during 2008. As Mr. Bowe would not give any reason why Lehman was seeking any documents from Och-Ziff, and it was clear that this would only be a first step in the process of producing all the documents requested in the Subpoena, we did not accept Mr. Bowe's offer.

6. On May 26, 2010, I had a conversation with Ms. Recine and Mr. Bowe in which Mr. Bowe told me that a Lehman employee identified Och-Ziff "as a source of information about Lehman" in the marketplace, but refused to identify the person at Och-Ziff who was a "source"

or the person at Lehman who allegedly identified an Och-Ziff employee as a "source." I asked Mr. Bowe if he could pinpoint the time period and he said it was "during the entire year."

7. I followed our May 26th conversation with a letter asking Mr. Bowe to identify the persons at Lehman and Och-Ziff who were involved as well as the time period during which the alleged conduct took place. Mr. Bowe did not respond to my letter.

8. In a further effort to obtain information that would permit Och-Ziff and Lehman to narrow the scope of the Subpoena and reduce the burden it imposes, Och-Ziff served Lehman with a Notice of Deposition. Lehman objected and refused to give Och-Ziff any information.

9. As Lehman refused to produce a witness for a deposition, Och-Ziff tried once more to discover whether there was any reason for seeking documents from it and whether there was a way to meaningfully narrow the scope of the documents being sought and served Interrogatories and Document Requests. Again, Lehman refused to provide any information.

10. Finally, in response to Och-Ziff's Objection, Lehman stated that the reason it is seeking documents from Och-Ziff is that it believes that "Och-Ziff **likely** disseminated **and/or** was the recipient of" a June 2008 "false rumor circulating concerning the legitimacy of Lehman's de-leveraging effort, inaccurately claiming that Lehman had improperly spun the debt off its balance sheet into two hedge funds created and controlled by Lehman" (the "Rumor").[1] (Debtors' Response to Och-Ziff Capital Management Group LLC's Objection at ¶12 (emphasis supplied).)

11. The "Rumor" (or story) appears to have begun on June 17, 2008 when it was first reported in the economic blog *Naked Capitalism* and was widely reported, among other places, in *Bloomberg*, *Market Pipeline*, *The New York Times* online edition, *Wall Street Manna*,

3

*FINalternatives*, and numerous blogs. According to articles appearing in *Naked Capitalism* on June 17, 18 and 23, 2008, the source of the information was a former managing director at Lehman, not Och-Ziff or any of its employees. (A copy of the June 17, 18 and 23 articles in *Naked Capitalism* are attached as Exhibits A-C, respectively, and copies of other articles and blogs reporting the Rumor are attached as Exhibit D.) There is nothing in any of the articles or other materials that identifies Och-Ziff as being connected to the Rumor.

12. Moreover, a news article published in April 2010 indicates that the Securities and Exchange Commission has commenced an investigation into whether Lehman funded R3 Capital and other entities staffed by former Lehman employees with the intent of "using them as discreet dumping grounds for assets stockpiled on what was at the time a $639 billion balance sheet." A copy of April 2010 *New York Post* article is attached as Exhibit E.

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York
August 17, 2010

/s/ *signature*
KENNETH L. BRESSLER

---

[1] Other than this vague assertion by Lehman's counsel, we are not aware of any other speculation that Och-Ziff has any connection whatsoever to the Rumor.

4