| | |
|---|---|
| K&L GATES LLP<br>Richard S. Miller, Esq.<br>Robert T. Honeywell, Esq.<br>599 Lexington Avenue<br>New York, NY 10022<br>(212) 536-3900 | Hearing Date: September 1, 2010 at 2:00 p.m. (EDT)<br>Objection Deadline: August 19, 2010 at 4:00 p.m. (EDT) |

Attorneys for FHC Master Fund, Ltd.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
: 
In re                                                                            :    Chapter 11
                                                                                     :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :    Case No. 08-13555 (JMP)
                                                                                     :
                                                                                     :    (Jointly Administered)
                                      Debtors.                         :
                                                                                     :
-----------------------------------------------------------------------x

### RESPONSE AND RESERVATION OF RIGHTS OF
### FHC MASTER FUND, LTD TO DEBTORS' THIRTY-FOURTH
### OMNIBUS OBJECTION TO CLAIMS (MISCLASSIFIED CLAIMS)

FHC Master Fund, Ltd. ("FHC"), by and through its undersigned counsel, K&L Gates LLP, hereby files this response and reservation of rights (the "Response") to the Debtors' Thirty-Fourth Omnibus Objection to Claims (Misclassified Claims) (the "Objection"), and respectfully states as follows:

### BACKGROUND TO FHC'S CLAIM

1.    Lehman Brothers Holdings Inc. ("LBHI") filed a voluntary petition for relief under title 11 of the United States Code on September 15, 2008.

2.    Lehman Brothers Special Financing Inc. ("LBSF" and together with LBHI, the "Debtors") filed a voluntary petition for relief under title 11 of the United States Code on October 3, 2008.

NY-810026 v3

3.     On September 15, 2008, Lehman Brothers International Europe ("LBIE") was placed into administration proceedings (the "LBIE Administration Proceeding") in the United Kingdom and the joint administrators (the "LBIE Administrators") were appointed to oversee the orderly winding down of LBIE's business.

4.     On July 2, 2009, the Court entered the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form entered by the United States Bankruptcy Court for the Southern District of New York on July 2, 2009 in Case No. 08-13555 (the "Bar Date Order") requiring, among other things, that all claims against the Debtors be filed on or before September 22, 2009 at 5:00 p.m. (EDT) (the "Bar Date") and that all derivatives and guarantee questionnaires be uploaded to http://www.lehman-claims.com (the "Claims Website"), on or before October 22, 2009 (the "Questionnaire Deadline").

5.     On September 21, 2009, FHC filed Claim No. 20029 against LBHI, which was subsequently amended by Claim No. 43973 against LBHI on October 22, 2009 (as amended, the "Claim").

6.     In its Claim, FHC asserted, among other things that FHC is a party to a certain Customer Account Prime Brokerage Agreement, dated as of June 22, 2006 (the "PBA") by and among FHC, LBHI, LBSF, Lehman Brothers Inc. ("LBI"), Lehman Brothers Special Finance S.A. and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and employees now existing or hereafter created, including successors and assigns (collectively, "Lehman").  A copy of the PBA was previously annexed to the Claim and was also uploaded to the Claims Website on or before the Questionnaire Deadline.

7. FHC is also a party to that certain Global Master Securities Lending Agreement (May 2000 Version), dated as of June 22, 2006 (the "GMSLA") between FHC and LBIE (collectively, the "Parties" and each a "Party"). From time to time, the Parties entered into transactions under the GMSLA pursuant to which one Party (the "Lender") transferred to the other Party (the "Borrower") securities and financial instruments (the "Securities") against the transfer of collateral, with a simultaneous agreement by the Borrower to transfer to the Lender the securities equivalent of such Securities on a fixed date or on demand against the transfer to Borrower by Lender of assets equivalent to the collateral. A copy of the GMSLA was previously attached to the Claim and was also uploaded to the Claims Website, on or before the Questionnaire Deadline, as a part of the Guarantee Questionnaire required by the Bar Date Order.

8. FHC is also a party to that certain Margin Lending Agreement, dated as of June 22, 2006 (the "MLA") by and between FHC, as Borrower, LBIE, as Lender, and LBI, as agent. The MLA governed all loans of money or securities that LBIE made to FHC in connection with transactions entered into by FHC in the PBA. All loans of securities were governed by the terms of the GMSLA and the MLA. A copy of the MLA was previously attached to the Claim and was also uploaded to the Claims Website, on or before the Questionnaire Deadline, as a part of the Guarantee Questionnaire required by the Bar Date Order.

9. LBHI guaranteed payment of all liabilities, obligations and commitments of, among other Lehman entities, LBIE and LBSF pursuant to the Unanimous Written Consent of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc. dated June 9, 2005 (the "Resolutions"). A copy of the Resolutions was previously annexed to the Claim and was also uploaded to the Claims Website on or before the Questionnaire Deadline.

10. Under the PBA, FHC opened and maintained a prime brokerage account with Lehman, pursuant to which FHC held long and short positions in equity securities as well as cash balances with Lehman. Pursuant to the GMSLA and the MLA, FHC, among other things, borrowed securities from LBIE to maintain these short positions in the prime brokerage account.

11. In its Claim, FHC asserted its right to set off the net amount it owes to Lehman on account of FHC's short positions of ($33,144,973.81) (the "<u>Secured Claim</u>") against the net amounts owing by Lehman to FHC on account of its long positions and the cash balances in FHC's prime brokerage account totaling $49,825,135.24 (the "<u>Total Claim</u>"), for a general unsecured claim (after setoff) of $16,680,161.43 (the "<u>Unsecured Claim</u>").

12. On or about November 24, 2009, FHC received a circular from the LBIE Administrators, attached hereto as <u>Exhibit "A"</u>, related to a proposed Claim Resolution Agreement for the purpose of resolving claims in the LBIE Administration Proceeding (the "<u>LBIE Circular</u>"). The LBIE Circular referred FHC to an internet website that provided a statement of FHC's positions with LBIE as of the filing of the LBIE Administration Proceeding, a copy of which is attached hereto as <u>Exhibit "B"</u> (the "<u>LBIE Position Statement</u>").

13. From the LBIE Position Statement, FHC learned that the LBIE Administrators considered the bulk of FHC's long positions, and all of its short positions, as "Non Trust Assets," and specifically that several of the securities comprising FHC's long positions had been rehypothecated and were no longer under LBIE's control. FHC also learned that the LBIE Circular described its main purpose as the distribution of "Trust Assets" (for example, Sections 4.1-4.3, pages I-19 to I-21, providing for the return of "Trust Assets" to "TA Signatories"), while saying little about the treatment of "Non Trust Assets" or short positions, other than in connection with determining a customer's overall net position (for example, Section 4.7, pages I-

22 to I-23). The LBIE Circular generally states that it does not affect a customer's guaranty claim against LBHI (Section 8, page I-12), but does not address the preservation of a customer's setoff rights against LBHI by virtue of its short positions.

14. On July 19, 2010, the Debtors filed the Objection.

### FHC'S RESPONSE TO THE DEBTORS' CLAIM OBJECTION

**A.  LBHI's Objection is Vague and Conclusory**

15. The Objection ambiguously asserts that all of the claims set forth in Exhibit A annexed thereto are not entitled to secured status without otherwise specifying why such claims are not entitled to secured status. Therefore, the basis for LBHI's Objection to FHC's Claim is, at best, entirely unclear.

16. A proof of claim "constitutes *prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); see also, In re Reilly, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000); In re Guadalupe, 365 B.R. 17, 20 (D. Conn. 2007). To overcome this prima facie evidence, the objecting party must produce evidence sufficient to negate the *prima facie* validity of the claim. Reilly, 245 B.R. at 773; Guadalupe, 365 B.R. at 20; In re Allegheny Int'l. Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). It is often said that the objector must produce evidence equal in force to the *prima facie* case. In re Allegheny Int'l. Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). However, in practice, the objector must produce evidence sufficient to refute at least one of the allegations that are essential to the claim's sufficiency. Reilly, 245 B.R. at 773; Guadalupe, 365 B.R. at 20; Allegheny, 954 F.2d at 173-74. Once the objecting party produces evidence sufficient to negate one or more of the sworn facts in the proof of claim, the burden reverts back to the claimant to prove the claim by a preponderance of the evidence. Id.

17.     In its Claim, FHC has previously provided a description of the securities comprising FHC's short positions with Lehman, in the amount of $33,144,973.81, which FHC seeks to set off against its total long and total cash positions with Lehman, in the amount of $49,825,135.24.  FHC has also provided in its Claim all of the documentation relating to its securities positions with Lehman that is at FHC's reasonable disposal.

18.     LBHI has failed to sustain its burden of proof inasmuch as LBHI has merely provided conclusory statements to support the requested reclassification of the entirety of FHC's Claim to a general unsecured claim without specifying why it believes FHC is not entitled to secured status.

**B.     FHC is Filing This Response to Reserve Any Rights It May Have to Assert a Setoff Against Lehman**

19.     Based on its review of the LBIE Circular and its LBIE Position Statement, FHC's understanding is that several of FHC's long positions have been rehypothecated and may no longer be under LBIE's control, and that the treatment of FHC's short positions – including which Lehman entity now controls those short positions – is unclear.  To the extent that any of FHC's short positions are now subject to the control of the Debtors, including LBHI, FHC reserves its rights to assert a secured claim against the Debtors to the extent of such short positions as a setoff.  See In re Treco, 240 F.3d 148 (2d Cir. 2001) (to the extent a claimant has a right to setoff, the claim is deemed secured to the extent of the right to setoff); 11 U.S.C. § 506(a)(1) (same).

20.     In fact, FHC wishes to alert the Court that the effect of the Debtors' Claim Objection would be to *increase* FHC's unsecured claim against the Debtors from $16,680,161.43, the net amount asserted in FCH's filed Claim, to $49,825,135.24, the amount asserted in the Debtors' Objection.  FHC simply wishes to preserve its setoff rights against the

Debtors pursuant to Section 553 of the Bankruptcy Code, to the extent FHC's short positions are now held by the Debtors' bankruptcy estates.

WHEREFORE FHC requests that the Court: (a) overrule the Objection as it relates to FHC's Claim, (b) preserve FHC's right to assert setoff of its short positions, in the amount of $33,144,973.91, as a secured claim against the Debtors, and (c) grant such other or further relief as this Court deems just and proper.

Dated: New York, New York  
August 19, 2010

Respectfully submitted,

K&L Gates LLP

By: /s/ Robert Honeywell
    Richard S. Miller, Esq.
    Robert Honeywell, Esq.
    Eunice Rim, Esq.

599 Lexington Avenue  
New York, NY 10022  
(212) 536-3900 (telephone)  
(212) 536-3901 (facsimile)