Hearing Date and Time:  September 1, 2010 at 2:00 p.m. (Eastern Time)
Response Deadline:  August 19, 2010 at 4:00 p.m. (Eastern Time)

CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone:  (312) 845-3000
James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH-3660)

-and-

CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York  10017-5010
Telephone:  (212) 655-6000
Craig M. Price (CP-9039)

Attorneys for U.S. Bank National Association, as Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | CHAPTER 11<br><br>CASE NO. 08-13555 (JMP)<br><br>(Jointly Administered) |

**RESPONSE OF U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE
TO THE DEBTORS' THIRTY-FOURTH OMNIBUS OBJECTION TO CLAIMS
(MISCLASSIFIED CLAIMS) (CLAIM NOS. 19877, 20474 AND 20484)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES U.S. Bank National Association, not individually but as Trustee ("*U.S. Bank*" or the "*Trustee*") under (i) that certain Trust Agreement by and between Structured Asset Securities Corporation ("*SASCO*"), as Depositor, and U.S. Bank National

2858760.01.06.doc
1697028

Association, as Trustee, dated as of July 1, 2008, for the SASCO Pass-Through Certificates, Series 2008-5 (the "*2008-5 Trust Agreement*" and "*2008-5 Trust*"), (ii) that certain Trust Agreement by and between SASCO, as Depositor, and U.S. Bank National Association, as Trustee, dated as of June 1, 2006, for the SASCO Pass-Through Certificates, Series 2006-8 (the "*2006-8 Trust Agreement*" and "*2006-8 Trust*") and (iii) that certain Trust Agreement by and between SASCO, as Depositor, and U.S. Bank National Association, as Trustee, dated as of September 1, 2006, for the SASCO Pass-Through Certificates, Series 2006-9 (the "*2006-9 Trust Agreement*" and "*2006-9 Trust*", and collectively, the "*Trust Agreements*" and "*Trusts*"), by and through its counsel, Chapman and Cutler LLP, to respond (the "*Response*") to the Debtors' Thirty-Fourth Omnibus Objection to Claims No. 19877, No. 20474 and No. 20484 (the "*Objection*"). In support of its Response, U.S. Bank states as follows:[1]

I. **Background**

The Debtors seek to reclassify from secured to unsecured status all or part of each of three claims (the "*Claims*") filed by the Trustee on behalf of each respective Trust against Lehman Brothers Holdings, Inc. ("*LBHI*"). The Claims arise in connection with three separate transactions, each of which involve the "resecuritization" of certain mortgage-backed certificates, which were sold by LBHI to SASCO, an affiliated Debtor in these proceedings, under the terms of three separate Securities Purchase Agreements (as defined below) (the "*Underlying Securities*"). The Underlying Securities were then sold by SASCO to the Trustee for the benefit of Certificateholders pursuant to the terms of each Trust Agreement in return for interest bearing certificates issued thereunder that were concurrently transferred by SASCO to

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Trust Agreements.

LBHI ("*Notes*").[2]  Interest and principal payments related to the Notes were to be satisfied from amounts received with respect to the Underlying Securities.

The Debtors object to the secured status of the Claims on the grounds that "such claims do not articulate any valid basis for treatment as a secured claim". (*Objection*, at ¶9).  There is no further explanation, however, as to the basis of the Debtors' objections.  The transactions are true sales of the Underlying Securities, and therefore these Claims are not secured claims.  As described in Section III hereof, as a precaution, each Claim asserts contingent secured claims on behalf of the Trusts against LBHI, based on security interests assigned or granted to the Trustee in the Underlying Securities under the Securities Purchase and Trust Agreements, which security interests arise in the event the resecuritization transactions are ever deemed other than sales transactions.  Moreover, the Trustee's security interest in the Underlying Securities, if applicable, is perfected by the Trustee's possession and/or control of the securities.  The resecuritization transactions are purchase and sale transactions and not secured transactions, but the Trustee files this Response in the event that the Debtors adopt the position the transactions are not true sales and for some undisclosed reason the security interests therein are invalid or avoidable.

**II.   Granting Language of the Trust Agreements and Security Purchase Agreements**

Section 2.01 of each of the Trust Agreements provides, in part:

> It is the intention of [SASCO] that the transfer and assignment of the Underlying Securities shall constitute a sale from [SASCO] to the Trustee for the benefit of the Certificateholders and that such Underlying Securities shall not be a part of [SASCO]'s property or estate for any purpose under state or federal law, including without limitation in the event of the insolvency of [SASCO].  In the event the transfer and assignment of the Underlying Securities contemplated by this Agreement is deemed to be other than a sale notwithstanding the intent of the parties hereto, this Agreement shall be deemed to be and in such event hereby is

---

[2] LBHI or its affiliates subsequently sold, exchanged or otherwise distributed the Notes.

- 3 -

> the grant of a security interest from [SASCO] to the Trustee, and the Trustee shall have all the rights, powers and privileges of a secured party under the Uniform Commercial Code ….

Section 2.01 of each of the Trust Agreements additionally sets forth:

> Concurrently with the execution and delivery of this Agreement .., [SASCO] does hereby assign to the Trustee all of its rights and interests under the Securities Purchase Agreement. The Trustee hereby accepts such assignment, and shall be entitled to exercise all of the rights of [SASCO] under the Securities Purchase Agreement, as if, for such purpose, it were [SASCO].

Section 1(d) of each of the Securities Purchase Agreements, in part, provides:

> It is the intention of [LBHI] that the transfer and assignment of the Underlying Securities shall constitute a sale from [LBHI] to [SASCO] and that such Underlying Securities shall not be a part of [SASCO]'s property or estate for any purpose under state or federal law, including without limitation in the event of the insolvency of [LBHI]. In the event that the transfer and assignment of the Underlying Securities contemplated by this Agreement is deemed to be other that a sale notwithstanding the intent of the parties hereto, this Agreement shall be deemed to be and in such event hereby is the grant of a security interest from [LHBI] to [SASCO], and [SASCO] shall have all the rights, powers and privileges of a secured party under the Uniform Commercial Code in effect in the applicable jurisdiction.

### III.   Description of the Claims

The Claims of the Trustee to which the Debtors object are Claim No. 19877, Claim No. 20474 and Claim No. 20484. Each of the Claims was filed against LBHI. A summary of the Claims is set forth below and are more fully described in the addendums filed with the Claims.[3]

####    A.   Claim No. 19877

U.S. Bank, as Trustee under that 2008-5 Trust Agreement, filed Claim No. 19877 against LBHI on September 21, 2009.[4] Claim No. 19877 reflects a contingent secured claim in

---

[3] Nothing herein shall be construed as a waiver of any claims or rights of the Trustee in regard to the Claims or otherwise. The Trustee reserves any and all rights and defenses with respect to the Claims and these proceedings, as set forth in paragraphs 11 and 12 thereof.

the amount of $49,976,232.09 for principal and interest due as of August 30, 2009 with respect to the Notes issued under the 2008-5 Trust, which is secured by collateral, including the 2008-5 Underlying Securities, in the event that the resecuritization transactions related to the 2008-5 Trust Agreement are deemed financing transactions and not purchase and sale agreements.  In addition, Claim No. 19877 includes an unsecured and/or administrative expense claim against LHBI in the amount of $100,000 with respect to the Trustee Reimbursable Amount, as defined in the 2008-5 Trust Agreement, up to the maximum extent permitted, and, alternatively, a secured claim in the amount of $100,000 in the event that the resecuritization transactions are deemed other than purchase and sale transactions of the 2008-5 Underlying Securities.  Moreover, Claim No. 19877 sets forth an additional secured claim on account of set off and recoupment rights with respect to funds held by the Trustee, the Administrator or contained in the applicable Note payment account that constitute property of the Debtor (if any).  The Trustee, as assignee under the 2008-5 Securities Purchase Agreement, also asserts an unsecured and/or administrative claim for breaches of representations and warranties thereunder, and, alternatively, a secured claim in the event that the purchase of the securities is deemed other than a sale transaction.  Claim No. 19877 includes a claim for any other obligations, losses, fees and expenses which are unknown at this time and may be additional secured claims.  The claims set forth in Claim No. 19877 continue to accrue.  A true and correct copy of the 2008-5 Trust Agreement was submitted with Claim No. 19877.  A true and correct copy of the 2008-5 Securities Purchase Agreement is submitted herewith as **Exhibit A**.

---

[4] Under the terms of the terms of the 2008-5 Trust Agreement, SASCO sold to the Trustee certain CHL Mortgage Pass-Through Trust 2007-HY7 Mortgage Pass-Through Certificates (the "*2008-5 Underlying Securities*"), which LBHI sold to SASCO under that Securities Purchase Agreement, dated July 31, 2008, between LBHI and SASCO (the "*2008-5 Securities Purchase Agreement*").

### B. *Claim No. 20474*

U.S. Bank, as Trustee under that 2006-8 Trust Agreement, filed Claim No. 20474 on September 21, 2009.[5] Claim No. 20474 reflects a contingent secured claim in the amount of $49,236,363.00 for principal and interest due as of August 30, 2009 with respect to the Notes issued under the 2006-8 Trust, which is secured by collateral, including the 2006-8 Underlying Securities, in the event that the resecuritization transactions related to the 2006-8 Trust Agreement are deemed financing transactions and not purchase and sale agreements. In addition, Claim No. 20474 includes a secured claim on account of set off and recoupment rights with respect to funds held by the Trustee, the Administrator or contained in the applicable Note payment account that constitute property of the Debtor (if any). The Trustee as assignee under the 2006-8 Securities Purchase Agreement, also asserts a unsecured and/or administrative claim for breaches of representations and warranties thereunder, and alternatively a secured claim in the event that the purchase of the securities is deemed other than a sale transaction. Claim No. 20474 includes a claim for any other obligations, losses, fees and expenses which are unknown at this time and may be additional secured claims. The claims set forth in Claim 20474 continue to grow. A true and correct copy of the 2006-8 Trust Agreement was submitted with Claim No. 20474. A true and correct copy of the 2006-8 Securities Purchase Agreement is submitted herewith as **Exhibit B**.

---

[5] In accordance with the 2006-8 Trust Agreement, the Trustee purchased from SASCO certain Freddie Mac Multiclass Certificates, Series 3169, Class BK (the "*2006-8 Underlying Securities*"), which LBHI sold to SASCO pursuant to that Securities Purchase Agreement, dated June 30, 2006, between LBHI and SASCO (the "*2006-8 Securities Purchase Agreement*").

C.    *Claim No. 20484*

U.S. Bank, as Trustee under that 2006-9 Trust Agreement, filed Claim No. 20484 on September 21, 2009.[6] Claim No. 20484 reflects a contingent secured claim in the amount of $40,829,752.00 for principal and interest due as of August 30, 2009 with respect to the Notes issued under the 2006-9 Trust, which is secured by collateral, including the 2006-9 Underlying Securities, in the event that the resecuritization transactions related to the 2006-9 Trust Agreement are deemed financing transactions and not purchase and sale agreements. In addition, Claim No. 20484 includes a secured claim on account of set off and recoupment rights with respect to funds held by the Trustee, the Administrator or contained in the applicable Note payment account that constitute property of the Debtor (if any). The Trustee as assignee under the 2006-9 Securities Purchase Agreement, also asserts a unsecured and/or administrative claim for breaches of representations and warranties thereunder, and alternatively as a secured claim in the event that the purchase of the securities is deemed other than a sale transaction. Claim No. 20484 includes a claim for any other obligations, losses, fees and expenses which are unknown at this time and may be additional secured claims. The claims set forth in Claim 20484 continue to grow. A true and correct copy of the 2006-9 Trust Agreement was submitted with Claim No. 20484. A true and correct copy of the 2006-9 Securities Purchase Agreement is submitted herewith as **Exhibit C**.

---

[6] Pursuant to the 2006-9 Trust Agreement, SASCO sold to the Trustee certain Freddie Mac Multiclass Certificates, Series 3114, Class HA (the "*2006-9 Underlying Securities*"), which LBHI sold to SASCO under that Securities Purchase Agreement, dated September 29, 2006, between LBHI and SASCO (the "*2006-8 Securities Purchase Agreement*").

IV. **The Contracting Parties' Intentions Control Whether a Transaction is Considered a Purchase and Sale Transaction or a Secured Loan**

Under New York law, the intention of the contracting parties governs whether transactions should be characterized as purchase and sale agreements or secured loans.[7] *See Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp.2d 275, 300 (S.D.N.Y. 1998); *In re American Home Mortgage, Holdings, Inc.*, 388 B.R. 69, 90 (Bank. D. Del. 2008) (citing *Joseph v. Creek & Pines*, 217 A.D.2d 534, 535, 629 N.Y.S. (1995)); *In re Netia Holdings S.A.*, 278 B.R. 344, 355-56 (Bankr. S.D.N.Y. 2002). Moreover, when the parties' intentions are clearly set forth in the agreements, a court need not look beyond the four corners of the document. See *John Hancock Mut. Life Ins. Co. v. Amerford Intern. Corp.*, 22 F.3d 458, 462 (2nd. Cir. 1994); *Nationsbanc Commercial Corp. v. Chemical Bank*, 1994 WL 62945, at *2 (S.D.N.Y. 1994); *In re American Mortgage, Holdings, Inc.*, 388 B.R. at 90; *Granite Partners, L.P.*, 17 F. Supp.2d at 300; *In re Netia Holdings S.A.*, 278 B.R. at 355-56. "[I]gnoring the affirmative intent of the parties would inject unpredictability and insecurity in the manner by which major financial institutions obtain credit". *Granite Partners, L.P.*, 17 F. Supp.2d at 302.

V. **The Resecuritization Transactions are True Sales**

In the instant case, as set forth Section II above, each agreement explicitly states that the parties intended the transactions involving the transfer of the Underlying Securities to the Trustee to be sale and purchase agreements. (Securities Purchase Agreement, at §1(d), Trust Agreement at §2.01). Moreover, in the Securities Purchase Agreements, LBHI is explicitly designated as the "Seller" in the introductory paragraph. The first WHEREAS clause states "the Depositor desires to purchase from the Seller and the Seller desires to sell to the Depositor [the

---

[7] The Securities Purchase and Trust Agreements are each governed by New York Law. (Trust Agreement, at §7.04, Securities Purchase Agreement, §11).

Underlying Securities]." Section 1 of each Securities Purchase Agreement is entitled "Purchase and Sale of the Underlying Securities" (Securities Purchase Agreement, at §1). Section 1(a) thereof sets forth, "[s]et forth in Annex A is a list of obligations to be sold to the Depositor …." (*Id*. at §1(a))  Section 1(b) provides, "[t]he Seller hereby sells to the Depositor …, and the Depositor hereby purchases from the Seller, the Underlying Securities, …"  (*Id*., at § 1(b)). Furthermore, Section 2.01 of each Trust Agreements recites that "the Depositor … does hereby transfer, convey, sell and assign to the Trustee, on behalf of the Holders of the Certificates, without recourse, all the right, title and interest of the Depositor in and to the Underlying Securities, …" (Trust Agreement, at §2.01) "The assignment of the Underlying Securities accomplished hereby is absolute and intended as a sale." (*Id*.).

As a result of the plain and unambiguous language of the Trust and Securities Purchase Agreements, the intent of the parties to enter into purchase and sale agreements with respect to the transfer of the Underlying Securities from LBHI to SASCO and from SASCO to the Trustee is evident. The Trust and Security Purchase Agreements are purchase and sale agreements under New York law. Only out of an abundance of caution did the Trustee designate Claim No. 19877, Claim No. 20474 and Claim No. 20484 as secured claims.[8] Thus, the contingency that would give rise to claims secured by the Underlying Securities is moot, unless the Court deems the Trust and Security Purchase Agreements secured loan agreements, which is highly unlikely. The Trustee is prepared to stipulate with the Debtors that the Claims are not secured claims (except in regard to claims of set off and recoupment) if the Debtors will agree with the Trustee that the Trust and Securities Purchase Agreements transferring the Underlying Securities to the Trustee

---

[8]  As set forth in the Claims, secured claims asserted by the Trustee on account of set off and recoupment rights with respect to funds of LBHI held by the Trustee or the Administrator (if any) are not contingent and, presumably, not subject to the Debtors' objection.

were purchase and sale agreements and the Debtors have no property interest in the Underlying Securities.

### VI. The Objection is Procedurally Improper and Fails to Meet the Burden of Proof Necessary to Sustain the Objection

Moreover, if the Debtors are not prepared to stipulate that the Underlying Securities are not property of the Debtors' estates, the Trustee asserts that the Objection is procedurally improper and fails to meet the burden of proof necessary to sustain the Debtors' objections to the Claims. The Objection contends that the Trustee's claims "do not articulate any *valid* basis for treatment as a secured claim." (*Objection*, §9) (emphasis added). Rule 7001(2) of the Federal Rules of Bankruptcy Procedure and judicial law provides that an action to determine the validity of a lien or other interest in property should be commenced as, or with the protections of, an adversary proceeding rather than a contested matter. *See* FED. R. BANK. P. 7001(2); *In re Meticom, Inc.*, 301 B.R. 634, 639 (Bankr. S.D.N.Y. 2003); *In re Alliance Properties, Inc.*, 104 B.R. 306, 309-10 (Bankr. S.D. Cal. 1989). Furthermore, the Trustee cannot decipher the specific grounds upon which the Debtors object to the proof of claims if not due to the fact that the transactions are true sales. The Trustee should not be required to guess at the nature of the Debtors' objections.

The Objection also fails to meet the evidentiary burden necessary to transfer the burden to the Trustee to further evidence the validity of the Claims. A proof of claim is "prima facia evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion". *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y 2009). An objector must produce "evidence equal in force to the prima facie case which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency" to transfer the burden of proof back to the claimant. *Id*. The evidence necessary to rebut the presumptions that attach to a

proof of claim must be "substantial". *In re Micro-Precision Technologies, Inc.*, 303 B.R. 238, 243 (Bankr. D.N.H. 2003). The Debtors, however, have not produced or cited any evidence in the Objection that refutes an allegation essential to the legal sufficiency of the Claims. Furthermore, if the Debtors contest that the Securities Purchase Agreements and Trust Agreements are purchase and sale agreements, the Debtors "have the burden of demonstrating that the transaction is other than what it purports to be in the Agreement." *In re Owen*, 221 B.R. 56, 60 (Bankr. N.D.N.Y. 1998); *see also In re Uni Imaging Holdings, LLC*, 423 B.R. 406, 414 (Bankr. N.D.N.Y. 2010).

The Trustee acknowledges the advantage of expediency that is gained through the use of omnibus objections in the bankruptcy process, however, the Objection is legally insufficient in regard to the Claims and Debtors have not met their burdens of persuasion. Moreover, the Trustee is entitled to know the nature of the objection to the Claims prior to formulating a response. The Objection does not provide the Trustee notice of the specific grounds of the Debtors' objections. Furthermore, the secured status of the Claims is only relevant if the Court deems the transactions secured loan transactions, which is highly unlikely.

As such, the Trustee respectfully requests that the Objection be denied with respect to Claim No. 19877, Claim No. 20474 and Claim No. 20484. In compliance with the Notice of the Objection, the Trustee states that Timothy Pillar, VP, Corporate Trust Services, U.S. Bank National Association, EP-MN-WS1D, 60 Livingston Avenue, St. Paul, MN 55107-2292, Tel: (651) 495-3958 has authority to resolve these matters. All communications with U.S. Bank in regard to the Claims should be made through its attorneys, Chapman and Cutler LLP, at the contact information listed below.

WHEREFORE U.S. BANK respectfully requests that this Court enter an Order as follows: (a) to the to the extent the Debtors are willing to stipulate that the transfer of the Underlying Securities is a true sale, the Trustee requests that the Order reclassifying the claims (other than set off and recoupment claims, which remain valid secured claims) include the noted stipulation, and (b) to the extent the Debtors are not willing to so stipulate, enter an Order denying the objections to the Claims.

Respectfully submitted,

U.S. BANK NATIONAL ASSOCIATION, not individually but as Trustee

By: ___/s/ Franklin H. Top III___
One of Its Attorneys

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
Scott A. Lewis
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000

Craig M. Price
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
(212) 655-6000