Hearing Date and Time:  September 1, 2010 at 2:00 p.m. (Eastern Time)
Response Deadline:  August 19, 2010 at 4:00 p.m. (Eastern Time)

CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone:  (312) 845-3000
James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH-3660)

-and-

CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York  10017-5010
Telephone:  (212) 655-6000
Craig M. Price (CP-9039)

Attorneys for U.S. Bank National Association, as Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | CASE NO. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**RESPONSE OF U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE TO THE DEBTORS' THIRTY-FOURTH OMNIBUS OBJECTION TO CLAIMS (MISCLASSIFIED CLAIMS) (CLAIM NO. 23459)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES U.S. Bank National Association, not individually but as Trustee (*"U.S. Bank"* or the *"Trustee"*) under the terms of that Indenture by and among Spruce CCS, LTD., as Issuer (the "*Issuer*"), Spruce CCS, Corp., as Co-Issuer and U.S. Bank National Association as Trustee, dated April 28, 2008 (the "*Indenture*") by and through its counsel,

2860591.01.04-2.doc
1697028

Chapman and Cutler LLP, to respond (the "*Response*") to the Debtors' Thirty-Fourth Omnibus Objection to Claim No. 23459 (the "*Objection*").  In support of its Response, U.S. Bank states as follows:[1]

I. **Background**

The Debtors seek to reclassify from secured to unsecured status all or part of Claim No. 23459 (the "*Claim*") filed by the Trustee against Lehman Commercial Paper Inc. ("*LCPI*").  The Claim arises in connection with a securitization transaction involving the issuance of certain notes by the Issuer and Co-Issuer (the "*Notes*"), which are secured by certain assets, including an undivided participation interest in loans and other securities and investments (the "*Loan Interests*") that was sold by LCPI and Lehman Brothers Bankhaus AG ("*LBB*") to the Issuer under the terms of a Master Participation Agreement, dated as of April 28, 2008, between LCPI and LBB, as Sellers and Spruce CCS, Ltd., as Purchaser (the "*Participation Interest*" and "*Participation Agreement*").  Concurrent with the execution of the Participation Agreement, the Issuer assigned its rights, title and interest therein to the Trustee for the benefit and security of the Trustee, individually and in its capacity as trustee, and the senior and mezzanine Noteholders under the Indenture (the "*Secured Parties*").  The Participation Interest was also pledged by the Issuer to the Trustee for the benefit of the Secured Parties.

The Debtors object to the secured status of the Claim on the grounds that "such claim[ does] not articulate any valid basis for treatment as a secured claim". (*Objection*, at ¶9).  There is no further explanation, however, as to the basis of the Debtors' objection.  The transaction set forth under the Participation Agreement involves a true sale of the Participation Interest from LCPI and LBB to the Issuer, and therefore this Claim is not secured against LCPI on that basis.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Participation Agreement (as defined below).

- 2 -

As described in Section III hereof, as a precaution, the Claim asserts a contingent secured claim against LCPI, based on security interests granted and assigned to the Trustee in the Participation Interest under the Participation Agreement and Indenture, which security interests arise under the Participation Agreement in the event the transaction is ever deemed other than a sale transaction. Moreover, the Trustee's security interest in the Loan Interests, if applicable, is perfected by the Trustee's possession and/or control of the securities or by a UCC filing. The transaction under the Participation Agreement is a purchase and sale transaction and not a secured transaction. Furthermore, the Trustee is entitled to the Collections. The Trustee files this Response in the event that the Debtors adopt the position that the transaction is not a true sale and for some undisclosed reason the security interests therein are invalid or avoidable or that the Collections received do not belong to the Trust.

**II.    Granting Language of the Participation Agreement and Indenture**

Section 3 of the Participation Agreement, entitled *Intention of the parties*, provides:

> It is the intention of the parties hereto that each sale of interests in Loans hereunder shall be absolute and irrevocable and will provide the [Issuer] with the full risks and benefits of ownership of such interests so purchased (such that the Loan Interests would not constitute property of any Seller's estate in the event of a Seller's bankruptcy) and shall constitute a "sale of accounts," as such term is used in Article 9 of the UCC of the State of New York, to the extent applicable, and not a loan secured by such Loan Interests.  In the event that, contrary to the mutual intent of the Sellers and the [Issuer], any purchase of Loan Interests hereunder is not characterized as a sale but rather as a collateral transfer for security (or the transactions contemplated hereby are characterized as a financing transaction), it is the intent of the parties hereto that this Agreement shall constitute a security agreement under applicable law and that each purchase of the Loan Interests shall be deemed to be a secured loan made by the [Issuer] to each Seller in an amount equal to the aggregate of all amounts due and owing by such Seller to the [Issuer] hereunder, whether now or hereafter existing, due or to become due, direct or indirect or absolute or contingent, which loan shall be secured by a security interest in all of such Seller's right, title and interest now or hereafter existing and hereafter arising in, to and under (i) all of its respective Loan Interests, (ii) all of its respective Collections

>(as defined herein) and (iii) all proceeds of the foregoing (collectively, with regard to each Seller, its "**Seller's Collateral**").  In furtherance of the foregoing, each Seller hereby grants (A) to the [Issuer] in order to secure the repayment of all amounts due and owing by such Seller to the [Issuer] hereunder, whether now or hereafter existing, due or to become due, direct or indirect, or absolute or contingent, and (B) to the Trustee under the Indenture in order to secure the Issuer's obligations under the Indenture, but only to the extent an event of default under the Indenture shall have occurred as a result of the failure of such Seller to perform any of its obligations hereunder, a security interest in all of such Seller's right, title and interest now or hereafter existing in, to and under its Seller's Collateral.[2]

Section 23 of the Participation Agreement, entitled *Assignment of Participation Agreement*, sets forth

>Each Seller acknowledges that the [Issuer] is assigning all of its right, title and interest in, to and under this Agreement to the Trustee for the benefit of the Secured Parties named in the Indenture.  Each Seller consents to the provisions of such assignment.

The GRANTING CLAUSE of the Indenture, in part, provides:

>The Issuer hereby Grants to the Trustee, for the benefit and security of the Secured Parties, all of its right, title and interest in, to and under, in each case, whether now owned or existing, or hereafter acquired or arising, all loans, securities, financial assets, investment property, instruments, general intangibles, payment intangibles, accounts, including, without limitation, deposit accounts, money, documents, agreements, investments and all other property and assets of any type or nature in which the Issuer has an interest (excluding any money, securities, financial assets, investment property or other property and assets credited thereto and the Excepted Property) (collectively, the 'Collateral'), including, without limitation:
>
>>(a)   the Underlying Assets (which for the avoidance of doubt, may include Bonds, Loans and Participations, including the Participations evidenced by the [Participation Agreement]) …;
>
>>…;

---

[2] An Event of Default has occurred under 5.1(a) of the Indenture for failure to pay interest when due on the Notes, among others defaults, which occurred due to the Seller's failure to remit Collections as required under Section 5 of the Participation Agreement.

  (c) the [Participation] Agreement, .., the Administration Agency Agreement …;

  (d) the Issuer Accounts …; and

  (e) all Proceeds of any of the foregoing.

### III. Description of Claim No. 23459

Pursuant to Section 2 of the Participation Agreement, the Issuer purchased the Participation Interest, entitling the Issuer to receive from LCPI and LBB:

> (a) all Collections (as hereinafter defined) related to the principal amount of such Loan Interests;
>
> (b) all Collections related to interest, fees and make-whole amounts, if any, on the Loan Interests accruing from and after that Effective Date and any Collections related to accrued interest purchased by the Purchaser; and
>
> (c) to the extent permitted to be transferred under applicable law, all claims, suits, causes of action and any other right of the Seller (in its capacity as a lender under the Loans or purchaser under any participation interest), whether known or unknown, against the Borrower, lender, any other Obligor or any of their respective affiliates, agents, representatives, contractors, advisors or any other Person arising under or in connection with the Credit Document or that is in any way based on or related to any of the foregoing or the loan transactions governed thereby, including contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and purchased pursuant to this Agreement.[3]

LCPI was required to "promptly remit" to the Issuer, as received, all amounts in respect of the Loan Interests set forth in (a) and (b) above without set-off, counterclaim or deduction of any kind within 5 business days of receipt thereby. (Participation Agreement, at §5). The Collections were pledged to the Trustee under the Indenture (and directly to the Trustee by LCPI pursuant to

---

[3] Nothing in this Response shall be construed as a waiver of any claims or rights of the Trustee in regard to the Claim or otherwise. The Trustee reserves any and all rights and defenses with respect to the Claim and these proceedings, as set forth in paragraphs 10 and 11 thereof. A further description of the secured and other claims underlying the Claim is set forth in the Addendum attached thereto.

Section 3 of the Participation Agreement if the transaction is characterized as a secured loan) and the Issuer's rights, title and interests under the Participation Agreement were assigned to the Trustee thereunder. Neither LCPI nor LBB has remitted any Collections to the Issuer or Trustee with respect to the Loan Interests since the filing of the Petition herein, and absent an accounting, the Trustee is uncertain whether LCPI and LBB turned over all of the Collections pre-petition. Any funds held by LCPI, the Issuer or the Trustee relating to the transaction are not property of the Estate but are property of the Trust and LCPI's possession or assertion of rights over such funds does not transform the funds into property of the Estate, as described in Claim No. 23459. Claim No, 23459 asserts that LCPI has no legitimate legal right to hold or to prevent the transfer of such funds to third parties under the terms of the relevant documents. In addition, Claim No. 23459 sets forth that, pursuant to Section 10 of the Participation Agreement, LCPI and LBB have continuing obligations to perform further actions necessary to carry out the purposes and intent of the Participation Agreement. Claim No. 23459 also includes a claim against LCPI for breach of its obligations under the terms of that Administrative Agency Agreement, dated as of April 28, 2008, between Lehman Brothers Inc. ("*LBI*") and the Issuer, due to LCPI's assumption of LBI's obligations thereunder (the "*Agency Agreement*"). LCPI is in breach of its obligations under the Agency Agreement (and Indenture) for, among other breaches, failing to provide certain information to the Issuer and U.S. Bank, as Collateral Administrator, to facilitate reports required under the terms of the Indenture. Claim No. 23459 also asserts a claim for Trustee fees in the amount of $61,662.41 as of June 30, 2009.

Paragraph 8 of the Claim also sets forth that if the sale of the Participation Interest from LCPI and LBB to the Issuer is determined to be a financing transaction (rather than a true sale), the Trustee asserts secured claims against LCPI for $1,155,904,855 for principal and interest under the Notes (plus additional amounts for claims otherwise arising under the Participation

Agreement), which are secured by the Participation and Loan Interests and the other Seller's Collateral as set forth in Section 3 thereof (and Section II above). The Trustee also asserts a secured claim for set off and recoupment rights with respect to any and all funds held by the Trustee that constitute property of the Debtor (if any), and any and all other set off and recoupment rights. A true and correct copy of the Participation Agreement was submitted with Claim No. 23459 and is attached hereto as **Exhibit A**. A true and correct copy of the Indenture is attached hereto as **Exhibit B**.

### IV. The Contracting Parties' Intentions Control Whether a Transaction is Considered a Purchase and Sale Transaction or a Secured Loan

Under New York law, the intention of the contracting parties governs whether transactions should be characterized as purchase and sale agreements or secured loans.[4] *See Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp.2d 275, 300 (S.D.N.Y. 1998); *In re American Home Mortgage, Holdings, Inc.*, 388 B.R. 69, 90 (Bank. D. Del. 2008) (citing *Joseph v. Creek & Pines*, 217 A.D.2d 534, 535, 629 N.Y.S. (1995)); *In re Netia Holdings S.A.*, 278 B.R. 344, 355-56 (Bankr. S.D.N.Y. 2002). Moreover, when the parties' intentions are clearly set forth in the agreements, a court need not look beyond the four corners of the document. See *John Hancock Mut. Life Ins. Co. v. Amerford Intern. Corp.*, 22 F.3d 458, 462 (2nd. Cir. 1994); *Nationsbanc Commercial Corp. v. Chemical Bank*, 1994 WL 62945, at *2 (S.D.N.Y. 1994); *In re American Mortgage, Holdings, Inc.*, 388 B.R. at 90; *Granite Partners, L.P.*, 17 F. Supp.2d at 300; *In re Netia Holdings S.A.*, 278 B.R. at 355-56. "[I]gnoring the affirmative intent of the parties would inject unpredictability and insecurity in the manner by which major financial institutions obtain credit". *Granite Partners, L.P.*, 17 F. Supp.2d at 302.

---

[4] The Participation Agreement and Indenture are governed by New York Law. (Participation Agreement, at §18, Indenture, at §13.10).

- 7 -

### V. The Sale of the Participation Interest in the Underlying Loan Interests is a True Sale

In the instant case, as set forth Section II above, Section 3 of the Participation Agreement explicitly states that the parties intended the transaction involving the transfer of the Participation Interest in the underlying Loan Interests to the Issuer to be a sale and purchase transaction. (Participation Agreement, at §3). Moreover, in the Participation Agreement, LCPI is explicitly designated as a "Seller" and the Issuer is designated the "Purchaser". Section 21 of the Participation Agreement, entitled *Relationship Between Sellers and Purchaser*, asserts "[t]he relationship between the Seller and Purchaser shall be that of sellers and buyer and not that of debtor and creditor." The second WHEREAS clause, furthermore, indicates "each Seller desires to sell, assign and transfer to the Purchaser, without recourse, all of that Seller's Loan Interests and the Purchaser desires to purchase and assume from each Seller, without recourse, a participation interest in all of that Seller's Loan Interests." Section 2 provides, "each Seller hereby sells, and the Purchaser shall be entitled to, and by its acceptance hereof purchases, … an undivided 100% participation in each of the Loan Interests owned by such Seller …." Section 2 further states "[o]n the Effective Date, the Purchaser shall pay to each Seller in immediately available funds an amount for the Participation Interest sold to it by such Seller …."

As a result of the plain and unambiguous language of the Participation Agreement, the intent of the Sellers and the Issuer to enter into a purchase and sale agreement with respect to the transfer of the Participation Interest from the Sellers to the Issuer is evident. The Participation Agreement is a purchase and sale agreement and the Participation Interest and underlying Loan Interests have been pledged by the Issuer in favor of the Secured Parties free and clear of any property interest of the Debtors. Only out of an abundance of caution did the Trustee designate

Claim No. 23459 as a secured claim against LCPI.[5]  Thus, the contingency that would give rise to claims against LCPI secured by the Participation Interest is moot, unless the Court deems the Participation Agreement a secured loan agreement, which is highly unlikely.  The Trustee is prepared to stipulate with the Debtors that the Claim is not a secured claim (except in regard to claims of set off and recoupment) if the Debtors will agree with the Trustee that the Participation Agreement transferring the Participation Interest to the Issuer was a purchase and sale agreement and the Debtors' Estates have no property interest in the Participation Interest, the Loan Interests and the Collections.

## VI.  The Objection is Procedurally Improper and Fails to Meet the Burden of Proof Necessary to Sustain the Objection

Moreover, if the Debtors are not prepared to stipulate that the Participation Interest and underlying Loan Interests are not property of the Debtors' estates, the Trustee asserts that the Objection is procedurally improper and fails to meet the burden of proof necessary to sustain the Debtors' objections to the Claim.  The Objection contends that the Trustee's claims "do not articulate any *valid* basis for treatment as a secured claim".  (*Objection*, §9) (emphasis added).  Rule 7001(2) of the Federal Rules of Bankruptcy Procedure and judicial law provides that an action to determine the validity of a lien or other interest in property should be commenced as, or with the protections of, an adversary proceeding rather than a contested matter.  *See* FED. R. BANK. P. 7001(2); *In re Meticom, Inc*., 301 B.R. 634, 639 (Bankr. S.D.N.Y. 2003); *In re Alliance Properties, Inc*., 104 B.R. 306, 309-10 (Bankr. S.D. Cal. 1989).  Furthermore, the Trustee cannot decipher the specific grounds upon which the Debtors object to the proof of claim if not due to

---

[5] Secured claims asserted by the Trustee on account of set off and recoupment rights are not contingent and, presumably, not subject to the Debtors' objection.

the fact that the transactions is a true sale. The Trustee should not be required to guess at the nature of the Debtors' objections.

The Objection also fails to meet the evidentiary burden necessary to transfer the burden to the Trustee to further evidence the validity of the Claim. A proof of claim is "prima facia evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion". *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y 2009). An objector must produce "evidence equal in force to the prima facie case which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency" to transfer the burden of proof back to the claimant. *Id*. The evidence necessary to rebut the presumptions that attach to a proof of claim must be "substantial". *In re Micro-Precision Technologies, Inc*., 303 B.R. 238, 243 (Bankr. D.N.H. 2003). The Debtors, however, have not produced or cited any evidence in the Objection that refutes an allegation essential to the legal sufficiency of the Claim or its secured status. Furthermore, if the Debtors contest that the Participation Agreement is a purchase and sale agreement, the Debtors "have the burden of demonstrating that the transaction is other than what it purports to be in the Agreement." *In re Owen*, 221 B.R. 56, 60 (Bankr. N.D.N.Y. 1998); *see also In re Uni Imaging Holdings, LLC*, 423 B.R. 406, 414 (Bankr. N.D.N.Y. 2010).

The Trustee acknowledges the advantage of expediency that is gained through the use of omnibus objections in the bankruptcy process, however, the Objection is legally insufficient in regard to the Claim and the Debtors have not met their burdens of persuasion. Moreover, the Trustee is entitled to know the nature of the objection to the Claim prior to formulating a response. The Objection does not provide the Trustee notice of the specific grounds of the

Debtors' objections. Furthermore, the secured status of the Claim is only relevant if the Court deems the transaction a secured loan transaction, which is highly unlikely.

As such, the Trustee respectfully requests that the Objection be denied with respect to Claim No. 23459. In compliance with the Notice of the Objection, the Trustee states that Pamela Wieder, VP, Corporate Trust Services, U.S. Bank National Association, EP-MN-WS1D, 60 Livingston Avenue, St. Paul, MN 55107-2292, Tel: (651) 495-3961 has authority to resolve these matters. All communications with U.S. Bank in regard to the Claim should be made through its attorneys, Chapman and Cutler LLP, at the contact information listed below.

[*THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK*]

WHEREFORE U.S. BANK respectfully requests that this Court enter an Order as follows: (a) to the to the extent the Debtors are willing to stipulate that the transfer of Participation Interest is a true sale and that the Collections are property of the Trust and not LCPI, the Trustee requests that the Order reclassifying the claims (other than set off and recoupment claims, which remain valid secured claims) include the noted stipulation, and (b) to the extent the Debtors are not willing to so stipulate, enter an Order denying the objections to the Claim.

Respectfully submitted,

U.S. BANK NATIONAL ASSOCIATION, not individually but as Trustee

By: ___/s/ Franklin H. Top III___
One of Its Attorneys

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
Scott A. Lewis
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000

Craig M. Price
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
(212) 655-6000