**EXECUTION VERSION**

# MASTER PARTICIPATION AGREEMENT

This Master Participation Agreement (this "**Agreement**") is entered into as of April 28, 2008, between

(a)    Lehman Brothers Bankhaus AG, acting through its offices at 25 Bank Street, Canary Wharf, London E14 5LE;

(b)    Lehman Commercial Paper Inc. whose office is at 745 Seventh Avenue, New York, New York 10019 (each a "**Seller**" and together, the "**Sellers**"); and

(c)    Spruce CCS, Ltd. (the "**Purchaser**").

RECITALS:

*Whereas*, each Seller owns interests in the loans and other securities and investments identified in Exhibit A belonging to it (each a "**Loan**" and collectively, the "**Loans**") consisting of loans, advances and notes and interests in, to and under the related Credit Documents, as hereinafter defined as well as participations in the foregoing, (each a "**Loan Interest**" and collectively, the "**Loan Interests**"), pursuant to various credit agreements, indentures, note purchase agreements and other similar documents, each between a borrower (each, a "**Borrower**" and collectively, the "**Borrowers**"), where applicable, an agent for the relevant lenders or noteholders, and several financial institutions acting as lenders or noteholders (such credit agreements, note purchase agreements and/or participation agreements, as amended, supplemented, novated or otherwise modified from time to time, together with all guarantees, security agreements, mortgages, deeds of trust, letters of credit, reimbursement agreements, waivers and any other documents executed in connection therewith, hereinafter are referred to as the "**Credit Documents**"); and

*Whereas*, each Seller desires to sell, assign and transfer to Purchaser, without recourse, all of that Seller's Loan Interests and Purchaser desires to purchase and assume from each Seller, without recourse, a participation interest in all of that Seller's Loan Interests.

AGREEMENT

*Now therefore*, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the Sellers and the Purchaser hereby agree as follows:

1. *Definitions*. Capitalized terms used herein and not defined herein shall have the respective meanings attributed to them in an indenture, dated as of April 28, 2008 (the "**Indenture**"), by and among, among others, the Purchaser, as Issuer and US Bank National

Association, as Trustee. In addition, as used herein, the following terms shall have the following respective meanings:

"**Collections**" means and includes all payments or distributions received by or on behalf of a Seller from any Borrower in respect of the Loan Interests in which the Purchaser has purchased a Participation Interest hereunder and the proceeds of any collateral applied by a Seller to such Loan Interests.

"**Delayed-Draw Loan**": means a loan with respect to which a Seller may, under the terms of any relevant Credit Documents, be obligated to make or otherwise fund future term-loan advances to a borrower; *provided*, that once such loan (or portion thereof) has been funded, such loan (or portion thereof) shall cease to constitute a Delayed-Draw Loan.

"**Future Loan**" means each advance or loan a Seller is required to make under a Credit Document in relation to a Loan Interest which is a Delayed-Draw Loan or a Revolving Credit Facility.

"**Obligors**" means, collectively, the Borrowers and each guarantor, pledgor, subordinator or other person or entity directly or indirectly obligated in respect of the Loan Interests.

"**Revolving Credit Facility**": means: (a) a senior secured or senior unsecured loan facility, which provides a borrower with a line of credit against which one or more borrowings may be made up to the stated principal amount of such facility and which provides that such borrowed amount may be repaid and re-borrowed from time to time or (b) a loan with respect to which the Seller is obligated to make, pursuant to the terms of any relevant Credit Document or otherwise fund future term loan advances to a borrower.

2. *Participation*. Subject to the terms and conditions of this Agreement, each Seller hereby sells, and Purchaser shall be entitled to, and by its acceptance hereof purchases, as of the Effective Date (as hereinafter defined), an undivided 100% participation interest in each of the Loan Interests owned by such Seller as substantially set forth in Exhibit A hereto (each, a "**Participation Interest**" and, collectively, the "**Participation Interests**"), which shall entitle the Purchaser to receive:

(a) all Collections (as hereinafter defined) related to the principal amount of such Loan Interests;

(b) all Collections related to interest, fees and make-whole amounts, if any, on the Loan Interests accruing from and after the Effective Date and any Collections related to accrued interest purchased by the Purchaser; and

(c) to the extent permitted to be transferred under applicable law, all claims, suits, causes of action and any other right of the Seller (in its capacity as a lender under the Loans or purchaser under any participation interest), whether known or unknown, against the Borrower, lender, any other Obligor or any of their respective affiliates, agents, representatives, contractors, advisors or any other Person arising under or in connection with the Credit Documents or that is in any way based on or related to any of the foregoing or the loan transactions governed

2

NY:3498883.9

thereby, including contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and purchased pursuant to this Agreement.

On the Effective Date, the Purchaser shall pay to each Seller in immediately available funds an amount for the Participation Interest sold to it by such Seller equal to the product of (a) the aggregate amount for such Participation Interest specified on Exhibit A (as adjusted for any purchases or Collections in respect of principal received by Seller between the date hereof and the Effective Date) and (b) the Sales Price (expressed as a percentage) for such Participation Interest as specified on Exhibit A (the "**Purchase Price**").

3. *Intention of the parties*. It is the intention of the parties hereto that each sale of interests in Loans hereunder shall be absolute and irrevocable and will provide the Purchaser with the full risks and benefits of ownership of such interests so purchased (such that the Loan Interests would not constitute property of any Seller's estate in the event of a Seller's bankruptcy) and shall constitute a "sale of accounts," as such term is used in Article 9 of the UCC of the State of New York, to the extent applicable, and not a loan secured by such Loan Interests. In the event that, contrary to the mutual intent of the Sellers and the Purchaser, any purchase of Loan Interests hereunder is not characterized as a sale but rather as a collateral transfer for security (or the transactions contemplated hereby are characterized as a financing transaction), it is the intent of the parties hereto that this Agreement shall constitute a security agreement under applicable law and that each purchase of the Loan Interests shall be deemed to be a secured loan made by the Purchaser to each Seller in an amount equal to the aggregate of all amounts due and owing by such Seller to the Purchaser hereunder, whether now or hereafter existing, due or to become due, direct or indirect or absolute or contingent, which loan shall be secured by a security interest in all of such Seller's right, title and interest now or hereafter existing and hereafter arising in, to and under (i) all of its respective Loan Interests, (ii) all of its respective Collections (as defined herein) and (iii) all proceeds of the foregoing (collectively, with regard to each Seller, its "**Seller's Collateral**"). In furtherance of the foregoing, each Seller hereby grants (A) to the Purchaser in order to secure the repayment of all amounts due and owing by such Seller to the Purchaser hereunder, whether now or hereafter existing, due or to become due, direct or indirect, or absolute or contingent, and (B) to the Trustee under the Indenture in order to secure the Issuer's obligations under the Indenture, but only to the extent an event of default under the Indenture shall have occurred as a result of the failure of such Seller to perform any of its obligations hereunder, a security interest in all of such Seller's right, title and interest now or hereafter existing in, to and under its Seller's Collateral.

4. *Effective Date.* From and after April 28, 2008 (the "**Effective Date**"), the Participation Interests purchased hereunder shall be for the account and risk of the Purchaser, without any recourse to the Sellers, except as expressly provided herein. The transfer of the Participation Interests shall be deemed effective as of the Effective Date. The Purchaser hereby assumes full risk and responsibility with respect to repayment of the Participation Interests without recourse to the Sellers and, in the event of any failure by any Borrower to fulfill any of its obligations under the terms of the related Credit Documents, none of the Sellers shall be under any liability to the Purchaser for payment of principal, interest or fees other than as provided in Paragraph 5.

5. *Payments.* Each Seller shall promptly remit to Purchaser, as received, all amounts received in respect of its respective Loan Interests described in clauses (a) and (b) of Section 2 of

3

NY:3498883.9

this Agreement without set-off, counterclaim or deduction of any kind within five (5) business days after receipt thereof from a Borrower, to the account specified by the Purchaser to such Seller in writing. If the applicable payment is received by a Seller not later than 12:00 noon (New York City time) on any day, the corresponding payment shall be made to the Purchaser not later than 5:00 p.m. (New York City time) on such day, and otherwise not later than 5:00 p.m. (New York City time) on the immediately succeeding business day.

6. *Sharing of Liabilities and Expenses*. Purchaser shall pay to each Seller, from time to time and upon such Seller's demand therefor, an amount equal to all liabilities, losses, out-of-pocket costs and expenses (including reasonable attorneys' fees) (collectively, the "**Liabilities**") suffered or incurred by such Seller from and after the Effective Date in administering and collecting on its respective Loan Interests or which otherwise arise in connection therewith or in connection with preserving any collateral security therefor, except for such Liabilities as may be caused by the negligence or willful misconduct of such Seller and except to the extent that such Seller has theretofore been reimbursed for such Liabilities by or on behalf of any Borrower. Purchaser shall be entitled to any such amounts recovered by such Seller from, or on behalf of, any Borrower after Purchaser has paid such Seller with respect to such Liabilities. Each Seller shall promptly remit to the Purchaser an amount equal to any payment received by that Seller on account of increased costs, break funding payments or expenses incurred by the Purchaser in connection with the Participation Interest.

7. *Information; No Recourse or Warranty; Responsibilities*. Each Seller holds in its possession for the benefit of itself and the Purchaser true and complete copies of all of the documents in connection with its respective Loan Interests which constitute all documents that Purchaser considers necessary in deciding to enter into this Agreement and participate in the Loan Interests as provided herein. It is understood and agreed that none of the Sellers make any express or implied representations or warranties of any kind or character with respect to the genuineness, validity, effectiveness, enforceability, value, priority, perfection or collectability of the Loan Interests, any collateral security therefor or the Credit Documents, nor with respect to the solvency, financial condition or financial statements of any of the Borrowers, and by its acceptance hereof, Purchaser agrees that the Sellers shall be free of liability on account of Purchaser's Participation Interests described herein with respect to anything a Seller may do or refrain from doing in good faith and in the exercise of its judgment, *provided, however*, that each Seller agrees to use the same care in protecting the interests of the Purchaser in the Loan Interests as it uses for similar interests held by it solely for its own account and each Seller agrees to account to Purchaser as herein set forth for the share from time to time applicable to Purchaser's Participation Interests hereunder in Collections. Whenever a Seller receives a payment of principal of, or interest, fees and make-whole amounts, if any, on its respective Loan Interests, that Seller will accept such payment for the account and sole benefit of, and as agent for, the Purchaser and promptly pay over to the Purchaser the amount so received. In administering the Loan Interests and the Credit Documents, none of the Sellers shall be bound to ascertain or inquire as to the performance of any of the terms, provisions or conditions of any thereof on the part of any Borrower or any other person, shall be entitled to rely upon any statement or notice, however sent, believed by it to be genuine and correct and believed by it to be sent by the proper person, may consult with counsel and shall be fully protected in any action taken or omitted to be taken by it in accordance with the advice or opinion of such counsel, may employ agents or attorneys-in-fact and shall not be liable for the default or misconduct of any

4

such person selected by it with due care, and shall not be responsible for the performance of the payment or other obligations of the Borrowers or the value of any collateral securing the same.

8. *Borrower Information*.  Upon request of Purchaser, a Seller shall provide Purchaser with copies of any information in that Seller's possession which was received pursuant to the provisions of any Credit Document and, to the extent not otherwise available to Purchaser, the relevant Seller shall use its best efforts to provide Purchaser, following Purchaser's written request therefor, such current factual information that Purchaser specifically requests which is then in that Seller's possession and relating to the status of the Loan Interests or any Borrower's financial condition; *provided* that Seller shall not be required to provide Purchaser with any information in violation of any law or any contractual restriction set forth in the Credit Documents on the disclosure thereof.

9. *Representations and Warranties*.  (a) Purchaser represents and warrants to each Seller that (i) Purchaser is purchasing the Participation Interests hereunder for its own account in the ordinary course of business not with a view to, or in connection, with any subdivision, resale, or distribution thereof, (ii) Purchaser is engaged in the business of entering into transactions of the nature contemplated herein, (iii) Purchaser has full power and authority to execute, deliver and perform its obligations under this Agreement, and (iv) Purchaser is incorporated in the Cayman Islands.  (b) Each Seller represents and warrants to the Purchaser that, as of the date hereof and as of the Effective Date except pursuant to this Agreement, (i) it is the sole legal and beneficial owner and holder of the rights comprising each Loan Interest expressed to be belonging to it with good title thereto, free and clear of all liens, charges, encumbrances or other security interests as of the date hereof, and is not a party to any agreement (other than this Agreement) which would result in any lien, charge or other encumbrance, (ii) the aggregate amounts owed by the respective Borrowers under or in respect of its respective Loan Interests are not less than the amounts set forth in Exhibit A hereto and (iii) it has full power and authority to execute, deliver and perform its obligations under this Agreement.

10. *Further Assurances*.  From and after the date hereof, Purchaser and each Seller each covenants and agrees to execute and deliver all such agreements, instruments and documents and to take all such further actions as the other party hereto may reasonably deem necessary from time to time to carry out the intent and purposes of this Agreement and to consummate the transactions contemplated hereby.

Each Seller will at its own expense in order to reflect the purchase and sale transaction accurately on its books, prepare and execute (or cause to be prepared) for filing a financing statement relating to the sale of the Loan Interests set out in Exhibit A or amendments thereto (as permitted pursuant hereto).

11. *Other Financings*.  Purchaser shall have no interest, by virtue of this Agreement and Purchaser's rights hereunder or otherwise, in any future extension of credit or financing transactions by a Seller to, on behalf of, or with, any Borrower or any guarantees or collateral therefor, or any property now or hereafter in the possession or control of a Seller which may be or become security for the obligations of any Borrower arising under any Credit Document by reason of the general description of indebtedness, secured or otherwise; *provided* that, if payments in respect of any guarantees or the proceeds of any such collateral shall be applied to

5

NY:3498883.9

any of the obligations of any Borrower described in clauses (a) and (b) of Section 2 hereof, then Purchaser shall be entitled to share in such application as set forth in Section 2 hereof.

12. *Amendments, Waivers, etc.* None of the Sellers may enter into any amendment or modification of, or waive compliance with the terms of, or vote in relation to any event matter or thing under any Credit Document without the consent of Purchaser. If a Seller shall at any time request in writing Purchaser's consent or direction to any such matter for which Purchaser's consent or direction is required and shall not receive a response to such request within seven (7) business days after Purchaser has received such request (or within such earlier period as a Seller may notify to Purchaser in connection with a specific request), Purchaser shall be conclusively deemed to have refused to give such consent and that Seller shall be entitled to thereafter act on the basis that Purchaser has denied such consent.

13. *Savings Clause.* Notwithstanding any other provision of this Agreement, with respect to each Participation Interest: (i) nothing contained herein shall grant to the Purchaser any rights which the relevant Credit Documents require a Seller to retain; (ii) this Agreement shall be deemed to incorporate any provisions required by any Credit Document to be incorporated in order to transfer the related Participation Interest hereunder; and (iii) this Agreement shall be deemed to omit any provision which any Credit Document requires to be omitted in order to transfer the related Participation Interest hereunder.

14. *Further Sale, Assignment and Repurchase.* To the extent permitted under the related Credit Documents, the Purchaser shall be only entitled to deal with the Participation Interests in the manner set out in the Indenture. Purchaser agrees that any sale or disposition of Purchaser's Participation Interest will be made in accordance with applicable securities laws.

None of the Sellers shall sell, assign, transfer, mortgage, pledge, grant a lien on or otherwise deal with or encumber any of its respective rights or obligations in or to the Loan Interests to the extent such interests relate to the Participation Interests or any other distributions or payments with respect thereto or any of its rights or obligations under this Agreement without the prior written consent of Purchaser.

15. *Waivers.* No delay or omission by any party to exercise any right under this Agreement shall impair any such right, nor shall it be construed to be a waiver thereof. No waiver of any single breach or default under this Agreement shall be deemed a waiver of any other breach or default.

16. *Withholding Tax*. Purchaser represents and warrants that payments to it under this Agreement are not subject to U.S. withholding tax. Upon request from time to time, Purchaser shall promptly provide to each Seller an appropriately executed Internal Revenue Service form or such other evidence as shall be necessary to establish that payments made to Purchaser hereunder are exempt from U.S. withholding tax. In addition to the foregoing, (a) each Seller agrees that prior to the final maturity of each Loan Interest in which it has sold a participation (or for so long as Purchaser holds each such the Participation Interest), the relevant Seller will maintain a register with respect to each applicable Participation Interest as to the principal and interest of the Participation Interest and the name and address of Purchaser and (b) each Seller agrees that it will (i) notify each Borrower of the participation contemplated hereby prior to the first date following the Effective Date on which such Borrower is obligated to make a payment

6

in respect of the underlying Loan and (ii) provide each relevant paying agent or withholding agent a copy of an IRS Form W-9 (or appropriate replacement IRS form) duly completed by Purchaser prior to the Effective Date, or, in the case the Purchaser ceases to be an entity disregarded from its owner for U.S. federal tax purposes, or such owner is not a U.S. person within the meaning of section 7701(a) (30) of the Internal Revenue Code, such other form as may be appropriate for this purpose.

17. *Notices.*  Whenever this Agreement requires or permits any consent, approval, notice, request, or demand from one party to another, the consent, approval, notice, request, or demand must be in writing and shall be deemed effective when delivered, if sent by courier or by registered or certified mail, or when receipt is confirmed, if sent by telecopy, each case at the address or telecopy number set forth below the relevant party's signature hereto or at such other address or telecopy number as may be provided by either party to the other party.

18. *Illegality.  Construction; Governing Law*.  The illegality or unenforceability of any provision of this Agreement shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Agreement.  Paragraph headings used in this Agreement are for convenience of reference only and shall not affect the construction of this Agreement.  The laws of the State of New York shall govern the rights and duties of the parties hereto and the interpretation hereof (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).

19. *Payment in Respect of Future Loans*.  Each Seller shall notify the Purchaser promptly in writing if and to the extent that it receives notice from a Borrower requesting a Future Loan.  Each notice shall specify the currency, amount, and date of such Future Loan and the relevant Seller's bank account details for payment.

Not later than 2:00 p.m. (New York City time) on the date so specified for such Future Loan the Purchaser shall pay to the relevant Seller, by deposit into the relevant Seller's account, in immediately available funds, without set-off, counterclaim or deduction of any kind, the amount of such Future Loan.  The effectiveness of the sale of a Future Loan shall be subject to receipt by the Seller of said amount as provided herein.

20. *Survival of Certain Provisions*.  All representations and warranties made herein by the parties hereto and the provisions of Section 24 and 25 shall survive the execution, delivery and performance of this Agreement.

21. *Relationship Between Sellers and Purchaser*.  The relationship between the Sellers and Purchaser shall be that of sellers and buyer and not that of debtor and creditor.  Nothing contained in this Agreement shall establish any fiduciary, partnership, joint venture or similar relationship between or among the parties hereto.  This Agreement is intended to, and upon execution hereof and satisfaction or waiver of the conditions precedent set forth herein shall, effect a true sale of the Participation Interests.

22. *Entire Agreement*.  This Agreement (a) embodies the entire Agreement between the parties, supersedes all prior agreements and understandings between the parties, if any, relating to the subject matter hereof, and may be amended, and any provision hereof may be waived, only by an instrument in writing executed by each party hereto and with the prior consent of S&P ,

7

and (b) may be executed in any number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one Agreement. Transmission by telecopier of an executed counterpart of this Agreement shall be deemed to constitute due and sufficient delivery of such counterpart.

23. *Assignment of the Participation Agreement.* Each Seller acknowledges that the Purchaser is assigning all of its right, title and interest in, to and under this Agreement to the Trustee for the benefit of the Secured Parties named in the Indenture. Each Seller consents to the provisions of such assignment.

24. *Limited Recourse.* Notwithstanding any other provision of this Agreement, each of the Sellers hereby agrees that the Purchaser's obligations hereunder are limited in recourse to the proceeds of the collateral available for the payment thereof subject to the security interest created therein by the Indenture. Upon the realization and distribution of the proceeds of the collateral in accordance with the Indenture, the outstanding obligations of, and any claims against the Purchaser shall be extinguished. The Purchaser agrees that no recourse shall be had for the payment of principal or interest on a Loan against any Seller other than against a Seller for failure to pay, in accordance with this Agreement, an amount actually and finally received by such Seller and due to the Purchaser. Each of the Sellers and the Purchaser further agrees to not take any action against any employee, director, shareholder, affiliate or administrator of a Seller or the Purchaser, as applicable, in relation to this Agreement.

25. *Non-Petition.* None of the Sellers shall cause or join in the filing of a petition in bankruptcy against the other party hereto for any reason until the expiration of the period which is the later of the applicable preference period then in effect or one year and one day after the final payment of any debt securities or notes issued by the Purchaser, as applicable and acknowledge that the Trustee is intended to be a third-party beneficiary hereunder.

[The remainder of the page is intentionally blank.]

NY:3498883.9

08-13555-mg    Doc 10912-1    Filed 08/19/10    Entered 08/19/10 15:26:36    Exhibit A
Pg 9 of 13

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written by their respective duly authorized officers.

**SELLER:**

**LEHMAN COMMERCIAL PAPER INC.**

By: _____
Name: SALLY M. NANCOZ
Title: AUTHORIZED SIGNATORY

| Notice Address: | | |
|---|---|---|
| | Company: | Lehman Brothers |
| | Department: | High Grade Loan Portfolio Group |
| | Address: | 745 7th Avenue, 5th Floor |
| | | New York, NY 10019 |
| | Telephone: | 212-526-5347 -Greg Smith |
| | E-Mail Address: | gresmith@lehman.com |

**SELLER:**

**LEHMAN BROTHERS BANKHAUS AG**

By: _____
Name:
Title:

| | | |
|---|---|---|
| Notice Address: | Company: | Lehman Brothers |
| | Department: | High Grade Loan Portfolio Group |
| | Address: | 25 Bank Street |
| | | London E14 5LE |
| | Telephone: | +44 20 710 39936 – Patrick Marshall |
| | E-Mail Address: | pmarschal@lehman.com |

JULIAN WHEELER        NEILS RIBEIRO
VP                    VP

Master Participation Agreement – Spruce CCS

PURCHASER:

SPRUCE CCS, Ltd.

By: _____
   Name:   **Chris Marett**
   Title:    **Director**

Notice Address:  c/o Maples Finance Limited,
                   P.O. Box 1093 Boundary Hall
                   Cricket Square
                   George Town
                   Grand Cayman, Cayman Islands
                   KY1 1102
                   Telephone: (345) 945-7099
                   Facsimile: (345) 945-7100
                   Attention: The Directors

**EXHIBIT A**

**Spruce CCS, Ltd.**

Portfolio

| Loan | Facility | Total Par | Prices |
|---|---|---:|---:|
| ARINC Incorporated | FIRST LIEN TERM | 44,887,500.00 | 85.00 |
| ASHMORE ENERGY INTERNATIONAL | 5-YEAR REVOLVER | 10,000,000.00 | 96.00 |
| CDW CORP. | SR. SUBORDINATED BRIDGE LOAN | 150,000,000.00 | 75.00 |
| Cenveo Corporation | TERM LOAN | 45,000,000.00 | 100.00 |
| CHOICEPOINT SERVICES INC. | TERM | 14,625,000.00 | 95.50 |
| CIT GROUP (MASTER) | REVOLVER | 2,500,000.00 | 90.00 |
| CITADEL LIMITED PARNERSHIP HOLDINGS LLC | TERM LOAN | 37,500,000.00 | 99.25 |
| COUNTRYWIDE HOME LOANS, INC. | 5-YR REVOLVER | 88,750,000.00 | 89.00 |
| CPQ MIDCO II CORPORATION  C/O THE CARLYLE GROUP | FIRST LIEN TERM LOAN | 49,874,686.72 | 85.00 |
| Edgen Murray | UK TERM LOAN | 992,500.00 | 72.00 |
| FA SUB 3 LIMITED | REVOLVER | 5,263,158.00 | 95.50 |
| FA SUB 3 LIMITED | TERM LOAN | 50,000,000.00 | 97.75 |
| Fairpoint Communications, Inc. | TERM LOAN A | 37,500,000.00 | 87.00 |
| Fairpoint Communications, Inc. | TERM LOAN B | 9,500,000.00 | 88.00 |
| FIRST DATA CORPORATION | SR. CASH PAY BRIDGE | 51,500,000.00 | 83.50 |
| FORTRESS INVESTMENT GROUP LLC | DELAYED DRAW TERM LOAN | 2,885,000.00 | 96.75 |
| FRONTIER DRILLING USA, INC. | 5-YR REVOLVER | 7,058,823.53 | 90.00 |
| HMH PUBLISHERS LLC | BRIDGE TERM | 26,151,515.17 | 96.00 |
| HMH PUBLISHERS LLC | SECOND LIEN TERM | 150,000,000.00 | 89.00 |
| HYP Media LLC | TERM LOAN | 64,837,500.00 | 85.00 |
| INVESTCORP S.A., LUXEMBOURG | TERM LOAN FACILITY | 25,000,000.00 | 99.25 |
| ISTAR FINANCIAL INC. | 5-YR DOLLAR COMMITMENT | 57,000,000.00 | 86.00 |
| KKR PEI INVESTMENTS L.P. | TRANCHE A REVOLVER | 25,000,000.00 | 96.50 |
| LABORATORY CORPORATION OF AMERICA HOLDINGS. | FIRST LIEN TERM | 29,625,000.00 | 98.50 |
| Metavante Corporation | 7 YR TERM | 31,918,143.01 | 94.00 |
| OZ MANGEMENT LP | TERM LOAN B | 37,500,000.00 | 97.00 |
| PECOS INVESTORS LLC | TERM LOAN | 15,000,000.00 | 99.00 |

| Loan | Facility | Total Par | Prices |
|---|---|---:|---:|
| Petroleos Mexicanos | RCF A | 12,500,000.00 | 98.50 |
| Petroleos Mexicanos | RCF B | 12,500,000.00 | 96.50 |
| Precision Partners | US DELAYED DRAW TERM LOAN | 6,000,740.63 | 95.00 |
| QVC, Inc. | DELAYED DRAW TERM LOAN | 25,107,142.86 | 97.00 |
| QVC, Inc. | TERM LOAN | 21,142,857.14 | 98.00 |
| Sequa Corporation | CASH COMMITMENT | 50,000,000.00 | 90.50 |
| SHPS, INC | TERM LOAN | 7,500,000.00 | 95.00 |
| TC Group Investment Holdings, L.P. | DELAY DRAW TERM LOAN | 14,857,142.86 | 97.25 |
| TC Group Investment Holdings, L.P. | TERM LOAN | 38,357,142.85 | 97.25 |
| TRANSOCEAN INC | BRIDGE TERM | 39,061,000.01 | 99.90 |
| Tribune Company | SR. UNSECURED BRIDGE | 12,000,000.00 | 69.00 |
| UNIVISION COMMUNICATIONS INC. | REVOLVER | 45,000,000.00 | 78.00 |
| VERTRUE INCORPORATED | 2nd Lien TERM LOAN | 77,600,000.00 | 82.50 |
| VEYANCE TECHNOLOGIES, INC. | INITIAL TERM LOAN | 870,000.00 | 80.75 |
| WHITE MOUNTAINS INSURANCE GROUP, LTD., | 5-YR REVOLVER | 28,750,000.00 | 98.25 |
| TPG Austin Porfolio Holding | Term Loan | 112,500,000.00 | 99.00 |
| Interstate Hotels/ Interstate Operating | Term Loan | 12,993,750.00 | 96.00 |
| Glimcher Realty Trust | Revolver | 25,000,000.00 | 97.50 |
| Wintergames (Intrawest) | Canadian Term Loan | 175,000,000.00 | 96.00 |
| DCP MIDSTREAM OPERATING, LP | Revolver | 38,541,176.10 | 98.00 |
| TISHMAN SPEYER REAL ESTATE | REVOLVER | 7,500,000.00 | 90.00 |
| STALLION OILFIELD SERVICES LTD., | REVOLVER | 5,000,000.00 | 94.00 |
| Psychiatric Solutions Inc. | REVOLVER | 10,000,000.00 | 95.00 |
| Targa Resources, Inc | 5-YEAR REVOLVER | 14,000,000.00 | 91.50 |
| TXU ELECTRIC DELIVERY COMPANY (Oncor) | REVOLVER 2 BIL | 125,000,000.00 | 97.50 |
| RESIDENTIAL CAPITAL LLC 3YR TL 7-28-05 | 3 YEAR TERM LOAN | 2,500,000.00 | 90.00 |
| COOPER-STANDARD AUTOMOTIVE INC. 12-23-04 | USD REVOLVER | 2,500,000.00 | 94.25 |
| REGENCY GAS SERVICES LP 4TH A&R 8-15-06 | 5 YEAR REVOLVER | 11,500,000.00 | 95.50 |
| GEORGIA GULF (10/3/06) | 5-YR DOMESTIC REVOLVER | 25,000,000.00 | 86.50 |
| | | 2,028,149,778.88 | |