**Hearing Date: September 1, 2010 at 2:00 p.m.**

ENTWISTLE & CAPPUCCI LLP
280 Park Avenue, 26th Floor West
New York, New York 10017
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

*Counsel for New York State Comptroller
Thomas P. DiNapoli, as Sole Trustee of
the New York State Common Retirement Fund*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
|  |  |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., | Case No. 08-13555 (JMP) |
| Debtor. | (Jointly Administered) |

---------------------------------------------------------------x

**OBJECTION TO DEBTORS' THIRTY-FIRST OMNIBUS OBJECTION TO
CLAIMS (INSUFFICIENT DOCUMENTATION CLAIMS)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

      New York State Comptroller Thomas P. DiNapoli (the "Comptroller"), as sole Trustee of the New York State Common Retirement Fund ("NYSCRF" or the "Fund"), hereby objects to Debtors' Thirty-First Omnibus Objection to Claims (Insufficient Documentation Claims), dated July 19, 2010 (the "Thirty-First Objection"), as it applies to the Fund's proof of claim (No. 29068). As grounds for his objection, the Comptroller states as follows:

**Background**

1. NYSCRF holds and invests the assets of the New York State and Local Employees' Retirement System and the New York State and Local Police and Fire Retirement System. It provides pension, disability and death benefits for New York state and local government employees and employees of certain other participating employers. As of March 31, 2010, NYSCRF had more than one million members, beneficiaries and retirees, and total net assets of approximately $132.5 billion, making it among the largest public pension funds in the United States.

2. As part of its investments on behalf of its members, beneficiaries and retirees, NYSCRF owns billions of dollars of common stock in approximately 3,000 foreign and domestic companies. In the years prior to its collapse, Lehman Brothers Holdings Inc. ("LBHI") was one of the companies in which NYSCRF invested substantially. Indeed, in the three years before LBHI declared bankruptcy, the Fund purchased more than 4.9 million common shares of LBHI.

3. On September 15, 2008, and continuing periodically thereafter, LBHI and certain of its subsidiaries (collectively, the "Debtors") commenced with this Court voluntary cases under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

4. The same day, because of Debtors' bankruptcy, NYSCRF sold the vast majority of its remaining shares of LBHI common stock, totaling more than 4.5 million shares, for between $0.18 and $0.30 per share. On September 17, 2008, NYSCRF sold the final 1,000 shares it owned for $0.14 per share. Needless to say, the price realized on these shares was a tiny fraction of the price at which NYSCRF purchased them (LBHI

common stock traded as high as $82 in 2007). The Fund lost over two-hundred million dollars on its investments in LBHI common stock.

5. On October 20, 2008, The Walt Disney Company ("Disney"), a purported creditor of one or more of the Debtors, filed a motion for appointment of an examiner to investigate, among other things, certain intercompany transfers and administrative claims between LBHI and its affiliates and prepetition conduct by certain of the Debtors' officers and directors.

6. Believing the subject matter of the investigation proposed by Disney was improperly narrow and that LBHI's collapse may have been precipitated in part by fraudulent conduct by the company's management and employees, on November 4, 2008, the Comptroller cross moved for, _inter alia_, appointment of an examiner with expanded powers to investigate, as provided by Sections 1104(c) and 1106(a) of the Bankruptcy Code, potential fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the management of LBHI.

7. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner (the "Examiner") in the Debtors' chapter 11 cases, and on January 20, 2009, the Court approved the U.S. Trustee's appointment of the Examiner. On February 17, 2009, the Court approved the Examiner's preliminary work plan, which was the result of negotiation and consultation with, among others, Disney and the Comptroller and a number of other interested parties that made submissions concerning the appointment of an examiner. The work plan included potential investigation into the subject matters set forth in Sections 1104(c) and 1106(a) of the Bankruptcy Code.

8. On July 2, 2009, the Court entered the Bar Date Order setting September 22, 2009 as the deadline to file proofs of claim against the Debtors. The Bar Date Order provided that persons or entities that hold an interest in the Debtors based on the ownership of common or preferred stock were not required to file a proof of claim, but that such persons or entities:

> who wish to assert claims (as opposed to ownership interests) against the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the Bar Date…

(See Bar Date Order at 4).

9. To safeguard the Fund's potential right to undertake appropriate actions later to recover the losses it sustained from its investments in LBHI common stock, on September 22, 2009, the Comptroller timely submitted a proof of claim (No. 29068) on behalf of the Fund (the "NYSCRF Proof of Claim").[1]

10. The NYSCRF Proof of Claim was for $216,281,686.01, which consisted of the losses the Comptroller's expert calculated that the Fund sustained on its investments in LBHI common stock over the previous three years.[2] The proof of claim identified the "Basis for Claim" as "Losses from transactions in common stock of Lehman Brothers Holdings Inc." (See Exhibit A). This adequately notified the Debtors that the basis of the Fund's claim was common stock losses. NYSCRF did not attach its trading history in LBHI common stock to the proof of claim because such information is confidential and reflects proprietary information and processes that the Fund did not and

---

[1] The NYSCRF Proof of Claim is attached hereto as Exhibit A.

[2] Relevant portions of the summary of this calculation is attached as Exhibit B.

-4-

does not want to become public. The Fund was willing, and is willing to do so now if necessary, to provide to the Debtors the Fund's LBHI relevant trading history subject to a confidentiality agreement among the parties.

11. On March 11, 2010, the Court made public the Examiner's report into the causes of LBHI's collapse. Included in the report were revelations that the company used accounting gimmickry to hide the true size of its balance sheet and its exposure to risky-assets, which the report opined may be the basis for colorable claims against certain of LBHI's former employees, and others.

12. On July 19, 2010, Debtors filed their Thirty-First Objection seeking an order "disallowing and expunging" 196 proofs of claim, including the NYSCRF Proof of Claim, on the sole basis that these proofs of claims "do not include any supporting documentation or an explanation as to why such documentation is unavailable." (See Objection at 5).

**The NYSCRF Proof of Claim Should Not Be Disallowed or Expunged**

13. As a threshold matter, the NYSCRF Proof of Claim provided adequate information for the Debtors to determine the basis of the proof of claim. It plainly stated that the basis for the claim was losses from transactions in common stock. The NYSCRF Proof of Claim did not attach the Fund's trading history in LBHI common stock, which consists of dozens of pages of proprietary information that the Fund did not and does not want to become public, because such information could be and can be provided to the Debtors later, if necessary, pursuant to a confidentiality agreement.

14. In any case, lack of documentation is not a proper basis summarily to disallow or expunge the NYSCRF Proof of Claim. "It is well established that the only

-5-

substantive grounds for disallowance of a claim are expressly set forth in the Bankruptcy Code." In re Porter, 374 B.R. 471, 480 (Bankr. Dist. Conn. 2007). Indeed, "Bankruptcy Code § 502(b) provides nine substantive categories of claims that will be disallowed." In re Minbatiwalla, 424 B.R. 104, 119 (Bankr. S.D.N.Y. 2010); 11 U.S.C. § 502(b). However, "Section 502(b) does not identify 'insufficient documentation' as a basis to disallow a claim." Id. at 119-20. See also In re Moreno, 341 B.R. 813, 814 (Bankr. S.D. Fla. 2006) ("the Court concludes that . . . [i]nsufficient documentation is not a basis to disallow a claim under § 502 of the Bankruptcy Code"). "Accordingly, lack of the documentation required by Rule 3001(c) (which is, a priori, a mere procedural rule) is not a substantive ground for disallowing a claim." In re Porter, 374 B.R. at 480 (emphasis in original). See also In re Heath, 331 B.R. 424, 435 (9th Cir. BAP 2005) ("Noncompliance with Rule 3001(c) is not one of the statutory grounds for disallowance. . . . The statute's provisions cannot be enlarged or reduced by the Rules").

15.   Under certain circumstances, an objection made on insufficient documentation grounds "may result in disallowance of the claim on procedural (i.e., default) grounds." In re Porter, 374 B.R. at 480. Such circumstances include when a debtor "made written requests for documentation as to each [proof of claim], and each such request was ignored" and the creditors "ignored the Objections and related hearing notices." Id. at 484. These circumstances are not present here.

16.   Consequently, even assuming that the NYSCRF Proof of Claim lacked adequate documentation, Debtors have not provided sufficient grounds upon which the NYSCRF Proof of Claim should be summarily disallowed or expunged. At most, the Court should disallow the claim only pending the Comptroller filing an amended proof of

claim to cure any putative defects and/or providing Debtors with the Fund's trading information.  See, e.g., In re Minbatiwalla, 424 B.R. at 120 (sustaining an objection "without prejudice to reconsideration under 11 U.S.C. § 502(j) upon the filing of an amended proof of claim by the proper party within 21 days").

**Conclusion**

For the reasons set forth above, New York State Comptroller Thomas P. DiNapoli respectfully requests that this Court deny Debtors' Thirty-First Objection with respect to the NYSCR Proof of Claim (No. 29068).

Dated:   New York, New York
         August 19, 2010

ENTWISTLE & CAPPUCCI LLP

By:   /s/ Andrew J. Entwistle
       Andrew J. Entwistle
       Johnston de F. Whitman, Jr.
       Jonathan H. Beemer
       Joshua K. Porter
     280 Park Avenue, 26th Floor West
     New York, New York 10017
     Telephone:  (212) 894-7200

*Counsel for New York State Comptroller
Thomas P. DiNapoli, as Sole Trustee of the
New York State Common Retirement Fund*

# EXHIBIT A

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | **PROOF OF CLAIM** |
|---|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)    0000029068 |
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Holdings Inc. | Case No. of Debtor<br>08-13555 | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

T. ___ FOR COURT USE ONLY

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

New York State Comptroller Thomas P. DiNapoli, as sole Trustee of the New York State Common Retirement Fund
c/o Entwistle & Cappucci LLP
280 Park Avenue, 26 Floor West
New York, New York 10017
Attn: Andrew J. Entwistle, Joshua K. Porter

Telephone number: (212) 894-7200    Email Address: jporter@entwistle-law.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____ (If known)

Filed on: _____

**Name and address where payment should be sent** (if different from above)
New York State Common Retirement Fund
Office of New York State Comptroller
110 State Street, 14th Floor, Albany, New York 12236

Telephone number: (518) 474-4044    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ $216,281,686.01
   If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
   If all or part of your claim is entitled to priority, complete Item 5.
   If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
   
   ☐ Check this box if all or part of your claim is based on a Derivative Contract.*
   ☐ Check this box if all or part of your claim is based on a Guarantee.*
   *IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Losses from transactions in common stock of Lehman Brothers Holdings Inc.
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff:  ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
   Describe: _____
   Value of Property: $_____    Annual Interest Rate _____ %
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____    Basis for perfection: _____
   Amount of Secured Claim: $_____    Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim:
   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
   ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

   Amount entitled to priority:
   $_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
   (See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

**FILED / RECEIVED**
SEP 22 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: 9/21/2009
Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. /s/ Josh Porter

Josh Porter, Entwistle & Cappucci LLP, Counsel for New York State Comptroller Thomas P. DiNapoli, as sole Trustee of the New York State Common Retirement Fund

18 U.S.C. §§ 152 and 3571.

**HAND DELIVERY**

RECEIVED BY: _Ashly Volf_

FILED / RECEIVED
SEP 2 2 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC
DATE

TIME: 11:05

# EXHIBIT B

**New York State Common Retirement Fund**
**Summary of Analyses**

Lehman Brothers Common Stock (Cusip 524908100)
Class Period: October 5, 2005 - January 20, 2009

| | |
|---|---|
| Class Period Beginning: | 10/5/2005 |
| Class Period End: | 1/20/2009 |
| "Lookback Period" Beginning: | 1/20/2009 |
| "Lookback Period" End: | 4/17/2009 |
| Days in "Lookback Period": | 88 |
| "Lookback Period" Average Closing Price: | $0.0391 |

| Trading Analyses | | FIFO Total |
|---|---|---:|
| Shares Held @ 10/05/2005 | | 2,296,302 |
| **Class Period Purchases** | | |
| Shares | | 4,970,509 |
| Dollars | $ | 219,082,276.33 |
| Average Cost per Share | $ | 44.08 |
| **Class Period Sales** | | |
| shares from Shares Held @ 10/05/2005 | | 2,296,302 |
| shares from Class Period Purchases | | 4,970,509 |
| Total Class Period Sales (Shares) | | 7,266,811 |
| $ from Shares Held @ 10/05/2005 | $ | 118,889,749.84 |
| $ from Class Period Purchases | $ | 2,800,590.32 |
| Total Class Period Sales (Dollars) | $ | 121,690,340.16 |
| from Shares Held @ 10/05/2005 | $ | 51.77 |
| from Class Period Purchases | $ | 0.56 |
| Average Proceeds per Share | $ | 16.75 |
| | | |
| Shares Held 01/20/2009 | | |
| from Shares Held @ 10/05/2005 | | - |
| from Class Period Purchases | | - |
| Total Shares Held 01/20/2009 | | - |
| | | |
| "Lookback Period" Sales (1) | | |
| shares from Shares Held @ 10/05/2005 | | - |
| shares from Class Period Purchases | | - |
| Total "Lookback Period" Sales (Shares) (1) | | - |
| $ from Shares Held @ 10/05/2005 | $ | - |
| $ from Class Period Purchases | $ | - |
| Total "Lookback Period" Sales (Dollars) (1) | $ | - |
| from Shares Held @ 10/05/2005 | | |
| from Class Period Purchases | | |
| Average Proceeds per Share | | |
| | | |
| Shares Held @ 04/17/2009 (2) | | |
| from Shares Held @ 10/05/2005 | | - |
| from Class Period Purchases | | - |
| Total Shares Held @ 04/17/2009 (2) | | - |

REDACTED    REDACTED    REDACTED

| Net Expenditure Analyses | | |
|---|---|---:|
| Net Class Period Purchases (Sales) (1) | | |
| Net Shares Purchased (Sold) | | (2,296,302) |
| Dollars Net Expenditures (Net Proceeds) | $ | 97,391,936.17 |
| | | |
| Net Class Period + "Lookback Period" Purchases (Sales) (1) | | |
| Net Shares Purchased (Sold) | | (2,296,302) |
| Dollars Net Expenditures (Net Proceeds) | $ | 97,391,936.17 |

| Gain (Loss) Analyses | | |
|---|---|---:|
| Class Period Purchases Sold Prior to End of Class | $ | (216,281,686.01) |
| Class Period Purchases Sold During "Lookback" | $ | - |
| Class Period Purchases Held At End of "Lookback" | $ | - |
| **Gain (Loss) on Class Period Purchases (3)** | **$** | **(216,281,686.01)** |
| | | |
| Less Offset for Pre-Class Holdings Sold Above $0.0391 | $ | 118,799,860.73 |
| | | |
| **Gain (Loss) After Offset** | **$** | **(97,481,825.28)** |



(1) Sales of Pre-Class Period Holdings and Class Period Purchases only; FIFO/LIFO may differ; Under LIFO, post-Class Period sales are allocated to post-Class Period purchases, if any.
"Lookback Period" sales price set equal to greater of actual sales price or average closing price from beginning of "Lookback Period" through date of sale.
(2) Holdings of Pre-Class Period Holding and Class Period Purchases only; FIFO/LIFO may differ; Under LIFO, post-Class Period sales are allocated to post-Class Period purchases, if any.
(3) Class Period Purchases held as of 04/17/2009 valued at $0.0391, the average closing price between 01/20/2009 and 04/17/2009 (88-Day 'Lookback Period').