Hearing Date and Time: September 22, 2010 at 10:00 a.m. (E.S.T.)
Objection Deadline: September 13, 2010 at 4:00 p.m. (E.S.T.)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Thomas Moers Mayer
Daniel Eggermann

*Counsel for Lehman Brothers Finance Asia Pte. Ltd. (In Creditors' Voluntary Liquidation)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
In re:                                                       :    Chapter 11:
                                                             :
Lehman Brothers Holdings Inc., *et al*                       :    Case Nos. 08-13555 (JMP)
                                                             :
                                    Debtors.                 :    (Jointly Administered)
                                                             :
------------------------------------------------------------ X

**NOTICE OF HEARING ON MOTION OF LEHMAN BROTHERS FINANCE ASIA PTE. LTD. (IN CREDITORS' VOLUNTARY LIQUIDATION) FOR ENTRY OF AN ORDER (I) THAT ITS DERIVATIVE AND GUARANTEE QUESTIONNAIRES BE DEEMED TIMELY FILED PROOFS OF CLAIM AND (II) PERMITTING A LATE CLAIM FILING PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)**

PLEASE TAKE NOTCE that a hearing shall be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Room 601 of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), One Bowling Green, New York, New York 10004-1408, on September 22, 2010 at 10:00 a.m. (Prevailing Eastern Time), or as soon thereafter as counsel may be heard, to consider the Motion of Lehman Brothers Finance Asia Pte. Ltd. (In Creditors' Voluntary Liquidation) ("LBFA") for Entry of an Order that its Derivative and Guarantee Questionnaires be Deemed Timely Filed Proofs of Claims and

KL2 2664903.1

Permitting a Late Claim Filing Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1), dated September 2, 2010 (the "Motion").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be made in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest, on a 3.5 inch disk or CD-ROM, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with two hard copies delivered directly to Chambers) and shall be served upon: (a) counsel for Lehman Brothers Finance Asia Pte. Ltd., Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas New York, New York 10036, Attn: Thomas Moers Mayer, Esq., Daniel Eggermann, Esq.; (b) counsel to the Debtors, Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Harvey R. Miller, Esq., Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq.; (c) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis; (d) counsel to the statutory committee of unsecured creditors appointed in these chapter 11 cases, Millbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., Evan Fleck, Esq.; and (e) all parties who have requested notice in these chapter 11 cases; so as to be received not later than **4:00 p.m. (prevailing Eastern Time) on September 13, 2010 (the "Objection Deadline")**.

PLEASE TAKE FURTHER NOTICE that only those objections that have been filed and served by the Objection Deadline in accordance with the procedures herein may be considered by the Court at the hearing and if no responses to the Motion are timely filed and served in accordance with the procedures et forth herein, the Bankruptcy Court may enter an order granting the Motion without further notice.

Dated:   September 2, 2010
         New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/ Daniel Eggermann___
Thomas Moers Mayer
Daniel Eggermann
1177 Avenue of the Americas
New York, New York 10036
Phone: (212) 715-9100
Fax: (212) 715-8000

Counsel for Lehman Brothers Finance Asia Pte. Ltd.

3

Hearing Date and Time: September 22, 2010 at 10:00 a.m. (E.S.T.)
Objection Deadline: September 13, 2010 at 4:00 p.m. (E.S.T.)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Thomas Moers Mayer
Daniel M. Eggermann

*Counsel for Lehman Brothers Finance Asia Pte.
Ltd. (In Creditors' Voluntary Liquidation)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
                                                        :
In re:                                                  :    Chapter 11:
                                                        :
Lehman Brothers Holdings Inc., *et al*                  :    Case Nos. 08-13555 (JMP)
                                                        :
                                    Debtors.            :    (Jointly Administered)
                                                        :
------------------------------------------------------- X

**MOTION OF LEHMAN BROTHERS FINANCE ASIA PTE. LTD. (IN CREDITORS' VOLUNTARY LIQUIDATION) FOR ENTRY OF AN ORDER (I) THAT ITS DERIVATIVE AND GUARANTEE QUESTIONNAIRES BE DEEMED TIMELY FILED PROOFS OF CLAIM AND (II) PERMITTING A LATE CLAIM FILING PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)**

TO:   THE HONORABLE JAMES M. PECK,
      UNITED STATES BANKRUPTCY JUDGE

Lehman Brothers Finance Asia Pte. Ltd. (In Creditors' Voluntary Liquidation) ("LBFA"), by and through its undersigned counsel, hereby moves (the "Motion") for entry of an order (i) deeming LBFA's filed Guarantee Questionnaires and Derivative Questionnaires (the "Questionnaires") to be timely filed proofs of claim and (ii) permitting LBFA to file late proofs of claim against Lehman Brothers Holdings Inc. ("LBHI" and together with its affiliates, "Lehman") and certain of its debtor affiliates pursuant to Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In further support of this Motion, LBFA respectfully states as follows:

KL2 2663944.9

**PRELIMINARY STATEMENT**

1. LBFA files this motion to correct an unfortunate and regrettable mistake concerning the filing of proofs of claim in these cases.

2. According to Lehman's books and records as of the Petition Date and as discussed in more detail herein, LBFA holds approximately $160 million in claims against certain of LBHI's Debtor affiliates arising primarily out of intercompany derivatives transactions. Those obligations were guaranteed by LBHI.

3. While LBFA timely submitted guarantee and derivatives Questionnaires in advance of both the questionnaire deadline and applicable proof of claim bar date, due to a series of unfortunate miscommunications and misunderstandings, LBFA's proofs of claim were not timely received by the Debtors' claim agent. Nevertheless, as a result of LBFA's timely filing of the Questionnaires, the Debtors have been on notice of the amount of LBFA's claims and its intent to pursue those claims in advance of the applicable bar date. Accordingly, the submission of those Questionnaires in advance of the applicable bar date should be deemed informal proofs of claim.

4. In addition, the Liquidators appointed to oversee the liquidation of LBFA and its Singapore affiliates have been tasked with the enormous responsibility of overseeing the affairs of more than forty (40) Lehman-related entities and assets located in nine jurisdictions all without the support of and access to local employees in those overseas jurisdictions, including the 250 Singapore-based Lehman employees responsible for administering those affiliates prior to Lehman's demise. Under those and the circumstances discussed below, LBFA submits that its failure to timely file proofs of claim in these cases is the result of excusable neglect. Accordingly, LBFA should be authorized to file late proofs of claim.

KL2 2663944.9

# FACTS

*General Background*

5.  Prior to the events leading up to the commencement of these bankruptcy cases and related insolvency proceedings, Lehman was one of the world's leading financial services firms providing a full array of financial services to corporate, institutional, governmental and individual clients.

6.  LBFA is an entity organized under the laws of the Republic of Singapore. LBFA and its Singapore affiliates operated out of Suntec City, Singapore and were primarily engaged in the businesses of (i) investment management and (ii) entering into derivatives transactions with street-side clients structured around foreign exchange and commodities. After entering into a derivatives transaction with a street-side client, LBFA would generally hedge its exposure by entering into a corresponding derivatives transaction with another Lehman affiliate.

*The Insolvency Filings*

7.  Beginning on September 15, 2008 and periodically thereafter, LBHI and certain of its U.S. affiliates (collectively, the "Debtors") commenced voluntary chapter 11 cases in this court under title 11 of the United States Code (the "Bankruptcy Code").

8.  On September 23, 2008, LBFA's directors commenced Creditors Voluntary Liquidation proceedings and placed LBFA into provisional liquidation. Messrs. Chay Fook Yuen, Bob Yap Cheng Ghee and Tay Puay Cheng (all care of KPMG Advisory Services Pte. Ltd. ("KPMG")) were appointed joint and several provisional liquidators (the "Liquidators"). On October 17, 2008, separate meetings of LBFA's members and creditors were held in accordance with Singapore's Companies Act. At those meetings, the appointment of the Liquidators was confirmed.

3

9. Also in October and November 2008, five other Lehman Singapore entities similarly became the subject of Creditors Voluntary Liquidation proceedings in Singapore for which Messrs. Chay Fook Yuen, Bob Yap Cheng Ghee and Tay Puay Cheng currently serve as Liquidators.[1]

10. In late September 2008, Nomura Singapore purchased all of the physical assets used in Lehman's Singapore operations and provided employment to substantially all of Lehman's Singapore employees.

11. On June 17, 2009, the Court approved a cross-border insolvency protocol among certain worldwide affiliates of LBHI, including LBFA, regarding the framework for coordinating and conducting the various worldwide bankruptcy proceedings related to LBHI's bankruptcy (the "Foreign Protocol") (Docket No. 4020).

*The Bar Dates*

12. On May 26, 2009, LBHI filed a motion seeking to establish a deadline for the filing of claims (the "Bar Date Motion") (Docket No. 3654).

13. On July 2, 2009, this court entered an order establishing certain deadlines for filing proofs of claims (the "Bar Date Order") (Docket No. 4271). Pursuant to the Bar Date Order, September 22, 2009 was set as the general bar date (the "Bar Date") and November 2, 2009 was set as the bar date for claims related to certain securities issued by LBHI and certain of its affiliates (the "Securities Programs Bar Date").

14. The Bar Date Order also required claimants who filed proofs of claim based on guarantees or derivatives transactions to submit an electronic questionnaire (a

---

[1] Those entities consist of (i) Lehman Brothers Pacific Holdings Pte. Ltd., (ii) Lehman Brothers Commodities Pte. Ltd., (iii) Lehman Brothers Investments Pte Ltd, (iv) Lehman Brothers Asia Pacific (Singapore) Pte. Ltd. and (v) Sail Investor Pte. Ltd.

4

"Guarantee Questionnaire" or a "Derivative Questionnaire"). Pursuant to the Bar Date Order, October 22, 2009 was set as the deadline for filing questionnaires (the "Questionnaire Deadline").

15. On August 25, 2009, this court entered a stipulation, agreement and order between the Debtors and the signatories to the Foreign Protocol with respect to the Bar Date Order (the "Foreign Protocol Stipulation"), which established November 2, 2009 as both the bar date and the deadline for submitting questionnaires for Foreign Protocol parties (the "Protocol Party Bar Date") (Docket No. 4928). As a signatory to the Foreign Protocol, the Protocol Party Bar Date of November 2, 2009 applies to LBFA.

*LBFA's Preparation of its Proofs of Claim and Questionnaires*

16. Lehman's collapse in September 2008 was very sudden and resulted in a serious and significant disruption of information flow and employee support for LBFA. Indeed, by November 2008, all of LBFA's and its Singapore affiliate's employees had either left to join Nomura Singapore, or had simply just resigned. Nevertheless, the Liquidators of LBFA and the other five Lehman Singapore entities are supported by a dedicated team of KPMG professionals. Through those Lehman Singapore entities, KPMG has undertaken administrative control of more than forty (40) downstream Lehman-related entities and assets located in nine different jurisdictions, namely, Singapore, Malaysia, Thailand, India, China, Korea, Taiwan, Japan and Australia.

17. Needless to say, the lack of access to knowledgeable Singapore-based and overseas Lehman employees coupled with the geographical breadth of their businesses and holdings has made it extraordinarily difficult for the Liquidators and their team to review and make sense of LBFA's voluminous files and records, including those related to the numerous and complicated intercompany transactions between LBFA and its affiliates – the majority of

5

which consisted of intercompany derivatives transactions used to hedge LBFA's exposure to its street-side counterparties.

19. Between July and October 2009, the Debtors provided the Liquidators with electronic financial data which broadly set forth the financial position of LBFA vis-à-vis its various affiliates, as of August 30, 2008 and September 14, 2008 (the "Global Close"). In accordance with their duty under Singapore law and to the best of their ability, the Liquidators undertook extensive efforts to reconcile the Global Close with its own books and records and the corresponding transactions entered into between LBFA and its street-side counterparties. However, given the lack of knowledgeable Singapore-based Lehman employees available to the Liquidators, by mid to late October 2009, it was determined that a final reconciliation would not be possible prior to the Protocol Party Bar Date. As a result, a team of KPMG professionals proceeded to prepare proofs of claim and Questionnaires on behalf of LBFA based on the Global Close figures provided by the Debtors with the expectation that, once a final reconciliation was completed, those proofs of claim and Questionnaires would be amended as appropriate.

19. In total, LBFA prepared seven (7) proofs of claim (the "Proofs of Claim") as follows:[2]

    (a)    An intercompany claim against Lehman Brothers Commercial Corporation ("LBCC") in the amount of $155,152,037.60, arising out of certain derivative transactions (the "LBCC Derivative Claim");

    (b)    An intercompany claim against Lehman Brothers Commodity Services Inc. ("LBCS") in the amount of $2,296,415.51, arising out of certain derivative transactions (the "LBCS Derivative Claim");

    (c)    An intercompany claim against LBHI in the amount of $9,818.51, relating to certain non-trade intercompany balances (the "LBHI Intercompany Claim");

---

[2] Copies of the Proofs of Claim are attached as Exhibits 1-7 of the Declaration of Chay Fook Yuen (the "Chay Declaration") filed contemporaneously herewith.

6

(d) An intercompany claim against LBHI in the amount of $329,171.36, arising out of LBHI's guarantee of certain obligations owed by its affiliate, Lehman Brothers Japan Inc. ("LBJ"), to LBFA (the "LBJ Guarantee Claim");

(e) An intercompany claim against LBHI in the amount of $89,999.24, arising out of LBHI's guarantee of obligations owed by its affiliate, Lehman Brothers Securities Asia Ltd. ("LBSA"), to LBFA (the "LBSA Guarantee Claim");

(f) An intercompany claim against Lehman Brothers Special Financing Inc. ("LBSF") in the amount of $4,852,448.83, arising out of certain derivative transactions (the "LBSF Derivative Claim"); and

(g) An intercompany claim against LBHI in the amount of $229,122.10, arising out of LBHI's guarantee of certain obligations arising out of certain derivatives transactions between Lehman Brothers Treasury Co. BV ("LBT") and LBFA (the "LBT Guarantee Claim").

20. On the evening of Thursday, October 29, 2009, five (5) days prior to the Protocol Party Bar Date, KPMG professionals completed the compilation of LBFA's Questionnaires and Proofs of Claim. Accordingly, Questionnaires relating to the above-listed guarantee and derivative claims were timely submitted that evening with the expectation that the Proofs of Claim would be sent by expedited courier the next day on Friday, October 30, 2009 to ensure a timely filing on Monday, November 2, 2009.[3] To that end, one of the KPMG staff members inserted the original Proofs of Claim into an addressed envelope and left the envelope on the desk of the department secretary together with a note instructing the secretary to arrange for the envelope to be sent by expedited courier. In the ordinary course of business, this would have been sufficient to ensure a timely filing of the Proofs of Claim in accordance with the November 2, 2009 Protocol Party Bar Date. Regrettably, as a result of a series of unforeseen and inadvertent miscommunications, that was not the case.

---

[3] Copies of Questionnaire confirmations are attached as Exhibits 8-15 to the Chay Declaration.

7

21. The KPMG staff member who left the Proofs of Claim for the department secretary was not in the office on Friday, October 30, 2009 to ensure that the mailing instructions were acted upon. Unfortunately, and unbeknownst to the KPMG staff member, the particular department secretary for whom mailing instructions were left was also not in the office on Friday, October 30, 2009 and did not return until Wednesday, November 4, 2009. In her absence, on Monday, November 2, 2009, rather than being sent via expedited courier, the envelope containing the Proofs of Claim was collected by KPMG's internal mail personnel instead during their routine daily mail collection and was sent out via ordinary air-mail. As a result, the Proofs of Claim were not received by the Debtors' claims agent until November 9, 2009.

22. Since learning of this unfortunate error, LBFA has had numerous discussions with the Debtors in the hopes of resolving this dispute without the necessity of filing this Motion. However, as of late July 2010, it became apparent that a consensual resolution was not likely. Accordingly, LBFA retained the undersigned counsel to prepare and file this Motion.

## JURISDICTION

23. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

24. By this Motion, the LBFA respectfully requests that this Court deem the timely filed Questionnaires as timely filed informal proofs of claim for the Questionnaire Claims and/or allow LBFA, pursuant to Rule 9006(b), to file valid late proofs of claim.

25. Specifically, LBFA respectfully requests the Court to deem LBFA to have timely filed or otherwise permit LBFA to file the following claims:

8

| Debtor | Type of Claim | Amount | Date Questionnaire Filed | Date Hard Copy Proof of Claim Received by Claims Agent |
|---|---|---|---|---|
| LBHI | Guarantee (on LBCC Derivative transactions) | $155,152,037.60 | 10/29/2009 | Not yet filed |
| LBHI | Non-trade Balances | $9,818.51 | N/A | 11/09/2009 |
| LBHI | Guarantee (on LBJ non-trade Intercompany balances) | $329,171.36 | 10/29/2009 | 11/09/2009 |
| LBHI | Guarantee (on LBSA non-trade Intercompany balances) | $89,999.24 | 10/29/2009 | 11/09/2009 |
| LBHI | Guarantee (on LBSF Derivative transactions) | $4,852,448.83 | 10/29/2009 | Not yet filed |
| LBHI | Guarantee (on LBT Derivative Transactions) | $229,122.10 | 10/29/2009 | 11/09/2009 |
| LBCC | Derivative | $155,152,037.60 | 10/29/2009 | 11/09/2009 |
| LBCS | Derivative | $2,296,415.51 | 10/29/2009 | 11/09/2009 |
| LBSF | Derivative | $4,852,448.83 | 10/29/2009 | 11/09/2009 |

## ARGUMENT

### A. The Court Should Deem the Timely Filed Questionnaires as Timely Filed Proofs of Claim

26.     Although LBFA's Proofs of Claim were not received by the Debtors' claims agent by the November 2, 2009 Protocol Party Bar Date, this Court should nevertheless deem the timely filed Questionnaires as timely informal proofs of claim for the respective late-filed proofs of claim.

9

27.     The informal proof of claim doctrine is an equitable principle that courts utilize to prevent the harsh effects that occur when a creditor fails to file a formal proof of claim before the claims bar date. Courts in the Second Circuit have applied a four-part test for qualification as an informal proof of claim. For a document to constitute an informal proof of claim, it must: (1) have been timely filed with the bankruptcy court and have become part of the judicial record; (2) state the existence and nature of the debt; (3) state the amount of the claim against the estate, and (4) evidence the creditor's intent to hold the debtor liable for the debt. *In re Lehman Bros. Holdings Inc.*, Case No. 05-13555, 2010 Bankr LEXIS 1411, at *14 (Bankr. S.D.N.Y. May 20, 2010) (citing *In re Enron Corp.,* 370 B.R. 90, 99 (Bankr. S.D.N.Y. 2007)). "Courts may grant relief to a creditor that provides the requisite claims information in a non-standard form, but that relief is limited to documents filed before the expiration of the applicable bar date." *Lehman*, 2010 Bankr. LEXIS 1411, at *15.

28.     LBFA timely completed their submission of all of the Derivative Questionnaires and Guarantee Questionnaires on October 29, 2009, prior to the November 2, 2009 Protocol Party Bar Date. In addition, the Questionnaires explicitly state the existence and nature of the debt (i.e. guarantee or derivative), as well as the amount of the claim against the particular estate. Finally, the Questionnaires illustrate LBFA's intent to hold the particular Debtor liable for the underlying debt. As required by the Bar Date Order and Foreign Protocol Stipulation, the Questionnaires are only filed in connection with a proof of claim against one of the Debtors. Therefore, as the Questionnaires satisfy all four parts of the informal proof of claim test used in this Circuit, this Court should deem the Questionnaires timely filed proofs of claim.

29.     While this Court in an earlier decision refused to deem questionnaire submissions as informal proofs of claim, *see Lehman*, 2010 Bankr. LEXIS 1411, at *15, the facts

10

were remarkably and critically different.  There, the moving creditors were not foreign affiliates that were subject to the Protocol Party Bar Date.  Rather, the creditors were ordinary creditors whose questionnaires, while timely submitted in accordance with the applicable Questionnaire Deadline, were not submitted prior to the applicable Bar Date.[4]  Accordingly, this Court concluded that "[b]ecause the Derivative and Guarantee Questionnaires purporting to be informal proofs of claim were filed *after* the applicable bar date, none of them qualify as informal proofs of claim."  *Id*. (emphasis in original).  In contrast, here, the Questionnaires submitted by LBFA were submitted *before* the applicable Protocol Party Bar Date.  Accordingly, LBFA's Questionnaires were each submitted prior to the expiration of the applicable Protocol Party Bar Date and should be treated as informal proofs of claim.

**B.     The Court Should Permit LBFA to File Proofs
of Claim After the Protocol Party Bar Date**

30.     LBFA respectfully requests that the Court grant leave to file late proofs of claim based upon LBFA's excusable neglect.

31.     Bankruptcy Rule 9006(b)(1) gives the Court discretion to enlarge the time to file claims where the failure to act was the result of "excusable neglect".  Bankruptcy Rule 9006(b)(1).  The Supreme Court has interpreted "excusable neglect" to be a flexible standard that can include "inadvertence, mistake or carelessness, as well as intervening circumstances beyond the party's control." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388-89 (1993).  The Supreme Court further explained that "excusable neglect" is an equitable matter that takes into account all relevant circumstances surrounding the party's omission. *Id*. at 395.  It is "not limited strictly to omissions caused by circumstances beyond the control of the movant."

---

[4]     Because the creditors were not Foreign Protocol parties, the applicable bar date for those claimants was September 22, 2009.

11

*Id.* at 392. "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388.

32. To guide the lower courts when considering whether "excusable neglect" is present, the Supreme Court identified four factors to be considered: (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Id*. at 395.

33. The "excusable neglect" test is a balancing test of several factors. Not all factors need favor the movant: "The relative weight, however, to be accorded to the factors identified in *Pioneer* requires recognizing that not all factors need to favor the moving party." *See In re Enron*, No. 01-16034 (AJG), 2003 WL 21756785, at *4 (Bankr. S.D.N.Y. July 30, 2003). In *Enron*, the court balanced the four *Pioneer* factors and held that excusable neglect was present, despite the fact that the reason for the delay was not in the movant's favor. *Id*. at *5-6. There, the creditor filed its proof of claim nine days after the bar date arguing that it had received inadequate notice. The court held that, despite the fact that adequate notice was, in fact, given, the creditor was entitled to file a late proof of claim because there was no danger of prejudice to the Debtors, the length of delay was minimal and the creditor had acted in good faith. *Id.* Likewise, when analyzed here, the *Pioneer* factors support a finding that excusable neglect is present.

    **1.**    *The Debtors Will Not Be Prejudiced*

34. The Debtors will not be prejudiced by the allowance of LBFA's claims. The Debtors were on actual notice of LBFA's claims prior to the Protocol Party Bar Date. Indeed, LBFA's claims set forth herein are based on the Global Close prepared by and supplied to LBFA in July 2009 by the Debtors themselves. In addition, with the exception of the

12

$9,818.51 LBHI Intercompany Claim, the Debtors were on actual notice of LBFA's intent to pursue those claims prior to the Protocol Party Bar Date once LBFA submitted its Questionnaires.

35. Nor is there any concern that permitting LBFA to file late proofs of claim under these circumstances would open the "floodgates." Indeed, LBFA's unique status as a party to the Foreign Protocol that provided notice of its claims through Questionnaires submitted prior to the Protocol Party Bar Date renders it very different than virtually every other creditor in these cases. Indeed, the Court has already rejected a floodgates argument in these cases premised on similar facts:

> I don't really see the flood gates argument that you've just made. In a situation where there has been compliance, at least with the deadline for providing detail, but noncompliance with the deadline for filing the proof of claim, I can't imagine a whole lot of parties falling in that category. It's a drip. I don't think it's a flood.

(Hr'g Tr., Nov. 18, 2009 at 78.)

36. Accordingly, because the Debtors will not be prejudiced by LBFA's claims, this factor weighs in favor of a finding of excusable neglect.

### 2. *The Delay in Filing the Proofs of Claim was Minimal*

37. The length of the delay between the applicable Protocol Party Bar Date and the date the Proofs of Claim were filed was minimal. The Debtors' claims agent received the Proofs of Claim exactly one week after the applicable Protocol Party Bar Date.[5] "There is no bright-line rule governing when the lateness of a claim renders it too late." *Lehman*, 2010 Bankr. LEXIS 1411, at *14. In the *Enron* proceedings, Judge Gonzalez concluded that a nine day delay

---

[5] While LBFA has not yet filed proofs of claim against LBHI for its guarantee of the LBCC Derivative Claim and LBSF Derivative Claim, it submitted guarantee questionnaires for those claims prior to the Protocol Party Bar Date. (Chay Decl. Exs. 9 and 14). In the event LBFA is granted relief under Rule 9006(b), LBFA will promptly file formal proofs of claim.

13

KL2 2663944.9

in filing supported a finding of excusable neglect. *Enron*, 2003 WL 21756785, at *5. Accordingly, this factor should be weighed in favor of a finding of excusable neglect.

### 3. *The Delay in Filing the Proofs of Claim is Excusable*

38.   These bankruptcy cases are the largest in U.S. history and, given the volume and nature of the transactions and financial instruments involved, perhaps one of the most complex. Lehman's demise and the aftermath placed enormous strain on its overseas offices. Indeed, Lehman's Singapore business went from having approximately 250 employees in September 2008 to *zero* by November 2008. As a result, LBFA's Liquidators encountered significant difficulties in organizing, reviewing and reconciling LBFA's voluminous files and records. Investigating intercompany transactions and preparing the Proofs of Claim was no different. Indeed, the Liquidators undertook extensive efforts to reconcile the intercompany balances set forth in the Global Close with the books and records of LBFA's local office. By mid-October 2009, it became apparent that the reconciliation could not be completed by the November 2, 2009 Protocol Party Bar Date. At that point, the Liquidators determined that LBFA's Proofs of Claim and Questionnaires should be prepared on the basis of the Global Close with the expectation that upon a final reconciliation, the Proofs of Claim and Questionnaires would be amended as appropriate.

39.   However, as set forth in paragraphs 16-22 above and in the Chay Declaration, as a result of a series of unfortunate and regrettable miscommunications and misunderstandings, the Proofs of Claim were not received by the Debtors' claims agent until one week after the Protocol Party Bar Date.

40.   Excusable neglect is "not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392. "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused

14

by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id*. at 388

41.  Given the enormous responsibilities for which the Liquidators have been tasked coupled with the lack of access to knowledgeable LBFA employees and their good faith efforts to comply with the Protocol Party Bar Date, the Court should conclude that the reason for LBFA's failure to timely file formal proofs of claim is excusable.

**4.**   ***LBFA Has Acted in Good Faith***

42.  It is abundantly clear that LBFA acted in good faith. Indeed, the Liquidators undertook extensive efforts without the support of knowledgeable LBFA employees to organize, review and reconcile LBFA's books and records. As a result of those efforts, the Liquidators timely submitted Questionnaires and, if not for a few regrettable missteps and misunderstandings, would have timely filed their Proofs of Claim. Accordingly, this factor should be weighed in favor of a finding of excusable neglect.

*       *       *

43.  While this Court in a previous ruling refused to find excusable neglect present in these cases, *Lehman*, 2010 Bankr. LEXIS 1411, at *15-29, the facts were remarkably and critically different. There, the Court explained that the reasons for each movants' late-filed claim involved "errors and omissions of the creditor either acting through its employees or through its agents, attorneys, or advisors." *Id*. at *15. Accordingly, the Court concluded that excusable neglect was not present because the reasons offered by the movants demonstrated a simple lack of care or thoughtful attention to the preparation and filing of their proofs of claim. *Id*. at *29.

44.  Here, the circumstances surrounding LBFA's failure to timely file proofs of claim are sufficiently distinct from those circumstances surrounding the movants for whom

15

KL2 2663944.9

the Court has found excusable neglect to be lacking in these cases.  Notably, those movants were not liquidators appointed in a foreign jurisdiction to oversee the liquidation and administer the affairs and assets of more than forty (40) Lehman entities without access to the employees and infrastructure that existed prior the commencement of these cases.  For that reason and that reason alone, the circumstances surrounding LBFA's failure to timely file proofs of claim goes beyond the mere lack of care or thoughtful attention that was present in the Court's earlier ruling.  Accordingly, the Court should conclude that excusable neglect is present and that LBFA should be permitted to file late proofs of claim under Rule 9006(b).

## NOTICE

45. Notice of this Motion has been provided pursuant to the Amended Order Implementing Certain Notice and Case Management Procedures entered in this proceeding [Docket No. 2837].  LBFA submits that such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

46. No prior request for the relief sought in this Motion has been made by LBFA to this or any other Court.

KL2 2663944.9

WHEREFORE, Lehman Brothers Finance Asia Pte. Ltd. (In Creditors' Voluntary Liquidation) respectfully requests that this Court (i) enter an order granting the relief sought herein either in the form of Exhibit A or Exhibit B, and (ii) grant such other and further relief as the Court may deem proper.

Dated:    September 2, 2010

                KRAMER LEVIN NAFTALIS & FRANKEL LLP

                By: /s/ Daniel M. Eggermann
                Thomas Moers Mayer
                Daniel M. Eggermann
                1177 Avenue of the Americas
                New York, New York 10036
                Phone: (212) 715-9100
                Fax: (212) 715-8000

                Counsel for Lehman Brothers Finance Asia Pte. Ltd. (In Creditors' Voluntary Liquidation)