KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Thomas Moers Mayer
Daniel M. Eggermann

*Counsel for Lehman Brothers Finance Asia Pte.
Ltd. (In Creditors' Voluntary Liquidation)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------- X
                                          :
In re:                                    : Chapter 11:
                                          :
Lehman Brothers Holdings Inc., *et al*    : Case Nos. 08-13555 (JMP)
                                          :
                        Debtors.          : (Jointly Administered)
                                          :
----------------------------------------- X

**DECLARATION OF CHAY FOOK YUEN IN SUPPORT OF MOTION OF LEHMAN
BROTHERS FINANCE ASIA PTE. LTD. (IN CREDITORS' VOLUNTARY
LIQUIDATION) FOR ENTRY OF AN ORDER (I) THAT ITS DERIVATIVE AND
GUARANTEE QUESTIONNAIRES BE DEEMED TIMELY FILED PROOFS OF
CLAIM AND (II) PERMITTING A LATE CLAIM FILING PURSUANT TO
FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)**

CHAY FOOK YUEN, under the penalty of perjury, deposes and says that:

1. I am an Executive Director of KPMG Advisory Services Pte. Ltd. ("KPMG")..

2. I submit this declaration (the "Declaration") in support of the Motion of Lehman Brothers Finance Asia Pte. Ltd. (In Creditors' Voluntary Liquidation) ("LBFA") for Entry of an Order (I) that its Derivative and Guarantee Questionnaires be Deemed Timely Filed Proofs of Claim and (II) Permitting a Late Claim Filing Pursuant to Federal Rule of Bankruptcy

KL2 2665407.3

Procedure 9006(b)(1) (the "Motion"). Unless otherwise stated in this Declaration, I have personal knowledge of the facts hereinafter set forth.[1]

3. LBFA is an entity organized under the laws of the Republic of Singapore. Prior to the commencement of these cases, LBFA and its Singapore affiliates operated out of Suntec City, Singapore and were primarily engaged in the businesses of (i) investment management and (ii) entering into derivatives transactions with street-side clients structured around foreign exchange and commodities. After entering into a derivatives transaction with a street-side client, LBFA would generally hedge its exposure by entering into a corresponding derivatives transaction with another Lehman affiliate.

4. On September 23, 2008, LBFA's directors commenced Creditors Voluntary Liquidation proceedings and placed LBFA into provisional liquidation. Myself, along with my colleagues Messrs. Bob Yap Cheng Ghee and Tay Puay Cheng (all care of KPMG) were appointed joint and several provisional liquidators (the "Liquidators"). On October 17, 2008, separate meetings of LBFA's members and creditors were held in accordance with Singapore's Companies Act. At those meetings, the appointment of the Liquidators was confirmed.

5. Also in October and November 2008, five other Lehman Singapore entities similarly became the subject of Creditors Voluntary Liquidation proceedings in Singapore for which myself, along with my colleagues Messrs. Bob Yap Cheng Ghee and Tay Puay Cheng currently serve as Liquidators.

6. In late September 2008, Nomura Singapore purchased all of the physical assets used in Lehman's Singapore operations and provided employment to substantially all of Lehman's Singapore employees.

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Motion.

2

7. Lehman's collapse in September 2008 was very sudden and resulted in a serious and significant disruption of information flow and employee support for LBFA. Indeed, by November 2008, all of LBFA's and its Singapore affiliate's employees had either left to join Nomura Singapore, or had simply just resigned. Nevertheless, the Liquidators of LBFA and the other five (5) Lehman Singapore entities are supported by a dedicated team of KPMG professionals. Through those Lehman Singapore entities, KPMG has undertaken administrative control of more than forty (40) downstream Lehman-related entities and assets located in nine different jurisdictions, namely, Singapore, Malaysia, Thailand, India, China, Korea, Taiwan, Japan and Australia.

8. Needless to say, the lack of access to knowledgeable Singapore-based and overseas Lehman employees coupled with the geographical breadth of their businesses and holdings has made it extraordinarily difficult for the Liquidators and their team to review and make sense of LBFA's voluminous files and records, including those related to the numerous and complicated intercompany transactions between LBFA and its affiliates – the majority of which consisted of intercompany derivatives transactions used to hedge LBFA's exposure to its street-side counterparties.

9. Between July and October 2009, the Debtors provided the Liquidators with electronic financial data which broadly set forth the financial position of LBFA vis-à-vis its various affiliates, as of August 30, 2008 and September 14, 2008 (the "Global Close"). In accordance with their duty under Singapore law and to the best of their ability, the Liquidators undertook extensive efforts to reconcile the Global Close with its own books and records and the corresponding transactions entered into between LBFA and its street-side counterparties. However, given the lack of knowledgeable Singapore-based Lehman employees available to the Liquidators, by mid to late October 2009, it was determined that a final reconciliation would not be possible prior to the Protocol Party Bar Date. As a result, a team of KPMG professionals

3

began preparing proofs of claim and Questionnaires on behalf of LBFA based on the Global Close figures provided by the Debtors with the expectation that, once a final reconciliation was completed, those proofs of claim and Questionnaires would be amended as appropriate.

10. I am informed that on the evening of Thursday, October 29, 2009, five (5) days prior to the Protocol Party Bar Date, KPMG professionals completed the compilation of LBFA's Questionnaires and Proofs of Claim. Accordingly, Questionnaires relating to the above-listed guarantee and derivative claims were timely submitted that evening with the expectation that the Proofs of Claim would be sent by expedited courier the next day on Friday, October 30, 2009 to ensure a timely filing on Monday, November 2, 2009. To that end, I am further informed that one of the KPMG staff members inserted the original Proofs of Claim into an addressed envelope and left the envelope on the desk of the department secretary together with a note instructing the secretary to arrange for the envelope to be sent by expedited courier. In the ordinary course of business, this would have been sufficient to ensure a timely filing of the Proofs of Claim in accordance with the November 2, 2009 Protocol Party Bar Date. Regrettably, as a result of a series of unforeseen and inadvertent miscommunications, that was not the case.

11. I am informed that the KPMG staff member who left the Proofs of Claim for the department secretary was not in the office on Friday, October 30, 2009 to ensure that the mailing instructions were acted upon. Unfortunately, and unbeknownst to the KPMG staff member, I am further informed that the particular department secretary for whom mailing instructions were left was also not in the office on Friday, October 30, 2009 and did not return until Wednesday, November 4, 2009. In her absence, on Monday, November 2, 2009, rather than being sent via expedited courier, I am informed that the envelope containing the Proofs of Claim was collected by KPMG's internal mail personnel instead during their routine daily mail collection and was sent out via ordinary air-mail. As a result, the Proofs of Claim were not received by the Debtors' claims agent until November 9, 2009.

4

12. Since learning of this unfortunate error, LBFA has had numerous discussions with the Debtors in the hopes of resolving this dispute without the necessity of filing the Motion. However, as of late July 2010, it became apparent that a consensual resolution was not likely. Accordingly, LBFA retained U.S. counsel to prepare and file the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed:   September 2, 2010

*[signature]*

Chay Fook Yuen