**Hearing Date and Time: September 22, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: September 13, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Peter Gruenberger
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------x
                                         :
In re                                    :   Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :   08-13555 (JMP)
                                         :
                         Debtors.        :   (Jointly Administered)
                                         :
                                         :
---------------------------------------------------------------x
```

**NOTICE OF DEBTORS' MOTION PURSUANT TO SECTION 105(a)**
**OF THE BANKRUPTCY CODE AND GENERAL ORDER M-390 FOR**
**AUTHORIZATION TO IMPLEMENT TIER 2 ALTERNATIVE DISPUTE**
**RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER**
**DERIVATIVES CONTRACTS FOR AMOUNTS NOT MORE THAN $1 MILLION**

PLEASE TAKE NOTICE that a hearing on the annexed motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors in possession (together, the "Debtors"), pursuant to section 105(a)

of title 11 of the United States Code and General Order M-390 (which can be found at

www.nysb.uscourts.gov), for authorization to implement alternative dispute resolution

procedures for affirmative claims of the Debtors under derivatives contracts for amounts equal to

or less than $1 million (the "Motion"), will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs

House, Courtroom 601, One Bowling Green, New York, New York, 10004 (the "Bankruptcy

Court"), on **September 22, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections to the Motion, if any, shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004,

Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York,

10153, Attn: Robert J. Lemons, Esq., Mark Bernstein, Esq. and Lee Goldberg, Esq., attorneys

for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New

York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Andy Velez-Rivera,

Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope

Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York,

New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.,

attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (v) all

parties who have requested notice in these chapter 11 cases and (vi) and all parties with a

particularized interest in the Motion, so as to be so filed and received by no later than **September**

**13, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  September 2, 2010
     New York, New York

/s/ Peter Gruenberger
Peter Gruenberger
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Peter Gruenberger
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,      :    08-13555 (JMP)
                                            :
                  Debtors.                  :    (Jointly Administered)
                                            :
                                            :
-------------------------------------------------------------------x
```

**DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF**
**THE BANKRUPTCY CODE AND GENERAL ORDER M-390 FOR**
**AUTHORIZATION TO IMPLEMENT TIER 2 ALTERNATIVE DISPUTE**
**RESOLUTION PROCEDURES FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER**
**DERIVATIVES CONTRACTS FOR AMOUNTS NOT MORE THAN $1 MILLION**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully

represent:

**Background**

1.      Commencing on September 15, 2008, and periodically thereafter (as

applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and certain

of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to Rule

1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors

are authorized to operate their businesses and manage their properties as debtors-in-possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

On March 11, 2010, the Examiner filed its report with the Court (the "Examiner's Report")

[Docket No. 7531].

5.      On March 15, 2010, the Debtors filed their joint chapter 11 plan pursuant

to section 1121 of the Bankruptcy Code [Docket No. 7572].  On April 14, 2010, the Debtors

filed their revised joint chapter 11 plan [Docket No. 8330] and disclosure statement for their

revised joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code [Docket No.

8332].

## Lehman's Business

6.       Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7.       Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Jurisdiction

8.       This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

9.       The Debtors request authorization, pursuant to section 105(a) of the Bankruptcy Code and the Court's General Order M-390 (the "Standing Order"), to implement alternative dispute resolution procedures with respect to prepetition Derivatives Contracts (as defined below) and the affirmative claims of the Debtors for monetary recovery arising from their terminated and open prepetition Derivatives Contracts, including, but not limited to, swap agreements and forward contracts, solely for which a Debtor's claim is equal to or less than $1 million (the "Tier 2 Derivatives Contracts with Recovery Potential").  The Debtors request the Court authorize the implementation of the alternative dispute resolution procedures (the "Tier 2 Derivatives ADR Procedures") set forth in the order (the "Tier 2 Derivatives ADR Order" or

"Order") annexed hereto as Exhibit A.  The Debtors are also seeking approval that notice of this

Motion by e-mail or facsimile is good and sufficient notice of the Motion.

### The Debtors' Tier 2 Derivatives Contracts with Recovery Potential

10.    As of the Commencement Date, the Debtors were party to more than

900,000 prepetition derivatives contracts (the "Derivatives Contracts"), many of which are "in

the money" to the Debtors ("Derivatives Contracts with Recovery Potential").  These Derivatives

Contracts with Recovery Potential constitute significant assets of the Debtors' estates and

liabilities of counterparties (the "Derivatives Counterparties") to such contracts.

11.    In order to facilitate the settlement of the Derivatives Contracts with

Recovery Potential, and avoid time consuming and expensive litigation causing undue delay in

the administration of these chapter 11 cases and risking loss of the current value embedded in

such Derivatives Contracts with Recovery Potential, the Debtors sought and the Court approved

the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under*

*Derivatives Contracts*, dated September 17, 2009 [Docket No 5207] (the "Derivatives ADR

Order").  The Derivatives ADR Order established alternative dispute resolution procedures (the

"Derivatives ADR Procedures") to facilitate the settlement of Derivatives Contracts with

Recovery Potential.  The Derivatives ADR Order requires Derivatives Counterparties to

Derivatives Contacts with Recovery Potential to participate in the Derivatives ADR Procedures,

which provide for the trading of offers and counteroffers, a settlement conference and, if

necessary, mediation.

12.    The Derivatives ADR Procedures have been successful and a useful

mechanism for the Debtors to resolve numerous disputes related to Derivatives Contracts without

the need for intervention by the Court.  As of the date of this Motion, the Debtors have

commenced proceedings under the Derivatives ADR Procedures by serving 77 ADR Notices on

100 counterparties and have successfully settled 28 ADR matters with 34 counterparties.  Also as

the date of this Motion, 15 matters have reached the mediation stage of the Derivatives ADR

Procedures and all of such mediations resulted in a settlement.  As a result of these settlements,

the Debtors have received a total of $185,962,300.98 new dollars for their estates.  Accordingly,

each ADR settlement on average has gained approximately $6.8 million for the applicable

Debtor.

13.    While the Derivatives ADR Procedures have been extremely beneficial to

the Debtors' efforts to settle Derivatives Contracts with Recovery Potential, the implementation

of the Derivatives ADR Procedures has proven in some cases to be a lengthy, time consuming

and expensive process.   If all of the deadlines in the Derivatives ADR Procedures were extended

to their maximum, without taking into account extensions or additional time for indenture

trustees, it takes 60 days at least from the time the service of a notice commencing the

Derivatives ADR Procedures before a dispute even reaches the mediation stage.  In application,

the pipeline often takes even longer.  Moreover, each stage of the Derivatives ADR Procedures

requires preparation and analysis by the Debtors and their professionals.  Utilizing the current

Derivatives ADR Procedures for Tier 2 Derivatives ADR Disputes for which the Debtors' claims

are $1 million or less, in many cases would be an inefficient use of the estates' limited time and

resources.  For disputes involving $1 million or less, the Debtors believe the current Derivative

ADR Procedures can be improved to increase speed and effectiveness and minimize costs.

Therefore, the Debtors seek to establish the Tier 2 Derivatives ADR Procedures which are a

modified and streamlined version of the Derivative ADR Procedures in order to maximize the

recoveries to the Debtors' estates from the Tier 2 Derivative Contracts with Recovery Potential.

14.    The Debtors estimate that disputes with potentially at least one-hundred (100) Derivatives Counterparties involving Tier 2 Derivatives Contracts with Recovery Potential exist and would be subject to the Tier 2 Derivatives ADR Procedures ("Tier 2 Derivatives ADR Disputes").

## Tier 2 Derivatives ADR Procedures

15.    In order to facilitate the settlement of disputes relating to Tier 2 Derivatives Contracts with Recovery Potential, the Debtors seek to implement the Tier 2 Derivatives ADR Procedures, which are a streamlined version of the Derivatives ADR Procedures. The Tier 2 Derivatives ADR Procedures would apply solely to Tier 2 Derivatives Contracts with Recovery Potential. The Derivatives ADR Procedures previously established came only after long, tireless negotiation between the Debtors and various creditors. Accordingly, the Debtors believe that the Tier 2 Derivatives ADR Order and Procedures would not result in the same degree of opposition shown by objectors. The Tier 2 Derivatives ADR Procedures do not differ from the Derivatives ADR Procedures, except for small adjustments designed to reduce the costs for all concerned and expedite settlements regarding the Tier 2 Derivatives Contracts with Recovery Potential.[1] Specifically, except for the following substantive changes, and certain other clarifying language, the Tier 2 Derivatives ADR Procedures will be substantially similar to the Derivatives ADR Procedures:

(i)    the Tier 2 Derivatives ADR Procedures rely on the Standing Order M-390 which superseded Standing Order M-143;

(ii)    the period of time for a Tier 2 Derivatives ADR Counterparty to respond in writing to a Tier 2 Derivatives ADR Notice has been shortened from thirty (30) days to fifteen (15) days;

---

[1] It is anticipated, for example, that Debtors will exclusively utilize in-house counsel in effectuating the Tier 2 Derivatives ADR Procedures.

    (iii)    the provisions relating to the initial settlement conference stage and deadlines for response to such request have been deleted;

    (iv)    the length of a Mediation Brief, exclusive of exhibits or schedules, is limited to ten (10) pages, unless otherwise ordered by the Mediator;

    (v)    the Tier 2 Derivatives ADR Procedures will be assigned to a different group of approved mediators;

    (vi)    direct participation by the Creditors' Committee will decrease; and

    (vii)    Derivatives Contracts between a Debtor and a special purpose vehicle or trust for which there exists an Indenture Trustee[2] will not be subject to the Tier 2 Derivatives ADR Order or the Tier 2 Derivatives ADR Procedures in any respect.

16.    The modifications listed above will reduce the expense to both the Derivatives Counterparties and the Debtors, as well as decrease the length of the procedures and the time spent seeking the settlement of Tier 2 Derivatives Contracts with Recovery Potential. To ease the review by all parties of the Tier 2 Derivatives ADR Procedures, a blackline of the proposed order which includes the Tier 2 Derivatives Contracts with Recovery Potential marked against the Derivatives ADR Order, reflecting the modifications that were made to the Derivatives ADR Procedures, is annexed hereto as Exhibit B.

17.    The confidentiality provisions of the Derivatives ADR Procedures (paragraph 12 of the Derivatives ADR Order) as applied to Sanctions (paragraph 11 of the Derivatives ADR Order) have caused the Debtors to question the level of information that may be disclosed in a motion to the Court seeking Sanctions. For clarification purposes, the Tier 2 Derivatives ADR Procedures specifically provide that notwithstanding the confidentiality provisions of the proposed Tier 2 Derivatives ADR Order, a motion requesting sanctions made to

---

[2] "Indenture Trustee" means a trustee, indenture trustee or party acting in a fiduciary capacity in connection with a trust or other financing arrangement that relates to a Derivatives Contract with any of the Debtors.

the Court may identify the parties to the subject Tier 2 Derivatives ADR Dispute and describe

the conduct giving rise to the request for sanctions, but shall not include any substance or detail

regarding of the Tier 2 Derivatives ADR Dispute or the terms of the Tier 2 Derivatives Contract

with Recovery Potential that are deemed confidential under the Standing Order or any other

order of the Court.

18.     Notwithstanding anything herein, in certain cases the legal issues and fact

patterns related to particular Tier 2 Derivatives Contracts with Recovery Potential are

sufficiently complex so that the Derivatives ADR Procedures may provide a better mechanism

for the resolution of disputes involving such Derivatives Contacts.  Therefore, the proposed order

reserves the rights of Debtors in all cases to determine, in their sole discretion, whether to utilize

the Derivatives ADR Procedures or the Tier 2 Derivatives ADR Procedures for Tier 2

Derivatives Contracts with Recovery Potential.

19.     The Debtors believe that the goal of the Motion is to obtain the same

salutory benefits as contemplated by the Standing Order, which provides for procedures

governing mediation of matters in bankruptcy cases and adversary proceedings.  Hence, the

Debtors request that the Standing Order shall apply to any mediation to be conducted pursuant to

an order approving this Motion.

## The Tier 2 Derivatives ADR Procedures Should Be Approved

20.     Section 1.1 of the Standing Order permits the Court to assign a matter to

mediation upon the motion of a party in interest, the U.S. Trustee, or on its own motion.  Further,

section 1.3 of the Standing Order permits the Court to assign an adversary proceeding, contested

matter, or other dispute to mediation.  Moreover, section 105(a) of the Bankruptcy Code grants

bankruptcy courts the "equitable power to 'issue any order, process, or judgment that is

8

necessary or appropriate to carry out the provisions of this title.'" *New Eng. Dairies, Inc v. Dairy Mart Conv. Stores, Inc.* (*In re Dairy Mart Conv. Stores, Inc.*), 351 F.3d 86, 91 (2d Cir. 2003) (quoting 11 U.S.C. § 105(a)).

21.     The litigation of disputes relating to Tier 2 Derivatives ADR Contracts with Recovery Potential without at least exploring the possibility of whether the parties can reach an early resolution does not serve the interest of the Debtors, their estates, or the economic stakeholders in these cases in light of the potential value of the Debtors' claims against the Derivatives Counterparties.  Prolonged litigation will slow the administration of these cases and in some cases risk that the value of the open Derivatives Contracts could be lost as a result of market volatility.

22.     Realizing the inherent value of the Debtors' claims arising from their terminated and open Derivatives Contracts and their benefit to these estates, the Debtors believe that the Tier 2 Derivatives ADR Procedures will help develop a productive, consensual resolution process that will reduce the costs associated with the reconciliation and collection of the Debtors' affirmative claims under their Tier 2 Derivatives Contracts with Recovery Potential.

23.     The relief requested in the Motion would slightly modify the Derivatives ADR Procedures previously approved by this Court solely as such procedures may be applied to the Tier 2 Derivatives Contracts with Recovery Potential.  The requested relief would provide the Debtors with a more cost effective means to settle certain of their Derivatives Contracts. Furthermore, the Tier 2 Derivatives ADR Procedures are substantially similar to the relief that has been granted by this Court in these chapter 11 cases connection with similar motions to implement mediation procedures.  *See, e.g.,* the Derivatives ADR Order and the *Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390*

*Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors*, entered April 19, 2010, [Docket No. 8474]. The Tier 2 Derivatives ADR Procedures are also substantially similar to the relief that has been granted by other Bankruptcy Courts within the Southern District of New York in connection with similar motions to implement mediation procedures *See, e.g.*, *In re Enron Corp.*, et al., Case No. 01-16034 (ALG) (Bankr. S.D.N.Y. March 4, 2003) [Docket No. 9533] and (Bankr. S.D.N.Y. March 20, 2003) [Docket No. 9862] (ordering mediation procedures with respect to twenty-four adversary proceedings regarding certain trading disputes); *In re Ames Department Stores, Inc., et al.*, Case No. 01-42217 (REG) (Bankr. S.D.N.Y. June 25, 2007) [Docket No. 3195] (ordering mandatory mediation procedures with respect to over 900 adversary proceedings that the debtors commenced against various preference defendants); *In re Motors Liquidation Company et al.*, Case No. 09-50026 (REG)  (Bankr. S.D.N.Y. February 23, 2010) [Docket No. 5037] (ordering mandatory mediation procedures for personal injury claims, tort claims, product liability claims, claims for damages arising from rejection of executory contracts, indemnity claims, lemon law claims, warranty claims and class action claims).

24.     The fundamental purpose of mediation is to allow an unbiased third party to assist adversaries in reaching resolution of issues upon which they disagree.  The Debtors submit that the Tier 2 Derivatives ADR Procedures will be a worthwhile process that will enable the Debtors to reduce unnecessary administrative expenses, maximize the value of the Debtors' claims under the Derivatives Contracts, and promote judicial efficiency by consensually resolving these claims.  Based upon the foregoing, the Debtors request that the Court approve the Tier 2 Derivatives ADR Procedures.

### Notice

25.     No trustee has been appointed in these chapter 11 cases.  The Debtors, in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] (the "Case Management Order"), have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all Derivatives Counterparties; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

26.    Other than the request for the establishment of the Derivatives ADR

Procedures which was granted by the Court, no previous request for the relief sought herein has

been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  September 2, 2010
        New York, New York

                                /s/ Peter Gruenberger
                                Peter Gruenberger
                                Robert J. Lemons

                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, New York 10153
                                Telephone: (212) 310-8000
                                Facsimile: (212) 310-8007

                                Attorneys for Debtors
                                and Debtors in Possession

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,        :        **08-13555 (JMP)**
                                                    :
                                **Debtors.**        :        **(Jointly Administered)**
                                                    :
                                                    :
-------------------------------------------------------------------x

### TIER 2 ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES CONTRACTS FOR AMOUNTS NOT MORE THAN $1 MILLION

The following alternative dispute resolution procedures (the "Tier 2 Derivatives ADR Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors").

### FINDINGS

On motion of Debtors, the Court FINDS that numerous open and terminated derivatives contracts, including any derivatives contract that is a "swap agreement" or "forward contract", in each case, as such term is defined in section 101 of the Bankruptcy Code, exist as to which one or more Debtors[1] assert that monetary recovery is due to a Debtor from a counterparty, its affiliates, or related parties in an amount equal to or less than $1 million (the "Tier 2

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the *Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-390 for Authorization to Implement Tier 2 Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivatives Contracts for Amounts Not More Than $1 Million*, filed on September 2, 2010.

Derivatives Contracts with Recovery Potential"). The Court further FINDS that certain common issues exist regarding these contracts, including questions involving appropriateness of setoff, termination, valuation and computation of termination payments, and notice. The Court further FINDS that substantial value may be recovered for the estates of Debtors, and judicial efficiency can be promoted, if expedient resolution of disputes and recoveries under such contracts can be achieved without the need for trial of adversary proceedings or other litigation. The Court further FINDS that similar proceedings ordered in these chapter 11 cases and other complex chapter 11 cases have contributed to effective administration of the proceedings and have reduced costs for all parties.

The Court further FINDS that the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts*, dated September 17, 2009 [Docket No 5207] (the "Derivatives ADR Order"), establishing alternative dispute resolution procedures (the "Derivatives ADR Procedures") to facilitate the settlement of Derivatives Contracts that are "in the money" to the Debtors ("Derivatives Contracts with Recovery Potential") has successfully resulted in the settlement of numerous disputes related to Derivatives Contracts without the need for intervention by the Court. As of September 2, 2010, the Debtors have commenced proceedings under the Derivatives ADR Procedures by serving 77 ADR Notices on 100 counterparties and have successfully settled 28 ADR matters with 34 counterparties. Also, as of September 2, 2010, 15 matters have reached the mediation stage of the Derivatives ADR Procedures and all of such mediations resulted in a settlement. As a result of these settlements, the Debtors have received a total of $185,962,300.98 new dollars for their estates. Accordingly, each ADR settlement on average has gained approximately $6.8 million for the applicable Debtor.

The Court further FINDS that establishing a modified version of the Derivatives ADR Proceudres for the Tier 2 Derivatives Contracts with Recovery Potential is necessary to (a) avoid overwhelming the current Derivatives ADR Procedures and (b) enable the Debtors to more efficiently and effectively resolve disputes related to Tier 2 Derivatives Contracts with Recovery Potential (the "Tier 2 Derivatives ADR Disputes").

The procedures described below are ORDERED to promote consensual recovery with respect to the Tier 2 Derivatives Contracts with Recovery Potential, and to encourage effective communication between the affected parties, consultation, negotiation, and, when necessary, mediation procedures.

1.    Standing Mediation Order.  All provisions of the Standing Order M-390, adopted December 1, 2009 (which supersedes General Order M-143, adopted January 17, 1995), providing for Adoption of Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/ Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York and all existing and further amendments thereto (the "Standing Order") shall apply to the mediations to be conducted under this Tier 2 Derivateives ADR Order.

2.    Tier 2 Derivatives  ADR Counterparties.  To date, the Debtors have identified potentially at least one-hundred (100) counterparties to Tier 2 Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists over the amounts that may be owed to Debtors under such contracts (whether or not an actual lawsuit or adversary proceeding has been commenced), whether from a counterparty to a Tier 2 Derivatives Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a

contract (collectively, the "Tier 2 Derivatives Counterparties"); *provided, however*, that the term Tier 2 Derivatives Contract with Recovery Potential shall not include any cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction or repurchase agreement in respect of securities or loans; *provided further*, that no Derivatives Contract between a Debtor and a special purpose vehicle or trust for which there exists an Indenture Trustee shall be deemed a Tier 2 Derivatives Contract with Recovery Potential or be subject to this Tier 2 Derivatives ADR Order or the Tier 2 Derivatives ADR Procedures in any respect.

3.        Tier 2 Derivatives ADR Disputes.  Any Debtor may designate any dispute regarding a Tier 2 Derivatives Contract with Recovery Potential (a "Tier 2 Derivatives ADR Dispute") to the Tier 2 Derivatives ADR Procedures by serving on a Tier 2 Derivatives Counterparty a copy of this Tier 2 Derivatives ADR Order and a Tier 2 Derivatives ADR Notice (as defined below) (collectively, the "Tier 2 Derivatives ADR Package").

a.        Debtors shall not implement Tier 2 Derivatives ADR Procedures with respect to a Tier 2 Derivatives Contract with Recovery Potential that (i) has not been purportedly terminated; and (ii) with respect to which a Tier 2 Derivatives Counterparty has not failed to make a payment, or perform any other obligation, due, if any, to the Debtor(s) (without regard to any provision in a Tier 2 Derivatives Contract with Recovery Potential that purports to permit a Tier 2 Derivatives Counterparty to withhold performance by reason of a default by a Debtor or its affiliates).

b.      Debtors shall make commercially reasonable efforts to minimize the frequency of service of Tier 2 Derivatives ADR Notices on any one Tier 2 Derivatives Counterparty.

c.      For purposes of the Tier 2 Derivatives ADR Procedures, service on or notice to a Tier 2 Derivatives Counterparty shall be deemed adequate if such service or notice is provided to the Tier 2 Derivatives Counterparty, the Tier 2 Derivatives Counterparty's counsel, legal guardian, estate representative, or other representative who has appeared in these cases by (i) email and/or (ii) at the option of the Debtors either (x) hand delivery, or (y) first class mail, or (z) overnight mail.

d.      Nothing in this Order shall be deemed to limit or modify any Debtor's right to initiate the Derivatives ADR Procedures set forth in the Derivatives ADR Order with respect to any Tier 2 Derivatives Contract with Recovery Potential.  With respect to any Tier 2 Derivatives Contract with Recovery Potential, the Debtors in their sole discretion shall determine whether to implement the Derivatives ADR Procedures or the Tier 2 Derivatives ADR Procedures.

4.      <u>Settlement of Disputes During the Tier 2 Derivatives ADR Procedures</u>. Nothing contained herein shall prevent the parties from settling, and the parties are encouraged to settle, a Tier 2 Derivatives ADR Dispute at any time before, during, or following the designation of a Tier 2 Derivatives ADR Dispute to the Tier 2 Derivatives ADR Procedures by the mutual consent of the parties; *provided* that such settlement

a.      complies with (i) the Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition Derivatives contracts [Docket 2257]; (ii) the

5

Order, dated January 29, 2009, authorizing the consensual assumption and

assignment of prepetition Derivatives contracts [Docket No. 2667], or (iii)

other orders in these bankruptcy cases permitting such settlement, or

b.    is approved by specific order of the Court.

Any settlement discussions between any of the parties, the contents of any papers submitted

during the Mediation Stage described below, and all discussions in Mediation shall remain

confidential and privileged and shall not be discoverable or admissible as evidence in any

subsequent litigation of any Tier 2 Derivatives ADR Dispute or elsewhere, except as provided

below in this Order or by further order of this Court.

5.    <u>Participation Mandatory</u>.

a.    Unless otherwise provided in a specific order applicable to a particular

Tier 2 Derivatives ADR Dispute or a particular Tier 2 Derivatives Counterparty, after service of

a Tier 2 Derivatives ADR Package on a Tier 2 Derivatives Counterparty (i) compliance with the

Tier 2 Derivatives ADR Procedures is mandatory in each specified Tier 2 Derivatives ADR

Disputes for the applicable Debtor or Debtors and Tier 2 Derivatives Counterparty; and (ii) no

party is required to settle or compromise any dispute or enter into a particular settlement or

compromise, but each Debtor serving a Tier 2 Derivatives ADR Package and each Tier 2

Derivatives Counterparty, must serve the required responses and participate in any settlement

discussions and mediation in good faith, follow directions of the mediator, and otherwise comply

with the Tier 2 Derivatives ADR Procedures specified below for all Tier 2 Derivatives ADR

Disputes covered by such Tier 2 Derivatives ADR Package.

b.    All rights, remedies, claims and defenses of any Tier 2 Derivatives

Counterparty and Debtor in good faith compliance with the Tier 2 Derivatives ADR Procedures

shall not be impaired, waived or compromised in any further proceedings in these cases should

no settlement or compromise result from participation in these Tier 2 Derivatives ADR

Procedures.  Participation in the Tier 2 Derivatives ADR Procedures by a Tier 2 Derivatives

Counterparty shall not waive the defense of lack of in personam jurisdiction, if any, which

defense shall be preserved.

   6. <u>No Substitute For Claims Procedures</u>.  The Tier 2 Derivatives ADR

Procedures are not intended and shall not be utilized as a substitute for chapter 11 claims

procedures or the procedures set forth in the *Order Pursuant to Section 105 of the Bankruptcy*

*Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement*

*Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against*

*Debtors*, entered April 19, 2010, [Docket No. 8474].  Nothing contained herein, however, shall

(a) prevent a Tier 2 Derivatives Counterparty from asserting in any response to a Tier 2

Derivatives ADR Notice and elsewhere during the course of a Tier 2 Derivatives ADR Dispute a

right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a Tier 2

Derivatives Contract with Recovery Potential or any other valid defense to a Debtor's demand

thereunder; *provided* that the amount of any claim against a Debtor asserted by a Tier 2

Derivatives Counterparty as a valid and enforceable right of setoff may not, unless otherwise

agreed in writing by the relevant Debtor and the Tier 2 Derivatives Counterparty (or an affiliate

thereof), be determined pursuant to the Tier 2 Derivatives ADR Procedures, or (b) be construed

to abridge, enlarge, or otherwise modify the rights and obligations of Debtors or Tier 2

Derivatives Counterparties under a Tier 2 Derivatives Contract with Recovery Potential or

applicable law or to provide a right or remedy under a Tier 2 Derivatives Contract with Recovery

Potential to Debtors or Tier 2 Derivatives Counterparties that is not provided thereby or by applicable law.

      7.    <u>Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Tier 2 Derivatives Counterparties</u>.  If a Tier 2 Derivatives Counterparty previously has commenced any action or proceeding in any other court or forum, or any action or proceeding in any other court or forum following service upon it of a Tier 2 Derivatives ADR Package, the Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed under the Tier 2 Derivatives ADR Procedures.

<b><u>NOTICE/RESPONSE STAGE</u></b>

      8.    <u>Notice/Response</u>.  The initial stage of the Tier 2 Derivatives ADR Procedures will be a notice/response stage, providing the parties with an opportunity to exchange settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve a Tier 2 Derivatives ADR Dispute on a consensual basis (the "<u>Notice/Response Stage</u>").  The Notice/Response Stage shall include:

      a.    <u>Tier 2 Derivatives ADR Notice</u>.  Debtors shall serve upon a Tier 2 Derivatives Counterparty (and its attorneys who have appeared in these cases) a notice containing sufficient information regarding the Tier 2 Derivatives ADR Dispute to make the Tier 2 Derivatives Counterparty aware of the nature of Debtor's affirmative claim, a brief explanation setting forth the basis for the demand and the amount, and of its demand for settlement (which demand shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee), including

an amount of monetary recovery Debtor(s) would accept in full settlement and compromise (a "Tier 2 Derivatives ADR Notice").  Service of a completed Tier 2 Derivatives ADR Notice in the form annexed to this Order as Exhibit "A" shall presumptively be deemed to comply with this Order.

b.    Tier 2 Derivatives Counterparty's Response to Notice.  A Tier 2 Derivatives Counterparty must respond to the Tier 2 Derivatives ADR Notice in writing within fifteen (15) calendar days from the date of the Tier 2 Derivatives Counterparty's receipt of the Notice.  The response options available to a Tier 2 Derivatives Counterparty are as follows (the "Responses"):

    i.    Agreeing to Settle the Demand.  If a Tier 2 Derivatives Counterparty agrees to settle the demand in the Tier 2 Derivatives ADR Notice, the Counterparty shall state in writing that the offer of settlement in the Tier 2 Derivatives ADR Notice is accepted.  The parties will then execute a settlement and general release (including a confidentiality provision) and, if the matter is in litigation, the Debtor shall dismiss any applicable claims in a lawsuit or adversary proceeding with prejudice upon execution of the release; or

    ii.    Denying the Demand.  A Tier 2 Derivatives Counterparty may decline to settle for the amount stated in the demand in the Tier 2 Derivatives ADR Notice, in which case the Tier

2 Derivatives Counterparty must include a brief

explanation in the Response to the Tier 2 Derivatives ADR

Notice setting forth the reason(s) for such denial.  In

addition, the Tier 2 Derivatives Counterparty may provide

a counteroffer to the demand in the Tier 2 Derivatives ADR

Notice.  Service of a completed Response to a Tier 2

Derivatives ADR Notice in the form annexed to this Order

as Exhibit "B" shall presumptively be deemed to comply

with this Order.

c.      <u>Failure to Respond</u>.  Failure to provide a timely Response to the Tier 2

Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may

result, at the option of Debtors, either in an application to the Court (with

notice to any applicable Tier 2 Derivatives Counterparty) for Sanctions (as

defined below) as set forth below, including an order or judgment for

recovery of amounts demanded by Debtors in the Tier 2 Derivatives ADR

Notice, or immediate entry into the mediation stage.

d.      <u>Reply to Response</u>.  The Debtor shall have fifteen (15) days from the date

of the receipt of the Response to serve a reply (a "<u>Reply</u>") to the Response

to the Tier 2 Derivatives ADR Notice (which Reply shall have been

determined with the benefit of consultation between Debtors and the

Creditors' Committee) in which the Debtor shall (i) modify its Demand;

(ii) respond to any counteroffer; (iii) provide additional information in

support of its demands in the Tier 2 Derivatives ADR Dispute; or (iv)

reject any counteroffer, in which case the Tier 2 Derivatives ADR Dispute

will automatically proceed to the Mediation Stage.

### MEDIATION STAGE

9.      Mediation.  Tier 2 Derivatives ADR Disputes that are not resolved through

the Notice/Response Stage will proceed to mediation (the "Mediation Stage").  Following

service of the Reply as set forth in paragraph 8d. above, the Debtors shall transmit, on a rolling

basis as promptly as possible, to the Mediators appointed pursuant to paragraph 9(a) hereof sets

of Derivatives ADR Notices and any applicable Response(s) and Replies for the Tier 2

Derivaties ADR Disputes which the Debtors, in their sole discretion, have deemed ready for

mediation, for purposes of allocating specific mediations pursuant to paragraph 9(b)(i) hereof.

a.      Choice of Mediator.  Those persons listed in Annex A to this Motion are

APPOINTED as the Mediators (each, a "Mediator") for Tier 2 Derivatives

ADR Disputes reaching the Mediation Stage.  The Mediators shall select

the Mediator for each Mediation.  If any named Mediator is not available

to serve as Mediator, an alternate Mediator shall be selected by the Court

upon notice to the Debtors, the Creditors' Committee and all Derivatives

Counterparties.

b.      Powers of Mediator.  The Mediators shall have the broadest possible

discretion consistent with the Standing Order, including (i) the manner of

allocating among themselves specific mediations on a fair and equitable

basis; and (ii) the ability to consolidate Mediations involving the same

Tier 2 Derivatives  Counterparty upon application by such Tier 2

Derivatives Counterparty and consultation with the Debtors.

c.      Once a specific Mediator has been selected and notice of such selection has been conveyed to the parties, the Debtor and the Tier 2 Derivatives Counterparty together shall contact the Mediator to schedule the initial Mediation date.

d.      <u>Mediation Sites</u>.  All mediation proceedings will take place in New York, New York, unless agreed to by the parties and the mediator.

e.       <u>Mediation Briefs</u>.  Any party to a Mediation may submit a Mediation Brief, of up to ten (10) pages (exclusive of exhibits or schedules), or such other length ordered by the Mediator, with service upon the other parties to the Mediation; *provided, however*, the Mediator may order that the parties serve upon each other and the Mediator a Mediation Brief.  If a party to the Mediation opts to serve a Mediation Brief upon another party to the Mediation hereunder, such Mediation Brief shall also be filed with the Mediator.  Any such Mediation Brief shall be served and filed so as to be received no later than five (5) calendar days prior to the scheduled initial Mediation Date.  No Mediation Brief shall be filed with the Court.

f.      <u>Appearance at Mediations</u>.  Unless otherwise ordered by the Mediator all participants in the Mediation for the applicable Tier 2 Derivatives ADR Dispute, must appear in person with a business principal who has settlement authority; *provided, however*, that, to the extent acceptable to the Mediator, the business principal with settlement authority on behalf of a Tier 2 Derivatives Counterparty may attend the Mediation by video conference at the sole expense of the Tier 2 Derivatives Counterparty (in

such event counsel for such Tier 2 Derivatives Counterparty must attend

the Mediation in person). Counsel for the parties may also be present and

participate.

g.      End of Mediation. The Mediation shall end upon request of a party and

concurrence by the Mediator.

## OTHER PROVISIONS

10.     Deadlines. Notwithstanding any of the provisions set forth above, any of

the deadlines contained herein may be modified by: (i) the mutual consent of the Debtors and

the Tier 2 Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

11.     Sanctions for Parties. Each Debtor and each Tier 2 Derivatives

Counterparty must participate in good faith with these Tier 2 Derivatives ADR Procedures with

regard to the ADR Disputes specified in the applicable Tier 2 Derivatives ADR Notice. If, after

notice and a hearing, the Court determines that a party has not complied with the Tier 2

Derivatives ADR Procedures in good faith in connection with any Tier 2 Derivatives ADR

Dispute, the Debtors or the Tier 2 Derivatives Counterparty, as the case may be, may be subject

to such sanctions as the Court deems appropriate (the "Sanctions"). If a Mediator reports to the

Court that any party subject to this Order is not cooperating in good faith with the Tier 2

Derivatives ADR Procedures, the Court may, without the need for further motion by any party,

schedule a hearing and order Sanctions. Notwithstanding the provisions of paragraph 13 below

regarding confidentiality, a motion requesting sanctions made to the Court may identify the

parties to the subject Tier 2 Derivatives ADR Dispute and describe the conduct giving rise to the

request for sanctions, but shall not include any substance or detail regarding the Tier 2

Derivatives ADR Dispute, any terms of Tier 2 Derivatives Contracts with Recovery Potential

involved, or any other matter deemed confidential pursuant to pargraph 13 below.  Litigation

with respect to the issuance of Sanctions shall not delay the commencement of the Mediation

Stage of these procedures upon completion of the Notice/Response Stage.  Sanctions may

include, but are not limited to:

  a.  <u>Against Debtors</u>:  (i) attorneys' fees incurred by a Tier 2 Derivatives

  Counterparty with respect to the Tier 2 Derivatives ADR Procedures after

  the receipt of a Tier 2 Derivatives ADR Package; (ii) fees and costs of the

  Mediator; (iii) termination of the Tier 2 Derivatives ADR Procedures as to

  one or more Tier 2 Derivatives Contracts with Potential Recovery; and/or

  (iv) rejection of some or all claims asserted by Debtors in the applicable

  Tier 2 Derivatives ADR Dispute.

  b.  <u>Against Tier 2 Derivatives  Counterparties</u>:  (i) attorneys' fees incurred by

  the Debtors with respect to the Tier 2 Derivatives ADR Procedures after

  the sending of a Tier 2 Derivatives ADR Package; (ii) fees and costs of the

  Mediator; and/or (iii)  an award of the Tier 2 Derivatives ADR Dispute up

  to the amount specified in the Tier 2 Derivatives ADR Notice.

  12.  <u>Confidentiality</u>.  The confidentiality provisions of section 5.0 of the

Standing Order are hereby incorporated by reference into this Order.  No statements or

arguments made or positions taken by the Mediator, the applicable Debtors, Tier 2 Derivatives

Counterparties or the Creditors' Committee during any part of the alternative dispute resolution

process, including the Notice/Response Stage and the Mediation Stage may be disclosed by the

Mediator or any such parties or their attorneys and advisors to the Court or any third party.

Similarly, all briefs, records, reports, and other documents received or made by the Mediator

while serving in such capacity shall remain confidential and not be provided to the Court, unless

they would be otherwise admissible.  In addition, the Mediator shall not be compelled to disclose

such records, reports, and other documents in connection with any hearing held by the Court;

*provided*, *however*, the Mediators, or their designee, shall on a monthly basis beginning sixty

(60) days following entry of this Order report to the Court the status of the Mediation efforts but

shall not disclose the content thereof, which report shall include the number of Tier 2 Derivatives

ADR Notices served on Tier 2 Derivatives Counterparties, the number of settlements reached

after Mediation, the number of Mediations still pending, the number of Mediations that have

terminated without settlement, and the cumulative dollar amount of settlements reached with

Tier 2 Derivatives Counterparties following service of Tier 2 Derivatives ADR Notices.  Rule

408 of the Federal Rules of Evidence shall apply to all aspects of the Tier 2 Derivatives ADR

Procedures including the Notice/ Response State and the Mediation Stage.

      13.    <u>Jury Trial, Arbitration and Exclusive Foreign Forum Selection Rights</u>

<u>Unaffected</u>.  Unless a Tier 2 Derivatives Counterparty or a Debtor affirmatively waives its right

to a jury trial, arbitration or exclusive foreign forum selection that otherwise may exist,

participation in the Tier 2 Derivatives ADR Procedures shall not waive or otherwise modify such

rights.  All parties' rights and defenses to contest the assertion of a jury trial or arbitration or

exclusive foreign forum selection right by any other party are fully preserved.

      14.    <u>Fees</u>.  Except as otherwise provided herein, each party to the Mediation

shall bear its own counsel fees and other costs of the Tier 2 Derivatives ADR Procedures,

including Mediation; *provided, however*, that (i) the Debtors shall pay the reasonable fees and

costs charged by the Mediator unless otherwise ordered by the Court pursuant to the terms of this

Order and (ii) nothing contained herein shall be deemed to vary the terms of any Tier 2

Derivatives Contract with Recovery Potential in respect of the reimbursement of fees and

expenses.

       15.     <u>Service of the Notice of the Motion</u>.  Service of notice of the Motion by e-

mail or facsimile shall be good and sufficient notice of the Motion.

**SO ORDERED:**

September __, 2010
New York, New York

 

_____
UNITED STATES BANKRUPTCY JUDGE

## Annex A

**List of Mediators**

| | |
|---|---|
| **Jed D. Melnick, Esq.**<br>Weinstein Mediation Center<br>850 Rutherford Road<br>Rutherford, CA 94573<br>(215) 307-8787 | **Michelle Yoshida, Esq.**<br>Weinstein Mediation Center<br>850 Rutherford Road<br>Rutherford, CA 94573<br>(707) 337-6315 |
| **Mark E. Segall, Esq.**<br>JAMS<br>620 Eighth Avenue<br>34th Floor<br>New York, New York 10018<br>(212) 751-2700 | **Hon. Jane Greenspan**<br>JAMS<br>1717 Arch Street<br>Suite 4010 - Bell Atlantic Tower<br>Philadelphia, Pennsylvania  19103<br>(215) 246-9494 |

Exhibit A

**Form of Tier 2 Derivatives ADR Notice**

Tier 2 Derivatives ADR Notice No.: _____

Debtor(s): _____    Tier 2 Derivatives Counterparty: _____
_____
                    Name(s)                                                   Name(s)


Tier 2 Derivatives Contract with Recovery Potential: _____
_____
_____


Settlement Demand:  $ _____


Explanation of Basis for Settlement Demand: _____
_____
_____
_____
_____
_____
_____


                    Date of Tier 2 Derivatives ADR Notice: _____
_____
                    Date of Service: _____

Response Due Date: _____
                    _____

Debtor Contact:    [Name]
                   [Address]
                   Telephone Number: _____
                   Email: _____

<u>Exhibit B</u>

**Form of Response to Tier 2 Derivatives ADR Notice**

<u>Tier 2 Derivatives  Counterparty</u>: _____
　　　　　　　　　　　　　　　　　　Name

<u>Response to Tier 2 Derivatives ADR Notice No.</u>: _____

☐ Agree to Settlement Demand

☐ Denial of Settlement Demand          ☐ Counteroffer

<u>Counteroffer Amount</u>:  $_____

<u>Explanation of Basis for Counteroffer/Denial of Settlement Demand</u>: _____
_____
_____
_____
_____
_____
_____
_____
_____

<u>Counterparty Contact</u>:  [Name]
　　　　　　　　　　　Telephone Number:  _____
　　　　　　　　　　　Email:  _____

**Exhibit B**

**Blackline of Proposed Order Marked Against Derivatives ADR Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,        :        **08-13555 (JMP)**
                                                    :
                    **Debtors.**                    :        **(Jointly Administered)**
                                                    :
                                                    :
------------------------------------------------------------------x

**TIER 2 ALTERNATIVE DISPUTE RESOLUTION**
**PROCEDURES ORDER FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER**
**DERIVATIVES CONTRACTS FOR AMOUNTS NOT MORE THAN $1 MILLION**

The following alternative dispute resolution procedures (the "Tier 2 Derivatives ADR Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors").

**FINDINGS**

On motion of Debtors, the Court FINDS that numerous open and terminated derivatives contracts, including any ~~derivative~~derivatives contract that is a "swap agreement" or "forward contract", in each case, as such term is defined in section 101 of the Bankruptcy Code, exist as to which one or more Debtors[1] assert that monetary recovery is due to a Debtor from a counterparty, its affiliates, or related parties in an amount equal to or less than $1 million (the "Tier 2 Derivatives Contracts with Recovery Potential"). The Court further FINDS that certain

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the *Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-390 for Authorization to Implement Tier 2 Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivatives Contracts for Amounts Not More Than $1 Million*, filed on September 2, 2010.

common issues exist regarding these contracts, including questions involving appropriateness of

setoff, termination, valuation and computation of termination payments, and notice.  The Court

further FINDS that substantial value may be recovered for the estates of Debtors, and judicial

efficiency can be promoted, if expedient resolution of disputes and recoveries under such contracts

can be achieved without the need for trial of adversary proceedings or other litigation.  The Court

further FINDS that similar proceedings ordered in these chapter 11 cases and other complex

chapter 11 cases have contributed to effective administration of the proceedings and have reduced

costs for all parties.

The Court further FINDS that the *Alternative Dispute Resolution Procedures Order*

*for Affirmative Claims of Debtors Under Derivatives Contracts*, dated September 17, 2009

[Docket No 5207] (the "Derivatives ADR Order"), establishing alternative dispute resolution

procedures (the "Derivatives ADR Procedures") to facilitate the settlement of Derivatives

Contracts that are "in the money" to the Debtors ("Derivatives Contracts with Recovery

Potential") has successfully resulted in the settlement of numerous disputes related to Derivatives

Contracts without the need for intervention by the Court.  As of September 2, 2010, the Debtors

have commenced proceedings under the Derivatives ADR Procedures by serving 77 ADR Notices

on 100 counterparties and have successfully settled 28 ADR matters with 34 counterparties.  Also,

as of September 2, 2010, 15 matters have reached the mediation stage of the Derivatives ADR

Procedures and all of such mediations resulted in a settlement.  As a result of these settlements, the

Debtors have received a total of $185,962,300.98 new dollars for their estates.  Accordingly, each

ADR settlement on average has gained approximately $6.8 million for the applicable Debtor.

The Court further FINDS that establishing a modified version of the Derivatives

ADR Proceudres for the Tier 2 Derivatives Contracts with Recovery Potential is necessary to (a)

avoid overwhelming the current Derivatives ADR Procedures and (b) enable the Debtors to more efficiently and effectively resolve disputes related to Tier 2 Derivatives Contracts with Recovery Potential (the "Tier 2 Derivatives ADR Disputes").

The procedures described below are ORDERED to promote consensual recovery with respect to the Tier 2 Derivatives Contracts with Recovery Potential, and to encourage effective communication between the affected parties, consultation, negotiation, and, when necessary, mediation procedures.

1.    Standing Mediation Order.  All provisions of the Standing Order M-390, adopted December 1, 2009 (which supersedes General Order #M-143, adopted January 17, 1995,1995), providing for Adoption of Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/ Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York and all existing and further amendments thereto (the "Standing Order") shall apply to the mediations to be conducted under this Tier 2 Derivateives ADR Order.

2.    Tier 2 Derivatives  ADR Counterparties.  To date, the Debtors have identified approximately two potentially at least one hundred fifty (250(100) counterparties (which number will surely increase) to Tier 2 Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists over the amounts that may be owed to Debtors under such contracts (whether or not an actual lawsuit or adversary proceeding has been commenced), whether from a counterparty to a Tier 2 Derivatives Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a contract (collectively, the "Tier 2 Derivatives Counterparties"); *provided, however*, that the term Tier 2 Derivatives Contract with

Recovery Potential shall not include any cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction or repurchase agreement in respect of securities or loans; *provided further*, that no Derivatives Contract between a Debtor and a special purpose vehicle or trust for which there exists an Indenture Trustee shall be deemed a Tier 2 Derivatives Contract with Recovery Potential or be subject to this Tier 2 Derivatives ADR Order or the Tier 2 Derivatives ADR Procedures in any respect.

3.    Tier 2 Derivatives ADR Disputes.  Any Debtor may designate any dispute regarding a Tier 2 Derivatives Contract with Recovery Potential (a "Tier 2 Derivatives ADR Dispute") to the Tier 2 Derivatives ADR Procedures by serving on a Tier 2 Derivatives Counterparty a copy of this Tier 2 Derivatives ADR Order and a Tier 2 Derivatives ADR Notice (as defined below) (collectively, the "Tier 2 Derivatives ADR Package").

a.    Debtors shall not implement Tier 2 Derivatives ADR Procedures with respect to a Tier 2 Derivatives Contract with Recovery Potential that (i) has not been purportedly terminated; and (ii) with respect to which a Tier 2 Derivatives Counterparty has not failed to make a payment, or perform any other obligation, due, if any, to the Debtor(s) (without regard to any provision in a Tier 2 Derivatives Contract with Recovery Potential that purports to permit a Tier 2 Derivatives Counterparty to withhold performance by reason of a default by a Debtor or its affiliates).

b.    Debtors shall make commercially reasonable efforts to minimize the frequency of service of Tier 2 Derivatives ADR Notices on any one Tier 2 Derivatives Counterparty.

c.    ~~Any trustee, indenture trustee or party acting in a fiduciary capacity in connection with a trust or other financing arrangement that relates to the applicable Derivatives Contract with any of the Debtors (such persons or entities collectively referred to as "Indenture Trustees," and each singly as an "Indenture Trustee") shall be subject to this Order.~~

c.    ~~d.~~ For purposes of the Tier 2 Derivatives ADR Procedures, service on or notice to a Tier 2 Derivatives Counterparty ~~or Indenture Trustee, as the case may be,~~ shall be deemed adequate if such service or notice is provided to ~~such~~the Tier 2 Derivatives Counterparty, ~~such Indenture Trustee, a~~the Tier 2 Derivatives Counterparty's counsel, legal guardian, estate representative, or other representative ~~and such party's counsel~~ who ~~have~~has appeared in these cases by (i) email and/or (ii) at the option of the Debtors either (x) hand delivery, or (y) first class mail, or (z) overnight mail.

d.    Nothing in this Order shall be deemed to limit or modify any Debtor's right to initiate the Derivatives ADR Procedures set forth in the Derivatives ADR Order with respect to any Tier 2 Derivatives Contract with Recovery Potential.  With respect to any Tier 2 Derivatives Contract with Recovery Potential, the Debtors in their sole discretion shall determine whether to implement the Derivatives ADR Procedures or the Tier 2 Derivatives ADR Procedures.

4.    Settlement of Disputes During the Tier 2 Derivatives ADR Procedures. Nothing contained herein shall prevent the parties from settling, and the parties are encouraged to settle, a Tier 2 Derivatives ADR Dispute at any time before, during, or following the designation of a Tier 2 Derivatives ADR Dispute to the Tier 2 Derivatives ADR Procedures by the mutual consent of the parties~~:~~; *provided* that such settlement

a.    complies with (i) the Order, dated December 16, 2008, authorizing the

Debtors to establish procedures for the settlement or assumption and

assignment of prepetition ~~derivative~~Derivatives contracts [Docket 2257];

(ii) the Order, dated January 29, 2009, authorizing the consensual

assumption and assignment of prepetition ~~derivative~~Derivatives contracts

[Docket No. 2667], or (iii) other orders in these bankruptcy cases

permitting such settlement, or

b.    is approved by specific order of the Court.

Any settlement discussions between any of the parties ~~and the Official Unsecured Creditors'~~

~~Committee (the "Creditors' Committee")~~, the contents of any papers submitted during the

~~mediation stage~~Mediation Stage described below, and all discussions in ~~mediation~~Mediation

shall remain confidential and privileged and shall not be discoverable or admissible as evidence

in any subsequent litigation of ~~the~~any Tier 2 Derivatives ADR Dispute or elsewhere, except as

provided below in this Order or by further order of this Court.

5.    Participation Mandatory.

a.    Unless otherwise provided in a specific order applicable to a particular

Tier 2 Derivatives ADR Dispute or a particular Tier 2 Derivatives Counterparty ~~or Indenture~~

~~Trustee with Authority (as defined below)~~, after service of a Tier 2 Derivatives ADR Package on

a Tier 2 Derivatives Counterparty ~~or Indenture Trustee with Authority~~ (i) compliance with the

Tier 2 Derivatives ADR Procedures ~~in this Order~~ is mandatory in ~~the~~each specified Tier 2

Derivatives ADR Disputes for the applicable Debtor or Debtors~~,~~ and Tier 2 Derivatives

Counterparty ~~and Indenture Trustee with Authority~~; and (ii) no party is required to settle or

compromise any dispute or enter into a particular settlement or compromise, but each Debtor

serving a Tier 2 Derivatives ADR Package, and each Tier 2 Derivatives Counterparty, and each Indenture Trustee with Authority must serve the required responses, engage in the specified communications to discuss settlement, and participate in any settlement discussions and mediation in good faith, follow directions of the mediator, and otherwise comply with the Tier 2 Derivatives ADR Procedures specified below for all Tier 2 Derivatives ADR Disputes covered by such Tier 2 Derivatives ADR Package.

b.   With respect to any Derivatives ADR Package served on an Indenture Trustee, within the period provided in paragraph 8(b) for service of a response thereto by an Indenture Trustee, Debtors and such Indenture Trustee shall review the governing documents to determine whether the Indenture Trustee has authority to participate and to settle the Derivatives ADR Dispute covered by the Derivatives ADR Notice on behalf of holders ("Authority").

i.   If the Indenture Trustee has Authority, it shall participate in the Derivatives ADR Procedures on behalf of holders to the extent authorized by such documents.

ii.   If the Indenture Trustee lacks Authority via the governing documents, it shall contact the holders for which it acts as Indenture Trustee through the clearing systems or when possible by a direct written communication that: (v) advises such holders that the Debtors dispute holders' claims; (w) transmits to them the applicable Derivatives ADR Notice; (x) invites them to participate in the Derivatives ADR Procedures as an alternative to litigation; (y) encourages them to communicate directly with the Debtors; and (z) offers to take holders' direction in accordance with the

~~governing documents to participate in the Derivatives ADR Procedures on behalf of such directing holders.~~

~~iii.    In taking the steps outlined in this paragraph 5(b), Indenture Trustees shall make commercially reasonable efforts to act as promptly as possible under the prevailing circumstances.~~

~~c.    Nothing contained in this paragraph 5 with respect to Indenture Trustees shall relieve or be construed to relieve any Derivatives Counterparty from compliance with this Order.~~

~~d~~b.    All rights, remedies, claims and defenses of any Tier 2 Derivatives Counterparty~~, Indenture Trustees, holders~~ and Debtor in good faith compliance with the Tier 2 Derivatives ADR Procedures shall not be impaired, waived or compromised in any further proceedings in these cases should no settlement or compromise result from participation in these Tier 2 Derivatives ADR Procedures.  Participation in the Tier 2 Derivatives ADR Procedures by a Tier 2 Derivatives Counterparty~~, Indenture Trustee, or holder~~ shall not waive the defense of lack of in personam jurisdiction, if any, which defense shall be preserved.

6.    No Substitute For Claims Procedures.  The Tier 2 Derivatives ADR Procedures are not intended and shall not be utilized as a substitute for chapter 11 claims procedures or the procedures set forth in the *Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors*, entered April 19, 2010, [Docket No. 8474].  Nothing contained herein, however, shall (a) prevent a Tier 2 Derivatives Counterparty from asserting in any ~~respect~~response to a Tier 2 Derivatives ADR Notice and elsewhere during the course of a Tier 2 Derivatives ADR Dispute a

right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a Tier 2

Derivatives Contract with Recovery Potential or any other valid defense to a Debtor's demand

thereunder*; provided* that the amount of any claim against a Debtor asserted by a Tier 2

Derivatives Counterparty as a valid and enforceable right of setoff may not, unless otherwise

agreed in writing by the relevant Debtor and the Tier 2 Derivatives Counterparty (or an affiliate

thereof), be determined pursuant to the Tier 2 Derivatives ADR Procedures, or (b) be construed

to abridge, enlarge, or otherwise modify the rights and obligations of Debtors or Tier 2

Derivatives Counterparties under a Tier 2 Derivatives Contract with Recovery Potential or

applicable law or to provide a right or remedy under a Tier 2 Derivatives Contract with Recovery

Potential to Debtors or Tier 2 Derivatives Counterparties that is not provided thereby or by

applicable law.

> 7.      Debtor's Rights As to Proceedings Previously or Hereafter Commenced
by Tier 2 Derivatives Counterparties.  If a Tier 2 Derivatives Counterparty previously has

commenced, any action or proceeding in any other court or forum, or any action or proceeding in

any other court or forum following service upon it of a Tier 2 Derivatives ADR Package, the

Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to

remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any

such other court or proceeding to protect the estate of Debtors, despite the incomplete status of

the steps prescribed under the Tier 2 Derivatives ADR Procedures.

### NOTICE/RESPONSE STAGE

> 8.      Notice/Response.  The initial stage of the Tier 2 Derivatives ADR

Procedures will be a notice/response stage, providing the parties with an opportunity to exchange

settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve a

Tier 2 Derivatives ADR Dispute on a consensual basis (the "Notice/Response Stage").  The

Notice/Response Stage shall include:

a.   Tier 2 Derivatives ADR Notice.  Debtors shall serve upon a Tier 2

Derivatives Counterparty or Indenture Trustee (and its attorneys who have

appeared in these cases) a notice containing sufficient information

regarding the Tier 2 Derivatives ADR Dispute to make the Tier 2

Derivatives Counterparty or Indenture Trustee aware of the nature of

Debtor's affirmative claim, a brief explanation setting forth the basis for

the demand and the amount, and of its demand for settlement (which

demand shall have been determined with the benefit of consultation

between Debtors and the Creditors' Committee), including an amount of

monetary recovery Debtor(s) would accept in full settlement and

compromise (a "Tier 2 Derivatives ADR Notice").  Service of a completed

Tier 2 Derivatives ADR Notice in the form annexed to this Order as

Exhibit "A" shall presumptively be deemed to comply with this Order.

b.   Tier 2 Derivatives Counterparty's Response to Notice.  A Tier 2

Derivatives Counterparty must respond to the Tier 2 Derivatives ADR

Notice in writing within thirtyfifteen (3015) calendar days from the date of

the Tier 2 Derivatives Counterparty's receipt of the Notice. An Indenture

Trustee with Authority contained in the governing documents must

respond to the Derivatives ADR Notice in writing within forty-five (45)

calendar days from the date of such Indenture Trustee's receipt of the

Derivatives ADR Notice, and an Indenture Trustee with Authority

obtained by way of direction from holders pursuant to paragraph 5(b) above, must respond to the Derivatives ADR Notice within thirty (30) days from the date of receipt of such direction from holders. The response options available to a Tier 2 Derivatives Counterparty or an Indenture Trustee with Authority are as follows (the "Responses"):

i.  Agreeing to Settle the Demand. If a Tier 2 Derivatives Counterparty or an Indenture Trustee with Authority agrees to settle the demand in the Tier 2 Derivatives ADR Notice, the Counterparty shall state in writing that the offer of settlement in the Tier 2 Derivatives ADR Notice is accepted. The parties will then execute a settlement and general release (including a confidentiality provision) and, if the matter is in litigation, the Debtor shall dismiss any applicable claims in a lawsuit or adversary proceeding with prejudice upon execution of the release; or

ii.  Denying the Demand. A Tier 2 Derivatives Counterparty or Indenture Trustee with Authority may decline to settle for the amount stated in the demand in the Tier 2 Derivatives ADR Notice, in which case the Tier 2 Derivatives Counterparty or Indenture Trustee with Authority must include a brief explanation in the Response to the Tier 2 Derivatives ADR Notice setting forth the reason(s) for such denial. In addition, the Tier 2

Derivatives Counterparty ~~or Indenture Trustee with Authority~~ may provide a counteroffer to the demand in the Tier 2 Derivatives ADR Notice. Service of a completed Response to a Tier 2 Derivatives ADR Notice in the form annexed to this Order as Exhibit "B" shall presumptively be deemed to comply with this Order.

c.  <u>Failure to Respond</u>. Failure to provide a timely Response to the Tier 2 Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may result, at the option of Debtors, either in an application to the Court (with notice to any applicable Tier 2 Derivatives Counterparty ~~or Indenture Trustee~~) for Sanctions (as defined below) as set forth below, including an order or judgment for recovery of amounts demanded by Debtors in the Tier 2 Derivatives ADR Notice, or immediate entry into the mediation stage.

d.  <u>Reply to Response</u>. The Debtor shall have fifteen (15) days from the date of the receipt of the Response to serve a reply (a "Reply") to the Response to the Tier 2 Derivatives ADR Notice (which ~~Response~~Reply shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee)~~,~~ in which the Debtor shall (i) modify its Demand~~,~~; (ii) respond to any counteroffer~~,~~; (iii) provide additional information in support of its demands in the Tier 2 Derivatives ADR Dispute~~,~~; or (iv) reject any counteroffer, in which case the Tier 2 Derivatives ADR Dispute will automatically proceed to the Mediation Stage.

~~9.      Request for Initial Settlement Conference.  At any time in the Notice/Response Stage, either a Debtor, Derivatives Counterparty or Indenture Trustee with Authority may request an initial telephonic settlement conference by written request, to be held within ten (10) calendar days, and, in the case of Indenture Trustees with Authority, to be held within fifteen (15) business days.  Within four (4) business days of a receipt of such a request, the other parties must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than five (5) calendar days from the earliest date set forth in the written request.  In the case of Indenture Trustees with Authority, within ten (10) business days of a receipt of such a request, the other parties must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than fifteen (15) business days from the earliest date set forth in the written request.  If an acceptable date cannot be achieved through this process, the parties shall immediately proceed to the Mediation Stage.  At least one hour shall be reserved for the initial conference to discuss settlement.  No mediator or representative of the Court will participate in this discussion, but the initial conference call specified in this paragraph, together with any continuations or rescheduled settlement calls or meetings arising from that initial settlement conference, will be covered by Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, the confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator were present.  Settlement conferences during the Notice/Response Stage may be held in person if both parties agree in writing.~~

## MEDIATION STAGE

9.      ~~10.~~ Mediation.  Tier 2 Derivatives ADR Disputes that are not resolved through the Notice/Response Stage will proceed to mediation (the "Mediation Stage").

~~The~~Following service of the Reply as set forth in paragraph 8d. above, the Debtors shall

transmit, on a rolling basis as promptly as possible, to the ~~mediators~~Mediators appointed

pursuant to paragraph ~~10~~9(a) hereof sets of Derivatives ADR Notices and any applicable

Response(s) and Replies ~~thereto~~for the Tier 2 Derivaties ADR Disputes which the Debtors, in

their sole discretion, have deemed ready for mediation, for purposes of allocating specific

mediations pursuant to paragraph ~~10~~9(b)(i) hereof.

    a.    <u>Choice of Mediator</u>.  **[James Freund, David Geronemus and Ralph**

    **Mabey]**Those persons listed in Annex A to this Motion are APPOINTED

    as the ~~mediators for~~Mediators (each, a "Mediator") for Tier 2 Derivatives

    ADR Disputes reaching the Mediation Stage.  The Mediators shall select

    the Mediator for each Mediation.  If any named ~~mediator~~Mediator is not

    available to serve as ~~mediator~~Mediator, an alternate ~~mediator~~Mediator

    shall be selected by the Court upon notice to the Debtors, the Creditors'

    Committee, and all Derivatives Counterparties ~~and Indenture Trustees.~~.

    b.    <u>Powers of Mediator</u>.  The ~~mediators~~Mediators shall have the broadest

    possible discretion consistent with the Standing Order, including (i) the

    manner of allocating among themselves specific mediations on a fair and

    equitable basis; and (ii) the ability to consolidate ~~mediations~~Mediations

    involving the same Tier 2 Derivatives  Counterparty upon application by

    such Tier 2 Derivatives Counterparty and consultation with the Debtors.

    c.    Once a specific ~~mediator~~Mediator has been selected and notice of such

    selection has been conveyed to the parties, the Debtor and the Tier 2

    Derivatives Counterparty ~~or Indenture Trustee with Authority~~ together

shall contact the ~~mediator~~Mediator to schedule the initial

~~mediation~~Mediation date.

d.  <u>Mediation Sites</u>.  All mediation proceedings will take place in New York,

New York, unless agreed to by the parties and the mediator.

e.  <u>Mediation Briefs</u>.  Any party to a Mediation may submit a Mediation

Brief, <u>of up to ten (10) pages (exclusive of exhibits or schedules), or such</u>

<u>other length ordered by the Mediator,</u> with service upon the other parties

to the Mediation ~~and upon the Creditors' Committee~~; *provided, however*,

the Mediator may order that the parties ~~to~~ serve upon each other<u>, and</u> the

Mediator ~~and the Creditors' Committee~~ a Mediation Brief.  If a party to

the Mediation opts to serve a Mediation Brief upon another party to the

Mediation hereunder, such Mediation Brief shall also be filed with the

Mediator ~~and the Creditors' Committee~~.  Any such Mediation Brief shall

be served and filed so as to be received no later than five (5) calendar days

prior to the scheduled initial Mediation Date.  No Mediation Brief shall be

filed with the Court.

f.  <u>Appearance at Mediations</u>.  Unless otherwise ordered by the

~~mediator~~Mediator all participants in the ~~mediation~~Mediation for the

applicable <u>Tier 2</u> Derivatives ADR Dispute, must appear in person with a

business principal who has settlement authority; *provided, however*, that,

to the extent acceptable to the ~~mediator~~Mediator, the business principal

with settlement authority on behalf of a <u>Tier 2</u> Derivatives Counterparty

may attend the ~~mediation~~Mediation by video conference at the sole

expense of the Tier 2 Derivatives Counterparty. The Creditors' Committee may attend and participate in all mediations hereunder (in such event counsel for such Tier 2 Derivatives Counterparty must attend the Mediation in person). Counsel for the parties may also be present and participate.

g.    End of Mediation. The mediationMediation shall end upon request of a party and     concurrence by the mediatorMediator.

**OTHER PROVISIONS**

10.    11. Deadlines. Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by: (i) the mutual consent of the Debtors and the Tier 2 Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

11.    12. Sanctions for Parties. Each Debtor, and each Tier 2 Derivatives Counterparty and Indenture Trustee must participate in good faith with these Tier 2 Derivatives ADR Procedures with regard to the ADR Disputes specified in the applicable Tier 2 Derivatives ADR Notice. If, after notice and a hearing, the Court determines that a party has not complied with the Tier 2 Derivatives ADR Procedures in good faith in connection with any Tier 2 Derivatives ADR Dispute, the Debtors, or the Tier 2 Derivatives Counterparty or Indenture Trustee, as the case may be, may be subject to such sanctions as the Court deems appropriate (the "Sanctions"). If a mediatorMediator reports to the Court that any party subject to this Order is not cooperating in good faith with the Tier 2 Derivatives ADR Procedures, the Court may, without the need for further motion by any party, schedule a hearing and order Sanctions. Notwithstanding the provisions of paragraph 13 below regarding confidentiality, a motion requesting sanctions made to the Court may identify the parties to the subject Tier 2 Derivatives

ADR Dispute and describe the conduct giving rise to the request for sanctions, but shall not include any substance or detail regarding the Tier 2 Derivatives ADR Dispute, any terms of Tier 2 Derivatives Contracts with Recovery Potential involved, or any other matter deemed confidential pursuant to pargraph 13 below.  Litigation with respect to the issuance of Sanctions shall not delay the commencement of the Mediation Stage of these procedures upon completion of the Notice/Response Stage.  Sanctions may include, but are not limited to:

a.  Against Debtors:  (i) attorneys' fees incurred by a Tier 2 Derivatives Counterparty (including an Indenture Trustee with Authority) with respect to the Tier 2 Derivatives ADR Procedures after the receipt of an a Tier 2 Derivatives ADR Package; (ii) fees and costs of the Mediator; (iii) termination of the Tier 2 Derivatives ADR Procedures as to one or more Tier 2 Derivatives Contracts with Potential Recovery; and/or (iii iv) rejection of some or all claims asserted by Debtors in the applicable Tier 2 Derivatives ADR Dispute.

b.  Against Tier 2 Derivatives  Counterparties (including Indenture Trustees with Authority):  (i) attorneys' fees incurred by the Debtors with respect to the Tier 2 Derivatives ADR Procedures after the sending of an a Tier 2 Derivatives ADR Package; (ii) fees and costs of the Mediator; and/or (iii) an award of the Tier 2 Derivatives ADR Dispute up to the amount specified in the Tier 2 Derivatives ADR Notice.

12.  13. Confidentiality.  The confidentiality provisions of section 5.0 of the Standing Order are hereby incorporated by reference into this Order.  No statements or arguments made or positions taken by the mediator Mediator, the applicable Debtors, Tier 2

Derivatives Counterparties, Indenture Trustee or the Creditors' Committee during any part of the

alternative dispute resolution process, including Settlement Conferencesthe Notice/Response

Stage and the Mediation Stage may be disclosed by the mediatorMediator or any such parties or

their attorneys and advisors to the Court or any third party; provided, however, that Indenture

Trustees may disclose such statements, arguments and positions as may become necessary with

their respective noteholders and advisors subject to these same confidentiality provisions.

Similarly, all briefs, records, reports, and other documents received or made by the

mediatorMediator while serving isin such capacity shall remain confidential and not be provided

to the Court, unless they would be otherwise admissible.  In addition, the mediatorMediator shall

not be compelled to disclose such records, reports, and other documents in connection with any

hearing held by the Court; provided, however, the mediatorMediators, or their designee, shall on

a monthly basis beginning sixty (60) days following entry of this Order report to the Court the

status of the mediationMediation efforts but shall not disclose the content thereof, which report

shall include the number of Tier 2 Derivatives ADR Notices served on Tier 2 Derivatives

Counterparties, the number of settlements reached after mediationMediation, the number of

mediationsMediations still pending, the number of mediationsMediations that have terminated

without settlement, and the cumulative dollar amount of settlements reached with Tier 2

Derivatives Counterparties following service of Tier 2 Derivatives ADR Notices.  Rule 408 of

the Federal Rules of Evidence shall apply to all aspects of the Tier 2 Derivatives ADR

Procedures including Settlement Conferences andthe Notice/ Response State and the Mediation

Stage.

13.   14. Jury Trial, Arbitration and Exclusive Foreign Forum Selection Rights

Unaffected.  Unless a Tier 2 Derivatives Counterparty, Indenture Trustee or a Debtor

affirmatively waives its right to a jury trial, arbitration or exclusive foreign forum selection that otherwise may exist, participation in the Tier 2 Derivatives ADR Procedures shall not waive or otherwise modify such rights.  All parties' rights and defenses to contest the assertion of a jury trial or arbitration or exclusive foreign forum selection right by any other party are fully preserved.

14.    15. Fees.  Except as otherwise provided herein, each party to the Mediation shall bear its own counsel fees and other costs of the Tier 2 Derivatives ADR Procedures, including Mediation; *provided, however*, that (i) the Debtors shall pay the reasonable fees and costs charged by the Mediator unless otherwise ordered by the Court pursuant to the terms of this Order and (ii) nothing contained herein shall be deemed to vary the terms of any Derivative Tier 2 Derivatives Contract with Recovery Potential in respect of the reimbursement of fees and expenses.

15.    Service of the Notice of the Motion.  Service of notice of the Motion by e-mail or facsimile shall be good and sufficient notice of the Motion.

**SO ORDERED:**

September __, 2009 2010
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**Annex A**

**List of Mediators**

| | |
|---|---|
| **Jed D. Melnick, Esq.**<br>Weinstein Mediation Center<br>850 Rutherford Road<br>Rutherford, CA 94573<br>(215) 307-8787 | **Michelle Yoshida, Esq.**<br>Weinstein Mediation Center<br>850 Rutherford Road<br>Rutherford, CA 94573<br>(707) 337-6315 |
| **Mark E. Segall, Esq.**<br>JAMS<br>620 Eighth Avenue<br>34th Floor<br>New York, New York 10018<br>(212) 751-2700 | **Hon. Jane Greenspan**<br>JAMS<br>1717 Arch Street<br>Suite 4010 - Bell Atlantic Tower<br>Philadelphia, Pennsylvania 19103<br>(215) 246-9494 |

<u>Exhibit A</u>

**Form of <span style="color:blue">Tier 2</span> Derivatives ADR Notice**

<span style="color:blue">Tier 2</span> Derivatives ADR Notice No.: _____

Debtor(s): _____    <span style="color:blue">Tier 2</span> Derivatives Counterparty: _____
_____
            Name(s)                                                  Name(s)

~~or~~

~~Indenture Trustee~~: ~~_____~~
~~Name~~

<span style="color:blue">Tier 2</span> Derivatives Contract <span style="color:blue">with Recovery Potential</span>: _____
_____
_____

Settlement Demand:  $ _____

Explanation of Basis for Settlement Demand: _____
_____
_____
_____
_____
_____
_____
_____

Date of <span style="color:blue">Tier 2</span> Derivatives ADR Notice: _____
_____
Date of Service: _____

Response Due Date: _____

Debtor Contact:    [Name]
                   [Address]
                   Telephone Number: _____
                   Email: _____

Exhibit B

**Form of Response to Tier 2 Derivatives ADR Notice**

Tier 2 Derivatives  Counterparty: _____
                                            Name

                    ~~or~~

~~Indenture Trustee with Authority:~~ _____
                                            ~~Name~~

Response to Tier 2 Derivatives ADR Notice No.: _____

    Agree to Settlement Demand

    Denial of Settlement Demand                    Counteroffer

                                    Counteroffer Amount:  $_____

Explanation of Basis for Counteroffer/Denial of Settlement Demand: _____
_____
_____
_____
_____
_____
_____
_____
_____

Counterparty Contact:  [Name]
                       Telephone Number:  _____
                       Email:  _____