WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
 : 
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : 08-13555 (JMP)
 : 
Debtors. : (Jointly Administered)
 : 
------------------------------------------------------------------x

**NOTICE OF CORRECTED EXHIBIT WITH RESPECT TO
DEBTORS' MOTION, PURSUANT TO RULE 9019 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE AND SECTION 363 OF THE
BANKRUPTCY CODE, FOR APPROVAL OF (I) A SETTLEMENT AGREEMENT
BETWEEN THE DEBTORS AND AURORA BANK FSB REGARDING THE MASTER
FORWARD AGREEMENT AND OTHER MATTERS AND (II) CERTAIN OTHER
RELATED RELIEF, INCLUDING AUTHORIZATION OF (A) CERTAIN DEBTORS TO
MAKE CAPITAL TRANSFERS, (B) LBHI TO ENTER INTO A CAPITAL
MAINTENANCE AGREEMENT, AND (C) LBHI TO EXTEND THE DURATION OF
THE AMENDED REPURCHASE AGREEMENT AND FINANCING FACILITY**

       **PLEASE TAKE NOTICE THAT** on September 1, 2010, Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases,

including Lehman Commercial Paper Inc., Lehman Brothers Special Financing Inc. and

Luxembourg Residential Properties Loan Finance S.a.r.l. (collectively, the "Debtors") filed a

motion [Docket No. 11141] (the "Motion"), pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure and section 363 of the Bankruptcy Code, for approval of (i) a settlement

agreement between the Debtors and Aurora Bank FSB, and (ii) certain other related relief, all as more fully described in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Debtors attached a form of Capital Maintenance Agreement[1] to the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a corrected version of the Capital Maintenance Agreement.

Dated:  September 3, 2010
        Houston, Texas

        /s/ Alfredo R. Pérez
        Alfredo R. Pérez

        WEIL, GOTSHAL & MANGES LLP
        700 Louisiana, Suite 1600
        Houston, Texas 77002
        Telephone: (713) 546-5000
        Facsimile: (713) 224-9511

        Attorneys for Debtors
        and Debtors in Possession

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

# CAPITAL MAINTENANCE AGREEMENT

THIS CAPITAL MAINTENANCE AGREEMENT ("Agreement") is entered into the _____ day of _____ ,2010 (to be effective as provided in Article IV below as of the "Effective Date"); by and among AURORA BANK FSB (the "FSB"), a federal savings association with its home office in Wilmington, Delaware; LEHMAN BROTHERS BAN CORP (the "Parent"), a Delaware corporation with its principal place of business in New York, New York; LEHMAN BROTHERS HOLDINGS, INC. (the "Ultimate Parent"), a Delaware corporation with its principal place of business in New York, New York; and the OFFICE OF THRIFT SUPERVISION (the "OTS").

**RECITALS**

**WHEREAS**, the FSB is a wholly-owned subsidiary of the Parent, and an indirect wholly-owned subsidiary of the Ultimate Parent;

**WHEREAS**, the Ultimate Parent is a debtor in possession in a case under chapter 11 of title 11 of the U. S. Code (the "Bankruptcy Code") pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), wherein there are also pending chapter 11 cases of certain subsidiaries of Ultimate Parent, which cases of Ultimate Parent and its subsidiaries have been consolidated for administrative purposes only;

**WHEREAS**, the Ultimate Parent, Parent and the FSB have determined that it is in the best interests of the Ultimate Parent, the Parent and the FSB to ensure that the FSB is able to continue to operate, safely and soundly and in accordance with all applicable laws, regulations and regulatory requirements, as a going concern;

**WHEREAS**, in order to meet all regulatory capital requirements and carry out its business plans, the FSB may need additional capital from time to time;

**WHEREAS**, the OTS seeks to ensure that the FSB complies with all of its capital requirements and that the FSB operates in a safe and sound manner; and

**WHEREAS**, the Ultimate Parent and the Parent may realize the benefits of contributions to the equity capital of the FSB through continued ownership of the Parent's equity interest in the FSB.

**NOW, THEREFORE**, in consideration of the foregoing premises and other good and valuable consideration the sufficiency of which is hereby acknowledged, the OTS, the Ultimate Parent, the Parent and the FSB, intending to be legally bound, do hereby agree as follows:

**ARTICLES**

CONSTRUCTION OF AGREEMENT.

As this Agreement applies to FSB and Parent, it shall constitute a binding and enforceable "written agreement" entered into with an agency within the meaning and for purposes of Section 8 of the Federal Deposit Insurance Act ("FDIA"), as amended (12 USC § 1818). As this Agreement applies to the Ultimate Parent, it shall not constitute such a "written agreement" and shall not be enforceable pursuant to Section 8 of the FDIA, but shall (when effective in accordance with Article IV below) constitute a binding post-petition agreement and obligation of Ultimate Parent, enforceable as a Section 507(a)(2) claim in a proceeding under Chapter 11 of the Bankruptcy Code and as a priority claim in a Chapter 7 proceeding, should there be a conversion from Chapter 11 of the Bankruptcy Code.

This Agreement shall not be construed as a "written agreement, order, capital directive or prompt corrective action directive issued by OTS" requiring the FSB "to meet and maintain a specific capital level" for purposes of 12 C.F.R. § 565.4.

CAPITAL ASSURANCES AND DISPOSITION OF FSB.

Subject to the required approval referred to in Article IV, during the term of this Agreement and except as otherwise provided herein, the Ultimate Parent and Parent commit and promise to make such capital contributions as may be necessary from time to time to ensure that the FSB has sufficient "core capital" (or "Tier 1 capital") and "total risk based capital," as computed in accordance with the rules and regulations of the OTS at 12 C.F.R. Part 567 ("Capital"); so that the FSB maintains: (i) a "Tier 1 (Core) capital" or leverage ratio of at least 11% and (ii) a total risk-based capital ratio of at least 15% (hereinafter the "Minimum Capital Requirement") during the term of this Agreement.

Subject to the required approval referred to in Article IV, the Ultimate Parent and the Parent agree that if, at any time during the term of this Agreement, the FSB's Capital level falls below the Minimum Capital Requirement (a "Capital Deficiency"), then the Ultimate Parent and Parent will, within five (5) business days after any of the events referred to in 12 C.F.R. § 565.3(b)(1) or (2) occurs with respect to such Capital Deficiency, contribute additional Capital, in cash, in an amount sufficient to cause the FSB's Capital to meet the Minimum Capital Requirement; provided that such time period for compliance may be extended, or an alternate form of the capital contribution may be approved, by the appropriate Regional Director of the OTS in the sole discretion of the OTS; and further provided that, in the event the FSB is less than wholly-owned by the Parent or Ultimate Parent, then the Parent shall be entitled, upon its contribution of such additional Capital, to receive from the FSB additional shares of common stock of the FSB having a value equal to the Capital contributed by the Parent at a price per share mutually agreed upon by the Parent and the FSB so as to prevent dilution of the Parent's interest in the FSB. The Parent and the FSB hereby agree to use reasonable efforts to promptly obtain or provide all corporate, regulatory and other approvals necessary to authorize the issuance of such common stock to Parent.

The Ultimate Parent, the Parent, and FSB agree to market, including through one or more investment banking firms, the FSB for sale to close by the end of the eighteen (18) month period following the last day of the month in which the Effective Date occurs (the "Eighteen Month Date"), to an unaffiliated third party whether by stock purchase, merger or a purchase of substantially all assets and assumption of all deposit liabilities ("Disposition Transaction"). If a Disposition Transaction has not been consummated by the Eighteen Month Date, and unless the FSB: (i) is subject to a definitive agreement to consummate a Disposition Transaction with an acquirer that has filed all necessary applications with the appropriate federal banking agency(ies) and is awaiting final approval, and (ii) has sought and obtained a written extension of time beyond the Eighteen Month Date to consummate the Disposition Transaction ("OTS Extension"), then Ultimate Parent and Parent shall within five (5) business days after the Eighteen Month Date, purchase all of the FSB's assets, other than cash and Cash Equivalents[1] , in exchange for cash or Cash Equivalents at a price that is equal to the greater of (i) 111%

---

[1] "Cash Equivalents" means any of the following, to the extent owned by the FSB, Parent or Ultimate Parent free and clear of all liens and having a maturity of not greater than 90 days from the date of issuance thereof: (i) federal funds sold that are reportable on Line SC125 of the Thrift Financial Report (ii) readily marketable direct obligations of the Government of the United States or any agency or instrumentality thereof or obligations unconditionally guaranteed by the full faith and credit of the Government of the United States, and (iii) insured demand deposits in any FDIC-insured depository institution.

of FSB's total book liabilities (based on mark-to-market accounting pursuant to FAS 159) less the amount of the FSB's cash and Cash Equivalents that are not purchased or (ii) the book value (based on mark-to-market accounting pursuant to FAS 159) of the assets purchased. OTS may grant or deny a request for an OTS Extension in its sole discretion. Any OTS Extension will establish a revised deadline date by which, if a Disposition Transaction has not been consummated, Ultimate Parent and Parent must purchase the FSB's assets pursuant to the formula above, and such deadline shall be binding upon and enforceable against Ultimate Parent and Parent as part of this Agreement.

OTS shall monitor the progress of the disposition efforts required by Article II.C. If at any time after the fifteenth (15th) month following the Effective Date, OTS determines Disposition Transaction is not likely to be consummated by the Eighteen Month Date, it may direct the FSB to file, and FSB shall file with the OTS within fifteen (15) days of delivery of that direction, a plan of dissolution in accordance with 12 C.F.R. § 546.4 and Part 460 of the OTS' Application Processing Handbook (the "Plan of Dissolution"). The Plan of Dissolution shall detail the FSB's plans to, inter alia, (i) sell all of its assets to the Parent or Ultimate Parent, other than cash and Cash Equivalents, in exchange for cash or Cash Equivalents, at a price that is equal to the greater of (a) III% of FSB's total book liabilities (based on mark-to-market accounting pursuant to FAS 159) less the amount of the FSB's cash and Cash Equivalents that are not purchased or (b) the book value (based on mark-to-market accounting pursuant to FAS 159) of the assets purchased, by no later than five (5) business days following the Eighteen Month Date (which would be automatically extended to the deadline date established in any OTS Extension), (ii) payoff all of its deposit liabilities by no later than ten (10) business days following the Eighteen Month Date (which pay off would be automatically extended to five (5) business days following the deadline date established in any OTS Extension), (iii) terminate its federal deposit insurance, and (iv) return its charter to the OTS. Upon approval of the Plan of Dissolution by the OTS, the FSB shall, and the Ultimate Parent and Parent shall cause the FSB to, promptly comply with the plan.

TERM AND TERMINATION OF AGREEMENT.

The term of this Agreement shall commence on the Effective Date (as defined below) and shall terminate upon the first to occur of (i) the earlier of (A) the time when the Parent no longer has control as herein defined of the FSB or (B) the time following Ultimate Parent's purchase of all of the FSB's assets, when FSB has no deposit liabilities (ii) upon the conversion of the FSB to another form of depository institution charter other than a "savings association" within the meaning of Section 2(4) of the Home Owners Loan Act, as amended (the "HOLA"), or (iii) with the written consent of the parties hereto. For purposes of this Agreement, "control" shall have the meaning set forth at Section 10(a)(2) of the HOLA (12 USC § 1467a(a)(2)), and 12 C.F.R. § 574.4. Without limiting the generality of the foregoing, for the avoidance of doubt, the Parent shall be deemed to control the FSB if the OTS may presume that the Parent controls the FSB pursuant to 12 C.F.R. § 574.4(b), unless the OTS shall have accepted a rebuttal of control submission made by the Parent using the standards set forth in 12 C.F.R. § 574.4(e) to establish an absence of such control.

During the term of this Agreement, without obtaining the prior written approval or non-objection of the OTS, the Parent may not transfer or dispose of voting stock or other securities of the FSB if such transaction would cause the Parent to no longer control the FSB as defined above, and consequently, result in the termination of this Agreement.

REQUIRED APPROVALS.

Each of the Ultimate Parent, Parent and the FSB represent to each other and to OTS that it has obtained all corporate approvals necessary for it to enter into and perform this Agreement. The obligations of the parties hereto to effectuate this Agreement are subject to the approval by the

3

Bankruptcy Court of the performance by Ultimate Parent of this Agreement in connection with the approval by the Bankruptcy Court of the performance by the Ultimate Parent and its subsidiaries that are debtors in possession in the Chapter 11 Cases of the settlement and related transactions between the FSB and its subsidiaries and the Ultimate Parent and its subsidiaries contemplated by the application of FSB to the OTS submitted in accordance with 12 C.F.R. § 563.22 on December 24,2009 (the "Settlement") and approved by the OTS, of which Settlement this Agreement is a part. Ultimate Parent, Parent and the FSB shall each use their reasonable best efforts to obtain Bankruptcy Court approval of the Settlement, including this Agreement, and the consummation of the transactions contemplated by the Settlement. This Agreement shall become effective on the day the Bankruptcy Court Order approving the Agreement and Settlement becomes final and nonappealable (the "Effective Date"). On the day the Bankruptcy Court Order approving the Agreement and Settlement becomes final and nonappealable, LBHI's counsel shall so certify in a letter to the Parent, FSB and OTS, which shall be transmitted via electronic and overnight mail.

MODIFICATION OR AMENDMENT OF AGREEMENT.

This Agreement may be modified or amended only by the mutual written consent of the Ultimate Parent, Parent and the FSB and with the prior written approval or non-objection of the OTS.

ASSIGNABILITY OF AGREEMENT.

This Agreement shall not be assigned without the written consent of the Ultimate Parent, the Parent and the FSB and the prior written approval or non- objection of the OTS.

SUCCESSORS IN INTEREST; THIRD PARTY BENEFICIARIES.

This Agreement shall remain in full force and effect against any successors in interest to the Parent and shall inure to the benefit of: (i) the Federal Deposit Insurance Corporation, in the event that it is appointed as conservator or receiver for FSB and (ii) any regulatory successor of the OTS. This Agreement is not intended to, and nothing in this Agreement shall create or be deemed to create, any third party beneficiary rights in any person or entity.

NOTICES

All notices or other communications required hereunder shall be in writing and shall be made by facsimile transmission, with a copy sent via overnight courier to the following persons addressed as follows:

| | |
|---|---|
| if to the Ultimate Parent, to: | Lehman Brothers Holdings, Inc.<br>1270 Avenue of the America<br>New York, New York 10019<br>Facsimile: (212)[ _____ ]<br>Attn: Corporate Secretary<br>with a copy to:<br>Attn.: Douglas Lambert<br>Facsimile: (646) 285-9203 |
| if to the Parent, to | Lehman Brothers Bancorp<br>1270 Avenue of the Americas<br>New York, New York 10019<br>Facsimile: (212)[_____] |

4

| | |
|---|---|
| if to the FSB, to: | Attn: Corporate Secretary<br>Aurora Bank, FSB<br>1270 Avenue of the Americas<br>New York, New York 10019<br>Facsimile: (212) 377-1900<br>Attn: Chief Executive Officer |
| if to the OTS, to: | Office of Thrift Supervision<br>Department of the Treasury<br>Harborside Financial Center, Plaza 5<br>Jersey City, New Jersey 07311<br>Facsimile: (201) 413-7543<br>Attn: Michael Finn, Regional Director |

Such notice or communication shall be deemed to have been given or made as of the date that the notice or communication was sent via facsimile transmission.

COMMITMENT TO THE OTS.

As of the Effective Date, the undertakings of the Ultimate Parent and the Parent in this Capital Maintenance Agreement constitute a commitment by the Ultimate Parent and the Parent to the OTS (and any regulatory successors to the OTS) that the Ultimate Parent and Parent will maintain the Capital of the FSB as provided in this Agreement.

ENTIRE AGREEMENT.

This Agreement constitutes the entire agreement among the parties with respect to the subject matter hereof, and all prior agreements, arrangements, and negotiations between the parties, whether oral or written, with respect to this Agreement are deemed to be merged herein.

GOVERNING LAW; CONSENT TO JURISDICTION.

To the extent that Federal law does not control, this Agreement shall be governed, construed and controlled by the laws of the State of New York without reference to conflicts of laws principles thereof that would otherwise result in the application of the laws of another jurisdiction.  Each party, without limiting any party's right to appeal to final decision any order of the Bankruptcy Court, irrevocably and unconditionally submits, until such time as a transfer of ownership and control of FSB shall have become effective, either pursuant to an approved Plan of Reorganization for Ultimate Parent, or otherwise, or, if no such transfer shall have occurred, until the Chapter 11 case of the Ultimate Parent has been closed, to the exclusive jurisdiction of the Bankruptcy Court to enforce the terms of this Agreement against Ultimate Parent.

SEVERABILITY.

If any portion of this Agreement shall be held by a court of competent jurisdiction to be invalid or inoperative, then, so far as is reasonable and possible, the remainder of this Agreement shall be considered valid and operative, and effect will be given to the intent manifested by the portion held invalid or inoperative.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the parties have executed this Agreement.

**Lehman Brothers Holdings, Inc.**
By:_____
Name:
Title:

**Lehman Brothers Bancorp**
By:_____
Name:
Title:

**Aurora Bank FSB**
By:_____
Name:
Title:

**Office of Thrift Supervision**
By:_____
Name: Michael E. Finn
Title: Northeast Regional Director