1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 08-13555 (JMP)

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  LEHMAN BROTHERS HOLDINGS INC., et al.,

9

10          Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14              U.S. Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              September 1, 2010

19              2:02 PM

20

21

22  B E F O R E:

23  HON. JAMES M. PECK

24  U.S. BANKRUPTCY JUDGE

25

1

2   HEARING re Motion of Lehman Brothers Holdings Inc. Pursuant to

3   Section 362 of the Bankruptcy Code for Enforcement of the

4   Automatic Stay with Respect to the UK Pension Proceedings

5   [Docket No. 10834]

6

7   HEARING re Debtors' Twenty-Eighth Omnibus Objection to Claims

8   (Valued Derivative Claims) [Docket No. 9983]

9

10  HEARING re Debtors' Twenty-Ninth Omnibus Objection to Claims

11  (No Blocking Number LPS Claims) [Docket No. 10280]

12

13  HEARING re Debtors' Thirtieth Omnibus Objection to Claims (No

14  Debtor Claims) [Docket No. 10281]

15

16  HEARING re Debtors' Thirty-First Omnibus Objection to Claims

17  (Insufficient Documentation Claims) [Docket No. 10282]

18

19  HEARING re Debtors' Thirty-Second Omnibus Objection to Claims

20  (Amended and Superseded Claims) [Docket No. 10283]

21

22  HEARING re Debtors' Thirty-Third Omnibus Objection to Claims

23  (Duplicative Claims) [Docket No. 10284]

24

25

1

2    HEARING re Debtors' Thirty-Fourth Omnibus Objection to Claims

3    (Misclassified Claims) [Docket No. 10286]

4

5    HEARING re First Motion of Mark Glasser to Extend Time for

6    Claim [Docket No. 6386]

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed By:  Clara Rubin

25

1

2    A P P E A R A N C E S:

3    WEIL, GOTSHAL & MANGES LLP

4         Attorneys for the Debtors and Debtors-in-Possession

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:   LEE JASON GOLDBERG, ESQ.

9          GARRETT AVERY FAIL, ESQ.

10         MARK I. BERNSTEIN, ESQ.

11

12   WEIL, GOTSHAL & MANGES LLP

13         Attorneys for the Debtors and Debtors-in-Possession

14         200 Crescent Court

15         Suite 300

16         Dallas, TX 75201

17

18   BY:   ERIN D. ECKOLS, ESQ. (TELEPHONICALLY)

19

20   GUSRAE, KAPLAN, BRUNO & NUSBAUM PLLC

21         Attorneys for Claimant, Mark Glasser

22         120 Wall Street

23         New York, NY 10005

24

25   BY:   BRIAN D. GRAIFMAN, ESQ.

1

2    MILBANK, TWEED, HADLEY & MCCLOY LLP

3         Attorneys for the Official Committee of Unsecured

4          Creditors

5         One Chase Manhattan Plaza

6         New York, NY 10005

7

8    BY:   DENNIS C. O'DONNELL, ESQ.

9         BRADLEY SCOTT FRIEDMAN, ESQ.

10

11   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

12        Attorneys for the Pensions Regulator

13        1285 Avenue of the Americas

14        New York, NY 10019

15

16   BY:   ALAN W. KORNBERG, ESQ.

17        ARINA POPOVA, ESQ.

18

19   WILLKIE FARR & GALLAGHER LLP

20        Attorneys for Trustees of the Lehman Brothers Pension

21         Scheme and Pension Protection Fund

22        787 Seventh Avenue

23        New York, NY 10019

24

25   BY:   MARINA I. ZELINSKY, ESQ.

1

2    CHAPMAN AND CUTLER LLP

3         Attorneys for U.S. Bank National Association, as Trustee

4         111 West Monroe Street

5         Chicago, IL 60603

6

7    BY:   FRANKLIN H. TOP III, ESQ. (TELEPHONICALLY)

8         JAMES HEISER, ESQ. (TELEPHONICALLY)

9

10   POLSINELLI SHUGHART PC

11        Interested Party

12        700 W. 47th Street

13        Suite 1000

14        Kansas City, MO 64112

15

16   BY:   GREGORY M. BENTZ, ESQ. (TELEPHONICALLY)

17

18   STUTMAN TREISTER & GLATT

19        Attorneys for Interested Party, Elliott Management

20        1901 Avenue of the Stars

21        12th Floor

22        Los Angeles, CA 90067

23

24   BY:   WHITMAN L. HOLT, ESQ. (TELEPHONICALLY)

25        JEFFREY H. DAVIDSON, ESQ. (TELEPHONICALLY)

1

2  STUTMAN TREISTER & GLATT

3          Attorneys for Creditor, Perry Capital

4          1901 Avenue of the Stars

5          12th Floor

6          Los Angeles, CA 90067

7

8  BY:   MARINA FINEMAN, ESQ. (TELEPHONICALLY)

9

10

11 FARALLON CAPITAL MANAGEMENT

12         Creditor

13 BY:   ANATOLY BUSHLER (TELEPHONICALLY)

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  Good afternoon.  Be seated, please.

3          MR. GOLDBERG:  Good afternoon, Your Honor.

4          THE COURT:  Good afternoon.

5          MR. GOLDBERG:  Lee Goldberg, Weil, Gotshal & Manges,

6   for the Chapter 11 debtors.

7          Your Honor, we have submitted an agenda yesterday, and

8   if it pleases Your Honor, we would propose going forward with

9   the matters in the order they're set forth on --

10         THE COURT:  That's fine.

11         MR. GOLDBERG:  -- on the agenda.  Your Honor, we're

12  before you today seeking approval of a stipulation entered into

13  by LBHI and various other parties that I will explain to the

14  Court in a few moments.  Just for the -- for ease of reference,

15  I have a copy if the Court would --

16         THE COURT:  Oh, I'd like to see it.  Thanks.

17     (Pause)

18         THE COURT:  I have it, but you can proceed.

19         MR. GOLDBERG:  Okay.  Your Honor, this stipulation was

20  filed at docket number 11042 and resolves a motion seeking

21  enforcement of the automatic stay.  Just to give some

22  background into why we're before you today and the relief we

23  were seeking through the motion and what now we have resolved

24  through the stipulation, I'd like to explain how this matter

25  came to the debtors' attention and eventually how we ended up

1    in front of you today.

2         Your Honor, the U.K. -- United Kingdom employees are

3    under a pension plan in the United Kingdom, as exists in many,

4    many companies in this country.  Lehman Brothers was no

5    exception.  And the various Lehman entities in the United

6    Kingdom had employees that fell under a pension plan, which is

7    known as a pension scheme.

8         Your Honor, the primary employer under this scheme was

9    a Lehman affiliate of the Chapter 11 debtors, Lehman Brothers

10   Limited, and it had approximately 2,700 employees who were

11   covered by the scheme.  These employees worked for Lehman

12   Brothers Limited, but they also were secunded to various other

13   entities, including in large part LIBI and LBEL (sic), among

14   others.  There were maybe a de minimis number of employees who

15   were secunded to LBHI's U.K. branch, but there were actual

16   LBI -- LBHI employees who fell under or recovered by this

17   pension scheme.

18        Your Honor, the other players involved here, who are

19   actually represented in the courtroom today, are the trustees

20   of the scheme, and they oversee the scheme, they oversee its

21   assets.  And also a private protection fund, which is a U.K.

22   entity that is similar to a component of our Pension Benefit

23   Guaranty Corporation in that it steps in when schemes -- when

24   pension schemes are unable to meet their benefit obligations to

25   members of those schemes.  That is, as I mentioned, privately

1    funded.  However, there's also a governmental entity, known as

2    the Pensions Regulator, which performs the regulatory functions

3    of the Pension Benefit Guaranty Corporation.  So it's kind of

4    bifurcated in the United Kingdom, the -- what our Pension

5    Benefit Guaranty Corporation does, into two separate parts, one

6    of which is private and one is public.

7            I'd also like to mention at this point that the

8    trustees of the pension fund and -- the trustees of the pension

9    scheme, rather, and the pension protection fund did file claims

10   in this case and have submitted to this Court's equitable

11   jurisdiction by doing so.

12           Your Honor, when Lehman Brothers entered bankruptcy in

13   September 2010, in the United Kingdom that triggered a payment

14   obligation due from Lehman Brothers Limited to the scheme

15   itself, and this liability has been estimated to be between

16   150- and 300 million pounds.  That's currently still being

17   calculated, and we're not quite sure where it is yet, but it

18   will end up somewhere in that range, more likely towards the

19   high end, we believe.

20           Your Honor, on June 1st, 2010, LBHI and seventy-two of

21   its nondebtor affiliates, mostly in the United Kingdom,

22   received what's known as a warning notice.  A warning notice

23   started U.K. administrative proceedings under which ultimately

24   it would be decided whether the -- whether LBHI and the other

25   seventy-two of its affiliates would be required to provide

1  financial support to the pension scheme.  Providing financial

2  support would consist of putting together a plan, which would

3  have to be approved by the regulator, of how the scheme -- how

4  essentially LBHI and its affiliates would make up for this

5  funding shortfall, or at least make up enough of the funding

6  shortfall so that it was more than what the private pension

7  protection fund would have to pay to the members.

8         Your Honor, we received this warning notice on, as I

9  said, June 1st, 2010.  The deadline for responding to the

10 warning notice was a mere three weeks later.  And we felt at

11 that point that LBHI was faced with two options, neither of

12 which was particularly appealing:  One option was to come

13 immediately into this court and move to enforce the automatic

14 stay; and the other option was to participate in the

15 proceedings and basically ignore the automatic-stay issue.  And

16 for the following reasons we didn't think that made sense:

17        First, coming in to enforce the stay certainly would

18 have had applicability to the trustees and the pension

19 protection fund, because they filed claims and are subject to

20 Your Honor's jurisdiction.  However, the regulator did not file

21 a claim and, as I'll discuss later on, jurisdiction has been

22 probably the main sticking point in our negotiations with the

23 regulator.

24        Your Honor, recently the bankruptcy court for the

25 District of Delaware decided -- or issued a decision in the

1    Nortel case that relates to very similar proceedings.  It's

2    the -- basically the same proceeding; it's just involving the

3    Nortel debtors.  The Nortel U.S. debtors were able to obtain an

4    opinion -- an order and an opinion from the bankruptcy court in

5    Delaware, stating that the proceedings were a violation of the

6    automatic stay and enjoining the two claimants which were also

7    there, the trustees of the scheme and the pension protection

8    fund, from participating.

9          Those entities did not participate in the proceedings

10   in the United Kingdom.  However, the regulator did to along --

11   did continue on with the proceedings and adjudicated rights

12   with respect to the Nortel U.S. debtors, who refrained from

13   participation altogether.

14         THE COURT:  I don't mean to break into your

15   presentation, Mr. Goldberg, but I read the papers; I'm familiar

16   generally with the Nortel case.  If what you have here is a

17   stipulation in effect resolving all these issues, do I need all

18   this background, or do I just simply want to know what I'm

19   being asked to approve and how this stipulation came about with

20   whatever rights are being reserve on the part of --

21         MR. GOLDBERG:  Okay.

22         THE COURT:  -- Mr. Kornberg's claim?  I see Mr.

23   Kornberg there, so I know he's at least here.  Whether or not

24   his client is here is another story.

25         MR. GOLDBERG:  Okay, I was --

1          THE COURT:  I don't mean to interrupt your flow, but

2     I'm just trying to understand why I need to know about the

3     Nortel case any more than I already know about it.

4          MR. GOLDBERG:  Okay.  Your Honor, respectfully, I'll

5     just continue on to the actual stipulation.

6          THE COURT:  That would be good.

7          MR. GOLDBERG:  Okay.  So getting to the stipulation,

8     the parties did attempt to -- in light of the fact that neither

9     of those options was palatable to the parties -- to LBHI,

10    rather, LBHI engaged all three of the other parties in

11    negotiations, because LBHI felt like it was in the best

12    interest of the estate to participate in the proceedings fully

13    in the United Kingdom.  It would be -- LBHI would be able to

14    protect its rights against other parties, against its

15    affiliates and against the regulator.  And also it would

16    relieve the Court -- this Court from having to hear a dispute

17    related to U.K. pension law, which seemed like it was better to

18    be decided, or at least the claim liquidated, in the United

19    Kingdom.

20          So what this stipulation seeks to do is -- the claim

21    will be liquidated in the United Kingdom.  And prior to any

22    enforcement action being taken, the trustees of the pension

23    scheme and the pension protection fund have agreed to come into

24    this court and obtain an order either seeking relief from the

25    automatic stay or modification of the automatic stay, or,

1    alternatively, a determination that the automatic stay does not

2    apply to these proceedings.  And those entities would not be

3    able to take any action -- any enforcement action against LBHI

4    or its estate or its property in the United Kingdom until such

5    time as an order came from this Court granting such relief for

6    making such --

7        THE COURT:  To what extent, if at all, does the

8    stipulation have any impact on the proofs of claim that have

9    been filed?

10       MR. GOLDBERG:  Your Honor, the only impact that LBHI

11   believes the stipulation has is that it enables the

12   underlying -- the claims were filed as contingent and

13   unliquidated, and so the stipulation enables the claims to be

14   liquidated but in the United Kingdom.  It's a highly

15   specialized tribunal that hears these disputes and works

16   through literally reams of evidence to try to figure out what

17   the liabilities are in total, how they should be allocated

18   amongst various affiliates.

19       And we have actually engaged a Queen's Counsel in the

20   United Kingdom to assist us with this process.  It's a fairly

21   new law as it is, it's from 2004, and there haven't been that

22   many cases.  Nortel is one of just a handful that have been

23   prosecuted under this new law.

24       Your Honor, as to -- you mentioned Mr. Kornberg, who

25   represents the regulator.  And as to the regulator, except for

1  purposes of enforcement of this stipulation, it has not

2  submitted to this Court's jurisdiction for any other purpose,

3  and it expressly --

4        THE COURT:  That's why I mentioned that I see Mr.

5  Kornberg, but I don't see his client.

6        MR. GOLDBERG:  And it expressly refused to do so.

7        So in what LBHI believes was a superb compromise with

8  the regulator, the regulator has agreed to go through all the

9  procedural steps in the United Kingdom before taking any

10  enforcement action and then, prior to taking any enforcement

11  action, to give LBHI sixty days' notice.  This is not required

12  under the statute, Your Honor.  And therefore LBHI believes

13  that that agreement is a very good outcome for both sides,

14  because it gives LBHI the opportunity to come to this courtroom

15  again and, rather than discussing jurisdiction, sovereign

16  immunity, issues like that with you now, where no enforcement

17  action is being taken and no enforcement action is even being

18  threatened, wait until that happens and then come back into

19  this courtroom, which we'll have the opportunity to do during

20  the sixty-day period.

21        Your Honor, the other reason for entering into the

22  stipulation -- and, Your Honor, I'd like to just add one point

23  in that the parties have reserved all of their rights --

24  preserved all of their argument and reserved all of their

25  rights as to the automatic stay.  As I mentioned earlier, there

1    was disagreement about whether the automatic stay's even

2    applicable to these proceedings.  That's all been preserved.

3    And we're basically at a point where the status quo exists but

4    for the fact that the claim will be liquidated in the United

5    Kingdom, in this specialized tribunal -- in front of the

6    specialized tribunal.

7            But, Your Honor, the other reason for filing the

8    stipulation, and the reason that we seek the Court's approval

9    of this stipulation is that when such -- when and if such

10   eventuality occurs, we want to be very clear that LBHI has

11   waived none of its rights with respect to the automatic stay

12   and that no one can come into this courtroom and say 'Wait a

13   second, what were you doing a few years ago when this came up?'

14   And that's why we've filed this stipulation, so we can put on

15   the record that LBHI does in fact reserve all of its rights to

16   the automatic stay and, if such time that LBHI feels it needs

17   to take action to protects its rights and its estate, LBHI may

18   do so without any waiver argument being made against it.

19           THE COURT:  Okay.

20           Mr. Fail, do you wish to be heard?

21           MR. FAIL:  Your Honor, Garrett Fail, Weil Gotshal,

22   with just one point of clarification, I think, in response to

23   Your Honor's question regarding is there any impact on a proof

24   of claim.  Ultimately, this Court will decide the allowability

25   of all claims, including the claims filed by the pension

1   protection fund and by the trustees.  And this Court has

2   jurisdiction over any settlements, if there to be any, over

3   that.

4          THE COURT:  So, essentially this is a stipulation

5   permitting the claim to be liquidated in an amount, in the

6   U.K., with everybody reserving all of their rights?

7          MR. FAIL:  Correct, Your Honor.  Thank you.

8          THE COURT:  Okay.

9          Mr. Kornberg?

10          MR. KORNBERG:  Good afternoon, Your Honor.  Alan

11   Kornberg and Arina and Popova, of Paul, Weiss, Rifkind, Wharton

12   & Garrison, for the Pensions Regulator.

13          As the stipulation makes clear, and as Mr. Goldberg

14   observed, and I think as Your Honor observed, the Pensions

15   Regulator does not consent to the jurisdiction of this Court.

16   And we appear here today only in connection with the

17   stipulation.  It is the regulator's firm view that this Court

18   does not have personal jurisdiction over it; that the regulator

19   is immune from suit in this Court under the Foreign Sovereign

20   Immunities Act and other applicable law; and that the regulator

21   is not even properly served with the debtors' motion to enforce

22   the automatic stay.

23          If the debtor were to proceed with its motion, the

24   regulator would press these positions, and I suppose Your Honor

25   would have to rule on them.  But as has been described by Mr.

1  Goldberg, reason prevailed, and the parties arrived at what we

2  think is a very sensible approach to permit the U.K.

3  proceedings to continue to liquidate the scheme's claims.

4       It was critical to the regulator's agreement to the

5  stipulation -- and I should add, Your Honor, the regulator has

6  never done anything like this before -- but it was critical to

7  its decision that the parties acknowledge and the Court order

8  that the regulator has fully reserved its jurisdictional and

9  other defenses and that the regulator consents to the

10  jurisdiction of the Court solely for purposes of enforcing this

11  stipulation and for no other purpose.

12       And since the stipulation is explicit on that point,

13  and since debtors' counsel has also described that point on the

14  record, the regulator is fully supportive of the stipulation's

15  approval by the Court.

16       THE COURT:  Fine.

17       MR. KORNBERG:  Thank you.

18       THE COURT:  I realize this wasn't the reason you stood

19  up, because that was a very thorough reservation of all rights

20  that you could think of.  But just as a point of information,

21  do you have a sense as to what the process will be in the U.K.

22  to liquidate these claims, how long that is likely to take, and

23  whether there is any foreseeable involvement of this Court in

24  connection with those activities?

25       MR. KORNBERG:  Your Honor, let me make an obvious

1    point.  I am not a pensions expert, domestic or foreign.  Those

2    proceedings are well underway.  Briefing is in the process of

3    occurring.  I think the regulator does want to proceed quickly;

4    that's actually been a source of some contention between the

5    parties, but it is underway.  I know that LBHI does have

6    certain appellate rights under U.K. law and, whether they need

7    to be exercised here, who knows?

8         The process is, as I understand it, designed to try

9    and forge an agreement on the liquidation of the claim and

10   allocation of liability.  So that process, I'm sure, will take

11   place here.  I do not believe that this Court, however, would

12   need to have any role in that process.  The regulator and, we

13   think, the debtor, frankly, quite unlike the Nortel

14   situation -- and I think this is quite different, because LBHI,

15   I think, sensibly came to the view that a specialized tribunal,

16   particularly one applying foreign law, was probably the best

17   place in which to get a speedy resolution concerning the amount

18   of these claims.

19        So I do not believe there would be a need for any

20   involvement of this Court.  And, again, I think the process is

21   underway, and the regulator is certainly committed to conduct

22   it promptly and efficiently.

23        Okay.  Thank you.

24        MR. KORNBERG:  Thank you, Your Honor.

25        THE COURT:  Is there anyone else who wishes to be

1    heard on this?

2         MR. O'DONNELL:  Your Honor, Dennis O'Donnell, Milbank,

3    Tweed, Hadley & McCloy.  We filed --

4         THE COURT:  You just jumped in front of somebody, but

5    I'm sure you didn't see what you did.  It's okay.  I just -- I

6    could -- it was like I was watching an accident about to

7    happen, but it didn't happen.

8         MR. O'DONNELL:  Well, whoever was behind me can come

9    after me.

10        The -- we did file a statement in support because we

11   were prepared to support the debtors in seeking the relief they

12   were seeking in the motion, and believe that the stipulation is

13   a reasonable resolution of the dispute over that motion.

14   Reservation -- the reservations of rights, as you observed,

15   overly broad and leave everyone where they were and hopefully

16   will allow a process to unfold that will result in either a

17   consensual or some kind of administrative or judicial

18   resolution of this issue.

19        THE COURT:  Okay.

20        MS. ZELINSKY:  Good afternoon, Your Honor.  Marina

21   Zelinsky, Willkie Farr & Gallagher, on behalf of the trustees

22   of the Lehman Brothers pension scheme and the pension

23   protection fund.

24        Your Honor, just a few quick points that I would like

25   to clarify.  As Mr. Goldberg had said, all parties have

1    reserved their rights on the applicability of the automatic

2    stay and any arguments about the waiver of the automatic stay

3    as well.  That's all explicitly stated in the stipulation.

4         Your Honor raised a question about the effect of the

5    stipulation on the proofs of claims that were filed.  And with

6    respect to that, I just would like to clarify that the proofs

7    of claim assert three different bases of liability, one of

8    which is affected by the U.K. proceedings.  So with respect to

9    that one basis of liability, the U.K. proceedings will be the

10   venue in which that claim will be liquidated.

11        With respect to the other bases of liability, that is

12   not affected by the stipulation or the automatic-stay issues

13   that have been raised.

14        THE COURT:  Okay.

15        MS. ZELINSKY:  Thank you, Your Honor.

16        THE COURT:  Well, it's completely consensual and all

17   rights are reserved, and I consider it a reasonable way to

18   resolve what would have been a somewhat cumbersome contested

19   matter involving disputed jurisdictions, disputed issues of

20   law, and I think this is a very fine and expedient resolution.

21   So it's approved.

22        MR. GOLDBERG:  Thank you, Your Honor.

23        THE COURT:  So you have an order?  Why don't you give

24   it to my clerk.

25        MR. GOLDBERG:  Your Honor, my colleague Mark Bernstein

1  will now take the podium to continue.

2      THE COURT:  Okay, and everyone who wants to leave on

3  account of the approval of the stipulation is free to do so.

4      UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

5      MR. BERNSTEIN:  Good afternoon, Your Honor.  Mark

6  Bernstein from Weil, Gotshal & Manges, on behalf of the Lehman

7  Chapter 11 debtors.

8      The next seven items on the agenda are a series of

9  omnibus claims objections, each of which is going forward today

10 on an uncontested basis.  These omnibus objections seek to

11 either expunge claims for the failure to comply with the

12 Bankruptcy Code, Bankruptcy Rules or the bar date order; reduce

13 and allow certain derivative contract claims; and reclassify

14 certain claims and general unsecured claims.

15     I'd like to point out that my colleague Erin Eckols is

16 appearing telephonically today and she's available to answer

17 any specific questions that the Court may have about these

18 motions.

19     THE COURT:  Okay.

20     MR. BERNSTEIN:  Specifically before the Court today is

21 omnibus objection number 28, which seeks to reduce and allow

22 the claim amounts of certain claims based on derivative

23 contracts, to an amount which the debtors believe is the

24 correct amount calculated under the contract.

25     Omnibus objection number 29 seeks to expunge claims

1    that did not including a blocking number on the claim form.  As

2    Your Honor may recall, the blocking numbers were a specific

3    provision included in the Lehman program securities alternative

4    claims filing procedures and were required for the debtors to

5    be able to verify ownership and avoid duplicate claims being

6    filed based on the same securities.

7         Omnibus objection number 30 seeks to expunge claims

8    that did not identify a debtor or a case number on the proof-

9    of-claim form, as required.

10        Omnibus objection number 31 seeks to expunge claims

11   for failing to provide supporting documentation or an excuse or

12   a reason why they did not have such supporting documentation,

13   as is required by the bar date order and also Bankruptcy Rule

14   3001(c).

15        Omnibus objection 32 and 33 are similar to prior

16   omnibus objections heard in this case, seeking to expunge

17   claims which have been either amended or superseded by

18   subsequently filed claims or duplicates, either actual

19   duplicates or substantive duplicates, of other claims that

20   remain on the register.

21        And omnibus objection number 34 seeks to reclassify

22   claims that were filed as secured claims as general unsecured

23   claims.

24        Your Honor, with respect to these omnibus objections,

25   the debtors received various responses from creditors with

1    respect to most of these omnibus objections.  In all cases, the

2    debtors have either reached out to these creditors and resolved

3    those objections -- or those responses, or have adjourned the

4    objection with respect to those claims until a subsequent

5    hearing.

6          THE COURT:  As to --

7          MR. BERNSTEIN:  Therefore, as a result, we're going

8    forward on an uncontested basis.

9          THE COURT:  Understood.  We noted a couple of names in

10   respect of omnibus objection 31, and two names in particular

11   that were not listed in the responses-received list.  And we

12   just want to clarify -- we don't have to burden the record with

13   this -- that these names are going to be included in the

14   matters adjourned to another hearing.

15         MR. BERNSTEIN:  To the extent there were responses

16   received, if they were not included on the agenda, we do agree

17   to adjourn those to a subsequent hearing.

18         THE COURT:  Okay.  Fine.

19         MR. BERNSTEIN:  With respect to all claims for which

20   the objections are going forward, notice was provided to the

21   creditors, and no responses -- or no formal responses were

22   received.  Therefore, for the reasons set forth in the motions,

23   we respectfully request that the motions be granted.

24         I have forms of the orders to hand up to Your Honor,

25   and I can do that after the hearing.  The only changes to the

1  orders from those attached to the motions are changes to

2  reflect the fact that certain of the claims are being

3  adjourned -- the objection of certain of the claims are being

4  adjourned, and the objections of certain claims are being

5  withdrawn, for those claims shouldn't have been included on the

6  omnibus objection in the first place.

7       With respect to the order for omnibus objection number

8  34, which is the omnibus objection to reclassified claims,

9  there is one substantive change to the order.  We did -- we

10  will add language that provides that, notwithstanding the

11  reclassification of the claim to an unsecured claim, the rights

12  of a party -- those creditors to assert a valid right of setoff

13  is preserved, and the debtors' right to object to that right of

14  setoff is also reserved at this point.

15       THE COURT:  Are you in effect seeking what amounts to

16  a blanket approval of all of these now uncontested omnibus-

17  objection-to-claim motions through item number 8 on your

18  agenda?

19       MR. BERNSTEIN:  Yes.

20       THE COURT:  Okay.  There's no reason to burden the

21  record with colloquy.  All of those objections are granted as

22  uncontested.  And to the extent that there is a contest, or

23  particularly as it relates to the fairly extensive list of

24  parties who have responded to the insufficient-documentation

25  objection, which is omnibus objection number 31, the

1    understanding is that all of those are being adjourned; I

2    believe, in that instance it's being adjourned to October 27.

3              MR. BERNSTEIN:  Correct.

4              THE COURT:  Okay.  Fine.  Otherwise, it's approved as

5    uncontested.

6              MR. BERNSTEIN:  Thank you, Your Honor.  The last item

7    on the agenda is the first motion of Mark Glasser to extend

8    time for his claim.  This motion was heard and argued before

9    this Court at the April 20th hearing.  At that time, Your Honor

10   found that Mr. Glasser had failed to demonstrate cause for

11   relief from the bar date order, consistent with the applicable

12   precedent in the Second Circuit.  But the Court offered Mr.

13   Glasser an opportunity to request an evidentiary hearing to

14   establish that he was, I guess, unaware of the bar date or to

15   establish excusable neglect.

16             Mr. Glasser did file a notice requesting an

17   evidentiary hearing, and Mr. Glasser and his counsel are here

18   today.  At this point, unless Your Honor has any questions fort

19   the debtors, I propose to turn the podium over to Mr. Glasser's

20   counsel

21             THE COURT:  All right.

22             MR. GRAIFMAN:  Thank you, Mr. Bernstein.

23             Good morning -- good afternoon, Your Honor.  Brian

24   Graifman, Gusrae, Kaplan, Bruno & Nusbaum, for Mr. Glasser.

25             I was here sitting with Mr. Glasser but a few minutes

1  ago.  On the way here today, he kind of looked like he changed

2  physically and didn't really look well to me, but I didn't say

3  anything.  But a moment ago as we were sitting here, he told me

4  he was having trouble breathing and he just had bypass surgery

5  recently, and he just called his cardiologist and jumped in a

6  car to go over there.  So we were looking forward to, and

7  prepared to, make our presentation today, but -- a few minutes

8  ago, but this is what -- I'd like to see if we could seek a

9  very short adjournment till the next available date, if

10  possible.

11          THE COURT:  This can be adjourned to the next claims

12  objection date; I'm not sure when that is.  Do you know?

13          MR. BERNSTEIN:  I believe it's October 27th, Your

14  Honor.

15          THE COURT:  Fine.  So I hope your client is feeling

16  better and that October 27 will be a convenient time for us to

17  hear this matter.

18          MR. GRAIFMAN:  Thank you very much, Your Honor.

19          Thank you, Mr. Bernstein.

20          THE COURT:  Fine.

21          We're otherwise adjourned.

22          MR. BERNSTEIN:  Thank you.

23      (Proceedings concluded at 2:32 PM)

24

25

1                    I N D E X

2

3                    R U L I N G S

4    DESCRIPTION                            PAGE      LINE

5    Motion of Lehman Brothers Holdings Inc.      21          21

6    for Enforcement of the Automatic Stay

7    with Respect to the UK Pension

8    Proceedings

9

10   Debtors' Twenty-Eighth Omnibus              26           4

11   Objection to Claims (Valued Derivative

12   Claims)

13

14   Debtors' Twenty-Ninth Omnibus Objection     26           4

15   to Claims (No Blocking Number LPS Claims)

16

17   Debtors' Thirtieth Omnibus Objection to     26           4

18   Claims (No Debtor Claims)

19

20   Debtors' Thirty-First Omnibus Objection     26           4

21   to Claims (Insufficient Documentation

22   Claims)

23

24   Debtors' Thirty-Second Omnibus Objection    26           4

25   to Claims (Amended and Superseded Claims)

1

2                    R U L I N G S (cont'd.)

3    DESCRIPTION                          PAGE      LINE

4    Debtors' Thirty-Third Omnibus Objection      26        4

5    to Claims (Duplicative Claims)

6

7    Debtors' Thirty-Fourth Omnibus Objection     26        4

8    to Claims (Misclassified Claims)

9

10   Motion of Mark Glasser to Extend Time        27        11

11   for Claim, adjourned to October 27, 2010

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                 C E R T I F I C A T I O N

3

4    I, Clara Rubin, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7    _____

8    Clara Rubin

9    AAERT Certified Electronic Transcriber (CET**D-491)

10

11   Veritext

12   200 Old Country Road

13   Suite 580

14   Mineola, NY 11501

15

16   Date: September 2, 2010

17

18

19

20

21

22

23

24

25