Hearing Date and Time: September 22, 2010 at 10:00 a.m.

**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039
(973) 597-9100
Barry J. Roy (BR5896)
*Attorneys for Somerset Associates, LLC and Somerset Properties SPE, LLC*

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> LEHMAN BROTHERS HOLDINGS INC., *et al.*, <br><br> Debtors. | Case No. 08-13555 (JMP) <br><br> Chapter 11 |

### OBJECTION OF SOMERSET ASSOCIATES, LLC AND SOMERSET PROPERTIES SPE, LLC TO DEBTORS' MOTION, PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE, REQUESTING A SECOND EXTENSION OF EXCLUSIVE PERIODS FOR THE FILING AND SOLICITATION OF ACCEPTANCES FOR CHAPTER 11 PLANS OF LB SOMERSET LLC AND LB PREFERRED SOMERSET LLC

Somerset Associates, LLC ("SA") and Somerset Properties SPE, LLC ("SP") (collectively "Somerset Associates"), by and through their counsel, Rabinowitz, Lubetkin & Tully, L.L.C., object to Debtors' Motion (the "Motion"), Pursuant to Section 1121(d) of the Bankruptcy Code, Requesting a Second Extension of Exclusive Periods for the Filing and Solicitation of Acceptances for Chapter 11 Plans of LB Somerset LLC ("LB") and LB Preferred Somerset LLC ("LB Preferred"). In support of such Objection, Somerset Associates respectfully represent as follows:

## **FACTUAL BACKGROUND**

1.  On or about April 27, 2007, Falls of Neuse Investments, LLC ("FNI")(the administrative managing member of SA) and the Somerset Debtors formed SA for the purpose of acquiring, improving and operating 3 tracts of improved real property totaling 23 acres located in Raleigh, North Carolina (the "Property"). The improvements on the Property consist of a campus of six (6) office buildings leased to the general public, comprising approximately 374,000 square feet.

2.  In connection with the acquisition of the Property, SA formed SP, which took title to the Property (and assumed its existing indebtedness) on or about November 2, 2007. SP is wholly owned by SA.

3.  In connection with the formation of SA, FNI and the Somerset Debtors entered into an Operating Agreement, setting forth the roles of each member. Pursuant to the Operating Agreement, LB's duty was to participate in specific, limited decisions of SA, and LB Preferred's duty was to provide continued funding, with no management role.

4.  Debtor Lehman Brothers Holdings, Inc. ("LBHI") owns both directly or indirectly, all the membership interests in the Somerset Debtors, and the Somerset Debtors are controlled, either directly or indirectly, by LBHI.

5. Following LBHI's bankruptcy filing on September 15, 2008, both of the Somerset Debtors defaulted on their obligations pursuant to the Operating Agreement. Specifically, LB defaulted on its obligations as a managing member of SA, and LB Preferred defaulted on its funding obligations. The defaults of both of the Somerset Debtors damaged Somerset Associates.

6. As a result of the Somerset Debtors defaults, FNI, on behalf of SA, filed a lawsuit in the Court of Chancery in the State of Delaware on October 30, 2009 (the "Delaware Action"). On the eve of trial in the Delaware Action, the Somerset Debtors filed their bankruptcy petitions.

7. Schedule F of LB's bankruptcy petition lists two unsecured claimants, Clyde Click, P.C. in the amount of $26,098.60 and PAMI LLC in the amount of $7,467,932.45. LB erroneously fails to list neither SA nor SP in Schedule F.

8. Schedule F of LB Preferred's bankruptcy petition lists three unsecured claimants, PAMI LLC in the amount of $9,656,919.29, Richards Layton & Finger in the amount of $63,691.09, and SA in the erroneous amount of $2,584,200.13.

9. SA has filed a proof of claim in the LBHI bankruptcy in the amount of $4,690,609.00. This claim was subsequently amended, increasing SA's total claim to $7,534,687.10. SA's proof of claim filed in the LBHI case is based upon the defaults of the Somerset Debtors. SA has also filed proofs of claim in the Somerset Debtors' bankruptcy cases, each in the amount of $7,534,687.10.

10. Schedule B of both of the Somerset Debtors' bankruptcy petitions, under "Interests in partnerships or joint ventures," lists "Holder of preferred equity interest" in SA, with a net book value of $0.00.

11. On March 31, 2010, the Somerset Debtors filed a motion, pursuant to Section 1121(d) of the Bankruptcy Code, requesting extensions of exclusive periods for the filing and soliciting of acceptances for Chapter 11 plans (the "First Motion").

12. On April 7, 2010, Somerset Associates filed an objection to the Debtors' March 31, 2010 motion to extend the exclusive periods.

13. The First Motion was adjourned from time to time while the parties discussed settlement.

14. On April 15, 2010, this Court entered a bridge Order extending the Debtors' exclusivity up through September 22, 2010.

15. On September 2, 2010, the Debtors filed a second motion seeking to extend exclusivity (the "Second Motion").

16. The parties have reached an agreement resolving their various disputes, including the objection by Somerset Associates to any further extensions of exclusivity. The settlement has yet to be documented.

17. On September 13, 2010, Somerset Associates withdrew its objection to the First Motion without prejudice, pending finalization of its settlement with the Somerset Debtors.

18. Although Somerset Associates is confident that its settlement with the Somerset Debtors will be finalized its filing this objection to the Second Motion as a protective measure, if such settlement is not finalized and approved by the Court.

## LEGAL ARGUMENT

19. Section 1121(d) of the Bankruptcy Code provides that the Court may extend a debtor's exclusive period in which to file a chapter 11 plan or to solicit acceptances of a filed

plan "for cause." Debtors correctly note that the Bankruptcy Code does not define "cause," nor establish any formal criteria for granting an extension.

20. "A decision to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court, and is fact-specific." In re Adelphia Communications Corp., 352 B.R. 578, 586 (Bankr.S.D.N.Y. 2006) (citations omitted). Courts typically rely on nine factors in determining whether cause exists to extend a debtor's exclusive periods pursuant to 1121(d):

> (a) the size and complexity of the case;
>
> (b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
>
> (c) the existence of good faith progress toward reorganization;
>
> (d) the fact that the debtor is paying its bills as they become due;
>
> (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;
>
> (f) whether the debtor has made progress in negotiations with its creditors;
>
> (g) the amount of time which has elapsed in the case;
>
> (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
>
> (i) whether an unresolved contingency exists.

Id. at 587.

5

21. The consideration of whether the debtor has demonstrated reasonable prospects for filing a viable plan has been characterized by some courts as "the likelihood of success of a debtor's reorganizational activities." See, In re Perkins, 71 B.R. 294, 298 (W.D. Tenn. 1987). This factor seems to be derived from the Senate Report to the 1978 Bankruptcy Act, which states: "'[s]ince, (sic.) the debtor has an exclusive privilege for six months during which others may not file a plan, the granted extension should be based on a showing of some promise of success." Id. (quoting U.S.Code Cong. & Admin.News at 5904). The In re Adelphia Court considered the factor of whether the debtor has demonstrated reasonable prospects for filing a viable plan "to be the most important under the facts of [the] cases [before it]." 352 B.R. at 588.

22. While there are numerous factors courts have considered in determining whether to grant an extension of exclusivity,

> many courts have chosen to rely upon relatively few factors albeit different ones to determine whether the necessary cause exists to alter the statutory time period. . .Furthermore, it appears that the choice of pertinent factors depends largely upon the factual nature of the case before the court. . .Thus, a bankruptcy court faced with the issue of whether the necessary "cause" exists to extend the exclusivity period has a high degree of flexibility in fashioning the appropriate test to be applied, and is not required to apply any particular set of factors, or number of factors, in every case.

In re The Elder-Beerman Stores Corp., 1997 WL 1774880, 4 (S.D.Ohio).

23. By way of example, in In re French Bourekas, Inc., 175 B.R. 517, 521 (Bankr. S.D.N.Y. 1994), the Court noted in dicta that it had previously denied the debtor's motion to extend its exclusive period to file a plan "for the reasons which had earlier led me to lift the automatic stay, that is, the inability to confirm a plan of reorganization coupled with a lack of equity in the property."

6

24. Here, the particular facts of the case dictate that the Debtors' Motion should be denied. As in In re French Bourekas, Inc., the most significant factors in this case are the inability of the Somerset Debtors to confirm a plan of reorganization and a lack of equity in their property.

25. The Somerset Debtors will be unable to confirm any plan of reorganization without the vote of SA. Pursuant to § 1129(a)(10) of the Bankruptcy Code, in order to confirm a plan, at least one class of impaired claims must accept the plan. Section 1126(c) further provides that a class of claims has accepted a proposed plan if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of allowed claims of such class. Thus, a creditor holding at least one-third in amount of claims in an impaired class holds a "blocking vote" which would prevent the confirmation of a plan in a case in which there is only one class of impaired creditors.

26. Here, both LB and LB Preferred would have only one class of impaired creditors, the unsecured creditors listed in their respective Schedule Fs. In LB's case, if SA's claim in the amount of $7,534,687.10 is taken into account, such claim represents approximately 50.1% of the total claims in the amount of $15,028,718. Because SA's claim is greater than one-third of the total claims in the sole class of impaired creditors, it would have a blocking vote to prevent confirmation of any plan proposed by LB. Similarly, in LB Preferred's case, if SA's claim in the amount of $7,534,687.10 is taken into account, such claim represents approximately 43.6% of the total claims in the amount of $17,255,297. Again, because SA's claim is greater than one-third of the total claims in the sole class of impaired creditors, it would have a blocking vote to prevent confirmation of any plan proposed by LB Preferred. Accordingly, the Somerset Debtors would be unable to confirm a plan, making reorganization impossible.

27.     Another factor weighing in favor of denying the Debtors' Motion is the Somerset Debtors' lack of equity in the Property, which is reflected in their Schedules.

28.     While these two factors alone, *i.e.*, the inability to confirm a plan and lack of equity in the Property, warrant the denial of the Debtors' Motion, another factor often considered by bankruptcy courts, the size and complexity of the case, also dictates in favor of denying the Debtors' Motion. Both of the Somerset Debtors' cases involve very few creditors and a single asset. Thus, these cases are small and not complex. Therefore, an extension of exclusivity based on size and complexity is not warranted.

29.     Finally, the Court should consider the circumstances surrounding the filing of the Somerset Debtors' bankruptcy cases. These circumstances may warrant dismissal for a bad faith filing pursuant to § 1112(b) of the Bankruptcy Code, which allows dismissal of a case "for cause." In interpreting § 1112(b), courts have recognized an implicit requirement that a chapter 11 case be filed in good faith. In re Squires Motel, LLC, 416 B.R. 45, 49 (Bankr.N.D.N.Y. 2009), *aff'd*, 2010 WL 1006646 (N.D.N.Y.). Among the factors a court should consider in determining whether a filing was made in bad faith are: "(1) whether the filing of the petition was strategically timed to obtain a litigation advantage; (2) whether the debtor's reorganization effort is essentially a two party dispute; (3) the nature and extent of the debtor's assets, debts and business operations; and (4) whether there is a reasonable probability that a reorganization plan can be proposed and confirmed." Id.; see also, In re General Growth Properties, Inc., 409 B.R. 43, 56 (Bankr.S.D.N.Y. 2009); In re 1633 Broadway Mars Restaurant Corp., 388 B.R. 490, 498-499 (Bankr.S.D.N.Y. 2008). Here, the Somerset Debtors filed their petitions on the eve of trial in the Delaware Action. In addition, the Somerset Debtors' bankruptcy cases essentially involve a two party dispute. Furthermore, the Somerset Debtors have no assets with value, and, as

8

previously argued, no probability of confirming a reorganization plan. While bad faith filing has not been cited, *per se*, as a ground for denying a motion to extend exclusivity periods, the factors warranting a dismissal for bad faith filing also weigh in favor of denying a motion to extend exclusivity.

**WHEREFORE,** Somerset Associates respectfully requests that Debtors' Motion be denied as to the Somerset Debtors.

RABINOWITZ, LUBETKIN & TULLY, L.L.C.
*Attorneys for Somerset Properties SPE, LLC*

By: _____
BARRY J. ROY

Dated:    September 15, 2010

F:\Client_Files\N-Z\Wilk\Somerset\Opposition to Motion of Debtor to Extend Exclusivity.doc