Hearing Date and Time: October 27, 2010 at 10:00 a.m. (ET)

KLESTADT & WINTERS, LLP
John E. Jureller, Jr.
292 Madison Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Counsel to* **GLG Credit Fund**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                                                :
In re LEHMAN BROTHERS HOLDINGS        :   Case No. 08-13555 (JMP)
INC., *et al.*                                             :   (Jointly Administered)
                                                                :
                    Debtors.                             :
                                                                :
----------------------------------------------------------------x

## GLG CREDIT FUND'S REPLY TO DEBTORS' OPPOSITION TO MOTION TO PERMIT FILING OF A LATE PROOF OF CLAIM PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)

GLG Credit Fund ("Claimant") hereby submits its reply ("Reply") to the Debtors' opposition ("Opposition")[1] to Claimant's motion (the "Motion") for the entry of an order, pursuant to Federal Rule of Bankruptcy Procedure 9006(b), deeming as timely filed its proof of claim ("Claim") as against Lehman Brothers Special Financing Inc. ("LBSF"), and states as follows:

PRELIMINARY STATEMENT

1.      By their Opposition, the Debtors argue that Claimant's inadvertent failure to timely file its Claim was "a result of plain oversight" on Claimant's part and "caused by an error

---

[1] The Creditors' Committee filed a joinder to the Debtors' Opposition, which does not assert any new arguments. To the extent necessary, this Reply shall respond to the Creditors' Committee's joinder as well.

1

totally within [Claimant's] control", thereby arguing Claimant's Motion and underlying Claim fall within a previous order of this Court related to previous motions to file late claims.

2.  The Debtors ignore, though, that Claimant's failure to file a Claim against LBSF, rather than LBIE (against whom it did assert its Claim), was not actually a so-called error, but instead a differing accounting practice directly related to the Agreement[2] between LBIE, on behalf of itself and its affiliates, and Claimant. In fact, the Agreement, which provided for an all-encompassing relationship between LBIE and Claimant, specifically states that LBIE would "open an Account on its books and records" and "all Securities and funds received by Lehman or *an affiliate of Lehman* on [Claimant's] behalf in connection with Transactions [defined below herein] will be credited to the Account." As such, Claimant's accounting was consistent with the legal relationship between the Parties under the Agreement.

3.  Based on Claimant's reliance on the contractual relationship, it is respectfully submitted that, to the extent necessary, this matter falls within the "excusable neglect" standard. Further, Claimant has, at the very least, asserted a valid contest as to whether its accounting of the Claim was accurate, which should be subject to a claims objection process, and the evidentiary entitlements that come therewith. As such, it is respectfully requested that the Motion must be granted in all respects.

## ARGUMENT

4.  As set forth in the Motion, LBIE and Claimant entered into the Agreement to provide all encompassing services to Claimant, whereby all Transactions, including CDS transactions, would be processed through Claimant's Account, as defined in the Agreement, with LBIE.

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

5. The Agreement stated, in pertinent part, in section V.1.Lehman Account:

In order for Lehman [defined therein as LBIE] to provide the services contemplated hereby, Lehman will open the Account on its books and records. All Securities and funds received by Lehman or *an affiliate of Lehman* on Client's behalf in connection with Transactions will be *credited to the Account* and all Securities and funds to be transferred by Client in connection with Transactions will be transferred from and debited to the Account, in accordance with Client's written instructions to Lehman, as set forth above; and Lehman may hold in the Account all such Securities and funds as are incidental to the clearing of Transactions.

*See* Motion, Exhibit B (emphasis added).

6. Pursuant to the Agreement, the term "Account" was defined as:

Client's account maintained by Lehman in its books and records to record the Client's position in the Transactions.

*See* id.

7. Pursuant to the Agreement, the term "Transactions" was defined as:

trades and/or transactions involving Securities, including purchases or sales for regular way, skip or forward settlement, repurchase and reverse repurchase transactions, dollar-rolls and securities lending transactions; or any transaction which is a rate swap transaction, basis swap, forward rate transaction, commodity swap, commodity option, bond option, interest rate option, foreign exchange transactions, cap transactions, floor transactions collar transaction, currency swap transaction, cross-currency rate swap transaction, currency option or any other similar transaction (including any option with respect to any of these transactions, any of which Lehman agrees to process, clear and settle for Client).

*See* id.

8. Based upon the terms of the Agreement, Claimant's accounting credited all deposits to be held by LBIE, an act by Claimant not an error, but rather a direct result of the accounting practice required under the Agreement.

9. In operation, LBIE serviced the Account with respect to the Transactions. If external Transactions - i.e. transactions between Claimant and non-Lehman entities - then

3

Claimant would make payment directly for any collateral required under a swap transaction. However, with respect to internal Lehman Transactions - i.e. transactions between Claimant and LBIE and its affiliates - if collateral was required under a Transaction, LBIE would then notify Claimant and, upon authorization, would make an internal Lehman journal entry evidencing a balance sheet transfer. *See* Affidavit of Robert Price. Similarly, upon termination of the Transaction, the internal Lehman journal entry would be automatically reversed. As noted in the Motion, all Transactions between Claimant and LBSF terminated more than a year before the bankruptcy cases were filed. Each of these internal balance sheet transactions occurred without funds exchanging hands amongst the Lehman entities, and as a result, Claimant accounted for all such Transactions, including all debits and credits, as occurring through the Account at LBIE.

10. Based upon the Agreement, the direct relationship was between Claimant and LBIE, notwithstanding any account statements purportedly forwarded by LBSF to Claimant relative to swap transactions. Although the account statements may have evidenced collateral required under certain swap transactions with LBSF, these deposits were always accounted for as held in the Account at LBIE pursuant to the terms of the Agreement.

11. In any event, any journal entries evidencing the collateral related to these swap transactions with LBSF would have necessarily been reversed upon termination of such swap transactions, all of which occurred more than a year before the Debtors' bankruptcy cases were filed. Therefore, even assuming, *arguendo,* that separate accounts were opened at the various Lehman entities to process the swap transaction and collateral (which Claimant was unaware of and which contradicted the Agreement), all funds would have been transferred back to the LBIE Account upon termination of the swap and satisfaction of the obligations of Claimant thereunder. As such, it was proper to account for this collateral as being held by LBIE in the Account.

4

12. Notwithstanding Debtors' claim to the contrary, Claimant reasonably believed that, and properly accounted for, the funds as being on deposit in the Account with LBIE. Although the Debtors purportedly identified the LBSF Margin Account on Schedule G of its list of Executory Contracts and Unexpired Leases, it is noteworthy that the Debtors failed to identify Claimant as a creditor related to any funds or deposits in the LBSF Margin Account. As such, and together with Claimant's understanding that the Account was held by LBIE (as set forth above), it is reasonable that Claimant would not have investigated this further.

13. To further cloud the water, it was recently discovered that there was confusion within the *Lehman entities* as to the holder of Claimant's Account, i.e. whether LBI or LBIE. The Agreement at issue superceded, replaced and **terminated** a prior similar agreement between LBI and Claimant, which was entered into on August 28, 2002. By the new Agreement, LBIE replaced LBI as the service provider to Claimant, and the Account was required to be moved to and held by LBIE under the terms. Notwithstanding the clear terms of the Agreement and termination of the prior agreement, LBI and LBIE have recently exchanged correspondence with Claimant with questions as to which Lehman entity actually holds the Account. A copy of the correspondence is annexed hereto as Exhibit A hereto.

14. At the very least, Claimant has presented a valid argument as to whether the accounting practices of LBIE and its affiliates were accurate, which should be subject to the claims objection process and evidentiary entitlements therein, rather than the harsh penalty of losing the claim outright especially since these funds were merely collateral for Claimant's swap obligations, all of which have been satisfied in full.

15. As set forth in the Motion, this application was filed by Claimant soon after discovering that the collateral may in fact be held by LBSF. *See* Motion, ¶30. There was no

delay in filing same, and the Debtors have not provided any evidence to the contrary. Further, by granting the relief requested in the Motion, this Court will not be opening the floodgates for similar motions since this matter is fact specific based upon the interpretation of the Agreement.

16. In permitting a creditor's late filing under Bankruptcy Rule 9006(b)(1), the Supreme Court held that "the determination [of excusable neglect] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). Based upon the Agreement between the parties and related relationship, and the arguments set forth in the Motion and Reply, it is clear that Claimant has met the standard for showing "excusable neglect" in this circumstance as required by Pioneer and the Second Circuit.

17. Notwithstanding the foregoing, Claimant respectfully reserves all rights to assert title to and ownership of any funds or securities held by LBIE, or their affiliates, under the terms of the Agreement, including the right to commence an adversary proceeding seeking a declaratory judgment that any funds and/or securities on deposit in the Account held at LBIE, or otherwise held by any other Lehman entity, are not property of the estate and are in fact property of Claimant, and that Debtors, or their affiliates, are obligated to transfer such funds or securities to the Claimant under the terms of the Agreement.

**WHEREFORE**, Claimant respectfully requests that the Court grant the Motion in all respects and enter an order (i) permitting Claimant to file the Proof of Claim against LBSF; (ii) deeming such filing to be timely under Bankruptcy Rule 9006(b); and (iii) granting such other and further relief as this Court deems just and equitable.

Dated: New York, New York
September 15, 2010

KLESTADT & WINTERS, LLP

By: */s/ John E. Jureller, Jr.*
John E. Jureller, Jr.
292 Madison Avenue, 17th Floor
New York, New York 10017
Telephone (212) 972-3000

Attorneys for Claimant
***GLG Credit Fund***