SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Shana Elberg

**Hearing Date: September 22, 2010**
**Hearing Time: 10:00 a.m.**

300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
(213) 687-5000
Van C. Durrer II (Admitted in NY)

Attorneys for Gramercy Warehouse Funding, I LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS, INC. *et al*, | (Jointly Administered) |
| Debtors. | |

**OBJECTION OF GRAMERCY WAREHOUSE FUNDING I, LLC, AS AGENT FOR THE SECOND LIEN LENDERS, TO MOTION OF LEHMAN COMMERCIAL PAPER INC. PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR APPROVAL OF THAT CERTAIN AMENDED AND RESTATED COMPROMISE BY AND AMONG LEHMAN COMMERCIAL PAPER INC., ALFRED H. SIEGEL, AS CHAPTER 11 TRUSTEE FOR THE SUNCAL DEBTORS, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE SUNCAL BANKRUPTCY CASES**

Gramercy Warehouse Funding I, LLC (the "Second Lien Agent"), in its capacity as agent for the lenders Second Lien Lenders[1] under the Second Lien Credit Agreement dated January 19, 2006 (the "Second Lien Credit Agreement"), by and among LBREP/L-SunCal Master I, LLC, LCPI, Lehman Brothers, Inc. and the Second Lien Lenders,

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion [Docket No. 11153].

respectfully submits this objection (the "Objection") to the Motion [Docket No. 11153] of LCPI pursuant to section 105 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules for approval of that Certain Amended and Restated Compromise (the "Settlement") by and among LCPI, Alfred H. Siegel, as the chapter 11 trustee appointed in the SunCal Bankruptcy Cases, and the official committee of unsecured creditors appointed in the SunCal Bankruptcy Cases (the "Committee"). In support of the Objection, the Second Lien Agent represents as follows:

## I. PRELIMINARY STATEMENT

1. By this Objection, the Second Lien Agent seeks to protect its particular rights that are directly and adversely affected by the proposed Settlement. The Second Lien Agent raises these objections at this time and in this Court in an effort to provide solutions that will limit (rather than increase) potential future litigation and avoid (rather than create) potential future disputes. See In re The Drexel Burnham Lambert Group, Inc., 995 F.2d 1138, 1146-47 (2d Cir. 1993) ("[B]efore endorsing a settlement, the district court is obligated to make an examination of how the accord affects the rights of third parties"); Cullen v. Riley (In re Masters Mates & Pilots Pension Plan and IRAP Litigation), 957 F.2d 1020, 1026 (2d. Cir. 1992) (noting that before approving a settlement, a court must consider the impact on interests of third parties negatively affected).

2. Specifically, the Second Lien Agent has three objections to the proposed relief. First, the proposed form of Order is overly broad in its reservation of jurisdiction. Attached hereto as Exhibit 3 is a proposed form of order that resolves this objection. The

2

Second Lien Agent has been in discussions with counsel for LCPI, and believes that the precise language for the order will be resolved in advance of the hearing on the Motion.

3. Second, the Amended Term Sheet memorializing the Motion is internally inconsistent, and could be interpreted in a way that directly alters the Second Lien Agent's rights. Again, Exhibit 3 includes language that resolves this issue, but as of the deadline required for filing this Objection, counsel had not had an opportunity to meet and confer on this language. Again, it is expected that such issue can be resolved in advance of the hearing. In the absence of a consensual resolution, the Second Lien Agent requests that the Court add clarity to any order on the Motion.

4. Third, in the SunCal Bankruptcy Cases, LCPI has used the automatic stay to prevent all attempts of the SunCal Trustee to seek any relief against it and even to prevent access to basic discovery. Under these circumstances, it is likely impossible that the SunCal Trustee can carry its burden before the SunCal Court to demonstrate that it has evaluated claims against LCPI in order to exercise the business judgment appropriate to settle such claims, as the Amended Term Sheet proposes to do. Accordingly, rather than have the time of this Court and the SunCal Court (and the parties) be wasted, the Second Lien Agent proposes two alternatives solutions in Exhibit 3. On the one hand, the Court can modify the automatic stay for the limited purpose of allowing discovery of LCPI. Alternatively, the Court could appoint a special examiner, subject to this Court's jurisdiction and control, for the limited purpose of evaluating the claims of the SunCal Trustee, issuing a report to the parties in interest regarding the Settlement and even mediating any remaining disputes among the parties. The Second Lien Agent believes that either of these approaches would likely provide the SunCal Trustee, other parties in

3

interest and the SunCal Court with sufficient tools to properly evaluate the Settlement in the SunCal Court.

## II. BACKGROUND

5.      The Motion's recitation of the background facts pertinent to this case is accurate in many respects, and so it is not repeated here, except to emphasize certain aspects that are particularly relevant to the Court's consideration of this Objection.

6.      As the Court is aware, involuntary bankruptcy cases were initiated against the SunCal Debtors on September 10, 2008.  Before commencement of the SunCal Bankruptcy Cases, the SunCal Parent entered into certain secured financing arrangements under which LCPI initially served as agent.  On January 19, 2006, the SunCal Parent entered into the First Lien Credit Agreement dated January 19, 2006 (the "First Lien Credit Agreement") and the Second Lien Credit Agreement with respect to which, in each instance, the SunCal Parent pledged the properties of the SunCal Subsidiaries as collateral to secure repayment of the approximately $320 million borrowed thereunder. The following year, the SunCal Parent entered into the Third Lien Credit Agreement dated on February 6, 2007 (the "Third Lien Credit Agreement" and, collectively with the First Lien Credit Agreement and the Second Lien Credit Agreement, the "Credit Agreements"), which provide access to an additional $75 million.  LCPI served as the syndication agent and the initial administrative agent for all three Credit Agreements.

7.      On February 6, 2006, Second Lien Agent purchased a $45 million interest under the Second Lien Credit Agreement.  Additionally, on March 9, 2007, Second Lien Agent Investment Trust purchased an approximately $16.9 million interest under the Third Lien Credit Agreement.  Also on February 6, 2008, Second Lien Agent succeeded

4

to Second Lien Agent Trust's interest. A week later, Second Lien Agent replaced LCPI as the administrative agent under the Second Lien Credit Agreement pursuant to a letter dated February 15, 2008 (the "Administrative Agent Letter"), a true and correct copy of which is attached hereto at Exhibit 1.

8.  The Second Lien Agent commenced its own action against the SunCal Parent and the LBREP Lakeside SC Master 1, LLC, SCC Acquisitions, Inc., SCC Acquisitions LLC, SCC Ranch Ventures, LLC and Bruce Elieff (the "Transferors") in the Superior Court for California on September 9, 2008 seeking recovery of a dividend in the amount of $144 million, which were among the proceeds of the LCPI financing.[2] This action was ultimately removed to the SunCal Court and is pending therein as adversary proceeding number 08-01492 (the "Adversary Proceeding"). The causes of action set forth in the Adversary Proceeding are similar to certain of the SunCal Estate Claims. The complaint underlying the Adversary Proceeding is attached hereto as Exhibit 2.

9.  The SunCal Trustee is familiar with the Adversary Proceeding and, in fact, entered into stipulations to postpone deadlines in the Adversary Proceeding, and to have such proceeding be held in abeyance. The SunCal Trustee encouraged such postponements so that he could evaluate the fraudulent transfer claims asserted in the Adversary Proceedings, which claims the SunCal Trustee acknowledged could eventually benefit of the SunCal Estates. See Joint Status Report, at 2-3, Suncal, No. 08-15588 (Bankr. C.D. Cal. Dec. 9, 2009), Docket No. 35. In addition, as noted above, the SunCal Trustee also recognized the significance of the SunCal Estate Claims, and filed proofs of

---

[2]   The SunCal Bankruptcy Cases were commenced immediately after the initiation of this litigation.

5

claim (the "Proofs of Claim") in the instant bankruptcy cases on account thereof. See Proofs of Claim No. 26141- 26147 and 26077.

10. Attached as Exhibit A to the Declaration of Alfred H. Siegel in Support of Omnibus Opposition to Motions for Relief from the Automatic Stay Filed by Lehman Commercial Paper Inc. is a draft complaint (the "Draft Complaint") that the SunCal Trustee described as one he "intend[ed] to file if relief from stay is granted in the Lehman Bankruptcy Cases." Declaration of Alfred H. Siegel In Support of Omnibus Opposition to Motions for Relief From the Automatic Stay Filed by Lehman Commercial Paper Inc., Ex. A In re LBREP/L-Lehman SunCal Master I, LLC, el al., No. 08-15588-ES (Bankr. C.D. Cal. Nov. 13, 2008), Docket No. 79. In the Draft Complaint,[3] the Trustee sets forth eight causes of action on behalf of the estates of the SunCal Debtors (the "SunCal Estates") against LCPI and at least one other Lehman affiliate, asserting claims for fraudulent transfer, breach of fiduciary duty, breach of the duty of good faith and fair dealing, and equitable subordination (collectively, the "SunCal Estate Claims"). The SunCal Trustee indicated that the value of the SunCal Estate Claims "potentially far exceed the value of the collateral at issue" in the SunCal Bankruptcy Cases. Id. at 3.

11. In filing the Proofs of Claim and through his participation in the Adversary Proceeding, the SunCal Trustee has acknowledged the SunCal Estate Claims and their potential value. In light of the automatic stay in these bankruptcy cases, however, the SunCal Trustee has been precluded for meaningfully investigating the SunCal Estate Claims. See, e.g., Response of Lehman Commercial Paper Inc., as First Lien Administrative Agent for the First Lien Lenders, to Omnibus Opposition of Chapter

---

[3] The Draft Complaint was also attached to the proof of claim filed by the SunCal Trustee in the instant case. (Proof of Claim No. 26141.)

6

11 Trustee to Motions for Relief from the Automatic Stay, at 10, n.11, SunCal., No. 08-15588 (Bankr. C.D. Cal. Nov. 18, 2008), Docket No. 89 (asserting that the Trustee needed to request stay relief to embark on formal discovery).

### III. ARGUMENT

A.  The Reservation of Jurisdiction Is Overbroad

12. The proposed order approving the Motion (the "Proposed Order") is overly broad in its reservation of jurisdiction. In particular, it could be interpreted to limit the SunCal Court's jurisdiction and might be asserted to preclude the SunCal Court's ability to address issues in the SunCal Bankruptcy Cases.

13. LCPI's counsel has confirmed that the proposed order was not intended to have this affect. Accordingly, the Second Lien Agent requests that the Court include the following highlighted language in any order on the Motion, as found in Exhibit 3:

> ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order; provided however nothing contained in this decretal paragraph is intended to reduce the exclusive jurisdiction of or predetermine any concurrent jurisdiction otherwise vested in the Bankruptcy Court for the Central District of California in the SunCal Bankruptcy Case; and it is further

B.  The Amended Term Sheet Is Internally Inconsistent regarding its Impact on Third Party Rights.

14. In one provision of the Amended Term Sheet, the parties properly recognize that third party rights cannot be affected. In another section, the Amended Term Sheet contains mandatory language regarding the enforceability of certain rights that directly impact the rights of third parties, including the Second Lien Agent.

15. Specifically, the Amended Term Sheet contains the following two provisions:

7

| **Paragraph B, Page 3 of Amended Term Sheet** | **Paragraph Q, Page 11 of Amended Term Sheet** |
|---|---|
| "This Term Sheet is not intended to affect the rights, if any, of (a) the 2nd Lien Lenders other than LCPI 2nd Lien Lender, (b) the 3rd Lien Lenders other than LCPI 3rd Lien Lender, or (c) any other Person (as defined in the First Lien Credit Agreement dated January 19, 2006 (as amended) among LCPI, Parent Debtor, the 1st Lien Lenders, and certain other parties (the "First Lien Credit Agreement"), except to the extent that a Person is a party hereto, with such Person's rights being affected to the extent expressly provided herein." | "This division of Other Recoveries shall be enforceable in the Bankruptcy Courts and any court of competent jurisdiction notwithstanding (1) the effect or terms of any agreement among the Lenders; (2) that assets, claims or causes of action may be held or pursued on behalf of one or only some of the Debtors; and (3) that Parent Debtor has few if any creditors other than the Lenders." |

16.     The proper interpretation of the Intercreditor Agreement is not the subject of any litigation before any Court. This Court should not be predetermining any such interpretation without proper procedure and notice and opportunity to respond. The Second Lien Agent has offered the following language in <u>Exhibit 3</u> to address this issue: "ORDERED that, notwithstanding anything to the contrary in the Amended Term Sheet and this Order, nothing in the Amended Term Sheet is intended to affect the rights, if any, of the 2nd Lien Lenders other than the LCPI 2nd Lien Lender, the 3rd Lien Lenders other than the LCPI 3rd Lien Lender or any other Person as defined in the Amended Term Sheet, expect to the extent that a Person is a party to the Amended Term Sheet, with such Person's rights being affected to the extent expressly provided in the Amended Term Sheet." This language tracks the provision of the Amended Term Sheet which it appears the parties meant to be controlling.

08-13555-mg    Doc 11342    Filed 09/15/10    Entered 09/15/10 16:05:47    Main Document
Pg 9 of 11

C.  Approval of the Settlement Requires a Process by which the Parties Can Evaluate the SunCal Trustee Claims

17. As noted above, in the SunCal Bankruptcy Cases, LCPI has used the automatic stay to prevent all attempts of the SunCal Trustee to seek any relief against it and even to prevent access to basic discovery.  See Smart World Tech.LLC, v. Juno Online Servs. Inc. (In re Smart World Tech LLC),  423 F.3d 166, 179 (2nd Cir. 2005) (overturning a bankruptcy court's approval of a 9019 settlement where the "repeated stays and adjournments imposed by the court prevented [a party] from conducting any meaningful discovery," and so the "bankruptcy court,. . . could [not] have weighed the proposed settlement against the potential value of its claims"). The SunCal Trustee has thus been unable to take any discovery from LCPI as to whether the LCPI financing was transacted in good faith or at a time when the SunCal Debtors were solvent.  Although it is certainly accurate that such matters are the SunCal Trustee's burden before the SunCal Court, it is equally true that this Court has the power to provide the necessary tools to make the SunCal Trustee's pursuit to satisfy that burden more than a futile exercise.

18. Accordingly, rather than have the time of this Court and the SunCal Court (and the parties) be wasted, the Second Lien Agent proposes two alternatives solutions in Exhibit 3.  On the one hand, the Court can modify the automatic stay for the limited purpose of allowing discovery of LCPI.  This will enable both the SunCal Trustee, if it desires, as well as other parties in interest, such as the Second Lien Agent, the means to conduct discovery to explore the merit of the SunCal Trustee claims that are the subject of the Settlement.  Only with full access by the parties to relevant discovery, can the SunCal Court appropriately evaluate the business judgment of the SunCal Trustee.

19.     Alternatively, the Court could appoint a special examiner, subject to this Court's jurisdiction and control, for the limited purpose of evaluating the claims of the SunCal Trustee, issuing a report to the parties in interest regarding the Settlement and even mediating any remaining disputes among the parties.  The Second Lien Agent believes that either of these approaches would likely provide the SunCal Trustee, other parties in interest and the SunCal Court with sufficient tools to properly evaluate the Settlement in the SunCal Court.  Indeed, such a special examiner might be of use and value more generally in these cases, although the Second Lien Agent is proposing this relief only for this limited role at this time.

## IV.  **CONCLUSION**

WHEREFORE, Second Lien Agent respectfully requests that the Court (a) deny approval of the Settlement, or, alternatively ; enter the form of Order attached hereto as Exhibit 3, either modifying the automatic stay to allow discovery as to the SunCal Trustee claims against LCPI; or appointing a special examiner plus granting such further relief as this Court deems just and proper.

Dated: New York, New York
September 15, 2010

/s/ *Shana Elberg*
Shana Elberg
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

-and-

Van C. Durrer II (Admitted in NY)
300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
(213) 687-5000

*Attorneys for Gramercy Warehouse Funding I LLC*