**Response Deadline: October 20, 2010 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time: October 27, 2010 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

**NOTICE OF DEBTORS' OBJECTION TO**
**PROOFS OF CLAIM FILED BY WILLIAM KUNTZ III**
**(CLAIM NOS. 33550, 33551, 33552, 35121 AND 35430)**

PLEASE TAKE NOTICE that a hearing on the annexed objection (the "Objection") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (together the "Debtors," and collectively with their non-debtor affiliates, "Lehman") to the proofs of claim filed by William Kuntz III ("Kuntz"), claims numbered 33550, 33551, 33552, 35121 and 35430, as more fully described in the Objection, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **October 27, 2010 at 10:00 am (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that responses, if any, to the Objection shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the responding party and the basis for the response, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the Chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Shai Y. Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004

Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, so as to be so filed and received no later than **October 20, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Response Deadline").

PLEASE TAKE FURTHER NOTICE that if a response to the Objection is not received by the Response Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that responding parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  September 15, 2010
          New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                          :        **Chapter 11 Case No.**
                                               :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**
                                               :
                           **Debtors.**        :        **(Jointly Administered)**
-------------------------------------------------------------------x

**DEBTORS' OBJECTION TO**
**PROOFS OF CLAIM FILED BY WILLIAM KUNTZ III**
**(CLAIM NOS. 33550, 33551, 33552, 35121 AND 35430)**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

            Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors-in-possession (together the "Debtors," and

collectively with their non-debtor affiliates, "Lehman"), hereby file this objection

(the "Objection") to the proofs of claim filed by William Kuntz III ("Kuntz"), claims numbered

33550, 33551, 33552, 35121and 35430 (collectively, the "Kuntz Claims"), and respectfully

represent:

**Preliminary Statement**

            1.        Kuntz does not have any valid claims against the Debtors.  Nevertheless,

Kuntz signed and filed eleven proofs of claim asserting unsecured and "priority" claims that have

no basis in fact or law.  The Kuntz Claims do not allege any contractual relationship with the

Debtors, but rather rely on a fictitious theory of liability in an attempt to collect from Lehman Commercial Paper Inc. ("LCPI") amounts in respect of a security owned by Kuntz that was issued by Grand Union Capital Corporation ("GU Capital"), an entity wholly unrelated to the Debtors.  Kuntz does not explain the basis for such claim, nor does he provide any documentation or evidence that LCPI, or any Debtor, has any obligations to him.

2.      In support of the Kuntz Claims, Kuntz submitted, among other things, his own incomprehensible summaries of his alleged claims against GU Capital, undecipherable handwritten notes, grocery circulars and newspaper articles, none of which reference Kuntz or any of the Debtors in a manner that would give rise to a claim against the Debtors.  Kuntz has failed to provide a logical explanation of how his purported claims against GU Capital provide a basis for the claims he has asserted against the Debtors.  Kuntz cannot unilaterally create a liability of the Debtors by filing multiple proofs of claim that have no merit.

3.      In an effort to decipher the Kuntz Claims, the Debtors reviewed the Kuntz Claims, including all documents filed therewith, and, in addition, researched and reviewed numerous sources not cited by Kuntz, including statements made by Kuntz at various hearings before the Court in these cases, the Debtors' books and records and matters related to each of the three chapter 11 proceedings of GU Capital and its affiliates.  As demonstrated below, the Debtors have determined that Kuntz has no business or other relationship with any of the Debtors and is simply not a creditor of any of the Debtors.  Accordingly, the Kuntz Claims must be disallowed and expunged in their entirety.

### Background

4.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.

6.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

7.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner"), and by order dated January 20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner.  The Examiner issued a report of his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

8.      By order, dated July 2, 2009 [Docket No. 4271] (the "Bar Date Order"), this Court established September 22, 2009 (the "Bar Date") as the deadline for each person or entity to file proofs of claim based on prepetition claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtors.

9.      Approximately 66,000 claims have been filed against the Debtors, many of which amended or superseded previously filed claims.  Commencing on January 29, 2010, the

Debtors have filed various omnibus claim objections seeking to expunge claims that had been amended or superseded by subsequently filed claims. Such omnibus objections, and the related orders, do not address the merits of the surviving claims.

### The Kuntz Claims

10.    Prior to the Bar Date, Kuntz filed eleven separate proofs of claim (each a "Claim"), which Claims were assigned claim numbers 10509, 10510, 10511, 33550, 33551, 33552, 35120, 35121, 35122, 35123 and 35430 by Epiq Systems, Inc. ("Epiq"), the Debtors' Court-approved claims and noticing agent.

11.    Pursuant to three previous orders of this Court,[1] Kuntz Claims 10509, 10510, 10511, 35120, 35122 and 35123 (collectively, the "Expunged Claims") were determined to be amended and superseded by other claims and were disallowed and expunged, survived by certain other Kuntz Claims. Pursuant to the Omnibus Claims Objection Orders, all information on, and all documentation filed in support of, an Expunged Claim shall be treated as having been filed in support of its respective surviving claim. Following the entry of the Omnibus Claims Objection Orders, five Kuntz Claims remain on the claims register.

12.    Of the five Kuntz Claims, Kuntz has advised the Court that only three are Claims he intends to pursue. At a hearing on March 17, 2010, Kuntz identified Claims 33550, 33551, and 33552 (collectively, the "Surviving Claims") as the Claims that he wished to survive as such Claims amended or otherwise superseded the eight other Claims filed by Kuntz. *See* Tr. of March 17, 2010 Hr'g at 125 (Kuntz stating that Claims 33550, 33551 and 33552 "will be the

---

[1] *See* (i) *Order Granting Debtors' Fourth Omnibus Objection to Claims (Amended and Superseded Claims)*, entered on March 25, 2010 [Docket No. 7828]; (ii) *Order Granting Debtors' Sixth Omnibus Objection to Claims (Amended and Superseded Claims)*, entered on May 25, 2010 [Docket No. 9234]; and (iii) *Order Granting Debtors' Fourteenth Omnibus Objection to Claims (Amended and Superseded Claims)*, entered on July 1, 2010 [Docket No. 9990] (collectively, the "Omnibus Claims Objection Orders").

4

remaining claims only subject to objections on their merits"), relevant pages attached hereto as

Exhibit A.  At a hearing on May 25, 2010, which hearing Kuntz did not participate in, this Court

again recognized the three Surviving Kuntz Claims as the Claims Kuntz intended to survive.  *See*

Tr. of May 25, 2010 Hr'g at 21, relevant pages attached hereto as Exhibit B.

        13.    The following chart summarizes the status of all eleven Claims filed by

Kuntz:

| EXPUNGED CLAIMS | | | |
|---|---|---|---|
| **Claim #** | **Case Number (JMP)** | **Total Claim Dollars** | **Status** |
| 10509 | 09-10558 | $3,699,417.29 | Expunged pursuant to Sixth Omnibus Claims Objection Order |
| 10510 | 09-10558 | $4,147,328.80 | Expunged pursuant to Fourth Omnibus Claims Objection Order |
| 10511 | 09-10558 | $5,391,527.44 | Expunged pursuant to Fourth Omnibus Claims Objection Order |
| 35120 | 09-10558 | $4,573,293.18 | Expunged pursuant to Fourteenth Omnibus Claims Objection Order |
| 35122 | 09-10558 | $4,688,284.73 | Expunged pursuant to Fourteenth Omnibus Claims Objection Order |
| 35123 | 09-10558 | $4,573,293.18 | Expunged pursuant to Fourteenth Omnibus Claims Objection Order |
| SUPERSEDED CLAIMS[2] | | | |
| **Claim #** | **Case Number** | **Total Claim Dollars** | **Status** |
| 35121 | 09-10558 | $3,216,884.60 | Remains on Claims Register.  The Debtors seek to expunge this claim pursuant to the attached order. |
| 35430 | 09-10558 | $3,606,372.87 | Remains on Claims Register.  The Debtors seek to expunge this claim pursuant to the attached order. |
| SURVIVING CLAIMS | | | |
| **Claim #** | **Case Number** | **Total Claim Dollars** | **Status** |
| 33550 | 08-13900 | $4,688,284.73 | Remains on Claims Register.  The Debtors seek to expunge this claim pursuant to the attached order. |
| 33551 | 08-13900 | $3,606,372.87 | Remains on Claims Register.  The Debtors seek to expunge this claim pursuant to the attached order. |
| 33552 | 08-13900 | $3,216,884.60 | Remains on Claims Register.  The Debtors seek to expunge this claim pursuant to the attached order. |

---

[2] Claims 35121 and 35430 are referred to in this Motion as the "Superseded Claims."  Each of the Expunged Claims and Superseded Claims state that they were asserted against LCPI (Case No. 08-13900 (JMP)), but included the case number for the chapter 11 case of Structured Asset Securities Corporation (Case No. 09-10558 (JMP)).

### Relief Requested

14.     The Debtors seek, pursuant to section 502(b) of the Bankruptcy Code and

Bankruptcy Rule 3007(d), to disallow and expunge the five Kuntz Claims in their entirety on the

following grounds:

| Claim Numbers | Grounds for Objection |
|---|---|
| 35121 and 35430 | 1. Claims 35121 and 35430 are the Claims that Kuntz admitted have been superseded.  Kuntz has stated on the record of these cases that the only Claims he wishes to survive are Claims 33550, 33551 and 33552.<br><br>2. Taking into account all supporting information and documentation filed in connection with all of the Kuntz Claims, Claims 35121 and 35430 do not include evidence or support as required by Bankruptcy Rule 3001(c) and the Bar Date Order in a manner sufficient to constitute *prima facie* evidence of the validity of such claims.<br><br>3. Claims 35121 and 35430 are not based on a valid right to payment or a legal obligation of any Debtor, and therefore, as a matter of law, these Claims should be disallowed and expunged in their entirety from the Debtors' official claims register. |
| 33550, 33551 and 33552 | 1. Taking into account all supporting information and documentation filed in connection with all of the Kuntz Claims, Claims 33550, 33551 and 33552 do not include evidence or support as required by Bankruptcy Rule 3001(c) and the Bar Date Order in a manner sufficient to constitute *prima facie* evidence of the validity of such claims.<br><br>2. Claims 33550, 33551 and 33552 are not based on a valid right to payment or a legal obligation of any Debtor, and therefore, as a matter of law, these Claims should be disallowed and expunged in their entirety from the Debtors' official claims register. |

### Jurisdiction

15.     The Court has jurisdiction to consider this Objection and the relief

requested herein pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409.

### Description of the Kuntz Claims Filed Against the Debtors

16.     As demonstrated below, Kuntz attached to the Kuntz Claims an

assortment of unintelligible and irrelevant documentation.  The Kuntz Claims, and the

6

purportedly supporting documentation attached thereto, neither describe nor explain (let alone establish) a valid claim against any Debtor or any ground for a liability whatsoever of any Debtor to Kuntz. The Debtors reviewed and used their best efforts to comprehend the nature and asserted basis of the Kuntz Claims. The following is a summary of all of the Surviving Claims filed by Kuntz, including a discussion of (i) supporting documentation submitted by Kuntz for such claims or with any of the other Claims he filed and (ii) any additional relevant information received by the Debtors.

### A. Claim 33552

17. Claim 33552 asserts a claim against LCPI in the amount of $3,216,884.60. In Claim 33552, Kuntz asserts the basis for the Claim is: "See Attached & Filed Before." Kuntz also asserts, without any evidence or explanation, that 100 percent of Claim 33552 is entitled to priority for "fraud/conversion." Attached to Claim 33552, Kuntz submitted three copies of other proof of claim forms.[3] Kuntz submitted no additional documentation in support of Claim 33552.

18. Kuntz filed Claims 33552 and 35121 as amendments to Claim 10509. Accordingly, in conducting a substantive review of Claim 33552, the Debtors considered all the information and supporting documentation filed by Kuntz in support of Claims 10509 and 35121.

---

[3] Two of the proofs of claim submitted with Claim 33552 appear to be identical copies of a proof of claim Kuntz filed, a copy of which was date-stamped by the Court and returned to Kuntz, which claim was later given claim number 35121 by Epiq; one of the proofs of claim appears to be a handwritten duplicate of Claim 33552 itself that Kuntz submitted with the intention that Epiq would date-stamp the copy and return it to Kuntz. Epiq did not return a date-stamped copy.

i. *Claim 10509*

19.    Kuntz filed Claim 10509 against LCPI in the amount of $3,699,417.29.[4]

Kuntz asserts that the basis for this Claim is:  "Funds Converted from Escrow A/C, See

Attached."  Kuntz also asserts, without any explanation or evidence, that 100 percent of Claim

10509 is entitled to priority for "fraud."

20.    Kuntz attached the following to this claim:

(a)    a document titled "Grand Union Capital Corp. Claims of William Kuntz, III in the
Lehman Brothers Ch. 11 Matter" which consists of a combination of Kuntz's own
statements and a Wikipedia citation intended to give a "brief background" of
Kuntz's claims against GU Capital (the "<u>Brief Background</u>").  The Brief
Background suggests that Kuntz was a holder of certain notes issued by GU
Capital and that during the "1995 Ch. 11" Kuntz opted out of a settlement related
to such notes.  By opting out, Kuntz claims that his notes remained outstanding
and the indentures governing such notes were not canceled.  Kuntz alleges that
during the third bankruptcy of Grand Union Company ("<u>GU Company</u>"), an
entity distinct from GU Capital, "a certain cash escrow fund created in the 1995
case" was applied to a purported balance owing to LCPI.  The Brief Background
does not offer any actual information regarding the bankruptcies of GU Capital or
GU Company or the relationship between those entities.  Kuntz also fails to
provide any evidence establishing that (i) Kuntz was or is a holder of notes issued
by GU Capital; (ii) Kuntz had a claim against GU Capital based on such notes;
(iii) the escrow fund created in the "1995 case" existed; (iv) Kuntz had an interest
in such escrow; (v) LCPI (or any other Debtor) received funds from the escrow;
or, (vi) any claim Kuntz had against such escrow, GU Capital, and/or GU
Company provides liability on behalf of the Debtors;

(b)    an illegible handwritten note (the "<u>Handwritten Note</u>");

(c)    an email from Kuntz to himself (the "<u>Kuntz Email</u>") titled:  "Docket 440 Kuntz's
Motion to Lift Stay to Pursue Grand Union Claims."  The body of the Kuntz
Email provides a website address that appears to be a link to a press release but
such press release does not actually appear at the provided address.  Kuntz does
not explain how the Kuntz Email is relevant or supportive of his claim;

---

[4]  The proof of claim form attached to the Bar Date Order requires that the amount of the claim be "as of date case
filed" – i.e., the date on which the debtor against whom the claim is being asserted filed its chapter 11 case.  Kuntz
crossed this out on the proof of claim form of each Expunged Claim and indicated that the amount of each
Expunged Claim was as of September 15, 2009.  SASCO filed its chapter 11 case on February 9, 2009 and LCPI
filed its chapter 11 case on October 5, 2008.

(d)      an article from *The New York Times*, dated June 25, 1998 (the "<u>NYT Article</u>"). The NYT Article states that GU Company filed a prepackaged chapter 11 plan after holders of more than 72 percent of its senior notes and all preferred stockholders voted in favor of the plan.  The NYT Article also states that GU Company obtained a $300 million line of credit from the Swiss Bank Corporation and LCPI.  Kuntz fails to explain the relevancy or significance of the NYT Article to his claim;

(e)      an article, dated October 3, 2000, from *The Business Review* (the "<u>BR Article</u>"). The BR Article reports that GU Company filed a chapter 11 petition and that it obtained a $60 million debtor-in-possession financing commitment from LCPI, which had not yet been approved by the United States Bankruptcy Court.   Kuntz fails to explain the relevancy or significance of the BR Article to his claim;

(f)      copies of grocery circulars (the "<u>Grocery Circulars</u>") from Grand Union Family Markets.  The Grocery Circulars make no reference to Kuntz or Lehman; and

(g)      a compound interest calculation titled "Grand Union Capital Corp 0% Notes Certificate I 7-15-99 thru 7-15-09."  Kuntz provides no explanation of the $892,000 principal amount, the 15% interest rate, or the ten-year interest rate period set forth in such calculation.

   *ii.*    *Claim 35121*

21.      Kuntz filed Claim 35121 against LCPI in the amount of $3,216,884.60.

Kuntz asserts that the basis for Claim 35121 is the same as for Claim 10509:  "Funds Converted from Escrow A/C, See Attached."  Kuntz asserts that 100 percent of Claim 35121 is entitled to priority, not just for "fraud," but for "fraud/conversion."

22.      Kuntz attached the following to this claim:

(a)      a compound interest calculation titled "Grand Union Capital Corp 0% Notes Certificate I 7-15-99 thru 9-15-08" which amends the compound interest calculation filed in support of Claim 10509 by reducing the interest rate period by one year.

(b)      a disjointed timeline/summary related to GU Capital and GU Company and certain "Senior Notes" (the "<u>Grand Union Timeline</u>").  The only mention of Lehman throughout the Grand Union Timeline is a single sentence from a paragraph which appears to be cut and pasted from the BR Article stating that Grand Union Company obtained a $60 million debtor-in-possession financing commitment from LCPI.  Kuntz does not identify the source(s) of information provided in the Grand Union Timeline.  Kuntz also fails to demonstrate how the

9

Grand Union Timeline establishes a claim against the Debtors or otherwise amends or supplements the assertions made in Claim 10509;

(c)     a print-out of the results of searching for "Kuntz" in the claims register available on Epiq's website on September 10, 2009 (the "Search Results"). Kuntz does not attempt to explain the relevancy of the Search Results or how the Search Results support a claim against the Debtors; and

(d)     the Brief Background, the Handwritten Note, the Kuntz Email, the NYT Article, and the BR Article – all documents Kuntz previously filed in support of Claim 10509 – with no further explanation of how such documents support a claim against the Debtors.

## B. Claim 33551

23.     Claim 33551 asserts a claim against LCPI in the amount of $3,606,372.87. Kuntz asserts that the basis of this Claim is: "See Attached & Filed Before." Kuntz also asserts, without any evidence or explanation, that 100 percent of Claim 33551 is entitled to priority for "fraud/conversion." Attached to Claim 33551, Kuntz submitted three copies of other proof of claim forms.[5] Kuntz submitted no additional documentation in support of Claim 33551.

24.     Kuntz filed Claims 33551 and 35430 as amendments to Claim 10510. Accordingly, in conducting a substantive review of Claim 33551, the Debtors considered all information and documentation filed in connection with Claims 10510 and 35430.

### i.  Claim 10510

25.     The information provided in and the documentation submitted in support of Claim 10510 is nearly identical to Claim 10509, which is described in detail above. Besides the amount of the claim, the only discernable difference between Claim 10510 and Claim 10509 appears in the compound interest calculation. The compound interest calculation provided in Claim 10510 is titled "Grand Union Capital Corp 0% Notes Certificate II 7-15-99 thru 7-15-09"

---

[5] Two of the proofs of claim submitted with Claim 33551 appear to be identical copies of a proof of claim Kuntz filed, a copy of which was date-stamped by the Court and returned to Kuntz, which claim was later given claim number 35430 by Epiq; one of the proofs of claim appears to be a handwritten duplicate of Claim 33551 itself that Kuntz submitted.

and sets forth a compound interest rate calculation involving a principal amount of $1,000,000, a

15% interest rate and a ten-year interest rate period that equals $4,147,328.80,  the amount of

Claim 10510.  The compound interest rate calculation provided in Claim 10509 relates to "Grand

Union Capital Corp 0% Notes Certificate I," which notes Kuntz asserts have a smaller principal

amount.

       *ii.*   *Claim 35430*

     26.     Claim 35430 asserts a claim in the amount of $3,606,372.87 and amends

Claim 10510.  Kuntz does not offer any basis for Claim 35430 on the proof of claim form yet

asserts, without any explanation or evidence, that 100 percent of Claim 35430 is entitled to

priority not just for "fraud," but for "fraud/conversion."

     27.     Kuntz attached the following to this claim:

(a)     a compound interest calculation titled "Grand Union Capital Corp 0% Notes Certificate III 7-15-99 thru 9-15-08" which amends the compound interest calculation filed in support of Claim 10510 by reducing interest rate period to nine years and changing the title to reference "Certificate III" rather than "Certificate II"; and

(b)     the Grand Union Timeline and the Search Results, the Brief Background, the Handwritten Note, the Kuntz Email, the NYT Article, and the BR Article – all documents Kuntz previously filed in support of Claim 10510 – with no further explanation of how such documents support a claim against the Debtors.

## C.  Claim 33550

     28.     Claim 33550 asserts a claim against LCPI in the amount of $4,688,284.73.

Kuntz asserts that the basis for this Claim is:  "See Attached & Filed Before."  Kuntz also states,

without any evidence or explanation, that Claim 33550 is entitled to priority for

"fraud/conversion." Attached to Claim 33550, Kuntz submitted five copies of other proof of claim forms.[6] Kuntz submitted no additional documentation in support of Claim 33550.

29.     Kuntz filed Claims 35120, 35122, 35123 and 33550 each as amendments to Claim 10511. Accordingly, in conducting a substantive review of Claim 33550, the Debtors reviewed and considered all information and documentation filed in connection with Claims 10511, 35120, 35122 and 35123 (which claims were all previously expunged, survived by Claim 33550).

     *i.*    *Claim 10511*

30.     The information provided in and the documentation submitted in support of Claim 10511 is nearly identical to Claims 10509 and 10510, which are both described in detail above. Besides the amount of the claim, the only discernable difference between Claim 10511 and Claims 10509 and 10510 appears again in the compound interest calculation. The compound interest calculation provided in Claim 10511 is titled "Grand Union Capital Corp 0% Notes Certificate III 7-15-99 thru 7-15-09" and sets forth a compound interest rate calculation involving a principal amount of $1,300,000, a 15% interest rate, and a ten-year interest rate period that equals $5,391,527.44, the amount of Claim 10511. The compound interest rate calculations provided in Claims 10509 and 10510 relate to "Certificate I" and "Certificate II," respectively.

---

[6] Two of the proofs of claim submitted with Claim 33550 appear to be identical copies of a proof of claim Kuntz filed, a copy of which was date-stamped by the Court and returned to Kuntz, which claim was later given claim number 35122 by Epiq; two of the proofs of claim appear to be copies of proofs of claim and compound interest rate calculations, copies of which were date-stamped by the Court and returned to Kuntz, which claims were later given claim numbers 35120 and 35123 by Epiq; and, one of the proofs of claim appears to be a handwritten duplicate of Claim 33550 itself that Kuntz submitted.

    *ii.   Claims 35120 and 35123*

    31.    Claim 35120 asserts a claim in the amount of $4,573,293.18 against LCPI and amends Claim 10511. Kuntz does not offer any basis for Claim 35120 yet asserts, without any explanation or evidence, that 100 percent of Claim 35120 is entitled to priority not just for "fraud" but for "fraud/conversion."

    32.    Kuntz attached the following to this claim:

(a)    a compound interest calculation titled "Grand Union Capital Corp 0% Notes Certificate II 7-15-99 thru 9-15-08" which amends the compound interest calculation filed in support of Claim 10511 by reducing interest rate period to nine years and changing the title to reference "Certificate II" rather than "Certificate III;" and

(b)    the Grand Union Timeline and the Search Results, the Background of Grand Union Claim, the Handwritten Note, the Kuntz Email, the NYT Article, and the BR Article – all documents Kuntz previously filed in support of Claim 10511 – with no further explanation of how such documents support a claim against the Debtors.

    33.    Claim 35123, which also amends Claim 10511, is identical to Claim 35120.

    *iii.   Claim 35122*

    34.    Claim 35122 is in the amount of $4,688,284.73 and also amends Claim 10511. Kuntz asserts that the basis for Claim 35122 – "Funds Converted from Escrow A/C, See Attached" – is the same as the basis alleged in Claim 10511. Kuntz asserts, without any explanation or evidence, that 100 percent of Claim 35122 is entitled to priority for "fraud/conversion."

    35.    Kuntz attached the following to this claim:

(a)    Kuntz's own copy of the original proof of claim form Kuntz submitted which, upon receipt, may have been numbered 35121 by Epiq;

(b)    a compound interest calculation titled "Grand Union Capital Corp 0% Notes Certificate I 7-15-99 thru 9-15-08" – the same calculation provided in support of

Superseded Claim 35121.  Kuntz does not provide any explanation of why he submitted a copy of a proof of claim form or the interest rate calculation.

## D.  Summary of the Surviving Claims

36.    The Surviving Claims each purport to assert a claim against LCPI based on Kuntz's alleged claims against GU Capital, yet Kuntz does not explain the relationship between GU Capital and the Debtors that would give rise to a valid claim against LCPI.  In support of each Claim, Kuntz filed essentially the same documentation with no intelligible explanation of the relevancy of such documentation.  Kuntz fails, however, to provide any evidence establishing that he was or is a holder of the "Grand Union Capital Corp 0% Notes," that he had or has claims against GU Capital based on such notes, and, ultimately and fatally, even assuming he holds such notes, that such positions provide a legal basis for claims against LCPI or any other Debtor.

37.    Kuntz makes reference to the "cash escrow fund created in the 1995 case" that was established by GU Company and allegedly paid to LCPI.  Kuntz again fails to provide any evidence of the existence of such cash escrow fund, that Kuntz had an interest in such fund, that the fund was paid to LCPI, or that his interest in such fund provides a legal basis for a claim against LCPI.

### Debtors' Understanding of Basis of Kuntz Claims; The Kuntz Claims Are Not Valid Claims Against the Debtors

38.    On their face, none of the Surviving Claims, inclusive of all information and documents included in the Expunged and Superseded Claims, provides any explanation of liability of any Debtor to Kuntz.  Since Kuntz has appeared in these chapter 11 cases as a *pro se* litigant, the Debtors have used extra effort to decipher the substance of the Surviving Claims from the information provided by Kuntz in all of the Kuntz Claims, statements made by Kuntz at various hearings before the Court and the public records relating to the three Grand Union

chapter 11 cases.[7]  To the best of the Debtors' understanding, the Surviving Claims are based on the following facts.  As demonstrated below, these facts do not give rise to a valid claim against any Debtor.

        *i.*    *Grand Union I*

    39.    On January 25, 1995, GU Company filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court").[8]  At the time it filed for chapter 11 relief, GU Company was a wholly-owned subsidiary of GU Capital, which in turn was a wholly-owned subsidiary of Grand Union Holdings Corporation ("GU Holdings" and, together with GU Capital and GU Company, "Grand Union").[9]  On February 6, 1995, the Informal Zero Committee (defined below) filed an involuntary chapter 11 petition against GU Capital in the Delaware Bankruptcy Court.[10]  On February 16, 1995, GU Holdings filed a voluntary chapter 11 petition in the Delaware Bankruptcy Court.[11]

---

[7] Due to Kuntz's considerable litigation experience, many courts have held his *pro se* status irrelevant.  *See Kuntz v. Pardo*, 160 B.R. 35, 39 (S.D.N.Y. 1993); *In re Silicon Graphics, Inc. et al.*, Case No. 06-10977 (Bankr. S.D.N.Y. June 20, 2007) (Mem. Decision Denying Mot. of William Kuntz III For An Order Reinstating His Proof of Claim, at 6) [Docket No. 877], *aff'd*, Case No. 07-7698 (DAB) (S.D.N.Y. Sept. 29, 2008) [Docket No. 9]; *In re Commercial Financial Services, Inc.*, 238 B.R. 479, 484 n.7 (Bankr. N.D. Okla. 1999).

[8] *See In re The Grand Union Company*, Case No. 95-00084 (PJW), Bankr. D. Del. (voluntary petition at Docket No. 1).  GU Company subsequently filed voluntary chapter 11 cases in the United States Bankruptcy Court for the District of New Jersey (the "New Jersey Bankruptcy Court") on June 24, 1998 and again on October 3, 2000, Case Nos. 98-27912 (NLW) and 00-39613 (NLW), respectively.

[9] *See In re The Grand Union Company*, Case No. 00095-84 (PJW), Bankr. D. Del. (Disclosure Statement for the Second Amended Chapter 11 Plan of Reorganization of the Grand Union Company, and attached as Appendix A thereto, the Second Amended Chapter 11 Plan of the Grand Union Company at Docket No. 761 (as appropriate, the "Disclosure Statement" and the "GU Company Plan"), each attached hereto as Exhibit C).

[10] *See In re Grand Union Capital Corporation,* Case No. 95-00130 (PJW), Bankr. D. Del. (involuntary petition at Docket No. 1).

[11] *See In re Grand Union Holdings Corporation,* Case No. 95-00172 (PJW), Bankr. D. Del. (voluntary petition at Docket No. 1).

40.     Prior to the commencement of its involuntary chapter 11 proceeding, GU Capital issued one or more series of zero coupon notes (the "Zero Notes").  *See* Disclosure Statement at 13.  Kuntz was the holder of a Zero Note due 2004 in the face amount of $892,000.[12]

41.     On February 23, 1995, an informal committee (the "Informal Zero Committee") of holders of the Zero Notes (the "Zero Noteholders") filed a motion in the chapter 11 case of GU Capital to substantively consolidate the chapter 11 cases of GU Capital and GU Company.[13]  On March 3, 1995, the United States Trustee appointed the Official Committee of Unsecured Creditors of GU Capital (the "GU Capital Creditors' Committee"), which committee replaced the Informal Zero Committee.  *See* Disclosure Statement at 22.

42.     GU Company and the GU Capital Creditors' Committee entered into a settlement with respect to the Zero Notes (the "Zero Settlement"), which settlement was approved by the Delaware Bankruptcy Court.[14]  Pursuant to the Zero Settlement, the Zero Noteholders would be issued warrants (the "Warrants") for the purchase of stock in the reorganized GU Company in exchange for the withdrawal with prejudice of the Substantive Consolidation Motion and the cancellation of the Zero Notes.  *See* Exhibit G to the GU Company Plan.  In connection with the Zero Settlement, the GU Capital Creditors' Committee and certain Zero Noteholders that are parties to the Zero Settlement executed releases in favor of Grand

---

[12] *In re The Grand Union Company*, Case No. 98-27912 (NLW), Bankr. D.N.J. (order authorizing GU Company to issue a stipulation as a substitute note to Kuntz and denying Kuntz's contempt motion at Docket No. 299 and attached hereto as Exhibit D (the "Stipulation")).

[13] *In re Grand Union Capital Corporation*, Case No. 95-00130 (PJW), Bankr. D. Del. (motion to substantively consolidate at Docket No. 35 (the "Substantive Consolidation Motion")); *see also* Disclosure Statement at 22.

[14] *In re The Grand Union Company*, Case No. 00095-84 (PJW), Bankr. D. Del. (order approving Zero Settlement at Docket No. 933 and attached hereto as Exhibit E (the "Zero Settlement Order")); *see also* Disclosure Statement at 22; GU Company Plan at A-14-15.

Union, their affiliates and certain stockholders, directors or officers of Grand Union, including

Miller Tabak & Hirsch & Co. ("MTH"), from any and all claims arising out of or in connection

with the Zero Notes (the "Zero Releases," as such term is further defined in the Disclosure

Statement). *See* Disclosure Statement at 22-23; Exhibit F to the GU Company Plan. Kuntz filed

an objection to the Zero Settlement.[15]

43.    The GU Company Plan, among other things, provided no distribution to

holders of equity in GU Company and cancelled all equity interests in GU Company, including

GU Capital's equity interest in GU Company.[16] At the GU Company Plan confirmation hearing,

the attorneys for GU Company represented to the Court that the Zero Notes of the Zero

Noteholders who do not consent to the Zero Settlement would not be cancelled under the GU

Company Plan. *See* Opposition Letter. As a result, Kuntz, who did not consent to the Zero

Settlement, remained a holder of Zero Notes, notwithstanding the fact that GU Capital had been

dissolved pursuant to the GU Company Plan. *Id.* On May 31, 1995, the Delaware Bankruptcy

Court entered the Confirmation Order confirming the GU Company Plan.[17]

44.    During the third chapter 11 case of GU Company, Kuntz alleged that a

cash escrow fund created in GU Company's first bankruptcy case was applied to a balance owed

to LCPI. *See* Kuntz Claim No. 10509. Upon review of the public records of GU Company's

first chapter 11 case, it appears that a cash escrow fund was in fact created in that case.

---

[15] *In re The Grand Union Company*, Case No. 00095-84 (PJW), Bankr. D. Del. (Kuntz's objection to Zero Settlement at Docket No. 874).

[16] GU Company Plan at A-15; *see also In re The Grand Union Company*, Case No. 00-39613 (NLW), Bankr. D.N.J. (GU Company's letter in opposition to a motion for relief from automatic stay filed by Kuntz in its second chapter 11 case stating that GU Capital's equity interest in GU Company was extinguished pursuant to the GU Company Plan at Docket No. 1280 and attached hereto as Exhibit F (the "Opposition Letter")).

[17] *In re The Grand Union Company*, Case No. 00095-84 (PJW), Bankr. D. Del. (order confirming GU Company Plan at Docket No. 1055 (the "Confirmation Order")).

However, such fund was completely unrelated to the Zero Notes, the Zero Noteholders, the Zero

Settlement and Kuntz.  Prior to the commencement of GU Company's first chapter 11 case,

MTH and GU Company were parties to an agreement, dated July 22, 1992 (the "MTH

Agreement"), pursuant to which MTH provided financial advisory services to GU Company.

*See* GU Company Plan at A-6.  In connection with the GU Company Plan, MTH and GU

Company entered into a settlement agreement (the "MTH Settlement Agreement") pursuant to

which, among other things, MTH was paid all amounts due and owing under the MTH

Agreement.  *See* Exhibit B to the GU Company Plan.  The MTH Settlement Agreement also

provided for the indemnification by GU Company of MTH for claims brought against MTH in

connection with the services or matters that are subject of the MTH Agreement (the "MTH

Claims").  *Id.*  Pursuant to the MTH Settlement Agreement, GU Company agreed to deposit

$3,000,000 into an escrow account (the "Escrow"), which funds were to be used only to

indemnify or reimburse MTH with respect to MTH Claims, if any, brought against MTH.[18]  *Id.*

The MTH Settlement Agreement is not related to the Zero Settlement and, in fact, makes no

reference to the Zero Settlement or the Zero Notes.  *Id.*  The amounts held in the Escrow were

not permitted to be used to make distributions on the Zero Notes or to Zero Noteholders.  *Id.*

Thus, Kuntz clearly had no interest in the Escrow.  No escrow agreement related to the Zero

Notes is described in the Disclosure Statement.

   45. On March 27, 1996, the Delaware Bankruptcy Court dismissed the chapter

11 cases of GU Capital and GU Holdings.[19]

---

[18] If no MTH Claims were brought against MTH by January 25, 2001, then the Escrow would be released to the GU
Company.  *See* Opposition Letter.  No claims were brought against MTH by January 25, 2001 and, accordingly, the
Escrow was released into the GU Company's operating account, not paid to LCPI.  *Id.*

[19] *In re Grand Union Capital Corporation,* Case No. 95-00130 (PJW), Bankr. D. Del. (order dismissing chapter 11
cases of GU Capital at Docket No. 201); *In re Grand Union Holdings Corporation,* Case No. 95-00172 (PJW),
Bankr. D. Del. (order dismissing chapter 11 cases of GU Holdings at Docket No. 112).

46.    Although Kuntz opted out of the Zero Settlement, around September 17, 1997, Kuntz's Zero Note was purportedly exchanged for Warrants of GU Company.  *See* Stipulation.

ii.    *Grand Union II and III*

47.    On June 24, 1998, the GU Company commenced its second voluntary chapter 11 case in the New Jersey Bankruptcy Court.   On August 5, 1998, the New Jersey Bankruptcy Court confirmed GU Company's prepackaged chapter 11 plan of reorganization (the "Second GU Company Plan").[20]

48.    On August 20, 1999, the New Jersey Bankruptcy Court entered an order directing the GU Company to

> either cause to be re-issued to Mr. Kuntz a Grand Union Capital Corporation 15.00% Series A Senior Zero Coupon Note due 2004 in the face amount of $892,000 (the "New Note") or provide Mr. Kuntz such reasonable substitute note or the like that would place Mr. Kuntz in the same position had the subject note not been exchanged for warrants of [GU Company].[21]

An inventory of note certificates in GU Capital, however, no longer existed and GU Capital was unable to issue a substitute note because it had dissolved pursuant to the GU Company Plan.  *See* Stipulation.  As an alternative, GU Company and Kuntz entered into the Stipulation pursuant to which Kuntz was "again considered the holder of a Grand Union Capital Corporation 15.00% Series A Senior Zero Coupon Notes due 2004 in the face amount of $892,000, Certificate No. R-000806."  *Id.*  The Stipulation explicitly states that GU Capital is a dissolved corporation.  *Id.*

---

[20] *In re The Grand Union Company*, Case No. 98-27912 (NLW), Bankr. D.N.J. (order approving chapter 11 plan of reorganization at Docket No. 126).

[21] *In re The Grand Union Company*, Case No. 98-27912 (NLW), Bankr. D.N.J. (order denying Kuntz's motion for reconsideration and motion to vacate an order and granting other relief at Docket No. 277 and attached hereto as Exhibit G).

49.     Public records indicate that LCPI did have a relationship with GU Company during its second and third chapter 11 cases; however, such relationship does not result in a liability on the part of the Debtors to Kuntz.  In connection with GU Company's second chapter 11 filing, GU Company entered into a debtor-in-possession revolving credit agreement (the "1998 DIP Facility") with a syndicate of lenders, including LCPI.[22]  The 1998 DIP Facility matured on August 17, 1998, the effective date of the Second GU Company Plan.  On August 17, 1998, in connection with the consummation of the Second GU Company Plan, GU Company entered into a $300 million credit agreement (the "Exit Facility") with a syndicate of lenders, including LCPI.  *See* Second GU Company Plan.

50.     Thereafter, in connection with GU Company's third chapter 11 filing on October 3, 2000, GU Company obtained secured postpetition financing up to an aggregate principal amount not to exceed $60 million (the "2000 DIP Facility") from LCPI and a syndicate of other financial institutions.[23]  LCPI's roles as lender under the 1998 DIP Facility, the Exit Facility and the 2000 DIP Facility were completely unrelated to the Zero Notes, the Zero Settlement, the Escrow and Kuntz.  Manifestly, as a DIP lender, LCPI could not have liability to a prepetition creditor.

51.     Upon review of the chapter 11 cases of GU Capital, GU Holdings, and GU Company and Kuntz's involvement therein, it is clear that any claims that Kuntz or any other creditor had against GU Capital, GU Holdings or GU Company do not give rise to a claim against LCPI or any other Debtor.  The Escrow account that was established during Grand

---

[22] *In re The Grand Union Company*, Case No. 98-27912 (NLW), Bankr. D.N.J. (final order authorizing secured postpetition financing on a superpriority basis at Docket No. 70).

[23] *In re The Grand Union Company*, Case No. 00-39613 (NLW), Bankr. D.N.J. (order approving the 2000 DIP Facility at Docket No. 209).

Union's first chapter 11 case was not created for the benefit of Zero Notesholders and such

noteholders had no interest in the Escrow account or the amounts deposited therein.  The Escrow

was not paid to LCPI, as claimed by Kuntz, but released into the GU Company's operating

account in 2001.[24]  The fact that LCPI was a lender to GU Holdings does not create a liability by

LCPI to Kuntz as holder of a GU Capital issued security.

52.    It appears from the records of the GU Company chapter 11 cases that

Kuntz was, and may still be, considered the holder of a "Grand Union Capital Corporation

15.00% Series A Senior Zero Coupon Notes due 2004 in the face amount of $892,000,

Certificate No. R-000806."  There is simply no connection between the Zero Notes, the Zero

Settlement, the Escrow and the Debtors.  Accordingly, Kuntz has no claim against the Debtors.

**THE KUNTZ CLAIMS SHOULD BE
DENIED AND EXPUNGED IN THEIR ENTIRETY**

**I.  The Superseded Claims Should Be Disallowed and Expunged
Because They Have Been Superseded by the Surviving Claims**

53.    As set forth above, the Debtors have reviewed the Superseded Claims

(Claims 35121 and 35430) and have determined that each Superseded Claim has been

superseded by a corresponding subsequently-filed Surviving Claim.  Kuntz has stated on the

record of these cases that the Surviving Claims are the claims he wished to survive and be

considered.  *See* Tr. of March 17, 2010 Hr'g at 125: 4-6, 15-17 (Kuntz stating that Claims 33550,

33551 and 33552 "will be the remaining claims only subject to objections on their merits").

54.    Claims that are amended and superseded by subsequent claims filed by the

same creditor are routinely disallowed and expunged.  *See, e.g.*, *In re Enron Corp.*, Case No. 01

B 16034 (AJG), 2005 WL 3874285, at *1 n.1 (Bankr. S.D.N.Y. Oct. 5, 2005) (noting that "[i]n

---

[24] Opposition Letter.

as much as the Initial Claim was amended and superseded by the Amended Claim, it was disallowed and expunged . . . ."); *In re Best Payphones, Inc.*, Case No. 01-15472, 2002 WL 31767796, at *4, 11 (Bankr. S.D.N.Y. Dec. 11, 2002) (expunging amended, duplicative claim). The Debtors cannot be required to pay on the same claim more than once. *See, e.g., In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey*, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) ("In bankruptcy, multiple recoveries for an identical injury are generally disallowed.").  Elimination of redundant claims will also enable the Debtors to maintain a claims register that more accurately reflects the proper claims existing against the Debtors.

55.    Accordingly, the Debtors request that the Court disallow and expunge in their entirety the Superseded Claims.  As made clear above, following the expungement of the Superseded Claims, the Debtors would treat all information and documentation filed in support of the Superseded Claims as having been filed with the corresponding Surviving Claim.

56.    In the event that Claims 35121 and 35430 are not expunged on the ground that they were superseded by subsequent filed claims, the Debtors request that the Court disallow and expunge Claims 35121 and 35430 for the reasons set forth below in sections II and III of this Objection.

## II.    The Surviving Claims Should be Disallowed and Expunged Because They Fail to Comply with the Bar Date Order

57.    Bankruptcy Rule 3001(c) provides that "when a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim.  If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim."  Fed. R. Bank. P. 3001(c).  Furthermore, the Bar Date Order required, *inter alia*, that all proofs of claim filed against the Debtors "set forth with specificity the legal and factual basis for the alleged claim" and "include

supporting documentation or an explanation as to why documentation is not available."  Bar

Date Order at 2, 6.  The Court-approved Proof of Claim Form itself clearly instructed as follows:

> Attach redacted copies of any documents that support the claim, such as
> promissory notes, purchase orders, invoices, itemized statements of running
> accounts, contracts, judgments, mortgages and security agreements…. If the
> documents are voluminous, attach a summary….

and

> Attach to this proof of claim form redacted copies documenting the existence of
> the debt and of any lien securing the debt. You may also attach a summary.  You
> must also attach copies of documents that evidence perfection of any security
> interest.  You may also attach a summary.  FRBP 3001(c) and (d).

*Id.* at Ex. B.

58.     The Surviving Claims undoubtedly fail to comply with Bankruptcy Rule

3001(c) and the Bar Date Order.  The incomprehensible "summaries," undecipherable

handwritten note, grocery circulars, and newspaper articles, do not set forth a legal or factual

basis for a claim and are not sufficient supporting documentation describing a claim against the

Debtors.  The Surviving Claims and the "supporting" documentation filed therewith provide no

specificity as to the legal or factual basis of the Claims.

59.     Kuntz offers no explanation as to why documentation that evidences the

Surviving Claims was not available.  Kuntz does not provide any documents or evidence to

establish that (i) Kuntz is a creditor of GU Capital; (ii) an escrow was established by GU Capital

in which Kuntz has an interest; (iii) such escrow was distributed to LCPI; or (iv) LCPI's role as

lender to GU Company created a liability to creditors of GU Capital.  Absent providing evidence

of the type described in the previous sentence, Kuntz has not satisfied his burden of supporting

his Claims.

60.     The Bar Date Order further provided that any creditor that

23

fails to file a proof of claim in accordance with the Bar Date Order. . .shall be
forever barred, estopped and enjoined from asserting such claim against the
Debtors (or filing a Proof of Claim with respect thereto), and the Debtors and
their property shall be forever discharged from any and all indebtedness or
liability with respect to such claim… *Id.* at 9-10.

Accordingly, this Court should disallow and expunge each Surviving Claim in its entirety and

hold that, pursuant to the Bar Date Order, Kuntz is "forever barred, estopped and enjoined from

asserting such claim against the Debtors. . . ." *Id.* at 10.

### III. Alternatively, the Surviving Claims Should be Disallowed and Expunged Because Kuntz Failed to Satisfy His Burden of Proof and Cannot Satisfy His Burden of Proof Because the Debtors Have No Liability Arising from the Transactions Referenced in the Claims

61.    For a prepetition claim to be valid, the claimant must demonstrate it

possesses a right to payment and that the right arose prior to the filing of the bankruptcy petition.

*See Manville Forest Products Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods.

Corp.)*, 209 F.3d 125, 128 (2d Cir. 2000).  A right to payment is nothing more than an

enforceable obligation.  *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558

(1990).  The right to payment can constitute a prepetition claim if, before the filing of the

bankruptcy petition, "the relationship between the debtor and the creditor contained all of the

elements necessary to give right to a legal obligation—a 'right to payment'—under the relevant

non-bankruptcy law."  *LTV Steel Co., Inc. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497

(2d Cir. 1995) (quoting *In re Nat'l Gypsum Co.*, 139 B.R. 397, 405 (N.D.Tex. 1992) (internal

citations omitted)).

62.    Bankruptcy Rule 3001(f) further provides that a proof of claim is *prima

facie* evidence of the validity and amount of such claim.  However, to be entitled to the weight

afforded by Bankruptcy Rule 3001(f), the proof of claim must comply with the Bankruptcy

Rules and set forth the facts necessary to support the claim.  *In re Chain*, 255 B.R. 278, 280

(Bankr. D. Conn. 2000); *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988); *In re FIRSTPLUS Fin., Inc.*, 248 B.R. 60 (Bankr. N.D. Tex. 2000); *In re North Bay Gen. Hosp., Inc.*, 404 B.R. 443 (Bankr. S.D. Tex. 2009). If the claimant does not allege a sufficient legal basis for the claim, the claim is not considered *prima facie* valid, and the burden remains with the claimant to establish the validity of the claim. *Chain*, 255 B.R. at 281; *Marino*, 90 B.R. at 28. *Best Payphones, Inc. v. Verizon N.Y., Inc. (In re Best Payphones, Inc.)*, 2006 U.S. Dist. LEXIS 10297 at *9 (S.D.N.Y. Mar. 14, 2006) ("it is clearly established law that the Rule 3001(f) presumption governs only the burden of production, and that the ultimate burden of proving the claim by a preponderance of the evidence remains with the claimant").

63.    Kuntz has not alleged a sufficient legal basis for the Surviving Claims, thus the Surviving Claims are not *prima facie* valid and the burden remains with Kuntz to establish the validity of his claims. However, even giving consideration to information regarding the Grand Union chapter 11 cases beyond that included by Kuntz in his claims, Kuntz cannot establish the validity of his claims because he has no valid claims against the Debtors. As demonstrated above, the Grand Union entities, the Zero Notes, the Zero Settlement, and the Escrow are completely unrelated to the Debtors and these cases. Kuntz is undoubtedly aware of this yet he signed eleven proofs of claim (under penalty of perjury) asserting general unsecured priority claims that attempt to create claims where none exist. Kuntz simply has no interest in these cases. Accordingly, the Surviving Claims must be disallowed and expunged in their entirety.

64.    Section 502(a) of the Bankruptcy Code provides that a filed proof of claim is "deemed allowed, unless a party in interest . . . objects." If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the

validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524,539 (Bankr. S.D.N.Y. 2000). Having offered no documents, facts, or legal theory that would give rise to liability on the part of the Debtors to Kuntz, Kuntz has not satisfied his burden of production or proof. As a matter of law, Kuntz has not, and cannot, satisfy the burden of proving the validity of the Surviving Claims by a preponderance of the evidence. Therefore, the Surviving Claims should be disallowed and expunged in their entirety.

65.    Kuntz's attempt to recover from the Debtors' estates to the detriment of their legitimate creditors is, quite simply, disingenuous. Kuntz does not have a claim against the Debtors and he undoubtedly knows it. As demonstrated above, Kuntz did have a relationship with GU Capital but such relationship does not provide Kuntz with a claim against the Debtors and no amount of pleadings, observations or proofs of claim Kuntz files in these cases will prove otherwise.

### Reservation of Rights

66.    The Debtors reserve their rights to further object to the Kuntz Claims on any ground whatsoever and supplement the facts asserted in this Objection.

### Notice

67.    No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Objection in accordance with the procedures set forth in the order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) Kuntz; and (vii) all parties who have

requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

68.     Other than the Debtors' fourth, sixth and fourteenth omnibus objections to claims [Docket Nos. 6876, 8007, 9098], no previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

DATED: September 15, 2010
        New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

---------------------------------------------------------------------x

## ORDER GRANTING DEBTORS' OBJECTION TO
## PROOFS OF CLAIM FILED BY WILLIAM KUNTZ III
## (CLAIM NOS. 33550, 33551, 33552, 35121 AND 35430)

Upon consideration of the objection, dated September 15, 2010 (the

"Objection"),[1] pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, of Lehman Brothers

Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and

debtors-in-possession (collectively, the "Debtors"), to the proofs of claim filed by William Kuntz

III ("Kuntz"), claims numbered 33550, 33551, 33552, 35121 and 35430 (each a "Claim," and,

collectively, the "Kuntz Claims"), as more fully described in the Objection; and the Court having

jurisdiction to consider the Objection and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Objection and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Objection having been

provided in accordance with the procedures set forth in the order entered June 17, 2010

governing case management and administrative procedures for these cases [Docket No. 9635] to

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Objection.

(i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the

Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv)

the Internal Revenue Service; (v) the United States Attorney for the Southern District of New

York; (vi) Kuntz; and (vii) all parties who have requested notice in these chapter 11 cases, and it

appearing that no other or further notice need be provided; and the Court having found and

determined that the relief sought in the Objection is in the best interests of the Debtors, their

estates and creditors, and all parties in interest and that the legal and factual bases set forth in the

Objection establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.      Claim 35121 and Claim 35430 have been superseded by Claim 33552 and

Claim 33551, respectively.

B.      Claims 33550, 33551 and 33552 failed to comply with the requirements of

this Court's order, dated July 2, 2009 (Docket No. 4271) (the "Bar Date Order").

C.      Claims 33550, 33551 and 33552 are not *prima facie* evidence of the

validity or amount of any liability owed by Lehman Commercial Paper Inc. or any other Debtor.

D.      Kuntz failed to satisfy his burden of proof to support Claims 33550, 33551

and 33552 by a preponderance of the evidence.

NOW, THERFORE, IT IS ORDERED THAT:

1.      The relief requested in the Objection is granted to the extent provided

herein.

2.      Pursuant to section 502(b) of the Bankruptcy Code, Claims 33550, 33551,

33552, 35121 and 35430 are disallowed and expunged in their entirety.

2

3.      Epiq Systems, Inc., the Debtors' court-appointed claims and noticing agent, is authorized and directed to delete Claims 33550, 33551, 33552, 35121 and 35430 from the Debtors' official claims registry.

4.      In accordance with the terms of the Bar Date Order, the Debtors are forever discharged from any and all indebtedness or liability with respect to Kuntz and Claims 33550, 33551, 33552, 35121 and 35430.

5.      As a result of the entry of this Order, Kuntz has no standing to appear or be heard in the Debtors' chapter 11 cases.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: October ___, 2010
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE