# EXHIBIT F

# RAVIN GREENBERG PC

NATHAN RAVIN
HOWARD S. GREENBERG*
STEPHEN B. RAVIN**
BRUCE J. WISOTSKY***
LARRY LESNIK
MORRIS S. BAUER*
BRIAN L. BAKER*
KEITH M. GETZ****

COUNSELLORS AT LAW
101 EISENHOWER PARKWAY
ROSELAND, NEW JERSEY 07068-1092
(973) 226-1500

FACSIMILE:
(973) 226-6888

COUNSEL
ALLAN M. HARRIS*

* MEMBER OF N.J. & N.Y. BAR
** MEMBER OF N.J., N.Y. & FLA. BAR
*** MEMBER OF N.J. & PA. BAR
**** MEMBER OF N.Y. & FLA. BAR ONLY

E-MAIL: rg@ravingreenberg.com
WEBSITE: www.ravingreenberg.com

May 11, 2001

**VIA HAND DELIVERY**

Honorable Novalyn L. Winfield
United States Bankruptcy Court
King Federal Building
50 Walnut Street, 3rd Floor
Newark, New Jersey 07102

Re:  The Grand Union Company
     Bankruptcy Case Nos. 00-39613 (NW) through 00-39619 (NW)

     Opposition To William Kuntz, III Motion For Relief From
     The Automatic Stay

     Hearing Date: May 21, 2001

Dear Judge Winfield:

As Your Honor is aware, this firm represents The Grand Union Company ("Grand Union") and its affiliates (collectively, the "Debtors") in the above captioned matters. On or about March 28, 2001, William Kuntz, III ("Kuntz") filed a motion for relief from the automatic stay pursuant to §§362(d)(1), 362(d)(2), and §725 of the Bankruptcy Code in order to permit him to "take such steps that as the Court may deem necessary and proper in order to secure a certain escrow account which was established under the first Grand Union Ch 11 case in Delaware" (the "Kuntz Motion"). Please accept this letter memorandum in lieu of a more formal memorandum of law in opposition to the Kuntz Motion.

RAVIN GREENBERG PC

Honorable Novalyn L. Winfield
May 11, 2001
Page 2

### SUMMARY OF FACTS[1]

On January 25, 1995, Grand Union filed its first voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Case"). Prior to the commencement of the Delaware Case, Grand Union was a wholly owned subsidiary of Grand Union Capital Corporation ("Capital"), which in turn was a wholly owned subsidiary of Grand Union Holdings Corporation ("Holdings"). Both Capital and Holdings filed voluntary petitions at the same time as the Delaware Case; however, their respective petitions were subsequently dismissed.

Prior to the commencement of the Delaware Case, in or about July, 1992, Capital sold to institutional investors $343,000,000 principal amount of its 15% Zero Coupon Notes due 2004, Series A and B (together, the "Senior Zero Notes") and $745,000,000 principal amount of its 16½% Senior Subordinated Zero Coupon Notes due 2007, Series A and B (together, the "Junior Zero Notes") and together with the Senior Zero Notes, the "Zero Notes").[2] Upon information and belief, from the period of March, 1995 through June, 1995, Kuntz acquired some of the Senior Zero Notes. Upon information and belief, as of June 15, 1995, the date the Grand Union I Plan, as discussed below, became effective, Kuntz held Senior Zero Notes in the total face amount of $892,000 (the "Kuntz Notes").

---

[1] With respect to the facts set forth herein, Grand Union respectfully requests that the Court take judicial notice of the docket entries of the prior bankruptcy cases filed by Grand Union, namely Case Nos. 95-84 (PJW) and 98-27912 (NLW). A substantial portion of the facts relied upon in this opposition are found in that certain "Affidavit of Glenn J. Smith in support of application for an order pursuant to Section 502 of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure Expunging Claims and Reserving Jurisdiction Over Certain Other Unresolved Claims," filed with the Court on January 19, 1999 in Case No. 98-27912. Pursuant to Fed. R. Evid. 201 which is applicable hereto by Fed. R. Bankr. P. 907, the Court may take judicial notice of the docket entries for prior cases. See Maritime Electric Company, Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1992), In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 8 (1st Cir. 1999), cert. denied ___ US. ___, 120 S. Ct. 266 (2000).

[2] The holders of the Zero Notes are hereinafter referred to as the "Noteholders."

RAVIN GREENBERG PC

Honorable Novalyn L. Winfield
May 11, 2001
Page 3

In the Delaware Case, by Order of the Court dated May 31, 1995, Grand Union confirmed its Second Amended Plan of Reorganization (the "Grand Union I Plan"). Pursuant to the Grand Union I Plan, the equity interest held by Capital in Grand Union was extinguished. The Grand Union I Plan provided for the issuance to the Noteholders of warrants for the purchase of reorganized Grand Union's common stock. Also, in the Delaware Case, by Motion dated April 27, 1995, Grand Union sought approval of a certain settlement agreement concerning claims by the Noteholders pursuant to Bankruptcy Rule 9019 (the "Settlement"). This Settlement, generally contemplated, among other things: (a) the issuance of warrants under the Grand Union I Plan to the Noteholders; (b) support of the Grand Union I Plan by the Capital Committee and its members; (c) the exchange or releases among Grand Union, Capital, Holdings, the Capital Committee and its members with respect to all matters relating to or arising from the issuance, ownership, purchase and/or sale of the Zero Note; and (d) the dismissal of any claims that Capital held against Grand Union. Among the released parties was Miller Tabak and Hirsch & Co. ("MTH"). By Order of the Court dated May 18, 1995, the Settlement was approved.

In addition to the Settlement described above, pursuant to the Grand Union I Plan, Grand Union agreed to indemnify MTH and its present and former partners, officers, employees, advisors, attorneys, consultants, agents and representatives (the "Indemnified Persons"). As part of this indemnification agreement, Grand Union was required to escrow $3,000,000 (the "Escrow Fund") on the terms set forth in and with the escrow agent described in that certain escrow agreement (the "Escrow Agreement"). Pursuant to the Escrow Agreement, if no claims were filed against MTH or any of the Indemnified Persons by January 25, 2001, then the escrowee was authorized and required to release the Escrow Fund to Grand Union. On January 25, 2001, the Escrow Fund was in fact released to Grand Union. The Escrow Fund was deposited in Grand Union's operating account, and thereafter utilized in Grand Union's continued operations.

During the course of the Delaware Case, and more particularly at the confirmation hearing, Kuntz objected to the Settlement and upon information and belief was desirous of continuing to hold the Kuntz Notes. At the confirmation hearing in respect of the Grand Union I Plan, attorneys for Grand Union represented to Judge Walsh that the Grand Union I Plan was intended to only cancel the Zero Notes of Noteholders that consented to the Settlement. As a result thereof, to this day, Kuntz continues to hold Senior Zero Notes in Capital, although Capital has long since been dissolved.

In the Kuntz Motion, Kuntz now seeks stay relief for purposes of taking whatever steps are necessary and proper in order to secure the escrow fund. For the reasons set forth below, the Court should deny the Kuntz Motion in its entirety.

RAVIN GREENBERG PC

Honorable Novalyn L. Winfield
May 11, 2001
Page 4

### LEGAL ARGUMENT

**Kuntz has failed to satisfy his burden that the requisite "cause" exists that would entitle him to stay relief. Thus, the Kuntz Motion should be denied.**

Section 362 of the Bankruptcy Code provides, in part,:

> (d) on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of the this section, such as terminating, annulling, modifying, or conditioning such stay -
>
> (1) for cause, including the lack of adequate protection of interest in property of such party in interest; and
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if -
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization . . .

11 U.S.C. §362.[3]

---

[3] In the Kuntz Motion, Kuntz also relies on §725 of the Bankruptcy Code which provides as follows:

> After the commencement of a case *under this chapter*, but before final distribution of property of the estate under §726 of this title, the trustee, after notice and a hearing, shall dispose of any property in which an entity other than the estate has interest, such as a lien, and that has not been disposed of under another section of this title.

11 U.S.C. §725 (emphasis added). Section 725 is not applicable for this case was
(continued...)

RAVIN GREENBERG PC

Honorable Novalyn L. Winfield
May 11, 2001
Page 5

The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an *initial* showing of "cause" by the movant, while §362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property." In re Telegroup, Inc., 237 B.R. 87 (Bankr. N.J. 1999), citing In re Hollys, Inc., 140 B.R. 643 (Bankr. W.D. Mich. 1992); In re Drexel Burnham Lambert Group, Inc., 1999 WL 302177, (Bankr. S.D.N.Y. 1999). However, if the movant fails to make an initial showing of cause, courts have denied relief without requiring any showing from the debtor that it is entitled to continued protection. In re Holly's, Inc., 140 B.R. at 683.

Relief from the stay may be "granted when necessary to permit litigation to be *concluded* in another forum, particularly if the non-bankruptcy suit involves multiple parties or is ready for trial." Collier on Bankruptcy, section 362.07[3][a] (15th Ed.), citing In re Castlerock Properties, 781 F.2d 159 (9th Cir. 1998). In addition, other courts have found that actions which are only remotely related to the bankruptcy case, or which involve the rights of third parties often will be permitted to proceed in another forum. Id. citing, Sovran Bank, N.A. v. Anderson, 743 F.2d 223 (4th Cir. 1984).

In determining whether or not to allow non-bankruptcy litigation in another forum, some courts have developed a balancing test to determine whether "cause" exists. In determining whether or not "cause" exists, the bankruptcy courts must balance the inherent hardships on all parties and base its decision on the degree of hardship and the overall goals of the Bankruptcy Code. Because the stay is an automatic injunction, some consideration of balancing of harms is appropriate. Telegroup, 237 B.R. at 91 citing In re Holly's, Inc., 140 B.R. at 686.

In In re Telegroup, Inc., 237 B.R. 87 (Bankr. N.J. 1999), the court held that "cause" did not exist to grant a patent holder's motion for relief from the stay. In Telegroup, the patent holder filed a motion for relief from the stay to commence an action against the debtor for an alleged post-petition infringement of a patent. The claimant acknowledged that as a result of the debtor's sale of its assets, that the debtor would no longer be infringing upon its patent. The claimant further filed an administrative proof of claim setting forth its purported damages as a result of the alleged post-petition infringement. Further, the claimant, as of the motion date, had not commenced any action. As a result thereof,

---

³(...continued)
commenced under chapter 11 and not chapter 7. Thus, Mr. Kuntz's reliance on this section is clearly misplaced.

RAVIN GREENBERG PC

Honorable Novalyn L. Winfield
May 11, 2001
Page 6

the court denied stay relief premised upon the fact that the action had not been commenced, and further premised upon the fact that the post-petition claim filed by the claimant would be addressed as part of the claims process. More particularly, the court held that the proper remedy in addressing the purported post-petition patent infringement laid in the form of a challenge to the proof of administrative claim, should one be filed by the debtor, and not as requested by the claimant, in the initiation of an independent lawsuit against the debtor in another forum. Id. at 93.

With respect to the case at bar, cause does not exist to grant the relief requested by Kuntz. First, the "res", i.e. the Escrow Fund, in which Kuntz seeks to attach no longer exists and was remitted to Grand Union in accordance with the terms of the Settlement, the Indemnification Agreement, and the Escrow Agreement. The only cause of action that Kuntz may possess relating to recovery on the Kuntz Note is a potential claim against the indentured trustee, Capital and/or its formal officers, and the Escrow Agent. Kuntz does not possess a cognizable cause of action against Grand Union for Grand Union was not liable on the Kuntz Note nor was Grand Union a party to any agreement with Kuntz relating to the Escrow Fund. Kuntz does not require stay relief in order to commence an action against these parties.

Second, on or about March 15, 2000, Kuntz filed at least two proofs of claim in the amount of $1,035,800.00 (the "Kuntz Claims"). These claims relate to the Kuntz Notes. In these claims, Kuntz asserts that the claims are secured by the Escrow Fund. As cited in Telegroup, pursuant to 11 U.S.C. §502, the filing of a proof of claim is presumptively valid until challenged by the debtor.[4] Id. at 92, citing In re King Street Investments, Inc., 219 B.R. 848 (9th Cir. Bap 1998); In re Klassen, Jr., 227 B.R. 187 (Bankr. D. Kan. 1998). Further, by the filing of the proof of claim, Mr. Kuntz has submitted to the jurisdiction of this Court for purposes of adjudicating his purported claims. See Telegroup at 89, n.2., citing Travelers International AG v. Robinson, 982 F.2d 96 (3d Cir. 1992) cert. denied, 507 U.S. 1051, 113 S. Ct. 1946, 123 L.Ed. 2d 651 (1993). As a result thereof, to the extent that Kuntz is seeking to recover property of the estate, the appropriate forum is this court and no other court. Conversely, if Kuntz is seeking to commence an action against other parties for collecting upon the Kuntz Notes, Grand Union is not a necessary party to such cause of action for Grand Union is not a party to the Kuntz Notes nor liable thereunder.

---

[4] Grand Union disputes the validity of the Kuntz Claims. First, Grand Union is not obligated on the Kuntz Notes under any legal theory. Second, undeniably Kuntz never perfected or obtained any interest in the Escrow Fund. Further, Kuntz was neither a direct or indirect beneficiary of the Escrow Fund nor a party to the Escrow Agreement.

RAVIN GREENBERG PC

Honorable Novalyn L. Winfield
May 11, 2001
Page 7

Third, to the extent that Kuntz asserts any claim to property of the estate, Kuntz cannot commence such action in any forum other than this Court. Disputes over property of the estate are undeniably core proceedings for which 28 U.S.C. §157 clearly accords jurisdiction. See 28 U.S.C. §§157(A), (B), (E), and (K). Thus stay relief is not appropriate in a situation where Kuntz may be seeking to recover property of the estate.

For the foregoing reasons, stay relief based on the facts set forth in the Kuntz Motion is inappropriate. Thus, this Court should deny the Kuntz Motion.

Very truly yours,

MORRIS S. BAUER

MSB:se
cc  Mitchell Hausmann, Esq.
    Kenneth Ziman, Esq.
    Bruce Buechler, Esq.
    Andrew H. Sherman, Esq.
    Glenn R. Rice, Esq.
    William Kuntz, III
    Jeffrey L. Tanenbaum, Esq.
    Glenn J. Smith, Esq.

\\Server\public\GrandUnion\Letters\WinfieldOppKuntzMtRelfietAutoStay.LTR.wpd