WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                                      :    Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :    08-13555 (JMP)
:
Debtors.                            :    (Jointly Administered)
:
------------------------------------------------------------------x

### DECLARATION OF SHAI Y. WAISMAN IN SUPPORT OF DEBTORS' MOTION, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1), TO STAY AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF

Pursuant to 28 U.S.C. § 1746, I, Shai Y. Waisman, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge. If called to testify, I could testify to the truth of the matters set forth herein.

2. I am one of the Partners at the law firm of Weil, Gotshal & Manges LLP who has been responsible for the Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), to Stay Avoidance Actions and Grant Certain Related Relief (the "Motion").[1]

3. I make this Declaration to explain (a) the Debtors' efforts to obtain tolling agreements from hundreds of parties to avoid the need to commence litigation under sections

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

544, 545, 547, 548, 549, 550 and/or 553 of the Bankruptcy Code, and (b) the need for at least a 60-day extension of the 120-day period proscribed by Rule 4(m) of the Federal Rules of Civil Procedure to complete service of process.

<u>The Debtors' Attempts to Obtain Tolling Agreements</u>

4. The Debtors, together with the Creditors' Committee have been diligently investigating thousands of transactions to determine whether any payments or transfers of the Debtors' interests in property constitute preferential, fraudulent and/or unauthorized transfers that may be avoided under sections 544, 545, 547, 548, 549, 550 and/or 553 of the Bankruptcy Code.  In almost *every* instance where it was practical to do so, after the Debtors identified a potentially avoidable transfer and determined in the exercise of their fiduciary duties that an avoidance claim may exist, the Debtors requested a tolling agreement from the recipients of such potentially avoidable transfers to preserve their rights and to avoid the need for commencement of litigation.  In certain cases, the Debtors also proposed a settlement offer to parties who received an avoidable transfer.

5. The form of tolling agreements that were requested provided that:

- all rights, defenses and challenges that parties may assert to the Debtors' avoidance action were fully preserved (other than with respect to the statute of limitations period that was consensually being tolled);

- either party could terminate the tolling agreement at will on reasonable notice to the other party;

- by tolling the statute of limitations period, neither party was admitting to any fact, liability, wrongdoing or responsibility; and

- any statute of limitations period that had already expired was not being reinstated or extended.

In addition, although the Debtors intend to engage in a voluntary exchange of information with parties that did execute tolling agreements, the form of tolling agreement proposed by the

Debtors did not require the non-Debtor party to involuntarily provide any additional information to the Debtors.  Finally, where a counterparty to a tolling agreement had a similar statutory deadline, such as, for example, the Debtors' foreign affiliates in foreign insolvency proceedings, the Debtors agreed to toll the applicable statutory periods of limitation.

6. Tolling agreements were requested from a variety of parties that had prepetition relationships with the Debtors, including the Debtors' foreign and domestic affiliates, vendors and other service providers, former and current officers and directors, derivative and other counterparties, trustees and financial or banking institutions.  Tolling agreements were executed with respect to more than 4,100 parties, including the vast majority of the Debtors' domestic affiliates and foreign affiliates, including those foreign affiliates that are the subject of foreign insolvency proceedings.

7. A number of parties either did not respond to the Debtors' request or refused to enter into tolling agreements with the Debtors.  Many of the parties that refused to enter into tolling agreements with the Debtors asserted defenses to the Debtors' potential avoidance claims, such as ordinary course or safe harbor defenses.  Although the Debtors communicated their position to these parties and informed them that if no tolling agreement were executed the Debtors would be forced to commence actions to preserve their rights, many of these parties insisted that their interpretations of law and facts are indisputably incorrect.  As a result, the Debtors had no choice but to commence actions against these parties.

The Need for an Extension of the Service Deadline

8. Some of the Avoidance Actions that have been or will be commenced by the Debtors involve transfers to parties whose identities are not readily available to the Debtors. For example, in transactions similar to those that are the subject of the *LBSF v. BNY Corp. Trus. Serv.* adversary proceeding (Adv. Pro. No. 09-01242) (JMP)), some trustees made distributions of their assets to other persons or entities. The Debtors are seeking to avoid those transfers. As described in greater detail in the Avoidance Action class action complaint filed by Lehman Brothers Special Financing Inc. (Adv. Case No. 10-03547 (JMP)), there could be hundreds of entities located all over the world that received such transfers of assets, and, for service purposes, their identities need to be determined by requesting information from third-parties such as trustees, issuers, Depository Trust Company or broker-dealers. Many laws and guidelines require the identity of noteholders to be kept confidential without subpoenas or court order, so it may take additional time to continue to try to ascertain this information. Although the Debtors named as class members those noteholders that they believe in good faith and upon information and belief held the subject notes in 2008 at the time of the challenged distributions, many of the noteholders may have sold their interests without notice to the Debtors. Accordingly, to effect proper service, the Debtors need additional time.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 15th day of September 2010.

/s/ Shai Y. Waisman
Shai Y. Waisman