**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Paul M. Basta
Mark E. McKane (*pro hac vice* pending)
paul.basta@kirkland.com
mark.mckane@kirkland.com

Attorneys for LBREP Lakeside SC Master I, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF CHRISTOPHER W. KEEGAN IN SUPPORT OF
LBREP LAKESIDE SC MASTER I, LLC'S OPPOSITION TO THE
MOTION OF LEHMAN COMMERCIAL PAPER INC. PURSUANT TO
SECTION 105 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9019 FOR APPROVAL OF THAT CERTAIN
AMENDED AND RESTATED COMPROMISE BY AND AMONG LEHMAN
COMMERCIAL PAPER, INC., ALFRED H. SIEGEL, AS CHAPTER 11 TRUSTEE
FOR THE SUNCAL DEBTORS, AND THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS IN THE SUNCAL BANKRUPTCY CASES**

I, Christopher W. Keegan, declare as follows:

1.     I am a partner at Kirkland & Ellis LLP, attorneys for LBREP Lakeside SC Master
I, LLC ("LBREP Lakeside").  I am licensed in the State of California and the State of Illinois.  I
have personal knowledge of the facts set forth herein, except as to those stated on information
and belief, and, as to those, I am informed and believe them to be true.  If called as a witness, I
could and would competently testify to the matters stated herein.

**LBREP Lakeside Unsuccessfully Attempted To Engage In Settlement
Negotiations With LCPI And The SunCal Trustee**

2.       This is the second time that Lehman Commercial Paper Inc. ("LCPI") and the

Trustee for the LBREP/L-SunCal Master I, LLC debtors (the "SunCal Trustee") have attempted

to resolve their disputes through a settlement agreement.  The SunCal Trustee first filed his

Motion To Approve Compromise Between Trustee, The Official Committee of Unsecured

Creditors, And Lehman Commercial Paper Inc., As Administrative Agent For First Lien Lenders

(the "SunCal Motion") in the Bankruptcy Court for the Central District of California on October

9, 2010.  LBREP Lakeside and several other parties objected to the SunCal Motion and the

SunCal Trustee eventually withdrew the proposed settlement on January 15, 2010.

3.       After this Court encouraged LCPI and the SunCal Trustee to engage in further

settlement discussions on July 14, 2010 and deferred its ruling on the SunCal Trustee's Motion

For An Order Granting Relief From The Automatic Stay (Docket No. 9642), counsel for LBREP

Lakeside attempted to engage both LCPI and the SunCal Trustee in potential settlement

discussions.

4.       On July 18, 2010, I spoke with Jessica Fink at Cadwalader, Wickersham & Taft

LLP ("Cadwalader"), counsel for LCPI, to discuss this Court's July 14, 2010 hearing.  In that

call, I also expressed LBREP Lakeside's interest in participating in settlement discussions

regarding the fraudulent transfer allegations in the LBREP/L-SunCal Master I, LLC bankruptcy

proceedings.  I am informed that my partner, Mark McKane, spoke with another of LCPI's

counsel, Andrew Troop at Cadwalader, regarding LBREP Lakeside's interest in participating in

settlement discussions on or around July 25, 2010.

5.       On August 5, 2010, I spoke with Evan Smiley, counsel for the SunCal Trustee

regarding the status of the SunCal Trustee's and LCPI's settlement discussions and expressed

LBREP Lakeside's interest in a global resolution and participating in any ongoing settlement discussions. I requested that the SunCal Trustee provide a settlement demand and the SunCal Trustee's counsel indicated that he would contact LBREP Lakeside regarding a settlement proposal. I again contacted the SunCal Trustee's counsel on or about August 20, 2010. At that time I reiterated LBREP Lakeside's interest in participating in settlement discussions and requested a settlement proposal from the SunCal Trustee.

6.    LBREP Lakeside did not receive a settlement demand in response to its counsel's request. Further, I am not aware of any efforts by counsel to the SunCal Trustee or LCPI to engage LBREP Lakeside in ongoing discussions regarding the settlement. Further, LBREP Lakeside was not aware that the parties had reached another proposed settlement until after LCPI filed its papers with this Court.

### Materials Attached To LBREP Lakeside's Opposition

7.    Attached hereto as Exhibit 1 is a true and correct copy of the "LBREP Lakeside SC Master I, LCC's Objection To The Trustee's Motion To Approve Compromise Between Trustee, The Official Committee of Unsecured Creditors, And Lehman Commercial Paper Inc., As Administrative Agent For First Lien Lenders" filed in the LBREP/L-SunCal Master I, LLC bankruptcy cases, Case No. 08-bk-15588-ES (Jointly Administered), on October 20, 2009, Docket No. 320.

8.    Attached hereto as Exhibit 2 is a true and correct copy of the "Response of Lehman Commercial Paper Inc., As First Lien Administrative Agent For The First Lien Lenders, To LBREP Lakeside SC Master I, LLC's First Set of Interrogatories," dated December 9, 2010.

9.    Attached hereto as Exhibit 3 is a true and correct copy of excerpts of the "$235,000,000 First Lien Credit Agreement among LBREP/L-SunCal Master I LLC, as Borrower, the several Lenders from time to time parties hereto, Lehman Brothers Inc., as

3

Arranger, Lehman Commercial Paper, Inc., as Syndication Agent, and Lehman Commercial

Paper Inc., as Administrative Agent, dated as of January 19, 2006."

10.   Attached hereto as Exhibit 4 is a true and correct copy of excerpts of the

"$85,000,000 Second Lien Credit Agreement among LBREP/L-SunCal Master I LLC, as

borrower, the several lenders from time to time parties hereto, Lehman Brothers Inc., as

Arranger, Lehman Commercial Paper, Inc., as Syndication Agent, and Lehman Commercial

Paper Inc., as Administrative Agent, dated as of January 19, 2006."

11.   Attached hereto as Exhibit 5 is a true and correct copy of excerpts of the

"Confidential Information Memorandum for the $320,000 Senior Secured Credit Facility for

LBREP/L SunCal Master I, LLC" dated November 2005.

12.   Attached hereto as Exhibit 6 is a true and correct copy of the "Response of

Lehman Commercial Paper, Inc., As First Lien Administrative Agent For The First Lien

Lenders, To LBREP Lakeside SC Master I, LLC's First Set Of Document Requests," dated

December 4, 2009.

I declare under penalty of perjury under the laws of the State of New York that the

foregoing is true and correct.

Executed this 16th day of September, 2010 in Houston, Texas.


_____
        */s/ Christopher W. Keegan*
        Christopher W. Keegan

# Exhibit 1

1   Mark E. McKane, State Bar No. 230552
    mmckane@kirkland.com
2   Christopher W. Keegan, State Bar No. 232045
    ckeegan@kirkland.com
3   KIRKLAND & ELLIS LLP
    555 California Street, Suite 2700
4   San Francisco, California  94104
    Telephone:    415 439-1400
5   Facsimile:    415 439-1500

6   Attorneys for Defendant
    LBREP Lakeside SC Master I, LLC

7

8                   UNITED STATES BANKRUPTCY COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                       SANTA ANA DIVISION

11

12  In re                                    Case No. 8:08-bk-15588-ES

13  LBREP/L-SUNCAL MASTER I, LLC, et al.,    Chapter 11 Case

14           Debtor.                          (Jointly administered with Case Nos.
                                              8:08-bk-15637-ES; 8:08-bk-15639-ES;
15  ___  Affects LBREP/L-SunCal Master I,     and 8:08-bk-15640-ES)
         LLC Only
16  ___  Affects LBREP/L-SunCal McAllister
         Ranch LLC Only
17  ___  Affects LBREP/L-SunCal McAllister    LBREP LAKESIDE SC MASTER I,
         Ranch LLC Only                       LLC'S OBJECTION TO THE
18  ___  Affects LBREP/L-SunCal McSweeney     TRUSTEE'S MOTION TO APPROVE
         Farms Only                           COMPROMISE BETWEEN
19  ___  Affects LBREP/L-SunCal Summerwind    TRUSTEE, THE OFFICIAL
         Ranch Only                           COMMITTEE OF UNSECURED
20   X   Affects All Debtors                  CREDITORS, AND LEHMAN
                                              COMMERCIAL PAPER INC., AS
21                                            ADMINISTRATIVE AGENT FOR
                                              FIRST LIEN LENDERS
22
                                              Date:   November 3, 2009
23                                            Time:   10:30 a.m.
                                              Place:  Courtroom 5A
24                                                    411 West Fourth Street
                                                      Santa Ana, CA  92701
25                                            Judge:  Hon. Erithe A. Smith

26

27

28
                                                      CASE NO. 8:08-BK-15588-ES
─────────────────────────────────────────────────────────────────

**INTRODUCTION**

The Chapter 11 Trustee (the "Trustee") seeks approval of a proposed settlement that, among other things, gives Lehman Commercial Paper Inc. ("LCPI") a direct stake in the outcome of the Trustee's fraudulent transfer claim against other Lehman entities. By releasing all claims against LCPI and providing LCPI a recovery, the Trustee has created perverse incentives for LCPI not to defend its actions as lead arranger in sizing, arranging and syndicating the refinancing transaction that expressly disclosed and highlighted that its proceeds will be used for the $144 million dividend at issue in the fraudulent transfer claims. If there is any recovery for those claims, LCPI may profit from its own actions—actions which, but for the LCPI's release per the terms of the settlement, would create liability for itself. As the fraudulent transfer claim is prosecuted, LCPI will be forced to choose whether to support and defend the refinancing transactions it oversaw in 2006 or to potentially recover some portion of a fraudulent transfer recovery. As a liquidating organization with no future business operations and as the recipient of a full release, LCPI's incentives are clear and will irretrievably taint any fraudulent transfer litigation going forward. The Court should not approve this settlement.

Additionally, it is undeniable that this proposed settlement will require the review and approval of Judge Peck in the Lehman Bankruptcy proceedings in the Bankruptcy Court for the Southern District of New York. Given (i) the potential for new claims against the Lehman estate arising out of the proposed settlement due to  the Lehman estate's relationship with the general partner of the Lehman Brothers Real Estate private equity fund that includes LBREP Lakeside and (ii) the settlement's proposed use of estate property, Judge Peck should be afforded the opportunity to assess the settlement. The Term Sheet attached to the Chapter 11 Trustee's Motion to Approve Compromise Between Trustee, the Official Committee of Unsecured Creditors, and Lehman Commercial Paper, Inc., as Administrative Agent for First Lien Lenders (the "Compromise Motion"), expressly calls for Judge Peck's approval, stating that "LCPI shall file the Compromise Motion in the LCPI bankruptcy case . . . to obtain approval of this Term Sheet." Compromise Motion, Ex. 1, Term Sheet, at 1. Past practice in the Lehman/SunCal bankruptcy proceedings likewise indicates that Judge Peck's approval is required. In the Master

**LBREP LAKESIDE SC MASTER I, LLC'S OBJECTION TO THE TRUSTEE'S MOTION TO APPROVE
COMPROMISE BETWEEN TRUSTEE, OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND LCPI**

1  II cases, *In re Palmdale Hills*, Case No. 8:08-bk-17206, LCPI filed a motion for approval of its

2  proposed plan of reorganization in the New York Bankruptcy Court in tandem with filing the

3  proposed Plan in the Master II proceedings.  As with the proposed plan of Reorganization in the

4  Master II proceedings, Judge Peck's approval is similarly required in the case of the LCPI

5  Compromise Motion.

6      Given the complexities, perverse incentives and potential conflicts of interest, both this

7  Court and the New York Bankruptcy Court should have a full opportunity to evaluate the

8  proposed settlement.  There is no need to approve the settlement agreement on limited notice or

9  an incomplete record.  Any argument from the settling parties that this settlement is urgent or it is

10  necessary to grant the Compromise Motion immediately is belied both by the Trustee's actions to

11  date and the explicit language in the Term Sheet;  first, the Trustee filed the Compromise Motion

12  a week later than the Term Sheet required with less time before the hearing than anticipated by

13  the participating parties.  Second, the Term Sheet itself calls for approval by the New York

14  Bankruptcy Court and, as of this filing, LCPI has not filed any papers seeking said approval.

15  Simply put, there is no viable reason why this Court and Judge Peck should consider the

16  Compromise Motion without a full record, and given the perverse incentives the proposed

17  settlement creates for LCPI, serious reasons why the Court should reject it.

18                                 **BACKGROUND**

19      The proposed settlement (the "Settlement") between the Trustee, the Official Committee

20  of Unsecured Creditors, and Lehman Commercial Paper, Inc., will have a significant and wide-

21  reaching impact on the outstanding fraudulent transfer litigation in the SunCal bankruptcies.  In

22  an apparent attempt to avoid addressing serious concerns about giving LCPI a direct stake in the

23  outcome of a claim based on LCPI's own actions in the underlying transactions, the Compromise

24  Motion presents only minimal facts about the scope of the fraudulent transfer claims and LCPI's

25  key role.

26      The Trustee's fraudulent transfer claims—asserted against LCPI and two other

27  administrative agents which took part in the various refinancings—are detailed in the Trustee's

28  Opposition to LCPI's motion to foreclose on the various debtor properties ("Opposition").  The

**LBREP LAKESIDE SC MASTER I, LLC'S OBJECTION TO THE TRUSTEE'S MOTION TO APPROVE
COMPROMISE BETWEEN TRUSTEE, OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND LCPI**

1   Trustee's fraudulent transfer claims are based upon the refinancing of First, Second and Third

2   Lien loans totaling nearly $400 million, which loans were arranged and funded (in part) by LCPI.

3   As part of his Opposition, the Trustee filed a 19-page proposed complaint, asserting three

4   fraudulent transfer claims against LCPI, based on LCPI's involvement in negotiating, sizing and

5   funding various loans for these SunCal developments.  Proposed Trustee Complaint ¶ 15, Docket

6   No. 79.   In his Opposition to LCPI's motion to foreclose, the Trustee outlined LCPI's

7   involvement in the transactions underlying the fraudulent transfer claims, stating that "Lehman

8   Commercial participated in the January 2006 Loans and acted as the sole administrative agent" in

9   the First Lien loans as well as the other two loans.  *See* Docket No. 81, Opposition at 9-11.  The

10   Chapter 11 Trustee goes so far as to say that "Lehman Commercial commenced negotiations with

11   itself on behalf of all three creditor groups" and "essentially set the Debtors up for their ultimate

12   demise." *Id.* at 12.

13       The Trustee recognized that LCPI was a key participant in the refinancings at issue in the

14   fraudulent transfer litigation.  Not only was LCPI the administrative agent for the First, Second

15   and Third Lien Loans, the Trustee also asserted that LCPI was directly involved in multiple

16   aspects of the transactions.  The Trustee asserted his fraudulent transfer claims after he and his

17   "professionals ... spent a considerable amount of time investigating the facts and circumstances

18   of these cases and, especially the Debtors' transactions with Lehman Commercial."  *See* Docket

19   No. 79, Declaration of Alfred Siegel in Support of Omnibus Opposition to Motions for Relief

20   from the Automatic Stay Filed by Lehman Commercial Paper, Inc., ¶ 4.  The Trustee's fraudulent

21   transfer claims were also asserted after the related *Gramercy Warehouse Funding I, LLC v.*

22   *LBREP/L-SunCal Master I, LLC et al.*, Adv. No. 8:08-ap-01492-ES (the "Gramercy Complaint")

23   was filed, which asserts fraudulent transfer theories based on a $144 million dividend at the time

24   of the January 2006 refinancings.   Even after his research, the Trustee did not assert any

25   fraudulent transfer claims against the recipients of the $144 million dividend—instead he focused

26   on LCPI.

27       As set forth in the Trustee's own papers, LCPI's role in the transactions underlying the

28   fraudulent transfer claims is pervasive.  While Lehman Lakeside contends that the fraudulent

LBREP LAKESIDE SC MASTER I, LLC'S OBJECTION TO THE TRUSTEE'S MOTION TO APPROVE
COMPROMISE BETWEEN TRUSTEE, OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND LCPI

transfer claims are meritless, it recognizes that it will have to defend itself against those claims. A substantial part of that defense—through documents and witnesses—will come from LCPI, a key participant in the sizing, arranging and syndicating of the refinancings that expressly disclosed and highlighted the $144 million dividend at issue in the fraudulent transfer claims.

## ARGUMENT

This Court should deny the proposed Settlement because it creates significant conflicts of interest for LCPI and severely prejudices LBREP Lakeside—an interested non-settling party—in its defense of any fraudulent transfer claims brought against the Lehman entities.[1] Further, the conflicts, potential for additional claims against Lehman debtors and use of estate property in this proposed Settlement call for the New York Bankruptcy Court's review and approval of the Settlement as a threshold matter before it may be presented for this Court's consideration.

**I.    In Exercising Its Independent Judgment, This Court Should Consider The Settlement's Substantial Impact On Lehman Lakeside's Ability To Defend Itself Where The Key Participant And Former Lead Defendant Has A Direct Monetary Stake In The Litigation's Outcome.**

Under Federal Rule of Bankruptcy Procedure 9019, bankruptcy courts are authorized to approve a compromise or settlement after notice and a hearing based on its informed, independent judgment that the proposed settlement is fair and equitable. *See Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) (explaining that "[t]here can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.").[2] The Bankruptcy Court's determination in this case should be based on

---

[1]    On information and belief, as of the filing of the bankruptcy cases, LCPI was a First Lien Lender holding 30% of the debt, and not just the administrative agent. *See* Response of Highland Entities to the "Omnibus Opposition of Chapter 11 Trustee to Motions for Relief from the Automatic Stay" and Joinder to the "Response of Lehman Commercial Paper as First Lien Administrative Agent for the First Lien Lenders, to Omnibus Opposition of Chapter 11 Trustee to Motions for Relief form the Automatic Stay" at 3 [Docket No. 88]; *see also* December 10, 2008 transcript at 23:13-15.

[2]    *See also In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997) (stating, in reversing order approving settlement, the decision of a bankruptcy court to approve a settlement must be "an informed one based upon an objective evaluation of developed facts" (quoting *Reiss v. Hagemann*, 881 F.2d 890, 892 (10th Cir. 1989)).

**LBREP LAKESIDE SC MASTER I, LLC'S OBJECTION TO THE TRUSTEE'S MOTION TO APPROVE COMPROMISE BETWEEN TRUSTEE, OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND LCPI**

1   a review of all key facts, an understanding of the various issues raised and not be based

2   exclusively on the Trustee's purported business judgment in entering into the proposed

3   Settlement.

4        In making its informed and independent judgment regarding a proposed settlement,

5   bankruptcy courts should consider not only the settling parties' own positions, but also the rights

6   of interested non-settling parties.  When the rights of a non-settling party are implicated by the

7   terms of a settlement, the Court should not approve the settlement without considering the

8   interests of the non-settling party.  *See In re Drexel Burnham Lambert Group*, 995 F.2d 1138,

9   1146-47 (2d Cir. 1993) (applying class action standards of fairness in a bankruptcy case).  The

10   *Drexel* Court cited *In re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d

11   1020, 1026 (2d Cir. 1992) (citation omitted), which itself explains further that

12            where the rights of one who is not a party to a settlement are at stake, the fairness
            of the settlement to the settling parties is not enough to earn the judicial stamp of
13            approval . . . if third parties complain to a judge that a 'decree will be inequitable
            because it will harm them unjustly, he cannot just brush their complaints aside.'
14

15   In considering whether a settlement is "fair and equitable," the standard of fairness must

16   encompass rights of non-settling defendants.  *See In re A & C Props.*, 784 F.2d 1377, 1380-81

17   (9th Cir. 1986).  Indeed, ignoring the effects of a bankruptcy settlement on the non-settling parties

18   "contravenes a basic notion of fairness."  *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984),

19   *cert. denied*, 469 U.S. 880 (1984).  *See also, In re Devon Capital Mgmt., Inc.*, 261 B.R. 619, 623

20   (Bankr. W.D. Pa. 2001) (explaining that "[e]ven if a settlement is fair and equitable to the parties

21   to the settlement, approval is not appropriate if the rights of others who are not parties to the

22   settlement will be unduly prejudiced"); *In re Stanwich Financial Services Corp.*, 377 B.R. 432

23   (Bankr. D. Conn. 2007) (finding that a proposed settlement could prejudice objecting defendants

24   in their pending district court action and thus it could not be approved).  In *In re Stanwich*

25   *Financial Services Corp.*, the Bankruptcy Court rejected a settlement proposed by the Liquidating

26   Agent when some defendants objected that the terms might prejudice them in other pending

27   litigation.  The court found that the settlement was not simply to "end the litigation," but also

28

1    intended to be used as evidence of liability in the pending district litigation. As such, the court

2    properly rejected the settlement.

3         The prejudice to Lehman Lakeside and other non-settling defendants is clear from this

4    proposed Settlement. Lehman Lakeside will be forced to defend itself faced with a former co-

5    defendant who will directly profit from any finding of liability. As a major participant in the

6    refinancing transactions at issue, it would be expected that LCPI would defend itself vigorously

7    and support the transaction it sized, arranged, participated in and syndicated. With a full release

8    from the Trustee, however, there is potentially no future liability for LCPI from any finding that

9    the $144 million dividend which was disclosed and provided for in the refinancing LCPI arranged

10   was a fraudulent transfer. Instead, it will have potentially millions of dollars in economic

11   incentives to maximize any finding of liability, so that it can recover more money at the end of

12   the day. The proposed settlement agreement sets up a taint on all evidence from LCPI that may

13   be virtually impossible to overcome. At a minimum, the evidence provided by LCPI will be

14   highly unreliable because of LCPI's right to profit directly from any recovery.

15   **II.    The Proposed Settlement Should Not Be Considered Until After The New York
         Bankruptcy Court Authorizes LCPI To Use Lehman Estate Property And To Create
16       The Intra-Lehman Conflicts Of Interest.**

17        There should not be a dispute that the Compromise Motion and proposed settlement must

18   be approved by both this Court and the New York Bankruptcy Court. The Term Sheet itself

19   recognizes that LCPI must file the Compromise Motion and receive authorization by the New

20   York Bankruptcy Court. Compromise Motion, Ex. 1, Term Sheet, at 1. Additionally, just as in

21   the Master II proceedings, this proposed settlement includes the use of Lehman estate property, in

22   the form of relinquishing the development account. Under Rule 6004, LCPI must obtain approval

23   from the New York Bankruptcy Court before making any payments or relinquishing its rights.

24        Further, the New York Bankruptcy Court should have the opportunity to address whether

25   LCPI's settlement is "fair and equitable" and in the best interest of the Lehman estates. The

26   proposed Settlement appears to introduce significant conflicts between LCPI and Lehman

27   Lakeside and their respective corporate parents and affiliates. By providing LCPI a right to

28   recovery in the potential fraudulent transfer action, the proposed compromise places LCPI and

-6-                                    CASE NO. 8:08-BK-15588-ES

1  Lehman Lakeside in an adversarial position. As the Court knows, Lehman Brothers, including

2  LCPI, is liquidating in the New York Bankruptcy Court and that liquidation is being run by

3  Lehman Brothers' ultimate parent and a team of advisors for the various Lehman Brothers

4  debtors in those consolidated proceedings, including LCPI. Those same entities are also advising

5  the general partner of the Lehman Brothers Real Estate Private Equity Fund that includes Lehman

6  Lakeside. The conflicts created by the restructuring entities and the liquidation of the Lehman

7  entities will further impair any defense of the fraudulent transfer litigation and could lead to

8  additional claims being asserted against the Lehman estates.

9  **III.    This Court Should Fully Examine All Of The Relevant Facts And Need Not Resolve
The Compromise Motion Prematurely.**

10

11      While the hearing on the Compromise Motion was set for twenty-five days after the

12  motion was filed, there is no actual time pressure to obtain approval. As set forth *supra*, the Term

13  Sheet is required to be approved by the New York Bankruptcy Court, which cannot happen

14  absent expedited relief until at least November 18, 2009. Further, it is unclear why the settling

15  parties are attempting to impose some arbitrary time pressure to obtain approval. The Term Sheet

16  was signed by various constituencies as early as August and September 2009, but not filed until

17  October 2009. Additionally, the Trustee filed the Motion one week after the purported deadline

18  to do so in the Term Sheet. In other words, the Trustee and parties to the settlement agreement

19  have ignored their own deadlines and yet attempt to claim that the Court must adhere to the

20  remaining ones.

21      The Term Sheet itself should not create any urgency or impair the parties' and the Court's

22  ability to fully analyze the unique settlement proposal. As they did with the October filing

23  deadline, the parties can simply ignore the proposed dates, agree among themselves to change

24  them, or amend the agreement formally. All are viable options. And if the proposed settlement is

25  as good of a deal as the Trustee would like the Court to believe, then none of the parties will walk

26  away from the settlement because it takes a few more weeks to be finalized than previously

27  expected.

28

**LBREP LAKESIDE SC MASTER I, LLC'S OBJECTION TO THE TRUSTEE'S MOTION TO APPROVE
COMPROMISE BETWEEN TRUSTEE, OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND LCPI**

1

## CONCLUSION

2    For all the reasons set forth above, the Court should deny the Trustee's Compromise

3    Motion.

4    DATED: October 20, 2009                    Respectfully submitted,

5                                               KIRKLAND & ELLIS LLP

6

7                                  By:    _/s/ Christopher W. Keegan_
8                                         Mark E. McKane
                                          Christopher W. Keegan
9
                                          Attorneys for Defendant
10                                        LBREP Lakeside SC Master I, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-                          CASE NO. 8:08-BK-15588-ES

| In re: LBREP/L-SUNCAL MASTER I, LLC | CHAPTER 11 CASE |
|---|---|
| Debtor(s). | CASE NUMBER 8:08-bk-15588-ES |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**555 California Street, Floor 27, San Francisco, CA 94104**

A true and correct copy of the foregoing document described  **LBREP LAKESIDE SC MASTER I, LLC'S OBJECTION TO THE TRUSTEE'S MOTION TO APPROVE COMPROMISE BETWEEN TRUSTEE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND LEHMAN COMMERCIAL PAPER INC., AS ADMINISTRATIVE AGENT FOR FIRST LIEN LENDERS**   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 20, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On  **October 20, 2009**  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  **October 20, 2009**  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

The Hon. Erithe A. Smith, Ctrm. 5A - Suite 5041
United States Bankruptcy Court
Ronald Reagan Federal Building
411 West Fourth Street
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 20, 2009 | Emi Lee | |
|---|---|---|
| Date | Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

| | |
|---|---|
| In re: LBREP/L-SUNCAL MASTER I, LLC | CHAPTER 11 CASE |
| Debtor(s). | CASE NUMBER 8:08-bk-15588-ES |

## I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Thomas Scott Belden   sbelden@kleinlaw.com, srucker@kleinlaw.com;coliver@kleinlaw.com
Joseph P Buchman     jbuchman@bwslaw.com
Scott C Clarkson     sclarkson@lawcgm.com
Jonathan S Dabbieri   dabbieri@shlaw.com
Lei Lei Wang Ekvall   lekvall@wgllp.com
Marc C Forsythe     kmurphy@goeforlaw.com
Heather Fowler      heather.fowler@lw.com, colleen.rico@lw.com
Robert P Goe       kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
Marshall F Goldberg   mgoldberg@glassgoldberg.com
Kelly C Griffith     bkemail@harrisbeach.com
Michael J Hauser     michael.hauser@usdoj.gov
Gil Hopenstand      gh@lnbrb.com
Christopher W Keegan     ckeegan@kirkland.com, emilee@kirkland.com;alevin@kirkland.com
Yale K Kim        ykim@allenmatkins.com
Kerri A Lyman      klyman@irell.com
John T Madden      jmadden@wgllp.com
Eve A Marsella      emarsella@lawcgm.com
Robert S Marticello   Rmarticello@wgllp.com
Robert C Martinez     rmartinez@mclex.com
Hutchison B Meltzer   hmeltzer@wgllp.com
Joel S. Miliband     jmiliband@rusmiliband.com
James M Miller      jmiller@millerbarondess.com
Ramon Naguiat      rnaguiat@skadden.com
Raymond A Policar    hausermouzes@sbcglobal.net
Craig M Rankin      cmr@lnbrb.com
Daniel H Reiss      dhr@lnbrb.com
Martha E Romero     Romero@mromerolawfirm.com
Mark C Schnitzer     mschnitzer@rhlaw.com
Alfred H Siegel      ahstrustee@horwathcal.com, ca51@ecfcbis.com
Evan D Smiley      esmiley@wgllp.com
Autumn D Spaeth     aspaeth@wgllp.com
Derrick Talerico     dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
Andrew Troop      andrew.troop@cwt.com, scott.griffin@cwt.com;jill.kaylor@cwt.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Michael D Warner     echou@warnerstevens.com
David R Zaro       dzaro@allenmatkins.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                         F 9013-3.1

| In re: LBREP/L-SUNCAL MASTER I, LLC | CHAPTER 11 CASE |
|---|---|
| Debtor(s). | CASE NUMBER 8:08-bk-15588-ES |

## II. SERVED BY U.S. MAIL

LBREP/L SunCal Master I LLC
3500 West Olive Ave., Suite 650
Burbank, CA 91505-5501

LBREP/L SunCal Master I LLC
2392 Morse Avenue
Irvine, CA 92615-6234

Alfred H. Siegel
Siegel, Gottlieb, Mangel & Levine
15233 Ventura Blvd., 9th Floor
Sherman Oaks, CA 91403

Terrence T Egland
4550 California Ave 2nd Fl
Bakersfield, CA 93309

Scott C. Clarkson
Eve A. Marsella
Clarkson Gore & Marsella
3424 Carson Street, Suite 350
Torrance, CA 90503-5716

Gary E Gans
David M Grable
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 S Figueroa St 10th Fl
Los Angeles, CA 90017

Van C. Durrer, II
Skadden Arps Slate Meagher & Flom LLP
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071-3137

Brett T Abbott
Gubler, Koch & Degn LLP
1110 N Chinowth St
Visalia, CA 93291

Steven M Garber
Steven M Garber & Associates
1901 Ave Of The Stars #1100
Los Angeles, CA 90067

Gramercy Warehouse Funding I LLC
420 Lexington Avenue
New York, NY 10170-0002

D. Max Gardner
1800 30th St 4th Fl
Bakersfield, CA 93301-5298

Tara Castro Narayanan
Miller Starr Regalia
1331 N. California Blvd., Fifth Floor
Walnut Creek, CA 94596

Gerald W Mouzis
The Mouzis Law Firm APC
13681 Newport Ave Ste 8-605
Tustin, CA 92780

Alan Wilken
Loeb & Loeb LLP
10100 Santa Monica Blvd Ste 2200
Los Angeles, CA 90067-4120

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                   **F 9013-3.1**

| In re: LBREP/L-SUNCAL MASTER I, LLC | CHAPTER 11 CASE |
|---|---|
| Debtor(s). | CASE NUMBER 8:08-bk-15588-ES |

## II. SERVED BY U.S. MAIL
**Request for Special Notice List**

Christopher R. Mordy
Peterson & Price, APC
655 W Broadway Ste 1600
San Diego, CA 92101
Tel:    619-234-0361
Fax:    619-234-4786
Email: crm@petersonprice.com
**Attorneys for Nissho of California, Inc.**

Martin B. Greenbaum
Greenbaum Law Group LLP
840 Newport Center Drive, Suite 720
Newport Beach, CA 92660
Tel:    949-760-1400
Fax:    949-760-1300
**Attorneys for Creditor Ewing Irrigation Production, Inc.**

Alan Friedman
Irell & Manella LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Tel:    949-760-0991
Fax:    949-760-5200
Email: afriedman@irell.com
**Proposed Counsel for the Committee of Palmdale
Hills Property, LLC and its Related Debtors**

General Electric Capital Corporation
c/o Steven R. Glass
Glass & Goldberg
21700 Oxnard St. Suite 430
Woodland Hills, CA 91367
**Creditor**

David F. Anderson
Houser & Mouzes, APC
18826 North Lower Sacramento Rd., Suite H
P.O. Box 1397
Woodbridge, CA 95258-1397
Tel:    209-368-1368
Fax:    209-368-1472
Email: hausermouzes@sbcglobal.net
**Attorneys for Williams + Paddon Architects + Planners, Inc.**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

| In re: LBREP/L-SUNCAL MASTER I, LLC | CHAPTER 11 CASE |
|---|---|
| Debtor(s). | CASE NUMBER 8:08-bk-15588-ES |

Joe R. Abramson
Abramson & Brown
21700 Oxnard St., Suite 430
Woodland Hills, CA 91367
Tel:    818-227-6690
Fax:    818-227-6699
Email: jralaw1@pacbell.net
**Attorneys for Genesis Golf Builders, Inc.**

William D. Coffee
Songstad & Randall LLP
2201 Dupont Drive #100
Irvine, CA 92612
**Attorneys for AEI/CASC Engineering, Inc.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                   **F 9013-3.1**

# Exhibit 2

1  David R. Zaro (CA Bar No. 124334)
   Email: dzaro@allenmatkins.com
2  Yale K. Kim (CA Bar No. 188895)
   Email: ykim@allenmatkins.com
   ALLEN MATKINS LECK GAMBLE
3  MALLORY & NATSIS LLP
   515 South Figueroa Street, 9th Floor
4  Los Angeles, CA 90071-3398
   Telephone: (213) 622-5555
5  Facsimile: (213) 620-8816

6  - and -

7  George A. Davis (NY Bar No. 2761)
   Email: george.davis@cwt.com
8  Andrew M. Troop (NY Bar No. 04556320)
   Email: andrew.troop@cwt.com
9  CADWALADER, WICKERSHAM & TAFT LLP
   One World Financial Center
10 New York, New York  10281
   Telephone:  (212) 504-6000
11 Facsimile:  (212) 504-6666

12 Counsel for Lehman Commercial Paper Inc.,
   as First Lien Administrative Agent for the First Lien Lenders

13              UNITED STATES BANKRUPTCY COURT
                CENTRAL DISTRICT OF CALIFORNIA
                    SANTA ANA DIVISION

14 | In re: | Case No. 8:08-15588 (ES) |

15

16 **LBREP/L-SunCal Master I LLC et al.,**   Jointly Administered with Case Nos.:
                                            8:08-bk-15637-ES; 8:08-bk-15639-ES
17                          **Debtor.**      and 8:08-bk-15640-ES

18                                          **Chapter 11**

19 __ Affects LBREP/L-SunCal Master I LLC Only   **RESPONSE OF LEHMAN COMMERCIAL**
                                                 **PAPER INC., AS FIRST LIEN**
20 __ Affects LBREP/L-SunCal McAllister Ranch    **ADMINISTRATIVE AGENT FOR THE**
   LLC Only                                      **FIRST LIEN LENDERS, TO LBREP**
21                                               **LAKESIDE SC MASTER I, LLC'S FIRST**
   __ Affects LBREP/L-SunCal McSweeny Farms      **SET OF INTERROGATORIES**
22 LLC Only

23
   __ Affects LBREP/L-SunCal Summerwind
24 Ranch LLC Only

25 X  Affects All Debtors

26

27

28

Lehman Commercial Paper Inc., in its capacity as administrative agent to the First Lien Lenders ("LCPI"), submits the following responses and objections (the "Responses") to the First Set of Interrogatories ("Interrogatories") propounded by LBREP Lakeside SC Master I, LLC ("Lehman Lakeside").

## GENERAL OBJECTIONS

The following General Objections are incorporated into each of the specific Responses below as if fully repeated in each Response and are intended, and shall be deemed, to be in addition to any specific objection included therein. These Responses are not, and shall not be construed as, an admission of relevance or admissibility into evidence of any Response, or of the propriety of the Interrogatories.

       1.     LCPI objects to the Interrogatories, or the definitions or instructions related thereto, to the extent that they seek to impose obligations on LCPI beyond those set forth in the Federal Rules of Bankruptcy Procedure (the "FRBP"), Federal Rules of Civil Procedure (the "FRCP"), the Local Rules of the United States Bankruptcy Court for the Central District of California (the "Local Rules"), or the Individual Practices of Hon. Judge Erithe A. Smith (the "Individual Practices"), or any other statute, rule or order applicable to this action.

       2.     LCPI objects to the Interrogatories to the extent that they seek responses that would reveal information protected from disclosure by the attorney/client privilege or work product doctrine or any other applicable immunity, privilege, protection or rule of confidentiality that makes the requested information non-discoverable. LCPI further objects to the Interrogatories to the extent that they seek responses that would reveal information prepared in anticipation of litigation or for trial of this or any matter. LCPI will provide responses that are non-privileged and otherwise properly discoverable. By providing such responses, LCPI does not waive any privileges. To the extent that the Interrogatories may be construed as seeking a

response that would reveal privileged or protected information or documents, LCPI hereby claims such privilege and invokes such protection. The fact that LCPI does not specifically object to an individual interrogatory on the ground that it seeks a response that would reveal privileged or protected information or documents shall not be deemed a waiver of the protection afforded by the attorney/client privilege, the work product doctrine or any other applicable immunity, privilege, or protection. Any inadvertent identification or production of information subject to such privilege or protection is not intended as a waiver of, and shall not waive, any such privilege or protection.

3.      LCPI objects to the Interrogatories to the extent that the Interrogatories, or the definitions or instructions related thereto, contain vague, ambiguous, undefined, or argumentative terms, and to the extent that they assume disputed facts or legal conclusions in connection with the information requested. LCPI hereby denies all such disputed facts and legal conclusions.

4.      LCPI objects to the Interrogatories to the extent that the Interrogatories, or the definitions or instructions related thereto, are overbroad, unduly burdensome, cumulative, or not reasonably calculated to lead to the discovery of admissible evidence.

5.      LCPI objects to the Interrogatories to the extent that the Interrogatories, or the definitions or instructions related thereto, purport to require the disclosure of information (i) already within the possession, custody or control of Lehman Lakeside; (ii) in the public domain; or (iii) available to Lehman Lakeside from a more convenient, less burdensome, or less costly source than LCPI.

6.      LCPI objects to the Interrogatories to the extent they purport to obligate LCPI to produce documents not within the possession, custody or control of LCPI. LCPI will conduct a reasonable investigation and, subject to general and specific objections, will provide responsive non-privileged information.

-3-

7. LCPI responds to the Interrogatories based upon information presently available to LCPI that it has been able to identify through reasonable efforts.

8. LCPI's Responses are made without waiving, in any way: (a) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in this action or any other action or proceeding; and (b) the right to object on any basis permitted by law to any other discovery request in this action or any other proceeding involving or relating to the subject matter of the Interrogatories or these Responses.

9. In providing these Responses, LCPI does not in any way waive or intend to waive, but rather intends to preserve and is preserving the following:

  a. all objections as to competence, relevance, materiality and admissibility of the Interrogatories or the Responses, or the subject matter thereof or information provided pursuant thereto;

  b. all objections as to vagueness, ambiguity and undue burden;

  c. all rights to object on any ground to the use of any of the Responses, or the subject matter thereof or information provided therein, in this action or any other proceeding, including but not limited to, the trial of this action or any other proceeding; and

  d. all rights to object on any ground to any request for further responses to these or any other discovery requests involving or related to the subject matter of the Interrogatories.

10. LCPI reserves the right to assert additional objections to the Interrogatories if such additional objections become apparent in the future.

11. LCPI reserves the right to amend and/or supplement its Responses based on information obtained or discovered subsequent to these Responses.

12.    The foregoing General Objections of LCPI are incorporated into each specific response below as if set forth fully therein.

Subject to the foregoing General Objections, which are incorporated into each Response and have the same force and effect as though fully set forth therein, LCPI responds to the Interrogatories as follows:

## SPECIFIC RESPONSES AND OBJECTIONS

**Interrogatory No. 1:**

Describe LCPI's efforts in sizing of the January 2006 loans.

**Response to Interrogatory No. 1:**

LCPI objects to Interrogatory No. 1 on the grounds that it is vague and ambiguous, and objects in particular to the use of the terms "efforts" and "sizing."

Subject to the General Objections stated above, which are incorporated herein in their entirety, and the specific objections set forth above, LCPI responds to Interrogatory No. 1 as follows:

LCPI's real estate group conducted standard due diligence and underwriting with regard to the then-current and potential value of the properties known as LBREP/L-SunCal McAllister Ranch LLC, LBREP/L-SunCal McSweeny Farms LLC and LBREP/L-SunCal Summerwind Ranch LLC, and the creditworthiness of the sponsor, including without limitation reviewing appraisals, environmental studies, entitlement status reviews, market studies, cash flow projections and financial records of the sponsor. LCPI's credit committee reviewed the results of the due diligence and underwriting and, based on the appraised value of the underlying properties and the projections for future development and lot sales, approved the real estate group's recommendation of a first lien loan not to exceed $235 million and a second lien loan not to exceed $75 million.

**Interrogatory No. 2:**

Identify all of LCPI's current holdings in the First Lien Debt, including holdings under the First Lien Term Loan and the Revolver.

**Response to Interrogatory No. 2:**

Subject to the General Objections stated above, which are incorporated herein in their entirety, LCPI responds to Interrogatory No. 2 as follows:

LCPI holds $64,420,749.40 of the First Lien Revolver and $4,918,848.36 of the First Lien Term Loan, for a total of $69,339,597.76.

**Interrogatory No. 3:**

Identify who authorized LCPI to enter into the Term Sheet, including the corporate affiliation of that individual or individuals.

**Response to Interrogatory No. 3:**

LCPI objects to Interrogatory No. 3 on the grounds that it seeks information that is neither relevant to this proceeding, nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the General Objections stated above, which are incorporated herein in their entirety, and the specific objections set forth above, LCPI responds to Interrogatory No. 3 as follows:

LCPI will not respond to Interrogatory No. 3.

**Interrogatory No. 4:**

Identify who served as the Client Representative at the time of authorization of the Term Sheet, including the corporate affiliation of that individual or individuals.

**Response to Interrogatory No. 4:**

LCPI objects to Interrogatory No. 4 on the grounds that it is vague and ambiguous, and objects in particular to the use of the defined term "Client Representative," as no such position existed at LCPI. LCPI further objects to Interrogatory No. 4 on the grounds that it is neither

-6-

relevant to this proceeding, nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the General Objections stated above, which are incorporated herein in their entirety, and the specific objections set forth above, LCPI responds to Interrogatory No. 4 as follows:

LCPI will not respond to Interrogatory No. 4.

**Interrogatory No. 5:**

Identify who retained Cadwalader for LCPI, including the corporate affiliation of that individual or individuals.

**Response to Interrogatory No. 5:**

LCPI objects to Interrogatory No. 5 on the grounds that it seeks information that is neither relevant to this proceeding, nor reasonably calculated to lead to the discovery of admissible evidence. LCPI further objects to Interrogatory No. 5 on the grounds that it is vague, ambiguous and overly broad.

Subject to the General Objections stated above, which are incorporated herein in their entirety, and the specific objections set forth above, LCPI responds to Interrogatory No. 5 as follows:

LCPI will not respond to Interrogatory No. 5.

**Interrogatory No. 6:**

State whether the scope of Cadwalader's representation of LCPI in the Bankruptcy Proceedings covers LCPI only in its capacity as Syndication Agent, only in its capacity as a holder of the First Lien Debt, or in both these capacities.

**Response to Interrogatory No. 6:**

LCPI objects to Interrogatory No. 6 on the grounds that it seeks information that is neither relevant to this proceeding, nor reasonably calculated to lead to the discovery of admissible evidence. LCPI further objects to Interrogatory No. 6 on the grounds that it seeks information that is available in the public domain.

-7-

1       Subject to the General Objections stated above, which are incorporated herein in their

2   entirety, and the specific objections set forth above, LCPI responds to Interrogatory No. 6 as

3   follows:

4       Cadwalader represents LCPI in the Bankruptcy Proceedings in its capacity as

5   administrative agent and a lender in connection with the first lien credit facility of LBREP/L-

6   SunCal Master I LLC, as borrower ("SunCal") in connection with the chapter 11 cases of SunCal

7   and certain of its subsidiaries.  Cadwalader represents LCPI as a first lien lender as *part* of the

8   loan syndicate.  Cadwalader does not represent LCPI as an individual first lien lender.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  December 4, 2009

2  New York, New York

3          ALLEN MATKINS LECK GAMBLE
           MALLORY & NATSIS LLP

4
5          David R. Zaro, Esq.
           Yale K. Kim, Esq.
6          515 South Figueroa Street, 9th Floor
           Los Angeles, CA 90071-3398
7          Telephone: (213) 622-5555
           Facsimile: (213) 620-8816
8
9          -and-

10         CADWALADER, WICKERSHAM & TAFT LLP

11         *Andrew Troop  by: SMS*
           _____
12         George A. Davis (NY Bar No. 2761)
           Andrew M. Troop (NY Bar No. 4556320)
13         One World Financial Center
           New York, New York  10281
14         Telephone:  (212) 504-6000
           Facsimile:  (212) 504-6666
15
16         Counsel for Lehman Commercial Paper Inc.,
           as Administrative Agent to the First Lien Lenders
17
18
19
20
21
22
23
24
25
26
27
28

                          -9-

# Exhibit 3

**EXECUTION VERSION**

$235,000,000

FIRST LIEN CREDIT AGREEMENT

among

LBREP/L-SUNCAL MASTER I LLC,
as Borrower,

The Several Lenders
from Time to Time Parties Hereto,

LEHMAN BROTHERS INC.,
as Arranger

LEHMAN COMMERCIAL PAPER INC.,
as Syndication Agent

and

LEHMAN COMMERCIAL PAPER INC.,
as Administrative Agent

Dated as of January 19, 2006

# TABLE OF CONTENTS

<u>Page</u>

SECTION 1    DEFINITIONS..................................................................................................1
1.1  Defined Terms ........................................................................................................1
1.2  Other Definitional Provisions ..............................................................................29

SECTION 2    AMOUNT AND TERMS OF COMMITMENTS...................................29
2.1  Term Loan Commitments .....................................................................................29
2.2  Procedure for Term Loan Borrowing ...................................................................29
2.3  Repayment of Term Loans....................................................................................30
2.4  Revolving Credit Commitments ...........................................................................30
2.5  Procedure for Revolving Credit Borrowing..........................................................31
2.6  Repayment of Loans; Evidence of Debt ...............................................................31
2.7  Fees, etc.................................................................................................................32
2.8  Termination or Reduction of Revolving Credit Commitments ...........................33
2.9  Optional Prepayments ..........................................................................................33
2.10 Mandatory Prepayments .......................................................................................33
2.11 Conversion and Continuation Options .................................................................36
2.12 Minimum Amounts and Maximum Number of Eurodollar Tranches .................36
2.13 Interest Rates and Payment Dates........................................................................37
2.14 Computation of Interest and Fees ........................................................................37
2.15 Inability to Determine Interest Rate.....................................................................38
2.16 Pro Rata Treatment and Payments........................................................................38
2.17 Requirements of Law ............................................................................................40
2.18 Taxes......................................................................................................................41
2.19 Indemnity ..............................................................................................................44
2.20 Illegality ................................................................................................................44
2.21 Change of Lending Office .....................................................................................44
2.22 Replacement of Lenders under Certain Circumstances ........................................45

SECTION 3    LETTERS OF CREDIT...............................................................................45
3.1  L/C Commitment ...................................................................................................45
3.2  Procedure for Issuance of Letter of Credit...........................................................46
3.3  Fees and Other Charges ........................................................................................46
3.4  L/C Participations..................................................................................................46
3.5  Reimbursement Obligation of the Borrower........................................................48
3.6  Obligations Absolute ............................................................................................48
3.7  Letter of Credit Payments .....................................................................................48
3.8  Applications ..........................................................................................................49

SECTION 4    REPRESENTATIONS AND WARRANTIES ...........................................49
4.1  Financial Condition...............................................................................................49
4.2  No Change .............................................................................................................49

4.3    Corporate Existence; Compliance with Law ....................................................49
4.4    Corporate Power; Authorization; Enforceable Obligations ............................49
4.5    No Legal Bar ...................................................................................................50
4.6    No Material Litigation ....................................................................................50
4.7    No Default.......................................................................................................50
4.8    Ownership of Property; Liens .........................................................................50
4.9    Intellectual Property........................................................................................51
4.10   Taxes ...............................................................................................................51
4.11   Federal Regulations ........................................................................................51
4.12   Labor Matters ..................................................................................................51
4.13   ERISA .............................................................................................................52
4.14   Investment Company Act; Other Regulations ................................................52
4.15   Subsidiaries ....................................................................................................52
4.16   Use of Proceeds...............................................................................................52
4.17   Environmental Matters....................................................................................53
4.18   Accuracy of Information, etc ..........................................................................54
4.19   Security Documents ........................................................................................54
4.20   Solvency..........................................................................................................55
4.21   Entitlements ....................................................................................................55
4.22   Permits and Licenses Related to the Projects .................................................55
4.23   Utilities............................................................................................................56
4.24   SPE Compliance .............................................................................................56
4.25   Regulation H ...................................................................................................56
4.26   Certain Documents..........................................................................................56

SECTION 5      CONDITIONS PRECEDENT.....................................................................56

5.1    Conditions to Initial Extension of Credit .......................................................56
5.2    Conditions to Each Extension of Credit..........................................................61
5.3    Conditions to Disbursements ..........................................................................62

SECTION 6      AFFIRMATIVE COVENANTS ..................................................................63

6.1    Financial Statements .......................................................................................63
6.2    Certificates; Other Information........................................................................64
6.3    Payment of Obligations...................................................................................66
6.4    Conduct of Business and Maintenance of Existence; Compliance..................66
6.5    Maintenance of Property; Insurance ...............................................................66
6.6    Inspection of Property; Books and Records; Discussions ..............................68
6.7    Notices ............................................................................................................69
6.8    Environmental Laws........................................................................................70
6.9    Interest Rate Protection...................................................................................70
6.10   Additional Collateral, etc ...............................................................................70
6.11   Further Assurances..........................................................................................72
6.12   SPE Covenants ................................................................................................72
6.13   Maintenance of Entitlements ..........................................................................73
6.14   Major Milestones ............................................................................................73
6.15   Permitted Collateral Asset Sale ......................................................................73

6.16    Development Account ............................................................................74
6.17    Operating Accounts ..............................................................................74
6.18    Collateral Assignment ..........................................................................74

SECTION 7        NEGATIVE COVENANTS ...........................................................74

7.1    Financial Condition Covenants ..............................................................74
7.2    Limitation on Indebtedness ...................................................................75
7.3    Limitation on Liens ...............................................................................76
7.4    Limitation on Fundamental Changes .....................................................77
7.5    Limitation on Disposition of Property ...................................................77
7.6    Limitation on Restricted Payments ........................................................79
7.7    Limitation on Capital Expenditures .......................................................79
7.8    Limitation on Investments .....................................................................80
7.9    Limitation on Optional Payments and Modifications of Debt Instruments, etc .............80
7.10    Limitation on Transactions with Affiliates ...........................................80
7.11    Limitation on Sales and Leasebacks .....................................................81
7.12    Limitation on Changes in Fiscal Periods ..............................................81
7.13    Limitation on Negative Pledge Clauses ................................................81
7.14    Limitation on Restrictions on Subsidiary Distributions .........................81
7.15    Limitation on Lines of Business ...........................................................81
7.16    Limitation on Hedge Agreements .........................................................82
7.17    Limitation on Amendments to Other Documents ..................................82

SECTION 8        EVENTS OF DEFAULT ...............................................................82

SECTION 9        THE AGENTS ..............................................................................85

9.1    Appointment ........................................................................................85
9.2    Delegation of Duties .............................................................................85
9.3    Exculpatory Provisions .........................................................................86
9.4    Reliance by Agents ...............................................................................86
9.5    Notice of Default ..................................................................................86
9.6    Non-Reliance on Agents and Other Lenders ..........................................87
9.7    Indemnification ....................................................................................87
9.8    Agent in Its Individual Capacity ...........................................................88
9.9    Successor Administrative Agent ............................................................88
9.10    Authorization to Release Liens and Guarantees ...................................88
9.11    The Arranger; the Syndication Agent ...................................................88

SECTION 10        MISCELLANEOUS ....................................................................89

10.1    Amendments and Waivers ....................................................................89
10.2    Notices .................................................................................................90
10.3    No Waiver; Cumulative Remedies ........................................................92
10.4    Survival of Representations and Warranties ..........................................93
10.5    Payment of Expenses ...........................................................................93
10.6    Successors and Assigns; Participations and Assignments ......................94
10.7    Adjustments; Set-off .............................................................................97

10.8     Counterparts ...................................................................................98
10.9     Severability .....................................................................................98
10.10   Integration ......................................................................................98
10.11   GOVERNING LAW .....................................................................98
10.12   Submission To Jurisdiction; Waivers ..........................................98
10.13   Acknowledgments .........................................................................99
10.14   Confidentiality ...............................................................................99
10.15   Release and Subordination of Collateral and Guarantee Obligations ............................100
10.16   Accounting Changes .....................................................................101
10.17   Delivery of Lender Addenda ........................................................102
10.18   WAIVERS OF JURY TRIAL ......................................................102

ANNEXES:

| | |
|---|---|
| A | Borchard Patterson Project Map |
| B | McAllister Ranch Project Map |
| C | McSweeny Farms Project Map |
| D | Summerwind Ranch Project Map |
| E | Approved Development Budgets |

SCHEDULES:

| | |
|---|---|
| 1.1A | Existing Mortgage Indebtedness |
| 1.1B | Mortgaged Property |
| 1.1C | Third Party Homebuilders |
| 1.1D | Initial Appraisals |
| 4.4 | Consents, Authorizations, Filings and Notices |
| 4.8(c) | Taxes Related to the Projects |
| 4.15 | Subsidiaries |
| 4.19(a) | UCC Filing Jurisdictions |
| 4.19(b) | Mortgage Filing Jurisdictions |
| 4.21(a) | Entitlements |
| 4.21(b) | Major Milestones |
| 7.2(d) | Existing Indebtedness |
| 7.3(f) | Existing Liens |
| 10.6(c) | Competitors |

EXHIBITS:

| | |
|---|---|
| A | Form of First Lien Guarantee and Collateral Agreement |
| B | Form of Compliance Certificate |
| C | Form of Closing Certificate |
| D | Form of First Lien Mortgage |
| E | Form of Assignment and Acceptance |
| F-1 | Form of Legal Opinion of O'Melveny & Myers LLP |
| F-2 | Form of Legal Opinion of Heller Ehrman LLP |

| | |
|---|---|
| G-1 | Form of Term Note |
| G-2 | Form of Revolving Credit Note |
| H | Form of Prepayment Option Notice |
| I | Form of Exemption Certificate |
| J | Form of Lender Addendum |
| K | Form of Borrowing Notice |
| L | Form of Disbursement Request |
| M | Form of Subordination and Non-Disturbance Agreement |
| N | Form of Intercreditor Agreement |
| O | Acknowledgements for Qualified Sales Agreements |
| P | Form of Entitlement Summary |

FIRST LIEN CREDIT AGREEMENT, dated as of January 19, 2006, among LBREP/L-SUNCAL MASTER I LLC, a Delaware limited liability company (the "Borrower"), the several banks and other financial institutions or entities from time to time parties to this Agreement (the "Lenders"), LEHMAN BROTHERS INC., as advisor, sole lead arranger and sole bookrunner (in such capacity, the "Arranger"), LEHMAN COMMERCIAL PAPER INC., as syndication agent (in such capacity, the "Syndication Agent"), and LEHMAN COMMERCIAL PAPER INC., as administrative agent (in such capacity, the "Administrative Agent").

## W I T N E S S E T H:

WHEREAS, the Borrower has requested that the Lenders provide credit facilities, the proceeds of which, together with the proceeds of the loans under the Second Lien Credit Agreement (as defined below) will be used, among other things to: (i) refinance the Existing Mortgage Indebtedness (as defined below) of the Borrower and its Subsidiaries, (ii) finance Land Expenses (as defined below), (iii) pay a dividend to certain investors and (iv) pay related fees and expenses; and

WHEREAS, the Lenders are willing to make such credit facilities available upon and subject to the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the premises and the agreements hereinafter set forth, the parties hereto hereby agree as follows:

## SECTION 1. DEFINITIONS

1.1    Defined Terms.  As used in this Agreement, the terms listed in this Section 1.1 shall have the respective meanings set forth in this Section 1.1.

"Administrative Agent":  as defined in the preamble hereto.

"Affiliate":  as to any Person, any other Person that, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person.  For purposes of this definition, "control" of a Person means the power, directly or indirectly, either to (a) vote 10% or more of the securities having ordinary voting power for the election of directors (or persons performing similar functions) of such Person or (b) direct or cause the direction of the management and policies of such Person, whether by contract or otherwise.

"Agents":  the collective reference to the Syndication Agent and the Administrative Agent.

"Aggregate Appraised Value":  the sum of the Appraised Value of all of the Projects.  As of the Closing Date, the Aggregate Appraised Value is $977,500,000.

connection with the development of the related Project as contemplated by the applicable Development Agreement.

7.6    <u>Limitation on Restricted Payments</u>.  Declare or pay any dividend on, or make any payment on account of, or set apart assets for a sinking or other analogous fund for, the purchase, redemption, defeasance, retirement or other acquisition of, any Capital Stock of the Borrower or any Subsidiary, whether now or hereafter outstanding, or make any other distribution in respect thereof, either directly or indirectly, whether in cash or property or in obligations of the Borrower or any Subsidiary, or enter into any derivatives or other transaction with any financial institution, commodities or stock exchange or clearinghouse (a "<u>Derivatives Counterparty</u>") obligating the Borrower or any Subsidiary to make payments to such Derivatives Counterparty as a result of any change in market value of any such Capital Stock (collectively, "<u>Restricted Payments</u>"), except that:

(a)    any Subsidiary may make Restricted Payments to the Borrower or any Subsidiary Guarantor;

(b)    the Borrower may make Restricted Payments in the form of common stock or common limited liability company membership interests of the Borrower;

(c)    the Borrower may pay a dividend on the Closing Date to one or more of Bruce Elieff, SunCal, SCC Acquisitions, LLC, SCC Ranch Ventures, LLC or LBREP Lakeside SC Master I, LLC, in an aggregate amount not exceeding $144,000,000;

(d)    the Borrower may make Restricted Payments to the holders of the Capital Stock of the Borrower; <u>provided</u> that, (i) except for Restricted Payments made with any Excess Cash Flow as permitted by Section 2.10(d), no Restricted Payment shall be permitted pursuant to this Section 7.6(d) unless the amount of the proposed Restricted Payment has first been offered to the Lenders (and the Second Lien Lenders) as an optional prepayment of the Term Loans in accordance with Section 2.16(d) and, to the extent any portion of the Restricted Payment is not paid to the Lenders (and/or the Second Lien Lenders) in accordance with Section 2.16(d), such remaining amount may be paid to the holders of the Capital Stock of the Borrower and (ii) immediately prior to and after giving effect to such Restricted Payment, no Default or Event of Default shall have occurred and be continuing; and

(e)    the Borrower may make Restricted Payments to the beneficial owners of the Capital Stock of the Borrower for the purposes of permitting such beneficial owners to pay federal and state income tax obligations with respect to income allocated to them from the Borrower and its Subsidiaries; <u>provided</u>, <u>that</u> the amount of such Restricted Payments made with respect to any fiscal year of the Borrower shall not exceed forty-five percent (45%) of the consolidated taxable income of the Borrower and its Subsidiaries allocated to the beneficial holders for such fiscal year (calculated in accordance with U.S. federal and applicable state tax laws).

7.7    <u>Limitation on Capital Expenditures</u>.  Make or commit to make any Capital Expenditure, except Capital Expenditures of the Borrower and its Subsidiaries in accordance with the Approved Development Budgets solely with respect to the Projects.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

LBREP/L-SUNCAL MASTER I LLC

By: _____
    Name: Bruce Elieff
    Title: Authorized Signatory

[First Lien Credit Agreement]

LEHMAN BROTHERS INC.,
as Arranger

By: _____

Name: Francis X. Gilhool
Title: Authorized Signatory


LEHMAN COMMERCIAL PAPER INC.,
as Syndication Agent

By: _____

Name: Francis X. Gilhool
Title: Authorized Signatory


LEHMAN COMMERCIAL PAPER INC.,
as Administrative Agent

By: _____

Name: Francis X. Gilhool
Title: Authorized Signatory

[First Lien Credit Agreement]

# Exhibit 4

EXECUTION VERSION

$85,000,000

SECOND LIEN CREDIT AGREEMENT

among

LBREP/L-SUNCAL MASTER I LLC,
as Borrower,

The Several Lenders
from Time to Time Parties Hereto,

LEHMAN BROTHERS INC.,
as Arranger

LEHMAN COMMERCIAL PAPER INC.,
as Syndication Agent

and

LEHMAN COMMERCIAL PAPER INC.,
as Administrative Agent

Dated as of January 19, 2006

TABLE OF CONTENTS

Page

SECTION 1        DEFINITIONS................................................................................1
1.1    Defined Terms .................................................................................................1
1.2    Other Definitional Provisions .......................................................................26

SECTION 2        AMOUNT AND TERMS OF COMMITMENTS.....................................27
2.1    Commitments.................................................................................................27
2.2    Procedure for Term Loan Borrowing ...........................................................27
2.3    Repayment of Term Loans............................................................................27
2.4    [Reserved] .....................................................................................................27
2.5    [Reserved] .....................................................................................................28
2.6    Repayment of Term Loans; Evidence of Debt .............................................28
2.7    Fees, etc.........................................................................................................28
2.8    [Reserved] .....................................................................................................28
2.9    Optional Prepayments ..................................................................................28
2.10   Mandatory Prepayments ...............................................................................29
2.11   Conversion and Continuation Options ..........................................................31
2.12   Minimum Amounts and Maximum Number of Eurodollar Tranches ...........32
2.13   Interest Rates and Payment Dates.................................................................32
2.14   Computation of Interest and Fees.................................................................33
2.15   Inability to Determine Interest Rate..............................................................33
2.16   Pro Rata Treatment and Payments ...............................................................34
2.17   Requirements of Law.....................................................................................36
2.18   Taxes..............................................................................................................37
2.19   Indemnity ......................................................................................................39
2.20   Illegality ........................................................................................................39
2.21   Change of Lending Office .............................................................................40
2.22   Replacement of Lenders under Certain Circumstances ................................40

SECTION 3        [RESERVED]..............................................................................40

SECTION 4        REPRESENTATIONS AND WARRANTIES ........................................40
4.1    Financial Condition.......................................................................................41
4.2    No Change .....................................................................................................41
4.3    Corporate Existence; Compliance with Law ................................................41
4.4    Corporate Power; Authorization; Enforceable Obligations..........................41
4.5    No Legal Bar..................................................................................................41
4.6    No Material Litigation ..................................................................................42
4.7    No Default......................................................................................................42
4.8    Ownership of Property; Liens........................................................................42
4.9    Intellectual Property......................................................................................42
4.10   Taxes..............................................................................................................43

4.11    Federal Regulations ................................................................................43
4.12    Labor Matters ........................................................................................43
4.13    ERISA ....................................................................................................43
4.14    Investment Company Act; Other Regulations ......................................44
4.15    Subsidiaries ...........................................................................................44
4.16    Use of Proceeds .....................................................................................44
4.17    Environmental Matters ..........................................................................44
4.18    Accuracy of Information, etc ..................................................................45
4.19    Security Documents ...............................................................................46
4.20    Solvency .................................................................................................46
4.21    Entitlements ...........................................................................................46
4.22    Permits and Licenses Related to the Projects .......................................47
4.23    Utilities ..................................................................................................47
4.24    SPE Compliance ....................................................................................47
4.25    Regulation H ..........................................................................................47
4.26    Certain Documents.................................................................................48

SECTION 5      CONDITIONS PRECEDENT ...............................................................48
5.1     Conditions to the Term Loans.................................................................48
5.2     [Reserved] ..............................................................................................53
5.3     Conditions to Disbursements .................................................................53

SECTION 6      AFFIRMATIVE COVENANTS ............................................................55
6.1     Financial Statements ..............................................................................55
6.2     Certificates; Other Information ..............................................................55
6.3     Payment of Obligations..........................................................................57
6.4     Conduct of Business and Maintenance of Existence; Compliance........58
6.5     Maintenance of Property; Insurance .......................................................58
6.6     Inspection of Property; Books and Records; Discussions ......................59
6.7     Notices ...................................................................................................60
6.8     Environmental Laws ...............................................................................61
6.9     Interest Rate Protection..........................................................................61
6.10    Additional Collateral, etc .......................................................................61
6.11    Further Assurances.................................................................................63
6.12    SPE Covenants .......................................................................................63
6.13    Maintenance of Entitlements ..................................................................64
6.14    Major Milestones ...................................................................................64
6.15    Permitted Collateral Asset Sale .............................................................65
6.16    Development Account .............................................................................65
6.17    Operating Accounts ................................................................................65
6.18    Collateral Assignment............................................................................65

SECTION 7      NEGATIVE COVENANTS ..................................................................65
7.1     Financial Condition Covenants...............................................................66
7.2     Limitation on Indebtedness.....................................................................66
7.3     Limitation on Liens.................................................................................67

| | | |
|---|---|---|
| 7.4 | Limitation on Fundamental Changes | 68 |
| 7.5 | Limitation on Disposition of Property | 68 |
| 7.6 | Limitation on Restricted Payments | 70 |
| 7.7 | Limitation on Capital Expenditures | 70 |
| 7.8 | Limitation on Investments | 71 |
| 7.9 | Limitation on Optional Payments and Modifications of Debt Instruments, etc | 71 |
| 7.10 | Limitation on Transactions with Affiliates | 71 |
| 7.11 | Limitation on Sales and Leasebacks | 72 |
| 7.12 | Limitation on Changes in Fiscal Periods | 72 |
| 7.13 | Limitation on Negative Pledge Clauses | 72 |
| 7.14 | Limitation on Restrictions on Subsidiary Distributions | 72 |
| 7.15 | Limitation on Lines of Business | 72 |
| 7.16 | Limitation on Hedge Agreements | 73 |
| 7.17 | Limitation on Amendments to Other Documents | 73 |
| | | |
| SECTION 8 | EVENTS OF DEFAULT | 73 |
| | | |
| SECTION 9 | THE AGENTS | 76 |
| | | |
| 9.1 | Appointment | 76 |
| 9.2 | Delegation of Duties | 76 |
| 9.3 | Exculpatory Provisions | 76 |
| 9.4 | Reliance by Agents | 77 |
| 9.5 | Notice of Default | 77 |
| 9.6 | Non-Reliance on Agents and Other Lenders | 77 |
| 9.7 | Indemnification | 78 |
| 9.8 | Agent in Its Individual Capacity | 78 |
| 9.9 | Successor Administrative Agent | 78 |
| 9.10 | Authorization to Release Liens and Guarantees | 79 |
| 9.11 | The Arranger; the Syndication Agent | 79 |
| | | |
| SECTION 10 | MISCELLANEOUS | 79 |
| | | |
| 10.1 | Amendments and Waivers | 79 |
| 10.2 | Notices | 81 |
| 10.3 | No Waiver; Cumulative Remedies | 82 |
| 10.4 | Survival of Representations and Warranties | 83 |
| 10.5 | Payment of Expenses | 83 |
| 10.6 | Successors and Assigns; Participations and Assignments | 84 |
| 10.7 | Adjustments; Set-off | 87 |
| 10.8 | Counterparts | 88 |
| 10.9 | Severability | 88 |
| 10.10 | Integration | 88 |
| 10.11 | GOVERNING LAW | 88 |
| 10.12 | Submission To Jurisdiction; Waivers | 88 |
| 10.13 | Acknowledgments | 89 |
| 10.14 | Confidentiality | 89 |
| 10.15 | Release and Subordination of Collateral and Guarantee Obligations | 89 |

10.16  Accounting Changes ...........................................................................................91
10.17  Delivery of Lender Addenda .............................................................................91
10.18  WAIVERS OF JURY TRIAL ...........................................................................91

ANNEXES:

| | |
|---|---|
| A | Borchard Patterson Project Map |
| B | McAllister Ranch Project Map |
| C | McSweeny Farms Project Map |
| D | Summerwind Ranch Project Map |
| E | Approved Development Budgets |

SCHEDULES:

| | |
|---|---|
| 1.1A | Existing Mortgage Indebtedness |
| 1.1B | Mortgaged Property |
| 1.1C | Third Party Homebuilders |
| 1.1D | Initial Appraisals |
| 4.4 | Consents, Authorizations, Filings and Notices |
| 4.8(c) | Taxes Related to the Projects |
| 4.15 | Subsidiaries |
| 4.19(a) | UCC Filing Jurisdictions |
| 4.19(b) | Mortgage Filing Jurisdictions |
| 4.21(a) | Entitlements |
| 4.21(b) | Major Milestones |
| 7.2(d) | Existing Indebtedness |
| 7.3(f) | Existing Liens |
| 10.6(c) | Competitors |

EXHIBITS:

| | |
|---|---|
| A | Form of Second Lien Guarantee and Collateral Agreement |
| B | Form of Compliance Certificate |
| C | Form of Closing Certificate |
| D | Form of Second Lien Mortgage |
| E | Form of Assignment and Acceptance |
| F-1 | Form of Legal Opinion of O'Melveny & Myers LLP |
| F-2 | Form of Legal Opinion of Heller Ehrman LLP |
| G | Form of Note |
| H | Form of Prepayment Option Notice |
| I | Form of Exemption Certificate |
| J | Form of Lender Addendum |
| K | Form of Borrowing Notice |
| L | Form of Disbursement Request |
| M | Form of Subordination and Non-Disturbance Agreement |
| N | Form of Intercreditor Agreement |
| O | Acknowledgements for Qualified Sales Agreements |
| P | Form of Entitlement Summary |

SECOND LIEN CREDIT AGREEMENT, dated as of January 19, 2006, among LBREP/L-SUNCAL MASTER I LLC, a Delaware limited liability company (the "Borrower"), the several banks and other financial institutions or entities from time to time parties to this Agreement (the "Lenders"), LEHMAN BROTHERS INC., as advisor, sole lead arranger and sole bookrunner (in such capacity, the "Arranger"), LEHMAN COMMERCIAL PAPER INC., as syndication agent (in such capacity, the "Syndication Agent"), and LEHMAN COMMERCIAL PAPER INC., as administrative agent (in such capacity, the "Administrative Agent").

## W I T N E S S E T H:

WHEREAS, the Borrower has requested that the Lenders provide a term loan facility, the proceeds of which, together with the proceeds of the loans under the First Lien Credit Agreement (as defined below) will be used, among other things to: (i) refinance the Existing Mortgage Indebtedness (as defined below) of the Borrower and its Subsidiaries, (ii) finance Land Expenses (as defined below), (iii) pay a dividend to certain investors and (iv) pay related fees and expenses; and

WHEREAS, the Lenders are willing to make such term loan facility available upon and subject to the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the premises and the agreements hereinafter set forth, the parties hereto hereby agree as follows:

## SECTION 1. DEFINITIONS

1.1   Defined Terms.  As used in this Agreement, the terms listed in this Section 1.1 shall have the respective meanings set forth in this Section 1.1.

"Administrative Agent":  as defined in the preamble hereto.

"Affiliate":  as to any Person, any other Person that, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person.  For purposes of this definition, "control" of a Person means the power, directly or indirectly, either to (a) vote 10% or more of the securities having ordinary voting power for the election of directors (or persons performing similar functions) of such Person or (b) direct or cause the direction of the management and policies of such Person, whether by contract or otherwise.

"Agents":  the collective reference to the Syndication Agent and the Administrative Agent.

"Aggregate Appraised Value":  the sum of the Appraised Value of all of the Projects.  As of the Closing Date, the Aggregate Appraised Value is $977,500,000.

connection with the development of the related Project as contemplated by the applicable Development Agreement.

      7.6    <u>Limitation on Restricted Payments</u>.  Declare or pay any dividend on, or make any payment on account of, or set apart assets for a sinking or other analogous fund for, the purchase, redemption, defeasance, retirement or other acquisition of, any Capital Stock of the Borrower or any Subsidiary, whether now or hereafter outstanding, or make any other distribution in respect thereof, either directly or indirectly, whether in cash or property or in obligations of the Borrower or any Subsidiary, or enter into any derivatives or other transaction with any financial institution, commodities or stock exchange or clearinghouse (a "<u>Derivatives Counterparty</u>") obligating the Borrower or any Subsidiary to make payments to such Derivatives Counterparty as a result of any change in market value of any such Capital Stock (collectively, "<u>Restricted Payments</u>"), except that:

      (a)    any Subsidiary may make Restricted Payments to the Borrower or any Subsidiary Guarantor;

      (b)    the Borrower may make Restricted Payments in the form of common stock or common limited liability company membership interests of the Borrower;

      (c)    the Borrower may pay a dividend on the Closing Date to one or more of Bruce Elieff, SunCal, SCC Acquisitions, LLC, SCC Ranch Ventures, LLC or LBREP Lakeside SC Master I, LLC, in an aggregate amount not exceeding $144,000,000;

      (d)    the Borrower may make Restricted Payments to the holders of the Capital Stock of the Borrower; <u>provided</u> that, (i) except for Restricted Payments made with any Excess Cash Flow as permitted by Section 2.10(d), no Restricted Payment shall be permitted pursuant to this Section 7.6(d) unless the amount of the proposed Restricted Payment has first been offered to the Lenders (and the First Lien Lenders) as an optional prepayment of the Term Loans in accordance with Section 2.16(d) and, to the extent any portion of the Restricted Payment is not paid to the Lenders (and/or the First Lien Lenders) in accordance with Section 2.16(d), such remaining amount may be paid to the holders of the Capital Stock of the Borrower and (ii) immediately prior to and after giving effect to such Restricted Payment, no Default or Event of Default shall have occurred and be continuing; and

      (e)    the Borrower may make Restricted Payments to the beneficial owners of the Capital Stock of the Borrower for the purposes of permitting such beneficial owners to pay federal and state income tax obligations with respect to income allocated to them from the Borrower and its Subsidiaries; <u>provided</u>, <u>that</u> the amount of such Restricted Payments made with respect to any fiscal year of the Borrower shall not exceed forty-five percent (45%) of the consolidated taxable income of the Borrower and its Subsidiaries allocated to the beneficial holders for such fiscal year (calculated in accordance with U.S. federal and applicable state tax laws).

      7.7    <u>Limitation on Capital Expenditures</u>.  Make or commit to make any Capital Expenditure, except Capital Expenditures of the Borrower and its Subsidiaries in accordance with the Approved Development Budgets solely with respect to the Projects.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

LBREP/L-SUNCAL MASTER I LLC

By: _____

Name: Bruce Elieff
Title: Authorized Signatory

[Second Lien Credit Agreement]

LEHMAN BROTHERS INC.,
    as Arranger

By: _____

Name:
Title:    Francis X. Gilhool
        Authorized Signatory

LEHMAN COMMERCIAL PAPER INC.,
    as Syndication Agent

By: _____

Name:
Title:    Francis X. Gilhool
        Authorized Signatory

LEHMAN COMMERCIAL PAPER INC.,
    as Administrative Agent

By: _____

Name:
Title:    Francis X. Gilhool
        Authorized Signatory

[Second Lien Credit Agreement]

# Exhibit 5

# LBREP/L SunCal Master I, LLC



## $320,000,000

## Senior Secured Credit Facility

*Confidential Information Memorandum*

**November 2005**

## LEHMAN BROTHERS
*Sole Lead Arranger and Sole Lead Bookrunner*

*CONFIDENTIAL*

# TABLE OF CONTENTS

**ADMINISTRATIVE DOCUMENTS**
Notice to Recipients...................................................................................................... iii
Authorization Letter........................................................................................................iv
Syndication Contact List................................................................................................. v
Transaction Schedule......................................................................................................xi
Form of Commitment Advice........................................................................................xii
Administrative Reply Form ...........................................................................................xv

I.      **EXECUTIVE SUMMARY** ....................................................................................I
     A.    Transaction Overview.........................................................................I-1
     B.    Sources and Uses of Funds .................................................................I-4
     C.    Pro Forma Capitalization ....................................................................I-4
     D.    Borrower Structure..............................................................................I-5
     E.    Summary of the Senior Secured Credit Facility .................................I-6
     F.    Overview of SunCal Companies..........................................................I-8
     G.    Summary Financial Information ........................................................I-11

II.     **INVESTMENT CONSIDERATIONS** ................................................................II

III.    **SUMMARY OF TERMS & CONDITIONS** .........................................................III

IV.    **DEVELOPMENT OVERVIEWS** ......................................................................IV

V.     **INDUSTRY AND MARKETS OVERVIEW** .......................................................V

VI.    **MANAGEMENT AND EMPLOYEES OVERVIEW** ..........................................VI

VII.   **EXHIBITS** (posted separately from the Confidential Information Memorandum)
     Exhibit A.    Cushman & Wakefield Appraisal (McAllister Ranch)
     Exhibit B.    Cushman & Wakefield Appraisal (McSweeny Farms)
     Exhibit C.    Cushman & Wakefield Appraisal (SummerWind Ranch)
     Exhibit D.    Cushman & Wakefield Appraisal (Borchard Patterson)

*CONFIDENTIAL*

## NOTICE TO RECIPIENTS

This Confidential Information Memorandum (the "Confidential Memorandum") is based on information supplied by SunCal Companies ("SunCal") and is being furnished through Lehman Brothers Inc. ("LBI") as Sole Lead Arranger. Neither the Sole Lead Arranger nor any of its respective affiliates, employees or representatives make any representation or warranty, express or implied, as to the accuracy or completeness of the information contained herein or any other information (whether communicated in written or oral form) transmitted or made available to prospective participants. The Sole Lead Arranger and its respective affiliates, employees and representatives expressly disclaim any and all liability relating to or resulting from the use of this Confidential Memorandum or such other related information by a prospective participant or any of its affiliates, agents or representatives.

Each recipient of this Confidential Memorandum expressly agrees that by accepting this Confidential Memorandum, the information contained herein and in all related and ancillary documents is not to be used for any purpose other than in connection with its consideration of becoming a participant in the $320,000,000 Senior Secured Credit Facility (the "Credit Facility") of LBREP/L SunCal Master I, LLC (the "Borrower"), that such information is of a confidential nature and that the recipient will treat it in a confidential manner, and that the recipient will not, directly or indirectly, disclose or permit its affiliates, agents or representatives to disclose any of such information to any other person or reproduce this Confidential Memorandum or any related or ancillary documents, in whole or in part, without the prior written consent of the Borrower and the Sole Lead Arranger. Each recipient of this Confidential Memorandum further expressly agrees that the confidentiality and other obligations shall apply to any and all non-public information relating to the Borrower or its affiliates or the Credit Facility which is provided to such recipient subsequent to the delivery of this Confidential Memorandum.

No person has been authorized to provide any information with respect to the Borrower or the Credit Facility, except for the information contained herein. Prospective participants should not rely on any information not contained in or delivered in connection with this Confidential Memorandum. This Confidential Memorandum presents information with respect to the Borrower as of the dates noted herein. Neither the Sole Lead Arranger nor the Borrower intend to update or otherwise revise this Confidential Memorandum following its distribution, and recipients of this Confidential Memorandum should not expect the Sole Lead Arranger or the Borrower to do so. Prospective participants are urged and expected to conduct their own independent due diligence investigation and evaluation of such matters as deemed appropriate concerning the Borrower and the Credit Facility.

The market analysis and financial projections presented in this Confidential Memorandum represent the subjective views of the Borrower's current estimates for future performance based on assumptions which management believes to be reasonable at the time made. The Borrower makes no representation as to the accuracy of such projections. There can be no assurance that management's views are accurate or that management's projections will be realized. Industry experts may disagree with these assumptions and with management's view of the market and the prospects for the Borrower.

Inquiries relating to the information contained in this Confidential Memorandum should be directed to one of the Lehman Brothers representatives shown on the Syndication Contact List.

*CONFIDENTIAL*



**Edward Nolan**
*Chief Financial Officer*

November, 2005

Lehman Brothers Inc.
399 Park Avenue
New York, New York, 10022

Ladies and Gentlemen:

SunCal Companies ("SunCal") hereby authorizes you and your affiliates to distribute the Confidential Information Memorandum dated November 2005 (the "Confidential Memorandum"), in the form as furnished to the undersigned, to potential lenders in connection with the proposed Senior Secured Credit Facility (the "Credit Facility") for LBREP/L SunCal Master I, LLC (the "Borrower"), as described in the Confidential Memorandum.

We have reviewed such Confidential Memorandum and its attachments, and hereby confirm to you and your affiliates, that the statements, estimates and projections contained herein were prepared in good faith based on assumptions which we believe to be reasonable. We also hereby confirm that, to the best of our knowledge, as of the date hereby all information contained in the Confidential Memorandum is correct in all material respects and does not contain any untrue statements of a material fact or omit to state a material fact necessary in order to make the statements contained therein not materially misleading in the light of the circumstances under which such statements were made. It is understood that SunCal does not make any representation or warranty concerning the projections contained in the Confidential Memorandum except that, as of the date such projections were generated, (i) such projections are based on the good faith estimates and assumptions of the management of Borrower and (ii) such estimates and assumptions are believed by such management to be reasonable at the time made. Such projections and the estimates and assumptions on which they are based may or may not prove to be correct. Statements as to the terms and conditions of the Credit Facility are qualified in their entirety by reference to the definitive documentation, to which reference should be made for the full terms and conditions.

Very truly yours,

Edward Nolan
Chief Financial Officer
SunCal Companies

*CONFIDENTIAL*

# SYNDICATION CONTACT LIST

**SUNCAL COMPANIES**
2392 MORSE AVE
IRVINE, CA 92614
PHONE: (949) 777-4000

| | | |
|---|---|---|
| Stephan Z. Elieff<br>*Chief Investment Officer* | Phone:<br>Fax:<br>Email: | (949) 777-4007<br>(949) 777-4207<br>selieff@suncal.com |
| Edward J. Nolan<br>*Chief Financial Officer* | Phone:<br>Fax:<br>Email: | (949) 777-4006<br>(949) 777-4206<br>enolan@suncal.com |
| Marc Magstadt<br>*Chief Operating Officer* | Phone:<br>Fax:<br>Email: | (949) 777-4002<br>(949) 777-4202<br>mmagstadt@suncal.com |
| Robert L Nolan<br>*Executive Vice President* | Phone:<br>Fax:<br>Email: | (949) 777-4003<br>(949) 777-4203<br>rnolan@suncal.com |
| Bruce V. Cook<br>*General Counsel* | Phone:<br>Fax:<br>Email: | (949) 777-4080<br>(949) 777-4280<br>bcook@suncal.com |
| Frank Faye<br>*President, Los Angeles Division* | Phone:<br>Email: | (818) 444-1600<br>ffaye@suncal.com |
| Stan Brown<br>*President, Inland Empire Division* | Phone:<br>Email: | (951) 271-3801<br>sbrown@suncal.com |
| Saif Qureshi<br>*Finance Manager* | Phone:<br>Fax:<br>Email: | (949) 777-4038<br>(949) 777-4238<br>squreshi@suncal.com |
| Michael Masterson<br>*Senior Financial Analyst* | Phone:<br>Fax:<br>Email: | (949) 777-4034<br>(949) 777-4234 (fax)<br>mmasterson@suncal.com |

*CONFIDENTIAL*

# SYNDICATION CONTACT LIST

**LEHMAN BROTHERS**
745 SEVENTH AVENUE
NEW YORK, NY 10019
PHONE:   (212) 526-7000

***Capital Markets***

| | | |
|---|---|---|
| Bill Hughes | Phone: | (212) 528-5884 |
| *Managing Director* | Fax: | (212) 520-0516 |
| | Email: | wihughes@lehman.com |
| | | |
| Chip Heflin | Phone: | (212) 526-3922 |
| *Vice President* | Fax: | (646) 520-0183 |
| | Email: | cheflin@lehman.com |
| | | |
| Evan Weinberg | Phone: | (212) 526-3752 |
| *Analyst* | Fax: | (646) 834-0345 |
| | Email: | eweinber@lehman.com |

*CONFIDENTIAL*

# SYNDICATION CONTACT LIST

**LEHMAN BROTHERS**
745 SEVENTH AVENUE
NEW YORK, NY 10019
PHONE:   (212) 526-7000

### *Sales*

| | | |
|---|---|---|
| Jim Seery<br>*Managing Director* | Phone:<br>Fax:<br>Email: | (212) 526-0825<br>(646) 758-2209<br>jseery@lehman.com |
| Jon Kitei<br>*Managing Director* | Phone:<br>Fax:<br>Email: | (212) 526-5643<br>(646) 758-4669<br>jkitei@lehman.com |
| Jorde Nathan<br>*Managing Director* | Phone:<br>Fax:<br>Email: | (312) 609-8245<br>(646) 758-1616<br>jorde@lehman.com |
| Chris Bodner<br>*Senior Vice President* | Phone:<br>Fax:<br>Email: | (212) 526-5643<br>(646) 758-2491<br>cbodner@lehman.com |
| John McManus<br>*Senior Vice President* | Phone:<br>Fax:<br>Email: | (212) 526-5643<br>(646) 758-4654<br>jmcmanus@lehman.com |
| Jeff Goodwin<br>*Vice President* | Phone:<br>Fax:<br>Email: | (212) 526-5643<br>(646) 758-4601<br>jegoodwi@lehman.com |
| Josh Broder<br>*Associate* | Phone:<br>Fax:<br>Email: | (212) 526-5643<br>(212) 520-0354<br>jbroder@lehman.com |
| Bill O'Connor<br>*Associate* | Phone:<br>Fax:<br>Email: | (312) 609-8245<br>(312) 609-8017<br>wioconno@lehman.com |

*CONFIDENTIAL*

# SYNDICATION CONTACT LIST

**LEHMAN BROTHERS**
10250 CONSTELLATION BLVD.
LOS ANGELES, CA 90067
PHONE:   (310) 481-2600

## *Global Real Estate Investment Banking Group*

| Michael Hartmeier | Phone: | (310) 481-2660 |
| *Managing Director* | Fax: | (310) 481-2701 |
| | Email: | mhartmei@lehman.com |

| Jeremy Wegner | Phone: | (310) 481-2667 |
| *Vice President* | Fax: | (310) 481-2701 |
| | Email: | jwegner@lehman.com |

| David Jaynes | Phone: | (310) 481-2688 |
| *Associate* | Fax: | (646) 834-0265 |
| | Email: | david.jaynes@lehman.com |

| Vikram Patel | Phone: | (310) 481-2669 |
| *Analyst* | Fax: | (310) 481-2701 |
| | Email: | vikram.patel@lehman.com |

*CONFIDENTIAL*

# SYNDICATION CONTACT LIST

**LEHMAN BROTHERS**
399 PARK AVENUE
NEW YORK, NY 10022
PHONE:   (212) 526-7000

### *Global Real Estate Finance Group*

| | | |
|---|---|---|
| Francis X. Gilhool<br>*Managing Director* | Phone:<br>Fax:<br>Email: | (212) 526-6970<br>(646) 758-5334<br>fgilhool@lehman.com |
| Sheila Bjornstad<br>*Senior Vice President* | Phone:<br>Fax:<br>Email: | (212) 526-8943<br>(646) 758-1783<br>sbjornst@lehman.com |
| Thomas Buffa<br>*Vice President* | Phone:<br>Fax:<br>Email: | (212) 526-5153<br>(646) 758-4672<br>tbuffa@lehman.com |
| Tom Chilton<br>*Vice President* | Phone:<br>Fax:<br>Email: | (212) 526-4684<br>(646) 758-5320<br>tchilton@lehman.com |
| Brian Gross<br>*Associate* | Phone:<br>Fax:<br>Email: | (212) 526-4625<br>(646) 758-5331<br>bgross@lehman.com |
| Jeff Mirmelstein<br>*Analyst* | Phone:<br>Fax:<br>Email: | (212) 526-9362<br>(646) 834-2690<br>jmirmels@lehman.com |

*CONFIDENTIAL*

# SYNDICATION CONTACT LIST

**CADWALADER, WICKERSHAM & TAFT LLC**
**LENDER'S COUNSEL**
ONE WORLD FINANCIAL CENTER
NEW YORK, NY 10281
PHONE: (212) 504-6000

| | | |
|---|---|---|
| Christopher McDermott<br>*Partner* | Phone:<br>Fax:<br>Email: | (704) 348-5184<br>(704) 348-5200<br>chris.mcdermott@cwt.com |
| Julian Chung<br>*Special Counsel* | Phone:<br>Fax:<br>Email: | (212) 504-6358<br>(212) 504-6666<br>julian.chung@cwt.com |
| David Viklund<br>*Special Counsel – Real Estate* | Phone:<br>Fax:<br>Email: | (212) 504-6923<br>(212) 504-6666<br>david.viklund@cwt.com |
| Jeffrey Nagle<br>*Associate* | Phone:<br>Fax:<br>Email: | (704) 348-5267<br>(704) 331-4270<br>jeffrey.nagle@cwt.com |
| Atienne Benitez<br>*Staff Attorney* | Phone:<br>Fax:<br>Email: | (212) 504-5622<br>(212) 504-6666<br>atienne.benitez@cwt.com |

*CONFIDENTIAL*

# I. EXECUTIVE SUMMARY

LEHMAN BROTHERS

*CONFIDENTIAL*

# I. EXECUTIVE SUMMARY

## A. Transaction Overview

### The Transaction

SunCal Companies ("SunCal") and Lehman Brothers Real Estate Partners, L.P. ("LBREP") have mandated Lehman Brothers to serve as sole lead arranger and sole bookrunner for a $320 million senior secured credit facility (the "Credit Facility") for LBREP/L SunCal Master I, LLC ("LBREP/SunCal" or the "Borrower"). LBREP/SunCal is a joint venture via a master LLC structure between SunCal and LBREP with 15% and 85% ownership, respectively. The $320 million Credit Facility will be comprised of: a (i) 3-year $75 million first lien revolver (the "Revolver"), a (ii) 4-year $160 million first lien term loan (the "First Lien Term Loan") and a (iii) 5-year $85 million second lien term loan (the "Second Lien Term Loan"). Proceeds from the Facility will be used to: (i) repay approximately $62 million of existing indebtedness, (ii) pre-fund approximately $29 million of future development needs which shall be deposited into a separate cash development account (the "Development Account," of which $25 million will be held as restricted cash in the debt service reserve account (the "Debt Service Reserve")), (iii) fund a $144 million return of principal equity, and (iv) fund related fees and expenses.

The collateral for the Credit Facility will be a perfected priority mortgage security interest in four separate land parcels, currently comprised of undeveloped farmland and ranchland located in California (the "Developments") and pledges of equity in the entities which own the Developments. SunCal intends to develop the infrastructure at the Developments which includes: site preparation and grading, street improvements, water improvements, utilities, sewers and drainage. Upon completion of SunCal's infrastructure development, the Company intends to sell the finished land lots to homebuilders on a bulk basis.

### Overview of SunCal Companies

SunCal Companies is California's largest private developer of master-planned communities, specializing in large scale mixed-use and re-use development projects. SunCal acquires and develops large-scale development sites for sale to leading homebuilders and commercial developers and is recognized throughout the homebuilding community for its ability to create highly desirable developments. SunCal recently completed The Landings, Lincoln Crossing and Amerige Heights and is currently developing the Ritter Ranch and Northlake master-planned communities, among other residential and commercial developments (SunCal currently has approximately 100,000 lots under development). SunCal sold 2,882 lots in 2004 and has sold 3,043 lots in 2005 year to date. Founded in 1973, SunCal is based in Irvine, CA and has 242 employees as of November 2005.

### Overview of Lehman Brothers Real Estate Partners

Lehman Brothers' Real Estate Private Equity Group is a full-service real estate merchant banking business, which operates two opportunistic equity funds aggregating $4.0 billion of equity capital and one mezzanine investment fund aggregating $1.1 billion of equity capital.

The funds are an extension of Lehman Brothers' global real estate franchise which has a long and successful track record advising, underwriting and investing in over $125 billion of real estate transactions since 2000. The funds are invested and managed by a team of approximately 80 professionals based in New York, London and Tokyo.

*CONFIDENTIAL*

## Overview of the Developments

The Developments consist of four master-planned communities located in Southern California encompassing a total of 12,185 lots on 5,452 acres. Construction has commenced at McAllister Ranch, McSweeny Farms and SummerWind Ranch. The following table provides an overview of the Developments:

| DEVELOPMENT OVERVIEW | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Master-Planned Community | City | County | Acres | # of Lots | Gross Revenue ($mm) | SunCal Total Net Value [1] ($mm) | Appraised Net Value [2] ($mm) | Appraised As-Is Value [3] ($mm) |
| McSweeny Farms | Hemet | Riverside | 673 | 1,640 | $180.3 | $123.7 | $119.5 | $96.7 |
| McAllister Ranch | Bakersfield | Kern | 2,071 | 6,087 | 631.1 | 434.0 | 498.7 | 191.5 |
| Borchard Patterson [4] | Oxnard | Ventura | 117 | 775 | 196.7 | 99.6 | 114.2 | 41.4 |
| SummerWind Ranch [5] | Calimesa | Riverside | 2,591 | 3,683 | 478.5 | 211.0 | 264.6 | 114.8 |
| Total | | | 5,452 | 12,185 | $1,486.6 | $868.3 | $997.0 | $444.4 |



**DEVELOPMENT LOCATIONS**

**McAllister Ranch**
Key Statistics
6,087 Units
2,071 Acres
$434 mm Net Value
$192 mm As-Is Value

**Borchard Patterson**
Key Statistics
775 Units
117 Acres
$100 mm Net Value
$41 mm As-Is Value [1]

**SummerWind Ranch**
Key Statistics
3,683 Units
2,591 Acres
$211 mm Net Value
$115 mm As-Is Value [1]

**McSweeny Farms**
Key Statistics
1,640 Units
673 Acres
$124 mm Net Value
$97 mm As-Is Value

(1)  *Total Net Value represents total revenue from land sales, less overhead expenses, land acquisition costs, development expenses, carrying costs and sales and marketing expenses per SunCal's projections.*
(2)  *Aggregate Total Net Value of $1,084.2 million per Cushman & Wakefield's independent appraisal for each of the four projects. Excludes future land acquisition costs at Borchard Patterson ($48.9 million) and SummerWind Ranch ($38.2 million).*
(3)  *As-Is Value of $514.3 million per Cushman & Wakefield's appraisal for each of the four projects excluding present value of future land acquisition costs at Borchard Patterson ($35.2 million) and SummerWind Ranch ($34.7 million).*
(4)  *Borchard Patterson has an expected purchase date of April 2007. Over $40 million of hard deposits have been made to date.*
(5)  *Acquisition of approximately half of the project is under contract with a target acquisition date of May 2006.*

*CONFIDENTIAL*

| CREDIT FACILITY OVERVIEW | | | | |
|---|---|---|---|---|
| **Tranche** | **Amount** | **Tenor** | **Initial Drawn Spread** | **Undrawn Spread** |
| Revolver | $75,000,000 | 3 years | Libor + TBD | TBD |
| First Lien Term Loan | $160,000,000 | 4 years | Libor + TBD | N/A |
| Second Lien Term Loan | $85,000,000 | 5 years | Libor + TBD | N/A |

*CONFIDENTIAL*

## B. Sources and Uses of Funds

The following table outlines the sources and use of funds for the transaction:

| SOURCES AND USES OF FUNDS | | | |
|---|---|---|---|
| *($ in millions)* | | | |
| **Sources** | | **Uses** | |
| Revolver ($75mm) | $0.0 | Repay Existing Debt | $61.7 |
| First Lien Term Loan | 160.0 | Equity Dividend | 144.0 |
| Second Lien Term Loan | 85.0 | Prefund Cash Development Account [1] | 28.7 |
| | | Transaction Fees and Expenses | 10.6 |
| **Total Sources** | **$245.0** | **Total Sources** | **$245.0** |

(1)  *Includes Debt Service Reserve of $25 million.*

## C. Pro Forma Capitalization

The following table summarizes the pro forma capitalization of the Borrower.

| PRO FORMA CAPITALIZATION AND CREDIT STATISTICS | | | |
|---|---|---|---|
| *($ in millions)* | | | |
| **Capitalization Table** | **PF 11/30/05** | **Credit Statistics** | **PF 11/30/05** |
| Cash and Cash Equivalents | $3.7 | **SunCal Estimate** | |
| Debt Service Reserve | 25.0 | First Lien Debt / Total Net Value | 18.4% |
| | | Total Debt / Total Net Value | 28.2% |
| Revolver | $0.0 | | |
| First Lien Debt | 160.0 | **Cushman Total Net Value** | |
| Second Lien Debt | 85.0 | First Lien Debt / Total Net Value | 16.0% |
| Total Debt | $245.0 | Total Debt / Total Net Value | 24.6% |
| Net Debt | 216.3 | | |
| | | **Cushman As-Is Value** | |
| SunCal Total Net Value [1] | $868.3 | First Lien Debt / As-Is Value | 36.0% |
| Cushman Total Net Value [2] | 997.0 | Total Debt / As-Is Value | 55.1% |
| Cushman As-Is Value [3] | 444.4 | | |
| | | Cash + Debt Service Reserve + Revolver Capacity | $103.7 |

(1)  *Total Net Value represents total revenue from land sales, less overhead expenses, land acquisition costs, development expenses, carrying costs and sales and marketing expenses per SunCal's projections.*

(2)  *Aggregate Total Net Value of $1,084.2 million per Cushman & Wakefield's appraisal for each of the four projects adjusted for future land acquisition costs at Borchard Patterson ($48.9 million) and SummerWind Ranch ($38.2 million).*

(3)  *As-Is Value of $514.3 million per Cushman & Wakefield's appraisal for each of the four projects excluding present value of future land acquisition costs at Borchard Patterson ($35.2 million) and SummerWind Ranch ($34.7 million).*

*CONFIDENTIAL*

## D. Borrower Structure

LBREP/L SunCal Master I, LLC, a joint venture between SunCal and LBREP, is the direct owner of the Developments and will serve as the Borrower under the Facility. LBREP/SunCal is 15% owned by SCC Ranch Ventures, LLC (an indirect, wholly owned subsidiary of SunCal) and 85% owned by LBREP Lakeside SC Master I, LLC (a subsidiary of LBREP).

LBREP/L SunCal Master I, LLC owns 100% of the McSweeny Farms and McAllister Ranch entities. The Borchard Patterson property is under contract to be purchased by SunCal and the Company anticipates the purchase will be completed during the second quarter of 2006. Currently, SunCal owns approximately 50% of the land to be developed at the SummerWind project. The remaining 50% is under contract to be purchased and is expected to close in May 2006. The following table summarizes the structure of the Borrower under the Credit Facility:



*CONFIDENTIAL*

## E. Summary of the Senior Secured Credit Facility

| SUMMARY TERMS | |
|---|---|
| *Borrower:* | LBREP/L SunCal Master I, LLC (the "Borrower"). |
| *Guarantors:* | Each of the Borrower's direct and indirect domestic subsidiaries. |
| *Sole Bookrunner/Arranger:* | Lehman Brothers Inc. |
| *Administrative Agent:* | Lehman Commercial Paper Inc. (the "Agent"). |
| *Facility:* | $320.0 million senior secured credit facility (the "Credit Facility") consisting of:<br>- $75.0 million 3-year senior secured first lien revolver (the "Revolver");<br>- $160.0 million 4-year senior secured first lien term loan (the "First Lien Term Loan"); and<br>- $85.0 million 5-year second lien term loan (the "Second Lien Term Loan"). |
| *Use of Proceeds:* | Proceeds from the Facility, on the closing date, shall be used to: (i) repay approximately $62 million of existing indebtedness, (ii) pre-fund approximately $29 million of future development needs which shall be deposited into a separate cash development account (the "Development Account," of which $25 million will be held as restricted cash in the debt service reserve account (the "Debt Service Reserve")), (iii) fund a $144 million return of principal equity, and (iv) fund related fees and expenses. |
| *Collateral:* | The First Lien Term Loan and Revolver shall be secured by a first priority security interest in four separate undeveloped land parcels located in California, pledges of Purchase and Sale Agreements for Borchard and a portion of SummerWind Ranch, first priority security interest in the Development Account and operating accounts and pledges of equity of the Borrower's ownership interests in the Developments (collectively, the "Collateral"). The Second Lien Term Loan shall be secured by a second priority security interest in the Collateral. |
| *Anticipated Pricing:* | Revolver: Libor plus TBD.<br>First Lien Term Loan: Libor plus TBD.<br>Second Lien Term Loan: Libor plus TBD. |
| *Unused Revolver Fee:* | TBD bps on the unused portion of the Revolver, paid quarterly in arrears. |
| *Amortization:* | First Lien Term Loan: 0.25% paid quarterly, with the remainder due at maturity.<br>Second Lien Term Loan: Bullet payment due at maturity. |
| *Voluntary Prepayments:* | First Lien Term Loan: Prepayable at any time without premium or penalty.<br>Second Lien Term Loan: Callable at 103% in Yr 1, 102% in Yr 2, 101% in Yr 3 and at par thereafter. |
| *Development Account:* | 100% of revenue from land sales and CFD proceeds shall be deposited into the Development Account administered by the Agent to be released to the operating account for certain permitted expenditures. |
| *Mandatory Prepayments:* | The following amounts shall be applied to prepay the Credit Facility in an order to be determined:<br>- 50% of net proceeds from any equity issuance; and<br>- 100% of net proceeds from any debt issuance. |
| *Excess Cash Flow:* | For any fiscal quarter, (i) the net cash proceeds of the sale of real property or interests in real property ("Cash From Land Sales") during such fiscal quarter less budgeted real property expenses for such fiscal quarter less the aggregate amount of interest and principal payments made during such fiscal quarter by the Credit Parties less certain tax distributions made during such fiscal quarter less the aggregate amount of Permitted CFD investments made during such fiscal quarter by the Credit Parties plus (ii) the net proceeds from the issuance of any permitted |

*CONFIDENTIAL*

|  | CFD Bonds shall be applied by the Borrower in the following order: |
|---|---|
|  | - Repay any amounts outstanding under the Revolver until reduced to zero; |
|  | - At Borrower's option, up to $50 million may be retained in the Development Account to fund future development expenditures; |
|  | - Prior to the reduction of term debt to $122.5 million, proceeds shall be used to pay down term debt in order of lien priority; and |
|  | - Following the reduction of term debt to $122.5 million, no less than 50% of remaining Excess Cash Flow may be used to repay term debt and no more than 50% may be distributed to sponsors. |
| *Financial Covenants:* | Shall include but not be limited to: |
|  | - Maximum total debt to total net value; |
|  | - Maximum first lien debt to total net value; and |
|  | - Minimum Liquidity Requirement (Debt Service Reserve + Cash + Revolver Availability). |
| *Debt Service Reserve:* | $25 million of restricted cash required until total debt has been reduced to $122.5 million. |

# Exhibit 6

David R. Zaro (CA Bar No. 124334)
Email: dzaro@allenmatkins.com
Yale K. Kim (CA Bar No. 188895)
Email: ykim@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
515 South Figueroa Street, 9th Floor
Los Angeles, CA 90071-3398
Telephone: (213) 622-5555
Facsimile: (213) 620-8816

- and -

George A. Davis (NY Bar No. 2761)
Email: george.davis@cwt.com
Andrew M. Troop (NY Bar No. 04556320)
Email: andrew.troop@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

Counsel for Lehman Commercial Paper Inc.,
as First Lien Administrative Agent for the First Lien Lenders

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| **In re:** | **Case No. 8:08-15588 (ES)** |
| **LBREP/L-SunCal Master I LLC et al.,** | Jointly Administered with Case Nos.: 8:08-bk-15637-ES; 8:08-bk-15639-ES and 8:08-bk-15640-ES |
| **Debtor.** | **Chapter 11** |
| __ Affects LBREP/L-SunCal Master I LLC Only | **RESPONSE OF LEHMAN COMMERCIAL PAPER INC., AS FIRST LIEN ADMINISTRATIVE AGENT FOR THE FIRST LIEN LENDERS, TO LBREP LAKESIDE SC MASTER I, LLC'S FIRST SET OF DOCUMENT REQUESTS** |
| __ Affects LBREP/L-SunCal McAllister Ranch LLC Only | |
| __ Affects LBREP/L-SunCal McSweeny Farms LLC Only | |
| __ Affects LBREP/L-SunCal Summerwind Ranch LLC Only | |
| X_ Affects All Debtors | |

Lehman Commercial Paper Inc., in its capacity as administrative agent to the First Lien Lenders

("LCPI"), submits the following responses and objections (the "Responses") to LBREP Lakeside

Master I, LLC's ("Lehman Lakeside") First Set of Document Requests to LCPI (the "Requests").

## GENERAL OBJECTIONS

The following General Objections are incorporated into each of the specific Responses below as

if fully repeated in each Response and are intended, and shall be deemed, to be in addition to any

specific objection included therein. These Responses are not, and shall not be construed as, an

admission of relevance or admissibility into evidence of any response, or of the propriety of the

Requests.

      1.    LCPI objects to the Requests to the extent that they seek to impose

obligations on LCPI beyond those set forth in the Federal Rules of Bankruptcy Procedure (the

"FRBP"), Federal Rules of Civil Procedure (the "FRCP"), the Local Rules of the United States

Bankruptcy Court for the Central District of California (the "Local Rules"), or the Individual

Practices of Hon. Judge Erithe A. Smith (the "Individual Practices"), or any other statute, rule or

order applicable to this action.

      2.    LCPI objects to the Requests to the extent that they seek responses that

would reveal information protected from disclosure by the attorney-client privilege or work

product doctrine or any other applicable immunity, privilege, protection or rule of confidentiality

that makes information non-discoverable. LCPI further objects to the Requests to the extent that

they seek responses that would reveal information prepared in anticipation of litigation or for trial

of this or any matter. LCPI will provide responses which are non-privileged and otherwise

properly discoverable. By providing such responses, LCPI does not waive any privileges. To the

extent that a Request may be construed as seeking a response that would reveal privileged or

protected information or documents, LCPI hereby claims such privilege and invokes such

-2-

protection. The fact that LCPI does not specifically object to an individual request on the ground that it seeks a response that would reveal privileged or protected information or documents shall not be deemed a waiver of the protection afforded by the attorney-client privilege, the work product doctrine or any other applicable immunity, privilege, or protection. Any inadvertent identification or production of documents subject to such privilege or protection is not intended as a waiver of, and shall not waive, any such privilege or protection, and LCPI reserves the right to the return of all copies of any such document(s) inadvertently produced in response to the requests.

3.    LCPI objects to the Requests on the grounds that they are overly broad, unduly burdensome, vague, speculative, ambiguous, duplicative, cumulative and/or seek information that is not relevant to the claim or defense of any party to the action or reasonably likely to lead to the discovery of admissible evidence.

4.    LCPI objects to the Requests on the grounds that they seeks documents already within the possession, custody or control of Lehman Lakeside. LCPI objects to the requests to the extent they purport to obligate LCPI to produce documents not within the possession, custody or control of LCPI. LCPI will conduct a reasonable search and, subject to general and specific objections, will produce responsive non-privileged documents.

5.    LCPI's Responses are made without waiving, in any way: (a) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (b) the right to object on any basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

6.    In providing these responses and objections to the Requests, LCPI does not in any way waive or intend to waive, but rather intends to preserve and is preserving the following:

-3-

a.      all objections as to competence, relevance, materiality and admissibility of the Requests or the Responses, or the subject matter thereof or information provided pursuant thereto;

b.      all objections as to vagueness, ambiguity and undue burden;

c.      all rights to object on any ground to the use of any of said Responses, or the subject matter thereof, in any subsequent proceedings, including but not limited to, the trial of this or any other action; and

d.      all rights to object on any ground to any request for further responses to these or any other discovery requests involving or related to the subject matter of the Requests.

7.      A statement that responsive documents will be produced shall not constitute a representation that any responsive documents exist.

8.      Where documents are only partially responsive to a request, LCPI reserves the right to redact any unresponsive or irrelevant portions.

9.      LCPI reserves the right to correct and/or supplement the Responses consistent with further investigation and discovery.

Subject to the foregoing General Objections, which are incorporated into each Response and have the same force and effect as though fully set forth therein, LCPI responds to the Requests as follows:

## SPECIFIC RESPONSES AND OBJECTIONS

**Document Request No. 1:**

All documents regarding LCPI's efforts in sizing the January 2006 loans, including any assessment of the sources and uses of funds.

**Response to Document Request No. 1:**

LCPI objects to Document Request No. 1 on the grounds that it is vague and ambiguous, including, in particular, the terms "efforts," "sizing," "sources" and "uses". LCPI further objects to Document Request No. 1 on the grounds that it is overly broad and unduly burdensome

Subject to and without waiving the General Objections stated above, which are incorporated herein in their entirety, and the specific objections set forth above, LCPI responds to Document Request No. 1 as follows:

LCPI will produce responsive, non-privileged documents in accordance with an electronic data protocol to be negotiated by LCPI and Lehman Lakeside, and pursuant to a confidentiality order to be negotiated by LCPI and Lehman Lakeside.

**Document Request No. 2:**

All documents regarding LCPI's role as the sole lead arranger and sole bookrunner for the January 2006 loans.

**Response to Document Request No. 2:**

LCPI objects to Document Request No. 2 to the extent that it assumes that LCPI served as "sole lead arranger" and "sole bookrunner" for the January 2006 loans.

Subject to and without waiving the General Objections stated above, which are incorporated herein in their entirety, and the specific objections set forth above, LCPI responds to Document Request No. 2 as follows:

LCPI served as syndication agent and administrative agent for the January 2006 loans. Lehman Brothers Inc. served as the sole lead arranger and sole bookrunner for the January 2006 loans. Accordingly, LCPI will not produce documents in response to this request.

**Document Request No. 3:**

All documents previously provided to the Trustee or his counsel regarding LCPI's involvement with the January 2006 loans.

**Response to Document Request No. 3:**

LCPI objects to Document Request No. 3 on the grounds that it is vague and ambiguous, including, in particular, the phrase "LCPI's involvement with the January 2006 loans." LCPI further objects to Document Request No. 3 on the grounds that it is overly broad.

Subject to and without waiving the General Objections stated above, which are incorporated herein in their entirety, and the specific objections set forth above, LCPI responds to Document Request No. 3 as follows:

LCPI will produce responsive documents previously provided to the Trustee or his counsel, pursuant to a confidentiality agreement to be negotiated by LCPI and Lehman Lakeside.

**Document Request No. 4:**

Documents sufficient to show the current holders of the First Lien Debt, including holdings under the First Lien Term Loan and the Revolver, and the amounts of those holdings.

**Response to Document Request No. 4:**

Subject to and without waiving the General Objections stated above, LCPI responds to Document Request No. 4 as follows:

LCPI will produce documents sufficient to show the current holders of the First Lien Debt and the amounts of their holdings, pursuant to a confidentiality agreement to be negotiated by LCPI and Lehman Lakeside

**Document Request No. 5:**

All documents or communications between LCPI and any third parties discussing or providing authorization to LCPI to enter into the Term Sheet.

**Response to Document Request No. 5:**

LCPI objects to Document Request No. 5 on the grounds that it is overly broad and unduly burdensome. LCPI further objects to Document Request No. 5 on the grounds that it is vague and ambiguous. LCPI further objects to Document Request No. 5 on the grounds that it seeks information that is neither relevant to this proceeding, nor reasonably calculated to lead to the discovery of admissible evidence. LCPI further objects to Document Request No. 5 on the

-6-

1   grounds that it impermissibly seeks information protected by Federal Rule of Evidence ("FRE")

2   408. LCPI further objects to Document Request No. 5 on the ground that it seeks information

3   protected by the attorney-client privilege, the attorney work product doctrine, and/or any other

4   applicable immunity, privilege, protection or rule of confidentiality that makes the information

5   sought non-discoverable.

6       Subject to and without waiving the General Objections stated above, which are

7   incorporated herein in their entirety, and the specific objections set forth above, LCPI responds to

8   Document Request No. 5 as follows:

9       LCPI will not produce documents in response to this request.

10 **Document Request No. 6:**

11

12       All documents or communications between LCPI and the other parties to the Term Sheet,

13   including but not limited to drafts of the Term Sheet or any alternative proposals.

14 **Response to Document Request No. 6:**

15       LCPI objects to Document Request No. 6 on the grounds that it is overly broad and

16   unduly burdensome. LCPI further objects to Document Request No. 6 on the grounds that it

17   seeks information that is neither relevant to this proceeding, nor reasonably calculated to lead to

18   the discovery of admissible evidence. LCPI further objects to Document Request No. 6 on the

19   grounds that it impermissibly seeks information that is protected by FRE 408. LCPI further

20   objects to Document Request No. 6 on the grounds that it seeks information protected by the

21   attorney-client privilege, the attorney work product doctrine, and/or any other applicable

22   immunity, privilege, protection or rule of confidentiality that makes the information sought non-

23   discoverable.

24       Subject to and without waiving the General Objections stated above, which are

25   incorporated herein in their entirety, and the specific objections set forth above, LCPI responds to

26   Document Request No. 6 as follows:

27       LCPI will not produce documents in response to this request.

28

-7-

**Document Request No. 7:**

Documents sufficient to show the identity of the Client Representative at the time of the authorization of the Term Sheet.

**Response to Document Request No. 7:**

LCPI objects to Document Request No. 7 on the grounds that it is vague and ambiguous, in particular the use of the term "Client Representative," as no such position existed at LCPI. LCPI further objects to Document Request No. 7 on the grounds that it seeks information that is neither relevant to this proceeding, nor reasonably calculated to lead to the discovery of admissible evidence. LCPI further objects to Document Request No. 7 on the grounds that it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Subject to the General Objections stated above, which are incorporated herein in their entirety, and the specific objections set forth above, LCPI responds to Document Request No. 7 as follows:

LCPI will not produce documents in response to this request.

**Document Request No. 8:**

Documents sufficient to show the scope of Cadwalader's representation of LCPI in the Bankruptcy Proceedings.

**Response to Document Request No. 8:**

LCPI objects to Document Request No. 8 on the grounds that it seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. LCPI further objects to Document Request No. 8 on the grounds that it seeks information that is neither relevant to this proceeding, nor reasonably calculated to lead to the discovery of admissible evidence. LCPI further objects to Document Request No. 8 on the grounds that it seeks information that is available in the public domain.

1    Subject to and without waiving the General Objections stated above, which are

2    incorporated herein in their entirety, and the specific objections set forth above, LCPI responds to

3    Document Request No. 8 as follows:

4    LCPI will produce publicly available documents that identify the scope of Cadwalader's

5    representation of LCPI.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    December 4, 2009

2    New York, New York

3                                    ALLEN MATKINS LECK GAMBLE
                                     MALLORY & NATSIS LLP

4
                                     David R. Zaro, Esq.
5                                    Yale K. Kim, Esq.
                                     515 South Figueroa Street, 9th Floor
6                                    Los Angeles, CA 90071-3398
                                     Telephone: (213) 622-5555
7                                    Facsimile: (213) 620-8816

8
                                     -and-
9

10                                   CADWALADER, WICKERSHAM & TAFT LLP

11                                   *Andrew Troop by: SMS*

12                                   George A. Davis (NY Bar No. 2761)
                                     Andrew M. Troop (NY Bar No. 4556320)
13                                   One World Financial Center
                                     New York, New York  10281
14                                   Telephone:  (212) 504-6000
                                     Facsimile:  (212) 504-6666
15

16                                   Counsel for Lehman Commercial Paper Inc.,
                                     as Administrative Agent to the First Lien Lenders

17

18

19

20

21

22

23

24

25

26

27

28

                                     -10-