**Hearing Date: September 22, 2010 at 10:00 a.m.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg
Scott Davidson

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

*Counsel for the Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No.:  08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------------- x

**OMNIBUS REPLY TO OBJECTIONS  TO MOTION OF
LEHMAN COMMERCIAL PAPER INC. PURSUANT TO SECTION 105
OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019 FOR APPROVAL OF THAT CERTAIN AMENDED AND
RESTATED COMPROMISE BY AND AMONG LEHMAN COMMERCIAL
PAPER INC., ALFRED H. SIEGEL, AS CHAPTER 11 TRUSTEE
FOR THE SUNCAL DEBTORS, AND THE OFFICIAL COMMITTEE OF
<u>UNSECURED CREDITORS IN THE SUNCAL BANKRUPTCY CASES</u>**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

# TABLE OF CONTENTS

Page No.

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ....................................................................................................... 4
    A.    The Fidelity Responsive Pleading ................................................. 4
    B.    The Second Lien Agent's Responsive Pleading ..................................... 5
    C.    LBREP Lakeside Responsive Pleading ................................................ 7
        (i)      LCPI is Not Profiting From Any Wrongdoing ........................................ 8
        (ii)     LBREP Lakeside's "Mary Carter" Argument is Unavailing ................... 10
        (iii)    Section 15-108 of the New York General Obligations Law is
              Inapplicable ........................................................................ 11
        (iv)    LBREP Lakeside's Remaining Arguments Lack Merit ........................... 13
             (a)     The Settlement Does Not Give Rise to Any Conflicts of
                   Interest ....................................................................... 13
             (b)     LBREP Lakeside's Ability to Defend Itself Against
                   Fraudulent Transfer Claims is Not Prejudiced by the
                   Settlement ................................................................... 14

CONCLUSION .................................................................................................. 15

## TABLE OF AUTHORITIES

CASES

*Carr v. Hoy,*
    2 N.Y.2d 185 (1957) ........................................................................................8

*Drexel Burnham Lambert Group v. Claimants Identified on Schedule I (In re Drexel
    Burnham Lambert Group),*
    995 F.2d 1138 (2d Cir. 1993)............................................................................3

*Fromer v. Yogel,*
    50 F. Supp. 2d 227 (S.D.N.Y. 1999)...............................................................11

*Glaser v. M. Fortunoff,*
    71 N.Y.2d 643 (1988) ......................................................................................11

*Gonzales v. Armac Industries, Ltd.,*
    81 N.Y.2d 1 (1993) ..........................................................................................11

*Imperator Realty Co. v. Tull,*
    228 N.Y. 447 (1920) ..........................................................................................8

*In re Amp'd Mobile, Inc.,*
    404 B.R. 118 (Bankr. D. Del. 2009) ...............................................................12

*Kiobel v. Millson,*
    592 F.3d 78 (2d Cir. 2010)...............................................................................14

*Merchants Bank of New York v. Credit Suisse Bank,*
    585 F. Supp. 304 (S.D.N.Y. 1984) ..................................................................11

*Moore v. Bay,*
    284 U.S. 4 (1931).........................................................................................9, 12

*Overseas Nat'l Airways, Inc. v. U. S.,*
    766 F.2d 97 (2d Cir. 1985)...............................................................................11

*Riggs v. Palmer,*
    115 N.Y. 506 (1889) ..........................................................................................8

*Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.),*
    698 F.2d 571 (2d Cir. 1983)...............................................................................6

*Southern Blvd., Inc. v. Martin Paint Stores,*
    207 B.R. 57 (Bankr. S.D.N.Y. 1997) ................................................................6

*Tucker v. Mashomack Fish and Game Preserve Club, Inc.*,
606 N.Y.S.2d 79 (Sup. Ct. 1993) ............................................................................8

*U.S.* v. *Markiewicz*,
978 F.2d 786 (2d Cir. 1992)...................................................................................14

*U. S.* v. *Williams,*
341 U.S. 58 (1951)..................................................................................................14

*Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group,*
*Inc.)*,
134 B.R. 499 (Bankr. S.D.N.Y. 1991) ..............................................................3, 15

*Wausau Bus. Ins. Co. v. Turner Constr. Co.*,
No. 99 Civ. 0682 (RWS), 2001 WL 604188 (S.D.N.Y. June 4, 2001) ..................10

## STATUTES

Section 105 of the Bankruptcy Code ............................................................................9

Section 15-108 of the New York General Obligations Law...................................11, 12

## OTHER AUTHORITIES

5 COLLIER ON BANKRUPTCY, ¶ 544.06[4] (Alan N. Resnick & Henry J. Sommer eds., 16th
ed. 2010) ............................................................................................................9, 10

Fed. R. Evid. 102 .....................................................................................................14

Lehman Commercial Paper Inc. ("LCPI") files this reply ("Reply") (i) to the three pleadings[1] (collectively, the "Responsive Pleadings") filed in response to the *Motion of Lehman Commercial Paper Inc. Pursuant to Section 105 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for Approval of that Certain Amended and Restated Compromise by and Among Lehman Commercial Paper Inc., Alfred H. Siegel, as Chapter 11 Trustee for the SunCal Debtors, and the Official Committee of Unsecured Creditors in the SunCal Bankruptcy Cases*, dated September 2, 2010 [Docket No. 11153] (the "LCPI Settlement Motion"), and (ii) in further support of the LCPI Settlement Motion. LCPI is also filing simultaneously herewith the Declaration of F. Robert Brusco ("Brusco Declaration") in support of the LCPI Settlement Motion. In support of this Reply, LCPI respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      None of the bona fide creditors of LCPI have objected to the LCPI Settlement Motion. Even the three parties who filed Responsive Pleadings to the LCPI Settlement Motion have not questioned whether the settlement is beneficial from LCPI's perspective.

2.      The LCPI Settlement Motion sets forth the basis as to why the Amended Term Sheet is a fair and reasonable compromise that is in the best interests of the LCPI bankruptcy estate. The settlement ("Settlement") embodied in the Amended Term Sheet (a) provides for a process to realize on the First Lien Lenders' collateral -- that being, a turnover of certain cash collateral and a contemplated sale of the Properties[2] satisfactory to LCPI -- and

---

[1]   The three entities that filed Responsive Pleadings are:  (i) Fidelity National Title Insurance Company ("Fidelity"); (ii) Gramercy Warehouse Funding I, LLC ("Second Lien Agent"); and (iii) LBREP Lakeside SC Master I, LLC ("LBREP Lakeside," and with Fidelity and the Second Lien Agent, the "Responding Parties").

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the LCPI Settlement Motion or the Amended Term Sheet.

an allocation of the sale proceeds which is reasonable from the perspective of the LCPI bankruptcy estate, (b) saves administrative expenses for the LCPI bankruptcy estate, and (c) provides for releases for the LCPI bankruptcy estate, which eliminates risks of litigation for the LCPI bankruptcy estate.

        3.      LCPI faces the reality that the SunCal Trustee is approaching the two year statute of limitations to bring avoiding-powers claims. Either the SunCal Trustee will settle with LCPI or he will sue LCPI.  The same holds true with entities that are not parties to the Amended Term Sheet.  For more than a year, LCPI has been trying to resolve issues with the SunCal Trustee.  The Amended Term Sheet reflects the extensive effort made by LCPI to effectuate a complex and complete settlement between the LCPI estate and the other First Lien Lenders on the one hand, and the SunCal Trustee on behalf of the SunCal Debtors, on the other hand.

        4.      LCPI can not force the SunCal Trustee to settle with other persons that he might sue.  And, the SunCal Trustee is not required to settle with all such persons at the same time.  It is more the norm than the exception that trustees reach resolutions with separate persons, and then build on that success to make incremental progress in their cases.  Oftentimes, the approval of one trustee settlement acts as a catalyst for further trustee settlements.  In an ideal world, it would be nice if all persons can resolve their differences at the same time without much time and expense.  That is not the reality of the almost two year old SunCal case.  Thus, the Amended Term Sheet reflects only a resolution for the parties to the Amended Term Sheet. The non-settling parties have their rights preserved, and they are free at any time to settle (or litigate) their issues with the SunCal Trustee and, to the extent any exist, with LCPI.

        5.      LCPI approached this settlement with the perspective of what is in the best interests of the creditors of its estate.  This "separate entity" approach is consistent with the

approach taken by all the Debtors and non-Debtor Lehman affiliates, and the plan of reorganization filed by the Debtors in these cases.

6.        LCPI also recognized that the Settlement was an imperative in order to maximize the value of the Properties. A litigation war with the SunCal Trustee, besides being expensive and with risk, would span two separate bankruptcy courts, and the First Lien Lenders' cash collateral would continue to be dissipated, while realization opportunities for the Properties could be potentially permanently lost.

7.        The Responding Parties' goals are to cause a delay or denial of the LCPI Settlement Motion in order to leverage a favorable resolution of their issues against the SunCal Trustee and/or LCPI. The Responding Parties' goals to use leverage against LCPI are, by definition, not in the best interests of the LCPI estate. And, the flawed arguments the Responding Parties make to promote their goals are not a valid basis to object to the approval of the Amended Term Sheet. LCPI should not be required to risk the benefits of its settlement with the SunCal Trustee so the Responding Parties can try and get a better deal for themselves. The relevant standard for this Court to approve the LCPI Settlement Motion is (a) whether it is in the best interests of the LCPI estate? (*see Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991)); and (b) does the Settlement unfairly prejudice the rights of non-settling parties with a direct interest in the Settlement? (*see Drexel Burnham Lambert Group v. Claimants Identified on Schedule I (In re Drexel Burnham Lambert Group)*, 995 F.2d 1138, 1147 (2d Cir. 1993). The answers to both of these questions is clearly yes and thus compels this Court's approval of the LCPI Settlement Motion.

## ARGUMENT

A.     **The Fidelity Responsive Pleading**

8.      The Fidelity Responsive Pleading was titled as a "limited objection and reservation of rights." The Responsive Pleading concludes that save for its limited objection, Fidelity actually supports the Court's approval of the Amended Term Sheet. *See* Fidelity Responsive Pleading, ¶ 46.

9.      In reality, the limited objection aspect of the Fidelity Responsive Pleading is based on a misplaced concern. Fidelity raised a perceived ambiguity in the Amended Term Sheet that the First Lien Lenders may be trying to shift their obligations under the relevant title insurance policies to the SunCal Trustee. That is not a correct interpretation of the Amended Term Sheet. The First Lien Lenders are not attempting to shift their obligations under the relevant title insurance policies. The language which Fidelity focused on reflects the additive protection bargained for by the First Lien Lenders that the SunCal Trustee will reasonably cooperate to assist the First Lien Lenders, and derivatively Fidelity, in sorting through title insurance policy issues relating to Senior Loans.

10.     The remainder of Fidelity's Responsive Pleading is really in the nature of a "reservation of rights" and not an objection to the Amended Term Sheet. These issues were raised by Fidelity more than a year ago in letters to counsel for the First Lien Lenders, and were responded to by counsel for the First Lien Lenders. The issues reflect potential defenses that Fidelity may raise in the future with respect to making payments under relevant title insurance policies. Fidelity specifically requests that these issues, although raised by it, not be ruled upon by the Court in considering the LCPI Settlement Motion. *See* Fidelity Responsive Pleading, ¶ 27. LCPI agrees that these "reservations of rights" issues relating to theoretical defenses to Fidelity's obligations to pay under relevant title policies, is not germane to the Court's

consideration of the Settlement. For the record, LCPI strongly disagrees with the positions taken by Fidelity. Indeed, some of the theoretical arguments advanced by Fidelity are made for others (*i.e.*, mechanics lienors) -- Fidelity does not have standing to actually make these arguments. Again, as these arguments are styled as "reservation of rights" positions, they need not be responded to more fully at this time since even Fidelity acknowledges they are not impediments for the Court's approval of the Settlement.

**B.    The Second Lien Agent's Responsive Pleading**

11.    The Responsive Pleading filed by the Second Lien Agent raises three issues. The first issue relates to the "retention of jurisdiction" paragraph of the proposed order (the "Proposed Order"). The Second Lien Agent requests a clarification and proposes suggested language to the Proposed Order. LCPI will make this change suggested for the Proposed Order. A red-lined copy of the revised Proposed Order, incorporating the two changes requested by the Second Lien Agent, is annexed hereto as "Exhibit "A."

12.    The second issue relates to a perceived ambiguity in the Amended Term Sheet and suggests language be added to the Proposed Order which clarifies that the Amended Term Sheet is not intended to adversely modify the rights of non-parties to the Amended Term Sheet. LCPI will make this change as well.[3]

13.    The third issue relates to a concern that the SunCal Trustee may not be able to sustain his burden for approval of the Amended Term Sheet in the SunCal Court because he has not done sufficient diligence of his claims against LCPI. That is an issue for the SunCal Court -- not this Court. And, for the record, LCPI and the SunCal Trustee strongly disagree with that contention. The SunCal Trustee has advised LCPI's counsel that he has reviewed thousands

---

[3]    By clarifying this issue, it is axiomatic that neither the Second Lien Agent nor likely LBREP Lakeside have standing to object to the LCPI Settlement Motion since, by its terms, the Settlement does not adversely modify their rights.

of pages of documents, and has spent substantial time over the last two years dealing with these issues, in the context of lift stay motions, cash collateral motions, negotiating the Original Term Sheet, the Amended Term Sheet and otherwise.  The Second Lien Agent's proposed remedy (which is predicated on this faulty "diligence" premise) would impose significant cost and delay for the LCPI estate.  The supposed need for this expensive remedy is based on an anticipated problem which another Court will have to decide, and which should never eventuate.

14.    The Second Lien Agent does not have standing in this case to make this objection. The Second Lien Agent is not a creditor of the LCPI estate. It never filed a claim in the LCPI bankruptcy case.  The Second Lien Agent is a subordinated creditor of a disputed creditor (SunCal Trustee) of LCPI.  It is well settled in this Circuit that creditors of creditors do not have standing to be heard in a debtor's chapter 11 case.  *See Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.)*, 698 F.2d 571, 574 (2d Cir. 1983); *Southern Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (Bankr. S.D.N.Y. 1997).

15.    In addition, as discussed, the Second Lien Agent's rights are not being adversely modified by the Amended Term Sheet.  Indeed, the Second Lien Agent acknowledges that this issue is not one that this Court has to decide in order to approve the Amended Term Sheet.  *See* Second Lien Agent Responsive Pleading, ¶ 17.

16.    The Second Lien Agent suggest that it is being "helpful", as a non-creditor of LCPI, in proposing that the LCPI estate bear additional significant expense and incur further delays (with the potential negative impact in realization of value from the Properties), so that the claims which LCPI is settling be further investigated (even though the SunCal Trustee does not believe he has to).  Asked rhetorically, how can that possibly be in the best interests of the LCPI estate?

17.     It is evident that the Second Lien Agent is suggesting that all of this effort and cost be undertaken for the purpose of rejecting the LCPI Settlement Motion.  But it is not grounds for this Court to reject the Settlement because it is too favorable to the LCPI estate.  Viewed in that light, the Second Lien Agent's offer "to help" should be rejected.  Indeed, the Second Lien Agent, in reality, has made a compelling argument for the approval of the Amended Term Sheet.

C.     **LBREP Lakeside Responsive Pleading**

18.     The Responsive Pleading filed by LBREP Lakeside is without merit. LBREP Lakeside is not asserting that the settlement with the SunCal Trustee is unfair to the creditors of LCPI.  LBREP Lakeside is not criticizing LCPI's decision to settle the litigation claims asserted by the SunCal Trustee.  Rather, LBREP Lakeside's Responsive Pleading is nothing more than a complaint that the SunCal Trustee is settling with LCPI, and not also settling with it.  LCPI can not force the SunCal Trustee to settle with LBREP Lakeside.[4]  Of significance, there is nothing in the Amended Term Sheet that prevents LBREP Lakeside from settling with the SunCal Trustee or that impacts any of its rights.

19.     As noted, with the SunCal bankruptcy approaching its two year anniversary, the SunCal Trustee's dispute with the First Lien Lenders is at a critical juncture. The reality that LCPI faces is that it either settles with the SunCal Trustee, or it continues on a litigation track with more protracted, complex and expensive litigation with the SunCal Trustee. LCPI, in a proper exercise of its business judgment, has decided to settle litigation claims at this time.  The Amended Term Sheet creates a consensual framework to resolve issues, to realize on

---

[4]   LBREP Lakeside contends that the claims against it are frivolous.  *See* LBREP Lakeside Responsive Pleading, at pp. 5 and 7 n. 3.   As set forth below, LCPI agrees that any claims against LBREP Lakeside have no merit.

collateral, and to minimize further expense.  LCPI's efforts to achieve this business objective is in the best interests of its estate.

### (i)    LCPI is Not Profiting From Any Wrongdoing

20.    The cases cited by LBREP Lakeside in point one of its Responsive Pleading (that an entity cannot benefit from its own wrongdoing) have no application to the matter at hand.  The cases cited by LBREP Lakeside concern an entity that committed the wrongdoing seeking a direct benefit on account of that wrongdoing.[5]  Here, LCPI has not brought an action or defended an action against LBREP Lakeside.  LCPI is not seeking to benefit from its own wrongdoing.[6]  Indeed, both LCPI and LBREP Lakeside agree that there was no wrongdoing.  LCPI has been on record since at least November, 2008 that no claims exist either against it or against LBREP Lakeside on account of the $144 million dividend paid in 2006.[7]

---

[5]  For example, in *Carr v. Hoy*, 2 N.Y.2d 185, 188 (1957), the plaintiff took nude photographs of women, was arrested and pled guilty to a crime; the money he made was confiscated by the sheriff.  The plaintiff sued the sheriff to recover the money and the action was dismissed because the court found that the plaintiff could not profit from his own wrongdoing.  In *Riggs v. Palmer*, 115 N.Y. 506, 511 (1889), a beneficiary under a will murdered the testator to obtain the benefits under the will; the court found that the beneficiary could not profit from the will because of his own wrongdoing.  In *Imperator Realty Co. v. Tull*, 228 N.Y. 447, 448 (1920), the court found that the defendant could not summarily rescind a contract because of a breach he encouraged -- "He may not be allowed to take advantage of an omission induced by his unrevoked consent."  In *Tucker v. Mashomack Fish and Game Preserve Club, Inc.*, 606 N.Y.S.2d 79, 81 (Sup. Ct. 1993), the defendant who filed an improper *lis pendens* could not benefit by an increased sales price of property that was obtained because of the delay that resulted from his improper actions.

[6]  To be clear, LCPI believes that it did not nothing wrong in connection with the SunCal Loans.

[7]  For instance in a pleading styled "Response of Lehman Commercial Paper Inc., as First Lien Administrative Agent for the First Lien Lenders, to Omnibus Opposition of Chapter 11 Trustee to Motions for Relief from the Automatic Stay" filed in the SunCal cases on November 18, 2008, LCPI stated in response to the SunCal Trustee's assertions that potential equitable subordination claims and alleged fraudulent conveyance claims could be used as a defense to a motion to lift the automatic stay:

> …[E]ven a cursory review of the relevant facts shows the lack of merit to the Trustee's alleged equitable subordination claims, which are themselves based on a claim that certain dividends made to the Debtors' ultimate equity owners almost three years ago were fraudulent. The law, however, is unambiguous. The conduct of the alleged wrongdoer and the value of the relevant assets cannot be judged with the benefit of hindsight. Here, objective, contemporaneously developed indicia of value demonstrate that the value of the SunCal Real Property far exceeded not only the amount of the loans of the First Lien Lenders, but the loans of the Second and Third Lien Lenders as well, leaving the Debtors solvent after the dividend payments were made to its equity owners and with sufficient value to hold the reasonable belief that the projects could and would be completed.

21.      As explained in the LCPI Settlement Motion and in this Reply, LCPI is

giving up substantial rights and assets in order to achieve the Settlement.  LCPI is not "profiting"

from the Settlement.

22.      Moreover, it is the SunCal Trustee -- not LCPI -- that may in the future

bring an action against LBREP Lakeside, which, if successful, would benefit the creditors of the

SunCal estate.  This result is entirely consistent with the holding in *Moore v. Bay*, 284 U.S. 4, 5

(1931).  As stated in COLLIER ON BANKRUPTCY,

> under *Moore v. Bay*, the right of the trustee to recover is dependent
> upon just one creditor with a cause of action and not dependent at
> all upon the size of that creditor's claim against the debtor.   In
> other words, an entire transfer can be set aside even though the
> creditor's claim is nominal and even though the avoidance may
> provide more funds than necessary to pay the creditors and the

---

*Id.* p. 3, ¶ 4(b).  And further stated:

> Underlying the Trustee's claims for contesting stay relief is his allegation that a $144 million
> dividend distribution made to the equity owners of the Debtors nearly three years ago constituted a
> fraudulent transfer and the involvement of various entities with Lehman in their names was
> inequitable. The fraudulent transfer claim, however, is not supported by the facts of these cases or
> the law, and would likely be unsuccessful if litigated.
>
> It is clear that, at the inception of the First Lien Credit Agreements, the Debtors were solvent
> and had the ability to complete each of the development projects. Indeed, as of January 2006, the
> SunCal Real Property was valued at far more than the debt of the First Lien Lenders and the
> Second Lien Lenders, the only two tranches of debt in place at that time.  Specifically, on an as-is
> basis the SunCal Real Property was worth approximately $437.7 million, while the debt under the
> First and Second Lien Credit Agreements totaled only $320 million. Thus, even though they had
> made a $144 million dividend from the proceeds of these loans, the Debtors still had
> approximately $118 million of equity in the property, on an as-is basis. Significantly, at that time,
> there was more than a reasonable basis to conclude that the properties would be developed and
> increase substantially in value. At various developed stages, the projects were appraised at
> between approximately $536.1 million and $789.9 million in value at the time of the First Lien
> Loan. Using these valuations to analyze the bona fides of the loans themselves would be more
> than proper given the expectations at the time, but as noted, even if one were to use an "as is"
> valuation, the conclusion that there was more value in the properties than the debt put on those
> properties is inescapable.
>
> Accordingly, it is not the First Lien Debt, or even the dividend distributions, that caused these
> projects to end up in bankruptcy. It was the massive, unforeseen, startlingly rapid deterioration of
> the financial and real estate markets nationally and locally that destroyed the market for the
> properties and the ability to complete these developments.

*Id.*  pp. 10-12, ¶¶ 14-16 (footnotes omitted).

administrative expenses of the case.  Moreover, the recovery of the trustee is for the benefit of all creditors including those who had no right to avoid the transfer.

5 COLLIER ON BANKRUPTCY, ¶ 544.06[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010).

23.    In sum, the SunCal Trustee may seek to avoid the alleged fraudulent transfer to LBREP Lakeside to the extent necessary to benefit the SunCal estate; the fact that LCPI as a creditor of SunCal may receive a distribution from that recovery is in no way improper, and the cases cited by LBREP Lakeside are simply inapposite.

(ii)    **LBREP Lakeside's "Mary Carter" Argument is Unavailing**

24.    LBREP Lakeside's reference to "Mary Carter" agreements is beside the point.  The Amended Term Sheet is not such an agreement.  As stated in *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, No. 99 Civ. 0682 (RWS), 2001 WL 604188, at *1 (S.D.N.Y. June 4, 2001) - - cited by LBREP Lakeside -- a Mary Carter agreement has several elements: (1) the agreement is kept secret from the non-settling defendants; (2) the settling defendant stays in the case and defends itself at trial; and (3) the settling parties structure the settlement so that the settling defendant has a financial incentive to assist the plaintiff in increasing the liability of the nonsettling defendant.  None of these factors are present here:  (a) the Amended Term Sheet is not being kept secret -- it is a publicly filed document which is the subject of the LCPI Settlement Motion; (b) LCPI will not be a defendant in any fraudulent transfer lawsuit commenced by the SunCal Trustee and, thus, will not be defending itself at any trial; and (c) the Settlement is not being structured to assist a plaintiff in increasing the liability of a non-settling defendant.  In particular, there is no litigation that has been commenced against LBREP Lakeside at this time.  In addition, the cash collateral and other consideration being given to the SunCal Trustee as part of the Settlement are for administrative expenses, incurred and to be incurred, and

are not earmarked for any particular purpose, such as litigation against third parties.

Accordingly, the "Mary Carter" argument is simply irrelevant to the matter at hand.

### (iii) Section 15-108 of the New York General Obligations Law is Inapplicable

25.     LBREP Lakeside's argument regarding section 15-108 of the New York

General Obligations Law also misses the mark.  Here, it is not LCPI that is seeking contribution

from LBREP Lakeside.  There is no pending lawsuit in which LCPI and LBREP Lakeside are

involved.  LCPI is not seeking any recovery from LBREP Lakeside.

26.     All of the cases cited by LBREP Lakeside in its objection concern

defendants that settled their action directly seeking contribution claims against other parties.[8]  As

stated in *Gonzales v. Armac Industries, Ltd.*, 81 N.Y.2d 1, 6 (1993):

> General Obligations Law § 15-108 explains what happens when
> one of several tortfeasors obtains a release from liability. A
> settlement, or release, by one tortfeasor does not relieve the others
> from liability, but it does reduce the amount which can be
> recovered from them by (1) the amount stipulated by the
> settlement, (2) the amount of consideration paid for it, or (3) the
> released tortfeasor's equitable share of the damages, whichever is
> greatest (General Obligations Law § 15-108[a]).  The settling
> tortfeasor is relieved from liability to any other person for
> contribution but, in exchange, is not entitled to obtain contribution
> from any other tortfeasor (General Obligations Law § 15-108[b],
> [c]).  Thus, the statute establishes a *quid pro quo* arrangement: the
> settlor limits its liability but in exchange forfeits any right to
> contribution.

The *Perno* case cited by LBREP Lakeside stands for the same proposition as all

of the other cases cited by it -- that a settling party cannot seek contribution from other parties.

---

[8]  *See, e.g., Overseas Nat'l Airways, Inc. v. U. S.*, 766 F.2d 97 (2d Cir. 1985) (operator of airport and United States
that settled claims were statutorily barred from asserting contribution claims); *Fromer v. Yogel*, 50 F. Supp. 2d 227
(S.D.N.Y. 1999) (settling investors in ponzi scheme could not seeking contribution from other investors); *Merchants
Bank of New York v. Credit Suisse Bank*, 585 F. Supp. 304 (S.D.N.Y. 1984) (advising bank that reached settlement
with customer could not assert a contribution claim against issuing bank); *Glaser v. M. Fortunoff*, 71 N.Y.2d 643
(1988) (Fortunoff's right to recover from third party defendant after settling its own liability was a contribution
claim that was prohibited under New York law).

27.     The reference to General Obligations Law § 15-108, which deals with joint tortfeasor contribution claims, is thus a "red herring." There is no litigation pending and there are no contribution claims being asserted. There is even a material issue as to whether there can be any contribution claims arising out of a fraudulent transfer action. *See In re Amp'd Mobile, Inc.*, 404 B.R. 118, 125 (Bankr. D. Del. 2009) (finding there could be no contribution claim following a recovery on a fraudulent conveyance).

28.     Moreover, this entire argument does not get LBREP Lakeside anywhere. *First*, the 50/50 sharing of Other Recoveries only comes about if there is a payment on what LBREP Lakeside has labeled a frivolous litigation (and which LCPI agrees has no merit). *Second*, the approval of the Settlement is not a validation of the split of the Other Recoveries. The Amended Term Sheet creates a contractual obligation on the SunCal Trustee to propose a plan of reorganization that contains such a provision. The SunCal Court will ultimately have to decide whether such a plan can be confirmed. *Third*, the elimination of LCPI's share in Other Recoveries does not reduce the liability of LBREP Lakeside to the SunCal bankruptcy estate. *Fourth*, the Other Recoveries structure is entirely consistent with the *Moore v Bay* doctrine, and the ability of all creditors of a bankruptcy estate (such as LCPI) being able to share in distributions made from assets (avoiding power claim recoveries) of a bankruptcy estate. *Fifth*, the First Lien Lenders actually will be paying substantial consideration for their release. In particular, the SunCal Trustee will be receiving $5.7 million of cash collateral, plus 3.5% of the net proceeds from the sale of the Properties, plus, as explained in the next paragraph, a greater percentage of the Other Recoveries.

29.     The First Lien Lenders are also giving up a substantial portion of their interest in Other Recoveries by agreeing to a 50/50 sharing. They are not profiting at all. To

illustrate, with the benefit of enforcing the subordination agreements with the Second Lien

Lenders and Third Lien Lenders, the First Lien Lenders effectively control approximately 85%

of the claims against the SunCal Debtors and should be entitled to approximately 85% of the

Other Recoveries.  By contrast, the Amended Term Sheet calls for a 50/50 split of the Other

Recoveries.  This 50/50 sharing reflects a "give-up" of 35% of the Other Recoveries by the First

Lien Lenders, at least until the trade claims are paid in full.

### (iv)    LBREP Lakeside's Remaining Arguments Lack Merit

30.    The remainder of LBREP Lakeside's Responsive Pleading makes a flawed

factual presentation, to build up a "strawman" in order to raise the specter of conflicts between

Lehman bankruptcy and non-Debtor estates, or a perverse motivation for the First Lien

Lenders to reverse course and skew testimony relating to the basis for the Loans.

### (a)    The Settlement Does Not Give Rise to Any Conflicts of Interest

31.    LBREP Lakeside argues that because LCPI and it share a common

affiliate (LBHI), there may be a conflict of interest in connection with the negotiations

surrounding the Settlement.  This simply is not the case.  LBREP Lakeside, as it acknowledges,

was not involved in the Settlement.  *See* LBREP Lakeside Responsive Pleading, at p. 2.

32.    Moreover, LBREP Lakeside and LCPI have independent managers.

LBREP Lakeside filed the LBREP Lakeside Responsive Pleading, which is evidence of the

independent manor in which LBREP Lakeside operates.

33.    LCPI has a duty to maximize recoveries for its estate and all of its

creditors.  Its duty is not to LBREP Lakeside.

34.    LBREP Lakeside's Responsive Pleading fails to mention that third parties

unrelated to Lehman own a significant majority of the economic interest in LBREP Lakeside.  In

the same vein, LCPI owns a minority economic interest in the First Lien Lender debt.  These

third parties, on both sides, are obvious countervailing balances to ensure no conflicts and fair

treatment is assured for each entity.  In short, there is no conflict of interest relating to the

approval of the Settlement.

> **(b)     LBREP Lakeside's Ability to Defend Itself Against Fraudulent Transfer Claims is Not Prejudiced by the Settlement**

35.     LBREP Lakeside speculates that it *may* become prejudiced by the

Settlement because its ability to defend itself against fraudulent transfer claims of a litigation not

yet commenced will be impaired. The apparent basis for this speculation is that LCPI will skew

its testimony in order to enhance its recovery on the 50/50 share.  This notion is ridiculous.  As

noted,  LCPI is on record in the SunCal case that it does not believe there was any infirmity to

the Loans or the $144 million dividend, and LCPI's ability to tell the truth is not a function of its

economic interest.

36.     Notably, LBREP Lakeside fails to site a single case supporting this

argument.  If the fraudulent transfer claims are prosecuted and LCPI is asked to give evidence,

the evidence will be produced under the full safeguards of the Rules of Evidence and the Federal

Rules of Civil Procedure.  *See, e.g.*, Fed. R. Evid. 102 (purpose of Rules of Evidence is to ensure

that "the truth may be ascertained and proceedings justly determined").  The facts are what they

are, and LCPI's entering into the Settlement has no impact on the facts.  Deponents and

witnesses will testify under oath and be subject to the penalty of perjury.  *See U. S.* v. *Williams,*

341 U.S. 58, 62 (1951) (citing federal perjury statute); *U.S.* v. *Markiewicz,* 978 F.2d 786, 808 (2d

Cir. 1992).  And the Federal Rules provide mechanisms for sanctioning parties for abusing the

discovery process. *See, e.g., Kiobel* v. *Millson,* 592 F.3d 78, 86 n.9 (2d Cir. 2010) (noting that

"[s]anctions for discovery abuses are . . . imposed pursuant to Rule 37 of the Federal Rules of

Civil Procedure").

37.    Indeed, in order to diffuse this concern, prior to the filing of the LBREP Lakeside Responsive Pleading, LCPI indicated that it would consider putting whatever LCPI received as a distribution from the SunCal bankruptcy estate on account of any payment made by LBREP Lakeside, into escrow pending further order of this Court.  At that time, among other things, all parties would know the corpus being fought over (which LBREP Lakeside has asserted and LCPI concurs would be zero), and there may be better information elicited as to LBREP Lakeside's hypothetical concerns.  And, if LCPI did ever participate in discovery on the yet to be prosecuted claim against LBREP Lakeside, then there would be a record upon which the court could evaluate LBREP Lakeside's speculative and far fetched concerns.  LBREP Lakeside did not find the proposal acceptable.

38.    As the LBREP Lakeside Responsive Pleading does not present any meritorious argument against approval of the Amended Term Sheet, the Settlement should be approved in all respects.

## CONCLUSION

39.    As stated in the LCPI Settlement Motion, the settlement embodied in the Amended Term Sheet should be approved if it is in the best interest of LCPI's estate.  The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness."  *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

40.    The approval of the Amended Term Sheet is unquestionably in the best interest of the LCPI estate, and is entirely fair and reasonable in the context of this case.  The Amended Term Sheet is not adversely modifying any parties' rights (including LBREP Lakeside, the Second Lien Agent and Fidelity) except the signatories to the Amended Term Sheet.  None of the legitimate creditors of LCPI, who have the clear economic stake in the LCPI

bankruptcy estate, have objected to the LCPI Settlement Motion.  Indeed, even the parties who

filed pleadings relating to the LCPI Settlement Motion have not questioned whether the

Settlement makes sense from LCPI's perspective.  It is on this basis that the Court should decide

whether to approve the Settlement embodied in the Amended Term Sheet.  And, based on this

criteria, the Settlement should clearly be approved.

        WHEREFORE, for all of the foregoing reasons as well as the arguments made in

the LCPI Settlement Motion and the Brusco Declaration, LCPI respectfully requests that the

Court (i) deny the relief requested in the Responsive Pleadings; (ii) grant the relief requested in

the LCPI Settlement Motion; and (iii) grant such other and further relief as the Court deems just

and proper.

Dated:  September 20, 2010
New York, New York

        KING & SPALDING LLP


        By: /s/ Alfredo R. Pérez
           Arthur Steinberg
           Scott Davidson
           1185 Avenue of the Americas
           New York, New York 10036
           Telephone: (212) 556-2100
           Facsimile: (212) 556-2222

           WEIL, GOTSHAL & MANGES LLP
           700 Louisiana Street, Suite 1600
           Houston, Texas 77027
           Telephone: (713) 546-5000
           Facsimile: (713) 224-9511
           Alfredo R. Pérez

           *Counsel for the Debtors and Debtors in*
           *Possession*

# Exhibit A

Redline of Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- x

In re:                                              :        Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :        Case No.:  08-13555 (JMP)
                                                    :
                          Debtors.                  :        (Jointly Administered)

--------------------------------------------------------------------- x

**ORDER PURSUANT TO
SECTION 105 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9019 APPROVING THAT
CERTAIN AMENDED AND RESTATED COMPROMISE BY AND AMONG
LEHMAN COMMERCIAL PAPER INC., ALFRED H. SIEGEL, AS CHAPTER 11
TRUSTEE FOR THE SUNCAL DEBTORS, AND THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS IN THE SUNCAL BANKRUPTCY CASES**

Upon the motion, dated September 2, 2010 ( "Motion"),[1] of Lehman Commercial

Paper Inc. ("LCPI" and, together with its affiliated debtors in the above-referenced chapter 11

cases, the "Debtors"), pursuant to section 105 of Title 11 of the United States Code (the

"Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure ( "Bankruptcy

Rules") for authorization to enter into and approval of a settlement pursuant to the amended and

restated term sheet annexed to the Motion as Exhibit A (the "Amended Term Sheet"); and the

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion **or
the Amended Term Sheet**.

0.2

provided in accordance with the procedures set forth in the amended order entered June 17, 2010

governing case management and administrative procedures [Docket No. 9635] to (i) the United

States Trustee for the Southern District of New York; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) counsel to the SunCal Trustee, (vii) counsel to the SunCal Committee, and (viii) all parties

who have requested notice in these chapter 11 cases, and it appearing that no other or further

notice need be provided; and the Court having found and determined that the relief sought in the

Motion is in the best interests of LCPI and its estate and that the legal and factual bases set forth

in the Motion and on the record establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Section 105 of the Bankruptcy Code and Bankruptcy

Rule 9019, the Amended Term Sheet is approved, and LCPI is duly authorized to

(i) consummate all of the transactions contemplated thereby and (ii) execute and deliver such

documents and instruments and to take such other actions as may be reasonably necessary to

consummate the transactions contemplated by the Amended Term Sheet, it being understood that

any actions described in this paragraph taken by LCPI or its affiliates may be taken without the

necessity of any further Court proceedings or approval and shall be conclusive and binding in all

respects on all parties in interest in these cases; and it is further

ORDERED that the Amended Term Sheet and any related agreements, documents

or other instruments may be modified, amended or supplemented by the parties thereto, in a

writing signed by such parties, and in accordance with the terms thereof, without further order of

the Court, *provided* that any such modification, amendment or supplement does not have a

material adverse effect on LCPI's estate; and it is further

**ORDERED that, notwithstanding anything to the contrary in the Amended**

**Term Sheet and this Order, nothing in the Amended Term Sheet is intended to affect the**

**rights, if any, of any Person, including the 2nd Lien Lenders other than the LCPI 2nd Lien**

**Lender, the 3rd Lien Lenders other than the LCPI 3rd Lien Lender, except to the extent**

**that a Person is a party to the Amended Term Sheet, with such Person's rights being**

**affected to the extent expressly provided in the Amended Term Sheet; and it is further**

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order**;**

**provided, however nothing contained in this decretal paragraph is intended to reduce the**

**exclusive jurisdiction of or predetermine any concurrent jurisdiction otherwise vested in**

**the Bankruptcy Court for the Central District of California in the SunCal Bankruptcy**

**Case**.

Dated: September ___, 2010
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE