WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Wasiman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                        :

**In re**                                :    **Chapter 11 Case No.**

                                     :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :    **08-13555 (JMP)**

                                     :

                        **Debtors.**    :    **(Jointly Administered)**

                                     :

-------------------------------------------------------------------x

**OMNIBUS CERTIFICATE OF NO OBJECTION**
**UNDER 28 U.S.C. § 1746 REGARDING DEBTORS'**
**MOTIONS SCHEDULED FOR HEARING ON SEPTEMBER 22, 2010**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Pursuant to 28 U.S.C. § 1746, and in accordance with this Court's case

management procedures set forth in the Amended Order Pursuant to Section 105(a) of the

Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and

Case Management Procedures [Docket No. 9635] (the "Second Amended Case Management

Order"), the undersigned hereby certifies as follows:

        1.     Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), filed the following motions (collectively the "Motions") with this Court:

- Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-390 for an Order Supplementing the September 17, 2009 Alternative Dispute Resolution Procedures Order to Add a Fourth Mediator **[Docket No. 11169]**

- Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-390 for Authorization to Implement Tier 2 Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivatives Contracts for Amounts Not More than $1 Million **[Docket No. 11170]**

- Motion for Authorization to Reject Executory Contract Between Lehman Brothers Special Financing Inc. and E-Capital Profits Limited **[Docket No. 11199]**

2.     In accordance with the Second Amended Case Management Order, September 13, 2010 at 4:00 p.m. (Prevailing Eastern Time) and September 15, 2010 at 4:00 p.m. (Prevailing Eastern Time), respectively, were established as the deadlines for parties to object or file responses to the Motions (the "Objection Deadlines").  The Second Amended Case Management Order provides that pleadings may be granted without a hearing, provided that no objections have been filed prior to the relevant Objection Deadline and the attorney for the entity who filed the pleading complies with the relevant procedural and notice requirements.

3.     The Objection Deadlines have now passed and, to the best of my knowledge, no objection or other responsive pleading to the Motions has been filed with the Court on the docket of the above-referenced cases in accordance with the procedures set forth in the Second Amended Case Management Order, nor has any objection or other responsive pleading with respect to the Motions been served on Debtors' counsel.

4.       Accordingly, for the reasons set forth in the Motions, the Debtors respectfully request that the proposed Orders annexed hereto as <u>Exhibits A - C</u>, and unmodified since the filing of the Motions, be entered in accordance with the procedures described in the Second Amended Case Management Order.

I declare that the foregoing is true and correct.

Dated: September 20, 2010
       New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# **<u>EXHIBIT A</u>**

**(Proposed Order – Docket No. 11169)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                              :
**In re**                                     :    **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :    **08-13555 (JMP)**
                                              :
                              **Debtors.**    :    **(Jointly Administered)**
                                              :
-------------------------------------------------------------------x

### ORDER SUPPLEMENTING THE
### SEPTEMBER 17, 2009 ALTERNATIVE DISPUTE
### RESOLUTION PROCEDURES ORDER TO ADD A FOURTH MEDIATOR

Upon the motion, dated September 2, 2010 the ("Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman"), pursuant to section 105 of chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code") and General Order M-390, for an order supplementing the

*Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under*

*Derivatives Contracts* [Docket No 5207] (the "Derivatives ADR Order") to add a fourth

mediator, as more fully set forth in the Motion; and the Court having jurisdiction to consider the

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the

Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York

Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases [Docket No. 9635]; and the Court

having found and determined that the relief sought in the Motion is in the best interests of the

Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, Jacob Esher, Esq. is appointed as a mediator for proceedings

under the Derivatives ADR Order; and it is further

ORDERED that all provisions of the Derivatives ADR Order shall apply to Jacob

Esher, Esq. as if he were appointed as a mediator pursuant to section 10(a) of such order; and it

is further

ORDERED that service of notice of the Motion by e-mail or facsimile shall be

good and sufficient notice of the Motion.

Dated: September __, 2010
       New York, New York


_____
       UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

**(Proposed Order – Docket No. 11170)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                          :

In re                                   :        **Chapter 11 Case No.**
                                            :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :     **08-13555 (JMP)**
                                          :

                    **Debtors.**        :      **(Jointly Administered)**
                                            :
-------------------------------------------------------------------x

## TIER 2 ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER <u>DERIVATIVES CONTRACTS FOR AMOUNTS NOT MORE THAN $1 MILLION</u>

The following alternative dispute resolution procedures (the "<u>Tier 2 Derivatives ADR Procedures</u>") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in various chapter 11 proceedings consolidated for procedural purposes only (collectively, "the <u>Debtors</u>").

### <u>FINDINGS</u>

On motion of Debtors, the Court FINDS that numerous open and terminated derivatives contracts, including any derivatives contract that is a "swap agreement" or "forward contract", in each case, as such term is defined in section 101 of the Bankruptcy Code, exist as to which one or more Debtors[1] assert that monetary recovery is due to a Debtor from a counterparty, its affiliates, or related parties in an amount equal to or less than $1 million (the "<u>Tier 2 Derivatives Contracts with Recovery Potential</u>").  The Court further FINDS that certain common issues exist regarding these contracts, including questions involving appropriateness of setoff,

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the *Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-390 for Authorization to Implement Tier 2 Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivatives Contracts for Amounts Not More Than $1 Million*, filed on September 2, 2010.

termination, valuation and computation of termination payments, and notice.  The Court further

FINDS that substantial value may be recovered for the estates of Debtors, and judicial efficiency

can be promoted, if expedient resolution of disputes and recoveries under such contracts can be

achieved without the need for trial of adversary proceedings or other litigation.  The Court further

FINDS that similar proceedings ordered in these chapter 11 cases and other complex chapter 11

cases have contributed to effective administration of the proceedings and have reduced costs for

all parties.

      The Court further FINDS that the *Alternative Dispute Resolution Procedures Order*

*for Affirmative Claims of Debtors Under Derivatives Contracts*, dated September 17, 2009

[Docket No 5207] (the "Derivatives ADR Order"), establishing alternative dispute resolution

procedures (the "Derivatives ADR Procedures") to facilitate the settlement of Derivatives

Contracts that are "in the money" to the Debtors ("Derivatives Contracts with Recovery

Potential") has successfully resulted in the settlement of numerous disputes related to Derivatives

Contracts without the need for intervention by the Court.  As of September 2, 2010, the Debtors

have commenced proceedings under the Derivatives ADR Procedures by serving 77 ADR Notices

on 100 counterparties and have successfully settled 28 ADR matters with 34 counterparties.  Also,

as of September 2, 2010, 15 matters have reached the mediation stage of the Derivatives ADR

Procedures and all of such mediations resulted in a settlement.  As a result of these settlements, the

Debtors have received a total of $185,962,300.98 new dollars for their estates.  Accordingly, each

ADR settlement on average has gained approximately $6.8 million for the applicable Debtor.

      The Court further FINDS that establishing a modified version of the Derivatives

ADR Proceudres for the Tier 2 Derivatives Contracts with Recovery Potential is necessary to (a)

avoid overwhelming the current Derivatives ADR Procedures and (b) enable the Debtors to more

efficiently and effectively resolve disputes related to Tier 2 Derivatives Contracts with Recovery Potential (the "Tier 2 Derivatives ADR Disputes").

The procedures described below are ORDERED to promote consensual recovery with respect to the Tier 2 Derivatives Contracts with Recovery Potential, and to encourage effective communication between the affected parties, consultation, negotiation, and, when necessary, mediation procedures.

1.    Standing Mediation Order.  All provisions of the Standing Order M-390, adopted December 1, 2009 (which supersedes General Order M-143, adopted January 17, 1995), providing for Adoption of Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/ Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York and all existing and further amendments thereto (the "Standing Order") shall apply to the mediations to be conducted under this Tier 2 Derivateives ADR Order.

2.    Tier 2 Derivatives  ADR Counterparties.  To date, the Debtors have identified potentially at least one-hundred (100) counterparties to Tier 2 Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists over the amounts that may be owed to Debtors under such contracts (whether or not an actual lawsuit or adversary proceeding has been commenced), whether from a counterparty to a Tier 2 Derivatives Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a contract (collectively, the "Tier 2 Derivatives Counterparties"); *provided, however*, that the term Tier 2 Derivatives Contract with Recovery Potential shall not include any cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within

the standard settlement cycle for the relevant market), exchange-traded future or option,

securities loan transaction or repurchase agreement in respect of securities or loans; *provided*

*further*, that no Derivatives Contract between a Debtor and a special purpose vehicle or trust for

which there exists an Indenture Trustee shall be deemed a Tier 2 Derivatives Contract with

Recovery Potential or be subject to this Tier 2 Derivatives ADR Order or the Tier 2 Derivatives

ADR Procedures in any respect.

      3.    <u>Tier 2 Derivatives ADR Disputes</u>.  Any Debtor may designate any dispute

regarding a Tier 2 Derivatives Contract with Recovery Potential (a "<u>Tier 2 Derivatives ADR</u>

<u>Dispute</u>") to the Tier 2 Derivatives ADR Procedures by serving on a Tier 2 Derivatives

Counterparty a copy of this Tier 2 Derivatives ADR Order and a Tier 2 Derivatives ADR Notice

(as defined below) (collectively, the "<u>Tier 2 Derivatives ADR Package</u>").

      a.    Debtors shall not implement Tier 2 Derivatives ADR Procedures

with respect to a Tier 2 Derivatives Contract with Recovery Potential that (i) has not been

purportedly terminated; and (ii) with respect to which a Tier 2 Derivatives Counterparty has not

failed to make a payment, or perform any other obligation, due, if any, to the Debtor(s) (without

regard to any provision in a Tier 2 Derivatives Contract with Recovery Potential that purports to

permit a Tier 2 Derivatives Counterparty to withhold performance by reason of a default by a

Debtor or its affiliates).

      b.    Debtors shall make commercially reasonable efforts to minimize

the frequency of service of Tier 2 Derivatives ADR Notices on any one Tier 2 Derivatives

Counterparty.

      c.    For purposes of the Tier 2 Derivatives ADR Procedures, service on

or notice to a Tier 2 Derivatives Counterparty shall be deemed adequate if such service or notice

is provided to the Tier 2 Derivatives Counterparty, the Tier 2 Derivatives Counterparty's

counsel, legal guardian, estate representative, or other representative who has appeared in these

cases by (i) email and/or (ii) at the option of the Debtors either (x) hand delivery, or (y) first class

mail, or (z) overnight mail.

        d.       Nothing in this Order shall be deemed to limit or modify any

Debtor's right to initiate the Derivatives ADR Procedures set forth in the Derivatives ADR Order

with respect to any Tier 2 Derivatives Contract with Recovery Potential.  With respect to any

Tier 2 Derivatives Contract with Recovery Potential, the Debtors in their sole discretion shall

determine whether to implement the Derivatives ADR Procedures or the Tier 2 Derivatives ADR

Procedures.

        4.       <u>Settlement of Disputes During the Tier 2 Derivatives ADR Procedures</u>.

Nothing contained herein shall prevent the parties from settling, and the parties are encouraged

to settle, a Tier 2 Derivatives ADR Dispute at any time before, during, or following the

designation of a Tier 2 Derivatives ADR Dispute to the Tier 2 Derivatives ADR Procedures by

the mutual consent of the parties; *provided* that such settlement

        a.       complies with (i) the Order, dated December 16, 2008, authorizing the

                Debtors to establish procedures for the settlement or assumption and

                assignment of prepetition Derivatives contracts [Docket 2257]; (ii) the

                Order, dated January 29, 2009, authorizing the consensual assumption and

                assignment of prepetition Derivatives contracts [Docket No. 2667], or (iii)

                other orders in these bankruptcy cases permitting such settlement, or

        b.       is approved by specific order of the Court.

Any settlement discussions between any of the parties, the contents of any papers submitted during the Mediation Stage described below, and all discussions in Mediation shall remain confidential and privileged and shall not be discoverable or admissible as evidence in any subsequent litigation of any Tier 2 Derivatives ADR Dispute or elsewhere, except as provided below in this Order or by further order of this Court.

        5.    <u>Participation Mandatory</u>.

        a.    Unless otherwise provided in a specific order applicable to a particular Tier 2 Derivatives ADR Dispute or a particular Tier 2 Derivatives Counterparty, after service of a Tier 2 Derivatives ADR Package on a Tier 2 Derivatives Counterparty (i) compliance with the Tier 2 Derivatives ADR Procedures is mandatory in each specified Tier 2 Derivatives ADR Disputes for the applicable Debtor or Debtors and Tier 2 Derivatives Counterparty; and (ii) no party is required to settle or compromise any dispute or enter into a particular settlement or compromise, but each Debtor serving a Tier 2 Derivatives ADR Package and each Tier 2 Derivatives Counterparty, must serve the required responses and participate in any settlement discussions and mediation in good faith, follow directions of the mediator, and otherwise comply with the Tier 2 Derivatives ADR Procedures specified below for all Tier 2 Derivatives ADR Disputes covered by such Tier 2 Derivatives ADR Package.

        b.    All rights, remedies, claims and defenses of any Tier 2 Derivatives  Counterparty and Debtor in good faith compliance with the Tier 2 Derivatives ADR Procedures shall not be impaired, waived or compromised in any further proceedings in these cases should no settlement or compromise result from participation in these Tier 2 Derivatives ADR Procedures.  Participation in the Tier 2 Derivatives ADR Procedures by a Tier 2

Derivatives Counterparty shall not waive the defense of lack of in personam jurisdiction, if any, which defense shall be preserved.

6.      No Substitute For Claims Procedures.  The Tier 2 Derivatives ADR Procedures are not intended and shall not be utilized as a substitute for chapter 11 claims procedures or the procedures set forth in the *Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors*, entered April 19, 2010, [Docket No. 8474].  Nothing contained herein, however, shall (a) prevent a Tier 2 Derivatives Counterparty from asserting in any response to a Tier 2 Derivatives ADR Notice and elsewhere during the course of a Tier 2 Derivatives ADR Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a Tier 2 Derivatives Contract with Recovery Potential or any other valid defense to a Debtor's demand thereunder; *provided* that the amount of any claim against a Debtor asserted by a Tier 2 Derivatives Counterparty as a valid and enforceable right of setoff may not, unless otherwise agreed in writing by the relevant Debtor and the Tier 2 Derivatives Counterparty (or an affiliate thereof), be determined pursuant to the Tier 2 Derivatives ADR Procedures, or (b) be construed to abridge, enlarge, or otherwise modify the rights and obligations of Debtors or Tier 2 Derivatives Counterparties under a Tier 2 Derivatives Contract with Recovery Potential or applicable law or to provide a right or remedy under a Tier 2 Derivatives Contract with Recovery Potential to Debtors or Tier 2 Derivatives Counterparties that is not provided thereby or by applicable law.

7.      Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Tier 2 Derivatives Counterparties.  If a Tier 2 Derivatives Counterparty previously has

commenced any action or proceeding in any other court or forum, or any action or proceeding in any other court or forum following service upon it of a Tier 2 Derivatives ADR Package, the Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect the estate of Debtors, despite the incomplete status of the steps prescribed under the Tier 2 Derivatives ADR Procedures.

## NOTICE/RESPONSE STAGE

8.    <u>Notice/Response</u>.  The initial stage of the Tier 2 Derivatives ADR Procedures will be a notice/response stage, providing the parties with an opportunity to exchange settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve a Tier 2 Derivatives ADR Dispute on a consensual basis (the "<u>Notice/Response Stage</u>").  The Notice/Response Stage shall include:

a.    <u>Tier 2 Derivatives ADR Notice</u>.  Debtors shall serve upon a Tier 2 Derivatives Counterparty (and its attorneys who have appeared in these cases) a notice containing sufficient information regarding the Tier 2 Derivatives ADR Dispute to make the Tier 2 Derivatives Counterparty aware of the nature of Debtor's affirmative claim, a brief explanation setting forth the basis for the demand and the amount, and of its demand for settlement (which demand shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee), including an amount of monetary recovery Debtor(s) would accept in full settlement and compromise (a "<u>Tier 2 Derivatives ADR Notice</u>").  Service of a completed Tier 2 Derivatives ADR Notice in the form annexed to this

Order as Exhibit "A" shall presumptively be deemed to comply with this
Order.

b.     <u>Tier 2 Derivatives Counterparty's Response to Notice</u>.  A Tier 2
Derivatives Counterparty must respond to the Tier 2 Derivatives ADR
Notice in writing within fifteen (15) calendar days from the date of the
Tier 2 Derivatives Counterparty's receipt of the Notice.  The response
options available to a Tier 2 Derivatives Counterparty are as follows (the
"<u>Responses</u>"):

   i.     <u>Agreeing to Settle the Demand</u>.  If a Tier 2 Derivatives
Counterparty agrees to settle the demand in the Tier 2
Derivatives ADR Notice, the Counterparty shall state in
writing that the offer of settlement in the Tier 2 Derivatives
ADR Notice is accepted.  The parties will then execute a
settlement and general release (including a confidentiality
provision) and, if the matter is in litigation, the Debtor shall
dismiss any applicable claims in a lawsuit or adversary
proceeding with prejudice upon execution of the release; or

   ii.    <u>Denying the Demand</u>.  A Tier 2 Derivatives Counterparty
may decline to settle for the amount stated in the demand in
the Tier 2 Derivatives ADR Notice, in which case the Tier
2 Derivatives Counterparty must include a brief
explanation in the Response to the Tier 2 Derivatives ADR
Notice setting forth the reason(s) for such denial.  In

addition, the Tier 2 Derivatives Counterparty may provide a counteroffer to the demand in the Tier 2 Derivatives ADR Notice. Service of a completed Response to a Tier 2 Derivatives ADR Notice in the form annexed to this Order as Exhibit "B" shall presumptively be deemed to comply with this Order.

c. <u>Failure to Respond</u>. Failure to provide a timely Response to the Tier 2 Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may result, at the option of Debtors, either in an application to the Court (with notice to any applicable Tier 2 Derivatives Counterparty) for Sanctions (as defined below) as set forth below, including an order or judgment for recovery of amounts demanded by Debtors in the Tier 2 Derivatives ADR Notice, or immediate entry into the mediation stage.

d. <u>Reply to Response</u>. The Debtor shall have fifteen (15) days from the date of the receipt of the Response to serve a reply (a "<u>Reply</u>") to the Response to the Tier 2 Derivatives ADR Notice (which Reply shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee) in which the Debtor shall (i) modify its Demand; (ii) respond to any counteroffer; (iii) provide additional information in support of its demands in the Tier 2 Derivatives ADR Dispute; or (iv) reject any counteroffer, in which case the Tier 2 Derivatives ADR Dispute will automatically proceed to the Mediation Stage.

## **MEDIATION STAGE**

9.      Mediation.  Tier 2 Derivatives ADR Disputes that are not resolved through

the Notice/Response Stage will proceed to mediation (the "Mediation Stage").  Following

service of the Reply as set forth in paragraph 8d. above, the Debtors shall transmit, on a rolling

basis as promptly as possible, to the Mediators appointed pursuant to paragraph 9(a) hereof sets

of Derivatives ADR Notices and any applicable Response(s) and Replies for the Tier 2

Derivaties ADR Disputes which the Debtors, in their sole discretion, have deemed ready for

mediation, for purposes of allocating specific mediations pursuant to paragraph 9(b)(i) hereof.

a.      Choice of Mediator.  Those persons listed in Annex A to this Motion are

APPOINTED as the Mediators (each, a "Mediator") for Tier 2 Derivatives

ADR Disputes reaching the Mediation Stage.  The Mediators shall select

the Mediator for each Mediation.  If any named Mediator is not available

to serve as Mediator, an alternate Mediator shall be selected by the Court

upon notice to the Debtors, the Creditors' Committee and all Derivatives

Counterparties.

b.      Powers of Mediator.  The Mediators shall have the broadest possible

discretion consistent with the Standing Order, including (i) the manner of

allocating among themselves specific mediations on a fair and equitable

basis; and (ii) the ability to consolidate Mediations involving the same

Tier 2 Derivatives  Counterparty upon application by such Tier 2

Derivatives Counterparty and consultation with the Debtors.

c.      Once a specific Mediator has been selected and notice of such selection

has been conveyed to the parties, the Debtor and the Tier 2 Derivatives

Counterparty together shall contact the Mediator to schedule the initial

Mediation date.

d.    <u>Mediation Sites</u>.  All mediation proceedings will take place in New York,

New York, unless agreed to by the parties and the mediator.

e.    <u>Mediation Briefs</u>.  Any party to a Mediation may submit a Mediation

Brief, of up to ten (10) pages (exclusive of exhibits or schedules), or such

other length ordered by the Mediator, with service upon the other parties

to the Mediation; *provided, however*, the Mediator may order that the

parties serve upon each other and the Mediator a Mediation Brief.  If a

party to the Mediation opts to serve a Mediation Brief upon another party

to the Mediation hereunder, such Mediation Brief shall also be filed with

the Mediator.  Any such Mediation Brief shall be served and filed so as to

be received no later than five (5) calendar days prior to the scheduled

initial Mediation Date.  No Mediation Brief shall be filed with the Court.

f.    <u>Appearance at Mediations</u>.  Unless otherwise ordered by the Mediator all

participants in the Mediation for the applicable Tier 2 Derivatives ADR

Dispute, must appear in person with a business principal who has

settlement authority; *provided, however*, that, to the extent acceptable to

the Mediator, the business principal with settlement authority on behalf of

a Tier 2 Derivatives Counterparty may attend the Mediation by video

conference at the sole expense of the Tier 2 Derivatives Counterparty (in

such event counsel for such Tier 2 Derivatives Counterparty must attend

the Mediation in person).  Counsel for the parties may also be present and

participate.

g.      <u>End of Mediation</u>.  The Mediation shall end upon request of a party and

concurrence by the Mediator.

### **OTHER PROVISIONS**

10.      <u>Deadlines</u>.  Notwithstanding any of the provisions set forth above, any of

the deadlines contained herein may be modified by:  (i) the mutual consent of the Debtors and

the Tier 2 Derivatives Counterparty or (ii) the Bankruptcy Court, for cause shown.

11.      <u>Sanctions for Parties</u>.  Each Debtor and each Tier 2 Derivatives

Counterparty must participate in good faith with these Tier 2 Derivatives ADR Procedures with

regard to the ADR Disputes specified in the applicable Tier 2 Derivatives ADR Notice.  If, after

notice and a hearing, the Court determines that a party has not complied with the Tier 2

Derivatives ADR Procedures in good faith in connection with any Tier 2 Derivatives ADR

Dispute, the Debtors or the Tier 2 Derivatives Counterparty, as the case may be, may be subject

to such sanctions as the Court deems appropriate (the "<u>Sanctions</u>").  If a Mediator reports to the

Court that any party subject to this Order is not cooperating in good faith with the Tier 2

Derivatives ADR Procedures, the Court may, without the need for further motion by any party,

schedule a hearing and order Sanctions.  Notwithstanding the provisions of paragraph 13 below

regarding confidentiality, a motion requesting sanctions made to the Court may identify the

parties to the subject Tier 2 Derivatives ADR Dispute and describe the conduct giving rise to the

request for sanctions, but shall not include any substance or detail regarding the Tier 2

Derivatives ADR Dispute, any terms of Tier 2 Derivatives Contracts with Recovery Potential

involved, or any other matter deemed confidential pursuant to pargraph 13 below.  Litigation

with respect to the issuance of Sanctions shall not delay the commencement of the Mediation

Stage of these procedures upon completion of the Notice/Response Stage.  Sanctions may

include, but are not limited to:

    a.    <u>Against Debtors</u>:  (i) attorneys' fees incurred by a Tier 2 Derivatives Counterparty with respect to the Tier 2 Derivatives ADR Procedures after the receipt of a Tier 2 Derivatives ADR Package; (ii) fees and costs of the Mediator; (iii) termination of the Tier 2 Derivatives ADR Procedures as to one or more Tier 2 Derivatives Contracts with Potential Recovery; and/or (iv) rejection of some or all claims asserted by Debtors in the applicable Tier 2 Derivatives ADR Dispute.

    b.    <u>Against Tier 2 Derivatives  Counterparties</u>:  (i) attorneys' fees incurred by the Debtors with respect to the Tier 2 Derivatives ADR Procedures after the sending of a Tier 2 Derivatives ADR Package; (ii) fees and costs of the Mediator; and/or (iii)  an award of the Tier 2 Derivatives ADR Dispute up to the amount specified in the Tier 2 Derivatives ADR Notice.

    12.    <u>Confidentiality</u>.  The confidentiality provisions of section 5.0 of the

Standing Order are hereby incorporated by reference into this Order.  No statements or

arguments made or positions taken by the Mediator, the applicable Debtors, Tier 2 Derivatives

Counterparties or the Creditors' Committee during any part of the alternative dispute resolution

process, including the Notice/Response Stage and the Mediation Stage may be disclosed by the

Mediator or any such parties or their attorneys and advisors to the Court or any third party.

Similarly, all briefs, records, reports, and other documents received or made by the Mediator

while serving in such capacity shall remain confidential and not be provided to the Court, unless

they would be otherwise admissible.  In addition, the Mediator shall not be compelled to disclose

such records, reports, and other documents in connection with any hearing held by the Court;

*provided*, *however*, the Mediators, or their designee, shall on a monthly basis beginning sixty

(60) days following entry of this Order report to the Court the status of the Mediation efforts but

shall not disclose the content thereof, which report shall include the number of Tier 2 Derivatives

ADR Notices served on Tier 2 Derivatives Counterparties, the number of settlements reached

after Mediation, the number of Mediations still pending, the number of Mediations that have

terminated without settlement, and the cumulative dollar amount of settlements reached with

Tier 2 Derivatives Counterparties following service of Tier 2 Derivatives ADR Notices.  Rule

408 of the Federal Rules of Evidence shall apply to all aspects of the Tier 2 Derivatives ADR

Procedures including the Notice/ Response State and the Mediation Stage.

13.    <u>Jury Trial, Arbitration and Exclusive Foreign Forum Selection Rights</u>

<u>Unaffected</u>.  Unless a Tier 2 Derivatives Counterparty or a Debtor affirmatively waives its right

to a jury trial, arbitration or exclusive foreign forum selection that otherwise may exist,

participation in the Tier 2 Derivatives ADR Procedures shall not waive or otherwise modify such

rights.  All parties' rights and defenses to contest the assertion of a jury trial or arbitration or

exclusive foreign forum selection right by any other party are fully preserved.

14.    <u>Fees</u>.  Except as otherwise provided herein, each party to the Mediation

shall bear its own counsel fees and other costs of the Tier 2 Derivatives ADR Procedures,

including Mediation; *provided, however*, that (i) the Debtors shall pay the reasonable fees and

costs charged by the Mediator unless otherwise ordered by the Court pursuant to the terms of this

Order and (ii) nothing contained herein shall be deemed to vary the terms of any Tier 2

Derivatives Contract with Recovery Potential in respect of the reimbursement of fees and

expenses.

15.     <u>Service of the Notice of the Motion</u>.  Service of notice of the Motion by e-

mail or facsimile shall be good and sufficient notice of the Motion.

**SO ORDERED:**

September __, 2010
New York, New York

_____

UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT C**

**(Proposed Order – Docket No. 11199)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                              :        **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,       :        **08-13555 (JMP)**
                                                   :
                          **Debtors.**             :        **(Jointly Administered)**
-------------------------------------------------------------------x

### ORDER GRANTING MOTION FOR AUTHORIZATION TO REJECT EXECUTORY CONTRACT BETWEEN LEHMAN BROTHERS SPECIAL FINANCING INC. AND E-CAPITAL PROFITS LIMITED

Upon the motion dated September 7, 2010 (the "Motion") of Lehman

Brothers Special Financing Inc. ("LBSF"), as debtor and debtors-in-possession (together

with Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, the "Debtors"), pursuant to sections 365(a) and 562(a) of

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6006

and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for (i)

authorization to reject the ISDA Master Agreement, dated as of June 12, 2007 (the ISDA

Master Agreement and schedule thereto, including the related credit support annex,

collectively referred to as, the "Master Agreement"), between LBSF and E-Capital

Profits Limited ("E-Capital"), and all confirmations and transactions thereunder governed

by such Master Agreement (collectively, the "Agreement"), and (ii) approval of

procedures for any claims that may be asserted against the Debtors as a result of such

rejection, all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157

and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the

Motion having been provided in accordance with the procedures set forth in the amended

order entered June 17, 2010 governing case management and administrative procedures

[Docket No. 9635] to (i) the United States Trustee for the Southern District of New York;

(ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities

and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States

Attorney for the Southern District of New York; (vi) E-Capital; and (vii) all parties who

have requested notice in these chapter 11 cases, and it appearing that no other or further

notice need be provided; and the Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtors, their estates and creditors, and

all parties in interest, and that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to section 365(a) of the Bankruptcy Code and

Bankruptcy Rules 6006 and 9014, the Agreement is hereby rejected; and it is further

ORDERED that, pursuant to section 562(a) of the Bankruptcy Code, any

claim for damages arising as a result of the Debtors' rejection of the Agreement shall be

determined as of the date of this Order; and it is further

ORDERED that the Debtors shall have the option to deliver to E-Capital

within ten (10) business days of the date hereof a statement that describes in reasonable

detail the calculations used to determine the damages arising under the Agreement as a result of the LBSF's rejection (the "Damages Calculation"); and it is further

ORDERED that if the Debtors do not deliver a Damages Calculation or E-Capital disputes the amount of damages set forth in the Damages Calculation, the Debtors request that E-Capital be required to file a proof of claim in compliance with the terms of the Bar Date Order[2], including the requirement to complete a Derivative Questionnaire and a Guarantee Questionnaire (as such terms are defined in the Bar Date Order), for damages arising under the Agreement by no later than thirty (30) days from the date of entry of an order granting the relief requested herein; provided, however, that if E-Capital has already timely filed a proof of claim in compliance with the Bar Date Order for damages arising under the Agreement, E-Capital does not need to file an additional proof of claim to dispute the amount of the damages set forth in the Damages Calculation or in the event that the Debtors do not deliver a Damages Calculation; and it is further

ORDERED that if E-Capital (a) timely filed a proof of claim in accordance with the Bar Date Order or (b) timely files a proof of claim no later than thirty (30) days from the date of entry of an order granting the relief requested herein, then (i) E-Capital and the Debtors will each have the ability to assert all rights in respect of claims arising under the Agreement and (ii) any party in interest will have the right to object to such proof of claim arising under the Agreement; and it is further

---

[2] Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof, and Approving the Proof of Claim Form, entered on July 2, 2009 [Docket No. 4271] (the "Bar Date Order").

ORDERED the Debtors timely deliver a Damages Calculation and E-Capital does not timely file, or has not already timely filed, a proof of claim in compliance with the terms established by the Bar Date Order for damages under the Agreement, then E-Capital will be deemed to have an allowed general unsecured claim against (i) LBSF and (ii) LBHI, as a creditor support provider for the payment obligations of LBSF under the Agreement, in the amounts set forth in the Damages Calculation delivered to E-Capital by the Debtors (subject to the treatment of such claims under a confirmed chapter 11 plan of the Debtors), and E-Capital will have no right to assert any other claims or claim amounts under the Agreement against any Debtor; and it is further

ORDERED that if the Debtors do not timely deliver a Damages Calculation and E-Capital did not timely file a proof of claim in accordance with the Bar Date Order and does not timely file a proof of claim in compliance with the terms of the Bar Date Order no later than thirty (30) days from the date of entry of an order granting the relief requested herein, then E-Capital will not be allowed any claim against the Debtors in respect of the Agreement; and it if further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: September __, 2010
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE