WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore (JCS – 6031)
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group
of Lehman Brothers Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------------x

**CONSOLIDATED RESPONSE OF THE AD HOC GROUP OF LEHMAN
BROTHERS CREDITORS WITH RESPECT TO (I) THE DEBTORS' AURORA BANK
MOTION AND (II) THE DEBTORS' WOODLANDS BANK MOTION**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

The Ad Hoc Group of Lehman Brothers Creditors (the "Group"), by and through its undersigned counsel, hereby files this consolidated response (the "Response") with respect to (i) the Debtors' Motion, Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 363 of the Bankruptcy Code, for Approval of (I) a Settlement Agreement Between the Debtors and Aurora Bank FSB Regarding the Master Forward Agreement and Other Matters and (II) Certain Other Related Relief, Including Authorization of (A) Certain Debtors to Make Capital Transfers, (B) LBHI to Enter Into a Capital Maintenance Agreement, and (C) LBHI to Extend the Duration of the Amended Repurchase Agreement and Financing Facility (the "Aurora Bank Motion") [Docket No. 11141], and (ii) the Debtors' Motion, Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 363 of the Bankruptcy Code, for Approval

of (I) a Settlement Agreement Between the Debtors and Woodlands Commercial Bank and (II) Certain Related Relief, Including Authorization of (A) Certain Debtors to Make Capital Transfers and (B) LBHI to Enter into a Capital Maintenance Agreement (the "Woodlands Bank Motion" and, with the Aurora Bank Motion, the "Bank Motions") [Docket No. 11142]. As and for its Response, the Group respectfully states as follows:

**RESPONSE**

1. Since February 2009, the Debtors have, as an enterprise, taken a series of actions pursuant to which they have transferred, contributed or otherwise loaned hundreds of millions of dollars to the Banks.[1] (Aurora Bank Motion ¶ 4.) They have taken these actions "with the expectation that LBHI would be able to recover its investments and realize over time the fair equity value of the Banks." (Id.) By the Bank Motions, the Debtors now seek authorization to consummate further transactions and settlements with FSB and Wooodlands (respectively, the "FSB Settlement" and the "Woodlands Settlement" and, together, the "Settlements") that call for the Debtors (but largely LBHI) to transfer an additional $1 billion of cash and other assets to the Banks. (See Aurora Bank Motion ¶ 9; Woodlands Bank Motion ¶ 8.) According to the Debtors, the Settlements will preserve LBHI's opportunity to realize on the Banks' combined book value of approximately $1.42 billion while at the same time resolving or otherwise addressing virtually all of the outstanding issues between and among the Debtors, the Banks and the applicable regulators, including with respect to any purported claims asserted against LBHI under section 365(o) of the Bankruptcy Code. (See Aurora Bank Motion ¶ 3; Woodlands Bank Motion ¶¶ 8, 10.) While the Group does not object to the Debtors' stated purpose in concept and, indeed,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Aurora Bank Motion and/or the Woodlands Bank Motion, each as may be applicable in the given context.

hopes that the Debtors do realize on their equity stake in the Banks, the Group initially had concerns with the scope of relief and purported resolution of inter-Debtor issues.

2.  With respect to the Debtors' proposed capital contribution to the Banks, the Group has been acutely focused on any contingent exposure the Banks might have to third-party liability on account of their prepetition involvement with mortgage securitization practices. The Group raised this concern with the Debtors and has been in a continued dialogue with the Debtors regarding this issue, including through the date hereof. As a result of these discussions, the Debtors agreed to conduct further diligence while holding open the Group's response deadline on the Bank Motions. At this time, the Group does not object to the Settlements on the understanding that the Debtors will complete their due diligence project prior to consummating the Settlements and making the contributions contemplated thereby.

3.  A second set of concerns existed with respect to various inter-Debtor issues raised by the Bank Motions, particularly two aspects of the relief requested. First, pursuant to the Woodlands Settlement as originally proposed, it appears that certain of the Debtors agreed to allocate the costs of such settlement between and among themselves without further Court supervision or authorization. (See Woodlands Bank Motion ¶¶ 39-41.) Specifically, the Debtors state as follows:

- "Woodlands is to receive as part of the Cash Capital Transfer approximately $36.2 million in settlement of a like amount of tax-related claims" and "[t]his tax-related obligation is LBHI's, which will be responsible for the full cost of this portion of the Settlement," (Woodlands Bank Motion ¶ 39);

- "[i]n recognition that Luxco does not have an ownership interest in Woodlands and will not benefit from the appreciation in value of Woodlands that the Settlement is expected to generate, Luxco will be separately allocated the costs of the Settlement to the extent of 90% of the estimated fair market value of the Luxco Collateral (to be agreed to by LBHI and Luxco) as of the settlement closing date and the remaining 10% will be borne by LBHI," purportedly because "LBHI and Luxco concluded that, for Luxco to bear the cost of the entire fair value of the underlying loan and to receive

- in return only a release of Woodlands' claim, would not fairly compensate Luxco for its participation in the Settlement," (Woodlands Bank Motion ¶ 40); and

- "[t]he remaining costs of the Settlement will be allocated among the Debtors (other than Luxco) in proportion to the amounts of liquidated claims of Woodlands, other than guarantee claims, asserted against them, after adjustment of the claim amounts that were recognized in the course of negotiation of the Settlement, provided that no Debtor, other than LBHI, shall bear a cost for settling the claim against it greater than the percentage recovery under its confirmed chapter 11 plan achieved by like claims," (Woodlands Bank Motion ¶ 41).

As the Group understands it, these compromises were in fact "negotiated" by one person acting on behalf of all of the affected Debtors and being advised by one set of counsel sitting on all sides thereof. Clearly, the shifting of hundreds of millions of dollars of assets and liabilities between Debtors should be subjected to more scrutiny than that of one conflicted individual and counsel.[2]

4. Second, with respect to the participation of LCPI and Luxco in the FSB Settlement, the Debtors stated, "LBHI (i) has considered what each of LCPI, Luxco and LBSF will gain in the Settlement, (ii) will fully compensate each of them for what it will give up in the Settlement, and (iii) has determined that it is appropriate for LBHI to enter into an additional arrangement with LCPI, Luxco, and LBSF, severally, in connection with the Settlement." (Aurora Bank Motion ¶ 39.) On this basis, "LBHI has separately agreed with LCPI and Luxco that LCPI and Luxco will not be responsible for funding the portion of the Capital Transfer representing the fair value of their respective portion of the MFA Joinder Collateral and instead, will each fund 90% of such amount and LBHI will fund the balance of such portion of the Capital Transfer." (Aurora Bank Motion ¶ 41.) Thus, "LCPI and Luxco will both further benefit from the Settlement by attaining unencumbered ownership of their respective interests in the

---

[2] The Group notes that nowhere does the Settlement purport to benefit LBHI for what may be the most valuable give-up: that of selling the estate's largest single asset – Archstone – to LCPI and Luxco for yet undefined consideration.

loans at 90% of their fair value." (Aurora Bank Motion ¶ 41.)  Critically lacking, however, in this discussion is any disclosure regarding the process by which and the person by whom the fair value of the underlying loans will be determined on the Closing Date.  These assets are worth in the hundreds of millions of dollars; thus, any "sale" between Debtors has to be at arms length and at a price authorized by the Court under section 363 of the Bankruptcy Code.  Given that the Bank Motions set up a different scheme, the Group was concerned that, as a result of an inaccurate valuation without any Court oversight, LBHI could suffer an unjustifiable loss in the tens if not hundreds of millions of dollars.

5. The Group discussed with the Debtors its concerns resulting from the above-referenced conflicts.  As a consequence and to permit the Bank Motions to go forward without objection from the Group, the Debtors have agreed to the inclusion of broad reservations of rights in the proposed orders that will allow the Group to bring any concerns to the Court with respect to any ultimate allocations of assets or liabilities by and among the Debtors.  As the Group has continuously voiced its concerns with respect to almost every form of relief sought by the Debtors (and even sought a protocol for addressing such issues), the Group continues to be troubled by the way inter-Debtor issues are continuously put off for resolution at an undisclosed future date.  Again, the disputes at bar will <u>not</u> be resolved under the Plan on file and, given the significant amounts at issue that are known at this time, can materially affect creditor distributions until finally resolved by the Court.

Dated: September 20, 2010
     New York, New York

Respectfully submitted,

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Gerard Uzzi (GU – 2297)
J. Christopher Shore (JS – 6031)

By: */s/ Gerard Uzzi*
    Gerard Uzzi

ATTORNEYS FOR THE AD HOC GROUP
OF LEHMAN BROTHERS CREDITORS