# Exhibit E

**(Libra CDSA Assignment Agreement)**

# ASSUMPTION, ASSIGNMENT AND SALE AGREEMENT

dated as of [●], 2010 among:

**Lehman Brothers Special Financing Inc.** (the "Assignor")

**Lehman Brothers Holdings Inc.** ("LBHI")

AND

**Société Générale, New York Branch** (the "Assignee").

Reference is made to that certain settlement agreement (the "Settlement Agreement"), dated as of September 20, 2010, among the Assignor, LBHI and the Assignee. All capitalized terms used herein but not defined herein shall have the meanings assigned thereto in the Settlement Agreement.

By entering into this Assumption, Assignment and Sale Agreement (the "Agreement"), each of the Assignor, LBHI and the Assignee acknowledges and agrees that the Settlement Approval Order, as in effect on the Settlement Effective Date (the "Final Order"), includes the Libra Assignment Determinations and authorizes the Assignment (as defined below). The Final Order is attached hereto as Annex I.

With respect to that certain ISDA Master Agreement, dated as of October 17, 2006 (together with the Schedule and Confirmations thereto, each dated October 17, 2006, the "Libra CDSA"), between the Assignor and Libra CDO Limited ("Libra") and all of the Assignor's rights and obligations under each transaction document that is related to the Libra CDSA (including, without limitation, the Libra Indenture and the Libra Senior Swap) specified in Annex II (each such transaction document, a "Libra Transaction Document") (all of the foregoing together with all of the Assignor's rights and obligations under each Affected Transaction (as defined below), collectively, the "Assigned Asset"), the Assignor and Libra, as the credit protection seller under the Assigned Asset (the "Remaining Party"), have entered into multiple Libra CDS Transactions, each such Libra CDS Transaction evidenced by one of the two Confirmations attached hereto as Annex III (each such Confirmation, an "Affected Confirmation"). A list of the Libra CDS Transactions outstanding as of the Libra Assignment Closing Date (each, an "Affected Transaction") shall be provided by the Assignor to the Assignee no later than [●] Business Days following the date on which the Libra Judgment (i) has been entered by the Bankruptcy Court, (ii) has not been stayed and the time for any motion to stay has expired and (iii) has not been appealed and the time for any appeals has expired, or was appealed and all appeals have been dismissed or have resulted in the affirmance of the Libra Judgment and the time for any further appeals has expired.

With effect from and including the first date on which the Libra Assignment Closing Conditions (as defined below) shall have been satisfied (the "Libra Assignment Closing Date"), the Assignor wishes to assign to the Assignee, and the Assignee wishes to accept the assignment of, all the rights, liabilities, duties and obligations (other than (x) any rights, liabilities, duties or obligations with respect to payments or other obligations due and payable or due to be performed on or prior

1

to the Libra Assignment Closing Date except for payment obligations the Assignee has expressly agreed to perform in, and only to the extent set forth in, Section 9 of the Settlement Agreement and (y) any obligations under the Settlement Agreement) of the Assignor under and in respect of the Assigned Asset (the "Assignment"), as more particularly described below.

Pursuant to the Final Order, the Assignor and Assignee are permitted to enter into this Agreement and to effectuate the Assignment without any consent that may be required from the Remaining Party under the Libra CDSA or any other party.

Pursuant to the Final Order, the Assignment shall take effect automatically and without any additional court order or action on the Libra Assignment Closing Date, as of which date each of the Assignor and LBHI shall be released from any and all of its obligations (other than (x) any obligations with respect to payments or other obligations due and payable or due to be performed on or prior to the Libra Assignment Closing Date except for payment obligations the Assignee has expressly agreed to perform in, and only to the extent set forth in, Section 9 of the Settlement Agreement and (y) any obligations under the Settlement Agreement) in connection with the Assigned Asset.

Accordingly, the parties agree as follows:

**1.    References.**

Except where a reference is explicitly made to the ISDA Master Agreement (Multicurrency-Cross Border) as published in 1992 by ISDA (the "1992 ISDA Master Agreement"), no reference to the 1992 ISDA Master Agreement shall be otherwise implied and the terms of the 1992 ISDA Master Agreement shall not otherwise have any implication on this Agreement.

**2.    Transfer and Undertakings.**

With effect from and including the Libra Assignment Closing Date and in consideration of the mutual representations, warranties and covenants contained in this Agreement and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged by each of the parties):

(a)    The Assignor hereby assigns to the Assignee, and the Assignee hereby assumes, all rights, liabilities, duties and obligations (other than (x) any rights, liabilities, duties or obligations with respect to payments or other obligations due and payable or due to be performed on or prior to the Libra Assignment Closing Date except for payment obligations the Assignee has expressly agreed to perform in, and only to the extent set forth in, Section 9 of the Settlement Agreement and (y) any obligations under the Settlement Agreement) of the Assignor under and in respect of the Assigned Asset; *provided, however*, that nothing contained herein shall act as an assignment of the Assignor's rights, liabilities, duties and obligations under any other agreement (including, without limiting the generality of the foregoing, the Settlement Agreement); and *provided further*, that nothing contained herein shall affect any rights, duties, liabilities or obligations of any of the Assignor or LBHI with respect to payments or other obligations due and payable or due to be performed on or prior to the Libra Assignment Closing Date

and all such payments and obligations shall be paid or performed by the Assignor and/or LBHI in accordance with the terms of the Final Order;

(b) The Assignee does not assume, and shall have no liability to the Assignor, LBHI or any other person for, any acts or omissions of the Assignor and/or LBHI under the Libra CDSA, any Affected Transaction or any related Libra Transaction Document prior to the Libra Assignment Closing Date, including, without limitation, with respect to any liabilities, duties or obligations of the Assignor and/or LBHI with respect to payments or other obligations due and payable or due to be performed on or prior to the Libra Assignment Closing Date except for payment obligations the Assignee has expressly agreed to perform in, and only to the extent set forth in, Section 9 of the Settlement Agreement; and

(c) Each Affected Transaction shall be governed by and form part of the Libra CDSA, which Libra CDSA, as deemed modified to be consistent with the Assignment, shall constitute an agreement between the Remaining Party and the Assignee. Without limiting the generality of the foregoing, the office of the Assignee for purposes of each Affected Transaction shall be the offices listed in Annex IV.

**3. Libra Assignment Closing Conditions.** The "Libra Assignment Closing Conditions" shall mean all of the following:

(a) either:

(i) the Libra Trustee has initiated an interpleader proceeding and named all Libra Noteholders as third-party defendants; or

(ii) the Debtors have amended the Debtors' Libra Complaint to name the Libra Noteholders as defendants and have notified the Libra Noteholders through each of the following methods: (1) sending the Debtors' Libra Complaint to each Libra Noteholder care of the Libra Trustee, as the Libra Note Registrar, with instructions to the Libra Trustee to forward the Debtors' Libra Complaint to the registered holder of each Libra Note, (2) sending the Debtors' Libra Complaint directly to the original holders of the Libra Notes (as of the issuance date thereof), as listed in the records of the Debtors (or any of their affiliates), (3) publication in *The Wall Street Journal* and *Investor's Business Daily* for three successive Business Days, and (4) any other method required by the court;

(b) a judgment (the "Libra Judgment") is entered by the Bankruptcy Court in either of the foregoing proceedings declaring the Libra Early Termination to be invalid and without force and effect;

(c) the Libra Judgment includes, among others, the following findings and holdings:

(i) the manner in which notice of the Libra Termination Claim was provided to the Libra Noteholders and all other parties entitled to such notice

effected proper service and is adequate, appropriate, reasonable and sufficient for all purposes and is approved; and

  (ii) the Libra Judgment is and shall be binding on the Other Libra Parties and each of their predecessors and successors; and

(d) the Libra Judgment (i) has not been stayed and the time for any motion to stay has expired and (ii) has not been appealed and the time for any appeals has expired, or was appealed and all appeals have been dismissed or have resulted in the affirmance of the Libra Judgment and the time for any further appeals has expired;

*provided that* the Assignee shall have the right, in its sole and absolute discretion, to waive any of the foregoing Libra Assignment Closing Conditions with the effect that any Libra Assignment Closing Condition so waived shall be deemed to have been satisfied for purposes of this Agreement.

**4. Representations and Warranties.**

(a) On the Libra Assignment Closing Date:

  (i) Each of the Assignor and LBHI represents and warrants to the Assignee that the Assignor and LBHI have obtained authorization for their entry into this Agreement and their performance of their respective obligations hereunder pursuant to the Final Order, and have complied with all steps required by the Final Order and, consequently, the Assignment is authorized by, and subject to the terms set forth in, the Final Order.

  (ii) Each of the Assignor and LBHI represents and warrants to the Assignee (which representations and warranties shall be subject in all cases to effectiveness of all terms of the Final Order) that:

   (A) it has made no prior transfer (whether by way of security or otherwise) of the Libra CDSA, or any corresponding Libra Transaction Document, as applicable, or any interest or obligation in or under the Libra CDSA, or any corresponding Libra Transaction Document, as applicable, or any interest or obligation in or under any Affected Confirmation, or any Libra corresponding Transaction Document, as applicable, or in respect of any Affected Transaction or any corresponding Libra Transaction Document, as applicable; and

   (B) as of the Libra Assignment Closing Date, all obligations of the Assignor and LBHI under the Libra CDSA, each Affected Transaction and each corresponding Libra Transaction Document required to be performed on or before the Libra Assignment Closing Date (except for payment obligations the Assignee has expressly agreed to perform in, and only to the extent set forth in,

Section 9 of the Settlement Agreement) have been fulfilled pursuant to the terms of the Final Order; *provided*, that one or more Events of Default (as defined in the 1992 ISDA Master Agreement) and/or Termination Events (as defined in the 1992 ISDA Master Agreement) have occurred in respect of the bankruptcy, ratings and/or other credit standing of Assignor and its Credit Support Provider (as defined in the Libra CDSA), which Events of Default or Termination Events shall, pursuant to the Final Order, be deemed to have been cured by the terms of this Agreement; *provided further*, that no such Events of Default or Termination Events shall occur as a result of the Assignor or LBHI entering into or performing its respective obligations under this Agreement.

(iii) Each of the Assignor and LBHI represents and warrants to the Assignee (which representations and warranties shall be subject in all cases to effectiveness of all terms of the Final Order) that:

(A) it is duly organized and validly existing under the laws of the jurisdiction of its organization or incorporation and, if relevant under such laws, is in good standing;

(B) it has the power to execute this Agreement and any other documentation relating to this Agreement to which it is a party, to deliver this Agreement and any other documentation relating to this Agreement that it is required by this Agreement to deliver and to perform its obligations under this Agreement and has taken all necessary action to authorize such execution, delivery and performance;

(C) such execution, delivery and performance do not violate or conflict with any law applicable to it, any provision of its constitutional documents, any order or judgment of any court or other agency of government applicable to it or any of its assets or any contractual restriction binding on or affecting it or any of its assets;

(D) all governmental and other consents that are required to have been obtained by it with respect to this Agreement have been obtained and are in full force and effect and all conditions of any such consents have been complied with;

(E) its obligations under this Agreement constitute its legal, valid and binding obligations, enforceable in accordance with their respective terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles

of general application (regardless of whether enforcement is sought in a proceeding in equity or at law));

(F) there is not pending or, to its knowledge, threatened against it or any of its affiliates any action, suit or proceeding at law or in equity or before any court, tribunal, governmental body, agency or official or any arbitrator that is likely to affect the legality, validity or enforceability against it of this Agreement or its ability to perform its obligations under this Agreement; and

(G) all applicable information that is furnished in writing by or on behalf of it to the Assignee is, as of the date of this Agreement, true and accurate in every material respect and does not omit any fact that would be material to the Assignee.

(iv) The Assignee represents and warrants to the Assignor (which representations and warranties shall be subject in all cases to effectiveness of all terms of the Final Order) that:

(A) it is duly organized and validly existing under the laws of the jurisdiction of its organization or incorporation and, if relevant under such laws, is in good standing;

(B) it has the power to execute this Agreement and any other documentation relating to this Agreement to which it is a party, to deliver this Agreement and any other documentation relating to this Agreement that it is required by this Agreement to deliver and to perform its obligations under this Agreement and has taken all necessary action to authorize such execution, delivery and performance;

(C) such execution, delivery and performance do not violate or conflict with any law applicable to it, any provision of its constitutional documents, any order or judgment of any court or other agency of government applicable to it or any of its assets or any contractual restriction binding on or affecting it or any of its assets;

(D) all governmental and other consents that are required to have been obtained by it with respect to this Agreement have been obtained and are in full force and effect and all conditions of any such consents have been complied with;

(E) its obligations under this Agreement constitute its legal, valid and binding obligations, enforceable in accordance with their respective terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles

(F) there is not pending or, to its knowledge, threatened against it or any of its affiliates any action, suit or proceeding at law or in equity or before any court, tribunal, governmental body, agency or official or any arbitrator that is likely to affect the legality, validity or enforceability against it of this Agreement or its ability to perform its obligations under this Agreement.

(b) Each of the Assignor and LBHI makes no representation or warranty and does not assume any responsibility with respect to the condition, financial or otherwise, of the Remaining Party under the Libra CDSA, the Assignee or any other person or for the performance and observance by the Remaining Party under the Libra CDSA, the Assignee or any other person of any of its obligations under any Affected Transaction or the Libra CDSA or any document relating thereto and any and all such conditions and warranties, whether express or implied by law or otherwise, are hereby excluded.

**5. Counterparts.**

This Agreement (and each amendment, modification and waiver in respect of it) may be executed and delivered in counterparts (including by facsimile transmission), each of which will be deemed an original.

**6. Costs and Expenses.**

The parties will each pay their own costs and expenses (including legal fees) incurred in connection with this Agreement and as a result of the negotiation, preparation and execution of this Agreement.

**7. Amendments.**

No amendment, modification or waiver in respect of this Agreement will be effective unless in writing (including a writing evidenced by a facsimile transmission) and executed by each of the parties or confirmed by an exchange of telexes or electronic messages on an electronic messaging system.

**8.** (a) **Governing Law.**

This Agreement will be governed by and construed in accordance with New York law.

(b) **Jurisdiction.**

With respect to any suit, action or proceedings relating to this Agreement brought while LBSF and LBHI's chapter 11 cases are pending before the Bankruptcy Court, each party agrees that such suit, action or proceedings shall be brought

before the Bankruptcy Court and irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court and waives any defense of lack of jurisdiction, improper venue or inconvenient forum that may be available to any action brought in such court.  Upon the closing of LBSF and LBHI's chapter 11 cases, any suit, action or proceedings relating to this Agreement shall be brought in courts of the State of New York and the United States District Court located in the Borough of Manhattan in New York City and each party irrevocably submits to the exclusive jurisdiction of such courts and waives any defense of lack of jurisdiction, improper venue or inconvenient forum that may be available to any action brought in such courts.

IN WITNESS WHEREOF the parties have executed this Assumption, Assignment and Sale Agreement on the respective dates specified below with effect from and including the Libra Assignment Closing Date.

**LEHMAN BROTHERS SPECIAL FINANCING, INC.**

By:_____
   Name:
   Title:


**LEHMAN BROTHERS HOLDINGS INC.**

By:_____
   Name:
   Title:


**SOCIÉTÉ GÉNÉRALE, NEW YORK BRANCH**

By:_____
   Name:
   Title:

ANNEX I

[FINAL ORDER]

ANNEX II

[ASSIGNED ASSET]

# ANNEX III

[AFFECTED CONFIRMATIONS]

ANNEX IV

[LIST OF OFFICES]