**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                : Chapter 11 Case No.
                                                     :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,         : 08-13555 (JMP)
                                                     :
                                           Debtors.  : (Jointly Administered)
------------------------------------------------------------------x

### ORDER APPROVING SETTLEMENT AGREEMENT AMONG LEHMAN BROTHERS SPECIAL FINANCING INC., LEHMAN BROTHERS HOLDINGS, INC., AND SOCIÉTÉ GÉNÉRALE, NEW YORK BRANCH, RELATING TO CERTAIN SWAP TRANSACTIONS WITH MKP VELA CBO, LTD. AND LIBRA CDO LIMITED AND GRANTING RELATED RELIEF

Upon the motion, dated September 20, 2010 (the "Motion"),[1] of Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings Inc. ("LBHI"), as debtors and debtors-in-possession (together, the "Debtors), pursuant to sections 105(a), 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004, 6006 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for (i) approval of a settlement agreement (the "Settlement Agreement") among LBSF, LBHI, and Société Générale, New York Branch ("SG") relating to certain swap transactions with MKP Vela CBO, Ltd. ("Vela") and Libra CDO Limited ("Libra"), (ii) the assumption, assignment, and sale of LBSF's interest in that certain Credit Default Swap Agreement, dated October 17, 2006, consisting of an ISDA Master Agreement, a Schedule, and Confirmations (collectively, the "Libra CDSA") to SG on the terms and conditions set forth in the Settlement Agreement and in the Form of Libra CDSA Assignment Agreement attached as Exhibit 2 to the Settlement Agreement (the "Libra CDSA Assignment Agreement"), (iii) the assumption, assignment, and

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Settlement Agreement, a copy of which is annexed hereto as Exhibit A.

sale of LBSF's interest in that certain Credit Default Swap Agreement, consisting of an ISDA Master Agreement, dated November 16, 2006, and an amended and restated schedule, a credit support annex, and amended and restated confirmations, dated April 23, 2008 (collectively, the "<u>Vela CDSA</u>"), to SG on the terms and conditions set forth in the Settlement Agreement and in the Form of Vela CDSA Assignment Agreement attached as Exhibit 3 to the Settlement Agreement (the "<u>Vela CDSA Assignment Agreement</u>"), and (iv) other related relief, all as more fully described in the Motion; and a hearing having been held to consider the Motion; and upon the Court's consideration of the Motion and the record of the hearing to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors and their estates and that the legal and factual bases set forth in the Motion establish just cause for the relief granted by the Order; and after due deliberation and sufficient cause appearing therefor, it is

ADJUDGED, FOUND AND DETERMINED:

A. **Jurisdiction and Venue**. The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory and Rule Predicates**. The statutory predicates for the relief sought in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9019.

C. **Notice**. As set forth in the Motion and evidenced by the affidavits of service filed with the Court, due, proper, timely, adequate and sufficient notice of the Motion, the Settlement Agreement, the Libra CDSA Assignment Agreement and the Vela CDSA Assignment Agreement has been provided in accordance with Bankruptcy Rule 2002(a), (l) and (m) and the

procedures set forth in the order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) SG; (vii) Libra; (viii) the Libra Trustee; (ix) the Libra Noteholders; (x) the Libra Collateral Manager; (xi) Libra CDO, LLC; (xii) Vela; (xiii) the Vela Trustee, (xiv) the Vela Noteholders; (xv) the Vela Collateral Manager, (xvi) MKP Vela CBO, LLC, and (xvii) all parties who have requested notice in these chapter 11 cases. No other or further notice is required.

        D. **Opportunity to Object**. A reasonable opportunity to object and to be heard as to the Motion and the relief requested has been given as required by the Bankruptcy Code and Bankruptcy Rules to all persons entitled to notice.

        E. **Best Interests and Reasonableness**. Good and sufficient reasons for approval of the Settlement Agreement and the transactions contemplated by such Agreement, including the Libra CDSA Assignment Agreement and the Vela CDSA Assignment Agreement, have been demonstrated, and the Debtors' entry into the Settlement Agreement, the Libra CDSA Assignment Agreement and the Vela CDSA Assignment Agreement is each (i) a decision within the sound exercise of the Debtors' business judgment; (ii) in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and (iii) reasonable and appropriate under the circumstances. The Settlement Agreement falls within the range of reasonableness and satisfies the standard for approval under Bankruptcy Rule 9019.

        F. **Arm's-Length Transactions**. The Settlement Agreement, the Libra CDSA Assignment Agreement and the Vela CDSA Assignment Agreement were each

negotiated extensively, proposed and entered into (or, in the case of the Libra CDSA Assignment Agreement and the Vela CDSA Assignment Agreement, may be entered into in accordance with the Settlement Agreement) by the Debtors and SG, without collusion, after good faith, arm's-length bargaining and negotiations. SG is not an "insider" of the Debtors within the meaning of section 101(31) of the Bankruptcy Code. Neither the Debtors nor SG have engaged in any conduct that would cause or permit the Libra CDSA Assignment Agreement or the Vela CDSA Assignment Agreement to be avoided under section 363(n) of the Bankruptcy Code.

        G.    **Good Faith Purchaser**. SG is a good faith purchaser of LBSF's rights, title and interest in the Libra CDSA and the Vela CDSA within the meaning of section 363(m) of the Bankruptcy Code.

        H.    **Free and Clear**. LBSF's rights, obligations and interests in the Libra CDSA and the Vela CDSA constitute property of its estate. Pursuant to section 363(f) of the Bankruptcy Code, LBSF may sell its interests under the Libra CDSA and the Vela CDSA to SG free and clear of any claims or interests. The assumption, assignment and sale of LBSF's rights and obligations under the Libra CDSA and the Vela CDSA to SG pursuant to the Libra CDSA Assignment Agreement and the Vela CDSA Assignment Agreement, respectively, will be a legal, valid, and effective transfer of such rights and obligations, and will vest SG with all right, title, and interest of LBSF under the Libra CDSA and the Vela CDSA, as applicable, free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code) (including, without limitation, successor liability claims), encumbrances, obligations, liabilities, contractual commitments, rights of first refusal or interests of any kind or nature whatsoever (collectively, the "Interests").

I. **Cure/Adequate Assurance**.  LBSF has: (i) cured or provided adequate assurance of cure, of any default existing prior to the date hereof with respect to the Libra CDSA and the Vela CDSA, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Libra CDSA and the Vela CDSA, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code, and (iii) provided adequate assurance of future performance by the assignee, SG, within the meaning of section 365(f)(2)(B) of the Bankruptcy Code.

J. **Section 365(f) of the Bankruptcy Code**.  The transactions contemplated in and evidenced under the Libra CDSA Assignment Agreement and the Vela CDSA Assignment Agreement are not prohibited under the terms of the Libra CDSA or the Libra Indenture or the Vela CDSA or the Vela Indenture, as applicable, and any such terms that purport to prohibit, restrict or condition the assignment of LBSF's interest in the Libra CDSA or the Vela CDSA, are unenforceable pursuant section 365(f) of the Bankruptcy Code.

NOW, THEREFORE, IT IS ORDERED:

1. **Motion Granted**.  The Motion and the relief requested therein is GRANTED in its entirety and APPROVED.

2. **Objections Overruled**.  Objections, if any, to the Motion and entry of this Order, including to the Settlement Agreement, the Libra CDSA Assignment Agreement and the Vela CDSA Assignment Agreement, that have not been withdrawn, waived, settled, or otherwise resolved pursuant to the terms hereof are denied and overruled on the merits in their entirety with prejudice.

3. **Settlement Agreement Approved**. Pursuant to Bankruptcy Rule 9019, the Settlement Agreement, inclusive of all of the terms and conditions thereto, is approved and shall be binding on the Debtors and SG, and each of their predecessors and successors and assigns. The Debtors are authorized to enter into and perform their respective obligations under the Settlement Agreement and to execute all further documents and take such further actions as may be required, necessary or appropriate, including, without limitation, the posting and/or use of cash as provided in the Settlement Agreement, to implement the transactions contemplated by the Settlement Agreement.

4. **The SG Payment and the SG Guarantee**. On the 5th business day after this Order becomes a "Final Order" (the "Payment Date"), SG shall, subject to the terms and conditions of the Settlement Agreement, (i) pay LBSF $370,000,000 (the "SG Payment") and (ii) guarantee to LBSF a recovery of up to $75,000,000 from the Libra and Vela Transactions (the "SG Guarantee"). The SG Guarantee shall be satisfied by SG in accordance with, and subject to, the terms and conditions of the Settlement Agreement. Notwithstanding anything to the contrary, after this Order becomes a "Final Order," the Parties' obligations under Section 7 of the Settlement Agreement, including SG's obligation to make the SG Payment and to perform the SG Guarantee, shall not be conditioned or dependent upon the effectiveness of the Libra CDSA Assignment Agreement or the Vela CDSA Assignment Agreement in accordance with paragraph 8 of this Order. As used in this paragraph, a "Final Order" means a Settlement Approval Order, as defined in the Settlement Agreement, that (i) has not been stayed and the time for any motion to stay has expired and (ii) has not been appealed and the time for any appeals has expired, or was appealed and all appeals have been dismissed or have resulted in the affirmance of the order and the time for any further appeals has expired.

5. **Deferral of Payment Due Date under Libra CDSA and Vela CDSA Approved**. The Debtors are permitted to unilaterally defer the payment due date in respect of any payment payable to them under the Libra CDSA and the Vela CDSA, and the deferral contemplated in Sections 7.4 and 7.5 of the Settlement Agreement shall be binding on the Other Libra Parties and the Other Vela Parties, as applicable, and is hereby authorized and approved.

6. **Assumption, Assignment and Sale of Libra CDSA Approved**. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to paragraph 8 below, (i) the Libra CDSA Assignment Agreement, and all of the terms and conditions thereto, is approved and shall be binding on LBSF and SG, and each of their successors and assigns and (ii) LBSF's assumption, assignment and sale of its interests, rights and obligations under the Libra CDSA to SG pursuant to the Libra CDSA Assignment Agreement is approved. LBSF is authorized to enter into and perform its obligations under the Libra CDSA Assignment Agreement, and to execute all further documents and take such further actions as may be necessary and appropriate to implement the transactions contemplated by the Libra CDSA Assignment Agreement. On the Libra Assignment Closing Date, the current defaults of LBSF and LBHI under the Libra CDSA shall be deemed cured, and any provision in such agreement, or any other agreement, that (i) purports to prohibit or condition the assignment (including, without limitation, any purported prerequisites that the Libra Rating Condition be satisfied) of the Libra CDSA, (ii) requires the consent of Libra or any other person in order for the assignment of LBSF's interest to be valid, or (iii) allows Libra, or any other third party, to terminate, recapture, impose any penalty or condition on renewal or extension, or modify any term or condition in respect of the Libra CDSA, the Libra CDS Transactions, the Libra Indenture

or any other agreement upon or as a result of such assignment are void, of no force and effect and shall not be enforceable against SG.

7. **Assumption, Assignment and Sale of Vela CDSA Approved**. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to paragraph 8 below, (i) the Vela CDSA Assignment Agreement, and all of the terms and conditions thereto, is approved and shall be binding on LBSF and SG, and each of their successors and assigns and (ii) LBSF's assumption, assignment and sale of its interests, rights and obligations under the Vela CDSA to SG pursuant to the Vela CDSA Assignment Agreement is approved. LBSF is authorized to enter into and perform its obligations under the Vela CDSA Assignment Agreement, and to execute all further documents and take such further actions as may be necessary and appropriate to implement the transactions contemplated by the Vela CDSA Assignment Agreement. On the Vela Assignment Closing Date, the current defaults of LBSF and LBHI under the Vela CDSA shall be deemed cured, and any provision in such agreement, or any other agreement, that (i) purports to prohibit or condition the assignment (including, without limitation, any purported prerequisites that the Vela Rating Condition be satisfied) of the Vela CDSA, (ii) requires the consent of Vela or any other person in order for the assignment of LBSF's interest to be valid, or (iii) allows Vela, or any other third party, to terminate, recapture, impose any penalty or condition on renewal or extension, or modify any term or condition in respect of the Vela CDSA, the Vela CDS Transactions, the Vela Indenture or any other agreement upon or as a result of such assignment are void, of no force and effect and shall not be enforceable against SG.

8. **Effective Date of Assumption and Assignment**. The assumption, assignment, and sale of the Libra CDSA by LBSF to SG shall be effective automatically and

without any additional Court order or action on the Libra Assignment Closing Date. The assumption, assignment, and sale of the Vela CDSA by LBSF to SG shall be effective automatically and without any additional Court order or action on the Vela Assignment Closing Date. Within seven business days of the satisfaction of the Libra Assignment Closing Conditions or the Vela Assignment Closing Conditions, LBSF shall file and serve on Libra and the Libra Trustee or Vela and the Vela Trustee, as applicable, notice of such event. LBSF may assume the Libra CDSA only pursuant to the Libra CDSA Assignment Agreement, and LBSF may not assign and/or sell its interest in the Libra CDSA to any party other than SG. LBSF may assume the Vela CDSA only pursuant to the Vela CDSA Assignment Agreement, and LBSF may not assign and/or sell its interest in the Vela CDSA to any party other than SG.

9. **Libra Floating Amounts and Credit Events**. Effective as of the Libra Assignment Closing Date:

   i. the maximum aggregate amount of all Libra Credit Protection Payments and Libra CDS Termination Payments payable by Libra under the Libra CDSA shall be reduced to an amount equal to the aggregate funds available to Libra for making such payments without causing a draw on the Libra Senior Swap Agreement, with the effect that draws on the Libra Senior Swap Agreement are forever foreclosed;

   ii. SG, as successor credit protection buyer, is permitted to trigger any and all Libra Floating Amount Events and Libra Credit Events that occurred during the period beginning on October 10, 2008 and ending on the Libra Assignment Closing Date, regardless of the passage of time from the date on which any such Libra Floating Amount Event or Libra Credit Event has occurred;

iii. the rating requirement set forth in clause (ii)(A) of the definition of "Rating Requirement" in each of the Libra CDSA Confirmations shall be satisfied with respect to a "buyer" whose long term debt obligations, or the long terms debt obligations of its "credit support provider," are rated "A+" by Standard & Poor's if the Libra Rating Condition with respect to Standard & Poor's has been obtained;

iv. (a) SG shall have full discretion as to when and if to deliver to Libra notices of Libra Floating Amounts due with respect to outstanding Libra Floating Amount Events under the Libra CDSA and full discretion to seek an amount equal to or less than the Libra Floating Amount due to the "buyer" under the Libra CDSA in respect of any outstanding Libra Floating Amount Events; (b) the exercise of such discretion is deemed to satisfy any applicable requirements under the Libra CDSA; and (c) in the event draws are made on the Libra Senior Swap Agreement, all such funds may be retained by the Libra Senior Swap Counterparty, as irrevocable assignee of the "buyer" under the Libra CDSA and party rightfully entitled to such funds; and

v. any determination of the portion of the Libra Floating Payments made prior to the Debtors' bankruptcy filings that remains subject to reimbursement under the Libra CDSA shall not disregard the period from the purported designation of an early termination date under the Libra CDSA through the date of the Libra Judgment.

10. **Vela Floating Amounts and Credit Events**. Effective as of the Vela Assignment Closing Date:

i. the maximum aggregate amount of all Vela Credit Protection Payments, Vela CDS Termination Payments, Vela Premium Reserve payments and Vela Net Issuer Premium payments by Vela under the Vela CDSA shall be reduced to an amount equal to the aggregate funds available to Vela for making such payments without causing a draw on the Vela Senior Swap Agreement, with the effect that draws on the Vela Senior Swap Agreement are forever foreclosed;

ii. SG, as successor credit protection buyer, is permitted to trigger any and all Vela Floating Amount Events and Vela Credit Events that occurred during the period beginning on September 30, 2008 and ending on the Vela Assignment Closing Date, regardless of the passage of time from the date on which any such Vela Floating Amount Event or Vela Credit Event has occurred;

iii. (a) SG shall have full discretion as to when and if to deliver to Vela notices of Vela Floating Amounts due with respect to outstanding Vela Floating Amount Events under the Vela CDSA and full discretion to seek an amount equal to or less than the Vela Floating Amount due to the "buyer" under the Vela CDSA in respect of any outstanding Vela Floating Amount Events; (b) the exercise of such discretion is deemed to satisfy any applicable requirements under the Vela CDSA; and (c) in the event draws are made on the Vela Senior Swap Agreement, all such funds may be retained by the Vela Senior Swap Counterparty, as irrevocable assignee of the "buyer" under the Vela CDSA and party rightfully entitled to such funds; and

iv. any determination of the portion of the Vela Floating Payments made prior to the Debtors' bankruptcy filings that remains subject to reimbursement under the Vela

CDSA shall not disregard the period from the purported designation of an early termination date under the Vela CDSA through the date of the Vela Judgment.

11. **Section 365(k) of the Bankruptcy Code**. Immediately upon the Libra Assignment Closing Date and the Vela Assignment Closing Date, the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, of all further obligations under the Libra CDSA and the Vela CDSA, respectively.

12. **Ipso Facto Clauses Ineffective**. Upon the Libra Assignment Closing Date, no Event of Default or Termination Event affecting the "buyer" shall exist under the Libra CDSA, and no party shall be permitted to declare a default, terminate, cease payment, delivery or any other performance under the Libra CDSA, the Libra Indenture, or any agreement relating to either thereof, or otherwise modify any such agreement, assert any claim or right to termination payment, or impose any penalty or otherwise take action against SG under the Libra CDSA as a result of the financial condition, bankruptcy or failure to perform any of obligations under the Libra CDSA of the Debtors. Upon the Vela Assignment Closing Date, no Event of Default or Termination Event affecting the "buyer" shall exist under the Vela CDSA, and no party shall be permitted to declare a default, terminate, cease payment, delivery or any other performance under the Vela CDSA, the Vela Indenture, or any agreement relating to either thereof, or otherwise modify any such agreement, assert any claim or right to termination payment, or impose any penalty or otherwise take action against SG under the Vela CDSA as a result of the financial condition, bankruptcy or failure to perform any of obligations under the Vela CDSA of the Debtors.

13. **Free and Clear**. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Libra Assignment Closing Date and the Vela Assignment Closing

Date, SG shall take title to and possession of LBSF's interests in the Libra CDSA and the Vela CDSA, respectively, free and clear of all Interests.

14. **Cure and Adequate Assurance**. Upon (i) the Libra Assignment Closing Date, LBSF shall pay $17,520,316 to Libra in cure payments and (ii) the Vela Assignment Closing Date, LBSF shall pay $15,304,759 to Vela in cure payments, in each case as follows. Cure payments shall be deducted from payments due to LBSF from Libra or Vela under the Libra CDSA or the Vela CDSA, respectively, including payments not made to LBSF upon reliance of the purported termination of the Libra CDSA or the Vela CDSA. If payments to LBSF are insufficient to cover the full cure payment due to Libra or Vela, then LBSF shall pay the difference of such amounts to Libra or Vela, as applicable, within 30 days of the Libra Assignment Closing Date or Vela Assignment Closing Date or such other time as may be agreed to by LBSF and the payee. No other or further cure payments shall be required of LBSF. LBSF has provided adequate assurance of future performance by the assignee, SG, within the meaning of section 365(f)(2)(B) of the Bankruptcy Code.

15. **Section 363(n) of the Bankruptcy Code**. The consideration provided by SG for LBSF's interest in the Libra CDSA and the Vela CDSA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

16. **Good Faith**. SG is a good-faith purchaser of the LBSF's interests in the Libra CDSA and the Vela CDSA and shall be entitled to all the benefits and protections afforded in section 363(m) of the Bankruptcy Code.

17. **Stay of Debtors' Claims**. Prosecution of the Debtors' claims against SG in the Libra Adversary Proceedings is stayed until the Payment Date, at which time such claims against SG will be dismissed with prejudice without notice or further order of the Court.

Prosecution of the Debtors' claims in the Libra Adversary Proceedings against Libra and the Libra Trustee is stayed and the Debtors shall not prosecute or in any litigation take a position regarding the Libra Termination Claim against the Other Libra Parties, in each case, until the date on which the Libra Termination Claim Preconditions shall have been satisfied. The Debtors shall not prosecute or in any litigation take a position regarding the Vela Termination Claim against SG until the Payment Date, at which time such claims against SG will be dismissed with prejudice without notice or further order of the Court. The Debtors shall not prosecute or in any litigation take a position regarding the Vela Termination Claim against the Other Vela Parties until the date on which the Vela Termination Claim Preconditions shall have been satisfied.

18. **Releases Authorized**. The releases contained in the Settlement Agreement shall be effective as of the Payment Date and SG, LBSF and LBHI shall be deemed to have released and are each permanently enjoined from asserting, pursuing or prosecuting in any manner, and in any forum, any and all claims released pursuant to the Settlement Agreement; provided, however, that (i) the Debtors shall be permitted to pursue the Libra Termination Claim and the Libra Priority Claim against the Other Libra Parties or the Other Vela Parties (but in the case of the Libra Termination Claim, only if the Libra Termination Claim Preconditions have been satisfied) and (ii) the Debtors shall be permitted to pursue the Vela Termination Claim and the Vela Priority Claim as against the Other Vela Parties (but in the case of the Vela Termination Claim, only if the Vela Termination Claim Preconditions have been satisfied).

19. **Payment of Break-Up Fee**. Pursuant to the Court's order, dated June 1, 2009 [Docket No. 3709], approving a break-up fee payable to Deutsche Bank AG, London Branch ("DB") in connection with the Libra CDSA, LBSF is authorized to pay $20,000,000 to

DB in accordance with and subject to the terms of the letter agreement, dated May 5, 2009, between the Debtors and DB regarding the same.

20. **No Modifications**.  Nothing contained in any chapter 11 plan confirmed in any Debtor's bankruptcy case, any order confirming any such plan or any other order entered in these chapter 11 cases (including any order entered after any conversion of a chapter 11 case of any of the Debtors to a case under chapter 7 of the Bankruptcy Code) shall supersede, alter, amend or modify the provisions of the Settlement Agreement or this Order.

21. **Retention of Jurisdiction**.  The Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2),  to hear and determine all matters arising from or relating to the implementation of this Order.

Dated: New York, New York
       October __, 2010

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE