# EXHIBIT A



# Policy of Title Insurance

## *Fidelity National Title Insurance Company*
A Stock Company

┌─────────────────────────┐
│ **Duplicate Original** │
└─────────────────────────┘

Policy Number  **27-44-94 -**

120334

### LOAN POLICY OF TITLE INSURANCE

*SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorney's fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by the insured by reason of:*

1. *Title to the estate or interest described in Schedule A being vested otherwise than as stated herein;*

2. *Any defect in or lien or encumbrance on such title;*

3. *Lack of a right of access to and from the land;*

4. *Unmarketability of such title;*

5. *The invalidity or unenforceability of the lien of the insured mortgage upon said estate or interest except to the extent that such invalidity or unenforceability, or claim thereof, arises out of the transaction evidenced by the insured mortgage and is based upon*
   *a. usury, or*

   *b. any consumer credit protection or truth in lending law;*

6. *The priority of any lien or encumbrance over the lien of the insured mortgage;*

7. *Any statutory lien for labor or material which now has gained or hereafter may gain priority over the lien of the insured mortgage, except any such lien arising from an improvement on the land contracted for and commenced subsequent to Date of Policy not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;*

8. *Any assessments for street improvements under construction or completed at Date of Policy which now have gained or hereafter may gain priority over the insured mortgage; or*

9. *The invalidity or unenforceability of any assignment, shown in Schedule A, of the insured mortgage or the failure of said assignment to vest title to the insured mortgage in the named insured assignee free and clear of all liens.*

*IN WITNESS WHEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.*

### *Fidelity National Title Insurance Company*

BY

President

*(SEAL)*

ATTEST

Secretary

Countersigned: _____
                     Authorized Counter Signature

## SCHEDULE OF EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy:

1. (a) Governmental police power; (b) Any law, ordinance or governmental regulation relating to environmental protection; (c) Any law, ordinance or governmental regulation (including but not limited to building or zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; (d) The effect of any violation of the matters excluded under (a), (b) or (c) above, unless notice of a defect, lien or encumbrance resulting from a violation has been recorded at Date of Policy in those records in which under state statutes deeds, mortgages, judgment liens or lis pendens must be recorded in order to impart constructive notice to purchasers of the land for value and without knowledge.

2. Rights of eminent domain unless notice of the exercise of such rights appears in the public records at Date of Policy.

3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant, (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder, (c) resulting in no loss or damage to the insured claimant, (d) attaching or created subsequent to Date of Policy (except to the extent insurance is afforded herein as to any statutory lien for labor or material).

4. Unenforceability of the lien of the insured mortgage because of failure of the Insured at Date of Policy or of any subsequent owner of the indebtedness to comply with applicable "doing business" laws of the state in which the land is situated.

5. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

# CONDITIONS AND STIPULATIONS

## 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes (i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of such indebtedness (reserving, however, all rights and defenses as to any such successor who acquires the indebtedness by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin or corporate or fiduciary successors that the Company would have had against the successor's transferor), and further includes (ii) any governmental agency or instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing said indebtedness, or any part thereof, whether named as an insured herein or not, and (iii) the parties designated in paragraph 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage hereunder.

(c) "knowledge": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of any public records.

(d) "land": the land described, specifically or by reference in Schedule C, and improvements affixed thereto which by law constitute real property; provided, however, the term "land" does not include any property beyond the lines of the area specifically described or referred to in Schedule C, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": those records which by law impart constructive notice of matters relating to said land.

## 2. (a) CONTINUATION OF INSURANCE AFTER ACQUISITION OF TITLE

This policy shall continue in force as of Date of Policy in favor of an insured who acquires all or any part of the estate or interest in the land described in Schedule C by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage, and if the insured is a corporation, its transferee of the estate or interest so acquired, provided the transferee is the parent or wholly owned subsidiary of the insured; and in favor of any governmental agency or instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage; provided that the amount of insurance hereunder after such acquisition, exclusive of costs, attorneys' fees and expenses which the Company may become obligated to pay, shall not exceed the least of:

   (i) the amount of insurance stated in Schedule A;

   (ii) the amount of the unpaid principal of the indebtedness as defined in paragraph 8 hereof, plus interest thereon, expenses of foreclosure and amounts advanced to protect the lien of the insured mortgage and secured by said insured mortgage at the time of acquisition of such estate or interest in the land; or

   (iii) the amount paid by any governmental agency or instrumentality, if such agency or instrumentality is the insured claimant, in the acquisition of such estate or interest in satisfaction of its insurance contract or guaranty.

(b) CONTINUATION OF INSURANCE AFTER CONVEYANCE OF TITLE

The coverage of this policy shall continue in force as of Date of Policy in favor of an insured so long as such insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from such insured, or so long as such insured shall have liability by reason of covenants of warranty made by such insured in any transfer or conveyance of such estate or interest; provided, however, this policy shall not continue in force in favor of any purchaser from such insured of either said estate or interest or the indebtedness secured by a purchase money mortgage given to such insured.

## 3. DEFENSE AND PROSECUTION OF ACTIONS — NOTICE OF CLAIM TO BE GIVEN BY AN INSURED CLAIMANT

(a) The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured, or defenses, restraining orders or injunctions interposed against a foreclosure of the insured mortgage or a defense interposed against an insured in an action to enforce a contract for a sale of the indebtedness secured by the insured mortgage, or a sale of the estate or interest in said land, to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy.

(b) The insured shall notify the Company promptly in writing (i) in case any action or proceeding is begun or defense or restraining order or injunction is interposed as set forth in (a) above, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If such prompt notice shall not be given to the Company, then as to such insured all liability of the Company shall cease and terminate in regard to the matter or matters for which such prompt notice is required; provided, however, that failure to notify shall in no case prejudice the rights of any such insured under this policy unless the Company shall be prejudiced by such failure and then only to the extent of such prejudice.

(c) The Company shall have the right at its own cost to institute and without undue delay prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, and the Company may take any appropriate action under the terms of this policy, whether or not it shall be liable thereunder, and shall not thereby concede liability or waive any provision of this policy.

(d) Whenever the Company shall have brought any action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any such litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(e) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured hereunder shall secure to the Company the right to so prosecute or provide defense in such action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of such insured for such purpose. Whenever requested by the Company, such insured shall give the Company all reasonable aid in any such action or proceeding, in effecting settlement, securing evidence, obtaining witnesses, or prosecuting or defending such action or proceeding, and the Company shall reimburse such insured for any expense so incurred. (Continued on inside back cover)

**SCHEDULE A**

Order Number: 9842386, 9842385, 9842428     Policy No.:         27-44-92 120334
                                                Amount of Insurance:   $235,000,000.00
                                                   Premium:           $ 117,500.00

Date of Policy:   January 19, 2006 at 8:00 a.m.

1.     Name of Insured:

       **Lehman Commercial Paper Inc., its successors and/or assigns as their interests may appear**

2.     The estate or interest in the land which is encumbered by the insured mortgage is:

       A Fee as to Parcels 1, 2, 3, 7, 8, 9, 10, 11; and Easements as to Parcels 4, 5 and 6

3.     Title to the estate or interest in the land is vested in:

       LBREP/L-SUNCAL MCSWEENY FARMS, LLC, a Delaware limited liability company (as to Parcels 1 and 2); L-SunCal Summerwind Ranch, LLC, a Delaware limited liability company (as to Parcels 3, 4, 5, 6); LBREP/L-SunCal McAllister Ranch, LLC, a Delaware limited liability company

4.     The insured mortgage and assignments thereof, if any, are described as follows.

       **A deed of trust** to secure an indebtedness in the amount shown below, and any other obligations secured thereby

| | |
|---|---|
| Amount: | $235,000,000.00 |
| Dated: | January 19, 2006 |
| Trustor: | LBREP/L-SUNCAL MCSWEENY FARMS, LLC, a Delaware limited liability company; LBREP/L-SunCal Summerwind Ranch, LLC, a Delaware limited liability company; LBREP/L-SunCal McAllister Ranch, LLC, a Delaware limited liability company |
| Trustee: | Fidelity National Title Insurance Company |
| Beneficiary: | Lehman Commercial Paper Inc., as Administrative Agent, Beneficiary |
| Loan No.: | None Shown |
| Recorded: | January 23, 2006 as Instrument No. 2006-50762; January 23, 2006 as Instrument No. 2006-50758; and January 23, 2006 as Instrument No. 000206016535, all of Official Records |

5.     The land referred to in this policy is situated in the Cities of Hemet and Calimesa, County of Riverside and County of Kern, State of California, and is described as follows:

       SEE EXHIBIT "ONE" ATTACHED HERETO AND MADE A PART HEREOF

**THIS POLICY VALID ONLY IF SCHEDULE B IS ATTACHED**

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

## EXHIBIT "ONE"

PARCEL 1: PTN'S APN 454-170-02; 454-170-003; 454-070-013; PTN. 454-180-003; 454-180-004; 454-100-012 AND 454-100-018

THAT PORTION OF TRACT NO. 32529, LABELED "REMAINDER PARCEL", IN THE CITY OF HEMET, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP FILED IN BOOK 395, PAGES 73 THROUGH 76, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2: PTN. 454-170-002 AND PTN. 454-180-003

LOTS 8, 9, 10 AND 11, OF TRACT NO. 32529, IN THE CITY OF HEMET, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP FILED IN BOOK 395, PAGES 73 THROUGH 76, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 3: APN: 413-180-017-1, 413-180-018-2, 413-290-003-8, 413-290-004-9 and 413-290-007-2

PARCEL B OF CERTIFICATE OF COMPLIANCE FOR LOT LINE ADJUSTMENT NO. "LLA 05-001" DATED APRIL 22, 2005 AND RECORDED APRIL 26, 2005 AS INSTRUMENT NO. 2005-0324927 IN THE CITY OF CALIMESA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA.

PARCEL 4: APN: 413-180-017-1, 413-180-018-2, 413-290-003-8, 413-290-004-9 and 413-290-007-2

NON-EXCLUSIVE EASEMENTS FOR GRADING, SLOPE STABILIZATION, IMPROVEMENTS APPURTENANT TO THE DEVELOPMENT OF THE PROPERTY, GRADING, CONSTRUCTION AND INSTALLATION OF A SOFT-BOTTOM EARTHEN DRAINAGE CHANNEL, DRAINAGE ACROSS, OVER AND IN THE CHANNEL, ACCESS, SLOPE MAINTENANCE, FUEL MODIFICATION, AND GENERAL REPAIR AND MAINTENANCE (COLLECTIVELY, THE "RESERVED CONSERVANCY EASEMENTS") AS RESERVED IN THAT GRANT DEED RECORDED SEPTEMBER 19, 2003 AS INSTRUMENT NO. 2003-732045 OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE, AND AS ASSIGNED BY IN THAT PARTIAL ASSIGNMENT OF RIVERSIDE LAND CONSERVANCY EASEMENTS, RECORDED MAY 3, 2005 AS INSTRUMENT NO. 05-350552 OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

PARCEL 5: APN: 413-180-017-1, 413-180-018-2, 413-290-003-8, 413-290-004-9 and 413-290-007-2

NON-EXCLUSIVE EASEMENTS FOR THE CONSTRUCTION, INSTALLATION (INCLUDING THE RIGHT TO CONNECT EXISTING FACILITIES), MAINTENANCE OPERATION, REPAIR, SERVICE, RECONSTRUCTION, RELOCATION AND REPLACEMENT OF ELECTRIC, GAS, TELEPHONE, CABLE, WATER, SEWER, DRAINAGE, AND OTHER UTILITY FACILITIES, AND NON-EXCLUSIVE EASEMENTS FOR VEHICULAR AND PEDESTRIAN INGRESS AND EGRESS AS RESERVED IN THAT GRANT DEED RECORDED JUNE 17, 2004 AS INSTRUMENT NO. 2004-0467494 OF OFFICIAL RECORDS, IN THE OFFICE OF THE RECORDER OF RIVERSIDE COUNTY, AND AS ASSIGNED BY THAT PARTIAL ASSIGNMENT OF OAK MESA EASEMENTS RECORDED MAY 3, 2005 AS INSTRUMENT NO. 05-350553 OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

PARCEL 6: APN: 413-180-017-1, 413-180-018-2, 413-290-003-8, 413-290-004-9 and 413-290-007-2

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

NON-EXCLUSIVE EASEMENTS FOR STREET CONSTRUCTION, OFF-SITE CONSTRUCTION, GRADING, FUEL MODIFICATION, ACCESS, INGRESS AND EGRESS, STORM DRAINS, AND SEWER AND WATER LINES AS SET FORTH IN THAT EASEMENT AGREEMENT RECORDED MAY 3, 2005 AS INSTRUMENT NO. 05-350551 OF OFFICIAL RECORDS, IN THE OFFICE OF THE RECORDER OF RIVERSIDE COUNTY.

PARCEL 7: APN: 180-01-005-032

THAT PORTION OF SECTION 16, TOWNSHIP 30 SOUTH, RANGE 26 EAST, M.D.M., IN THE UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE OF CALIFORNIA, INCLUDING LOTS 20, 30 AND 31 THEREOF, AS SHOWN UPON THE SALES MAP OF LANDS OF KERN COUNTY LAND COMPANY, DATED MAY 23, 1892 AND RECORDED MAY 28, 1892, IN THE OFFICE OF THE KERN COUNTY RECORDER, LYING WESTERLY AND SOUTHWESTERLY OF THE LANDS CONVEYED TO SOUTHERN PACIFIC RAILROAD COMPANY, A CORPORATION, IN DEEDS RECORDED OCTOBER 21, 1893 AND JULY 2, 1894 IN BOOK 47, PAGE 356 OF DEEDS AND IN BOOK 54, PAGE 262 OF DEEDS, RESPECTIVELY.

EXCEPTING THEREFROM THAT PORTION THEREOF CONVEYED TO THE CITY OF BAKERSFIELD, IN DEED RECORDED DECEMBER 30, 1976 IN BOOK 4999, PAGES 431 AND 436 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL OIL,, GAS AND OTHER LIQUID AND GASEOUS HYDROCARBONS AND IN ADDITION THERETO CARBON DIOXIDE, HYDROGEN, HELIUM, NITROGEN, METHANE, SULFUR (IN EACH CASE IN EITHER LIQUID OR GASEOUS FORM) AND ANY OTHER LIQUID OR GASEOUS SUBSTANCES, INERT OR OTHERWISE, OR ANY OF THEM, AND ANY MINERALS OR OTHER SUBSTANCES PRODUCED IN ASSOCIATION THEREWITH ("HYDROCARBONS") IN, ON OR UNDER THE PREMISES, TOGETHER WITH ALL RIGHTS, PRIVILEGES, DUTIES AND RESPONSIBILITIES IN ANY WAY RELATED THEREOF, AS CONVEYED TO TENNECO OIL COMPANY, A DELAWARE CORPORATION, IN ASSIGNMENT AND CONVEYANCE RECORDED NOVEMBER 18, 1988 IN BOOK 6183, PAGE 1167 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL OTHER MINERALS OF WHATEVER KIND OR CHARACTER (ALL HEREIN COLLECTIVELY CALLED "MINERALS"), NOT CONVEYED TO TENNECO OIL COMPANY WHETHER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED (IT BEING INTENDED THAT THE WORD "MINERALS" AS USED HEREIN SHALL BE DEFINED IN THE BROADEST SENSE OF THE WORD AND SHALL INCLUDE, BUT NOT BE LIMITED TO, OIL, GAS, AND HYDROCARBONS AND ALL OTHER MINERAL SUBSTANCES AND PRODUCTS, BOTH METALLIC, AND NONMETALLIC, SOLID, LIQUID OR GASEOUS), WHICH ARE UPON, IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; ALL SALT WATER WHICH IS IN, UNDER OR MAY PRODUCED FROM SAID REAL PROPERTY; THE EXCLUSIVE RIGHT, BY WHATEVER METHODS NOW OR HEREAFTER KNOWN, AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, TO PROSPECT FOR, INVESTIGATE FOR, EXPLORE FOR, DRILL FOR, PRODUCE, MINE, EXTRACT, REMOVE AND REDUCE TO POSSESSION AND OWNERSHIP, ALL SUCH MINERALS AND SALT WATER WHICH ARE UPON, IN UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; THE EXCLUSIVE RIGHT TO DRILL INTO AND THROUGH SAID REAL PROPERTY TO EXPLORE FOR AND THEREAFTER PRODUCE AND EXTRACT MINERALS WHICH MAY BE PRODUCED FROM ADJACENT REAL PROPERTY; THE RIGHT TO LAY, CONSTRUCT, ERECT AND PLACE UPON AND IN SAID REAL PROPERTY, AND USE, MAINTAIN AND OPERATE THEREON AND THEREAFTER REMOVE, ALL BUILDINGS, TANKS, PRESSURE PLANTS AND OTHER MACHINERY, FIXTURES AND EQUIPMENT, PIPELINES, TELEPHONE LINES, ELECTRIC POWER LINES, ROADS, POWER HOUSES AND OTHER STRUCTURES AND FACILITIES AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, FOR THE EXERCISE AND ENJOYMENT OF THE RIGHTS HEREIN EXCEPTED AND RESERVED; THE EXCLUSIVE RIGHT TO TREAT, PROCESS, (BUT NOT REFINE), STORE UPON AND REMOVE FROM SAID REAL PROPERTY SUCH MINERALS AND SALT

3

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

WATER; THE EXCLUSIVE RIGHT TO PRODUCE AND EXTRACT SUCH MINERALS BY REPRESSURING THE SUBSURFACE SANDS AND STRATA WITH FLUIDS OR GASES OR BY SUCH OTHER METHOD OR METHODS AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, MAY BE DEEMED ADVISABLE, AND TO INJECT IN AND STORE AND THEREAFTER REMOVE SUCH FLUIDS AND GASES, WHETHER OR NOT INDIGENOUS TO SAID REAL PROPERTY; THE RIGHT AT ALL TIMES, WITHOUT CHARGE, TO INVESTIGATE FOR, EXPLORE FOR, DRILL FOR, PRODUCE, REMOVE AND REDUCE TO POSSESSION AND OWNERSHIP, THOSE QUANTITIES OF FRESH WATER FROM AQUIFERS UNDERLYING SAID REAL PROPERTY DEEMED NECESSARY BY GRANTOR OR ITS SUCCESSORS OR ASSIGNS, TO USE IN PROSPECTING, EXPLORING, DRILLING, MINING, PRODUCING, EXTRACTING AND REMOVING (INCLUDING, BUT NOT LIMITED TO, USE IN UNIT OPERATIONS, WATERFLOOD, THERMAL, OR OTHER SECONDARY RECOVERY METHODS NOW OR HEREAFTER KNOWN), OR OTHER OPERATIONS IN CONNECTION WITH THE FULL ENJOYMENT AND EXERCISE OF THE RIGHTS HEREIN EXCEPTED AND RESERVED; THE RIGHT TO EXERCISE ALL RIGHTS HEREIN EXCEPTED AND RESERVED AND ANY AND ALL OTHER RIGHTS UPON SAID REAL PROPERTY AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, DEEMS NECESSARY INCIDENTAL TO OR CONVENIENT, WHETHER ALONE OR CO-JOINTLY WITH NEIGHBORING LANDS, IN EXPLORING FOR, PRODUCING AND EXTRACTING THE MINERALS AND SALT WATER HEREIN EXCEPTED AND RESERVED; AND THE UNLIMITED AND UNRESTRICTED RIGHTS OF ACCESS TO SAID MINERALS AND SALT WATER AND OF INGRESS AND EGRESS TO AND FROM, OVER AND ACROSS SAID REAL PROPERTY FOR ALL PURPOSES, DEEMED ADVISABLE BY GRANTOR OR ITS SUCCESSORS OR ASSIGNS IN THE EXERCISE OF THE RIGHTS EXCEPTED AND RESERVED HEREIN; PROVIDED, HOWEVER, THAT GRANTOR, OR ITS SUCCESSORS AND ASSIGNS, UPON BEING PROVIDED PROOF THEREOF, SHALL COMPENSATE GRANTEE OR ITS SUCCESSORS AND ASSIGNS FOR ANY AND ALL ACTUAL DAMAGE TO IMPROVEMENTS AND GROWING CROPS UPON SAID REAL PROPERTY WHICH IS CAUSED BY THE EXERCISE OF THE RIGHTS EXCEPTED AND RESERVED HEREIN, AND THE REASONABLE VALUE OF THE LANDS USED FOR ACTUAL DEVELOPMENT AND EXTRACTION OF SUCH MINERALS RIGHTS AS EXCEPTED AND RESERVED IN DEED FROM TENNECO WEST INC., A DELAWARE CORPORATION, RECORDED JANUARY 2, 1991 IN BOOK 6473, PAGE 375 OF OFFICIAL RECORDS.

PARCEL 8: APN: 180-01-005-032

ALL OF SECTION 21, TOWNSHIP 30 SOUTH, RANGE 26 EAST, M.D.M., IN THE UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THAT PORTION THEREOF CONVEYED TO THE SOUTHERN CALIFORNIA GAS COMPANY, A CALIFORNIA CORPORATION, IN GRANT DEED RECORDED JULY 28, 1980 IN BOOK 5301, PAGE 1695 OF OFFICIAL RECORDS, DESCRIBED AS FOLLOWS:

A THREE-DIMENSIONAL PARCEL OF LAND COMMENCING AT POINT 1000 FEET BELOW THE SURFACE OF THE HEREINAFTER DESCRIBED TRACTS AND EXTENDING TO A DEPTH OF 8,500 FEET BELOW THE SURFACE OF THE GROUND IN AND UNDER THE FOLLOWING DESCRIBED CENTER TRACTS, TO LAND, TO WIT:

THE SW 1/4 OF THE SW 1/4; THE W 1/2 OF THE SE 1/4 OF THE SW 1/4; THE SE 1/4 OF THE SE 1/4 OF THE SW 1/4.

ALSO EXCEPTING THEREFROM ALL OIL, GAS AND OTHER LIQUID AND GASEOUS HYDROCARBONS AND IN ADDITION THERETO CARBON DIOXIDE, HYDROGEN, HELIUM, NITROGEN, METHANE, SULFUR (IN EACH CASE IN EITHER LIQUID OR GASEOUS FORM) AND ANY OTHER LIQUID OR GASEOUS SUBSTANCES, INERT OR OTHERWISE, OR ANY OF THEM, AND ANY MINERALS OR OTHER

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

SUBSTANCES PRODUCED IN ASSOCIATION THEREWITH ("HYDROCARBONS") IN, ON OR UNDER THE PREMISES, TOGETHER WITH ALL RIGHTS, PRIVILEGES, DUTIES AND RESPONSIBILITIES IN ANY WAY RELATED THERETO, AS CONVEYED TO TENNECO OIL COMPANY, A DELAWARE CORPORATION, IN ASSIGNMENT AND CONVEYANCE RECORDED NOVEMBER 18, 1988 IN BOOK 6183, PAGE 1167 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL OTHER MINERALS OF WHATEVER KIND OR CHARACTER (ALL HEREIN COLLECTIVELY CALLED "MINERALS"), NOT CONVEYED TO TENNECO OIL COMPANY WHETHER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED (IT BEING INTENDED THAT THE WORD "MINERALS" AS USED HEREIN SHALL BE DEFINED IN THE BROADEST SENSE OF THE WORD AND SHALL INCLUDE, BUT NOT BE LIMITED TO, OIL, GAS, OTHER HYDROCARBONS AND ALL OTHER MINERAL SUBSTANCES AND PRODUCTS, BOTH METALLIC AND NONMETALLIC, SOLID, LIQUID OR GASEOUS), WHICH ARE UPON, IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; ALL SALT WATER WHICH IS IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; THE EXCLUSIVE RIGHT, BY WHATEVER METHODS NOW OR HEREAFTER KNOWN, AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, TO PROSPECT FOR, INVESTIGATE FOR, EXPLORE FOR, DRILL FOR, PRODUCE, MINE, EXTRACT, REMOVE AND REDUCE TO POSSESSION AND OWNERSHIP, ALL SUCH MINERALS AND SALT WATER WHICH ARE UPON, IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; THE EXCLUSIVE RIGHT TO DRILL INTO AND THROUGH SAID REAL PROPERTY TO EXPLORE FOR AND THEREAFTER PRODUCE AND EXTRACT MINERALS WHICH MAY BE PRODUCED FROM ADJACENT REAL PROPERTY; THE RIGHT TO LAY, CONSTRUCT, ERECT AND PLACE UPON AND IN SAID REAL PROPERTY, AND USE, MAINTAIN AND OPERATE THEREON AND THEREAFTER REMOVE, ALL BUILDINGS, TANKS, PRESSURE PLANTS AND OTHER MACHINERY, FIXTURES AND EQUIPMENT, PIPELINES, TELEPHONE LINES, ELECTRIC POWER LINES, ROADS, POWER HOUSES AND OTHER STRUCTURES AND FACILITIES AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, FOR THE EXERCISE AND ENJOYMENT OF THE RIGHTS HEREIN EXCEPTED AND RESERVED; THE EXCLUSIVE RIGHT TO TREAT, PROCESS, (BUT NOT REFINE), STORE UPON AND REMOVE FROM SAID REAL PROPERTY SUCH MINERALS AND SALT WATER; THE EXCLUSIVE RIGHT TO PRODUCE AND EXTRACT SUCH MINERALS BY REPRESSURING THE SUBSURFACE SANDS AND STRATA WITH FLUIDS OR GASES OR BY SUCH OTHER METHOD OR METHODS AS GRANTOR OR IS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, AND TO INJECT IN AND STORE AND THEREAFTER REMOVE SUCH FLUIDS AND GASES, WHETHER OR NOT INDIGENOUS TO SAID REAL PROPERTY; THE RIGHT AT ALL TIMES, WITHOUT CHARGE, TO INVESTIGATE FOR, EXPLORE FOR, DRILL FOR, PRODUCE, REMOVE AND REDUCE TO POSSESSION AND OWNERSHIP, THOSE QUANTITIES OF FRESH WATER FROM AQUIFERS UNDERLYING SAID REAL PROPERTY DEEMED NECESSARY BY GRANTOR OR ITS SUCCESSORS OR ASSIGNS, TO USE IN PROSPECTING, EXPLORING, DRILLING, MINING, PRODUCING, EXTRACTING AND REMOVING (INCLUDING) BUT NOT LIMITED TO, USE IN UNIT OPERATIONS, WATERFLOOD, THERMAL, OR OTHER SECONDARY RECOVERY METHODS NOW OR HEREAFTER KNOWN), OR OTHER OPERATIONS IN CONNECTION WITH THE FULL ENJOYMENT AND EXERCISE OF THE RIGHTS HEREIN EXCEPTED AND RESERVED; THE RIGHT TO EXERCISE ALL RIGHTS HEREIN EXCEPTED AND RESERVED AND ANY AND ALL OTHER RIGHTS UPON SAID REAL PROPERTY AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, DEEMS NECESSARY, INCIDENTAL OR TO CONVENIENT, WHETHER ALONG OR CO-JOINTLY WITH NEIGHBORING LANDS, IN EXPLORING FOR, PRODUCING AND EXTRACTING THE MINERALS AND SALT WATER HEREIN EXCEPTED AND RESERVED; AND THE UNLIMITED AND UNRESTRICTED RIGHTS OF ACCESS TO SAID MINERALS AND SALT WATER AND OF INGRESS AND EGRESS TO AND FROM, OVER AND ACROSS SAID REAL PROPERTY FOR ALL PURPOSES DEEMED ADVISABLE BY GRANTOR OR ITS SUCCESSORS OR ASSIGNS IN THE EXERCISE OF THE RIGHTS EXCEPTED AND RESERVED HEREIN; PROVIDED, HOWEVER, THAT GRANTOR, OR ITS SUCCESSORS AND ASSIGNS, UPON BEING PROVIDED PROOF THEREOF, SHALL COMPENSATE GRANTEE OR ITS SUCCESSORS AND ASSIGNS FOR ANY AND ALL

5

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

ACTUAL DAMAGE TO IMPROVEMENTS AND GROWING CROPS UPON SAID REAL PROPERTY WHICH IS CAUSED BY THE EXERCISE OF THE RIGHTS EXCEPTED AND RESERVED HEREIN, AND THE REASONABLE VALUE OF THE LANDS USED FOR ACTUAL DEVELOPMENT AND EXTRACTION OF SUCH MINERAL RIGHTS AS EXCEPTED AND RESERVED IN DEED FROM TENNECO WEST INC., A DELAWARE CORPORATION, RECORDED JANUARY 2, 1991 IN BOOK 6473, PAGE 375 OF OFFICIAL RECORDS.

PARCEL 9: APN: 180-01-005-032

ALL OF SECTION 22, TOWNSHIP 30 SOUTH, RANGE 26 EAST, M.D.M., IN THE UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

THEREFROM ALL OIL, GAS AND OTHER LIQUID AND GASEOUS HYDROCARBONS AND IN ADDITION THERETO CARBON DIOXIDE, HYDROGEN, HELIUM, NITROGEN, METHANE, SULFUR (IN EACH CASE IN EITHER LIQUID OR GASEOUS FORM) AND ANY OTHER LIQUID OR GASEOUS SUBSTANCES, INERT OR OTHERWISE, OR ANY OF THEM, AND ANY MINERALS OR OTHER SUBSTANCES PRODUCED IN ASSOCIATION THEREWITH ("HYDROCARBONS") IN, ON OR UNDER THE PREMISES, TOGETHER WITH ALL RIGHTS, PRIVILEGES, DUTIES AND RESPONSIBILITIES IN ANY WAY RELATED THERETO, AS CONVEYED TO TENNECO OIL COMPANY, A DELAWARE CORPORATION, IN ASSIGNMENT AND CONVEYANCE RECORDED NOVEMBER 18, 1988 IN BOOK 6183, PAGE 1167 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL OTHER MINERALS OF WHATEVER KIND OR CHARACTER (ALL HEREIN COLLECTIVELY CALLED "MINERALS"), NOT CONVEYED TO TENNECO OIL COMPANY WHETHER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED (IT BEING INTENDED THAT THE WORD "MINERALS" AS USED HEREIN SHALL BE DEFINED IN THE BROADEST SENSE OF THE WORD AND SHALL INCLUDE, BUT NOT BE LIMITED TO, OIL, GAS, OTHER HYDROCARBONS AND ALL OTHER MINERAL SUBSTANCES AND PRODUCTS, BOTH METALLIC AND NONMETALLIC, SOLID, LIQUID OR GASEOUS), WHICH ARE UPON, IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; ALL SALT WATER WHICH IS IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; THE EXCLUSIVE RIGHT, BY WHATEVER METHODS NOW OR HEREAFTER KNOWN, AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, TO PROSPECT FOR, INVESTIGATE FOR, EXPLORE FOR, DRILL FOR, PRODUCE, MINE, EXTRACT, REMOVE AND REDUCE TO POSSESSION AND OWNERSHIP, ALL SUCH MINERALS AND SALT WATER WHICH ARE UPON, IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; THE EXCLUSIVE RIGHT TO DRILL INTO AND THROUGH SAID REAL PROPERTY; THE RIGHT TO LAY, CONSTRUCT, ERECT AND PLACE UPON AND IN SAID REAL PROPERTY, AND USE, MAINTAIN AND OPERATE THEREON AND THEREAFTER REMOVE, ALL BUILDINGS, TANKS, PRESSURE PLANTS AND OTHER MACHINERY, FIXTURES AND EQUIPMENT, PIPELINES, TELEPHONE LINES, ELECTRIC POWER LINES, ROADS, POWER HOUSES AND OTHER STRUCTURES AND FACILITIES AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, FOR THE EXERCISE AND ENJOYMENT OF THE RIGHTS HEREIN EXCEPTED AND RESERVED; THE EXCLUSIVE RIGHT TO TREAT, PROCESS, (BUT NOT REFINE), STORE UPON AND REMOVE FROM SAID REAL PROPERTY SUCH MINERALS AND SALT WATER; THE EXCLUSIVE RIGHT TO PRODUCE AND EXTRACT SUCH MINERALS BY REPRESSURING THE SUBSURFACE SANDS AND STRATA WITH FLUIDS OR GASES OR BY SUCH OTHER METHOD OR METHODS AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, AND TO INJECT IN AND STORE AND THEREAFTER REMOVE SUCH FLUIDS AND GASES, WHETHER OR NOT INDIGENOUS TO SAID REAL PROPERTY; THE RIGHT AT ALL TIMES, WITHOUT CHARGE, TO INVESTIGATE FOR, EXPLORE FOR, DRILL FOR, PRODUCE, REMOVE AND REDUCE TO POSSESSION AND OWNERSHIP, THOSE QUANTITIES OF FRESH WATER FROM AQUIFERS UNDERLYING SAID REAL PROPERTY DEEMED NECESSARY BY GRANTOR OR ITS SUCCESSORS OR ASSIGNS, TO USE IN

6

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

PROSPECTING, EXPLORING, DRILLING, MINING, PRODUCING, EXTRACTING AND REMOVING (INCLUDING, BUT NOT LIMITED TO, USE IN UNIT OPERATIONS, WATERFLOOD, THERMAL, OR OTHER SECONDARY RECOVERY METHODS NOW OR HEREAFTER KNOWN), OR OTHER OPERATIONS IN CONNECTION WITH THE FULL ENJOYMENT AND EXERCISE OF THE RIGHTS HEREIN EXCEPTED AND RESERVED; THE RIGHT TO EXERCISE ALL RIGHTS HEREIN EXCEPTED AND RESERVED AND ANY AND ALL OTHER RIGHTS UPON SAID REAL PROPERTY AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, DEEMS NECESSARY, INCIDENTAL TO OR CONVENIENT, WHETHER ALONE OR CO-JOINTLY WITH NEIGHBORING LANDS, IN EXPLORING FOR, PRODUCING AND EXTRACTING THE MINERALS AND SALT WATER HEREIN EXCEPTED AND RESERVED; AND THE UNLIMITED AND UNRESTRICTED RIGHTS OF ACCESS TO SAID MINERALS AND SALT WATER AND OF INGRESS AND EGRESS TO AND FROM, OVER AND ACROSS SAID REAL PROPERTY FOR ALL PURPOSES DEEMED ADVISABLE BY GRANTOR OR ITS SUCCESSORS OR ASSIGNS IN THE EXERCISE OF THE RIGHTS EXCEPTED AND RESERVED HEREIN; PROVIDED, HOWEVER, THAT GRANTOR, OR ITS SUCCESSORS AND ASSIGNS, UPON BEING PROVIDED PROOF THEREOF, SHALL COMPENSATE GRANTEE OR ITS SUCCESSORS AND ASSIGNS FOR ANY AND ALL ACTUAL DAMAGE TO IMPROVEMENTS AND GROWING CROPS UPON SAID REAL PROPERTY WHICH IS CAUSED BY THE EXERCISE OF THE RIGHTS EXCEPTED AND RESERVED HEREIN, AND THE REASONABLE VALUE OF THE LANDS USED FOR ACTUAL DEVELOPMENT AND EXTRACTION OF SUCH MINERAL RIGHTS AS EXCEPTED AND RESERVED IN DEED FROM TENNECO WEST INC., A DELAWARE CORPORATION, RECORDED JANUARY 2, 1991 IN BOOK 6473, PAGE 375 OF OFFICIAL RECORDS.

PARCEL 10:  APN:  180-01-005-032

ALL OF SECTION 23, TOWNSHIP 30 SOUTH, RANGE 26 EAST, M.D.M. IN THE UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ALL OF TRACT NO. 5840, UNIT A, IN THE UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE OF CALIFORNIA, AS PER MAP RECORDED JUNE 23, 1998, IN BOOK 44, PAGES 38 TO 42 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO EXCEPTING THEREFROM ALL OIL, GAS AND OTHER LIQUID AND GASEOUS HYDROCARBONS AND IN ADDITION THERETO CARBON DIOXIDE, HYDROGEN, HELIUM, NITROGEN, METHANE, SULFUR (IN EACH CASE IN EITHER LIQUID OR GASEOUS FORM) AND ANY OTHER LIQUID OR GASEOUS SUBSTANCES, INERT OR OTHERWISE, OR ANY OF THEM, AND ANY MINERALS OR OTHER SUBSTANCES PRODUCED IN ASSOCIATION THEREWITH ("HYDROCARBONS") IN, ON OR UNDER THE PREMISES, TOGETHER WITH ALL RIGHTS, PRIVILEGES, DUTIES AND RESPONSIBILITIES IN ANY WAY RELATED THERETO, AS CONVEYED TO TENNECO OIL COMPANY, A DELAWARE CORPORATION, IN ASSIGNMENT AND CONVEYANCE RECORDED NOVEMBER 18, 1988 IN BOOK 6183, PAGE 1167 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL OTHER MINERALS OF WHATEVER KIND OR CHARACTER (ALL HEREIN COLLECTIVELY CALLED "MINERALS"), NOT CONVEYED TO TENNECO OIL COMPANY WHETHER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED (IT BEING INTENDED THAT THE WORD "MINERALS" AS USED HEREIN SHALL BE DEFINED IN THE BROADEST SENSE OF THE WORD AND SHALL INCLUDE, BUT NOT BE LIMITED TO, OIL, GAS, OTHER HYDROCARBONS AND ALL OTHER MINERAL SUBSTANCES AND PRODUCTS, BOTH METALLIC AND NONMETALLIC, SOLID, LIQUID OR GASEOUS), WHICH ARE UPON, IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; ALL SALT WATER WHICH IS IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; THE EXCLUSIVE RIGHT, BY WHATEVER METHODS NOW OR HEREAFTER KNOWN, AS

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

GRANTOR OR ITS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, TO PROSPECT FOR, INVESTIGATE FOR, EXPLORE FOR, DRILL FOR, PRODUCE, MINE, EXTRACT, REMOVE AND REDUCE TO POSSESSION AND OWNERSHIP, ALL SUCH MINERALS AND SALT WATER WHICH ARE UPON, IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; THE EXCLUSIVE RIGHT TO DRILL INTO AND THROUGH SAID REAL PROPERTY TO EXPLORE FOR AND THEREAFTER PRODUCE AND EXTRACT MINERALS WHICH MAY BE PRODUCED FROM ADJACENT REAL PROPERTY; THE RIGHT TO LAY, CONSTRUCT, ERECT AND PLACE UPON AND IN SAID REAL PROPERTY, AND USE, MAINTAIN AND OPERATE THEREON AND THEREAFTER REMOVE, ALL BUILDINGS, TANKS, PRESSURE PLANTS AND OTHER MACHINERY, FIXTURES AND THEREON AND THEREAFTER REMOVE, ALL BUILDINGS, TANKS, PRESSURE PLANTS AND OTHER MACHINERY, FIXTURES AND EQUIPMENT, PIPELINES, TELEPHONE LINES, ELECTRIC POWER LINES, ROADS, POWER HOUSES AND OTHER STRUCTURES AND FACILITIES AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, FOR THE EXERCISE AND ENJOYMENT OF THE RIGHTS HEREIN EXCEPTED AND RESERVED; THE EXCLUSIVE RIGHT TO TREAT, PROCESS, (BUT NOT REFINE), STORE UPON AND REMOVE FROM SAID REAL PROPERTY SUCH MINERALS AND SALT WATER; THE EXCLUSIVE RIGHT TO PRODUCE AND EXTRACT SUCH MINERALS BY REPRESSURING THE SUBSURFACE SANDS AND STRATA WITH FLUIDS OR GASES OR BY SUCH OTHER METHOD OR METHODS AS GRANTOR OR IS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, AND TO INJECT IN AND STORE AND THEREAFTER REMOVE SUCH FLUIDS AND GASES, WHETHER OR NOT INDIGENOUS TO SAID REAL PROPERTY; THE RIGHT AT ALL TIMES, WITHOUT CHARGE, TO INVESTIGATE FOR, EXPLORE FOR, DRILL FOR, PRODUCE, REMOVE AND REDUCE TO POSSESSION AND OWNERSHIP, THOSE QUANTITIES OF FRESH WATER FROM AQUIFERS UNDERLYING SAID REAL PROPERTY DEEMED NECESSARY BY GRANTOR OR ITS SUCCESSORS OR ASSIGNS, TO USE IN PROSPECTING, EXPLORING, DRILLING, MINING, PRODUCING, EXTRACTING AND REMOVING (INCLUDING, BUT NOT LIMITED TO, USE IN UNIT OPERATIONS, WATERFLOOD, THERMAL, OR OTHER SECONDARY RECOVERY METHODS NOW OR HEREAFTER KNOWN), OR OTHER OPERATIONS IN CONNECTION WITH THE FULL ENJOYMENT AND EXERCISE OF THE RIGHTS HEREIN EXCEPTED AND RESERVED; THE RIGHT TO EXERCISE ALL RIGHTS HEREIN EXCEPTED AND RESERVED AND ANY AND ALL OTHER RIGHTS UPON SAID REAL PROPERTY AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, DEEMS NECESSARY, INCIDENTAL TO OR CONVENIENT, WHETHER ALONE OR CO-JOINTLY WITH NEIGHBORING LANDS, IN EXPLORING FOR, PRODUCING AND EXTRACTING THE MINERALS AND SALT WATER HEREIN EXCEPTED AND RESERVED; AND THE UNLIMITED AND UNRESTRICTED RIGHTS OF ACCESS TO SAID MINERALS AND SALT WATER AND OF INGRESS AND EGRESS TO AND FROM, OVER AND ACROSS SAID REAL PROPERTY FOR ALL PURPOSES DEEMED ADVISABLE BY GRANTOR OR ITS SUCCESSORS OR ASSIGNS IN THE EXERCISE OF THE RIGHTS EXCEPTED AND RESERVED HEREIN; PROVIDED, HOWEVER, THAT GRANTOR, OR ITS SUCCESSORS AND ASSIGNS, UPON BEING PROVIDED PROOF THEREOF, SHALL COMPENSATE GRANTEE OR ITS SUCCESSORS AND ASSIGNS FOR ANY AND ALL ACTUAL DAMAGE TO IMPROVEMENTS AND GROWING CROPS UPON SAID REAL PROPERTY WHICH IS CAUSED BY THE EXERCISE OF THE RIGHTS EXCEPTED AND RESERVED HEREIN, AND THE REASONABLE VALUE OF THE LANDS USED FOR ACTUAL DEVELOPMENT AND EXTRACTION OF SUCH MINERAL RIGHTS AS EXCEPTED AND RESERVED IN DEED FROM TENNECO WEST INC., A DELAWARE CORPORATION, RECORDED JANUARY 2, 1991 IN BOOK 6473, PAGE 375 OF OFFICIAL RECORDS.

PARCEL 11: APN: 180-01-005-032

LOTS 1 THROUGH 8, INCLUSIVE, LOTS 10 THROUGH 18, INCLUSIVE, LOTS 20 AND 21, AND LOTS 23 THROUGH 32, INCLUSIVE OF TRACT NO. 5840, UNIT A, IN THE UNINCORPORATED AREA, COUNTY OF KERN, STATE OF CALIFORNIA, AS PER MAP RECORDED JUNE 23, 1998 IN BOOK 44, PAGE 38 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

EXCEPTING THEREFROM ALL INTERESTS IN PARCELS 1 TO 5 CONVEYED TO TENNECO OIL COMPANY, A DELAWARE CORPORATION, IN ASSIGNMENT AND CONVEYANCE THEREOF RECORDED NOVEMBER 18, 1988 IN BOOK 6183, PAGE 1167 OF OFFICIAL RECORDS, WHICH INTEREST CAN BE BRIEFLY SUMMARIZED AS ALL OIL, GAS AND OTHER LIQUID AND GASEOUS HYDROCARBONS AND IN ADDITION THERETO CARBON DIOXIDE, HYDROGEN, HELIUM, NITROGEN, METHANE, SULFUR (IN EACH CASE EITHER LIQUID OR GASEOUS FORM) AND ANY OTHER LIQUID OR GASEOUS SUBSTANCES INERT OR OTHERWISE, OR ANY OF THEM, AND ANY MINERALS OR OTHER SUBSTANCES PRODUCED IN ASSOCIATION THEREWITH ("HYDROCARBONS") IN, ON OR UNDER THE PREMISES, TOGETHER WITH ALL RIGHTS, PRIVILEGES, DUTIES AND RESPONSIBILITIES IN ANY WAY RELATED THERETO. GRANTEE ACKNOWLEDGES THAT THIS RESERVATION IS FULLY SET FORTH IN THE CONVEYANCE REFERRED TO ABOVE AND THAT IT TAKES TITLE SUBJECT TO THAT CONVEYANCE AND NOT SUBJECT TO THIS SUMMARY WHICH IS FOR CONVENIENCE ONLY. SAID ASSIGNMENT AND CONVEYANCE WAS CLARIFIED BY FIRST AMENDMENT THEREOF RECORDED JANUARY 17, 1989 IN BOOK 6200, PAGE 1908 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM PARCELS 1 THROUGH 5 ALL OIL, GAS AND OTHER HYDROCARBONS AND ALL OTHER MINERALS OF WHATEVER KIND OR CHARACTER (ALL HEREIN COLLECTIVELY CALLED "MINERALS"), WHETHER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED (IT BEING INTENDED THAT THE WORD "MINERALS" AS USED HEREIN SHALL BE DEFINED IN THE BROADEST SENSE OF THE WORD AND SHALL INCLUDE, BUT NOT BE LIMITED TO, OIL, GAS, OTHER HYDROCARBONS AND ALL OTHER MINERAL SUBSTANCES AND PRODUCTS, BOTH METALLIC AND NONMETALLIC, SOLD, LIQUID OR GASEOUS), WHICH ARE UPON, IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; ALL SALT WATER WHICH IS IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; THE EXCLUSIVE RIGHT, BY WHATEVER METHODS NOW OR HEREAFTER KNOWN, AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, TO PROSPECT FOR, INVESTIGATE FOR, EXPLORE FOR, DRILL FOR, PRODUCE, MINE, EXTRACT, REMOVE AND REDUCE TO POSSESSION AND OWNERSHIP, ALL SUCH MINERALS AND SALT WATER WHICH ARE UPON, IN, UNDER OR MAY BE PRODUCED FROM SAID REAL PROPERTY; THE EXCLUSIVE RIGHT TO DRILL INTO AND THROUGH SAID REAL PROPERTY TO EXPLORE FOR AND THEREAFTER PRODUCE AND EXTRACT MINERALS WHICH MAY BE PRODUCED FROM ADJACENT REAL PROPERTY; THE RIGHT TO LAY, CONSTRUCT, ERECT AND PLACE UPON AND IN SAID REAL PROPERTY, AND USE, MAINTAIN AND OPERATE THEREON AND THEREAFTER REMOVE, ALL BUILDINGS, TANKS, PRESSURE PLANTS AND OTHER MACHINERY, FIXTURES AND EQUIPMENT, PIPELINES, TELEPHONE LINES, ELECTRIC POWER LINES, ROADS, POWER HOUSES AND OTHER STRUCTURES AND FACILITIES AS GRANTOR OR ITS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, FOR THE EXERCISE AND ENJOYMENT OF THE RIGHTS HEREIN EXCEPTED AND RESERVED; THE EXCLUSIVE RIGHT TO TREAT, PROCESS, (BUT NOT REFINE), STORE UPON AND REMOVE FROM SAID REAL PROPERTY SUCH MINERALS AND SALT WATER; THE EXCLUSIVE RIGHT TO PRODUCE AND EXTRACT SUCH MINERALS BY REPRESSURING THE SUBSURFACE SANDS AND STRATA WITH FLUIDS OR GASES OR BY SUCH OTHER METHOD OR METHODS AS GRANTOR OR IS SUCCESSORS OR ASSIGNS, MAY DEEM ADVISABLE, AD TO INJECT IN AND STORE AND THEREAFTER REMOVE SUCH FLUIDS AND GASES, WHETHER OR NOT INDIGENOUS TO SAID REAL PROPERTY; THE RIGHT AT ALL TIMES, WITHOUT CHARGE, TO INVESTIGATE FOR, EXPLORE FOR, DRILL FOR, PRODUCE, REMOVE AND REDUCE TO POSSESSION AND OWNERSHIP, THOSE QUANTITIES OF FRESH WATER FROM AQUIFERS UNDERLYING SAID REAL PROPERTY DEEMED NECESSARY BY GRANTOR OR ITS SUCCESSORS OR ASSIGNS, TO USE IN PROSPECTING, EXPLORING, DRILLING, MINING, PRODUCING, EXTRACTING AND REMOVING (INCLUDING, BUT NOT LIMITED TO, USE IN UNIT OPERATIONS, WATERFLOOD, THERMAL, OR OTHER SECONDARY RECOVERY METHODS NOW OR HEREAFTER KNOWN), OR OTHER OPERATIONS IN CONNECTION WITH THE FULL ENJOYMENT AND EXERCISE OF THE RIGHTS HEREIN EXCEPTED AND RESERVED; THE RIGHT TO EXERCISE ALL RIGHTS HEREIN EXCEPTED AND RESERVED AND ANY AND ALL OTHER RIGHTS UPON SAID REAL PROPERTY AS

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

GRANTOR OR ITS SUCCESSORS OR ASSIGNS, DEEMS NECESSARY, INCIDENTAL TO OR CONVENIENT, WHETHER ALONE OR CO-JOINTLY WITH NEIGHBORING LANDS, IN EXPLORING FOR, PRODUCING AND EXTRACTING THE MINERALS AND SALT WATER HEREIN EXCEPTED AND RESERVED; AND THE UNLIMITED AND UNRESTRICTED RIGHTS OF ACCESS TO SAID MINERALS AND SALT WATER AND OF INGRESS AND EGRESS TO AND FROM, OVER AND ACROSS SAID REAL PROPERTY FOR ALL PURPOSES DEEMED ADVISABLE BY GRANTOR OR ITS SUCCESSORS OR ASSIGNS IN THE EXERCISE OF THE RIGHTS EXCEPTED AND RESERVED HEREIN; PROVIDED, HOWEVER, THAT GRANTOR, OR ITS SUCCESSORS AND ASSIGNS, UPON BEING PROVIDED PROOF THEREOF, SHALL COMPENSATE GRANTEE OR ITS SUCCESSORS AND ASSIGNS FOR ANY AND ALL ACTUAL DAMAGE TO IMPROVEMENTS AND GROWING CROPS UPON SAID REAL PROPERTY WHICH IS CAUSED BY THE EXERCISE OF THE RIGHTS EXCEPTED AND RESERVED HEREIN, AND THE REASONABLE VALUE OF THE LANDS USED FOR ACTUAL DEVELOPMENT AND EXTRACTION OF SUCH MINERAL RIGHTS AS EXCEPTED AND RESERVED IN DEED FROM TENNECO WEST INC., A DELAWARE CORPORATION, RECORDED JANUARY 2, 1991 IN BOOK 6473, PAGE 375 OF OFFICIAL RECORDS.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay cost attorneys' fees or expenses) which arise by reason of:

## PART I

## THE FOLLOWING ITEMS AFFECT 9842386 (MCSWEENY)

1. The herein described property lies within the proposed boundaries of a Mello-Roos Community Facilities District ("CFD"), as follows:

| | |
|---|---|
| CFD No.: | 2005-1 |
| For: | None Shown |
| Disclosed by: | Map of Proposed Boundaries of Community Facilities District No. 2005-1 |
| Recorded: | September 8, 2005, as Instrument No. 2005-0743529 of Official Records |

This property, along with all other parcels in the CFD, is liable for an annual special tax. This special tax is included with and payable with the general property taxes of the County of Riverside. The tax may not be prepaid.

2. **Water rights, claims or title to water**, whether or not disclosed by the public records.

3. **A right of way** for one ditch, flume or other aqueducts, across the lands of any other owner lying between the lands of said owner and the San Jacinto River, as reserved to each and every owner of lands in the Rancho San Jacinto Viejo, by decree of partition of said Rancho, recorded in Book 43, Page 161 of Deeds, San Diego County Records.

4. **The effect** of a right of way for Morse Road as established by the Board of Supervisors of the County of Riverside dated November 13, 1923 of Official Records of Riverside County, California.

5. **An easement** in favor of the public for any public roads shown on the survey.

Also a right of way for a public highway, acquired by the County of Riverside through condemnation proceedings in Action No. 905 of the Superior Court of the State of California, in and for the County of Riverside.

Also a right of way for Morse Road established by the Board of Supervisors, November 13, 1923.

11

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

6.    **Easement(s)** for the purpose(s) shown below and rights incidental thereto as set forth in a document;

|  |  |
|---|---|
| In favor of: | California Electric Power Company |
| Purpose: | Public utilities |
| Recorded: | April 28, 1947, Book 828, Page 497, of Official Records |

7.    A right of way for road purposes as disclosed by the Deed recorded August 8, 1990 as Instrument No. 143256 of Official Records.

    Affects:        A portion of said land as more particularly described in said Instrument.

    Reference is made to said documents for full particulars.

8.    **Matters** contained in that certain document entitled "Boundary Line Agreement" dated July 1, 1991, executed by and between The Eugene J. and the Ezilda C. McSweeny Family Trust and Randall Lee Sharp recorded July 8, 1991, Instrument No. 229984, of Official Records.

    Reference is hereby made to said document for full particulars.

    and re-recorded August 20, 1991,  Instrument No. 287503, of Official Records

9.    **The fact** that said land is included within a project area of the Redevelopment Agency shown below, and that proceedings for the redevelopment of said project have been instituted under the Redevelopment Law (such redevelopment to proceed only after the adoption of the redevelopment plan) as disclosed by a document.

|  |  |
|---|---|
| Redevelopment Agency: | The City of Hemet/Hemet Unified School District Community Development Project Area |
| Recorded: | December 27, 1991,  Instrument No. 446750,  of Official Records |

10.    **Easement(s)** for the purpose(s) shown below and rights incidental thereto as set forth in a document;

|  |  |
|---|---|
| In favor of: | Southern California Edison Company |
| Purpose: | Public utilities |
| Recorded: | July 28, 1994, Instrument No. 299603, of Official Records |
| Affects: | Parcel 1 |

    Said easement provides that no buildings or structures shall be erected on said easement.

11.    **Rights of the public** in and to any portion herein described lying within public roads, Morse Road, State Street and Newport Road.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

12.     **Matters** contained in that certain document entitled "Memorandum of Agreement Regarding Development Agreement Affecting Real Property" dated May 13, 2004, executed by and between Rancho San Patricio Partners, LLC, a California limited liability company and McSweeny Land Ventures, LLC, a California limited liability company recorded May 17, 2004, Instrument No. 2004-0364986, of Official Records.

Reference is hereby made to said document for full particulars.

An instrument entitled "Partial Assignment and Assumption of Development Agreement" recorded May 19, 2005 as Instrument No. 2005-0400321 of Official Records. Reference is made to said document for full particulars.

An instrument entitled "Partial Assignment of Memorandum of Agreement Regarding Development Agreement Affective Real Property" recorded May 19, 2005 as Instrument No. 2005-0400322 of Official Records. Reference is made to said document for full particulars.

13.     **Matters** contained in that certain document entitled "Agreement to Grant of Easement" dated February 17, 2005, executed by Rancho San Patricio, LLC, a California limited liability company, and LBREP/L-SunCal McSweeney Farms, LLC, a Delaware limited liability company recorded February 22, 2005, Instrument No. 2005-0140084, of Official Records.

Reference is hereby made to said document for full particulars.

14.     **Matters** contained in that certain document entitled "Agreement to Grant Easement" dated February 17, 2005, executed by and between Rancho San Patricio LLC, a California limited liability company recorded February 22, 2005, Instrument No. 2005-0140084, of Official Records.

Reference is hereby made to said document for full particulars.

15.     **Water rights, claims or title to water**, whether or not disclosed by the public records.

**THE FOLLOWING ITEMS AFFECT 9842385 (SUMMERWIND)**

16.     **The right** to develop and take water from the herein described land together with other appurtenant provisions as contained in deed to Redlands and Yucaipa Water Company, recorded March 12, 1913 in Book 373 Page 56, of Deeds.

NOTE: Cannot be located by the records.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

17.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

Granted to:        Southern California Gas Company
Purpose:           Pipelines, ingress, egress
Recorded:          December 11, 1931, Book 57, Page 478, of Official Records
Affects:           As set forth in said document

18.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

Granted to:        Southern California Edison Company
Purpose:           Pole lines
Recorded:          July 28, 1949, Book 1097, Page 561, of Official Records
Affects:           As set forth in said document

19.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

Granted to:        California Electric Power Company
Purpose:           Public utilities
Recorded:          November 4, 1960, Instrument No. 95300, of Official Records
Affects:           As set forth in said document

20.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

Granted to:        California Electric Power Company
Purpose:           Transmission lines
Recorded:          May 26, 1961, Instrument No. 45201, of Official Records
Affects:           As set forth in said document

21.     **Any and all rights, easements and rights of way** together with all water systems, including reservoirs, wells, well sites and appurtenances necessary for the production, maintenance and distribution of water as reserved by the Beaumont-Yucaipa Water Conservation Association, a corporation, in the deed recorded November 16, 1961 as Instrument No. 98758 of Official Records.

Said rights have been passed to County Cork Concepts Corporation, a Nevada corporation, pursuant to a judgment of the United States District Court, Central District of California, Case No. 80-04649-FW, a certified copy of which was recorded August 19, 1983 as Instrument No. 169330 of Official Records.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

22.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

    Granted to:        General Telephone Company of California, a corporation
    Purpose:          Public utilities
    Recorded:        March 9, 1971, Instrument No. 23255, of Official Records
    Affects:          As set forth in said document

23.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

    Granted to:        El Casco Water Co.
    Purpose:          Pipelines and conduits
    Recorded:        October 26, 1911, Book 340, Page 233, of Deeds

The exact location and extent of said easement is not disclosed of record.

24.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

    Granted to:        Southern California Edison Company LTD
    Purpose:          Electrical transmission lines
    Recorded:        October 13, 1945, Book 705, Page 92, of Official Records
    Affects:          Parcel 1

25.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

    Granted to:        Southern California Edison Company
    Purpose:          Electric power lines
    Recorded:        August 2, 1949, Book 1099, Page 103, of Official Records
    Affects:          A portion of said land

26.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

    Granted to:        California Electric Power Company
    Purpose:          Electric transmission line
    Recorded:        December 2, 1960, Book 2808, Page 517, of Official Records
    Affects:          Parcel 1

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

27.　　**Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

Granted to:　　　General Telephone Company of California, a Corporation
Purpose:　　　　Communication
Recorded:　　　November 25, 1975, Instrument No. 75-146942, of Official Records
Affects:　　　　Parcel 1

28.　　**The fact** that the ownership of said land does not include rights of access to or from the street, highway, or freeway abutting said land, such rights having been relinquished by the document,

Recorded:　　　March 19, 1963, Instrument No. 27078, of Official Records
Affects:　　　　A portion of said land

Said instrument contains a waiver in favor of the State of California of any claim for claim for damages to said land by reason of the location, construction, landscaping or maintenance of a highway contiguous thereto.

29.　　**The fact** that the ownership of said land does not include rights of access to or from the street, highway, or freeway abutting said land, such rights having been relinquished by the map of said tract.

Affects: SAN TIMOTEO CANYON ROAD FROM PARCEL 1

30.　　**Rights of Oak Valley-Hunt, Inc., a Texas corporation,** their successors, assignees, and lot owners within this parcel map for reciprocal ingress and egress from and through parcel one until such time as Parcel Map 31922 is SUPERCEDED by later subdivision with a defined system of public streets.

31.　　**Matters** contained in that certain document entitled "Declaration of Special Land Use Restrictions" dated May 3, 2005, executed by LBREP/L-SunCal Summerwind Ranch LLC, a Delaware limited liability company, and Oak Valley Partners, L.P., a Texas limited partnership recorded May 3, 2005, Instrument No. 05-350549, of Official Records.

Reference is hereby made to said document for full particulars.

**THE FOLLOWING ITEMS AFFECT 9842428 (MC ALLISTER)**

32.　　Any assessments levied, or which may be levied, by the McAllister Ranch Irrigation District.

33.　　An easement for the purposes shown below and rights incidental thereto as delineated or as offered for dedication, on the Sales Map of Lands of Kern County Land Company filed May 28, 1892 in the Office of the County Recorder of Kern County, for public road, affecting the Westerly 30 feet and the Southerly 30 feet of Parcel 1.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

34.  An easement for the hereinafter specific purpose and incidental purposes, in favor of the County of Kern as established by Order of the Board of Supervisors of Kern County made on December 10, 1892, and entered in Volume 5, Page 579, of the Minute Books.

Said easement is for public highway purposes, County Road No. 126, also known as Panama Lane, and is located within the Southerly 30 feet of Parcels 2, 3, 4 and Lots 29, 30, 31 and 32 of Parcel 5.

35.  **Easement(s)** for the purposes(s) shown below and rights incidental thereto as reserved in a document.

| | |
|---|---|
| Reserved by: | Lila M. Peters |
| Purpose: | Roadway |
| Recorded: | January 19, 1897 in Book 65, Page 138, of Deeds |
| Affects: | The Westerly 25 feet of the Northwest quarter of the Southeast quarter of said Section 22 |

36.  **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

| | |
|---|---|
| Granted to: | Shell Oil Company, a corporation |
| Purpose: | Oil and gas pipeline |
| Recorded: | January 8, 1938, Book 777, Page 10, of Official Records |
| Affects: | A portion of said Section 16 and 21. |

Reference is made to said document for full particulars.

First Amendment of said License Agreement, recorded February 26, 1969 in Book 4247, Page 460 of Official Records.

Second Amendment of said License Agreement, recorded April 30, 1970 in Book 4393, Page 408 of Official Records.

Third Amendment of said License Agreement, recorded August 5, 1970 in Book 4423, Page 773 of Official Records.

Said easement has been conveyed to Pacific Marketing and Transportation, LLC, by mesne documents, the last being assignment recorded October 3, 2003 as Document No. 0203212651 of Official Records.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

37.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

Granted to:        Shell Oil Company Incorporated, a Virginia corporation
Purpose:           Pipelines not exceeding four inches in diameter, with appurtenant valves, manholes, fittings and equipment, for conveying oil, gas, gasoline and/or other hydrocarbon products
Recorded:          April 30, 1945, Book 1241, Page 114, of Official Records
Affects:           Portions of said Sections 16 and 21

Reference is made to said document for full particulars.

Said easement is now vested in Shell Western E&P Inc., a Delaware corporation, by merger recorded May 6, 1987 in Book 6001, Page 1321, of Official Records.

38.     **An oil and gas lease** for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:          August 2, 1948
Lessor:         Kern County Land Company, a California corporation
Lessee:         The Hancock Oil Company of California, a Delaware corporation
Recorded:       August 16, 1948, Book 1551, Page 179, of Official Records

The Lessee's interest of said Lease is vested in Canfield Ranch Energy, LLC by document recorded December 3, 2003 as Document No. 0203262846 of Official Records.

By Mesne documents of record, all lands in said Lease were quitclaimed, except for the "retained" lands, as follows:

The NE 1/4 of the NE 1/4; the N 1/2 of the SE 1/4 of the NE 1/4; the S 1/2 of the SE 1/4 of the NE 1/4 and the N 1/2 of the NE 1/4 of the SE 1/4 of Section 23.

39.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as reserved in a document;

Reserved by:       Shell Oil Company, a California corporation
Purpose:           All rights-of-way over said lands for water lines, oil lines and other pipelines, and telephone, telegraph and electric power lines reasonably required for the convenient and effective operation by Shell Oil Company, of wells upon adjacent lands, and for the production, storage and transportation of the products therefrom
Recorded:          May 5, 1950, Book 1668, Page 77, of Official Records
Affects:           The N 1/2 of the SW 1/4 and the NE 1/4 of the SE 1/4 of the SW 1/4 of said Section 21

Said easement is now vested in Shell Western E&P Inc., a Delaware corporation, recorded May 6, 1987 in Book 6001, Page 1321 of Official Records.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

40.     **An oil and gas lease** for the term therein provided with certain covenants, conditions and
        provisions, together with easements, if any, as set forth therein.

        Dated:          May 2, 1950
        Lessor:         Kern County Land Company, a California corporation
        Lessee:         Union Oil Company of California, a California corporation
        Recorded:       July 28, 1950, Book 1708, Page 80, of Official Records

        The Lessee's interest of said Lease is vested in Canfield Ranch Energy, LLC, by document
        recorded December 3, 2003 as Document No. 0203262846 of Official Records.

        By Mesne Documents of Record, all lands in said Lease were quitclaimed for the "retained
        lands", as follows:

        The SE 1/4 of the NW 1/4 of the NE 1/4 and the NE 1/4 of the SW 1/4 of the NE 1/4 of
        Section 23.

41.     **An oil and gas lease** for the term therein provided with certain covenants, conditions and
        provisions, together with easements, if any, as set forth therein.

        Dated:          May 19, 1985
        Lessor:         Kern County Land Company, a California corporation
        Lessee:         Union Oil Company of California, a California corporation
        Recorded:       May 26, 1958, Book 2956, Page 464, of Official Records

        The Lessee's interest of said Lease is vested in Canfield Ranch Energy, LLC, by document
        recorded December 3, 2003 as Document No. 0203262846 of Official Records.

        By Mesne Documents of Record, all lands in said Lease were quitclaimed for the "retained
        lands", as follows:

        The NW 1/4 of the SE 1/4; the SE 1/4 of the NE 1/4 of the SW 1/4; the NE 1/4 of the SE
        1/4 of the SW 1/4; the N 1/2 of the S 1/2 of the SE 1/4 and the S 1/2 of the NE 1/4 of
        the Se 1/4 of Section 23.

42.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a
        document;

        Granted to:     Universal Consolidated Oil Company, a California corporation
        Purpose:        One pipeline of not exceeding 4 inches in diameter, with appurtenant
                        valves, manholes, fittings and other equipment, for transporting
                        crude oil, gas, gasoline, other hydrocarbons, or water
        Recorded:       September 25, 1961, Book 3518, Page 417, of Official Records
        Affects:        Portions of said Sections 21, 22 and 23

        Reference is made to said document for full particulars.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

Said easement has been conveyed to CHEVRON U.S.A., INC., the Pennsylvania corporation, by mesne documents, the last being merger recorded September 23, 1985 in Book 5799, Page 1433 of Official Records.

43.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

| | |
|---|---|
| Granted to: | Signal Oil and Gas Company, a Delaware corporation |
| Purpose: | One pipeline of not exceeding 5 inches in diameter, with appurtenant valves, manholes, fittings and other equipment, for transporting crude oil, gas, gasoline, other hydrocarbons, or water |
| Recorded: | November 29, 1961, Book 3437, Page 785, of Official Records |
| Affects: | A portion of said Section 23 |

Reference is made to said document for full particulars.

An Amendment of License Agreement, executed by and between Kern County Land Company, a Delaware corporation, successor to Kern County Land Company, a California corporation, and The Signal Companies, Inc., a corporation, which acquired title and is now doing business as Signal Oil and Gas Company, as successor to The Norwalk Company, a California corporation and Bankline Oil Company, a California corporation, recorded October 30, 1968 in Book 4211, Page 746 of Official Records.

Said easement has been conveyed to Texaco Trading and Transportation Inc., a Delaware corporation, by mesne documents, the last being assignment recorded February 1, 1988 in Book 6090, Page 11 of Official Records.

44.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

| | |
|---|---|
| Granted to: | Richfield Oil Corporation, a Delaware corporation |
| Purpose: | Two pipelines of not exceeding 12 inches in diameter, with appurtenant valves, manholes, fittings and other equipment, for transporting crude oil and residuum |
| Recorded: | February 18, 1965, Book 3815, Page 334, of Official Records |
| Affects: | A portion of said Section 16 |

Reference is made to said document for full particulars.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

First Amendment of Pipeline License Agreement, executed by and between Kern County Land Company, a California corporation, and Atlantic Richfield Company, a Pennsylvania corporation, successor to Richfield Oil Corporation, a Delaware corporation, recorded June 21, 1967 in Book 4064, Page 697 of Official Records.

Second Amendment of Pipeline License Agreement, executed by and between Tenneco West, Inc., a Delaware corporation, successor to Kern County Land Company, a California corporation, and Atlantic Richfield Company, a Pennsylvania corporation, successor to Richfield Oil Corporation, a Delaware corporation, recorded September 3, 1976 in Book 4976, Page 1690 of Official Records.

Third Amendment of Pipeline License Agreement, executed by and between Tenneco West, Inc., a Delaware corporation, successor to Kern County Land Company, a California corporation, hereinafter called "Owner" and Four Corners Pipe Line Company, a Delaware corporation, successor to Atlantic Richfield Company, a Pennsylvania corporation, recorded February 13, 1981 in Book 5352, Page 695 of Official Records.

Said easement was conveyed to Four Corners Pipe Line Company, a Delaware corporation, by Assignment of Pipe Line License Agreement, recorded February 13, 1981 in Book 5352, Page 698 of Official Records.

By Document recorded June 30, 1995 as Document No. 0195078115 of Official Records, Four Corners Pipelines Company merged into Arco Pipeline Company.

45.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

|  |  |
|---|---|
| Granted to: | Pacific Gas & Electric Company, a California corporation |
| Purpose: | A single transmission line consisting of a set of conductors supported by metal towers or wooden poles spaced as may be reasonably required along the line, together with all necessary and proper crossarms, braces, wires, cables, and other appliances and fixtures, to be used for the transmission and distribution of electric energy and for private telephone service |
| Recorded: | December 18, 1972, Book 4758, Page 186, of Official Records |
| Affects: | Portions of Sections 16, 21 and 22 |

Reference is made to said document for full particulars.

46.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

|  |  |
|---|---|
| Granted to: | The James-Pioneer Improvement District of the North Kern Water Storage District, a water storage district |
| Purpose: | The collection, storage and distribution of the irrigation waters only |
| Recorded: | November 19, 1980, Book 5332, Page 807, of Official Records |
| Affects: | A portion of said Section 16 |

Reference is made to said document for full particulars.

21

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

47.  An unrecorded easement and pipeline license agreement, dated January 26, 1951, for the purpose shown below and rights incidental thereto as disclosed in a document granted to The Norwalk Company for pipelines, recorded February 23, 1981 in Book 5353, Page 2351, Official Records.

Affects:   A portion of said Section 21

Reference is made to said document for full particulars.

An unrecorded First Amendment of said Pipeline License Agreement dated October 25, 1968, as disclosed in Document recorded February 23, 1981 in Book 5353, Page 2351 of Official Records.

A Second Amendment of said Pipeline License Agreement, recorded February 23, 1981 in Book 5353, Page 2351 of Official Records.

Said Easement and Pipeline License Agreement has been conveyed to Texaco Trading and Transportation Inc., a Delaware corporation, by mesne documents, the last being Assignment recorded February 1, 1988 in Book 6090, Page 11 of Official Records.

48.  **An oil and gas lease** for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:       June 29, 1982
Lessor:      Tenneco West, Inc., a Delaware corporation
Lessee:      Tenneco Oil Company, a Delaware corporation
Recorded:    January 13, 1983, Book 5518, Page 604, of Official Records

Said Lease was conveyed to Vintage Petroleum, Inc., a Delaware corporation, by mesne documents, the last being recorded in Book 7051, Page 135 of Official Records.

49.  An unrecorded Letter Agreement for a line of poles from Tenneco West, Inc., to Pacific Gas and Electric Company, dated July 29, 1974, as disclosed by an easement is not disclosed of record.

50.  **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

Granted to:   Pacific Gas & Electric Company, a California corporation, its successors and assigns
Purpose:      Electrical and communication facilities and appurtenances thereto
Recorded:     August 10, 1983, Book 5578, Page 751, of Official Records
Affects:      A portion of Section 21

Reference is made to said document for full particulars.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

51.    **An oil and gas lease** for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:              May 10, 1983
Lessor:             Tenneco West, Inc., a Delaware corporation
Lessee:             Tenneco Oil Company, a Delaware corporation
Recorded:           January 25, 1984, Book 5626, Page 744, of Official Records

Said Lease was conveyed to Vintage Petroleum, Inc., a Delaware corporation, by mesne documents, the last being recorded January 22, 1993 in Book 6793, Page 726 of Official Records.

52.    **An oil and gas lease** for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:              May 10, 1983
Lessor:             Tenneco West, Inc., a Delaware corporation
Lessee:             Tenneco Oil Company, a Delaware corporation
Recorded:           January 25, 1984, Book 5626, Page 753, of Official Records

Said Lease was conveyed to Vintage Petroleum, Inc., a Delaware corporation, by mesne documents, the last being recorded January 22, 1993 in Book 6793, Page 726 of Official Records.

53.    **An oil and gas lease** for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:              April 15, 1985
Lessor:             Tenneco West, Inc., a Delaware corporation
Lessee:             Tenneco Oil Company, a Delaware corporation
Recorded:           June 10, 1985, Book 5767, Page 1705, of Official Records

The Lessee's Interest under said Lease is vested in Tricor Energy, LLC, a California limited liability company, recorded November 4, 1999 as Document No. 0199159786 of Official Records.

54.    **An oil and gas lease** for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:              August 28, 1997
Lessor:             Enron Oil & Gas Company, a Delaware corporation
Lessee:             Canyon Oil & Gas
Recorded:           November 18, 1997, Instrument No. 0197151993, of Official Records

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

55.    **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

      Granted to:      Jasman Development, L.P.
      Purpose:      Private access
      Recorded:      June 23, 1998, Instrument No. 0198083293, of Official Records
      Affects:      Reference is made to said document for full particulars

56.    **Matters** contained in that certain document entitled "Agreement Affecting Real Property" dated August 20, 2002, executed by Jasman Development, L.P., a California limited partnership, recorded August 29, 2002, Instrument No. 0202141651, of Official Records.

Reference is hereby made to said document for full particulars.

57.    The following matters identified on the draft ALTA Survey of McAllister Ranch, prepared by Pinnacle Engineering, Job No. 04-141, dated March 1, 2004 ("Survey"):

a)  12' wide poleline license to PG&E from Kern County Land Company dated Nov. 4, 1949.

b)  12' wide poleline license to PG&E from Kern County Land Company dated Feb. 17, 1959.

c)  12' wide poleline license to PG&E from Kern County Land Company dated July 17, 1962.

d)  12' wide poleline license to PG&E from Kern County Land Company dated April 12, 1967.

f)  12' wide poleline license to PG&E from Tenneco West, Inc. dated October 16, 1970.

g)  12' wide poleline license to PG&E from Tenneco West, Inc. dated Feb. 1, 1974.

h)  12' wide poleline license PG&E from Tenneco West, Inc. dated July 29, 1974.

i)  12' wide poleline license to PG&E from Tenneco West, Inc. dated Aug. 20, 1974.

j)  12' wide poleline license to PG&E from Tenneco West, Inc. dated June 19, 1976.

k)  12' wide poleline license to PG&E from Tenneco West, Inc. dated July 20, 1978.

l)  12' wide poleline license to PG&E from Tenneco West, Inc. dated July 20, 1978.

m)  12' wide poleline license to PG&E from Tenneco West, Inc. dated Aug. 28, 1978.

n)  12' wide poleline license to PG&E from Tenneco West, Inc. dated Jan. 12, 1981.

o)  40' wide pipeline license to PG&E and Pacific Lighting Service from Tenneco West

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

dated October 10, 1979.

q) 10' wide poleline license to Pacific Telephone and Telephone Company from Kern County Land Company dated August 6, 1957.

r) 10' wide pipeline license to Panama Pipeline L.T.D. from Tenneco West dated Dec. 20, 1976.

s) 20' wide pipeline license to Shell Oil Company, Inc., from Kern County Land Company dated Jan. 26, 1948.

t) 100' long irrigation license to Tenneco West, Inc. from Southern Pacific Transportation Company dated July 1, 1978.

u) 100' long irrigation license to Tenneco West, Inc. from Southern Pacific Transportation Company dated June 26, 1978.

v) 10' wide pipeline license to Standard Oil Company of California from Kern County Land Company dated June 9, 1967.

x) 10' wide pipeline license to Hancock Oil Company from Kern County Land Company dated Oct. 10, 1956.

y) Operating Agreement for waste water disposal (Gosford Area) between the Superior Oil Company, Union Oil Company, Hancock Oil Company and the Kern County Land Company dated March 9, 1951.

z) 30' wide road license to Union Oil Company from Kern County Land Company dated April 6, 1955. Two (2).

aa) 10' wide and one (1) 16.5' wide pipeline licenses to Union Oil Company of California from Kern County Land Company dated May 21, 1959.

bb) 10' wide pipeline license to Universal Consolidated Oil Company from Kern County Land Company dated March 14, 1962.

cc) The fact that various wells are located on the land.

dd) Any matters existing as of the issuance date that are not disclosed by such Survey but are identified in an update of the Survey obtained from Pinnacle after the issuance dated.

58.      Matters contained in that certain document entitled "A Development Agreement" dated March 30, 2004, executed by Jasman Development LP, recorded April 8, 2004, Instrument No. 0204079232, of Official Records.

Reference is hereby made to said document for full particulars.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

**Matters** contained in that certain document entitled "Assignment and Assumption of Development Agreement" dated November 2, 2004, executed by and between Jasman Development, L.P., a California limited partnership and LBREP/L-Suncal McAllister Ranch LLC, a Delaware limited liability company, recorded November 9, 2004, Instrument No. 0204274655, of Official Records.

Reference is hereby made to said document for full particulars.

**Matters** contained in that certain document entitled "A Notification Acknowledgment and Assignment Agreement" dated April 26, 2005, executed by and between The County of Kern; Jasman Development L.P., a California limited partnership and LBREP/L-Suncal McAllister Ranch LLC, a Delaware corporation, recorded May 4, 2005, Instrument No. 0205114031, of Official Records.

Reference is hereby made to said document for full particulars.

59.    An Agreement of Development and Electric Covenants, Conditions and Restrictions, dated for reference purposes only October 29, 2004 and is executed to be effective upon its recordation, by and among McAllister Utility Services, LLC ("MUS"), Jasman Development, L.P., a California limited partnership ("JASMAN"), LBREP/L-Suncal McAllister Ranch LLC, a Delaware limited liability company ("DEVELOPER"), Anthony J. Occhionero, an individual ("OCCHIONERO"), Alvin Sandrini, an individual ("SANDRINI"), and Lawton Darren Powers, an individual ("POWERS" and collectively with Occhionero and Sandrini, the "OPTION PROPERTY OWNERS"), recorded November 9, 2004 as Document No. 0204274653 of Official Records.  Reference is hereby made to said document for full particulars.

60.    **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

| | |
|---|---|
| Granted to: | Kern Water Authority, a joint growers authority |
| Purpose: | a canal consisting of earthwork, structures, valves, meters, buried communication conduits and all other fixtures, devices and appurtenances connected therewith |
| Recorded: | June 1, 2005 as Instrument No. 0205139986, of Official Records |
| Affects: | Parcels 1, 2 and 3. Reference is made to said document for full particulars. |

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

## SCHEDULE B

### PART II

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest:

1.  **Matters** contained in that certain document entitled "First Lien Assignment of Developer's Rights", executed by LBREP/L-SunCal McSweeny Farms LLC, a Delaware limited liability company, recorded January 23, 2006 as Instrument No. 2006-50763, of Official Records, among other things, contains or provides for:  As set forth in said document.

    Reference is hereby made to said document for full particulars.

2.  **A deed of trust** to secure an indebtedness in the amount shown below, and any other obligations secured thereby

    | | |
    |---|---|
    | Amount: | $85,000,000.00 |
    | Dated: | January 19, 2006 |
    | Trustor: | LBREP/L-SunCal McSweeny Farms, LLC, a Delaware limited liability company; LBREP/L-SunCal Summerwind Ranch, LLC, a Delaware limited liability company; LBREP/L-SunCal McAllister Ranch, LLC, a Delaware limited liability company |
    | Trustee: | Fidelity National Title Insurance Company |
    | Beneficiary: | Lehman Commercial Paper Inc., as Administrative Agent, Beneficiary |
    | Loan No.: | None Shown |
    | Recorded: | January 26, 2006 as Instrument No. 2006-50764; January 23, 2006 as Instrument No. 2006-50760; and January 23, 2006 as Instrument No. 000206016537, all of Official Records |

3.  **Matters** contained in that certain document entitled "Second Lien Assignment of Developer's Rights", executed by LBREP/L-SunCal McSweeny Farms LLC, a Delaware limited liability company, recorded January 23, 2006 as Instrument No. 2006-50765, of Official Records, among other things, contains or provides for:  As set forth in said document.

    Reference is hereby made to said document for full particulars.

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

4.        **A deed of trust** to secure an indebtedness in the amount shown below, and any other
obligations secured thereby

| | |
|---|---|
| Amount: | $Undisclosed Amount |
| Dated: | November 2, 2004 |
| Trustor: | LBREP/L-SunCal McAllister Ranch LLC, a Delaware limited liability company |
| Trustee: | Fidelity National Title Company |
| Beneficiary: | Jasman Development, L.P., a California partnership and McAllister Utility Services, LLC |
| Loan No.: | None Shown |
| Recorded: | November 9, 2004, Instrument No. 0204274654, of Official Records |

ALTA 1970 Loan Policy (10-17-70 & 10-17-84)

Order No. 9842386, 9842385, 9842428
Policy No. 27-44-92 120334

**THE FOLLOWING ENDORSEMENTS APPLY TO ORDER NO. 9842386**

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company

The Company insures the Insured against loss or damage sustained by reason of any incorrectness in the assurance that, at Date of Policy:

1.  According to applicable zoning ordinances and amendments thereto, the land is classified Zone **Plan 01-2**.

2.  The following use or uses are allowed under that classification subject to compliance with any conditions, restrictions, or requirements contained in the zoning ordinances and amendments thereto, including but not limited to the securing of necessary consents or authorizations as a prerequisite to the use or uses:

**Residential**

There shall be no liability under this endorsement based on the invalidity of the ordinances and amendments thereto until after a final decree of a court of competent jurisdiction adjudicating the invalidity, the effect of which is to prohibit the use or uses.

Loss or damage as to the matters insured against by this endorsement shall not include loss or damage sustained or incurred by reason of the refusal of any person to purchase, lease or lend money on the estate or interest covered by this policy.

This endorsement is made a part of said policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated: January 19, 2006

**Fidelity National Title**
INSURANCE COMPANY

CLTA Form 123.1 (Rev. 3-13-87)
ALTA Endorsement Form 3 (6-1-87) Zoning

Countersigned

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1. The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for changes in the rate of interest.

2. Loss of priority of the lien of the insured mortgage as security for the unpaid principal balance of the loan, together with interest as changed in accordance with the provisions of the insured mortgage, which loss of priority is caused by the changes in the rate of interest.

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the insured mortgage at Date of Policy.

This endorsement does not insure against loss or damage based upon (a) usury, or (b) any consumer credit protection or truth in lending law.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto, except that the insurance afforded by this endorsement is not subject to Section 3(d) of the Exclusions from Coverage. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006

**Fidelity National Title**
INSURANCE COMPANY

CLTA Form 111.5 (Rev. 3-13-87)
(ALTA Form 6 - Variable Rate Mortgage)

Countersigned

31

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the Insured against loss or damage sustained by reason of lack of priority of the lien of the Insured mortgage over:

(a)   Any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in schedule B; or

(b)   Any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

None

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006

**Fidelity National Title**
INSURANCE COMPANY

CLTA Form 110.9 (3-13-87)
(ALTA Endorsement Form 8.1 (3-27-87)
Environmental Protection Lien



Countersigned

32

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1.  Any incorrectness in the assurance that, at Date of Policy:

> (a) There are no covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.

> (b)  Unless expressly excepted in Schedule B:

> (1) There are no present violations on the land of any enforceable covenants, conditions or restrictions, nor do any existing improvements on the land violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.

> (2) Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land does not, in addition, (i) establish an easement on the land; (ii) provide a lien for liquidated damages; (iii) provide for a private charge or assessment; (iv) provide for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.

> (3) There is no encroachment of existing improvements located on the land onto adjoining land, nor any encroachment onto the land of existing improvements located on adjoining land.

> (4) There is no encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.

> (5) There are no notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records.

2.  Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the Insured, provided the violation results in:

> (a) Invalidity, loss of priority, or unenforceability of the lien of the insured mortgage; or,

> (b) loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the Insured mortgage.

3.  Damage to existing and future improvements, including lawns, shrubbery or trees:

> (a) which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved;

> (b) resulting from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.

4.  Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.

5.  Any final court order or judgment denying the right to maintain any existing improvements on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat of subdivision recorded or filed in the public records.

Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraphs 1(b)(1) and 5, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated: January 19, 2006

**Fidelity National Title**

INSURANCE COMPANY

CLTA Form 100.2 (9-8-89)
ALTA Endorsement - Form 9 (10-19-88)
Restrictions, Easements, Minerals



Countersigned

34

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


     The Company hereby insures the owner of the indebtedness secured by the mortgage referred to in paragraph **4** of Schedule A against loss which the insured shall sustain by reason of the establishment of priority over the lien of the insured mortgage upon the estate or interest referred to in Schedule A of any statutory lien for labor or material attaching to the estate or interest referred to in Schedule A, said priority being based upon the claim that building materials had been delivered to or upon the land, or building operations had commenced thereon, prior to the recordation of the insured mortgage.

     This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006



**Fidelity National Title**
INSURANCE COMPANY

CLTA Form 101 (Rev. 9-10-93)
CLTA - Lender

_____
Countersigned

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


The Company hereby insures the insured against loss or damage which the insured shall sustain by reason of the failure of the land to abut upon a physically open street known as State Street.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated: January 19, 2006



Fidelity National Title
INSURANCE COMPANY

Countersigned

CLTA Form 103.7 (Rev. 6-14-96)
ALTA or CLTA - Owner or Lender

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


      The Company hereby insures the insured against loss or damage which the insured shall sustain by reason of the failure of the land to be the same as that delineated on the plat of a survey made by **AEI-CASC Engineering** on **September 14, 2005, revised December 13, 2005,** designated Job No. **445107**.

      This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006



Fidelity National Title
INSURANCE COMPANY


—————————————————————
Countersigned

CLTA Form 116.1 (Rev. 6-14-96)
ALTA or CLTA - Owner

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


The Company hereby insures the insured against loss or damage which the insured shall sustain by reason of the failure of the land described in Schedule A, Exhibit "ONE" to be contiguity.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006



**Fidelity National Title**
INSURANCE COMPANY

_____
Countersigned

CLTA Form 116.4 (Rev. 6-14-96)
ALTA or CLTA - Owner or Lender

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company

The Company hereby insures the insured against loss or damage which the insured shall sustain by reason of the failure of the land described as Parcel(s) Exhibit One in Schedule A to constitute a lawfully created parcel according to the Subdivision Map Act (Section 66410, et seq., of the California Government Code) and local ordinances adopted pursuant thereto.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006

**Fidelity National Title**
INSURANCE COMPANY



Countersigned

CLTA Form 116.7 (Rev. 6-14-96)
ALTA or CLTA - Owner or Lender

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


The Policy is hereby amended by deleting paragraph 13 Conditions and Stipulations.


This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006



**Fidelity National Title**
INSURANCE COMPANY

_____
Countersigned

CLTA Form 110.1 Modified
(Rev. 9-10-93)
ALTA or CLTA - Owner or Lender

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


The Policy is hereby amended by deleting paragraph 7 Exclusions from Coverage.


This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006



**Fidelity National Title**
INSURANCE COMPANY

_____
Countersigned

CLTA Form 110.1 Modified
(Rev. 9-10-93)
ALTA or CLTA - Owner or Lender

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


By the issuance of this loan policy in an amount which is less than the face amount of the mortgage insured and described in Schedule A, the Company agrees that if the insured applies all payments by the mortgagor to the release of security other than the land described in Schedule A until such time as the aggregate principal indebtedness outstanding is reduced to the amount of this policy, the amount of coverage afforded under this policy will not be reduced by such payments. Any subsequent payments which would have the effect of reducing the indebtedness below the amount of this policy will concurrently reduce the coverage under this policy by $1.00 for each $1.00 of principal reduction thereafter made.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006

**Fidelity National Title**
INSURANCE COMPANY



Last Dollar
ALTA Lender

Countersigned

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


      The Company insures the insured against loss which the insured shall sustain by reason of damage to existing and future improvements, including lawns, shrubbery or trees resulting from the exercise of any right to use the surface of the land for the extraction or development of the minerals excepted from the description of the land or shown as a reservation in Schedule B.

      This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006

**Fidelity National Title**
INSURANCE COMPANY



Countersigned

CLTA Form 100.29 (9-10-93)
CLTA - Owners or Lender

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


The Company hereby assures [the Insured] that, notwithstanding the provisions in the policy to the contrary, in the event of loss or damage insured against under the terms of the policy, the Company will not deny its coverage or liability thereunder to [the Insured] on the ground that [the Insured] had knowledge of any matter solely by reason of notice thereof imputed to it through **LBREP/L-SUNCAL MCSWEENY FARMS, LLC, a Delaware limited liability company**, by operation of law.


This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and prior endorsements, if any, nor does it extend the effective date of the policy and prior endorsements or increase the face amount thereof.

Dated:  January 19, 2006



**Fidelity National Title**
INSURANCE COMPANY

_____
Countersigned

Non-Imputation ALTA or CLTA
Owner or Lender

44

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


  The Company hereby insures the Insured that the land described in Schedule A is assessed for county or municipal tax purposes as those tax parcels shown on Schedule A, that such parcels include no other land, and that no other tax parcels affect said land.

  This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and prior endorsements, if any, nor does it extend the effective date of the policy and prior endorsements or increase the face amount thereof.

Dated:  January 19, 2006

**Fidelity National Title**
INSURANCE COMPANY



_____
Countersigned

Tax Parcel ALTA or CLTA
Owner, Loan and Leasehold

## ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company

The Company hereby insures the Insured against loss or damage which the Insured shall sustain by reason of the entry of a final court order or judgment by a court of competent jurisdiction determining and adjudging:

That the lien of the mortgage referred to in Schedule A is invalid or unenforceable as to the principal and interest due on the note secured thereby, said interest being computed in accordance with the provisions of said mortgage and note, on the ground that the loan evidenced by the note secured thereby is usurious in whole or in part under the laws of the State of California.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006

**Fidelity National Title**
INSURANCE COMPANY

Countersigned

Usury

46

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


The Company hereby insures the insured against loss which the insured shall sustain by reason of damage to existing improvements, including lawns, shrubbery or trees, resulting from the exercise of any right to use the surface of the land for the extraction or development of water excepted from the description of the land or shown as a reservation in Schedule B.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated: January 19, 2006



**Fidelity National Title**
INSURANCE COMPANY

_____
Countersigned

CLTA Form 103.5 (Rev. 9-10-93)
ALTA - Owner or Lender

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company

The Company hereby insures the named Insured against loss or damage which said Insured shall sustain by reason of the entry of any final court order or judgment issued by a court of competent jurisdiction which denies the Insured the right to enforce the lien of the mortgage referred to in Schedule A on the grounds that the making of the loan constituted a violation of the doing business laws of the State of California.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and prior endorsements, if any, nor does it extend the effective date of the policy and prior endorsements or increase the face amount thereof.

Dated:  January 19, 2006

Fidelity National Title
INSURANCE COMPANY

Countersigned:

BY _____
Authorized Signature

Doing Business
ALTA Lender

48

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company

The Company hereby insures the insured that in the event any defect, lien, encumbrance or other matter insured against by this policy, which creates a loss or a series of losses which exceed in the aggregate ten percent (10%) of the amount of insurance shown in Schedule A of this policy, the amount which the Company shall be liable to pay shall be determined without requiring the insured to pursue its remedies against any properties which secure the indebtedness, other than the premises described in Schedule A. Provided, however, that nothing in this endorsement shall affect or impair the Company's right of subrogation with respect to the insured premises.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated: January 19, 2006

Fidelity National Title
INSURANCE COMPANY

Countersigned:

BY _____
Authorized Signature

First Loss Endorsement

49

LAST DOLLAR ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


      Notwithstanding Section 9(b) of the Conditions and Stipulations to the contrary, by the issuance of this loan policy in an amount which is less than the face amount of the mortgage insured and described in Schedule A, the Company agrees that if the insured applies all payments by the mortgagor to the release of security other than the land described in Schedule A until such time as the aggregate principal indebtedness outstanding is reduced to the amount of this policy, the amount of coverage afforded under this policy will not be reduced by such payments. Any subsequent payments which would have the effect of reducing the indebtedness below the amount of this policy will concurrently reduce the coverage under this policy by $1.00 for each $1.00 of principal reduction thereafter made.

      Nothing in this Endorsement shall in any way diminish or affect the coverage provided in the (Modified) Revolving Credit Endorsement attached to the Policy.

      This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated: January 19, 2006

Fidelity National Title
INSURANCE COMPANY

Countersigned

BY _____
Authorized Signature

### ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company

     The Company hereby insures the insured against loss which the insured shall sustain as a result of any exercise of the right of use or maintenance of the easement referred to in paragraph 4 of Schedule B over or through the land.

     This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006

Fidelity National Title
INSURANCE COMPANY

Countersigned

BY _____
Authorized Signature

CLTA Form 103.1 (Rev. 9-10-93)
ALTA or CLTA - Lender/Owner (modified

### ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company

The Company hereby insures the insured against loss which the insured shall sustain in the event that the owner of the easement referred to in paragraphs **5, 6, 7 and 10** of Schedule B shall, for the purpose of "exercising the right of use or maintenance of said easement" compel the removal of any portion of the improvements on said land which encroach upon said easement.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006

Fidelity National Title
INSURANCE COMPANY

Countersigned:

BY _____
Authorized Signature

CLTA Form 103.3 (Rev. 9-10-93)
ALTA or CLTA - Lender/Owner (modified)

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company

The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage which the insured shall sustain by reason of the failure of (i) vacant land known as **[no situs address on the tax rolls]**, unincorporated Riverside county, Ca, to be located on the land at Date of Policy, and (ii) the map attached to this policy to correctly show the location and dimensions of the land according to the public records.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  January 19, 2006



## Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

CLTA Form 116 (Rev. 6-14-96)
ALTA - Lender

MORTGAGE TAX ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


The Company insures the owner of the indebtedness secured by the insured mortgage against any and all loss or damage, including without limitation reasonable attorney's fees, sustained by reason of:

1.    The invalidity or unenforceability of the first priority lien of the insured mortgage resulting from the failure to pay the proper amount of **California** Mortgage registration tax due upon the recording of the insured mortgage;

2.    The amount of mortgage registration tax paid, if any, with respect to the insured mortgage not being correct; or

3.    Any additional registration tax interest and/or penalties being accessed or charged subsequent to the Date of Policy.

In issuing this endorsement, the Company acknowledges and agrees that it has been provided with and reviewed all documentation which it has requested from insured.  Therefore, the Company hereby irrevocably waives any defenses, exceptions or limitations of coverage based on any provision contained in the Exclusions from Coverage or Conditions and Stipulations of this policy, specifically including but not limited to, exclusions 3(a) and (b) of the exclusions from Coverage with respect to the coverage provided by this Mortgage Registration Tax Endorsement.

This endorsement is hereby made a part of the policy.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Date:   January 19, 2006


**Fidelity National Title**
INSURANCE COMPANY

Countersigned:

BY _____
Authorized Signature

Order No. 9842385
Policy No. 27-44-92 120334

ENDORSEMENT
Attached to Policy No. 27-44-92 120334
Issued by
Fidelity National Title Insurance Company


The Company hereby insured the insured that any tax sale of the general real estate taxes affecting the land underlying the easement insured herein, or any tax deed issued pursuant to any such tax sale, will not result in the loss or termination of said easement insured herein.


The total liability of the Company under said policy and any endorsements therein shall not exceed, in the aggregate, the face amount of said policy and costs which the company is obligated under the conditions and stipulations thereof to pay.

This endorsement is made a part of the policy and is subject to the schedules, conditions and stipulations therein, except as modified by the provisions hereof.


Dated: January 19, 2006



Fidelity National Title
INSURANCE COMPANY

Countersigned: _____

BY _____
Authorized Signature


Tax Sale Endorsement