# EXHIBIT C

 **Fidelity National Title Insurance Company**

POLICY NO.: CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

## 1992 LOAN POLICY OF TITLE INSURANCE
## WITH ENDORSEMENT FORM 1 COVERAGE

*SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:*

1. *Title to the estate or interest described in Schedule A being vested other than as stated therein;*

2. *Any defect in or lien or encumbrance on the title;*

3. *Unmarketability of the title;*

4. *Lack of a right of access to and from the land;*

5. *The invalidity or unenforceability of the lien of the insured mortgage upon the title;*

6. *The priority of any lien or encumbrance over the lien of the insured mortgage;*

7. *Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:*
   (a) *arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or*
   (b) *arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;*

8. *Any assessments for street improvements under construction or completed at Date of Policy which now have gained or hereafter may gain priority over the lien of the insured mortgage;*

9. *The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.*

*The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.*

*IN WITNESS WHEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY has caused this policy to be signed and sealed by its duly authorized officers.*

**Fidelity National Title Insurance Company**

BY _____ President

ATTEST _____ Secretary

_____
Countersigned

**SCHEDULE A**

Policy No.:  CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

|                        |                 |
|------------------------|-----------------|
| Amount of Insurance:   | $ 25,000,000.00 |
| Premium:               | $ 13,750.00     |

Date of Policy:  February 9, 2007 at 08:00 AM

1.    Name of Insured:

   **LEHMAN COMMERCIAL PAPER INC., AS ADMINISTRATIVE AGENT, ITS SUCCESSORS AND/OR ASSIGNS AS THEIR INTERESTS MAY APPEAR**

2.    The estate or interest in the land which is encumbered by the insured mortgage is:

   A Fee

3.    Title to the estate or interest in the land is vested in:

   LBREP/L-SUNCAL MC ALLISTER RANCH LLC, a Delaware limited liability company

4.    The insured mortgage and assignments thereof, if any, are described as follows:

   **A deed of trust** to secure an indebtedness in the amount shown below, and any other obligations secured thereby

| | |
|---|---|
| Amount: | $75,000,000.00 |
| Dated: | February 6, 2007 |
| Trustor: | LBREP/L-SUNCAL MC ALLISTER RANCH LLC, a Delaware limited liability company |
| Trustee: | FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation |
| Beneficiary: | LEHMAN COMMERCIAL PAPER INC., AS ADMINISTRATIVE AGENT, ITS SUCCESSORS AND/OR ASSIGNS AS THEIR INTERESTS MAY APPEAR |
| Loan No.: | None Shown |
| Recorded: | February 9, 2007, Instrument No. 0207032341, of Official Records |

   Said Deed of Trust is additionally secured by a Third Lien Assignment of Developer's Rights executed by LBREP/L-SUNCAL MC ALLISTER RANCH LLC, a Delaware limited liability company and recorded February 9, 2007 as Document No. 02070324342.

5.    The land referred to in this policy is described as follows:

   SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

**THIS POLICY VALID ONLY IF SCHEDULE B IS ATTACHED**

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

# LEGAL DESCRIPTION

## EXHIBIT "A"

PARCEL 1:

That portion of Section 16, Township  30 South, Range 26 East, M.D.M., in the City of Bakersfield, County of Kern, State of California, including Lots 20, 30 and 31 thereof, as shown upon the Sales Map of Lands of Kern County Land Company dated May 23, 1892 and recorded May 28, 1892 in the Office of the Kern County Recorder, lying Westerly and Southwesterly of the lands conveyed to  Southern Pacific Railroad Company, a corporation, in deeds recorded October 21, 1893 and July 2, 1894 in Book 47, Page 356 of Deeds and in Book 54, Page 262 of Deeds, respectively.

EXCEPTING THEREFROM that portion thereof conveyed to the City of Bakersfield, in deed recorded December 30, 1976 in Book 4999, Pages 431 and 436 of Official Records.

ALSO EXCEPTING THEREFROM all oil, gas and other liquid and gaseous hydrocarbons and in addition thereto carbon dioxide, hydrogen, helium, nitrogen, methane, sulfur (in each case in either liquid or gaseous form) and any other liquid or gaseous substances, inert or otherwise, or any of them, and any minerals or other substances produced in association therewith ("hydrocarbons") in, on or under the premises, together with all rights, privileges, duties and responsibilities in any way related thereto, as conveyed to Tenneco Oil Company, a Delaware corporation, in assignment and conveyance recorded November 18, 1988 in Book 6183, Page 1167 of Official Records.

ALSO EXCEPTING THEREFROM all other minerals of whatever kind or character (all herein collectively called "minerals"), not conveyed to Tenneco Oil Company whether now known to exist or hereafter discovered (it being intended that the word "minerals" as used herein shall be defined in the broadest sense of the word and shall include, but not be limited to, oil, gas, other hydrocarbons and all other mineral substances and products, both metallic and nonmetallic, solid, liquid or gaseous), which are upon, in, under or may be produced from said real property; all salt water which is in, under or may be produced from said real property; the exclusive right, by whatever methods now or hereafter known, as Grantor or its successors or assigns, may deem advisable, to prospect for, investigate for, explore for, drill for, produce, mine, extract, remove and reduce to possession and ownership, all such minerals and salt water which are upon, in, under or may be produced from said real property; the exclusive right to drill into and through said real property to explore for and thereafter produce and extract minerals which may be produced from adjacent real property; the right to lay, construct, erect and place upon and in said real property, and use, maintain and operate thereon and thereafter remove, all buildings, tanks, pressure plants and other machinery, fixtures and equipment, pipelines, telephone lines, electric power lines, roads, power houses and other structures and facilities as Grantor or its successors or assigns, may deem advisable, for the exercise and enjoyment of the rights herein excepted and reserved; the exclusive right to treat, process, (but not refine), store upon and remove from said real property such minerals and salt water; the exclusive right to produce and extract such minerals by repressuring the subsurface sands and strata with fluids or gases or by such other method or methods as Grantor or is successors or assigns, may deem advisable, and to inject in and store and thereafter remove such fluids and gases, whether or not indigenous to said real property; the right at all times, without charge, to investigate for, explore for, drill for, produce, remove and reduce to possession and ownership, those quantities of fresh water from aquifers underlying said real property deemed necessary by Grantor or its successors or assigns, to use in prospecting, exploring, drilling, mining, producing, extracting and removing (including, but not limited to, use in unit operations, waterflood, thermal, or other secondary recovery methods now or hereafter known), or other operations in connection with the full enjoyment and exercise of the rights herein excepted and reserved; the right to exercise all rights herein excepted and reserved and any and all other rights upon said real property as Grantor or its successors or assigns, deems necessary, incidental to or convenient, whether alone or co-jointly with neighboring lands, in exploring for, producing and

2

extracting the minerals and salt water herein excepted and reserved; and the unlimited and unrestricted rights of access to said minerals and salt water and of ingress and egress to and from, over and across said real property for all purposes deemed advisable by Grantor or its successors or assigns in the exercise of the rights excepted and reserved herein; provided, however, that Grantor, or its successors and assigns, upon being provided proof thereof, shall compensate Grantee or its successors and assigns for any and all actual damage to improvements and growing crops upon said real property which is caused by the exercise of the rights excepted and reserved herein, and the reasonable value of the lands used for actual development and extraction of such mineral rights as excepted and reserved in Deed from TENNECO WEST INC., a Delaware corporation, recorded January 2, 1991 in Book 6473, Page 375 of Official Records.

PARCEL 2:

All of Section 21, Township 30 South, Range 26 East, M.D.M., in the City of Bakersfield, County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM that portion thereof conveyed to the Southern California Gas Company, a California corporation, in Grant Deed recorded July 28, 1980 in Book 5301, Page 1695 of Official Records, described as follows:

A three-dimensional parcel of land commencing at a point 1000 feet below the surface of the hereinafter described tracts and extending to a depth of 8,500 feet below the surface of the ground in and under the following described tracts of land, to wit:

The SW 1/4 of the SW 1/4; the W 1/2 of the SE 1/4 of the SW 1/4; the SE 1/4 of the SE 1/4 of the SW 1/4

Also excepting therefrom that portion of said land lying within the boundaries of Tract 6229, Phase 1, as recorded August 22, 2006 in Book 56, Page 1 through 18 of Maps.

ALSO EXCEPTING THEREFROM all oil, gas and other liquid and gaseous hydrocarbons and in addition thereto carbon dioxide, hydrogen, helium, nitrogen, methane, sulfur (in each case in either liquid or gaseous form) and any other liquid or gaseous substances, inert or otherwise, or any of them, and any minerals or other substances produced in association therewith ("hydrocarbons") in, on or under the premises, together with all rights, privileges, duties and responsibilities in any way related thereto, as conveyed to Tenneco Oil Company, a Delaware corporation, in assignment and conveyance recorded November 18, 1988 in Book 6183, Page 1167 of Official Records.

ALSO EXCEPTING THEREFROM all other minerals of whatever kind or character (all herein collectively called "minerals"), not conveyed to Tenneco Oil Company whether now known to exist or hereafter discovered (it being intended that the word "minerals" as used herein shall be defined in the broadest sense of the word and shall include, but not be limited to, oil, gas, other hydrocarbons and all other mineral substances and products, both metallic and nonmetallic, solid, liquid or gaseous), which are upon, in, under or may be produced from said real property; all salt water which is in, under or may be produced from said real property; the exclusive right, by whatever methods now or hereafter known, as Grantor or its successors or assigns, may deem advisable, to prospect for, investigate for, explore for, drill for, produce, mine, extract, remove and reduce to possession and ownership, all such minerals and salt water which are upon, in, under or may be produced from said real property; the exclusive right to drill into and through said real property to explore for and thereafter produce and extract minerals which may be produced from adjacent real property; the right to lay, construct, erect and place upon and in said real property, and use, maintain and operate thereon and thereafter remove, all buildings, tanks, pressure plants and other machinery, fixtures and equipment, pipelines, telephone lines, electric power lines, roads, power houses and other structures and facilities as Grantor or its successors or assigns, may deem advisable, for the exercise and enjoyment of the rights herein excepted and reserved; the exclusive right to treat, process, (but not refine), store upon and remove from said real property such minerals and salt water; the exclusive right to produce and extract such minerals by repressuring the subsurface sands and strata with fluids or gases or by such other method or

3

methods as Grantor or is successors or assigns, may deem advisable, and to inject in and store and thereafter remove such fluids and gases, whether or not indigenous to said real property; the right at all times, without charge, to investigate for, explore for, drill for, produce, remove and reduce to possession and ownership, those quantities of fresh water from aquifers underlying said real property deemed necessary by Grantor or its successors or assigns, to use in prospecting, exploring, drilling, mining, producing, extracting and removing (including, but not limited to, use in unit operations, waterflood, thermal, or other secondary recovery methods now or hereafter known), or other operations in connection with the full enjoyment and exercise of the rights herein excepted and reserved; the right to exercise all rights herein excepted and reserved and any and all other rights upon said real property as Grantor or its successors or assigns, deems necessary, incidental to or convenient, whether alone or co-jointly with neighboring lands, in exploring for, producing and extracting the minerals and salt water herein excepted and reserved; and the unlimited and unrestricted rights of access to said minerals and salt water and of ingress and egress to and from, over and across said real property for all purposes deemed advisable by Grantor or its successors or assigns in the exercise of the rights excepted and reserved herein; provided, however, that Grantor, or its successors and assigns, upon being provided proof thereof, shall compensate Grantee or its successors and assigns for any and all actual damage to improvements and growing crops upon said real property which is caused by the exercise of the rights excepted and reserved herein, and the reasonable value of the lands used for actual development and extraction of such mineral rights as excepted and reserved in Deed from TENNECO WEST INC., a Delaware corporation, recorded January 2, 1991 in Book 6473, Page 375 of Official Records.

PARCEL 3:

All of Section 22, Township 30 South, Range 26 East, M.D.M., in the City of Bakersfield, County of Kern, State of California, according to the Official Plat thereof.

Also excepting therefrom that portion of said land lying within the boundaries of Tract 6229, Phase 1, as recorded August 22, 2006 in Book 56, Page 1 through 18 of Maps.

ALSO EXCEPTING THEREFROM all oil, gas and other liquid and gaseous hydrocarbons and in addition thereto carbon dioxide,
hydrogen, helium, nitrogen, methane, sulfur (in each case in either liquid or gaseous form) and any other liquid or gaseous substances, inert or otherwise, or any of them, and any minerals or other substances produced in association therewith ("hydrocarbons") in, on or under the premises, together with all rights, privileges, duties and responsibilities in any way related thereto, as conveyed to Tenneco Oil Company, a Delaware corporation, in assignment and conveyance recorded November 18, 1988 in Book 6183, Page 1167 of Official Records.

ALSO EXCEPTING THEREFROM all other minerals of whatever kind or character (all herein collectively called "minerals"), not conveyed to Tenneco Oil Company whether now known to exist or hereafter discovered (it being intended that the word "minerals" as used herein shall be defined in the broadest sense of the word and shall include, but not be limited to, oil, gas, other hydrocarbons and all other mineral substances and products, both metallic and nonmetallic, solid, liquid or gaseous), which are upon, in, under or may be produced from said real property; all salt water which is in, under or may be produced from said real property; the exclusive right, by whatever methods now or hereafter known, as Grantor or its successors or assigns, may deem
advisable, to prospect for, investigate for, explore for, drill for, produce, mine, extract, remove and reduce to possession and ownership, all such minerals and salt water which are upon, in, under or may be produced from said real property; the exclusive right to drill into and through said real property to explore for and thereafter produce and extract minerals which may be produced from adjacent real property; the right to lay, construct, erect and place upon and in said real property, and use, maintain and operate thereon and thereafter remove, all buildings, tanks, pressure plants and other machinery, fixtures and equipment, pipelines, telephone lines, electric power lines, roads, power houses and other structures and facilities as Grantor or its successors or assigns, may deem advisable, for the exercise and enjoyment of the rights herein excepted and reserved; the exclusive right to treat, process, (but not refine), store upon and remove from

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

EXHIBIT "A" (continued)                    Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

said real property such minerals and salt water; the exclusive right to produce and extract such minerals by repressuring the subsurface sands and strata with fluids or gases or by

such other method or methods as Grantor is successors or assigns, may deem advisable, and to inject in and store and thereafter remove such fluids and gases, whether or not indigenous to said real property; the right at all times, without charge, to investigate for, explore for, drill for, produce, remove and reduce to possession and ownership, those quantities of fresh water from aquifers underlying said real property deemed necessary by Grantor or its successors or assigns, to use in prospecting, exploring, drilling, mining, producing, extracting and removing (including, but not limited to, use in unit operations, waterflood, thermal, or other secondary recovery methods now or hereafter known), or other operations in connection with the full enjoyment and exercise of the rights herein excepted and reserved; the right to exercise all rights herein excepted and reserved and

any and all other rights upon said real property as Grantor or its successors or assigns, deems necessary, incidental to or convenient, whether alone or co-jointly with neighboring lands, in exploring for, producing and extracting the minerals and salt water herein excepted and reserved; and the unlimited and unrestricted rights of access to said minerals and salt water and of ingress and egress to and from, over and across said real property for all purposes deemed advisable by Grantor or its successors or assigns in the exercise of the rights excepted and reserved herein; provided, however, that Grantor, or its successors and assigns, upon being provided proof thereof, shall compensate Grantee or its successors and assigns for any and all actual damage to improvements and growing crops upon said real property which is caused by the exercise of the rights excepted and reserved herein, and the reasonable value of the lands used for actual development and extraction of such mineral rights as excepted and reserved in Deed from TENNECO WEST INC., a Delaware corporation, recorded January 2, 1991 in Book 6473, Page 375 of Official Records.

PARCEL 4:

All of Section 23, Township 30 South, Range 26 East, M.D.M. in the City of Bakersfield, County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all of Tract No. 5840, Unit A, in the unincorporated area of the County of Kern, State of California, as per Map recorded June 23, 1998, in Book 44, Pages 38 to 42, inclusive, of Maps in the Office of the County Recorder of said County.

Also excepting therefrom that portion of said land lying within the boundaries of Tract 6229, Phase 1, as recorded August 22, 2006 in Book 56, Page 1 through 18 of Maps.

ALSO EXCEPTING THEREFROM all oil, gas and other liquid and gaseous hydrocarbons and in addition thereto carbon dioxide, hydrogen, helium, nitrogen, methane, sulfur (in each case in either liquid or gaseous form) and any other liquid or gaseous substances, inert or otherwise, or any of them, and any minerals or other substances produced in association therewith ("hydrocarbons") in, on or under the premises, together with all rights, privileges, duties and responsibilities in any way related thereto, as conveyed to Tenneco Oil Company, a Delaware corporation, in assignment and conveyance recorded November 18, 1988 in Book 6183, Page 1167 of Official Records.

ALSO EXCEPTING THEREFROM all other minerals of whatever kind or character (all herein collectively called "minerals"), not conveyed to Tenneco Oil Company whether now known to exist or hereafter discovered (it being intended that the word "minerals" as used herein shall be defined in the broadest sense of the word and shall include, but not be limited to, oil, gas, other hydrocarbons and all other mineral substances and products, both metallic and nonmetallic, solid, liquid or gaseous), which are upon, in, under or may be produced from said real property; all salt water which is in, under or may be produced from said real property; the exclusive right, by whatever methods now or hereafter known, as Grantor or its successors or assigns, may deem advisable, to prospect for, investigate for, explore for, drill for, produce, mine, extract, remove and reduce to possession and ownership, all such minerals and salt water which are upon, in, under or may be produced from said real property; the exclusive right to drill into and through said real property to explore for and thereafter produce and extract minerals which may be produced from adjacent real property;

5

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

the right to lay, construct, erect and place upon and in said real property, and use, maintain and operate thereon and thereafter remove, all buildings, tanks, pressure plants and other machinery, fixtures and equipment, pipelines, telephone lines, electric power lines, roads, power houses and other structures and facilities as Grantor or its successors or assigns, may deem advisable, for the exercise and enjoyment of the rights herein excepted and reserved; the exclusive right to treat, process, (but not refine), store upon and remove from said real property such minerals and salt water; the exclusive right to produce and extract such minerals by repressuring the subsurface sands and strata with fluids or gases or by such other method or methods as Grantor or is successors or assigns, may deem advisable, and to inject in and store and thereafter remove such fluids and gases, whether or not indigenous to said real property; the right at all times, without charge, to investigate for, explore for, drill for, produce, remove and reduce to possession and ownership, those quantities of fresh water from aquifers underlying said real property deemed necessary by Grantor or its successors or assigns, to use in prospecting, exploring, drilling, mining, producing, extracting and removing (including, but not limited to, use in unit operations, waterflood, thermal, or other secondary recovery methods now or hereafter known), or other operations in connection with the full enjoyment and exercise of the rights herein excepted and reserved; the right to exercise all rights herein excepted and reserved and any and all other rights upon said real property as Grantor or its successors or assigns, deems necessary, incidental to or convenient, whether alone or co-jointly with neighboring lands, in exploring for, producing and extracting the minerals and salt water herein excepted and reserved; and the unlimited and unrestricted rights of access to said minerals and salt water and of ingress and egress to and from, over and across said real property for all purposes deemed advisable by Grantor or its successors or assigns in the exercise of the rights excepted and reserved herein; provided, however, that Grantor, or its successors and assigns, upon being provided proof thereof, shall compensate Grantee or its successors and assigns for any and all actual damage to improvements and growing crops upon said real property which is caused by the exercise of the rights excepted and reserved herein, and the reasonable value of the lands used for actual development and extraction of such mineral rights as excepted and reserved in Deed from TENNECO WEST INC., a Delaware corporation, recorded January 2, 1991 in Book 6473, Page 375 of Official Records.

PARCEL 5:

Lots 1 through 8, inclusive, Lots 10 through 18, Inclusive, Lots 20 and 21, and Lots 23 through 32, Inclusive of Tract No. 5840, Unit A, in the City of Bakersfield, County of Kern, State of California, as per Map recorded June 23, 1998 in Book 44, Page 38 of Maps, in the Office of the County Recorder of said County.

 EXCEPTING THEREFROM all oil, gas and other liquid and gaseous hydrocarbons and in addition thereto carbon dioxide, hydrogen, helium, nitrogen, methane, sulfur (in each case in either liquid or gaseous form) and any other liquid or gaseous substances, inert or otherwise, or any of them, and any minerals or other substances produced in association therewith ("hydrocarbons") in, on or under the premises, together with all rights, privileges, duties and responsibilities in any way related thereto, as conveyed to Tenneco Oil Company, a Delaware corporation, in assignment and conveyance recorded November 18, 1988 in Book 6183, Page 1167 of Official Records.

ALSO EXCEPTING THEREFROM all other minerals of whatever kind or character (all herein collectively called "minerals"), not conveyed to Tenneco Oil Company whether now known to exist or hereafter discovered (it being intended that the word "minerals" as used herein shall be defined in the broadest sense of the word and shall include, but not be limited to, oil, gas, other hydrocarbons and all other mineral substances and products, both metallic and nonmetallic, solid, liquid or gaseous), which are upon, in, under or may be produced from said real property; all salt water which is in, under or may be produced from said real property; the exclusive right, by whatever methods now or hereafter known, as Grantor or its successors or assigns, may deem advisable, to prospect for, investigate for, explore for, drill for, produce, mine, extract, remove and reduce to possession and ownership, all such minerals and salt water which are upon, in, under or may be produced from said real property; the exclusive right to drill into and through said real property to explore for and thereafter produce and extract minerals which may be produced from adjacent real property; the right to lay, construct, erect and place upon and in said real property, and use, maintain and operate thereon and thereafter remove, all buildings, tanks, pressure plants and other machinery, fixtures and

6

equipment, pipelines, telephone lines, electric power lines, roads, power houses and other structures and facilities as Grantor or its successors or assigns, may deem advisable, for the exercise and enjoyment of the rights herein excepted and reserved; the exclusive right to treat, process, (but not refine), store upon and remove from said real property such minerals and salt water; the exclusive right to produce and extract such minerals by repressuring the subsurface sands and strata with fluids or gases or by such other method or methods as Grantor or is successors or assigns, may deem advisable, and to inject in and store and thereafter remove such fluids and gases, whether or not indigenous to said real property; the right at all times, without charge, to investigate for, explore for, drill for, produce, remove and reduce to possession and ownership, those quantities of fresh water from aquifers underlying said real property deemed necessary by Grantor or its successors or assigns, to use in prospecting, exploring, drilling, mining, producing, extracting and removing (including, but not limited to, use in unit operations, waterflood, thermal, or other secondary recovery methods now or hereafter known), or other operations in connection with the full enjoyment and exercise of the rights herein excepted and reserved; the right to exercise all rights herein excepted and reserved and any and all other rights upon said real property as Grantor or its successors or assigns, deems necessary, incidental to or convenient, whether alone or co-jointly with neighboring lands, in exploring for, producing and extracting the minerals and salt water herein excepted and reserved; and the unlimited and unrestricted rights of access to said minerals and salt water and of ingress and egress to and from, over and across said real property for all purposes deemed advisable by Grantor or its successors or assigns in the exercise of the rights excepted and reserved herein; provided, however, that Grantor, or its successors and assigns, upon being provided proof thereof, shall compensate Grantee or its successors and assigns for any and all actual damage to improvements and growing crops upon said real property which is caused by the exercise of the rights excepted and reserved herein, and the reasonable value of the lands used for actual development and extraction of such mineral rights as excepted and reserved in Deed from TENNECO WEST INC., a Delaware corporation, recorded January 2, 1991 in Book 6473, Page 375 of Official Records.

PARCEL 6:

Lots 1 through 26, inclusive, of Tract 6229, Phase 1, in the City of Bakersfield, County of Kern, State of California, as per Map recorded August 22, 2006 in Book 56, Pages 1 through 18 of Maps, in the office of the County Recorder of said County.

EXCEPTING THEREFROM all oil, gas and other liquid and gaseous hydrocarbons and in addition thereto carbon dioxide, hydrogen, helium, nitrogen, methane, sulfur (in each case in either liquid or gaseous form) and any other liquid or gaseous substances, inert or otherwise, or any of them, and any minerals or other substances produced in association therewith ("hydrocarbons") in, on or under the premises, together with all rights, privileges, duties and responsibilities in any way related thereto, as conveyed to Tenneco Oil Company, a Delaware corporation, in assignment and conveyance recorded November 18, 1988 in Book 6183, Page 1167 of Official Records.

ALSO EXCEPTING THEREFROM all other minerals of whatever kind or character (all herein collectively called "minerals"), not conveyed to Tenneco Oil Company whether now known to exist or hereafter discovered (it being intended that the word "minerals" as used herein shall be defined in the broadest sense of the word and shall include, but not be limited to, oil, gas, other hydrocarbons and all other mineral substances and products, both metallic and nonmetallic, solid, liquid or gaseous), which are upon, in, under or may be produced from said real property; all salt water which is in, under or may be produced from said real property; the exclusive right, by whatever methods now or hereafter known, as Grantor or its successors or assigns, may deem advisable, to prospect for, investigate for, explore for, drill for, produce, mine, extract, remove and reduce to possession and ownership, all such minerals and salt water which are upon, in, under or may be produced from said real property; the exclusive right to drill into and through said real property to explore for and thereafter produce and extract minerals which may be produced from adjacent real property; the right to lay, construct, erect and place upon and in said real property, and use, maintain and operate thereon and thereafter remove, all buildings, tanks, pressure plants and other machinery, fixtures and equipment, pipelines, telephone lines, electric power lines, roads, power houses and other structures and facilities as Grantor or its successors or assigns, may deem advisable, for the exercise and enjoyment of the

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

rights herein excepted and reserved; the exclusive right to treat, process, (but not refine), store upon and remove from said real property such minerals and salt water; the exclusive right to produce and extract such minerals by repressuring the subsurface sands and strata with fluids or gases or by such other method or methods as Grantor or is successors or assigns, may deem advisable, and to inject in and store and thereafter remove such fluids and gases, whether or not indigenous to said real property; the right at all times, without charge, to investigate for, explore for, drill for, produce, remove and reduce to possession and ownership, those quantities of fresh water from aquifers underlying said real property deemed necessary by Grantor or its successors or assigns, to use in prospecting, exploring, drilling, mining, producing, extracting and removing (including, but not limited to, use in unit operations, waterflood, thermal, or other secondary recovery methods now or hereafter known), or other operations in connection with the full enjoyment and exercise of the rights herein excepted and reserved; the right to exercise all rights herein excepted and reserved and any and all other rights upon said real property as Grantor or its successors or assigns, deems necessary, incidental to or convenient, whether alone or co-jointly with neighboring lands, in exploring for, producing and extracting the minerals and salt water herein excepted and reserved; and the unlimited and unrestricted rights of access to said minerals and salt water and of ingress and egress to and from, over and across said real property for all purposes deemed advisable by Grantor or its successors or assigns in the exercise of the rights excepted and reserved herein; provided, however, that Grantor, or its successors and assigns, upon being provided proof thereof, shall compensate Grantee or its successors and assigns for any and all actual damage to improvements and growing crops upon said real property which is caused by the exercise of the rights excepted and reserved herein, and the reasonable value of the lands used for actual development and extraction of such mineral rights as excepted and reserved in Deed from TENNECO WEST INC., a Delaware corporation, recorded January 2, 1991 in Book 6473, Page 375 of Official Records.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

### PART I

1.    Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2007-2008.

2.    Any assessments levied, or which may be levied, by the Mc Allister Ranch Irrigation District. All assessments levied to date have been paid.

3.    Subject to the Contract of Settlement of water rights as set forth in an agreement executed by J.B. Haggin, et al, and Henry Miller, et al, dated July 28, 1888 and recorded in Book 2, Page 40 of Agreements, and any supplements thereto.

4.    An easement for the purposes shown below and rights incidental thereto as delineated or as offered for dedication, on the Sales Map of Lands of Kern County Land Company filed May 28, 1892 in the Office of the County Recorder of Kern County.

Purpose: public roads
Affects: the Westerly 30 feet and the Southerly 30 feet of Parcel 1.

5.    An easement for the hereinafter specific purpose and incidental purposes, in favor of the County of Kern as established by Order of the Board of Supervisors of Kern County made on December 10, 1892, and entered in Volume 5, Page 579, of the Minute Books.

Said easement is for public highway purposes, County Road No. 126, also known as Panama Lane, and is located within the Southerly 30 feet of Parcels 2, 3, 4 and Lots 29, 30 31 and 32 of Parcel 5.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

SCHEDULE B – PART I (continued)                    Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

**6.**     Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document.

Granted to:     Shell Oil Company, a corporation
Purpose:        oil and gas pipeline
Recorded:       January 8, 1938, Book 777, Page 10, of Official Records
Affects: a portion of said Section 16 and 21. Reference is made to said document for full particulars.

First Amendment of said License Agreement, recorded February 26, 1969 in Book 4247, Page 460 of Official Records.

Second Amendment of said License Agreement, recorded April 30, 1970 in Book 4393, Page 408 of Official Records.

Third Amendment of said License Agreement, recorded August 5, 1970 in Book 4423, Page 773 of Official Records.

Said easement has been conveyed to Pacific Marketing and Transportation, LLC, by mesne documents, the last being assignment recorded October 3, 2003 as Document No. 0203212651 of Official Records.

**7.**     Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document.

Granted to:     Shell Oil Company Incorporated, a Virginia corporation
Purpose: pipelines not exceeding four inches in diameter, with appurtenant valves, manholes, fittings and equipment, for conveying oil, gas, gasoline and/or other hydrocarbon products
Recorded:       April 30, 1945, Book 1241, Page 114, of Official Records
Affects: portions of said Sections 16 and 21. Reference is hereby made to said document for full particulars.

Said easement is now vested in Shell Western E&P Inc., a Delaware corporation, by merger recorded May 6, 1987 in Book 6001, Page 1321 of Official Records.

**8.**     An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:  August 2, 1948
Lessor: Kern County Land Company, a California corporation
Lessee: the Hancock Oil Company of California, a Delaware corporation
Recorded:       August 16, 1948, Book 1551, Page 179, of Official Records

The Lessee's interest under said Lease is vested in Foothill Energy Partners, LP, a Texas Limited Partnership, by document recorded August 31, 2006 as Document No. 0206217906 of Official Records.
By Mesne documents of record, all lands in said Lease were quitclaimed, except for the "retained" lands, as follows:

The NE 1/4 of the NE 1/4; the N 1/2 of the SE 1/4 of the NE 1/4; the S 1/2 of the SE 1/4 of the NE 1/4 and the N 1/2 of the NE 1/4 of the SE 1/4 of Section 23.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

**9.**    Easement(s) for the purpose(s) shown below and rights incidental thereto as reserved in a document;

Reserved by:    Shell Oil Company, a California corporation
Purpose: all rights-of-way over said lands for water lines, oil lines and other pipelines, and telephone, telegraph and electric power lines reasonably required for the convenient and effective operation by Shell Oil Company, of wells upon adjacent lands, and for the production, storage and transportation of the products therefrom
Recorded:    May 5, 1950, Book 1668, Page 77, of Official Records
Affects: the N 1/2 of the SW 1/4 and the NE 1/4 of the SE 1/4 of the SW 1/4 of said Section 21.

Said easement is now vested in Shell Western E&P Inc., a Delaware corporation, recorded May 6, 1987 in Book 6001, Page 1321 of Official Records.

**10.**    An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:  May 2, 1950
Lessor: Kern County Land company, a California corporation
Lessee: Union Oil Company of California, a California corporation
Recorded:    July 28, 1950, Book 1708, Page 80, of Official Records
The Lessee's interest under said Lease is vested in Foothill Energy Partners, LP, a Texas Limited Partnership, by document recorded August 31, 2006 as Document No. 0206217906 of Official Records.

By Mesne Documents of Record, all lands in said Lease were quitclaimed, except for the "retained lands", as follows:

The SE 1/4 of the NW 1/4 of the NE 1/4 and the NE 1/4 of the SW 1/4 of the NE 1/4 of Section 23.

**11.**    An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:  May 19, 1985
Lessor: Kern County Land Company, a California corporation
Lessee: Union Oil Company of California, a California corporation
Recorded:    May 26, 1958, Book 2956, Page 464, of Official Records

The Lessee's interest under said Lease is vested in Foothill Energy Partners, LP, a Texas Limited Partnership, by document recorded August 31, 2006 as Document No. 0206217906 of Official Records.
By Mesne Documents of record, all lands in said Lease were quitclaimed, except for the "retained lands", as follows:

The NW 1/4 of the SE 1/4; the SE 1/4 of the NE 1/4 of the SW 1/4; the NE 1/4 of the SE 1/4 of the SW 1/4; the N 1/2 of the S 1/2 of the SE 1/4 and the S 1/2 of the NE 1/4 of the SE 1/4 of Section 23.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

**12.**    Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document.

Granted to:    Universal Consolidated Oil Company, a California corporation
Purpose: one pipeline of not exceeding 4 inches in diameter, with appurtenant valves, manholes, fittings and other equipment, for transporting crude oil, gas, gasoline, other hydrocarbons, or water
Recorded:    September 25, 1961, Book 3418, Page 417, of Official Records
Affects: portions of said Sections 21, 22 and 23. Reference is hereby made to said document for full particulars.

Said easement has been conveyed to CHEVRON U.S.A., INC., the Pennsylvania corporation, by mesne documents, the last being merger recorded September 23, 1985 in Book 5799, Page 1433 of Official Records.

**13.**    Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document.

Granted to:    Signal Oil and Gas Company, a Delaware corporation
Purpose: one pipeline of not exceeding 5 inches in diameter, with appurtenant valves, manholes, fittings and other equipment, for transporting crude oil, gas, gasoline, other hydrocarbons, or water
Recorded:    November 29, 1961, Book 3437, Page 785, of Official Records
Affects: a portion of said Section 23. Reference is hereby made to said document for full particulars.

An Amendment of License Agreement, executed by and between KERN COUNTY LAND COMPANY, a Delaware corporation, successor to KERN COUNTY LAND COMPANY, a California corporation, and THE SIGNAL COMPANIES, INC., a corporation, which acquired title and is now doing business as SIGNAL OIL AND GAS COMPANY, as successor to THE NORWALK COMPANY, a California corporation, and BANKLINE OIL COMPANY, a California corporation, recorded October 30, 1968 in Book 4211, Page 746 of Official Records.

Said easement has been conveyed to TEXACO TRADING AND TRANSPORTATION INC. a Delaware corporation, by mesne documents, the last being assignment recorded February 1, 1988 in Book 6090, Page 11 of Official Records.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

SCHEDULE B – PART I (continued)                    Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

**14.**    Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document.

Granted to:    Richfield Oil Corporation, a Delaware corporation
Purpose: two pipelines of not exceeding 12 inches in diameter, with appurtenant valves, manholes, fittings and other equipment, for transporting crude oil and residuum
Recorded:    February 18, 1965, Book 3815, Page 334, of Official Records
Affects: a portion of said Section 16. Reference is made to said document for full particulars.

First Amendment of Pipeline License Agreement, executed by and between KERN COUNTY LAND COMPANY, a California corporation, and ATLANTIC RICHFIELD COMPANY, a Pennsylvania corporation, successor to RICHFIELD OIL CORPORATION, a Delaware corporation, recorded June 21, 1967 in Book 4064, Page 697 of Official Records.

Second Amendment of Pipeline License Agreement, executed by and between TENNECO WEST, INC., a Delaware corporation, successor to KERN COUNTY LAND COMPANY, a California corporation, and ATLANTIC RICHFIELD COMPANY, a Pennsylvania corporation, successor to RICHFIELD OIL CORPORATION, a Delaware corporation, recorded September 3, 1976 in Book 4976, Page 1690 of Official Records.

Third Amendment of Pipeline License Agreement, executed by and between TENNECO WEST, INC., a Delaware corporation, successor to KERN COUNTY LAND COMPANY, a California corporation, hereinafter called "Owner" and FOUR CORNERS PIPE LINE COMPANY, a Delaware corporation, successor to ATLANTIC RICHFIELD COMPANY, a Pennsylvania corporation, recorded February 13, 1981 in Book 5352, Page 695 of Official Records.

Said easement was conveyed to FOUR CORNERS PIPE LINE COMPANY, a Delaware corporation, by Assignment of Pipe Line License Agreement, recorded February 13, 1981 in Book 5352, Page 698 of Official Records.

By Document recorded June 30, 1995 as Document No. 0195078115 of Official Records, Four Corners Pipelines Company merged into Arco Pipeline Company.


**15.**    Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document.

Granted to:    Pacific Gas & Electric Company, a California corporation
Purpose: a single transmission line consisting of a set of conductors supported by metal towers or wooden poles spaced as may be reasonably required along the line, together with all necessary and proper crossarms, braces, wires, cables, and other appliances and fixtures, to be used for the transmission and distribution of electric energy and for private telephone service
Recorded:    December 18, 1972, Book 4758, Page 186, of Official Records
Affects: portions of Sections 16, 21 and 22. Reference is hereby made to said document for full particulars


**16.**    Terms, Conditions, Provisions, Easements and License Agreements, as set out in Deed executed by TENNECO WEST, INC., a Delaware corporation, to SOUTHERN CALIFORNIA GAS COMPANY, a California corporation, recorded July 28, 1980 in Book 5301, Page 1695 of Official Records.

Affects the three-dimensional Parcel of land commencing at a point 1000 feet below the surface and extending to a depth of 8,500 feet below the surface of the SW 1/4 of the SW 1/4; the W 1/2 of the SE 1/4 of the SW 1/4 and the SE 1/4 of the SE 1/4 of the SW 1/4 of said Section 21.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

**17.**    The right of Southern California Gas Company to the full right to use so much of the surface to the depth of 1000 feet below the surface of the ground, as may be reasonably necessary for the production of oil, gas and associated hydrocarbons from the land therein conveyed and from the drilling and equipping of any new or existing wells for oil production and use and operations of gas storage reservoir in any of the several potential storage zones within the three-dimensional parcel of land therein conveyed and for any other uses required for operation of the gas storage reservoir, in any of the several potential storage zones within the three-dimensional parcel of land therein conveyed, and for any other uses required for operation of the gas storage reservoir, with the understanding and agreement that there is no requirement for Southern California Gas Company, to bury any pipe lines anywhere on the surface of the land overlying the three-dimensional parcel of land therein conveyed, lying within the SW 1/4 of the SW 1/4; the W 1/2 of the SE 1/4 of the SW 1/4 and the SE 1/4 of the SE 1/4 of the SW 1/4 of said Section 21, as reserved in Deed recorded July 28, 1980 in Book 5301, Page 1695 of Official Records.

The interest of Southern California Gas Company has been conveyed to TRICOR ENERGY, L.L.C., a California Limited Liability Company, by mesne documents of record, the last of which recorded November 4, 1999 as Document No. 0199159786 of Official Records.

**18.**    Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document.

Granted to:    The James-Pioneer Improvement District of the North Kern Water Storage District, a water storage district
Purpose:    the collection, storage and distribution of the irrigation waters only
Recorded:    November 19, 1980, Book 5332, Page 807, of Official Records
Affects: a portion of said Section 16. Reference is made to said document for full particulars.

**19.**    An unrecorded easement and pipeline license agreement, dated January 26, 1951, for the purpose shown below and rights incidental thereto as disclosed in a document:

Granted To: THE NORWALK COMPANY
Purpose : pipelines Recorded : February 23, 1981 in Book 5353, Page 2351, Official Records
Affects : a portion of said Section 21. Reference is hereby made to said document for full particulars.

An unrecorded First Amendment of said Pipeline License Agreement dated October 25, 1968, as disclosed in Document recorded February 23, 1981 in Book 5353, Page 2351 of Official Records.

A Second Amendment of said Pipeline License Agreement recorded February 23, 1981 in Book 5353, Page 2351 of Official Records.

Said Easement and Pipeline License Agreement has been conveyed to TEXACO TRADING AND TRANSPORTATION INC., a Delaware corporation, by mesne documents, the last being Assignment recorded February 1, 1988 in Book 6090, Page 11 of Official Records.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

SCHEDULE B – PART I (continued)                    Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

**20.**    An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated: June 29, 1982
Lessor: Tenneco West, Inc., a Delaware corporation
Lessee: Tenneco Oil Company, a Delaware corporation
Recorded:        January 13, 1983, Book 5518, Page 604, of Official Records

Affects the NE 1/4 of the SW 1/4; The W 1/2 of the NW 1/4 of the SE 1/4; and the S 1/2 of the SW 1/4 of the NE 1/4 of Section 21.

Said Lease was conveyed to VINTAGE PETROLEUM, INC., a Delaware corporation, by mesne documents, the last being recorded in Book 7051, Page 135 of Official Records.

**21.**    An unrecorded Letter Agreement for a line of poles from TENNECO WEST, INC., to PACIFIC GAS AND ELECTRIC COMPANY, dated July 29, 1974, as disclosed by an easement recorded August 10, 1983 in Book 5578, Page 751 of Official Records. Affects a portion of Section 21. The exact location and extent of said easement is not disclosed of record.

**22.**    Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document.

Granted to:        Pacific Gas & Electric Company, a California corporation, its successors and assigns
Purpose:          electrical and communication facilities and appurtenances thereto
Recorded:          August 10, 1983, Book 5578, Page 751, of Official Records
Affects: a portion of Section 21. Reference is made to said document for full particulars.

**23.**    An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated: May 10, 1983
Lessor: Tenneco West, Inc., a Delaware corporation
Lessee: Tenneco Oil Company, a Delaware corporation
Recorded:        January 25, 1984, Book 5626, Page 744, of Official Records

Affects the S 1/2 of the SW 1/4 of the NE 1/4 of Section 22.

Said Lease was conveyed to VINTAGE PETROLEUM, INC., a Delaware corporation, by mesne documents, the last being recorded January 22, 1993 in Book 6793, Page 726 of Official Records.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

**24.** An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:  May 10, 1983
Lessor: Tenneco West, Inc., a Delaware corporation
Lessee: Tenneco Oil Company, a Delaware corporation
Recorded:      January 25, 1984, Book 5626, Page 753, of Official Records

Affects the S 1/2 of the SE 1/4 of the SE 1/4 of Section 23.

Said Lease was conveyed to VINTAGE PETROLEUM, INC., a Delaware corporation, by mesne documents, the last being recorded January 22, 1993 in Book 6793, Page 726 of Official Records.

**25.** An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:  April 15, 1985
Lessor: Tenneco West, Inc., a Delaware corporation
Lessee: Tenneco oil Company, a Delaware corporation
Recorded:      June 10, 1985, Book 5767, Page 1705, of Official Records

Affects the SW 1/4 SW 1/4 and the W 1/2 SE 1/4 SW 1/4 and the SE 1/4 SE 1/4 SW 1/4 of Section 21.

The Lessee's interest under said Lease is vested in TRICOR ENERGY, LLC, a California Limited Liability Company, by document recorded November 4, 1999 as Document No. 0199159786 of Official Records.

**26.** An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:  August 28, 1997
Lessor: Enron Oil & Gas Company, a Delaware corporation
Lessee: Canyon Oil & Gas
Recorded:      November 18, 1997, Instrument No. 0197151993, of Official Records

Affects the W 1/2 SW 1/4 SW 1/4 NW 1/4 of said Section 16.

**27.** Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document.

Granted to:    Jasman Development, L.P.
Purpose:       private access
Recorded:      June 23, 1998, Instrument No. 0198083293, of Official Records
Affects: Reference is made to said document for full particulars.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

**28.**   Agreement:

Executed By And Between : TONY OCCHIONERO, ALVIN SANDRINI, WILLIAM C. MURPHY AND
JASMAN DEVELOPMENT, L.P. and MC ALLISTER RANCH IRRIGATION DISTRICT
On the terms, covenants and conditions contained therein,

Dated : August 20, 2002
Recorded : August 29, 2002 as Document No. 0202141651, Official Records

An Assignment and Assumption Agreement affecting real property is made as of November 2, 2004,
by and between JASMAN DEVELOPMENT, L.P., a California limited partnership and LBREP/L-SUNCAL
MCALLISTER RANCH LLC., a Delaware limited liability company, recorded November 9, 2004 as
Document No. 0204274656 of Official Records.

An Assignment of Development Agreements dated November 4, 2004, by and between
LBREP/L¬SUNCAL MCALLISTER RANCH LLC., a Delaware limited liability company and LEHMAN ALI,
INC., a Delaware corporation, recorded November 9, 2004 as Document No. 0204274658 of Official
Records.

**29.**   A Development Agreement between the (COUNTY OF KERN) and (JASMAN DEVELOPMENT) LP
Development Agreement 2, Map 122), (Kern County Agreement 216-2004), (Ordinance G-7088),
dated March 30, 2004 and recorded April 8, 2004 as Document No. 0204079232 of Official Records.
Reference is hereby made to said document for full particulars.

An Assignment and Assumption of Development Agreement dated November 2, 2004, by and
between JASMAN DEVELOPMENT, L.P., a California limited partnership and LBREP/L-SUNCAL
MCALLISTER RANCH LLC., a Delaware limited liability company, recorded November 9, 2004 as
Document No. 0204274655 of Official Records.

An Assignment of Development Agreements dated November 4, 2004, by and between
LBREP/L¬SUNCAL MCALLISTER RANCH LLC., a Delaware limited liability company and LEHMAN ALI,
INC., a Delaware corporation, recorded November 9, 2004 as Document No. 0204274658 of Official
Records.

A Notification, Acknowledgment and Assignment Agreement dated April 26, 2005 by and among the
County of Kern ("County"), Jasman Development L.P., a California limited partnership ("Assignor"),
and LBREP/L-Suncal McAllister Ranch LLC., a Delaware limited liability company ("Assignee"),
recorded May 4, 2005 as Document No. 0205114031 of Official Records.

**30.**   An Agreement of Development and Electric Covenants, Conditions and Restrictions, dated for
reference purposes only October 29, 2004 and is executed to be effective upon its recordation, by
and among Mc ALLISTER UTILITY SERVICES, LLC ("MUS"), JASMAN DEVELOPMENT, L.P., a California
limited partnership ("JASMAN") LBREP/L-SUNCAL MCALLISTER RANCH LLC, a Delaware limited
liability company ("DEVELOPER"), ANTHONY). OCCHIONERO, an individual ("OCCHIONERO"), ALVIN
SANDRINI, an individual ("SANDRINI"), and LAWTON DARREN POWERS, an individual ("POWERS"
and collectively with Occhionero and Sandrini, the "OPTION PROPERTY OWNERS"), recorded
November 9, 2004 as Document No. 0204274653 of Official Records. Reference is hereby made to
said document for full particulars.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

SCHEDULE B – PART I (continued)                                    Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

**31.** Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document.

Granted to:    Kern Water Bank Authority, a joint growers authority
Purpose: a canal consisting of earthwork, structures, valves, meters, buried communication conduits and all other fixtures, devices and appurtenances connected therewith
Recorded:    June 1, 2005, Instrument No. 0205139986, of Official Records
Affects: Parcels 1, 2, 3 and 6. Reference is made to said document for full particulars.

**32.** A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby

Amount:    $235,000,000.00
Dated: January 19, 2006
Trustor: LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company,
Trustee:    Fidelity National Title Insurance Company, a California corporation
Beneficiary:    Lehman Commercial Paper Inc., as Administrative Agent
Loan No.:    NOT SHOWN
Recorded:    January 23, 2006, Instrument No. 0205016535, of Official Records

Said Deed of Trust is additionally secured by a first lien assignment of developer's rights executed by LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company and recorded January 23, 2006 as document no. 0206016536 of official Records.

**33.** A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby

Amount:    $85,000,000.00
Dated: January 19, 2006
Trustor: LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company
Trustee:    Fidelity National Title Insurance Company, a California corporation
Beneficiary:    Lehman Commercial Paper Inc., as Administrative Agent
Loan No.:    NOT SHOWN
Recorded:    January 23, 2006, Instrument No. 0206016537, of Official Records

Said deed of trust is additionally secured by a second lien assignment of developer's rights executed by LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company and recorded January 23, 2006 as document no. 0206016538 of official Records.

18

SCHEDULE B – PART I (continued)   Policy No.: CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

34.   A Memorandum of Purchase Agreement dated February 28, 2006 executed by LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company in favor of Lennar Homes of California, Inc., a California corporation recorded March 3, 2006 as Document No. 02060052817 of Official Records.

Affects Planning Area 4.6, being a division of Lots 1 through 6 of Tract 5840-A

First Lien Homebuilder Contract Subordination, Recognition, Non-Disturbance and Attornment Agreement dated February 28, 2006 by and among LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware
Limited Liability Company, Lehman Commercial Paper Inc., as administrative agent under the Credit Agreement and Lennar Homes of California, Inc., a California corporation recorded March 29, 2006 as Document No. 0206075035 of Official Records.

Second Lien Homebuilder Contract Subordination, Recognition, Non-Disturbance and Attornment Agreement dated February 28, 2006 by and among LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company, Lehman Commercial Paper Inc., as administrative agent under the Credit Agreement and Lennar Homes of California, Inc., a California corporation recorded March 29, 2006 as Document No. 0206075036 of Official Records.

35.   A Memorandum of Purchase Agreement dated February 28, 2006 executed by LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company in favor of Lennar Homes of California, Inc., a California corporation recorded March 3, 2006 as Document No. 02060052818 of Official Records.
Affects Planning Area 2.13, being a division of a portion of said Section 22.
First Lien Homebuilder Contract Subordination, Recognition, Non-Disturbance and Attornment Agreement dated February 28, 2006 by and among LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company, Lehman Commercial Paper Inc., as administrative agent under the Credit Agreement and Lennar Homes of California, Inc., a California corporation recorded March 29, 2006 as Document No. 0206075027 of Official Records.

Second Lien Homebuilder Contract Subordination, Recognition, Non-Disturbance and Attornment Agreement dated February 28, 2006 by and among LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company, Lehman Commercial Paper Inc., as administrative agent under the Credit Agreement and Lennar Homes of California, Inc., a California corporation recorded March 29, 2006 as Document No. 0206075028 of Official Records.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

36.   A Memorandum of Purchase Agreement dated February 28, 2006 executed by LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company in favor of Lennar Homes of California, Inc., a California corporation recorded March 3, 2006 as Document No. 02060052819 of Official Records.
Affects Planning Area 3.9, being a division of a portion of said Section 21.

First Lien Homebuilder Contract Subordination, Recognition, Non-Disturbance and Attornment Agreement dated February 28, 2006 by and amoung LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company, Lehman Commercial Paper Inc., as administrative agent under the Credit Agreement and Lennar Homes of California, Inc., a California corporation recorded March 29, 2006 as Document No. 0206075031 of Official Records.

Second Lien Homebuilder Contract Subordination, Recognition, Non-Disturbance and Attornment Agreement dated February 28, 2006 by and amoung LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company, Lehman Commercial Paper Inc., as administrative agent under the Credit Agreement and Lennar Homes of California, Inc., a California corporation recorded March 29, 2006 as Document No. 0206075032 of Official Records.

37.   A Memorandum of Purchase Agreement dated February 28, 2006 executed by LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company in favor of Lennar Homes of California, Inc., a California corporation recorded March 3, 2006 as Document No. 02060052820 of Official Records.
Affects Planning Area 4.4, being a division of Lots 7, 8, 12, 13, 14, 15 and 16 of Tract 5840-A.

First Lien Homebuilder Contract Subordination, Recognition, Non-Disturbance and Attornment Agreement dated February 28, 2006 by and amoung LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company, Lehman Commercial Paper Inc., as administrative agent under the Credit Agreement and Lennar Homes of California, Inc., a California corporation recorded March 29, 2006 as Document No. 0206075033 of Official Records.

Second Lien Homebuilder Contract Subordination, Recognition, Non-Disturbance and Attornment Agreement dated February 28, 2006 by and amoung LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company, Lehman Commercial Paper Inc., as administrative agent under the Credit Agreement and Lennar Homes of California, Inc., a California corporation recorded March 29, 2006 as Document No. 0206075034 of Official Records.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

SCHEDULE B – PART I (continued)                    Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

**38.**    A Memorandum of Purchase Agreement dated February 28, 2006 executed by LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company In favor of Lennar Homes of California, Inc., a California corporation recorded March 3, 2006 as Document No. 02060052821 of Official Records.
Affects Planning Area 3.8, being a division of a portion of said Section 21.

First Lien Homebuilder Contract Subordination, Recognition, Non-Disturbance and Attornment Agreement dated February 28, 2006 by and amoung LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company, Lehman Commercial Paper Inc., as administrative agent under the Credit Agreement and Lennar Homes of California, Inc., a California corporation recorded March 29, 2006 as Document No. 0206075029 of Official Records.

Second Lien Homebuilder Contract Subordination, Recognition, Non-Disturbance and Attornment Agreement dated February 28, 2006 by and amoung LBREP/L-SUNCAL MC ALLISTER RANCH LLC., a Delaware Limited Liability Company, Lehman Commercial Paper Inc., as administrative agent under the Credit Agreement and Lennar Homes of California, Inc., a California corporation recorded March 29, 2006 as Document No. 0206075030 of Official Records.

**39.**    Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document.

Granted to:    Pacific Gas & Electric Company, a California corporation
Purpose:    public utilities
Recorded:    May 4, 2006, Instrument No. 0206110054, of Official Records
Affects: Lot 1 of Tract 6229-1. Reference is made to said document for full particulars.

**40.**    Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the map of said tract.

Purpose:    Public Access and an Irrevocable Offer of Dedication to the County of Kern
Affects: As shown on the recorded Map of Tract 6229, Phase 1.

Note: Said Irrevocable Offer of Dedication was rejected by the County of Kern on the recorded map.

**41.**    Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the map of said tract.

Purpose:    2.5 acre Petroleum Extraction Lots
Affects: As shown on the recorded Map of Tract 6229, Phase 1

**42.**    An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated    October 10, 2006
Lessor    Vintage Production California LLC
Lessee: Compass Global Resources
Recorded:    October 11, 2006, Instrument No. 0206252507, of Official Records

Affects all of Parcel 1

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

**43.** An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

Dated:  October 10, 2006
Lessor   Vintage Production California LLC
Lessee: Compass Global Resources
Recorded:        October 11, 2006, Instrument No. 0206252508, of Official Records

Affects the N 1/2 of said Section 22

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

**44.**    The following matters identified on the draft ALTA Survey of McAllister Ranch, prepared by Pinnacle Engineering, Job No. 04-141, dated March 1, 2004 ("Survey"):

a)    12' wide poleline license to PG&E from Kern County Land Company dated Nov. 4, 1949.

b)    12' wide poleline license to PG&E from Kern County Land Company dated Feb. 17, 1959.

c)    12' wide poleline license to PG&E from Kern County Land Company dated July 17, 1962.

d)    12' wide poleline license to PG&E from Kern County Land Company dated May 10, 1966.

e)    12' wide poleline license to PG&E from Kern County Land Company dated April 12, 1967.

f)    12' wide poleline license to PG&E from Tenneco West, Inc. dated October 16, 1970.

g)    12' wide poleline license to PG&E from Tenneco West, Inc. dated Feb. 1, 1974.

h)    12' wide poleline license to PG&E from Tenneco West, Inc. dated July 29, 1974.

1)    12' wide poleline license to PG&E from Tenneco West, Inc. dated Aug. 20, 1974.

j)    12' wide poleline license to PG&E from Tenneco West, Inc. dated June 19, 1976.

k)    12' wide poleline license to PG&E from Tenneco West, Inc. dated July 20, 1978

I)    12' wide poleline license to PG&E from Teneco West, Inc. dated July 20, 1978.

m)    12' wide poleline license to PG&E from Tenneco West, Inc. dated Aug. 28, 1978.

n)    12' wide poleline license to PG&E from Tenneco West, Inc. dated Jan. 12, 1981.

o)    40' wife pipeline license to PG&E and Pacific Lighting Service from Tenneco West dated October 10, 1979.

q)    10' wide poleline license to Pacific Telephone and Telegraph Company from Kern County Land Company dated August 6, 1957.

r)    10' wide pipeline license to Panama Pipeline L.T.D. from Tenneco West dated Dec. 20, 1976.

s)    20' wide pipeline license to Shell Oil Company, Inc., from Kern County Land Company dated Jan. 26, 1948.

t)    100' long irrigation license to Tenneco West, Inc. from Southern Pacific Transportation Company dated July 1, 1978.

u)    100' long irrigation license to Tenneco West, Inc. from Southern Pacific Transportation Company dated June 26, 1978.

v)    10' wide pipeline license to Standard Oil Company of California from Kern County Land Company dated June 9, 1967.

x)    10' wide pipeline license to Hancock Oil Company from Kern County Land Company dated Oct. 10, 1956.

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

Y.) Operating Agreement for waste water disposal (Gosford Area) between the Superior Oil Company, Union Oil Company, Hancock Oil Company and the Kern County Land Company dated March 9, 1951.

z)        30' wide road license to Union Oil Company from Kern County Land Company dated April 6, 1955. Two (2).

aa) 10' wide and one (1) 16.5' wide pipeline licenses to Union Oil Company of California from Kern County Land Company dated May 21, 1959.

bb)        10' wide pipeline license to Universal Consolidated Oil Company from kern County Land Company dated March 14, 1962.

cc)        The fact that various wells are located on the land.

dd)        Any matters existing as of the issuance date that are not disclosed by such Survey but are identified in an update of the Survey obtained from Pinnacle after the issuance dated.

**END OF SCHEDULE B – PART I**

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06

## SCHEDULE B

## PART II

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest:

**NONE**
**END OF SCHEDULE B – PART II**

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage

### ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

The Company hereby insures the insured against loss which the insured shall sustain by reason of damage to existing improvements, including lawns, shrubbery or trees, resulting from the exercise of any right to use the surface of the land for the extraction or development of water excepted from the description of the land or shown as a reservation in Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated: February 9, 2007



Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

Washington Form W-103.5
CLTA Form 103.5 (6/3/05)

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company


     The Company insures against loss or damage sustained by the insured if, at Date of Policy: (i) the Land does not abut and have both actual vehicular and pedestrian access to and from Panama Lane (the "Street"), (ii) the Street is not physically open and publicly maintained, or (iii) the insured has no right to use existing curb cuts or entries along that portion of the Street abutting the Land.

     This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


Dated: February 9, 2007




Fidelity National Title
INSURANCE COMPANY


———————————————
Countersigned

Formerly ALTA Endorsement Form 17 (Access and Entry) (10/22/03)
CLTA Form 103.11 (10/22/03)

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

The Policy is hereby amended by deleting paragraph 7 of Exclusions from Coverage.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated: February 9, 2007



Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

Colorado Form 110.1
Washington Form W-110.1
CLTA Form 110.1 (6/3/05)

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company


The Policy is hereby amended by deleting paragraph 13 of Conditions & Stipulations.


This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


Dated:  February 9, 2007



Countersigned

4 of 21

Colorado Form 110.1
Washington Form W-110.1
CLTA Form 110.1 (6/3/05)

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the Insured against loss or damage sustained by reason of lack of priority of the lien of the Insured mortgage over:

(a)    any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B; or

(b)    any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

None

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:  February 9, 2007



Fidelity National Title
INSURANCE COMPANY

Countersigned

Formerly ALTA Endorsement Form 8.1 (Environmental Protection Lien) (1/17/04)
Colorado Form 140.1
Washington Form W-110.9
CLTA Form 110.9 (1/17/04)

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1.    The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for changes in the rate of interest.

2.    Loss of priority of the lien of the insured mortgage as security for the unpaid principal balance of the loan, together with interest as changed in accordance with the provisions of the insured mortgage, which loss of priority is caused by the changes in the rate of interest.

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the insured mortgage at Date of Policy.

This endorsement does not insure against loss or damage based upon (a) usury, or (b) any consumer credit protection or truth in lending law.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:  February 9, 2007



**Fidelity National Title**
INSURANCE  COMPANY

_____
Countersigned

6 of 21
Formerly ALTA Endorsement Form 6 (Variable Rate Mortgage) (1/17/04)
Colorado Form 110.7
Washington Form W-111.5
CLTA Form 111.5 (1/17/04)

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

1.    The Company hereby assures the owner of the indebtedness secured by the insured mortgage that advances made subsequent to Date of Policy pursuant to the terms of the Revolving Credit ("Agreement"), which are secured by the insured mortgage, shall be included within the coverage of the policy, not to exceed the face amount of the policy, provided that the vestee is the owner of the estate or interest covered by the policy at the date any such advances are made and subject to the limitations hereinafter set forth.

2.    The Company hereby insures the insured against loss or damage which the insured shall sustain due to the failure of subsequent advances to have the same priority over liens, encumbrances and other matters disclosed by the public records as advances secured by the insured mortgage as of the Date of Policy, except for the following matters, if any, disclosed by the public records subsequent to the Date of Policy:

   a.    Federal tax liens.

   b.    Liens, encumbrances or other matters, the existence of which are actually known to the insured prior to date of such advances, if the advance is made subsequent to the occurrence of a default (of which the insured has actual knowledge) under the terms of the Agreement and prior to the cure by the vestee or waiver by the insured of such default.

   c.    Bankruptcies affecting the estate or interest of the vestee prior to date of such advances.

   d.    Taxes or assessments of any taxing authority that levies taxes or assessments on real property.

3.    Provided the Agreement secured by the insured mortgage contains provisions providing for changes in the rate of interest, the Company further insures the insured against loss or damage which the insured shall sustain by reason of:

   a.    The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions of the Agreement which provide for changes in the rate of interest.

   b.    Loss of priority of the lien of the insured mortgage as security for the unpaid principal balance of the loan evidenced by the Agreement, together with interest as changed in accordance with the provisions of the Agreement, which loss of priority is caused by said changes in the rate of interest.

   "Changes in the rate of interest", as used in this endorsement shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the Agreement.

4.    The Company further assures the insured that the advances described above shall not constitute "additional principal indebtedness", or "indebtedness created subsequent to Date of Policy", as may be referred to in the Conditions and Stipulations of the policy for purposes of limiting liability under the provisions thereof.

Washington Form W-111.11
CLTA Form 111.11 (6/3/05)

This endorsement also does not insure against loss or damage based upon

a.      usury, or

b.      any consumer credit protection or Truth-in-Lending law, or

c.      environmental protection laws.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement Is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated: February 9, 2007



Fidelity National Title
INSURANCE COMPANY

_____
          Countersigned

Washington Form W-111.11
CLTA Form 111.11 (6/3/05)

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

The Company hereby insures the insured against loss or damage that the insured shall sustain by reason of the failure of the land to be the same as that delineated on the plat of a survey made by Pinnacle Engineering, dated March 1, 2004, Job No. 04-141.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated: February 9, 2007



Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

Washington Form W-116.1
CLTA Form 116.1 (9/8/05)

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company


The Company hereby insures the insured against loss or damage which the insured shall sustain by reason of the failure of the land described as Parcel(s) 1 through 6 in Schedule A to constitute a lawfully created parcel according to the Subdivision Map Act (Section 66410, et seq., of the California Government Code) and local ordinances adopted pursuant thereto.


This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


Dated: February 9, 2007



INSURANCE  COMPANY

_____
Countersigned

CLTA Form 116.7 (6/3/05)

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company


The Company hereby insures the named Insured against loss or damage which said Insured shall sustain by reason of the entry of any final court order or judgment issued by a court of competent jurisdiction which denies the Insured the right to enforce the lien of the mortgage referred to in Schedule A on the grounds that the making of the loan constituted a violation of the doing business laws of the State of California.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and prior endorsements, if any, nor does it extend the effective date of the policy and prior endorsements or increase the face amount thereof.

Dated:  February 9, 2007



Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

Doing Business Endorsement
SE-10

### ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

In the event a defect, lien, encumbrance or other matter insured against by this policy creates a loss or a series of losses which exceed in the aggregate ten percent (10%) of the amount of insurance shown in Schedule A of this policy, the amount which the Company shall be liable to pay shall be determined without requiring maturity of the entire indebtedness by acceleration or otherwise, and without requiring the insured to pursue its remedies against any properties which secure the indebtedness other than foreclosure upon the premises described in Schedule A.

The liability of the Company under this endorsement shall in no case exceed the diminution in the value of the affected property caused by the defect, lien, or encumbrance or other matter less the liability of the Company for insurance on the affected parcel of any lien or of any mortgage in Schedule B of this policy.

Provided, however, that nothing in this endorsement shall affect or impair the Company's right of subrogation with respect to the insured premises.

Subrogation rights of the Company shall include entitlement to reimbursement for amounts paid under this endorsement should the indebtedness secured by the insured mortgage be repaid or recovered through other securities, such possible repayment or recovery being intended to render loss described herein as contingent. The company reserves the right before paying any amount under this endorsement to obtain reasonable security for its rights of reimbursement.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated: February 9, 2007

**Fidelity National Title**
INSURANCE COMPANY



Countersigned

First Loss Endorsement
SE-12

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

The Company hereby insures the Insured against loss or damage which the Insured shall sustain by reason of the entry of a final court order or judgment by a court of competent jurisdiction determining and adjudging:

That the lien of the mortgage referred to in Schedule A is invalid or unenforceable as to the principal and interest due on the note secured thereby, said interest being computed in accordance with the provisions of said mortgage and note, on the ground that the loan evidenced by the note secured thereby is usurious in whole or in part under the laws of the State of California.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  February 9, 2007



Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

Usury Endorsement
SE-25

## ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

Dated as of the date of the policy to which this endorsement is attached.

Notwithstanding Section 9(b) of the Conditions and Stipulations to the contrary, by the issuance of this policy in an amount which is less than the indebtedness secured by the insured mortgage, the Company agrees that if the insured applies all payments made by the borrower to the release of security other than the land described in Schedule A until such time as the aggregate unpaid principal indebtedness is reduced to the amount of this policy, the amount of coverage afforded will not be reduced by such payments. Any subsequent payments which would have the effect of reducing the indebtedness below the amount of this policy will concurrently reduce the coverage under this policy by $1.00 for each $1.00 of principal reduction thereafter made.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  February 9, 2007



Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

Last Dollar – ALTA 1992 Loan Policy
SE-33

# ENDORSEMENT

Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

The Company hereby assures the Insured that, notwithstanding the provisions of paragraphs numbered 3(a) and 3(b) of the exclusions from coverage in the policy, in the event of loss or damage insured against under the terms of the policy, the Company will not deny its liability thereunder to the Insured on the ground that the Insured had knowledge of any matter solely by reason of notice thereof imputed to it through , by operation of law.

This endorsement is made part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated: February 9, 2007



Countersigned

Non-Imputation
SE-37

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

### 123.1 (ALTA 3.0)

The Company insures the Insured against loss or damage sustained by reason of any incorrectness in the assurance that, at Date of Policy:

1.      According to applicable zoning ordinances and amendments thereto, the land is classified Zone R-1, E (1/2), D-1, R-2PD, C-2PD, R-3PD, R-3 and C-2PDPE.

2.      The following use or uses are allowed under that classification subject to compliance with any conditions, restrictions, or requirements contained in the zoning ordinances and amendments thereto, including but not limited to the securing of necessary consents or authorizations as a prerequisite to the use or uses:

Low Density Residential, Estate 1/2 acre, Drill Island, Medium Density Residential, General Commercial, High Density Residential and General Petroleum Extraction

There shall be no liability under this endorsement based on:

(a) Lack of compliance with any conditions, restrictions, or requirements contained in the zoning ordinances and amendments thereto mentioned above, including but not limited to the failure to secure necessary consents or authorizations as a prerequisite to the use or uses.

(b) The invalidity of the ordinances and amendments thereto mentioned above until after a final decree of a court of competent jurisdiction adjudicating the invalidity , the effect of which is to prohibit the use or uses.

(c) The refusal of any person to purchase, lease or lend money on the estate or interest covered by this policy.

This endorsement is made a part of said policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  February 9, 2007



Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

Custom Endorsement
SE-55

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

## MOD 100.9

The Company insured the insured against loss or damage sustained by reason of:

1.      The existence, at Date of Policy, of any of the following unless expressly excepted in Schedule B:

(a)     Present violations on the land of any enforceable covenants, conditions or restrictions;

(b)     Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land which, in addition, (i) establishes an easement on the land; (ii) provides for an option to purchase a right of first refusal or the prior approval of a future purchaser or occupant; of (iii) provides a right of reentry, possibility of reverter or right of forefeiture because of violations on the land of any enforceable covenants, conditions or restrictions.

(c)     Any encroachment onto the land of existing improvements located on adjoining land.

(d)     Any notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records.

2.      Damage to buildings constructed on the land after Date of Policy resulting from the future exercise of any right existing at Date of Policy to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B, except those portions shown on the Land Zoned D-1 and C-2PDPE as shown on the Kern County Administration Zoning Maps 122-16, 122-21, 122-22 and 122-23 attached hereto and made a part hereof.


Wherever in this endorsement the words "covenants", conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, and conditions or limitations contained in an instrument creating a lease.

As used in paragraph 1(a), the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.


This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Custom Endorsement
SE-55

Dated:  February 9, 2007



Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

Custom Endorsement
SE-55

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

**MOD 100.29**

The Company insures the insured against loss which the insured shall sustain by reason of damage to existing and future improvements, including lawns, shrubbery or trees resulting from the exercise of any right to use the surface of the land for the extraction or development of the minerals excepted from the description of the land or shown as a reservation in Schedule B.

There shall be no liability under this endorsement as to that portion of said land Zoned D-1 and C-2PDPE as shown on the Kern County Administration Zoning Maps 122-16, 122-21, 122-22 and 122-23 attached hereto and made a part hereof.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated: February 9, 2007



Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

Custom Endorsement
SE-55

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

**MOD 116.4**

The Company hereby insures the insured against loss or damage sustained by the insured by reason of:

(1)    the failure of the land described in Schedule A to be contiguous with each other.

(2)  the presence of any gaps, strips or gores separating any of the contiguous boundary lines described above.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  February 9, 2007



Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

Custom Endorsement
SE-55

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

**129.1**

The Company insures against loss or damage sustained by the insured by reason of:

1. Those portions of the land identified below not being assessed for real estate tax purposes under the listed tax identification numbers or those tax identification numbers including any additional land:

524-060-09-00-4; 524-090-01-00-9;
524-090-02-00-2; 524-090-03-00-5; 524-090-04-00-8; 524-090-05-00-1; 524-100-01-00-1; 524-100-02-00-4; 524-180-01-00-5;

524-180-02-00-8; 524-180-03-00-1; 524-180-04-00-4;

524-180-05-00-7;

524-180-06-00-0;

524-180-07-00-3;

524-180-08-00-6;

524-180-10-00-1;

524-180-11-00-4; 524-180-12-00-7; 524-180-13-00-0;

524-180-14-00-3; 524-180-15-00-6; 524-180-16-00-9; 524-180-17-00-2; 524-180-18-00-5; 524-180-20-00-0; 524-180-21-00-3;

524-180-23-00-9;

524-180-24-00-2;

524-180-25-00-5; 524-180-26-00-8; 524-180-27-00-1;

524-180-28-00-4;

524-180-29-00-7;

524-180-30-00-9; 524-180-31-00-2; 524-180-32-00-5

2. The easements, if any, described in Schedule A being cut off or disturbed by the non-payment of real estate taxes or assessments imposed on the servient estate by a Governmental Authority.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsement thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and prior endorsements or increase the face amount thereof.

Dated:  February 9, 2007



Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

Custom Endorsement
SE-55

ENDORSEMENT
Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

**TIE-IN**

The following policies are issued in conjunction with one another:

Dated:  February 9, 2007    Policy No.: CAFNT0925-0199-0259902518-FNTIC-2007-06 (McSweeny)
Dated:  February 9, 2007    Policy No.: CAFNT0925-0925-0199-0259902519-FNTIC-2007-06  (Summerwind)


Not withstanding the provisions of Section 7(a)(i) of the Conditions and Stipulations of this policy, the Amount of insurance available to cover the Company's liability for loss of damage under this policy at the time of Payment of Loss hereubder shall be the aggregate of the Amount of Insurance under this policy and the other policies identified above.  At no time shall the Amount of Insurance under this policy and the other policies identified above exceed in the aggregate $75,000,000.00 Subject to the provisions of Section 9(a) of the Conditions and Stipulations of the policies, all payments made by the Company under this policy or any other policies identified above, except the payments made for costs, attorney's fees and expenses, shall reduce the Aggregate Amount of Insurance pro tanto.


Dated:  February 9, 2007




Fidelity National Title
INSURANCE  COMPANY


_____
Countersigned

Custom Endorsement
SE-55

ENDORSEMENT

Attached to Policy No. CAFNT0925-0925-0199-0259902517-FNTIC-2007-06
Issued by
Fidelity National Title Insurance Company

**114**

Fidelity National Title Insurance Company, a California corporation, and First American Title Insurance Company of New York (herein referred to individually as the "Insurer" or jointly as the "Insurers") join as Insurers under that certain policy of title insurance issued by Fidelity National Title Insurance Company, a California corporation under its No. 259902517-BB, to which this endorsement is attached.

Anything in this policy notwithstanding, each of the Insurers respectively shall be liable only for such proportion of loss for which the Insurers may become liable under the policy and costs which the Insurers are obligated to pay under the Conditions and Stipulations of the policy in the proportion of the amount set forth for each insurer below to the face amount of the policy.

Total liability is allocated among the insurers as follows:

$37,500,000.00 Fidelity National Title Insurance Company

$37,500,000.00  First American Title Insurance Company of New York

Wherever in the policy, the term "the Company" is used, such term shall be Interpreted to mean the Insurers; where proper, the singular number shall be deemed to include the plural.

Paragraph number  10 of the Conditions and Stipulations of said policy is hereby amended to read as follows:

First American Title Insurance Company
1 First American Way
Santa Ana, CA 92707

All notices required to be given the Insurers and any statement in writing required to be furnished the Insurers shall be addressed to each of the Insurers at its Home Office, as follows:

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Custom Endorsement
SE-55

Dated:  February 9, 2007


Fidelity National Title
INSURANCE COMPANY

Countersigned

Custom Endorsement
SE-55

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
    (a) created, suffered, assumed or agreed to by the insured claimant;
    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c) resulting in no loss or damage to the insured claimant;
    (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or to the extent insurance is afforded herein as to assessments for street improvements under construction or completed at Date of Policy); or
    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
    (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
    (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
    (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
        (a) to timely record the instrument of transfer; or
        (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

### 1.  DEFINITION OF TERMS
The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes

   (i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

   (ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

   (iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

### 2.  CONTINUATION OF INSURANCE

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

   (i) the Amount of Insurance stated in Schedule A;

   (ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

   (iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is

the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

**3.  NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

**4.  DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE**

(a)  Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b)  The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c)  Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d)  In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5.  PROOF OF LOSS OR DAMAGE**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's

obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**6.  OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

**(a)  To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.**

(i)  to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii)  to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

**(b)  To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.**

(i)  to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii)  to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**7.  DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a)  The liability of the Company under this policy shall not exceed the least of:

(i)  the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2(c) of these Conditions and Stipulations;

(ii)  the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii)  the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b)  In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c)  The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8.  LIMITATION OF LIABILITY**

(a)  If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b)  In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c)  The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d)  The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9.  REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a)  All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b)  Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c)  Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10.  LIABILITY NONCUMULATIVE**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on

the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

## 11. PAYMENT OF LOSS

(a)  No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b)  When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

## 12. SUBROGATION  UPON  PAYMENT  OR SETTLEMENT

(a)  The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b)  The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c)  The Company's Rights Against Non-Insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

## 13. ARBITRATION

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the

land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a)  This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b)  Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c)  No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

## 15. SEVERABILITY

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

## 16. NOTICES, WHERE SENT

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at:

FNF - Southwest Claims Center
17911 Von Karman AvenueSuite 300
Irvine, CA  92614
Attn:  Claims Administration

FORMERLY ALTA Loan Policy (10/17/92)
with Endorsement-Form 1 Coverage