# EXHIBIT I

## STATUS OF DOCUMENT REQUESTS BY FIDELITY FOR MECHANICS' LIEN DEFENSE AND COVERAGE INVESTIGATION

| Description of Documents | Reason Needed By Fidelity | Status of Production |
|---|---|---|
| Construction documents, including contracts with material suppliers and contractors, scopes of work, change orders, budgets, and deadlines. | Construction documents are necessary to defend against the validity, amount, and scope of mechanics' lien claims. These records contribute to an understanding of whether the contractors performed unauthorized work, the liens are overstated, the liens are untimely and/or stale, the liens cover only part of the area of a project, or the liens are otherwise invalid or defective. | LCPI[1] has not produced these records except for the abbreviated budgets attached to the loan agreements. Its attorneys have represented that LCPI has no such documents in its possession. However, LCPI has authority over its agents to the extent that LCPI has instructed Fidelity not to contact such agents, who probably do have such records. One agent of which Fidelity is aware is construction inspection company M. Delvin & Associates. |
| Correspondence with the borrower.[2] | Communications between LCPI and the borrower are necessary to defend against the validity, amount, and scope of mechanics' lien claims. Such correspondence contributes to an understanding of whether the borrower authorized changed scopes of work, additional payments, and when work began and ceased. | LCPI has not produced these records except for copies of executed loan agreements exchanged among the parties. Its attorneys have represented that LCPI has no such documents in its possession, but it has authority over its agents and attorneys, who are reasonably expected to have such records. |
| Preliminary lien notices. | Under California law, contractors must serve upon the owner and construction lender 20-day preliminary lien notices before beginning work, unless they contract directly with the owner. (Cal. Civ. Code, §§ 3097, 3114.) Because the failure to serve such a notice when required automatically invalidates a mechanics' lien, such notices are necessary to assess this lien defense. | Only sporadic preliminary lien notices have been provided. Fidelity has a very low level of confidence that these are in fact all of the preliminary lien notices served upon LCPI directly or through its disbursement agent, if any.[3] |
| Conditional and unconditional lien releases, joint checks. | Conditional and unconditional lien releases are necessary to defend against the amount and scope of the | No lien releases or joint checks have been produced. LCPI's attorneys have represented that LCPI has no such |

---

[1] Requests have been made to Lehman Commercial Paper, Inc. ("LCPI") as agent for the First Lien Lenders, and Fidelity assumes the production occurred within the scope of the agency.

[2] "Borrower" as used herein refers to LBREP/L-SunCal Master I LLC.

[3] Fidelity is informed and believes and based thereon asserts that LCPI employed TriMont Real Estate Advisors as its disbursement agent for the subject loans, among others.

| | lien claims.  These records contribute to an understanding of whether any contractors released their "right" to record liens or the scope of their liens. | documents in its possession.  However, LCPI has authority over its agents who, it is reasonable to believe, do have such records. |
|---|---|---|
| Construction and site inspection reports, including documentation regarding the monitoring of construction and identification of work completed with each request for payment. | Reports of the progress of construction are necessary to defend against the validity, amount, and scope of mechanics' lien claims.  These records contribute to an understanding of whether the contractors performed unauthorized work, the liens are overstated in light of the work performed, the liens are untimely and/or stale, the liens cover only part of the area of a project, or the liens are otherwise invalid or defective. | LCPI's purported construction inspector was M. Delvin & Associates.  LCPI has not produced reports for January 2006, April 2006, June 2006, August 2006, and October 2006 pertaining to McAllister Ranch, despite contractor allegations that work was underway.

The earliest inspection report LCPI has produced for McSweeny Farms is dated August 2006, after project construction was well underway.  Thus, it is reasonable to believe that LCPI has not produced a complete set of McSweeny Farms construction inspection reports.

The earliest construction inspection report LCPI has produced for Summerwind Ranch is dated February 2007, also long after project construction was well underway.  Thus, it is reasonable to believe that LCPI has not produced a complete set of Summerwind Ranch construction inspection reports. |
| LCPI's, or its agent's, verification of work completed with each request for payment. | Analysis of the progress of construction is necessary to defend against the validity, amount, and scope of mechanics' lien claims.  These records contribute to an understanding of whether the contractors performed unauthorized work, the liens are overstated, the liens are untimely and/or stale, the liens cover only part of the area of a project, or the liens are otherwise invalid or defective. | LCPI has not provided any documents detailing its internal review and conclusions, or those of its agent(s) concerning the status of construction, the propriety of payments requested, and whether the borrower kept the loans in balance. |
| Documents evidencing when work stopped at the projects. | Under California law, all contractors must record their mechanics' liens within 90 days after cessation of work or forfeit the right to a mechanics' lien.  (Cal. Civ. Code, §§ 3115, 3116.)  Because the failure to | No construction documents have been made available by LCPI or its agents other than the incomplete inspection reports identified above.  On information and belief, Fidelity understands that LCPI has made no requests or |

| | | |
|---|---|---|
| | meet this deadline invalidates a lien, information about cessation of work, whether by recorded notice, cessation of labor, or otherwise (Cal. Civ. Code, §§ 3086), is necessary to assess this lien defense. | demands of its borrowers or the Trustee standing in the shoes of the borrower to make these records available. |
| Requests for payment, aka Draw Requests or Borrowing Notices. | Requests for payment are necessary to defend against the validity, amount, and scope of mechanics' lien claims. These records contribute to an understanding of whether the contractors performed unauthorized work, the liens are overstated, the liens are untimely and/or stale, the liens cover only part of the area of a project, or the liens are otherwise invalid or defective. | LCPI has not produced a complete set of Draw Requests/Borrowing Notices. There appear to have been 12 draws for the loans, and at least draw requests 1, 2, and 10 are missing.<br><br>Further, none of the Draw Requests LCPI has produced include supporting documents, such as invoices, that would support the amount of the Draw Request. Some, but not all, of the Draw Requests contain spreadsheets listing the pertinent information for each invoice included in the draw (but the invoices themselves are not included). Others provide a spreadsheet showing an itemized budget, the amount currently expended on each line item, the amount of the current draw, and the balance remaining in the budget for each line item. Other Draw Requests contain nothing other than the request itself. The inconsistency in the production suggests that complete files have not been produced. |
| Loan disbursement records. | Actual disbursements of loan proceeds are necessary to defend against the validity, amount, and scope of mechanics' lien claims. These records contribute to an understanding of whether the contractors performed unauthorized work, the liens are overstated, the liens are untimely and/or stale, the liens cover only part of the area of a project, or the liens are otherwise invalid or defective.<br><br>Additionally, a strong defense to the lien claims is equitable subrogation of LCPI's interests to that of the paid-off prior lender, Lehman ALI, whose trust deed predated any | LCPI has produced only 2 spreadsheets that purport to document balances of the revolver and term portions of the first loan. They contain no information about how the proceeds were applied vis a vis the line items on the construction budget in order to cross-reference any particular lien claim in order to evaluate and/or contest it. While claiming to have provided draw requests/borrowing notices, LCPI's production is incomplete and contains no supporting documentation to allow cross-referencing.<br><br>LCPI has also refused to provide any information on its procedures to monitor the loans and disbursements. |

| | commencement of work. Fidelity's evaluation of loan disbursement records is critical to its preparation of a defense against claims of culpable negligence – a factor under California law related to equitable subrogation. | Presumably, this information would be located with LCPI or its purported disbursing agent, TriMont. However, Fidelity has been instructed by LCPI not to contact TriMont for interviews or to obtain its documents. LCPI produced only a single email, dated August 7, 2007, from D. Curtis (TriMont) to B. Gross (Lehman) regarding draw #10 and a lien filed by Genesis Corporation. It is difficult to believe there was only one email between LCPI and its purported disbursing agent for almost half a billion dollars in loans regarding three major southern California projects. |
|---|---|---|
| Withdrawals from the Development Account and back up documents. | Actual disbursements of loan proceeds, including disbursements of loan proceeds placed into the Development Account are necessary to defend against the validity, amount, and scope of mechanics' lien claims. These records contribute to an understanding of whether the contractors performed unauthorized work, the liens are overstated, the liens are untimely and/or stale, the liens cover only part of the area of a project, or the liens are otherwise invalid or defective. | LCPI has produced nothing with regard to the Development Account. All information related to the Development Account in Fidelity's possession Fidelity obtained from proceedings in the Central District of California Bankruptcy Court related to use of the loan proceeds. |
| Retention withheld. | Just as disbursements are critical to evaluating the lien claims, it is likewise important to know whether retention was withheld from any contractors' payments and the amounts. | LCPI has produced no information on retentions withheld. |
| Stop notices. | Under California law, a lender served with a bonded stop notice must either pay the serving contractor or segregate such sums from existing loan proceeds to satisfy the claim. (See Cal. Civ. Code, § 3162.) The existence and amount of stop notices relates directly to the amount of loss allegedly suffered. | Fidelity received some stop notices that were attached to complaints tendered to Fidelity. However, LCPI has not made a separate, complete production of all stop notices served upon it. |
| All loan origination and/or underwriting files, including but not limited to all | The loan origination and/or underwriting files are necessary to understand any irregularities in the | LCPI's production was only partially responsive. LCPI did not respond to or produce any documents relating to |

| underwriting worksheets, underwriting evaluations, loan applications, preliminary reports, title commitment letters, verifications of borrower and property information, appraisals, broker price opinions, valuations of property, credit reports, loan approvals and inter-creditor agreements. | transaction on which a contractor may rely in an effort to establish culpable negligence in structuring the transaction and defeat LCPI's equitable subrogation claim. On separate grounds, Fidelity has a right to request such information to determine whether sufficient irregularities exist to amount to material misrepresentations or omissions in the procurement of title insurance. | underwriting worksheets, underwriting evaluations, loan applications, credit reports, or loan approvals. |
| --- | --- | --- |
| All loan closing files and/or escrow packages, including but not limited to all escrow instructions, loan disclosures, initial escrow disclosure statements, federal and state compliance documents and loan documents. | These documents are necessary to understand any irregularities in the transaction on which a contractor may rely in an effort to establish culpable negligence in structuring the transaction and defeat LCPI's equitable subrogation claim. On separate grounds, Fidelity has a right to request such information to determine whether sufficient irregularities exist to amount to material misrepresentations or omissions in the procurement of title insurance. | LCPI's production was only partially responsive. LCPI did not produce any escrow instructions, loan disclosures or HUD forms. LCPI represented that it produced all documents in its possession or control responsive to this request. However, it is reasonable to expect that LCPI's attorneys should have escrow instructions, loan disclosures, and similar records. |
| The names of all due diligence providers employed by LCPI to review the loan, and all information created by such providers regarding the loan. | LCPI's due diligence files are necessary to support its equitable subrogation defense to the lien claims, which defense is predicated on LCPI's redemption of the prior lender, Lehman ALI, whose trust deed predated any commencement of work. Fidelity's evaluation of loan disbursement records is critical to its preparation of a defense against claims of culpable negligence – a factor under California law related to equitable subrogation. | LCPI has provided an incomplete set of M. Delvin construction reports. LCPI has not provided any documents from TriMont, except for the revolver/term loan spreadsheets. Further, LCPI has expressly forbidden Fidelity from contacting M. Delvin or TriMont. |
| All loan vault files. | These documents are relevant to establish that LCPI is in fact the entity who suffered the alleged insured loss, and not an assignee or transferee. | LCPI has not provided any of these documents. |
| Loan transfer or loan sale files, including all assignments of the mortgage, deed of trust, or other | These documents are needed to establish that LCPI is the proper insured under the title policy. If LCPI sold, transferred, or assigned | LCPI has produced no information responsive to this request. |

| | | |
|---|---|---|
| instrument securing the loan. | the loan and deed of trust, then another entity may be the proper insured under the policy definition, not LCPI. | |
| All documents relating to agreements by third parties to indemnify LCPI for a loss sustained on the loan, including guarantees, mortgage insurance policies, mortgage pool or portfolio insurance policies, and any other kind of indemnity agreement, insurance policy or risk hedging agreement, however named, related to the loan or the claim. | Title insurance is a contract of indemnity. Fidelity is only liable to reimburse its insured for actual losses – i.e., losses that are not covered by payments from other parties. If an insured is paid by third party, such as a surety, the payment reduces the title insurer's liability to the insured. Fidelity, therefore, has a right to know about third party payments that LCPI either received or is entitled to receive under the aforementioned policies and/or agreements. | LCPI has produced no information responsive to this request. |
| Set-aside agreements with any surety, and any litigation over surety obligations. | Title insurance is a contract of indemnity. Fidelity is only liable to reimburse its insured for actual losses – i.e., losses that are not covered by payments from other parties. If an insured is paid by third party, such as a surety, the payment reduces the title insurer's liability to the insured. Fidelity, therefore, has a right to know about third party payments that LCPI either received or is entitled to receive under the aforementioned policies and/or agreements. | LCPI has produced no information responsive to this request. |
| Loan modification, workout or foreclosure files. | These documents are necessary to understand the terms of loan modifications and balance of power, as loan modifications were negotiated to prepare to counter allegations by contractors of inequitable conduct or culpable negligence designed to defeat LCPI's equitable subrogation claim. | LCPI has produced only executed amendments to credit agreements without any communications leading to the modifications that would inform what precipitated the modifications. |