BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern

*Attorneys for Barclays Capital Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| In re | |
| LEHMAN BROTHERS INC., | SIPA Proceeding Case No. |
| Debtor. | 08-01420 (JMP) |

**BARCLAYS' MOTION TO COMPEL PRODUCTION OF DATA AND ANALYSES
CONCERNING LBI'S 15c3-3 RESERVE CALCULATION**

Barclays Capital, Inc. ("Barclays"), by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 37, made applicable by Federal Rules of Bankruptcy Procedure 7037 and 9014(c), hereby moves for an order compelling the Trustee in the Securities Investor Protection Act proceedings (the "Trustee") to produce on an expedited basis the data and analyses prepared by his financial advisors at Deloitte (presently withheld as work product) necessary for Barclays to perform a 15c3-3 reserve calculation for LBI and to examine any and all possible adjustments to that calculation, not merely those identified by the Trustee's 15c3-3 expert Daniel McIsaac.[1]  The parties have met and conferred with respect to this issue and have failed to resolve it.

## PRELIMINARY STATEMENT

Under the plain language of Section 8 of the Clarification Letter, Barclays is entitled to receive "to the extent permitted by applicable law, and as soon as practicable after the Closing, $769 million of securities, as held by or on behalf of LBI on the date hereof pursuant to Rule 15c3-3 of the Securities and Exchange Act of 1934, as amended, or securities of substantially the same nature and value."[2]  This entitlement is not dependent on whether or not there was an excess equal to or greater than $769 million in LBI's 15c3-3 reserve account as of any date, because (i) the Trustee was authorized to transact in LBI's property and committed to delivering these securities without regard to whether there was an excess, and (ii) even if the Court finds that the non-existence of such an excess would preclude the Trustee from delivering $769 million of securities "as held by or on behalf of LBI . . . pursuant to Rule 15c3-3," it would not preclude him from delivering "securities of substantially the same nature and value," as he

---

[1] Given the existing trial schedule, Barclays respectfully requests that the Court require Movants to respond to this motion on or before Monday, September 27.  Should the Court grant the motion, Barclays requests that it require production of the requested materials on or before Friday, October 1.

[2] Clarification Letter (BCI Exhibit 5) at ¶ 8(ii).

1

agreed to do. The Movants argue otherwise – that Barclays must establish that there was an excess in LBI's 15c3-3 reserve account before it can receive any securities pursuant to Section 8 of the Clarification Letter.

Daniel McIsaac, Movants' expert witness on LBI's Rule 15c3-3 reserve requirement, opines that there is a "current shortfall" in LBI's reserve account of approximately $3.7 billion.[3] His opinion relies on analyses and data prepared and selected by the Trustee's financial advisors at Deloitte. Although the Trustee has produced the materials actually reviewed by Mr. McIsaac, the Trustee has withheld on work product grounds all related materials (including analyses and data) that Deloitte prepared, but which it did not select for Mr. McIsaac's review. The Trustee's counsel has also questioned a Barclays witness at deposition about a previously unproduced reserve calculation for LBI that Barclays believes was performed in January 2009 by a "ring-fenced" TSA employee at the Trustee's and/or Deloitte's request.[4]

The Trustee has waived work product protection for Deloitte's 15c3-3 materials by selectively disclosing them through Mr. McIsaac and at deposition. Unless it obtains the currently withheld Deloitte work product, Barclays cannot perform its own 15c3-3 reserve calculation for LBI, cannot confirm that Deloitte and the Trustee did not "cherry-pick" the information supporting Mr. McIsaac's proposed adjustments to LBI's reserve calculation, and cannot assess generally the completeness and accuracy of Mr. McIsaac's work. Accordingly, Barclays seeks an order requiring the Trustee to produce the data and analyses prepared by Deloitte necessary for Barclays to perform a 15c3-3 reserve calculation for LBI and to examine

---

[3] *See* Affidavit of Daniel McIsaac, dated October 5, 2009, at ¶ 49, attached to the Green Declaration as Exhibit G.

[4] *See* June 24, 2010 Robert Martini Deposition Transcript at 100:6-120:10, attached to the Green Declaration as Exhibit J; Deposition Exhibit 599 (Movants' Trial Exhibit 756), attached to the Green Declaration as Exhibit M.

2

any and all possible adjustments to that calculation, not merely those identified by Mr. McIsaac. In the alternative, because Barclays believes the Court need not reach the question of whether there was an excess in LBI's reserve account on any date, Barclays suggests that the Court may wish to defer the resolution of that factual issue until such time as the Court's rulings in this proceeding may (or may not) make resolution of the "excess" issue necessary.

## FACTUAL BACKGROUND

On November 4, 2009, based on Mr. McIsaac's work in another proceeding, the Trustee designated Mr. McIsaac as his testifying expert on LBI's Rule 15c3-3 reserve calculation.[5] Shortly thereafter, Barclays served its Third Request for Production of Documents to the Trustee (the "Third Request") which, among other things, asked the Trustee to produce "*[a]ny analyses, reconciliations or communications concerning the amounts held or required to be held, including but not limited to any excess amounts, in LBI's Reserve Account*."[6] The Trustee objected to this request and others on numerous grounds, including that the analyses sought were protected from discovery by the work product doctrine.[7] A contemporaneous subpoena served by Barclays on the Trustee's financial advisors at Deloitte met with similar objections.[8] On

---

[5] *See* Letter dated November 4, 2009 from William Maguire to Hamish Hume, attached to the Declaration of Christopher M. Green ("Green Declaration"), filed simultaneously herewith, as Exhibit A.

[6] *See* Request No. 5 (which was erroneously identified as Request No. 6) of Barclays Capital Inc.'s Third Request for Production of Documents to the Trustee in the Securities Investor Protection Act Liquidation of Lehman Brothers Inc., attached to the Green Declaration as Exhibit B (emphasis added). The Third Request also explains that '[t]hese requests call for the production of all documents within the responding party's possession, custody or control, regardless of the physical location of the documents or their actual custodian." *Id* at 8 (Instruction No. 38).

[7] *See* Response to Request No. 5 (erroneously identified as Request No. 6) of the Trustee's Responses and Objections to Barclays Capital Inc.'s Third Request for Production of Documents, attached to the Green Declaration as Exhibit C.

[8] *Compare* Barclays' October 9, 2009 Subpoena to Deloitte, attached to the Green Declaration as Exhibit D (requesting "any analyses, reconciliations or communications concerning the Barclays' transaction or the assets and liabilities involved in that transaction, whether the assets or liabilities were actually transferred or not, and whether the assets or liabilities were subject to transfer under the original Asset Purchase Agreement or under a subsequent amendment") *with* Deloitte's October 21, 2009 Response,

3

December 2, 2009, Barclays moved to compel the Trustee to produce Deloitte's analyses (including the reserve calculation analyses).[9] The Court denied Barclays' motion on December 16, 2009.

Both the Trustee and Mr. McIsaac concede that in formulating his opinions he relied on the Trustee's financial advisors at Deloitte to provide him with materials relating to LBI's September 19 reserve calculation.[10] Mr. McIsaac testified that he made no independent effort to look for transactions or events that would have required an adjustment to the reserve calculation other than what was identified for him by Deloitte.[11] He did not re-run the reserve calculation, nor did he undertake a forensic analysis of LBI's books and records.[12] Instead, Mr. McIsaac relied on Deloitte to provide him with the information he used to identify instances in which LBI allegedly failed to comply with Rule 15c3-3.[13]

In March and April 2010, in accordance with the parties' Stipulation Regarding Expert Discovery, the Trustee produced the Deloitte work product that Mr. McIsaac actually reviewed and relied upon in preparing his original affidavit and subsequent updates.[14] At the June 24, 2010 deposition of Barclays' employee Robert Martini, the Trustee's counsel marked as

---

attached to the Green Declaration as Exhibit E (objecting on grounds including the work product doctrine).

[9] Barclays' Motion to Compel Production of Documents from the Trustee and the Committee Based on Privilege Waiver [Doc. No. 6005].

[10] *See* Memorandum of Movants in Opposition to the Motion in Limine of Barclays Capital Inc. for an Order Excluding the Expert Testimony of Daniel McIsaac Regarding LBI's Obligations under SEC Rules 15c3-1, 15c3-3 and/or the Securities Investor Protection Act ("Movants' Opposition to Barclays' Motion to Exclude") at ¶ 7 (citing Mr. McIsaac's Affidavits and Report) [Doc. No. 10270].

[11] April 6, 2010 Daniel McIsaac Deposition Transcript at 293:11-21, attached to the Green Declaration as Exhibit F.

[12] Movants' Opposition to Barclays' Motion to Exclude at ¶ 7.

[13] *Id.*

[14] *See generally* Affidavit of Daniel McIsaac, dated October 5, 2009; Supplemental Affidavit of Daniel McIsaac, dated February 18, 2010; and Rebuttal Report of Daniel McIsaac, dated March 14, 2010; attached to the Green Declaration as Exhibit G.

Deposition Exhibit 599 a collection of documents containing a reserve calculation for LBI as of September 19, 2008, which Barclays believes was performed in January 2009 by William Burke, a "ring-fenced" TSA employee who reports to the Trustee, at the Trustee's and/or Deloitte's request.[15]

Despite these selective disclosures of Deloitte's work product, the Trustee has declined to produce any Deloitte work product concerning LBI's September 19 reserve calculation that was not shared with Mr. McIsaac or included in Deposition Exhibit 599.[16] As Mr. Martini and Barclays' expert Peter Vinella have each testified, Barclays does not have access to the information necessary to perform a reserve calculation for LBI.[17] And although Mr. McIsaac has contended that Deloitte "brought to [his] attention all potential compliance issues that they identified, regardless of the effect that those issues might have on LBI's reserve requirement,"[18] neither he nor Barclays has any way of knowing whether that statement is true.

Moreover, Mr. McIsaac's statement, even if true, does not reveal whether a full and accurate calculation of the 15c3-3 requirement would or would not show an excess. This Court

---

[15] *See* June 24, 2010 Robert Martini Deposition Transcript at 100:6-120:10, attached to the Green Declaration as Exhibit J; Deposition Exhibit 599 (Movants' Trial Exhibit 756), attached to the Green Declaration as Exhibit M.

[16] On September 10, 2010, the Court denied Barclays' motion in limine to exclude Mr. McIsaac's expert testimony "without prejudice to Barclays' rights, if they choose to exercise them further, to seek to obtain additional discovery." TSG Transcript of Proceedings on September 10, 2010 at 6944:2-5, attached to the Green Declaration as Exhibit H.

[17] *See generally* April 5, 2010 Declaration of Robert Martini, attached to the Green Declaration as Exhibit I; June 24, 2010 Robert Martini Deposition Transcript at 109:18-116:17, attached to the Green Declaration as Exhibit J; January 8, 2010 Expert Report of Peter Vinella at 6, n.8 (noting that data necessary to perform a calculation of LBI's reserve requirement as of September 19, 2008 is "maintained in the LBI systems under the control of the Trustee"), attached to the Green Declaration as Exhibit K; February 5, 2010 Peter Vinella Deposition Transcript at 100:8-106:13, attached to the Green Declaration as Exhibit L.

[18] Movants' Opposition to Barclays' Motion to Exclude at ¶ 12 (citing McIsaac Rebuttal Report ¶¶ 31, 33).

5

cannot enter a finding of whether there was or was not an excess in LBI's 15c3-3 reserve account based on the incomplete disclosure and calculations made to date.

### ARGUMENT

The selective disclosure / implied waiver doctrine and the work product doctrine both require the Trustee to produce the data and analyses prepared by the Trustee's financial advisors at Deloitte necessary for Barclays to perform a 15c3-3 reserve calculation for LBI and to examine any and all possible adjustments to that calculation, not merely those identified by the Trustee's 15c3-3 expert Daniel McIsaac.

The Trustee has waived work product protection for Deloitte's 15c3-3 materials by selectively disclosing them through Mr. McIsaac and at deposition. In addition to waiving any privilege for information actually disclosed, *see United States v. Jacobs*, 117 F.3d 82, 91 (2d Cir. 1997), a party impliedly waives privilege for all other privileged materials regarding a particular subject matter when it injects such issues into the litigation by "rel[ying] on the privileged communication as a claim or defense or as an element of a claim or defense," *In re Erie County*, 546 F.3d 222, 228 (2d Cir. 2008). The selective disclosure / implied waiver doctrine is designed to eliminate "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *Id.* at 229 (quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)).

The selective disclosure / implied waiver doctrine applies to work product. *See Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, 2002 WL 31729693, at *5 (S.D.N.Y. Dec. 5, 2002). Accordingly, any assertion of work product for any documents relating to the reserve calculation has been waived by the Trustee's selective disclosure of such work product through Mr. McIsaac's report and Deposition Exhibit 599. This is because "[a] party also impliedly

6

waives work product protection if it places the substance of the documents for which the protection is claimed at issue." 6 Moore's Federal Practice 26.70[6][c] at 26-226 (3d ed. 1997) (quoted favorably by Second Circuit in *John Doe Co.*, 350 F.3d at 302); *see also Kingsway Fin. Serv., Inc. v. PriceWaterHouseCoopers LLP*, 2008 WL 5423316, at *11 (S.D.N.Y. Dec. 31, 2008) ("The 'at issue' doctrine applies with equal force to assertions of the work product doctrine."); *Granite Partners v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999) ("work product privilege is waived when a party places otherwise protected work product 'at issue'").

Although the waiver created by the provision of work product to a testifying expert is usually limited to the materials actually reviewed, courts (including courts in the Southern District) have found a broader implied subject matter waiver in appropriate cases. For example, in *Herrick Co., Inc. v. Vetta Sports, Inc.*, 1998 WL 637468 (S.D.N.Y. September 17, 1998), the court found a subject matter waiver extending beyond those documents considered by the disclosed testifying expert witness in forming his opinions. In so doing, the court explicitly relied on Federal Rule 26:

> Rule 26(a)(2)(B) does not exhaustively describe the material that a party may discover with respect to an opposing expert witness. See Fed.R.Civ.P. 26(b)(4)(A) (setting up regular procedures for depositions of expert trial witnesses); Fed.R.Civ.P. 26 Advisory Committee Note to the 1993 Amendment, 28 U.S.C. at 718 (1994) ("The enumeration in Rule 26(a) of items to be disclosed does not prevent a court from requiring by order or local rule that the parties disclose additional information .... Nor are parties precluded from using traditional discovery methods to obtain further information regarding these matters."). The scope of further discovery beyond the mandatory disclosure of Rule 26(a)(2)(B) is governed by Rule 26(b)(1), which permits broad discovery of information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

Id. at *2; *see also Coleco Industries, Inc. v. Universal City Studios, Inc.,* 110 F.R.D. 688, 691 (S.D.N.Y. 1986) ("[S]elective disclosure of work product to establish the basis for an opinion of

7

counsel constitutes an implied waiver of all work product relevant to the same issue. While the work product privilege is accorded to protect the adversary system by affording an attorney a private realm in which to develop his legal strategies, that privilege impedes a fair adversarial presentation of the facts when it is invoked to avoid disclosure of anything other than a necessarily biased presentation of the relevant facts."); *United States v. Nobles*, 422 U.S. 225, 239-40 (1975) ("Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.").

Lastly, while the work product doctrine is broad, a party can overcome an assertion of work product if it "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

Barclays does not have access to the information necessary to perform a reserve calculation for LBI because that information is maintained in the LBI systems under the control of the Trustee.[19] Barclays has therefore satisfied Rule 26's threshold for obtaining fact work product because it has a substantial need for data necessary to perform a 15c3-3 calculation for LBI and explore all possible adjustments to that calculation. The substantial equivalent of that data – *i.e.,* materials necessary to assess generally the completeness and accuracy of Mr. McIsaac's work – cannot be obtained by other means. *See, e.g.*, *In re Grand Jury Subpoenas*

---

[19] *See generally* April 5, 2010 Declaration of Robert Martini, attached to the Green Declaration as Exhibit I; June 24, 2010 Robert Martini Deposition Transcript at 109:18-116:17, attached to the Green Declaration as Exhibit J; January 8, 2010 Expert Report of Peter Vinella at 6, n.8 (noting that data necessary to perform a calculation of LBI's reserve requirement as of September 19, 2008 is "maintained in the LBI systems under the control of the Trustee"), attached to the Green Declaration as Exhibit K; February 5, 2010 Peter Vinella Deposition Transcript at 100:8-106:13, attached to the Green Declaration as Exhibit L.

8

*Dated June 5, 2008*, 329 Fed. Appx. 302, 2009 WL 1269487 at *1 (2d Cir. 2009) (district court did not abuse its discretion in finding waiver of fact work product occurred and that, even if waiver did not occur, the government had overcome privilege by demonstrating substantial need and exhaustion of other avenues for the requested information).

## CONCLUSION

For the above reasons, Barclays respectfully requests that the Court order the Trustee to produce on an expedited basis the data and analyses prepared by his financial advisors at Deloitte necessary for Barclays to perform a 15c3-3 reserve calculation for LBI and to examine any and all possible adjustments to that calculation, not merely those identified by the Trustee's 15c3-3 expert Daniel McIsaac. In the alternative, Barclays respectfully requests that the Court enter an order deferring adjudication of the question whether there was an excess in LBI's reserve account on any date until such time as the Court determines it is necessary to make a finding of fact in that regard.

Dated: September 21, 2010

                          BOIES, SCHILLER & FLEXNER LLP

                          By:   /s/ Hamish P.M. Hume _____
                              Jonathan D. Schiller
                              Hamish P.M. Hume
                              Jack G. Stern
                              BOIES, SCHILLER & FLEXNER LLP
                              575 Lexington Avenue, 7th Floor
                              New York, NY 10022
                              Telephone: (212) 446-2300
                              Facsimile: (212) 446-2350

                              *Attorneys for Barclays Capital Inc.*