# EXHIBIT A

LEHMAN BROTHERS BANKHAUS AKTIENGESELLSCHAFT
LEHMAN BROTHERS INTERNATIONAL (EUROPE)
LEHMAN COMMERCIAL PAPER INC.
LEHMAN BROTHERS JAPAN INC.
LEHMAN BROTHERS HOLDINGS INC.

UNSECURED PROMISSORY NOTE AND GUARANTY

US$100,000,000                                                          DATED: September 14, 2007

FOR VALUE RECEIVED, each of the undersigned, Lehman Brothers Bankhaus Aktiengesellschaft ("LBB"), Lehman Brothers International (Europe) ("LBIE"), Lehman Commercial Paper Inc. ("LCPI"), Lehman Brothers Japan Inc. ("LBJ") and Lehman Brothers Holdings Inc. ("LBHI"; LBB, LBIE, LCPI, LBJ and LBHI each a "Borrower") severally and not jointly HEREBY PROMISES TO PAY to the order of Caixa Geral de Depositos S.A., New York Branch (the "Lender") the principal sum of ONE HUNDRED MILLION DOLLARS ($100,000,000) (the "Maximum Amount") or, if less, the aggregate unpaid principal amount of all advances made by Lender to such Borrower (each an "Advance") under this promissory note and guaranty (the "Note and Guaranty").

Subject to the terms of this Note and Guaranty, Lender agrees to make Advances to each Borrower, and each Borrower may borrow Advances, under this Note and Guaranty from the date hereof through but not including the final Maturity Date (as defined below) with respect to all Advances with a principal amount of up to the Maximum Amount; provided, however, that no borrowing will be permitted hereunder if such borrowing would cause the aggregate principal amount at any one time outstanding under this Note and Guaranty to exceed the Maximum Amount.

Whenever a Borrower desires to borrow an Advance, it shall give the Lender written notice (or telephonic notice, promptly confirmed in writing), at its address for notices specified herein, no later than 11:00 A.M. (New York City time) on the third Business Day prior to the requested date of the Advance. Each such notice (each a "Notice of Borrowing") shall be irrevocable and shall specify (i) the name of the Borrower, (ii) the principal amount of the Advance to be made (which, together with the principal of all other Advances hereunder then outstanding, shall not exceed the Maximum Amount), (iii) the date of such Advance (which shall be a Business Day) and (iv) the account of the Borrower to which the proceeds of such Advance are to be credited. No later than 1:00 P.M. (New York City time) on the date for the Advance specified in each Notice of Borrowing, the Lender shall make available to the Borrower in U.S. dollars, by wire transfer of immediately available funds to the account of the Borrower specified in the Notice of Borrowing, the amounts specified in the Notice of Borrowing.

The principal amount of each Advance shall be payable on the date that is eighteen (18) months from the date of such Advance (the "Maturity Date" of such Advance); provided that on the last day of each Interest Period (as defined below) with respect to each Advance (each, an "Extension Date" with respect to that Advance), the Maturity Date of such Advance shall automatically, without any action by Lender or any Borrower, be extended by one (1) additional month, unless a notice (a "Notice of Non-Extension") with respect to such Advance is delivered in writing by Lender to the Borrower of such Advance on or before such Extension Date (or if such day is not a Business Day, the next preceding Business Day). If a Notice of Non-Extension is delivered pursuant to the immediately preceding sentence with respect to any Advance, the Maturity Date of such Advance shall not be further extended on that Extension Date or thereafter.

Each Borrower further promises severally and not jointly to pay to Lender interest on the unpaid principal amount of each Advance made to it at a floating interest rate per annum (during the periods indicated below, as applicable, the "Interest Rate") equal to 1-Month LIBOR (as defined below) plus 0.35%, with 1-Month LIBOR being reset on the first day of each Interest Period (as defined below).

"1-Month LIBOR" for any Interest Period shall be the offered rate for deposits in U.S. dollars for a period of one month, commencing on the first day of such Interest Period, which appears on Moneyline Telerate on page 3750 (or

Unsecured Promissory Note and Guaranty
September 13, 2007
Page 2

any successor service or page for the purpose of displaying the London interbank offered rates of major banks) as of 11:00 a.m., London time, two Business Days prior to the beginning of such Interest Period.

An "Interest Period" for an Advance shall be the period commencing on the borrowing date with respect to such Advance and ending one month thereafter and each subsequent period of one month; provided that if any Interest Period would otherwise end on a day that is not a Business Day, such Interest Period shall be extended to the next succeeding Business Day unless the result of such extension would be to carry such Interest Period into another calendar month, in which event such Interest Period shall end on the immediately preceding Business Day; and any Interest Period that would otherwise extend beyond the Maturity Date of the Advance shall end on the Maturity Date of such Advance; and any Interest Period that begins on the last Business Day of a calendar month (or on a day for which there is no numerically corresponding day in the calendar month at the end of such Interest Period) shall end on the last Business Day of the calendar month at the end of such Interest Period.

Furthermore, each Borrower promises severally and not jointly to pay to Lender its Ratable Share (as defined below) of a commitment fee accruing at a rate of 0.07% *per annum* for each day from the date of this Note and Guaranty through the Maturity Date on the amount by which the Maximum Amount exceeds the aggregate principal amount of Advances outstanding on such day under this Note and Guaranty. "Ratable Share", with respect to any Borrower, for any day, shall mean a ratio of (a) the actual amount for such day by which the Maximum Amount exceeds the aggregate outstanding principal amount of Advances made to such Borrower under this Note and Guaranty (such Borrower's "Unutilized Commitment") over (b) the sum of each Borrower's Unutilized Commitment.

Interest and commitment fees will be computed on the basis of a 360-day year of twelve 30-day months for the actual number of days elapsed. Interest on each Advance will be payable in arrears (a) on that last day of each Interest Period with respect to such Advance and (b) on the Maturity Date (each such date an "Interest Payment Date"; the Maturity Date and the Interest Payment Dates are referred to individually and collectively as "Payment Dates"). Commitment fees will be payable in arrears on each Interest Payment Date.

"Business Day" shall mean any day excluding Saturday, Sunday and any day which shall be in New York City a legal holiday or a day on which banking institutions are authorized or required by law or other governmental actions to close and which is also a day for trading by and between banks in U.S. dollar deposits in the London interbank Eurodollar market.

Principal, interest and commitment fees due and not paid on any Payment Date shall bear interest at a fixed rate per annum equal to Lender's prime lending rate as announced from time to time to be in effect at its principal office in New York City until the applicable principal, interest or commitment fee is paid in full.

Promptly after making each Advance, Lender shall send to the Borrower of such Advance a written confirmation of the principal amount, Interest Rate and Payment Dates of such Advance. Unless such Borrower shall object within two Business Days (as hereinafter defined) after receiving said confirmation, such confirmation shall be conclusive of the agreement of the parties and binding for all purposes, absent manifest error. The failure of Lender to transmit such a written confirmation shall not limit or otherwise affect the obligation of any Borrower to repay Advances made to it with accrued interest thereon.

In the event that (i) any Borrower shall fail to pay any principal of any Advance made to it under this Note and Guaranty when due and payable hereunder; or (ii) any Borrower shall fail to pay any interest on any Advance made to it under this Note and Guaranty when due and payable hereunder, and such failure shall continue for a period of five (5) Business Days after receipt by such Borrower of written notice by Lender thereof; or (iii) a receiver, trustee or other similar official shall be appointed over any Borrower or a material part of its assets and such appointment shall remain uncontested for twenty (20) days or shall not be dismissed or discharged within sixty (60) days; or (iv) any Borrower shall become insolvent or generally fails to pay, or admits in writing its inability to pay, its debts as they become due, subject to applicable grace periods, if any; or (v) any Borrower shall make a general assignment for the benefit of creditors; or (vi) any Borrower shall file a petition for relief under any bankruptcy, insolvency or similar law (domestic or foreign); or (vii) an involuntary proceeding shall be commenced or filed against any Borrower under any bankruptcy, insolvency or similar law (domestic or foreign) and such petition shall not be dismissed within sixty (60) days after commencement or filing; or (viii) the guaranty contained in this Note and

Unsecured Promissory Note and Guaranty
September 13, 2007
Page 3

Guaranty shall cease, for any reason, to be in full force and effect in respect of any Borrower's Guaranteed Obligations or such Borrower or Guarantor shall so assert (each event specified in clauses (i) through (viii) above, an "Event of Default"); then, in the case of any of the events specified in clauses (iii), (iv), (v), (vi) or (vii), the outstanding principal amount of all Advances made to such Borrower, together with accrued and unpaid interest thereon, and all other amounts payable by such Borrower under this Note and Guaranty shall become immediately due and payable and Lender's commitment to make Advances hereunder to such Borrower shall immediately terminate, in each case without any action on the part of Lender, and in the case of any of the other events specified above, Lender may by written notice to such Borrower terminate its commitment to make Advances to such Borrower and declare the outstanding principal amount of all Advances made to such Borrower, together with accrued and unpaid interest thereon, and all other amounts payable by such Borrower under this Note and Guaranty to be immediately due and payable, whereupon the same shall become immediately due and payable, and, except for the notices specified in this sentence, each Borrower waives demand, presentment, protest, notice of protest, dishonor, notice of dishonor or any other notice of any kind. Any notice specified in this paragraph by Lender to any Borrower of the occurrence of a failure to pay or other default must be delivered as specified below and must clearly specify that it is a notice of default under this paragraph.

Lender is hereby authorized to honor such instructions as it may receive by facsimile transmission for any of the actions pertaining to this Note and Guaranty only from persons ("Authorized Person(s)") designated pursuant to the Facsimile Instructions attached hereto ("Instructions"). Such actions may include the request for an Advance, specification of Payment Dates therefor or a quote for an interest rate therefor or any other information relevant to such an Advance. Lender's determination of whether the person signing the facsimile transmission is an Authorized Person shall be conclusive, in the absence of gross negligence or willful misconduct on the part of Lender and its employees. Each such Instruction will have the same validity and effect as if contained in an original writing and signed on behalf of the Borrower by an authorized signatory. The Instructions may be modified from time to time by the Borrowers, acting jointly. Such modifications will be evidenced by revised Instructions which will be delivered to Lender by the Borrowers, acting jointly. Such revised Instructions shall supersede and replace any other Instructions between Lender and the Borrowers.

Unless otherwise agreed by the Lender and the Borrowers, principal, interest and commitment fees hereunder are payable to Lender at:

**Caixa Geral de Depositos S.A., New York Branch**
280 Park Avenue
New York, New York 10017

in immediately available funds on the applicable Payment Date, in the lawful currency of the United States of America. All payments by a Borrower hereunder shall be made without set-off or counterclaim. All such payments will be made free and clear of, and without deduction or withholding for, any present or future taxes, levies, imposts, duties, fees, assessments, deductions or other charges of whatever nature, now or hereafter existing, levied, imposed or asserted to be due by any jurisdiction or by any political subdivision or taxing authority thereof or therein and all interest, penalties or other liabilities with respect thereto (collectively, "Taxes"), but excluding from the provisions of this sentence any franchise taxes or Taxes imposed on or measured by the net income of the Lender pursuant to the laws of the jurisdiction in which the Lender is organized or in which its principal office or applicable lending office is located (its "Home Jurisdiction"). For purposes of paragraph, the term "Lender" shall (without limitation) include any person who, for purposes of the relevant laws imposing any Taxes, is treated as a successor or assign in interest of all or any portion of an interest in this Note and Guaranty, whether pursuant to a participation or otherwise and whether or not such Person is a registered assign.

Whenever any payment to be made hereunder shall be due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day, and such extension of time shall be included in the computation of interest payable.

The date and amount of each Advance made by Lender to any Borrower and the dates and amounts of all payments made on account of principal shall be recorded by Lender, and, prior to any transfer of this Note and Guaranty, endorsed on the grid attached hereto and made a part hereof, or on continuations thereof which shall be attached

Unsecured Promissory Note and Guaranty
September 13, 2007
Page 4

hereto and made a part hereof. In the absence of manifest error such endorsements shall be conclusive as to the outstanding principal of each Advance.

Each Borrower has the right on any Business Day, upon written notice to Lender given by 11:00 a.m. New York City time on the day that is three Business Days prior to the proposed prepayment date, to prepay any Advance hereunder, provided that such Borrower shall pay accrued interest on the principal so prepaid to the date of such prepayment, and provided further that such Borrower shall reimburse Lender for any reasonable loss, cost or expense (other than lost profits) which Lender may sustain as a result of such prepayment being made on a date that is not a Payment Date applicable thereto. Prior to reimbursement, Lender shall provide the Borrower with a certificate setting forth all of the costs required to be reimbursed and setting forth the method used to calculate such costs. Any amounts so prepaid may be reborrowed hereunder, subject to the aggregate limit stated in the second paragraph of this Note and Guaranty.

As an inducement to Lender to enter into this Note and Guaranty and for other good and valuable consideration, LBHI hereby agrees to guaranty (in such capacity, the "Guarantor") to Lender the due and punctual payment (whether at stated maturity, by acceleration or otherwise) of all liabilities and obligations of each other Borrower to Lender under or arising out of this Note and Guaranty (the "Guarantied Obligations") in accordance with this Note and Guaranty. Guarantor covenants that this Guaranty will not be discharged except by complete payment of the Guarantied Obligations. No payment made by any Borrower, Guarantor or any other Person or received or collected by Lender from any Borrower, Guarantor or any other person by virtue of any action or proceeding or any set-off or appropriation or application at any time or from time to time in reduction of or in payment of the Guarantied Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of Guarantor under this Guaranty which shall, notwithstanding any such payment (other than any payment made by any Borrower or Guarantor in respect of the Guarantied Obligations or any payment received or collected from Guarantor in respect of the Guarantied Obligations), remain liable for the Guarantied Obligations until the Guarantied Obligations (other than contingent obligations for unasserted claims) are fully and finally paid in cash. Guarantor shall remain obligated hereunder notwithstanding that, without any reservation of rights against any Borrower or Guarantor and without notice to or further assent by any Borrower or Guarantor, any demand for payment of any of the Guarantied Obligations made by Lender may be rescinded by Lender and any of the Guarantied Obligations continued, and the Guarantied Obligations, or the liability of any other person upon or for any part thereof, or any right of offset with respect thereto, may, from time to time, in whole or in part, be renewed, extended, amended, modified, accelerated, compromised, waived, surrendered or released by Lender. The Guarantor understands and agrees that its guaranty contained in this Note and Guaranty shall be construed as a continuing, absolute and unconditional guaranty of payment without regard to any defense, set-off or counterclaim (other than a defense of payment or performance) which may at any time be available to or be asserted by any Borrower or any other person against Lender, in bankruptcy or in any other instance. This guaranty shall continue to be effective, or shall be reinstated, if at any time payment, or any part thereof, of any of the Guarantied Obligations is rescinded or must otherwise be returned by Lender for any reason whatsoever (including, but not limited to, the bankruptcy, insolvency, dissolution, liquidation or reorganization of any Borrower), all as though such payment had not been received by Lender.

No party hereto shall have the right to assign its rights or obligations under this Note and Guaranty without the prior consent of the other parties hereto. No assignment or other transfer by, through or under Lender shall operate to increase any Borrower's or Guarantor's obligations hereunder; and each Borrower and Guarantor shall be fully protected in making and shall receive full credit for any payments or other performance made by it to Lender or its successors and assigns prior to the time it receives written notice of such assignment or succession. This Note and Guaranty is made expressly and solely for the benefit of Lender, and no other person or entity shall be entitled or be deemed to be entitled to any benefits or rights hereunder, nor be authorized or entitled to enforce any rights, claims or remedies hereunder or by reason hereof.

Notwithstanding any common law or statutory rights of set off of Lender, Lender agrees that it shall have no right of set off against any account at Lender containing cash and/or securities and commodities in segregation on behalf of any Borrower's customers, in accordance with the Securities Exchange Act of 1934 and the rules promulgated thereunder by the Securities and Exchange Commission and regulations promulgated pursuant thereto by self regulatory organizations, and the Commodity Exchange Act and the rules promulgated thereunder by the

Unsecured Promissory Note and Guaranty
September 13, 2007
Page 5

Commodity Futures Trading Commission and regulations promulgated pursuant thereto by self regulatory organizations, or otherwise.

Notices and demands hereunder shall be in writing and will be sufficient if delivered by hand, by first class mail or nationally recognized courier service postage prepaid, or by tested cable, or by facsimile transmission, or by electronic mail (provided an electronic confirmation of delivery is received by the sender), at the following addresses, or to such other address as the recipient shall have designated to the sender by written notice hereunder.

If to any Borrower or to Guarantor:
   c/o Lehman Brothers Holdings Inc.
   1301 Avenue of the Americas, 6th Floor
   New York, NY 10019
   Attn: Treasurer
   Fax # 212-520-0563
   E-mail: Credit_Facility_Notice@lehman.com

If to Lender:
   Caixa Geral de Depositos S.A., New York Branch
   280 Park Avenue
   New York, NY 10017
   Attention: Deputy General Manager

This Note and Guaranty shall be governed by and construed in accordance with the laws of the State of New York.

This Note and Guaranty shall supersede and replace any other promissory note previously delivered to Lender with regard to the obligations of any Borrower with respect to any Advance to such Borrower, and no previously delivered promissory note with regard thereto shall be honored by such Borrower.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

Unsecured Promissory Note and Guaranty
September 13, 2007
Page 6

EACH BORROWER AND GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING UNDER OR RELATED TO THIS NOTE AND GUARANTY.

**LEHMAN BROTHERS BANKHAUS AKTIENGESELLSCHAFT**

By: _____
    Name:
    Title:

**LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

By: _____
    Name:
    Title:

**LEHMAN COMMERCIAL PAPER INC.**

By: _____
    Name:
    Title:

**LEHMAN BROTHERS JAPAN INC.**

By: _____
    Name:
    Title:

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____
    Name:
    Title:

Acknowledged and agreed:

**CAIXA GERAL DE DEPOSITOS S.A., NEW YORK BRANCH**

By: _[signature]_____
    Name: Pedro McCarthy da Cunha
    Title: General Manager

By: _[signature]_____
    Name: Dale Prusinowski
    Title: Deputy General Manager

Unsecured Promissory Note and Guaranty
September 13, 2007
Page 7

## FACSIMILE INSTRUCTIONS

With respect to the Unsecured Promissory Note and Guaranty dated September 13, 2007 of Lehman Brothers Bankhaus Aktiengesellschaft, Lehman Brothers International (Europe), Lehman Commercial Paper Inc., Lehman Brothers Japan Inc. and Lehman Brothers Holdings Inc. (each a "Borrower") to Caixa Geral de Depositos S.A., New York Branch (the "Lender"), each Borrower hereby authorizes and request you to act on any instructions(s) given to you by facsimile transmission and emanating, or purportedly emanating, from any one of the following persons:

[identify persons]

We agree that your determination of whether the person sending the facsimile transmission is one of the above listed persons shall be conclusive, absent gross negligence or willful misconduct by Lender and/or its employees.

Each such facsimile transmission will have the same validity and effect as if contained in an original writing signed on our behalf by an authorized officer.

For and on behalf of the Borrowers:

By: _____
Name:
Title:

Dated: September 14, 2007

Unsecured Promissory Note and Guaranty
September 13, 2007
Page 8

## UNSECURED PROMISSORY NOTE GRID

| Advance Date | Name of Borrower | Advance Amount | Date of Repayment of Principal | Amount of Repayment of Principal |
|---|---|---|---|---|
| | | | | |

Unsecured Promissory Note and Guaranty
September 13, 2007
Page 6

EACH BORROWER AND GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING UNDER OR RELATED TO THIS NOTE AND GUARANTY.

**LEHMAN BROTHERS BANKHAUS AKTIENGESELLSCHAFT**

By: _____
    Name:
    Title:

**LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

By: _____
    Name:
    Title:

**LEHMAN COMMERCIAL PAPER INC.**

By: _____
    Name:
    Title:

**LEHMAN BROTHERS JAPAN INC.**

By: _____[signature]_____
    Name:   PIERRE NEVEH
    Title:   VP

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____
    Name:
    Title:

Acknowledged and agreed:

**CAIXA GERAL DE DEPOSITOS S.A., NEW YORK BRANCH**

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

Unsecured Promissory Note and Guaranty
September 13, 2007
Page 6

EACH BORROWER AND GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING UNDER OR RELATED TO THIS NOTE AND GUARANTY.

**LEHMAN BROTHERS BANKHAUS AKTIENGESELLSCHAFT**

By: _____
    Name:
    Title:

**LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

By: _____[signature]_____
    Name:
    Title:

**LEHMAN COMMERCIAL PAPER INC.**

By: _____[signature]_____
    Name:
    Title:

**LEHMAN BROTHERS JAPAN INC.**

By: _____
    Name:
    Title:

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____[signature]_____
    Name:
    Title:

Acknowledged and agreed:

**CAIXA GERAL DE DEPOSITOS S.A., NEW YORK BRANCH**

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

Unsecured Promissory Note and Guaranty
September 13, 2007
Page 6

EACH BORROWER AND GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING UNDER OR RELATED TO THIS NOTE AND GUARANTY.

**LEHMAN BROTHERS BANKHAUS AKTIENGESELLSCHAFT**

By: _____/s/_____
    Name: DAVID RUSHTON
    Title: SVP

**LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

By: _____
    Name:
    Title:

**LEHMAN COMMERCIAL PAPER INC.**

By: _____
    Name:
    Title:

**LEHMAN BROTHERS JAPAN INC.**

By: _____
    Name:
    Title:

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____
    Name:
    Title:

Acknowledged and agreed:

**CAIXA GERAL DE DEPOSITOS S.A., NEW YORK BRANCH**

By: _____
    Name:
    Title:

By: _____
    Name:
    Title: