Presentment Date and Time:  October 7 at 12:00 p.m (Prevailing Eastern Time)
Objection Deadline: October 7 at 11:00  a.m (Prevailing Eastern Time)
**Hearing Date and Time (If an Objection is Filed): October 20, 2010 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

In re                                                :        **Chapter 11 Case No.**

                                                     :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*      :        **08-13555 (JMP)**

                                                     :

                    **Debtors.**                     :        **(Jointly Administered)**

                                                     :

------------------------------------------------------------------x

**NOTICE OF PRESENTMENT**
**OF APPLICATION OF THE DEBTORS**
**PURSUANT TO SECTIONS 327(e) AND 328(a) OF**
**THE BANKRUPTCY CODE AND RULE 2014 OF THE**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR**
**AUTHORIZATION TO EMPLOY AND RETAIN DE NOVO**
**LEGAL, LLC AS PROVIDER OF CONTRACT ATTORNEYS**

**PLEASE TAKE NOTICE** that the undersigned will present the annexed

Application (the "Application") of Lehman Brothers Holdings Inc. and its affiliated debtors in

the above-captioned chapter 11 cases (together, the "Debtors") pursuant to sections 327(e) and

328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for authorization to employ De Novo Legal, LLC as provider of contract

attorneys, all as more fully described in the Application, to the Honorable James M. Peck, United

States Bankruptcy Judge, for approval and signature on **October 7, 2010 at 12:00 p.m.**

**(Prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that objections to the Application, if any, shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Tracy Hope Davis, Esq., Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., and Linda Riffkin, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) De Novo Legal, LLC, 150 East 42nd Street, New York, NY 10017 Attn: Robert Singer, **so as to be so filed and received by no later than October 7, 2010 at 11:00 a.m. (prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that only if a written objection is timely filed and served, a hearing will be held on **October 20, 2010 at 10:00 a.m. (Prevailing Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, Honorable

James M. Peck, United States Bankruptcy Judge, One Bowling Green, New York, New York

10004-1408.  If an objection is filed the moving and objecting parties are required to attend the

hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  September 23, 2010
          New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Presentment Date and Time:  October 7 at 12:00 p.m (Prevailing Eastern Time)
Objection Deadline: October 7 at 11:00  a.m (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed): October 20, 2010 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                                  :
In re                                                             :          **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :          **08-13555 (JMP)**
                                                                  :
                              Debtors.                            :          **(Jointly Administered)**
                                                                  :
------------------------------------------------------------------x

**APPLICATION OF THE DEBTORS**
**PURSUANT TO SECTIONS 327(e) AND 328(a) OF**
**THE BANKRUPTCY CODE AND RULE 2014 OF THE**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR**
**AUTHORIZATION TO EMPLOY AND RETAIN DE NOVO**
**LEGAL, LLC AS PROVIDER OF CONTRACT ATTORNEYS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

              Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

captioned chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), file

this Application to employ De Novo Legal, LLC ("De Novo") as a provider of attorneys and

other legal professionals ("Contract Attorneys") and respectfully represents:

**Background**

              1.        Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this

Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.    On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

4.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. The Examiner issued a report of his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

5.    On April 14, 2010, the Debtors filed a revised joint chapter 11 plan and disclosure statement (the "Disclosure Statement") [Docket Nos. 8330 and 8332].

## **Jurisdiction**

6.    This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

7.      Prior to the events leading up to these chapter 11 cases, Lehman was the
fourth largest investment bank in the United States. For more than 150 years, Lehman had been a
leader in the global financial markets by serving the financial needs of corporations, governmental
units, institutional clients and individuals worldwide.

8.      Additional information regarding the Debtors' businesses, capital structures,
and the circumstances leading to the commencement of these chapter 11 cases is contained in the
Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern
District of New York in Support of First-Day Motions and Applications, filed on September 15,
2008 [Docket No. 2].

## Relief Requested

9.      Pursuant to sections 327(e) and 328(a) of the Bankruptcy Code, Rule 2014(a)
of the Bankruptcy Rules, and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District
of New York (the "Local Rules"), the Debtors seek authority to employ De Novo as a provider of
Contract Attorneys.  Specifically, the Debtors propose to utilize such Contract Attorneys to perform
certain due diligence tasks in connection with certain potential and pending litigation in accordance
with the terms and conditions set forth in the agreement entered into between the Debtors and De
Novo, dated September 16, 2010 (the "Engagement Agreement"), annexed hereto as Exhibit A,
effective as of September 29, 2010.

## Scope of Services to be Provided

10.     Pursuant to the Engagement Agreement, De Novo will provide the Debtors
with Contract Attorneys on a temporary basis to perform certain document review tasks with
respect to certain potential and pending litigation, including but not limited to relevant

investigations and other such litigation related services as may be requested by the Debtors

(collectively, the <u>Services</u>").[1]  Although employed by De Novo, such Contract Attorneys will

work under the day-to-day direction, management and supervision of LBHI's in-house and outside

counsel.

**<u>Basis for Relief</u>**

11.     The retention of De Novo under the terms described herein is appropriate

under Bankruptcy Code sections 327(e), 328(a) and 1107(b).  Although De Novo is a staffing

agency and a provider of e-discovery services, not a law firm, the Contract Attorneys employed by

De Novo will be providing legal services to the Debtors.  Therefore, out of the abundance of

caution, the Debtors seek approval of De Novo's engagement pursuant to section 327(e) of the

Bankruptcy Code.  Section 327(e) provides:

> The trustee, with the court's approval, may employ, for a specified
> special purpose, other than to represent the trustee in conducting
> the case, an attorney that has represented the debtor, if in the best
> interest of the estate, and if such attorney does not represent or
> hold any interest adverse to the debtor or to the estate with respect
> to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).  Accordingly, section 327(e) of the Bankruptcy Code authorizes the retention

of counsel provided that: (a) the appointment is in the best interest of the debtor's estate; (b)

counsel does not hold an interest adverse to the estate with respect to the matter for which counsel

is to be employed; and (c) the specified special purpose for which counsel is being retained does

not rise to the level of conducting the bankruptcy case for the debtor in possession. *See In re*

*DeVlieg, Inc.,* 174 B.R. 497 (N.D. Ill. 1994); *In re AroChem Corp.,* 176 F.3d 610, 622 (2d Cir.

1999) (noting that "where the interest of the special counsel and the interest of the estate are

---

[1] The following is only a summary of the Services set forth in the Engagement Agreement and should not be
construed to modify or amend such agreement.  The actual terms of the Engagement Agreement govern the scope of
services to be provided to the Debtors by De Novo.

4

identical *with respect to the matter for which special counsel is retained,* there is no conflict and the

representation can stand"). As explained more fully below, the Debtors submit that each of these

factors is satisfied with respect to De Novo and, therefore, its retention should be approved under

section 327(e) of the Bankruptcy Code.

### The Employment and Retention of De Novo is in the Best Interests of the Estates

12.    For ten years, De Novo has been a leading provider of permanent

recruitment, contract professionals and talent management solutions. The Debtors have been

advised that De Novo employs a daily average of 250 professionals serving clients and candidates

throughout the United States. De Novo also has significant experience with bankruptcy litigation,

having been involved with large bankruptcy cases, including *In re TCI 2 Holdings, LLC, et al.*

[Case No. 09-13654 (JHW)] and *In re Hawkeyes Renewables* [Case No. 09-14461 (KJC)]. The

Contract Attorneys to be provided by De Novo will be experienced and will undergo an extensive

vetting process to ensure that each Contract Attorney is suitable for the tasks that he or she will be

asked to perform on the Debtors' behalf.

13.    The Debtors believe that De Novo is both well-qualified and uniquely able to

perform the services for which it is being retained by the Debtors in an efficient and timely manner.

De Novo has managed some of the largest document review projects in history and is among the

preferred providers for the Debtors' general bankruptcy counsel, Weil, Gotshal & Manges LLP

("Weil"). In order to respond to document subpoenas and numerous requests for production of

documents, the Debtors' in-house counsel and current retained professionals must, among other

things, undergo the time consuming and arduous task of reviewing voluminous quantities of

documents and mark them as responsive to a particular request, or protected as attorney work

product or attorney-client privilege. The Debtors believe that employment of the Contract

Attorneys through De Novo represents a cost-effective means for responding to those challenges and will enable the Debtors to avoid the unnecessary expense of employing an outside firm or additional in-house attorneys to provide the Services described above.

14.    De Novo has indicated a desire and willingness to act in the Debtors' chapter 11 cases and render the necessary Services, and to subject itself to the jurisdiction of the Court. Accordingly, the Debtors submit that the retention of De Novo on the terms and conditions set forth herein and in the Engagement Agreement are necessary and appropriate, are in the best interests of the Debtors, their estates and their creditors, and should be granted in all respects.

15.    The Debtors currently have a substantial number of documents that are pending review.  In order to assist the Debtors in expediting that process, De Novo has agreed to provide Contract Attorneys to the Debtors as of September 29, 2010, pending the Court's consideration of this application.  Accordingly, the Debtors' request that De Novo's retention be approved effective as of September 29, 2010.

### De Novo's Contract Attorneys Hold No
### Interest Adverse to the Debtors or the Debtors' Estates

16.    As set forth in the Engagement Agreement, De Novo has agreed to provide each of the Contract Attorneys with the list of creditors and other parties in interest that were involved in the Debtors' chapter 11 cases, maintained by Weil.  De Novo will work with the Contract Attorneys to ensure that no Contract Attorney assigned to work for the Debtors has a conflict with respect to the Services that he or she will be providing.   Furthermore, in accordance with the Engagement Agreement, and in accordance with Bankruptcy Rule 2014, the Contract Attorneys who will be providing the Services must individually complete and execute an Affidavit and Disclosure Statement (the "Affidavit"), substantially in the form of Exhibit B annexed hereto, certifying that they do not represent or hold any interest adverse to the Debtors or their estates.

6

17.     The Debtors will then file the Affidavits with the Court and serve a copy thereof upon (i) the U.S. Trustee; and (ii) attorneys for the Creditors' Committee (together with the Debtors, the "Reviewing Parties").  The Debtors request that the retention, employment, and compensation of the Contract Attorneys shall be deemed approved as of the date of the filing of the Affidavits without the need for a hearing and without further order from the Court, *provided, however,* no objection is filed by the Reviewing Parties within ten days of the filing of the Affidavits.  If any Contract Attorney discovers additional information that requires disclosure, they will complete a supplemental Affidavit that will be filed with the Court.

### Contract Attorneys will not Conduct the Debtors' Bankruptcy Case

18.     By separate applications, the Debtors have sought the Court's approval to retain and employ Weil as the Debtors' general bankruptcy counsel, and Curtis, Mallet-Prevost, Colt & Mosle LLP as conflicts counsel.  The Contract Attorneys, by contrast, will be assisting the Debtors' in-house and outside counsel with document and discovery requests.  As such, the services that the Contract Attorneys will be performing do not involve the conduct of the bankruptcy cases themselves.  In fact, pursuant to section 327(b) of the Bankruptcy Code, the Debtors could have employed additional in-house attorneys to assist with the document review without the need of court approval; however, as will be described in greater detail below, the Debtors believe that hiring the Contract Attorneys is much more economical and efficient. Therefore, the Debtors submit that the Contract Attorneys have not rendered "services . . . in contemplation of, or in connection with the case" within the meaning of section 329(a) of the Bankruptcy Code.  Accordingly, the services rendered and functions to be performed by the Contract Attorneys will not be duplicative of any bankruptcy-related work performed by other law firms retained by the Debtors.

7

**Proposed Professional Compensation**

19.     The Debtors propose to pay De Novo personnel and the Contract Attorneys, respectively, the hourly rates for services rendered as set forth in the Engagement Agreement (the "Proposed Compensation").  In accordance with the Engagement Agreement, the hourly rate for De Novo Contract Attorneys is $45.  This rate is generally consistent with the rate charged to the Debtors by Hudson Global Resources ("Hudson"), a firm that was previously retained by the Debtors that has been providing similar services to those to be provided by De Novo.[2]  Taking into consideration that the average hourly rate for most junior associates at traditional law firms in this jurisdiction is in excess of $300 per hour, the Debtors expect to realize significant cost savings by using the Contract Attorneys to provide a necessary service that would otherwise have to be performed at significantly greater expense.  De Novo has agreed to submit time reports to the Debtors showing the hours worked during the billing period by each Contract Attorney, with copies of individual time tracking sheets.  The Debtors agree to reimburse De Novo for all incidental expenses, pre-authorized by the Debtors in writing.  De Novo will invoice the Debtors directly on a weekly basis stating the Services furnished and any pre-authorized incidental expenses.

20.     Furthermore, in accordance with the Engagement Agreement, the Debtors agree to pay all applicable sales, use, excise, and other taxes levied as a result of the Services provided by De Novo exclusive of corporate business and franchise taxes, taxes based on supplier's income or gross receipts, withholding taxes and personnel-related taxes.  The Debtors and De Novo will cooperate in minimizing the incurrence of any and all tax liabilities and, to the extent necessary, De Novo has agreed, at its own expense, to use commercially reasonable efforts to recover refundable or recoverable taxes.

---

[2]  *See Order Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code Authorizing the Employment and Retention of Hudson Global Resources Management, Inc. as Provider of Contract Attorneys, Nunc Pro Tunc to January 27, 2009* [Docket. No. 5037], entered on September 1, 2009 (the "Hudson Retention Order").

**Approval of Proposed Compensation
Pursuant to Section 328(a) of the Bankruptcy Code**

21.    Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain

De Novo on reasonable terms and conditions.  Section 328 of the Bankruptcy Code provides, in

relevant part, that a debtor "with the court's approval, may employ or authorize the employment of

a professional person under section 327. . . on any reasonable terms and conditions of employment,

including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee

basis."  11 U.S.C. § 328(a).

22.    As recognized by numerous courts, Congress intended in section 328(a) to

enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the

time of the court's approval of the retention, subject to reversal only if the terms are found to be

improvident in light of "developments not capable of being anticipated at the time of the fixing of

such terms and conditions." 11 U.S.C. § 328(a); *see also Donaldson, Lufkin & Jenrette Sec. Corp.

v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-3 (5th Cir. 1997) ("If the most

competent professionals are to be available for complicated capital restructuring and the

development of successful corporate reorganization, they must know what they will receive for

their expertise and commitment.").

23.    Accordingly, section 328 permits the compensation of professionals on terms

that reflect the nature of their services and market conditions.  The terms of the Agreement and the

Proposed Compensation reflect (i) the nature of the services provided by De Novo and (ii) the fee

structure provisions typically utilized by De Novo and other staffing agencies, although the

Proposed Compensation is lower than De Novo's normal and customary billing practices.

Considering the Services that De Novo will provide and the general market prices for De Novo's

services, the Debtors submit that the Proposed Compensation is reasonable under the standards set

forth in section 328(a) of the Bankruptcy Code and fulfill the requirements of Rule 2014-1 of the

Local Rules.  Thus, Debtors request approval of the Agreement, including the Proposed

Compensation, pursuant to section 328(a) of the Bankruptcy Code.

### Fee Applications

24.    In light of De Novo's Proposed Compensation, the Debtors respectfully

request that the Court approve the Proposed Compensation as detailed herein, without requiring De

Novo to file fee applications or fee statements with the Court pursuant to sections 330 and 331 of

the Bankruptcy Code.  Since De Novo is not itself a professional or a law firm, but, rather a staffing

agency that provides Contract Attorneys solely from the perspective of payment procedures, this

situation is, in some respects, analogous to the Debtors employing the Contract Attorneys directly.

Just as in that circumstance, the Debtors would not be required to file fee applications in order to

pay the Contract Attorneys; so too, De Novo should not be required to file periodic fee applications

in order to ensure that it can provide the Contract Attorneys.

25.    The Debtors have heavily negotiated the terms of the Agreement to provide

themselves with a cost-effective service at a discounted price.  As stated above, the Proposed

Compensation is lower than De Novo's normal and customary billing practices.  Not only will the

relief requested herein result in favorable pricing to the Debtors, it will save the estates the

substantial expense that would be associated with the preparation and prosecution of De Novo's fee

applications.  Further, it will avoid the administrative burden on the Court and the fee committee[3]

of having to review De Novo's fee applications.  Such relief is identical to the relief granted in

connection with the Debtors retention of Hudson pursuant to the Hudson Retention Order.

---

[3]  On May 26, 2009, the Court entered an order appointing a fee committee and approving a fee application protocol
[Docket No. 3651].

26.        Additionally, on March 25, 2010, the Court amended the order authorizing

the Debtors to employ professionals utilized in the ordinary course of business [Docket No. 7822]

(the "Amended OCP Order").  In accordance with the procedures set forth in the Amended OCP

Order, the Debtors are permitted to pay each ordinary course professional the full amount of its fees

and expenses without the need for the professional to submit a fee application to the Court,

*provided*, *however*, that the payments do not exceed $150,000 per month and $1 million for the

period prior to the conversion of, dismissal of, or entry of a confirmation order in these chapter 11

cases.  The Debtors believe that the Services being provided by De Novo are ordinary course, but

out of the abundance of caution seek approval of their employment pursuant to 327(e) of the

Bankruptcy Code.  Because the Debtors expect that De Novo's fees will exceed the monthly and

aggregate caps contemplated by the Amended OCP Order, De Novo would be required to file a

retention application with the Court pursuant to 327(e) of the Bankruptcy.   Nevertheless, the

Debtors request that notwithstanding the fee caps in the Amended OCP Order, that they be

permitted to pay De Novo 100 percent of the fees and disbursements incurred without the need for

De Novo to file fee applications upon the Debtors' approval of invoices submitted by De Novo and

setting forth in reasonable detail the nature of the services rendered and disbursements incurred.

### The Relief Requested is Appropriate

27.        Based on the foregoing, the Debtors submit that the relief requested is

necessary and appropriate, is in the best interests of their estates and creditors, and should be

granted in all respects.

### Notice

28.        No trustee has been appointed in these chapter 11 cases.  The Debtors have

served notice of this Application in accordance with the procedures set forth in the second amended

order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) De Novo; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

29.    Other than the Application, no previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated:  September 23, 2010
New York, New York


/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## Exhibit A

**Engagement Agreement**

## SERVICES AGREEMENT

This Services Agreement ("Agreement") is made this __16__ day of September, 2010, between De Novo Legal, LLC, a New York corporation located at 150 42nd Street, New York, NY 10017 ("De Novo") and Lehman Brothers Holdings Inc., a Delaware corporation located at 1271 Sixth Avenue, New York, NY 10020 ("Client"). De Novo understands that Client currently is a debtor in a case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") currently pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court."). By executing this Agreement, De Novo and Client agree to be bound by the terms and conditions set forth below.

1. Scope of Agreement. De Novo shall assign its personnel or the personnel of any Subcontractor (as defined in Section 22) (collectively, "Employees") on a temporary staff augmentation basis (the "Services") as set forth in and pursuant to work orders executed by De Novo and Client (each, a "Work Order"), a form of which is attached hereto as Exhibit 2. All Work Orders are incorporated herein by reference. In the event of a conflict between this Agreement and any Work Order, with respect to such Work Order, the Work Order shall govern and control; provided however, that, unless approved in writing by legal counsel for each party, such Work Order may not modify or amend any terms or the rights or obligations set forth in this Agreement. Other than reports relating to the Services, De Novo does not agree to provide to Client a specific deliverable, concept or solution.

2. Employee Relationships.

2.1 No Employee, by virtue of assignment to Client, shall be deemed an employee of Client. Client shall not be liable to any Employee to (i) pay any compensation, (ii) withhold any federal, state or local taxes, or (iii) provide any benefits. Unless otherwise specified in a Work Order, Client shall furnish all materials, supplies, facilities, space and equipment that may be required for Employees to perform their assigned duties. De Novo agrees and represents and warrants that: (a) it is an independent contractor, (b) Employees are the responsibility of De Novo with regard to employment matters such as hiring, firing and discipline and solely are employees or independent contractors of De Novo (or its

subcontractor), (c) no Employees are Client's agents or employees for federal, state, or local tax purposes or any other purposes whatsoever, (d) no Employees are entitled to any compensation from Client or to any Client employee benefits, (e) De Novo will (or, in the case of its subcontractors, will be responsible for causing the applicable subcontractor to) withhold and pay all applicable taxes, benefits and insurance with respect to such personnel, and (f) De Novo will verify and secure the work eligibility of each Employee. De Novo and its employees, agents and subcontractors have no authority to make commitments or enter into contracts on behalf of, bind or otherwise obligate Client in any manner whatsoever. Each party acknowledges that the Agreement, and any Work Orders, are non-exclusive, and either party may contract with other parties for the procurement or sale of comparable services. De Novo is responsible for ensuring that Employees have the legal right to work in each country in which they are assigned to work for the duration of their assignments. All Employees shall work under the day-to-day direction, management and supervision of Client's in-house and outside counsel; provided, however, that Client may designate a third party in any Work Order to perform such direction, management, or supervision.

2.2 Notwithstanding the preceding, in advance of the engagement of any Employee hereunder, De Novo shall: (i) require such Employee to comply with the obligations and restrictions applicable to De Novo under this Agreement and each Work Order; (ii) make such Employee aware of, and require him or her to comply with, Client's safety and security

policies while he or she is performing Services at Client sites or accessing Client data or systems, to the extent Client has notified De Novo in writing of such safety and security policies; and (iii) cause such Employee to execute a confidentiality agreement at least as protective as the confidentiality obligations set forth herein ("NDA"). Such Confidentiality obligations shall be in addition to such ethical obligations that such Employee may have as an attorney at law. De Novo will provide Client with a true copy of each such NDA upon request. De Novo further agrees to take any other steps reasonably required or appropriate to ensure compliance with the obligations set forth herein. De Novo shall further require each of its other personnel who obtain or are in a position to obtain any Confidential Information of Client to execute an NDA and provide Client with a true copy of such NDA upon request.

3. Project Managers/Key Personnel. For each Work Order, each party will designate a project manager ("Project Manager") to serve as the primary contact between them. The scope and conduct of De Novo's performance hereunder will be consistent with the applicable Work Order and must be coordinated with Client's Project Manager. The parties may also designate in a Work Order any Employees that have been identified as having key positions for a particular Work Order ("Key Personnel"). De Novo will ensure the continuity of any individual performing Services hereunder. De Novo will obtain Client's prior approval before any reassignment of any De Novo Project Manager or Key Personnel to another De Novo client (unless such reassignment is requested by such individual as a result of personal or family reasons).

4. Conflict Checking and Disclosure Statements. De Novo will not assign any Employee who has a professional conflict with Client by having performed legal services for the personnel or entities set forth in the Master Conflicts List identifying certain of the creditors and other parties in interest of Client and its affiliated debtors in the Chapter 11 Case, as updated from time to time. It shall be the responsibility of De Novo to monitor such list.

4.1    De Novo shall require all of its Employees and Subcontractors to individually sign an Affidavit and Disclosure Statement (the "Affidavit"), substantially in the form of Exhibit 5 annexed hereto, certifying that such Employee or Subcontractor does not represent or hold any interest adverse to Client and its affiliated debtors. Counsel to client will file the Affidavit with the Court. If Employee or Subcontractor discovers additional information that requires disclosure, Employee or Subcontractor shall complete a supplemental Affidavit that will be filed with the Court.

5. Removal and Replacement of Employees. If Client reasonably believes that the performance of Services by any Employees or De Novo personnel is unsatisfactory and so notifies De Novo, Client may terminate the assignment of such individual to any Services immediately and require De Novo to replace, at no cost to Client, such individual with another Employee as soon as commercially possible. This provision does not in any way require, endorse or approve (expressly or impliedly) the termination of employment by De Novo of any person replaced under the terms of this paragraph.

6. Verifications. Prior to assigning any Employees to perform any Services, De Novo shall verify, without limitation, for each Employee, education, work history, references, and professional credentials, and perform criminal background checks. De Novo will conform with Client's screening process with respect to background checks of Employees in accordance with Client's then applicable policies regarding the same, to the extent that Client's background screening requirements are reasonable and are provided to De Novo prior to the time an Employee begins a project for Client. Furthermore, De Novo shall screen Employees for conflicts of interest, based on the criteria supplied by Client to De Novo.

7. <u>Term</u>.  This Agreement shall commence on the date hereof and remain in force until terminated in accordance with the provisions of this Agreement.    Those sections of this Agreement or any Work Order that are intended or required by law to survive termination of this Agreement (including confidentiality and data protection, limitation of liability, indemnification provisions and perpetual licenses) shall so survive.  The assignment period for an Employee shall be as set forth on a Work Order.

8. <u>Termination</u>.

8.1    <u>Termination by Client</u>. If, at any time, there are no outstanding Work Orders in effect, Client may terminate this Agreement upon written notice to De Novo without liability for any charges of any kind, other than any liability to pay any then outstanding invoices. Client may terminate any Work Order for convenience by giving prior written notice specifying the termination date (or such other period of advance notice as may be specified in the applicable Work Order).  In such event, Client will be obligated to pay De Novo at the agreed upon rates for all Services performed up to the effective date of termination, subject to a refund of any unearned, prepaid fees, but will not be liable for any other termination-related charges.  In the event of any material breach of the Agreement or a Work Order by De Novo, Client may (reserving cumulatively all other remedies and rights under the Agreement, at law and in equity) terminate the Work Order(s) involved or affected by such breach, in whole or in part, by giving De Novo thirty (30) days' prior written notice of termination thereof; provided, however, that such termination will not be effective if De Novo has cured the breach prior to the expiration of such thirty (30) day notice period. Client may terminate any Work Order(s) upon written notice specifying the termination date if De Novo becomes insolvent or unable to pay its debts as they come due or enters into or files (or has filed or commenced against it) a petition, arrangement, application, action or other proceeding seeking relief or protection under the bankruptcy laws of the United States or any similar laws of the United States or any state of the United States or any other country or transfers all or substantially all of its assets to another person or entity.  In such event, Client will be obligated to pay De Novo at the contracted rates for all Services performed up to the effective date of termination, subject to a refund of any unearned, prepaid fees, but will not be liable for any other termination-related charges.  Notice of termination of any specific Work Order under this Section will not be effective as notice of termination of the Agreement (or any part thereof) or any other Work Order then in effect unless specifically stated in the notice; provided, further, that any such notice that purports to be notice of termination of this Agreement will not be deemed effective unless such notice specifically states that all Work Orders have been terminated and/or expired.

8.2    <u>Termination by De Novo</u>.  In the event Client (a) breaches its obligation to pay any undisputed fees under a particular Work Order, or (b) fails to meet its confidentiality obligations under the Agreement with respect to a particular Work Order such that Client materially breaches the Agreement or the applicable Work Order, De Novo may (reserving cumulatively all other remedies and rights under the Agreement, at law and in equity) terminate the Work Order(s) involved by giving Client thirty (30) days' prior written notice thereof; provided, however, that any such termination will not be effective if Client has cured such material breach prior to the expiration of such thirty (30) day period. In such event, Client will be obliged to pay De Novo at the contracted rates for all Services performed up to the effective date of termination, subject to a refund of any unearned, prepaid fees, but will not be liable for any other termination-related charges.

9. <u>Performance</u>.  Except as expressly provided otherwise in this Agreement or any Work Order, De Novo will be responsible for

providing all personnel necessary to perform the Services purchased by Client pursuant to each Work Order.  Client shall furnish a place to work, appropriate safety and security training, and all tools and other materials required for Employees to perform the duties associated with the applicable Work Order. If applicable, each Work Order will identify at which Client site De Novo is required to perform any on-site Services.  In addition, a Work Order may specify the De Novo facilities (or facilities of a De Novo subcontractor) at which (or from which) certain Services are to be provided. De Novo will complete the Services diligently and in accordance with any time frames set forth in the applicable Work Order. De Novo will promptly notify Client upon becoming aware of any circumstances that may reasonably be expected to jeopardize the timely and successful performance and completion of any Service. De Novo's performance under a Work Order, and the performance of Employees, will be in accordance with all applicable requirements of the Work Order, including any service levels or other specific standards of performance set forth therein.  If Client performs itself, or retains a third party to perform, any services that interface or interact with De Novo's Services, De Novo will cooperate and coordinate with Client or such third party as reasonably requested or required by such third parties to perform their duties.

10. Payment and Billing.  Client shall pay De Novo at the rate(s) set forth in Exhibit 1 subject to any agreed upon discounts set forth in this Agreement or the applicable Work Order.  Client shall reimburse De Novo for all incidental expenses, pre-authorized in writing by Client. De Novo shall invoice Client directly on a monthly basis stating the Services furnished and any pre-authorized incidental expenses.  Client agrees to pay all applicable sales, use, excise, and other taxes levied as a result of the Services provided by De Novo hereunder exclusive of corporate business and franchise taxes, taxes based on Supplier's income or gross receipts, withholding taxes

and personnel-related taxes. If the transaction contemplated by this Agreement is exempt from tax, Client shall provide De Novo with a valid exemption certificate or other evidence of such exemption in a form reasonably acceptable to De Novo. De Novo will, at its own expense, use commercially reasonable efforts to recover refundable or recoverable taxes. Each party will cooperate with the other in minimizing applicable tax. De Novo will also submit time reports to Client showing the hours worked during the billing period by each Employee, with copies of individual time tracking sheets.    Notwithstanding anything contained herein to the contrary, so long as the Client is a debtor in the Chapter 11 Case, De Novo shall submit all invoices or other payment requests in accordance with the requirements of the Bankruptcy Code and any relevant Orders entered by the Bankruptcy Court in the Chapter 11 Case, and Client's payment obligations shall be in accordance with such requirements and Orders.  Except for amounts disputed, all undisputed De Novo invoices will be payable in U.S. Dollars after Client is authorized to make payment either (1) when it is authorized to do so consistent with the provisions of the Bankruptcy Code or Orders entered in the Chapter 11 Case if Client is a debtor in the Chapter 11 Case or (2) if it is no longer a debtor, within 45 days from receipt of the invoice.

11. Audit.  During the term of each Work Order and for a period of two (2) years after the date of an invoice, De Novo shall maintain complete and accurate accounting records in connection with Services performed under such Work Order, in accordance with generally accepted accounting principles applied on a consistent basis, to substantiate its charges thereunder. Such records will include, without limitation, attendance cards, time tracking sheets and job summaries.  De Novo will provide Client or its designees access to copies of such records for audit purposes during normal business hours and upon reasonable notice. The results of any such

audit shall be treated as Confidential Information as set forth in Section 11 hereof.

12. Overcharges.  If any audit reveals that Client has overpaid any amounts, De Novo will remit to Client such amounts due within thirty (30) days after receiving from Client an invoice therefore.  If any audit reveals that Client has overpaid any amounts under a particular Work Order (exclusive of reimbursable expenses and taxes) during the audited period by ten percent (10%) or more of the total charges payable under such Work Order during such period, De Novo will, within thirty (30) days after receiving an invoice therefore, reimburse Client for all reasonable fees and expenses incurred to conduct the audit and otherwise detect and rectify such overpayment.

13. Conversion.  Client shall not, directly or indirectly, employ, engage or otherwise retain, or refer to any third party, any Employee assigned to Client or any individual whom De Novo refers to Client.  However, upon 15 days' written notice to De Novo, Client may hire, engage or otherwise retain an Employee, provided  (i) the Worker has accumulated one thousand   billable hours of assignment to Client, or as otherwise specified in a Work Order, and (ii) Client has paid all undisputed invoiced amounts under this Agreement, provided, no such restriction shall apply if an Employee is hired or engaged via general advertising or the Employee engagement is terminated prior to the commencement of employment discussions .

14. Confidential Information. De Novo and any of its subsidiaries, related companies, divisions, agents, servants and employees will not, except as otherwise authorized by Client, use, publish, disclose or authorize anyone else to use, publish or disclose any confidential information, trade secret, proprietary or other information ("Confidential Information") or privileged information or work product ("Privileged Information") that belongs to Client and any of its affiliates.  De Novo agrees that it and all of its subsidiary and related companies, agents, servants and employees will be bound by the terms of this confidentiality provision and will use that information solely as necessary to perform De Novo's obligations as set forth in this Agreement.  The obligations imposed by this Section 14 shall be in addition to, and shall not limit or replace, any obligation otherwise imposed by law upon De Novo and any of its subsidiaries, related companies, divisions, agents, servants and employees regarding Confidential or Privileged Information.  Notwithstanding the foregoing, the terms "Confidential Information" and "Privileged Information" do not include information that is at any time: (i) publicly known through no wrongful act of De Novo; (ii) rightfully received from a third party without restriction on disclosure and without breach of this Agreement; (iii) developed by De Novo independently and not in connection with this Agreement; (iv) approved for release by written authorization of Client; or (v) is required by security exchange requirements or by law, rule or regulation to be disclosed.  In the event that De Novo becomes legally compelled (by deposition, interrogatory, subpoena, civil investigative demand or similar process) to disclose any Confidential or Privileged Information, De Novo will provide Client with prompt written notice of such requirement so that Client may seek a protective order or other appropriate remedy.  If such protective order or other remedy is not obtained, De Novo agrees to disclose or furnish only that portion of the Confidential or Privileged Information that is reasonably necessary to respond to the required disclosure.  At any time at the request and option of   Client and in the event of termination or expiration of this Agreement (or any part thereof) or any applicable Work Order, De Novo shall promptly: (a) return to  Client the Confidential Information or Privileged Information and/or Client Sensitive Data (as defined in Section 15), as applicable; or (b) destroy or permanently erase (on all forms of recordation) the Confidential Information or Privileged Information and/or Client Sensitive Data, as applicable and, if requested by Client, acknowledge in writing that all such

Confidential Information or Privileged Information and/or Client Sensitive Data, as applicable, has been destroyed or permanently erased.

De Novo shall require all of its Employees individually sign the Non-Disclosure Agreement attached hereto as Exhibit 4.

15. Client Sensitive Data. De Novo hereby acknowledges that Client is subject to certain privacy and information security laws and regulations, pursuant to which Client is required to ensure that De Novo appropriately safeguards personal or financial information regarding Client's former, current or prospective clients or employees ("Client Sensitive Data"). To the extent that De Novo receives any Client Sensitive Data as a result of any exchange of information under this Agreement, and notwithstanding anything to the contrary contained in this Agreement, De Novo agrees that it shall employ administrative, technical and physical safeguards to prevent unauthorized use or disclosure of Client Sensitive Data and will obtain Client's written consent prior to disclosing any Client Sensitive Data to any third party.

16. Intellectual Property Rights. De Novo acknowledges that Client will have exclusive, unlimited ownership rights to the works performed or created under each Work Order and all materials, information and/or deliverables prepared or developed as a result of the Services provided thereunder, both as individual items and/or as a combination of components and whether or not the Work Order is completed. All of the foregoing will be deemed to be works made for hire and made in the course of Services rendered under the applicable Work Order and will belong exclusively to Client from the moment of their creation, with Client having the sole right to obtain, hold and renew, in its own name and/or for its own benefit, patents, copyrights, trademarks, trade secrets, registrations and/or other appropriate intellectual property rights protection. To the extent that exclusive title and ownership rights may not originally vest in Client as contemplated hereunder, De Novo hereby irrevocably assigns, transfers and conveys to Client all right, title and interest therein. De Novo and its personnel will give Client, and any Client designee, at no additional cost but at Client's sole expense, all reasonable assistance and execute all documents necessary to assist or enable Client to perfect, preserve, register, record, enforce and defend its rights in any such works, materials, information and/or deliverables. De Novo will, immediately upon request of Client, or upon the termination, cancellation or expiration of each Work Order, turn over to Client all materials, information and/or deliverables prepared or developed as a result of any Work Order and any Client documents or other materials held by or on behalf of De Novo, together with all copies thereof. De Novo will enter into written agreements with Employees involved in performance under this Agreement as may be necessary to ensure Client's rights under this section. Nothing herein will be construed to restrict, impair or deprive either party of any of its rights or proprietary interest in intellectual property that existed prior to and independent of the provision of works, materials, information and/or deliverables prepared under a Work Order or developed as a result of Services performed under a Work Order. Notwithstanding any of the foregoing, if any such pre-existing or independent intellectual property is incorporated into, combined with, or required for the operation or provision of any works, materials, information and/or deliverables prepared under a Work Order or developed as a result of Services performed under a Work Order, then De Novo hereby grants to Client (and its current and former affiliates and subsidiaries), at no additional charge, a non-exclusive, fully paid up, perpetual, irrevocable, assignable (in accordance with the terms hereof), worldwide license to use, execute, copy, perform, distribute copies of, maintain, modify, enhance, and create derivative works of such

independent intellectual property, unless other terms are expressly agreed to by Client in writing in the applicable Work Order.

17. Equal Employment Opportunity Employer. Client and De Novo each affirms and agrees that it is an equal employment opportunity employer and is in full compliance with any and all applicable anti-discrimination laws, rules, and regulations. Client and De Novo agree not to harass, discriminate against, or retaliate against any employee of the other because of his or her race, national origin, age, sex, religion, disability, marital status, or other category protected by law; nor shall either party cause or request the other party to engage in such discrimination, harassment, or retaliation. In the event of any complaint of unlawful discrimination, harassment, or retaliation by any Employee or by any personnel or agents of either Client or De Novo, Client and De Novo each agrees to cooperate in the prompt investigation and resolution of such complaint.

18. Warranties by De Novo.  De Novo represents, warrants and covenants that: (i) De Novo is authorized to enter this Agreement and each Work Order and to perform the Services thereunder; (ii) De Novo has not entered into and will not enter into any other agreement that conflicts with this Agreement or limits De Novo's ability to provide the services contemplated by this Agreement; (iii) Employees shall have the appropriate level of skill and training necessary to perform the services contemplated by a Work Order; (iv) De Novo is familiar with, has complied with, and will comply, in all respects, with the laws and regulations regarding the offering of unlawful or improper inducements (including the U.S. Foreign Corrupt Practices Act, as amended, and other anti-corruption and anti-bribery laws), as applicable to its relationship with Client, and with any other applicable Client policies regarding inducements of which De Novo has been given notice (If De Novo breaches this representation, warranty and covenant, then, in addition to any other rights

Client may have under this Agreement, at law or in equity, Client may terminate this Agreement and/or any affected Work Orders); (v) it will require all Employees to observe and comply with Client's security procedures, rules, regulations, policies, working hours and holiday schedules, which Client will provide to De Novo as contemplated by Section 2.2 of this Agreement; (vi) it will require that Employees use commercially reasonable efforts to minimize any disruption to Client's normal business operations; and (vii) without detracting from the generality of any provisions set forth elsewhere in this Agreement, De Novo will comply with Client's legal compliance policy requirements as they are provided to De Novo and to the extent they are applicable to De Novo's performance under or in relation to performance of Services under any Work Order, Other than as set forth in this Agreement, De Novo makes no representations or warranties of any kind, either expressed or implied.

19. Insurance.  De Novo shall maintain at its own expense the forms of insurance with the minimum limits of insurance stated in Exhibit 3. All insurance coverage required herein will provide primary coverage, and will not be excess over any other insurance, for all losses and damages caused by the perils or causes of loss covered thereby.  De Novo agrees to have included in the Commercial General Liability, Commercial Auto Liability and Workers Compensation insurance policies required herein, a waiver of the insurer's rights of subrogation against Client and each of its subsidiaries, affiliates and insurers.  Each insurance policy will be maintained with an insurer having a rating of at least an "A-" in the most currently available Best's Insurance Reports and will provide for at least thirty (30) days prior written notice to Client in the event of any modification or cancellation. De Novo will furnish Client with certificates of insurance, evidencing its compliance with these provisions.

20. Indemnification.   De Novo shall, at its sole cost and expense, indemnify, defend and hold the Client and its subsidiaries, affiliates, and each of their shareholders, officers, directors, employees, contractors, agents representatives, successors, and assigns (collectively, "Client Indemnitees") harmless from and against any and all losses, liabilities, damages or expenses (including reasonable attorneys' fees and any taxes, interest, penalties and fines) relating to or in connection with third party claims, actions, proceedings or lawsuits to the extent arising out of or in connection with a claim of or for any of the following, whenever made:

(i) that De Novo has failed to comply with any applicable laws, regulations or orders of any governmental, judicial or administrative authority; or

(ii) for death or bodily injury, or the damage, loss or destruction of real or tangible personal property of third parties (including employees of Client and De Novo and their respective subcontractors) brought against a Client Indemnitee and alleged to have been caused by the fault or negligence of De Novo, its officers, personnel (including Employees), agents and/or representatives, but not to the extent caused by the negligence of Client; or

(iii) by or on behalf of any subcontractors or independent contractors of De Novo, or any of Supplier's personnel (including Employees), but not to the extent caused by the  negligence of Client; or

(iv)(a) in respect of De Novo's obligations as an employer of its personnel (including any Employees), or (b) any claim or action alleging that a Client Indemnitee should be deemed the "employer", "co-employer" or "joint employer" of any of Supplier's personnel (including any Employees); or

(v) any breach of confidentiality or data protection obligations under this Agreement by De Novo, its officers, personnel

(including, without limitation, Employees), agents and/or representatives; or

(vi) actual or alleged infringement or violation of any intellectual property right, including, without limitation, trademarks, service marks, patents, copyrights, misappropriation of trade secrets or any similar proprietary rights, or any violation of any third party rights.

Client agrees to give De Novo prompt written notice of any Claim for which a Client Indemnitee seeks indemnification; provided, however, any failure by Client to provide such notice will not relieve De Novo of its indemnification obligations under this Agreement except to the extent De Novo can demonstrate actual prejudice as a result of such failure.   Within thirty (30) days after receiving Client's notice of an indemnification claim, but no later than ten (10) days before the date on which any formal response to the indemnification claim is due, De Novo will notify Client in writing as to whether De Novo acknowledges its indemnification obligation and elects to assume control of the defense and settlement of such claim (a "Notice of Election"). If De Novo delivers a timely Notice of Election to Client, De Novo will have the right solely to conduct the defense of the claim and, consistent with the rights of Client Indemnitees hereunder, all negotiations for its settlement and the Client Indemnitee will provide reasonable cooperation with such efforts; provided, however, that the Client Indemnitee(s) may participate in such defense or negotiations its (or their) sole expense to protect its (or their) interests and that any settlement will be for the payment of money by De Novo and will not, without the prior written approval of Client, obligate or impose liability on Client or any Client Indemnitee in any way, including without limitation, to any determination or admission regarding Client's or any Client Indemnitee's interest. If De Novo does not deliver a timely Notice of Election, the affected Client Indemnitee(s) may defend and/or settle the Claim in such manner as it (or they) may deem appropriate, at the cost and

expense of De Novo, including payment of any settlement, judgment or award and the costs of defending or settling the Claim. De Novo will promptly reimburse the Client Indemnitee(s) upon demand for all Losses suffered or incurred as a result of or in connection the Claim.

21. Limitation of Liability. Notwithstanding any contrary provision in this Agreement, under no circumstances shall either party be liable for any special, punitive, incidental, indirect or consequential damages, or lost profits or lost revenues; provided, however, that the foregoing limitation of liability will not apply to: (a) De Novo's breach of its confidentiality or data protection obligations; or (b) De Novo's indemnification obligations under this Agreement or any Work Order; or (c) any gross negligence or willful misconduct by either party.

22. Subcontractors. De Novo may engage subcontractors ("Subcontractors") in order to provide the services described herein; provided, however, that De Novo shall obtain the Client's prior written approval for any such Subcontractor that will perform a material aspect of the Services under this Agreement. De Novo will be solely responsible for its subcontractors, will remain fully responsible for providing the Services, and will be Client's sole point of contact regarding the Services, including with respect to payment. Subcontractors shall agree to be bound by the terms and conditions set forth in this Agreement including but not limited to signing the Non-Disclosure Agreement and Affidavit.

23. Publicity. Neither party will use the name or marks of, refer to, or identify the other party (or any related entity) in publicity releases, interviews, promotional or marketing materials, public announcements, customer listings, testimonials or advertising without the prior written consent of the other party.

24. Binding Nature and Assignment. Neither party may assign this Agreement or any Work Order (whether by operation of law or otherwise) without the other party's prior written consent, which consent will not be unreasonably withheld or delayed. Any purported assignment in breach of this section will be void. Notwithstanding the foregoing, in the event a Chapter 7 trustee is appointed, the trustee may assume this Agreement, any Work Order or any of its rights, duties and/or obligations hereunder or thereunder upon written notice to De Novo, and De Novo hereby consents to such assignment. In addition, Client may assign this Agreement, any Work Order or any of its rights, duties and/or obligations hereunder or thereunder, (a) to any affiliated entity; or (b) in the case of any merger or sale of its stock or assets, to the successor in a merger of the assigning party or to any entity that acquires all or substantially all of its stock or assets.

25. Compliance with Laws. De Novo agrees to obtain all necessary regulatory approvals, licenses and/or permits applicable to its business, and De Novo will comply with any applicable laws, regulations or orders of any governmental, judicial or administrative authority.

26. Miscellaneous. Client is not obligated to request any services from De Novo, and De Novo is not obligated to execute any Work Order. Any parent, affiliate or subsidiary of Client may request services from De Novo, provided the entity executes a Work Order, thereby binding itself under this Agreement as if originally named herein as Client. All notices and other communications in connection with this Agreement shall be in writing delivered personally, by overnight delivery service or by first class prepaid mail with return receipt requested to the addresses set forth below. Either party may change the address(es) or addressee(s) for notice hereunder upon written notice to the other. Any notice hereunder will be effective upon receipt by the party to which such notice is addressed. The parties are independent contractors, and nothing in this Agreement shall be construed as creating an agency, partnership, joint venture, employment

or any other form of legal association between the parties. Except as expressly set forth herein, no person not a Party hereto will be a third party beneficiary of any provision of this Agreement or any Work Order. Notwithstanding the foregoing, Client Indemnitees are not such excluded third party beneficiaries. This Agreement (including any Work Orders) (i) constitute the entire agreement between the parties with respect to their subject matter hereof and supersedes any previous or contemporaneous arrangements or understandings whether oral or written, (ii) shall be governed by the laws of the State of New York without regard to conflict of law principles, and each party consents to the jurisdiction of and venue in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") except if the Bankruptcy Court does not accept jurisdiction, in which event, the parties consent to the jurisdiction of and venue in the federal, state, and municipal courts of New York, New York, and (iii) may be amended or waived only in writing by both parties. Each party's performance hereunder is subject to force majeure; provided, however, that (i) the non-performing party shall use all reasonable efforts to remedy its inability to perform and the performance shall be resumed at the earliest practicable time after cessation of the force majeure event, and (ii) no party shall be relieved from its obligations because of a force majeure event unless specifically agreed in writing by the other party. Notwithstanding the foregoing, (i) if any De Novo delay or failure to perform that is attributable to a force majeure event continues beyond ten (10) calendar days, Client will nevertheless have the right to terminate any affected Work Order, in whole or in part, without further liability other than to pay for Services previously rendered and receive a refund of any unearned, prepaid fees. For purposes of this provision "force majeure" means natural disaster, casualty, acts of God, riots, terrorism, governmental acts or such other event of similar nature that is beyond the reasonable control of the party seeking to excuse its delay or failure to the extent such party did not contribute in any way to such event. Any forbearance or delay by either party in enforcing any provision of this Agreement or any Work Order shall not be construed as a waiver of that provision, nor will any single or partial exercise of or failure to exercise any such right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy provided herein or available at law or in equity. If any provision of this Agreement is held unenforceable for any reason, the provision shall be reformed only to the extent necessary to make it enforceable, and the holding shall not impair the validity, legality or enforceability of the remaining provisions. This Agreement and any Work Order may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. A facsimile of a signed copy of this Agreement or other copy made by reliable mechanical means may be relied upon as an original. Except as expressly provided herein, no remedy specified in this Agreement or in any Work Order is intended to be exclusive of any other remedy, and each and every remedy will be cumulative and in addition to every other right or remedy provided herein or available at law or in equity.

De Novo Legal, LLC

By: _____
      (sign here)
Name: Robert Singer
Title: Chief Executive Officer

Address for and designation of individual(s) to
receive notices on behalf of De Novo:

De Novo Legal, LLC
150 East 42nd Street
New York, NY  10017
Attention:  Michael McDonald
with a copy to: Robert Singer

Lehman Brothers Holdings Inc.

By: _____
      (sign here)
Name: William B. Gordon
Title: SVP

Address for and designation of individual(s) to
receive notices on behalf of Client:

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY 10020
Attention: Vendor Contract Management
with a copy to: Mark Kindy

## Exhibit 1: Pricing Table

- **Fees -** The De Novo document review attorneys will be billed to Client at the rate of $45 per hour, unless otherwise agreed to by the parties in a Work Order.

## Exhibit 2: Form of Work Order

## SERVICES AGREEMENT WORK ORDER

### 1.  PARTIES:

| De Novo: | Address: | 150 East 42nd Street – 4th Floor New York, NY  10017 | | |
|---|---|---|---|---|
| De Novo Legal, LLC | Telephone: | (646)  660-2680 | Fax: | (212) 353-3342 |
| | Attention: | Robert Singer | | |

| Client: | Address: | 1271 Avenue of the Americas New York, NY  10020 | |
|---|---|---|---|
| Lehman Brothers Holdings Inc. | Telephone: (646) 285-9418 | | Fax: (646) 285-9320 |
| | Attention: | Mark Kindy | |

### 2.  DESCRIPTION OF SERVICES (continue on separate pages if necessary):

Number of Employee(s):  Up to 100 New Jersey Bar admitted attorneys

Name of Employee(s) (if known):  To be provided.

Name of Client Supervisor of Employee(s):  Julia Hardinger

Description of position(s) to be filled:  De Novo Legal, LLC will provide attorney document review services in the matter of *In re Lehman Brothers Holdings inc., et al., Debtors*.  These Services will consist of De Novo  contract attorneys reviewing documents at the specified location of 101 Hudson Street, Newark, New Jersey and is expected to last through December 31, 2010.Other information, if applicable:  The De Novo Legal document review attorneys will be New Jersey bar-admitted attorneys with prior experience in reviewing documents and using on-line review systems.

### 3.  TERM:

| Commencement Date: | September 27, 2010 |
|---|---|
| Expiration Date: | December 31, 2010 |

### 4.  BILLING RATES:

Hourly rate:  De Novo will bill Client per the rates provided in Exhibit 1.

Other terms, if applicable (describe below or on separate attachment):

### 5.  LOCATION AND HOURS:

| Location where services are to be performed: | 101 Hudson Street, Newark, New Jersey |
|---|---|
| Hours during which services are to be performed: | As agreed upon. |

**The terms of the Agreement to which this Work Order is attached are incorporated herein by reference.  Each party, by signing below, acknowledges it has reviewed this Work Order and the Agreement, and agrees to the terms of both.**

(Signature Page Follows)

| CLIENT SIGNATURE | | | |
|---|---|---|---|
| X _____ | William B Gordon | SvP | 9/16/10 |
| Signature | Name | Title | Date |

| DE NOVO SIGNATURE | | | |
|---|---|---|---|
| X _____ | Robert Singer | Chief Executive Officer | 9/__/10 |
| Signature | Name | Title | Date |

## EXHIBIT 3: INSURANCE

| Form of Insurance | Minimum Limits of Insurance |
| --- | --- |
| (a) (1) Workers Compensation and (2) Employers Liability | As required by law $1,000,000 per occurrence (BI/disease) |
| (b) Professional Liability (aka Errors & Omissions Liability). Such insurance should be endorsed to cover services provided by subcontractors if any. | $5,000,000 per occurrence and aggregate |
| (c) Commercial General Liability on an occurrence basis, including premises operations, products and completed operations, contractual liability, and personal and advertising injury coverages. De Novo will name Lehman Brothers Holdings, Inc. and its subsidiaries and affiliates as an additional insured by certificate of insurance. | $1,000,000 per occurrence and aggregate |
| (d) Commercial Automobile Liability covering all De Novo's leased, owned and non-owned vehicles and naming Lehman Brothers Holdings, Inc. and its subsidiaries and affiliates as an additional insured by certificate of insurance. | $1,000,000 per occurrence combined single limit for bodily injury and property damage liability |
| (e) Umbrella Liability on a follow form basis | $4,000,000 per occurrence and aggregate excess of the Commercial General Liability and Commercial Automobile Liability Insurance |
| (e) Fidelity Bond (aka Crime Insurance), including third party liability or client coverage. | $5,000,000 per occurrence and aggregate |

EXHIBIT 4
## NON-DISCLOSURE AGREEMENT

I, the undersigned, acknowledge and agree that I may have access to Confidential Information (as defined below) and/or Lehman Sensitive Data (as defined below) of Lehman Brothers Holdings Inc. or any of its affiliates ("Lehman") and agree as follows:

1.    **Confidential Information.**

**a) "Confidential Information"** means any information obtained from or on behalf of Lehman that relates to the past, present or future business activities of Lehman or its subsidiaries or affiliates, or their respective employees, customers or third party suppliers or contractors, including the terms and conditions of this agreement and any information relating to Lehman's plans, pricing, methods, methodologies, processes, financial data, lists, intellectual property rights, customer information, apparatus, statistics, programs, research, development, and/or information technology.

**b)** Confidential Information does not include any particular information that can be demonstrated by the undersigned as (a) currently in the public domain and/or previously known to me, and in either case free from any obligation to keep it confidential, (b) publicly disclosed by Lehman either prior to or subsequent to receipt by the undersigned of such information, (c) independently developed by the undersigned without any access to or use of the Confidential Information, or (d) rightfully obtained by the undersigned from a third party lawfully in possession of the Confidential Information who is not bound by confidentiality obligations to Lehman.

**c)** I agree to hold all Confidential Information in trust and confidence for Lehman and, except as otherwise may be authorized by Lehman in writing, I will not disclose to any person, firm or enterprise, or use for my benefit or for the benefit of any others, any Confidential Information. I may disclose Confidential Information if required to do so under applicable law, rule or order provided that I, where reasonably practicable and to the extent legally permissible, provide Lehman with prior written notice of the required disclosure so that Lehman may seek a protective order or other appropriate remedy, and provided further that I disclose no more Confidential Information than is reasonably necessary in order to respond to the required disclosure.

2.    **Lehman Sensitive Data.**  I hereby acknowledge that Lehman is subject to certain privacy and information security laws and regulations, pursuant to which Lehman is required to ensure that I appropriately safeguard personal or financial information regarding Lehman's former, current or prospective clients or employees ("**Lehman Sensitive Data**").  Notwithstanding anything to the contrary contained in this agreement, I agree that I will (a) not use any Lehman Sensitive Data except to the extent necessary to carry out the obligations for which I have been engaged by Lehman and for no other purpose, (b) not disclose Lehman Sensitive Data to any third party without the prior written consent of Lehman and subject to the further requirements of this Section, (c) as applicable, employ administrative, technical and physical safeguards to prevent unauthorized use or disclosure of Lehman Sensitive Data, (d) promptly provide information as Lehman may request relating to Lehman's due diligence and oversight obligations under applicable laws and regulations, (e) in the event of any actual or apparent theft, unauthorized use or disclosure of any Lehman Sensitive Data, immediately commence all reasonable efforts to investigate and correct the causes and remediate the results thereof, and (f) as soon as practicable following discovery of any event described in clause (e) hereof, provide Lehman notice thereof, and such further information and assistance as may be reasonably requested.

3.    **Return of Confidential Information and Lehman Sensitive Data.**  At any time, at the request and option of Lehman, or in the event of termination or expiration of my engagement with Lehman, I agree to promptly (a) return to Lehman, as directed by Lehman, the Confidential Information, Lehman Sensitive Data and/or other information and materials in my possession or (b) destroy or permanently erase on all forms of recordation the Confidential Information, Lehman Sensitive Data and/or other information and materials in my possession, and if requested by Lehman, acknowledge in writing that all

such Confidential Information, Lehman Sensitive Data and/or other information and materials has been destroyed or permanently erased.

**4.     Title.**  I acknowledge and agree that as between Lehman and me, all of the Confidential Information, Lehman Sensitive Data and work product developed as a result of my engagement by Lehman, including, in each case, any derivative works thereof, is, and will remain, the property of Lehman.  Any work product, materials or deliverables developed as a result of my engagement by Lehman shall be considered "works made for hire," and to the extent that exclusive title and ownership rights may not originally vest in Lehman, as contemplated hereunder, I hereby irrevocably assign, transfer and convey to Lehman all right, title and interest therein.

**5.     Obligations.**  In consideration of my future or continued obligations to Lehman, I hereby acknowledge, represent and confirm to Lehman as follows: (a) I have read and understand the provisions of this agreement, and know of no agreements, obligations or restrictions which prevent or prohibit me from complying with them; (b) I will receive and maintain all Lehman information, perform services and conduct myself, in all respects, in a manner consistent with these obligations and Lehman policies; (c) this agreement is enforceable against me by Lehman; and (d) I agree not to, directly or indirectly, engage in or assist others to engage in, any activity or conduct which violates the provisions of this agreement.  I understand that if I threaten to or actually breach or fail to observe any of the obligations set forth in this agreement, Lehman may have no adequate remedy in money or damages and, accordingly, may seek an injunction against such breach; *provided, however,* that no specification herein of any particular legal or equitable remedy will be construed as a waiver, prohibition or limitation of any legal or equitable remedies.  I further agree that this agreement will be governed by the laws of the State of New York, and I irrevocably agree to submit to the jurisdiction of the appropriate Federal or State court located in the County of New York.

**Agreed and Acknowledged:**

_____
Print or Type Full Legal Name

_____
Signature

_____
Date

## EXHIBIT 5

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                    :
**In re**                                           :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :        **08-13555 (JMP)**
                                                    :
                            **Debtors.**            :        **(Jointly Administered)**
                                                    :
-------------------------------------------------------------------x

### AFFIDAVIT AND DISCLOSURE STATEMENT OF _____

STATE OF _____            )
                                   ) ss:
COUNTY OF _____              )

_____, being duly sworn, upon his oath, deposes and says:

      1.     I am a lawyer admitted to practice in the State of _____. I am not affiliated with any law firm. I am employed by De Novo Legal, LLC, a staffing agency.

      2.     I am not an insider of the debtors in the above-captioned bankruptcy cases (the "Debtors"). I do not hold any claim, debt or equity security of the Debtors.

      3.     I am not, and have not been within two years before September 15, 2008, a director, officer, or employee of any of the Debtors.

      4.     I am not, and have not been within three years before September 15, 2008, an investment banker for any outstanding security of any of the Debtors.

      5.     I am not, and have not been within two years before September 15, 2008, an investment banker for a security of any of the Debtors, or an attorney for any such investment banker in connection with the offer, sale, or issuance of a security for any of the Debtors.

6.      I do not have any connections with (a) any Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, (b) the United States Trustee (Region 2), or (c) any person employed by the United States Trustee (Region 2).

7.      I have reviewed the list of identified parties set forth in the Master Conflicts List. Based upon my review of that list, I hereby disclose the following connections to parties set forth on that list: [i.e. "I worked as a contract attorney for _____ on matters unrelated to Lehman Brothers" or I have nothing relevant to disclose."]

8.      If I should discover any facts bearing on the matters described herein, I will supplement the information contained in this Affidavit.

By: _____

Subscribed and sworn to before me
this ____ day of _____, 2010

_____
        Notary Public

## Exhibit B

**Affidavit and Disclosure Statement**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                        :
In re                                                   :        **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,            :        **08-13555 (JMP)**
                                                        :
                                    **Debtors.**        :        **(Jointly Administered)**
                                                        :
-------------------------------------------------------------------x

###      **AFFIDAVIT AND DISCLOSURE STATEMENT OF _____**


STATE OF _____               )
                                     ) ss:
COUNTY OF _____                )

_____, being duly sworn, upon his oath, deposes and says:

        1.      I am a lawyer admitted to practice in the State of _____.  I am not

affiliated with any law firm.  I am employed by De Novo Legal, LLC, a staffing agency.

        2.      I am not an insider of the debtors in the above-captioned bankruptcy cases

(the "Debtors").  I do not hold any claim, debt or equity security of the Debtors.

        3.      I am not, and have not been within two years before September 15, 2008,

a director, officer, or employee of any of the Debtors.

        4.      I am not, and have not been within three years before September 15, 2008,

an investment banker for any outstanding security of any of the Debtors.

        5.      I am not, and have not been within two years before September 15, 2008,

an investment banker for a security of any of the Debtors, or an attorney for any such

investment banker in connection with the offer, sale, or issuance of a security for any of the

Debtors.

6.      I do not have any connections with (a) any Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, (b) the United States Trustee (Region 2), or (c) any person employed by the United States Trustee (Region 2).

7.      I have reviewed the list of identified parties set forth in the Master Conflicts List.  Based upon my review of that list, I hereby disclose the following connections to parties set forth on that list: [i.e. "I worked as a contract attorney for _____ on matters unrelated to Lehman Brothers" or I have nothing relevant to disclose."]

8.      If I should discover any facts bearing on the matters described herein, I will supplement the information contained in this Affidavit.

By:  _____

Subscribed and sworn to before me
this ____ day of _____, 2010


_____
       Notary Public

2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
                                          :
In re                                     :          **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :          **08-13555 (JMP)**
                                          :
                        **Debtors.**           :          **(Jointly Administered)**
                                          :
                                          :
------------------------------------------------------------------------x

## ORDER PURSUANT TO SECTIONS 327(e) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF DE NOVO LEGAL, LLC AS PROVIDER OF CONTRACT ATTORNEYS

Upon consideration of the application, dated September 23, 2010 (the "Application"), of

Lehman Brothers Holdings Inc. and its affiliated debtors in the above-captioned chapter 11

cases, as debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections

327(e) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule

2014(a) of the Federal Rules of Bankruptcy Procedure for authorization to employ and retain De

Novo Legal, LLC ("De Novo") as a provider of Contract Attorneys[1] to the Debtors; and the

Court being satisfied, based on the representations made in the Application, that De Novo and

the Contract Attorneys represent no interest adverse to the Debtors or the Debtors' estates with

respect to the matters upon which it is to be engaged, under section 327 of the Bankruptcy Code

as modified by section 1107(b); and the Court having jurisdiction to consider the Application and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

---

[1] Capitalized terms that are used but not defined herein shall have the meanings ascribed to them in the Application.

Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Application having been provided in accordance with the

procedures set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S.

Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; (vi) De Novo; and (vii) all parties who have requested notice in these

chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court

having found and determined that the relief sought in the Application is in the best interests of

the Debtors, their estates and creditors, and all parties in interest and that the legal and factual

bases set forth in the Application establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is approved; and it is further

ORDERED that pursuant to sections 327(e) and 328(a) of the Bankruptcy Code,

the Debtors are hereby authorized to employ and retain De Novo as a provider of Contract

Attorneys to the Debtors under the terms of the Engagement Agreement annexed as Exhibit A to

the Application, effective as of September 29, 2010; and it is further

ORDERED that the terms of the Engagement Agreement, including without

limitation, the fee provisions, are reasonable terms and conditions and are approved; and it is

further

ORDERED that De Novo will not be required to file interim fee applications

pursuant to sections 330 and 331 of the Bankruptcy Code, and that the Debtors are authorized to

pay De Novo in such amounts and at such times as is provided in the Engagement Agreement without further order of this Court; and it is further

ORDERED that the Contract Attorneys who will be providing legal services to the Debtors must individually complete and execute an affidavit and disclosure statement (the "Affidavit"), substantially in the form annexed hereto as Exhibit B, certifying that they do not represent or hold any interest adverse to the Debtors or their estates; and it is further

ORDERED that the Debtors' attorneys shall file the Affidavit with the Court and serve a copy thereof upon the (i) U.S. Trustee, and (ii) Creditors' Committee (together with the Debtors, the "Reviewing Parties"); and it is further

ORDERED that the retention, employment, and compensation of the Contract Attorneys shall be deemed approved as of the date of the filing of the Affidavits without the need for a hearing and without further order from the Court, *provided*, *however,* no objection is filed by the Reviewing Parties within ten days of the filing of the Affidavits; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: October __, 2010
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE