Hearing Date and Time: October 20, 2010 at 10:00 a.m.
Objection Deadline: October 13, 2010 at 4:00 p.m.

BECKER, GLYNN, MELAMED & MUFFLY LLP
299 Park Avenue
New York, New York 10171
Telephone (212) 888-3033
Facsimile  (212) 888-0255
Alec P. Ostrow
aostrow@beckerglynn.com

Counsel for Alpine Bank

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                         :
In re:                                                   :      Chapter 11
                                                         :
LEHMAN BROTHERS HOLDINGS INC.,                           :      Case No. 08-13555 (JMP)
*et al.*,                                                :
                                                         :      (Jointly Administered)
                                                         :
                                  Debtors.   :
------------------------------------------------------- x

NOTICE OF HEARING ON MOTION OF ALPINE BANK FOR AN ORDER MODIFYING
THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY
CODE AND PERMITTING ALPINE BANK TO OBTAIN POSSESSION OF, FORECLOSE
ON, AND OTHERWISE DISPOSE OF, CERTAIN REAL PROPERTY

PLEASE TAKE NOTICE that a hearing will be held before the Honorable James

M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy

Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York, on

October 20, 2010, at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as counsel may

be heard (the "Hearing"), to consider the annexed Motion of Alpine Bank (the "Movant") for an

Order Granting Relief from the Automatic Stay, Pursuant to Section 362(d) of the Bankruptcy

Code and Permitting Movant to Take All Steps to Obtain Possession of, Foreclose on, and

Otherwise Dispose of, Certain Real Property (the "Motion")

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief

requested in the Motion shall be in writing, shall conform to the United States Bankruptcy Code,

the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court and the

Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy

Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, dated

June 17, 2010 (the "Second Amended Case Management Order"), shall set forth the name of the

objectant, the basis for the objection, and the specific grounds therefore, and shall be filed with

the Bankruptcy Court in accordance with the electronically in accordance with General Order M-

242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with a hard copy delivered directly to Chambers) and served in accordance with General

Order M-242, and served upon the undersigned so as to actually be filed with the Court and

received by the undersigned no later than October 13, 2010 at 4:00 p.m. (prevailing Eastern

Time).

PLEASE TAKE FURTHER NOTICE that the relief requested in the Motion may

be granted without a hearing if no objection is timely filed and served in accordance with the

immediately preceding paragraph.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing and failure to appear may result in relief being granted or denied upon default.

Dated: September 28, 2010
      New York, New York

BECKER, GLYNN, MELAMED & MUFFLY LLP

By: _/s/ Alec P. Ostrow_____
     Alec P. Ostrow
     299 Park Avenue
     New York, New York 10171
     Telephone (212) 888-3033
     Facsimile  (212) 888-0255
     aostrow@beckerglynn.com

Counsel for Alpine Bank

<div align="right">

Hearing Date and Time: October 20, 2010 at 10:00 a.m.
Objection Deadline: October 13, 2010 at 4:00 p.m.

</div>

BECKER, GLYNN, MELAMED & MUFFLY LLP
299 Park Avenue
New York, New York 10171
Telephone (212) 888-3033
Facsimile  (212) 888-0255
Alec P. Ostrow
aostrow@beckerglynn.com

Counsel for Alpine Bank

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
                                                     :

In re:                                    :     Chapter 11

                                        :

LEHMAN BROTHERS HOLDINGS INC.,  :     Case No. 08-13555 (JMP)
*et al.*,                              :     (Jointly Administered)

                                        :

                           Debtors.  :
-------------------------------------------------------- x

<div align="center">

MOTION OF ALPINE BANK FOR AN ORDER MODIFYING THE AUTOMATIC STAY
PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE AND PERMITTING
ALPINE BANK TO OBTAIN POSSESSION OF, FORECLOSE ON, AND OTHERWISE
DISPOSE OF, CERTAIN REAL PROPERTY

</div>

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Alpine Bank, a Colorado banking corporation (the "Movant"), by its undersigned

counsel, submits this Motion of Alpine Bank for an Order Modifying the Automatic Stay

Pursuant to Section 362(d) of the Bankruptcy Code and Permitting Alpine Bank to Obtain

Possession of, Foreclose on, and Otherwise Dispose of, Certain Real Property (the "Motion"),

and in support of the Motion, respectfully represents that:

<div align="center">

PRELIMINARY STATEMENT

</div>

        Pre-petition, LB Rose Ranch LLC ("LB" or the "Debtor") bargained for and

<div align="center">4</div>

received a second lien on the Real Property (as defined below) and the Movant bargained for and received a first lien on the Real Property.  The Borrower (as defined below) on the loans secured by the Real Property has not made payments to the Movant in over a year.  The Movant therefore desired to foreclose on and dispose of the Real Property in accordance with its rights under Colorado law.  Due to the Debtor's second lien position and the imposition of the automatic stay, the Movant could not foreclose on the Real Property absent stay relief.  For several months, the Movant requested that the Debtor stipulate to the relief requested herein, but the Debtor denied such request.  During this time, the amount owed to the Movant by the borrowers has only increased, further subordinating the interest of the Debtor in the Real Property.  To date, the Debtor has not offered adequate protection against diminution of the Movant's interest in the Real Property.  Similarly, it a short matter of time the Debtor will lack any equity in its interest in the Real Property and such interest is clearly not necessary for an effective reorganization. The Movant therefore files this Motion so that it can obtain the relief it and the Debtor bargained for pre-petition and protect itself from further harm.

<u>JURISDICTION</u>

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(G) and a proceeding to obtain relief from the automatic stay in accordance with Bankruptcy Rules 4001 and 9014. Venue of this proceeding and the Motion in this District is proper under 28 U.S.C. 1408 and 1409.

2.      The statutory predicates for the relief requested are Bankruptcy Code section 105(a) and 362(d), Bankruptcy Rule 4001(a) and Rule 4001-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

## PROCEDURAL BACKGROUND

3.      On or about September 15, 2008, Lehman Brothers Holdings Inc. and

certain of its affiliated entities, including LB (collectively, the "Debtors") filed voluntary

petitions for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy

Code") with the United States Bankruptcy Court for the Southern District of New York (the

"Court").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only

and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

4.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

## RELEVANT BACKGROUND

5.      On or about January 16, 2007, the Movant entered into a construction loan

agreement with Ironbridge Homes LLC (the "Borrower") whereby the Borrower executed two

promissory notes (the "Notes") in the original principal amounts of $640,725 and $760,000 in

favor of the Movant secured by first position deeds of trust (the "Deeds of Trust") on real

property known as "Lot 66" and "Lot 67", respectively (the "Real Property").  Copies of the

Notes are attached hereto as Exhibit A.[1]  The Deeds of Trust were recorded in the Official

---

[1]      Designation is made on each exhibit attached hereto as to whether the document relates to
Lot 66 or 67.

Records of Garfield County, Colorado at Reception Nos. 719134 and 719125 on March 16, 2007.  Copies of the Deeds of Trust, as amended, are attached hereto as <u>Exhibit B</u>.

6.      In addition, to secure repayment of the Notes, on or about January 16, 2007, the Borrower signed commercial security agreements (the "Security Agreements") in which the Movant was granted a security interest in, among other things, all construction materials then owned or thereafter acquired by the Borrower, rents, accessions, attachments, and proceeds relating to the Real Property (the "Collateral" and, together with the Real Property, the "Property").  Copies of the Security Agreements are attached hereto as <u>Exhibit C</u>.  To perfect its security interest in the Collateral, the Movant filed a Uniform Commercial Code ("UCC") Financing Statement with the Colorado Secretary of State on February 28, 2007, a copy of which are attached hereto as <u>Exhibit D</u>.

7.      LB has security interests in the Real Property.  The deeds of trust (collectively, the "Junior Deeds of Trust" or the "Junior Liens") securing obligations from the Borrower to LB are attached hereto as <u>Exhibit E</u>.

8.      Additionally, on March 7, 2007, the Movant and LB executed subordination agreements (the "Subordination Agreements") whereby LB subordinated its interests in the Real Property to those of the Movant.  Copies of the Subordination Agreements are attached hereto as <u>Exhibit F</u>.  The Subordination Agreements expressly contemplate the default of the Borrower's obligations to the Movant with regard to the Property and proceed to state that in the event of such default, the security interests of the Movant shall be superior to those of LB.

9.      The Borrower defaulted in payment of the Notes and its other obligations to the Movant in July 2009.  Due to LB's Junior Liens on the Real Property, the Movant could

not foreclose on the Real Property without violating the automatic stay imposed by the

Bankruptcy Code.  As a result of this delay, interest, fees and other charges continue to accrue

which further subordinate the Debtor's interest in the Real Property.  Per diem interest accrues

on the Notes at a rate of $422.31 for Lot 66 and $500.93 for Lot 67.  The Borrower also has

failed to pay real property taxes due on the Real Property, and as of August 31, 2010, the real

property taxes, interest, penalties, and fees owing are $5,209.94 and $5,594.20, respectively.

The Movant believes that as of February 17, 2010, the date of the appraisals of the Real Property

attached hereto as Exhibit G, the fair market value of the Property is no greater than $840,000 for

Lot 66 and $950,000 for Lot 67.

10.     Given these valuation figures and the tax and per diem accruals, as of the

proposed hearing date on this Motion, and not taking into account the costs and expenses

associated with preparing this Motion, serving this Motion and preparing for a hearing with

respect to this Motion, following satisfaction of the Movant's obligations, LB's Junior Liens – its

property interests in the Real Property – is worth no more than $41,548.63 with respect to Lot 66

and $4,112.74 with respect to Lot 67.  In other words, it is only a matter of time before what little

equity LB has in the Junior Liens is completely gone.

11.     Moreover, because the amount owed to the Movant continues to increase

and real property taxes – which prime the Movant's and LB's liens – continue to accrue due to

the imposition of the automatic stay, the Movant is entitled to adequate protection until the stay

is lifted so it can foreclose on the property.  LB has not, however, offered the Movant any such

protection.

## RELIEF REQUESTED

12.    By this Motion, Movant seeks entry of an order, substantially in the form attached hereto as <u>Exhibit H</u>, granting it relief from the automatic stay and permitting Movant to take all legal steps necessary to obtain possession of, foreclose on, hold for sale and otherwise dispose of the Real Property and any and all such other actions as may be necessary to protect its interests in connection with the Real Property.

## BASIS FOR THE RELIEF REQUESTED

A.  <u>Cause Exists For Lifting the Automatic Stay</u>.

13.    Bankruptcy Code section 362(d)(1) authorizes a court to terminate, annul, modify or condition the automatic stay for "cause."  The Bankruptcy Code does not define "cause" and, therefore, courts determine cause on a case-by-case basis.  <u>See</u> <u>In re Sonnax</u> <u>Industries, Inc.</u>, 907 F.2d 1280, 1285 (2d Cir. 1990).

14.    Based upon the factors established by the Second Circuit Court of Appeals in <u>Sonnax Industries</u>, cause clearly exists for lifting the automatic stay so that Movant can enforce its rights in the Real Property.  In <u>Sonnax Industries</u>, the court held that a bankruptcy court may consider the following factors in determining whether to lift automatic stay to permit litigation in another forum:

|     |     |
| --- | --- |
| i.    | whether relief would result in resolution of the issues; |
| ii.   | lack of interference with bankruptcy case; |
| iii.  | whether other proceeding involves debtor as fiduciary; |
| iv.   | whether there is specialized tribunal to hear cause of action; |
| v.    | whether debtor's insurer is defending it; |
| vi.   | whether action primarily involves third parties; |
| vii.  | whether litigation in another forum would prejudice other creditors; |
| viii. | whether judgment claim arising from other action is subject to equitable subordination; |
| ix.   | whether the other proceeding would result in judicial lien avoidable by debtor; |

| x. | interests of judicial economy; |
|---|---|
| xi. | whether parties are ready for trial in other proceeding; and |
| xii. | impact of stay on the parties and balance of harms. |

Sonnax Industries, 907 F.2d at 1286.

15.    Only those factors relevant to a particular case need be considered, Sonnax Industries, 907 F.2d at 1285, and a court need not assign them equal weight. In re Anton, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992). Under Sonnax, the "fundamental question" as to stay whether a court should grant stay relief is the balance of harms. Hr'g Tr. At 147, In re Lehman Bros. Holdings Inc., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 22, 2008) (Peck, J.); see Sonnax, 907 F.2d at 1286.

16.    The following facts support the Movant's request for relief from the automatic stay:

a.    LB bargained for junior liens on the Real Property and was aware that foreclosure of its liens was possible, if not likely, if the Borrower defaulted on its obligations to the Movant;

b.    Appraisal of the Real Property reflects that its value is such that the Debtor's second liens on the Real Property has little or no value to the Debtor and the value diminishes daily as Movant's claim against the Borrower increases;

c.    LB's interest in the Real Property is *de minimis* and is not necessary to an effective reorganization;

d.    Following a reorganization, the Movant would have the right to foreclose on the Real Property and therefore foreclosure is certain in any event;

e.    Foreclosure will not harm LB's estate as it will simply result in LB receiving the benefit of their bargain;

f.    The Movant's interest in the Property is not being adequately protected by LB;

g.    Amounts due under the Notes continue to increase further subordinating LB's interest and harming the Movant;

10

h..       The Borrower has failed to pay real property taxes due, forcing the Movant to pay such amounts at a future date to clear potential priming liens on the Real Property and causing further loss to the Movant; and

i.        A forum for pursuing and resolving the foreclosure process exists.

17.      The principles embraced in <u>Sonnax</u>, including the balance of the harms, clearly support the granting of the relief requested by the Movant.  The first <u>Sonnax</u> factor – whether granting relief would result in the resolution of the issues – weighs in favor of granting relief from the automatic stay.  The proposed foreclosure process involves issues of Colorado law and do not involve questions directed to the expertise of the bankruptcy court.  Moreover, the unique public trustee system of Colorado has the expertise to resolve any issues that parties may raise in the foreclosure process.

18.      The second and seventh <u>Sonnax</u> factors – lack of interference with the bankruptcy case and prejudice to other creditors – also weigh in favor of granting the requested relief.  Foreclosure through the Colorado public trustee system, would not interfere with the Debtors' cases.  Since the value of LB's interest in the Real Property is *de minimis*, the value of the Movant's claim against the Borrower increases daily and the Movant could seek foreclosure relief following plan confirmation in any event, there is little to no prejudice to other creditors if the Movant forecloses on the Property at this time.  Moreover, in the unlikely event that the Movant's foreclosure of the Property yields sufficient funds to pay the Notes in full, the proposed Order requires the Movant to give the Debtors notice and an opportunity to claim an interest in such excess proceeds thus protecting the Debtors' creditors.

19.      The next applicable <u>Sonnax</u> factor – the interests of judicial economy – weighs in favor of granting the relief requested.  The administration of justice, convenience of

the parties and judicial economy are better served by having issues relating to the Notes, Deeds of Trust, and other loan documents resolved under the laws of the State of Colorado.

20.     The twelfth <u>Sonnax</u> factor – the impact of the stay and the balance of harms – weighs in favor of granting the relief requested.  Refusal to lift the automatic stay at this point prejudices the Movant and is inequitable.  Relief from automatic stay is warranted because the Movant is being harmed on a daily basis by the Borrower's default on the Notes, due to, among other things, interest accruals and unpaid taxes which may result in liens on the Property senior to the Movant's.  Again, delay does not help LB either as it only serves to further subordinate the LB's interest in the Real Property and because there is no adequate protection offered by LB, foreclosure is the only way in which the Movant can protect itself from further loss.

21.     Based on the foregoing, the Movant submits that sufficient grounds exist for the Court to grant relief from the automatic stay so the Movant can foreclose on and proceed to dispose of the Real Property.

B.  <u>LB Lacks Equity in Its Interest in the Real Property and it Is Not Necessary to Effective Reorganization</u>.

22.     Section 362(d)(2) of the Bankruptcy Code allows for relief from the automatic stay of an act against property where the debtor has no equity in the property and the property is not necessary to an effective reorganization.  <u>See</u> 11 U.S.C. § 362(d)(2).  In this case, LB's property interest is its Junior Deeds of Trust which, even following a successful reorganization of LB, are subject to the Movant's Deeds of Trust and thus only have value to the LB estate to the extent that the Movant's Deeds of Trust and the obligations they secure are satisfied in full.

23.     Based on the appraisals provided herewith it is clear that if relief is not granted as requested herein, what little equity interest LB has in the Junior Deeds of Trust will quickly evaporate.  It also clear that preventing foreclosure by the Movant – which will only serve to liquidate and preserve the little remaining value the Junior Deeds of Trust represent for the estate – is not necessary for an effective reorganization as the Movant would have the right to foreclose on the Junior Deeds of Trust immediately following the effective date of any reorganization plan.

C.  Lack of Adequate Protection.

24.     Relief from the automatic stay is also appropriate because the Movant is not adequately protected.  *See* 11 U.S.C. § 362(d)(1).  Here, the automatic stay has prevented the Movant from foreclosing on the Real Property, but has not prevented the claims of Movant and other creditors senior to both Movant and LB from being asserted against the underlying borrower.  As set forth above, the underlying borrower as no equity in the property and the Movant's Deeds of Trust will be underwater shortly.  As a result, LB's bankruptcy filing is causing the Movant to become an undersecured creditor of the underlying borrower.  Despite this harm and the decrease in value of the Movant's security interest caused by the imposition of the automatic stay, LB has not provided the Movant with adequate protection.  For such reason stay relief is appropriate.

25.     In the event the Court does not grant the Movant relief from the automatic stay, the Movant respectfully requests that this Court require the Debtor to provide it with the adequate protection to which it is clearly entitled.

## NOTICE

26.     The Movant has served notice of this Motion on the Master Service List as defined in the Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, dated June 17, 2010 (the "Second Amended Case Management Order").  The Master Service List used is the one obtained from the website www.lehman-docket.com, which redirects to http://chapter11.epiqsystems.com/LBH/Project/default.aspx, is as of September 7, 2010, and includes the Standard Parties and the Rule 2002 List as defined in the Second Amended Case Management Order.  In addition, many parties receive electronic notification from the Court of the filing of documents in these cases, including the Motion.  Movant submits that no other or further notice need be provided.

27.     No previous request for the relief sought in this Motion has been made by the Movant to this Court or any other court.

[The rest of this page is intentionally left blank.]

WHEREFORE, the Movant respectfully requests that the Court enter an order (a) granting it relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to allow Movant to take all legal steps necessary to obtain possession of, foreclose on, hold for sale and otherwise dispose of the Property and any and all such other actions as may be necessary to protect its interests, and (b) granting the Movant such other and further relief as may be just and proper.

Dated:    September 28, 2010
          New York, New York

Respectfully submitted,

BECKER, GLYNN, MELAMED & MUFFLY LLP

By:  _/s/ Alec P. Ostrow_____
       Alec P. Ostrow
       299 Park Avenue
       New York, New York 10171
       Telephone (212) 888-3033
       Facsimile  (212) 888-0255
       aostrow@beckerglynn.com

Counsel for Alpine Bank



# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $640,725.00 | 01-16-2007 | 01-15-2008 | 0460258001 | 1A1 / 110 | 1001027 | 154 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** IRONBRIDGE HOMES LLC (TIN: 20-1816183)
410 IRONBRIDGE DRIVE
GLENWOOD SPRINGS, CO 81601

**Lender:** Alpine Bank
Alpine Bank Carbondale
0350 Hwy 133
Carbondale, CO 81623
(970) 963-3040

---

**Principal Amount: $640,725.00**       **Initial Rate: 8.750%**       **Date of Note: January 16, 2007**

**PROMISE TO PAY.** IRONBRIDGE HOMES LLC ("Borrower") promises to pay to Alpine Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Hundred Forty Thousand Seven Hundred Twenty-five & 00/100 Dollars ($640,725.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on January 15, 2008. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning February 15, 2007, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to any late charges; then to principal; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the JP Morgan Chase Bank prime rate as quoted by calling (212) 270-2916 (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 0.500 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 8.750% per annum. NOTICE: Under no circumstances will the interest rate on this Note be less than 6.000% per annum nor more than (except for any higher default rate shown below) the lesser of 24.000% per annum or the maximum rate allowed by applicable law.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $250.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Alpine Bank, Alpine Bank Carbondale, 0350 Hwy 133, Carbondale, CO 81623.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 24.000% per annum. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the reasonable costs of such collection. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**Exhibit A - Lot 66**

# PROMISSORY NOTE
## (Continued)

Loan No: 0460258001                                                                 Page 2

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Colorado.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Garfield County, State of Colorado.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**FURNISHING FINANCIAL INFORMATION.** During the term of the Note and any extensions or renewal hereof, Borrower shall furnish an annual financial statement prepared in form acceptable to Bank, as soon as practicable but no later than 90 days after Borrower's year-end and such interim financial statements and all other information and material as Bank may from time to time request. If an Event of Default (as defined in the document contained herein) shall have occurred and be continuing for which the Bank does not accelerate the indebtedness evidenced by the Note, which consists of the failure of Borrower to provide financial statements and other information as required by the terms of the Note, the interest rate applicable to the Note, for a period beginning three days after written notice of such default is given and ending upon the curing of such default, sehll, at Bank's option, be increased by one quarter of one percent (.25%) for the first 30 days of said default and by end additional one quarter of one percent (.25%) during each 30-day period thereafter during which such default continues. Such interest rate shall apply to the entire outstanding principal balance of the Note. Upon the curing of such default, the interest rate on the Note shall revert to the applicable interest rate hereunder, effective as of the date on which said default is cured. Borrower acknowledges that such increased interest rate is intended to compensate Bank for the potentially higher credit risk and increased administrative cost associated with such failure to furnish timely financial information.

**FEDERAL COURT WAIVER.** Lender and I hereby waive the right to remove any dispute which is in litigation in state courts to the federal courts.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Alpine Bank, Alpine Bank Carbondale, 0350 Hwy 133, Carbondale, CO 81623.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

IRONBRIDGE HOMES LLC

By: _____
DIRK A. GOSDA, MANAGER of IRONBRIDGE HOMES LLC

**Exhibit A - Lot 66**

(2)

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $760,000.00 | 01-16-2007 | 01-15-2008 | 0460259801 | 1A1 / 110 | I001027 | 154 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** IRONBRIDGE HOMES LLC (TIN: 20-1816183)
410 IRONBRIDGE DRIVE
GLENWOOD SPRINGS, CO 81601

**Lender:** Alpine Bank
Alpine Bank Carbondale
0350 Hwy 133
Carbondale, CO 81623
(970) 963-3040

**Principal Amount: $760,000.00** **Initial Rate: 8.750%** **Date of Note: January 16, 2007**

**PROMISE TO PAY.** IRONBRIDGE HOMES LLC ("Borrower") promises to pay to Alpine Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Hundred Sixty Thousand & 00/100 Dollars ($760,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on January 15, 2008. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning February 15, 2007, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to any late charges; then to principal; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the JP Morgan Chase Bank prime rate as quoted by calling (212) 270-2916 (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 0.500 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 8.750% per annum. NOTICE: Under no circumstances will the interest rate on this Note be less than 6.000% per annum or more than (except for any higher default rate shown below) the lesser of 24.000% per annum or the maximum rate allowed by applicable law.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $250.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Alpine Bank, Alpine Bank Carbondale, 0350 Hwy 133, Carbondale, CO 81623.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 24.000% per annum. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the reasonable costs of such collection. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**Exhibit A - Lot 67**

# PROMISSORY NOTE
## (Continued)

Loan No: 0460259801                                                                                                     **Page 2**

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Colorado.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Garfield County, State of Colorado.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**FURNISHING FINANCIAL INFORMATION.** During the term of the Note and any extensions or renewal hereof, Borrower shall furnish an annual financial statement prepared in form acceptable to Bank, as soon as practicable but no later than 90 days after Borrower's year-end and such interim financial statements and all other information and material as Bank may from time to time request. If an Event of Default (as defined in the document contained herein) shall have occurred and be continuing for which the Bank does not accelerate the indebtedness evidenced by the Note, which consists of the failure of Borrower to provide financial statements and other information as required by the terms of the Note, the interest rate applicable to the Note, for a period beginning three days after written notice of such default is given and ending upon the curing of such default, sahil, at Bank's option, be increased by one quarter of one percent (.25%) for the first 30 days of said default and by and additional one quarter of one percent (.25%) during each 30-day period thereafter during which such default continues. Such interest rate shall apply to the entire outstanding principal balance of the Note. Upon the curing of such default, the interest rate on the Note shall revert to the applicable interest rate hereunder, effective as of the date on which said default is cured. Borrower acknowledges that such increased interest rate is intended to compensate Bank for the potentially higher credit risk and increased administrative cost associated with such failure to furnish timely financial information.

**FEDERAL COURT WAIVER.** Lender and I hereby waive the right to remove any dispute which is in litigation in state courts to the federal courts.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Alpine Bank, Alpine Bank Carbondale, 0350 Hwy 133, Carbondale, CO 81623.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

IRONBRIDGE HOMES LLC

By: _____
DIRK A. GOSDA, MANAGER of IRONBRIDGE
HOMES LLC

LASER PRO Lending, Ver. 5.33.00.004 Copr. Harland Financial Solutions, Inc. 1991, 2007. All Rights Reserved. - CO G:\MAY\CPALPL\030.FC 99-30543 PR-32

**Exhibit A - Lot 67**

Reception#: 719134
09/16/2007 03:50:33 PM B 1903 P 0406 Jean Alberico
1 of 7 Rec Fee $36.00 Doc Fee 0.00 GARFIELD COUNTY CO

RECORDATION REQUESTED BY:
Alpine Bank
Alpine Bank Carbondale
0350 Hwy 133
Carbondale, CO 81623

WHEN RECORDED MAIL TO:
Alpine Bank
400 7th Street South
Rifle, CO 81650

SEND TAX NOTICES TO:
IRONBRIDGE HOMES LLC
410 IRONBRIDGE DRIVE
GLENWOOD SPRINGS, CO 81601

4602 5800l

FOR RECORDER'S USE ONLY

## CONSTRUCTION DEED OF TRUST

**MAXIMUM PRINCIPAL AMOUNT SECURED.** The Lien of this Deed of Trust shall not exceed at any one time $840,725.00 except as allowed under applicable Colorado law.

**THIS DEED OF TRUST** is dated January 16, 2007, among IRONBRIDGE HOMES, LLC, A COLORADO LIMITED LIABILITY COMPANY ("Grantor"); Alpine Bank, whose address is Alpine Bank Carbondale, 0350 Hwy 133, Carbondale, CO 81623 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and the Public Trustee of GARFIELD County, Colorado (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Grantor hereby irrevocably grants, transfers and assigns to Trustee for the benefit of Lender as Beneficiary all of Grantor's right, title and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the **"Real Property"**) located in GARFIELD County, State of Colorado:

LOT 66
IRONBRIDGE PLANNED UNIT DEVELOPMENT
PHASE II, FILINGS 1, 2 AND 3
ACCORDING TO THE PLAT RECORDED JULY 19, 2006, UNDER RECEPTION NO. 702420

COUNTY OF GARFIELD
STATE OF COLORADO

The Real Property or its address is commonly known as 1270 RIVER BEND WAY, GLENWOOD SPRINGS, CO 81601.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF GRANTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN GRANTOR AND LENDER OF EVEN DATE HEREWITH. ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

**CONSTRUCTION MORTGAGE.** This Deed of Trust is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of Colorado.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.



**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its

**Exhibit B - Lot 66**

**DEED OF TRUST**
**(Continued)**

Loan No: 0460258001                                                                                          Page 2

═══════════════════════════════════════════════════════════════════════════════════

agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**Construction Loan.** If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any Improvements on the Property, the Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Grantor shall pay in full all costs and expenses in connection with the work. Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Deed of Trust shall have priority over all possible liens, including those of material suppliers and workmen. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Colorado law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an

Exhibit B - Lot 66

# DEED OF TRUST
## (Continued)

endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Exhibit B - Lot 66**

# DEED OF TRUST
## (Continued)

Loan No: 0460258001                                                      **Page 4**

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** Upon the full performance of all the obligations under the Note and this Deed of Trust, Trustee may, upon production of documents and fees as required under applicable law, release this Deed of Trust, and such release shall constitute a release of the lien for all such additional sums and expenditures made pursuant to this Deed of Trust. Lender agrees to cooperate with Grantor in obtaining release and releasing the other collateral securing the Indebtedness. Any release fees required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance

**Exhibit B - Lot 66**

**DEED OF TRUST**
**(Continued)**

Loan No: 0460258001                                                                  Page 5

---

as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.**  If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.**  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.**  Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Foreclosure.**  Lender shall have the right to cause all or any part of the Real Property, and Personal Property, if Lender decides to proceed against it as if it were real property, to be sold by the Trustee according to the laws of the State of Colorado as respects foreclosures against real property.  The Trustee shall give notice in accordance with the laws of Colorado.  The Trustee shall apply the proceeds of the sale in the following order:  (a) to all costs and expenses of the sale, including but not limited to Trustee's fees, attorneys' fees, and the cost of title evidence;  (b) to all sums secured by this Deed of Trust; and  (c) the excess, if any, to the person or persons legally entitled to the excess.

**UCC Remedies.**  With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.**  Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness.  In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender.  If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds.  Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed.  Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness.  The receiver may serve without bond if permitted by law.  Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount.  Employment by Lender shall not disqualify a person from serving as a receiver.  Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

**Tenancy at Sufferance.**  If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either  (1) pay a reasonable rental for the use of the Property, or  (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.**  Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Sale of the Property.**  In exercising its rights and remedies, Lender shall be free to designate on or before it files a notice of election and demand with the Trustee, that the Trustee sell all or any part of the Property together or separately, in one sale or by separate sales.  Lender shall be entitled to bid at any public sale on all or any portion of the Property.  Upon any sale of the Property, whether made under a power of sale granted in this Deed of Trust or pursuant to judicial proceedings, if the holder of the Note is a purchaser at such sale, it shall be entitled to use and apply all, or any portion of, the Indebtedness for or in settlement or payment of all, or any portion of, the purchase price of the Property purchased, and, in such case, this Deed of Trust, the Note, and any documents evidencing expenditures secured by this Deed of Trust shall be presented to the person conducting the sale in order that the amount of Indebtedness so used or applied may be credited thereon as having been paid.

**Attorneys' Fees; Expenses.**  If Lender forecloses or institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal.  Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid.  Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law.  Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.**  To the extent permitted by applicable law, Trustee shall have all of the rights and duties of Lender as set forth in this section.

**NOTICES.**  Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust.  All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust.  Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.  Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.**  This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust.  No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.**  If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require.  "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.**  Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.**  There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the

**Exhibit B - Lot 66**

## DEED OF TRUST
### (Continued)

Loan No: 0460258001                                                                                                          Page 6

Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Colorado.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Garfield County, State of Colorado.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Colorado as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Alpine Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means IRONBRIDGE HOMES LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means IRONBRIDGE HOMES LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Deed of Trust.

**Lender.** The word "Lender" means Alpine Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated January 16, 2007, **in the original principal amount of $640,725.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is January 15, 2008. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Exhibit B - Lot 66**

Loan No: 0460258001

**DEED OF TRUST**
**(Continued)**

Page 7

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means the Public Trustee of GARFIELD County, Colorado.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

IRONBRIDGE HOMES LLC

By: _____
    DIRK A. GOSDA, MANAGER of IRONBRIDGE HOMES LLC

**CORPORATE ACKNOWLEDGMENT**

STATE OF _Colorado_ )
                          ) SS
COUNTY OF _Garfield_ )

On this _21_ day of _February_, 20_07_, before me, the undersigned Notary Public, personally appeared DIRK A. GOSDA, MANAGER of IRONBRIDGE HOMES LLC, and known to me to be an authorized agent of the corporation that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the corporation.

By _Alicia Crandell_            Residing at _____
Notary Public in and for the State of _Colorado_      My commission expires _8-31-10_

LASER PRO Lending, Ver. 5.33.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - CO  Q:\LASPRO\CFI\LPL\G01.FC  TR-50342  PR-32

**Exhibit B - Lot 66**

Reception#: 742624
02/08/2008 11:58:16 AM Jean Alberico
1 of 2 Rec Fee:$11.00 Doc Fee:0.00 GARFIELD COUNTY CO

RECORDATION REQUESTED BY:
Alpine Bank, A Colorado Banking Corporation
Alpine Bank Carbondale
0350 Hwy 133
Carbondale, CO 81623

WHEN RECORDED MAIL TO:
Alpine Bank
400 7th Street South
Rifle, CO 81650

SEND TAX NOTICES TO:
IRONBRIDGE HOMES LLC
410 IRONBRIDGE DRIVE
GLENWOOD SPRINGS, CO 81601

FOR RECORDER'S USE ONLY

#460258001

## MODIFICATION OF DEED OF TRUST

**THIS MODIFICATION OF DEED OF TRUST** dated January 15, 2008, is made and executed between **IRONBRIDGE HOMES, LLC, A COLORADO LIMITED LIABILITY COMPANY ("Grantor")** and Alpine Bank, A Colorado Banking Corporation, whose address is Alpine Bank Carbondale, 0350 Hwy 133, Carbondale, CO 81623 **("Lender")**.

**DEED OF TRUST.** Lender and Grantor have entered into a Deed of Trust dated January 16, 2007 (the "Deed of Trust") which has been recorded in GARFIELD County, State of Colorado, as follows:

**RECORDED MARCH 16, 2007 IN GARFIELD COUNTY COLORADO UNDER RECEPTION NO. 719134.**

**REAL PROPERTY DESCRIPTION.** The Deed of Trust covers the following described real property located in GARFIELD County, State of Colorado:

LOT 66
IRONBRIDGE PLANNED UNIT DEVELOPMENT
PHASE II, FILINGS 1, 2 AND 3
ACCORDING TO THE PLAT RECORDED JULY 19, 2006, UNDER RECEPTION NO. 702420
COUNTY OF GARFIELD
STATE OF COLORADO

The Real Property or its address is commonly known as 1270 RIVER BEND WAY, GLENWOOD SPRINGS, CO 81601.

**MODIFICATION.** Lender and Grantor hereby modify the Deed of Trust as follows:

RENEW LOAN TO A NEW MATURITY DATE OF JANUARY 15, 2009.

**CONTINUING VALIDITY.** Except as expressly modified above, the terms of the original Deed of Trust shall remain unchanged and in full force and effect. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Deed of Trust as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust (the "Note"). It is the intention of Lender to retain as liable all parties to the Deed of Trust and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Deed of Trust does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF DEED OF TRUST AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF DEED OF TRUST IS DATED JANUARY 15, 2008.**

GRANTOR:

IRONBRIDGE HOMES LLC

By: _____
DIRK A. GOSDA, Manager of IRONBRIDGE HOMES LLC

LENDER:

ALPINE BANK, A COLORADO BANKING CORPORATION

X _____
Authorized Officer

**Exhibit B - Lot 66**

763573 02/23/2009 12:25:59 PM Page 1 of 2
Jean Alberico, Garfield County, Colorado
Rec Fee: $11.00 Doc Fee: $0.00 eRecorded



**RECORDATION REQUESTED BY:**
Alpine Bank, A Colorado Banking Corporation
Alpine Bank Carbondale
0350 Hwy 133
Carbondale, CO 81623

**WHEN RECORDED MAIL TO:**
Alpine Bank
400 7th Street South
Rifle, CO 81650

**SEND TAX NOTICES TO:**
IRONBRIDGE HOMES LLC
310 AABC
ASPEN, CO 81611

FOR RECORDER'S USE ONLY

0466258001    **MODIFICATION OF DEED OF TRUST**

**THIS MODIFICATION OF DEED OF TRUST** dated January 15, 2009, is made and executed between **IRONBRIDGE HOMES, LLC, A COLORADO LIMITED LIABILITY COMPANY** ("Grantor") and Alpine Bank, A **Colorado Banking Corporation, whose address is Alpine Bank Carbondale, 0350 Hwy 133, Carbondale, CO 81623 ("Lender").**

**DEED OF TRUST.** Lender and Grantor have entered into a Deed of Trust dated January 16, 2007 (the "Deed of Trust") which has been recorded in GARFIELD County, State of Colorado, as follows:

**RECORDED MARCH 16, 2007 IN GARFIELD COUNTY COLORADO UNDER RECEPTION NO. 719134.**

**REAL PROPERTY DESCRIPTION.** The Deed of Trust covers the following described real property located in GARFIELD County, State of Colorado:

LOT 66
IRONBRIDGE PLANNED UNIT DEVELOPMENT
PHASE II, FILINGS 1, 2 AND 3
ACCORDING TO THE PLAT RECORDED JULY 19, 2006, UNDER RECEPTION NO. 702420

COUNTY OF GARFIELD
STATE OF COLORADO

The Real Property or its address is commonly known as **1270 RIVER BEND WAY, GLENWOOD SPRINGS, CO 81601.**

**MODIFICATION.** Lender and Grantor hereby modify the Deed of Trust as follows:

EXTEND MATURITY DATE OF LOAN TO JANUARY 15, 2010 .

**CONTINUING VALIDITY.** Except as expressly modified above, the terms of the original Deed of Trust shall remain unchanged and in full force and effect. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Deed of Trust as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust (the "Note"). It is the intention of Lender to retain as liable all parties to the Deed of Trust and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Deed of Trust does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF DEED OF TRUST AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF DEED OF TRUST IS DATED JANUARY 15, 2009.**

**GRANTOR:**

IRONBRIDGE HOMES LLC

By: _____
DIRK A. GOSDA, Manager of IRONBRIDGE HOMES LLC

**LENDER:**

ALPINE BANK, A COLORADO BANKING CORPORATION

X _____
Authorized Officer

**Exhibit B - Lot 66**

Reception#: 718125
03/16/2007 01:16:34 PM B-1903 P-0356 Jean Alberico
1 of 7 Rec Fee $36.00 Doc Fee 0.00 GARFIELD COUNTY CO

**RECORDATION REQUESTED BY:**
Alpine Bank
Alpine Bank Carbondale
0350 Hwy 133
Carbondale, CO 81623

**WHEN RECORDED MAIL TO:**
Alpine Bank
400 7th Street South
Rifle, CO 81650

**SEND TAX NOTICES TO:**
IRONBRIDGE HOMES LLC
410 IRONBRIDGE DRIVE
GLENWOOD SPRINGS, CO 81601                    FOR RECORDER'S USE ONLY

46 0259801

## CONSTRUCTION DEED OF TRUST

**MAXIMUM PRINCIPAL AMOUNT SECURED.** The Lien of this Deed of Trust shall not exceed at any one time $760,000.00 except as allowed under applicable Colorado law.

**THIS DEED OF TRUST** is dated January 16, 2007, among IRONBRIDGE HOMES, LLC, A COLORADO LIMITED LIABILITY COMPANY ("Grantor"); Alpine Bank, whose address is Alpine Bank Carbondale, 0350 Hwy 133, Carbondale, CO 81823 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and the Public Trustee of GARFIELD County, Colorado (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Grantor hereby irrevocably grants, transfers and assigns to Trustee for the benefit of Lender as Beneficiary all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "**Real Property**") located in GARFIELD County, State of Colorado:

LOT 67
IRONBRIDGE PLANNED UNIT DEVELOPMENT
PHASE II, FILINGS 1, 2 AND 3
ACCORDING TO THE PLAT RECORDED JULY 19, 2006, UNDER RECEPTION NO. 702420

COUNTY OF GARFIELD
STATE OF COLORADO

The Real Property or its address is commonly known as 1246 RIVER BEND WAY, GLENWOOD SPRINGS, CO 81601.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF GRANTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN GRANTOR AND LENDER OF EVEN DATE HEREWITH. ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

**CONSTRUCTION MORTGAGE.** This Deed of Trust is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of Colorado.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its

**Exhibit B - Lot 67**

Loan No: 0460259801

**DEED OF TRUST**
**(Continued)**

Page 2

agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**Construction Loan.** If some or all of the proceeds of the loan creating the indebtedness are to be used to construct or complete construction of any improvements on the Property, the improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Grantor shall pay in full all costs and expenses in connection with the work. Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Deed of Trust shall have priority over all possible liens, including those of material suppliers and workmen. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Colorado law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an

**Exhibit B - Lot 67**

Loan No: 0460259801

**DEED OF TRUST**
**(Continued)**

Page 3

endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and affect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Exhibit B - Lot 67**

Loan No: 0460259801

**DEED OF TRUST
(Continued)**

Page 4

---

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** Upon the full performance of all the obligations under the Note and this Deed of Trust, Trustee may, upon production of documents and fees as required under applicable law, release this Deed of Trust, and such release shall constitute a release of the lien for all such additional sums and expenditures made pursuant to this Deed of Trust. Lender agrees to cooperate with Grantor in obtaining such release and releasing the other collateral securing the Indebtedness. Any release fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to affect discharge of any lien.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance

**Exhibit B - Lot 67**

Loan No: 0460259801

**DEED OF TRUST**
**(Continued)**

Page 5

---

as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Foreclosure.** Lender shall have the right to cause all or any part of the Real Property, and Personal Property, if Lender decides to proceed against it as if it were real property, to be sold by the Trustee according to the laws of the State of Colorado as respects foreclosures against real property. The Trustee shall give notice in accordance with the laws of Colorado. The Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of the sale, including but not limited to Trustee's fees, attorneys' fees, and the cost of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled to the excess.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver. Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Sale of the Property.** In exercising its rights and remedies, Lender shall be free to designate on or before it files a notice of election and demand with the Trustee, that the Trustee sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. Upon any sale of the Property, whether made under a power of sale granted in this Deed of Trust or pursuant to judicial proceedings, if the holder of the Note is a purchaser at such sale, it shall be entitled to use and apply all, or any portion of, the indebtedness, for or in settlement or payment of all, or any portion of, the purchase price of the Property purchased, and, in such case, this Deed of Trust, the Note, and any documents evidencing expenditures secured by this Deed of Trust shall be presented to the person conducting the sale in order that the amount of indebtedness so used or applied may be credited thereon as having been paid.

**Attorneys' Fees; Expenses.** If Lender forecloses or institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** To the extent permitted by applicable law, Trustee shall have all of the rights and duties of Lender as set forth in this section.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the

**Exhibit B - Lot 67**

Loan No: 0460259801

### DEED OF TRUST
### (Continued)

Page 6

---

Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Colorado.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Garfield County, State of Colorado.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Colorado as to all indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Alpine Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means IRONBRIDGE HOMES LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means IRONBRIDGE HOMES LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Deed of Trust.

**Lender.** The word "Lender" means Alpine Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated January 16, 2007, **in the original principal amount of $760,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is January 15, 2008. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Exhibit B - Lot 67**

**DEED OF TRUST**
**(Continued)**

Loan No: 0460259801                                                                                      Page 7

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means the Public Trustee of GARFIELD County, Colorado.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

IRONBRIDGE HOMES LLC

By: _____
DIRK A. GOSDA, MANAGER of IRONBRIDGE HOMES LLC

_(Notary seal: NOTARY PUBLIC — ALICIA CRANDELL — STATE OF COLORADO)_

---

**CORPORATE ACKNOWLEDGMENT**

STATE OF _Colorado_                     )
                                        ) SS
COUNTY OF _Garfield_                     )

On this _21_ day of _February_, 20 _07_, before me, the undersigned Notary Public, personally appeared DIRK A. GOSDA, MANAGER of IRONBRIDGE HOMES LLC, and known to me to be an authorized agent of the corporation that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the corporation.

By _____         Residing at _____

Notary Public in and for the State of _Colorado_         My commission expires _8-3-10_

LASER PRO Lending, Ver. 5.30.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - CO G:\HAP\CFI\LPL\G01.FC TR-32243 PR-22

**Exhibit B - Lot 67**

Reception#: 742623
02/08/2008 11:59:16 AM Jean Alberico
1 of 2 Rec Fee:$11.00 Doc Fee:0.00 GARFIELD COUNTY CO

**RECORDATION REQUESTED BY:**
Alpine Bank, A Colorado Banking Corporation
Alpine Bank Carbondale
0350 Hwy 133
Carbondale, CO 81623

**WHEN RECORDED MAIL TO:**
Alpine Bank
400 7th Street South
Rifle, CO 81650

**SEND TAX NOTICES TO:**
IRONBRIDGE HOMES LLC
410 IRONBRIDGE DRIVE
GLENWOOD SPRINGS, CO 81601

FOR RECORDER'S USE ONLY

# 460259801

# MODIFICATION OF DEED OF TRUST

**THIS MODIFICATION OF DEED OF TRUST** dated January 15, 2008, is made and executed between **IRONBRIDGE HOMES, LLC, A COLORADO LIMITED LIABILITY COMPANY** ("Grantor") and Alpine Bank, A Colorado Banking Corporation, whose address is Alpine Bank Carbondale, 0350 Hwy 133, Carbondale, CO 81623 ("Lender").

**DEED OF TRUST.** Lender and Grantor have entered into a Deed of Trust dated January 16, 2007 (the "Deed of Trust") which has been recorded in GARFIELD County, State of Colorado, as follows:

**RECORDED MARCH 16, 2007 IN GARFIELD COUNTY COLORADO UNDER RECEPTION NO. 719125.**

**REAL PROPERTY DESCRIPTION.** The Deed of Trust covers the following described real property located in GARFIELD County, State of Colorado:

LOT 67
IRONBRIDGE PLANNED UNIT DEVELOPMENT
PHASE II, FILINGS 1, 2 AND 3
ACCORDING TO THE PLAT RECORDED JULY 19, 2008, UNDER RECEPTION NO. 702420
COUNTY OF GARFIELD
STATE OF COLORADO

The Real Property or its address is commonly known as 1246 RIVER BEND WAY, GLENWOOD SPRINGS, CO 81601.

**MODIFICATION.** Lender and Grantor hereby modify the Deed of Trust as follows:

RENEW LOAN TO A NEW MATURITY DATE OF JANUARY 15, 2009.

**CONTINUING VALIDITY.** Except as expressly modified above, the terms of the original Deed of Trust shall remain unchanged and in full force and effect. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Deed of Trust as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust (the "Note"). It is the intention of Lender to retain as liable all parties to the Deed of Trust and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Deed of Trust does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF DEED OF TRUST AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF DEED OF TRUST IS DATED JANUARY 15, 2008.**

**GRANTOR:**

IRONBRIDGE HOMES LLC

By: _____
DIRK A. GOSDA, Manager of IRONBRIDGE HOMES LLC

**LENDER:**

ALPINE BANK, A COLORADO BANKING CORPORATION

X _____
Authorized Officer

**Exhibit B - Lot 67**

763590 02/23/2009 03:29:26 PM Page 1 of 2
Jean Alberico, Garfield County, Colorado
Rec Fee: $11.00 Doc Fee: $0.00 eRecorded



RECORDATION REQUESTED BY:
   Alpine Bank, A Colorado Banking Corporation
   Alpine Bank Carbondale
   0350 Hwy 133
   Carbondale, CO 81623

WHEN RECORDED MAIL TO:
   Alpine Bank
   400 7th Street South
   Rifle, CO 81650

SEND TAX NOTICES TO:
   IRONBRIDGE HOMES LLC
   310 AABC
   ASPEN, CO 81611-2541

FOR RECORDER'S USE ONLY

0460259801 **MODIFICATION OF DEED OF TRUST**

## MODIFICATION OF DEED OF TRUST

**THIS MODIFICATION OF DEED OF TRUST** dated January 15, 2009, is made and executed between **IRONBRIDGE HOMES, LLC, A COLORADO LIMITED LIABILITY COMPANY** ("Grantor") and **Alpine Bank, A Colorado Banking Corporation**, whose address is **Alpine Bank Carbondale, 0350 Hwy 133, Carbondale, CO 81623** ("Lender").

**DEED OF TRUST.** Lender and Grantor have entered into a Deed of Trust dated January 16, 2007 (the "Deed of Trust") which has been recorded in GARFIELD County, State of Colorado, as follows:

**RECORDED MARCH 16, 2007 IN GARFIELD COUNTY COLORADO UNDER RECEPTION NO. 719125.**

**REAL PROPERTY DESCRIPTION.** The Deed of Trust covers the following described real property located in GARFIELD County, State of Colorado:

LOT 67
IRONBRIDGE PLANNED UNIT DEVELOPMENT
PHASE II, FILINGS 1, 2 AND 3
ACCORDING TO THE PLAT RECORDED JULY 19, 2006, UNDER RECEPTION NO. 702420
COUNTY OF GARFIELD
STATE OF COLORADO

The Real Property or its address is commonly known as 1246 RIVER BEND WAY, GLENWOOD SPRINGS, CO 81601.

**MODIFICATION.** Lender and Grantor hereby modify the Deed of Trust as follows:

EXTEND MATURITY DATE OF LOAN TO JANUARY 15, 2010.

**CONTINUING VALIDITY.** Except as expressly modified above, the terms of the original Deed of Trust shall remain unchanged and in full force and effect. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Deed of Trust as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust (the "Note"). It is the intention of Lender to retain as liable all parties to the Deed of Trust and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Deed of Trust does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF DEED OF TRUST AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF DEED OF TRUST IS DATED JANUARY 15, 2009.**

GRANTOR:

IRONBRIDGE HOMES LLC

By: _____
   DIRK A. GOSDA, Manager of IRONBRIDGE HOMES LLC

LENDER:

ALPINE BANK, A COLORADO BANKING CORPORATION

X _____
   Authorized Officer

**Exhibit B - Lot 67**



# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $640,725.00 | 01-16-2007 | 01-15-2008 | 0460258001 | 1A1 / 110 | 1001027 | 154 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Grantor:** IRONBRIDGE HOMES LLC (TIN: 20-1916183)
410 IRONBRIDGE DRIVE
GLENWOOD SPRINGS, CO 81601

**Lender:** Alpine Bank
Alpine Bank Carbondale
0350 Hwy 133
Carbondale, CO 81623
(970) 963-3040

---

**THIS COMMERCIAL SECURITY AGREEMENT** dated January 16, 2007, is made and executed between IRONBRIDGE HOMES LLC ("Grantor") and Alpine Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**ALL CONSTRUCTION MATERIALS NOW OWNED AND HEREAFTER ACQUIRED WHEREVER LOCATED**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Exhibit C - Lot 66**

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 0460258001                                                                                           Page 2

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase

**Exhibit C - Lot 66**

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Colorado Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver. Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For those purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not effect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's reasonable costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the reasonable costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State

Exhibit C - Lot 66

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Loan No: 0460258001                                                                                        Page 4

---

of Colorado.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Garfield County, State of Colorado.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means IRONBRIDGE HOMES LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means IRONBRIDGE HOMES LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means Alpine Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by IRONBRIDGE HOMES LLC in the principal amount of $640,725.00 dated January 16, 2007, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 16, 2007.**

**Exhibit C - Lot 66**

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 0460258001                                                                  Page 5

---

GRANTOR:

IRONBRIDGE HOMES LLC

By: _____
DIRK  A. GOSDA,  MANAGER  of  IRONBRIDGE
HOMES LLC

---

LASER PRO Lending, Ver. 5.33.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved.  GD  G:\VAP\PC\PALFILE\RJ.RC TR-30243  PR-32

**Exhibit C - Lot 66**

# COMMERCIAL SECURITY AGREEMENT



| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $760,000.00 | 01-16-2007 | 01-15-2008 | 0460259801 | 1A1 / 110 | 1001027 | 154 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Grantor: **IRONBRIDGE HOMES LLC (TIN: 20-1816183)**
410 IRONBRIDGE DRIVE
GLENWOOD SPRINGS, CO 81601

Lender: **Alpine Bank**
Alpine Bank Carbondale
0350 Hwy 133
Carbondale, CO 81623
(970) 963-3040

---

**THIS COMMERCIAL SECURITY AGREEMENT** dated January 16, 2007, is made and executed between IRONBRIDGE HOMES LLC ("Grantor") and Alpine Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**ALL CONSTRUCTION MATERIALS NOW OWNED AND HEREAFTER ACQUIRED WHEREVER LOCATED**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Exhibit C - Lot 67**

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 0460259801                                                                          Page 2

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to protect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

Default in Favor of Third Parties. Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase

**Exhibit C - Lot 67**

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 0460259801                                                                 Page 3

or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Colorado Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver. Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's reasonable costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the reasonable costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State

Exhibit C - Lot 67

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

of Colorado.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Garfield County, State of Colorado.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means IRONBRIDGE HOMES LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means IRONBRIDGE HOMES LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means Alpine Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by IRONBRIDGE HOMES LLC in the principal amount of $760,000.00 dated January 16, 2007, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 16, 2007.**

**Exhibit C - Lot 67**

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 0460259801                                                      Page 5

GRANTOR:

IRONBRIDGE HOMES LLC

By: _____

DIRK A. LaBUSDA, MANAGER of IRONBRIDGE
HOMES LLC

LASER PRO Lending, Ver. 5.33.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - CO  G:\HARPCPR\PLI\E40.FC  TR-20343  PR-22

**Exhibit C - Lot 67**

## UCC FINANCING STATEMENT

**E-Filed** *NOTICE:* *This "image" is merely a display of information that was filed electronically. It is not an image that was created by optically scanning a paper document. No such paper document was filed. Consequently, no copy of a paper document is available regarding this filing.*

*Questions? Contact the Business Division. For contact information, please visit the Secretary of State's web site.*

### SOS Reception Number: 2007F020936
**Date Filed: 02/28/2007 11:39:11**

### Filing Fee: $8.00

ABOVE SPACE FOR FILING OFFICE USE ONLY

A. NAME & PHONE OF CONTACT (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

[                              ]

[                              ]

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME**<br>**IRONBRIDGE HOMES LLC** | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS<br>**410 IRONBRIDGE DRIVE** | CITY<br>**GLENWOOD SPRINGS** | STATE<br>**CO** | POSTAL CODE<br>**81601** | COUNTRY |
|---|---|---|---|---|

| 1d. TAX ID#: SSN OR EIN<br>(OPTIONAL:**NOT REQUIRED**) | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION<br>**LLC** | 1f. JURISDICTION OF ORGANIZATION<br>**CO** | 1g. ORGANIZATIONAL ID#, if any<br>**20041343341** ⬜ NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID#: SSN OR EIN<br>(OPTIONAL:**NOT REQUIRED**) | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any<br>⬜ NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME<br>**ALPINE BANK** | | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS<br>**0350 HWY 133** | CITY<br>**CARBONDALE** | STATE<br>**CO** | POSTAL CODE<br>**81623** | COUNTRY |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:

**General Description**
**ALL CONSTRUCTION MATERIALS NOW OWNED AND HEREAFTER ACQUIRED WHEREVER LOCATED; WHETHER ANY OF THE FOREGOING IS OWNED NOW OR ACQUIRED LATER; ALL ACCESSIONS, ADDITIONS, REPLACEMENTS, AND SUBSTITUTIONS RELATING TO ANY OF THE FOREGOING; ALL RECORDS OF ANY KIND RELATING TO ANY OF THE FOREGOING; ALL PROCEEDS RELATING TO ANY OF THE FOREGOING (INCLUDING INSURANCE, GENERAL INTANGIBLES AND ACCOUNTS PROCEEDS).**

5. ALTERNATIVE DESIGNATION (if applicable): ⬜ LESSEE/LESSOR  ⬜ CONSIGNEE/CONSIGNOR  ⬜ BAILEE/BAILOR  ⬜ SELLER/BUYER  ⬜ AG LIEN  ⬜ NON-UCC FILING

6. ⬜ This FINANCING STATEMENT is to be filed (for record) in the REAL ESTATE RECORDS

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)  (Optional)
⬜ All Debtors   ⬜ Debtor 1   ⬜ Debtor 2

8. OPTIONAL FILER REFERENCE DATA
**LOAN #0460258001**

NATIONAL UCC FINANCING STATEMENT (FORM UCC1) - COLORADO (REV 7/16/2001)

**Exhibit D**

Reception#: 719136
03/16/2007 03:50:33 PM B:1903 P:0414 Jean Alberico
1 of 9 Rec Fee:$46.00 Doc Fee:0.00 GARFIELD COUNTY CO

## DEED OF TRUST AND SECURITY AGREEMENT

THIS DEED OF TRUST AND SECURITY AGREEMENT (this "Deed of Trust") is executed as of the 7th day of March, 2007, by **IRONBRIDGE HOMES, LLC**, a Colorado limited liability company ("Grantor"), whose address is 410 Ironbridge Drive, Glenwood Springs, CO 81601, Attention Dirk Gosda, and the PUBLIC TRUSTEE OF GARFIELD COUNTY, COLORADO (the "Trustee"), for the use and benefit of **LB ROSE RANCH LLC**, a Delaware limited liability company ("Beneficiary"), whose address is c/o The Broadmoor Hotel, 1 Lake Avenue, Colorado Springs, CO 80906, Attention: J. Thomas Schmidt.

WHEREAS, Grantor and Beneficiary have entered into that certain Purchase and Sale Agreement dated June 1, 2004, by and between Grantor, as Purchaser, and Beneficiary, as Seller (the "Contract"), pursuant to which Beneficiary agreed to sell and Grantor agreed to purchase certain real property situated in Garfield County, Colorado, a portion of which property is being conveyed as of the date hereof and is more particularly described as Lot 66, Ironbridge Planned Unit Development, Phase II, Filings 1, 2 and 3 according to the Amended Plat recorded July 19, 2006, under Reception No. 702420 in the Office of the Clerk and Recorder of Garfield, County, Colorado (the "Real Property"); and

WHEREAS, simultaneously with the execution of this Deed of Trust, Beneficiary is conveying the Real Property to Grantor pursuant to the terms and provisions of the Contract, and Grantor plans to construct a residential dwelling unit on the Property; and

WHEREAS, in connection with such conveyance of the Real Property to Grantor and as part consideration therefor, Grantor has executed for the benefit of Beneficiary a certain promissory note of even date herewith in the original principal amount of $340,000.00 (the "Note") payable in accordance with the terms of the Note; and

WHEREAS, Grantor desires to secure all obligations arising under the Note and related to the Deferred Land Price payable under the Contract by executing this Deed of Trust for the benefit of Beneficiary (capitalized terms used in this Deed of Trust and not otherwise defined herein shall have the meaning ascribed in the Contract).

NOW, THEREFORE, FOR AND IN CONSIDERATION OF THE PREMISES AND FOR THE PURPOSES HEREIN DESCRIBED, GRANTOR HEREBY IRREVOCABLY GRANTS, BARGAINS, SELLS, CONVEYS, TRANSFERS AND ASSIGNS TO TRUSTEE, ITS SUCCESSORS AND ASSIGNS, IN TRUST, WITH POWER OF SALE AND RIGHT OF ENTRY AND POSSESSION, all of Grantor's estate, right, title and interest in, to and under any and all of the following described property whether now owned or hereafter acquired (all of the following property which is covered by this Deed of Trust (i.e., in which Grantor has an ownership or other right, title or interest) is hereinafter collectively referred to as the "Property"), Grantor hereby grants to Beneficiary a security interest in that portion of the Property which is personal property, general intangibles and/or is otherwise covered by the Uniform Commercial Code of the State of Colorado, and Grantor hereby presently and absolutely assigns to

Return to: Broadmoor Development Company
Attention: Tom Schmidt
One Lake Avenue
Colorado Springs, CO 80906

**Exhibit E - Lot 66**

Reception#: 719136
03/16/2007 03:50.33 PM B:1903 P:0415 Jean Alberico
2 of 9 Rec Fee:$46.00 Doc Fee:0.00 GARFIELD COUNTY CO

Beneficiary all of Grantor's right, title and interest in and to that portion of the Property which is Rents and Profits (as hereinafter defined):

A.   The Real Property, together with all of the tenements, adherents, appendages, easements, rights, privileges, franchises and appurtenances thereunto belonging or in any way appertaining and all of the estate, right, title, interest, claim and demand whatsoever of Grantor therein or thereto, either at law or in equity, in possession or in expectancy, now or hereafter acquired;

B.   Any and all buildings, structures and improvements now or hereafter erected in or on the Real Property, including, but not limited to, the fixtures, attachments, appliances, equipment and other articles which are attached to such buildings, structures and improvements;

C.   All rights and interests of Grantor in, to and under: (1) any and all rents, royalties, bonuses, issues, profits, revenues, and incomes (collectively herein, the "Rents and Profits"); (2) any and all plans, specifications, maps, surveys, studies, and reports; (3) any and all permits, licenses, architectural, engineering and construction contracts, books of account, and insurance policies; and (4) any and all other documents, of whatever kind or character, relating to the use, construction upon, occupancy, leasing, sale or operation of the Property and the other property described above;

D.   All rights and interests of Grantor in any insurance and condemnation proceeds payable with respect to the Property;

E.   All of Grantor's right, title and interest appurtenant to the Real Property, including, without limitation, rights-of-way;

F.   Any and all water, ditch, well, and reservoir rights which are appurtenant to or which have been used in connection with the Real Property;

G.   Any and all minerals, crops, timber, trees, shrubs, flowers, and landscaping features now or hereafter located on, under or above the Real Property;

H.   All machinery, apparatus, equipment, fittings, fixtures (whether actually or constructively attached, and including all trade, domestic, and ornamental fixtures) now or hereafter located in, upon, or under the Real Property or the improvements and used or usable in connection with any present or future operation thereof, including but not limited to all heating, air conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, cooking, and communications apparatus; boilers, water heaters, ranges, furnaces, and burners; appliances; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; refrigerators; attached cabinets; partitions; ducts and compressors; rugs and carpets; draperies; and all additions thereto and replacements therefor;

2

Reception#: 719136
03/16/2007 03:50:33 PM B:1903 P:0416 Jean Alberico
3 of 9 Rec Fee:$46.00 Doc Fee:0.00 GARFIELD COUNTY CO

I.     All development rights associated with the Real Property, whether previously or subsequently transferred to the Real Property from other real property or now or hereafter susceptible of transfer from the Real Property to other real property;

J.     All of Grantor's rights now existing or subsequently acquired or created as "Declarant" under any covenants relating to the projects to be located on the Real Property ("Declarant Rights"); and

K.     All other or greater rights and interests of every nature in said Property and in the possession or use thereof and income therefrom, whether now owned or subsequently acquired by Grantor.

FOR THE PURPOSE OF SECURING all of Grantor's obligations to Beneficiary arising under the Note and Grantor's obligations under the Contract with respect to the Deferred Land Price (collectively the "Obligations"). In case of Grantor's default in the performance of the Obligations or the terms of this Deed of Trust, then upon Beneficiary's filing notice of election and demand for sale, the Trustee, after advertising notice of the sale, shall sell the Property in the manner provided by law in effect at the time of filing the notice and demand, at public auction for cash, at any proper place designated in the notice of sale. Out of the proceeds of the sale, the Trustee shall retain or pay first all fees, charges and costs and all moneys advanced for taxes, insurance and assessments, or on any prior encumbrance, with interest thereon at the rate of fifteen percent (15%) per annum, and pay Beneficiary any amounts due under the Note, rendering the overplus (if any) to Grantor; and after the expiration of the time of redemption, the Trustee shall execute and deliver to the purchaser a deed to the property sold. Beneficiary may purchase the Property or any part thereof at such sale.

PROVIDED, HOWEVER, that if Grantor shall perform or cause to be performed all of the Obligations at the time and in the manner stipulated therein and shall pay or cause to be paid all other sums payable hereunder and all other indebtedness secured hereby, then in such case, the estate, right, title and interest of Trustee and Beneficiary in the Property shall cease, and upon written notice from Beneficiary that all Obligations secured hereby have been satisfied, cancellation of the Note, and surrender to Trustee of this Deed of Trust, the Note marked "Paid in Full" or such other information satisfactory to Trustee and payment of Trustee's fees and costs and all recording costs, Trustee shall release this Deed of Trust and the Property shall become wholly free of the liens, security interests, conveyances and assignments created and evidenced hereby.

1.     Security Agreement Fixture Filing and Financing Statements. This instrument is both a real property deed of trust and a security agreement under the Uniform Commercial Code, as adopted by the State of Colorado (the "UCC"). To the extent any of the Property described in this Deed of Trust now or hereafter constitutes rights in action or personal property to which the UCC applies, this instrument constitutes a security agreement and financing statement and is intended, when recorded, to create a perfected security interest in such property in favor of Beneficiary. Some of the Property is or will become fixtures. This instrument shall be effective as a financing statement filed as a fixture filing with respect to all fixtures included in the

3

**Exhibit E - Lot 66**

Property and, when filed for record in, among other places, the real estate records of the County of Garfield, Colorado, shall create a perfected security interest in such property in favor of Beneficiary. This Deed of Trust shall be self-operative with respect to the Property, but Grantor agrees to execute and deliver, on demand, such financing statements and other instruments as Beneficiary may request in order to impose or confirm the lien hereof more specifically upon the Property and to pay all recording and/or filing fees associated therewith. For purposes of treating this Deed of Trust as a security agreement and financing statement, Beneficiary shall be deemed to be the secured party and Grantor shall be deemed to be the debtor.

2. Assignment of Rents and Profits. All of the Rents and Profits and other benefits derived from the Property or arising from the use or enjoyment of any portion thereof or from any lease or agreement pertaining thereto, and all rights that Grantor may have against any tenant under any leases or any subtenants or occupants of any part of the Property are hereby absolutely and unconditionally assigned to Beneficiary to be applied by Beneficiary in payment of the indebtedness owing to Beneficiary. Although the assignment in this section is an absolute assignment and not merely a security interest, Beneficiary's rights as to the assignment shall be exercised only upon the occurrence of an Event of Default described in Paragraph 12 below.

3. Other Liens and Charges. Grantor shall perform all of Grantor's obligations under any other deeds of trust, mortgages and any other liens, whether or not senior in priority to this Deed of Trust. Grantor shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property by making payment directly to the payee thereof before the same become due and payable and shall deliver to Beneficiary such evidence of the payment thereof as Beneficiary may require. If Grantor fails to make such payments, then Beneficiary may pay them, together with all costs and penalties thereon, at Grantor's expense. In the event Beneficiary exercises its right to cure Grantor's default under any senior indebtedness pursuant to the terms of the Subrogation Agreement entered into contemporaneously herewith, Grantor agrees that Beneficiary may cure such default, at Grantor's expense. Any and all such payments made by Beneficiary, together with interest thereon at the rate of fifteen percent (15%) per annum from the date paid by Beneficiary until actually paid by Grantor, shall be immediately paid by Grantor on demand and shall be secured by this Deed of Trust.

4. Insurance. Grantor shall maintain the insurance required in the Contract until this Deed of Trust has been fully released, shall provide copies to Beneficiary of the required current policies, shall name Beneficiary as mortgagee on all such policies and shall provide, before such policies expire, evidence that the premiums for such policies have been paid.

5. Maintenance of Property; Development Work. Grantor shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall perform all of Grantor's obligations under any declarations, covenants, by-laws, rules or other documents governing the use, ownership or development of the Property. Development work pursuant to the Plan, including, but not limited to, grading and installation of Buildings, access ways and utilities, shall not be considered waste or default under this Deed of Trust. Grantor will not suffer any lien of mechanics or materialmen to attach to any part of the Property. Nothing in this paragraph shall prevent Beneficiary from recovering expenses, damages or costs (including without limitation, attorneys' fees) incurred by Beneficiary as a

4

Reception#: 719136
03/16/2007 03:50:33 PM B:1903 P:0418 Jean Alberico
5 of 9 Rec Fee:$46.00 Doc Fee:0.00 GARFIELD COUNTY CO

result of fraud or intentional misrepresentation by Grantor or as a result of waste committed on the Property or damages to the Property caused by the gross negligence or willful misconduct of Grantor.

6. Change of Name. Grantor will not change the name under which Grantor does business, or adopt or begin doing business under any other name or assumed or trade name, without first notifying Beneficiary of Grantor's intention to do so and delivering to Beneficiary such executed modifications or supplements to this Deed of Trust (and to any financing statement which may be filed in connection herewith) as Beneficiary may require.

7. Performance of Defaulted Obligations. Beneficiary may make any payment or perform any other obligation under this Deed of Trust, the Note or other loan documents relating to the Property which Grantor has failed to make or perform, and Grantor hereby irrevocably appoints Beneficiary as the true and lawful attorney-in-fact for Grantor to make any such payment and perform any such obligation in the name of Grantor. All payments made and expenses (including attorneys' fees) incurred by Beneficiary in this connection, together with interest thereon at the default rate of interest of fifteen percent (15%) per annum, from the date paid or incurred until repaid, will be part of the Obligations secured by this Deed of Trust and will be immediately due and payable by Grantor to Beneficiary.

8. Hazardous Materials - Definitions. For the purpose of this Deed of Trust, Grantor, Beneficiary and Trustee agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified:

a. "Governmental Authority" shall mean the United States, the state, the county, the city, or any other political subdivision in which the Property is located, and any other political subdivision, agency, or instrumentality exercising jurisdiction over Grantor or the Property.

b. "Governmental Requirements" shall mean all laws, ordinances, rules and regulations of any Governmental Authority applicable to Grantor or the Property.

c. "Hazardous Materials" shall mean (i) "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976 (42 U.S.C.A. §§ 6901, et seq.), as amended from time to time, and regulations promulgated hereunder; (ii) any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C.A. §§ 9601, et seq.) ("CERCLA"), as amended from time to time, and regulations promulgated hereunder; (iii) asbestos; (iv) polychlorinated biphenyls; (v) underground storage tanks, whether empty, filled or partially filled with any substance; (vi) any substance the presence of which on the Property is prohibited by any Governmental Requirements; and (vii) any other substance which, by any Governmental Requirements, requires special handling or notification of any federal, state or local governmental entity in its collection, storage, treatment or disposal.

**Exhibit E - Lot 66**

Reception#: 719136
03/16/2007 03:50:33 PM B:1903 P:0419 Jean Alberico
6 of 9 Rec Fee:$46.00 Doc Fee:0.00 GARFIELD COUNTY CO

d.  "Hazardous Materials Contamination" shall mean the contamination (whether presently existing or hereafter occurring) of the Buildings, soil or ground water on or of the Property by Hazardous Materials.

9.  Grantor's Warranties.  Grantor hereby represents and warrants that:

a.  Grantor has not caused or permitted any Hazardous Materials to be placed, held, located or disposed of on, under or at the Property or any part thereof;

b.  No part of the Property shall be used for the disposal, storage, treatment, processing or other handling of Hazardous Materials;

c.  The use which Grantor intends to make of the Property will not result in the disposal or release of any Hazardous Materials on, in or to the Property;

d.  Grantor shall not cause any violation of any Governmental Requirements, nor permit any tenant of any portion of the Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Property.

10.  Grantor's Covenants.  Grantor agrees to (a) give notice to Beneficiary immediately upon Grantor's acquiring knowledge of the presence of any Hazardous Materials on the Property or of any Hazardous Materials Contamination with a full description thereof; and (b) in the event that Grantor has violated Section 9 above, promptly comply with any Governmental Requirements requiring the removal, treatment or disposal of such Hazardous Material or Hazardous Materials Contamination and provide Beneficiary with satisfactory evidence of such compliance.

11.  Beneficiary's Right to Remove Hazardous Materials.  Beneficiary shall have the right, but not the obligation, prior or subsequent to an Event of Default, without in any way limiting Beneficiary's other rights and remedies under this Deed of Trust, to enter onto the Property or to take such other actions as it deems necessary or advisable to clean up, remove, resolve or minimize the impact of, or otherwise deal with, any Hazardous Materials or Hazardous Materials Contamination on the Property following receipt of any notice from any person or entity assessing the existence of any Hazardous Materials or Hazardous Materials Contamination pertaining to the Property or any part thereof which, if true, could result in an order, suit, imposition of a lien on the Property, or other action and/or which, in Beneficiary's reasonable opinion, could jeopardize Beneficiary's security under this Deed of Trust.  All costs and expenses paid or incurred by Beneficiary in the exercise of any such rights shall be indebtedness secured by this Deed of Trust and shall be payable by Grantor upon demand.

12.  Events of Default.  The occurrence of any one of the following shall be a default hereunder ("Event of Default") on the date which is ten (10) days after delivery of written notice from Beneficiary to Grantor, except for the Event of Default listed in subparagraph (a):

a.  Failure to pay any amounts owed or required to be paid under the Note or this Deed of Trust within ten (10) days after the date such payment is due.

6

Reception#: 719136
03/16/2007 03:50:33 PM B:1903 P:0420 Jean Alberico
7 of 9 Rec Fee:$46.00 Doc Fee:0.00 GARFIELD COUNTY CO

b. Any event of default by Grantor under the Contract, including but not limited to with respect to payment of the Deferred Land Price, failure to timely comply with the Takedown Schedule or failure to timely Commence or Complete Construction as required by the Contract, following applicable cure periods.

c. If Grantor (1) does not pay its debts as they become due or admits in writing its inability to pay its debts or makes a general assignment for the benefit of creditors; or (2) commences, or involuntarily becomes the subject of, any case, proceeding or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors; or (3) has a trustee, receiver, custodian or other similar official appointed for or take possession of all or any part of the Real Property or any other of its property, or has any court take jurisdiction of any other of its property through attachment, sequestration or similar writ.

d. Title to all or any part of the Real Property shall become vested in any party other than Grantor, whether by operation of law or otherwise, including without limitation, the transfer of any beneficial ownership interest in Grantor, unless such transfer is permitted by and effected in accordance with the provisions of Section 12.2 of the Contract.

e. If the holder of any lien, security interest or assignment on the Property institutes foreclosure or other proceedings for the enforcement of its remedies any instrument, document or agreement evidencing or securing such lien, security interest or assignment.

f. Notice of default given by any other lender, including the lender of the Loan(s), to Grantor under any instruments evidencing, guaranteeing, governing or securing any third party indebtedness, or the acceleration of any third party indebtedness.

13. Remedies. If an Event of Default shall occur, Beneficiary may exercise any one or more of the following remedies without notice:

a. Beneficiary may foreclose this Deed of Trust.

b. Beneficiary may enforce the assignment of rents and leases granted in Paragraph 2 above.

c. Beneficiary may institute a suit in equity or at law, whether for any foreclosure hereunder, in aid of the execution of any power granted in this Deed of Trust, or for the sale of the Property under the judgment of decree of any court or courts of competent jurisdiction.

d. Beneficiary may enter upon and take possession of all or any part of the Property and may exclude Grantor and all persons claiming under Grantor and its or their agents or servants, and holding the same, Beneficiary may use, administer, manage, operate and control the Real Property and may exercise all rights and powers of Grantor, including the Declarant Rights, in the name, place and stead of Grantor or otherwise, as Beneficiary shall deem best; and in the exercise of any of the foregoing rights and powers, Beneficiary shall not be liable to

7

**Exhibit E - Lot 66**

Reception#: 719136
03/16/2007 03:50:33 PM B:1903 P:0421 Jean Alberico
8 of 9 Rec Fee:$46.00 Doc Fee:0.00 GARFIELD COUNTY CO

Grantor for any loss or damage thereby sustained unless due solely to the willful misconduct or gross negligence of Beneficiary.

   e. Beneficiary shall be entitled, as a matter of absolute right and without regard to the value of any security or the solvency of Grantor, to the appointment of a receiver for the Property upon ex parte application to any court of competent jurisdiction.

   f. Beneficiary may exercise any and all other rights, remedies and recourse granted under the Note or this Deed of Trust.

  14. <u>Condemnation</u>. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Beneficiary as herein provided.  However, all of the rights of Grantor and Beneficiary hereunder with respect to such proceeds are subject to the rights of any holder of a prior deed of trust.  In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Deed of Trust, with the excess, if any, paid to Grantor.  In the event of a partial taking of the Property, the proceeds shall be divided between payment upon the sums secured by this Deed of Trust and payment to Grantor, in the same ratio as the amount of the sums secured by this Deed of Trust immediately prior to the date of taking bears to Grantor's equity in the Property immediately prior to the date of taking.  Grantor's equity means the fair market value less the amount of sums secured by both this Deed of Trust and all prior liens (except taxes).

  15. <u>Miscellaneous</u>.

   a. No waiver of any default on the part of Grantor or breach of any of the provisions of this Deed of Trust or the Note shall be considered a waiver of any other or subsequent default or breach, and no delay or omission in exercising or enforcing the rights and powers herein granted shall be construed as a waiver of such rights and powers.

   b. If any provision of this Deed of Trust is held to be illegal, invalid or unenforceable under present or future laws effective while this Deed of Trust is in effect, the legality, validity and enforceability of the remaining provisions of this Deed of Trust shall not be affected thereby.

   c. This Deed of Trust shall be governed by the laws of the State of Colorado.

**Exhibit E - Lot 66**

Reception#: 719136
03/16/2007 03:50:33 PM B:1903 P:0422 Jean Alberico
9 of 9 Rec Fee:$46.00 Doc Fee:0.00 GARFIELD COUNTY CO

IN WITNESS WHEREOF, Grantor has executed this Deed of Trust as of the day and
year first above written.

IRONBRIDGE HOMES, LLC, a Colorado limited
liability company

By: _____

Name: _Darbe Gosda_  _Paul Bimbaluk_

Title: _VP - Sales_  _Controller_

STATE OF COLORADO        )
                         ) ss.
COUNTY OF _Garfield_     )

The foregoing instrument was acknowledged before me this _3rd_ day of _March_ ,
200_7_ , by _Darbe Gosda_ _Paul Bombaluky_ , _controller_  of  IRONBRIDGE
HOMES, LLC, a Colorado limited liability company.  _as authorized signatories of_

WITNESS my hand and official seal.
My commission expires: _____

_____
Notary Public  _KM Young_

9

**Exhibit E - Lot 66**

Reception#: 719127
03/16/2007 03:35:34 PM B:1903 P:0364 Jean Alberico
1 of 10 Rec Fee:$51.00 Doc Fee:0.00 GARFIELD COUNTY CO

# DEED OF TRUST AND SECURITY AGREEMENT

THIS DEED OF TRUST AND SECURITY AGREEMENT (this "Deed of Trust") is executed as of the 7th day of March, 2007, by **IRONBRIDGE HOMES, LLC**, a Colorado limited liability company ("Grantor"), whose address is 410 Ironbridge Drive, Glenwood Springs, CO 81601, Attention Dirk Gosda, and the PUBLIC TRUSTEE OF GARFIELD COUNTY, COLORADO (the "Trustee"), for the use and benefit of **LB ROSE RANCH LLC**, a Delaware limited liability company ("Beneficiary"), whose address is c/o The Broadmoor Hotel, 1 Lake Avenue, Colorado Springs, CO 80906, Attention: J. Thomas Schmidt.

WHEREAS, Grantor and Beneficiary have entered into that certain Purchase and Sale Agreement dated June 1, 2004, by and between Grantor, as Purchaser, and Beneficiary, as Seller (the "Contract"), pursuant to which Beneficiary agreed to sell and Grantor agreed to purchase certain real property situated in Garfield County, Colorado, a portion of which property is being conveyed as of the date hereof and is more particularly described as Lot 67, Ironbridge Planned Unit Development, Phase II, Filings 1, 2 and 3 according to the Amended Plat recorded July 19, 2006, under Reception No. 702420 in the Office of the Clerk and Recorder of Garfield, County, Colorado (the "Real Property"); and

WHEREAS, simultaneously with the execution of this Deed of Trust, Beneficiary is conveying the Real Property to Grantor pursuant to the terms and provisions of the Contract, and Grantor plans to construct a residential dwelling unit on the Property; and

WHEREAS, in connection with such conveyance of the Real Property to Grantor and as part consideration therefor, Grantor has executed for the benefit of Beneficiary a certain promissory note of even date herewith in the original principal amount of $350,000.00 (the "Note") payable in accordance with the terms of the Note; and

WHEREAS, Grantor desires to secure all obligations arising under the Note and related to the Deferred Land Price payable under the Contract by executing this Deed of Trust for the benefit of Beneficiary (capitalized terms used in this Deed of Trust and not otherwise defined herein shall have the meaning ascribed in the Contract).

NOW, THEREFORE, FOR AND IN CONSIDERATION OF THE PREMISES AND FOR THE PURPOSES HEREIN DESCRIBED, GRANTOR HEREBY IRREVOCABLY GRANTS, BARGAINS, SELLS, CONVEYS, TRANSFERS AND ASSIGNS TO TRUSTEE, ITS SUCCESSORS AND ASSIGNS, IN TRUST, WITH POWER OF SALE AND RIGHT OF ENTRY AND POSSESSION, all of Grantor's estate, right, title and interest in, to and under any and all of the following described property whether now owned or hereafter acquired (all of the following property which is covered by this Deed of Trust (i.e., in which Grantor has an ownership or other right, title or interest) is hereinafter collectively referred to as the "Property"), Grantor hereby grants to Beneficiary a security interest in that portion of the Property which is personal property, general intangibles and/or is otherwise covered by the Uniform Commercial Code of the State of Colorado, and Grantor hereby presently and absolutely assigns to



Return
to:    Broadmoor Development Company
       Attention: Tom Schmidt
       One Lake Avenue
       Colorado Springs, CO 80906

**Exhibit E - Lot 67**

Reception#: 719127
03/16/2007 03:35:34 PM B:1903 P:0365 Jean Alberico
2 of 10 Rec Fee:$51.00 Doc Fee:0.00 GARFIELD COUNTY CO

Beneficiary all of Grantor's right, title and interest in and to that portion of the Property which is Rents and Profits (as hereinafter defined):

A.    The Real Property, together with all of the tenements, adherents, appendages, easements, rights, privileges, franchises and appurtenances thereunto belonging or in any way appertaining and all of the estate, right, title, interest, claim and demand whatsoever of Grantor therein or thereto, either at law or in equity, in possession or in expectancy, now or hereafter acquired;

B.    Any and all buildings, structures and improvements now or hereafter erected in or on the Real Property, including, but not limited to, the fixtures, attachments, appliances, equipment and other articles which are attached to such buildings, structures and improvements;

C.    All rights and interests of Grantor in, to and under: (1) any and all rents, royalties, bonuses, issues, profits, revenues, and incomes (collectively herein, the "Rents and Profits"); (2) any and all plans, specifications, maps, surveys, studies, and reports; (3) any and all permits, licenses, architectural, engineering and construction contracts, books of account, and insurance policies; and (4) any and all other documents, of whatever kind or character, relating to the use, construction upon, occupancy, leasing, sale or operation of the Property and the other property described above;

D.    All rights and interests of Grantor in any insurance and condemnation proceeds payable with respect to the Property;

E.    All of Grantor's right, title and interest appurtenant to the Real Property, including, without limitation, rights-of-way;

F.    Any and all water, ditch, well, and reservoir rights which are appurtenant to or which have been used in connection with the Real Property;

G.    Any and all minerals, crops, timber, trees, shrubs, flowers, and landscaping features now or hereafter located on, under or above the Real Property;

H.    All machinery, apparatus, equipment, fittings, fixtures (whether actually or constructively attached, and including all trade, domestic, and ornamental fixtures) now or hereafter located in, upon, or under the Real Property or the improvements and used or usable in connection with any present or future operation thereof, including but not limited to all heating, air conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, cooking, and communications apparatus; boilers, water heaters, ranges, furnaces, and burners; appliances; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; refrigerators; attached cabinets; partitions; ducts and compressors; rugs and carpets; draperies; and all additions thereto and replacements therefor;

2

**Exhibit E - Lot 67**

Reception#: 719127
03/16/2007 03:35:34 PM B:1903 P:0366 Jean Alberico
3 of 10 Rec Fee:$51.00 Doc Fee:0.00 GARFIELD COUNTY CO

I.      All development rights associated with the Real Property, whether previously or subsequently transferred to the Real Property from other real property or now or hereafter susceptible of transfer from the Real Property to other real property;

J.      All of Grantor's rights now existing or subsequently acquired or created as "Declarant" under any covenants relating to the projects to be located on the Real Property ("Declarant Rights"); and

K.      All other or greater rights and interests of every nature in said Property and in the possession or use thereof and income therefrom, whether now owned or subsequently acquired by Grantor.

FOR THE PURPOSE OF SECURING all of Grantor's obligations to Beneficiary arising under the Note and Grantor's obligations under the Contract with respect to the Deferred Land Price (collectively the "Obligations"). In case of Grantor's default in the performance of the Obligations or the terms of this Deed of Trust, then upon Beneficiary's filing notice of election and demand for sale, the Trustee, after advertising notice of the sale, shall sell the Property in the manner provided by law in effect at the time of filing the notice and demand, at public auction for cash, at any proper place designated in the notice of sale. Out of the proceeds of the sale, the Trustee shall retain or pay first all fees, charges and costs and all moneys advanced for taxes, insurance and assessments, or on any prior encumbrance, with interest thereon at the rate of fifteen percent (15%) per annum, and pay Beneficiary any amounts due under the Note, rendering the overplus (if any) to Grantor; and after the expiration of the time of redemption, the Trustee shall execute and deliver to the purchaser a deed to the property sold. Beneficiary may purchase the Property or any part thereof at such sale.

PROVIDED, HOWEVER, that if Grantor shall perform or cause to be performed all of the Obligations at the time and in the manner stipulated therein and shall pay or cause to be paid all other sums payable hereunder and all other indebtedness secured hereby, then in such case, the estate, right, title and interest of Trustee and Beneficiary in the Property shall cease, and upon written notice from Beneficiary that all Obligations secured hereby have been satisfied, cancellation of the Note, and surrender to Trustee of this Deed of Trust, the Note marked "Paid in Full" or such other information satisfactory to Trustee and payment of Trustee's fees and costs and all recording costs, Trustee shall release this Deed of Trust and the Property shall become wholly free of the liens, security interests, conveyances and assignments created and evidenced hereby.

1.      Security Agreement Fixture Filing and Financing Statements. This instrument is both a real property deed of trust and a security agreement under the Uniform Commercial Code, as adopted by the State of Colorado (the "UCC"). To the extent any of the Property described in this Deed of Trust now or hereafter constitutes rights in action or personal property to which the UCC applies, this instrument constitutes a security agreement and financing statement and is intended, when recorded, to create a perfected security interest in such property in favor of Beneficiary. Some of the Property is or will become fixtures. This instrument shall be effective as a financing statement filed as a fixture filing with respect to all fixtures included in the

3

**Exhibit E - Lot 67**

Reception#: 719127
03/16/2007 03:35:34 PM B:1903 P:0367 Jean Alberico
4 of 10 Rec Fee:$51.00 Doc Fee:0.00 GARFIELD COUNTY CO

Property and, when filed for record in, among other places, the real estate records of the County of Garfield, Colorado, shall create a perfected security interest in such property in favor of Beneficiary. This Deed of Trust shall be self-operative with respect to the Property, but Grantor agrees to execute and deliver, on demand, such financing statements and other instruments as Beneficiary may request in order to impose or confirm the lien hereof more specifically upon the Property and to pay all recording and/or filing fees associated therewith. For purposes of treating this Deed of Trust as a security agreement and financing statement, Beneficiary shall be deemed to be the secured party and Grantor shall be deemed to be the debtor.

2. Assignment of Rents and Profits. All of the Rents and Profits and other benefits derived from the Property or arising from the use or enjoyment of any portion thereof or from any lease or agreement pertaining thereto, and all rights that Grantor may have against any tenant under any leases or any subtenants or occupants of any part of the Property are hereby absolutely and unconditionally assigned to Beneficiary to be applied by Beneficiary in payment of the indebtedness owing to Beneficiary. Although the assignment in this section is an absolute assignment and not merely a security interest, Beneficiary's rights as to the assignment shall be exercised only upon the occurrence of an Event of Default described in Paragraph 12 below.

3. Other Liens and Charges. Grantor shall perform all of Grantor's obligations under any other deeds of trust, mortgages and any other liens, whether or not senior in priority to this Deed of Trust. Grantor shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property by making payment directly to the payee thereof before the same become due and payable and shall deliver to Beneficiary such evidence of the payment thereof as Beneficiary may require. If Grantor fails to make such payments, then Beneficiary may pay them, together with all costs and penalties thereon, at Grantor's expense. In the event Beneficiary exercises its right to cure Grantor's default under any senior indebtedness pursuant to the terms of the Subrogation Agreement entered into contemporaneously herewith, Grantor agrees that Beneficiary may cure such default, at Grantor's expense. Any and all such payments made by Beneficiary, together with interest thereon at the rate of fifteen percent (15%) per annum from the date paid by Beneficiary until actually paid by Grantor, shall be immediately paid by Grantor on demand and shall be secured by this Deed of Trust.

4. Insurance. Grantor shall maintain the insurance required in the Contract until this Deed of Trust has been fully released, shall provide copies to Beneficiary of the required current policies, shall name Beneficiary as mortgagee on all such policies and shall provide, before such policies expire, evidence that the premiums for such policies have been paid.

5. Maintenance of Property; Development Work. Grantor shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall perform all of Grantor's obligations under any declarations, covenants, by-laws, rules or other documents governing the use, ownership or development of the Property. Development work pursuant to the Plan, including, but not limited to, grading and installation of Buildings, access ways and utilities, shall not be considered waste or default under this Deed of Trust. Grantor will not suffer any lien of mechanics or materialmen to attach to any part of the Property. Nothing in this paragraph shall prevent Beneficiary from recovering expenses, damages or costs (including without limitation, attorneys' fees) incurred by Beneficiary as a

4

Reception#: 719127
03/16/2007 03:35:34 PM B:1903 P:0368 Jean Alberico
5 of 10 Rec Fee:$51.00 Doc Fee:0.00 GARFIELD COUNTY CO

result of fraud or intentional misrepresentation by Grantor or as a result of waste committed on the Property or damages to the Property caused by the gross negligence or willful misconduct of Grantor.

6. <u>Change of Name</u>.  Grantor will not change the name under which Grantor does business, or adopt or begin doing business under any other name or assumed or trade name, without first notifying Beneficiary of Grantor's intention to do so and delivering to Beneficiary such executed modifications or supplements to this Deed of Trust (and to any financing statement which may be filed in connection herewith) as Beneficiary may require.

7. <u>Performance of Defaulted Obligations</u>.  Beneficiary may make any payment or perform any other obligation under this Deed of Trust, the Note or other loan documents relating to the Property which Grantor has failed to make or perform, and Grantor hereby irrevocably appoints Beneficiary as the true and lawful attorney-in-fact for Grantor to make any such payment and perform any such obligation in the name of Grantor.  All payments made and expenses (including attorneys' fees) incurred by Beneficiary in this connection, together with interest thereon at the default rate of interest of fifteen percent (15%) per annum, from the date paid or incurred until repaid, will be part of the Obligations secured by this Deed of Trust and will be immediately due and payable by Grantor to Beneficiary.

8. <u>Hazardous Materials - Definitions</u>.  For the purpose of this Deed of Trust, Grantor, Beneficiary and Trustee agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified:

a.  "Governmental Authority" shall mean the United States, the state, the county, the city, or any other political subdivision in which the Property is located, and any other political subdivision, agency, or instrumentality exercising jurisdiction over Grantor or the Property.

b.  "Governmental Requirements" shall mean all laws, ordinances, rules and regulations of any Governmental Authority applicable to Grantor or the Property.

c.  "Hazardous Materials" shall mean (i) "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976 (42 U.S.C.A. §§ 6901, <u>et seq.</u>), as amended from time to time, and regulations promulgated hereunder; (ii) any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C.A. §§ 9601, <u>et seq.</u>) ("CERCLA"), as amended from time to time, and regulations promulgated hereunder; (iii) asbestos; (iv) polychlorinated biphenyls; (v) underground storage tanks, whether empty, filled or partially filled with any substance; (vi) any substance the presence of which on the Property is prohibited by any Governmental Requirements; and (vii) any other substance which, by any Governmental Requirements, requires special handling or notification of any federal, state or local governmental entity in its collection, storage, treatment or disposal.

5

**Exhibit E - Lot 67**

Reception#: 719127
03/16/2007 03:35:34 PM B:1903 P:0369 Jean Alberico
6 of 10 Rec Fee:$51.00 Doc Fee:0.00 GARFIELD COUNTY CO

    d.  "Hazardous Materials Contamination" shall mean the contamination (whether presently existing or hereafter occurring) of the Buildings, soil or ground water on or of the Property by Hazardous Materials.

    9.  <u>Grantor's Warranties</u>.  Grantor hereby represents and warrants that:

    a.  Grantor has not caused or permitted any Hazardous Materials to be placed, held, located or disposed of on, under or at the Property or any part thereof;

    b.  No part of the Property shall be used for the disposal, storage, treatment, processing or other handling of Hazardous Materials;

    c.  The use which Grantor intends to make of the Property will not result in the disposal or release of any Hazardous Materials on, in or to the Property;

    d.  Grantor shall not cause any violation of any Governmental Requirements, nor permit any tenant of any portion of the Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Property.

    10.  <u>Grantor's Covenants</u>.  Grantor agrees to (a) give notice to Beneficiary immediately upon Grantor's acquiring knowledge of the presence of any Hazardous Materials on the Property or of any Hazardous Materials Contamination with a full description thereof; and (b) in the event that Grantor has violated Section 9 above, promptly comply with any Governmental Requirements requiring the removal, treatment or disposal of such Hazardous Material or Hazardous Materials Contamination and provide Beneficiary with satisfactory evidence of such compliance.

    11.  <u>Beneficiary's Right to Remove Hazardous Materials</u>.  Beneficiary shall have the right, but not the obligation, prior or subsequent to an Event of Default, without in any way limiting Beneficiary's other rights and remedies under this Deed of Trust, to enter onto the Property or to take such other actions as it deems necessary or advisable to clean up, remove, resolve or minimize the impact of, or otherwise deal with, any Hazardous Materials or Hazardous Materials Contamination on the Property following receipt of any notice from any person or entity assessing the existence of any Hazardous Materials or Hazardous Materials Contamination pertaining to the Property or any part thereof which, if true, could result in an order, suit, imposition of a lien on the Property, or other action and/or which, in Beneficiary's reasonable opinion, could jeopardize Beneficiary's security under this Deed of Trust.  All costs and expenses paid or incurred by Beneficiary in the exercise of any such rights shall be indebtedness secured by this Deed of Trust and shall be payable by Grantor upon demand.

    12.  <u>Events of Default</u>.  The occurrence of any one of the following shall be a default hereunder ("Event of Default") on the date which is ten (10) days after delivery of written notice from Beneficiary to Grantor, except for the Event of Default listed in subparagraph (a):

    a.  Failure to pay any amounts owed or required to be paid under the Note or this Deed of Trust within ten (10) days after the date such payment is due.

<div align="center">6</div>

<div align="right">**Exhibit E - Lot 67**</div>

Reception#: 719127
03/16/2007 03:35:34 PM B:1903 P:0370 Jean Alberico
7 of 10 Rec Fee:$51.00 Doc Fee:0.00 GARFIELD COUNTY CO

b. Any event of default by Grantor under the Contract, including but not limited to with respect to payment of the Deferred Land Price, failure to timely comply with the Takedown Schedule or failure to timely Commence or Complete Construction as required by the Contract, following applicable cure periods.

c. If Grantor (1) does not pay its debts as they become due or admits in writing its inability to pay its debts or makes a general assignment for the benefit of creditors; or (2) commences, or involuntarily becomes the subject of, any case, proceeding or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors; or (3) has a trustee, receiver, custodian or other similar official appointed for or take possession of all or any part of the Real Property or any other of its property, or has any court take jurisdiction of any other of its property through attachment, sequestration or similar writ.

d. Title to all or any part of the Real Property shall become vested in any party other than Grantor, whether by operation of law or otherwise, including without limitation, the transfer of any beneficial ownership interest in Grantor, unless such transfer is permitted by and effected in accordance with the provisions of Section 12.2 of the Contract.

e. If the holder of any lien, security interest or assignment on the Property institutes foreclosure or other proceedings for the enforcement of its remedies any instrument, document or agreement evidencing or securing such lien, security interest or assignment.

f. Notice of default given by any other lender, including the lender of the Loan(s), to Grantor under any instruments evidencing, guaranteeing, governing or securing any third party indebtedness, or the acceleration of any third party indebtedness.

13. <u>Remedies</u>. If an Event of Default shall occur, Beneficiary may exercise any one or more of the following remedies without notice:

a. Beneficiary may foreclose this Deed of Trust.

b. Beneficiary may enforce the assignment of rents and leases granted in Paragraph 2 above.

c. Beneficiary may institute a suit in equity or at law, whether for any foreclosure hereunder, in aid of the execution of any power granted in this Deed of Trust, or for the sale of the Property under the judgment of decree of any court or courts of competent jurisdiction.

d. Beneficiary may enter upon and take possession of all or any part of the Property and may exclude Grantor and all persons claiming under Grantor and its or their agents or servants, and holding the same, Beneficiary may use, administer, manage, operate and control the Real Property and may exercise all rights and powers of Grantor, including the Declarant Rights, in the name, place and stead of Grantor or otherwise, as Beneficiary shall deem best; and in the exercise of any of the foregoing rights and powers, Beneficiary shall not be liable to

7

**Exhibit E - Lot 67**

Reception#: 719127
03/16/2007 03:35:34 PM B:1903 P:0371 Jean Alberico
8 of 10 Rec Fee:$51.00 Doc Fee:0.00 GARFIELD COUNTY CO

Grantor for any loss or damage thereby sustained unless due solely to the willful misconduct or gross negligence of Beneficiary.

   e.  Beneficiary shall be entitled, as a matter of absolute right and without regard to the value of any security or the solvency of Grantor, to the appointment of a receiver for the Property upon ex parte application to any court of competent jurisdiction.

   f.  Beneficiary may exercise any and all other rights, remedies and recourse granted under the Note or this Deed of Trust.

   14. <u>Condemnation</u>.    The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Beneficiary as herein provided.  However, all of the rights of Grantor and Beneficiary hereunder with respect to such proceeds are subject to the rights of any holder of a prior deed of trust.  In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Deed of Trust, with the excess, if any, paid to Grantor.  In the event of a partial taking of the Property, the proceeds shall be divided between payment upon the sums secured by this Deed of Trust and payment to Grantor, in the same ratio as the amount of the sums secured by this Deed of Trust immediately prior to the date of taking bears to Grantor's equity in the Property immediately prior to the date of taking.  Grantor's equity means the fair market value less the amount of sums secured by both this Deed of Trust and all prior liens (except taxes).

   15. <u>Miscellaneous</u>.

   a.  No waiver of any default on the part of Grantor or breach of any of the provisions of this Deed of Trust or the Note shall be considered a waiver of any other or subsequent default or breach, and no delay or omission in exercising or enforcing the rights and powers herein granted shall be construed as a waiver of such rights and powers.

   b.  If any provision of this Deed of Trust is held to be illegal, invalid or unenforceable under present or future laws effective while this Deed of Trust is in effect, the legality, validity and enforceability of the remaining provisions of this Deed of Trust shall not be affected thereby.

   c.  This Deed of Trust shall be governed by the laws of the State of Colorado.

8

**Exhibit E - Lot 67**

Reception#: 719127
03/16/2007 03:35:34 PM B:1903 P:0372 Jean Alberico
9 of 10 Rec Fee:$51.00 Doc Fee:0.00 GARFIELD COUNTY CO

IN WITNESS WHEREOF, Grantor has executed this Deed of Trust as of the day and year first above written.

IRONBRIDGE HOMES, LLC, a Colorado limited liability company

By: _____  _____

Name: _Darbe Gosda_  _Paul Bombalicky_

Title: _VP-Sales_  _Controller_

STATE OF COLORADO )
                         ) ss.
COUNTY OF _Garfield_ )

The foregoing instrument was acknowledged before me this _2ND_ day of _March_, 200_7_, by _Darbe Gosda_ _&_ _Paul Bombalicky, Controller_ of IRONBRIDGE HOMES, LLC, a Colorado limited liability company. _authorized signatories_

WITNESS my hand and official seal.
My commission expires: _____

_____
Notary Public

9

Reception#: 719127
03/16/2007 03:35:34 PM B:1903 P:0373 Jean Alberico
10 of 10 Rec Fee:$51.00 Doc Fee:0.00 GARFIELD COUNTY CO

# EXHIBIT A

LOT 67
IRONBRIDGE PLANNED UNIT DEVELOPMENT
PHASE II, FILINGS 1, 2 AND 3
ACCORDING TO THE PLAT RECORDED JULY 19, 2006, UNDER RECEPTION NO. 702420

COUNTY OF GARFIELD
STATE OF COLORADO

*Form 952 LEGAL.LETTER (03/04)*        *GB63000011*

**Exhibit E - Lot 67**

Reception#: 719137
03/16/2007 03:50:33 PM B:1903 P:0423 Jean Alberico
1 of 7 Rec Fee:$36.00 Doc Fee:0.00 GARFIELD COUNTY CO

## SUBORDINATION AGREEMENT

**THIS SUBORDINATION AGREEMENT** (this "<u>Agreement</u>") is made as of the 7th day of March, 2007 by and between **ALPINE BANK** ("<u>Senior Lender</u>") and **LB ROSE RANCH LLC**, a Delaware limited liability company ("<u>Subordinate Lender</u>")

### RECITALS

**WHEREAS**, Ironbridge Homes, LLC, a Colorado limited liability company, by its deed of trust dated March 7, 2007 and recorded _03/16/2007_ at Reception No. _719136_ of the real estate records of the County of Garfield, Colorado, did grant and convey a lien upon the real property therein described (the "<u>Property</u>") to the Public Trustee of the County of Garfield, Colorado, for the benefit of Subordinate Lender, to secure payment of the indebtedness mentioned therein ("<u>Subordinate Indebtedness</u>"); and

**WHEREAS**, Ironbridge Homes, LLC, a Colorado limited liability company (the "<u>Borrower</u>"), by its deed of trust dated _01/16/2007_ and recorded _03/16/2007_ at Reception No. _719134_ of the real estate records of the County of Garfield, Colorado, did grant and convey a lien upon the Property to the Public Trustee of the County of Garfield, Colorado, for the benefit of Senior Lender, to secure payment of the indebtedness mentioned therein ("<u>Construction Indebtedness</u>"); and

**WHEREAS**, the Subordinate Lender has agreed to subordinate the lien of the Subordinate Indebtedness to the lien of the Construction Indebtedness.

### AGREEMENT

**NOW, THEREFORE,** in consideration of the above recitals and the provisions set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    <u>Subordination</u>.   Subordinate Lender does hereby agree and declare that the Subordinate Indebtedness, and the terms and provisions thereof, and the lien created and perfected thereby, covering the Property, which is also described on <u>Exhibit A</u> attached hereto, shall be, and is hereby made subordinate, subject and inferior to the Construction Indebtedness, the rights and interests of the beneficiary thereunder, and the lien created and perfected thereby, in the Property.   In the event of sale upon default under the terms and provisions of the Construction Indebtedness, then and in that event it is understood and agreed that the Construction Indebtedness shall have the same validity, effect and priority of lien as if executed, delivered and recorded prior to the execution, delivery and recordation of the Subordinate Indebtedness for the benefit of the Subordinate Lender.

2.    <u>Default</u>.   Senior Lender hereby agrees that in the event of default under the Construction Indebtedness or the acceleration of any payments due thereunder, Senior Lender shall deliver written notice to Subordinate Lender of such default and Subordinate Lender, at its



Return    Broadmoor Development Company
Attention: Tom Schmidt
to ·    One Lake Avenue
Colorado Springs, CO 80906

**Exhibit F - Lot 66**

Reception#: 719137
03/16/2007 03:50:33 PM B 1903 P 0424 Jean Alberico
2 of 7 Rec Fee:$36.00 Doc Fee 0.00 GARFIELD COUNTY CO

option, shall have the right, but not the obligation, to purchase the Construction Indebtedness or, if permitted under the loan documentation for the Construction Indebtedness, to cure Borrower's default within the period ending upon the later of (a) the cure period permitted by such loan documentation, and (b) twenty (20) days following the written notice to Subordinate Lender. Such notice shall be sent to Subordinate Lender contemporaneously with the sending of such notice to Borrower if and when sent under the applicable documents evidencing the Senior Indebtedness.

3.    Construction Costs.  Senior Lender and Subordinate Lender do hereby agree that Borrower shall be permitted to draw funds under the Construction Indebtedness only for bona fide third party costs of carry and construction of the Property.  Senior Lender shall not permit Borrower to use any loan proceeds to make payments to affiliates or distributions to equity.

4.    Full Force and Effect.  Except as provided in this Agreement, the terms and provisions of the Subordinate Indebtedness and the Construction Indebtedness and the liens created and perfected thereby shall remain in full force and effect.

5.    Binding Effect; Other.  This Agreement shall be a continuing agreement, shall be binding upon and shall inure to the benefit of the parties hereto from time to time and their respective successors and assigns.  Any waiver or amendment hereunder must be evidenced by a signed writing of the party to be bound thereby, and shall only be effective in the specific instance.  This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado.  The parties agree that any actions arising out of or in connection with this Agreement shall be tried and litigated in the state district court located in Garfield County, Colorado.  The headings in this Agreement are for convenience of reference only, and shall not alter or otherwise affect the meaning hereof.

6.    Benefited Parties.  All of the understandings, covenants, and agreements contained herein are solely for the benefit of the Senior Lender and the Subordinate Lender, their respective successors and assigns, and future holders of the Senior Indebtedness and the Subordinate Indebtedness, respectively, and there are no other parties which are intended to be benefited, in any way, by this Agreement.

7.    No Limitation Intended.  Nothing contained in this Agreement is intended to or shall affect or limit, in any way, the rights that the Senior Lender and the Subordinate Lender may have with respect to any third parties.

8.    Notice.  Whenever it is provided herein that any notice, demand, request, consent, approval, declaration, or other communication shall or may be given to or served upon any of the parties hereto, or whenever any of the parties desires to give or serve upon the other communication with respect to this Agreement, each such notice, demand, request, consent, approval, declaration, or other communication shall e in writing and shall be delivered either in person or by registered or certified United States mail, postage prepaid, by facsimile, or by recognized overnight courier service, addressed as follows:

**Exhibit F - Lot 66**

Reception#: 719137
03/16/2007 03:58:33 PM B:1903 P:0425 Jean Alberico
3 of 7 Rec Fee:$36.00 Doc Fee:0.00 GARFIELD COUNTY CO

If to Subordinate Lender:        PRIMARY NOTICE PARTY:

LB Rose Ranch LLC
c/o The Broadmoor Hotel
1 Lake Avenue
Colorado Springs, CO 80906
Attention: J. Thomas Schmidt
Telephone: (719) 471-6102
Facsimile: (719) 471-6119


SECONDARY NOTICE PARTY:

Wear, Travers & Perkins, P.C.
1000 S. Frontage Road West, Suite 200
Vail, Colorado, 81657
Attention: Richard D. Travers, Esq.
Telephone: (970) 476-7646
Facsimile: (970) 476-7118

If to Senior Lender:        PRIMARY NOTICE PARTY:

Alpine Bank
0350 Highway 133
Carbondale, CO 81623
Attention: Richard Fuller
Telephone: (970) 963-3040
Facsimile: (970) 963-9116


9.    Severability.    Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

10.    Complete Agreement.    This Agreement constitutes the complete agreement and understanding of Senior Lender and Subordinate Lender, and supersedes all prior or contemporaneous oral and written negotiations, agreements and understandings, express or implied, with respect to the subject matter hereof.

11.    Counterparts.    This Agreement may be executed in any number of counterparts, and by the parties each in separate counterparts, each of which shall be an original, but all of which shall together constitute one and the same Agreement.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

**Exhibit F - Lot 66**

Reception#: 719137
03/16/2007 03:50:33 PM B:1903 P:0426 Jean Alberico
4 of 7 Rec Fee:$36.00 Doc Fee:0.00 GARFIELD COUNTY CO

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first herein above set forth.

**SENIOR LENDER:**

ALPINE BANK

By: _____
Name: Farrah Roberts
Title: VP

STATE OF COLORADO     )
                      ) ss.
COUNTY OF Garfield    )

The foregoing instrument was acknowledged before me this 16th day of February _____, 2007, by Farrah Roberts as Vice President of ALPINE BANK.

WITNESS my hand and official seal.
My commission expires: 8-3-10 _____

_____
**Notary Public**

*[Notary seal: NOTARY PUBLIC — ALICIA CRANDELL — STATE OF COLORADO]*

**SUBORDINATE LENDER:**

LB ROSE RANCH LLC, a Delaware limited liability company
By: PAMI LLC, a Delaware limited liability company, its managing member

By: _____
Name: Marguerite M. Brogan
Title: Authorized Signatory

**Exhibit F - Lot 66**

Reception#: 719137
03/16/2007 03.50.33 PM B:1903 P:0427 Jean Alberico
5 of 7 Rec Fee:$36.00 Doc Fee:0.00 GARFIELD COUNTY CO

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first herein above set forth.

**SENIOR LENDER:**

ALPINE BANK

By: _____

Name: _____

Title: _____

STATE OF COLORADO          )
                                               ) ss.
COUNTY OF _____          )

The foregoing instrument was acknowledged before me this _____ day of_____ _____, 2007, by _____ as _____ of ALPINE BANK.

WITNESS my hand and official seal.
        My commission expires:_____

                                        _____
                                        **Notary Public**

**SUBORDINATE LENDER:**

LB ROSE RANCH LLC, a Delaware limited liability company
By: PAMI LLC, a Delaware limited liability company, its managing member

        By:_____
                Name: Marguerite M. Brogan
                Title: Authorized Signatory

**Exhibit F - Lot 66**

Reception#: 719137
03/15/2007 03:50:33 PM B:1903 P:0428 Jean Alberico
6 of 7 Rec Fee $36.00 Doc Fee:0.00 GARFIELD COUNTY CO

STATE OF NEW YORK       )
                           ) ss.

COUNTY OF NEW YORK     )

The foregoing instrument was acknowledged before me this 14 day of March
_____, 2007, by Marguerite M. Brogan as Authorized Signatory of PAMI LLC, a Delaware
limited liability company, as managing member of LB Rose Ranch LLC, a Delaware limited
liability company.

WITNESS my hand and official seal.
My commission expires:_____

_____
Notary Public

MARIBEL RUIZ
Notary Public, State of New York
No. 01RU6081733
Qualified in County of New York
Commission Expires October 8, 2010

**Exhibit F - Lot 66**



Reception#: 719137
03/16/2007 03:50:33 PM B:1903 P:0429 Jean Alberico
7 of 7 Rec Fee:$36.00 Doc Fee:0.00 GARFIELD COUNTY CO

# EXHIBIT A

LOT 66
IRONBRIDGE PLANNED UNIT DEVELOPMENT
PHASE II, FILINGS 1, 2 AND 3
ACCORDING TO THE PLAT RECORDED JULY 19, 2006, UNDER RECEPTION NO. 702420

COUNTY OF GARFIELD
STATE OF COLORADO

Form 952 LEGAL.LETTER (03/04)        JB63000010

**Exhibit F - Lot 66**

Reception# 719128
03/16/2007 03:35:34 PM B:1903 P:0374 Jean Alberico
1 of 7 Rec Fee:$36.00 Doc Fee:0.00 GARFIELD COUNTY CO

## SUBORDINATION AGREEMENT

**THIS SUBORDINATION AGREEMENT** (this "Agreement") is made as of the 7th day of March, 2007 by and between **ALPINE BANK** ("Senior Lender") and **LB ROSE RANCH LLC**, a Delaware limited liability company ("Subordinate Lender")

### RECITALS

**WHEREAS,** Ironbridge Homes, LLC, a Colorado limited liability company, by its deed of trust dated March 7, 2007 and recorded March 16, 2007 at Reception No. 719127 of the real estate records of the County of Garfield, Colorado, did grant and convey a lien upon the real property therein described (the "Property") to the Public Trustee of the County of Garfield, Colorado, for the benefit of Subordinate Lender, to secure payment of the indebtedness mentioned therein ("Subordinate Indebtedness"); and

**WHEREAS,** Ironbridge Homes, LLC, a Colorado limited liability company (the "Borrower"), by its deed of trust dated Jan. 16, 2007, and recorded March 16, 2007 at Reception No. 719125 of the real estate records of the County of Garfield, Colorado, did grant and convey a lien upon the Property to the Public Trustee of the County of Garfield, Colorado, for the benefit of Senior Lender, to secure payment of the indebtedness mentioned therein ("Construction Indebtedness"); and

**WHEREAS,** the Subordinate Lender has agreed to subordinate the lien of the Subordinate Indebtedness to the lien of the Construction Indebtedness.

### AGREEMENT

**NOW, THEREFORE,** in consideration of the above recitals and the provisions set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    _Subordination._  Subordinate Lender does hereby agree and declare that the Subordinate Indebtedness, and the terms and provisions thereof, and the lien created and perfected thereby, covering the Property, which is also described on **Exhibit A** attached hereto, shall be, and is hereby made subordinate, subject and inferior to the Construction Indebtedness, the rights and interests of the beneficiary thereunder, and the lien created and perfected thereby, in the Property.  In the event of sale upon default under the terms and provisions of the Construction Indebtedness, then and in that event it is understood and agreed that the Construction Indebtedness shall have the same validity, effect and priority of lien as if executed, delivered and recorded prior to the execution, delivery and recordation of the Subordinate Indebtedness for the benefit of the Subordinate Lender.

2.    _Default._  Senior Lender hereby agrees that in the event of default under the Construction Indebtedness or the acceleration of any payments due thereunder, Senior Lender shall deliver written notice to Subordinate Lender of such default and Subordinate Lender, at its



Return to:  Broadmoor Development Company
Attention: Tom Schmidt
One Lake Avenue
Colorado Springs, CO 80906

**Exhibit F - Lot 67**

Reception#: 719128
03/16/2007 03:35:34 PM B:1903 P:0375 Jean Alberico
2 of 7 Rec Fee:$36.00 Doc Fee:0.00 GARFIELD COUNTY CO

option, shall have the right, but not the obligation, to purchase the Construction Indebtedness or, if permitted under the loan documentation for the Construction Indebtedness, to cure Borrower's default within the period ending upon the later of (a) the cure period permitted by such loan documentation, and (b) twenty (20) days following the written notice to Subordinate Lender. Such notice shall be sent to Subordinate Lender contemporaneously with the sending of such notice to Borrower if and when sent under the applicable documents evidencing the Senior Indebtedness.

3.   Construction Costs.  Senior Lender and Subordinate Lender do hereby agree that Borrower shall be permitted to draw funds under the Construction Indebtedness only for bona fide third party costs of carry and construction of the Property.  Senior Lender shall not permit Borrower to use any loan proceeds to make payments to affiliates or distributions to equity.

4.   Full Force and Effect.  Except as provided in this Agreement, the terms and provisions of the Subordinate Indebtedness and the Construction Indebtedness and the liens created and perfected thereby shall remain in full force and effect.

5.   Binding Effect; Other.  This Agreement shall be a continuing agreement, shall be binding upon and shall inure to the benefit of the parties hereto from time to time and their respective successors and assigns. Any waiver or amendment hereunder must be evidenced by a signed writing of the party to be bound thereby, and shall only be effective in the specific instance. This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado. The parties agree that any actions arising out of or in connection with this Agreement shall be tried and litigated in the state district court located in Garfield County, Colorado. The headings in this Agreement are for convenience of reference only, and shall not alter or otherwise affect the meaning hereof.

6.   Benefited Parties.  All of the understandings, covenants, and agreements contained herein are solely for the benefit of the Senior Lender and the Subordinate Lender, their respective successors and assigns, and future holders of the Senior Indebtedness and the Subordinate Indebtedness, respectively, and there are no other parties which are intended to be benefited, in any way, by this Agreement.

7.   No Limitation Intended. Nothing contained in this Agreement is intended to or shall affect or limit, in any way, the rights that the Senior Lender and the Subordinate Lender may have with respect to any third parties.

8.   Notice.  Whenever it is provided herein that any notice, demand, request, consent, approval, declaration, or other communication shall or may be given to or served upon any of the parties hereto, or whenever any of the parties desires to give or serve upon the other communication with respect to this Agreement, each such notice, demand, request, consent, approval, declaration, or other communication shall e in writing and shall be delivered either in person or by registered or certified United States mail, postage prepaid, by facsimile, or by recognized overnight courier service, addressed as follows:

**Exhibit F - Lot 67**

Reception#: 719128
03/16/2007 03.35.34 PM B 1903 P 0376 Joan Alberico
3 of 7 Rec Fee $36.00 Doc Fee 0.00 GARFIELD COUNTY CO

If to Subordinate Lender:    PRIMARY NOTICE PARTY:

LB Rose Ranch LLC
c/o The Broadmoor Hotel
1 Lake Avenue
Colorado Springs, CO 80906
Attention: J. Thomas Schmidt
Telephone: (719) 471-6102
Facsimile: (719) 471-6119

SECONDARY NOTICE PARTY:

Wear, Travers & Perkins, P.C.
1000 S. Frontage Road West, Suite 200
Vail, Colorado, 81657
Attention: Richard D. Travers, Esq.
Telephone: (970) 476-7646
Facsimile: (970) 476-7118

If to Senior Lender:    PRIMARY NOTICE PARTY:

Alpine Bank
0350 Highway 133
Carbondale, CO 81623
Attention: Richard Fuller
Telephone: (970) 963-3040
Facsimile: (970) 963-9116

9.    Severability.    Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

10.    Complete Agreement.    This Agreement constitutes the complete agreement and understanding of Senior Lender and Subordinate Lender, and supersedes all prior or contemporaneous oral and written negotiations, agreements and understandings, express or implied, with respect to the subject matter hereof.

11.    Counterparts.    This Agreement may be executed in any number of counterparts, and by the parties each in separate counterparts, each of which shall be an original, but all of which shall together constitute one and the same Agreement.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

**Exhibit F - Lot 67**

Reception#: 719128
03/16/2007 03:35:34 PM B:1903 P:0377 Jean Alberico
4 of 7 Rec Fee:$36.00 Doc Fee:0.00 GARFIELD COUNTY CO

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first herein above set forth.

**SENIOR LENDER:**

ALPINE BANK

By: _____
Name: _Farrah Roberts_
Title: _Vice President_

STATE OF COLORADO                )
                                 ) ss.
COUNTY OF _Garfield_             )

The foregoing instrument was acknowledged before me this _26_ day of _February_ _____, 2007, by _Farrah Roberts_ as _Vice President_ of ALPINE BANK.

WITNESS my hand and official seal.
My commission expires: _8-1-10_ _____

_____
**Notary Public**

*(Notary seal: NOTARY PUBLIC / ALICIA CRANDELL / STATE OF COLORADO)*

**SUBORDINATE LENDER:**

LB ROSE RANCH LLC, a Delaware limited liability company
By: PAMI LLC, a Delaware limited liability company, its managing member

By: _____
Name: Marguerite M. Brogan
Title: Authorized Signatory

**Exhibit F - Lot 67**

Reception#: 719128
03/16/2007 03:35:34 PM B 1903 P 0378 Jean Alberico
5 of 7 Rec Fee:$36.00 Doc Fee:0.00 GARFIELD COUNTY CO

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first herein above set forth.

**SENIOR LENDER:**

ALPINE BANK

By: _____
Name: _____
Title: _____

STATE OF COLORADO          )
                           ) ss.
COUNTY OF _____        )

The foregoing instrument was acknowledged before me this _____ day of_____ _____, 2007, by _____ as _____ of ALPINE BANK.

WITNESS my hand and official seal.
My commission expires:_____

_____
**Notary Public**

**SUBORDINATE LENDER:**

LB ROSE RANCH LLC, a Delaware limited liability company
By: PAMI LLC, a Delaware limited liability company, its managing member

By: _____
Name: Marguerite M. Brogan
Title: Authorized Signatory

**Exhibit F - Lot 67**

Reception#: 719128
03/16/2007 03:35:34 PM B:1903 P:0379 Jean Alberico
6 of 7 Rec Fee:$36.00 Doc Fee:0.00 GARFIELD COUNTY CO

STATE OF NEW YORK          )
                           ) ss.
COUNTY OF NEW YORK         )

    The foregoing instrument was acknowledged before me this ___14___ day of _March_
_____, 2007, by Marguerite M. Brogan as Authorized Signatory of PAMI LLC, a Delaware
limited liability company, as managing member of LB Rose Ranch LLC, a Delaware limited
liability company.

    WITNESS my hand and official seal.
    My commission expires:_____

                                      _____
                                      Notary Public

                            MARIBEL RUIZ
                  Notary Public, State of New York
                  No. 01RU6141763
                  Qualified in County of New York
                  Commission Expires October 8, 2010

**Exhibit F - Lot 67**

Reception#: 719128
03/16/2007 03:35:34 PM B:1903 P:0380 Jean Alberico
7 of 7 Rec Fee:$36.00 Doc Fee:0.00 GARFIELD COUNTY CO

## EXHIBIT A

LOT 67
IRONBRIDGE PLANNED UNIT DEVELOPMENT
PHASE II, FILINGS 1, 2 AND 3
ACCORDING TO THE PLAT RECORDED JULY 19, 2006, UNDER RECEPTION NO. 702420

COUNTY OF GARFIELD
STATE OF COLORADO

Form 952 LEGAL.LETTER (03/04)      CB63000011

**Exhibit F - Lot 67**

File No. 0000686  Page #1

# INVOICE

**FROM:**

Jane McCollor

McCollor Residential Appraisals

PO Box 3283

Glenwood Springs, CO 81602

**Telephone Number:** (970)945-4752    **Fax Number:** (970)945-4752

| INVOICE NUMBER |
|---|
| 0000686 |
| **DATE** |
| 2/20/2010 |

**TO:**

Alpine Bank Mortgage

400 7th Street South

Rifle, CO 81650

**Telephone Number:**     **Fax Number:**

**Alternate Number:**     **E-Mail:**

| REFERENCE |
|---|
| **Internal Order #:**  0000686 |
| **Lender Case #:** |
| **Client File #:** |
| **Main File # on form:**  0000686 |
| **Other File # on form:** |
| **Federal Tax ID:** |
| **Employer ID:** |

## DESCRIPTION

**Lender:** Alpine Bank Mortgage    **Client:** Alpine Bank Mortgage

**Purchaser/Borrower:** Ironbridge Homes, LLC

**Property Address:** 1270 Riverbend Way

**City:** Glenwood Springs

**County:** Garfield    **State:** CO    **Zip:** 81601

**Legal Description:** Subdivision: Ironbridge PUD Ph II Filing 1,2&3 Lot 66

| FEES | AMOUNT |
|---|---|
| Summary | 500.00 |
| Thank you.  I appreciate your business. | |
| **SUBTOTAL** | 500.00 |

| PAYMENTS | AMOUNT |
|---|---|
| **Check #:**    **Date:**    **Description:** | |
| **Check #:**    **Date:**    **Description:** | |
| **Check #:**    **Date:**    **Description:** | |
| **SUBTOTAL** | 0.00 |
| **TOTAL DUE** $ | 500.00 |

**Exhibit G - Lot 66**

# RESIDENTIAL APPRAISAL REPORT



## McCollor Residential Appraisals

| | |
|---|---|
| **Property Location:** | 1270 Riverbend Way |
| | Subdivision: Ironbridge PUD Ph II Filing 1,2&3 Lot 66 |
| | Glenwood Springs, CO 81601 |
| **Borrower:** | Ironbridge Homes, LLC |
| **Client:** | Alpine Bank Mortgage |
| | 400 7th Street South |
| | Rifle, CO  81650 |
| **Effective Date:** | 2/17/2010 |
| **Prepared By:** | Jane McCollor |
| | Certified Residential Appraiser |

McCollor Residential Appraisals
PO Box 3283
Glenwood Springs, CO 81602

Ph/Fax: (970)945-4752

| Borrower/Client | Ironbridge Homes, LLC | | | | File No. | 0000686 |
| Property Address | 1270 Riverbend Way | | | | | |
| City | Glenwood Springs | County | Garfield | State | CO | Zip Code | 81601 |
| Lender | Alpine Bank Mortgage | | | | | |

## TABLE OF CONTENTS



Invoice ........................................................................................................................................................................ 1
Cover Page ................................................................................................................................................................. 2
Cover Letter ............................................................................................................................................................... 3
URAR .......................................................................................................................................................................... 5
Additional Comparables 4-6 ....................................................................................................................................... 11
Market Conditions Addendum to the Appraisal Report ............................................................................................. 12
Subject Photos ........................................................................................................................................................... 13
Subject Photos Interior .............................................................................................................................................. 14
Comparable Photos 1-3 .............................................................................................................................................. 15
Comparable Photos 4-6 .............................................................................................................................................. 16
Building Sketch (Page - 1) .......................................................................................................................................... 17
Location Map .............................................................................................................................................................. 18
USPAP Identification .................................................................................................................................................. 19
Credentials of Appraiser ............................................................................................................................................ 20
Addendum ................................................................................................................................................................... 21
Addendum ................................................................................................................................................................... 22

File No. 0000686 Page #3

File No. 0000686

# McCollor Residential Appraisals
PO Box 3283
Glenwood Springs, CO  81602
Ph/Fax(970)945-4752
mcjaynes@comcast.net

Alpine Bank
400 7th St. South
Rifle, CO  81650

February 20, 2010

Re:  1246 Riverbend Way
      Glenwood Springs, CO  81601

Borrower:  Ironbridge Homes, LLC

Dear Sir/Ms:

    At your request I have inspected the above-referenced property for the purpose of estimating market value of the Subject Property as defined by the Office of Thrift Supervision (OTS) and the Financial Institutions Reform, Recovery and enforcement Act of 1989 (FIRREA).

    This appraisal report communicates the results of a Complete Appraisal of the Subject Property.  It is a Summary Report, which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(b) of the Uniform Standards of Professional Practice for a Summary Report.  This appraisal is intended to conform to the requirements of the Uniform Standards of Professional Appraisal Practice, FIRREA and those of the FDIC, FNMA and FHLMC.  The attached report contains the description, analysis and synopsis of the supporting data for the conclusion and final estimate of value together with photographs, building sketch and map.

    Based on my analysis and observation of the Subject Property and Comparables, the market value estimate of the above referenced Subject Property as of the Effective Date of February 17, 2010 is:

$ 840,000
EIGHT HUNDRED AND FORTY THOUSAND DOLLARS

Respectfully submitted,
Jane McCollor
CR40014964

# Uniform Residential Appraisal Report

File # 0000686

File No. 0000686 | Page #5

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| | |
|---|---|
| Property Address 1270 Riverbend Way | City Glenwood Springs   State CO   Zip Code 81601 |
| Borrower Ironbridge Homes, LLC   Owner of Public Record Ironbridge Homes, LLC | County Garfield |

Legal Description Subdivision: Ironbridge PUD Ph II Filing 1,2&3 Lot 66

| | | |
|---|---|---|
| Assessor's Parcel # 239501429066 | Tax Year 2009 | R.E. Taxes $ 5,009.56 |
| Neighborhood Name South Glenwood Springs | Map Reference R043450 | Census Tract n/a |

Occupant ☐ Owner ☐ Tenant ☒ Vacant   Special Assessments $ None known   ☒ PUD   HOA $ 272   ☐ per year ☒ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe)

Lender/Client Alpine Bank Mortgage   Address 400 7th Street South, Rifle, CO 81650

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s). Glenwood Springs MLS; current asking price $ 875,000; original asking price $ 1,158,000; DOM 1210; verified 2/14/2010

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. n/a

## CONTRACT

Contract Price $ n/a   Date of Contract   Is the property seller the owner of public record? ☐ Yes ☐ No   Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | | Property Values ☐ Increasing ☐ Stable ☒ Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit 66 % | |
| Built-Up ☐ Over 75% ☒ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☐ In Balance ☒ Over Supply | | | 350 Low | new | 2-4 Unit 2 % | |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | | Marketing Time ☐ Under 3 mths ☐ 3-6 mths ☒ Over 6 mths | | | 1.5mill High | 25 | Multi-Family 2 % | |
| Neighborhood Boundaries South GWS is approximately bordered on the N by the int of SGrandAve&Hwy 82, on the S by Cattle Crk, on the E by Missouri Hgts, on the W by natural topography | | | | | | 550 Pred. | 5 | Commercial 10 % | |
| | | | | | | | | Other 20 % | |

Neighborhood Description The nbh is a mixed use suburban area on the southern outskirts of GWS. In addition to SFRs there is light industrial, retail, multi-family and manufactured homes. The SFRs vary from older, less well-maintained to lge, custom homes of good quality construction, well maintained with large lots, Roaring Fork River frontage/views of Mt. Sopris. Ironbridge(Subj Prop) is a golf crse,commcenter subdivision.

Market Conditions (including support for the above conclusions) The Land Title Co mkt analysis for 2009 show 11 mos thruout the yr with transactions and dollars down from 2008 in the dbl digits.The only mo with decreases in these categories from 2008 in the single digit was December.The number of transactions was down 3%,the dollar amt down 9%.For the entire yr the no of transactions was down 60%,dollar amt dwn 67%.

## SITE

| | | | |
|---|---|---|---|
| Dimensions Unknown - survey not provided | Area 51,981 sq ft | Shape Irregular | View Excellent-river/mtn |

Specific Zoning Classification PUD   Zoning Description Planned Unit Development - Subdivision

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No   If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Water | ☒ | ☐ Community | Street Asphalt | ☒ | ☐ |
| Gas | ☒ | ☐ | Sanitary Sewer | ☒ | ☐ | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone B   FEMA Map # 0802051465B   FEMA Map Date 1/3/1986

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No   If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No   If Yes, describe
No known nor apparent adverse conditions. Survey not provided. The appraiser is not an expert in environmental concerns. If there are any concerns, an expert in the field should be consulted.

## IMPROVEMENTS

| General Description | | Foundation | | Exterior Description   materials/condition | Interior   materials/condition | |
|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | Foundation Walls Concrete -avg | Floors | Wd/car/tile-abvavg |
| # of Stories 1 w/bsm | | ☒ Full Basement ☐ Partial Basement | | Exterior Walls Wood/stone-abv avg | Walls | Tex drywall-abv avg |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area 1,962 sq.ft. | | Roof Surface Comp Shing-abv avg | Trim/Finish | Abv avg-abv avg |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish 95 % | | Gutters & Downspouts None | Bath Floor | Tile-abv avg |
| Design (Style) Contemporary | | ☒ Outside Entry/Exit ☐ Sump Pump | | Window Type Custom-abv avg | Bath Wainscot | Tile-abv avg |
| Year Built 2008 | | Evidence of ☐ Infestation | | Storm Sash/Insulated Incorp-abv avg | Car Storage | ☐ None |
| Effective Age (Yrs) 2yr | | ☐ Dampness ☐ Settlement | | Screens Incorp-abv avg | ☒ Driveway | # of Cars 2+ |
| Attic ☒ None | Heating ☐ FWA ☐ HWBB ☐ Radiant | Amenities | Woodstove(s) # | Driveway Surface | | |
| ☐ Drop Stair ☐ Stairs | ☒ Other   Fuel Gas | ☒ Fireplace(s) # 1+ ☐ Fence | | ☒ Garage | # of Cars | 3 |
| ☐ Floor ☐ Scuttle | Cooling ☒ Central Air Conditioning | ☐ Patio/Deck ☒ Porch | | ☐ Carport | # of Cars | |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool ☐ Other | | ☒ Att. ☐ Det. | ☐ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☒ Other (describe)

Finished area above grade contains: 7 Rooms   3.5 Bath(s)   2,100 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). Main flr master suite w/french drs leading to decks overlking river and Mt. Sopris. Custom, high end kitchen.. Two sty main living area with custom windows and rear deck overlking river and Mt. Sopris.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). The Subj Prop is new. No needed repairs nor deterioration noted.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No   If Yes, describe
None noted. An appraisal report does not constitute a home inspection. Conditions noted are only those that are readily observed. If there are any concerns or questions, a property inspection by an expert should be conducted.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No   If No, describe

---

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 66**

## Uniform Residential Appraisal Report
File # 0000686

There are **14** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **875,000** to $ **1,200,000** .

There are **4** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **880,000** to $ **1,313,000** .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1270 Riverbend Way | 221 Crystal Canyon Drive | | 130 Crystal Canyon Drive | | 50 Cottage Drive | |
| | Glenwood Springs, CO 81601 | Carbondale, CO 81623 | | Carbondale, CO 81623 | | Carbondale, CO 81623 | |
| Proximity to Subject | | approx 7 miles | | approx 7 miles | | approx 3 miles | |
| Sale Price | $ n/a | | $ 1,000,000 | | $ 880,000 | | $ 900,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 314.76 sq.ft. | | $ 226.75 sq.ft. | | $ 326.32 sq.ft. | |
| Data Source(s) | | Insp,MLS#103748 | | Insp,MLS#110233 | | Insp,MLS#103034 | |
| Verification Source(s) | | Garfield County Records | | Garfield County Records | | Garfield County Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Cash | | Cash | | Cash | |
| Concessions | | None known | | None known | | None known | |
| Date of Sale/Time | | 2/1/2010 | | 12/18/2009 | | 12/8/2009 | |
| Location | S GWS | Carbondale | | Carbondale | | Carbondale | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 51,981 sq ft | 13,299 sq ft | | 21,550 sq ft | | 14,766 sq ft | |
| View | Excell-river/mtn | Similar | | Similar | | Similar | |
| Design (Style) | Contemporary | Similar | | Similar | | Similar | |
| Quality of Construction | Avg - abv avg | Similar | | Similar | | Similar | |
| Actual Age | 2 yrs | 2 yrs | | 10 yrs Rem | | 6 yrs | |
| Condition | New | Similar | | Similar | | Similar | |
| Above Grade | Total / Bdrms. / Baths | Total 8 / Bdrms. 4 / Baths 3.5 | -20,000 | Total 7 / Bdrms. 4 / Baths 3.5 | -20,000 | Total 7 / Bdrms. 3 / Baths 3.5 | |
| Room Count | 7 / 3 / 3.5 | | | | | | |
| Gross Living Area | 2,100 sq.ft. | 3,177 sq.ft. | -107,700 | 3,881 sq.ft. | -178,100 | 2,758 sq.ft. | -65,800 |
| Basement & Finished | 1,962 Sq.Ft. | None | +68,670 | None | +68,670 | None | +68,670 |
| Rooms Below Grade | 3+ rooms | | | | | | |
| Functional Utility | Avg | Avg | | Avg | | Avg | |
| Heating/Cooling | Avg | Avg | | Avg | | Avg | |
| Energy Efficient Items | Avg | Avg | | Avg | | Avg | |
| Garage/Carport | 3 car garage | 3 car garage | | 2 car garage | +10,000 | 2 car garage | +10,000 |
| Porch/Patio/Deck | Porch,decks | Porch,patio | | Porch,patio | | Porch,patio | |
| Golf Crse | Yes | Superior | -25,000 | Superior | -22,000 | Superior | -22,500 |
| 18 hole crse, comm center | Ironbridge | RiverVllyRnch | | RiverVllyRnch | | RiverVllyRnch | |
| Fitness center | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ 84,030 | ☐ + ☒ - | $ 141,430 | ☐ + ☒ - | $ 9,630 |
| Adjusted Sale Price | | Net Adj. 8.4 % | | Net Adj. 16.1 % | | Net Adj. 1.1 % | |
| of Comparables | | Gross Adj. 22.1 % | $ 915,970 | Gross Adj. 34.0 % | $ 738,570 | Gross Adj. 18.6 % | $ 890,370 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s)   Glenwood Springs MLS, Garfield County Records

My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s)   Glenwood Springs MLS, Garfield County Records

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 3/7/2007 | None w/in prior yr | None w/in prior yr | None w/in prior yr |
| Price of Prior Sale/Transfer | $340,000 lot only | | | |
| Data Source(s) | MLS | | | |
| Effective Date of Data Source(s) | verified 2/15/2010 | | | |

Analysis of prior sale or transfer history of the subject property and comparable sales   Appears to be non-arms length transaction to the best of

knowledge of the Appraiser

Summary of Sales Comparison Approach   All five comparables are competitive properties of similar size, room configuration, age and within golf communities.  The three sold comparables are the most timely available.  Comparable #1 was on the market for 675 days.  The original asking price was $1,725,000.  It sold w/in 20% of the asking price at time of sale.  Comparable #2 was on the market for 263 days.  The original asking price was $1,100,000.  It sold w/in 9% of the asking price at time of sale.  Comparable #3 was on the market 665 days.  The original asking price was $1,850,000.  It sold w/in 9% of the asking price at time of sale.  Comparable #4 is a current listing w/in the subdivision of the Subj Prop.  It has been on the market for 475 days.  The original asking price was $1,295,000.  Comparable #5 is a current listing w/in the subdivision of the Subj Prop.  It has been on the market for 1210 days.  The original asking price was $1,304,900.

Indicated Value by Sales Comparison Approach $   840,000

Indicated Value by: Sales Comparison Approach $ **840,000**   Cost Approach (if developed) $   Income Approach (if developed) $

Reliance placed on Sales Comparison Approach, Sales Comparison Approach sole approach developed.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

**Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 840,000 , as of 2/17/2010 , which is the date of inspection and the effective date of this appraisal.**

Freddie Mac Form 70 March 2005                Page 2 of 6                Fannie Mae Form 1004 March 2005

# Uniform Residential Appraisal Report

**ADDITIONAL COMMENTS**

---

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| | | |
|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE .................................................... =$ | |
| Source of cost data | DWELLING          Sq.Ft. @ $ ............. =$ | |
| Quality rating from cost service          Effective date of cost data | Sq.Ft. @ $ ............. =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | ............. =$ | |
| | Garage/Carport          Sq.Ft. @ $ ............. =$ | |
| | Total Estimate of Cost-New ............. =$ | |
| | Less          Physical          Functional          External | |
| | Depreciation =$( ) | |
| | Depreciated Cost of Improvements ............. =$ | |
| | "As-is" Value of Site Improvements ............. =$ | |
| Estimated Remaining Economic Life (HUD and VA only)          Years | **INDICATED VALUE BY COST APPROACH** ............................. **=$** | |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $          X  Gross Rent Multiplier          = $          Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No    Unit type(s) ☒ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

Total number of phases          Total number of units          Total number of units sold

Total number of units rented          Total number of units for sale          Data source(s)

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

---

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 66**

File No. 0000686  Page #8

# Uniform Residential Appraisal Report

**File #** 0000686

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:**  The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:**  The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:**  The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:**  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:**  The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.  The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.  The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

---

**Exhibit G - Lot 66**

# Uniform Residential Appraisal Report

File # 0000686

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 66**

# Uniform Residential Appraisal Report

File # 0000686

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report  was  prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Jane McCollor_ | Signature _____ |
| Name  Jane McCollor | Name _____ |
| Company Name   McCollor Residential Appraisals | Company Name _____ |
| Company Address    PO Box 3283, Glenwood Springs, CO  81602 | Company Address _____ |
| | |
| Telephone Number   (970)945-4752 | Telephone Number _____ |
| Email Address   mcjaynes@comcast.net | Email Address _____ |
| Date of Signature and Report   2/20/2010 | Date of Signature _____ |
| Effective Date of Appraisal    2/17/2010 | State Certification # _____ |
| State Certification #   CR40014964 | or State License # _____ |
| or State License # | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State  CO | |
| Expiration Date of Certification or License    12/31/2011 | SUBJECT PROPERTY |

**ADDRESS OF PROPERTY APPRAISED**

 1270 Riverbend Way

 Glenwood Springs, CO 81601

**APPRAISED VALUE OF SUBJECT PROPERTY $**      840,000

**LENDER/CLIENT**

Name _____

Company Name   Alpine Bank Mortgage

Company Address    400 7th Street South, Rifle, CO 81650

Email Address _____

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection _____
☐ Did inspect interior and exterior of subject property
   Date of Inspection _____

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection _____

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 66**

## Uniform Residential Appraisal Report

File # 0000686

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 1270 Riverbend Way | 67 Riverbend Way | | 1246 Riverbend Way | | | |
| | Glenwood Springs, CO 81601 | Glenwood Springs, CO 81601 | | Glenwood Springs, CO 81601 | | | |
| Proximity to Subject | | approx 2 blocks | | hse next door | | | |
| Sale Price | $ n/a | | $ 985,000 | | $ 995,000 | | $ |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 317.74 sq.ft. | | $ 299.52 sq.ft. | | $ sq.ft. | |
| Data Source(s) | | Insp,MLS#107865 | | Insp,MLS#95652 | | | |
| Verification Source(s) | | Garfield County Records | | Garfield County Records | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | n/a | | n/a | | | |
| Concessions | | n/a | | n/a | | | |
| Date of Sale/Time | | Listing | -88,650 | Listing | -89,955 | | |
| Location | S GWS | S GWS | | S GWS | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 51,981 sq ft | 15,724 sq ft | | 44,275 sq ft | | | |
| View | Excell-river/mtn | Similar | | Identical | | | |
| Design (Style) | Contemporary | Similar | | Similar | | | |
| Quality of Construction | Avg - abv avg | Similar | | Similar | | | |
| Actual Age | 2 yrs | 3 yrs | | 1 yr | | | |
| Condition | New | Similar | | Similar | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 7  3  3.5 | 7  4  4.5 | -30,000 | 8  4  4.5 | -30,000 | | |
| Gross Living Area | 2,100 sq.ft. | 3,100 sq.ft. | -100,000 | 3,322 sq.ft. | -122,200 | sq.ft. | 0 |
| Basement & Finished | 1,962 Sq.Ft. | 1,000 sq ft | +33,670 | 1,741 sq ft | +7,735 | | |
| Rooms Below Grade | 3+ rooms | 3+ rooms | | 3+ rooms | | | |
| Functional Utility | Avg | Avg | | Avg | | | |
| Heating/Cooling | Avg | Avg | | Avg | | | |
| Energy Efficient Items | Avg | Avg | | Avg | | | |
| Garage/Carport | 3 car garage | 3 car garage | | 3 car garage | | | |
| Porch/Patio/Deck | Porch,decks | Porch,patio | | Porch,decks | | | |
| Golf Crse | Yes | Identical | | Identical | | | |
| 18 hole crse, comm center | Ironbridge | | | | | | |
| Fitness center | | | | | | | |
| Net Adjustment (Total) | | ☐ +  ☒ - | $ 184,980 | ☐ +  ☒ - | $ 234,420 | ☐ +  ☐ - | $ |
| Adjusted Sale Price | | Net 18.8 % | | Net 23.6 % | | Net % | |
| of Comparables | | Gross 9.7 % | $ 800,020 | Gross 25.1 % | $ 760,580 | Gross % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 3/7/2007 | None w/in prior yr | None w/in prior yr | |
| Price of Prior Sale/Transfer | $340,000 lot only | | | |
| Data Source(s) | MLS | | | |
| Effective Date of Data Source(s) | verified 2/15/2010 | | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Form 1004.(AC) — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 66**

# Market Conditions Addendum to the Appraisal Report

File No.  0000686

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 1270 Riverbend Way | City Glenwood Springs | State CO | ZIP Code 81601 |

Borrower   Ironbridge Homes, LLC

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 1 | 0 | 3 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 0.17 | | 1.00 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | | | 14 | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | | | 14.0 | ☐ Declining | ☐ Stable | ☐ Increasing |
| **Median Sale & List Price, DOM, Sale/List %** | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 887,500 | 0 | 890,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 63 | | 466 | ☐ Declining | ☐ Stable | ☐ Increasing |
| Median Comparable List Price | 899,000 | | 997,000 | ☐ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 98.72 | | 89.27 | ☐ Increasing | ☐ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☐ No | | ☐ Declining | ☐ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).    Seller concessions ltd in local real estate mkt

Are foreclosure sales (REO sales) a factor in the market?    ☐ Yes    ☒ No    If yes, explain (including the trends in listings and sales of foreclosed properties).

Cite data sources for above information.    GWS/Aspen Board of Realtors, Land Title Guarantee Co., Realtors

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
There is limited information available insufficent to support overall trends. This correlates to the broader local real estate market as a whole. The Land Title Co mkt analysis for 2009 show 11 mos thruout the yr with transactions and dollars down from 2008 in the dbl digits. The only mo with decreases in these categories from 2008 in the single digit was December. The number of transactions was down 3%, the dollar amt down 9%. For the entire yr the no of transactions was dwn 60%, dollar amt dwn 67%.

**If the subject is a unit in a condominium or cooperative project , complete the following:**    **Project Name:**

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?    ☐ Yes    ☐ No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name   Jane McCollor | | Supervisory Appraiser Name | |
| Company Name   McCollor Residential Appraisals | | Company Name | |
| Company Address   PO Box 3283, Glenwood Springs, CO  81602 | | Company Address | |
| State License/Certification #  CR40014964    State   CO | | State License/Certification #    State | |
| Email Address   mcjaynes@comcast.net | | Email Address | |

Freddie Mac Form 71    March 2009 | Page 1 of 1 | Fannie Mae Form 1004MC    March 2009

Form 1004MC2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

*Side labels:* MARKET RESEARCH & ANALYSIS | CONDO/CO-OP PROJECTS | APPRAISER

**Exhibit G - Lot 66**

File No. 0000686  Page #13

## Subject Photo Page

| | |
|---|---|
| Borrower/Client | Ironbridge Homes, LLC |
| Property Address | 1270 Riverbend Way |

| City | Glenwood Springs | County | Garfield | State | CO | Zip Code | 81601 |
|---|---|---|---|---|---|---|---|

| Lender | Alpine Bank Mortgage |
|---|---|



**Subject Front**

1270 Riverbend Way
Sales Price      n/a
GLA              2,100
Total Rooms      7
Total Bedrms     3
Total Bathrms    3.5
Location         S GWS
View             Excell-river/mtn
Site             51,981 sq ft
Quality          Avg - abv avg
Age              2 yrs



**Subject Rear**



**Subject Street**

**Exhibit G - Lot 66**

File No. 0000686  Page #14

## Subject Interior Photo Page

| Borrower/Client | Ironbridge Homes, LLC | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1270 Riverbend Way | | | | | |
| City | Glenwood Springs | County | Garfield | State | CO | Zip Code | 81601 |
| Lender | Alpine Bank Mortgage | | | | | |



**Subject Interior**

**1270 Riverbend Way**
| | |
|---|---|
| Sale Price | n/a |
| GLA | 2,100 |
| Total Rooms | 7 |
| Bedrooms | 3 |
| Bathrooms | 3.5 |
| Location | S GWS |
| View | Excell-river/mtn |
| Site | 51,981 sq ft |
| Quality | Avg - abv avg |
| Age | 2 yrs |



**Subject Interior**



**Subject Interior**

Form PIC4x6.SI — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 66**

**Comparable Photo Page**

| | | | |
|---|---|---|---|
| Borrower/Client | Ironbridge Homes, LLC | | |
| Property Address | 1270 Riverbend Way | | |
| City  Glenwood Springs | County  Garfield | State  CO | Zip Code  81601 |
| Lender  Alpine Bank Mortgage | | | |



### Comparable 1

221 Crystal Canyon Drive
| | |
|---|---|
| Proximity | approx 7 miles |
| Sale Price | 1,000,000 |
| GLA | 3,177 |
| Total Rooms | 8 |
| Total Bedrms | 4 |
| Total Bathrms | 3.5 |
| Location | Carbondale |
| View | Similar |
| Site | 13,299 sq ft |
| Quality | Similar |
| Age | 2 yrs |



### Comparable 2

130 Crystal Canyon Drive
| | |
|---|---|
| Proximity | approx 7 miles |
| Sale Price | 880,000 |
| GLA | 3,881 |
| Total Rooms | 7 |
| Total Bedrms | 4 |
| Total Bathrms | 3.5 |
| Location | Carbondale |
| View | Similar |
| Site | 21,550 sq ft |
| Quality | Similar |
| Age | 10 yrs Rem |



### Comparable 3

50 Cottage Drive
| | |
|---|---|
| Proximity | approx 3 miles |
| Sale Price | 900,000 |
| GLA | 2,758 |
| Total Rooms | 7 |
| Total Bedrms | 3 |
| Total Bathrms | 3.5 |
| Location | Carbondale |
| View | Similar |
| Site | 14,766 sq ft |
| Quality | Similar |
| Age | 6 yrs |

**Comparable Photo Page**

| Borrower/Client | Ironbridge Homes, LLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1270 Riverbend Way | | | | | | |
| City | Glenwood Springs | County | Garfield | State | CO | Zip Code | 81601 |
| Lender | Alpine Bank Mortgage | | | | | | |



### Comparable 4

67 Riverbend Way

| Proximity | approx 2 blocks |
|---|---|
| Sale Price | 985,000 |
| GLA | 3,100 |
| Total Rooms | 7 |
| Total Bedrms | 4 |
| Total Bathrms | 4.5 |
| Location | S GWS |
| View | Similar |
| Site | 15,724 sq ft |
| Quality | Similar |
| Age | 3 yrs |



### Comparable 5

1246 Riverbend Way

| Proximity | hse next door |
|---|---|
| Sale Price | 995,000 |
| GLA | 3,322 |
| Total Rooms | 8 |
| Total Bedrms | 4 |
| Total Bathrms | 4.5 |
| Location | S GWS |
| View | Identical |
| Site | 44,275 sq ft |
| Quality | Similar |
| Age | 1 yr |

### Comparable 6

Proximity
Sale Price
GLA
Total Rooms
Total Bedrms
Total Bathrms
Location
View
Site
Quality
Age

**Building Sketch (Page - 1)**

File No. 0000686  Page #17

| | | | | |
|---|---|---|---|---|
| Borrower/Client | Ironbridge Homes, LLC | | | |
| Property Address | 1270 Riverbend Way | | | |
| City  Glenwood Springs | County  Garfield | State  CO | Zip Code  81601 | |
| Lender  Alpine Bank Mortgage | | | | |



**Exhibit G - Lot 66**

| Borrower/Client | Ironbridge Homes, LLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1270 Riverbend Way | | | | | | |
| City | Glenwood Springs | County | Garfield | State | CO | Zip Code | 81601 |
| Lender | Alpine Bank Mortgage | | | | | | |



| Borrower | Ironbridge Homes, LLC | | | File No. 0000686 |
|---|---|---|---|---|
| Property Address | 1270 Riverbend Way | | | |
| City | Glenwood Springs | County Garfield | State CO | Zip Code 81601 |
| Lender/Client | Alpine Bank Mortgage | | | |

# APPRAISAL AND REPORT IDENTIFICATION

**This Appraisal Report is <u>one</u> of the following types:**

☐ **Self Contained** (A written report prepared under Standards Rule  2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☒ **Summary** (A written report prepared under Standards Rule  2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ **Restricted Use** (A written report prepared under Standards Rule  2-2(c) , pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

· The statements of fact contained in this report are true and correct.

· The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

· I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.

· I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

· My engagement in this assignment was not contingent upon developing or reporting predetermined results.

· My compensation for completing this assignment was not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

· My analyses, opinions, and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

· I have (or have not) made a personal inspection of the property that is the subject of this report.

· No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report.)

## Comments on Appraisal and Report Identification

**Note any USPAP related issues requiring disclosure and any State mandated requirements:**

The purpose of this appraisal is to establish market value for financing purposes.

Extraordinary Assumption and Limiting Condition

The findings within this appraisal report are based on observable conditions noted at the time of the inspection and other conditions known to exist at the time of the appraisal.  I am not a licensed building contractor nor professional building inspector.  I am not qualified to survey or analyze physical items - of either site or improvements -  that are not readily visible.  If any of the parties in this transaction have questions or concerns regarding any mechanical or structural physical problems, condition, infestation, contamination, soils, environmental hazards or other issues regarding the subject property - of either site or improvements -  an expert in that field of specialty should be consulted.

**APPRAISER:**

Signature: _Jane McCollor_

Name:  Jane McCollor

Date Signed:  2/20/2010

State Certification #:  CR40014964

or State License #: _____

State:  CO

Expiration Date of Certification or License:  12/31/2011

Effective Date of Appraisal:  2/17/2010

**SUPERVISORY APPRAISER (only if required):**

Signature: _____

Name: _____

Date Signed: _____

State Certification #: _____

or State License #: _____

State: _____

Expiration Date of Certification or License: _____

Supervisory Appraiser inspection of Subject Property:

☐ Did Not   ☐ Exterior-only from street   ☐ Interior and Exterior

File No. 0000686  Page #20

# RESUME

Jane McCollor
PO Box 3283
Glenwood Springs, CO  81602                    Telephone/fax: (970)945-4752

Certified Residential Appraiser #CR40014964

**Employment**
Re:  Residential Appraisal

McCollor Residential Appraisals – established March 1999

Garfield County Assessor's Office – March 1997 to March 1999

Independent Fee Appraiser – 1983 to 1985


**Education**
Re:  Residential Appraisal

Real Estate Appraisal Principles, AIREA, 1983
Basic Valuation Procedures, AIREA, 1983
Introduction to Appraisal. DPT, 1997
Standards and Ethics, DPT, 1997
Vacant Land Workshop. DPT, 1998
Condominium Valuation Workshop. DPT, 1998
Bed and Breakfast Workshop, DPT, 1998Supple
Appraisal 101: Market Approach, DPT, 1998
FHA Residential Requirements, The Appraisal Institute, 2000
Residential Construction, University of Colorado, 2000
Investment & Taxation. Colorado Association of Realtors, 2001
Real Estate Law, Mckissock Inc., 2002
Standards and Ethics, McKissock, Inc., 2002
Terminology, Real Property, Math, Government Controls, Valuation & Appraisal, Finance,
Contracts/Agency, Contracts & Regulations I, II, III:  Real Estate Training Center, 2005
USPAP Update:  Van Education Center, 2005
Environmental Pollution and Mold, McKissock, Inc. 2006
Appraising the Oddball, McKissock, Inc. 2006
Appraising for the Secondary Market, McKissock, Inc. 2006
Appraising Historic Properties, McKissock, Inc. 2006
Sales Comparison Approach, McKissock, Inc. 2006
USPAP Update: McKissock, Inc. 2007

**Employment**
Re:  Additional

Rocky Mountain HMO
Provider Relations

Rocky Mountain Planned Parenthood
Clinic Director

Colorado Mountain College
Program Director

Garfield County Housing Authority
Executive Director


**Education**
Re:  Additional

University of the State of New York, B.A., Degree in Liberal Arts


Appraisal Clients Include:

| | |
|---|---|
| Alpine Bank | Blue Sky Mortgage |
| Bank of America, NA | Colorado National Bank |
| Bank of America Private Bank | Liberty Bank, FSB |
| American National Bank | Mountain Mortgage |
| Sterling Bank | Strong Financial Group, Inc |
| US Bank | Wells Fargo |

File No. 0000686  Page #21



STATE OF COLORADO
Department of Regulatory Agencies
Division of Real Estate

Active

Cert Residential Appraiser

PRINTED ON SECURE PAPER

| 40014964 | Jan 1 2009 | Dec 31 2011 |
|---|---|---|
| Number | Issue Date | Expires |

JANE E MCCOLLOR
GLENWOOD SPRINGS, CO 81602

Program Administrator                     Licensee Signature

File No. 0000682  Page #1

# INVOICE

**FROM:**

Jane McCollor

McCollor Residential Appraisals

PO Box 3283

Glenwood Springs, CO 81602

**Telephone Number:** (970)945-4752        **Fax Number:** (970)945-4752

| INVOICE NUMBER |
|---|
| 0000682 |
| **DATE** |
| 2/20/2010 |

**TO:**

Alpine Bank Mortgage

400 7th Street South

Rifle, CO 81650

**Telephone Number:**                **Fax Number:**

**Alternate Number:**                **E-Mail:**

| REFERENCE | |
|---|---|
| **Internal Order #:** | 0000682 |
| **Lender Case #:** | |
| **Client File #:** | |
| **Main File # on form:** | 0000682 |
| **Other File # on form:** | |
| **Federal Tax ID:** | |
| **Employer ID:** | |

## DESCRIPTION

| | |
|---|---|
| **Lender:** Alpine Bank Mortgage | **Client:** Alpine Bank Mortgage |
| **Purchaser/Borrower:** Ironbridge Homes, LLC | |
| **Property Address:** 1246 Riverbend Way | |
| **City:** Glenwood Springs | |
| **County:** Garfield | **State:** CO        **Zip:** 81601 |
| **Legal Description:** Subdivision: Ironbridge PUD Ph II Filing 1,2&3 Lot 67 | |

## FEES                                                                                                    AMOUNT

Summary                                                                                                     500.00

Thank you.  I appreciate your business.

**SUBTOTAL**                                                500.00

## PAYMENTS                                                                                            AMOUNT

| Check #: | Date: | Description: |
| Check #: | Date: | Description: |
| Check #: | Date: | Description: |

**SUBTOTAL**                                                0.00

**TOTAL DUE**  $        500.00

**Exhibit G - Lot 67**

# RESIDENTIAL APPRAISAL REPORT



## McCollor Residential Appraisals

| | |
|---|---|
| **Property Location:** | 1246 Riverbend Way<br>Subdivision: Ironbridge PUD Ph II Filing 1,2&3 Lot 67<br>Glenwood Springs, CO 81601 |
| **Borrower:** | Ironbridge Homes, LLC |
| **Client:** | Alpine Bank Mortgage<br>400 7th Street South<br>Rifle, CO  81650 |
| **Effective Date:** | 2/17/2010 |
| **Prepared By:** | Jane McCollor<br>Certified Residential Appraiser |

McCollor Residential Appraisals
PO Box 3283
Glenwood Springs,  CO 81602

Ph/Fax: (970)945-4752

**Exhibit G - Lot 67**

| Borrower/Client | Ironbridge Homes, LLC | | | File No. | 0000682 |
|---|---|---|---|---|---|
| Property Address | 1246 Riverbend Way | | | | |
| City | Glenwood Springs | County | Garfield | State CO | Zip Code 81601 |
| Lender | Alpine Bank Mortgage | | | | |

## TABLE OF CONTENTS



Invoice ........................................................................................................................................................ 1
Cover Page ................................................................................................................................................. 2
Cover Letter ............................................................................................................................................... 3
URAR ......................................................................................................................................................... 5
Additional Comparables 4-6 ..................................................................................................................... 11
Market Conditions Addendum to the Appraisal Report ........................................................................... 12
Subject Photos .......................................................................................................................................... 13
Subject Photos Interior ............................................................................................................................. 14
Comparable Photos 1-3 ............................................................................................................................. 15
Comparable Photos 4-6 ............................................................................................................................. 16
Building Sketch (Page - 1) ........................................................................................................................ 17
Location Map ............................................................................................................................................. 18
USPAP Identification ................................................................................................................................. 19
Credentials of Appraiser ........................................................................................................................... 20
Addendum .................................................................................................................................................. 21
Addendum .................................................................................................................................................. 22

**Exhibit G - Lot 67**

File No. 0000682  Page #3

File No. 0000682

**McCollor Residential Appraisals**
PO Box 3283
Glenwood Springs, CO  81602
Ph/Fax(970)945-4752
mcjaynes@comcast.net

Alpine Bank
400 7th St. South
Rifle, CO  81650

February 20, 2010

Re:  1246 Riverbend Way
     Glenwood Springs, CO  81601

Borrower:  Ironbridge Homes, LLC

Dear Sir/Ms:

At your request I have inspected the above-referenced property for the purpose of estimating market value of the Subject Property as defined by the Office of Thrift Supervision (OTS) and the Financial Institutions Reform, Recovery and enforcement Act of 1989 (FIRREA).

This appraisal report communicates the results of a Complete Appraisal of the Subject Property.  It is a Summary Report, which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(b) of the Uniform Standards of Professional Practice for a Summary Report.  This appraisal is intended to conform to the requirements of the Uniform Standards of Professional Appraisal Practice, FIRREA and those of the FDIC, FNMA and FHLMC.  The attached report contains the description, analysis and synopsis of the supporting data for the conclusion and final estimate of value together with photographs, building sketch and map.

Based on my analysis and observation of the Subject Property and Comparables, the market value estimate of the above referenced Subject Property as of the Effective Date of February 17, 2010 is:

$ 950,000
NINE HUNDRED AND FIFTY THOUSAND DOLLARS

Respectfully submitted,
Jane McCollor
CR40014964

# Uniform Residential Appraisal Report

File # 0000682

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address 1246 Riverbend Way | City Glenwood Springs State CO Zip Code 81601 |
| Borrower Ironbridge Homes, LLC | Owner of Public Record Ironbridge Homes, LLC County Garfield |
| Legal Description Subdivision: Ironbridge PUD Ph II Filing 1,2&3 Lot 67 | |
| Assessor's Parcel # 239501429067 | Tax Year 2009 R.E. Taxes $ 5,379.04 |
| Neighborhood Name South Glenwood Springs | Map Reference R043451 Census Tract n/a |
| Occupant ☐ Owner ☐ Tenant ☒ Vacant | Special Assessments $ None known ☒ PUD HOA $ 272 ☐ per year ☒ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | |
| Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe) | |
| Lender/Client Alpine Bank Mortgage | Address 400 7th Street South, Rifle, CO 81650 |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No
Report data source(s) used, offering price(s), and date(s). Glenwood Springs MLS; current asking price $ 995,000; original asking price $ 1,304,900; DOM 1210; verified 2/14/2010

**CONTRACT**

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. n/a

Contract Price $ n/a    Date of Contract    Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

**NEIGHBORHOOD**

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | | Property Values ☐ Increasing ☐ Stable ☒ Declining | | | PRICE $ (000) | AGE | One-Unit | 66 % |
| Built-Up ☐ Over 75% ☒ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☐ In Balance ☒ Over Supply | | | 350 Low | new | 2-4 Unit | 2 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | | Marketing Time ☐ Under 3 mths ☐ 3-6 mths ☒ Over 6 mths | | | 1.5mill High | 25 | Multi-Family | 2 % |
| | | | | | | 550 Pred. | 5 | Commercial | 10 % |
| | | | | | | | | Other | 20 % |

Neighborhood Boundaries South GWS is approximately bordered on the N by the int of SGrandAve&Hwy 82, on the S by Cattle Crk, on the E by Missouri Hgts, on the W by natural topography
Neighborhood Description The nbh is a mixed use suburban area on the southern outskirts of GWS. In addition to SFRs there is lght industrial, retail, multi-family and manufactured homes. The SFRs vary from older, less well-maintained to lge, custom homes of good quality construction, well maintained with large lots, Roaring Fork River frontage/views of Mt. Sopris.Ironbridge(Subj Prop) is a golf crse,commcenter subdivision.
Market Conditions (including support for the above conclusions) The Land Title Co mkt analysis for 2009 show 11 mos thruout the yr with transactions and dollars down from 2008 in the dbl digits.The only mo with decreases in these categories from 2008 in the single digit was December.The number of transactions was down 3%,the dollar amt down 9%.For the entire yr the no of transactions was down 60%,dollar amt dwn 67%.

**SITE**

| | |
|---|---|
| Dimensions Unknown - survey not provided | Area 44,275 sq ft Shape Irregular View Excellent-river/mtn |
| Specific Zoning Classification PUD | Zoning Description Planned Unit Development - Subdivision |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) | |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | Community | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone B  FEMA Map # 0802051465B  FEMA Map Date 1/3/1986
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe
No known nor apparent adverse conditions.  Survey not provided.  The appraiser is not an expert in environmental concerns.  If there are any concerns, an expert in the field should be consulted.

**IMPROVEMENTS**

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☐ Crawl Space | Foundation Walls Concrete -avg | Floors Wd/carpet/tile-abvavg |
| # of Stories 2 w/bsm | ☒ Full Basement ☐ Partial Basement | Exterior Walls Wood/stone-abv avg | Walls Tex drywall-abv avg |
| Type ☐ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 1,741 sq.ft. | Roof Surface Comp Shing-abv avg | Trim/Finish Abv avg-abv avg |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 95 % | Gutters & Downspouts None | Bath Floor Tile-abv avg |
| Design (Style) Contemporary | ☒ Outside Entry/Exit ☐ Sump Pump | Window Type Custom-abv avg | Bath Wainscot Tile-abv avg |
| Year Built 2008 | Evidence of ☐ Infestation | Storm Sash/Insulated Incorp-abv avg | Car Storage ☐ None |
| Effective Age (Yrs) 2yr | ☐ Dampness ☐ Settlement | Screens Incorp-abv avg | ☒ Driveway # of Cars 2+ |
| Attic ☒ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities | Driveway Surface Asphalt |
| ☐ Drop Stair ☐ Stairs | ☐ Other | Fuel Gas | ☒ Fireplace(s) # 1+ ☐ Fence | ☒ Garage # of Cars 3 |
| ☐ Floor ☐ Scuttle | Cooling ☒ Central Air Conditioning | ☐ Patio/Deck ☐ Porch | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool ☐ Other | ☐ Att. ☐ Det. ☐ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area **above** grade contains: 8 Rooms  4 Bedrooms  3.5 Bath(s)  3,322 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.). Main & 2nd flr master suites w/french drs leading to decks overlking river and Mt. Sopris. Custom, high end kitchen, butler's pantry. Two sty main living area with custom windows and rear deck overlking river and Mt. Sopris.
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). The Subj Prop is new.  No needed repairs nor deterioration noted.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe
None noted.  An appraisal report does not constitute a home inspection.  Conditions noted are only those that are readily observed.  If there are any concerns or questions, a property inspection by an expert should be conducted.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 67**

File No. 0000682 | Page #6
Pg 108 of 125

## Uniform Residential Appraisal Report
File # 0000682

| | | | |
|---|---|---|---|
| There are | 14 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 875,000 | to $ 1,200,000 . |
| There are | 4 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 880,000 | to $ 1,313,000 . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 1246 Riverbend Way Glenwood Springs, CO 81601 | 221 Crystal Canyon Drive Carbondale, CO 81623 | 130 Crystal Canyon Drive Carbondale, CO  81623 | 50 Cottage Drive Carbondale, CO  81623 |
| Proximity to Subject | | approx 7 miles | approx 7 miles | approx 3 miles |
| Sale Price | $ n/a | $ 1,000,000 | $ 880,000 | $ 900,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 314.76 sq.ft. | $ 226.75 sq.ft. | $ 326.32 sq.ft. |
| Data Source(s) | | Insp,MLS#103748 | Insp,MLS#110233 | Insp,MLS#103034 |
| Verification Source(s) | | Garfield County Records | Garfield County Records | Garfield County Records |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sales or Financing Concessions | | Cash None known | | Cash None known | | Cash None known | |
| Date of Sale/Time | | 2/1/2010 | | 12/18/2009 | | 12/8/2009 | |
| Location | S GWS | Carbondale | | Carbondale | | Carbondale | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 44,275 sq ft | 13,299 sq ft | | 21,550 sq ft | | 14,766 sq ft | |
| View | Excell-river/mtn | Similar | | Similar | | Similar | |
| Design (Style) | Contemporary | Similar | | Similar | | Similar | |
| Quality of Construction | Avg - abv avg | Similar | | Similar | | Similar | |
| Actual Age | 2 yr | 2 yrs | | 10 yrs Rem | | 6 yrs | |
| Condition | New | Similar | | Similar | | Similar | |
| Above Grade | Total 8 | Bdrms. 4 | Baths 3.5 | Total 8 | Bdrms. 4 | Baths 3.5 | Total 0 | Bdrms. 7 | Baths 3.5 | Total 0 | Bdrms. 7 | Baths 3.5 |
| Room Count | | | | | | +30,000 |
| Gross Living Area | 3,322 sq.ft. | 3,177 sq.ft. | +14,500 | 3,881 sq.ft. | -55,900 | 2,758 sq.ft. | +56,400 |
| Basement & Finished Rooms Below Grade | 1,741 Sq.Ft. 3+ rooms | None | +60,935 | None | +60,935 | None | +60,935 |
| Functional Utility | Avg | Avg | | Avg | | Avg | |
| Heating/Cooling | Avg | Avg | | Avg | | Avg | |
| Energy Efficient Items | Avg | Avg | | Avg | | Avg | |
| Garage/Carport | 3 car garage | 3 car garage | | 2 car garage | +10,000 | 2 car garage | +10,000 |
| Porch/Patio/Deck | Porch,decks | Porch,patio | | Porch,patio | | Porch,patio | |
| Golf Crse | Yes | Superior | -25,000 | Superior | -22,000 | Superior | -22,500 |
| 18 hole crse, comm center | Ironbridge | RiverVllyRnch | | RiverVllyRnch | | RiverVllyRnch | |
| Fitness center | | | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 50,435 | ☒ + ☒ - | $ 6,965 | ☒ + ☐ - | $ 134,835 |
| Adjusted Sale Price of Comparables | | Net Adj. 5.0 % Gross Adj. 10.0 % | $ 1,050,435 | Net Adj. 0.8 % Gross Adj. 16.9 % | $ 873,035 | Net Adj. 15.0 % Gross Adj. 20.0 % | $ 1,034,835 |

I ☒ did  ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did  ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   Glenwood Springs MLS, Garfield County Records
My research  ☐ did  ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   Glenwood Springs MLS, Garfield County Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 3/7/2007 | None w/in prior yr | None w/in prior yr | None w/in prior yr |
| Price of Prior Sale/Transfer | $350,000 lot only | | | |
| Data Source(s) | MLS | | | |
| Effective Date of Data Source(s) | verified 2/15/2010 | | | |

Analysis of prior sale or transfer history of the subject property and comparable sales       Appears to be non-arms length transaction to the best of

knowledge of the Appraiser

Summary of Sales Comparison Approach     All five comparables are competitive properties of similar size, room configuration, age and within golf communities.  The three sold comparables are the most timely available.  Comparable #1 was on the market for 675 days.  The original asking price was $1,725,000.  It sold w/in 20% of the asking price at time of sale.  Comparable #2 was on the market for 263 days.  The original asking price was $1,100,000.  It sold w/in 9% of the asking price at time of sale.  Comparable #3 was on the market 665 days.  The original asking price was $1,850,000.  It sold w/in 9% of the asking price at time of sale.  Comparable #4 is a current listing w/in the subdivision of the Subj Prop.  It has been on the market for 475 days.  The original asking price was $1,295,000.  Comparable #5 is a current listing w/in the subdivision of the Subj Prop.  It has been on the market for 1210 days.  The original asking price was $1,158,950.

Indicated Value by Sales Comparison Approach $  950,000

Indicated Value by: Sales Comparison Approach $  950,000     Cost Approach (if developed) $          Income Approach (if developed) $
Reliance placed on Sales Comparison Approach, Sales Comparison Approach sole approach developed.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or  ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $  950,000 , as of  2/17/2010 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                        Page 2 of 6                        Fannie Mae Form 1004 March 2005

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 67**

# Uniform Residential Appraisal Report

File # 0000682

**ADDITIONAL COMMENTS**

| COST APPROACH TO VALUE (not required by Fannie Mae) | | |
|---|---|---|
| Provide adequate information for the lender/client to replicate the below cost figures and calculations. | | |
| Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) | | |

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE ............................................................... =$ | |
|---|---|---|
| Source of cost data | DWELLING                  Sq.Ft. @ $ .............. =$ | |
| Quality rating from cost service        Effective date of cost data | Sq.Ft. @ $ .............. =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | .............. =$ | |
| | Garage/Carport          Sq.Ft. @ $ .............. =$ | |
| | Total Estimate of Cost-New .............. =$ | |
| | Less        Physical    Functional    External | |
| | Depreciation =$( ) | |
| | Depreciated Cost of Improvements ............. =$ | |
| | "As-is" Value of Site Improvements ............. =$ | |
| Estimated Remaining Economic Life (HUD and VA only)        Years | INDICATED VALUE BY COST APPROACH ................................ =$ | |

| INCOME APPROACH TO VALUE (not required by Fannie Mae) | | |
|---|---|---|
| Estimated Monthly Market Rent $            X Gross Rent Multiplier            = $            Indicated Value by Income Approach | | |
| Summary of Income Approach (including support for market rent and GRM) | | |

| PROJECT INFORMATION FOR PUDs (if applicable) | | |
|---|---|---|
| Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No    Unit type(s) ☒ Detached ☐ Attached | | |
| Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit. | | |
| Legal Name of Project | | |
| Total number of phases        Total number of units        Total number of units sold | | |
| Total number of units rented        Total number of units for sale        Data source(s) | | |
| Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion. | | |
| Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source | | |
| Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion. | | |
| Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options. | | |
| Describe common elements and recreational facilities. | | |

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 67**

# Uniform Residential Appraisal Report

File # 0000682

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 67**

File No. 0000682 Page #9

08-13555-mg    Doc 11662    Filed 09/28/10    Entered 09/28/10 16:16:45    Main Document
Uniform Residential Appraisal Report    Pg 112    File # 0000682

**APPRAISER'S CERTIFICATION:**    The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 67**

# Uniform Residential Appraisal Report

File # 0000682

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature  _Jane McCollor_ | Signature  _____ |
| Name  Jane McCollor | Name  _____ |
| Company Name  McCollor Residential Appraisals | Company Name  _____ |
| Company Address  PO Box 3283, Glenwood Springs, CO  81602 | Company Address  _____ |
| | |
| Telephone Number  (970)945-4752 | Telephone Number  _____ |
| Email Address  mcjaynes@comcast.net | Email Address  _____ |
| Date of Signature and Report  2/20/2010 | Date of Signature  _____ |
| Effective Date of Appraisal  2/17/2010 | State Certification #  _____ |
| State Certification #  40014964 | or State License #  _____ |
| or State License #  _____ | State  _____ |
| or Other (describe)  _____ State #  _____ | Expiration Date of Certification or License  _____ |
| State  Colorado | |
| Expiration Date of Certification or License  12/31/2011 | **SUBJECT PROPERTY** |
| | |
| **ADDRESS OF PROPERTY APPRAISED** | ☐ Did not inspect subject property |
|  1246 Riverbend Way | ☐ Did inspect exterior of subject property from street |
|  Glenwood Springs, CO 81601 | Date of Inspection  _____ |
| APPRAISED VALUE OF SUBJECT PROPERTY $  950,000 | ☐ Did inspect interior and exterior of subject property |
| **LENDER/CLIENT** | Date of Inspection  _____ |
| Name  _____ | |
| Company Name  Alpine Bank Mortgage | **COMPARABLE SALES** |
| Company Address  400 7th Street South, Rifle, CO 81650 | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address  _____ | Date of Inspection  _____ |

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 67**

# Uniform Residential Appraisal Report

File No. 0000682   Page #11

File # 0000682

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 1246 Riverbend Way | 67 Riverbend Way | | 1270 Riverbend Way | | | |
| | Glenwood Springs, CO 81601 | Glenwood Springs, CO 81601 | | Glenwood Springs, CO 81601 | | | |
| Proximity to Subject | | approx 4 blocks | | hse next door | | | |
| Sale Price | $ n/a | | $ 985,000 | | $ 875,000 | | $ |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 317.74 sq.ft. | | $ 416.67 sq.ft. | | $ sq.ft. | |
| Data Source(s) | | Insp,MLS#107865 | | Insp,MLS#95663 | | | |
| Verification Source(s) | | Garfield County Records | | Garfield County Records | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | n/a | | n/a | | | |
| Concessions | | n/a | | n/a | | | |
| Date of Sale/Time | | Listing | -88,650 | Listing | -78,750 | | |
| Location | S GWS | S GWS | | S GWS | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 44,275 sq ft | 15,724 sq ft | | 51,981 sq ft | | | |
| View | Excell-river/mtn | Similar | | Identical | | | |
| Design (Style) | Contemporary | Similar | | Similar | | | |
| Quality of Construction | Avg - abv avg | Similar | | Similar | | | |
| Actual Age | 2 yr | 3 yrs | | 1 yr | | | |
| Condition | New | Similar | | Similar | | | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 8 | 4 | 3.5 | 7 | 4 | 4.5 | -10,000 | 7 | 3 | 3.5 | +20,000 | | | |
| Gross Living Area | 3,322 sq.ft. | 3,100 sq.ft. | +22,200 | 2,100 sq.ft. | +122,200 | sq.ft. | 0 |
| Basement & Finished | 1,741 Sq.Ft. | 1,000 sq ft | +25,935 | 1,982 sq ft | | | |
| Rooms Below Grade | 3+ rooms | 3+ rooms | | 3+ rooms | | | |
| Functional Utility | Avg | Avg | | Avg | | | |
| Heating/Cooling | Avg | Avg | | Avg | | | |
| Energy Efficient Items | Avg | Avg | | Avg | | | |
| Garage/Carport | 3 car garage | 3 car garage | | 3 car garage | | | |
| Porch/Patio/Deck | Porch,decks | Porch,patio | | Porch,decks | | | |
| Golf Crse | Yes | Identical | | Identical | | | |
| 18 hole crse, comm center | Ironbridge | | | | | | |
| Fitness center | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ 50,515 | ☒ + ☐ - | $ 63,450 | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net 5.1 % | | Net 7.3 % | | Net % | |
| of Comparables | | Gross 1.0 % | $ 934,485 | Gross 25.3 % | $ 938,450 | Gross % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 3/7/2007 | None w/in prior yr | None w/in prior yr | |
| Price of Prior Sale/Transfer | $350,000 lot only | | | |
| Data Source(s) | MLS | | | |
| Effective Date of Data Source(s) | verified 2/15/2010 | | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Form 1004.(AC) — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 67**

# Market Conditions Addendum to the Appraisal Report

File No.  0000682

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 1246 Riverbend Way | City Glenwood Springs | State CO | ZIP Code 81601 |
|---|---|---|---|---|

| Borrower | Ironbridge Homes, LLC |
|---|---|

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as detailed below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

**MARKET RESEARCH & ANALYSIS**

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 1 | 0 | 3 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 0.17 | | 1.00 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | | | 14 | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | | | 14.0 | ☐ Declining | ☐ Stable | ☐ Increasing |

| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Median Comparable Sale Price | 887,500 | 0 | 890,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 63 | | 466 | ☐ Declining | ☐ Stable | ☐ Increasing |
| Median Comparable List Price | 899,000 | | 997,000 | ☐ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 98.72 | | 89.27 | ☐ Increasing | ☐ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? ☐ Yes ☐ No | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).    Seller concessions ltd in local real estate mkt

Are foreclosure sales (REO sales) a factor in the market?   ☐ Yes   ☒ No    If yes, explain (including the trends in listings and sales of foreclosed properties).

Cite data sources for above information.    GWS/Aspen Board of Realtors, Land Title Guarantee Co., Realtors

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or analyzed withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
There is limited information available - insufficent to support overall trends.  This correlates to the broader local real estate market as a whole.
The Land Title Co mkt analysis for 2009 show 11 mos thruout the yr with transactions and dollars down from 2008 in the dbl digits.The only mo with decreases in these categories from 2008 in the single digit was December.The number of transactions are down 3%,the dollar amt down 9%.For the entire yr the no of transactions was dwn 60%,dollar amt dwn 67%.

**CONDO/CO-OP PROJECTS**

If the subject is a unit in a condominium or cooperative project , complete the following:       Project Name:

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?   ☐ Yes   ☐ No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

**APPRAISER**

| Signature *Jane McCollor* | Signature |
|---|---|
| Appraiser Name   Jane McCollor | Supervisory Appraiser Name |
| Company Name   McCollor Residential Appraisals | Company Name |
| Company Address   PO Box 3283, Glenwood Springs, CO  81602 | Company Address |
| State License/Certification #  CR40014964   State   Colorado | State License/Certification #   State |
| Email Address   mcjaynes@comcast.net | Email Address |

| Freddie Mac Form 71   March 2009 | Page 1 of 1 | Fannie Mae Form 1004MC   March 2009 |
|---|---|---|

Form 1004MC2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 67**

File No. 0000682  Page #13

**Subject Photo Page**

| | |
|---|---|
| Borrower/Client | Ironbridge Homes, LLC |
| Property Address | 1246 Riverbend Way |
| City Glenwood Springs | County Garfield    State CO    Zip Code 81601 |
| Lender Alpine Bank Mortgage | |



**Subject Front**

1246 Riverbend Way

| | |
|---|---|
| Sales Price | n/a |
| GLA | 3,322 |
| Total Rooms | 8 |
| Total Bedrms | 4 |
| Total Bathrms | 3.5 |
| Location | S GWS |
| View | Excell-river/mtn |
| Site | 44,275 sq ft |
| Quality | Avg - abv avg |
| Age | 2 yr |



**Subject Rear**



**Subject Street**

Form PIC4x6.SR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 67**

File No. 0000682    Page #14

| Borrower/Client | Ironbridge Homes, LLC | | | |
|---|---|---|---|---|
| Property Address | 1246 Riverbend Way | | | |
| City   Glenwood Springs | County   Garfield | State   CO | | Zip Code   81601 |
| Lender   Alpine Bank Mortgage | | | | |



**Subject Interior**

1246 Riverbend Way
Sale Price        n/a
GLA               3,322
Total Rooms       8
Bedrooms          4
Bathrooms         3.5
Location          S GWS
View              Excell-river/mtn
Site              44,275 sq ft
Quality           Avg - abv avg
Age               2 yr



**Subject Interior**



**Subject Interior**

**Exhibit G - Lot 67**

File No. 0000682  Page #15

**Comparable Photo Page**

| Borrower/Client | Ironbridge Homes, LLC | | | | |
|---|---|---|---|---|---|
| Property Address | 1246 Riverbend Way | | | | |
| City Glenwood Springs | County Garfield | State CO | Zip Code 81601 |
| Lender Alpine Bank Mortgage | | | | | |



### Comparable 1

221 Crystal Canyon Drive

| | |
|---|---|
| Proximity | approx 7 miles |
| Sale Price | 1,000,000 |
| GLA | 3,177 |
| Total Rooms | 8 |
| Total Bedrms | 4 |
| Total Bathrms | 3.5 |
| Location | Carbondale |
| View | Similar |
| Site | 13,299 sq ft |
| Quality | Similar |
| Age | 2 yrs |



### Comparable 2

130 Crystal Canyon Drive

| | |
|---|---|
| Proximity | approx 7 miles |
| Sale Price | 880,000 |
| GLA | 3,881 |
| Total Rooms | 7 |
| Total Bedrms | 4 |
| Total Bathrms | 3.5 |
| Location | Carbondale |
| View | Similar |
| Site | 21,550 sq ft |
| Quality | Similar |
| Age | 10 yrs Rem |



### Comparable 3

50 Cottage Drive

| | |
|---|---|
| Proximity | approx 3 miles |
| Sale Price | 900,000 |
| GLA | 2,758 |
| Total Rooms | 7 |
| Total Bedrms | 3 |
| Total Bathrms | 3.5 |
| Location | Carbondale |
| View | Similar |
| Site | 14,766 sq ft |
| Quality | Similar |
| Age | 6 yrs |

| | |
|---|---|
| Borrower/Client | Ironbridge Homes, LLC |
| Property Address | 1246 Riverbend Way |
| City Glenwood Springs | County Garfield    State CO    Zip Code 81601 |
| Lender Alpine Bank Mortgage | |



### Comparable 4

67 Riverbend Way

| | |
|---|---|
| Proximity | approx 4 blocks |
| Sale Price | 985,000 |
| GLA | 3,100 |
| Total Rooms | 7 |
| Total Bedrms | 4 |
| Total Bathrms | 4.5 |
| Location | S GWS |
| View | Similar |
| Site | 15,724 sq ft |
| Quality | Similar |
| Age | 3 yrs |



### Comparable 5

1270 Riverbend Way

| | |
|---|---|
| Proximity | hse next door |
| Sale Price | 875,000 |
| GLA | 2,100 |
| Total Rooms | 7 |
| Total Bedrms | 3 |
| Total Bathrms | 3.5 |
| Location | S GWS |
| View | Identical |
| Site | 51,981 sq ft |
| Quality | Similar |
| Age | 1 yr |

### Comparable 6

Proximity
Sale Price
GLA
Total Rooms
Total Bedrms
Total Bathrms
Location
View
Site
Quality
Age

**Building Sketch (Page - 1)**

File No. 0000682 | Page #17

| Borrower/Client | Ironbridge Homes, LLC | | | | |
|---|---|---|---|---|---|
| Property Address | 1246 Riverbend Way | | | | |
| City Glenwood Springs | | County Garfield | | State CO | Zip Code 81601 |
| Lender Alpine Bank Mortgage | | | | | |



Form SKT.BldSkl — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 67**

File No. 0000682    Page #18

**Location Map**

| | |
|---|---|
| Borrower/Client   Ironbridge Homes, LLC | |
| Property Address  1246 Riverbend Way | |
| City   Glenwood Springs | County   Garfield | State   CO | Zip Code   81601 |
| Lender   Alpine Bank Mortgage | |



Form MAP.LOC — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Exhibit G - Lot 67**

| Borrower | Ironbridge Homes, LLC | | | | File No. 0000682 |
| Property Address | 1246 Riverbend Way | | | | |
| City | Glenwood Springs | County | Garfield | State CO | Zip Code 81601 |
| Lender/Client | Alpine Bank Mortgage | | | | |

# APPRAISAL AND REPORT IDENTIFICATION

**This Appraisal Report is** one **of the following types:**

☐ **Self Contained**  (A written report prepared under Standards Rule  2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☒ **Summary**  (A written report prepared under Standards Rule  2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ **Restricted Use**  (A written report prepared under Standards Rule  2-2(c) , pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

· The statements of fact contained in this report are true and correct.

· The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

· I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.

· I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

· My engagement in this assignment was not contingent upon developing or reporting predetermined results.

· My compensation for completing this assignment was not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

· My analyses, opinions and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

· I have (or have not) made a personal inspection of the property that is the subject of this report.

· No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report.)

## Comments on Appraisal and Report Identification

**Note any USPAP related issues requiring disclosure and any State mandated requirements:**

The purpose of this appraisal is to establish market value for financing purposes.

Extraordinary Assumption and Limiting Condition

The findings within this appraisal report are based on observable conditions noted at the time of the inspection and other conditions known to exist at the time of the appraisal.  I am not a licensed building contractor nor professional building inspector.  I am not qualified to survey or analyze physical items - of either site or improvements -  that are not readily visible.  If any of the parties in this transaction have questions or concerns regarding any mechanical or structural physical problems, condition, infestation, contamination, soils, environmental hazards or other issues regarding the subject property - of either site or improvements -  an expert in that field of specialty should be consulted.

**APPRAISER:**

Signature: _Jane McCollor_
Name:  Jane McCollor
Date Signed:  2/20/2010
State Certification #:  40014964
or State License #:
State:  Colorado
Expiration Date of Certification or License:  12/31/2011

Effective Date of Appraisal:  2/17/2010

**SUPERVISORY APPRAISER (only if required):**

Signature: _____
Name: _____
Date Signed: _____
State Certification #: _____
or State License #: _____
State: _____
Expiration Date of Certification or License: _____
Supervisory Appraiser inspection of Subject Property:
☐ Did Not    ☐ Exterior-only from street    ☐ Interior and Exterior

**Exhibit G - Lot 67**

File No. 0000682  Page #20

RESUME

Jane McCollor
PO Box 3283
Glenwood Springs, CO  81602                                    Telephone/fax: (970)945-4752

Certified Residential Appraiser #CR40014964

Employment
Re:  Residential Appraisal

McCollor Residential Appraisals – established March 1999

Garfield County Assessor's Office – March 1997 to March 1999

Independent Fee Appraiser – 1983 to 1985


Education
Re:  Residential Appraisal

Real Estate Appraisal Principles, AIREA, 1983
Basic Valuation Procedures, AIREA, 1983
Introduction to Appraisal. DPT, 1997
Standards and Ethics, DPT, 1997
Vacant Land Workshop. DPT, 1998
Condominium Valuation Workshop. DPT, 1998
Bed and Breakfast Workshop, DPT, 1998Supple
Appraisal 101: Market Approach, DPT, 1998
FHA Residential Requirements, The Appraisal Institute, 2000
Residential Construction, University of Colorado, 2000
Investment & Taxation, Colorado Association of Realtors, 2001
Real Estate Law, Mckissock Inc., 2002
Standards and Ethics, McKissock, Inc., 2002
Terminology, Real Property, Math, Government Controls, Valuation & Appraisal, Finance,
Contracts/Agency, Contracts & Regulations I, II, III:  Real Estate Training Center, 2005
USPAP Update:  Van Education Center, 2005
Environmental Pollution and Mold, McKissock, Inc. 2006
Appraising the Oddball, McKissock, Inc. 2006
Appraising for the Secondary Market, McKissock, Inc. 2006
Appraising Historic Properties, McKissock, Inc. 2006
Sales Comparison Approach, McKissock, Inc. 2006
USPAP Update: McKissock, Inc. 2007

Employment
Re:  Additional

Rocky Mountain HMO
Provider Relations

Rocky Mountain Planned Parenthood
Clinic Director

Colorado Mountain College
Program Director

Garfield County Housing Authority
Executive Director


Education
Re:  Additional

University of the State of New York, B.A., Degree in Liberal Arts


Appraisal Clients Include:

| | |
|---|---|
| Alpine Bank | Blue Sky Mortgage |
| Bank of America, NA | Colorado National Bank |
| Bank of America Private Bank | Liberty Bank, FSB |
| American National Bank | Mountain Mortgage |
| Sterling Bank | Strong Financial Group, Inc |
| US Bank | Wells Fargo |

File No. 0000682  Page #21

# STATE OF COLORADO
## Department of Regulatory Agencies
## Division of Real Estate

Active

Cert Residential Appraiser

PRINTED ON SECURE PAPER

| 40014964 | Jan  1 2009 | Dec 31 2011 |
|----------|-------------|-------------|
| Number | Issue Date | Expires |

JANE E MCCOLLOR
GLENWOOD SPRINGS, CO 81602

_____          _____
Program Administrator                    Licensee Signature

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                          :

In re:                    :     Chapter 11
                          :

LEHMAN BROTHERS HOLDINGS INC.,  :     Case No. 08-13555 (JMP)
*et al.*,               :    (Jointly Administered)
                          :

              Debtors.  :
------------------------------------------------------- x

## ORDER GRANTING ALPINE BANK
## <u>LIMITED RELIEF FROM THE AUTOMATIC STAY</u>

Upon consideration of the Motion by Alpine Bank ("Alpine" or the "Movant") for Relief from Automatic Stay (the "Motion")[1]; any responses timely filed thereto; and it appearing that notice of the Motion and hearing thereon was duly and properly given and no other or further notice appearing necessary; and upon the record of the hearing held before the Court on September 22, 2010 there appears to be sufficient cause to grant the relief requested it; is hereby

ORDERED that the Motion is granted as set forth herein; and it is further

ORDERED that pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is modified to permit the Movant to take all steps necessary to obtain possession of, foreclose on, hold for sale and otherwise dispose of the Property and any and all such other actions as may be necessary to protect its interests in the Property; and it is further

ORDERED that, if the proceeds realized from the public trustee's sale or other commercially reasonable disposition of the Property by the Movant are in excess of the amount necessary to pay the costs of foreclosure and sale, including, but not limited to, public trustee fees, real estate taxes, and the Notes in full (including, but not limited to all fees, costs, and

---

[1]    Any capitalized term not defined herein shall have the meaning assigned to it in the Motion.

**Exhibit H**

claims thereon), the Movant shall provide LB's counsel with immediate written notice of any such excess proceeds; and it is further

ORDERED that, Debtor LB Rose Ranch LLC's Junior Lien interests may be expunged or foreclosed upon by any legal and commercially reasonable steps taken by the Movant to dispose of the Property; and it is further

ORDERED, that this Court shall retain jurisdiction to interpret, enforce, and resolve any disputes arising under or related to this Order.

Dated: _____, 2010
New York. New York

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

**Exhibit H**