Submit
Original

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re :
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*, :
:
Debtors. :
-----------------------------------------------------------------x

Chapter 11 Case No.

08-13555 (JMP)

(Jointly Administered)

### REPLY OF WILLIAM KUNTZ, III TO DEBTORS' OBJECTION TO PROOFS OF CLAIM

SEP 21

Now comes William Kuntz, III who appears here Pro Se and respectfully submits the following:

I welcome the Debtor's Motion to challenge my claims. If denied, it will clear my Standing and open the way for a Motion to either appoint a Ch 11 Trustee[1] or convert this Case to Ch 7, thus ending the ridiculous feeding frenzy of legal fee's and patchwork of business adventures in the name of maximizing the Estate. The Court has already expressed that it doesn't care what happened in Delaware or any other place, but in order to fairly consider the Motion that is just exactly what it will have to do.

1)      In the most part, the papers of Weil, Gotshal is really just a rehash of the Papers filed in opposition to my Motion early on in the Case to lift the Stay. <Docket # 830 Running over 110 pages>

What Weil, Gotshal does not discuss, is that it was Co-Counsel to Grand Union in the 3rd Ch 11 Case in New Jersey at a time it also was acting for Lehman.

Ex1 Letter Opinion of US District Judge Martini.contained in Docket # 3028

The Affidavit of William Kuntz, III.

---

[1] If the appointment were up to me, I would select former Governor of New York, the Honorable George Pataki.

2) Docket 3028 also contains extracts of Commitment Letters, Revolving Credit Agreement and Guarantee involving several hundred million US dollars. Weil, Gotshal is clearly marked as one of the law firms. Ex 2,3 &4

Accordingly, Weil,Gotshal is well aware and deeply knowledgeable of the affairs of Grand Union. For Mr. Waisman to say otherwise is really a disservice to the Bankruptcy Bar of this District.

3) While Mr. Waisman's professional profile speaks in glowing terms of his Professional Accomplishments it does not disclose if he is a Student of Military History. If he had been he would have recognized that most of what went on in Grand Union before was merely Chaff[2] used in World War II as Countermeasures to the German Luftwaffe.

4) The important facts, which Weil, Gotshal has failed to inform this Court are fairly simple. Kuntz owns Grand Union Capital Corp 0% Notes. At the confirmation hearing before Judge Walsh, in an Oral Modification Made on the Record, it was stated that Kuntz was not taking the 0% Settlement and that his Notes/ and the respective Indentures remained in full force and effect. That accordingly his Securities survived the First Ch 11 Case.

---

[2] http://en.wikipedia.org/wiki/Chaff_(countermeasure)

5) The Lehman Debtor's seem to deny that there was a Cash Escrow. However, it is Clearly set forth in the Ch 11 Plan in Delaware. Also contained in the Case Records[3] of Grand Union is that 99.7% more or less of the 0% Noteholders tendered into the Settlement.

6) It may be recalled, upon information and belief, and as reflected on a Transcript before Judge Winfield in New Jersey that the Cash Escrow Account was applied to the Lehman Debt in the 3rd Grand Union Ch 11. At that time, C&S Wholesaler's purchased the Assets of Grand Union and made a payment of about $300 Million.

7) As the Docket of this Case reveals, the New York State Comptroller declined to inquire into the whereabouts of the Escrow Fund. <Docket 5898> Ex 5. Nor would C&S provide information <Docket 9491> Ex 6. Accordingly, this Party has had <u>no useful Discovery</u> as to the whereabouts of the Cash Escrow Funds over and above what happened in Delaware and New Jersey. This Party believes that Lehman took and holds the Money. That further Lehman took the Money without benefit of an Order from either Judge Walsh or Judge Winfield. They took it because by virtue of what is sometimes called strong hands[4].

---

[3] The Case Records are in the Federal Record Archives outside of Philadelphia.
[4] Investopedia-http://www.investopedia.com/terms/s/stronghands.asp

8) This party has already advised the Court that he divested his stock in Lehman when it became clear that there was going to be a conflict. Further, Lehman deposited any Excess with the State Comptroller of New York.

### Item Details

- **Name:**
- KUNTZ WILLIAM A
- **Address:**
- BOX 461 LAKE PLACID NY 12946
- **Reported By:**
- LEHMAN BROTHERS HOLDINGS INC
- **Type of Property:**
- MUTUAL FUNDS/DIVIDEND REINVEST BOOK SHRS
- **OUF Code:**
- 033073395/027130763
- **Year Reported:**
- 2007

Further, a portion of the Assets of Grand Union Capital Corp also came into the State Comptrollers Possession.

### Item Details

- **Name:**
- GRAND UNION CAPITALCORP
- **Address:**
- C/O THE PENN TRAFFIC COMPANY 411 THEODOR E FREMD AVE RYE NY 10580
- **Reported By:**
- MORGAN GUARANTY TRUST CO OF NY
- **Type of Property:**
- DEMAND DEPOSIT ACCOUNT(S)
- **OUF Code:**
- 000404287/000449480
- **Year Reported:**
- 1998

### Item Details

- **Name:**
- GRAND UNION CAP
- **Address:**
- C/O THE PENN TRAFFIC COMPANY 411 THEODOR E FREMD AVE RYE NY 10580
- **Reported By:**
- DEUTSCHE BANK TRUST CO AMERICAS
- **Type of Property:**
- DEMAND DEPOSIT ACCOUNT(S)
- **OUF Code:**

- 028111433/022135771
- **Year Reported:**
- 2005

This Party has already laid claim to these funds as the remaining creditor of Grand Union Capital Corp

The real question is what happened to the Cash Escrow. If Lehman took it, then the Kuntz Claims are valid and Weil, Gotshal is guilty of aiding and abetting a Fraud.

Claimant expects to file a supplement to this.

Respectfully,

William Kuntz, III
India St PO Box 1801
Nantucket Island, Ma 02554-1801

Sept 15, 2010
Hyannis, Ma

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
JUDGE

June 10, 2005

**LETTER OPINION**

**VIA REGULAR MAIL**

Ravin, Greenberg & Marks, P.A.
Sheryll S. Tahiri, Esq.
101 Eisenhower Pkwy.
Roseland, NJ 07068

*(Attorneys for The Grand Union Company)*

Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, P.C.
Thomas G. Aljian, Jr., Esq.
The Legal Center
One Riverfront Plaza
Newark, NJ 07102

*(Attorney for America, Inc.)*

Re:   **The Grand Union Co. v. Americe, Inc.**
      **Docket No.: 04-5669 (WJM)**

Dear Counsel:

This matter comes before the Court on The Grand Union Company's ("Grand Union") motion pursuant to Federal Rules of Civil Procedure 59 and 60 and Local Civil Rule 7.1(g) for reconsideration of the Court's April 18, 2005 Order dismissing Grand Union's bankruptcy appeal for want of prosecution. For the reasons set forth below, the motion is **DENIED**.

**BACKGROUND**

Bankruptcy Judge Novalyn L. Winfield entered an Order on August 6, 2004 that, among other things, denied bankruptcy debtor Grand Union's motion for summary judgment and granted America, Inc. ("America") leave to file an administrative claim request. Six days later, on August 12, 2004, Grand Union, through counsel Ravin Greenberg P.C. ("Ravin Greenberg") and Weil, Gotshal & Manges LLP ("Weil Gotshal"), filed a notice of appeal and shortly thereafter (on August 23, 2004) filed a designation of items to be included in the record and statement of issues to be presented on appeal pursuant to Bankruptcy Rule 8006. The bankruptcy court transmitted these filings to this Court on November 17, 2004. Although Grand Union was

required by rule to submit appellate briefs to this Court within fifteen days of its appeal having been docketed, Fed. R. Bankr. P. 8009(a)(1), the notation of this transmission on the docket indicates that Grand Union was given until December 27, 2004. Despite this generous briefing schedule, Grand Union never filed any appellate brief. This Court exercised its discretion and dismissed Grand Union's appeal by Order dated April 18, 2005 for want of prosecution.

Counsel for Grand Union—specifically, Ravin Greenberg, not Weil Gotshal—now asks the Court to reconsider this dismissal on the ground that Grand Union's failure to submit any appellate brief was attributable to counsel's "mistake and excusable neglect." (*See* Memorandum of Law in Support of Motion for Reconsideration [*hereinafter* "App. Br."].) Specifically, counsel for Grand Union points out that the attorney who was primarily in charge of handling Grand Union's appeal, Allan Harris ("Mr. Harris") of Ravin Greenberg, left the firm December 31, 2004 and that "[i]t was only after [Mr. Harris] left, much past the deadline set forth in Rule 8009, that [Howard S. Greenberg ("Mr. Greenberg"), also of Ravin Greenberg] became aware that a brief had not been filed." (*See* Cert. of Howard S. Greenberg ¶ 10.) Because the December 27, 2004 deadline ran several days before Mr. Harris left Ravin Greenberg, counsel for Grand Union also notes that "[d]uring the time of filing of the appeal, several complications made it difficult for [Ravin Greenberg] to file a brief on Appellant's behalf, and to proceed with the appeal." (*Id.* ¶ 8.)

## ANALYSIS

Although dismissal of bankruptcy appeals for want of prosecution is discretionary, courts must at least consider less severe sanctions for a litigant's failure to prosecute its case. *See Jewelcor, Inc. v. Asia Commercial Co., Ltd.*, 11 F.3d 394, 397 (3d Cir. 1993). Counsel for Grand Union argues, therefore, that this Court, rather than dismissing Grand Union's appeal for want of prosecution, should have resorted to the less severe sanction of either issuing an Order to Show Cause setting forth an expedited briefing schedule or, instead, simply issuing another briefing schedule. (*See* App. Br. at 4.) The Court fails to see how giving appellant additional time to submit an appellate brief *which at the time of dismissal was already almost four months late* is an effective "sanction." Indeed, that would be no sanction at all.

The Court can discern no other effective sanction for failure to submit an appellate brief. As this Court has already explained, the bankruptcy rules require appellant to file a brief with this Court within fifteen days of an appeal having been docketed. Fed. R. Bankr. P. 8009(a)(1). The purpose of the briefing schedule in Bankruptcy Rule 8009 is to provide for the expeditious resolution of bankruptcy proceedings. *See Jewelcor*, 11 F.3d at 397. It is clear that the purpose of the rule would be completely thwarted were the Court to allow Grand Union to delay indefinitely the filing of its appellate brief, without which the Court cannot even begin to review the merits of its appeal.

Grand Union's failure to prosecute its appeal is the result of its own neglect. Indeed, Ravin Greenberg acknowledges as much. (*See* App. Br. at 4.) Unable to dispute that it had notice of the December 27, 2004 deadline, Ravin Greenberg offers only the vague excuse that "several complications made it difficult for [Ravin Greenberg] to file a brief on Appellant's

behalf." This neglect is all the more inexplicable considering that Grand Union appears to have been represented in bankruptcy proceedings not by one but in fact by two different law firms, the other—Weil Gotshal—being known for the strength of its bankruptcy practice. (*See* Notice of Appeal dated Aug. 12, 2004).

Finally, there is evidence suggesting that Grand Union's failure to prosecute its appeal simply reflects its history of proceeding in a dilatory manner. That is, during the bankruptcy court's October 4, 2004 telephone conference with counsel for Americe and with Ravin Greenberg regarding, among other things, the instant appeal, Judge Winfield stated: "I actually find this issue of appeal a little bit frustrating. [Grand Union] has had an astonishing disinclination to try this case. It's been difficult to get this to final conclusions. . . . I'm tired of fooling around. . . . . [I] implore both parties to act with all due speed to get [Grand Union's appeal] before the district court and adjudicated . . . . This is an old adversary and it shouldn't hang around." (Transcript of October 4, 2004 Telephone Status Conference before Honorable Novalyn L. Winfield at 8:6–11, 10:22–24, 11:4–5.) In response to Judge Winfield's request that Grand Union diligently prosecute its appeal, Mr. Greenberg, who now asks the Court to excuse Grand Union's failure to file any appellate brief because the Ravin Greenberg attorney primarily handling Grand Union's bankruptcy case left the firm four days *after* the December 27, 2004, stated: "We're trying to, Your Honor." (*Id.* at 11:3.) Grand Union nevertheless failed to prosecute its appeal despite Mr. Greenberg's representation to Judge Winfield that it would do so with all due speed.

## CONCLUSION

For the foregoing reasons, Grand Union's motion for reconsideration of the Court's April 18, 2005 Order dismissing Grand Union's bankruptcy appeal for want of prosecution is **DENIED**.

An appropriate Order accompanies this Letter Opinion.

s/William J. Martini

**William J. Martini, U.S.D.J.**

cc:  The Honorable Ronald J. Hedges, U.S.M.J.

Parties: **Grand Union**
Sectors: Retail
Law Firms: Simpson Thacher & Bartlett
Governing Law: New York
EXHIBIT 10.39
CONFIDENTIAL

SBC WARBURG DILLON LEHMAN BROTHERS INC. READ INC.

SWISS BANK CORPORATION LEHMAN COMMERCIAL PAPER INC.

THE Grand Union COMPANY
$300,000,000 SENIOR SECURED CREDIT FACILITY

Commitment Letter

April 23, 1998

The Grand Union Company 201 Willowbrook Boulevard Wayne, New Jersey 07470

Attention: Mr. Jeffrey P. Freimark

Ladies and Gentlemen:

You have advised (a) Swiss Bank Corporation ("SBC") and SBC Warburg Dillon Read Inc. ("SBCWDR") and (b) Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Inc. ("LBI") that The Grand Union Company, a Delaware corporation (the "Company"), intends to (i) solicit consents to a prepackaged plan of reorganization pursuant to Section 3(a)(9) of the Securities Act of 1933, as amended, and immediately thereafter file a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for either the Southern District of New York or the District of Delaware or the District of New Jersey (the "Bankruptcy Court") and (ii) in connection therewith, upon consummation (the "Reorganization") of the Borrower's prepackaged plan of reorganization (the "Plan"), which shall be in form and substance reasonably satisfactory to SBCWDR, SBC, LBI and LCPI, refinance the Company's existing $250,000,000 senior secured credit facility, as such facility may be rolled up into a post-petition financing pursuant to Section 364 of the Bankruptcy Code. In that connection, you have requested that SBCWDR and LBI agree to structure, arrange and syndicate senior secured credit facilities in an aggregate amount of up to $300,000,000 (the "Financing"), and

that SBC and LCPI commit to provide the entire principal amount of the Financing Facilities. It is proposed that the Financing be provided in two tranches, comprising (i) a 5-year term loan tranche in an aggregate amount of up to $230 million (the "Term Facility") and (ii) a 5-year revolving credit facility in an aggregate amount of up to $70 million (the "Revolving Facility", and together with the Term Facility, the "Facility"). SBCWDR, SBC, LBI and LCPI hereby acknowledge that the Agreement in Principle entered into March 30, 1998 (the "Agreement in Principle") by and between the Company and the Unofficial Steering Committee (the "Steering Committee") for certain holders of the Company's 12% Senior Notes due 2004, to the extent it pertains to the Plan, is acceptable.

SBCWDR and LBI are pleased to advise you that they are willing to act as exclusive advisors and arrangers for the Facility. Furthermore, SBC and LCPI are pleased to advise you of their several but not joint commitment (the "Commitment") to provide up to an aggregate of $300 million of the Facility ($150 million of which shall be provided by SBC and $150 million of which shall be provided by LCPI) upon the terms and subject to the conditions set forth or referred to in this commitment letter and in the Term Sheet attached hereto as Exhibit A (the "Term Sheet", and such commitment letter with the Term Sheet, the "Commitment Letter").

It is agreed that (i) SBCWDR and LBI will act as the sole and exclusive advisors and arrangers, (ii) SBC will act as the sole and exclusive syndication agent and (iii) LCPI will act as the sole and exclusive administrative agent, for the Facility, and each will, in such capacities, perform the duties and exercise the authority customarily performed and exercised by it in such roles. You agree that no other agents, co-agents or arrangers will be appointed, no other titles will be awarded and no compensation (other than that expressly contemplated by the Term Sheet, this Commitment Letter and the Fee Letter referred to below) will be paid in connection with the Facility unless you and we shall so agree.

We intend to syndicate the Facility to a group of financial institutions (together with SBC and LCPI, the "Lenders") acceptable to SBC, LCPI and the Company (such approval of the Company not to be unreasonably withheld). SBC and LCPI intend to commence syndication efforts promptly upon the execution of this Commitment Letter, and you agree actively to assist SBC and LCPI in completing a syndication reasonably satisfactory to them. Such assistance shall include (a) your using commercially reasonable efforts to ensure that the syndication efforts benefit materially from your existing lending relationships, (b) direct contact between senior management and advisors of the Company and the proposed Lenders, (c) assistance in the preparation of a Confidential Information Memorandum and other marketing materials to be used in connection with the syndication and (d) the hosting, with SBC and LCPI, of

2

one or more meetings of prospective Lenders. You also agree that, at your expense, you will work with SBCWDR, SBC, LBI and LCPI to procure a rating for the Facility by Moody's Investors Service, Inc. and Standard & Poor's Ratings Group.

SBCWDR and LBI will manage all aspects of the syndication, including decisions as to the selection of institutions to be approached and when they will be approached, when their commitments will be accepted, which institutions will participate, the allocations of the commitments among the Lenders and the amount and distribution of fees among the Lenders. To assist SBCWDR and LBI in their syndication efforts, you agree promptly to prepare and



Parties:      **Grand Union**
Sectors:      Retail
Law Firms:    Simpson Thacher & Bartlett, Weil, Gotshal & Manges
Governing Law: New York
EXHIBIT 10.40

$172,022,020

REVOLVING CREDIT AGREEMENT

among

THE GRAND UNION COMPANY, a Debtor-in-Possession,

as Borrower,

The Several Lenders
from Time to Time Parties Hereto,

SBC WARBURG DILLON READ INC.,
as Co-Advisor and Co-Arranger

SWISS BANK CORPORATION,
as Syndication Agent

LEHMAN BROTHERS INC.,
as Co-Advisor and Co-Arranger

and

LEHMAN COMMERCIAL PAPER INC.,
as Administrative Agent

Dated as of June 24, 1998

================================================================

TABLE OF CONTENTS

Page
---- SECTION 1. DEFINITIONS ........................................................................... 3
1.1 Defined Terms ................................................................................................ 3
1.2 Other Definitional Provisions ..................................................................... 20

SECTION 2. AMOUNT AND TERMS OF REVOLVING CREDIT COMMITMENTS ........ 21
2.1 Revolving Credit Commitments .................................................................. 21
2.2 Procedure for Revolving Credit Borrowing ................................................ 21
2.3 Swing Line Commitment .............................................................................. 22
2.4 Procedure for Swing Line Borrowing; Refunding of Swing Line Loans ... 22
2.5 Repayment of Loans; Evidence of Debt ...................................................... 24
2.6 Revolving Credit Commitment Fees, etc. .................................................. 25
2.7 Termination or Reduction of Revolving Credit Commitments ................ 25
2.8 Optional Prepayments .................................................................................. 25
2.9 Mandatory Prepayments and Revolving Credit Commitment Reductions ... 25
2.10 Conversion and Continuation Options ...................................................... 26
2.11 Minimum Amounts and Maximum Number of Eurodollar Tranches ....... 26
2.12 Interest Rates and Payment Dates ............................................................ 27
2.13 Computation of Interest and Fees .............................................................. 27
2.14 Inability to Determine Interest Rate ........................................................ 28
2.15 Pro Rata Treatment and Payments ............................................................ 28
2.16 Requirements of Law ................................................................................... 29
2.17 Taxes ............................................................................................................. 31
2.18 Indemnity ..................................................................................................... 33
2.19 Illegality ....................................................................................................... 33
2.20 Change of Lending Office ............................................................................ 33

SECTION 3. LETTERS OF CREDIT ........................................................................... 34
3.1 L/C Commitment ........................................................................................... 34
3.2 Procedure for Issuance of Letter of Credit ................................................. 34
3.3 Fees and Other Charges ................................................................................ 35
3.4 L/C Participations ........................................................................................ 35



Parties:     **Grand Union**
Sectors:     Retail
Law Firms:   Simpson Thacher & Bartlett, Weil, Gotshal & Manges
Governing Law: New York
60,000,000

REVOLVING CREDIT AND GUARANTEE AGREEMENT

among

THE GRAND UNION COMPANY, a Debtor-in-Possession,

as Borrower,

The Subsidiaries of the Borrower Parties Hereto,

The Several Lenders
from Time to Time Parties Hereto,

LEHMAN BROTHERS INC.,
as Advisor and Arranger

and

LEHMAN COMMERCIAL PAPER INC.,
as Administrative Agent

Dated as of October 3, 2000

===========================================================================

TABLE OF CONTENTS

Page

SECTION 1. DEFINITIONS..........................................................................-2-
1.1 Defined Terms................................................................................-2-
1.2 Other Definitional Provisions.......................................................-16-

SECTION 2. AMOUNT AND TERMS OF REVOLVING CREDIT COMMITMENTS..........-17-
2.1 Revolving Credit Commitments....................................................-17-
2.2 Procedure for Revolving Credit Borrowing..................................-17-
2.3 Repayment of Loans; Evidence of Debt.......................................-18-
2.4 Revolving Credit Commitment Fees, etc. ....................................-18-
2.5 Termination or Reduction of Revolving Credit Commitments.....-19-
2.6 Optional Prepayments..................................................................-19-
2.7 Mandatory Prepayments and Revolving Credit Commitment Reductions..-19-
2.8 Interest Rates and Payment Dates.................................................-20-
2.9 Computation of Interest and Fees.................................................-20-
2.10 Pro Rata Treatment and Payments..............................................-20-
2.11 Taxes............................................................................................-21-
2.12 Change of Lending Office..........................................................-23-

SECTION 3. LETTERS OF CREDIT........................................................-24-
3.1 L/C Commitment...........................................................................-24-
3.2 Procedure for Issuance of Letter of Credit..................................-24-
3.3 Fees and Other Charges................................................................-25-
3.4 L/C Participations.........................................................................-25-
3.5 Reimbursement Obligation of the Borrower................................-26-
3.6 Obligations Absolute....................................................................-26-
3.7 Letter of Credit Payments.............................................................-27-
3.8 Applications..................................................................................-27-

SECTION 4. PRIORITY AND LIENS........................................................-27-
4.1 Priority and Liens..........................................................................-27-
4.2 Security Interest in L/C Cash Collateral Account........................-28-
4.3 Payment of Obligations.................................................................-29-
4.4 No Discharge; Survival of Claims................................................-29-

SECTION 5. REPRESENTATIONS AND WARRANTIES............................-29-

Parties: **Grand Union**
Sectors: Retail
Law Firms: Simpson Thacher & Bartlett, Weil, Gotshal & Manges
Governing Law: New York
60,000,000

REVOLVING CREDIT AND GUARANTEE AGREEMENT

among

THE GRAND UNION COMPANY, a Debtor-in-Possession,

as Borrower,

The Subsidiaries of the Borrower Parties Hereto,

The Several Lenders
from Time to Time Parties Hereto,

LEHMAN BROTHERS INC.,
as Advisor and Arranger

and

LEHMAN COMMERCIAL PAPER INC.,
as Administrative Agent

Dated as of October 3, 2000

---

TABLE OF CONTENTS

Page

SECTION 1. DEFINITIONS ........................................................................... -2-
1.1 Defined Terms ..................................................................................... -2-
1.2 Other Definitional Provisions ............................................................. -16-

SECTION 2. AMOUNT AND TERMS OF REVOLVING CREDIT COMMITMENTS ........ -17-
2.1 Revolving Credit Commitments ......................................................... -17-
2.2 Procedure for Revolving Credit Borrowing ....................................... -17-
2.3 Repayment of Loans; Evidence of Debt ............................................. -18-
2.4 Revolving Credit Commitment Fees, etc. .......................................... -18-
2.5 Termination or Reduction of Revolving Credit Commitments .......... -19-
2.6 Optional Prepayments ......................................................................... -19-
2.7 Mandatory Prepayments and Revolving Credit Commitment Reductions ........ -19-
2.8 Interest Rates and Payment Dates ....................................................... -20-
2.9 Computation of Interest and Fees ....................................................... -20-
2.10 Pro Rata Treatment and Payments .................................................... -20-
2.11 Taxes ................................................................................................. -21-
2.12 Change of Lending Office ................................................................. -23-

SECTION 3. LETTERS OF CREDIT ................................................................ -24-
3.1 L/C Commitment ................................................................................ -24-
3.2 Procedure for Issuance of Letter of Credit ......................................... -24-
3.3 Fees and Other Charges ...................................................................... -25-
3.4 L/C Participations ............................................................................... -25-
3.5 Reimbursement Obligation of the Borrower ...................................... -26-
3.6 Obligations Absolute .......................................................................... -26-
3.7 Letter of Credit Payments ................................................................... -27-
3.8 Applications ........................................................................................ -27-

SECTION 4. PRIORITY AND LIENS ............................................................... -27-
4.1 Priority and Liens ............................................................................... -27-
4.2 Security Interest in L/C Cash Collateral Account .............................. -28-
4.3 Payment of Obligations ...................................................................... -29-
4.4 No Discharge; Survival of Claims ..................................................... -29-

SECTION 5. REPRESENTATIONS AND WARRANTIES .................................... -29-

http://www.techagreements.com/agreement_preview.aspx?num=220532&......

USBC SDNY

**Lehman Brothers Holdings Inc. (Chapter 11)**

08-13555

To The Clerk

please Docket the attached

FILED
BANKRUPTCY CT
2009 NOV 18 A 9:0
S.D. OF N.Y.



**THOMAS P. DiNAPOLI**
STATE COMPTROLLER

**LUKE BIERMAN**
GENERAL COUNSEL

**HELEN M. FANSHAWE**
DEPUTY COUNSEL

STATE OF NEW YORK
OFFICE OF THE STATE COMPTROLLER
110 STATE STREET
P. O. BOX 10337
ALBANY, NEW YORK 12201-5337

September 29, 2009

Grand Union Capital Corp.
Unclaimed Funds
Ref. No. 10267649
File No. 05-2280

William Kuntz, III
P.O. Box 1801
Nantucket, Massachusetts 02554

Dear Mr. Kuntz:

This is in response to your recent email regarding Lehman Brothers bankruptcy. This Office will not be entering a motion in the Bankruptcy Court to compel the reporting of abandoned funds. Please note that it is our understanding that all creditor claims were barred as of September 22, 2009.

Please send any correspondence, being sure to include the above captioned reference number and file number, to me at the following address:

Wendy H. Reeder
OSC Legal Services Division
P.O. Box 10337
Albany, New York 12201-5337

Very truly yours,

*[signature]*
Wendy H. Reeder
Associate Attorney

original

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
:
In re : Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, : 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
:
-------------------------------------------------------------x

**TO THE CLERK
PLEASE DOCKET THE ATTACHED**



**C&S Wholesale Grocers**

April 21, 2010

William Kuntz, III
India Street
P.O. Box 1801
Nantucket Island, Massachusetts 02554-1801



RECEIVED JUN - 7 2010 U.S. BANKRUPTCY COURT SO. DIST. OF NEW YORK

Re: Request for Information

Dear Mr. Kuntz:

I am writing this letter in response to our prior conversation and your request for information related to a transaction involving C&S Wholesale Grocers, Inc. ("C&S") and Grand Union Markets, LLC (the "Transaction"). Please be advised that C&S is not a party to, or otherwise involved in, the matter entitled *In Re: Lehman Brothers Holdings, Inc.*, which is pending in the New York Southern District Court. As such, C&S is neither required nor willing to provide you with the information you have requested concerning the Transaction. You may avail yourself of the publicly available bankruptcy court records for any and all information relative to the Transaction.

In addition, I respectfully request that you cease and desist from contacting C&S, its senior representatives, and C&S' counsel related to the Transaction, Landis Rath & Cobb, LLP. Your repeated communication with C&S, senior representatives of C&S, and Richard S. Cobb, Esq., is unwelcome and constitutes interference with our normal business operations. To the extent you insist on communicating with any of the aforementioned persons or entities regarding the Transaction, C&S will consider taking legal action against you to prevent such further harassment.

Thank you for your time and attention to this matter.

Sincerely,

Linda M. Peruzzi
Corporate Counsel

Copies to:
Richard S. Cobb, Esq.