UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re :                                                                                    Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*, :                    08-13555 (JMP)
:
Debtors. :                                                                              (Jointly Administered)
-----------------------------------------------------------------x

### FIRST SUPPLMENTAL REPLY O F WILLIAM KUNTZ, III TO DEBTORS' OBJECTION TO PROOFS OF CLAIM

Now comes William Kuntz, III who appears here *Pro Se* and respectfully submits

the following in Supplement to his Reply dated Sept 15, 2010.

Having made a reply to the Debtor's Motion within Hours[1] of arrival by email, Claimant

offers this Supplement:

1) It seems that Debtor's Counsel is unaware of Claimant's exact Holdings in

Grand Union Capital Corp. In the almost 2 years since Weil, Gotshal filed

Papers<Docket 830, Oct 11, 2008> in Opposition to Claimant's Motion to Lift the

Automatic Stay. <Docket 271, Sept 18, 2008> In that 2 years, Debtor's Counsel

could have obtained the Deposition of Claimant taken by Grand Union's

Counsel in Lake Placid, NY at the Law Offices of Briggs, Dwyer and Smith[2].

Or perhaps Weil, Gotshal already has it and is unwilling to share it with the Court.

In any event, Claimant owns 3 Grand Union Capital Corp 0% Notes or

Positions as used in Wall Street. The Face Amount are respectively $1.3 million,

$1 million and $892,000 US Dollars. This accordingly relates to the 3 Proofs

of Claim. There is no question that Claimant had problems getting his

proofs together and in on time[3]. However, as reflected in the Initial Proofs

---

[1] The Epiq Notice came @ 8:16 pm on the 15th, Claimants reply went out @ 11:29 pm on the same day.
[2] now Briggs Norfolk,LLP
[3] As already related, Claimant had problems with both the Case Numbers and the Calculation thru

there is a respective Claim for each Grand Union Capital Note.

2) Debtor's Counsel seems perplexed at the Calculation of Interest up to Lehman's Petition Date, yet it is well aware of Judge Winfield's Order of Aug 20, 1999. That Order clearly sets forth that they are 15% Notes. It is claimants understanding that these Notes began to accrue interest as of 1999, hence the Proofs of Claim reflect both principal and unpaid interest compounded @ 15%.

3) The $892,000 Note Controversy. Debtor's Counsel makes much of the back and forth over the Smallest Note. It is really quite simple. At the time Claimant purchased these Notes on the Open Market some 15 years ago. The Operations Manager of Bache, Halsey, Stuart[4]. <now Wells Fargo> was able to effect delivery of 2 Notes in Claimants name, however, the 3rd Note, the $892,000 was 'frozen out' so to speak by the transfer agent and Bache delivered it to Claimant in what is called 'street name[5]' with an open Endorsement. Over the next 2 years, Claimant held the Certificate in his briefcase[6]. Months after the expiration of the exchange offer and upon the advice of his broker, Mr. Allentoff, Claimant redeposited the $892,000 back into his account. The following morning, it was discovered that because Schroders had failed to toll the Cusip[7] Number Instruction to

---

the Date of the Petition.
[4] http://en.wikipedia.org/wiki/Halsey,_Stuart_%26_Co.
1.  [5] What does "in **street name**" mean, and why are securities held this way?
    In almost every instance when you buy or sell securities with a broker, your **name** is not actually on the stock or bond certificate. The **name** that appears on ...
    Cached  Similar

[6] Zero Halliburton now in possession of Claimant's younger son, Andrew.

Depository Trust Company, the Note was converted by Computer into Warrants.

That screw-up ended up before Judge Winfield and she observed that Claimant had never

Entered into the Exchange Offer, had not intended to enter into the Exchange

Offer and ordered the return of the Security. It was later discovered that

in a questionable bit of mischief, US Bank had shredded the remaining unissued

Notes, which no doubt was done to frustrate Claimant's recovery. Judge Winfield

then Ordered that a Stipulation be provided to Claimant.

4)      In order to understand the Escrow Account, the Court must understand some

of the History of Grand Union. Without going into all the details[8], the MHT entity

controlled both Grand Union and another Grocery Chain in Syracuse called Penn-Traffic.

MHT bailed out the ill-advised purchase of Grand Union by Solomon Brothers from the

English company controlled by Sir James Goldsmith. This was done by the sale of

hundreds of millions of dollars of Debt.

# Treasury bond scandal



Salomon Smith Barney logo from the late 1990s

In 1991, Salomon trader Paul Mozer was caught submitting false bids to the U.S. Treasury by Deputy Assistant Secretary Mike Basham, in an attempt to purchase more Treasury bonds than

---

1.  7 CUSIP Number Jan 31, 2006 ... CUSIP stands for **Committee on Uniform Securities Identification Procedures**.
    A **CUSIP** number identifies most securities, including: stocks of ...
    Cached  Similar

[8] http://www.fundinguniverse.com/company-histories/The-Grand-Union-Company-Company-History.html
    http://en.wikipedia.org/wiki/Grand_Union_(supermarket)

permitted by one buyer between December 1990 and May 1991. Salomon was fined $290 million, the largest fine ever levied on an investment bank at the time, weakening it and eventually leading to its acquisition by Travelers Group. CEO Gutfreund left the company in August 1991; a U.S. Securities and Exchange Commission (SEC) settlement resulted in a fine of $100,000 and his being barred from serving as a chief executive of a brokerage firm.[5] The scandal is covered extensively in the 1993 book *Nightmare on Wall Street*.

**Wikipedia.com**

Upon information and belief, at the time Grand Union was unloaded to MHT

Warren Buffett was acting as chairman of Solomon Brothers in an attempt to save his $800

Million Investment in Solomon Brothers.

In 1987, Berkshire Hathaway purchased 12% stake in Salomon Inc., making it the largest shareholder and Buffett the director. In 1990, a scandal involving John Gutfreund (former CEO of Salomon Brothers) surfaced. A rogue trader, Paul Mozer, was submitting bids in excess of what was allowed by the Treasury rules. When this was discovered and brought to the attention of Gutfreund, he did not immediately suspend the rogue trader. Gutfreund left the company in August 1991.[24] Buffett became Chairman of Salomon

**Wikipedia.com**

As Debtor's Counsel would have the Court believe, MHT was somehow just a marginal

Player in Grand Union. However, it is clear that is not the case. To be candid, Claimant

Always loves it when lawyers file thick Documents thinking that will dismay and

confuse. As is often the Case, they don't bother to read.

For example, Weil, Gotshal says that the MHT Escrow has nothing to do with the

Zero's. However, if one were to read Exhibit C Part 4 at page 5/6 one would see

```
"assigns, each holder of a Zero Coupon Note
that executes and delivers a Zero Claims Release pursuant to t re Plan and any
other person and/or entity against whom any of the Releasors may have a
Released Claim,"
&

"hereof arising out of or in connection with, or related in any manner to, the
issuance, ownership, purchase,
md/or sale of the Zero Coupon Notes including without limitation, any claims
arising under any state or Federal securities law"
```

So it seems that in fact there is a relationship. Further, and as things appear to be playing out the sale of almost $1 Billion of Securities without any real recovery[9] could clearly violate The Martin Act. As Mr. Waisman might recall, the Martin Act is a New York State Law.

5) In one of the major mistakes back 15 years ago, MHT did not file a Plan in Grand Union Capital or Grand Union Holdings. They were dismissed. Upon information and belief, the Balance Sheet of Grand Union Capital Corp reflected some $12 Million in hard assets. At the time of the Petition, Grand Union Capital was based in Rye, NY. <Docket 271, page 21> Ex 1 The address was 411 Theodore Fremd Ave, Rye, NY 10580-1410. After the Ch 11 Case was dismissed by Judge Walsh, MHT caused Grand Union Capital to be dissolved in Delaware. To the best of Claimant's knowledge this was done without Notice or any Distribution Creditors. As the Court may now note when Grand Union Capital was dissolved, the first report of Unclaimed Funds was made to New York State in 1998.

### Item Details

- **Name:**
- GRAND UNION CAPITALCORP
- **Address:**
- C/O THE PENN TRAFFIC COMPANY 411 THEODOR E FREMD AVE RYE NY 10580
- **Reported By:**
- MORGAN GUARANTY TRUST CO OF NY
- **Type of Property:**
- DEMAND DEPOSIT ACCOUNT(S)
- **OUF Code:**
- 000404287/000449480
- **Year Reported:**
- 1998

---

[9] Claimant has always marveled at the proposition put before Judge Walsh that of the $700 Million put into Grand Union Capital by the underwriting and downstreamed into Grand Union Company the same day, that there was no Promissory Note or other Contractual Device which would allow Grand Union Capital to recover or be paid.

To most people that is plain vanilla fraud.

The 2nd report was not made until 2005

### Item Details

- **Name:**
- GRAND UNION CAP
- **Address:**
- C/O THE PENN TRAFFIC COMPANY 411 THEODOR E FREMD AVE RYE NY 10580
- **Reported By:**
- DEUTSCHE BANK TRUST CO AMERICAS
- **Type of Property:**
- DEMAND DEPOSIT ACCOUNT(S)
- **OUF Code:**
- 028111433/022135771
- **Year Reported:**
- 2005

By my count, the 2nd Echeat Payment was made several years **after** the Cash Escrow was 'dissolved. How can Mr Waisman say that there was not some kind of funny-business going on?

### The Debtor's Theory of the Escrow.

6) The Debtor would have the Court believe that because the money went down a Rabbit Hole and came up in a Gopher Hole and was co-mingled and in all events repaid by C&S on the Purchase of the Grand Union Assets that it is not in Lehman's Hands. Nor does Weil, Gotshal address the unique problems of 0% Notes. While Claimant was free to defend his *ownership* of the $892,000 before Judge Winfield in New Jersey and not accept the Exchange Offer in Delaware before Judge Walsh, he was not free to step into the shoes of the Indenture Trustee. In fact, Claimant was very very concerned when this Court dismissed the mini-bond claims because of just the kind of problem that Weil, Goshal in it's ego-centric analysis overlooked. ie that US Bank and HSBC Bank as the respective Indenture Trustee's. At this point, in all fairness to claimant the ancient theory of Laches[10] must apply to the Debtor.

---

[10] http://en.wikipedia.org/wiki/Laches_(equity)

### *Vigilantibus non dormientibus æquitas subvenit.*

Had Weil, Gotshal bothered to think about this, they might have come to this conclusion 2 years ago. But because this is really a grudge match to defeat the rightful payment[11] of Claimant they have led with ego and not brains. They cannot adopt that now.

In fact, it is ironic that the relationship between Claimant and Weil, Gotshal has almost come to a full circle. Mr. Rodman, who served as the Trustee of W.T. Grant and wherein Mr. Miller and Weil, Gotshal earned its Fearsome Reputation in the Bankruptcy Courts was the retired chairman of Grand Union.

---

[11] As the Court may wish to note, the main actor @ Grand Union and who directed Weil, Goshal and opposed Claimant was himself arrested for Embezzlement from the Company

1. FBI Arrests Former Executive of **Grand Union**. - Free Online Library
   **Grand Union** does not anticipate that the allegedly **embezzled** funds will have an adverse impact on its financial statements, because the funds were already ...

**Article: Grand Union implements corporate reorganization. 1998**
CONTACT **Donald C. Vaillancourt**, 201/890-6100

: The Grand Union Co., Wayne

http://www.highbeam.com/doc/1G1-19452545.html

NEWARK, N.J. -- A former vice president for bankrupt grocer Grand Union Co. pleaded guilty to stealing more than $2.2 million in a false billing scheme that lasted 16 years

http://www.highbeam.com/doc/1G1-157479867.html

http://www.nytimes.com/1995/04/25/business/shopping-purgatory-or-paradise-northeast-s-supermarkets-outclassed-by-sun-belt-s.html

The manager of the Grand Union in Chappaqua declined to comment about the store's operations, and a company spokesman, Donald C. Vaillancourt, would not answer questions about the store.

Mr. Vaillancourt said Grand Union had a rigorous quality-control system. And he said the Consumer Reports rating of the Grand Union chain was "grossly unfair because of its methodology," questioning whether a national sample of 10,000 could adequately reflect the operations of a chain that had an average customer count of three million a week

7)  The 2nd Major Mistake that was made was not getting either Judge Winfield or Judge Walsh to approve the Dissolution of the Cash Escrow Fund. In a world Where Bankruptcy lawyers use the boiler plate ' in an abundance of caution' to do any number of things down to brushing ones teeth, not presenting this to Judge Winfield was a **Calculated Risk**. There was clear concern that had this gone before Judge Winfield that she might have awarded the Cash Escrow to this Claimant at that time. Nor can Weil, Gotshal come up with any reasonable excuse why when Grand Union Capital Corp funds were finding a new home in Albany with the New York State Comptroller, as opposed to Delaware where Grand Union was chartered, long after the Escrow was dissolved. Claimant believes and continues to believe that the Escrow was a proper Subject to Escheat to New York State. The Fact that Claimant cannot compel the New York State Comptroller to investigate does not mitigate the question. Without the Co-Operation of C&S or a moment of Truth[12] by the Debtor More can more facts[13] be developed.

---

[12] As Claimant recalls there is extensive case law in New York on the subject of Domination and Control by a lender which would resolve the Rabbit/Gopher Hole washing of the Escrow.

[13] Nor does Claimant feel that he should be asking the Court to Issue a Subpoena where a little bit of Candid Truthfulness would suffice. While Weil, Gotshal might be livid that Claimant would become an allowed Claimant, thicker unread documents will not win the day for them

**Conclusion**

The Court has a very interesting decision in this 15 year Odyssey of Claimant. In so far as the Claims represent $10/600,000^{th}$ of the total claims against the Estate, it could deny the Debtors Motion and move Claimant over to the allowed unsecured or it can dig back thru 3 prior Cases and try to figure out why,what,where,etc.

If I were sitting in Judgment, I would deny the Debtor's Motion **based alone** on the failure to disclose Judge Martini's Opinion and the clear Fact that Weil, Gotshal was co-counsel in New Jersey.

In fact, it would seem to me that even bringing such a motion mashes the concept of Professional Standards, but that would expect too much.

Respectfully,

William Kuntz, III
India St PO Box 1801
Nantucket Island, Ma 02554-1801
508-775-5225

Hyannis, Ma
Sept 16, 2010

KUNTZ VS G...

**NANTUCKET BANK**

A DIVISION OF SOVEREIGN BANK
NANTUCKET, MASSACHUSETTS 02554

271905
53-7013/2113

August 07, 2006

*****$210 DOLLARS AND 00 CENTS**

*****$210.00

TREASURER'S CHECK

WEST CHESTER COUNTY CLERK
WHITE PLAINS NEW YORK

AUTHORIZED SIGNATURE

⑈271905⑈ ⑆211370134⑆ 88 9500006⑈

Westchester County Clerk
Application for INDEX NUMBER pursuant to
CPLR §8018

FEE: $210.00

CLERK'S INITIALS________

THIRD PARTY ACTION

Spaces Below to be Typed or Printed by Applicant

.......................COURT: WESTCHESTER COUNTY

TITLE OF ACTION OR PROCEEDING

William Kuntz, III

V.

GRAND UNION CAPITAL CORPORATION

GRAND UNION HOLDINGS CORPORATION

TO BE COMPLETED BY APPLICANT

TYPE OF ACTION- RECORDS RETENTION

| | |
|---|---|
| ☐ FORECLOSURE | ☐ CERTIORARI |
| ☐ MATRIMONIAL | ☐ CONTRACT |
| ☐ GUARDIANSHIP | ☐ TORT |
| ☐ NAME CHANGE | ☐ OTHER |

*Name and Address of* [redacted] *Plaintiff or* [redacted]
- India St - P O Box 1801, Nantucket Island, Ma 02554-1801

*Name and Address of* [redacted] *Defendant* [redacted] C/
THE CORPORATION TRUST COMPANY
CORPORATION TRUST CENTER 1209 ORANGE STREET
WILMINGTON County: NEW CASTLE
DE Postal Code: 19801

411 Theodore Fremd Ave
Rye, NY 10580-1410
CONTACT: Grand Union Capital Corp

*Name of Payor*
William Kuntz

DO NOT DETACH

RECEIPT
Fee $210.00

.......................COURT: WESTCHESTER COUNTY
TITLE