**Hearing Date and Time:  October 20, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  October 13, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                    :
**In re**                                                           :    **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                        :    **08-13555 (JMP)**
                                                                    :
                                        **Debtors.**                :    **(Jointly Administered)**
                                                                    :
-------------------------------------------------------------------x

**NOTICE OF MOTION OF THE DEBTORS PURSUANT TO SECTION 363**
**OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY**
**PROCEDURE 9019 FOR AUTHORITY TO ENTER INTO SETTLEMENT**
**WITH SUNCAL TRUSTEE ON BEHALF OF SUNCAL INVOLUNTARY DEBTORS**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11

cases, including Lehman Commercial Paper Inc., as debtors and debtors in possession,

(collectively, the "Debtors"), pursuant to section 363 of title 11 of the United States Code and

Rule 9019 of the Federal Rules of Bankruptcy Procedure for authority to enter into a settlement

with the duly appointed trustee (the "SunCal Trustee") of certain debtor affiliates of SCC

Acquisitions Inc., whose involuntary chapter 11 cases are being jointly administered in the

United States Bankruptcy Court for the Central District of California, as more fully described in

the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge,

at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601,

One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **October 20, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the Chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1600, Houston, Texas 77002, Attn: Alfredo R. Pérez, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) The Lobel Firm, LLP, 840 Newport Center Drive, Suite 750, Newport Beach, CA 92660, Attn: William N. Lobel, attorneys for the SunCal Trustee, so as to be so filed and received by no later than **October 13, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: September 29, 2010
      Houston, Texas

     /s/ Alfredo R. Pérez
     Alfredo R. Pérez


     WEIL, GOTSHAL & MANGES LLP
     700 Louisiana Street, Suite 1600
     Houston, Texas  77002
     Telephone: (713) 546-5000
     Facsimile: (713) 224-9511

     Attorneys for Debtors
     and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez


Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                           :
In re                                      :    Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :    08-13555 (JMP)
                                           :
                      Debtors.             :    (Jointly Administered)
                                           :
------------------------------------------------------------------x
```

**MOTION OF THE DEBTORS PURSUANT TO SECTION 363 OF**
**THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY**
**PROCEDURE 9019 FOR AUTHORITY TO ENTER INTO SETTLEMENT**
**WITH SUNCAL TRUSTEE ON BEHALF OF SUNCAL INVOLUNTARY DEBTORS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Commercial Paper Inc. ("LCPI"), as debtors and debtors-in-possession (the "Debtors," and collectively with their non-debtor affiliates, "Lehman"), files this motion (the "Motion") and respectfully represents:

**Preliminary Statement**

1.    Prior to the commencement of the Debtors' chapter 11 cases, LCPI and three non-Debtor Lehman affiliates, Lehman ALI, Inc. ("Lehman ALI"), OVC Holdings LLC ("OVC Lender"), and Northlake Holdings LLC ("Northlake Lender, and, together with LCPI,

Lehman ALI and OVC Lender, the "Lehman Lenders"), provided over $2 billion in senior

secured financing (the "Financing") to certain direct or indirect subsidiaries and/or affiliates of

SCC Acquisitions, Inc. ("SCC Acquisitions") pursuant to various separate loan agreements.  The

Financing was used by such subsidiaries and/or affiliates to acquire and develop certain real

estate projects located in California.

       2.     After the commencement of the Debtors' chapter 11 cases, certain of such

subsidiaries and/or affiliates of SCC Acquisitions became involuntary debtors (the "SunCal

Involuntary Debtors")[1] or voluntary debtors (the "SunCal Voluntary Debtors"[2] and together with

the SunCal Involuntary Debtors, the "SunCal Debtors") in cases under chapter 11 of title 11 of

the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the

Central District of California, Santa Ana Division (the "California Bankruptcy Court").

Following the commencement of the chapter 11 cases of the SunCal Involuntary Debtors (the

"SunCal Involuntary Debtor Cases"), Steven Speier was appointed as trustee (the "SunCal

Trustee") to administer such cases.  The SunCal Trustee (acting on behalf of the SunCal

Involuntary Debtors) and the SunCal Voluntary Debtors subsequently commenced an adversary

proceeding (the "Adversary Proceeding") in their chapter 11 cases seeking, among other things,

---

[1] For the purposes of this Motion, the SunCal Involuntary Debtors are SunCal Oak Knoll, LLC ("SunCal Oak Knoll"); SunCal Torrance Properties, LLC ("SunCal Torrance"); SunCal Marblehead, LLC ("SunCal Marblehead"); SunCal Heartland, LLC ("SunCal Heartland"); LB/L-SunCal Northlake, LLC ("SunCal Northlake"); LB/L-SunCal Oak Valley, LLC ("SunCal Oak Valley"); SunCal PSV, LLC ("SunCal PSV") and Delta Coves Venture, LLC ("Delta Coves").  SunCal Century City, LLC ("SunCal Century") is also an involuntary debtor in cases commenced under chapter 11 of the Bankruptcy Code in the California Bankruptcy Court, but the loan made to SunCal Century by Lehman ALI was assigned to Danske Bank.  Dankse Bank has since entered into a settlement with the SunCal Trustee pursuant to which SunCal Century's real property was transferred to Danske Bank in exchange for cash.

[2] The SunCal Voluntary Debtors are Palmdale Hills Property, LLC; SunCal Bickford Ranch, LLC; SunCal Emerald Meadows, LLC; Acton Estates, LLC; SunCal Summit Valley, LLC; Seven Brothers, LLC; Kirby Estates, LLC; SunCal Beaumont Heights, LLC; SunCal Johannson Ranch, LLC; SunCal Communities I, LLC; SJD Development Corp.; SunCal Communities III, LLC; SCC/Palmdale, LLC; SJD Partners, Ltd.; North Orange Del Rio Land, LLC; Tesoro SF LLC; and SCC Communities LLC.

to subordinate all of the claims and liens of the Lehman Lenders arising from the Financing to the claims of all unsecured creditors against all of the SunCal Debtors.

3.    Lehman ALI, OVC Lender and Northlake Lender (together with LCPI, as the holder of an interest in certain of the loans comprising the Involuntary Debtors' Financing, as defined below, the "Lehman Creditors") filed proofs of claim against the SunCal Involuntary Debtors in respect of that portion of the Financing provided to the SunCal Involuntary Debtors (the "Involuntary Debtors' Financing") with an aggregate outstanding amount in excess of $1.1 billion.  Numerous additional claims have been asserted by third parties against the SunCal Involuntary Debtors.  Certain of such third party claims are secured by surety bonds issued by Arch Insurance Company ("Arch") or by Bond Safeguard Insurance Co. or its affiliate Lexon Insurance Co. (collectively, "Bond Safeguard").  The aggregate value of the SunCal Involuntary Debtors' assets is significantly less than the aggregate amount of the Lehman Creditors' claims arising from the Involuntary Debtors' Financing.  Based on appraised values contained in appraisals obtained by the Lehman Lenders in early 2009, the SunCal Involuntary Debtors own the vast majority of the SunCal Debtors' assets.

4.    In order to increase the prospect for recovery on the assets of the SunCal Involuntary Debtors securing the Involuntary Debtors' Financing (the "Involuntary Debtor Assets") and to enable a reasonable and timely resolution of the SunCal Involuntary Debtor Cases, the Debtors believe it is in the best interest of their estates to enter into a settlement (the "SunCal Involuntary Settlement") with the SunCal Trustee (on behalf of the SunCal Involuntary Debtors) to be reflected in a joint plan of reorganization (the "Joint Plan") to be proposed in the SunCal Involuntary Debtor Cases by the SunCal Trustee and the Lehman Creditors.[3]  The salient

---

[3] On September 21, 2010, the SunCal Voluntary Debtors filed *Notice of Motion and Motion for an Order (1) Imposing a Discretionary Stay Suspending All Matters and Proceedings Filed or Being Pursued by the Lehman*

terms of the SunCal Involuntary Settlement are described herein.  The Joint Plan and any other related documents effectuating the SunCal Involuntary Settlement will be on terms substantially similar to those set forth herein.  As part of the SunCal Involuntary Settlement, the Debtors will benefit from, among other things, (i) the conveyance to certain direct or indirect subsidiaries of LBHI and/or one or more of the Lehman Creditors of the real estate projects that, together with certain other assets, secure the Involuntary Debtors' Financing; (ii) the dismissal of the Adversary Proceeding by the SunCal Involuntary Debtors and the SunCal Trustee; and (iii) a full release by the SunCal Involuntary Debtors and the SunCal Trustee to all defendants in the Adversary Proceeding, including the Lehman Creditors, among other parties.  In exchange, the Lehman Creditors will pay a percentage of allowed claims and plan confirmation expenses in the SunCal Involuntary Debtor Cases.[4]

5.      Among other conditions, the SunCal Involuntary Settlement is subject to the Lehman Creditors (and/or other Lehman entities) reaching a settlement with Arch with respect to Arch's claims against the SunCal Involuntary Debtors relating to various surety bonds issued by Arch.  If Bond Safeguard asserts that it holds an allowed claim (other than for subrogation) against any of the SunCal Involuntary Debtors, the SunCal Involuntary Settlement

---

*Entities until All Allegedly Applicable Lehman Entities' Automatic Stays in the SunCal Debtors' Chapter 11 Cases Are Lifted, (2) Extending the Limitations Period under 11 U.S.C. § 546(a) and (3) Confirming that 11 U.S.C. § 108(c) Automatically Extends the Period of Time for the Commencement of Certain Actions; Memorandum of Points and Authorities.*  By the motion, the SunCal Voluntary Debtors seek an order deferring consideration of the Joint Plan until the Debtors stipulate to lift the automatic stay with respect to the SunCal chapter 11 cases.  The hearing on the motion has been scheduled for October 29, 2010.

[4] As described herein, the Debtors have the right, in their discretion, not to consummate the Joint Plan if the funding obligations and distributions to be made by the Lehman Creditors under the Joint Plan (the "Lehman Plan Funding") exceed $45 million.  To the extent the Lehman Plan Funding does exceed $45 million, the Debtors will consult with the Official Committee of Unsecured Creditors appointed in these cases (the "Creditors' Committee") prior to determining whether to consummate the Joint Plan.

will also be subject to the Lehman Creditors (and/or other Lehman entities) entering into a settlement with Bond Safeguard.[5]

6.       In view of the value of the Involuntary Debtor Assets and the uncertainty and cost associated with the Adversary Proceeding, the Debtors believe that entry into the SunCal Involuntary Settlement is the best solution to maximize recovery for the Debtors' estates.

### Relief Requested

7.       The Debtors request, pursuant to section 363 of title 11 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authority to enter into the SunCal Involuntary Settlement and consummate the transactions contemplated thereunder.

### Background

8.       Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and the other Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.       On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

---

[5] The Debtors will file a supplement to this Motion or an additional motion for approval of a settlement between the Lehman Creditors (and/or other Lehman entities) and Arch once the terms of such settlement have been finalized.  If and to the extent a settlement with Bond Safeguard is contemplated and agreed upon by the parties, the Debtors will file a motion for approval of such settlement.

10.     On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

11.     On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

The Examiner issued a report at his investigation pursuant to section 1106 of the Bankruptcy

Code on March 11, 2010 [Docket No. 7531].

12.     On March 15, 2010, the Debtors filed their joint chapter 11 plan pursuant

to section 1121 of the Bankruptcy Code [Docket No. 7572].  On April 14, 2010, the Debtors

filed their amended joint chapter 11 plan [Docket No. 8330] and their proposed disclosure

statement pursuant to section 1125 of the Bankruptcy Code [Docket No. 8332].

## Jurisdiction

13.     This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

14.     Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

15.     Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Lehman's Relationship with the SunCal Debtors**

16.    Prior to the commencement of the SunCal Involuntary Cases, the SunCal Involuntary Debtors' businesses focused upon the acquisition and development of residential land in California.  Over the past five years, the Lehman Lenders became the SunCal Involuntary Debtors' largest funding source, pursuant to various loan agreements, the SunCal Involuntary Debtors' obligations under which were secured by deeds of trust on each of the SunCal Involuntary Debtors' real estate projects and certain cash and other collateral and assets of the SunCal Involuntary Debtors' estates.  In the aggregate, the SunCal Involuntary Debtors owe in excess of $1.1 billion in respect of the Involuntary Debtors' Financing under the following agreements (collectively, the "Loan Agreements" and, together with all collateral agreements and other documentation entered into in connection therewith, the "Loan Documents"):

- that certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of September 9, 2005, between LB/L-SunCal Northlake, LLC, as borrower, and Northlake Holdings, as successor agent and sole lender, pursuant to which the lender(s) thereunder made loans in the maximum aggregate principal amount of approximately $100 million;

- that certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of May 23, 2006, between LB/L-SunCal Oak Valley, LLC, as borrower, and OVC Holdings, as successor agent and sole lender, pursuant to which the lender(s) thereunder made loans in the maximum aggregate principal amount of approximately $120 million;

- that certain Loan Agreement, dated as of November 30, 2006, among Lehman SunCal Real Estate Holdings, LLC, SunCal Torrance Properties, LLC, and SunCal Oak Knoll, LLC, as borrowers, and Lehman ALI, as agent and sole lender, pursuant to which the lender(s) thereunder made loans in the maximum aggregate principal amount of approximately $167.7 million;

- that certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of February 12, 2007, by and between SunCal PSV, LLC, as borrower, and Lehman

ALI, as agent and sole lender, pursuant to which the lender(s) thereunder made loans in the maximum aggregate principal amount of approximately $90 million;

- that certain Amended and Restated Loan Agreement, dated as of April 20, 2007, by and between Delta Coves Venture, LLC, as borrower, and Lehman ALI, as agent and lender, pursuant to which the lender(s) thereunder made loans in the maximum aggregate principal amount of approximately $236 million; and

- that certain Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, SunCal Marblehead, LLC, and SunCal Heartland, LLC, as borrowers, and Lehman ALI, as agent and sole lender, pursuant to which the lender(s) thereunder made loans in the maximum aggregate principal amount of approximately $316 million.

17.    The Involuntary Debtors' Financing is secured by first priority deeds of trust on certain real estate development projects, together with all rights, remedies, privileges and easements appurtenant thereto and all other real and personal, tangible and intangible, property related thereto (collectively, the "Projects").  The Projects include the real estate developments known as Northlake, Oak Valley Champions, Marblehead, Heartland, Delta Coves, Palm Springs Village, Oak Knoll and Del Amo.  Appraisals provided to the Lehman Lenders in early 2009 indicate an aggregate value for the Projects of approximately $352 million; however, this figure is not necessarily indicative of current market value.

### The SunCal Involuntary Settlement

18.    The SunCal Involuntary Settlement primarily provides for:

- the conveyance of the Projects to one or more entities designated by the Lehman Creditors, free and clear of all liens and encumbrances (except the existing deeds of trust in favor of the Lehman Creditors and other liens and encumbrances acceptable to the Lehman Creditors) pursuant to section 363 of the Bankruptcy Code;

- the payment by the Lehman Creditors of settlement payments in respect of administrative expenses and allowed claims and payment of post-confirmation expenses, as further described below;

- the withdrawal by the SunCal Trustee and the SunCal Involuntary Debtors of all of their claims in the Adversary Proceeding, with prejudice, against all defendants; and

8

 ▪ a full release to be given by the SunCal Trustee, the SunCal Involuntary Debtors and each non-priority, unsecured creditor receiving the full settlement payment being offered to other creditors in the same class as that creditor, to the Lehman Creditors and the other defendants in the Adversary Proceeding.

The salient terms of the SunCal Involuntary Settlement are as follows:[6]

| | |
|---|---|
| ***Conveyance of Projects*** | The Projects will be conveyed by the SunCal Involuntary Debtors to one or more entities designated by the Lehman Creditors (the "LB Project Owners"). The conveyance will be made free and clear of all liens and encumbrances (except the existing deeds of trust in favor of the Lehman Creditors and other liens and encumbrances acceptable to the Lehman Creditors) pursuant to section 363 of the Bankruptcy Code. The conveyance will be made pursuant to the terms of the Joint Plan, to be proposed jointly by the SunCal Trustee and the Lehman Creditors. |
| ***Settlement of Allowed Claims*** | Pursuant to the Joint Plan, the Lehman Creditors will agree to provide for (a) the payment in full of all allowed administrative expense claims, allowed priority non-tax claims and all other amounts required, under the Bankruptcy Code, to be paid on the effective date of the Joint Plan (collectively, the "Confirmation Expenses"), (b) the payment of a percentage (as prescribed below) of allowed secured and unsecured claims as described below (collectively, the "Allowed Claims Payments"), and (c) the payment of post-confirmation expenses of the liquidating trustee (subject to a maximum amount to be provided for in the Joint Plan) (collectively, the "Post-Confirmation Expenses"). The payments to be made by the Lehman Creditors in respect of the Confirmation Expenses, Allowed Claims Payments and Post-Confirmation Expenses are collectively referred to as the "Lehman Plan Funding." Specifically, pursuant to the Joint Plan: |

 (1)  Lehman Creditors will pay all Confirmation Expenses (provided that they may elect to pay certain Confirmation Expenses such as property and other types of taxes, over a 5-year period as provided by the Bankruptcy Code);

 (2)  Lehman Creditors will pay 100% of the allowed secured claims that have priority over the secured claims of the Lehman Creditors (also subject to an election to pay certain of these allowed claims, such as real property taxes, over a 5-year period as provided by the Bankruptcy Code);

---

[6]This summary (the "Summary") is intended to be used for information purposes only and shall not, in any way, affect the meaning or interpretation of the SunCal Involuntary Settlement. The terms of the SunCal Involuntary Settlement are to be reflected in the Joint Plan to be filed by the Lehman Creditors and the SunCal Trustee by September 30, 2010, and the Summary is qualified in its entirety by the provisions of the Joint Plan. In the event of any inconsistency between the Summary and the Joint Plan, the Joint Plan shall control.

(3)  If a claimant holding an allowed non-priority, unsecured claim does not give a release to the Lehman Creditors, it will receive a distribution equal to 1% of its allowed claim.  With respect to such claimants that provide a release to the Lehman Creditors, the Lehman Creditors will pay up to 40-50% of certain unsecured claims that generally arose from new value provided by the claimants to the SunCal Involuntary Debtors on or after August 1, 2007 (referred to as "Reliance Claims") and up to 5% of all other unsecured claims (referred to as "General Unsecured Claims").  The exact percentage will depend upon the aggregate amount of all allowed Reliance Claims and General Unsecured Claims, excluding certain specified claims.  If such aggregate amount is $20 million or less, the payout percentage for such Reliance Claims will be 50%. If such aggregate amount is more than $20 million, the payout percentage for such Reliance Claims will be 40% (subject to a graduated reduction from 50% down to 40% depending upon the amount by which such aggregate amount is greater than $20 million).  Each creditor will be permitted to "check the box" on its ballot indicating whether such creditor believes that its claim is a Reliance Claim or a General Unsecured Claim (the SunCal Trustee and Lehman Creditors reserving the right to object to any such election by the creditor) and holders of alleged secured claims will have the right to elect to treat their claims as Reliance Claims or General Unsecured Claims instead of secured claims.  The SunCal Trustee and the Lehman Creditors have entered into a stipulation regarding the filing of joint objections to claims.  Although the claims objection process is underway, it will likely continue even after the Joint Plan is filed.  Thus, the actual aggregate amount of allowed Reliance Claims and allowed General Unsecured Claims cannot be determined at this time.  The Joint Plan will provide that the Lehman Creditors, in their sole discretion, can abandon the Joint Plan if at any time prior to the effectiveness of the Joint Plan the Lehman Creditors reasonably estimate that, exclusive of certain specified claims, either (a) the aggregate amount of allowed Reliance Claims and General Unsecured Claims will exceed $30 million or (b) the aggregate amount of the Lehman Plan Funding will exceed $45 million.

***Settlement with Bond Issuers***

Confirmation of the Joint Plan is conditioned upon a settlement between the Lehman Creditors (and/or other Lehman entities) and each of the issuers of surety bonds with respect to the Projects.  Unless waived by the Lehman Creditors, if a settlement is not reached with respect to each bond issuer that asserts an allowed claim (other than for subrogation) against any of the SunCal Involuntary Debtors, the confirmation of the Joint Plan will not occur.

| *Dismissal of Adversary Proceeding* | Upon confirmation of the Joint Plan, the SunCal Trustee and the SunCal Involuntary Debtors will dismiss their equitable subordination and other claims under the Adversary Proceeding, with prejudice, against all defendants. |
|---|---|
| *Releases* | SunCal Involuntary Debtors and the SunCal Trustee will provide a full release to all defendants in the Adversary Proceeding (including the Lehman Creditors), all affiliates thereof including the LB Project Owners and all future owners of the Projects (collectively, the "Lehman Released Parties") (excluding claims arising under the Joint Plan). In addition, any creditor holding a Reliance Claim or General Unsecured Claim will need to provide a release to the Lehman Released Parties in order to obtain a distribution in excess of 1% of the allowed amount of its claim. Although the claims of the Lehman Creditors would continue to exist after the effective date of the Joint Plan, the Lehman Creditors would agree not to take any distribution in respect of such claims from the SunCal Involuntary Debtors' assets except as otherwise provided in the Joint Plan with respect to the Projects (and related property subject to a security interest in favor of the Lehman Creditors) and any collateral of the Lehman Creditors. |
| *Use of Available Cash* | All cash collateral of the Lehman Creditors and/or Lehman ALI, as the provider of debtor-in-possession financing to the SunCal Involuntary Debtors, will be available to the Lehman Creditors to be used towards the satisfaction of the Lehman Plan Funding. |
| *Joint Plan* | The SunCal Involuntary Settlement will be effectuated through the Joint Plan. |

### The SunCal Involuntary Settlement Fits the Legal Standard
### Established Under Rule 9019 and Are in the Best Interests of the Debtors' Estates

19.     Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). Bankruptcy Rule 9019 empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R.

618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993),

*aff'd*, 17 F.3d 600 (2d Cir. 1994).  A decision to accept or reject a compromise or settlement is

within the sound discretion of the Court.  *Drexel Burnham Lambert Group*, 134 B.R. at 505; *see*

*also* 9 COLLIER ON BANKRUPTCY ¶ 9019.02 (15th ed. rev. 2001).  The settlement need not result

in the best possible outcome for the debtor, but must not "fall below the lowest point in the range

of reasonableness."  *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations

omitted); *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In*

*re Spielfogel*, 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997).  Indeed, courts have long

considered compromises to be "a normal part of the process of reorganization."  *TMT Trailer*

*Ferry*, 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130

(1939).

> 20.  The decision to approve a particular compromise lies within the sound

discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).

Additionally, a court may exercise its discretion "in light of the general public policy favoring

settlements."  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

However, the analysis must focus on the question of whether a particular compromise is "fair

and equitable . . . and [ ] in the best interest of the estate."  *In re Best Products Co.*, 168 B.R. 35,

50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

> 21.  While a court must evaluate "all . . . factors relevant to a full and fair

assessment of the wisdom of the proposed compromise," *TMT Trailer Ferry*, 390 U.S. at 424, a

court need not conduct a "mini-trial" of the merits of the claims being settled, or conduct a full

independent investigation.  *Drexel Burnham Lambert Group*, 134 B.R. at 505.  "The bankruptcy

judge does not have to decide the numerous questions of law and fact. . . . The court need only

canvass the settlement to determine whether it is within the acceptable range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

22.    The court may give weight to the "informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522-23 (S.D.N.Y. 1993); *accord In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness. . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.") (internal citations omitted).

23.    Significantly, there is no requirement that "the value of the compromise … be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2nd Cir. 1974)).

24.    While the Lehman Creditors believe that they have a strong case in the Adversary Proceeding, the Lehman Creditors' prospects for success are uncertain, and the litigation of such action will be prolonged and costly.  After analyzing various alternatives, the Lehman Creditors have determined that the SunCal Involuntary Settlement provides the best framework for preserving and maximizing the prospects of a recovery of the Involuntary Debtors' Financing and resolving the Lehman Creditors' disputes with the SunCal Involuntary Debtors.  The terms of the SunCal Involuntary Settlement are the product of a good-faith, arms'-

13

length negotiation process between the Lehman Creditors and the SunCal Trustee.  The parties to

the SunCal Involuntary Settlement, each represented by counsel, have participated in numerous

meetings and discussions.  After several months of negotiations, and as a result of this successful

negotiation process, the parties have arrived at the agreed set of terms described herein that

provide mutually acceptable benefits and burdens to all concerned.

        25.     While the Lehman Creditors will, among other things as further described

herein, pay the Lehman Plan Funding if the Joint Plan becomes effective, if the aggregate

amount of the payments and distributions to be made by the Lehman Creditors pursuant to the

Lehman Plan Funding exceeds $45 million, the Lehman Creditors will have the option, at any

time prior to the effective date of the Joint Plan, to elect not proceed with the Joint Plan.  If that

occurs, the Lehman Creditors will consult with the Creditors' Committee prior to determining

whether to proceed with the Joint Plan.

        26.     The cost of entering into the SunCal Involuntary Settlement, namely

payment by the Lehman Creditors of the Lehman Plan Funding, is outweighed by the benefits of

obtaining, on a consensual basis, conveyance of the Projects, the withdrawal of the Adversary

Proceeding by the SunCal Involuntary Debtors and the SunCal Trustee, and releases from the

SunCal Involuntary Debtors and the SunCal Trustee.  In short, by entering into the SunCal

Involuntary Settlement, the Lehman Creditors will increase the likelihood that they will avoid

protracted, expensive and uncertain litigation in the Adversary Proceeding with respect to the

SunCal Involuntary Debtors' claims and in the SunCal Involuntary Debtor Cases, all while

increasing the Lehman Creditors' prospects for recovery from the SunCal Involuntary Debtors.

In light of such benefits, the SunCal Involuntary Settlement is fair and reasonable.  As a result,

the SunCal Involuntary Settlement benefits the Debtors, their estates, and their creditors and should be approved.

## The SunCal Involuntary Settlement
## Is an Appropriate Exercise of the Debtors' Business Judgment

27.     The SunCal Involuntary Settlement is an appropriate exercise of the Debtors' business judgment and should be approved.  Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1). While section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale, disposition, or other use of a debtor's assets, courts in the Second Circuit, in applying this section, have required that it be based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same). Section 105 of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]."  11 U.S.C. § 105(a).

28.     It is generally understood that "[when] the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *In*

*re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488

A.2d 858, 872 (Del. 1985), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting

this presumption falls to parties opposing the proposed exercise of a debtor's business judgment.

*Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

29.     For the reasons set forth above, approval of the SunCal Involuntary

Settlement is in the best interests of the Debtors' estates.  The SunCal Involuntary Settlement is,

in the Debtors' judgment, the best mechanism to allow the Debtors to maximize the prospect of a

recovery on the Involuntary Debtors' Financing extended to the SunCal Involuntary Debtors.  In

light of the direct and indirect benefits inuring to the Debtors and their estates and creditors,

entry into the SunCal Involuntary Settlement is a proper exercise of the Debtors' business

judgment and should be approved.

### Reservation of Rights

30.     Nothing contained in the SunCal Involuntary Settlement or in this Motion

shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations,

benefits or remedies of LBHI or any Lehman Creditor, that such entity may have or choose to

assert on behalf of itself or its respective estate, as applicable, under any provision of the

Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third

parties.

31.     Further, as among the Debtors and non-Debtor affiliates, all pre- and post-

petition rights, claims and defenses, including, but not limited to those associated with the costs

and benefits of the SunCal Involuntary Settlement and this Motion, are preserved.

### Notice

32.     No trustee has been appointed in these chapter 11 cases.  LBHI and LCPI

have served notice of this Motion in accordance with the procedures set forth in the amended

16

order entered on February 13, 2009 governing case management and administrative procedures

for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;

(v) the United States Attorney for the Southern District of New York; (vi) counsel to the SunCal

Trustee; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors

submit that no other or further notice need be provided.

33.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: September 29, 2010
         Houston, Texas


  /s/ Alfredo R. Pérez
Alfredo R. Pérez


WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                  :
In re                                             :    **Chapter 11 Case No.**
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*      :    **08-13555 (JMP)**
                                                  :
                                Debtors.          :    **(Jointly Administered)**
                                                  :
-----------------------------------------------------------------x

## ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AUTHORIZING THE DEBTORS TO ENTER INTO SETTLEMENT WITH SUNCAL TRUSTEE ON BEHALF OF SUNCAL INVOLUNTARY DEBTORS

Upon the motion (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI")

and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman

Commercial Paper Inc. ("LCPI"), as debtors and debtors in possession (collectively, the

"Debtors"), pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

for an order authorizing the Debtors to enter into a settlement (the "SunCal Involuntary

Settlement") with the SunCal Trustee, on behalf of the SunCal Involuntary Debtors, and

consummate the transactions contemplated thereunder, all as more particularly described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

---

[1] Capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to them in the Motion.

the Motion having been provided in accordance with the procedures set forth in the amended

order entered February 13, 2009 governing case management and administrative procedures

[Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; (vi) counsel to the SunCal Trustee; and (vii) all parties who have

requested notice in these chapter 11 cases, and it appearing that no other or further notice need be

provided; and the Court having found and determined that the relief sought in the Motion is in

the best interests of the Debtors, their estates and creditors, and all parties in interest and that the

legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to section 363 of the Bankruptcy Code and Bankruptcy

Rule 9019, the Debtors are duly authorized, but not directed, to (i) enter into the SunCal

Involuntary Settlement and consummate all of the transactions contemplated thereunder and

under the Joint Plan, as described in the Motion; (ii) execute and deliver such documents,

instruments, certificates agreements and to take such other actions as may be reasonably

necessary to consummate the transactions contemplated under the SunCal Involuntary

Settlement, and (iii) consent to any amendment, restatement, waiver, supplement or other

modification of any of the documents contemplated under the SunCal Involuntary Settlement, it

being understood that any actions described in this paragraph taken by the Debtors or their

affiliates may be taken without the necessity of (x) any further court proceedings or approval or

(y) any consent of any third party, and shall be conclusive and binding in all respects on all

parties in interest in these cases; and it is further

ORDERED that the Debtors are authorized, but not directed, to make all payments contemplated under the SunCal Involuntary Settlement and the Joint Plan, as described in the Motion, including the Lehman Plan Funding, subject to the terms of the Joint Plan; *provided*, *however*, that to the extent the amount of the Lehman Plan Funding exceeds $45 million, the Debtors will consult with the Creditors' Committee prior to determining whether to consummate the Joint Plan; and it is further

ORDERED that nothing contained herein shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies of LCPI, LBHI, or any other Lehman entity that is party to the SunCal Involuntary Settlement, that such Lehman entity may have or choose to assert on behalf of itself or its respective estate, as applicable, under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties, and the Debtors are hereby authorized and directed to execute such further documents to evidence such reservations; and it is further

ORDERED that nothing contained in the SunCal Involuntary Settlement or in the Motion shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies of LBHI or any Lehman Creditor, that such entity may have or choose to assert on behalf of itself or its respective estate, as applicable, under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties; and it is further

ORDERED that any and all pre- and post-petition claims, rights and obligations that the Debtors may have against each other in connection with the subject matter of the Motion or the transactions contemplated by the SunCal Involuntary Settlement are hereby fully preserved and shall not be prejudiced by the entry of this Order; and it is further

ORDERED that the allocation of costs and benefits between or among the

Debtors and non-Debtor affiliates in connection with the SunCal Involuntary Settlement is

preserved; and it is further

ORDERED that the SunCal Involuntary Settlement may be modified, amended or

supplemented by the proponents thereof without further order of the Court, and any agreements,

documents or other instruments related to the SunCal Involuntary Settlement, documents or other

instruments may be modified, amended or supplemented by the parties thereto, in a writing

signed by such parties, and in accordance with the terms thereof, in consultation with the

Creditors' Committee and without further order of the Court, *provided* that, in each case, any

such modification, amendment or supplement does not have a material adverse effect on the

Debtors' estates; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.


Dated:  October ___, 2010
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE