**Hearing Date and Time: October 20, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  October 13, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Peter Gruenberger, Esq.
Holly E. Loiseau, Esq.
Robert Lemons, Esq.

*Attorneys for Debtor and Plaintiff LBSF*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                              :
In re                                         :        **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**
                                              :
                        **Debtors.**          :        **(Jointly Administered)**
                                              :
                                              :
----------------------------------------------------------------x

**NOTICE OF LBHI'S MOTION, PURSUANT TO SECTION 362 OF THE**
**BANKRUPTCY CODE FOR ENFORCEMENT OF THE AUTOMATIC**
**STAY AND FOR SANCTIONS FOR VIOLATION OF THE**
**ADR PROCEDURES ORDER**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of

Lehman Brothers Special Financing Inc. ("LBSF," together with its affiliated debtors in

the above referenced chapter 11 cases, the "Debtors") for the entry of an order declaring

the Jakarta Action void *ab initio*, enforcing the automatic stay, and sanctioning Mobile-8

for violation of the ADR Procedures Order, all as more fully described in the Motion,

will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the

United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601,

One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on October

20, 2010 at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the

Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern

District of New York, shall set forth the name of the objecting party, the basis for the

objection and the specific grounds thereof, shall be filed with the Bankruptcy Court

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system

and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format (with

two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York

10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York,

New York 10153, Attn:  Robert Lemons, Esq., attorneys for the Debtors; (iii) the Office

of the United States Trustee for the Southern District of New York (the "U.S. Trustee"),

33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Andy Velez-Rivera,

Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy

Hope Davis, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan

Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell,

Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors

appointed in these cases, so as to be so filed and received by no later than **October 13, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

        PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

        PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: October 1, 2010
      New York, New York

/s/ Robert Lemons
Peter Gruenberger, Esq.
Robert Lemons, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0019
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

- and -

Holly E. Loiseau, Esq.
WEIL, GOTSHAL & MANGES LLP
1300 I Street, NW, Suite 900
Washington, DC 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

*Attorneys for Debtor and Plaintiff LBSF*

**Hearing Date and Time:  October 20, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  October 13, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Peter Gruenberger, Esq.
Holly E. Loiseau, Esq.
Robert Lemons, Esq.

*Attorneys for Debtor and Plaintiff LBSF*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re                                                          :     **Chapter 11 Case No.**
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*     :     **08-13555 (JMP)**
: 
                                       **Debtors.**      :     **(Jointly Administered)**
: 
: 
------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS SPECIAL FINANCING INC. PURSUANT**
**TO SECTION 362 OF THE BANKRUPTCY CODE FOR ENFORCEMENT**
**OF THE AUTOMATIC STAY AND FOR SANCTIONS FOR**
**VIOLATION OF THE ADR PROCEDURES ORDER**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Special Financing Inc. ("LBSF," the "Debtor," or

"Lehman"), files this motion (the "Motion") and the accompanying Declaration of Holly

E. Loiseau (the "Loiseau Decl.") and respectfully represents:

**PRELIMINARY STATEMENT**

        1.     This Motion presents a straightforward case of the Defendant, PT Mobile-

8 Telecom Tbk's ("Mobile 8's"), willful and knowing, repeated violations of the

automatic stay and this Court's own ADR Procedures Order (as defined below).  At every

turn, Mobile-8 has flaunted its utter disregard for the Bankruptcy Code, the authority of this Court, and the orderly and efficient administration of Debtor's estate, culminating in its decision to file a lawsuit in Jakarta, Indonesia in clear and blatant violation of the automatic stay.  Mobile-8 is likewise violating the automatic stay by refusing to turn over amounts payable to LBSF in respect of the parties' prepetition ISDA Agreement and Confirmation, as defined herein.    Finally, Mobile-8's refusal to participate in the derivatives mediation process constitutes a sanctionable violation of the Court's ADR Procedures Order.

2.    As LBSF only recently discovered, Mobile-8 brought an action in an Indonesian court seeking damages against LBSF in the amount of $15 million.  In this action, Mobile-8 claimed that the Parties' ISDA Agreement and Confirmation were invalid from their inception, alleged that LBSF committed a tort under Indonesian law by sending Mobile-8 "fictitious bills" for the amounts due and payable by Mobile-8 to LBSF under their contract, and asserted that in committing this alleged tort, LBSF caused millions of dollars of damage to Mobile-8's "good image, name and reputation."  Further, in the Jakarta Action (as defined below), Mobile-8 has requested that LBSF be prohibited from taking any action or initiating any proceeding to challenge the allegations in the Jakarta Action. Apart from being completely frivolous, the Jakarta Action is a violation of the automatic stay and demonstrates Mobile-8's refusal to participate in good faith in the Court-ordered ADR process which had been initiated by LBSF in November 2009.

3.    Even though LBSF provided proper addresses and other contact information for both LBSF's in-house and outside counsel,  Mobile-8 failed to provide

LBSF with notice of the Jakarta Action in a timely manner at the proper address. Therefore, LBSF first received a copy of the complaint in the Jakarta Action days *after* it was to appear before the court in Jakarta. It is possible that a default judgment will soon be entered against LBSF in Indonesia. The entry of such judgment could negatively impact the orderly and efficient administration of LBSF's estate for the benefit of its creditors. To the extent that Mobile-8 does obtain a judgment against LBSF in the Jakarta Action, it is possible that such judgment could be enforced against LBSF's property and would reduce recovery for legitimate creditors of the estate. Indeed, Mobile-8 has detracted from the orderly administration of the estate merely by bringing the Jakarta Action, requiring the estate to devote resources to enforce its rights under the Bankruptcy Code.

4.     Mobile-8's conduct in withholding certain payments owed to LBSF in connection with the Parties' August 2007 ISDA Agreement and Confirmation is likewise a violation of the automatic stay. Mobile-8 defaulted on its obligations under the Confirmation and has repeatedly refused to pay the amounts it owes in respect of the ISDA Agreement and the Confirmation. These withheld payments constitute property of LBSF's estate, and Mobile-8's refusal to pay these amounts is an attempt to exercise control over property of the estate in clear and direct violation of the automatic stay. LBSF's attempts to efficiently and expeditiously resolve its dispute with Mobile-8 through the ADR process have been thwarted by Mobile-8's refusal to proceed to mediation in direct violation of the Court's ADR Procedures Order, which makes participation in mediation mandatory and requires that derivatives counterparties

participate in good faith.  After initially engaging in the ADR process through the notice and response stage and joining LBSF for a series of telephonic settlement conferences, Mobile-8 subsequently ignored repeated communications from LBSF, the case manager, and the mediator seeking to schedule a date for the mediation.  Mobile-8 has wasted LBSF's time and resources in its failure to comply with the ADR Procedures Order and should be sanctioned accordingly

5.       By this Motion, LBSF seeks to enforce the automatic stay extant pursuant to section 362 of title 11 of the United States Code (the "Bankruptcy Code") with respect to both the Jakarta Action and Mobile-8's unlawful withholding of amounts due to LBSF pursuant to the ISDA Agreement and the Confirmation.  Mobile-8's violation of the automatic stay should not be countenanced, and the Jakarta Action should be deemed void *ab initio*.  LBSF seeks an order enforcing the automatic stay, declaring that Mobile-8 is in violation of the automatic stay on account of its initiation and pursuit of the Jakarta Action, and declaring the Jakarta Action void *ab initio*.  Mobile-8 should also be subject to sanctions for its violations of the automatic stay.  LBSF further asks that the Court sanction Mobile-8 for its refusal to comply with the ADR Procedures Order.

## **JURISDICTION**

6.       This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

7.       This Court has personal jurisdiction over Mobile-8 pursuant to the parties' ISDA Agreement and Confirmation, as defined herein, which provide for the application

of the laws of the State of New York and pursuant to which the parties submitted to the jurisdiction of the courts of the State of New York and the United States District Court for the Southern District of New York.

## BACKGROUND

8.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings, Inc. ("LBHI") and certain of its subsidiaries (collectively, the "Debtors") commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  LBSF commenced its chapter 11 case on October 3, 2008.  LBSF's chapter 11 case has been consolidated with LBHI's chapter 11 case for procedural purposes only, and the cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

10.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## DERIVATIVES CONTRACTS AND THE ADR PROCEDURES

11.    Derivative contracts are typically memorialized by widely used standard forms, such as ISDA Master Agreements, which are forms developed by the International Swaps and Derivatives Association, Inc. ("ISDA") to document swap transactions between two counterparties.  Counterparties may make certain elections relating to the standard form through the use of a schedule and may utilize a credit support annex, another ISDA standard form document, to document credit support for the ISDA Master Agreement.  The parties then enter into individual transactions under the ISDA Master Agreement.  These individual transactions are customarily documented in the form of confirmations, which may set forth, among other things, the terms and conditions (certain of which may modify the terms and conditions of the standard forms), specified quantities and delivery dates for physical transactions, specified methodologies for calculation of payment amounts, and specified payment dates for financial transactions.

12.    In some cases, derivatives counterparties may elect to use what is commonly referred to as a long-form confirmation – a document that specifies the terms of a derivatives transaction, which functions as both a schedule and a trade confirmation. The long-form confirmation is typically used where the derivatives counterparties wish to engage in a derivatives trade but have not yet executed an ISDA Master Agreement.  The long-form confirmation typically states that it supplements, forms a part of and is subject to the terms of, a standard form ISDA Master Agreement (whether or not one has been executed by the derivatives counterparties).

13.    On September 17, 2009, this Court entered the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts* (the "ADR Procedures Order") [Docket No. 5207], with the stated goal of promoting judicial efficiency and the expedient resolution of disputes pertaining to derivatives contracts pursuant to which one or more Debtors assert that monetary recovery is due a Debtor from a counterparty.

14.    Pursuant to the ADR Procedures Order, a Debtor may serve on a counterparty a notice containing sufficient information regarding the derivatives dispute to make the counterparty aware of the nature of Debtor's affirmative claim, a brief explanation setting forth the basis for the demand and the amount, and its demand for settlement.  The counterparty must respond within thirty days of receipt of the notice, either accepting the settlement demand, or declining to settle for the amount stated in the demand and providing a brief explanation setting forth the reasons for such denial.  The Debtor may then, within fifteen days from the date of receipt of the response, serve a reply in which the Debtor may modify its settlement demand, respond to any counteroffer, provide additional information in support of its demands, or reject any counteroffer.  During the notice and response stage, either party may request an initial settlement conference.

15.    To the extent that the derivatives dispute is not resolved during the notice and response stage, the dispute will proceed to mediation.  The Debtors may initiate the mediation by transmitting a copy of the notice, response, and reply to the court-approved mediators for allocation to a specific mediator.  Once a specific mediator has been

selected and notice of such selection is conveyed to the parties, the parties must then coordinate with the mediator to schedule the initial mediation date.

16.    The ADR Procedures Order requires each party to participate in good faith.  To the extent that the Court determines that a party has not complied with the Derivatives ADR Procedures in good faith, the Court may issue such sanctions as it deems appropriate.  The ADR Procedures Order specifies that sanctions against a derivatives counterparty that fails to participate in good faith may include, but are not limited to, "(i) attorneys' fees incurred by the Debtors with respect to the Derivatives ADR Procedures after the sending of an ADR Package; (ii) fees and costs of the Mediator; and (iii) an award of the Derivatives ADR Dispute up to the amount specified in the Derivatives ADR Notice."

## TRANSACTIONS BETWEEN THE PARTIES

17.    LBSF and Mobile-8 entered into a long-form confirmation, dated as of August 8, 2007 (the "Confirmation," a copy of which is attached as Exhibit ("Ex.") A to the Declaration of Holly E. Loiseau the "Loiseau Decl."), pursuant to which the Parties agreed to be bound by the terms of the 1992 form ISDA Master Agreement, as if such agreement had been executed by the Parties as of even date therewith (the "ISDA Agreement" a copy of which is attached as Ex. B to the Loiseau Decl.).  The Confirmation documented the swap transaction between LBSF and Mobile-8 with a notional amount of $100,000,000 identified by Global ID No. 3267721 (the "Transaction").  Confirmation, Loiseau Decl. Ex. A at 2.  Mobile-8, as the "Fixed Amount Payer" agreed to pay LBSF, on the first calendar day of each March and

September, from and including March 1, 2008 to and including March 1, 2013, a fixed

rate equal to 10.45% of the notional amount of $100,000,000. *Id.* at 2. In exchange,

LBSF, as the "Floating Rate Payer" agreed to pay Mobile-8 what is known as a "range

accrual" coupon. *Id.* at 2-3. Each day during a payment period, the 30-year and the 2-

year Euro swap rates are observed. For each day on which the 30-year rate exceeds the

2-year rate, the range accrual coupon "accrues." The range accrual coupon varies based

upon the number of days during the period that the 30-year Euro swap rate is observed to

be higher than the 2-year Euro swap rate. On days where the 30-year rate exceeds the 2-

year rate, the coupon is 11.25%. Otherwise, the coupon is 0%. At the end of each

payment period, these amounts are netted and if the range accrual coupon is determined

to be higher than the fixed 10.45% rate, a net amount is payable to Mobile-8. Where the

range accrual coupon is lower than the fixed 10.45% rate, a net amount is payable to

LBSF. *Id.* at 3.

18.    The Confirmation states that the Transaction will be governed by New

York law, *see* Confirmation, Loiseau Decl. Ex. A at 4, and incorporates the terms of the

ISDA Agreement. *Id.* at 1. The ISDA Agreement provides that "[w]ith respect to any

suit, action or proceedings relating to this Agreement ('Proceedings'), each party

irrevocably . . . submits . . . to the non-exclusive jurisdiction of the courts of the State of

New York and the United States District Court located in the Borough of Manhattan in

New York City, if this Agreement is expressed to be governed by the laws of the State of

New York." ISDA Agreement, Loiseau Decl. Ex. B at ¶ 13(b)(i). The ISDA Agreement

further states that each party "waives any objection which it may have at any time to the

laying of venue of any Proceedings brought in any such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have any jurisdiction over such party." *Id.* at ¶ 13(b)(ii).

19.     The first payment under the Confirmation became due by LBSF payable to Mobile-8 on March 3, 2008 in the amount of $440,000 (the "March 2008 Payment"). March 2008 Invoice, Loiseau Decl. Ex. C.  LBSF paid this amount on March 3, 2008. The second payment under the Confirmation became due by Mobile-8 payable to LBSF on September 2, 2008 in the amount of $2,047,567 (the "September 2008 Missed Payment").  September 2008 Invoice, Loiseau Decl. Ex. D.  Mobile-8 failed to make this payment.  The third payment under the Confirmation became due by Mobile-8 payable to LBSF on March 2, 2009 in the amount of $381,250 (the "March 2009 Missed Payment"). March 2009 Invoice, Loiseau Decl. Ex. F.  Mobile-8 also failed to make this payment.

20.     On March 16, 2009, LBSF delivered a notice to Mobile-8 exercising its right under the ISDA Agreement to demand adequate assurance of performance with respect to the Transaction (the "Request for Adequate Assurance").  Request for Adequate Assurance, Loiseau Decl. Ex. G.  Mobile-8 failed to provide adequate assurance of performance and LBSF sent a Notice of Early Termination on March 31, 2009, designating April 7, 2009 as the Early Termination Date (the "Early Termination Notice").  Early Termination Notice, Loiseau Decl. Ex. H.

21.     On May 5, 2009, Mobile-8 sent a letter to LBSF, purporting to terminate the Transaction (the "Mobile-8 Purported Termination Letter").  Mobile-8 Purported

Termination Letter, Loiseau Decl. Ex I.  Such purported termination was ineffective because the Transaction had already been terminated at that time by LBSF.  At no time did Mobile-8 send any type of notice of payments due or valuation statement to LBSF.

22.    LBSF sent a Notice of Amount Payable on June 18, 2009 (the "Calculation Statement"), notifying Mobile-8 that it owed a Termination Payment in the amount of $2,560,472.  Calculation Statement, Loiseau Decl. Ex. J.  This Termination Payment included the March 2009 Missed Payment in the amount of $381,250, but, due to a clerical error, incorrectly excluded the September 2008 Missed Payment.  Mobile-8 failed to make the required Termination Payment.

23.    Interest has continued to accrue on the September 2008 Missed Payment and on the Termination Payment.  As of September 17, 2010, Mobile-8 owed to LBSF a total of $5,869,178.54 comprised of (i) $2,560,472 in respect of the Termination Payment, plus $577,410.35 in interest; and (ii) $2,047,576.03 in respect of the September 2008 Missed Payment, plus $683,720.16 in interest.

## THE ADR PROCESS

24.    On November 23, 2009, LBSF served a derivatives ADR notice on Mobile-8 pursuant to the ADR Procedures Order (the "ADR Notice").  In the ADR Notice, LBSF demanded payment of $2,560,472, plus interest,[1] in respect of amounts due and owing by Mobile-8 to LBSF in connection with the Transaction.  ADR Notice, Loiseau Decl. Ex. K.

---

[1] As of November 20, 2009, interest had accrued in the amount of $236,226.

25.     On December 29, 2009, LBSF received a letter from Mobile-8 in response to the ADR Notice (the "ADR Response").  In the ADR Response, Mobile-8 expressed its belief that LBSF, and not Mobile-8, defaulted on the Transaction, and alleged that LBSF had engaged in some form of unspecified "fraudulent misrepresentation."  Mobile-8  provided no basis for this assertion.  Mobile-8 further alleged that it had terminated the Transaction by way of its letter to LBSF on May 5, 2009.  ADR Response, Loiseau Decl. Ex. L.

26.     On January 13, 2010, LBSF sent a Reply to the ADR Response (the "ADR Reply").  In the Reply, LBSF explained that Mobile-8's purported termination on May 5, 2009 was ineffective because LBSF had already terminated the Transaction, and refuted Mobile-8's unsubstantiated misrepresentation allegation.  ADR Reply, Loiseau Decl. Ex. M.

27.     The Parties engaged in a telephonic Initial Settlement Conference on February 8, 2010 which lasted approximately 40 minutes, and had subsequent calls on February 22, 2010 for approximately 20 minutes, and March 16, 2010 for approximately 90 minutes.  Loiseau Decl. at ¶ 16.  On or about February 22, 2010, LBSF became aware of the September 2008 Missed Payment, bringing the total amount owed by Mobile-8 to LBSF to $4,608,039, plus interest.  Loiseau Decl. at ¶ 17.  During the course of the February 22, 2010 call, LBSF requested that Mobile-8 either provide evidence that it made the September 2008 Missed Payment, or immediately transmit payment in the amount of $2,047,567.03 to LBSF.  *See id.*  LBSF reiterated this demand by letter dated February 23, 2010.  February 23, 2010 Letter, Loiseau Decl. Ex. N.

28.     On March 29, 2010, LBSF transmitted the ADR Notice, Response and Reply to the Court-appointed mediators at JAMS, the mediation facility.  Loiseau Decl. at ¶ 18.

29.     In an effort to schedule the mediation between the Parties, the JAMS case administrator (the "Case Administrator") sent Mobile-8 email messages on March 31, 2010, April 12, 2010, April 14, 2010, April 22, 2010, and April 27, 2010.  The Case Administrator further attempted to contact Mobile-8 through its website-based inquiry form on May 7, 2010, and by telephone.  Mobile-8 responded to none of these messages, and the Case Administrator's call to Mobile-8's main phone line was neither answered nor directed to voice mail.  Case Administrator Letter, Loiseau Decl. Ex. O.

30.     On May 7, 2010, the Court-appointed mediator (the "Mediator") sent a letter to Mobile-8 indicating that he had been selected to mediate the Parties' dispute, and requesting that Mobile-8 provide its availability for a conference call to discuss scheduling the mediation.  A copy of the ADR Procedures Order was attached to the letter.  The package was sent via email, facsimile, and Federal Express.  Mobile-8 did not respond.  Mediator Letter, Loiseau Decl. Ex. P.

31.     LBSF received no further contact from Mobile-8 until September 10, 2010 when it first received a copy of the Jakarta Action, defined herein.

## THE JAKARTA ACTION

32.     On September 10, 2010, LBSF received both an Indonesian and an English language copy of a complaint allegedly filed on May 26, 2010 by Mobile-8

against LBSF in the Civil Court, Niaga, HAM Jakarta Pusat, Indonesia (civil case No. 247/Pdt.G/2010PN.Jkt.Pst) (the "Jakarta Action").  Jakarta Action, Loiseau Decl. Ex. Q. The copy of the Jakarta Action was forwarded to LBSF by the Consulate General of the Republic of Indonesia, and was accompanied by a letter dated August 27, 2010.  *Id.* at 2. The address on the letter and on the complaint was incorrect, causing further delay before LBSF received notice of the Jakarta Action.  *Id.* at 2, 5.  Despite having received numerous communications from both LBSF and LBSF's outside counsel during the ADR process, all of which provided accurate contact information for both LBSF and its counsel, Mobile-8 erroneously directed the complaint to LBSF's former headquarters at 745 Seventh Avenue, New York, NY 10019, which was sold to Barclays in September 2008, and did not serve LBSF's outside counsel with the complaint.  *See* Loiseau Decl. at ¶ 21.  Barclays forwarded the package to LBSF on September 3, 2010, and it was received by LBSF on or around September 10, 2010.  *Id.* at 39.

33.     The letter accompanying the Jakarta Action indicated that an initial proceeding was scheduled to take place before the court in Jakarta on September 8, 2010 at 10:00 a.m., local time – several days prior to the date upon which LBSF first received actual notice of the pending Jakarta Action.  *Id.* at 2.  LBSF engaged local counsel in Jakarta and learned that a second hearing on September 29, 2010 had been noticed in two Indonesian newspapers.  Newspaper Summons, Loiseau Decl. Ex. R.

34.     In the Jakarta Action, Mobile-8 seeks to have the Transaction deemed invalid and brings several causes of action against LBSF, all premised upon the alleged invalidity of the Confirmation.  *Id.*  Specifically, Mobile-8 selectively quotes the

language of the Confirmation to suggest, incorrectly, that the Confirmation would only become binding and effective when and if the parties execute a form ISDA Master Agreement (the "ISDA Form"). *Id.* at 7-8.

35.    Contrary to Mobile-8's assertions in the Jakarta Action, the express terms of the Confirmation state that "[t]his Confirmation evidences a complete and binding agreement between [LBSF] and [Mobile-8] as to the terms of the Transaction to which this Confirmation relates." Confirmation, Loiseau Decl. Ex. A at 1.

36.    The Confirmation further states that unless and until the Parties execute a form ISDA Master Agreement, "this Confirmation, together with all other documents confirming transactions entered into between us and referring to the ISDA Form, shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement in such form (but without any Schedule) on the Trade Date of this Transaction." *Id.* at 1.

37.    Mobile-8 alleges that the Transaction never became binding upon the Parties because the Parties did not execute an ISDA Form. Jakarta Action, Loiseau Decl. Ex. Q at 12. As a result, Mobile-8 alleges that the actions taken by LBSF to bill Mobile-8 for the September 2008 Missed Payment and the March 2009 Missed Payment constituted a tort under Indonesian law. *Id.* at 16-18. Mobile-8's complaint ignores the facts that the Confirmation is a binding agreement and the Confirmation incorporated by reference the terms and conditions of the ISDA Agreement. Confirmation, Loiseau Decl. Ex. A at 1.

38.     Mobile-8 further alleges that LBSF is in violation of Bank Indonesia Regulation No. 7/31/PBI/2005 on Derivative Transactions (the "Indonesia Bank Regulation").  Jakarta Action, Loiseau Decl. Ex. Q at 24.  In fact, the Confirmation is fully compliant with the Indonesia Bank Regulation which requires that derivatives transactions shall be governed by contracts, and specifies that derivatives contracts must include the following terms: (a) ceiling on the derivative transaction; (b) base currency used; (c) currency or instrument to be exchanged; (d) settlement of the derivative transaction; (e) book keeping of gains/losses arising from the derivative transaction; (f) recording of unrealized gains or losses; (g) method or means of the derivative transaction; (h) amount of commission; (i) use of conversion rate; (j) advice and confirmation of the derivative transaction; (k) confidentiality; and (l) domicile and governing law.  *See* Indonesia Bank Regulation, Loiseau Decl. Ex. S.  These terms are included within the Confirmation itself, even without reference to the ISDA Agreement that is incorporated by reference into the Parties' Confirmation.  *See* Confirmation, Loiseau Decl. Ex. A.

39.     Because the Confirmation is a valid, binding and enforceable contract between the Parties, there is no basis for Mobile-8's tort claims arising out of LBSF's attempts to contact Mobile-8 to receive payment of the amounts due under the Confirmation.  Mobile 8's assertion that there is no legally binding contract between the Parties is flatly contradicted by Mobile 8's acceptance of the payment from LBSF pursuant to the Confirmation and ISDA Agreement in March 2008.

40.     Further, in the Jakarta Action, Mobile-8 seeks immediate relief from the Indonesian court to prohibit LBSF from challenging the claims or initiating any

proceedings related to the same matter.   Specifically, Mobile-8 has requested that the Indonesian court issue a provisional verdict "requiring  [LBSF] . . . to be status quo or not to take any action, neither legal action in the form of civil suit, bankruptcy petition against [Mobile-8], the arbitrary petition in the domestic and/or in foreign country, a request of execution, billing out actions, transfer of rights or cessie upon any letter/all documents of any property owned by [Mobile-8], both any movable or immovable matters at law institutions and/or any arbitrary bodies in the Domestic and International Countries."   *See* Jakarta Action, Loiseau Decl. Ex. Q at 33.   In addition, Mobile-8 has requested that the Indonesian court impose a penalty of up to 50,000,000 Indonesian rupiah per day[2] if LBSF fails to comply.   *Id.* at 34.

41.    Because the Jakarta Action is, fundamentally, an attempt to invalidate a pre-petition contract between LBSF and Mobile-8, it is a violation of the automatic stay.

42.    On September 24, 2010 LBSF sent a letter to Mobile-8's counsel advising Mobile-8 that its initiation and pursuit of the Jakarta Action constitutes a violation of the automatic stay.   September 24 Letter, Loiseau Decl. Ex. T.   LBSF stated that  Mobile-8 must terminate the Jakarta Action immediately and advised Mobile-8 that LBSF would file pleadings with the Bankruptcy Court to enforce the automatic stay and for appropriate sanctions if Mobile-8 failed to file a notice of withdrawal of the Jakarta Action prior to September 29, 2010.   Mobile-8 did not respond to the September 24 Letter or withdraw the Jakarta Action.

---

[2] Approximately $5,500/day.

43.    On October 1, 2010, LBSF filed an adversary complaint against Mobile-8 alleging counts for breach of contract, violation of the automatic stay, turnover of property of LBSF's estate, and violation of the ADR Procedures Order (the "Adversary Proceeding").

## RELIEF REQUESTED

44.    With respect to Mobile-8's violation of the automatic stay by initiating and pursuing the Jakarta Action, LBSF requests that the Court (i) enforce the automatic stay as to the Jakarta Action; (ii) declare that Mobile-8 is barred by the automatic stay from attempting to seek monetary damages or to enforce remedies with respect to the Transaction; (iii) direct Mobile-8 immediately to withdraw the Indonesian complaint and terminate the Jakarta Action; and (iv) sanction Mobile-8 for initiating the Jakarta Action in violation of the automatic stay including by requiring Mobile-8 to pay the attorneys' fees incurred by LBSF in connection with the Jakarta Action, this Motion, and this Adversary Proceeding.

45.    With respect to Mobile-8's violation of the automatic stay by withholding payment of the September 2008 Missed Payment and the Termination Payment, LBSF requests that the Court (i) enter a declaratory judgment that Mobile-8 is in express violation of sections 362 of the Bankruptcy Code by withholding payment of the September 2008 Missed Payment and the Termination Payment; (ii) order Mobile-8 to immediately pay to LBSF the September 2008 Missed Payment and the Termination Payment; and (iii) sanction Mobile-8 for withholding the September 2008 Missed Payment and the Termination Payment, including by requiring Mobile-8 to pay the

attorneys' fees incurred by LBSF in connection with enforcing its rights pursuant to the Confirmation.

46.    With respect to Mobile-8's failure to comply with the ADR Procedures Order, LBSF requests that the Court sanction Mobile-8 by (i) requiring Mobile-8 to pay the attorneys' fees incurred by LBSF with respect to the ADR Procedures after the transmittal of the ADR Package to the Court-appointed mediators; (ii) paying any costs and fees incurred by the Mediator; and (iii) awarding to LBSF the amount specified in the Derivatives ADR Notice.[3]

## BASIS FOR RELIEF

### I.    THE COURT SHOULD ENFORCE THE AUTOMATIC STAY AND IMPOSE SANCTIONS ON MOBILE-8

#### A.    Mobile-8 Violated the Automatic Stay by Initiating the Jakarta Action

47.    The filing of a petition for relief under the Bankruptcy Code immediately operates as an automatic stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of [the chapter 11 case]."  11 U.S.C. § 362(a)(1).  It is well-established that contract-based claims arise at the time the contract is entered into, rather than upon the occurrence of subsequent events such as termination.  *See In re Chateaugay Corp.,* 102 B.R. 335, 351 (Bankr. S.D.N.Y. 1989) ("[w]here the debtors' obligations stem from

---

[3] LBSF seeks an award of the amount specified in the Derivatives ADR Notice only to the extent that payment of the Termination Payment is not otherwise ordered by the Court.  LBSF does not seek to recover on this amount twice.

contractual liability, even a post-petition breach will be treated as a prepetition liability where the contract was executed prepetition") (quoting *In re Chateaugay Corp.*, 87 B.R. 779, 796 (S.D.N.Y.1988), *aff'd on other grounds sub nom. Pension Benefit Guar. Corp. v. The LTV Corp.,* 875 F.2d 1008 (2d Cir.1989), *rev'd on other grounds,* 496 U.S. 633 (1990)); *In re Riodizio, Inc.,* 204 B.R. 417, 424 n. 6 (Bankr. S.D.N.Y. 1997) (postpetition breach of a prepetition contract gives rise to only a prepetition claim); *Cohen v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group Inc.),* 138 B.R. 687, 696 n. 12 (Bankr. S.D.N.Y. 1992) (same).

48.    Any act to obtain or enforce a foreign judgment is likewise a violation of the automatic stay.  Section 362(a)(6) of the Bankruptcy Code, a chapter 11 petition operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."  *See, e.g., In re Solutia Inc.*, 379 B.R. 473, 485 n.8 (Bankr. S.D.N.Y. 2007) (finding that, as used in section 362(a)(6) of the Bankruptcy Code, "assess . . . can mean to simply determine the size or value of something").

49.    Indeed, without relief from the stay, judicial actions and proceedings against the debtor are void *ab initio*.  *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1206 (2d Cir. 1991) (citation omitted).  "Holding that judicial acts and proceedings in violation of the automatic stay are void *ab initio* is consistent with the stay's function of 'enabl[ing] the bankruptcy court to decide whether it will exercise its power under section 502(b) of the Bankruptcy Code to establish the validity and amount of claims against the debtor or allow another court to do so, thereby preventing a chaotic

and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'"  *Id.* at 1207 (quoting *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986)) (internal citation and quotation marks omitted).

50.    In the Jakarta Action, Mobile-8 seeks to have the Parties' Confirmation declared invalid and alleges various causes of action against LBSF arising out of the Parties' Confirmation and ISDA Agreement.  The Parties entered into the Confirmation over a year prior to LBSF's chapter 11 filing.  As such, any cause of action seeking to determine the validity of the Confirmation constitutes "a proceeding against the debtor that was or could have been commenced before the commencement of [the chapter 11 case]."  11 U.S.C. § 362(a)(1).  Furthermore, as a matter of well-settled law, any claim relating to the Parties' prepetition Confirmation is also deemed to have arisen prepetition at the time the Parties entered into the Confirmation.  *See In re Chateaugay Corp.*, 102 B.R. at 351.  Accordingly, each of the causes of action raised by Mobile-8 in the Jakarta Action are subject to the automatic stay, and the Jakarta Action is void *ab initio. See Maritime Elec. Co.*, 959 F.2d at 1206.

51.    The injunctive relief sought by Mobile-8 in the Jakarta Action is also a violation of the automatic stay.  As described above, Mobile-8 has demanded a provisional verdict barring LBSF from "tak[ing] any action . . . against [Mobile-8 including] the arbitrary petition in the domestic and/or in foreign country, a request of execution, billing out actions, transfer of rights or cessie upon any letter/all documents of any property owned by [Mobile-8], both any movable or immovable matters at law institutions and/or any arbitrary bodies in the Domestic and International Countries."

This extraordinary constraint on LBSF's ability to preserve and recover assets of its estate would be unprecedented in these chapter 11 cases and is a clear violation of the automatic stay. *See Advanced Computer Servs. of Michigan, Inc. v. Mai Sys. Corp.*, 161 B.R. 771, 774-75 (E.D. Va. 1993) (rejecting plaintiff's contention that suits for injunctive relief were equitable in nature (and not judicial actions) and thus exempt from the prohibition on the commencement or continuation of judicial actions set forth in section 362(a) of the Bankruptcy Code); *see also*, 3 COLLIER ON BANKRUPTCY § 362.03[3], at 362-15 (15th Ed. Rev. 2009) ("The stay includes actions seeking injunctive or similar relief as well as actions seeking money judgments").

52.    Indeed, any attempt to restrain a debtor's ability to exercise its contractual rights is a violation of the automatic stay. *See, e.g.*, Metavante Hr'g Tr. 112:20-112:22 September 15, 2009; *In re Enron Corp.*, 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) ("Courts have consistently held that contract rights are property of the estate, and that therefore those rights are protected by the automatic stay.") (citations and internal quotations omitted); *Broadstripe, LLC v. Nat'l Cable Television Coop., Inc. (In re Broadstripe, LLC)*, 402 B.R. 646, 657 (Bankr. D. Del. 2009) (same); 3 COLLIER ON BANKRUPTCY § 362.03[3], at 362-22 (15th Ed. Rev. 2009) ("As property of the estate, the debtor's interests in [executory] contracts . . . are protected against termination or other interference that would have the effect of removing or hindering the debtor's rights in violation of section 362(a)(3).").[4]

---

[4] LBSF's causes of action against Mobile-8 are also property of LBSF's estate and, therefore, are protected by the automatic stay. *See, e.g. U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983) ("'The scope of [section 541(a)(1) ] is broad.  It includes all kinds of property, including . .

53.    Accordingly, each of the causes of action raised by Mobile-8 in the Jakarta Action are subject to the automatic stay, and the Jakarta Action is void *ab initio. See Maritime Elec. Co.,* 959 F.2d at 1206.  Allowing Mobile-8 to proceed unchallenged with the Jakarta Action, in blatant disregard for the provisions of the Bankruptcy Code, will deprive LBSF's legitimate creditors of their rightful share of the property of LBSF's estate and encourage other counterparties to ignore the automatic stay and disrupt the equitable and efficient administration of these chapter 11 cases.

54.    Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order or judgment that is necessary or appropriate to carry out provisions of this title." 11. U.S.C. § 105(a).  The Court should, pursuant to section 362(a) and its section 105(a) power, issue an order (i) declaring the Jakarta Action void *ab initio* as a violation of the automatic stay; (ii) declaring that Mobile-8 may not continue to pursue the Jakarta Action in violation of the automatic stay; and (iii) directing Mobile-8 immediately to withdraw the Indonesian complaint and terminate the Jakarta Action.  This step is warranted in light of the harm LBSF's estate will suffer if Mobile-8 continues to pursue the Jakarta Action.  If Mobile-8 does not cease its pursuit of the Jakarta Action, LBSF may be forced to incur substantial costs to defend itself in Indonesian court so as to avoid imposition of a default judgment granting the monetary damages and the injunctive relief requested by Mobile-8.

---

. causes of action.'") (quoting H.R.Rep. No. 95-595, p. 367 (1977); S.Rep. No. 95-989, p. 82 (1978)); *Smart World Technologies, LLC v. Juno Online Services, Inc. (In re Smart World Technologies, LLC)*, 423 F.3d 166, 175 (2d Cir. 2005) ("Property of the estate . . . includes, *inter alia,* 'all legal or equitable interests of the debtor . . . as of the commencement of the case . . . such as valuable causes of action.'") (internal citations omitted).

**B.      Mobile-8 Violated the Automatic Stay by Failing to Make the
Termination Payment and the September 2008 Missed Payment**

55.      The automatic stay also prohibits "any act to obtain possession of property

of the estate or of property from the estate or to exercise control over property of the

estate." 11 U.S.C. § 362(a)(3).  Section 541 of the Bankruptcy Code defines "property of

the estate" broadly to include "all legal or equitable interests of the debtor in property as

of the commencement of the case."  11 U.S.C. §541(a)(1).  Courts, including this Court,

have consistently held that contract rights are property of the estate and any rights of the

debtor thereunder are therefore protected by the automatic stay.  *See,* Metavante Hr'g Tr.

112:19-113:1 September 15, 2009 (stating that a derivatives counterparty's attempts to

control LBSF's rights to receive payment under an ISDA Agreement constitute an

attempt to control property of the estate in violation of the automatic stay);  *In re*

*Baltimore Marine Indus.*, 476 F.3d 238, 240 (4th Cir. 2007) ("[a]mounts owed to the

debtor under existing contracts are included within the estate"); *In re Enron Corp.*, 300

B.R. 201, 212 (Bankr. S.D.N.Y. 2003) ("contract rights are property of the estate . . .

[and] are protected by the automatic stay"); *In re Enron Corp.*, 2006 WL 3140640, *4

(Bankr. S.D.N.Y. Oct. 3, 2006) ("[a] Termination Payment owed [to the debtor] is

property of the debtor's estate").

56.      Pursuant to the terms of the Parties' ISDA Agreement and Confirmation,

LBSF is entitled to payment of the September 2008 Payment and the Termination

Payment.  These amounts owed to LBSF under its prepetition contract with Mobile-8

constitute property of the estate.  Mobile-8's refusal to pay these amounts to LBSF

constitutes an act to "exercise control over property of the estate" and is prohibited by the automatic stay. The Court should enter an Order declaring Mobile-8's withholding of the September 2008 Missed Payment and the Termination Payment a violation of the automatic stay, and directing Mobile-8 to immediately make all payments due to LBSF with respect to the Transaction.

### C.    The Automatic Stay Is Fundamental to the Chapter 11 Process and Mobile-8 Should be Held in Contempt for Violating the Stay

57.    The automatic stay is one of the most fundamental debtor protections provided by the Bankruptcy Code. *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.,* 474 U.S. 494, 503 (1986). It is well-settled that Congress intended the scope of the automatic stay to be broad in order to effectuate its protective purposes. H.R. Rep. No. 95-595 at 340 (1977); S. Rep. No. 95-989 at 49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5987, 6296-97; *see also In re Drexel Burnham Lambert Group Inc.*, 113 B.R. 830, 836 (Bankr. S.D.N.Y. 1990). The automatic stay "centralize[s] all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently." *Enron Corp. v. California ex rel. Lockyer (In re Enron)*, 314 B.R. 524, 534 (Bankr. S.D.N.Y. 2004) (quoting *Shugrue v. Air Line Pilots Assoc., Int'l. (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990)); *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 64 (2d Cir. 1986); 3 Collier on Bankruptcy ¶ 362.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2002).

58.    All actions taken in violation of the automatic stay are void and parties may be held in contempt of court for violating the automatic stay. *Bartel v. Eastern*

*Airlines*, No. 96-5105, 1998 U.S. App. LEXIS 71, at *5 (2d Cir. Jan. 6, 1998) (acknowledging bankruptcy court's power to impose civil contempt sanctions where a party is aware of the automatic stay and willfully ignores it). The Second Circuit has also held that "contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay." *Mar. Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.),* 920 F.2d 183, 186-187 (2d Cir. 1990) (citing *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay)*, 902 F.2d 1098, 1104 (2d Cir. 1990)). *In re Sarno*, 1980 Bankr. LEXIS 4976 at * 5 ("creditors and their attorneys who obtain judgments and judgment liens in violation of the automatic stay provisions may be held in contempt.") (*citing In re Seafarer Fiberglass Yachts, Inc*., 1 B.R. 358 (Bankr. E.D.N.Y. 1979).

59.    A finding of civil contempt is appropriate where the stay is knowingly violated in deliberate disregard of the law pertaining to the requirements for relief from stay. *Fidelity Mortgage Investors v. Camelia Builders Inc.,* 550 F.2d 47, 51, 57 (2d. Cir. 1976). Where the stay is knowingly violated in deliberate disregard of the Bankruptcy Code, the Court may impose sanctions for actual damages incurred by the estate, including costs and attorneys' fees. *Id.* at 57. Knowledge of the automatic stay is inferred by knowledge of the debtor's bankruptcy filing. *See In re Crawford*, 388 B.R. 506, 523 (Bankr. S.D.N.Y. 2008) ("[o]nce a party receives reasonable, actual notice of a bankruptcy filing, that party has the responsibility to ensure the stay is not violated"). It is incumbent upon parties who learn of a bankruptcy filing "to seek further information as

to the applicability and scope of the automatic stay and the risk of damages for failure to obtain leave or clarification from the bankruptcy court." *Id.*

60.    Mobile-8's conduct is a clear attempt to make an end run around LBSF's bankruptcy case and a blatant violation of the automatic stay.  Mobile-8 was aware of Debtors' bankruptcy cases as early as September 22, 2008.  September 22, 2008 Mobile-8 Letter, Loiseau Decl. Ex. E.  Indeed, Mobile-8 unsuccessfully sought to terminate the Transaction by letter dated May 5, 2009, citing LBHI and LBSF's chapter 11 cases.  Mobile-8 Purported Termination Letter, Loiseau Decl. Ex. I.  Mobile-8's knowledge of the automatic stay can be inferred from Mobile-8's knowledge of LBSF's bankruptcy filing.  *See In re Crawford*, 388 B.R. at 523.

61.    Notwithstanding its knowledge of the Debtors' bankruptcy, Mobile-8 continued to violate the automatic stay by withholding property of the estate and commencing the Jakarta Action in May 2010.  Such conduct constitutes a knowing and willful violation of the Bankruptcy Code's provisions prohibiting "the commencement . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of [the chapter 11 case]," 11 U.S.C. § 362(a)(1), and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" 11 U.S.C. § 362(a)(3).[4]

---

[4] Even assuming, *arguendo*, that Mobile-8 did not know about Debtors' bankruptcy petitions at the time it decided to withhold payment of the September 2008 Missed Payment and the Termination Payment, or later when it commenced the Jakarta Action in May 2010, such actions are nonetheless void for violating the automatic stay.

62.    Accordingly, LBSF respectfully requests that the Court declare the Jakarta Action void as a violation of the automatic stay, declare that further pursuit of the Jakarta Action by Mobile-8 is in violation of the automatic stay, direct Mobile-8 immediately to withdraw the Indonesian complaint and terminate the Jakarta Action, declare Mobile-8's actions in withholding payment of the September 2008 Missed Payment and the Termination Payment a violation of the automatic stay, and hold Mobile-8 in contempt for knowingly violating the automatic stay.  LBSF further requests that the Court assess monetary sanctions against Mobile-8 for the attorneys' fees and other costs incurred by the estate in connection with the Jakarta Action, in bringing this Motion and Adversary Proceeding, and in enforcing its rights under the Confirmation.

## II.    THE COURT SHOULD SANCTION MOBILE-8 FOR FAILURE TO COMPLY WITH THE ADR PROCEDURES ORDER

### A.    Mobile-8 Willfully Violated the ADR Procedures Order

63.    Participation in the ADR process is mandatory.  ADR Procedures Order ¶ 5.  The ADR Procedures Order provides that each party "must participate in good faith with [the] Derivatives ADR Procedures with regard to the ADR Disputes specified in the applicable Derivatives ADR Notice."  Mediator Letter, Loiseau Decl. Ex. P at 14 (ADR Procedures Order, ¶12).  To the extent that the Court determines that a party has not complied with the Derivatives ADR Procedures in good faith, the Court may issue such sanctions as it deems appropriate.  *Id.*

64.    A party that fails to comply with the ADR Procedures Order is subject to such sanctions as the Court deems appropriate.  *Id.*  The ADR Procedures Order specifies

that sanctions against a derivatives counterparty that fails to participate in good faith may include, but are not limited to, "(i) attorneys' fees incurred by the Debtors with respect to the Derivatives ADR Procedures after the sending of an ADR Package; (ii) fees and costs of the Mediator; and (iii) an award of the Derivatives ADR Dispute up to the amount specified in the Derivatives ADR Notice." *Id.* at 15 (ADR Procedures Order, ¶ 12(b)).

65.    Mobile-8 is in clear and willful violation of the ADR Procedures Order. After initially responding to the ADR Notice and participating in three settlement calls, Mobile-8 abruptly ended its participation in the ADR process, refusing to respond to LBSF, the Case Administrator, or the Mediator.  Mobile-8's filing of the Jakarta Action on May 26, 2010 further evidences Mobile-8's failure to participate in good faith. Mobile-8's failure to participate in good faith and its failure to follow the directions of the mediator are sanctionable by this Court.

**B.    The Court Should Impose Sanctions on Mobile-8 for Failure to Comply with the ADR Procedures Order**

66.    Section 105(a) of the Bankruptcy Code grants the bankruptcy courts the power to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and further explicitly allows the court to take "any action or make any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.  11 U.S.C. § 105(a).

67.    In the Second Circuit, the purpose of sanctions for failure to comply with a court order is three-fold: (1) to ensure that a party will not benefit from its own failure to comply; (2) to obtain compliance with the particular order issued; and (3) to serve a

general deterrent effect on the case at hand and on other litigants. *See Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (analyzing the purpose of sanctions in the context of discovery).

68.    The ADR Procedures Order specifies that sanctions against a derivatives counterparty that fails to participate in good faith may include, but are not limited to, "(i) attorneys' fees incurred by the Debtors with respect to the Derivatives ADR Procedures after the sending of an ADR Package; (ii) fees and costs of the Mediator; and (iii) an award of the Derivatives ADR Dispute up to the amount specified in the Derivatives ADR Notice."  Mediator Letter, Loiseau Decl. Ex. P at 15 (ADR Procedures Order, ¶ 12(b)).

69.    Imposition of sanctions on Mobile-8 will prevent Mobile-8 from benefiting from its attempt to make an end run around the ADR Procedures Order.  It will further serve as a disincentive to other derivatives counterparties who may consider refusing to participate in the ADR process.

70.    Accordingly, LBSF asks the Court to sanction Mobile-8 by (i)  ordering Mobile-8 to pay the attorneys' fees incurred by Debtors with respect to the ADR Procedures after the transmittal of the ADR Package to the Court-appointed mediators; (ii) ordering Mobile-8 to pay any fees and costs of the Mediator; and (iii) awarding to LBSF the amount specified in the Derivatives ADR Notice.

## NOTICE

71.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) Mobile-8 and its counsel; and (viii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

72.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE LBSF respectfully requests that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: New York, New York
       October 1, 2010

/s/ Robert Lemons
Peter Gruenberger, Esq.
Robert Lemons, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0019
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

                    - and -


Holly E. Loiseau, Esq.
WEIL, GOTSHAL & MANGES LLP
1300 I Street, NW, Suite 900
Washington, DC 20005
Telephone: (202) 682-7000
Facsimile:  (202) 857-0940

*Attorneys for Debtor and Plaintiff LBSF*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                :

In re                                 :        Chapter 11 Case No.
                                                :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :        08-13555 (JMP)
                                                :

                        Debtors.           :        (Jointly Administered)
                                                :
                                                :
---------------------------------------------------------------x

### [PROPOSED] ORDER GRANTING MOTION OF LEHMAN BROTHERS SPECIAL FINANCING INC. PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE FOR ENFORCEMENT OF THE AUTOMATIC STAY AND FOR SANCTIONS FOR VIOLATION OF THE ADR PROCEDURES ORDER

Upon the motion, dated October 1, 2010 (the "Motion"), of Lehman Brothers Special Financing Inc. ("LBSF") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 362(a) and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order declaring the Jakarta Action void *ab initio*, enforcing the automatic stay, and sanctioning Mobile-8 for violation of the ADR Procedures Order, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided, and it appearing

that no other or further notice need be provided; and the relief requested in the Motion

being in the best interests of LBSF and its estate and creditors; and the Court having

reviewed the Motion and having heard the statements in support of the relief requested

therein at a hearing before the Court (the "Hearing"); and the Court having determined

that the legal and factual bases set forth in the Motion and in the record of the Hearing

establish just cause for the relief granted herein; and upon all of the proceedings had

before the Court and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is GRANTED; and it is further

ORDERED that by virtue of the contractual choice of law and forum

selection clauses in the Confirmation and the ISDA Agreement, Mobile-8 has submitted

to the jurisdiction of this Court; and it is further

ORDERED that the Jakarta Action is a violation of the automatic stay

imposed by section 362 of the Bankruptcy Code and, as such, is void *ab initio*, and

Mobile-8 is ordered to immediately withdraw the Jakarta Action and cease all actions in

pursuit of the Jakarta Action; and it is further

ORDERED that Mobile-8's failure to deliver the September 2008 Missed

Payment and the Termination Payment to LBSF are each violations of the automatic stay

imposed by section 362 of the Bankruptcy Code and Mobile-8 is directed to cease its

attempts to exercise control over property of LBSF's estate and immediately turn over the

amounts due and owing to LBSF in respect of the September 2008 Missed Payment and

the Termination Payment; and it is further

ORDERED that Mobile-8 is sanctioned for violating the automatic stay by

initiating and pursing the Jakarta Action and by its attempts to exercise control over the

property of LBSF's estate, and is directed to pay all attorneys' fees and other costs

incurred by LBSF's estate in connection with the Jakarta Action, in bringing the Motion

and Adversary Proceeding, and in enforcing its rights under the Confirmation; and it is

further

ORDERED that Mobile-8 is sanctioned for violating the ADR Procedures

Order, and is directed to pay to LBSF (i) the attorneys' fees incurred by Debtors with

respect to the ADR Procedures after the transmittal of the ADR Package to the Court-

appointed mediators, (ii) any fees and costs of the Mediator, and (iii) the amount

specified in the Derivatives ADR Notice, provided, however, that LBSF shall not recover

twice for the same liability; and it is further

ORDERED that notwithstanding any provision in the Federal Rules of

Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately

effective and enforceable upon its entry, (ii) LBSF is not subject to any stay in the

implementation, enforcement, or realization of the relief granted in this Order, and (iii)

the Debtors may, in their discretion and without further delay, take any action and

perform any act authorized under this Order; and it is further

ORDERED that this Court retains exclusive jurisdiction with respect to any and all matters arising from or related to the implementation or enforcement of this Order.

Dated: October __, 2010
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE