WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Peter Gruenberger

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:                                                         :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :

                              Debtors.                      :

---------------------------------------------------------------x

LEHMAN BROTHERS SPECIAL FINANCING INC.,    :

                              Plaintiff,                    :

-against-                                                     :

BANK OF NEW YORK and BNY CORPORATE    :
TRUSTEE SERVICES LIMITED,

                              Trustee Defendants,        :

-and-                                                         :

GAZPROMBANK MORTGAGE FUNDING 2 S.A. and    :
RUBY FINANCE PUBLIC LIMITED COMPANY, AS    :
ISSUER OF THE SERIES 2006-7,

                              Issuer Defendants.         :

---------------------------------------------------------------x

Chapter 11

Case No. 08-13555 (JMP)

Adversary Proceeding
No.: _____ (JMP)

**COMPLAINT**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing Inc. ("LBSF" or "Plaintiff"), a debtor and

debtor in possession in the above-captioned jointly administered case of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors," and

together with its non-debtor affiliates, "Lehman"), by and through undersigned counsel, brings

this Complaint against certain trustees, The Bank of New York and BNY Corporate Trustee

Services Limited (referred to collectively as the "Trustees"), and certain special-purpose entities

identified on Schedule 1 (referred to collectively as the "Issuers," and together with the Trustees,

the "Defendants"[1]), which is attached and fully incorporated herein, and respectfully states:

## NATURE OF THE ACTION

1.    Plaintiff files this adversary proceeding to protect and restore a property

interest of Plaintiff that has substantial economic value to its estate – Plaintiff's contractual right

to senior payment priority ("Senior Payment Priority") in a derivatives transaction.  This action

stems from provisions in governing transaction documents with respect to certain derivatives

transactions (the "Modification Provisions"), the application of which were conditioned on the

commencement of either LBHI's or Plaintiff's bankruptcy case, that would operate so as to

deprive Plaintiff of this property interest by (a) taking Senior Payment Priority from Plaintiff,

(b) replacing it with junior payment priority ("Junior Payment Priority"), and (c) transferring

Senior Payment Priority to or for the benefit of certain noteholders (the "Noteholders") who

otherwise would have only Junior Payment Priority, including in certain circumstances by

---

[1]      The claims asserted by Plaintiff against the Trustees include each and every transaction as itemized on
Schedule 1, which is attached and incorporated herein, according to Issuer defendant for which the respective
Trustee served, operated, acted, or was otherwise designated as trustee, except transactions that have been resolved
by a fully executed settlement agreement.   Nothing in this complaint is intended, nor should be construed, to
contradict the terms of a fully executed settlement agreement previously entered into with any Defendant.

reducing or eliminating Plaintiff's right to payment altogether. This purported "flip" of payment priorities pursuant to the Modification Provisions, as described above, is referred to in this Complaint as the "Payment Priority Exchange."

2.      The Issuers issued a series of notes (the "Notes") pursuant to certain transaction documents, including trust or indenture documentation, specific to each series of notes (collectively, the "Transaction Documents") under which the Trustees serve. The Issuers and Plaintiff were parties to one or more swap agreements (collectively with respect to a given series of Notes, the "Agreements"). LBHI served as the Credit Support Provider, or guarantor, of Plaintiff's obligations under the Agreements. The Transaction Documents govern payment to the Noteholders and Plaintiff.

3.      The Trustees, or agents for one of the Defendants, hold for the benefit of (among others) Plaintiff and the Noteholders the collateral (the "Collateral"), or security over the Collateral that the Issuers provided to secure their respective payment obligations both to Plaintiff and to the Noteholders. Plaintiff's and the Noteholders' recourse for payment of claims against the Issuers is limited to the Collateral and/or any assets of the Issuers related to that particular series of Notes. Plaintiff's and the Noteholders' respective payment priorities for their claims against the Issuers are enforced and realized through the distribution of the Collateral or its proceeds.

4.      On September 15 and October 3, 2008, respectively, LBHI and Plaintiff filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Under the Agreements, the commencement of a case under the Bankruptcy Code by either Plaintiff or its Credit Support Provider, LBHI, constituted an Event of Default under the Agreements with respect to Plaintiff.

3

5.      Under the Transaction Documents, when Plaintiff has a claim against a

particular Issuer under their respective Agreement because it is "in-the-money" to Plaintiff,

Plaintiff's claim has Senior Payment Priority, and the Noteholders' claim has Junior Payment

Priority.  But upon (a) the occurrence of an Event of Default under the Agreements with respect

to Plaintiff, and (b) triggering of the Modification Provisions, Senior Payment Priority is

transferred from Plaintiff to or for the benefit of the Noteholders, leaving Plaintiff with only

Junior Payment Priority, or no payment, for its claim.

6.      The Modification Provisions effect the Payment Priority Exchange *solely*

as the result of Plaintiff's or LBHI's bankruptcy filing.  The Court should declare that the

Modification Provisions constitute unenforceable *ipso facto* clauses that inappropriately modify a

debtor's interest in property in violation of sections 365(e)(1) and 541(c)(1) of the Bankruptcy

Code.  Accordingly, Plaintiff seeks a declaratory judgment that such provisions are

unenforceable and that Plaintiff is entitled to Senior Payment Priority.

7.      Moreover, effecting the Payment Priority Exchange pursuant to the

Modification Provisions violates the automatic stay under section 362(a)(3) of the Bankruptcy

Code because it involves an improper exercise of control over property of Plaintiff's estate.  As

such, Plaintiff seeks a declaratory judgment that such provisions violate the automatic stay.

8.      For purposes of alternative pleading, if the Modification Provisions are

ultimately found to be enforceable in whole or in part,[2] to the extent that the Modification

---

[2]      This Court previously has concluded that similar contractual provisions do not become effective
automatically upon an Event of Default, but in addition require the occurrence of further conditions precedent to
determine distribution priorities after an effective early termination.  Plaintiff believes this interpretation of the
Transaction Documents is correct.  As this Court recognized, however, even if the Modification Provisions were to
become effective automatically upon an Event of Default, certain protections of the Bankruptcy Code attached to
Plaintiff on the date of LBHI's bankruptcy filing.  By contrast, the English High Court of Justice, Chancery
Division, Royal Courts of Justice for England and Wales (the "High Court") and English Court of Appeal (Civil

4

Provisions effected the Payment Priority Exchange **before** the commencement of Plaintiff's

bankruptcy case, the Payment Priority Exchange constituted either (a) a preferential transfer of

an interest of Plaintiff in property that may be avoided under section 547 of the Bankruptcy

Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of

Plaintiff's estate under section 551 of the Bankruptcy Code, or (b) a constructive fraudulent

transfer of an interest of Plaintiff in property that may be avoided under section 548(a)(1)(B) of

the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for

the benefit of Plaintiff's estate under section 551 of the Bankruptcy Code.

9.       If the Modification Provisions are ultimately found to be enforceable in

whole or in part, to the extent that the Modification Provisions effected the Payment Priority

Exchange **after** the commencement of Plaintiff's bankruptcy case, the Payment Priority

Exchange constituted an unauthorized postpetition transfer of property of Plaintiff's estate that

may be avoided under section 549 of the Bankruptcy Code, recovered under section 550 of the

Bankruptcy Code, and preserved for the benefit of Plaintiff's estate under section 551 of the

Bankruptcy Code.

## PARTIES

10.       Plaintiff is a Delaware corporation with its current principal business

address at 1271 Sixth Avenue, 40th Floor, New York, New York 10020.

---

Division) (the "Court of Appeal"), considering issues of English common law as opposed to United States
bankruptcy law, have held that provisions similar, if not identical, to the Modification Provisions became effective
automatically upon LBHI's bankruptcy filing on September 15, 2008. Pursuant to these holdings of the High Court
and the Court of Appeal, the Payment Priority Exchange would occur upon the commencement of LBHI's
bankruptcy case on September 15, 2008. This alternative legal interpretation, which Debtors believe should not
apply in this Court, is, nevertheless, an alternative basis for this pleading in the event the Payment Priority Exchange
is ultimately determined not to have occurred upon or after the commencement of Plaintiff's bankruptcy case on
October 3, 2008.

11.    Upon information and belief, the Bank of New York is a corporation organized under the laws of Delaware, and/or is a national banking association organized under the laws of the United States, with its principal place of business at One Wall Street, New York, New York 10286. The Bank of New York Mellon Corporation is also the successor in trust to JPMorgan Chase Bank.

12.    Upon information and belief, BNY Corporate Trustee Services Limited is a company organized under English law with its principal place of business at One Canada Square, London, E14 5AL, United Kingdom. It has submitted to the jurisdiction of this Court by entering a notice of appearance and participating in proceedings before this Court, including by filing an objection to the Debtors' motion to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts. Dkt. 1728, 1892. It is an affiliate of Bank of New York Mellon, a Delaware corporation with its principal place of business in New York, New York.

13.    Upon information and belief, the Issuers are named and identified on the attached Schedule 1, which is incorporated fully herein.

## JURISDICTION AND VENUE

14.    The Court has subject-matter jurisdiction over this proceeding under 28 U.S.C. §§ 157, 1334. This is a "core proceeding" under 28 U.S.C. § 157(b).

15.    Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

16.    The statutory prerequisites for the relief requested herein are sections 105(a), 362(a)(3), 365(e)(1), 541(c)(1), 547, 548(a)(1)(B), 549(a), 550, and 551 of the Bankruptcy Code, section 2201 of Title 28 of the United States Code, Federal Rule of Civil Procedure 57, and Rules 7001 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

6

## BACKGROUND

17.    Lehman was formerly the fourth largest investment bank in the United States. For more than 150 years, Lehman was a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients, and individuals worldwide. Lehman's headquarters in New York and regional headquarters in London and Tokyo were complemented by a network of offices in North America, Europe, the Middle East, Latin America, and the Asia Pacific region.

18.    Plaintiff's and LBHI's chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

19.    Plaintiff and LBHI are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

20.    The Issuers issued the Notes to raise funds with which to acquire assets. Plaintiff and the Issuers are counterparties under the Agreements. The Trustees serve pursuant to the Transaction Documents.

21.    Under the Agreements, the bankruptcy filing of Plaintiff or LBHI as its Credit Support Provider falls within the definition of an "Event of Default" with respect to Plaintiff. Until the Modification Provisions are triggered, Plaintiff has Senior Payment Priority for its claims against the Issuers under the Agreements, and the Noteholders have Junior Payment Priority for their claims against the Issuers under the Notes. But upon triggering the Modification Provisions, the application of which is conditioned on either Plaintiff's or LBHI's bankruptcy filing, the payment priority is altered. When this occurs, the Transaction Documents provide that (a) Plaintiff's Senior Payment Priority is taken from it and transferred to or for the

7

benefit of the Noteholders, and (b) Plaintiff is allotted Junior Payment Priority, which until that

moment had been held by the Noteholders.

22.    If this purported shift in priorities is not invalidated under the *ipso facto*

doctrine, as Plaintiff believes it should be, then the Modification Provisions work as an

intercreditor agreement between Plaintiff and the Noteholders in connection with their respective

claims against the Issuers.  If enforceable, the Modification Provisions would obligate Plaintiff,

in contractually specified circumstances, to transfer its interest in particular property – the right

to Senior Payment Priority – to or for the benefit of the Noteholders, thereby enhancing the

Noteholders' ability to recover on their claims against the Issuers.  The Payment Priority

Exchange would thus cause Plaintiff to part with a valuable property interest – its contractual

right to Senior Payment Priority – by giving it to or for the benefit of the Noteholders.  Plaintiff's

parting with that interest would constitute an avoidable "transfer" under section 101(54) of the

Bankruptcy Code.

23.    If enforceable, the Modification Provisions operate as a covenant by

Plaintiff that, upon the occurrence of specified events, Plaintiff will pledge some of its property

to or for the benefit of the Noteholders, to further secure the Noteholders' claims against the

Issuer.  Just as such a covenant would give the Noteholders a contractual right to obtain property

from Plaintiff through such a pledge, the Modification Provisions, if enforceable, would give the

Noteholders a contractual right to obtain property from Plaintiff through the Payment Priority

Exchange.  And just as Plaintiff would satisfy its contractual obligation to the Noteholders under

such a covenant by delivering property to or for the benefit of the Noteholders, through such a

pledge if the Modification Provisions are found to be enforceable, Plaintiff would, through the

Payment Priority Exchange, satisfy its contractual obligation to the Noteholders to give Senior

8

Payment Priority to or for the benefit of the Noteholders. Even if the Modification Provisions
might be read to effectuate the Payment Priority Exchange automatically, rather than through
some action by Defendants, this does not change the fact that the Payment Priority Exchange
constitutes a transfer of an interest of Plaintiff in property to or for the benefit of the Noteholders
that satisfies an existing contractual obligation of Plaintiff to the Noteholders to make such
transfer.

24.     Alternatively, if the Payment Priority Exchange is not effected pursuant to,
and in satisfaction of, an existing contractual obligation of Plaintiff, then any operation of the
Payment Priority Exchange would be a gratuitous transfer of a property interest by Plaintiff for
which Plaintiff received no value in exchange.

25.     If the Modification Provisions are enforceable, then the Trustees would be
required to effectuate the Payment Priority Exchange in violation of the Bankruptcy Code.

26.     All conditions precedent to suit have been performed, have occurred, or
have been waived.

## COUNT I
### Against All Defendants

### (Declaratory Judgment -- Provisions Modifying Plaintiff's Payment Priority as a Result of the Bankruptcy Filings Are Unenforceable Ipso Facto Clauses)

27.     Plaintiff repeats, realleges, and incorporates by reference the allegations
contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of
action.

28.     The Modification Provisions that purport to effect the Payment Priority
Exchange as a result of LBHI's or Plaintiff's bankruptcy filing constitute unenforceable *ipso
facto* clauses that violate sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code.

9

29.    The Bankruptcy Code protects debtors from being penalized for filing a

chapter 11 case, notwithstanding any contractual provisions or applicable law that would have

that effect.  Section 365(e)(1) of the Bankruptcy Code provides that:

> [n]otwithstanding a provision in an executory contract . . .  an
> executory contract . . . of the debtor may not be terminated *or
> modified*, and any right or obligation under such contract or lease
> may not be terminated *or modified*, at any time after the
> commencement of the case solely because of a provision in such
> contract . . . that is conditioned on . . . the commencement of a case
> under this title . . . .

11 U.S.C. § 365(e)(1) (emphasis added).

30.    Similarly, section 541(c)(1) recognizes that a debtor's interest in property:

> becomes property of the estate . . . notwithstanding any provision
> in an agreement, transfer instrument, or applicable nonbankruptcy
> law . . . that is conditioned on . . . the commencement of a case
> under this title . . . and that effects or gives an option to effect a
> forfeiture, modification, or termination of the debtor's interest in
> property.

11 U.S.C. § 541(c)(1).

31.    Because the Modification Provisions (a) become operative after the

commencement of LBHI's or Plaintiff's bankruptcy case, (b) effect the Payment Priority

Exchange solely because of "the commencement of a case" under the Bankruptcy Code, and

(c) deprive Plaintiff of Senior Payment Priority, the provisions are unenforceable *ipso facto*

clauses.  *See* 11 U.S.C. §§ 365(e)(1), 541(c)(1).

32.    The Court should declare that the Modification Provisions and the

corresponding Payment Priority Exchange are unenforceable pursuant to sections 365(e)(1) and

541(c)(1) of the Bankruptcy Code.

33.    There is an actual controversy between the parties on this issue because

the Transaction Documents on their face require the Payment Priority Exchange in violation of

10

the Bankruptcy Code, and Defendants have not indicated a willingness to disregard such

Payment Priority Exchange.

34.    Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001,

Plaintiff requests that the Court enter a declaratory judgment that (a) the Modification Provisions

are unenforceable *ipso facto* clauses pursuant to sections 365(e)(1) and 541(c)(1) of the

Bankruptcy Code, and (b) Plaintiff is entitled to Senior Payment Priority.

## COUNT II
## Against All Defendants

### *(Declaratory Judgment – Provisions Modifying Plaintiff's Payment Priority as a Result of the Bankruptcy Filings Violate the Automatic Stay)*

35.    Plaintiff repeats, realleges, and incorporates by reference the allegations

contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of

action.

36.    Section 362(a) of the Bankruptcy Code provides, in relevant part, that the

filing of a petition under Title 11 of the Bankruptcy Code "operates as a stay, applicable to all

entities, of – . . . (3) any act to obtain possession of property of the estate or of property from the

estate or to exercise control over property of the estate; . . . ." 11 U.S.C. § 362(a)(3).

37.    At the time that Plaintiff commenced its case under the Bankruptcy Code,

its right to Senior Payment Priority constituted a substantial asset of the estate. Any action to

exercise control over Plaintiff's Senior Payment Priority, including any action to effect the

Payment Priority Exchange, would be, therefore, subject to, and in violation of, the automatic

stay provided under section 362(a) of the Bankruptcy Code. *See* 11 U.S.C. § 362(a)(3).

38.    Further, the Payment Priority Exchange improperly seeks to take property

of Plaintiff because of its or LBHI's bankruptcy filing. Property of a debtor becomes property of

11

the estate, "notwithstanding any provision in an agreement . . . that is conditioned . . . on the commencement of a case under this title . . . and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property." 11 U.S.C. § 541(c)(1). Effecting the Payment Priority Exchange would modify Plaintiff's Senior Payment Priority, and thus cause Plaintiff to forfeit an interest in property, because of "the commencement of a case under this title." This violates the automatic stay provided under section 362(a).

39.    There is an actual controversy between the parties on this issue because the Transaction Documents require the Payment Priority Exchange in violation of the Bankruptcy Code, and Defendants have not indicated a willingness to disregard such Payment Priority Exchange.

40.    Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001, Plaintiff requests that this Court enter a declaratory judgment that enforcement of the Payment Priority Exchange constitutes a willful violation of the automatic stay under section 362(a)(3) of the Bankruptcy Code.

### ALTERNATIVE COUNT III
### Against the Trustees

*(Prepetition Payment Priority Exchange Constitutes
Avoidable Transfer Under Section 547 of the Bankruptcy Code)*

41.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 to 26 of this Complaint as though fully set forth in this cause of action.

42.    Section 547(b) of the Bankruptcy Code provides that "any transfer of an interest of the debtor in property" may be subject to avoidance as a preference if the transfer is made: "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) . . . while the debtor was insolvent; (4) . . . on or

12

within 90 days before the date of the filing of the petition . . .; and (5) that enables such creditor

to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of

this title; (B) the transfer had not been made; and (C) such creditor received payment of such

debt to the extent provided for by the provisions of this title." 11 U.S.C. § 547(b).

43.    Pursuant to the Transaction Documents, the bankruptcy filing of LBHI on

September 15, 2008 – as Credit Support Provider to Plaintiff under the Agreements – constituted

an Event of Default under the Agreements with respect to Plaintiff.

44.    If the Payment Priority Exchange is found to be effective, it would cause

Plaintiff to transfer to or for the benefit of the Noteholders an interest of Plaintiff in property – its

right to Senior Payment Priority.

45.    To the extent that the Payment Priority Exchange may be found to

(a) have taken effect *before* Plaintiff's petition date, (b) be enforceable, and (c) have been

effected pursuant to an existing contractual obligation of Plaintiff, it is avoidable as a preferential

transfer pursuant to section 547 of the Bankruptcy Code.

46.    If the provisions that govern the Payment Priority Exchange are found to

be enforceable, they would effect a transfer of Plaintiff's right to Senior Payment Priority to or

for the benefit of the Noteholders, who, pursuant to their contractual rights, would, under those

narrow circumstances, have been creditors of Plaintiff.

47.    Under the circumstances described in this count, the transfer of Plaintiff's

right to Senior Payment Priority would be on account of an antecedent debt, consisting of

Plaintiff's contractual obligation, in specified circumstances, to transfer its right to Senior

Payment Priority to or for the benefit of the Noteholders.

13

48.    Under these circumstances, any transfer would have been made no earlier than September 15, 2008 – within the 90 days preceding Plaintiff's bankruptcy filing – while Plaintiff was insolvent.

49.    If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, it would allow the Noteholders to receive more than they would have otherwise received if the case were a case under chapter 7 of this title and the transfer effected by the Payment Priority Exchange had not been made.

50.    If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, it was a preferential transfer of Plaintiff's property interest – its Senior Payment Priority – to or for the benefit of the Noteholders, which Plaintiff may avoid pursuant to section 547(b) of the Bankruptcy Code, recover pursuant to section 550 of the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of the Bankruptcy Code. In this alternative Count, Plaintiff asserts its right to avoid the Payment Priority Exchange and to recover and preserve Senior Payment Priority for the benefit of its estate.

## ALTERNATIVE COUNT IV
### Against the Trustees

### (Prepetition Payment Priority Exchange
### Constitutes Avoidable Transfer Under Section 548 of the Bankruptcy Code)

51.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in preceding paragraphs 1 to 26 of this Complaint as though fully set forth in this cause of action.

52.    Section 548(a)(1)(B) of the Bankruptcy Code provides that a transfer of a debtor's interest in property, made within two years before the commencement of the debtor's

14

bankruptcy case, may be avoided as constructively fraudulent if the debtor (a) "received less than reasonably equivalent value in exchange for such transfer" and (b) (i) "was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer or obligation," (ii) "was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital," or (iii) "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured."  11 U.S.C. § 548(a)(1)(B)(i)-(ii).

53.    Pursuant to the Transaction Documents, the bankruptcy filing of LBHI on September 15, 2008 – as Credit Support Provider to Plaintiff under the Agreements – constituted an Event of Default under the Agreements with respect to Plaintiff.

54.    If the Payment Priority Exchange is found to be effective, it would cause Plaintiff to transfer to or for the benefit of the Noteholders an interest of Plaintiff in property – its right to Senior Payment Priority.

55.    To the extent that the Payment Priority Exchange may be found to (a) have taken effect *before* Plaintiff's petition date, (b) be enforceable, and (c) have been effected pursuant to an existing contractual obligation of Plaintiff, it is avoidable as a preferential transfer pursuant to section 547 of the Bankruptcy Code.

56.    If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, it would effect a transfer of Plaintiff's right to Senior Payment Priority to or for the benefit of the Noteholders.

57.    If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, and to the extent that the Payment Priority Exchange is not found to have been effected pursuant to, and in satisfaction of, an existing

15

contractual obligation of Plaintiff, it would have been done gratuitously, and therefore, in exchange for less than reasonably equivalent value.

58.    If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, the Payment Priority Exchange would have occurred when Plaintiff was, or thereby became, insolvent, or left with unreasonably small capital, or intending or believing that it would incur debts that would be beyond its ability to pay as such debts matured.

59.    If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, the Payment Priority Exchange was a constructive fraudulent transfer of Plaintiff's property interest – its Senior Payment Priority – to or for the benefit of the Noteholders, which Plaintiff may avoid pursuant to section 548(a)(1)(B) of the Bankruptcy Code, recover pursuant to section 550 of the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of the Bankruptcy Code.  In this alternative Count, Plaintiff asserts its right to avoid the Payment Priority Exchange and to recover and preserve Senior Payment Priority for the benefit of its estate.

### ALTERNATIVE COUNT V
### Against the Trustees

#### *(Postpetition Payment Priority Exchange*
#### *Constitutes Avoidable Transfer Under Section 549 of the Bankruptcy Code)*

60.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 to 26 of this Complaint as though fully set forth in this cause of action.

61.    Section 549(a) of the Bankruptcy Code provides that any transfer of property of a debtor's estate that occurs (a) "after commencement of the case," and (b) without authorization under the Bankruptcy Code or by the Court, may be avoided.  11 U.S.C. § 549(a).

16

62.     If the Payment Priority Exchange is found to be enforceable and to have

operated as described in this alternative Count, to the extent that the Payment Priority Exchange

was effected **after** the commencement of Plaintiff's bankruptcy case, it caused Plaintiff to

transfer to or for the benefit of the Noteholders a property interest of Plaintiff's estate – its right

to Senior Payment Priority.

63.     Any such transfer was not authorized under the Bankruptcy Code or by the

Court. In the alternative, any purported right to such transfer would have to be asserted as a

claim through the normal claims procedures.

64.     If the Payment Priority Exchange is found to be enforceable and to have

operated as described in this alternative Count, the Payment Priority Exchange was an

unauthorized postpetition transfer of property of Plaintiff's estate – its Senior Payment Priority –

to or for the benefit of the Noteholders, which Plaintiff may avoid pursuant to section 549 of the

Bankruptcy Code, recover pursuant to section 550 of the Bankruptcy Code, and preserve for the

benefit of its estate pursuant to section 551 of the Bankruptcy Code. In this Count, Plaintiff

asserts its right to avoid the Payment Priority Exchange and to recover and preserve Senior

Payment Priority for the benefit of its estate.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following

relief:

A.      For declaratory judgment that the Payment Priority Exchange improperly

modified Plaintiff's Senior Payment Priority as a result of a bankruptcy

filing, and, as such, the Modification Provisions constitute unenforceable

*ipso facto* clauses that violate 11 U.S.C. §§ 365(e)(1) and 541(c)(1) and

Plaintiff is entitled to Senior Payment Priority.

17

B.    For declaratory judgment that any action to enforce the Payment Priority
Exchange as a result of a bankruptcy filing violates the automatic stay
under 11 U.S.C. § 362(a).

C.    Alternatively, for a judgment that the Payment Priority Exchange was a
preferential transfer to or for the benefit of the Noteholders that is
avoidable pursuant to section 547 of the Bankruptcy Code, and pursuant to
sections 550 and 551 of the Bankruptcy Code, Plaintiff is entitled to
recover and preserve Senior Payment Priority for the benefit of its estate;

D.    In the further alternative, for a judgment that the Payment Priority
Exchange was a constructive fraudulent transfer to or for the benefit of the
Noteholders that is avoidable pursuant to section 548 of the Bankruptcy
Code, and pursuant to sections 550 and 551 of the Bankruptcy Code,
Plaintiff is entitled to recover and preserve Senior Payment Priority for the
benefit of its estate;

E.    In the further alternative, for a judgment that the Payment Priority
Exchange was an unauthorized postpetition transfer to or for the benefit of
the Noteholders that is avoidable pursuant to section 549(a) of the
Bankruptcy Code, and pursuant to sections 550 and 551 of the Bankruptcy
Code, Plaintiff is entitled to recover and preserve Senior Payment Priority
for the benefit of its estate; and

F.    Any such other and further relief as the Court deems just and proper,
including costs and attorneys' fees.

Respectfully submitted,

By: */s/ Ralph I. Miller*
    Ralph I. Miller
    Peter Gruenberger
    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Fascimile: (212) 310-8007

    *Attorney for Debtors*
    *and Debtors in Possession*

Dated:    New York, New York
           October 1, 2010

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Peter Gruenberger

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ------------------------------------------x | |
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | Case No. 08-13555 (JMP) |
| Debtors. | |
| ------------------------------------------x | |
| LEHMAN BROTHERS SPECIAL FINANCING INC. | |
| Plaintiff, | |
| -against- | Adversary Proceeding |
| BANK OF NEW YORK and BNY CORPORATE TRUSTEE SERVICES LIMITED, | No.: _____ (JMP) |
| Trustee Defendants, | |
| -and- | |
| GAZPROMBANK MORTGAGE FUNDING 2 S.A. and RUBY FINANCE PUBLIC LIMITED COMPANY, AS ISSUER OF THE SERIES 2006-7, | |
| Issuer Defendants. | |
| ------------------------------------------x | |

## **SCHEDULE 1**

### **Plaintiff's Original Complaint**

| Name | Principal Business Address |
|------|----------------------------|
| Gazprombank Mortgage Funding 2 S.A. | c/o Gazprombank Mortgage Funding 2 S.A.<br>1, allée Scheffer<br>L-2520 Luxembourg,<br>P.O. Box 8, L-2010 Luxembourg<br><br>and/or<br><br>c/o TMF Management (UK) Limited<br>Fourth Floor, Atlas House<br>1 King Street<br>London EC2V 8AU |
| Ruby Finance Public Limited Company, as issuer of the Series 2006-7 | c/o AIB International Centre<br>International Financial Services Centre,<br>Dublin 1, Ireland<br><br>and/or<br><br>c/o The Bank of New York<br>One Canada Square<br>London E14 5AL |