WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Peter Gruenberger

Attorneys for Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  | x |  |
|---|---|---|
|  | : | Chapter 11 |
| In re: | : |  |
|  | : | Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | : |  |
|  | : |  |
| Debtors. | : |  |
|  | x |  |
| LEHMAN BROTHERS SPECIAL FINANCING INC., | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| -against- | : | Adversary Proceeding |
|  | : | No.: _____ (JMP) |
| BANK OF NEW YORK MELLON NATIONAL ASSOCIATION, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |
|  | x |  |

## COMPLAINT

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing Inc. ("LBSF" or "Plaintiff"), a debtor and

debtor in possession in the above-captioned jointly administered case of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors," and

together with its non-debtor affiliates, "Lehman"), by and through undersigned counsel, brings

this Complaint against Bank of New York Mellon National Association (referred to "BNY" or

the "Trustee").

## NATURE OF THE ACTION

1.      This action stems from provisions in governing transaction documents

with respect to certain derivatives transactions (the "Modification Provisions").  The two

transactions at issue are Ruby Finance Public Limited Company ("Ruby") Series 2006-2 and

2006-3 (referred to collectively as the "Ruby Notes").  The application of the Modification

Provides were conditioned on the commencement of either LBHI's or Plaintiff's bankruptcy

case, and if enforceable, operate so as to deprive Plaintiff of a property interest by (a) taking

Plaintiff's contractual right to senior payment priority ("Senior Payment Priority") from Plaintiff,

(b) replacing it with junior payment priority ("Junior Payment Priority"), and (c) transferring

Senior Payment Priority to or for the benefit of certain noteholders (the "Noteholders") who

otherwise would have only Junior Payment Priority.  This purported "flip" of payment priorities

pursuant to the Modification Provisions, as described above, is referred to in this Complaint as

the "Payment Priority Exchange."

2.      The Ruby Notes were issued pursuant to certain transaction documents,

including trust or indenture documentation, specific to each series of notes (collectively, the

agreements underlying the Ruby Series 2006-2 and 2006-3 transactions are referred to as the

"Transaction Documents") under which BNY serves as trustee.  LBHI served as the Credit

Support Provider, or guarantor, of Plaintiff's obligations.  The Transaction Documents govern

payment to the Noteholders and Plaintiff.

3.      The Trustee, or an agent thereof, holds for the benefit of (among others)

Plaintiff and the Noteholders the collateral (the "Collateral"), or security over the Collateral that

secures payment obligations both to Plaintiff and to the Noteholders. Plaintiff's and the

Noteholders' recourse for payment of claims is limited to the Collateral and/or any assets related

to that particular series of Notes. Plaintiff's and the Noteholders' respective payment priorities

for their claims to the Collateral are enforced and realized through the distribution of the

Collateral or its proceeds.

4.      On September 15 and October 3, 2008, respectively, LBHI and Plaintiff

filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code"). Under the Transaction Documents, the commencement of a case under the

Bankruptcy Code by either Plaintiff or its Credit Support Provider, LBHI, constituted an Event

of Default under the Transaction Documents with respect to Plaintiff.

5.      Under the Transaction Documents, when Plaintiff has a claim to the

Collateral underlying either Ruby Services 2006-2 or 2006-3, because the transactions are "in-

the-money" to Plaintiff, Plaintiff's claim has Senior Payment Priority, and the Noteholders'

claim has Junior Payment Priority. But upon (a) the occurrence of an Event of Default with

respect to Plaintiff, and (b) triggering of the Modification Provisions, Senior Payment Priority is

transferred from Plaintiff to or for the benefit of the Noteholders, leaving Plaintiff with only

Junior Payment Priority, or no payment, for its claim.

6.      Assuming that the Modification Provisions are enforceable[1] in whole or in

part, to the extent that the Modification Provisions effected the Payment Priority Exchange

*before* the commencement of Plaintiff's bankruptcy case, the Payment Priority Exchange

constituted either (a) a preferential transfer of an interest of Plaintiff in property that may be

avoided under section 547 of the Bankruptcy Code, recovered under section 550 of the

---

[1]   While it is not doing so in this Complaint, Plaintiff expressly reserves its right to amend the Complaint to
challenge the enforceability of the Modification Provisions.

Bankruptcy Code, and preserved for the benefit of Plaintiff's estate under section 551 of the

Bankruptcy Code, or (b) a constructive fraudulent transfer of an interest of Plaintiff in property

that may be avoided under section 548(a)(1)(B) of the Bankruptcy Code, recovered under section

550 of the Bankruptcy Code, and preserved for the benefit of Plaintiff's estate under section 551

of the Bankruptcy Code.

7.    Moreover, assuming without admitting that the Modification Provisions

are enforceable in whole or in part, to the extent that the Modification Provisions effected the

Payment Priority Exchange *after* the commencement of Plaintiff's bankruptcy case, the Payment

Priority Exchange constituted an unauthorized postpetition transfer of property of Plaintiff's

estate that may be avoided under section 549 of the Bankruptcy Code, recovered under section

550 of the Bankruptcy Code, and preserved for the benefit of Plaintiff's estate under section 551

of the Bankruptcy Code.

## PARTIES

8.    Plaintiff is a Delaware corporation with its current principal business

address at 1271 Sixth Avenue, 40th Floor, New York, New York 10020.

9.    Upon information and belief, the Bank of New York Mellon National

Association is a national banking association organized under the laws of the United States with

its principal place of business at One Wall Street, New York, New York 10286. The Bank of

New York Mellon National Association is also the successor as trustee to JPMorgan Chase

Bank.

## JURISDICTION AND VENUE

10.    The Court has subject-matter jurisdiction over this proceeding under

28 U.S.C. §§ 157, 1334. This is a "core proceeding" under 28 U.S.C. § 157(b).

11.    Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

4

12.     The statutory prerequisites for the relief requested herein are sections 105(a), 547, 548(a)(1)(B), 549(a), 550, and 551 of the Bankruptcy Code, section 2201 of Title 28 of the United States Code, Federal Rule of Civil Procedure 57, and Rules 7001 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### BACKGROUND

13.     Lehman was formerly the fourth largest investment bank in the United States.  For more than 150 years, Lehman was a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients, and individuals worldwide.  Lehman's headquarters in New York and regional headquarters in London and Tokyo were complemented by a network of offices in North America, Europe, the Middle East, Latin America, and the Asia Pacific region.

14.     Plaintiff's and LBHI's chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

15.     Plaintiff and LBHI are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

16.     The Ruby Notes were issued to raise funds with which to acquire assets. The Transaction Documents govern Plaintiff's entitlement to the assets, and the Trustee serves pursuant to the Transaction Documents.

17.     Under the Transaction Documents, the bankruptcy filing of Plaintiff or LBHI as its Credit Support Provider falls within the definition of an "Event of Default" with respect to Plaintiff.  Until the Modification Provisions are triggered, Plaintiff has Senior Payment Priority for its claims to the Collateral under the Transaction Documents, and the Noteholders

5

have Junior Payment Priority for their claims. But upon triggering the Modification Provisions, the application of which is conditioned on either Plaintiff's or LBHI's bankruptcy filing, the payment priority is altered. When this occurs, the Transaction Documents provide that (a) Plaintiff's Senior Payment Priority is taken from it and transferred to or for the benefit of the Noteholders, and (b) Plaintiff is allotted Junior Payment Priority, which until that moment had been held by the Noteholders.

18.    Assuming that this "flip" clause is enforceable, then the Modification Provisions work as an intercreditor agreement between Plaintiff and the Noteholders in connection with their respective claims to the Collateral. If enforceable, the Modification Provisions would obligate Plaintiff, in contractually specified circumstances, to transfer its interest in particular property – the right to Senior Payment Priority – to or for the benefit of the Noteholders, thereby enhancing the Noteholders' ability to recover on their claims. The Payment Priority Exchange would thus cause Plaintiff to part with a valuable property interest – its contractual right to Senior Payment Priority – by giving it to or for the benefit of the Noteholders. Plaintiff's parting with that interest would constitute an avoidable "transfer" under section 101(54) of the Bankruptcy Code.

19.    Moreover, assuming that the Modification Provisions are enforceable, they operate as a covenant by Plaintiff that, upon the occurrence of specified events, Plaintiff will pledge some of its property to or for the benefit of the Noteholders, to further secure the Noteholders' claims to the Collateral. Just as such a covenant would give the Noteholders a contractual right to obtain property from Plaintiff through such a pledge, the Modification Provisions, if enforceable, would give the Noteholders a contractual right to obtain property from Plaintiff through the Payment Priority Exchange. And just as Plaintiff would satisfy its

contractual obligation to the Noteholders under such a covenant by delivering property to or for

the benefit of the Noteholders, Plaintiff would, through the Payment Priority Exchange, satisfy

its contractual obligation to the Noteholders to give Senior Payment Priority to or for the benefit

of the Noteholders. Even if the Modification Provisions might be read to effectuate the Payment

Priority Exchange automatically, rather than through some action by BNY, the Noteholders or

others, this does not change the fact that the Payment Priority Exchange constitutes a transfer of

an interest of Plaintiff in property to or for the benefit of the Noteholders that satisfies an existing

contractual obligation of Plaintiff to the Noteholders to make such transfer.

20.    Furthermore, if the Payment Priority Exchange is not effected pursuant to,

and in satisfaction of, an existing contractual obligation of Plaintiff, then any operation of the

Payment Priority Exchange would be a gratuitous transfer of a property interest by Plaintiff for

which Plaintiff received no value in exchange.

21.    If the Modification Provisions are enforced, then the Trustee would be

required to effectuate the Payment Priority Exchange in violation of the Bankruptcy Code.

22.    All conditions precedent to suit have been performed, have occurred, or

have been waived.

### COUNT I
### *(Prepetition Payment Priority Exchange Constitutes*
### *Avoidable Transfer Under Section 547 of the Bankruptcy Code)*

23.    Plaintiff repeats, realleges, and incorporates by reference the allegations

contained in paragraphs 1 to 22 of this Complaint as though fully set forth in this cause of action.

24.    Section 547(b) of the Bankruptcy Code provides that "any transfer of an

interest of the debtor in property" may be subject to avoidance as a preference if the transfer is

made: "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by

7

the debtor before such transfer was made; (3) . . . while the debtor was insolvent; (4) . . . on or

within 90 days before the date of the filing of the petition . . .; and (5) that enables such creditor

to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of

this title; (B) the transfer had not been made; and (C) such creditor received payment of such

debt to the extent provided for by the provisions of this title." 11 U.S.C. § 547(b).

25.    Pursuant to the Transaction Documents, the bankruptcy filing of LBHI on

September 15, 2008 – as Credit Support Provider to Plaintiff – constituted an Event of Default

with respect to Plaintiff.

26.    Assuming that the Payment Priority Exchange is effective, it would cause

Plaintiff to transfer to or for the benefit of the Noteholders an interest of Plaintiff in property – its

right to Senior Payment Priority.

27.    To the extent that the Payment Priority Exchange is found to (a) have

taken effect *before* Plaintiff's petition date, (b) be enforceable, and (c) have been effected

pursuant to an existing contractual obligation of Plaintiff, it is avoidable as a preferential transfer

pursuant to section 547 of the Bankruptcy Code.

28.    The Payment Priority Exchange, assuming it is enforceable, would effect a

transfer of Plaintiff's right to Senior Payment Priority to or for the benefit of the Noteholders,

who, pursuant to their contractual rights, would, under those narrow circumstances, have been

creditors of Plaintiff.

29.    Under the circumstances described in this Count, the transfer of Plaintiff's

right to Senior Payment Priority would be on account of an antecedent debt, consisting of

Plaintiff's contractual obligation, in specified circumstances, to transfer its right to Senior

Payment Priority to or for the benefit of the Noteholders.

8

30.    Under these circumstances, any transfer would have been made no earlier than September 15, 2008 – within the 90 days preceding Plaintiff's bankruptcy filing – while Plaintiff was insolvent.

31.    The Payment Priority Exchange, as described in this Count, would allow the Noteholders to receive more than they would have otherwise received if the case were a case under chapter 7 of this title and the transfer effected by the Payment Priority Exchange had not been made.

32.    Therefore, assuming that the Payment Priority Exchange is enforceable, it was a preferential transfer of Plaintiff's property interest – its Senior Payment Priority – to or for the benefit of the Noteholders, which Plaintiff may avoid pursuant to section 547(b) of the Bankruptcy Code, recover pursuant to section 550 of the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of the Bankruptcy Code. Plaintiff asserts its right to avoid the Payment Priority Exchange and to recover and preserve Senior Payment Priority for the benefit of its estate.

### ALTERNATIVE COUNT II
#### (Prepetition Payment Priority Exchange
#### Constitutes Avoidable Transfer Under Section 548 of the Bankruptcy Code)

33.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in preceding paragraphs 1 to 22 of this Complaint as though fully set forth in this cause of action.

34.    Section 548(a)(1)(B) of the Bankruptcy Code provides that a transfer of a debtor's interest in property, made within two years before the commencement of the debtor's bankruptcy case, may be avoided as constructively fraudulent if the debtor (a) "received less than reasonably equivalent value in exchange for such transfer" and (b) (i) "was insolvent on the date

9

that such transfer was made . . . or became insolvent as a result of such transfer or obligation," (ii) "was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital," or (iii) "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured."  11 U.S.C. § 548(a)(1)(B)(i)-(ii).

35.    Pursuant to the Transaction Documents, the bankruptcy filing of LBHI on September 15, 2008 – as Credit Support Provider to Plaintiff – constituted an Event of Default with respect to Plaintiff.

36.    Assuming that the Payment Priority Exchange is effective, it would cause Plaintiff to transfer to or for the benefit of the Noteholders an interest of Plaintiff in property – its right to Senior Payment Priority.

37.    To the extent that the Payment Priority Exchange may be found to (a) have taken effect *before* Plaintiff's petition date, (b) be enforceable, and (c) have been effected pursuant to an existing contractual obligation of Plaintiff, it is avoidable as a preferential transfer pursuant to section 547 of the Bankruptcy Code.

38.    The Payment Priority Exchange, assuming it is enforceable, would effect a transfer of Plaintiff's right to Senior Payment Priority to or for the benefit of the Noteholders.

39.    The Payment Priority Exchange, assuming it is enforceable, and to the extent that the Payment Priority Exchange is not found to have been effected pursuant to, and in satisfaction of, an existing contractual obligation of Plaintiff, it would have been done gratuitously, and therefore, in exchange for less than reasonably equivalent value.

40.    The Payment Priority Exchange, assuming it is enforceable and operated as described in this Count, would have occurred when Plaintiff was, or thereby became,

insolvent, or left with unreasonably small capital, or intending or believing that it would incur

debts that would be beyond its ability to pay as such debts matured.

41.    Therefore, the Payment Priority Exchange, assuming it is enforceable and

operated as described in this Count, was a constructive fraudulent transfer of Plaintiff's property

interest – its Senior Payment Priority – to or for the benefit of the Noteholders, which Plaintiff

may avoid pursuant to section 548(a)(1)(B) of the Bankruptcy Code, recover pursuant to section

550 of the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of

the Bankruptcy Code.

### ALTERNATIVE COUNT III
#### (Postpetition Payment Priority Exchange
#### Constitutes Avoidable Transfer Under Section 549 of the Bankruptcy Code)

42.    Plaintiff repeats, realleges, and incorporates by reference the allegations

contained in paragraphs 1 to 22 of this Complaint as though fully set forth in this cause of action.

43.    Section 549(a) of the Bankruptcy Code provides that any transfer of

property of a debtor's estate that occurs (a) "after commencement of the case," and (b) without

authorization under the Bankruptcy Code or by the Court, may be avoided.  11 U.S.C. § 549(a).

44.    The Payment Priority Exchange, assuming it is enforceable and was

effected *after* the commencement of Plaintiff's bankruptcy case, caused Plaintiff to transfer to or

for the benefit of the Noteholders a property interest of Plaintiff's estate – its right to Senior

Payment Priority.

45.    Any such transfer was not authorized under the Bankruptcy Code or by the

Court.  In the alternative, any purported right to such transfer would have to be asserted as a

claim through the normal claims procedures.

11

46.    The Payment Priority Exchange, assuming it is enforceable and operated as described in this Count, was an unauthorized postpetition transfer of property of Plaintiff's estate – its Senior Payment Priority – to or for the benefit of the Noteholders, which Plaintiff may avoid pursuant to section 549 of the Bankruptcy Code, recover pursuant to section 550 of the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A.    For a judgment that the Payment Priority Exchange was a preferential transfer to or for the benefit of the Noteholders that is avoidable pursuant to section 547 of the Bankruptcy Code, and pursuant to sections 550 and 551 of the Bankruptcy Code, Plaintiff is entitled to recover and preserve Senior Payment Priority for the benefit of its estate;

B.    In the alternative, for a judgment that the Payment Priority Exchange was a constructive fraudulent transfer to or for the benefit of the Noteholders that is avoidable pursuant to section 548 of the Bankruptcy Code, and pursuant to sections 550 and 551 of the Bankruptcy Code, Plaintiff is entitled to recover and preserve Senior Payment Priority for the benefit of its estate;

C.    In the further alternative, for a judgment that the Payment Priority Exchange was an unauthorized postpetition transfer to or for the benefit of the Noteholders that is avoidable pursuant to section 549(a) of the Bankruptcy Code, and pursuant to sections 550 and 551 of the Bankruptcy

12

Code, Plaintiff is entitled to recover and preserve Senior Payment Priority

for the benefit of its estate; and

D.      Any such other and further relief as the Court deems just and proper,

including costs and attorneys' fees.

Respectfully submitted,

By: */s/ Ralph I. Miller*
       Ralph I. Miller
       Peter Gruenberger
       WEIL, GOTSHAL & MANGES LLP
       767 Fifth Avenue
       New York, New York 10153
       Telephone: (212) 310-8000
       Facsimile: (212) 310-8007

*Attorney for Debtors*
*and Debtors in Possession*

Dated:      New York, New York
        October 1, 2010